KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900
Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re:                                              :         Chapter 11
                                                    :         Case No. 05-44481 (RDD)
DELPHI CORPORATON, et al.,                          :         (Jointly Administered)
                                                    :
        Debtors.                                    :
------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR AN ORDER QUASHING TRIAL SUBPOENA

This memorandum of law is respectfully submitted on behalf of Wilmington Trust Company, as indenture trustee ("WTC") in support of its motion for an order quashing (i) the trial subpoena issued by Delphi Corporation and its debtor subsidiaries and affiliates (collectively, the "Debtors") seeking trial testimony from the person or persons identified by WTC in response to the Notice of Federal Rule of Civil Procedure 30(b)(6) to WTC delivered on its counsel on June 26, 2006 and (ii) the trial subpoena issued by Debtors on Steven Cimalore dated June 28, 2006 (collectively, the "Trial Subpoena") in connection with the Hourly Special Attrition Programs Motion No. 2 (the "Motion").

### PRELIMINARY STATEMENT

WTC seeks to quash the Trial Subpoena on the ground that it is clear through discovery that the witness has no knowledge of any of the facts which Debtors sought to obtain through discovery and that any information that the witness does have is information gained by the witness through discussions with his counsel. Indeed, Debtors state in Debtors'

NY-#449074-v1

Omnibus Reply to Objections to Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving (i) Supplement to UAW Special Attrition Program and (ii) IUE-CWA Special Attrition Program dated June 28, 2006 (the "Reply") that

> the WTC Rule 30(b)(6) deponent could not offer a single factual basis in support of its Objection relying instead solely upon the legal argument constructed by WTC's counsel.

Reply, p. 11 n. 8. Thus, because Debtors concede that the witness has no first hand knowledge of the information sought and because the information the witness does have that is derived from communications with counsel is privileged, the Trial Subpoena should be quashed. The Trial Subpoena should also be quashed because it has not been properly served.

The motion to quash is being brought by Order to Show Cause because Debtors issued the Trial Subpoena (on a 30(b)(6) basis) on or about June 26, 2006. The Trial Subpoena commands the appearance of the witness on June 29, 2006. On June 28, 2006, at 3:37 p.m. Debtors' counsel e-mailed to WTC's counsel a trial subpoena addressed to Steven Cimalore, WTC's Rule 30(b)(6) witness. Not until that time was it clear that Mr. Cimalore's presence at trial would definitely be demanded. Due to the short time period in between service of the Trial Subpoena and the trial date, WTC has been forced to move to quash on an expedited basis.

## FACTS

The relevant facts are set forth in detail in the accompanying Affidavit of Edward M. Fox In Support Of Motion for an Order Quashing Trial Subpoena sworn to June 28, 2006 ("Fox Aff.").

WTC serves as indenture trustee for approximately $2 billion of senior notes and debentures issued by the Debtors. Accordingly, it has a keen interest in ensuring the

2

ultimate success of the Debtors' reorganization, and in maximizing the value available for distribution to the holders of the notes and debentures for whom it acts as indenture trustee.

On October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate their businesses and remained in possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On March 22, 2006, the Debtors filed a Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving Debtors' Human Capital Hourly Attrition Program, which provided various incentives to the Debtors' UAW-represented employees to retire and/or flow back to General Motors Corporation. (Fox Aff. ¶ 7). WTC opposed the motion. (Fox Aff. ¶ 7). This Court entered an Order on May 8, 2006, approving the Debtors' participation in the Attrition Program. (Fox Aff. ¶ 8). The Order was subsequently amended on May 12, 2006 to address technical issues raised by General Motors. (Fox Aff. ¶ 9).

On June 19, 2006, the Debtors filed a Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving (I) Supplement to UAW Special Attrition Program, and (II) IUE-CWA Special Attrition Program (the "Motion"). (Fox Aff. ¶ 10). WTC has objected to the Motion. (Fox Aff. ¶ 11).

An evidentiary hearing on the Motion is scheduled for June 29, 2006. Three days before the hearing, on June 26, 2006, Debtors sent to WTC's counsel a Notice of Rule 30(b)(6) Deposition Notice of the Wilmington Trust Company as Indenture Trustee (the "Deposition Notice"), an Expedited Request for Production of Documents (the "Document Request"), and the first of the two Trial Subpoenas. On June 28, 2006, the Debtors sent WTC's counsel the second Trial Subpoena issued to Steven Cimalore, a vice president of WTC. Copies are annexed as Exhibit A to the Fox Aff. The Trial Subpoena has not been

3

served personally on Mr. Cimalore

The Trial Subpoena dated June 26, 2006, as well as the Deposition Notice, sought testimony on four topics of examination:

1. WTC's administration and management of, and performance of its rights and obligations under the indentures concerning the Debtors' Senior Debt;

2. Communications between WTC and the holders of Debtors' Senior Debt with respect to any matter involving Debtors' chapter 11 proceedings, including, but not limited to, the Preliminary Objection of Wilmington Trust Company, As Indenture Trustee, To Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving (I) Supplement to UAW Special Attrition Program, and (II) IUE-CWA Special Attrition Program;

3. Any of WTC's objections and basis thereof lodged in the Debtors' chapter 11 proceedings, including, but not limited to, the Preliminary Objection of Wilmington Trust Company, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6005 Approving (I) Supplement to UAW Special Attrition Program, and (II) IUE-CWA Special Attrition Program; and

4. The state of awareness and knowledge of the purchasers of Senior Debt concerning Debtors, at the time of the issuance of the Senior Debt.

WTC advised Debtors of its objections to the Deposition Notice and the Document Request on the grounds that the information sought was irrelevant and not reasonably calculated to lead to admissible evidence. (Fox Aff. ¶ 12 ). Thereafter, the Court directed that any discovery of WTC should be limited to factual allegations supporting WTC's basis for objecting to the Motion. (Fox Aff. ¶ 13).

Debtors took the deposition of Steven Cimalore, the designated representative of WTC, on June 28, 2006. (Fox Aff. ¶ 3). At the deposition, it was clear that Mr. Cimalore had no personal knowledge of the facts relating to WTC's objection, as the Debtors concede in the Reply. Moreover, it was evident that any information Mr. Cimalore had was gained through discussions with counsel.

## ARGUMENT

A motion to quash a subpoena should be granted "'where the futility of the process to uncover anything legitimate is inevitable or obvious . . . or where the information sought is utterly irrelevant to any proper inquiry.'" Myrie v. Shelley, 237 A.D.2d 337, 338, 655 N.Y.S.2d 66, 67 (2d Dep't 1997); see also Eisemann v. Greene, No. 97 Civ. 6094, 1998 WL 164281, at *2 (S.D.N.Y. April 8,1998) (granting motion to quash where information requested was of "doubtful and tangible relevance")(internal citation omitted); General Electric Co. v. Rabin, 184 A.D.2d 391, 585 N.Y.S.2d 374 (1st Dep't 1992) (holding that a subpoena will only be quashed "where the material requested is utterly irrelevant to any proper inquiry") (citation omitted); Ayubo v. Eastman Kodak Co., Inc., 158 A.D.2d 641, 551 N.Y.S.2d 944 (2d Dep't 1990) ("The standard to be applied on a motion to quash a subpoena duces tecum is whether the requested information is 'utterly irrelevant to any proper inquiry'") (citation omitted).

The testimony sought by the Debtors is utterly irrelevant and the futility of the subpoena is inevitable. Accordingly, the Trial Subpoena must be quashed.

### 1.    The Subjects of Trial Testimony are Irrelevant

The Debtors seek trial testimony concerning four topics which, as the Court has already determined, have no relevance whatsoever to the instant Motion. The sole issue on the Motion is whether Debtors have met their burden of proving that this Court should approve the Special Attrition Program. It is the Debtors' burden of demonstrating that there is "a good business reason" for implementing the Attrition Program and the Supplement described by the Motion. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983). Thus, any topics outside the scope of Debtors' proof that there is a "good business reason" for implementing the program will have no bearing whatsoever on the disposition of the Motion. The Debtors' are now attempting to cloud the issues by compelling the testimony of WTC's

5

representative on subjects as to which WTC's representative has no knowledge or as to which the Debtors well know have no relevance here.

The Debtors seek testimony concerning WTC's administration, management and performance of the indenture trust. WTC's actions in connection with the indenture trust has no relevance to the Motion which seeks approval of a special attrition program. By making its objection to the Motion, WTC, as a statutory party in interest pursuant to 11 U.S.C. § 1109, complied with its duties and obligations under the Trust Indenture Act. It is well settled that the duty of WTC, as indenture trustee, in representing the bondholders, is to exercise the rights and powers of the bondholders with the same degree of care and skill as a prudent man would exercise or use under the circumstances in the conduct of his own affairs. 15 U.S.C. § 77ooo(c); see also, Bluebird Partners, L.P. v. First Fidelity Bank, 896 F. Supp. 152, 155 (S.D.N.Y. 1995), aff'd, 85 F.3d 970 (2d Cir. 1996). The assertion by WTC of the bondholders rights is not at issue in the Motion and therefore testimony relating to WTC's administration, management and performance of the indenture is irrelevant for the purpose of this Motion.

Likewise, any communications between WTC and the bondholders about any matter in the bankruptcy proceeding is overly broad and not relevant to the Motion. Debtors have not and cannot set forth any reasonable basis for compelling testimony on such a broad and irrelevant topic. Moreover, these communications are likely to be subject to the attorney-client privilege, common interest privilege and/or the work product doctrine. Thus, any attempts to elicit testimony on privileged communications will be fruitless.

As with its other topics of examination, the third subject concerning WTC's objections is an area of inquiry that goes far beyond the instant Motion and seeks testimony on subjects which are not presently at issue. Moreover, WTC's state of mind in objecting to the Motion is not at issue and is not a relevant subject for discovery. Even if the topic for

6

examination was limited to the subject matter of the instant Motion, the Debtors seek testimony concerning privileged communications. WTC's decisions to object and the basis thereof are grounded in attorney-client communications and are based in whole or in part on privilege or work product. Thus, the testimony sought cannot be compelled.

Lastly, WTC has already advised the Debtors that it has no knowledge concerning the state of mind of the bondholders at the time of purchase. The Senior Debt was issued on or about 1999. WTC did not become successor indenture trustee until 2005 and, thus, has no awareness or knowledge of the information sought. Even if WTC was the original trustee, WTC would have no knowledge of the state of awareness and knowledge of the purchasers of Senior Debt and the state of the purchasers knowledge or awareness concerning the Debtors is not remotely relevant to the subject of the instant Motion in any event. The proper basis for determining whether or not the instant Motion should be granted is whether there is "a good business reason" for implementing the Attrition Program and the Supplement described by the Motion. In re Lionel Corp., 722 F.2d at 1071. The state of mind of the original bondholders at the time the bonds were issued has no relevance to the Motion and testimony on this subject matter is not reasonably calculated to lead to the discovery of admissible evidence.

### 2. The Debtors' Attempt to Elicit Relevant Testimony is Futile

Even if Mr. Cimalore, as the representative of WTC, was compelled to testify at trial, he can offer no testimony that is relevant. Mr. Cimalore has been deposed by the Debtors. (Fox Aff. ¶ ) and the Debtors concede that he "could not offer a single factual basis in support of its Objection relying solely upon the legal argument constructed by WTC's counsel." Reply at 8, n. 11. As a result of the deposition, it became abundantly clear that Mr. Cimalore had no personal knowledge of any of the facts sought by the Debtors. (Fox Aff. ¶ ).

7

Because Mr. Cimalore has no personal knowledge of the facts, compelling him to appear to testify at trial would be a waste of this Court's time and resources.

At his deposition, it also became clear that any relevant information that Mr. Cimalore did have was information he had gained through discussions with his counsel. (Fox Aff. ¶ ). Thus, even if Mr. Cimalore does have relevant information, this information is privileged. There is no non-privileged information that Mr. Cimalore can testify about at trial. Thus, because Mr. Cimalore has no personal, non-privileged knowledge of the information sought by Debtors, his testimony would be utterly futile.

### 3. Service of the Trial Subpoena is Improper

In the case of each Trial Subpoena, the Trial Subpoena was delivered to WTC's counsel. It has not been served on WTC or on Mr. Cimalore, as required by Fed. R. Civ. P. 45(b)(1). Briarpatch Limited, L.P. v. Geisler Roberdeau, Inc., 2006 W.L. 1311967 (May 12, 2006, S.D.N.Y.). Accordingly, the Trial Subpoena should be quashed due to improper service.

### CONCLUSION

For all of the foregoing reasons, this Court should grant WTC's motion to quash the Trial Subpoena and grant such further relief as this Court deems just and proper.

Dated: New York, New York
June 28, 2006

                                        KIRKPATRICK & LOCKHART
                                        NICHOLSON GRAHAM LLP

                                        By:*/s/ Edward M. Fox*
                                              Edward M. Fox (EF-1619)
                                              A Member of the Firm
                                      599 Lexington Avenue
                                      New York, New York 10022
                                      (212) 536-3900