**Hearing Date:  July 19, 2006, 10:00 a.m.**
**Objection Deadline (for AIP Program/Targets):  July 12, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan, III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENT TO KECP MOTION (DOCKET NO. 213) SEEKING AUTHORITY TO:
(A) FIX SECOND HALF 2006 AIP TARGETS AND CONTINUE AIP PROGRAM
<u>AND (B) FURTHER ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Supplement to KECP Motion (Docket No. 213).  The KECP Motion is currently set for hearing at the July 19, 2006 omnibus hearing pursuant to this Court's earlier Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Implement A Short-Term Annual Incentive Program ("AIP Order") (Docket No. 2441).  The Debtors believe that it would be in the best interests of the Debtors' estates and their stakeholders to limit the hearing on July 19, 2006 to the continuation of the AIP program previously approved by the Court under the AIP Order including the fixing of performance targets for the second half of 2006.  All other aspects of the KECP Motion would be adjourned for an additional three months to the October 2006 omnibus hearing, now scheduled for October 19, 2006.

1.      On February 10, 2006, this Court conducted an evidentiary hearing on the Debtors' request to restore a limited portion of the at-risk compensation opportunities available to the Debtors' executives prepetition by implementing a short-term AIP for the first six months of 2006.  The Court granted the Debtors' request in the AIP Order.  Pursuant to the AIP Order, all other aspects of the KECP Motion were adjourned to the July 2006 omnibus hearing, now scheduled for July 19, 2006.  (See AIP Order ¶ 1.)  The Debtors now seek the authority to continue the AIP through the second half of 2006, as well as each successive six-month period during which the Debtors are in chapter 11.  The terms and conditions of any AIP implemented by the Debtors going forward will be substantially similar to those described and approved in the AIP Order.   The Debtors also seek approval of the fixing of performance targets and payout curves at the corporate and division levels for the AIP covering the second half of 2006 to

2

account for the Debtors' second half operating plan (which is based on the "3+9" forecast for the

second half of 2006 previously submitted to the Court).[1]

2.      The KECP Motion filed by the Debtors in October 2005 was designed to

help the Debtors bring their below-market executive compensation opportunities to competitive

levels through short-term incentives in the form of an AIP and long-term incentives in the form

of an emergence bonus plan that includes cash payments and equity grants.  In December 2005,

the Debtors and the Creditors' Committee agreed to limit the scope of the initial hearing on the

KECP Motion to the Debtors' request for an AIP for the period beginning October 8, 2005 (the

date on which most of the Debtors filed their chapter 11 petitions) and ending June 30, 2006.

After further discussions with the Creditors' Committee, the Debtors agreed to confine their

request to an AIP for the six-month period running from January 1, 2006 through June 30, 2006.

3.      Following an evidentiary hearing, the Court ruled that the Debtors had

"exercised reasonable business judgment" in seeking to implement the six-month AIP, that the

Debtors had proposed the AIP "in good faith," and that the AIP was "in all respects fair and

reasonable."  (AIP Order ¶¶ B-C.)  The Court also found that implementing the AIP was "in the

best interest of the Debtors, their estates, creditors, and parties-in-interest," and was "necessary to

the Debtors' reorganization efforts."  (Id. ¶ E.)  The AIP Order addresses in detail the terms and

conditions of the AIP.  (See id. ¶¶ 4-11.)  Its principal elements are as follows:

- The AIP generally applies to all persons holding executive positions with the Debtors during the six-month period, with the exception of Delphi's Chairman and Chief Executive Officer, Robert S. Miller (collectively, the "Covered Employees").  (Id. ¶ 4.)

---

[1]      The Debtors have adopted revised payout curves for the second half of 2006 as proposed by the compensation professionals retained by the Official Committee of Unsecured Creditors (the "Creditors' Committee").

- The Debtors will not issue any incentive-compensation payments unless Delphi achieves its corporate-level earnings (EBITDAR-UG) target and/or Delphi's divisions achieve their division-level operating-income (OIBITDAR-UG) targets. (See id. ¶¶ 5-7 & Ex. 2.)

- For Covered Employees whose responsibilities are limited to the corporate level, 100% of their payment opportunities will be determined by comparing Delphi's earnings with the corporate target. With respect to Covered Employees within a division other than the Medical division, 50% of their payment opportunities will be based on Delphi's earnings versus the corporate target, and the other half will be based on the division's operating income versus target. The split in the Medical division is 30%-70%, rather than 50%-50%. (Id. ¶¶ 5-7.)

- Each Covered Employee has a target bonus opportunity that is calculated based on his or her level of responsibility. If Delphi or its divisions exceed their targets, the Covered Employee's bonus opportunity increases accordingly, but in no event may the bonus opportunity exceed a specified cap. For Covered Employees who are members of the Delphi Strategy Board ("DSB"), the cap is 150% of the Covered Employee's target bonus opportunity. For all other Covered Employees, the cap is 200%. (Id. ¶¶ 8-9 & Exs. 1-2.)

- Any payment opportunity is subject to an adjustment based on the Covered Employee's individual performance during the six-month period. The adjustment can range from a 100% reduction (for those Covered Employees designated as poor performers or who otherwise fail to meet expectations) to an increase up to (but not in excess of) the caps above. Upward adjustments are a zero-sum game – i.e., any upward adjustment must be counterbalanced by a downward adjustment of equal amount. (Id. ¶ 9.)

- The AIP includes a prophylactic measure designed to prevent the payment of incentive compensation to Covered Employee under certain circumstances including with respect to any Covered Employee who fails to act in good faith and in a manner consistent with the Debtors' best interests. (See id. ¶ 10.)

4.    Another objective of the AIP was to provide the Debtors' Covered Employees with an appropriate incentive to perform at a high level during the first half of 2006. The year-to-date operational and financial data available to the Debtors at this time indicates that the AIP will satisfy this objective. Delphi's operational performance in the first half of 2006 has been extraordinary, despite the added burdens of the chapter 11 process. As one would expect, the Debtors' exceptional operational performance has contributed to a better-than-expected financial performance through the first five months of 2006. Should Delphi's financial

performance in June 2006 remain consistent with year-to-date performance, the AIP will provide
maximum payment opportunities of approximately $36.3 million for the first half of 2006,
although actual payouts will likely be lower than the maximum amount authorized because of
individual-performance adjustments made by the Debtors in connection with their rigorous
individual performance review process.

5.    While the Debtors are encouraged by near-term financial and operating
improvements, the Debtors' net loss during these chapter 11 cases for the last quarter of 2005 and
the first five months of 2006 is approximately $1.6 billion.  Moreover, for the current fiscal year,
the Debtors presently expect to experience operating income losses of approximately $2 billion.
Thus, while the Debtors' financial performance for the first half of 2006 will exceed expectations
and therefore reduce additional losses previously anticipated, these accomplishments do not alter
the need for Delphi to successfully implement the transformation plan announced on March 31,
2006.[2]

6.    Delphi does not expect to maintain the level of financial performance
achieved thus far in 2006 during the second half of 2006.  A significant portion of Delphi's
business is generally related to automotive sales, which vary directly with the production
schedules of vehicle manufacturers.  Delphi's business is moderately seasonal because its
primary North American customers historically halt operations for approximately two weeks in

---

[2]    The Company believes that its transformation plan will enable it to return to stable, profitable business
operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To
complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify
its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must
conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor
costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline
their product portfolio to capitalize on their world-class technology and market strengths and make the
necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried
workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its
product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to
their current pension situation.

5

July and approximately one week in December.  In addition, third quarter automotive production

is traditionally lower than production in other quarters as new models enter production.

Historically, Delphi's financial performance has reflected these seasonal patterns.

7.    For example, from 2003 through 2005, Delphi generated a majority of its

net sales in the first half of the year, as illustrated in the chart below.

Chart 1.  <u>Delphi's Net Sales By Six-Month Period, 2003-2005</u>



8.    Delphi's operating income is subject to similar fluctuations.  As with net

sales, from 2003 through 2005, Delphi earned more operating income in the first half of the

fiscal year than in the second half, as shown in Chart 2 on the following page.

Chart 2.  <u>Delphi's Operating Income By Six-Month Period, 2003-2005</u>[3]



9.      With this Supplement, the Debtors ask the Court to issue a supplemental order granting them the authority to continue the AIP for the six-month period running from July 1, 2006 through December 31, 2006, under the same terms and conditions outlined in the AIP Order with the fixing of performance targets and payout curves for the second half of the year which take into account the seasonal variations described above by projecting lower earnings and operating income.  The Debtors' second-half 2006 AIP performance targets, which have been reviewed with Steven Hall & Partners, the Creditors' Committee's compensation consultant, are as follows:  Delphi enterprise, ($411.0 million); Powertrain (formerly known as Energy and Chassis), ($58.0 million); Steering, ($114.0 million); Thermal and Interior, ($140.0 million); Electronics and Safety, $179.0 million; Packard Electric, ($17.0 million); Product and Service

---

[3]     The operating income and loss figures in this chart do not include adjustments for restructuring, asset impairment, or other one-time charges.

Solutions, $22.0 million; Automotive Holdings Group, ($634.0 million); and Medical, ($9.0

million).  The payout curves associated with each target, which were proposed by the Creditors'

Committee's compensation consultant and have been adopted by the Debtors, are attached to this

Supplement as part of Exhibit A.  Consistent with the Court's ruling on the AIP for the first half

of 2006, the curves do not allow for any payments if financial performance is below target.  (Cf.

AIP Order ¶ 8.)

        10.     The Debtors also request authority in the Supplemental AIP Order to

continue the AIP in six month increments following December 31, 2006.  Any such authority

would be subject to the Debtors' ability to reach an agreement with the Creditors' Committee

regarding AIP performance targets and payout curves for each performance period within a

reasonable time after that period begins or alternatively further order of the Court.

        11.     The Debtors seek the authority to continue to implement short-term AIPs

under section 363(b)(1) of the Bankruptcy Code, which permits a debtor-in-possession to use

estate property after providing notice of the transaction and the opportunity for a hearing if any

party objects.  11 U.S.C. § 363(b)(1).  The question presented under section 363(b)(1) is whether

the debtor-in-possession has a "good business reason" for the transaction.  In re Lionel Corp.,

722 F.2d 1063, 1071 (2d Cir. 1983); In re WestPoint Stevens, Inc., 333 B.R. 30, 50 (S.D.N.Y.

2005).  In addition, when presented with a transaction involving executive compensation, some

courts analyze whether the program is "fair and reasonable."  E.g., In re Brooklyn Hosp. Ctr.,

341 B.R. 405, 411 (Bankr. E.D.N.Y. 2006).  In determining whether the debtor-in-possession has

satisfied its burden on these points, courts are guided by the business judgment rule.  In re Global

Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also Brooklyn Hosp. Ctr., 341

B.R. at 410-11 (applying business judgment rule to motion to approve key employee retention plan).

12.    A motion subject to the business judgment rule "should be considered a summary proceeding, intended to efficiently review" the debtor-in-possession's decision.  In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993).  The rule gives rise to a presumption that, in making its decision, the debtor-in-possession acted on an informed basis, in good faith, and in the honest belief that the decision is in the best interests of the company.  Global Crossing, 295 B.R. at 743; In re Integrated Resources, 147 B.R. 650, 656 (S.D.N.Y. 1992).  A party opposing the proposed exercise of business judgment has the burden of rebutting this presumption of validity, Integrated Resources, 147 B.R. at 656, and must also produce "evidence respecting its objections," Lionel, 722 F.2d at 1071.

13.    In this case, the business judgment under review is the Debtors' decision to continue the short-term AIP for additional six-month periods under terms and conditions that are generally consistent to those approved by the Court in the AIP Order (with any differences approved by the Creditors' Committee or subsequent order of this Court).  There are several good business reasons to take this action.  The AIP is an integral part of the Debtors' broader strategy of implementing competitive compensation programs for their entire workforce.  Without the AIP, the compensation opportunities available to the Debtors' executives would not extend beyond base salary and benefits, a compensation structure that is not competitive with that of Delphi's peers.  Providing the Debtors' executives with an opportunity to earn incentive compensation will make the "employment proposition" offered by the Debtors more attractive.  It will also allow the Debtors to maintain executive morale, which is critical in light of the executives' responsibility to manage Delphi's worldwide operations during this time of financial

difficulty.  All of these business reasons justify approval of the relief requested.  See In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (D. Del. 1999) (concluding that stabilizing turnover rate, boosting employee morale, and retaining key employees were "sound business purpose[s]" for implementing a compensation plan).

14.    In addition to providing benefits for the Debtors' executives and making the Debtors more competitive with their peers, the operational and financial results for 2006 demonstrate that continuing the AIP will aid the Debtors' reorganization and create value for their estates, creditors, and other stakeholders.  With the incentives provided by the AIP in place, the Debtors' executives have managed the enterprise such that it is on pace to exceed its financial performance targets by more than $600 million at the operating income line.  That is more than an adequate return on the incentive-compensation payments available under the AIP.

15.    Accordingly, the Debtors believe that the Court should reaffirm its earlier determination that the AIP represents a reasonable business judgment, is in the best interest of the Debtors, their estates, creditors, and parties-in-interest, and is necessary to the Debtors' reorganization efforts.  (Cf. id. ¶¶ B, E.)  The AIP proposed by this Supplement contains fair and reasonable terms and conditions nearly identical to those already approved by the Court, and the Debtors' year-to-date performance validates the Debtors' business judgment that the AIP will aid in the reorganization by providing incentives for the Debtors to achieve their financial projections.

WHEREFORE, the Debtors respectfully request that the Court enter a

Supplemental AIP Order in substantially the form of that attached hereto as Exhibit A granting

the Debtors the relief requested in this Supplement and such other and further relief as is just.

Dated: New York, New York
       June 29, 2006

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP


By: */s/ John Wm. Butler, Jr.*
    John Wm. Butler, Jr. (JB 4711)
    Albert L. Hogan, III (AH 8807)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                - and –

By: */s/ Kayalyn A. Marafioti*
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
       In re                                   :          Chapter 11
                                            :
DELPHI CORPORATION, <u>et al.</u>,          :          Case No. 05-44481 (RDD)
                                            :
                        Debtors.        :          (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 105 AND 363
AUTHORIZING THE DEBTORS TO:  (A) FIX SECOND HALF 2006
AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER
<u>ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING</u>

("SUPPLEMENTAL AIP ORDER")

      Upon the Supplement To KECP Motion (Docket No. 213) Seeking Authority To:

(A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn

KECP Emergence Incentive Program Hearing (the "Supplement"), dated June 29, 2006, of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"); and upon the

declarations of Debra S. Alexander, Nick Bubnovich, Virgis W. Colbert, Rodney O'Neal, and

John D. Sheehan, each executed June 29, 2006; and after consideration of any objections to the

Supplement filed by any party; and upon the record of the hearing held on July 19, 2006 on the

relief requested in the Supplement, including the Court's consideration of the testimony and

exhibits; and this Court having determined that the relief requested in the Supplement is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and this

Court having entered an Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To

Implement A Short-Term Annual Incentive Program ("AIP Order") (Docket No. 2441), dated

February 17, 2006; and it appearing that proper and adequate notice of the Supplement was given

and that no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in seeking the

authority to implement short-term annual incentive plans ("AIPs") covering the six-month period

running from July 1, 2006 through December 31, 2006 and during each successive six-month

period during which the Debtors are engaged in the chapter 11 process.

B.      The AIPs currently before the Court, including the Debtors' proposal to

implement the AIP covering the second half of 2006, were proposed in good faith and are in all

respects fair and reasonable.

C.      It is in the best interest of the Debtors, their estates, their creditors, and

parties-in-interest, and it is necessary to the Debtors' reorganization efforts, that the Debtors

implement at this time an AIP for the period from July 1, 2006 through December 31, 2006, and

that the Debtors have the authority to implement AIPs in any succeeding six-month period

during which they are engaged in the chapter 11 process, subject to (i) the Debtors' ability to

reach an agreement with the Official Committee of Unsecured Creditors (the "Creditors'

Committee") regarding the substance of the AIP for that period within a reasonable time after

that period begins or (ii) further order of this Court.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

The AIP Order shall continue in full force and effect except as follows:

1.      The relief requested in the Supplement is GRANTED; any objections

thereto are OVERRULED; and the remainder of the KECP Motion and any objections thereto

are ADJOURNED to the omnibus hearing scheduled for October 19, 2006.

2.    The Court approves the implementation at this time of an AIP covering the six-month period from July 1, 2006 through December 31, 2006, and the Debtors are authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to forthwith take all actions consistent with this Supplemental AIP Order that are reasonably necessary to implement an AIP for that period on the terms and conditions set forth in the AIP Order; provided, however, that the range of incentive-compensation opportunities for Covered Employees during that period shall be determined pursuant to the payout curves attached hereto as Exhibit 1, which do not include any incentive-compensation opportunities for corporate or divisional performance that is below target. The EBITDAR-UG target for the AIP covering the period from July 1, 2006 through December 31, 2006 shall be set at a negative $411 million.  The OIBITDAR-UG targets for the same period shall be as follows:  (i) Powertrain (formerly known as Energy and Chassis) = negative $58.0 million; (ii) Steering = negative $114.0 million; (iii) Thermal and Interior = negative $140.0 million; (iv) Electronics and Safety = $179.0 million; (v) Packard Electric = negative $17.0 million; (vi) Product and Service Solutions = $22.0 million; (vii) Automotive Holdings Group = negative $634.0 million; and (viii) Medical = negative $9.0 million.

3.    The Court grants the Debtors the authority to implement AIPs for any six-month period beginning after December 31, 2006, during which the Debtors are engaged in the chapter 11 process, subject to (i) the Debtors and the Creditors' Committee reaching an agreement regarding the substance of the AIP for that period within a reasonable time after that period begins or (ii) further order of this Court.

4.    This Court shall retain jurisdiction over the Debtors and the Covered Employees participating in any AIP implemented pursuant to this Supplemental AIP Order,

3

including without limitation for the purposes of interpreting, implementing, and enforcing the terms and conditions of any such AIP.

5.      The requirement under Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Supplement.

6.      Capitalized terms not separately defined herein shall have the meanings ascribed to them in the AIP Order.

Dated: New York, New York
       _____, 2006


       _____
       UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT 1

## DELPHI CORPORATION
### Proposed 2nd 2006 6-month **Corporate EBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($411.0) | 0.0% | 0.0% |
| 100.0% | ($411.0) | 100.0% | 100.0% |
| 101.0% | ($406.8) | 100.5% | 101.0% |
| 110.0% | ($368.9) | 105.0% | 110.0% |
| 120.0% | ($326.8) | 110.0% | 120.0% |
| 130.0% | ($284.7) | 115.0% | 130.0% |
| 131.0% | ($280.5) | 115.5% | 131.0% |
| 140.0% | ($242.6) | 120.0% | 140.0% |
| 150.0% | ($200.5) | 125.0% | 150.0% |
| 151.0% | ($196.3) | 125.5% | 151.0% |
| 160.0% | ($158.4) | 130.0% | 160.0% |
| 170.0% | ($116.3) | 135.0% | 170.0% |
| 180.0% | ($74.2) | 140.0% | 180.0% |
| 190.0% | ($32.1) | 145.0% | 190.0% |
| 200.0% | $10.0 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| EBITDAR | ($411.0) | $10.0 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed April 2006 6-month **Powertrain OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($58.0) | 0.0% | 0.0% |
| 100.0% | ($58.0) | 100.0% | 100.0% |
| 101.0% | ($56.9) | 100.5% | 101.0% |
| 110.0% | ($47.2) | 105.0% | 110.0% |
| 120.0% | ($36.4) | 110.0% | 120.0% |
| 130.0% | ($25.5) | 115.0% | 130.0% |
| 131.0% | ($24.5) | 115.5% | 131.0% |
| 140.0% | ($14.7) | 120.0% | 140.0% |
| 150.0% | ($3.9) | 125.0% | 150.0% |
| 151.0% | ($2.8) | 125.5% | 151.0% |
| 160.0% | $6.9 | 130.0% | 160.0% |
| 170.0% | $17.7 | 135.0% | 170.0% |
| 180.0% | $28.6 | 140.0% | 180.0% |
| 190.0% | $39.4 | 145.0% | 190.0% |
| 200.0% | $50.2 | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($58.0) | $50.2 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Dec 2005 - June 2006 6-month **Steering OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($114.0) | 0.0% | 0.0% |
| 100.0% | ($114.0) | 100.0% | 100.0% |
| 101.0% | ($113.7) | 100.5% | 101.0% |
| 110.0% | ($110.6) | 105.0% | 110.0% |
| 120.0% | ($107.1) | 110.0% | 120.0% |
| 130.0% | ($103.7) | 115.0% | 130.0% |
| 131.0% | ($103.4) | 115.5% | 131.0% |
| 140.0% | ($100.3) | 120.0% | 140.0% |
| 150.0% | ($96.9) | 125.0% | 150.0% |
| 151.0% | ($96.5) | 125.5% | 151.0% |
| 160.0% | ($93.4) | 130.0% | 160.0% |
| 170.0% | ($90.0) | 135.0% | 170.0% |
| 180.0% | ($86.6) | 140.0% | 180.0% |
| 190.0% | ($83.1) | 145.0% | 190.0% |
| 200.0% | ($79.7) | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($114.0) | ($79.7) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed Second 2006 6-month **Thermal OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($140.0) | 0.0% | 0.0% |
| 100.0% | ($140.0) | 100.0% | 100.0% |
| 101.0% | ($139.5) | 100.5% | 101.0% |
| 110.0% | ($134.6) | 105.0% | 110.0% |
| 120.0% | ($129.3) | 110.0% | 120.0% |
| 130.0% | ($123.9) | 115.0% | 130.0% |
| 131.0% | ($123.4) | 115.5% | 131.0% |
| 140.0% | ($118.6) | 120.0% | 140.0% |
| 150.0% | ($113.2) | 125.0% | 150.0% |
| 151.0% | ($112.7) | 125.5% | 151.0% |
| 160.0% | ($107.8) | 130.0% | 160.0% |
| 170.0% | ($102.5) | 135.0% | 170.0% |
| 180.0% | ($97.1) | 140.0% | 180.0% |
| 190.0% | ($91.8) | 145.0% | 190.0% |
| 200.0% | ($86.4) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($140.0) | ($86.4) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION

Proposed 12-month **Electronics and Safety OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $179.0 | 0.0% | 0.0% |
| 100.0% | $179.0 | 100.0% | 100.0% |
| 101.0% | $180.0 | 100.5% | 101.0% |
| 110.0% | $188.6 | 105.0% | 110.0% |
| 120.0% | $198.3 | 110.0% | 120.0% |
| 130.0% | $207.9 | 115.0% | 130.0% |
| 131.0% | $208.9 | 115.5% | 131.0% |
| 140.0% | $217.5 | 120.0% | 140.0% |
| 150.0% | $227.2 | 125.0% | 150.0% |
| 151.0% | $228.1 | 125.5% | 151.0% |
| 160.0% | $236.8 | 130.0% | 160.0% |
| 170.0% | $246.4 | 135.0% | 170.0% |
| 180.0% | $256.0 | 140.0% | 180.0% |
| 190.0% | $265.7 | 145.0% | 190.0% |
| 200.0% | $275.3 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | $179.0 | $275.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 6-month **Packard OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($17.0) | 0.0% | 0.0% |
| 100.0% | ($17.0) | 100.0% | 100.0% |
| 101.0% | ($16.1) | 100.5% | 101.0% |
| 110.0% | ($7.6) | 105.0% | 110.0% |
| 120.0% | $1.9 | 110.0% | 120.0% |
| 130.0% | $11.3 | 115.0% | 130.0% |
| 131.0% | $12.2 | 115.5% | 131.0% |
| 140.0% | $20.7 | 120.0% | 140.0% |
| 150.0% | $30.2 | 125.0% | 150.0% |
| 151.0% | $31.1 | 125.5% | 151.0% |
| 160.0% | $39.6 | 130.0% | 160.0% |
| 170.0% | $49.0 | 135.0% | 170.0% |
| 180.0% | $58.4 | 140.0% | 180.0% |
| 190.0% | $67.9 | 145.0% | 190.0% |
| 200.0% | $77.3 | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($17.0) | $77.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

Proposed Full Year 6-month **Product & Service Solutions OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $22.0 | 0.0% | 0.0% |
| 100.0% | $22.0 | 100.0% | 100.0% |
| 101.0% | $22.3 | 100.5% | 101.0% |
| 110.0% | $25.2 | 105.0% | 110.0% |
| 120.0% | $28.3 | 110.0% | 120.0% |
| 130.0% | $31.5 | 115.0% | 130.0% |
| 131.0% | $31.8 | 115.5% | 131.0% |
| 140.0% | $34.7 | 120.0% | 140.0% |
| 150.0% | $37.9 | 125.0% | 150.0% |
| 151.0% | $38.2 | 125.5% | 151.0% |
| 160.0% | $41.0 | 130.0% | 160.0% |
| 170.0% | $44.2 | 135.0% | 170.0% |
| 180.0% | $47.4 | 140.0% | 180.0% |
| 190.0% | $50.5 | 145.0% | 190.0% |
| 200.0% | $53.7 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | $22.0 | $53.7 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed First 6-Month **Automotive Holdings Group OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($634.0) | 0.0% | 0.0% |
| 100.0% | ($634.0) | 100.0% | 100.0% |
| 101.0% | ($633.7) | 100.5% | 101.0% |
| 110.0% | ($631.1) | 105.0% | 110.0% |
| 120.0% | ($628.1) | 110.0% | 120.0% |
| 130.0% | ($625.2) | 115.0% | 130.0% |
| 131.0% | ($624.9) | 115.5% | 131.0% |
| 140.0% | ($622.2) | 120.0% | 140.0% |
| 150.0% | ($619.3) | 125.0% | 150.0% |
| 151.0% | ($619.0) | 125.5% | 151.0% |
| 160.0% | ($616.4) | 130.0% | 160.0% |
| 170.0% | ($613.4) | 135.0% | 170.0% |
| 180.0% | ($610.5) | 140.0% | 180.0% |
| 190.0% | ($607.5) | 145.0% | 190.0% |
| 200.0% | ($604.6) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($634.0) | ($604.6) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 6-month **Medical OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($9.0) | 0.0% | 0.0% |
| 100.0% | ($9.0) | 100.0% | 100.0% |
| 101.0% | ($9.0) | 100.5% | 101.0% |
| 110.0% | ($8.9) | 105.0% | 110.0% |
| 120.0% | ($8.8) | 110.0% | 120.0% |
| 130.0% | ($8.8) | 115.0% | 130.0% |
| 131.0% | ($8.8) | 115.5% | 131.0% |
| 140.0% | ($8.7) | 120.0% | 140.0% |
| 150.0% | ($8.6) | 125.0% | 150.0% |
| 151.0% | ($8.6) | 125.5% | 151.0% |
| 160.0% | ($8.5) | 130.0% | 160.0% |
| 170.0% | ($8.4) | 135.0% | 170.0% |
| 180.0% | ($8.4) | 140.0% | 180.0% |
| 190.0% | ($8.3) | 145.0% | 190.0% |
| 200.0% | ($8.2) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($9.0) | ($8.2) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |