| | |
|---|---|
| TISDALE & ASSOCIATES LLC<br>Douglas M. Tisdale, Esq.<br>Steven A. Klenda, Esq.<br>1600 Broadway, Suite 2600<br>Denver, CO  80202-4989<br>(303) 832-1800 | **Hearing Date and Time:**<br>July 19, 2006  10:00 a.m.<br><br>**Objection Deadline:**<br>July 16, 2006 |

Counsel for Nutech Plastics Engineering, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re  DELPHI AUTOMOTIVE SYSTEMS USA, L.L.C.<br><br>In re DELPHI CORPORATION, et al.,<br>         Debtors. | Chapter 11<br>Case No. 05-44640 (RDD)<br><br>Jointly Administered as<br>Case No. 05-44481 |
| NUTECH PLASTICS ENGINEERING, INC.<br>         Movant,<br><br>     v.<br><br>DELPHI AUTOMOTIVE SYSTEMS USA, L.L.C. dba Delphi Automotive Systems, L.L.C.<br>         Respondent. | |

**Memorandum of Law to Support NuTech's Motion for Relief from the
Automatic Stay in Order to Continue Prepetition Breach-of-Contract Case against
<u>Delphi Automotive Systems USA, L.L.C. and General Motors</u>**

NuTech Plastics Engineering, Inc. ("**NuTech**") submits this Memorandum of Law to support its contemporaneously-filed Motion for Relief from the Automatic Stay to Continue Prepetition Breach-of-Contract Case against Delphi Automotive Systems USA, L.L.C. ("**Debtor**").  This Court should lift the automatic stay to allow NuTech's prepetition breach-of-contract case against Debtor and GM ("**NuTech's Case**") to proceed for the following reasons:

    1.    The automatic stay can be lifted "for cause."  11 U.S.C. § 362(d)(1).

2.      The Second Circuit has adopted the twelve factors originally set forth in *In re Curtis* to determine whether cause exists to allow prepetition litigation against a debtor in another forum to continue. *In re Sonnax*, 907 F.2d 1280, 1286-87 (2d. Cir. 1990) (applying *In re Curtis*, 40 B.R. 795 (Bankr. D.Utah 1984)).  These factors are:  (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; ==(3)== whether the other proceeding involves the debtor as a fiduciary; ==(4)== whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; ==(5)== whether the debtor's insurer has assumed full responsibility for defending it; ==(6)== whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; ==(8)== whether the judgment claim arising from the other action is subject to equitable subordination; ==(9)== whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

3.      Six of these factors (the third, fourth, fifth, sixth, eighth, and ninth factors, which are highlighted above) do not apply to NuTech's Case.[1]

4.      The result of applying the remaining *Curtis* factors to NuTech's Case is

---

[1] NuTech's claims, which do not involve debtor as a fiduciary (factor 3) and do not primarily involve third parties (factor 6), will not be heard by a specialized tribunal (factor 4), will not be defended by Debtor's insurer (factor 5), and will not result in either a judgment that is subject to equitable subordination (factor 8) or an avoidable judicial lien (factor 9).

2

straightforward: this District has already decided that it is appropriate to lift the automatic stay to allow a prepetition breach-of-contract case against a debtor to continue where (as here) the case was on the eve of trial when debtor filed its bankruptcy petition. *In re Burger Boys*, 183 B.R. 682, 688 (S.D.N.Y. 1994) (affirming Bankruptcy Court's application of Curtis factors to lift automatic stay).

5. *Burger Boys* upheld the Bankruptcy Court's decisions: (1) to abstain from debtor's adversary proceeding that duplicated debtor's counterclaims in a state-court suit that was on the eve of trial when debtor filed its chapter 11 petition; and (2) to grant relief from stay to allow plaintiff's state-court suit against debtor to continue. *Id.* at 684. The Bankruptcy Court had determined that lifting the stay in order to allow the state-court trial to continue would achieve three important results. First it would completely resolve all issues because all claims could be tried in state court. Second, it would not interfere with the debtor's bankruptcy case because a breach-of-contract claim is a non-core proceeding from which a bankruptcy court must abstain in any event and the costs of litigating in multiple forums did not justify keeping the stay in place. Finally, lifting the stay would serve the interests of judicial economy and provide for an expeditious and economic conclusion of the litigation. *Id.* at 688.

6. The same key *Curtis* factors that were decisive in *Burger Boys* also apply to NuTech's Case. Specifically:

(a) The trial of NuTech's Case in Michigan state-court will liquidate all claims between NuTech and Debtor such that NuTech's liquidated claim can then be administered under Debtor's plan.

3

(b)    A state court trial will not interfere Delphi's multi-billion dollar bankruptcy case. NuTech's breach-of-contract claim is a non-core proceeding from which a bankruptcy court must abstain. *Burger Boys* at 685 (prepetition state law breach-of-contract action is noncore proceeding under *Northern Pipeline Construction Co. v. Marathon Pipeline Construction Co.*, 458 U.S. 50 (1982)). Although potential litigation costs are not a sufficient reason for the stay to remain in place, Debtor here is in a much better position to absorb these costs than the small business in *Burger Boys*, where the additional litigation costs were a virtual life-or-death issue. *Id.* at 688. More practically, discovery and other pretrial activities will not distract either Debtor's management or its bankruptcy counsel from Debtor's efforts to reorganize. After almost three years of litigation, Debtor's trial counsel — who is separate from Debtor's bankruptcy cousel — was ready to defend Debtor when trial was scheduled to begin in November 2005.

(c)    A state court trial will promote judicial economy and resolve NuTech's claims expeditiously and economically. The Michigan trial court has informed NuTech's trial counsel that it could hear the NuTech's four to five day jury trial this September. Mot., Ex. A, Schwartz Aff., ¶ 15. A state court trial will quickly liquidate NuTech's claims in the forum that is already familiar with them, using attorneys who are already familiar with and prepared to try NuTech's Case. Any efforts by Debtor to postpone further the trial of NuTech's Case will likely consume as much time as the four days that it will take to try NuTech's Case.

7.    The remaining *Curtis* factors that the *Burger Boys* court did not expressly address similarly favor lifting the automatic stay. Keeping the stay in place upsets rather than preserves the prepetition, eve-of-trial status quo between Debtor and NuTech. Absent

4

Debtor's bankruptcy, NuTech would at least be able to try its claims against GM. But given Debtor's bankruptcy, the trial court (erroneously) ruled that NuTech could proceed against GM only if NuTech dismissed Debtor as a defendant, which NuTech was unwilling to do. Ex. A, Schwartz Aff., ¶ 12. So, the automatic stay not only prevents NuTech from pursuing its claims against Debtor, but also from pursuing its claims against GM, which may well file its own chapter 11 case in the future. Perhaps most significantly, one of NuTech's former owners and a likely witness, John Mailey, has health problems that are so significant that NuTech's trial was postponed once already because Mr. Mailey had suffered a stroke. Mot., Ex. A, Schwartz Aff., ¶ 16. Allowing still more time to pass before NuTech's Case is tried will only allow memories to fade, witnesses to move on, and other circumstances (such as a chapter 11 by GM) to intervene. Further delay means that NuTech will be deprived of that for which it has waited over three years: its day in court. *Id.* at 16.

8.    A short and efficient state-court trial will not prejudice the interests of other creditors. Nor will NuTech be advantaged by lifting the stay. Its liquidated claim will be administered under Debtor's plan just like the claims of any other creditor. Further, all creditors have an economic interest in seeing that Debtor conserves its resources by using the most efficient means to liquidate claims against it. A state court trial is the most efficient means to liquidate NuTech's claims.

9.    Even if the *Curtis* factors weighed against allowing NuTech's claims to proceed against Debtor, the automatic stay should still be lifted such that NuTech can try its claims against GM without dismissing Delphi as a Defendant. *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003) (automatic stay does not apply to non-debtor

5

codefendants).

10. NuTech does not need to show, as Debtor has alleged elsewhere, "extraordinary circumstances" to lift the stay. Debtors' Omnibus Objection to Motions Seeking Relief from Automatic Stay (Doc. No. 1668) [Dec. 29, 2005], 5, ¶ 10, and Debtors' Omnibus Objection to Motions Seeking Relief from Automatic Stay (Doc. No. 3051) [March 31, 2006], 5, ¶ 8. The Second Circuit's decision in *Sonnax* supercedes all prior cases that suggest otherwise, regardless of how extensively Debtor quotes these pre-*Sonnax* cases.

11. The automatic stay's benefits are not unlimited. Congress balanced the stay's benefits with the burden of allowing creditors to seek relief from stay. The automatic stay was intended to preserve a debtor's assets for all creditors by preventing a mad scramble for assets that would result from unchecked unilateral actions by multiple creditors in multiple jurisdictions. Debtor's Omnibus Objection to Mots. Seeking Relief from Automatic Stay (Doc. No. 3051) ¶ 16. The automatic stay was not intended permanently to shield a debtor from the ongoing and routine legal responsibilities that arise during the ordinary course of its business, particularly when these responsibilities do not threaten a debtor's business. Routine litigation did not precipitate — nor will it aggravate — Debtor's bankruptcy. Allowing NuTech's Case, which was poised for trial when Debtor filed its petition, will not stymie Debtor's effort to reorganize. The automatic stay legitimately provides a debtor with "breathing room" that *balances* the interests of debtors and creditors, not an oxygen tent that lets a debtor breathe easy while claimants and witnesses (perhaps literally) gasp.

FOR THESE REASONS, this Court should lift the automatic stay in order to allow NuTech's Case to continue, and grant NuTech all such other and further relief as is just,

6

proper or appropriate in these premises.

Dated at Denver, Colorado this 3rd day of July 2006.

                                      Respectfully submitted,

                                      TISDALE & ASSOCIATES LLC

                                      s/Steven A. Klenda
                                      Douglas M. Tisdale, Esq.
                                      Steven A. Klenda, Esq.

                                      Attorneys for Movant,
                                      NuTech Plastics Engineering, Inc.