UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                   :
       In re                             :        Chapter 11
                                                   :
DELPHI CORPORATION, et al.,       :        Case No. 05-44481 (RDD)
                                                   :
                        Debtors.      :        (Jointly Administered)
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 6004
APPROVING (I) SUPPLEMENT TO UAW SPECIAL ATTRITION
PROGRAM, AND (II) IUE-CWA SPECIAL ATTRITION PROGRAM

("HOURLY SPECIAL ATTRITION PROGRAMS ORDER NO. 2")

Upon the motion, dated June 19, 2006 (the "Motion") (Docket No. 4269), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (each, a "Debtor," and collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. § 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving and authorizing the Debtors to enter into (i) the Supplement (the "UAW Supplement") to the UAW-GM-Delphi Special Attrition Program Agreement by and among Delphi, GM, and the UAW dated March 22, 2006 (the "UAW Special Attrition Program Agreement"), and (ii) the Agreement by and among Delphi, GM, and the IUE-CWA governing the IUE-CWA Special Attrition Program (the "IUE-CWA Special Attrition Program Agreement"), (b) authorizing the Debtors to implement the terms of (i) the UAW Supplement, and (ii) the IUE-CWA Special Attrition Program Agreement, (c) approving the provisions set forth in paragraphs 1.b.iv.3., 3.b., 3.c. and 3.d. of the IUE-CWA Special Attrition Program Agreement (provided, however, that such express approval thereof

shall not be deemed to limit in any way this Court's approval of any other provisions of the IUE-CWA Special Attrition Program Agreement); and after consideration of the Preliminary Objection Of The Ad Hoc Equity Committee To The Debtors' Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (i) Supplement To UAW Special Attrition Program And (ii) IUE-CWA Special Attrition Program (Docket No. 4292), the Preliminary Objection Of Wilmington Trust Company, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program, And (II) IUE-CWA Special Attrition Program (Docket No. 4343), the Limited Objection Of The Official Committee Of Equity Security Holders In Opposition To Debtors' Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program, And (II) IUE-CWA Special Attrition Program (Docket No. 4369), the Limited Objection Of The Official Committee Of Unsecured Creditors To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program, And (II) IUE-CWA Special Attrition Program (Docket No. 4378), the Limited Objection Of Wilmington Trust Company, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program, And (II) IUE-CWA Special Attrition Program (Docket No. 4379), the Supplemental Limited Objection Of The Ad Hoc Equity Committee To The Debtors' Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program, And (II) IUE-CWA Special Attrition Program (Docket No. 4381), the Limited Objection of Wilmington Trust Company, as Indenture Trustee, to Motion for Order Under 11 U.S.C. Section 363(B) and Fed. R. Bankr. P. 6004 Approving (I) Supplement to UAW Special Attrition Program, and (II) IUE-CWA Special

Attrition Program (Docket No. 4390), the Response Of IUE-CWA In Support Of Debtors' Motion For Approval Of IUE-CWA Special Attrition Program (Docket No. 4364), the Statement Of UAW In Support Of Debtors' Motion For Approval Of Hourly Attrition Programs (Docket No. 4367), the Declaration Of Kevin M. Butler In Support Of Debtors' Motion For Order Under 11 U.S.C. Section 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program And (II) IUE-CWA Special Attrition Program (Docket No. 4393), the Declaration Of David L. Resnick In Support Of Debtors' Motion For Order Under 11 U.S.C. Section 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program And (II) IUE-CWA Special Attrition Program (Docket No. 4395), the Declaration Of John D. Sheehan In Support Of Debtors' Motion For Order Under 11 U.S.C. Section 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program And (II) IUE-CWA Special Attrition Program (Docket No. 4396), the Debtors' Omnibus Reply To Objections To Motion For Order Under 11 U.S.C. Section 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program And (II) IUE-CWA Special Attrition Program (Docket No. 4398), and the Revised Exhibit A To Debtors' Omnibus Reply To Objections To Motion For Order Under 11 U.S.C. Section 363(b) And Fed. R. Bankr. P. 6004 Approving (I) Supplement To UAW Special Attrition Program And (II) IUE-CWA Special Attrition Program (Docket No. 4402); and upon the record of the hearing on the Motion held on June 29, 2006, including this Court's consideration of the testimony and exhibits; and this Court having determined, for the reasons stated on the record of the hearing on June 29, 2006 and as set forth in the ruling attached as <u>Exhibit 3</u> hereto, that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is GRANTED, and any objections thereto no otherwise resolved on the record of the Hearing or otherwise withdrawn are DENIED.

2. The Debtors are hereby authorized to enter into the UAW Supplement, attached hereto as Exhibit 1, and to implement the terms of such UAW Supplement.

3. The Debtors are hereby authorized to enter into the IUE-CWA Special Attrition Program Agreement, attached hereto as Exhibit 2, and to implement the terms of such IUE-CWA Special Attrition Program Agreement. For the avoidance of doubt, the IUE-CWA Special Attrition Program shall be applicable to Delphi's IUE-CWA-represented hourly employees employed at the Debtors' facility located in New Brunswick, New Jersey only to the extent specified in the IUE-CWA Special Attrition Program Agreement and the IUE-CWA – Delphi Memorandum of Agreement Regarding The Sale Of Delphi New Brunswick Operations and Special Attrition Program.

4. Each of the signatories to the UAW Supplement and the IUE-CWA Special Attrition Program Agreement (each such party, a "Signatory," and collectively, the "Signatories") is directed to take all actions necessary or appropriate to effectuate the terms of this Order and the terms of their respective agreement, including, without limitation, any and all actions necessary or appropriate to its implementation of and performance under such agreement.

5. With respect to payment by the Debtors of gross monthly wages to those employees who participate in the voluntary pre-retirement program as provided by paragraph 1.b. of the IUE-CWA Special Attrition Program Agreement, Delphi shall establish a segregated bank

account (the "IUE-CWA Segregated Account") that shall be funded in the amount of $12 million. The funds in the IUE-CWA Segregated Account shall be available to satisfy the obligations of paragraph 1.b. of the IUE-CWA Special Attrition Program Agreement and for no other purpose. Under no circumstances (including but not limited to conversion of the Debtors' chapter 11 cases to chapter 7 cases) shall the assets in the IUE-CWA Segregated Account be available to satisfy the claims of any party other than the employees except as otherwise specifically provided in the IUE-CWA Special Attrition Program Agreement. Delphi shall be entitled to withdraw funds from the IUE-CWA Segregated Account as and when provided by the terms of paragraph 1.b.iv. of the IUE-CWA Special Attrition Program Agreement. Upon withdrawal pursuant to the terms of paragraph 1.b.iv. of the IUE-CWA Special Attrition Program Agreement, the Debtors' use of such funds shall no longer be restricted by the terms of the IUE-CWA Special Attrition Program Agreement.

    6.  The IUE-CWA Special Attrition Program Agreement shall not be subject to abrogation, modification, or rejection without the mutual consent of the Signatories. The IUE-CWA Special Attrition Program Agreement, this Court's approval of such agreement, or the performance of any obligation thereunder are each without prejudice to any party-in-interest (including the Signatories, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the Official Committee of Equity Security Holders (the "Equity Committee") in all other aspects of the Debtors' chapter 11 cases, including, by illustration, the Debtors' and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any proceedings under sections 1113 and/or 1114 of the Bankruptcy Code with respect to the IUE-CWA, under section 365 of the Bankruptcy Code with respect to GM's contracts with the Debtors, in any pension termination

5

proceeding under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and/or the Bankruptcy Code, and all claims administration and allowance matters.

       7.      Nothing in the IUE-CWA Special Attrition Program Agreement, this Court's approval of such agreement, or the performance of any obligation thereunder, shall limit or otherwise modify (a) the Debtors' rights under Section 4041 of ERISA or (b) the Debtors' rights under section(s) 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed the IUE-CWA Special Attrition Program Agreement (including pre-existing obligations referenced within such agreement), such as (by way of illustration only) the obligation to maintain the hourly pension plan or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in the IUE-CWA Special Attrition Program Agreement) with levels of healthcare or other benefits as specified in pre-existing labor agreements. Under no circumstances shall the Debtors freeze any pension plan covering IUE-CWA-represented employees in a manner that prevents such employees in the pre-retirement program described in either paragraph 1.b. of the IUE-CWA Special Attrition Program Agreement or in the New Brunswick Special Attrition Program dated May 25, 2006 (the "New Brunswick Special Attrition Program") from receiving on-going credited service sufficient to reach 30 years of credited service. The Debtors shall provide the same healthcare and life insurance coverage to employees participating in paragraph 1.b. of the IUE-CWA Special Attrition Program Agreement and employees participating in the New Brunswick Special Attrition Program that they provide to their other active IUE-CWA employees; <u>provided</u>, <u>however</u>, that if the Debtors reduce or eliminate such coverage provided to their active IUE-CWA employees, GM shall subsidize such coverage provided to employees participating in paragraph 1.b. of the IUE-CWA Special Attrition Program Agreement and employees

6

participating in the New Brunswick Special Attrition Program up to the level provided to GM-IUE-CWA active employees, respectively, as provided in the Health Care Discussions Agreement dated April 10, 2006 between GM and the IUE-CWA.

        8.      Subject to paragraph 10 below, GM may conclusively assert a prepetition general unsecured claim with respect to (x) OPEB obligations it assumes under paragraph 2 of the IUE-CWA Special Attrition Program Agreement (excluding, for avoidance of doubt, incentive payments made by GM to any Delphi employee under paragraph 1.a.i. of the IUE-CWA Special Attrition Program Agreement) and (y) active health care and life insurance obligations it assumes under paragraph 3.d. thereof against the estate of Delphi Corporation under and/or within Delphi's general indemnity of GM under the Master Separation Agreement. GM has agreed to assume and pay OPEB payments to Delphi employees who "check the box" for purposes of retirement, and to pay the amounts due under paragraph 1.a.i. of the IUE-CWA Special Attrition Program Agreement. GM is hereby granted an allowed prepetition general unsecured claim against Delphi in the aggregate amount of all payments actually paid by GM pursuant to paragraph 2. of the UAW Supplement and paragraph 1.c. of the IUE-CWA Special Attrition Program Agreement (collectively, "GM Buyout Payments"). For the avoidance of doubt, any OPEB obligations or active health and life insurance obligations that GM assumes as a result of paragraph 1. of the UAW Supplement shall give rise to claims under and subject to the terms of the UAW Special Attrition Program Agreement (including, without limitation, paragraph 7. thereof) and the amended order approving the UAW Special Attrition Program Agreement (including, without limitation, paragraphs 8 and 10 thereof). Except as provided in this paragraph, GM may not assert any claim against any of the Debtors on account or in respect

of its obligations or performance under the UAW Supplement, or the IUE-CWA Special Attrition Program Agreement.

9. Nothing contained in the IUE-CWA Special Attrition Program Agreement, in this Court's approval of such agreement, or the performance of any obligation thereunder shall constitute an assumption of any agreement described therein, including without limitation (a) any collective bargaining agreement between the IUE-CWA and the Debtors or (b) any agreement between GM and the Debtors, nor shall anything in the UAW Supplement or the IUE-CWA Special Attrition Program Agreement, in this Court's approval of such agreements or the performance of any obligation thereunder be deemed to create or give rise to an administrative or priority claim with respect to, in favor of, or for the benefit of GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

10. For the avoidance of doubt, nothing in the Motion, the UAW Supplement, the IUE-CWA Special Attrition Program Agreement, this Court's approval of such agreements, the performance of any obligation thereunder, or any other document shall prejudice the right of any party-in-interest (including, without limitation, the Debtors, the Creditors' Committee, and the Equity Committee) to challenge the allowability, amount, or priority of any claims asserted by GM (including, without limitation, all defenses, objections, offsets, counterclaims, bases for disallowance, subordination or recharacterization, all avoidance rights under chapter 5 of the Bankruptcy Code, and all remedies with respect thereto), except that (i) GM's claims, if any, with respect to OPEB obligations assumed under paragraph 2 of the IUE-CWA Special Attrition Program Agreement or active health care and life insurance obligations assumed under paragraph 3.d. of the IUE-CWA Special Attrition Program Agreement shall not be subject to objection on the basis that the claims were not assertable under Delphi's general indemnity of GM under the

8

Master Separation Agreement and (ii) GM's claims with respect to GM Buyout Payments are allowed as provided in paragraph 8 hereof and shall not be subject to any objection by any party for any reason.  Notwithstanding the foregoing, neither Delphi nor any of the other Debtors may object on any grounds to the allowance of GM's claims, if any, with respect to OPEB obligations assumed under paragraph 2 of the IUE-CWA Special Attrition Program Agreement; <u>provided</u>, <u>however</u>, that all of the Debtors reserve the right to object to the economic value of such claims (in the nature of assumptions such as discount rate, health care trend rates, mortality, other withdrawal rates, and current and future expected benefit plan design changes).  Except as expressly provided above in this paragraph 10 and except with respect to clause (ii) of the first sentence of this paragraph 10, GM's claims remain subject to all defenses and objections under the Master Separation Agreement or on any other ground.  GM may not assert any claim of any kind arising under or relating to the UAW Supplement or the IUE-CWA Special Attrition Program Agreement against any Debtor other than Delphi, and the foregoing exception shall not impair any right or remedy that may exist with respect to the enforceability or avoidability of any such agreement.  Further, nothing in the Motion, the UAW Supplement, the IUE-CWA Special Attrition Program Agreement, this Court's approval of any such agreements, the performance of any obligation thereunder, or any other document shall prejudice any right or remedy of any Debtor against any other Debtor with respect to the allocation of Delphi's obligations under either of these agreements or claims asserted against, or payments by, Delphi thereunder, all of which rights are expressly preserved.

       11.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and performance of this Order and the UAW Supplement and the IUE-CWA Special Attrition Program Agreement, and over each of the Signatories in

connection therewith; <u>provided</u>, <u>however</u>, that the Court's jurisdiction shall not extend to any bilateral agreements of (i) the UAW and GM, or (ii) the IUE-CWA and GM.

        12.      Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, this Order shall take effect immediately upon its entry.

        13.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       July 7, 2006

                                      /s/ Robert D. Drain_____
                                      UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**June 5, 2006 Supplement To UAW-GM-Delphi
Special Attrition Program Agreement Dated March 22, 2006**

# Exhibit 2

**IUE-CWA-GM-Delphi Special Attrition Program**
**Agreement Dated June 16, 2006**