**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

**SECOND SUPPLEMENTAL AFFIDAVIT OF KPMG LLP AS TAX SERVICES ADVISORS TO THE DEBTORS**

State of Illinois )
) ss:
City of Chicago )

Ann Marie Goddard, being duly sworn, deposes and states as follows:

1. I am a partner of KPMG LLP, a professional services firm. I submit this second supplemental affidavit (the "Second Supplemental Affidavit") on behalf of KPMG LLP in order to supplement its disclosures with respect to KPMG LLP's retention as tax services advisors to Delphi Corporation, and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"). This Second Supplemental Affidavit hereby incorporates by reference the Affidavit of Patrick N. Karpen, sworn to on February 9, 2006 (the "Original Affidavit"), and the First Supplemental Affidavit of Gary A. Silberg, sworn to on April 20, 2006 (the "First Supplemental Affidavit"), previously filed with this Court. I have

personal knowledge of the matters set forth herein, and, if called as a witness, would testify competently thereto.[1]

2. In the Original Affidavit, KPMG LLP disclosed that it provides certain services to General Motors Corporation, directly or on behalf of its counsel ("GM"), and that out of an abundance of caution KPMG LLP had instituted Screening Procedures (as defined in the Original Affidavit) so that professionals who provide services to the Debtors will not provide services to GM. KPMG LLP further disclosed, however, that certain KPMG LLP professionals, who also may be providing tax consulting services to GM, provide international tax consulting services to the Debtors, and are not included in the Screen Procedures with respect to these services.

3. Recently, the Debtors have requested that certain KPMG LLP professionals, who have previously provided international executive services to expatriate employees of GM, provide international executive services to expatriate employees of the Debtors under the IES Engagement Letter (as defined in the Original Affidavit) and/or the Supplemental IES Engagement Letters (as defined in the First Supplemental Affidavit). These services, as described more fully in the Original Affidavit and the First Supplemental Affidavit, are in the nature of advising the employees on tax compliance matters. Because these services are not adversarial to any entity, but, rather, are provided in the context of KPMG LLP separately and independently advising the employees of the Debtors (or GM) on their respective tax liabilities, KPMG LLP submits that it will not represent any interest adverse to the Debtors' estates as a result of having one or more of the KPMG LLP professionals that have provided such services to GM also provide such services to the Debtors, and, thus, such KPMG LLP professionals will not be included in the Screen Procedures with respect to these services.

---

[1] Certain of the disclosures herein relate to matters within the knowledge of other professionals at KPMG LLP.

4. In addition, prior to the commencement of the Debtors' chapter 11 cases, KPMG LLP entered into that certain System License Agreement, dated May 11, 2000 (the "System License Agreement"), by and between KPMG LLP and Delphi Automotive Systems ("DAS"), a Debtor in these chapter 11 cases, providing for certain tax cost projection software and certain maintenance and support services for such software to be provided by KPMG LLP to DAS. The fees KPMG LLP receives from DAS for such software and maintenance services are set forth in Appendix D of the System License Agreement, a copy of which is annexed hereto as Exhibit "A."

5. KPMG LLP's identification of material relationships is ongoing. If and when additional information becomes available with respect to any other relationships which may exist between KPMG LLP, KPMG Member Firms (as defined in the Original Affidavit), or their partners and professionals and the Debtors, creditors, or any other parties-in-interest which may affect these chapter 11 cases, supplemental affidavits describing such information will be filed with the Court.

6. This Second Supplemental Affidavit is provided in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

Dated: Chicago, Illinois
July 10, 2006

By: [signature]
Name: Ann Marie Goddard
Title: Partner

Sworn to before me on
this 10th day of July, 2006

[signature]
Notary Public

"OFFICIAL SEAL"
Theresa M. McCreary
Notary Public, State of Illinois
My Commission Exp. 03/14/2010

# EXHIBIT A

**KPMG LLP**

SYSTEM LICENSE AGREEMENT

CLIENT NAME: Delphi Automotive Systems
(hereinafter referred to as "Licensee")

ADDRESS: 1450 West Long Lake

Troy, Michigan 48098

WHEREAS, KPMG LLP ("Licensor") is the owner of all right, title and interest in and to the computer software consisting of the computer programs and related materials designated in Appendix A hereto (hereinafter referred to as the "Software"); and

WHEREAS, Licensee desires to make use of the Software and Licensor is willing to make the Software available to Licensee on the terms and conditions set forth in this Agreement; and

WHEREAS, Licensor is willing to make available to Licensee certain maintenance and support services for the Software as set forth in Appendix B hereto;

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained, the parties agree as follows:

1. License. Licensor hereby grants Licensee, on the terms and conditions contained herein, a perpetual, nontransferable, nonexclusive license to use the Software on Licensee's computer(s) described in Appendix C (the "Equipment"). Licensee shall not without the prior written consent of Licensor use the Software on a computer other than the Equipment.

2. System Entitlements. In consideration for the fees set forth in Appendix D hereto, Licensor will provide Licensee with the Software set forth in Appendix A and the support services described in Appendix B (the Software and such support services, collectively, the "System").

3. Proprietary Right to the Software.

a. Nothing contained herein shall be deemed to convey to Licensee any title or ownership interest in the Software. Licensee acknowledges and agrees that the Software, including modifications to the Software made by Licensor or Licensee, the copyright therein, and all disks, documentation and other physical embodiments of the Software, are and shall remain the valuable property of Licensor; and Licensee shall have no rights therein other than as set forth in this Agreement. Licensee acknowledges and agrees that the Software contains valuable trade secrets of Licensor.

b. Except as provided herein, Licensee shall not, during the term of this Agreement or any time thereafter, without the prior written consent of Licensor: (i) duplicate or knowingly permit others to copy or duplicate any physical embodiment of the Software or (ii) create or recreate or attempt to create or recreate

programs or other aspects of the Software except for Licensee's own use in accordance with the license granted hereunder.

c. Licensee agrees that the Software and all related materials ("Confidential Information") received from Licensor under this Agreement shall be held in confidence and that Licensee shall protect the Software and such materials, taking appropriate action within its own organization to prevent disclosure, unauthorized use or publication thereof.

d. If Licensee is required (by deposition, interrogatories, subpoena or similar legal process) to disclose any Confidential Information, Licensee will promptly so notify Licensor so that Licensor may seek an appropriate protective order or other remedy or waive compliance with the provisions of this Agreement. Failing the entry of a protective order or the receipt of a written waiver hereunder, if Licensee, in the written opinion of its attorneys, is compelled to disclose any Confidential Information under pain of contempt or other material censure or material penalty, Licensee may disclose such Confidential Information without liability hereunder upon written notice to Licensor.

e. Notwithstanding the foregoing, Licensee shall be permitted to disclose the Software to its officers, employees and authorized agents who have a need to know.

(i) Licensee agrees that all those individuals having access to the Software under the Agreement shall agree to observe and perform this nondisclosure covenant, and that, upon Licensor's reasonable request, Licensee will advise Licensor of the procedures employed for this purpose.

(ii) In the event that Licensee "outsources" or otherwise contracts with a third party for services that might result in the third party using the Software to perform calculations for Licensee or otherwise having access to the Software, Licensee shall promptly notify Licensor of such "outsourcing" or other contract and Licensor shall have the right to terminate the license as described in paragraph 9. If the Licensor, in its sole discretion, decides not to terminate the license, the Licensor shall have the right to require the third party to sign a license agreement or non-disclosure agreement in form and substance satisfactory to Licensor prior to actual use of the Software. However, third party access to printed reports generated by the Software, without access to use of the Software or to a copy of the physical embodiment of the Software, is not intended to trigger this provision.

f. Licensee acknowledges that a breach of its obligations under this paragraph 3 may cause Licensor irreparable harm for which there is no adequate remedy at law. Therefore, in the event of a violation by Licensee of the provisions of this paragraph 3, Licensor, in addition to any other remedies available to it at law or in equity, shall be entitled , upon adequate proof to a court of competent jurisdiction, to injunctive relief to enforce its rights hereunder.

g. The provisions of this paragraph 3 shall survive the termination of this Agreement for any reason.

4. Modification of Software. Licensee may modify the source and resultant object programs of the Software; provided, however, that all such modifications shall become and remain the property of Licensor and shall be considered part of the Software licensed hereunder; and subject, however, to subparagraph 5c hereof. The Licensor does not cover such modifications in the Warranty, does not provide support or maintenance services with respect to any such changes, and provides no assurance that such changes will work with later versions of the Software, if any.

5. Warranty; Exclusion of Liability.

a. Licensor warrants, for a period of one year from the effective date of this Agreement (the "Warranty Period"), that the Software, when properly installed and operated by qualified professionals, shall operate in accordance with Licensor's specifications. Licensor shall, during the Warranty Period, promptly and at no charge to Licensee correct any programming errors, defects or malfunctions in the Software so as to make it operate according to Licensor's specifications. EXCEPT FOR THE ABOVE WARRANTY, LICENSOR MAKES NO OTHER WARRANTIES EITHER EXPRESS OR IMPLIED. IN PARTICULAR, ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED.

b. Proper use of the Software requires a thorough understanding by Licensee and its employees of relevant tax laws and proper analysis of the data processed by, or obtained by use of, the Software. Licensor gives no assurance of any benefits that may be derived from use of the Software. Licensor does not assume responsibility for Licensee's use of the results of any calculations performed by the Software. Subject to paragraph 6 hereof, Licensor is under no obligation to update the Software for future changes in tax laws or the interpretation thereof.

c. The warranty set forth in this paragraph 5 shall not be effective, and Licensor shall not have any obligation or liability to Licensee, if (i) the Software is not used in accordance with applicable documentation; (ii) the Software has been altered, modified or revised by Licensee without the express approval of Licensor; (iii) Licensee uses the Software with equipment not approved by Licensor; or (iv) Licensee's computer equipment malfunctions.

d. The foregoing states the entire obligation of Licensor and the exclusive remedy of Licensee with regard to the licensing of the Software and its use by Licensee or arising out of any services rendered by Licensor in connection with the System. In no event shall Licensor be liable for incidental, consequential, indirect or special damages of any nature whatsoever, including without limitation loss of profit or other commercial loss, even if Licensor is apprised of the possibility of such damage.

6. Maintenance Terms. After the Warranty Period, for additional periods of one year subject to payment of the applicable fees as set forth in Appendix D, Licensor will provide Licensee promptly after issuance all modifications of the Software made by Licensor and made available generally to licensees of the Software, together with information and material necessary for their implementation on Licensee's data processing equipment. All such modifications shall be subject to the terms of this Agreement. Licensor shall have the right to terminate the services set forth in this paragraph 6, or to change the fees therefor, upon notice to Licensee given at least 90 days before the end of any annual maintenance period.

7. Sales, Use or Similar Taxes. If imposed by a state or other jurisdiction, state or other government sales, use or similar taxes are the responsibility of the Licensee. If a state or other government seeks to collect such taxes from the Licensor, Licensor has the right to recover such tax payments together with interest charged by the respective government from the Licensee. Licensor shall pay any penalties imposed in such situations. Income taxes resulting from the license fee remain the responsibility of the Licensor.

8. Indemnity.

a. Licensor shall indemnify and hold Licensee harmless from and against and defend any claim, or suit or proceeding, and shall pay any settlement amounts or damages awarded by a court of final jurisdiction, arising out of claims by third parties that the Software infringes on any United States copyright, patent or trademark. Licensee shall promptly notify Licensor in writing of any such claim, suit or proceeding, permit Licensor to control the defense or settlement thereof, and cooperate in the defense or settlement thereof. Licensee shall have the option to be represented by counsel at Licensee's own expense.

b. In the event of an infringement claim pursuant to Section A. above Licensor shall provide Licensee with (i) the right to continue using the Software, (ii) a replacement or modified product with substantially the same functionality as the Software, or (iii) a refund in exchange for termination of Licensee's right to use the Software; provided the Licensor, at its sole discretion, shall determine which of the foregoing shall apply.

c. Notwithstanding anything herein to the contrary, the indemnity under this paragraph shall not apply to any infringement arising out of (i) use of the Software not authorized by Licensor or not in accordance with applicable documentation or instructions of Licensor or (ii) any alteration, modification or revision of the Software not explicitly authorized by Licensor.

9. Termination.

a. This Agreement and the license granted hereunder shall automatically terminate in the event of a violation by Licensee of the provisions of paragraph 3 hereof and may also be terminated by Licensor on thirty (30) days notice, if Licensee violates any other term or condition of this Agreement.

b. If Licensor provides, or is later engaged to provide, audit services to Licensee, Licensor will be required by professional and regulatory requirements to maintain independence from Licensee. Should the license of this Software be deemed, by Licensor or any professional or regulatory body, to impair such independence, Licensor retains the right to terminate this license upon thirty (30) days written notice to Licensee. If such notice is sent to Licensee within thirty-six (36) months of the Effective Date of this Agreement, Licensor will rebate a pro-rata portion of the Software License Fee set forth in Appendix D, the rebate percentage being determined by dividing the number of months between the date of such notice and the Effective Date of this agreement by thirty-six (36). If there is no separately stated Software License Fee in Appendix D, no rebate as described in the previous sentence will be provided.

c. Within ten (10) days after any such termination, Licensee shall certify in writing to Licensor that the original and all copies in any form, including partial copies and modifications of the Software received from Licensor or made pursuant to the license granted hereunder, have been returned to Licensor or destroyed.

10. Term. This Agreement and the license granted under it will become effective upon delivery of the Software and shall remain in full force and effect until terminated as herein provided.

11. No Assignment. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors. Neither this Agreement nor any of the rights or interests hereunder shall be assigned by Licensee without the prior written consent of Licensor.

12. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

13. Amendments. Licensor and Licensee agree that this Agreement shall be modified only by written agreement duly executed by the parties.

14. Severability. If any part of this Agreement is adjudged by any court of competent jurisdiction to be invalid, that judgment shall not affect or nullify the remainder of this Agreement and the effect shall be confined to the part immediately included in the controversy adjudged.

15. Entire Agreement. This Agreement, including the Appendices attached hereto, is the exclusive and complete statement of the mutual understanding of the parties and it supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Dated: 11 May 2000

Delphi Automotive Systems
Licensee

By [signature]
(Authorized Signature)

Sara J. Tiderington
Mgr. IHRM

KPMG

(Print or Type Name and Title)

KPMG LLP

By ____________________
(Authorized Signature)

Paul S. Goldberg, Partner
(Print or Type Name and Title)

KPMG

**Appendix A**

The Software

The "Software" referred to in this agreement shall include:

- o **KPMG/LINK** sm cost projection programs, including worksheet templates for U.S., state and foreign country modules listed below, installation program and custom add-in applications; and
- o User manual for **KPMG/LINK** sm
- o Documentation for state and foreign country modules listed below

The Modules referred to above shall include:

- o Cost projection module: **KPMG/LINK** sm, Version 6.6
- o Foreign Country Modules below identified by initials:

| All Countries below | X |
|---|---|

or

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Argentina | | Denmark | | Korea | | Singapore | |
| Australia | | Egypt | | Kuwait | | South Africa | |
| Austria | | Finland | | Luxembourg | | Spain | |
| The Bahamas | | France | | Malaysia | | Sweden | |
| Bahrain | | Germany | | Mexico | | Switzerland | |
| Belgium | | Greece | | The Netherlands | | Taiwan | |
| Bermuda | | Honduras | | New Zealand | | Thailand | |
| Brazil | | Hong Kong | | Norway | | Trinidad and Tobago | |
| Canada | | Hungary | | Oman | | Turkey | |
| Cayman Is. | | India | | The Philippines | | United Arab Emirates | |
| Chile | | Indonesia | | Poland | | United Kingdom | |
| China | | Ireland | | Portugal | | United States | |
| Columbia | | Israel | | Puerto Rico | | Venezuela | |
| Costa Rica | | Italy | | Russia | | Vietnam | |
| Cyprus | | Japan | | Saudi Arabia | | | |

Last Modified 2/5/96

KPMG

**Appendix B**

Support Services

In conjunction with an executed License Agreement, Licensor will provide to Licensee the following:

(a) Licensor will install the software and provide up to 16 hours of initial year training, installation, and support for Licensee's personnel for the fees set forth in Appendix D, plus travel and out-of-pocket expenses incurred by Licensor in connection with installation and training. In addition, Licensor will provide up to 8 hours of telephone assistance to Licensee in resolving queries on software usage during each subsequent maintenance period.

(b) Anything herein to the contrary notwithstanding, Licensor shall not be obligated hereunder to provide warranty or support services in connection with hardware or third-party software related problems.

KPMG

**Appendix C**

Authorized Site(s) and System Requirements

Location

Delphi Automotive Systems
1450 West Long Lake
Troy, Michigan 48098

**KPMG/LINK** sm Cost Projection Module

PC Compatible machine with a 200 MHz Pentium processor or higher with:

Minimum 32 MB RAM
15 MB Free Hard Disk Storage

Microsoft Excel 97 or higher

KPMG

**Appendix D**

KPMG/LINK sm Fee Information

**Cost Modules (Cost Projection and Hypo Tax Calculator)**

| | Cost Projection Module | | | | Hypo Tax Calculator | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Additional Copies | | | | Additional Copies | |
| Countries | US Location | Non-US Location | US Location | Non-US Location | US Location | Non-US Location | US Location | Non-US Location |
| 5 | $12,000 | $16,000 | $6,000 | $8,000 | 6,000 | 8,000 | 3,000 | 4,000 |
| 6 | 13,500 | 17,750 | 6,750 | 8,875 | 6,750 | 8,875 | 3,375 | 4,438 |
| 7 | 15,000 | 19,500 | 7,500 | 9,750 | 7,500 | 9,750 | 3,750 | 4,875 |
| 8 | 16,500 | 21,250 | 8,250 | 10,625 | 8,250 | 10,625 | 4,125 | 5,313 |
| 9 | 18,000 | 23,000 | 9,000 | 11,500 | 9,000 | 11,500 | 4,500 | 5,750 |
| 10 | 19,500 | 24,750 | 9,750 | 12,375 | 9,750 | 12,375 | 4,875 | 6,188 |
| 11 | 21,000 | 26,500 | 10,500 | 13,250 | 10,500 | 13,250 | 5,250 | 6,625 |
| 12 | 22,500 | 28,250 | 11,250 | 14,125 | 11,250 | 14,125 | 5,625 | 7,063 |
| 13 | 24,000 | 30,000 | 12,000 | 15,000 | 12,000 | 15,000 | 6,000 | 7,500 |
| 14 | 25,500 | 31,750 | 12,750 | 15,875 | 12,750 | 15,875 | 6,375 | 7,938 |
| 15 | 27,000 | 33,500 | 13,500 | 16,750 | 13,500 | 16,750 | 6,750 | 8,375 |
| 16 | 28,500 | 35,250 | 14,250 | 17,625 | 14,250 | 17,625 | 7,125 | 8,813 |
| 17 | 30,000 | 37,000 | 15,000 | 18,500 | 15,000 | 18,500 | 7,500 | 9,250 |
| 18 | 31,500 | 38,750 | 15,750 | 19,375 | 15,750 | 19,375 | 7,875 | 9,688 |
| 19 | 33,000 | 40,500 | 16,500 | 20,250 | 16,500 | 20,250 | 8,250 | 10,125 |
| 20 | 34,500 | 42,250 | 17,250 | 21,125 | 17,250 | 21,125 | 8,625 | 10,563 |
| 21 + | 36,000 | 44,000 | 18,000 | 22,000 | 18,000 | 22,000 | 9,000 | 11,000 |

| ***Additional Options for Cost Projection Module:*** | |
|---|---|
| **Customization:** setting defaults, sourcing changes and development of a custom Summary Report | **$1,500 - $7,500** |
| **Table Lookup Option:** compute a defined set of input items via reference to external tables. | **$5,000 - $10,000** |
| **Custom Country Development:** company specific calculations such as negotiated social insurance calculations | **$5,000** |
| **Template Creation:** preparing standard data files for certain countries or assignment types. | **$500 per template** |
| **Hypo Tax Calculation Module:** available at a flat fee if the Cost Projection Module has already been purchased. | **$5,000** |

Last Modified 2/5/96

KPMG

**Appendix D, con't**

**KPMG/LINK sm** Fee Information

**Maintenance Fee:** For **KPMG/LINK sm**, the annual maintenance fee for the Cost Projection Module is currently 40% of the aggregate initial year license fees. For all other modules, the annual maintenance fee is 20% of the aggregate initial year license fees, including any fees for additional options, features and customization. The maintenance fee percentage is guaranteed for the first annual maintenance period. Thereafter, the maintenance fee is subject to adjustment of the consumer price index for that year.

General system maintenance made by the Licensor are covered by the maintenance fee. General system maintenance are periodically made by Licensor to enhance the system (i.e. performance) and functional changes (i.e. tax law updates). General system maintenance do not include complete system rewrites, new versions, or new LINK products that are not listed in the software license agreement.

**Customization:** Custom features, such as automated data transfers, and report writing, if not otherwise specified in this document, may be available for an additional fee. Such customization may be requested by licensee at any time during the term of this Agreement. These custom features may increase the maintenance fee in subsequent years.

**Multiple Copies (Cost Projection Module only):** The license fee allows for unlimited copies to be made for a given location. Additional copies for affiliated entities of Licensee at other locations are each 50% of the then current initial year license fee; provided, however, that the foregoing reduced rate for additional copies will be available to Licensee only for the 90 day period beginning on the effective date of this Agreement. For purposes of this Agreement an "affiliated entity" is (i) in the case of a corporation, a corporation that is eligible to file a consolidated income tax return with Licensee under Section 1502 of the Internal Revenue Code of 1986 and (ii) in other cases, an entity the majority of the ownership interests of which are held by Licensee.