MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Attorneys for United Steelworkers
1350 Broadway, Suite 501
New York, New York 10018
212 239 4999
Lowell Peterson (LP 5405)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

DELPHI CORPORATION, et al.                    Case Nos. 05-44481 (RDD)
                                              Jointly Administered

                        Debtors.
-------------------------------------------------------------x

**OBJECTION OF UNITED STEELWORKERS TO DEBTORS' SUPPLEMENT TO KECP MOTION (DOCKET NO. 213) SEEKING AUTHORITY TO: (A) FIX SECOND HALF 2006 AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING**

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (the "USW" or "United Steelworkers") objects to the Debtors' Supplement to KECP Motion (Docket No. 213) Seeking Authority to (a) Fix Second Half 2006 AIP Targets and Continue AIP Program and (b) Further Adjourn KECP Emergence Incentive Program Hearing (the "Supplemental KECP Motion").

1. On or about November 22, 2005 the USW filed objections to the Debtors' initial KECP Motion, which was dated October 13, 2005.

2. The USW relies principally on its November 22 objections; the declaration of USW representative Mark Shaw and his cross-examination testimony at this Court's February 10, 2006 hearing concerning the Debtors' revised KECP

1

motion; and the exhibits introduced at the February 10 hearing, including the document setting forth the compensation which Delphi actually paid to the executives in 2003, 2004, and 2005. This document set forth cash compensation and several forms of non-cash compensation, but did not include the value of "fringe" benefits such as use of corporate aircraft, use of corporate-owned apartments, and so forth. The document demonstrated that a large number of the Debtors' executives actually were paid more in 2005 than they were in 2004 and that many received enormous amounts of money from Delphi in 2005.

3. The experience since the February hearing militates against approving the proposed supplement to the KECP motion.

4. First, the Debtors' executives also received hefty payments from the Annual Incentive Plan approved by the Court in February. It appears and that the AIP targets for the first half of 2006 were easily attainable and that receiving AIP payments was a "slam dunk", after all. In other words, the Debtors' executives have done significantly <u>better</u> for themselves in 2005 and 2006 than in the preceding years.

5. Second, the fortunes of top management have improved at precisely the same time the Debtors have moved forward with plans to put most of their unionized employees out of work and to slash the wages and benefits of the survivors. This juxtaposition is an outrage and calls into question the soundness of the Debtors' exercise of its business judgment. Indeed, with the Supplemental KECP Motion the Debtors seek to extend this largesse, not only to the second half of 2006, but indefinitely into the future.

6. This Court has heard many days of testimony in connection with the Debtors' Section 1113 and 1114 applications and has continued the hearing until August 11, 2006. Collective bargaining continues fitfully. At present, there is still no attrition program for the hourly employees represented by the USW. Indeed, in a distinct change of course, the Debtors have refused to enter any such program unless the USW also agrees to a comprehensive wage- and benefit-cutting package which would sharply modify the current collective bargaining agreements.

7. The approach that the Debtors' now take with the USW differs wholly from the approach that it has taken with its UAW- and IUE CWA-represented employees where the Debtors were willing to agree to attrition programs without conditions relating to resolution of the Section 1113 and 1114 applications. While the USW understands that the instant motion is not a forum to try its Section 1113/ 1114 case, as the evidence adduced during the Section 1113 trial demonstrated, the likely result of a USW attrition program would be a USW-represented workforce whose wages and benefits were already below the "market rate" identified by the Debtors.

8. The Debtors' principal rationale for extending the AIP is that the executives' compensation would otherwise be below "market". Under this reasoning, the compensation of the USW-represented employees who are most likely to remain after an attrition program should also be increased. Oblivious to the irony, the Debtors insist instead that the compensation of USW-represented employees be reduced.

3

9. As the evidence adduced at the February 10 KECP hearing indicated, any changes to the Debtors' collective bargaining agreements with the USW must be ratified by the members. Whether or not it should be a simple matter to explain the importance of market-rate compensation to union members as an abstract matter, the reality is that the USW members who would vote on revised collective bargaining agreement with the Debtors would themselves be underpaid. It is difficult to imagine why they would vote to cut their wages and benefits further at the same time the Debtors' executives are raking in millions of dollars in incentive pay that they simply did not receive before the company entered Chapter 11. As before, the KECP unnecessarily imperils the likelihood of ratification and the motion to approve the supplement to the KECP Motion must be denied.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:      /s/ LOWELL PETERSON
         Lowell Peterson (LP 5405)

1350 Broadway, Suite 501
New York, New York 10018
212 239 4999
212 239 1311 (fax)
lpeterson@msek.com

David R. Jury
Assistant General Counsel
United Steelworkers
Five Gateway Center, Room 807
Pittsburgh, Pennsylvania 15222

4

(412) 562-2545
(412) 562-2429 (fax)
djury@usw.org

Attorneys for United Steelworkers

78416