MARIANNE G. ROBBINS
PREVIANT, GOLDBERG, UELMEN,
GRATZ, MILLER & BRUEGGEMAN s.c.
1555 N. RiverCenter Drive, Ste. 202
P.O. Box 12993
Milwaukee, WI   53212
414/271-4500
mgr@previant.com

Attorneys for:
International Brotherhood of Electrical Workers
Local Union No. 663 (IBEW) and the International
Association of Machinists, AFL-CIO, Tool and Die
Makers Local Lodge 78, District 10 (IAM)

BARBARA S. MEHLSACK (BM1390)
GORLICK, KRAVITZ & LISTHAUS P.C. .
17 State Street, 4th Floor
New York, NY   10004
212/269-2500
bmehlsack@gkllaw.com

Attorneys for:
International Union of Operating Engineers
(IUOE) Locals 18S, 101S, 832S,

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

OBJECTIONS AND MEMORANDUM OF LAW IN SUPPORT OF
OBJECTIONS OF IBEW LOCAL 663, IAM DISTRICT 10, and IUOE
LOCALS 18S, 101S, and 832S TO SUPPLEMENT TO KECP MOTION SEEKING
AUTHORITY TO FIX SECOND HALF 2006 AIP TARGETS AND CONTINUE AIP
PROGRAM

The International Brotherhood of Electrical Workers Local Union No. 663 ("IBEW"), International Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78, District 10 ("IAM") and the International Union of Operating Engineers Locals 18S, 101S and 832S ("IUOE") are labor unions who collectively represent approximately 135 hourly employees of Delphi Corporation, et al. ("Debtor" or "Delphi").  In addition, the IBEW, IAM and IUOE are each the "authorized representative" of retirees from their respective bargaining units within the meaning of 11 U.S.C. § 1114.  The IBEW, IAM and IUOE hereby object to the Supplement to KECP Motion filed by the Debtor because the Debtor has failed to meet the legal and factual standards required to authorize such payments.  The proposed amendment and continuation of the Annual Incentive Program ("AIP"), given the Debtor's claimed circumstances and the concessions sought from hourly employees, is neither necessary nor fair and equitable and therefore should be denied or deferred until conclusion of this bankruptcy case.

<u>Preliminary Statement</u>

The Debtor seeks Court approval: a) to extend its AIP for the second half of 2006 at significantly easier to achieve performance targets than were set by the Court's Order for first six months of the year; and b) blanket authority to continue the AIP and establish performance targets after December 31, 2006 by agreement with the Creditors Committee, without the necessity for a Court Order.  The IBEW, IAM and IUOE (collectively "Unions") object to the continued AIP on the grounds that 1) the Debtor has not offered good business reasons for its continuation at this time or at the levels

2

proposed; and 2) continuation of the AIP at this time is neither fair nor equitable in light the Debtor's pending motions under Sections 1113 and 1114. The Unions further object to granting the Debtor authority to continue the AIP after December 31, 2006 on the mere say-so of the Creditors Committee, notwithstanding the Creditors Committee's status as a fiduciary. The AIP is out of the ordinary course of business and should be subject to the scrutiny of the Court and all of the interested parties in this proceeding, including specifically the labor organizations representing its hourly employees..

The Debtor proposes to continue the AIP at targets that are substantially easier to achieve than those of the initial AIP. It loudly proclaims the need to reward its executives for their success in managing the business (Supplement to KECP Motion, p.10, ¶ 14) while it: a) proposes to show the door to the majority of the employees the "splinter Unions" represent, with no agreement as yet on any type of attrition program; and b) proposes to radically reduce compensation and benefits for the remaining employees without any evidence that their compensation exceeds competitive levels and without regard for the efforts of those unionized employees in achieving the better than expected results.

The Debtor justifies the substantially easier targets under the generally rubric of "seasonal variations" without regard to the fact that the Debtor expects to exceed their financial projections by more than $600 million at the operating income line for the first half of the year. ( Supplement to KECP Motion, p. 10. ¶14). It is respectfully submitted that, in view of the Debtor's 2006 performance to date, the risk is that the new targets

may be so low as to make the payments virtually automatic and hence lacking in any business justification.

The Debtor claims that the AIP at the easier to achieve targets is necessary to make executive compensation competitive and stabilize turn over but offers neither turn over data to support its claims nor specific financial data to justify the substantial differences in the performance targets. Hence that justification for the AIP must fail.

The Debtor offers no authority for its request to be able to continue the AIP after December 31, 2006 merely upon agreement with the Creditors' Committee without notice to the Unions and other interested parties and without seeking Court approval. With all due respect for the good faith of the parties involved, the Debtor' proposal to negotiate executive performance targets with the Creditors Committee out of the public eye must be rejected.

## Factual Background

1. At the present time this court has only authorized implementation of a short-term AIP for the first six months of 2006. Although Debtor projections for performance during the first half of 2006 have proven to be unrealistically low, the Debtor requests still lower targets for the second half of 2006.

2. The Debtor also seeks authority to establish targets for subsequent six-month increments without further review and approval by the Court.

3. The Debtor proposes to commit additional resources of an unspecified amount. The Debtor estimates the plan for the first half of 2006 will cost the estate

approximately $36.3 million and seeks to further lower targets which, all things being equal, will increase the cost above that figure for the second half of 2006.

4.      This additional burden on the estate is proposed at a time when union-represented employees are asked to take wage cuts of more than 25%, deep cuts in virtually all fringe benefits and to give up the protection provided by their labor agreements for pension benefits which could be slashed by a distress termination of the Hourly Employees Pension Plan.

5.      The additional sums are allegedly to retain executives employees when the Debtor seeks to reduce its footprint and staffing, presumably at all levels, and when the Company is not experiencing substantial turnover among its management ranks.

## Applicable Legal Standards

6.      Provision of or, in this case, continuation of a key employee compensation program is not an ordinary course of business expense. Therefore, under Section 363(b)(1) of the Bankruptcy Code such programs require court approval. In re Montgomery Ward Holding Corp., 242 BR 147, 153 (Bankr. D. Del. 1999).

7.      Under Section 363(b)(1) of the Code, Delphi must satisfy four criteria to obtain court approval for its proposed KECP: (1) it must articulate a good business reason for the KECP, (2) it must provide factual evidence for such good business reason, (3) it must demonstrate, apart from its good business reason, that the particular KECP proposed will aid in reorganization, and (4) the KECP must fairly and reasonably

balance equities inherent in Chapter 11 reorganization. In re Lionel, 722 F.2d 1063, 1070-1071.

8. As a transaction involving compensation to insiders, the KECP should be subject to "rigorous scrutiny." Pepper v. Litton, 308 U.S. 295, 308 (1939). See also, In re Trident Shipworks, Inc., 247 BR 856, 865-866 (M.D. Fla. 2000) (involving insider lease transaction).

9. Among the appropriate considerations is the need to avoid committing the estate to costly compensation arrangements in advance of a confirmation of plan reorganization. In re U.S. Airways, 329 BR 793, 799-801.

10. The routine application of the business judgment rationale is not appropriate for a KECP program. In re Regensteiner Printing Co., 122 BR 323 (N.D. Ill. 1990) (requiring proponents prove fairness to the estate and to creditors).

11. The Debtor cannot put forward a KECP plan without consulting the Unions where the Unions' support and participation in the bankruptcy is critical. In re Geneva Steel Co., 236 BR 770-773 (Bankr. D. Utah 1999).

Argument

The Debtor Has Not Met Its Burden of Proof for Continuing
the AIP Program With Reduced Targets

12. The Debtor has not established that its executive compensation levels are not competitive. It's U.S. Executives numbered approximately 466 in February of 2006. (Declaration of Nick Bubnovich in support of Debtor's KECP Motion of October, 2005,

6

p. 12,¶ 28). The Debtor claimed that the Debtor's record of executive attrition at that time demonstrated the need for the AIP. The Debtor offers no data on executive attrition to demonstrate continued need for the program. Based upon the declaration of Nick Bubnovich in support of the Debtor's intial KECP motion, it appears that the quit rate of executives in 2005 was less than 5%. [Bubnovich testified that 21 executives quit in the 12 months preceding the petition filing date. (Bubnovich Declaration,¶ ,41).] The Debtors have offered no evidence as to how their quit rates compare to quit rates in the automotive or manufacturing sector as a whole. (We note that in the Section 1113/1114 proceeding, the Debtor's expert , Michael Wachter, compared the hourly employees quit rates to employees economy wide and in the manufacturing sector as a whole and opined that quit rates of less than 2% for Delphi employees compared to 15% in manufacturing as a whole were evidence of very high compensation premiums. (Wachter Supplemental Declaration ¶ 20) ].

13.     There is no evidence that deferral of executive incentives until the conclusion of the bankruptcy will impede reorganization. Indeed, it may improve the incentive for management to remain with the Debtor through the entire bankruptcy procedure.

14.     Given the Debtor's stated intention to reduce its footprint, voluntary attrition in management has not been demonstrated to hamper reorganization.

15.     The continued provision of incentives at lower target levels will have an adverse impact on the Debtor's and the Unions' ability to reach consensual agreements to reduce compensation of hourly-represented employees.

16. Given the Debtor's previously unrealistically low performance targets for the first half of 2006 and the Debtor' performance at $600 million above projected levels, there is no justification or logic behind reducing target levels for the second half of 2006. A comparison of the incentives targets reveals significant differences that are not explained by the Debtor's justification of the need to adjust for seasonal variations. Thus the EBITDAR-UG target is set at a negative $411 million while the target for the first half was only negative $80 million. The only numbers offered by Debtor to justify the difference is the chart showing the differences in operating income by six month periods. Nothing in the chart explains the five fold increases in "incentivized" losses under the second half AIP. Similarly, for OIBITDAR-UG, the Debtor has set the target for Thermal and Interior at negative $140 million compared to $ 79.2 million for the first half. Particularly inexplicable, albeit small in significance, is the negative $9 million target for the Medical division compared to $0.3 million for the first half of the year, a 30 fold increase in "incentivized" losses. .

17. On their face it appears irresponsible for the Debtor to seek continuation of the AIP at these reduced target amounts. It is all the more irresponsible when the Debtor continues to assert an inability to meet minimum funding requirements for its Hourly Employees Pension Plan and continues to reserve the right to initiate the termination of that plan, which would cause retirees from the IBEW, IAM and IUOE bargaining units to lose supplemental pension benefits at a time when, because of plant closures, no future employment in lieu of early retirement is available. The absence of minimum funding would particularly impact employees and retirees represented by the

IBEW, IAM and the IUOE, since the Debtor claims these Unions have no benefit guarantee through General Motors and since the Debtor has conditioned its proposed attrition package to these Unions on their disclaiming any benefit guarantee through General Motors.

18.     The timing of the Debtor's Motion is particularly egregious in relation to the IBEW, IAM, and the IUOE, since the Debtor has made minimal efforts to meet with these "splinter Unions" during the hiatus in the Section 1113 and Section 1114 hearings to address their principal concerns.

<u>The Debtor Has Failed to Meet Its Burden to Offer a Sound Business Reason for the Court to Allow Continuation of the AIP Program Indefinitely Without Further Court Review</u>.

19.     The Debtor seeks authority to continue the AIP in six-month increments following December 31, 2006 based only on agreement with the Creditors Committee targets and payout curves. The Debtor has made no showing as to the necessity or reasonableness of such authority.

20.     Providing the Debtor with authority to continue the AIP Program without further court review will further the disconnect between concessions sought from union-represented employees and the rewards provided to management. Such authorization will destroy any remaining incentive for consultation with the Debtor's Unions on the reasonableness of such incentives and will thereby further jeopardize the opportunity for voluntary resolution of Debtor' demands for concessions from its Unions.

9

21.     The provisions of the proposed KECP extension cannot meet the requirements of the recently-enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which includes 11 U.S.C. § 503(c).  In this case, Debtor seek to avoid making the showings required under § 503(c).  These include a showing that its proposed increases are essential to executive retention by reason of pending job offers or that the services of covered executives are essential to its survival.

Conclusion

For the foregoing reasons, the IBEW, IAM and IUOE respectfully ask the Court to deny the Debtor's Motion for Authority to Fix the Second Half of 2006 AIP targets and to Continue the AIP Program or in the alternative to defer consideration of the motion until the conclusion of the Chapter 11 proceeding.

Dated:      New York, New York
            July 12, 2006

                              s/ Marianne G. Robbins
                              MARIANNE G. ROBBINS
                              PREVIANT, GOLDBERG, UELMEN,
                              GRATZ, MILLER & BRUEGGEMAN s.c.
                              1555 N. RiverCenter Drive, Suite 202
                              P. O. Box 12993
                              Milwaukee, WI 53212
                              414/271-4500
                              Facsimile: 414/271-6308
                              mgr@previant.com

                              Attorneys for IBEW Local 663 and
                              IAM District 10

<div style="margin-left: 40%;">

  /s/  
BARBARA S. MEHLSACK (BM 1390)  
GORLICK, KRAVITZ & LISTHAUS  
17 State Street, 4th Floor  
New York, NY  10004  
(212) 269-2500  
bmehlsack@gkllaw.com

Attorneys for International Union of  
Operating Engineers Locals 18S, 101S and 832S.

</div>