**Hearing Date: July 19, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2689

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
          In re                               :     Chapter 11
                                              :
DELPHI CORPORATION et al.,                    :     Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUPPLEMENTAL OBJECTION TO MOTION
OF H.E. SERVICES COMPANY AND ROBERT BACKIE
FOR RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this supplemental objection (the

"Supplemental Objection") to the motion of H.E. Services Company and Robert Backie,

Majority Shareholder (collectively, "H.E. Services"), for relief from the automatic stay,

dated March 6, 2006 (the "Motion") (Docket No. 2705).  In support of the Supplemental

Objection, the Debtors respectfully represent as follows:

<u>Preliminary Statement</u>

1.    H.E Services' commercial litigation suit involves a soured business

relationship between two commercial entities, Delphi and H.E. Services, on account of

which H.E. Services filed a prepetition complaint alleging, inter alia, breach of contract,

promissory estoppel, misrepresentation, and civil rights violations.  To continue

prosecuting its claim in the District Court of the Eastern District of Michigan, H.E.

Services filed its Motion.  At the Debtors' June 19, 2006 Omnibus Hearing (the

"Omnibus Hearing"), this Court stated "that there's a reasonable likelihood that the

[D]ebtors will prevail on the [M]otion." June 19, 2006 Tr. at 45:18-19[1].  Moreover, the

Court "originally believed, based on [a] review of the papers that … it did not appear that

such an initial showing [of cause] had been made." June 19, 2006 Tr. at 44:20-23.

Nonetheless, this Court treated the Omnibus Hearing as a preliminary hearing on the

Motion, and adjourned the Motion to the July 19, 2006 Omnibus Hearing date, because

H.E. Services argued for the first time at the Omnibus Hearing that the discrimination

aspect of its commercial litigation suit amounted to a personal injury tort claim under 28

---

[1]    A copy of this excerpt from the June 19, 2006 transcript is attached hereto as <u>Exhibit A</u>.

U.S.C. § 157(b)(5)[2] and thus, H.E. Services argued that the Bankruptcy Court did not

have jurisdiction to adjudicate this matter.  June 19, 2006 Tr. at 37:8-15, 19-24.  Due to

of H.E. Services' new argument, this Court refrained from making a final determination

on the matter and stated that this new argument raised the spectre that the fourth <u>Sonnax</u>

factor – whether a specialized tribunal with the necessary expertise has been established

to hear the cause of action – might be applicable.  The Court stated that the "rule may not

be dispositive given the status of the [D]ebtors' case."[3]  June 19, 2006 Tr. at 45:18-22;

45:23-25, and 46:1-7.

       2.      Nevertheless, a careful review of the law in this jurisdiction shows

that H.E. Services cannot satisfy the fourth <u>Sonnax</u> factor.  First, courts in the Southern

District of New York have stated that a discrimination claim is <u>not</u> a personal injury tort

under 28 U.S.C. § 157(b)(5), and thus, that the Bankruptcy Court is not precluded from

hearing the case.  Moreover, the cases that H.E. Services cites are factually

distinguishable from this case.  This matter is related to commercial litigation addressing

the business relationship between two sophisticated entities, Delphi and H.E. Services.

The discrimination allegations merely arise out of the business dealings between H.E.

Services and Delphi.  In contrast, the discrimination cases that H.E. Services cites are

personal discrimination cases, such as discrimination in an employer/employee

relationship.  Thus, for the reasons discussed in the Debtors' first objection to the Motion,

---

[2]    Pursuant to 28 U.S.C. § 157(b)(5), "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

[3]    The Court determined that although the District Court is not particularly a specialized tribunal, the District Court has jurisdiction to the exclusion of the Bankruptcy Court with regard to trials of matters under 28 U.S.C. § 157(b)(5).

dated June 9, 2006 (Docket No. 4108) ("First Objection"), this Court should deny H.E.

Services' Motion to modify the automatic stay.  Notwithstanding H.E. Services'

arguments at the Omnibus Hearing, H.E. Services has not shown adequate cause for relief

from the automatic stay to continue its commercial litigation against Delphi.

Argument

3.      As the Debtors addressed in their First Objection to the Motion,

section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the

automatic stay "for cause."  The Debtors analyzed the Sonnax factors[4] relative to H.E.

Services' Motion and concluded that H.E Services had not shown any cause to lift the

automatic stay.  Because this Court in the Omnibus Hearing found "that there's a

reasonable likelihood that the [D]ebtors will prevail on the [M]otion" and that it appeared

that the only Sonnax factor that may be in H.E. Services' favor was whether a specialized

tribunal with the necessary expertise has been established to hear the cause of action

(June 19, 2006 Tr. at 45:18-22; 45:23-25; and 46:1-7), the Debtors will limit their

discussion in this Supplemental Objection to the issue of discrimination as it relates to the

---

[4]     The Sonnax factors are: (1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case; (3) whether the other
proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary
expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed
full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether
litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment
claim arising from the other action is subject to equitable subordination; (9) whether movant's success
in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of
judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties
are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of
harms.  Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d
Cir. 1990)

In their initial Objection, the Debtors acknowledged that factors (2), (5), (7), (11), and (12) were
applicable to the Motion.

4

fourth <u>Sonnax</u> factor and will rely on their First Objection to address the other relevant <u>Sonnax</u> factors.

4.      H.E. Services' commercial litigation suit is <u>not</u> a personal injury tort under 28 U.S.C 157(b)(5).  Accordingly, H.E. Services has failed to show any cause to lift the automatic stay.  As noted above, H.E. Services argued for the first time at the Omnibus Hearing that H.E. Services' commercial litigation claim (which includes allegations of civil rights violations, promissory estoppel, misrepresentation, and breach of contract) cannot be heard by this Court because H.E. Services' allegations of discrimination amount to a personal injury tort under 28 U.S.C. § 157(b)(5).  June 19, 2006 Tr. at 37:8-15.  Therefore, H.E. Services argued that this Court is precluded from hearing its underlying lawsuit because a personal injury tort is not a core proceeding under 28 U.S.C. § 157(b)(5) and thus, the automatic stay should be lifted in order to permit the plaintiff to prosecute its action immediately in the current forum.  June 19, 2006 Tr. at 38:6-11.

5.      Although H.E. Services acknowledged that courts are in disagreement regarding whether an employment discrimination suit is a personal injury tort, counsel inexplicably cited to an opinion in the District of Connecticut in support of his clients' position.  The law in this district is contrary to H.E. Services' position –  a discrimination claim is <u>not</u> considered a personal injury tort under 28 U.S.C. § 157(b)(5). <u>See</u> <u>Vinci v. Town of Carmel</u> (In re Vinci), 108 B.R. 439, 442 (Bankr. S.D.N.Y 1989); <u>Perino v. Cohen</u> (In re Cohen), 107 B.R. 453 (Bankr. S.D.N.Y. 1989), <u>overruled on other grounds</u>, <u>In re United Mo. Bank, N.A.</u>, 901 F.2d 1449 (8th Cir. 1990).  In <u>Perino v. Cohen</u>, the blind plaintiff claimed that the debtor, a restaurant, discriminated against him

5

when the debtor refused to serve him.  107 B.R. at 454.  The court found that the

plaintiff's claim was a "tort claim for a violation of a statutory duty, which entitled it to a

jury trial," but it was "not a claim for a 'personal injury tort' in the traditional, plain-

meaning sense of those words, such as a slip and fall or a psychiatric impairment beyond

mere shame and humiliation" and accordingly did not fall within the carve-out set forth in

28 U.S.C. § 157(b)(5).  Id. at 455.

6.    The Perino v. Cohen court examined the plain language and

legislative history of the 28 U.S.C. § 157(b) to determine that a discrimination claim was

not a personal injury tort.  Vinci v. Town of Carmel (In re Vinci), 108 B.R. at 455 (citing

Escondido Mut. Water Co. v. LaJolla Indians, 466 U.S. 765, 772 (1984), quoting North

Dakota v. United States, 460 U.S. 300 (1983)("'[a]bsent a clearly expressed legislative

intention to the contrary, [statutory] language must ordinarily be regarded as

conclusive.'")).  Moreover, "there is no legislative history that would bring this plaintiff's

claim for a tort without trauma within the statutory exception for a personal injury tort.

On the contrary, the legislative history indicates that Congress intended [28 U.S.C. §

157(b) ] exception for a 'narrow range' of claims."  Perino v. Cohen, 107 B.R. at 455

(citing U.S. Code Cong. & Admin. News, 1984, at 576 et seq.; id., Statement of Congr.

Kastenmeier at 580.).

7.    Similarly, in Vinci, the plaintiffs, an individual debtor and his

debtor corporation, alleged that their civil rights were violated.  108 B.R. at 440.  The

court examined whether the bankruptcy court was barred from trying the debtors' claim

under 28 U.S.C. § 157(b)(5) because of the allegations of civil rights violations.  Id.  The

Vinci court found that there was a disagreement between the jurisdictions, but that it was

6

bound by <u>Perino v. Cohen</u>, and therefore, found that a "tort claim for a statutory violation

of a New York State anti-discrimination law does not constitute a 'personal injury tort'

within the restrictive 28 U.S.C. § 157(b)(5) because a claim for a tort without trauma or

bodily injury is not within the statutory exception for a personal injury tort." <u>Id</u>. at 442

(citing <u>Perino v. Cohen</u>, 107 B.R. at 453) (distinguishing a personal injury tort under 28

U.S.C. § 157(b)(5) from a personal injury <u>action</u> under 42 U.S.C. § 1983).

        8.      Second, the cases that counsel for H.E. Services cited to at the

Omnibus Hearing for the proposition that H.E. Services' suit was a personal injury tort

under 28 U.S.C. § 157(b)(5) can be distinguished.  The District of Connecticut cases

merely hold that discrimination in an employer/employee relationship is a personal injury

tort under 28 U.S.C. § 157(b)(5).  For example, in one case H.E. Services cited, <u>Stranz v.

Ice Cream Liquidation, Inc.</u> (In re Ice Cream Liquidation, Inc.), 281 B.R. 154 (Bankr. D.

Conn. 2002), former employees alleged sexual harassment by the debtor.  Although the

court in <u>Stranz</u> held that sexual harassment was a personal injury tort under 28 U.S.C.

157(b), it rejected a broader reading of 28 U.S.C. 157(b)(5) because to do so would

present some risk "that financial, business or property tort claims could be withdrawn

from the bankruptcy system."  <u>Id</u>. at 161-62.  Therefore,

> in cases where it appears that a claim might be a 'personal injury tort
> claim' under the 'broader view' but has earmarks of financial, business or
> property tort claim, or a contract claim, the court reserves the right to
> solve the 'personal injury tort claim' issue by (among other things) a more
> searching analysis of the complaint.

<u>Id</u>. at 161.  Similarly, the second case H.E. Services cited to during the Omnibus Hearing,

<u>Goldschmidt v. Erickson</u> (In re Erickson), also involves discrimination in an

employer/employee relationship. 330 B.R. 346, 348 (Bankr. D. Conn. 2005).  In

7

Goldschmidt v. Erickson, an employee alleged that her employer discriminated against her on the basis of her pregnancy.  Id.

9.      Therefore, even after examining the Stranz and Goldschmidt cases, this Court should deny the relief requested in the Motion.  Stranz and Goldschmidt are cases in which individuals sought redress from alleged discrimination by their employers, and Stranz explicitly carved out "financial business or property tort claim[s]."   The H.E. Services' lawsuit not only has the "earmarks" of a financial, business or property tort, or a contract claim, it falls squarely within the exception that the court noted in Stranz.  The H.E. Services' litigation specifically focuses on the business dealings between H.E. Services and Delphi and Delphi's alleged wrongdoing arising out of those business transaction.  Therefore, H.E. Services' claims, even if valid, do not constitute a personal injury tort.  This Court is not precluded from hearing the underlying suit under 28 U.S.C. § 157(b)(5).

## Conclusion

10.    H.E. Services fails to satisfy the fourth <u>Sonnax</u> factor.  In contrast to movant's argument, the commercial litigation between Delphi and H.E. Services is not a personal injury tort, and therefore, this Court is not precluded under 28 U.S.C. §157(b)(5) from hearing the case.  For the reasons stated in the Debtors' First Objection, H.E. Services fails to meet the burden of establishing that sufficient cause exists to lift the automatic stay.  For the reasons set forth above, the Motion should be denied.

## Notice

11.    Notice of this Supplemental Objection has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

12.    Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       July 12, 2006

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By: /s/ John Wm. Butler, Jr
                           John Wm. Butler, Jr. (JB 4711)
                           John K. Lyons (JL 4951)
                           Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois  60606
                        (312) 407-0700

                          - and -

                        By: /s/ Kayalyn A. Marafioti
                           Kayalyn A. Marafioti (KM 9632)
                           Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

Exhibit A                                                                      1

1

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4      Case No. 05-44481AM

5      - - - - - - - - - - - - - - - - - - - -x

6      In the Matter of:

7

8      DELPHI CORPORATION, et al.,

9

10            Debtors.

11

12     - - - - - - - - - - - - - - - - - - - -x

13

14                    United States Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    June 19, 2006

19                    10:10 AM

20

21     B E F O R E:

22     HON. ROBERT D. DRAIN

23     U.S. BANKRUPTCY JUDGE

24

25

1          MR. BUTLER:  Your Honor, the next matter up is, going

2     back to the agenda order, is matter number 13.  This is the H.E

3     Services Company lift-stay motion filed at Docket No. 2705 with

4     related pleadings as indicated on the amended agenda.

5          This involves a lift-stay matter to deal with pending

6     actions arising out of a minority supplier relationship.  And I

7     believe Counsel is here to present the motion.

8          MR. MASTROMARCO:  Good morning, Your Honor.  Victor

9     Mastromarco on behalf of the claimant.  This is Docket No. 2705

10    originally filed.  Our lift-stay motion as it relates to a

11    filing, a complaint that was filed on February 16th, 2005

12    before   the   United   States   District   Court   for   the   Eastern

13    District of Michigan, northern division.

14         The claims involve a number of different claims.

15    One, in particular, that I want to emphasize is the civil

16    rights violations pursuant to 19 -- Section 1981.  There are

17    also claims for promissory estoppel and misrepresentation and

18    breach of contract.  Originally, after the complaint was filed

19    in February, Delphi responded -- the debtor responded with a

20    motion to dismiss which resulted in an amended complaint being

21    filed which we have provided to the Court.  When Delphi failed

22    to answer the amended complaint, we applied for a default

23    before the judge and Delphi then later responded with another

24    motion to dismiss.  Those actions were pending.  They had been

25    set for hearing for November 2 at the same time as a scheduling

37

1    conference had been set and as a result, the stay was entered

2    in October so those matters did not go forward.

3            THE COURT:  Was that first motion to dismiss heard?

4    Or did the claimant just amend the complaint?

5            MR. MASTROMARCO:  It was heard and it resulted in an

6    amended complaint being filed.

7            THE COURT:  Okay.

8            MR. MASTROMARCO:  The -- I wanted to indicate that

9    because the complaint is premised in part of 42 USC 1981 which

10   states a discrimination claim on behalf of not only Mr. Backie,

11   who is a minority in his individual capacity, but also on

12   behalf of H.E. Services, which is a minority company, and both

13   those claims the Courts have held in the past in this district

14   that discrimination claims should be handled akin to personal

15   injury claims and thus our subject to Section 157(b)(5).

16           In the case that I'd like to cite to the Court,

17   Erickson v. Erickson, at 330 BR 346, the Court -- and that's a

18   September 15, 2005 decision -- the Court states on page 349,

19   "pursuant to 28 USC 15" -- I'm sorry -- "157(b)(2)(o), a

20   bankruptcy court may not hear and determine a personal injury

21   tort claim."  Citing to the footnote, 157(b)(2)(o) provides in

22   relevant part that a bankruptcy court may hear and determine

23   proceedings affecting the adjustment of the debtor/creditor

24   relationship except personal injury tort claims.  157(b)(5)

25   provides "the district court shall order that the personal

38

1    injury tort and wrongful death claims shall be tried in the

2    district court in which the bankruptcy case is pending or in

3    the district court in the district in which the claim arose as

4    determined by the district court in which the bankruptcy case

5    is pending."

6            Although there are court rulings to the contrary, the

7    Court in Erickson agreed that -- with Judge Weil that "claims

8    alleging that a debtor illegally discriminated an employment on

9    the basis of race, creed, disability or sex are personal injury

10   tort claims."  Citing the Strands v. Ice Cream Liquidation,

11   Inc. case at 281 BR 154 at 161.

12           The Court goes on to indicate --

13           THE COURT:  None of this is briefed in your papers,

14   right?

15           MR. MASTROMARCO:  No, we did not cite these cases,

16   Judge.

17           THE COURT:  Or the issue, generally, right?

18           MR. MASTROMARCO:  Well, you're right.  We'd ask the

19   Court to take judicial notice of Section 157(b)(5).

20           THE COURT:  Okay.

21           MR. MASTROMARCO:  We would indicate that the Erickson

22   case also citing In re New York Medical Group, P.C. --

23           THE COURT:  I'll read it.  You don't have -- this is

24   not productive.  I'll read the case.

25           MR. MASTROMARCO:  All right.  The upshot is this.  If

39

 1    we apply the Sonnax Industry standards to a discrimination

 2    case, because this Court cannot liquidate the discrimination

 3    claims, the Court in Erickson comes to the conclusion that it's

 4    readily apparent that the movant is entitled to relief from the

 5    stay so she may liquidate the claim.

 6            Here is the same situation.  We must liquidate that

 7    claim or those claims in order to place a value for the Court

 8    then to determine how that would fit in with the bankruptcy

 9    situation.  That's all we're asking the Court to do, is to

10    allow us to go back to the U.S. District Court, allow us to

11    liquidate that claim there and then -- and those other claims

12    there since the judicial economy would suggest that all the

13    claims should be allowed and grant an order accordingly.

14            THE COURT:  Okay.

15            MR. BUTLER:  Your Honor, just -- seeing as Counsel

16    dealt with the history, let me just briefly address the history

17    of this case.  The complaint was originally filed out of a

18    minority supplier relationship alleging that the supplier

19    didn't get the contracts it would have liked to have gotten

20    from Delphi.  A complaint was filed on February 16th of '05.

21    It was dismissed on May 19th of 2005.  There was an amended

22    complaint filed on June 9th of 2005.  The answer would have

23    been due on or about July 9th.  The answer was filed, in fact,

24    on July 11th.  Counsel tried to get a default judgment.  The

25    clerk would not enter it because there was a power outage in

40

1    Saginaw, Michigan during that period of time and there was some

2    issue about the ability to actually prepare or file anything

3    over a couple day period.  And so the Court deemed the filing

4    on July 11th timely, although Counsel has filed a motion to

5    dismiss which is pending -- excuse me, a motion for default

6    judgment, which is pending before that Court.

7            On August 24th, 2005, Delphi filed its second motion

8    to dismiss and we concur that there was a scheduling conference

9    set for November 2nd of 2005 which did not take place.

10   Instead, the federal judge in that case administratively closed

11   the litigation on October 24th, 2005 following the commencement

12   of Chapter 11 cases on October 8th.

13           Now, that's the sum and substance of the activity in

14   this litigation which is in its infancy.  And the debtors, you

15   hear, is whether counsel chooses to color the complaint a

16   discrimination complaint or a breach of contract complaint, as

17   they do in their complaint, to where they talk about breach of

18   contract and other theories.  The fact is that we think under

19   Sonnax, and we've advised counsel of this -- he knows that we

20   don't have insurance to cover the liability associated with

21   this particular claim -- that we're not prepared for trial.

22   This is involved in its infancy.  There's been nothing in this

23   case beyond the second motion to dismiss to be filed.  There's

24   been no discovery of any kind.  And we believe, under Sonnax,

25   Your Honor, that the balance of the harms weighs very much in

41

1    the favor of denying the H.E. Services motion at this point in

2    the debtors' Chapter 11 case.

3           I point out, Your Honor, that H.E. Services filed a

4    supplement to its motion at Docket 3263 where it said that this

5    motion  was  very  similar  to  the  Automotive  Technologies

6    International where you granted some relief at Docket No. 3200.

7    The facts are those cases are very different.  The ATI cases

8    had been filed years earlier and the ATI cases were actually on

9    appeal, the issues had been fully briefed in the appellate

10   courts and the parties were simply waiting oral argument.  A

11   very different case than a complaint filed that had been

12   dismissed and then refiled and was waiting a second motion for

13   dismissal.

14          Your Honor, we believe that, as I said and as our

15   responsive papers said, that under the Sonnax factors, we think

16   they clearly weigh in favor denying the motion at this time.

17   Thank you.

18          THE COURT:  Do you have any view on the 28 USC

19   157(b)(5) point?

20          MR. BUTLER:  Your Honor, I hadn't reviewed the matter

21   because -- you're right, it hadn't been raised or briefed.

22   But, even if it were so, I don't think that with respect to

23   Sonnax, says that gives anyone -- I mean, the carte blanche to

24   come in and get those stay lifts in every case.  I mean, if

25   that were the law, then anyone who had any kind of a tort claim

42

1    here would always win their motion to lift-stay.  And that's

2    not the law in this district.  The fact is Sonnax still gets

3    applied against tort claims and against other claims that may

4    not ultimately be liquidated by Your Honor.  The fact is that

5    under Sonnax, this estate, at this moment in time, when we are

6    involved in some of the most sensitive issues in the case in

7    terms of the ultimate transformation, shouldn't have to be --

8    should have the protection of the automatic stay and not have

9    to deal with claims issues of this nature at this time.  And

10   that's why I think that because there's no insurance here,

11   because we would have to treat this as a full-blown hundred

12   million dollar litigation, as Counsel suggests, and have to

13   take the time to resources, both externally and internally, to

14   defend it, under Sonnax, at this point in our case, it would be

15   inappropriate to lift the stay to permit that.

16          And I don't think the 157 issue has -- while it may

17   have some bearing on it ultimately, at some future date, I

18   don't think it really comes into the calculus, Your Honor, in

19   weighing the harms and balancing the harms in terms of the

20   Sonnax factors for this hearing today.

21          THE COURT:  Okay.

22          MR. BUTLER:  Thank you, Your Honor.

23          MR. MASTROMARCO:  Briefly, Your Honor, may I respond?

24          THE COURT:  Sure.

25          MR. MASTROMARCO:  Not only does it -- is it an

43

1    important factor in the Sonnax analysis, but the cases that I

2    cited suggest that it's probably the only factor that the Court

3    can consider because of the fact that all these arguments that

4    are being made that we don't want to deal with it at this time,

5    we don't want to handle this at this time, this is going to

6    upset these other things, those claims have to be liquidated.

7    So, we have to deal with it now because we have to know, we

8    have to be able to put those claims back to the District Court

9    and I'd cite again to Erickson where they say "proof that the

10   debtor intentionally and maliciously injured the movant by

11   illegally discriminating against her necessitates proving the

12   underlying   discrimination   allegations   which   the   bankruptcy

13   court lacks jurisdiction to hear."  And that's Black Letter Law

14   in New York, Second Circuit.

15           So, I would ask that the Court allow us to go back to

16   the -- and when we look at the factors, we're saying is this

17   Court better equipped to handle it than the U.S. District Court

18   judge as it relates to these specific issues?  Yes, I think

19   that the U.S. District Court judge is a good form for this

20   matter to be tried.  He's familiar with the issues, he's dealt

21   with motions to dismiss -- and I'm not going to go and argue

22   with Mr. Burke today about what occurred in the lower court --

23   or in the district court, I should say -- but the fact is that

24   they have local counsel there.  They have them assigned not

25   only to the H.E. Services case, but they got the same counsel

44

1   assigned on the Cindy Palmer case, which we're going to argue

2   next.  And this is not going to be taking away from the

3   debtors' efforts in this case because they -- this Court has to

4   grapple with that liquidation issue.

5         And so, we would ask that the Court allow the

6   district court judge or -- lift the stay so that the district

7   court judge can hear these claims.

8         THE COURT:  Okay.  All right.  I have in front of me

9   a motion by H.E. Services for relief from the automatic stay to

10  pursue litigation in Michigan District Court that was pending

11  before the commencement of the debtors' Chapter 11 cases.

12        It's averred by the debtors, and I don't think

13  disputed by the movant, that there either is no insurance

14  coverage for this litigation or there's an issue as to whether

15  there is insurance covering the claim -- is obviously an

16  unsecured claim, as well, given that fact and given the Second

17  Circuit's case, In Re Sonnax Industries, 907 F2d. 1280 (2nd

18  Cir. 1990), which says that a movant seeking a lift from the

19  automatic stay must make an initial showing of cause.

20        I had originally believed, based on my review of the

21  papers, that I did not need to get into the various Sonnax

22  factors given that it did not appear that such an initial

23  showing had been made.  That is because, again, it's recognized

24  by the Courts in this district that relief from the automatic

25  stay to pursue the liquidation of an unsecured claim is

45

1   unusual, and extraordinary circumstances normally need to be

2   shown, such as the fact that there is full insurance coverage

3   or the claim is being liquidated really for the purpose of

4   going against a third party or there's a special tribunal in

5   which it is being heard.  It was not stated in the motion

6   papers, but it was stated at oral argument, that

7   notwithstanding in plain language of 28 USC Section 157(a)(5)

8   which deals with personal injury, tort and wrongful death

9   claims and was obtained by the plaintiffs' bar in light of the

10  mass tort asbestosis litigation that affected bankruptcy courts

11  and cases before the enactment of that provision that that

12  provision applies to at least one of the claims asserted in

13  this litigation which is an antidiscrimination civil rights

14  violation claim.

15          I will need to review the case law on that issue.

16  However, applying the Sonnax factors and giving the movant the

17  benefit of the doubt on that issue based on the representation

18  to the Court, I believe and find that there's a reasonable

19  likelihood that the debtor will prevail on the motion and,

20  therefore, I'm going to treat this as the preliminary hearing

21  on the motion and we'll adjourn to the next omnibus date under

22  362(e).

23          In looking at the Sonnax factors, it appears to me

24  that the only one of them that may apply here in the movant's

25  favor is the factor pertaining to whether a specialized

46

1    tribunal had been established to hear the cause of action.

2    And, of course, it's asserted that the District Court is not

3    particularly a specialized tribunal but that it has

4    jurisdiction to the exclusion of the bankruptcy court with

5    regard to the trial of the matter under 28 USA Section

6    157(a)(5).  On the other hand, that rule may not be dispositive

7    given the status of the debtors' case.  Among other things, the

8    bar date has not run yet and the debtors are in the early

9    stages, if at all, in dealing with the claims against them.

10            So, again, it appears likely to me that the debtor

11   will prevail but I'll review this case law that's been asserted

12   and adjourn the hearing until the next omnibus date.

13           MR. BUTLER:  Thank you, Your Honor.  Your Honor, do

14   you want any more from the parties on this matter for the next

15   omnibus date or just that the Court's going to take it under

16   advisement?

17           THE COURT:  The debtors are free to file something if

18   they wish.  I'm not telling them that they have to.  I'll

19   review the case law myself, but if you want to file something,

20   you can do that.

21           MR. BUTLER:  Thank you, Your Honor.

22           MR. MASTROMARCO:  Your Honor, if the debtor does, I

23   would also like the Court to allow me to file a short brief

24   setting forth these issues that I've --

25           THE COURT:  Well, but you've already -- you took

47

1    today as the opportunity to do that and --

2            MR. MASTROMARCO:  A limited brief, Judge.

3            THE COURT:  -- in my mind, that's sufficient.

4            MR. BUTLER:  Your Honor, the next matter on the

5    agenda is matter number 14.  This is the Cindy Palmer lift-stay

6    motion filed at Docket No. 2708.  And again, I'll defer to

7    Counsel for presenting the motion.

8            MR. MASTROMARCO:  Victor Mastromarco on behalf of the

9    estate.  This is a personal injury cause of action where the

10   plaintiff's decedent was crushed in a machine and the case had

11   been filed originally back in 2001 and went through a lot of

12   discovery.  The trial court had granted a motion on behalf of

13   Delphi for summary -- what we call summary disposition, which

14   is similar to Rule 56 in federal court.  The case had gone to

15   the Court of Appeals and oral arguments had been set for

16   October 12, 2005 and the bankruptcy stay was entered three days

17   before that argument date.

18           What we're asking for is again, pursuant to Rule 157

19   that we've cited in the Backie matters, (b)(5), that we be

20   allowed to pursue this matter in the state appellate court or

21   have it removed to the federal district court to decide whether

22   it should go to the Court of Appeals and resume arguments

23   there.

24           We were at the end of the road with the Court of

25   Appeals, although that's the first stage of appellate review in

122

C E R T I F I C A T I O N

I court approved transcriber, certify that the foregoing is a

correct transcript from the official electronic sound recording

of the proceedings in the above-entitled matter.


_____    June 20, 2006

Signature of Approved Transcriber         Date


     Lisa Bar-Leib

typed or printed name