1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  CASE NO. 05-44481(RDD)

5   In Re                        )
                                 )
6   DELPHI CORPORATION, et al.,  )      ORIGINAL
                                 )
7                  Debtor.       )
                                 )
8                                )
   ------------------------------)

9

10              AUCTION PROCEEDINGS
        Skadden Arps Slate Meagher & Flom
                4 Times Square
11              New York, New York
                   10:30 a.m.
12          Thursday, July 6, 2006

13  B E F O R E:

14     Randall Reese, Esq.
       John K. Lyons, Esq.
15     Milledge Hart
       Christie L. Branson, Esq.
16     Steve Olsen
       Sean Corcoran, Esq.
17          (Present Telephonically)

18

19

20

21

22

23  Reported by:
    Robert X. Shaw, CSR
24  CSR NO. 817
    JOB NO. 185783

25

1

2  A P P E A R A N C E S:

3

4     SKADDEN ARPS SLATE MEAGHER & FLOM

5     Attorneys for Delphi Corp., and

6     MobileAria

7          333 West Wacker Drive

8          Chicago, Illinois 60606

9     BY:    RANDALL REESE, ESQ.

10           JOHN K. LYONS, ESQ.

11           STEPHEN NEUMAN

12               -and-

13    DLA PIPER RUDNICK GRAY CARY

14          East Palo Alto, California 94303

15    BY:   CHRISTIE L. BRANSON, ESQ.

16

17    KRONISH LIEB WEINER & HELLMAN LLP

18    Attorneys for Wireless Matrix

19          1114 Avenue of the Americas

20          New York, New York 10036

21    BY:    ADAM C. ROGOFF, ESQ.

22

23

24

25

```
 1

 2   A P P E A R A N C E S (Cont'd):

 3      HELLER EHRMAN LLP

 4      Attorneys for @Road

 5             7 Times Square

 6             New York, New York 10036

 7      BY:    CARREN B. SHULMAN, ESQ.

 8             TIM MEHOK, ESQ.

 9             JOSH SELIG, ESQ.

10             NICK ROSENBERG, ESQ.

11             MIRIAM OSNER, ESQ.

12

13      LATHAM & WATKINS LLP

14      Attorneys for  Unsecured Creditors

15             885 Third Avenue

16             New York, New York 10022

17      BY:    HENRY P. BAER, JR. ESQ.

18   ALSO PRESENT:

19      DELPHI
        Sean Corcoran, Esq.
20             (Present Telephonically)

21      Steve Olsen
        A. Lisa Agasse, Analyst
22

23      PAGEMILL PARTNERS
        Milledge Hart
        Christian Bennett
24

25      MOBILEARIA
        Dr. Richard C. Lind,
               President MobilAria, Inc.
```

```
 1

 2
    A P P E A R A N C E S  (Cont'd):
 3

 4   WIRELESS MATRIX
         Maria C. Izurieta, CFO
 5       Rich Carlson, CEO

 6   ALVAREZ & MARSAL
         David Kirsch
 7
     @ROAD
 8       James (J.D.) Fay, Sr. VP

 9   JEFFERIES & COMPANY
         Isaac Lee
10       Eric Court
         Marc Strauss
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3              MR. REESE:   Good morning.   Welcome.

4         I think I have met all of you, but I

5    am Randall Reese from Skadden Arps, and

6    as you are all aware, Skadden is counsel

7    to MobileAria and the affiliated debtors

8    and debtors in possession in their

9    Chapter 11 cases currently pending in the

10   United States Bankruptcy Court for the

11   Southern District of New York, before

12   Judge Robert D. Dran.

13        With me here at the table is Steve

14   Olsen, the Director of Mergers and

15   Acquisitions of New Markets for Delphi,

16   John Lyons of Skadden Arps, Christy

17   Branson of DLA Piper Rudnick and Milledge

18   Hart of Pagemill Partners.

19        As you are all aware, on June 6th,

20   2006, MobileAria and the other debtors

21   filed a motion seeking approval of, among

22   other things, certain bid protections and

23   certain bidding procedures, which is why

24   we are all here today.

25        In addition, the bid protections

1
2       were afforded the stalking horse bidder,
3       Wireless Matrix USA, Inc., which I will
4       refer to as Wireless Matrix going forward
5       and, ultimately the approval of a sale to
6       Wireless Matrix and substantially all of
7       the assets of MobileAria, pursuant to an
8       asset sale and purchase agreement, dated
9       June 6th, 2006, subject to the completion
10      of a competitive bidding process.  That
11      motion was entered on the docket as
12      docket entry number 4040.
13          The court held a hearing on June
14      19th, 2006, and entered an order
15      approving certain bidding procedures, and
16      that order was entered on June 22nd at
17      docket number 4328, and I will refer to
18      that order as the bidding procedures
19      order, just so that we are clear.
20          This is the time and place for the
21      auction of the assets of MobileAria, as
22      provided by the bidding procedures order.
23          As all of you are aware, we have a
24      court reporter here, and the auction is
25      being transcribed, and we will file a

1

2      complete transcript of the auction with

3      the Bankruptcy Court prior to the

4      commencement of the sale here.

5           Initially, I will describe the

6      procedures that are going to be used for

7      today's auction and enter certain matters

8      into the record.

9           First, we have marked five exhibits

10     to be entered into the record.  When you

11     checked in this morning, each of you

12     should have received a vellum bound

13     document with all of the exhibits, with

14     the exception of the final one, and if

15     anybody did not, please let us know and

16     we will be happy to get you a copy.

17          We marked, as Exhibit Number 1, the

18     MobileAria bidding procedures order dated

19     June 22nd.

20          And marked, as Exhibit Number 2, is

21     the bid submitted by Wireless Matrix, and

22     that exhibit includes the asset sale and

23     purchase agreement dated June 6th, 2006,

24     between Wireless Matrix and MobileAria,

25     and also includes all of the disclosure

1

2   schedules included therewith.

3        Marked as Exhibit Number 3 is the

4   bid provided by @Road Inc., which I will

5   refer to as @Road.  This exhibit includes

6   the following items:  a letter dated June

7   28th, 2006 from James D. Fay, Senior Vice

8   President Corporate Affairs of @Road to

9   Richard Lind, President of MobileAria;

10  and an asset sale and purchase agreement

11  dated June 28th, 2006, executed by @Road,

12  the unmarked disclosure schedules

13  included therewith; a marked copy of the

14  asset sale and purchase agreement,

15  reflecting modifications from the asset

16  sale and purchase agreement, entered into

17  between MobileAria and Wireless Matrix,

18  the marked disclosure schedules thereto;

19  and the form 10-Q dated March 31st, 2006

20  for @Road.

21       Marked as Exhibit Number 4 is the

22  MobileAria sale motion dated June 6th,

23  2006 that I referred to earlier.

24       And finally, marked as Exhibit

25  Number 5, is this morning's sign-in

1

2     sheet.  This will obviate the need for

3     each of you to be introduced on the

4     record, and I would note, in addition,

5     that Sean Corcoran, Deputy General

6     Counsel of Delphi is participating

7     telephonically today.

8          Those are all of the exhibits that

9     we are designating for the record at this

10    time.  We reserve the right to include

11    further exhibits as the auction

12    continues, should we need to.

13         As everybody here is aware, the

14    bidding procedures order provides that

15    any competing proposals for the assets of

16    MobileAria be received by MobileAria, its

17    advisers, Delphi Automotive Systems LLC,

18    which is MobileAria's majority

19    shareholder, the advisors to the official

20    committee of unsecured creditors, and the

21    advisors for the agent for the

22    pre-petition lenders no later than 11

23    a.m. on June 29th, 2006.

24         By that deadline only one competing

25    bid had been received, which is the bid

1

2    of @Road that we marked as Exhibit Number

3    3.    Pursuant to @Road's binding bid

4    letter and asset sale and purchase

5    agreement, @Road offered MobileAria $7.5

6    million in cash consideration for

7    substantially all of the assets of

8    MobileAria.

9        The other material terms of @Road's

10   proposed asset sale and purchase

11   agreement are substantially similar to

12   the terms of Wireless Matrix' proposed

13   asset sale and purchase agreement, with

14   the primary exception that @Road has

15   deleted the requirements contained in

16   schedule 5.1.16.A, that four of six

17   certain key employees, as defined

18   therein, remain employed with MobileAria

19   at the closing.

20       In addition, @Road has provided

21   MobileAria with a good faith deposit in

22   the amount of $500,000, as required by

23   the bidding procedures order.

24       After independent evaluation by

25   MobileAria and its directors, in

1

2   accordance with the bidding procedures

3   order, MobileAria's directors determined

4   that @Road's bid was a qualified bid, as

5   defined in the bidding procedures order,

6   and, therefore, on June 30th, 2006, my

7   colleague, Allison Verderber Herriot,

8   contacted all parties entitled to attend

9   this auction by e-mail and advised them

10  that an auction would be going forward.

11       Those parties included @Road,

12  Wireless Matrix, the creditors committee,

13  the equity committe, and the agent for

14  the pre-petition secured lenders.

15       Counsel to the equity committee

16  declined an invitation to participate

17  here in today's auction. Representatives

18  of all of the parties entitled to

19  participate are here today.

20       There are no other parties that have

21  submitted a qualified bid for the assets

22  of MobileAria at this time and,

23  therefore, pursuant to the bidding

24  procedures order, only Wireless Matrix

25  and @Road are entitled to bid at today's

1
2      auction.  And, as each of you know, each
3      of the bidders is, as well as the
4      creditors committee and the pre-petition
5      secured lenders, have been assigned their
6      own conference room today to use for
7      private conversations.
8           Shortly, we intend to open the floor
9      to allow the opportunity for additional
10     competing bids to be made by Wireless
11     Matrix, if it intends to do so, or for
12     any of the parties here to have an
13     opportunity to make any statements on the
14     record, if they would like to.
15          MobileAria reserves the right to
16     take recesses from time to time today
17     have private conversations with one or
18     more of the bidders or with our
19     creditors.
20          I will not read into the record all
21     of the bidding procedures that are laid
22     out in the bidding procedures order, and
23     it has been marked as an exhibit.
24     Everyone has a copy of it.
25          However, there are two elements of

1

2    the bidding procedures that I do want to

3    emphasize.

4        First, pursuant to section 9.1.2 of

5    the asset sale and purchase agreement

6    between Wireless Matrix and MobileAria,

7    if Wireless Matrix submits a subsequent

8    bid, as defined in the bid procedures,

9    Wireless Matrix will be subject to all of

10   the bidding procedures, including such

11   subsequent bid shall be irrevocable and

12   must stay open as an alternate bid until

13   the earlier of two business days after

14   the closing of the sale of MobileAria's

15   assets or August 31st, 2006.

16        Of course, pursuant to the bidding

17   procedure, all subsequent bids of @Road

18   are required to stay open for the same

19   period.  Okay.

20        Second, Wireless Matrix shall be

21   entitled to a credit in the amount of the

22   break-up fee, which is equal to $195,000,

23   in calculating the value of any

24   subsequent bid made by Wireless Matrix in

25   today's auction.  Therefore, by way of

1

2      example, if Wireless Matrix were to make

3      a subsequent bid in the amount of $7.6

4      million, MobileAria would receive cash

5      consideration from Wireless Matrix in the

6      amount of $7,405,000 at closing.

7           MR. ROGOFF:  Canadian?

8           MR. REESE:  Is that the best

9      exchange rate today?

10          MR. HART:  We will give you the

11     Canadian credit, for sure.

12          MR. REESE:  Both parties, please,

13     confirm on the record that that is, in

14     fact, their understanding of the bidding

15     procedures.

16          MS. IZURIETA:  Yes.

17          MR. FAY:  Yes.

18          MR. REESE:  At this point in time,

19     there are no specific additional

20     procedures today, besides those laid out

21     in the bidding procedures, and we, of

22     course, encourage each of Wireless Matrix

23     and @Road to put on the table your

24     highest and best bid at today's auction.

25          We will, of course, do everything

1

2      that we can to advise you of any

3      particular concerns that MobileAria has

4      or that any of the creditor

5      constituencies express with respect to

6      each of your respective bids.

7          When neither bidder desires to make

8      any further bid, we will recess the

9      auction at that time and meet privately

10     with our creditor constituencies who are

11     here today to consult with them.

12         After that, as quickly as possible,

13     depending on the time the board of

14     directors of MobileAria will meet and

15     deliberate and determine in the exercise

16     of their business judgment, which bid

17     they believe to be the successful bid,

18     and which bid they determine to be the

19     alternate bid, and at that point, we will

20     advise both of the parties that, which

21     bid has been determined to be the

22     successful bid and which bid has been

23     determined to be the alternate bid, and

24     we will formally close the auction.

25         However, as a technical matter, I

1

2 would remind the parties that pursuant to

3 the bidding procedures and the bidding

4 procedures order, no bid has been

5 accepted by MobileAria until Judge Drain

6 has approved that bid at the sale hearing

7 and an order has been entered providing

8 for that determination.

9 As a housekeeping matter, we would

10 like to request that each of the bidders

11 designate a representative to speak on

12 your behalf, when and if you decide you

13 wanted to speak on the record at today's

14 auction.

15 Therefore, I would ask that each

16 designated representative state his or

17 her name and title for the record and

18 affirm that such person is the authorized

19 representative of the company for

20 purposes of the auction.

21 We will go in alphabetical order.

22 @Road.

23 MR. FAY:  My name is J.D. Fay from

24 @Road.

25 MR. REESE:  Would you state your

1

2      position on the record.

3            MR. FAY:  Senior Vice-President,

4      Corporate Affairs, General Counsel.

5            MR. REESE:  Wireless Matrix.

6            MR. ROGOFF:  Good morning.  Adam

7      Rogoff, Kronish Lieb, on behalf of

8      Wireless Matrix, and I will be speaking

9      on behalf of my client.

10            MR. REESE:  Thank you.

11            I would also ask that at this time

12      each of the designated representatives

13      indicate on the record, that you have

14      full authority to speak for the company

15      that you represent and that your

16      participation at the auction and anything

17      that you say on behalf of your company or

18      your client is said with the full

19      authority of the company, and that no

20      further approvals other than Bankruptcy

21      Court approval will be necessary in order

22      for whatever you offer on the record to

23      be binding with respect to your company,

24      so that everyone here knows that what, in

25      fact, is offered on the record is a real

1

2    offer.

3         We will go in the same order.

4         MR. FAY:  I confirm that.

5         MR. ROGOFF:  Subject to being kicked

6    by my client, I confirm that.

7         MR. REESE:  Thank you.  We also

8    believe that it will be helpful for the

9    primary creditor constituencies that are

10   here today to be free to ask questions on

11   the record to ensure that the terms that

12   are put on the record are clear and

13   unambiguous with respect to all of the

14   parties here; therefore, we welcome the

15   participation of the representatives of

16   the creditors committee and the

17   pre-petition secured lenders here today,

18   and appreciate your participation.

19        At this point, I would ask, first,

20   that the Wireless Matrix representative

21   affirm that, to the best of his

22   knowledge, Exhibit Number 2 contains the

23   asset sale and purchase agreement as

24   agreed to between Wireless Matrix and

25   MobileAria, and that the schedules are,

1

2      to the best of your knowledge, the final

3      versions of such schedule.

4            MR. ROGOFF:   I confirm that my

5      client has so advised me.

6            MR. FAY:   Okay.

7            MR. REESE:   At this point, I would

8      ask the @Road representative to affirm,

9      to the best of your knowledge, that

10     Exhibit Number 3 represents @Road's offer

11     for the asset of MobileAria.

12           MR. FAY:   Although I have not

13     reviewed the whole document, it looks

14     like that that is what we sent.

15           MR. REESE:   Thank you.

16           Finally, one additional issue which

17     we have discussed this morning, but to

18     just put on the record:   As everyone here

19     is probably aware, Sun Micro Systems Inc.

20     filed an objection to the assumption

21     assignment of MobileAria's license

22     agreement with Sun on June 30th, which

23     objection was entered in docket number

24     4433.

25           At the present time, it is

1

2       MobileAria's belief that the only license

3       agreement with Sun is a binary code

4       license agreement covering the Java 2

5       platform standard edition run time

6       environment, 5.0 software, which is open

7       source software available on a Sun

8       Website for download without charge and

9       which, I am told, is comprised of the

10      following three elements:  the J2SE

11      version 1.4.2 and 1.5 run time.

12          MR. BENNETT:  Repeat that one more

13      time.

14          MR. REESE: Sure.

15          J2SE version 1.4.2 and 1.5, run time

16      version.

17          MS. BRANSON:  It is listed on the

18      schedule.

19          MR. REESE:  The second element is

20      the Sun Java Mail Library.

21          The third element is the Sun Java

22      Bean Activation Framework.

23          MR. ROGOFF:  As I can just object,

24      as you can probably see by my client

25      physically writing this down, this is the

1

2    first that we have been informed of the

3    objection.  We have not seen it, we have

4    not had an opportunity to assess what, if

5    any, impact it has.

6         I would request if there is a copy

7    of the objection, that somebody can

8    provide it, so that we can see the

9    specificity of what was objected to and,

10   obviously, we will need to take into

11   account the objection with respect to

12   what our rights are under the contract.

13        MR. REESE:  Understood, Mr. Rogoff.

14   We will attempt to get you a copy of it,

15   so that you can review the objection.

16   However, I would note that MobileAria

17   uses the software internally and the

18   software is not incorporated into

19   MobileAria's products that are sold.

20        We have been in communication with

21   Sun's counsel and we are hopeful that the

22   objection will be withdrawn, based upon

23   the fact that this software is publicly

24   available without charge, from a Sun

25   Website.  And there are no licensing fees

1

2      associated with this product.

3          However, if Sun is not willing to

4      withdraw its objection for any reason,

5      MobileAria does not believe that it is in

6      anyone's best interest to engage Sun at

7      this time, and would request that each

8      bidder consider removing that contract

9      from the list of -- scheduled for

10     contracts, which is schedule 2.1.1, and

11     agree that such license agreement not be

12     assumed by MobileAria or assigned to the

13     bidder in the event that Sun does not

14     withdraw its objection.

15         We will, however, get you a copy of

16     it, so that you have an opportunity to

17     review it.

18         With that clarification on the

19     record, we would now open the floor for

20     any statements from the interested

21     parties here today, or any further bids

22     from the parties.

23         MR. ROGOFF:  In terms of just a

24     statement, perhaps a clarification:  One,

25     I appreciate your views with respect to

1
2    the Sun Micro System objection.  We will

3    need to look at the objection and

4    consider both the objection and its

5    impact on the contract and, of course,

6    your request in due course.

7        Putting that aside for a moment, in

8    looking at the @Road agreement that was

9    submitted, we did note that there were

10   certain language changes that were made

11   to their agreement that we don't believe

12   have an economic impact in terms of the

13   differential or the Wireless Matrix

14   agreement, and it would be our intent to

15   conform language that was placed into the

16   @Road's agreement, into the Wireless

17   Matrix agreement and, with specificity,

18   what my client has advised me so far

19   would be the language which is on

20   schedule 5.1.6.B, that is 5.1.16.B.

21       You guys can come up with any other

22   sub-elements of that -- which just

23   provided certain specificity to

24   provisions that we believe are already

25   covered in the Wireless Matrix agreement.

1

2          But we would ask that our schedule,

3    likewise, be conformed to the same

4    wording language that was submitted by

5    @Road.

6          MS. BRANSON:  Subsection B.  Actual

7    agreement --

8          MS. IZURIETA:  The wording on the

9    bottom of the employee schedule that you

10   mentioned earlier.

11         MR. REESE:  I believe that is

12   schedule 5.16.A, rather than .B.

13         MR. ROGOFF:  Not that one.  Not

14   .5.1A.

15         MS. IZURIETA:  Sorry.

16         MR. ROGOFF:  I am talking about

17   schedule 5.1 -- sorry, did I say, 5.1.

18   16B, seller performance, specifically, it

19   says "Seller is not paid employee

20   performance bonuses due in the amount

21   aggregating $114,000."  It was then added

22   to the @Road's agreement, the following

23   language, which we believe is covered in

24   our agreement; so, it is not an economic

25   change, but we would like the

1

2 specificity.  The wording was added

3 "Seller agrees to pay such employee

4 performance bonuses prior to the closing

5 day."  It is that additional sentence

6 that we would be adding to our comparable

7 schedule.

8 　　MR. REESE:  Okay.  In fact, I am

9 informed that those bonuses have, in

10 fact, been paid.

11 　　MR. ROGOFF:  Thank you.

12 　　That is the only clarification that

13 we have before opening the auction.

14 　　MR. REESE:  Okay.

15 　　MR. FAY:  I would like to have a

16 copy of the list of attendees.

17 　　MR. REESE:  Sure.

18 　　With the cross outs, we can get you

19 a copy of that exhibit.

20 　　MR. FAY:  Thank you.

21 　　MR. REESE:  Any additional comments,

22 or is Wireless Matrix prepared, at this

23 time, to provide a subsequent bid?

24 　　MR. ROGOFF:  If there are no other

25 comments, yes.

1

2          MR. REESE:   The floor is yours.

3          MR. ROGOFF:   We are going to bid

4     $7.6 million.   We are going up by the

5     $100,000 bidding increment.   In addition,

6     we are going to modify the agreement to,

7     likewise, conform with the @Road's

8     agreement, with respect to schedule 5.1.

9     16A, to delete the condition which is

10    listed at the bottom of that schedule

11    that was referred to in your

12    introduction, regarding employment of

13    certain key employees.   So, our bid is

14    both the $100,000 bidding increment

15    increase, as well as the deletion of the

16    condition reflected on the bottom of

17    schedule 5.1.16.A.

18          MR. REESE:   Okay.

19          For clarification, would all other

20    terms of the agreement, as you proposed

21    them, be on the terms of Wireless Matrix'

22    existing asset purchase agreement, and

23    you will not be adopting any of the

24    additional changes reflected in the @Road

25    markup?

1

2          MR. ROGOFF:  Just a second.

3          I appreciate why you have asked that

4     question and I suppose, before I answer

5     that question, I would like to throw a

6     question back at you because, what the

7     heck.

8          We don't believe that there are any

9     other changes that have been made to

10    @Road's agreement, other than conforming

11    to @Road's specifically.

12          Does the estate believe that there

13    are other changes as between their

14    agreement and our agreement that have any

15    economic impact?  And, if so, we would

16    like to be advised as to what those are.

17          MR. REESE:  I think, initially, one

18    additional revision which we would point

19    to, which we believe is favorable, and we

20    would like to have included, is in

21    section 3.1.4 of the agreement, which is

22    entitled "retention bonus," and there is

23    an additional sentence providing that the

24    retention bonus shall be paid in

25    accordance with the terms and conditions

1

2    outlined in purchasers offer of

3    employment, which we do believe is

4    favorable, and would like to have it

5    included.

6        MR. ROGOFF:  While my clients are

7    reviewing that, I would ask you that,

8    while I appreciate that you believe that

9    it is favorable, is there any economic

10   impact that is being given to that

11   sentence?  And, if so, what is the

12   economic impact?  How is that being

13   quantified in terms of a higher and

14   better bid from a monetary perspective?

15       MR. REESE:  We don't believe that it

16   affects the economic aspects of the bid,

17   but we do believe it is a more favorable

18   term.  We have not assigned any value to

19   it.

20       MR. ROGOFF:  What I would like to

21   request, and I appreciate why you have

22   asked the question, we will reserve on

23   commenting on that particular subsection,

24   and all other aspects of our agreement,

25   you know, are as presented, and we will

1

2      take into account in any future bidding

3      the company's request that we modify

4      section 3.1.4 of the agreement, to add

5      the additional language, but at this

6      point in the bidding process we are not

7      prepared to do that.

8            MR. REESE:  And I just, for the

9      record -- any subsequent additional

10     subsequent bids of Wireless Matrix,

11     should we assume that those are, then, on

12     the same terms and conditions as you have

13     outlined, outlined then, with respect to

14     the agreement, unless you advise

15     otherwise?

16           MR. ROGOFF:  That is correct.  Yes,

17     the Wireless Matrix agreement.

18           A PARTICIPANT:  That was a short

19     bid.

20           MR. REESE:  All right.  Any comments

21     from any other parties, at this time,

22     with respect to that?

23           MR. FAY:  Um, what I would like to

24     know is whether that is considered a

25     better bid.  If you have a term that is

1

2      more favorable, that I think -- that you

3      think is part of the calculation, then I

4      think it is important, at least, for me

5      to know that you consider that a better

6      bid, so that the action shifts.

7           MR. REESE:  Okay.  I think, at this

8      point, we would, then, take a short

9      recess to caucus internally and determine

10     whether or not we do believe that that

11     constitutes a qualified subsequent bid.

12          MR. LYONS:  A very short bid.  Let's

13     take a five-minute recess.

14          (Recess.)

15          MR. REESE:  Back on the record.

16          We are back on the record.

17          And the company, MobileAria, has

18     considered the bid laid out by Wireless

19     Matrix and has determined that it is a

20     qualifying subsequent bid, and would

21     constitute the highest or otherwise best

22     offer for the assets at this time.

23          We will now open the floor.

24          MR. FAY:  Okay.  So, I think what we

25     would like to do, then, is take a brief

1
2   caucus to consider the matter.  We would
3   like to adjourn to our room.
4       MR. LYONS:  Any estimate as to how
5   long you would be, as to whether we
6   should keep the people here?
7       MR. FAY:  I think the people don't
8   have to be imprisoned here, but why don't
9   we go back and we will meet in the room
10  and maybe we can give you an estimate in
11  a moment or two.
12      MR. REESE:  Thank you.
13      Off the record.
14      (Recess.).
15      MR. REESE:  Back on the record.
16      MR. FAY:  Yes.
17      MR. REESE:  We are at the auction
18  for the assets of MobileAria, and we
19  would open the floor to other bids or
20  comments.
21      MR. FAY:  Yes.
22      Thank you.  One thing I would like
23  to do, first, is confirm, again, our
24  conversation earlier about how we
25  calculate subsequent bids.  So, let's

1

2      take the example of the current bid,

3      which was $7.6 million.

4          Would it be your understanding that,

5      all other terms being equal, that the

6      qualifying subsequent bid would be $7.7

7      million?

8          MR. REESE:  All other terms being

9      equal, that would be correct.

10         MR. FAY:  In that case, what I would

11     like to propose is:  We would make a

12     subsequent bid of 7.7 -- $7.7 million,

13     and we do believe, of course, that all of

14     our other terms are such that it makes

15     the subsequent bid a superior bid.

16         But if you do feel otherwise, we

17     would like to know that.

18         MR. REESE:  Okay.

19         MR. FAY:  Thank you.

20         MR. REESE:  I think one point that

21     we would like to qualify, relating to our

22     earlier discussion regarding section

23     6.2.5, which deals with other approvals,

24     we would like to confirm that you would

25     be amenable to that item being modified

1

2      such that a party's failure to object to

3      a notice of assumption and assignment of

4      contracts to @Road would satisfy that and

5      it would not require an affirmative

6      consent.

7           MR. FAY:  What I would like to

8      understand is, is it appropriate for you

9      to actually have that term or question to

10     be asked of Wireless Matrix, given that

11     they had the current, they had the

12     current bid, and this is sort of a new

13     term that you are bringing up for my bid?

14          MR. LYONS:  This was a changed term

15     in @Road's bid.  Wireless Matrix doesn't

16     have that.

17          MR. REESE:  That is not correct.

18          MR. ROGOFF:  Just the opposite.

19          MR. REESE:  Currently -- that -- I

20     think it is a point that we qualified

21     early.  We would like to qualify that

22     that language changed, and we do think

23     that it is section 6.2.5.  @Road?

24          MR. FAY:  I think I do understand

25     what schedule you are referring to,

1

2   third-party approvals, and my

3   understanding is that the @Road draft

4   included six contracts on the schedule,

5   and the Wireless Matrix draft included

6   seven contracts on the schedule, and your

7   proposal is that this schedule be

8   removed.

9         So, I think what I would like to

10  understand:  Is that your proposal?

11        MR. REESE:  That is correct.  There

12  was a misstatement earlier.  That

13  provision does appear in both agreements.

14        MR. FAY:  All right.

15        I would like to understand whether

16  it is appropriate to actually consider

17  this in the context of our bid, but it

18  seems, because I don't know that -- I

19  think it is probably more appropriate to

20  have that comment first be addressed by

21  the bid that is outstanding, which was,

22  which is the Wireless Matrix bid.

23        MR. REESE:  I guess our response

24  would be that we think this is something

25  we already discussed in a clarification,

1

2  and if you are not willing to include it,

3  then we would, obviously, consider your

4  bid on that basis.  But we would like

5  that clarification.

6      MS. SHULMAN:  If I can clarify, I

7  don't think that is what we are saying.

8  I think what we are saying is, we are

9  happy to address that issue, but

10  procedurally, there is a higher and

11  better bid on the table right now.

12      So, what we are saying is:  We think

13  it is appropriate for -- if you want this

14  change laid out on the table, we can talk

15  about it at that time.

16      But what Mr. Fay is saying, right

17  now there is a higher, better bid, and

18  since it is the same in both contracts,

19  it is probably procedurally more

20  appropriate better to address it with

21  them first, and if they say they will

22  change it or they don't want to change

23  it, then that goes into your next

24  question whether or not the bid is higher

25  or better.

1

2      MR. REESE:  We are happy to direct

3   that question to you, whether or not you

4   are willing to agree to that term.  I

5   will be happy for you to describe it.

6      MR. ROGOFF:  A procedural

7   clarification.  We put a bid on that you

8   already told us the bid is better and

9   higher, the bid is to @Road, and I

10   appreciate you --

11      You already accepted our bid as the

12   higher and better bid.  If they want to

13   stop the auction and not bid further,

14   that is fine with us.  There is no

15   further bid to us.

16      MR. REESE:  Okay.  I guess, at that

17   moment, then, our response would be, we

18   would consider a modification of that

19   language to be an enhancement, and either

20   party is free to include in any

21   subsequent bid, your bid is on the table,

22   if you can clarify whether it does or

23   does not include that, that modification.

24      MS. SHULMAN:  All right.

25      MR. FAY:  One of the things that we

1

2    talked about earlier was potentially

3    seeing the proposed language that would

4    be related to this third-party approval

5    section, the court order.  Do you have

6    that language that we could look at, as

7    well?

8         MR. REESE:  I believe you received a

9    copy of a draft sale approval order with

10   the initial pleadings.  It should also be

11   in your packet that you received this

12   morning, as an attachment.  It hasn't

13   been changed yet, and I think we would be

14   willing to provide, in that language,

15   that subject to entry of an appropriate

16   sale or subject to the entry of a sale

17   approval order, providing that the

18   failure to object will constitute

19   consent, that, then, you would not need

20   any further --

21        MR. ROGOFF:  I will ask a point of

22   clarification, because our schedule is

23   different from their schedule.

24        Are you referring just to the

25   addition on their schedule of the one

1

2      other contract, or are you referring

3      to --

4          MR. REESE:  We are referring to all

5      contracts.

6          MS. IZURIETA:  You want to take all

7      contracts off of 6.2 --

8          MR. REESE:  Our view is that the

9      sale approval order provides that a

10     party's failure to timely object to our

11     notice of assumption and assignment will

12     bind them and will be deemed to be an

13     affirmative consent, if they fail to

14     object.

15         Therefore, we believe that the

16     provisions are necessary, and we would

17     like to have it approved, so there is not

18     a requirement that we seek affirmative

19     consent.

20         MR. ROGOFF:  Without getting into

21     areas that we all don't like to talk

22     about as lawyers, what assurances -- and

23     I am not agreeing or disagreeing on

24     behalf of my client, I am getting

25     clarification of something that you are

1
2      raising now -- what assurances do we have

3      that notice was actually given to or

4      received by these people, that they had

5      the opportunity to object and they

6      elected not to object and that, legally,

7      the court's order can, in fact, not

8      result in any consequence?

9              We are kind of getting into a legal

10     opinion area, as well as factual

11     determination that these parties weren't

12     simply served with the motion, but they

13     received it and reviewed it and,

14     therefore, had the ability to object and

15     elected not to do so.

16             MR. REESE:  With respect to notice

17     of the proposed assumption and assignment

18     to Wireless Matrix, the Debtors have

19     filed the notice and affidavits of

20     service in accordance with the terms of

21     the bidding procedures order,

22     demonstrating that, in fact, we have

23     complied with the terms of bidding

24     procedures order, and we would anticipate

25     that any sale approval would include a

1

2   factual finding that, in fact, notice

3   was --

4         MR. ROGOFF:  All right.  We  --

5         You know what, I will retract.

6         MR. REESE:  Thank you.

7         MR. FAY:  I guess the question is, I

8   guess, back to me.

9         Maybe you can help me clarify that,

10  whether you, by raising this now, are

11  ascribing some value to this term, and it

12  would be helpful to know that value; so,

13  that way we can assess our next

14  appropriate bid.  Because it might change

15  our bid or, I guess our bid is not

16  finalized, given this discussion.

17        If you could comment on that, that

18  will go into our factors.

19        MR. REESE:  You are seeking economic

20  value?

21        MR. FAY:  It seems like you are

22  ascribing value; otherwise, we will talk

23  about it.  I would like to know what that

24  value is.

25        MR. LYONS:  I think procedurally we

1

2     stated that it is an enhancement right

3     now on the terms.

4          I believe the value of that

5     enhancement becomes relevant if the other

6     bidder decides to bid against that

7     enhancement, and if they decide not to,

8     to agree to that term change and,

9     instead, wanted to try to enhance price,

10    at that point, I think we would need to

11    ascribe an economic value to it.  I

12    think, at this stage, it is premature.

13         So, either -- I guess the question

14    is, is @Road willing to include that as

15    part of the $7.7 million bid or not?  If

16    not, we can discontinue.  And, if so, we

17    will continue with that enhancement.

18         MR. MEHOK:  Would you focus, or

19    point to the section of the sale order.

20         MR. LYONS:  I don't have a copy.

21         MR. REESE:  It would be paragraph 17

22    on page 13 of the sale approval order

23    that was filed as an exhibit to the sale

24    motion.

25         MS. IZURIETA:  Say that one more

1

2    time.

3         MR. REESE:  It is paragraph 17 on

4    page 13.

5         A PARTICIPANT:  The order is in

6    Exhibit 4.

7         MR. REESE:  It is in Exhibit 4,

8    roughly halfway through.

9         I would also direct you to paragraph

10   R on page 8.

11        MS. IZURIETA:  Paragraph R what?

12        MR. REESE:  On page 8.

13        MS. IZURIETA:  Thank you.

14        MR. FAY:  It is @Road's view that

15   the eliminating of this term does have

16   real economic value, and I do see it as

17   somewhat significant and important, so it

18   is a part of our calculations; so, we

19   would ask that, if we were to make this

20   enhancement, it would be considered, of

21   course, given that value.

22        With that, I would like to confirm

23   that our subsequent bid is $7.7 million,

24   and we would make the proposed

25   enhancement --

1

2     MR. BAER:  Could you speak up.  Did

3  you say that you would --

4     MR. FAY:  We would delete the

5  schedule as requested.  Did you hear

6  that?

7     MR. BAER:  Delete the schedule.

8     MR. FAY:  Delete the schedule that

9  was requested.

10     MR. BAER:  Thank you.

11     MR. REESE:  The bid is, then, $7.7

12  million and we will remove schedule

13  6.2.5.  Section 6.2.5.

14     MR. FAY:  Therefore, we would

15  include in this subsequent bid that

16  enhancement and the value that ultimately

17  we expect would be ascribed to it.

18     MR. REESE:  Very good.  Thank you.

19     MR. LYONS:  And all other terms of

20  that bid are in force.

21     MR. FAY:  I confirm that, yes.

22     MR. REESE:  All right.  MobileAria's

23  view would be that @Road's bid would

24  constitute a higher or otherwise better

25  subsequent bid and would now constitute

1

2    the highest or otherwise best bid

3    currently on the table at auction.  We

4    would then turn to Wireless Matrix.

5         MR. ROGOFF:  Putting aside the

6    characterization of @Road's bid by @Road

7    will bid 7.8 million .  No other changes

8    to our contract.

9         MR. REESE:  You will not modify

10   schedule 6.2.5?

11        MR. ROGOFF:  That is not a part of

12   our bid, at this point.

13        MR. LYONS:  We can take a break.

14        MR. REESE:  We will take a short

15   recess and reconvene in five or 10

16   minutes.

17        MR. ROGOFF:  Done.  Thank you.

18        (Recess.)

19        (Time noted:  3:22 p.m.)

20        MR. REESE:  Back on the record.  The

21   auction for MobileAria.

22        We are back on the record to report

23   that I believe, and I will ask for

24   confirmation of this from Wireless

25   Matrix' designated representative, that

1

2   there are two modifications to the bid

3   previously made by Wireless Matrix in the

4   amount of $7.8 million and those two

5   remissions are first, with respect to

6   section 4.3 of the asset sale and

7   purchase agreement, and there is new

8   language of section 4.3 which would

9   replace the existing 4.3 in its entirety,

10  and we would mark that new language as

11  Exhibit 6.

12      So, that new language that we just

13  marked as Exhibit 6, and I believe that

14  we shared with everyone in the room,

15  would be the first modification.

16      The second modification would be to

17  section 6.2.5 of the asset sale and

18  purchase agreement, and that modification

19  would be to add, at the beginning of that

20  section, the following language.

21      "Except as expressly obviated by the

22  terms of the sale approval order," and

23  the language of that section would then

24  continue.

25      Can the designated representative

1

2    for Wireless Matrix please confirm that

3    those two items just described are

4    modifications to your bid, all other

5    terms of your previous bid remain in

6    force and effect.

7        MR. ROGOFF:  Yes.  I will confirm

8    that those two modifications are

9    acceptable changes to the form of our

10   agreement in addition to the $7.8 million

11   bid that we previously offered.

12       MR. REESE:  Okay.  All other terms

13   of that bid are the same?

14       MR. ROGOFF:  Are the same.

15       MR. REESE:  Very good.

16       At this point, based upon those

17   representations on the record, MobileAria

18   would determine that to be a higher or

19   otherwise better bid for the assets of

20   MobileAria, and that would constitute a

21   qualifying bid, and would be the highest

22   or otherwise best bid currently on the

23   table at this point in time.

24       MR. LYONS:  Would the parties like

25   to take a recess?

1

2          MR. FAY:  If I could ask a question

3     first.

4          First, in our prior bid, we

5     suggested that we might eliminate the

6     required consensus schedule, and I was

7     curious whether MobileAria had ultimately

8     ascribed any value to that.

9          MR. REESE:  We did believe that that

10    had an economic value; however, we

11    believe that the revisions made by

12    Wireless Matrix to section 6.2.5, which

13    deals with that issue, do adequately

14    address the same concerns.

15         MR. FAY:  All right.  And then,

16    second, and for clarification, I am

17    wondering whether there is a value that

18    has been ascribed to the proposed 4.3

19    language which is now Exhibit 6.?

20         MR. REESE:  We do believe that there

21    is value, and we have not ascribed a

22    specific monetary value to that.

23         MR. FAY:  So, I should think of the

24    current bid as really 7.8 million plus --

25    certain enhancements, as changed?

1

2          MR. REESE:  That is correct.

3          MR. FAY:  Okay.

4          I think, then, we would like to take

5     a recess and have an opportunity to

6     review the document.

7          MR. REESE:  Any comments from any

8     other parties on the record before we

9     take a recess?

10          (Pause.)

11          MR. REESE:  Hearing none, I think

12     that we would take a recess.

13          We are off the record.

14          (Recess.)

15          (Time noted:  6:11 p.m.)

16          MR. REESE:  Back on the record.

17          And I believe where we are at

18     currently is the current highest or

19     otherwise best bid is the bid of Wireless

20     Matrix, who would now open the floor to

21     @Road and ask whether or not you intend

22     to make any further bid?

23          MR. FAY:  We would like to make a

24     further bid, and that bid would be that

25     we would agree to prior bids changed to

1

2    section 6.2.5, which included the

3    language, I believe, that started at --

4    that started as, started with "except as

5    expressly obviated by the terms of the

6    sale approval order," and I think that

7    that also meant that this would be,

8    therefore, part of our bid that the

9    schedule 6.2.5 would be reinserted into

10   the agreement and, in addition, our bid

11   would include the, I guess we will call

12   it the rider to section 4.3.

13       MR. REESE:  Which, I think, we would

14   like to mark as Exhibit 7, and if you

15   can -- authenticate that, in fact, that

16   is an accurate copy of that language.

17       MR. FAY:  Thank you.

18       Exhibit 7 looks as though it is an

19   accurate copy of what we propose, but we

20   may take a couple minutes later to just

21   confirm that that is the case.

22       MR. REESE:  Thank you.  You can do

23   it now.

24       MR. FAY:  Okay.

25       (Pause.)

1

2         MR. FAY:  With respect to Exhibit 7,

3    we would like to just make one revision.

4         MR. LYONS:  You can mark it.

5         MS. SHULMAN:  All right.

6         MR. LYONS:  If you would like to

7    look at the exhibits before they go in.

8         MR. BAER:  We would like to see

9    whatever changes they make.

10        MR. FAY:  To clarify, the provision

11   that we are making is on page 2, first

12   paragraph, revision -- it would now read:

13   "Regarding purchaser's acquisition of

14   inventory from Delphi under this section,

15   purchaser shall have the same rights

16   under the Prolificx' agreement as seller,

17   including warranty rights that Delphi and

18   its affiliates have as buyers against

19   Prolificx."  Okay.

20        MR. REESE:  We will mark Exhibit 7,

21   the revised language.  Do you want to

22   look at it?

23        MS. IZURIETA:  I have it.  Thank

24   you.

25        MR. FAY:  The final element of the

1

2    bid is, we would change or raise the

3    purchase price to $7.9 million, which, I

4    believe, unless I had forgotten my math

5    since 11 a.m., that is a qualifying

6    subsequent bid.

7        MR. REESE:  Okay.  Just to confirm,

8    all other terms of your bid, other than

9    those that you have expressly laid out,

10    have remained the same since your prior

11    bid?

12        MR. FAY:  That is correct.

13        MR. REESE:  With those changes,

14    having reviewed the language of section

15    4.3, as you have proposed it, MobileAria

16    would conclude that that, the language of

17    4.3 you have proposed is substantially

18    equivalent to the language of 4.3

19    proposed by Wireless Matrix and,

20    therefore, we would conclude that that is

21    a higher or otherwise better offer and

22    would qualify as a subsequent bid.

23        MR. FAY:  Thank you.

24        MR. REESE:  Therefore, @Road has the

25    highest or otherwise best offer for the

1

2     assets.

3         I think we will now look to Wireless

4     Matrix, if you have a response.

5         MS. IZURIETA:  We require --

6         MR. ROGOFF:  First of all, just as a

7     standing for the record, unless I note

8     otherwise.

9         MobileAria bids --

10        (Pause)

11        All right.

12        Unless otherwise stated for the

13    record, all terms and conditions of our

14    bid will remain the same, except as I

15    expressly note, at least for our bid, and

16    I assume for theirs, as well, they can

17    confirm this, so you don't always have to

18    ask if it remains unchanged, and I will

19    tell you what changes.

20        Having said that, we are going to

21    adopt the modified section 4.3, which I

22    guess is Exhibit 7; however, we are going

23    to change the wording of the paragraph on

24    the second page, not necessarily using

25    the wording that was just read into the

1

2       record, but using different wording,

3       which I will read to you and then show

4       you, and it is working with the existing

5       wording that you had there, but adding to

6       the end of it, where it says "against

7       Prolificx," and then adding the clause

8       "or otherwise arising under the

9       Prolificx' agreement, including without

10      limitation, transfer of title and

11      invoicing and payment terms."

12          With that modification, we would

13      work with, adopt this new section of 4.3,

14      which, I guess, technically would become

15      an Exhibit 8, since we modified the

16      language even further, and raise our bid

17      to 8 million.

18          MR. REESE:  One second.  We will

19      mark the black line page as Exhibit 8, as

20      reflected.  And having reviewed that

21      language, we don't believe that that, the

22      post language changes the economic value

23      of your bid; therefore, we would

24      determine that your bid of $8,000,000,

25      with that revision, would constitute a

1

2      higher or otherwise better offer, and a

3      qualifying subsequent bid.

4            We will now turn to @Road.

5            MR. FAY:  We would like to take a

6      couple of minutes, a short recess, and

7      then come back to you.

8            MR. REESE:  Okay.

9            MR. ROGOFF:  Can we get a

10     clarification, with all due respect, to

11     all of us who have taken breaks, and we

12     have all done it today; but at this

13     point, can we keep these breaks fairly

14     short?

15           MR. FAY:  Yes.  That would be fine.

16           MR. REESE:  With that, we will go

17     off the record.

18           (Recess.)

19           MR. REESE:  Back on the record.

20           Back on the record, and I think the

21     floor is yours.

22           MR. FAY:  Okay.  So, we would like

23     to start by saying that unless we specify

24     otherwise, all of the terms and

25     conditions of our prior bid will continue

1

2      in any subsequent bid.  So, we will try

3      to be specific about any changes.

4          So, in light of that, what we would

5      like to do is we would like to adopt the

6      proposed change to section 4.3 that was

7      outlined in Exhibit 8, and so our new bid

8      would be with Exhibit 8, and it would be

9      at a purchase price of 8.1 million.

10         MR. REESE:  Okay.  Very good.  That

11     would constitute a higher or otherwise

12     better offer and a qualifying subsequent

13     bid.

14         We will turn to --

15         MR. ROGOFF:  8.2 million.

16         MR. REESE:  That would also be a

17     higher or otherwise better offer.

18         MR. FAY:  Okay.  So, we will enjoy a

19     brief recess and we will be back.

20         MS. SHULMAN:  We will do what we did

21     before.

22         MR. REESE:  Off the record.

23         (Time noted:  6:30 p.m. )

24         (Recess.)

25         MR. REESE:  Back on the record.

1

2          MR. FAY:  So, we would like to make

3     a subsequent bid in the amount of $8.5

4     million.

5          MR. REESE:  Okay.  Given that we are

6     just going on the price, I think we will

7     forego the formality of saying higher or

8     otherwise, and it is clear in terms of

9     Wireless Matrix.

10          MR. CARLSON:  We would like to

11     caucus about this bid; so, we need ten

12     minutes.

13          MR. REESE:  All right.  We will

14     recess.

15          (Recess.)

16          MR. ROGOFF:  Wireless Matrix bids

17     8.8 million.

18          MR. REESE:  @Road?

19          MR. FAY:  We would like to take a

20     caucus for a few moments.

21          MR. REESE:  Off the record.

22          (Recess.)

23          MR. REESE:  Back on the record.

24          MR. FAY:  @Road would like to make a

25     subsequent bid at $9.1 million.

1

2          MR. REESE:  Okay.

3          MR. ROGOFF:  Wireless Matrix bids

4     9.5.

5          MR. REESE:  Thank you.

6          MR. FAY:  We would like to take a

7     recess.

8          Thank you.

9          MR. REESE:  Off the record.

10          (Recess.)

11          MR. REESE:  Back on the record.

12          MR. FAY:  So, @Road would like to

13     make a subsequent bid at $10,000,000.

14          MR. REESE:  Thank you.

15          MR. CARLSON:  We would like to

16     caucus.

17          MR. REESE:  Off the record.

18          (Recess.)

19          MR. ROGOFF:  Wireless Matrix bids

20     10.2 million.

21          MR. REESE:  10.2 million.  All

22     right.

23          MR. FAY:  We would like to take a

24     brief recess.

25          MR. REESE:  Good.

1

2          Off the record.

3            (Recess.)

4          MR. FAY:  Okay.

5          MR. REESE:  Back on the record.

6          MR. FAY:  @Road would like to make a

7    subsequent bid at $10.5 million.

8          MR. CARLSON:  Do you want to caucus?

9            (Pause.)

10         MR. ROGOFF:  We would like to

11   request a brief recess, and we would also

12   like to speak with the debtor for a

13   moment.

14         MR. REESE:  Okay.  Very good.

15           Off the record.

16           (Recess.)

17         MR. REESE:  Back on the record.

18           To summarize the discussion that we

19   had off the record, we had a request from

20   Wireless Matrix to consider two bid

21   enhancements, the first of which was to

22   provide a value for a commitment to

23   purchase a certain number of units within

24   a set time frame, and in a guarantee of

25   certain purchases that are of the 6,228

1

2    units referenced in section 4.3.

3         The debtor has decided that the

4    value would be $250 per unit, with

5    respect to any commitment, such that a

6    commitment for each thousand units would

7    be, would have a value of $250,000.

8         The second --

9         MR. HART:  Within one year.

10         MR. REESE:  Within one year.  That

11    was the set time.

12         The second point was, a request for

13    the value of a change to section 4.3 to

14    remove the limitation with respect to

15    only providing certain customers that are

16    enumerated in that section, the debtors

17    had determined, at this time, that they

18    do not believe that there would be an

19    economic value associated with that

20    change.

21         Those were the two issues.

22         MR. LYONS:  I think that summarizes

23    it.

24         MR. REESE:  I think it summarizes

25    it.  So, we, at this point, I believe it

1

2    would be Wireless Matrix' opportunity to

3    bid.

4         MR. ROGOFF:  At this time, Wireless

5    Matrix will bid $10.7 million, no other

6    changes in the contract.  Thank you for

7    the clarification.

8         MR. REESE:  Very good.

9         MR. FAY:  We would like to take a

10   brief recess.

11        MR. REESE:  All right.

12      Off the record.

13       (Recess.)

14        MR. REESE:  Back on the record.

15        MR. FAY:  @Road would like to make a

16   new subsequent bid at $11 million.  There

17   are no other changes.

18        MR. CARLSON:  I want to caucus.

19        MR. ROGOFF:  All right.

20        MR. REESE:  We will take a recess at

21   this time.

22      (Recess.)

23        MR. REESE:  Back on the record.

24        MR. ROGOFF:  Wireless Matrix is

25   bidding $11.7 million, consisting of the

1

2  following:  It will be $11.2 million with

3  respect to the purchase price, and it

4  will be a guarantee with respect to

5  section 4.3 of the agreement, to take

6  2,000 units within the one-year period.

7       Previously, on the record, the

8  debtor identified that the value was

9  $250,000 per thousand units.  Since we

10 are taking 2,000 units, that is $500,000

11 of value from the guarantee, plus going

12 up from 11 to 11.2, for a total value of

13 our bid of $11.7 million.

14      MR. FAY:  We would like to take a

15 recess.

16      MR. REESE:  Off the record.

17      (Time noted:  8:00 p.m.)

18      (Recess.)

19      MR. REESE:  Back on the record.

20      MR. LYONS:  We will mark this as the

21 next exhibit.  Back on the record.

22      I would like to hand to both bidders

23 what is now Exhibit 9, which is a black

24 line reflecting all changes to section

25 4.3 that @Road submitted a couple hours

1

2      ago or so.

3          If you guys could take a look at

4      that.

5          MR. FAY:  Thank you.

6          (Pause.)

7          MR. LYONS:  If both bidders could

8      confirm that that is the section 4.3 that

9      is part of both current bids and

10     subsequent bids.

11         MS. IZURIETA:  They have not bid

12     yet.

13         MR. LYONS:  Subsequent.  Previous

14     bids or subsequent bids.  @Road confirms

15     that this is the section, section 4.3.

16         MR. FAY:  @Road confirms that that

17     is the new section 4.3, the Exhibit 9.

18         MR. ROGOFF:  Wireless Matrix also

19     confirms.

20         MR. LYONS:  Mark this.

21         MR. REESE:  We are back to the

22     further bids.

23         MR. FAY:  Okay.

24         @Road would like to provide the

25     following bid, which is:  We would agree

1

2      to Exhibit 9 and we would bid, then,

3      $11.4 million, which, if I have got my

4      math correct, is a $200,000 incremental

5      increase to the prior bid.

6           MR. REESE:  That would include the

7      commitment in 9 for a guarantee of 2,000

8      units?

9           MR. FAY:  Correct.

10          MR. REESE:  The 11.4 in cash

11     consideration.

12          MR. FAY:  That is correct.

13          MR. LYONS:  The value from the

14     estate's perspective, as indicated to the

15     parties, would be 11.9 in the aggregate.

16          MR. CARLSON:  We would like to

17     caucus.

18          MR. REESE:  Off the record.

19          (Recess.)

20          MR. REESE:  Back on the record.

21          MR. ROGOFF:  Wireless Matrix has no

22     further bids.

23          MR. REESE:  Okay.

24          Any further comments from any

25     parties on the record?

1

2          (Pause.)

3          Hearing none, I think we will take a

4     recess to have a short caucus and then

5     come back.

6          MR. LYONS:   It will be short.

7          (Recess.)

8          MR. REESE:   Back on the record.

9     Upon Wireless Matrix' previous statement

10    that they intend to make no further bid,

11    we have caucused internally and with our

12    creditor constituencies and have

13    determined that @Road's final bid of

14    11.4 million in cash, including a 2,000

15    unit guarantee and all of the other terms

16    and conditions that have been described

17    on the record, constitutes the highest

18    score and the otherwise best bid for the

19    assets of MobileAria, subject to the

20    approval of our board and a Court

21    approval of that transaction at the sale

22    hearing, and entry of an order providing

23    for those terms.

24          We have also determined that,

25    pursuant to the bidding procedures, the

1

2      final bid of Wireless Matrix will

3      constitute the alternate bid that we will

4      seek approval of at the hearing, should

5      we not close the transaction with @Road.

6          And again, all these decisions

7      remain subject to board approval, which

8      we intend to seek tonight at a meeting

9      with our board of directors, and subject

10     to Court approval, pursuant to the terms

11     of the bidding procedures order, and with

12     that, the auction is concluded.

13         MR. LYONS:  Any comments from the

14     parties, either the bidders or the

15     creditors  --

16         MS. SHULMAN:  Thank you for sitting

17     here today, to both parties, also.

18         MR. LYONS:  On behalf of MobileAria

19     absolutely.

20         Thank you, both @Road and Wireless

21     Matrix for participating in the process.

22         Off the record.

23         Thank you.

24         (Time noted:  8:30 p.m.)

25

1

2          C E R T I F I C A T E

3  STATE OF NEW YORK      )

4                         ) ss.

5  COUNTY OF NEW YORK     )

6

7        I, ROBERT X. SHAW, CSR, a Notary

8  Public within and for the State of New

9  York, do hereby certify:

10       That the above record is a true

11  record of the proceedings taken on July

12  6, 2006.

13       I further certify that I am not

14  related to any of the parties to this

15  action by blood or marriage; and that I

16  am in no way interested in the outcome of

17  this matter.

18       IN WITNESS WHEREOF, I have hereunto

19  set my hand this 7 day of July, 2006.

20

21

22  _____

23        ROBERT X. SHAW, CSR

24

25

## A

ability 39:14
absolutely 65:19
acceptable 46:9
accepted 16:5 36:11
account 21:11 29:2
accurate 49:16,19
acquisition 50:13
Acquisitions 5:15
action 30:6 66:15
Activation 20:22
Actual 24:6
Adam 2:21 17:6
add 29:4 45:19
added 24:21 25:2
adding 25:6 53:5,7
addition 5:25 9:4
    10:20 26:5 37:25
    46:10 49:10
additional 12:9
    14:19 19:16 25:5
    25:21 26:24 27:18
    27:23 29:5,9
address 35:9,20
    47:14
addressed 34:20
adequately 47:13
adjourn 31:3
adopt 52:21 53:13
    55:5
adopting 26:23
advise 15:2,20
    29:14
advised 11:9 19:5
    23:18 27:16
advisers 9:17
advisors 9:19,21
Affairs 8:8 17:4
affidavits 39:19
affiliated 5:7
affiliates 50:18
affirm 16:18 18:21
    19:8
affirmative 33:5
    38:13,18
afforded 6:2
Agasse 3:21
agent 9:21 11:13
aggregate 63:15
aggregating 24:21
ago 62:2
agree 22:11 36:4
    41:8 48:25 62:25
agreed 18:24
agreeing 38:23
agreement 6:8 7:23
    8:10,14,16 10:5

10:11,13 13:5
    18:23 19:22 20:3
    20:4 22:11 23:8
    23:11,14,16,17,25
    24:7,22,24 26:6,8
    26:20,22 27:10,14
    27:14,21 28:24
    29:4,14,17 45:7
    45:18 46:10 49:10
    50:16 53:9 61:5
agreements 34:13
agrees 25:3
al 1:6
Allison 11:7
allow 12:9
alphabetical 16:21
alternate 13:12
    15:19,23 65:3
Alto 2:14
ALVAREZ 4:6
amenable 32:25
Americas 2:19
amount 10:22
    13:21 14:3,6
    24:20 45:4 56:3
Analyst 3:21
answer 27:4
anticipate 39:24
anybody 7:15
anyone's 22:6
appear 34:13
appreciate 18:18
    22:25 27:3 28:8
    28:21 36:10
appropriate 33:8
    34:16,19 35:13,20
    37:15 40:14
approval 5:21 6:5
    17:21 37:4,9,17
    38:9 39:25 41:22
    45:22 49:6 64:20
    64:21 65:4,7,10
approvals 17:20
    32:23 34:2
approved 16:6
    38:17
approving 6:15
area 39:10
areas 38:21
arising 53:8
Arps 1:10 2:4 5:5
    5:16
ascribe 41:11
ascribed 43:17 47:8
    47:18,21
ascribing 40:11,22
aside 23:7 44:5

asked 27:3 28:22
    33:10
aspects 28:16,24
assess 21:4 40:13
asset 6:8 7:22 8:10
    8:14,15 10:4,10
    10:13 13:5 18:23
    19:11 26:22 45:6
    45:17
assets 6:7,21 9:15
    10:7 11:21 13:15
    30:22 31:18 46:19
    52:2 64:19
assigned 12:5 22:12
    28:18
assignment 19:21
    33:3 38:11 39:17
associated 22:2
    59:19
assume 29:11 52:16
assumed 22:12
assumption 19:20
    33:3 38:11 39:17
assurances 38:22
    39:2
attachment 37:12
attempt 21:14
attend 11:8
attendees 25:16
Attorneys 2:5,18
    3:4,14
auction 1:9 6:21,24
    7:2,7 9:11 11:9,10
    11:17 12:2 13:25
    14:24 15:9,24
    16:14,20 17:16
    25:13 31:17 36:13
    44:3,21 65:12
August 13:15
authenticate 49:15
authority 17:14,19
authorized 16:18
Automotive 9:17
available 20:7
    21:24
Avenue 2:19 3:15
aware 5:6,19 6:23
    9:13 19:19
a.m 1:11 9:23 51:5

## B

B 1:13 3:7 24:6,12
back 27:6 30:15,16
    31:9,15 40:8
    44:20,22 48:16
    54:7,19,20 55:19
    55:25 56:23 57:11

58:5,17 60:14,23
    61:19,21 62:21
    63:20 64:5,8
BAER 3:17 43:2,7
    43:10 50:8
Bankruptcy 1:2
    5:10 7:3 17:20
based 21:22 46:16
basis 35:4
Bean 20:22
beginning 45:19
behalf 16:12 17:7,9
    17:17 38:24 65:18
belief 20:2
believe 15:17 18:8
    22:5 23:11,24
    24:11,23 27:8,12
    27:19 28:3,8,15
    28:17 30:10 32:13
    37:8 38:15 41:4
    44:23 45:13 47:9
    47:11,20 48:17
    49:3 51:4 53:21
    59:18,25
Bennett 3:23 20:12
best 14:8,24 18:21
    19:2,9 22:6 30:21
    44:2 46:22 48:19
    51:25 64:18
better 28:14 29:25
    30:5 35:11,17,20
    35:25 36:8,12
    43:24 46:19 51:21
    54:2 55:12,17
bid 5:22,25 7:21 8:4
    9:25,25 10:3 11:4
    11:4,21,25 13:8,8
    13:11,12,24 14:3
    14:24 15:8,16,17
    15:18,19,21,22,22
    15:23 16:4,6
    25:23 26:3,13
    28:14,16 29:19,25
    30:6,11,12,18,20
    32:2,6,12,15,15
    33:12,13,15 34:17
    34:21,22 35:4,11
    35:17,24 36:7,8,9
    36:11,12,13,15,21
    36:21 40:14,15,15
    41:6,15 42:23
    43:11,15,20,23,25
    44:2,6,7,12 45:2
    46:4,5,11,13,19
    46:21,22 47:4,24
    48:19,19,22,24,24
    49:8,10 51:2,6,8

51:11,22 52:14,15
    53:16,23,24 54:3
    54:25 55:2,7,13
    56:3,11,25 57:13
    58:7,20 60:3,5,18
    61:13 62:11,25
    63:2,5 64:10,13
    64:18 65:2,3
bidder 6:2 15:7
    22:8,13 41:6
bidders 12:3,18
    16:10 61:22 62:7
    65:14
bidding 5:23 6:10
    6:15,18,22 7:18
    9:14 10:23 11:2,5
    11:23 12:21,22
    13:2,10,16 14:14
    14:21 16:3,3 26:5
    26:14 29:2,6
    39:21,23 60:25
    64:25 65:11
bids 12:10 13:17
    15:6 22:21 29:10
    31:19,25 48:25
    52:9 56:16 57:3
    57:19 62:9,10,14
    62:14,22 63:22
binary 20:3
bind 38:12
binding 10:3 17:23
black 53:19 61:23
blood 66:15
board 15:13 64:20
    65:7,9
bonus 27:22,24
bonuses 24:20 25:4
    25:9
bottom 24:9 26:10
    26:16
bound 7:12
Branson 1:15 2:15
    5:17 20:17 24:6
break 44:13
breaks 54:11,13
break-up 13:22
brief 30:25 55:19
    57:24 58:11 60:10
bringing 33:13
business 13:13
    15:16
buyers 50:18

## C

C 2:2,21 3:2,25 4:2
    4:4 66:2,2
calculate 31:25

calculating 13:23
calculation 30:3
calculations 42:18
California 2:14
call 49:11
Canadian 14:7,11
Carlson 4:5 56:10
57:15 58:8 60:18
63:16
CARREN 3:7
CARY 2:13
case 1:4 32:10
49:21
cases 5:9
cash 10:6 14:4
63:10 64:14
caucus 30:9 31:2
56:11,20 57:16
58:8 60:18 63:17
64:4
caucused 64:11
CEO 4:5
certain 5:22,23
6:15 7:7 10:17
23:10,23 26:13
47:25 58:23,25
59:15
certify 66:9,13
CFO 4:4
change 24:25 35:14
35:22,22 40:14
41:8 51:2 52:23
55:6 59:13,20
changed 33:14,22
37:13 47:25 48:25
changes 23:10
26:24 27:9,13
44:7 46:9 50:9
51:13 52:19 53:22
55:3 60:6,17
61:24
Chapter 5:9
characterization
44:6
charge 20:8 21:24
checked 7:11
Chicago 2:8
Christian 3:23
Christie 1:15 2:15
Christy 5:16
clarification 22:18
22:24 25:12 26:19
34:25 35:5 36:7
37:22 38:25 47:16
54:10 60:7
clarify 35:6 36:22
40:9 50:10

clause 53:7
clear 6:19 18:12
56:8
client 17:9,18 18:6
19:5 20:24 23:18
38:24
clients 28:6
close 15:24 65:5
closing 10:19 13:14
14:6 25:4
code 20:3
colleague 11:7
come 23:21 54:7
64:5
commencement 7:4
comment 34:20
40:17
commenting 28:23
comments 25:21,25
29:20 31:20 48:7
63:24 65:13
commitment 58:22
59:5,6 63:7
committe 11:13
committee 9:20
11:12,15 12:4
18:16
communication
21:20
company 4:9 16:19
17:14,17,19,23
30:17
company's 29:3
comparable 25:6
competing 9:15,24
12:10
competitive 6:10
complete 7:2
completion 6:9
complied 39:23
comprised 20:9
concerns 15:3
47:14
conclude 51:16,20
concluded 65:12
condition 26:9,16
conditions 27:25
29:12 52:13 54:25
64:16
conference 12:6
confirm 14:13 18:4
18:6 19:4 31:23
32:24 42:22 43:21
46:2,7 49:21 51:7
52:17 62:8
confirmation 44:24
confirms 62:14,16

62:19
conform 23:15 26:7
conformed 24:3
conforming 27:10
consensus 47:6
consent 33:6 37:19
38:13,19
consequence 39:8
consider 22:8 23:4
30:5 31:2 34:16
35:3 36:18 58:20
consideration 10:6
14:5 63:11
considered 29:24
30:18 42:20
consisting 60:25
constituencies 15:5
15:10 18:9 64:12
constitute 30:21
37:18 43:24,25
46:20 53:25 55:11
65:3
constitutes 30:11
64:17
consult 15:11
contacted 11:8
contained 10:15
contains 18:22
context 34:17
continue 41:17
45:24 54:25
continues 9:12
contract 21:12 22:8
23:5 38:2 44:8
60:6
contracts 22:10
33:4 34:4,6 35:18
38:5,7
Cont'd 3:2 4:2
conversation 31:24
conversations 12:7
12:17
copy 7:16 8:13
12:24 21:6,14
22:15 25:16,19
37:9 41:20 49:16
49:19
Corcoran 1:16 3:19
9:5
Corp 2:5
Corporate 8:8 17:4
CORPORATION
1:6
correct 29:16 32:9
33:17 34:11 48:3
51:12 63:4,9,12
counsel 5:6 9:6

11:15 17:4 21:21
COUNTY 66:5
couple 49:20 54:6
61:25
course 13:16 14:22
14:25 23:5,6
32:13 42:21
court 1:2 4:10 5:10
6:13,24 7:3 17:21
37:5 64:20 65:10
court's 39:7
covered 23:25
24:23
covering 20:4
credit 13:21 14:11
creditor 15:4,10
18:9 64:12
creditors 3:14 9:20
11:12 12:4,19
18:16 65:15
cross 25:18
CSR 1:23,24 66:7
66:23
curious 47:7
current 32:2 33:11
33:12 47:24 48:18
62:9
currently 5:9 33:19
44:3 46:22 48:18
customers 59:15

D

D 5:12 8:7
dated 6:8 7:18,23
8:6,11,19,22
David 4:6
day 25:5 66:19
days 13:13
deadline 9:24
deals 32:23 47:13
debtor 1:7 58:12
59:3 61:8
debtors 5:7,8,20
39:18 59:16
decide 16:12 41:7
decided 59:3
decides 41:6
decisions 65:6
declined 11:8
deemed 38:12
defined 10:17 11:5
13:8
delete 26:9 43:4,7,8
deleted 10:15
deletion 26:15
deliberate 15:15
Delphi 1:6 2:5 3:19

5:15 9:6,17 50:14
50:17
demonstrating
39:22
depending 15:13
deposit 10:21
Deputy 9:5
describe 7:5 36:5
described 46:3
64:16
designate 16:11
designated 16:16
17:12 44:25 45:25
designating 9:9
desires 15:7
determination 16:8
39:11
determine 15:15,18
30:9 46:18 53:24
determined 11:3
15:21,23 30:19
59:17 64:13,24
different 37:23 53:2
differential 23:13
direct 36:2 42:9
Director 5:14
directors 10:25
11:3 15:14 65:9
disagreeing 38:23
disclosure 7:25
8:12,18
discontinue 41:16
discussed 19:17
34:25
discussion 32:22
40:16 58:18
District 1:3 5:11
DLA 2:13 5:17
docket 6:11,12,17
19:23
document 7:13
19:13 48:6
download 20:8
Dr 3:25
draft 34:3,5 37:9
Drain 16:5
Dran 5:12
Drive 2:7
due 23:6 24:20
54:10

E

E 1:13,13 2:2,2 3:2
3:2 4:2,2 66:2,2
earlier 8:23 13:13
24:10 31:24 32:22
34:12 37:2

early 33:21
East 2:14
economic 23:12
24:24 27:15 28:9
28:12,16 40:19
41:11 42:16 47:10
53:22 59:19
edition 20:5
effect 46:6
EHRMAN 3:3
either 36:19 41:13
65:14
elected 39:6,15
element 20:19,21
50:25
elements 12:25
20:10
eliminate 47:5
eliminating 42:15
emphasize 13:3
employed 10:18
employee 24:9,19
25:3
employees 10:17
26:13
employment 26:12
28:3
encourage 14:22
engage 22:6
enhance 41:9
enhancement 36:19
41:2,5,7,17 42:20
42:25 43:16
enhancements
47:25 58:21
enjoy 55:18
ensure 18:11
enter 7:7
entered 6:11,14,16
7:10 8:16 16:7
19:23
entirety 45:9
entitled 11:8,18,25
13:21 27:22
entry 6:12 37:15,16
64:22
enumerated 59:16
environment 20:6
equal 13:22 32:5,9
equity 11:13,15
equivalent 51:18
Eric 4:10
Esq 1:14,14,15,16
2:9,10,15,21 3:7,8
3:9,10,11,17,19
estate 27:12
estate's 63:14

estimate 31:4,10
et 1:6
evaluation 10:24
event 22:13
everybody 9:13
example 14:2 32:2
exception 7:14
10:14
exchange 14:9
executed 8:11
exercise 15:15
exhibit 7:17,20,22
8:3,5,21,24 10:2
12:23 18:22 19:10
25:19 41:23 42:6
42:7 45:11,13
47:19 49:14,18
50:2,20 52:22
53:15,19 55:7,8
61:21,23 62:17
63:2
exhibits 7:9,13 9:8
9:11 50:7
existing 26:22 45:9
53:4
expect 43:17
express 15:5
expressly 45:21
49:5 51:9 52:15
e-mail 11:9

━━━━ F ━━━━
F 1:13 66:2
fact 14:14 17:25
21:23 25:8,10
39:7,22 40:2
49:15
factors 40:18
factual 39:10 40:2
fail 38:13
failure 33:2 37:18
38:10
fairly 54:13
faith 10:21
far 23:18
favorable 27:19
28:4,9,17 30:2
Fay 4:8 8:7 14:17
16:23,23 17:3
18:4 19:6,12
25:15,20 29:23
30:24 31:7,16,21
32:10,19 33:7,24
34:14 35:16 36:25
40:7,21 42:14
43:4,8,14,21 47:2
47:15,23 48:3,23

49:17,24 50:2,10
50:25 51:12,23
54:5,15,22 55:18
56:2,19,24 57:6
57:12,23 58:4,6
60:9,15 61:14
62:5,16,23 63:9
63:12
fee 13:22
feel 32:16
fees 21:25
file 6:25
filed 5:21 19:20
39:19 41:23
final 7:14 19:2
50:25 64:13 65:2
finalized 40:16
finally 8:24 19:16
finding 40:2
fine 36:14 54:15
first 7:9 13:4 18:19
21:2 31:23 34:20
35:21 45:5,15
47:3,4 50:11 52:6
58:21
five 7:9 44:15
five-minute 30:13
Flom 1:10 2:4
floor 12:8 22:19
26:2 30:23 31:19
48:20 54:21
focus 41:18
following 8:6 20:10
24:22 45:20 61:2
62:25
force 43:20 46:6
forego 56:7
forgotten 51:4
form 8:19 46:9
formality 56:7
formally 15:24
forward 6:4 11:10
four 10:16
frame 58:24
Framework 20:22
free 18:10 36:20
full 17:14,18
further 9:11 15:8
17:20 22:21 36:13
36:15 37:20 48:22
48:24 53:16 62:22
63:22,24 64:10
66:13
future 29:2

━━━━ G ━━━━
General 9:5 17:4

getting 38:20,24
39:9
give 14:10 31:10
given 28:10 33:10
39:3 40:16 42:21
56:5
go 16:21 18:3 31:9
40:18 50:7 54:16
goes 35:23
going 6:4 7:6 11:10
26:3,4,6 52:20,22
56:6 61:11
good 5:3 10:21 17:6
43:18 46:15 55:10
57:25 58:14 60:8
GRAY 2:13
guarantee 58:24
61:4,11 63:7
64:15
guess 34:23 36:16
40:7,8,15 41:13
49:11 52:22 53:14
guys 23:21 62:3

━━━━ H ━━━━
halfway 42:8
hand 61:22 66:19
happy 7:16 35:9
36:2,5
Hart 1:15 3:23 5:18
14:10 59:9
hear 43:5
hearing 6:13 16:6
48:11 64:3,22
65:4
heck 27:7
held 6:13
HELLER 3:3
HELLMAN 2:17
help 40:9
helpful 18:8 40:12
HENRY 3:17
hereunto 66:18
Herriot 11:7
higher 28:13 35:10
35:17,24 36:9,12
43:24 46:18 51:21
54:2 55:11,17
56:7
highest 14:24 30:21
44:2 46:21 48:18
51:25 64:17
hopeful 21:21
horse 6:2
hours 61:25
housekeeping 16:9

━━━━ I ━━━━
identified 61:8
Illinois 2:8
impact 21:5 23:5,12
27:15 28:10,12
important 30:4
42:17
imprisoned 31:8
include 9:10 35:2
36:20,23 39:25
41:14 43:15 49:11
63:6
included 8:2,13
11:11 27:20 28:5
34:4,5 49:2
includes 7:22,25 8:5
including 13:10
50:17 53:9 64:14
incorporated 21:18
increase 26:15 63:5
increment 26:5,14
incremental 63:4
independent 10:24
indicate 17:13
indicated 63:14
informed 21:2 25:9
initial 37:10
initially 7:5 27:17
intend 12:8 48:21
64:10 65:8
intends 12:11
intent 23:14
interest 22:6
interested 22:20
66:16
internally 21:17
30:9 64:11
introduced 9:3
introduction 26:12
inventory 50:14
invitation 11:16
invoicing 53:11
irrevocable 13:11
Isaac 4:9
issue 19:16 35:9
47:13
issues 59:21
item 32:25
items 8:6 46:3
Izurieta 4:4 14:16
24:8,15 38:6
41:25 42:11,13
50:23 52:6 62:11

━━━━ J ━━━━
James 4:8 8:7
Java 20:4,20,21

Esquire Deposition Services
1-800-944-9454

**JEFFERIES** 4:9
**JOB** 1:24
**John** 1:14 2:10 5:16
**JOSH** 3:9
**JR** 3:17
**Judge** 5:12 16:5
**judgment** 15:16
**July** 1:12 66:11,19
**June** 5:19 6:9,13,16
 7:19,23 8:6,11,22
 9:23 11:6 19:22
**J.D** 4:8 16:23
**J2SE** 20:10,15

**K**

**K** 1:14 2:10
**keep** 31:6 54:13
**key** 10:17 26:13
**kicked** 18:5
**kind** 39:9
**Kirsch** 4:6
**know** 7:15 12:2
 28:25 29:24 30:5
 32:17 34:18 40:5
 40:12,23
**knowledge** 18:22
 19:2,9
**knows** 17:24
**Kronish** 2:17 17:7

**L**

**L** 1:15 2:15
**laid** 12:21 14:20
 30:18 35:14 51:9
**language** 23:10,15
 23:19 24:4,23
 29:5 33:22 36:19
 37:3,6,14 45:8,10
 45:12,20,23 47:19
 49:3,16 50:21
 51:14,16,18 53:16
 53:21,22
**LATHAM** 3:13
**lawyers** 38:22
**Lee** 4:9
**legal** 39:9
**legally** 39:6
**lenders** 9:22 11:14
 12:5 18:17
**letter** 8:6 10:4
**let's** 30:12 31:25
**Library** 20:20
**license** 19:21 20:2,4
 22:11
**licensing** 21:25
**Lieb** 2:17 17:7
**light** 55:4

**likewise** 24:3 26:7
**limitation** 53:10
 59:14
**Lind** 3:25 8:9
**line** 53:19 61:24
**Lisa** 3:21
**list** 22:9 25:16
**listed** 20:17 26:10
**LLC** 9:17
**LLP** 2:17 3:3,13
**long** 31:5
**look** 23:3 37:6 50:7
 50:22 52:3 62:3
**looking** 23:8
**looks** 19:13 49:18
**Lyons** 1:14 2:10
 5:16 30:12 31:4
 33:14 40:25 41:20
 43:19 44:13 46:24
 50:4,6 59:22
 61:20 62:7,13,20
 63:13 64:6 65:13
 65:18

**M**

**Mail** 20:20
**majority** 9:18
**making** 50:11
**Marc** 4:10
**March** 8:19
**Maria** 4:4
**mark** 45:10 49:14
 50:4,20 53:19
 61:20 62:20
**marked** 7:9,17,20
 8:3,13,18,21,24
 10:2 12:23 45:13
**Markets** 5:15
**markup** 26:25
**marriage** 66:15
**MARSAL** 4:6
**material** 10:9
**math** 51:4 63:4
**Matrix** 2:18 4:4 6:3
 6:4,6 7:21,24 8:17
 10:12 11:12,24
 12:11 13:6,7,9,20
 13:24 14:2,5,22
 17:5,8 18:20,24
 23:13,17,25 25:22
 26:21 29:10,17
 30:19 33:10,15
 34:5,22 39:18
 44:4,25 45:3 46:2
 47:12 48:20 51:19
 52:4 56:9,16 57:3
 57:19 58:20 60:2

**60:**5,24 62:18
 63:21 64:9 65:2
 65:21
**matter** 15:25 16:9
 31:2 66:17
**matters** 7:7
**Meagher** 1:10 2:4
**meant** 49:7
**meet** 15:9,14 31:9
**meeting** 65:8
**MEHOK** 3:8 41:18
**mentioned** 24:10
**Mergers** 5:14
**met** 5:4
**Micro** 19:19 23:2
**Milleding** 1:15 3:23
 5:17
**million** 10:6 14:4
 26:4 32:3,7,12
 41:15 42:23 43:12
 44:7 45:4 46:10
 47:24 51:3 53:17
 55:9,15 56:4,17
 56:25 57:20,21
 58:7 60:5,16,25
 61:2,13 63:3
 64:14
**minutes** 44:16
 49:20 54:6 56:12
**MIRIAM** 3:11
**misstatement** 34:12
**MobilAria** 3:25
**MobileAria** 2:6
 3:24 5:7,20 6:7,21
 7:18,24 8:9,17,22
 9:16,16 10:5,8,18
 10:21,25 11:22
 12:15 13:6 14:4
 15:3,14 16:5
 18:25 19:11 21:16
 22:5,12 30:17
 31:18 44:21 46:17
 46:20 47:7 51:15
 52:9 64:19 65:18
**MobileAria's** 9:18
 11:3 13:14 19:21
 20:2 21:19 43:22
**modification** 36:18
 36:23 45:15,16,18
 53:12
**modifications** 8:15
 45:2 46:4,8
**modified** 32:25
 52:21 53:15
**modify** 26:6 29:3
 44:9
**moment** 23:7 31:11

**36:**17 58:13
**moments** 56:20
**monetary** 28:14
 47:22
**morning** 5:3 7:11
 17:6 19:17 37:12
**morning's** 8:25
**motion** 5:25 6:11
 8:22 39:12 41:24

**N**

**N** 2:2 3:2 4:2
**name** 16:17,23
**necessarily** 52:24
**necessary** 17:21
 38:16
**need** 9:2,12 21:10
 23:3 37:19 41:10
 56:11
**neither** 15:7
**NEUMAN** 2:11
**new** 1:3,11,11 2:20
 2:20 3:6,6,16,16
 5:11,15 33:12
 45:7,10,12 53:13
 55:7 60:16 62:17
 66:3,5,8
**NICK** 3:10
**Notary** 66:7
**note** 9:4 21:16 23:9
 52:7,15
**noted** 44:19 48:15
 55:23 61:17 65:24
**notice** 33:3 38:11
 39:3,16,19 40:2
**number** 6:12,17
 7:17,20 8:3,21,25
 10:2 18:22 19:10
 19:23 58:23

**O**

**O** 1:13
**object** 20:23 33:2
 37:18 38:10,14
 39:5,6,14
**objected** 21:9
**objection** 19:20,23
 21:3,7,11,15,22
 22:4,14 23:2,3,4
**obviate** 9:2
**obviated** 45:21 49:5
**obviously** 21:10
 35:3
**offer** 17:22 18:2
 19:10 28:2 30:22
 51:21,25 54:2
 55:12,17

**offered** 10:5 17:25
 46:11
**official** 9:19
**Okay** 13:19 19:6
 25:8,14 26:18
 30:7,24 32:18
 36:16 46:12 48:3
 49:24 50:19 51:7
 54:8,22 55:10,18
 56:5 57:2 58:4,14
 62:23 63:23
**Olsen** 1:16 3:21
 5:14
**one-year** 61:6
**open** 12:8 13:12,18
 20:6 22:19 30:23
 31:19 48:20
**opening** 25:13
**opinion** 39:10
**opportunity** 12:9
 12:13 21:4 22:16
 39:5 48:5 60:2
**opposite** 33:18
**order** 6:14,16,18,19
 6:22 7:18 9:14
 10:23 11:3,5,24
 12:22 16:4,7,21
 17:21 18:3 37:5,9
 37:17 38:9 39:7
 39:21,24 41:19,22
 42:5 45:22 49:6
 64:22 65:12
**OSNER** 3:11
**outcome** 66:16
**outlined** 28:2 29:13
 29:13 55:7
**outs** 25:18
**outstanding** 34:21

**P**

**P** 2:2,2 3:2,2,17 4:2
 4:2
**packet** 37:11
**page** 41:22 42:4,10
 42:12 50:11 52:24
 53:19
**Pagemill** 3:22 5:18
**paid** 24:19 25:10
 27:24
**Palo** 2:14
**paragraph** 41:21
 42:3,9,11 50:12
 52:23
**part** 30:3 41:15
 42:18 44:11 49:8
 62:9
**PARTICIPANT**

29:18 42:5
**participate** 11:16
  11:19
**participating** 9:6
  65:21
**participation** 17:16
  18:15,18
**particular** 15:3
  28:23
**parties** 11:8,11,18
  11:20 12:12 14:12
  15:20 16:2 18:14
  22:21,22 29:21
  39:11 46:24 48:8
  63:15,25 65:14,17
  66:14
**Partners** 3:22 5:18
**party** 36:20
**party's** 33:2 38:10
**Pause** 48:10 49:25
  52:10 58:9 62:6
  64:2
**pay** 25:3
**payment** 53:11
**pending** 5:9
**people** 31:6,7 39:4
**performance** 24:18
  24:20 25:4
**period** 13:19 61:6
**person** 16:18
**perspective** 28:14
  63:14
**physically** 20:25
**Piper** 2:13 5:17
**place** 6:20
**placed** 23:15
**platform** 20:5
**pleadings** 37:10
**please** 7:15 14:12
  46:2
**plus** 47:24 61:11
**point** 14:18 15:19
  18:19 19:7 27:18
  29:6 30:8 32:20
  33:20 37:21 41:10
  41:19 44:12 46:16
  46:23 54:13 59:12
  59:25
**position** 17:2
**possession** 5:8
**possible** 15:12
**post** 53:22
**potentially** 37:2
**premature** 41:12
**prepared** 25:22
  29:7
**present** 1:17 3:18

3:20 19:25
**presented** 28:25
**President** 3:25 8:8
  8:9
**previous** 46:5 62:13
  64:9
**previously** 45:3
  46:11 61:7
**pre-petition** 9:22
  11:14 12:4 18:17
**price** 41:9 51:3 55:9
  56:6 61:3
**primary** 10:14 18:9
**prior** 7:3 25:4 47:4
  48:25 51:10 54:25
  63:5
**private** 12:7,17
**privately** 15:9
**probably** 19:19
  20:24 34:19 35:19
**procedural** 36:6
**procedurally** 35:10
  35:19 40:25
**procedure** 13:17
**procedures** 5:23
  6:15,18,22 7:6,18
  9:14 10:23 11:2,5
  11:24 12:21,22
  13:2,8,10 14:15
  14:20,21 16:3,4
  39:21,24 64:25
  65:11
**proceedings** 1:9
  66:11
**process** 6:10 29:6
  65:21
**product** 22:2
**products** 21:19
**Prolifics** 50:16,19
  53:7,9
**proposal** 34:7,10
**proposals** 9:15
**propose** 32:11
  49:19
**proposed** 10:10,12
  26:20 37:3 39:17
  42:24 47:18 51:15
  51:17,19 55:6
**protections** 5:22,25
**provide** 21:8 25:23
  37:14 58:22 62:24
**provided** 6:22 8:4
  10:20 23:23
**provides** 9:14 38:9
**providing** 16:7
  27:23 37:17 59:15
  64:22

**provision** 34:13
  50:10
**provisions** 23:24
  38:16
**Public** 66:8
**publicly** 21:23
**purchase** 6:8 7:23
  8:10,14,16 10:4
  10:10,13 13:5
  18:23 26:22 45:7
  45:18 51:3 55:9
  58:23 61:3
**purchaser** 50:15
**purchasers** 28:2
**purchaser's** 50:13
**purchases** 58:25
**purposes** 16:20
**pursuant** 6:7 10:3
  11:23 13:4,16
  16:2 64:25 65:10
**put** 14:23 18:12
  19:18 36:7
**Putting** 23:7 44:5
**p.m** 44:19 48:15
  55:23 61:17 65:24

---

**Q**

**qualified** 11:4,21
  30:11 33:20
**qualify** 32:21 33:21
  51:22
**qualifying** 30:20
  32:6 46:21 51:5
  54:3 55:12
**quantified** 28:13
**question** 27:4,5,6
  28:22 33:9 35:24
  36:3 40:7 41:13
  47:2
**questions** 18:10
**quickly** 15:12

---

**R**

**R** 1:13 2:2 3:2 4:2
  42:10,11 66:2
**raise** 51:2 53:16
**raising** 39:2 40:10
**Randall** 1:14 2:9
  5:5
**rate** 14:9
**read** 12:20 50:12
  52:25 53:3
**real** 17:25 42:16
**really** 47:24
**reason** 22:4
**receive** 14:4
**received** 7:12 9:16

9:25 37:8,11 39:4
  39:13
**recess** 15:8 30:9,13
  30:14 31:14 44:15
  44:18 46:25 48:5
  48:9,12,14 54:6
  54:18 55:19,24
  56:14,15,22 57:7
  57:10,18,24 58:3
  58:11,16 60:10,13
  60:20,22 61:15,18
  63:19 64:4,7
**recesses** 12:16
**reconvene** 44:15
**record** 7:8,10 9:4,9
  12:14,20 14:13
  16:13,17 17:2,13
  17:22,25 18:11,12
  19:18 22:19 29:9
  30:15,16 31:13,15
  44:20,22 46:17
  48:8,13,16 52:7
  52:13 53:2 54:17
  54:19,20 55:22,25
  56:21,23 57:9,11
  57:17 58:2,5,15
  58:17,19 60:12,14
  60:23 61:7,16,19
  61:21 63:18,20,25
  64:8,17 65:22
  66:10,11
**Reese** 1:14 2:9 5:3,5
  14:8,12,18 16:25
  17:5,10 18:7 19:7
  19:15 20:14,19
  21:13 24:11 25:8
  25:14,17,21 26:2
  26:18 27:17 28:15
  29:8,20 30:7,15
  31:12,15,17 32:8
  32:18,20 33:17,19
  34:11,23 36:2,16
  37:8 38:4,8 39:16
  40:6,19 41:21
  42:3,7,12 43:11
  43:18,22 44:9,14
  44:20 46:12,15
  47:9,20 48:2,7,11
  48:16 49:13,22
  50:20 51:7,13,24
  53:18 54:8,16,19
  55:10,16,22,25
  56:5,13,18,21,23
  57:2,5,9,11,14,17
  57:21,25 58:5,14
  58:17 59:10,24
  60:8,11,14,20,23

61:16,19 62:21
  63:6,10,18,20,23
  64:8
**refer** 6:4,17 8:5
**referenced** 59:2
**referred** 8:23 26:11
**referring** 33:25
  37:24 38:2,4
**reflected** 26:16,24
  53:20
**reflecting** 8:15
  61:24
**regarding** 26:12
  32:22 50:13
**reinserted** 49:9
**related** 37:4 66:14
**relating** 32:21
**relevant** 41:5
**remain** 10:18 46:5
  52:14 65:7
**remained** 51:10
**remains** 52:18
**remind** 16:2
**remissions** 45:5
**remove** 43:12 59:14
**removed** 34:8
**removing** 22:8
**Repeat** 20:12
**replace** 45:9
**report** 44:22
**Reported** 1:23
**reporter** 6:24
**represent** 17:15
**representations**
  46:17
**representative**
  16:11,16,19 18:20
  19:8 44:25 45:25
**representatives**
  11:17 17:12 18:15
**represents** 19:10
**request** 16:10 21:6
  22:7 23:6 28:21
  29:3 58:11,19
  59:12
**requested** 43:5,9
**require** 33:5 52:5
**required** 10:22
  13:18 47:6
**requirement** 38:18
**requirements** 10:15
**reserve** 9:10 28:22
**reserves** 12:15
**respect** 15:5 17:23
  18:13 21:11 22:25
  26:8 29:13,22
  39:16 45:5 50:2

61:3,4
**respective** 15:6
**response** 34:23
  36:17 52:4
**result** 39:8
**retention** 27:22,24
**retract** 40:5
**review** 21:15 22:17
  48:6
**reviewed** 19:13
  39:13 51:14 53:20
**reviewing** 28:7
**revised** 50:21
**revision** 27:18 50:3
  50:12 53:25
**revisions** 47:11
**Rich** 4:5
**Richard** 3:25 8:9
**rider** 49:12
**right** 9:10 12:15
  29:20 34:14 35:11
  35:16 36:24 40:4
  41:2 43:22 47:15
  50:5 52:11 56:13
  57:22 60:11,19
**rights** 21:12 50:15
  50:17
**Road** 3:4 4:7 8:4,5
  8:8,11,20 10:2,5
  10:14,20 11:11,25
  13:17 14:23 16:22
  24:5 26:24 33:4
  33:23 34:3 36:9
  41:14 44:6 48:21
  51:24 54:4 56:18
  56:24 57:12 58:6
  60:15 61:25 62:14
  62:16,24 65:5,20
**Road's** 10:3,9 11:4
  19:10 23:16 24:22
  26:7 27:10,11
  33:15 42:14 43:23
  44:6 64:13
**Robert** 1:23 5:12
  66:7,23
**Rogoff** 2:21 14:7
  17:6,7 18:5 19:4
  20:23 21:13 22:23
  24:13,16 25:11,24
  26:3 27:2 28:6,20
  29:16 33:18 36:6
  37:21 38:20 40:4
  44:5,11,17 46:7
  46:14 52:6 54:9
  55:15 56:16 57:3
  57:19 58:10 60:4

60:19,24 62:18
  63:21
**room** 12:6 31:3,9
  45:14
**ROSENBERG** 3:10
**roughly** 42:8
**Rudnick** 2:13 5:17
**run** 20:5,11,15

_____ **S** _____

**S** 2:2 3:2 4:2
**sale** 6:5,8 7:4,22
  8:10,14,16,22
  10:4,10,13 13:5
  13:14 16:6 18:23
  37:9,16,16 38:9
  39:25 41:19,22,23
  45:6,17,22 49:6
  64:21
**satisfy** 33:4
**saying** 35:7,8,12,16
  54:23 56:7
**says** 24:19 53:6
**schedule** 10:16 19:3
  20:18 22:10 23:20
  24:2,9,12,17 25:7
  26:8,10,17 33:25
  34:4,6,7 37:22,23
  37:25 43:5,7,8,12
  44:10 47:6 49:9
**scheduled** 22:9
**schedules** 8:2,12,18
  18:25
**score** 64:18
**Sean** 1:16 3:19 9:5
**second** 13:20 20:19
  27:2 45:16 47:16
  52:24 53:18 59:8
  59:12
**section** 13:4 27:21
  29:4 32:22 33:23
  37:5 41:19 43:13
  45:6,8,17,20,23
  47:12 49:2,12
  50:14 51:14 52:21
  53:13 55:6 59:2
  59:13,16 61:5,24
  62:8,15,15,17
**secured** 11:14 12:5
  18:17
**see** 20:24 21:8
  42:16 50:8
**seeing** 37:3
**seek** 38:18 65:4,8
**seeking** 5:21 40:19
**seen** 21:3
**SELIG** 3:9

**seller** 24:18,19 25:3
  50:16
**Senior** 8:7 17:3
**sent** 19:14
**sentence** 25:5 27:23
  28:11
**served** 39:12
**service** 39:20
**set** 58:24 59:11
  66:19
**seven** 34:6
**shared** 45:14
**shareholder** 9:19
**Shaw** 1:23 66:7,23
**sheet** 9:2
**shifts** 30:6
**short** 29:18 30:8,12
  44:14 54:6,14
  64:4,6
**Shortly** 12:8
**show** 53:3
**SHULMAN** 3:7
  35:6 36:24 50:5
  55:20 65:16
**significant** 42:17
**sign-in** 8:25
**similar** 10:11
**simply** 39:12
**sitting** 65:16
**six** 10:16 34:4
**Skadden** 1:10 2:4
  5:5,6,16
**Slate** 1:10 2:4
**software** 20:6,7
  21:17,18,23
**sold** 21:19
**somebody** 21:7
**somewhat** 42:17
**sorry** 24:15,17
**sort** 33:12
**source** 20:7
**Southern** 1:3 5:11
**speak** 16:11,13
  17:14 43:2 58:12
**speaking** 17:8
**specific** 14:19 47:22
  55:3
**specifically** 24:18
  27:11
**specificity** 21:9
  23:17,23 25:2
**specify** 54:23
**Square** 1:10 3:5
**Sr** 4:8
**ss** 66:4
**stage** 41:12
**stalking** 6:2

**standard** 20:5
**standing** 52:7
**start** 54:23
**started** 49:3,4,4
**state** 16:16,25 66:3
  66:8
**stated** 41:2 52:12
**statement** 22:24
  64:9
**statements** 12:13
  22:20
**States** 1:2 5:10
**stay** 13:12,18
**STEPHEN** 2:11
**Steve** 1:16 3:21
  5:13
**stop** 36:13
**Strauss** 4:10
**subject** 6:9 13:9
  18:5 37:15,16
  64:19 65:7,9
**submits** 13:7
**submitted** 7:21
  11:21 23:9 24:4
  61:25
**subsection** 24:6
  28:23
**subsequent** 13:7,11
  13:17,24 14:3
  25:23 29:9,10
  30:11,20 31:25
  32:6,12,15 36:21
  42:23 43:15,25
  51:6,22 54:3 55:2
  55:12 56:3,25
  57:13 58:7 60:16
  62:10,13,14
**substantially** 6:6
  10:7,11 51:17
**sub-elements** 23:22
**successful** 15:17,22
**suggested** 47:5
**summarize** 58:18
**summarizes** 59:22
  59:24
**Sun** 19:19,22 20:3,7
  20:20,21 21:24
  22:3,6,13 23:2
**Sun's** 21:21
**superior** 32:15
**suppose** 27:4
**sure** 14:11 20:14
  25:17
**System** 23:2
**Systems** 9:17 19:19

_____ **T** _____

**T** 66:2,2
**table** 5:13 14:23
  35:11,14 36:21
  44:3 46:23
**take** 12:16 21:10
  29:2 30:8,13,25
  32:2 38:6 44:13
  44:14 46:25 48:4
  48:9,12 49:20
  54:5 56:19 57:6
  57:23 60:9,20
  61:5,14 62:3 64:3
**taken** 54:11 66:11
**talk** 35:14 38:21
  40:22
**talked** 37:2
**talking** 24:16
**technical** 15:25
**technically** 53:14
**telephonically** 1:17
  3:20 9:7
**tell** 52:19
**ten** 56:11
**term** 28:18 29:25
  33:9,13,14 36:4
  40:11 41:8 42:15
**terms** 10:9,12 18:11
  22:23 23:12 26:14
  26:21 27:25 28:13
  29:12 32:5,8,14
  39:20,23 41:3
  43:19 45:22 46:5
  46:12 49:5 52:13
  52:13 53:11 54:24
  56:8 64:15,23
  65:10
**Thank** 17:10 18:7
  19:15 25:11,20
  31:12,22 32:19
  40:6 42:13 43:10
  43:18 44:17 49:17
  49:22 50:23 51:23
  57:5,8,14 60:6
  62:5 65:16,20,23
**theirs** 52:16
**thereto** 8:18
**therewith** 8:2,13
**thing** 31:22
**things** 5:22 36:25
**think** 5:4 27:17
  30:2,3,4,7,24 31:7
  32:20 33:20,22,24
  34:9,19,24 35:7,8
  35:12 37:13 40:25
  41:10,12 47:23
  48:4,11 49:6,13
  52:3 54:20 56:6

59:22,24 64:3
**third** 3:15 20:21
**third-party** 34:2
37:4
**thousand** 59:6 61:9
**three** 20:10
**throw** 27:5
**Thursday** 1:12
**TIM** 3:8
**time** 6:20 9:10
11:22 12:16,16
14:18 15:9,13
17:11 19:25 20:5
20:11,13,15 22:7
25:23 29:21 30:22
35:15 42:2 44:19
46:23 48:15 55:23
58:24 59:11,17
60:4,21 61:17
65:24
**timely** 38:10
**Times** 1:10 3:5
**title** 16:17 53:10
**today** 5:24 9:7
11:19 12:6,16
14:9,20 15:11
18:10,17 22:11
54:12 65:17
**today's** 7:7 11:17
11:25 13:25 14:24
16:13
**told** 20:9 36:8
**tonight** 65:8
**total** 61:12
**transaction** 64:21
65:5
**transcribed** 6:25
**transcript** 7:2
**transfer** 53:10
**true** 66:10
**try** 41:9 55:2
**turn** 44:4 54:4
55:14
**two** 12:25 13:13
31:11 45:2,4 46:3
46:8 58:20 59:21

**U**

**ultimately** 6:5
43:16 47:7
**Um** 29:23
**unambiguous** 18:13
**unchanged** 52:18
**understand** 33:8,24
34:10,15
**understanding**
14:14 32:4 34:3

**Understood** 21:13
**unit** 59:4 64:15
**United** 1:2 5:10
**units** 58:23 59:2,6
61:6,9,10 63:8
**unmarked** 8:12
**unsecured** 3:14
9:20
**USA** 6:3
**use** 12:6
**uses** 21:17

**V**

**value** 13:23 28:18
40:11,12,20,22,24
41:4,11 42:16,21
43:16 47:8,10,17
47:21,22 53:22
58:22 59:4,7,13
59:19 61:8,11,12
63:13
**vellum** 7:12
**Verderber** 11:7
**version** 20:11,15,16
**versions** 19:3
**Vice** 8:7
**Vice-President** 17:3
**view** 38:8 42:14
43:23
**views** 22:25
**VP** 4:8

**W**

**Wacker** 2:7
**want** 13:2 35:13,22
36:12 38:6 50:21
58:8 60:18
**wanted** 16:13 41:9
**warranty** 50:17
**WATKINS** 3:13
**way** 13:25 40:13
66:16
**Website** 20:8 21:25
**WEINER** 2:17
**welcome** 5:3 18:14
**weren't** 39:11
**West** 2:7
**WHEREOF** 66:18
**willing** 22:3 35:2
36:4 37:14 41:14
**Wireless** 2:18 4:4
6:3,4,6 7:21,24
8:17 10:12 11:12
11:24 12:10 13:6
13:7,9,20,24 14:2
14:5,22 17:5,8
18:20,24 23:13,16

23:25 25:22 26:21
29:10,17 30:18
33:10,15 34:5,22
39:18 44:4,24
45:3 46:2 47:12
48:19 51:19 52:3
56:9,16 57:3,19
58:20 60:2,4,24
62:18 63:21 64:9
65:2,20
**withdraw** 22:4,14
**withdrawn** 21:22
**WITNESS** 66:18
**wondering** 47:17
**wording** 24:4,8
25:2 52:23,25
53:2,5
**work** 53:13
**working** 53:4
**writing** 20:25

**X**

**X** 1:23 66:7,23

**Y**

**year** 59:9,10
**York** 1:3,11,11 2:20
2:20 3:6,6,16,16
5:11 66:3,5,9

**$**

$10,000,000 57:13
$10.5 58:7
$10.7 60:5
$100,000 26:5,14
$11 60:16
$11.2 61:2
$11.4 63:3
$11.7 60:25 61:13
$114,000 24:21
$195,000 13:22
$200,000 63:4
$250 59:4
$250,000 59:7 61:9
$500,000 10:22
61:10
$7,405,000 14:6
$7.5 10:5
$7.6 14:3 26:4 32:3
$7.7 32:6,12 41:15
42:23 43:11
$7.8 45:4 46:10
$7.9 51:3
$8,000,000 53:24
$8.5 56:3
$9.1 56:25

**0**

**05-44481(RDD)** 1:4

**1**

**1** 7:17
**1.4.2** 20:11,15
**1.5** 20:11,15
**10** 44:15
**10-Q** 8:19
**10.2** 57:20,21
**10:30** 1:11
**10022** 3:16
**10036** 2:20 3:6
**11** 5:9 9:22 51:5
61:12
**11.2** 61:12
**11.4** 63:10 64:14
**11.9** 63:15
**1114** 2:19
**13** 41:22 42:4
**16A** 26:9
**16B** 24:18
**17** 41:21 42:3
**185783** 1:24
**19th** 6:14

**2**

**2** 7:20 18:22 20:4
50:11
**2,000** 61:6,10 63:7
64:14
**2.1.1** 22:10
**2006** 1:12 5:20 6:9
6:14 7:23 8:7,11
8:19,23 9:23 11:6
13:15 66:12,19
**22nd** 6:16 7:19
**28th** 8:7,11
**29th** 9:23

**3**

**3** 8:3 10:3 19:10
**3.1.4** 27:21 29:4
**3:22** 44:19
**30th** 11:6 19:22
**31st** 8:19 13:15
**333** 2:7

**4**

**4** 1:10 8:21 42:6,7
**4.3** 45:6,8,9 47:18
49:12 51:15,17,18
52:21 53:13 55:6
59:2,13 61:5,25
62:8,15,17
**4040** 6:12
**4328** 6:17

**4433** 19:24

**5**

**5** 8:25
**5.0** 20:6
**5.1** 24:17,17 26:8
**5.1A** 24:14
**5.1.16.A** 10:16
26:17
**5.1.16.B** 23:20
**5.1.6.B** 23:20
**5.16.A** 24:12

**6**

**6** 1:12 45:11,13
47:19 66:12
**6th** 5:19 6:9 7:23
8:22
**6,228** 58:25
**6.2** 38:7
**6.2.5** 32:23 33:23
43:13,13 44:10
45:17 47:12 49:2
49:9
**6:11** 48:15
**6:30** 55:23
**60606** 2:8

**7**

**7** 3:5 49:14,18 50:2
50:20 52:22 66:19
**7.7** 32:12
**7.8** 44:7 47:24

**8**

**8** 42:10,12 53:15,17
53:19 55:7,8
**8.1** 55:9
**8.2** 55:15
**8.8** 56:17
**8:00** 61:17
**8:30** 65:24
**817** 1:24
**885** 3:15

**9**

**9** 61:23 62:17 63:2
63:7
**9.1.2** 13:4
**9.5** 57:4
**94303** 2:14

Esquire Deposition Services
1-800-944-9454