1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481AM

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DELPHI CORPORATION, et al.,

9

10            Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                June 19, 2006

19                10:10 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

2

1

2    HEARING re Motion of the Offshore Group Pursuant to Bankruptcy

3    Code Sections 362(d)(1) and 553 for Order Lifting the Automatic

4    Stay to Permit the Offshore Group to Exercise Right of Setoff

5

6    HEARING re Motion of Dane Systems, LLC for Adequate Protection

7

8    HEARING re Motion of Ericka S. Parker, Chapter 7 Trustee,

9    Seeking Relief from the Automatic Stay to Allow Her to Continue

10   Asserting Counterclaims in Pending Litigation Being Prosecuted

11   by the Debtor

12

13   HEARING re Motion for an Order Authorizing the Examination of,

14   and Directing, Barclays Bank, PNC, to Produce Documents

15   Pursuant to Rule 2004 of the Federal Rules of Bankruptcy

16   Procedure

17

18   HEARING re Specmo Enterprises Motion for Relief from Stay to

19   Effect Setoff

20

21   HEARING re Motion Seeking Approval of Retention of Jeffries and

22   Companies Investment Bankers to the Creditors' Committee Under

23   Sections 328 and 1103

24

25

                                                          3

1

2    HEARING re Motion to Approve Stipulation and Order Following

3    Pension Benefit Guaranty Corporation to File Consolidated

4    Claims Under One Case Number

5

6    HEARING re Motion for Order Under 11 U.S.C. Section 1121(d)

7    Extending Debtors' Exclusive Periods Within Which to File and

8    Solicit Acceptances of Reorganization Plan

9

10    HEARING re Retention Application of Fried, Frank, Harris,

11    Shriver & Jacobson LLP

12

13    HEARING re Motion of H.E. Services Company and Robert Backie,

14    Majority Shareholder for Relief from the Automatic Stay Under

15    Section 362 of the Bankruptcy Code

16

17    HEARING re Motion of Cindy Palmer, Personal Representative of

18    the Estate of Michael Palmer, Deceased, for Relief from the

19    Automatic Stay Under Section 362 of the Bankruptcy Code

20

21    HEARING re Motion for Relief from Automatic Stay Filed by

22    Petitioners, Mary P. O'Neill and Liam P. O'Neill

23

24

25

4

1

2    HEARING re Motion for Order Under 11 U.S.C. Section 363(b) and

3    Federal Rules of Bankruptcy Procedures 2002 and 6004

4    Authorizing and Approving Debtors' Entry into Transfer

5    Agreement with Johnson Controls, Inc.

6

7    HEARING re Motion of Automotive Technologies International,

8    Inc. for Relief from Automatic Stay to Proceed with Appeal of

9    Patent Litigation

10

11    HEARING re Motion for Order Under 11 U.S.C. Sections 363, 502,

12    and 503 and Federal Rules of Bankruptcy Procedures 9019(b)

13    Authorizing Debtors to Compromise or Settle Certain Classes of

14    Controversy and Allow Claims Without Further Court Approval

15

16    HEARING re Motion for Order Under 11 U.S.C. Section 362 and

17    Federal Rules of Bankruptcy Procedures 7016 and 9019 Approving

18    Procedures for Modifying the Automatic Stay to Allow for

19    Liquidating and Settling and/or Mediating Certain Pre-petition

20    Litigation Claims

21

22

23

24

25

                                                          5

1

2    HEARING re Motion of Orders Under 11 U.S.C. Sections 363 and

3    365 and Federal Rules of Bankruptcy Procedures 2002, 6004,

4    6006, and 9014 Approving Bidding Procedures, Certain Bid

5    Protections, Form and Manner of Sale Notices and Sale Hearing

6    Date and Authorizing and Approving Sale of Certain of the

7    Debtors' Assets Comprising Claims and Encumbrances, Assumption

8    and Assignment of Certain Executory Contracts and Unexpired

9    Lease and Assumption of Certain Liabilities

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

 1

 2    A P P E A R A N C E S :

 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

 4         Attorneys for Debtor and

 5         Debtors-in-Possession

 6         333 West Wacker Drive

 7         Chicago, IL 60606

 8

 9    BY:   JOHN WM. BUTLER, JR., ESQ.

10         JOHN K. LYONS, ESQ.

11         RON E. MEISLER, ESQ.

12

13    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

14         Attorneys for Debtor and

15         Debtors-in-Possession

16         Four Times Square

17         New York, NY 10036

18

19    BY:   KAYALYN A. MARAFIOTI, ESQ.

20         THOMAS J. MATZ, ESQ.

21         ALBERT L. HOGAN, ESQ.

22

23

24

25

7

1

2    TOGUT, SEGAL & SEGAL, LLP

3        Attorneys for Debtors

4        One Penn Plaza

5        New York, NY 10118

6

7    BY:   NEIL BERGER, ESQ.

8

9    KRONISH, LIEB WEINER & HELLMAN, LLP

10        Attorneys for Debtors

11        1114 Avenue of the Americas

12        New York, NY 10036

13

14    BY:   ADAM C. ROGOFF, ESQ.

15

16    COOLEY GODWARD, LLP

17        101 California Street

18        5th Floor

19        San Francisco, CA 94111

20

21    BY:   GREGG S. KLEINER, ESQ.

22

23

24

25

8

```
 1

 2   LATHAM & WATKINS, LLP

 3        Attorneys for the Official Committee of

 4        Unsecured Creditors

 5        885 Third Avenue

 6        New York, NY 10022

 7

 8   BY:  MARK A. BROUDE, ESQ.

 9        MICHAEL D. WARNER, ESQ.

10        ROBERT J. ROSENBERG, ESQ.

11        HENRY P. BAER, JR., ESQ.

12

13   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

14        Attorneys for the Official Committee of

15        Equity Holders

16        One New York Plaza

17        New York, NY 10004

18

19   BY:  BONNIE STEINGART, ESQ.

20

21

22

23

24

25
```

                                                        9

```
 1

 2   WHITE & CASE, LLP

 3        Attorneys for Ad Hoc Equity Committee

 4        200 South Biscayne Boulevard

 5        Suite 4900
```

```
 6          Miami, FL 33131

 7

 8   BY:   FRANK L. EATON, ESQ.

 9          GLENN KURTZ, ESQ.

10

11   MENAKER & HERMANN, LLP

12          Attorneys for Mary P. and Liam P. O'Neill

13          10 East 40th Street

14          New York, NY 10016

15

16   BY:   RICHARD MENAKER, ESQ.

17

18   REED SMITH, LLP

19          Attorneys for Riverside Claims, LLC

20          599 Lexington Avenue

21          29th Floor

22          New York, NY 10022

23

24   BY:   ELIZABETH ABDELMASIEH, ESQ.

25
```

10

```
 1

 2   KIRKPATRICK & LOCKHART NICHOLSON GRAHAM, LLP

 3          Attorneys for Wilmington Trust Company

 4          599 Lexington Avenue

 5          New York, NY 10022

 6

 7   BY:   EDWARD M. FOX, ESQ.

 8

 9   HALPERIN, BATTAGLIA RAICHT, LLP

10          Attorneys for ATI, Inc.
```

```
11        555 Madison Avenue

12        9th Floor

13        New York, NY 10022

14

15   BY:   CHRISTOPHER J. BATTAGLIA, ESQ.

16        ALAN D. HALPERIN, ESQ.

17

18   DUANE MORRIS, LLP

19        Attorneys for Ace American Insurance Co. and

20        Pacific Employers' Insurance Co.

21        30 South 17th Street

22        Philadelphia, PA 19103

23

24   BY:   LAWRENCE J. KOTLER, ESQ.

25
```

                                                            11

```
 1

 2   SIMPSON THACHER & BARTLETT, LLP

 3        Attorneys for JP Morgan Chase Bank, N.A.

 4        425 Lexington Avenue

 5        New York, NY 10017

 6

 7   BY:   ROBERT TRUST, ESQ.

 8

 9   ALLEN & OVERY, LLP

10        Attorneys for Barclays Bank, PNC

11        1221 Avenue of the Americas

12        New York, NY 10020

13

14   BY:   ANNA TANISCHIO, ESQ.

15
```

```
16   MASTROMARCO & JAHN, P.C.

17        Attorneys for H.E. Services Co. and Robert Backie

18        and Cindy Palmer, Personal Representative

19        of the Michael Palmer Estate

20        1024 North Michigan

21        Saginaw, MI 48805

22

23   BY:  VICTOR J. MASTROMARCO, JR., ESQ.

24

25
```

                                                        12

```
 1

 2   OFFICE OF THE UNITED STATES TRUSTEE

 3        33 Whitehall Street

 4        21st Floor

 5        New York, NY 10004

 6

 7   BY:  ALICIA M. LEONHARD, ESQ.

 8        TRACY HOPE DAVIS, ESQ.

 9

10

11

12

13

14

15

16

17

18

19

20
```

21

22

23

24

25


13


1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  All right.  Delphi

3   Corporation.

4              MR. BUTLER:  Your Honor, good morning.  Jack Butler

5   from Skadden, Arps, Slate, Meagher & Flom, LLP here with my

6   colleagues, Kayalyn Marafioti and Al Hogan for our June 2006

7   omnibus hearing.

8              Your Honor, we filed the agenda for this hearing at

9   Docket No. 4228 and then amended at Docket No. 4230.  With Your

10  Honor's permission, we'd like to use the proposed amended

11  agenda for the eighth omnibus hearing with one matter being

12  taken  out  of  order,  and  that  is  matter  number  20,  the

13  MobileAria Sale Motion.  We were proposed to take that at the

14  beginning of the contested hearings and that has to do with

15  making some travel accommodations for the purchaser who is

16  represented in court today and who have principals here in

17  court today and have asked us if we could take that at the

18  beginning of the contested matters.  The debtors are prepared

19  to do that if it's acceptable to the Court.

20             THE COURT:  Okay.  That's fine.

21             MR. BUTLER:  Your Honor, one other administrative

22  matter, scheduling matter, I wanted to bring to the Court's

23  attention at the beginning of the hearing.  It was announced

24  this morning that the debtors had been able to conclude their

25  framework discussions and enter into a definitive agreement

14

1    with the IUE/CWA on the terms of a special attrition program.

2    That occurred over Father's Day weekend and follows a further

3    agreement on a supplemental agreement for additional attrition

4    options for the United Auto Workers, the UAW.  Both of those --

5    the framework discussions with the USW are continuing.  Those

6    discussions were suspended for reasons outside of the control

7    of both the USW and the debtors and are scheduled to resume

8    this week.  There were some personal matters relating to one of

9    the union officials that we needed to accommodate.

10          THE COURT:  Okay.

11          MR. BUTLER:  Those will begin this week.  Your Honor,

12    we intend to file a motion by the end of the day today that

13    will be a motion seeking approval of the attrition programs for

14    the UAW and the IUE/CWA unions as we are quite anxious to

15    proceed with these attrition motions over the sort of 60 day

16    recess of the 1113/1114 matters and we would ask Your Honor for

17    the Court's permission to file the motion and issue a notice to

18    have it heard on ten days' notice at the June 29th.  Your Honor

19    may recall that we're already scheduled to have a chambers

20    conference, the first of three chambers conferences under the

21    1113/1114 matters, dealing with the status and the progress

22    made in those cases.  So, all -- I won't say all, most of the

23    relevant parties ought to be in this courtroom anyways for the

24    chambers conference.  And I don't know whether the Court has

25    availability on that date at this point, but I was asked to

15

1    make that request for the debtors.  It's possible that would be

2    the only matter we would bring on.  I just want to make -- I

3    know Your Honor may not be prepared to respond to it at this

4    point but I wanted to raise that issue.

5          THE COURT:  Well, my clerk is going to get the

6    calendar but has this discussed with the creditors' committee

7    and the equities committee?

8          MR. BUTLER:  Yes.  I've advised the creditors'

9    committee and the equity committee that we would be making this

10   request.

11         THE COURT:  Okay.

12         MR. BROUDE:  Your Honor, Mr. Butler informed us about

13   it right before this hearing today.  Haven't had a chance to

14   talk yet.  We don't expect there will be a problem but, as I

15   said, we were just informed today.

16         THE COURT:  All right.  As I recall, the issues

17   primarily with regard to the earlier attrition program dealt

18   with how the funder of that program was dealt with under the

19   order and as long as those issues are adequately flushed out in

20   the motion, I think that ten days is probably adequate notice.

21         MR. BUTLER:  Thank you, Your Honor.  We will -- we

22   intend to file, when we file the motion, a motion seeking an

23   expedited hearing in a separate order for that matter and we'll

24   submit those to the Court as well.

25         THE COURT:  Okay.

16

1          MR. BUTLER:  Thank you, Your Honor.  Your Honor, is

2    it -- I'd like to proceed with the agenda at this point.  If

3    you want to wait just a minute or --

4          THE COURT:  Well, let me just check on the last

5    matter.  Yeah, the 29th would be fine.  I have time free that

6    day.

7          MR. BUTLER:  Thank you very much.

8          THE COURT:  Okay.

9          MR. BUTLER:  Your Honor, the first three matters on

10    the agenda are being handled by the Togut firm, Mr. Berger.

11          MR. BERGER:  Good morning, Judge.  Neil Berger,

12    Togut, Segal & Segal for the debtors.  We have the first three

13    matters on the calendar.  The first is the Deutsche Dagan Order

14    to Show Cause.  This is the last of the orders to show cause

15    Your Honor entered on account of post-petition payments made on

16    account of pre-petition obligations.  I think it's safe to say

17    that this matter is nearly settled.  We hope to be submitting

18    an order to Your Honor in the next week or two and that matter

19    will be done with.

20          THE COURT:  Okay.

21          MR. BERGER:  The next is the Offshore Group motion to

22    modify the automatic stay.  This is the Mexican tax law, a

23    matter, Your Honor -- they produced surprisingly a hefty amount

24    of documents for the amount in controversy.  Our client, our

25    business people have looked through that, we've analyzed it and

17

1    we've sent off a proposal to Offshore.  They asked for about a

2    week or ten days to look at it.  Our goal is to resolve this

3    one as well.  We think it's susceptible to a settlement and not

4    a contested matter and we agreed to adjourn it until the July

5    hearing.

6          THE COURT:  Okay.

7          MR. BERGER:  The next is number three, the BorgWarner

8    motion, Your Honor.  This is the motion by BorgWarner Turbo

9    Systems for relief from the automatic stay to commence an

10    action in the Michigan State courts to liquidate a pre-petition

11    warranty claim.  We made clear that we felt the relief was

12    inappropriate.  The lawyers are for the time being finished

13    speaking.  BorgWarner has assembled a new business team and

14    Delphi hopes to meet with them either this week or early next

15    week and see if we can't resolve on a business basis.

16            THE COURT:  Okay.

17            MR. BUTLER:  Your Honor, matter number four on the

18    agenda is the Dane Systems adequate protection motion at Docket

19    No. 3301.  This involves adequate assurance involving a porta-

20    tooling lane.  We've been involved in reviewing that security

21    interest and discussing an approach with Dane Systems.  If the

22    company determines that the tooling lane is in fact valid, it

23    will be dealt with under one of the prior orders of the Court

24    in any event.  As a result, we're asking the Court to put this

25    off to the July 19th hearing.


                                                            18


1             THE COURT:  All right.

2             MR. BUTLER:  Matter number five, Your Honor, is the

3     Ericka Parker Lift Stay Motion at Docket No. 3705.  This

4     involves the Chapter 7 trustee's desire to have the stay lifted

5     in order to counterclaim to litigation that we have commenced

6     in their Chapter 7 case.  And also, in addition to file motions

7     for summary judgment and potentially to execute against the

8     debtors' estate.  We think the motion for lift-stay, at least a

9     portion of it, would be appropriate seeing that we commenced

10    the litigation.  We think the relief as requested is overbroad.

11    We're trying to sort out those issues and we engaged the

12    trustee on those matters.  The conversations have expanded to

13    include a potential resolution of the entire controversy.  As a

14    result, we're asking the Court to continue this matter to the

15    July 19th omnibus hearing.

16            THE COURT:  All right.

17          MR. BUTLER:  Number six is the Rule 2004 motion for

18    Barclays Bank which is being handled by Mr. Berger.

19          MR. BERGER:  Judge, Neil Berger, Togut, Segal again.

20    Your Honor, we made a motion for an entry of a 2004 order of

21    Barclays Bank in connection with a nine million dollar claim

22    the debtors have in connection with a master swap agreement.

23    We served the Sidley Austin law firm and Barclays determined to

24    retain Allen and Overy, who's represented here today, to

25    respond to this matter.  They weren't retained until pretty


                                                19


1     late in the game.  They asked that this matter be adjourned

2     till July.  The debtors initially opposed that request and late

3     on Friday we were able to negotiate the form of an interim

4     order that's in a form that's acceptable to the committee and

5     to Barclays so that we can at least start getting some of the

6     information to understand why Barclays hasn't paid the claim

7     that we're asserting.

8           We asked that it be carried to the July hearing

9     because all the documents that were contained on our original

10    scheduled production weren't agreed to.  We didn't have quite

11    enough time.  We're hopeful that we'll be able to resolve those

12    before we get to the July hearing but we wanted it on the omni

13    hearing in case we had to come back to Your Honor.

14          So, we have a form of an interim order that I can

15    turn into chambers after the hearing.

16          THE COURT:  Okay.  And the interim order is agreed?

17          MR. BERGER:  Yes, it is and if I could ask counsel to

18    approach and confirm.

19          MS. TANISCHIO:  And on behalf of Barclays, we do

20    agree with the proposed interim form and order.

21          THE COURT:  All right.  So just submit that and it

22    will get signed.

23              MR. BERGER:  We'll do that.  Thank you, Judge.

24              MR.  BUTLER:    Your  Honor,  matter  number  seven,

25    uncontested, agreed or settled matters, matter number seven,


                                              20


1     the Specmo Enterprises matter is also Mr. Berger's.

2              MR. BERGER:  Hello, Judge.  Neil Berger, Togut,

3     Segal.  Your Honor, early in the case, Specmo Enterprises filed

4     a motion seeking relief from the automatic stay to effect a

5     setoff of some 367,000 dollars.  The motion did not have

6     attached to it any supporting documentation.  Shortly after the

7     motion was filed, counsel for Specmo became seriously ill and

8     was away from his office until just recently.  He did come

9     back, we got information from him.  Our client, the debtors,

10    were satisfied in the amount, maybe a dollar or two.  They were

11    satisfied with mutuality as well.  As per the protocol we've

12    developed in the setoff area of the case, the committee was

13    given an opportunity to review the proposed resolution of the

14    setoff request.  They, too, were satisfied with the amount and

15    mutuality.  We've entered into a form of a stipulation to

16    effect the setoff.  It provides for the setoff of the 367,430

17    dollars.  Specmo has given an opportunity to file a pre-

18    petition unsecured claim.  The stipulation does not fix the

19    claim.  They need to file at the earlier 30 days from today or

20    the bar date.  The committee and other parties in interest and

21    the debtors reserve the rights to examine that claim.

22              The form of the stipulation has been agreed to by the

23    committee, as well.  I have that on a disk and I'll submit that

24    to chambers, as well.

25              THE COURT:  Okay, that's fine.

21

1          MR. BERGER:  Thank you, Judge.

2          MR. BUTLER:  Your Honor, number eight on the agenda

3    is the Jeffries and Company final hearing and I think Mr.

4    Broude's handling that matter.

5          MR. BROUDE:  Good morning, Your Honor.  Mark Broude

6    of Latham & Watkins, counsel for the official committee of

7    unsecured creditors.  Back in February, we filed a motion

8    seeking  approval  of  retention  of  Jeffries  and  Companies

9    investment bankers to the creditors' committee under Sections

10   328 and 1103.  This Court entered an interim order in April and

11   in accordance with the terms of that order, we served notice of

12   this hearing on all known creditors of the debtors.  In

13   addition, last week we sent to both counsel for the debtors and

14   to the U.S. trustee the form of final order blackline so it

15   shows changes against the interim.  We've received no comments

16   to the order and no objections.  So, if Your Honor likes, I

17   have the final order that I can hand up.

18         THE COURT:  That's fine.  You can hand that up in

19   light of there being no objections and obviously the wide

20   notice because of the 328(a) nature of the retention.  It was

21   warranted but I'll approve it.

22         MR. BROUDE:  Would Your Honor like a copy of the

23   blackline as well?

24         THE COURT:  Yes.

25         MR. BUTLER:  Your Honor, the next matter on the

22

1    agenda is matter number nine.  This is the lease rejection

2    notice  at  Docket  No.  3222  involving  Universal  Tool  and

3    Engineering Company who had filed a -- we filed a notice of

4    rejection at Docket No. 3462 and they had filed an objection at

5    Docket No. 4158 which would bring us to Court.

6         Your Honor may recall, under the procedures that were

7    approved for the unexpired leases and the abandonment of

8    personal property, we go through notice procedure and only if

9    the lessor has issue, or some other parties, do they end up

10   back in front of Your Honor.

11        We're pleased to tell the Court that we have resolved

12   this matter with respect to property located at 7601 East 88th

13   Place in Indianapolis, Indiana.  Pursuant to the proposed

14   order, the lease will be deemed rejected as of April 30th, 2006

15   and the lessor reserves all of its rights relating to that

16   matter provided that they cannot assert and the future of the

17   lease has not -- has not been or could not be -- have been

18   rejected as provided for in the order.

19        So, we resolved the notice issue which is the

20   rejection and we'll deal with other claims they may assert as a

21   result of that subsequent one.

22        THE COURT:  Okay.  I have no problem with any of that

23   but let me just ask you.  Under the bar date order, is it clear

24   when they have to file their rejection claim?  Or, do we need

25   to put that into this order?

23

1         MR. BUTLER:  No, under the bar date order, they have

2    till the later of 30 -- the bar date for 30 days after the

3    entry of this order.

4         THE COURT:  Okay.  And their reservation -- they

5    understand their reservation of rights doesn't waive the bar --

6    doesn't give them freedom from the bar date?  They still have

7    to file their proof of claim?

8         MR. BUTLER:  I believe -- I can't go to state of

9    mind, Your Honor.  I don't know if the UTS counsel is here, but

10   we'll certainly advise them of what Your Honor is -- and that's

11   certainly the debtors' position.

12          THE COURT:  All right.  All right.  I read paragraph

13   2 pretty carefully and I think it doesn't relieve them of the

14   bar date but it doesn't state a bar date so I just wanted to

15   make sure that the existing order covers them and what you said

16   does remind me that it does.  So --

17          MR.  BUTLER:    Your  Honor,  would  you  be  more

18   comfortable if we added a third -- another paragraph to just

19   reaffirm that?

20          THE COURT:  That's probably a good idea.

21          MR. BUTLER:  Okay.  We'll do that and submit a

22   revised order.

23          THE COURT:  Okay.  Your Honor, number 10 on the

24   agenda is the Pension Benefit Guaranty Corporation motion to

25   file consolidated claims filed at 3880.  The agenda says this


                                    24


1    matter has been resolved.  Actually, PBGC and the debtors had

2    worked this matter out prior to the filing of the motion.

3    There has been no objection filed by any party and this is

4    simple math, Your Honor.  The PBGC has three proofs of claim to

5    file against seven plans and the question is whether they file

6    that in one case or in 42 cases.  So, do they file 21 claims or

7    21 times 42 claims, it states.  And the order provides that

8    they can file one time as the parent company and it will be

9    deemed filed in all of the affiliate debtor cases.  We have no

10   objection, Your Honor, and I don't know if there's someone here

11   from the government who wants to speak.  They are represented

12   by counsel here.  I think I fairly stated the relief requested

13   and the debtors support it.

14            THE COURT:  Okay.  I'll approve this motion.

15            MR. BUTLER:  Thank you, Your Honor.

16            THE  COURT:    And  so,  I'll  just  so  order  the

17    stipulation?

18            MR. BUTLER:  Yes, Your Honor.  Thank you.

19            THE COURT:  Okay.

20            MR. BUTLER:  Your Honor, the next matter on the

21    agenda, matter number 11, is the 1121(d) exclusivity second

22    extension order motion.  This is filed at Docket No. 4035.

23    With Your Honor's approval, this would move the period -- the

24    exclusivity periods to file plan from August 5th, 2006 to

25    February 1, 2007 and the solicitation period from October 4th,


                                        25


1    2006 to April 2nd, 2007.  No party has filed an objection to

2    the relief requested.  Your Honor, we concluded when reviewing

3    this matter with the company's board of directors to seek an

4    extension in the very same timeframe we sought during the first

5    motion and sort of take this in phases.  The debtors, Your

6    Honor will recall, when we first appeared here back in October

7    of last year, told Your Honor we expected to -- if all goes

8    according to the debtors' transformation agenda, we hope to

9    emerge before the -- during the first half of next year.  So,

10    while there may be a third request, we don't expect that to be

11    a lengthy request.  If we can stay on the current timeframe --

12    if facts and circumstances change and there's cause for further

13    or more lengthy extension, we'll come back to the Court

14    accordingly.

15            THE COURT:  Okay.  All right.  And I know this was

16    unopposed as well.  Oh, maybe it isn't.  Is someone standing

17    up?  No.  All right.  In light of that fact, and -- in light

18    and in view of --

```
19          MR. BUTLER:  My colleague -- and he's not going to

20   stand up again, Judge.

21          THE COURT:  In light of that fact, I -- in my review

22   of the motion and my familiarity with the case, I'll approve

23   it.

24          MR. HOGAN:  We'll submit the order to chambers, Your

25   Honor.  Thank you.




                                     26



1          MR. BUTLER:  Your Honor, the next matter on the

2    agenda is the Fried, Frank retention application at Docket No.

3    4039.  It's also unopposed.  I don't know if Ms. Steingart

4    wanted to present it.

5          THE COURT:  Good morning.

6          MS. STEINGART:  Good morning, Your Honor.  Bonnie

7    Steingart from Fried, Frank on behalf of the official committee

8    of equity holders.  We have submitted the order regarding our

9    retention.  It's been reviewed by the U.S. trustee, by the

10   debtor, by the creditors' committee and there have been no

11   objections.  So, we seek to be retained pursuant to 328 and

12   1103 of the Bankruptcy Code.  And I have an order.

13         THE COURT:  Okay.  All right.  In light of there

14   being no objections and my review of the motion, I'll approve

15   it.

16         MS. STEINGART:  Thank you.

17         MR. BUTLER:  Your Honor, the next matter on the

18   agenda would be matter number 20, going out of order as we

19   indicated we would for this one matter.  Matter number 20 is

20   the MobileAria Sale motion at Docket No. 4040.  The only

21   objection  is  a  limited  objection  of  the  official  equity

22   committee at Docket No. 4215.  We filed a reply at Docket No.

23   4246.
```

24          Your Honor, this motion deals with the assets of one

25    of the subsidiary debtors, MobileAria, Inc.  Your Honor may


27


1    recall this is one of the three trailing debtors that filed

2    Chapter 11 a few days after the October 8th filing of the

3    parent and substantially all the other affiliated debtors.

4    This is a proposal to sell substantially all of the assets of

5    MobileAria, which consist essentially of intellectual property

6    and contract rights involving a Verizon contract and some

7    related assets described more thoroughly in the motion to a

8    proposed purchaser, Wireless Matrix, in the amount of six and a

9    half million dollars and other consideration.  The proposed

10   sale is subject to approval by this Court and additional

11   competitive  bidding  pursuant  to  the  proposed  bidding

12   procedures.

13          Your  Honor,  to  facilitate  this  sale,  which  the

14   debtors determined was one of their assets that was not a

15   continuing core asset but was rather a non-core asset, the

16   debtors previously engaged Pagemill Partners, LLC to develop

17   soliciting and assist MobileAria in evaluating a proposed

18   transaction.  And after identifying potential partners and

19   soliciting proposals, MobileAria, in its business judgment,

20   determined that the Wireless Matrix offer was the highest or

21   otherwise best offer to MobileAria providing, in the debtors'

22   view, the most appropriate terms and economic benefit to

23   MobileAria.

24          One  of  the  reasons,  Your  Honor,  the  debtors

25   determined that this asset was non-core was because -- was in


28

1    fact because it wasn't in the debtors' core business plan in

2    terms of product footprint, but in addition, the timing in this

3    was designed because in evaluating cash infusions, MobileAria,

4    which  is  a  technology  company,  requires  additional  cash

5    infusions in the not distant future to deal with their growth

6    and the growth of their business lines and the debtors believed

7    it was appropriate to try and obtain the best value for the

8    assets and allow a purchaser who wants to grow this business to

9    take it forward.

10        I'm not going to go through all of the various

11    aspects of the transaction here today or of all the bidding

12    procedures that we have proposed.  This is -- in the scheme of

13    a company with the size of the assets we have, this is not the

14    largest sale in the world, but it will generate, we believe,

15    the six and a half million dollars worth of proceeds -- that

16    they wanted Your Honor to be aware of.

17        And the only objection that we have is one from the

18    equity committee that basically indicates that while they

19    received  all  the  notices  under  the  order,  they  do  not

20    participate as a mandatory participant in the auction, in

21    getting copies of the bids and participating in the auction

22    process.  We have delegated that.  The only parties that do

23    that under the proposed bidding procedures are the debtors, the

24    creditors' committee and counsel to the DIP and pre-petition

25    lenders, both of whom have a lien in these assets, and,


29


1    therefore, have a direct economic interest.

2        That is the only objection and unless Your Honor

3    wants to hear more from the debtor, I'll turn it over to the

4    equity committee.

5                THE COURT:  Okay.

6                MS. STEINGART:  Good morning, Your Honor.  Bonnie

7    Steingart again.  This objection has been filed in connection

8    with a number of objections that the equity committee has

9    interposed to forms of order.  We believe that as an official

10   committee, we should receive the same kinds of notices that are

11   routinely  provided  to  the  creditors'  committee.    As  we

12   indicated in the filing with the Court, we are mindful that we

13   are to speak on transformational issues.  To the extent that

14   the debtors exit businesses, we think that this is part of

15   transformational issues.  To the extent that we have any

16   interest in either voicing an objection or participating, we

17   understand that we must make a showing to the Court as to the

18   reason why.

19               As a committee, I think our committee members believe

20   that they should be kept informed in the same way that other

21   statutory committees are informed.  So, we've objected to this

22   order as we have other orders that exclude from the routine

23   statutory committee notice provisions noticed to the official

24   committee of equity holders.  We don't believe that it will

25   create extra burden or expense.  With respect to what the


30


1    debtors are already doing, Counsel now has been retained so

2    that we can advise the committee on a consistent basis as to

3    what the scope of its obligations are and what the scope of

4    this Court's authorization of their activity.

5                But at the same time, I think it's important for

6    those committee members to feel that they are being informed

7    and they are being included in a manner that is customary for a

8    statutory committee.  Thank you, Your Honor.

9                MR. BUTLER:  Your Honor, just so it's clear what

10    we're arguing about here, in the proposed form of order -- the

11    proposed form of order provides that we are entitled in

12    connection -- the debtors are entitled, in connection with the

13    bidding procedures, to consult with representatives of any

14    official committee or significant constituent but are not

15    required to, not directed to.  And it provides that the notice

16    of the sale hearing will specifically go to counsel for the

17    equity holders committee.    So, the notice procedure, on

18    paragraph 8(a) of the proposed order -- they are included.

19         What they are not included in is the bidding

20    procedures which would require parties to submit the bids to

21    the equity committee for their review and comment nor does it

22    provide in the auction that they are entitled to attend and

23    participate in the auction.    On page 6 of the bidding

24    procedures, the auction is limited to the seller, the

25    purchaser, representatives of the creditors' committee and its


31


1     secured lender, as well as any qualified bidder.  It does not

2     include the equity committee.  And it did not, in this case,

3     because we believe Your Honor's opinion and order in appointing

4     the equity committee was for a limited purpose.  And it was for

5     transformational issues.  It wasn't for every thing that a

6     statutory committee could possibly do.

7          This is a six and half million dollar sale in a case

8     that has tens of billions of dollars worth of assets and

9     liabilities.  And the debtors did not believe that we should be

10    paying free franc to attend the auction and participate in the

11    auction when the creditors' committee is already involved in

12    that.  And, you know, it ultimately, if the purpose -- if what

13    this is all about is the equity committee having every right

14    and prerogative that the creditors' committee does, then it's a

15    different committee than we thought Your Honor appointed back

16    in March.

17            MS. STEINGART:  Just briefly, Your Honor.  Just

18    because the committee does have the right to attend and to

19    participate, or counsel for the committee does, does not mean

20    it will.  The important issue I think that's before the Court,

21    and I think in a more pressing way with respect to the other

22    forms of order that we have objected to, the issue before the

23    Court is who gets to make that choice?  And I think that given

24    the appointment of the committee, given the fact that Your

25    Honor's order is explicit, that the committee should be given

32

1    an opportunity to receive the notices and to decide whether it

2    will or not participate.  To the extent that the committee

3    makes the wrong choice with respect to that, your opinion and

4    Mr. Butler in a number of conversations has made it abundantly

5    clear  that  all  prerogatives  to  object  to  fees  or  other

6    activities will be exercised to the fullest.

7            So, we're not uncertain about what will occur should

8    the committee conduct itself in a manner that the Court or

9    other parties or the U.S. trustee believes to be inappropriate.

10    However, that does not mean that the choices about what the

11    committee will participate in and how it will participate and

12    how indeed it will justify that participation should belong to

13    counsel other than counsel for the committee.  And I do believe

14    that until we get to a point where those decisions are shown to

15    be made in a manner that is either disruptive or creates

16    additional burdens that the debtor doesn't already have, until

17    we get to that point, I don't think that receiving the

18    customary inclusion that other statutory committees have runs a

19    foul of anything that has been done so far, Your Honor.

20                So, I would ask that we be included in that way and

21    that the committee be able to make its decision about how it

22    will participate with the understanding that the provisions and

23    restrictions are clear to us.  Thank you.

24                THE COURT:  All right.  Well, the order appointing

25    the equity committee, I think, limited its function but the

33

1    issue is whether this type of motion is within that limitation

2    or not.  The order refers to the scope of the appointment being

3    to   form   on   behalf   of   the   shareholders   in   respect   to

4    transformation issues.  At one level, this is a transformation

5    issue because it's part of the debtors' determination to exit

6    various businesses.  On the other hand, it's hard to believe

7    that   a   six   and   a   half   million   dollar   sale   is   truly

8    transformative.

9                But, it seems to me that when the debtor is talking

10    about   selling   an   actual   business,   it's   encompassed   by

11    transformation.  So, I believe the committee should get notice

12    of the bids.  Conceivably if someone threw in a bid for twenty

13    million dollars, they might say well, why aren't we holding on

14    to this asset instead of selling it?

15                I think the debtors should just provide the notices.

16    It's really kind of a pain in the neck for bidders to start

17    sending out five or six packages.  So, if you could just give

18    copies of the bids to Fried, Frank -- obviously, if the bids

19    are all in the range of six and a half, seven million dollars,

20    I wouldn't expect Fried, Frank to be particularly active on the

21    matter, although I would expect them probably to attend the

22    auction.  On the other hand, if there's remarkable interest in

23    the asset, then it probably would lead to the legitimate

24    inquiry as to whether it should go forward to an auction or

25   not.

                                                                34

1           MR. BUTLER:  So, is the Court wanting --

2           THE COURT:  This is not an overall ruling.  This is

3    just really dealing with this motion.

4           MR. BUTLER:  But, with respect to MobileAria, the

5    Court wants Fried, Frank to be able to come and attend the

6    auction?  That's where it's supposed to change the bidding

7    procedures to do that?

8           THE COURT:  To attend the auction and to get notice

9    of the bids.

10          MR. BUTLER:  We will make those changes.

11          THE COURT:  In my view, getting notice of the bids is

12   more important than attending the auction because if the bids

13   are -- if there are no bids, there won't be an auction but if

14   there are bids in the range of six and a half million, then I

15   don't think an additional law firm is going to add much at the

16   auction.  But that's what Ms. Steingart said she -- she knows

17   that.

18          MR. BUTLER:  Your Honor -- and we'll do that.  I just

19   want to make one comment about the statement that Ms. Steingart

20   made.  The debtors don't want their only remedy here to be to

21   object to a fee application six months after the fact.

22          THE COURT:  No, I understand that.  And I don't want

23   it, either, but if, as she said, if the equity committee starts

24   trying to throwing its weight around in areas that aren't

25   appropriate, you can come back to me well before a fee

                                                                35

1    application.

2          MR. BUTLER:  Thank you, Your Honor.

3          MS. STEINGART:  Thank you, Your Honor.

4          THE COURT:  And I just got -- one reason I was a

5    little late -- the debtors' response on the information letter

6    and I wasn't able to wade through it all, so I'll deal with

7    that separately.

8          MR. BUTLER:  Thank you, Your Honor.  Your Honor, with

9    respect to the balance of matter 20, would those changes in the

10   bidding procedures --

11         THE COURT:  Well, I had one other comment on that

12   'cause I got the blackline that dealt with executory contracts.

13   And I think that the notice provision, if there's a different

14   purchaser than the stalking horse, is probably insufficient.

15   It's less than ten days.  It's probably only about four or five

16   at most.  So, I think that the order should provide that there

17   will be ten days notice if someone other than the stalking

18   horse wins the auction for objections to a assumption and

19   assignment other than cure, like adequate assurance or future

20   performance.  And that if there is an objection, the Court will

21   schedule a hearing promptly on that issue.  Other than that,

22   the order looked fine.

23         MR. BUTLER:  And we'll make those revisions, Your

24   Honor, and submit the changes.

25         THE COURT:  Okay.


                                                  36


1          MR. BUTLER:  Your Honor, the next matter up is, going

2    back to the agenda order, is matter number 13.  This is the H.E

3    Services Company lift-stay motion filed at Docket No. 2705 with

4    related pleadings as indicated on the amended agenda.

5          This involves a lift-stay matter to deal with pending

6    actions arising out of a minority supplier relationship.  And I

7    believe Counsel is here to present the motion.

8            MR. MASTROMARCO:  Good morning, Your Honor.  Victor

9    Mastromarco on behalf of the claimant.  This is Docket No. 2705

10   originally filed.  Our lift-stay motion as it relates to a

11   filing, a complaint that was filed on February 16th, 2005

12   before  the  United  States  District  Court  for  the  Eastern

13   District of Michigan, northern division.

14           The claims involve a number of different claims.

15   One, in particular, that I want to emphasize is the civil

16   rights violations pursuant to 19 -- Section 1981.  There are

17   also claims for promissory estoppel and misrepresentation and

18   breach of contract.  Originally, after the complaint was filed

19   in February, Delphi responded -- the debtor responded with a

20   motion to dismiss which resulted in an amended complaint being

21   filed which we have provided to the Court.  When Delphi failed

22   to answer the amended complaint, we applied for a default

23   before the judge and Delphi then later responded with another

24   motion to dismiss.  Those actions were pending.  They had been

25   set for hearing for November 2 at the same time as a scheduling

37

1    conference had been set and as a result, the stay was entered

2    in October so those matters did not go forward.

3            THE COURT:  Was that first motion to dismiss heard?

4    Or did the claimant just amend the complaint?

5            MR. MASTROMARCO:  It was heard and it resulted in an

6    amended complaint being filed.

7            THE COURT:  Okay.

8            MR. MASTROMARCO:  The -- I wanted to indicate that

9    because the complaint is premised in part of 42 USC 1981 which

10   states a discrimination claim on behalf of not only Mr. Backie,

11   who is a minority in his individual capacity, but also on

12    behalf of H.E. Services, which is a minority company, and both

13    those claims the Courts have held in the past in this district

14    that discrimination claims should be handled akin to personal

15    injury claims and thus our subject to Section 157(b)(5).

16           In the case that I'd like to cite to the Court,

17    Erickson v. Erickson, at 330 BR 346, the Court -- and that's a

18    September 15, 2005 decision -- the Court states on page 349,

19    "pursuant to 28 USC 15" -- I'm sorry -- "157(b)(2)(o), a

20    bankruptcy court may not hear and determine a personal injury

21    tort claim."  Citing to the footnote, 157(b)(2)(o) provides in

22    relevant part that a bankruptcy court may hear and determine

23    proceedings affecting the adjustment of the debtor/creditor

24    relationship except personal injury tort claims.  157(b)(5)

25    provides "the district court shall order that the personal

38

1    injury tort and wrongful death claims shall be tried in the

2    district court in which the bankruptcy case is pending or in

3    the district court in the district in which the claim arose as

4    determined by the district court in which the bankruptcy case

5    is pending."

6           Although there are court rulings to the contrary, the

7    Court in Erickson agreed that -- with Judge Weil that "claims

8    alleging that a debtor illegally discriminated an employment on

9    the basis of race, creed, disability or sex are personal injury

10   tort claims."  Citing the Strands v. Ice Cream Liquidation,

11   Inc. case at 281 BR 154 at 161.

12           The Court goes on to indicate --

13           THE COURT:  None of this is briefed in your papers,

14   right?

15           MR. MASTROMARCO:  No, we did not cite these cases,

16   Judge.

17          THE COURT:  Or the issue, generally, right?

18          MR. MASTROMARCO:  Well, you're right.  We'd ask the

19   Court to take judicial notice of Section 157(b)(5).

20          THE COURT:  Okay.

21          MR. MASTROMARCO:  We would indicate that the Erickson

22   case also citing In re New York Medical Group, P.C. --

23          THE COURT:  I'll read it.  You don't have -- this is

24   not productive.  I'll read the case.

25          MR. MASTROMARCO:  All right.  The upshot is this.  If

39

1    we apply the Sonnax Industry standards to a discrimination

2    case, because this Court cannot liquidate the discrimination

3    claims, the Court in Erickson comes to the conclusion that it's

4    readily apparent that the movant is entitled to relief from the

5    stay so she may liquidate the claim.

6          Here is the same situation.  We must liquidate that

7    claim or those claims in order to place a value for the Court

8    then to determine how that would fit in with the bankruptcy

9    situation.  That's all we're asking the Court to do, is to

10   allow us to go back to the U.S. District Court, allow us to

11   liquidate that claim there and then -- and those other claims

12   there since the judicial economy would suggest that all the

13   claims should be allowed and grant an order accordingly.

14          THE COURT:  Okay.

15          MR. BUTLER:  Your Honor, just -- seeing as Counsel

16   dealt with the history, let me just briefly address the history

17   of this case.  The complaint was originally filed out of a

18   minority  supplier  relationship  alleging  that  the  supplier

19   didn't get the contracts it would have liked to have gotten

20   from Delphi.  A complaint was filed on February 16th of '05.

21   It was dismissed on May 19th of 2005.  There was an amended

22    complaint filed on June 9th of 2005.  The answer would have

23    been due on or about July 9th.  The answer was filed, in fact,

24    on July 11th.  Counsel tried to get a default judgment.  The

25    clerk would not enter it because there was a power outage in

                                        40

1     Saginaw, Michigan during that period of time and there was some

2     issue about the ability to actually prepare or file anything

3     over a couple day period.  And so the Court deemed the filing

4     on July 11th timely, although Counsel has filed a motion to

5     dismiss which is pending -- excuse me, a motion for default

6     judgment, which is pending before that Court.

7            On August 24th, 2005, Delphi filed its second motion

8     to dismiss and we concur that there was a scheduling conference

9     set for November 2nd of 2005 which did not take place.

10    Instead, the federal judge in that case administratively closed

11    the litigation on October 24th, 2005 following the commencement

12    of Chapter 11 cases on October 8th.

13           Now, that's the sum and substance of the activity in

14    this litigation which is in its infancy.  And the debtors, you

15    hear, is whether counsel chooses to color the complaint a

16    discrimination complaint or a breach of contract complaint, as

17    they do in their complaint, to where they talk about breach of

18    contract and other theories.  The fact is that we think under

19    Sonnax, and we've advised counsel of this -- he knows that we

20    don't have insurance to cover the liability associated with

21    this particular claim -- that we're not prepared for trial.

22    This is involved in its infancy.  There's been nothing in this

23    case beyond the second motion to dismiss to be filed.  There's

24    been no discovery of any kind.  And we believe, under Sonnax,

25    Your Honor, that the balance of the harms weighs very much in

41

1    the favor of denying the H.E. Services motion at this point in

2    the debtors' Chapter 11 case.

3            I point out, Your Honor, that H.E. Services filed a

4    supplement to its motion at Docket 3263 where it said that this

5    motion  was  very  similar  to  the  Automotive  Technologies

6    International where you granted some relief at Docket No. 3200.

7    The facts are those cases are very different.  The ATI cases

8    had been filed years earlier and the ATI cases were actually on

9    appeal, the issues had been fully briefed in the appellate

10   courts and the parties were simply waiting oral argument.  A

11   very different case than a complaint filed that had been

12   dismissed and then refiled and was waiting a second motion for

13   dismissal.

14           Your Honor, we believe that, as I said and as our

15   responsive papers said, that under the Sonnax factors, we think

16   they clearly weigh in favor denying the motion at this time.

17   Thank you.

18           THE COURT:  Do you have any view on the 28 USC

19   157(b)(5) point?

20           MR. BUTLER:  Your Honor, I hadn't reviewed the matter

21   because -- you're right, it hadn't been raised or briefed.

22   But, even if it were so, I don't think that with respect to

23   Sonnax, says that gives anyone -- I mean, the carte blanche to

24   come in and get those stay lifts in every case.  I mean, if

25   that were the law, then anyone who had any kind of a tort claim


42


1    here would always win their motion to lift-stay.  And that's

2    not the law in this district.  The fact is Sonnax still gets

3    applied against tort claims and against other claims that may

4    not ultimately be liquidated by Your Honor.  The fact is that

5    under Sonnax, this estate, at this moment in time, when we are

6    involved in some of the most sensitive issues in the case in

7    terms of the ultimate transformation, shouldn't have to be --

8    should have the protection of the automatic stay and not have

9    to deal with claims issues of this nature at this time.  And

10   that's why I think that because there's no insurance here,

11   because we would have to treat this as a full-blown hundred

12   million dollar litigation, as Counsel suggests, and have to

13   take the time to resources, both externally and internally, to

14   defend it, under Sonnax, at this point in our case, it would be

15   inappropriate to lift the stay to permit that.

16          And I don't think the 157 issue has -- while it may

17   have some bearing on it ultimately, at some future date, I

18   don't think it really comes into the calculus, Your Honor, in

19   weighing the harms and balancing the harms in terms of the

20   Sonnax factors for this hearing today.

21          THE COURT:  Okay.

22          MR. BUTLER:  Thank you, Your Honor.

23          MR. MASTROMARCO:  Briefly, Your Honor, may I respond?

24          THE COURT:  Sure.

25          MR. MASTROMARCO:  Not only does it -- is it an

43

1    important factor in the Sonnax analysis, but the cases that I

2    cited suggest that it's probably the only factor that the Court

3    can consider because of the fact that all these arguments that

4    are being made that we don't want to deal with it at this time,

5    we don't want to handle this at this time, this is going to

6    upset these other things, those claims have to be liquidated.

7    So, we have to deal with it now because we have to know, we

8      have to be able to put those claims back to the District Court

9      and I'd cite again to Erickson where they say "proof that the

10     debtor intentionally and maliciously injured the movant by

11     illegally discriminating against her necessitates proving the

12     underlying  discrimination  allegations  which  the  bankruptcy

13     court lacks jurisdiction to hear."  And that's Black Letter Law

14     in New York, Second Circuit.

15             So, I would ask that the Court allow us to go back to

16     the -- and when we look at the factors, we're saying is this

17     Court better equipped to handle it than the U.S. District Court

18     judge as it relates to these specific issues?  Yes, I think

19     that the U.S. District Court judge is a good form for this

20     matter to be tried.  He's familiar with the issues, he's dealt

21     with motions to dismiss -- and I'm not going to go and argue

22     with Mr. Burke today about what occurred in the lower court --

23     or in the district court, I should say -- but the fact is that

24     they have local counsel there.  They have them assigned not

25     only to the H.E. Services case, but they got the same counsel


44


1      assigned on the Cindy Palmer case, which we're going to argue

2      next.  And this is not going to be taking away from the

3      debtors' efforts in this case because they -- this Court has to

4      grapple with that liquidation issue.

5              And so, we would ask that the Court allow the

6      district court judge or -- lift the stay so that the district

7      court judge can hear these claims.

8              THE COURT:  Okay.  All right.  I have in front of me

9      a motion by H.E. Services for relief from the automatic stay to

10     pursue litigation in Michigan District Court that was pending

11     before the commencement of the debtors' Chapter 11 cases.

12             It's averred by the debtors, and I don't think

13    disputed by the movant, that there either is no insurance

14    coverage for this litigation or there's an issue as to whether

15    there is insurance covering the claim -- is obviously an

16    unsecured claim, as well, given that fact and given the Second

17    Circuit's case, In Re Sonnax Industries, 907 F2d. 1280 (2nd

18    Cir. 1990), which says that a movant seeking a lift from the

19    automatic stay must make an initial showing of cause.

20         I had originally believed, based on my review of the

21    papers, that I did not need to get into the various Sonnax

22    factors given that it did not appear that such an initial

23    showing had been made.  That is because, again, it's recognized

24    by the Courts in this district that relief from the automatic

25    stay to pursue the liquidation of an unsecured claim is

45

1    unusual, and extraordinary circumstances normally need to be

2    shown, such as the fact that there is full insurance coverage

3    or the claim is being liquidated really for the purpose of

4    going against a third party or there's a special tribunal in

5    which it is being heard.  It was not stated in the motion

6    papers, but it was stated at oral argument, that

7    notwithstanding in plain language of 28 USC Section 157(a)(5)

8    which deals with personal injury, tort and wrongful death

9    claims and was obtained by the plaintiffs' bar in light of the

10    mass tort asbestosis litigation that affected bankruptcy courts

11    and cases before the enactment of that provision that that

12    provision applies to at least one of the claims asserted in

13    this litigation which is an antidiscrimination civil rights

14    violation claim.

15         I will need to review the case law on that issue.

16    However, applying the Sonnax factors and giving the movant the

17    benefit of the doubt on that issue based on the representation

18    to the Court, I believe and find that there's a reasonable

19    likelihood that the debtor will prevail on the motion and,

20    therefore, I'm going to treat this as the preliminary hearing

21    on the motion and we'll adjourn to the next omnibus date under

22    362(e).

23            In looking at the Sonnax factors, it appears to me

24    that the only one of them that may apply here in the movant's

25    favor  is  the  factor  pertaining  to  whether  a  specialized


                                                        46


1    tribunal had been established to hear the cause of action.

2    And, of course, it's asserted that the District Court is not

3    particularly  a  specialized  tribunal  but  that  it  has

4    jurisdiction to the exclusion of the bankruptcy court with

5    regard to the trial of the matter under 28 USA Section

6    157(a)(5).  On the other hand, that rule may not be dispositive

7    given the status of the debtors' case.  Among other things, the

8    bar date has not run yet and the debtors are in the early

9    stages, if at all, in dealing with the claims against them.

10           So, again, it appears likely to me that the debtor

11    will prevail but I'll review this case law that's been asserted

12    and adjourn the hearing until the next omnibus date.

13           MR. BUTLER:  Thank you, Your Honor.  Your Honor, do

14    you want any more from the parties on this matter for the next

15    omnibus date or just that the Court's going to take it under

16    advisement?

17           THE COURT:  The debtors are free to file something if

18    they wish.  I'm not telling them that they have to.  I'll

19    review the case law myself, but if you want to file something,

20    you can do that.

21           MR. BUTLER:  Thank you, Your Honor.

22           MR. MASTROMARCO:  Your Honor, if the debtor does, I

23    would also like the Court to allow me to file a short brief

24    setting forth these issues that I've --

25                THE COURT:  Well, but you've already -- you took


47


1    today as the opportunity to do that and --

2                MR. MASTROMARCO:  A limited brief, Judge.

3                THE COURT:  -- in my mind, that's sufficient.

4                MR. BUTLER:  Your Honor, the next matter on the

5    agenda is matter number 14.  This is the Cindy Palmer lift-stay

6    motion filed at Docket No. 2708.  And again, I'll defer to

7    Counsel for presenting the motion.

8                MR. MASTROMARCO:  Victor Mastromarco on behalf of the

9    estate.  This is a personal injury cause of action where the

10   plaintiff's decedent was crushed in a machine and the case had

11   been filed originally back in 2001 and went through a lot of

12   discovery.  The trial court had granted a motion on behalf of

13   Delphi for summary -- what we call summary disposition, which

14   is similar to Rule 56 in federal court.  The case had gone to

15   the Court of Appeals and oral arguments had been set for

16   October 12, 2005 and the bankruptcy stay was entered three days

17   before that argument date.

18               What we're asking for is again, pursuant to Rule 157

19   that we've cited in the Backie matters, (b)(5), that we be

20   allowed to pursue this matter in the state appellate court or

21   have it removed to the federal district court to decide whether

22   it should go to the Court of Appeals and resume arguments

23   there.

24               We were at the end of the road with the Court of

25   Appeals, although that's the first stage of appellate review in


48

1    Michigan.  We would ask that we be allowed to do several

2    things:  number one, have the oral arguments since all the

3    briefs have been submitted by the parties.  Everyone is

4    ready -- was ready to go.  We had already prepared for the

5    hearing.  If in the event that the Court of Appeals rules

6    against us on that motion, we would ask that the Court also in

7    the same order allow us to avail ourselves of the application

8    procedures to the Supreme Court for the State of Michigan.  In

9    the event that we are successful, we would ask that the Court

10   allow us to go back down to the state court and have that Court

11   determine and liquidate the claim and then, of course, if, in

12   fact, we are successful, we would want that the Court here

13   would have exclusive jurisdiction over any of those issues

14   pertaining to how that would fit into the debtors' estate.

15          I am unaware -- I believe there may be insurance

16   involved but I cannot indicate that for a fact for the Court

17   because we never asked that when we were in the underlying case

18   and I haven't asked that here.

19          THE COURT:  Okay.

20          MR. BUTLER:  Your Honor, again, just with Counsel's

21   recitation of the record below, just so the record here is

22   clear, in 2001 there was a wrongful death action filed.  In

23   November 2002, there was -- summary disposition was granted in

24   favor of Delphi Corporation and a series of other defendants at

25   that time.  This made its way to the Michigan Court of Appeals


                                    49


1    where it was to have been heard in oral argument on October

2    12th of 2005.  Obviously, our bankruptcy intervened as to

3    Delphi Corporation on October 8th and that argument did not

4    occur vis-a-vis the Palmer estate and Delphi Corporation.

5          It did continue as to all the other defendants on

6    November 8th, 2005.  The Michigan Court of Appeals affirmed the

7    orders of the circuit court granting defendants' motions for

8    summary disposition until the matter's been concluded as to all

9    of the parties.  We had indicated to Counsel, and I'll indicate

10   again on this record, that we would not oppose a modification

11   of the automatic stay, if that's what Counsel wants, to go and

12   have the same argument in front of the Michigan Court of

13   Appeals.  That matter has been fully briefed and we do believe,

14   as we have in some other matters, based on the Sonnax factors

15   and otherwise, that if that's what they want to do, it's not

16   undue hardship to expend the time and effort to go and make

17   that argument in front of the Court of Appeals.

18         We do think, Your Honor, however, should ask the

19   counsel to come back to this Court and justify a subsequent

20   time under the Sonnax factors either for an appellate

21   litigation in the Michigan Supreme Court and, certainly, going

22   back to beginning a trial on the merits, which is -- if somehow

23   that would occur.  There's been no trial, no discovery, none of

24   that has occurred and so this would be in its infancy again as

25   it relates to that.  And when I say no discovery, obviously

                                        50

1    there's a motion for summary disposition so there was some

2    amount at that point but this has not been something that

3    would -- we think that the movants here are asking for too much

4    relief.

5          So, the debtors are prepared, Your Honor, to agree,

6    as we were, prior to appearing in court today, to a limited

7    modification of the stay to go back to the Michigan Court of

8    Appeals and conclude that phase of this litigation.  We'd ask

9    Your Honor to require the Palmer estate to come back to this

10    Court for any further relief beyond that and justify it under

11    the Sonnax factors at that time.

12           THE COURT:  Okay.  All right.  I have in front of me

13    a motion by Cindy Palmer as personal representative of the

14    estate of Michael Palmer for relief from the automatic stay to

15    pursue to its conclusion pending litigation in the State Court

16    in Michigan.

17           The debtor has consented to relief from the stay in

18    part to permit the conclusion of the pending appeal in the

19    Michigan State Court but not any subsequent appeal in the event

20    that the trial court is reversed -- a trial of the litigation.

21           As I said, in connection with the prior motion, when

22    an unsecured creditor seeks relief from the automatic stay to

23    pursue litigation, it needs to establish or pass an initial

24    burden of showing cause under the Second Circuit's Sonnax case.

25    If it meets that burden then it needs to -- the Court needs to


                                       51


1     evaluate several factors, some of which may be pertinent or not

2     in connection with the analysis as to whether cause has been

3     shown.  But it is a fact-based inquiry.

4            In light of that fact, I'll grant the motion to the

5     extent that the debtors have consented to it.  And if further

6     relief is sought or desired by Ms. Palmer, she can come back

7     here in light of the current state of facts and I'll analyze

8     those facts under the Sonnax analysis at that time.  But, there

9     are too many different alternatives that could pertain here

10    beyond simply taking the matter through the current pending

11    appeal for it to be appropriate to me to apply the factors

12    under various hypothetical scenarios.

13           So, I'll grant the relief to the extent that the

14    debtors have consented to it.

15          MR. MASTROMARCO:  Your Honor, if I may, there's one

16    issue that I'm concerned about and it wouldn't be in the event

17    that we were to win in the Court of Appeals.  It would be if we

18    were to lose because we have a very short period of time in

19    which to file an application to the Supreme Court.

20          THE COURT:  You can come back on an expedited basis

21    then.  I won't hold you to the omnibus date if you can show me

22    that you have an expedited need.

23          MR. MASTROMARCO:  If we could put something in the

24    stipulated order possibly to the effect that in the event of an

25    adverse finding by the Court of Appeals that the stay is


52


1    reentered, then that would probably prevent us from having to

2    rush out here, too.

3          THE COURT:  Well, no.  I'll remember it.  I mean, you

4    just -- just based on what you've told me today -- I don't

5    really know the rules of a Michigan appellate process.  All you

6    need to do is file a short affidavit requesting expedited

7    treatment and I'll give it to you.

8          MR. MASTROMARCO:  All right.  Thank you, Your Honor.

9          THE COURT:  Okay.

10          MR. BUTLER:  Your Honor, the next matter on the

11    agenda, matter number 15 is the O'Neill lift-stay motion.  This

12    is at Docket No. 2748.  And again, we'll defer to Counsel to

13    present this motion.

14          MR. MENAKER:  Good morning, Your Honor.

15          THE COURT:  Good morning.

16          MR. MENAKER:  Richard Menaker for the movants, Mary

17    and Liam O'Neill.  This lift-stay motion seeks to permit

18    resumption of the state court personal injury action in the

19    Illinois state court that had been underway for two years at

20   the time of the Chapter 11 filing.

21          The accident in question resulted in Mrs. O'Neill's

22   losing both legs.  I have three points.  First, I'd like to

23   show  how  issue  has  been  joined.    Secondly,  address  the

24   questions of distraction and bite-back, that is, whether the

25   estate would be effected and third, address the question of


53


1    whether any further proceedings are needed on the motion.

2           The first point is how issue has been joined.  We saw

3    this morning for the first time the debtors' reply to our

4    supplemental submissions.  Now, most of the clouds that may

5    have existed previously have been lifted.  Our ability to study

6    that reply, however, has been somewhat limited, so, I apologize

7    in advance if I have any misunderstandings about the status of

8    the insurance situation.  The motion, which we made back in

9    March, was to lift the stay on the grounds that the O'Neills

10   would rely on the insurance.  The debtors responded two-fold,

11   first, that the stay should not be lifted because there would

12   be a distraction from the much more important things that they

13   were dealing with in connection with the reorganization of the

14   estate -- or reorganization of the company.  And, secondly,

15   that they were self-insured to the extent of one million

16   dollars per occurrence, so that this would be a direct hit on

17   the estate.

18          We  responded,  first,  that  because  the  insurance

19   carriers were handling the defense, the distraction would be

20   limited, and this is an ordinary course of business type of

21   matter for a debtor-in-possession to continue its business so

22   distraction should not be an issue here.  And I don't think

23   that that has been a major issue, really briefed heavily since

24   the beginning of the issues first joined in the motion papers.

25          But, secondly, and the more important point, on the

                                        54

1    matter of the million dollar self insurance, or self-insured

2    retainage -- that was covered by a carve-out as a result of the

3    debtors' insurance motion made back in December.  And, as a

4    result of the back-and-forth in the papers, we asked if there

5    was any question on exactly how the insurance carve-out worked,

6    based upon the insurance motion that there be discovery.  And

7    the Court granted discovery, we had some limited discovery

8    which gave us an opportunity to see the insurance agreements.

9          The insurance agreements were provided to us subject

10   to confidentiality, we objected to the confidentiality of the

11   agreement, but we have filed under seal one endorsement, or a

12   declaration -- and the Court, I trust has had an opportunity to

13   see that --

14          THE COURT:  Right.

15          MR. MENAKER:  -- understands our point about that.

16   We think it deals mainly with an issue of distraction rather

17   than the issue of the bite-back.

18          THE COURT:  Well but, isn't it conceded that there is

19   bite-back?  Financial bite-back?

20          MR. MENAKER:  No, well.  There is bite-back only in

21   this respect, Your Honor.  There is a carve-out of funds, a

22   letter of credit in the amount of 19. --

23          THE COURT:  Well, you're getting -- if you're getting

24   into  areas  where  you're  going  over  the  confidentiality

25   limits --

                                        55

1           MR. MENAKER:  I don't think -- no -- the 19.1 million

2    is not confidential I --

3           THE COURT:  All right, I just want to make sure I'm

4    not sure that --

5           MR. MENAKER:  No, I don't think there's any -- any

6    issue having to do with the funds that have been set aside for

7    the payment on a claim of reimbursement by an insurance carrier

8    is non-confidential, I believe.

9           THE COURT:  Okay.

10          MR. MENAKER:  I don't think there will be an issue.

11          THE COURT:  Fine.

12          MR. MENAKER:  And --

13          THE COURT:  See, the point is, the estate will take a

14   hit, but it's pre-funded that hit.

15          MR. MENAKER:  It's pre-funded.  It's carved out and

16   approved by this Court and I think -- then let me get to my

17   second point, Your Honor.  I think distracting -- maybe I

18   should put distraction aside.  I just don't think that that's

19   an issue here.  I trust, if the Court wishes me to address

20   that, I will be glad to do so, but distraction took up most of

21   the papers opposing us, and there were a few paragraphs that

22   dealt with the matter of the estate will take a hit and not a

23   word was said about the letter of credit.  The word "letter of

24   credit" did not appear in the opposition papers that were

25   submitted in response to us.  It appears -- the word appears


56


1    once in the reply that I read for the first time this morning.

2    Here's the contention.  The contention is, by the debtors, that

3    the insurance carriers -- yes the insurance carriers will pay

4    first dollar.  They admit that.

5           Now Your Honor may recall that there was a footnote

6    in which there was -- in their original opposition in which

7    they said it's not certain that the insurance carriers will pay

8    first dollar.  Maybe it'll come directly to us.  That's not

9    longer the position.  It is conceded that the insurance

10   carriers will pay first dollar on our claim if it's allowed to

11   proceed and it proceeds to a judgment with damages against

12   Delphi.    So  now  the  position  is,  well,  there  will  be

13   reimbursement sought by the insurance carrier.  The insurance

14   carrier will then go back against the estate.  But they will

15   not go back against the estate as such. They will go back to a

16   pool, which has been set aside and which was approved in the

17   motion that was -- as a result of the motion that was made back

18   in December, on notice to the creditors' committee.  And that

19   is the only extent to which there is any call upon funds that

20   came from Delphi.

21         And we believe that what has happened here, is that

22   this Court, in order to allow insurance to proceed, in order to

23   allow the ordinary course of business of Delphi to proceed with

24   the existence of insurance coverage and the processing of

25   claims that occur -- whether it's personal injury or workers'

57

1    compensation -- the Court has allowed a certain fund to be put

2    there to make sure that the insurance carriers would be in

3    place and would provide the services and the funding to provide

4    first dollar coverage in these kinds of cases.

5         Now, what is the argument on bite-back?  That goes

6    beyond the existence of a preexisting fund.  It appears in once

7    sentence in the reply.  At Page 6 of the reply that we saw this

8    morning, it's dated the 16th, last Friday, and I know that the

9    Court will have read it.  This is at Page 5:  the debtors say,

10   if there was a draw down on the letter of credit that was

11    issued under the debtors' pre-petition security facility quote,

12    "this would in turn increase the amount of funded debt owed to

13    pre-petition lenders" unquote.  No citation to the record; no

14    reference to any such pre-petition debt or increase of it.

15    Your Honor, we do not know where that comes from.  That is the

16    only respect, it would appear, in which there would be some

17    impingement upon the estate.  Now, we haven't heard any

18    expression  of  concern  from  the  pre-petition  lenders  that

19    allowing the stay to be lifted and the O'Neills to proceed

20    would affect that.  So either that statement has to be

21    discounted, or if it becomes a concern of the Court that that

22    is one respect in which there would be a bite-back to the

23    estate, then we need to know about it.  There has to be a fact

24    that is proved to the Court, established to the Court's

25    satisfaction that would show that there really was a bite-back

58

1    in that respect.

2              Finally, I'll note that the O'Neill's have commented

3    on the claims procedure motion in our supplementation.  That's

4    for later in this proceeding, we don't plan to speak to it at

5    that time.  As long as we can opt out, we're not aggrieved.

6    Thank you, and I'd like to reserve two minutes for rebuttal.

7              THE COURT:  Okay.

8              MR. BUTLER:  Let me deal with the bite-back issue

9    first, and then I'll work back no some of the other matter

10   Sonnax factors.  Before we brought -- the insurance order, in

11   my view, is a complete red herring here.  The insurance program

12   is  the  issue.   The  insurance  order  simply  approved  the

13   continuation of the insurance program.  The insurance program

14   that we have requires the debtor to self-fund at least the

15   first million, and in some cases an amount larger than that,

16    but for this case, I believe it's a million dollars of

17    exposure.  The way in which that funding is accomplished with

18    our insurer is they required that we provide that funding to

19    them in a pool.  And there a -- I won't go through all the

20    details, some of which would be confidential, but there's a

21    process by which they evaluate actuarially what they think that

22    pool would be with respect to the claims that are outstanding,

23    and then we fund. That's the way it occurred pre-petition, it's

24    the same way it occurs post petition and Your Honor authorized

25    us to continue in those practices.  The way in which we provide

                                    59

1    that funding to the insurer, I believe, is through a letter of

2    credit issued, in the fist instance, by our pre-petition

3    lenders.  I'm not sure whether it's pre-petition if the DIP

4    lenders had that LC in a moment.  But if the LC is actually

5    drawn on, then with the funded debt reference is simply the

6    operation of the way the loan agreement works.  If there's an

7    LC right now, if the LC's drawn then that debt becomes a funded

8    obligation and is repaid to the secured creditors by the

9    debtors.  However one wants to slice it, the debtors are on the

10    hook for the first million dollars of exposure in this case.

11    And that's the bite-back that we're talking about.  It's real

12    dollars, and the fact that we have provided for it and that

13    it's a secured claim, if you will, through the providing of

14    collateral to the insurer, I don't think changes the ultimate

15    exposure.  It's an exposure to the estate, the estate will have

16    to make those payments and that's the financial bite-back that

17    would be considered under the Sonnax factors.  As it relates to

18    the balance of the issue, this is a personal injury case

19    arising out of an alleged failure of an electrical system in

20    the 2000 vehicle.  And the driver got out -- when the vehicle

21    stalled, the driver got out of the vehicle and then was hit,

22    once outside the vehicle.  And that's -- the personal injury is

23    related to that injury.  This matter has had some written

24    discovery it has not yet completed the deposition discovery, it

25    has not, to my knowledge, been set for trial by Cook County,

60

1    although I believe it has been released for a setting by the

2    Cook County System.  Judge, I'm familiar with it as a lawyer in

3    that jurisdiction.  But it's not ready for trial in the State

4    Court and, as we looked at it from the Sonnax perspective, Your

5    Honor, this will -- this is a significant claim against the

6    estate.  Not just monetarily but in terms of the claims that

7    are being made, it will require our attention.  We addressed

8    that in the papers.  But in asking that the Court not grant the

9    motion now, our principal dispute with the movement has been

10   their assertion that they will look only to insurance proceeds.

11   They're looking, basically, to the first million from us and

12   the excess insurance proceeds from the insurance companies.

13             THE COURT:  And the self-insured retention is per

14   claim?

15             MR. BUTLER:  Yes.  Yes, it is, Your Honor.  That's

16   all I have on this, Your Honor.

17             THE COURT:  Okay.

18             MR. MENAKER:  Just a quick word.  The insurance

19   motion is not a red herring.  It established a new letter of

20   credit in a large amount.  And there's no mention -- there's no

21   mention in connection with that motion of a loan agreement, as

22   if there were some kind of an unsecured, floating opportunity

23   here for the debtors to obtain these millions of dollars of

24   additional loan receiving ability.  It's our understanding --

25             THE COURT:  Well, whenever there's a letter of credit

61

1    issued, someone has to issue it.  They don't do it for free.

2             MR. MENAKER:  Right.  But presumably, it's secured.

3    And presumably it's secured by funds that have already been set

4    aside for that purpose.  And, therefore, this Court has

5    approved those funds to be available to be used to satisfy any

6    claims made by the insurance carriers, after having made their

7    first dollar payments to any claimants.  It was understood at

8    the time that motion was made, was granted, that those funds

9    would be available to satisfy claims of the type that the

10   O'Neill's make today.  And, therefore, those funds are there

11   specifically for that purpose.  It's a carve-out of which we

12   are the beneficiaries.  It is to be dealt with as if it is

13   nothing more than an unsecured, additional, pre-petition claim

14   for some lenders out there, who don't care otherwise, and

15   aren't even commenting now.  It's simply not the case.  If

16   there is any doubt in the Court's mind on this point then we

17   ought to get the facts established for sure.  Because no ruling

18   should be made by this Court with there being a vague, hazy and

19   indefinite assertion that all this does is increase our pre-

20   petition debt.

21            THE COURT:  But what additional facts would there be?

22            MR. MENAKER:  Whether, for example, the letter of

23   credit isn't -- is secured by funds that already exist.  Or by

24   property that exists which has been carved out from the estate

25   and set aside as a basis for reimbursement of an insurance

62

1    carrier, which exists to be able to pay us if we have a

2    legitimate claim.  If those lost legs are, in fact, something

3    that leads to damages, then we are to be paid by the insurance

4    carrier.  And funds have been set aside from the insurance

5    carrier to recover in this proceeding as an administrative

6    claim.  This is -- it's not a bite-back in the sense that I

7    believe the Court was concerned that there might be a bite-

8    back.  It is, in effect, there's a flow-through to which we are

9    especially secured claimant with the O'Neills, because we can

10   turn to an insurance carrier that must pay us if there are

11   damages.  Then there's of course, above the million, and this

12   is also not confidential, there's excess if it's greater than a

13   million dollar claim.  And there's an excess carrier that -- as

14   to which there's no retainage.  Then the insurance carrier has

15   been protected because of an application the debtors made to be

16   sure that the insurance carrier would be protected, so that the

17   insurance carrier would continue with the insurance program.

18           THE COURT:  But, you're making the extra leap that

19   because the debtors got approval to have the coverage that they

20   have to protect themselves against claims that are in excess of

21   the self-insured retention, that I should ignore the SAR.

22           MR. MENAKER:  Well, it's -- in Paragraph 3 of their

23   response they acknowledge that the insurance carrier will pay

24   first dollar.  And I think that is a critical point.  As long

25   as it is understood that the insurance carrier, during the

63

1    course of this bankruptcy, has the obligation to pay first

2    dollar, then we're relying on that.  And we will look only to

3    that.

4           THE COURT:  But you're not.  Because it's -- because

5    you know for a fact that they immediately will come back and

6    get that first dollar from the estate.  They're not really

7    paying the first dollar.

8          MR. MENAKER:  The question, Your Honor, is whether

9    that pool that exists for the insurance carrier to come back is

10   something that can be drawn on properly or not.  Is it there

11   for a purpose?

12          THE COURT:  I agree with that, but that's why I'm

13   saying what more discovery would you want.  I mean the motion -

14   - the motion to approve the insurance program didn't say, did

15   it, that, you know, the debtors have set aside the first

16   million dollars of every claim covered by the program to pay to

17   the -- to pay to personal injury claimants, have they?

18          MR. MENAKER:  What it said is that there will be a

19   letter of credit on which the insurance company can draw when

20   it has circumstances, such as the payment of damages, which

21   allows it to draw.  The motion that was made was to create the

22   pool that we now seek, in effect, to draw on, although we don't

23   draw on it directly, we go to the insurance carrier.  And only

24   the insurance carrier goes back for the reimbursement.  The

25   question on what discovery would we need, only would relate if


64


1    it's of any concern to the Court, it would only relate to the

2    question of whether upon a drawing on the pool, that would

3    create an unsecured claim, or an increased unsecured claim by

4    some pre-petition lender.  I don't think that's likely to be

5    the case, but I don't know.

6          THE COURT:  Well, why wouldn't -- I don't understand,

7    why can't I just accept that it would.  I mean, I've never

8    known a bank to issue a letter of credit that doesn't have a

9    reimbursement agreement as part of it.

10         MR. MENAKER:  Look, let's just -- of course we

11   haven't seen it, but let's assume that there's a reimbursement

12   agreement.  If it's fully secured, already by funds of the

13    debtor -- for example through a letter of credit -- withdrawn.

14    For example through a certificate of deposit that's in the same

15    amount.    Those  are  debtor  funds  that  have  already  been

16    earmarked and set aside with the approval of this Court on

17    notice to the creditors that that's what the purpose would be.

18    It would be there to create a pool for these administrative

19    claims that would be made by the insurance carriers during the

20    course of the proceedings.   This is not your bite-back, Your

21    Honor, I respectfully submit.

22          MR. BUTLER:   Your Honor, counsel may have just given

23    the argument as most eloquent as to why his motion must be

24    denied under the Sonnax factors.   The -- what he purports to

25    say is that he believes that the insurance order by you


65


1    essentially allowed or elevated all pre-petition claims that

2    might go against insurance to be fully secured administrative

3    types of claims by creating that fund.   That's not what the

4    order did at all.   But that's what he would assert.   And that's

5    not, I think Your Honor's got it exactly right.   That if this

6    litigation is permitted to proceed and the plaintiff prevails,

7    the first million dollars of exposure comes out of the hide of

8    this estate.   The fact that it's a -- you know that it comes

9    via a letter of credit which is associated with a loan

10   facility -- which, by the way is secured, not unsecured, as

11   Your Honor is aware -- the pre-petition loans and the DIP loans

12   are fully secured.   At least at the moment it appears that they

13   are both fully secured as we look at this.   And I don't think

14   the measure is that somehow an unsecured -- a new unsecured

15   claim is created, which is what counsel referred to.

16          Our point on the bite-back issue as well as the

17   distraction issue as you balance the harms, given the state and

18    posture of the litigation below is, we believe, at best, it's

19    premature for Your Honor to lift the stay to allow this

20    litigation to go forward.  But that this is better dealt with

21    later in the case, when we're addressing claims administration

22    matters more fully.  Thank you.

23         THE COURT:  Well, let me just address that point.

24    Where is the prejudice to your client of putting this off for a

25    few months until the debtors' analyzed the claims that come in


66


1     connection  with  the  bar  date  and  see  where  they  stand,

2     generally, with regard to personal injury claims and their

3     insurance?

4          MR. MENAKER:  Your Honor, in a situation such as our

5     client's, any further delay is a prejudice.  If it's only, and

6     particularly if it's only to allow the debtors a few more

7     months to analyze a variety of claims, the weighting -- W-E-I-

8     G-H that would be involved of their interest, the debtors'

9     interest in analyzing claims and trying to get people into the

10    claims procedure that they're going to argue before you a

11    little later today on the one hand, verses our client's who --

12    this is not a wrongful death action.  This is someone who's

13    alive with lost legs.  It would seem to us that the prejudice

14    is far outweighing on our side than the interest on the other

15    side.  And --

16         THE COURT:   Well,  I'm  just  talking  now  about

17    liquidation of the claim.  Because it seems to me the stay

18    would -- this is not a case where it's really third-party money

19    that would be paying the claim.  So the stay would still apply

20    in a situation where you got a judgment in favor of your

21    client.  It would apply to execution.  Because it's really not

22    coming out of the insurers, the first million.

23          MR. MENAKER:  Will the insurer be barred from making

24    the first dollar payments?

25          THE COURT:  It may.


                                        67


1           MR. MENAKER:  Would the only limitation be on the

2    insurer's coming back against the debtor?

3           THE COURT:  The fact of the payment would be to have

4    a distribution out of the estate.  So, again I'm not -- I

5    understand, if the money were there, to pay it.  And it

6    wouldn't -- you wouldn't need separate stay relief to pay the

7    money.  I understand your point completely.  That's why courts

8    lift the stay when people are truly going against insurance.

9    But it seems tome that what we're talking about here is just

10   liquidating the claim.  Because --

11          MR. MENAKER:  Let me --

12          THE COURT:  -- a million dollars does come out of

13   estate here.

14          MR. MENAKER:  I want to emphasize that, in view of

15   the statement by counsel that the letter of credit is fully

16   secured, we need no discovery.  We have a secured letter of

17   credit and the funds are going to come out of the pocket of the

18   insurance carrier to start with.  And at some later point

19   they're going to come back.  And what they do in this Court it

20   is a matter of whatever Your Honor's order allows the insurance

21   carrier to do at a later point.  And that's the conundrum

22   before the Court.  I don't believe this can be seen as a true

23   bite-back in the way Your Honor has been talking about it.  And

24   it's been approved by the Court and it has to have been

25   contemplated that this is how it would work.  Thank you, Your

 1   Honor.

 2            THE COURT:  Well, it's clear how I contemplated it.

 3   I didn't view this as the same thing as insurance when I

 4   approved this motion, the earlier motion on the program, but.

 5   I'll take this under advisement.

 6            MR. MENAKER:  Thank you, Your Honor.

 7            MR. BUTLER:  Your Honor, I think the only lengthy

 8   matter left on the agenda is the next one, which is the New

 9   Brunswick matter.  And with the Court's permission, I've just

10   consulted with other counsel involved in that hearing.  I'd

11   like to move that off so that we can finish up the other

12   matters I think we can get through them more quickly, and then

13   come back to JCI.

14            THE COURT:  Okay, all right.

15            MR. BUTLER:  So we'll pass 16 at this moment and go

16   on to 17.  This is Automotive Technology International's Lift

17   Stay Motion at Docket No. 3980, and I would defer to counsel to

18   present that motion.

19            MR. BATTAGLIA:  Good morning, Your Honor, Christopher

20   Battaglia, Halperin, Battaglia Raicht on behalf of Automotive

21   Technologies International.  As you know, Your Honor, this is

22   what I'd like to call round two of this motion.  As you may

23   recall when we were here before you several months ago seeking

24   to lift the automatic stay on two patent infringement appeals

25   before the federal circuit.  One of which was fully briefed and

 1   involved only Delphi as the appellee and you lifted the

 2   automatic stay to proceed so that the federal circuit could

 3   proceed to its decision.  You denied, without prejudice, the

4    motion relative to the second appeal, which is an appeal we

5    term the BATI/BMW appeal in which Delphi is one of twenty-six

6    defendants in that action.  That case was not fully briefed,

7    but it was, you know, in front of the federal circuit and was

8    scheduled for mediation.  You said, well, I don't want to do

9    anything to derail the mediation, so, proceed with that and

10    then if that's unsuccessful then you can come back before us.

11    I will briefly touch on the Sonnax factors.

12        THE COURT:  Well, no.  Tell me about the mediation

13    first.

14        MR. BATTAGLIA:  Sure, sure.  And that's why I think

15    it's probably most appropriate for me to address the issues

16    raised by the debtors.  They pretty much cry foul on three

17    fronts.  One, that you filed the motion before the mediation

18    actually occurred; two, it's going to cost some money to defend

19    this appeal; and three, we're too busy.

20        Let me address the mediation first.  In no way did we

21    proceed in that mediation in bad faith.  The filing of this

22    motion only indicates how important this is to ATI.  And we say

23    in the very first paragraph, obviously without mentioning the

24    mediation because of the rules, we're not supposed to talk

25    about the mediation, but we say very clearly in the first

70

1    paragraph in the first footnote that, to the extent because of

2    the issues that were raised in court when we originally made

3    this motion, meaning the mediation, to the extent that we

4    resolved it, we would withdraw this.  We did not want to have

5    to wait until July 19th to the extent that this mediation did

6    not result in a resolution to come before Your Honor.  As we've

7    indicated in the first instance, this is unlike any other lift-

8    stay motion you've heard today.  This is not a personal injury

 9    case where the action is -- the damage is done and over with.

10    This could potentially, if ATI --

11              THE COURT:  Let me interrupt you.  There are twenty-

12    five other defendants, right?

13              MR. BATTAGLIA:  That's true.

14              THE COURT:  What's the status of the mediation with

15    regard to them?

16              MR. BATTAGLIA:  It's concluded as well, with regard

17    to the twenty-five --

18              THE COURT:  And how is it concluded?

19              MR. BATTAGLIA:  Without resolve.

20              THE COURT:  So that's been reported to the court?

21              MR. BATTAGLIA:  I believe it has, but I'd be lying if

22    I said for sure that I knew that that was the case.

23              THE COURT:  Okay.

24              MR. BATTAGLIA:  Part of the reason why we're here is

25    because the federal circuit wanted to hear from you, Your


                                   71


 1    Honor --

 2              THE COURT:  Well has anything been scheduled in

 3    respect to the twenty-five other defendants?

 4              MR. BATTAGLIA:  Has anything -- in regard to --

 5              THE COURT:  Has anything else been scheduled in

 6    respect to the twenty-five other defendants?

 7              MR. BATTAGLIA:  No, Your Honor.  And we'd love to

 8    proceed against the other twenty-five defendants but the

 9    federal circuit stayed the whole proceeding because they wanted

10    to hear from you first as to how this was going to impact

11    Delphi.

12              THE COURT:  There's been no report back to the

13    federal circuit about what to do now that the mediation is not

14   proceeding?

15          MR. BATTAGLIA:  I can't say for certain, Your Honor.

16   I believe it has.  My understanding is that they've reported

17   back  to  the  federal  circuit  that  the  mediation  was

18   unsuccessful.  But I can't say for certain.

19          THE COURT:  And why can't Delphi be severed from the

20   other folks?

21          MR. BATTAGLIA:  I would imagine that that would be

22   fine with my client.  We'd love to be able to proceed.  They're

23   identical issues.  I think the only concern is that, you know,

24   Delphi's going to say, well I don't want to be prejudiced if

25   the outcome, you know, turns up --


                                                72


1          THE COURT:  Are they identical issues?

2          MR. BATTAGLIA:  I'm sorry?

3          THE COURT:  Are they identical issues?

4          MR. BATTAGLIA:  I believe they are.

5          THE COURT:  Okay.

6          MR. BATTAGLIA:  And that's part -- again, part of the

7   speed of why we want to get in here is that this -- this could

8   be a continuing infringement post-petition.  So this claim

9   could be growing astronomically.  If I was a creditor in this

10   case this would clearly be on my radar screen along with all

11   the other major matters in this case.  But I wanted to address

12   that first, Your Honor, that there was no attempt to try to

13   end-run Your Honor or to trick you into think that we were, you

14   know, trying to end-run the mediation process, because we

15   weren't.  The second issue that the debtors raise is that --

16          THE COURT:  Well, was there even a meeting?

17          MR. BATTAGLIA:  Oh there was a mediation, Your Honor,

18   sure.

19          THE COURT:  There was.

20          MR. BATTAGLIAH:    The mediation took place.  And

21  while, of course, again to the allegations in the debtors'

22  response and without getting into the mediation I can tell you

23  that the ATI was the last party to leave that mediation.

24          THE COURT:  Okay.

25          MR. BATTAGLIA:  Your Honor, the second issue that the


                                                73


1  debtors cry foul on is that they say, this is going to cost two

2  hundred thousand dollars to prosecute, to file these briefs.

3  And all due respect, Your Honor, and I mean no disrespect to

4  the debtors or the debtors' counsel, I find that almost

5  laughable.  In the sense of -- in the scheme of this case two

6  hundred thousand dollars -- I believe fee applications were

7  just recently filed and the debtors' counsel's fee application

8  was close to ten million?  I have no idea what counsel for the

9  other committees were and conference counsels and secured

10  creditors, but needless to say, and to use Mr. Butler's own

11  words, if this is a case where there are tens of billions of

12  assets and liabilities, two hundred thousand dollars in the

13  scheme of this case, Your Honor, would be one percent of one

14  percent of this -- maybe even less -- in the scheme of what

15  it's going to cost.  In the face of a growing -- or potential

16  growing multimillion dollar post-petition claim, if it is found

17  that there is infringement.  Likewise, Your Honor, two hundred

18  thousand dollars to do this appeal, I think it's probably even

19  excessive.  You've got twenty-five other defendants that will

20  surely want to carry some of the laboring ore if Delphi decided

21  to sit back, and I'm quite sure they could.  And the basis of

22  this appeal was a technicality on summary judgment that allowed

23  the lower courts to find in Delphi's favor.  This brief is

24    pretty much already written.  It's -- I can't imagine that the

25    actual issues are going to vary that much that it's going to

74

1    create that much of a disruption to the debtors' proceedings.

2    There's separate counsel -- separate counsel, I believe

3    attended the mediation.  It just -- I can't see how a two-

4    hundred thousand dollar issue -- even if it was going to be two

5    hundred thousand dollars, should dissuade this court in light

6    of the Sonnax factors.

7          The last issue that they cried foul on is the timing.

8    That they don't have the time, they are dealing with too many

9    larger issues.  Your Honor, like I said, if this was a simple

10   personal injury case where the damage is done and it's just a

11   matter of liquidating the damages, that's one thing.  But here

12   the potential damages are growing and they're not small, but,

13   you know, I understand that multi-millions of dollars claimed

14   in this particular case isn't the largest claim that the

15   debtors are going to face, but it is significant.

16         Again, I don't want to bore you with the Sonnax

17   factors, I think everybody in this courtroom are well aware of

18   them.  They stated in the brief, I know you read it the first

19   time, I'll go through them again if you need me to, but

20   obviously the high points is federal court exclusive -- court

21   of exclusive jurisdiction.  The appeal will definitely bring to

22   a resolution the appellate process.  You know, to the extent

23   that ATI loses on appeal, then it's game-over, it's done.  If

24   not, we've determined that we would then come back to this

25   court if it's going to take further litigation below then we

75

1  would come back to this Court to seek authority to continue.  I

2  see -- I don't see in any way how the debtor would be

3  prejudiced by proceeding to have this appeal brought to its

4  resolution.

5            THE COURT:  Okay.

6            MR. BATTAGLIA:  Any other questions, Your Honor?

7            THE COURT:  Okay.  No, that's fine.

8            MR. BUTLER:  Your Honor, counsel is correct.  The

9  debtors' principal, you know, complaint here is the violence

10  that was done by the movant to I think both the spirit and

11  intent of Your Honor's prior ruling.  We were here on two

12  appeals:  the 2001 appeal, which has been referred to as the

13  BMW Appeal, that's what the subject of this particular motion

14  is, and the 2003 appeal which has been called in its earlier

15  motion, the Delphi Appeal.  And that was allowed to proceed to

16  argument and go forward because it was fully briefed, ready to

17  go.  The BMW Appeal was not, it was disposed to mediation.

18  Your Honor said, go mediate this, sort it out, and then come

19  back afterwards and think what needs to be done there and Your

20  Honor's statements on the record have been quoted in the

21  papers.  That's not what happened here.  And although his

22  papers don't call it out, on June 1st, 2006, the Halperin Law

23  Firm under -- you know, subject to Rule 11 filed a motion which

24  said the following things at paragraph 17:  "Despite this

25  Court's prior instruction that Delphi and ATI to first seek to

76

1  settle or otherwise resolve the ATI/BMW Appeal through channels

2  discussed in the record at hearing on April 7, 2006 -- despite

3  ATI's efforts there's been no advancement to any resolution of

4  the appeal.  Given this result and the passage of time, it is

5  clear that the federal circuit, a specialized tribunal for

6    patent litigation is the only appropriate forum for resolution

7    of the ATI/BMW Appeal."  It would have been nice had counsel in

8    the papers indicated that the mediation was scheduled to occur

9    four days later on June 5th.  In his first paragraph in the

10   preliminary  statement  it  says,  quote,  "given  that  the

11   conditions discussed by the Court underlying the decision not

12   to lift the stay do not appear to be present, ATI is renewing

13   its request for lift-stay" end quote.  And then from the same

14   paragraph, a sentence later, quote:  "Accordingly given the

15   passage of time the utter stagnancy of any resolution of the

16   remaining appeal, ATI renews its request for lift-stay."  End

17   quote.  And then at Paragraph 4, it says, quote, "the automatic

18   stay has already been lifted with respect to the Delphi Appeal

19   as resolution has neither been approximated nor achieved, ATI

20   renews its request for relief from the automatic stay to allow

21   the BMI Appeal to advance before the federal circuit.  Though

22   briefing on the BMI Appeal has not been completed, Delphi is

23   one of twenty-six defendants, many of whom had interests

24   identical to those of Delphi." end quote, it goes on.

25           Your Honor, the mediation was four days later.  There

77

1    was no -- I mean it doesn't take a rocket science to figure out

2    that that mediation was going to fail in light of this motion.

3    And I don't think -- on behalf of the debtors, Your Honor, we

4    don't think this kind of conduct ought to be rewarded by the

5    Court.  Your Honor expected something to happen here.  And

6    instead of them going forward in good faith dealing with the

7    mediation, what they did was write under a paper to you -- and

8    nowhere does it say that the mediation was going to be on June

9    5th.

10           THE COURT:  Well, isn't that something, though, that

11    is better taken up with the federal circuit?  I mean, they're

12    the ones that wanted to have mediation and -- you know, if

13    they're concerned about it, the record could be clear here that

14    I'm not encouraging litigation.  If, in fact there was a

15    failure to conduct the mediation in good faith, that can be

16    brought to the attention of the federal circuit court and they

17    can say go back to mediation.

18            MR. BUTLER:  Your Honor, I agree with you.  I just

19    think that Sonnax calls for an equitable balancing of harm by

20    the Court.  And that when people come before the Court without

21    clean hands the Court ought to take notice of that and say,

22    hey, you know, that's not appropriate.  And I can't imagine

23    that Your Honor expected, after ordering that the stay be

24    lifted to go to mediation that Your Honor expected to entertain

25    a motion to lift the stay before that mediation occurred.


78


1    That's the point.  And, obviously the mediation did fail.

2    The -- we recognize, I'm not arguing about the circuit court

3    being the appropriate court to deal with appellate patent

4    litigation.  There is, I think, as we said in our papers, other

5    harm to the debtors which we've outlined.  But I think the

6    single problem here is when people come in to get motions to

7    lift-stay and the Court grants relief, if people don't follow

8    the relief that's been directed by the Court, I think that the

9    Court, the next time they come in, shouldn't grant the relief.

10   I mean, otherwise, I think it's just open invitation for people

11   to come to this Court for their own agendas to do -- and to

12   ignore the orders of this Court.  That was the problem that we

13   had.  It was beyond disappointing to the debtors that this was

14   approached in the manner in which it was.

15           MR. BATTAGLIA:  Your honor, I'm not going to get into

16    a he-said-she-said with Mr. Butler.  But I think some things

17    have been said about myself and my law firm that need to be

18    addressed.  As Your Honor knows, we've practiced before you on

19    numerous cases, numerous times, numerous attorneys.  I feel

20    that our reputation is stellar.  What we say, we say, what we

21    mean, we mean and that's that.  The reason why this motion was

22    filed was because this motion -- this hearing was originally

23    scheduled to be heard on the 15th.  The only way we could have

24    had this motion heard is if we filed on the 1st.  This hearing

25    was then kicked to the 19th, if we thought we had the time, we

79

1    would have gladly waited.  But that motion was filed

2    prophylactically.  It so happened to be prophetic, but that was

3    not the intention.  My clients went to that mediation to

4    participate in good faith.  As you can see, we want finality

5    here, Your Honor.  If we could have resolved this at the

6    mediation that would have been the preferred resolution for my

7    client.  The reason why we are here is because we are looking

8    for speed and finality.

9            THE COURT:  Okay.  All right, well, I do have some

10    concern given the language used in the renewed motion for

11    relief from the stay that it was not filed on the basis that it

12    was a fall back in case the mediation didn't succeed, but

13    rather, assumed that it was a foregone conclusion that it

14    wouldn't succeed.  But, it's not entirely clear that that's the

15    case and there's no record before me as to whether the

16    mediation itself was one in which ATI actually did negotiate in

17    good faith.

18            So, in light of the report, which I gather is

19    undisputed, that the mediation has ended.  And given that this

20    litigation is at the appellate stage with just briefing and

21   argument to proceed in front of the only court in the country

22   that can determine the appeal, I will lift the automatic stay

23   in light of the Sonnax factors, to permit it to go forward.

24        The record should be very clear, however, that I am

25   doing this not because I believe that it necessarily should go

80

1    forward, and I continue to have a concern that ATI did not

2    pursue the mediation in a way that would have made the

3    mediation work.  So, those issues should, clearly, still be in

4    front of the court of appeals if they want to send the parties

5    back to mediation in light of their own determination of the

6    record.  And they should not take my order as an indication

7    that it's important for Delphi's bankruptcy case to get this

8    matter resolved on the merits.  To the contrary, it seems to me

9    that, particularly with patent litigation of this complexity,

10   that the parties would be well-advised to do all they could to

11   conclude a mediation successfully.  So, you can, Mr. Battaglia,

12   you can submit an order lifting the stay.

13        MR. BATTAGLIA:  Thank you, Your Honor.

14        MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

15   next matter on the agenda, Matter number 18 is the Settlement

16   Procedures Motion at Docket No. 4037.  This is a motion brought

17   under various sections of the bankruptcy code and Bankruptcy

18   Rule number 9019b, seeking authorization of the Court to allow

19   the debtors to compromise or settle certain kinds of claims and

20   controversies without coming back each time for approval.

21        There have been three objections to the motion that

22   have been filed.  The first is the Riverside Claims LLC Motion,

23   rather objection at Docket No. 4154.  The second is a objection

24   of the ad hoc equity committee at Docket No. 4162 saying that

25   both it and the equity committee ought to be involved in this

81

1    process.  And the third is the limited objection of the equity

2    committee Docket No. 40215 saying that the equity committee

3    ought to be involved in this process.

4            We filed two separate responses, one to the Riverside

5    and the ad hoc equity committee, the other to the later

6    objection which was filed last Friday by the equity committee

7    to the equity committee objection.  And those are at 242 and

8    241, respectively.

9            Generally, Your Honor, in terms of the procedures, I

10   don't think the procedures are in significant dispute.  We seek

11   to implement procedures that would allow the settlement of

12   claims in certain commercial transactions that are not in the

13   ordinary course of business.  And there are three kinds of

14   settlements that are excluded.

15           These procedures would not apply to ordinary course

16   matters, they would not apply to settlements that are already

17   authorized under another order of the Court and they would not

18   apply if the debtors compromise or settle dispute outside the

19   ordinary  course  of  business  where  the  final  amount  of

20   compromise or settlements greater than twenty million for

21   general unsecured claims or greater than ten million for pre-

22   petition  secured,  pre-petition  priority  or  post-petition

23   controversies.

24           And you're also, Your Honor, I should point out that

25   there's a separate requirement to bring insider resolutions to

82

1    Your Honor for review and approval.  So this would not, we

2    would not deal with insider claim resolutions under these

3    procedures.

4           It's also important for Your Honor to emphasize that

5    we're not seeking to make payment on any pre-petition claims at

6    this time by this motion, rather this is sort of the beginning

7    of the process of dealing with claims administration.  And

8    we're also not seeking to institute a large scale pre-petition

9    claim for reconciliation process at this time.  In fact, the

10   bar date, as Your Honor knows, doesn't even run until the end

11   of July.  That process will be undertaken in the fall as we

12   begin to sort through the claims process and we have given

13   reports  to  both  the  equity  committee  and  the  creditors'

14   committee about how that process is going to go forward.

15          THE COURT:  In light of that, what is precipitating

16   this motion now?

17          MR. BUTLER:  The fact is, Your Honor, we have lots of

18   things -- because we're not talking about claims administrat --

19   you know, we're not talking about all the claims you have to go

20   through. But they're, in fact, claims to be dealt with right

21   now.  As we begin to start -- we begin to identify them.  We

22   actually have -- we've reported to our committees at our June

23   committee meetings -- we've actually established a claim center

24   that has separate office space in Michigan, begun to staff it,

25   begin to work through it with FTI Consulting, with several

83

1    other organizations and people staffed internally from the

2    company.

3           And there are, you know, with a company of our size

4    there are always disputes that come up.  Both disputes that are

5    post-petition and pre-petition that -- and we don't want to get

6    into an argument of whether it's ordinary course or not

7     ordinary course, on some of these matters we want to be able to

8     go forward with these procedures.  We've used these procedures

9     in other cases, and they seem perfectly -- they seem to us at

10    least, to be advisable here.  As I indicate, nobody is really

11    objecting to the procedures themselves.  It has a lot to do

12    about what kind of notices and reporting and who gets to be

13    involved.

14          THE COURT:  And then the claim center that you're

15    establishing.  Does it assume that there's a process where by

16    someone who has authority to deal with the claim in the first

17    instance, prepare some summary and a recommendation and then

18    that's reviewed by someone else?  Is that, pretty much how it

19    works?

20          MR. BUTLER:  Yeah, I mean that's how that process is

21    going to be working, although it has -- obviously depending on

22    the size of the claim -- different levels of review and

23    different levels of documentation that would be dealt with.

24          THE COURT:   So it -- you'd be generating the

25    information regarding the analysis, even internally?

84

1           MR. BUTLER:  Oh, I think, Your Honor, not only are we

2     going to be generating the information, we have provided --

3     we've actually told both of our statutory committees, including

4     the equity committee that we would be providing them periodic

5     information at the committee meetings.

6           THE COURT:  But I mean, on a per-claim basis.  We'd

7     leave aside the caps for the moment.  There's a memo somewhere

8     on each claim I'm assuming, right?  It's just --

9           MR. BUTLER:  Well there'll be -- whether it's a

10    memo -- there will be documentation supporting the

11    determination of every claim that is dealt with under this

12    program.

13             THE COURT:  Okay.

14             MR. BUTLER:  Clearly yes, Your Honor.  And as I say

15    the settlement procedures here and the actual process here, I

16    don't think, is -- has been objected to by any party.  I think

17    there are four issues that the ad hoc committee in Riverside

18    have raised and a separate issue which, actually, I think the

19    equity committee has raised.  There is a question about whether

20    we've sufficiently identified the classes of controversies that

21    fall within the scope of the procedures.  There is a concern

22    that the settlement procedures provide the debtors too much

23    discretion to effectuate settlements, that is, the argument

24    which is dealt with in -- has been addressed in some courts and

25    not in others -- as to -- individual matters as to whether

85

1    there ought to be some sort of overall basket or diminishing

2    authority as the baskets increase.  Whether additional parties

3    should be added to the list of notice parties under the

4    settlement   procedures   and   whether,   from   Riverside's

5    prospective, we should be required to file quarterly reports of

6    all settlements reached under these procedures.  Your Honor has

7    required that in another case, I believe it was required in the

8    WorldCom case.  It's not been required in a number of other

9    major cases in this district.

10             THE COURT:  But on that one, you've said that you

11    will get an undertaking from every third party that you deal

12    with that they are the proper owner of the claim?

13             MR. BUTLER:  Yes.

14             THE COURT:  -- and they have the authority to

15    negotiate the settlement?

16             MR. BUTLER:  Yes, Your Honor, we will.  What we don't

17    want to do it get into the business of trying to figure out who

18    that is.  We're going to take the undertaking -- there is so

19    much claim trading going on in this case.  Ultimately our view

20    is that the -- you know -- we're going to seek that undertaking

21    from the people that we do business with and, ultimately they

22    have contracts with a third-party because they have been

23    involved in the claim, they'll have to deal with that. But

24    we're going to seek that authority as part of our standard

25    agreement, Your Honor.


86


1         And then the question is, again, you know, in these

2    procedures, what level of authority and who should have it.

3    You know, again, our position has been that these, you know, I

4    believe in terms of the way these procedures work, that this is

5    sort of a routine claims administration process here.  We do

6    not view this to be a transformation issue.  And, therefore we

7    did not include the equity committee in this.  And the real

8    question for Your Honor is, is the equity committee going to

9    be, you know, a full-blown statutory committee that's going to

10   do everything in this case the creditors committee does and be

11   their shadow committee.  You know, everything the creditors'

12   committee looks at, the equity committee is going to look at.

13   We'll pay both committees to look at everything.  We didn't

14   believe, the debtors didn't believe that was the basis on which

15   this Court appointed the equity committee.  And, therefore, we

16   have tried to limit our engagement with them to the issues

17   relating to transformation and we have not included them in a

18   number of what I'll call sort of a periodic reporting and

19   involvement.  Because this isn't just reporting, this is

20   reporting and the ability to take action.  And so -- and, of

21   course the ad hoc committee thinks that they should get the

22    same rights that the equity committee gets.  And, you know, by

23    the way there's an ad hoc trade committee that's forming, and

24    I'm sure we're going to hear from them pretty soon.  And the

25    question really is, you know, for Your Honor, who ought to be

                                    87

1     involved in these processes and when is enough process enough?

2            You know, we meet with our equity committee monthly,

3     we provide them summary information about these matters.  But

4     we didn't believe and we don't believe that we should be

5     engaging them to the same level and regularity on these matters

6     that we engage the creditors' committee.

7            THE COURT:  Is there an issue with just giving a

8     quarterly report of who you settle with?

9            MR. BUTLER:  No, Your Honor.  We have that

10    information.  The question is whether we file that information

11    publicly, whether we -- we intended to give tabular summaries

12    every month to the equity committee in meetings.

13           THE COURT:  Right.  No, I mean, is there an issue

14    giving a public filing of that?  So that claims participators

15    can see if their assignors are settling things that they

16    shouldn't be.

17           MR. BUTLER:  Here's the problem, Your Honor.  And

18    that is, the question is, and I think there's a good reason why

19    that there hasn't been sort of a standard process in this

20    district on that issue.  Because the question is, who does that

21    report benefit?  And I think there's some concern that what it

22    basically does is put a "for sale" sign up for claims traders.

23    They now know which claims have been allowed, and what they've

24    been allowed in, and it allows them to know who to contact to

25    buy the claims.  And so the que -- and it certainly facilitates

88

1    claims trading.  I understand why Riverside wants it.  It'll

2    give them the opportunity to sort of figure out where to go

3    shopping next.

4           And that's the -- and there's a concern -- and also,

5    by the way to the extent it discloses that you can divine from

6    the settlements the types of claims we're addressing, what

7    we're settling them for, and those kinds of issues, that

8    discloses publicly claim strategies that I think -- personally

9    believe and have always believed -- are prejudicial to the

10   estate.  I actually believe that claims administration and the

11   efficient way of handling that, as long as we're consulting,

12   and we believe in this case with the creditors' committee is

13   the  primary  co-fiduciary,  there  is  an  appropriate  claims

14   administration  process  can  add  value  to  the  estate,  can

15   preserve value to the estate.  And the strategy one employs in

16   that ought not be open for public inspection.

17          I understand the other end of that is that, you know,

18   people should say well, gee, 9019 should go on separate motion

19   to the Court.  And no large case requires that, because it

20   would inundate Your Honor to do that. But, I mean that's the

21   concern.  The quarterly reporting, which I know has happened,

22   as I said I recognized Your Honor in this Court and I

23   recognized has occurred in WorldCom but did not occur in a

24   number of other major cases in this district -- really is done

25   for the facilitation and convenience of claims traders.  And

89

1    the question is whether that's what the Court thinks that

2    there's a sufficient -- that when balancing it, that that is --

3    the  balancing  of  that  is  sufficient  to  require  public

4    disclosure by the debtors of the process in which we're dealing

5    with claims administration.

6           THE COURT:  Okay.

7           MR. BUTLER:  Thank you, Your Honor.

8           MR. KURTZ:  Good morning, Your Honor.  Glenn Kurtz of

9    White & Case on behalf of the ad hoc committee of equity

10   holders.  I don't think Mr. Butler is entirely accurate in

11   saying that nobody really contests the procedures.  We

12   certainly believe that the procedures are unauthorized by

13   statute.  However, we believe on a consensual basis this can be

14   done and we suggested the way that we would provide consent,

15   which is basically to provide us notice and the same

16   opportunity to object that other parties have here.

17          I'd also, generally want to start by pointing out

18   that there is no precedent for the settlement procedure.  There

19   certainly are other examples of it.  To the best of our

20   research, and Your Honor will know this from Parmalat, will

21   certainly know whether we're wrong or not, we can find no

22   objections and certainly no discussions of these issues.  They

23   go in on a consensual basis and, as I'm going to get to, these

24   can go in on a consensual basis.  I'd also note that this

25   particular settlement procedural order goes beyond any other


90


1    procedural order I've seen, including in Parmalat, by factors

2    of multiples with respect to the thresholds that the debtors

3    seek to be able to settle without providing any information to

4    anybody.  And that, lastly, just as a general matter before I

5    go into the particulars, the notion that significant parties in

6    interest shouldn't have a notice of claims and how they're

7    being resolved because, according to Mr. Butler they're not

8    transformational, we disagree with completely.  Claims can be

9    billions of dollars in value and we care very dearly about

10   making sure that those are handled in an efficient way and in a

11   fair way.

12          There are basically two triggers here that we care

13   about, and the first one is the ability of the debtors to

14   settle for up to a million dollars, claims with no aggregate

15   cap.  We have some concern that the debtors haven't put in a

16   record  as  to  what  the  claim  universe  is,  as  to  what

17   distribution of claims in the aggregate could amount to, up to

18   a million dollars.  We are before the bar order date, unlike

19   Parmalat, Your Honor entered this order after the bar date.

20   And so, we don't think debtors did or can sustain their burden

21   of showing that there would be some sort of administrative

22   convenience  that  would  outweigh  notice  to  other  parties

23   associated with the 9019b.  But we do recognize that there are

24   efficiencies  in  allowing  the  debtor  to  effect  settlement

25   without further court order.  And although we don't know

91

1    whether a million dollars is the right number, we're sort of

2    prepared, in the interest of cooperation to agree to that with

3    a couple of clarifications.

4           Your Honor may or may not recall that the number that

5    was used as a threshold for settlements without judicial review

6    in Parmalat was twenty-five thousand dollars which is a small

7    fraction of the number here.  Our only real concern with

8    respect to the million dollar number is that it not be a way to

9    settle claims that are similarly situated in a piecemeal

10   fashion.  So that we wanted clarification that it doesn't pick

11   up something like a labor dispute, where arguably, under some

12   stretch of law, individual employees would have claims and that

13   those claims would all be under a million dollars, but in the

14    aggregate could amount to billions of dollars.  And, likewise,

15    there is some notion of environmental claims.  And although I

16    again think there's some substantial legal issues, that would

17    be associated with it, we want to ensure that you can't settle

18    out thousands of individual personal injury claims arising out

19    of some sort of similar situation like a mass tort, and,

20    thereby effect billions of dollars worth of liability on claims

21    that otherwise look like they had a reasonably low threshold.

22            So the first part we effectively agree with, subject

23    to clarifying that we can't find ourselves in the high hundreds

24    of millions, if not billions of dollars of liability without

25    any oversight whatsoever.


92


1            The second trigger, and one that we also are very

2    concerned with, is the form of relief that allows the debtor to

3    settle the claims between a million and twenty-million with

4    notice to some parties but certainly not to anybody I represent

5    or to the equity committee.  And in that respect, I'd remind

6    the Court that we're representing parties that hold some

7    twenty-two percent of the equity and some two-hundred million

8    dollars in sub-debt.  So they have a significant interest in

9    the  case.   The  debtors,  again,  have  the  same  sort  of

10    evidentiary shortfalls but ones that, again, we're prepared to

11    live with so long as we're entitled to receive notice and an

12    opportunity to object if that's appropriate.

13            There is no other claims procedure order I can find

14    that  comes  close  to  allowing  twenty-million  dollars  of

15    authority.  The debtors have said in Court, they've said in

16    their papers that there's some burden in providing notice to

17    the ad hoc equity committee.  That's not right, I mean, it will

18    take a matter of minutes to type in three or four email

19    addresses and put it on the distribution list that will be set

20    up for purposes of notifying parties under any order Your Honor

21    enters with respect to settlements.  The equity committee was a

22    little more forward in the way they characterized the equity

23    committee concern, and that was, they don't want the equity

24    committee to have an opportunity to look at these issues and be

25    heard on them.  And I suggest to Your Honor that 9019b may


                                                        93


1    arguably have some administrative convenience facet to it but

2    most certainly it is not a vehicle pursuant to which the debtor

3    should be able to maintain a secret, significant settlements in

4    order to avoid a dispute.  I don't think 9019b can be used to

5    avoid disputes, but rather to avoid administrative burden.  And

6    the burden associated with seeking seriate motions to approve,

7    not the burden of actually litigating an issue that a party

8    would raise.  So I don't think under any circumstance that they

9    should be able to rely on that sort of interest.

10        And I raise all this because I'm trying to create a

11    way that the debtors get what they want and we get what we want

12    and it's a transparent process, and nobody has to test 9019.

13    But I do want to note that, without any assurance that's what's

14    happening that I don't think this is permitted under 9019.

15    9019 is obviously a statutory section providing for judicial

16    approval of claim settlements.  9019a addresses single cases,

17    and there's a lot of law on it.  They direct that the court has

18    to engage in a detailed review, not a de novo trial, but a

19    detailed review of the merits of the claim, the damages, the

20    potential defenses and the like before blessing a settlement.

21        9019b which has very little case law expands that to

22    a number of cases and calls them classes.  We submit that a

23    class of cases in using its common parlance are cases with

24    similar subject matter.  I recognize that some of the cases

25    that have not received objections and have not been adjudicated


94


1    have adopted financial thresholds.  I don't think that's right.

2    I think that 1, if Congress wanted to have financial

3    thresholds, they could have adopted those.  They could have

4    said for administrative convenience, depending upon the size of

5    the claim and the debtor, you could apply for a delegation of

6    judicial authority but they don't do that.

7            As I mentioned in common parlance, classes are

8    similarly situated claims, Rule 23, in bankruptcy court the

9    plan processes in the voting classes.  I don't know any

10   precedent for a class being a matter of a financial threshold.

11   And then, most significantly, I think, that it's fundamentally

12   illogical to suggest that 9019a requires judicial oversight and

13   review of a single settlement, but that 9019b was intended to

14   apply to a whole number of settlements, a large body, with no

15   judicial review whatsoever other than the initial financial

16   threshold which here are set very high at twenty million and

17   under.

18           So, Your Honor, I think that absent an agreement that

19   the debtors don't have authority to do what they're doing and,

20   as I've outlined, for a very reasonable cost of typing in a

21   couple of e-mail addresses, we don't have the objection.

22   Notwithstanding the fact that the debtors have not shared with

23   us any information about the aggregate number or amount of

24   claims that could fall within their initial million dollar non-

25   reviewed discretion and the twenty million dollar which get to


95

1   review.  But we're on an expedited basis:  ten day's notice to

2   object.

3           THE COURT:  Okay.

4           MR. KURTZ:  Thank you, Judge.

5           MS. ABDELMASIEH:    Good  afternoon,  Your  Honor,

6   Elizabeth Abdelmasieh on behalf of Riverside Claims, LLC.  Our

7   objection was limited based upon two issues, one of which was

8   addressed by the debtor in its omnibus response.  So, we have

9   the representation that they will negotiate only with the

10  rightful owner of the claim and, we're fine with that.

11          With respect to the second issue, addressed in our

12  objection, it deals with notice of settled cases.  And the

13  debtor, in its motion and in its omnibus response relies on

14  orders entered in the WorldCom case and the Parmalat case, both

15  of which are cases in which the debtors in those cases provided

16  periodic notice filed on the docket for creditors and other

17  parties in interest to review.  Delphi believes that if they

18  were to follow suit and file similar reports with the court

19  that information would be used against them by other creditors

20  and also by claims traders to know where to go shopping next.

21          It's our position that the facts and circumstances of

22  each case are different and it's up to the debtor to prove that

23  in each case that they settle, that the creditors who are in

24  similar classes are not so similarly situated.

25          We believe that there is no reason why the debtor


96


1   needs to shroud their settlement procedures in secrecy and

2   provide no notice to creditors or other parties in interest in

3   this case.  If you look at the debtors' omnibus response they

4   cite that the public information could be used to their

5    detriment in potential discussions with other creditors.  And

6    they also say that the creditors' committee will provide

7    sufficient oversight.

8         We're not asking for the opportunity to review and

9    object to each of the debtors' settlements, we're merely asking

10   for information in this case.  And not just to know where to go

11   shopping next, but, as creditors, by whatever mechanism that we

12   are creditors, we do have a right to know what's going on in

13   this case and what the debtors are doing with respect to

14   settlement of claims.

15        I believe debtors' counsel just represented that its

16   claims agent will be keeping information on a per claim basis,

17   but we believe would be very easily transferred into a report

18   that could be filed with this Court.

19        THE COURT:  But, what purpose would that serve, if it

20   was after-the-fact?

21        MS. ABDELMEIEL:  After-the-fact it would affect our

22   rights under assignments of claims that we've entered into with

23   other parties, and merely just for informational purposes.

24   Also,  to  know,  we  have  a  monetary,  financial,  pecuniary

25   interest in the case.  Knowing what types of settlements the


97


1    debtor is entering into, that affects what the payout to us

2    might be, since we have a pecuniary interest in that respect.

3         THE COURT:  Okay.

4         MS. ABDELMASIEH:  Thank you.

5         MS. STEINGART:  Good afternoon, Your Honor, Bonnie

6    Steingart again on behalf of the equity committee.  We've heard

7    argument already, on certain of the statutory points that have

8    significance here.  But the equity committee is basing its

9    objection on the debtors' failure to include it in the notice

10   provisions in this order which provides for a great span of

11   authority for the debtor to settle all sorts of claims.

12        Mr. Butler  is  fond  of  saying,  well,  not

13   transformational, not transformational.  Your Honor, my view,

14   again is, whose decision is that?  I think that the committee

15   needs to have counsel as to which of the claims that are being

16   settled go to transformational issues, which don't go to

17   transformational issues.  Again, the ability to review the

18   settlements does not mean that we are going to exercise rights

19   we have to object, willy-nilly.  I think that, to the extent

20   that the committee is there, and to the extent that the

21   committee is there to address issues that go to transformation,

22   that go to plants and how the plants operate on a sort of macro

23   basis, on the kinds of businesses the debtor is in or the

24   debtor is exiting, on the kind of arrangements it's making with

25   major suppliers, how it deals with major claims, whether those


                                        98


1   be bundled or unbundled, Your Honor.  There may be five or six

2   or seven or eight or nine claims that may be under twenty

3   million but are of the type, taken together, do hearken to a

4   transformational issue.

5        This is -- this gives the committee the right to make

6   that determination and, if necessary, to be heard on it.  It's

7   not an issue where we will be looking to find reasons to

8   question the debtors' discretion.  I think all of us will be

9   relieved when the debtor has procedures in place and does these

10   things in an orderly way.

11        As to the debtors' monthly reporting, the debtor has

12   been meeting with the equity committee and with the creditors'

13   committee monthly.  These are voluntary meetings that can occur

14   or not occur to the extent that the debtor has time, has

https://vip21.veritextllc.com/myfiles/473455/119921.TXT

15    inclination based on other things that occur in the case.  The

16    fact that Mr. Butler refers to these repeatedly in saying,

17    well, these people are in the loop, I think just goes to show

18    that there are issues being dealt with by the debtor in the

19    context of settlement agreements, and in the context of other

20    matters that the equity committee should be aware of, and

21    should have the opportunity if need be.

22          In the unlikely event, I might add Your Honor, that

23    need be to sort of say, this is a transformational issue that's

24    being dealt with in a manner that we have an issue with.  And

25    to be able to bring before the court that issue.  I think that


                                           99


1    the debtor here has asked for shortened notice, shortened

2    review and we certainly do not take issue with this if, from

3    the debtors' point of view that facilitates its administration

4    of these kinds of claims.  But the numbers do get big, Your

5    Honor.  And I think as we've seen with the sale motion that we

6    have here, or other motions, sometimes you have under the

7    twenty  million  dollar  number,  questions  that  deal  with

8    transformational activities.

9          So, I think that, when we look at this and we look at

10    this kind of an omnibus order that deals with an important

11    aspect of how the debtor is dealing with pre-petition claims

12    and its business as a whole, that the committee should be

13    getting notice and should be able to participate to the extent

14    it determines is necessary in objecting to such claims.

15          MR. BUTLER:  Ms. Steingart has just given the Court,

16    I think, a sort of an eloquent explanation of the difference of

17    views between the debtors and the equity committee on the

18    claims process.  Should the equity committee be involved, you

19    know, in every way in the claims process.  Because, you know,

https://vip21.veritextllc.com/myfiles/473455/119921.TXT

20    we keep coming back to this, what's our remedy to be.  How are

21    we going to object to a fee application where they -- if Your

22    Honor allows them this involvement, then they're going to have

23    self-justified looking at every claim that comes their way.

24    Because how could they otherwise make the decision about

25    whether it involves their attention?


                                        100


1              And so we did not understand that the Court's

2    appointment of the equity committee was a pervasive as is

3    apparently being construed by the committee itself.  Because

4    under their definition, everything is a transformation issue.

5    And we're going to see that, as we see through their pleadings

6    today.  So all -- every settlement we make, no matter what

7    size, no matter what it covers, they ought to be able to review

8    and make a decision about.  And she says, whose choice is it,

9    Your Honor, I thought it was your choice.  I thought that the

10   Court, when it issued its opinion, set out clear parameters and

11   Your Honor's obviously because it's your choice and because you

12   preside over these cases, Your Honor can make it whatever Your

13   Honor wants it to be and we'll respect it and we'll do exactly

14   whatever you ask us to do.  But the reason that we did not

15   include the equity committee in this process or in the lift-

16   stay process, because they filed a similar objection they

17   wanted to look at all the lift-stays too, that's the next

18   motion.  And they should have a review on every lift-stay as

19   well.  We did not include them because we did not believe as we

20   read and reread and reread your March 23rd opinion, we didn't

21   believe that it contemplated this level of involvement in

22   claims matters.

23             As for the ad hoc committee in Appaloosa, I

24   acknowledge freely on this record, Your Honor, we have not had

25    the best track record of reaching agreements with Appaloosa

101

1    during the course of this case on much of anything.  We're

2    working on that but, in fact, you know, I don't think that if

3    Your Honor is inclined to have any committee review here, I

4    don't think there should be two equity committees taking a look

5    at this.  I mean, otherwise why, you know, otherwise let's just

6    disband the --

7            THE COURT:  Well Appaloosa's not being paid by the

8    estate so, arguably --

9            MR. BUTLER:  Not yet, Your Honor.  That application's

10   coming.  We will, I have no doubt, but that the ad hoc

11   committee  is  going  to  file  a  substantial  contribution

12   application before this case is out.  So the debtors will be in

13   this Court, that we'll be facing that issue at some point in

14   the future.

15           But that's what the issue is.  And maybe, you know,

16   some of these conflicts could be resolved, Your Honor if we got

17   guidance from Your Honor as to what level you want them

18   involved in.  If the equity committee is to be a full-blown

19   statutory committee, we get that.  We know how to deal with

20   committees in that manner.  We had thought that your opinion

21   was actually much more limited in focus.  And that's why we've

22   responded as we have.

23           THE COURT:  Okay.  I have a motion in front of me

24   which essentially is under Bankruptcy Code Sections 105 and 363

25   as well as Bankruptcy Rule 9019b, which provides that "after a

102

1    hearing on such notice as the court may direct, the court may

2    fix a class or classes of controversies and authorize the

3    trustee to compromise or settle controversies within such class

4    or classes without further hearing or notice."  Now, to some

5    extent, it's also under Rule 9019a and Rule 2002a(3), which

6    deal with compromises and settlements of individual disputes

7    and notice thereof.

8            The motion seeks to set various hurdles in which the

9    debtor has to provide various levels of notice to various

10    parties or at the lowest hurdle, provide no advanced notice but

11    subsequent reporting to certain parties in the case -- of

12    compromises and settlements that it is proposing to enter into,

13    or in the case of the lowest number has entered into.

14            The rationale for the motion is that with regard to

15    this very active and extensive set of operating businesses to

16    require the debtors to comply with Bankruptcy Rule 2002a3 would

17    be enormously expensive and not in the light of the cost in the

18    best interest of the estate.  That is, with regard to certain

19    categories of settlements providing notice to all creditors, as

20    required by a3, subject to the proviso in a3 which says "unless

21    the Court, for cause shown directs that notice not be sent"

22    would be not worth the candle and, consequently would not be in

23    the best interest of the estate.

24            The debtor is not writing on a blank slate here.

25    Courts in a number of cases across the country have approved


                                    103


1    authorization in advance for settlements, either on no notice

2    with subsequent reporting or on limited notice to various

3    parties-in-interest in the case.  And the debtors have attached

4    two such orders -- actually three such orders -- to its papers:

5    in the WorldCom Case the Parmalat Case and the K-Mart Case.

6            The objections go both to the threshold categories in

7    the proposed procedures as well as to the notice points.  Let

8    me deal with the threshold categories first.  I think that in

9    three respects the notice -- I'm sorry, the procedures need to

10   be modified.  The first is that, consistent with both the

11   Parmalat and the WorldCom Orders, in addition to having a

12   threshold or a series of thresholds for the claims that are

13   being settled, there should be, in each case a threshold for

14   the amount of the settlement, i.e., the amount that was

15   actually in dispute.  Because you can see that both in the

16   Parmalat Order that I entered and Judge Gonzalez's WorldCom

17   Order.  He uses the phrase "documented difference."  Which is

18   really the spread between the bid and the ask in the settlement

19   negotiation, because sometimes that's what's significant as

20   opposed to the overall claim.  Secondly, as Mr. Kurtz said,

21   there should be a provision here consistent with what I believe

22   is in the Parmalat Order for settlements that are really

23   aggregate settlements.  So that you can't do a bunch of little

24   ones that are just below the threshold, but they're really --

25   it's really one overall deal, which would carry it above the

                                          104

1    threshold.

2             And then, third, I -- at least on this record, which

3    is before the bar date and without any real sense on my part of

4    what's actually out there as far as claims that will be in

5    dispute, I'm uncomfortable with the twenty million dollar

6    threshold.  I think you should go with the amounts that are in

7    the WorldCom Order on that score.  Which sets, as you do for

8    unsecured claims, the one million dollar threshold and a five

9    million dollar threshold for the notice parties.  If it turns

10   out that that's too low, you can certainly come back and we can

11   deal with it.  But I don't think the record supports twenty

12    million dollars here, at this point.

13           The second issue is the -- who are the notice

14    parties.  And in that regard I do look at the Appaloosa group's

15    objection  differently  than  I  do  at  the  equity  committee

16    objection, because the equity committee really was  formed with

17    a specific role in mind and specific limitations recognizing

18    that their role in compensation is just subject to different

19    rules than individual shareholders and creditors.  To my mind

20    that means that the only settlements that the equity committee

21    should be included in the notice party group on, are those

22    involving labor or employee claims or those made -- and those

23    made in the context of the shut down or wind down or partial

24    closure of a plant or a business.  Because those are the types

25    of issues that I thought they should be focusing on.


                                          105


1           That may include customer claims, because in the

2    context of a wind-down of a business you may have to deal with

3    a customer in some respect, but it's only in that context.

4           As far as Appaloosa is concerned, I think that it

5    makes sense to give them notice of claims against the parent

6    company, which is, I believe where they have their own equity

7    interest in their debt interest.  Particularly given the fact

8    that there weren't other parties asking for that type of

9    notice, and given the fact that I look at 503b applications

10   pretty narrowly, as people tell you, in the Loral Case, for

11   example.  But I think it's -- particularly given that the

12   debtor will have some form of documentation as part of its own

13   processing in doing the settlement that that shouldn't be

14   particularly burdensome.

15          If, for some reason Appaloosa uses this in a way that

16   I think is inappropriate, we can deal with that at the time,

17    but I will not assume that that's going to happen.

18            As far as the periodic reporting is concerned, given

19    the limitation on the threshold amounts -- the reduction of the

20    threshold amounts that I provided in the reporting to the

21    creditors' committee -- I don't think it's necessary to have

22    the public reporting of the settlements.  And I can see how

23    that public reporting may adversely affect all the creditors in

24    the estate, as Mr. Butler discussed.  And I think that the

25    creditors' committee in the exercise of its fiduciary duties


                                    106


1    can  adequately  represent  the  creditors  in  reviewing  the

2    settlements in the aggregate to determine if the debtor is

3    going off in some direction that doesn't make sense.

4            So with those modifications I'll approve the motion.

5            MR. BUTLER:  Thank you, Your Honor.  Can I ask two

6    clarifications?  With respect to the information given to the

7    ad hoc committee, the membership in that committee is ever-

8    evolving.  Can the information --

9            THE COURT:  Well I would assume it would go to

10    counsel

11            MR. BUTLER:  Oh, for counsel eyes only?

12            THE COURT:  Yeah, yes.   And if White & Case has some

13    issue with that as it actually works in practice, you can come

14    back  to  me,  but  it  seems  to  me  it's  really  a  counsel

15    determination largely anyway, so.

16            MR. BUTLER:  Thank you.  And the other point, Your

17    Honor, just on the issues that we are sending to the equity

18    committee that are transformational in nature relating to

19    employees or wind-downs -- and I know by customers, I think I

20    understood that -- but wind-downs of plants.  I just want to

21    understan -- get some understanding of where that line is.

22    Because, for example, suppliers, our suppliers are -- part

23    of -- some of the people will be doing settlements with our

24    suppliers.  Our suppliers supply all kinds of plants, including

25    some that are closing --


                                        107


1     THE COURT:  No, it's only if the claim arises in the

2     context  of  a  wind-down;  if  the  wind-down  implicates  the

3     settlement in a material way.

4     MR. BUTLER:  Thank you, Your Honor.  We'll prepare a

5     revised order and submit it, Your Honor.

6     THE COURT:  Okay.  And you should circulate that to

7     the objectors.  Okay.  Well, the lift-stay procedures are

8     pretty close to that, I guess, but.

9     MR.  BUTLER:    So,  so  here  come  the  lift-stay

10    procedures, Your Honor.

11    THE COURT:  Okay.

12    MR. BUTLER:  Matter Number 19 on the record, rather,

13    on the agenda and they're at Docket No. 4038 in the, here in

14    the docket.  Your Honor, the lift-stay procedures again, three

15    objections filed.  I don't believe, and counsel for the O'Neill

16    claimants is here at document 4173 it's not clear to me, based

17    on our discussions of them that he's going forward with his

18    objection because these are voluntary procedures.  So I, we

19    can't be ordered to do this.

20    THE COURT:  Right.

21    MR. BUTLER:  With respect to ACE American Insurance

22    Company, Docket No. 4205, my understanding is if the form of

23    order or something substantially in accordance with the form of

24    order that we presented, but has been amended is --

25    THE COURT:  The blackline that you gave us?

108

1              MR. BUTLER:  They're okay, yes, Your Honor.

2              THE COURT:  Okay.

3              MR. BUTLER:  I believe ACE is okay.  That leaves us,

4    I've got a note from counsel over there today, so that's -- ACE

5    is okay.

6              THE COURT:  Okay.

7              MR. BUTLER:  So that leaves us with the equity

8    committee saying that they should be in the business of lift

9    stay, the lift-stay process.  And the, I think what they're

10   focused on, Your Honor, is there are lift-stay procedures here

11   that deal with, you know, how we would negotiate mediation.

12   How the insurance policies would reach.

13             And by the way, I should point out, Your Honor, just,

14   because this sort of makes the point about the fact that we

15   have the first funding -- the debtors have the first funding of

16   these claims for the most part.  Under these particular set of

17   procedures, you'll notice that Paragraph 5 of the procedures

18   require that the insurers be released.  That's sort of the flip

19   side of what these normally are.  Most lift-stay procedures

20   I've dealt with in my career, it usually is, release the estate

21   and you can go after the insurance.  These procedures are the

22   exact opposite because we fund that first layer -- million

23   dollar layer.  And we anticipate either mediated settlements

24   here, they would be for -- you know they would be pre-petition

25   claims, you wouldn't get into this fund at the moment the way

109

1    this is designed up.  So that there is a reversal of what is,

2    at least intuitive to me, in the normal procedures.

3          And then, what I think the equity committee is

4     focused on is our settlement authority and court approval for

5     dealing with these matters, all of which relate to essentially

6     under the applicable deductible in the insurance program we

7     have five hundred thousand dollars or less if the claim would

8     be a pre-petition general unsecured non-priority claim equal to

9     five hundred thousand or less, then we could resolve that

10    without the involvement of other parties.  And if a settlement

11    was in a sum greater than five hundred thousand but less than

12    the applicable deductible under the insurance program, we would

13    give notice to the notice parties.  And that, again, was the

14    lenders because of their secured interests in the creditors'

15    committee and did not include the equity committee and we would

16    have the same kind of mechanics as we've had before as it

17    relates to this.  And the balance of this I don't think anyone

18    has   taken   any   particular   objection   to   in   terms   of   the

19    procedures we're proposing.  Again, we didn't put the equity

20    committee in the place of making lift-stay determinations

21    because we thought it was outside the scope of their retention.

22    And that was the basis for that -- for not being in agreement

23    with that.

24          THE COURT:  Okay.

25          MS.  STEINGART:    Thank  you,  Your  Honor,  Bonnie


                                   110


1     Steingart.  Our objection to this omnibus kind of order is the

2     same as the basis for the objection to the others.  I do want

3     to make it clear to the Court that it is not our understanding

4     of our role or our purpose to be a shadow committee.  The

5     equity committee has its own issues and, I think, should be in

6     a  position  to  make  a  determination  with  respect  to  the

7     activities that the debtor undertakes as to whether there are

8      transformational issues at stake and whether it would be

9      important for us to have the Court hear us on those matters.

10     Thank You.

11            THE COURT:  Okay, all right.  I note the changes to

12     the order that clarify that this is really just dealing with

13     the deductible or SAR portion and that the mediation itself is

14     voluntary.  And so, I think the only remaining issue is the

15     notice party issue.  And I'm going to issue the same type of

16     ruling, which is that, to the extent that -- and I imagine it

17     would be pretty limited in this case -- these lift-stay issues

18     go to labor employee issues, or -- and this is much more

19     likely -- to the extent that they'll go to anything within the

20     equity committee's purview.  Issues respecting the wind-down of

21     plants or businesses or divisions or the termination of them,

22     then the equity committee should be on the notice party list.

23            MR. BUTLER:  We'll make that adjustment, Your Honor.

24            THE COURT:  Okay.  These amounts obviously are fine

25     because they are within the deductible and I'm comfortable with


                                    111


1      the amounts stated.

2             MR. BUTLER:  Thank you, Your Honor.

3             THE COURT:  Okay.

4             MR. BUTLER:  Your Honor, I think that resolves all of

5      the matters on the agenda, other than the New Brunswick

6      Transfer Motion.  It's approaching 1 o'clock, I want to get

7      guidance from Your Honor as to -- whether the Court is --

8             THE COURT:  Well, on this one, there's the objection

9      by Wilmington Trust.  And, have you resolved the United States'

10     issue?

11            MR. BUTLER:  We have, Your Honor.

12            THE COURT:  Okay --

13          MR. BUTLER:  That was indicated in our response --

14          THE COURT:  I thought I saw that.  Have you discussed

15     the issue of reserving rights as to claims over in respect to

16     the, you know, the inter-company claim issue that Wilmington

17     Trust raises?  That, even though, you know, obviously what the

18     motion contemplates is that Delphi Corp. will make the payment,

19     to the extent it's making the payment as opposed to the buyer

20     or GM that its rights are fully preserved as against DAS.

21          MR. BUTLER:  Your Honor, there's nothing in the order

22     that would not preserve any rights that exist.  The problem we

23     have here is that -- and it has come up now in a series of

24     motions -- is that Wilmington Trust, which represents bonds at

25     the parent company, who bought subject to labor claims at the


112


1      parent company have repeatedly -- and I suspect will in the

2      future -- file objections on every single conceivable motion we

3      file, that suggest that somehow these claims belong in other

4      places.

5          And, you know, the offering memoranda, the 10K, the

6      documents are clear as to the fact these bonds bought subject

7      to these claims.  And it doesn't seem to me that a sale motion

8      involving the sale of a plant, the business judgment which

9      nobody is disputing other than Wilmington Trust, where

10     Wilmington Trust says that the parent company -- acknowledges

11     the parent company owns these C collective bargaining

12     agreements, owns the OPEB obligations, owns the pension

13     obligation and has negotiated an attrition program where the

14     debtor, where Delphi Corporation is obtained reimbursement of a

15     substantial amount of that from third parties, that that's

16     somehow a breach of reasonable business judgment, Your Honor.

17     And it's not.

18          THE COURT:  Well, no.  But I -- but leaving that

19   aside, since you're not seeking -- today you're not seeking a

20   determination either that, you know, forever and a day, that

21   Delphi Corp. wouldn't have some sort form of inter-company

22   claim.  So my issue is -- my question is, is that simply enough

23   to resolve this or is there a sufficient concern that DAS may

24   never be able to pay the money back that -- we actually have to

25   deal with this issue.


                                        113


1           MR. FOX:  May I, Your Honor?  Edward Fox from

2    Kirkpatrick & Lockhart on behalf of Wilmington Trust.  Your

3    Honor, we did have a discussion with Mr. Meisler and not with

4    Mr. Butler about the possibility of leaving to another day the

5    determination as to which would be the proper party to be

6    responsible  for  making  these  payments.   And  it  was  my

7    understanding that Mr. Butler was not inclined to leave that

8    issue open.  What's happened here, though, is I think we're

9    moving away from the possibility of being able to leave these

10   issues open with respect to which is the responsible party,

11   particularly in light of the debtors' reply papers that were

12   filed Friday.

13          We raised the issue, and the debtors actually raised

14   this in the 1113 hearing in their omnibus reply, and they said

15   then that the parties needn't worry necessarily about whether

16   claims would come back against the estates by virtue of -- if

17   the 1113 motion were granted.  And they cited the Continental

18   Airlines Case, which we also cited, for the proposition that

19   rejection  of  the  collective  bargaining  agreements  isn't

20   necessarily going to cause a claim to be asserted against the

21   estates.  We believe that that argument holds here.  But now,

22   in its reply, the debtor has said specifically that Delphi

23    Corporation is responsible to, I guess, make good on these

24    obligations under the --

25            THE COURT:  I just think you all are getting ahead of

114

1    yourselves.  I mean, unless it's -- and I would find this hard

2    to believe, because if it truly is the case that DAS, you know,

3    isn't potentially good for some portion of this, if, in fact it

4    turned out down the road that it should be paying some portion

5    of it, then, they couldn't pay it today either, because it, you

6    know, it'd be in such bad shape that it couldn't pay it today,

7    so -- and it seems to me the transaction itself has some -- I

8    mean no one's really contradicted the fact that this plant is a

9    loser -- you know, is losing money hand over fist, so -- it

10    just strikes me that if you want to get into which of these

11    debtors ultimately is legally responsible it should be done in

12    a different setting than this.  And, hopefully it won't ever be

13    done.  And that way the transaction can occur and both estates

14    can be relieved of the costs to the extent that they are liable

15    for it.

16            MR. FOX:  We wouldn't necessarily be adverse to that,

17    Your Honor.

18            THE COURT:  Okay.  Well, do you want to talk that

19    over for a few minutes and then, with your respective sides

20    and --

21            MR. FOX:  Be happy to do that.

22            THE COURT:  Okay. Okay, so I'll take a break until

23    about five after.

24            MR. BUTLER:  Thank you, Your Honor.

25        (Recess from 12:57 p.m. until 1:15 p.m.)

115

1          THE COURT:  Please be seated.  Okay, we're back on

2     the record in Delphi.

3          MR. BUTLER:  Your Honor, the next and last matter on

4     today's omnibus agenda is the New Brunswick Transfer Motion, at

5     Docket No. 3927.  Pursuant to this motion, the debtors seek

6     authority to sell their battery manufacturing facility in New

7     Brunswick, New Jersey to JCI free and clear of liens, claims

8     and encumbrances; to transition a supply of batteries to JCI

9     from the debtors' manufacturing facility in Fitzgerald, Georgia

10    and to implement an attrition plan with the IUE/CWA for the

11    employees in the New Brunswick facility.

12         Just one note, Your Honor, that program, I want the

13    Court to be aware that that program -- the attrition program as

14    described in the motion -- will change in some respects because

15    of the global IUE/CWA attrition plan agreement that was reached

16    over the weekend.  There was a most-favored-nations clause in

17    this program that captures parts of that program.  And so, for

18    example,  there  will  be  some  additional  opportunities  for

19    IUE/CWA folks, if you approve the subsequent program that are

20    in New Brunswick to have expanded opportunities in the next

21    motion.  And we are -- you understand that -- and there are

22    also, some less favorable terms as a result of this.  So I just

23    want the Court to be aware that there will be some modification

24    of this program.  It's all been negotiated with the IUE/CWA,

25    but there -- understand that there are some modifications.


116


1          THE COURT:  All right.  But for purposes of this

2     motion, what's in front of me is the attrition program that was

3     previously agreed to.

4          MR. BUTLER:  Correct, Your Honor.  It's simply -- I

5       just wanted to -- we will --

6              THE COURT:  Right.

7              MR. BUTLER:  -- when we're before you on the 29th and

8       Your Honor chooses to approve that program it will

9       automatically cause there to be modifications to this program.

10             THE COURT:  Okay.  And the GM contribution to it is,

11      again, as set forth in the papers?

12             MR. BUTLER:  Yes, Your Honor.

13             THE COURT:  Okay.

14             MR. BUTLER:  Your Honor, there have been two

15      objections that have been filed to this.  One -- there was

16      first the objection of the United States Department of Justice

17      on behalf of the United States Environmental Protection Agency

18      filed a Docket No. 4116.  That matter has been resolved by a

19      new Paragraph 32 to the motion.  I'm not going to read that

20      into the record, Your Honor has a copy of it --

21             THE COURT:  All right.

22             MR. BUTLER:  -- but it's acceptable to the

23      government, to JCI and to the debtors.

24             THE COURT:  Okay.  I did -- during the break I

25      reviewed it and, that's fine.


                                         117


1              MR. BUTLER:  Your Honor, with respect to Wilmington

2       Trust Corporation's objection, the parties have agreed to

3       resolve that objection in the following manner.  First, we

4       would add a paragraph to the order that would provide that --

5       the entry of the order would be without prejudice for

6       Wilmington Trust to later assert that there should be a claims

7       over against DAS, against the subsidiary, Delphi Automotive

8       Systems LLC, that that claims over agrees and there will be a

9       full reservation of rights of all parties, including the

```
10    debtors and statutory committees and the IUE/CWA with respect

11    to that assertion.

12           THE COURT:  And the claim over would be by Delphi

13    Corporation?

14           MR. BUTLER:  Correct.

15           THE COURT:  If it existed.

16           MR. BUTLER:  Correct.  Second, Your Honor, there

17    also -- we would agree that the fact that Your Honor is

18    entering this order today and authorizing Delphi Corporation to

19    perform in the manner in which it's performing and approving

20    the business judgment of Delphi Corporation that you are

21    approving.  We would not use that precedentially against

22    Wilmington Trust in any contested hearings in the future if

23    they raise similar objections.  And we've agreed to that as

24    well.

25           THE COURT:  Okay.
```

118

```
1            MR. BUTLER:  Your Honor, those, and Wilmington agrees

2    that they will take no appeal from this order.

3            THE COURT:  Okay.

4            MR. FOX:  Your Honor, subject to seeing the actual

5    language of the order when this is put into it, that reflects

6    the understanding.

7            THE COURT:  All right, as long as it's consistent

8    with what was just laid out, I --

9            MR. FOX:  Yes.

10           THE COURT:  Okay, very well.  All right, does any one

11   else want to say anything on the motion?  I've reviewed it, and

12   I don't think anyone disputes, and I agree that it's within the

13   debtors' business judgment to enter into this series of

14   arrangements in connection with the wind-down of these two
```

15    plants.  So, I'll approve it.

16              MR. BUTLER:  Thank you, Your Honor.  Your Honor, that

17    concludes the omnibus hearing for June.

18              THE COURT:  Okay, thanks.

19              MR. BUTLER:  I want to just -- one other quick matter

20    for logistically we are turning our attention this afternoon to

21    finishing up the pleadings on the IUE/CWA's attrition motion.

22    We were planning to submit to file those on PACER tonight,

23    submit a copy to chambers and then submit an order -- a

24    scheduling  order  to  chambers  for  the  29th,  if  that's

25    acceptable.


                                        119


1              THE COURT:  That's fine.

2              MR. BUTLER:  Is there a time you want us to put on

3    the notice for that?

4              THE COURT:  Well, the hearing would be at 10:00.

5              MR. BUTLER:  10:00?

6              THE COURT:  And, I guess the date to object would

7    be -- the 29th is a what?

8              MR. BUTLER:  Thursday, Your Honor.

9              THE COURT:  So Tuesday at 4.

10              MR. BUTLER:  Tuesday at 4 o'clock?  Thank you, Your

11    Honor.

12              THE COURT:  Okay.  It just -- going back to the

13    O'Neill motion, can you make sure that I have a copy of the

14    policy that lays out the SAR?  There was just an excerpt in

15    their brief I'd just like to see the policy.  That deals with

16    the funding of the SAR.

17              MR.  BUTLER:    Well,  we'll  have  it  delivered  to

18    chambers, Your Honor.

19              THE COURT:  Okay.  Thanks.

```
20              MR. BUTLER:  Thank you, Your Honor.

21              THE COURT:  Okay.  Thank you.

22         (Whereupon this proceeding was concluded at 1:21 PM)

23

24

25
```

                                                          120

```
 1

 2                        I N D E X

 3

 4                     R U L I N GS

 5                                    Page        Line

 6   Jeffries & Company retention       17          18

 7   application approved

 8

 9   Motion by PBGC to file             20          14

10   consolidated claims

11   approved

12

13   1121(d) exclusivity               21          21

14   second extension order

15   motion approved

16

17   Fried, Frank retention            22          13

18   application approved

19

20   Limited objection of              29           8

21   Official Committee of Equity

22   Holders to debtors' motion to

23   approve bidding procedures sustained

24
```

25          (Continued on next page)


                                                            121


1

2                            I N D E X

3

4                    R U L I N GS, cont'd

5

6    Motion of Cindy Palmer                47          12

7    for relief from the

8    automatic stay granted

9    in limited fashion

10

11   ATI's Motion to Lift Stay            51          14

12   Granted

13

14   Debtors' Motion Approved            105          4

15

16   Agreed Order with                   117          10

17   Wilmington Trust Approved

18

19

20

21

22

23

24

25

                                                            122

https://vip21.veritextllc.com/myfiles/473455/119921.TXT

1

2                    C E R T I F I C A T I O N

3

4    I court approved transcriber, certify that the foregoing is a

5    correct transcript from the official electronic sound recording

6    of the proceedings in the above-entitled matter.

7

8    _____    June 20, 2006

9    Signature of Approved Transcriber      Date

10

11        Lisa Bar-Leib

12   typed or printed name

13

14

15

16

17

18

19

20

21

22

23

24

25