IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
    In re                           :     Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :     Case No. 05-44481 (RDD)
                                    :
          Debtors.     :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

      I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

      On July 12, 2006, I caused to be served the document listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit B</u> hereto via electronic notification, and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-paid U.S. mail:

    1)  Notice of Filing of (A) Transcript of Auction Proceedings Held on July 6, 2006 Determining Successful Bidder for the Sale of Substantially All of the Assets of MobileAria, Inc. and (B) Asset Sale and Purchase Agreement Between @Road, Inc. and MobileAria, Inc. Dated as of July 7, 2006 (Docket No. 4534) [a copy of which is attached hereto as Exhibit D]

      On July 12, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit E</u> hereto via overnight delivery:

    2)  Debtors' Supplemental Objection to Motion of H.E. Services Company and Robert Backie for Relief from Automatic Stay (Docket No. 4532) [a copy of which is attached hereto as Exhibit F]

On July 12, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit G</u> hereto via overnight delivery:

3)  Debtors' Response to Lafonza Earl Washington Demand for Immediate Distribution (Docket No. 4535) [a copy of which is attached hereto as Exhibit H]

Dated: July 13, 2006

<u>    /s/ Evan Gershbein              </u>
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 13th day of July, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : <u>    /s/ Amy Lee Huh              </u>

Commission Expires: <u>    3/15/09      </u>

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc.; Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein / Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 / 212-450-4213 | 212-450-3092 / 212-450-3213 | donald.bernstein@dpw.com / brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com / karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler / Bonnie Steingart / Vivek Melwani / Jennifer L Rodburg / Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com / sliviri@ffhsj.com | Proposed Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com / richard.duker@jpmorgan.com / gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

7/13/2006 11:38 AM
Delphi Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Proposed Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@iefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel for Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

7/13/2006 11:39 AM
Delphi Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

7/13/2006 11:39 AM
Delphi Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

7/13/2006 11:39 AM
Delphi Master Service List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel for Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel for Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E 2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | aleinhoff@amph.com | Counsel for APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | mhamilton@ampn.com | Counsel for APS Clearing, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel for CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel for Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel for Gibbs Die Casting Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel for Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel for Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel for Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel for Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel for DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel for Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel for Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel for Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel for SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel for Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | | 303-295-0202 | | sabelman@cagewilliams.com | Counsel for United Power, Inc. |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.c | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLC and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel for Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel for ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel for International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | | 615-321-0555 | 615-321-9555 | amalone@colwinlaw.com | Counsel for Averitt Express, Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel for ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel for Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel for Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel for DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel for The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | | Southaven | MS | 38671 | | | | akatz@entergy.com | Company |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel for Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel for Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel for Kuss Corporation |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel for Southwest Metal Finishing, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Rider Integrated Logistics, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel for Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel for UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel for UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel for Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel for Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel for Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel for Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Trutron Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel for SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | 850-763-8425 | gerdekomarek@bellsouth.net | Counsel for Peggy C. Brannon, Bay County Tax Collector |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel for Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry N. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel for Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissel.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel for Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel for Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8340 | 212-947-1202 | rcovino@lordbissell.com | Counsel for Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel for AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel for Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@miib.com | Counsel for Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel for Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel for H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel for Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel for Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel for Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel for National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel for Prince George County, Maryland |
| Miami-Dade County, FL | April Burch | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | | 305-375-5314 | 305-375-1142 | aburch@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb / Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 / 616-831-1726 | 616-988-1748 / 616-988-1726 | sarbt@millerjohnson.com / wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel for Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel for Standard Microsystems Corporation and its direct and indirect subsidaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel for Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel for Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Nathan, Neuman & Nathan, P.C. | Susanna C. Brennan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | sbrennan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.co | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippany | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel for The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | | 312-849-2020 | 312-849-2021 | mmoody@okmlaw.com | Counsel for Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Anthony Princi Esq Thomas L Kent Esq | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5000 | 212-506-5151 | aprinci@orrick.com tkent@orrick.com | Counsel to Ad Hoc Committee of Trade Claimants |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel for Westwood Associates, Inc. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | shazan@oshr.com | Counsel for Sharp Electronics Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis R. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3157 | 212-373-2053 | cweidler@paulweiss.com | Counsel for Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel for Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel for Marshall E. Campbell Company |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation; Security Plastics Division/NMC LLC |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegr | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup. | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel for Joran Incorporated, Sackner Products Division |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.co | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel for Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel for Blue Cross Blue Shield of South Carolina |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel for JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for Means Industries |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | | 312-258-5500 | 312-258-5600 | wkohn@schiffhardin.com | Counsel for  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel for D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel  for  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Steven E. Boyce | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-2347 | | 603-627-8278 | 603-641-2347 | sboyce@sheehan.com | Counsel for Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel for Milwaukee Investment Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel for Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for  Michigan Heritage Bank; MHB Leasing, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel for Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | jminias@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 19

7/13/2006 11:40 AM
Delphi 2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel for Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel for Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel for TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid & Priest LLP | Daniel A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for Oki Semiconductor Company |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel for STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel for Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel for Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel for Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | bmcdonough@teamtogut.com | Conflicts counsel to Debtors |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy B. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | | 212-476-4770 | 212-476-4787 | DBR@tbfesq.com | Counsel for SPCP Group LLC |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel for Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel for McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel for Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLp | Michael S. McElwee | Bridgewater Place | P.O. Box 353 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel for Furukawa Electric North America APD |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | Counsel for America Online, Inc. and its Subsidiaries and Affiliates |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel for America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | sgrowsb@wnj.com | Counsel for Behr Industries Corp. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | bankruptcy@warnerstevens.com | Counsel for Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel for Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel for Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel for Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel for Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel for Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for WL. Ross & Co., LLC |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel for Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|------------------|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | Counsel for Relco, Inc.; The Durham Companies, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | Counsel for Martinrea International, Inc. |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | Counsel for Lunt Mannufacturing Company |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | Counsel for WL. Ross & Co., LLC |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | Counsel for Maxim Integrated Products, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | | General Counsel for Jason Incorporated |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | | 989-385-3230 | Corporate Secretary for Professional Technologies Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/13/2006 11:40 AM
Delphi 2002 List

# EXHIBIT D

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                             :
        In re                                :    Chapter 11
                                             :
DELPHI CORPORATION, et al.,                  :    Case No. 05-44481 (RDD)
                                             :
                            Debtors.         :    (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF FILING OF (A) TRANSCRIPT OF AUCTION PROCEEDINGS HELD ON
JULY 6, 2006 DETERMINING SUCCESSFUL BIDDER FOR THE SALE OF
SUBSTANTIALLY ALL OF THE ASSETS OF MOBILEARIA, INC. AND
(B) ASSET SALE AND PURCHASE AGREEMENT BETWEEN
@ROAD, INC. AND MOBILEARIA, INC. DATED AS OF JULY 7, 2006

PLEASE TAKE NOTICE that, in accordance with the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And 9014 Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of Sale Notices, And (iv) Setting Of A Sale Hearing (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June 22, 2006, MobileAria, Inc. ("MobileAria") held an auction for substantially all of its assets (the "Assets") on July 6, 2006 (the "Auction").  The transcript of the Auction is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE that, following the conclusion of the Auction, the Board of Directors of MobileAria determined a bid of @Road, Inc. ("@Road") providing cash of $11.4 million and certain other consideration to be the highest or otherwise best offer for the Assets (the "Successful Bid") and approved the designation of @Road as the Successful Bidder (as defined in the Bidding Procedures Order).  The Asset Sale and Purchase Agreement between @Road and MobileAria dated as of July 7, 2006 is attached hereto as Exhibit B.

PLEASE TAKE FURTHER NOTICE that following the conclusion of the Auction, the Board of Directors of MobileAria determined a bid of Wireless Matrix USA, Inc. ("Wireless Matrix") providing cash of $11.2 million and certain other consideration to be the second highest or otherwise best offer for the Assets (the "Alternate Bid") and approved the designation of Wireless Matrix as the Alternate Bidder (as defined in the Bidding Procedures Order).

PLEASE TAKE FURTHER NOTICE that MobileAria's presentation to the

Bankruptcy Court of the Successful Bid and Alternate Bid shall not constitute MobileAria's

acceptance of either such bid, which acceptance shall only occur upon approval of such bids by

the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that a hearing to approve the Successful

Bid and the Alternate Bid will be held on July 19, 2006 at 10:00 a.m. (Prevailing Eastern Time)

at the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, Room 610, New York, New York 10004, before the Honorable Robert D. Drain, United

States Bankruptcy Judge.  The hearing may be adjourned without notice other than an

adjournment in open court.

Dated:  New York, New York
       July 12, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                  & FLOM LLP

                By:/s/ John Wm. Butler, Jr.
                  John Wm. Butler, Jr. (JB 4711)
                  John K. Lyons  (JL 4951)
                  Ron E. Meisler (RM 3026)
                333 West Wacker Drive, Suite 2100
                Chicago, Illinois  60606
                (312) 407-0700

                  - and -

                By: /s/ Kayalyn A. Marafioti
                  Kayalyn A. Marafioti (KM 9632)
                  Thomas J. Matz (TM 5986)
                 Four Times Square
                New York, New York 10036
                (212) 735-3000

                Attorneys for Delphi Corporation, et al.,
                  Debtors and Debtors-in-Possession

3

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  CASE NO. 05-44481(RDD)

5   In Re                              )
                                       )
6   DELPHI CORPORATION, et al.,        )     **ORIGINAL**
                                       )
7                       Debtor.        )
                                       )
8                                      )
   -------------------------------)

9

10              AUCTION PROCEEDINGS
        Skadden Arps Slate Meagher & Flom
                4 Times Square
11              New York, New York
                  10:30 a.m.
12          Thursday, July 6, 2006

13  B E F O R E:

14     Randall Reese, Esq.
       John K. Lyons, Esq.
15     Milledge Hart
       Christie L. Branson, Esq.
16     Steve Olsen
       Sean Corcoran, Esq.
17          (Present Telephonically)

18

19

20

21

22

23  Reported by:
    Robert X. Shaw, CSR
24  CSR NO. 817
    JOB NO. 185783

25

1

2  A P P E A R A N C E S:

3

4      SKADDEN ARPS SLATE MEAGHER & FLOM

5      Attorneys for Delphi Corp., and

6      MobileAria

7              333 West Wacker Drive

8              Chicago, Illinois 60606

9      BY:    RANDALL REESE, ESQ.

10             JOHN K. LYONS, ESQ.

11             STEPHEN NEUMAN

12                 -and-

13     DLA PIPER RUDNICK GRAY CARY

14             East Palo Alto, California 94303

15     BY:  CHRISTIE L. BRANSON, ESQ.

16

17     KRONISH LIEB WEINER & HELLMAN LLP

18     Attorneys for Wireless Matrix

19             1114 Avenue of the Americas

20             New York, New York 10036

21     BY:    ADAM C. ROGOFF, ESQ.

22

23

24

25

```
 1
 2  A P P E A R A N C E S (Cont'd):
 3     HELLER EHRMAN LLP
 4     Attorneys for @Road
 5            7 Times Square
 6            New York, New York 10036
 7     BY:   CARREN B. SHULMAN, ESQ.
 8           TIM MEHOK, ESQ.
 9           JOSH SELIG, ESQ.
10           NICK ROSENBERG, ESQ.
11           MIRIAM OSNER, ESQ.
12
13     LATHAM & WATKINS LLP
14     Attorneys for  Unsecured Creditors
15            885 Third Avenue
16            New York, New York 10022
17     BY:   HENRY P. BAER, JR. ESQ.
18  ALSO PRESENT:
19     DELPHI
       Sean Corcoran, Esq.
20            (Present Telephonically)
21     Steve Olsen
       A. Lisa Agasse, Analyst
22
23     PAGEMILL PARTNERS
       Milledge Hart
       Christian Bennett
24
25     MOBILEARIA
       Dr. Richard C. Lind,
              President MobilAria, Inc.
```

4

A P P E A R A N C E S (Cont'd):

WIRELESS MATRIX
    Maria C. Izurieta, CFO
    Rich Carlson, CEO

ALVAREZ & MARSAL
    David Kirsch

@ROAD
    James (J.D.) Fay, Sr. VP

JEFFERIES & COMPANY
    Isaac Lee
    Eric Court
    Marc Strauss

1

2

3          MR. REESE:  Good morning.  Welcome.

4      I think I have met all of you, but I

5      am Randall Reese from Skadden Arps, and

6      as you are all aware, Skadden is counsel

7      to MobileAria and the affiliated debtors

8      and debtors in possession in their

9      Chapter 11 cases currently pending in the

10      United States Bankruptcy Court for the

11      Southern District of New York, before

12      Judge Robert D. Dran.

13          With me here at the table is Steve

14      Olsen, the Director of Mergers and

15      Acquisitions of New Markets for Delphi,

16      John Lyons of Skadden Arps, Christy

17      Branson of DLA Piper Rudnick and Milledge

18      Hart of Pagemill Partners.

19          As you are all aware, on June 6th,

20      2006, MobileAria and the other debtors

21      filed a motion seeking approval of, among

22      other things, certain bid protections and

23      certain bidding procedures, which is why

24      we are all here today.

25          In addition, the bid protections

1

2   were afforded the stalking horse bidder,

3   Wireless Matrix USA, Inc., which I will

4   refer to as Wireless Matrix going forward

5   and, ultimately the approval of a sale to

6   Wireless Matrix and substantially all of

7   the assets of MobileAria, pursuant to an

8   asset sale and purchase agreement, dated

9   June 6th, 2006, subject to the completion

10  of a competitive bidding process.  That

11  motion was entered on the docket as

12  docket entry number 4040.

13       The court held a hearing on June

14  19th, 2006, and entered an order

15  approving certain bidding procedures, and

16  that order was entered on June 22nd at

17  docket number 4328, and I will refer to

18  that order as the bidding procedures

19  order, just so that we are clear.

20       This is the time and place for the

21  auction of the assets of MobileAria, as

22  provided by the bidding procedures order.

23       As all of you are aware, we have a

24  court reporter here, and the auction is

25  being transcribed, and we will file a

1

2       complete transcript of the auction with

3       the Bankruptcy Court prior to the

4       commencement of the sale here.

5           Initially, I will describe the

6       procedures that are going to be used for

7       today's auction and enter certain matters

8       into the record.

9           First, we have marked five exhibits

10      to be entered into the record.  When you

11      checked in this morning, each of you

12      should have received a vellum bound

13      document with all of the exhibits, with

14      the exception of the final one, and if

15      anybody did not, please let us know and

16      we will be happy to get you a copy.

17          We marked, as Exhibit Number 1, the

18      MobileAria bidding procedures order dated

19      June 22nd.

20          And marked, as Exhibit Number 2, is

21      the bid submitted by Wireless Matrix, and

22      that exhibit includes the asset sale and

23      purchase agreement dated June 6th, 2006,

24      between Wireless Matrix and MobileAria,

25      and also includes all of the disclosure

1
2    schedules included therewith.

3        Marked as Exhibit Number 3 is the

4    bid provided by @Road Inc., which I will

5    refer to as @Road.  This exhibit includes

6    the following items:  a letter dated June

7    28th, 2006 from James D. Fay, Senior Vice

8    President Corporate Affairs of @Road to

9    Richard Lind, President of MobileAria;

10   and an asset sale and purchase agreement

11   dated June 28th, 2006, executed by @Road,

12   the unmarked disclosure schedules

13   included therewith; a marked copy of the

14   asset sale and purchase agreement,

15   reflecting modifications from the asset

16   sale and purchase agreement, entered into

17   between MobileAria and Wireless Matrix,

18   the marked disclosure schedules thereto;

19   and the form 10-Q dated March 31st, 2006

20   for @Road.

21       Marked as Exhibit Number 4 is the

22   MobileAria sale motion dated June 6th,

23   2006 that I referred to earlier.

24       And finally, marked as Exhibit

25   Number 5, is this morning's sign-in

1

2   sheet.   This will obviate the need for

3   each of you to be introduced on the

4   record, and I would note, in addition,

5   that Sean Corcoran, Deputy General

6   Counsel of Delphi is participating

7   telephonically today.

8       Those are all of the exhibits that

9   we are designating for the record at this

10  time.   We reserve the right to include

11  further exhibits as the auction

12  continues, should we need to.

13      As everybody here is aware, the

14  bidding procedures order provides that

15  any competing proposals for the assets of

16  MobileAria be received by MobileAria, its

17  advisers, Delphi Automotive Systems LLC,

18  which is MobileAria's majority

19  shareholder, the advisors to the official

20  committee of unsecured creditors, and the

21  advisors for the agent for the

22  pre-petition lenders no later than 11

23  a.m. on June 29th, 2006.

24      By that deadline only one competing

25  bid had been received, which is the bid

1

2    of @Road that we marked as Exhibit Number

3    3.    Pursuant to @Road's binding bid

4    letter and asset sale and purchase

5    agreement, @Road offered MobileAria $7.5

6    million in cash consideration for

7    substantially all of the assets of

8    MobileAria.

9        The other material terms of @Road's

10   proposed asset sale and purchase

11   agreement are substantially similar to

12   the terms of Wireless Matrix' proposed

13   asset sale and purchase agreement, with

14   the primary exception that @Road has

15   deleted the requirements contained in

16   schedule 5.1.16.A, that four of six

17   certain key employees, as defined

18   therein, remain employed with MobileAria

19   at the closing.

20       In addition, @Road has provided

21   MobileAria with a good faith deposit in

22   the amount of $500,000, as required by

23   the bidding procedures order.

24       After independent evaluation by

25   MobileAria and its directors, in

1

2    accordance with the bidding procedures

3    order, MobileAria's directors determined

4    that @Road's bid was a qualified bid, as

5    defined in the bidding procedures order,

6    and, therefore, on June 30th, 2006, my

7    colleague, Allison Verderber Herriot,

8    contacted all parties entitled to attend

9    this auction by e-mail and advised them

10   that an auction would be going forward.

11        Those parties included @Road,

12   Wireless Matrix, the creditors committee,

13   the equity committe, and the agent for

14   the pre-petition secured lenders.

15        Counsel to the equity committee

16   declined an invitation to participate

17   here in today's auction. Representatives

18   of all of the parties entitled to

19   participate are here today.

20        There are no other parties that have

21   submitted a qualified bid for the assets

22   of MobileAria at this time and,

23   therefore, pursuant to the bidding

24   procedures order, only Wireless Matrix

25   and @Road are entitled to bid at today's

1

2      auction.  And, as each of you know, each

3      of the bidders is, as well as the

4      creditors committee and the pre-petition

5      secured lenders, have been assigned their

6      own conference room today to use for

7      private conversations.

8          Shortly, we intend to open the floor

9      to allow the opportunity for additional

10     competing bids to be made by Wireless

11     Matrix, if it intends to do so, or for

12     any of the parties here to have an

13     opportunity to make any statements on the

14     record, if they would like to.

15         MobileAria reserves the right to

16     take recesses from time to time today

17     have private conversations with one or

18     more of the bidders or with our

19     creditors.

20         I will not read into the record all

21     of the bidding procedures that are laid

22     out in the bidding procedures order, and

23     it has been marked as an exhibit.

24     Everyone has a copy of it.

25         However, there are two elements of

1

2      the bidding procedures that I do want to

3      emphasize.

4           First, pursuant to section 9.1.2 of

5      the asset sale and purchase agreement

6      between Wireless Matrix and MobileAria,

7      if Wireless Matrix submits a subsequent

8      bid, as defined in the bid procedures,

9      Wireless Matrix will be subject to all of

10     the bidding procedures, including such

11     subsequent bid shall be irrevocable and

12     must stay open as an alternate bid until

13     the earlier of two business days after

14     the closing of the sale of MobileAria's

15     assets or August 31st, 2006.

16          Of course, pursuant to the bidding

17     procedure, all subsequent bids of @Road

18     are required to stay open for the same

19     period.   Okay.

20          Second, Wireless Matrix shall be

21     entitled to a credit in the amount of the

22     break-up fee, which is equal to $195,000,

23     in calculating the value of any

24     subsequent bid made by Wireless Matrix in

25     today's auction.   Therefore, by way of

1

2    example, if Wireless Matrix were to make

3    a subsequent bid in the amount of $7.6

4    million, MobileAria would receive cash

5    consideration from Wireless Matrix in the

6    amount of $7,405,000 at closing.

7        MR. ROGOFF:  Canadian?

8        MR. REESE:  Is that the best

9    exchange rate today?

10       MR. HART:  We will give you the

11   Canadian credit, for sure.

12       MR. REESE:  Both parties, please,

13   confirm on the record that that is, in

14   fact, their understanding of the bidding

15   procedures.

16       MS. IZURIETA:  Yes.

17       MR. FAY:  Yes.

18       MR. REESE:  At this point in time,

19   there are no specific additional

20   procedures today, besides those laid out

21   in the bidding procedures, and we, of

22   course, encourage each of Wireless Matrix

23   and @Road to put on the table your

24   highest and best bid at today's auction.

25       We will, of course, do everything

1

2    that we can to advise you of any

3    particular concerns that MobileAria has

4    or that any of the creditor

5    constituencies express with respect to

6    each of your respective bids.

7        When neither bidder desires to make

8    any further bid, we will recess the

9    auction at that time and meet privately

10   with our creditor constituencies who are

11   here today to consult with them.

12       After that, as quickly as possible,

13   depending on the time the board of

14   directors of MobileAria will meet and

15   deliberate and determine in the exercise

16   of their business judgment, which bid

17   they believe to be the successful bid,

18   and which bid they determine to be the

19   alternate bid, and at that point, we will

20   advise both of the parties that, which

21   bid has been determined to be the

22   successful bid and which bid has been

23   determined to be the alternate bid, and

24   we will formally close the auction.

25       However, as a technical matter, I

1

2 would remind the parties that pursuant to

3 the bidding procedures and the bidding

4 procedures order, no bid has been

5 accepted by MobileAria until Judge Drain

6 has approved that bid at the sale hearing

7 and an order has been entered providing

8 for that determination.

9     As a housekeeping matter, we would

10 like to request that each of the bidders

11 designate a representative to speak on

12 your behalf, when and if you decide you

13 wanted to speak on the record at today's

14 auction.

15     Therefore, I would ask that each

16 designated representative state his or

17 her name and title for the record and

18 affirm that such person is the authorized

19 representative of the company for

20 purposes of the auction.

21     We will go in alphabetical order.

22     @Road.

23     MR. FAY:  My name is J.D. Fay from

24 @Road.

25     MR. REESE:  Would you state your

1

2      position on the record.

3          MR. FAY:  Senior Vice-President,

4      Corporate Affairs, General Counsel.

5          MR. REESE:  Wireless Matrix.

6          MR. ROGOFF:  Good morning.  Adam

7      Rogoff, Kronish Lieb, on behalf of

8      Wireless Matrix, and I will be speaking

9      on behalf of my client.

10         MR. REESE:  Thank you.

11         I would also ask that at this time

12     each of the designated representatives

13     indicate on the record, that you have

14     full authority to speak for the company

15     that you represent and that your

16     participation at the auction and anything

17     that you say on behalf of your company or

18     your client is said with the full

19     authority of the company, and that no

20     further approvals other than Bankruptcy

21     Court approval will be necessary in order

22     for whatever you offer on the record to

23     be binding with respect to your company,

24     so that everyone here knows that what, in

25     fact, is offered on the record is a real

1
2    offer.
3         We will go in the same order.
4         MR. FAY:  I confirm that.
5         MR. ROGOFF:  Subject to being kicked
6    by my client, I confirm that.
7         MR. REESE:  Thank you.  We also
8    believe that it will be helpful for the
9    primary creditor constituencies that are
10   here today to be free to ask questions on
11   the record to ensure that the terms that
12   are put on the record are clear and
13   unambiguous with respect to all of the
14   parties here; therefore, we welcome the
15   participation of the representatives of
16   the creditors committee and the
17   pre-petition secured lenders here today,
18   and appreciate your participation.
19        At this point, I would ask, first,
20   that the Wireless Matrix representative
21   affirm that, to the best of his
22   knowledge, Exhibit Number 2 contains the
23   asset sale and purchase agreement as
24   agreed to between Wireless Matrix and
25   MobileAria, and that the schedules are,

1

2      to the best of your knowledge, the final

3      versions of such schedule.

4           MR. ROGOFF:  I confirm that my

5      client has so advised me.

6           MR. FAY:  Okay.

7           MR. REESE:  At this point, I would

8      ask the @Road representative to affirm,

9      to the best of your knowledge, that

10     Exhibit Number 3 represents @Road's offer

11     for the asset of MobileAria.

12          MR. FAY:  Although I have not

13     reviewed the whole document, it looks

14     like that that is what we sent.

15          MR. REESE:  Thank you.

16          Finally, one additional issue which

17     we have discussed this morning, but to

18     just put on the record:  As everyone here

19     is probably aware, Sun Micro Systems Inc.

20     filed an objection to the assumption

21     assignment of MobileAria's license

22     agreement with Sun on June 30th, which

23     objection was entered in docket number

24     4433.

25          At the present time, it is

1

2      MobileAria's belief that the only license

3      agreement with Sun is a binary code

4      license agreement covering the Java 2

5      platform standard edition run time

6      environment, 5.0 software, which is open

7      source software available on a Sun

8      Website for download without charge and

9      which, I am told, is comprised of the

10     following three elements:  the J2SE

11     version 1.4.2 and 1.5 run time.

12          MR. BENNETT:  Repeat that one more

13     time.

14          MR. REESE: Sure.

15          J2SE version 1.4.2 and 1.5, run time

16     version.

17          MS. BRANSON:  It is listed on the

18     schedule.

19          MR. REESE:  The second element is

20     the Sun Java Mail Library.

21          The third element is the Sun Java

22     Bean Activation Framework.

23          MR. ROGOFF:  As I can just object,

24     as you can probably see by my client

25     physically writing this down, this is the

1

2      first that we have been informed of the

3      objection.  We have not seen it, we have

4      not had an opportunity to assess what, if

5      any, impact it has.

6          I would request if there is a copy

7      of the objection, that somebody can

8      provide it, so that we can see the

9      specificity of what was objected to and,

10     obviously, we will need to take into

11     account the objection with respect to

12     what our rights are under the contract.

13         MR. REESE:  Understood, Mr. Rogoff.

14     We will attempt to get you a copy of it,

15     so that you can review the objection.

16     However, I would note that MobileAria

17     uses the software internally and the

18     software is not incorporated into

19     MobileAria's products that are sold.

20         We have been in communication with

21     Sun's counsel and we are hopeful that the

22     objection will be withdrawn, based upon

23     the fact that this software is publicly

24     available without charge, from a Sun

25     Website.  And there are no licensing fees

1

2      associated with this product.

3          However, if Sun is not willing to

4      withdraw its objection for any reason,

5      MobileAria does not believe that it is in

6      anyone's best interest to engage Sun at

7      this time, and would request that each

8      bidder consider removing that contract

9      from the list of -- scheduled for

10     contracts, which is schedule 2.1.1, and

11     agree that such license agreement not be

12     assumed by MobileAria or assigned to the

13     bidder in the event that Sun does not

14     withdraw its objection.

15         We will, however, get you a copy of

16     it, so that you have an opportunity to

17     review it.

18         With that clarification on the

19     record, we would now open the floor for

20     any statements from the interested

21     parties here today, or any further bids

22     from the parties.

23         MR. ROGOFF:   In terms of just a

24     statement, perhaps a clarification:   One,

25     I appreciate your views with respect to

1

2    the Sun Micro System objection.  We will

3    need to look at the objection and

4    consider both the objection and its

5    impact on the contract and, of course,

6    your request in due course.

7         Putting that aside for a moment, in

8    looking at the @Road agreement that was

9    submitted, we did note that there were

10   certain language changes that were made

11   to their agreement that we don't believe

12   have an economic impact in terms of the

13   differential or the Wireless Matrix

14   agreement, and it would be our intent to

15   conform language that was placed into the

16   @Road's agreement, into the Wireless

17   Matrix agreement and, with specificity,

18   what my client has advised me so far

19   would be the language which is on

20   schedule 5.1.6.B, that is 5.1.16.B.

21        You guys can come up with any other

22   sub-elements of that -- which just

23   provided certain specificity to

24   provisions that we believe are already

25   covered in the Wireless Matrix agreement.

1

2          But we would ask that our schedule,

3      likewise, be conformed to the same

4      wording language that was submitted by

5      @Road.

6          MS. BRANSON:  Subsection B.  Actual

7      agreement --

8          MS. IZURIETA:  The wording on the

9      bottom of the employee schedule that you

10     mentioned earlier.

11         MR. REESE:  I believe that is

12     schedule 5.16.A, rather than .B.

13         MR. ROGOFF:  Not that one.  Not

14     .5.1A.

15         MS. IZURIETA:  Sorry.

16         MR. ROGOFF:  I am talking about

17     schedule 5.1 -- sorry, did I say, 5.1.

18     16B, seller performance, specifically, it

19     says "Seller is not paid employee

20     performance bonuses due in the amount

21     aggregating $114,000."  It was then added

22     to the @Road's agreement, the following

23     language, which we believe is covered in

24     our agreement; so, it is not an economic

25     change, but we would like the

1

2        specificity.   The wording was added

3        "Seller agrees to pay such employee

4        performance bonuses prior to the closing

5        day."   It is that additional sentence

6        that we would be adding to our comparable

7        schedule.

8             MR. REESE:   Okay.   In fact, I am

9        informed that those bonuses have, in

10       fact, been paid.

11            MR. ROGOFF:   Thank you.

12            That is the only clarification that

13       we have before opening the auction.

14            MR. REESE:   Okay.

15            MR. FAY:   I would like to have a

16       copy of the list of attendees.

17            MR. REESE:   Sure.

18            With the cross outs, we can get you

19       a copy of that exhibit.

20            MR. FAY:   Thank you.

21            MR. REESE:   Any additional comments,

22       or is Wireless Matrix prepared, at this

23       time, to provide a subsequent bid?

24            MR. ROGOFF:   If there are no other

25       comments, yes.

1

2         MR. REESE:  The floor is yours.

3         MR. ROGOFF:  We are going to bid

4    $7.6 million.  We are going up by the

5    $100,000 bidding increment.  In addition,

6    we are going to modify the agreement to,

7    likewise, conform with the @Road's

8    agreement, with respect to schedule 5.1.

9    16A, to delete the condition which is

10   listed at the bottom of that schedule

11   that was referred to in your

12   introduction, regarding employment of

13   certain key employees.  So, our bid is

14   both the $100,000 bidding increment

15   increase, as well as the deletion of the

16   condition reflected on the bottom of

17   schedule 5.1.16.A.

18        MR. REESE:  Okay.

19        For clarification, would all other

20   terms of the agreement, as you proposed

21   them, be on the terms of Wireless Matrix'

22   existing asset purchase agreement, and

23   you will not be adopting any of the

24   additional changes reflected in the @Road

25   markup?

1

2        MR. ROGOFF:   Just a second.

3        I appreciate why you have asked that

4    question and I suppose, before I answer

5    that question, I would like to throw a

6    question back at you because, what the

7    heck.

8        We don't believe that there are any

9    other changes that have been made to

10   @Road's agreement, other than conforming

11   to @Road's specifically.

12       Does the estate believe that there

13   are other changes as between their

14   agreement and our agreement that have any

15   economic impact?  And, if so, we would

16   like to be advised as to what those are.

17       MR. REESE:   I think, initially, one

18   additional revision which we would point

19   to, which we believe is favorable, and we

20   would like to have included, is in

21   section 3.1.4 of the agreement, which is

22   entitled "retention bonus," and there is

23   an additional sentence providing that the

24   retention bonus shall be paid in

25   accordance with the terms and conditions

1
2   outlined in purchasers offer of
3   employment, which we do believe is
4   favorable, and would like to have it
5   included.
6       MR. ROGOFF:  While my clients are
7   reviewing that, I would ask you that,
8   while I appreciate that you believe that
9   it is favorable, is there any economic
10   impact that is being given to that
11   sentence?  And, if so, what is the
12   economic impact?  How is that being
13   quantified in terms of a higher and
14   better bid from a monetary perspective?
15       MR. REESE:  We don't believe that it
16   affects the economic aspects of the bid,
17   but we do believe it is a more favorable
18   term.  We have not assigned any value to
19   it.
20       MR. ROGOFF:  What I would like to
21   request, and I appreciate why you have
22   asked the question, we will reserve on
23   commenting on that particular subsection,
24   and all other aspects of our agreement,
25   you know, are as presented, and we will

1

2      take into account in any future bidding

3      the company's request that we modify

4      section 3.1.4 of the agreement, to add

5      the additional language, but at this

6      point in the bidding process we are not

7      prepared to do that.

8           MR. REESE:  And I just, for the

9      record -- any subsequent additional

10     subsequent bids of Wireless Matrix,

11     should we assume that those are, then, on

12     the same terms and conditions as you have

13     outlined, outlined then, with respect to

14     the agreement, unless you advise

15     otherwise?

16          MR. ROGOFF:  That is correct.  Yes,

17     the Wireless Matrix agreement.

18          A PARTICIPANT:  That was a short

19     bid.

20          MR. REESE:  All right.  Any comments

21     from any other parties, at this time,

22     with respect to that?

23          MR. FAY:  Um, what I would like to

24     know is whether that is considered a

25     better bid.  If you have a term that is

1

2      more favorable, that I think -- that you

3      think is part of the calculation, then I

4      think it is important, at least, for me

5      to know that you consider that a better

6      bid, so that the action shifts.

7          MR. REESE:  Okay.  I think, at this

8      point, we would, then, take a short

9      recess to caucus internally and determine

10     whether or not we do believe that that

11     constitutes a qualified subsequent bid.

12         MR. LYONS:  A very short bid.  Let's

13     take a five-minute recess.

14         (Recess.)

15         MR. REESE:  Back on the record.

16         We are back on the record.

17         And the company, MobileAria, has

18     considered the bid laid out by Wireless

19     Matrix and has determined that it is a

20     qualifying subsequent bid, and would

21     constitute the highest or otherwise best

22     offer for the assets at this time.

23         We will now open the floor.

24         MR. FAY:  Okay.  So, I think what we

25     would like to do, then, is take a brief

1

2    caucus to consider the matter.  We would

3    like to adjourn to our room.

4        MR. LYONS:  Any estimate as to how

5    long you would be, as to whether we

6    should keep the people here?

7        MR. FAY:  I think the people don't

8    have to be imprisoned here, but why don't

9    we go back and we will meet in the room

10   and maybe we can give you an estimate in

11   a moment or two.

12       MR. REESE:  Thank you.

13       Off the record.

14       (Recess.).

15       MR. REESE:  Back on the record.

16       MR. FAY:  Yes.

17       MR. REESE:  We are at the auction

18   for the assets of MobileAria, and we

19   would open the floor to other bids or

20   comments.

21       MR. FAY:  Yes.

22       Thank you.  One thing I would like

23   to do, first, is confirm, again, our

24   conversation earlier about how we

25   calculate subsequent bids.  So, let's

1

2      take the example of the current bid,

3      which was $7.6 million.

4          Would it be your understanding that,

5      all other terms being equal, that the

6      qualifying subsequent bid would be $7.7

7      million?

8          MR. REESE:  All other terms being

9      equal, that would be correct.

10         MR. FAY:  In that case, what I would

11     like to propose is:  We would make a

12     subsequent bid of 7.7 -- $7.7 million,

13     and we do believe, of course, that all of

14     our other terms are such that it makes

15     the subsequent bid a superior bid.

16         But if you do feel otherwise, we

17     would like to know that.

18         MR. REESE:  Okay.

19         MR. FAY:  Thank you.

20         MR. REESE:  I think one point that

21     we would like to qualify, relating to our

22     earlier discussion regarding section

23     6.2.5, which deals with other approvals,

24     we would like to confirm that you would

25     be amenable to that item being modified

1

2      such that a party's failure to object to

3      a notice of assumption and assignment of

4      contracts to @Road would satisfy that and

5      it would not require an affirmative

6      consent.

7              MR. FAY:  What I would like to

8      understand is, is it appropriate for you

9      to actually have that term or question to

10     be asked of Wireless Matrix, given that

11     they had the current, they had the

12     current bid, and this is sort of a new

13     term that you are bringing up for my bid?

14             MR. LYONS:  This was a changed term

15     in @Road's bid.  Wireless Matrix doesn't

16     have that.

17             MR. REESE:  That is not correct.

18             MR. ROGOFF:  Just the opposite.

19             MR. REESE:  Currently -- that -- I

20     think it is a point that we qualified

21     early.  We would like to qualify that

22     that language changed, and we do think

23     that it is section 6.2.5.  @Road?

24             MR. FAY:  I think I do understand

25     what schedule you are referring to,

1

2   third-party approvals, and my

3   understanding is that the @Road draft

4   included six contracts on the schedule,

5   and the Wireless Matrix draft included

6   seven contracts on the schedule, and your

7   proposal is that this schedule be

8   removed.

9        So, I think what I would like to

10   understand:  Is that your proposal?

11        MR. REESE:  That is correct.  There

12   was a misstatement earlier.  That

13   provision does appear in both agreements.

14        MR. FAY:  All right.

15        I would like to understand whether

16   it is appropriate to actually consider

17   this in the context of our bid, but it

18   seems, because I don't know that -- I

19   think it is probably more appropriate to

20   have that comment first be addressed by

21   the bid that is outstanding, which was,

22   which is the Wireless Matrix bid.

23        MR. REESE:  I guess our response

24   would be that we think this is something

25   we already discussed in a clarification,

1

2     and if you are not willing to include it,

3     then we would, obviously, consider your

4     bid on that basis.  But we would like

5     that clarification.

6          MS. SHULMAN:  If I can clarify, I

7     don't think that is what we are saying.

8     I think what we are saying is, we are

9     happy to address that issue, but

10    procedurally, there is a higher and

11    better bid on the table right now.

12         So, what we are saying is:  We think

13    it is appropriate for -- if you want this

14    change laid out on the table, we can talk

15    about it at that time.

16         But what Mr. Fay is saying, right

17    now there is a higher, better bid, and

18    since it is the same in both contracts,

19    it is probably procedurally more

20    appropriate better to address it with

21    them first, and if they say they will

22    change it or they don't want to change

23    it, then that goes into your next

24    question whether or not the bid is higher

25    or better.

1

2        MR. REESE:  We are happy to direct

3    that question to you, whether or not you

4    are willing to agree to that term.  I

5    will be happy for you to describe it.

6        MR. ROGOFF:  A procedural

7    clarification.  We put a bid on that you

8    already told us the bid is better and

9    higher, the bid is to @Road, and I

10    appreciate you --

11        You already accepted our bid as the

12    higher and better bid.  If they want to

13    stop the auction and not bid further,

14    that is fine with us.  There is no

15    further bid to us.

16        MR. REESE:  Okay.  I guess, at that

17    moment, then, our response would be, we

18    would consider a modification of that

19    language to be an enhancement, and either

20    party is free to include in any

21    subsequent bid, your bid is on the table,

22    if you can clarify whether it does or

23    does not include that, that modification.

24        MS. SHULMAN:  All right.

25        MR. FAY:  One of the things that we

1

2      talked about earlier was potentially

3      seeing the proposed language that would

4      be related to this third-party approval

5      section, the court order.  Do you have

6      that language that we could look at, as

7      well?

8          MR. REESE:  I believe you received a

9      copy of a draft sale approval order with

10     the initial pleadings.  It should also be

11     in your packet that you received this

12     morning, as an attachment.  It hasn't

13     been changed yet, and I think we would be

14     willing to provide, in that language,

15     that subject to entry of an appropriate

16     sale or subject to the entry of a sale

17     approval order, providing that the

18     failure to object will constitute

19     consent, that, then, you would not need

20     any further --

21         MR. ROGOFF:  I will ask a point of

22     clarification, because our schedule is

23     different from their schedule.

24         Are you referring just to the

25     addition on their schedule of the one

1

2      other contract, or are you referring

3      to --

4           MR. REESE:  We are referring to all

5      contracts.

6           MS. IZURIETA:  You want to take all

7      contracts off of 6.2 --

8           MR. REESE:  Our view is that the

9      sale approval order provides that a

10     party's failure to timely object to our

11     notice of assumption and assignment will

12     bind them and will be deemed to be an

13     affirmative consent, if they fail to

14     object.

15          Therefore, we believe that the

16     provisions are necessary, and we would

17     like to have it approved, so there is not

18     a requirement that we seek affirmative

19     consent.

20          MR. ROGOFF:  Without getting into

21     areas that we all don't like to talk

22     about as lawyers, what assurances -- and

23     I am not agreeing or disagreeing on

24     behalf of my client, I am getting

25     clarification of something that you are

1
2    raising now -- what assurances do we have
3    that notice was actually given to or
4    received by these people, that they had
5    the opportunity to object and they
6    elected not to object and that, legally,
7    the court's order can, in fact, not
8    result in any consequence?
9        We are kind of getting into a legal
10   opinion area, as well as factual
11   determination that these parties weren't
12   simply served with the motion, but they
13   received it and reviewed it and,
14   therefore, had the ability to object and
15   elected not to do so.
16       MR. REESE:  With respect to notice
17   of the proposed assumption and assignment
18   to Wireless Matrix, the Debtors have
19   filed the notice and affidavits of
20   service in accordance with the terms of
21   the bidding procedures order,
22   demonstrating that, in fact, we have
23   complied with the terms of bidding
24   procedures order, and we would anticipate
25   that any sale approval would include a

1

2     factual finding that, in fact, notice

3     was --

4            MR. ROGOFF:  All right.  We  --

5            You know what, I will retract.

6            MR. REESE:  Thank you.

7            MR. FAY:  I guess the question is, I

8     guess, back to me.

9            Maybe you can help me clarify that,

10    whether you, by raising this now, are

11    ascribing some value to this term, and it

12    would be helpful to know that value; so,

13    that way we can assess our next

14    appropriate bid.  Because it might change

15    our bid or, I guess our bid is not

16    finalized, given this discussion.

17           If you could comment on that, that

18    will go into our factors.

19           MR. REESE:  You are seeking economic

20    value?

21           MR. FAY:  It seems like you are

22    ascribing value; otherwise, we will talk

23    about it.  I would like to know what that

24    value is.

25           MR. LYONS:  I think procedurally we

1

2    stated that it is an enhancement right

3    now on the terms.

4        I believe the value of that

5    enhancement becomes relevant if the other

6    bidder decides to bid against that

7    enhancement, and if they decide not to,

8    to agree to that term change and,

9    instead, wanted to try to enhance price,

10   at that point, I think we would need to

11   ascribe an economic value to it.  I

12   think, at this stage, it is premature.

13       So, either -- I guess the question

14   is, is @Road willing to include that as

15   part of the $7.7 million bid or not?  If

16   not, we can discontinue.  And, if so, we

17   will continue with that enhancement.

18       MR. MEHOK:  Would you focus, or

19   point to the section of the sale order.

20       MR. LYONS:  I don't have a copy.

21       MR. REESE:  It would be paragraph 17

22   on page 13 of the sale approval order

23   that was filed as an exhibit to the sale

24   motion.

25       MS. IZURIETA:  Say that one more

1
2       time.

3            MR. REESE:  It is paragraph 17 on

4       page 13.

5            A PARTICIPANT:  The order is in

6       Exhibit 4.

7            MR. REESE:  It is in Exhibit 4,

8       roughly halfway through.

9            I would also direct you to paragraph

10      R on page 8.

11           MS. IZURIETA:  Paragraph R what?

12           MR. REESE:  On page 8.

13           MS. IZURIETA:  Thank you.

14           MR. FAY:  It is @Road's view that

15      the eliminating of this term does have

16      real economic value, and I do see it as

17      somewhat significant and important, so it

18      is a part of our calculations; so, we

19      would ask that, if we were to make this

20      enhancement, it would be considered, of

21      course, given that value.

22           With that, I would like to confirm

23      that our subsequent bid is $7.7 million,

24      and we would make the proposed

25      enhancement --

1

2          MR. BAER:  Could you speak up.  Did

3     you say that you would --

4          MR. FAY:  We would delete the

5     schedule as requested.  Did you hear

6     that?

7          MR. BAER:  Delete the schedule.

8          MR. FAY:  Delete the schedule that

9     was requested.

10         MR. BAER:  Thank you.

11         MR. REESE:  The bid is, then, $7.7

12    million and we will remove schedule

13    6.2.5.  Section 6.2.5.

14         MR. FAY:  Therefore, we would

15    include in this subsequent bid that

16    enhancement and the value that ultimately

17    we expect would be ascribed to it.

18         MR. REESE:  Very good.  Thank you.

19         MR. LYONS:  And all other terms of

20    that bid are in force.

21         MR. FAY:  I confirm that, yes.

22         MR. REESE:  All right.  MobileAria's

23    view would be that @Road's bid would

24    constitute a higher or otherwise better

25    subsequent bid and would now constitute

1

2   the highest or otherwise best bid

3   currently on the table at auction.  We

4   would then turn to Wireless Matrix.

5        MR. ROGOFF:  Putting aside the

6   characterization of @Road's bid by @Road

7   will bid 7.8 million .  No other changes

8   to our contract.

9        MR. REESE:  You will not modify

10  schedule 6.2.5?

11       MR. ROGOFF:  That is not a part of

12  our bid, at this point.

13       MR. LYONS:  We can take a break.

14       MR. REESE:  We will take a short

15  recess and reconvene in five or 10

16  minutes.

17       MR. ROGOFF:  Done.  Thank you.

18       (Recess.)

19       (Time noted:  3:22 p.m.)

20       MR. REESE:  Back on the record.  The

21  auction for MobileAria.

22       We are back on the record to report

23  that I believe, and I will ask for

24  confirmation of this from Wireless

25  Matrix' designated representative, that

1

2   there are two modifications to the bid

3   previously made by Wireless Matrix in the

4   amount of $7.8 million and those two

5   remissions are first, with respect to

6   section 4.3 of the asset sale and

7   purchase agreement, and there is new

8   language of section 4.3 which would

9   replace the existing 4.3 in its entirety,

10  and we would mark that new language as

11  Exhibit 6.

12      So, that new language that we just

13  marked as Exhibit 6, and I believe that

14  we shared with everyone in the room,

15  would be the first modification.

16      The second modification would be to

17  section 6.2.5 of the asset sale and

18  purchase agreement, and that modification

19  would be to add, at the beginning of that

20  section, the following language.

21      "Except as expressly obviated by the

22  terms of the sale approval order," and

23  the language of that section would then

24  continue.

25      Can the designated representative

1

2    for Wireless Matrix please confirm that

3    those two items just described are

4    modifications to your bid, all other

5    terms of your previous bid remain in

6    force and effect.

7        MR. ROGOFF:  Yes.  I will confirm

8    that those two modifications are

9    acceptable changes to the form of our

10    agreement in addition to the $7.8 million

11    bid that we previously offered.

12        MR. REESE:  Okay.  All other terms

13    of that bid are the same?

14        MR. ROGOFF:  Are the same.

15        MR. REESE:  Very good.

16      At this point, based upon those

17    representations on the record, MobileAria

18    would determine that to be a higher or

19    otherwise better bid for the assets of

20    MobileAria, and that would constitute a

21    qualifying bid, and would be the highest

22    or otherwise best bid currently on the

23    table at this point in time.

24        MR. LYONS:  Would the parties like

25    to take a recess?

1

2        MR. FAY:  If I could ask a question

3   first.

4        First, in our prior bid, we

5   suggested that we might eliminate the

6   required consensus schedule, and I was

7   curious whether MobileAria had ultimately

8   ascribed any value to that.

9        MR. REESE:  We did believe that that

10  had an economic value; however, we

11  believe that the revisions made by

12  Wireless Matrix to section 6.2.5, which

13  deals with that issue, do adequately

14  address the same concerns.

15       MR. FAY:  All right.  And then,

16  second, and for clarification, I am

17  wondering whether there is a value that

18  has been ascribed to the proposed 4.3

19  language which is now Exhibit 6.?

20       MR. REESE:  We do believe that there

21  is value, and we have not ascribed a

22  specific monetary value to that.

23       MR. FAY:  So, I should think of the

24  current bid as really 7.8 million plus --

25  certain enhancements, as changed?

1

2        MR. REESE:  That is correct.

3        MR. FAY:  Okay.

4        I think, then, we would like to take

5    a recess and have an opportunity to

6    review the document.

7        MR. REESE:  Any comments from any

8    other parties on the record before we

9    take a recess?

10       (Pause.)

11       MR. REESE:  Hearing none, I think

12   that we would take a recess.

13       We are off the record.

14       (Recess.)

15       (Time noted:  6:11 p.m.)

16       MR. REESE:  Back on the record.

17       And I believe where we are at

18   currently is the current highest or

19   otherwise best bid is the bid of Wireless

20   Matrix, who would now open the floor to

21   @Road and ask whether or not you intend

22   to make any further bid?

23       MR. FAY:  We would like to make a

24   further bid, and that bid would be that

25   we would agree to prior bids changed to

1
2     section 6.2.5, which included the
3     language, I believe, that started at --
4     that started as, started with "except as
5     expressly obviated by the terms of the
6     sale approval order," and I think that
7     that also meant that this would be,
8     therefore, part of our bid that the
9     schedule 6.2.5 would be reinserted into
10    the agreement and, in addition, our bid
11    would include the, I guess we will call
12    it the rider to section 4.3.
13        MR. REESE:  Which, I think, we would
14    like to mark as Exhibit 7, and if you
15    can -- authenticate that, in fact, that
16    is an accurate copy of that language.
17        MR. FAY:  Thank you.
18        Exhibit 7 looks as though it is an
19    accurate copy of what we propose, but we
20    may take a couple minutes later to just
21    confirm that that is the case.
22        MR. REESE:  Thank you.  You can do
23    it now.
24        MR. FAY:  Okay.
25        (Pause.)

1

2          MR. FAY:  With respect to Exhibit 7,

3     we would like to just make one revision.

4          MR. LYONS:  You can mark it.

5          MS. SHULMAN:  All right.

6          MR. LYONS:  If you would like to

7     look at the exhibits before they go in.

8          MR. BAER:  We would like to see

9     whatever changes they make.

10         MR. FAY:  To clarify, the provision

11    that we are making is on page 2, first

12    paragraph, revision -- it would now read:

13    "Regarding purchaser's acquisition of

14    inventory from Delphi under this section,

15    purchaser shall have the same rights

16    under the Prolificx' agreement as seller,

17    including warranty rights that Delphi and

18    its affiliates have as buyers against

19    Prolificx."  Okay.

20         MR. REESE:  We will mark Exhibit 7,

21    the revised language.  Do you want to

22    look at it?

23         MS. IZURIETA:  I have it.  Thank

24    you.

25         MR. FAY:  The final element of the

1

2      bid is, we would change or raise the

3      purchase price to $7.9 million, which, I

4      believe, unless I had forgotten my math

5      since 11 a.m., that is a qualifying

6      subsequent bid.

7            MR. REESE:  Okay.  Just to confirm,

8      all other terms of your bid, other than

9      those that you have expressly laid out,

10     have remained the same since your prior

11     bid?

12           MR. FAY:  That is correct.

13           MR. REESE:  With those changes,

14     having reviewed the language of section

15     4.3, as you have proposed it, MobileAria

16     would conclude that that, the language of

17     4.3 you have proposed is substantially

18     equivalent to the language of 4.3

19     proposed by Wireless Matrix and,

20     therefore, we would conclude that that is

21     a higher or otherwise better offer and

22     would qualify as a subsequent bid.

23           MR. FAY:  Thank you.

24           MR. REESE:  Therefore, @Road has the

25     highest or otherwise best offer for the

1

2       assets.

3            I think we will now look to Wireless

4       Matrix, if you have a response.

5            MS. IZURIETA:  We require --

6            MR. ROGOFF:  First of all, just as a

7       standing for the record, unless I note

8       otherwise.

9            MobileAria bids --

10           (Pause)

11           All right.

12           Unless otherwise stated for the

13      record, all terms and conditions of our

14      bid will remain the same, except as I

15      expressly note, at least for our bid, and

16      I assume for theirs, as well, they can

17      confirm this, so you don't always have to

18      ask if it remains unchanged, and I will

19      tell you what changes.

20           Having said that, we are going to

21      adopt the modified section 4.3, which I

22      guess is Exhibit 7; however, we are going

23      to change the wording of the paragraph on

24      the second page, not necessarily using

25      the wording that was just read into the

1

2    record, but using different wording,

3    which I will read to you and then show

4    you, and it is working with the existing

5    wording that you had there, but adding to

6    the end of it, where it says "against

7    Prolificx," and then adding the clause

8    "or otherwise arising under the

9    Prolificx' agreement, including without

10   limitation, transfer of title and

11   invoicing and payment terms."

12        With that modification, we would

13   work with, adopt this new section of 4.3,

14   which, I guess, technically would become

15   an Exhibit 8, since we modified the

16   language even further, and raise our bid

17   to 8 million.

18        MR. REESE:  One second.  We will

19   mark the black line page as Exhibit 8, as

20   reflected.  And having reviewed that

21   language, we don't believe that that, the

22   post language changes the economic value

23   of your bid; therefore, we would

24   determine that your bid of $8,000,000,

25   with that revision, would constitute a

1

2      higher or otherwise better offer, and a

3      qualifying subsequent bid.

4           We will now turn to @Road.

5           MR. FAY:  We would like to take a

6      couple of minutes, a short recess, and

7      then come back to you.

8           MR. REESE:  Okay.

9           MR. ROGOFF:  Can we get a

10     clarification, with all due respect, to

11     all of us who have taken breaks, and we

12     have all done it today; but at this

13     point, can we keep these breaks fairly

14     short?

15          MR. FAY:  Yes.  That would be fine.

16          MR. REESE:  With that, we will go

17     off the record.

18          (Recess.)

19          MR. REESE:  Back on the record.

20          Back on the record, and I think the

21     floor is yours.

22          MR. FAY:  Okay.  So, we would like

23     to start by saying that unless we specify

24     otherwise, all of the terms and

25     conditions of our prior bid will continue

1

2 in any subsequent bid.  So, we will try

3 to be specific about any changes.

4  So, in light of that, what we would

5 like to do is we would like to adopt the

6 proposed change to section 4.3 that was

7 outlined in Exhibit 8, and so our new bid

8 would be with Exhibit 8, and it would be

9 at a purchase price of 8.1 million.

10  MR. REESE:  Okay.  Very good.  That

11 would constitute a higher or otherwise

12 better offer and a qualifying subsequent

13 bid.

14  We will turn to --

15  MR. ROGOFF:  8.2 million.

16  MR. REESE:  That would also be a

17 higher or otherwise better offer.

18  MR. FAY:  Okay.  So, we will enjoy a

19 brief recess and we will be back.

20  MS. SHULMAN:  We will do what we did

21 before.

22  MR. REESE:  Off the record.

23  (Time noted:  6:30 p.m. )

24  (Recess.)

25  MR. REESE:  Back on the record.

1

2        MR. FAY:  So, we would like to make

3    a subsequent bid in the amount of $8.5

4    million.

5        MR. REESE:  Okay.  Given that we are

6    just going on the price, I think we will

7    forego the formality of saying higher or

8    otherwise, and it is clear in terms of

9    Wireless Matrix.

10        MR. CARLSON:  We would like to

11    caucus about this bid; so, we need ten

12    minutes.

13        MR. REESE:  All right.  We will

14    recess.

15        (Recess.)

16        MR. ROGOFF:  Wireless Matrix bids

17    8.8 million.

18        MR. REESE:  @Road?

19        MR. FAY:  We would like to take a

20    caucus for a few moments.

21        MR. REESE:  Off the record.

22        (Recess.)

23        MR. REESE:  Back on the record.

24        MR. FAY:  @Road would like to make a

25    subsequent bid at $9.1 million.

1

2          MR. REESE:  Okay.

3          MR. ROGOFF:  Wireless Matrix bids

4     9.5.

5          MR. REESE:  Thank you.

6          MR. FAY:  We would like to take a

7     recess.

8          Thank you.

9          MR. REESE:  Off the record.

10          (Recess.)

11          MR. REESE:  Back on the record.

12          MR. FAY:  So, @Road would like to

13     make a subsequent bid at $10,000,000.

14          MR. REESE:  Thank you.

15          MR. CARLSON:  We would like to

16     caucus.

17          MR. REESE:  Off the record.

18          (Recess.)

19          MR. ROGOFF:  Wireless Matrix bids

20     10.2 million.

21          MR. REESE:  10.2 million.  All

22     right.

23          MR. FAY:  We would like to take a

24     brief recess.

25          MR. REESE:  Good.

1

2        Off the record.

3        (Recess.)

4        MR. FAY:  Okay.

5        MR. REESE:  Back on the record.

6        MR. FAY:  @Road would like to make a

7    subsequent bid at $10.5 million.

8        MR. CARLSON:  Do you want to caucus?

9        (Pause.)

10       MR. ROGOFF:  We would like to

11   request a brief recess, and we would also

12   like to speak with the debtor for a

13   moment.

14       MR. REESE:  Okay.  Very good.

15       Off the record.

16       (Recess.)

17       MR. REESE:  Back on the record.

18       To summarize the discussion that we

19   had off the record, we had a request from

20   Wireless Matrix to consider two bid

21   enhancements, the first of which was to

22   provide a value for a commitment to

23   purchase a certain number of units within

24   a set time frame, and in a guarantee of

25   certain purchases that are of the 6,228

1

2     units referenced in section 4.3.

3          The debtor has decided that the

4     value would be $250 per unit, with

5     respect to any commitment, such that a

6     commitment for each thousand units would

7     be, would have a value of $250,000.

8          The second --

9          MR. HART:  Within one year.

10          MR. REESE:  Within one year.  That

11     was the set time.

12          The second point was, a request for

13     the value of a change to section 4.3 to

14     remove the limitation with respect to

15     only providing certain customers that are

16     enumerated in that section, the debtors

17     had determined, at this time, that they

18     do not believe that there would be an

19     economic value associated with that

20     change.

21          Those were the two issues.

22          MR. LYONS:  I think that summarizes

23     it.

24          MR. REESE:  I think it summarizes

25     it.  So, we, at this point, I believe it

60

1

2     would be Wireless Matrix' opportunity to

3     bid.

4              MR. ROGOFF:   At this time, Wireless

5     Matrix will bid $10.7 million, no other

6     changes in the contract.   Thank you for

7     the clarification.

8              MR. REESE:   Very good.

9              MR. FAY:   We would like to take a

10    brief recess.

11             MR. REESE:   All right.

12         Off the record.

13         (Recess.)

14             MR. REESE:   Back on the record.

15             MR. FAY:   @Road would like to make a

16    new subsequent bid at $11 million.   There

17    are no other changes.

18             MR. CARLSON:   I want to caucus.

19             MR. ROGOFF:   All right.

20             MR. REESE:   We will take a recess at

21    this time.

22         (Recess.)

23             MR. REESE:   Back on the record.

24             MR. ROGOFF:   Wireless Matrix is

25    bidding $11.7 million, consisting of the

1

2    following:  It will be $11.2 million with

3    respect to the purchase price, and it

4    will be a guarantee with respect to

5    section 4.3 of the agreement, to take

6    2,000 units within the one-year period.

7         Previously, on the record, the

8    debtor identified that the value was

9    $250,000 per thousand units.  Since we

10   are taking 2,000 units, that is $500,000

11   of value from the guarantee, plus going

12   up from 11 to 11.2, for a total value of

13   our bid of $11.7 million.

14        MR. FAY:  We would like to take a

15   recess.

16        MR. REESE:  Off the record.

17        (Time noted:  8:00 p.m.)

18        (Recess.)

19        MR. REESE:  Back on the record.

20        MR. LYONS:  We will mark this as the

21   next exhibit.  Back on the record.

22        I would like to hand to both bidders

23   what is now Exhibit 9, which is a black

24   line reflecting all changes to section

25   4.3 that @Road submitted a couple hours

1

2     ago or so.

3         If you guys could take a look at

4     that.

5         MR. FAY:  Thank you.

6         (Pause.)

7         MR. LYONS:  If both bidders could

8     confirm that that is the section 4.3 that

9     is part of both current bids and

10    subsequent bids.

11        MS. IZURIETA:  They have not bid

12    yet.

13        MR. LYONS:  Subsequent.  Previous

14    bids or subsequent bids.  @Road confirms

15    that this is the section, section 4.3.

16        MR. FAY:  @Road confirms that that

17    is the new section 4.3, the Exhibit 9.

18        MR. ROGOFF:  Wireless Matrix also

19    confirms.

20        MR. LYONS:  Mark this.

21        MR. REESE:  We are back to the

22    further bids.

23        MR. FAY:  Okay.

24        @Road would like to provide the

25    following bid, which is:  We would agree

1

2      to Exhibit 9 and we would bid, then,

3      $11.4 million, which, if I have got my

4      math correct, is a $200,000 incremental

5      increase to the prior bid.

6          MR. REESE:  That would include the

7      commitment in 9 for a guarantee of 2,000

8      units?

9          MR. FAY:  Correct.

10         MR. REESE:  The 11.4 in cash

11     consideration.

12         MR. FAY:  That is correct.

13         MR. LYONS:  The value from the

14     estate's perspective, as indicated to the

15     parties, would be 11.9 in the aggregate.

16         MR. CARLSON:  We would like to

17     caucus.

18         MR. REESE:  Off the record.

19         (Recess.)

20         MR. REESE:  Back on the record.

21         MR. ROGOFF:  Wireless Matrix has no

22     further bids.

23         MR. REESE:  Okay.

24         Any further comments from any

25     parties on the record?

1

2          (Pause.)

3          Hearing none, I think we will take a

4     recess to have a short caucus and then

5     come back.

6          MR. LYONS:   It will be short.

7          (Recess.)

8          MR. REESE:   Back on the record.

9     Upon Wireless Matrix' previous statement

10    that they intend to make no further bid,

11    we have caucused internally and with our

12    creditor constituencies and have

13    determined that @Road's final bid of

14    11.4 million in cash, including a 2,000

15    unit guarantee and all of the other terms

16    and conditions that have been described

17    on the record, constitutes the highest

18    score and the otherwise best bid for the

19    assets of MobileAria, subject to the

20    approval of our board and a Court

21    approval of that transaction at the sale

22    hearing, and entry of an order providing

23    for those terms.

24          We have also determined that,

25    pursuant to the bidding procedures, the

1

2      final bid of Wireless Matrix will

3      constitute the alternate bid that we will

4      seek approval of at the hearing, should

5      we not close the transaction with @Road.

6          And again, all these decisions

7      remain subject to board approval, which

8      we intend to seek tonight at a meeting

9      with our board of directors, and subject

10     to Court approval, pursuant to the terms

11     of the bidding procedures order, and with

12     that, the auction is concluded.

13         MR. LYONS:  Any comments from the

14     parties, either the bidders or the

15     creditors  --

16         MS. SHULMAN:  Thank you for sitting

17     here today, to both parties, also.

18         MR. LYONS:  On behalf of MobileAria

19     absolutely.

20         Thank you, both @Road and Wireless

21     Matrix for participating in the process.

22         Off the record.

23         Thank you.

24         (Time noted:  8:30 p.m.)

25

```
 1

 2             C E R T I F I C A T E

 3   STATE OF NEW YORK      )

 4                          ) ss.

 5   COUNTY OF NEW YORK     )

 6

 7        I, ROBERT X. SHAW, CSR, a Notary

 8   Public within and for the State of New

 9   York, do hereby certify:

10        That the above record is a true

11   record of the proceedings taken on July

12   6, 2006.

13        I further certify that I am not

14   related to any of the parties to this

15   action by blood or marriage; and that I

16   am in no way interested in the outcome of

17   this matter.

18        IN WITNESS WHEREOF, I have hereunto

19   set my hand this 7 day of July, 2006.

20

21

22   _____

23            ROBERT X. SHAW, CSR

24

25
```

**A**

ability 39:14
absolutely 65:19
acceptable 46:9
accepted 16:5 36:11
account 21:11 29:2
accurate 49:16,19
acquisition 50:13
Acquisitions 5:15
action 30:6 66:15
Activation 20:22
Actual 24:6
Adam 2:21 17:6
add 29:4 45:19
added 24:21 25:2
adding 25:6 53:5,7
addition 5:25 9:4
　10:20 26:5 37:25
　46:10 49:10
additional 12:9
　14:19 19:16 25:5
　25:21 26:24 27:18
　27:23 29:5,9
address 35:9,20
　47:14
addressed 34:20
adequately 47:13
adjourn 31:3
adopt 52:21 53:13
　55:5
adopting 26:23
advise 15:2,20
　29:14
advised 11:9 19:5
　23:18 27:16
advisers 9:17
advisors 9:19,21
Affairs 8:8 17:4
affidavits 39:19
affiliated 5:7
affiliates 50:18
affirm 16:18 18:21
　19:8
affirmative 33:5
　38:13,18
afforded 6:2
Agasse 3:21
agent 9:21 11:13
aggregate 63:15
aggregating 24:21
ago 62:2
agree 22:11 36:4
　41:8 48:25 62:25
agreed 18:24
agreeing 38:23
agreement 6:8 7:23
　8:10,14,16 10:5

10:11,13 13:5
　18:23 19:22 20:3
　20:4 22:11 23:8
　23:11,14,16,17,25
　24:7,22,24 26:6,8
　26:20,22 27:10,14
　27:14,21 28:24
　29:4,14,17 45:7
　45:18 46:10 49:10
　50:16 53:9 61:5
agreements 34:13
agrees 25:3
al 1:6
Allison 11:7
allow 12:9
alphabetical 16:21
alternate 13:12
　15:19,23 65:3
Alto 2:14
ALVAREZ 4:6
amenable 32:25
Americas 2:19
amount 10:22
　13:21 14:3,6
　24:20 45:4 56:3
Analyst 3:21
answer 27:4
anticipate 39:24
anybody 7:15
anyone's 22:6
appear 34:13
appreciate 18:18
　22:25 27:3 28:8
　28:21 36:10
appropriate 33:8
　34:16,19 35:13,20
　37:15 40:14
approval 5:21 6:5
　17:21 37:4,9,17
　38:9 39:25 41:22
　45:22 49:6 64:20
　64:21 65:4,7,10
approvals 17:20
　32:23 34:2
approved 16:6
　38:17
approving 6:15
area 39:10
areas 38:21
arising 53:8
Arps 1:10 2:4 5:5
　5:16
ascribe 41:11
ascribed 43:17 47:8
　47:18,21
ascribing 40:11,22
aside 23:7 44:5

asked 27:3 28:22
　33:10
aspects 28:16,24
assess 21:4 40:13
asset 6:8 7:22 8:10
　8:14,15 10:4,10
　10:13 13:5 18:23
　19:11 26:22 45:6
　45:17
assets 6:7,21 9:15
　10:7 11:21 13:15
　30:22 31:18 46:19
　52:2 64:19
assigned 12:5 22:12
　28:18
assignment 19:21
　33:3 38:11 39:17
associated 22:2
　59:19
assume 29:11 52:16
assumed 22:12
assumption 19:20
　33:3 38:11 39:17
assurances 38:22
　39:2
attachment 37:12
attempt 21:14
attend 11:8
attendees 25:16
Attorneys 2:5,18
　3:4,14
auction 1:9 6:21,24
　7:2,7 9:11 11:9,10
　11:17 12:2 13:25
　14:24 15:9,24
　16:14,20 17:16
　25:13 31:17 36:13
　44:3,21 65:12
August 13:15
authenticate 49:15
authority 17:14,19
authorized 16:18
Automotive 9:17
available 20:7
　21:24
Avenue 2:19 3:15
aware 5:6,19 6:23
　9:13 19:19
a.m 1:11 9:23 51:5

**B**

B 1:13 3:7 24:6,12
back 27:6 30:15,16
　31:9,15 40:8
　44:20,22 48:16
　54:7,19,20 55:19
　55:25 56:23 57:11

58:5,17 60:14,23
　61:19,21 62:21
　63:20 64:5,8
BAER 3:17 43:2,7
　43:10 50:8
Bankruptcy 1:2
　5:10 7:3 17:20
based 21:22 46:16
basis 35:4
Bean 20:22
beginning 45:19
behalf 16:12 17:7,9
　17:17 38:24 65:18
belief 20:2
believe 15:17 18:8
　22:5 23:11,24
　24:11,23 27:8,12
　27:19 28:3,8,15
　28:17 30:10 32:13
　37:8 38:15 41:4
　44:23 45:13 47:9
　47:11,20 48:17
　49:3 51:4 53:21
　59:18,25
Bennett 3:23 20:12
best 14:8,24 18:21
　19:2,9 22:6 30:21
　44:2 46:22 48:19
　51:25 64:18
better 28:14 29:25
　30:5 35:11,17,20
　35:25 36:8,12
　43:24 46:19 51:21
　54:2 55:12,17
bid 5:22,25 7:21 8:4
　9:25,25 10:3 11:4
　11:4,21,25 13:8,8
　13:11,12,24 14:3
　14:24 15:8,16,17
　15:18,19,21,22,22
　15:23 16:4,6
　25:23 26:3,13
　28:14,16 29:19,25
　30:6,11,12,18,20
　32:2,6,12,15,15
　33:12,13,15 34:17
　34:21,22 35:4,11
　35:17,24 36:7,8,9
　36:11,12,13,15,21
　36:21 40:14,15,15
　41:6,15 42:23
　43:11,15,20,23,25
　44:2,6,7,12 45:2
　46:4,5,11,13,19
　46:21,22 47:4,24
　48:19,19,22,24,24
　49:8,10 51:2,6,8

51:11,22 52:14,15
　53:16,23,24 54:3
　54:25 55:2,7,13
　56:3,11,25 57:13
　58:7,20 60:3,5,18
　61:13 62:11,25
　63:2,5 64:10,13
　64:18 65:2,3
bidder 6:2 15:7
　22:8,13 41:6
bidders 12:3,18
　16:10 61:22 62:7
　65:14
bidding 5:23 6:10
　6:15,18,22 7:18
　9:14 10:23 11:2,5
　11:23 12:21,22
　13:2,10,16 14:14
　14:21 16:3,3 26:5
　26:14 29:2,6
　39:21,23 60:25
　64:25 65:11
bids 12:10 13:17
　15:6 22:21 29:10
　31:19,25 48:25
　52:9 56:16 57:3
　57:19 62:9,10,14
　62:14,22 63:22
binary 20:3
bind 38:12
binding 10:3 17:23
black 53:19 61:23
blood 66:15
board 15:13 64:20
　65:7,9
bonus 27:22,24
bonuses 24:20 25:4
　25:9
bottom 24:9 26:10
　26:16
bound 7:12
Branson 1:15 2:15
　5:17 20:17 24:6
break 44:13
breaks 54:11,13
break-up 13:22
brief 30:25 55:19
　57:24 58:11 60:10
bringing 33:13
business 13:13
　15:16
buyers 50:18

**C**

C 2:2,21 3:2,25 4:2
　4:4 66:2,2
calculate 31:25

calculating 13:23
calculation 30:3
calculations 42:18
California 2:14
call 49:11
Canadian 14:7,11
Carlson 4:5 56:10
    57:15 58:8 60:18
    63:16
CARREN 3:7
CARY 2:13
case 1:4 32:10
    49:21
cases 5:9
cash 10:6 14:4
    63:10 64:14
caucus 30:9 31:2
    56:11,20 57:16
    58:8 60:18 63:17
    64:4
caucused 64:11
CEO 4:5
certain 5:22,23
    6:15 7:7 10:17
    23:10,23 26:13
    47:25 58:23,25
    59:15
certify 66:9,13
CFO 4:4
change 24:25 35:14
    35:22,22 40:14
    41:8 51:2 52:23
    55:6 59:13,20
changed 33:14,22
    37:13 47:25 48:25
changes 23:10
    26:24 27:9,13
    44:7 46:9 50:9
    51:13 52:19 53:22
    55:3 60:6,17
    61:24
Chapter 5:9
characterization
    44:6
charge 20:8 21:24
checked 7:11
Chicago 2:8
Christian 3:23
Christie 1:15 2:15
Christy 5:16
clarification 22:18
    22:24 25:12 26:19
    34:25 35:5 36:7
    37:22 38:25 47:16
    54:10 60:7
clarify 35:6 36:22
    40:9 50:10

clause 53:7
clear 6:19 18:12
    56:8
client 17:9,18 18:6
    19:5 20:24 23:18
    38:24
clients 28:6
close 15:24 65:5
closing 10:19 13:14
    14:6 25:4
code 20:3
colleague 11:7
come 23:21 54:7
    64:5
commencement 7:4
comment 34:20
    40:17
commenting 28:23
comments 25:21,25
    29:20 31:20 48:7
    63:24 65:13
commitment 58:22
    59:5,6 63:7
committe 11:13
committee 9:20
    11:12,15 12:4
    18:16
communication
    21:20
company 4:9 16:19
    17:14,17,19,23
    30:17
company's 29:3
comparable 25:6
competing 9:15,24
    12:10
competitive 6:10
complete 7:2
completion 6:9
complied 39:23
comprised 20:9
concerns 15:3
    47:14
conclude 51:16,20
concluded 65:12
condition 26:9,16
conditions 27:25
    29:12 52:13 54:25
    64:16
conference 12:6
confirm 14:13 18:4
    18:6 19:4 31:23
    32:24 42:22 43:21
    46:2,7 49:21 51:7
    52:17 62:8
confirmation 44:24
confirms 62:14,16

62:19
conform 23:15 26:7
conformed 24:3
conforming 27:10
consensus 47:6
consent 33:6 37:19
    38:13,19
consequence 39:8
consider 22:8 23:4
    30:5 31:2 34:16
    35:3 36:18 58:20
consideration 10:6
    14:5 63:11
considered 29:24
    30:18 42:20
consisting 60:25
constituencies 15:5
    15:10 18:9 64:12
constitute 30:21
    37:18 43:24,25
    46:20 53:25 55:11
    65:3
constitutes 30:11
    64:17
consult 15:11
contacted 11:8
contained 10:15
contains 18:22
context 34:17
continue 41:17
    45:24 54:25
continues 9:12
contract 21:12 22:8
    23:5 38:2 44:8
    60:6
contracts 22:10
    33:4 34:4,6 35:18
    38:5,7
Cont'd 3:2 4:2
conversation 31:24
conversations 12:7
    12:17
copy 7:16 8:13
    12:24 21:6,14
    22:15 25:16,19
    37:9 41:20 49:16
    49:19
Corcoran 1:16 3:19
    9:5
Corp 2:5
Corporate 8:8 17:4
CORPORATION
    1:6
correct 29:16 32:9
    33:17 34:11 48:3
    51:12 63:4,9,12
counsel 5:6 9:6

11:15 17:4 21:21
COUNTY 66:5
couple 49:20 54:6
    61:25
course 13:16 14:22
    14:25 23:5,6
    32:13 42:21
court 1:2 4:10 5:10
    6:13,24 7:3 17:21
    37:5 64:20 65:10
court's 39:7
covered 23:25
    24:23
covering 20:4
credit 13:21 14:11
creditor 15:4,10
    18:9 64:12
creditors 3:14 9:20
    11:12 12:4,19
    18:16 65:15
cross 25:18
CSR 1:23,24 66:7
    66:23
curious 47:7
current 32:2 33:11
    33:12 47:24 48:18
    62:9
currently 5:9 33:19
    44:3 46:22 48:18
customers 59:15

D

D 5:12 8:7
dated 6:8 7:18,23
    8:6,11,19,22
David 4:6
day 25:5 66:19
days 13:13
deadline 9:24
deals 32:23 47:13
debtor 1:7 58:12
    59:3 61:8
debtors 5:7,8,20
    39:18 59:16
decide 16:12 41:7
decided 59:3
decides 41:16
decisions 65:6
declined 11:16
deemed 38:12
defined 10:17 11:5
    13:8
delete 26:9 43:4,7,8
deleted 10:15
deletion 26:15
deliberate 15:15
Delphi 1:6 2:5 3:19

5:15 9:6,17 50:14
    50:17
demonstrating
    39:22
depending 15:13
deposit 10:21
Deputy 9:5
describe 7:5 36:5
described 46:3
    64:16
designate 16:11
designated 16:16
    17:12 44:25 45:25
designating 9:9
desires 15:7
determination 16:8
    39:11
determine 15:15,18
    30:9 46:18 53:24
determined 11:3
    15:21,23 30:19
    59:17 64:13,24
different 37:23 53:2
differential 23:13
direct 36:2 42:9
Director 5:14
directors 10:25
    11:3 15:14 65:9
disagreeing 38:23
disclosure 7:25
    8:12,18
discontinue 41:16
discussed 19:17
    34:25
discussion 32:22
    40:16 58:18
District 1:3 5:11
DLA 2:13 5:17
docket 6:11,12,17
    19:23
document 7:13
    19:13 48:6
download 20:8
Dr 3:25
draft 34:3,5 37:9
Drain 16:5
Dran 5:12
Drive 2:7
due 23:6 24:20
    54:10

E

E 1:13,13 2:2,2 3:2
    3:2 4:2,2 66:2,2
earlier 8:23 13:13
    24:10 31:24 32:22
    34:12 37:2

**early** 33:21
**East** 2:14
**economic** 23:12
  24:24 27:15 28:9
  28:12,16 40:19
  41:11 42:16 47:10
  53:22 59:19
**edition** 20:5
**effect** 46:6
**EHRMAN** 3:3
**either** 36:19 41:13
  65:14
**elected** 39:6,15
**element** 20:19,21
  50:25
**elements** 12:25
  20:10
**eliminate** 47:5
**eliminating** 42:15
**emphasize** 13:3
**employed** 10:18
**employee** 24:9,19
  25:3
**employees** 10:17
  26:13
**employment** 26:12
  28:3
**encourage** 14:22
**engage** 22:6
**enhance** 41:9
**enhancement** 36:19
  41:2,5,7,17 42:20
  42:25 43:16
**enhancements**
  47:25 58:21
**enjoy** 55:18
**ensure** 18:11
**enter** 7:7
**entered** 6:11,14,16
  7:10 8:16 16:7
  19:23
**entirety** 45:9
**entitled** 11:8,18,25
  13:21 27:22
**entry** 6:12 37:15,16
  64:22
**enumerated** 59:16
**environment** 20:6
**equal** 13:22 32:5,9
**equity** 11:13,15
**equivalent** 51:18
**Eric** 4:10
**Esq** 1:14,14,15,16
  2:9,10,15,21 3:7,8
  3:9,10,11,17,19
**estate** 27:12
**estate's** 63:14

**estimate** 31:4,10
**et** 1:6
**evaluation** 10:24
**event** 22:13
**everybody** 9:13
**example** 14:2 32:2
**exception** 7:14
  10:14
**exchange** 14:9
**executed** 8:11
**exercise** 15:15
**exhibit** 7:17,20,22
  8:3,5,21,24 10:2
  12:23 18:22 19:10
  25:19 41:23 42:6
  42:7 45:11,13
  47:19 49:14,18
  50:2,20 52:22
  53:15,19 55:7,8
  61:21,23 62:17
  63:2
**exhibits** 7:9,13 9:8
  9:11 50:7
**existing** 26:22 45:9
  53:4
**expect** 43:17
**express** 15:5
**expressly** 45:21
  49:5 51:9 52:15
**e-mail** 11:9

                F
**F** 1:13 66:2
**fact** 14:14 17:25
  21:23 25:8,10
  39:7,22 40:2
  49:15
**factors** 40:18
**factual** 39:10 40:2
**fail** 38:13
**failure** 33:2 37:18
  38:10
**fairly** 54:13
**faith** 10:21
**far** 23:18
**favorable** 27:19
  28:4,9,17 30:2
**Fay** 4:8 8:7 14:17
  16:23,23 17:3
  18:4 19:6,12
  25:15,20 29:23
  30:24 31:7,16,21
  32:10,19 33:7,24
  34:14 35:16 36:25
  40:7,21 42:14
  43:4,8,14,21 47:2
  47:15,23 48:3,23

**49**:17,24 50:2,10
  50:25 51:12,23
  54:5,15,22 55:18
  56:2,19,24 57:6
  57:12,23 58:4,6
  60:9,15 61:14
  62:5,16,23 63:9
  63:12
**fee** 13:22
**feel** 32:16
**fees** 21:25
**file** 6:25
**filed** 5:21 19:20
  39:19 41:23
**final** 7:14 19:2
  50:25 64:13 65:2
**finalized** 40:16
**finally** 8:24 19:16
**finding** 40:2
**fine** 36:14 54:15
**first** 7:9 13:4 18:19
  21:2 31:23 34:20
  35:21 45:5,15
  47:3,4 50:11 52:6
  58:21
**five** 7:9 44:15
**five-minute** 30:13
**Flom** 1:10 2:4
**floor** 12:8 22:19
  26:2 30:23 31:19
  48:20 54:21
**focus** 41:18
**following** 8:6 20:10
  24:22 45:20 61:2
  62:25
**force** 43:20 46:6
**forego** 56:7
**forgotten** 51:4
**form** 8:19 46:9
**formality** 56:7
**formally** 15:24
**forward** 6:4 11:10
**four** 10:16
**frame** 58:24
**Framework** 20:22
**free** 18:10 36:20
**full** 17:14,18
**further** 9:11 15:8
  17:20 22:21 36:13
  36:15 37:20 48:22
  48:24 53:16 62:22
  63:22,24 64:10
  66:13
**future** 29:2

                G
**General** 9:5 17:4

**getting** 38:20,24
  39:9
**give** 14:10 31:10
**given** 28:10 33:10
  39:3 40:16 42:21
  56:5
**go** 16:21 18:3 31:9
  40:18 50:7 54:16
**goes** 35:23
**going** 6:4 7:6 11:10
  26:3,4,6 52:20,22
  56:6 61:11
**good** 5:3 10:21 17:6
  43:18 46:15 55:10
  57:25 58:14 60:8
**GRAY** 2:13
**guarantee** 58:24
  61:4,11 63:7
  64:15
**guess** 34:23 36:16
  40:7,8,15 41:13
  49:11 52:22 53:14
**guys** 23:21 62:3

                H
**halfway** 42:8
**hand** 61:22 66:19
**happy** 7:16 35:9
  36:2,5
**Hart** 1:15 3:23 5:18
  14:10 59:9
**hear** 43:5
**hearing** 6:13 16:6
  48:11 64:3,22
  65:4
**heck** 27:7
**held** 6:13
**HELLER** 3:3
**HELLMAN** 2:17
**help** 40:9
**helpful** 18:8 40:12
**HENRY** 3:17
**hereunto** 66:18
**Herriot** 11:7
**higher** 28:13 35:10
  35:17,24 36:9,12
  43:24 46:18 51:21
  54:2 55:11,17
  56:7
**highest** 14:24 30:21
  44:2 46:21 48:18
  51:25 64:17
**hopeful** 21:21
**horse** 6:2
**hours** 61:25
**housekeeping** 16:9

                I
**identified** 61:8
**Illinois** 2:8
**impact** 21:5 23:5,12
  27:15 28:10,12
**important** 30:4
  42:17
**imprisoned** 31:8
**include** 9:10 35:2
  36:20,23 39:25
  41:14 43:15 49:11
  63:6
**included** 8:2,13
  11:11 27:20 28:5
  34:4,5 49:2
**includes** 7:22,25 8:5
**including** 13:10
  50:17 53:9 64:14
**incorporated** 21:18
**increase** 26:15 63:5
**increment** 26:5,14
**incremental** 63:4
**independent** 10:24
**indicate** 17:13
**indicated** 63:14
**informed** 21:2 25:9
**initial** 37:10
**initially** 7:5 27:17
  30:9 64:11
**intend** 12:8 48:21
  64:10 65:8
**intends** 12:11
**intent** 23:14
**interest** 22:6
**interested** 22:20
  66:16
**internally** 21:17
  30:9 64:11
**introduced** 9:3
**introduction** 26:12
**inventory** 50:14
**invitation** 11:16
**invoicing** 53:11
**irrevocable** 13:11
**Isaac** 4:9
**issue** 19:16 35:9
  47:13
**issues** 59:21
**item** 32:25
**items** 8:6 46:3
**Izurieta** 4:4 14:16
  24:8,15 38:6
  41:25 42:11,13
  50:23 52:6 62:11

                J
**James** 4:8 8:7
**Java** 20:4,20,21

**JEFFERIES** 4:9
**JOB** 1:24
**John** 1:14 2:10 5:16
**JOSH** 3:9
**JR** 3:17
**Judge** 5:12 16:5
**judgment** 15:16
**July** 1:12 66:11,19
**June** 5:19 6:9,13,16
7:19,23 8:6,11,22
9:23 11:6 19:22
**J.D** 4:8 16:23
**J2SE** 20:10,15

**K**
**K** 1:14 2:10
**keep** 31:6 54:13
**key** 10:17 26:13
**kicked** 18:5
**kind** 39:9
**Kirsch** 4:6
**know** 7:15 12:2
28:25 29:24 30:5
32:17 34:18 40:5
40:12,23
**knowledge** 18:22
19:2,9
**knows** 17:24
**Kronish** 2:17 17:7

**L**
**L** 1:15 2:15
**laid** 12:21 14:20
30:18 35:14 51:9
**language** 23:10,15
23:19 24:4,23
29:5 33:22 36:19
37:3,6,14 45:8,10
45:12,20,23 47:19
49:3,16 50:21
51:14,16,18 53:16
53:21,22
**LATHAM** 3:13
**lawyers** 38:22
**Lee** 4:9
**legal** 39:9
**legally** 39:6
**lenders** 9:22 11:14
12:5 18:17
**letter** 8:6 10:4
**let's** 30:12 31:25
**Library** 20:20
**license** 19:21 20:2,4
22:11
**licensing** 21:25
**Lieb** 2:17 17:7
**light** 55:4

**likewise** 24:3 26:7
**limitation** 53:10
59:14
**Lind** 3:25 8:9
**line** 53:19 61:24
**Lisa** 3:21
**list** 22:9 25:16
**listed** 20:17 26:10
**LLC** 9:17
**LLP** 2:17 3:3,13
**long** 31:5
**look** 23:3 37:6 50:7
50:22 52:3 62:3
**looking** 23:8
**looks** 19:13 49:18
**Lyons** 1:14 2:10
5:16 30:12 31:4
33:14 40:25 41:20
43:19 44:13 46:24
50:4,6 59:22
61:20 62:7,13,20
63:13 64:6 65:13
65:18

**M**
**Mail** 20:20
**majority** 9:18
**making** 50:11
**Marc** 4:10
**March** 8:19
**Maria** 4:4
**mark** 45:10 49:14
50:4,20 53:19
61:20 62:20
**marked** 7:9,17,20
8:3,13,18,21,24
10:2 12:23 45:13
**Markets** 5:15
**markup** 26:25
**marriage** 66:15
**MARSAL** 4:6
**material** 10:9
**math** 51:4 63:4
**Matrix** 2:18 4:4 6:3
6:4,6 7:21,24 8:17
10:12 11:12,24
12:11 13:6,7,9,20
13:24 14:2,5,22
17:5,8 18:20,24
23:13,17,25 25:22
26:21 29:10,17
30:19 33:10,15
34:5,22 39:18
44:4,25 45:3 46:2
47:12 48:20 51:19
52:4 56:9,16 57:3
57:19 58:20 60:2

**60:5,24 62:18**
63:21 64:9 65:2
65:21
**matter** 15:25 16:9
31:2 66:17
**matters** 7:7
**Meagher** 1:10 2:4
**meant** 49:7
**meet** 15:9,14 31:9
**meeting** 65:8
**MEHOK** 3:8 41:18
**mentioned** 24:10
**Mergers** 5:14
**met** 5:4
**Micro** 19:19 23:2
**Milleldag** 1:15 3:23
5:17
**million** 10:6 14:4
26:4 32:3,7,12
41:15 42:23 43:12
44:7 45:4 46:10
47:24 51:3 53:17
55:9,15 56:4,17
56:25 57:20,21
58:7 60:5,16,25
61:2,13 63:3
64:14
**minutes** 44:16
49:20 54:6 56:12
**MIRIAM** 3:11
**misstatement** 34:12
**MobilAria** 3:25
**MobileAria** 2:6
3:24 5:7,20 6:7,21
7:18,24 8:9,17,22
9:16,16 10:5,8,18
10:21,25 11:22
12:15 13:6 14:4
15:3,14 16:5
18:25 19:11 21:16
22:5,12 30:17
31:18 44:21 46:17
46:20 47:7 51:15
52:9 64:19 65:18
**MobileAria's** 9:18
11:3 13:14 19:21
20:2 21:19 43:22
**modification** 36:18
36:23 45:15,16,18
53:12
**modifications** 8:15
45:2 46:4,8
**modified** 32:25
52:21 53:15
**modify** 26:6 29:3
44:9
**moment** 23:7 31:11

**36:17 58:13**
**moments** 56:20
**monetary** 28:14
47:22
**morning** 5:3 7:11
17:6 19:17 37:12
**morning's** 8:25
**motion** 5:21 6:11
8:22 39:12 41:24

**N**
**N** 2:2 3:2 4:2
**name** 16:17,23
**necessarily** 52:24
**necessary** 17:21
38:16
**need** 9:2,12 21:10
23:3 37:19 41:10
56:11
**neither** 15:7
**NEUMAN** 2:11
**new** 1:3,11,11 2:20
2:20 3:6,6,16,16
5:11,15 33:12
45:7,10,12 53:13
55:7 60:16 62:17
66:3,5,8
**NICK** 3:10
**Notary** 66:7
**note** 9:4 21:16 23:9
52:7,15
**noted** 44:19 48:15
55:23 61:17 65:24
**notice** 33:3 38:11
39:3,16,19 40:2
**number** 6:12,17
7:17,20 8:3,21,25
10:2 18:22 19:10
19:23 58:23

**O**
**O** 1:13
**object** 20:23 33:2
37:18 38:10,14
39:5,6,14
**objected** 21:9
**objection** 19:20,23
21:3,7,11,15,22
22:4,14 23:2,3,4
**obviate** 9:2
**obviated** 45:21 49:5
**obviously** 21:10
35:3
**offer** 17:22 18:2
19:10 28:2 30:22
51:21,25 54:2
55:12,17

**offered** 10:5 17:25
46:11
**official** 9:19
**Okay** 13:19 19:6
25:8,14 26:18
30:7,24 32:18
36:16 46:12 48:3
49:24 50:19 51:7
54:8,22 55:10,18
56:5 57:2 58:4,14
62:23 63:23
**Olsen** 1:16 3:21
5:14
**one-year** 61:6
**open** 12:8 13:12,18
20:6 22:19 30:23
31:19 48:20
**opening** 25:13
**opinion** 39:10
**opportunity** 12:9
12:13 21:4 22:16
39:5 48:5 60:2
**opposite** 33:18
**order** 6:14,16,18,19
6:22 7:18 9:14
10:23 11:3,5,24
12:22 16:4,7,21
17:21 18:3 37:5,9
37:17 38:9 39:7
39:21,24 41:19,22
42:5 45:22 49:6
64:22 65:12
**OSNER** 3:11
**outcome** 66:16
**outlined** 28:2 29:13
29:13 55:7
**outs** 25:18
**outstanding** 34:21

**P**
**P** 2:2,2 3:2,2,17 4:2
4:2
**packet** 37:11
**page** 41:22 42:4,10
42:12 50:11 52:24
53:19
**Pagemill** 3:22 5:18
**paid** 24:19 25:10
27:24
**Palo** 2:14
**paragraph** 41:21
42:3,9,11 50:12
52:23
**part** 30:3 41:15
42:18 44:11 49:8
62:9
**PARTICIPANT**

29:18 42:5
**participate** 11:16
11:19
**participating** 9:6
65:21
**participation** 17:16
18:15,18
**particular** 15:3
28:23
**parties** 11:8,11,18
11:20 12:12 14:12
15:20 16:2 18:14
22:21,22 29:21
39:11 46:24 48:8
63:15,25 65:14,17
66:14
**Partners** 3:22 5:18
**party** 36:20
**party's** 33:2 38:10
**Pause** 48:10 49:25
52:10 58:9 62:6
64:2
**pay** 25:3
**payment** 53:11
**pending** 5:9
**people** 31:6,7 39:4
**performance** 24:18
24:20 25:4
**period** 13:19 61:6
**person** 16:18
**perspective** 28:14
63:14
**physically** 20:25
**Piper** 2:13 5:17
**place** 6:20
**placed** 23:15
**platform** 20:5
**pleadings** 37:10
**please** 7:15 14:12
46:2
**plus** 47:24 61:11
**point** 14:18 15:19
18:19 19:7 27:18
29:6 30:8 32:20
33:20 37:21 41:10
41:19 44:12 46:16
46:23 54:13 59:12
59:25
**position** 17:2
**possession** 5:8
**possible** 15:12
**post** 53:22
**potentially** 37:2
**premature** 41:12
**prepared** 25:22
29:7
**present** 1:17 3:18

3:20 19:25
**presented** 28:25
**President** 3:25 8:8
8:9
**previous** 46:5 62:13
64:9
**previously** 45:3
46:11 61:7
**pre-petition** 9:22
11:14 12:4 18:17
**price** 41:9 51:3 55:9
56:6 61:3
**primary** 10:14 18:9
**prior** 7:3 25:4 47:4
48:25 51:10 54:25
63:5
**private** 12:7,17
**privately** 15:9
**probably** 19:19
20:24 34:19 35:19
**procedural** 36:6
**procedurally** 35:10
35:19 40:25
**procedure** 13:17
**procedures** 5:23
6:15,18,22 7:6,18
9:14 10:23 11:2,5
11:24 12:21,22
13:2,8,10 14:15
14:20,21 16:3,4
39:21,24 64:25
65:11
**proceedings** 1:9
66:11
**process** 6:10 29:6
65:21
**product** 22:2
**products** 21:19
**Prolificx** 50:16,19
53:7,9
**proposal** 34:7,10
**proposals** 9:15
**propose** 32:11
49:19
**proposed** 10:10,12
26:20 37:3 39:17
42:24 47:18 51:15
51:17,19 55:6
**protections** 5:22,25
**provide** 21:8 25:23
37:14 58:22 62:24
**provided** 6:22 8:4
10:20 23:23
**provides** 9:14 38:9
**providing** 16:7
27:23 37:17 59:15
64:22

**provision** 34:13
50:10
**provisions** 23:24
38:16
**Public** 66:8
**publicly** 21:23
**purchase** 6:8 7:23
8:10,14,16 10:4
10:10,13 13:5
18:23 26:22 45:7
45:18 51:3 55:9
58:23 61:3
**purchaser** 50:15
**purchasers** 28:2
**purchaser's** 50:13
**purchases** 58:25
**purposes** 16:20
**pursuant** 6:7 10:3
11:23 13:4,16
16:2 64:25 65:10
**put** 14:23 18:12
19:18 36:7
**Putting** 23:7 44:5
**p.m** 44:19 48:15
55:23 61:17 65:24

---

## Q

**qualified** 11:4,21
30:11 33:20
**qualify** 32:21 33:21
51:22
**qualifying** 30:20
32:6 46:21 51:5
54:3 55:12
**quantified** 28:13
**question** 27:4,5,6
28:22 33:9 35:24
36:3 40:7 41:13
47:2
**questions** 18:10
**quickly** 15:12

---

## R

**R** 1:13 2:2 3:2 4:2
42:10,11 66:2
**raise** 51:2 53:16
**raising** 39:2 40:10
**Randall** 1:14 2:9
5:5
**rate** 14:9
**read** 12:20 50:12
52:25 53:3
**real** 17:25 42:16
**really** 47:24
**reason** 22:4
**receive** 14:4
**received** 7:12 9:16

9:25 37:8,11 39:4
39:13
**recess** 15:8 30:9,13
30:14 31:14 44:15
44:18 46:25 48:5
48:9,12,14 54:6
54:18 55:19,24
56:14,15,22 57:7
57:10,18,24 58:3
58:11,16 60:10,13
60:20,22 61:15,18
63:19 64:4,7
**recesses** 12:16
**reconvene** 44:15
**record** 7:8,10 9:4,9
12:14,20 14:13
16:13,17 17:2,13
17:22,25 18:11,12
19:18 22:19 29:9
30:15,16 31:13,15
44:20,22 46:17
48:8,13,16 52:7
52:13 53:2 54:17
54:19,20 55:22,25
56:21,23 57:9,11
57:17 58:2,5,15
58:17,19 60:12,14
60:23 61:7,16,19
61:21 63:18,20,25
64:8,17 65:22
66:10,11
**Reese** 1:14 2:9 5:3,5
14:8,12,18 16:25
17:5,10 18:7 19:7
19:15 20:14,19
21:13 24:11 25:8
25:14,17,21 26:2
26:18 27:17 28:15
29:8,20 30:7,15
31:12,15,17 32:8
32:18,20 33:17,19
34:11,23 36:2,16
37:8 38:4,8 39:16
40:6,19 41:21
42:3,7,12 43:11
43:18,22 44:9,14
44:20 46:12,15
47:9,20 48:2,7,11
48:16 49:13,22
50:20 51:7,13,24
53:18 54:8,16,19
55:10,16,22,25
56:5,13,18,21,23
57:2,5,9,11,14,17
57:21,25 58:5,14
58:17 59:10,24
60:8,11,14,20,23

61:16,19 62:21
63:6,10,18,20,23
64:8
**refer** 6:4,17 8:5
**referenced** 59:2
**referred** 8:23 26:11
**referring** 33:25
37:24 38:2,4
**reflected** 26:16,24
53:20
**reflecting** 8:15
61:24
**regarding** 26:12
32:22 50:13
**reinserted** 49:9
**related** 37:4 66:14
**relating** 32:21
**relevant** 41:5
**remain** 10:18 46:5
52:14 65:7
**remained** 51:10
**remains** 52:18
**remind** 16:2
**remissions** 45:5
**remove** 43:12 59:14
**removed** 34:8
**removing** 22:8
**Repeat** 20:12
**replace** 45:9
**report** 44:22
**Reported** 1:23
**reporter** 6:24
**represent** 17:15
**representations**
46:17
**representative**
16:11,16,19 18:20
19:8 44:25 45:25
**representatives**
11:17 17:12 18:15
**represents** 19:10
**request** 16:10 21:6
22:7 23:6 28:21
29:3 58:11,19
59:12
**requested** 43:5,9
**require** 33:5 52:5
**required** 10:22
13:18 47:6
**requirement** 38:18
**requirements** 10:15
**reserve** 9:10 28:22
**reserves** 12:15
**respect** 15:5 17:23
18:13 21:11 22:25
26:8 29:13,22
39:16 45:5 50:2

61:3,4
**respective** 15:6
**response** 34:23
36:17 52:4
**result** 39:8
**retention** 27:22,24
**retract** 40:5
**review** 21:15 22:17
48:6
**reviewed** 19:13
39:13 51:14 53:20
**reviewing** 28:7
**revised** 50:21
**revision** 27:18 50:3
50:12 53:25
**revisions** 47:11
**Rich** 4:5
**Richard** 3:25 8:9
**rider** 49:12
**right** 9:10 12:15
29:20 34:14 35:11
35:16 36:24 40:4
41:2 43:22 47:15
50:5 52:11 56:13
57:22 60:11,19
**rights** 21:12 50:15
50:17
**Road** 3:4 4:7 8:4,5
8:8,11,20 10:2,5
10:14,20 11:11,25
13:17 14:23 16:22
24:5 26:24 33:4
33:23 34:3 36:9
41:14 44:6 48:21
51:24 54:4 56:18
56:24 57:12 58:6
60:15 61:25 62:14
62:16,24 65:5,20
**Road's** 10:3,9 11:4
19:10 23:16 24:22
26:7 27:10,11
33:15 42:14 43:23
44:6 64:13
**Robert** 1:23 5:12
66:7,23
**Rogoff** 2:21 14:7
17:6,7 18:5 19:4
20:23 21:13 22:23
24:13,16 25:11,24
26:3 27:2 28:6,20
29:16 33:18 36:6
37:21 38:20 40:4
44:5,11,17 46:7
46:14 52:6 54:9
55:15 56:16 57:3
57:19 58:10 60:4

60:19,24 62:18
63:21
**room** 12:6 31:3,9
45:14
**ROSENBERG** 3:10
**roughly** 42:8
**Rudnick** 2:13 5:17
**run** 20:5,11,15

———— **S** ————

**S** 2:2 3:2 4:2
**sale** 6:5,8 7:4,22
8:10,14,16,22
10:4,10,13 13:5
13:14 16:6 18:23
37:9,16,16 38:9
39:25 41:19,22,23
45:6,17,22 49:6
64:21
**satisfy** 33:4
**saying** 35:7,8,12,16
54:23 56:7
**says** 24:19 53:6
**schedule** 10:16 19:3
20:18 22:10 23:20
24:2,9,12,17 25:7
26:8,10,17 33:25
34:4,6,7 37:22,23
37:25 43:5,7,8,12
44:10 47:6 49:9
**scheduled** 22:9
**schedules** 8:2,12,18
18:25
**score** 64:18
**Sean** 1:16 3:19 9:5
**second** 13:20 20:19
27:2 45:16 47:16
52:24 53:18 59:8
59:12
**section** 13:4 27:21
29:4 32:22 33:23
37:5 41:19 43:13
45:6,8,17,20,23
47:12 49:2,12
50:14 51:14 52:21
53:13 55:6 59:2
59:13,16 61:5,24
62:8,15,15,17
**secured** 11:14 12:5
18:17
**see** 20:24 21:8
42:16 50:8
**seeing** 37:3
**seek** 38:18 65:4,8
**seeking** 5:21 40:19
**seen** 21:3
**SELIG** 3:9

**seller** 24:18,19 25:3
50:16
**Senior** 8:7 17:3
**sent** 19:14
**sentence** 25:5 27:23
28:11
**served** 39:12
**service** 39:20
**set** 58:24 59:11
66:19
**seven** 34:6
**shared** 45:14
**shareholder** 9:19
**Shaw** 1:23 66:7,23
**sheet** 9:2
**shifts** 30:6
**short** 29:18 30:8,12
44:14 54:6,14
64:4,6
**Shortly** 12:8
**show** 53:3
**SHULMAN** 3:7
35:6 36:24 50:5
55:20 65:16
**significant** 42:17
**sign-in** 8:25
**similar** 10:11
**simply** 39:12
**sitting** 65:16
**six** 10:16 34:4
**Skadden** 1:10 2:4
5:5,6,16
**Slate** 1:10 2:4
**software** 20:6,7
21:17,18,23
**sold** 21:19
**somebody** 21:7
**somewhat** 42:17
**sorry** 24:15,17
**sort** 33:12
**source** 20:7
**Southern** 1:3 5:11
**speak** 16:11,13
17:14 43:2 58:12
**speaking** 17:8
**specific** 14:19 47:22
55:3
**specifically** 24:18
27:11
**specificity** 21:9
23:17,23 25:2
**specify** 54:23
**Square** 1:10 3:5
**Sr** 4:8
**ss** 66:4
**stage** 41:12
**stalking** 6:2

**standard** 20:5
**standing** 52:7
**start** 54:23
**started** 49:3,4,4
**state** 16:16,25 66:3
66:8
**stated** 41:2 52:12
**statement** 22:24
64:9
**statements** 12:13
22:20
**States** 1:2 5:10
**stay** 13:12,18
**STEPHEN** 2:11
**Steve** 1:16 3:21
5:13
**stop** 36:13
**Strauss** 4:10
**subject** 6:9 13:9
18:5 37:15,16
64:19 65:7,9
**submits** 13:7
**submitted** 7:21
11:21 23:9 24:4
61:25
**subsection** 24:6
28:23
**subsequent** 13:7,11
13:17,24 14:3
25:23 29:9,10
30:11,20 31:25
32:6,12,15 36:21
42:23 43:15,25
51:6,22 54:3 55:2
55:12 56:3,25
57:13 58:7 60:16
62:10,13,14
**substantially** 6:6
10:7,11 51:17
**sub-elements** 23:22
**successful** 15:17,22
**suggested** 47:5
**summarize** 58:18
**summarizes** 59:22
59:24
**Sun** 19:19,22 20:3,7
20:20,21 21:24
22:3,6,13 23:2
**Sun's** 21:21
**superior** 32:15
**suppose** 27:4
**sure** 14:11 20:14
25:17
**System** 23:2
**Systems** 9:17 19:19

———— **T** ————

**T** 66:2,2
**table** 5:13 14:23
35:11,14 36:21
44:3 46:23
**take** 12:16 21:10
29:2 30:8,13,25
32:2 38:6 44:13
44:14 46:25 48:4
48:9,12 49:20
54:5 56:19 57:6
57:23 60:9,20
61:5,14 62:3 64:3
**taken** 54:11 66:11
**talk** 13:14 38:21
40:22
**talked** 37:2
**talking** 24:16
**technical** 15:25
**technically** 53:14
**telephonically** 1:17
3:20 9:7
**tell** 52:19
**ten** 56:11
**term** 28:18 29:25
33:9,13,14 36:4
40:11 41:8 42:15
**terms** 10:9,12 18:11
22:23 23:12 26:24
26:21 27:25 28:13
29:12 32:5,8,14
39:20,23 41:3
43:19 45:22 46:5
46:12 49:5 52:13
52:13 53:11 54:24
56:8 64:15,23
65:10
**Thank** 17:10 18:7
19:15 25:11,20
31:12,22 32:19
40:6 42:13 43:10
43:18 44:17 49:17
49:22 50:23 51:23
57:5,8,14 60:6
62:5 65:16,20,23
**theirs** 52:16
**thereto** 8:18
**therewith** 8:2,13
**thing** 31:22
**things** 5:22 36:25
**think** 5:4 27:17
30:2,3,4,7,24 31:7
32:20 33:20,22,24
34:9,19,24 35:7,8
35:12 37:13 40:25
41:10,12 47:23
48:4,11 49:6,13
52:3 54:20 56:6

59:22,24 64:3
**third** 3:15 20:21
**third-party** 34:2
    37:4
**thousand** 59:6 61:9
**three** 20:10
**throw** 27:5
**Thursday** 1:12
**TIM** 3:8
**time** 6:20 9:10
    11:22 12:16,16
    14:18 15:9,13
    17:11 19:25 20:5
    20:11,13,15 22:7
    25:23 29:21 30:22
    35:15 42:2 44:19
    46:23 48:15 55:23
    58:24 59:11,17
    60:4,21 61:17
    65:24
**timely** 38:10
**Times** 1:10 3:5
**title** 16:17 53:10
**today** 5:24 9:7
    11:19 12:6,16
    14:9,20 15:11
    18:10,17 22:11
    54:12 65:17
**today's** 7:7 11:17
    11:25 13:25 14:24
    16:13
**told** 20:9 36:8
**tonight** 65:8
**total** 61:12
**transaction** 64:21
    65:5
**transcribed** 6:25
**transcript** 7:2
**transfer** 53:10
**true** 66:10
**try** 41:9 55:2
**turn** 44:4 54:4
    55:14
**two** 12:25 13:13
    31:11 45:2,4 46:3
    46:8 58:20 59:21

**U**

**ultimately** 6:5
    43:16 47:7
**Um** 29:23
**unambiguous** 18:13
**unchanged** 52:18
**understand** 33:8,24
    34:10,15
**understanding**
    14:14 32:4 34:3

**Understood** 21:13
**unit** 59:4 64:15
**United** 1:2 5:10
**units** 58:23 59:2,6
    61:6,9,10 63:8
**unmarked** 8:12
**unsecured** 3:14
    9:20
**USA** 6:3
**use** 12:6
**uses** 21:17

**V**

**value** 13:23 28:18
    40:11,12,20,22,24
    41:4,11 42:16,21
    43:16 47:8,10,17
    47:21,22 53:22
    58:22 59:4,7,13
    59:19 61:8,11,12
    63:13
**vellum** 7:12
**Verderber** 11:7
**version** 20:11,15,16
**versions** 19:3
**Vice** 8:7
**Vice-President** 17:3
**view** 38:8 42:14
    43:23
**views** 22:25
**VP** 4:8

**W**

**Wacker** 2:7
**want** 13:2 35:13,22
    36:12 38:6 50:21
    58:8 60:18
**wanted** 16:13 41:9
**warranty** 50:17
**WATKINS** 3:13
**way** 13:25 40:13
    66:16
**Website** 20:8 21:25
**WEINER** 2:17
**welcome** 5:3 18:14
**weren't** 39:11
**West** 2:7
**WHEREOF** 66:18
**willing** 22:3 35:2
    36:4 37:14 41:14
**Wireless** 2:18 4:4
    6:3,4,6 7:21,24
    8:17 10:12 11:12
    11:24 12:10 13:6
    13:7,9,20,24 14:2
    14:5,22 17:5,8
    18:20,24 23:13,16

23:25 25:22 26:21
    29:10,17 30:18
    33:10,15 34:5,22
    39:18 44:4,24
    45:3 46:2 47:12
    48:19 51:19 52:3
    56:9,16 57:3,19
    58:20 60:2,4,24
    62:18 63:21 64:9
    65:2,20
**withdraw** 22:4,14
**withdrawn** 21:22
**WITNESS** 66:18
**wondering** 47:17
**wording** 24:4,8
    25:2 52:23,25
    53:2,5
**work** 53:13
**working** 53:4
**writing** 20:25

**X**

**X** 1:23 66:7,23

**Y**

**year** 59:9,10
**York** 1:3,11,12 2:20
    2:20 3:6,6,16,16
    5:11 66:3,5,9

**$**

**$10,000,000** 57:13
**$10.5** 58:7
**$10.7** 60:5
**$100,000** 26:5,14
**$11** 60:16
**$11.2** 61:2
**$11.4** 63:3
**$11.7** 60:25 61:13
**$114,000** 24:21
**$195,000** 13:22
**$200,000** 63:4
**$250** 59:4
**$250,000** 59:7 61:9
**$500,000** 10:22
    61:10
**$7,405,000** 14:6
**$7.5** 10:5
**$7.6** 14:3 26:4 32:3
**$7.7** 32:6,12 41:15
    42:23 43:11
**$7.8** 45:4 46:10
**$7.9** 51:3
**$8,000,000** 53:24
**$8.5** 56:3
**$9.1** 56:25

**0**

**05-44481(RDD)** 1:4

**1**

**1** 7:17
**1.4.2** 20:11,15
**1.5** 20:11,15
**10** 44:15
**10-Q** 8:19
**10.2** 57:20,21
**10:30** 1:11
**10022** 3:16
**10036** 2:20 3:6
**11** 5:9 9:22 51:5
    61:12
**11.2** 61:12
**11.4** 63:10 64:14
**11.9** 63:15
**1114** 2:19
**13** 41:22 42:4
**16A** 26:9
**16B** 24:18
**17** 41:21 42:3
**185783** 1:24
**19th** 6:14

**2**

**2** 7:20 18:22 20:4
    50:11
**2,000** 61:6,10 63:7
    64:14
**2.1.1** 22:10
**2006** 1:12 5:20 6:9
    6:14 7:23 8:7,11
    8:19,23 9:23 11:6
    13:15 66:12,19
**22nd** 6:16 7:19
**28th** 8:7,11
**29th** 9:23

**3**

**3** 8:3 10:3 19:10
**3.1.4** 27:21 29:4
**3:22** 44:19
**30th** 11:6 19:22
**31st** 8:19 13:15
**333** 2:7

**4**

**4** 1:10 8:21 42:6,7
**4.3** 45:6,8,9 47:18
    49:12 51:15,17,18
    52:21 53:13 55:6
    59:2,13 61:5,25
    62:8,15,17
**4040** 6:12
**4328** 6:17

**4433** 19:24

**5**

**5** 8:25
**5.0** 20:6
**5.1** 24:17,17 26:8
**5.1A** 24:14
**5.1.16.A** 10:16
    26:17
**5.1.16.B** 23:20
**5.1.6.B** 23:20
**5.16.A** 24:12

**6**

**6** 1:12 45:11,13
    47:19 66:12
**6th** 5:19 6:9 7:23
    8:22
**6,228** 58:25
**6.2** 38:7
**6.2.5** 32:23 33:23
    43:13,13 44:10
    45:17 47:12 49:2
    49:9
**6:11** 48:15
**6:30** 55:23
**60606** 2:8

**7**

**7** 3:5 49:14,18 50:2
    50:20 52:22 66:19
**7.7** 32:12
**7.8** 44:7 47:24

**8**

**8** 42:10,12 53:15,17
    53:19 55:7,8
**8.15** 5:9
**8.2** 55:15
**8.8** 56:17
**8:00** 61:17
**8:30** 65:24
**817** 1:24
**885** 3:15

**9**

**9** 61:23 62:17 63:2
    63:7
**9.1.2** 13:4
**9.5** 57:4
**94303** 2:14

**EXECUTION COPY**

**ASSET SALE AND PURCHASE AGREEMENT**

**BETWEEN**

**@ROAD, INC.**

**AND**

**MOBILEARIA, INC.**

**Dated as of July 7, 2006**

## TABLE OF CONTENTS

**PAGE**

1. **CONVEYANCE OF THE ACQUIRED ASSETS** ........................................ 9
   1.1  Acquired Assets Transaction ........................................ 9
        1.1.1  Acquired Assets ........................................ 10
        1.1.2  Excluded Assets ........................................ 10
        1.1.3  Post-Closing Asset Deliveries ........................ 11
        1.1.4  Prorations ........................................ 11
        1.1.5  Non-Assignable Permits and Contracts ................ 12
2. **ASSUMPTION OF LIABILITIES** ........................................ 13
   2.1  Assumed Liabilities ........................................ 13
   2.2  No Expansion of Third Party Rights ........................ 14
   2.3  Retained Liabilities ........................................ 14
3. **ACQUIRED ASSETS – PERSONNEL MATTERS – TRANSFERRED
   EMPLOYEES** ........................................ 15
   3.1  Business Employees ........................................ 15
   3.2  Cooperation ........................................ 16
   3.3  No Third Party Rights ........................................ 16
4. **PURCHASE PRICE** ........................................ 16
   4.1  Purchase Price; Deposit Amount ........................ 16
        4.1.1  Deposit Amount ........................................ 16
        4.1.2  Delivery of Purchase Price ........................ 17
   4.2  Allocation of Purchase Price ........................ 17
   4.3  Other Adjustments ........................................ 17
5. **REPRESENTATIONS AND WARRANTIES** ........................ 19
   5.1  Representations and Warranties of Seller ................ 19
        5.1.1  Organization and Good Standing ................ 19
        5.1.2  Corporate Power; Due Authorization ............ 19
        5.1.3  No Violations ........................................ 19
        5.1.4  Sufficiency of Acquired Assets ................ 20
        5.1.5  Personal Property; Condition of Personal Property .... 20
        5.1.6  Litigation ........................................ 20
        5.1.7  Intellectual Property Assets ................ 20
        5.1.8  Insurance ........................................ 22
        5.1.9  Compliance with Other Instruments and Laws; Permits.... 22
        5.1.10 Brokers ........................................ 22
        5.1.11 Consents and Approvals ........................ 22
        5.1.12 Financial Statements ........................ 23
        5.1.13 Events Subsequent to Latest Financial Statements.... 23
        5.1.14 Contracts ........................................ 23
        5.1.15 Tax Matters ........................................ 24
        5.1.16 Employee Issues ........................................ 25
        5.1.17 Absence of Other Representations or Warranties ...... 25
   5.2  Representations and Warranties of Purchaser .......... 26
        5.2.1  Corporate Data ........................................ 26
        5.2.2  Corporate Power; Due Authorization ............ 26
        5.2.3  No Violations ........................................ 26
        5.2.4  Litigation ........................................ 26
        5.2.5  Brokers ........................................ 26

        5.2.6   Solvency .................................................................................. 27
        5.2.7   Availability of Funds ............................................................... 27
        5.2.8   Adequate Assurance of Future Performance........................... 27
        5.2.9   Compliance with Law .............................................................. 27
        5.2.10  Anti-Money Laundering ........................................................... 27
    5.3   Survival of Representations, Warranties and Certain
          Covenants of the Seller ..................................................................... 27
    5.4   Survival of Representations, Warranties and Certain
          Covenants of the Purchaser ............................................................... 28
6.  CONDITIONS TO CLOSING................................................................... 28
    6.1   Conditions to Obligations of Seller and Purchaser ............................... 28
        6.1.1   Sale Approval Order................................................................ 28
        6.1.2   No Law, Judgments, Etc. ........................................................ 28
    6.2   Conditions to Obligations of Purchaser ............................................... 28
        6.2.1   Accuracy of Representations and Warranties........................... 28
        6.2.2   Performance of Covenants...................................................... 29
        6.2.3   Payment of Cure Amounts ...................................................... 29
        6.2.4   Certification ........................................................................... 29
        6.2.5   Other Approvals .................................................................... 29
        6.2.6.  Stockholder Consent.............................................................. 29
    6.3   Conditions to Obligations of Seller ..................................................... 29
        6.3.1   Accuracy of Representations and Warranties........................... 29
        6.3.2   Performance of Covenants...................................................... 29
        6.3.3   Delivery of Purchase Price ...................................................... 29
7.  CLOSING............................................................................................... 30
    7.1   The Closing ...................................................................................... 30
    7.2   Ancillary Agreements ........................................................................ 30
    7.3   Seller's Deliveries ............................................................................. 30
    7.4   Purchaser's Deliveries ...................................................................... 31
8.  CERTAIN ADDITIONAL COVENANTS ................................................... 31
    8.1   Bankruptcy Actions ........................................................................... 31
    8.2   Registrations, Filings and Consents; Further Actions........................... 32
    8.3   Operation of the Business Pending Closing.......................................... 32
    8.4   Assumed Contracts; Cure Amounts .................................................... 32
    8.5   Post-Closing Covenants .................................................................... 33
        8.5.1   Seller Post-Closing Covenants................................................ 33
        8.5.2   Technical Documentation........................................................ 34
        8.5.3   Books and Records and Litigation Assistance From
                and After Closing................................................................... 34
        8.5.4   Payment and Collections........................................................ 35
        8.5.5   Intellectual Property Transition Rights ..................................... 35
    8.6   Further Assurances ........................................................................... 36
    8.7   [Reserved]......................................................................................... 36
    8.8   Certain Transactions.......................................................................... 36
    8.9   Communications with Customers and Suppliers ................................... 36
9.  TERMINATION ....................................................................................... 36
    9.1   Termination ....................................................................................... 36
        9.1.1   By Either Party....................................................................... 36
        9.1.2   By Purchaser ........................................................................ 37
    9.2   Notice of Termination......................................................................... 37
    9.3   Procedure and Effect of Termination ................................................... 37

**10. OTHER TAX MATTERS** ..................................................................... **38**
**11. BANKRUPTCY MATTERS** .................................................................. **39**
    11.1    Court Approval ............................................................................. 39
    11.2    Sale Hearing .................................................................................. 39
**12. INDEMNIFICATION** .......................................................................... **40**
    12.1    Seller's Agreement to Indemnify ................................................ 40
    12.2    Purchaser's Agreement to Indemnify .......................................... 40
    12.3    Limitations on Agreements to Indemnify ................................... 40
    12.4    Third Party Indemnification Procedures ..................................... 41
**13. MISCELLANEOUS** ............................................................................ **42**
    13.1    Bulk Sales Laws ........................................................................... 42
    13.2    Notices .......................................................................................... 42
    13.3    Assignment ................................................................................... 43
    13.4    Entire Agreement ......................................................................... 43
    13.5    Waiver ........................................................................................... 43
    13.6    Severability .................................................................................. 43
    13.7    Amendment ................................................................................... 43
    13.8    Expenses ....................................................................................... 43
    13.9    Third Parties ................................................................................. 44
    13.10  Headings ....................................................................................... 44
    13.11  Counterparts ................................................................................. 44
    13.12  Governing Law ............................................................................. 44
    13.13  Public Announcements ................................................................ 44
    13.14  Sales or Transfer Taxes ............................................................... 44
    13.15  Venue and Retention of Jurisdiction .......................................... 44
    13.16  Risk of Loss ................................................................................. 44
    13.17  Enforcement of Agreement ......................................................... 44
    13.18  Dispute Resolution ...................................................................... 44
    13.19  No Right of Setoff ....................................................................... 45
    13.20  Limitation on Damages ............................................................... 45

## LIST OF SCHEDULES

| Schedule Designation | Schedule Description |
|---|---|
| A | Seller's Knowledge |
| B | Reference Balance Sheet |
| 1.1.2.A | Third Party Bailed Assets |
| 1.1.2.D | Excluded Contracts |
| 1.1.2.F | Privileged Information and Materials |
| 1.1.2.I | Other Excluded Assets |
| 2.1.1 | Transferred Contracts |
| 2.1.3 | Certain Assumed Liabilities |
| 4.2 | Allocation of Purchase Price |
| 5.1.1 | Organization and Good Standing |
| 5.1.3 | No Violations |
| 5.1.4 | Sufficiency of Acquired Assets |
| 5.1.5.A | Title to Personal Property |
| 5.1.5.C | Other Inventory Locations |
| 5.1.5.D | Machinery, Equipment and Capitalized Tools (Value Greater than $5,000 USD) |
| 5.1.6 | Litigation |
| 5.1.7.A.1 | Owned Intellectual Property |
| 5.1.7.A.2 | Licensed Intellectual Property |
| 5.1.7.A.3 | Software |
| 5.1.7.B | Intellectual Property Litigation Claims |
| 5.1.7.C | Rights Granted to Third Parties |
| 5.1.7.D | Free and Clear Owned Intellectual Property |
| 5.1.7.E | Excluded License |
| 5.1.8 | Insurance |
| 5.1.9 | Permits |
| 5.1.11 | Third Party Consents |
| 5.1.12(i) | December 31, 2003, 2004 and 2005 Unaudited Balance Sheets and Income Statements for the Business |
| 5.1.12(ii) | Unaudited Balance Sheet and Income Statement for Four Months Ended April 30, 2006. |
| 5.1.13 | Absence of Certain Changes |
| 5.1.14.A | Listed Contracts |
| 5.1.14.B | Listed Contracts – Exceptions |
| 5.1.15.A | Tax Returns |
| 5.1.15.D | Tax Matters |
| 5.1.16.A | Business Employees |
| 5.1.16.B | Funding |
| 6.2.5 | Third Party Approvals |
| 7.2.1 | Assignment of Lease |
| 7.2.2.A | Assignment of Patent Rights |
| 7.2.2.B | Assignment of Trademark Rights |
| 7.2.3 | Assignment and Assumption Agreement |
| 7.2.4 | Escrow Agreement |
| 7.2.5 | Bill of Sale |

7.2.6                   License from Delphi Technologies, Inc. to @Road, Inc. of Vehicle
                        Bus Adapter firmware and Power Moding Profile software

## ASSET SALE AND PURCHASE AGREEMENT

THIS ASSET SALE AND PURCHASE AGREEMENT (this "**Agreement**") dated as of **July 7, 2006,** by and between **@ROAD, INC.**, a Delaware corporation ("**@ROAD**" or "**Purchaser**") and **MOBILEARIA, INC.**, a Delaware corporation ("**MobileAria**" or "**Seller**").

## R E C I T A L S:

**WHEREAS**, MobileAria is engaged in the Business (as hereinafter defined).

**WHEREAS**, Delphi Automotive Systems LLC, a Delaware limited liability company ("**Delphi**") owns approximately 71% of MobileAria's issued and outstanding capital stock.

**WHEREAS**, on October 8, 2005, Delphi and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of Title 11, U.S.C. §§101 et seq. (as in effect on October 14, 2005) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**WHEREAS**, on October 14, 2005 (the "**Petition Date**"), MobileAria filed a voluntary petition for relief under the Bankruptcy Code in the Bankruptcy Court. As of the Petition Date, the MobileAria bankruptcy case has been consolidated with the Delphi bankruptcy cases (collectively, MobileAria's bankruptcy case and the Delphi bankruptcy cases are referred to as the "**Bankruptcy Cases**").

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 363 and 365 of the Bankruptcy Code, MobileAria desires to sell to Purchaser all right, title and interest of MobileAria in and to the Acquired Assets (as hereinafter defined), and Purchaser (as hereinafter defined) desires to make such purchase, subject to Purchaser's assumption of the Assumed Liabilities and the conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

## DEFINITIONS

The following terms, as used in this Agreement, shall have the following meanings whether used in the singular or plural (other terms are defined in Sections or Schedules to which they pertain):

"**Accounts Receivable**" means all trade accounts receivable and other rights to payment from customers and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of Products delivered to customers, all other accounts or notes receivable and the full benefit of all security for such accounts or notes and any claim, remedy or other right related to any of the foregoing.

"**Acquired Assets**" means the assets referred to in Section 1.1.1.

"**Administrative Assets**" means books, records and other administrative assets used in or necessary for continuing the operations of MobileAria including but not limited to advertising

1

and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records, and sale order files; provided, however that Administrative Assets do not include Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity.  For purposes of this definition, control means ownership of more than fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.

"**Agreement**" means this Asset Sale and Purchase Agreement, including its Schedules.

"**Allocation**" means allocation of the Purchase Price, as described in Section 4.2.

"**Alternate Bid(s)**" shall have the meaning set forth in Section 11.2.

"**Alternate Bidder(s)**" shall have the meaning set forth in Section 11.2.

"**Ancillary Agreements**" means the agreements referred to in Section 7.2.

"**Assumed Contracts**" means those Transferred Contracts entered into by Seller before the Petition Date.

"**Assumed Liabilities**" means the obligations assumed by Purchaser pursuant to Article 2, but only to the extent that an obligation: (a) arises on or after the Closing; and (b) with respect to obligations arising under Transferred Contracts: (i) does not arise from or relate to any breach by the Seller of any provision of any of the Transferred Contracts; (ii) does not arise from or relate to any event, circumstance or condition occurring or existing on or prior to the Closing that, with or without notice or lapse of time, would constitute or result in a breach of any of the Transferred Contracts; and (iii) is ascertainable by reference to the express terms of the Transferred Contracts.

"**Assumption Notice**" means the notice sent by Seller to each nondebtor party to an Assumed Contract identifying Purchaser as the successful bidder.

"**Bankruptcy Cases**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Code**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Court**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures.

"**Bidding Procedures**" means the MobileAria, Inc. Bidding Procedures, as attached to the Bidding Procedures Order.

"**Business**" means providing location-based, data communication, productivity, and security services, as well as designing, marketing, and making available vehicle installed

2

hardware units in the business-to-business market for remote and mobile platforms such as trucks, trailers, and service vehicles.  For avoidance of doubt, the Business does not include services or hardware for entertainment media distribution or playback or any services or hardware for the consumer or automotive markets.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York are authorized or obligated by law or executive order to close.

"**Business Employees**" shall have the meaning set forth in Section 3.1.

"**Claims**" mean losses, liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Closing**" shall have the meaning set forth in Section 7.1.

"**Closing Date**" means the date of Closing.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Cases.

"**Competing HW**" shall have the meaning set forth in Section 8.5.1.A.

"**Competitive Business**" shall have the meaning set forth in Section 8.5.1.A.

"**Contracts**" mean all written or material oral purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases (for real property, personal property or otherwise), product warranty or service agreements and other commitments, agreements and undertakings of any nature, including quotations and bids outstanding on the Closing Date.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein, provided by international treaties or conventions; (ii) moral rights (including, without limitation, rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications for registration thereof; (v) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (vi) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (vii) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchaser of the Assumed Contracts under the Sale Approval Order that are Transferred Contracts.

"**Defending Party**" shall have the meaning set forth in Section 13.18.

"**Delphi**" shall have the meaning set forth in the Recitals.

"**Demanding Party**" shall have the meaning set forth in Section 13.18.

PA\10464639.4
35116501-1001

"**Deposit Amount**" shall have the meaning set forth in Section 4.1.1.

"**Disclosure Schedule**" means, collectively, the Schedules to Seller's Representations and Warranties contained in Section 5.1.

"**Escrow Agent**" means the escrow agent under the Escrow Agreement.

"**Escrow Agreement**" shall have the meaning set forth in Section 4.1.2.

"**Escrow Amount**" shall have the meaning set forth in Section 4.1.2.

"**Escrow Period**" shall have the meaning set forth in Section 4.1.2.

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.1.2.

"**Excluded Contracts**" shall have the meaning set forth in Section 1.1.2.D.

"**Excluded License**" shall have the meaning set forth in Section 5.1.7.E.

"**Expiration Date**" shall have the meaning set forth in Section 5.3.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending or (ii) if an appeal, writ of certiorari, re-argument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or re-argument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

"**Financial Statements**" shall have the meaning set forth in Section 5.1.12.

"**GAAP**" means United States generally accepted accounting principles as in effect from time to time consistently applied.

"**Good Faith Deposit**" shall have the meaning set forth in Section 4.1.1.

"**Governmental Entity**" means any United States federal, state or local, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality or body having governmental authority with respect to the transactions contemplated hereby, under applicable law.

"**Including**" means, whether or not initially capitalized, including without limitation.

"**Indemnification Claim**" shall have the meaning set forth in Section 12.4.

**"Intellectual Property"** means the Patent Rights, Trademark Rights, Copyrights, Software, Technical Documentation, Trade Secrets, Know-How and registered domain names and IP addresses.

**"Inventory"** means finished goods, raw materials, work-in-process, packaging, stores, stock, supplies, and other inventory, wherever located.

**"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

**"Know-How"** means proprietary technical and business knowledge and information, including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

**"Laws"** means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

**"Licensed Intellectual Property"** means Seller's rights with respect to all Intellectual Property licensed or sublicensed to Seller from an affiliated or unaffiliated third party.

**"Lien"** means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

**"Listed Contracts"** means the Seller's contracts and commitments listed on Schedule 5.1.14.A.

**"Material Adverse Effect"** means any change or event that has a material adverse effect on the business, assets, properties, financial condition or results of operations of the Business taken as a whole, except any change or event resulting from, relating to or arising out of: (a) any act or omission of a Seller taken with the prior written consent of the Purchaser; (b) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement; (c) general business or economic conditions; (d) conditions affecting the industry and markets in which the Business generally operates; (e) increases in energy, electricity, natural gas, raw materials or other operating costs; (f) changes resulting from the filing of the Bankruptcy Cases or from any action required by the Bankruptcy Court; (g) national or international political or social conditions, including the engagement by the United States in hostilities, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon such country, or any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment or personnel of any of such countries; (h) acts of God; (i) financial, banking or securities markets (including any disruption thereof and any decline in the price of any security or any market index); (j) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction; (k) changes in any Law; (l) any existing event, occurrence or circumstance listed in the Disclosure Schedule as of the date hereof; (m) any adverse change in or effect on the Business that is entirely cured by Seller before the earlier of: (1) the Closing Date; and (2) the date on which this Agreement is terminated pursuant to Section 9.1 hereof; or (n) the regulatory status of the Purchaser.

5

"**MobileAria**" means MobileAria, Inc., a Delaware corporation.

"**Notice**" shall have the meaning set forth in Section 13.18.

"**OFAC**" shall have the meaning set forth in Section 5.2.10.

"**Ordinary Course of Business**" means, with respect to the Business, the ordinary course of business consistent with custom and practice of the Business from and after the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases.

"**Organizational Documents**" means: (a) the articles of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) the articles or certificate of organization and the operating agreement or other document intended to govern the structure and/or internal affairs of a limited liability company; (e) any charter, agreement, indenture, or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (f) any amendment to the foregoing.

"**Owned Intellectual Property**" means all Intellectual Property in and to which Seller holds, or has a right to hold, in whole or in part, right, title and interest.

"**Party**" or "**Parties**" means Purchaser and/or Seller.

"**Patent Rights**" means: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including, without limitation, any patent disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents, and patent applications (including all provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions, and all patentable improvements to the inventions disclosed in each such registration, patent or application; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to Seller and that are currently used exclusively for the purpose of carrying on the Business or that relate exclusively to the Acquired Assets.

"**Permitted Lien**" means Liens of Seller's pre-Petition Date secured lenders and post-Petition Date secured lenders which Liens will be released on or prior to the Closing of the Sale.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures,

PA\10464639.4
35116501-1001

material handling equipment, related spare parts, business machines, computer hardware and other IT assets other than Intellectual Property, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Seller's premises, at the place of business of a vendor or elsewhere.

"**Petition Date**" shall mean October 14, 2005.

"**Post-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Post-Petition Contracts**" means the Contracts of MobileAria relating to the Business entered into in the Ordinary Course of Business or approved by the Bankruptcy Court, in either case on or after the Petition Date.

"**Pre-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Premises**" means the suite of offices leased by Seller for the Business at 800 West El Camino Real, Suite 240, Mountain View, California 94040.

"**Purchase Price**" means the payment referred to in Section 4.1.

"**Products**" means location-based, data communication, productivity, and security services for remote and mobile platforms in the commercial business-to-business market, including trucks, trailers, and service vehicles. Products include back end server software, client software, and vehicle installed hardware units. For avoidance of doubt, Products do not include services or hardware for entertainment media distribution or playback or any services or hardware for the consumer or automotive markets.

"**Purchased Intellectual Property**" means all Owned Intellectual Property and Licensed Intellectual Property.

"**Purchaser**" shall have the meaning set forth in the Preamble to this Agreement.

"**Purchaser Damages**" shall have the meaning set forth in Section 12.1.

"**Qualified Bid**" means a bid submitted to the Seller on or before 11:00 a.m. (Prevailing Eastern Time) on June 29, 2006, which includes all of the Required Bid Documents (as defined by the Bidding Procedures) and is deemed by the Seller to constitute a "Qualified Bid."

"**Reference Balance Sheet**" means the balance sheet of the Business attached as Schedule B.

"**Retained Liabilities**" shall have the meaning set forth in Section 2.3.

"**Retention Bonus**" shall have the meaning set forth in Section 3.1.4.

"**Sale**" means the sale of the Business in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court approving the Sale issued pursuant to Sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Purchaser, authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets and Assumed Liabilities to the Purchaser in accordance with the terms and conditions of this Agreement, free and clear of all Liens other than,

7

Permitted Liens and Liens encompassed within Assumed Liabilities assumed by Purchaser pursuant to Article 2, if any.

**"Sale Hearing"** shall have the meaning set forth in Section 11.2.

**"SDN List"** shall have the meaning set forth in Section 5.2.10.

**"Seller"** means MobileAria, Inc, a Delaware corporation.

**"Seller Damages"** shall have the meaning set forth in Section 12.2.

**"Seller's Knowledge"** or **"Knowledge of Seller"** means the actual knowledge after reasonable investigation of the individuals listed on <u>Schedule A</u>, in each of their respective functional areas without imputation of the knowledge of any other Person.

**"Software"** means computer software and programs, including, without limitation, source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

**"Straddle Period"** means any taxable period that begins on or prior to the Closing Date and ends after the Closing Date.

**"Tax Return"** means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any Schedule or attachment thereto.

**"Tax(es)"** means any tax or similar governmental charge, impost or levy whatsoever (including, without limitation, income, franchise, transfer taxes, use, gross receipts, value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty, minimum or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

**"Technical Documentation"** means all documented technical information currently in the files of the Business primarily used in the Business owned by Seller, in each case pertaining to the design or manufacture of the Products of the Business.

**"Termination Date"** shall have the meaning set forth in Section 9.1.1.E.

**"Third Party Bailed Assets"** shall have the meaning set forth in Section 1.1.2.A.

**"Third-Party Requirements"** shall have the meaning set forth in Section 5.1.3.

**"Trade Secrets"** means: (i) all forms and types of financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives

8

independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); (ii) all copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (iii) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (iv) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" means: (i) trademarks, trade names and service marks; (ii) the good will associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transferred Contracts**" means the Contracts of Seller to be assigned to Purchaser at Closing as described in Section 2.1.1.

"**Transferred Employees**" shall have the meaning set forth in Section 3.1.3.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**USA PATRIOT Act**" shall have the meaning set forth in Section 5.2.10.

"**Verizon Contract**" shall have the meaning set forth in Section 1.1.5.A.

"**Verizon Open Accounts Receivable**" means all Accounts Receivable from Verizon Services Corp. for subscriber services to be performed after the Closing Date.  All Accounts Receivable from Verizon Services Corp. for hardware and hardware installations is an Excluded Asset.

"**Warranties**" refers to the representations and warranties provided by Seller to Purchaser, or by Purchaser to Seller, as the case may be, in each case as referred to in Article 5 of this Agreement.

"**Wireless Matrix USA, Inc.**" shall have the meaning set forth in Section 2.3.

"**Wireless Matrix Agreement**" shall have the meaning set forth in Section 2.3.

## 1.   CONVEYANCE OF THE ACQUIRED ASSETS:

1.1.   **Acquired Assets Transaction.**  Upon the terms and subject to the conditions set forth in this Agreement at Closing Seller shall sell, transfer, assign, convey and deliver to the Purchaser, and Purchaser shall purchase, accept and acquire from the Seller, free and clear of all Liens except: (i) Permitted Liens; and (ii) Liens included in the Assumed Liabilities assumed by Purchaser pursuant to Article 2, if any, all of the assets and properties described in Section 1.1.1 below (collectively, the "**Acquired Assets**"), subject in each case to Section 1.1.2.

PA\10464639.4
35116501-1001

**1.1.1. Acquired Assets.** The Acquired Assets consist of all of Seller's right, title and interest in and to the rights and assets primarily used in, primarily arising from, primarily relating to, or necessary for the conduct of the Business (other than the Excluded Assets), including, without limitation: all Verizon Open Accounts Receivable (including any cash or cash equivalents received with respect to Verizon Open Accounts Receivable prior to the Closing Date), Personal Property, Permits, Inventory, rights under Transferred Contracts (including Seller's rights against third party manufacturers to the extent any liability is assumed by Purchaser pursuant to Section 2.1), Administrative Assets and Purchased Intellectual Property (including Trademark Rights including Trademark Rights in MobileAria and all Product names, but not including Delphi and related names), in each case if such assets are primarily used in, primarily arising from, primarily relating to, or necessary for the conduct of the Business, including all of Seller's rights in: (i) tangible Personal Property located at the Premises; and (ii) all Personal Property owned by or leased to the Seller in connection with the Business located at any outsource partner's location, including Qwest Communication; and (iii) all prepaid Inventory held by any Affiliate of Seller primarily for use in the Business, provided that such Affiliate has been paid in full or been assigned the corresponding receivable by Seller.

**1.1.2. Excluded Assets.** Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets shall not be included in the Acquired Assets:

> **A.    Bailed Assets.** Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by any other third party listed in Schedule 1.1.2.A ("**Third Party Bailed Assets**").

> **B.    Personnel and Medical Records.** All work histories, personnel and medical records of employees and former employees of Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws: Purchaser will be provided the originals of all personnel and medical records of employees of Seller who have accepted employment with Purchaser in connection with the sale hereunder, with the prior written consent of such employee or after posted written notice or other appropriate notice to such employees if legally required.  If an employee objects to provision of personnel or medical records to Purchaser, the records will not be provided.

> **C.    Certain Financial Assets.**    Cash, cash equivalents, bank accounts and all accounts receivable (other than Verizon Open Accounts Receivable or cash or cash equivalents received in respect thereof).

> **D.    Certain Contracts.** All Contracts of Seller that are not Transferred Contracts, including Contracts set forth on Schedule 1.1.2.D ("**Excluded Contracts**").

> **E.    Tax Refunds.**    Any refund of Taxes paid, or claim for refund of Taxes paid, of any kind relating to the Acquired Assets for any period prior to the Closing Date.

PA\10464639.4
35116501-1001

F.    **Privileged Information and Materials.**  Information and materials protected by the attorney-client privilege or that, in the case of environmental-related documents, Seller considers to be proprietary information; and the lack of which excluded information and materials are not material to the operation of the Business, and provided that such materials are listed on Schedule 1.1.2.F hereto.

G.    **Insurance.**  The benefit of any of Seller's or Seller's Affiliates' insurance policies relating to the operation of the Business (including any right to proceeds thereunder).

H.    **Certain Rights.**  All of the rights and claims of the Seller available to Seller under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

I.    **Other Excluded Assets.**  All computer hardware, equipment, or other assets listed on Schedule 1.1.2.I.

**1.1.3.  Post-Closing Asset Deliveries.**    Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other similar materials constituting Acquired Assets are still in the possession of Seller, Seller shall promptly deliver them to Purchaser at no cost to Purchaser.  Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Purchaser, Purchaser shall promptly return them to Seller at no cost to Seller other than reimbursing Purchaser's reasonable out-of-pocket costs.

**1.1.4.  Prorations:**

A.    To the extent that Seller has made any payment relating to the Business prior to the Closing Date with respect to any item listed in Subparagraph B below relating to periods on or following the Closing Date, Purchaser shall reimburse Seller on a per diem basis; and

B.    To the extent Purchaser makes any payment relating to the Business following the Closing Date with respect to any item listed below relating to periods prior to the Closing Date, Seller shall reimburse Purchaser on a per diem basis, in each case for the following:

(i)    Rent for the Premises and copier leases and other pre-paid amounts under Transferred Contracts (such other pre-paids to be mutually agreed by the parties before Closing);

(ii)    Personal, real property and other ad valorem Taxes, allocated in accordance with local custom;

(iii)    Water, wastewater treatment, sewer charges and other similar types of charges with respect to the Business; and

11

(iv)    Electric, fuel, gas, telephone and internet services and other utility charges.

**C.    Verizon.** If Seller receives payments from Verizon Services Corp. pursuant to the Verizon Contract that are for installations and subscriber services to be performed by Purchaser following the Closing Date, Seller shall transfer such payments to Purchaser.  If Purchaser receives payments from Verizon Services Corp. pursuant to the Verizon Contract attributable to installations and subscriber services previously performed by Seller relating to periods on or before the Closing Date, Purchaser shall transfer to Seller such funds allocable to each such installation performed by Seller and all such subscriber services rendered by Seller.

**D.    Further Assurance.**  The parties will use commercially reasonable efforts to determine the amounts of the above prorations and settle such amounts at Closing.  To the extent that, within sixty (60) days after Closing, Seller, on the one hand, or Purchaser, on the other hand, receives any bill or other invoice for any of the items listed in this Section 1.1.4 or similar items, relating to both pre-Closing and post-Closing periods, the Seller or Purchaser shall, as soon as practicable but no later than ninety (90) days after Closing, send any such bill or invoice to the other Party.  If necessary to avoid incurring interest, penalties and/or late charges, Purchaser may pay all amounts shown to be due thereon, and may invoice Seller for all amounts owed by Seller thereunder, and in such case Seller shall reimburse such amounts.

Any payments due under this Section 1.1.4 that have not been settled at Closing shall be made within forty-five (45) days after the end of the month in which a bill or invoice is sent to a Party (or Affiliate thereof); provided, however, that the disputed portion of any such item shall be paid within forty-five (45) days after the final determination thereof on an item-by-item basis. When Purchaser makes a payment to a third party which is required to be reimbursed to Purchaser by Seller, the reimbursement payment shall be considered the repayment of an advance.

**1.1.5.  Non-Assignable Permits and Contracts:**

**A.    Non-Assignability.**  After giving effect to the Sale Approval Order, to the extent that any Permit included in the Acquired Assets or any Transferred Contract other than that Agreement No. C0505851 by and between the Seller and Verizon Services Corp. (the "**Verizon Contract**") is not capable of being assigned to Purchaser at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, until any such consent or waiver is obtained.

**B.    Efforts to Obtain Consents and Waivers.**  At Purchaser's request, Seller shall, at its expense, use commercially reasonable efforts, and Purchaser shall, at Seller's expense, cooperate with Seller, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.1.5.A after the Closing.

PA\10464639.4
35116501-1001

C. **If Waivers or Consents Cannot be Obtained.** To the extent that the consents and waivers referred to in Section 1.1.5.A are not obtained by Seller, or until the impracticalities of assignment referred to therein are resolved, Seller's sole responsibility with respect to such matters, notwithstanding Section 1.1, shall be to use, during the one hundred eighty (180) day period commencing with the Closing, all commercially reasonable efforts, at no cost to Purchaser (other than pursuant to Section1.1.5.D below), to: (i) provide to Purchaser the benefits of any such Permit or Transferred Contract, all as referred to in Section 1.1.5.A, included in the Acquired Assets; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Purchaser, without incurring any financial obligation to Purchaser; and (iii) at the request and direction of Purchaser, enforce for the account of Purchaser and at the cost of Purchaser any rights of Seller arising from the Permits included in the Acquired Assets or Transferred Contracts referred to in Section 1.1.5.A against such issuer thereof or other party or parties thereto.

D. **Obligation of Purchaser to Perform.** To the extent that Purchaser is provided the benefits pursuant to Section 1.1.5.C of any Permit included in the Acquired Assets or Transferred Contracts, Purchaser shall perform, on behalf of Seller, for the benefit of the issuer thereof or the other party or parties thereto the obligations of Seller thereunder or in connection therewith and if Purchaser shall fail to perform to the extent required herein, Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.1.5.C in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or, at Purchaser's request, Seller may perform at Purchaser's sole reasonable cost and expense, in which case Purchaser shall reimburse Seller's reasonable costs of such performance immediately upon receipt of an invoice. Nothing herein shall be interpreted as shifting the obligation of Seller to pay any Cure Amounts relating to the Transferred Contracts to Purchaser.

## 2. ASSUMPTION OF LIABILITIES:

**2.1. Assumed Liabilities.** At and as of the Closing, Purchaser shall assume and agree to pay, perform and discharge when due, and shall be liable with respect to, all obligations, liabilities and responsibilities specifically referred to in this Section 2.1 ("**Assumed Liabilities**"), other than the Retained Liabilities, as follows:

**2.1.1.** The obligations of Seller to be performed under the Contracts listed on Schedule 2.1.1 (the "**Transferred Contracts**") and the obligations of Seller to be performed under licenses and Permits included in the Acquired Assets that are assigned or otherwise transferred to Purchaser pursuant to this Agreement and listed on Schedule 2.1.1.

**2.1.2.** Obligations described in Article 3 of this Agreement with respect to Transferred Employees.

**2.1.3.** The obligation to pay for assets, goods or services ordered by Seller on or prior to the Closing and that are received by the Purchaser after Closing, provided that: (i) no single purchase or related group of purchases shall exceed $5,000 unless tied directly to a commitment purchase order from a customer and set forth on Schedule 2.1.3;

13

and (ii) miscellaneous lesser amounts incurred in the ordinary course of Seller's business consistent with amounts disclosed to Purchaser as "Expenses" in the income statements provided to Purchaser as part of the Financial Statements (other than Bank Service Charges).

**2.1.4.** Liabilities and obligations arising out of, resulting from, or relating to sales pursuant to Transferred Contracts of products or services by the Business, including all Product warranty, Product returns, Product liability (other than design defects) and Product recall liability related thereto.

**2.1.5.** All deferred revenue obligations arising under the Verizon Contract including all obligations to fulfill orders relating to products of the Business outstanding on the Closing Date set forth on <u>Schedule 2.1.1</u>.

**2.2.** **No Expansion of Third Party Rights.** The assumption by Purchaser of the Assumed Liabilities shall in no way expand the rights or remedies of any third party against Purchaser or Seller as compared to the rights and remedies which such third party would have had against Seller absent the Bankruptcy Cases, had Purchaser not assumed such Assumed Liabilities. Without limiting the generality of the preceding sentence, the assumption by Purchaser of the Assumed Liabilities shall not create any third-party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

**2.3.** **Retained Liabilities.** Notwithstanding anything in this Agreement to the contrary, Purchaser shall not assume or be deemed to have assumed, and shall have no liability or obligation with respect thereto, any other liabilities of the Company (collectively, "**Retained Liabilities**") including without limitation the following: (i) liabilities in respect of employment or services performed on or prior to the Closing, including, without limitation, liabilities in respect of agreements regarding compensation, severance, stock options and other benefits; (ii) product liability claims to the extent based on a defective design for Products designed by Seller and sold prior to the Closing Date except as expressly set forth in Section 2.1.4; (iii) existing litigation for which a claim has been made to or threatened in writing against Seller on or before the Closing Date; (iv) all Tax liabilities of Seller for all periods (but excluding any Tax liabilities allocated to Purchaser pursuant to Section 10.3 of this Agreement); (v) any liability or obligation of Seller for administrative fees and expenses, including, without limitation, any claims arising under Section 503(b) of the Bankruptcy Code; (vi) any liability or obligation of Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement; (vii) all Debt (as defined by Section 101(12) of the Bankruptcy Code) owed by Seller to any party; (viii) all Claims, except for Assumed Liabilities; (ix) all liabilities to employees of Seller who are not Transferred Employees as defined in Section 3.1.3, (x) any amounts payable to Wireless Matrix USA, Inc. ("**Wireless Matrix**") in connection with, and pursuant to, the termination of the Asset Sale and Purchase Agreement dated June 6, 2006 (the "**Wireless Matrix Agreement**"), between Wireless Matrix and Seller, or (xi) any liability or obligation not expressly assumed pursuant to Section 2.1 hereof.

**3.** **ACQUIRED ASSETS - PERSONNEL MATTERS – TRANSFERRED EMPLOYEES:**

**3.1.** **Business Employees.** Listed on <u>Schedule 5.1.16.A</u> are all employees and consultants of Seller that perform services exclusively or primarily for the Business (each employee required to be so listed a "**Business Employee**"). With respect to each such employee and consultant (as limited in definition for purposes of this Article 3 only) included thereon,

14

Schedule 5.1.16.A lists: (i) each such person's title or job/position; (ii) each such person's job designation (i.e., salaried or contract); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., authorized leave or absence, etc.)); (v) each such person's annual base rate of compensation; (vi) any additional compensation otherwise payable to such person or for which such person is expressly eligible; and, if applicable; (vii) any consideration, payment, or benefit to which such person may be entitled upon termination of services to the Seller or Purchaser; and (viii) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, golden parachute, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws).

**3.1.1.** Not later than ten (10) calendar days after signing this Agreement, Purchaser will confirm the names of the employees that it intends to offer employment to. Not later than ten (10) calendar days prior to the Closing Date, Purchaser will offer employment to substantially all Business Employees (other than as set forth on Schedule 5.1.16.A) with such new employment to commence (if accepted) with effect from the Closing and will confirm the list of such employees to Seller promptly thereafter.

**3.1.2.** Not later than fifteen (15) calendar days prior to the Closing Date, Seller will provide Purchaser with an updated Schedule 5.1.16.A, such updated schedule to include certain key employees as indicated on the initial schedule.

**3.1.3.** Purchaser's offer of employment to substantially all persons identified on Schedule 5.1.16.A, will on Purchaser's standard terms and conditions as applied to similarly situated employees; provided, however, that Purchaser shall give each such employee credit for time previously employed by Seller for all purposes within Purchaser's direct control. Any Business Employee that accepts and commences employment with Purchaser pursuant to a written offer letter with Purchaser shall be referred to herein as a "**Transferred Employee**".

**3.1.4.   Retention Bonus.** Purchaser shall allocate an aggregate of $500,000 among certain of the Transferred Employees (the "**Retention Bonus**"). The method of allocation of the Retention Bonus among the Transferred Employees shall be as Purchaser may determine in its sole discretion. The Retention Bonus shall be paid in accordance with the terms and conditions outlined in Purchaser's offers of employment. On the Purchaser's first regular payroll date following the six (6) month anniversary of the Closing, Purchaser shall commence payment of the Retention Bonus in such amounts as determined by Purchaser to such Transferred Employees (subject to applicable deductions and withholding).

**3.2.   Cooperation.** Seller and Purchaser will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Article 3.

**3.3.   No Third Party Rights.** No provision of this Agreement confers rights or remedies upon any person, including Transferred Employees, other than the parties to this Agreement and Delphi.

PA\10464639.4
35116501-1001

## 4.    PURCHASE PRICE:

**4.1.    Purchase Price; Deposit Amount.**   Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets shall be the amount of: (i) Eleven Million Four Hundred Thousand Dollars (US $11,400,000.00); plus (ii) assumption of the Assumed Liabilities.   The final aggregate purchase price, as so determined, is referred to herein as the "**Purchase Price**".

**4.1.1.    Deposit Amount.**  Purchaser has delivered to the Escrow Agent pursuant to the terms of the Escrow Agreement  $500,000 in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), pursuant to the MobileAria Bidding Procedures attached to the Bidding Procedures Order (the "**Good Faith Deposit**") to be held by Seller in an interest bearing account reasonably acceptable to Purchaser to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures:

**A.**         **Deposit Instructions.**   On the Closing Date, the Deposit Amount shall become a part of the Escrow Amount pursuant to Section 4.1.2,  and shall be held and distributed in accordance with the provisions of this Agreement and the Escrow Agreement.

**B.**         **Termination of Agreement.**   Upon any failure by Purchaser to consummate the Sale after entry of the Sale Approval Order, resulting in a breach by Purchaser hereunder, Seller and Purchaser shall jointly instruct the Escrow Agent to deliver the Deposit Amount, in accordance with the terms of the Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Seller in the Escrow Agreement, to be retained by Seller.  Any such payment shall constitute Seller's sole recourse in connection with such failure to consummate the transactions contemplated hereby.

**C.**         **Other Reason.**   Upon termination of this Agreement for any other reason, or upon the failure by Seller to consummate the Sale after entry of the Sale Approval Order, Seller and Purchaser shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Purchaser in the Escrow Agreement, to be retained by Purchaser.

**D.**         **Temporary Escrow.**   Seller and Purchaser acknowledge that in order to execute this Agreement more expeditiously, Purchaser delivered to DLA Piper Rudnick Gray Cary US LLP, 2000 University Avenue, East Palo Alto, California 94303 ("**DLA**") the Deposit Amount on June 28, 2006. Within one (1) business day following the execution of an Escrow Agreement substantially in the form attached hereto as Schedule 7.2.4 by each of the parties thereto, the Purchaser shall direct DLA to deliver the Deposit Amount to the Escrow Agent as set forth in Section 4.1.1 above as if such funds had been delivered by the Purchaser to the Escrow Agent as set forth therein.  Such funds shall remain the property and under the control of Purchaser until such time as Purchaser directs DLA pursuant to the preceding sentence, at which time the other provisions of this Section 4.1.1 shall control.

PA\10464639.4
35116501-1001

**4.1.2.  Delivery of Purchase Price.**  At Closing, Purchaser shall pay to Seller an aggregate amount equal to the Purchase Price less the Deposit Amount (apportioned pursuant to the allocation referred to in Section 4.2) and less $475,000 by wire transfer in U.S. Dollars in immediately available funds to the account of the appropriate Seller, pursuant to this Agreement and a notice delivered by Seller to Purchaser prior to Closing. At Closing, Purchaser shall pay to JPMorgan Chase Bank, NA as "**Escrow Agent**" hereunder $475,000 of the Purchase Price (when added to the Deposit Amount (total is $975,000) is hereinafter referred to as the "**Escrow Amount**") to be held by the Escrow Agent as collateral to secure the rights of the Purchaser under Article 12 hereof.  The Escrow Amount shall be held pursuant to the provisions of an escrow agreement substantially in the form of Schedule 7.2.4 (the "**Escrow Agreement**").  The Escrow Amount will be held by the Escrow Agent from the Closing Date until the one (1) year anniversary of the Closing Date (the "**Escrow Period**"); provided, however, that in the event Purchaser has made a claim under Article 12 prior to the end of the Escrow Period, then the Escrow Period shall continue (and the Escrow Agent will continue to hold in escrow that portion of the Escrow Amount which is equal to the amount which is necessary to satisfy such indemnity claim) until such claim is fully and finally resolved.  The costs and expenses of the Escrow Agent will be paid from and borne solely by the Escrow Amount.

**4.2.    Allocation of Purchase Price.**  The Parties agree to allocate the Purchase Price among the Business and the agreements provided herein for transfer of the Business to Purchaser, for all purposes (including financial, accounting and tax) (the "**Allocation**") in a manner consistent with the Allocation Schedule set forth in Schedule 4.2 to be mutually agreed upon by Purchaser and Seller in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, based on the fair market value of the Acquired Assets.  Purchaser shall provide to Seller a draft Allocation within fifteen (15) days following the Closing Date.  This Allocation shall become final and binding on the parties, unless Seller notifies Purchaser within fifteen (15) days after receipt of such Allocation of Seller's disagreement with such Allocation.  In the event Seller timely notifies Purchaser of such disagreement, the parties shall resolve such disagreement in the manner described in Section 13.18 of this Agreement.  Purchaser and Seller shall each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law.  Seller shall provide Purchaser and Purchaser shall provide Seller with a copy of any information required to be furnished to the Secretary of the Treasury under Internal Revenue Code Section 1060.

**4.3.    Other Adjustments.**

**4.3.1.**    Purchaser agrees to buy from Delphi certain inventory up to 6,228 "VTCUs", as defined in the Verizon Contract, which Delphi, in turn, shall have purchased from Prolificx (the "Prolificx Inventory") if, and only to the extent that such Prolificx Inventory meets, in all respects, Purchaser's requirements to fulfill customer purchase orders under the Verizon Contract, the Austin Powder Agreement and the BP Agreement (collectively, "Customer Purchaser Orders").  In the event that such Prolificx Inventory does not meet Purchaser's requirements to fulfill Customer Purchase Orders for VTCUs, then Delphi should have a right of first refusal to sell to Purchaser modified VTCUs that meet Purchaser's requirements

17

(the "Modified VTCUs") if and only if Delphi can deliver such Modified VTCUs to Purchaser to meet the terms and conditions of Customer Purchase Orders, including the delivery date. Purchaser's obligation to purchase up to 6,228 VTCUs shall be inclusive of any Modified VTCUs purchased.  Purchaser shall promptly notify Delphi of Purchaser's acceptance of a Customer Purchase Order for Modified VTCUs.  Upon receipt of such notice from Purchaser, Delphi shall have five (5) calendar days to provide Purchaser with written confirmation that it can and will provide such Modified VTCUs to Purchaser in accordance with the terms and conditions of the Customer Purchase Order, including the delivery date.  Delphi's right of first refusal shall expire without further notice if Delphi fails to provide the confirmation set forth herein.

      **4.3.2.**    Upon reasonable request and after receipt of a Customer Purchase Order, Delphi shall comply with Purchaser's requests to inspect, test and obtain information concerning the Prolificx Inventory and any Modified VTCUs as contemplated by this Section 4.3 and provide such other adequate assurances of Delphi's ability to provide Prolificx Inventory or Modified VTCUs within the time specified within the Customer Purchase Order. All such requests to inspect, test and/or obtain information concerning the Prolificx Inventory and any Modified VTCUs shall provide sufficient time for Delphi to transfer such Prolificx Inventory or Modified VTCUs to a testing facility as mutually agreed to between the parties.

      **4.3.3.**    Provided that Delphi confirms within five (5) calendar days of a request by Purchaser that it will provide Purchaser with Prolificx Inventory or Modified VTCUs in accordance with the terms of Purchaser's Customer Purchase Orders, Purchaser shall purchase all Prolificx Inventory and Modified VTCUs from Delphi as needed prior to purchasing any VTCUs from any other source.

      **4.3.4.**    The Prolificx Inventory and any Modified VTCUs shall be purchased by Purchaser at the same VTCU unit price provided for in that certain Amendment No. 1 dated April 5, 2006 to the Prolificx Manufacturing Services and License Agreement between Prolificx New Zealand Ltd. and the Seller dated August 1, 2005 ("the Prolificx Agreement").

      **4.3.5.**    Purchaser shall have no obligation to purchase the Prolificx Inventory or the Modified VTCUs (i) if such Prolificx Inventory or Modified VTCUs is not first quality inventory saleable to Customers in the ordinary course of Purchaser's business and/or (ii) if the warranty (of 3 years from the date of delivery to Purchaser) for the Prolificx Inventory or the Modified VTCUs (which shall be no less favorable to Purchaser than the warranty for Prolificx Inventory) is not in full force and effect in all respects or in any other manner diminished.

      **4.3.6.**    Regarding Purchaser's acquisition of inventory from Delphi under this section, Purchaser shall have the same rights, including warranty rights, as Seller, Delphi and its affiliates have, as buyers, against Prolificx or otherwise arising under the Prolificx Agreement, including without limitation, transfer of title and invoicing and payment terms.

**4.3.7.**    Delphi shall not (i) sell the Prolificx Inventory to any party other than to Purchaser nor (ii) delegate its obligations under this Section 4.3 without the consent of Purchaser.

**4.3.8.**    Nothing herein shall limit in any respects Purchaser's rights under the law or in equity as against Seller or Delphi with respect to the obligations set forth in this Section 4.3.

**4.3.9.**    Subject to all of the other terms and conditions of this Section 4.3 relating to the Prolificx Inventory, Purchaser agrees that it shall purchase from Delphi 2,000 VTCUs, whether or not it has received Customer Purchase Orders for such Prolificx Inventory, within one (1) year from the Closing Date.

5.    **REPRESENTATIONS AND WARRANTIES:**

**5.1.    Representations and Warranties of Seller.**    All information set forth in the Disclosure Schedules with respect to any clause of this Section 5.1 shall be deemed disclosed under and incorporated into any other clause of this Section 5.1 as to which such disclosure would clearly be appropriate based solely on the language in such disclosure and such other clause. Seller represents and warrants to Purchaser as follows:

**5.1.1.    Organization and Good Standing.**    Except as otherwise set forth on Schedule 5.1.1, Seller is a legal entity duly organized, validly existing and in good standing under the laws of the state of Delaware, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate its properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property, except where the failure so to qualify or to be so licensed would not have a Material Adverse Effect.

**5.1.2.    Corporate Power; Due Authorization.**    Seller has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, subject to Bankruptcy Court approval, to which Seller is a party, and to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated herein and therein.    The execution, delivery and performance of this Agreement and the Ancillary Agreements by the Seller and the consummation of the contemplated transactions have been duly authorized by all necessary action on the part of Seller.    Subject to the entry and effectiveness of the Sale Approval Order, this Agreement, and the Ancillary Agreements, have been duly and validly executed and delivered by or on behalf of the Seller and (assuming this Agreement constitutes a valid and binding obligation of Purchaser) constitutes a legal, valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3.    No Violations.**    No consent, approval, authorization of, declaration, filing or registration with any domestic or foreign government or regulatory authority or any other third party is required to be made or obtained by the Seller in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and

19

the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements (including the assignment of all Transferred Contracts and all Purchased Intellectual Property), except for: (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court that have been made or obtained, or will be made or obtained prior to the Closing; and (ii) consents, approvals, authorizations, declarations, filings and registrations set forth on Schedule 5.1.3, the lack of which would not have a Material Adverse Effect. The items referred to in clauses (i) through (ii) of this Section 5.1.3 are hereinafter referred to as the "**Third-Party Requirements**".

**5.1.4.  Sufficiency of Acquired Assets.** The Acquired Assets comprise all of the assets reasonably necessary to carry on the Business in all material respects as it is now being conducted, except as identified on Schedule 5.1.4.

**5.1.5.  Personal Property; Condition of Personal Property:**

**A.  Title to Personal Property.** Except for the Personal Property leases and other Personal Property referred to in Schedule 5.1.5.A, Seller has good, valid and marketable title to the Personal Property and Inventory included in the Acquired Assets. Upon entry by the Bankruptcy Court of the Sale Approval Order, Seller shall transfer the Acquired Assets free and clear of any Lien, except as otherwise expressly indicated in paragraph 8 on Schedule 5.1.5.A.

**B.  Condition of Personal Property.** To the Seller's Knowledge, the Personal Property included in the Acquired Assets are in such condition (considering age and purpose for which used) as to enable the Business to be conducted as currently conducted without material disruption.

**C.  Inventory.** Except to the extent identified in Schedule 5.1.5.C, the Inventory included in the Acquired Assets will, as of the Closing, be located at Seller's Mountain View, CA site and such other locations as set forth on Schedule 5.1.5.C, be fit for the purpose for which it is ordinarily acquired, and, in the case of finished goods Inventory, merchantable in the Ordinary Course of Business in all material respects.

**D.  Machinery, Equipment and Tools.** Regarding the Acquired Assets, Schedule 5.1.5.D sets forth a list of substantially all machinery, equipment and capitalized tools with an acquisition value greater than $5,000 USD, included in the Acquired Assets and primarily used in or related to the Business.

**5.1.6.  Litigation.** Except for the pendency of the Bankruptcy Cases and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or, to Seller's Knowledge, investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to any of the Seller's Knowledge, threatened against or affecting Seller.

**5.1.7.  Intellectual Property Assets:**

**A.** Schedule 5.1.7.A.1 sets forth a true and complete list, including a complete identification of each patent, trademark registration, copyright registration, domain name registration, and application therefor included in the

PA\10464639.4
35116501-1001

Owned Intellectual Property; and Schedule 5.1.7.A.2 sets forth a true and complete list of all Licensed Intellectual Property. Schedule 5.1.7.A.3 sets forth a true and complete list, in all material respects, of all Software used in, arising from, relating to, or necessary for the conduct of the Business. To Seller's Knowledge there are no impediments to the ability of Seller under applicable Laws to maintain in effect or renew their respective rights, in all material respects, in and to the Owned Intellectual Property. Except as set forth on Schedule 5.1.11, Schedule 5.1.14.B and/or Schedule 6.2.5, to Seller's Knowledge there are no impediments to the ability of Seller under applicable Law to grant to Purchaser by license or assignment the rights to the Licensed Intellectual Property as contemplated in this Agreement.

**B.**    To Seller's Knowledge, Seller is conducting the Business in a manner that does not violate the intellectual property right of another Person and no Claim has been made by any third party against Seller of Intellectual Property infringement or misappropriation resulting from the operation of the Business, except as set forth in Schedule 5.1.7.B.

**C.**    Seller has not granted any license, sublicense or other permission to use the Owned Intellectual Property included in the Acquired Assets to any third party, except as set forth on Schedule 5.1.7.C.

**D.**    Except as set forth on Schedule 5.1.7.D, all Owned Intellectual Property included in the Acquired Assets: (i) is owned solely and exclusively by Seller; and (ii) upon entry by the Bankruptcy Court of the Sale Approval Order, Seller shall transfer the Owned Intellectual Property free and clear of any encumbrances thereon, including those set forth on Schedule 5.1.7.D.

**E.**    Except as set forth on Schedule 5.1.7.E, no Owned Intellectual Property or any Product that contains any is, in whole or in part, governed by an Excluded License. For purposes of this Agreement, an "**Excluded License**" means any license that requires, as a condition of modification and/or distribution of software subject to the Excluded License, that: (i) such software and/or other software combined and/or distributed with such software be disclosed or distributed in source code form or (ii) such software and/or other software combined and/or distributed with such software and any associated intellectual property be licensed on a royalty free basis (including for the purpose of making additional copies or derivative works).

**F.**    Seller has taken commercially reasonable steps to protect rights in confidential information (both of the Seller and that of third parties that the Seller has received under an obligation of confidentiality), has required all current and former employees with whom the Seller has shared confidential information to execute legally binding written non-disclosure agreements, and, except as set forth on Schedule 5.1.7.F & G, has entered nondisclosure or other similar agreements with substantially all third parties to whom the Seller has shared confidential information, except where the failure to do so would not have a Material Adverse Effect.

**G.**    Except as set forth on Schedule 5.1.7.F & G, the Seller has secured from all parties who have created any material portion of, or otherwise have any

rights in or to, the Owned Intellectual Property, valid and enforceable written assignments or licenses of any such work or other rights to the Seller and provided true, complete and correct copies of such assignments or licenses to Purchaser.

**H.**    The Seller does not export vehicle hardware units from the United States and has not determined whether it would require a license to do so.

**5.1.8.    Insurance.**    Schedule 5.1.8 contains a complete and correct list, in all material respects, of all material policies of insurance covering any of the assets primarily used in or relating to the Business, other than Excluded Assets, indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder.  All such policies are outstanding and in full force and effect.

**5.1.9.    Compliance with Other Instruments and Laws; Permits.**    The Business is in compliance with all Laws applicable to the conduct of the Business and all Permits, except where the failure to be in compliance would not have a Material Adverse Effect.  All Permits that are necessary for the conduct of the Business and the ownership and operation of the Acquired Assets have been duly obtained, are in full force and effect, and, to Seller's Knowledge, are listed on Schedule 5.1.9, and there are no proceedings pending or, to Seller's Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit, except in each case as would not, individually or in the aggregate, result in a Material Adverse Effect.  The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by Seller will not, with or without the passage of time or the giving of notice, result in any such violation or be in conflict with or constitute a default under any Permit.

**5.1.10. Brokers.**    Seller has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Purchaser would be liable.

**5.1.11. Consents and Approvals.**    Assuming that the Third-Party Requirements will be satisfied, made or obtained and will remain in full force and effect, and assuming receipt of the consents, approvals and authorizations listed in Schedule 5.1.11, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Seller, nor the consummation by Seller of the Sale, nor compliance by Seller with any of the provisions hereof and of the Ancillary Agreements, will, with or without the passage of time or the giving of notice: (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of Seller; (ii) result in a violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which Seller is a party or by which its properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to Seller or to any of its properties or assets; or (iv) result in the creation or imposition of any Lien other than Permitted Encumbrances on any asset of Seller, except in the case of clauses (ii), (iii)  and (iv) above, for violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions,

22

suspensions or revocations that: (a) would not individually or in the aggregate have a Material Adverse Effect; or (b) are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

5.1.12. **Financial Statements.** (i) The unaudited balance sheets and statements of income, as of and for the fiscal years ended December 31, 2003, December 31, 2004 and December 31, 2005, for the Business are set forth in <u>Schedule 5.1.12(i)</u>; and (ii) the unaudited balance sheet and statement of income for the four (4) months ended April 30, 2006 for the Business are set forth in <u>Schedule 5.1.12(ii)</u> (such financial statements in clause (i) and (ii) are collectively referred to as the **"Financial Statements"**). Except as set forth on <u>Schedule 5.1.12(ii)</u>, the Financial Statements (including the notes thereto) were compiled from the books and records of the Business, are in accordance with such books and records, have been prepared in accordance with GAAP consistently applied (except as set forth therein) throughout the periods covered thereby and present fairly the assets, liabilities, financial position and results of operations of the Business as of the dates and for the periods indicated; provided, however, that the Financial Statements referred to in clause (ii) of the preceding sentence are subject to normal year-end adjustments (which, except as set forth on <u>Schedule 5.1.12(ii)</u> will not be material individually or in the aggregate) and lack footnotes required by GAAP.

5.1.13. **Events Subsequent to Latest Financial Statements.** Except as referred to on <u>Schedule 5.1.13</u> or as otherwise contemplated by or referred to in this Agreement or the Ancillary Agreements, since April 30, 2006: (i) there has not been any Material Adverse Change; and (ii) the Business has been conducted and carried on only in the Ordinary Course of Business.

5.1.14. **Contracts:**

A.    <u>Schedule 5.1.14.A</u> lists all Contracts of Seller or its affiliates related to the Business that involve payment or performance obligations that individually exceed $25,000, and such Schedule includes all other Contracts to which Seller is a party or by which any of its properties are bound or that primarily relate to, are primarily used in, are primarily arising from, or are necessary for the conduct of the Business (including license and distribution agreements and arrangements among Seller, its Affiliates or third parties), other than Accounts Receivable (collectively, **"Listed Contracts"**). Seller has delivered or made available to Purchaser either: (i) true, correct and complete copies in all material respects; or (ii) accurate written descriptions in all material respects, of the Listed Contracts, except as set forth on <u>Schedule 5.1.14.A</u>. <u>Schedule 5.1.14.A</u> identifies all Post-Petition Contracts included within the Listed Contracts other than immaterial Post-Petition Contracts and open purchase orders entered into in the Ordinary Course of Business. Except as set forth on <u>Schedule 5.1.14.A</u>, and except for Post-Petition Contracts that are immaterial to the Business, none of the Post-Petition Contracts included within the Listed Contracts contains any provisions restricting its assignment to Purchaser pursuant to the terms of this Agreement.

B.    Each of the Listed Contracts is valid, binding and, subject to payment of all Cure Amounts, if applicable (which Cure Amounts will be paid by Seller as set forth in the Sale Approval Order), enforceable against Seller, to the extent set forth therein, and, to Seller's Knowledge, the other parties thereto, in

23

accordance with its terms, and is in full force and effect. Except as set forth on Schedule 5.1.14.B, and other than with respect to monetary defaults by Seller under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Seller, and to Seller's Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in material default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable) in respect of, any of such Listed Contracts, and there is not a material default thereunder or material claim of default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable) and there has not occurred any event which, with the passage of time or the giving of notice or both, would constitute a material default thereunder (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable), on the part of Seller, or to Seller's Knowledge, on the part of any other party thereto. Except as set forth in Schedule 5.1.14.B, and other than with respect to monetary defaults by Seller under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Seller has received no written claim or notice from any other party to any such Listed Contract that Seller has breached in any material respects any obligations to be performed by it thereunder, or is otherwise in material default or delinquent in any material respects in performance thereunder (except with respect to defaults, delinquencies or obligations that need not be cured or performed, as appropriate, under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable).

**5.1.15. <u>Tax Matters</u>:**

**A.** Seller has: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all Tax Returns required to be filed and such Tax Returns were true, correct and complete; and (ii) and have paid all Taxes shown thereon as due and owing, except where the failure to file such Tax Returns or to pay such Taxes would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**B.** Except as set forth on Schedule 5.1.15.A, Seller has properly and timely withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor or other third party (including federal income taxes, sales and use taxes, personal property taxes, Federal Insurance Contribution Act taxes and Federal Unemployment Tax Act taxes) and has properly and timely paid the same to the proper Tax receiving officers or authorized depositories, except in each case where such failure would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**C.** Seller is not a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement, except as provided in this Agreement, under which Purchaser could be subject to Tax or other liability after the Closing.

24

**D.**     Except as disclosed in Schedule 5.1.15.D, no claim has ever been made by an authority in a jurisdiction in which Seller does not file Tax Returns that it is or may be subject to taxation by that jurisdiction or authority with respect to, in connection with, associated with or related to, Seller; no agreements or waivers are outstanding extending the statutory period of limitations applicable to any Tax Return of Seller with respect to a Tax assessment or deficiency; and Seller has not received any: (i) notice of underpayment of Taxes or other deficiency that has not been paid with respect to, in connection with, associated with or related to, Seller; or (ii) any objection to any Tax Return, with respect to, in connection with, associated with or related to, Seller, except in each case where such matter would not result in any liability to the Purchaser or any Lien on the Acquired Assets. Except as disclosed in Schedule 5.1.15.D, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, Seller have been fully paid or are fully reflected as a liability in the financial statements of the Seller.

**E.**     Seller is not a party to any agreement, contract arrangement or plan that has resulted or would result, separately or in the aggregate, in the payment of any excess parachute payments within the meaning of IRC Code Section 280G.

**F.**     There are no Tax liens on any of Seller's assets, except for liens for Taxes not yet due and payable.

**G.**     Except for Transfer Taxes relating to the Sale, since April 30, 2006, Seller has not incurred any Taxes other than in the ordinary course of business and Seller has made adequate provisions on its books of account for all Taxes with respect to the Acquired Assets and the Business for such period, except for Taxes that would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**H.**     Seller has no liability for the Taxes of any Person other than Seller or any of its subsidiaries (i) under Treasury Regulation 1.1502-6 (or any similar Treasury Regulations), (ii) as a transferee or successor, (iii) by contract, or (iv) otherwise, except in each case where such liability would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**5.1.16. Employee Issues:**

**A.**     **Business Employees.**  Schedule 5.1.16.A contains a list of all Business Employees, and the information thereon is true, complete and correct in all material respects.

**B.**     **Seller Performance.**  Seller has performed and discharged, or will perform and discharge on or before the Closing Date, its obligations with respect to all of the Business Employees, up to and including the Closing Date, including working time, payment of wages and salaries, benefits, employer's contributions to any relevant social security, health, welfare and occupational pension scheme, severance or any other payments, and payment of all other costs and expenses relating to their employment (including without limitation any taxation, accrued holiday and vacation pay, accrued bonus or other sums payable with respect to

25

employment) up to and including the Closing Date, except as otherwise set forth on <u>Schedule 5.1.16.B</u>.

     **5.1.17. <u>Absence of Other Representations or Warranties</u>.**   Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, Seller makes no representations or warranties, express or implied, with respect to the Acquired Assets, the Assumed Liabilities, the sale of the Business, and in particular but without limitation, Seller makes no representations with respect to any plan(s) of Purchaser for the future conduct of the Business.   For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information   not contained in this Agreement or the Ancillary Agreements, or on any projected volumes of the Business, all which were produced only for information purposes.

**5.2.   <u>Representations and Warranties of Purchaser</u>.**   Purchaser warrants and represents to Seller as follows:

     **5.2.1. <u>Corporate Data</u>.**   Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.

     **5.2.2. <u>Corporate Power; Due Authorization</u>.**   Purchaser has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein.   The execution, delivery and performance of this Agreement and the Ancillary Agreements have been duly authorized by all necessary action on the part of Purchaser.   This Agreement is, and the Ancillary Agreements to which Purchaser is a party will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Seller), valid and legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

     **5.2.3. <u>No Violations</u>.**   Neither the execution, delivery or performance of this Agreement by Purchaser, nor the consummation by Purchaser of the transactions contemplated herein, nor compliance by Purchaser with any of the provisions hereof, will: (i) except for the Third-Party Requirements, require Purchaser to obtain any consent, approval or action of, or make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of Purchaser; or (iii) violate any order, writ, injunction, decree, statute, rule or regulation applicable to Purchaser or Purchaser's properties or assets.

     **5.2.4. <u>Litigation</u>.**   Except for the pendency of the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser which could reasonably be expected to result in the issuance of an Order

outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

     **5.2.5.** **Brokers.**  Purchaser has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Seller would be liable.

     **5.2.6.** **Solvency.**  Upon the consummation of the transactions contemplated by this Agreement: (i) Purchaser will not be insolvent; (ii) Purchaser will not be left with unreasonably small capital; (iii) Purchaser will not have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Purchaser will not be impaired; and (v) immediately following closing, Purchaser will have sufficient capital to continue the Business as a going concern (it being understood that Purchaser will have no obligation to continue all or any portion of the Business as a going concern).

     **5.2.7.** **Availability of Funds.**  Purchaser has or will have available, at or prior to Closing, sufficient cash in immediately available funds to pay the Purchase Price and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

     **5.2.8.** **Adequate Assurance of Future Performance.**  Purchaser has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed Contract to the parties thereto (other than Seller) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance shall be necessary thereunder with respect to any Assumed Contract.

     **5.2.9.** **Compliance with Law.**  Purchaser is in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

     **5.2.10.** **Anti-Money Laundering.**  Purchaser is in compliance with: (i) all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which Purchaser operates or does business. Neither the Purchaser nor any of its directors, officers or affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and Purchaser is not affiliated in any way with, or providing financial or material support to, any such persons or entities. Purchaser agrees that should it, or any of its directors, officers or affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Purchaser shall inform the Seller in writing immediately.

PA\10464639.4
35116501-1001

**5.3.    Survival of Representations, Warranties and Covenants of the Seller.**    The representations and warranties made by the Seller in Section 5.1 shall survive the Closing and shall expire on the first anniversary of the Closing Date (the **"Expiration Date"**); provided, however, that if, at any time prior to the first anniversary of the Closing Date, Purchaser delivers to Seller a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by the Seller and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the first anniversary of the Closing (and the Expiration Date with respect thereto shall be extended) until such time as such claim is fully and finally resolved.  The covenants made by the Seller shall survive the Closing.

**5.4.    Survival of Representations, Warranties and Covenants of the Purchaser.** The representations and warranties made by the Purchaser in Section 5.2 shall survive the Closing and shall expire on the Expiration Date; provided, however, that if, at any time prior to the first anniversary of the Closing Date, Seller delivers to Purchaser a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by the Purchaser and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the first anniversary of the Closing (and the Expiration Date with respect thereto shall be extended) until such time as such claim is fully and finally resolved.  The covenants made by the Purchaser shall survive the Closing.

**6.    CONDITIONS TO CLOSING:**

**6.1.    Conditions to Obligations of Seller and Purchaser.**  The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following conditions precedent:

**6.1.1.    Sale Approval Order.** The Sale Approval Order, in form and substance reasonably satisfactory to Purchaser, shall be entered by the Bankruptcy Court and shall not be subject to a stay or injunction.

**6.1.2.    No Law, Judgments, etc.**  No provisions of any applicable Law and no judgment, injunction (preliminary or permanent), order or decree that prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement shall be in effect (each party taking any and all steps required by Section 8.2 of this Agreement).

**6.2.    Conditions to Obligations of Purchaser.**    The obligation of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchaser):

**6.2.1.    Accuracy of Representations and Warranties.**  Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Seller contained in this Agreement that are qualified by materiality shall be true and correct, and the other representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects, in each case as of the date hereof and as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time).  Subject to the preceding sentence, Seller may

28

update or supplement the Disclosure Schedule prior to Closing by written notice to Purchaser, but any such update or supplement shall not be taken into account in determining whether the condition set forth in this Section 6.2.1 has been satisfied or whether there has been a breach of any representation, warranty or covenant has been breached for any purpose under this Agreement. Any claim that Purchaser may have based on matters disclosed by Seller in such updated or supplemented Disclosure Schedule will be deemed waived by Purchaser if Purchaser nonetheless completes the transactions contemplated herein.

**6.2.2. Performance of Covenants.** Each of the Ancillary Agreements to which Seller is a party shall have been executed and delivered by Seller to Purchaser, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Seller on or before the Closing shall have been performed in all respects.

**6.2.3. Payment of Cure Amounts.** Seller shall have paid all Cure Amounts with respect to Assumed Contracts as set forth in Section 8.4 hereof. Seller shall have cured any and all monetary defaults that arose under or otherwise became due and owing prior to the Closing Date under Transferred Contracts that are Post-Petition Contracts.

**6.2.4. Certification.** Seller shall furnish to Purchaser a certification in a form acceptable to Purchaser pursuant to Treasury Regulation Section 1.1445-2(b)(2) that Seller is not a foreign person.

**6.2.5. Other Approvals.** Except as expressly obviated by the terms of the Sale Approval Order, the third party consents set forth in Schedule 6.2.5 shall have been received and all consents, approvals and filings in connection with Third-Party Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchaser.

**6.2.6. Stockholder Consent.** This Agreement shall have been adopted by the requisite approval of the stockholders of Seller pursuant to the provisions of the Delaware General Corporation Law and the certificate of incorporation and bylaws of Seller.

**6.3. Conditions to Obligations of Seller.** Except as otherwise permitted by this Agreement, the obligation of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Seller):

**6.3.1. Accuracy of Representations and Warranties.** The representations and warranties of Purchaser contained in this Agreement that are qualified by materiality shall be true and correct, and the other representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects, in each case as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Purchaser's ability to consummate the transactions contemplated by this Agreement.

**6.3.2. Performance of Covenants.** Each of the Ancillary Agreements to which Purchaser is a party shall have been executed and delivered by Purchaser to Seller, and

29

all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Purchaser on or before the Closing shall have been performed in all material respects.

        **6.3.3.  Delivery of Purchase Price.**  Purchaser shall have delivered to Seller the Purchase Price less the Escrow Amount by wire transfer, in immediately available funds, to such bank account or bank accounts as shall be specified by Seller to Purchaser on the Closing Date.

## 7.  CLOSING:

        **7.1.    The Closing.**  Subject to the satisfaction of the conditions set forth in Article 6 of this Agreement, the closing (the "**Closing**") of the transactions contemplated hereby shall take place at the offices of DLA Piper, 2000 University Avenue, East Palo Alto, California 94303 at 10:00 a.m. on the second Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing) and in any case on a mutually agreeable date no later than fifteen (15) days following the entry of the Sale Approval Order, or if such day is not a Business Day, then on the next immediately following Business Day, or on such other date or at such other time as the Parties may agree.   For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. EDT on the Closing Date.

        **7.2.    Ancillary Agreements.**  At the Closing, the Parties shall, and, with respect to Section 7.2.6 Seller shall cause Delphi Technologies to, execute and deliver each to the other the following agreements to which they are a party:

        **7.2.1.**  Assignment of Lease regarding 800 West El Camino Real, Mountain View, CA 94040 property substantially in the form of Schedule 7.2.1, including the landlord's consent thereto.

        **7.2.2.**  Intellectual Property Transfer Documents as follows:

        **A.**    An assignment from MobileAria to @Road of the Patent Rights set forth in Schedule 5.1.7.A.1 substantially in the form attached hereto as Schedule 7.2.2.A.

        **B.**    An assignment from MobileAria to @Road of the Trademark Rights set forth in Schedule 5.1.7.A.1 substantially in the form attached hereto as Schedule 7.2.2.B.

        **7.2.3.**  Assignment and Assumption Agreement relating to the Transferred Contracts, consistent with the Sale Approval Order substantially in the form attached hereto as Schedule 7.2.3.

        **7.2.4.**  Escrow Agreement between Seller, Purchaser and the Escrow Agent substantially in the form attached hereto as Schedule 7.2.4.

        **7.2.5.**  Bill of sale substantially in the form attached hereto as Schedule 7.2.5.

        **7.2.6.**  A non-exclusive, royalty-free license for vehicle adaptor bus technology on terms reasonably agreeable to  Delphi Technologies and Purchaser.

PA\10464639.4
35116501-1001

**7.3.    Seller's Deliveries.**  At the Closing, Seller shall deliver to Purchaser the following, in proper form for recording where appropriate:

**7.3.1.**  Executed assignments for the Permits and Contracts to be acquired by Purchaser pursuant to Article 1.

**7.3.2.**  An officer's certificate, dated as of the Closing Date, executed on behalf of Seller, certifying that the conditions specified in Section 6.2 have been fulfilled.

**7.3.3.**  A certificate, dated as of the Closing Date, executed on behalf of Seller by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Seller's Organizational Documents; and (ii) a true and correct copy of the resolutions of Seller's board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which Seller is a party and the consummation of the transactions contemplated hereby and thereby.

**7.3.4.**  Certified copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

**7.3.5.**  Duly executed bill of sale transferring the Acquired Assets to Purchaser.

**7.3.6.**  Appropriate receipts.

**7.4.    Purchaser's Deliveries.**  At the Closing, Purchaser shall deliver to Seller, in proper form for recording where appropriate:

**7.4.1.**  The Purchase Price less the Escrow Amount as required by, and in accordance with, Section 4.1.

**7.4.2.**  An Assignment and Assumption Agreement pursuant to which the Purchaser assumes the Assumed Liabilities.

**7.4.3.**  An officer's certificate, dated as of the Closing Date, executed on behalf of Purchaser, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.4.**  A certificate, dated as of the Closing Date, executed on behalf of the Purchaser by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchaser's Organizational Documents; and (ii) a true and correct copy of the resolutions of the Purchaser's board authorizing the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby.

**8.    CERTAIN ADDITIONAL COVENANTS:**

**8.1.    Bankruptcy Actions:**

**8.1.1.**  Seller shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Acquired Assets under the Agreement, including

PA\10464639.4
35116501-1001

serving on all required Persons in the Bankruptcy Cases, notice of the Sale Hearing (as hereinafter defined) and the objection deadline and the Assumption Notice in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.2.**    **Registrations, Filings and Consents; Further Actions.**    Upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including, without limitation, using their reasonable best efforts to cause the satisfaction of all conditions to Closing.

**8.3.**    **Operation of the Business Pending Closing:**

**8.3.1.**    Except: (i) as otherwise provided herein; (ii) as required by or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iii) subject to any changes that may be required under applicable Laws; (iv) as set forth in the following sentence, until the Closing, Seller will (a) carry on the Business in substantially the same manner as heretofore; and (b) will perform in all material respects all of its obligations under all Listed Contracts and not amend, alter or modify in any significant respect that is adverse to the Business any provision of any Listed Contract; keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; endeavor to maintain the goodwill of the Business; and promptly advise Purchaser of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets.

**8.3.2.**    Seller shall promptly notify Purchaser if Seller becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2, 6.2.1 or 6.2.5 hereof to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Seller to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.3.3.**    Purchaser shall promptly notify Seller if Purchaser becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2 or 6.3.1 hereof to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Purchaser to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.4.**    **Assumed Contracts; Cure Amounts.**    Seller shall pay Cure Amounts as agreed to by the Seller and each party to an Assumed Contract or, absent such agreement, by order of Court in the time and manner specified by the Sale Approval Order. Notwithstanding anything in this Agreement to the contrary, at any time prior to the conclusion of the Sale Hearing, Purchaser may notify the Seller that it has elected not to take an assignment of one or more Assumed

Contracts and Seller shall have no obligation to assume or make payment of the Cure Amount with respect to any such Assumed Contract. Seller agrees to make such information available as Purchaser reasonably requests in order to make a determination with respect to such Assumed Contracts.

**8.5.    Post-Closing Covenants.**  From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

### 8.5.1. Seller Post-Closing Covenants:

**A.    Non-Competition.**    Seller has as at Closing, established the reputation of the Business. Seller undertakes and agrees with Purchaser that for a period of three (3) years after the Closing Date, except with the consent of Purchaser, Seller shall not either on its own account or in conjunction with or on behalf of any person, firm or company whether by sales, marketing, investing, management or other activities, carry on, license or be engaged, concerned or interested, directly or indirectly, whether as a shareholder, director, employee, partner, agent or otherwise in carrying on any business which is engaged in the design, development, manufacture or sale of Products (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 8.5.1 will not prohibit, in any way: (i) the acquisition of a controlling interest or merger with any person, or a division or business unit thereof, acquired by or merged, directly or indirectly, into Seller or any of its Affiliates after the Closing Date if the Competitive Business accounts for five (5%) percent or less of the sales or five (5%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than fifteen (15%) percent of such acquired business's sales or value; (ii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of a non-controlling ownership interest in any person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than twenty percent (20%) of such acquired business's sales or value; (iii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any person engaged in a Competitive Business; (iv) provision of consulting services to any Person for the purpose of designing or manufacturing on behalf of Seller or any Seller Affiliate or selling to Seller or any Seller Affiliate components and parts solely for automotive applications other than those that would constitute Products; (v) consistent with the generally applicable Seller or any Seller Affiliate troubled supplier practices, direct or indirect activities of Seller or any Seller Affiliate to advise, operate, manage or finance a troubled supplier of Seller or its Affiliates; and (vi) the design, development, manufacture or sale of telematic modems and other telematics hardware and the communication of digital data for the remote resource management market for any kind of vehicle, including commercial vehicles, and derivatives of such hardware (collectively, "**Competing HW**"); provided that Seller does not provide subscription services (other than repair or replacement of defective hardware) associated with the use of Competing HW; and, provided, further, that Competing HW may be sold only to original equipment manufacturers, any distributor or reseller, and commercial users

PA\10464639.4
35116501-1001

requiring volumes exceeding 5,000 units.  For further clarification, Seller agrees not to market or sell products that combine all of the following features in one Competing HW unit: CDMA (EVDO), GPS, 802 technologies, Windows CE operating platform, USB/Serial/GPIO interfaces and 64MG internal memory capabilities.

**B.**    While the restrictions contained in this Section 8.5.1 are considered by the parties to be reasonable in all the circumstances, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions shall be adjudged to be void as going beyond what is reasonable in all the circumstances for the protection of the interests of Purchaser and/or the Business but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope the said restriction shall apply with such modifications as may be necessary to make it valid and effective.

**C.**    Seller will cooperate with Purchaser to transition the letter of credit arrangement set forth in Section 4.3 as of the Closing Date.

**D.**    Seller will terminate the Wireless Matrix Agreement effective as of the Closing Date pursuant to Section 9.1.1.C. of the Wireless Matrix Agreement and shall pay all amounts due to Wireless Matrix in connection with such termination in accordance with the terms and provisions set forth in Section 9.3 of the Wireless Matrix Agreement.

**8.5.2. Technical Documentation.**  Seller has delivered, or will deliver on or before the Closing, to the Purchaser, a copy of all Technical Documentation included in the Acquired Assets.  For a period of not less than one (1) year commencing at Closing, Purchaser and its Affiliates shall use reasonable efforts to maintain all Technical Documentation applicable to product design, test, release, validation and manufacture it acquires from Seller and its Affiliates in connection with the purchase of the Acquired Assets under Article 1 of this Agreement at a location at which they shall be reasonably accessible to Seller and its Affiliates upon reasonable request and with reasonable advance notice.  During such one (1) year period, Purchaser shall not intentionally destroy or give up possession of its final copy of such documentation without offering Seller the opportunity, at Seller's expense but without any payment to Purchaser, to obtain a copy of such documentation.

**8.5.3. Books and Records and Litigation Assistance From and After Closing:**

**A.**    Purchaser and its Affiliates shall use reasonable efforts to preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchaser by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than one (1) year from the Closing Date, or for any longer period as may be required of the Business by any government agency, law, regulation, audit or appeal of Taxes, or Tax examination at Purchaser's sole cost and expense.  If and when Seller believes that such records are no longer legally required, it will notify Purchaser.  During such period, Purchaser shall: (i) provide Seller or its Affiliates with such documents and

34

information as necessary, consistent with past practice, to complete the accounting books and records of the Business as of December 31, 2006; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any legal proceedings against or governmental investigations of Seller and its Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Seller and its Affiliates, the Business or the Acquired Assets during such period. Seller or its Affiliates shall reimburse Purchaser for the reasonable out-of-pocket expenses incurred in connection with any request by Seller to make available records pursuant to the foregoing sentence. In the event Purchaser wishes to destroy or dispose of such books and records after one (1) year from the Closing Date, it shall first give not less than thirty (30) days' prior written notice to Seller or its Affiliates, and Seller or its Affiliates shall have the right, at its option, upon prior written notice given to Purchaser within twenty (20) days of receipt of Purchaser's notice, to take possession of said records within thirty (30) days after the date of Purchaser's notice to Seller hereunder.

      **B.**      Purchaser, for itself and on behalf of its Affiliates, agrees to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations; (ii) make available documents and records delivered to it by Seller reasonably necessary in connection with any pursuit, contest or defense related to the Business, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Purchaser must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchaser must notify Seller of the existence of such privileged documents); and (b) Seller and its Affiliates will agree to keep confidential and not use for any other purpose documents and records that are confidential or are subject to trade secret protection); (iii) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to significantly interfere with Purchaser's business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Seller and its Affiliates in connection with such claim.

      **8.5.4.**  <u>**Payment and Collections.**</u>  Seller shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchaser after Closing, and Purchaser shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Seller after Closing, in order to ensure that the cost of the related liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement. To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party, Seller or Purchaser, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments. Seller shall promptly send Purchaser copies of all remittance advices and checks related to payments received by Seller with respect to such items. Purchaser shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Seller shall cooperate with Purchaser as is reasonably necessary to so notify such customers, including providing appropriate contact information for each such customer.

PA\10464639.4
35116501-1001

**8.5.5.    Intellectual Property Transition Rights.**    Seller will have the right to continue to use the MobileAria corporate name and office materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of MobileAria, but only in connection with the Bankruptcy Cases and the dissolution and wind down of Seller.

**8.6.    Further Assurances.**    If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement).

**8.7.    [Reserved]**

**8.8.    Certain Transactions.**    Purchaser shall not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any material delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Entity necessary to consummate the transactions contemplated by this Agreement or the Ancillary Agreements or the expiration or termination of any applicable waiting period; (ii) significantly increase the risk of any Governmental Entity entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) materially delay or prevent the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.9.    Communications with Customers and Suppliers.**    Prior to the Closing, Purchaser shall not, and shall cause its Subsidiaries and representatives not to, contact, engage in any discussions or otherwise communicate with any of the Business' customers, suppliers and others with whom it has material commercial dealings without obtaining the prior written consent of Seller (which may be conditioned on Seller having the right to participate in any meetings or discussion with any such customers, suppliers or others); provided, that Purchaser and Seller shall work together in good faith to arrange for an orderly transition of customer, supplier, and other third party relationships, including, without limitation, at the request of Purchaser, meetings and other correspondence with such customers, suppliers, and other third parties to ensure such orderly transition.  Purchaser may contact Verizon Services Corp. to: (i) ensure orderly transition of the Verizon Contract to Purchaser; and (ii) reduce and assess the likelihood of termination of the Verizon Contract by Verizon Services Corp. or material reduction of the amount of business conducted pursuant to the Verizon Contract, provided that Purchaser provides at least twenty-four (24) hour prior notice to Seller and permits Seller to supervise such correspondence at Seller's election.

## 9.    TERMINATION:

**9.1.    Termination.** Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

### 9.1.1.    By Either Party:

**A.**    By mutual written consent of Seller and Purchaser.

**B.**    Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any regulatory Governmental Entity, other than the Bankruptcy Court.

**C.**    If Seller consummates a transaction with an Alternate Bidder pursuant to, and in accordance with, the provisions set forth in Section 11.2 of this Agreement.

**D.**    [Reserved.]

**E.**    If the Bankruptcy Court has not entered the Sale Approval Order, on or before July 26, 2006 or by such later date agreed to in writing by the Seller and Purchaser (the **"Termination Date"**) or such Sale Approval Order is subject to a stay or injunction; provided, however, that the right to terminate this Agreement pursuant to this Section 9.1.1.E shall not be available to Purchaser if Purchaser shall have failed to perform, or caused any of its respective Affiliates to perform, any of its respective material obligations under this Agreement.

**9.1.2.    By Purchaser.**    By Purchaser (provided that Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein) (i) at any time prior to Closing, if a Material Adverse Effect shall have occurred, Purchaser may terminate within ten (10) Business Days after receiving written notice of such event, so long as such event is continuing at the time of any such termination; (ii) if Verizon Services Corp. has terminated, threatened to terminate, or Verizon otherwise evidences an intent to terminate the Verizon Contract or materially reduce the amount of business conducted pursuant to the Verizon Contract; (iii) two (2) Business Days following the closing of a Sale with a party other than Purchaser; or (iv) if the Closing shall not have occurred by August 31, 2006.

**9.1.3.    By Seller.**    Provided Seller is not in default of its obligations under this Agreement, by Seller if the Closing shall not have occurred on or before fifteen (15) days following the entry of the Sale Approval Order, or if such day is not a Business Day, then on the next immediately following Business Day.

**9.2.    Notice of Termination.**    In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

PA\10464639.4
35116501-1001

**9.3.    Procedure and Effect of Termination.** In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto.    Subject to Section 4.1.1 and this Section 9.3, if this Agreement is terminated pursuant to Section 9.1 hereof, then Seller shall, within two (2) Business Days following such termination, return the Deposit Amount to Purchaser. If this Agreement is terminated as provided herein no Party shall have any liability or further obligation to any other Party resulting from such termination except for the provisions of: (i)(a) Purchasers' obligations under that certain confidentiality agreement between the Parties dated June 8, 2006; (b) Article 9 (Termination); and (c) Sections 4.1.1 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.15 (Venue and Retention of Jurisdiction) and 13.18 (Dispute Resolution), all of which shall remain in full force and effect; and (ii) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Seller is entitled to receive the Deposit Amount, the right of Seller to receive such amount shall constitute Seller's sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by Purchaser of any of its representations, warranties, covenants or agreements set forth in this Agreement.    In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

## 10.    OTHER TAX MATTERS:

**10.1.**    Seller will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due prior to the Closing, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. Purchaser shall make available to Seller (and to Seller's accountants and attorneys) any and all books and records and other documents and information in its possession or control reasonably requested by Seller to prepare these Tax Returns.  Seller will make all payments required with respect to any such Tax Return.

**10.2.**    Purchaser will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due after the Closing (other than for Taxes with respect to periods for which the consolidated, unitary and Tax Returns of Seller will include the operations of the Business).  Purchaser shall be responsible for and shall pay when due all Taxes attributable, levied or imposed upon or incurred in connection with the Acquired Assets and the Business pertaining to: (a) any period ending after the Closing Date; and (b) the portion of any Taxes for which Purchaser is liable as determined in accordance with Section 10.3 below.

**10.3.**    For purposes of this Article 10 and Section 2.3, whenever it is necessary to allocate the liability for Taxes for a Straddle Period, the determination of the Taxes of the Business for the portion of the Straddle Period ending at the end of the Closing Date (the "**Pre-Closing Portion**") and the portion of the Straddle Period beginning after the Closing Date (the "**Post-Closing Portion**") will be determined by assuming that the Straddle Period consisted of two taxable years or periods, one of which ended at the close of business on the Closing Date and the other of which began at the beginning of the day after the Closing Date, and items of income, gain, deduction, loss or credit related to the Acquired Assets and the Business for the Straddle Period will be allocated between such two (2) taxable years or periods on a "closing of the books

basis" by assuming that the books associated with the Business were closed at the end of the Closing Date; provided, however, that all real property taxes, personal property taxes, ad valorem obligations and similar taxes imposed on a periodic basis, in each case levied with respect to the Acquired Assets (other than Taxes resulting from the transactions described herein as provided for in Section 10.1) for a Straddle Period shall be apportioned between Seller and Purchaser as of the Closing Date based on the number of days of such taxable period up to and including the Closing Date and the number of days of such taxable period following the Closing Date. Seller shall be liable for the proportionate amount of such taxes that is attributable to the period up to and including the Closing Date; Purchaser shall be liable for the proportionate amount of such taxes that is attributable to the period following the Closing Date.

**10.4.** Seller and Purchaser will cooperate in connection with: (i) the preparation of filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets. Such cooperation includes a reasonable amount of direct access to accounting, engineering and contracting personnel, subject to availability, which shall not be unreasonably restricted, and advance notice to Purchaser's chief financial officer.

**10.5.** Seller shall not, and shall not cause the Business to make, revoke or amend any tax election, execute any waiver of restrictions or tax assessments or collections or extensions if there will be any impact on Purchaser as a result of doing so.

## 11.    **BANKRUPTCY MATTERS:**

**11.1.    Court Approval.** It is a material inducement to Purchaser to be able to acquire the Acquired Assets pursuant to the provisions of Sections 363 and 365 of the Bankruptcy Code, including in particular free and clear of Liens pursuant to Section 363(f) of the Bankruptcy Code. Therefore, notwithstanding anything in this Agreement to the contrary, any and all obligations of Purchaser under this Agreement are subject to the entry of the Sale Approval Order approving this Agreement and the transaction specified herein, and ordering, finding or concluding that, among other things:  (a) notice of the Sale Motion and the transactions contemplated hereunder was proper and sufficient to all parties entitled to such notice; (b) the sale of the Acquired Assets to Purchaser is approved pursuant to Section 363(b) of the Bankruptcy Code; (c) the assumption and assignment of the Assumed Contracts to the Purchaser is approved pursuant to Section 365 of the Bankruptcy Code and that the Cure Amounts to be paid by the Seller on the Closing Date to the non-debtor parties to the Assumed Contracts satisfy all monetary obligations and defaults of the Seller to those non-debtor third parties required to be cured pursuant to Section 365(b)(1) of the Bankruptcy Code; (d) the sale of the Acquired Assets to the Purchaser pursuant to this Agreement will be free and clear of all known and unknown Liens pursuant to Section 363(f) of the Bankruptcy Code; (e) Purchaser is not a continuation of Seller or its estate, there is no continuity of enterprise between Seller and Purchaser, Purchaser is not a successor to Seller or its estate and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of Purchaser and Seller or its estate; (f) Purchaser has acted in good faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code; (g) the transactions contemplated hereunder are not avoidable pursuant to Section 363(n) of the Bankruptcy Code; (h) Purchaser is not assuming or acquiring any of Seller's liabilities except as specifically provided in this Agreement; and (i) the Sale Approval Order shall be effective immediately notwithstanding the provisions of Bankruptcy Rules 6004(g) and 6006(d). Seller shall be responsible for making all appropriate filings relating thereto with the Bankruptcy Court, which filings shall be submitted to the Purchaser as far prior to their filing with the

PA\10464639.4
35116501-1001

Bankruptcy Court as reasonably practicable for the Purchaser's prior review and, solely with respect to the Sale Approval Order, approval, which shall not be unreasonably withheld or delayed.  Should Seller not have received Purchaser's approval of the Sale Approval Order prior to Seller's deadline for filing with the Bankruptcy Court, Seller may file such documents with the Bankruptcy Court and may submit a revised Bidding Procedures Order and/or Sale Approval Order reflecting agreed modifications thereto, if any, to the Bankruptcy Court prior to the hearing thereon.

**11.2.**    **Sale Hearing.**  The hearing on the approval of the Sale to the Purchaser (**"Sale Hearing"**) will be held before the Honorable Robert Drain on July 19, 2006 at 10:00 a.m. (New York City time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.  At the Sale Hearing, Seller shall seek approval of Purchaser's Qualified Bid, as well as the second highest or best Qualified Bid(s) (the **"Alternate Bid(s)"** and such bidder(s), the **"Alternate Bidder(s)"**).  Seller's presentation to the Bankruptcy Court of the Purchaser's Qualified Bid and Alternate Bid(s) shall not constitute Seller's acceptance of Purchaser's Qualified Bid or any Alternate Bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Purchaser, if the Purchaser fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Seller or Purchaser; or (ii) a breach or failure to perform on the part of Purchaser, then the Alternate Bid(s) shall be deemed to be the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction and Seller shall effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

## 12.    INDEMNIFICATION:

**12.1.**    **Seller's Agreement to Indemnify.**  If the Closing occurs and Purchaser makes a written claim for indemnification against Seller in accordance with the procedures set forth in this Article 12 prior to the Expiration Date, then Seller agrees to indemnify and hold harmless Purchaser subject to the terms of this Article 12, from and after the Closing, from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, the **"Purchaser Damages"**) incurred by Purchaser as a result of or arising out of: (i) those Retained Liabilities and those Excluded Assets that are retained at Closing by Seller; (ii) a breach of any representation or warranty in this Agreement; (iii) any covenant to be performed on or before Closing; or (iv) a breach of any agreement or covenant of Seller in this Agreement to be performed after Closing; and the sole source to satisfy any remedy with respect to (i) and (ii) above shall be the Escrow Amount, and the limit of Seller's obligation with respect to clauses (i) and (ii) above, shall be $975,000.00.  Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date.  As soon as possible after the Expiration Date, the Escrow Amount, including all cash, interest accrued thereon and other property retained by the Escrow Agent, will be delivered to Seller by the Escrow Agent, less an amount necessary to satisfy the amount of all then outstanding claims by Purchaser for Purchaser Damages in accordance with the terms of the Escrow Agreement.

**12.2.**    **Purchaser's Agreement to Indemnify.**  If the Closing occurs and Seller makes a written claim for indemnification against Purchaser in accordance with the procedures set forth in this Article 12, then, from and after the Closing, Purchaser shall indemnify and hold harmless Seller from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys'

PA\10464639.4
35116501-1001

fees and expenses) (collectively, the **"Seller Damages"**) incurred by Seller as a result of or arising out of: (i) the Assumed Liabilities; (ii) a breach of any representation or warranty of Purchaser contained herein; (iii) any covenant to be performed on or before Closing; (iv) a breach of any agreement or covenant of Purchaser contained herein to be performed after Closing; or (v) the use, operation or ownership of the Business or any of the Acquired Assets after the Closing unless such matters are of a nature also subject to indemnification pursuant to Section 12.1. The maximum amount of Purchaser's obligations under clauses (i), (ii) and (v) above shall be $975,000.00. Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date.

**12.3.**  **Limitations on Agreements to Indemnify.**  The obligations of either Party to indemnify the other pursuant to this Article 12 are subject to the following limitations:

**12.3.1.** Each Party agrees that, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by the other Party of any representation, warranty, agreement or covenant contained in this Agreement, and that there shall be no other remedy for any breach by a party in respect of any claim for monetary damages arising out of or under this Agreement;

**12.3.2.** In calculating amounts payable to an indemnified party, the amount of any indemnified Purchaser Damages or Seller Damages, as the case may be, shall be determined without duplication of any other damages for which a claim has been made or could be made under any other representation, warranty, covenant or agreement included herein;

**12.3.3.** Any written notice delivered by an indemnified party to an indemnifying party seeking indemnification pursuant to this Agreement shall set forth, with as much specificity as is reasonably practicable, the basis of the claim, the sections of this Agreement which form the basis for the claim, and, to the extent reasonably practicable, a reasonable estimate of the amount of the Purchaser Damages or Seller Damages, as the case may be, that have been or may be sustained by such indemnified party; and

**12.3.4.** Notwithstanding any other provision of this Agreement, in no event shall an indemnified party be entitled to indemnification pursuant to this Agreement to the extent any Purchaser Damages or Seller Damages, as the case may be, were attributable solely to the indemnified party's own gross negligence or willful misconduct.

**12.3.5.** No indemnifying party shall be liable to an indemnified party until the amount of all indemnifiable damages of such indemnified party in the aggregate exceeds USD $20,000.00, after which point the indemnifying party will be obligated to the indemnified party for all damages (and not just the amount in excess of such amount).

To the extent an indemnifying party makes any indemnification payment pursuant this Article 12 for which the indemnified party has a right to recover against a third party (including an insurance company), the indemnifying party shall be subrogated to the right of the indemnified party to seek and obtain recovery from such third party.

**12.4.**  **Third Party Indemnification Procedures.**  The obligations of any indemnifying party to indemnify any indemnified party under Sections 12.1 or 12.2 with respect to Purchaser Damages or Seller Damages, as the case may be, resulting from the assertion of liability by third

parties (including Governmental Entities) (an **"Indemnification Claim"**), shall be subject to the following terms and conditions:

**12.4.1.** Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of Section 12.3.3), and, to the extent such matter involves a third party claim, the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party. Failure to give prompt written notice of a Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 12, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice. The indemnified party, at the indemnifying party's expense, shall, and shall cause its employees and representatives to, reasonably cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within thirty (30) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party.

**12.4.2.** Anything in this Section 12.4 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne exclusively by the indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

## 13.   MISCELLANEOUS:

**13.1.  Bulk Sales Laws.**   Seller and Purchaser hereby waive compliance by Seller with the provisions of the bulk sales Law of any state or foreign jurisdiction.

**13.2.  Notices.**   All notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first business day after sent by reputable overnight carrier, or on the third business day after sent by registered or certified first class mail (with receipt confirmed), to the following:

|  |  |
|---|---|
| **If to Seller:** | **MOBILEARIA, INC.** |
| | 800 West El Camino Real, Suite 240 |
| | Mountain View, California  94040 |
| | Attn:  President – Richard Lind |
| | Fax No.:  650-937-1078 |
| **With a copy to:** | **DELPHI CORPORATION** |
| | 5725 Delphi Drive |

42

Troy, Michigan 48098
Attn:  Assistant General Counsel - Commercial & Transactional
Fax No.:  248-813-2491

**With a copy to:  DLA Piper**
2000 University Avenue
East Palo Alto, California  94303
Attn:  Jim Koshland
Fax No.:  650-833-2001

**If to Purchaser:  @ROAD, INC.**
47071 Bayside Parkway
Fremont, California  94538
Attn:  James D. Fay
Tel No.:  510-668-1638
Fax No.:  510-687-2040

**With a copy to:  HELLER EHRMAN LLP**
7 Times Square
New York, New York  10036
Attn:  Carren Shulman, Esq.
Fax No.:  212-763-7600

provided, however, if either Party shall have designated a different addressee by notice, then to the last addressee so designated.

**13.3.    Assignment.**  This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties and their Affiliates, but no rights, obligations, duties or liabilities of either Party may be assigned without the prior written consent of the other, which shall not be unreasonably withheld.

**13.4.    Entire Agreement.**  This Agreement, together with the Ancillary Agreements, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein.    This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5.    Waiver.**  Any waiver by Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement. At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein. Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6.    Severability.**  Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or

43

enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7.    Amendment.**  This Agreement may only be amended only in writing by duly authorized representatives or officers of the Parties.

**13.8.    Expenses.**  Except as set forth in any Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9.    Third Parties.**  Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10.  Headings.**  The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11.  Counterparts.**  More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.

**13.12.  Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13.  Public Announcements.**  Seller and Purchaser will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation.

**13.14.  Sales or Transfer Taxes.**  All sales taxes, documentary and stamp taxes, transfer taxes, use taxes, gross receipts taxes, excise taxes, value-added gross receipt taxes or similar charges and all charges for filing and recording documents in connection with the transfer of the Acquired Assets (including intellectual property filing and recording fees) shall be paid by Purchaser.

**13.15.  Venue and Retention of Jurisdiction.**  All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

**13.16.  Risk of Loss.**  Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Seller.

**13.17.  Enforcement of Agreement.**  The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance

PA\10464639.4
35116501-1001

with its specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

13.18. **Dispute Resolution.** Seller and Purchaser will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Ancillary Agreement by good faith negotiations by senior management of each party. If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute. Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response. The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties. Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored promptly. All negotiations pursuant to this Section 13.18 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.15 above.

13.19. **No Right of Setoff.** Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

13.20. **Limitation on Damages.** NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASER OR SELLER BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

**[Remainder of Page Intentionally Left Blank]**

PA\10464639.4
35116501-1001

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed by their duly authorized officers.

MOBILEARIA, INC.

By: _____

Print Name: _____

Title: _____

@ROAD, INC.

By: _____

Print Name: _____

Title: _____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers.

**MOBILEARIA, INC.**

By: _____
Print Name:
Title:

**@ROAD, INC.**

By: _____
Print Name:  Michael Martino
Title:  CFO

# EXHIBIT E

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | | | | |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |

# EXHIBIT F

**Hearing Date: July 19, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2689

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
     In re                        :    Chapter 11
                                 :
DELPHI CORPORATION et al.,     :    Case No. 05-44481 (RDD)
                               :
                 Debtors.    :    (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' SUPPLEMENTAL OBJECTION TO MOTION
## OF H.E. SERVICES COMPANY AND ROBERT BACKIE
## FOR RELIEF FROM AUTOMATIC STAY

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this supplemental objection (the

"Supplemental Objection") to the motion of H.E. Services Company and Robert Backie,

Majority Shareholder (collectively, "H.E. Services"), for relief from the automatic stay,

dated March 6, 2006 (the "Motion") (Docket No. 2705).  In support of the Supplemental

Objection, the Debtors respectfully represent as follows:

<u>Preliminary Statement</u>

1.      H.E Services' commercial litigation suit involves a soured business

relationship between two commercial entities, Delphi and H.E. Services, on account of

which H.E. Services filed a prepetition complaint alleging, inter alia, breach of contract,

promissory estoppel, misrepresentation, and civil rights violations.  To continue

prosecuting its claim in the District Court of the Eastern District of Michigan, H.E.

Services filed its Motion.  At the Debtors' June 19, 2006 Omnibus Hearing (the

"Omnibus Hearing"), this Court stated "that there's a reasonable likelihood that the

[D]ebtors will prevail on the [M]otion." June 19, 2006 Tr. at 45:18-19[1].  Moreover, the

Court "originally believed, based on [a] review of the papers that … it did not appear that

such an initial showing [of cause] had been made."  June 19, 2006 Tr. at 44:20-23.

Nonetheless, this Court treated the Omnibus Hearing as a preliminary hearing on the

Motion, and adjourned the Motion to the July 19, 2006 Omnibus Hearing date, because

H.E. Services argued for the first time at the Omnibus Hearing that the discrimination

aspect of its commercial litigation suit amounted to a personal injury tort claim under 28

---

[1]     A copy of this excerpt from the June 19, 2006 transcript is attached hereto as <u>Exhibit A</u>.

2

U.S.C. § 157(b)(5)[2] and thus, H.E. Services argued that the Bankruptcy Court did not

have jurisdiction to adjudicate this matter. June 19, 2006 Tr. at 37:8-15, 19-24. Due to

of H.E. Services' new argument, this Court refrained from making a final determination

on the matter and stated that this new argument raised the spectre that the fourth <u>Sonnax</u>

factor – whether a specialized tribunal with the necessary expertise has been established

to hear the cause of action – might be applicable. The Court stated that the "rule may not

be dispositive given the status of the [D]ebtors' case."[3] June 19, 2006 Tr. at 45:18-22;

45:23-25, and 46:1-7.

       2.      Nevertheless, a careful review of the law in this jurisdiction shows

that H.E. Services cannot satisfy the fourth <u>Sonnax</u> factor. First, courts in the Southern

District of New York have stated that a discrimination claim is <u>not</u> a personal injury tort

under 28 U.S.C. § 157(b)(5), and thus, that the Bankruptcy Court is not precluded from

hearing the case. Moreover, the cases that H.E. Services cites are factually

distinguishable from this case. This matter is related to commercial litigation addressing

the business relationship between two sophisticated entities, Delphi and H.E. Services.

The discrimination allegations merely arise out of the business dealings between H.E.

Services and Delphi. In contrast, the discrimination cases that H.E. Services cites are

personal discrimination cases, such as discrimination in an employer/employee

relationship. Thus, for the reasons discussed in the Debtors' first objection to the Motion,

---

[2]    Pursuant to 28 U.S.C. § 157(b)(5), "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

[3]    The Court determined that although the District Court is not particularly a specialized tribunal, the District Court has jurisdiction to the exclusion of the Bankruptcy Court with regard to trials of matters under 28 U.S.C. § 157(b)(5).

dated June 9, 2006 (Docket No. 4108) ("First Objection"), this Court should deny H.E.

Services' Motion to modify the automatic stay.  Notwithstanding H.E. Services'

arguments at the Omnibus Hearing, H.E. Services has not shown adequate cause for relief

from the automatic stay to continue its commercial litigation against Delphi.

Argument

3.      As the Debtors addressed in their First Objection to the Motion,

section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the

automatic stay "for cause."  The Debtors analyzed the Sonnax factors[4] relative to H.E.

Services' Motion and concluded that H.E Services had not shown any cause to lift the

automatic stay.  Because this Court in the Omnibus Hearing found "that there's a

reasonable likelihood that the [D]ebtors will prevail on the [M]otion" and that it appeared

that the only Sonnax factor that may be in H.E. Services' favor was whether a specialized

tribunal with the necessary expertise has been established to hear the cause of action

(June 19, 2006 Tr. at 45:18-22; 45:23-25; and 46:1-7), the Debtors will limit their

discussion in this Supplemental Objection to the issue of discrimination as it relates to the

---

[4]     The Sonnax factors are: (1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case; (3) whether the other
proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary
expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed
full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether
litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment
claim arising from the other action is subject to equitable subordination; (9) whether movant's success
in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of
judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties
are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of
harms.  Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d
Cir. 1990)

In their initial Objection, the Debtors acknowledged that factors (2), (5), (7), (11), and (12) were
applicable to the Motion.

4

fourth <u>Sonnax</u> factor and will rely on their First Objection to address the other relevant

<u>Sonnax</u> factors.

4.      H.E. Services' commercial litigation suit is <u>not</u> a personal injury

tort under 28 U.S.C 157(b)(5).  Accordingly, H.E. Services has failed to show any cause

to lift the automatic stay.  As noted above, H.E. Services argued for the first time at the

Omnibus Hearing that H.E. Services' commercial litigation claim (which includes

allegations of civil rights violations, promissory estoppel, misrepresentation, and breach

of contract) cannot be heard by this Court because H.E. Services' allegations of

discrimination amount to a personal injury tort under 28 U.S.C. § 157(b)(5).  June 19,

2006 Tr. at 37:8-15.  Therefore, H.E. Services argued that this Court is precluded from

hearing its underlying lawsuit because a personal injury tort is not a core proceeding

under 28 U.S.C. § 157(b)(5) and thus, the automatic stay should be lifted in order to

permit the plaintiff to prosecute its action immediately in the current forum.  June 19,

2006 Tr. at 38:6-11.

5.      Although H.E. Services acknowledged that courts are in

disagreement regarding whether an employment discrimination suit is a personal injury

tort, counsel inexplicably cited to an opinion in the District of Connecticut in support of

his clients' position.  The law in this district is contrary to H.E. Services' position –  a

discrimination claim is <u>not</u> considered a personal injury tort under 28 U.S.C. § 157(b)(5).

<u>See</u> <u>Vinci v. Town of Carmel</u> (In re Vinci), 108 B.R. 439, 442 (Bankr. S.D.N.Y 1989);

<u>Perino v. Cohen</u> (In re Cohen), 107 B.R. 453 (Bankr. S.D.N.Y. 1989), <u>overruled on other</u>

<u>grounds</u>, <u>In re United Mo. Bank, N.A.</u>, 901 F.2d 1449 (8th Cir. 1990).  In <u>Perino v.</u>

<u>Cohen</u>, the blind plaintiff claimed that the debtor, a restaurant, discriminated against him

5

when the debtor refused to serve him.  107 B.R. at 454.  The court found that the

plaintiff's claim was a "tort claim for a violation of a statutory duty, which entitled it to a

jury trial," but it was "not a claim for a 'personal injury tort' in the traditional, plain-

meaning sense of those words, such as a slip and fall or a psychiatric impairment beyond

mere shame and humiliation" and accordingly did not fall within the carve-out set forth in

28 U.S.C. § 157(b)(5).  Id. at 455.

        6.      The Perino v. Cohen court examined the plain language and

legislative history of the 28 U.S.C. § 157(b) to determine that a discrimination claim was

not a personal injury tort.  Vinci v. Town of Carmel (In re Vinci), 108 B.R. at 455 (citing

Escondido Mut. Water Co. v. LaJolla Indians, 466 U.S. 765, 772 (1984), quoting North

Dakota v. United States, 460 U.S. 300 (1983)("'[a]bsent a clearly expressed legislative

intention to the contrary, [statutory] language must ordinarily be regarded as

conclusive.'")).  Moreover, "there is no legislative history that would bring this plaintiff's

claim for a tort without trauma within the statutory exception for a personal injury tort.

On the contrary, the legislative history indicates that Congress intended [28 U.S.C. §

157(b) ] exception for a 'narrow range' of claims."  Perino v. Cohen, 107 B.R. at 455

(citing U.S. Code Cong. & Admin. News, 1984, at 576 et seq.; id., Statement of Congr.

Kastenmeier at 580.).

        7.      Similarly, in Vinci, the plaintiffs, an individual debtor and his

debtor corporation, alleged that their civil rights were violated.  108 B.R. at 440.  The

court examined whether the bankruptcy court was barred from trying the debtors' claim

under 28 U.S.C. § 157(b)(5) because of the allegations of civil rights violations.  Id.  The

Vinci court found that there was a disagreement between the jurisdictions, but that it was

6

bound by <u>Perino v. Cohen</u>, and therefore, found that a "tort claim for a statutory violation

of a New York State anti-discrimination law does not constitute a 'personal injury tort'

within the restrictive 28 U.S.C. § 157(b)(5) because a claim for a tort without trauma or

bodily injury is not within the statutory exception for a personal injury tort." <u>Id</u>. at 442

(citing <u>Perino v. Cohen</u>, 107 B.R. at 453) (distinguishing a personal injury tort under 28

U.S.C. § 157(b)(5) from a personal injury <u>action</u> under 42 U.S.C. § 1983).

        8.        Second, the cases that counsel for H.E. Services cited to at the

Omnibus Hearing for the proposition that H.E. Services' suit was a personal injury tort

under 28 U.S.C. § 157(b)(5) can be distinguished.  The District of Connecticut cases

merely hold that discrimination in an employer/employee relationship is a personal injury

tort under 28 U.S.C. § 157(b)(5).  For example, in one case H.E. Services cited, <u>Stranz v.</u>

<u>Ice Cream Liquidation, Inc.</u> (In re Ice Cream Liquidation, Inc.), 281 B.R. 154 (Bankr. D.

Conn. 2002), former employees alleged sexual harassment by the debtor.  Although the

court in <u>Stranz</u> held that sexual harassment was a personal injury tort under 28 U.S.C.

157(b), it rejected a broader reading of 28 U.S.C. 157(b)(5) because to do so would

present some risk "that financial, business or property tort claims could be withdrawn

from the bankruptcy system."  <u>Id</u>. at 161-62.  Therefore,

> in cases where it appears that a claim might be a 'personal injury tort
> claim' under the 'broader view' but has earmarks of financial, business or
> property tort claim, or a contract claim, the court reserves the right to
> solve the 'personal injury tort claim' issue by (among other things) a more
> searching analysis of the complaint.

<u>Id</u>. at 161.  Similarly, the second case H.E. Services cited to during the Omnibus Hearing,

<u>Goldschmidt v. Erickson</u> (In re Erickson), also involves discrimination in an

employer/employee relationship. 330 B.R. 346, 348 (Bankr. D. Conn. 2005).  In

7

Goldschmidt v. Erickson, an employee alleged that her employer discriminated against her on the basis of her pregnancy.  Id.

   9.  Therefore, even after examining the Stranz and Goldschmidt cases, this Court should deny the relief requested in the Motion.  Stranz and Goldschmidt are cases in which individuals sought redress from alleged discrimination by their employers, and Stranz explicitly carved out "financial business or property tort claim[s]."   The H.E. Services' lawsuit not only has the "earmarks" of a financial, business or property tort, or a contract claim, it falls squarely within the exception that the court noted in Stranz.  The H.E. Services' litigation specifically focuses on the business dealings between H.E. Services and Delphi and Delphi's alleged wrongdoing arising out of those business transaction.  Therefore, H.E. Services' claims, even if valid, do not constitute a personal injury tort.  This Court is not precluded from hearing the underlying suit under 28 U.S.C. § 157(b)(5).

Conclusion

10.     H.E. Services fails to satisfy the fourth <u>Sonnax</u> factor.  In contrast

to movant's argument, the commercial litigation between Delphi and H.E. Services is not

a personal injury tort, and therefore, this Court is not precluded under 28 U.S.C.

§157(b)(5) from hearing the case.  For the reasons stated in the Debtors' First Objection,

H.E. Services fails to meet the burden of establishing that sufficient cause exists to lift the

automatic stay.  For the reasons set forth above, the Motion should be denied.

Notice

11.     Notice of this Supplemental Objection has been provided in

accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105

And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates And Certain Notice, Case Management, And Administrative Procedures, entered

by this Court on May 19, 2006 (Docket No. 3824).  In light of the nature of the relief

requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

12.     Because the legal points and authorities upon which this Objection

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

9

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       July 12, 2006

      SKADDEN, ARPS, SLATE, MEAGHER
       & FLOM LLP

By: /s/ John Wm. Butler, Jr
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

  - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

10

Exhibit A                                                          1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481AM

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DELPHI CORPORATION, et al.,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                   United States Bankruptcy Court

15                   One Bowling Green

16                   New York, New York

17

18                   June 19, 2006

19                   10:10 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

36

1          MR. BUTLER:  Your Honor, the next matter up is, going

2    back to the agenda order, is matter number 13.  This is the H.E

3    Services Company lift-stay motion filed at Docket No. 2705 with

4    related pleadings as indicated on the amended agenda.

5          This involves a lift-stay matter to deal with pending

6    actions arising out of a minority supplier relationship.  And I

7    believe Counsel is here to present the motion.

8          MR. MASTROMARCO:  Good morning, Your Honor.  Victor

9    Mastromarco on behalf of the claimant.  This is Docket No. 2705

10   originally filed.  Our lift-stay motion as it relates to a

11   filing, a complaint that was filed on February 16th, 2005

12   before  the  United  States  District  Court  for  the  Eastern

13   District of Michigan, northern division.

14         The claims involve a number of different claims.

15   One, in particular, that I want to emphasize is the civil

16   rights violations pursuant to 19 -- Section 1981.  There are

17   also claims for promissory estoppel and misrepresentation and

18   breach of contract.  Originally, after the complaint was filed

19   in February, Delphi responded -- the debtor responded with a

20   motion to dismiss which resulted in an amended complaint being

21   filed which we have provided to the Court.  When Delphi failed

22   to answer the amended complaint, we applied for a default

23   before the judge and Delphi then later responded with another

24   motion to dismiss.  Those actions were pending.  They had been

25   set for hearing for November 2 at the same time as a scheduling

37

1    conference had been set and as a result, the stay was entered

2    in October so those matters did not go forward.

3                THE COURT:  Was that first motion to dismiss heard?

4    Or did the claimant just amend the complaint?

5                MR. MASTROMARCO:  It was heard and it resulted in an

6    amended complaint being filed.

7                THE COURT:  Okay.

8                MR. MASTROMARCO:  The -- I wanted to indicate that

9    because the complaint is premised in part of 42 USC 1981 which

10   states a discrimination claim on behalf of not only Mr. Backie,

11   who is a minority in his individual capacity, but also on

12   behalf of H.E. Services, which is a minority company, and both

13   those claims the Courts have held in the past in this district

14   that discrimination claims should be handled akin to personal

15   injury claims and thus our subject to Section 157(b)(5).

16                In the case that I'd like to cite to the Court,

17   Erickson v. Erickson, at 330 BR 346, the Court -- and that's a

18   September 15, 2005 decision -- the Court states on page 349,

19   "pursuant to 28 USC 15" -- I'm sorry -- "157(b)(2)(o), a

20   bankruptcy court may not hear and determine a personal injury

21   tort claim."  Citing to the footnote, 157(b)(2)(o) provides in

22   relevant part that a bankruptcy court may hear and determine

23   proceedings affecting the adjustment of the debtor/creditor

24   relationship except personal injury tort claims.  157(b)(5)

25   provides "the district court shall order that the personal

1    injury tort and wrongful death claims shall be tried in the

2    district court in which the bankruptcy case is pending or in

3    the district court in the district in which the claim arose as

4    determined by the district court in which the bankruptcy case

5    is pending."

6              Although there are court rulings to the contrary, the

7    Court in Erickson agreed that -- with Judge Weil that "claims

8    alleging that a debtor illegally discriminated an employment on

9    the basis of race, creed, disability or sex are personal injury

10   tort claims."  Citing the Strands v. Ice Cream Liquidation,

11   Inc. case at 281 BR 154 at 161.

12             The Court goes on to indicate --

13             THE COURT:  None of this is briefed in your papers,

14   right?

15             MR. MASTROMARCO:  No, we did not cite these cases,

16   Judge.

17             THE COURT:  Or the issue, generally, right?

18             MR. MASTROMARCO:  Well, you're right.  We'd ask the

19   Court to take judicial notice of Section 157(b)(5).

20             THE COURT:  Okay.

21             MR. MASTROMARCO:  We would indicate that the Erickson

22   case also citing In re New York Medical Group, P.C. --

23             THE COURT:  I'll read it.  You don't have -- this is

24   not productive.  I'll read the case.

25             MR. MASTROMARCO:  All right.  The upshot is this.  If

39

1    we apply the Sonnax Industry standards to a discrimination

2    case, because this Court cannot liquidate the discrimination

3    claims, the Court in Erickson comes to the conclusion that it's

4    readily apparent that the movant is entitled to relief from the

5    stay so she may liquidate the claim.

6             Here is the same situation.  We must liquidate that

7    claim or those claims in order to place a value for the Court

8    then to determine how that would fit in with the bankruptcy

9    situation.  That's all we're asking the Court to do, is to

10   allow us to go back to the U.S. District Court, allow us to

11   liquidate that claim there and then -- and those other claims

12   there since the judicial economy would suggest that all the

13   claims should be allowed and grant an order accordingly.

14             THE COURT:  Okay.

15             MR. BUTLER:  Your Honor, just -- seeing as Counsel

16   dealt with the history, let me just briefly address the history

17   of this case.  The complaint was originally filed out of a

18   minority  supplier  relationship  alleging  that  the  supplier

19   didn't get the contracts it would have liked to have gotten

20   from Delphi.  A complaint was filed on February 16th of '05.

21   It was dismissed on May 19th of 2005.  There was an amended

22   complaint filed on June 9th of 2005.  The answer would have

23   been due on or about July 9th.  The answer was filed, in fact,

24   on July 11th.  Counsel tried to get a default judgment.  The

25   clerk would not enter it because there was a power outage in

40

1    Saginaw, Michigan during that period of time and there was some

2    issue about the ability to actually prepare or file anything

3    over a couple day period.  And so the Court deemed the filing

4    on July 11th timely, although Counsel has filed a motion to

5    dismiss which is pending -- excuse me, a motion for default

6    judgment, which is pending before that Court.

7            On August 24th, 2005, Delphi filed its second motion

8    to dismiss and we concur that there was a scheduling conference

9    set for November 2nd of 2005 which did not take place.

10   Instead, the federal judge in that case administratively closed

11   the litigation on October 24th, 2005 following the commencement

12   of Chapter 11 cases on October 8th.

13           Now, that's the sum and substance of the activity in

14   this litigation which is in its infancy.  And the debtors, you

15   hear, is whether counsel chooses to color the complaint a

16   discrimination complaint or a breach of contract complaint, as

17   they do in their complaint, to where they talk about breach of

18   contract and other theories.  The fact is that we think under

19   Sonnax, and we've advised counsel of this -- he knows that we

20   don't have insurance to cover the liability associated with

21   this particular claim -- that we're not prepared for trial.

22   This is involved in its infancy.  There's been nothing in this

23   case beyond the second motion to dismiss to be filed.  There's

24   been no discovery of any kind.  And we believe, under Sonnax,

25   Your Honor, that the balance of the harms weighs very much in

41

1       the favor of denying the H.E. Services motion at this point in

2       the debtors' Chapter 11 case.

3               I point out, Your Honor, that H.E. Services filed a

4       supplement to its motion at Docket 3263 where it said that this

5       motion was very similar to the Automotive Technologies

6       International where you granted some relief at Docket No. 3200.

7       The facts are those cases are very different.  The ATI cases

8       had been filed years earlier and the ATI cases were actually on

9       appeal, the issues had been fully briefed in the appellate

10      courts and the parties were simply waiting oral argument.  A

11      very different case than a complaint filed that had been

12      dismissed and then refiled and was waiting a second motion for

13      dismissal.

14              Your Honor, we believe that, as I said and as our

15      responsive papers said, that under the Sonnax factors, we think

16      they clearly weigh in favor denying the motion at this time.

17      Thank you.

18              THE COURT:  Do you have any view on the 28 USC

19      157(b)(5) point?

20              MR. BUTLER:  Your Honor, I hadn't reviewed the matter

21      because -- you're right, it hadn't been raised or briefed.

22      But, even if it were so, I don't think that with respect to

23      Sonnax, says that gives anyone -- I mean, the carte blanche to

24      come in and get those stay lifts in every case.  I mean, if

25      that were the law, then anyone who had any kind of a tort claim

42

1    here would always win their motion to lift-stay.  And that's

2    not the law in this district.  The fact is Sonnax still gets

3    applied against tort claims and against other claims that may

4    not ultimately be liquidated by Your Honor.  The fact is that

5    under Sonnax, this estate, at this moment in time, when we are

6    involved in some of the most sensitive issues in the case in

7    terms of the ultimate transformation, shouldn't have to be --

8    should have the protection of the automatic stay and not have

9    to deal with claims issues of this nature at this time.  And

10   that's why I think that because there's no insurance here,

11   because we would have to treat this as a full-blown hundred

12   million dollar litigation, as Counsel suggests, and have to

13   take the time to resources, both externally and internally, to

14   defend it, under Sonnax, at this point in our case, it would be

15   inappropriate to lift the stay to permit that.

16          And I don't think the 157 issue has -- while it may

17   have some bearing on it ultimately, at some future date, I

18   don't think it really comes into the calculus, Your Honor, in

19   weighing the harms and balancing the harms in terms of the

20   Sonnax factors for this hearing today.

21          THE COURT:  Okay.

22          MR. BUTLER:  Thank you, Your Honor.

23          MR. MASTROMARCO:  Briefly, Your Honor, may I respond?

24          THE COURT:  Sure.

25          MR. MASTROMARCO:  Not only does it -- is it an

43

1    important factor in the Sonnax analysis, but the cases that I

2    cited suggest that it's probably the only factor that the Court

3    can consider because of the fact that all these arguments that

4    are being made that we don't want to deal with it at this time,

5    we don't want to handle this at this time, this is going to

6    upset these other things, those claims have to be liquidated.

7    So, we have to deal with it now because we have to know, we

8    have to be able to put those claims back to the District Court

9    and I'd cite again to Erickson where they say "proof that the

10   debtor intentionally and maliciously injured the movant by

11   illegally discriminating against her necessitates proving the

12   underlying  discrimination  allegations  which  the  bankruptcy

13   court lacks jurisdiction to hear."  And that's Black Letter Law

14   in New York, Second Circuit.

15          So, I would ask that the Court allow us to go back to

16   the -- and when we look at the factors, we're saying is this

17   Court better equipped to handle it than the U.S. District Court

18   judge as it relates to these specific issues?  Yes, I think

19   that the U.S. District Court judge is a good form for this

20   matter to be tried.  He's familiar with the issues, he's dealt

21   with motions to dismiss -- and I'm not going to go and argue

22   with Mr. Burke today about what occurred in the lower court --

23   or in the district court, I should say -- but the fact is that

24   they have local counsel there.  They have them assigned not

25   only to the H.E. Services case, but they got the same counsel

44

1    assigned on the Cindy Palmer case, which we're going to argue

2    next.  And this is not going to be taking away from the

3    debtors' efforts in this case because they -- this Court has to

4    grapple with that liquidation issue.

5            And so, we would ask that the Court allow the

6    district court judge or -- lift the stay so that the district

7    court judge can hear these claims.

8            THE COURT:  Okay.  All right.  I have in front of me

9    a motion by H.E. Services for relief from the automatic stay to

10   pursue litigation in Michigan District Court that was pending

11   before the commencement of the debtors' Chapter 11 cases.

12           It's averred by the debtors, and I don't think

13   disputed by the movant, that there either is no insurance

14   coverage for this litigation or there's an issue as to whether

15   there is insurance covering the claim -- is obviously an

16   unsecured claim, as well, given that fact and given the Second

17   Circuit's case, In Re Sonnax Industries, 907 F2d. 1280 (2nd

18   Cir. 1990), which says that a movant seeking a lift from the

19   automatic stay must make an initial showing of cause.

20           I had originally believed, based on my review of the

21   papers, that I did not need to get into the various Sonnax

22   factors given that it did not appear that such an initial

23   showing had been made.  That is because, again, it's recognized

24   by the Courts in this district that relief from the automatic

25   stay to pursue the liquidation of an unsecured claim is

45

1    unusual, and extraordinary circumstances normally need to be

2    shown, such as the fact that there is full insurance coverage

3    or the claim is being liquidated really for the purpose of

4    going against a third party or there's a special tribunal in

5    which it is being heard.  It was not stated in the motion

6    papers, but it was stated at oral argument, that

7    notwithstanding in plain language of 28 USC Section 157(a)(5)

8    which deals with personal injury, tort and wrongful death

9    claims and was obtained by the plaintiffs' bar in light of the

10   mass tort asbestosis litigation that affected bankruptcy courts

11   and cases before the enactment of that provision that that

12   provision applies to at least one of the claims asserted in

13   this litigation which is an antidiscrimination civil rights

14   violation claim.

15           I will need to review the case law on that issue.

16   However, applying the Sonnax factors and giving the movant the

17   benefit of the doubt on that issue based on the representation

18   to the Court, I believe and find that there's a reasonable

19   likelihood that the debtor will prevail on the motion and,

20   therefore, I'm going to treat this as the preliminary hearing

21   on the motion and we'll adjourn to the next omnibus date under

22   362(e).

23           In looking at the Sonnax factors, it appears to me

24   that the only one of them that may apply here in the movant's

25   favor is the factor pertaining to whether a specialized

46

1    tribunal had been established to hear the cause of action.

2    And, of course, it's asserted that the District Court is not

3    particularly a specialized tribunal but that it has

4    jurisdiction to the exclusion of the bankruptcy court with

5    regard to the trial of the matter under 28 USA Section

6    157(a)(5).  On the other hand, that rule may not be dispositive

7    given the status of the debtors' case.  Among other things, the

8    bar date has not run yet and the debtors are in the early

9    stages, if at all, in dealing with the claims against them.

10            So, again, it appears likely to me that the debtor

11   will prevail but I'll review this case law that's been asserted

12   and adjourn the hearing until the next omnibus date.

13            MR. BUTLER:  Thank you, Your Honor.  Your Honor, do

14   you want any more from the parties on this matter for the next

15   omnibus date or just that the Court's going to take it under

16   advisement?

17            THE COURT:  The debtors are free to file something if

18   they wish.  I'm not telling them that they have to.  I'll

19   review the case law myself, but if you want to file something,

20   you can do that.

21            MR. BUTLER:  Thank you, Your Honor.

22            MR. MASTROMARCO:  Your Honor, if the debtor does, I

23   would also like the Court to allow me to file a short brief

24   setting forth these issues that I've --

25            THE COURT:  Well, but you've already -- you took

47

1    today as the opportunity to do that and --

2            MR. MASTROMARCO:  A limited brief, Judge.

3            THE COURT:  -- in my mind, that's sufficient.

4            MR. BUTLER:  Your Honor, the next matter on the

5    agenda is matter number 14.  This is the Cindy Palmer lift-stay

6    motion filed at Docket No. 2708.  And again, I'll defer to

7    Counsel for presenting the motion.

8            MR. MASTROMARCO:  Victor Mastromarco on behalf of the

9    estate.  This is a personal injury cause of action where the

10   plaintiff's decedent was crushed in a machine and the case had

11   been filed originally back in 2001 and went through a lot of

12   discovery.  The trial court had granted a motion on behalf of

13   Delphi for summary -- what we call summary disposition, which

14   is similar to Rule 56 in federal court.  The case had gone to

15   the Court of Appeals and oral arguments had been set for

16   October 12, 2005 and the bankruptcy stay was entered three days

17   before that argument date.

18           What we're asking for is again, pursuant to Rule 157

19   that we've cited in the Backie matters, (b)(5), that we be

20   allowed to pursue this matter in the state appellate court or

21   have it removed to the federal district court to decide whether

22   it should go to the Court of Appeals and resume arguments

23   there.

24           We were at the end of the road with the Court of

25   Appeals, although that's the first stage of appellate review in

122

1

2                        C E R T I F I C A T I O N

3

4       I court approved transcriber, certify that the foregoing is a

5       correct transcript from the official electronic sound recording

6       of the proceedings in the above-entitled matter.

7

8       _____    June 20, 2006

9       Signature of Approved Transcriber        Date

10

11          Lisa Bar-Leib

12      typed or printed name

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT G

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Lafonza Earl Washington | | 7010 Cranwood Drive | | Flint | MI | 48505 | | | | | |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyons@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/13/2006 11:46 AM
Lafonza Washington Service List

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                                        :    (Jointly Administered)
                        Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE TO LAFONZA EARL WASHINGTON
DEMAND FOR IMMEDIATE DISTRIBUTION

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Response (this "Response") to the Demand For Immediate Distribution filed by Lafonza Earl Washington, dated November 10, 2005 (the "Demand") (Docket No. 1187), and respectfully represent as follows:

<u>Preliminary Statement</u>

1.      On October 28, 2005, Lafonza Earl Washington (the "Claimant"), who has no known relationship to any of the Debtors, filed four proofs of claim, claim nos. 00257, 00264, 00288, and 00297 (individually, a "Proof of Claim" and, collectively, the "Proofs of Claim") against Delphi Automotive Systems (Holding), Inc.  Each Proof of Claim asserts that the Claimant is entitled to a $30 million unsecured priority claim on the basis of, <u>inter alia</u>, involuntary servitude, six years of deprivation of General Motors-related income, and severance pay due to the Claimant based on the July 2, 1999 closing of the Buick City General Motors Corporation ("GM") plant. (Supporting Documents appended to Claimant's Proofs of Claim ¶¶ (v)(a), (vii), and (viii)).  In the Demand, the Claimant requested that the United States Trustee immediately distribute $30 million to him.  Without providing a definitive calculation, the amount of the Proofs of Claim purports to be comprised of compensation due to the Claimant for worker's compensation benefits, deprivation of certain property rights, and payment of certain fees and expenses incurred by the Claimant over a period of more than 33 years, from June 13, 1973 through the present.

2.      Subsequently, the Claimant has filed numerous other pleadings in these cases in which he has asserted a host of claims and allegations.  To date, the

Claimant has filed twenty pleadings, totaling hundreds of pages, in which he directs his

grievances and allegations not only at the Debtors, but also at various United States

Trustees, this Court, and multiple other parties.  The Claimant appears to have attempted to

summarize his claims in his June 23rd pleading (Docket No. 4444) in which he requested a

hearing date.[1]

        3.      The Debtors respectfully submit that because neither the Claimant

nor his spouse was ever an employee of the Debtors, the Claimant was never and is not

now entitled to any employment-related compensation or severance pay from the Debtors.

In addition, the Debtors deny all of the bases for relief asserted by the Claimant and submit

that the Claimant has articulated no grounds for relief from the Debtors.  Thus, the

Claimant is not entitled to any distribution of payment from the Debtors.

        4.      To the extent that the Claimant has a rightful claim against the

Debtors, it would be premature to adjudicate it now.  Pursuant to the provisions of the Bar

Date Order, dated April 12, 2006 (Docket No. 3206), the date by which any claim against

the Debtors must be received is July 31, 2006.  All claims filed will thereafter be dealt with

in the claims administration process.  Therefore, to the extent that the Claimant has a

legitimate claim against the Debtors, it will be addressed as part of that process and need

not be heard on an expedited basis.[2]

---

[1]    On July 5, 2006, the Claimant filed four pleadings, one of which was a withdrawal of his request for a
hearing on his claims (Docket No. 4455).

[2]    Perhaps the Claimant's withdrawal of his request for a hearing (Docket No. 4455) is an
acknowledgement on his part that his demands are premature.

<u>Argument</u>

A.    The Claimant Was Never An
        <u>Employee Of The Debtors</u>

5.        Neither the Claimant nor his spouse has ever been an employee of the Debtors.  In fact, in no pleading filed by the Claimant does he ever even assert or offer proof that he was ever an employee of the Debtors.  Further, the Claimant has referenced an employment history that relates only to GM: the Claimant states that he was "hired into the General Motors Corp. (GM) on 6-13-73 at the age of 18" and "perform[ed]. . . labor for it 32 years after initial hire".  The one reference to possible employment by Delphi that the Claimant asserts is that "GM attempted to force this Claimant to '<u>involuntarily</u>' transfer to Delphi in Saginaw, Michigan after it permanently closed the Buick City plant." (Supporting Documents appended to Claimant's Proofs of Claim ¶¶ (A)(i), (v)(a), and (v)(b)) (emphasis in original).  The Claimant must never have accepted this transfer because to the best of Delphi's knowledge, the Claimant was never an employee of any of the Debtors.  The Debtors' files show no record of the Claimant's ever having been their employee.

6.        Because the only plausible basis for the Claimant to assert a claim for employment-related back pay or compensation would rest entirely on the basis of the Claimant's currently being, or having been, an employee of the Debtors, any such claim must fail for the simple reason that neither the Claimant nor his spouse was ever employed by the Debtors.  Therefore, the Claimant has raised no legitimate basis for relief from the Debtors.

B.    The Claimant's Allegations Are
      Prematurely Before The Court

7.    The Claimant has asserted a variety of other allegations that extend not only to the Debtors, but also to a multitude of other parties.  Among other things, the Claimant has stated that parties to these cases are involved in the attempted "seditions and subversive overthrow of the United States Bankruptcy system" (Docket No. 2807, ¶ 5), that "the stockholders of the [sic] Delphi, GM, and International UAW corporations. . . is [sic] behind the[se] holocaustic human rights violations" (Docket No. 4456, ¶7), that the United Nations and the United States Trustees have deliberately compounded Claimant's wrongs and injuries in violation of his human rights (Docket No. 2474, ¶8), and that the Debtors, GM, the UAW, this Court, JPMorgan Chase, et al., have conspired and colluded to deny the Claimant relief (Docket No. 4001, Section II, ¶1).  For his injuries, the Claimant currently demands more than $300 million, including interest, penalties, and other charges.

8.    The Claimant's allegations are quite extensive and are equally broad in their reach in terms of blame and responsibility.  These allegations, insofar as they are directed at the Debtors, are wholly-unfounded and unsubstantiated.

9.    To the extent that the Claimant has made a claim against the Debtors, however, that claim will be dealt with during the claims administration process.  Because that process has not yet even begun, the Claimant's demand for relief from the Debtors is premature.

<u>Conclusion</u>

10.     Neither the Claimant nor his spouse has ever been an employee of

the Debtors.  Therefore, the Claimant is not entitled to any employment-related relief from

the Debtors.

11.     To the extent that there are general claims that the Claimant has

against the Debtors' estates that are timely filed in accordance with the provisions of the

Bar Date Order, those claims will be dealt with as part of the claims administration

process.

12.     Based on the foregoing, the Claimant's demand for relief and

immediate distribution from the Debtors should be denied.  The Claimant has failed to

assert any valid or legitimate basis to support his claims against the Debtors.  To the extent

that the Claimant has a valid claim for compensation or work-related pay, the Debtors lack

knowledge or information sufficient to form a belief as to whether such a grievance may be

valid against some other entity, but such claims against the Debtors have no basis, and the

Claimant has not asserted any.  To the extent that the Claimant asserts non-employment-

related claims against the Debtors, such claims will be dealt with during the claims

administration process.  The Claimant's allegations should not be litigated at this time.

<u>Notice</u>

13.     Notice of this Response has been provided in accordance with the

Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice,

Case Management, And Administrative Procedures, entered by this Court on May 19, 2006

(Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

14.    Because the legal points and authorities upon which this Response relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) denying the Demand and (ii) granting the Debtors such other and further relief as

is just.

Dated: New York, New York
       July 12, 2006

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                        By: /s/ John Wm. Butler, Jr.
                                            John Wm. Butler, Jr. (JB 4711)
                                            John K. Lyons (JL 4951)
                                            Ron E. Meisler (RM 3026)
                                            333 West Wacker Drive, Suite 2100
                                            Chicago, Illinois  60606
                                            (312) 407-0700

                                        - and -

                                        By: /s/ Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti (KM 9632)
                                            Thomas J. Matz (TM 5986)
                                            Four Times Square
                                            New York, New York 10036
                                            (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                            Debtors and Debtors-in-Possession

8