**Hearing Date: July 19, 2006**
**Hearing Time: 10:00 a.m.**

Bruce H. Simon (BS 2597)
Babette A. Ceccotti (BC 2690)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York 10036-6976
(212) 563-4100
     - and -
Niraj R. Ganatra
International Union, UAW
8000 East Jefferson Avenue
Detroit, MI 48214
(212) 926-5216

Attorneys for International Union, UAW

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | )    Chapter 11 |
| DELPHI CORPORATION, *et al.,* | ) |
| | )    Case No. 05-44481 (RDD) |
|                Debtors. | )    (Jointly Administered) |

**OBJECTION OF UAW TO DEBTORS' MOTION TO SUPPLEMENT KECP**

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or the "Union"), by its undersigned counsel, objects as follows to the Supplement to KECP Motion Seeking Authority to: (A) Fix Second Half 2006 AIP Targets and Continue AIP Program and (B) Further Adjourn KECP Emergence Incentive Program Hearing (the "KECP Supplement"):[1]

**Introductory Statement**

1. In its KECP Supplement, Delphi asks this Court to continue the six-month AIP program approved in February, 2006 for the second half of 2006 and to allow Delphi to

---

[1] UAW's time to respond to this motion was extended by agreement until July 14, 2006 at noon.

00093257.DOC.1

implement the AIP in future years without further court approval.  Delphi also seeks to adjust the targets for the second half of 2006 to reflect "seasonal variations" it says will lower earnings, meaning that the debtors want to continue to pay a selected executive group the same bonuses for even lower performance metrics.[2]  Delphi paints an optimistic picture of the company's performance during the first half of the year that reflects the rose-colored world of executive compensation.  In that world, the operational and financial results are attributed to the benefits of the AIP, rather than to faulty projections, or targets that were, in reality, "lay-ups" to begin with.  Moreover, Delphi's motion could not have come at a worse time given the pending Section 1113/1114 hearing and the inevitable complication that this double-standard approach to its restructuring creates.  Accordingly, UAW objects to the KECP Supplement because it will unduly complicate the union's negotiations in the 1113/1114 process, and because the program would be an excessive and imprudent use of estate assets.  Finally, the Court should reject the debtors' request for authority to implement future AIP programs without court oversight.

**The KECP Supplement Needlessly Complicates the Section 1113/1114 Negotiations**

2. The central theme in Delphi's chapter 11 case has been its so-called "labor transformation." When the KECP was first proposed, the unions apprised the Court of the negative reaction to these programs from the vantage point of the workers and the unions charged with negotiating over their futures in the context of the imminent Section 1113/1114 motion.  *See* Objection and Memorandum of Law of UAW in Opposition to Debtors' Motion for an Order Authorizing Debtors to Implement a Key Employee Compensation Program [Docket No. 1135].  *See also* Objection by IUE-CWA to Supplemental KECP Motion [Docket No. 4524],

---

[2] The Court rejected a feature of the AIP as originally proposed that would have awarded bonuses for reaching less than 100% of the targets.  *See* Order Under 11 U.S.C. §§105 and 363 Authorizing the Debtors to Implement a Short-Term Annual Incentive Program [Docket No. 2441], dated February 17, 2006 ("February Order"), p. 6.

p. 12 (*citing* Reichard Declaration). The contrast between the Section 1113/1114 process on the one hand, and Delphi's tone deaf insistence on simultaneously enhancing executive compensation on the other, could not be more jarring and or offensive to that process. Indeed, only a chapter 11 debtor can engage in these activities at the same time, using the mechanisms available to them under the Bankruptcy Code.[3] But Delphi's apparent ability to do so, invoking virtually the same rationale for each, does not mean that it should be permitted to do so.

        3.      If there is a genuine desire for a negotiated solution to the labor issues facing the bargaining parties, then Delphi should table the KECP Supplement along with the other compensation enhancing schemes until later in the case.[4] Workers either have or will be making choices about their futures under the attrition programs the Court has now approved. The current recess in the Section 1113/1114 hearing was designed to allow the parties to devote serious attention to the next steps in the framework now that the attrition plan is underway. The reality is that the issues at stake in those discussions, *i.e.,* the Delphi footprint and the wages and benefits and other opportunities available to the remaining work force, still involve the debtors' insistence that its publicly announced "transformation plan" involving plant closures and deep cuts in wages and other benefits remain unchanged. *See* KECP Supplement, ¶5 and n.2. UAW agreed to the attrition program to provide opportunities for UAW-represented employees and cost savings to Delphi, and as a logical and important first step in the framework process. UAW did not agree to the program so that Delphi could spend tens of millions of dollars million a year on a poorly conceived executive compensation program that sends the message that hourly

---

[3] Congress enacted new Section 503(c) in response to the increasing prevalence of executive bonus and similar plans in bankruptcy cases where rank and file workers were suffering tremendous economic blows as a result of the bankruptcy. *See generally U.S. Airways, Inc.*, 329 B.R. 793, 797 (Bankr. E.D. Va. 2005).

[4] Delphi has wisely sought to adjourn the proposed emergence grants to a future time. *See also, e.g., In re America West Airlines*, 171 B.R. 674, 677-8 (Bankr. D. Az. 1994) (evaluating confirmation bonuses after considering the history of the case and the recipients' contributions to the reorganization).

- 3 -

workers are the dispensable commodities of the chapter 11 case while the executives will be insulated from the effects of a dislocating transformation. Delphi and UAW need a shared vision of the reorganized company in order to work productively towards a solution. Interjecting the AIP into this process is counterproductive, distracting, and raises serious concerns that the company is simply unable or unwilling to address the magnitude of the issues it has put on the table in this case in a fair manner.

### The Proposed KECP Supplement Should Be Rejected

4. Delphi supports is request for extending AIP to the second half of 2006 by citing the company's operational and financial performance for the first half of the year. But even accepting Delphi's upbeat report regarding its self-selected metrics, the results are not demonstrably attributable to the AIP. Indeed, while Delphi estimates that the achieved targets would result in payments of $38 million for the six-month period through June 30 2006, it appears that the individual reviews that would provide a closer look at performance have not yet occurred. The results Delphi reports could be attributable to any number of factors having absolutely nothing to do with the AIP approved by the Court in February, including faulty or overly conservative projections, or, as now seems likely, overly generous targets. Delphi's contention that the program should be extended on the same terms based upon the results the company reports for the first half of 2006 cannot withstand scrutiny simply based upon the implication that the results relate to the AIP.[5]

5. Delphi's reliance upon its consultant's opinion to support an extension of the program also should be viewed with skepticism. Public critique regarding the compensation-

---

[5] It is certainly a source of pride among Delphi's *hourly* workers that 99.6% of all Delphi deliveries to its customers are flawless meaning that Delphi has delivered the customer's order on time and with no deviations. *See* Declaration of Rodney O'Neal in Support of Supplement to KECP Motion Seeking Authority to: (A) Fix Second Half 2006 AIP Targets and Continue AIP Program and (B) Further Adjourn KECP Emergence Incentive Program Hearing, ¶¶6-8.

enhancing tactics devised by executives has extended to the consultants in the field as well. *See* Gretchen Morgenson, *Gilded Paychecks: Troubling Conflicts; Outside Advice on Boss's Pay May Not Be So Independent*, N.Y. Times, Apr. 10, 2006, at A1 ("Morgenson, "*Guilded Paychecks*") (discussing "the secretive, prosperous and often conflicted world of compensation consultants," and noting that the world of compensation consultants, who often receive fees of $950 per hour, "has grown into a substantial industry where there is little disclosure about how executive pay is determined"). *See also* Lucian Bebchuk, *et al*., Symposium: *Executive Compensation and Takeovers,* 69 U. Chi. L. Rev. 751, 790-91 (2002) (describing "ratcheting" in executive pay surveys used by consultants). The Court should accept neither the need for the program nor the design of the program based solely on Delphi's presentation.  A process where the same firms are both developing and reviewing programs for compensation committees, and where the reviewers on one committee are likely to be those reviewed by another committee in the mobile and deeply connected world of board memberships lacks the requisite independence for the Court to be able to make an informed judgment about the program.  *See* Morgenson, *Gilded Paychecks,* A 16.

        6.      Moreover, Delphi's request to re-set the targets for 2006 to account for "seasonal variations" that project lower earnings and income only underscores the flawed nature of the AIP.  First, the Court should not accept the results of the first half of the year without a thorough review of the current targets and their application to the first half year results.  To the extent that hindsight reveals now-obvious design flaws, those flaws should not be compounded by extending the program further, even if the debtors could otherwise make a case for extending some type of incentive program.  Moreover, the notion that targets – even those that are rationally constructed to fit the circumstances – should be *lowered* to permit bonuses for losses on the order of $634 million (for the Automotive Holdings Group) and $411 million (Delphi

- 5 -

enterprise) virtually assures that executives will get bonuses in the second half of the year and renders the concept of an incentive bonus almost meaningless. Although the Court refused to permit bonuses for failing to reach 100% of the targets when the program was initially approved, Delphi nonetheless seeks to evade that restriction by proposing to lower the bar based on so-called "seasonal" factors. If there are seasonal factors that could measurably and credibly account for historical differences in performance, then Delphi should not have proposed six-month targets to being with. In any event, highly speculative measurements such as targets and projections are subject to material fluctuation for any number of reasons. Delphi's desire to increase the chances for bonus payments in the second half of the years by lowering the targets should be rejected.

### The AIP Should Remain Subject to Oversight by the Court

7.  Finally, Delphi's request for authority to implement the AIP going forward, without further approval of the Court, should be denied. The original KECP motion, which the Court ruled was a transaction out of the Debtors' ordinary course of business, drew objections from virtually every major constituency in this case.[6] The Supplemental KECP Motion has likewise become a lightening rod. While Delphi might prefer to avoid the scrutiny that these motions have required, the company is asking for what amounts to a "blank check" to spend tens of millions a year on bonuses, subject only to a review of the targets by the Creditors' Committee. While the Committee's professionals are no doubt capable, the Committee is not the only constituent representative that has voiced concerns about these programs, nor can the Committee's judgment substitute for that of the Court. The implementation of these programs requires careful review and Delphi should not be permitted to put that process under wraps.

---

[6] *See* February Order, p. 4.

**Conclusion**

For the foregoing reasons, the KECP Supplement should be denied.

Dated: July 14, 2006

   /s/ Babette A. Ceccotti
Babette A. Ceccotti (BC 2690)
Bruce H. Simon (BS 2597)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, NY  10036
(212) 563-4100

- and -

Niraj R. Ganatra
International Union, UAW
8000 East Jefferson Avenue
Detroit, MI 48214
(313) 926-5216

Attorneys for International Union, UAW