**Hearing Date: July 19, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' OBJECTION TO MOTION
OF NUTECH PLASTICS ENGINEERING, INC.
FOR RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion of NuTech Plastics Engineering, Inc. ("NuTech") for relief from the automatic stay, dated July 3, 2006 (the "Motion") (Docket No. 4436).  In support of the Objection, the Debtors respectfully represent as follows:

<u>Preliminary Statement</u>

1.      The Motion should be denied because NuTech has not shown adequate cause for relief from the automatic stay.  NuTech seeks stay relief merely to establish liability on its general, unsecured proof of claim for $13,957,130 in breach-of-contract damages, by continuing its prepetition litigation against one of the Debtors in a different forum.  The Court should deny NuTech's Motion because, among other reasons, NuTech's contract claim should be resolved through an orderly claims adjudication process with all other general unsecured claims, the Debtors have no insurance coverage for this claim, and the Debtors should not be unnecessarily distracted from the reorganization process.

2.      NuTech's failure to establish cause is aptly illustrated by its election to wait nearly nine months to seek stay relief.  The Motion reveals no change in circumstances during that time, other than NuTech's desire to have its claim determined before others, at a time and in a forum of its choosing.  The Debtors should not be forced to divert their attention from their current endeavors to appease NuTech.  To permit adjudication of NuTech's claims at this time would improperly prefer this unsecured

2

creditor over other holders of disputed, unliquidated claims and would encourage other similarly situated parties to follow suit. Because the Debtors are parties to more than 200 active and threatened lawsuits throughout the country, the Debtors could be inundated with similar motions from numerous litigation claimants if the stay were lifted here. This would force the Debtors to reallocate needed resources to defend against numerous motions to modify the automatic stay rather than focus on restructuring efforts to emerge from chapter 11 as soon as possible.

3.      In light of the significant issues currently facing the Debtors, they simply should not be forced to litigate prepetition claims now with NuTech or any other similarly situated claimant. In fact, this type of costly distraction is precisely what Congress intended to halt through the automatic stay. Permitting a modification of the stay at this time to allow NuTech to proceed against Delphi with its litigation would undermine the protections afforded by Congress to a chapter 11 debtor.[1]

<u>Background</u>

A.      <u>NuTech's General Unsecured Claim</u>

4.      The NuTech proof of claim for $13,967,130[2] "involves two straightforward claims for breach of contract and promissory estoppel against" the Debtors and GM. (NuTech Affidavit of Jay Schwartz (the "Schwartz Aff.") ¶ 3.) The

---

[1]     As discussed below, NuTech expresses concern that a key witness relating to its claim has medical problems that may affect his ability to present testimony when required by the parties. The Debtors share that concern and request that the Court permit the parties to perpetuate the testimony of that witness in anticipation of the claims reconciliation process.

[2]     NuTech's proof of claim dated November 22, 2005 has apparently been filed twice, as claim number 871 and claim number 1279. Although the two proofs of claim appear to be identical and duplicative, each has a "received" date that is roughly a month apart and thus the claims agent has docketed each separately.

3

claim arises out of an alleged breach of a contract (the "Contract") under which Delphi

Automotive Systems L.L.C. ("DAS")[3] and General Motors Corporation ("GM" and,

together with DAS, the "Defendants") allegedly agreed to purchase automotive parts

from NuTech.  In addition, NuTech asserts an additional theory of recovery based on

promissory estoppel for NuTech's purported expansion of its manufacturing capability in

reliance on the Defendants' representations with respect to the Contract.

   5.  NuTech filed its Complaint on December 20, 2002 in the Genessee

County Circuit Court in Flint, Michigan.  The same counsel represented both DAS and

GM.  The case was originally assigned to the Honorable Robert M. Ransom.  The action

was scheduled to begin trial on November 22, 2005.  After DAS advised the state court of

the bankruptcy filing, the Honorable Thomas L. Brown, serving as an interim judge in the

action, advised the parties via telephone conference that the action against GM could only

proceed if NuTech dismissed DAS as a defendant.  Judge Brown stated that otherwise

NuTech would have to wait until the conclusion of the Debtors' bankruptcy cases to

proceed to trial.  (See Schwartz Aff. Ex. A-7 (Judge Brown's written order dated

November 21, 2005).)  Although the Motion asserts that Judge Brown stayed the action

against GM based on the automatic stay, the written order does not reference the

automatic stay.  To the contrary, the Debtors' understanding is that Judge Brown issued

the order for reasons of judicial economy (i.e., he would not hear separate trials against

DAS and GM), not because he believed that the automatic stay in the Debtors' case

---

[3] NuTech's Motion and underlying Complaint (as defined hereinafter) were filed against GM and
"Delphi Automotive Systems USA, L.L.C. dba Delphi Automotive Systems, L.L.C."  The Contract,
however, was entered into by "Delphi Automotive Systems L.L.C.," which is the correct name of the
appropriate Debtor entity.

applied to GM. (<u>See</u> November 3, 2005 Letter to Judge Brown, annexed to Affidavit of Arthur R. Lippert, Jr. (filed concurrently with this Objection as Exhibit A)).

B.      <u>The Debtors' Reorganization Cases</u>

6.      Almost nine months after Judge Brown issued the order, NuTech filed its Motion on July 3, 2006, seeking relief from the automatic stay "in all respects" to proceed with the litigation. Alternatively, NuTech seeks an order lifting the automatic stay to allow NuTech to proceed against GM alone.

7.      The deadline for creditors to file proofs of claim in these cases (the "Bar Date") has not yet passed and the Debtors will require sufficient time after the Bar Date to analyze and reconcile the claims. So far, as of the week of this Objection, creditors have filed more than 9,000 proofs of claim. The Debtors intend to reconcile every filed proof of claim, but NuTech's claim is no different than any other claim and does not warrant priority treatment. Even if the Court were to allow the NuTech litigation to go forward, and even if NuTech were ultimately successful, its judgment would still remain unpaid until the Debtors confirm their plan of reorganization. NuTech provides no reason why its claim should be reconciled now in state court, instead of through an orderly claims adjudication process along with all other similarly situated claims.

8.      To properly defend the estates against NuTech's claim, the Debtors would need to allocate resources that would otherwise be used in their restructuring efforts. Indeed, the Debtors' in-house attorneys were involved in this suit and most other litigation against the Debtors. Continuation of this suit would be a distraction from the Debtors' focus on reorganizing. This would be detrimental to all the Debtors'

5

stakeholders because the Debtors are at a critical stage of these highly complex chapter

11 cases, and all of their resources are and should be focused on maintaining their

operations and implementing the Delphi transformation plan.

9.      Indeed, on March 31, 2006, the Debtors announced their strategy

to prepare for their return to stable, profitable business operations through a broad-based

global restructuring.  In furtherance of the Debtors' restructuring efforts, on May 9, 2006,

the hearing commenced on the Debtors' motion for authority to reject U.S. labor

agreements and to modify retiree benefits under sections 1113 and 1114 of the

Bankruptcy Code (the "1113/1114 Motion").  On June 6, 2006, the Court adjourned the

hearing on the 1113/1114 Motion until August 11, 2006, to allow the Debtors additional

time to focus on reaching a consensual resolution with the unions and GM.  Moreover,

the Debtors expect to commence the hearing on their motion for authority to reject certain

unprofitable supply contracts with GM on August 15, 2006, after the hearing on the

1113/1114 Motion has concluded.  The Debtors are also preparing to implement other

aspects of their transformation plan including streamlining the Debtors' product portfolio,

transforming the Debtors' salaried workforce to ensure that the Debtors' organizational

and cost structure is competitive, and devising a workable solution to the Debtors' current

pension issues.  The resolution of these matters, which will require the Debtors'

undivided attention, is key to the Debtors' ability to complete its U.S.-based restructuring

and emerge from chapter 11.

<u>Argument</u>

10.      The automatic stay imposed by section 362 of the Bankruptcy

Code is one of the most fundamental and significant protections that the Bankruptcy

6

Code affords a debtor.  Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494,

503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837

(Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative

nature of a bankruptcy proceeding.").  The automatic stay is designed to, among other

purposes, give the debtor a "breathing spell" after the commencement of a chapter 11

case and shield the debtor from creditor harassment and a multitude of litigation in a

variety of forums at a time when the debtor's personnel should be focusing on

restructuring.  See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528

U.S. 1079 (2000); In re Enron Corp., 300 B.R. 201 (Bankr. S.D.N.Y. 2003).

        11.      The automatic stay broadly extends to all matters that may have an

effect on a debtor's estate, enabling bankruptcy courts to ensure that debtor has the

opportunity to rehabilitate and reorganize its operations.  See Manville Corp. v. Equity

Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); see

also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976)

("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by

proceedings in other courts where such activities or proceedings tend to hinder the

process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re

AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay

prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves

the debtor's estate so that all creditors and their claims can be assembled in the

bankruptcy court for a single organized proceeding.").

        12.      Section 362(d)(1) of the Bankruptcy Code provides that the court

may grant relief from the automatic stay "for cause."  In Sonnax Indus. v. Tri Component

Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of

Appeals explained the burden-shifting regime on a motion to modify the automatic stay:

> The burden of proof on a motion to lift or modify the automatic
> stay is a shifting one. Section 362(d)(1) requires an initial showing
> of cause by the movant, while Section 362(g) places the burden of
> proof on the debtor for all issues other than "the debtor's equity in
> property," 11 U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy ¶
> 362.10, at 362–76. If the movant fails to make an initial showing
> of cause, however, the court should deny relief without requiring
> any showing from the debtor that it is entitled to continued
> protection.

13.    "If the movants fail to make an initial showing of cause . . . the

court should deny relief without requiring any showing from the debtor that it is entitled

to continued protection." In re Sonnax Indus., Inc., 907 F. 2d at 1285; see also In re

Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting that to obtain stay

relief, unsecured creditors face difficult task of producing evidence to establish balance

of hardships tips in their favor).  Moreover, during the period when debtors still retain the

exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim

holder should not be permitted to pursue litigation against the debtor in another court

unless extraordinary circumstances are shown."  See In re Pioneer Commercial Funding

Corp., 114 B.R. 45, 47-48 (Bankr. S.D.N.Y. 1990) (citing In re Sonnax Indus., Inc., 99

B.R. 591, 595 (D. Vt. 1989), aff'd, 907 F.2d 1280 (2d Cir. 1990)); June 19, 2006

Transcript at 44-45 ("it's recognized by the Courts in this district that relief from the

automatic stay to pursue the liquidation of an unsecured claim is unusual, and

extraordinary circumstances normally need to be shown.").[4]

---

[4]    NuTech asserts that the Second Circuit's In re Sonnax Indus., Inc.'s decision has "superseded" In re
Pioneer Commercial Funding Corp.'s observation that unsecured, unliquidated claims should not be

14.    This Court is given sound discretion to evaluate the propriety of lifting the stay.  In re Sonnax Indus., Inc., 907 F.2d at 1287.  Courts have traditionally used multifactor tests to determine whether cause exists to modify or lift the automatic stay.  The Second Circuit has used a twelve-factor lift stay test articulated in the In re Sonnax Indus., Inc. decision.  In re Sonnax Indus., Inc. sets forth the following list of twelve factors (the "Sonnax Factors") that should be considered when deciding whether the stay should be lifted to allow litigation against a debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. at 1286.  See also In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984).  All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the

---

prosecuted in another court absent extraordinary circumstances.  (NuTech Memo. at ¶ 10.)  But nothing in In re Sonnax Indus., Inc. alters the structure of the Bankruptcy Code, which provides that proofs of claim will be filed and allowed or disallowed in the bankruptcy court, see 11 U.S.C. §§ 501-502, 28 U.S.C. § 157(b)(2)(B), or alters the proposition that unsecured, unliquidated claims should be allowed or disallowed in the bankruptcy court.  Any exception is and ought to be an extraordinary circumstance during the period when a chapter 11 debtor retains the exclusive right to file and solicit a plan.  Certainly, nothing in In re Sonnax Indus., Inc.'s discussion of its 12 factors or stay relief generally indicated that it was overruling any prior decision.  To the contrary, it affirmed the lower court, whose decision was cited by In re Pioneer Commercial Funding Corp. for the very proposition that extraordinary circumstances should be present before such stay relief is granted.  In re Sonnax Indus., Inc., 907 F.2d 1280, aff'g  99 B.R. 591, 595 (D. Vt. 1989) (cited by In re Pioneer Commercial Funding Corp., 114 B.R. 45, 47 (Bankr. S.D.N.Y. 1990)).

twelve factors.  See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys,

Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

15.    The relevant Sonnax Factors with regard to this Motion are (i) lack

of any connection with or interference with the bankruptcy case; (ii) whether the debtors'

insurer has assumed full responsibility for defending them; (iii) whether the parties are

ready for trial in the other proceeding; (iv) whether litigation in another forum would

prejudice the interests of other creditors; and (v) impact of the stay on the parties and the

balance of harms.  As demonstrated below, NuTech has not, and indeed cannot, carry the

burden of establishing that sufficient cause exists to lift the automatic stay.  Accordingly,

the Motion should be denied.

I.    Lifting The Stay Would Unnecessarily Interfere
      With The Debtors' Restructuring Efforts

16.    Because the Debtors are parties to more than 200 active and

threatened lawsuits across the country, lifting the automatic stay for NuTech presumably

would encourage other parties with general unsecured litigation claims against the

Debtors to seek similar relief, thereby forcing the Debtors to defend against numerous

motions to modify the automatic stay.  This result would be contrary to the fundamental

principles set forth by Congress as a basis for the automatic stay.  See, e.g., LTV Steel

Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting

that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the

debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic

Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.

10

17.    Furthermore, as noted above, the Bar Date has not yet passed and the Debtors have not yet begun their comprehensive analysis of the more than 9,000 proofs of claim that have been filed so far.  NuTech offers no reasons in its Motion why the Debtors should have to deal with this claim now and outside of the usual claims adjudication process.  NuTech waited almost nine months to seek this relief and offers no reason why the litigation must go to trial now.  (The problem of preserving the testimony of an ailing witness, as discussed below, does not require the remedy of a trial.)

18.    In addition to the reasons set forth above, the Debtors and their estates would be prejudiced if the automatic stay were modified now to permit the NuTech litigation to proceed.  The Debtors are in the midst of critical negotiations with their unions and GM to address numerous issues regarding U.S. legacy liabilities and operational restrictions driven by collective bargaining agreements.  In furtherance of these efforts, and as stated above, the Debtors commenced the prosecution of their 1113/1114 Motion seeking authority to reject U.S. labor agreements.  In addition, the Debtors also intend to prosecute their motion to reject unprofitable supply contracts with GM.

19.    Allowing NuTech to proceed with its litigation at this time will distract the Debtors from critical issues facing them and will thus cause significant prejudice to the Debtors' estates.  In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); see In re Comdisco, 271 B.R. at 280

11

(finding that "it would be irresponsible and subversive of the purpose of the automatic

stay to allow any resources and attention of the Debtor to be diverted to other matters not

directly related to its reorganization").  Denying NuTech's Motion is consistent with one

of the purposes of the automatic stay, which is to allow the Debtors breathing space.  See,

e.g., In re Enron Corp., 300 B.R. at 211 (finding that "'[t]he purpose of the automatic stay

is to give the debtor a breathing spell from creditors'") (citations omitted).

II.     The Debtors And Their Creditors Will Be Prejudiced
        Because The Debtors Do Not Have Insurance To
        Cover The Liability Asserted By NuTech

        20.     The Debtors have no insurance coverage for the NuTech claim

and thus, the continuation of the NuTech litigation will directly affect the Debtors and

their estates to the detriment of all other creditors.  All costs associated with defending

the action and any liability that may ultimately arise on account of the action would be

borne directly by the Debtors to the detriment of their stakeholders.  As a result, the

Debtors and their estates would be prejudiced if the automatic stay were modified to

permit the NuTech litigation to proceed at this point in these chapter 11 cases.

III.    Whether The Parties Were Ready For Trial Is Not
        Dispositive Because Of The Nature Of The NuTech
        Claim

        21.     Although the parties may have been six weeks from trial as of the

Petition Date, GM may need to retain its own counsel and may not be ready for trial by

NuTech's anticipated September 2006 trial date.  Yet even if counsel were ready,[5] this

---

[5]     According to the Schwartz Affidavit, if this Court were to allow the NuTech litigation to proceed, it
        would proceed before a new judge, the Honorable Joseph J. Farah.

factor alone should not outweigh the other factors that favor a resolution of general

unsecured claims though the usual claims reconciliation process.

22.    NuTech contends that the <u>In re Burger Boys, Inc.</u> decision

demonstrates that relief from stay is appropriate because its contract claim is non-core,

subject to mandatory abstention, and was on the eve of a state-court trial as of the Petition

Date.  (NuTech Memo. at ¶ 4, citing <u>In re Burger Boys, Inc.</u>, 183 B.R. at 688.)  <u>In re</u>

<u>Burger Boys, Inc.</u>, however, involved a non-core breach of contract adversary proceeding

commenced by the debtor against its landlord, which the district court concluded was

subject to mandatory abstention under 28 U.S.C. §1334(c)(2).  <u>Id.</u> at 685-87.  Because the

debtor was required to prosecute the contract claim as a counterclaim in state court (due

to abstention), the district court granted stay relief to the landlord to proceed on its state

court eviction proceeding as well.  Here, however, NuTech's contract claim is a core

proceeding, <u>see</u> 28 U.S.C. § 157(b)(2)(B) ("allowance . . . of claims against the estate),

which is not subject to mandatory abstention.  Nor are the Debtors proceeding against

NuTech in any nonbankruptcy forum (due to abstention or otherwise), which would

weigh in favor of permitting NuTech also to proceed in a nonbankruptcy forum.  Nothing

in <u>In re Burger Boys, Inc.</u> supports NuTech's request to liquidate its claim in state court.

IV.    The Balance Of The Harms Weighs In Favor Of
       <u>Denying NuTech's Motion</u>

23.    In stark contrast to the substantial prejudice that the Debtors and

the Debtors' other creditors similarly situated with NuTech would suffer, NuTech cannot

demonstrate that it would be prejudiced if the Motion were denied.  NuTech has waited

nine months to file the Motion, but shows no prejudice arising during those nine months.

Nor does NuTech demonstrate any prejudice that might arise between now and the resolution of its claim through claims reconciliation process.  NuTech will face only the ordinary delay that all creditors face in complex chapter 11 cases.  See In re Comdisco, 271 B.R. at 277-80 (finding that "the automatic stay almost always delays litigants . . . [t]hat, after all, is its purpose, and the reason they call it a 'stay'").  NuTech simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable—and intended—consequence of the automatic stay.

V.      The Relief Requested Is Overly Broad

24.     The proposed order (the "Proposed Order") that NuTech submitted in connection with its Motion states "that the automatic stay be, and the same hereby is, vacated, annulled and terminated in all respects as it applies to NuTech's claims against Debtor . . . ."  (Proposed Order at 2.)  Such relief is obviously too expansive.  Even if this Court were to lift the automatic stay so the NuTech litigation could continue, NuTech should be limited to liquidating its claim by prosecuting the state court litigation to entry of a money judgment, but NuTech should not be permitted to enforce or otherwise recover on any such judgment.  NuTech must await confirmation of the Debtors' reorganization plan before it may receive any distribution on account of its prepetition claim.

VI.     The Parties Should Be Permitted To Perpetuate The Testimony Of John Mailey

25.     The Motion references the health problems of one of NuTech's key witnesses, John Mailey.  Granting stay relief and forcing the Debtors to trial, however, is an unnecessarily broad remedy for this problem.  But the Debtors share NuTech's desire to ensure the availability of Mr. Mailey's testimony for their anticipated objection to

14

NuTech's proof of claim.  Accordingly, the Debtors request that the Court designate

Mr. Mailey as a person whose deposition may be taken on the subject of NuTech's

claims, under Rule 27 of the Federal Rules of Civil Procedure, as made applicable by

Rules 7027 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

VII.    The Automatic Stay Generally Does Not Apply To Non-Debtor Third Parties

26.    Finally, the Debtors do not oppose NuTech's contention that the

automatic stay generally does not apply to third party non-debtors such as GM.[6]

Conclusion

27.    A balancing of the competing interests of the Debtors and NuTech

demonstrates that the automatic stay should not be modified to permit NuTech to proceed

with the NuTech litigation at this critical stage of these chapter 11 cases.  NuTech fails to

meet the burden of establishing that sufficient cause exists to lift the automatic stay.  For

the reasons set forth above, the Motion should be denied, other than permitting the

deposition of Mr. Mailey.

Notice

28.    Notice of this Objection has been provided in accordance with the

Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered by this Court on

May 19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the

Debtors submit that no other or further notice is necessary.

---

[6]    GM has asserted that it has a right of indemnification from the Debtors for its defense costs and any
liability that might arise out of the NuTech litigation.

Memorandum Of Law

29.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) designating John Mailey as a person whose deposition may be taken on the subject of NuTech's claims, (ii) denying all other aspects of the Motion, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       July 14, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

   - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

17

Exhibit A

**Hearing Date: July 19, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                         :
            In re                        :    Chapter 11
                                         :
DELPHI CORPORATION, et al.,              :    Case No. 05-44481 (RDD)
                                         :
                                         :    (Jointly Administered)
                      Debtors.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DECLARATION OF ARTHUR T. LIPPERT, JR.

I, Arthur T. Lippert, Jr., declare:

I am the attorney of record for the defendants in the case styled as <u>NuTech Plastics Engineering, Inc. vs. General Motors Corporation and Delphi Automotive Systems USA, L.L.C. dba Delphi Automotive Systems, L.L.C.</u>, Case No. 02-075335-CK, pending in Circuit Court for the County of Genesee, Michigan.

The letter annexed hereto, dated November 3, 2005, is a true and correct copy of the letter I submitted on the same date to the Honorable Thomas L. Brown, Circuit Court Judge, regarding the <u>NuTech</u> case.

I declare under penalty of perjury that the foregoing is true and correct. Executed in on July 14, 2006 in Saginaw, Michigan.

<u>/s/ Arthur T. Lippert, Jr.</u>
     Arthur T. Lippert, Jr.

2

November 3, 2005

Honorable Thomas L. Brown
Genesee County Courthouse
900 S. Saginaw St.
Flint, MI 48502

      RE:    Nu-Tech Plastics Engineering, Inc. v. General Motors Corporation,
              and Delphi Automotive Systems USA, L.L.C.,
              Case No. 02-075335-CK

Dear Judge Brown:

I represent General Motors Corporation and Delphi Automotive Systems in an action brought in the Genesee County Circuit Court by NuTech Plastics Engineering, Inc. It is case no. 02-075335-CK.

On October 13, 2005, I filed a notice that Chapter 11 bankruptcy proceedings had been filed in the United States Bankruptcy Court for the Southern District of New York. An automatic stay of all the legal proceedings against Delphi is in effect as provided by Section 362 of the bankruptcy code.

The NuTech action also names General Motors as a defendant. General Motors is not effected by this stay. The case is docketed for trial in your court on November 22, 2005. I think it might be helpful for all concerned if counsel can meet with you in advance of that date to determine what action may be appropriate in these circumstances.

Your consideration of this request is appreciated.

              Very truly yours,
              LIPPERT, HUMPHREYS, CAMPBELL,
              DUST & HUMPHREYS, P.C.

              A.T. LIPPERT, JR.

ATL:kkp