Darryl S. Laddin (DL-5130)
Sean C. Kulka (Ga. Bar No. 648919)
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia 30363-1031
(404) 873-8500

Attorneys for Verizon Services Corp.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
In re                                                          :    Chapter 11
                                                               :
DELPHI CORPORATION, et al.,                                    :    Case No. 05-44481 (rdd)
                                                               :
                        Debtors.                               :    (Jointly Administered)
---------------------------------------------------------------X

**OBJECTION OF VERIZON SERVICES CORP. TO ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS IN CONNECTION WITH
MOTION OF DEBTORS FOR AN ORDER AUTHORIZING AND
APPROVING (I) SALE OF CERTAIN OF THE DEBTORS'
ASSETS COMPRISING SUBSTANTIALLY ALL ASSETS OF
MOBILEARIA, INC. FREE AND CLEAR OF LIENS,
CLAIMS AND ENCUMBRANCES, (II) ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES**

Verizon Services Corp. ("Verizon") hereby submits this Objection to the proposed assumption and assignment of its contracts with MobileAria, Inc. ("MobileAria"), in connection with the Motion of Delphi Corporation and its affiliated debtors (the "Debtors") for approval of the sale of MobileAria's assets and assumption and assignment of contracts (the "Motion"). In support of its Objection, Verizon respectfully states as follows.

**INTRODUCTION**

1.    The Debtors seek to assume MobileAria's contracts with Verizon and assign them to @Road, Inc. ("@Road") pursuant to section 365 of the Bankruptcy Code. However, as set

2001141v4

forth in greater detail below, the Debtors cannot comply with section 365 because of numerous, material monetary and non-monetary defaults which have been ongoing, remain unresolved and have already resulted in over $450,000 in damages to Verizon since January 2006. Many of these defaults are non-monetary, are "historical facts" and, therefore, are incurable. Even if the defaults were somehow curable and MobileAria were to compensate Verizon for the $450,000 in damages, the Debtors simply cannot provide Verizon with adequate assurance of future performance. Verizon entered into its contract with MobileAria in 2005 specifically because @Road was unable to provide products and services to meet the needs of Verizon relating to the global positioning (GPS) units installed in Verizon's 10,000-plus fleet of trucks. There is no evidence indicating that @Road will be able to resolve its prior difficulties in providing products and services to Verizon, or that it will be able to solve the multitude of issues and defaults under the GPS Agreement (as defined below) or otherwise comply with the terms of the GPS Agreement. For these reasons, as set forth in more detail below, Verizon respectfully requests that the Court deny the Debtors' motion to assume and assign MobileAria's contracts with Verizon.

## BACKGROUND

2. As set forth in the Motion, MobileAria is a provider of mobile resource management solutions. On October 14, 2005, MobileAria filed its voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. On or about June 6, 2006, the Debtors filed their Motion, seeking approval for the sale of MobileAria's assets to a purchaser to be determined after an auction, and for the assumption and assignment to the purchaser of executory contracts between MobileAria and third parties.

4. On or about July 7, 2006, the Debtors held an auction for MobileAria's assets and, on information and belief, @Road was the successful bidder.

5. On or about July 11, 2006, counsel for the Debtors forwarded to counsel for Verizon a Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease dated July 7, 2006 (the "Notice") identifying that certain Agreement for GPS System and Services between Verizon and MobileAria dated May 15, 2005, and identified as Agreement Number C0505851 (the "GPS Agreement"), as one of the contracts to be assigned to @Road. The Notice also identified that certain Three-Party Escrow Service Agreement, effective April 7, 2006 by and between MobileAria, the Debtors, Verizon and Iron Mountain Intellectual Property Management (the "Software Escrow Agreement"). According to the Notice, "[o]bjections, if any, to the assumption and/or assignment of an Assigned Contract" were required to be served "within ten days after the date of this Notice."

6. Verizon entered into the GPS Agreement with MobileAria in 2005 because MobileAria purported to be a technology leader in next generation mobile resource management solutions designed to maximize mobile workforce productivity. Verizon is one of the largest fleet operators in the United States and, on information and belief, is MobileAria's largest customer. MobileAria has installed 10,600 "Integrated In Vehicle Device" global positioning units (GPS units) compatible with the Verizon Wireless EvDO Network in Verizon fleet vehicles as of July 13, 2006. These GPS units are intended to permit the dispatcher to track the vehicle and efficiently schedule, dispatch and communicate with the driver and for the driver to obtain and update job and facilities related information. Significantly, Verizon had contracted with @Road for the provision of substantially similar products and services prior to entering into the

GPS Agreement with MobileAria, but @Road ultimately was unable to provide products and services to meet the needs of Verizon, which required Verizon to find an alternative supplier.[1]

7.  The GPS Agreement is an extensive, detailed agreement that contains very specific performance criteria and obligations that MobileAria, as the supplier, must meet. These detailed criteria and obligations include those relating to provisioning, de-provisioning, installation, maintenance, support, features, functionality, innovation, specific personnel who must be employed by MobileAria, record keeping and reporting, billing and other areas. Because of the critical nature of the product and need for quality in all of these areas, MobileAria specifically acknowledged in the GPS Agreement that "it recognizes that the Product and Services which are to be provided under this Agreement are vital to Customer and must be delivered and installed without interruption, delay, cessation or limitation and in full compliance with the scheduled developmental dates, and requirements set forth in the Order(s), and perform in full compliance with the Specifications…." (GPS Agreement, § 18(1); see also, e.g., GPS Agreement, Exh. H, entitled Quality Standards, Procedures and Complaints.)

8.  The GPS Agreement also contains a section that requires Verizon only to pay the undisputed portion of any invoice, expressly permits Verizon to set off any amount MobileAria owes it against amounts payable by Verizon, and provides that Verizon is not obligated to pay for any services "that are not invoiced as required by this Agreement." (GPS Agreement, § (b).)

9.  Importantly, while the GPS Agreement contains a five-year term, it is terminable without cause on 180 days' notice (GPS Agreement, §41(i)(a)), is non-exclusive and does not require Verizon to purchase any products or services from MobileAria. In particular, section 4(b) provides:

---

[1] A description of @Road's failures is set forth in paragraph 14 below.

> (b) <u>No Requirements</u>.  This Agreement is nonexclusive and shall not be construed to require Customer to purchase any specific amount of Product or Service from Supplier, or to require Customer to sell any, all or a portion of Product or Services it orders, or restrict the purchase, and distribution to Product and/or Service to any geographic area.  This is an "as ordered" document.  In order for Supplier to ensure that sufficient inventory is available to fulfill Orders, Customer will provide Supplier with non-binding, written twelve (12) month rolling forecasts of Products and Services by the first day of each calendar month.  Such forecasts shall be mutually updated by both parties as frequently as required.

(GPS Agreement, § 4(b).)  Moreover, the GPS Agreement also provides that "[t]his Agreement does not by itself order any Product or Service."  (GPS Agreement, § 4(c).)  Products or services are ordered only under separate purchase orders.  (GPS Agreement, § 4(c).)

10.     Unfortunately, MobileAria has failed to comply with many requirements of the GPS Agreement and its overall performance has been less than sub-par.  Briefly, the problems include, among other things, (i) significant failures in the product installation process (resulting in prolonged unavailability), (ii) inaccurate and inconsistent reporting of installed units, (iii) the failure to timely repair defective units (causing extended service outages), (iv) the failure to provide sufficiently trained support personnel, (v) activation of units on the wrong data plans (resulting in substantial charges that would not have been incurred but for the errors), (vi) the failure to deactivate uninstalled units (again, resulting in substantial charges that would not have been incurred but for the errors), and (vii) the failure to implement accurate and required billing software (resulting in inaccurate bills, including double-billing).  In short, these problems have been ongoing, remain unresolved and have resulted in at least $450,000 in damages to Verizon.

11.     Verizon has been having discussions with MobileAria and @Road regarding the foregoing issues and is hopeful that a resolution will be reached.  However, as of the filing of this Objection, none has been reached.  Therefore, Verizon files this Objection, objecting to the

assumption and/or assignment of the GPS Agreement (and, consequently, the Software Escrow Agreement, which is ancillary to the GPS Agreement) to @Road.[2]

## LEGAL AUTHORITY AND ARGUMENT

12.     Section 365 of the Bankruptcy Code provides, in pertinent part, that a trustee or debtor in possession may not assume and assign an executory contract or unexpired lease, such as the GPS Agreement, <u>unless</u> the trustee or debtor in possession: (i) cures each and every monetary and non-monetary default existing under the subject agreement or provides adequate assurance that the trustee or debtor in possession will promptly cure such defaults, <u>see</u> 11 U.S.C. § 365(b)(1)(A); and (ii) "provides adequate assurance of future performance by the assignee of such contract or lease," 11 U.S.C. § 365(f)(2)(B).  The Debtors simply cannot satisfy section 365 for multiple reasons.[3]

13.     <u>First</u>, as set forth in the Background section above, MobileAria has woefully failed to perform under the terms of the GPS Agreement.  The defaults are material, have been ongoing, remain unresolved and have resulted in over $450,000 in damages to Verizon.  Many of these defaults are non-monetary, are "historical facts" and, therefore, are incurable.  <u>See</u> <u>In re Claremont Acquisition Corp.</u>, 113 F.3d 1029, 1033-34 (9th Cir. 1997) (concluding that section 365(b)(2)(D) of the Bankruptcy Code does not relieve a debtor of its obligation to cure non-monetary defaults, and therefore finding that the debtor could not assume and assign its automobile dealer franchise agreement as a result of a historical non-monetary default); <u>In re New Breed Realty Enterprises, Inc.</u>, 278 B.R. 314, 320-21 (Bankr. E.D.N.Y. 2002) (adopting the

---

[2]   Separately, and regardless of whether the Court permits the assignment of the GPS Agreement, and although no notice is required by section 4(b) of the GPS Agreement, Verizon hereby gives notice that Verizon may exercise its rights consistent with sections 4(b) and 41(i)(a) to materially reduce or eliminate the amount of business conducted pursuant to the GPS Agreement if it is assigned to @Road, and/or to terminate it within 180 days after assignment to @Road.

primary holding in Claremont, concluding that a debtor is obligated to cure a non-monetary default if such default is "material" or if the default caused "substantial economic detriment," and prohibiting assignment of executory contract).[4]

14.  Second, even if the defaults were somehow curable, the Debtors simply cannot show adequate assurance of future performance. Verizon entered into its contract with MobileAria in 2005 specifically because @Road was unable to provide products and services to meet the needs of Verizon. Briefly, among other things, @Road: (i) lacked the qualified personnel necessary to handle the Verizon account, (ii) was unable to meet the technological demands of the GPS connection, and to provide products and services technologically compatible with ubiquitous wireless networks, (iii) failed to timely monitor units, (iv) failed to timely repair defective units, (v) failed to use the proper software for the units, and (vi) failed to design the proper hardware for the Verizon vehicles, all of which caused a multitude of problems, including extended, widespread service outages and inaccurate data. Nothing Verizon has learned to date indicates that @Road suddenly will be able to resolve the prior difficulties it had in providing products and services to Verizon, or will be able to solve the multitude of issues

---

[3]  The Debtors carry the burden of proof under section 365. If they cannot satisfy all of the requirements of section 365, they cannot assume and/or assign any contracts. See Luce Indus., Inc., 14 B.R. 529 (S.D.N.Y. 1981).

[4]  There is a split of authority among courts as to whether Section 365(b)(2)(D) of the Bankruptcy Code was intended to provide a limited exception with respect to penalty provisions relating to a debtor's failure to perform non-monetary obligations, or a catch-all exception excusing the debtor from curing all non-monetary defaults. Compare In re Claremont Acquisition Corp., 113 F.3d 1029, 1033-34 (9th Cir. 1997) (holding that Section 365(b)(2)(D) prohibits the imposition of a "penalty" for a debtor's failure to perform a non-monetary obligation, and was not intended to function as a catch-all provision excusing a debtor from curing non-monetary obligations), with In re BankVest Capital Corp., 360 F.3d 291, 300-302 (1st Cir. 2004) (holding that Section 365(b)(2)(D) of the Bankruptcy Code excuses the debtor from curing non-monetary defaults; the court concluded that the debtor could assume the subject lease notwithstanding the existence of an uncurable non-monetary default). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 365(b)(1)(A) to overrule the result in Claremont, but only narrowly as the amendment only applies to real property leases. Although this amendment is not controlling in these bankruptcy cases, it reflects the intent of Congress, and demonstrates that Congress endorsed the holding in Claremont (outside the context of real property leases), that Section 365(b)(2)(D) was not intended to create a catch-all exception, and that Section 365(b)(2)(D), in its pre- 2005 Act form applicable to these cases, only modifies a debtor in possession or trustee's obligation to cure non-monetary defaults that reflect the payment of

and defaults under the GPS Agreement or otherwise comply with the exacting terms of the GPS Agreement. Indeed, Verizon has been working with MobileAria virtually since the inception of the GPS Agreement to resolve MobileAria's many defaults, and not even MobileAria has been able to remedy the situation. Moreover, while @Road apparently intends to make offers to hire certain personnel of MobileAria, @Road has not made a firm commitment to employ the key six or seven persons who would be necessary for @Road to provide service under the GPS Agreement and who @Road would be required to employ under the terms of the GPS Agreement.

15.    <u>Finally</u>, even if the Debtors could scale the foregoing hurdles (which they cannot), to assign the GPS Agreement to @Road the Debtors would be required to promptly pay the in excess of $450,000 in postpetition damages caused by the Debtors.[5]

---

penalty rates or penalty provisions. As a result, the cure of non-monetary defaults is required as a condition to assumption and assignment.

[5] The Debtors might contend that there was a separate Notice of Cure which they served, which contained an objection deadline for cure that was earlier than July 17, 2006. There are multiple reasons why such an argument would fail. <u>First</u>, that Notice related only to prepetition cure amounts, and the amounts owing to Verizon are for postpetition damages. <u>Second</u>, that supposed cure Notice (which Verizon never received) was a form notice containing form language as to "the amount MobileAria's records reflect is owing for prepetition arrearages" and stating that "other than the Cure Amount, there are no other defaults under the Assigned Contract." Verizon's damages are not traditional "prepetition arrearages" that would exist if Verizon was the supplier rather than the customer. This must have been MobileAria's interpretation when it drafted a cure notice with a zero dollar amount because, given the close communications between Verizon and MobileAria personnel regarding the GPS Agreement and all of the issues thereunder, the Debtors could not possibly in good faith have asserted that no amounts were owing to Verizon and there were no defaults. <u>Third</u>, the separate Notice of Assumption and/or Assignment permits "any" "objections to the assumption and/or assignment of an Assigned Contract" to be raised; assumption and assignment is governed by section 365 and, therefore, "any" such objections would, of course, include a cure objection. <u>Fourth</u>, such an argument by the Debtors would violate due process. Any proceeding to assume or assign a contract is governed by Rule 9014. <u>See</u> Fed. R. Bankr. P. 6006(a). Rule 9014, in turn, provides that "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." The protection afforded to creditors and to parties to assigned and/or assumed contracts is high, and the results of non-observance of those protections are correspondingly severe. Courts have held that failure to give proper notice violates due process, and results in a sale voidable at the option of the objecting party. <u>See</u> <u>In re F.A. Potts & Co.</u>, 86 B.R. 853, 859 (Bankr. E.D.Pa.), <u>aff'd</u>, 93 B.R. 62 (E.D.Pa. 1988), <u>aff'd</u>, 891 F.2d 280 (3d Cir. 1989); <u>In re Grand Union Co.</u>, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (due process requires notice that affords interested parties an opportunity to present their objections). Here, Verizon never received the supposed cure Notice. Moreover, as mentioned above, the Notice of Assumption and/or Assignment led one to believe that all objections to assumption and/or assignment could be raised by July 17.

2001141v4                                                                                          8

## MEMORANDUM OF LAW

16. Verizon respectfully submits that this Objection does not present a novel issue of law, and is supported by citations to authority. Therefore, Verizon respectfully requests that the Court waive the requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules requiring that a response be accompanied by a memorandum of law.

WHEREFORE, for the foregoing reasons, Verizon respectfully requests that its Objection be sustained, that the Debtors' request for authority to assume and assign MobileAria's contracts with Verizon be denied, and that the Court grant Verizon such other and further relief as may be just and proper.

This 17th day of July, 2006.

        Respectfully submitted,

        ARNALL GOLDEN GREGORY LLP

        By: /s/Darryl S. Laddin
            Darryl S. Laddin (DL-5130)
            Sean C. Kulka (Ga. Bar. No. 648919)
        171 17th Street, NW, Suite 2100
        Atlanta, Georgia  30363
        404) 873-8500

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2006, I served the foregoing document by causing a true and correct copy to be sent by facsimile and to be deposited in the United States Mail, first class postage prepaid, addressed as follows:

Carren Shulman, Esq.
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY  10036
Fax No. (212) 703-8993

MobileAria, Inc.
Attn.: Richard Lind
800 West El Camino Real
Suite 240
Mountain View, CA  94040
Fax No. (650) 937-1078

Kenneth S. Ziman, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017
Fax No. (212) 455-2502

John W. Butler, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL  60606
Fax No. (312) 407-0411

Sean Corcoran, Esq.
General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098
Fax No. (248) 813-2670

Donald Bernstein, Esq.
Brian Resnick, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017
Fax No. (212) 450-3092

Gregg S. Kleiner, Esq.
Cooley Godward LLP
101 California Street, 5th Floor
San Francisco, CA  94114
Fax No. (415) 693-2222

Bonnie Steingart, Esq.
Official Committee of Equity Security Holders
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY  10004
Fax No. (212) 859-4000

Alicia M. Leonhard, Esq.
Office of the U.S. Trustee
Southern District of New York
33 Whitehall Street, Suite 2100
New York, NY  10004
Fax No. (212) 668-2255

Robert J. Rosenberg, Esq.
Mark A. Broude, Esq.
Official Committee of Unsecured Creditors
Latham & Watkins LLP
885 Third Avenue
New York, NY  10022
Fax No. (212) 751-4864

Dated:  July 17, 2006

/s/Darryl S. Laddin
Darryl S. Laddin

2001141v4