TISDALE & ASSOCIATES LLC  
Douglas M. Tisdale, Esq.  
Steven A. Klenda, Esq.  
1600 Broadway, Suite 2600  
Denver, CO  80202-4989  
(303) 832-1800  

Hearing Date:  July 19, 2006  
Hearing Time: 10:00 a.m.

Counsel for NuTech Plastics Engineering, Inc.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 11 |
|---|---|
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) (Jointly Administered) |
| Debtors. | |

### NuTech's Reply in Support of its Motion for Relief from the Automatic Stay

To support its Motion for Relief from the Automatic Stay, NuTech Plastics Engineering, Inc. ("**NuTech**"), replies to Debtor as follows:

1.   NuTech has shown ample cause for lifting the automatic stay so that its prepetition breach-of-contract claim against Debtor may continue.  Debtor does not contest that: (a) NuTech's case is ready for trial; (b) trying NuTech's case would completely resolve the issues between Debtor and NuTech; and (c) trial will expeditiously and economically resolve NuTech's case.  Debtor's Objection neglected to address the latter two factors.  Objection, 10, ¶ 15 (omitting these from list of applicable *Sonnax* factors).

2.   NuTech waited a suitable time before filing this Motion, and Debtor complains.  It is a Catch 22 for NuTech:  according Debtor some Congressionally-mandated "breathing room" to get its case in order is now used against NuTech, allegedly establishing

lack of prejudice to NuTech.  But if NuTech had moved for stay relief at the outset, Debtor would have condemned NuTech for failing to provide "breathing room."  Debtor's argument begs the question: when can a party ever seek relief from stay?  Debtor's Catch 22 approach would ignore the prejudice factor and defeat every motion for relief as either being too early or too late.  Neither Congress nor *Sonnax* intended to make relief-from stay impossible.  That is why the applicable *Sonnax* factor regarding prejudice is framed in terms of whether lifting the stay would "prejudice the interests of other creditors," not whether the movant would be prejudiced by delaying trial.

3.     Debtor does not show how allowing NuTech's case to continue would prejudice other creditors.   NuTech seeks only to liquidate its claim, not to get a leg-up on other creditors as to payment.  Let the record be clear: NuTech agrees with Debtor that NuTech's relief should be limited to liquidating its claim to judgment, so that the liquidated claim can be administered under Debtor's Plan.

4.     NuTech concedes that a claims-allowance proceeding is facially a core function of the Bankruptcy Court to which mandatory abstention does not apply.  But this does not change *Burger Boys'* conclusion that allowing a pre-petition, state-court, breach-of-contract action that was ready for – and on the virtual eve of – trial when debtor filed its petition to proceed does not interfere with a debtor's bankruptcy proceeding.  Although the bankruptcy court in *Burger Boys* couched its analysis in terms of mandatory abstention, the district court found that the bankruptcy court had "essentially decided that litigation of the issues in another forum would not interfere with the bankruptcy proceeding."  *In re Burger Boys, Inc.*, 138 B.R. 682, 688 (S.D.N.Y. 1994).  This conclusion accords with *Marathon's*

holding that "a pre-petition, state law breach of contract action -- definitely constituted a noncore proceeding." *Id.* at 685 (characterizing *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). *See also Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 52 (1989) ("[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity....")

5.    Perhaps a more pertinent abstention analysis is framed by considering the principles of permissive abstention. In considering whether NuTech's case will interfere with Debtor's bankruptcy case, permissive abstention from any claims-allowance proceeding involving NuTech would be appropriate because: (1) state-law contract issues predominate; (2) a non-bankruptcy, state-law proceeding to decide these issues was commenced prepetition; (3) a bankruptcy court would not have jurisdiction over these issues apart from Debtor's bankruptcy filing; (4) NuTech's case is remote from the central issues in Debtor's reorganization efforts, which involve labor, pension and related issues; (5) while NuTech's claims may present themselves to this Court in the form of Debtor's objection to NuTech's proof of claim, NuTech's claims are, substantively, state-law breach-of-contract claims; (6) a non-Debtor-party, General Motors, is present in NuTech's case; (7) NuTech has not forum shopped; and (8) the burden on this Court's docket would be relieved by allowing the Michigan state court to hear NuTech's case. *See, e.g., In re Twin Laboratories, Inc.*, 300 B.R. 836, 841 (S.D.N.Y 2003) (listing permissive abstention factors). The principle of comity would also be served by allowing the Michigan state court to resolve the state-law contract issues between Debtor and NuTech.

3

6.      The answer to Debtor's question of why NuTech's claim should not be administered through a claims-adjustment process like "all other similarly situated claims" is simple.  NuTech's pre-petition claim is not an ordinary claim: it is a highly contested claim that was ready for trial when Debtor filed its petition.  A suitable, cost-effective and efficient non-bankruptcy forum exists to timely liquidate NuTech's claim: the Michigan state court.  Using this forum will allow all of NuTech's claims — including NuTech's claim against General Motors — to be swiftly decided in the forum that was ready to try them before Debtor filed its petition.

7.      Far from failing (or, as Debtor asserts, being unable) to show cause for the lifting of the stay, NuTech has shown that at least five of the *Sonnax* factors favor lifting stay.  Lifting the automatic stay will completely resolve the issues in the NuTech case [factor 1], not interfere with NuTech's bankruptcy case [factor 2], not prejudice other creditors [factor 7], expeditiously and economically resolve litigation [factor 10], and, most compellingly, NuTech's case was and is ready for trial [factor 11].

8.      In contrast to NuTech's demonstration of cause to lift the stay, Debtor has offered nothing that shows how NuTech's case — the only case that is relevant to the motion before the Court — will negatively affect the purpose of the automatic stay.

9.      Allowing NuTech's case to proceed will not result in a piecemeal scramble for Debtor's assets.  Again, NuTech seeks relief only to liquidate its claim so that such liquidated claim can be administered in the context of this case.  Nor will allowing NuTech's case to proceed hinder Debtor's reorganization.  Debtor identifies only two potential 'NuTech-

4

specific' effects of lifting the stay: the costs of defending NuTech's case and the alleged diversion of Debtor's attention.

10. Regarding 'costs,' the "increased costs of litigating in a particular forum are not so prejudicial as to require continuance of a stay." *In re Burger Boys, Inc.*, 138 B.R. 682, 688 (S.D.N.Y. 1994). As important as this case is to NuTech, it is beyond cavil that this claim is a very small piece of Debtor's reorganization. A four or five day jury trial in Genesee County Circuit Court on a breach of contract action is neither a major nor a costly proceeding in the context of the billions of dollars at stake to Debtor in this court. And Debtor would undoubtedly have to incur these costs anyway as part of its "anticipated objection to NuTech's Proof of Claim." Objection, p. 14-15, ¶ 25. Any limited financial effect of NuTech's assertion of a claim is not so prejudicial as to require continuance of the stay. NuTech's claim will remain whether the stay is lifted or not. If relief from stay is to be denied merely because a creditor has asserted a claim, then the automatic stay would never be lifted.

11. Regarding 'diversion,' Debtor does not explain how allowing NuTech's case to continue would materially divert Debtor's attention from its reorganization efforts. It does not contest that discovery is complete and that Debtor's defense will be handled by counsel other than NuTech's bankruptcy counsel. The closest thing to a specific distraction that Debtor identifies is that its in-house attorneys "were involved in this suit." Objection, 5, ¶ 8. Past involvement by in-house counsel does not support a claim of future distraction from Debtor's reorganization.

5

12.   Instead of providing any argument or evidence that shows how lifting the stay would concretely hinder Debtor's reorganization, Debtor provides an extended update on the status and anticipated course of its reorganization efforts. NuTech is impressed by – and applauds – the many important and weighty matters that Debtor is addressing in its reorganization, which NuTech supports. But, standing alone, the mere existence and projected progress of a reorganization does not justify denying relief from stay. To balance — as Congress intended — the interests of NuTech with that of Debtor in deciding whether to lift the stay, Debtor must show not that it has many important things to do, but that lifting the stay here would actually and substantively — rather than hypothetically — hinder Debtor's ability to do them. *See In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 206 (3rd Cir. 1995) (Automatic stay provision allowing court to grant relief from automatic stay for cause, or if debtor does not have equity in property and property is not necessary to effective reorganization, is intended to balance interests of creditors and debtor); *In re 360 Networks (USA) Inc.*, 282 B.R. 756, 764 (Bankr. S.D.N.Y. 2001) ("Any decision on a motion for relief from the stay includes a balancing of the harm to the debtor against the harm to the creditor from a continuation of the stay."); *In re Colin, Hochstin Co.*, 41 B.R. 322, 325 (Bankr. S.D.N.Y. 1984) (Automatic stay is not to remain in place indefinitely and may be vacated or modified for cause when the balance of competing interests shifts). Debtor has made no such showing. Thus, even the *Sonnax* factors that Debtor stresses – the balance of harms and the alleged interference with Debtor's reorganization efforts – favor NuTech.

13.   Debtor's argument that lifting the stay as to NuTech case will open the lift-stay floodgates illustrates Debtor's tactic of aggregating hypothetical actions by third-parties

6

into an asserted effect that justifies denying relief from stay here. Debtor will remain exposed to other lift-stay motions from litigants regardless of whether the court lifts the stay for NuTech: the Bankruptcy Code gives *each* creditor this right, and *each* creditor must demonstrate that the *Sonnax* factors run in its favor. Congress intended lift-stay decisions to depend on the unique facts of each case, rather than on a preemptive categorical denial based on the potential future assertion of lift-stay rights by third parties. Each creditor who seeks relief is entitled to an individualized determination of its motion based on its unique facts, rather than having it denied on the basis that it might encourage future lift-stay motions. H.R.Rep. No. 595, 95th Cong., 2d Sess. 343-44, *reprinted in* 1978 U.S.C.C.A.N, 5787, 6300 ("The facts of *each* request will determine whether relief is appropriate under the circumstances.") (emphasis added). In making this individualized determination, Congress stated that the single factor of "a desire to permit an action to proceed to completion in another tribunal" could merit relief. *Id.*

14.     Even taking Debtor's "lift-stay floodgate" argument at face value, Debtor's failure to make any distinction between lawsuits that are "active," rather than threatened, and prepetition rather than postpetition, suggests that Debtor's exposure to lift-stay motions to continue prepetition litigation is substantially less than the 200 "active or threatened" lawsuits that Debtor invokes. Of these, the only litigants who might be encouraged by lifting stay for NuTech would be those whose cases were ready for trial on Debtor's petition date. Debtor has shown nothing to indicate that the number of suits in this category exceeds one: NuTech's suit.

15.     As Debtor's Objection shows, Debtor has had sufficient breathing room to allow it to adopt and successfully begin to implement a comprehensive reorganization strategy.  But Debtor wants more than the "breathing room" that the stay legitimately provides.  It has announced that no "breathing room" will be enough.  Debtor "intends to vigorously object to any Claimant's request to seek relief from the automatic stay to proceed with litigation in another forum," so that claimants may not be able to liquidate claims until after Debtor successfully reorganizes.  Lift-Stay Procedures Mot. (Doc. 4038), ¶ 31.  Rote and vigorous objecting might make sense if a case is at an early stage, where savings might be realized by avoiding discovery and exploring settlement.  But Congress did not intend the automatic stay to wrap Debtor in an impenetrable litigation cocoon until Debtor confirms a plan.  By providing lift-stay procedures, Congress intended — as *Sonnax* reflects — to balance the interests of creditors and debtors.

16.     Although *Sonnax* approved the Bankruptcy Court's application of the *Curtis* factors, the Second Circuit expressly did not adopt the Bankruptcy Court's formulation that an unsecured creditor must show "extraordinary circumstances" to continue prepetition litigation.  This phrase might summarize a court's application of the *Sonnax* factors in a particular case.  But any such per-se rule, especially one that erects such a high hurdle for relief, is incompatible with the individualized, multi-factor lift-stay test that *Sonnax* adopted.

17.     In NuTech's case, which was ready for trial when Debtor filed its petition, discovery has been completed and settlement possibilities exhausted long-ago.  Trial is a discrete and defined legal proceeding, much like the appeals that this Court has recently allowed to proceed.  E.g. Doc. 4409 "Automotive Technologies Lift Stay Order"; 4370

8

"Palmer Lift Stay Order." Debtor has shown no concrete and discernable effect on Debtor's estate that would not otherwise exist. Debtor will face and have to defend NuTech's claim in any event, and the case for allowing the Michigan state-court to liquidate NuTech's claims — that involve a contractual breach that occurred in 1999 — now, while the trial preparations are still fresh, instead of repeating these procedures in another forum later, is compelling.

FOR THESE REASONS, this Court should: (a) lift the automatic stay to allow NuTech's pre-petition breach-of-contract case against Debtor to continue so that NuTech can liquidate its claim against Debtor, subject to any such liquidated claim being administered under this case; (b) lift the automatic stay with respect to NuTech's case against Debtor's co-defendant, General Motors, and grant NuTech all such other and further relief as is just, proper or appropriate in these premises.

Dated at Denver, Colorado this 18th day of July 2006.

        Respectfully submitted,

        TISDALE & ASSOCIATES LLC

           s/ Steven A. Klenda
        Douglas M. Tisdale, Esq.
        Steven A. Klenda, Esq.

        Attorneys for Movant,
        NuTech Plastics Engineering, Inc.