SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan, III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :
        In re                            :        Chapter 11
                                         :
DELPHI CORPORATION, et al.,              :        Case No. 05-44481 (RDD)
                                         :
                        Debtors.         :        (Jointly Administered)
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS AND RESPONSE TO SUPPLEMENT
TO KECP MOTION (DOCKET NO. 213) SEEKING AUTHORITY TO:  (A) FIX SECOND
HALF 2006 AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER
ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this omnibus response to the objections filed by the International Union of

Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of

America ("IUE-CWA") (Docket No. 4524), the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers, International Union ("USW")

(Docket No. 4526), the International Brotherhood of Electrical Workers Local Union No. 663

("IBEW"), the International Association of Machinists and Aerospace Workers, Tool and Die

Makers Local Lodge 78, District 10 ("IAM"), and the International Union of Operating

Engineers, Locals 18S, 101S, and 832S ("IUOE") (Docket Nos. 4529-4531), and the

International Union, United Automobile, Aerospace, and Agricultural Implement Workers of

America ("UAW") (Docket No. 4556), and the response filed by the Teachers' Retirement

System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen

Kapitalange-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP (collectively, "Lead

Plaintiffs") (Docket No. 4528) to the Debtors' Supplement To KECP Motion (Docket No. 213)

Seeking Authority To:  (A) Fix Second Half 2006 AIP Targets And Continue AIP Program And

(B) Further Adjourn KECP Emergence Incentive Program Hearing (Docket No. 4419) (the

"Supplement").

<u>Background</u>

1.      On June 29, 2006, the Debtors filed a Supplement to the KECP Motion

seeking the authority to continue for an additional six-month period the short-term annual

incentive program ("AIP") approved by the Court in its Order Under 11 U.S.C. §§ 105 And 363

Authorizing The Debtors To Implement A Short-Term Annual Incentive Program ("AIP Order")

(Docket No. 2441).[1]  The AIP for the second half of 2006 would be governed by the terms and conditions set forth in the AIP Order, and would incorporate new performance targets and payout curves (based on the Debtors' second-half operating plan) adopted by Delphi's Board of Directors and agreed to by the Official Committee of Unsecured Creditors (the "Creditors' Committee"). The Debtors also requested the authority to continue the AIP for additional six-month periods after December 31, 2006, subject to the Debtors' ability to reach an agreement on performance targets and payout curves with the Creditors' Committee, whose compensation consultant and financial advisors have played an active role in developing and reviewing targets and curves, or further order of this Court.

2.    After the Debtors' filed the Supplement, the Debtors and their advisors continued their ongoing dialogue with the Creditors' Committee and its advisors regarding the elements of the AIP.  As a result of those constructive discussions, the Debtors and the Creditors' Committee have agreed on the form of Supplemental AIP Order that is attached to this omnibus response as Exhibit A.  Generally speaking, the Debtors and the Creditors Committee have confirmed that Delphi's EBITDAR-UG for the AIP corporate-wide target will include adjustments for the net savings realized during the performance period from comprehensive transformation agreements reached with the Debtors' labor unions, as well as the cost of implementing hourly attrition programs and the benefit of paying lower net wages to employees who replace workers who voluntary attrite under those programs realized during the performance period.  In addition, following the completion of the performance period and in connection with

---

[1]    The IUE-CWA incorrectly asserts that, after the Court issued the AIP Order, the Debtors extended the AIP to their non-executive salaried employees.  (IUE-CWA Objection (Docket No. 4524) at 2.)  The Debtors' Omnibus Response To Objections To Their Motion For Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 2210) (the "First KECP Omnibus Response"), dated February 8, 2006, disclosed that the Debtors had already

*(cont'd)*

3

its review of the Debtors' actual financial results for the performance period, the Creditors'
Committee may require that the Debtors' make further adjustments to EBITDAR-UG by up to an
aggregate of $100 million based on net savings realized by the Debtors on account of
transformation actions not contemplated by the forecasts used by the Debtors to establish the
EBITDAR-UG target of negative $411 million.

3.      Unlike the contested hearing with respect to the Court's approval of the
AIP Order, the Creditors' Committee supports the Court's entry of the new proposed
Supplemental AIP Order and no objections to the relief sought in the Supplement have been filed
by either of the Debtors' principal lending groups or by either of the Official Committee of
Equity Security Holders nor the Ad Hoc Equity Committee organized by Appaloosa
Management L.P.   Indeed, no interested party has filed an objection to the relief sought in the
Supplement other than the Debtors' six unions representing hourly workers in the domestic U.S.
portion of Delphi's business operations and the Lead Plaintiffs.

4.      The objections to the Supplement fall into three main categories.[2]  First,
the union objectors maintain that implementing additional AIPs will complicate negotiations
between the Debtors and the unions because the Debtors' executives are not sharing in the
sacrifice being asked of union members.  The union objectors also attack the performance targets
for the second-half AIP, characterizing them as a "lay-up" or "slam dunk."  Third, several unions
and Lead Plaintiffs take issue with the Debtors' request for authority to implement AIPs beyond
December 31, 2006.  In addition to these three objections, Lead Plaintiffs ask the Court to ensure

_____

*(cont'd from previous page)*
        implemented incentive programs for their non-executive salaried workforce in the ordinary course of
        business.  (First KECP Omnibus Resp. (Docket No. 2210) at 2 n.3.)

[2]     A chart summarizing the objections and Lead Plaintiffs' response to the Supplement is attached hereto as
        <u>Exhibit B</u>.

that the prophylactic measures outlined in the AIP Order apply to any additional AIP

implemented by the Debtors (which objection is moot since the form of proposed Supplemental

AIP Order has always continued the prophylactic measures outlined in the AIP Order) .  The

Debtors respond to each of these objections in greater detail below.

5.       As the evidence demonstrated at the contested hearing on the AIP Order,

the at-risk compensation opportunities provided by the AIP are an essential component of the

Debtors' efforts to restore their executive compensation program to competitive levels.  The

Debtors' prepetition executive compensation program consisted of four principal elements—

annual salary, benefits, a short-term incentive compensation program in the form of an AIP, and

a long-term incentive compensation program that provided the opportunity for stock options,

restricted stock, and cash incentive payments.  When the Debtors commenced their chapter 11

business reorganization cases in October 2005, the short- and long-term incentive compensation

programs were essentially eliminated, leaving in place only salary and benefits, which together

accounted for less than half of the total compensation opportunities available to executives

prepetition.

6.       Also as the evidence demonstrated at the contested hearing on the AIP

Order, an executive compensation program limited to salary and benefits is not competitive with

the practices of the Debtors' peers.  Indeed, the Debtors presented undisputed evidence at the

prior AIP hearing that virtually all Fortune 1000 companies have an annual or short-term

incentive program, as do virtually all public companies in the automotive supply industry.  It is

also undisputed that the terms and conditions of the AIP proposed by the Debtors are well within

the range of competitive practice as compared to short-term incentive programs offered by the

Debtors' peers.  As noted by the Court at the hearing on the first-half AIP:

5

I think that this is more than a simple human resources matter. That is not to say, however, that this is a particularly extraordinary matter. It is—it has been an element of executive compensation generally in the marketplace and, in particular, until the period immediately preceding the debtors' chapter 11 filing, an element of the executive compensation for these particular executives.

. . . .

There was no meaningful evidence to contradict, for example, that the current arrangement, which for the post-petition period does not have any annual incentive element for compensation, is not competitive and that it, in fact, puts the debtor in the bottom quarter in respect of executive compensation with regard to its competitors.

(Hr'g Tr., Feb. 10, 2006 (Docket No. 3414) at 240, 243.)

7.      In the Supplement, the Debtors also asked the Court to adjourn until the

October 2006 omnibus hearing the segment of the KECP Motion addressing the emergence

bonus plan, which was designed to replace a portion of the compensation opportunities available

under the Debtors' prepetition long-term incentive program. The Debtors did not receive any

objections to their request for such an adjournment. Accordingly, the hearing on the Supplement

scheduled for July 19, 2006 will be limited to the AIP.

8.      The Debtors' legitimate and reasonable business imperative to move

towards a fully competitive compensation program for their executives provides ample

justification for allowing the Debtors to continue the AIP for additional six-month periods. In

addition, the Debtors' financial performance during the first half of 2006 provides additional

justification for continuation of the AIP program. Although the Debtors have not finalized their

financial results for the first six months of this year, they currently expect that Delphi's operating

income will exceed planned levels by approximately $600 million, thereby reducing the expected

loss for the fiscal year from approximately $2.6 billion to $2 billion. At this level of financial

performance, the maximum payout available under the AIP for the first half of the year will be

approximately $36.3 million, or just over 6% of the value added to the Debtors' estates, creditors,

6

and other stakeholders during that period (i.e., in this case, reduction of anticipated losses by $600 million). The Debtors' financial performance was the result of many factors, among them the Company's exceptional operational performance, which was led by the Debtors' executive team and was achieved despite the Debtors' involvement in one of the largest and most complex manufacturing reorganizations in history.

9.     Rather than appreciate this remarkable performance, the union objectors contend that the performance targets under the first-half AIP were too low.[3] Contrary to the unions' assertions, which are made without any evidentiary support, the AIP performance targets were drawn from Delphi's budget, which was the product of a rigorous business-planning process. Under that process, the budget for the first half of 2006 was prepared from the bottom up, with each division forecasting its performance on a number of financial and operational metrics. The division-level budgets were then presented to and reviewed by members of Delphi's senior management, as well as by Delphi's Board of Directors.

10.     In addition to the appropriate business judgment and corporate governance process provided by this multi-layer review, there are several reasons why a division would avoid presenting earnings forecasts that are a forgone conclusion. For instance, the company considers these numbers in deciding how to allocate capital and other resources among the divisions and whether the company should expand or contract each division. If a division presents low budget numbers, it may be perceived as a poor performer in relation to other divisions, making it a less attractive candidate to receive corporate resources. These concerns

---

[3]     The IUE-CWA takes this argument a step further, misstating that, "by the time the program was approved in March, 2006 by the Court," the Debtors' executives already knew "that the first half targets would be met." (IUE-CWA Objection (Docket No. 4524) at 9.) In fact, the Court issued the AIP Order approving the program on February 17, 2006. And at the hearing on February 10, 2006, the Court expressly found, based on the undisputed evidence, "that that target has not been met already but that it is something that is, at this point, still an aspiration." (Hr'g Tr. Feb. 10, 2006 (Docket No. 3414) at 245.)

were particularly acute with respect to the budget for the first half of 2006, when the Company

was developing its transformation plan and deciding which product lines and manufacturing sites

would remain part of its core operations.

11.    The performance targets for the second-half AIP are also the result of a

bottom-up business planning process, and have been reviewed and approved by the

Compensation and Executive Development Committee of Delphi's Board of Directors (the

"Compensation Committee") as well as by the Board of Directors.  Although the Debtors have a

reasonable level of confidence that their business targets are achievable, actually meeting the

targets will require the Debtors to continue their excellent performance in the second half of the

year.  The objectors' rhetorical bluster to the contrary has no support.

Responses To Objections

A.    The Unions' Concerns Regarding Shared Sacrifice And Collective Bargaining Do Not
      Defeat The Debtors' Business Judgment To Implement Additional AIPs

12.    The union objectors argue that continuing the AIP is unfair in light of the

Debtors' labor proposals, and that the AIP will impede collective bargaining and could ultimately

derail the Debtors' reorganization by preventing a successful resolution of labor issues.  The

Court overruled this same objection with respect to the first-half AIP, which was heard one week

before the Debtors were scheduled to file their motion under sections 1113 and 1114 of the

Bankruptcy Code, 11 U.S.C. §§ 1113-1114, stating:

> It is very hard to ask someone to make a substantial give-up, when you yourself
> have just received the right to obtain a bonus.  And it, at a minimum, takes at least
> in practical terms, I would think, at least 10 minutes of explaining in any meeting
> where that issue's raised, if someone's willing to listen, why the fate of one, the
> bonus, should not really be tied to the other, and, in fact, that the request for the
> concession is thematically, actually related to the other, in the sense, that they're
> both intended to make the debtor more competitive.  Nevertheless, I believe that
> anyone negotiating in good faith with the debtors, would ultimately have to accept
> that explanation.  And, I think that the debtors' unions, their advisors, and the rank

8

> and file, are, first, smart enough to make the argument, the inevitable argument,
> and, second, smart enough also to understand the debtors' and my response.

(Hr'g Tr., Feb. 10, 2006 (Docket No. 3414) at 249-50.)  The Court also rejected the related

notion, raised again here by some objectors, that the Debtors should wait until some later point to

propose an AIP.  As the Court stated:

> it appears to me that if I did not approve this AIP today, I would be approving it at
> some point, because it is reasonable, and I don't really see a logical reason to defer
> that beyond the inevitable push back that the debtors would receive.  But, they
> would receive that push back inevitably, I believe, at any time.  And it has chosen
> to bring it on now, and based on this record, it's entitled to it.

(Id. at 250-51.)

      13.    The unions' objection has even less force today because the course of

events since the first-half AIP was approved on February 17, 2006 demonstrate that the existence

of an AIP does not preclude the Debtors and the unions from making progress toward the goal of

a consensual resolution of labor issues.  For example:

- On March 22, 2006, the Debtors, the UAW, and GM reached an
  agreement on the UAW Special Attrition Program.

- On June 5, 2006, the Debtors, the UAW, and GM agreed to a supplement
  to the UAW Special Attrition Program.

- Less than one week later, on June 9, 2006, the Debtors agreed to a 60-day
  adjournment of the hearing on their motion under sections 1113 and 1114
  (as well as an adjournment of the hearing on their motion for authority to
  reject certain contracts with GM) in light of the significant progress in its
  discussions with the UAW, the IUE-CWA, the USW, and GM.

- The following week, on June 16, 2006, the Debtors reached an agreement
  with the IUE-CWA and GM on the IUE-CWA Special Attrition Program.

      14.    The IUE-CWA attempts to downplay the significance of the attrition

programs on the ground that, unlike modifications to collective bargaining agreements, the

attrition programs were not subject to ratification by union members.  The IUE-CWA has offered

no support, however, for its implicit contention that union members would have voted the

programs down had they had the chance.  Indeed, the number of eligible employees who voted

with their feet by signing up for the attrition programs strongly suggests that this is not the case.

Moreover, the Debtors believe that the outcome of any ratification vote will depend on the terms

of the proposed modifications and their impact on union members, rather than extraneous

considerations involving the AIP.  As the Court recognized at the hearing on February 10, 2006,

"the fate of one . . . should not really be tied to the other."  (Id. at 250.)

B.    The Debtors Have Proposed Reasonable Performance Targets For The Second-Half AIP

15.    The performance targets for the second-half AIP were drawn from the

Debtors' 3+9 forecast, with some adjustments for the Debtors projections of North American

sales volumes to GM.  Like the performance targets for the first-half AIP, the second-half targets

were the product of a bottom-up approach that involved business planning on a division-by-

division basis.  In addition, the independent directors on the Compensation Committee reviewed

and approved the targets at their meeting on June 27, 2006 and the full Board of Directors

ratified the Compensation Committee's actions at its regular monthly meeting on July 18, 2006.

16.    Several objectors take issue with the fact that the targets for the second-

half AIP are lower than those for the first half.  As explained in the Supplement, however,

historical financial data demonstrate that Delphi's financial performance is seasonal and

customarily declines substantially during the second half of each calendar year (in no small part

as a result of the annual summer industry shutdown and lower productivity related to model

changeover and launches in the second half of the calendar year).  The Debtors have also

explained the business reasons why they expect this phenomenon to recur in 2006, among them

the seasonality of Delphi's business, volume and mix changes, and pricing reductions associated

with the 2007 models produced by original equipment manufacturers.[4]

17.    In short, the Debtors' business judgment is that the performance targets are

set at a reasonable level that will spur the Debtors' executives to overcome the challenges

associated with operating a company in chapter 11 and continue the company's exceptional

performance into the second half of 2006.  The objectors provide conclusory rhetoric that the

targets are too low, but they have not presented any basis for legitimately challenging the

Debtors' business judgment.[5]  Furthermore, increasing the performance targets would remove the

link between the AIP and the operating plan that Delphi uses to manage its business, resulting in

arbitrary targets that do not reflect the company's true objectives.

C.    It Is Appropriate To Grant The Debtors Authority To Implement AIPs Beyond December
      31, 2006, Subject To Agreement With The Creditors' Committee Or Further Court Order

18.    In the Supplement, the Debtors requested the authority to continue the AIP

for six-month increments following December 31, 2006, subject to the Debtors' ability to reach

an agreement with the Creditors' Committee on performance targets and payout curves or further

---

[4]    In addition to objecting to the targets themselves, the IUOE, IBEW, and IAM contend that the targets will
somehow increase the cost of the AIP during the second half.  (IUOE, IBEW, & IAM Objection (Docket
Nos. 4529-31) ¶ 3.)  This is not the case.  The payouts available under the second-half AIP are the same as
those approved by the Court with respect to the first half.  In fact, because of executive attrition, the
maximum payout for the second half will likely be less than the maximum payout for the first half.

[5]    Furthermore, the IUE-CWA's objection on this point is based on its faulty calculation that the Debtors will
achieve their performance targets even if Delphi experiences an operating loss of $1.584 billion in the
second half of 2006.  (See IUE-CWA Objection (Docket No. 4524) at 2.)  It appears that the IUE-CWA
computed this figure by adding the corporate EBITDAR-UG target and all of the division OIBITDAR-UG
targets disclosed in paragraph nine of the Supplement, without regard to whether those targets are positive
or negative—e.g., ($100) + $90 = ($190).  Furthermore, the IUE-CWA's computation essentially counts the
division targets twice because the corporate target of ($411.0 million) is based on an aggregation of the
division numbers, with some adjustments for corporate-level items.  The IUE-CWA also describes as
"meaningless" the Supplement's chart demonstrating the seasonality of Delphi's operating income because
it does not include restructuring costs or other one-time items.  (IUE-CWA Objection (Docket No. 4524) at
9.)  However, the AIP's EBITDAR-UG and OIBITDAR-UG targets likewise do not include restructuring
costs, and thus, the historical seasonality of Delphi's business will directly affect the performance metrics
under the AIP.

order of the Court. Several objectors take issue with this portion of the Supplement, arguing that

the Debtors should seek the Court's approval for each six-month period. This exercise is

particularly inefficient given that the objections to the Supplement are largely identical to the

objections that were raised and overruled by the Court as to the first-half AIP. The Debtors

anticipate that these same objections would reappear in connection with any AIP they propose.

19.    At the same time, the essential elements of the AIP are not going to

change. The Court has already concluded that those elements are "fair and reasonable" (AIP

Order ¶ C), and that the AIP "pass[es] muster as an appropriate form of compensation . . . that

passes the business judgment test" (Hr'g Tr. Feb. 10, 2006 (Docket No. 3414) at 246-47.). The

fundamental facts underlying the Debtors' request for continuing authority will also remain

constant—most notably the fact that, without the AIP, the Debtors will be left with an

uncompetitive executive compensation structure that includes only salary and benefits.[6]

Similarly, the argument that the Debtors should wait until emergence or some other point in 2007

to implement another AIP is nothing more than a disguised plea to cancel the AIP and return the

Debtors' executive compensation program to uncompetitive levels.

20.    Conditioning the Debtors' authority on the existence of an agreement with

the Creditors' Committee—whose membership includes the Debtors' two largest unions as

official or ex officio members—safeguards the interests of the unions and other creditors. The

Creditors' Committee has a fiduciary duty to represent the interests of creditors, and to date the

---

[6]    The IUOE, IBEW, and IAM disregard these findings, asserting that "the Debtor has not established that its executive compensation levels are not competitive." (IUOE, IBEW, & IAM Objection (Docket Nos. 4529-31) ¶ 12.) The IUE-CWA makes a similar argument in its objection. (IUE-CWA Objection (Docket No. 4524) at 9.) These arguments completely ignore the record established at the first AIP hearing and the Court's explicit findings as to the Debtors' executive compensation structure. Those findings were based on uncontroverted evidence regarding the uncompetitiveness of that structure, including the conclusions of a comprehensive study performed by Delphi's independent compensation consultant, Watson Wyatt Worldwide. Given the Court's conclusions, there is no reason to litigate this issue again, particularly since no objector has come forward with contrary evidence.

Creditors' Committee has played an active role with respect to the AIP.  The Debtors and their compensation consultant and financial advisors have worked closely with the Creditors' Committee and its compensation consultant and financial advisors on all aspects of the design of the AIP, including performance targets and payout curves, and the Creditors' Committee has provided constructive recommendations on program elements throughout this process.  With respect to the second-half AIP, the Debtors and the Creditors' Committee engaged in extensive discussions over the course of several months, which led to the modifications described above and the Creditors' Committee's support for the new proposed Supplemental AIP Order.  There is no reason to believe that the Creditors' Committee will not continue to adequately represent the interests of the unions and other creditors with respect to the AIP.

D.    The Debtors Agree That The Prophylactic Measures In The AIP Order Should Apply To <u>Any Continuation of the AIP Implemented By The Debtors</u>

21.    In paragraph 10 of the AIP Order, the Court established prophylactic measures designed to prevent the payment of incentive compensation to the Debtors' executives under certain circumstances, including with respect to any executive who fails to act in good faith and in a manner consistent with the Debtors' best interests.  In its response to the Supplement, the Lead Plaintiffs seek assurances that these prophylactic measures will be equally applicable to any continuation of the AIP by the Debtors.  As explained in the Supplement, the Debtors seek the authority to continue the AIP under the same terms and conditions as those set forth in the AIP Order, including the prophylactic measures in paragraph 10, with new performance targets and corresponding payout curves for each period.

<u>Conclusion</u>

WHEREFORE, the Debtors respectfully request that the Court enter a

Supplemental AIP Order in substantially the form of that attached to this omnibus response as

Exhibit A overruling the objections to the Supplement and granting the Debtors the relief

requested and such other and further relief as is just.

Dated: New York, New York
     July 18, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                     & FLOM LLP


                    By: */s/ John Wm. Butler, Jr.*
                         John Wm. Butler, Jr. (JB 4711)
                         Albert L. Hogan, III (AH 8807)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois 60606
                    (312) 407-0700

                           - and –

                    By: */s/ Kayalyn A. Marafioti*
                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, <u>et al.</u>,
                     Debtors and Debtors-in-Possession

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

       In re                            :       Chapter 11

                                        :

DELPHI CORPORATION, <u>et al.</u>,        :       Case No. 05-44481 (RDD)

                                        :

                        Debtors.    :       (Jointly Administered)

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 105 AND 363
AUTHORIZING THE DEBTORS TO:  (A) FIX SECOND HALF 2006
AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER
<u>ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING</u>

("SUPPLEMENTAL AIP ORDER")

          Upon the Supplement To KECP Motion (Docket No. 213) Seeking Authority To:

(A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn

KECP Emergence Incentive Program Hearing (the "Supplement"), dated June 29, 2006, of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"); and upon the

declarations of Debra S. Alexander, Nick Bubnovich, Virgis W. Colbert, Rodney O'Neal, and

John D. Sheehan, each executed June 29, 2006; and after consideration of any objections to the

Supplement filed by any party; and upon the record of the hearing held on July 19, 2006 on the

relief requested in the Supplement, including the Court's consideration of the testimony and

exhibits; and this Court having determined that the relief requested in the Supplement is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and this

Court having entered an Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To

Implement A Short-Term Annual Incentive Program ("AIP Order") (Docket No. 2441), dated

February 17, 2006; and it appearing that proper and adequate notice of the Supplement was given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in seeking the authority to implement short-term annual incentive plans ("AIPs") covering the six-month period running from July 1, 2006 through December 31, 2006 and during each successive six-month period during which the Debtors are engaged in the chapter 11 process.

B.      The AIPs currently before the Court, including the Debtors' proposal to implement the AIP covering the second half of 2006, were proposed in good faith and are in all respects fair and reasonable.

C.      It is in the best interest of the Debtors, their estates, their creditors, and parties-in-interest, and it is necessary to the Debtors' reorganization efforts, that the Debtors implement at this time an AIP for the period from July 1, 2006 through December 31, 2006, and that the Debtors have the authority to implement AIPs in any succeeding six-month period during which they are engaged in the chapter 11 process, subject to (i) the Debtors' ability to reach an agreement with the Official Committee of Unsecured Creditors (the "Creditors' Committee") regarding the substance of the AIP for that period within a reasonable time after that period begins or (ii) further order of this Court.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

The AIP Order shall continue in full force and effect except as follows:

2_____DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8. Performed on 7/18/2006.

1.      The relief requested in the Supplement is GRANTED; any objections thereto are OVERRULED; and the remainder of the KECP Motion and any objections thereto are ADJOURNED to the omnibus hearing scheduled for October 19, 2006.

2.      The Court approves the implementation at this time of an AIP covering the six-month period from July 1, 2006 through December 31, 2006, and the Debtors are authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to forthwith take all actions consistent with this Supplemental AIP Order that are reasonably necessary to implement an AIP for that period on the terms and conditions set forth in the AIP Order; provided, however, that the range of incentive-compensation opportunities for Covered Employees during that period shall be determined pursuant to the payout curves attached hereto as Exhibit 1, which do not include any incentive-compensation opportunities for corporate or divisional performance that is below target.  The EBITDAR-UG target for the AIP covering the period from July 1, 2006 through December 31, 2006 shall be set at a negative $411 million.  The OIBITDAR-UG targets for the same period shall be as follows:  (i) Powertrain (formerly known as Energy and Chassis) = negative $58.0 million; (ii) Steering = negative $114.0 million; (iii) Thermal and Interior = negative $140.0 million; (iv) Electronics and Safety = $179.0 million; (v) Packard Electric = negative $17.0 million; (vi) Product and Service Solutions = $22.0 million; (vii) Automotive Holdings Group = negative $634.0 million; and (viii) Medical = negative $9.0 million.

3.      For purposes of the AIP covering the period from July 1, 2006 through December 31, 2006, EBITDAR-UG shall include adjustments for: (a) net savings realized during the performance period generated from comprehensive transformation agreements reached with any of the Debtors' labor unions; (b) with regard to the Debtors' hourly attrition programs, both the cost of implementing these programs as well as the benefit to the Debtors of paying lower net

---

3        DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8. Performed on 7/18/2006.

wages to employees who replace those who voluntarily attrite under the hourly attrition

programs realized during the performance period; and (c) additional adjustments (including to

amounts included in clauses (a) and (b)) up to an aggregate amount of $100 million as

reasonably determined by the Creditors' Committee in accordance with this paragraph to account

for direct or indirect net savings realized by the Debtors during the performance period on

account of transformation actions not contemplated by the Debtors' business plan forecasts

utilized to establish the EBITDAR-UG target of negative $411 million.  The Creditors'

Committee shall consult with the Debtors in making any determination under this paragraph, but

in no event shall the Debtors have any right to reject or seek review by the Court of any such

adjustment.  The Creditors' Committee shall make its determination hereunder no later than

February 15, 2007.  In connection with such determination, the Debtors shall provide the

Creditors' Committee on or prior to February 1, 2007 with the actual results of performance for

such period (and appropriate back-up therefor), and shall provide the Creditors' Committees'

professionals with such additional back-up therefor as may be reasonably requested.  Prior to

February 15, 2007, the Debtors shall not make any AIP payments for the performance period

until the Creditors' Committee's actual determination hereunder as to whether adjustments to

EBITDAR-UG permissible hereunder are in the best interests of the Debtors' and their estates.

In the event that no determination is made by the Creditors' Committee by February 15, 2007,

the Debtors shall calculate EBITDAR-UG without adjustment for clause (c) of this paragraph.

The date references to "February 1, 2007" and to "February 15, 2007" in this paragraph may be

extended by mutual agreement of the Debtors and the Creditors' Committee.

      4.    3. The Court grants the Debtors the authority to implement AIPs for any

six-month period beginning after December 31, 2006, during which the Debtors are engaged in

---

4     DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8.
Performed on 7/18/2006.

the chapter 11 process, subject to (i) the Debtors and the Creditors' Committee reaching an

agreement regarding the substance of the AIP for that period within a reasonable time after that

period begins or (ii) further order of this Court.

5.    4. This Court shall retain jurisdiction over the Debtors and the Covered

Employees participating in any AIP implemented pursuant to this Supplemental AIP Order,

including without limitation for the purposes of interpreting, implementing, and enforcing the

terms and conditions of any such AIP.

6.    5. The requirement under Rule 9013-1(b) of the Local Rules for the United

States Bankruptcy Court for the Southern District of New York for the service and filing of a

separate memorandum of law is deemed satisfied by the Supplement.

7.    6. Capitalized terms not separately defined herein shall have the meanings

ascribed to them in the AIP Order.


Dated: New York, New York
        _____, 2006




        _____
        UNITED STATES BANKRUPTCY JUDGE




5 _____ DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8.
Performed on 7/18/2006.

# EXHIBIT 1

DELPHI CORPORATION

Proposed 2nd 2006 6-month **Corporate EBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($411.0) | 0.0% | 0.0% |
| 100.0% | ($411.0) | 100.0% | 100.0% |
| 101.0% | ($406.8) | 100.5% | 101.0% |
| 110.0% | ($368.9) | 105.0% | 110.0% |
| 120.0% | ($326.8) | 110.0% | 120.0% |
| 130.0% | ($284.7) | 115.0% | 130.0% |
| 131.0% | ($280.5) | 115.5% | 131.0% |
| 140.0% | ($242.6) | 120.0% | 140.0% |
| 150.0% | ($200.5) | 125.0% | 150.0% |
| 151.0% | ($196.3) | 125.5% | 151.0% |
| 160.0% | ($158.4) | 130.0% | 160.0% |
| 170.0% | ($116.3) | 135.0% | 170.0% |
| 180.0% | ($74.2) | 140.0% | 180.0% |
| 190.0% | ($32.1) | 145.0% | 190.0% |
| 200.0% | $10.0 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| EBITDAR | ($411.0) | $10.0 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2nd Half 2006 6-month **Powertrain OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($58.0) | 0.0% | 0.0% |
| 100.0% | ($58.0) | 100.0% | 100.0% |
| 101.0% | ($56.9) | 100.5% | 101.0% |
| 110.0% | ($47.2) | 105.0% | 110.0% |
| 120.0% | ($36.4) | 110.0% | 120.0% |
| 130.0% | ($25.5) | 115.0% | 130.0% |
| 131.0% | ($24.5) | 115.5% | 131.0% |
| 140.0% | ($14.7) | 120.0% | 140.0% |
| 150.0% | ($3.9) | 125.0% | 150.0% |
| 151.0% | ($2.8) | 125.5% | 151.0% |
| 160.0% | $6.9 | 130.0% | 160.0% |
| 170.0% | $17.7 | 135.0% | 170.0% |
| 180.0% | $28.6 | 140.0% | 180.0% |
| 190.0% | $39.4 | 145.0% | 190.0% |
| 200.0% | $50.2 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($58.0) | $50.2 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
January - June 2006 6-month **Steering OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($114.0) | 0.0% | 0.0% |
| 100.0% | ($114.0) | 100.0% | 100.0% |
| 101.0% | ($113.7) | 100.5% | 101.0% |
| 110.0% | ($110.6) | 105.0% | 110.0% |
| 120.0% | ($107.1) | 110.0% | 120.0% |
| 130.0% | ($103.7) | 115.0% | 130.0% |
| 131.0% | ($103.4) | 115.5% | 131.0% |
| 140.0% | ($100.3) | 120.0% | 140.0% |
| 150.0% | ($96.9) | 125.0% | 150.0% |
| 151.0% | ($96.5) | 125.5% | 151.0% |
| 160.0% | ($93.4) | 130.0% | 160.0% |
| 170.0% | ($90.0) | 135.0% | 170.0% |
| 180.0% | ($86.6) | 140.0% | 180.0% |
| 190.0% | ($83.1) | 145.0% | 190.0% |
| 200.0% | ($79.7) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($114.0) | ($79.7) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Second Half 2006 6-month **Thermal OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($140.0) | 0.0% | 0.0% |
| 100.0% | ($140.0) | 100.0% | 100.0% |
| 101.0% | ($139.5) | 100.5% | 101.0% |
| 110.0% | ($134.6) | 105.0% | 110.0% |
| 120.0% | ($129.3) | 110.0% | 120.0% |
| 130.0% | ($123.9) | 115.0% | 130.0% |
| 131.0% | ($123.4) | 115.5% | 131.0% |
| 140.0% | ($118.6) | 120.0% | 140.0% |
| 150.0% | ($113.2) | 125.0% | 150.0% |
| 151.0% | ($112.7) | 125.5% | 151.0% |
| 160.0% | ($107.8) | 130.0% | 160.0% |
| 170.0% | ($102.5) | 135.0% | 170.0% |
| 180.0% | ($97.1) | 140.0% | 180.0% |
| 190.0% | ($91.8) | 145.0% | 190.0% |
| 200.0% | ($86.4) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($140.0) | ($86.4) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 12-month **Electronics and Safety OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $179.0 | 0.0% | 0.0% |
| 100.0% | $179.0 | 100.0% | 100.0% |
| 101.0% | $180.0 | 100.5% | 101.0% |
| 110.0% | $188.6 | 105.0% | 110.0% |
| 120.0% | $198.3 | 110.0% | 120.0% |
| 130.0% | $207.9 | 115.0% | 130.0% |
| 131.0% | $208.9 | 115.5% | 131.0% |
| 140.0% | $217.5 | 120.0% | 140.0% |
| 150.0% | $227.2 | 125.0% | 150.0% |
| 151.0% | $228.1 | 125.5% | 151.0% |
| 160.0% | $236.8 | 130.0% | 160.0% |
| 170.0% | $246.4 | 135.0% | 170.0% |
| 180.0% | $256.0 | 140.0% | 180.0% |
| 190.0% | $265.7 | 145.0% | 190.0% |
| 200.0% | $275.3 | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | $179.0 | $275.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2nd Half 2006 6-month **Packard OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($17.0) | 0.0% | 0.0% |
| 100.0% | ($17.0) | 100.0% | 100.0% |
| 101.0% | ($16.1) | 100.5% | 101.0% |
| 110.0% | ($7.6) | 105.0% | 110.0% |
| 120.0% | $1.9 | 110.0% | 120.0% |
| 130.0% | $11.3 | 115.0% | 130.0% |
| 131.0% | $12.2 | 115.5% | 131.0% |
| 140.0% | $20.7 | 120.0% | 140.0% |
| 150.0% | $30.2 | 125.0% | 150.0% |
| 151.0% | $31.1 | 125.5% | 151.0% |
| 160.0% | $39.6 | 130.0% | 160.0% |
| 170.0% | $49.0 | 135.0% | 170.0% |
| 180.0% | $58.4 | 140.0% | 180.0% |
| 190.0% | $67.9 | 145.0% | 190.0% |
| 200.0% | $77.3 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($17.0) | $77.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed Nine-Month **Product & Service Solutions OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $22.0 | 0.0% | 0.0% |
| 100.0% | $22.0 | 100.0% | 100.0% |
| 101.0% | $22.3 | 100.5% | 101.0% |
| 110.0% | $25.2 | 105.0% | 110.0% |
| 120.0% | $28.3 | 110.0% | 120.0% |
| 130.0% | $31.5 | 115.0% | 130.0% |
| 131.0% | $31.8 | 115.5% | 131.0% |
| 140.0% | $34.7 | 120.0% | 140.0% |
| 150.0% | $37.9 | 125.0% | 150.0% |
| 151.0% | $38.2 | 125.5% | 151.0% |
| 160.0% | $41.0 | 130.0% | 160.0% |
| 170.0% | $44.2 | 135.0% | 170.0% |
| 180.0% | $47.4 | 140.0% | 180.0% |
| 190.0% | $50.5 | 145.0% | 190.0% |
| 200.0% | $53.7 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | $22.0 | $53.7 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 18-month **Automotive Holdings Group OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($634.0) | 0.0% | 0.0% |
| 100.0% | ($634.0) | 100.0% | 100.0% |
| 101.0% | ($633.7) | 100.5% | 101.0% |
| 110.0% | ($631.1) | 105.0% | 110.0% |
| 120.0% | ($628.1) | 110.0% | 120.0% |
| 130.0% | ($625.2) | 115.0% | 130.0% |
| 131.0% | ($624.9) | 115.5% | 131.0% |
| 140.0% | ($622.2) | 120.0% | 140.0% |
| 150.0% | ($619.3) | 125.0% | 150.0% |
| 151.0% | ($619.0) | 125.5% | 151.0% |
| 160.0% | ($616.4) | 130.0% | 160.0% |
| 170.0% | ($613.4) | 135.0% | 170.0% |
| 180.0% | ($610.5) | 140.0% | 180.0% |
| 190.0% | ($607.5) | 145.0% | 190.0% |
| 200.0% | ($604.6) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($634.0) | ($604.6) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 6-month **Medical OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($9.0) | 0.0% | 0.0% |
| 100.0% | ($9.0) | 100.0% | 100.0% |
| 101.0% | ($9.0) | 100.5% | 101.0% |
| 110.0% | ($8.9) | 105.0% | 110.0% |
| 120.0% | ($8.8) | 110.0% | 120.0% |
| 130.0% | ($8.8) | 115.0% | 130.0% |
| 131.0% | ($8.8) | 115.5% | 131.0% |
| 140.0% | ($8.7) | 120.0% | 140.0% |
| 150.0% | ($8.6) | 125.0% | 150.0% |
| 151.0% | ($8.6) | 125.5% | 151.0% |
| 160.0% | ($8.5) | 130.0% | 160.0% |
| 170.0% | ($8.4) | 135.0% | 170.0% |
| 180.0% | ($8.4) | 140.0% | 180.0% |
| 190.0% | ($8.3) | 145.0% | 190.0% |
| 200.0% | ($8.2) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($9.0) | ($8.2) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

# EXHIBIT B

**Objection Summary Chart**

**Objections And Response To Supplement To KECP Motion (Docket No. 213) Seeking Authority To:  (A) Fix Second Half 2006
AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing**

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America ("IUE-CWA") | 4524 | 07/12/06 | • The performance targets for the second half of 2006 are too low.  So were the performance targets for the first half of 2006.<br>• Implementing a short-term annual incentive program ("AIP") will complicate the Debtors' bargaining with the unions, the section 1113/1114 process, and the Debtors' ability to reorganize.  The AIP is inconsistent with the notion of shared sacrifice among the Debtors' executives and union members.<br>• The Debtors should have consulted with the unions before proposing the AIP.<br>• The Debtors should seek authority for each six-month period separately.  The interests of the Official Committee of Unsecured Creditors ("Creditors' Committee") are different from the unions'.<br>• The Debtors should wait until emergence, or at least until the section 1113/1114 process is complete, to implement any additional AIP.<br>• The Debtors have not established that their executive compensation is uncompetitive.<br>• The AIP is essentially a retention program.  Retention programs do not work well. |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, | 4526 | 07/12/06 | • The USW relies in part on its objections to the KECP Motion, filed on November 22, 2005 (Docket No. 1134). |

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| Allied Industrial and Service Workers, International Union ("USW") | | | • The performance targets for the first half of 2006 were too low.  The Debtors' executives have received more compensation in 2005 and 2006 than in previous years.<br>• It is unfair to implement the AIP while the Debtors are asking for concessions from union members.  USW members are already below the market rate identified in connection with the section 1113/1114 hearing.  The AIP would make ratification of a revised collective bargaining agreement more difficult. |
| Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalange-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP ("Lead Plaintiffs") | 4528 | 07/12/06 | • The prophylactic measures applicable to the first-half AIP should apply to any additional AIP implemented by the Debtors.<br>• The Debtors should not be granted open-ended authority to implement AIPs beyond the second half of 2006. |
| International Brotherhood of Electrical Workers Local Union No. 663 ("IBEW"), International Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78, District 10 ("IAM"), and International Union of Operating Engineers, Locals 18S, 101S, and 832S ("IUOE") | 4529-4531 | 07/12/06 | • It is unfair to implement the AIP while the Debtors are asking for concessions from union members.  Implementing an AIP will complicate the Debtors' bargaining with the unions.<br>• The performance targets for the first half of 2006 were too low.  So are the performance targets for the second half of 2006.  Lower second-half performance targets will increase the cost of the AIP.<br>• The Debtors have not established that the AIP is needed to make executive compensation competitive or to reduce executive turnover.<br>• The Debtors should not be granted open-ended authority to implement AIPs beyond the second half of 2006.  The Debtors should consult with the unions. |

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| | | | • The Debtors should wait until emergence to implement any additional AIP.<br>• The AIP is a retention program that violates the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. |
| International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") | 4556 | 07/14/06 | • The performance targets for the first half of 2006 were too low.  So are the performance targets for the second half of 2006.  The Debtors' first-half performance is not attributable to the AIP.<br>• Implementing an AIP will complicate the Debtors' bargaining with the unions and the section 1113/1114 process.  It is unfair to implement an AIP while the Debtors are asking for concessions from the unions.<br>• The Debtors should wait until later in the case to implement any additional AIPs.<br>• The Court should view with skepticism the work of compensation consultants.<br>• The Debtors should seek authority for each six-month period separately.  The Creditors' Committee does not represent all constituents, and its judgment should not be substituted for the Court's. |