IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :    Case No. 05-44481 (RDD)
                                    :
                        Debtors.     :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On July 18, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit A hereto via overnight delivery:

1) Fourth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 4545) [a copy of which is attached hereto as Exhibit B]

On July 18, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit C hereto via overnight delivery:

2) Debtors' Omnibus Response to Objections and Response to Supplement to KECP Motion (Docket No. 213) Seeking Authority to: (A) Fix Second Half 2006 AIP Targets and Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing (Docket No. 4586) [a copy of which is attached hereto as Exhibit D]

Dated: July 19, 2006

        */s/ Evan Gershbein*
        Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 19th day of July, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : */s/ Shannon J Spencer*

Commission Expires: *6/20/10*

# EXHIBIT A

Delphi Corporation
Special Parties

| Company Name | Notice Name | Address 1 | Address 2 | City | State | Zip | Country | Phone | Fax | Email |
|---|---|---|---|---|---|---|---|---|---|---|
| Banner & Witcoff LTD | Charles W Shifley, Binal J Patel | 10 S Wacher Dr | Ste 3000 | Chicago | IL | 60606 | | 312-463-5000 | | |
| Blake, Cassels & Graydon LLP | Susan M Grundy | Box 25, Commerce Court West | 199 Bay St | Toronto | Ontario | M5L 1A9 | Canada | 416-863-2572 | 416-863-2563 | susan.grundy@blakes.com |
| Butzel Long PC | Thomas B Radom, Matthew E Wilkins | 100 Bloomfield Hills Parkway | Ste 200 | Bloomfield Hills | MI | 48304 | | 248-258-1616 | | |
| Cadwalader, Wickersham & Taft LLP | James K Robinson, Phillip Urofsky | 1201 F St | NW Ste 1100 | Washington | DC | 20004 | | 202-862-2200 | 202-862-2400 | |
| Cantor Colburn LLP | Daniel E Bruso | 55 Griffin Rd S | | Bloomfield | CT | 06002 | | 860-286-2929 | 860-286-0115 | |
| Dickinson Wright PLLC | Dawn R Copley | 500 Woodward Ave | Ste 4000 | Detroit | MI | 48226 | | 313-223-3500 | | |
| Mayer, Brown, Rowe & Maw LLP | Michael P Richman | 1675 Broadway | | New York | NY | 10019 | | 212-506-2500 | 212-262-1910 | |
| Howard & Howard Attorneys PC | Jeff A Sadowski, Tamika A Bryant | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304 | | 248-723-0318 | | |
| Jaeckle Fleischmann & Mugel LLP | Ronald J Kisicki, Joseph W Allen | 12 Fountain Plaza | | Buffalo | NY | 14202-2292 | | 716-856-0600 | | |
| Jefferies & Co, Inc | William Q Derrough | 520 Madison Ave | | New York | NY | 20022 | | 212-284-2521 | | |
| Frank/Gecker LLP | Joseph D Frank, Jeremy C Kleinman | 325 N LaSalle St | Ste 625 | Chicago | IL | 60610 | | 312-276-1400 | 312-276-0035 | |
| King & Spalding LLP | H Slayton Dabney Jr Esq, Samuel S Kohn Esq | 1185 Ave of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | |
| Price Heneveld Cooper DeWitt & Litton LLP | Kevin T Grzelak | 695 Kenmoor Ave SE | PO Box 2567 | Grand Rapids | MI | 49501 | | 616-949-9610 | | |
| Quinn Emanuel Urquhart Oliver & Hedges LLP | | 856 S Figueroa St | 10th Fl | Los Angeles | CA | 90017 | | | | |
| Rader, Fishman & Grauer PLLC | Leigh C Taggart | 39533 Woodward Ave | Ste 140 | Bloomfield Hills | MI | 48304 | | 248-594-0600 | 248-594-0610 | |
| Steven Hall & Partners LLC | Pearl Meyer | 645 Fifth Ave | | New York | NY | 10022 | | 212-488-5400 | 212-888-8706 | pmeyer@shallpartners.com |
| Thompson Hine LLP | Robert T Barnard, Joseph B Koczko | One Chase Manhattan Plaza | 58th Fl | New York | NY | 10005-1401 | | 212-344-5680 | 212-809-2890 | robert.barnard@thompsonhine.com joseph.koczko@thompsonhine.com |
| Thompson Hine LLP | Lawrence T Burick | 10 W Second St | 2000 Courthouse Plaza NE | Dayton | OH | 45402-1758 | | 937-443-6625 | 937-443-6635 | larry.burick@thompsonhine.com |
| Wilmer Cutler Pickering Hale and Dorr LLP | Charles Davidow | 1875 Pennsylvania Ave NW | | Washington | DC | 20006 | | 202-663-6000 | | |

In re: Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 1

7/18/2006 3:38 PM
4th Supplemental Interim Comp Special Parties

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                               :
     In re                     :     Chapter 11
                               :
DELPHI CORPORATION, <u>et al.</u>,    :     Case No. 05-44481 (RDD)
                               :
              Debtors.     :     (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOURTH SUPPLEMENTAL ORDER UNDER 11 U.S.C. § 331
ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION
<u>AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS</u>

("FOURTH SUPPLEMENTAL INTERIM COMPENSATION ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order under section 331 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1330, as amended, establishing procedures for interim

compensation and reimbursement of expenses of court-approved professionals and the

appointment of a fee committee and establishing a protocol regarding the fee committee, its

composition, mandate, and procedures in accordance with the Fee Committee And Fee

Procedures Protocol (the "Fee Protocol"); and this Court having entered an order on November 4,

2005 (Docket No. 869) granting certain of the relief requested in the Motion (the "Initial Order");

and this Court having entered supplemental orders on March 8, 2006 and March 28, 2006 (the

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion
For Administrative Order Under 11 U.S.C. § 331 (I) Establishing Procedure For Interim Compensation And
Reimbursement Of Expenses Of Professionals And (II) Setting A Final Hearing Thereon (the "Interim
Compensation Motion") (Docket No. 11).

"Supplemental Orders") (Docket Nos. 2747 and 2986) amending paragraphs 1(j) and 10 of the

Initial Order regarding the deadlines for filing monthly compensation packages and interim and

final fee applications; and this Court having entered on May 5, 2006 (Docket No. 3630) a third

supplemental order approving the Fee Protocol and establishing July 19, 2006 as the hearing date

to consider approval of the first applications for interim or final court approval (the "Third

Supplemental Order"); and upon the request of the Joint Fee Review Committee that the hearing

to consider approval of the first application for interim or final court approval and allowance of

compensation and reimbursement of expenses for the period ended January 31, 2006 scheduled

for July 19, 2006 be rescheduled for October 19, 2006; and upon recommendation of the Joint

Fee Review Committee that the Debtors be authorized and directed to release one-half of the

holdback amount of certain of the professional fees held back and retained by the Debtors for all

periods ended through May 31, 2006; and this Court having determined that the relief granted

herein is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and the office of the United States Trustee having consented to the relief granted herein;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

The Initial Order, the Supplemental Orders, and the Third Supplemental Order shall continue in

full force and effect except as follows:

1.    The hearing to consider approval of the first applications for interim or final

court approval and allowance of compensation and reimbursement of expenses for the period

ended January 31, 2006 (the "First Interim Fee Applications") scheduled for the omnibus hearing

date of July 19, 2006 at 10:00 a.m. (Prevailing Eastern Time) shall be rescheduled to the

omnibus hearing date of October 19, 2006 at 10:00 a.m. (Prevailing Eastern Time) to be

considered with the second applications for interim or final court approval and allowance of

compensation and reimbursement of expenses for the period ended May 31, 2006 (the "Second

Interim Fee Applications") at that hearing.   A list of court-approved professionals retained in

these chapter 11 cases who have filed First Interim Fee Applications is attached hereto as

Exhibit A.

   2. As provided in paragraph 13 of the Supplemental Order Under 11 U.S.C.

Sections 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing

Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative

Procedures, entered March 17, 2006 (Docket No. 2883), any objection to either the First Interim

Fee Applications or the Second Interim Fee Applications shall be filed on or before October 12,

2006 at 4:00 p.m. (Prevailing Eastern Time).

   3. The Debtors are authorized and directed to release one-half of the holdback

amount of professional fees held back and retained by the Debtors for all periods ended on or

before May 31, 2006.

Dated: New York, New York
   July 12, 2006


     /s/ ROBERT D. DRAIN
     UNITED STATES BANKRUPTCY JUDGE

3

Exhibit A
List Of Court-Approved Retained Professionals Who Have Filed Applications

| NAME OF PROFESSI-ONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Banner & Witcoff, Ltd. | First Interim Application Of Banner & Witcoff, Ltd., Intellectual Property Counsel To Delphi Corporation, Seeking Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses Under 11 U.S.C. Sections 330 And 331 | 04/28/2006 | 3506 | $29,580.05 | $411.95 | N/A | $5,998.40 |
| Blake, Cassels & Graydon LLP | First Interim Fee Application Of Blake, Cassels & Graydon LLP As Canadian Counsel For Debtors For Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses Under 11 U.S.C. §§ 330 And 331 | 05/31/2006 | 4167 | Cdn$290,676.50 | Cdn$2,533.60 | N/A | $58,135.30 |
| Butzel Long, P.C. | First Interim Application Of Butzel Long, P.C., Commercial And Litigation Counsel To Debtors And Debtors-In-Possession, For Allowance And Payment Of Compensation And Reimbursement Of Expenses For The Period From October 8, 2005 Through January 31, 2006 Under 11 U.S.C. §§330 And 331 | 04/28/2006 | 3489 | $260,376.05 | $1,857.51 | N/A | $52,075.21 |

| NAME OF PROFESSI-ONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Cadwalader, Wickersham And Taft LLP | First Application Of Cadwalader, Wickersham And Taft LLP As Attorneys For The Debtors For Interim Allowance Of Compensation For Professional Services Rendered And For Reimbursement Of Actual And Necessary Expenses Incurred From October 10, 2005 Through January 31, 2006 | 04/20/2006 | 3302 | $77,728.27 | $483.37 | 10% discount of fees; agreement to maintain previous year's hourly billing rates through April of 2006 | $15,545.65 |
| Cantor Colburn LLP | First Interim Application For Cantor Colburn LLP For Allowance Of Compensation For Services Rendered And Reimbursement Of Expenses Pursuant To 11 U.S.C. §§ 330, 331 | 04/28/2006 | 3514 | $281,801.50 | $55,500.99 | $75,682.00 | $56,360.30 |
| Covington & Burling | Revised First Interim Application Of Covington & Burling, Foreign Trade And Special Corporate Committee Legal Counsel To The Debtors And Debtors-In-Possession, For Allowance Of Compensation For Services Rendered And Reimbursement Of Expenses Incurred For The Period From October 8, 2005 Through January 31, 2006 | 04/28/2006 | 3596 | $490,281.00 | $20,653.23 | N/A | $87,179.00 |

| NAME OF PROFESSI-ONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Deloitte & Touche LLP | First Interim Application For Allowance Of Fees And Expenses Of Deloitte & Touche LLP As Independent Auditors And Accountants To The Debtors For The Period From October 8, 2005 Through January 31, 2006 | 04/28/2006 | 3485 | $4,131,506.08 | $4,660.98 | $1,032,876.52 | $746,301.22 |
| Dickinson Wright PLLC | First Interim Application Of Dickinson Wright PLLC For Order Authorizing And Approving Compensation For Services Rendered From January 13, 2006 Through January 31, 2006 | 04/26/2006 | 3442 | $8,973.50 | $0 | N/A | $1,794.70 |
| Ernst & Young LLP | First And Final Application Of Ernst & Young LLP, As Sarbanes-Oxley, Valuation, And Tax Services Providers For The Debtors, For Allowance And Payment Of Compensation For Professional Services And Reimbursement Of Actual And Necessary Expenses | 03/30/2006 | 3018 | $3,140,215.00 | $152,464.00 | $8,000.00 | $1,228,043.00 |
| FTI Consulting, Inc. | First Interim Application For Allowance Of Compensation And Reimbursement Of Expenses Incurred By FTI Consulting, Inc. As Restructuring And Financial Advisor To The Debtors For The Period October 8, 2005 Through January 31, 2006 | 04/27/2006 | 3454 | $8,502,443.60 | $687,569.02 | $657,100.00 | $1,700,488.60 |

3

| NAME OF PROFESSIONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMODATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Groom Law Group, Chartered | First Interim Application Of Groom Law Group, Chartered, As Special Employee Benefits Counsel For The Debtors, Seeking Allowance Of Compensation For Professional Services Rendered And For Reimbursement Of Actual And Necessary Expenses Incurred From October 8, 2005 Through January 31, 2005 | 04/27/2006 | 3460 | $127,500.30 | $5,087.96 | $14,166.70 | $25,500.06 |
| Howard & Howard Attorneys, P.C. | First Interim Fee Application Of Howard & Howard Attorneys, P.C., Intellectual Property Counsel To Debtors, For Interim Allowance Of Compensation And Reimbursement Of Expenses For The Period October 8, 2005 Through January 31, 2006 | 03/21/2006 | 2965 | $98,553.00 | $19,710.70 | N/A | $19,710.60 |
| Jaeckle Fleischmann & Mugel, LLP | First Interim Fee Application Of Jaeckle Fleischmann & Mugel, LLP, Intellectual Property Counsel To The Debtors, For Allowance Of Compensation And Reimbursement Of Expenses For The Period October 8, 2005 Through February 28, 2006 | 04/29/2006 | 3538 | $232,757.00 | $51,463.07 | N/A | $23,915.30 |

| NAME OF PROFESSIONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Jeffries & Company, Inc. | First Interim Application Of Jefferies & Company, Inc., As Investment Banker To The Official Committee Of Unsecured Creditors For Interim Allowance Of Compensation For Professional Services Rendered And Reimbursement Of Actual And Necessary Expenses Incurred For The Period October 18, 2005 To January 31, 2006 | 05/30/2006 | 3962 | $604,032.26 | $22,677.57 | N/A | $120,806.45 |
| Jones Lang LaSalle Americas, Inc. | Jones Lang LaSalle Americas, Inc.'s First Interim Application For Allowance And Payment Of Compensation And Reimbursement Of Expenses Pursuant To 11 U.S.C. §§328, 330 And 331 | 04/28/2006 | 3527 | $180,103.84 | $4,208.73 | N/A | $30,120.77 |
| KPMG LLP | First Application Of KPMG LLP, As Tax And Transaction Services Advisors For The Debtors, For Interim Allowance Of Compensation For Professional Services Rendered And Reimbursement Of Actual And Necessary Expenses Incurred From October 8, 2005 Through January 31, 2006 | 04/28/2006 | 3507 | $1,439,122.50 | $17,631.00 | N/A | $287,824.50 |

| NAME OF PROFESSIONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMODATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Latham & Watkins LLP | First Fee And Expense Application Of Latham & Watkins LLP As Counsel To The Official Committee Of Unsecured Creditors | 05/31/2006 | 3966 | $3,258,050.25 | $157,230.86 | $6,028.75 | $652,815.80 |
| Mesirow Financial Consulting, LLC | First Interim Application Of Mesirow Financial Consulting, LLC For Allowance Of Compensation And Reimbursement Of Expenses As Financial Advisor To The Official Committee Of Unsecured Creditors For The Period From October 19, 2005 Through January 31, 2006 | 05/31/06 | 3967 | $1,654,678.00 | $66,761.00 | Voluntary limitation of billable travel time to a maximum of 2.0 hours per trip; billed travel time at one-half its normal rates | $331,633.40 |
| O'Melveny & Myers LLP | First Interim Application Of O'Melveny & Myers LLP For Order Authorizing And Approving Compensation And Reimbursement Of Expenses | 04/27/2006 | 3469 | $1,322,746.50 | $90,169.23 | Voluntary write-off of one-half of travel time; secretarial assistance not billed | $264,570.30 |
| Price, Heneveld, Cooper, DeWitt & Litton, LLP | First Interim Application For Approval Of Compensation And Reimbursement Of Expenses Of Price, Heneveld, Cooper, DeWitt & Litton, LLP, Intellectual Property Counsel To Debtors, For Services Rendered From October 9, 2005 Through January 31, 2006 | 04/27/2006 | 3495 | $46,233.50 | $4,368.56 | N/A | $16,862.90 |

| NAME OF PROFESSI-ONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP | First Interim Application Of Quinn Emanuel Urquhart Oliver & Hedges LLP, Special Litigation Counsel To The Debtors-In-Possession For Compensation And Reimbursement Of Expenses | 04/3/2006 | 3071 | $26,480.50 | $2,419.75 | General write-off of certain time | $5,296.10 |
| Rader, Fishman & Grauer PLLC | First Interim Application For Approval Of Compensation And Reimbursement Of Expenses Of Rader, Fishman & Grauer PLLC, Intellectual Property Counsel To Debtors, For Services Rendered From October 8, 2005 Through January 31, 2006 | 05/1/2006 | 3740 | $82,674.00 | $63,923.00 | N/A | $16,534.80 |
| Rothschild Inc. | First Interim Application Of Rothschild Inc. For Compensation And Reimbursement Of Expenses | 05/1/2006 | 3562 | $943,548.39 | $88,346.27 | N/A | $188,709.68 |
| Shearman & Sterling LLP | First Application Of Shearman & Sterling LLP, As Special Counsel To The Debtors, For Allowance Of Interim Compensation For Professional Services Rendered And For Reimbursement Of Actual And Necessary Expenses Incurred From October 8, 2005 Through January 31, 2006 | 04/27/2006 | 3463 | $2,097,867.55 | $103,201.56 | General write-offs; non-working travel time billed at 50% | $419,573.51 |

| NAME OF PROFESSI-ONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMO-DATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | First Interim Application Of Skadden, Arps, Slate, Meagher & Flom LLP And Affiliates, Counsel To The Debtors-In-Possession, Seeking Allowance And Payment Of Interim Compensation And Reimbursement Of Expenses Under 11 U.S.C. §§ 330 And 331 | 05/31/06 | 3975 | $9,200,920.00 | $622,420.00 | $813,161.00 | $1,848,086.40 |
| Steven Hall & Partners, LLC | First Fee And Expense Application Of Steven Hall & Partners, LLC As Compensation And Employment Agreement Advisor For The Official Committee Of Unsecured Creditors | 05/31/06 | 3968 | $409,161.25 | $0 | Write-off of expenses incurred | $81,832.25 |
| Thompson Hine LLP | First Interim Application Of Thompson Hine LLP As Special Counsel For Debtors For Interim Court Approval, Allowance And Payment Of Compensation For Services Rendered And Expenses Advanced From October 8, 2005 Through January 31, 2006 | 04/27/2006 | 3467 | $82,733.00 | $16,081.58 | N/A | $16,456.60 |

8

| NAME OF PROFESSIONAL | NAME OF APPLICATION | DATE FILED | DOCKET No. | AMOUNT OF FEES SOUGHT | AMOUNT OF EXPENSES SOUGHT | VOLUNTARY ACCOMMODATIONS, IF ANY | AMOUNT OF IOLDBACK |
|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | First Application Of Togut, Segal & Segal LLP For An Allowance Of Interim Compensation For Services Rendered As Conflicts Counsel For The Debtors For The Period October 8, 2005 Through January 31, 2006 And For Reimbursement Of Expenses | 04/26/2006 | 3440 | $789,874.00 | $14,531.15 | N/A | $157,108.40 |
| Warner Stevens, L.L.P. | First Interim Application For Compensation And Reimbursement Of Expenses Of Warner Stevens, L.L.P., As Conflicts Counsel To The Official Committee Of Unsecured Creditors For The Period Of November 10, 2005 Through January 31, 2006 | 04/28/2006 | 3478 | $322,376.00 | $14,929.31 | N/A | $64,475.20 |
| Wilmer Cutler Pickering Hale And Dorr LLP | First Interim Application Of Wilmer Cutler Pickering Hale And Dorr LLP, Special Regulatory Counsel For The Audit Committee Of The Board Of Directors Of Delphi Corporation, For Allowance Of Compensation For Services Rendered And Expenses Incurred From October 8, 2005 Through January 31, 2006 | 05/1/2006 | 3549 | $343,327.00 | $4,807.79 | Some write-off of copying expenses | $68,665.40 |

9

# EXHIBIT C

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes' Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes' Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel for International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com sean.p.corcoran@delphi.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | | 248-813-2000 | 248-813-2670 | karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L. Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivin@ffhsj.com | Counsel to Equity Security Holders Committee |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes' Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes' Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. and Marissa Wesley | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | | 212-510-0500 | 212-668-2255 does not take service via fax | Counsel to United States Trustee |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel for Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | flauria@whitecase.com featon@miami.whitecase.com | Counsel for Appaloosa Management, LP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

7/19/2006 9:19 AM
KECP Response Service List

# EXHIBIT D

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan, III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS AND RESPONSE TO SUPPLEMENT
TO KECP MOTION (DOCKET NO. 213) SEEKING AUTHORITY TO:  (A) FIX SECOND
HALF 2006 AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER
ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this omnibus response to the objections filed by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America ("IUE-CWA") (Docket No. 4524), the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union ("USW") (Docket No. 4526), the International Brotherhood of Electrical Workers Local Union No. 663 ("IBEW"), the International Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78, District 10 ("IAM"), and the International Union of Operating Engineers, Locals 18S, 101S, and 832S ("IUOE") (Docket Nos. 4529-4531), and the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") (Docket No. 4556), and the response filed by the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalange-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP (collectively, "Lead Plaintiffs") (Docket No. 4528) to the Debtors' Supplement To KECP Motion (Docket No. 213) Seeking Authority To:  (A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing (Docket No. 4419) (the "Supplement").

<u>Background</u>

1.      On June 29, 2006, the Debtors filed a Supplement to the KECP Motion seeking the authority to continue for an additional six-month period the short-term annual incentive program ("AIP") approved by the Court in its Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Implement A Short-Term Annual Incentive Program ("AIP Order")

2

(Docket No. 2441).[1]  The AIP for the second half of 2006 would be governed by the terms and

conditions set forth in the AIP Order, and would incorporate new performance targets and payout

curves (based on the Debtors' second-half operating plan) adopted by Delphi's Board of Directors

and agreed to by the Official Committee of Unsecured Creditors (the "Creditors' Committee").

The Debtors also requested the authority to continue the AIP for additional six-month periods

after December 31, 2006, subject to the Debtors' ability to reach an agreement on performance

targets and payout curves with the Creditors' Committee, whose compensation consultant and

financial advisors have played an active role in developing and reviewing targets and curves, or

further order of this Court.

        2.      After the Debtors' filed the Supplement, the Debtors and their advisors

continued their ongoing dialogue with the Creditors' Committee and its advisors regarding the

elements of the AIP.  As a result of those constructive discussions, the Debtors and the Creditors'

Committee have agreed on the form of Supplemental AIP Order that is attached to this omnibus

response as Exhibit A.  Generally speaking, the Debtors and the Creditors Committee have

confirmed that Delphi's EBITDAR-UG for the AIP corporate-wide target will include

adjustments for the net savings realized during the performance period from comprehensive

transformation agreements reached with the Debtors' labor unions, as well as the cost of

implementing hourly attrition programs and the benefit of paying lower net wages to employees

who replace workers who voluntary attrite under those programs realized during the performance

period.  In addition, following the completion of the performance period and in connection with

---

[1]      The IUE-CWA incorrectly asserts that, after the Court issued the AIP Order, the Debtors extended the AIP
to their non-executive salaried employees.  (IUE-CWA Objection (Docket No. 4524) at 2.)  The Debtors'
Omnibus Response To Objections To Their Motion For Order Under 11 U.S.C. §§ 105 And 363
Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 2210) (the
"First KECP Omnibus Response"), dated February 8, 2006, disclosed that the Debtors had already

*(cont'd)*

3

its review of the Debtors' actual financial results for the performance period, the Creditors'

Committee may require that the Debtors' make further adjustments to EBITDAR-UG by up to an

aggregate of $100 million based on net savings realized by the Debtors on account of

transformation actions not contemplated by the forecasts used by the Debtors to establish the

EBITDAR-UG target of negative $411 million.

3.      Unlike the contested hearing with respect to the Court's approval of the

AIP Order, the Creditors' Committee supports the Court's entry of the new proposed

Supplemental AIP Order and no objections to the relief sought in the Supplement have been filed

by either of the Debtors' principal lending groups or by either of the Official Committee of

Equity Security Holders nor the Ad Hoc Equity Committee organized by Appaloosa

Management L.P.   Indeed, no interested party has filed an objection to the relief sought in the

Supplement other than the Debtors' six unions representing hourly workers in the domestic U.S.

portion of Delphi's business operations and the Lead Plaintiffs.

4.      The objections to the Supplement fall into three main categories.[2]  First,

the union objectors maintain that implementing additional AIPs will complicate negotiations

between the Debtors and the unions because the Debtors' executives are not sharing in the

sacrifice being asked of union members.  The union objectors also attack the performance targets

for the second-half AIP, characterizing them as a "lay-up" or "slam dunk."  Third, several unions

and Lead Plaintiffs take issue with the Debtors' request for authority to implement AIPs beyond

December 31, 2006.  In addition to these three objections, Lead Plaintiffs ask the Court to ensure

_____
*(cont'd from previous page)*
  implemented incentive programs for their non-executive salaried workforce in the ordinary course of
  business.  (First KECP Omnibus Resp. (Docket No. 2210) at 2 n.3.)

[2]  A chart summarizing the objections and Lead Plaintiffs' response to the Supplement is attached hereto as
  Exhibit B.

4

that the prophylactic measures outlined in the AIP Order apply to any additional AIP

implemented by the Debtors (which objection is moot since the form of proposed Supplemental

AIP Order has always continued the prophylactic measures outlined in the AIP Order) .  The

Debtors respond to each of these objections in greater detail below.

5.    As the evidence demonstrated at the contested hearing on the AIP Order,

the at-risk compensation opportunities provided by the AIP are an essential component of the

Debtors' efforts to restore their executive compensation program to competitive levels.  The

Debtors' prepetition executive compensation program consisted of four principal elements—

annual salary, benefits, a short-term incentive compensation program in the form of an AIP, and

a long-term incentive compensation program that provided the opportunity for stock options,

restricted stock, and cash incentive payments.  When the Debtors commenced their chapter 11

business reorganization cases in October 2005, the short- and long-term incentive compensation

programs were essentially eliminated, leaving in place only salary and benefits, which together

accounted for less than half of the total compensation opportunities available to executives

prepetition.

6.    Also as the evidence demonstrated at the contested hearing on the AIP

Order, an executive compensation program limited to salary and benefits is not competitive with

the practices of the Debtors' peers.  Indeed, the Debtors presented undisputed evidence at the

prior AIP hearing that virtually all Fortune 1000 companies have an annual or short-term

incentive program, as do virtually all public companies in the automotive supply industry.  It is

also undisputed that the terms and conditions of the AIP proposed by the Debtors are well within

the range of competitive practice as compared to short-term incentive programs offered by the

Debtors' peers.  As noted by the Court at the hearing on the first-half AIP:

5

I think that this is more than a simple human resources matter. That is not to say, however, that this is a particularly extraordinary matter. It is—it has been an element of executive compensation generally in the marketplace and, in particular, until the period immediately preceding the debtors' chapter 11 filing, an element of the executive compensation for these particular executives.

. . . .

There was no meaningful evidence to contradict, for example, that the current arrangement, which for the post-petition period does not have any annual incentive element for compensation, is not competitive and that it, in fact, puts the debtor in the bottom quarter in respect of executive compensation with regard to its competitors.

(Hr'g Tr., Feb. 10, 2006 (Docket No. 3414) at 240, 243.)

7.      In the Supplement, the Debtors also asked the Court to adjourn until the October 2006 omnibus hearing the segment of the KECP Motion addressing the emergence bonus plan, which was designed to replace a portion of the compensation opportunities available under the Debtors' prepetition long-term incentive program. The Debtors did not receive any objections to their request for such an adjournment. Accordingly, the hearing on the Supplement scheduled for July 19, 2006 will be limited to the AIP.

8.      The Debtors' legitimate and reasonable business imperative to move towards a fully competitive compensation program for their executives provides ample justification for allowing the Debtors to continue the AIP for additional six-month periods. In addition, the Debtors' financial performance during the first half of 2006 provides additional justification for continuation of the AIP program. Although the Debtors have not finalized their financial results for the first six months of this year, they currently expect that Delphi's operating income will exceed planned levels by approximately $600 million, thereby reducing the expected loss for the fiscal year from approximately $2.6 billion to $2 billion. At this level of financial performance, the maximum payout available under the AIP for the first half of the year will be approximately $36.3 million, or just over 6% of the value added to the Debtors' estates, creditors,

6

and other stakeholders during that period (i.e., in this case, reduction of anticipated losses by $600 million). The Debtors' financial performance was the result of many factors, among them the Company's exceptional operational performance, which was led by the Debtors' executive team and was achieved despite the Debtors' involvement in one of the largest and most complex manufacturing reorganizations in history.

9.      Rather than appreciate this remarkable performance, the union objectors contend that the performance targets under the first-half AIP were too low.[3] Contrary to the unions' assertions, which are made without any evidentiary support, the AIP performance targets were drawn from Delphi's budget, which was the product of a rigorous business-planning process. Under that process, the budget for the first half of 2006 was prepared from the bottom up, with each division forecasting its performance on a number of financial and operational metrics. The division-level budgets were then presented to and reviewed by members of Delphi's senior management, as well as by Delphi's Board of Directors.

10.      In addition to the appropriate business judgment and corporate governance process provided by this multi-layer review, there are several reasons why a division would avoid presenting earnings forecasts that are a forgone conclusion. For instance, the company considers these numbers in deciding how to allocate capital and other resources among the divisions and whether the company should expand or contract each division. If a division presents low budget numbers, it may be perceived as a poor performer in relation to other divisions, making it a less attractive candidate to receive corporate resources. These concerns

---

[3]      The IUE-CWA takes this argument a step further, misstating that, "by the time the program was approved in March, 2006 by the Court," the Debtors' executives already knew "that the first half targets would be met." (IUE-CWA Objection (Docket No. 4524) at 9.) In fact, the Court issued the AIP Order approving the program on February 17, 2006. And at the hearing on February 10, 2006, the Court expressly found, based on the undisputed evidence, "that that target has not been met already but that it is something that is, at this point, still an aspiration." (Hr'g Tr. Feb. 10, 2006 (Docket No. 3414) at 245.)

7

were particularly acute with respect to the budget for the first half of 2006, when the Company

was developing its transformation plan and deciding which product lines and manufacturing sites

would remain part of its core operations.

        11.     The performance targets for the second-half AIP are also the result of a

bottom-up business planning process, and have been reviewed and approved by the

Compensation and Executive Development Committee of Delphi's Board of Directors (the

"Compensation Committee") as well as by the Board of Directors.  Although the Debtors have a

reasonable level of confidence that their business targets are achievable, actually meeting the

targets will require the Debtors to continue their excellent performance in the second half of the

year.  The objectors' rhetorical bluster to the contrary has no support.

Responses To Objections

A.     The Unions' Concerns Regarding Shared Sacrifice And Collective Bargaining Do Not
        Defeat The Debtors' Business Judgment To Implement Additional AIPs

        12.     The union objectors argue that continuing the AIP is unfair in light of the

Debtors' labor proposals, and that the AIP will impede collective bargaining and could ultimately

derail the Debtors' reorganization by preventing a successful resolution of labor issues.  The

Court overruled this same objection with respect to the first-half AIP, which was heard one week

before the Debtors were scheduled to file their motion under sections 1113 and 1114 of the

Bankruptcy Code, 11 U.S.C. §§ 1113-1114, stating:

> It is very hard to ask someone to make a substantial give-up, when you yourself
> have just received the right to obtain a bonus.  And it, at a minimum, takes at least
> in practical terms, I would think, at least 10 minutes of explaining in any meeting
> where that issue's raised, if someone's willing to listen, why the fate of one, the
> bonus, should not really be tied to the other, and, in fact, that the request for the
> concession is thematically, actually related to the other, in the sense, that they're
> both intended to make the debtor more competitive.  Nevertheless, I believe that
> anyone negotiating in good faith with the debtors, would ultimately have to accept
> that explanation.  And, I think that the debtors' unions, their advisors, and the rank

8

and file, are, first, smart enough to make the argument, the inevitable argument,
and, second, smart enough also to understand the debtors' and my response.

(Hr'g Tr., Feb. 10, 2006 (Docket No. 3414) at 249-50.)  The Court also rejected the related

notion, raised again here by some objectors, that the Debtors should wait until some later point to

propose an AIP.  As the Court stated:

> it appears to me that if I did not approve this AIP today, I would be approving it at
> some point, because it is reasonable, and I don't really see a logical reason to defer
> that beyond the inevitable push back that the debtors would receive.  But, they
> would receive that push back inevitably, I believe, at any time.  And it has chosen
> to bring it on now, and based on this record, it's entitled to it.

(Id. at 250-51.)

13.    The unions' objection has even less force today because the course of

events since the first-half AIP was approved on February 17, 2006 demonstrate that the existence

of an AIP does not preclude the Debtors and the unions from making progress toward the goal of

a consensual resolution of labor issues.  For example:

- On March 22, 2006, the Debtors, the UAW, and GM reached an
  agreement on the UAW Special Attrition Program.

- On June 5, 2006, the Debtors, the UAW, and GM agreed to a supplement
  to the UAW Special Attrition Program.

- Less than one week later, on June 9, 2006, the Debtors agreed to a 60-day
  adjournment of the hearing on their motion under sections 1113 and 1114
  (as well as an adjournment of the hearing on their motion for authority to
  reject certain contracts with GM) in light of the significant progress in its
  discussions with the UAW, the IUE-CWA, the USW, and GM.

- The following week, on June 16, 2006, the Debtors reached an agreement
  with the IUE-CWA and GM on the IUE-CWA Special Attrition Program.

14.    The IUE-CWA attempts to downplay the significance of the attrition

programs on the ground that, unlike modifications to collective bargaining agreements, the

attrition programs were not subject to ratification by union members.  The IUE-CWA has offered

no support, however, for its implicit contention that union members would have voted the

9

programs down had they had the chance.  Indeed, the number of eligible employees who voted

with their feet by signing up for the attrition programs strongly suggests that this is not the case.

Moreover, the Debtors believe that the outcome of any ratification vote will depend on the terms

of the proposed modifications and their impact on union members, rather than extraneous

considerations involving the AIP.  As the Court recognized at the hearing on February 10, 2006,

"the fate of one . . . should not really be tied to the other."  (Id. at 250.)

B.     The Debtors Have Proposed Reasonable Performance Targets For The Second-Half AIP

15.     The performance targets for the second-half AIP were drawn from the

Debtors' 3+9 forecast, with some adjustments for the Debtors projections of North American

sales volumes to GM.  Like the performance targets for the first-half AIP, the second-half targets

were the product of a bottom-up approach that involved business planning on a division-by-

division basis.  In addition, the independent directors on the Compensation Committee reviewed

and approved the targets at their meeting on June 27, 2006 and the full Board of Directors

ratified the Compensation Committee's actions at its regular monthly meeting on July 18, 2006.

16.     Several objectors take issue with the fact that the targets for the second-

half AIP are lower than those for the first half.  As explained in the Supplement, however,

historical financial data demonstrate that Delphi's financial performance is seasonal and

customarily declines substantially during the second half of each calendar year (in no small part

as a result of the annual summer industry shutdown and lower productivity related to model

changeover and launches in the second half of the calendar year).  The Debtors have also

explained the business reasons why they expect this phenomenon to recur in 2006, among them

10

the seasonality of Delphi's business, volume and mix changes, and pricing reductions associated with the 2007 models produced by original equipment manufacturers.[4]

17.    In short, the Debtors' business judgment is that the performance targets are set at a reasonable level that will spur the Debtors' executives to overcome the challenges associated with operating a company in chapter 11 and continue the company's exceptional performance into the second half of 2006.  The objectors provide conclusory rhetoric that the targets are too low, but they have not presented any basis for legitimately challenging the Debtors' business judgment.[5]  Furthermore, increasing the performance targets would remove the link between the AIP and the operating plan that Delphi uses to manage its business, resulting in arbitrary targets that do not reflect the company's true objectives.

C.    It Is Appropriate To Grant The Debtors Authority To Implement AIPs Beyond December 31, 2006, Subject To Agreement With The Creditors' Committee Or Further Court Order

18.    In the Supplement, the Debtors requested the authority to continue the AIP for six-month increments following December 31, 2006, subject to the Debtors' ability to reach an agreement with the Creditors' Committee on performance targets and payout curves or further

---

[4]    In addition to objecting to the targets themselves, the IUOE, IBEW, and IAM contend that the targets will somehow increase the cost of the AIP during the second half.  (IUOE, IBEW, & IAM Objection (Docket Nos. 4529-31) ¶ 3.)  This is not the case.  The payouts available under the second-half AIP are the same as those approved by the Court with respect to the first half.  In fact, because of executive attrition, the maximum payout for the second half will likely be less than the maximum payout for the first half.

[5]    Furthermore, the IUE-CWA's objection on this point is based on its faulty calculation that the Debtors will achieve their performance targets even if Delphi experiences an operating loss of $1.584 billion in the second half of 2006.  (See IUE-CWA Objection (Docket No. 4524) at 2.)  It appears that the IUE-CWA computed this figure by adding the corporate EBITDAR-UG target and all of the division OIBITDAR-UG targets disclosed in paragraph nine of the Supplement, without regard to whether those targets are positive or negative—e.g., ($100) + $90 = ($190).  Furthermore, the IUE-CWA's computation essentially counts the division targets twice because the corporate target of ($411.0 million) is based on an aggregation of the division numbers, with some adjustments for corporate-level items.  The IUE-CWA also describes as "meaningless" the Supplement's chart demonstrating the seasonality of Delphi's operating income because it does not include restructuring costs or other one-time items.  (IUE-CWA Objection (Docket No. 4524) at 9.)  However, the AIP's EBITDAR-UG and OIBITDAR-UG targets likewise do not include restructuring costs, and thus, the historical seasonality of Delphi's business will directly affect the performance metrics under the AIP.

11

order of the Court.  Several objectors take issue with this portion of the Supplement, arguing that

the Debtors should seek the Court's approval for each six-month period.  This exercise is

particularly inefficient given that the objections to the Supplement are largely identical to the

objections that were raised and overruled by the Court as to the first-half AIP.  The Debtors

anticipate that these same objections would reappear in connection with any AIP they propose.

19.        At the same time, the essential elements of the AIP are not going to

change.  The Court has already concluded that those elements are "fair and reasonable" (AIP

Order ¶ C), and that the AIP "pass[es] muster as an appropriate form of compensation . . . that

passes the business judgment test" (Hr'g Tr. Feb. 10, 2006 (Docket No. 3414) at 246-47.).  The

fundamental facts underlying the Debtors' request for continuing authority will also remain

constant—most notably the fact that, without the AIP, the Debtors will be left with an

uncompetitive executive compensation structure that includes only salary and benefits.[6]

Similarly, the argument that the Debtors should wait until emergence or some other point in 2007

to implement another AIP is nothing more than a disguised plea to cancel the AIP and return the

Debtors' executive compensation program to uncompetitive levels.

20.        Conditioning the Debtors' authority on the existence of an agreement with

the Creditors' Committee—whose membership includes the Debtors' two largest unions as

official or ex officio members—safeguards the interests of the unions and other creditors.  The

Creditors' Committee has a fiduciary duty to represent the interests of creditors, and to date the

---

[6]        The IUOE, IBEW, and IAM disregard these findings, asserting that "the Debtor has not established that its
executive compensation levels are not competitive." (IUOE, IBEW, & IAM Objection (Docket Nos. 4529-
31) ¶ 12.)  The IUE-CWA makes a similar argument in its objection. (IUE-CWA Objection (Docket No.
4524) at 9.)  These arguments completely ignore the record established at the first AIP hearing and the
Court's explicit findings as to the Debtors' executive compensation structure.  Those findings were based on
uncontroverted evidence regarding the uncompetitiveness of that structure, including the conclusions of a
comprehensive study performed by Delphi's independent compensation consultant, Watson Wyatt
Worldwide.  Given the Court's conclusions, there is no reason to litigate this issue again, particularly since
no objector has come forward with contrary evidence.

12

Creditors' Committee has played an active role with respect to the AIP.  The Debtors and their

compensation consultant and financial advisors have worked closely with the Creditors'

Committee and its compensation consultant and financial advisors on all aspects of the design of

the AIP, including performance targets and payout curves, and the Creditors' Committee has

provided constructive recommendations on program elements throughout this process.  With

respect to the second-half AIP, the Debtors and the Creditors' Committee engaged in extensive

discussions over the course of several months, which led to the modifications described above

and the Creditors' Committee's support for the new proposed Supplemental AIP Order.  There is

no reason to believe that the Creditors' Committee will not continue to adequately represent the

interests of the unions and other creditors with respect to the AIP.

D.      The Debtors Agree That The Prophylactic Measures In The AIP Order Should Apply To
        Any Continuation of the AIP Implemented By The Debtors

               21.      In paragraph 10 of the AIP Order, the Court established prophylactic

measures designed to prevent the payment of incentive compensation to the Debtors' executives

under certain circumstances, including with respect to any executive who fails to act in good

faith and in a manner consistent with the Debtors' best interests.  In its response to the

Supplement, the Lead Plaintiffs seek assurances that these prophylactic measures will be equally

applicable to any continuation of the AIP by the Debtors.  As explained in the Supplement, the

Debtors seek the authority to continue the AIP under the same terms and conditions as those set

forth in the AIP Order, including the prophylactic measures in paragraph 10, with new

performance targets and corresponding payout curves for each period.

<u>Conclusion</u>

WHEREFORE, the Debtors respectfully request that the Court enter a

Supplemental AIP Order in substantially the form of that attached to this omnibus response as

Exhibit A overruling the objections to the Supplement and granting the Debtors the relief

requested and such other and further relief as is just.

Dated: New York, New York
       July 18, 2006

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP


                                        By: */s/ John Wm. Butler, Jr.*
                                            John Wm. Butler, Jr. (JB 4711)
                                            Albert L. Hogan, III (AH 8807)
                                            John K. Lyons (JL 4951)
                                            Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                     - and –

                                        By: */s/ Kayalyn A. Marafioti*
                                            Kayalyn A. Marafioti (KM 9632)
                                            Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, <u>et al.</u>,
                                          Debtors and Debtors-in-Possession

14

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
          In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                         Debtors.         :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 105 AND 363
AUTHORIZING THE DEBTORS TO:  (A) FIX SECOND HALF 2006
AIP TARGETS AND CONTINUE AIP PROGRAM AND (B) FURTHER
ADJOURN KECP EMERGENCE INCENTIVE PROGRAM HEARING

("SUPPLEMENTAL AIP ORDER")

Upon the Supplement To KECP Motion (Docket No. 213) Seeking Authority To:

(A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn

KECP Emergence Incentive Program Hearing (the "Supplement"), dated June 29, 2006, of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"); and upon the

declarations of Debra S. Alexander, Nick Bubnovich, Virgis W. Colbert, Rodney O'Neal, and

John D. Sheehan, each executed June 29, 2006; and after consideration of any objections to the

Supplement filed by any party; and upon the record of the hearing held on July 19, 2006 on the

relief requested in the Supplement, including the Court's consideration of the testimony and

exhibits; and this Court having determined that the relief requested in the Supplement is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and this

Court having entered an Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To

Implement A Short-Term Annual Incentive Program ("AIP Order") (Docket No. 2441), dated

February 17, 2006; and it appearing that proper and adequate notice of the Supplement was given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Debtors have exercised reasonable business judgment in seeking the authority to implement short-term annual incentive plans ("AIPs") covering the six-month period running from July 1, 2006 through December 31, 2006 and during each successive six-month period during which the Debtors are engaged in the chapter 11 process.

B.    The AIPs currently before the Court, including the Debtors' proposal to implement the AIP covering the second half of 2006, were proposed in good faith and are in all respects fair and reasonable.

C.    It is in the best interest of the Debtors, their estates, their creditors, and parties-in-interest, and it is necessary to the Debtors' reorganization efforts, that the Debtors implement at this time an AIP for the period from July 1, 2006 through December 31, 2006, and that the Debtors have the authority to implement AIPs in any succeeding six-month period during which they are engaged in the chapter 11 process, subject to (i) the Debtors' ability to reach an agreement with the Official Committee of Unsecured Creditors (the "Creditors' Committee") regarding the substance of the AIP for that period within a reasonable time after that period begins or (ii) further order of this Court.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

The AIP Order shall continue in full force and effect except as follows:

2    DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8. Performed on 7/18/2006.

1.      The relief requested in the Supplement is GRANTED; any objections thereto are OVERRULED; and the remainder of the KECP Motion and any objections thereto are ADJOURNED to the omnibus hearing scheduled for October 19, 2006.

2.      The Court approves the implementation at this time of an AIP covering the six-month period from July 1, 2006 through December 31, 2006, and the Debtors are authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to forthwith take all actions consistent with this Supplemental AIP Order that are reasonably necessary to implement an AIP for that period on the terms and conditions set forth in the AIP Order; provided, however, that the range of incentive-compensation opportunities for Covered Employees during that period shall be determined pursuant to the payout curves attached hereto as Exhibit 1, which do not include any incentive-compensation opportunities for corporate or divisional performance that is below target.  The EBITDAR-UG target for the AIP covering the period from July 1, 2006 through December 31, 2006 shall be set at a negative $411 million.  The OIBITDAR-UG targets for the same period shall be as follows:  (i) Powertrain (formerly known as Energy and Chassis) = negative $58.0 million; (ii) Steering = negative $114.0 million; (iii) Thermal and Interior = negative $140.0 million; (iv) Electronics and Safety = $179.0 million; (v) Packard Electric = negative $17.0 million; (vi) Product and Service Solutions = $22.0 million; (vii) Automotive Holdings Group = negative $634.0 million; and (viii) Medical = negative $9.0 million.

3.      For purposes of the AIP covering the period from July 1, 2006 through December 31, 2006, EBITDAR-UG shall include adjustments for: (a) net savings realized during the performance period generated from comprehensive transformation agreements reached with any of the Debtors' labor unions; (b) with regard to the Debtors' hourly attrition programs, both the cost of implementing these programs as well as the benefit to the Debtors of paying lower net

----

3        DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8. Performed on 7/18/2006.

wages to employees who replace those who voluntarily attrite under the hourly attrition programs realized during the performance period; and (c) additional adjustments (including to amounts included in clauses (a) and (b)) up to an aggregate amount of $100 million as reasonably determined by the Creditors' Committee in accordance with this paragraph to account for direct or indirect net savings realized by the Debtors during the performance period on account of transformation actions not contemplated by the Debtors' business plan forecasts utilized to establish the EBITDAR-UG target of negative $411 million.  The Creditors' Committee shall consult with the Debtors in making any determination under this paragraph, but in no event shall the Debtors have any right to reject or seek review by the Court of any such adjustment.  The Creditors' Committee shall make its determination hereunder no later than February 15, 2007.  In connection with such determination, the Debtors shall provide the Creditors' Committee on or prior to February 1, 2007 with the actual results of performance for such period (and appropriate back-up therefor), and shall provide the Creditors' Committees' professionals with such additional back-up therefor as may be reasonably requested.  Prior to February 15, 2007, the Debtors shall not make any AIP payments for the performance period until the Creditors' Committee's actual determination hereunder as to whether adjustments to EBITDAR-UG permissible hereunder are in the best interests of the Debtors' and their estates.  In the event that no determination is made by the Creditors' Committee by February 15, 2007, the Debtors shall calculate EBITDAR-UG without adjustment for clause (c) of this paragraph.  The date references to "February 1, 2007" and to "February 15, 2007" in this paragraph may be extended by mutual agreement of the Debtors and the Creditors' Committee.

        4.     3. The Court grants the Debtors the authority to implement AIPs for any six-month period beginning after December 31, 2006, during which the Debtors are engaged in

---

4    DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8. Performed on 7/18/2006.

the chapter 11 process, subject to (i) the Debtors and the Creditors' Committee reaching an

agreement regarding the substance of the AIP for that period within a reasonable time after that

period begins or (ii) further order of this Court.

5.      4. This Court shall retain jurisdiction over the Debtors and the Covered

Employees participating in any AIP implemented pursuant to this Supplemental AIP Order,

including without limitation for the purposes of interpreting, implementing, and enforcing the

terms and conditions of any such AIP.

6.      5. The requirement under Rule 9013-1(b) of the Local Rules for the United

States Bankruptcy Court for the Southern District of New York for the service and filing of a

separate memorandum of law is deemed satisfied by the Supplement.

7.      6. Capitalized terms not separately defined herein shall have the meanings

ascribed to them in the AIP Order.


Dated: New York, New York
        _____, 2006




                            _____
                            UNITED STATES BANKRUPTCY JUDGE









5.......DeltaView comparison of pcdocs://chisr01a/500515/5 and pcdocs://chisr01a/500515/8.
Performed on 7/18/2006.

# EXHIBIT 1

DELPHI CORPORATION

Proposed 2nd 2006 6-month **Corporate EBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($411.0) | 0.0% | 0.0% |
| 100.0% | ($411.0) | 100.0% | 100.0% |
| 101.0% | ($406.8) | 100.5% | 101.0% |
| 110.0% | ($368.9) | 105.0% | 110.0% |
| 120.0% | ($326.8) | 110.0% | 120.0% |
| 130.0% | ($284.7) | 115.0% | 130.0% |
| 131.0% | ($280.5) | 115.5% | 131.0% |
| 140.0% | ($242.6) | 120.0% | 140.0% |
| 150.0% | ($200.5) | 125.0% | 150.0% |
| 151.0% | ($196.3) | 125.5% | 151.0% |
| 160.0% | ($158.4) | 130.0% | 160.0% |
| 170.0% | ($116.3) | 135.0% | 170.0% |
| 180.0% | ($74.2) | 140.0% | 180.0% |
| 190.0% | ($32.1) | 145.0% | 190.0% |
| 200.0% | $10.0 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| EBITDAR | ($411.0) | $10.0 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2nd Q 2006 6-month **Powertrain OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($58.0) | 0.0% | 0.0% |
| 100.0% | ($58.0) | 100.0% | 100.0% |
| 101.0% | ($56.9) | 100.5% | 101.0% |
| 110.0% | ($47.2) | 105.0% | 110.0% |
| 120.0% | ($36.4) | 110.0% | 120.0% |
| 130.0% | ($25.5) | 115.0% | 130.0% |
| 131.0% | ($24.5) | 115.5% | 131.0% |
| 140.0% | ($14.7) | 120.0% | 140.0% |
| 150.0% | ($3.9) | 125.0% | 150.0% |
| 151.0% | ($2.8) | 125.5% | 151.0% |
| 160.0% | $6.9 | 130.0% | 160.0% |
| 170.0% | $17.7 | 135.0% | 170.0% |
| 180.0% | $28.6 | 140.0% | 180.0% |
| 190.0% | $39.4 | 145.0% | 190.0% |
| 200.0% | $50.2 | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($58.0) | $50.2 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Second Half 2006 6-month **Steering OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($114.0) | 0.0% | 0.0% |
| 100.0% | ($114.0) | 100.0% | 100.0% |
| 101.0% | ($113.7) | 100.5% | 101.0% |
| 110.0% | ($110.6) | 105.0% | 110.0% |
| 120.0% | ($107.1) | 110.0% | 120.0% |
| 130.0% | ($103.7) | 115.0% | 130.0% |
| 131.0% | ($103.4) | 115.5% | 131.0% |
| 140.0% | ($100.3) | 120.0% | 140.0% |
| 150.0% | ($96.9) | 125.0% | 150.0% |
| 151.0% | ($96.5) | 125.5% | 151.0% |
| 160.0% | ($93.4) | 130.0% | 160.0% |
| 170.0% | ($90.0) | 135.0% | 170.0% |
| 180.0% | ($86.6) | 140.0% | 180.0% |
| 190.0% | ($83.1) | 145.0% | 190.0% |
| 200.0% | ($79.7) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($114.0) | ($79.7) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2nd Half 2006 6-month **Thermal OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($140.0) | 0.0% | 0.0% |
| 100.0% | ($140.0) | 100.0% | 100.0% |
| 101.0% | ($139.5) | 100.5% | 101.0% |
| 110.0% | ($134.6) | 105.0% | 110.0% |
| 120.0% | ($129.3) | 110.0% | 120.0% |
| 130.0% | ($123.9) | 115.0% | 130.0% |
| 131.0% | ($123.4) | 115.5% | 131.0% |
| 140.0% | ($118.6) | 120.0% | 140.0% |
| 150.0% | ($113.2) | 125.0% | 150.0% |
| 151.0% | ($112.7) | 125.5% | 151.0% |
| 160.0% | ($107.8) | 130.0% | 160.0% |
| 170.0% | ($102.5) | 135.0% | 170.0% |
| 180.0% | ($97.1) | 140.0% | 180.0% |
| 190.0% | ($91.8) | 145.0% | 190.0% |
| 200.0% | ($86.4) | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($140.0) | ($86.4) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 12-month **Electronics and Safety OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $179.0 | 0.0% | 0.0% |
| 100.0% | $179.0 | 100.0% | 100.0% |
| 101.0% | $180.0 | 100.5% | 101.0% |
| 110.0% | $188.6 | 105.0% | 110.0% |
| 120.0% | $198.3 | 110.0% | 120.0% |
| 130.0% | $207.9 | 115.0% | 130.0% |
| 131.0% | $208.9 | 115.5% | 131.0% |
| 140.0% | $217.5 | 120.0% | 140.0% |
| 150.0% | $227.2 | 125.0% | 150.0% |
| 151.0% | $228.1 | 125.5% | 151.0% |
| 160.0% | $236.8 | 130.0% | 160.0% |
| 170.0% | $246.4 | 135.0% | 170.0% |
| 180.0% | $256.0 | 140.0% | 180.0% |
| 190.0% | $265.7 | 145.0% | 190.0% |
| 200.0% | $275.3 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | $179.0 | $275.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2H 2006 6-month **Packard OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($17.0) | 0.0% | 0.0% |
| 100.0% | ($17.0) | 100.0% | 100.0% |
| 101.0% | ($16.1) | 100.5% | 101.0% |
| 110.0% | ($7.6) | 105.0% | 110.0% |
| 120.0% | $1.9 | 110.0% | 120.0% |
| 130.0% | $11.3 | 115.0% | 130.0% |
| 131.0% | $12.2 | 115.5% | 131.0% |
| 140.0% | $20.7 | 120.0% | 140.0% |
| 150.0% | $30.2 | 125.0% | 150.0% |
| 151.0% | $31.1 | 125.5% | 151.0% |
| 160.0% | $39.6 | 130.0% | 160.0% |
| 170.0% | $49.0 | 135.0% | 170.0% |
| 180.0% | $58.4 | 140.0% | 180.0% |
| 190.0% | $67.9 | 145.0% | 190.0% |
| 200.0% | $77.3 | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($17.0) | $77.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006-2008 Twelve-Month **Product & Service Solutions OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | $22.0 | 0.0% | 0.0% |
| 100.0% | $22.0 | 100.0% | 100.0% |
| 101.0% | $22.3 | 100.5% | 101.0% |
| 110.0% | $25.2 | 105.0% | 110.0% |
| 120.0% | $28.3 | 110.0% | 120.0% |
| 130.0% | $31.5 | 115.0% | 130.0% |
| 131.0% | $31.8 | 115.5% | 131.0% |
| 140.0% | $34.7 | 120.0% | 140.0% |
| 150.0% | $37.9 | 125.0% | 150.0% |
| 151.0% | $38.2 | 125.5% | 151.0% |
| 160.0% | $41.0 | 130.0% | 160.0% |
| 170.0% | $44.2 | 135.0% | 170.0% |
| 180.0% | $47.4 | 140.0% | 180.0% |
| 190.0% | $50.5 | 145.0% | 190.0% |
| 200.0% | $53.7 | 150.0% | 200.0% |



|  | Target | Maximum |
|---|---|---|
| OIBITDAR | $22.0 | $53.7 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2nd Half 6-Month **Automotive Holdings Group OIBITDAR** AIP Payout Curve

| %<br>Performance | $ Performance<br>(in millions) | DSB<br>% Payout | Non-DSB<br>% Payout |
|---|---|---|---|
| 100.0% | ($634.0) | 0.0% | 0.0% |
| 100.0% | ($634.0) | 100.0% | 100.0% |
| 101.0% | ($633.7) | 100.5% | 101.0% |
| 110.0% | ($631.1) | 105.0% | 110.0% |
| 120.0% | ($628.1) | 110.0% | 120.0% |
| 130.0% | ($625.2) | 115.0% | 130.0% |
| 131.0% | ($624.9) | 115.5% | 131.0% |
| 140.0% | ($622.2) | 120.0% | 140.0% |
| 150.0% | ($619.3) | 125.0% | 150.0% |
| 151.0% | ($619.0) | 125.5% | 151.0% |
| 160.0% | ($616.4) | 130.0% | 160.0% |
| 170.0% | ($613.4) | 135.0% | 170.0% |
| 180.0% | ($610.5) | 140.0% | 180.0% |
| 190.0% | ($607.5) | 145.0% | 190.0% |
| 200.0% | ($604.6) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($634.0) | ($604.6) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

DELPHI CORPORATION
Proposed 2006 6-month **Medical OIBITDAR** AIP Payout Curve

| % Performance | $ Performance (in millions) | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| 100.0% | ($9.0) | 0.0% | 0.0% |
| 100.0% | ($9.0) | 100.0% | 100.0% |
| 101.0% | ($9.0) | 100.5% | 101.0% |
| 110.0% | ($8.9) | 105.0% | 110.0% |
| 120.0% | ($8.8) | 110.0% | 120.0% |
| 130.0% | ($8.8) | 115.0% | 130.0% |
| 131.0% | ($8.8) | 115.5% | 131.0% |
| 140.0% | ($8.7) | 120.0% | 140.0% |
| 150.0% | ($8.6) | 125.0% | 150.0% |
| 151.0% | ($8.6) | 125.5% | 151.0% |
| 160.0% | ($8.5) | 130.0% | 160.0% |
| 170.0% | ($8.4) | 135.0% | 170.0% |
| 180.0% | ($8.4) | 140.0% | 180.0% |
| 190.0% | ($8.3) | 145.0% | 190.0% |
| 200.0% | ($8.2) | 150.0% | 200.0% |



| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($9.0) | ($8.2) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

# EXHIBIT B

**Objection Summary Chart**

**Objections And Response To Supplement To KECP Motion (Docket No. 213) Seeking Authority To:  (A) Fix Second Half 2006
AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing**

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America ("IUE-CWA") | 4524 | 07/12/06 | • The performance targets for the second half of 2006 are too low.  So were the performance targets for the first half of 2006. <br> • Implementing a short-term annual incentive program ("AIP") will complicate the Debtors' bargaining with the unions, the section 1113/1114 process, and the Debtors' ability to reorganize.  The AIP is inconsistent with the notion of shared sacrifice among the Debtors' executives and union members. <br> • The Debtors should have consulted with the unions before proposing the AIP. <br> • The Debtors should seek authority for each six-month period separately.  The interests of the Official Committee of Unsecured Creditors ("Creditors' Committee") are different from the unions'. <br> • The Debtors should wait until emergence, or at least until the section 1113/1114 process is complete, to implement any additional AIP. <br> • The Debtors have not established that their executive compensation is uncompetitive. <br> • The AIP is essentially a retention program.  Retention programs do not work well. |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, | 4526 | 07/12/06 | • The USW relies in part on its objections to the KECP Motion, filed on November 22, 2005 (Docket No. 1134). |

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| Allied Industrial and Service Workers, International Union ("USW") | | | • The performance targets for the first half of 2006 were too low. The Debtors' executives have received more compensation in 2005 and 2006 than in previous years.<br>• It is unfair to implement the AIP while the Debtors are asking for concessions from union members. USW members are already below the market rate identified in connection with the section 1113/1114 hearing. The AIP would make ratification of a revised collective bargaining agreement more difficult. |
| Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalange-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP ("Lead Plaintiffs") | 4528 | 07/12/06 | • The prophylactic measures applicable to the first-half AIP should apply to any additional AIP implemented by the Debtors.<br>• The Debtors should not be granted open-ended authority to implement AIPs beyond the second half of 2006. |
| International Brotherhood of Electrical Workers Local Union No. 663 ("IBEW"), International Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78, District 10 ("IAM"), and International Union of Operating Engineers, Locals 18S, 101S, and 832S ("IUOE") | 4529-4531 | 07/12/06 | • It is unfair to implement the AIP while the Debtors are asking for concessions from union members. Implementing an AIP will complicate the Debtors' bargaining with the unions.<br>• The performance targets for the first half of 2006 were too low. So are the performance targets for the second half of 2006. Lower second-half performance targets will increase the cost of the AIP.<br>• The Debtors have not established that the AIP is needed to make executive compensation competitive or to reduce executive turnover.<br>• The Debtors should not be granted open-ended authority to implement AIPs beyond the second half of 2006. The Debtors should consult with the unions. |

2

| Party | Docket No. | Date | Summary |
|---|---|---|---|
| | | | • The Debtors should wait until emergence to implement any additional AIP.<br>• The AIP is a retention program that violates the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. |
| International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") | 4556 | 07/14/06 | • The performance targets for the first half of 2006 were too low. So are the performance targets for the second half of 2006. The Debtors' first-half performance is not attributable to the AIP.<br>• Implementing an AIP will complicate the Debtors' bargaining with the unions and the section 1113/1114 process. It is unfair to implement an AIP while the Debtors are asking for concessions from the unions.<br>• The Debtors should wait until later in the case to implement any additional AIPs.<br>• The Court should view with skepticism the work of compensation consultants.<br>• The Debtors should seek authority for each six-month period separately. The Creditors' Committee does not represent all constituents, and its judgment should not be substituted for the Court's. |