IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :

In re                          :     Chapter 11

                                     :

DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)

                                     :

                  Debtors.     :     (Jointly Administered)

                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On July 21, 2006, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

1) Order Under 11 U.S.C. §§ 363 and 365 and Fed.R.Bankr.P. 2002, 6004, 6006, and 9014 Authorizing and Approving (I) Sale of Certain of Debtors' Assets Comprising Substantially All of Assets of MobileAria, Inc. Free and Clear of Liens, Claims, and Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities (MobileAria Sale Order) (Docket No. 4655) [a copy of which is attached hereto as Exhibit D]

Dated: July 27, 2006

                                  */s/ Evan Gershbein*
                                  Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 27th day of July, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature :    */s/ Shannon J Spencer*

Commission Expires:   *6/20/10*

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | marjaivalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et.al.
Case No. 05-44481 (RDD)

Page 1 of 3

7/24/2006 6:35 AM
Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

7/24/2006 6:35 AM
Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

7/24/2006 6:35 AM
Master Service List

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Arnall Golden Gregory, LLP | Darryl S. Laddin<br>Sean C. Kulka | 171 17th Street, NW, Suite 2100 | | Atlanta | GA | 30363 | 404-873-8500 | 404-873-8121 | dladdin@agg.com<br>sean.kulka@agg.com | Counsel to Verizon Services Corp |
| Cooley Godward, LLP | Gregg S. Kleiner, Esq | 101 California Street | 5th Floor | San Francisco | CA | 94111-5800 | 415-693-2034 | 415-693-2222 | gkleiner@cooley.com | Counsel to Wireless Matrix |
| Davis Polk & Wardwell | Donald Bernstein and Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092<br>212-450-4213 | 212-450-3092<br>212-450-3213 | donald.bernstein@dpw.com<br>brian.resnick@dpw.com | Counsel to Debtors' Postpetition Administrative Agent |
| Delphi Corporation | David Sherbin | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | david.sherbin@delphi.com | Debtors |
| Delphi Corporation | John D. Sheehan | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | john.sheehan@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler<br>Bonnie Steingart<br>Vivek Melwani<br>Jennifer L Rodburg<br>Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com<br>slivin@ffhsj.com | Counsel to Equity Security Holders Committee |
| Heller Ehrman LLP | Carren Shulman, Esq<br>Timothy Mehok, Esq | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | 212-763-7600 | Carren.shulman@hellerehrman.com<br>Timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022-4802 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to the Official Committee of Unsecured Creditors |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. and Marissa Wesely | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com<br>rtrust@stblaw.com<br>wrussell@stblaw.com<br>mwesely@stblaw.com | Counsel to Debtors' Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com<br>jlyonsch@skadden.com<br>rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com<br>tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/24/2006 10:58 AM
Verizon Response Special Parties

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel for Recticel North America, Inc. |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Products |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

7/24/2006 6:36 AM
Master Service List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel for Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel for Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | Counsel for Stanley Electric Sales of America, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | aleinoff@ampn.com | Counsel for APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | mhamilton@ampn.com | Counsel for APS Clearing, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"); SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel for CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel for Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel for Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel for Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel for Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel for Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James F. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | jmurph@berrymoorman.com | Counsel for Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel for Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel for DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel for Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel for Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel for Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel for SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel for Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | | 303-295-0202 | | sabelman@cagewilliams.com | Counsel for United Power, Inc. |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.c | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunin Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel for Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel for ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A. de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale, Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel for International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | | 615-321-0555 | 615-321-9555 | amalone@colwinlaw.com | Counsel for Averitt Express, Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel for Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel for Nisshinbo Automotive Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8868 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel for The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | | Southaven | MS | 38671 | | | | akatz@entergy.com | Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel for Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel for Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel for Kuss Corporation |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel for Southwest Metal Finishing, Inc. |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Ryder Integrated Logistics, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David V. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel for Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel for UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel for UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel for Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Heller Ehrman LLP | Carren Shulman Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | carren.shulman@hellerehrman.com timothy.mehok@hellerehrman.com | Counsel for @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel for Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel for Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Trutron Corporation |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel for SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | 850-763-8425 | gerdekomarek@bellsouth.net | Counsel for Peggy C. Brannon, Bay County Tax Collector |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msornerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel for Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel for Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel for Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel for Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8340 | 212-947-1202 | rcovino@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel for AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel for Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel for Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel for Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel for H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel for Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel for Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel for Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel for National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel for Prince George County, Maryland |
| Miami-Dade County, FL | April Burch | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | | 305-375-5314 | 305-375-1142 | aburch@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarb@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel for Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel for Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel for Texas Instruments Incorporated |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel for Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Nathan, Neuman & Nathan, P.C. | Susanna C. Brennan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | sbrennan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler io devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel for The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | | 312-849-2020 | 312-849-2021 | mmoody@okmlaw.com | Counsel for Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Anthony Princi Esq Thomas L Kent Esq | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5000 | 212-506-5151 | aprinci@orrick.com tkent@orrick.com | Counsel to Ad Hoc Committee of Trade Claimants |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew C. Wheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel for Westwood Associates, Inc. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | shazan@oshr.com | Counsel for Sharp Electronics Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel for Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel for Marshall E. Campbell Company |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel for Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation; Security Plastics Division/NMC LLC |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegr | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup. | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel for Jaeron Incorporated, Sackner Products Division |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel for Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel for Blue Cross Blue Shield of South Carolina |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11553 | | 516-227-1600 | | tslome@rsmllp.com | Counsel for JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for  Means Industries |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensionfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensionfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel for D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel for Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel for le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Steven E. Boyce | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-2347 | | 603-627-8278 | 603-641-2347 | sboyce@sheehan.com | Counsel for Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel for Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel for Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel for International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel for Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel for International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel for Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sara E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | jminias@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Lm Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@tafttlaw.com | Counsel for Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@tafttlaw.com | Counsel for Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel for TT Electronics, Plc |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | | Japan | 100-8322 | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid & Priest LLP | Daniel A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for Oki Semiconductor Company |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel for STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel for Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel for Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel for Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | bmcdonough@teamtogut.com | Conflicts counsel to Debtors |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy G. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | | 212-476-4770 | 212-476-4787 | DBR@tbfesq.com | Counsel for SPCP Group LLC |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | wilson@tylercooper.com | Counsel for Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel for McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel for Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLp | Michael S. McElwee | Bridgewater Place | P.O. Box 353 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel for Furukawa Electric North America APD |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel for America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-752-2500 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel for Behr Industries Corp. |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | bankruptcy@warnerstevens.com | Counsel for Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel for Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel for Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel for Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel for Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                                    Page 16 of 17

7/24/2006 6:36 AM
2002 List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for WL. Ross & Co., LLC |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel for Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 17

7/24/2006 6:36 AM
2002 List

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | Counsel for Relco, Inc.; The Durham Companies, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | | General Counsel for Jason Incorporated |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | Counsel for Martinrea International, Inc. |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | Counsel for Lunt Mannufacturing Company |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | Counsel for WL. Ross & Co., LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3157 | Counsel for Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | | 312-258-5500 | Counsel for  Means Industries |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | Counsel for Maxim Integrated Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/24/2006 6:37 AM
2002 List

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| 12 Planet, Inc. | Thomas Stroyls | | | | | | | |
| A2S Advanced Systems Solutions Limited | Andrew Pattison | Eurohub Midlands | | | Birch Lane Stonnal | West Midlands | W59 ONF | United Kingdom |
| Absolute Wireless Inc. | Attn:  Oscar Castano | 26250 Industrial Boulevard | Suite 50 | | Hayward | CA | 94545 | |
| Accel-KKR | David Crisp | | | | | | | |
| | Jason Klein | 2500 Sand Hill Rd Ste 100 | | Menlo Park | | CA | 94025 | |
| Accounting Services | ManageComm, Inc. | 2160 Fletcher Parkway Ste. A | | | El Cajon | CA | 92020 | |
| ACNielson Vantis | Jason P. Brown | 3130 Crow Canyon Place | Suite 400 | | San Ramon | CA | 94583 | |
| Active RFID Systems, Inc. | Anthony Corrado | P.O. Box 3069 | 477 CR 65 | | Evergreen | CO | 80437 | |
| Advantel | 2237 Paragon Dr | | | | San Jose | CA | 95131 | |
| AdvanTel, Inc. | 2237 Paragon Dr. | | | | San Jose | CA | 95131 | |
| AdvanTel, Inc. | 2222 Trade Zone Boulevard | | | | San Jose | CA | 95131 | |
| Advantra International NV | Elin Tarryn | Ter Waarde 90 | | | B 8900 Ieper | | | Belgium |
| Aerisnet | PO Box 3908 | | | | San Jose | CA | 95128-3908 | |
| Aerisnet | Bob Boen | 1245 S Winchester Blvd | Ste 216 | | San Jose | CA | 95128-3908 | |
| Agentek | Van Nguyen (Melissa McCarthy, asst) | 5900 Windward Pkwy | Ste 400 | Atlanta | | GA | 30005 | |
| Airgas Inc | 259 North Radnor Chester Rd | | | | Radnor | PA | 19087-5283 | |
| AirIQ | Mark W. Kohler | 1099 Kingston Road Suite 233 | | | Pickering | ON | L1V 1B5 | Canada |
| Al Kinzie | | | | | | | | |
| Alan Bolsh | | [Address on File] | | | | | | |
| Alan Cyron | | [Address on File] | | | | | | |
| Alan Hippe | Continental | Vahrenwalder Strasse 9 | | | Hanover | | D-30165 | Germany |
| Alan Lai | | [Address on File] | | | | | | |
| Alan Milligan | | [Address on File] | | | | | | |
| Alexander Babichev | | [Address on File] | | | | | | |
| ALK Technologies/TravRoute | Dan Titus | 1000 Herrontown Road | | | Princeton | NJ | 08540 | |
| Alla Lagodsky | | [Address on File] | | | | | | |
| Allan Thygesen | The Carlyle Group | 1001 Pennsylvania Ave NW | | | Washington | DC | 20004-2505 | |
| Altrusty Enterprise Co Ltd | If No 2 Ln 235 | Pao Chiaco Rd | Hsin Tien | | Hsien | Taipei | | Taiwan Prov Of China |
| AmBell Corporation | Unni Warrier | 2425 W. Olympic Boulevard | Suite 2000 | | Santa Monica | CA | 90404 | |
| Andre Sanoyca | | [Address on File] | | | | | | |
| Andrew Chan | | [Address on File] | | | | | | |
| Aniruddha Mulay | | [Address on File] | | | | | | |
| Anixter Inc | 2301 Patriot Blvd 2S | | | | Glenview | IL | 60026 | |
| Anna Dokakis | | [Address on File] | | | | | | |
| Aphrodite Mitropoulos | | [Address on File] | | | | | | |
| Aqua Prix Inc | PO Box 56 | | | | Moberly | MO | 65270 | |
| Arsenault Associates | C. Arsenault | 711 Jackson Road | | | Atco | NJ | 08004 | |
| Artur Duko | | [Address on File] | | | | | | |
| Asset Growth Partners Ltd | 2570 W El Camino Real | 110 | | | Mountainview | CA | 94040 | |
| Asset Growth Partners, Ltd. | 2570 W. El Camino Real, Suite 500 | | | | Mountain View | CA | 94040 | |
| Attention: General Counsel, | | 1801 Varsity Drive, | | | Raleigh | NC | 27606 | |
| Austin Powder Company | 25800 Science Park Drive | | | | Cleveland | OH | 44122 | |
| Austin Powder Company | 25800 Science Pk Dr | | | | Cleveland | OH | 44122 | |
| Auto Club of America | Joe Belz | 9411 N Georgia | | | Oklahoma City | OK | 73120 | |
| Auto Page Unlimited Inc. | Attn:  Brian Schulze | 370 E. Irving Park Road | | | Wood Dale | IL | 60191 | |
| Automobile Club of Southern California | John Estes | 3333 Fairview Road | | | Costa Mesa | CA | 92626 | |
| Backis International | 751 Laurel St 330 | | | | San Carlos | CA | 94070 | |
| Bala Chander | | [Address on File] | | | | | | |
| Bank Of America | PO Box 53121 | | | | Phoenix | AZ | 85072-3121 | |
| Bankruptcy Division | | California Franchise Tax Board | PO Box 2952 | | Sacramento | CA | 95812-2952 | |
| Bert Vlaanderen | | [Address on File] | | | | | | |
| Blue Shield Of Ca | Cash Receieving File 55331 | | | | Los Angeles | CA | 90074-5331 | |
| BMC Software Distribution, Inc. | | PO Box 201040 | | | Houston | TX | 77216-0001 | |
| BMC Software Distribution, Inc. | | PO Box 201040 | | | Houston | TX | 77216-0001 | |
| Board Of Equalization | PO Box 942879 | | | | Sacramento | CA | 94279-0001 | |
| Board of Equalization | | PO Box 942879 | | | Sacramento | CA | 94279-7072 | |
| Bobcat Company | Scott Rosow | 250 East Beaton Drive | | | West Fargo | ND | 58078-6000 | |
| Booz-Allen & Hamilton, Inc. | Francois Truc | 225 West Wacker Drive | Suite 1700 | | Chicago | IL | 60606-1228 | |
| Boulder Global Development Group, LLC | Liana Pomeroy | 1800 – 30th Street | Suite 214 | | Boulder | CO | 80301 | |
| BP Amoco Chemical Company | John Diendorf | 150 W. Warrenville Road | | | Naperville | IL | 60563 | |
| BP Products North America | 28100 Torch Parkway | Attn: Karl Mehta | | | Warrenville | IL | 60555 | |
| Bp Products North America Inc | 28100 Torch Pkwy | | | | Warrenville | IL | 60555 | |

In re: Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 11

7/24/2006 10:25 AM

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Bradley M Murray | | [Address on File] | | | | | | |
| Breo Ventures, LLC | Richard H. Miller | 471 Emerson | Suite 200 | | Palo Alto | CA | 94301 | |
| Brian Keith Miles | | [Address on File] | | | | | | |
| Brian Keith Miles Vp Sales At Moblearia | 7222 Ledgewood Dr | | | | Fenton | MI | 48430 | |
| Bridgetown Communications | | 3923 28th Street, Ste. 184 | | | Grand Rapids | MI | 49512 | |
| Bridgetown Communications | | 3923 28th Street, Ste. 184 | | | Grand Rapids | MI | 49512 | |
| Brightpoint | 501 Airtech Pkwy | | | | Plainfield | IN | 46168 | |
| Brix Group | PO Box 31001 0464 | | | | Pasadena | CA | 91110-0464 | |
| Brix Group Inc. | | 565 Display Way | | | Sacramento | CA | 95838-3363 | |
| Buena Vista Internet Group | Legal Department | 500 South Buena Vista Street | | | Burbank | CA | 91521-7710 | |
| C&s Vending | 1053 Lincoln Ave | | | | Palo Alto | CA | 94301 | |
| Cadec | Jonathan Larson | Cadec | 8 E Perimeter Road | | Londonderry | NH | 03053 | |
| Carmell LaVett Oliver | | [Address on File] | | | | | | |
| Carmell LaVett Oliver | | 3015 Clear Coast Ct. | | | Vallejo | CA | 94591 | |
| CAT Technology | Aaron Mahler | 337 Route 17 South Ste 210 | | | Hasbrook Heights | NJ | 07604 | |
| Catalyst Capital Partners, Inc. | Suresh Fernando | 1102-1050 Burrard Street | | | Vancouver | BC | V6Z 2S3 | Canada |
| Cellco Partnership d/b/a Verizon Wireless | 30 Independence Blvd. | | | | Warren | NJ | 07059 | |
| Cellco Partnership dba Verizon Wireless | Rosemary Garavaglia | 180 Washington Valley Road | | | Bedminster | NJ | 07921 | |
| Cellocator, Ltd. | Amnon Duchorne-Nave | 19 Hamelacha Street | Park Afek | | Rosh-Ha'ayin | | 48101 | Israel |
| Cellport Systems, Inc. | Doug Daniels | 4886 Pearl East Circle | Suite 300E | | Boulder | CO | 80301 | |
| Centrality Communications, Inc. | Philip Lau | 2520 Mission College Boulevard | Suite 103 | | Santa Clara | CA | 95054 | |
| Certicom International Corp. | Raymond J. Menard | Bat C | 8 rue Fulgence Bienvenue | | Lannion Cedex | BP | 418 22305 | France |
| Cfo Group | 225 Broadway 1900 | | | | San Diego | CA | 92101 | |
| CGI Group | Claude Séguin | VP Strategic Investments | 1130 Sherbrooke St W 5th Fl | | Montreal | Quebec | H3A 2M8 | Canada |
| | Michael Denham | President of Bus Process Services | | | | | | |
| Chadbourne & Parke LLP | 30 Rockefeller Plaza | | | | New York | NY | 10112 | |
| Chi Chung | | [Address on File] | | | | | | |
| Cho Graphics | Yung Cho | 8270 Washington Village Drive | | | Centerville | OH | 45458 | |
| Chris Bortoli | | [Address on File] | | | | | | |
| Chris Lebrun | Orbcomm | 21700 Atlantic Blvd | | | Dulles | VA | 20166 | |
| Christopher Cusanza | | [Address on File] | | | | | | |
| Chuck King | | | | | | | | |
| Cisco Systems | Scott Einhorn | 170 West Tasman Dr | | | San Jose | CA | 95134 | |
| Cisco Systems Capital Corporation | Anne Marie Rudnick | 1111 Old Eagle School Rd | | | Wayne | PA | 19087 | |
| City of Mountain View Finance & Administrative Services Department | | 500 Castro St 2nd Fl PO Box 7540 | | | Mountain View | CA | 94039-7540 | |
| Cj Driscoll & Associates | 2636 Via Carrillo | | | | Palos Verdes Estates | CA | 90274 | |
| Clarity, LLC | Alan Beale | 4515 14th Ave SE | | | Naples | FL | 34117 | |
| Click Software | Shmuel Arvatz | 34 Ha'Barzel St | | | Tel-Aviv | | 69710 | Israel |
| | Robbie Traube | | | | | | | |
| Clint Suson | | [Address on File] | | | | | | |
| Clint Suson | | [Address on File] | | | | | | |
| Clint Suson | | 57A Boardman | | | San Francisco | CA | 94103 | |
| CMango Services Management Company | Attn: Zureme Zimoga | 704 Town & Country Village | | | Sunnyvale | CA | 94086 | |
| CMango Services Management Company | Attn: Zureme Zimoga | 704 Town & Country Village | | | Sunnyvale | CA | 94086 | |
| CMANGO, Inc. | | 1300 Crittenden Lane #200 | | | Mountain View | CA | 94043 | |
| CMG, Inc. | Jonathan Lawrence | 33914 Crystal Mountain Blvd | | | Crystal Mountain | WA | 98022 | |
| Confertel | 2385 Camino Vida Roble | | | | Carlsbad | CA | 92009 | |
| Consortium Executive Search, Inc. | Signed by Charles LeFevre, President | | | | | | | |
| Consortium Executive Search, Inc. | Chuck LeVerve | 1875 South Bascam 116-213 | | | Campbell | CA | 95008 | |
| CONTEX Engineering International, Inc. | Jerry Sun | 1931 Old Middlefield Way | Unit X | | Mountain View | CA | 94043 | |
| Continental | Hippe, Alan | Vahrenwalder Strasse 9 | | | Hanover | | D-30165 | Germany |
| Copower | PO Box 10862 | | | | Palo Alto | CA | 94303-0918 | |
| Coradiant Inc. | Jim Thayer | 4260 Girouard Avenue | Suite 100 | | Montreal | QC | H4A 3C9 | Canada |
| Craig Brown | | [Address on File] | | | | | | |
| Creative & Response Research | Christiaan de Brauw | 500 North Michigan Avenue | | | Chicago | IL | 60611 | |
| Cross Country Global ITS Services Corp. | Peter Van Alstine | | | | | | | |
| Cross Country Global ITS Services Corp. | 1 Cabot Road | | | | Medford | MA | 02155 | |
| Cross Country Global ITS Services, Corp. | | 1 Cabot Road | | | Medford | MA | 02155 | |
| Cross Country Motor Club | 4040 Mystic Valley Pkwy | | | | Medford | MA | 02155 | |
| CTA Consulting | Francois Truc | 21622 West Mockingbird | | | Kildeer | IL | 60047 | |
| CustomWeather, Inc. | Geoffrey M. Flint | 26 South Park | | | San Francisco | CA | 94107 | |
| Cygnus Systems/ David Preader | 168 Highland Oaks Dr | | | | Los Gatos | CA | 95032 | |
| Cytranz, Inc. | Frederick Soskiel | 911 E 86th St Ste 105 | | | Indianapolis | IN | 46240 | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Dan Kolkowitz | | [Address on File] | | | | | | |
| Dan Pliskin | | [Address on File] | | | | | | |
| Daniel Fairbank | | [Address on File] | | | | | | |
| Daniel Jester | | [Address on File] | | | | | | |
| Daniel Zucker | | [Address on File] | | | | | | |
| Darrell Duffy | | [Address on File] | | | | | | |
| Data Dimensions | Sadiq Patankar | 1900 S. Norfolk Street | Suite 235 | | San Mateo | CA | 94403 | |
| Datascan Technologies, Inc. | Paul J. Lane | 10700 North Freeway | Suite 550 | | Houston | TX | 77037 | |
| David Riley | | [Address on File] | | | | | | |
| De Anza Manufacturing | 1271 Reamwood Ave | | | | Sunnyvale | CA | 94089 | |
| Dearborn Group | 27007 Hills Tech Court | | | | Farmington Hills | MI | 48331 | |
| Deborah L. Cameron | | | | | | | | |
| Deepak More | | [Address on File] | | | | | | |
| Dejai Pty Ltd | RoadPilot (Asia Pacific) Pty Ltd | Attn:  David Harris | 53 Heyington Place P.O. Box 101 | | Toorak | Melbourne | 3142 | Victoria, Australia |
| Delaware Division of Revenue | | P.O. Box 8751 | | | Wilmington | DE | 19899 | |
| Delaware Secretary of State | Division of Corporations | PO Box 898 | | | Dover | DE | 19903 | |
| Dell Commercial Credit | Dept 50 0059570831 | | | | Des Moines | IA | 50368-9020 | |
| Dell Inc | One Dell Way | | | | Round Rock | TX | 78682 | |
| Dell Marketing Lp | C/o Dell Usa Lp | Bldg 1 MS 8052 | | | Pasadena | CA | 91110-0916 | |
| Delphi Automotive Systems LLC | | 1441 W Long Lake | PO Box 5090 | | Troy | MI | 48098-5090 | |
| Delphi Automotive Systems LLC | Attn Robert Schumacher | Delco Electronics Corp | One Corporate Center | PO Box 9005 | Kokomo | IN | 46904 | |
| Delphi Automotive Systems LLC | acting by & through its wholly owned subsidiary Delco Electronics Corp | 5725 Delphi Dr | | | Troy | MI | 48098-2815 | |
| Delphi Automotive Systems Llc | 5725 Delphi Dr | | | | Troy | MI | 48098 | |
| Delphi Automotive Systems Llc | Ken Erikson | One Corporate Ctr | PO Box 9005 | | Kokomono | IN | 46904 | |
| Delphi Automotive Systems Llc Acting By And Through Its Wholly | Owned Subsidiary Delco Electronics | Corporation | 5725 Delphi Dr | | Troy | MI | 48098 | |
| Delphi Delco Electronics Systems Aka Delphi Automotive Systems Llc | PO Box 9005 | | | | Kokomo | IN | 46904-9005 | |
| Delphi Electronics & Safety | co Robert Schumacher | Delco Electronics Corp | One Corporate Center | PO Box 9005 | Kokomo | IN | 46904 | |
| Department of the Treasury Internal Revenue Service | 290 Broadway 5th FL | | | | New York | NY | 10007 | |
| Dexterra | David Leventhal | Dir. BD | 21540 30th Dr SE Ste 230 | | Bothell | WA | 98021 | |
| | Robert Loughan | CEO | | | | | | |
| DHL | Jonathan Baker | 1200 South Pine Island Rd Ste 600 | | | Plantation | FL | 33324 | |
| | John Pearson | | | | | | | |
| | Dianne Leonard | | | | | | | |
| DHL Danzas | | 14076 Collections Center Drive | | | Chicago | IL | 60693 | |
| DHL Danzas | | 14076 Collections Center Drive | | | Chicago | IL | 60693 | |
| Digi Key | 701 Brooks Ave S | | | | Thief River Falls | MN | 56701-0677 | |
| Digital Dispatch | Vari Ghai | 11920 Forge Place | | | Richmond | BC | V7A 4V9 | Canada |
| Dla Piper Rudnick Gray Cary Us Llp | 2000 University Ave | | | | East Palo Alto | CA | 94303 | |
| Doug Giffin | | [Address on File] | | | | | | |
| Doug Lea's Java Concurrent Utilities software license | | | | | | | | |
| Dow Jones & Company, Inc. | Adam Muskal | PO Box 300 | | | Princeton | NJ | 08543 | |
| Dow Jones & Company, Inc. | Adam Muskal | 4300 North Route 1 | | | South Brunswick | NJ | 08852 | |
| DPAC Technologies | William M. Stowell | 7321 Lincoln Way | | | Garden Grove | CA | 92841 | |
| Dpac Technologies | 7321 Lincoln Way92841 | | | | Garden Grove | CA | 92841 | |
| Dwight Joseph | | [Address on File] | | | | | | |
| Ed Alcoff | | [Address on File] | | | | | | |
| Edward Gayles | | [Address on File] | | | | | | |
| Eletel Inc. | George Krucek | 1050 Northgate Dr Ste 350 | | | San Rafael | CA | 94903 | |
| Ember Corporation | Adrian Tuck | 313 Congress Street | | | Boston | MA | 02210 | |
| Emc Compliance Management Group | 670 National Ave | | | | Mountain View | CA | 94043 | |
| EMS Technologies Canada, Ltd. | Catherine Easton | 1725 Woodward Drive | | | Ottawa | Ontario | K2C OP9 | Canada |
| Enterprise Information Solutions, Inc. | Marc Mitchell | 9891 Broken Land Pkwy Ste  300 | | | Columbia | MD | 21049 | |
| Equinix Inc | Dept La 22310 | | | | Pasadena | CA | 91185-2310 | |
| Equity Corporate Housing | Wildman Harrold Allen & Dixon LLP | 225 W Wacker Dr Ste 3000 | | | Chicago | IL | 60606 | |
| Eric Lunsford | | [Address on File] | | | | | | |
| Ericsson Inc. | North American Headquarters | 6300 Legacy Dr | | | Plano | TX | 75024 | |
| Esex Electronics, Inc. | Garrett Kaufman | 1130 Mark Avenue | | | Carpinteria | CA | 93013 | |
| Eugene Gordienko | | [Address on File] | | | | | | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Exelon Corporation | PECO Energy Company | Attn:  Patrick M. White | | | | | | |
| Extended Systems Incorporated | 5777 N. Meeker Avenue | P.O. Box 4937 | | | Boise | ID | 83711 | |
| Extended Systems of Idaho, Inc. | One Sybase Dr | | | | Dublin | CA | 94568-7976 | |
| Federal Communications Commission | | 445 12th St SW | | | Washington | DC | 20554 | |
| Federal Express | PO Box 7221 | | | | Pasadena | CA | 91109-7321 | |
| Federal Express Corporation | 2005 Corporate Ave 2nd Fl | | | | Memphis | TN | 38132 | |
| Federal Insurance Chubb | Tammy Stamp | Broker Felice Insurance | 738 North First St | | San Jose | CA | 95112 | |
| FedEx | Michael Glenn | PO Box 727 | | | Memphis | TN | 38194 | |
| | Bob Henning | | | | | | | |
| FedEx Ground Package System, Inc. | Roman Hlutkowsky | 1000 FedEx Drive | | | Moon Township | PA | 15108 | |
| Fedex Kinkos | PO Box 672085 | | | | Dallas | TX | 75267-2085 | |
| FleetRisk Advisors, LLC | Christopher Brogan | Gainey Ranch Center | 7702 East Doubletree Ranch Road | | Scottsdale | AZ | 85258 | |
| FleetRisk Advisors, LLC | Samuel M. Wilkes | 21 Blackland Road | | | Atlanta | GA | 30342 | |
| Fonix Corporation | Kurt Flygare | 180 West Election Road | | | Draper | UT | 84020 | |
| FORCE Computers, Inc. | Paul Mercadante | 4305 Cushing Parkway | | | Fremont | CA | 94538 | |
| Forrester Research | Brittany E. Roberts | 400 Technology Square | | | Cambridge | MA | 02139 | |
| Forrester Research | Brittany E. Roberts | 400 Technology Square | | | Cambridge | MA | 02139 | |
| Freightliner LLC | Paul Menig | 4747 N. Channel Avenue | | | Portland | OR | 97217 | |
| Frys Electronics | 600 East Brokaw Rd | | | | San Jose | CA | 95112 | |
| Garmin | Kevin S. Rauckman | 1200 E. 151st Street | | | Olathe | KS | 66062-3426 | |
| Gary Nauslar | | [Address on File] | | | | | | |
| Gary Stempler | | [Address on File] | | | | | | |
| GE TIP | Mary Hoeltzel | | | | | | | |
| | Joe Artuso | | | | | | | |
| | Jon Shapiro | | | | | | | |
| Gearworks Inc. | Keith Lauver | 930 Blue Gentian Road | Suite 100 | | Eagan | MN | 55121 | |
| Gene Summerville | | [Address on File] | | | | | | |
| Genstar | James D. Nadauld | Four Embarcadero Center | Ste 1900 | | San Francisco | CA | 94111-4191 | |
| GenX Mobile Incorporated | Rodric C. Fan | 1955 Concourse Dr | | | San Jose | CA | 95131 | |
| Geographic Data Technology, Inc. | Ilse R. Ramsey | 11 Lafayette Street | | | Lebanon | NH | 03766-1445 | |
| Giovanni Paoletti | | [Address on File] | | | | | | |
| GlobeSecNine | William R. Sullivan | 901 North Stuart St Ste 200 | | | Arlington | VA | 22203 | |
| Globespan Virata, Inc. | Tom McQuade | 100 Schulz Drive | | | Red Bank | NJ | 07701 | |
| Go2 Systems, Inc. | Brad Schorer | 18400 Von Karman | Suite 320 | | Irvine | CA | 92612 | |
| Gong Liu | | [Address on File] | | | | | | |
| Gores | Angela Blatteis | 10877 Wilshire Blvd | 18th Floor | | Los Angeles | CA | 90024 | |
| | Ryan Wald | | | | | | | |
| Great America | Tammy Stamp | Broker Felice Insurance | 738 North First St | | San Jose | CA | 95112 | |
| Greenbriar | Kathleen Moran | 555 Theodore Fremd Ave Ste A-201 | | | Rye | NY | 10580 | |
| Halliburton Energy Services, Inc. | Gary G. Tyler | 10200 Bellaire Boulevard | | | Houston | TX | 77072 | |
| Hammad Saleem | | [Address on File] | | | | | | |
| Haytham Suliman | | [Address on File] | | | | | | |
| Hi-G-Tek Ltd. | Ran Sender | 16 Hacharoshet Street | | | Or-Yehuda | | 60375 | Israel |
| Houlihan Lokey Howard & Zukin | Glenn Daniel | One Sansome | 17th Floor | | San Francisco | CA | 94104 | |
| Ian McNish | | [Address on File] | | | | | | |
| IBM | Alma Diaz | Contract Administrator | 8051 Congress Avenue | | Boca Raton | FL | 33487 | |
| Ibm | PO Box 676673 | | | | Dallas | TX | 75267-6673 | |
| IDEO | 100 Forest Ave | | | | Palo Alto | CA | 94301 | |
| IITRON, Taipei, Taiwan | Bert Q. Viannderen | iiTron | 651 Franklin St., #4308 | | Mountain View | CA | 94041 | |
| Ikon | PO Box 650073 | | | | Dallas | TX | 75265-0073 | |
| Indiana Department of Revenue | | 100 N Senate Ave | | | Indianapolis | IN | 46204 | |
| Indus International | Kenneth J. Zagzebski | VP of Business Development | 3301 Windy Ridge Pkwy | | Atlanta | GA | 30339 | |
| | Patrick M. Henn (Pat) | CFO | | | | | | |
| Indus International, Inc. | Adam V. Battani | 3301 Windy ridge Parkway | | | Atlanta | GA | 30339 | |
| Infobahn Softworld, Inc. | 3140 De La Cruz Blvd. Ste 101 | | | | Santa Clara | CA | 95054 | |
| InfoGation Corp. | Kent Pu | 6440 Lusk Blvd #D201 | | | San Diego | CA | 92121 | |
| InfoSpace, Inc. | Mitgn Mehta | 601 – 108th Avenue NE | | | Bellevue | WA | 98004 | |
| Innovative Software Engineering, L.L.C. | Hass Machlab | 100 Oakdale Campus | #101 TIC | | Iowa City | IA | 52242 | |
| Innvo Systems Pte Ltd | Rajiv M. Ranganath | 20 Ayer Rajah Crescent | | | #04-04 | | 139964 | Singapore |
| Insight Services Corporation | Paul Kent | 1305 West Auto Druive | | | Tempe | AZ | 85284 | |
| Intel Corporation | Jason Chen | 2200 Mission College Boulevard | | | Santa Clara | CA | 95052-8119 | |
| Intermec | Tom Miller | 6001 36th Ave West | | | Everett | WA | 98203-1264 | |
| | Larry D. Brady | | | | | | | |

In re: Delphi Corporation, et al.
Case No. 05-44481.

Page 4 of 11

7/24/2006 10:25 AM

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Intermec Technologies Corporation | 6001 36th Ave West | | | | Everett | WA | 98203 | |
| Internal Revenue Service | 290 Broadway 5th Fl | | | | New York | NY | 10007 | |
| Internal Revenue Service | | | | | Cincinnati | OH | 45999-0012 | |
| InterNap | Christopher Leal | Internap Network Services Corporation | 250 Williams St | | Atlanta | GA | 30303 | |
| International Truck & Engine Corporation | Jeff Bannister | International Truck and Engine Corporation | 4201 Winfield Rd. | | Warrenville | IL | 60555 | |
| Intertek Testing Services | PO Box 538242 | | | | Atlanta | GA | 30353-8242 | |
| Intrinsyc Software International, Inc. | Chief Financial Officer | 700 West Pender Street | 10th Floor | | Vancouver | BC | V6C 1GB | Canada |
| Inverness Capital (SkyBitz) | Skip Maner | Inverness Capital Partners | 3811 West Chester Pike | Building 2, Suite 100 | Newtown Square | PA | 19073 | |
| Ioscapital | An Ikon Office Solutions Company | The Graham Group PO Box 9115 | | | Macon | GA | 31208-9115 | |
| Ira Ghazanfari | | [Address on File] | | | | | | |
| Iridium Satellite LLC | Donald L. Thomas | 1600 Wilson Boulevard | Suite 1000 | | Rosslyn | VA | 22209-2594 | |
| Iron Mountain | Contract Administration | 2100 Norcross Parkway, Suite 150 | | | Norcross | GA | 30071 | |
| Israel Kalman | | | | | | | | |
| Iteris, Inc. | Dan Gillian | 1515 South Manchester Avenue | | | Anaheim | CA | 92802-2907 | |
| ITIS (NavTrak) | Jim Duncan | 2000 Northwood Drive | | | Salisbury | MD | 21801 | |
| Itochu | Nachiko Yoshikawa | 5-1 Kita-Aoyama 2 chome | Minato-ku | | Tokyo | | 107-8077 | Japan |
| Itochu Technology, Inc. | Takayaki Fukuhara | 3945 Freedom Circle, Ste 350 | | | Santa Clara | CA | 95054 | |
| Ivus Technical Services, Inc. | Heather Howard | 155 Myrtle Street | | | Oakland | CA | 94607 | |
| IXI Mobile | David Bialer | 1032 Elwell Court | #111 | | Palo Alto | CA | 94303 | |
| J. B. Hunt | George Brooks | 615 J. B. Hunt Corporate Drive | | | Lowell | AR | 72745 | |
| James Morton | | [Address on File] | | | | | | |
| James W Morton Reimb | 159 Morning Dove Ln | | | | Statesville | NC | 28625 | |
| Jamie Ford | Vista Equity Partners MDSI | 150 California St | 19th Fl | | San Francisco | CA | 94111 | |
| Janus Logistics | | 85 Orchard Valley Drive | | | Cranston | RI | 02921 | |
| Jared Brockway | | [Address on File] | | | | | | |
| Jay Kim | | [Address on File] | | | | | | |
| JB Poindexter | Andrew E. Foskey | 1100 Louisiana Ste 5400 | | | Houston | TX | 77002 | |
| JCI | John Sibson | Johnson Controls, Inc. | 5757 N. Green Bay Ave. | | Milwaukee | WI | 53209 | |
| JCorporate Inc. | | 757 SE 17th St. #735 | | | Fort Lauderdale | FL | 33316 | |
| JD Fey | AtRoad Inc | 47071 Bayside Pkwy | | | Fremont CA | CA | 94538 | |
| Jeffrey Clarke | | [Address on File] | | | | | | |
| Jennifer Petersen | | | | | | | | |
| Jerrehian Capital | John Jerrehian | | | | | | | |
| Jim Duncan | IT IS NavTrak | 2000 Northwood Dr | | | Salisbury | MD | 21801 | |
| Jim Obot | | | | | | | | |
| John Mullen | | [Address on File] | | | | | | |
| John N. Miskew | | | | | | | | |
| John Sibson | Johnson Controls Inc | 5757 N Green Bay Ave | | | Milwaukee | WI | 53209 | |
| Jonathan Davies | | [Address on File] | | | | | | |
| Jonathan Larson | Cadec | 8 E Perimeter Rd | | | Londonderry | NH | 03053 | |
| Joshua Zhu | | [Address on File] | | | | | | |
| JP Systems, Inc. | David Erdner | 12000 Ford Road | Suite 400 | | Dallas | TX | 75234 | |
| Juergen Kienhofer | | [Address on File] | | | | | | |
| Juilin Chen | | [Address on File] | | | | | | |
| Kai Wang | | [Address on File] | | | | | | |
| Kaiser Permanente | File 73030 | PO Box 60000 | | | San Francisco | CA | 94160-3030 | |
| Kathleen Pacyna | | | | | | | | |
| Kaushal Mehta | | [Address on File] | | | | | | |
| Kavitha Pillarsetty | | [Address on File] | | | | | | |
| Kenneth Hall | | [Address on File] | | | | | | |
| Kevin McGuinn | | [Address on File] | | | | | | |
| Kevin S Rauckman | Garmin | 1200 E 151st St | | | Olathe | KS | 66062-3426 | |
| Kimberly Durand | | [Address on File] | | | | | | |
| Kip Hyde | Teletouch | 5718 Airport Freeway | | | Ft Worth | TX | 76117 | |
| Kirsen Technologies Corp. | Kirill S. Mostov | | | | | | | |
| Kiryung Electronics | H. J.Kwon | | | | Kumchun-ku | Seoul | | Korea |
| Kuei-Chung Tu | | [Address on File] | | | | | | |
| Kurt Martin | Munchen | Postfach 1351 | 85767 Unterfohring | | Bundesrepublik Deutschland | | | |
| Ladd Industries Inc | PO Box 846144 | | | | Dallas | TX | 75284-6144 | |
| Lan Strickland | | [Address on File] | | | | | | |
| Lat-Lon, LLC | David Baker | 4251 South Natches Court | Unit C | | Sheridan | CO | 80110 | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Law Offices Of Daniel Roemer Pc | 1111 Civic Dr Ste 380 | | | | Walnut Creek | CA | 94596-8205 | |
| Lawrence E Stone | Assessor Santa Clara County | 70 W Hedding St | | | San Jose | CA | 95110-1771 | |
| LeasePlan | Wayne J. Reynolds | PO Box 3001 | | | Almere Stad | EB | 1300 | Netherlands |
| LetsTalk.com, Inc. | 1111 West North Carrier Parkway Ste 400 | | | | Grand Prairie | TX | 75050 | |
| LG Infocomm Inc. | William Lee Finney | LG Electronics Mobilecomm U.S.A., Inc. | 10225 Willow Creek Rd. | | San Diego | CA | 92131 | |
| Linda Lu | | [Address on File] | | | | | | |
| Lion Bridge Tech. | Sadiq Patankar | 1050 Winter Street | | | Waltham | MA | 02451 | |
| Liquidity Solutions Inc | One University Plaza Ste 312 | | | | Hackensack | NJ | 07601 | |
| Lisa Smith | | [Address on File] | | | | | | |
| LogiKos, Inc. | Logikos, Inc. | 2914 Independence Drive | | | Fort Wayne | IN | 46808 | |
| Lucent Technologies Inc. | Jorge Rodriquez | 600 Mountain Avenue | | | Murray Hill | NJ | 07974 | |
| Mack Truck (Truck Connect) | Paul Vikner<br>Lars Thorén<br>Don Philyaw<br>Ronald James | 2100 Mack Blvd | PO Box M | | Allentown | PA | 18105-5000 | |
| MAI Mark Airington Installations | 8705 Pierce Olive Rd. | | | | Apex | NC | 27539-9141 | |
| MAI Mark Airington Installations | 8705 Pierce Olive Rd. | | | | Apex | NC | 27539-9141 | |
| ManageComm, Inc. | 338 W. Lexington Ave. Ste. 206 | | | | El Cajon | CA | 92020 | |
| Maninder Chhabra | | [Address on File] | | | | | | |
| Mark A Harrington | Trimble Navigation | 935 Stewart Dr | | | Sunnyvale | CA | 94085 | |
| Mark Ties | XATA | 151 E Cliff Rd Ste 10 | | | Burnsville | MN | 55337 | |
| Mark W Kohler | AirIQ | 1099 Kingston Rd Ste 233 | | | Pickering | ON | L1V 1B5 | Canada |
| Marlin Equity Partners | Nick Kaiser | 2121 Rosecrans Avenue | Suite 2370 | | El Segundo | CA | 90245 | |
| Mascon | PO Box 2282 | | | | Carol Stream | IL | 60132-2282 | |
| Mathew Holzman | | [Address on File] | | | | | | |
| Mayfield | 280 Sandhill Rd 250 | | | | Menlo Pk | CA | 94025 | |
| Mayfield Principals Fund II LLC | Mayfield XI L P | Mayfield XI Qualified L P | 2800 Sand Hill Rd No 240 | | Menlo Park | CA | 94025 | |
| Mba Of California Inc | A Toshiba Company | 3170 Corporate Pl | | | Hayward | CA | 94545 | |
| Mci 6000032025 | PO Box 96022 | | | | Charlotte | NC | 28296-0022 | |
| MCI Worldcom Communications, Inc. | 205 N Michigan Ave Ste 2700 | | | | Chicago | IL | 60601-5924 | |
| Melora Svoboda | | [Address on File] | | | | | | |
| Mentora Group, Inc. | 5825 Glenridge Drive, Bldg 3, Suite 101 | | | | Atlanta | GA | 30328 | |
| Mentora Group, Inc. | 5825 Glenridge Drive, Bldg 3, Suite 101 | | | | Atlanta | GA | 30328 | |
| Michael Hearney | | [Address on File] | | | | | | |
| Michael Orr | | [Address on File] | | | | | | |
| Michael Orr | | [Address on File] | | | | | | |
| Michael Richion | | [Address on File] | | | | | | |
| Microsoft Corporation | One Microsoft Way | | | | Redmond | WA | 98052-6399 | |
| Microsoft Corporation | Gonzalo Bustillos | One Microsoft Way | | | Redmond | WA | 98052-6399 | |
| Mike Cardullo | | 2500 Sand Hill Rd | Ste 203 | | Menlo Park | CA | 94025 | |
| Milind Dange | | [Address on File] | | | | | | |
| Minorplanet Systems | Richard Hopkin<br>Terence Donovan | Greenwich House | 223 North Street | | Leeds | | LS7 2AA | UK |
| Mitchell International Inc. | Jason L. Gray | 9889 Willow Creek Road | | | San Diego | CA | 92131 | |
| Mitchell Rosenberg | | [Address on File] | | | | | | |
| MMC Communications | 31 West Lovell | | | | Kalamazoo | MI | 49007 | |
| Mobiapps Inc. | Ann Panuja | 1000 Wilson Blvd | | | Arlington | VA | 22209 | |
| MobileBriefs, Inc. | Michael F. Price | 66 Perimeter Ctr E # 600 | | | Atlanta | GA | 30346-1807 | |
| Monali Jain | | [Address on File] | | | | | | |
| Motorola | Don McLellan<br>Martina Schweizer<br>Tom Mitoraj | 1295 E Algonquin Rd | | | Schaumburg | IL | 60196 | |
| Motorola, Inc. | Integrated Electronic Systems Sector | Attn:  Brian P. Santoro | 50 Northwest Point Boulevard | | Elk Grove Village | IL | 60007 | |
| Mouser Electronics Inc | PO Box 99319 | | | | Fort Worth | TX | 76199-0319 | |
| Mr. Raul Reyes | | [Address on File] | | | | | | |
| Mr. Raul Reyes | | 1675 McGiness Ave. | | | San Jose | CA | 95127 | |
| MSI | Attn:  Michael D. Sides | President | 30 McCormick Way | | Lincoln University | PA | 19352 | |
| MSNBC Interactive News, L.L.C. | Michael Wann | Business Development Manager | One Microsoft Way | | Redmond | WA | 98052-6399 | |
| Narayan Mohanram | | [Address on File] | | | | | | |
| Natalie Acevedo | | [Address on File] | | | | | | |
| Naveen Prabhu | | [Address on File] | | | | | | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Navistar (Int. Truck & Engine Corp.) | Thomas M. Hough Bill Caton | PO Box 1488 | | | Warrenville | IL | 60555 | |
| Nazem & Co  (PeopleNet Communications) | Fred Nazem Lynn Madonna | 645 Madison Ave | 12th Floor | | New York | NY | 10022 | |
| NEC BNS | Wally Bryant | NEC Unified Solutions, Inc. | 6535 N. State Highway 161 | | Irving | TX | 75039-2402 | |
| Neeraj Bagga | | [Address on File] | | | | | | |
| Networkcar, Inc. | Donald Brady | 4510 Executive Drive | Suite 315 | | San Diego | CA | 92121 | |
| Networkcar, Inc. | Donald Brady | 4510 Executive Drive | Suite 315 | | San Diego | CA | 92121 | |
| Newstart Factors Inc | 2 Stamford Plz Ste 1501 | 281 Tresser Blvd | | | Stamford | CT | 06901 | |
| NEXIQ Technologies, Inc. | James C. Griffin Jr. | 6425 Nineteen Mile Road | | | Sterling Heights | MI | 48314 | |
| NFO | | Maryjane Getz, A/R Specialist | | | | | | |
| NFO WorldGroup, Inc. | Michelle Pontrelli | 33 New Montgomery Street | Suite 1200 | | San Francisco | CA | 94105 | |
| Nick Kaiser | Marlin Equity Partners | 2121 Rosecrans Ave Ste 2370 | | | El Segundo | CA | 90245 | |
| Nicolas Courreges | | [Address on File] | | | | | | |
| Nokia | Sanjay Rao | 6000 Connection Drive | | | Irving | TX | 75039 | |
| Noregon Systems, Inc. | Chad Pearson | 500 Shepherd Street | Suite 300 | | Winston-Salem | NC | 27013 | |
| Nortel Networks Inc. | 2221 Lakeside Boulevard | | | | Richardson | TX | 75082 | |
| North American Mobile Solutions Llc | 3200 Steeple Point Pl | | | | Flower Mound | TX | 75022 | |
| Norwest Equity Partners (PeopleNet Communications) | Andy Platt | 80 South 8th St Ste 3600 | | | Minneapolis | MN | 55402 | |
| NTT Do Co Mo | Masao Nakamura Yoshiaki Ugaki Nobuyuki Akimoto Ichiro Okajima | | | | | | | |
| Nuance Communications | Monica L. Greenberg | 1005 Hamilton Court | | | Menlo Park | CA | 94025 | |
| Nuance Communications | Monica L. Greenberg | 1005 Hamilton Court | | | Menlo Park | CA | 94025 | |
| ObjectFX Corporation | Christopher A. Schwartzbauer | 10 Second Street NE | Suite 400 | | Minneapolis | MN | 55413 | |
| Office Depot | Dept 56 8200736841 | | | | Des Moines | IA | 50368-9020 | |
| Oksana Vishnevskaya | | [Address on File] | | | | | | |
| Olander Co | 144 Commercial Ave | | | | Sunnyvale | CA | 94086 | |
| Openssl License – | | | | | | | | |
| Oracle (Siebel service applications) | Lisa Ferrier | 500 Oracle Pkwy | 500 Oracle Pkwy | | Redwood Shores | CA | 94065 | |
| Orbcomm | | 21700 Atlantic Blvd | | | Dulle | VA | 20166 | |
| Orbcomm | co Jerome Eisenberg CEO | 2115 Linwood Ave | | | Fort Lee | NJ | 07024 | |
| Orbcomm | Chris Lebrun | 21700 Atlantic Boulevard | | | Dulles | VA | 20166 | USA |
| Orbcomm | 2115 Linwood Ave | | | | Fort Lee | NJ | 07024 | |
| Orbcomm | | 2115 Linwood Avenue | Suite 100 | | Fort Lee | NJ | 07024 | |
| Orbcomm | | 21700 Atlantic Boulevard | | | Dulles | VA | 20166 | |
| Orbcomm LLC | 21700 Atlantic Boulevard | | | | Dulles | VA | 20166 | |
| Otel Telecom | Attn:  Otto White | 300 - 74th Avenue NE | | | St. Petersburg | FL | 33702-5430 | |
| Owen Lynn | | [Address on File] | | | | | | |
| Pablo Riviere | | [Address on File] | | | | | | |
| Pacific Shredding Company | 336 Bon Air Ctr 417 | | | | Greenbrae | CA | 94904 | |
| Pagemill Partners LLC | | 2475 Hanover St | | | Palo Alto | CA | 94304 | |
| Paladin Capital | Kenneth Pentimonti | 2001 Pennsylvania Ave NW Ste 400 | | | Washington | DC | 20006 | |
| Palm, Inc. | Gabriel Acosta-Lopez | 5470 Great America Parkway | | | Santa Clara | CA | 95052-8007 | |
| PCG | Timothy Kelleher | 1200 Prospect St Ste 200 | | | La Jolla | CA | 92037 | |
| Peak IP Solutions LLC | 198 Alden Ln Ste 100 | | | | Livermore | CA | 94550 | |
| Peery & Associates Inc | PO Box 850 | | | | Pescadero | CA | 94060 | |
| Pension Benefit Guaranty Corp | 1200 K St Nw | | | | Washington | DC | 20005 | |
| Penske | Brian Hard | Route 10th | | | Green Hills | PA | 19607 | |
| PepsiCo, Inc. | Joe Yates | 5600 Headquarters Drive | | | Plano | TX | 75024 | |
| Pequot Capital | Mike Cardullo | 2500 Sand Hill Rd Ste 203 | | | Menlo Park | CA | 94025 | |
| Peter Greer | Jadda Capital Market, LLC | 1688 Telegraph Road | Suite 140 | | Bloomfield Hills | MI | 48302 | |
| Peter Robinson | | [Address on File] | | | | | | |
| Peter Thayer | | [Address on File] | | | | | | |
| PHH Arval | David J. Coleman | 940 Ridgebrook Road | | | Sparks | MD | 21152 | |
| PHH Vehicle Management Services, LLC | David J. Coleman | 307 International Circle | | | Hunt Valley | MD | 21030-1337 | |
| PHH Vehicle Management Services, LLC (PHH Aral) | Attn:  David J. Coleman | 940 Ridgebrook Road | | | Sparks | MD | 21152-9390 | |
| Phil Straw | | [Address on File] | | | | | | |
| Philip Dean | | [Address on File] | | | | | | |

In re: Delphi Corporation, et al.
Case No. 05-44481.

Page 7 of 11

7/24/2006 10:25 AM

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Platinum Equity (Aether Systems) | Ryan Fitch | 360 North Crescent Drive | | | Beverly Hills | CA | | |
| PolarCom Inc. | 232 Melbourne | | | | Hurst | TX | 76053 | |
| PolarCom Inc. | 232 Melbourne | | | | Hurst | TX | 76053 | |
| Posh Bagel At Mtn View | 444 Castro St Ste 120 | | | | Mountain View | CA | 94041 | |
| Premiere Global Services | PO Box 404351 | | | | Atlanta | GA | 30384-4351 | |
| Prakash Sinha | | [Address on File] | | | | | | |
| Prolifix | Mark Mclauchlan | 13 Ronwood Ave | | | Manukau City Aukland | | 01702 | New Zealand |
| Prolifix Group | John McMahon | 13 Ronwood Avenue | Manukau City | | Auckland | | 01702 | New Zealand |
| Prolificx New Zealand Ltd. | | Level 1, 13 Ronwood Avenue | | | Manukau City | Auckland | 01702 | New Zealand |
| Prosodie | André Saint-Mleux | 150 rue Galliéni - 92100 Boulogne-Billancourt France | | | | | | |
| Prospect Partners | Douglas Smith | 200 West Madison St Ste 2710 | | | Chicago | IL | 60606 | |
| Psc Electronics | 2307 Calle Del Mundo | | | | Santa Clara | CA | 95054 | |
| Puerto Rico Telephone | Benjamin Figueroa | P.O. Box 360998 | | | San Juan | P.R. | 936 | |
| Pumatech, Inc. | Kally J. Hicks | 2550 North First Street | Suite 500 | | San Jose | CA | 95131 | |
| Purvi Rajani | | [Address on File] | | | | | | |
| Pyramid Communications | "Bill" | 15182 Triton Lane | Ste 102 | | Huntington Beach | CA | 92649 | |
| Quake Global, Inc. | J. C. Moir | 9765 Clairemont Mesa Boulevard | Suite A | | San Diego | CA | 92124 | |
| Qualcomm | Tom Doyle William E. Keitel Nagraj Kashyap  Joan Waltman, President Wireless Business Solutions | 5775 Morehouse Dr | | | San Diego | CA | 92121 | |
| Qualnetics Corp | 14241 Ne Wood Duvall Rd 176 | | | | Woodenville | WA | 98072 | |
| Qualnetics Corporation | 14623 NE North Woodinville Way, Suite 107 | | | | Woodinville | WA | 98072 | |
| Qualnetics Corporation | Richard H. Stenson | 14241 NE Woodinville-Duvall Road | #176 | | Woodinville | WA | 98072 | |
| Quill Corporation | PO Box 94081 | | | | Palatine | IL | 60094-4081 | |
| Qwest 66083745 | PO Box 856169 | | | | Louisville | KY | 40285-6169 | |
| Qwest 66083745 | PO Box 856169 | | | | Louisville | KY | 40285-6169 | |
| Qwest Communications Corporation | 1801 California Street, Suite 3800 | | | | Denver | CO | 80202 | |
| QWest Interprise Networking | Attn:  Manager | Department 047 | Contract No. CPE147845516ABA | | Denver | CO | 80271 | |
| R Systems, Inc. | | 5000 Windplay Drive | Suite 5 | | El Dorado Hills | CA | 95762 | |
| R.f. Solutions | Unit 21 Cliffe Industrial Estate | | | | Lewes | East Sussex | BN8 6JL | |
| Rachel Liston | | [Address on File] | | | | | | |
| Rajesh Krishnamurthy | | [Address on File] | | | | | | |
| Rajiv Thakur | | [Address on File] | | | | | | |
| Ramasamy Ramasubramanian | | [Address on File] | | | | | | |
| Rand McNally & Company | Robert L. Simmons | 8255 North Central Park | | | Skokie | IL | 60076 | |
| Remote Communications Company | 539 Eastline Rd. | | | | Ballston Spa | NY | 12020 | |
| Remote Dynamics | Dennis R. Casey J. Raymond Bilbao | 1155 Kas Drive Ste 100 | | | Richardson | TX | 75081 | |
| Rena Yamamoto | | [Address on File] | | | | | | |
| Republic Indemnity | Tammy Stamp | Broker Felice Insurance | 738 North First St | | San Jose | CA | 95112 | |
| Research In Motion Limited | Craig McLennon | 295 Phillip Street | | | Waterloo | Ontario | N2L 3W8 | Canada |
| Research In Motion Limited | Craig McLennon | 131 Shoemaker Street | | | Kitchener | Ontario | N2E 3B5 | Canada |
| Response Services Center, LLC | Robert W. Kelly | 6940 Columbia Gateway Drive | | | Columbia | MD | 21046 | |
| Rich Carlson | Wireless Matrix USA Inc | 12369 B Sunrise Valley Dr | | | Reston | VA | 20191 | |
| Richard Esmonde | | [Address on File] | | | | | | |
| Rigel Associates (AirLink Communications) | Jonathan A. Firestein | 1875 S Grant St Ste 960 | | | San Mateo | CA | 94402 | |
| RightNow Technologies | 40 Enterprise Blvd | PO Box 9300 | | | Bozeman | MT | 59718-9300 | |
| Robert Esparza | | [Address on File] | | | | | | |
| Robidart Asssociates, Inc. | Charles M. Robidart, Jr. | Robidart & Associates | 18430 Technology Drive Suite A | | Morgan Hill | CA | 95037 | |
| Rochelle Grober | | [Address on File] | | | | | | |
| Rodney Blum | | [Address on File] | | | | | | |
| Rodney Williams | | [Address on File] | | | | | | |
| Rohit Nigam | | [Address on File] | | | | | | |
| Roper Industries (Transcore) | John M. Worthington Joseph S. Grabias | 8158 Adams Dr | Liberty Centre Bldg 200 | | Hummelstown | PA | 17036 | |
| Ruchika Dhingra | | [Address on File] | | | | | | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Ryan Fitch | Platinum Equity | 360 North Crescent Dr | | | Beverly Hills | CA | | |
| Ryder System, Inc. | Kevin N. Rott | 11690 NW 105 Street | | | Medley | FL | 33178 | |
| Saama Technologies Inc | | 900 E Hamilton Ave 120 | | | Campbell | CA | 95008 | |
| Saama Technologies, Inc. | | 900 E Hamilton Ave Ste 120 | | | Campbell | CA | 95008 | |
| Sanjay Rao | Nokia | 6000 Connection Dr | | | Irving | TX | 75039 | |
| Satya Bathula | | [Address on File] | | | | | | |
| Sbc Long Distance 122328 | PO Box 660688 | | | | Dallas | TX | 75266-0688 | |
| Schlumberger Technology Corporation | Jim Kirksey | Houston Hwy | | | Victoria | TX | 77901 | |
| Scott Kornak Consulting | Scott Kornak | Unit #10, University Research Center | 3535 Research Road | | Calgary | Alberta | T2L 2K8 | Canada |
| Scott Plude | | [Address on File] | | | | | | |
| Seapine Software Inc | 5412 Courseview Dr Ste 200 | | | | Mason | OH | 45040 | |
| Seema Shembekar | | [Address on File] | | | | | | |
| Sentelligence, Inc. | William J. Linden | 100 South Campus Drive | P.O. Box 3799 | | Terre Haute | IN | 47803-0799 | |
| Servigistics | Eric Hinkle | 320 Interstate North Parkway | 4th Floor | | Atlanta | GA | 30339 | |
| Siemens | Joe Kaeser | Wittelsbacherplatz 2 | | | Munich | | D-80333 | Germany |
| | George C. Nolen | | | | | | | |
| Sierra Wireless, Inc. | Jason Cohenour | 13811 Wireless Way | | | Richmond | British Columbia | V6V 3A4 | Canada |
| Sierra Wirelessamerica Inc | PO Box 11626 | | | | Tacoma | WA | 98411-6626 | |
| SiriCOMM, Inc. | David N. Mendez | 2900 Davis Boulevard | Suite 130 | | Joplin | MO | 64804 | |
| Skip Maner | Inverness Capital | Inverness Capital Partners | The Graham Group | 3811 W Chester Pike Bldg 2 Ste 100 | Newtown Square | PA | 19073 | |
| Smartroute Systems | Kate Adams | 141 Porland Street | | | Cambridge | MA | 02139 | |
| Softconnex Technologies Inc | 125 Technology Dr | Ste 250 | | | Irvine | CA | 92618 | |
| softDSP Co. Ltd | Dae-Yun Kang President | 203 Jungil Bldg | 552-1 Sungnae-dong | | Kangdong-ku | Seoul | | Korea |
| softDSP Co. Ltd | Dae-Yun Kang President | 203 Jungil Bldg | 552-1 Sungnae-dong | | Kangdong-ku | Seoul | | Korea |
| Software SETT Corporation | 233 Oak Meadow Drive | | | | Los Gatos | CA | 95032 | |
| Solomon Asefaw | | [Address on File] | | | | | | |
| Sonic Software Corporation | 14 Oak Park | | | | Bedford | MA | 01730 | |
| Sonic Software Corporation | 14 Oak Park | | | | Bedford | MA | 01730 | |
| Sonic Software Corporation | 14 Oak Pk | | | | Bedford | MA | 01730 | |
| Sprint 0070819637 9 | PO Box 79125 | | | | City Of Industry | CA | 91716-9125 | |
| Sprint 0144947826 1 | PO Box 79357 | | | | City Of Industry | CA | 91716-9357 | |
| Sprint Data Svcs | PO Box 930331 | | | | Atlanta | GA | 31193-0331 | |
| Sprint Pcs 0063064768 2 | PO Box 79357 | | | | City Of Industry | CA | 91716-9357 | |
| Sprint Spectrum L.P. (d/b/a Sprint) | Attention: Senior Director, Business Sales & Support | 6130 Sprint Parkway | | | Overland Park | KS | 66251 | |
| Sprint Spectrum L.P. (d/b/a Sprint) | Attention: General Counsel | 6130 Sprint Parkway | | | Overland Park | KS | 66251 | |
| Sprint/United Management Company | Michelle D. Gottstein | Corporate Headquarters | 2001 Edmund Halley Dr | | Reston | VA | 20191 | |
| SRI Consulting Business Intelligence | Stephen Baughman | 333 Ravenswood Avenue | | | Menlo Park | CA | 94025 | |
| Stacey Weaver | | [Address on File] | | | | | | |
| Sterling Investments | Douglas L. Newhouse | 285 Riverside Ave Ste 300 | | | Westport | CT | 06880 | |
| Steve Conlisk | | [Address on File] | | | | | | |
| Steve Wollenberg | | [Address on File] | | | | | | |
| Strategis Client Services | Industry Canada | 803 280 Albert St | | | Ottawa | ON | K1P 5G8 | Canada |
| Strategy.com Incorporated | 8000 Towers Crescent Drive | Suite 1400 | | | Vienna | VA | 22182 | |
| Stripes Group | Brennon Garrett | 70 East 55th St | 15th Floor | | New York | NY | 10022 | |
| Subhasri Rajagopalan | | [Address on File] | | | | | | |
| Subramanian Mahesh | | [Address on File] | | | | | | |
| Subramanian Peruvemba | | [Address on File] | | | | | | |
| Suena Johnson | | [Address on File] | | | | | | |
| Sun Microsystems, Inc | | 4150 Network Circle | | | Santa Clara | CA | 95054 | |
| Sybase | Marty J. Beard | One Sybase Dr | | | Dublin | CA | 94568 | |
| | Dan Carl | | | | | | | |
| | Mark Wilson | | | | | | | |
| Synnex Information Technologies, Inc. | 1041 E. Butler Road, Suite 1200 | | | | Greenville | SC | 29607 | |
| Tammy Vinton | | [Address on File] | | | | | | |
| Tanner Installations | 6548 Brock St. | | | | Dublin | OH | 43017 | |
| Tearn Telematics, LLC | Brian Tsuchiya | | | | | | | |
| TechnoCom | Khaled Dessouky | 16133 Ventura Boulevard | Suite 500 | | Encina | CA | 91436 | |
| Technology Electronics Solutions | Nick Walker | | | | | | | |
| Ted Rockcastle | | [Address on File] | | | | | | |
| TELA Wireless Devices Inc. | Germain Prouix | 420 Main Street East | Suite #516 | | Milton | ON | L9T5G3 | Canada |
| Telcontar | 4 North Second Street, Suite 950 | | | | San Jose | CA | 95113 | |
| Telcontar | 4 North Second Street, Suite 950 | | | | San Jose | CA | 95113 | |

In re: Delphi Corporation, et al.
Case No. 05-44481

Page 9 of 11

7/24/2006 10:25 AM

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Telcontar | Four North Second St Ste 950 | | | | San Jose | CA | 95113 | |
| Telcontar | 4 North Second St Ste 950 | | | | San Jose | CA | 95113 | |
| Tele-Mobile Company | 200 Consilium Place | Suite 1600 | | | Scarborough | ON | M1H3J3 | Canada |
| Telenavigation Inc | 2975 San Ysidro Way | | | | Santa Clara | CA | 95051 | |
| Telesector Resources Group, Inc. | H. Malinowski | 240 E. 38th Street | | | New York | NY | 10016 | |
| Teletouch | Kip Hyde | 5718 Airport Freeway | | | Ft. Worth | TX | 76117 | |
| Televigation | Alyxia T. Do | 265 Santa Ana Court | | | Sunnyvale | CA | 94086 | |
| Televigation | Alyxia T. Do | 265 Santa Ana Court | | | Sunnyvale | CA | 94086 | |
| Telex Communications, Inc. | Chris Langdon | Attn:  Greg Weibert | 12000 Portland Avenue South | | Burnsville | MN | 55337 | |
| TEMIC Sprachverarbeitung GmbH | Dr. Mathias Gollwitoer | Soeflinger Str. 100 | | | D-89077 | Ulm | | Germany |
| TenSquare Inc. | Ten Square International Inc. | 1454 30th St. Unit 206 | | | West Des Moines | IA | 50325 | |
| TenSquare Inc. | TENSQUARE gmbh | Wilhelminenstr. 29 | | | Gelsenkirchen | | 45881 | Germany |
| Terion | Ken Cranston | 5465 Legacy Dr Ste 700 | | | Piano | TX | 75024 | |
| Thales | Jean-Louis Moraud | 45 Rue de Villiers | Neuilly sur | | Seine Cedex | | 92526 | France |
| | Trevor Price | | | | | | | |
| The Apache Software Foundation | | 1901 Munsey Dr | | | Forest Hill | MD | 21050-2747 | |
| The Boeing Company | D. A. Laxton | 2201 Seal Beach Boulevard | | | Seal Beach | CA | 90740-5603 | |
| The Boeing Company | D. A. Laxton | 100 North Riverside | | | Chicago | IL | 60606 | |
| The Brix Group Inc | 541 Division St | | | | Campbell | CA | 95008 | |
| The Carlyle Group | Allan Thygesen | 1001 Pennsylvania Avenue, NW | | | Washington | DC | 20004-2505 | |
| The Internet MainStreet, Inc. | 101 First St PMB 802 | | | | Los Altos | CA | 94022 | |
| The Next Market | A. J. Menuzzi | | | | | | | |
| The O'Gara Group, Inc. | Bill O'Gara | 8180 Corporate Park Drive | Suite 301 | | Cincinnati | OH | 45242 | |
| Thelen Reid & Priest Llp | 225 West Santa Clara St 1200 | | | | San Jose | CA | 95113-1723 | |
| ThingMagic, LLC | Ravikanth Pappu | One Broadway | 14th Floor | | Cambridge | MA | 02142 | |
| Thomas O'Gara Family Trust | co MobileAria | 800 W El Camino Real | Ste 240 | | Mountain View | CA | 94040 | |
| Thomas O'Gara Family Trust | co Thomas OGara & | Paul Wassenaar Esq | 2223 Avenida Dela Playa No 104 | | La Jolla | | | |
| | | | | | | CA | 92037 | |
| Thomas OGara | | 88833 West Olympic Blvd | | | Beverly Hills | CA | 90212 | |
| Thomas Ogara Reimb | 112 Price Ln | | | | Bellevue | ID | 83313-5126 | |
| Thomas Wainwright | | [Address on File] | | | | | | |
| Thomas Wood | | [Address on File] | | | | | | |
| Three Rivers Cellular | 413 Kurt Drive | | | | Pittsburgh | PA | 15243 | |
| TMW Systems, Inc. | Jeffrey Ritter | TMW Technology Plaza | 21111 Chagrin Boulevard | | Beachwood | OH | 44122 | |
| Todd Winkler | | [Address on File] | | | | | | |
| Tom Baird (individual) | | | | | | | | |
| Tom O'Gara | | [Address on File] | | | | | | |
| Tom Ogara Family Trust | Silver Springs Ranch | 112 Price Ln | | | Bellevue | ID | 63313-5126 | |
| Tom OGara Trustee | | 112 Price Lane | | | Bellevue | ID | 83313 | |
| TomTom | Harold Goddijn | Rembrandtplein 35 | | | Amsterdam | CT | 1017 | Netherlands |
| | Marina M. Wyatt | | | | | | | |
| Tony Eales | TRafficmaster teletrac | 7391 Lincoln Way | | | Garden Grove | CA | 92841-1428 | |
| Toshiba America Inc | 1251 Avenue of the Americas | Suite 4110 | | | New York | NY | 10020 | |
| Toshiba Financial Services | PO Box 790448 | | | | St Louis | MO | 63179-0448 | |
| Trade Debt Net | PO Box 1487 | | | | West Babylon | NY | 11704 | |
| TrafficCast | Jing (Connie) Li | 2122 Luann Lane | | | Madison | WI | 53713 | |
| Trafficmaster (Teletrac) | Tony Eales | 7391 Lincoln Way | | | Garden Grove | CA | 92841-1428 | |
| Transport International Pool, Inc. | 426 West Lancaster Avenue | | | | Devon | PA | 19333 | |
| Travelers Casualty Surety | Tammy Stamp | Broker Felice Insurance | 738 North First St | | San Jose | CA | 95112 | |
| Trialon Corporation | Les Hadden | 1815 Touby Pike | | | Kokomo | IN | 46901 | |
| Trimble Navigation | Mark A. Harrington | 935 Stewart Drive | | | Sunnyvale | CA | 94085 | |
| Tsola, Inc. | 1301 Shoreway Road | Suite 123 | | | Belmont | CA | 94002 | |
| United States Attorney's Office | 450 Golden Gate Avenue | 11th Floor | | | San Francisco | CA | 94102 | |
| Unum Life Insurance Co | PO Box 406990 | | | | Atlanta | GA | 30384-6990 | |
| UPS | Susan F. Ward | UPS Corporate Headquarters | 55 Glenlake Pkwy NE | | Atlanta | GA | 30328 | |
| Ups | PO Box 894820 | | | | Los Angeles | CA | 90189-4820 | |
| US Attorney's Office | Southern District of New York | 86 Chambers Street | | | New York City | NY | 10007 | |
| US Bancorp | | 1310 Madrid St | Ste 101 | | Marshall | MN | 56258 | |
| Vari Ghai | Digital Dispatch | 11920 Forge Place | | | Richmond | BC | V7A 4V9 | Canada |
| Varma Chanderraju | | [Address on File] | | | | | | |
| Verizon 969873638 00003 | PO Box 4001 | | | | Inglewood | CA | 90313-4001 | |

Delphi Corporation
Special Parties

| CreditorName | CreditorNoticename | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Verizon 969873638 00004 | PO Box 4001 | | | | Inglewood | CA | 90313-4001 | |
| Verizon Services Corp | Philip Melone | 240 East 38 Th St | | | New York | NY | 10016 | |
| Verizon Services Corp. | 240 East 38th Street | | | | New York | NY | 10016 | |
| Verizon Services Corp. | Kim Schroeder | 741 Zeckendorf Blvd. , 2nd floor | | | Garden City | NY | 11530 | |
| Verizon Services Corp. | Margaret Sheppard | 741 Zeckendorf Blvd., Room 617 | | | Garden City | NY | 11530 | |
| Victor Shao | | [Address on File] | | | | | | |
| Victoria Vainshtok | | [Address on File] | | | | | | |
| Video Domain US | Ilan Zorman | 970 Van Auken | | | Palo Alto | CA | 94304 | |
| Vijayaraghavan Doraiswami | | [Address on File] | | | | | | |
| Vinay Kodancha | | [Address on File] | | | | | | |
| Vincent Aragon | | [Address on File] | | | | | | |
| Vista Equity Partners / MDSI (Canada) | Jamie Ford | 150 California Street | 19th Floor | | San Francisco | CA | 94111 | |
| Visual Data Corporation | George G. Stemper Jr. | 1291 SW 29th Avenue | | | Pompano Beach | FL | 33069 | |
| Vladimir Chernov | | [Address on File] | | | | | | |
| Vladimir Dubrovsky | | [Address on File] | | | | | | |
| Vladimir Stepanov | | [Address on File] | | | | | | |
| Voice Access Technologies, Inc. | R. Michael Elder | 170 Knowles Drive | Suite 200 | | Los Gatos | CA | 95932 | |
| Volt Delta Resources, Inc. | Anthony Donato | 2401 North Glassell Street | | | Orange | CA | 92865 | |
| Volvo Penta of the Americas, Inc. | | 1300 Volvo Penta Dr | | | Chesapeake | VA | 23320-9860 | |
| VRV Design Pvt Ltd. | Bert Q. Vlaanderen | #325 6Fl-1 Roosevelt Rd | Sec 3 | | Taipei | | 106 | Taiwan |
| VRV Design Pvt Ltd. | H. Kantilal Compound | Sir MV Road 1st Fl | Sakinaka Andheri | | Mumbai | | 40072 | India |
| Wabash National | William Gruebel | PO Box 6129 | | | Lafayette | IN | 47903 | |
| Wavemakers | Richard Sones | 134 Abbott St Ste 302 | | | Vancouver | BC | V6B 2K4 | Canada |
| Wayland Systems | Meilir Page-Jones | | | | | | | |
| Weatherbank, Inc. | Michael R. Root | 1015 Waterwood Parkway | Suite J | | Edmond | OK | 73034 | |
| Webraska Mobile Technologies, S.A. | Jeffrey Riggs | 39555 Orchard Hill Place | Suite 600 | | Novi | MI | 48375 | |
| Webraska Mobile Technologies, S.A. | 78 306 Poissy Cedex | | | | 3 rue Gustave Eiffel | | | France |
| Webraska Mobile Technologies, S.A. | Jeffrey Riggs | 39555 Orchard Hill Place | Suite 600 | | Novi | MI | 48375 | |
| Webraska Mobile Technologies, S.A. | 78 306 Poissy Cedex | | | | 3 rue Gustave Eiffel | | | France |
| Website – Corporate HQ | Synnex Corporation | 44201 Nobel Drive | | | Fremont | CA | 94538 | |
| Wei Wang | | [Address on File] | | | | | | |
| WhereNet Corp. | Sean O'Connell | 2858 De La Cruz Boulevard | | | Santa Clara | CA | 95050 | |
| Wing Wong | | [Address on File] | | | | | | |
| Wireless Matrix | Rich Carlson | 12369-B Sunrise Valley Drive | | | Reston | VA | 20191 | |
| WirelessCar | Gary Hallgren | 111 Pacifica | Suite 200 | | Irvine | CA | 92618 | |
| Worldwide Business Research Usa | 535 5th Ave 8th Fl | | | | New York | NY | 10017-2045 | |
| Worldwide Express | 2540 North First St Ste 108 | | | | San Jose | CA | 95131 | |
| Wynnchurch | John Hatherly | Two Conway Park | 150 Field Dr Ste 165 | | Lake Forest | IL | 60045 | |
| | Ian Kirson | | | | | | | |
| | Cory Gaffney | | | | | | | |
| XATA | Mark Ties | 151 E. Cliff Road, Suite 10 | | | Burnsville | MN | 55337 | |
| Xoriant corporation | Venky Varadarajan | 5400 Betsy Ross Drive | Suite 200 | | Santa Clara | CA | 95054 | |
| Xtrasource, Inc. | Richard K. Tyler | 2245 Enterprise Parkway East | | | Twinsburg | OH | 44087 | |
| Xtrasource, Inc. | Richard K. Tyler | 2245 Enterprise Parkway East | | | Twinsburg | OH | 44087 | |
| Yahoo! Inc. | Pursi Rajani | 701 First Avenue | | | Sunnyvale | CA | 94089 | |
| Yong Tian | | [Address on File] | | | | | | |
| Zoya Ferdowsian | | [Address on File] | | | | | | |

In re: Delphi Corporation, et al.
Case No. 05-44481.

Page 11 of 11

7/24/2006 10:25 AM

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                         :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, <u>et al.</u>, | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN
OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL OF ASSETS OF
MOBILEARIA, INC. FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES,
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("MOBILEARIA SALE ORDER")

Upon the motion, dated June 6, 2006 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii)

the granting of certain bid protections, (iii) the form and manner of sale notices, and (iv) the

setting of a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the

"Sale") of certain of the Debtors' assets (the "Acquired Assets") comprising substantially all of

the assets of MobileAria, Inc. ("MobileAria") free and clear of liens, claims and encumbrances to

Wireless Matrix USA, Inc. (the "Purchaser") pursuant to the Asset Sale and Purchase Agreement

dated June 6, 2006 by and between MobileAria and the Purchaser (as amended on the record at

the auction held on July 6, 2006 to, <u>inter alia</u>, increase the cash consideration to be provided by

the Purchaser to $11.2 million, the "Agreement"),[1] or to the party submitting the highest or

otherwise best bid (the "Successful Bidder") at the auction held on July 6, 2006 (the "Auction"),

(ii) the assumption and assignment of certain executory contracts and unexpired leases (including

the Post-Petition Contracts) (the "Assigned Contracts") to the Purchaser or the Successful

Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchaser

or the Successful Bidder; and the Court having entered an order on June 22, 2006 (the "Bidding

Procedures Order") approving (a) bidding procedures, (b) the granting of certain bid protections,

(c) the form and manner of sale notices, and (d) the setting of the Sale Hearing; and the Auction

having been held on July 6, 2006; and the Sale Hearing having been held on July 19, 2006, at

which time all interested parties were offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed and considered (x) the Motion, (y) the objections thereto,

all of which have been resolved, (z) the arguments of counsel made, and the evidence proffered

or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the

best interests of MobileAria, its estate, its creditors, and all other parties in interest; and the Court

having considered the arguments of counsel at the Sale Hearing; and upon the record of the Sale

Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

     IT IS HEREBY FOUND AND DETERMINED THAT:[2]

     A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.  A true and correct copy of the Agreement is attached hereto as <u>Schedule 1</u>.

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

   B.  The statutory predicates for the relief sought in the Motion are sections

363 and 365 of 11 U.S.C. §§ 101-1330, as in effect on October 14, 2005 (the "Bankruptcy

Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

   C.  As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the

Assigned Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§

102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good

and sufficient, and appropriate under the particular circumstances, and (iii) no other or further

notice of the Motion, the Sale Hearing, the Sale or the assumption and assignment of the

Assigned Contracts is or shall be required.

   D.  As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, MobileAria has marketed the Acquired Assets and conducted the sale process in

compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted

in a non-collusive, fair, and good faith manner.

   E.  MobileAria (i) has full corporate power and authority to execute the

Agreement and all other documents contemplated thereby, and the transfer and conveyance of

the Acquired Assets by MobileAria has been duly and validly authorized by all necessary

corporate action of MobileAria, (ii) has all of the corporate power and authority necessary to

consummate the transactions contemplated by the Agreement, and (iii) has taken all corporate

<div align="center">3</div>

action necessary to authorize and approve the Agreement and the consummation by MobileAria

of the transactions contemplated thereby, and no consents or approvals, other than those

expressly provided for in the Agreement, are required for MobileAria to consummate such

transactions.

F.       MobileAria has demonstrated both (i) good, sufficient, and sound business

purpose and justification for the Sale, because, among other things, MobileAria and its advisors

diligently and in good faith analyzed all other available options in connection with the

disposition of the Acquired Assets and determined that the terms and conditions set forth in the

Agreement, and the transfer to Purchaser of the Acquired Assets pursuant thereto, represent a fair

and reasonable purchase price and constitute the highest or otherwise best value obtainable for

the Acquired Assets and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization in that, among other things, absent the

Sale the value of the Acquired Assets will be substantially diminished.

G.       A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchaser, (iii) counsel for @Road, Inc., (iv) counsel for the Official

Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases (the

"Creditors' Committee"), (v) counsel for the Official Committee of Equity Security Holders

appointed in the above-captioned chapter 11 cases, (vi) all entities known to have expressed an

interest in a transaction with respect to the Acquired Assets during the past six months, (vii) all

entities known to have asserted any Interests or Claims (as defined below) in or upon the

Acquired Assets, (viii) all federal, state, and local regulatory or taxing authorities or recording

4

offices, including but not limited to environmental regulatory authorities, which have a

reasonably known interest in the relief requested by the Motion, (ix) all parties to Assigned

Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice,

(xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")) and such other entities that are

required to be served with notices under the Supplemental Case Management Order.

H.    The Purchaser is not an "insider" of any of the Debtors, as that term is

defined in 11 U.S.C. § 101(31).

I.    The Agreement was negotiated, proposed, and entered into by MobileAria

and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

Neither MobileAria nor the Purchaser has engaged in any conduct that would cause or permit the

Sale to be avoidable under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as

such, is entitled to all of the protections afforded thereby.  The Purchaser is acting in good faith

within the meaning of 11 U.S.C. § 363(m) in undertaking the transactions contemplated by the

Agreement.

K.    The consideration provided by the Purchaser for the transfer of the

Acquired Assets and the assignment of the Assigned Contracts pursuant to the Agreement (i) is

fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will

provide a greater recovery for MobileAria's creditors than would be provided by any other

practical available alternative, the Debtors having reserved, however, all of the rights against

@Road, Inc., and (iv) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the

District of Columbia.  Such transfers and assignments constitute transfers and assignments for

reasonably equivalent value and fair consideration.

        L.      The Sale must be approved and consummated promptly to preserve the

viability of MobileAria as a going concern.  A prompt Sale of the Acquired Assets is the best

way to maximize value for the MobileAria's estate and creditors.

        M.     With the exception of the Assumed Liabilities, the transfer of the Acquired

Assets and the assignment of the Assigned Contracts to the Purchaser pursuant to the Agreement

will be a legal, valid, and effective transfer of the Acquired Assets and assignment of the

Assigned Contracts, and will vest the Purchaser with all right, title, and interest to the Acquired

Assets and all rights related to the Assigned Contracts free and clear of any and all liens, claims,

interests, and encumbrances of any type whatsoever (whether known or unknown, choate or

inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent,

liquidated or unliquidated, matured or unmatured, material or non-material, disputed or

undisputed, whether arising prior to or subsequent to October 14, 2005, and whether imposed by

agreement, understanding, law, equity, or otherwise, including claims otherwise arising under

doctrines of successor liability), including, but not limited to those (i) that purport to give to any

party a right or option to effect any forfeiture, modification, right of first refusal, or termination

of MobileAria's or the Purchaser's interest in the Acquired Assets, or any similar rights, and (ii)

relating to taxes arising under or out of, in connection with, or in any way relating to the

6

operation of MobileAria's business prior to the transfer of the Acquired Assets to the Purchaser (collectively, the "Interests and/or Claims").

N.      If the Sale of the Acquired Assets were not free and clear of all Interests and/or Claims as set forth in the Agreement and this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Interests and/or Claims as set forth in the Agreement and this Sale Order, including, without limitation, the Retained Liabilities, the Purchaser would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting MobileAria, its estate, and its creditors.

O.      MobileAria may sell its interests in the Acquired Assets free and clear of all Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Those (i) holders of Interests and/or Claims and (ii) non-debtor parties to the Assigned Contracts who did not object, or who withdrew, settled, or otherwise resolved their objections, to the Sale, the Motion, or the assumption and assignments of Assigned Contracts contemplated by the Agreement and the Motion, are deemed to have consented to the Sale, to such assumption and assignments, and to the other transactions contemplated in the Agreement, pursuant to 11 U.S.C. §§ 363(f)(2) and 365(c).  Those (i) holders of Interests and/or Claims and (ii) non-debtor parties to Assigned Contracts who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest or Claim.

P.      The (i) transfer of the Acquired Assets to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assigned Contracts and Assumed Liabilities will not subject the Purchaser to any liability whatsoever with respect to the operation of the

Business prior to the Closing Date or by reason of such transfer under the laws of the United

States, any state, territory, or possession thereof, or the District of Columbia based, in whole or

in part, directly or indirectly, on any theory of law or equity, including, without limitation, any

theory of equitable law, including, without limitation, any theory of antitrust or successor or

transferee liability.

Q.    MobileAria has demonstrated that it is an exercise of its sound business

judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the

consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in

the best interests of MobileAria, its estate, and its creditors.  The Assigned Contracts being

assigned to, and the liabilities being assumed by, the Purchaser are an integral part of the

Business and the Acquired Assets being purchased by the Purchaser and, accordingly, such

assumption and assignment of Assigned Contracts and liabilities are reasonable, enhance the

value of MobileAria's estate, and do not constitute unfair discrimination.

R.    MobileAria has (i) cured, or has provided adequate assurance of cure, of

any monetary or non-monetary default existing prior to the Closing Date under any of the

Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts

provided on Schedule 2 hereto, and (ii) provided compensation or adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Assigned Contracts, within the meaning of 11 U.S.C. §

365(b)(1)(B) (the "Cure").  Further, the Purchaser has provided adequate assurance of its future

performance of and under the Assigned Contracts, within the meaning of 11 U.S.C. §§

365(b)(1)(C) and 365(f)(2)(B).  The Court hereby finds that the Assigned Contracts to be

assumed and assigned under the Agreement shall be assigned and transferred to, and remain in

full force and effect for the benefit of Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer, pursuant to 11 U.S.C. § 365(f).

S.    Approval of the Agreement and consummation of the Sale of the Acquired Assets and assignment of the Assigned Contracts at this time are in the best interests of MobileAria, its creditors, its estate, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## General Provisions

1.    The Motion is GRANTED.

2.    All objections to the Motion or the relief requested therein, including, without limitation, objections to the Sale, any Cures or Cure Amounts, or the assumption and assignment of the Assigned Contracts, that have not been withdrawn, waived, settled, or otherwise resolved, and all reservations of rights included therein, are hereby overruled on the merits.

## Approval Of The Agreement

3.    Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

4.    Pursuant to 11 U.S.C. § 363(b), MobileAria is authorized and directed to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

5.    Each of the signatories to the Agreement is directed to take all actions necessary or appropriate to effectuate the terms of this Sale Order.

6.       The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession, the Acquired Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

7.       This Sale Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of MobileAria, the Purchaser, all successors and assigns of the Purchaser and MobileAria, all affiliates and subsidiaries of the Purchaser and MobileAria, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection.  To the extent any provision of this Sale Order is inconsistent with the terms of the Agreement, this Sale Order shall govern.

8.       The Agreement and any related agreements, documents, or other instruments, including, without limitation, the Ancillary Agreements, may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement is not material.

## Sale And Transfer Of The Acquired Assets

9.       Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Acquired Assets shall be transferred to the Purchaser free

and clear of all Interests and/or Claims of any kind or nature whatsoever, with all such Interests

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they now have as against the Acquired Assets, subject to

any claims and defenses MobileAria may possess with respect thereto.

10.     The transfer of the Acquired Assets and the assignment of the Assigned

Contracts to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective

transfer of the Acquired Assets and assignment of the Assigned Contracts , and shall vest the

Purchaser with all right, title, and interest in and to the Acquired Assets and the assignment of

the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature

whatsoever, including without limitation, any Interests or Claims held by any of the Debtors,

their affiliates, their affiliates' creditors, vendors, suppliers, customers, employees or lessors and

any other person (collectively, "Claimants").  Purchaser shall not be liable in any way (as

assignee, successor entity, or otherwise) for any Interests or Claims that any Claimant or other

third party may have against MobileAria or its affiliates, or the Business, or under any Assigned

Contract.

11.     If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests or Claims

against or in the Acquired Assets shall not have delivered the foregoing to MobileAria prior to

the Closing Date, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfactions, releases of all Interests or Claims that the person or

entity has with respect to the Acquired Assets, or otherwise, then (a) MobileAria is hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Acquired Assets and (b) the Purchaser is hereby

11

authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once

filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all

Interests and/or Claims in the Acquired Assets of any kind or nature whatsoever.

12.    This Sale Order (a) shall be effective as a determination that, upon the

Closing Date, all Interests and/or Claims of any kind or nature whatsoever existing as to

MobileAria, the Acquired Assets, or the Assigned Contracts prior to the Closing Date have been

unconditionally released, discharged, and terminated (other than any surviving obligations), and

that the conveyances described herein have been effected and (b) shall be binding upon and shall

govern the acts of all entities including, without limitation, all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register, or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Acquired Assets.

13.    Except as expressly permitted or otherwise specifically provided by the

Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt

security holders, equity security holders, governmental, tax, and regulatory authorities, lenders,

trade, and other creditors, holding Interests or Claims of any kind or nature whatsoever against or

in MobileAria or the Acquired Assets or the Assigned Contracts (whether legal or equitable,

secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to, MobileAria,

the Acquired Assets, the Assigned Contracts, the operation of the Business prior to the Closing

Date, or the transfer of the Acquired Assets and the Assigned Contracts to the Purchaser, hereby

are forever barred from asserting against the Purchaser, its successor or assign, its property, the

Acquired Assets or the Assigned Contracts, such persons' or entities' Interests or Claims.

14.     Upon the consummation of the transactions contemplated by the

Agreement, the Purchaser shall not be deemed to (a) be the successor of MobileAria, (b) have, de

facto, or otherwise, merged with or into MobileAria, (c) be a mere continuation or substantial

continuation of MobileAria or the enterprise(s) of MobileAria, or (d) be liable for any acts or

omissions of MobileAria in the conduct of the Business.

### Assumption And Assignment To The Purchaser Of The Assigned Contracts

15.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing Date, MobileAria's assumption and assignment to the Purchaser, and the

Purchaser's assumption on the terms set forth in the Agreement, of the Assigned Contracts is

hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto

are hereby deemed satisfied.

16.     MobileAria is hereby authorized and directed in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and assign to the Purchaser, effective upon the

Closing Date, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or

nature whatsoever and (b) execute and deliver to the Purchaser such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchaser.

17.     The Assigned Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchaser in accordance with their respective terms,

notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer, and, pursuant to 11 U.S.C. § 365(k), MobileAria shall be

relieved from any further liability with respect to the Assigned Contracts after such assignment

to and assumption by the Purchaser, except for the Cure of any defaults required to be cured by

MobileAria pursuant to 11 U.S.C. § 365(b) as expressly provided herein.

18.    All monetary or non-monetary defaults or other obligations of MobileAria

under the Assigned Contracts (including, without limitation, any Cure obligations) subsequently

arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or

any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall

be cured by MobileAria on or before the Closing Date or as soon thereafter as practicable, and

the Purchaser shall have no liability or obligation with respect to any Interest or Claim arising

from any Assigned Contract that arose or accrued prior to the Closing Date (including, without

limitation, any Cure obligations), except as otherwise expressly provided in the Agreement.

Each non-debtor party to any Assigned Contracts is deemed to have consented to the assumption

and assignment of the Assigned Contracts to Purchaser and is forever barred from asserting any

default existing as of the date of the Closing or any purported written or oral modification to the

Assigned Contracts.

19.    Each non-Debtor party to an Assigned Contract hereby is forever barred,

estopped, and permanently enjoined from (a) asserting against MobileAria or the Purchaser, or

the property of either of them, any default existing, arising or accruing on or before the Closing

Date, (b) asserting against the Purchaser any counterclaim, defense, setoff or any other Interest

or Claim asserted or assertable against MobileAria, and (c) imposing or charging against

Purchaser any rent accelerations, assignment fees, increases or any other fees as a result of

MobileAria's assumption and assignment to Purchaser of the Assigned Contracts.  The validity

of the assumption and assignment of the Assigned Contracts shall not be affected by any dispute

between MobileAria or any of its affiliates and any non-debtor party to an Assigned Contract.

20.    The failure of MoblieAria or the Purchaser to enforce at any time one or

more terms or conditions of any Assigned Contract shall not be a waiver of such terms or

conditions, or of MobileAria's and Puchaser's rights to enforce every term and condition of the

Assigned Contracts.

<u>Additional Provisions</u>

21.    The consideration provided by the Purchaser for the Acquired Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory,

possession, or the District of Columbia.

22.    Upon the occurrence of the Closing Date, this Sale Order shall be

construed and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Acquired Assets and Assigned Contracts or a bill of sale

transferring good and marketable title in such Acquired Assets and Assigned Contracts to the

Purchaser on pursuant to the terms of the Agreement.

23.    Except as otherwise provided in the Agreement, upon the Closing Date,

each of MobileAria's creditors is authorized and directed to execute such documents and take all

other actions as may be necessary to release their respective Interests and/or Claims against the

Acquired Assets and the Assigned Contracts, if any, as may have been recorded or may

otherwise exist.

       24.      Each and every federal, state, and governmental agency or department,

and any other person or entity, is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Agreement.

       25.      All entities who are currently, or as of the Closing Date may be, in

possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to

the Agreement are hereby directed to surrender possession of the Acquired Assets to the

Purchaser upon the occurrence of the Closing Date.

       26.      The Purchaser shall have no liability or responsibility for any liability or

other obligation of MobileAria arising under or related to the Acquired Assets or the Assigned

Contracts other than for the Assumed Liabilities.  Without limiting the generality of the

foregoing, and except as otherwise specifically provided herein and in the Agreement, the

Purchaser shall not be liable for any Interests or Claims against MobileAria or any of its

predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any

kind or character whether known or unknown as of the Closing Date, now existing or hereafter

arising, whether fixed or contingent, with respect to MobileAria or any obligations of

MobileAria arising prior to the Closing Date, including, but not limited to, liabilities on account

of any taxes arising, accruing, or payable under, out of, in connection with, or in any way

relating to the operation of the Business prior to the Closing Date.

       27.      Any amounts that become payable by MobileAria pursuant to the

Agreement or any Ancillary Agreement shall (a) constitute administrative expenses of

MobileAria's estate under 11 U.S.C. §§ 503(b) and 507(a)(1), and (b) be immediately payable if and when such obligation to pay or bear such amount shall arise under the Agreement, without any further order of this Court.

28.    Purchaser shall not be liable, either directly or indirectly, as purchaser, successor, transferee, assignee or otherwise, for any liabilities of or any Interest or Claim against or in MobileAria or any of its affiliates (whether under federal or state law or otherwise).  Under no circumstances shall the Purchaser be deemed a successor of or to MobileAria for any Interest or Claim against or in MobileAria or the Acquired Assets of any kind or nature whatsoever.  The sale, transfer, assignment, and delivery of the Acquired Assets shall not be subject to any Interests or Claims, and Interests or Claims of any kind or nature whatsoever shall remain with, and continue to be obligations of, MobileAria.  All persons holding Interests or Claims against or in MobileAria or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests or Claims of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, the Acquired Assets, or the Assigned Contracts with respect to any Interest or Claim of any kind or nature whatsoever such person or entity had, has, or may have against or in MobileAria, its estate, its officers, its directors, its shareholders, the Acquired Assets, or the Assigned Contracts.

29.    Nothing contained in any plan of reorganization confirmed in the above-captioned cases or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.

30.    The transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the

17

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the

Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.  The

Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the

protections afforded by section 363(m) of the Bankruptcy Code.

31.    The consideration provided by the Purchaser for the Acquired Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

32.    MobileAria, including, but not limited to, its officers, employees, and

agents, is hereby authorized to execute such documents and do such acts as are necessary or

desirable to carry out the transactions contemplated by the terms and conditions of the

Agreement and this Sale Order.  MobileAria shall be, and it hereby is, authorized to take all such

actions as may be necessary to effectuate the terms of this Sale Order.

33.    The terms and provisions of the Agreement and this Sale Order shall be

binding in all respects upon, and shall inure to the benefit of, MobileAria, its estates, and its

creditors, the Purchaser, and its respective affiliates, successors, and assigns, and any affected

third parties, including, but not limited to, all persons asserting an Interest or Claim in the

Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any

subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any

chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms

and provisions likewise shall be binding.

34.     Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of MobileAria's estate, such as funds that are trust funds under any applicable state lien laws.

35.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

36.     The failure specifically to include or to reference any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.     The provisions of this Sale Order are nonseverable and mutually dependent.

38.     Nothing in this Sale Order shall alter or amend the Agreement and the obligations of MobileAria and the Purchaser thereunder.

39.     This Court retains exclusive jurisdiction to interpret, construe, enforce and implement the terms and provisions of this Sale Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith (including the Ancillary Agreements) in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets and assignment of the Assigned Contracts to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to MobileAria pursuant to the Agreement, (c) resolve any disputes arising

under or related to the Agreement, except as otherwise provided therein, (d) interpret,

implement, and enforce the provisions of this Sale Order, (e) protect the Purchaser against any

Interests and/or Claims against MobileAria or the Acquired Assets, of any kind or nature

whatsoever, attaching to the proceeds of the Sale and (f) determine all disputes among

MobileAria, the Purchaser and any non-debtor parties to any Assigned Contract concerning, inter

alia, MobileAria's assumption and assignment of any Assigned Contract to Purchaser under the

Agreement.

40.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

41.     Pursuant to the terms of the Agreement and the Bidding Procedures Order,

MoblieAria shall credit the Purchaser the amount of one hundred ninety-five thousand dollars

($195,000.00) against the $11,200,000 cash consideration to be provided to MobileAria at

Closing, after which credit Purchaser shall have no right to the Break-Up Fee.

<div align="center">Verizon Contract</div>

42.     Notwithstanding any other provision of this Sale Order, the following

shall apply with respect to the assumption of the Verizon Contract and the assignment of the

Verizon Contract to the Purchaser:

(a)     Verizon has asserted that MobileAria is responsible for the payment of certain

charges and other liabilities, as more particularly identified in Schedule 3 hereto,

including, without limitation, all charges that have arisen prior to the date of this

Order associated with alleged errors that may have resulted in inaccurate billings

to Verizon (the "Schedule 3 Disputes"), in the amount of up to $700,000.  Any

amounts paid by MobileAria with respect to the Schedule 3 Disputes shall be

credited to the $700,000.  Verizon and MobileAria shall each work in good faith

during the next 60 days to attempt to resolve these matters.  In the event that

Verizon seeks to recover for charges arising with respect to a Schedule 3 Dispute,

Verizon shall submit such charges to MobileAria within 60 days of the date of

this Order ("Asserted Schedule 3 Disputes") or be deemed to have waived such

Schedule 3 Dispute.  If either MobileAria or Verizon reasonably determines that

the disputes described on Schedule 3 or with respect to the Asserted Schedule 3

Disputes cannot be resolved consensually, MobileAria or Verizon may seek this

Court's determination of same.  The Purchaser shall not be liable to Verizon for

all or any portion of the alleged amounts due that are described in this

subparagraph.  Any and all amounts due and owing from MobileAria to Verizon

pursuant to this subparagraph (a) shall constitute administrative expenses of

MobileAria's estate under 11 U.S.C. §§ 503(b) and 507(a)(1) without further

order of the Court with priority over claims of MobileAria's affiliates.

(b)    Other than warranty and indemnity obligations as referred to in subparagraph (c)

below, with respect to any defaults under the Verizon Contract that are not known

as of the date of this Sale Order, after reasonable investigation, and are not

matters of the types that constitute Schedule 3 Disputes (collectively, the

"Previously Unasserted Pre-Closing Defaults"), MobileAria shall be responsible

for such Previously Unasserted Pre-Closing Defaults under the Verizon Contract

up to the sum of $1,000,000. Verizon shall have one year from the Closing to

assert any Previously Unasserted Pre-Closing Defaults (such then-asserted claims,

the "Category 2 Claims").  If MobileAria or Verizon reasonably determines that

the Category 2 Claims cannot be resolved consensually, MobileAria or Verizon

may seek this Court's determination of same.  Any and all amounts due and owing

from MobileAria to Verizon pursuant to this subparagraph (b) shall constitute

administrative expenses of MobileAria's estate under 11 U.S.C. §§ 503(b) and

507(a)(1) without further order of the Court with priority over claims of

MobileAria's affiliates.

(c)     The Purchaser agrees to perform the warranty and indemnity obligations set forth

in the Verizon Contract.

(d)     With respect to any future obligations that arise subsequent to the Closing, the

Purchaser shall perform such future obligations as and when they become due.

(e)     Verizon hereby withdraws its Objection Of Verizon Services Corp. To

Assumption And Assignment Of Executory Contracts In Connection With Motion

Of Debtors For An Order Authorizing And Approving (i) Sale Of Certain Of The

Debtors' Assets Comprising Substantially All Assets Of MobileAria, Inc. Free

And Clear Of Liens, Claims And Encumbrances, (ii) Assumption And

Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii)

Assumption Of Certain Liabilities (the "Objection") with prejudice and agrees

that, should Verizon seek to terminate the Verizon Contract for convenience

pursuant to the terms thereof, each of the Purchaser and MobileAria shall be

relieved from all of their obligations under this paragraph 43.

(f)        Certain of the Schedule 3 Disputes involve assertions by Verizon that, as of the

date hereof, MobileAria has not completed certain repairs and other work due

under the Verizon Contract ("WIP").  If MobileAria is unable to or fails to

complete any or all of the WIP, then Purchaser shall be obligated to promptly

complete such WIP in a commercially-reasonable manner.   Purchaser shall seek

payment of its reasonable actual out-of-pocket costs and expenses attributable to

Purchaser's performance of WIP, including, but not limited to Purchaser's direct

labor costs ("WIP Costs").   Mobile Aria shall deliver to the Escrow Agent the

sum of $100,000 to pay the estimated WIP Costs ("WIP Escrow").   Purchaser

may periodically deliver to the Escrow Agent and Mobile Aria invoices related to

WIP Costs.  The Escrow Agent shall pay all invoiced WIP Costs ten (10) days

after its receipt of the invoices from the WIP Escrow, provided, however, Mobile

Aria does not object, in good faith, in detail and in writing to some or a portion of

the invoiced WIP Costs.   The Escrow Agent shall promptly pay all undisputed

WIP Costs.   In the event of a dispute, the parties shall try to work out their

differences consensually.  If either the Purchaser or MobileAria reasonably

determines that a WIP Cost dispute cannot be resolved consensually, the

Purchaser or MobileAria may seek this Court's determination of same.  Any and

all invoiced amounts due and owing from MobileAria to Purchaser pursuant to

this paragraph 43(f) shall constitute administrative expenses of MobileAria's

estate under 11 U.S.C. §§ 503(b) and 507(a)(1) without further order of the Court

with priority over claims of MobileAria's affiliates.

## Waiver of Stay

43.     As provided by Fed. R. Bankr. P. 7062 and notwithstanding Rules 6004(g) and

6006(d) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, this Sale

Order shall take effect and be enforceable immediately upon its entry.

44.     Time is of the essence in closing the Sale and MobileAria and Purchaser intend to

close the Sale as soon as possible.  Therefore, any party objecting to this Sale Order must

exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being

foreclosed as moot.

Dated: New York, New York
       July 21, 2006

                          /s/Robert D. Drain
                          UNITED STATES BANKRUPTCY JUDGE

**EXECUTION COPY**

**AMENDED AND RESTATED ASSET SALE AND PURCHASE AGREEMENT**

**BETWEEN**

**WIRELESS MATRIX USA, INC.**

**AND**

**MOBILEARIA, INC.**

**Dated as of July 20, 2006**

# TABLE OF CONTENTS

**Page**

1.   CONVEYANCE OF THE ACQUIRED ASSETS: ...........................................................10

   1.1   Acquired Assets Transaction ...........................................................10

      1.1.1   Acquired Assets ...........................................................10
      1.1.2   Excluded Assets ...........................................................10
      1.1.3   Post-Closing Asset Deliveries...........................................11
      1.1.4   Prorations: ...........................................................12
      1.1.5   Non-Assignable Permits and Contracts:...............................13

2.   ASSUMPTION OF LIABILITIES: ...........................................................14

   2.1   Assumed Liabilities ...........................................................14

   2.2   No Expansion of Third Party Rights ...........................................14
   2.3   Retained Liabilities ...........................................................14

3.   ACQUIRED ASSETS - PERSONNEL MATTERS – TRANSFERRED
     EMPLOYEES: ...........................................................15

   3.1   Business Employees ...........................................................15

   3.2   Cooperation...........................................................16
   3.3   No Third Party Rights ...........................................................16

4.   PURCHASE PRICE: ...........................................................16

   4.1   Purchase Price; Deposit Amount ...........................................16

      4.1.1   Deposit Amount ...........................................................16
      4.1.2   Delivery of Purchase Price ...........................................17
   4.2   Allocation of Purchase Price ...........................................17
   4.3   Other Adjustments...........................................................18

5.   REPRESENTATIONS AND WARRANTIES: ...........................................18

   5.1   Representations and Warranties of Seller...............................18

      5.1.1   Organization and Good Standing ...................................18
      5.1.2   Corporate Power; Due Authorization ..............................18
      5.1.3   No Violations ...........................................................18
      5.1.4   Sufficiency of Acquired Assets ...................................19
      5.1.5   Personal Property; Condition of Personal Property:..............19
      5.1.6   Litigation ...........................................................19
      5.1.7   Intellectual Property Assets: ...................................19
      5.1.8   Insurance ...........................................................21
      5.1.9   Compliance with Other Instruments and Laws; Permits..............21
      5.1.10  Brokers ...........................................................21
      5.1.11  Consents and Approvals...........................................21
      5.1.12  Financial Statements ...........................................22
      5.1.13  Events Subsequent to Latest Financial Statements ..............22
      5.1.14  Contracts: ...........................................................22
      5.1.15  Tax Matters:...........................................................23
      5.1.16  Employee Issues: ...........................................................24

# TABLE OF CONTENTS
(continued)

Page

|  | | 5.1.17 Absence of Other Representations or Warranties | 25 |
| 5.2 | | Representations and Warranties of Purchaser | 25 |
|  | | 5.2.1 Corporate Data | 25 |
|  | | 5.2.2 Corporate Power; Due Authorization | 25 |
|  | | 5.2.3 No Violations | 25 |
|  | | 5.2.4 Litigation | 25 |
|  | | 5.2.5 Brokers | 26 |
|  | | 5.2.6 Solvency | 26 |
|  | | 5.2.7 Availability of Funds | 26 |
|  | | 5.2.8 Adequate Assurance of Future Performance | 26 |
|  | | 5.2.9 Compliance with Law | 26 |
|  | | 5.2.10 Anti-Money Laundering | 26 |
| 5.3 | | Survival of Representations, Warranties and Covenants of the Seller | 27 |
| 5.4 | | Survival of Representations, Warranties and Covenants of the Purchaser | 27 |
| 6. | CONDITIONS TO CLOSING: | | 27 |
| 6.1 | | Conditions to Obligations of Seller and Purchaser | 27 |
|  | | 6.1.1 Sale Approval Order | 27 |
|  | | 6.1.2 No Law, Judgments, etc | 27 |
| 6.2 | | Conditions to Obligations of Purchaser | 27 |
|  | | 6.2.1 Accuracy of Representations and Warranties | 27 |
|  | | 6.2.2 Performance of Covenants | 28 |
|  | | 6.2.3 Payment of Cure Amounts | 28 |
|  | | 6.2.4 Certification | 28 |
|  | | 6.2.5 Other Approvals | 28 |
| 6.3 | | Conditions to Obligations of Seller | 28 |
|  | | 6.3.1 Accuracy of Representations and Warranties | 28 |
|  | | 6.3.2 Performance of Covenants | 28 |
|  | | 6.3.3 Delivery of Purchase Price | 29 |
| 7. | CLOSING: | | 29 |
| 7.1 | | The Closing | 29 |
| 7.2 | | Ancillary Agreements | 29 |
| 7.3 | | Seller's Deliveries | 29 |
| 7.4 | | Purchaser's Deliveries | 30 |
| 8. | CERTAIN ADDITIONAL COVENANTS: | | 30 |
| 8.1 | | Bankruptcy Actions: | 30 |
| 8.2 | | Registrations, Filings and Consents; Further Actions | 31 |
| 8.3 | | Operation of the Business Pending Closing: | 31 |
| 8.4 | | Assumed Contracts; Cure Amounts | 31 |
| 8.5 | | Post-Closing Covenants | 32 |
|  | | 8.5.1 Seller Post-Closing Covenants: | 32 |

## TABLE OF CONTENTS
(continued)

Page

|  | | 8.5.2 | Technical Documentation | 33 |
|  | | 8.5.3 | Books and Records and Litigation Assistance From and After Closing: | 33 |
|  | | 8.5.4 | Payment and Collections | 34 |
|  | | 8.5.5 | Intellectual Property Transition Rights | 35 |
|  | 8.6 | Further Assurances | | 35 |
|  | 8.7 | [Reserved] | | 35 |
|  | 8.8 | Certain Transactions | | 35 |
|  | 8.9 | Communications with Customers and Suppliers | | 35 |
| 9. | TERMINATION: | | | 35 |
|  | 9.1 | Termination | | 35 |
|  | | 9.1.1 | By Either Party: | 35 |
|  | | 9.1.2 | By Purchaser | 36 |
|  | | 9.1.3 | By Seller | 37 |
|  | 9.2 | Notice of Termination | | 37 |
|  | 9.3 | Break-Up Fee; Expense Reimbursement: | | 37 |
|  | | 9.3.1 | Break-Up Fee | 37 |
|  | | 9.3.2 | Expense Reimbursement | 37 |
|  | 9.4 | Procedure and Effect of Termination | | 38 |
| 10. | OTHER TAX MATTERS: | | | 38 |
| 11. | BIDDING PROCEDURES: | | | 39 |
|  | 11.1 | MobileAria Initial Bankruptcy Actions | | 39 |
|  | 11.2 | Court Approval | | 39 |
|  | 11.3 | Qualified Bidder | | 40 |
|  | 11.4 | Bid Deadline | | 41 |
|  | 11.5 | Due Diligence | | 41 |
|  | 11.6 | Bid Requirements | | 42 |
|  | 11.7 | Qualified Bids | | 42 |
|  | 11.8 | Bid Protection | | 43 |
|  | 11.9 | Auction, Bidding Increments and Bids Remaining Open | | 43 |
|  | 11.10 | Acceptance of Qualified Bids | | 44 |
|  | 11.11 | Sale Hearing | | 45 |
|  | 11.12 | Return of Good Faith Deposit | | 45 |
|  | 11.13 | Reservation of Rights | | 45 |
| 12. | INDEMNIFICATION: | | | 45 |
|  | 12.1 | Seller's Agreement to Indemnify | | 45 |
|  | 12.2 | Purchaser's Agreement to Indemnify | | 46 |
|  | 12.3 | Limitations on Agreements to Indemnify | | 46 |
|  | 12.4 | Third Party Indemnification Procedures | | 47 |

## TABLE OF CONTENTS
(continued)

**Page**

13.    MISCELLANEOUS:................................................................47

    13.1    Bulk Sales Laws .......................................................48
    13.2    Notices ..................................................................48
    13.3    Assignment............................................................48
    13.4    Entire Agreement ...................................................48
    13.5    Waiver ...................................................................49
    13.6    Severability............................................................49
    13.7    Amendment ...........................................................49
    13.8    Expenses...............................................................49
    13.9    Third Parties .........................................................49
    13.10   Headings ...............................................................49
    13.11   Counterparts..........................................................49
    13.12   Governing Law .......................................................49
    13.13   Public Announcements............................................49
    13.14   Sales or Transfer Taxes .........................................50
    13.15   Venue and Retention of Jurisdiction.........................50
    13.16   Risk of Loss...........................................................50
    13.17   Enforcement of Agreement .....................................50
    13.18   Dispute Resolution .................................................50
    13.19   No Right of Setoff...................................................50
    13.20   Limitation on Damages............................................50

## LIST OF SCHEDULES

| Schedule Designation | Schedule Description |
| --- | --- |
| A | Seller's Knowledge |
| B | Reference Balance Sheet |
| 1.1.2.A | Third Party Bailed Assets |
| 1.1.2.D | Excluded Contracts |
| 1.1.2.G | Privileged Information and Materials |
| 1.1.2.J | Other Excluded Assets |
| 1.2.1 | Certain Licensed Intellectual Property |
| 2.1.1 | Transferred Contracts |
| 2.1.3 | Certain Assumed Liabilities |
| 4.2 | Allocation of Purchase Price |
| 5.1.1 | Organization and Good Standing |
| 5.1.3 | No Violations |
| 5.1.4 | Sufficiency of Acquired Assets |
| 5.1.5.A | Title to Personal Property |
| 5.1.5.C | Other Inventory Locations |
| 5.1.5.D | Machinery, Equipment and Capitalized Tools (Value Greater than $5,000 USD) |
| 5.1.6 | Litigation |
| 5.1.7.A.1 | Owned Intellectual Property |
| 5.1.7.A.2 | Licensed Intellectual Property |
| 5.1.7.A.3 | Software |
| 5.1.7.B | Intellectual Property Litigation Claims |
| 5.1.7.C | Rights Granted to Third Parties |
| 5.1.7.D | Free and Clear Owned Intellectual Property |
| 5.1.7.E | Excluded License |
| 5.1.8 | Insurance |
| 5.1.9 | Permits |
| 5.1.11 | Third Party Consents |
| 5.1.12(i) | December 31, 2003, 2004 and 2005 Unaudited Balance Sheets and Income Statements for the Business |
| 5.1.12(ii) | Unaudited Balance Sheet and Income Statement for Four Months Ended April 30, 2006. |
| 5.1.13 | Absence of Certain Changes |
| 5.1.14.A | Listed Contracts |
| 5.1.14.B | Listed Contracts – Exceptions |
| 5.1.15.A | Tax Returns |
| 5.1.15.D | Tax Matters |
| 5.1.16.A | Business Employees |
| 5.1.16.B | Funding |
| 6.2.5 | Third Party Approvals |
| 7.2.1 | Assignment of Lease |
| 7.2.2.A | Assignment of Patent Rights |
| 7.2.2.B | Assignment of Trademark Rights |
| 7.2.3 | Assignment and Assumption Agreement |
| 7.2.4 | Escrow Agreement |

7.2.5          Bill of Sale
7.2.6          License from Delphi Technologies, Inc. to WIRELESS MATRIX of Vehicle
               Bus Adapter firmware and Power Moding Profile software

<u>**AMENDED AND RESTATED ASSET SALE AND PURCHASE AGREEMENT**</u>

**THIS AMENDED AND RESTATED ASSET SALE AND PURCHASE AGREEMENT** (this "**Agreement**") dated as of **July 20, 2006,** by and between **WIRELESS MATRIX USA, INC.**, a Delaware corporation ("**WIRELESS MATRIX**") and **MOBILEARIA, INC.**, a Delaware corporation ("**MobileAria**" or "**Seller**").

**R E C I T A L S:**

**WHEREAS**, MobileAria is engaged in the Business (as hereinafter defined).

**WHEREAS**, Delphi Automotive Systems LLC, a Delaware limited liability company ("**Delphi**") owns approximately 71% of MobileAria's issued and outstanding capital stock.

**WHEREAS**, on October 8, 2005, Delphi and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of Title 11, U.S.C. §§101 et seq. (as amended) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**WHEREAS**, on October 14, 2005 (the "**Petition Date**"), MobileAria filed a voluntary petition for relief under the Bankruptcy Code in the Bankruptcy Court.  As of the Petition Date, the MobileAria bankruptcy case has been consolidated with the Delphi bankruptcy cases (collectively, MobileAria's bankruptcy case and the Delphi bankruptcy cases are referred to as the "**Bankruptcy Cases**").

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 363 and 365 of the Bankruptcy Code, MobileAria desires to sell to WIRELESS MATRIX all right, title and interest of MobileAria in and to the Acquired Assets (as hereinafter defined), and Purchaser (as hereinafter defined) desires to make such purchase, subject to Purchaser's assumption of the Assumed Liabilities and the conditions set forth in this Agreement.

**WHEREAS**, MobileAria and Wireless Matrix entered into that certain Asset Sale and Purchase Agreement dated June 6, 2006 (the "**Stalking Horse Agreement**") and now desire to amend and restate the Stalking Horse Agreement to reflect the results of the Auction (as hereinafter defined).

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

<u>**DEFINITIONS**</u>

The following terms, as used in this Agreement, shall have the following meanings whether used in the singular or plural (other terms are defined in Sections or Schedules to which they pertain):

"**Accounts Receivable**" means all trade accounts receivable and other rights to payment from customers and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of

1

Products delivered to customers, all other accounts or notes receivable and the full benefit of all security for such accounts or notes and any claim, remedy or other right related to any of the foregoing.

"**Acquired Assets**" means the assets referred to in Section 1.1.1.

"**Administrative Assets**" means books, records and other administrative assets used in or necessary for continuing the operations of MobileAria including but not limited to advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records, and sale order files; provided, however that Administrative Assets do not include Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity.  For purposes of this definition, control means ownership of more than fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.

"**Agreement**" means this Asset Sale and Purchase Agreement, including its Schedules.

"**Allocation**" means allocation of the Purchase Price, as described in Section 4.2.

"**Alternate Bid(s)**" shall have the meaning set forth in Section 11.11.

"**Alternate Bidder(s)**" shall have the meaning set forth in Section 11.11.

"**Alternative Transaction**" shall have the meaning set forth in Section 9.3.1.

"**Ancillary Agreements**" means the agreements referred to in Section 7.2.

"**Assumed Contracts**" means those Transferred Contracts entered into by Seller before the Petition Date.

"**Assumed Liabilities**" means the obligations assumed by Purchaser pursuant to Article 2, but only to the extent that an obligation: (a) arises on or after the Closing; and (b) with respect to obligations arising under Transferred Contracts: (i) does not arise from or relate to any breach by the Seller of any provision of any of the Transferred Contracts; (ii) does not arise from or relate to any event, circumstance or condition occurring or existing on or prior to the Closing that, with or without notice or lapse of time, would constitute or result in a breach of any of the Transferred Contracts; and (iii) is ascertainable by reference to the express terms of the Transferred Contracts.

"**Auction**" shall have the meaning set forth in Section 11.9.

"**Bankruptcy Cases**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Code**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Court**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Bid Deadline**" shall have the meaning set forth in Section 11.4.

"**Bidding Procedures**" means the bidding procedures set forth in Section 11.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures.

"**Bidding Process**" shall have the meaning set forth in Section 11.1.

"**Break-Up Fee**" shall have the meaning set forth in Section 9.3.1.

"**Business**" means providing location-based, data communication, productivity, and security services, as well as designing, marketing, and making available vehicle installed hardware units in the business-to-business market for remote and mobile platforms such as trucks, trailers, and service vehicles.  For avoidance of doubt, the Business does not include services or hardware for entertainment media distribution or playback or any services or hardware for the consumer or automotive markets.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York are authorized or obligated by law or executive order to close.

"**Business Employees**" shall have the meaning set forth in Section 3.1.

"**Claims**" mean losses, liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Closing**" shall have the meaning set forth in Section 7.1.

"**Closing Date**" means the date of Closing.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Cases.

"**Competing HW**" shall have the meaning set forth in Section 8.5.1.A.

"**Competitive Business**" shall have the meaning set forth in Section 8.5.1.A.

"**Contracts**" mean all written or material oral purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases (for real property, personal property or otherwise), product warranty or service agreements and other commitments, agreements and undertakings of any nature, including quotations and bids outstanding on the Closing Date.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein, provided by international treaties or conventions; (ii) moral rights (including, without limitation, rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications for registration thereof; (v) copies,

3

files and tangible embodiments of all of the foregoing, in whatever form or medium; (vi) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (vii) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchaser of the Assumed Contracts under the Sale Approval Order that are Transferred Contracts.

"**Defending Party**" shall have the meaning set forth in Section 13.18.

"**Delphi**" shall have the meaning set forth in the Recitals.

"**Demanding Party**" shall have the meaning set forth in Section 13.18.

"**Deposit Amount**" shall have the meaning set forth in Section 4.1.1.

"**Disclosure Schedule**" means, collectively, the Schedules to Seller's Representations and Warranties contained in Section 5.1.

"**Escrow Agent**" means the escrow agent under the Escrow Agreement.

"**Escrow Agreement**" shall have the meaning set forth in Section 4.1.2.

"**Escrow Amount**" shall have the meaning set forth in Section 4.1.2.

"**Escrow Period**" shall have the meaning set forth in Section 4.1.2.

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.1.2.

"**Excluded Contracts**" shall have the meaning set forth in Section 1.1.2.D.

"**Excluded License**" shall have the meaning set forth in Section 5.1.7.E.

"**Expense Reimbursement**" shall have the meaning set forth in Section 9.3.2.

"**Expiration Date**" shall have the meaning set forth in Section 5.3.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending or (ii) if an appeal, writ of certiorari, re-argument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or re-argument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

"**Financial Statements**" shall have the meaning set forth in Section 5.1.12.

"**GAAP**" means United States generally accepted accounting principles as in effect from time to time consistently applied.

"**Good Faith Deposit**" shall have the meaning set forth in Section 11.6.3.

"**Governmental Entity**" means any United States federal, state or local, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality or body having governmental authority with respect to the transactions contemplated hereby, under applicable law.

"**Including**" means, whether or not initially capitalized, including without limitation.

"**Indemnification Claim**" shall have the meaning set forth in Section 12.4.

"**Intellectual Property**" means the Patent Rights, Trademark Rights, Copyrights, Software, Technical Documentation, Trade Secrets, Know-How and registered domain names and IP addresses.

"**Inventory**" means finished goods, raw materials, work-in-process, packaging, stores, stock, supplies, and other inventory, wherever located.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Know-How**" means proprietary technical and business knowledge and information, including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

"**Licensed Intellectual Property**" means Seller's rights with respect to all Intellectual Property licensed or sublicensed to Seller from an affiliated or unaffiliated third party.

"**Lien**" means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

"**Listed Contracts**" means the Seller's contracts and commitments listed on Schedule 5.1.14.A.

"**Marked Agreement**" shall have the meaning set forth in Section 11.6.2.

"**Material Adverse Effect**" means any change or event that has a material adverse effect on the business, assets, properties, financial condition or results of operations of the Business taken as a whole, except any change or event resulting from, relating to or arising out

of: (a) any act or omission of a Seller taken with the prior written consent of the Purchaser; (b) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement; (c) general business or economic conditions; (d) conditions affecting the industry and markets in which the Business generally operates; (e) increases in energy, electricity, natural gas, raw materials or other operating costs; (f) changes resulting from the filing of the Bankruptcy Cases or from any action required by the Bankruptcy Court; (g) national or international political or social conditions, including the engagement by the United States in hostilities, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon such country, or any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment or personnel of any of such countries; (h) acts of God; (i) financial, banking or securities markets (including any disruption thereof and any decline in the price of any security or any market index); (j) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction; (k) changes in any Law; (l) any existing event, occurrence or circumstance listed in the Disclosure Schedule as of the date hereof; (m) any adverse change in or effect on the Business that is entirely cured by Seller before the earlier of: (1) the Closing Date; and (2) the date on which this Agreement is terminated pursuant to Section 9.1 hereof; or (n) the regulatory status of the Purchaser.

"**MobileAria**" means MobileAria, Inc., a Delaware corporation.

"**Notice**" shall have the meaning set forth in Section 13.18.

"**OFAC**" shall have the meaning set forth in Section 5.2.10.

"**Ordinary Course of Business**" means, with respect to the Business, the ordinary course of business consistent with custom and practice of the Business from and after the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases.

"**Organizational Documents**" means: (a) the articles of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) the articles or certificate of organization and the operating agreement or other document intended to govern the structure and/or internal affairs of a limited liability company; (e) any charter, agreement, indenture, or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (f) any amendment to the foregoing.

"**Owned Intellectual Property**" means all Intellectual Property in and to which Seller holds, or has a right to hold, in whole or in part, right, title and interest.

"**Party**" or "**Parties**" means Purchaser and/or Seller.

"**Patent Rights**" means: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including, without limitation, any patent disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents, and patent applications (including all provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by

international treaties or conventions, and all patentable improvements to the inventions disclosed in each such registration, patent or application; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to Seller and that are currently used exclusively for the purpose of carrying on the Business or that relate exclusively to the Acquired Assets.

"**Permitted Lien**" means Liens of Seller's pre-Petition Date secured lenders and post-Petition Date secured lenders which Liens will be released on or prior to the Closing of the Sale.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other IT assets other than Intellectual Property, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Seller's premises, at the place of business of a vendor or elsewhere.

"**Petition Date**" shall mean October 14, 2005.

"**Post-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Post-Petition Contracts**" means the Contracts of MobileAria relating to the Business entered into in the Ordinary Course of Business or approved by the Bankruptcy Court, in either case on or after the Petition Date.

"**Potential Bidder**" shall have the meaning set forth in Section 11.3.

"**Pre-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Premises**" means the suite of offices leased by Seller for the Business at 800  West El Camino Real, Suite 240, Mountain View, California  94040.

"**Purchase Price**" means the payment referred to in Section 4.1.

"**Products**" means location-based, data communication, productivity, and security services for remote and mobile platforms in the commercial business-to-business market, including trucks, trailers, and service vehicles.  Products include back end server software, client software, and vehicle installed hardware units.  For avoidance of doubt, Products do not include services or hardware for entertainment media distribution or playback or any services or hardware for the consumer or automotive markets.

"**Purchased Intellectual Property**" means all Owned Intellectual Property and Licensed Intellectual Property.

"**Purchaser**" means **WIRELESS MATRIX USA, INC.**

"**Purchaser Damages**" shall have the meaning set forth in Section 12.1.

"**Qualified Bid**" shall have the meaning set forth in Section 11.7.7.

"**Qualified Bidder**" shall have the meaning set forth in Section 11.3.3.

"**Reference Balance Sheet**" means the balance sheet of the Business attached as Schedule B.

"**Required Bid Documents**" shall have the meaning set forth in Section 11.6.

"**Retained Liabilities**" shall have the meaning set forth in Section 2.3.

"**Retention Bonus**" shall have the meaning set forth in Section 3.1.4.

"**Return Date**" shall have the meaning set forth in Section 11.12.

"**Sale**" means the sale of the Business in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court approving the Sale issued pursuant to Sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Purchaser, authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets and Assumed Liabilities to the Purchaser in accordance with the terms and conditions of this Agreement, free and clear of all Liens other than, Permitted Liens and Liens encompassed within Assumed Liabilities assumed by Purchaser pursuant to Article 2, if any.

"**Sale Hearing**" shall have the meaning set forth in Section 11.10.

"**Sale Motion**" shall have the meaning set forth in Section 11.11.

"**SDN List**" shall have the meaning set forth in Section 5.2.10.

"**Seller**" means MobileAria, Inc, a Delaware corporation.

"**Seller Damages**" shall have the meaning set forth in Section 12.3.1.

"**Seller's Knowledge**" or "**Knowledge of Seller**" means the actual knowledge after reasonable investigation of the individuals listed on Schedule A, in each of their respective functional areas without imputation of the knowledge of any other Person.

"**Software**" means computer software and programs, including, without limitation, source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**Stalking Horse Agreement**" shall have the meaning set forth in the recitals.

"**Straddle Period**" means any taxable period that begins on or prior to the Closing Date and ends after the Closing Date.

8

"**Subsequent Bid**" shall have the meaning set forth in Section 11.7.7.

"**Successful Bid(s)**" shall have the meaning set forth in Section 11.9.6.

"**Successful Bidder(s)**" shall have the meaning set forth in Section 11.9.6.

"**Tax Return**" means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any Schedule or attachment thereto.

"**Tax(es)**" means any tax or similar governmental charge, impost or levy whatsoever (including, without limitation, income, franchise, transfer taxes, use, gross receipts, value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty, minimum or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

"**Technical Documentation**" means all documented technical information currently in the files of the Business primarily used in the Business owned by Seller, in each case pertaining to the design or manufacture of the Products of the Business.

"**Termination Date**" shall have the meaning set forth in Section 9.1.1.E.

"**Third Party Bailed Assets**" shall have the meaning set forth in Section 1.1.2.A.

"**Third-Party Requirements**" shall have the meaning set forth in Section 5.1.3.

"**Trade Secrets**" means: (i) all forms and types financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); (ii) all copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (iii) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (iv) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" means: (i) trademarks, trade names and service marks; (ii) the good will associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

9

"**Transferred Contracts**" means the Contracts of Seller to be assigned to Purchaser at Closing as described in Section 2.1.1.

"**Transferred Employees**" shall have the meaning set forth in Section 3.1.3.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**USA PATRIOT Act**" shall have the meaning set forth in Section 5.2.10.

"**Verizon Contract**" shall have the meaning set forth in Section 1.1.5.A.

"**Verizon Open Accounts Receivable**" means all Accounts Receivable from Verizon Services Corp. for subscriber services to be performed after the Closing Date.  All Accounts Receivable from Verizon Services Corp. for hardware and hardware installations is an Excluded Asset.

"**Warranties**" refers to the representations and warranties provided by Seller to Purchaser, or by Purchaser to Seller, as the case may be, in each case as referred to in Article 5 of this Agreement.

1.      **CONVEYANCE OF THE ACQUIRED ASSETS:**

        1.1     **Acquired Assets Transaction.**  Upon the terms and subject to the conditions set forth in this Agreement at Closing Seller shall sell, transfer, assign, convey and deliver to the Purchaser, and Purchaser shall purchase, accept and acquire from the Seller, free and clear of all Liens except: (i) Permitted Liens; and (ii) Liens included in the Assumed Liabilities assumed by Purchaser pursuant to Article 2, if any, all of the assets and properties described in Section 1.1.1 below (collectively, the "**Acquired Assets**"), subject in each case to Section 1.1.2.

                1.1.1   **Acquired Assets.**  The Acquired Assets consist of all of Seller's right, title and interest in and to the rights and assets primarily used in, primarily arising from, primarily relating to, or necessary for the conduct of the Business (other than the Excluded Assets), including, without limitation: all Verizon Open Accounts Receivable (including any cash or cash equivalents received with respect to Verizon Open Accounts Receivable prior to the Closing Date), Personal Property, Permits, Inventory, rights under Transferred Contracts (including Seller's rights against third party manufacturers to the extent any liability is assumed by Purchaser pursuant to Section 2.1), Administrative Assets and Purchased Intellectual Property (including Trademark Rights including Trademark Rights in MobileAria and all Product names, but not including Delphi and related names), in each case if such assets are primarily used in, primarily arising from, primarily relating to, or necessary for the conduct of the Business, including all of Seller's rights in: (i) tangible Personal Property located at the Premises; and (ii) all Personal Property owned by or leased to the Seller in connection with the Business located at any outsource partner's location, including Qwest Communication; and (iii) all prepaid Inventory held by any Affiliate of Seller primarily for use in the Business, provided that such Affiliate has been paid in full or been assigned the corresponding receivable by Seller.

                1.1.2   **Excluded Assets.**  Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets shall not be included in the Acquired Assets:

**A.** **Bailed Assets.** Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by any other third party listed in Schedule 1.1.2.A ("**Third Party Bailed Assets**").

**B.** **Personnel and Medical Records.** All work histories, personnel and medical records of employees and former employees of Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws: Purchaser will be provided the originals of all personnel and medical records of employees of Seller who have accepted employment with Purchaser in connection with the sale hereunder, with the prior written consent of such employee or after posted written notice or other appropriate notice to such employees if legally required. If an employee objects to provision of personnel or medical records to Purchaser, the records will not be provided.

**C.** **Certain Financial Assets.** Cash, cash equivalents, bank accounts and all accounts receivable (other than Verizon Open Accounts Receivable or cash or cash equivalents received in respect thereof).

**D.** **Certain Contracts.** All Contracts of Seller that are not Transferred Contracts, including Contracts set forth on Schedule 1.1.2.D ("**Excluded Contracts**").

**E.** **Tax Refunds.** Any refund of Taxes paid, or claim for refund of Taxes paid, of any kind relating to the Acquired Assets for any period prior to the Closing Date.

**F.** **Privileged Information and Materials.** Information and materials protected by the attorney-client privilege or that, in the case of environmental-related documents, Seller considers to be proprietary information; and the lack of which excluded information and materials are not material to the operation of the Business, and provided that such materials are listed on Schedule 1.1.2.F hereto.

**G.** **Insurance.** The benefit of any of Seller's or Seller's Affiliates' insurance policies relating to the operation of the Business (including any right to proceeds thereunder).

**H.** **Certain Rights.** All of the rights and claims of the Seller available to Seller under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

**I.** **Other Excluded Assets.** All computer hardware, equipment, or other assets listed on Schedule 1.1.2.I.

**1.1.3** **Post-Closing Asset Deliveries.** Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other similar materials constituting Acquired Assets are still in the possession of Seller, Seller shall promptly deliver them to Purchaser at no cost to Purchaser. Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials constituting

Excluded Assets were delivered to Purchaser, Purchaser shall promptly return them to Seller at no cost to Seller other than reimbursing Purchaser's reasonable out-of-pocket costs.

### 1.1.4    **Prorations:**

      **A.**    To the extent that Seller has made any payment relating to the Business prior to the Closing Date with respect to any item listed in Subparagraph B below relating to periods on or following the Closing Date, Purchaser shall reimburse Seller on a per diem basis; and

      **B.**    To the extent Purchaser makes any payment relating to the Business following the Closing Date with respect to any item listed below relating to periods prior to the Closing Date, Seller shall reimburse Purchaser on a per diem basis, in each case for the following:

      (i)    Rent for the Premises and copier leases and other pre-paid amounts under Transferred Contracts (such other pre-paids to be mutually agreed by the parties before Closing);

      (ii)    Personal, real property and other ad valorem Taxes, allocated in accordance with local custom;

      (iii)    Water, wastewater treatment, sewer charges and other similar types of charges with respect to the Business; and

      (iv)    Electric, fuel, gas, telephone and internet services and other utility charges.

      **C.**    **Verizon.**  If Seller receives payments from Verizon Services Corp. pursuant to the Verizon Contract that are for installations and subscriber services to be performed by Purchaser following the Closing Date, Seller shall transfer such payments to Purchaser.  If Purchaser receives payments from Verizon Services Corp. pursuant to the Verizon Contract attributable to installations and subscriber services previously performed by Seller relating to periods on or before the Closing Date, Purchaser shall transfer to Seller such funds allocable to each such installation performed by Seller and all such subscriber services rendered by Seller.

      **D.**    **Further Assurance.**  The parties will use commercially reasonable efforts to determine the amounts of the above prorations and settle such amounts at Closing.  To the extent that, within sixty (60) days after Closing, Seller, on the one hand, or Purchaser, on the other hand, receives any bill or other invoice for any of the items listed in this Section 1.1.4 or similar items, relating to both pre-Closing and post-Closing periods, the Seller or Purchaser shall, as soon as practicable but no later than ninety (90) days after Closing, send any such bill or invoice to the other Party.  If necessary to avoid incurring interest, penalties and/or late charges, Purchaser may pay all amounts shown to be due thereon, and may invoice Seller for all amounts owed by Seller thereunder, and in such case Seller shall reimburse such amounts.

      Any payments due under this Section 1.1.4 that have not been settled at Closing shall be made within forty-five (45) days after the end of the month in which a bill or invoice is sent to a Party (or Affiliate thereof); provided, however, that the disputed portion of any

such item shall be paid within forty-five (45) days after the final determination thereof on an item-by-item basis.  When Purchaser makes a payment to a third party which is required to be reimbursed to Purchaser by Seller, the reimbursement payment shall be considered the repayment of an advance.

### 1.1.5   Non-Assignable Permits and Contracts:

**A.**    **Non-Assignability.**    After giving effect to the Sale Approval Order, to the extent that any Permit included in the Acquired Assets or any Transferred Contract other than that Agreement No. C0505851 by and between the Seller and Verizon Services Corp. (the "**Verizon Contract**") is not capable of being assigned to Purchaser at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, until any such consent or waiver is obtained.

**B.**    **Efforts to Obtain Consents and Waivers.**    At Purchaser's request, Seller shall, at its expense, use commercially reasonable efforts, and Purchaser shall, at Seller's expense, cooperate with Seller, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.1.5.A after the Closing.

**C.**    **If Waivers or Consents Cannot be Obtained.**    To the extent that the consents and waivers referred to in Section 1.1.5.A are not obtained by Seller, or until the impracticalities of assignment referred to therein are resolved, Seller's sole responsibility with respect to such matters, notwithstanding Section 1.1, shall be to use, during the one hundred eighty (180) day period commencing with the Closing, all commercially reasonable efforts, at no cost to Purchaser (other than pursuant to Section 1.1.5.D below), to: (i) provide to Purchaser the benefits of any such Permit or Transferred Contract, all as referred to in Section 1.1.5.A, included in the Acquired Assets; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Purchaser, without incurring any financial obligation to Purchaser; and (iii) at the request and direction of Purchaser, enforce for the account of Purchaser and at the cost of Purchaser any rights of Seller arising from the Permits included in the Acquired Assets or Transferred Contracts referred to in Section 1.1.5.A against such issuer thereof or other party or parties thereto.

**D.**    **Obligation of Purchaser to Perform.**    To the extent that Purchaser is provided the benefits pursuant to Section 1.1.5.C of any Permit included in the Acquired Assets or Transferred Contracts, Purchaser shall perform, on behalf of Seller, for the benefit of the issuer thereof or the other party or parties thereto the obligations of Seller thereunder or in connection therewith and if Purchaser shall fail to perform to the extent required herein, Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.1.5.C in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or, at Purchaser's request, Seller may perform at Purchaser's sole reasonable cost and expense, in which case Purchaser shall reimburse Seller's reasonable costs of such performance immediately upon receipt of an invoice.

## 2.    ASSUMPTION OF LIABILITIES:

**2.1**    **Assumed Liabilities.**    At and as of the Closing, Purchaser shall assume and agree to pay, perform and discharge when due, and shall be liable with respect to, all

obligations, liabilities and responsibilities specifically referred to in this Section 2.1 ("**Assumed Liabilities**"), other than the Retained Liabilities, as follows:

**2.1.1**   The obligations of Seller to be performed under the Contracts listed on Schedule 2.1.1 **(**the "**Transferred Contracts**") and the obligations of Seller to be performed under licenses and Permits included in the Acquired Assets that are assigned or otherwise transferred to Purchaser pursuant to this Agreement and listed on Schedule 2.1.1.

**2.1.2**   Obligations described in Article 3 of this Agreement with respect to Transferred Employees.

**2.1.3**   The obligation to pay for assets, goods or services ordered by Seller on or prior to the Closing and that are received by the Purchaser after Closing, provided that: (i) no single purchase or related group of purchases shall exceed $5,000 unless tied directly to a commitment purchase order from a customer and set forth on Schedule 2.1.3; and (ii) miscellaneous lesser amounts in the ordinary course of business consistent with amounts disclosed to Purchaser as "Expenses" in the income statements provided to Purchaser as part of the Financial Statements (other than Bank Service Charges).

**2.1.4**   Liabilities and obligations arising out of, resulting from, or relating to sales pursuant to Transferred Contracts of products or services by the Business, including all Product warranty, Product returns, Product liability (other than design defects) and Product recall liability related thereto.

**2.1.5**   All deferred revenue obligations arising under the Verizon Contract including all obligations to fulfill orders relating to products of the Business outstanding on the Closing Date set forth on Schedule 2.1.

**2.2**   **No Expansion of Third Party Rights.**   The assumption by Purchaser of the Assumed Liabilities shall in no way expand the rights or remedies of any third party against Purchaser or Seller as compared to the rights and remedies which such third party would have had against Seller absent the Bankruptcy Cases, had Purchaser not assumed such Assumed Liabilities. Without limiting the generality of the preceding sentence, the assumption by Purchaser of the Assumed Liabilities shall not create any third-party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

**2.3**   **Retained Liabilities.**   Notwithstanding anything in this Agreement to the contrary, Purchaser shall not assume or be deemed to have assumed, and shall have no liability or obligation with respect thereto, any other liabilities of the Company (collectively, "**Retained Liabilities**") including without limitation the following: (i) liabilities in respect of employment or services performed on or prior to the Closing; (ii) product liability claims to the extent based on a defective design for Products designed by Seller and sold prior to the Closing Date except as expressly set forth in Section 2.1.4; (iii) existing litigation for which a claim has been made to or threatened in writing against Seller on or before the Closing Date; (iv) all Tax liabilities of Seller for all periods (but excluding any Tax liabilities allocated to Purchaser pursuant to Section 10.3 of this Agreement); (v) any liability or obligation of Seller for administrative fees and expenses, including, without limitation, "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code; (vi) any liability or obligation of Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement; (vii) all Debt owed by  Seller to any party; (viii)  all Claims, except for Assumed Liabilities; (ix) all liabilities to employees of Seller

who are not Transferred Employees as defined in Section 3.1.3 or (x) any liability or obligation not expressly assumed pursuant to Section 2.1 hereof.

3.    **ACQUIRED ASSETS - PERSONNEL MATTERS – TRANSFERRED EMPLOYEES:**

**3.1    Business Employees.**  Listed on Schedule 5.1.16.A are all employees and consultants of Seller that perform services exclusively or primarily for the Business (each employee required to be so listed a "Business Employee"). With respect to each such employee and consultant (as limited in definition for purposes of this Article 3 only) included thereon, Schedule 5.1.16.A lists: (i) each such person's title or job/position; (ii) each such person's job designation (i.e., salaried or contract); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., authorized leave or absence, etc.)); (v) each such person's annual base rate of compensation; (vi) any additional compensation otherwise payable to such person or for which such person is expressly eligible; and, if applicable; (vii) any consideration, payment, or benefit to which such person may be entitled upon termination of services to the Seller or Purchaser; and (viii) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, golden parachute, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws).

**3.1.1**   Not later than July 27, 2006, Purchaser will offer employment to substantially all Business Employees (other than as set forth on Schedule 5.1.16.A) with such new employment to commence (if accepted) with effect from the Closing and will confirm the list of such employees to Seller promptly thereafter.

**3.1.2**   Not later than two (2) business days after the date hereof, Seller will provide Purchaser with an updated Schedule 5.1.16.A, such updated schedule to include certain key employees as indicated on the initial schedule.

**3.1.3**   Purchaser's offer of employment to substantially all persons identified on Schedule 5.1.16.A, will be on Purchaser's standard terms and conditions as applied to similarly situated employees; provided, however, that Purchaser shall give each such employee credit for time previously employed by Seller for all purposes within Purchaser's direct control. Any Business Employee that accepts and commences employment with Purchaser pursuant to a written offer letter with Purchaser shall be referred to herein as a "Transferred Employee".

**3.1.4    Retention Bonus.**  Purchaser shall allocate an aggregate of $500,000 among certain of the Transferred Employees (the "**Retention Bonus**").  The method of allocation of the Retention Bonus among the Transferred Employees shall be as Purchaser may determine in its sole discretion.  On the Purchaser's first regular payroll date following the six (6) month anniversary of the Closing, Purchaser shall commence payment of the Retention Bonus in such amounts as determined by Purchaser to such Transferred Employees (subject to applicable deductions and withholding).

**3.2    Cooperation.**  Seller and Purchaser will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Article 3.

**3.3    No Third Party Rights.**  No provision of this Agreement confers rights or remedies upon any person, including Transferred Employees, other than the parties to this Agreement and Delphi.

15

**4.     PURCHASE PRICE:Purchase Price; Deposit Amount.**  Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets shall be the amount of: (i) Eleven Million Two Hundred Thousand Dollars (US $11,200,000.00); plus (ii) assumption of the Assumed Liabilities; and less (iii) the Break-Up Fee. The final aggregate purchase price, as so determined, is referred to herein as the "**Purchase Price**".

      **4.1.1    Deposit Amount.**  Upon execution of the Stalking Horse Agreement, Purchaser delivered to the Escrow Agent pursuant to the terms of the Escrow Agreement $500,000 in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account reasonably acceptable to Purchaser to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures:

      **A.     Deposit Instructions.**  On the Closing Date, Seller and Purchaser shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Seller in the Escrow Agreement (and such amount shall be applied towards the payment of the Purchase Price);

      **B.     Termination of Agreement.**  Upon any failure by Purchaser to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Section 7.1 hereof, the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Seller in the Escrow Agreement, to be retained by Seller. Any such payment shall constitute Seller's sole recourse in connection with such failure to consummate the transactions contemplated hereby; and

      **C.     Other Reason.**  Upon termination of this Agreement for any other reason, or upon the failure by Seller to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Section 7.1 hereof, Seller and Purchaser shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Purchaser in the Escrow Agreement, to be retained by Purchaser.

      **D.     Temporary Escrow.**  Seller and Purchaser acknowledge that in order to execute this Agreement more expeditiously, Purchaser delivered to DLA Piper Rudnick Gray Cary US LLP, 2000 University Avenue, East Palo Alto, California 94303 ("**DLA**") the Deposit Amount within one (1) business day following the execution of the Stalking Horse Agreement (such deposit to be temporarily in lieu of the provisions set forth above). Promptly following the execution of an Escrow Agreement substantially in the form attached hereto as Schedule 7.2.4 by each of the parties thereto, the Purchaser directed DLA to deliver the Deposit Amount to the Escrow Agent as set forth in Section 4.1.1 above as if such funds had been delivered by the Purchaser to the Escrow Agent as set forth therein.  Such funds remained the property and under the control of Purchaser until such time as Purchaser directs DLA pursuant to the preceding sentence, at which time the other provisions of this Section 4.1.1 shall control.

      **4.1.2    Delivery of Purchase Price.**  At Closing, Purchaser shall pay to Seller an aggregate amount equal to the Purchase Price less the Deposit Amount (apportioned pursuant to the allocation referred to in Section 4.2) and less $575,000 by wire transfer in U.S. Dollars in immediately available funds to the account of the appropriate Seller, pursuant to this Agreement and a notice delivered by Seller to Purchaser prior to Closing.  At Closing, Purchaser shall pay

to JPMorgan Chase Bank, NA as "**Escrow Agent**" hereunder $575,000 of the Purchase Price (which when added to the Deposit Amount (total is $1,075,000) is hereinafter referred to as the "**Escrow Amount**") to be held by the Escrow Agent as collateral to secure the rights of the Purchaser under Article 12 hereof.  The Escrow Amount shall be held pursuant to the provisions of an escrow agreement substantially in the form of Schedule 7.2.4 (the "**Escrow Agreement**"). The Escrow Amount will be held by the Escrow Agent from the Closing Date until the one (1) year anniversary of the Closing Date (the "**Escrow Period**"); provided, however, that in the event Purchaser has made a claim under Article 12 prior to the end of the Escrow Period, then the Escrow Period shall continue (and the Escrow Agent will continue to hold in escrow that portion of the Escrow Amount which is equal to the amount which is necessary to satisfy such indemnity claim) until such claim is fully and finally resolved.  The costs and expenses of the Escrow Agent will be paid from and borne solely by the Escrow Amount. Notwithstanding the foregoing, the Parties acknowledge that $100,000 of the Escrow Amount is provided to satisfy certain requirements of paragraph 43(f) of the Sale Approval Order, and the Parties agree to execute an additional Escrow Agreement prior to the Closing consistent with such paragraph (the "**Additional Escrow Agreement**").  Notwithstanding anything to the contrary contained in this Agreement, as soon as reasonably practicable after all claims arising under paragraph 43(f) of the Sale Approval Order are resolved by the parties hereto or by order of the Bankruptcy Court, any remaining amounts held by the Escrow Agent under the Additional Escrow Agreement shall be disbursed to Seller.

**4.2**    **Allocation of Purchase Price.**  The Parties agree to allocate the Purchase Price among the Business and the agreements provided herein for transfer of the Business to Purchaser, for all purposes (including financial, accounting and tax) (the "**Allocation**") in a manner consistent with the Allocation Schedule set forth in Schedule 4.2 to be mutually agreed upon by Purchaser and Seller in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, based on the fair market value of the Acquired Assets.  Purchaser shall provide to Seller a draft Allocation within fifteen (15) days following the Closing Date.  This Allocation shall become final and binding on the parties, unless Seller notifies Purchaser within fifteen (15) days after receipt of such Allocation of Seller's disagreement with such Allocation. In the event Seller timely notifies Purchaser of such disagreement, the parties shall resolve such disagreement in the manner described in Section 13.18 of this Agreement.  Purchaser and Seller shall each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law.  Seller shall provide Purchaser and Purchaser shall provide Seller with a copy of any information required to be furnished to the Secretary of the Treasury under Internal Revenue Code Section 1060.

**4.3**    **Other Adjustments.**

**4.3.1**    Purchaser agrees to buy from Delphi certain inventory up to 6,228 "VTCUs", as defined in the Verizon Contract, which Delphi, in turn, shall have purchased from Prolificx (the "Prolificx Inventory") if, and only to the extent that such Prolificx Inventory meets, in all respects, Purchaser's requirements to fulfill customer purchase orders under the Verizon Contract and the BP Agreement (collectively, "Customer Purchase Orders").  In the event that such Prolificx Inventory does not meet Purchaser's requirements to fulfill Customer Purchase Orders for VTCUs, then Delphi should have a right of first refusal to sell to Purchaser modified

17

VTCUs that meet Purchaser's requirements (the "Modified VTCUs") if and only if Delphi can deliver such Modified VTCUs to Purchaser to meet the terms and conditions of Customer Purchase Orders, including the delivery date. Purchaser's obligation to purchase up to 6,228 VTCUs shall be inclusive of any Modified VTCUs purchased.  Purchaser shall promptly notify Delphi of Purchaser's acceptance of a Customer Purchase Order for Modified VTCUs.  Upon receipt of such notice from Purchaser, Delphi shall have five (5) calendar days to provide Purchaser with written confirmation that it can and will provide such Modified VTCUs to Purchaser in accordance with the terms and conditions of the Customer Purchase Order, including the delivery date.  Delphi's right of first refusal shall expire without further notice if Delphi fails to provide the confirmation set forth herein.

      **4.3.2**   Upon reasonable request and after receipt of a Customer Purchase Order, Delphi shall comply with Purchaser's requests to inspect, test and obtain information concerning the Prolificx Inventory and any Modified VTCUs as contemplated by this Section 4.3 and provide such other adequate assurances of Delphi's ability to provide Prolificx Inventory or Modified VTCUs within the time specified within the Customer Purchase Order.  All such requests to inspect, test and/or obtain information concerning the Prolificx Inventory and any Modified VTCUs shall provide sufficient time for Delphi to transfer such Prolificx Inventory or Modified VTCUs to a testing facility as mutually agreed to between the parties.

      **4.3.3**   Provided that Delphi confirms within five (5) calendar days of a request by Purchaser that it will provide Purchaser with Prolificx Inventory or Modified VTCUs in accordance with the terms of Purchaser's Customer Purchase Orders, Purchaser shall purchase all Prolificx Inventory and Modified VTCUs from Delphi as needed prior to purchasing any VTCUs from any other source.

      **4.3.4**   The Prolificx Inventory and any Modified VTCUs shall be purchased by Purchaser at the same VTCU unit price provided for in that certain Amendment No. 1 dated May 10, 2006 to the Prolificx Manufacturing Services and License Agreement between Prolificx New Zealand Ltd. and the Seller dated August 1, 2005 (the "Prolificx Agreement").

      **4.3.5**   Purchaser shall have no obligation to purchase the Prolificx Inventory or the Modified VTCUs (i) if such Prolificx Inventory or Modified VTCUs is not first quality inventory saleable to Customers in the ordinary course of Purchaser's business and/or (ii) if the warranty (of 3 years from the date of delivery to Purchaser) for the Prolificx Inventory or the Modified VTCUs (which shall be no less favorable to Purchaser than the warranty for Prolificx Inventory) is not in full force and effect in all respects or in any other manner diminished.

      **4.3.6**   Regarding Purchaser's acquisition of inventory from Delphi under this section, Purchaser shall have the same rights, including warranty rights, as Seller, Delphi and its affiliates have, as buyers, against Prolificx or otherwise arising under the Prolificx Agreement, including without limitation, transfer of title and invoicing and payment terms.

      **4.3.7**   Delphi shall not (i) sell the Prolificx Inventory to any party other than to Purchaser nor (ii) delegate its obligations under this Section 4.3 without the consent of Purchaser.

      **4.3.8**   Nothing herein shall limit in any respects Purchaser's rights under the law or in equity as against Seller or Delphi with respect to the obligations set forth in this Section 4.3.

**4.3.9**    Subject to all of the other terms and conditions of this Section 4.3 relating to the Prolificx Inventory, Purchaser agrees that it shall purchase from Delphi 2,000 VTCUs, whether or not it has received Customer Purchase Orders for such Prolificx Inventory, within one (1) year from the Closing Date.

**5.    REPRESENTATIONS AND WARRANTIES**

**5.1    Representations and Warranties of Seller.**    All information set forth in the Disclosure Schedules with respect to any clause of this Section 5.1 shall be deemed disclosed under and incorporated into any other clause of this Section 5.1 as to which such disclosure would clearly be appropriate based solely on the language in such disclosure and such other clause.    Seller represents and warrants to Purchaser as follows:

**5.1.1    Organization and Good Standing.**    Except as otherwise set forth on Schedule 5.1.1, Seller is a legal entity duly organized, validly existing and in good standing under the laws of its the state of Delaware, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate its properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property, except where the failure so to qualify or to be so licensed would not have a Material Adverse Effect.

**5.1.2    Corporate Power; Due Authorization.**    Seller has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, subject to Bankruptcy Court approval, to which Seller is a party, and to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated herein and therein.    The execution, delivery and performance of this Agreement and the Ancillary Agreements by the Seller and the consummation of the contemplated transactions have been duly authorized by all necessary action on the part of Seller.    Subject to the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, this Agreement, and the Ancillary Agreements, have been duly and validly executed and delivered by or on behalf of the Seller and (assuming this Agreement constitutes a valid and binding obligation of Purchaser) constitutes a legal, valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3    No Violations.**    No consent, approval, authorization of, declaration, filing or registration with any domestic or foreign government or regulatory authority or any other third party is required to be made or obtained by the Seller in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements (including the assignment of all Transferred Contracts and all Purchased Intellectual Property), except for: (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court that have been made or obtained, or will be made or obtained prior to the Closing; and (ii) consents, approvals, authorizations, declarations, filings and registrations set forth on Schedule 5.1.3, the lack of which would not have a Material Adverse Effect. The items referred to in clauses (i) through (ii) of this Section 5.1.3 are hereinafter referred to as the "**Third-Party Requirements**".

**5.1.4**    **Sufficiency of Acquired Assets**.    The Acquired Assets comprise all of the assets reasonably necessary to carry on the Business in all material respects as it is now being conducted, except as identified on Schedule 5.1.4.

**5.1.5**    Personal Property; Condition of Personal Property:

**A.**    **Title to Personal Property**.    Except for the Personal Property leases and other Personal Property referred to in Schedule 5.1.5.A, Seller has good, valid and marketable title to the Personal Property and Inventory included in the Acquired Assets.   Upon entry by the Bankruptcy Court of the Sale Approval Order, Seller shall transfer the Acquired Assets free and clear of any Lien, except as otherwise expressly indicated on Schedule 5.1.5.A.

**B.**    **Condition of Personal Property**.    To the Seller's Knowledge, the Personal Property included in the Acquired Assets are in such condition (considering age and purpose for which used) as to enable the Business to be conducted as currently conducted without material disruption.

**C.**    **Inventory**.    Except to the extent identified in Schedule 5.1.5.C, the Inventory included in the Acquired Assets will, as of the Closing, be located at Seller's Mountain View, CA site and such other locations as set forth on Schedule 5.1.5.C, be fit for the purpose for which it is ordinarily acquired, and, in the case of finished goods Inventory, merchantable in the Ordinary Course of Business in all material respects.

**D.**    **Machinery, Equipment and Tools**.    Regarding the Acquired Assets, Schedule 5.1.5.D sets forth a list of substantially all machinery, equipment and capitalized tools with an acquisition value greater than $5,000 USD, included in the Acquired Assets and primarily used in or related to the Business.

**5.1.6**    **Litigation**.    Except for the pendency of the Bankruptcy Cases and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or, to Seller's Knowledge, investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to any of the Seller's Knowledge, threatened against or affecting Seller.

**5.1.7**    **Intellectual Property Assets:**

**A.**    Schedule 5.1.7.A.1 sets forth a true and complete list, including a complete identification of each patent, trademark registration, copyright registration, domain name registration, and application therefor included in the Owned Intellectual Property; and Schedule 5.1.7.A.2 sets forth a true and complete list of all Licensed Intellectual Property. Schedule 5.1.7.A.3 sets forth a true and complete list, in all material respects, of all Software used in, arising from, relating to, or necessary for the conduct of the Business.   To Seller's Knowledge there are no impediments to the ability of Seller under applicable Laws to maintain in effect or renew their respective rights, in all material respects, in and to the Owned Intellectual Property. Except as set forth on Schedule 5.1.11, Schedule 5.1.14.B and/or Schedule 6.2.5, to Seller's Knowledge there are no impediments to the ability of Seller under applicable Law to grant to Purchaser by license or assignment the rights to the Licensed Intellectual Property as contemplated in this Agreement.

**B.**    To Seller's Knowledge, Seller is conducting the Business in a manner that does not violate the intellectual property right of another Person and no Claim has

been made by any third party against Seller of Intellectual Property infringement or misappropriation resulting from the operation of the Business, except as set forth in Schedule 5.1.7.B.

**C.**    Seller has not granted any license, sublicense or other permission to use the Owned Intellectual Property included in the Acquired Assets to any third party, except as set forth on Schedule 5.1.7.C.

**D.**    Except as set forth on Schedule 5.1.7.D, all Owned Intellectual Property included in the Acquired Assets: (i) is owned solely and exclusively by Seller; and (ii) upon entry by the Bankruptcy Court of the Sale Approval Order, Seller shall transfer the Owned Intellectual Property free and clear of any encumbrances thereon.

**E.**    Except as set forth on Schedule 5.1.7.E, no Owned Intellectual Property or any Product that contains any is, in whole or in part, governed by an Excluded License.  For purposes of this Agreement, an "**Excluded License**" means any license that requires, as a condition of modification and/or distribution of software subject to the Excluded License, that: (i) such software and/or other software combined and/or distributed with such software be disclosed or distributed in source code form or (ii) such software and/or other software combined and/or distributed with such software and any associated intellectual property be licensed on a royalty free basis (including for the purpose of making additional copies or derivative works).

**F.**    Seller has taken commercially reasonable steps to protect rights in confidential information (both of the Seller and that of third parties that the Seller has received under an obligation of confidentiality), has required all current and former employees with whom the Seller has shared confidential information to execute legally binding written non-disclosure agreements, and has entered nondisclosure or other similar agreements with substantially all third parties to whom the Seller has shared confidential information, except where the failure to do so would not have a Material Adverse Effect.

**G.**    The Seller has secured from all parties who have created any material portion of, or otherwise have any rights in or to, the Owned Intellectual Property, valid and enforceable written assignments or licenses of any such work or other rights to the Seller and provided true, complete and correct copies of such assignments or licenses to Purchaser.

**H.**    The Seller does not export vehicle hardware units from the United States and has not determined whether it would require a license to do so.

**5.1.8**    **Insurance.**    Schedule 5.1.8 contains a complete and correct list, in all material respects, of all material policies of insurance covering any of the assets primarily used in or relating to the Business, other than Excluded Assets, indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder.  All such policies are outstanding and in full force and effect.

**5.1.9**    **Compliance with Other Instruments and Laws; Permits.**    The Business is in compliance with all Laws applicable to the conduct of the Business and all Permits, except where the failure to be in compliance would not have a Material Adverse Effect. All Permits that are necessary for the conduct of the Business and the ownership and operation of the Acquired Assets have been duly obtained, are in full force and effect, and, to Seller's Knowledge, are listed on Schedule 5.1.9, and there are no proceedings pending or, to Seller's

Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit, except in each case as would not, individually or in the aggregate, result in a Material Adverse Effect.  The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by Seller will not, with or without the passage of time or the giving of notice, result in any such violation or be in conflict with or constitute a default under any Permit.

**5.1.10  Brokers.**    Seller has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Purchaser would be liable.

**5.1.11  Consents and Approvals.**  Assuming that the Third-Party Requirements will be satisfied, made or obtained and will remain in full force and effect, and assuming receipt of the consents, approvals and authorizations listed in Schedule 5.1.11, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Seller, nor the consummation by Seller of the Sale, nor compliance by Seller with any of the provisions hereof and of the Ancillary Agreements, will, with or without the passage of time or the giving of notice: (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of Seller; (ii) result in a violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which Seller is a party or by which its properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to Seller or to any of its properties or assets; or (iv) result in the creation or imposition of any Lien other than Permitted Encumbrances on any asset of Seller, except in the case of clauses (ii), (iii) and (iv) above, for violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions, suspensions or revocations that: (a) would not individually or in the aggregate have a Material Adverse Effect; or (b) are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**5.1.12  Financial Statements.**  (i) The unaudited balance sheets and statements of income, as of and for the fiscal years ended December 31, 2003, December 31, 2004 and December 31, 2005, for the Business are set forth in Schedule 5.1.12(i); and (ii) the unaudited balance sheet and statement of income for the four (4) months ended April 30, 2006 for the Business are set forth in Schedule 5.1.12(ii) (such financial statements in clause (i) and (ii) are collectively referred to as the "**Financial Statements**").    Except as set forth on Schedule 5.1.12(ii), the Financial Statements (including the notes thereto) were compiled from the books and records of the Business, are in accordance with such books and records, have been prepared in accordance with GAAP consistently applied (except as set forth therein) throughout the periods covered thereby and present fairly the assets, liabilities, financial position and results of operations of the Business as of the dates and for the periods indicated; provided, however, that the Financial Statements referred to in clause (ii) of the preceding sentence are subject to normal year-end adjustments (which, except as set forth on Schedule 5.1.12(ii) will not be material individually or in the aggregate) and lack footnotes required by GAAP.

**5.1.13  Events Subsequent to Latest Financial Statements.**    Except as referred to on Schedule 5.1.13 or as otherwise contemplated by or referred to in this Agreement

or the Ancillary Agreements, since April 30, 2006: (i) there has not been any Material Adverse Change; and (ii) the Business has been conducted and carried on only in the Ordinary Course of Business.

### 5.1.14 **Contracts.**

**A.**    Schedule 5.1.14.A lists all Contracts of Seller or its affiliates related to the Business that involve payment or performance obligations that individually exceed $25,000, and such Schedule includes all other Contracts to which Seller is a party or by which any of its properties are bound or that primarily relate to, are primarily used in, are primarily arising from, or are necessary for the conduct of the Business (including license and distribution agreements and arrangements among Seller, its Affiliates or third parties), other than Accounts Receivable (collectively, "**Listed Contracts**").    Seller has delivered or made available to Purchaser either: (i) true, correct and complete copies in all material respects; or (ii) accurate written descriptions in all material respects, of the Listed Contracts, except as set forth on Schedule 5.1.14.A.    Schedule 5.1.14.A identifies all Post-Petition Contracts included within the Listed Contracts other than immaterial Post-Petition Contracts and open purchase orders entered into in the Ordinary Course of Business.    Except as set forth on Schedule 5.1.14.A, and except for Post-Petition Contracts that are immaterial to the Business, none of the Post-Petition Contracts included within the Listed Contracts contains any provisions restricting its assignment to Purchaser pursuant to the terms of this Agreement.

**B.**    Each of the Listed Contracts is valid, binding and, subject to payment of all Cure Amounts, if applicable (which Cure Amounts will be paid by Seller as set forth in the Sale Approval Order), enforceable against Seller, to the extent set forth therein, and, to Seller's Knowledge, the other parties thereto, in accordance with its terms, and is in full force and effect.    Except as set forth on Schedule 5.1.14.B, and other than with respect to monetary defaults by Seller under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Seller, and to Seller's Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in material default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable) in respect of, any of such Listed Contracts, and there is not a material default thereunder or material claim of default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable) and there has not occurred any event which, with the passage of time or the giving of notice or both, would constitute a material default thereunder (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable), on the part of Seller, or to Seller's Knowledge, on the part of any other party thereto.    Except as set forth in Schedule 5.1.14.B, and other than with respect to monetary defaults by Seller under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Seller has received no written claim or notice from any other party to any such Listed Contract that Seller has breached in any material respects any obligations to be performed by it thereunder, or is otherwise in material default or delinquent in any material respects in performance thereunder (except with respect to defaults, delinquencies or obligations that need not be cured or performed, as appropriate, under Section 365 of the Bankruptcy Code for Seller to assume and assign such Listed Contracts to Purchaser, if applicable).

### 5.1.15 **Tax Matters.**

**A.**        Seller has: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all Tax Returns required to be filed and such Tax Returns were true, correct and complete; and (ii) and have paid all Taxes shown thereon as due and owing, except where the failure to file such Tax Returns or to pay such Taxes would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**B.**        Except as set forth on <u>Schedule 5.1.15.A</u>, Seller has properly and timely withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor or other third party (including federal income taxes, sales and use taxes, personal property taxes, Federal Insurance Contribution Act taxes and Federal Unemployment Tax Act taxes) and has properly and timely paid the same to the proper Tax receiving officers or authorized depositories, except in each case where such failure would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**C.**        Seller is not a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement, except as provided in this Agreement, under which Purchaser could be subject to Tax or other liability after the Closing.

**D.**        Except as disclosed in <u>Schedule 5.1.15.D</u>, no claim has ever been made by an authority in a jurisdiction in which Seller does not file Tax Returns that it is or may be subject to taxation by that jurisdiction or authority with respect to, in connection with, associated with or related to, Seller; no agreements or waivers are outstanding extending the statutory period of limitations applicable to any Tax Return of Seller with respect to a Tax assessment or deficiency; and Seller has not received any: (i) notice of underpayment of Taxes or other deficiency that has not been paid with respect to, in connection with, associated with or related to, Seller; or (ii) any objection to any Tax Return, with respect to, in connection with, associated with or related to, Seller, except in each case where such matter would not result in any liability to the Purchaser or any Lien on the Acquired Assets.  Except as disclosed in <u>Schedule 5.1.15.D</u>, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, Seller have been fully paid or are fully reflected as a liability in the financial statements of the Seller.

**E.**        Seller is not a party to any agreement, contract arrangement or plan that has resulted or would result, separately or in the aggregate, in the payment of any excess parachute payments within the meaning of IRC Code Section 280G.

**F.**        There are no Tax liens on any of Seller's assets, except for liens for Taxes not yet due and payable.

**G.**        Except for Transfer Taxes relating to the Sale, since April 30, 2006, Seller has not incurred any Taxes other than in the ordinary course of business and Seller has made adequate provisions on its books of account for all Taxes with respect to the Acquired Assets and the Business for such period, except for Taxes that would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**H.**        Seller has no liability for the Taxes of any Person other than Seller or any of its subsidiaries (i) under Treasury Regulation 1.1502-6 (or any similar Treasury Regulations), (ii) as a transferee or successor, (iii) by contract, or (iv) otherwise, except in each case where such liability would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**5.1.16 Employee Issues:**

**A.      Business Employees.**  Schedule 5.1.16.A contains a list of all Business Employees, and the information thereon is true, complete and correct in all material respects.

**B.      Seller Performance.**  Seller has performed and discharged, or will perform and discharge on or before the Closing Date, its obligations with respect to all of the Business Employees, up to and including the Closing Date, including working time, payment of wages and salaries, benefits, employer's contributions to any relevant social security, health, welfare and occupational pension scheme, severance or any other payments, and payment of all other costs and expenses relating to their employment (including without limitation any taxation, accrued holiday and vacation pay, accrued bonus or other sums payable with respect to employment) up to and including the Closing Date, except as otherwise set forth on Schedule 5.1.16.B.

**5.1.17 Absence of Other Representations or Warranties.**  Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, Seller makes no representations or warranties, express or implied, with respect to the Acquired Assets, the Assumed Liabilities, the sale of the Business, and in particular but without limitation, Seller makes no representations with respect to any plan(s) of Purchaser for the future conduct of the Business.  For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information  not contained in this Agreement or the Ancillary Agreements, or on any projected volumes of the Business, all which were produced only for information purposes.

**5.2      Representations and Warranties of Purchaser.**  Purchaser warrants and represents to Seller as follows:

**5.2.1 Corporate Data.**  Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.

**5.2.2 Corporate Power; Due Authorization.**  Purchaser has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements have been duly authorized by all necessary action on the part of Purchaser.  This Agreement is, and the Ancillary Agreements to which Purchaser is a party will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Seller), valid and legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

**5.2.3 No Violations.**  Neither the execution, delivery or performance of this Agreement by Purchaser, nor the consummation by Purchaser of the transactions contemplated herein, nor compliance by Purchaser with any of the provisions hereof, will: (i) except for the Third-Party Requirements, require Purchaser to obtain any consent, approval or action of, or

make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of Purchaser; or (iii) violate any order, writ, injunction, decree, statute, rule or regulation applicable to Purchaser or Purchaser's properties or assets.

       5.2.4   **Litigation.**  Except for the pendency of the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser which could reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

       5.2.5   **Brokers.**  Purchaser has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Seller would be liable.

       5.2.6   **Solvency.**  Upon the consummation of the transactions contemplated by this Agreement: (i) Purchaser will not be insolvent; (ii) Purchaser will not be left with unreasonably small capital; (iii) Purchaser will not have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Purchaser will not be impaired; and (v) immediately following closing, Purchaser will have sufficient capital to continue the Business as a going concern (it being understood that Purchaser will have no obligation to continue all or any portion of the Business as a going concern).

       5.2.7   **Availability of Funds.**  Purchaser has or will have available, at or prior to Closing, sufficient cash in immediately available funds to pay the Purchase Price and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

       5.2.8   **Adequate Assurance of Future Performance.**  Purchaser has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed Contract to the parties thereto (other than Seller) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance shall be necessary thereunder with respect to any Assumed Contract.

       5.2.9   **Compliance with Law.**  Purchaser is in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

       5.2.10  **Anti-Money Laundering.**  Purchaser is in compliance with**:** (i) all applicable provisions of  the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in

which Purchaser operates or does business.  Neither the Purchaser nor any of its directors, officers or affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and Purchaser is not affiliated in any way with, or providing financial or material support to, any such persons or entities. Purchaser agrees that should it, or any of its directors, officers or affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Purchaser shall inform the Seller in writing immediately.

**5.3**     **Survival of Representations, Warranties and Covenants of the Seller.**  The representations and warranties made by the Seller in Section 5.1 shall survive the Closing and shall expire on the first anniversary of the Closing Date (the "**Expiration Date**"); provided, however, that if, at any time prior to the first anniversary of the Closing Date, Purchaser delivers to Seller a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by the Seller and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the first anniversary of the Closing (and the Expiration Date with respect thereto shall be extended) until such time as such claim is fully and finally resolved. The covenants made by the Seller shall survive the Closing.

**5.4**     **Survival of Representations, Warranties and Covenants of the Purchaser**. The representations and warranties made by the Purchaser in Section 5.2 shall survive the Closing and shall expire on the Expiration Date; provided, however, that if, at any time prior to the first anniversary of the Closing Date, Seller delivers to Purchaser a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by the Purchaser and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the first anniversary of the Closing (and the Expiration Date with respect thereto shall be extended) until such time as such claim is fully and finally resolved.  The covenants made by the Purchaser shall survive the Closing.

**6.**     **CONDITIONS TO CLOSING**:

**6.1**     **Conditions to Obligations of Seller and Purchaser**.   The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following conditions precedent:

**6.1.1**     **Sale Approval Order.**  The Sale Approval Order, in form and substance reasonably satisfactory to Purchaser, shall be entered by the Bankruptcy Court and shall not be subject to a stay or injunction.

**6.1.2**     **No Law, Judgments, etc.**  No provisions of any applicable Law and no judgment, injunction (preliminary or permanent), order or decree that prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement shall be in effect (each party taking any and all steps required by Section 8.2 of this Agreement).

**6.2**     **Conditions to Obligations of Purchaser**.   The obligation of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchaser):

**6.2.1    Accuracy of Representations and Warranties.**    Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Seller contained in this Agreement that are qualified by materiality shall be true and correct, and the other representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects, in each case as of the date hereof and as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time).    Subject to the preceding sentence, Seller may update or supplement the Disclosure Schedule prior to Closing by written notice to Purchaser, but any such update or supplement shall not be taken into account in determining whether the condition set forth in this Section 6.2.1 has been satisfied or whether there has been a breach of any representation, warranty or covenant has been breached for any purpose under this Agreement.    Any claim that Purchaser may have based on matters disclosed by Seller in such updated or supplemented Disclosure Schedule will be deemed waived by Purchaser if Purchaser nonetheless completes the transactions contemplated herein.

**6.2.2    Performance of Covenants.**    Each of the Ancillary Agreements to which Seller is a party shall have been executed and delivered by Seller to Purchaser, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Seller on or before the Closing shall have been performed in all respects.

**6.2.3    Payment of Cure Amounts.**    Seller shall have paid all Cure Amounts with respect to Assumed Contracts as set forth in Section 8.4 hereof.    Seller shall have cured any and all monetary defaults that arose under or otherwise became due and owing prior to the Closing Date under Transferred Contracts that are Post-Petition Contracts.

**6.2.4    Certification.**    Seller shall furnish to Purchaser a certification in a form acceptable to Purchaser pursuant to Treasury Regulation Section 1.1445-2(b)(2) that Seller is not a foreign person.

**6.2.5    Other Approvals.**    Except as expressly obviated by the terms of the Sale Approval Order, the third party consents set forth in Schedule 6.2.5 shall have been received and all consents, approvals and filings in connection with Third-Party Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchaser.

**6.3    Conditions to Obligations of Seller.**    Except as otherwise permitted by this Agreement, the obligation of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Seller):

**6.3.1    Accuracy of Representations and Warranties.**    The representations and warranties of Purchaser contained in this Agreement that are qualified by materiality shall be true and correct, and the other representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects, in each case as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Purchaser's ability to consummate the transactions contemplated by this Agreement.

**6.3.2    Performance of Covenants.**    Each of the Ancillary Agreements to which Purchaser is a party shall have been executed and delivered by Purchaser to Seller, and all

other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Purchaser on or before the Closing shall have been performed in all material respects.

       **6.3.3**  **Delivery of Purchase Price.**  Purchaser shall have delivered to Seller the Purchase Price by wire transfer, in immediately available funds, to such bank account or bank accounts as shall be specified by Seller to Purchaser on the Closing Date.

**7.**    **CLOSING.**

       **7.1**    **The Closing.**  Subject to the satisfaction of the conditions set forth in Article 6 of this Agreement, the closing (the "**Closing**") of the transactions contemplated hereby shall take place at the offices of DLA Piper, 2000 University Avenue, East Palo Alto, California 94303 at 10:00 a.m. on the second Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), but not earlier than July 31, 2006, or on such other date or at such other time as the Parties may agree.  For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. EDT on the Closing Date.

       **7.2**    **Ancillary Agreements.**  At the Closing, the Parties shall execute and deliver each to the other the following agreements to which they are a party:

       **7.2.1**  Assignment of Lease regarding 800 West El Camino Real, Mountain View, CA 94040 property substantially in the form of Schedule 7.2.1, including the landlord's consent thereto.

       **7.2.2**  Intellectual Property Transfer Documents as follows:

       **A.**    An assignment from MobileAria to WIRELESS MATRIX of the Patent Rights set forth in Schedule 5.1.7.A.1 substantially in the form attached hereto as Schedule 7.2.2.A.

       **B.**    An assignment from MobileAria to WIRELESS MATRIX of the Trademark Rights set forth in Schedule 5.1.7.A.1 substantially in the form attached hereto as Schedule 7.2.2.B.

       **7.2.3**  Assignment and Assumption Agreement relating to the Transferred Contracts, consistent with the Sale Approval Order substantially in the form attached hereto as Schedule 7.2.3.

       **7.2.4**  Escrow Agreement between Seller, Purchaser and the Escrow Agent substantially in the form attached hereto as Schedule 7.2.4, and the Additional Escrow Agreement referred to in Section 4.1.2.

       **7.2.5**  Bill of sale substantially in the form attached hereto as Schedule 7.2.5.

       **7.2.6**  An Agreement in substantially the form attached hereto as Exhibit 7.2.6.

       **7.2.7**  A non-exclusive, royalty-free license for vehicle adaptor bus technology on terms reasonably agreeable to  Delphi Technologies and Purchaser.

**7.3**   **Seller's Deliveries.**   At the Closing, Seller shall deliver to Purchaser the following, in proper form for recording where appropriate:

**7.3.1**   Executed assignments for the Permits and Contracts to be acquired by Purchaser pursuant to Article 1.

**7.3.2**   An officer's certificate, dated as of the Closing Date, executed on behalf of Seller, certifying that the conditions specified in Section 6.2 have been fulfilled.

**7.3.3**   A certificate, dated as of the Closing Date, executed on behalf of Seller by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Seller's Organizational Documents; and (ii) a true and correct copy of the resolutions of Seller's board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which Seller is a party and the consummation of the transactions contemplated hereby and thereby.

**7.3.4**   Certified copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

**7.3.5**   Duly executed bill of sale transferring the Acquired Assets to Purchaser.

**7.3.6**   Appropriate receipts.

**7.4**   **Purchaser's Deliveries.**   At the Closing, Purchaser shall deliver to Seller, in proper form for recording where appropriate:

**7.4.1**   The Purchase Price less the Deposit Amount as required by, and in accordance with, Section 4.1.

**7.4.2**   An Assignment and Assumption Agreement pursuant to which the Purchaser assumes the Assumed Liabilities.

**7.4.3**   An officer's certificate, dated as of the Closing Date, executed on behalf of Purchaser, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.4**   A certificate, dated as of the Closing Date, executed on behalf of the Purchaser by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchaser's Organizational Documents; and (ii) a true and correct copy of the resolutions of the Purchaser's board authorizing the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby.

**8.**   **CERTAIN ADDITIONAL COVENANTS**:

**8.1**   **Bankruptcy Actions:**

**8.1.1**   The Bidding Procedures are set forth in Section 11.1.  As further specified below, Seller shall file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking approval of the Bidding Procedures Order and the Sale Approval Order.

**8.1.2**    Seller shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Acquired Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Approval Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.2**    **Registrations, Filings and Consents; Further Actions.**    Upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including, without limitation, using their reasonable best efforts to cause the satisfaction of all conditions to Closing.

**8.3**    **Operation of the Business Pending Closing:**

**8.3.1**    Except: (i) as otherwise provided herein; (ii) as required by or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iii) subject to any changes that may be required under applicable Laws; (iv) as set forth in the following sentence, until the Closing, Seller will (a) carry on the Business in substantially the same manner as heretofore; and (b) will perform in all material respects all of its obligations under all Listed Contracts and not amend, alter or modify in any significant respect that is adverse to the Business any provision of any Listed Contract; keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; endeavor to maintain the goodwill of the Business; and promptly advise Purchaser of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets.-

**8.3.2**    Seller shall promptly notify Purchaser if Seller becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2, 6.2.1 or 6.2.5 hereof to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Seller to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.3.3**    Purchaser shall promptly notify Seller if Purchaser becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2 or 6.3.1 hereof to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Purchaser to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.4**    **Assumed Contracts; Cure Amounts.**    As soon as practicable after the date hereof, Seller shall, pursuant to a motion in form and substance reasonably acceptable to

Purchaser (which motion may be incorporated into the Sale Motion), move to assume and assign to Purchaser the Assumed Contracts and shall provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court.  Seller shall pay Cure Amounts as agreed to by the Seller and each party to an Assumed Contract or, absent such agreement, by order of Court in the time and manner specified by the Sale Approval Order. Notwithstanding anything in this Agreement to the contrary, at any time prior to the conclusion of the Sale Hearing, Purchaser may notify the Seller that it has elected not to take an assignment of one or more Assumed Contracts and Seller shall have no obligation to assume or make payment of the Cure Amount with respect to any such Assumed Contract.  Seller agrees to make such information available as Purchaser reasonably requests in order to make a determination with respect to such Assumed Contracts.

      **8.5**    **Post-Closing Covenants.**  From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

### 8.5.1  Seller Post-Closing Covenants:

            **A.**    **Non-Competition.**  Seller has as at Closing, established the reputation of the Business. Seller undertakes and agrees with Purchaser that for a period of three (3) years after the Closing Date, except with the consent of Purchaser, Seller shall not either on its own account or in conjunction with or on behalf of any person, firm or company whether by sales, marketing, investing, management or other activities, carry on, license or be engaged, concerned or interested, directly or indirectly, whether as a shareholder, director, employee, partner, agent or otherwise in carrying on any business which is engaged in the design, development, manufacture or sale of Products (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 8.5.1 will not prohibit, in any way: (i) the acquisition of a controlling interest or merger with any person, or a division or business unit thereof, acquired by or merged, directly or indirectly, into Seller or any of its Affiliates after the Closing Date if the Competitive Business accounts for five (5%) percent or less of the sales or five (5%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than fifteen (15%) percent of such acquired business's sales or value; (ii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of a non-controlling ownership interest in any person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than twenty percent (20%) of such acquired business's sales or value; (iii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any person engaged in a Competitive Business; (iv) provision of consulting services to any Person for the purpose of designing or manufacturing on behalf of Seller or any Seller Affiliate or selling to Seller or any Seller Affiliate components and parts solely for automotive applications other than those that would constitute Products; (v) consistent with the generally applicable Seller or any Seller Affiliate troubled supplier practices, direct or indirect activities of Seller or any Seller Affiliate to advise, operate, manage or finance a troubled supplier of Seller or its Affiliates; and (vi) the design, development, manufacture or sale of telematic modems and other telematics hardware and the communication of digital data for the remote resource management market for any kind of vehicle, including commercial vehicles, and derivatives of such hardware (collectively, "**Competing HW**"); provided that Seller does not provide subscription services (other than repair or replacement of defective hardware) associated with the use of Competing HW; and, provided, further, that Competing HW may be

sold only to original equipment manufacturers, any distributor or reseller, and commercial users requiring volumes exceeding 5,000 units.  For further clarification, Seller agrees not to market or sell products that combine all of the following features in one Competing HW unit: CDMA (EVDO), GPS, 802 technologies, Windows CE operating platform, USB/Serial/GPIO interfaces and 64MG internal memory capabilities.

**B.**      While the restrictions contained in this Section 8.5.1 are considered by the parties to be reasonable in all the circumstances, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions shall be adjudged to be void as going beyond what is reasonable in all the circumstances for the protection of the interests of Purchaser and/or the Business but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope the said restriction shall apply with such modifications as may be necessary to make it valid and effective.

**C.**      Seller will cooperate with Purchaser to transition the letter of credit arrangement set forth in Section 4.3 as of the Closing Date.

**8.5.2**    **Technical Documentation.**   Seller has delivered, or will deliver on or before the Closing, to the Purchaser, a copy of all Technical Documentation included in the Acquired Assets.  For a period of not less than one (1) year commencing at Closing, Purchaser and its Affiliates shall use reasonable efforts to maintain all Technical Documentation applicable to product design, test, release, validation and manufacture it acquires from Seller and its Affiliates in connection with the purchase of the Acquired Assets under Article 1 of this Agreement at a location at which they shall be reasonably accessible to Seller and its Affiliates upon reasonable request and with reasonable advance notice.  During such one (1) year period, Purchaser shall not intentionally destroy or give up possession of its final copy of such documentation without offering Seller the opportunity, at Seller's expense but without any payment to Purchaser, to obtain a copy of such documentation.

**8.5.3**    **Books and Records and Litigation Assistance From and After Closing:**

**A.**      Purchaser and its Affiliates shall use reasonable efforts to preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchaser by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than one (1) year from the Closing Date, or for any longer period as may be required of the Business by any government agency, law, regulation, audit or appeal of Taxes, or Tax examination at Purchaser's sole cost and expense.  If and when Seller believes that such records are no longer legally required, it will notify Purchaser. During such period, Purchaser shall: (i) provide Seller or its Affiliates with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of the Business as of  December 31, 2006; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any legal proceedings against or governmental investigations of Seller and its Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Seller and its Affiliates, the Business or the Acquired Assets during such period.  Seller or its Affiliates shall reimburse Purchaser for the reasonable out-of-pocket expenses incurred in connection with any request by Seller to make available records pursuant to the foregoing sentence.  In the event Purchaser wishes to destroy or dispose of such books and records after one (1) year from the

Closing Date, it shall first give not less than thirty (30) days' prior written notice to Seller or its Affiliates, and Seller or its Affiliates shall have the right, at its option, upon prior written notice given to Purchaser within twenty (20) days of receipt of Purchaser's notice, to take possession of said records within thirty (30) days after the date of Purchaser's notice to Seller hereunder.

**B.**    Purchaser, for itself and on behalf of its Affiliates, agrees to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations; (ii) make available documents and records delivered to it by Seller reasonably necessary in connection with any pursuit, contest or defense related to the Business, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Purchaser must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchaser must notify Seller of the existence of such privileged documents); and (b) Seller and its Affiliates will agree to keep confidential and not use for any other purpose documents and records that are confidential or are subject to trade secret protection); (iii) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to significantly interfere with Purchaser's business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Seller and its Affiliates in connection with such claim.

**8.5.4    Payment and Collections.**    Seller shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchaser after Closing, and Purchaser shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Seller after Closing, in order to ensure that the cost of the related liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement.  To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party, Seller or Purchaser, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments.  Seller shall promptly send Purchaser copies of all remittance advices and checks related to payments received by Seller with respect to such items.  Purchaser shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Seller shall cooperate with Purchaser as is reasonably necessary to so notify such customers, including providing appropriate contact information for each such customer.

**8.5.5    Intellectual Property Transition Rights.**    Seller will have the right to continue to use the MobileAria corporate name and office materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of MobileAria, but only in connection with the Bankruptcy Cases and the dissolution and wind down of Seller.

**8.6    Further Assurances.**    If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement).

**8.7    [Reserved]**

**8.8**    **Certain Transactions.**    Purchaser shall not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any material delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Entity necessary to consummate the transactions contemplated by this Agreement or the Ancillary Agreements or the expiration or termination of any applicable waiting period; (ii) significantly increase the risk of any Governmental Entity entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) materially delay or prevent the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.9**    **Communications with Customers and Suppliers.**    Prior to the Closing, Purchaser shall not, and shall cause its Subsidiaries and representatives not to, contact, engage in any discussions or otherwise communicate with any of the Business' customers, suppliers and others with whom it has material commercial dealings without obtaining the prior written consent of Seller (which may be conditioned on Seller having the right to participate in any meetings or discussion with any such customers, suppliers or others); provided, that Purchaser and Seller shall work together in good faith to arrange for an orderly transition of customer, supplier, and other third party relationships, including, without limitation, at the request of Purchaser, meetings and other correspondence with such customers, suppliers, and other third parties to ensure such orderly transition.  Purchaser may contact Verizon Services Corp. to: (i) ensure orderly transition of the Verizon Contract to Purchaser; and (ii) reduce and assess the likelihood of termination of the Verizon Contract by Verizon Services Corp. or material reduction of the amount of business conducted pursuant to the Verizon Contract, provided that Purchaser provides at least twenty-four (24) hour prior notice to Seller and permits Seller to supervise such correspondence at Seller's election.

## 9.    TERMINATION

**9.1**    **Termination.**    Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

**9.1.1**    **By Either Party:**

**A.**    By mutual written consent of Seller and Purchaser.

**B.**    Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any regulatory Governmental Entity, other than the Bankruptcy Court.

**C.**    If Seller consummates an Alternative Transaction.

**D.**    Providing the terminating Party is not in default of its obligations under this Agreement, by either Seller or Purchaser if the Closing shall not have occurred on or prior to August 31, 2006.

**E.**    If the Bankruptcy Court has not entered the Sale Approval Order, on or before July 26, 2006 (the "**Termination Date**") or such Sale Approval Order is subject to a stay or injunction; provided, however, that the right to terminate this Agreement pursuant to this Section 9.1.1.E shall not be available to Purchaser if Purchaser shall have failed to perform, or caused any of its respective Affiliates to perform, any of its respective material obligations under this Agreement.

**9.1.2    By Purchaser.**    By Purchaser (provided that Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein) (i) at any time prior to Closing, if a Material Adverse Effect shall have occurred, Purchaser may terminate within ten (10) Business Days after receiving written notice of such event, so long as such event is continuing at the time of any such termination; or (ii) if Verizon Services Corp. has terminated, threatened to terminate, or Verizon otherwise evidences an intent to terminate the Verizon Contract or materially reduce the amount of business conducted pursuant to the Verizon Contract.

**9.2    Notice of Termination.**    In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

**9.3    Break-Up Fee; Expense Reimbursement**:

**9.3.1    Break-Up Fee.**    Subject to Section 9.3.4, in the event that: (i) Seller sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, all or substantially all or a material portion of the Business or the Acquired Assets in a transaction or a series of transactions with one or more parties other than Purchaser (such event being an "**Alternative Transaction**"), Seller shall, within two (2) Business Days after the consummation of an Alternative Transaction(s), pay to Purchaser an amount equal to one hundred ninety-five thousand dollars ($195,000.00) (the "**Break-Up Fee**"), unless the Agreement is then terminated under Sections 9.1.1.B; in which case no Break-Up Fee shall be payable.  The claim of Purchaser for a Break-up Fee shall be paid to Purchaser from the sale proceeds of an Alternative Transaction and, until paid in full, shall constitute a superpriority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code.

**9.3.2    Expense Reimbursement.**    In the event this Agreement is terminated pursuant to Sections 9.1.1.D or 9.1.1.E, and provided that Purchaser is not then in breach of this Agreement for which Seller had previously notified Purchaser, and, in the case of Section 9.1.1.D, the failure or occurrence of the event giving rise to any such termination results solely from the status of Seller or any action or conduct of Seller and not from the status of Purchaser or any intentional action or conduct of Purchaser, then Seller shall be obligated to pay Purchaser an amount equal to Purchaser's reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement (the "**Expense Reimbursement**") up to a maximum of $120,000.  Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Seller to Purchaser promptly upon the delivery of an invoice related to such Expense Reimbursement to Seller by Purchaser to be delivered to Seller within ten (10) Business days of termination of this Agreement.  The claim of Purchaser for an

Expense Reimbursement shall constitute a superpriority administrative expense under Section 364(c)(1) of the Bankruptcy Code.

**9.3.3**   Payments to Purchaser pursuant to this Section 9.3 shall be by wire transfer of immediately available funds in U.S. Dollars, to such account or accounts as Purchaser shall designate in writing.

**9.3.4**   Purchaser acknowledges and agrees that, in the event that it terminates this Agreement or Seller terminates this Agreement and Purchaser becomes entitled to receive or receives any Expense Reimbursement, Purchaser shall not be entitled to receive nor shall it receive the Break-Up Fee or any portion thereof, and, conversely, that in the event that Purchaser becomes entitled to receive or receives any Break-Up Fee, it shall not be entitled to receive nor shall it receive the Expense Reimbursement or any portion thereof. In the event that Purchaser would be entitled to receive both the Break-Up Fee and Expense Reimbursement but for the operation of this Section 9.3.4, Purchaser shall be entitled to receive the greater of such amounts.

**9.4**   **Procedure and Effect of Termination.**   In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto.   If this Agreement is terminated as provided herein no Party shall have any liability or further obligation to any other Party resulting from such termination except for the provisions of: (i)(a) Purchasers' obligations under that certain confidentiality agreement between the Parties dated April 10, 2006; (b) Article 9 (Termination); and (c) Sections 4.1.1 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.15 (Venue and Retention of Jurisdiction) and 13.18 (Dispute Resolution), all of which shall remain in full force and effect; and (ii) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Purchaser is entitled to receive the Break-Up Fee, the right of Purchaser to receive such amount shall constitute Purchaser's sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by Seller of any of its representations, warranties, covenants or agreements set forth in this Agreement, and provided, further, that in the event Seller is entitled to receive the Deposit Amount, the right of Seller to receive such amount shall constitute Seller's sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by Purchaser of any of its representations, warranties, covenants or agreements set forth in this Agreement.   In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

**10.**   **OTHER TAX MATTERS:**

**10.1**   Seller will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due prior to the Closing, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. Purchaser shall make available to Seller (and to Seller's accountants and attorneys) any and all books and records and other documents and information in its possession or control reasonably

requested by Seller to prepare these Tax Returns.  Seller will make all payments required with respect to any such Tax Return.

**10.2**    Purchaser will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due after the Closing (other than for Taxes with respect to periods for which the consolidated, unitary and Tax Returns of Seller will include the operations of the Business).  Purchaser shall be responsible for and shall pay when due all Taxes attributable, levied or imposed upon or incurred in connection with the Acquired Assets and the Business pertaining to: (a) any period ending after the Closing Date; and (b) the portion of any Taxes for which Purchaser is liable as determined in accordance with Section 10.3 below.

**10.3**    For purposes of this Article 10 and Section 2.3, whenever it is necessary to allocate the liability for Taxes for a Straddle Period, the determination of the Taxes of the Business for the portion of the Straddle Period ending at the end of the Closing Date (the "**Pre-Closing Portion**") and the portion of the Straddle Period beginning after the Closing Date (the "**Post-Closing Portion**") will be determined by assuming that the Straddle Period consisted of two taxable years or periods, one of which ended at the close of business on the Closing Date and the other of which began at the beginning of the day after the Closing Date, and items of income, gain, deduction, loss or credit related to the Acquired Assets and the Business for the Straddle Period will be allocated between such two (2) taxable years or periods on a "closing of the books basis" by assuming that the books associated with the Business were closed at the end of the Closing Date; provided, however, that all real property taxes, personal property taxes, ad valorem obligations and similar taxes imposed on a periodic basis, in each case levied with respect to the Acquired Assets (other than Taxes resulting from the transactions described herein as provided for in Section 10.1) for a Straddle Period shall be apportioned between Seller and Purchaser as of the Closing Date based on the number of days of such taxable period up to and including the Closing Date and the number of days of such taxable period following the Closing Date.  Seller shall be liable for the proportionate amount of such taxes that is attributable to the period up to and including the Closing Date; Purchaser shall be liable for the proportionate amount of such taxes that is attributable to the period following the Closing Date.

**10.4**    Seller and Purchaser will cooperate in connection with: (i) the preparation of filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets.  Such cooperation includes a reasonable amount of direct access to accounting, engineering and contracting personnel, subject to availability, which shall not be unreasonably restricted, and advance notice to Purchaser's chief financial officer.

**10.5**    Seller shall not, and shall not cause the Business to make, revoke or amend any tax election, execute any waiver of restrictions or tax assessments or collections or extensions if there will be any impact on Purchaser as a result of doing so.

**11.    BIDDING PROCEDURES:**

**11.1    MobileAria Initial Bankruptcy Actions.**  This Article 11 sets forth the bidding procedures (the "Bidding Procedures") to be employed with respect to the Agreement and the sale (the "Sale") of the Acquired Assets.  The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order.  The following overbid provisions and related bid protections are designed to compensate the Purchaser for its efforts

38

and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Acquired Assets for the benefit of Seller and its Affiliates' creditors, shareholders and bankruptcy estate.

      **11.2**   **Court Approval.**  Promptly after the execution of this Agreement, Seller shall file the Sale Motion with the Bankruptcy Court seeking: (i) entry of the Bidding Procedures Order approving the Bidding Procedures, the Break-Up Fee and the Expense Reimbursement; and (ii) subject to the competitive bidding process provided under the Bidding Procedures, entry of the Sale Approval Order approving this Agreement and the transaction specified herein.  It is a material inducement to Purchaser to be able to acquire the Acquired Assets pursuant to the provisions of Sections 363 and 365 of the Bankruptcy Code, including in particular free and clear of Liens pursuant to Section 363(f) of the Bankruptcy Code.  Therefore, notwithstanding anything in this Agreement to the contrary, any and all obligations of Purchaser under this Agreement are subject to the entry of the Sale Approval Order approving this Agreement and the transaction specified herein, and ordering, finding or concluding that, among other things: (a) notice of the Sale Motion and the transactions contemplated hereunder was proper and sufficient to all parties entitled to such notice; (b) the sale of the Acquired Assets to Purchaser is approved pursuant to Section 363(b) of the Bankruptcy Code; (c) the assumption and assignment of the Assumed Contracts to the Purchaser is approved pursuant to Section 365 of the Bankruptcy Code and that the Cure Amounts to be paid by the Seller on the Closing Date to the non-debtor parties to the Assumed Contracts satisfy all monetary obligations and defaults of the Seller to those non-debtor third parties required to be cured pursuant to Section 365(b)(1) of the Bankruptcy Code; (d) the sale of the Acquired Assets to the Purchaser pursuant to this Agreement will be free and clear of all known and unknown Liens pursuant to Section 363(f) of the Bankruptcy Code; (e) Purchaser is not a continuation of Seller or its estate, there is no continuity of enterprise between Seller and Purchaser, Purchaser is not a successor to Seller or its estate and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of Purchaser and Seller or its estate; (f) Purchaser has acted in good faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code; (g) the transactions contemplated hereunder are not avoidable pursuant to Section 363(n) of the Bankruptcy Code; (h) Purchaser is not assuming or acquiring any of Seller's liabilities except as specifically provided in this Agreement; and (i) the Sale Approval Order shall be effective immediately notwithstanding the provisions of Bankruptcy Rules 6004(g) and 6006(d).  Seller shall be responsible for making all appropriate filings relating thereto with the Bankruptcy Court, which filings shall be submitted to the Purchaser as far prior to their filing with the Bankruptcy Court as reasonably practicable for the Purchaser's prior review and, solely with respect to the Bidding Procedures Order and the Sale Approval Order, approval, which shall not be unreasonably withheld or delayed.  Should Seller not have received Purchaser's approval of the Bidding Procedures Order and the Sale Approval Order prior to Seller's deadline for filing with the Bankruptcy Court, Seller may file such documents with the Bankruptcy Court and may submit a revised Bidding Procedures Order and/or Sale Approval Order reflecting agreed modifications thereto, if any, to the Bankruptcy Court prior to the hearing thereon.

      **11.3**   **Qualified Bidder.**  Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Seller, in order to participate in the bidding process, each person (a "Potential Bidder"), other than the Purchaser, must deliver (unless previously delivered) to Seller:

            **11.3.1** An executed confidentiality agreement in form and substance satisfactory to Seller.

**11.3.2** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Seller and its financial advisors; and

**11.3.3** A preliminary (non-binding) written proposal regarding: (i) the purchase price; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Financial Assurance); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale, if selected as a successful bidder, and that the Seller determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement shall be deemed a "**Qualified Bidder**".  As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Seller shall determine, and shall notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder.  At the same time that Seller notifies the Potential Bidder that it is a Qualified Bidder, Seller shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Business as provided in Section 11.5 below.  Notwithstanding the foregoing, Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.

**11.4    Bid Deadline.**  A Qualified Bidder (other than Purchaser) that desires to make a bid shall deliver written copies of its bid to: MobileAria, Inc., 800 West El Camino Real, Suite 240, Mountain View, California 94040, Attention: Richard Lind with copies to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Stephen H. Olsen; (ii) the Seller's restructuring counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Randall G. Reese; (iii) the Seller's financial advisor, Pagemill Partners, LLC, 2475 Hanover Street, Palo Alto, California 94304, Attention: Milledge A. Hart; (iv) the Seller's corporate counsel, DLA Piper Rudnick Gray Cary US LLP, 2000 University Avenue, East Palo Alto, California 94303, Attention: James M. Koshland; (v) counsel to the Creditors' Committee), Latham & Watkins LLP, at 885 Third Avenue, New York, New York 10022, Attention: Mark A. Broude; (vi) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; (vii) counsel to the debtors' prepetition lenders, Simpson Thacher & Bartlet LLP, 25 Lexington Avenue, New York, New York 10017, Attention: Kenneth S. Ziman; and (viii) the debtors' pre-petition lenders' financial advisor, Alvarez & Marsal, 600 Lexington Avenue, 6th Floor, New York, New York 10022, Attention: Andrew Hede so as to be received not later than 11:00 A.M. (New York Time), on June 29, 2006 (the "**Bid Deadline**").  As soon as reasonably practicable following receipt of each Qualified Bid, Seller shall deliver to Purchaser and its counsel complete copies of all items and information enumerated in Section 11.6 of this Agreement.

**11.5    Due Diligence.**  Seller shall afford each Qualified Bidder due diligence access to the Acquired Assets and the Business.   Due diligence access may include management presentations as may be scheduled by Seller, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Seller, in its sole discretion, may agree to.   Seller shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence shall not continue after the Bid Deadline. Seller may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither Seller nor any of its Affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Acquired Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**11.6    Bid Requirements.**    All bids must include the following documents (the "Required Bid Documents"):

**11.6.1**  A letter stating that the bidder's offer is irrevocable until the earlier of: (i) two (2) Business Days after the closing of the Sale of the Acquired Assets; or (ii) August 31, 2006.

**11.6.2** An executed copy of the Agreement, together with all schedules a ("**Marked Agreement**") marked to show those amendments and modifications to such agreement and schedules that the Qualified Bidder proposes, including the Purchase Price.

**11.6.3** A good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Seller in its sole discretion) payable to the order of Seller (or such other party as Seller may determine) in an amount equal to US$500,000.

**11.6.4** Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Seller and its advisors.

**11.7    Qualified Bids.**  A bid will be considered only if the bid:

**11.7.1** Is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Seller than, those contained in the Agreement.

**11.7.2** Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**11.7.3** Proposes a transaction that Seller determines, in its sole discretion, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $ 400,000; and (ii) $100,000 in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**11.7.4** Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

**11.7.5** An acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**11.7.6** Includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within twenty (20) days after entry of such order.

**11.7.7** Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "**Qualified Bid**" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that Seller shall have the right, in its sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids; provided, further, however, that no bid shall be deemed by Seller to be a Qualified Bid unless such bid proposes a transaction that Seller determines, in its sole discretion, has a value, greater than or equal to the sum of the Purchase Price, plus the amount of the Break-Up Fee, plus $400,000, taking into account all material terms of any such bid. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Purchaser is referred to as a "**Subsequent Bid**".

If Seller does not receive any Qualified Bids other than the Agreement received from the Purchaser, Seller will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**11.8** **Bid Protection. [Reserved]**

**11.9** **Auction, Bidding Increments and Bids Remaining Open.** If Seller receives at least one (1) Qualified Bid in addition to the Agreement, Seller will conduct an auction (the "**Auction**") of the Acquired Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or before July 10, 2006, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, in accordance with the following procedures:

**11.9.1** Only Seller, Delphi, Purchaser, any representative of the Committee, any representative of the secured lenders (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid shall be entitled to attend the Auction, and only Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

**11.9.2**  At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Seller whether it intends to participate in the Auction and at least one (1) Business Day prior to the Auction, Seller shall provide copies of the Qualified Bid or combination of Qualified Bids which Seller believes is the highest or otherwise best offer to all Qualified Bidders who have informed Seller of their intent to participate in the Auction. Should an Auction take place, Purchaser shall have the right, but not the obligation, to participate in the Auction. Purchaser's election not to participate in an Auction shall in no way impair its entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

**11.9.3**  All bidders shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**11.9.4**  Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**11.9.5**  Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $100,000 higher than the previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), Seller shall give Purchaser a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement that may be payable to Purchaser under this Agreement and shall give effect to any assets and/or equity interests to be retained by Seller.

**11.9.6**  At the conclusion of the Auction, or as soon thereafter as practicable, Seller, in consultation with its financial advisors, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction (the "**Successful Bid(s)**" and the bidder(s) making such bid, the "**Successful Bidder(s)**").

**11.10**  **Acceptance of Qualified Bids.**  Seller shall sell the Acquired Assets for the highest or otherwise best Qualified Bid upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "**Sale Hearing**"). If, after an Auction in which the Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.

**11.11**  **Sale Hearing.**  The Sale Hearing will be held before the Honorable Robert Drain on July 19, 2006 at 10:00 a.m. (New York City time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or

rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.  If Seller does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), Seller will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchaser following entry of the Sale Order.  If Seller does receive additional Qualified Bids, then, at the Sale Hearing, Seller shall seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**").  Seller's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Seller's acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Seller or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Seller shall effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

**11.12  Return of Good Faith Deposit.**  Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, Seller will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of Seller.   On the Return Date, Seller shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**11.13  Reservation of Rights.**  Seller, after consultation with the agents for its secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of  the Sale; or (c) contrary to the best interests of Seller, its estate and creditors as determined by Seller in its sole discretion

## 12.    **INDEMNIFICATION:**

**12.1    Seller's Agreement to Indemnify.**  If the Closing occurs and Purchaser makes a written claim for indemnification against Seller in accordance with the procedures set forth in this Article 12 prior to the Expiration Date, then Seller agrees to indemnify and hold harmless Purchaser subject to the terms of this Article 12, from and after the Closing, from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, the "**Purchaser Damages**") incurred by Purchaser as a result of or arising out of: (i) those Retained Liabilities and those Excluded Assets that are retained at Closing by Seller; (ii) a breach of any representation or warranty in this Agreement; (iii) any covenant to be performed on or before Closing; or (iv) a breach of any agreement or covenant of Seller in this Agreement to be performed after Closing; and the sole source to satisfy any remedy with respect to (i) and (ii) above shall be the Escrow Amount, and the limit of Seller's obligation with

respect to clauses (i) and (ii) above, shall be $975,000.00.  Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date.  As soon as possible after the Expiration Date, the Escrow Amount, including all cash, interest accrued thereon and other property retained by the Escrow Agent, will be delivered to Seller by the Escrow Agent, less an amount necessary to satisfy the amount of all then outstanding claims by Purchaser for Purchaser Damages in accordance with the terms of the Escrow Agreement.

**12.2**    **Purchaser's Agreement to Indemnify.**   If the Closing occurs and Seller makes a written claim for indemnification against Purchaser in accordance with the procedures set forth in this Article 12, then, from and after the Closing, Purchaser shall indemnify and hold harmless Seller from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, the "**Seller Damages**") incurred by Seller as a result of or arising out of: (i) the Assumed Liabilities; (ii) a breach of any representation or warranty of Purchaser contained herein; (iii) any covenant to be performed on or before Closing; (iv) a breach of any agreement or covenant of Purchaser contained herein to be performed after Closing; or (v) the use, operation or ownership of the Business or any of the Acquired Assets after the Closing unless such matters are of a nature also subject to indemnification pursuant to Section 12.1.  The maximum amount of Purchaser's obligations under clauses (i), (ii) and (v) above shall be $975,000.00.  Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date.

**12.3**    **Limitations on Agreements to Indemnify.**   The obligations of either Party to indemnify the other pursuant to this Article 12 are subject to the following limitations:

**12.3.1**  Each Party agrees that, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by the other Party of any representation, warranty, agreement or covenant contained in this Agreement, and that there shall be no other remedy for any breach by a party in respect of any claim for monetary damages arising out of or under this Agreement;

**12.3.2**  In calculating amounts payable to an indemnified party, the amount of any indemnified Purchaser Damages or Seller Damages, as the case may be, shall be determined without duplication of any other damages for which a claim has been made or could be made under any other representation, warranty, covenant or agreement included herein;

**12.3.3**  Any written notice delivered by an indemnified party to an indemnifying party seeking indemnification pursuant to this Agreement shall set forth, with as much specificity as is reasonably practicable, the basis of the claim, the sections of this Agreement which form the basis for the claim, and, to the extent reasonably practicable, a reasonable estimate of the amount of the Purchaser Damages or Seller Damages, as the case may be, that have been or may be sustained by such indemnified party; and

**12.3.4**  Notwithstanding any other provision of this Agreement, in no event shall an indemnified party be entitled to indemnification pursuant to this Agreement to the extent any Purchaser Damages or Seller Damages, as the case may be, were attributable solely to the indemnified party's own gross negligence or willful misconduct.

**12.3.5**  No indemnifying party shall be liable to an indemnified party until the amount of all indemnifiable damages of such indemnified party in the aggregate exceeds USD

45

$20,000.00, after which point the indemnifying party will be obligated to the indemnified party for all damages (and not just the amount in excess of such amount).

To the extent an indemnifying party makes any indemnification payment pursuant this Article 12 for which the indemnified party has a right to recover against a third party (including an insurance company), the indemnifying party shall be subrogated to the right of the indemnified party to seek and obtain recovery from such third party.

**12.4    Third Party Indemnification Procedures.**   The obligations of any indemnifying party to indemnify any indemnified party under Sections 12.1 or 12.2 with respect to Purchaser Damages or Seller Damages, as the case may be, resulting from the assertion of liability by third parties (including Governmental Entities) (an "**Indemnification Claim**"), shall be subject to the following terms and conditions:

**12.4.1**  Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of Section 12.3.3), and, to the extent such matter involves a third party claim, the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party. Failure to give prompt written notice of a Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 12, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice.  The indemnified party, at the indemnifying party's expense, shall, and shall cause its employees and representatives to, reasonably cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within thirty (30) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party.

**12.4.2**  Anything in this Section 12.4 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne exclusively by the indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

**13.    MISCELLANEOUS:**

**13.1    Bulk Sales Laws.**  Seller and Purchaser hereby waive compliance by Seller with the provisions of the bulk sales Law of any state or foreign jurisdiction.

**13.2    Notices.**  All notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first

business day after sent by reputable overnight carrier, or on the third business day after sent by registered or certified first class mail (with receipt confirmed), to the following:

<div style="margin-left:2em">

**If to Seller:**    **MOBILEARIA, INC.**
c/o Delphi Corporation
2151 East Lincoln Road
Kokomo, Indiana 46904
Attn:  Ronald E. Jobe, General Director, Finance
Fax No.:  765-451-0210

**With a copy to:**    **DELPHI CORPORATION**
5725 Delphi Drive
Troy, Michigan 48098
Attn:  Assistant General Counsel - Commercial & Transactional
Fax No.:  248-813-2491

**With a copy to:**    **DLA Piper**
2000 University Avenue
East Palo Alto, California  94303
Attn:  Jim Koshland
Fax No.:  650-833-2001

**If to Purchaser:**    **WIRELESS MATRIX USA, INC.**
12369B Sunrise Valley Drive
Reston, Virginia, 20190
Attn:  Maria Izurieta
Fax No.:  703-262-4013

With a copy to:    **COOLEY GODWARD LLP**
11951 Freedom Drive
Reston, VA 20190
Attn:  Ryan E. Naftulin, Esq.
Fax No.:  (703) 456-8100

</div>

provided, however, if either Party shall have designated a different addressee by notice, then to the last addressee so designated.

**13.3**    **Assignment**.  This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties and their Affiliates, but no rights, obligations, duties or liabilities of either Party may be assigned without the prior written consent of the other, which shall not be unreasonably withheld.

**13.4**    **Entire Agreement**.  This Agreement, together with the Ancillary Agreements, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein.  This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5**    **Waiver**.  Any waiver by Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be construed as, a

continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6    Severability.**  Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7    Amendment.**  This Agreement may only be amended only in writing by duly authorized representatives or officers of the Parties.

**13.8    Expenses.**  Except as otherwise expressly provided in Section 9.3 of this Agreement or an Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9    Third Parties.**  Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10  Headings.**  The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11  Counterparts.**  More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.

**13.12  Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13  Public Announcements.**  Seller and Purchaser will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation.

**13.14  Sales or Transfer Taxes.**  All sales taxes, documentary and stamp taxes, transfer taxes, use taxes, gross receipts taxes, excise taxes, value-added gross receipt taxes or similar charges and all charges for filing and recording documents in connection with the

transfer of the Acquired Assets (including intellectual property filing and recording fees) shall be paid by Purchaser.

**13.15** **Venue and Retention of Jurisdiction.** All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

**13.16** **Risk of Loss.** Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Seller.

**13.17** **Enforcement of Agreement.** The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

**13.18** **Dispute Resolution.** Seller and Purchaser will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Ancillary Agreement by good faith negotiations by senior management of each party. If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute. Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response. The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties. Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored promptly. All negotiations pursuant to this Section 13.18 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.15 above.

**13.19** **No Right of Setoff.** Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

**13.20** **Limitation on Damages.** NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASER OR SELLER BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed by their duly authorized officers.

**MOBILEARIA, INC.**                    **WIRELESS MATRIX USA, INC.**

By:

By:

Print Name:                              Print Name:    J. Richard Carlson

Title:                                   Title:    CEO and President

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed by their duly authorized officers

MOBILEARIA, INC.                          **WIRELESS MATRIX USA, INC.**

By _Richard Clink_                        By
Print Name _Richard Clink_                Print Name
Title _President_                         Title

| Counterparty | Agreement |
| --- | --- |
| 12 Planet, Inc. | Mutual Confidentiality Agreement effective July 17, 2002 betweenMobileAria, Inc. and I2 Planet, Inc. |
| A2S Advanced Systems Solutions Limited | Mutual Confidentiality Agreement effective February 28, 2002 betweenMobileAria, Inc. and A2S Advanced Systems Solutions Limited |
| Absolute Wireless Inc. | Installation Services Agreement dated May 11, 2006 between MobileAria, Inc. and Absolute Wireless Inc. |
| Accounting Services | Standard Engagement Terms and Fee Schedule Letter for accounting services dated October 31, 2000 from ManageComm, Inc. to MobileAria, Inc. |
| Acevedo, Natalie | Employee Assignment and Proprietary Inventions assignment agreements |
| ACNielson Vantis | Confidentiality Agreement effective June 29, 2001 betweenMobileAria, Inc. and ACNielson Vantis |
| Active RFID Systems, Inc. | Mutual Confidentiality Agreement effective October 5, 2005 betweenMobileAria, Inc. and Active RFID Systems, Inc. |
| AdvanTel, Inc. | Maintenance Service Agreement dated March 13, 2003 by and between MobileAria, Inc. and AdvanTel, Inc. |
| Advantra International NV | Agreement effective September 11, 2003 betweenMobileAria, Inc. and Advantra International NV |
| Alcoff, Ed | Employee Assignment and Proprietary Inventions assignment agreements |
| ALK Technologies/TravRoute | Mutual Confidentiality Agreement effective June 15, 2001 betweenMobileAria, Inc. and ALK Technologie/TravRoute |
| AmBell Corporation | Mutual Confidentiality Agreement effective April 30, 2000 betweenMobileAria, Inc. and AmBell Corporation |
| Apache Software Foundation | Apache License Version 2.0, January 2004 |
| Aragon, Vincent | Employee Assignment and Proprietary Inventions assignment agreements |
| Arsenault Associates | Mutual Confidentiality Agreement effective February 21, 2001 betweenMobileAria, Inc. and Arsenault Associates |
| Asefaw, Solomon | Employee Assignment and Proprietary Inventions assignment agreements |
| Asset Growth Partners, Ltd. | Standard Office Lease dated March 6, 2003 by and betweenMobileAria, Inc. and Asset Growth Partners, Ltd., as amended. |
| Auto Club of America | Mutual Confidentiality Agreement effective March 16, 2001 betweenMobileAria, Inc. and Auto Club of America |
| Automobile Club of Southern California | Reciprocal Non-Disclosure Agreement effective April 25, 2001 betweenMobileAria, Inc. and Automobile Club of Southern California |
| Auto Page Unlimited Inc. | Installation Services Agreement dated June 12, 2006 between MobileAria, Inc. and Auto Page Unlimited Inc. |
| BMC Software Distribution, Inc. | Agreement between Remedy Software and Seller for Remedy software and maintenance as evidenced by Remedy Invoice Number CMG121272 dated August 9, 2005, Remedy Invoice Number CMG1215124 dated February 17, 2006, WIPRO / CMango Invoice number WIPRO-14 dated May 9, 2006, BMC Software Invoice Number 6226052 dated June 14, 2006 and Remedy Software Contract Number 52856 |
| BMC Software Distribution, Inc. | Agreement between Remedy Software and Seller for Remedy software and maintenance as evidenced by Remedy Invoice Number CMG121272 dated August 9, 2005, Remedy Invoice Number CMG1215124 dated February 17, 2006, WIPRO / CMango Invoice number WIPRO-14 dated May 9, 2006, BMC Software Invoice Number 6226052 dated June 14, 2006 and Remedy Software Contract Number 52856 |
| Babichev, Alexander | Employee Assignment and Proprietary Inventions assignment agreements |
| Bagga, Neeraj | Employee Assignment and Proprietary Inventions assignment agreements |
| Bathula, Satya | Employee Assignment and Proprietary Inventions assignment agreements |
| Blum, Rodney | Employee Assignment and Proprietary Inventions assignment agreements |
| Bobcat Company | Confidentiality Agreement effective April 16, 2003 betweenMobileAria, Inc. and Bobcat Company |
| Bolsh, Alan | Employee Assignment and Proprietary Inventions assignment agreements |
| Booz-Allen & Hamilton, Inc. | Confidentiality Agreement effective December 15, 2000 betweenMobileAria, Inc. and Booz Allen & Hamilton Inc. |
| Bortoli, Chris | Employee Assignment and Proprietary Inventions assignment agreements |
| Boulder Global Development Group, LLC | Mutual Confidentiality Agreement effective May 8, 2001 betweenMobileAria, Inc. and Boulder Global Development Group, LLC. |
| BP Amoco Chemical Company | Confidentiality Agreement effective May 5, 2003 betweenMobileAria, Inc. and BP Amoco Chemical Company |
| BP Products North America, Inc. | BP and MobileAria AMPS Airtime Services Agreement effective March 2003 by and betweenBP Products North America, Inc. and MobileAria, Inc. |
| BP Products North America | MobileAria Fleet Telematics Services Agreement between MobileAria, Inc. and BP Products North America, Inc., dated January 17, 2003 |
| Breo Ventures, LLC | Confidentiality Agreement effective October 20, 2000 betweenMobileAria, Inc. and Breo Ventures, LLC. |
| Bridgetown Communications | Installation Services Agreement dated June 13, 2006 between MobileAria, Inc. and Bridgetown Communications. |
| Bridgetown Communications | Mutual Confidentiality Agreement between MobileAria, Inc. and Bridgetown Communications dated June 13, 2006 |
| BrightPoint | Settlement and Release Agreement dated June 28, 2002 between MobileAria, Inc. and BrightPoint. |
| Brockway, Jared | Employee Assignment and Proprietary Inventions assignment agreements |
| Brown, Craig | Employee Assignment and Proprietary Inventions assignment agreements |
| Buena Vista Internet Group | Mutual Nondisclosure Agreement effective December 8, 2000 betweenMobileAria, Inc. and Buena Vista Internet Group |
| Cameron, Deborah L. | Mutual Confidentiality Agreement effective January 21, 2003 betweenMobileAria, Inc. and Deborah L. Cameron |
| CAT Technology | Mutual Confidentiality Agreement effective January 9, 2001 betweenMobileAria, Inc. and CAT Technology |
| Catalyst Capital Partners, Inc. | Confidentiality Agreement effective May 11, 2004 betweenMobileAria, Inc. and Catalyst Capital Partners, Inc. |
| Cellco Partnership d/b/a Verizon Wireless | Joint Marketing Agreement between MobileAria, Inc. and Cellco d/b/a Verizon Wireless. |
| Cellco Partnership dba Verizon Wireless | Mutual nondisclosure agreement #750-02132-2004 effective January 1, 2005 by and betweenCellco Partnership dba Verizon Wireless and MobileAria, Inc. |
| Cellocator, Ltd. | Demonstration Confidentiality Agreement effective September 19, 2001 between MobileAria, Inc. and Coradiant Inc. |
| Cellport Systems, Inc. | Mutual Confidentiality Agreement effective March 16, 2001 betweenMobileAria, Inc. and CellPort Systems, Inc. |
| Centrality Communications, Inc. | Mutual Confidentiality Agreement effective September 8, 2004 betweenMobileAria, Inc. and Centrality Communications, Inc. |
| Certicom International Corp. | Mutual Confidentiality Agreement effective January 28, 2003 betweenMobileAria, Inc. and Certicom International Corp. |
| Chan, Andrew | Employee Assignment and Proprietary Inventions assignment agreements |
| Chander, Bala | Employee Assignment and Proprietary Inventions assignment agreements |
| Chanderraju, Varma | Employee Assignment and Proprietary Inventions assignment agreements |
| Chen, Juilin | Employee Assignment and Proprietary Inventions assignment agreements |
| Chernov, Vladimir | Employee Assignment and Proprietary Inventions assignment agreements |
| Chhabra, Maninder | Employee Assignment and Proprietary Inventions assignment agreements |
| Cho Graphics | Confidentiality Agreement effective August 15, 2001 betweenMobileAria, Inc. and Cho Graphics |
| Chung, Chi | Employee Assignment and Proprietary Inventions assignment agreements |
| Cisco Systems | Mutual Confidentiality Agreement effective March 16, 2001 betweenMobileAria, Inc. and Cisco Systems |
| Clarity, LLC | Mutual Confidentiality Agreement effective February 4, 2002 betweenMobileAria, Inc. and Clarity, LLC |
| Clarke, Jeffrey | Employee Assignment and Proprietary Inventions assignment agreements |

| Counterparty | Agreement |
| --- | --- |
| CMango Services Management Company | Agreement between Remedy Software and Seller for Remedy software and maintenance as evidenced by Remedy Invoice Number CMG121272 dated August 9, 2005, Remedy Invoice Number CMG1215124 dated February 17, 2006, WIPRO / CMango Invoice number WIPRO-14 dated May 9, 2006, BMC Software Invoice Number 6226052 dated June 14, 2006 and Remedy Software Contract Number 52856 |
| CMango Services Management Company | Agreement between Remedy Software and Seller for Remedy software and maintenance as evidenced by Remedy Invoice Number CMG121272 dated August 9, 2005, Remedy Invoice Number CMG1215124 dated February 17, 2006, WIPRO / CMango Invoice number WIPRO-14 dated May 9, 2006, BMC Software Invoice Number 6226052 dated June 14, 2006 and Remedy Software Contract Number 52856 |
| CMANGO, Inc. | Agreement between Remedy Software and Seller for Remedy software and maintenance as evidenced by Remedy Invoice Number CMG121272 dated August 9, 2005, Remedy Invoice Number CMG1215124 dated February 17, 2006, WIPRO / CMango Invoice number WIPRO-14 dated May 9, 2006, BMC Software Invoice Number 6226052 dated June 14, 2006 and Remedy Software Contract Number 52856 |
| CMG, Inc. | Mutual Confidentiality Agreement effective January 28, 2002 betweenMobileAria, Inc. and The Crystal Mountain Group (CMG), Inc. |
| Conlisk, Steve | Employee Assignment and Proprietary Inventions assignment agreements |
| Consortium Executive Search | Settlement and Release Agreement dated June 5, 2002 between MobileAria, Inc. and Consortium Executive Search. |
| CONTEX Engineering International, Inc. | Mutual Confidentiality Agreement effective September 5, 2002 betweenMobileAria, Inc. and CONTEX Engineering International, Inc. |
| Coradiant Inc. | Demonstration Confidentiality Agreement effective September 19, 2001 betweenMobileAria, Inc. and Coradiant Inc. |
| Courreges, Nicolas | Employee Assignment and Proprietary Inventions assignment agreements |
| Creative & Response Research | Confidentiality Agreement effective June 28, 2001 betweenMobileAria, Inc. and Creative & Response Research |
| Cross Country Global ITS Services Corp. | Mutual Confidentiality Agreement effective February 7, 2003 betweenMobileAria, Inc. and Cross Country Global ITS Services Corp. |
| CTA Consulting | Mutual Confidentiality Agreement effective April 30, 2004 betweenMobileAria, Inc. and CTA Consulting |
| Cusanza, Christopher | Employee Assignment and Proprietary Inventions assignment agreements |
| CustomWeather, Inc. | Mutual Confidentiality Agreement effective June 10, 2003 betweenMobileAria, Inc. and CustomWeather, Inc. |
| Cyron, Alan | Employee Assignment and Proprietary Inventions assignment agreements |
| Cytranz, Inc. | Mutual Confidentiality Agreement effective November 12, 2002 betweenMobileAria, Inc. and Cytranz, Inc. |
| Dange, Milind | Employee Assignment and Proprietary Inventions assignment agreements |
| Data Dimensions | Confidentiality Agreement effective June 11, 2001 betweenMobileAria, Inc. and Sadiq Patankar |
| Datascan Technologies, Inc. | Mutual Confidentiality Agreement effective April 19, 2005 betweenMobileAria, Inc. and Datascan Technologies, Inc. |
| Davies, Jonathan | Employee Assignment and Proprietary Inventions assignment agreements |
| Dean, Philip | Employee Assignment and Proprietary Inventions assignment agreements |
| Dejai Pty Ltd | Mutual Confidentiality Agreement effective June 2, 2004 betweenMobileAria, Inc. and Dejai Pty Ltd and/or RoadPilot (Asia Pacific) Pty Ltd. |
| Dhingra, Ruchika | Employee Assignment and Proprietary Inventions assignment agreements |
| DHL Danzas | Danzas AE Customs Brokerage Services Invoice No. 107698954 dated June 6, 2006 |
| Dokakis, Anna | Employee Assignment and Proprietary Inventions assignment agreements |
| Doraiswami, Vijayaraghavan | Consulting Agreement dated December 16, 2005 between Vijayaraghavan Doraiswamiand the Seller. |
| Dow Jones & Company, Inc. | Nondisclosure Agreement effective June 8, 2001 betweenMobileAria, Inc. and Dow Jones & Company Inc. |
| DPAC Technologies | Mutual Confidentiality Agreement effective July 29, 2004 betweenMobileAria, Inc. and DPAC Technologies |
| Dubrovsky, Vladimir | Employee Assignment and Proprietary Inventions assignment agreements |
| Duffy, Darrell | Employee Assignment and Proprietary Inventions assignment agreements |
| Duko, Artur | Employee Assignment and Proprietary Inventions assignment agreements |
| Durand, Kimberly | Employee Assignment and Proprietary Inventions assignment agreements |
| Eletel Inc. | Mutual Confidentiality Agreement effective July 20, 2001 betweenMobileAria, Inc. and Eletel Inc. |
| Ember Corporation | Mutual Confidential Disclosure Agreement effective July 2, 2003 betweenMobileAria, Inc. and Ember Corporation |
| EMS Technologies Canada, Ltd. | Mutual Confidentiality Agreement effective October 16, 2002 betweenMobileAria, Inc. and EMS Technologies Canada, Ltd. |
| Enterprise Information Solutions, Inc. | Mutual Confidentiality Agreement effective February 27, 2004 betweenMobileAria, Inc. and Enterprise Information Solutions, Inc. |
| Ericsson Inc. | Mutual Confidentiality Agreement effective July 10, 2001 betweenMobileAria, Inc. and Ericsson Inc. |
| Esex Electronics, Inc. | Mutual Confidentiality Agreement effective August 25, 2003 betweenMobileAria, Inc. and Essex Electronics Incorporated |
| Esmonde, Richard | Employee Assignment and Proprietary Inventions assignment agreements |
| Esparza, Robert | Employee Assignment and Proprietary Inventions assignment agreements |
| Exelon Corporation | Confidentiality and Nondisclosure Agreement effective March 29, 2006 betweenExelon Corporation and MobileAria, Inc |
| Extended Systems of Idaho, Inc. | Settlement and Release Agreement dated May 30, 2002 between MobileAria, Inc. and Extended Systems of Idaho, Inc.B99Settlement and Release Agreement dated May 30, 2002 between MobileAria, Inc. and Extended Systems of Idaho, Inc. |
| Extended Systems Incorporated | Mutual Non-Disclosure effective November 14, 2001 between MobileAria, Inc. and Extended Systems Incorporated |
| Fairbank, Daniel | Employee Assignment and Proprietary Inventions assignment agreements |
| FedEx Ground Package System, Inc. | Mutual Nondisclosure Agreement effective April 29, 2005 betweenMobileAria, Inc. and FedEx Ground Package System, Inc. |
| Ferdowsian, Zoya | Employee Assignment and Proprietary Inventions assignment agreements |
| FleetRisk Advisors, LLC | Mutual Confidentiality Agreement effective June 22, 2004 between MobileAria, Inc. and FleetRisk Advisors, LLC |
| Fonix Corporation | Mutual Confidentiality Agreement effective May 23, 2006 between MobileAria, Inc. and Fonix Corporation |
| Forrester Research | Confidentiality Agreement effective September 19, 2001 betweenMobileAria, Inc. and Forrester Research |
| Freightliner LLC | Confidentiality and Non-Disclosure Agreement for Proprietary Information effective June 7, 2001 betweenMobileAria, Inc. and Freightliner LLC |
| Gayles, Edward | Employee Assignment and Proprietary Inventions assignment agreements |
| Gearworks Inc. | Mutual Confidentiality Agreement effective May 9, 2001 betweenMobileAria, Inc. and Gearworks, Inc. |
| GenX Mobile Incorporated | Mutual Confidentiality Agreement effective November 30, 2004 betweenMobileAria, Inc. and Genx Mobile Incorporated |
| Geographic Data Technology, Inc. | Mutual Confidentiality Agreement effective February 14, 2001 betweenMobileAria, Inc. and Geographic Data Technology, Inc. |
| Ghazanfari, Ira | Employee Assignment and Proprietary Inventions assignment agreements |

| Counterparty | Agreement |
| --- | --- |
| Giffin, Doug | Employee Assignment and Proprietary Inventions assignment agreements |
| Globespan Virata, Inc. | Mutual Confidentiality Agreement effective September 17, 2004 between MobileAria, Inc. and GlobespanVirata, Inc. |
| Go2 Systems, Inc. | Mutual Confidentiality Agreement effective January 24, 2001 between MobileAria, Inc. and Go2 Systems, Inc. |
| Gordienko, Eugene | Employee Assignment and Proprietary Inventions assignment agreements |
| Grober, Rochelle | Employee Assignment and Proprietary Inventions assignment agreements |
| Hall, Kenneth | Employee Assignment and Proprietary Inventions assignment agreements |
| Halliburton Energy Services, Inc. | Confidentiality Agreement effective March 4, 2004 between MobileAria, Inc. and Halliburton |
| Hearney, Michael | Employee Assignment and Proprietary Inventions assignment agreements |
| Hi-G-Tek Ltd. | Mutual Confidentiality Agreement effective March 3, 2003 between MobileAria, Inc. and Hi-G-Tek Ltd. |
| Holzman, Mathew | Employee Assignment and Proprietary Inventions assignment agreements |
| Houlihan Lokey Howard & Zukin | Mutual Confidentiality Agreement effective February 3, 2005 between MobileAria, Inc. and Houlihan Lokey Howard & Zukin |
| IBM | IBM Agreement for Exchange of Confidential Information effective July 25, 2002 between MobileAria, Inc. and International Business Machines Corporation and related Confidential Disclosure Agreement – Supplement for Disclosure effective February 15, 2006 |
| IDEO | Settlement and Release Agreement dated June 5, 2002 between MobileAria, Inc. and IDEO. |
| IITRON, Taipei, Taiwan | Mutual Confidentiality Agreement effective June 20, 2001 between MobileAria, Inc and IITRON |
| Indus International, Inc. | Mutual Confidentiality Agreement effective March 13, 2006 between MobileAria, Inc. and Indus International, Inc. |
| Infobahn Software World | Settlement and Release Agreement dated April 18, 2002 between MobileAria, Inc. and Infobahn Software World. |
| InfoGation Corp. | Mutual Confidentiality Agreement effective June 12, 2001 between MobileAria, Inc. and InfoGation Corp. |
| InfoSpace, Inc. | Mutual Confidentiality Agreement effective May 23, 2001 between MobileAria, Inc. and InfoSpace, Inc. |
| Innovative Software Engineering, L.L.C. | Reciprocal Non-Disclosure Agreement effective October 10, 2005 between MobileAria, Inc. and Innovative Software Engineering, LLC. |
| Innvo Systems Pte Ltd | Mutual Confidentiality Agreement effective April 29, 2003 between MobileAria, Inc. and Innvo Systems Pte Ltd |
| Intel Corporation | Corporate Non-Disclosure Agreement effective November 6, 2003 between MobileAria, Inc. and Intel Corporation |
| InterNap | Mutual Confidentiality Agreement effective June 20, 2001 between MobileAria, Inc. and InterNap |
| International Truck & Engine Corporation | Mutual Confidentiality Agreement effective January 17, 2003 between MobileAria, Inc. and International Truck & Engine Corporation (ITEC) |
| Internet MainStreet, Inc. | Settlement and Release Agreement dated June 7, 2002 between MobileAria, Inc. and the Internet MainStreet, Inc. |
| Intrinsyc Software International, Inc. | Mutual Confidentiality Agreement effective April 19, 2005 between MobileAria, Inc. and Intrinsyc Software International, Inc. |
| Iridium Satellite LLC | Mutual Non-Disclosure Agreement effective May 7, 2003 between MobileAria, Inc. and Iridium Satellite LLC |
| Iron Mountain | Three-Party Escrow Service Agreement effective April 7, 2006 by and between MobileAria, Inc. and its affiliates and subsidiaries, Verizon Services Corp and Iron Mountain Intellectual Property Management, Inc. |
| Iteris, Inc. | Mutual Confidentiality Agreement effective September 22, 2002 between MobileAria, Inc. and Iteris, Inc. |
| Itochu Technology, Inc. | Mutual Confidentiality Agreement effective July 16, 2001 between MobileAria, Inc and Itochu Technology Inc. |
| Ivus Technical Services, Inc. | Mutual Confidentiality Agreement effective May 1, 2001 between MobileAria, Inc and Ivus Technical Services, Inc. |
| IXI Mobile | Mutual Confidentiality Agreement effective April 13, 2000 between MobileAria, Inc and IXI Mobile |
| J. B. Hunt | Mutual Confidentiality Agreement effective May 24, 2005 between MobileAria, Inc and JB Hunt, LLC. |
| Jain, Monali | Employee Assignment and Proprietary Inventions assignment agreements |
| JCorporate Inc. | JSPtags (JSP Tags) and Jgroup Software license |
| Jester, Daniel | Employee Assignment and Proprietary Inventions assignment agreements |
| Johnson, Suena | Employee Assignment and Proprietary Inventions assignment agreements |
| Joseph, Dwight | Employee Assignment and Proprietary Inventions assignment agreements |
| JP Systems, Inc. | Mutual Confidentiality Agreement effective November 21, 2000 between MobileAria, Inc and JP Systems, Inc. |
| Kalman, Israel | Mutual Confidentiality Agreement effective March 11, 2004 between MobileAria, Inc and Israel Kalman |
| Kienhofer, Juergen | Employee Assignment and Proprietary Inventions assignment agreements |
| Kim, Jay | Employee Assignment and Proprietary Inventions assignment agreements |
| King, Chuck | Mutual Confidentiality Agreement effective August 12, 2003 between MobileAria, Inc and Chuck King |
| Kinzie, Al | Mutual Confidentiality Agreement effective January 31, 2006 between MobileAria, Inc and Al Kinzie |
| Kirsen Technologies Corp. | Mutual Confidentiality Agreement effective January 25, 2004 between MobileAria, Inc and Kirsen Technologies, Corp. |
| Kiryung Electronics | Mutual Confidentiality Agreement effective December 16, 2003 between MobileAria, Inc and Kiryung Electronics |
| Kodancha, Vinay | Employee Assignment and Proprietary Inventions assignment agreements |
| Kolkowitz, Dan | Employee Assignment and Proprietary Inventions assignment agreements |
| Krishnamurthy, Rajesh | Employee Assignment and Proprietary Inventions assignment agreements |
| Lagodsky, Alla | Employee Assignment and Proprietary Inventions assignment agreements |
| Lai, Alan | Employee Assignment and Proprietary Inventions assignment agreements |
| Lat-Lon, LLC | Mutual Confidentiality Agreement effective April 28, 2003 between MobileAria, Inc and Lat-Lon, LLC |
| LetsTalk.com, Inc. | Settlement and Release Agreement dated May 29, 2002 between MobileAria, Inc. and LetsTalk.com, Inc. |
| LG Infocomn Inc. | Mutual Confidentiality Agreement effective July 17, 2001 between MobileAria, Inc and LG Infocomn, Inc. |
| Lion Bridge Tech. | Mutual Confidentiality Agreement effective September 18, 2001 between MobileAria, Inc and Lion Bridge Tech |
| Liston, Rachel | Employee Assignment and Proprietary Inventions assignment agreements |
| Liu, Gong | Employee Assignment and Proprietary Inventions assignment agreements |
| LogikKos, Inc. | Mutual Confidentiality Agreement effective December 9, 2002 between MobileAria, Inc and Logikos, Inc. |
| Lu, Linda | Employee Assignment and Proprietary Inventions assignment agreements |
| Lucent Technologies Inc. | Non-Disclosure Agreement effective October 6, 2005 between MobileAria, Inc and Lucent Technologies, Inc. |
| Lunsford, Eric | Employee Assignment and Proprietary Inventions assignment agreements |
| Lynn, Owen | Employee Assignment and Proprietary Inventions assignment agreements |
| Mahesh, Subramanian | Employee Assignment and Proprietary Inventions assignment agreements |
| MAI Mark Airington Installations | Mutual Nondisclosure Agreement effective June 1, 2006 between MAI Mark Airington Installations and MobileAria, Inc. |
| MAI Mark Airington Installations | Installation Services Agreement effective June 1, 2006 between MAI Mark Airington Installations and MobileAria, Inc. |
| ManageComm, Inc. | Standard Engagement Terms and Fee Schedule Letter for accounting services dated October 31, 2000 from ManageComm, Inc. to MobileAria, Inc. |
| Martin, Kurt | Confidentiality Agreement effective January 24, 2002 between MobileAria, Inc and Kurt Martin |
| McGuinn, Kevin | Employee Assignment and Proprietary Inventions assignment agreements |
| McNish, Ian | Employee Assignment and Proprietary Inventions assignment agreements |
| Mehta, Kaushal | Employee Assignment and Proprietary Inventions assignment agreements |

| Counterparty | Agreement |
| --- | --- |
| Mentora Group, Inc. | Mutual Confidentiality Agreement effective September 11, 2001 betweenMobileAria, Inc and Mentora Group, Inc. |
| Mentora Group, Inc. | Mentora Master Service Agreement effective September 24, 2001 betweenMobileAria, Inc and Mentora Group, Inc. |
| Microsoft Corporation | Microsoft Corporation Non-disclosure agreement (standard reciprocal) effective February 13, 2002 by and between Microsoft Corporation and MobileAria, Inc. |
| Microsoft Corporation | Microsoft Corporation Non-Disclosure Agreement (Standard Reciprocal) effective February 25, 2002 betweenMobileAria, Inc and Microsoft |
| Miles, Brian Keith | Employee Assignment and Proprietary Inventions assignment agreements |
| Milligan, Alan | Employee Assignment and Proprietary Inventions assignment agreements |
| Miskew, John N. | Mutual Confidentiality Agreement effective June 20, 2005 betweenMobileAria, Inc and John Miskew |
| Mitchell International Inc. | Non-disclosure Agreement effective April 21, 2006 by and betweenMitchell International Inc. and MobileAria |
| Mitropoulos, Aphrodite | Employee Assignment and Proprietary Inventions assignment agreements |
| MMC Communications. | Settlement and Release Agreement dated June 6, 2002 betweenMobileAria, Inc and MMC Communications. |
| Mobiapps Inc. | Mutual Confidentiality Agreement effective December 6, 2002 betweenMobileAria, Inc and MobiApps, Inc. |
| MobileBriefs, Inc. | Mutual Confidentiality Agreement effective August 9, 2001 betweenMobileAria, Inc and MobileBriefs, Inc. |
| Mohanram, Narayan | Employee Assignment and Proprietary Inventions assignment agreements |
| More, Deepak | Employee Assignment and Proprietary Inventions assignment agreements |
| Morton, James | Mutual Confidentiality Agreement effective December 2, 2004 betweenMobileAria, Inc and Jim Morton |
| MSI | Installation Services Agreement dated May 11, 2006 between MobileAria, Inc. and MSI |
| MSNBC Interactive News, L.L.C. | MSNBC Interactive News LLC Non-Disclosure Agreement (Non-Standard Reciprocal) effective April 28, 2001 between MobileAria and MSNBC Interactive News, LLC |
| Mulay, Aniruddha | Employee Assignment and Proprietary Inventions assignment agreements |
| Mullen, John | Employee Assignment and Proprietary Inventions assignment agreements |
| Murray, Bradley M | Employee Assignment and Proprietary Inventions assignment agreements |
| Nauslar, Gary | Employee Assignment and Proprietary Inventions assignment agreements |
| NEC BNS | Mutual Confidentiality Agreement effective March 16, 2001 betweenMobileAria, Inc and NEC BNS |
| Networkcar, Inc. | Mutual Confidentiality Agreement effective September 13, 2001 betweenMobileAria, Inc and Networkcar, Inc. |
| Networkcar, Inc. | Mutual Confidentiality Agreement effective May 1, 2001 betweenMobileAria, Inc and Networkcar, Inc. |
| NEXIQ Technologies, Inc. | Mutual Confidentiality Agreement effective March 6, 2001 betweenMobileAria, Inc and NEXIQ Technologies, Inc |
| NFO Technologies, Inc. | Settlement and Release Agreement dated May 31, 2002 between MobileAria, Inc. and NFO Technologies, Inc. |
| NFO WorldGroup, Inc. | Mutual Confidentiality Agreement effective February 5, 2000 betweenMobileAria, Inc and NFO Worldgroup, Inc. |
| Nigam, Rohit | Employee Assignment and Proprietary Inventions assignment agreements |
| Noregon Systems, Inc. | Non-Disclosure Agreement effective September 19, 2002 betweenMobileAria, Inc and Noregon Systems, Inc. |
| Nortel Networks Inc. | Mutual Non-Disclosure Agreement effective October 12, 2005 betweenMobileAria, Inc and Nortel Networks, Inc. |
| Nuance Communications | Non-Disclosure Agreement effective November 29, 2000 between MobileAria, Inc. and Nuance Communications |
| Nuance Communications | Mutual Confidentiality Agreement effective November 29, 2000 betweenMobileAria, Inc and Nuance Communications |
| O'Gara Group, Inc., The | Confidentiality Agreement effective August 9, 2004 betweenMobileAria, Inc and Bill O'Gara |
| O'Gara, Tom | Employee Assignment and Proprietary Inventions assignment agreements |
| ObjectFX Corporation | Mutual Confidentiality Agreement effective February 13, 2003 betweenMobileAria, Inc and ObjectFX Corporation |
| Obot, Jim | Mutual Confidentiality Agreement effective July 14, 2003 betweenMobileAria, Inc and Jim Obot |
| Oliver, Carmell LaVett | Consulting Agreement dated March 24, 2006 between Carmell Oliver and the Seller. |
| Oliver, Carmell LaVett | Independent Contractor Innovations and Proprietary Rights Assignment Agreement between MobileAria, Inc. and Carmell L. Oliver dated March 22, 2006 |
| Openssl License – | Openssl License – |
| Orr, Michael | Settlement and Release Agreement dated May 29, 2002 between MobileAria, Inc. and Michael Orr. |
| Orr, Michael | Employee Assignment and Proprietary Inventions assignment agreements |
| Otel Telecom | Installation Services Agreement dated June 15, 2006 between MobileAria, Inc. and OTEL Telecom |
| Pacyna, Kathleen | Mutual Confidentiality Agreement effective March 25, 2001 betweenMobileAria, Inc and Kathleen Pacyna |
| Palm, Inc. | License and Confidentiality Agreement effective March 15, 2001 betweenMobileAria, Inc. and Palm, Inc. |
| Paoletti, Giovanni | Employee Assignment and Proprietary Inventions assignment agreements |
| PepsiCo, Inc. | Confidentiality and Nondisclosure Agreement effective September 7, 2005 betweenPepsico Inc. and MobileAria, Inc |
| Peruvemba, Subramanian | Employee Assignment and Proprietary Inventions assignment agreements |
| Petersen, Jennifer | Mutual Confidentiality Agreement effective October 2, 2002 betweenMobileAria, Inc. and Jennifer Petersen |
| PHH Arval | Letter of Intent dated August 11, 2004 between PHH Vehicle Management Services and MobileAria, Inc |
| PHH Vehicle Management Services, LLC | Confidentiality Agreement effective July 14, 2004 betweenPHH Vehicle Management Services, LLC and MobileAria, Inc |
| PHH Vehicle Management Services, LLC (PHH | Fleetoutlook Services Agreement dated June 10, 2006 between MobileAria, Inc. and PHH Vehicle Management Services, LLC |
| Pillarsetty, Kavitha | Employee Assignment and Proprietary Inventions assignment agreements |
| Pliskin, Dan | Employee Assignment and Proprietary Inventions assignment agreements |
| Plude, Scott | Employee Assignment and Proprietary Inventions assignment agreements |
| PolarCom Inc. | Mutual Nondisclosure Agreement effective May 30, 2006 by and betweenPolarcom Inc. and MobileAria, Inc. |
| PolarCom Inc. | Installation Services Agreement effective May 30, 2006 between MobileAria and PolarCom, Inc. |
| Prabhu, Naveen | Employee Assignment and Proprietary Inventions assignment agreements |
| Prolificx Group | Mutual Confidentiality Agreement effective January 10, 2005 betweenMobileAria, Inc and Prolificx Group |
| Prolifix New Zealand Ltd. | Manufacturing Services and License Agreement between MobileAria, Inc. and Prolificx New Zealand LTD and made and entered into as of August 1, 2005 as amended |
| Puerto Rico Telephone | Mutual Confidentiality Agreement effective September 29, 2005 betweenMobileAria, Inc and Puerto Rico Telephone |
| Pumatech, Inc. | Mutual Confidentiality Agreement march 9, 2001 betweenMobileAria, Inc and Pumatech, Inc. |
| Quake Global, Inc. | Quake Global, Inc. Mutual Non-Disclosure Agreement effective May 14, 2003 betweenMobileAria, Inc and Quake Global, Inc. |
| Qualnetics Corporation | Services and Licensing Agreement dated March 1, 2006 betweenQualnetics Corporation and MobileAria, Inc. |
| Qualnetics Corporation | Mutual Confidentiality Agreement effective July 19, 2004 betweenMobileAria, Inc and Qualnetics Corporation |
| Qwest Communications Corporation | Qwest Total Advantage Agreement effective May 10, 2004 between Qwest Communications Corporation and MobileAria, Inc. |
| QWest Interprise Networking | QWest Interprise Networking Invoice # 30122677 dated November 17, 2005 |
| R Systems, Inc. | Call Center Services Agreement effective October 31, 2005, between MobileAria, Inc. and R Systems, Inc. |
| Rajagopalan, Subhasri | Employee Assignment and Proprietary Inventions assignment agreements |
| Rajani, Purvi | Employee Assignment and Proprietary Inventions assignment agreements |

| Counterparty | Agreement |
|---|---|
| Ramasubramanian, Ramasamy | Employee Assignment and Proprietary Inventions assignment agreements |
| Rand McNally & Company | Mutual Confidentiality Agreement effective August 7, 2002 betweenMobileAria, Inc and Rand McNally & Company |
| Red Hat, Inc. | Agreement between MobileAria, Inc. and Red Hat, Inc. |
| Remote Communications Company | Installation Services Agreement effective May 15, 2006 by and betweenMobileAria, Inc. and Remote Communications Company. |
| Response Services Center, LLC | Mutual Confidentiality Agreement effective January 25, 2001 betweenMobileAria, Inc and Responsive Services Center, LLC |
| Reyes, Raul | Independent Contractor Services Agreement effective May 30, 2006 by and betweenMobileAria, Inc. and Mr. Raul Reyes. |
| Reyes, Raul | Independent Contractor Innovations and Proprietary Rights Assignment Agreement between MobileAria, Inc. and Raul Reyes dated May 24, 2006 |
| R.F. Solutions | Settlement and Release Agreement dated May 31, 2002 between MobileAria, Inc. and R.F. Solutions. |
| Richion, Michael | Employee Assignment and Proprietary Inventions assignment agreements |
| RightNow Technologies, Inc. | Settlement and Release Agreement dated June 4, 2002 between MobileAria, Inc. and RightNow Technologies, Inc. |
| Riley, David | Employee Assignment and Proprietary Inventions assignment agreements |
| Riviere, Pablo | Employee Assignment and Proprietary Inventions assignment agreements |
| Robidart Asssociates, Inc. | Mutual Confidentiality Agreement effective August 4, 2003 betweenMobileAria, Inc and Robidart Associates, Inc. |
| Robinson, Peter | Employee Assignment and Proprietary Inventions assignment agreements |
| Rockcastle, Ted | Employee Assignment and Proprietary Inventions assignment agreements |
| Rosenberg, Mitchell | Employee Assignment and Proprietary Inventions assignment agreements |
| Ryder System, Inc. | Mutual Confidentiality Agreement effective June 1, 2005 betweenMobileAria, Inc and Ryder Systems, Inc. |
| Saleem, Hammad | Employee Assignment and Proprietary Inventions assignment agreements |
| Saama Technologies, Inc. | Settlement and Release Agreement. dated May 29, 2002 between MobileAria, Inc. and Saama Technologies, Inc. |
| Sanoyca, Andre | Employee Assignment and Proprietary Inventions assignment agreements |
| Schlumberger Technology Corporation | Confidentiality Agreement effective June 8, 2005 betweenMobileAria, Inc and Schlumberger Technology Corporation |
| Scott Kornak Consulting | Mutual Confidentiality Agreement effective November 21, 2005 betweenMobileAria, Inc. and Scot Kornak |
| Seapine Software, Inc. | Settlement and Release Agreement between MobileAria, Inc. and Seapine Software, Inc. |
| Sentelligence, Inc. | Mutual Confidentiality Agreement effective May 13, 2003 betweenMobileAria, Inc and Sentelligence, Inc. |
| Shao, Victor | Employee Assignment and Proprietary Inventions assignment agreements |
| Shembekar, Seema | Employee Assignment and Proprietary Inventions assignment agreements |
| Sierra Wireless, Inc. | Mutual Confidentiality Agreement effective September 3, 2004 betweenMobileAria, Inc and Sierra Wireless, Inc. |
| Sinha, Prokash | Employee Assignment and Proprietary Inventions assignment agreements |
| SiriCOMM, Inc. | Mutual Confidentiality Agreement effective April 4, 2002 by and betweenSiriCOMM, Inc. and MobileAria, Inc. |
| Smartroute Systems | Mutual Confidentiality Agreement effective January 16, 2001 by and betweenSmartroute Systems and MobileAria, Inc. |
| Smith, Lisa | Employee Assignment and Proprietary Inventions assignment agreements |
| softDSP Co. Ltd | Nondisclosure Confidential Agreement effective November 28, 2003 by and betweensoftDSP Co. Ltd. and MobileAria, Inc. |
| softDSP Co. Ltd | Mutual Confidentiality Agreement effective December 8, 2003 by and betweenSoftDSP and MobileAria, Inc. |
| Software SETT Corporation | Mutual Confidentiality Agreement effective September 12, 2001 by and betweenSoftware Sett Corp. and MobileAria, Inc. |
| Sonic Software Corporation | Master Professional Services Agreement dated August 29, 2005 by and betweenMobileAria, Inc. and Sonic Software Corporation. |
| Sonic Software Corporation | Sonic MQ Version 6.1 End User Product License Agreement (for Invoice Order dated July 28, 2005). |
| Sprint Spectrum L.P. (d/b/a Sprint) | PCS Telemetry Services Agreement dated April 3, 2003 by and between Sprint Spectrum L.P., d/b/a Sprint PCS and MobileAria, Inc. |
| Sprint/United Management Company | Mutual Non-Disclosure Agreement effective November 29, 2005 by and betweenSprint/United Management Company and MobileAria |
| SRI Consulting Business Intelligence | Confidentiality Agreement effective May 31, 2001 by and betweenSRI Consulting Business Intelligence and MobileAria, Inc. |
| Stempler, Gary | Employee Assignment and Proprietary Inventions assignment agreements |
| Stepanov, Vladimir | Employee Assignment and Proprietary Inventions assignment agreements |
| Strategy.com Incorporated | Mutual Non-Disclosure Agreement effective June 12, 2001 by and betweenStrategy.com Incorporated and MobileAria, Inc. |
| Straw, Phil | Employee Assignment and Proprietary Inventions assignment agreements |
| Strickland, Lan | Employee Assignment and Proprietary Inventions assignment agreements |
| Suliman, Haytham | Employee Assignment and Proprietary Inventions assignment agreements |
| Summerville, Gene | Employee Assignment and Proprietary Inventions assignment agreements |
| Sun Microsystems, Inc | Sun Microsystems, Inc. Binary Code License Agreement for the Java 2 Platform Standard Edition Runtime Environment 5.0 |
| Suson, Clint | Mutual Confidentiality Agreement effective July 15, 2005 by and betweenClint Suson and MobileAria, Inc. |
| Suson, Clint | Consulting Agreement dated October 29, 2005 between Clint Suson and Seller. |
| Suson, Clint | Independent Contractor Innovations and Proprietary Rights Assignment Agreement between MobileAria, Inc. and Clint Suson dated July 18, 2005. |
| Synnex Technologies, Inc. | Letter regarding Synnex Information Technologies, Inc. settlement dated June 10, 2002. |
| Svoboda, Melora | Employee Assignment and Proprietary Inventions assignment agreements |
| Tanner Installations | Installation Services Agreement effective May 15, 2006 by and betweenMobileAria, Inc. and Tanner Installations. |
| Team Telematics, LLC | Mutual Confidentiality Agreement effective April 30, 2004 betweenMobileAria, Inc. and Team Telematics, LLC. |
| TechnoCom | Mutual Confidentiality Agreement effective November 11, 2003 betweenMobileAria, Inc. and TechnoCom Corporation |
| Technology Electronics Solutions | Mutual Confidentiality Agreement effective December 17, 2004 betweenMobileAria, Inc. and Technology Electronics Solutions (TES) |
| TELA Wireless Devices Inc. | Mutual Confidentiality Agreement effective April 28, 2004 betweenMobileAria, Inc. and TELA Wireless Devices, Inc. |
| Telcontar | Data License Agreement effective August 12, 2003 by and betweenTelcontar and MobileAria, Inc. |
| Telcontar | Operating Agreement entered into August 12, 2003 by and betweenTelcontar and MobileAria, Inc. |
| Telcontar | Mutual Confidentiality Agreement effective July 30, 2002 betweenMobileAria, Inc. and Telcontar |
| Tele-Mobile Company | Confidentiality Agreement effective June 7, 2005 betweenMobileAria, Inc. and Tele-Mobile Company d/b/a TELUS Mobility |

| Counterparty | Agreement |
| --- | --- |
| Telenavigation Inc | Settlement and Release Agreement dated June 5, 2002 by and betweenMobileAria, Inc. and Telenavigation, Inc. (the "Releasing Party"). |
| Telesector Resources Group, Inc. | Non-Disclosure Agreement effective April 1, 2004 betweenMobileAria, Inc. and Telesector Resources Group, Inc. d/b/a Network Services (a Verizon Company) |
| Televigation | Mutual Confidentiality Agreement effective January 17, 2001 betweenMobileAria, Inc. and Televigation |
| Telex Communications, Inc. | Mutual Confidentiality Agreement effective August 27, 2001 betweenMobileAria, Inc. and Telex Communications, Inc. |
| TEMIC Sprachverarbeitung GmbH | Mutual Confidentiality Agreement effective July 16, 2001 by and between TEMIC Sprachverarbeitung GmbH and MobileAria, Inc. |
| TenSquare Inc. | Mutual Confidentiality Agreement effective June 7, 2001 betweenMobileAria, Inc. and TenSquare Inc. |
| Terion | Mutual Confidentiality Agreement effective October 11, 2004 betweenMobileAria, Inc. and Terion |
| Thakur, Rajiv | Employee Assignment and Proprietary Inventions assignment agreements |
| Thayer, Peter | Employee Assignment and Proprietary Inventions assignment agreements |
| The Next Market | Mutual Confidentiality Agreement effective October 18, 2001 betweenMobileAria, Inc and The Next Market |
| ThingMagic, LLC | Mutual Confidentiality Agreement effective May 17, 2004 betweenMobileAria, Inc. and ThingMagic, LLC |
| Three Rivers Cellular | Installation Services Agreement effective May 10, 2006 by and betweenMobileAria, Inc. and Three Rivers Cellular. |
| Tian, Yong | Employee Assignment and Proprietary Inventions assignment agreements |
| TMW Systems, Inc. | Non-Disclosure Agreement effective October 8, 2003 betweenMobileAria, Inc. and TMW Systems, Inc. |
| Toshiba America Inc | Lease with Maintenance Agreement dated October 4, 2005 betweenMobileAria, Inc. and Toshiba Financial Services. |
| TrafficCast | Mutual Confidentiality Agreement effective February 8, 2001 by and betweenTrafficCast and MobileAria, Inc. |
| Transport International Pool, Inc. | Confidentiality Agreement effective August 5, 2003 by and betweenTransport International Pool, Inc. and MobileAria, Inc. |
| Trialon Corporation | Mutual Confidentiality Agreement effective January 17, 2006 by and betweenTrialon Corp. and MobileAria, Inc. |
| Tsola, Inc. | Mutual Confidentiality Agreement effective January 31, 2001 by and betweenTsola,Inc. and MobileAria, Inc. |
| Tu, Kuei-Chung | Employee Assignment and Proprietary Inventions assignment agreements |
| Unknown | Java Concurrent Utilities software license |
| UPS | United Parcel Service Account W29-A35 |
| Vainshtok, Victoria | Employee Assignment and Proprietary Inventions assignment agreements |
| Verizon Services Corp. | Agreement for GPS System and Services made and entered into as of May 15, 2005 betweenVerizon Services Corp. ("Customer") and MobileAria, Inc.  ("Supplier"). |
| Verizon Services Corp. | Three-Party Escrow Service Agreement effective April 7, 2006 by and betweenMobileAria, Inc. and its affiliates and subsidiaries, Verizon Services Corp and Iron Mountain Intellectual Property Management, Inc. |
| Video Domain US | Mutual Confidentiality Agreement effective October 27, 2003 by and betweenVideo Domain US and MobileAria, Inc. |
| Vinton, Tammy | Employee Assignment and Proprietary Inventions assignment agreements |
| Vishnevskaya, Oksana | Employee Assignment and Proprietary Inventions assignment agreements |
| Visual Data Corporation | Mutual Confidentiality Agreement effective April 6, 2001 by and betweenVisual Data Corporation and Mobilaria, Inc. |
| Vlaanderen, Bert | Employee Assignment and Proprietary Inventions assignment agreements |
| Voice Access Technologies, Inc. | Mutual Confidentiality Agreement effective December 4, 2000 by and betweenVoice Access Technologies and Mobilaria, Inc. |
| Volt Delta Resources, Inc. | Mutual Confidentiality agreement effective May 10, 2002 by and betweenVolt Data Resources, Inc. and MobileAria, Inc. |
| Volvo Penta of the Americas, Inc. | Secrecy and Confidentiality agreement effective January 17, 2005 by and between Volvo Penta of the Americas, Inc. and MobileAria, Inc. |
| V&V Design Pvt Ltd. | Mutual Confidentiality Agreement effective August 13, 2001 by and between V&V Design Private Ltd. and MobileAria, Inc. |
| Wainwright, Thomas | Employee Assignment and Proprietary Inventions assignment agreements |
| Wang, Kai | Employee Assignment and Proprietary Inventions assignment agreements |
| Wang, Wei | Employee Assignment and Proprietary Inventions assignment agreements |
| Wavemakers | Mutual confidentiality agreement effective November 20, 2002 by and betweenWavemakers and MobileAria, Inc. |
| Wayland Systems | Mutual Confidentiality Agreement effective December 20, 2002 by and betweenWayland Systems and MobileAria, Inc. |
| Weatherbank, Inc. | Mutual Confidentiality Agreement effective April 27, 2001 by and betweenWeatherbank, Inc. and Mobilaria, Inc. |
| Weaver, Stacey | Employee Assignment and Proprietary Inventions assignment agreements |
| Webraska Mobile Technologies, S.A. | Mutual Confidentiality Agreement effective April 18, 2001 by and between Webraska Mobile Technologies SA and MobileAria, Inc. |
| Webraska Mobile Technologies, S.A. | Sample Software confidentiality agreement effective May 21, 2001 by and between Webraska Mobile technologies SA and MobileAria, Inc. |
| WhereNet Corp. | Mutual Confidentiality Agreement effective May 1, 2003 by and betweenWhereNet corp. and MobileAria, Inc. |
| Williams, Rodney | Mutual Confidentiality Agreement effective February 1, 2001 by and betweenRodney Williams and MobileAria, Inc. |
| Winkler, Todd | Employee Assignment and Proprietary Inventions assignment agreements |
| WirelessCar | Mutual non-disclosure agreement effective July 17, 2001 by and betweenWireless Car North America, Inc. and MobileAria |
| Wollenberg, Steve | Employee Assignment and Proprietary Inventions assignment agreements |
| Wong, Wing | Employee Assignment and Proprietary Inventions assignment agreements |
| Wood, Thomas | Employee Assignment and Proprietary Inventions assignment agreements |
| Xoriant corporation | Mutual Confidentiality Agreement effective September 19, 2001 by and betweenXoriant Corporation and Mobilaria, Inc. |
| Xtrasource, Inc. | Mutual Confidentiality Agreement effective June 4, 2001 by and betweenXtrasource,Inc. and Mobilaria, Inc. |
| Yahoo! Inc. | Mutual Nondisclosure Agreement effective August 9, 2001 betweenMobileAria, Inc. and Yahoo! Inc. |
| Yamamoto, Rena | Employee Assignment and Proprietary Inventions assignment agreements |
| Zhu, Joshua | Employee Assignment and Proprietary Inventions assignment agreements |
| Zucker, Daniel | Employee Assignment and Proprietary Inventions assignment agreements |

**TOTAL CURE OBLIGATIONS**

## Schedule 3

| Dispute | Charges | Resolution |
|---|---|---|
| 1568 units assigned incorrectly to the wrong accounts. | N/A | Complete reassignment. |
| Units activated with Verizon Wireless on the wrong plan. | $86,017.82 | MobileAria to issue check. |
| 1309 spares and deactivated units were not deactivated. | $39,300.00 | MobileAria to issue check. |
| Billing multiple installations Invoices. | $34,802.57 | Credit issued and received. |
| Increased Inventory levels. | N/A | MobileAria secured 500 units. Parties to discuss securing additional 500 units. |
| Units remaining out of communication for extended periods. | $42,347.00 | MobileAria to issue check. |
| Establish EDI. | N/A | MobileAria working on the issue. Purchaser to continue. |
| Other Alleged Billing Errors | TBD | To be addressed in the future. |

### WIP Items

| Dispute | Charges | Resolution |
|---|---|---|
| Availability of harnesses and Antennas for construction Vehicles. | N/A | Installation scheduling in in progress. Purchaser to Continue MobileAria's obligations. |
| Remedy reports and ticket Management. | N/A | MobileAria to work Purchaser to continue MobileAria's obligations. |
| HelpDesk support. | N/A | MobileAria working on resolution. Purchaser to continue MobileAria's obligations. |
| Dedicated line to Verizon Wireless. | N/A | MobileAria working on the Issue. Purchaser to continue. |