**Hearing Date and Time: August 17, 2006 at 10:00 a.m.**
**Objection Deadline: August 10, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                            :
     In re                                 :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                                            :    (Jointly Administered)
     Debtors.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MOTION FOR ORDER UNDER 11 U.S.C. § 365 AND FED. R. BANKR. P. 6006
AUTHORIZING (I) REJECTION OF REMAINING EXECUTORY CONTRACTS
OF MOBILEARIA, INC. AND (II) ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACT WITH DPAC TECHNOLOGIES CORP.

("MOBILEARIA CONTRACTS MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 authorizing MobileAria, Inc. ("MobileAria") (i) to reject those of its remaining executory contracts listed on Exhibit A hereto (collectively, the "Remaining Agreements") and (ii) to (a) assume that certain Agreement For Software Development dated April 20, 2005 between DPAC Technologies Corp. ("DPAC") and MobileAria (the "DPAC Agreement") and (b) assign such agreement to Wireless Matrix USA, Inc. ("Wireless Matrix"), which has entered into a definitive agreement, approved by this Court pursuant to an order dated July 21, 2006, to purchase substantially all of MobileAria's assets.  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.  On April 28, 2006, the Office of the United States Trustee appointed an official committee of equity security holders.

2

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion, and global assets as of December 31, 2005 of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

5

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

13.    By this Motion, the Debtors seek an order under section 365 of the

Bankruptcy Code and Bankruptcy Rule 6006 authorizing MobileAria to reject the Remaining

Agreements, a list of which is attached hereto as <u>Exhibit A</u>, effective as of August 17, 2006.  The

Debtors further seek authority to assume the DPAC Agreement and to assign such agreement to

Wireless Matrix, also effective as of August 17, 2006.

<u>Basis For Relief</u>

14.    On June 6, 2006, MobileAria entered into that certain Asset Sale and

Purchase Agreement with Wireless Matrix, which provided for the sale of substantially all of the

assets of MobileAria to Wireless Matrix for $6.5 million and other consideration, subject to the

completion of a competitive bidding process.  On the same day, the Debtors filed the Motion For

Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (a)

Approving (i) Bidding Procedures, (ii) Certain Bid Protections, (iii) Form And Manner Of Sale

Notices, And (iv) Sale Hearing Date And (b) Authorizing And Approving (i) Sale Of Certain Of

The Debtors' Assets Comprising Substantially All Assets Of MobileAria, Inc. Free And Clear Of

Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory

Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (Docket No. 4040)

(the "Sale Motion").

15.    This Court held a hearing on certain aspects of the relief sought in the Sale

Motion – specifically, the approval of bidding procedures, notice procedures, and certain bidding

protections for Wireless Matrix – on June 19, 2006 and entered an order approving those bidding

6

procedures, notice procedures, and bidding protections on June 22, 2006 (the "Bidding

Procedures Order").  Following entry of the Bidding Procedures Order, MobileAria provided the

notice required under the Bidding Procedures Order and commenced the process of seeking

higher or otherwise better offers for MobileAria's assets.  These actions resulted in MobileAria's

receipt of a qualifying competing bid from @Road, Inc. ("@Road") on June 28, 2006.

16.    Therefore, in accordance with the Bidding Procedures Order, MobileAria

held an auction on July 6, 2006, at which both @Road and Wireless Matrix participated and

made subsequent bids.  Following the conclusion of the auction, MobileAria's Board of Directors

determined the final bid of @Road, which provided for the sale of substantially all of the assets

of MobileAria to @Road for $11.4 million and other consideration, to be the highest or

otherwise best bid for MobileAria's assets and designated @Road as the "Successful Bidder" (as

defined in the Sale Motion).  MobileAria's Board of Directors also determined the final bid of

Wireless Matrix, which provided for the sale of substantially all of the assets of MobileAria to

@Road for $11.2 million and other consideration (the "WM Bid"), to be the second highest or

otherwise best bid for MobileAria's assets and designated Wireless Matrix as the "Alternate

Bidder" (as defined in the Sale Motion).

17.    On July 7, 2006, MobileAria and @Road entered into an Asset Sale and

Purchase Agreement (the "@Road Agreement") providing for the sale of MobileAria's assets to

@Road, subject to Court approval, on the terms of @Road's successful bid.  Following

negotiations and on the eve of the hearing to consider approval of the @Road Agreement,

however, @Road provided MobileAria with a letter purporting to terminate the @Road Agreement.[3]

18.    This Court held a hearing to consider approval of the sale of MobileAria's assets to Wireless Matrix on the terms of the WM Bid[4] on July 19, 2006 (the "Sale Hearing") and entered an order authorizing the sale of substantially all of the assets of MobileAria, and the concomitant assumption and assignment of the vast majority of MobileAria's executory contracts to Wireless Matrix, on July 21, 2006 (the "Sale Order").  MobileAria and Wireless Matrix anticipate consummating the transactions contemplated by the WM Agreement on or about July 31, 2006.

19.    Following consummation of the transactions contemplated by the WM Agreement, MobileAria no longer will have any continuing operations, other than ministerial activities related to the wind-up of MobileAria.  Accordingly, MobileAria has no use for the Remaining Agreements, and the Remaining Agreements do not provide any continuing benefits to MobileAria's estate.

20.    MobileAria has determined, in its business judgment, that continued performance under the Remaining Agreements constitutes an unnecessary use of MobileAria's resources and that rejection of the Remaining Agreements is necessary.  Immediate rejection of the Remaining Agreements will free MobileAria from any burdensome financial or other commitments required under the Remaining Agreements and will also allow MobileAria to proceed immediately with the process of winding up its business.  For these reasons, MobileAria has determined, in the exercise of its business judgment, that rejection of the Remaining

---

[3]    MobileAria disputes the validity of @Road's purported termination of the @Road Agreement and reserves all of its rights and remedies with respect thereto.

[4]    MobileAria and Wireless Matrix entered into that certain Amended and Restated Asset Sale and Purchase Agreement dated as of July 20, 2006 (the "WM Agreement"), which memorializes the terms of the WM Bid.

Agreements is in the best interests of MobileAria, its estate, its creditors, and other parties-in-interest.

21.     In addition, following entry of the Sale Order, MobileAria and Wireless Matrix began the process of preparing for consummation of the transactions contemplated by the WM Agreement, including the planning of an orderly transition of MobileAria's business to Wireless Matrix.  In that process, MobileAria determined that the DPAC Agreement had inadvertently been excluded from the list of agreements to be assigned to Wireless Matrix upon the closing of the sale contemplated by the WM Agreement.  As a result, DPAC did not receive a notice of assumption and assignment or a notice of cure amount as provided under the Bidding Procedures Order.

22.     Pursuant to the DPAC Agreement, DPAC provides MobileAria with a certain driver which is incorporated into certain of MobileAria's products.  MobileAria, following consultation with Wireless Matrix, determined that the DPAC Agreement should be assigned to Wireless Matrix and Wireless Matrix confirmed to MobileAria that it desired the assignment of the DPAC Agreement.  Therefore, MobileAria hereby seeks to assume the DPAC Agreement and to assign its rights under that agreement to Wireless Matrix.  MobileAria asserts that its obligations under sections 365(b) and 365(f) of the Bankruptcy Code will be fully met by the payment of $25,000 to DPAC to cure an outstanding prepetition payment default.  As was previously demonstrated at the Sale Hearing, DPAC is adequately assured of Wireless Matrix's future performance under the DPAC Agreement on account of Wireless Matrix's financial wherewithal and operational capabilities.[5]

---

[5]     Furthermore, MobileAria has discussed the assumption of the DPAC Agreement and assignment thereof to Wireless Matrix with DPAC prior to filing this Motion and has been assured by DPAC that DPAC consents to the assumption and assignment of the DPAC Agreement and agrees with MobileAria's proposed cure amount.

23.    Finally, in light of the importance of the technology provided under the DPAC Agreement to MobileAria's products, MobileAria believes that the assignment of the DPAC Agreement is important to the sale of MobileAria's assets to Wireless Matrix. Absent such assignment, Wireless Matrix would likely be required to independently seek a similar agreement from DPAC and could attempt to assert a claim against MobileAria under the WM Agreement for Wireless Matrix's costs associated therewith. For these reasons, MobileAria has determined, in the exercise of its business judgment, that assumption and assignment of the DPAC Agreement is in the best interests of MobileAria, its estate, its creditors, and other parties-in-interest.

Applicable Authority

A.    Rejection Of The Remaining Agreements

24.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that "the trustee, subject to the court's approval, may reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). Other than requiring court approval, Congress prescribed no guidelines limiting a debtor's discretion to reject the kind of executory contracts at issue in this Motion.

25.    The Supreme Court has recognized "the traditional 'business judgment' standard applied by the courts to authorize rejection of the ordinary executory contract" under section 365(a), and it cited the Second Circuit's decision in In re Minges, 602 F.2d 38, 42-43 (2d Cir. 1979), as an example of the articulation of that standard. NLRB v. Bildisco and Bildisco, 465 U.S. 513, 523 (1984). In re Minges, in turn, mandates a "flexible" standard requiring only that the debtor exercise its discretion in the best interests of the estate and its creditors. In re Minges, 602 F.2d at 42-43. See also In re The Penn Traffic Co., 322 B.R. 63, 68 (Bankr.

10

S.D.N.Y. 2005) ("It is well established that the decision whether to assume or reject an executory contract under Section 365(a) is a matter of business judgment to be exercised in the best interests of the debtor in possession and its creditors.").

26.    In all circumstances, the touchstone of the section 365(a) analysis is straightforward: "It is enough if, as a matter of business judgment, rejection of the burdensome contract <u>may</u> benefit the estate." <u>In re Minges</u>, 602 F.2d at 43 (emphasis added); <u>accord</u> <u>In re Sundial Asphalt Co.</u>, 147 B.R. 72 (E.D.N.Y. 1992).

27.    The purpose of section 365(a) of the Bankruptcy Code is to give the debtor the opportunity to go through its inventory of executory contracts and decide "which ones would be beneficial to adhere to and which ones would be beneficial to reject." <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993).  When a debtor does so in a reasonable manner and in good faith, courts generally approve the debtor's decisions.  <u>See</u> <u>In re G Survivor Corp.</u>, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered.").

28.    In <u>Orion Pictures</u>, the Second Circuit stated that a bankruptcy court should "apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate" to reject or assume the contracts.  <u>In re Orion Pictures Corp.</u>, 4 F.3d at 1099.  The <u>Orion Pictures</u> decision also cautions: "it is important to keep in mind that the bankruptcy court's 'business judgment' in deciding a motion to assume is just that —a judgment of the sort a businessman would make." <u>Id.</u> at 1099.  In other words, the Court "sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession." <u>Id.</u>

11

29.    The vast majority of courts recognize that the business judgment standard is not a strict standard and presents a "low threshold" for the debtor to meet.  See In re The Penn Traffic Co., 322 B.R. 63, 68 (Bankr. S.D.N.Y. 2005); Lubrizol Enters., Inc. v. Richmond Metal Finishers Inc., 756 F.2d 1043, 1047 (4th Cir. 1985) (collecting cases); In re W&L Assoc., Inc., 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet"); In re Fashion Two Twenty, Inc., 16 B.R. 784, 787 (Bankr. N.D. Ohio 1982) ("The less rigid 'business judgment' is favored by most Courts and is adopted as the proper standard herein.").  "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

30.    The Second Circuit's Orion Pictures decision also instructs that proceedings on a motion under 11 U.S.C. § 365(a) should be streamlined, consistent with the statutory purpose of allowing a debtor-in-possession to manage affairs efficiently in the best interests of the estate:

> At heart, a motion [under section 365(a)] should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or to reject a particular contract in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.

Orion Pictures, 4 F.3d at 1098-99.

31.    Courts have recognized that there are myriad reasons why a debtor might determine, reasonably, that the rejection of a contract "may benefit the estate," including, among other things, that:  (a) the contract is uneconomical to complete according to its terms, (b) the contract is financially draining to the estate, and (c) rejection will make the debtor more

attractive to a prospective purchaser or investor.  See In re Riodizio, 204 B.R. at 425; see also In re G Survivor Corp, 171 B.R. at 758 (listing possible factors).

32.    Here, MobileAria has exercised its sound business judgment in determining to reject the Remaining Agreements.  Following consummation of the transactions contemplated by the WM Agreement, MobileAria no longer will have any continuing operations, other than ministerial activities related to the wind-up of MobileAria.  Thus, MobileAria has no use for the Remaining Agreements, and the Remaining Agreements do not provide any continuing benefits to MobileAria's estate.  Immediate rejection of the Remaining Agreements will free MobileAria from any burdensome financial or other commitments required under the Remaining Agreements and will also allow MobileAria to proceed immediately with the process of winding up its business.  Therefore, MobileAria believes that immediate rejection of the Remaining Agreements is in the best interests of MobileAria, its estate, its creditors, and other parties in interest.

B.    Assumption And Assignment Of The DPAC Agreement

1.    Section 365(f)(2) of the Bankruptcy Code provides that:

[t]he trustee may assign an executory contract or unexpired lease of the debtor only if –

(A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

2.    Under section 365(a) of the Bankruptcy Code, a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements

for assuming an unexpired lease or executory contract of a debtor.  It provides:

> (b)(1)   If there has been a default in an executory
> contract or unexpired lease of the debtor, the trustee may not
> assume such contract or lease unless, at the time of the assumption
> of such contract or lease, the trustee –
>
> (A)      cures, or provides adequate assurance that the
> trustee will promptly cure, such default;
>
> (B)      compensates, or provides adequate assurances that
> the trustee will promptly compensate, a party other than the debtor to such
> contract or lease, for any actual pecuniary loss to such party resulting from
> such default; and
>
> (C)      provides adequate assurance of future performance
> under such contract or lease.

11 U.S.C. § 365(b)(1).

33.     Courts give the phrase "adequate assurance of future performance" a

"practical, pragmatic construction."  See In re Sanshoe Worldwide Corp., 139 B.R. 585, 592

(S.D.N.Y. 1992) (adequate assurance should be "determined under the facts of each particular

case"); see also In re Fifth Avenue Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983) (holding

that adequate assurance was furnished on two separate grounds).  Courts have consistently held

that the phrase does not require "total" assurance.  In re Natco Industries, Inc., 54 B.R. 436, 440

(Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor will thrive and

make a profit."); In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994)

("[a]lthough no single solution will satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of performance.").  In fact, adequate assurance has

been provided by demonstrating the assignee's financial health and experience in managing the

type of enterprise or property assigned.  See In re Bygraph, Inc., 56 B.R. 596, 605-06 (Bankr.

S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee

of lease from debtor has financial resources and has expressed willingness to devote sufficient

funding to the business to give it strong likelihood of succeeding).

34.    As noted above, DPAC provides MobileAria with a certain driver which is

incorporated into certain of MobileAria's products pursuant to the DPAC Agreement.

MobileAria, following consultation with Wireless Matrix, determined that the DPAC Agreement

should be assigned to Wireless Matrix and Wireless Matrix confirmed to MobileAria that it

desired the assignment of the DPAC Agreement.  In light of the importance of the technology

provided under the DPAC Agreement to MobileAria's products, MobileAria believes that the

assignment of the DPAC Agreement is important to the sale of MobileAria's assets to Wireless

Matrix.  Absent such assignment, Wireless Matrix would likely be required to independently

seek a similar agreement from DPAC and could attempt to assert a claim against MobileAria

under the WM Agreement for its costs associated therewith.  Therefore, MobileAria hereby

seeks to assume the DPAC Agreement and to assign its rights under that agreement to Wireless

Matrix.

35.    MobileAria asserts that its obligations under sections 365(b) and 365(f) of

the Bankruptcy Code will be fully met by the payment of $25,000 to DPAC to cure an

outstanding prepetition payment default.  As was previously demonstrated at the Sale Hearing at

which this Court approved the assumption and assignment of numerous executory contracts to

Wireless Matrix, DPAC is adequately assured of Wireless Matrix's future performance under the

DPAC Agreement on account of Wireless Matrix's financial wherewithal and operational

capabilities.  Furthermore, MobileAria has been advised by DPAC that it consents to the

assumption and assignment of the DPAC Agreement to Wireless Matrix.  MobileAria has also

been advised by DPAC that it agrees with MobileAria's proposed cure amount.

36.    For these reasons, MobileAria has determined, in the exercise of its business

judgment, that assumption and assignment of the DPAC Agreement is in the best interests of

MobileAria, its estate, its creditors, and other parties-in-interest.

C.    Waiver Of The Ten-Day Stay Provided By Bankruptcy Rule 6006

37.    Bankruptcy Rule 6006(d) provides: "An order authorizing the trustee to

assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10

days after the entry of the order, unless the court orders otherwise."  Courts in this district have

waived these ten-day stays upon a showing of business need.  See In re Adelphia Commc'ns

Corp., 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005) ("As I find that the required business need for

a waiver has been shown, the order may provide for a waiver of the 10-day waiting period under

Fed. R. Bankr.P. 6004(g)."); In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001)

(requiring demonstration of "a business exigency" for waiver of ten-day stays under Bankruptcy

Rules 6004(g) and 6006(d)).  In general, courts will grant waivers when doing so is important to

the debtor's financial health.  See In re Second Grand Traverse School, 100 Fed.Appx. 430, 434-

35 (6th Cir. 2004) (affirming decision waiving ten-day stay because "time was of the essence");

In re Decora Industries, Inc., Case No. 00-4459 (JJF), 2002 WL 32332749, at *9 (D. Del. May

20, 2002) ("[T]he Court understands that an immediate closing is required to remedy Debtors'

precarious financial and business position. Accordingly, the Court will waive the Rules 6004(g)

and 6006(d), allowing the parties to close.").

38.    As described above, MobileAria and Wireless Matrix intend to consummate

the transactions contemplated by the WM Agreement on or about July 31, 2006.  MobileAria

16

believes that the technology provided under the DPAC Agreement is very important to MobileAria's products and that the assignment of the DPAC Agreement is important to the sale of MobileAria's assets to Wireless Matrix. Accordingly, MobileAria believes that it is imperative that the assignment of the DPAC Agreement to Wireless Matrix be effective immediately upon entry of an order authorizing the assignment and that cause therefore exists for this Court to waive the ten-day stay provided by Bankruptcy Rule 6006.

## Notice Of Motion

39.    Notice of this Motion has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

40.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) authorizing MobileAria to reject the Remaining Agreements effective as of August 17, 2006, (b) authorizing MobileAria to assume the DPAC Agreement and assign the DPAC Agreement to Wireless Matrix effective as of August 17, 2006, and (c) granting them such other and further relief as is just.

Dated:  New York, New York
       July 28, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                    By:  /s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                        - and -

                    By:  /s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

EXHIBIT A

REMAINING AGREEMENTS

| AGREEMENT | CONTACT/PARTY ADDRESS |
|---|---|
| Fleet Telematics Services Agreement effective December 30, 2004 between MobileAria, Inc. and Austin Powder Company | Austin Powder Company<br>25800 Science Park Drive<br>Cleveland, OH 44122 |
| Emergency Call Center Services Agreement effective April 24, 2003 between MobileAria, Inc. and Cross Country Global ITS Services, Corp. | Cross Country Global ITS Services Corp.<br>One Cabot Road<br>Medford, MA 02155<br><br>Cross Country Global ITS Services Corp.<br>Attn: Peter Van Alstine<br>4040 Mystic Valley Parkway<br>Medford, MA 02155 |
| Consulting Agreement between MobileAria, Inc. and C.J. Driscoll & Associates dated September 8, 2005 | CJ Driscoll & Associates<br>2636 Via Carrillo<br>Palos Verdes Estates, CA 90274 |
| Computer Consulting and Programming Services (On-Shore/Off-shore) Master Agreement between MobileAria, Inc. and Mascon IT Limited dated September 10, 2004 | Srini M. Sundaram<br>Mascon IT Limited<br>1699 E. Woodfield Road, Suite 200<br>Schaumburg, IL 60173 |
| Consulting Agreement between North American Mobile Solutions, LLC and MobileAria, Inc. dated effective September 1, 2005 | North American Mobile Solutions, LLC<br>3200 Steeple Pointe Place<br>Flower Mound, TX 75022 |
| Consulting Services Agreement between MobileAria, Inc. and Saama Technologies, Inc. dated February 23, 2001 | Saama Technologies, Inc.<br>6203 San Ignacio Boulevard, St 101<br>San Jose, CA 95119 |
| Assistance Agreement between Delco Electronics Corporation (n/k/a Delphi Automotive Systems LLC) and MobileAria, Inc. dated December 2000 | Delco Electronics Corporation/Delphi Automotive Systems LLC<br>Attn:  Carlos Peredo, Venture Development Director<br>P.O. Box 9005<br>Kokomo, IN  46904-9005<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902 |
| Management Rights Agreement between MobileAria, Inc. and Mayfield Xi and Mayfield XI Qualified dated August 17, 2000 | Janice Roberts<br>Mayfield Principals Fund II LLC,<br>Mayfield XI, L.P.,<br>Mayfield XI Qualified L.P.<br>2800 Sand Hill Road #240<br>Menlo Park, CA 94025 |

| AGREEMENT | CONTACT/PARTY ADDRESS |
|---|---|
| Amended and Restated Investor Rights Agreement by and among MobileAria, Inc., the Common Holders, Series A Holders and the Purchasers (all as defined therein) dated August 15, 2002 | Janice Roberts<br>Mayfield Principals Fund II LLC, Mayfield XI, L.P., Mayfield XI Qualified L.P., Mayfield Associates Fund V LP<br>2800 Sand Hill Road #240<br>Menlo Park, CA 94025<br><br>Delphi Automotive Systems LLC<br>1441 W. Long Lake<br>P.O. Box 5090<br>Troy, MI 48098-5090<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902<br><br>Dan Kolkowitz<br>26830 Elena Road<br>Los Altos, CA  94022-3314<br><br>Thomas O'Gara Family Trust<br>c/o Thomas O'Gara and Paul Wassenaar, Esq.<br>2223 Avenida Dela Playa #104<br>La Jolla, CA 92037<br><br>Thomas O'Gara<br>88833 West Olympic Blvd<br>Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee<br>112 Price Lane<br>Bellevue, Idaho 83313<br><br>Palm, Inc.<br>Attn: Jon Shanberge<br>950 W. Maude Ave.<br>Sunnyvale, CA 94085<br><br>Palm, Inc.<br>Attn:  Gabriel Acosta-Lopez<br>5470 Great America Parkway<br>Santa Clara, CA  95052-8007 |

| AGREEMENT | CONTACT/PARTY ADDRESS |
|---|---|
| Amended and Restated Right of First Refusal and Co-Sale Agreement by and among MobileAria, Inc., the Common Holders, Series A Holders and the Series B Holders (all as defined therein) dated August 15, 2002 | Janice Roberts<br>Mayfield Principals Fund II LLC, Mayfield XI, L.P., Mayfield XI Qualified L.P., Mayfield Associates Fund V LP<br>2800 Sand Hill Road #240<br>Menlo Park, CA 94025<br><br>Delphi Automotive Systems LLC<br>1441 W. Long Lake<br>P.O. Box 5090<br>Troy, MI 48098-5090<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902<br><br>Dan Kolkowitz<br>26830 Elena Road<br>Los Altos, CA  94022-3314<br><br>Thomas O'Gara Family Trust<br>c/o Thomas O'Gara and Paul Wassenaar, Esq.<br>2223 Avenida Dela Playa #104<br>La Jolla, CA 92037<br><br>Thomas O'Gara<br>88833 West Olympic Blvd<br>Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee<br>112 Price Lane<br>Bellevue, Idaho 83313<br><br>Palm, Inc.<br>Attn: Jon Shanberge<br>950 W. Maude Ave.<br>Sunnyvale, CA 94085<br><br>Palm, Inc.<br>Attn:  Gabriel Acosta-Lopez<br>5470 Great America Parkway<br>Santa Clara, CA  95052-8007 |

| Agreement | Contact/Party Address |
|---|---|
| Amended and Restated Voting Agreement by and among MobileAria, Inc., the Common Holders, Series A Holders and the Series B Holders (all as defined therein) dated August 15, 2002 | Janice Roberts<br>Mayfield Principals Fund II LLC, Mayfield XI, L.P., Mayfield XI Qualified L.P., Mayfield Associates Fund V LP<br>2800 Sand Hill Road #240<br>Menlo Park, CA 94025<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902<br><br>Delphi Automotive Systems LLC<br>1441 W. Long Lake<br>P.O. Box 5090<br>Troy, MI 48098-5090<br><br>Dan Kolkowitz<br>26830 Elena Road<br>Los Altos, CA  94022-3314<br><br>Thomas O'Gara Family Trust<br>c/o Thomas O'Gara and Paul Wassenaar, Esq.<br>2223 Avenida Dela Playa #104<br>La Jolla, CA 92037<br><br>Thomas O'Gara<br>88833 West Olympic Blvd<br>Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee<br>112 Price Lane<br>Bellevue, Idaho 83313<br><br>Palm, Inc.<br>Attn: Jon Shanberge<br>950 W. Maude Ave.<br>Sunnyvale, CA 94085<br><br>Palm, Inc.<br>Attn:  Gabriel Acosta-Lopez<br>5470 Great America Parkway<br>Santa Clara, CA  95052-8007 |
| Amended and Restated Warrant to Purchase Preferred Stock between MobileAria, Inc. and Thomas M. O'Gara Family Trust dated April 19, 2002 | Thomas O'Gara Family Trust<br>c/o Thomas O'Gara and Paul Wassenaar, Esq.<br>2223 Avenida Dela Playa #104<br>La Jolla, CA 92037<br><br>Thomas O'Gara<br>88833 West Olympic Blvd<br>Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee<br>112 Price Lane<br>Bellevue, Idaho 83313 |

| Agreement | Contact/Party Address |
|---|---|
| Amended and Restated Warrant to Purchase Preferred Stock between MobileAria, Inc. and Thomas M. O'Gara Family Trust dated April 19, 2002 | Thomas O'Gara Family Trust c/o Thomas O'Gara and Paul Wassenaar, Esq. 2223 Avenida Dela Playa #104 La Jolla, CA 92037<br><br>Thomas O'Gara 88833 West Olympic Blvd Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee 112 Price Lane Bellevue, Idaho 83313 |
| Amended and Restated Warrant to Purchase Preferred Stock between Seller and Mayfield Associates Fund V LP dated April 19, 2002 | Janice Roberts Mayfield Associates Fund V L.P. 2800 Sand Hill Road #240 Menlo Park, CA 94025 |
| Amended and Restated Warrant to Purchase Preferred Stock between Seller and Mayfield Principals Fund II LLC dated April 19, 2002 | Janice Roberts Mayfield Principals Fund II LLC 2800 Sand Hill Road #240 Menlo Park, CA 94025 |
| Amended and Restated Warrant to Purchase Preferred Stock between Seller and Mayfield XI, LP dated April 19, 2002 | Janice Roberts Mayfield XI, L.P. 2800 Sand Hill Road #240 Menlo Park, CA 94025 |
| Amended and Restated Warrant to Purchase Preferred Stock between Seller and Mayfield XI Qualified LP dated April 19, 2002 | Janice Roberts Mayfield XI Qualified L.P. 2800 Sand Hill Road #240 Menlo Park, CA 94025 |
| Amended and Restated Warrant to Purchase Preferred Stock between MobileAria, Inc. and Delphi Automotive Systems LLC dated April 19, 2002 | Delphi Automotive Systems LLC 1441 W. Long Lake P.O. Box 5090 Troy, MI 48098-5090<br><br>Bob Schumacher c/o Delphi Automotive Systems LLC 2151 E. Lincoln Road MS CT50I Kokomo, IN 46902 |
| Warrant to Purchase Preferred Stock between MobileAria, Inc. and Thomas M. O'Gara Family Trust dated May 31, 2002 | Thomas O'Gara Family Trust c/o Thomas O'Gara and Paul Wassenaar, Esq. 2223 Avenida Dela Playa #104 La Jolla, CA 92037<br><br>Thomas O'Gara 88833 West Olympic Blvd Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee 112 Price Lane Bellevue, Idaho 83313 |

| AGREEMENT | CONTACT/PARTY ADDRESS |
|---|---|
| Warrant to Purchase Preferred Stock between MobileAria, Inc. and Thomas M. O'Gara Family Trust dated May 31, 2002 | Thomas O'Gara Family Trust<br>c/o Thomas O'Gara and Paul Wassenaar, Esq.<br>2223 Avenida Dela Playa #104<br>La Jolla, CA 92037<br><br>Thomas O'Gara<br>88833 West Olympic Blvd<br>Beverly Hills CA, 90212<br><br>Tom O'Gara, Trustee<br>112 Price Lane<br>Bellevue, Idaho 83313 |
| Business Development Agreement between MobileAria, Inc. and Palm, Inc. dated October 2000. | Palm, Inc.<br>Attn: Jon Shanberge<br>950 W. Maude Ave.<br>Sunnyvale, CA 94085<br><br>Palm, Inc.<br>Attn:  Gabriel Acosta-Lopez<br>5470 Great America Parkway<br>Santa Clara, CA  95052-8007<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902 |
| Business Development Agreement between MobileAria, Inc. and Delphi Automotive Systems LLC dated October 2000. | Delphi Automotive Systems LLC<br>1441 W. Long Lake<br>P.O. Box 5090<br>Troy, MI 48098-5090<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902 |
| Limited Software License Agreement between MobileAria, Inc. and Delphi Automotive Systems LLC dated May, 2001 | Delphi Automotive Systems LLC<br>1441 W. Long Lake<br>P.O. Box 5090<br>Troy, MI 48098-5090<br><br>Bob Schumacher<br>c/o Delphi Automotive Systems LLC<br>2151 E. Lincoln Road<br>MS CT50I<br>Kokomo, IN 46902 |
| Master Agreement effective September 21, 2001 between MobileAria, Inc. and Forrester Research Inc. | Forrester Research Inc.<br>400 Technology Square<br>Cambridge, MA 02139 |

| AGREEMENT | CONTACT/PARTY ADDRESS |
|---|---|
| International Value Added Reseller Agreement entered into February 14, 2003 between Orbcomm LLC and MobileAria, Inc., as amended by the Letter Renewal to the US Value Added Reseller Agreement between MobileAria, Inc. and Orbcomm LLC dated May 10, 2006. | Orbcomm LLC<br>21700 Atlantic Blvd.<br>Dulles, Virginia 20166 |
| Source Code License Agreement between MobileAria, Inc. and Sierra Wireless USA, Inc. dated May 17, 2005. | Sierra Wireless USA, Inc.<br>Attn: Chief Technical Officer<br>2290 Cosmos Court<br>Carlsbad, CA  92009 |