**Hearing Date and Time: August 17, 2006, 10:00 a.m.**
**Objection Deadline: August 10, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                          :
      In re                               :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                                          :      (Jointly Administered)
            Debtors.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR APPROVAL OF JOINT INTEREST AGREEMENT BETWEEN
DEBTORS AND OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
AND IMPLEMENTATION OF PROTECTIVE ORDER WITH RESPECT THERETO

("EQUITY COMMITTEE JOINT INTEREST AGREEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order (a) approving the form of the Joint Interest Agreement with the Official Committee of Equity Security Holders, substantially in the form attached hereto as <u>Exhibit A</u> (the "Joint Interest Agreement"), and (b) implementing a protective order with respect to information and documents produced pursuant to the Joint Interest Agreement.  In support of the Motion, the Debtors respectfully represent as follows:

Background

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 105,

107, and 1103 of the Bankruptcy Code and rules 7026 and 9018 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of December 31, 2005

of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

12.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

Relief Requested

13.    On March 30, 2006, this Court directed the U.S. Trustee to form an

official equity committee with a limited scope.  Among the specific subject matters included by

the Court within the Equity Committee's purview are matters relating to GM, including any

agreements that the Debtors may reach with GM (but without the Equity Committee injecting

itself into negotiations between the Debtors and GM).  (See Docket No. 3024.)   After obtaining

guidance from the Court in a recent chambers conference in which representatives of the Debtors

and the Equity Committee participated, the Debtors have determined that they will share material

confidential and privileged information with the Equity Committee (the "Information") and

consult with the Equity Committee regarding certain potential claims and defenses held by the

Debtors against GM (the "GM Claims").  The Debtors believe that it is in the best interests of

their estates to provide such Information to certain designees of the Equity Committee to keep

the Equity Committee appropriately informed and in a position to fulfill one of the principal

purposes contemplated by this Court when this Court directed that the Equity Committee be

formed.  The Debtors believe that they share common interests with the Equity Committee in

respect of the GM Claims, and intend through the Joint Interest Agreement that any and all

sharing of Information pursuant to the Joint Interest Agreement be protected pursuant to the

"common interest" or "joint defense" doctrine, to the fullest extent such protection is available

under applicable case law, subject to the provisions of the Joint Interest Agreement.

14.    By this Motion, the Debtors therefore seek (a) approval of the proposed

form of Joint Interest Agreement with the Equity Committee, and (b) entry of a protective order

with respect to information and documents produced pursuant to the Joint Interest Agreement.

6

<u>Basis For Relief</u>

A.    <u>Joint Interest Agreement</u>

15.    As indicated above, the Debtors believe that it is in the best interests of their estates to provide to the Equity Committee with the Information.  Under the terms of the Joint Interest Agreement, any non-public information and documents provided to the Equity Committee related to the GM Claims, whether written or oral, including by virtue of any designees of the Equity Committee (each a "Reviewing Party") will be deemed confidential information, and will be subject to the provisions of the Joint Interest Agreement.  The Debtors' sharing of the Information with the Equity Committee pursuant to the terms of the Joint Interest Agreement will not constitute a waiver of attorney-client, attorney work-product doctrine, or similar privilege under the common-interest doctrine.  Consequently, the Debtors' provision of Information to the Equity Committee pursuant to the Joint Interest Agreement shall not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including the Equity Committee, to Information that is otherwise discoverable to the extent it is ordered by this Court or any other court of competent jurisdiction in litigation authorized by this Court.[3]

16.    The Debtors propose that any information that they provide to the Equity Committee regarding the GM Claims would be subject to the terms and conditions relating to information-sharing and confidentiality as set forth in the Joint Interest Agreement and that the Joint Interest Agreement apply only to the GM Claims.  The Joint Interest Agreement, and the proposed order, will neither expand nor narrow the common interest privilege available to the Debtors and the Equity Committee.  Rather, the Joint Interest Agreement will allow the Debtors

---

[3]    The Debtors intend to maintain a privilege log identifying privileged documents provided to the Equity Committee pursuant to the Joint Interest Agreement and the proposed order.

7

to share information with the Equity Committee under the fullest protections offered by applicable law.

17.     The Debtors seek approval of the terms and conditions of the Joint Interest Agreement and, accordingly, seek entry of the proposed order.  The Debtors submit that the cooperative process described in the Joint Interest Agreement will result in an efficient and cost effective review of potential claims held by the Debtors against GM, and will protect the Debtors' interests.  The Debtors request that nothing in the proposed order or the Joint Interest Agreement limit, modify, or otherwise diminish the Debtors or the Equity Committee's rights and powers under applicable law, including the rights of the Equity Committee to seek Information from the Debtors that the Debtors do not voluntarily produce, provided, however, that all defenses the Debtors may have to any such involuntary production are not diminished by the Joint Interest Agreement or the proposed order entered by this Court.

18.     No additional discovery by the Equity Committee in respect of matters that are related to the GM Claims will be permitted unless (a) this Court has issued an appropriate order, after the Debtors and the Equity Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before this Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Equity Committee have otherwise agreed, or (c) in connection with a contested hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the Federal Rules of Civil Procedure or the Bankruptcy Rules, provided, however, that all rights and defenses with respect thereto are reserved.

19.     The Debtors also request that nothing in the Joint Interest Agreement be deemed to affect the separate and independent representation of the Debtors and the Equity

8

Committee by their respective counsel and that nothing be deemed to create an attorney-client

relationship between any attorney and anyone other than the client who hired that attorney.  The

Debtors will acknowledge that the sharing of information pursuant to the Joint Interest

Agreement will not be a basis for disqualification of the Equity Committee's counsel.

20.    To the extent that there are material changes to the form of the Joint

Interest Agreement attached hereto, prior to the hearing on this Motion the Debtors will provide

a copy of the final Joint Interest Agreement to this Court, the U.S. Trustee, and any party

requesting, in writing, a copy of such agreement from the Debtors.

B.    <u>Joint Interest Agreement Protective Order</u>

21.    The Debtors further seek an order, pursuant to 11 U.S.C. §§ 105, 107, and

1103 and Bankruptcy Rules 7026 and 9018, preserving for the benefit of the Debtors' estates

certain protections and privileges (the "Privileges") notwithstanding the limited disclosure of

certain confidential, and at times privileged, information and documents produced pursuant to

the Joint Interest Agreement.

22.    The power to exercise or waive a debtor's attorney-client privilege, like

other valuable property of a debtor's estate, vests in the trustee, or as is applicable in this case,

the debtor-in-possession.  <u>See</u> <u>Commodity Futures Trading Comm'n v. Weintraub</u>, 471 U.S. 343,

354 (1985) ("In summary, we conclude that vesting in the trustee control of the corporation's

attorney-client privilege most closely comports with the allocation of the waiver power to

management outside of bankruptcy without in any way obstructing the careful design of the

Bankruptcy Code.").

23.    Bankruptcy courts have recognized that, in certain circumstances, the

attorney-client and similar privileges may be shared between the debtor and its official

committees without waiving the privilege as to other parties, as the court in <u>In re Mortgage &</u>

<u>Realty Trust</u>, 212 B.R. 649 (Bankr. C.D. Cal. 1997) explained:

> Bankruptcy cases frequently involve parties who share common commercial
> interests, but whose interests in other respects may be very different. This is
> especially true when the parties at issue are a debtor in possession under chapter
> 11 and a committee of creditors. The debtor in possession and the committee of
> creditors share a duty to maximize the debtor's estate . . . . In order to permit the
> committee to carry out [its] duties, the debtor must be able to provide information
> to the committee free of the risk that the committee may be forced to disgorge
> such information to adverse third parties. A communication in furtherance of this
> common legal interest with that of the debtor is entitled to the protection of the
> attorney-client privilege, unless its confidentiality has been waived.

<u>Id.</u> at 653 (citations omitted) (holding that communication of privileged information shared

between debtor and committee did not waive privilege with respect to information).

24.    Moreover, section 107 of the Bankruptcy Code as well as Bankruptcy

Rule 9018 serve to protect confidential information from disclosure. <u>See</u> <u>In re Bell & Beckwith</u>,

198 B.R. 265, 270 (Bankr. N.D. Ohio 1996) (denying motion to release confidential records from

seal). The court in <u>Bell & Beckwith</u> also expressly relied on Fed. R. Civ. P. 26, made applicable

in bankruptcy cases by Bankruptcy Rule 7026, which empowers the court to "make any order

which justice requires to protect a party" from the disclosure of confidential information. <u>Id.</u> at

267.

25.    In this case, even though the Debtors and the Equity Committee are

separate fiduciaries with distinct fiduciary duties, they share a common interest and fiduciary

duty in preserving the continued confidentiality of the Information as it is an estate asset. To that

end, the Debtors and the Equity Committee agree that the relief requested in the Motion should

be granted. Moreover, as set forth in the Joint Interest Agreement, the Equity Committee has

agreed to preserve the confidentiality of the Information and further agreed to use the

Information solely for the purposes set forth in that agreement.

26.    To ensure flexibility in reviewing the potential GM Claims, the Debtors should not be precluded from making future waivers of applicable privileges if such waivers are specific and narrowly-tailored for the intended purpose.  See In re Grand Jury Proceedings, 78 F.3d 251, 255 (6th Cir. 1996) (drawing distinction between what is waived and what remains privileged, notwithstanding voluntary disclosure); In re Von Bulow, 828 F.2d 94, 102 (2d Cir. 1987) ("Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication – one not subsequently used by the client in a judicial proceeding to his adversary's prejudice – does not waive the privilege as to the undisclosed portions of the communications."); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1978) (en banc) (finding that limited waiver of attorney-client privilege occurred with respect to document disclosed to SEC); Chamberlain Mfg. Corp. v. Maremont Corp., No. 90 C 7127, 1993 WL 11885, at *3 n.2 (N.D. Ill. 1993) (noting that "the better rule" allows a limited waiver).

27.    Furthermore, the Debtors request that this Court retain jurisdiction over this matter.  Given the nature of the Information, any litigation arising in connection with the potential GM Claims may be significant and time-consuming.  Thus, this Court's retention of jurisdiction over the Joint Interest Agreement and the relief requested herein is critical to ensure that any relief obtained by the Debtors remains enforceable and consistent.  See, e.g., Bell & Beckwith, 198 B.R. at 270 (honoring arms-length, negotiated confidentiality agreement and denying trustee's motion to unseal confidential records); Rickards v. Certainteed Corp., No. 94-1756, 1995 WL 508209, at *2 (E.D. Pa. Aug. 21, 1995) (retaining jurisdiction to enforce confidentiality agreement); Evello Investments N.V. v. Printed Media Services, Inc., No. 94-2254, 1995 WL 135613, at *7, *9 (D. Kan. March 28, 1995) (same).

11

Notice

28.     Notice of this Motion has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

29.     Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) approving the form of the Joint Interest Agreement between the Debtors and the Equity Committee, (b) implementing a protective order with respect to information and documents produced pursuant to the Joint Interest Agreement, and (c) granting the Debtors such other and further relief as is just.

Dated:       New York, New York
             July 28, 2006

                               SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

                               By:   /s/ John Wm. Butler, Jr.
                                     John Wm. Butler, Jr. (JB 4711)
                                     John K. Lyons (JL 4951)
                                     Ron E. Meisler (RM 3026)
                               333 West Wacker Drive, Suite 2100
                               Chicago, Illinois 60606
                               (312) 407-0700

                                          - and -

                               By:   /s/ Kayalyn A. Marafioti
                                     Kayalyn A. Marafioti (KM 9632)
                                     Thomas J. Matz (TM 5986)
                               Four Times Square
                               New York, New York 10036
                               (212) 735-3000

                               Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

<u>Exhibit A</u>

Joint Interest Agreement

<u>JOINT INTEREST AGREEMENT</u>

WHEREAS, on October 8, 2005 (the "Initial Filing Date"), Delphi

Corporation ("Delphi") and certain of its U.S. subsidiaries (the "Initial Filers") filed

voluntary petitions in the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court") for reorganization relief under chapter 11 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of

Delphi (together with the Initial Filers, collectively, the "Debtors") also sought

reorganization relief.  The Debtors continue to operate their businesses and manage

their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

WHEREAS, on March 30, 2006, the Bankruptcy Court entered an order

(Docket No. 3024) pursuant to 11 U.S.C. § 1102(a)(2) directing the United States

Trustee (the "U.S. Trustee") to appoint an equity committee in the Debtors' chapter

11 cases (the "Equity Committee Appointment Order").

WHEREAS, on April 28, 2006, the Office of the U.S. Trustee appointed an

official committee of equity security holders (the "Equity Committee").

WHEREAS, pursuant to the Equity Committee Appointment Order, the

Equity Committee is required to be informed of, and to relay to the Debtors and

other parties-in-interest in these cases, the Equity Committee's views with respect to,

among other things, General Motors Corporation ("GM"), including any agreements

that the Debtors may reach with GM (but without the Equity Committee injecting itself into negotiations between the Debtors and GM).

WHEREAS, prior to the Initial Filing Date, certain events occurred which may result in claims and defenses to claims of GM held by the Debtors against GM (the "GM Claims").

WHEREAS, the Debtors and the Equity Committee have determined that it is in the best interests of the Debtors' estates that they share material confidential and privileged information with the Equity Committee and consult with the Equity Committee regarding the GM Claims.  The Debtors and the Equity Committee further believe that it is in the best interests of the Debtors' estates for the Debtors to provide such confidential, non-public information and documents related to the GM Claims, whether written or oral, including by virtue of participation by any Reviewing Party (as defined below) in the review of the GM Claims (the "Information") to the designees of the Equity Committee (which designees shall be the outside professionals of the Equity Committee and, at the election of the Equity Committee, either the chair of the Equity Committee or a subcommittee of the Equity Committee in a number reasonably acceptable to the Debtors), to keep them appropriately informed and in a position to fulfill one of the principal purposes contemplated by the Bankruptcy Court when the Bankruptcy Court directed that the

Equity Committee be formed, without losing any privilege or protection attaching to any produced information through the disclosure thereof.

WHEREAS, the Debtors and the Equity Committee believe that they share common interests in this regard, and intend through this Agreement that any and all sharing of Information pursuant to this Agreement be protected pursuant to the "common interest" or "joint defense" doctrine, to the fullest extent such protection is available under applicable case law, subject to the provisions of this Agreement.

WHEREAS, the Debtors and the Equity Committees wish to memorialize, and to set forth the terms and conditions of, their understanding with respect to the foregoing.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the Debtors and the Equity Committee, that:

1.      The Debtors may voluntarily share Information with the members and professionals of the Equity Committee identified on Appendix A to this Agreement (collectively, the "Reviewing Parties").  The Reviewing Parties shall treat all Information obtained from the Debtors in accordance with this Agreement.  No other additional persons, firms, or entities shall be added to the Reviewing Parties list, unless prior email notice is provided to counsel for the Debtors and the Debtors consent in writing to such additions.  The Reviewing Parties may share and discuss Information with each other.  The designated professional firms identified on

3

Appendix A may disclose Information as necessary in the ordinary course of their work to legal assistants, secretaries, or other non-professional staff, but shall disclose Information only to individuals who have a need to know the Information for purposes of reviewing the GM Claims.

2.      The Debtors may voluntarily make available for inspection and copying by the Reviewing Parties certain Information, including deposition transcripts, internal memoranda, and other documents and information.  Upon the Debtors' request (the consent to which a Reviewing Party shall not unreasonably withhold), at the close of the chapter 11 cases or such other time as may be reasonable the Reviewing Parties shall return all originals and copies of any and all Information produced pursuant to this Agreement, and shall certify their compliance with this paragraph to the Debtors in writing, provided that the professionals retained by the Equity Committee may retain (but must use for no other purpose other than as set forth in paragraph 3) their own work product.

3.      All Information received by the Reviewing Parties in connection with the GM Claims shall be held in strict confidence and used solely for purposes of reviewing the GM Claims and any litigation subsequently authorized by the Bankruptcy Court.  The Reviewing Parties shall not disclose Information received in connection with the GM Claims except to one another.

4.       In the event that a Reviewing Party is legally required by the Bankruptcy Court, any other court of competent jurisdiction, or by a federal, state, or local governmental or regulatory body, to disclose any of the Information, such Reviewing Party shall, to the extent lawful, provide the Debtors with prompt written notice of any such requirement to the Debtors no less than ten business days prior to such required disclosure (provided that if a Reviewing Party is required to make a disclosure in less than ten business days, such Reviewing Party shall provide notice to the Debtors as soon as reasonably practicable, but not later than one calendar day after the Reviewing Party is informed of the need to make such required disclosure) so that the Debtors may seek a protective order or other appropriate remedy and/or waive compliance with this Agreement.  The Reviewing Party shall provide service of such notice by facsimile and Federal Express to:  (a) Delphi Corporation, Att'n: David Sherbin, 5725 Delphi Drive, Troy, Michigan 48098 (facsimile (248) 813-2491); (b) Delphi Corporation, Att'n: Joseph Papelian, 5725 Delphi Drive, Troy, Michigan 48098 (facsimile (248) 813-3251); and (c) Skadden, Arps, Slate, Meagher & Flom LLP, Att'n: John Wm. Butler, Jr., 333 W. Wacker Drive, Chicago, Illinois 60606 (facsimile (312) 407-0411).  If, in the absence of a protective order or other remedy or the receipt of a waiver from the Debtors, such Reviewing Party is nonetheless required to disclose any of the Information, such Reviewing Party may, without liability hereunder, disclose only that portion of the Information which such

5

Reviewing Party is advised by counsel it is legally required to disclose, <u>provided</u> that such Reviewing Party shall use its reasonable best efforts to preserve the privileges and confidentiality of the Information by reasonably cooperating with the Debtors to obtain an appropriate protective order or other reliable assurance that the privileges and other confidential treatment shall be accorded the Information.

5.      The parties agree that all Information provided to the Reviewing Parties prior to the execution of this Agreement was provided in furtherance of the parties' common interests and the prior provision of Information by the Debtors, and its receipt by the Reviewing Parties, is subject to this Agreement.

6.      The Reviewing Parties shall not assert that the Debtors' production of Information pursuant to this Agreement constitutes a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

7.      No additional discovery by the Equity Committee in respect of matters that are related to the GM Claims shall be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Equity Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Equity Committee have otherwise agreed, or (c) in connection with an adversary proceeding initiated by

the Debtors or a contested hearing adjudicating a motion initiated by the Debtors,

such discovery is permissible under the Federal Rules of Civil Procedure or the

Federal Rules of Bankruptcy Procedure, <u>provided</u> that all rights and defenses with

respect thereto are reserved.

8.      It is the express intent of the parties to this Agreement, and of the

Bankruptcy Court, if it approves this Agreement, that this Agreement and the

production of Information pursuant thereto shall not confer upon any third party the

right to obtain such Information, nor shall it limit the right of any party, including

any Reviewing Party, to Information that is otherwise discoverable to the extent so

ordered by the Bankruptcy Court or any other court of competent jurisdiction in

litigation authorized by the Bankruptcy Court.

9.      Nothing herein shall, or is intended in any way to limit, modify, or

otherwise diminish the Debtors' or the Equity Committee's rights and powers under

applicable law, including under the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure, or the rights of the Equity Committee to seek Information

from the Debtors that the Debtors do not voluntarily produce, <u>provided</u> that all

defenses that Debtors may have to any such involuntary production are preserved.

10.      Nothing herein shall be or is intended to constitute an admission by

any person or entity of any wrongdoing or liability or of the existence of any claims

7

or causes of action in connection with the subject matter of the GM Claims or otherwise.

11.     This Agreement shall be binding upon the parties' respective successors and assigns.

12.     This Agreement shall be submitted for approval by the Bankruptcy Court, but if not approved, shall remain in full force and effect as an agreement among the parties.

13.     This Agreement may be executed in several counterparts, all of which constitute the same agreement.

14.     Nothing herein shall affect the separate and independent representation of the parties by their respective counsel nor shall anything herein be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney.  The sharing of Information pursuant to this Agreement shall not be a basis for disqualification of any Reviewing Party's counsel.

8

15.    This Agreement constitutes the full agreement among the parties

regarding the production and sharing of Information.  Modifications of this

Agreement must be in writing and signed by counsel to all parties hereto.


Dated:    _____, 2006

SKADDEN, ARPS, SLATE,                    FRIED, FRANK, HARRIS, SHRIVER
    MEAGHER & FLOM LLP                       & JACOBSON LLP

By:    _____      By:    _____
        John Wm. Butler, Jr. (JB 4711)            Vivek Melwani
        John K. Lyons (JL 4951)                   Bonnie Steingart
        Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100        1 New York Plaza
Chicago, Illinois 60606                  New York, New York 10004-1980
(312) 407-0700                           (212) 859-8000

                - and -                  Attorneys for the Official Committee of
                                         Equity Security Holders
By:    _____
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

9

<u>APPENDIX A</u>

LIST OF REVIEWING PARTIES FOR
<u>THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS</u>

DESIGNATED COMMITTEE MEMBERS
[list individuals and firm affiliations]

To be determined

DESIGNATED PROFESSIONALS
[list firms]

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP