SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
                                                             :
                                                             :
In re:                                                       :     Chapter 11
                                                             :
DELPHI CORPORATION, et al.,                                  :     Case No. 05 – 44481 (RDD)
                                                             :
                          Debtors.                           :     (Jointly Administered)
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x
```

**SECOND APPLICATION OF SHEARMAN & STERLING LLP, AS**
**SPECIAL COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF INTERIM**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1, 2006 THROUGH MAY 31, 2006**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Shearman & Sterling LLP ("S&S"), special counsel to Delphi Corporation and

certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submits this application (this "Application"),

pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the interim allowance of compensation for professional services performed by S&S for the

period from February 1, 2006 through May 31, 2006 (the "Compensation Period"), and for

reimbursement of actual and necessary expenses incurred during the Compensation Period and

respectfully represent:

**Professional Compensation
and Reimbursement of Expenses Requested**

1.      S&S prepared this application in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), the

Order Under 11 U.S.C. § 331 Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals (Docket No. 869) (the "Monthly Compensation

Order,") the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals (Docket No. 2147)(the

"Supplemental Compensation Order"), the Second Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 2986)(the "Second Supplemental Compensation Order") and the

Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals (Docket No. 3630)(the "Third

Supplemental Compensation Order") and the Fourth Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 4545)(the "Fourth Supplemental Compensation Order" and

collectively with the Local Guidelines and UST Guidelines, the "Guidelines").  Pursuant to the

Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as

<u>Exhibit A</u>.

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and

1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28

U.S.C. § 157(b)(2).

3.      S&S seeks allowance of the interim compensation for professional

services rendered to the Debtors during the Compensation Period, in the aggregate amount of

$750,297.60 and for reimbursement of expenses incurred in connection with the rendition of

such services in the aggregate amount of $69,454.96.  During the Compensation Period, S&S

attorneys and paraprofessionals expended a total of 2,024.1 hours for which compensation is

requested.

4.      Pursuant to Bankruptcy Rule 2016(b), there is no agreement or

understanding between S&S and any other person, other than members of the firm, for the

sharing of compensation to be received for services rendered in these cases.

5.      S&S's fees in these cases are billed in accordance with its existing billing

rates and procedures in effect for the representation of the Debtors in relation to the chapter 11

cases (the "<u>Bankruptcy Matters</u>") and for the representation of Delphi Corporation , affiliated

non-debtors, certain current and former officers and certain current and former directors in

relation to an investigation and several litigation matters (the "<u>Litigation Matters</u>," and together

with the Bankruptcy Matters, "<u>Delphi Matters</u>") during the Compensation Period.  The rates S&S

charges for the services rendered by its professionals and paraprofessionals in relation to the

Bankruptcy Matters are generally the same rates S&S charges for professional and

paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable nonbankruptcy cases in a competitive national legal market.  The rates S&S charges

for the services rendered by its professionals and paraprofessionals in relation to the Litigation

Matters are discounted pursuant to a separate agreement between Debtors and S&S as further

described herein.

6.    Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule

setting forth all S&S professionals and paraprofessionals who have performed services in

relation to the Delphi Matters during the Compensation Period, the capacities in which each such

individual is employed by S&S, the department in which each individual practices, the hourly

billing rate charged by S&S for services performed by such individual, the aggregate number of

hours expended in this matter and fees billed therefor, and the year in which each professional

was first licensed to practice law.

7.    Annexed hereto as Exhibit C is a schedule specifying the categories of

expenses for which S&S is seeking reimbursement and the total amount for each such expense

category.

8.    Pursuant to Section II.D of the UST Guidelines, annexed hereto as Exhibit

D is a summary by project categories of the services performed by S&S during the

Compensation Period.

9.    S&S maintains computerized records of the time spent by all S&S

attorneys and paraprofessionals in connection with the Delphi Matters.  Subject to redaction for

the attorney-client privilege or confidential information where necessary to protect the Debtors'

estates, copies of these computerized records have been furnished to the United States Trustee

for the Southern District of New York (the "U.S. Trustee"), the attorneys for the official

committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors

Committee"), the attorneys for the committee of equity security holders appointed in these

chapter 11 cases (the "Equity Committee"), the attorneys for the Debtors prepetition lenders (the

"Prepetition Lenders"), the attorneys for the Debtors' postpetition lenders (the "DIP Lenders")

and the joint fee review committee (the "Fee Review Committee") in connection with S&S's

monthly fee statements.

10.    As of the date hereof, S&S maintains a retainer in the amount of

$325,324.92 for professional service performed and to be performed, and expenses incurred and

to be incurred, in connection with the Delphi Matters.

11.    Also in accordance with the Monthly Compensation Order, S&S

submitted monthly statements to the Debtors (and certain other parties-in-interest as set forth in

the Monthly Compensation Order), and received payments on account of monthly statements

submitted during the Compensation Period, as follows:

| Monthly Statement | Total Fees | 80% of Fees | 20% of Fees | Expenses (100%) |
|---|---|---|---|---|
| February 1, 2006 – February 28, 2006 | $271,371.25 | $217,097.00 Payment Received | $54,274.25 | $19,140.43 Payment Received |
| March 1, 2006 – March 31, 2006 | $227,536.20 | $182,028.96 Payment Received | $45,507.24 | $13,989.43 Payment Received |
| April 1, 2006 – April 30, 2006 | $114,423.80 | $91,539.04 Payment Received | $22,884.76 | $19,537.55 Payment Received |
| May 1, 2006 – May 31, 2006 | $136,966.35 | $109,573.08 Payment Received | $27,393.27 | $16,787.55 Payment Received |
| **TOTAL** | $750,297.60 | $600,238.08 | $150,059.52 | $69,454.96 |

12.    As set forth above, S&S has received payments totaling $669,693.04

representing payment of eighty percent (80%) of the fees for professional services and one

hundred percent (100%) of the expenses requested by S&S for the period February 1, 2006

through May 31, 2006.

13.    Accordingly, the Debtors hereby seek approval of a total of $750,297.60

in fees during the Compensation Period. The Debtors hereby also seek approval of a total of

$69,454.96 in expenses for the Compensation Period. The total of the 20% holdback of fees for

the Compensation Period is $150,059.52, which is outstanding as of the date hereof.

14.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period, but were not processed prior to the

preparation of this Application, S&S reserves the right to request additional compensation for

such services and reimbursement of such expenses in a future fee application.

## Background

15.    On the Petition Date, each of the Debtors filed a voluntary petition in the

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief

under chapter 11 of the Bankruptcy Code.

16.    On October 17, 2005, the U.S. Trustee appointed the Creditors'

Committee. As of the date hereof, no request has been made for the appointment of a trustee or

examiner in these cases.

17.    Pursuant to the Court's order dated March 30, 2006, the U.S. Trustee

appointed the Equity Committee on April 28, 2006.

18.    On May 5, 2006, the Court appointed the Fee Review Committee

consisting of representatives of the Office of the U.S. Trustee, the Debtors and the Creditors'

Committee.

19.     The Debtors have continued in possession of their respective properties and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

20.     Pursuant to an order of this Court dated November 4, 2005 (Docket No. 1376), the Debtors were authorized to retain S&S on a final basis as their special counsel to render legal services in the prosecution of these chapter 11 cases.

21.     S&S does not hold or represent any interest adverse to the estates, and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.  S&S has previously filed affidavits with this Court attesting to its disinterestedness (Docket Nos. 49 and 845).

22.     No disclosure statement or plan of reorganization has been filed with this Court as of the date hereof.  The Debtors have the exclusive right to file a chapter 11 plan through February 1, 2007 and the Debtors may exclusively solicit acceptances on such a plan through April 2, 2007.

### Summary of Services

23.     The Debtors' chapter 11 cases are large and complex.  Since the inception of these chapter 11 cases S&S has dedicated significant resources to help the Debtors finance and stabilize their ongoing business operations.  During the Compensation Period, S&S assisted – consistent with its role as 327(e) special counsel and at the request of the Debtors' 327(a) restructuring counsel – in the preparation of motions, applications, and other relevant documents on behalf of the Debtors.  As of the date hereof, approximately six months from the commencement of these chapter 11 cases, there are over 4745 docket entries for these cases.  These figures evidence the size of these chapter 11 cases and, accordingly, the magnitude of the professional services that these cases have demanded.

24.     During the Compensation Period, S&S spent significant time and
expended considerable efforts in advising Delphi with respect to its postpetition financing
facility (the "DIP Facility").  S&S also has also devoted time and effort in assisting the Debtors
with retaining various other professionals and rendering services to the Debtors throughout these
chapter 11 cases.

25.     In addition, S&S represents Delphi Corporation, affiliated non-debtors and
certain current and former officers and directors in connection with the Litigation Matters with
respect to numerous putative class actions in federal court alleging violations of, among other
things, the federal securities laws and the Employee Retirement Income Securities Act of 1974
("ERISA") and both federal and state derivative actions alleging, among other things, breaches of
various fiduciary duties.  The federal securities, ERISA and derivative actions have been
transferred to the United States District Court for the Eastern District of Michigan for
coordinated or consolidated pretrial proceedings before Judge Gerald E. Rosen.  The federal and
state derivative actions have been administratively closed in light of the bankruptcy stay.  S&S
also represents Delphi Corporation with respect to an investigation by the United States
Securities and Exchange Commission ("SEC") in connection with issues relating to Other
Postemployment Benefits ("OPEB").

26.     Given the complexity of the chapter 11 cases and the litigation matters in
which S&S represents the Debtors, certain matters required the attention of two or more S&S
attorneys with expertise in different areas of law.  For example, attorneys in S&S's bankruptcy
and finance groups coordinated their efforts in preparing documents in connection with the
postpetition financing facility and S&S's litigation attorneys consult with bankruptcy attorneys as
required.

27.     To ensure that the legal fees were appropriate given the nature of the

matter or dispute at issue, attorneys with lower billing rates were assigned to handle certain

matters, such as researching and preparing initial drafts of documents.  In order to utilize S&S

attorneys in this cost-effective manner, more senior attorneys reviewed the work of junior

attorneys and, when necessary, meetings were held among attorneys to coordinate their efforts.

Absent meetings of this nature, all matters would have been handled by the senior attorney – at a

higher cost to the estate – who more often had direct contact with the Debtors and other parties in

interest and their respective counsel.

28.     To facilitate effective review of this Application, in accordance with the

UST Guidelines, S&S has utilized the following separate billing categories during the

compensation period as appropriate:

Litigation Matters
* Securities Class Action Litigation       Matter 20
* Derivative Litigation                           21
* ERISA Class Action Litigation                   22
* SEC OPEB Investigation                          23

Bankruptcy Matters
* Business Issues/Operations                      25
* Case Administration                             26
* DIP Financing                                   28
* Employee Benefits/Pensions                      30
* Employment Applications & Objections            31
* Executory Contracts/Leases                      32
* Fee Application & Objections                    33
* First Day Matters                               34
* Litigation                                      36
* Relief From Stay Proceedings                    41
* Utilities Matters                               43
* Strategic Planning                              44
* Expenses                                        46
* Intellectual Property                           47
* Securities Advice                               48

29.    Set forth below is a brief summary of certain of the matters on which S&S spent a significant number of hours and it is not meant to be a detailed description of all of the work performed, nor does it necessarily reflect all of the separate billing categories established by S&S. A complete summary of the fees attributable to each category is provided in <u>Exhibit D</u> hereto. The time details which fully describe the day-to-day services provided by S&S, and the time expended performing such services in each of the categories, have been served upon those parties set forth in the Monthly Compensation Order and are available for review by any other interested party upon request to S&S.

<u>LITIGATION MATTERS</u>

A.    <u>Securities Class Action</u> (Fees: $254,584.35 Hours: 732.2)

- Conducted legal research and drafted motion to dismiss Consolidated Amended Complaint and conducted legal research for reply brief in further support of motion to dismiss.

- Conducted legal research and drafted opposition brief to plaintiffs' motion to lift PSLRA discovery stay.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Prepared for and attended initial status conference before Judge Rosen in Detroit.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

B.    <u>ERISA Class Action</u> (Fees: $185,516.55; Hours: 531.3)

- Conducted legal research and drafted motion to dismiss Consolidated Class Action Complaint and conducted legal research for reply brief in further support of motion to dismiss.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Reached agreement with plaintiffs to provide limited set of ERISA-specific documents and provided documents pursuant to agreement.

- Prepared for and attended initial status conference before Judge Rosen in Detroit.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

## BANKRUPTCY MATTERS

C. <u>Debtor In Possession Financing</u> (Fees: $85,419.00; Hours: 178.8)

- Rendered advice to the Debtors with respect to the Debtors' use of and compliance with the DIP Facility.

- Advised Debtors regarding and drafted a collateral access agreements to the DIP Facility.

- Responded to discovery requests from the ad hoc committee including the production of documents, drafting of responses to interrogatories and conferences with the ad hoc committee regarding the same.

- Negotiated and obtained amendments to the DIP Facility as necessary.

- Advised Debtors and participated in meetings and teleconferences regarding a possible refinancing of the DIP Facility.

- Prepared 8-K filings with respect to amendments to the DIP Facility.

D. <u>Employment Applications and Objections</u> (Fees: $162,371.50; Hours: 342.3)

- Advised the Debtors regarding the retention of various professionals including Deloitte & Touche, LLP and KPMG, to render services in connection with the reorganization of the Debtors' business and the prosecution of these chapter 11 cases.

- Drafted and filed applications and affidavits relating to the retention of KPMG including amendments to their retentions and supplemental filings.

- Advised the Debtors regarding and participated in meetings and teleconferences to develop strategies to respond to the appeal of the lead plaintiffs (the "<u>Lead Plaintiffs</u>") to the retention order of Deloitte & Touche, LLP ("<u>D&T</u>").

- Conducted research regarding and prepared reply brief to the Lead Plaintiffs' appellate brief on the D&T retention order.

- Prepared for and attended argument on appeal of Lead Plaintiffs' to the retention order of D&T.

- Conducted research regarding and prepared response to the Lead Plaintiffs' motion to expedite the appeal of the D&T retention order.

E. <u>Securities Advice</u> (Fees: $2,514.00; Hours: 10.3)

- Prepared, processed and distributed audit response letter.

30.    S&S submits that the professional services performed by S&S were necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest. Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

31.    Pursuant to a separate arrangement between S&S and the Debtors those services performed in relation to the Litigation Matters were billed with the application of certain discounts to fees and expenses (the "<u>Discounted Rate</u>"). In accordance with the Discounted Rate, billing rates for the Litigation Matters were frozen through March 22, 2006, at the rates in effect for such matters prior to October 1, 2005. The rates charged during the Compensation Period with respect to the Litigation Matters, both during and after the above rate freeze, were further discounted by 10%. In addition, the Debtors were not billed for non-working travel time relating to the Litigation Matters.

32.    The professional services performed by S&S on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 2,024.1 recorded hours by S&S's members, counsel, associates, and paraprofessionals. Of the aggregate time expended, 407.5 recorded hours were expended by partners and counsel of S&S, 1,177.6 recorded hours

were expended by associates, and 439 recorded hours were expended by paraprofessionals of

S&S. The professional services were performed with expedience and in an efficient manner.

33.    During the Compensation Period, S&S's hourly billing rates for attorneys

ranged from $235.00 to $795.00 per hour. Allowance of compensation in the amount requested

would result in a blended hourly billing rate for attorneys of approximately $429.50 (based on

1,585.1 recorded hours for attorneys at S&S's regular and negotiated billing rates in effect at the

time of the performance of services). Such fees are reasonable based on the customary

compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a

competitive national legal market. As noted, attached hereto as <u>Exhibit B</u> is a schedule listing

each S&S professional and paraprofessional who performed services in these cases during the

Compensation Period, the hourly rate charged by S&S for services performed by each such

individual, and the aggregate number of hours and charges by each such individual.

## <u>Actual and Necessary Disbursements of S&S</u>

34.    As set forth in <u>Exhibit C</u> hereto, S&S has disbursed $69,454.96 in

expenses incurred in providing professional services during the Compensation Period. These

expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.

For example, in order for S&S to properly analyze and address the complex issues that have

arisen in these chapter 11 cases, S&S attorneys performed considerable electronic research

during the Compensation Period, all of which was necessary to facilitate the Debtors'

reorganization and in the best interests of the Debtors' estates.

35.    Consistent with firm policy, attorneys and other employees of S&S who

worked late into the evenings or weekends were reimbursed for their reasonable meal costs and

their cost for transportation from the office to home. S&S's regular practice is not to include

components for those charges in overhead when establishing billing rates and to charge its clients

for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Guidelines.

36.     Likewise, consistent with firm policy, given the time constraints imposed by the circumstances of these cases which required S&S attorneys and other employees to work late into the evenings and weekends, S&S has been required to utilize some overtime secretarial help, thereby incurring a certain amount of overtime charges.

37.     S&S's standard rate is $0.18 per page for photocopying expenses, which is less than the $0.20 per page maximum permitted by the Guidelines. In compliance with the Guidelines S&S does not charge for in-coming facsimiles. With respect to out-going facsimile expenses, as permitted in the Guidelines, S&S charges $1.25 per page for domestic facsimile transmissions and $2.50 per page for international facsimile transmissions. These charges are intended to cover S&S's direct operating costs, which costs are not incorporated into the S&S hourly billing rates. Only clients who actually use services of the types set forth in Exhibit C hereto are charged for such services. The effect of including such expenses as part of the hourly billing rates would impose unfairly such costs upon clients who do not require extensive photocopying and other facilities and services.

38.     Pursuant to the Discounted Rate, S&S charges the Debtors $0.15 per page for photocopying performed in relation to the Litigation Matters as opposed to the $0.18 per page standard rate and the $0.20 per page maximum permitted by the Guidelines.

39.     In addition, because of the multiple locations of the Debtors' businesses, long distance telephone calls were required. On several occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of

such express services.  These disbursements are not included in S&S's overhead for the purpose

of setting billing rates.  S&S has made every effort to minimize its disbursements in these

chapter 11 cases.  The actual expenses incurred in providing professional services were

necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors,

their estates, and creditors.

40.   Throughout these cases, S&S has expended a considerable effort to "self

police" its fees by critically reviewing all time charges entered into its billing system.  S&S's

vigilance in scrutinizing the time billed to the Debtors' has led to the voluntary reductions.

41.   To accommodate the Debtors, S&S has billed its non-working travel time

for the Bankruptcy Matters at 50%, which results in a voluntary fee reduction of $6,819.00.

These voluntary reductions were taken on a monthly basis and are already incorporated into the

exhibits hereto.

42.   Those fee reductions are in addition to efforts usually expended by S&S to

ensure that its clients are not charged for unnecessary services.  In that regard, as is the firm's

policy, S&S carefully managed staffing in a manner to avoid overstaffing and, where possible

(after taking into consideration the nature and complexity of a matter or dispute), utilized

attorneys with lower billing rates.

### The Requested Compensation Should Be Allowed

43.   Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern this Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 of the Bankruptcy Code, provides

that a court may award a professional employed under section 327 of the Bankruptcy Code

"reasonable compensation for actual, necessary services . . . and reimbursement for actual,

necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award

of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court
> shall consider the nature, extent and the value of such services, taking into
> account all relevant factors, including –
>
>> the time spent on such services;
>>
>> the rates charged for such services;
>>
>> whether the services were necessary to the administration of, or
>> beneficial at the time which the service was rendered toward the
>> completion of, a case under this title;
>>
>> whether the services were performed within a reasonable amount of time
>> commensurate with the complexity, importance, and nature of the
>> problem, issue or task addressed; and
>>
>> whether the compensation is reasonable based on the customary
>> compensation charged by comparably skilled practitioners in cases other
>> than in cases under this title.

11 U.S.C. § 330(a)(3).

44.    Applying these factors, S&S respectfully submits that the services for

which it seeks compensation in this Application were beneficial and necessary to the Debtors'

cases and reorganization.  Moreover, S&S submits that the compensation sought for these

services is reasonable in light of the nature, extent and value of those services to the Debtor, its

estate and all parties in interest.

45.    Throughout the Compensation Period, S&S worked diligently to anticipate

obstacles to the Debtors' reorganization and to respond to the problems it faced -- from emergent

crises to more mundane matters.  These services, in addition to the services more directly

focused on the reorganization process, were necessary and beneficial to the Debtors' estate and

were consistently performed in a timely manner commensurate with the complexity, importance

and nature of the issues involved. Accordingly, allowance of the compensation sought herein is
warranted.

46.    In addition to time and labor devoted, other factors may be considered in
awarding fees for legal services. In considering the reasonableness of fees, courts often consider
the standards established in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert.
denied, 431 U.S. 904 (1977), and then to determine what a reasonable fee would be under the
circumstances. See also D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383
(9th Cir. 1990); Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1976). Accordingly,
these factors generally considered in determining the reasonableness of a fee application are:
(i) the time and labor required, the novelty and difficulty of the questions involved and the skill
requisite to perform the legal service properly; (ii) the likelihood, if apparent or made known to
the client, that the acceptance of the particular employment will preclude other employment by
the lawyer; (iii) the fee customarily charged in the locality for similar services; (iv) the amount
involved and the results obtained; (v) the time limitations imposed by the client or by
circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the
experience, reputation and ability of the lawyer or lawyers performing the services; and
(viii) whether the fee is fixed or contingent. All of these factors justify the compensation sought
herein.

## No Duplication of Service Among Counsel

47.    S&S has developed a cooperative working relationship with other firms
retained by the Debtors, including, among others, Skadden, Arps, Slate, Meagher & Flom LLP,
Togut, Segal & Segal LLP, the Groom Law Group Chartered and O'Melveney & Myers LLP.
Because each firm is aware of each of the other's role and scope of services being provided to the
Debtors, S&S believes that no unnecessary duplication of services has occurred. As a result, the

Debtors' law firms were able to provide the necessary legal services to the Debtors in an expeditious and efficient manner.

### Review of Application by Debtors

48.     As provided in section II.A.5 of the UST Guidelines, the officer designated by the Debtors to be responsible for such matters, David Sherbin, has been provided with a copy of this Application.  Mr. Sherbin has approved the amounts requested for compensation for professional services and reimbursement of actual and necessary expenses as set out in this Application.

### Requirements of Local Rule 9013-1(b)

49.     Given that there are no novel issues of law presented herein and that the legal authority for the relief being sought is set forth herein, S&S respectfully requests that this Court waive the requirement that S&S file a memorandum of law in support of this Application as provided in Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

### No Prior Request

50.     No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE S&S respectfully requests (i) allowance of compensation for professional services rendered during the Compensation Period in the amount of $750,297.60 and reimbursement for actual and necessary expenses S&S incurred during the Compensation Period in the amount of $69,454.96; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to S&S's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) this Court grant S&S such other and further relief as is just.

Dated:   New York, New York
         July 31, 2006

By: _____
    Douglas P. Bartner (DB-2301)
    Andrew V. Tenzer (AT-2263)

    SHEARMAN & STERLING LLP
    599 Lexington Avenue
    New York, New York  10022
    Telephone: (212) 848-4000
    Facsimile:  (212) 848-7179

    Special Counsel to the Debtors and
    Debtors in Possession