Hearing Date and Time:  October 19, 2006, 10:00 a.m.
Objection Deadline:    October 12, 2006, 4:00 p.m.

**COVINGTON & BURLING LLP**

1330 Avenue of the Americas
New York, NY 10019-5400
(212) 841-1000
Aaron R. Marcu (AM-6309)
Susan Power Johnston (SJ-9386)

Foreign Trade and Special Corporate Committee
Counsel to the Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
          In re                               :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                        Debtors.              :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SECOND INTERIM APPLICATION OF COVINGTON & BURLING LLP,
FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE LEGAL COUNSEL
TO THE DEBTORS AND DEBTORS-IN-POSSESSION,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM FEBRUARY 1, 2006 THROUGH MAY 31, 2006**

TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE:

Covington & Burling LLP ("**Covington**"), foreign trade and special corporate

committee legal counsel to the above-captioned debtors and debtors-in-possession (collectively,

"**Delphi**", the "**Company**" or the "**Debtors**"), submits this second interim application (the

"**Second Application**") for allowance of compensation for professional services rendered and

reimbursement of expenses incurred from February 1, 2006 though May 31, 2006 (the "**Second Application Period**").

## PRELIMINARY STATEMENT

1.    By this Second Application and pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Covington requests that this Court authorize: (a) interim allowance of compensation for professional services Covington rendered during the Second Application Period in the amount of $551,937.00; and (b) the reimbursement of actual and necessary expenses Covington incurred in connection with the rendition of such professional services in the amount of $22,773.74.[1]

2.    The Second Application reflects the requisite time, skill and effort Covington expended during the Second Application Period providing assistance to the Company as its foreign trade and special corporate committee legal counsel.  Covington has:  (a) advised and assisted the Company on U.S. foreign trade control matters, including the scope, applicability, licensing and compliance requirements under the International Traffic in Arms Regulations, Directorate of Defense Controls, U.S. Department of State; (b) advised a Special Committee (the "**Special Committee**") of the Company's Board of Directors (the "**Board**") in connection with demands which have been or may be made by Delphi shareholders with regard to various accounting issues now under investigation and in litigation; and (c) advised the Special Committee in connection with the Company's external auditor selection process.

---

[1]    Certain expenses incurred during the Second Application Period may not have been posted as of the date of this Second Application.  Covington reserves the right to seek reimbursement for such expenses at a later date.

3.    This Court has jurisdiction over this Second Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these cases and this Second Application is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## GENERAL BACKGROUND

4.    On October 8, 2005 (the "**Petition Date**"), Delphi and certain of its U.S. subsidiaries filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.  On October 14, 2005, three additional U.S. subsidiaries of Delphi also sought relief in this Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

5.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors.  On March 22, 2006, the Court directed the United States Trustee to appoint an equity committee to represent the interests of Delphi's shareholders.  No trustee or examiner has been appointed in the Debtors' cases.

6.    On November 4, 2005, the Court issued an Order Under 11 U.S.C. §§ 331 (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Setting a Final Hearing Thereon (Docket No. 869) (the "**First Interim Compensation Order**"), pursuant to which, on March 31, 2006 and April 28, 2006, Covington made its First Application and Revised First Application (as defined below).

7.    On February 17, 2006, the Debtors filed an Application for Order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and

Retention of Covington & Burling as Foreign Trade and Special Corporate Committee Legal

Counsel to Debtors (Docket No. 2424) (the "**Retention Application**"), seeking the retention of

Covington *nunc pro tunc* to October 8, 2005.

8.   On March 8, 2006 and March 28, 2006, the Court filed the first and second

Supplemental Orders Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals, amending and supplementing the First

Interim Compensation Order.  The March 8 order (Docket No. 2747) established timelines for

the submission of applications, and provided for the establishment of a fee committee.  The

March 28 order (Docket No. 2986) further clarified the timing for the filing of fee applications,

and set a date for a hearing on those applications which had been received in a timely fashion.

9.   On March 9, 2006, the Court granted the Retention Application, authorizing

the employment and retention of Covington as Foreign Trade and Special Corporate Committee

Legal Counsel to the Debtors (Docket No. 2769) (the "**Retention Order**").

10. Before the Petition Date, Covington performed numerous services for the

Debtors.  See Affidavit of Aaron R. Marcu Pursuant to Section 504 of the Bankruptcy Code and

Bankruptcy Rule 2016 (the "**Marcu Affidavit**"), attached as **Exhibit A**.  As a result of these

prepetition services, Covington was owed, and continues to be owed, approximately

$263,559.79.  Covington has filed a proof of claim regarding this amount, and neither the

compensation nor expenses requested pursuant to this Second Application includes any portion

of this amount.

11. On March 31, 2006, Covington filed its First Interim Application of

Covington & Burling, as Foreign Trade and Special Corporate Committee Legal Counsel to the

Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and

Reimbursement of Expenses Incurred for the Period from October 8, 2005 Through January 31, 2006 (Docket No. 3060) (the "**First Application**").

12. On April 18, 2006, the Court issued its Order Approving Joint Interest Agreement Between Debtors and Official Committee of Unsecured Creditors, Implementing Protective Order, And Approving Procedures to Protect Information in Fee Statements (Docket No. 3279) (the "**Joint Interest Agreement Order**").  In recognition of the confidential, privileged and sensitive nature of the work performed by some of the Debtors' professionals, the Joint Interest Agreement Order authorized confidential time records to be filed under seal. A copy of the Joint Interest Agreement Order is attached as **Exhibit B.**

13. Due to the confidential nature of Covington's time entries, on April 28, 2006, Covington withdrew the First Application, and filed its Revised First Interim Application of Covington & Burling, as Foreign Trade and Special Corporate Committee of Legal Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from October 8, 2005 Through January 31, 2006 (Docket No. 3509) (the "**Revised First Application**"), to comply with the procedures implemented by the Joint Interest Agreement Order.

14. On May 5, 2006, the Court issued the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 3630) (the "**Interim Compensation Order**").  The Interim Compensation Order provides for the establishment of a Joint Fee Review Committee (the "**Fee Committee**") and establishes protocols regarding the composition, mandate and procedures relating to the Fee Committee.

15. On June 19, 2006, the Fee Committee issued a memorandum containing guidelines for retained professionals to use when billing time (the "**Fee Committee Guidelines**").  The Fee Committee Guidelines include a timetable for the submission of budgets and future fee applications by the Debtors' retained professionals, formatting requirements for all submissions to the Fee Committee, and a detailed delineation of recommended timekeeping methods, expense categories and examples of improper timekeeping procedures.

16. On July 13, 2006, the Court issued the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 4545) (the "**Fourth Interim Compensation Order**"). The Fourth Interim Compensation Order rescheduled the hearing date on the first interim fee applications of the Debtors' retained professionals from July 19, 2006 to October 19, 2006, when they may be considered along with the professionals' second interim fee applications, including this Second Application, and provided that one-half of the amount held back by the Debtors from certain fees requested on account of time billed through May 31, 2006 be released.

## COVINGTON'S FEES AND EXPENSES

17. Covington's services in these cases have been substantial, necessary, and beneficial to the Debtors and the Special Committee, the Company's creditors, and other parties-in-interest.  Throughout the Second Application Period, Covington has addressed a variety of pressing issues that required Covington, in the discharge of its professional responsibilities, to devote substantial time by its professionals on an ongoing and, at times, daily basis.

6

18. As of the date of this Second Application, Covington has received payment of 90% of the value of the services rendered and 100% of the value of the expenses incurred covered in this Second Application, and Covington has submitted invoices for postpetition services rendered to the Special Committee and to the Debtors for payment pursuant to the Interim Compensation Order.

19. No agreement or understanding exists between Covington or any other entity for the sharing of compensation to be received for services rendered in or in connection with this case.

20. Covington's personnel maintain written contemporaneous records of the time expended in rendering professional services to the Debtors and the Special Committee.  A copy of the daily time records for the Second Application Period, broken down by matter and listing the name of the attorney or paraprofessional, the date on which the services were performed, and the amount of time spent in performing the services, is attached as **Exhibit C**.

21. Because many of the services Covington rendered during the Second Application Period are confidential and sensitive, Covington has filed Exhibit C to this Application under seal pursuant to the Joint Interest Agreement Order.

22. Attached as **Exhibit D** is a list of the attorneys and paraprofessionals who have worked on Delphi matters during the Second Application Period, the aggregate time expended by each individual during the Second Application Period, his or her hourly billing rate during the Second Application Period, and the amount of Covington's fees attributable to each individual.[2]  Additionally, included as part of Exhibit D is a list of all the matters for which

---

[2]         Covington customarily adjusts its billing rates on an annual basis, usually as of October 1 of each year. However, if Covington increases its rates during the pendency of the Delphi proceeding, it will seek compensation (continued…)

services were rendered and the aggregate amount of hours and fees expended for each of those matters.

23. Covington also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of professional services. A schedule setting forth the categories of expenses and amounts for which reimbursement is requested is attached as **Exhibit E**.

## SUMMARY OF SERVICES RENDERED

24. The following summary highlights the principal areas to which Covington devoted substantial time and attention during the Second Application Period. The full breadth of Covington's services is reflected in Covington's time records.

### Foreign Trade Control Representation

25. Covington provided advice and assistance to the Debtors on many facets of U.S. foreign trade control laws, including compliance with export laws administered by the Departments of Commerce and State, import laws administered by the Department of State and Bureau of Customs and Border Protection, and economic sanctions programs administered by the Treasury Department.

26. Covington attorneys assisted the Debtors in evaluating certain sales by the Debtors' foreign affiliates for compliance with U.S. foreign trade controls, and assisted on issues relating to the export from the U.S. of various items including machines, chemicals, electrical components and software.

---

subject to the terms of its engagement letter dated June 8, 2005, pursuant to which Covington will not increase its rates charged with respect to the representation of the Special Committee until June 8, 2006, other than for the regular progression of Covington associates as they increase in seniority.

27. Covington assisted the Debtors in revising their Department of State registration and in the drafting and submission of regulatory applications on behalf of the Debtors.

28. Covington attorneys drafted and revised foreign trade control compliance questionnaires and policies for the Debtors, provided training to the Debtors' employees in compliance with foreign trade control laws, and consulted with the Debtors on the development of various compliance initiatives.

<u>Special Committee Representation</u>

29. In response to a demand letter issued by a Delphi shareholder, a Special Committee of the Board was formed to investigate issues now in litigation and/or under investigation, to advise the Board regarding whether there are viable claims against potential defendants in connection with these issues, and, if so, to make recommendations regarding whether it is in the Company's best interest to pursue them.

30. As counsel to the Special Committee, Covington attorneys reviewed numerous documents relating to these issues, including emails, notes, memoranda, correspondence, presentations, contracts and accounting records.  Covington attorneys conducted research regarding legal standards applicable to a corporate board's response to a shareholder demand and research regarding potential causes of action against current and former Delphi directors and officers.  Covington attorneys participated in numerous meetings and telephone conferences with the members of the Special Committee to provide updates on work completed, present key evidence, provide advice regarding proposed investigative steps, and receive direction from the Special Committee.

31. Covington attorneys prepared for and conducted interviews of certain current and former officers and directors of the Company.  In preparation for these interviews, Covington attorneys reviewed key documents, and prepared materials and exhibits to be used during the interviews.  In addition, Covington attorneys prepared memoranda regarding those interviews.

Auditor Selection Process Representation

32.     Covington advised the Special Committee in connection with the process utilized by management and the Audit Committee to select a new external auditor.

Case Administration

33. During the Second Application Period, Covington prepared and drafted the First Application, Revised First Application and all supporting documents after reviewing the applicable federal and local requirements.

34. Throughout the progress of the Debtors' chapter 11 cases, Covington has communicated extensively with the Debtors and the Special Committee, participating in meetings and telephone conferences with representatives of the Debtors and members of the Special Committee, and exchanging email and other correspondence.  These communications were crucial in keeping the Debtors, the Special Committee and the members of the Board apprised of the status of issues of concern to them.

35. As highlighted above, Covington has provided essential services to the Debtors and the Special Committee, and these services have benefited the Debtors, the Special Committee, their creditors and other parties-in-interest in these bankruptcy cases.  Covington rendered these services in an expeditious and efficient manner and in compliance with the requirements of the Bankruptcy Code.

advised the Special Committee in connection with the Company's external

auditor selection process;

## COVINGTON'S REQUEST FOR INTERIM COMPENSATION

36. The allowance of interim compensation for services rendered and

reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section

331 of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply to
> the court not more than once every 120 days after an order for
> relief in a case under this title, or more often if the court permits,
> for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.

37. The First Interim Compensation Order and Interim Compensation Order

require professionals in the Debtors' chapter 11 cases to serve monthly fee statements upon

notice parties listed in those Orders[3] to obtain allowance of compensation and reimbursement of

80% of fees and 100% of expenses identified in each monthly statement.  Approximately every

120 days, professionals in the Debtors' chapter 11 cases serve and file with the Court an

application for interim or final compensation pursuant to sections 330 and 331 of the

Bankruptcy Code.  The Interim Compensation Orders are not intended to alter the fee

application requirements set forth in sections 330 and 331 of the Bankruptcy Code.  See First

Interim Compensation Order at ¶ 2(b).

---

[3] As modified by the Joint Interest Agreement Order.

38. Section 330(a)(1) of the Bankruptcy Code provides, in pertinent part, that a court may award to a professional person, including a debtor's attorney:

> reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney . . . .

11 U.S.C. § 330(a)(1).  The Congressional intent and policy expressed in section 330 of the Bankruptcy Code is to provide for adequate compensation to attract qualified and competent practitioners to bankruptcy cases.

39. Covington submits that its request for interim allowance of compensation is reasonable.  The services rendered by Covington, as highlighted above, were necessary to fulfill the Debtors' and the Special Committee's requests for legal counsel.

40. Covington has made, and continues to make, efforts to work with the Debtors' other counsel to ensure that there is no unnecessary duplication of work between Covington and such other firms.  Covington and the other firms retained in these chapter 11 cases have clearly delineated the division of labor between them to maximize the efficient usage of their combined resources by the Debtors' estate.

41. The services rendered by Covington during the Second Application Period were performed diligently and efficiently.  When possible, Covington delegated tasks to lower-cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the particular task at issue.  While that approach may have required intra-office conferences or involved individual attorneys who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency.  The blended hourly rate for all attorneys and paraprofessionals is approximately $388.00, which is within the range of fees normally charged for similar services rendered in a chapter 11 case by major law firms in the New York City and Washington, D.C. areas.

42. The services rendered to the Debtors by Covington during the Second

Application Period required an aggregate expenditure of 2,210.80 recorded hours of the time of

attorneys and paraprofessionals.  Based upon the number of hours spent and Covington's hourly

billing rate established by the engagement letter dated June 8, 2005, the value of the recorded

services rendered is $551,937.00.  Exhibit D sets forth a list of such individuals, the aggregate

amount of time expended by each and the current hourly billing rate for each.  The fair and

reasonable value of the services rendered and recorded by Covington to the Debtors during the

Second Application Period is set forth in Exhibit C and summarized above.

### DISBURSEMENTS

43. Covington incurred actual and necessary out-of-pocket expenses during the

Second Application Period, in connection with the rendition of the professional services

described above, in the amount of $22,773.74, as set forth in detail in Exhibit E.[4]

44. The disbursements for which Covington seeks reimbursement include the

following:

1.  Duplicating - Charged at $0.15 per page;

2.  Telecommunications - Long-distance calls and long-distance facsimile
    transmissions are billed at actual cost.  There is no charge for incoming
    facsimiles;

3.  Computer Research Charges - Covington's practice is to bill clients for
    LEXIS and Westlaw research at actual cost;

4.  Overtime Expenses - Covington's practice is to allow any attorney
    working later than 8:00 p.m. and any legal assistant working later than
    7:30 p.m. to charge a working meal to the appropriate client.  The meal
    charge is limited to $20 per person.  Upon occasion, the actual expense for

---

[4] Covington's standard practice is to treat certain expenses as having been incurred when such obligations
are recorded and reflected as payable in Covington's accounting system.

a meal exceeded $20, and in those cases, Covington absorbed the amount in excess of $20 and did not bill the Debtors for that excess amount.  In compliance with the Fee Committee Guidelines, these instances are noted and itemized in Exhibit E;[5]

5.    <u>Local Car Service</u> - Covington's practice is to allow attorneys, legal assistants and secretaries to charge car service to the appropriate client after 8:00 p.m.;

6.    <u>Delivery Services</u> - Covington's practice is to charge postal, overnight delivery and courier services at actual cost; and

7.    <u>Overtime Word Processing Charges and Secretarial Overtime</u> - Covington's practice is to bill clients for overtime word processing charges and secretarial overtime at actual cost, and, therefore, such charges are included in this Second Application.

## <u>COMPLIANCE WITH LOCAL RULES, U.S. TRUSTEE GUIDELINES AND FEE COMMITTEE GUIDELINES</u>

45. Covington submits that this Second Application complies with all provisions of the guidelines set forth by this Court in its Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "**Local Rules**"), and its administrative orders M-104 and M-150, and with the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "**U.S. Trustee Guidelines**").

46. The Fee Committee Guidelines require applicants to submit their invoices and fee applications to Legal Cost Control, the Fee Examiner for the Fee Committee (the "**Fee Examiner**").  As of the date of this Second Application, the Fee Examiner was not yet covered by the Joint Interest Agreement Order.  As a result, the chairman of the Fee Committee and the

---

[5]        All overtime meals are therefore in compliance with this Court's Local Administrative Order M-150, dated April 19, 1995.

Fee Examiner have confirmed that the requirement that Covington submit its fee statements and applications to the Fee Examiner is waived.  Covington expects that by the time of the hearing on this Second Application, this issue will be resolved.  The individual members of the Fee Committee are covered by the Joint Interest Agreement Order, and Covington has served its fee statements upon them, and will serve this Second Application and all time records upon them.

47. For the most part, Covington believes that the Fee Committee Guidelines track the U.S. Trustee Guidelines.  However, in some respects, the Fee Committee Guidelines go beyond the U.S. Trustee Guidelines.

48. In addition, the Fee Committee Guidelines require that time billed for the preparation of fee statements not exceed 1.5% of the total claimed.  This is far more restrictive than the U.S. Trustee's Guidelines, which set no limit on the percentage of a bill that may be devoted to the preparation of a fee statement.  While Covington has performed all tasks as efficiently as possible, the circumstances of the Debtors' case and particularly the issuance of the Joint Interest Agreement Order after the filing of Covington's First Application necessitated that more time be spent on the preparation of and revisions to the First Application than would normally have been the case.

49. Finally, the Fee Committee recommends that firms not be reimbursed for performing conflicts checks.  Covington respectfully disagrees with this recommendation. Bankruptcy professionals are required by statute to perform rigorous conflicts checks of all parties-in-interest to ensure that they do not hold or represent any adverse interests.  The consequences of failing to perform the checks with meticulous attention can be harsh for a firm. In this case, with thousands of debtor entities and many more thousands of creditors and other parties-in-interest, performing the initial and supplemental conflicts checks has been an

extremely onerous and very time-consuming task.  Covington does not bill for the hours spent

by its conflicts staff searching its conflicts database, but it does bill, and expects to be

reimbursed, for the time spent by paralegals and attorneys supervising the staff's work,

compiling the lists of parties-in-interest whom Covington represents in unrelated matters and

preparing the requisite disclosure declarations.

## **PROCEDURE**

50. In accordance with the First Interim Compensation Order, the Interim

Compensation Order, the Joint Interest Agreement Order, and the Court's Local Rules, notice of

this Second Application has been provided to the 2002 notice list, and the Second Application

with all exhibits has been served on: the Debtors, their attorneys, the United States Trustee,

counsel to the Official Committee of Unsecured Creditors and the members of the Fee

Committee.  The Second Application without the time records has been served on counsel for

the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors'

postpetition credit facility, and the Fee Examiner.  When the Joint Interest Agreement Order is

extended to the Fee Examiner, Covington will provide the Fee Examiner with a copy of the time

records for the Second Application.  Covington assumes that this will occur well before the

October 19, 2006 hearing date, so that the Fee Examiner will have adequate time to review the

records before the hearing.  Covington submits that given the circumstances and the notice of

the relief requested herein, no other or further notice is required.

51. As the Second Application presents no novel issue of law, Covington

requests that the Court dispense with the requirement of Local Rule 9013-1(b) that a

memorandum of law be submitted herewith.

52. No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, Covington respectfully requests that this Court enter an order awarding Covington:

1.      interim compensation from the Debtors for services rendered for the period from February 1, 2006 through May 31, 2006, inclusive, in the amount of $551,937.00;

2.      reimbursement of actual and necessary expenses incurred in connection with the rendition of such services, in the amount of $22,773.74; and

3.      such other and further relief as may be just and proper.

Dated:  July 31, 2006

**COVINGTON & BURLING LLP**


By:    /s/ Aaron R. Marcu
   Aaron R. Marcu  (AM-6309)
   Susan Power Johnston  (SJ-9386)

1330 Avenue of the Americas
New York, NY  10019-5400
(212) 841-1000

**Foreign Trade and Special Corporate Committee Counsel to the Debtors and Debtors-in-Possession**