Charles E. Boulbol (CB-1049)
Charles E. Boulbol, P.C.
26 Broadway, 17th Floor
New York, New York 10004
(212) 825-9457
Attorneys for Russell Reynolds Associates, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Hearing Date and Time:<br>September 14, 2006 at 10:00 a.m. (EDT) |
| DELPHI CORPORATION, et al., | Objection Deadline:<br>September 7, 2006 at 5:00 p.m. (EDT) |
| Debtor. | Case No. 05-B-44481 (RDD)<br>Jointly Administered |
| | <u>Chapter 11</u> |

-----------------------------------------------------------X

**MOTION OF RUSSELL REYNOLDS ASSOCIATES, INC. FOR AN ORDER
GRANTING AN ALLOWED ADMINSTRATIVE CLAIM PURSUANT TO
SECTION 503(b) OF THE BANKRUPTCY CODE**

TO:   HONORABLE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE

Russell Reynolds Associates, Inc. ("RRA"), through its attorneys, states the following in support of its Motion for an Order granting an allowed administrative claim pursuant to Bankruptcy Code § 503(b).

**Jurisdiction and Venue**

1.   This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This application is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**Prior Motion Practice Between Debtor and RRA**

2. On November 9, 2005, Russell Reynolds Associates, Inc. ("RRA") filed a motion (the "Prior Motion") seeking to establish a deadline for the Debtor to assume or reject an executory contract between RRA and Debtor dated July 12, 2005 (the "Retainer Agreement"). A copy of the Retainer Agreement is attached as Exhibit A.

3. Following the commencement of this case on October 8, 2005 (the "Petition Date"), the Debtor insisted that RRA continue to perform its obligations under the Retainer Agreement. RRA filed the Prior Motion out of concern that its performance of the Retainer Agreement post-petition required the authorization of the Court.

4. On December 1, 2005 (the "December 1 Order"), the Court denied the Prior Motion but held "that RRA shall not be precluded from asserting a claim under 11 U.S.C. § 503(b) in these cases for services that it is performing post-petition under the executory contract by the fact that it has not been retained under 11 U.S.C. § 327." A copy of the December 1 Order is attached as Exhibit B.

5. It is indisputable that on the Petition Date, the Retainer Agreement was an executory contract within the meaning of 11 U.S.C. § 365(d)(2).

6. The Debtor has not purported to assume or reject the Retainer Agreement and at this time it would be profoundly inequitable to allow Debtor to do so. RRA has fully and successfully performed its obligations under the Retainer Agreement post-petition at the insistence of Debtor. The only open obligations under the Retainer Agreement are an ongoing employment guarantee from RRA to Debtor and RRA's entitlement to remuneration for its services. RRA therefore should be compensated under Bankruptcy Code 503(b) at the full measure of remuneration to which it is pursuant to the Retainer Agreement.

**Statement of Facts**

7. RRA successfully performed an executive recruiting search for Debtor's Director of Global Architecture and Infrastructure (the "Executive Search") pursuant to the Retainer Agreement.

8. RRA is one of the world's leading providers of executive recruiting services. On behalf of Debtor, RRA solicited and vetted individuals for employment by Debtor as its Director of Global Architecture and Infrastructure. RRA implemented a search strategy specifically tailored to the Debtor's needs and focused its approaches upon client contacts and references. RRA developed prospects, identified candidates, and scheduled interviews. Based upon this process, the most significant portion of which occurred post-petition, Eric Davis began employment with Debtor as its Director of Global Architecture on February 13, 2006.

9. The Retainer Agreement provides that RRA's fee for the Executive Search is one-third of the total compensation paid to Mr. Davis. In addition to the one-third of compensation payment, the Retainer Agreement also provides that RRA is to be paid a "communications charge" of $6,300.00 plus its out-of-pocket recruiting expenses.

10. In the event the Executive Search was unsuccessful, the Retainer Agreement provided that a "Minimum Fee" of $100,000 was to be paid RRA for the Executive Search without regard to outcome. The Minimum Fee was to be paid in three monthly retainers, all of which were billed pre-petition. Since RRA successfully placed Mr. Davis with Debtor, the Minimum Fee provisions of the Retainer Agreement are irrelevant. As such, the sole basis for calculating the fee due to RRA in accordance with the provisions of the Retainer Agreement is one-third of the total compensation.

11.     One-third of the total compensation paid to Mr. Davis, the Communications Charge and RRA's out-of-pocket recruiting expenses are equal to $217,176.39.  The Debtor has made payments to RRA totaling $40,393.18.  The unpaid balance due to RRA therefore is $173,662.13.  A copy of RRA's Client Invoice Statement is attached as Exhibit C.  Copies of the invoices rendered by RRA to Debtor are attached as Exhibit D.

12.     There appears to be no dispute between Debtor and RRA that $101,053.90 is currently due and payable by Debtor to RRA as an administrative expense.[1]  $101,053.90 roughly is the difference between one-third of Mr. Davis's total cash compensation and the Minimum Fee.  There does not appear to be any basis in either the Retainer Agreement or Bankruptcy Code § 503(b) to limit RRA's compensation for its complete performance post-petition of the Retainer Agreement by subtracting the Minimum Fee from the one-third of the total compensation paid to Mr. Davis.

13.     The sole remaining non-financial performance under the Retainer Agreement is RRA's guarantee to Debtor to again conduct the Executive Search if Mr. Davis "leaves Delphi during the first 12 months of employment for any reason other than just cause."  On February 13, 2007, if Mr. Davis remains employed by Debtor, and perhaps a later date if he is not, RRA will have fully performed its obligations under the Retainer Agreement.  RRA therefore is entitled to be paid one-third of the total cash compensation, plus the Communications Charge, plus RRA's out-of-pocket expenses in full.

---

[1] Unfortunately, however, Debtor's attempt to pay $101,053.90 to RRA was hijacked in the banking system and the payment never was received by RRA.  See check payable to unknown third party and forged endorsement affidavit attached as Exhibit E.  Debtor has informally responded to RRA's July 19, 2006 letter from Michael Iannico to Roland Clemente, a copy of which is attached as Exhibit F, with a representation that this payment ultimately will be made to RRA.

4

14. Under Section 503(b)(1)(A) of the Bankruptcy Code, RRA is entitled to an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate."

15. RRA's successful post-petition performance of its obligations under the Retainer Agreement gives rise to an administrative claim. "If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which depending on the circumstances of a particular contract, may be what is specified in the contract." NLRB v. Bildisco, 465 U.S. 513, 531 (1984) (citations omitted); see also In re FBI Distrib. Corp., 330 F.3d 36, 42-44 (1st Cir. 2003); In re Applied Theory Corp., 312 B.R. 225, 239 (Bankr. S.D.N.Y. 2004); In re Enron Corp., 270 B.R. 695, 706-07 (Bankr. S.D.N.Y. 2002); In re Patient Educ. Media, 221 B.R. 97, 101-02 (Bankr. S.D.N.Y. 1998); In re Broaddus Hosp. Assc., 159 B.R. 763, 772 (Bankr. N.D. W. Va. 1993); In re A.H. Robins, 68 B.R. 705, 711 (Bankr. E.D. Va. 1986).

16. Under this line of well established authority, a non-debtor party to an executory contract who performs services for the Debtor after the filing of the bankruptcy petition, but prior to the assumption or rejection of the contract, has an administrative expense claim. Debtor most certainly elected to demand that RRA continue to perform under the Retainer Agreement and Debtor obtained post-petition the benefit of Mr. Davis's employment as its Director of Global Architecture.

17.   Since RRA's performance of the Retainer Agreement essentially is complete, there no longer is any basis upon which the Debtor may reject the Retainer Agreement.  See In re Nitec Paper Corp., 43 B.R. 492, 498 (Bankr. S.D.N.Y. 1984); In re Atlantic Computer Systems, Inc., 173 B.R. 844, 849 (Bankr. S.D.N.Y. 1994) ("a debtor may not 'cherry pick' pieces of contracts it wishes to assume").

18.   RRA assumes that Debtor ultimately will make good on the hijacked $101,053.90 payment.  What remains in dispute is the arbitrary determination by Debtor that the amounts billed to Debtor pre-petition as the Minimum Fee can no longer be paid as an administrative expense.  There is no basis upon which to arbitrarily subtract the Minimum Fee from the amount due for the successful placement of Mr. Davis.  At this juncture, the Minimum Fee is irrelevant. "It is settled law that a claim arising under an executory contract is entitled to priority 'if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it.'" In re Unishops, Inc., 552 F.2d 305, 308 (2d Cir. 1977) (citation omitted).  RRA is entitled to be paid for the successful placement of Mr. Davis in accordance with the provisions of the Retainer Agreement as fully performed.  RRA therefore is entitled to the payment of $173,662.13.

19.   As the legal points and authorities upon which this Motion relies are incorporated herein, RRA respectfully requests that the requirement to file a separate memorandum of law under Local Rule 9013(b) be deemed satisfied.

CONCLUSION

WHEREFORE, RRA respectfully requests that the Court grant an allowed administrative claim in the amount of $173,662.13 under Bankruptcy Code Section 503(b)(1)(A), and such other and further relief which to the Court sees just and proper under the circumstances.

Dated: New York, New York
      August 2, 2006

                      CHARLES E. BOULBOL, P.C.

                      By: _____/ s /_____
                            Charles E. Boulbol (CB-1049)
                            26 Broadway, 17th Floor
                            New York, New York 10004
                            212-825-9457
                            Attorneys for Russell Reynolds Associates, Inc.