Hearing Date and Time: August 15, 2006 at 10:00 a.m.
Objection Deadline extended with Debtors' consent to August 8, 2006 at 9:00 p.m.

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P., HARBINGER CAPITAL PARTNERS, LLC
AND LAMPE CONWAY & CO., LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Delphi Corporation, et al. | ) | Case No. 05-44481 (RDD) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**RESPONSE AND SUPPLEMENTAL LIMITED OBJECTION OF THE**
**AD HOC EQUITY COMMITTEE TO MOTION FOR ORDER UNDER**
**11 U.S.C. § 365 AND FED. R. BANKR. P. 6006 AUTHORIZING REJECTION OF**
**CERTAIN EXECUTORY CONTRACTS WITH GENERAL MOTORS CORPORATION**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE

    Appaloosa Management L.P., with and through certain of its affiliates (collectively,

"Appaloosa"), Harbinger Capital Partners, LLC, with and through certain of its affiliates

(collectively, "Harbinger"), and Lampe Conway & Co., LLC, with and through certain of its

affiliates (collectively, "Lampe," and together with Appaloosa and Harbinger, each a "Shareholder" and collectively, the "Ad Hoc Equity Committee"),[1] by and through their undersigned counsel, hereby file this response and supplemental limited objection (the "Response") to the Motion for Order under 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 Authorizing Rejection of Certain Executory Contracts with General Motors Corporation (the "Motion")[2] filed by Delphi Corporation ("Delphi") and its affiliated debtors (collectively, with Delphi, the "Debtors"), and in response to the Motion, respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors are seeking this Court's authority to reject, at their discretion, over 5,000 supply contracts (the "GM Contracts") with its former parent, General Motors Corporation ("GM"). While the Ad Hoc Equity Committee recognizes the enormous benefits that inure to a debtor's estate as a result of the right to reject burdensome contracts pursuant to 11 U.S.C. § 365(a) and applauds the Debtors' commencement of the process of identifying and shedding such contracts, it cannot support the immediate wholesale rejection of such contracts, as such relief is unsupported by the Motion.

2. Based on the Debtors' pleadings and discovery taken to date, it is apparent that the Debtors have failed to establish that any particular GM Contract is burdensome. Indeed, the Debtors' rejection of any particular contract is inextricably intertwined with Delphi's labor situation: if labor costs are reduced sufficiently, as a result of the negotiation over labor issues and the Debtors' motion to reject the collective bargaining agreements of its various labor unions (the "1113/1114 Motion"), the Debtors may or may not need to actually reject the GM Contracts.

---

[1] The Ad Hoc Equity Committee represents approximately 15% of Delphi's issued and outstanding shares.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Until those issues play out, the Debtors are not in position to analyze the costs and benefits of rejection. The Debtors cannot be granted wholesale authority to reject thousands of contracts without having demonstrated that any of the GM Contracts are burdensome.

3. By their Motion, the Debtors are not actually seeking to reject the GM Contracts at this juncture, but rather are seeking authority to reject the contracts on a contract-by-contract basis upon 10 days' notice. Thus, the Ad Hoc Equity Committee views the Debtors' request as a procedural matter and supports entry of an order permitting rejection of the GM Contracts on a contract-by-contract basis on limited notice to parties in interest (including the Ad Hoc Equity Committee) demonstrating that the Debtors have exercised reasonable business judgment in determining that the contracts to be rejected are burdensome, and providing that rejection occurs without further order of the Court after the expiry of the notice period, unless an objection is timely filed, in which case rejection would require further order of the Court. If, by contrast, the Court determines that rejection may only occur en masse upon entry of an order granting the Motion, the Ad Hoc Equity Committee opposes such relief.

## BACKGROUND

4. On October 8, 2005, each of the Debtors filed respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"). The Debtors continue to operate their businesses as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.

6. On December 22, 2005, Appaloosa filed its Motion Pursuant to 11 U.S.C. § 1102(a)(2) for an Order Directing the U.S. Trustee to Appoint an Equity Committee in these Cases.

7. On March 30, 2006, the Court entered an order directing the U.S. Trustee to appoint an official committee of equity security holders.

8. On March 31, 2006, the Debtors filed the Motion, seeking authorization pursuant to section 365(a) of the Bankruptcy Code to reject the GM Contracts.

9. Contemporaneously with the filing of the Motion, on March 31, 2006, the Debtors also filed the 1113/1114 Motion seeking an order (a) authorizing the Debtors to reject, pursuant to section 1113(c) of the Bankruptcy Code, their collective bargaining agreements with certain of their unions and (b) modifying, pursuant to section 1114(g) of the Bankruptcy Code, the Debtors' obligations to provide medical and life insurance benefits for hourly retirees.

10. On April 17, 2006, Appaloosa filed a preliminary objection to the Motion (the "Preliminary Objection") in order to obtain discovery and protect shareholder interests with respect to the Motion.

11. By orders of this Court entered on June 13, 2006, the Court rescheduled the hearings on the 1113/1114 Motion[3] and the instant Motion  The hearings on the 1113/1114 Motion are scheduled to resume on August 11, 2006, and the hearing on the instant Motion is

---

[3] Fourth Amended Scheduling Order On Debtors' Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing Modification Of Retiree Welfare Benefits [Docket No. 4170].

scheduled to commence on August 15, 2006 (provided that the hearings on the 1113/1114 Motion are completed or resolved prior to that time).[4]

## RESPONSE/LIMITED OBJECTION

### I.    APPLICABLE STANDARD

12.    Pursuant to section 365(a) of the Bankruptcy Code, a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). While the Bankruptcy Code does not expressly provide a standard by which a court is to assess the assumption/rejection decision, courts have generally applied the business judgment test to a debtor-in-possession's decision to assume or reject an executory contract or unexpired lease. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir. 1993); Control Data Corp. v. Zelman (In re Minges), 602 F.2d 38 (2d Cir. 1979).

13.    In determining whether a decision to reject an executory contract is within the sound business judgment of the debtor-in-possession, courts often consider whether the contract is burdensome to the estate, whether rejection will provide real economic benefit to the estate, and whether rejection will result in large claims against the estate. See In re G Survivor Corp., 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994). Essentially, as the Debtors have recognized, section 365(a) of the Bankruptcy Code allows a debtor in possession an opportunity "to go through its inventory of executory contracts and decide 'which ones would be beneficial to adhere to and which ones would be beneficial to reject.'" Motion ¶ 62 (quoting Orion, 4 F.3d at 1098).

---

[4]    Pretrial And Scheduling Order Relating To Debtors' Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain Executory Contracts With General Motors Corporation [Docket No. 4169].

MIAMI 662404 v4 (2K)

5

## II. THE DEBTORS HAVE FAILED TO DEMONSTRATE SUFFICIENT GROUNDS TO SUPPORT REJECTION OF THE GM CONTRACTS

14. As noted above, to demonstrate that they have exercised sound business judgment in seeking authority to reject the GM Contracts, the Debtors must present some basis for their judgment, including establishing that the contracts are burdensome to the estate, that rejection will provide real economic benefit to the estate, and that rejection will not result in unreasonably large claims against the estate. See G Survivor Corp., 171 B.R. at 758. Because the Debtors seek authority to reject the GM Contracts on a contract-by-contract basis, the Debtors also must establish these factors on a contract-by-contract basis. The Debtors have failed to satisfy any of these factors with respect to the GM Contracts as a whole, much less on an individual basis.

15. The Debtors have failed to establish sufficiently that the GM Contracts are burdensome to their estates. Nor can they. In fact, the Debtors do not appear to have yet made a determination regarding which, if any, of the GM Contracts they would actually reject.

16. As noted above, whether or not the contracts are burdensome is inextricably intertwined with Delphi's labor situation: if labor costs are reduced sufficiently, as a result of a consensual resolution or implementation of relief if the 1113/1114 Motion is granted, Delphi may determine that particular GM Contracts should not be rejected and will decline to do so. Even if labor costs are only reduced somewhat, or the 1113/1114 Motion is denied, the Debtors still would have to determine their course of action at that time. Because the Debtors cannot determine burdensomeness at this time, as it is contingent on events that will unfold over the next several months, they cannot establish that rejection is now appropriate.

17. The Debtors also provide only a bare assertion that rejection of the GM Contracts will not result in unreasonably large rejection claims by GM. See Motion ¶ 70. The

bareness of the assertion and the lack of any substantive analysis indicates that the Debtors have not met their burden of demonstrating that rejection will not saddle the estate with exorbitant rejection damage claims. Rejecting the GM Contracts without knowing the magnitude of the potential rejection claims or conducting a simple cost-benefit analysis is clearly not sound business judgment, and thus the Debtors have failed to satisfy the standard for approval of the Debtors' rejection of the GM Contracts as a whole under section 365(a) of the Bankruptcy Code.

18. Again, despite the Debtors' failure to establish sufficient grounds at this time to warrant en masse rejection of the GM Contracts, the Ad Hoc Equity Committee supports the ability of the Debtors to reject burdensome GM Contracts on a contract-by-contract basis upon limited notice to parties in interest, including the Ad Hoc Equity Committee. The notice, however, must demonstrate that the Debtors have exercised reasonable business judgment in determining that the contracts to be rejected are burdensome, and provide parties in interest an opportunity to object. If no objection is filed, then rejection occurs without further order of the Court after the expiry of the notice period, and if an objection is timely filed rejection would occur only by further order of the Court.

## CONCLUSION

19. The Ad Hoc Equity Committee clearly favors the efforts of the Debtors to shed burdensome GM Contracts and, as explained above, would support entry of an order providing for an expedited procedure which furthers that goal. At this time, however, the Debtors have failed to meet their burden under section 365(a) of the Bankruptcy Code and actual rejection of the GM Contracts at this time cannot be approved.

Dated:  August 8, 2006
        Miami, Florida

    WHITE & CASE LLP
    Glenn M. Kurtz (GK-6272)
    Gerard Uzzi (GU-2297)
    Douglas P. Baumstein (DB-1948)
    1155 Avenue of the Americas
    New York, New York 10036-2787
    (212) 819-8200

    Thomas E Lauria (Admitted *Pro Hac Vice)*
    Frank L. Eaton (FE-1522)
    Ileana A. Cruz (Admitted *Pro Hac Vice)*
    Wachovia Financial Center
    200 South Biscayne Boulevard
    Miami, Florida 33131
    (305) 371-2700

    By:  /s/ Frank L. Eaton
          Frank L. Eaton


    ATTORNEYS FOR APPALOOSA
    MANAGEMENT L.P., HARBINGER CAPITAL
    PARTNERS, LLC AND LAMPE CONWAY &
    CO., LLC