**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
      mitchell.seider@lw.com
      mark.broude@lw.com

Counsel for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Delphi Corporation, <u>et al.</u>, | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO SPEEDLINE TECHNOLOGIES INC.'S MOTION**
**FOR ORDER DIRECTING RETURN OF RECLAIMED**
**<u>EQUIPMENT OR FOR IMMEDIATE PAYMENT THEREOF</u>**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases of Delphi Corporation ("Delphi") and certain of its affiliates (collectively, the

"Debtors"), by and through its undersigned counsel, hereby submits this objection (the

"Objection") to the Motion of Speedline Technologies Inc. ("Speedline") for Order Directing

Return of Reclaimed Equipment or for Immediate Payment Thereof (the "Motion").[1]  In support

of this Objection, the Committee respectfully states as follows:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

## BACKGROUND

1.      On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On October 14, 2005, the three remaining Debtors similarly filed voluntary petitions.

2.      The Committee was appointed nine days after the Petition Date, on October 17, 2005.[2]  Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker.

### A.      The Debtors' Prepetition Secured Debt

3.      The Debtors have prepetition secured obligations arising, *inter alia*, under that certain Third Amended and Restated Credit Agreement, dated as of June 14, 2005, among Delphi, as borrower, JPMorgan Chase Bank, N.A., as administrative agent (the "Administrative Agent"), the lenders from time to time party thereto (the "Prepetition Lenders"), and various other parties (as amended, supplemented, or otherwise modified from time to time, the "Prepetition Credit Agreement").  The Prepetition Credit Agreement provides for revolving loans, term loans, swingline loans, and the issuance of letters of credit up to an aggregate principal amount of $2.825 billion.  According to the Debtors, as of the Petition Date, Delphi was indebted to the Prepetition Lenders in the aggregate amount of approximately

---

[2]  The following members originally were appointed to the Committee: (a) Capital Research and Management Company; (b) Electronic Data Systems Corp.; (c) Flextronics International Asia-Pacific, Ltd.; (d) Freescale Semiconductor, Inc.; (e) General Electric Company; (f) IUE-CWA and (g) Wilmington Trust Company, as Indenture Trustee.  Flextronics International Asia-Pacific, Ltd., has since resigned from the Committee, and Tyco Electronics Corporation has since been appointed to the Committee.  The Pension Benefit Guaranty Corporation and the UAW have been added as *ex officio* members of the Committee.

2

NY\1084126.11

$2,579,783,051.85,[3] plus all interest accrued and unpaid as of the Petition Date, fees, costs,

expenses, and all charges related thereto (the "Prepetition Debt").  *See* DIP Motion, ¶ 18 [Docket

No. 42].

4.    Pursuant to that certain Guarantee and Collateral Agreement, dated as of June 14,

2005 (the "Guarantee Agreement"), Delphi's wholly-owned domestic subsidiaries (except for

certain subsidiaries) (the "Guarantors"), guaranteed Delphi's obligations under the Prepetition

Credit Agreement.[4]  The obligations of Delphi and the Guarantors under the Prepetition Credit

Agreement are secured by first-priority security interests in substantially all of the material

tangible and intangible assets of Delphi and the Guarantors owned at the time of execution of the

agreements or acquired at any time thereafter, with certain exceptions (not relevant hereto), and

all proceeds and products of any and all such assets (the "Collateral").  *See* Guarantee

Agreement, § 3.1.[5]

**B.    The Reclamation Claims and Procedures**

5.    On November 4, 2005, this Court entered the Amended Final Order Under 11

U.S.C. §§ 362, 503 and 546 and FED. R. BANKR. P. 9019 Establishing Procedures for Treatment

of Reclamation Claims [Docket No. 881] (the "Reclamation Order").  The Reclamation Order

---

[3] This amount consists of the sum of (i) the aggregate principal amount of approximately $2,488,329,620.59 in respect of loans made and (ii) the aggregate face amount of approximately $91,453,431.26 in respect of letters of credit issued.  *See* Final DIP Order, ¶ 3(a).

[4] According to the Debtors, each of the Guarantors is a Debtor herein.  *See* DIP Motion, ¶ 17.

[5] The deadline by which parties in interest (other than the Committee) could challenge the validity, enforceability, priority or extent of the Prepetition Debt, or the Administrative Agent's or the Prepetition Lenders' liens on the Collateral, *i.e.*, January 16, 2006, has passed.  *See* Final DIP Order, ¶ 16 [Docket No. 797].  No parties filed any timely challenges to the Prepetition Debt, or the Administrative Agent's or the Prepetition Lenders' liens.  The deadline by which the Committee may challenge the validity, enforceability, priority or extent of the Prepetition Debt, or the Administrative Agent's or the Prepetition Lenders' liens on the Collateral is January 18, 2007.  *See* Extension Stipulation, ¶ 3 [Docket No. 4160].  As of the date of this Objection, the Committee has not filed any challenges to the Prepetition Debt, or the Administrative Agent's or the Prepetition Lenders' liens.

NY\1084126.11

establishes the procedures for the resolution and treatment of reclamation claims filed against the

Debtors (the "Reclamation Claims").

6. Pursuant to these procedures, the Debtors assert they have reconciled many of the

factual predicates for each Reclamation Claim, and have sent a "Reclamation Statement" to each

reclamation claimant setting forth, among other things, the proposed amount of each such

claimant's Reclamation Claim and the basis therefor. As Speedline points out in its Motion,

however, each such Reclamation Statement was explicitly subject to certain "reserved defenses,"

and does not reflect an agreement by the Debtors to pay or honor any such claim, or that such

claim is entitled to treatment as a reclamation claim under section 546(c) of the Bankruptcy

Code.[6]

7. In its Motion, Speedline seeks an order directing the immediate return of certain

manufacturing equipment that is the subject of Speedline's reclamation demand (the

"Equipment") or immediate payment of its Reclamation Claim. However, Speedline is not

entitled to the relief requested (i) because of the existence of a prior, perfected, floating lien on

substantially all of the assets of the Debtors, Speedline's asserted Reclamation Claim has no

value under nonbankruptcy law and thus has no value under bankruptcy law and (ii) because

Speedline has not met its burden of proof and established the elements of a valid reclamation

claim by a preponderance of the evidence. Instead, Speedline's Reclamation Claim constitutes at

best a general unsecured claim.

---

[6] The Reclamation Order also provides that, prior to the Debtors' return of any goods in respect of any Reclamation Claim or the Debtors' acceptance or agreement to the allowance of or the payment of any Reclamation Claim, the Debtors shall as promptly as reasonably practicable provide the professionals to the Committee with a "Reclamation Report." *See* Reclamation Order, ¶ 3. The Debtors have not yet provided the Committee with the complete Reclamation Report; however, the Debtors and the Committee are in the process of working out a consensual protocol for allowing the Debtors to address individual Reclamation Claims in a manner to which both the Debtors and the Committee mutually agree.

NY\1084126.11

## OBJECTION

I.   **THE DEBTORS' SECURED DEBT RENDERS SPEEDLINE'S RECLAMATION CLAIM VALUELESS, AND SPEEDLINE IS NOT ENTITLED TO EITHER RECLAMATION OR AN ADMINISTRATIVE PRIORITY CLAIM**

    A.   **Speedline's Reclamation Claim is Subject to the Rights of the Prepetition Lenders as Good Faith Purchasers**

8.   Section 546(c) of the Bankruptcy Code, as applicable to these cases,[7] provides:

> (c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but –
>
> > (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods –
> >
> > > (A) before 10 days after receipt of such goods by the debtor; or
> > >
> > > (B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
> >
> > (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court -
> >
> > > (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
> > >
> > > (B) secures such claim by a lien.

9.   Section 546(c) of the Bankruptcy Code does not create an independent right of reclamation, but rather preserves any reclamation rights a seller may have under nonbankruptcy law.  *See, e.g.*, *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 132 (Bankr. S.D.N.Y. 2003); *Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999); *In re Quality Stores, Inc.*, 289 B.R. 324, 333 (Bankr. W.D. Mich. 2003) ("Section 546(c)

---

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective as of October 17, 2005 and does not affect these chapter 11 cases, which were filed on October 8, 2005.

NY\1084126.11

does not create any right of reclamation; instead it recognizes the reclamation rights established

by state law.").

10.     Section 2-702 of the Uniform Commercial Code ("Section 2-702") forms the

principal statutory basis of a seller's right of reclamation.  *See In re Arlco*, 239 B.R. at 267; *see*

*also In re Quality Stores*, 289 B.R. at 333 n.14 (Section 2-702 "governs the existence and extent

of a creditor's reclamation rights.").  Specifically, Section 2-702(2) establishes a seller's right of

reclamation:

> Where the seller discovers that the buyer has received goods on credit
> while insolvent he may reclaim the goods upon demand made within ten
> days after the receipt, but if misrepresentation of solvency has been made
> to the particular seller in writing within three months before delivery the
> ten day limitation does not apply. Except as provided in this subsection the
> seller may not base a right to reclaim goods on the buyer's fraudulent or
> innocent misrepresentation of solvency or of intent to pay.

U.C.C. § 2-702(2).  Section 2-702(3), however, limits such right by providing that the seller's

right of reclamation is "subject to the rights of a buyer in ordinary course or other good-faith

purchaser."  U.C.C. § 2-702(3); *see also In re Arlco*, 239 B.R. at 267 (citing cases); *In re Dairy*

*Mart*, 302 B.R. at 133; *Sandoz Pharms. Corp. v. Blinn Wholesale Drug Co., Inc. (In re Blinn*

*Wholesale Drug Co., Inc.)*, 164 B.R. 440, 443 (Bankr. E.D.N.Y. 1994).

11.     Courts in this district have uniformly held that holders of prior, perfected, floating

liens on inventory are good faith purchasers with rights superior to those of a reclaiming seller.

*See, e.g.*, *In re Arlco*, 239 B.R. at 267 (noting that a majority of courts have reached this

conclusion); *In re Dairy Mart*, 302 B.R. at 133; *In re Victory Mkts., Inc.*, 212 B.R. 738, 742

(Bankr. N.D.N.Y. 1997) ("It is well-settled law that absent a showing of bad faith, a holder of a

prior perfected, floating lien on inventory will be treated as a good faith purchaser with rights

superior to those of a reclaiming seller.").  "An entity that advances funds secured by a valid lien

on all the borrower's assets is a good faith purchaser absent a showing of misconduct by the

secured creditor." *In re Arlco*, 239 B.R. at 271. The reclaiming seller bears the burden of proving any alleged misconduct or lack of good faith on the part of the secured lender. *Id.*

12.     Here, the Guarantee Agreement grants the Administrative Agent, for the ratable benefit of the Prepetition Lenders, first-priority security interests in the Collateral, which consists of substantially all of the material tangible and intangible assets of Delphi and the Guarantors owned at the time of execution of the agreement or acquired thereafter, including the Equipment, and all proceeds and products of any and all such assets. *See* Guarantee Agreement, § 3.1. Furthermore, there has been no allegation of any lack of good faith on the part of either the Administrative Agent or the Prepetition Lenders. Accordingly, the rights of the Administrative Agent and the Prepetition Lenders are superior to those of the Reclamation Claimants.

**B.      Speedline's Reclamation Claim is Valueless Because the Prepetition
          Debt Claim Exceeds the Value of Speedline's Reclamation Claim**

13.     A reclaiming seller whose rights are subordinate to those of a secured lender receives only "what it would have received outside of the bankruptcy context after the superior claim was satisfied." *In re Arlco*, 239 B.R. at 272 (citing cases). Permitting a reclaiming seller to receive only what it would have received outside of the bankruptcy context is in accordance with the goal of section 546(c) of the Bankruptcy Code, which is not intended to create a new right of reclamation but rather to preserve the reclamation rights granted under state law. *Id.*; *see also In re Victory Mkts.*, 212 B.R. at 743.

14.     The value of the reclamation right is the value it would have outside the bankruptcy context; thus, if the right would be worthless absent the bankruptcy filing, it is also worthless in the bankruptcy context. *See In re Arlco*, 239 B.R. at 272. Where a secured lender's claim exceeds the value of the goods subject to reclamation, the seller's right of reclamation has no value. *See, e.g., In re Arlco*, 239 B.R. at 272 ("it is only when the reclaiming seller's goods or

7

traceable proceeds from those goods are in excess of the value of the superior claimant's claim

that the reclaiming seller will be allowed either to reclaim the goods or receive an administrative

claim or lien in an amount equal to the goods that remain after the superior claim has been

paid"); *Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-*

*Canfield Corp.)*, 309 B.R. 277, 287 (B.A.P. 6th Cir. 2004) (a reclaiming seller "is entitled to a

lien or administrative expense claim only to the extent that the value of the *specific* inventory in

which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the

debtor's inventory") (emphasis in original); *In re Victory Mkts.*, 212 B.R. at 743 ("if the goods of

the seller would be fully used to satisfy the lien of the superior lien creditor, the seller's right of

reclamation would be rendered valueless and there would be no basis upon which to award an

administrative claim or lien").  As one court found:

> Section 546(c) was not intended to grant any additional rights to creditors.
> ***Under state law, a reclaiming seller would not have been able to reclaim
> its goods if the goods were not worth more than the value of the floating
> lien,*** because the holder of the first lien would have asserted its rights and
> been entitled to all of the inventory.

*Allegiance Healthcare Corp. v. Primary Health Sys., Inc. (In re Primary Health Sys., Inc.)*, 258

B.R. 111, 117 (Bankr. D. Del. 2001) (emphasis added).

15.    Whether the secured lender is undersecured or oversecured does not affect this

result.  *See, e.g.*, *In re Pittsburgh-Canfield*, 309 B.R. at 277.  Outside of bankruptcy, if a secured

party could satisfy its claim out of the proceeds of specific goods, the seller that provided those

goods can no longer reclaim them, regardless of the existence of additional collateral.  This result

applies even if the value of such other collateral exceeds the amount of the secured debt.

Simply, the value of other collateral can never serve as the basis for a specific reclaiming

creditor's request for payment of its reclamation claim.  Granting such relief in bankruptcy

would violate both the rule that section 546(c) does not enlarge the state law rights of reclaiming

sellers and the priority scheme of the Bankruptcy Code with respect to unsecured creditors:

> To grant recovery to [the reclaiming seller] from property not
> derived from the specific proceeds of sale would deplete the other
> estate property and ***constitute a preference over the other
> unsecured creditors*** entitled to a pro rata distribution.

*Action Indus., Inc. (Dollarama) v. Dixie Enters., Inc. (In re Dixie Enters., Inc.)*, 22 B.R. 855,

859-60 (Bankr. Ohio 1982) (emphasis added) (noting that "a right to reclamation is literally an *in*

*rem* right"); *see also In re Pittsburgh-Canfield*, 309 B.R. at 287 ("the Appellants here are not

entitled to a lien or administrative priority status ahead of the general unsecured creditors in

other assets of the bankruptcy estate"); *In re Primary Health*, 258 B.R. at 117 ("Permitting such

a creditor (whose claim outside of bankruptcy is nothing more than a general unsecured claim) to

elevate its claim to administrative or secured status in bankruptcy would give it a windfall.").

16.      In *Pittsburgh-Canfield*, the debtor owed its prepetition secured lenders

approximately $115 million, secured by the debtor's inventory, which was valued at

approximately $245 million.  309 B.R. at 282.  The debtor had received reclamation claims in the

approximate amount of $5.4 million, which was later reduced to $2.9 million by verification

through the reclamation claims procedures.  The debtors had obtained a debtor-in-possession

("DIP") facility that was used to pay the prepetition lenders in full, and the liens of the

prepetition lenders were transferred to the DIP lenders.  *Id.*  Certain reclamation claimants

maintained that they were entitled to administrative expense priority or a lien and argued, among

other things, that the lenders were oversecured.  The court noted that, even if the debtor's

secured creditors (either the prepetition lenders or the DIP lenders) were oversecured, no

individual claimant's goods were "at any time of sufficient value to pay either the Prepetition

Lenders or the DIP Lenders in full." *Id.* at 285.  The court went on to find that

NY\1084126.11

> there is no question in this case that if any of the [reclamation
> claimants] chose (or were permitted) to obtain possession of their
> goods and were required to pay the DIP Lenders (or Prepetition
> Lenders for that matter) an amount sufficient to satisfy the
> outstanding lien at the time, that none of the [reclamation
> claimants] would have come away with any proceeds.

*Id.* at 288.

17.    Here, the secured claim arising from the Prepetition Debt (the "Prepetition Debt

Claim") [8] greatly exceeds the amount of the Speedline's alleged Reclamation Claim of $189,005.

*See* Motion, ¶ 25.  Thus, even assuming Speedline otherwise would have a valid right of

reclamation under state law, because the Prepetition Debt Claim exceeds the value of Speedline's

Reclamation Claim, such Reclamation Claim must be valued at zero.

18.    The two cases cited by Speedline for the proposition that a prior perfected lien

only impacts the right of a reclaiming seller when the secured creditors are undersecured, *i.e.*,

*Arlco* and *Dairy Mart*, do not support such a proposition and indeed are contrary to Speedline's

position.  *See* Motion, ¶ 29.  In *Arlco*, the debtor sold certain inventory, including the goods

delivered by the reclaiming seller, and used the proceeds to pay the prepetition secured lender.

239 B.R. at 273.  While a balance was still owed to the prepetition secured lender even after such

payment, the reclaiming seller argued that the prepetition secured lender's security interest

would ultimately be satisfied through the continued liquidation of its remaining collateral.  *Id.*

The reclaiming seller argued that it was entitled to receive priority over unsecured creditors in

the remaining proceeds of such liquidation once the secured creditor, who was oversecured, was

paid in full.  *Id.* at 275.  The bankruptcy court rejected this argument, finding that because the

---

[8] As noted above, the Prepetition Debt amounts to approximately $2,579,783,051.85, plus all interest accrued and
unpaid as of the Petition Date, fees, costs, expenses, and all charges related thereto.  *See* DIP Motion, ¶ 18 [Docket
No. 42].

NY\1084126.11

seller's goods were used to pay the secured creditor's claim, the seller's reclamation right was

valueless. *Id.* at 277.

19.    As in *Arlco*, the court in *Dairy Mart* found that the seller's reclamation right was

rendered valueless because its goods had been used to secure a senior lien.  In that case, the

debtors entered into a DIP facility secured by a first priority lien on and security interest in all the

property of the debtors, but subordinate to the valid liens of the prepetition secured lenders.  302

B.R. at 131.  The order approving the DIP facility provided that the proceeds of the DIP facility

were to be used, in part, to satisfy the debtors' prepetition secured debt, at which time the

prepetition secured lenders would release their prepetition liens and security interests in the

debtors' assets.  Certain reclamation claimants argued that, because the prepetition secured debt

had been paid from a source other than the goods subject to reclamation, *i.e.*, the proceeds of the

DIP facility, they were entitled to an administrative expense priority.  *Id.* at 132.  The court

concluded that, because the prepetition secured debt had been satisfied from the proceeds of the

DIP facility, which the debtors would not have been able to obtain without granting a lien on all

the property of the debtors, all such property had been effectively used to satisfy the prepetition

secured lender's claim.  *Id.* at 135.  Accordingly, the reclamation claims were rendered valueless.

*Id.*

> **C.    Because Speedline's Reclamation Claim is Valueless, Speedline
> is Only Entitled to a General Unsecured Claim**

20.    Section 546(c) of the Bankruptcy Code does not enhance the rights a seller would

have outside of bankruptcy:

> Granting a seller an administrative priority claim in bankruptcy where the
> right to reclaim is entirely subordinated by the rights of a superior secured
> creditor would be to give the seller greater rights than possessed outside of
> bankruptcy, and this would clearly be contrary to the concept of equal
> treatment of creditors under the Code.

*In re Victory Mkts.*, 212 B.R. at 743; *see also In re Dairy Mart*, 302 B.R. at 133 (section 546(c)

"does not permit the Court to enhance the reclamation claimant's position to receive value that

may not be otherwise available under applicable nonbankruptcy law").  Thus, where a seller's

reclamation claim is valued at zero because such seller's rights are subordinate to those of a

secured lender whose claim exceeds the value of the reclaiming seller's goods, such seller has

only a general unsecured claim in the amount of the value of the goods.  *See In re Victory Mkts.*,

212 B.R. at 743.  Accordingly, Speedline possesses only a general unsecured claim, which can

only be treated pursuant to a plan of reorganization.  Speedline is not entitled to either payment

of such claim, or the return of the Equipment.

## II.    SPEEDLINE HAS NOT MET ITS BURDEN OF ESTABLISHING THE REQUIRED ELEMENTS OF A VALID RECLAMATION CLAIM

### A.    The Requirements of Section 546(c) of the Bankruptcy Code

21.    As noted above, section 546(c) of the Bankruptcy Code does not create an

independent right of reclamation, but rather preserves any reclamation rights a seller may have

under nonbankruptcy law.  *See, e.g.*, *In re Dairy Mart*, 302 B.R. at 132; *In re Arlco*, 239 B.R. at

266; *In re Quality Stores*, 289 B.R. at 333.  Section 2-702 forms the principal statutory basis of a

seller's right of reclamation.  *See In re Arlco*, 239 B.R. at 267; *see also In re Quality Stores*, 289

B.R. at 333 n.14 (Section 2-702 "governs the existence and extent of a creditor's reclamation

rights.").  Accordingly, to have a valid right of reclamation, a reclaiming seller must satisfy the

requirements of Section 2-702 in addition to the requirements of section 546(c) of the

Bankruptcy Code.  *In re Arlco*, 239 B.R. at 267.

22.    Pursuant to section 546(c) of the Bankruptcy Code, a reclaiming seller must prove

the following elements to establish the validity of its reclamation claim:

(1) that it has a statutory or common law right to reclaim goods;

12

(2) that the seller sold the goods to the debtor in the ordinary course of the seller's
business;

(3) that the debtor was insolvent when it received the goods; and

(4) that it made a written demand for reclamation within the statutory time period
(*i.e.*, ten days after the goods were received, or within 20 days if the debtor
filed for bankruptcy within the ten day period after receipt of the goods).

*See*, *e.g., In re Arlco*, 239 B.R. at 266.  The reclaiming seller has the burden of establishing each

element by a preponderance of the evidence.  *Id.* (citing *In re Victory Mkts.*, 212 B.R. at 741).

23.    In addition, cases have found that the debtor must also have had possession, or at

least control, of the goods at the time of the reclamation demand.  *See, e.g., In re Arlco, Inc.*, 239

B.R. at 266-67 (citations omitted).  Courts have interpreted this to mean that the goods must be

identifiable when the debtor receives the reclamation demand and cannot have been processed

into other products.  *Id.* (citing *Party Packing Corp. v. Rosenberg (In re Landy Beef Co., Inc.)*,

30 B.R. 19, 21 (Bankr. D. Mass. 1983)).[9]

24.    Speedline has failed to meet its burden of establishing these elements by a

preponderance of the evidence.  In particular, Speedline has failed to meet its burden of

establishing that the Debtors were insolvent when they received the Equipment.

**B.    Speedline's Evidence on the Issue of Insolvency is Insufficient, and
Thus Speedline Has Not Met Its Burden of Establishing That the
Debtors Were Insolvent When They Received the Equipment**

25.    Speedline has not established by a preponderance of the evidence that the Debtors

were insolvent at the time they received the Equipment on October 5, 2005, as required by

---

[9] The court noted that it is not clear, however, "whether possession is an element under § 546(c) of the Bankruptcy
Code or in establishing an independent right of reclamation under nonbankruptcy law to be recognized under §
546(c)." *In re Arlco*, 239 B.R. at 266 (quoting *Toshiba Am., Inc. v. Video King of Illinois, Inc. (In re Video King of
Illinois, Inc.)*, 100 B.R. 1008, 1014 (Bankr. N.D. Ill. 1989)).  The court concluded, however, that it appeared that
this element was a requirement under the "independent right of reclamation under nonbankruptcy law," noting that
the issue concerning control over the goods is relevant whether or not the seller is seeking reclamation in the
bankruptcy context.  *Id.* at 267.

section 546(c) of the Bankruptcy Code, because courts have held that the evidence relied upon

by Speedline is insufficient to establish insolvency.  As discussed above, a seller must prove the

debtor's insolvency by a preponderance of the evidence just as it must prove every other element

of its claim.  *In re Victory Mkts*, 212 B.R. at 741 (citing *In re Morken*, 182 B.R. 1007, 1021

(Bankr. D. Minn. 1995) and *In re Video King of Illinois, Inc.*, 100 B.R. at 1015).  For purposes of

section 546(c), the definition of "insolvency" is limited to that found in section 101 of the

Bankruptcy Code.  *See In re Arlco*, 239 B.R. at 266.  Pursuant to section 101, an entity is

insolvent when

> the sum of such entity's debts is greater than all of such entity's
> property, at a fair valuation, exclusive of (i) property transferred,
> concealed, or removed with intent to hinder, delay, or defraud such
> entity's creditors and (ii) property that may be exempted from
> property of the estate under section 522.

11 U.S.C. § 101(32)(A).[10]

26.     Here, Speedline relies on (i) Exhibit A to the voluntary petition of Delphi and the

First Day Affidavit, (ii) the schedules filed by the Debtors, and (iii) the financial statements filed

by Delphi in the latest 10-K to establish that the Debtors were insolvent on the date they received

the Equipment.  *See* Motion, ¶ 17-18.  This evidence, however, is insufficient to conclusively

establish the Debtors' insolvency, and Speedline has failed to meet its burden of proof with

respect to this element.

27.     Insolvency is a question of fact, and a bankruptcy court has broad discretion when

considering evidence relating to a debtor's solvency.  *Lawson v. Ford Motor Co. (In re Roblin*

*Indus., Inc.)*, 78 F.3d 30, 35 (2d Cir. 1996).  In *Roblin*, the Second Circuit emphasized that

> [T]he matrix within which questions of solvency and valuation
> exist in bankruptcy demands that there be no rigid approach taken

---

[10] A corporation is considered an "entity" pursuant to the Bankruptcy Code.  11 U.S.C. §§ 101(15), 101(41).

14

> to the subject.  Because the value of property varies with time and
> circumstances, the finder of fact must be free to arrive at the "fair
> valuation" defined in § 101[(32)] by the most appropriate means.

*Id.* at 38 (citing *Porter v. Yukon Nat'l. Bank*, 866 F.2d 355, 357 (10th Cir. 1989)).  For example,

the Second Circuit stated that while balance sheet book values may be evidence from which

inferences about insolvency may be drawn under certain circumstances, they are "inappropriate

as a direct measure of the fair value of property."  *Id.* at 36 (citing cases).  The Second Circuit

also noted that, "[w]henever possible, a determination of insolvency should be based on

seasonable appraisals or expert testimony," but cautioned that appraisals should not be either the

exclusive or dispositive method to make such a determination.  *Id.* at 38.

28.      Other courts have also held that mere reliance on a balance sheet is insufficient to

prove or disprove insolvency.  *See*, *e.g.*, *In re Roblin Indus.*, 78 F.3d at 36-38; *Joshua Slocum,*

*Ltd. v. Boyle (In re Joshua Slocum, Ltd.)*, 103 B.R. 610, 621 (Bankr. E.D. Pa. 1989) (the court,

while noting that the debtors' financial statements "aided" the court's insolvency analysis, found

that "the Debtors' own balance sheets are not conclusive on the issue of insolvency" and that

"[v]alues provided by documentary evidence should be adjusted in light of testimony

presented"), *aff'd*, 121 B.R. 442 (E.D. Pa. 1989); *see also DeRosa v. Buildex Inc. (In re F & S*

*Cent. Mfg. Corp.)*, 53 B.R. 842, 849 (Bankr. E.D.N.Y. 1985).  In *F & S Central*, the bankruptcy

court noted that the Bankruptcy Code defines "insolvency" with reference to the fair value of the

debtor's assets and that a fair valuation of such property is determined "by estimating what the

debtor's assets would realize if sold in a prudent manner in current market conditions."  53 B.R.

at 849.  Even if the asset values on a balance sheet are calculated in accordance with generally

accepted accounting principles ("GAAP"), such values do not necessarily reflect fair value

because GAAP are "not synonymous with any specific [valuation] policy."  *Id.* (citing *Pittsburgh*

*Coke & Chem. Co. v. Bollo*, 560 F.2d 1089, 1092 (2d Cir. 1977)).  The court concluded that a

15

NY\1084126.11

balance sheet that does not indicate how the debtor's assets were valued has no probative weight with respect to the issue of solvency. *Id.*

29.       Similarly, courts have found that a debtor's schedules are not conclusive evidence of insolvency.  *See*, *e.g.*, *Allstate Fabricators Corp. v. In re Flagstaff Foodservice Corp. (In re Flagstaff Foodservice Corp.)*, 56 B.R. 899, 907 (Bankr. S.D.N.Y. 1986) ("while the schedules filed by the debtor are probative evidence, they are not in and of themselves dispositive of the issue of insolvency"); *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 283-84 (Bankr. E.D. Va. 1999) ("The Debtor's schedules are not persuasive, dispositive, or controlling on the question of the Debtor's insolvency at the time of the alleged preference; proper analysis should focus on *more accurate evidence*, including current appraisals, opinion valuation, actual sales of the assets, and tax returns.") (emphasis added); *Lasser v. Robins Nest Dev. Corp. (In re Lasser)*, 68 B.R. 492, 493-94 (Bankr. E.D.N.Y. 1986) (court could not make a summary judgment that the debtors were solvent at the time of a disputed transfer where the debtors asserted that their schedules were unreliable and noted that certain assets had been sold for amounts that differed significantly from the values listed in the schedules for such assets).

30.       Accordingly, because Speedline's reliance on the Debtors' schedules and financial statements alone is insufficient to meet its burden with respect to insolvency, and because Speedline has produced no other evidence, Speedline has failed to meet its burden of proof under section 546(c) of the Bankruptcy Code.

16

    **WHEREFORE,** the Committee respectfully requests that this Court (a) deny the Motion

and (b) grant the Committee such other relief as is just and proper.


Dated:  August 10, 2006
      New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Mitchell A. Seider (MS-4321)
    Mark A. Broude (MB-1902)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone:  (212) 906-1200

Attorneys for the Official Committee
of Unsecured Creditors

NY\1084126.11