Marianne Goldstein Robbins
Jill Hartley
Previant, Goldberg, Uelmen,
 Gratz, Miller, & Brueggeman, s.c.
1555 N. RiverCenter Drive - Suite 202
Milwaukee, WI    53212
Telephone:    (414)   271-4500
Facsimile:    (414)   271-6308

Attorneys for IBEW Local 663 and
IAMAW District 10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | **Chapter 11** |
| **DELPHI CORPORATION,  et al.,** | **Case No. 05-44481 (RDD)** |
| Debtors. | **(Jointly Administered)** |

**MOTION FOR JUDGMENT ON PARTIAL FINDINGS**
**DISMISSING THE IBEW AND IAM PURSUANT TO RULE 7052(c)**

___

NOW COME International Brotherhood of Electrical Workers, Local 663 ("IBEW") and International Association of Machinists and Aerospace Workers District 10 ("IAM"), by their attorneys Marianne Goldstein Robbins, of Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman s.c., and move the Court for judgment on partial findings denying Debtors' motion pursuant to § 1113(c) authorizing rejection of their collective bargaining agreements and under 11 U.S.C. § 1114(g) seeking modification of retiree benefits, and in support thereof states as follows:

1. Delphi Corporation and its subsidiaries and its affiliates in the above-captioned cases (collectively "the Debtors") submitted a motion for relief under sections 1113 and 1114 of the Bankruptcy Code on March 31, 2006. The motion seeks rejection of collective bargaining agreements of six unions: the UAW, IUE-CWA, USW, IAM, IBEW and IUOE. The IBEW and IAM filed timely objections to Debtors' motion on April 20, 2006.

2. On June 2, 2006, Debtors completed their case in support of their sections 1113 and 1114 motions. At the close of Debtors' case, the Court indicated that it would entertain written motions pursuant to Rule 7052(c), if timely filed in accordance with the parties' meet and confer schedule. Thereafter, the parties agreed that any motions filed pursuant to Rule 7052(c) would be filed on or before 10:00 a.m. on August 11, 2006.

3. Rule 7052(c) provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim, that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this Rule.

Pursuant to Rule 9014, Rule 7052 applies to contested matters.

4. The procedural requirements for a motion pursuant to section 1113 are set forth in 11 U.S.C. § 1113(b). The procedural requirements for relief pursuant to section 1114(g) are set in 11 U.S.C. § 1114(f). Of the requirements set forth in sections 1113 and, by analogy, 1114, five requirements have been identified as procedural. Mesaba Aviation, Inc., 341 B.R. Bankr. (D. Minn. 2006). They are:

    1).     making a proposal to modify a collective bargaining agreement (or retiree benefits);

    2).     basing that proposal on the most complete and reliable information available;

    3).     provision of relevant information "as necessary to evaluate the proposal," 11 U.S.C. § 1113(b)(1)(B);

    4).     meeting at reasonable times; and

    5).     "confer[ring] in good faith in attempting to reach mutually satisfactory modifications of [the collective bargaining agreement or retiree benefits]." 11 U.S.C. § 1113(b)(2), 11 U.S.C. § 1114(f)(2).

5.     First, "prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession...shall – A. make a proposal to the authorized representative of employees covered by such agreement. § 1113(b)(1)(A) The same requirement must be met "prior to filing an application seeking modification of retiree benefits" under section 1114(f)(1)(A).

6.     At the time Debtor filed the present motion, Debtors had failed to submit a proposal within the meaning of section 1113(b)(A) or section 1114(f)(1)(A) to the IAM and IBEW. The document submitted to the IAM and IBEW prior to the filing of the sections 1113 and 1114 motions did not contain specific proposals for modification of the collective bargaining agreement or of retiree benefits. Rather, the proposal addressed to the IAM stated that the proposals made at that time "are contingent upon a commitment by General Motors to provide Delphi with financial support sufficient to fund the difference between the cost of these programs and the cost of Delphi's proposal of November 15, 2005." (Exh. 92) This contingency applied to Debtors' proposed wage rates, dental plan, buy-out and buy-down payments, retiree medical accounts, and to defined contribution plans. (Exh. 92).

7.  The same contingencies applied to the March 25, 2006 proposals made to the IBEW for the two bargaining units it represented (Exh. 93).

8.  Even more importantly, by the close of Debtors' case the evidence established that Debtors' earlier proposals to the IAM and IBEW had been replaced on May 25, 2006 with documents which could not in any sense be considered proposals, although they bore that title, because they included virtually no concrete proposals of any kind but rather stated merely "Pattern Treatment," meaning, according to the terms of those documents that, in the case of the IAM, "the IAM accepts on behalf of the IAM represented employees...all labor contract and pension modifications that Delphi ultimately negotiates with, and that are ratified by, the...UAW.... If the UAW and Delphi cannot reach an agreement, the IAM agrees that Delphi may impose the same modifications upon IAM represented employees and retirees as those Delphi imposes upon UAW represented employees and retirees." (Exh. 312).  This "Pattern Treatment" applied to the effective date, the duration, the base wage rates, COLA, overtime, shift premiums, holidays, Independence Week, vacation accrual, profit sharing, health care, life and disability, termination of pension plan, dispute resolution, no assumption of right to re-file 1113 and 1114 motions. (Exh. 312).

9.  The same Pattern Treatment was proposed to the IBEW in E&S and E&C units. (Exhs. 313, 314).

10. Delphi's head of Labor Relations Kevin Butler has acknowledged that at the commencement of the trial there was no comprehensive attrition proposal before the IBEW or the IAM and that the proposals made concerning buy-outs were contingent, not definite. (Transcript, May 10, 2006, p. 136-138).

11. Proposals such as those made to the IAM and IBEW here as they existed prior to filing the motion and as they existed at the close of Debtors' case, are too vague to meet the requirements of sections 1113 and 1114. See, <u>In re Jefley</u>, 219 B.R. 88, 92 Bankr. (E.D. Pa. 1998) (holding proposal placed in evidence too vague because, among other reasons, it did not quantify cash out monetary savings). The proposals submitted by Debtors here are substantially more vague than the proposals made in <u>Jefley</u>.

12. The requirement that in order to meet an employer's obligation to bargain proposals be definite and not vague is consistent with decisions under the National Labor Relations Act. See <u>ITT Rayonier, Inc.</u>, 305 NLRB 445, 446 (1991) (finding respondent;s pay and other proposals "which it either had not fully formulated" and its insistence on "an ill defined team concept" was unlawful).

13. The Debtors' proposal of May 25, 2006 does not meet the procedural requirement of a proposal under sections 1113 and 1114 not only because it fails to include definite proposals for wages and fringe benefits, but also because it removes these issues completely from the negotiation of the IAM and IBEW which represent the employees and retirees to whom the proposal applies, and places these issues at the discretion of the employer and another union. Similar proposals have been found to constitute surface bargaining under the National Labor Relations Act. See <u>Burrows Paper Corp.</u>, 332 NLRB 82 (2000) (holding a proposal that wages be determined by the employer exclusively evidenced surface bargaining).

14. Debtors also bear the burden of showing this proposal was based on the most complete and reliable information available. § 1113(b)(1)A; § 1114(b)(1)A. See <u>Mesaba Aviation</u>, 341 B.R. at 711. The Debtors have proposed, as of March 25, 2006, just prior to filing their sections

1113 and 1114 motions, that wage rates for the IAM would be $28.00 effective July 3, 2006, reducing to $24.00 by September 3, 2007, or $21.50, depending on General Motors' support or lack thereof. (Exh. 92). The same contingent wage proposals were made to the IBEW (Exh. 93). Debtors assert that these wages are intended not to save a specified required amount necessary for reorganization, but rather that they are "competitive." (Transcript, May 10, 2006 PM, p. 42). Since then the Debtors propose whatever they agree to with the UAW (Exhs. 312, 313, 314).

15. Debtors, however, acknowledge that they have made no study of competitive wage rates in the Milwaukee area for skilled trades (Transcript, May 12, 2006 AM, pp. 58-59), although certainly such information would have been available. Thus, the Debtor has not based its proposal on the most complete and reliable information available.

16. Additionally, Debtors in preparing a plant level analysis of the Milwaukee plants, where the IAM and IBEW bargaining units are located failed to consider the announced plans to close the facility in 2007 (Transcript May 26, 2006 AM, p. 97; Transcript June 2, 2006 AM, p. 62). This information was available and would impact the analysis of the need for concessions from the IBEW and IAM. The Debtors did not seek concessions from the Irvine, California facility which is closing (Transcript May 26, 2006 AM, p. 97; Butler Dec., para. 5). Therefore, Debtors did not use the most complete and reliable information available in their proposal to the IAM and to the IBEW.

17. Another procedural requirement Debtor must meet "prior to filing" a motion for relief under sections 1113 and 1114 is to "provide...the representative of the employees (retirees) with such relevant information as is necessary to evaluate the proposal. 11 U.S.C. § 1113(b)(1)(B); 11 U.S.C. § 1114(f)(1)(B). Debtors bear the initial burden of proving production of relevant information.

Mesaba Airlines, 341 B.R. 693, 713 (Bankr. D.Minn. 2006). See also, K&B Mounting, 50 B.R. 460 (Bankr. N.D. Ind. 1985).

18. Debtors have presented no evidence that they have provided information to the IAM or IBEW necessary to evaluate their proposals. Rather, witness after witness acknowledged that they had no information about whether the IAM and IBEW had received information even when requested, not Kevin Butler (Transcript May 10, 2006 AM, pp. 139-140), not Divisional Director of Labor Relations Darrell Kidd (Transcript May 26, 2006 PM, p. 99), not even Rob Gerling, Debtors' negotiator with the IBEW and IAM (Transcript May 26, 2006 AM, pp. 99, 103). Here, there is no evidence Debtors provided the necessary information to evaluate their presentations to the IAM and IBEW even when requested.

19. Specifically, Rob Gerling testified that he did not know what questions posed by the IBEW in October of 2005 (Exh. 140) the Debtors had responded to (Transcript, May 26, 2006 AM, p. 98). He is not aware of whether the IAM and IBEW received the same information provided to the larger unions. Id. He had no knowledge as to responses to individual questions (Transcript, May 26, 2006 AM, p. 103), or why the employer had provided incomplete information which, by itself, was useless on the issue of salaried compensation (Transcript May 26, 2006 AM, p. 107).

20. Additionally, "beginning on the date of making a proposal...and ending on the date of the hearing" Debtors must "meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement." § 1113(b)(2), § 1114(f)(2).

21. Here, Debtors never met to negotiate an agreement with the IAM or IBEW negotiating committee before filing a motion under sections 1113 and 1114. Debtors' failure to

meet violates the requirements of section 1113. In re Century Brass Products, 795 F.2d 265, 273 (2d Cir. 1986) and by analogy section 1114. See also, In re Mesaba Aviation, Inc., 341 B.R. 693, 719 (Bankr. D.Minn. 2006).

22. In October of 2005, Debtors' negotiator Rob Gerling met with some bargaining committee members of the IAM and IBEW but without the chief negotiators for either union (Transcript May 26, 2006 AM, pp. 111 and 112). In November, Gerling had a brief meeting with Randal Middleton by himself in Detroit, but contrary to his Declaration, Gerling did not have any meetings concerning the November proposals with either the IAM or the IBEW committees (Transcript May 26, 2006 AM, pp. 113, 114). On March 30, Rob Gerling spoke by phone to the IAM and IBEW committees explaining that while Debtors intended to make an attrition proposal to the two unions, it was not yet available (Transcript May 26, 2006 AM, p. 118). Together, none of these brief contacts constitute meeting at reasonable times.

23. The only negotiation meetings to be held prior to the commencement of the hearing were on April 20 and 21, after prodding from counsel, at a time when Debtors' negotiator acknowledges that he still did not have the attrition package Debtors planned to propose to the IAM and IBEW (Transcript May 26, 2006 AM, pp. 120-122).

24. Debtors have also failed to establish that prior to the commencement of the section 1113 and 1114 hearing they conferred with the IAM and IBEW in good faith. The proposals provided to the IBEW and IAM were incomplete in that they did not include an attrition proposal which, Debtors indicated, was to be part of the proposal (Transcript May 26, 2006 AM, pp. 118, 120, 122 and 123). The proposals also were in large part contingent on General Motors' financial support. As of the commencement of the hearing, Debtors had not prepared a response to the IAM

and IBEW counter-proposal, had not submitted the promised attrition package, or even provided dates for bargaining (Transcript May 26, 2006 AM, pp. 122, 124-125).

25. The reason Debtors gave to Middleton in November for not meeting was that the Debtors wanted to negotiate first with the larger unions (Transcript May 26, 2006 AM, p. 114). That position has now been confirmed by all Debtors' conduct since then, including the proposal dated May 25, 2006, which does not make any specific proposals to the IAM and IBEW, other than that they accept whatever treatment, as yet undefined, the UAW receives. This proposal assures that Debtors and the IAM and IBEW cannot meet "to reach mutually satisfactory modifications" since the modifications which Debtors seek from the IAM and IBEW have not yet been defined.

26. The bottom line is that Debtors are not ready to bargain with the IAM and IBEW. As Debtors have said from the beginning, they want to address issues first with the larger unions. This is their prerogative. However, having decided that they are not yet ready to reach agreement with the IAM and IBEW, they have not met the procedural requirements for the relief they seek under sections 1113 and 1114. Therefore, partial judgment denying the 1113 and 1114 motions as they apply to the IBEW and IAM is appropriate.

27. Where Debtors failed to meet with the representatives of certain bargaining units to negotiate in good faith, even where that failure is the result of Debtors' decision to devote their attention to other unions, their motion under section 1113 and section 1114 must fail as to the Unions they have ignored. See In re Horsehead Industries, 300 B.R. 573, 588 (Bankr. S.D. N.Y. 2003) (holding that debtors' 1113 motion must fail as to ignored bargaining units because attention was devoted to others and "the price of the strategy is that debtors have failed to show their compliance with procedural requirements of section 1113(b)" and rejecting debtors' 1114(f) motion

because they "failed to demonstrate" they attempted to "meet in good faith in attempting to reach mutually satisfactory modifications of retiree benefits."). Id.

28. Since Debtors have not demonstrated compliance with 11 U.S.C. § 1113(b)(1) and (2) and by analogy 11 U.S.C. § 1114(f)(1) and (2) prior to filing their sections 1113 and 1114 motions, Debtors cannot seek approval for rejection of the IAM and IBEW contracts. In re Century Brass, 795 F.2d 2652 (2d Cir. 1986) (holding that "only after demonstrating compliance with [the above requirements] may a debtor seek court approval for rejection.").

**Memorandum of Law**

29. Because the legal points and authorities upon which this Motion relies are incorporated herein, the IAM and IBEW respectfully request that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court of the Southern District of New York be deemed satisfied.

**CONCLUSION**

For the foregoing reasons, objectors IBEW Local 663 and IAMAW District 10 ask the Court for judgment on partial findings denying the § 1113 and § 1114 Motion against the IBEW and IAM pursuant to Rule 7052(c).

Dated:   August 10, 2006

                                                  s/ Marianne Goldstein Robbins
Marianne Goldstein Robbins
Jill Hartley
Previant, Goldberg, Uelmen,
 Gratz, Miller, & Brueggeman, s.c.
1555 N. RiverCenter Drive - Suite 202
P.O. Box 12993
Milwaukee, WI    53212
Telephone:    (414) 271-4500

        Facsimile:    (414) 271-6308
        mgr@previant.com

        Attorneys for IBEW Local 663 and
        IAMAW District 10

G:\DOCS\ELE663\71259\M0159652.WPD