**Hearing Date: August 17, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                              :
    In re                        :    Chapter 11
                              :
DELPHI CORPORATION, et al.,     :    Case No. 05-44481 (RDD)
                              :
                              :    (Jointly Administered)
              Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' OBJECTION TO SPEEDLINE TECHNOLOGIES INC.'S MOTION FOR
ORDER DIRECTING RETURN OF RECLAIMED EQUIPMENT OR FOR
<u>IMMEDIATE PAYMENT THEREOF</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion of Speedline Technologies Inc. ("Speedline") for an order directing the return of reclaimed equipment or for immediate payment of an administrative expense, dated July 25, 2006 (together, with the letter and errata sheet dated July 26, 2006 (Docket No. 4683), the "Motion") (Docket No. 4678). In support of the Objection, the Debtors respectfully represent as follows:

## Preliminary Statement

1.  Speedline's Motion should be denied. The relief requested in the Motion seeks unjustified preferential treatment and is unreasonable and prejudicial to the Debtors' estates at a point in these chapter 11 reorganization cases when critical facts regarding Speedline's reclamation claim cannot be determined. First, although the Debtors have offered Speedline an acknowledgement of a <u>potential</u> reclamation claim in the amount of $189,005.00[1] – the full value of Speedline's equipment that it seeks to reclaim – the Debtors have determined not to pay Speedline's potential reclamation claim until it is known whether the prepetition lenders' secured claims will be paid in full out of collateral other than equipment shipped by Speedline. For if the prepetition lenders'

---

[1] This offer was made pursuant to that certain statement of reclamation (the "Statement of Reclamation") dated February 21, 2006 that was provided by the Debtors to Speedline pursuant to the Amended Final Order Under 11 U.S.C. §§ 362, 503, And 546 And Fed. R. Bankr. P. 9019 Establishing Procedures For The Treatment Of Reclamation Claims (Docket No. 881) (the "Final Reclamation Order"), a copy of which is attached hereto as <u>Exhibit A</u>. In accordance with paragraph 2, subsection (b)(ii) of the Final Reclamation Order, in the Statement of Reclamation the Debtors reserved their right to seek a judicial determination that certain reserved defenses are valid, including but not limited to the defense that the reclaimed goods or the proceeds from the sale of the goods are subject to a valid security interest. A copy of the Statement of Reclamation is attached hereto as <u>Exhibit B</u>.

2

secured claims remain unpaid, and their related liens unsatisfied, or if the secured claims are paid in part from proceeds of equipment shipped by Speedline, Speedline's reclamation claim likely will not be entitled to administrative expense priority. Because the ultimate treatment of the prepetition lenders' secured claims, and source of any payment therefrom, will not be known until a plan of reorganization is confirmed and consummated, the Debtors are well within their discretion to elect not to pay Speedline's reclamation claim at this time. That is not to say conclusively that the reclamation claims of Speedline and others are not entitled to administrative expense priority. On the contrary, a valid reclamation claim is subject to, but not extinguished by, a prior perfected security interest.[2]

    2.    Second, Speedline's request for immediate payment of an administrative expense claim should be denied because, under the facts and circumstances presented here, it is appropriate for the Debtors to exercise the discretion

---

[2] On the date of this Objection, the Official Committee of Unsecured Creditors (the "Creditors' Committee") filed the Objection Of the Official Committee Of Unsecured Creditors To Speedline Technologies Inc.'s Motion For Order Directing Return Of Reclaimed Equipment Or For Immediate Payment Thereof (Docket No. 4887), asserting that the Debtors' secured debt renders Speedline's reclamation claim valueless and that Speedline is not entitled to reclamation or an administrative priority claim. The Debtors disagree with the position taken by the Creditors' Committee in their objection. As stated in this Objection, it is the Debtors' position that at this time it is unknown whether the existence of a prior perfected lien on the Debtors' assets will negate the potential administrative priority of Speedline's reclamation claim until it is determined how the prepetition lenders' secured claims will be satisfied pursuant to a confirmed plan of reorganization.

(The Debtors vigorously disagree with the Creditors' Committee's contention in footnote 6 of their objection that the Debtors have not yet provided the Creditors' Committee with the complete reclamation report as required under paragraph 3 of the Final Reclamation Order. Indeed, on December 19, 2005, the Debtors provided the Creditors' Committee with a report compliant with the Final Reclamation Order. The Creditors' Committee has contended that this report does not include sufficient explanation of the Debtors' position on the reserved defenses; the Debtors disagree with the Creditors' Committee's contention. In any event, as noted by the Creditors' Committee in footnote 6 to their objection, the Debtors and the Creditors' Committee are working out a consensual protocol for allowing the Debtors to waive reserved defenses with respect to individual reclamation claims with the Creditors' Committee's consent.)

granted them by this Court in the Final Reclamation Order to elect not to pay Speedline's claim until consummation of a plan of reorganization – when it will be known whether the prepetition lenders' liens negate the potential administrative expense treatment of Speedline's reclamation claim.

    3.  Moreover, Speedline has failed to state a compelling reason justifying the immediate payment of their reclamation claim despite this uncertainty. Paying Speedline now would invite similar requests from other reclamation claimants, forcing the Debtors to expend further resources on each such request, analyzing the reserved defenses and determining whether the secured debt could be satisfied from the collateral other than the requesting party's reclaimed goods.  Doing so now would be a waste of resources, since this issue will be resolved pursuant to a plan of reorganization.

    4.  Finally, Speedline's assertion that it will be prejudiced if it is not paid now because the Debtors may borrow funds under the Debtors' postpetition debtor-in-possession financing facility (the "DIP Financing Facility"), further eroding its ability to obtain payment, is tardy and without merit.  If Speedline believed it would suffer prejudice by reason of the priming features under the DIP Financing Facility, it should have raised an objection prior to approval by the Court.  Moreover, Speedline's fear, if justified, further underscores the necessity to defer payment until it is known whether the prepetition lenders' secured claims will be paid in full from collateral other than the equipment supplied by Speedline.

Argument

I.  Speedline's Request Is Prejudicial Because It Is
    Unknown Whether Reclamation Claims Will Be
    Extinguished By Prepetition Secured Lenders' Liens

    A.  Reclamation Claims Are Subject To,
        But Not Extinguished By, A Security Interest

    5.  Reclamation is a seller's remedy under which the seller may "reclaim" goods that were sold and delivered to a buyer on credit upon its discovery of the buyer's insolvency. Outside bankruptcy, a seller's reclamation rights are governed by Section 2-702 of the Uniform Commercial Code ("U.C.C."), as enacted by the applicable states. U.C.C. § 2-702(2) (2003). Once a buyer is in bankruptcy, however, section 546(c) of the Bankruptcy Code provides the "exclusive remedy" for a seller's reclamation rights.[3]

---

[3]  Section 546(c) provides, in relevant part:

> [With certain exceptions], the rights and powers of a trustee . . . are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but--
>
> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—
>
>  (A) before 10 days after receipt of such goods by the debtor; or
>
>  (B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and
>
> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—
>
>  (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title [11 U.S.C. § 503(b)]; or
>
>  (B) secures such claim by a lien.

11 U.S.C. § 546(c).

6. Under state law, a seller's right to reclaim goods is subject to the rights of a good faith purchaser, which includes a prior perfected secured creditor holding a lien on present and future assets, including inventory. See U.C.C. § 2-702(3) (2003) ("The seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course of business or other good-faith purchaser . . . ."); see, e.g., Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc.), 239 B.R. 261, 276-77 (Bankr. S.D.N.Y. 1999); In re Victory Markets Inc., 212 B.R. 738, 742 (Bankr. N.D.N.Y. 1997) ("It is well-settled law that absent a showing of bad faith, a holder of a prior perfected, floating lien on inventory will be treated as a good faith purchaser with rights superior to those of a reclaiming seller.").

7. The majority of courts follow state law principles in holding that the value of any administrative claim allowed or lien granted to a reclamation claimant may not exceed the value of the state law right of reclamation. See In re Arlco, 239 B.R. at 272 (citing Pester Ref. co. v. Ethyl Corp. (In re Pester Ref. Co.), 964 F.2d 842, 847 (8th Cir. 1992)). These courts take the view that reclaiming sellers are entitled to an administrative claim or lien only to the extent of the value of the lost right of reclamation — that is, the value of the reclamation right outside the bankruptcy context. See In re Arlco, 239 B.R. at 272 (granting reclaiming seller administrative claim or lien on other assets of debtor would confer on seller a priority status in bankruptcy that seller otherwise would not have under state law).

B.   Speedline Is Seeking Administrative Priority Before
     The Value Of Its Reclamation Claim Can Be Determined

8. Speedline asserts that the perfected security interest in certain of the Debtors' assets does not extinguish Speedline's reclamation rights because the

Debtors' secured creditors are "comfortably over-secured." Speedline Motion at ¶¶ 29-30. Speedline is correct in stating that a perfected security interest would extinguish an otherwise valid reclamation claim only when the debtor's assets are insufficient to satisfy both the secured creditor and the reclaiming seller. See In re Arlco, 239 B.R. at 272. What Speedline overlooks, however, is that although the reclamation claim of a seller subject to the rights of a perfected secured creditor is not automatically extinguished by the existence of a lien, a reclaiming seller is also not automatically granted an administrative claim or lien in the full amount sought. In re Arlco, 239 B.R. at 273 (citing In re Victory Markets, 212 B.R. at 743). "Rather, the reclaiming seller's right to reclaim depends on the value of the excess goods remaining once the secured creditor's claim is paid or released." Id.

        9.      Thus, the value of a reclamation claim will be determined by the decision that a secured creditor makes with respect to its lien on the reclaimed goods. A secured creditor has several options for receiving satisfaction of the debt owed to it and the subsequent release of its lien on the debtor's assets. The secured creditor may choose to foreclose on the goods sold by the reclaiming creditor. Or, as in Arlco, the secured creditor may allow a debtor to sell inventory and other assets including reclaimed goods and take payment from the proceeds of that sale. In each instance, when the secured debt is paid from the reclaimed goods or the proceeds from the sale of the reclaimed goods, the reclamation claims are rendered valueless and the reclaiming seller is left with an unsecured claim. The United States Bankruptcy Court for the Southern District of New York has even held that reclamation claims were extinguished when a secured creditor transferred its lien to a postpetition lender in exchange for the payment of the amount

owed to it.  See In re Dairy Mart Convenience Stores, 302 B.R. 128, 135-36 (Bankr. S.D.N.Y. 2003).

10. If a secured creditor releases its lien on the goods or is paid in full from other sources, however, courts have held that a reclaiming seller retains a priority interest in any remaining goods.  See Pester Ref. Co., 964 F.2d at 848 (prepetition secured creditors were paid in full from sources other than reclamation goods and released their liens, including their liens on such goods, under debtor's confirmed plan of reorganization); In re Phar-Mor, Inc., 301 B.R. 482, 497-98 (Bankr. N.D. Ohio 2003) (secured claims of prepetition lenders were paid in full from proceeds of postpetition credit facility and not from sale of reclamation goods, and upon such payment, prepetition lenders released their liens on debtors' property rather than assigning them to postpetition lenders).

11. Thus, as set forth above, it is the ultimate disposition of the secured creditor's security interest in the goods that will determine the value of the seller's right to reclaim.  See In re Arlco, 239 B.R. at 273 (quoting Pester, 964 F.2d at 847).  Here, the ultimate disposition of the prepetition lenders' security interest in the equipment likely will not be made until a plan of reorganization is negotiated between the Debtors and its stakeholders – including its secured lenders – and that plan is confirmed and consummated.  For these reasons, the Debtors are well within their discretion to elect not to pay Speedline's reclamation claim until the Debtors negotiate, confirm, and consummate a plan of reorganization.

> II. It Is Appropriate For The Debtors To Exercise
> Their Discretion To Pay Administrative Expenses
> At Or After Plan Consummation

12. Speedline is correct to note, as it does at paragraphs 39-40 of its Motion, that the decision as to timing of payment of administrative expense claims is a matter that lies within discretion of this Court. See, e.g., Varsity Carpet Services, Inc. v. Richardson (In re Colortex Industries, Inc.), 19 F.3d 1371, 1384 (11th Cir. 1994) (denial of trade creditor's motion for immediate payment of administrative expenses arising out of performance of carpet finishing services for debtor after petition date was not abuse of bankruptcy court's discretion, when court was aware of significant claims that held potentially higher priority than those of trade creditor); In re HQ Global Holdings, Inc., 282 B.R. 169, 173-74 (Bankr. D. Del. 2002) (administrative expense claims may be deferred if subsequent events may moot such claims); In re TLI, Inc., 213 B.R. 946, 952 (N.D. Tex. 1997) (holding that bankruptcy courts have considerable discretion in addressing timing of post-confirmation administrative expense payments). It is entirely within this Court's discretion to determine that under the facts and circumstances presented here, payment of Speedline's reclamation claim should await consummation of a plan of reorganization.

13. In this instance, waiting until the plan of reorganization is confirmed and consummated is justified when it is not entirely certain that an administrative claimant such as Speedline would be entitled to such payment upon consummation of a plan of reorganization. See HQ Global Holdings, Inc., 282 B.R. at 174. In HQ Global Holdings, Inc., the bankruptcy court held that the decision on amount and payment of landlords' administrative expense claims for fair rental value of leased

9

property used by the debtor-in-possession would have to await decision by the debtor on whether to assume or reject leases. In that case, the landlords sought the immediate payment as an administrative expense of "stub rent" for the period from the petition date to the final day of the month in which the petition was filed. The debtors argued that this "stub rent" was a prepetition obligation because the rent accrued on the first day of the month, prior to the petition date. The United States Bankruptcy Court for the District of Delaware held that assumption of the underlying leases would moot the issue, because the "stub rent" would be cured and that deferral of the timing decision would reduce legal fees for debtors and landlords and be more economic and efficient of judicial resources. Id. at 174-75; see also In re UAL Corp., 291 B.R. 121, 127 (Bankr. N.D. Ill. 2003) (denying lessors' motions for immediate payment of stub period rent, without prejudice to assertion of administrative expense claims) (citing HQ Global Holdings, Inc.). Similarly, in the facts and circumstances presented here, the Court should deny Speedline's request for immediate payment of its reclamation claim pending the formulation and prosecution of a plan of reorganization that may ultimately provide Speedline the relief it currently seeks.

14.     Speedline also asserts that "immediate payment of the administrative expense priority claim is contemplated by the [Final] Reclamation Order, which provides:

> (ii)     All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall, subject to the review procedures with the Creditors' Committee set for the below, be paid in full as an administrative expense at any time during these chapter 11 cases in the sole discretion of the Debtors or pursuant to a confirmed plan of reorganization, in either case only if and to the extent that such allowed reclamation claims constitute administrative expenses under applicable

10

>    law.  See [Final] Reclamation Order, Paragraph 2(d)(ii) (emphasis
>    added)."

Speedline Motion at ¶ 41.  What is telling in this instance is the text that follows – text that Speedline does not emphasize – which further provides that payment of allowed reclamation claims as administrative expenses is "in the sole discretion of the Debtors or pursuant to a confirmed plan of reorganization."  Final Reclamation Order, ¶ 2(d)(ii).

          15.      This Court delegated that discretion to the Debtors pursuant to the Final Reclamation Order.  Speedline presents no reason why the Court should now divest the Debtors of this discretion by requiring immediate payment.  Because it likely will not be known until a plan of reorganization is consummated whether Speedline has a valid reclamation claim entitled to administrative expense priority, it is appropriate for the Debtors to exercise that discretion by electing not to pay the claim at this time.

          16.      Nor does Speedline state a compelling reason why its reclamation claim should be paid now.  In its Motion, Speedline asks that it "get paid like all other creditors who are providing and have provided post petition benefits to Delphi."  Speedline Motion at ¶ 42.  Here, Speedline compares itself to other parties who have provided postpetition services and goods to the Debtors, claiming that it, too, deserves payment of administrative expense claims.  Speedline is mistaken.  This is not an issue arising under section 503(b) of the Bankruptcy Code.  On the contrary, the relevant class that Speedline belongs to is that of the approximately 700 reclamation claimants who have made 855 separate reclamation demands in these chapter 11 reorganization cases and who have provided goods to the Debtors prepetition.

11

17. As of the date of this Objection, more than 80% of the reclaiming sellers have assented, or have been deemed to have assented, to the Debtors' proposed treatment of their reclamation claim. In the aggregate, such agreed reclamation claims exceed approximately $16.2 million, subject to certain reserved defenses.[4] If Speedline's request is granted, it is likely that other reclamation claimants would file similar requests for the Debtors to pay other reclamation claims. In such instances, the Debtors would have to analyze each such request to determine the effect of the reserved defenses on each request and whether the secured debt could be satisfied from collateral other than the requesting party's reclaimed goods, expending estate resources on an issue that will be resolved pursuant to a plan of reorganization.

18. The best, and most fair, way to treat these reclamation claimants is to resolve their reclamation claims together, as a class, unless there are other clear and compelling circumstances that dictate otherwise.[5] The best means for treating a class of claims such as the reclamation claimants' reclamation claims is through a plan of reorganization. For that reason, the Debtors requested – and were granted in the Final Reclamation Order – the discretion to pay any allowed reclamation claim at any time during these cases, including through a plan of reorganization. The Debtors respectfully request that the Court deny Speedline's request to override the Debtors' discretion pending the formulation and consummation of a plan of reorganization.

---

[4] With respect to the remaining unresolved claims, the Debtors have recognized valid reclamation claims in the amount of approximately $5.4 million. As the Debtors continue to resolve such claims, that amount may increase.

[5] Such circumstances could include, among others, that the failure to pay the reclamation claim could imperil the financial health of a particular supplier.

12

III.  Speedline's Assertion That The DIP Financing
Facility Erodes Its Ability to Obtain Administrative
<u>Expense Is Tardy And Without Merit</u>

19.  Speedline also asserts that requiring it to await confirmation of a plan could prejudice Speedline by subjecting it to additional secured debt under the DIP Financing Facility. This argument is tardy and without merit. This Court approved the DIP Financing Facility pursuant to the Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral, And (III) Granting Adequate Protection To Prepetition Secured Parties (Docket No. 797), dated October 28, 2005.

20.  The deadline for objecting to this relief was October 20, 2005 at 4:00 p.m. (prevailing eastern time).[6] As noted in Speedline's Motion, Speedline submitted its reclamation demand to the Debtors on October 19, 2005. Speedline Motion at ¶ 14, Ex. D. If Speedline believed it would be prejudiced by the priming features under the DIP Financing Facility, then it should have objected prior to the October 20, 2005 objection deadline. In any event, Speedline's concern that the Debtors may need additional borrowings under the DIP Facility, thereby eroding any "equity cushion" the prepetition secured lenders may have in the Debtors' collateral, further underscores the wisdom of waiting until a plan of reorganization has been formulated and consummated before determining whether Speedline's reclamation claim should be paid.

---

[6] A copy of the hearing agenda for the October 27, 2005 omnibus hearing at which the Debtors' motion for approval of its debtor-in-possession financing was heard is attached hereto as <u>Exhibit C</u>. The objection deadline is stated on page 10, footnote 1.

13

Conclusion

21.     For the reasons set forth above, Speedline's request for immediate payment of its reclamation claim prior to payment of all other reclamation claimants and before the Court has the facts necessary to determine whether there are valid defenses to payment, should be denied.

Notice

22.     Notice of this Objection has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

23.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
August 10, 2006

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession