**PITNEY HARDIN LLP**
Ronald S. Beacher (RB8837)
Conrad K. Chiu (CC6346)
7 Times Square
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: rbeacher@pitneyhardin.com
E-Mail: cchiu@pitneyhardin.com

Hearing Date: September 14, 2006
Hearing Time: 10:00 a.m.
Objection Deadline: September 7, 2006 at 4:00 p.m.

Attorneys for IBJTC Business Credit Corporation,
as successor to IBJ Whitehall Business Credit Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **DELPHI CORPORATION, et al.,** | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------X

### NOTICE OF MOTION AND MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR PAYMENT AND PERFORMANCE OF POST-PETITION LEASE OBLIGATIONS [11 U.S.C. SECTION 365]

TO:    The Debtors and All Interested Parties listed on the Service List

**NOTICE IS HEREBY GIVEN** that on September 14, 2006 at 10:00 a.m., IBJTC

Business Credit Corporation ("IBJTC"), as successor to IBJ Whitehall Business Credit

Corporation ("IBJ") will and hereby does move the above-referenced Court for entry of an order

compelling Delphi Corporation ("Delphi") to assume or reject a certain unexpired lease and to

pay and perform all post-petition obligations under the lease, until the lease is rejected (the

"Motion"). The hearing be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York,

Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408.

The grounds for the Motion are:  (1) the sixty (60) day period under 11 U.S.C. Section 365(d)(5) expired on December 8, 2005;  (2) Delphi has failed to make certain post-petition payments due under the lease to IBJTC;  and (3) IBJTC is informed and believes and thereon alleges that the Delphi is using the equipment subject to the lease in the operation of their businesses.

The Motion is based on this Notice of Motion and Motion, the Affidavit of Hiroki Yasuda, the Memorandum of Points and Authorities in support of the Motion and such other evidence as may be presented at the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-242 on Pitney Hardin LLP, 7 Times Square, New York, New York 10036-7311 (Attn: Ronald S. Beacher, Esq.) so as to be received no later than September 7, 2006 at 4:00 p.m. (Eastern Time).

2

Dated:  August 21, 2006

PITNEY HARDIN LLP

By ____ /s/ Ronald S. Beacher _____

Ronald S. Beacher (RB8837)
Conrad K. Chiu (CC6346)
7 Times Square
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: rbeacher@pitneyhardin.com
           cchiu@pitneyhardin.com

Attorneys for IBJTC Business Credit Corporation,
as successor to IBJ Whitehall Business Credit
Corporation

1438220A07081806

**PITNEY HARDIN LLP**
Ronald S. Beacher (RB8837)                    Hearing Date: September 14, 2006
Conrad K. Chiu (CC6346)                       Hearing Time: 10:00 a.m.
7 Times Square                                Objection Deadline: September 7, 2006 at 4:00 p.m.
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: rbeacher@pitneyhardin.com
E-Mail: cchiu@pitneyhardin.com

Attorneys for IBJTC Business Credit Corporation,
as successor to IBJ Whitehall Business Credit Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:                                    :    Chapter 11
                                          :
**DELPHI CORPORATION, *et al.*,**         :    Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :    (Jointly Administered)
                                          :
-------------------------------------------------------------X

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE AND FOR PAYMENT OF POST-PETITION LEASE OBLIGATIONS

IBJTC Business Credit Corporation ("IBJTC"), as successor to IBJ Whitehall Business Credit Corporation ("IBJ"), hereby submits the following Memorandum of Points and Authorities in support of its Motion for an order compelling Delphi Corporation ("Delphi") to assume or reject a certain unexpired Lease (as defined herein) and to pay and perform all past due and future post-petition obligations under the Lease to IBJTC until the Lease is rejected (the "Motion").

1438220A07081806

## INTRODUCTION

1.      By this Motion, IBJTC seeks an order of this Court compelling Delphi to assume or reject the Lease, and to pay and perform all past due and future post-petition obligations thereunder to IBJTC, until the Lease is rejected by Delphi. The sixty (60) day period under 11 U.S.C. Section 365(d)(5) expired on December 8, 2005. Delphi has failed to pay certain post-petition obligations under the Lease to IBJTC as such obligations came due. IBJTC is informed and believes and thereon alleges that Delphi is using the equipment subject to the Lease in the operation of Delphi's business.

## FACTS

2.      On October 8, 2005, (the "Petition Date"), Delphi and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

3.      By an order entered on the Petition Date, the Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      Pre-petition, General Motors Corporation ("GM") and First American Capital Management Group, Inc. ("First American") entered into, inter alia, a Master Lease Agreement (as at any time amended, the "Master Lease") and certain schedules identified hereinbelow (as at any time amended and together with the Master Lease, collectively, the "Lease"), whereby GM leased certain equipment from First American.

5.      Under Equipment Schedule No. 1093 (as at any time amended, "Schedule No. 1093"), GM leased certain equipment, more specifically described in Schedule No. 1093, from

1438220A07081806

2

First American and agreed to make sixty (60) consecutive monthly payments of $1,405.98 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

6.      Under Equipment Schedule No. 1094 (as at any time amended, "Schedule No. 1094"), GM leased certain equipment, more specifically described in Schedule No. 1094, from First American and agreed to make sixty (60) consecutive monthly payments of $3,521.66 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

7.      Under Equipment Schedule No. 1103 (as at any time amended, "Schedule No. 1103"), GM leased certain equipment, more specifically described in Schedule No. 1103, from First American and agreed to make sixty (60) consecutive monthly payments of $656.83 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

8.      Under Equipment Schedule No. 1116 (as at any time amended, "Schedule No. 1116"), GM leased certain equipment, more specifically described in Schedule No. 1116, from First American and agreed to make sixty (60) consecutive monthly payments of $2,898.62 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

9.      Under Equipment Schedule No. 1137 (as at any time amended, "Schedule No. 1137"), GM leased certain equipment, more specifically described in Schedule No. 1137, from First American and agreed to make sixty (60) consecutive monthly payments of $1,837.95 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

10.    Under Equipment Schedule No. 1180 (as at any time amended, "Schedule No. 1180"), GM leased certain equipment, more specifically described in Schedule No. 1180, from First American and agreed to make sixty (60) consecutive monthly payments of $543.37 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

11.    Under Equipment Schedule No. 1185 (as at any time amended, "Schedule No. 1185"), GM leased certain equipment, more specifically described in Schedule No. 1185, from First American and agreed to make sixty (60) consecutive monthly payments of $928.08 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

12.    Under Equipment Schedule No. 1205 (as at any time amended, "Schedule No. 1205"), GM leased certain equipment, more specifically described in Schedule No. 1205, from First American and agreed to make sixty (60) consecutive monthly payments of $662.08 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

13.    Under Equipment Schedule No. 1336 (as at any time amended, "Schedule No. 1336"), GM leased certain equipment, more specifically described in Schedule No. 1336, from First American and agreed to make sixty (60) consecutive monthly payments of $1,088.22 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

14.    Under Equipment Schedule No. 1366 (as at any time amended, "Schedule No. 1366"), GM leased certain equipment, more specifically described in Schedule No. 1366, from First American and agreed to make sixty (60) consecutive monthly payments of $1,812.66 to

4

First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

15.    Under Equipment Schedule No. 1432 (as at any time amended, "Schedule No. 1432"), GM leased certain equipment, more specifically described in Schedule No. 1432, from First American and agreed to make sixty (60) consecutive monthly payments of $4,286.52 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

16.    Under Equipment Schedule No. 1446 (as at any time amended, "Schedule No. 1446"), GM leased certain equipment, more specifically described in Schedule No. 1446, from First American and agreed to make sixty (60) consecutive monthly payments of $303.59 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

17.    Under Equipment Schedule No. 1524 (as at any time amended, "Schedule No. 1524"), GM leased certain equipment, more specifically described in Schedule No. 1524, from First American and agreed to make sixty (60) consecutive monthly payments of $456.96 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter.

18.    GM accepted delivery of the equipment (the "Equipment") subject to the aforementioned Schedules (collectively, the "Schedules") and commenced making payments to First American under the terms and conditions of the Lease.

19.    Upon information and belief, GM assigned its right, title and interest in and to the Lease and Equipment to Delphi[1].

20.    As a result of, inter alia, that certain December 23, 1996 Master Purchase Agreement between Capital Associates International, Inc. ("CAI") and IBJS Commercial Corporation ("IBJS") and that certain August 10, 1999 Assignment of Lease and Purchase Agreement (the "Assignment Agreement") between First American and Capital, IBJS[2] became the holder of (a) the Schedules and (b) the Lease as it applies to the Schedules.

21.    Thereafter, Delphi and IBJ entered into several Renewal Agreements with respect to Schedule Nos. 1093, 1094, 1137, 1180, 1185, 1205, 1336 and 1366 (the "Renewals"), whereby the maturity date under each such Schedule was extended, and the monthly installment amount was modified as follows:

| Schedule No. | New Maturity Date | Monthly Rental Installment Amount |
|---|---|---|
| 1093 | 05/31/06 | $341.47 |
| 1094 | 09/30/05 | $395.06 |
| 1137 | 04/31/07 | $1,194.72 |
| 1180 | 03/31/04 | $433.23 |
| 1185 | 08/31/06 | $696.09 |
| 1205 | 04/30/04 | $463.50 |
| 1336 | 08/31/06 | $248.94 |
| 1366 | 11/01/06 | $1,359.55 |

22.    IBJTC is the successor-in-interest to IBJ with respect to the Lease (as it applies to the Schedules), the Equipment and the Renewal Agreements.

---

[1]    Upon information and belief, GM and Delphi did not execute any formal written agreement memorializing the assignment of the Lease. As such, IBJTC reserves its rights to proceed against GM with respect to any default under the Lease.

[2]    IBJS later became IBJ.

23.    With respect to the Schedules that were not renewed or whose renewal term periods have passed, Delphi is obligated to make month-to-month rental payments to IBJTC at the rate of the monthly installment amount of the corresponding original Schedule or most recent Renewal Agreement.

24.    Delphi subsequently defaulted under the Lease by failing to make certain rental installments as they came due under the Schedules.  Specifically, Delphi has failed to make the rental installments due as set forth on Exhibit "18" attached hereto and incorporated by reference.

25.    In addition, certain property taxes are owing under the Lease as follows:

### PROPERTY TAXES OWED

| County | State | Invoice # | Amount |
|---|---|---|---|
| Montgomery | OH | 40D | $ 1,067.57 |
| Montgomery | OH | 41D | $ 1,789.15 |
| Trumbell | OH | 54D | $ 914.84 |
| Laredo (Unified Sch. Dist.) – 05 | TX | 104D | $ 1,632.35 |
| Laredo (City) – 05 | TX | 112D | $ 647.10 |
| Laredo (Webb County) – 05 | TX | 115D | $ 682.28 |
| Laredo (2003) (Unified Sch. Dist.) | TX | 102D | $ 2,245.93 |
| Laredo (2004) (Unified Sch. Dist.) | TX | 103D | $ 1,852.88 |
| Laredo (2003) (Webb County) | TX | 113D | $ 1,046.77 |
| Laredo (2004) (Webb County) | TX | 114D | $ 810.52 |
| Laredo (2003) (City) | TX | 110D | $ 968.09 |
| Laredo (2004) (City) | TX | 111D | $ 766.11 |

**$14,423.59**

1438220A07081806

26.     Post-petition, IBJTC has incurred certain attorneys' fees and costs in connection

with this matter.

27.     Notwithstanding Delphi's default under the Lease, upon information and belief,

Delphi is still in possession of the Equipment, and is using the Equipment in the operation of its

business.

## BASIS FOR RELIEF

28.     The Court may set a specified period of time for Delphi to assume or reject the

Lease.

29.     Section 365(d)(2) of the Bankruptcy Code provides in relevant part:

> In a case under Chapter . . . 11, . . . of this title, the trustee may assume or
> reject an executory contract or unexpired lease of . . . personal property of
> the debtor at any time before the confirmation of a plan but the court, on
> request of any party to such contract or lease, may order the trustee to
> determine within a specified period of time whether to assume or reject
> such contract or lease.

30.     What constitutes "reasonable time" within which to affirm or reject a lease under

Section 365(d)(2) of the Bankruptcy Code is left to the Bankruptcy Court's discretion in light of

all circumstances of the case. In re Monroe Well Services, Inc., 83 B.R. 317 (Bankr. E.D.Penn.

1988); In re New York Deli, Ltd., 41 B.R. 198 (Bkrtcy. D.Ha. 1984).

31.     Section 365(d)(5) of the Bankruptcy Code provides in part that:

> [t]he trustee shall perform all of the obligations of the debtor, except those
> specified in section 365(b)(2), first arising from or after 60 days after the
> order for relief in a case under chapter 11 of this title under an unexpired
> lease of personal property. . ., until such lease is assumed or rejected
> notwithstanding section 503(b)(1) of this title, unless the court, after notice
> and a hearing and based on the equities of the case, orders otherwise with
> respect to the obligations or timely performance thereof.

32.    The sixty (60) day period set forth in Section 365(d)(5) of the Bankruptcy Code expired on December 8, 2005. Delphi has failed to make certain post-petition payments to IBJTC in accordance with the Lease. Thus, IBJTC believes that this Court should compel Delphi to make a decision to assume or reject the Lease within thirty (30) days of the date of the hearing on this Motion or such requisite amount of time that the Court deems proper. In addition, Delphi should be compelled to pay and perform all past due and future post-petition obligations under the Lease to IBJTC until the Lease is rejected.

## CONCLUSION

33.    For the foregoing reasons, IBJTC respectfully requests that this Court make and enter its order compelling Delphi to assume or reject the Lease within thirty (30) days of the date of the hearing on this Motion or such requisite time that the Court deems proper. In addition, IBJTC respectfully requests that the Court order Delphi to pay and perform all past due and future post-petition obligations under the Lease to IBJTC until the Lease is rejected.

Dated:  August 21, 2006

PITNEY HARDIN LLP

By _____ /s/ Ronald S. Beacher _____
Ronald S. Beacher (RB8837)
Conrad K. Chiu (CC6346)
7 Times Square
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: rbeacher@pitneyhardin.com
cchiu@pitneyhardin.com

Attorneys for IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation

1438220A07082306

9

**PITNEY HARDIN LLP**

Ronald S. Beacher (RB8837)          Hearing Date: September 14, 2006
Conrad K. Chiu (CC6346)             Hearing Time: 10:00 a.m.
7 Times Square                      Objection Deadline: September 7, 2006 at 4:00 p.m.
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: rbeacher@pitneyhardin.com
E-Mail: cchiu@pitneyhardin.com

Attorneys for IBJTC Business Credit Corporation,
as successor to IBJ Whitehall Business Credit Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
In re:                                        :    Chapter 11
                                              :
**DELPHI CORPORATION, *et al.*,**             :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
----------------------------------------------------------------X

### DECLARATION OF HIROKI YASUDA IN SUPPORT
### OF MOTION TO COMPEL ASSUMPTION OR REJECTION
### OF UNEXPIRED LEASE AND FOR PAYMENT AND
### PERFORMANCE OF POST-PETITION LEASE OBLIGATIONS

I, Hiroki Yasuda, do hereby declare:

1.      I am employed by IBJTC Business Credit Corporation ("IBJTC"), successor to

IBJ Whitehall Business Credit Corporation ("IBJ"), as President. I make this declaration based

upon my personal knowledge, except as to matters stated herein on my information and belief,

and as to those matters, I believe my information to be true and correct. If called as a witness, I

could and would competently testify to the matters contained herein.

1438220A07081806

2.    As President, I oversee the monitoring of leases where: (a) the lessee is in default under the terms of the lease; and (b) the lessee has filed a petition for relief under the Bankruptcy Code.

3.    Based upon my review of documents under my supervision and control, I know of my own knowledge that:

(a)    On October 8, 2005, (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

(b)    By an order entered on the Petition Date, the Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

(c)    Pre-petition, General Motors Corporation ("GM") and First American Capital Management Group, Inc. ("First American") entered into, inter alia, a Master Lease Agreement (as at any time amended, the "Master Lease") and certain schedules identified hereinbelow (as at any time amended and together with the Master Lease, collectively, the "Lease"), whereby GM leased certain equipment from First American.  A true and correct copy of the Master Lease is attached hereto as Exhibit "1" and is incorporated by reference.

(d)    Under Equipment Schedule No. 1093 (as at any time amended, "Schedule No. 1093"), GM leased certain equipment, more specifically described in Schedule No. 1093, from First American and agreed to make sixty (60) consecutive monthly payments of $1,405.98 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent

installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1093 is attached hereto as Exhibit "2" and is incorporated by reference.

(e)    Under Equipment Schedule No. 1094 (as at any time amended, "Schedule No. 1094"), GM leased certain equipment, more specifically described in Schedule No. 1094, from First American and agreed to make sixty (60) consecutive monthly payments of $3,521.66 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1094 is attached hereto as Exhibit "3" and is incorporated by reference.

(f)    Under Equipment Schedule No. 1103 (as at any time amended, "Schedule No. 1103"), GM leased certain equipment, more specifically described in Schedule No. 1103, from First American and agreed to make sixty (60) consecutive monthly payments of $656.83 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1103 is attached hereto as Exhibit "4" and is incorporated by reference.

(g)    Under Equipment Schedule No. 1116 (as at any time amended, "Schedule No. 1116"), GM leased certain equipment, more specifically described in Schedule No. 1116, from First American and agreed to make sixty (60) consecutive monthly payments of $2,898.62 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1116 is attached hereto as Exhibit "5" and is incorporated by reference.

(h)    Under Equipment Schedule No. 1137 (as at any time amended, "Schedule No. 1137"), GM leased certain equipment, more specifically described in Schedule No. 1137,

3

from First American and agreed to make sixty (60) consecutive monthly payments of $1,837.95 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1137 is attached hereto as Exhibit "6" and is incorporated by reference.

(i)    Under Equipment Schedule No. 1180 (as at any time amended, "Schedule No. 1180"), GM leased certain equipment, more specifically described in Schedule No. 1180, from First American and agreed to make sixty (60) consecutive monthly payments of $543.37 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1180 is attached hereto as Exhibit "7" and is incorporated by reference.

(j)    Under Equipment Schedule No. 1185 (as at any time amended, "Schedule No. 1185"), GM leased certain equipment, more specifically described in Schedule No. 1185, from First American and agreed to make sixty (60) consecutive monthly payments of $928.08 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1185 is attached hereto as Exhibit "8" and is incorporated by reference.

(k)    Under Equipment Schedule No. 1205 (as at any time amended, "Schedule No. 1205"), GM leased certain equipment, more specifically described in Schedule No. 1205, from First American and agreed to make sixty (60) consecutive monthly payments of $662.08 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1205 is attached hereto as Exhibit "9" and is incorporated by reference.

4

(l)    Under Equipment Schedule No. 1336 (as at any time amended, "Schedule No. 1336"), GM leased certain equipment, more specifically described in Schedule No. 1336, from First American and agreed to make sixty (60) consecutive monthly payments of $1,088.22 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1336 is attached hereto as Exhibit "10" and is incorporated by reference.

(m)    Under Equipment Schedule No. 1366 (as at any time amended, "Schedule No. 1366"), GM leased certain equipment, more specifically described in Schedule No. 1366, from First American and agreed to make sixty (60) consecutive monthly payments of $1,812.66 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1366 is attached hereto as Exhibit "11" and is incorporated by reference.

(n)    Under Equipment Schedule No. 1432 (as at any time amended, "Schedule No. 1432"), GM leased certain equipment, more specifically described in Schedule No. 1432, from First American and agreed to make sixty (60) consecutive monthly payments of $4,286.52 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1432 is attached hereto as Exhibit "12" and is incorporated by reference.

(o)    Under Equipment Schedule No. 1446 (as at any time amended, "Schedule No. 1446"), GM leased certain equipment, more specifically described in Schedule No. 1446, from First American and agreed to make sixty (60) consecutive monthly payments of $303.59 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent

installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1446 is attached hereto as Exhibit "13" and is incorporated by reference.

(p)    Under Equipment Schedule No. 1524 (as at any time amended, "Schedule No. 1524"), GM leased certain equipment, more specifically described in Schedule No. 1524, from First American and agreed to make sixty (60) consecutive monthly payments of $456.96 to First American, or its assign, with the first installment due on May 31, 1995 with subsequent installments due on the last day of each month thereafter. A true and correct copy of Schedule No. 1524 is attached hereto as Exhibit "14" and is incorporated by reference.

(q)    GM accepted delivery of the equipment (the "Equipment") subject to the aforementioned Schedules (collectively, the "Schedules") and commenced making payments to First American under the terms and conditions of the Lease.

(r)    Upon information and belief, GM assigned its right, title and interest in and to the Lease and the Equipment to Delphi[1].

(s)    On or about December 23, 1996, Capital Associates International, Inc. ("Capital") and IBJS Commercial Corporation ("IBJS") entered into that certain Master Purchase Agreement (the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached hereto as Exhibit "15" and is incorporated by reference.

(t)    On or about August 10, 1999, First American and Capital entered into an Assignment of Lease and Purchase Agreement (the "Assignment Agreement"). A true and

---

[1]    Upon information and belief, GM and Delphi did not execute any formal written agreement memorializing the assignment of the Lease. As such, IBJTC reserves its rights to proceed against GM with respect to any default under the Lease.

6

correct copy of the Assignment Agreement is attached hereto as Exhibit "16" and is incorporated by reference.

(u)    IBJS became IBJ.

(v)    Subsequent thereto, Delphi and IBJ entered into several Renewal Agreements with respect to Schedule Nos. 1093, 1094, 1137, 1180, 1185, 1205, 1336 and 1366 (the "Renewals"), whereby the maturity date under each such Schedule was extended, and the monthly installment amount was modified as follows:

| Schedule No. | New Maturity Date | Monthly Rental Installment Amount |
|---|---|---|
| 1093 | 05/31/06 | $341.47 |
| 1094 | 09/30/05 | $395.06 |
| 1137 | 04/31/07 | $1,194.72 |
| 1180 | 03/31/04 | $433.23 |
| 1185 | 08/31/06 | $696.09 |
| 1205 | 04/30/04 | $463.50 |
| 1336 | 08/31/06 | $248.94 |
| 1366 | 11/01/06 | $1,359.55 |

True and correct copies of the Renewals are attached hereto as Exhibit "17" and are incorporated by reference.

(w)    IBJTC is the successor-in-interest to IBJ with respect to the Lease, the Equipment and the Renewals.

(x)    With respect to the Schedules that were not renewed or whose renewal term periods have passed, the lessee is obligated to make month-to-month rental payments to IBJTC at the rate of the monthly installment amount of the corresponding original Schedule or most recent Renewal.

1438220A07081806

7

(y)    Delphi subsequently defaulted under the Lease by failing to make certain rental installments as they came due under the Schedules. Specifically, Delphi has failed to make the rental installments due as set forth on Exhibit "18" attached hereto and incorporated by reference.

(z)    In addition, certain property taxes are owing under the Lease as follows:

**PROPERTY TAXES OWED**

| County | State | Invoice # | Amount |
|--------|-------|-----------|--------|
| Montgomery | OH | 40D | $ 1,067.57 |
| Montgomery | OH | 41D | $ 1,789.15 |
| Trumbell | OH | 54D | $    914.84 |
| Laredo (Unified Sch. Dist) – 05 | TX | 104D | $ 1,632.35 |
| Laredo (City) – 05 | TX | 112D | $    647.10 |
| Laredo (Webb County) – 05 | TX | 115D | $    682.28 |
| Laredo (2003) (Unified Sch. Dist.) | TX | 102D | $ 2,245.93 |
| Laredo (2004) (Unified Sch. Dist.) | TX | 103D | $ 1,852.88 |
| Laredo (2003) (Webb County) | TX | 113D | $ 1,046.77 |
| Laredo (2004) (Webb County) | TX | 114D | $    810.52 |
| Laredo (2003) (City) | TX | 110D | $    968.09 |
| Laredo (2004) (City) | TX | 111D | $    766.11 |
|  |  |  | **$14,423.59** |

(aa)    Post-petition, IBJTC has incurred certain attorneys' fees and costs in connection with this matter.

(bb)    Upon information and belief, Delphi is still in possession of the Equipment, and is using the Equipment in the operation of its business.

1438220A07081806

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on _Aug. 14_____, 2006, at New York, New York.

_H. Yasuda_____
HIROKI YASUDA

Sworn to and subscribed before me this
_14_ day of _August_____, 2006

_Yasmin Ranga_____
NOTARY PUBLIC
**YASMIN RANGA**
**Notary Public, State of New York**
**No. 03-4705276**
**Qualified in Putnam County**
**Commission Expires March 30, 2007**

9