# EXHIBIT 10

**EQUIPMENT SCHEDULE**
**NO. 1336**
**TO MASTER LEASE AGREEMENT**
**DATED AS OF MAY 1, 1995**

592919-001
824-43
(7) asset 6051 - 6057

**Lessor and Mailing Address:**          **Lessee and Mailing Address:**

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.   GENERAL MOTORS  CORPORATION
1600 RAND TOWER, 527 MARQUETTE AVE. S.          902 E. HAMILTON AVENUE
MINNEAPOLIS, MN 55402                           FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement", said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

1.    <u>Advance Rent (if any)</u>: N/A

2.    <u>Capitalized Lessor's Cost</u> :  $67,299.00

3.    <u>Basic Term Lease Rate Factor</u>: 1.617%

4.    <u>Daily Lease Rate Factor</u>:  0.0539%

5.    <u>Basic Term (Number of Months)</u>:  60

6.    <u>Basic Term Commencement Date</u>:  The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.    <u>Equipment Location</u>:        General Motors Corporation
                                        Delphi Harrison Thermal Systems
                                        3600 Dryden Road
                                        Moraine, OH  45439-1410
                                        Montgomery County

8.    <u>Lessee's Federal Tax ID Number</u>:  38-0572515

9.    <u>Supplier</u>:  Hyster Company

10.   <u>Last Delivery Date</u>: _____.

11.   <u>Termination Date</u>:  The later of (I) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

12.   <u>Purchase Option</u>:  Fair Market Value.

13.   <u>Renewal Option</u>:  Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12 or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

1                                        firstam\els.1336

14.  Return Provisions: In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

1.  At the time of return when loaded to its rated capacity, each unit shall:

   a.  Start under its own power and idle without water, fuel or oil leaks.

   b.  Move through its normal speed ranges in both forward and reverse;

   c.  Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

   d.  Steer normally right and left in both forward and reverse;

   e.  Be able to stop with its service brakes within a safe distance in both forward and reverse;

   f.  Lift, lower and tilt normally;

2.  Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

3.  With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

4.  With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

C.  TAX BENEFITS

Depreciation Deductions:

   a.  Depreciation Method: Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

   b.  Recovery Period:  5 years.

   c.  Basis: 100% of Capitalized Lessor's Cost.

D.  TERM AND RENT

1.  Interim Rent. For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim

2

firstam\els.1336

Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

2.  <u>Basic Term Rent</u>. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3.  <u>Adjustment to Capitalized Lessor's Cost</u>. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.  INSURANCE

1.  Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

2.  "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                                LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.          GENERAL MOTORS CORPORATION

By: _____                          By: _____
Name: _____                          Name: Marsha L. Smith
                                                       Title:  Purchasing Senior Buyer
Title: Ocel, Heimer & Assoc. ... Ltd for

First American Capital Management Group. Inc

ANNEX A
TO
EQUIPMENT SCHEDULE NO. 1336
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer Equipment Location: General Motors Corporation Delphi Harrison Thermal Systems 3600 Dryden Road Moraine, OH 45439-1410 Montgomery County | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Hyster/Hyster DYS69144 PR160494-001 | | W40XTC 4,000 lb. Elec. Walkie Staker With the following: 24 Volt Mast: 2-Stage 104.5" MFH / 72" LH / 47.0" FL Carriage: 33.75" – Class II Forks: 48" x 1.5" x 4" – MFG STD Load Wheels: 10 x 7 Polyurethane Drive Tires: 10" x 15" Polyurethane Freight | 4 | $13,725.00 | $54,900.00 |
| Hyster/Hyster DYS69144 PR160486-001 | | W40XT 4,000 lb. Elec. Walkie Stacker, With the following: Curtis Transistor Controls 24 Volt Forks: 48" Long Width Across Forks: 27" Wide Drive Tires: 9" x 5" Rubber 3.25 x 3.6" Polyurethane Load Wheels Freight | 3 | $4,133.00 | $12,399.00 |

**TOTAL EQUIPMENT COST:**                                              $67,299.00

Initials:

_mls_ Lessee

_QP_ Lessor
_46_

ANNEX C
TO
EQUIPMENT SCHEDULE NO. 1336
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

### DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Harrison Thermal Systems 3600 Dryden Road Moraine, OH  45439-1410 Montgomery County | | | | | |
| Hyster/Hyster DYS69144 PR160494-001 | A454N01752W A454N01753W A454N01754W A454N01755W | W40XTC 4,000 lb. Elec. Walkie Staker With the following: 24 Volt Mast: 2-Stage 104.5" MFH / 72" LH / 47.0" FL Carriage:  33.75" – Class II Forks:  48" x 1.5" x 4" – MFG STD Load Wheels:  10 x 7 Polyurethane Drive Tires:  10" x 15" Polyurethane Freight | 4 | $13,725.00 | $54,900.00 |
| Hyster/Hyster DYS69144 PR160486-001 | A218H04005W A218H04006W A218H04007W | W40XT 4,000 lb. Elec. Walkie Stacker, With the following: Curtis Transistor Controls 24 Volt Forks:  48" Long Width Across Forks:  27" Wide Drive Tires:  9" x 5" Rubber 3.25 x 3.6" Polyurethane Load Wheels Freight | 3 | $4,133.00 | $12,399.00 |

**TOTAL EQUIPMENT COST:**  $67,299.00

LESSEE:

GENERAL MOTORS CORPORATION

By: _____

Name:  Marsha L. Smith

Title:  Purchasing Senior Buyer

Date:  8 - 1 0 - 9 9

16

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1336
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |

| | |
|---|---|
| 34 | 90% |
| 35 | 90% |
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables. In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

_____ Lessor

_____ Lessee

# EXHIBIT 11

EQUIPMENT SCHEDULE
NO. 1366
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995



ORIGINAL
$59349-001$

**Lessor and Mailing Address:**

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.
1600 RAND TOWER, 527 MARQUETTE AVE. S.
MINNEAPOLIS, MN 55402

**Lessee and Mailing Address:**

GENERAL MOTORS  CORPORATION
902 E. HAMILTON AVENUE
FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement",  said Agreement and this Schedule being collectively referred to as "Lease").

A.   EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.   FINANCIAL TERMS

1.   Advance Rent (if any): N/A

2.   Capitalized Lessor's Cost : $112,100.00

3.   Basic Term Lease Rate Factor: 1.617%

4.   Daily Lease Rate Factor: 0.0539%

5.   Basic Term (Number of Months): 60

6.   Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.   Equipment Location:   General Motors Corporation
Delphi Automotive Systems
Saginaw Operations
2328 East Genesee
Saginaw, MI  48601
Saginaw County

8.   Lessee's Federal Tax ID Number: 38-0572515

9.   Supplier: Hyster Company

10.   Last Delivery Date: _____.

11.   Termination Date: The later of (I) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

1

C.   TAX BENEFITS

Depreciation Deductions:

    a.   <u>Depreciation Method</u>: Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

    b.   <u>Recovery Period</u>: 5 years.

    c.   <u>Basis</u>: 100% of Capitalized Lessor's Cost.

D.   TERM AND RENT

    1.   <u>Interim Rent</u>. For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

    2.   <u>Basic Term Rent</u>. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

    3.   <u>Adjustment to Capitalized Lessor's Cost</u>. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.   INSURANCE

    1.   Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

    2.   "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

3

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                                    LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.    GENERAL MOTORS CORPORATION,

By: _____              By: _____

Name: _____              Name: __Stephen M Ireland__
        Ocel, Heimer & Associates, Ltd for

Title: __First American Capital Management Group, Inc.__    Title: __Purchasing Senior Buyer__

ln

4

firstamel1366

ANNEX A
TO
EQUIPMENT SCHEDULE NO. 1366
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Automotive Systems Saginaw Operations 2328 East Genesee Saginaw, MI 48601 Saginaw County | | | | | |
| Hyster/Hyster PO#SMS72123 PR227722-001 | | E65XM2 6,500 lb. Elec. Lift Truck With the following: 36 Volt Seat & Manual Brake Transistor Hydraulics Drive Tires: 21 x 8 x 15 Smooth Steer Tires: 16 x 6 x 10.5 Smooth Mast: 2 Stage VISTA 126.5" MFH/ 84" LH/ 58.5" FL Carriage: Hook Type 38.5" GM Travel & Work Light Package Forks: 2" x 6" x 42" Class III Pallet Auxiliary Counterweight and Shims Battery Sliders with Lead Roller Backguard on Rear Overhead Guard Legs Freight | 5 | $22,420.00 | $112,100.00 |

**TOTAL EQUIPMENT COST:**                                    **$112,100.00**

Initials:

_Lessee_

_Lessor_

TO
## EQUIPMENT SCHEDULE NO. 1366
## TO MASTER LEASE AGREEMENT
## DATED AS OF MAY 1, 1995

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

### DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Automotive Systems Saginaw Operations 2328 East Genesee Saginaw, MI 48601 Saginaw County | | | | | |
| Hyster/Hyster PO#SMS72123 PR227722-001 | F108V16716W F108V16717W F108V16718W F108V16719W F108V16739W | E65XM2 6,500 lb. Elec. Lift Truck With the following: 36 Volt Seat & Manual Brake Transistor Hydraulics Drive Tires: 21 x 8 x 15 Smooth Steer Tires: 16 x 6 x 10.5 Smooth Mast: 2 Stage VISTA 126.5" MFH/ 84" LH/ 58.5" FL Carriage: Hook Type 38.5" GM Travel & Work Light Package Forks: 2" x 6" x 42" Class III Pallet Auxiliary Counterweight and Shims Battery Sliders with Lead Roller Backguard on Rear Overhead Guard Legs Freight | 5 | $22,420.00 | $112,100.00 |

**TOTAL EQUIPMENT COST:**                                            **$112,100.00**

LESSEE:

GENERAL MOTORS CORPORATION

By: _____
        Authorized Representative

Name: _Stephen M. Ireland_

Title: _Purchasing Senior Buyer_

Date: _26 Oct 99_

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1366
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

### STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |
| 34 | 90% |
| 35 | 90% |

| | |
|---|---|
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables.  In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:
_____ Lessor
_____ Lessee

# EXHIBIT 12

EQUIPMENT SCHEDULE
NO. 1432
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995



ORIGINAL
593015-001

Lessor and Mailing Address:

Lessee and Mailing Address:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.
1600 RAND TOWER, 527 MARQUETTE AVE. S.
MINNEAPOLIS, MN 55402

GENERAL MOTORS CORPORATION
902 E. HAMILTON AVENUE
FLINT, MI 48550

824-54

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement", said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

1.    Advance Rent (if any): N/A

2.    Capitalized Lessor's Cost : $265,090.00

3.    Basic Term Lease Rate Factor: 1.617%

4.    Daily Lease Rate Factor: 0.0539%

$4,286.52 /month

5.    Basic Term (Number of Months): 60

6.    Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.    Equipment Location:       General Motors Corporation
                              Delphi Energy & Engine Mgmt. Systems
                              7929 South Howell Avenue
                              Oak Creek, WI 53154
                              Milwaukee County

8.    Lessee's Federal Tax ID Number: 38-0572515

9.    Supplier: Hyster Company

10.   Last Delivery Date: _____.

11.   Termination Date: The later of (I) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

12.   Purchase Option: Fair Market Value.

13.   Renewal Option:  Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12 or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

1                                    firstam/els.1432

14. <u>Return Provisions</u>: In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

1. At the time of return when loaded to its rated capacity, each unit shall:

    a. Start under its own power and idle without water, fuel or oil leaks.

    b. Move through its normal speed ranges in both forward and reverse;

    c. Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

    d. Steer normally right and left in both forward and reverse;

    e. Be able to stop with its service brakes within a safe distance in both forward and reverse;

    f. Lift, lower and tilt normally;

2. Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

3. With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

4. With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

## C. TAX BENEFITS

<u>Depreciation Deductions</u>:

    a. <u>Depreciation Method</u>: Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

    b. <u>Recovery Period</u>: 5 years.

    c. <u>Basis</u>: 100% of Capitalized Lessor's Cost.

## D. TERM AND RENT

1. <u>Interim Rent</u>. For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim

Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

2. <u>Basic Term Rent</u>. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3. <u>Adjustment to Capitalized Lessor's Cost</u>. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.   INSURANCE

1. Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

2. "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                             LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.        GENERAL MOTORS CORPORATION

By: _____            By: _____

Name: _____            Name: _Stephen M. Ireland_
      Ocel, Heimer & Associates, Ltd for
Title: _First American Capital Management Group. Inc._   Title: _Purchasing Senior Buyer_

ANNEX A
TO
EQUIPMENT SCHEDULE NO. 1432
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

ORIGINAL

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Energy & Engine Mgmt. Systems 7929 South Howell Avenue Oak Creek, WI 53154 Milwaukee County | | | | | |
| Hyster/Hyster PO#AMS45885 PR208512-001 | | E50XM2 5,000 lb. Elec. Lift Truck With the following: 36 Volt  Seat & Manual Park Brake Contactor Hydraulics Drive Tires: 21 x 7 x 15 Smooth Non-Marking Steer Tires: 16 x 5 x 10.5 Smooth Non-Marking Mast: 2 Stage VISTA 131" MFH/ 84" LH/ 62.0.0" FL Carriage: Hook Type 38.5" Sideshift: Mfg. Std. GM Travel & Work Light Package Power Off Seat to Traction & Hyd Motors Except Horn & Lights Forks: 1.5" x 4" x 42" Class II Pallet Seat: Semi-Suspension Cloth (Sears) Battery Rollers & Slides Freight | 14 | $18,935.00 | $265,090.00 |

**TOTAL EQUIPMENT COST:**                                    **$265,090.00**

Initials:

Lessee

Lessor

TO
## EQUIPMENT SCHEDULE NO. 1432
## TO MASTER LEASE AGREEMENT
### DATED AS OF MAY 1, 1995

ORIGINAL

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Energy & Engine Mgmt. Systems 7929 South Howell Avenue Oak Creek, WI  53154 Milwaukee County | | | | | |
| Hyster/Hyster PO#AMS45885 PR208512-001 | F108V17016W F108V17017W F108V17018W F108V17033W F108V17034W F108V17035W F108V17036W F108V17053W F108V17054W F108V17055W F108V17056W F108V17059W F108V17060W F108V17061W | E50XM2 5,000 lb. Elec. Lift Truck With the following: 36 Volt   Seat & Manual Park Brake   Contactor Hydraulics Drive Tires:  21 x 7 x 15 Smooth Non-Marking Steer Tires:  16 x 5 x 10.5 Smooth Non-Marking Mast:  2 Stage VISTA 131" MFH/ 84" LH/ 62.0.0" FL Carriage:  Hook Type 38.5" Sideshift:  Mfg. Std. GM Travel & Work Light Package Power Off Seat to Traction & Hyd Motors Except Horn & Lights Forks:  1.5" x 4" x 42" Class II Pallet Seat:  Semi-Suspension Cloth (Sears) Battery Rollers & Slides Freight | 14 | $18,935.00 | $265,090.00 |

**TOTAL EQUIPMENT COST:**                                                         **$265,090.00**

LESSEE:

GENERAL MOTORS CORPORATION

By: _____
Authorized Representative

Name: _Stephen M Ireland_

Title: _PURCHASING SENIOR BUYER_

Date: _26 Oct 99_

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1432
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995


STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |

| | |
|---|---|
| 34 | 90% |
| 35 | 90% |
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

ORIGINAL

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables. In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

_____ Lessor

_____ Lessee

# EXHIBIT 13

EQUIPMENT SCHEDULE
NO. 1446
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

*593029 - 001*

*824 - 55*

Lessor and Mailing Address:                 Lessee and Mailing Address:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.    GENERAL MOTORS CORPORATION
1600 RAND TOWER, 527 MARQUETTE AVE. S.    902 E. HAMILTON AVENUE
MINNEAPOLIS, MN 55402    FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement", said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

1.    Advance Rent (if any): N/A

2.    Capitalized Lessor's Cost : $18,775.00

3.    Basic Term Lease Rate Factor: 1.617%    *$303.59 /month*

4.    Daily Lease Rate Factor: 0.0539%

5.    Basic Term (Number of Months): 60

6.    Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.    Equipment Location:        General Motors Corporation
Delphi Chassis Systems
Delphi Automotive Systems
Main Rec'g/Bldg. 20 / Bish Avenue
Dayton, OH 45417
Montgomery County

8.    Lessee's Federal Tax ID Number: 38-0572515

9.    Supplier: Hyster Company

10.    Last Delivery Date: _____.

11.    Termination Date: The later of (I) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

12.    Purchase Option: Fair Market Value.

13.    Renewal Option: Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12

1                                       firstam\eis1446

or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

14. <u>Return Provisions</u>: In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

1. At the time of return when loaded to its rated capacity, each unit shall:

    a. Start under its own power and idle without water, fuel or oil leaks.

    b. Move through its normal speed ranges in both forward and reverse;

    c. Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

    d. Steer normally right and left in both forward and reverse;

    e. Be able to stop with its service brakes within a safe distance in both forward and reverse;

    f. Lift, lower and tilt normally;

2. Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

3. With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

4. With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

C.    **TAX BENEFITS**

<u>Depreciation Deductions</u>:

    a. <u>Depreciation Method</u>: Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

    b. <u>Recovery Period</u>: 5 years.

    c. <u>Basis</u>: 100% of Capitalized Lessor's Cost.

ORIGINAL   Doc#12341446-001

D.    TERM AND RENT

1.    Interim Rent. For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

2.    Basic Term Rent. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3.    Adjustment to Capitalized Lessor's Cost. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.    INSURANCE

1.    Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

2.    "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                          LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.        GENERAL MOTORS CORPORATION

By: _____                      By: _____
Name: _____                      Name: Stephen M Ireland

Title: Joel Heiner & Associates, Ltd for          Title: _____
First American Capital Management Group, Inc.

3

ORIGINAL

Doc#12341446-001

## ANNEX A
## TO
## EQUIPMENT SCHEDULE NO. 1446
## TO MASTER LEASE AGREEMENT
## DATED AS OF MAY 1, 1995

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Chassis Systems Delphi Automotive Systems Main Rec'g/Bldg. 20 / Bish Avenue Dayton, OH  45417 Montgomery County | | | | | |
| Hyster/Hyster PO#DCS53023 PR223278-001 | | E50XM2 5,000 lb. Elec. Lift Truck With the following: 36 Volt Seat & Manual Park Brake Contactor Hydraulics Drive Tires:  21 x 7 x 15 Smooth Steer Tires:  16 x 5 x 10.5 Smooth Mast:  2 Stage VISTA 131" MFH/84" LH/ 62.0" FL Carriage:  Hook Type 38.5 GM Travel & Work Light Package Battery Compartment Rollers Freight | 1 | $18,775.00 | $18,775.00 |
| | | **TOTAL EQUIPMENT COST:** | | | **$18,775.00** |

Initials:

_Lessee_

_Lessor_

ORIGINAL    Doc#12341446-001

ANNEX C
TO
EQUIPMENT SCHEDULE NO. 1446
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

To: FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Chassis Systems Delphi Automotive Systems Main Rec'g/Bldg. 20 / Bish Avenue Dayton, OH 45417 Montgomery County | | | | | |
| Hyster/Hyster PO#DCS53023 PR223278-001 | F108V17062W | E50XM2 5,000 lb. Elec. Lift Truck With the following: 36 Volt Seat & Manual Park Brake Contactor Hydraulics Drive Tires: 21 x 7 x 15 Smooth Steer Tires: 16 x 5 x 10.5 Smooth Mast: 2 Stage VISTA 131" MFH/84" LH/ 62.0" FL Carriage: Hook Type 38.5 GM Travel & Work Light Package Battery Compartment Rollers Freight | 1 | $18,775.00 | $18,775.00 |
| | | **TOTAL EQUIPMENT COST:** | | | **$18,775.00** |

LESSEE:

GENERAL MOTORS CORPORATION

By: _____

Name: _Stephen M Ireland_

Title: _Purchasing Senior Buyer_

Date: _26 Oct 99_

ORIGINAL

Doc#12341446-001

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1446
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |

| | |
|---|---|
| 34 | 90% |
| 35 | 90% |
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables.   In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

_____ Lessor

_____ Lessee

# EXHIBIT 14

**EQUIPMENT SCHEDULE**
**NO. 1524**
**TO MASTER LEASE AGREEMENT**
**DATED AS OF MAY 1, 1995**

Lessor and Mailing Address:                         Lessee and Mailing Address:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.    GENERAL MOTORS  CORPORATION
1600 RAND TOWER, 527 MARQUETTE AVE. S.           902 E. HAMILTON AVENUE
MINNEAPOLIS, MN 55402                            FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement", said Agreement and this Schedule being collectively referred to as "Lease").

A.    EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.    FINANCIAL TERMS

    1.    Advance Rent (if any): N/A

    2.    Capitalized Lessor's Cost : $28,260.00

    *$456.96/month*

    3.    Basic Term Lease Rate Factor: 1.617%

    4.    Daily Lease Rate Factor: 0.0539%

    5.    Basic Term (Number of Months): 60

    6.    Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

    7.    Equipment Location:          General Motors Corporation
                                  Delphi Packard-Ohio Operations
                                  Rec. Dock Plant 13
                                  1265 North River Road
                                  Warren, OH  44483
                                  Trumbull County

    8.    Lessee's Federal Tax ID Number: 38-0572515

    9.    Supplier: Hyster Company

    10.    Last Delivery Date: _____.

    11.    Termination Date: The later of (I) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

    12.    Purchase Option: Fair Market Value.

    13.    Renewal Option:  Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12

or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

14.  Return Provisions: In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

1.  At the time of return when loaded to its rated capacity, each unit shall:

   a.  Start under its own power and idle without water, fuel or oil leaks.

   b.  Move through its normal speed ranges in both forward and reverse;

   c.  Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

   d.  Steer normally right and left in both forward and reverse;

   e.  Be able to stop with its service brakes within a safe distance in both forward and reverse;

   f.  Lift, lower and tilt normally;

2.  Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

3.  With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

4.  With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

## C.    TAX BENEFITS

Depreciation Deductions:

   a.  Depreciation Method: Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

   b.  Recovery Period:  5 years.

   c.  Basis:  100% of Capitalized Lessor's Cost.

## D.    TERM AND RENT

1.    <u>Interim Rent</u>. For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

2.    <u>Basic Term Rent</u>. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3.    <u>Adjustment to Capitalized Lessor's Cost</u>. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

## E.    INSURANCE

1.    Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

2.    "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                                    LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.        GENERAL MOTORS CORPORATION

By: _____          By: _____

                                                                Marsha L. Smith
Title:    Ocel/Heimer & Associates, Ltd for              Purchasing Senior Buyer
          First American Capital Management Group, Inc

ORIGINAL

ANNEX A
TO
EQUIPMENT SCHEDULE NO. 1524
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Packard-Ohio Operations Rec. Dock Plant 13 1265 North River Road Warren, OH 44483 Trumbull County | | | | | |
| Hyster/Hyster PO#P1S29203 PRX7698F-001 | | S60XM 6,000 lb. Gas Lift Truck With the following: Tread: Standard Drive Tires: 21 x 8 x 15 Lug Steer Tires: 16 x 6 x 10.5 Lug Mast: 3 Stage VISTA 182.0" MFH/ 82" LH/ 57.5" FL Carriage: Hook Type 38.5" 4-Way Hydraulic Control Valve 4-Way Hydraulic Hose Group GM Travel & Work Light Package Cascade Rotator Model #55D-RR-10B Forks: 42" Pallet – Rotator Type Freight | 1 | $28,260.00 | $28,260.00 |
| | | TOTAL EQUIPMENT COST: | | | $28,260.00 |

Initials:

_mlw_ Lessee

_GD_ Lessor

_m_

Doc#1234 1524-001

ORIGINAL

ANNEX C
TO
EQUIPMENT SCHEDULE NO. 1524
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of Units | Cost/Unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Packard-Ohio Operations Rec. Dock Plant 13 1265 North River Road Warren, OH  44483 Trumbull County | | | | | |
| Hyster/Hyster PO#P1S29203 PRX7698F-001 | D187V16000W | S60XM 6,000 lb. Gas Lift Truck With the following: Tread:  Standard Drive Tires: 21 x 8 x 15 Lug Steer Tires:  16 x 6 x 10.5 Lug Mast:  3 Stage VISTA 182.0" MFH/ 82" LH/ 57.5" FL Carriage: Hook Type 38.5" 4-Way Hydraulic Control Valve 4-Way Hydraulic Hose Group GM Travel & Work Light Package Cascade Rotator Model #55D-RR-10B Forks:  42" Pallet – Rotator Type Freight | 1 | $28,260.00 | $28,260.00 |
| | | **TOTAL EQUIPMENT COST:** | | | **$28,260.00** |

LESSEE:

GENERAL MOTORS CORPORATION

By:  _Marsha L Smith_

Marsha L. Smith, Authorized Representative
Purchasing Senior Buyer

Date:  _12-21-99_

firstam\els.1524

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 1524
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |

| | |
|---|---|
| 34 | 90% |
| 35 | 90% |
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables. In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

_____ Lessor

_____ Lessee

# EXHIBIT 15

## MASTER PURCHASE AGREEMENT

This Master Purchase Agreement (the "Agreement") is made and entered as of this 23rd day of December, 1996, by and between Capital Associates International, Inc., 7175 W. Jefferson Avenue, Suite 4000, Lakewood, Colorado 80235 ("Seller") and IBJS Commercial Corporation, One State Street, New York, New York 10004, ("Buyer").

## RECITALS

Seller has acquired and owns the equipment and accessories listed and described in each Purchase Schedule (the "Purchase Schedule") which is or may hereafter be attached hereto, which Purchase Schedule incorporates the provisions of this Agreement by reference (such groups of equipment and the accessories identified in each Purchase Schedule are hereinafter collectively referred to as the "Equipment"). The Equipment has been leased to various end-users identified in each Purchase Schedule as the "Underlying Lessee" (such Underlying Lessees are hereinafter collectively referred to as the "Underlying Lessee") pursuant to various lease agreements between Seller, as lessor, and the Underlying Lessee, as lessee, as further identified in the each Purchase Schedule as the "Underlying Lease" (such Underlying Leases are hereinafter collectively referred to as the "Underlying Lease").

Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, on the terms and conditions hereinafter set forth, each item of Equipment described in the Purchase Schedule as of the date indicated in the Purchase Schedule, subject and subordinate to the prior liens, if any, as identified in the Purchase Schedule as the "Existing Liens" (such Existing Liens are collectively hereinafter referred to as the "Existing Lien"), the rights of the Underlying Lessee under the Underlying Lease, and any liens for property or other taxes not yet due relating solely to the Underlying Lease and the Equipment (the "Prior Tax Liens").

Seller desires to assign the Underlying Lease to Buyer as of the date indicated on the applicable Purchase Schedule and Buyer desires to accept such assignment.

NOW, THEREFORE, the parties hereto agree as follows:

### Article 1

### Purchase and Sale of Equipment

1.1    Transfer of Equipment: Assignment of Leases. Seller agrees to sell and assign to Buyer and Buyer agrees to purchase and accept the assignment from Seller of, the Equipment and the Underlying Lease, subject and subordinate to the rights of the Underlying Lessee thereunder and the rights of the holder(s) of the Existing Lien and the Prior Tax Liens. In order to evidence each such purchase and assignment, Seller is delivering to Buyer a bill of sale, assignment and assumption (the "Bill of Sale") evidencing the sale of Equipment and assignment of the Underlying Lease. By accepting the Bill of Sale, Buyer accepts the assignment and, for the benefit of Seller (and not for the benefit of any other party, including, without limitation, the Underlying Lessee), agrees to pay and perform, when due, all of the obligations of lessor under the Underlying Lease. Buyer hereby agrees to execute and deliver any and all documents

g:\funds\synd\docs\ibj-gm\mastr.pur

reasonably required (including, but not limited to, transferee agreements, subordination agreements, and Uniform Commercial Code financing statements) by the holder(s) of the Existing Lien to evidence and perfect their interest in the Equipment.

1.2    Purchase Price.  The purchase price for the Equipment and the Underlying Lease shall be set forth in the applicable Purchase Schedule and shall be payable in immediately available funds on the date shown on the applicable Purchase Schedule by Buyer to Seller.

1.3    Definitions.  Certain representations and warranties are qualified by the phrase "to the best of Seller's knowledge."  The phrase "to the best of Seller's knowledge" signifies that no information has come to Seller's attention that would give Seller actual knowledge or actual notice that such representations and warranties are not accurate and complete and that Seller has not undertaken any independent investigation or verification of such matters.

## Article II

## Representations and Warranties of Seller

2.1    The Equipment.  Upon Seller's execution of a Purchase Schedule, Seller represents and warrants to Buyer with respect to the Equipment identified in such Purchase Schedule that, to the best of Seller's knowledge, : (i) the Equipment, is in good working order, condition and appearance; (ii) the Equipment is located at the place designated in the Purchase Schedule; and (iii) each significant item of Equipment was new when it became subject to the Underlying Lease pursuant to which such item of Equipment is currently leased to the Underlying Lessee, and such Underlying Lease for such item of Equipment is the initial lease pursuant to which such item of Equipment has been leased.  EXCEPT AS SPECIFICALLY SET FORTH HEREIN, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER CONCERNING THE EQUIPMENT, INCLUDING, WITHOUT LIMITATION, THE SELECTION, QUALITY, OR CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS SUITABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, THE OPERATION OR PERFORMANCE OF THE EQUIPMENT OR THE MAINTENANCE THEREOF OR PATENT INFRINGEMENT OR THE LIKE.  Seller shall not, in any manner or under any circumstances, be liable to the Buyer or its successors in interest for any indirect, special or consequential damages caused, directly or indirectly, by any of the Equipment, any use of the Equipment, or any inadequacy of the Equipment for any purpose, or any deficiency or defect in the Equipment.

2.2    The Underlying Lease.  Upon Seller's execution of a Purchase Schedule, Seller represents and warrants to Buyer with respect to the Underlying Lease identified in such Purchase Schedule that (i) the Underlying Lease has been duly executed and delivered by Seller, is in full force and effect, constitute the valid and binding obligation of Seller, as lessor, and, to the best of Seller's knowledge, of the Underlying Lessee, as lessee, thereunder, and is enforceable against Seller and, to the best of Seller's knowledge, against the Underlying Lessee in accordance with its respective terms (subject to laws of general application affecting creditor's rights); (ii) the Underlying Lessee under the Underlying Lease has not, to date, prepaid any rent; (iii) there exists no default in payment of any amount due under the Underlying Lease; (iv) no material defaults or conditions which, with the passage of time or giving of notice or both, would constitute material defaults, exist under the Underlying Lease by Seller, or to the best of Seller's knowledge, by the Underlying Lessee; (v) Seller is the lessor under the Underlying Lease free and clear of any and all liens, claims, and encumbrances, other than the rights of holder(s) of the Existing Lien and the Prior

g:\funds\synd\docs\lbj-gm\mastr.pur

2

Tax Liens, and the rights of the Underlying Lessee under the Underlying Lease; (vi) Seller has furnished or will furnish to Buyer true, correct and complete copies of all material documents related to Seller's purchase of the Equipment and the Underlying Lease; and (vii) the rental schedules provided to Buyer for the Underlying Lease accurately reflect the amounts due under the Underlying Lease from the Underlying Lessee.

2.3 **Title**. Seller represents and warrants to Buyer that as of the date of the Bill of Sale, Seller owns, and by the Bill of Sale will convey to Buyer, good and marketable title to the Equipment identified in the Bill of Sale free and clear of any and all leases, liens, claims and encumbrances, other than the rights of the Underlying Lessee under the Underlying Lease and the rights of the holder(s) of the Existing Lien and the Prior Tax Liens.

2.4 **Other Agreements**. Upon Seller's execution of a Purchase Schedule, Seller represents and warrants to Buyer that with respect to the Equipment identified in such Purchase Schedule that other than as expressly and specifically set forth in the Underlying Lease and the Purchase Schedule, there are no agreements relating to or affecting the Equipment.

2.5 **The Bank Lien**. Upon Seller's execution of a Purchase Schedule, if the Equipment identified in such Purchase Schedule is subject to a bank lien (the "Bank Lien") as defined in such Purchase Schedule, Seller represents and warrants that: (i) the indebtedness which is the subject of the Bank Lien does not exceed the amount designated in such Purchase Schedule as the Loan ("Loan"); (ii) the payments of principal of, and interest on, the Loan are less than or equal to the payments due to be made under the Underlying Lease shown on such Purchase Schedule, assuming no default in payment by the Underlying Lessee; (iii) the rate of interest payable on the Loan does not exceed the percentage designated in such Purchase Schedule as the "Interest Rate"; (iv) no default, or condition which, with or without the passage of time, the giving of notice or both, would constitute a default, exists under the security agreement which is the subject of the Bank Lien; and (v) Seller has given notice to Underlying Lessee that rents due under the Underlying Lease are payable directly to the Lender (as defined in such Purchase Schedule).

2.6 **Seller**. Seller represents and warrants that: (i) Seller is a corporation duly and validly organized and existing in good standing under the laws of the State of Colorado, and is duly qualified to own its properties and carry on its business in each jurisdiction where the failure to be so qualified would be materially adverse to Seller or its business; (ii) Seller has the power and authority to execute and deliver this Agreement and the Underlying Lease, and to execute and deliver or accept, as the case may be, the Bill of Sale, and all other agreements, instruments, and documents executed and delivered or accepted in connection herewith or therewith (collectively, the "Documents"), sell the Equipment and assign the Underlying Lease and to pay and perform, when due, all of its obligations under this Agreement and the Documents; (iii) there is no action, suit or proceeding pending against Seller before or by any court, administrative agency or other governmental authority which might in any way impair the execution, delivery or performance by Seller of any Document; (iv) the execution and delivery or acceptance, as the case may be, of this Agreement and the other Documents by Seller, and the payments and performance by Seller of its obligations under this Agreement and the Documents: (a) have been duly authorized by all necessary action(s) of Seller; (b) do not violate or conflict with, or, with or without the giving of notice, the passage of time or both, constitute a default under, any provision of Seller's instruments of organization; and( c) do not violate or conflict with any law, any order, writ, injunction, decree, rule or regulation of any court, administrative agency or other governmental authority, or any agreement or other document or instrument to which Seller is a party, or by which Seller or the Equipment is, or may be, bound including, without limitation, the Underlying Leases; (v) Seller's chief executive

g:\funds\synd\docs\bj-gm\mastr.pur

3

office is at the address set forth in the first paragraph on the first page of this Agreement; and (vi)
Seller will not terminate, change, waive, or amend the Master Paying Agency Agreement dated as
of March 1, 1995 between Capital Associates International, Inc, and First Security Bank,
N.A.(formerly known as First Security Bank of Utah, N.A.), or remove the paying agent specified
therein without Buyer's prior written consent.

### Article III

### Representations and Warranties of Buyer

Buyer represents and warrants to Seller as follows:

3.1    Organization and Existence.  It is a corporation duly and validly organized and
existing under the laws of the State of Iowa and has all power and authority to own its properties and
carry on its business in the places where such properties are located and such business is
conducted.

3.2    Power and Authority.  It has the power and authority to execute and deliver
this Agreement and to execute and deliver or accept, as the case may be, the other Documents, and
to carry out the transactions contemplated under this Agreement and the Documents.

3.3    Authorization.  The execution and delivery or acceptance, as the case may
be, of this Agreement and the Documents by Buyer and the performance by Buyer, of its obligations
hereunder and thereunder:

(i)  have been duly authorized by all necessary action(s) of Buyer;

(ii)  do not violate or conflict with, or with or without the giving of notice, the
passage of time or both, constitute a default under any provisions of Buyer's instruments or
organization; and

(iii)  do not violate or conflict with any law, order, writ, injunction, decree, rule,
or regulation of any court, administrative agency or any other governmental authority or any
agreement or other document or instrument to which it is a party, or by which it is bound.

3.4    Address.  Buyer's principal place of business is at the address set forth in the
first paragraph on the first page of this Agreement.

3.5    Binding Obligation.  The Documents constitute the valid and binding
obligations of Buyer enforceable in accordance with their respective terms, subject, however, to laws
of general application affecting creditor's rights.

3.6    Necessary Consents.  Buyer is not subject to any restriction or agreement
which, with or without the giving of notice, the passage of time, or both, prohibits or would be
violated by, the execution, delivery and consummation of the Documents and transactions therein
referred to other than such restrictions and agreements as to which it has obtained the necessary
consents for such execution, delivery and consummation by Buyer.

g:\funds\synd\docs\ibj-gm\mastr.pur

4

**3.7** <u>Non-Disturbance by Buyer</u>. For Seller's benefit and for the express benefit of the Underlying Lessee under the Underlying Lease, so long as any Underlying Lessee shall not be in default of any of the provisions of its Underlying Lease, Buyer shall not take any action to interfere with such Underlying Lessee's quiet and peaceful possession of the Equipment and such Underlying Lessee's right to have full and uninterrupted use and enjoyment of the Equipment for its intended purpose pursuant to its Underlying Lease.

**3.8** <u>Tax Benefits</u>. Buyer acknowledges that it has received, read, understands and is familiar with the Documents and, except as set forth in the Documents, no representations or warranties have been made to Buyer or to its tax, financial or legal advisors, by Seller or by any person acting on behalf of Seller, with respect to the Equipment, the deductibility of any item for tax purposes, and/or the economic, tax, or any other aspects or consequences of the transactions contemplated in the Documents. Buyer has been represented by legal and tax counsel and others, each of whom has been personally selected by Buyer, as Buyer has found necessary to consult concerning the consummation of the transactions contemplated in the Documents, and such representation has included an examination of the Documents and an analysis of all tax, financial and legal aspects. Buyer, its counsel, and its financial and tax advisors, have sufficient knowledge and experience in legal, financial and tax matters to evaluate the Documents, and the risks of the transactions contemplated therein, in particular that the Existing Lien may not be paid or satisfied in full, thereby resulting in a foreclosure of the Existing Lien by the holder(s) thereof, and to make informed decisions with respect thereto. With respect to the tax aspects of the transactions contemplated in the Documents, Buyer is relying solely upon the advice of its own tax advisors, and upon its knowledge with respect thereto.

**3.9** <u>Evaluation of Transactions.</u> Buyer hereby acknowledges that in evaluating and undertaking this transaction and the transactions contemplated in the Documents, it has sought, obtained and relied exclusively upon such accounting, actuarial, tax and legal advice from its own or other independent sources as it has deemed necessary, and further acknowledges that neither Seller nor any of Seller's parent, subsidiaries, affiliates, personnel or other agents or representatives have represented or warranted the legal, tax, economic, accounting or other consequences of such transactions.

<u>Article IV</u>

<u>Covenants</u>

**4.1** <u>The Bank Lien</u>.

(i) In the event the Equipment is subject to a Bank Lien, Buyer agrees to apply, or cause to be applied, all rent and other proceeds it derives from each item of Equipment with respect to the period commencing on the date hereof and through the term of the Underlying Lease for such item of Equipment (other than proceeds of sale of such item and the amounts, whether or not denominated as rent, representing reimbursement or indemnity payments) ("Applicable Proceeds"), to the extent necessary to pay all principal of, interest on, and other sums due to the Lender identified on the Purchase Schedule on account of the Loan identified on the Purchase Schedule, when due.

(ii) Seller agrees, for the benefit of Buyer and its successors and assigns: (a) to perform, when due, all of its other obligations and duties with respect to the Bank Lien; and (b) not to transfer, modify or amend, or cause to be transferred, modified or amended, the Bank Lien.

5

g:\funds\synd\docs\lbj-gm\mastr.pur

Any such purported transfer, modification or amendment of the Bank Lien undertaken without Buyer's consent shall be null and void.


# Article V

## Indemnity

**5.1    Indemnification by Seller.**  Seller agrees to indemnify Buyer and its successors and assigns, including without limitation, and each party to whom Buyer may sell the Equipment, and such parties' successors and assigns, and to protect, defend and hold them harmless, from and against any and all loss, cost, damage, injury or expense, including, without limitation, reasonable attorneys' fees and other legal expenses, which Buyer may incur for or by any reason of:

(i)  the untruthfulness of any of the warranties and representations of Seller contained in this Agreement, the Underlying Leases or in any of the other Documents; or

(ii)  a breach by Seller of any of the covenants and agreements of Seller contained in this Agreement or in any of the other Documents.

**5.2    Seller's Right to Participate.**  If any claim for indemnification under Section 5.1 arises on account of a claim or action made or instituted by a third person against Buyer, Buyer shall notify Seller promptly after receipt of notice by Buyer that such claim was made or that such action was commenced.  Seller shall defend any such claim or action at its expense by appointing counsel of its own choosing reasonably acceptable to Buyer.  If Seller participates in the defense of such claim or action, the same shall not be settled without its prior written consent (which consent shall not be unreasonably withheld or delayed), unless Buyer waives its right to indemnification.

**5.3    Indemnification by Buyer.**  Buyer agrees to indemnify Seller and to protect, defend and hold it harmless, from and against any and all loss, cost, damage, injury or expense, including, without limitation, reasonable attorneys' fees and other legal expenses, which Seller might incur for, or by reason of:

(i)  the untruthfulness of any of Buyer's warranties and representations contained in this Agreement or in the Documents; or

(ii)  its breach of any of its covenants and agreements contained in this Agreement or the Documents.

**5.4    Buyer's Right to Participate.**  If any claim for indemnification under Section 5.3 arises on account of a claim or action made or instituted by a third person against Seller, Seller shall notify Buyer or any other indemnified party promptly after receipt of notice by Seller that such claim was made or that such action was commenced.   Buyer shall defend any such claim or action at its own expense by appointing counsel of its own choosing reasonably acceptable to Seller.  If Buyer participates in the defense of such claim or action, the same shall not be settled without its prior written consent (which consent shall not be unreasonably withheld or delayed), unless Seller waives

its right to indemnification.


## Article VI

### Miscellaneous

6.1     Survival.  The representations, warranties and agreements made herein shall survive the execution and delivery of this Agreement and the consummation of the transactions described herein.

6.2     Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

6.3     Notices.  Any notice, request or other communication to either party by the other hereunder shall be given in writing and shall be deemed given on the date the same is mailed by certified mail, return receipt requested, postage prepaid and addressed to the party for which it is intended at the address set forth in this Agreement together with a copy thereof to one additional addressee as may be requested by notice hereunder.  The place to which notices or copies of notices are to be given to either party may be changed from time to time by such party by written notice to the other party.

6.4     GOVERNING LAW, JURISDICTION AND VENUE.  THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED UNDER THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED THEREIN, WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF.

6.5     Captions.  Captions used herein are inserted for reference purposes only and shall not affect the interpretation or construction of this Agreement.

6.6     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

6.7     Entire Agreement.  This Agreement, together with the other Documents, supersedes all previous arrangements and agreements, whether written or oral, and comprises the entire agreement, between the parties hereto in respect of the subject matter hereof.

6.8     Amendments.  This Agreement may be amended or varied only by a writing, of even or subsequent date, executed by the parties hereto.

6.9     Course of Dealing.  No course of dealing between the parties hereto, nor any delay in exercising any rights or remedies under this Agreement or otherwise shall operate as a waiver of any of the rights and remedies of Buyer or Seller.


6.10    Severability.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

g:\funds\synd\docs\lbj-gm\mastr.pur

7

6.11    <u>Further Assurances</u>.  Seller and Buyer each agrees to execute and deliver promptly to the other all such further instruments and documents as may reasonably be requested by the other in order to carry out fully the intent, and to accomplish the purposes, of the transactions referred to herein.

6.12    <u>Reporting</u>.  Except as otherwise required by law, for income tax purposes, Seller will account for the transactions herein referred to as a sale and will take no position on its tax return or any other document relating thereto, inconsistent therewith.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

CAPITAL ASSOCIATES INTERNATIONAL, INC.

By:    _____

Title:    _____
LOREN J. HILL
VICE PRESIDENT

IBJS COMMERCIAL CORPORATION

By:    _____

Title:    Vice President

# EXHIBIT 16

ORIGINAL

692919-001

## ASSIGNMENT OF LEASE AND PURCHASE AGREEMENT

First American Capital Management Group, Inc., ("First American") and CAPITAL ASSOCIATES INTERNATIONAL, INC. (the "Owner") enter into the Assignment of Lease and Purchase Agreement (the "Assignment"), effective as of August 10, 1999, (the "Effective Date"). First American hereby sells, assigns, and transfers to the Owner all of its right, title and interest in (a) the Master Lease Agreement and attached schedule(s) described below (referred to herein collectively as the "Lease"),   (b) the equipment covered by the Lease (the "Equipment"), (c) all collateral for the Lease, including guarantees and recourse rights, and (d) all rights under subordination agreements with third party owners, secured parties and mortgages with the respect to real estate on which the Equipment may be installed or to which it may be affixed, (all of the foregoing are collectively referred to as the "Lease Documents").

Owner and First American are parties to that certain Equipment Lease Marketing and Sale Agreement (the "Marketing Agreement") dated August 16, 1994.  Owner and First American agree that to the extent there is any conflict between the representations and warranties under the Marketing Agreement with respect to the Lease and the representations and warranties made hereunder the latter will control.

Purchased term and price are described on Exhibit A attached hereto.

The Lease covered by this Assignment is described as follows:  Master Lease Agreement dated June 1, 1995 between General Motors Corporation, as Lessee and First American Capital Management Group, Inc. as Lessor, secured by specific equipment described in Equipment Schedule No. 1336, dated August 10, 1999.

1. First American hereby represents as follows:

   a)  The entire agreement between First American and the Lessee is embodied solely in the document or documents referred to above as the Lease Documents, and First American has made no oral agreements with Lessee not contained in the Lease Documents.

   b)  To the best of its knowledge the Lease is genuine, legally valid, and enforceable against the parties thereto and is in full force and effect.

   c)  First American has good and marketable title to the Lease free and clear of all liens, claims, encumbrances, security interests, and rights of parties claiming through First American other than the rights of Lessee thereunder.

   d)  The unpaid balance of the Lease is $65,293.20 (plus interim rent and taxes) as of the date of this Assignment.  There have been no prepayments of rent and there is no security deposit under the Lease.

   e)  Except as otherwise disclosed in the Lease Documents, the Equipment has been delivered and accepted as satisfactory by the Lessee under the Lease or will be as of the Effective Date hereof.

   f)  To the best of its knowledge no event of default is in existence under the Lease as of the Effective Date hereof, and to the best of its knowledge, Lessee has not asserted and has no basis to assert any defense or set off to its obligations under the Lease Agreement All sales, use, property, or other taxes, licenses, tolls, inspection and/or other fees, bonds, permits or certificates, including any penalties and interest with respect thereto, which were required to be paid or obtained in connection with the original acquisition of the Equipment by First American, subsequent sale of

Equipment and Assignment of the Lease to Owner or the lease of the Equipment to the Lessee have been, paid in full, or provision for the payment thereof by the Lessee is provided for in the Lease.

h)    First American has full power and authority to enter into this Agreement, the Bill of Sale and all other instruments and documents executed and delivered in connection with the Lease and with the sale and assignment of the Equipment and Lease to Owner (collectively "Documents") all Documents constitute First American's valid obligations, binding and enforceable against First American in accordance with their respective terms, subject to bankruptcy, insolvency, and similar laws affecting the rights of creditors generally.

l)    First American has or will furnish to Owner a true, correct and complete copy of each and every document, instrument and agreement delivered to or by First American in connection with the purchase of the Equipment by First American and/or in connection with the leasing of the Equipment to the Lessee under the Lease.

2.    First American will indemnify, defend and hold Owner, its successors and assigns, harmless from any and all actual out-of-pocket loss, costs, setoffs, expenses, damages and claims against Owner its successors and assigns resulting from the material breach of First American's warranties, representations or obligations set forth in any of the Documents. In the event one or more of the representations First American has made herein is materially untrue and results in a loss covered by the above indemnity, First American will repurchase the Lease upon request by the Owner for a purchase price equal to the Owner's net unrecovered investment in the Lease.

3.    First American transfers and assigns to Owner all representations and warranties of the manufacturer(s) and/or vendor(s) of the Equipment that First American has so received for each item of Equipment. If said representations and warranties shall not be assignable and not enforceable by the Lessee, then First American shall use its best efforts to enforce or arrange for the enforcement for Owner's benefit, at Owner's expense and prior approval, of all warranties and representations of the manufacturer(s) and or vendor(s) of each item of the Equipment to the extent enforceable. Owner may, upon its election, enforce such warranties for its own benefit.

4.    Owner assumed and agrees to observe and perform all obligations of First American as Lessor under the Lease with respect to the Equipment from and after the date hereof. Owner agrees to indemnify and hold First American harmless from and against any and all loss, cost, damage, injury or expense, including reasonable attorneys' fees, arising from any claim by Lessee against First American for any act or failure to act on the part of Owner with respect to such obligations as Owner has assumed pursuant to this paragraph; provided, however, that Owner shall not indemnify First American, nor shall Owner be liable in any other manner, for any act or failure to act on the part of First American during the period prior to the date hereof.

5.    Any notice, request or other communication to either party by the other hereunder shall be given in writing and shall be deemed given on the earlier of the date the same is (I) personally delivered, or (ii) mailed by certified mail, return receipt requested, postage prepaid and addressed to the party for which it is

ORIGINAL

intended at the address set forth below together with a copy to one additional addressee, if previously designated by the party to receive the notice hereunder. The place to which notices or copies of notices are to be given to either party may be changed from time to time by such party by written notice to the other party.

6.   The parties hereto understand and acknowledge that Owner may further assign and transfer its right, title and/or interest in the Lease and/or Equipment.

7.   This Agreement may be amended or varied only by a document, in writing, of even or subsequent date hereof, executed by Owner and First American.

8.   Each party hereto shall execute and deliver all such further instruments and documents as may reasonably be requested by the other party in order to fully carry out the intent and accomplish the purposes of the Documents and the transactions referred to therein, including, without limitation, any instruments or documents reasonably required by the Lessee.

9.   This Agreement may be executed in one or more counterparts each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

10.  The invalidity or unenforceability of any provision of this agreement shall not affect the validity or enforceability of any other provision.

11.  THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT LAWS THEREOF.

12.  This Agreement shall be binding upon our successors and assigns and inure to the benefit of the Owner and its successors and assigns.

Dated: August 10 , 1999

FIRST AMERICAN CAPITAL
MANAGEMENT GROUP, INC.

By: _____
     Ocel, Heimer & Associates, Ltd for

Title: ____First American Capital Management Group. Inc.__

Address: 1644 Rand Tower
         527 Marquette Ave. S.
         Minneapolis, MN 55402-1301

CAPITAL ASSOCIATES  INTERNATIONAL, INC.

By: _____
     Joseph F. Rukofeld

Title: _____
       Vice President

Address:  7175 W. Jefferson Avenue, Suite 4000
          Lakewood, CO 80235

6

## EXHIBIT A

ORIGINAL LEASE COMMENCEMENT: September 1, 1999

RENT: $1,088.22 per month

FIRM TERM: 60 Months                    PURCHASED TERM: 60 Months

EFFECTIVE DATE OF PURCHASE AND ASSIGNMENT OF LEASE: August 10, 1999

PURCHASE PRICE: $67,551.37

Cash in the amount of $67,299.00 due and payable to Vendor and cash in the amount of $252.37 due and payable to Seller.

# EXHIBIT 17

**RENEWAL NO. 1**
. For
**Equipment Schedule No. 1093**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

# ORIGINAL

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1093 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.  Equipment:                          Equipment subject to Equipment Schedule No. 1093, as further described on the Attached Annex A (the "Renewal Equipment")

B.  Financial Terms

  1.  Capitalized Lessor's Cost:        $38,170.00

  2.  Equipment Location:               General Motors Corporation
                                        Delphi Chassis Systems
                                        Dock 101/3100 Needmore Rd.
                                        Dayton, OH 45414
                                        Montgomery County

  3.  Renewal Term Lease Rate Factor/Dollars:   1.294% / $493.92

  4.  Renewal Term (Number of Months):  12

  5.  Renewal Term Commencement Date:   June 1, 2004

  6.  Renewal Term Termination Date:    The date the Lessee returns the items of Renewal Equipment to Lessor in the condition required by the Lease upon not less than 90 days prior written notice, but in no event earlier than May 31, 2005.

C.  Term and Rent

  1.  Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

| | |
|---|---|
| **IBJ Whitehall Business Credit Corporation, as Assignee of First American Capital Management Group, Inc. ("Lessor")** | **Delphi Corporation as Assignee of General Motors Corporation ("Lessee")** |
| By: _____ | By: _____ |
| Name: _Hirofumi Suyama_ | Name:    John W. Jarrett |
| Title: _President_ | Title:    Purchasing Manager |
| | Federal I.D. Number: 38-0572515 |

*Note: this is a Delphi asset

**ANNEX A**
**To Renewal No. 1**
**For**
**Equipment Schedule No. 1093**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

# ORIGINAL

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**Equipment Location:**
General Motors Corporation
Delphi Chassis Systems
Dock 101/3100 Needmore Rd.
Dayton, OH 45414
Montgomery County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| DC | C098V04944V | E80XL2 | 1 | $38,170.00 | $38,170.00 |

- See Original Schedule 1093 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**              **$38,170.00**

**Initials:**

_[signature]_
**Lessor**

_[signature]_
**Lessee**

**RENEWAL NO. 2**
For
**Equipment Schedule No. 1093**
**To Master Lease Agreement dated as of May 1, 1995**
Between
**General Motors Corporation ("Lessee")**
And
**IBJ Whitehall Business Credit Corporation, as Assignee**
Of
**First American Capital Management Group, Inc. ("Lessor")**

# ORIGINAL

**★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★**

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1093 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.  Equipment:                               Equipment subject to Equipment Schedule No. 1093, as further described on the Attached Annex A (the "Renewal Equipment")

B.  Financial Terms

    1.  Capitalized Lessor's Cost:         $30,165.00

    2.  Equipment Location:             General Motors Corporation
                             Delphi Saginaw Steering Systems
                             3900 Holland Rd.
                             Saginaw, MI  48601
                             Saginaw County

    3.  Renewal Term Lease Rate Factor/Dollars:     1.132%  $341.47

    4.  Renewal Term (Number of Months):          24

    5.  Renewal Term Commencement Date:          June 1, 2004

    6.  Renewal Term Termination Date:          The date the Lessee returns the items of Renewal Equipment to Lessor in the condition required by the Lease upon not less than 90 days prior written notice, but in no event earlier than May 31, 2006.

C.  Term and Rent

    1.  Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

| | |
|---|---|
| **IBJ Whitehall Business Credit Corporation, as Assignee of First American Capital Management Group, Inc.** ("Lessor") | **Delphi Corporation, as Assignee of General Motors Corporation** ("Lessee") |
| By: _(signature)_ | By: _(signature)_ |
| Name: _STEVEN M. ROBBINS_ | Name:    John W. Jarrett |
| Title: _VICE PRESIDENT_ | Title:    Purchasing Manager |
| | Federal I.D. Number: 38-0572515 |

**ANNEX A**
**To Renewal No. 2**
**For**
**Equipment Schedule No. 1093**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

**Equipment Location:**
General Motors Corporation
Delphi Saginaw Steering Systems
3900 Holland Rd.
Saginaw, MI 48601
Saginaw County

Hyster

|    | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|----|---------------|-------------|-----|---------------|------------|
| S2 | C098V04861V   | E80XL2      | 1   | $30,165.00    | $30,165.00 |

- See Original Schedule 1093 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**          **$30,165.00**

**Initials:**

Lessor

Lessee

5662
1094 R2

**RENEWAL**

**For**
**Equipment Schedule No. 1094**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1094 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.   Equipment:                                    Equipment subject to Equipment Schedule No. 1094, as further described on the
                                                   Attached Annex A (the "Renewal Equipment")

B.   Financial Terms

   1.   Capitalized Lessor's Cost:           $30,530.00

   2.   Equipment Location:                  General Motors Corporation
                                                   Delphi Chassis Systems
                                                   Dock 101/3100 Needmore Rd.
                                                   Dayton, OH 45414
                                                   Montgomery County

   3.   Renewal Term Lease Rate Factor/Dollars:    1.294%  /  $395.06

   4.   Renewal Term (Number of Months):     12

   5.   Renewal Term Commencement Date:      September 1, 2004

   6.   Renewal Term Termination Date:       The date the Lessee returns the items of Renewal Equipment to
                                                   Lessor in the condition required by the Lease upon not less
                                                   than 90 days prior written notice, but in no event earlier than
                                                   August 31, 2005.

C.   Term and Rent

   1.   Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect.  This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of**           **Delphi Corporation as Assignee of**
**First American Capital Management Group, Inc.**                        **General Motors Corporation**
**("Lessor")**                                                          **("Lessee")**

**By:**  _____                                        **By:**  _____

**Name:**  _Hinofumi Siyano_                                            **Name:**   John W. Jarrett

**Title:**  _President_                                                  **Title:**   Purchasing Manager

                                                                        **Federal I.D. Number: 38-0572515**

                                                                        * this is a Delphi asset

ANNEX B
To Renewal No. 2
For
Equipment Schedule No. 1094
To Master Lease Agreement dated as of May 1, 1995
Between
**General Motors Corporation ("Lessee")**
And
**IBJ Whitehall Business Credit Corporation, as Assignee**
Of
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Equipment Location:**
General Motors Corporation
Delphi Chassis Systems
Dock 101/3100 Needmore Rd.
Dayton, OH  45414
Montgomery County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| DC | D004D06443V | S80XL | 1 | $30,530.00 | $30,530.00 |

- See Original Schedule 1094 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**                    $30,530.00

**Initials:**

_(signature)_
**Lessor**

_(signature)_
**Lessee**

*824-022*

### RENEWAL NO. 1
For
**Equipment Schedule No. 1137**
**To Master Lease Agreement dated as of May 1, 1995**
Between
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
Of
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1137 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.  Equipment:                             Equipment subject to Equipment Schedule No. 1137, as further described on the
                                           Attached Annex A (the "Renewal Equipment")

B.  Financial Terms

    1.  Capitalized Lessor's Cost:         $113,664.00

    2.  Equipment Location:                Delphi Corporation
                                           Delphi Packard Electric Systems
                                           Receiving Plant Dock 13
                                           1265 North River Road
                                           Warren, OH 44483

    3.  Renewal Term Lease Rate Factor/Dollars:   1.0511% / $1,194.72

    4.  Renewal Term (Number of Months):   24

    5.  Renewal Term Commencement Date:    April 1, 2005

    6.  Renewal Term Termination Date:     The date the Lessee returns the items of Renewal Equipment to
                                           Lessor in the condition required by the Lease upon not less
                                           than 90 days prior written notice, but in no event earlier than
                                           March 31, 2007.

C.  Term and Rent

    1.  Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter
        (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the
        Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding
or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and
Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of**
**First American Capital Management Group, Inc.**
**("Lessor")**

By:      _____

Name:    _____

Title:   _____

**Delphi Corporation, as Assignee of**
**General Motors Corporation**
**("Lessee")**

By:      _____

Name:    John W. Jarrett

Title:   Purchasing Manager

Federal I.D. Number: 38-0572515

* this is a Delphi asset.

**ANNEX A**
**To Renewal No. 1**
**For**
**Equipment Schedule No. 1137**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

**Equipment Location:**
Delphi Corporation
Delphi Packard Electric Systems
Receiving Plant Dock 13
1265 North River Road
Warren, OH  44483

Crown

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| P1 | 1A203955 | RC3020-30 | 6 | $18,944.00 | $113,664.00 |
| | 1A203996 | | | | |
| | 1A204010 | | | | |
| | 1A204011 | | | | |
| | 1A204019 | | | | |
| | 1A204080 | | | | |

- See Original Schedule 1137 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**                    **$113,664.00**

**Initials:**

_____
**Lessor**

_____
**Lessee**

824-22
Asset # 5719

**RENEWAL NO. 1**

**For**
**Equipment Schedule No. 1180**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1180 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.    Equipment:                                    Equipment subject to Equipment Schedule No. 1180, as further described on the
                                                    Attached Annex A (the "Renewal Equipment")

B.    Financial Terms

      1.    Capitalized Lessor's Cost:              $33,480.00

      2.    Equipment Location:                     General Motors Corporation
                                                    Delphi Saginaw Steering Systems
                                                    Plant 4 Cisco 44024
                                                    3900 Holland Rd.
                                                    Saginaw, MI 48601
                                                    Saginaw County

      3.    Renewal Term Lease Rate Factor/Dollars: 1.294% / $433.23

      4.    Renewal Term (Number of Months):        12

      5.    Renewal Term Commencement Date:         November 1, 2004

      6.    Renewal Term Termination Date:          The date the Lessee returns the items of Renewal Equipment to
                                                    Lessor in the condition required by the Lease upon not less
                                                    than 90 days prior written notice, but in no event earlier than
                                                    October 31, 2005.

C.    Term and Rent

      1.    Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter
            (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the
            Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding
or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and
Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of**        **Delphi Corporation as Assignee of**
**First American Capital Management Group, Inc.**                     **General Motors Corporation**
**("Lessor")**                                                       **("Lessee")**

By: _____                                        By: _____

Name: _____                                        Name:    John W. Jarrett

Title: _____President_____                                       Title:    Purchasing Manager

                                                                     **Federal I.D. Number: 38-0572515**
                                                                     this is a Delphi asset

ANNEX A
To Renewal No. 1
For
**Equipment Schedule No. 1180**
To Master Lease Agreement dated as of May 1, 1995
**Between**
**General Motors Corporation ("Lessee")**
And
**IBJ Whitehall Business Credit Corporation, as Assignee**
Of
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Equipment Location:**
General Motors Corporation
Delphi Saginaw Steering Systems
Plant 4 Cisco 44024
3900 Holland Rd.
Saginaw, MI 48601
Saginaw County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| S2 | G005D13568V | H90XL2S | 1 | $33,480.00 | $33,480.00 |

• See Original Schedule 1180 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**                **$33,480.00**

**Initials:**

Lessor

Lessee

**RENEWAL NO. 1**
For
**Equipment Schedule No. 1185**
**To Master Lease Agreement dated as of May 1, 1995**
Between
**General Motors Corporation ("Lessee")**
And
**IBJ Whitehall Business Credit Corporation, as Assignee**
Of
**First American Capital Management Group, Inc. ("Lessor")**

*824-24*

*Asset # 5723*

**ORIGINAL**

✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱✱

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1185 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.  Equipment:                              Equipment subject to Equipment Schedule No. 1185, as further described on the Attached Annex A (the "Renewal Equipment")

B.  Financial Terms

    1.  Capitalized Lessor's Cost:           $57,395.00

    2.  Equipment Location:                  Delphi Corporation
                                         Delphi Chassis Systems
                                         2509 Hayes Avenue
                                         Sandusky, OH  44870
                                         Erie County

    3.  Renewal Term Lease Rate Factor/Dollars:   1.2128% / $696.09

    4.  Renewal Term (Number of Months):      12

    5.  Renewal Term Commencement Date:       September 1, 2005

    6.  Renewal Term Termination Date:        The date the Lessee returns the items of Renewal Equipment to Lessor in the condition required by the Lease upon not less than 90 days prior written notice, but in no event earlier than August 31, 2006.

C.  Term and Rent

    1.  Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect.  This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

| **IBJ Whitehall Business Credit Corporation, as Assignee of First American Capital Management Group, Inc. ("Lessor")** | **Delphi Corporation, as Assignee of General Motors Corporation ("Lessee")** |
|---|---|
| By: _____ | By: _____ |
| Name: _Hiro Fumi Sagano_ | Name:  John W. Jarrett |
| Title: _President_ | Title:  Purchasing Manager |
| | Federal I.D. Number: 38-0572515 |

*✱ this is a Delphi asset*

**ANNEX A**
**To Renewal No. 1**
**For**
**Equipment Schedule No. 1185**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

# ORIGINAL

**Equipment Location:**
Delphi Corporation
Delphi Chassis Systems
2509 Hayes Avenue
Sandusky, OH 44870
Erie County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| SA | B024D05850W | S135XL2 | 1 | $57,395.00 | $57,395.00 |

- See Original Schedule 1185 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**               **$57,395.00**

**Initials:**

_Lessor_

_Lessee_

834-28
834-28

**RENEWAL**
**For**
**Equipment Schedule No. 1205**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**



Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1205 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.    Equipment:                    Equipment subject to Equipment Schedule No. 1205, as further described on the
                                    Attached Annex A (the "Renewal Equipment")

B.    Financial Terms

      1.   Capitalized Lessor's Cost:        $40,945.00

      2.   Equipment Location:               General Motors Corporation
                                             Delphi Saginaw Steering Systems
                                             3900 E. Holland Rd.
                                             Saginaw, MI  48601-9494
                                             Saginaw County

      3.   Renewal Term Lease Rate Factor/Dollars:    1.132% / $463.50

      4.   Renewal Term (Number of Months):           24

      5.   Renewal Term Commencement Date:            May 1, 2004

      6.   Renewal Term Termination Date:             The date the Lessee returns the items of Renewal Equipment to
                                                      Lessor in the condition required by the Lease upon not less
                                                      than 90 days prior written notice, but in no event earlier than
                                                      April 30, 2006.

C.    Term and Rent

      1.   Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter
           (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the
           Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding
or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and
Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of**        **Delphi Corporation as Assignee of**
**First American Capital Management Group, Inc.**                    **General Motors Corporation**
**("Lessor")**                                                       **("Lessee")**

By: _____                                          By: _____

Name: _STEVEN M. ROBBINS_____                                        Name:    John W. Jarrett

Title: _VICE PRESIDENT_____                                       Title:    Purchasing Manager

                                                                     Federal I.D. Number: 38-0572515

                                                                     * this is a Delphi asset

**ANNEX A**

**To Renewal No. 1**

**For**

**Equipment Schedule No. 1205**

**To Master Lease Agreement dated as of May 1, 1995**

**Between**

**General Motors Corporation ("Lessee")**

**And**

**IBJ Whitehall Business Credit Corporation, as Assignee**

**Of**

**First American Capital Management Group, Inc. ("Lessor")**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Equipment Location:**
General Motors Corporation
Delphi Saginaw Steering Systems
3900 E. Holland Rd.
Saginaw, MI 48601-9494
Saginaw County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| JE | G005D13580V | H110XL2 | 1 | $40,945.00 | $40,945.00 |

- See Original Schedule 1205 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**              **$40,945.00**

**Initials:**

_Lessor_

_Lessee_

824.43.12
6054
6056
6057
1336 R1

**RENEWAL NO. 1**
**For**
**Equipment Schedule No. 1336**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1336 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A. Equipment: Equipment subject to Equipment Schedule No. 1336, as further described on the Attached Annex A (the "Renewal Equipment")

B. Financial Terms

    1. Capitalized Lessor's Cost: $21,991.00

    2. Equipment Location: General Motors Corporation
Delphi Harrison Thermal Systems
3600 Dryden Road
Moraine, OH 45439-1410
Montgomery County

    3. Renewal Term Lease Rate Factor/Dollars: 1.132% / $248.98

    4. Renewal Term (Number of Months): 24

    5. Renewal Term Commencement Date: September 1, 2004

    6. Renewal Term Termination Date: The date the Lessee returns the items of Renewal Equipment to Lessor in the condition required by the Lease upon not less than 90 days prior written notice, but in no event earlier than August 31, 2006.

C. Term and Rent

    1. Renewal Term Rent: Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect. This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of**
**First American Capital Management Group, Inc.**
**("Lessor")**

By: _____

Name: _Hinofumi Sugano_

Title: _president_

**Delphi Corporation as Assignee of**
**General Motors Corporation**
**("Lessee")**

By: _____

Name: John W. Jarrett

Title: Purchasing Manager

Federal I.D. Number: 38-0572515

\* this is a Delphi asset

**ANNEX A**
**To Renewal No. 1**
**For**
**Equipment Schedule No. 1336**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

************************************************************************

**Equipment Location:**
General Motors Corporation
Delphi Harrison Thermal Systems
3600 Dryden Road
Moraine, OH  45439-1410
Montgomery County

Hyster

|  | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| DY | A454N01752W | W40XTC | 1 | $13,725.00 | $13,725.00 |
|  | A218H04005W | W40XT | 2 | $ 4,133.00 | $ 8,266.00 |
|  | A218H04006W |  |  |  |  |

• See Original Schedule 1336 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**                    **$21,991.00**

**Initials:**

_Lessor_

_Lessee_

## RENEWAL NO. 1
### For
### Equipment Schedule No. 1366
### To Master Lease Agreement dated as of May 1, 1995
### Between
### General Motors Corporation ("Lessee")
### And
### IBJ Whitehall Business Credit Corporation, as Assignee
### Of
### First American Capital Management Group, Inc. ("Lessor")

**ORIGINAL**

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule No. 1366 being collectively referred to as "Lease").

The Lessee hereby agrees to extend the Basic Term for the Equipment described herein pursuant to the terms and conditions of the Lease, except as modified herein.

A.   Equipment:                          Equipment subject to Equipment Schedule No. 1366, as further described on the Attached Annex A (the "Renewal Equipment")

B.   Financial Terms

   1.   Capitalized Lessor's Cost:      $112,100.00

   2.   Equipment Location:             General Motors Corporation
                                                  Saginaw Operations
                                                  2328 East Genesee
                                                  Saginaw, MI  48601
                                                Saginaw County

   3.   Renewal Term Lease Rate Factor/Dollars:    1.2128% / $1,359.55

   4.   Renewal Term (Number of Months):    12

   5.   Renewal Term Commencement Date:    November 1, 2005

   6.   Renewal Term Termination Date:    The date the Lessee returns the items of Renewal Equipment to Lessor in the condition required by the Lease upon not less than 90 days prior written notice, but in no event earlier than October 31, 2006.

C.   Term and Rent

   1.   Renewal Term Rent:  Commencing on the Renewal Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Renewal Term, Lessee shall pay as rent ("Renewal Term Rent") the product of the Renewal Term Lease Rate Factor times the Capital Lessor's Cost of all Equipment on this Renewal.

Except as expressly modified hereby, all terms and provisions of the Lease shall remain in full force and effect.  This Renewal is not binding or effective with respect to the Lease or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Renewal to be executed by their duly authorized representatives.

**IBJ Whitehall Business Credit Corporation, as Assignee of
First American Capital Management Group, Inc.
("Lessor")**

By:   _____

Name:   _____

Title:   _____

**Delphi Corporation, as Assignee of
General Motors Corporation
("Lessee")**

By:   _____

Name:   John W. Jarrett

Title:   **Purchasing Manager**

Federal I.D. Number: 38-0572515

*Note ; this is a Delphi asset*

**ANNEX A**
**To Renewal No. 1**
**For**
**Equipment Schedule No. 1366**
**To Master Lease Agreement dated as of May 1, 1995**
**Between**
**General Motors Corporation ("Lessee")**
**And**
**IBJ Whitehall Business Credit Corporation, as Assignee**
**Of**
**First American Capital Management Group, Inc. ("Lessor")**

**ORIGINAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Equipment Location:**
General Motors Corporation
Saginaw Operations
2328 East Genesee
Saginaw, MI  48601
Saginaw County

Hyster

| | SERIAL NUMBER | DESCRIPTION | QTY | COST PER UNIT | TOTAL COST |
|---|---|---|---|---|---|
| SM | F108V16716W | E65XM2 | 5 | $22,420.00 | $112,100.00 |
| | F108V16717W | | | | |
| | F108V16718W | | | | |
| | F108V16719W | | | | |
| | F108V16739W | | | | |

- See Original Schedule 1366 Annex C for detailed description of equipment.

**TOTAL EQUIPMENT COST:**          **$112,100.00**

Initials:

_____
Lessor

Lessee

**EXHIBIT 18**

| Schedule Number | Monthly Rental Installment Amount | Payments | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1093 | $341.47 | 09/30/04 $341.47 | 12/31/05 $78.54 | 03/31/06 $341.47 | 04/30/06 $341.47 | 05/31/06 $341.47 | 06/30/06 $341.47 | 7/31/06 $341.47 | | | | | $2,127.36 |
| 1094 | $396.06 | 09/30/04 $396.06 | 06/30/06 $396.06 | 07/31/06 $396.06 | | | | | | | | | $1,185.18 |
| 1103 | $656.83 | 09/31/04 $656.83 | 10/31/05 $656.83 | 11/30/05 $656.83 | 12/31/05 $656.83 | 01/31/05 $656.83 | 02/28/06 $656.83 | 03/31/06 $656.83 | 04/30/06 $656.83 | 05/31/06 $656.83 | 6/30/06 $656.83 | 7/31/06 $656.83 | $7,225.13 |
| 1116 | $2,898.62 | 03/31/04 $2,898.62 | 10/12/05 $4,500.00 | 10/31/05 $1,263.44 | 11/30/05 $1,263.44 | 12/31/05 $1,263.44 | 01/31/06 $1,263.44 | 02/28/06 $1,263.44 | 03/31/06 $1,263.44 | 04/30/06 $1,263.44 | 05/31/06 $1,263.44 | 6/30/06 $1,263.44 / 7/31/06 $1,263.44 | $20,033.02 |
| 1137 | $1,194.72 | 04/31/05 $1,194.72 | 12/31/05 $274.79 | | | | | | | | | | $1,469.51 |
| 1180 | $433.23 | 12/31/05 $99.64 | | | | | | | | | | | $99.64 |
| 1185 | $696.09 | 09/30/05 $696.09 | 12/31/05 $160.10 | 03/31/06 $696.09 | 04/30/06 $696.09 | 05/31/06 $696.09 | 06/30/06 $696.09 | 7/31/06 $696.09 | | | | | $4,336.64 |
| 1205 | $463.50 | 09/31/04 $463.50 | 12/31/05 $106.61 | 06/30/06 $463.50 | 07/31/06 $463.50 | | | | | | | | $1,497.11 |
| 1336 | $248.94 | 12/31/05 $8,960.80 | | | | | | | | | | | $8,960.80 |
| 1386 | $1,359.55 | 10/30/05 $1,812.65 | 11/30/05 $1,359.55 | | | | | | | | | | $3,172.20 |
| 1432 | $4,286.52 | 11/30/04 $4,286.52 | 07/31/05 $4,286.52 | 08/30/05 $4,286.52 | | | | | | | | | $13,945.86 |
| 1446 | $303.59 | 11/30/04 $303.59 | 12/31/05 $69.83 | | | | | | | | | | $373.42 |
| 1524 | $456.96 | 12/31/05 $105.10 | 05/31/06 $456.96 | 06/30/06 $456.96 | 07/30/06 456.96 | | | | | | | | $1,475.98 |
| | | | | | | | | | | | | | $65,801.85 |