Marianne Goldstein Robbins
Jill Hartley
Previant, Goldberg, Uelmen,
 Gratz, Miller, & Brueggeman, s.c.
1555 N. RiverCenter Drive - Suite 202
Milwaukee, WI    53212
Telephone:    (414)   271-4500
Facsimile:    (414)   271-6308

Attorneys for IBEW Local 663 and
IAMAW District 10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**REPLY IN SUPPORT OF MOTION FOR**
**JUDGMENT PURSUANT TO RULE 7052(c) DISMISSING THE**
**IBEW AND IAM AS PARTIES TO SECTION 1113 AND 1114 PROCEEDINGS**

**INTRODUCTION**

Debtors' response ignores the procedural requirement that Debtors meet at reasonable times with Unions and negotiate concessions <u>prior</u> to commencing proceedings under sections 1113 and 1114. Debtors' response acknowledges no such bargaining sessions occurred with the International Association of Machinists and Aerospace Workers District 10 ("IAM") and the International Brotherhood of Electrical Workers Local 663 ("IBEW") until April 20, 2006, after Debtors had filed a motion to pursuant to §§ 1113 and 1114 with respect to the IAM and IBEW. As to the remaining

Page 1 of  15

procedural requirements, Debtors rely on the conclusory statements contained in prepackaged declarations, ignoring the live testimony at trial and the language of Debtors' own proposals which demonstrate that Debtors have not met the remaining procedural requirements of making a proposal, providing relevant information to and bargaining in good faith with the IAM and IBEW within the required time frame.

## COUNTERSTATEMENT OF FACTS

1. The Debtors' October meeting with members of the IAM and IBEW committees was not a bargaining session. Debtors' representative Robert Gerling ("Gerling") confirmed that "Mr. Middleton was not present. I did not think they were going to want to sit down and negotiate the terms because he wasn't there." (TR5/26/2006 AM, p. 113).

2. The October 24, 2005 proposals were replaced by proposals dated November 15, 2005. Gerling confirmed that when he met Middleton in Detroit on November 16, 2005, he indicated "that Delphi would be meeting with the larger unions first." (TR5/26/2006 AM, p. 114). The IAM spokesperson also was not available (TR5/26/2006 AM, p. 111:5-8).

3. Between November 16, 2005 and March, 2006, Gerling did not contact the IAM or IBEW to set up a negotiating meeting (TR5/26/2006 AM, p. 117: 8-13).

4. The parties first met to negotiate on April 20, 2006. That meeting was scheduled only after counsel for the IAM and IBEW e-mailed counsel for the Debtors on April 4, 2006 and confirmed in writing the Unions earlier request to Gerling about their availability to bargain (Exh. 199, Exhibits to the Declaration of Donald Griffin, Exh. D).

5. The proposals which Gerling identified in his Supplemental Declaration as B, C, and D were never the subject of bargaining because they were replaced four days later with proposals for

"pattern treatment" (Exhs. 312, 313 and 314). As Gerling explained, when Delphi removed the contingency of GM's support for its wage proposal to the IAM and IBEW, it was replaced with a document which provided "Pattern Treatment" (TR5/26/2006 AM, p. 149:9-13).

6. "Pattern Treatment" was even more indefinite than the GM contingency. It was defined as, "the IAM accepts on behalf of the IAM-represented employees...all labor contract and pension modifications that Delphi ultimately negotiates with and that are ratified by, the UAW.... If the UAW and Delphi cannot reach an agreement, the IAM agrees that Delphi may impose the same modifications on the IAM-represented employees and retirees as those Delphi imposes on the UAW-represented employees and retirees." (Exh. 312). The same treatment was proposed for the IBEW E&S and E&C units (Exhs. 313, 314).

7. Debtors cite Gerling's testimony concerning responses to information requests out of context. While he claimed that "to my knowledge" there had been responses to information requests, on further examination he conceded that he had no knowledge of whether information had actually been provided in response to the requests. Gerling stated: "To the individual questions I don't have detailed knowledge of, you know, what was the response to the individual request." (TR5/26/2006, p.102:14-19). When asked whether he had received copies of the Unions' information requests, he answered: "I am not on the distribution, I can't confirm whether or not I got a copy of it or not." (TR5/26/2006, p. 103:1-3). When shown the response to the Unions' first information request, he confirmed there was only a response to two of the questions (TR5/26/2006, p. 104:3).

8. While Kevin Butler's Declaration may include in conclusory statements that Unions received information, he conceded that he had no knowledge of what information had been provided

to the IAM and IBEW (TR5/10/2006 AM, p. 139-140). Similarly, while Darrell Kidd's Declaration states in conclusory terms that information had been provided, he also had no information on whether the IAM and IBEW had received information (TR5/26/ 2006 PM, p. 99).

9.  While Debtors cite Randall Middleton's deposition in support of a claim that it had timely provided an evaluation model, Middleton's deposition indicates that no CD with the model was provided until a month before his April 28, 2006 deposition, that is not before, but simultaneously with, filing the section 1113/1114 motion (TR35:2-6).

10. Debtors cannot avoid their obligation to provide information by citing the virtual data room. As late as April 4, 2006, after the section 1113 and 1114 petition was filed, applications for counsel and IAM Business Representatives to obtain access to the virtual data room had not received a reply (Exh. 199, Exhibits to the Declaration of Donald Griffin, Exh. D; Exh. 145).

11. Debtors' response to the present motion essentially concedes the lack of reply to the information requests to the IAM and IBEW prior to filing the present petition when it notes that according to the virtual data room index, only one entry, 240, was posted in February of 2006. The remaining entries were posted May 31, 2006 (Exh. 349, para. 63, Debtors' Response).

12. While the IAM and IBEW did prepare a counterproposal based on inadequate information, that counterproposal included the reservation of the right to amend proposals and cautioned "Unions are waiting for information which has not yet been provided." (Exh. 271). The proposal also had to be based upon assumptions to address contingencies, including that "the Company will stand by its proposals which are purportedly based on GM financial support" and "IAM and IBEW will be offered an Attrition Package substantially similar to that offered to the UAW and IUE/CWA." (Exh. 271).

13. Debtors acknowledge that in many cases information cannot be downloaded from the virtual data room. Rather, a union then would have to request the information in order to obtain a copy (TR6/2/2006, p. 64:2-20). The Debtors have presented evidence that the larger unions received information directly from the Debtors' experts. Those experts acknowledged provided no information to the IAM or the IBEW (TR6/2/2006, pp. 29, 59).

14. Debtors make the unfounded claims, without citation to the record that the IAM and IBEW were not available to meet between June 2 and June 19, 2006 (Response ¶54). Debtors make other assertions about the time frame after June 2, 2006. These assertions are not found anywhere in the record and therefore are not appropriate for consideration in relation to the present motion.

## ARGUMENT

**A.    SCOPE OF RULE 7052 MOTION.**

15. The parties agree that the scope of the present motion was limited by the Court to the procedural requirements of sections 1113 and 1114. See In re Mesaba Aviation, Inc., 341 B.R. 693 (D. Minn. 2006). They are:

(1)   Making a proposal to modify a collective bargaining agreement (or retiree benefits);

(2)   Basing that proposal on the most complete and reliable information available;

(3)   Provision of relevant information "as necessary to evaluate the proposal" 11 U.S.C. § 1113(b)(1)(B);

(4)   Meeting at reasonable times; and

(5)   "Confer[ring] in good faith in attempting to reach mutually satisfactory modification of [collective bargaining agreement or retiree benefits]." 11 U.S.C. § 1113(b)(2), 11 U.S.C. § 1114(f)(2).

Debtors failed to reference meeting at reasonable times as a separate criteria as it is listed in the Mesaba Aviation, Inc., supra, at 719.

16. By the terms of sections 1113 and 1114, procedural requirements are focused on the Debtors' obligations prior to filing a section 1113 and 1114 application. Section 1113(b)(1) establishes a requirement: "Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement," § 1114(f)(1) uses the same language "subsequent to filing a petition and prior to filing an application seeking modification of retiree benefits." (emphasis added). Procedural requirements prior to filing an application under section 1113 and 1114 include: (a) " make a proposal...based on the most complete and reliable information" (B) "provide, ...such relevant information as is necessary to evaluate the proposal."

17. Section 1113(b)(2) and Section 1114(f)(2) include the remaining procedural requirements "during the period beginning on the date of making a proposal...and ending on the date of the hearing...the [debtor] shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement." (emphasis added). Thus, these requirements also must commence before the motion is filed and should be complete before trial commences. In re Century Brass Products, 795 F.2d 265, 273 (2d Cir. 1986).

18. Case law has confirmed that all procedural requirements must be met before section 1113 and 1114 proceedings are commenced. In re Century Brass Products, 795 F.2d 265, 273 (2d Cir. 1986), see also, In re Mesaba Aviation, Inc., 341 B.R. 693, 719 Bankr. (D. Minn. 2006).

19. Debtors' focus on events after its section 1113 and 1114 petition was filed and even after trial was commenced are largely irrelevant to the procedural requirements addressed by the

IAM and IBEW Rule 7052 motion. To the extent Debtors refer to events after June 2, 2006, there is no record evidence to support the claims.

20. Contrary to Debtors' assertion, Debtors have failed to present prima facie evidence to support each of the above criteria, and have certainly failed to establish the requirements by a preponderance of the evidence. In re Regency Holding (Cayman, Inc.), 216 B.R. 371, 374 (Bankr. S.D. N.Y. 1998).

**B.    DEBTORS HAVE NOT MET WITH THE IAM AND IBEW AT REASONABLE TIMES.**

21. Debtors concede that they did not negotiate with the IAM and IBEW prior to April 20, 2006 (Response, p. 1, para. 1, p. 29, para. 91).

22. Debtors attempt to shift their obligation to meet at reasonable times to the IAM and IBEW claiming that the Unions did not seek meetings. Debtors fail to acknowledge the clear testimony of Gerling that when he met with Randy Middleton to present the November 15, 2005 proposal, he indicated that the Company intended to meet with the larger unions first:

> Q.    And at that meeting you indicated that you had– that Delphi would be meeting with the larger unions first?
>
> A.    Yeah. It is our traditional bargaining, has been, we've done the UAW, the IUE and then kind of, through the process and then got down to the smaller groups, yes.

(TR5/26/2006 AM, p. 114:18-24). It is disingenuous for Debtors to claim they were available to meet when the statements to the IAM and IBEW were to the contrary.

23. Additionally, according to its press release, Delphi had withdrawn its November 15, 2005 proposal in December (Gerling Dec. ¶23, Exh. 20; Response ¶27).

24. Debtors' reliance on In re Alabama Symphony Association, 155 B.R. 556, 576 Bankr. (N.D. Ala. 1993) is misplaced given the subsequent reversal of the decision rejecting the parties' labor agreement. Birmingham Musicians Protective Association, 211 B.R. 65 (N.D. Ala. 1996). It is also inapposite since as the debtor acknowledges in that case the union refused to meet. Similarly, Debtors' citation to In re Sierra Steel Corp., 88 B.R. 337, 341 Bankr. (D. Colo. 1988) is inapposite since in that case debtor repeatedly requested to meet with the union and the union refused to negotiate. Here, the Debtors stated they would meet with the larger unions first. This is not sufficient as to meeting requirements as to the IAM and IBEW. In re Horsehead Industries, 300 B.R. 573, 588 (Bankr. S.D. N.Y. 2003). Even in April it was the Unions which took the initiative (Exh. 199, Exh. D).

25. As Debtors tacitly acknowledge, Debtors completely failed to meet for the purpose of reaching an agreement with the IAM and IBEW prior to filing their section 1113 and 1114 motion.

**C.    THE DEBTORS DID NOT MAKE SPECIFIC PROPOSALS.**

26. Contrary to Debtors' claim, the submissions made to the IAM and IBEW did not meet the requirements of a proposal either at the time the section 1113 and 1114 motions were filed or when Debtors completed their case on June 2, 2006.

27. First, the documents dated on March 25, 2006, just days before the present petition was filed, were based upon General Motors' support, which was undetermined. The vagueness of this proposal can be dramatized by considering what would happen if the Unions were to agree to

the employer's proposal: they could not identify to their members any of the basic financial provisions of the new contract.

28. The IAM and IBEW counterproposal could only be made by assuming support which had not been established. As a result, if Delphi were to accept the Unions' counterproposal, it is unclear as to whether there would be an agreement if the Unions' assumptions were not borne out.

29. Additionally, the proposal to the IAM and IBEW as of the date the section 1113 and 1114 motions were filed was incomplete in that the Company had represented it would make an attrition proposal but had not yet made that proposal (TR5/26/2006 AM, p. 124:9-14). As a result, the Unions' counterproposal assumed a document which had not been presented (Exh. 271). Again, as of the filing date, there is no definition of what the Unions would be accepting if they agreed to the Company's incomplete proposal or whether there was an agreement if the Company accepted the Unions' counterproposal which, given the lack of definition, had to make assumptions.

30. Bottom line, the Debtors filed section 1113 and section 1114 motions against the IAM and IBEW without having made the requisite proposal.

31. Debtors rely on the claim that contingencies were removed from its March 25, 2006 proposal after the commencement of the section 1113 and 1114 motion. However, Gerling's testimony at trial established that the GM contingency was replaced by an even more indefinite position that the IAM and IBEW agree to be bound by whatever resulted from negotiation or litigation with the UAW. As Gerling explained, "because what we did was, we removed all the GM contingencies in this proposal. And then we said that we would do, unless it's otherwise noted, we would give the IAM and IBEW pattern treatment." (TR5/26/2006 AM, p. 145:9-13)

32. The Debtors' position in their May 25, 2006 proposal was that the IAM and IBEW cede their responsibility and right to negotiate with the Debtors and the UAW regardless of the outcome. "The IAM accepts on behalf of the IAM-represented employees...all labor contract and pension modifications that Delphi ultimately negotiates with and that are ratified by, the UAW.... If the UAW and Delphi cannot reach an agreement, the IAM agrees that Delphi may impose the same modifications on the IAM-represented employees and retirees as those Delphi imposes on the UAW-represented employees and retirees." (Exhs. 312, 313, 314).[1]

33. Contrary to Debtors' argument in paragraph 74 of their response, the May 25, 2006 proposals contain no provision that the result of UAW bargaining would be subject to IAM and IBEW ratification and clearly indicate the opposite given the possibility the UAW contract and therefore the IAM and IBEW contracts would be rejected.

34. Patten treatment proposed by Debtors here was entirely different than the previous pattern treatment in which the IAM and IBEW were presented with the specific terms reached by Delphi and the UAW and could negotiate as to the application of known terms to their membership. (TR5/26/2006, p. 146:18-22).[2]

---

[1] Contrary to Debtors' insinuation, without citation, there is no evidence in the record that the IAM and IBEW ever indicated support for the arrangement characterized as "pattern treatment."

[2] The pattern treatment proposed by Debtors is conceptually distinct from the most-favored nation's clause proposed by the IAM and IBEW. The party that agrees to a most-favored nation's clause is in control of its application. The party is aware when it negotiates a more favorable package with another party, that the package may also apply to its contract which includes the most-favored nation's clause. Here, by contrast, under the proposal for "pattern treatment," the IAM and IBEW would have no control over what pattern treatment would, in the end, involve. The Company's negotiator, Robert Gerling, raised no questions concerning the Unions' proposed most-favored nation's clause; the parties agreed in the case of holidays consistency should apply (TR5/26/2006 PM, p. 8:21-9:16).

35.     In this case, unlike prior instances, if the UAW decided on a larger cut for skilled trades versus production trades, the IAM and IBEW, under the Debtors' proposal would be stuck with it, although they had not known the outcome when they agreed (TR5/26/2006 AM, p. 147:13-19). And if the UAW could not reach an agreement with the employer, the IAM and IBEW would have their contract rejected regardless of their desire to reach agreement (TR5/26/2006 AM, p. 147).[3]

36.     The record evidence establishes no definite proposal was available to the IAM and IBEW at the time this proceeding was filed or at the time Debtors rested.

### D.  DEBTORS' PROPOSALS WERE NOT BASED ON THE MOST COMPLETE AND RELIABLE INFORMATION AVAILABLE AT THE TIME.

37.     Debtors cannot rely on the conclusory allegations of declarations to establish that their proposals were based on the most complete and reliable information available to Delphi. Rather, the question of whether Delphi's proposals were based on the most complete and reliable information available is a question for the Court to determine.

38.     Delphi plans to close many U.S. facilities, including that in Milwaukee (TR5/26/2006, p. 97:13-17). It follows that the most accurate and reliable information concerning the need for concessions at the Milwaukee facility would be projections based upon closure of the facility. Nonetheless, the Company's only projections concerning cost savings for Milwaukee assume the plant continues in operation (TR2/2/2006 AM, p. 62). Failure to analyze the impact of concessions based on closure has a huge impact on evaluating propriety and necessity contract concessions. The wage concession yields nothing for the time frame when a plant is closed.

---

[3] This, of course, is not to say that the IAM and IBEW would in fact be treated the same because if Delphi acted to terminate the pension agreement, Delphi takes the position that benefit guarantee with GM would not apply (TR5/26/2006 AM, p. 155:13-16).

Notably, a contract applied to employees in Irvine, California is not involved in the section 1113 and 1114 proceedings because the facility is closing (TR5/26/2006 AM, p. 97:1-6).

39.    When hiring, a company does consider a regional labor market. This much is acknowledged by the Company's proposal to the IAM and IBEW dated March 25, 2006 which states:

> Corporation may seek and the IBEW (IAM) Local Union may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:
>
> > Local competitive wages and/or benefit plans subject to corporate approval.

Yet Debtors failed to review what local conditions in the Milwaukee area were or how those conditions would impinge on its wage proposal to the IAM and IBEW (TR5/12/2006 AM, pp. 58-59).

### E.    DEBTORS HAVE NOT MADE A PRIMA FACIE CASE THAT THEY HAVE PROVIDED THE IAM AND IBEW WITH RELEVANT INFORMATION NECESSARY TO EVALUATE THEIR "PROPOSALS".

40.    Debtors cannot rely upon conclusory statements in Declarations which are contradicted by the testimony of the declarants to establish they have provided information necessary to evaluate what they designate as proposals.

41.    Debtors presented no evidence that the IAM and IBEW questions had been answered prior to filing their motion pursuant to section 1113 and 1114. The virtual data room index as characterized by Debtors shows only one response in February of 2006. All other responses were filed according to Debtors Index on May 31, 2006 (see Response para. 93).

42. Negotiator Robert Gerling on cross-examination acknowledged no specific knowledge concerning the information provided to the IAM and IBEW. He was not even on the distribution list for the requests which the IAM and IBEW made (TR5/26/2006, pp. 102-103).

43. It is well documented that the IAM and IBEW asked many substantive questions (Exh. 140; Exh. 198, Exh. F; Exh. 199, Exhs. F and G). The fact that those questions were in part developed in the course of other section 1113 and 1114 proceedings is of no relevance. Debtors have not contested the relevance of these questions but have provided no substantive evidence that they have been answered.

44. Without any citation to the record, Debtors assert that the IAM and IBEW had access to all of the information provided to the UAW, IUE, CWA, USW and IUOE. The UAW, IUE and USW received information from Debtors' experts who had no contact with the IAM or IBEW (TR5/26/2006 PM, pp. 29, 59). There is no citation to information requests the IUOE may have made.

45. Debtors cannot argue that the IAM and IBEW, unlike the larger unions, should have relied on the virtual data room, the fact is that at the commencement of the hearing the IAM representative and counsel, had not received access, although they had applied (Exh. 199, Exh. D; Exh. 145). Moreover, access to the data room, when provided, did not allow the downloading of documents (TR6/2/2006, p. 149).

**F.    DEBTORS HAVE FAILED TO MEET AND CONFER IN GOOD FAITH.**

46. Debtors completely failed to address the requirement they had to meet with the IAM and IBEW in good faith "in an attempt to reach mutually satisfactory modifications." **§** 1113(b)(2), § 1114(f)(2).

47. Good faith is generally defined as an "obligation...to participate actively in the deliberations so as to indicate a present intention to find a basis for agreement..." <u>NLRB v. Montgomery Ward & Co.</u>, 133 F.2d 676 (9th Cir. 1943). See also, <u>NLRB v. Truitt Mfg. Co.</u>, 351 U.S. 149 (1956). This definition is echoed by §§ 1113 and 1114 when meeting in good faith is "in an attempt to reach mutually satisfactory modifications." Here, Debtors have failed to present any evidence establishing that they met and conferred with the intention of reaching agreement with the IAM and IBEW.

48. Their goal for the months preceding the section 1113 and 1114 motion was to "meet with the larger unions first." (TR5/26/2006, p. 114).

49. When the IAM and IBEW were drawn into the present proceeding, notwithstanding Debtors' failure to meet for the purpose of reaching agreement, and demanded meeting times and made a counterproposal, the Debtors' ultimate response on May 25, 2006 was to withdraw its proposal and instead propose that the IAM and IBEW be bound by the result of its negotiation with the UAW, the largest union.

50. By its terms, this position was not an attempt to reach agreement with the IAM and IBEW, it was an attempt to avoid dealing with the IAM and IBEW in favor of the larger unions. Since Debtors have demonstrated no present intention to reach an agreement with the IAM and IBEW, they have not met the requirements of § 1113(b)(2) or § 1114(f)(2).

51. The Debtors' decision to first meet with the larger unions is not necessarily wrong or improper. However, it does mean that the Debtors have failed to establish a prima facie case for § 1113 and § 1114 relief as to the IAM and IBEW.

**CONCLUSION**

For the foregoing reasons and those set forth in their initial Motion pursuant to Rule 7052(c), the IBEW and IAM move this Court for a judgment on partial findings pursuant to Rule 7052(c) denying the Motion pursuant to § 1113 and § 1114 as it applies to the IBEW and IAM and dismissing them from this contested matter.

Dated:   August 25, 2006

>s/ Marianne Goldstein Robbins
>Marianne Goldstein Robbins
>Jill Hartley
>Previant, Goldberg, Uelmen,
> Gratz, Miller, & Brueggeman, s.c.
>1555 N. RiverCenter Drive - Suite 202
>P.O. Box 12993
>Milwaukee, WI   53212
>Telephone:    (414) 271-4500
>Facsimile:    (414) 271-6308
>mgr@previant.com
>
>Attorneys for IBEW Local 663 and
>IAMAW District 10

G:\DOCS\ELE663\71259\M0161926.WPD