1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DELPHI CORPORATION,

9

10           Debtor.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                    U.S. Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    August 17, 2006

19                    10:05 a.m.

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

2

1    MOTION For Relief From Stay The Offshore Group's Motion

2    Pursuant To Bankruptcy Code Sections 362(D)(1) And 553 For

3    Order Lifting The Automatic Stay To Permit The Offshore Group

4    To Exercise Right Of Setoff

5

6    EX PARTE Motion To File Under Seal Exhibits To The Official

7    Committee Of Unsecured Creditors' Motion For An Order

8    Authorizing It To Prosecute The Debtors' Claims And Defenses

9    Against General Motors Corporation And Certain Former Officers

10   Of The Debtors

11

12   APPLICATION To Employ Fee Committee's Application For An Order

13   Authorizing Retention Of Legal Cost Control As Fee And Expense

14   Analyst, Nunc Pro Tunc To June 1, 2006, Pursuant To Sections

15   327(A) And 328 Of The Bankruptcy Code

16

17   MOTION To Authorize Motion For Order Under 11 U.S.C. Section

18   365 And Fed. R. Bankr. P. 6006 Authorizing (I) Rejection Of

19   Remaining Executory Contracts Of MobileAria, Inc. And (II)

20   Assumption And Assignment Of Executory Contract With DPAC

21   Technologies Corp.

22

23

24

25

3

1    MOTION To Approve Motion For Approval Of Joint Interest

2    Agreement Between Debtors And Official Committee Of Equity

3    Security Holders And Implementation Of Protective Order With

4    Respect Thereto

5

6    MOTION To Approve / Motion Pursuant To Sections 105, 328(A) And

7    1103 Of The Bankruptcy Code And Bankruptcy Rule 2014 For Order

8    Granting The Official Committee Of Equity Security Holders

```
 9    Leave To File An Application To Retain And Employ A Financial

10    Advisor

11

12    AMENDED Motion For Relief From Stay Filed By Douglas M. Tisdale

13    On Behalf Of Nutech Plastics Engineering, Inc

14

15    MOTION For Reclamation Of Claim (For Order Directing Return Of

16    Reclaimed Equipment Or For Immediate Payment Thereof)

17

18

19

20

21

22

23

24    Transcribed By:  Esther Accardi

25
```

4

```
 1    A P P E A R A N C E S :

 2

 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

 4         Attorneys for Delphi Corporation

 5         Four Times Square

 6         New York, New York 10036

 7

 8    BY:   JOHN WM. BUTLER, JR., ESQ.

 9         KAYALYN A. MARAFIOTI, ESQ.

10         TOM MATZ, ESQ.

11

12    EDWARDS ANGELL PALMER & DODGE LLP

13         Attorneys for Speedline Technologies
```

```
14          750 Lexington Avenue

15          New York, New York 10022

16

17   BY:  SHMUEL VASSER, ESQ.

18

19   LATHAMS & WATKINS, LLP

20          Attorneys for the Official Committee of

21           Unsecured Creditors

22          885 Third Avenue

23          New York, New York 10022

24

25   BY:  MITCHELL A. SEIDER, ESQ.
```

5

```
1   U.S. DEPARTMENT OF JUSTICE

2   OFFICE OF THE UNITED STATES TRUSTEE

3          33 Whitehall Street

4          New  York, New York 10004

5

6   BY:  ALICIA M. LEONHARD, ESQ.

7

8   FRIED FRANK HARRIS SHRIVER & JACOBSON, LLP

9          Attorneys for

10          One New York Plaza

11          New York, New York 100014

12

13   BY:  BONNIE STEINGART, ESQ.

14

15   TOGUT SEGAL & SEGAL, LLP

16          Attorneys for

17          One Penn Plaza

18          New York, New York 10119
```

```
19

20   BY:   NEIL BERGER, ESQ.

21

22

23

24

25
```

6

```
 1   WHITE & CASE, LLP

 2         Attorneys for Appaloosa Management LP

 3         1155 Avenue of the Americas

 4         New York, New York 10036

 5

 6   BY:   THOMAS F. LAVRIA, ESQ.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

24

25

7

1                      P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay.  Delphi.

3              MR. BUTLER:  Your Honor, good morning.  Jack Butler

4    and Kayalyn Marafioti and Tom Matz here on behalf of Delphi

5    Corporation for its August omnibus hearing.  We have filed,

6    Your Honor, the proposed tenth omnibus hearing agenda and we'll

7    follow that order if that's acceptable to the Court.

8              THE COURT:  Okay.  Yeah, that's fine.

9              MR. BUTLER:  Your Honor, the first matter on the

10   agenda matter number 1 is the Offshore Groups lift stay motion,

11   filed at docket number 28111.  That's being handled by the

12   Togut firm.  Mr. Berger's here to report to the Court.

13             THE COURT:  Okay.

14             MR. BERGER:  Good morning, Judge.  Neil Berger, Togut

15   Segal & Segal for the debtors.  Your Honor, this matter has

16   been settled it's between Delphi and Offshore so that

17   Offshore's setoff amount has been substantially reduced under

18   paragraph 18 of the final dip order in the case.  The unsecured

19   creditors' committee has an opportunity to review that proposed

20   settlement.  We hope in the next few days to have the back up

21   package of the settlement sent to the committees' professionals

22   and our goal is to have a stipulation submitted before the

23   September omnibus hearing.  So for purposes of the agenda we

24   ask that it be adjourned.

25             THE COURT:  Okay.  That's fine.

8

1              MR. BERGER:  Thank you, Judge.

2              MR. BUTLER:  Your Honor, the next matter on the

3    agenda, agenda matter number 2 is the creditors' committee GM

4    claims and defense's motion, at docket number 4718.  The agenda

5    indicates that by agreement of the parties that this matter is

6    being adjourned to the September 14th hearing.  In fact, the

7    parties agreed last evening, with Your Honor's permission, to

8    adjourn the STN motion to the October 19th omnibus hearing.

9              THE COURT:  Okay.  That may just resolve all the

10   issues.  I know that there were some correspondence about GM's

11   access to redact a portion of the motion.  Is that making fire

12   or has that been resolved at this point?

13             MR. BUTLER:  It's hanging fire at the moment.  And

14   the debtors haven't agreed.  The only matters that have been

15   redacted, Your Honor, are the issues that were privileged that

16   were based on information the creditors' committee got under

17   the joint interest agreement.

18             THE COURT:  Okay.

19             MR. BUTLER:  And our position, if it ever becomes an

20   issue, I think has now been put off for a while.  If it ever

21   becomes an issue the debtor's position will be that that

22   privileged information should not be made available for

23   purposes of the STN hearing.

24             THE COURT:  Okay.  Well, that's fine.  If it looks

25   like that's actually going to be litigated in October don't


                                    9


1    forget that issue because -- I'm sure you wont.  It will need

2    to get resolved before then, I'm assuming.  It didn't seem to

3    be a clear cut issue to me.  Particularly given the fact of

4    other privilege and secondly of the fact that perhaps some of

5    this information came from investigation.  So perhaps the

 6    government might be involved too.  So, anyway, I just wanted to

 7    see what the status of that was.

 8           MR. BUTLER:  Well, Your Honor, with the Court's

 9    permission, our intention would be not to submit a response of

10    the chamber's letter unless this really becomes an issue.

11           THE COURT:  Right.  That's fine.  I'm not inviting

12    you to.  I just want to make sure no one forgets about it if it

13    becomes a live litigation.

14           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

15    matter number 3 on the agenda is the fee committee's legal cost

16    control application retention, this was filed at docket number

17    4117.  Of importance, I would point out to the Court that there

18    was a supplement filed by the fee committee at docket number

19    4896, that clarifies the role of legal cost control really is a

20    fee and expense analyst reporting to the fee committee and

21    carrying out the fee committee's instructions to help the fee

22    committee, as Your Honor had said at prior hearings, manage the

23    information that the fee committee's is going to take

24    responsibility for carrying out its mission.  And I think --

25    and as you can tell by the lack of objection from any party, I


                                  10


 1    think there has been some consensus reached by the parties in

 2    interest and they retained professionals on that subject.

 3           THE COURT:  Okay.  And the fee that they're charging

 4    hasn't changed.  So everyone's had notice of that and no one's

 5    objected to that?

 6           MR. BUTLER:  That's correct, Your Honor.

 7           THE COURT:  Okay.  All right.  In light of that, in

 8    my review of the supplement, I'll approve it.

 9           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

10    matter number 4 on the agenda is the MobileAria contract

11    motion.  It's filed at docket number 4721.  This simply is a

12    motion to assume three additional contracts.  An agreement for

13    software development dated April 20, 2005 involving DPAC

14    Technologies Corp.  Second, a computer consulting and

15    programming services agreement involving Mascon IT Ltd. Dated

16    September 10, 2004 and finally a consulting agreement between

17    North America Mobile Solutions LLC and the debtors, dated

18    September 1, 2005.  No objection has been filed.  Each of the

19    counter parties has consented to the assumption.  Each party

20    has also agreed to the proposed cure amounts as is set forth in

21    the form of proposed order, Your Honor.

22         THE COURT:  All right.  In light of those agreements

23    and there being no objections by anyone else, I'll approve it.

24         MR. BUTLER:  Thank you, Your Honor.  Your Honor,

25    matter number 5 on the agenda is the equity committee joint


11


1    interest agreement motion.  This is really, Your Honor, a

2    motion that has come out of not only discussions between the

3    equity committee and the debtors but guidance Your Honor gave

4    in chambers conference to determine if there was an opportunity

5    to provide, without compromising issues for the debtors, to

6    provide the maximum amount of visibility for the equity

7    committee in the General Motor's matters.  And unlike the joint

8    interest agreement motion that was entered into with the

9    creditors' committee which dealt with a broad range of

10    investigative matters, this particular joint interest agreement

11    is related to General Motor's matters and limited to that.

12    Otherwise, it follows the form and is based on the law and the

13    argument we had at the prior hearing on the creditors'

14    committee joint interest agreement motion.  No objection has

15    been filed by any party to this.  The debtors are prepared to

16    move forward promptly, perhaps as soon as tomorrow, in

17    beginning to provide additional information that would be

18    covered by this agreement after it's approved by Your Honor to

19    the equity committee.  And one additional point I'd make, Your

20    Honor, is one of the pieces of information provided, and just

21    so we're not in conflict with one of the prior ceiling orders,

22    Your Honor, is we would also then provide them, again,

23    privilege issue having been addressed through the joint

24    interest order, we would provide them, and the creditors'

25    committee has agreed to this as well, with an unrecacted copy

                                                      12

1    of the proposed complaint.

2            THE COURT:  Okay.  All right.  Again, in light of

3    this being uncontested and there being adequate notice, I'll

4    approve it.

5            MR. BUTLER:  Thank you, Your Honor.  Your Honor,

6    matter number 6 on the agenda is the equity committees'

7    financial advisor retention motion, at docket number 4791.

8    This is not, as Your Honor probably notes, a specifically a

9    request for retention of any particular financial advisor.

10   Because that action would have been prescribed by the order

11   appointing the equity committee.  But rather is a result of

12   extended discussions between the debtors, the equity committee

13   and there's been some input from the creditors' committee as

14   well.  I believe the United States Trustee has been consulted

15   on this issue as well.  And based on the scope of services and

16   the fee structure that is described here, the criteria, it is

17   the view of the parties that it would be appropriate, if Your

18   Honor's inclined to do it, to essentially amend the prior order

19   or at least to exercise the Court's discretion as provided in

20   there and grant leave for the equity committee to file

https://vip21.veritextllc.com/myfiles/93859/123404.TXT

21    retention application for a financial advisor that meets these

22    criteria.  And there is no objection that has been filed to

23    that proposed motion.

24          THE COURT:  All right.  And it says, 175 thousand.

25    Obviously, if you can get them to work for less, you'll do

13

1    that?

2          MS. STEINGART:  Yes, Your Honor.  We certainly will.

3          THE COURT:  Okay.  All right.  Well, obviously

4    there's been a lot of discussion about this among the parties

5    in interest and I view this as, basically, everyone's view.

6    That at this point in the case, subject to obviously seeing the

7    application, that it would actually be beneficial to have an

8    additional professional for the equity committee under these

9    limitations.  So I'll approve it.

10          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

11    matter number 7 on the agenda, it's listed under the contested

12    matters, is the Nutech Plastics Engineering lift stay motion,

13    filed at docket number 4436.  I think the Court's aware there

14    were a flurry of chamber's letters and competing orders that

15    hit chambers this week.  We were successful in engaging

16    Nutech's counsel in a meeting confer last evening and being

17    able to resolve all of that.  And we've submitted a proposed

18    order to the Court that we believe faithfully deals with, and

19    Nutech now agrees, deals with what Your Honor said at the prior

20    hearing, which gives them the ability to make clear that the

21    360 doesn't apply to General Motor's Corporation.  That makes

22    it clear unless Your Honor, otherwise rules to the contrary,

23    this Court would determine the Nutech issue at some point in

24    the future.  The merits of that provides that Mr. Mailey would

25    be able to be deposed and the stay would be modified to that

14

1    extent.  And then would otherwise continue this matter to the

2    September 14th hearing, as to any matters Your Honor did not

3    resolve earlier.  There is a difference of view between the

4    parties as to what Your Honor actually said at the July

5    hearing.  I'm hopeful that dispute can be resolved through

6    negotiations between now and September.  And if not, the

7    parties reserve their rights to reflect on what the Court and

8    what the July record said.

9            THE COURT:  Okay.  I already signed off on that

10   order, I saw it this morning.  As far as the hearing on the

11   14th, given that the issue with Mr. Mailey has been resolved it

12   seems to me that the only remaining issue is that, if for some

13   reason the Michigan Court doesn't accept this approach, in

14   which case I've given them the opportunity to come back and

15   tell me more about it.  So I'll see you all then unless you're

16   able to resolve that in the meantime.

17           MR. BUTLER:  Thank you, Your Honor.  Your Honor, that

18   leaves us with one final matter for this morning's hearing.

19   And that is the Speedline Technologies Inc.'s reclamation

20   motion, filed at docket number 4678.  Both the debtors and the

21   creditors' committees have filed objections.  The debtor's at

22   4893, the committee at 4887.  And Mr. Vasser is here to argue

23   on behalf of Speedline in support of the relief they're

24   requesting.

25           THE COURT:  Okay.

15

1            MR. VASSER:  Good morning, Your Honor.  Shmuel

2   Vasser, Edwards Angell Palmer & Dodge, for Speedline Technology

3   Inc., the movant.  Motion was filed and served on the master

4   service list.  Two objections, creditors' committee and

5   debtors.  Also under the case management order on Monday I sent

6   an email to the parties asking them if they intend to produce

7   any evidence of testimony other than what's their objection.

8   The answer was no. resulting in the joint exhibit.  I limit

9   myself to responding to the objection.  I assume the issues as

10  far as the movants are concerned in the moving papers are

11  fairly straight forward.  The first issue is the only disputed

12  issue as to whether we met the initial elements proclamation is

13  insolvency.  The debtor did not dispute our assertion of

14  insolvency.  Neither did the committee.  No one in the

15  committee says they were solvent.  The committee says we didn't

16  approve it.  Like any other litigated matter I'm not disputing,

17  we have the burden of proof, which means the burden of

18  persuasion.  Which means we have the burden of moving forward.

19  We move forward.  We rely on the 10K filed for the end of '05

20  showing insolvency to the extent of six billion dollars

21  certified under Solvents Oxley certification requirement.

22  Relied on the schedules filed in this bankruptcy court on the

23  plenty of perjury showing solvency to the extent of about

24  fifteen billion dollars.  Cases have held that schedules when

25  uncontroverted as sufficient evidence.  These cases are


16


1   Sullivan at 161 BR 776 and Nicole at 36 BR 566.  Both I would

2   note in a fraudulent transfer cases where you need to prove

3   obviously solvency of insolvency.  Schedules and GAP financials

4   as the committee cases itself, concede are sufficient of

5   probative evidence which of course can be adjusted.  I haven't

6   seen any proposed adjustment that would eliminate between six

7   and five billion dollars in stock holder equity or lack of

8   equity based on the evidence.  So based on the record as it

9   stands, there is no evidence, whatsoever, even attempting to

10  disprove our initial evidence that be sufficient, I submit, as

11  far as meeting the burden of moving forward.  I would also note

12  an interesting case, Continental Airline out of Delaware 125 BR

13  415, where the debtor in response to another pleading admitted

14  insolvency.  But in response to the reclamation motion denied

15  that it was insolvent.  The Court said that that admission by

16  the debtor in another unrelated proceeding within the case is

17  sufficient and seems there was nothing to buttress the debtor's

18  assertion in response to the reclamation that it was not

19  insolvent.  The movant met its burden of moving forward.

20          THE COURT:  That was based on judicial estoppel

21  principals?

22          MR. VASSER:  Yes.

23          THE COURT:  So that wouldn't -- has the debtor won

24  anything in this case asserting insolvency?

25          MR. VASSER:  The debtor filed schedules --


                                    17


1           THE COURT:  No, no.  Judicial estoppel only applies

2   if the party against whom estoppel is asserted has prevailed on

3   a contrary opinion.

4           MR. VASSER:  I just note that Continental is an

5   interesting side to this issue.

6           THE COURT:  Okay.

7           MR. VASSER:  Now, the second issue, assuming I made

8   the burden of moving forward and that wasn't controverted, the

9   second issue is the impact of secured creditors.  I submit that

10  under the facts of this particular motion, we should not really

11  address the conflicting case law and the conflicting statement

12    relied upon by the committee on one end and interestingly the

13    debtor and Speedline on the other.  We're relying on that.  The

14    reason is because the reliance on secured creditors position to

15    block, in one way or another, is the claiming seller's rights

16    is irrelevant here for three reasons.  The pre-petition agent

17    and the post-petition agent did not object to this motion.

18    They didn't come here and say it's our collateral we are

19    objecting to this release.  Had they done that they would still

20    be estopped by doing that by the reclamation order.  The final

21    reclamation order specifically allowed the debtors to either

22    provide -- return the equity essentially allowing it for pick

23    up, and I would note that that is the final order is docket 881

24    of paragraph 2(b)(d)(i) says that the debtors, may at any time,

25    make the goods available for pick up.  And at (ii) of that


18


1    particular paragraph, the debtor may satisfy the claim at any

2    time before or on confirmation.  The agents did not oppose

3    that.  Had they opposed that, they'd still be barred because

4    the DIP facility, the draft of which is the only one I've seen

5    in docket 42, I haven't seen the executed documents, doesn't

6    prohibit that.  There's a payment or return of the equipment is

7    not breach of any covenant under the DIP facility.  Nor will it

8    cause a breach under the DIP facility.  The reason is obvious,

9    the debtor is operating in the ordinary course of business.

10    The debtor is paying ordinary expenses every day.  The debtor

11    is paying professionals.  The debtor pays bonuses for

12    executives.  In the ordinary course of business payments are

13    not prohibited by the DIP facility.  So very interesting legal

14    argument about the committee's position and whether we should

15    wait until confirmation because they don't know the scope of

16    our reclamation claim, not the principal here.

17          THE COURT:  I don't understand that.  These are pre-

18    petition obligations, right?

19          MR. VASSER:  They're pre-petition obligation debt.

20    Are entitled to reclamation under the UCC.  And the bankruptcy

21    code says the only way -- the only relief available if you deny

22    the reclamation claim is an adment.

23          THE COURT:  Right.  But how does that translate into

24    an ordinary course post-petition course of business payment.

25          MR. VASSER:  Payment was due post-petition because


                                        19


1    the agreement was delivered just a few days before the

2    petition.  So under the ordinary course of business between the

3    parties, the payment for the invoices was due post-petition.

4    But I'm not saying that it was delivered post-petition.  All

5    I'm saying its an administrative expense, we have reclamation

6    right, the reclamation right is not barred by the secured

7    creditors under the facts of this case.  And therefore, I think

8    I established our rights to reclaim the goods and that right is

9    not diminished, it's not blocked, it's not prohibited by the

10   secured creditors.  Okay.  I get to how I want to get paid in a

11   second.  I can go through why I disagree also with the legal

12   position, I'll do it briefly because I think the fact that the

13   secured creditors are not objecting and agreed to the final

14   reclamation order is really the dispositive issue here.

15          THE COURT:  So what about the case law that says that

16   where the secured debt exceeds the value of the particular

17   goods sought to be reclaimed, to pay the reclaiming creditor

18   what be a preference to the detriment of the unsecured

19   creditors.

20          MR. VASSER:  Let me finish just the thought and I'll

21   get to that.  There's actually cases supporting what I'm saying

22    here at the secured creditor's lack of objection result in the

23    right to reclaim the goods not subject to.  And the main case

24    on that is Georgetown Steel, it's reported at 318 BR 340 at

25    348, it's a bankruptcy from the District of South Carolina


                                                    20


1     where it says in the case presently before the Court, the

2     secured creditor have been paid in full, or and I emphasize, or

3     otherwise appeal to have released their claim to the

4     reclamation creditors' goods through the lack of objection, or

5     replied consent, to the relief sought by the reclaiming

6     creditor.  That's exactly the situation there where the secured

7     creditor did not object to the reclamation motion.  Now the

8     case law you refer to and the committee sides.  First, none of

9     the cases are relevant here.  This is a unique case.  I haven't

10    actually haven't seen the facts of this case in the reclamation

11    cases because everything that they side to, and actually

12    everything that exists out there is inventory, goods that the

13    debtors are either purchase and sale and then commingle the

14    proceeds or goods that they're using the manufacturing process.

15    I haven't seen one case where it's one piece of manufacturing

16    equipment that the debtors actually use, again not disputed.

17    But today, in manufacturing the goods that bring post-petition

18    value to the estate.  Now if you look at all of these cases,

19    except for Primary Health, which is a very short decision,

20    can't really figure out the exact fact.  But in Pittsburgh-

21    Canfield, in Victory Markets, in ARCO, in Bailey Marks, the

22    goods were sold, the were commingled or the reclaiming seller

23    was not able to prove that the debtor had possession of the

24    goods at the time of the petition filed.  All of these cases

25    have nothing to do with the facts of this case.  Point one.

21

1    Point two, every case that they cite, including Pittsburgh-

2    Canfield, which is the main case they relied on Victory Markets

3    and ARCO essentially conclude -- yeah they made the statement

4    that they're taking by saying you know, you don't have

5    reclamation right if the -- your claim is smaller than the

6    secured creditor's claim.  However, the way they actually

7    conclude, and I quote from Pittsburgh-Canfield is as follows.

8    "We chose to follow the well reason cases which hold that the

9    reclaiming seller is entitled to an administrative claim in any

10   surplus proceeds remaining after the protective secured

11   creditor interest has been satisfied or released."  The debtors

12   briefed it.  I mean I find this position a little bit strange

13   and I'll tell you why in a second.  But that's why in my motion

14   it was really short and sweet.  But the debtor's brief is more

15   fully and that is all of the cases.  That's what ARCO said,

16   that's what Victory Market says, that's what White & Sommers,

17   by the way, the leading scholars on the UCC say about

18   reclaiming creditor's claims versus secured creditors.  Now the

19   reason I was taken by surprise by this argument is as follows.

20   Delphi had two and half billion dollar in outstanding secured

21   debt on the day they filed.  Any seller sold twenty half

22   billion dollar of goods in the ten days before the filing.  We

23   are ten months after the filing.  The reclamation order was

24   entered a few weeks after the filing.  The creditors' committee

25   constituted.  Nobody came to you and say Judge, why are we


22


1    wasting the time and money, professionals in Pfizer reviewing

2    855 reclamation claims.  Doing reports and exchanging and

3    arguing.  They're all done.  They're all done.  I mean, can the

4    debtor tell us if there's any reclamation claim that was filed

5    for over two and a half billion dollars.  It's just bizarre.

6    So the whole argument -- if the committee really believed in

7    this argument should have come here maybe after there was

8    deadline to file reclamation claims, it was months ago, and say

9    guys, stop.  We'll go to the judge and we'll tell to the judge

10   in omnibus motion no reclamations in this case.

11        THE COURT:  But that doesn't mean that you're

12   entitled to get paid now.

13        MR. VASSER:  Okay.  That's the last point I was going

14   to get to.  My entitlement to be paid now.  Here, I'm going

15   back to Continental Airlines.  The debtor is saying that we

16   have been shown prejudice.  They kind of get it backwards.

17        THE COURT:  No.  As a legal matter you're not

18   entitled to be paid now.

19        MR. VASSER:  I understand.

20        THE COURT:  Because the secured debt has neither been

21   satisfied nor released.

22        MR. VASSER:  The --

23        THE COURT:  You may have established your right, if

24   in fact, it's eventually satisfied or released to have surplus.

25   And that's why the deadline was set and the review process was

23

1    set because there's a lot of hurdles one has to get over before

2    even having that right.  But that doesn't mean you'd be paid

3    now.

4        MR. VASSER:  The reason where a debt goes back to the

5    argument that Your Honor can accept or reject.  Obviously,

6    you're the judge.  Based on Pittsburgh Steel and based on what

7    I believe is the correct interpretation of the facts in this

8    case, the secured creditors did not object.  I don't think its

9    okay for all other administrative expense claims to be paid and

10   put a reclamation creditor, whose claim the secured creditors

11   did not object, wait in line when the potential prejudice, by

12   the way, is huge.  Again, nobody disputed that right now

13   there's about 1.8 billion dollars in access collateral based on

14   the numbers that the debtors filed with this case.  The debtors

15   can wipe this out, this cushion, immediately when they need by

16   going these funds.  Now, I'm not objecting to the borrowing.  I

17   think that if they figure out that I'm estopped from objecting

18   to the DIP financing, I'm not.  Let them borrow as much as they

19   like.  All I'm saying that the factors we have now, I have

20   reclamation rights.  The secured creditors are not concerned by

21   me taking the equipment back as they indicated by the lack of

22   response to the motion and no objection to the reclamation

23   order that allowed the debtors to return equipment.  So I'm

24   standing now with my right to get the equipment back.  If I get

25   the equipment back, I'm being paid now.  Essentially, I get the


                                        24


1    value now.  If I get an administrative expense claim that's not

2    being paid now I have to wait a year, two, three, eventually

3    may get nothing.  Because while I have value now, there may not

4    be value in the end.  Now, what the Court in Continental

5    Airlines said when --

6            THE COURT:  Well, if there's no value at the end

7    there's no value for the secured creditors' either, or they're

8    undersecured.  So you wouldn't have a right at the end.

9            MR. VASSER:  But right now the secured creditors are

10   okay with their collateral.  They are not concerned as

11   evidenced by lack of their objection by the reclaiming seller

12   taking this piece of equipment back.  They are fine with their

13   collateral package.  So what the Court in Continental Airlines

14    said, now that the reclaiming seller proved its right for

15    reclamation there's a balancing test.  And the balancing test

16    is between the legal rights of the seller to gets its

17    equipment.  Actually, the Continental Airline case said that

18    prejudice to the reclaiming seller is almost irrelevant in this

19    balancing analysis.  However, the Court needs to look at the

20    debtor's need in light of the Chapter 11 reorganization course.

21    Indicating and referring to testimony, to evidence provided to

22    the bankruptcy court in Continental Airline, that the equipment

23    was absolutely necessary, that they didn't have replacement

24    equipment that was necessary to do the job and it was

25    impossible for them, under the facts of that particular case,


                                                    25


1    to obtain suitable replacement equipment, the Court said the

2    balance here justifies leaving the debtor to retain the

3    equipment.  Here, there's no evidence.  The debtor didn't say

4    that they needed it.  They didn't say they can't replace it.

5    There's nothing on the record of that.  So if you do the

6    balancing analysis based on reclaiming seller legal rights to

7    get the equipment back versus no showing by the debtors of why

8    they need to retain this equipment, then the result in my mind

9    is fairly simple, we get the equipment back.  If they don't

10   want to give us the equipment back, okay.  I'm willing to take

11   an administrative expense claim, but not a prejudicial one.

12   They can either give us the equipment or they can pay us.

13           THE COURT:  Let me go back to your waiver argument.

14   This is a pre BAP CPA case.  As the code was then written and

15   as applicable here, it says that the rights and powers of a

16   trustee, you know the debtor in possession, are subject to any

17   statutory or common law right of a seller of goods that has

18   sold goods to the debtor in the ordinary course of such

19    seller's business, to reclaim the goods.  Which puts the onus

20    in my mind, objectively, on the right given the non-bankruptcy

21    law of the reclaiming seller.  That was changed in 2005 to say

22    that subject to the prior rights of a holder of a security

23    interest in such goods, which seems to put more of the onus

24    perhaps on a secured creditor to protect its own rights, it

25    does not provide more fodder for the argument that you can't


                                        26


1     really point to a waiver here since it's at least a version

2     that's currently -- that's in effect for this case.  It doesn't

3     look to the secured creditor and perhaps the secured creditor's

4     enforcement of its rights, but rather just generally

5     abstractically to the rights of a reclaiming seller.

6              MR. VASSER:  Maybe.  But I think the issue here is

7     slightly different.  And I recognize, you know, why everybody

8     may be struggling with this argument.  But the point is really

9     that simple.  When you go to Court and you ask for relief,

10    people who have interest adverse to you need to object.

11             THE COURT:  But the question is is it just those

12    people, is it just the bank or is it all the other unsecured

13    creditors who under the constrict of the UCC would be pari

14    passu with your client.

15             MR. VASSER:  Well, most of the cases that they cited

16    in objection to my position was forget bankruptcy you get what

17    you get outside of bankruptcy.  Outside of bankruptcy there's

18    no questions that the UCC provision dealing with the priority

19    between secured creditor and the claiming creditor was designed

20    to resolve the dispute between these two parties.  They have

21    nothing to do with the unsecured creditors.  It's like saying

22    that junior lien note when it forecloses and the secured liener

23    doesn't object and doesn't come to court and sit on his right

24    and doesn't do anything the junior lien note now is pro rata

25    with the unsecured creditors.  I mean, if there's a legal


27


1    theory to that extent I have never heard of it.  So I

2    understand it in the context of a bankruptcy everybody wants to

3    get paid more, that's why we're here, I realize that.  I

4    realize that the debtor doesn't want the motion to be granted,

5    not because of 189 thousand dollars but because they have 855

6    reclamation claims to deal with.  The solution in the next case

7    is very easy, the reclamation order should be, maybe if the you

8    or your brethren will sign it and approve of it, maybe the

9    reclamation claim should carve out DIP financing.  Maybe the

10   DIP financing if it's authorized after the reclamation is

11   entered need to be dealt with it.  Maybe evidence need to be

12   presented before the Court as how important the equipment is.

13   But right now we, the secured creditors essentially did not

14   object for us taking the equipment back.  The debtor wants to

15   keep it, the debtor needs to pay for it.

16           THE COURT:  Okay.

17           MR. VASSER:  Thank you.

18           MR. BUTLER:  Your Honor, in part what we're arguing

19   about is the application of what is now a final order in this

20   case which is the amended final reclamation order.  Mr. Vasser

21   is proceeding under paragraph 10 of that order which says

22   nothing herein shall preclude the holder and allow reclamation

23   claim from seeking payment of such claim in a manner that is

24   set forth -- in a manner other than is set forth in this order.

25   And while technically Mr. Vasser's client doesn't have an


28

1    allowed reclamation claim because they filed a disagreement to

2    the statement of reclamation back in April, the debtors aren't

3    relying on that technical argument.  But I would just point out

4    to the Court that paragraph 10, which is what Mr. Vasser's

5    citing to, would have required him to agree to the statement of

6    reclamation as opposed to disagreeing so that there's not an

7    allowed reclamation claim here.  The other aspect of the order

8    I want to bring to the Court's attention, is the operation of

9    paragraph 3 of the order.  Which says that nothing in this

10   order permits the debtors, prior to the return -- or would

11   allow the debtors to return goods in respect to reclamation

12   claims or to an accept an agreement to the allowance of payment

13   of a reclamation claim without going through a procedure with

14   the creditors' committee.  And that procedure with the

15   creditors' committee is really the heart of the issue here.

16   The answer to Mr. Vasser's question as to why we went through

17   these procedures and why you try to move this process forward

18   is in every major Chapter 11 where there are reclamation

19   creditors of any size or number.  And originally the

20   reclamation claims in this case were over 300 million dollars.

21   And they're now been reconciled to something less than twenty-

22   one million dollars.  And you go through a process to try to

23   scope out what the real issue is in terms of the amount of

24   reclamation claims because there are a series of competing

25   interest.  The secured creditors don't want their collateral


29


1    eaten into.  The creditors' committee has an inherent bias

2    against having a creditors -- some creditors prefer over

3    others.  And they don't want these reclamation claims allowed

4    or paid or rather having share pari passu in the creditors'

5    committee general unsecured creditor recovery.  And the law

6    here, as both included in the debtor's brief and in the

7    creditors' committee brief, if pushed to the envelope in terms

8    of actually forcing Your Honor to make a decision on that issue

9    and from the debtor's perspective can come out potentially

10   wrong for the debtor's estate.  That is to say the debtors have

11   an interest in maintaining relationships with its suppliers and

12   trying to move the reclamation issue forward and ultimately

13   resolve it under a plan.  And, in fact, most reclamation

14   payments as a practical matter in larger cases are resolved in

15   connection with a plan.  Because as Your Honor pointed out, and

16   as our papers point out, it's then when you understand whether

17   or not there are any issues with secured credit or recovery.

18   And its then that you're able to resolve in the context of

19   framework of a plan all of the issues with unsecured creditors.

20   And unsecured creditors are generally are willing to then waive

21   some of the arguments that I think are complicated under the

22   case law.  And just as I've urged my colleagues who represent

23   the creditors' committee from not pressing their legal

24   arguments to the applicable limits today, I think the right

25   answer here is really the position we're trying to strike in

                                        30

1    our brief.  Which is this request under paragraph 10, putting

2    aside that it's not an allowed reclamation claim and assuming

3    that it would be for purposes of applying the order, it's just

4    simply premature to do that.  There's nothing in the case law,

5    there's nothing in the facts of this case, there's nothing in

6    any of the evidence that Mr. Vasser's clients presented here,

7    that would suggest that even under any balancing of harms or

8    any other balancing that there's any particular reason to pay

9    an out of the ordinary course administrative claim, which is

10    what this would be if it were allowed.  This is an

11    administrative claim.  Even if it were allowed it's subject to

12    a series of reserved offenses.  In paragraph 3(d) one of the

13    issues in the reclamation reports between the creditors'

14    committee and the company was the analysis and the give and

15    take, if you will, between the creditors' committee and the

16    debtors regarding the legal analysis of and position with

17    respect to any legal issues that relate specifically to one or

18    more reclamation claims as well as general legal issues.  And

19    that focused on, the dispute the creditors' committee had from

20    the beginning of this case, if one goes back to the time that

21    this order was entered, about whether reclamation claims could

22    ultimately be allowed.  And I would just report to the Court

23    that the process in paragraph 3 has not yet been completed.

24    That is to say, that while we have shared the reclamation

25    reports and we have provided information regarding a 100


                                    31


1    percent of the demands and our reconciled amounts of the

2    creditors' committee, the creditors' committee has still raised

3    this issue of reserved defenses of liens back in February of

4    this year.  And they have also asserted that our reports aren't

5    complete until we resolve that issue with them.  In their

6    objection when they note that they haven't received a complete

7    reclamation report that reference is really to this reserved

8    issue between the parties.  And I just, you know, from our

9    perspective, Your Honor, I'm going to rely on the arguments

10    that are in our paper.  I don't think we need to go through all

11    the case law unless Your Honor has questions about it.  But I

12    will tell you from the debtor's perspective the right answer

13    here is not to grant the creditors' committee objection that

14    there are no reclamation claims to be permitted in this Court.

https://vip21.veritextllc.com/myfiles/93859/123404.TXT

15    Nor is it to grant the relief requested by Speedline that they

16    receive an immediate payment of a claim which has not even

17    completed the process that's outlined in the final reclamation

18    order.  Because under paragraph 3 we're not empowered to take

19    that payment until we have completed this process with the

20    creditors' committee.  But the right answer is to deny this

21    motion without prejudice to Speedline bringing in the future if

22    they feel the facts and circumstances have changed that would

23    warrant them coming before the Court to seek payment.  And I

24    believe, Your Honor, at the end of the day this matter will all

25    be right resolved as part of the reorganization plan.  When

32

1    hopefully, when our plans, in fact, become reality, we will

2    succeed in repaying all of the secured creditors, and we will

3    be able to address reclamation claims in a meaningful way.  But

4    the process itself, I think and I don't -- the other point I'd

5    make, is I don't think we ought to dismiss the importance of

6    maintaining supplier relationships by having gone through a

7    process and having, in a meaningful and thoughtful way,

8    addressed and resolved substantially all the claims.  I said

9    we're down from, you know, over 300 million to under 21

10   million.  And then final pool of claims ultimately, I believe,

11   will end up being paid in connection with the plan of

12   reorganization.  But that is then and this is now and at the

13   moment, Your Honor, we would ask that you deny this motion

14   without prejudice.

15            THE COURT:  Okay.

16            MR. SEIDER:  Good morning, Your Honor.  Mitchell

17   Seider of Latham & Watkins on behalf of the official committee

18   of unsecured creditors.  Your Honor, we have briefed the issues

19   that were raised in Speedline's motion and we're happy to rest

20   on our papers.  I know from experience that Your Honor has

21   probably read them.

22          THE COURT:  Okay.

23          MR. SEIDER:  There was one argument that was raised

24   by Speedline's counsel that I'd like to address very briefly.

25   The argument was that this case should not be subject to extent

33

1   case law because the goods at issue here are equipment rather

2   than inventory.  We don't see any basis in the UCC Warrant

3   Section 546(c) for distinguishing equipment from inventory for

4   the purpose of apply the extent case law.  With respect to Mr.

5   Butler's comments Your Honor and the Court's disposition of

6   today's motion I would point out that in the prayer that was

7   contained at the end of our objection we did not ask for a

8   declaratory judgment with respect to the validity of

9   reclamation claims in this case in general.  We only asked that

10   the motion of Speedline be denied.  That is, in fact, what we

11   think is appropriate based upon the arguments that have been

12   made by counsel for Speedline and the authorities that have

13   been cited to Your Honor by the committee in its objection.

14          THE COURT:  Okay.

15          MR. SEIDER:  Thank you, Your Honor.

16          THE COURT:  All right.  I have in front me a motion

17   by Speedline which has filed a reclamation demand and asserts a

18   reclamation claim in these cases for, or related to its

19   provision of a specific piece of property to the debtors on

20   credit.  It's objected to on essentially a similar grounds on

21   by both the debtors and the official unsecured creditors'

22   committee.  The objections raise one common issue and two other

23   issues and I conclude that based on my view of the common issue

24   I do not need to get to the other issues.  The other issues

25    being whether in fact Speedline has satisfied the hurdles

34

1    specifically set forth in Section 546(c) of the bankruptcy

2    code.  Including establishing that its debtor was insolvent at

3    the relevant time.  That determination, as well as

4    determination in any of the other reserved defenses, needn't be

5    made at this time.  Given my view that because the debt that is

6    secured by the asset that serves as the basis for Speedline's

7    reclamation claim is in excess of that claim and has neither

8    been satisfied nor released.  At this time Speedline is not

9    entitled to the rights that it would have under the Court's

10    order establishing procedures for the treatment of reclamation

11    claims dated November 4, 2005.  Which provides among other

12    things for the allowance of an administrative claim for an

13    allowed reclamation claim and payment of such claim in the sole

14    discretion of the debtors or pursuant to a confirmed plan of

15    reorganization.  In either case only if and to the extent that

16    such allowed reclamation claim constituted administrative

17    expenses under applicable law as set forth in paragraph

18    2(d)(ii) of that order.  The statute governing this issue is

19    Section 546(c) of the bankruptcy code as I mentioned a minute

20    ago as an effect before the effective date of the 2005 BAP CPA

21    amendments to the bankruptcy code.  And its well settled that

22    under that section a reclaiming creditor does not have an

23    independent right of reclamation but that that section only

24    preserves any right the seller may have outside a bankruptcy.

25    See for example, In re Quality Stores, Inc. 289 BR 324, 333

35

1    Bankruptcy W.D. Michigan (2003), and In re Pittsburgh-Canfield

2    Corporation 309 BR 277, 6th Circuit BAP (2004).  The parties I

3    think are all in agreement and even if they weren't this would

4    be the law that therefore, the Court must look to the

5    reclamation claimant's rights under Section 27023 of the

6    uniform commercial code.  That section subjects the rights of a

7    reclamation creditor under Section 27022 to the rights of a

8    buyer in the ordinary course or other good faith purchaser.

9    And case law has established that a creditor with a prior

10   perfected floating security interest or a secured instant

11   property generally who acted in good faith and per value is a

12   good faith purchaser for purposes of that section.  See for

13   example In re Oralco 239 BR 261, 267 Bankruptcy SDNY (1999).

14   Under the prevailing, and in my view, correct version of the

15   case law including as set forth in the Oralco case, but also as

16   discussed at length, encodently in the Pittsburgh-Canfield

17   case.  Consequently, a reclaiming creditor does not have a

18   right of reclamation until it is established that either the

19   secured creditor, with a prior interest in its particular

20   asset, has released the interest in that asset or has been paid

21   in full.  I.e. that there are surplus proceeds from the asset

22   that the reclaiming creditor seeks to reclaim.  That clearly

23   has not happened here.  The case law also makes it clear that

24   the reclaiming creditor has what is in essence an inrem right

25   or literally an inrem right.  And until it is established that


                                        36


1    again the prior creditor has either been satisfied out of the

2    proceeds of that particular property from which the reclaiming

3    creditor's rights stem or has released its lien, the value of

4    the reclaiming creditor's inrem right is zero.  The Pittsburgh-

5    Canfield case specifically dealt with the issue raised in the

6    motion which was that the Court should look at whether the

7    collateral package, as a whole, held by the secured creditor

8    would satisfy the creditor.  And therefore should be directed

9    to make a determination that the secured creditor does not need

10   the particular asset that is the basis for the reclamation

11   claim.  And in that case properly rejected that argument.  I

12   should note that even with the change to the bankruptcy code

13   after the applicability of BAP CPA the leading commentator in

14   this area is of the view that the pre BAP CPA cases would still

15   apply.  And in particular, that a reclaiming seller whose right

16   is subject to that of a secured creditor may not invoke the

17   equitable principal of marshalling or a similar principal to

18   require a senior secured creditor to look to assets in which

19   the seller has no interest.  See Five Collier on bankruptcy

20   paragraph 546.042(a)(vii) and in so concluding the editors of

21   Collier site the Oralco case at 239 BR 27477 Bankruptcy SDNY

22   (1999).  In response to that case law the reclaiming selling

23   here contends that the provisions of Section 546(c) are

24   intended only to protect the secured creditor and that the

25   secured creditor here, by failing to object to the motion has

                                                        37

1    waived its rights as a secured creditor.  And consequently the

2    reclaiming creditor may take over the secured creditor.  There

3    are two problems with this argument.  The first is that the

4    case law again, I believe correctly, does not -- or at least

5    the majority case law takes the position that Section 546(c)'s

6    reference to otherwise applicable rights of the reclaiming

7    creditor protects not only secured creditors but unsecured

8    creditors from having a reclaiming seller, who under applicable

9    non-bankruptcy law, would have a zero-valued reclamation claim

10   from obtaining an unearned or unmerited priority.  Again see

11   the Pittsburgh-Canfield case as well as In re Primary Health

12    Systems Inc. 258 BR 111 at 117 Bankruptcy District of Delaware

13    (2001) which noted that elevating such a claim to

14    administrative status in a bankruptcy case would give the

15    claimant a windfall.  As is frequently noted by the Court's,

16    including most recently by the Supreme Court in its decision

17    last term in the Howard case, priorities are to be determined

18    narrowly in bankruptcy given the fact that any priority takes

19    money out of the pocket of those who do not have a priority.

20    Secondly, given that case law and also given the process laid

21    out in the Court's November 2004 order, dealing with the

22    processing and treatment of reclamation claims, I could not

23    find here a knowing and intelligent waiver by the secured

24    creditors even if for some reason I disagreed with that case

25    law.  To the contrary, I think the secured creditors here could

38

1     reasonably assume that those below them in the pecking order

2     i.e., the unsecured creditors as well as the debtor, acting as

3     a fiduciary for its estate, would responsibly protect the

4     estate and the secured creditors from reclamation sellers

5     obtaining a windfall or prematurely obtaining administrative

6     status.  I also don't accept the argument made by Speedline

7     that the foregoing cases that I cited are distinguishable on

8     their facts on the basis that in those cases the reclaiming

9     seller claimed items of inventory or the proceeds thereof as

10    opposed to a specific piece of property.  That distinction is

11    not one that is consistent with the logic of those cases, which

12    specifically addressed the issue I discussed without making a

13    distinction among types of collateral.  But merely pointing to

14    the respective positions of a reclaiming seller when an asset

15    has been sold and there are excess proceeds.  And when it has

16    not yet been sold and the debt that it secures exceeds the

17   value of the reclamation claim.  So, again, in connection with

18   this statutory priority which is out of the ordinary course,

19   given that it's provided to a pre-petition claim only pursuant

20   to 546(c), I can't find any value today that would lead to the

21   allowance today of a specific dollar amount administrative

22   claim.  And certainly there would be no requirement under the

23   Court's order for payment of such amount today.  This is not to

24   say that the reclamation right has disappeared.  In my view,

25   and based on my review of the case law, until the secured

39

1   creditor with the prior right under Section 27023 has either

2   been satisfied or it is clear from the liquidation of its

3   collateral that it will not be satisfied, or has released its

4   lien, the reclaiming seller's rights under 546 essentially hang

5   fire.  Assuming, of course, it's able to establish its right

6   under all the other hurdles of 546(c).  So consequently, I

7   don't accept that the right based on my finding today no longer

8   exists.  It is one that is, at this time, of no value.  But

9   that at some time in the future, depending on the ultimate

10  disposition of the secured creditor's claim in this case, may

11  have value and may be entitled to an administrative claim.  So

12  Mr. Butler you can submit an order with a copy to Speedline's

13  counsel and the committee's counsel consistent with that

14  ruling.

15       MR. BUTLER:  Thank you, Your Honor.  That concludes

16  the matters for this morning's omnibus hearing.  Just to note,

17  Your Honor, I'd like to state in open court, pursuant to

18  authority that was granted to us by chambers, we did file a

19  notice on Pacer very early this morning and served the

20  1113/1114 trial counsel and also filed on notice, on

21  Delphidocket.com, that in lieu of the resumption of the

22    1113/1114 hearing this afternoon there is in this courtroom a

23    meeting confer among trial counsel at 2 p.m. New York time

24    followed by a chamber's conference at 3 o'clock New York time.

25    Both of those conferences are limited to the debtors and the


40


1    respondents to the motion.  And at least as it stands now, that

2    trial is scheduled to resume at 10 a.m. tomorrow.

3         THE COURT:  Okay.  All right.  And if we meet and

4    confer, which I'm happy to have in the courtroom, outside of my

5    presence of course, you can also use the conference room if

6    various parties want to break off and talk a moment among

7    themselves.  Just let my chambers know if you need that room.

8    We'll open it up for you.  So I'll see you at 3.

9         MR. BUTLER:  Thank you, Your Honor.

10         THE COURT:  And that's off the record, right?

11         MR. BUTLER:  Yes.

12         THE COURT:  Fine.  Thank you.

13    (Proceedings concluded at 11:05 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

41

```
 1
 2                        I N D E X
 3
 4                         RULINGS
 5                         Page    Line
 6   Committee's Legal Cost    10      8
 7   Application Approved
 8   MobileAria Contract       10      23
 9   Application Approved
10   Equity Committee Joint    12      4
11   Application Approved
12   Equity Committees'        13      9
13   Application Approved
14   Financial Advisor
15   Reclamation Claim Motion  39      14
16   Denied
17
18
19
20
21
22
23
24
25
```

42

```
 1                 C E R T I F I C A T I O N
 2
```

https://vip21.veritextllc.com/myfiles/93859/123404.TXT

3    I, Esther Accardi, court approved transcriber, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled

6    matter.

7

8    _____ _August 18, 2006_____

9    Signature of Transcriber        Date

10

11    Esther Accardi_____

12    typed or printed name

13

14

15

16

17

18

19

20

21

22

23

24

25