CALINOFF & KATZ, LLP
Dorothy H. Marinis-Riggio (DR 3273)
140 East 45th Street
17th Floor
New York, NY 10017
(212) 826-8800
(212) 644-5123 (fax)
     --and--
MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Kerry Hopkins
10 Light Street
Baltimore, MD 21202
Tel: (410) 385-3418

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date and Time: 10/19/2006 at 10:00 a.m.<br>Objection Deadline: 10/12/2006 at 5:00 p.m. |

-----------------------------------------------------x

In re:                                        :
                                              :
                                              :    **Chapter 11**
**DELPHI CORPORATION, et al.,**               :    **Case No.: 05-44481 (RDD)**
                                              :    **(Jointly Administered)**
                                              :
        **Debtors.**                          :
-----------------------------------------------------x

**MOTION BY COMPUTER PATENT ANNUITIES LIMITED FOR AN ORDER
COMPELLING DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT,
OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

Computer Patent Annuities Limited ("CPA"),[1] by its undersigned attorneys, Miles &

Stockbridge P.C. and Calinoff & Katz, LLP, and pursuant to 11 U.S.C. § 365(d)(2), hereby move

this Court for an order compelling Delphi Technologies, Inc. to either assume or reject that

certain Quarterly Patent and Design Patent Renewal Services Contract executed by and between

CPA and Delphi Technologies, Inc. (the "CPA Contract"). In the alternative, CPA requests an

order compelling Delphi Technologies, Inc. to pay CPA within sixty (60) days of each invoice

---

[1] Computer Patent Annuities Limited is an affiliate of Computer Patent Annuities Limited Partnership ("CPA LP")
and is the successor-in-interest to CPA LP's rights under the CPA Contract.

date and in advance of the renewal deadline for each quarter.  In support of this Motion, CPA states as follows:

## Preliminary Statement

1.      By this Motion, CPA seeks an Order compelling Delphi Technologies, Inc. (the "Debtor") to assume or reject the CPA Contract, or in the alternative, adequate protection.  The facts and circumstances surrounding the CPA Contract warrant prompt intervention by the Bankruptcy Court to preserve the rights and interests of all parties.

2.      Pursuant to the CPA Contract, CPA arranges for the renewal of the Debtor's patents through numerous local contractors.  The Debtor is invoiced quarterly for the patent renewal fees; however, CPA is required to pay the local contractors regardless of when, or if, the Debtor meets its obligations under the CPA Contract.   Absent assumption of the CPA Contract by the Debtor, there is no protection available to CPA that guaranties it will be paid for the patents CPA renews on behalf of the Debtor.  Moreover, CPA is bound by its obligations under the CPA Contract and must continue renewing the Debtor's patents on a quarterly basis, at its own expense.

3.      In January, 2006, CPA and the Debtor reached an agreement whereby CPA agreed to invoice the Debtor more than sixty (60) days in advance of each succeeding quarter so that the Debtor would have sufficient time to process the invoice and submit its payment to CPA prior to the renewal deadline for said quarter.  The agreement was intended to provide the Debtor with additional time to process the quarterly invoices while at the same time reduce the financial risk posed to CPA under the CPA Contract.

4.      Despite the agreement reached between the parties in January, 2006, and despite CPA invoicing the Debtor more than sixty (60) days in advance of the start of each quarter, the

Debtor has continued to pay the invoices late. The Debtor's pattern of untimely payments has forced CPA to advance substantial renewal payments on behalf of the Debtor.

5.      CPA submits that if the Debtor continues to require performance by CPA under the CPA Contract, the Debtor should be required to ensure payment to CPA by assuming the CPA Contract. CPA's continued performance under the CPA Contract in the absence of assumption imposes an unreasonable burden upon CPA.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 365.

7.      Venue is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

## Background

9.      In 2004, CPA and the Debtor entered into a quarterly patent and design patent renewal services contract (the "CPA Contract"). A true and correct copy of the CPA Contract is attached hereto as Exhibit A and incorporated herein by reference. Under the CPA Contract, CPA arranges for the worldwide renewal of the Debtor's patents through numerous local contractors.

10.     The CPA Contract calls for quarterly payments of renewal fees by the Debtor to CPA. CPA, however, is obligated to pay the renewal fees to the local contractors regardless of whether the Debtor meets its obligations under the CPA Contract. The average quarterly invoice issued to the Debtor by CPA seeks payment of approximately $700,000 for patent renewal fees.

11.     On October 5, 2005, CPA received Check No. 12718 from the Debtor in the amount of $1,317,201.81 as payment for patents renewed by CPA prior to the filing of the Debtor's bankruptcy petition. Upon learning of the Debtor's bankruptcy filing on October 8,

3

2005 (the "Petition Date'), CPA contacted the Debtor and was informed by Debtor's in-house counsel that Check No. 12718 would be honored. Delphi's in-house counsel further represented to CPA that the Debtor considered CPA to be an "ordinary course professional" and entitled to payment as such.

12.    On October 27, 2005, CPA learned that Check No. 12718 did not clear. Thereafter, CPA engaged in multiple conversations with Debtor's in-house counsel regarding payment of the pre-petition amounts due and future payments under the CPA Contract. At this time, the Debtor has made a partial payment to CPA on account of the balance owed for pre-petition services.[2]

13.    On December 19, 2005, Debtor's in-house counsel informed CPA that the invoice for the quarter commencing on January 1, 2006 (the "First Quarter Invoice") was approved and sent to the Debtor's accounting department for payment. Payment of the First Quarter Invoice, however, was not received by CPA until January 20, 2006.

14.    In late January, 2006, CPA and the Debtor reached an agreement pursuant to which CPA agreed to invoice the Debtor more than sixty (60) days in advance of the start of each quarter, beginning with the quarter commencing April 1, 2006. In return, the Debtor agreed to pay CPA the outstanding amount due under each invoice within sixty (60) days so that payment would be received by CPA in advance of each succeeding quarter (the "Agrement"). The Agreement was intended to provide the Debtor with more time to process CPA's invoices and also reduce CPA's financial risk under the CPA Contract.

15.    Pursuant to the Agreement, CPA issued the invoice for the quarter commencing April 1, 2006 (the "Second Quarter Invoice") to the Debtor on January 27, 2006. The Second

---

[2] On July 31, 2006, CPA LP filed a proof of claim in Debtor's case asserting an unsecured claim in the amount of $617,204.24 for patents renewed prior to October 8, 2005. See Claim No. 15379.

Quarter Invoice was in the amount of $753,342.76 and payment of the Second Quarter Invoice was due on or before March 28, 2006. A true and correct copy of the electronic mail from CPA to the Debtor enclosing the Second Quarter Invoice is attached hereto as Exhibit B and incorporated herein by reference.

16.     Notwithstanding the Debtor's express agreement and repeated assurances that the Debtor would pay CPA within sixty (60) days of the invoice date and in advance of the start of the Second Quarter, payment was not received by CPA until April 10, 2006. Consequently, CPA was forced to advance funds on behalf of the Debtor to pay the patent renewal fees for at least part of the Second Quarter.

17.     Similarly, CPA issued the Third Quarter Invoice (for the quarter commencing July 1, 2006) to the Debtor on April 17, 2006. The Third Quarter Invoice was in the amount of $606,399.88 and payment of the Third Quarter Invoice was due on or before June 16, 2006. A true and correct copy of the electronic mail from CPA to the Debtor enclosing the Third Quarter Invoice is attached hereto as Exhibit C and incorporated herein by reference. Payment for the Third Quarter Invoice was received by the Debtor on June 16, 2006.

18.     Most recently, CPA issued the Fourth Quarter Invoice (for the quarter commencing October 1, 2006) to the Debtor on July 14, 2006. The Fourth Quarter Invoice was in the amount of $683,001.00 and payment of the Fourth Quarter Invoice was due on or before September 13, 2006. A true and correct copy of the electronic mail from CPA to the Debtor enclosing the Fourth Quarter Invoice is attached hereto as Exhibit D and incorporated herein by reference.

19.     As of the date of filing this Motion, payment of the Fourth Quarter Invoice has not been received by CPA.

20      Pending a determination by the Debtor to assume or reject the CPA Contract,
CPA is obligated to continue providing patent renewal services to the Debtor and to advance
funds on behalf of the Debtor, at significant financial risk to CPA.

### Relief Requested

21.     As more fully set forth in the accompanying Memorandum of Law, section
365(d)(2) of the Bankruptcy Code permits a debtor-in-possession to assume or reject an
executory contract at any time before confirmation of a plan. 11 U.S.C. § 365(d)(2). The Court,
however, may fix an earlier deadline for the debtor-in-possession to assume or reject an
executory contract prior to confirmation. Id. Through this motion, CPA requests that the Court
fix such a deadline.

22.     There is no doubt that the CPA Contract is an executory contract and, thus,
subject to assumption or rejection under 11 U.S.C. § 365. Both parties still owe significant
continuing performance under the terms of the CPA Contract. Specifically, CPA is obligated to
provide quarterly patent renewal services to the Debtor and the Debtor is obligated to pay CPA
for such services. Nevertheless, CPA cannot unilaterally terminate the CPA Contract despite the
significant pre-petition balance owed by the Debtor and despite the Debtor's failure to pay timely
for post-petition services rendered by CPA.

23.     Since the Petition Date, the Debtor has continued to reap the benefits provided by
CPA under the CPA Contract without providing timely payment. Despite repeated assurances by
Debtor's in-house counsel that payment for each succeeding quarter will be made timely and in
accordance with the sixty-day terms set forth in the Agreement, Debtor has consistently paid
each invoice late (with the exception of the Third Quarter Invoice, which was paid on the 60th
day). All the while, CPA continues to advance funds on behalf of the Debtor to renew the

Debtor's patents. This post-petition advancement of funds on behalf of the Debtor has created an unreasonable financial hardship upon CPA.

24.    For these stated reasons, CPA respectfully requests that this Court enter an Order compelling the Debtor to assume or reject the CPA Contract within twenty (20) days from the date of entry of the Order. In the event this Court grants CPA's Motion and the Debtor elects to assume the CPA Contract, the Debtor must also cure all defaults under the CPA Contract, as required by 11 U.S.C. § 365(b)(1)(A).

25.    In the event that the Court grants CPA's Motion and the Debtor rejects the CPA Contract, CPA requests that the Court grant administrative expense status for the unpaid patent renewal fees advanced on behalf of the Debtor as the Debtor's bankruptcy estate has benefited substantially from the post-petition services provided by CPA.

26.    Additionally, if the Court grants CPA's Motion and the Debtor elects to reject the CPA Contract, CPA should be allowed to cease performing under the CPA Contract.

27.    In the alternative, CPA respectfully requests an order compelling the Debtor to pay CPA prior to the start of each quarter and within sixty (60) days of the date of each invoice as adequate protection of CPA's interest in the CPA Contract. In the event the Court is not inclined to order the Debtor to pay CPA within sixty (60) days and in advance of each quarter, CPA requests that the Court make a finding that the Debtor is obligated to pay any late fees and penalties assessed against CPA due to the Debtor's untimely payments.[3]

## NOTICE

28.    Notice of this Motion has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002 (m), 9006, 9007, and 9014 Establishing (I)

---

[3] CPA notes that while untimely payments may cause additional fees and penalties to be incurred, the lateness of such payments are insufficient to put the Debtor's patents at risk of lapsing.

Omnibus Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, and (III) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, Cherokee submits that no other or further notice is necessary.

WHEREFORE, Computer Patent Annuities Limited respectfully requests that this Court enter an order: (i) granting its Motion for an Order Compelling Debtor to Assume or Reject the CPA Contract; (ii) compelling the Debtor to assume or reject the CPA Contract within twenty (20) days of the date of entry of the Order compelling assumption or rejection; (iii) requiring the Debtor to cure all defaults under the CPA Contract if the Debtor assumes the CPA Contract; (iv) allowing CPA to cease performance under the CPA Contract if the Debtor rejects the CPA Contract; and (v) granting such other and further relief as this Court deems just and proper. In the alternative, CPA respectfully requests that the Court enter an order compelling the Debtor to provide payment to CPA prior to the start of each quarter and within sixty (60) days of each invoice date as adequate protection of CPA's interest and granting such other and further relief as this Court deems just and proper.

Date:   New York, New York
        September 19, 2006

                                        CALINOFF & KATZ, LLP
                                        By: /s/ Dorothy H. Marinis-Riggio
                                        Dorothy H. Marinis-Riggio (DR 3273)
                                        140 East 45th Street
                                        17th Floor
                                        New York, NY 10017
                                        (212) 826-8800
                                        (212) 644-5123 (fax)

                                        --and—

                                        MILES & STOCKBRIDGE P.C.
                                        Thomas D. Renda

Kerry Hopkins
10 Light Street
Baltimore, MD 21202
(410) 385-3418 (phone)
(410) 385-3700 (fax)

*Attorneys for Computer Patent
Annuities Limited*

CALINOFF & KATZ, LLP
Dorothy H. Marinis-Riggio (DR 3273)
140 East 45th Street
17th Floor
New York, NY 10017
(212) 826-8800
(212) 644-5123 (fax)
        --and--
MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Kerry Hopkins
10 Light Street
Baltimore, MD 21202
Tel: (410) 385-3418

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date and Time: 10/19/2006 at 10:00 a.m.
Objection Deadline: 10/12/2006 at 5:00 p.m.

----------------------------------------------------x
**In re:**                                          :
                                                    :
                                                    :    **Chapter 11**
**DELPHI CORPORATION, et al.,**                     :    **Case No.: 05-44481 (RDD)**
                                                    :    **(Jointly Administered)**
                                                    :
        **Debtors.**                                :
----------------------------------------------------x

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY COMPUTER PATENT ANNUITIES LIMITED FOR AN ORDER COMPELLING DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT, OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

Computer Patent Annuities Limited ("CPA"),[1] by its undersigned attorneys, Miles &

Stockbridge P.C. and Calinoff & Katz, LLP, hereby submits this legal brief in support of its

Motion for an Order Compelling Debtor to Assume or Reject Executory Contract, or in the

Alternative, for Adequate Protection (the "Motion"). The Motion seeks an order compelling

Delphi Technologies, Inc. to either assume or reject that certain Quarterly Patent and Design

Patent Renewal Services Contract executed by and between CPA and Delphi Technologies, Inc.

---

[1] Computer Patent Annuities Limited is an affiliate of Computer Patent Annuities Limited Partnership ("CPA LP") and is the successor-in-interest to CPA LP's rights under the CPA Contract.

(the "CPA Contract").    In the alternative, CPA requests an order compelling Delphi Technologies, Inc. to pay CPA in advance of the renewal deadline for each quarter. In support of the Motion, CPA states as follows:

## Background

1.    In 2004, CPA and Delphi Technologies, Inc. (the "Debtor") entered into a quarterly patent and design patent renewal services contract (the "CPA Contract"), attached to the Motion as Exhibit A and incorporated herein by reference.    Under the CPA Contract, CPA arranges for the worldwide renewal of the Debtor's patents through numerous local contractors. The CPA Contract calls for quarterly payments of renewal fees by the Debtor to CPA; however, CPA is obligated to pay the renewal fees to the local contractors regardless of whether the Debtor meets its obligations under the CPA Contract.

2.    On October 8, 2005, the Debtor and 38 affiliated entities filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").    Three additional related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 14, 2005 (all related Delphi entities are collectively referred to as the "Debtors"). The Debtors' cases are jointly administered under Case No. 05-44481.

3.    The Debtors continue to operate their businesses and manage their assets as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    A single committee of unsecured creditors has been appointed to all of the Debtors' bankruptcy cases by the Office of the United States Trustee.

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 365.    Venue is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

---

**Relief Requested**

I.    **Setting A Deadline By Which The Debtor Must
Assume Or Reject The CPA Contract**

6.    11 U.S.C. § 365(a) provides that a debtor-in-possession may assume or reject an

executory contract or unexpired lease of the debtor.  11 U.S.C. § 365(a).  11 U.S.C. § 365 (d)(2)

provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume
> or reject an executory contract or unexpired lease of residential real
> property or of personal property of the debtor at any time before the
> confirmation of a plan but the court, on the request of any party to such
> contract or lease, may order the trustee to determine within a specified
> period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).  Through the Motion, CPA requests that the Court fix a deadline for the

Debtor to determine whether to assume or reject the CPA Contract pursuant to section 365(d)(2).

In the alternative, CPA seeks an order compelling the Debtor to pay CPA prior to the start of

each quarter and within sixty (60) days of each invoice date as adequate protection of CPA's

interest.

7.    While the Bankruptcy Code does not define the term "executory contract, "the

legislative history of § 365(a) indicates that Congress intended the term to mean a contract 'on

which performance remains due to some extent on both sides.'" National Labor Relations Board

v. Bildisco & Bildisco, 465 U.S. 513, 523, 104 S. Ct. 1188, 1194 (1984) (quoting H.R. Rep. No.

95-595, p. 347 (1977)).

8.    In the instant case, there is no doubt that the CPA Contract is an executory

contract and, thus, subject to assumption or rejection under 11 U.S.C. § 365.  Both parties still

owe significant continuing performance under the terms of the CPA Contract.  Specifically, CPA

is obligated to provide quarterly patent renewal services to the Debtor and the Debtor is obligated to pay CPA for such services.

9.      CPA is bound by the terms of the CPA Contract and cannot unilaterally terminate the CPA Contract despite the significant pre-petition balance owed by the Debtor and despite the Debtor's failure to pay timely for post-petition services rendered by CPA. In re Monarch Capital Corp., 163 B.R. 899, 907-908 (Bankr. D. Mass. 1994).

10.      "Under Section 365(d)(2), a bankruptcy judge may order a trustee or debtor to determine within a specified time whether to assume or reject an executory contract or unexpired lease." Theatre Holding Corp. v. Mauro (In re Theatre Holding Corp.), 17 B.R. 430, 431 (S.D.N.Y. 1982).  In determining whether to grant a motion to compel assumption or rejection under section 365(d)(2), the "specified period of time" contained in section 365(d)(2) is a reasonable time that will be determined in light of the facts and circumstances of the particular case. See id.  Among the factors courts have considered when determining whether a reasonable amount of time has been afforded a debtor under section 365(d)(2) are:

a)  the damage the non-debtor party will suffer beyond the compensation available under the Bankruptcy Code;

b)  the importance of the contract to the debtor's business and reorganization;

c)  whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan;

d)  whether the exclusivity period has terminated;

e)  the complexity of the case, including the number of contracts to be evaluated;

f)  the nature of the interests at stake;

g)  the balance of the hurt to the litigants, and the good to be achieved;

h)  the safeguard afforded the litigants; and

      i)    the need for the court to determine the validity of the contract.

See id.; In re Enron, 330 BR 387, 393 n. 10 (Bankr. S.D.N.Y. 2005);   In re G-I Holdings, Inc.,

308 B.R. 196, 213 (Bankr. D.N.J. 2004).

      11.    Applying these factors to the facts and circumstances of this case warrants

compelling the Debtor to assume or reject the CPA Contract.   CPA is already owed

approximately $617,204.24 for pre-petition services rendered to the debtor pursuant to the CPA

Contract.  Having to advance additional monies on behalf of the Debtor post-petition places an

unreasonable financial burden upon CPA.  Allowing the Debtor to defer a decision on whether to

assume or reject the CPA Contract will put CPA at even greater financial risk as CPA must

continue to renew the Debtor's patents and advance the renewal fees if not timely paid by the

Debtor.

      12.    The patent renewal services provided by CPA under the CPA Contract are

essential to the Debtor's continued business operations and reorganization efforts.  Additionally,

the Debtor has been in bankruptcy for over eleven months and has yet to file a Chapter 11 Plan.

Although the Debtor's case is complex, the Debtor has had an ample and reasonable amount of

time since the Petition Date to consider the assumption or rejection of the CPA Contract.  Given

the Debtor's repeated assurances to CPA that payment would be made in advance of the start of

each quarter, requiring the Debtor to assume the CPA Contract is justified under the

circumstances.

    **II.**    **Ordering Adequate Protection Pending A Determination
Of Whether To Assume Or Reject**

      13.    In the alternative, the Motion requests adequate protection in the form of an order

compelling the Debtor to pay CPA within sixty (60) days of each invoice and in advance of the

start of each quarter pending a determination of whether to assume or reject the CPA Contract.

While the Debtor has already represented to CPA that this accommodation would be forthcoming, Debtor has not followed through on its assurance of payment within sixty (60) days of each invoice date.

14.    In <u>Charrington Worldwide Enterprise, Inc</u>, 98 B.R. 65 (Bankr. M.D. Fla. 1989), <u>aff'd</u>, 110 B.R. 973 (M.D. Fla. 1990),  the creditor, a nationwide clearinghouse for airline tickets sold by travel agents, sought an order requiring the debtor to promptly assume or reject its contract, or in the alternative, relief from the automatic stay or to receive adequate protection. The subject agreement between the creditor and the debtor travel agency required the creditor to pay the airlines that honored the tickets sold by the debtor regardless of whether the creditor received payment from the debtor.  <u>Id</u>. at 66.  The agreement between the parties also required the debtor to maintain a bond in an amount determined by the average ticket sales made by the debtor.  <u>Id</u>. at 67.  After determining that the agreement was an executory contract that could to be assumed, the Bankruptcy Court directed the debtor to be assume or reject the agreement within seven days and required the debtor to immediately post a bond in favor of the creditor as adequate protection. <u>Id</u>. at 70.

15.    Similar to the agreement in <u>Charrington</u>, CPA is obligated under the CPA Contract to pay the patent renewal fees to the local contractors regardless of whether the Debtor meets its obligations under the CPA Contract.  While the CPA Contract does not provide for the posting of a bond, the CPA Contract does provide that the Debtor "will timely pay the invoices." Accordingly, CPA seeks an order requiring the Debtor to pay CPA within sixty (60) days of each invoice date and in advance of the start of each quarter.  In light of the substantial burden placed upon CPA when it has to advance renewal fees on behalf of the Debtor, CPA submits that such

relief is warranted to prevent CPA from further financial risk pending the Debtor's decision to assume or reject the CPA Contract.

16.    In the event the Court is not inclined to order the Debtor to pay CPA within sixty (60) days of each invoice date and in advance of each quarter, CPA requests that the Court make a finding that the Debtor is obligated to pay any late fees and penalties assessed against CPA due to the Debtor's untimely payments.[2]

---

[2] CPA notes that while untimely payments may cause additional fees and penalties to be incurred, the lateness of such payments are insufficient to put the Debtor's patents at risk of lapsing.

## Conclusion

Wherefore, CPA requests an order compelling the Debtor to assume or reject the CPA Contract within a specified deadline. In the alternative, CPA requests an order compelling the Debtor to pay CPA prior to the start of each quarter as adequate protection of CPA's interest in the CPA Contract. CPA submits that the terms of the CPA Contract pose sufficient financial risk to warrant an early determination by the Debtor of whether to assume or reject the CPA Contract.

Date:   New York, New York
   September 19, 2006

                Respectfully Submitted,

                CALINOFF & KATZ, LLP
                By: /s/ Dorothy H. Marinis-Riggio___
                Dorothy H. Marinis-Riggio (DR 3273)
                140 East 45th Street
                17th  Floor
                New York, NY 10017
                (212) 826-8800
                (212) 644-5123 (fax)

                --and—

                MILES & STOCKBRIDGE P.C.
                Thomas D. Renda
                Kerry Hopkins
                10 Light Street
                Baltimore, MD 21202
                (410) 385-3418 (phone)
                (410) 385-3700 (fax)

                *Attorneys for Computer Patent*
                *Annuities Limited*

CALINOFF & KATZ, LLP
Dorothy H. Marinis-Riggio (DR 3273)
140 East 45th Street
17th Floor
New York, NY 10017
(212) 826-8800
(212) 644-5123 (fax)
        --and--
MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Kerry Hopkins
10 Light Street
Baltimore, MD 21202
Tel:  (410) 385-3418

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date and Time: 10/19/2006 at 10:00 a.m.
Objection Deadline: 10/12/2006 at 5:00 p.m.

-----------------------------------------------------x
In re:                                                :
                                                      :
                                                      :     **Chapter 11**
**DELPHI CORPORATION**, et al.,                       :     **Case No.: 05-44481 (RDD)**
                                                      :     **(Jointly Administered)**
                                                      :
                                                      :
        **Debtors.**                                  :
-----------------------------------------------------x

## NOTICE OF HEARING UPON MOTION BY COMPUTER PATENT ANNUITIES LIMITED FOR AN ORDER COMPELLING DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT, OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

PLEASE TAKE NOTICE that upon the annexed motion and the accompanying Memorandum of Law, Computer Patent Annuities Limited ("CPA"), by its undersigned attorneys, Miles & Stockbridge P.C. and Calinoff & Katz, LLP, will move this Court at a hearing to be held before the Hon. Robert D. Drain at the United States Bankruptcy Court for the Southern District of New York at One Bowling Green, New York, New York 10004 on October 19, 2006 at 10:00 a.m. Eastern Standard Time, or as soon thereafter as counsel may be heard, for an order pursuant to 11 U.S.C. § 365(d)(2) compelling Delphi Technologies, Inc. (the "Debtor") to either assume or reject that certain Quarterly Patent and Design Patent Renewal Services

Contract between CPA and the Debtor.   In the alternative, CPA will move this Court for adequate protection.

PLEASE TAKE FURTHER NOTICE that any opposition to CPA's motion must be filed and served in accordance with the provisions of the October 14, 2005 Case Management Order on or before the Objection Deadline of October 12, 2006 at 5:00 p.m. Eastern Standard Time.

Date:   New York, New York
        September 19, 2006

CALINOFF & KATZ, LLP
By: /s/ Dorothy H. Marinis-Riggio
Dorothy H. Marinis-Riggio (DR 3273)
140 East 45th Street
17th Floor
New York, NY 10017
(212) 826-8800
(212) 644-5123 (fax)

--and—

MILES & STOCKBRIDGE P.C.
Thomas D. Renda
Kerry Hopkins
10 Light Street
Baltimore, MD 21202
(410) 385-3418 (phone)
(410) 385-3700 (fax)

*Attorneys for Computer Patent
Annuities Limited*

# EXHIBIT A

# Quarterly Patent and Design Patent Renewal Service Contract

This contract is made between Computer Patent Annuities Limited Partnership (CPA) of CPA House, 11-15 Seaton Place, St. Helier, Jersey, JE1 1BL, Channel Islands and Delphi Technologies, Inc. (' Delphi') of 5825 Delphi Drive, Troy, MI 48098.

Delphi desires CPA to handle the payment of their patent and design patent renewal fees including fees due in application stage and nominal workings and CPA has agreed to pay such fees starting with fees due on June 1, 2004 and subject to the following:

## CHARGES

1.      CPA agrees to pay renewal fees on behalf of Delphi in a timely fashion. Attached hereto is a schedule of special patent and design renewal costs (Schedule 1) which shows CPA's expenses in various countries. CPA will charge the cost shown on Schedule 1 and a service charge of $12. The service charge to Delphi will not change for five ('5') years from the start date of April 1, 2004. CPA will pass any and all cost savings on official fees. CPA warrants that Delphi will be charged the best available agent's fees.

2.      CPA will pay fees in any country not listed in Schedule 1 and will also charge $12 in excess of the normal agent charges in such countries.

3.      The above service charge is dependant on Delphi paying renewal fees on at least 2500 cases per year through CPA. The service charge will decrease by $2 for each case if Delphi pays fees on more than 5000 cases in any given year through CPA.

4.      CPA will provide Delphi with a reasonable number of printouts on request and free of charge.

## OPERATING PROCEDURE

5.      At the end of September, December, March and June CPA will electronically send Delphi a list of renewals falling due in the four quarters of the year, the list to show the approximate cost of each renewal.

6.      By the 20th November, February, May and August Delphi will report to CPA all cases of which it does not wish to pay fees ('do not pay instructions')for cases having fees due in the next three months of each year.    CPA shall pay renewal fees on all cases for which do not pay instructions have not been received by such date.

7.      At the end of the months of November, February, May and August, CPA will invoice Delphi with a single invoice, broken down by charge unit as provided by Delphi, for every case for which do not pay instructions have not been received and renewal payments are due in the preceeding quarter of the year, respectively. Delphi will timely pay the invoices.

8.      CPA reserves the right to invoice supplementary charges or to pass on cost savings to Delphi in the following circumstances:

1/7

(a)    official fees are unavoidably increased or decreased;

(b)    special costs indicated in Schedule 1 are unavoidably increased

(c)    agent charges in countries not listed in Schedule 1 are unavoidably increased; and

(d)    there is a currency movement of more than 4% between the invoicing date and the date of payment of the fee by CPA.

PROVIDED THAT:

(i)    CPA will use its best efforts to avoid supplementary charges; and

(ii)    no supplementary charges will be levied under (d) once CPA has received cleared funds for a quarter.

CPA will pass all cost savings it achieves in the charges indicated in this Section 8 directly to Delphi.

## INITIAL ARRANGEMENTS

9.    Delphi will provide CPA with details of the portfolio in a manner to be agreed. Delphi shall be responsible for checking the accuracy of the portfolio data sent to CPA. Notwithstanding the foregoing, CPA will check the portfolio data provided by Delphi against public records in order to identify those cases, if any, in respect of which Delphi is not correctly identified as the assignee, and provide Delphi with a list of those cases.

10.    CPA will enter details of the portfolio on its computer and will check these details. CPA does not give advice on deadlines to establish working in countries which adhere to Article 5 of the Paris Convention. CPA will normally deal with Nominal Working in countries where it is understood that this may help in defending an action (contrary to Article 5) for revocation on the grounds of lack of working, such countries being listed in Schedule 2 attached hereto. It is Delphi's responsibility to advise CPA of any countries in Schedule 2 where nominal working is not required.

11.    Delphi will be provided with a computer listing as soon as possible. It is Delphi's responsibility to check the accuracy of the computer listing, subject to the assistance provided by CPA in Section 9.

## UPDATING ARRANGEMENTS

12.    Do not pay instructions can be reported by Delphi to CPA in accordance with Clause 6 or at any other time. Such do not pay instructions will be acknowledged by CPA on a regular basis.

13.    New cases, grant details and other changes in status will be reported by Delphi to CPA on a regular basis, and will be dealt with in accordance with Clauses 9 - 11. Use of a CPA/Memotech database by Delphi will satisfy the reporting requirements of the Section 13.

2/7



## GENERAL

14. CPA acknowledges that all information relating to Delphi's portfolio is strictly confidential and will not be divulged to any third party other than for the purpose of paying renewal fees.

15. Delphi and CPA agree not to divulge the terms of the contract to third parties without approval from CPA or Delphi, respectively, in writing.

16. Where an existing agent demands a representation fee for maintaining a case on his records, Delphi will be responsible for paying such fees, but all invoicing will be done by CPA, in accordance with Section 7. CPA will use its best efforts to avoid such agent representation fee.

17. CPA recommends that Delphi takes steps to ensure that all official renewal reminders and lapse notices issued by Patent Offices are received and forwarded to CPA unless the cases to which they refer already have do not pay instructions associated therewith or are abandoned. CPA will check such reminders free of charge.

18. Delphi acknowledges that CPA pays renewal fees for pending and post-grant patents or their equivalent, that it is CPA's policy not to pay accumulated annuities or back fees arising in certain countries at the time of grant or acceptance of an application, and it is the responsibility of Delphi to arrange payment of such fees that have arisen before the grant of the patent or its equivalent.

19. This contract will run for a period of three (3) years and shall come into effect on the date last signed. After the first year, the contract may be terminated by Delphi by giving six (6) months written notice. The contract shall be automatically renewed on a yearly basis and shall remain in full force and effect, unless terminated in writing by either party giving six (6) months notice.

20. This contract shall be governed by and construed in accordance with the Laws of New York, United States of America.

3/7

Signed for and on behalf of Computer Patent Annuities Limited Partnership

Dated: ...........................

..................................................
Peter Sewell
Chief Executive Officer


Signed for and on behalf of Delphi Technologies, Inc.

Dated: ...........................

..................................................
Thomas N. Twomey

Vice President


**SCHEDULE 1**
Schedule of Special **PATENT** Renewal Costs as at 01 February 2003

4/7

| | |
|---|---|
| ALGERIA | Official fee in € plus €29 – €75 |
| ARGENTINA | Official fee in US$ plus $48.40 (inc 12% VAT) |
| ARIPO | Official fee plus US$100 |
| AUSTRALIA | Official fee only |
| AUSTRIA | Official fee only |
| BELGIUM | Official fee plus €2.50 |
| BRAZIL | Official fee in US$ plus $100 |
| BULGARIA | Official fee in US$ plus $60 – $150 |
| CANADA (granted patents) | Official fee only |
| COLOMBIA | Official fee in US$ plus $125 |
| CYPRUS | Official fee plus C£52 – C£150 |
| CZECH REPUBLIC | Official fee in US$ plus $35 – $70 |
| DENMARK (including UMs) | Official fee only |
| EGYPT | US$45 – $275 (including official fee) |
| ESTONIA | Official fee in € plus €84 |
| EUROPEAN APPLICATION | Official fee only |
| EURASIAN PATENT | Official fee plus $80 for 1 State, $20 per extra state |
| FINLAND | Official fee only |
| France | Official fee only |
| GERMANY (including UMs) | Official fee only |
| GREAT BRITAIN | Official fee only |
| GREECE | Official fee plus €27 |
| HONG KONG | Official fee plus HK$390 |
| HUNGARY | Official fee in US$ plus $45 – $75 |
| ICELAND | Official fee in £ plus £74 – £164 |
| INDIA | Official fee plus £3 |
| INDONESIA | Official fee in US$ plus $135 |
| IRAN | Official fee in US$ plus $103 – $182 |
| IRELAND | Official fee plus €29 |
| ISRAEL | Official fee in US$ plus $95 |
| ITALY (including UMs) | Official fee plus €2 |
| JAPAN (including UMs) | Official fee plus 3000 Yen |
| LATVIA | Official fee in US$ plus $70 – $100 |
| LITHUANIA | Official fee in US$ plus $58 |
| Luxembourg | Official fee plus €2,5 |
| MEXICO | Official fee in US$ plus $51.75 (inc 15% VAT) |
| MONACO | Official fee plus €45 |
| MOROCCO | Official fee in US$ plus $69 – $150 |
| NETHERLANDS (granted patents only) | Official fee plus €11.35 |
| NEW ZEALAND | Official fee only |
| NIGERIA | Official fee in £ plus £82 |
| NORWAY | Official fee only |
| OAPI | Official fee in £ plus £98 – £169 |
| PAKISTAN | Official fee in US$ plus $83 – $118 |
| PERU | Official fee in US$ plus $40 |
| PHILIPPINES (including UMs) | Official fee in £ plus £32 |
| PORTUGAL (including UMs) | Official fee plus €60 |
| RUSSIA | Official fee plus US$45 |
| SINGAPORE | Official fee plus S$120 |
| SLOVAKIA | Official fee in US$ plus $35 – $70 |
| SLOVENIA | Official fee in US$ plus $44 – $250 |
| SOUTH AFRICA | Official fee plus R105 |
| SOUTH KOREA (including UMs) | Official fee in US$ plus $30 |
| SPAIN (including UMs) | Official fee plus €14.40 |
| SWEDEN | Official fee only |
| SWITZERLAND | Official fee only |
| TAIWAN (including UMs) | Official fee plus NT$720 |
| TUNISIA | Official fee in £ plus £23 |
| TURKEY | Official fee in CHF plus CHF280 |
| UNITED STATES OF AMERICA | Official fee only |
| VENEZUELA (including UMs) | US$133 (including official fee) |
| YUGOSLAVIA | US$90 – US$520 (including official fee) |
| ZIMBABWE | Official fee in US$ plus $48 – $82 |

## SCHEDULE 1
### Schedule of Special DESIGN Renewal Costs as at 01 February 2003

| | |
|---|---|
| AUSTRALIA | Official fee only |
| AUSTRIA | Official fee only |
| BENELUX | Official fee plus €60 |
| Canada | Official fee only |
| DENMARK | Official fee only |
| FINLAND | 20% discount on filing agent's fee |
| GERMANY | Official fee plus €80 |
| GREAT BRITAIN | Official fee only |
| HONG KONG | Official fee plus HK$390 |
| INDIA | Official fee plus £3 |
| IRELAND | Official fee plus €38 |
| ITALY | Official fee plus €2 |
| JAPAN | Official fee plus 3000 Yen |
| MALAYSIA GB EXTENSION | US$450 (including official fee) |
| MEXICO | Official fee in US$ plus US$51.75 (inc 15% VAT) |
| NEW ZEALAND | Official fee only |
| PHILIPPINES | Official fee in £ plus £32 |
| Portugal | Official fee plus €60 |
| RUSSIA | Official fee plus US$45 |
| SINGAPORE GB EXTENSION | Official fee plus S$730 |
| SOUTH AFRICA | Official fee plus R125 |
| SOUTH KOREA | Official fee in US$ plus US$30 |
| SPAIN | Official fee plus €16 for tax, €130 for rent |
| SWEDEN | Official fee plus SEK750 |
| TAIWAN | Official fee plus NT$720 |
| VENEZUELA | US$133 (including official fee) |

NOTE:    CPA will handle renewals in all other countries not listed; the cost will be in accordance with local filing agents' tariff.

6/7

## SCHEDULE 2
### Countries in Which CPA will Deal with NOMINAL WORKINGS

| | | |
|---|---|---|
| BRAZIL | Annual | US$85 |
| IRAN | alternate years | US$225 |
| JORDON | alternate years | US$250 |
| LEBANON | alternate years | US$175 |
| LIBERIA | alternate years | GB£235 |
| MOROCCO | alternate years | US$230 |
| NICARAGUA | (Granted before 24 November 2000) alternate years | US$300 |
| SYRIA | alternate years | US$245 |
| TUNISIA | alternate years | GB£130 |

# EXHIBIT B

Jennifer Shepler/USA/CPA

01/27/2006 10:37 AM

To "scott.a.mcbain" <scott.a.mcbain@delphi.com>

cc "katie.hales" <katie.hales@delphi.com>

Subject Invoices for Q2 2006

Hi Scott,

Per your conversation with Vincent, please find attached a listing of all invoices for 2nd Quarter 2006.  The ad-hoc invoices for cases added and paid by CPA since the last quarterly invoice are also included.

The paper copies will follow.

Please let me know if you have any questions.
Best regards,

Jen

Jen Shepler
Service Account Manager

CPA

Patent Analytics
Patent, Design, & Trademark Renewals
IP Software Solutions, Worldwide Trademark
Searching & Watching, Domain Name Management
Direct Dial: 703.739.6383
E-mail: Jshepler@cpaglobal.com
Fax:  703.739.2815
Customer Care Center:  866.739.2239

Computer Patent Annuities North America LLC
225 Reinekers Lane, Suite 400
Alexandria, VA 22314
www.cpaglobal.com

# EXHIBIT C

Lisa Young/USA/CPA

04/17/2006 03:44 PM

To  scott.a.mcbain@delphi.com

CC  katie.hales@delphi.com

Subject Invoices for 3Q06

Hi Scott,

Please find attached a listing of invoices for 3rd Quarter 2006.

Please let me know if you have any questions.

Best regards,
Lisa


Lisa Young
Client Service Centre
CPA North America, LLC

Patent Analytics
Patent, Design & Trademark Renewals
IP Software Solutions, Worldwide Trademark
Searching & Watching, Domain & Digital Content Services

Toll Free: (866) 739-2239
Direct Dial: (703) 739-1275
Mobile: (703) 625-0580
Email: LYoung@cpaglobal.com
Fax: (703) 739-2815
www.cpaglobal.com

225 Reinekers Lane, Suite 400
Alexandria, VA  22314

# EXHIBIT D

## Hopkins, Kerry

| | |
|---|---|
| **From:** | LYoung@cpaglobal.com |
| **Sent:** | Monday, September 18, 2006 12:30 PM |
| **To:** | Hopkins, Kerry |
| **Cc:** | CGowda@cpaglobal.com; CBryant@cpaglobal.com; SRussell@cpaglobal.com |
| **Subject:** | Fw: Invoices for 4Q06 |
| **Attachments:** | 4Q06.xls |

Lisa Young
Client Service Centre
CPA North America, LLC

Patent Analytics
Patent, Design & Trademark Renewals
IP Software Solutions, Worldwide Trademark
Searching & Watching, Domain & Digital Content Services

Toll Free: (866) 739-2239
Direct Dial: (703) 739-1275
Mobile: (703) 625-0580
Email: LYoung@cpaglobal.com
Fax: (703) 739-2815
www.cpaglobal.com

225 Reinekers Lane, Suite 400
Alexandria, VA  22314

----- Forwarded by Lisa Young/USA/CPA on 09/18/2006 12:28 PM -----

**Lisa Young/USA/CPA**

07/14/2006 09:57 PM

To scott.a.mcbain@delphi.com, Katie Hales

cc

Subject Invoices for 4Q06

Hi Scott and Katie,

Please find attached a listing of invoices for 4th Quarter 2006.

Please let me know if you have any questions.

Best regards,
Lisa

Lisa Young

9/18/2006

Client Service Centre
CPA North America, LLC

Patent Analytics
Patent, Design & Trademark Renewals
IP Software Solutions, Worldwide Trademark
Searching & Watching, Domain & Digital Content Services

Toll Free: (866) 739-2239
Direct Dial: (703) 739-1275
Mobile: (703) 625-0580
Email: LYoung@cpaglobal.com
Fax: (703) 739-2815
www.cpaglobal.com

225 Reinekers Lane, Suite 400
Alexandria, VA  22314

*****************************************************************
The information in this message is confidential and may be legally
privileged. It is intended solely for the addressee; access to this
email by anyone else is unauthorised.

If you are not the intended recipient: (1) you are kindly requested
to return a copy of this message to the sender indicating that you
have received it in error, and to destroy the received copy; and (2)
any disclosure or distribution of this message, as well as any action
taken or omitted to be taken in reliance on its content, is prohibited
and may be unlawful.
*****************************************************************

9/18/2006

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
**In re:**                                    :
                                              :
                                              :        **Chapter 11**
**DELPHI CORPORATION, et al.,**               :        **Case No.: 05-44481 (RDD)**
                                              :        **(Jointly Administered)**
                                              :
**Debtors.**                                  :
-------------------------------------------------x

### ORDER COMPELLING DEBTOR DELPHI TECHNOLOGIES, INC. TO ASSUME OR REJECT EXECUTORY CONTRACT WITH COMPUTER PATENT ANNUITIES LIMITED WITHIN 20 DAYS

Upon the motion dated September 19, 2006 (the "Motion") of Computer Patent Annuities Limited ("CPA") for an order directing Delphi Technologies, Inc. to determine within twenty (20) days whether to assume or reject an executory contract with CPA pursuant to 11 U.S.C. § 365(d)(2), and for such other and further relief as is just and proper, and a hearing having been held upon the Motion on October 19, 2006 (the "Hearing"), and notice of the Motion and Hearing having been given in accordance with the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002 (m), 9006, 9007, and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, and (III) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (the "Case Management Order") (Docket No. 245) and that no other or further notice is necessary, and upon the representations made on the record at the Hearing and good and sufficient cause appearing therefor, and after due deliberation, it is hereby:

ORDERED, that the Motion is granted as set forth in this Order; and it is further

ORDERED, that the time within which Delphi Technologies, Inc. may assume or reject the CPA Contract (as defined in the Motion) expires twenty days from the date of entry of this ORDER; and it is further

ORDERED, that if Delphi Technologies, Inc. assumes the CPA Contract, Delphi Technologies, Inc. shall cure all defaults under the CPA Contract as provided by 11 U.S.C. § 365(b)(1)(A); and it is further

ORDERED, that if Delphi Technologies, Inc. rejects the CPA contract, CPA may cease performing under the CPA Contract.

Date:  New York, New York
       October _____, 2006


                                            _____
                                                  Hon. Robert D. Drain
                                            United States Bankruptcy Judge