EXECUTION COPY

## PURCHASE AND SALE AGREEMENT FOR
## CERTAIN CLAIMS IN THE CHAPTER 11 CASES

This PURCHASE AGREEMENT, dated as of September 19, 2006, by and among CF Special Situation Fund I LP as buyer (the "**Buyer**") and APS Clearing, Inc. as seller (the "**Seller**"). Seller and Buyer are referred to individually as a "**Party**" and collectively as the "**Parties**."

### R-E-C-I-T-A-L-S

WHEREAS, Delphi Automotive Systems, LLC and certain of its affiliates (collectively, the "**Debtors**") are the debtors in cases pending under chapter 11 of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), which cases are jointly administered under Case No. 05-44481 ("**Proceedings**");

WHEREAS, the Seller has engaged in the simultaneous purchase of certain bankruptcy Claims (as defined below), at an undisclosed purchase rate (the "**Upstream Purchase Rate**"), using commercially reasonable assignment and transfer documents (the "**Upstreams**"), true and complete copies of which Seller has provided to Buyer, against the Debtors from identified third party seller(s) (the "**Immediate Prior Seller(s)**"), such Claims appearing on Schedule 1, hereto;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and for such other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows:

### ARTICLE I
### PURCHASE AND SALE OF CLAIMS

**1.1. Sale of Trade Claims.** Upon the terms and subject to the conditions of this Purchase Agreement, and subject to the occurrence of Seller's receipt of the Purchase Price (as defined below) (the date of such receipt being the "**Funding Date**"), Seller hereby transfers and assigns to the Buyer, and the Buyer hereby purchases from Seller for the Purchase Price (as defined below) all of Seller's right, title and interest in and to the Claims set forth in the trade detail attached as Schedule 1 to this Purchase Agreement. Except as expressly provided otherwise in this Purchase Agreement, the assignment and transfer of the Claims to Buyer is without recourse or warranty. As used in this Purchase Agreement, the term "**Claim**" or "**Claims**" includes all claims as defined in section 101(5) of the Bankruptcy Code, as amended, owned by Seller and identified in the trade detail on Schedule 1, including, without limitation and to the extent related to such Claims (a) all claims owned by Seller, the Immediate Prior Seller(s), or the original creditors against Debtors in the Proceedings pending in the Court including, without limitation, any and all of such Seller's rights to receive principal, interest, fees, damages, penalties, and other amounts in respect of such claims, and, to the extent relating thereto, all accounts, accounts receivable, contract rights, and other rights and interest of Seller against Debtor, arising from or related to each Claim as described in Schedule 1 annexed hereto, as well as the proof of claim (the "**Proof of Claim**")), if any, with respect to such Claim then, or thereafter, filed in the Proceedings, and all rights in and to, or under, the Proof of Claim; (b) all of Seller's causes of action and voting or other rights relating to, and in connection with, the Claims arising under the Bankruptcy Code and any applicable law; (c) all cash, securities or other property distributable, receivable or payable, from and after the date hereof, on account of, or exchanged in return for, any

of the foregoing (such property referred to in this clause (c) is hereafter referred to as "**Distributions**"); and (d) unless limited by other provisions herein, all of Seller's right title and interest in, and to, the Upstreams, including, but not limited to, the right to enforce all of Seller's rights thereunder.

**1.2 Purchase Price.** The purchase price for each Claim shall be the purchase price (the "**Purchase Price**") set forth in that certain purchase price letter of even date herewith, between Seller and Buyer (the "**Purchase Price Letter**"), all of the terms of which are incorporated herein by reference. Seller and Buyer acknowledge and agree that the Purchase Price shall be paid by wire transfer of immediately available funds, to Seller in accordance with Section 1.3 and the Purchase Price Letter, an amount equal to the product of (x) the Purchase Rate (as set forth in the Purchase Price Letter), and (y) the Purchase Amount (as set forth in Schedule 1 hereto).

**1.3 Settlement.** Payment by the Buyer of the Purchase Price attributable to the sale of the Claims shall be made within one (1) business day of the mutual execution by both Buyer and Seller of this Purchase Agreement (the "**Closing Date**"), the Purchase Price Letter and the Evidence of Transfer (as defined below) (together the "**Operative Documents**"), unless an extension of the Funding Date is agreed to in writing by the Seller, in accordance with the wire instructions set forth in the Purchase Price Letter. Any delay in funding of the Purchase Price beyond the Funding Date shall render this Purchase Agreement null and void and Buyer shall thereafter take all actions necessary and proper to transfer good and marketable title in the Claims back to Seller.

**1.4 Evidence of Transfer.** Subsequent to the Funding Date, Buyer shall be responsible for the coordination and filing of all documents, including an evidence of the transfer of the Claims ("**Evidence of Transfer**") (in the form attached as Exhibit A, hereto), necessary and proper to convey complete and marketable title in the Claims to Buyer.

## ARTICLE II
## AGREEMENTS AND REPRESENTATIONS OF THE SELLER

Seller agrees with and represents to, and only with and to, the Buyer as of the date hereof and as of the Closing Date, as follows, to the best of Seller's knowledge, and only with respect to the specific Claim that Seller is hereby selling to Buyer:

**2.1 Excluded Information.** Seller acknowledges and agrees that Buyer currently may possess, or later may come into possession of, material non-public information concerning the Claim, the Debtor, any obligor, or any of their affiliates that is not known to Seller (the "**Seller Excluded Information**"). Seller further acknowledges that it has not requested to receive the Seller Excluded Information and has nevertheless determined to proceed with the transaction contemplated herein, and Buyer shall not have any liability to the Seller arising out of the non-disclosure of the Seller Excluded Information; provided, however, that nothing in this paragraph shall limit, contradict or render untrue any representation or warranty made by Buyer in this Purchase Agreement. Seller further hereby irrevocably and unconditionally waives and releases Buyer, and its officers, directors, employees, agents, members, advisors, attorneys and affiliates (the "**Buyer Releasees**") from any and all claims that Seller might have whether under applicable securities laws or otherwise, based on Buyer's possession of, or non-disclosure to Seller of, any Seller Excluded Information, and neither the Seller nor its affiliates shall sue or assert or maintain, any claim, suit or other proceeding, regarding any claim, known or unknown, which Seller or its affiliates may now or in the future have against the Buyer Releasees based upon or relating to the Seller Excluded Information. Seller further confirms that it understands the significance of the foregoing waiver and release.

APSC Seller                                                                                                                1023v2

2

**2.2 Proxy and Attorney-in-Fact.** As of the Closing Date, but subject to the satisfaction of all conditions precedent set forth in Sections 1.3 and 1.4, including payment of the Purchase Price, and subject further to the provisions set forth in Section 2.4 herein, including the exercise of the right of the Buyer under certain circumstances to cause a repurchase obligation by Seller, Seller hereby irrevocably appoints Buyer, its successors and assigns, as its true and lawful attorney-in-fact with respect to the Claim, acknowledges that such appointment is irrevocable and coupled with an interest, and authorizes Buyer in its sole and absolute discretion, to (a) act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for or on account of the Claim, (b) vote the Claim and file proofs of claim with respect thereto; (c) change the name and address and other contact information of the claimholder of record with respect to the Claim; and (d) to take such actions or inaction. Seller hereby grants unto Buyer full authority to do all things necessary to enforce the Claim and Seller's rights hereunder. Seller agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take (at Seller's cost and expense) all such action as Buyer may reasonably request, promptly upon the request of Buyer, which are necessary in order to consummate the transactions contemplated by this Purchase Agreement. Seller agrees that the powers granted in this Section 2.2 to Buyer are discretionary in nature and exercisable, in whole or in part, at the sole option of Buyer, at anytime and Buyer may at any time elect to cease any action, not take any action, and/or elect any then available right or remedy; provided, however, that Buyer's exercise of its right not to take action under this Section 2.2, is, in addition to the other provisions hereof, subject to Buyer promptly providing to Seller copies of all pleadings, exhibits, documents, notices and correspondence relating to the Claims (other than those available in the public forum). Buyer shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Claims.

**2.3 Distributions and Notices.** Seller agrees to promptly forward to Buyer all notices or documents received from the Debtor, the Court or any third party with respect to the Claims assigned herein, to vote the Claims assigned herein in a timely manner and in accordance with Buyer's instructions, and to take such further action with respect to the Claims in the Proceedings as Buyer may from time to time request. Seller further agrees that if Seller receives any distributions on account of the Claims whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Buyer to which the Buyer has an absolute right. Seller shall hold such property on behalf of and in trust for Buyer and will at its own expense, deliver to Buyer any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Buyer within two (2) business days of receipt in the case of cash and five (5) business days in the case of securities.

**2.4 Impairment.** If (i) any notice, objection, pleading or other paper is filed or asserted seeking on any ground to avoid, disallow, reduce, subordinate or otherwise impair the Claim, in whole or in part in the Proceedings for any reason whatsoever; or (ii) the Buyer or its assignee(s) receives distributions on the Claim which are, per dollar of claim, less in amount or different in nature or timing than distributions payable to holders of similarly situated claims (according disparate analysis to unsecured and reclamation portion of the Claim, if any) generally in the Proceedings; (iii) all or any portion of the Claim becomes affected by a preference or avoidance action, including pursuant to Section 502(d) of the Code; (iv) all or any portion of the Claim becomes subject to any counterclaim, defense, claim, right of setoff, withholding (tax or otherwise), reduction, recoupment, avoidance, disallowance or subordination or is otherwise impaired in any way; (v) if the Buyer is unable to be substituted for Seller to the extent of the Claims in the Proceedings (each an "**Impairment**" with respect to the portion of the Claim so affected), then Buyer shall provide written notification to Seller as soon as reasonably

APSC Seller                                                                                                          1023v2

practicable that an Impairment exists and forward any details of said Impairment, whereby Seller shall have sixty (60) days to resolve the Impairment. If the Impairment is not fully resolved within sixty (60) days, then the resolution period can be extended in thirty (30) day increments if agreed to in writing by both Parties, such agreement not to be unreasonably withheld. Following the end of the initial resolution period and any agreed-to resolution period extensions, at the sole discretion of the Seller and only upon written demand and notice of the objection from Buyer to Seller, Seller shall repurchase such portion of the Claim subject to Impairment by paying an amount (the "**Repurchase Amount**") equal to the product of (x) that portion of the Claim subject to Impairment and (y) the Purchase Rate (as set forth on the Purchase Price Letter), plus interest thereon from the Closing Date to but excluding the date of repurchase at a rate equal to eight percent (8%) per annum.

**2.5 Representations.** Seller represents to Buyer as of the Closing Date, as follows, and only with respect to the specific Claim that such Seller is hereby selling to such Buyer: (a) Seller is duly authorized and empowered to execute, deliver and perform the Operative Documents; (b) the Operative Documents constitute the valid, legal and binding obligations of Seller, enforceable against Seller in accordance with their terms; (c) to the same extent that Seller received such ownership and title from the Immediate Prior Seller, Seller owns and has good and marketable title to the Claims, free and clear of any liens, claims, charges, setoffs, withholdings (tax or otherwise) security interests, participations, factoring arrangements or encumbrances of any kind ("**Liens**"), and will transfer to Buyer good legal and beneficial title to the Claims free and clear of all Liens; (d) Seller has not, in any manner which would preclude the consummation of the transactions contemplated by this Purchase Agreement, (i) previously sold, assigned or hypothecated the Claims, in whole or in part, or any rights with respect to the Claims, to any person or entity or (ii) entered into any final and binding agreements or understandings with respect to the sale, assignment or transfer of the Claims, or any rights with respect to the Claims, and Seller covenants that it shall not in the future enter into any agreements or understandings (other than the Operative Documents) with respect to the sale, assignment or transfer of the Claims or any rights with respect to the Claims; (e) to the knowledge of Seller, neither the execution, delivery or performance of the Operative Documents, nor consummation of the transactions contemplated hereby will, in any material respect, violate or contravene any law, rule, regulation, order or agreement affecting the Seller or the Claims; (f) except for any notice requirements prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, no consent, approval, filing or corporate, partnership or other action by Seller is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Purchase Agreement by Seller, (g) as of the date hereof, other than those objections listed in Schedule 2, Seller is not actually aware of any objections that have been filed with respect to the Claims or, to Seller's knowledge, exist or are threatened with respect to the Claims; (h) Seller has not engaged in any conduct that would result in, any counterclaim, defense, claim, right of setoff, withholding (tax or otherwise), reduction, recoupment, impairment, avoidance, disallowance or subordination with respect to the Claim amount; (i) no payment or Distribution has been made or received by Seller in full or partial satisfaction of the Claims; and (j) Seller is an "accredited investor", as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§77a et seq., as amended, and the rules and regulations promulgated thereunder.

**ARTICLE III**
**AGREEMENTS AND REPRESENTATIONS OF THE BUYER**

Buyer agrees with and represents to Seller, as of the date hereof and as of the Closing Date, as follows, and only with respect to the specific Claim that Buyer is hereby buying from Seller:

APSC Seller                                                                                                                   1023v2

**3.1 Excluded Information.** Buyer acknowledges and agrees that Seller currently may possess, or later may come into possession of, material non-public information concerning the Claim, the Debtor, any obligor, or any of their affiliates that is not known to Buyer (the "**Buyer Excluded Information**"). Buyer further acknowledges that it has not requested to receive the Buyer Excluded Information and has nevertheless determined to proceed with the transaction contemplated herein, and Seller shall not have any liability to the Buyer arising out of the non-disclosure of the Buyer Excluded Information; provided, however, that nothing in this paragraph shall limit, contradict or render untrue any representation or warranty made by Seller in this Purchase Agreement. Buyer further hereby irrevocably and unconditionally waives and releases Seller, and its officers, directors, employees, agents, members, advisors, attorneys and affiliates (the "**Seller Releasees**") from any and all claims that Buyer might have whether under applicable securities laws or otherwise, based on Seller's possession of, or non-disclosure to Buyer of, any Buyer Excluded Information, and neither the Buyer nor its affiliates shall sue or assert or maintain, any claim, suit or other proceeding, regarding any claim, known or unknown, which Buyer or its affiliates may now or in the future have against the Seller Releasees based upon or relating to the Buyer Excluded Information. Buyer further confirms that it understands the significance of the foregoing waiver and release.

**3.2 Representations.** Buyer represents to Seller, as of the date hereof, as follows, and only with respect to the specific Claim that Buyer is hereby buying from such Seller: (a) Buyer is duly authorized and empowered to execute, deliver and perform the Operative Documents; (b) the Operative Documents constitute the valid, legal and binding obligations of Buyer, enforceable against Buyer in accordance with its terms; (c) the execution, delivery or performance of the Operative Documents will not, to the knowledge of Buyer, violate or contravene any law, rule, regulation, order or agreement affecting the Buyer or the Claim; (d) except for any notice requirements prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of the Operative Documents by Buyer; (e) Buyer (i) is a sophisticated person with respect to the purchase of the Claim and other property, if any, and the assumption of any obligations related thereto or hereto, (ii) is an "accredited investor", as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§77a et seq., as amended, and the rules and regulations promulgated thereunder, (iii) is aware that any distributions in connection with the Claims and Section 2.3 hereof made pursuant to any plan of reorganization or liquidation confirmed by the Court, or a court supervised liquidation, in the Proceedings, may differ both in kind and amount from the consideration Buyer has agreed to pay to Seller pursuant to the terms of this Purchase Agreement in exchange for the Claims and the rights set forth in Section 1.1 hereof, (iv) is able to bear the economic risk associated with the Claim and any other property, if any, and the assumption of any obligations related thereto or hereto, (v) has adequate information concerning the business and financial condition of any Debtor or any obligor and the status of the Proceedings to make an informed decision regarding the aforementioned purchase and any assumption of obligations related thereto or hereto, (vi) has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Purchase Agreement, and (vii) has independently and without reliance upon the Seller, and based on such information as Buyer has deemed appropriate, made its own analysis and decision to enter into this Purchase Agreement; (f) Buyer acknowledges that the consideration paid under this Purchase Agreement for the purchase of the Claims may differ both in kind and amount from any Distribution, and that Seller has not given it any investment advice, credit information, or opinion on whether the purchase of the rights or the assumption of the obligations which is the subject matter of this Purchase Agreement is prudent or advisable; (g) either (i) Buyer is not acquiring any interest in the Claim by

APSC Seller                                                                                                                                                     1023v2

or on behalf of a person that is, or at any time while the Claim or any related assignment property is held thereby will be, a benefit plan, or (ii) the transaction exemption set forth in one or more Prohibited Transaction Exemption ("PTEs"), as promulgated by the U.S. Department of Labor, such as PTE 84-14 (a class exemption for certain transactions determined by independent qualified professional asset managers), PTE 95-60 (a class exemption for certain transactions involving insurance company general accounts), PTE 90-1 (a class exemption for certain transactions involving insurance company pooled separate accounts), PTE 91-38 (a class exemption for certain transactions involving bank collective investment funds), and PTE 96-23 (a class exemption for certain transactions determined by in-house asset managers) is applicable with respect to the purchase and holding of the Claim or other property assigned hereby and the exercise of Buyer's rights thereunder; (h) Buyer has reviewed, evaluated, commented and approved the Upstreams; and (i) no broker, finder, or other person acting under Buyer's authority is entitled to any broker's commission or other fee in connection with the transactions contemplated by this Purchase Agreement for which the Seller could be responsible.

## ARTICLE IV
## DISPUTE RESOLUTION

**4.1 Governing Law and Venue.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF. EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY CONSENTS TO THE JURISDICTION OF THE COURTS LOCATED IN THE STATE AND COUNTY OF NEW YORK FOR ANY ACTION TO ENFORCE, INTERPRET OR CONSTRUE ANY PROVISION OF THIS AGREEMENT, AND ALSO HEREBY IRREVOCABLY WAIVES ANY DEFENSE OF IMPROPER VENUE OR FORUM NON CONVENIENS TO ANY SUCH ACTION BROUGHT IN THOSE COURTS AND WAIVES ANY RIGHT TO DEMAND TRIAL BY JURY.

## ARTICLE V
## MISCELLANEOUS

**5.1 Notices.** All notices and other communications by the Seller or the Buyer hereunder shall be in writing to the other Parties and shall be deemed to have been duly given when delivered in person or by an overnight courier service, or sent via facsimile and verification received, or when posted by the United States postal service, registered or certified mail, return receipt requested with postage prepaid, at the address set forth below or to such other addresses as a Party may from time to time designate to the other Party by written notice thereof, effective only upon actual receipt.

If to the Seller :   APS Clearing, Inc.
                     Attn: Matthew Hamilton
                     1301 Capital of Texas Hwy,
                     Suite No. B-220
                     Austin, Texas 78746
                     F: (512) 314-4327
                     T: (512) 314-4416
                     mhamilton@amph.com

If to the Buyer:   CF Special Situation Fund I LP
Attn: Ryan Crane
200 Public Square, Suite 2910
Cleveland, Ohio 44114
rrc@clutterbuckfunds.com

**5.2 Survival.** All representations and warranties made by the Parties pursuant to this Purchase Agreement shall survive the execution and delivery of this Purchase Agreement, the subsequent settlement, transfer and/or assignment of the Claims and any such re-assignment thereof, and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

**5.3 Successor and Assignees.** The terms of this Purchase Agreement shall be binding upon, and shall inure to the benefit of and be enforceable by Buyer and its respective successors and assigns. Seller hereby acknowledges that Buyer may at any time reassign the Claim or any portion thereof, together with all right, title and interest of Buyer in and to this Purchase Agreement (a purchaser or transferee of the Claim from Buyer is hereafter defined as the **"Penultimate Owner"**). Seller further acknowledges that an assignment or other transfer of Buyer's interest in the Claim, in whole or in part, will cause Buyer to forward and convey this Purchase Agreement, the Upstreams, and all papers, documents, agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing (**"Upstream Due Diligence"**), or relating or referred to, the Claim and the transactions contemplated hereby. In the event Buyer subsequently sells, transfers or assigns the Claim, or any portion thereof, then with respect to the portion of the Claim so sold, transferred or assigned (a) Seller shall have no further indemnity or Impairment obligations to Buyer under this Purchase Agreement; and (b) the Penultimate Owner shall have all of Seller's rights under the Operative Documents and the Upstreams; *provided, however,* that nothing in this paragraph shall waive, terminate, limit or otherwise impair any indemnity or Impairment rights of a Penultimate Owner under this Purchase Agreement, all of which indemnity and Impairment rights Seller acknowledges may be assigned to, and inure to the benefit of Penultimate Owner.

**5.4 Entire Agreement.** The Operative Documents constitute the entire agreement by the Parties hereto, and supersedes any other agreement, whether written or oral, that may have been made or entered into prior to the date hereof between Seller on the one hand and Buyer on the other hand with respect to the Proceedings. Each Party agrees and acknowledges that (a) except as expressly stated in this Purchase Agreement, each Party makes no representations or warranties, express or implied, with respect to the transactions contemplated herein or therein; and (b) the Seller's sale and assignment of the Claim and other property, if any, to the Buyer, and the Buyer's assumption of obligations, if any, are irrevocable, and each Party shall have no recourse to the other except as specifically set forth in this Purchase Agreement.

**5.5 Amendments and Waivers.** This Purchase Agreement may be amended, modified, superseded, or canceled, and any of the terms, representations, warranties or covenants hereof may be waived, only by written instrument executed by the Party against whom enforcement of such amendment is sought, or, in the case of a waiver, by the Party waiving compliance.

**5.6 Maintenance of Confidentiality.** OTHER THAN DISCLOSURES TO THE PARTIES' LEGAL COUNSEL, FINANCIAL ADVISORS OR ACCOUNTANTS, OR AS MADE TO CONVEY UPSTREAM DUE DILIGENCE PURSUANT TO A VALID ASSIGNMENT OF BUYER'S INTEREST IN THE CLAIMS, OR AS MADE TO ENFORCE BUYER'S RIGHTS PURSUANT TO AN IMPAIRMENT UNDER SECTION 2.4, HEREOF, OR AS OTHERWISE REQUIRED BY LAW,

APSC Seller                                                                                                                                  1023v2

7

BOTH PARTIES HEREBY IRREVOCABLY COVENANT THAT THEY WILL MAINTAIN ABSOLUTE AND UNCONDITIONAL CONFIDENTIALITY OF THE CONTENTS OF THE PURCHASE PRICE LETTER, INCLUDING, BUT NOT LIMITED TO (I) THE PURCHASE PRICE AND (II) THE PURCHASE RATE ("**CONFIDENTIAL INFORMATION**"). NOTWITHSTANDING ANYTHING CONTAINED IN THE OPERATIVE DOCUMENTS TO THE CONTRARY, ANY PARTY DISCLOSING CONFIDENTIAL INFORMATION (AS DEFINED IN THIS SECTION 5.6, SHALL ENSURE THAT ALL PERSONS WHO WERE GIVEN, OR OTHERWISE HAVE ACCESS TO ("**COVERED PERSONS**"), CONFIDENTIAL INFORMATION, ARE AWARE OF THE OBLIGATIONS CONTAINED IN THIS PARAGRAPH AND SHALL TAKE ALL REASONABLE MEASURES TO RESTRAIN COVERED PERSONS FROM PROHIBITED OR UNAUTHORIZED DISCLOSURE OR USE OF THE CONFIDENTIAL INFORMATION.

**5.7 Captions; Counterparts; Execution.** The captions in this Purchase Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Purchase Agreement. This Purchase Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

**5.8 Severability.** If any provision hereof is found by an arbitrator(s) or a court of competent jurisdiction to be prohibited or unenforceable in any jurisdiction, such provision shall be ineffective as to such jurisdiction only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision as to such jurisdiction to the extent it is not prohibited or unenforceable, nor invalidate such provision in any other jurisdiction, nor invalidate the other provisions hereof.

**5.9 Cooperation.** Each Party hereto agrees to cooperate in good faith with reasonable requests by the other Party hereto in order to effectuate the intents and purposes of this Purchase Agreement.

**5.10 Indemnity.** Each Party hereby agrees to indemnify, defend and hold the other Party and its respective officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages and liabilities, including, without limitation, reasonable attorneys' fees and expenses which result from such Party's breach of any of its representations, warranties, covenants or agreements set forth in this Purchase Agreement or any enforcement of the rights granted under this Section 5.10. Notwithstanding the foregoing, in the event of an Impairment, each Party's sole remedy shall be that set forth in Section 2.4 hereof.

**5.11 Waiver of Notice.** Seller hereby waives any notice requirement imposed by Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and any successor provision, and consents to the immediate substitution by the Court of Buyer for Seller for all purposes in the Proceedings, including, without limitation, for voting and distribution purposes with respect to the Claim. Seller and Buyer agree that Buyer may file the Evidence of Transfer or other appropriate notice with the Court pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and any successor provision.

**5.12. Late Payment.** If either Party fails to make a payment or distribution to the other Party within the time period specified in this Purchase Agreement, the Party failing to make full payment of any amount when due shall, upon demand by the other Party, pay such amount due amount together with interest on it (for each day from (and including) the date when due to (but excluding) the date when actually paid) at a rate equal to twelve percent (12%) per annum.

**5.13 Subrogation.** To the extent that Buyer enforces any claim for indemnification, Impairment (as defined above) or other right, claim or remedy against Seller under this

Purchase Agreement and receives payment or another remedy from Seller in respect of such right, claim or remedy, the Parties agree that, without the need for further action on the part of either Party, Seller shall be subrogated to the rights of Buyer against any other party, including the upstream creditors, with respect to such right, claim or remedy to the extent that Buyer receives such payment or other remedy from Seller.

*[Signature Page Follows]*

APSC Seller

1023v2

IN WITNESS WHEREOF, the Seller and the Buyer have caused this Purchase Agreement to be duly executed as of the date first above written.

**SELLER:**

APS CLEARING, INC.
a Delaware corporation

By: _____
Name: Matthew Hamilton, Esq.
Title: Managing Director

**WIRE INSTRUCTIONS:**

Bank: Plains Capital Bank
ABA No: ▓▓▓▓▓▓▓
Acct: APS Clearing Transactions
Acct No: ▓▓▓▓▓▓▓
Ref: 1023 Delphi claim

**BUYER:**

CF SPECIAL SITUATION FUND I LP

By: _____
Name: Ryan R. Crane
Title: Partner

**WIRE INSTRUCTIONS:**

Bank: Bank of America NA
      100 West 33rd Street
      New York, NY 10001
ABA No: ▓▓▓▓▓▓▓
Acct: CF Special Situation Fund I LP
Acct No: ▓▓▓▓▓▓▓
Ref: Delphi claim

## SCHEDULE 1
## PURCHASE AND SALE
## TRADE DETAIL

| Original Creditor Name | Proof of Claim Number | Claim Amount | Purchase Amount |
|---|---|---|---|
| Linamar Corporation | 10262, 10261, 10900 | $1,260,331.99 | $1,260,331.99 |

## SCHEDULE 2
## OBJECTIONS

Debtor has not objected to the Claim.

## EXHIBIT A
## EVIDENCE OF TRANSFER

TO:   THE DEBTOR AND THE BANKRUPTCY COURT

APS Clearing, Inc., with an address at 1301 Capital of Texas Hwy, Suite B-220, Austin, Texas 78746 ("**Assignor**") transfers and assigns unto CF Special Situation Fund I LP, its successors and assigns ("**Assignee**"), pursuant to the terms of that certain Purchase and Sale Agreement For Certain Claims In The Chapter 11 Cases[1], of even date herewith (the "**Agreement**"), all of its right, title and interest in and to (a) those certain proofs of claim, identified on the attached Schedule of Claims, as further identified in each Assignor's duly and timely filed Proof of Claim (the "**Proof of Claim**") against Delphi Automotive Systems, LLC (the "**Debtor**"), and (b) those certain scheduled claims, identified on the attached Schedule of Claims, as further listed in Schedule F of the Debtor's Schedules of Assets and Liabilities (the "**Scheduled Claim**")[2] filed in the United States Bankruptcy Court, Southern District of New York ("**Bankruptcy Court**"), jointly administered under Case No. 05-44481.

Assignor hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing Claims and recognizing the Assignee as the sole owner and holder of the Claims. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Claims, and all payments or distributions of money or property in respect of the Claims, shall be delivered or made to the Assignee.

IN WITNESS WHEREOF, the Assignor and the Assignee have caused this Assignment to be duly executed as of September 19, 2006.

**ASSIGNOR:**

APS CLEARING, INC.
a Delaware corporation

By: _____
Name: Matthew Hamilton
Title: Managing Director


**ASSIGNEE:**

CF SPECIAL SITUATION FUND I LP

By: _____
Name:
Title:

---

[1] Capitalized terms not otherwise defined herein, have those meaning ascribed to such terms in the Agreement.
[2] The Proof of Claim and the Scheduled Claim are together hereinafter referred to as the "**Claims.**"