Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
    In re                             :        Chapter 11
:
DELPHI CORPORATION, et al.,    :        Case No. 05-44481 (RDD)
:
                      Debtors.   :        (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(a) AND
FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING EXPANSION OF SCOPE OF
EMPLOYMENT OF FTI CONSULTING, INC. AS RESTRUCTURING AND FINANCIAL
ADVISOR TO DEBTORS TO INCLUDE
<u>ECONOMIC CONSULTING SERVICES NUNC PRO TUNC TO MAY 25, 2006</u>

("FTI SUPPLEMENTAL RETENTION APPLICATION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

---

[1]     In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,

(collectively, the "Debtors"), hereby submit this supplemental retention application (this "Supplemental Retention Application") for an order under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 authorizing the expansion of the scope of employment of FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors, and employees, "FTI") as restructuring and financial advisor to the Debtors to include the provision of economic consulting services to the Debtors (and certain current and former directors and officers of Delphi and certain Delphi-related entities), nunc pro tunc to May 25, 2006.  In support of this Supplemental Retention Application, the Debtors submit the Affidavit Of Randall S. Eisenberg, sworn to September 25, 2006, (the "Eisenberg Affidavit").  In further support of this Supplemental Retention Application, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

---

Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

        3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

        4.    The statutory predicates for the relief requested herein are sections 327(a) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    <u>Current Business Operations Of The Debtors</u>

        5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

        6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

        7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.   In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.   The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

---

[3] Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

10. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D. The Debtors' Transformation Plan

11. On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of

5

its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

13.    By this Supplemental Retention Application, the Debtors seek to expand the scope of employment of FTI as restructuring and financial advisor to the Debtors to include the provision of economic consulting services to the Debtors (and certain current and former directors and officers of Delphi and certain Delphi-related entities).  Accordingly, the Debtors respectfully request the entry of an order under section 327(a) of the Bankruptcy Code authorizing the expansion of the scope of FTI's employment as restructuring and financial advisor to the Debtors in these chapter 11 cases to include the provision of economic consulting services pursuant to the letter agreement attached to the Eisenberg Affidavit as <u>Exhibit B</u> (the "Engagement Letter"), <u>nunc</u> <u>pro</u> <u>tunc</u> to May 25, 2006.

## Overview

14.    The Debtors filed an application for employment of FTI as restructuring and financial advisor to the Debtors in these chapter 11 cases on October 8, 2005 (the "FTI Retention Application").  On November 4, 2005, this Court approved the FTI Retention Application.

15.    FTI is currently providing the Debtors with a wide array of restructuring and financial advisory services in support of their reorganization process.  As part of this process, the Debtors are seeking to defend themselves against certain lawsuits.

16.    FTI has been approached by the Debtors and Shearman & Sterling LLP, Special Counsel to the Debtors ("Shearman"), to assist Shearman in rendering legal advice and performing legal services for the Debtors (and certain current and former directors and officers

6

of Delphi and certain Delphi-related entities) by providing economic consulting services relating to certain legal actions that are, or may in future be, pending against the Debtors.

17. This Supplemental Retention Application sets forth the proposed additional services to be provided by FTI and the associated fee arrangement and seeks the Court's approval for expansion of FTI's role.

## Scope Of Additional Services

18. The Debtors seek to expand FTI's current scope of services to include the provision of privileged economic consulting services, to be rendered under the direction and supervision of Shearman, relating to certain pending and future litigation (the "Economic Consulting Services").

## Applicable Fee Arrangement

19. The Debtors understand that FTI will continue to apply to this Court for allowance of compensation and reimbursement of expenses related to the Economic Consulting Services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), orders of this Court, and guidelines established by the U.S. Trustee (the "U.S. Trustee Guidelines").

20. FTI will not bill for the Economic Consulting Services separately from the restructuring and financial advisory services, but rather will designate one or more separate billing codes in order that the Economic Consulting Services performed may be distinguishable and distinct from such other services.

21. FTI and the Debtors have agreed upon a compensation arrangement for the Economic Consulting Services that is distinct from the compensation associated with the other

7

restructuring and financial advisory services. FTI's customary hourly rates for the Economic Consulting Services, subject to periodic adjustments, are as follows:

| | |
|---|---|
| Daniel R. Fischel | $1,000 |
| Senior Vice Presidents | $485-590 |
| Vice Presidents | $450-485 |
| Economists | $325-440 |
| Research Staff | $125-315 |

22.    In addition to the professional fees outlined above, the Economic Consulting Services provided may require empirical analysis of large datasets. FTI charges a fee for use of its computer capability. The use of computer capability is not included in the hourly rates outlined above. Should empirical analysis be required, the charge for this capability will be measured by FTI's customary rates times the actual amount of CPU time, connect time, and other functions actually used. FTI will limit the use of the computer capability charge to no more than 20% of total professional fees.

23.    FTI will only bill for reasonable expenses that are likely to be incurred on the Debtors' behalf while it is performing the Economic Consulting Services. FTI will not charge any markup, overhead, profit, or other fees on these reimbursable expenses.

<u>Other Terms and Provisions</u>

24.    All other terms and provisions that are applicable to the Economic Consulting Services are consistent with the FTI Retention Application and are hereby incorporated by reference into this Supplemental Retention Application and remain in full force and effect.

## Conclusion

25. For the foregoing reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors and their estates and creditors and should be approved.

## Notice

26. Notice of this Supplemental Retention Application has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum of Law

27. Because the legal points and authorities upon which this Supplemental Retention Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the expansion of the scope of FTI's employment as restructuring and financial advisor to the Debtors in these chapter 11 cases to include the provision of the Economic Consulting Services, <u>nunc</u> <u>pro</u> <u>tunc</u> to May 25, 2006 and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
        September 28, 2006

                              DELPHI CORPORATION, on behalf of itself and
                              certain of its subsidiaries and affiliates, as Debtors and
                              Debtors-in-possession

                              By:   <u>/s/ John D. Sheehan</u>
                                   Name: John D. Sheehan
                                   Title:   Vice President and Chief Restructuring
                                        Officer