UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

  In re                                    :         Chapter 11
                                             :
DELPHI CORPORATION et al.,       :         Case No. 05-44481 (RDD)
                                             :
                                 Debtors.  :         (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FOURTH SUPPLEMENTAL AFFIDAVIT OF RANDALL S. EISENBERG
IN SUPPORT OF THE RETENTION OF FTI CONSULTING, INC. AS
RESTRUCTURING AND FINANCIAL ADVISOR TO THE DEBTORS AND THE
SUPPLEMENTAL RETENTION APPLICATION OF FTI CONSULTING, INC. FOR ORDER
UNDER 11 U.S.C. § 327(A) AND FED. R. BANKR. P. 2014 AND 2016
AUTHORIZING EXPANSION OF SCOPE OF EMPLOYMENT TO INCLUDE
<u>ECONOMIC CONSULTING SERVICES</u>

Randall S. Eisenberg, being duly sworn, deposes and states as follows:

       1.      I am a Senior Managing Director with the firm of FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors, and employees, "FTI"). I submit this affidavit (the "Fourth Supplemental Affidavit")[1] to supplement my prior affidavits that were submitted in connection with FTI's retention in these chapter 11 cases and in support of the supplemental retention application (the "Supplemental Application") of Delphi Corporation, and certain of its subsidiaries, and debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of an order pursuant to

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Supplemental Application.

11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 authorizing the expansion of the scope of employment of FTI to include the provision of economic consulting services to the Debtors <u>nunc</u> <u>pro</u> <u>tunc</u> to May 25, 2006 under the terms and conditions set forth in the letter agreement attached hereto as <u>Exhibit B</u> (the "Engagement Letter").  Unless otherwise stated in this Fourth Supplemental Affidavit[2], I have personal knowledge of the facts set forth herein.

    2.     On October 8, 2005, the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

    3.     On October 8, 2005, the Debtors filed an application to retain FTI as its Restructuring and Financial Advisor.  In support of the application, FTI filed an affidavit executed by the undersigned on behalf of FTI in accordance with the applicable sections of the Bankruptcy Code (the "<u>Original Affidavit</u>").  On or about February 27, 2006, April 26, 2006, and July 31, 2006, I submitted supplemental affidavits to update the disclosures made in the Original Affidavit (the "Supplemental Affidavits").

    4.     Since the filing of the last of these Supplemental Affidavits, the following has come to my attention:

        a.     Upon information and belief, FTI has provided and could reasonably be expected to continue to provide services to the parties set forth in <u>Exhibit A</u>, as well as those clients disclosed in previous affidavits.  FTI's representation of these organizations is wholly unrelated to the Debtors

---

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals within FTI and are based upon information they have provided.

2

and these Chapter 11 cases. To the best of my knowledge, no services have been provided to these or other parties-in-interest disclosed in my prior affidavits that involve their rights in the Debtors' cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services. Nevertheless, in the interest of full disclosure, I point out the following relationship:

> FTI has been retained by General Motors to provide economic consulting services in association with a securities class action lawsuit.

5.  Insofar as I have been able to ascertain and subject to the disclosures herein and in my prior affidavits, FTI does not represent any interests adverse to the Debtors' estates and, to the best of my knowledge, remains a "disinterested person" as that term is defined in Section 101(14), as modified by Section 1107(b), of the Bankruptcy Code.

## Scope Of Additional Services

6.  The Debtors seek to expand FTI's current scope of services to include the provision of privileged economic consulting services, to be rendered under the direction and supervision of Shearman & Sterling LLP, Special Counsel to the Debtors, relating to certain pending and future litigation (the "Economic Consulting Services"), as outlined in the Engagement Letter attached hereto as Exhibit B.

## Professional Compensation For Economic Consulting Services

7.  Subject to court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable U.S. Trustee

3

guidelines, and the local rules of this District, FTI will seek payment for compensation on an hourly basis, as well as computer capability fees, for the Economic Consulting Services, plus reimbursement of actual and necessary expenses incurred by FTI. FTI's customary hourly rates, as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement, are outlined in the Engagement Letter. These hourly rates are adjusted annually.

Dated:   New York, New York
         September 25, 2006


                                   By:   /s/ Randall S. Eisenberg_____
                                         Randall S. Eisenberg
                                         Senior Managing Director



Sworn to and subscribed before me on
this 25th day of September 2006


/s/ Linda J. Pearson_____
Notary Public

# Exhibit A

Delphi Corporation, et al.
Relationship Check Summary

| Name |
| --- |
| Avenue Capital Group |
| BB&T Corporation |
| BB&T Insurance Services |
| Cadwalader, Wickersham & Taft, LLP |
| Canon U.S.A. Inc. |
| Computer Patent Annuities Limited Partnership |
| Crowell & Moring LLP |
| Davis Polk & Wardwell |
| Fried, Frank, Harris, Shriver & Jacobson LLP |
| Goodwin Procter LLP |
| IBM |
| Jason Incorporated |
| Latham & Watkins LLP |
| Madison Capital Management, LLC |
| Marathon Asset Management |
| Maxim Integrated Products, Inc. |
| Mayer Brown & Platt |
| McDermott Will & Emery LLP |
| Milliman, Inc. |
| Morrison Cohen Singer & Weinstein LLP |
| Pardus Capital Management |
| SAP America, Inc. |
| Sumitomo Corporation of America |
| Sun Microsystems, Inc. |
| Union Pacific Railroad Company |
| Valence Operating |
| Weil, Gotshal & Manges LLP |

Note: To the extent a listed entity has filed for Chapter 11, FTI may represent the Company or the Unsecured Creditors' Committee.

**Exhibit B**
**Engagement Letter**

**FTI**

PRIVATE & CONFIDENTIAL

As of May 25, 2006

Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

Re: *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation MDL No. 1725, Master Case No. 05-md-1725*

Dear Mr. Polovoy:

1. **Introduction**

   This letter confirms that we, FTI Consulting, Inc. ("FTI"), through its wholly owned subsidiary Lexecon, LLC, have been retained by you, Shearman & Sterling LLP ("Shearman") to provide certain economic consulting services (the "Services") in connection with the above-referenced actions on behalf of Shearman's clients in those actions: Delphi Corporation ("Delphi" or the "Company"), certain current and former directors and officers of Delphi, and certain other Delphi-related entities (collectively the "Clients") (a list of the Clients is attached hereto). This letter of engagement (the "Engagement") and the attachments hereto constitute the engagement contract (the "Engagement Contract") pursuant to which such Services will be provided.

2. **Scope of Services**

   FTI will act at the direction of and under the supervision of Shearman to assist Shearman in rendering legal advice and performing legal services for its Clients. The scope of services to be performed will consist of economic consulting services relating to the above-referenced actions. Work performed by FTI as part of this engagement, including, without limitation, any oral or written reports that it may prepare, constitute privileged and confidential communications. FTI further understands that any document prepared by FTI is prepared for Shearman.

   To facilitate the rendering of legal advice by Shearman, it will be necessary for FTI to interpret certain complex economic data. In this regard, it is expected that FTI will be asked to undertake specialized projects under Shearman's direction. In the course of this assignment, either the Clients or Shearman will be transmitting information and documents in confidence to FTI, including, if necessary, materials prepared in anticipation of litigation. FTI is being retained at this time to provide consulting services only.

   It is specifically understood that if Mr. Fischel or another FTI agent or employee is later designated a testifying expert it is possible that some or all of the documents already created by FTI may become discoverable, including drafts and notes prepared prior to the time that an opinion or report is finalized. FTI agrees that: (a) it will not prepare any draft opinion or report without Shearman's consent (regardless of whether the draft is for internal purposes or to share with others); and (b) it will not share any draft opinion, report or analysis, or other documents relating to this engagement, with any other person without Shearman's consent.

1

Brian H. Polovoy, Esq.
May 25, 2006

While FTI may from time to time suggest options that may be available to Shearman and its Clients, and further give its professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with Shearman and the Clients. FTI and its employees will not make any management decisions for Delphi and will not be responsible for communicating information concerning Delphi to the public, its shareholders or others.

3. **Fees**

Professional fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour |
|---|---|
| Daniel R. Fischel | $1,000 |
| Senior Vice Presidents | $495-590 |
| Vice Presidents | $450-485 |
| Economists | $325 - 440 |
| Research Staff | $125 - 315 |

FTI agrees not to raise its rates for this engagement for at least twelve months from the date of retention. We will notify Shearman and obtain its concurrence in advance of any changes to our rates after this 12 month period in excess of 5% of the then applicable hourly rates. FTI will comply with the original cost estimate given to Delphi. Note that FTI does not provide any assurance regarding the outcome of its work, and its fees will not be contingent on the results of such work. We will provide a list of those persons we propose to work on this matter and obtain your approval. We will also obtain your approval before adding others as soon as practicable.

In addition to the professional fees outlined above, on economic consulting cases requiring an empirical analysis of large datasets, FTI charges a fee for use of its computer capability. FTI professionals perform the empirical analysis using an IBM mainframe computer, analytic software, data conversion tools, technical know-how, and the assistance of seven technology staff whose time typically is not billed on a rate per hour basis. The use of computer capability charge is not included in FTI's standard hourly rate structure. Should empirical analysis be required, the charge for this capability will be measured by FTI's customary rates times the actual amount of CPU time, connect time and other functions actually used. (For purposes of this case, FTI will limit the use of computer capability charge to no more than 20% of total professional fees.)

In addition to the fees outlined above, FTI will bill for reasonable expenses that are incurred on the Clients' behalf during this Engagement. FTI will only bill for reasonable expenses to the extent such reimbursement is permitted by Delphi's standard billing instructions, a copy of which is attached hereto. FTI will not charge any markup, overhead, profit or other fees on the reimbursable expenses.

All fees, expenses and costs will be paid directly by Delphi. Shearman will not be responsible in any manner for FTI's fees, expenses and costs. Notwithstanding that fact, bills will be sent monthly directly to Shearman, addressed as follows:

-2-

Brian H. Polovoy, Esq.
May 25, 2006

> Brian H. Polovoy, Esq.
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, NY 10022-6069

Shearman will forward all bills to Delphi, which is solely responsible for payment.

If FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by Delphi at its regular hourly rates and reimbursed for reasonable out of pocket expenses with respect thereto as permitted by Delphi's Billing Instructions. If FTI believes it needs counsel, it will first obtain written approval from the Company, which permission will not be unreasonably withheld or delayed.

During the course of the bankruptcy proceeding, invoices for fees and expenses incurred in connection with this Engagement will be billed in accordance with the procedures established by the Bankruptcy Court for the compensation of professionals and the reimbursement of expenses. If the retention continues after the bankruptcy proceeding, FTI will bill in accordance with its customary procedures.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the attachments hereto comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. Any conflict between Delphi's Billing Instructions and FTI Consulting, Inc. Standard Terms and Conditions shall be resolved in favor of Delphi's Billing Instructions.

5. **Conflicts of Interest**

FTI is not aware of any conflicts of interest or additional relationships that it believes would preclude it from performing the Services. As you know, FTI is a large consulting firm with numerous offices throughout the United States. FTI is regularly engaged by new clients, which may include one or more of the potentially interested parties. However, FTI will not accept an engagement that conflicts with this Engagement without your prior written consent.

On August 1, 2005, FTI was retained to provide financial advisory services related to Delphi's and certain of its subsidiaries' (collectively, "Debtors") restructuring efforts. On November 8, 2005, the U.S. Bankruptcy Court for the Southern District of New York entered an order Authorizing Employment and Retention of FTI Consulting, Inc. as Restructuring and Financial Advisors to the Debtors in their bankruptcy proceedings. In connection with its retention, FTI conducted a review of its relationships with the Debtors, their affiliates and certain entities holding large claims against or interests in the Debtors (the "Potentially Interested Parties"), as provided by the Debtors. FTI has disclosed any known services that it performed on behalf of the parties-in-interest through affidavits with the Bankruptcy Court. Based on the results of this review, FTI is not aware of any conflicts of interest or additional relationships that we believe

-3-

Brian H. Polovoy, Esq.
May 25, 2006

would preclude us from performing the Services.

6. **Personnel**

   All of FTI's agents and employees furnished by FTI to perform the Services (collectively, "Personnel") are and will remain FTI's employees and, under no circumstances, will any Personnel furnished by FTI be deemed to be the Clients' employees. FTI is solely responsible, at FTI's sole cost and expense, for (i) the fulfillment of all obligations to Personnel and (ii) the compliance by FTI and Personnel with this Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

   FTI will require all Personnel who are performing any work on the Clients' premises to comply with all of the Clients' regulations and policies as provided in writing by the Clients to FTI. The Clients, in their sole discretion, have the right to: (a) bar any Personnel from their premises for failure to observe their regulations or policies, (b) require that FTI promptly remove from their premises any Personnel who violate any of their regulations or policies, and (c) require that FTI cease using any Personnel to perform the services who are reasonably unacceptable to them. The Clients will confer with FTI to discuss their concerns prior to requiring removal of any Personnel. FTI will replace any barred or removed Personnel with Personnel reasonably acceptable to the Clients.

7. **Notification** – As part of the agreement to provide consulting services in this matter, FTI will immediately notify Shearman and simultaneously Delphi of the occurrence of any one of the following events: (a) the exhibition, disclosure or surrender of any documents or records prepared by or submitted to it or someone under its direction, in a manner not expressly authorized by Shearman; (b) a request by anyone to examine, inspect or copy such documents or records; (c) any effort to obtain any theories, opinions, facts, data, information or other materials within its possession, custody or control that have been disclosed or provided to it or generated by it in connection with this engagement; and (d) any attempt to serve, or the actual service of, any court order, subpoena or summons upon it that requires the production of any documents or records. Upon request FTI will immediately return to Shearman all documents, records and work papers provided to FTI by Shearman or Delphi.

8. **Acknowledgement and Acceptance**

   Please acknowledge your acceptance of the terms of this Engagement Contract by signing the confirmation below and returning a copy of it to us at the above address.

9. **Notices**

   Notices to the parties shall be delivered by FedEx with a copy by facsimile and email as follows:

| FTI Consulting, Inc. | Brian H. Polovoy, Esq. | Delphi Corporation |
|---|---|---|
| Mark W. Zumbach | Shearman & Sterling LLP | Joseph E. Papelian |
| Vice President | 599 Lexington Avenue | 5725 Delphi Drive |
| 332 South Michigan Avenue | New York, NY 10022-6069 | Troy, MI 48098 |
| Suite 1300 Chicago 60604 | Tel: 212/ 848-4703 | Tel: 248/ 813-2535 |
| Tel 312.322.0210 | Fax: 646/ 848-4703 | Fax: 248/ 813-3251 |
| Fax 312.322.0218 | bpolovoy@shearman.com | joseph.e.papelian@delphi.com |
| mzumbach@lexecon.com | | |

-4-

Brian H. Polovoy, Esq.
May 25, 2006

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Daniel R. Fischel at 312-322-0209 or Mark W. Zumbach at 312-322-0210.

Yours faithfully,

FTI CONSULTING, INC.

By: _____
Mark W. Zumbach
Vice President

Attachments – As stated


Confirmation of Terms of Engagement

Shearman agrees to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.

_____
Signed: Brian H. Polovoy, Esq.
On behalf of Shearman & Sterling LLP

Date:    As of May 25, 2006


Confirmation of Terms and Obligations of Payment

Delphi agrees to this Agreement and acknowledges its duties specified herein and in the attached Standard Terms and Conditions.

_____
Signed: Joseph E. Papelian, Esq.
On behalf of Delphi Corporation
Date:    As of May 25, 2006

-5-

## Shearman & Sterling LLP's Clients

### Securities

Delphi Corporation
Delphi Trust I
Delphi Trust II
J.T. Battenberg, III
Robert H. Brust
Virgis W. Colbert
David N. Farr
Bernd Gottschalk
Shoichiro Irimajiri
Susan A. McLaughlin
Oscar de Paula Bernardes Neto
Cynthia A. Niekamp
John D. Opie
Roger S. Penske
Donald L. Runkle
John D. Sheehan
Patricia Sueltz
Thomas H. Wyman

### ERISA

J.T. Battenberg, III
Robert H. Brust
Susan A. McLaughlin
John D. Opie
Thomas H. Wyman
Investment Policy Committee

### Derivative

Delphi Corporation
J.T. Battenberg, III
Robert H. Brust
Virgis W. Colbert
David N. Farr
Bernd Gottschalk
Shoichiro Irimajiri
Susan A. McLaughlin
Craig G. Naylor
Oscar de Paula Bernardes Neto
Cynthia A. Niekamp
Rodney O'Neal
John D. Opie
Roger S. Penske
Donald L. Runkle
John D. Sheehan
Patricia C. Sueltz
Thomas H. Wyman

## FTI CONSULTING, INC.

### STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated as of May 25, 2006. The Engagement letter and the attachments thereto (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1. **Reports and Advice**

   1.1 **Reliance on drafts** – You acknowledge that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by us as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

   1.2 **Our responsibility for final reports** – In the event we will be acting as independent experts, our reports or advice must be objective and impartial. While we will be prepared to discuss draft reports, which do not constitute our final opinion, the content of our final report is a matter for us alone.

   1.3 **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of Shearman and the Clients and only in connection with the purpose in respect of which the Services are provided. Unless in connection with the above-referenced actions or required by law, neither Shearman nor the Clients shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent (which will not be unreasonably withheld or delayed). In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2. **Information and Assistance**

   2.1 **Provision of information and assistance** – Our performance of the Services is dependent upon the Clients providing us with such information and assistance as we may reasonably require from time to time.

   2.2 **Punctual and accurate information** – Delphi shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. Delphi shall also notify us if it subsequently learns that the information provided is incorrect or inaccurate or otherwise should not be relied upon. FTI will notify the Company promptly if it believes the Company is not meeting its obligations in providing required information on a timely basis.

6

2.3    No assurance on financial data – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Delphi management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of Delphi.

2.4    Prospective financial information - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of Delphi.

3.    Additional Services

3.1    Responsibility for other parties – Delphi shall be solely responsible for the work and fees of any other party engaged by it to provide services in connection with the Engagement regardless of whether such party was introduced to Delphi by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to Shearman or the Clients without Shearman's or the Clients' written authorization.

4.    Confidentiality – It is understood that: (a) FTI will keep confidential all information obtained, or analyses developed, in connection with the above-referenced actions or any related actions with respect to which Shearman may seek its advice, unless FTI is required by legal process to disclose such information. In such a case, FTI will give prompt notice to Shearman to allow Shearman time to object to such process, obtain a protective order or take other reasonable action; (b) FTI will use such confidential information solely in connection with its engagement by Shearman on the Clients' behalf; and (c) FTI will not consult for, or otherwise represent, any other person or entity in connection with the above-referenced actions.

5.    Termination

5.1    Termination of Engagement with notice – Shearman may terminate the Engagement Contract for whatever reason upon written notice to us. Upon receipt of such notice, we will stop all work immediately, but Delphi will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    Continuation of terms – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not

limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.3, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

5.3 **Document Disposition** – At the termination of this project, FTI will return to Shearman all documents and other materials associated with its work as a consultant to Shearman, including copies of documents that have been provided to it in connection with its work pursuant to this agreement or that contain in any way any theories, opinions, information, or other materials disclosed or provided to it in connection with its work as a consultant. With Shearman's prior consent, FTI may elect to destroy all such materials at the termination of this project.

6. **Liability Limitation; Waiver of Jury Trial**

6.1 **Limitation of liability**—Delphi agrees that FTI and any of its subsidiaries and affiliates, officers, directors, shareholders, agents, employees, subcontractors and/or independent contractors furnished by FTI to perform the Services (collectively, "Personnel") shall not have any liability to Shearman, the Clients or to any third party claim as a result of Shearman's retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by a final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of FTI or its Personnel in respect of whom such liability is asserted or as otherwise set forth herein or in a separate document. Without limiting the generality of the foregoing, in no event shall FTI or its Personnel be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

6.2 **WAIVER OF JURY TRIAL**—TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, DELPHI AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

7. **Governing Law and Jurisdiction**-The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. Notwithstanding the foregoing, while the Company is in bankruptcy, the U.S. Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") shall have exclusive jurisdiction over the Engagement Contract and all references to other courts in this paragraph shall be deemed to apply to the Bankruptcy Court only.

## INSTRUCTIONS FOR COMPLETING LAW FIRM/CONSULTANT/EXPERT INVOICES

The attached invoice form should be submitted with all original invoices for services rendered in connection with all legal matters involving Delphi Automotive Systems and its U.S. subsidiaries submitted by law firms or consultants and experts providing legal-related services. Please submit invoices monthly.

---

**CERTAIN BASIC INFORMATION IS REQUIRED TO PROCESS AN INVOICE. THE INVOICE CANNOT BE PROCESSED WITHOUT THIS INFORMATION:**

**Case Matter Name:** If you do not know the case/matter name, please contact the responsible Delphi Attorney or Legal Assistant.

**Case Matter No.:** If you do not know the case/matter number, please contact the responsible Delphi Attorney or Legal Assistant. Note that only one case/matter may be billed on an invoice.

**Firm Employer Identification Number:** Please include your firm's EIN on the invoice.

**Invoice No.:** Each invoice must be specifically identifiable by means of a unique Invoice Number. In other words, no two invoices should have the same Invoice Number. The Invoice Number should consist of no more than ten characters (numeric and/or alpha). Please do not reuse invoice numbers submitted to Delphi previously.

**Insurance No.:** Please include any insurance number on the invoice (Sedgwick for those matters covered by Delphi's insurance carrier or ESIS for those matters covered by GM's insurance carrier).

---

**Approval:** All invoices must be signed on behalf of the firm.

### ANALYSIS OF FEES FOR PERSONS PERFORMING SERVICES DURING THIS BILLING PERIOD

**Last Name, First Initial:** List only persons who performed services during the billing period covered by the invoice. Partial hours should be stated as a decimal fraction, i.e., 20 minutes = .33.

**This Bill:** Under the category "This Bill," please do not include any past due amount. Past due amounts should only be included in the "Cumulative Totals."

**Cumulative Totals:** Amounts for "This Bill" should be included in "Cumulative Totals." (The amounts shown under "This Bill" and "Cumulative Totals" should be the same on each line on the first billing for each case/matter using the new invoice format.)

## GENERALLY

Delphi will reimburse a firm for reasonable and actual out-of-pocket payments made to third-party vendors (i.e., Delphi will not pay for markups or surcharges added by the firm) for the following items:

- Air freight/express mail deliveries
- Bond fees and premiums
- Coach-class air fare (lowest available rate/class)
- Computerized Delphi database research
- Computerized legal research (e.g., Lexis, Westlaw)
- Court reporter fees
- Expert witness fees
- Filing fees
- Inside photocopy (up to 10 cents per page)
- Local business transportation (e.g., taxi fares)
- Long distance telephone charges (for voice, fax or data)
- Outside messenger services
- Outside photocopy, binding, and printing services
- Postage
- Travel (airfare, hotel, rental car)

Delphi will not pay for:

- Billing of time related to professional services rendered
- Books/subscriptions
- Charges related to overall case management
- Creating, updating or organizing litigation or case files
- Distribution of documents, pleadings, correspondence and materials internally or to client
- Entertainment items (movies, books, alcohol, etc.)
- Fax communications (except long distance telephone charges)
- Hourly fees while traveling
- Inside photocopy (more than 10 cents per page)
- Internal case docketing activities
- Internal firm information technology charges
- LEXIS/NEXIS/Westlaw charges beyond the expenses actually incurred by the firm
- Local meals
- Local personal transportation (taxi/limousine to/from home)
- Local telephone charges
- Membership fees
- Office supplies
- Overtime charges
- Room service or excessive meal expenses
- Secretarial/clerical charges
- Storage charges
- Time spent copying documents or materials
- Transportation expenses or time spent traveling between firm offices
- Word processing

Page 2 of 2 (Cur. 02-09-06)