IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
          In re                              :    Chapter 11
                                             :
DELPHI CORPORATION, et al.,                  :    Case No. 05-44481 (RDD)
                                             :
                              Debtors.       :    (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### AFFIDAVIT OF SERVICE

I, Staci McFadden, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On October 10, 2006, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via overnight delivery:

1) Debtors' Answer to Motions of H.E. Services Company and Robert Backie for Leave to Appeal (Docket No. 5267) [a copy of which is attached hereto as Exhibit B]

Dated: October 11, 2006

_/s/ Staci McFadden_
Staci McFadden

Subscribed and sworn to (or affirmed) before me on this 11th day of October, 2006, by Staci McFadden, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : _Shannon J. Spencer_

Commission Expires: _06/20/10_

# EXHIBIT A

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | Prepetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | Counsel to Official Committee of Unsecured Creditors |
| Lefkowitz, Hogan & Cassell, LLP | Michael D. Cassell | 350 Jericho Turnpike | Suite 300 | Jericho | NY | 11753 | |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | Counsel to United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

10/11/2006 9:42 AM
HE Services and Backie combined list

# EXHIBIT B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:
Toll Free:  (800) 718-5311
International:  (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | Case No. __-___ |
| | : | |
| In re | : | On appeal from the United States Bankruptcy |
| | : | Court for the Southern District of New York |
| DELPHI CORPORATION, et al., | : | |
| | : | Chapter 11 |
| Debtors. | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' ANSWER TO MOTIONS OF H.E. SERVICES COMPANY AND
ROBERT BACKIE FOR LEAVE TO APPEAL

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit, in accordance with Rule 8003(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), this answer to the motions (Bankruptcy Docket Nos. 5206 and 5207)

of H.E. Services Company and Robert Backie, Majority Shareholder (collectively, "H.E.

Services") for leave to appeal, under Bankruptcy Rule 8003, from the August 11, 2006 Order

(Bankruptcy Docket No. 4897) of Bankruptcy Judge Robert D. Drain (the "Bankruptcy Court

Order"), which denied H.E. Services' request for relief from the automatic stay to pursue a state

court claim,[1] and respectfully represent as follows:[2]

    1.    The Motion seeks interlocutory review of the Bankruptcy Court Order

under 28 U.S.C. § 158(a)(3).  The Motion, however, appears unnecessary because the

Bankruptcy Court's order denying relief from the automatic stay to pursue various claims in a

nonbankruptcy forum is apparently a final order that would be entitled to appeal as of right under

28 U.S.C. § 158(a)(1).  See, e.g., Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax

Indus.), 907 F.2d 1280, 1284-85 (2d Cir. 1990) (holding that denial of relief from automatic stay

in bankruptcy is equivalent to permanent injunction and is thus final order); In re Chateaugay

Corp., 880 F.2d 1509, 1511-12 (2d Cir. 1989); Pegasus Agency, Inc. v. Grammatikakis (In re

Pegasus Agency, Inc.), 101 F.3d 882, 885 (2d Cir. 1996); FDIC v. Niagara Mohawk Power Corp.

---

[1]    Because both motions are identical in content, they are referred to herein collectively as the "Motion."  Although H.E. Services filed and captioned the Motion and its supporting memorandum as one seeking relief under Bankruptcy Rule 8003, that Rule merely provides the procedural requirements for a party seeking an interlocutory appeal under 28 U.S.C. § 158(a)(3).

[2]    Although the response to the Motion required by Bankruptcy Rule 8003(a) is referred to as an "answer," the Debtors do not believe that the rule requires admission or denial of each factual allegation in the Motion.  Nonetheless, the Debtors deny any allegations that the Debtors engaged in discriminatory conduct, violated 42 U.S.C. § 1981, or misled the federal government or H.E. Services.

2

(In re Megan-Racine Assocs., Inc.), 102 F.3d 671, 675 (2d Cir. 1996); In re MacInnis, 235 B.R.

255, 258 (S.D.N.Y. 1998).

      2.      Nevertheless, if this Court were to find that the Bankruptcy Court Order is

not a final order appealable under 28 U.S.C. § 158(a)(1), H.E. Services has failed to meet the

standard necessary for obtaining interlocutory review.  To be eligible for interlocutory review

under 28 U.S.C. § 1292(b),[3] an order being appealed must involve a controlling question of law

over which there is a substantial ground for difference of opinion, and it must be shown that an

immediate appeal from the order may materially advance the ultimate termination of litigation.

28 U.S.C. § 1292(b).  Additionally, leave to appeal is warranted only when the movant

demonstrates the existence of "exceptional circumstances," see, e.g., In re Alexander, 248 B.R.

478, 483 (S.D.N.Y. 2000), to overcome the "general aversion to piecemeal litigation,"  In re

AroChem Corp., 176 F.3d 610, 619 (2d Cir. 1999).

      3.      In its Motion, H.E. Services states that the question to be determined is

one of "pure law," i.e., whether a discrimination claim constitutes a personal injury tort claim as

that phrase is used in 28 U.S.C. § 157(b)(2), (5), which claim may not be tried by a bankruptcy

court.  In ruling on the stay relief motion below, however, the Bankruptcy Court did not find the

answer to that question dispositive for the purposes of its ruling. Therefore, even if this Court

were to decide the question presented in H.E. Services' favor, the Bankruptcy Court Order should

not be reversed.  In fact, in ruling on H.E. Services' request for relief from the automatic stay, the

---

[3]    In deciding whether to grant leave to appeal under 28 U.S.C. § 158(a)(3), reviewing
courts, including a majority of courts in this District, have applied the standard set forth
in 28 U.S.C. § 1292(b), which governs the appealability of interlocutory District Court
orders to the Courts of Appeals.  See, e.g., In re Adelphia Communications Corp., 333
B.R. 649, 658 (S.D.N.Y. 2005); Urban Retail Props. v. Loews Cineplex Entm't, No. 01
Civ. 8946, 2002 WL 535479, at *4 (S.D.N.Y. Apr. 9, 2002); In re Alexander, 248 B.R.
478, 483 (S.D.N.Y. 2000); In re MacInnis, 235 B.R. 255, 263 (S.D.N.Y. 1998).

Bankruptcy Court considered eight separate factors (July 19, 2006 Transcript, attached hereto as

Exhibit A, at 39:6-18) (Bankruptcy Docket No. 4996), and did not consider the 28 U.S.C.

§ 157(b)(2), (5) issue dispositive.[4]  (June 19, 2006 Transcript, attached hereto as Exhibit B, at

46:6-7 (Bankruptcy Docket No. 4543); July 19, 2006 Transcript 40:9-12.)   Thus, the 28 U.S.C.

§ 157(b)(2), (5) issue actually presents a mixed question of law and fact, which is not suitable for

interlocutory review.  See, e.g., SEC v. First Jersey Secs., Inc., 587 F. Supp. 535, 536 (S.D.N.Y.

1984) ("The Court's decision to strike the lost files defense was predicated at least in part on

specific factual findings . . . . [A]n appeal would necessarily present a mixed question of law and

fact, not a controlling issue of pure law.  Such an order is not appropriate for certification

pursuant to 28 U.S.C. § 1292(b).").

4.      Similarly, H.E. Services has not made a sufficient showing that there is a

substantial ground for difference of opinion.  In addition, H.E. Services has made no showing

that an appeal from the Bankruptcy Court Order would materially advance the ultimate

termination of litigation, or that exceptional circumstances warrant interlocutory review.

<u>Notice</u>

5.      Notice of this answer has been provided in accordance with the

Bankruptcy Rules.  In light of the nature of the relief requested, the Debtors submit that no other

or further notice is necessary.

---

[4]     The complaint that H.E. Services seeks relief from the automatic stay to prosecute in the
state court ahead of other creditors (the "Amended Complaint") further illustrates the
multifaceted analysis required to determine the stay relief motion.  In addition to the
discrimination cause of action, the Amended Complaint includes counts for negligent
misrepresentation, fraudulent misrepresentation, silent fraud, bad-faith promise,
promissory estoppel, breach of contract, and breach of contract under the Uniform
Commercial Code.  (Amended Complaint attached to Motion as Exhibit 3).

## Memorandum Of Law

6.      Because the legal points and authorities relied upon are incorporated

herein, the Debtors respectfully request that the requirement of the service and filing of a

separate memorandum of law under Local Civil Rule 7.1 be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order

denying H.E. Services' and Robert Backie's Motion and granting the Debtors such other and

further relief as is just.

Dated: New York, New York
       October 10, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP


By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       Albert L. Hogan III (AH 8807)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

                - and -


By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Exhibit A

1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 05-44481

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6

7  DELPHI CORPORATION,

8

9          Debtor.

10

11  - - - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17                July 19, 2006

18                10:08 AM

19

20  B E F O R E:

21  HON. ROBERT D. DRAIN

22  U.S. BANKRUPTCY JUDGE

23

24

34

1    they may not either be able to hear you or speak to us, so we

2    should --

3            MR. BUTLER:  Not a problem.  I was just trying to see

4    if they were in the courtroom to save them some time.  But they

5    would come later in the agenda anyway at some point, Your

6    Honor.

7            THE COURT:  Okay.  Very well.

8            MR. BUTLER:  Continuing then with the contested

9    docket, the first matter is Docket No. -- or matter number 38

10   on the agenda, which is the H.E. Services Company lift-stay

11   motion at Docket No. 2705.  Your Honor will recall that this

12   was dealt with at the last omnibus hearing on a preliminary

13   hearing basis but that the Court adjourned the motion for final

14   hearing at today's omnibus hearing because H.E. Services argued

15   for the first time at the prior hearing that the discrimination

16   aspect of its commercial litigation suit amounted to a personal

17   injury tort claim under 28 U.S.C. 157(b)(5) and thus they

18   argued the bankruptcy court did not have jurisdiction to

19   adjudicate this claim.

20           The Court also, because this had been raised for the

21   first time, granted leave to the debtors if the debtors chose

22   to -- didn't direct us to but gave us leave to file a

23   supplemental objection on that limited issue, which we did.  We

24   did file the supplemental objection at Docket No. 4532.  And

25   I'm not going to argue that, Your Honor, here.  I think the

35

1    objection is clear on its face.  We've pointed to the cases in

2    the Second Circuit which make it clear that this does not fall

3    within 137(b)(5) here in the Second Circuit and also we

4    distinguished the case is cited by the movant.  So we have

5    nothing further, Your Honor, on this matter.

6              THE COURT:  Okay.

7              MR. MASTROMARCO:  Thank you, Your Honor.  Victor

8    Mastromarco on behalf of Mr. Backie and H.E. Services.  And I'd

9    like to indicate in response to their position set forth in

10   their brief that there's no mention of the fact either here

11   today or in their brief that Mr. Backie is an individual

12   plaintiff in the case.  H.E. Services is also seeking that same

13   protection under the U.S. Constitution Section 1981.  And,

14   again, H.E. Services is an individual as defined under Section

15   1981 in the case law.

16             The cases that are cited by the debtor in their brief

17   to the Court invite the Court to determine -- well,

18   essentially, there's a narrow issue for the Court, as I see it.

19   And that is, whether or not 157(b)(5) is to be given a narrow

20   construction or a broad construction or somewhere in between.

21   The defendants have been taking the position, essentially

22   citing two very old cases, that the Court should narrowly

23   construe 157(b)(5) and to do so, the Court would have to strain

24   and change the plain language of 157(b)(5).  The defendants

25   want this Court to include the words bodily injury into the

36

1    statute.  And it's not included.  And I'm reading the

2    157(b)(5).  In pertinent part it reads, "the district court

3    shall order that personal injury tort and wrongful death claims

4    shall be tried in the district in which the bankruptcy case is

5    pending or in the district court in the district where the

6    claim arose as determined by the district court where the

7    bankruptcy case is pending."

8         The narrow approach, as I indicated, would require

9    this Court to construe that statute as putting words in there

10   that, strictly construed, it doesn't have.  And, certainly,

11   Congress, Your Honor, knew how to say the words personal bodily

12   injury when it wanted to.  As an example, see 11 U.S.C. Section

13   522(d)(1).

14        This also -- this type of approach invites the Court

15   to interpret pleadings that were drafted, and certainly in this

16   case, before this proceeding was filed.  Again, the case is

17   cited by the defendants.  There's only two of them that are

18   cited in their brief.  This Vinci case, V-I-N-C-I, versus Town

19   of Carmel and there was another case, too.  It was the Cohen

20   case.  These cases are seventeen years old and have been

21   heavily criticized by the Circuit.

22        As an example, in the case that I cited to the Court

23   during the last omnibus hearing was the In Re Ice Cream

24   Liquidation, Inc. case and in that particular case, which, by

25   the way, is the only case that's been cited to the Court where

37

1  Section 1981 is being discussed, in that particular case,

2  certainly the Court took a middle ground in reviewing these

3  things. And, basically, the Court talked about how some of the

4  Circuits have taken this position of a broad construction. The

5  Court didn't think that that was necessarily the way to go but

6  also the Court looked at the narrow construction and rejected

7  that out of hand. I would note that what's important in the In

8  re Ice Cream Liquidation case is if 157(b)(5) is applicable,

9  then this Court does not have jurisdiction to make any

10 decisions as to the discrimination portion of the complaint.

11 Certainly, and I would just read from that case just briefly

12 here, if I could, Your Honor, "here it is not necessary for

13 this Court to determine whether it has any jurisdiction" -- and

14 italicized "any" -- "under Section 157(b)(5) over that portion

15 of the claim objection dealing with the sexual harassment

16 successor liability claim or whether such jurisdiction would be

17 core or noncore under Section 157(b)(2). That is because

18 plaintiff's arguments for relief from stay and abstention only

19 grow stronger as the Court's jurisdiction in respect of the

20 sexual harassment successor liability claim is diminished. As

21 will be apparent from discussion below, the key consideration

22 here is that this Court has no" -- and italicized -- "no

23 jurisdiction to try that portion of the claim objection which

24 relates to the sexual harassment successor liability claim."

25 And, Your Honor, that's a 2002 opinion. And that's how the

38

1    Courts have interpreted 157(b)(5), not based on some eighteen

2    year old case on a bankruptcy that was filed in 1981.

3             THE COURT:  What was the section you quoted to me?

4    Didn't you say 1122?  I just didn't hear it.

5             MR. MASTROMARCO:  Just a moment.  If I wrote it down

6    wrong, I apologize.  I believe it was 11 U.S.C. 522 --

7             THE COURT:  522.

8             MR. MASTROMARCO:  --(d)(1).

9             THE COURT:  Okay.

10            MR. MASTROMARCO:  And those words appear in that

11   particular section.  I mean, certainly, again --

12            THE COURT:  No, no.  I just wanted to make sure I

13   heard it.  I thought I heard you incorrectly.

14            MR. MASTROMARCO:  We ask for strict construction of

15   the statute, Your Honor.

16            THE COURT:  All right.  I have in front of me a

17   motion by H.E. Services and Robert Backie for relief from the

18   automatic stay to pursue in the Eastern District of Michigan

19   their pending pre-petition litigation alleging among other

20   things breach of contract, promissory estoppel on this

21   representation and civil rights violations.

22            As with every request to obtain relief from the

23   automatic stay in respect of an unsecured claim, including this

24   here, to pursue pre-petition litigation, the Court considers

25   those factors laid out by the Second Circuit.  In its Sonnax

39

1    case, 907 F.2d 1280 at 1286 (2d. Cir. 1990) that are relevant

2    to determine whether there is a basis even with respect to an

3    unsecured claim to permit the liquidation of that claim

4    notwithstanding the automatic stay.  Based on my review of the

5    papers and the factors, I conclude that the stay should not be

6    lifted.  The relevant factors here are whether relief would

7    result in a partial or complete resolution of the issues, lack

8    of any connection with or interference with the bankruptcy case

9    whether a specialized tribunal with necessary expertise has

10   been established to hear the cause of action, whether the

11   debtors' insurer has assumed full responsibility for the

12   defense, whether the action primarily involves third parties,

13   the interest of judicial economy and the expeditious and

14   economical resolution of litigation, whether the parties are

15   ready for trial in the other proceeding and the impact of the

16   stay on the parties and the balance of harms.  And, by the

17   parties, I include not only the debtors but their other

18   unsecured creditors.

19         The litigation is not, based on my understanding,

20   particularly well developed in the Michigan court.  Litigation,

21   importantly, does not appear to be covered by insurance so

22   recovery would be -- you know, if there's a ruling favorable to

23   the plaintiffs against the debtors' estate, and I believe that

24   at this stage is the case, it is not therefore appropriate to

25   force the debtors to engage in such litigation to liquidate a

40

1    claim well in advance of a general claim liquidation procedures

2    in the case.  As noted by Mr. Butler this morning, for the

3    first time at oral argument at the preliminary hearing on this

4    matter, counsel for the movants raised the issue that the

5    Court, if the litigation were ultimately to be tried in an

6    adversary proceeding, would not have jurisdiction under 28

7    U.S.C. 157(b)(2)(O) which provides that personal injury, tort

8    or wrongful death claim are solely from the district court's

9    determination.  As I noted at that hearing, if that fact or if

10   that assertion were true as a matter of law, that would be an

11   additional factor, although not dispositive, in the Sonnax

12   analysis.  It would not be dispositive because the Courts have

13   recognized that notwithstanding Section 157(b)(2)(O) the

14   bankruptcy court may generally deal in the preliminary stages

15   with personal injury claims.  However, it would be a

16   significant factor in that this Court could not ultimately

17   determine the matter if it were to be litigated in an adversary

18   proceeding.

19        However, based on the supplemental briefs filed on

20   the matter as well as the Court's own research, I conclude that

21   the law in the Southern District of New York in respect of this

22   type of claim is contrary to the movants' contention.  While

23   this is not a dispositive ruling on the Section 157(b)(2)(O)

24   issue, it appears to me that the law in the Southern District,

25   including at the district court level, as well as a proper

41

1    reading of the statute, would limit the statute so that it

2    would modify to this type of commercial dispute. See, in

3    addition to the cases cited by the debtors in their

4    supplemental memorandum, In re Finley, 194 B.R. 728, 734

5    (S.D.N.Y. 1995) and In re Cohen 107 B.R. 453, 455 (S.D.N.Y.

6    1989).

7            So I'll deny the motion at this time and you can

8    submit an order to that effect, Mr. Butler, after running it by

9    counsel.

10           MR. BUTLER:  Thank you, Your Honor.

11           THE COURT:  Okay.

12           MR. BUTLER:  Your Honor, the next matter on the

13   agenda is matter number 39.  This is the MobileAria Sale motion

14   at Docket No. 4040.

15           Your Honor, we are here today to deal with the

16   Court's approval on that request, the Court's approval for the

17   sale of substantially all the assets of MobileAria, Inc., one

18   of the debtors in these Chapter 11 cases, to Wireless Matrix

19   U.S.A., Inc.

20           As Your Honor may recall, we were here at a prior

21   hearing in getting approval of bid procedures.  We got approval

22   of bid procedures with respect to an asset sale and purchase

23   agreement with Wireless Matrix U.S.A., Inc. which was the

24   stalking horse in connection with this transaction.  And there

25   were procedures that were established by the Court at the prior

Exhibit B

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481AM

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DELPHI CORPORATION, et al.,

9

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  June 19, 2006

19                  10:10 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

36

1        MR. BUTLER:  Your Honor, the next matter up is, going

2   back to the agenda order, is matter number 13.  This is the H.E

3   Services Company lift-stay motion filed at Docket No. 2705 with

4   related pleadings as indicated on the amended agenda.

5        This involves a lift-stay matter to deal with pending

6   actions arising out of a minority supplier relationship.  And I

7   believe Counsel is here to present the motion.

8        MR. MASTROMARCO:  Good morning, Your Honor.  Victor

9   Mastromarco on behalf of the claimant.  This is Docket No. 2705

10  originally filed.  Our lift-stay motion as it relates to a

11  filing, a complaint that was filed on February 16th, 2005

12  before  the  United  States  District  Court  for  the  Eastern

13  District of Michigan, northern division.

14       The claims involve a number of different claims.

15  One, in particular, that I want to emphasize is the civil

16  rights violations pursuant to 19 -- Section 1981.  There are

17  also claims for promissory estoppel and misrepresentation and

18  breach of contract.  Originally, after the complaint was filed

19  in February, Delphi responded -- the debtor responded with a

20  motion to dismiss which resulted in an amended complaint being

21  filed which we have provided to the Court.  When Delphi failed

22  to answer the amended complaint, we applied for a default

23  before the judge and Delphi then later responded with another

24  motion to dismiss.  Those actions were pending.  They had been

25  set for hearing for November 2 at the same time as a scheduling

37

1    conference had been set and as a result, the stay was entered

2    in October so those matters did not go forward.

3            THE COURT:  Was that first motion to dismiss heard?

4    Or did the claimant just amend the complaint?

5            MR. MASTROMARCO:  It was heard and it resulted in an

6    amended complaint being filed.

7            THE COURT:  Okay.

8            MR. MASTROMARCO:  The -- I wanted to indicate that

9    because the complaint is premised in part of 42 USC 1981 which

10   states a discrimination claim on behalf of not only Mr. Backie,

11   who is a minority in his individual capacity, but also on

12   behalf of H.E. Services, which is a minority company, and both

13   those claims the Courts have held in the past in this district

14   that discrimination claims should be handled akin to personal

15   injury claims and thus our subject to Section 157(b)(5).

16            In the case that I'd like to cite to the Court,

17   Erickson v. Erickson, at 330 BR 346, the Court -- and that's a

18   September 15, 2005 decision -- the Court states on page 349,

19   "pursuant to 28 USC 15" -- I'm sorry -- "157(b)(2)(o), a

20   bankruptcy court may not hear and determine a personal injury

21   tort claim."  Citing to the footnote, 157(b)(2)(o) provides in

22   relevant part that a bankruptcy court may hear and determine

23   proceedings affecting the adjustment of the debtor/creditor

24   relationship except personal injury tort claims.  157(b)(5)

25   provides "the district court shall order that the personal

38

1    injury tort and wrongful death claims shall be tried in the

2    district court in which the bankruptcy case is pending or in

3    the district court in the district in which the claim arose as

4    determined by the district court in which the bankruptcy case

5    is pending."

6            Although there are court rulings to the contrary, the

7    Court in Erickson agreed that -- with Judge Weil that "claims

8    alleging that a debtor illegally discriminated an employment on

9    the basis of race, creed, disability or sex are personal injury

10   tort claims."  Citing the Strands v. Ice Cream Liquidation,

11   Inc. case at 281 BR 154 at 161.

12           The Court goes on to indicate --

13           THE COURT:  None of this is briefed in your papers,

14   right?

15           MR. MASTROMARCO:  No, we did not cite these cases,

16   Judge.

17           THE COURT:  Or the issue, generally, right?

18           MR. MASTROMARCO:  Well, you're right.  We'd ask the

19   Court to take judicial notice of Section 157(b)(5).

20           THE COURT:  Okay.

21           MR. MASTROMARCO:  We would indicate that the Erickson

22   case also citing In re New York Medical Group, P.C. --

23           THE COURT:  I'll read it.  You don't have -- this is

24   not productive.  I'll read the case.

25           MR. MASTROMARCO:  All right.  The upshot is this.  If

39

1   we apply the Sonnax Industry standards to a discrimination

2   case, because this Court cannot liquidate the discrimination

3   claims, the Court in Erickson comes to the conclusion that it's

4   readily apparent that the movant is entitled to relief from the

5   stay so she may liquidate the claim.

6            Here is the same situation.  We must liquidate that

7   claim or those claims in order to place a value for the Court

8   then to determine how that would fit in with the bankruptcy

9   situation.  That's all we're asking the Court to do, is to

10  allow us to go back to the U.S. District Court, allow us to

11  liquidate that claim there and then -- and those other claims

12  there since the judicial economy would suggest that all the

13  claims should be allowed and grant an order accordingly.

14           THE COURT:  Okay.

15           MR. BUTLER:  Your Honor, just -- seeing as Counsel

16  dealt with the history, let me just briefly address the history

17  of this case.  The complaint was originally filed out of a

18  minority supplier relationship alleging that the supplier

19  didn't get the contracts it would have liked to have gotten

20  from Delphi.  A complaint was filed on February 16th of '05.

21  It was dismissed on May 19th of 2005.  There was an amended

22  complaint filed on June 9th of 2005.  The answer would have

23  been due on or about July 9th.  The answer was filed, in fact,

24  on July 11th.  Counsel tried to get a default judgment.  The

25  clerk would not enter it because there was a power outage in

40

1    Saginaw, Michigan during that period of time and there was some

2    issue about the ability to actually prepare or file anything

3    over a couple day period.  And so the Court deemed the filing

4    on July 11th timely, although Counsel has filed a motion to

5    dismiss which is pending -- excuse me, a motion for default

6    judgment, which is pending before that Court.

7            On August 24th, 2005, Delphi filed its second motion

8    to dismiss and we concur that there was a scheduling conference

9    set for November 2nd of 2005 which did not take place.

10   Instead, the federal judge in that case administratively closed

11   the litigation on October 24th, 2005 following the commencement

12   of Chapter 11 cases on October 8th.

13           Now, that's the sum and substance of the activity in

14   this litigation which is in its infancy.  And the debtors, you

15   hear, is whether counsel chooses to color the complaint a

16   discrimination complaint or a breach of contract complaint, as

17   they do in their complaint, to where they talk about breach of

18   contract and other theories.  The fact is that we think under

19   Sonnax, and we've advised counsel of this -- he knows that we

20   don't have insurance to cover the liability associated with

21   this particular claim -- that we're not prepared for trial.

22   This is involved in its infancy.  There's been nothing in this

23   case beyond the second motion to dismiss to be filed.  There's

24   been no discovery of any kind.  And we believe, under Sonnax,

25   Your Honor, that the balance of the harms weighs very much in

41

1    the favor of denying the H.E. Services motion at this point in

2    the debtors' Chapter 11 case.

3             I point out, Your Honor, that H.E. Services filed a

4    supplement to its motion at Docket 3263 where it said that this

5    motion  was  very  similar  to  the  Automotive  Technologies

6    International where you granted some relief at Docket No. 3200.

7    The facts are those cases are very different.  The ATI cases

8    had been filed years earlier and the ATI cases were actually on

9    appeal, the issues had been fully briefed in the appellate

10   courts and the parties were simply waiting oral argument.  A

11   very different case than a complaint filed that had been

12   dismissed and then refiled and was waiting a second motion for

13   dismissal.

14            Your Honor, we believe that, as I said and as our

15   responsive papers said, that under the Sonnax factors, we think

16   they clearly weigh in favor denying the motion at this time.

17   Thank you.

18            THE COURT:  Do you have any view on the 28 USC

19   157(b)(5) point?

20            MR. BUTLER:  Your Honor, I hadn't reviewed the matter

21   because -- you're right, it hadn't been raised or briefed.

22   But, even if it were so, I don't think that with respect to

23   Sonnax, says that gives anyone -- I mean, the carte blanche to

24   come in and get those stay lifts in every case.  I mean, if

25   that were the law, then anyone who had any kind of a tort claim

42

1    here would always win their motion to lift-stay.  And that's

2    not the law in this district.  The fact is Sonnax still gets

3    applied against tort claims and against other claims that may

4    not ultimately be liquidated by Your Honor.  The fact is that

5    under Sonnax, this estate, at this moment in time, when we are

6    involved in some of the most sensitive issues in the case in

7    terms of the ultimate transformation, shouldn't have to be --

8    should have the protection of the automatic stay and not have

9    to deal with claims issues of this nature at this time.  And

10   that's why I think that because there's no insurance here,

11   because we would have to treat this as a full-blown hundred

12   million dollar litigation, as Counsel suggests, and have to

13   take the time to resources, both externally and internally, to

14   defend it, under Sonnax, at this point in our case, it would be

15   inappropriate to lift the stay to permit that.

16          And I don't think the 157 issue has -- while it may

17   have some bearing on it ultimately, at some future date, I

18   don't think it really comes into the calculus, Your Honor, in

19   weighing the harms and balancing the harms in terms of the

20   Sonnax factors for this hearing today.

21          THE COURT:  Okay.

22          MR. BUTLER:  Thank you, Your Honor.

23          MR. MASTROMARCO:  Briefly, Your Honor, may I respond?

24          THE COURT:  Sure.

25          MR. MASTROMARCO:  Not only does it -- is it an

43

1    important factor in the Sonnax analysis, but the cases that I

2    cited suggest that it's probably the only factor that the Court

3    can consider because of the fact that all these arguments that

4    are being made that we don't want to deal with it at this time,

5    we don't want to handle this at this time, this is going to

6    upset these other things, those claims have to be liquidated.

7    So, we have to deal with it now because we have to know, we

8    have to be able to put those claims back to the District Court

9    and I'd cite again to Erickson where they say "proof that the

10   debtor intentionally and maliciously injured the movant by

11   illegally discriminating against her necessitates proving the

12   underlying  discrimination  allegations  which  the  bankruptcy

13   court lacks jurisdiction to hear."  And that's Black Letter Law

14   in New York, Second Circuit.

15          So, I would ask that the Court allow us to go back to

16   the -- and when we look at the factors, we're saying is this

17   Court better equipped to handle it than the U.S. District Court

18   judge as it relates to these specific issues?  Yes, I think

19   that the U.S. District Court judge is a good form for this

20   matter to be tried.  He's familiar with the issues, he's dealt

21   with motions to dismiss -- and I'm not going to go and argue

22   with Mr. Burke today about what occurred in the lower court --

23   or in the district court, I should say -- but the fact is that

24   they have local counsel there.  They have them assigned not

25   only to the H.E. Services case, but they got the same counsel

44

1    assigned on the Cindy Palmer case, which we're going to argue

2    next.  And this is not going to be taking away from the

3    debtors' efforts in this case because they -- this Court has to

4    grapple with that liquidation issue.

5            And so, we would ask that the Court allow the

6    district court judge or -- lift the stay so that the district

7    court judge can hear these claims.

8            THE COURT:  Okay.  All right.  I have in front of me

9    a motion by H.E. Services for relief from the automatic stay to

10   pursue litigation in Michigan District Court that was pending

11   before the commencement of the debtors' Chapter 11 cases.

12           It's averred by the debtors, and I don't think

13   disputed by the movant, that there either is no insurance

14   coverage for this litigation or there's an issue as to whether

15   there is insurance covering the claim -- is obviously an

16   unsecured claim, as well, given that fact and given the Second

17   Circuit's case, In Re Sonnax Industries, 907 F2d. 1280 (2nd

18   Cir. 1990), which says that a movant seeking a lift from the

19   automatic stay must make an initial showing of cause.

20           I had originally believed, based on my review of the

21   papers, that I did not need to get into the various Sonnax

22   factors given that it did not appear that such an initial

23   showing had been made.  That is because, again, it's recognized

24   by the Courts in this district that relief from the automatic

25   stay to pursue the liquidation of an unsecured claim is

45

1    unusual, and extraordinary circumstances normally need to be

2    shown, such as the fact that there is full insurance coverage

3    or the claim is being liquidated really for the purpose of

4    going against a third party or there's a special tribunal in

5    which it is being heard.  It was not stated in the motion

6    papers,  but  it  was  stated  at  oral  argument,  that

7    notwithstanding in plain language of 28 USC Section 157(a)(5)

8    which deals with personal injury, tort and wrongful death

9    claims and was obtained by the plaintiffs' bar in light of the

10   mass tort asbestosis litigation that affected bankruptcy courts

11   and cases before the enactment of that provision that that

12   provision applies to at least one of the claims asserted in

13   this litigation which is an antidiscrimination civil rights

14   violation claim.

15           I will need to review the case law on that issue.

16   However, applying the Sonnax factors and giving the movant the

17   benefit of the doubt on that issue based on the representation

18   to the Court, I believe and find that there's a reasonable

19   likelihood that the debtor will prevail on the motion and,

20   therefore, I'm going to treat this as the preliminary hearing

21   on the motion and we'll adjourn to the next omnibus date under

22   362(e).

23           In looking at the Sonnax factors, it appears to me

24   that the only one of them that may apply here in the movant's

25   favor  is  the  factor  pertaining  to  whether  a  specialized

46

1    tribunal had been established to hear the cause of action.

2    And, of course, it's asserted that the District Court is not

3    particularly  a  specialized  tribunal  but  that  it  has

4    jurisdiction to the exclusion of the bankruptcy court with

5    regard to the trial of the matter under 28 USA Section

6    157(a)(5).  On the other hand, that rule may not be dispositive

7    given the status of the debtors' case.  Among other things, the

8    bar date has not run yet and the debtors are in the early

9    stages, if at all, in dealing with the claims against them.

10            So, again, it appears likely to me that the debtor

11   will prevail but I'll review this case law that's been asserted

12   and adjourn the hearing until the next omnibus date.

13            MR. BUTLER:  Thank you, Your Honor.  Your Honor, do

14   you want any more from the parties on this matter for the next

15   omnibus date or just that the Court's going to take it under

16   advisement?

17            THE COURT:  The debtors are free to file something if

18   they wish.  I'm not telling them that they have to.  I'll

19   review the case law myself, but if you want to file something,

20   you can do that.

21            MR. BUTLER:  Thank you, Your Honor.

22            MR. MASTROMARCO:  Your Honor, if the debtor does, I

23   would also like the Court to allow me to file a short brief

24   setting forth these issues that I've --

25            THE COURT:  Well, but you've already -- you took

47

1    today as the opportunity to do that and --

2            MR. MASTROMARCO:  A limited brief, Judge.

3            THE COURT:  -- in my mind, that's sufficient.

4            MR. BUTLER:  Your Honor, the next matter on the

5    agenda is matter number 14.  This is the Cindy Palmer lift-stay

6    motion filed at Docket No. 2708.  And again, I'll defer to

7    Counsel for presenting the motion.

8            MR. MASTROMARCO:  Victor Mastromarco on behalf of the

9    estate.  This is a personal injury cause of action where the

10   plaintiff's decedent was crushed in a machine and the case had

11   been filed originally back in 2001 and went through a lot of

12   discovery.  The trial court had granted a motion on behalf of

13   Delphi for summary -- what we call summary disposition, which

14   is similar to Rule 56 in federal court.  The case had gone to

15   the Court of Appeals and oral arguments had been set for

16   October 12, 2005 and the bankruptcy stay was entered three days

17   before that argument date.

18           What we're asking for is again, pursuant to Rule 157

19   that we've cited in the Backie matters, (b)(5), that we be

20   allowed to pursue this matter in the state appellate court or

21   have it removed to the federal district court to decide whether

22   it should go to the Court of Appeals and resume arguments

23   there.

24           We were at the end of the road with the Court of

25   Appeals, although that's the first stage of appellate review in

48

1    Michigan.  We would ask that we be allowed to do several

2    things:  number one, have the oral arguments since all the

3    briefs have been submitted by the parties.  Everyone is

4    ready -- was ready to go.  We had already prepared for the

5    hearing.  If in the event that the Court of Appeals rules

6    against us on that motion, we would ask that the Court also in

7    the same order allow us to avail ourselves of the application

8    procedures to the Supreme Court for the State of Michigan.  In

9    the event that we are successful, we would ask that the Court

10   allow us to go back down to the state court and have that Court

11   determine and liquidate the claim and then, of course, if, in

12   fact, we are successful, we would want that the Court here

13   would have exclusive jurisdiction over any of those issues

14   pertaining to how that would fit into the debtors' estate.

15            I am unaware -- I believe there may be insurance

16   involved but I cannot indicate that for a fact for the Court

17   because we never asked that when we were in the underlying case

18   and I haven't asked that here.

19            THE COURT:  Okay.

20            MR. BUTLER:  Your Honor, again, just with Counsel's

21   recitation of the record below, just so the record here is

22   clear, in 2001 there was a wrongful death action filed.  In

23   November 2002, there was -- summary disposition was granted in

24   favor of Delphi Corporation and a series of other defendants at

25   that time.  This made its way to the Michigan Court of Appeals

49

1    where it was to have been heard in oral argument on October

2    12th of 2005.  Obviously, our bankruptcy intervened as to

3    Delphi Corporation on October 8th and that argument did not

4    occur vis-a-vis the Palmer estate and Delphi Corporation.

5         It did continue as to all the other defendants on

6    November 8th, 2005.  The Michigan Court of Appeals affirmed the

7    orders of the circuit court granting defendants' motions for

8    summary disposition until the matter's been concluded as to all

9    of the parties.  We had indicated to Counsel, and I'll indicate

10   again on this record, that we would not oppose a modification

11   of the automatic stay, if that's what Counsel wants, to go and

12   have the same argument in front of the Michigan Court of

13   Appeals.  That matter has been fully briefed and we do believe,

14   as we have in some other matters, based on the Sonnax factors

15   and otherwise, that if that's what they want to do, it's not

16   undue hardship to expend the time and effort to go and make

17   that argument in front of the Court of Appeals.

18        We do think, Your Honor, however, should ask the

19   counsel to come back to this Court and justify a subsequent

20   time  under  the  Sonnax  factors  either  for  an  appellate

21   litigation in the Michigan Supreme Court and, certainly, going

22   back to beginning a trial on the merits, which is -- if somehow

23   that would occur.  There's been no trial, no discovery, none of

24   that has occurred and so this would be in its infancy again as

25   it relates to that.  And when I say no discovery, obviously

50

1    there's a motion for summary disposition so there was some

2    amount at that point but this has not been something that

3    would -- we think that the movants here are asking for too much

4    relief.

5           So, the debtors are prepared, Your Honor, to agree,

6    as we were, prior to appearing in court today, to a limited

7    modification of the stay to go back to the Michigan Court of

8    Appeals and conclude that phase of this litigation.  We'd ask

9    Your Honor to require the Palmer estate to come back to this

10   Court for any further relief beyond that and justify it under

11   the Sonnax factors at that time.

12          THE COURT:  Okay.  All right.  I have in front of me

13   a motion by Cindy Palmer as personal representative of the

14   estate of Michael Palmer for relief from the automatic stay to

15   pursue to its conclusion pending litigation in the State Court

16   in Michigan.

17          The debtor has consented to relief from the stay in

18   part to permit the conclusion of the pending appeal in the

19   Michigan State Court but not any subsequent appeal in the event

20   that the trial court is reversed -- a trial of the litigation.

21          As I said, in connection with the prior motion, when

22   an unsecured creditor seeks relief from the automatic stay to

23   pursue litigation, it needs to establish or pass an initial

24   burden of showing cause under the Second Circuit's Sonnax case.

25   If it meets that burden then it needs to -- the Court needs to