**Hearing Date: October 19, 2006**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x
                                              :
        In re                                 :        Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 (RDD)
                                              :
                                Debtors.      :        (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

DEBTORS' RESPONSE TO OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION FOR ORDER UNDER FED. R. BANKR. P.
3003(c)(3) AND 9006(b)(1) DEEMING CERTAIN PROOFS OF CLAIM TIMELY FILED

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"), hereby submit this response (the "Response") to the objection dated October 16,

2006 (the "Objection") of the Official Committee of Unsecured Creditors (the "Creditors'

Committee") to the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And  9006(b)(1)

Deeming Certain Proofs Of Claim Timely Filed dated September 29, 2006 (the "Motion"), and

respectfully represent as follows:[1]

Argument

1.      The Debtors filed the Motion as a result of an extensive investigation into

certain practices of The DRS Group ("DRS")[2] which the Debtors determined were very likely to

have resulted in some timely filed proofs of claim being recorded on the Claims Agent's claims

register as having been filed after the July 31, 2006 claims bar date in these chapter 11 cases (the

"Bar Date").  Specifically, as detailed at length in the Motion as well as the Declaration Of Dean

R. Unrue In Support of the Motion, executed October 18, 2006 and attached hereto as Exhibit A

(the "Unrue Declaration"), on the Bar Date, DRS last collected proofs of claim sent to the Post

Office Box at least two and one-half hours, and possibly as many as five hours, before the 5:00

p.m. deadline for claims to be received on the Bar Date.  The Debtors believe that this failure –

occurring on the highest volume claim filing day by far – may have resulted in some proofs of

claim which were timely filed pursuant to the Order Under 11 U.S.C. §§ 107(b), 501, 502, And

1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates

---

[1]      Capitalized terms used but not defined herein have the meanings ascribed to them in the
        Motion.

[2]      DRS was retained by this Court's claims and noticing agent in these cases, Kurtzman
        Carson Consultants LLC (the "Claims Agent"), to physically retrieve all proofs of claim
        from the post office box to which proofs of claim were to be mailed (the "Post Office
        Box"), as well as to receive from the clerk of the Court proofs of claim delivered to the
        Court by messenger or overnight courier.

2

05-44481-rdd    Doc 5343    Filed 10/18/06    Entered 10/18/06 16:08:57    Main Document
Pg 3 of 10

For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No.

3206) (the "Bar Date Order") to have been incorrectly designated as having been filed after the

Bar Date.

        2.      This error was compounded by DRS's decision to commingle all proofs of

claim collected by DRS from the Post Office Box beginning on the morning of August 1, 2006

(which would have included any proofs of claim put into the Post Office Box on the afternoon of

the Bar Date) and continuing through August 9, 2006 (collectively, the "Proofs of Claim") and to

erroneously file stamp the vast majority of such proofs of claim as having been received on

August 9, 2006.  As a result of these actions, the Debtors believe there is a very high likelihood

that a significant number of these proofs of claim were in fact timely received.  Therefore, the

Debtors determined that the appropriate course of action was to file the Motion to apprise this

Court of the issues raised by the actions of DRS and to request that this Court deem the Proofs of

Claim to be timely filed as a result of the uncertainty surrounding the date and time of the receipt

of each such Proof of Claim.

        3.      In the Objection, the Creditors' Committee expresses its desire to

minimize the total amount of claims ultimately allowed against the Debtors in these cases.  The

Debtors certainly share that desire and are working expeditiously to further those shared interests

in these cases, as evidenced by the Debtors' First Omnibus Claims Objection, in which the

Debtors objected to and sought disallowance of more than 3,500 proofs of claim.  The Debtors,

however, do not believe it is appropriate to minimize the claims pool at the expense of innocent

claimants whose rights would be prejudiced through no fault of their own if the Creditors'

Committee's Objection were sustained.

3

4.     The Creditors' Committee in the Objection expressly acknowledges that

some of the Proofs of Claim may in fact be timely, but concludes that "it is likely that no mail

was placed by the post office into the Post Office Box after 2:30 pm but before 5 pm" on the Bar

Date.  Objection ¶4.  The Creditors' Committee's conclusion is apparently based solely on one

conversation with an employee of the Bowling Green Post Office in which such employee stated

that mail is "almost always" placed into post office boxes before noon daily, unless mail "is

mistakenly placed in an incorrect [post office] box," "is incorrectly routed to a different station,"

or "was otherwise late arriving at Bowling Green."  Id.  Because neither the Debtors nor the

Creditors' Committee have any basis for ascertaining whether these alleged general procedures of

the Bowling Green Post Office were followed on the afternoon of the Bar Date, the Debtors do

not believe that the Creditors' Committee's bold conclusion, and the attendant harm to a group of

potential creditors, is sufficiently supported by these general and conclusionary statements of one

postal employee.

5.     Indeed, the Creditors' Committee's conclusion that it is quite likely that

none of the Proofs of Claim was timely filed is unreasonable.  July 31, 2006, the Bar Date, was

by far the highest volume claims filing date.  On that day, 2,328 proofs of claim were file

stamped as received.  The Creditors' Committee's conclusion thus hinges on the following two

assumptions as to the Bowling Green Post Office's practices on July 31, 2006: (a) the Bowling

Green Post Office perfectly adhered to its "usual" practice of sorting and placing mail in the post

office boxes before noon (as a single postal worked defined "usual") and (b) none of the typical

exceptions occurred (i.e., mail is sometimes mistakenly placed into the wrong post office box,

mail is sometimes mistakenly routed to the wrong station, and mail sometimes arrives late for

other reasons).  These assumptions are belied by the very facts adduced in the Creditors'

4

Committee's own investigation – the post office supervisor stated that it "almost always"

(Objection ¶4 (emphasis added)) adheres to its practice, thus conceding that sometimes it does

not.  Even if the Bowling Green Post Office operated at near perfection (i.e., sorted 95 percent of

the incoming mail by noon), that would still result in more than 116 timely filed claims that DRS

failed to pick up on the Bar Date.

       6.     Furthermore, the Debtors believe that several of the other premises

underlying the Objection – namely, that the Debtors' other creditors will be unduly prejudiced by

the relief sought in the Motion and that the burden should properly be placed on the individual

claimants who filed the Proofs of Claim to demonstrate that their claims were timely under the

standards provided by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,

507 U.S. 380 (1993) – are faulty.  First, the Debtors do not believe that any of the Debtors'

creditors is unfairly prejudiced by the relief sought in the Motion.  Pursuant to the Motion, the

Debtors do not now request that the Court allow any of the Proofs of Claim.  In fact, the Debtors

expressly reserve all of their rights to further object to any or all of the Proofs of Claim at a later

date on any basis whatsoever other than that such Proofs of Claim were not timely filed.  As the

Debtors state in the Motion, the Proofs of Claim have not yet been reconciled and the Debtors

have therefore not yet determined the likely amount at which such claims may eventually be

allowed.  Such claims will only be allowed in the amount that the Debtors or this Court

ultimately determine to be valid obligations of the Debtors.  Therefore, the Motion does not

provide the claimants under the Proofs of Claim with a windfall to the detriment of the Debtors'

other creditors, but rather seeks to avoid unjustly divesting such claimants of otherwise valid

rights under the Bankruptcy Code as a result of actions of DRS over which these creditors had no

control.

7.      Second, the Debtors assert that the Creditors' Committee's interpretation of

the standard under <u>Pioneer</u> is inapplicable to the facts here.  The Debtors do not dispute that the

burden of proof under Bankruptcy Rule 9006 is generally on the claimant to demonstrate that the

<u>Pioneer</u> standard has been met.  Further, as the Debtors expressly note in the Motion, the Second

Circuit has noted that it has taken a "hard line" in applying the <u>Pioneer</u> test.  <u>See</u> <u>Midland</u>

<u>Cogeneration Venture Ltd. P'Ship v. Enron Corp.</u> (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir.

2005) (stating that "[w]e have 'taken a hard line' in applying the <u>Pioneer</u> test"); <u>Silivanch v.</u>

<u>Celebrity Cruises, Inc.</u>, 333 F.3d 355, 368 (2d Cir. 2003) (same).[3]

8.      Courts applying this standard, however, have generally addressed

situations in which the claimant has actually missed a deadline and is therefore seeking relief

from that deadline.  Here, the Debtors are seeking the relief requested in the Motion because they

cannot determine with any reasonable level of confidence which of the Proofs of Claim was

timely filed and which was not.  Therefore, this is not a situation in which the claimant

erroneously missed a deadline and is thus required under the <u>Pioneer</u> standard to bear the burden

of demonstrating excusable neglect.  Rather this is a situation in which a party unrelated to the

claimants and over which none of the claimants can exert any control has made it impossible to

determine which of the Proofs of Claim is timely (such that the claimants would neither need

relief under Bankruptcy Rule 9006 nor be required to make any showing under <u>Pioneer</u>) and

which of the Proofs of Claim is untimely (such that the claimants would be subject to <u>Pioneer</u>).

In the cirumstances, the Debtors believe that it is inequitable to put the onus on a claimant

---

[3]      In <u>Silivanch</u>, the Second Circuit cautioned "that the equities will rarely if ever favor a
party who fail[s] to follow the clear dictates of a court rule, and that where the rule is
entirely clear, we continue to expect that a party claiming excusable neglect will, in the
ordinary course, lose under the <u>Pioneer</u> test." 333 F.3d at 366-67.

(whose claim may actually have been timely filed) to seek relief from the Court or risk having its

Proof of Claim automatically expunged pursuant to the provisions of the Bar Date Order.

9.      The Objection also appears to suggest that the relief sought by the Debtors

in the Motion is overly broad in scope.  As with all of the other assertions contained in the

Objection, however, scant factual support is offered.  In contrast, the Debtors have, throughout

their investigation of these issues, attempted to limit the scope of the relief sought in to the

Motion as much as possible.  Therefore, prior to filing the Motion, the Debtors reviewed each

proof of claim which was stamped by DRS as having been received from August 1, 2006 to

August 9, 2006 and excluded from the Motion all proofs of claim which were dated by the

claimant on or after August 1, 2006, except to the extent that the date was clearly in error (e.g., a

date in the future).  This resulted in the Debtors excluding 16 proofs of claim asserting liquidated

claims of more than $100,000.

10.      Furthermore, following the filing of the Motion, the Debtors have

continued to gather additional information on the issues raised by the Motion.  As a result of that

further investigation, the Debtors have determined that eleven of the Proofs of Claim listed on

Exhibit A to the Motion, which asserted aggregate liquidated claims in excess of $2.3 million,

were received on August 1, 2006 and were therefore not timely filed pursuant to the Bar Date

Order.[4]  The Debtors therefore no longer seek relief with respect to these claims pursuant to the

Motion.  Following the filing of the Motion, the Debtors became aware of one additional proof

of claim that falls within the parameters of the claims identified in the Motion and the Debtors

---

[4]      The eleven proofs of claim are claim numbers 15783, 15792, 15821, 15823, 15824, 15827, 15935, 15936, 15937, 15966, and 16013.

7

therefore seek to have that proof of claim (which asserts liquidated claims of approximately

$25,000) deemed timely filed.[5]

        11.     At all times during this process, the Debtors have also sought to provide as

much transparency as possible into the relief sought by the Debtors in the Motion.  Therefore, the

Debtors actively sought to facilitate informal discovery by the Creditors' Committee in advance

of, and following, its filing of the Objection.  In addition, the Debtors clearly disclosed in the

Motion that certain of the Proofs of Claim were filed by employees of the Debtors, some of

whom may constitute "insiders" of one or more of the Debtors pursuant to section 101(31) of the

Bankruptcy Code.[6]  Therefore, it should be clear to all parties-in-interest in these cases that the

Debtors have sought solely to provide fair and equitable treatment to all of their potential

creditors in these cases, which the Debtors believe is consistent with their reasonable exercise of

their fiduciary duties.

        12.     Finally, the Debtors note that the Creditors' Committee seeks to deny the

relief requested in the Motion and require each claimant affected by DRS's policies to file a

separate motion to have its proof of claim determined to be timely filed.  This proposal would, if

accepted, likely require these claimants, many of whom are individual employees and retirees of

the Debtors (see Exhibit B), to hire a New York lawyer, prepare a motion, prosecute the motion,

---

[5]     The proof of claim is claim number 16126.

[6]     Attached hereto as Exhibit B is a listing of all Proofs of Claim that the Debtors have
identified as potentially having been filed by current or former employees of the Debtors
or representatives thereof.  The Debtors do not believe that the vast majority of such
persons would constitute insiders of any of the Debtors.  Due to inconsistent names
occasionally being provided on Proofs of Claim, including married names and names of
spouses or other relatives, and the fact that the Proofs of Claim have not yet been
reconciled, the Debtors cannot be certain that Exhibit B is a complete listing of all Proofs
of Claim that may be asserted by or on behalf of Delphi's employee workforce, which
totaled more than 180,000 employees as of the Petition Date.

and take other steps to procure relief from this Court. This requirement would be very

burdensome to these innocent claimants who at least attempted to comply with, and may in fact

have complied with, the Bar Date Order. The Debtors do not believe that such a result is in the

best interests of the Debtors or any parties-in-interest in these cases.

13.     More importantly, the Debtors believe that the facts presented in the

Motion (which the Creditors' Committee does not materially dispute in the Objection) would

cause most, if not all, such motions to be granted by this Court. Courts in the Second Circuit

have repeatedly noted that their primary focus in considering a motion to allow a late proof of

claim is on the third Pioneer factor – the reason for the delay – including whether the delay was

within the reasonable control of the creditor. See Enron, 419 F.3d at 122 ("'we and other circuits

have focused on the third factor: "the reason for the delay, including whether it was within the

reasonable control of the movant."'" (internal citation omitted)); Silivanch, 333 F.3d at 368

(same). Because the failures of DRS summarized above and outlined in the Motion and the

Unrue Declaration were completely outside the reasonable control of the claimants filing the

Proofs of Claim, the facts thus present the rare situation in which a claimant will be able to meet

the third prong of the Pioneer test. Therefore, the Debtors respectfully assert that the Creditors'

Committee's proposed procedure would be excessively costly and burdensome to all parties in

these cases and would be unlikely to materially reduce the overall amount of claims that will

ultimately be allowed in these cases.

14.     For the reasons set forth in the Motion, the Unrue Declaration, and this

Response, the Debtors aver that the relief requested in the Motion promotes the interests of

fairness to all creditors of the Debtors and comports with the Debtors' fiduciary duties to their

creditors in these cases.  The Debtors therefore respectfully request that the Objection be

overruled and that the relief requested in the Motion be granted.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

overruling the Objection, (b) granting the Motion, subject to the modifications described herein,

and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       October 18, 2006

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession