SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: :
: :
   In re                      :      Chapter 11
: :
DELPHI CORPORATION, et al.,    :      Case No. 05–44481 (RDD)
: :
               Debtors.    :      (Jointly Administered)
: :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        DECLARATION OF DEAN R. UNRUE IN SUPPORT OF DEBTORS'
       MOTION FOR ORDER UNDER FED. R. BANKR. P. 3003(c)(3) AND
    9006(b)(1) DEEMING CERTAIN PROOFS OF CLAIM TIMELY FILED

Dean R. Unrue declares as follows:

1.     Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases. I submit this declaration in support of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (the "Motion"). Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Motion.

2.     I am a Project Leader for Delphi Corporation (which, with certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases, are referred to collectively and variously herein as "Delphi" or the "Debtors"). I joined Delphi in October 1978. During the Spring of 2006, the Debtors began to organize a claims administration team with the assistance of their advisors, including FTI Consulting, Inc. and Skadden, Arps, Slate, Meagher & Flom LLP. I was designated to manage this claims administration team on a day-to-day basis and have done so since the claims administration team was organized. Consequently, I am familiar with, and personally was involved in, the events and circumstances giving rise to the Debtors' decision to file the Motion.

3.     Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my discussions with Jack Yellin and Cliff Newman of The DRS Group ("DRS"), my opinion, and my experience with and knowledge of the Debtors' claims administration processes, or are based upon knowledge obtained from Delphi employees reporting to me in the course of their duties. If I were called upon to testify, I could and would testify to the facts set forth herein.

4.     On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order set 5:00 p.m. (Eastern Standard Time) on the Bar Date as the deadline by which proofs of claim had to be actually received by the clerk of this Court in order for such proofs of claim to be timely filed.  In accordance with paragraph 12 of the Bar Date Order, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of bar date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to more than 500,000 potential parties-in-interest.  The Debtors also published the Bar Date Notice in nearly 40 newspapers and other publications and posted the Bar Date Notice on the Delphi Legal Information Website, www.delphidocket.com.  Consistent with the Bar Date Order, the Bar Date Notice advised each recipient that proofs of claim had to be actually received by the clerk of this Court no later than 5:00 p.m. (Eastern Standard Time) on the Bar Date in order for such proofs of claim to be timely filed.

    5.  After the Bar Date, the Debtors noticed certain abnormalities in the entry onto the claims register of proofs of claim that appeared to have been received by DRS after the Bar Date.  DRS was engaged by the Claims Agent to physically retrieve all proofs of claim from the post office box to which proofs of claim were to be mailed pursuant to the Bar Date Order (the "Post Office Box"), as well as to receive from the clerk of the Court proofs of claim delivered to the Court by messenger or overnight courier.  Specifically, the claims register reflected a disproportionate number of proofs of claim as having been received on

August 9, 2006. The chart below summarizes the number of claims entered on the claims register between August 1, 2006 and August 25, 2006.



      6.      After noticing this abnormality, the Debtors immediately undertook an extensive investigation of the procedures of both the Claims Agent and DRS for the recording of proofs of claim both prior to the Bar Date and in the days immediately thereafter. This investigation revealed that DRS's general practice was to retrieve mail from the Post Office Box twice daily. The first mail retrieval occurred in the morning, generally around 9:00 a.m., and the second mail retrieval occurred in the early afternoon, generally between noon and 2:30 p.m. On the Bar Date, DRS did not alter its general practice and last retrieved mail from the Post Office Box in the early afternoon on the Bar Date. DRS adhered to its practice of only checking the Post Office Box between two and one-half and five hours prior to the Bar Date deadline despite the fact that the volume of claim forms arriving at the Bowling Green Post Office was at its peak.

Indeed, the total number of proofs of claim stamped as filed on the Bar Date was 2,328 (or approximately 14 percent of the total number of proofs of claim filed in the chapter 11 cases), far exceeding the second highest volume of 1,598 proofs of claim on July 28, 2006. It is likely that a very significant number of proofs of claim that may have been timely received into the Post Office Box in accordance with the Bar Date Order were not collected by DRS from the Post Office Box until the morning of August 1, 2006.

7. On August 1, 2006, DRS again collected mail from the Post Office Box on two occasions – first in the early morning and last in the early afternoon. DRS continued to collect mail from the Post Office Box at least once daily on each day following the Bar Date. Beginning with the proofs of claim collected by DRS from the Post Office Box on the morning of August 1, 2006 and continuing through August 9, 2006, DRS did not segregate proofs of claim by the date received, but rather commingled all such proofs of claim. On August 9, 2006, DRS stamped the vast majority of proofs of claim collected from the Post Office Box between August 1, 2006 and August 9, 2006 with an August 9, 2006 receipt date. Such proofs of claim, however, could have been received into the Post Office Box at any point in time from mid-afternoon on the Bar Date through mid-afternoon on August 9, 2006. DRS apparently discarded all envelopes in which such proofs of claim had been received.

8. As a result of the Debtors' investigation, I believe it is very likely that a significant number of the proofs of claim listed on <u>Exhibit A</u> to the Motion may have been timely filed under the Bar Date Order. Because the proofs of claim that were collected from the Post Office Box between August 1, 2006 and August 9, 2006 were not necessarily stamped with the accurate date of receipt and because the envelopes for such proofs of claim (which potentially could have aided the Debtors in determining when each such proof of claim had actually

5

been received) are not available, the Debtors cannot determine with any certainty which of the Proofs of Claim were timely filed and which were not.

        9.     To limit the scope of the relief sought pursuant to the Motion, the Debtors reviewed each proof of claim that was stamped by DRS as having been received from August 1, 2006 to August 9, 2006 and excluded all proofs of claim that were dated by the claimant on or after August 1, 2006, except to the extent that the date was clearly in error (e.g., a date in the future). This resulted in the Debtors' excluding 16 proofs of claim asserting liquidated claims of more than $100,000. Further, following the filing of the Motion, the Debtors have continued to gather additional information on the issues raised by the Motion. As a result of that further investigation, the Debtors have determined that eleven of the proofs of claim listed on Exhibit A to the Motion (the proofs of claim listed on Exhibit A to the Motion less the eleven proofs of claim referenced herein, the "Proofs of Claim"), which asserted aggregate liquidated claims in excess of $2.3 million, were received on August 1, 2006 and were therefore not timely filed pursuant to the Bar Date Order.[1] The Debtors therefore no longer seek relief with respect to such claims in the Motion. Following the filing of the Motion, the Debtors became aware of one additional proof of claim that fell within the parameters of the claims described in the Motion and the Debtors therefore seek to have that proof of claim (which asserts liquidated claims of approximately $25,000) deemed timely filed.[2]

        10.    As a result of the Debtors' investigation, which uncovered all of the facts described above, the Debtors are unable to conclusively determine which, if any, of the Proofs of Claim was in fact received by DRS after the Bar Date. This inability is a result of the failure to

---

[1] The eleven proofs of claim are claim numbers 15783, 15792, 15821, 15823, 15824, 15827, 15935, 15936, 15937, 15966, and 16013.

[2] The proof of claim is claim number 16126.

segregate the Proofs of Claim that may have been placed into the Post Office Box after noon or 2:00 p.m. but before 5:00 p.m. on the Bar Date from those Proofs of Claim that were received after 5:00 p.m. on the Bar Date through August 9, 2006.  Such failure was outside the reasonable control of the claimants filing the Proofs of Claim.  I, along with the other members of the Delphi claims administration team, determined that it was appropriate to bring this situation to this Court's attention and to seek the relief requested in the Motion.  I believe that deeming the Proofs of Claim to be timely filed also comports with fundamental principles of fairness to all creditors and other parties-in-interest in these cases.

        I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on October 18, 2006, in Troy, Michigan.

                                                  /s/  Dean R. Unrue
                                                      Dean R. Unrue