05-44481-rdd    Doc 5354    Filed 10/19/06    Entered 10/19/06 15:49:33    Main Document
Pg 1 of 12

Response deadline:    November 11, 2006<br>
4:00 p.m. EST<br>
Hearing date and time:  November 30, 2006<br>
10:00 a.m. EST

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| DELPHI CORP. *et al.*, | ) Case No. 05-44481 (RDD) |
| Debtors. | ) (Jointly Administered) |

**MOTION OF CREDITORS/INTERESTED PARTIES JOHN BLAHNIK, PAUL FREE, MILAN BELANS, LAURA MARION, PETER JANAK, AND CATHY ROZANSKI TO MODIFY OCTOBER 13, 2005, ORDER, AND TO COMPEL DELPHI CORPORATION TO ADVANCE LEGAL FEES AND COSTS**

John Blahnik, Paul Free, Milan Belans, Laura Marion, Peter Janak, and Cathy Rozanski (collectively, "Movants"), by and through their undersigned attorneys, hereby move to modify this Court's October 13, 2005 Order, and to compel Delphi Corporation ("Delphi"), in compliance with its bylaws, to advance legal fees and costs to Movants. In support, Movants state as follows:

### BACKGROUND

1. Each of the Movants is a former officer and/or managerial employee of Delphi.

2. Each of the Movants has incurred, and continues to incur legal fees and expenses in response to subpoenas issued by the Securities and Exchange Commission related to its investigation of Delphi's accounting practices and adequacy of financial disclosures.

    3.  Additionally, John Blahnik, Alan Dawes and Paul Free have incurred legal expenses in relation to a multi-district litigation alleging securities fraud, captioned <u>In re Delphi Corp. Securities, Derivative & ERISA Litigation</u>, MDL No. 1725 (E.D. Mich.).

    4.  Each Movant has incurred these legal fees and expenses by reason of his or her service as an officer and/or employee of Delphi.

    5.  Delphi is a Delaware corporation. Section 145(e) of the Delaware General Corporation Law allows a corporation, upon such terms and conditions as the corporation deems appropriate, to advance current and former corporate directors, officers and employees the costs of defending an investigation or lawsuit. Del. Code Ann. Title 8, § 145(e).

    6.  Under Delphi's Amended and Restated Bylaws, as amended through October 8, 2005 (the "Amended and Restated Bylaws," attached hereto as <u>Exhibit B</u>), advancement of legal expenses and costs to current and former directors, officers and employees is mandatory. Section 5.1 of the Amended and Restated Bylaws states in relevant part that Delphi "<u>shall indemnify</u> any person who is or <u>was</u> a Director, Officer or Employee . . . . if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation." (Emphases added.) Section 5.5 of the Amended and Restated Bylaws mandates the advancement of expenses upon receipt of an undertaking:

> **Section 5.5 Advances of Expenses.**
>
>   a.  Advances to Directors, Officers, Executives and Managerial Employees. Expenses and costs, incurred by any person referred to in paragraph (a) of Section 5.1 or 5.2 of these Bylaws in defending a civil, criminal, administrative, regulatory or investigative action, suit or proceeding <u>shall be paid</u> by the Corporation <u>in advance of the final disposition of such action, suit or proceeding</u> upon receipt of an undertaking in writing by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified in

>   respect of such costs and expenses by the Corporation as
>   authorized by this Article.

Amended and Restated Bylaws, Exh. B at § 5.5 (emphasis added).

7. Prior to its bankruptcy filing, Delphi had advanced fees and expenses for Movants' legal representation in accordance with the provisions of Delaware statute and Delphi's bylaws.

8. On October 8, 2005, Delphi filed its bankruptcy petition in this Court. Among numerous other First Day Motions, Delphi filed a Motion for Order (I) Authorizing the Debtors to Pay Prepetition Wages and Salaries to Employees and Independent Contractors; (II) Authorizing the Debtors to Pay Certain Prepetition Benefits and Continue the Maintenance of Human Capital Benefit Programs in the Ordinary Course; and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Human Capital Obligations (the "Human Capital Obligations Motion").

9. The Human Capital Obligations Motion stated, in relevant part, that

>   the Debtors seek authority but not direction to advance expenses to
>   approximately 50 of its Employees and Directors, including 19
>   former Employees, currently engaged (and those who may become
>   engaged on account of prepetition acts) in defending against
>   shareholder class action suits and ERISA class action suits, and
>   participating in the investigation by the Securities and Exchange
>   Commission. . . . For former Employees and Directors, the
>   Debtors seek to advance expenses limited to an aggregate cap of
>   $5 million, on a case-by-case basis pursuant to approval by the
>   Compensation Committee. . . .

Human Capital Obligations Motion ¶ 39.

10. Local Bankruptcy Rule ("LBR") 9013-1(c) provides that notice of any motion "shall be given to any entity believed to have or be claiming an interest in the subject

-3-

matter of the proposed order or who, it is believed, otherwise would be affected by the proposed order."

11. The Human Capital Obligations Motion sought an order that clearly would affect Movants' rights by radically curtailing Movants' right to advancement of legal fees and costs as provided by Delaware statute and Delphi's bylaws. Thus, Movants were entitled to notice of the Human Capital Obligations Motion under LBR 9013-1(c).

12. Delphi did not give Movants notice of the Human Capital Obligations Motion.[1]

13. On October 13, 2005, this Court entered an Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, and 1108 (I) Authorizing Debtors to Pay Prepetition Wages and Salaries to Employees and Independent Contractors; (II) Authorizing Debtors to Pay Prepetition Benefits and Continue Maintenance of Human Capital Benefit Programs in the Ordinary Course; and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Human Capital Obligations (the "Human Capital Obligations Order" or "Order").

14. Pertinent to this Motion, the Human Capital Obligations Order granted Delphi unfettered discretion to decide whether or not to advance legal fees and costs to former employees and directors, subject to an aggregate cap of $5 million.

15. Here, Movants – who clearly are interested parties – had no notice of the Human Capital Obligations Motion and no opportunity to be heard. As such, the Human Capital Obligations Order cannot be accorded finality with respect to Movants, and Movants are entitled

---

[1] On October 8, 2005, Delphi's noticing agent gave notice of Delphi's First Day Motions, including the Human Capital Obligations Motion, to the hundreds of entities listed on 48 pages of exhibits to the Affidavit of Service of Amber M. Cerveny [Docket No. 78]. Movants, who would be directly affected by an order granting the Human Capital Obligations Motion, do not appear anywhere on those 48 pages.

-4-

to be heard with respect to their objections to the Human Capital Obligations Motion and related Order.[2]

16.  On or about February 8, 2006, Delphi's Compensation Committee, exercising the discretion afforded by the Order, denied the advancement of legal expenses to Movants.

### THE HUMAN CAPITAL OBLIGATIONS ORDER VIOLATES MOVANTS' RIGHTS UNDER DELPHI'S BYLAWS AND VIOLATES IMPORTANT PUBLIC POLICY CONSIDERSATIONS

17.  The Human Capital Obligations Order allows Delphi to exercise discretion that is arbitrary, contrary to the provisions of Delphi's bylaws, contrary to public policy, and prejudicial to Movants.

18.  If, as the Court has determined, advancement of legal fees and costs is appropriate, the protocol regarding advancement should be consistent with Delphi's bylaws.

19.  Delphi's bylaws make indemnification and advancement of legal expenses mandatory, with the only prerequisite condition being the execution of an undertaking to repay the advanced costs in the event it is ultimately determined that the recipient is not entitled to indemnification. Further, Delphi's bylaws impose no cap on indemnification or advancement. See Amended and Restated Bylaws, Exh. B at §§ 5.1, 5.5.

20.  The Human Capital Obligations Order, contrary to the Amended and Restated Bylaws, grants Delphi's Compensation Committee absolute discretion, unlimited by

---

[2] Delphi's failure to provide notice to Movants of the Human Capital Obligations Motion not only violated LBR 9013-1(c), but also Movants' right to due process under the Fifth Amendment. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Enron Corp., No. 01-16034 (AJG), 2006 WL 898031, at *4 (Bankr. S.D.N.Y. Mar. 29, 2006) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950)).

any guidelines or standards, to decide whether or not to advance expenses.  Further, the Order imposes a $5 million aggregate cap on advancement to former officers and directors.

21. There is no basis, either in Delphi's bylaws, or in its prior course of dealing, to allow Delphi such discretion or to impose a cap on the amount of advancement. Indeed, there is no just reason why Delphi should be able to pick and choose the employees, officers and directors to whom it will or will not advance legal expenses.

22. The discretion afforded by the Order has allowed Delphi to inappropriately deprive Movants of an employment benefit that each had relied upon in serving as officers or managerial employees of Delphi.

23. Delphi's absolute and unconditional guaranty of advancement to directors, officers and employees serves an important public policy:

> Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service. . . .  <u>Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service</u>.  Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.

<u>Homestore, Inc. v. Tafeen</u>, 888 A.2d 204, 211 (Del. 2005) (emphasis added).

24. The importance of advancement has likewise been noted by courts in this circuit, which have explained that advancement protects the ability of the employee "to mount . . . a defense . . . by safeguarding his ability to meet his expenses at the time they arise, and to secure counsel on the basis of such an assurance."  <u>United States v. Weissman</u>, No. S2 94 Crim. 760 (CSH), 1997 WL 334966, at *16 (S.D.N.Y. June 16, 1997) (quoted in <u>United States v. Stein</u>, 435 F. Supp. 2d 330, 355 (S.D.N.Y. 2006)).

-6-

25. The Court's Order is likely to have a chilling effect on the ability of corporations – and in particular troubled corporations, which need it most – to attract capable individuals into corporate service. Qualified and talented employees may well be dissuaded from corporate service if they believe that their rights to indemnification and advancement may be curtailed by the courts in the event of a bankruptcy.

26. The Human Capital Obligations Order should be modified, and Delphi should be compelled to advance Movants' legal fees and costs in accordance with its bylaws, and with no cap on the amount of advancement.[3]

### THE HUMAN CAPITAL OBLIGATIONS ORDER IMPROPERLY INTERFERES WITH THE ADVANCEMENT OF ATTORNEYS' FEES IN VIOLATION OF MOVANTS' CONSTITUTIONAL RIGHTS

27. The District Court for the Southern District of New York recently issued an opinion relevant to this Motion, in which it addressed the Constitutional implications of a governmental policy disfavoring an organization's advancement of legal expenses to its employees and directors. United States v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006).

---

[3] Delphi's decision to cease advancement of legal fees and expenses places certain Movants in a potentially difficult, and perhaps prejudicial, position with regard to their ability to defend against ongoing civil litigation, In Re: Delphi Corporation Securities, Derivative & "ERISA" Litigation, and to defend against simultaneous investigations by the United States Department of Justice and the United States Securities and Exchange Commission. Delphi's primary executive and organization liability insurer, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), has taken the position that Delphi, pursuant to mandatory provisions of its bylaws, is required to advance fees and expenses to all former and current directors and officers until Delphi's self-insured $10 million retention is satisfied, at which point defense fees will be advanced by National Union to former and current directors and officers, as incurred and submitted, in the defense of covered claims, subject to the limits and other provisions of the Policy. Further, National Union has taken the position that, as of today, Delphi has yet to meet its self-insured obligations. However, National Union has agreed to provide interim funding to Movants prior to satisfaction of the $10 million self-insured retention, without waiver of its position that Delphi's decision to cease advancement of fees is insufficient to trigger side-A coverage (i.e., coverage for loss which is non-indemnifiable), while Delphi's decision to act in contravention of its bylaws is challenged and reviewed by the bankruptcy court. A motion seeking the bankruptcy court's approval to distribute insurance proceeds in this manner will be filed shortly with the court.

28.     In <u>Stein</u>, a central issue was the constitutionality of certain provisions of the Principles of Federal Prosecution of Business Organizations, issued by United States Deputy Attorney General Larry D. Thompson on January 20, 2003 (the "Thompson Memorandum"). The Thompson Memorandum, which is binding on all federal prosecutors, in relevant part requires all United States Attorneys "to consider the advancing of legal fees by business entities, except such advances as are required by law, as at least possibly indicative of an attempt to protect culpable employees and as a factor weighing in favor of indictment of the entity." <u>Id.</u> at 338.

29.     The Court found that the legal fee advancement provision of the Thompson Memorandum violated the Due Process Clause of the Fifth Amendment. <u>Id.</u> at 364-65. The Due Process Clause of the Fifth Amendment provides "substantive protection for fundamental rights." <u>Id.</u> at 360. The Second Circuit has recognized that the right to fairness in a criminal proceeding is a fundamental liberty interest subject to substantive due process analysis. <u>Quill v. Vacco</u>, 80 F.3d 716, 724 (2d Cir. 1996), <u>rev'd on other grounds</u>, 521 U.S. 793 (1997). Part of the fundamental right to fairness in a criminal proceeding is the "right to obtain and use in order to prepare a defense resources lawfully available to him or her, free of knowing or reckless government interference." <u>Stein</u>, 435 F. Supp. 2d at 361.

30.     Further, the government's policy of disfavoring advancement in certain circumstances impermissibly interfered with the fundamental right to access to defense resources: "Few if any competent defense lawyers would advise a corporate client at risk of indictment that it should feel free to advance legal fees to individuals in the face of the language of the Thompson Memorandum itself. It would be irresponsible to take the chance that prosecutors might view it as 'protecting . . . culpable employees and agents.'" <u>Id.</u> at 364. Thus,

the Court concluded, the Thompson Memorandum "discourages and, as a practical matter, often prevents companies from providing employees and former employees with the financial means to exercise their constitutional rights to defend themselves. . . . It therefore burdens excessively the constitutional rights of the individuals whose ability to defend themselves it impairs and, accordingly, fails strict scrutiny. The legal fee advancement provision violates the Due Process Clause." Id. at 364-65.

31. In 2005, Delphi publicly disclosed that the company was the subject of investigations by the Department of Justice and the Securities and Exchange Commission involving Dephi's accounting for and disclosures related to certain transactions. See, e.g., Delphi Form 10-Q at 16, filed August 8, 2005, attached hereto as Exhibit C ("Delphi is the subject of an ongoing investigation by the Staff of the Securities and Exchange Commission ('SEC') and other federal authorities involving Delphi's accounting for and the adequacy of disclosures for a number of transactions dating from Delphi's spin-off from GM. Delphi is fully cooperating with the SEC's ongoing investigation and requests for information as well as the related investigation being conducted by the Department of Justice.").

32. Indeed, in June 2005, the press reported that the Justice Department "stepped up a massive investigation" upon completion of an internal review by Delphi that reportedly "found misconduct among former employees." David Shepardson, Feds Expand Delphi Probe, Detroit News, June 30, 2005 at A1, attached hereto as Exhibit D.

33. Prior to entry of the Human Capital Obligations Order, Delphi had been advancing Movants' defense costs in accordance with its bylaws – bylaws that made advancement mandatory.

34.     The Human Capital Obligations Order, however, made advancement discretionary and left Delphi open to the pressures of the Thompson Memorandum. As the <u>Stein</u> court noted, it would be "irresponsible" of an organization to risk indictment by advancing legal expenses to an employee.

35.     It is clear that, in the face of "massive" investigations by the Department of Justice and SEC, Delphi used the discretion afforded by the Human Capital Obligations Order to ingratiate itself with the investigating agencies to the significant prejudice of the Movants. <u>See</u> Letter from Joseph E. Papelian, counsel for Delphi, to Thomas F. Breen, counsel for National Union (March 30, 2006), attached hereto as <u>Exhibit E</u> ("After careful deliberation, on February 13, 2006, the Compensation Committee of Delphi's Board of Directors decided that it could not in good faith approve the payment of the post-petition outstanding balance, nor pay for the future fees and expenses for certain former employees, including Messrs. Belans, Blahnik, Free and Dawes, all of whom resigned after the Audit Committee expressed concerns regarding the role such former employees played in the [subject transactions].").[4]

36.     As in the <u>Stein</u> matter, Delphi's exercise of its discretion to deny advancement to Movants in the face of the Department of Justice investigation impermissibly violates Movants' constitutional rights.[5]

---

[4] Since that time, Delphi has discontinued advancement as to all of the Movants.

[5] Movants' Sixth Amendment right to the assistance of counsel is also potentially implicated by the Human Capital Obligations Order. The Sixth Amendment, which attaches upon indictment, "protects, among other things, an individual's right to choose the lawyer or lawyers he or she desires and <u>to use one's own funds to mount the defense that one wishes to present</u>." <u>Stein</u>, 435 F. Supp. 2d at 366 (emphasis added). Under a less clear entitlement to advancement, the defendants in <u>Stein</u> "had at least an expectation that their expenses in defending any claims or charges brought against them by reason of their employment . . . would be paid by the firm," and, thus, the funds in question "were, in every material sense, their property, not that of a third party." <u>Id.</u> at 367. Here, Delphi's bylaws require advancement, and, thus, in every material sense, the funds in question are Movants' own funds. The Sixth Amendment protects Movants' use of those funds from "unjustified and improper interference." <u>Id.</u>

(continued...)

-10-

**MEMORANDUM OF LAW**

37. Because the legal points and authorities upon which this Motion relies are incorporated herein, Movants respectfully request that the requirement of the service and filing of a separate memorandum of law under LBR 9013-1(b) be deemed satisfied.

WHEREFORE Movants respectfully request that this Court enter an order in the form attached hereto as Exhibit A, modifying the Order to require Delphi to comply with the provisions of its Amended and Restated Bylaws with respect to indemnification and advancement, and granting Movants such other and further relief as is just.

Dated: October 19, 2006              Respectfully submitted,

/s/ Richard A. Rossman_____
RICHARD A. ROSSMAN (*pro hac vice*)
MATTHEW J. LUND (*pro hac vice*)
Pepper Hamilton LLP
100 Renaissance Center, Suite 3600
Detroit, Michigan 48243
(313) 259-7110

*Counsel for Paul Free*

---

(continued...)

    Movants recognize that there are competing legitimate interests at stake here – the interest of Delphi and its creditors in preventing the depletion of assets of the bankruptcy estate, versus the interest of Movants in defending themselves from claims arising out of their employment at Delphi. These two interests are fundamentally incompatible: Funds that are advanced to and used to indemnify Movants will not be available to pay creditors. But a mere financial interest cannot justify infringing on an individual's right to a fair trial. Id. at 360-61 ("The state's legitimate interest in, for example, saving money . . . is insufficient to justify infringing upon the right to a fair trial."). Thus, where the choice is between ensuring that creditors receive a higher dividend and ensuring that Movants have access to all resources lawfully available to them, the decision must favor Movants.

/s/ Thomas W. Cranmer_____
THOMAS W. CRANMER (*pro hac vice*)
Miller Canfield Paddock & Stone PLC
810 W. Long Lake Road, Suite 200
Troy, Michigan  48098
(248) 267-3381
*Counsel for John Blahnik and Peter Janak*


/s/ William A. Sankbeil_____
WILLIAM A. SANKBEIL (*pro hac vice* pending)
Kerr, Russell & Weber PLC
500 Woodward Avenue, Suite 2500
Detroit, Michigan  48226
(313) 961-0200
*Co-Counsel for John Blahnik*


/s/ Martin E. Crandall_____
MARTIN E. CRANDALL (*pro hac vice*)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan  48226
(313) 965-8413
*Counsel for Milan Belans*


/s/ Christopher A. Andreoff_____
CHRISTOPHER A. ANDREOFF (*pro hac vice* pending)
Jaffe, Raitt, Heuer & Weiss PC
27777 Franklin Road, Suite 2500
Southfield, Michigan  48034
(248) 351-3000
*Counsel for Laura Marion*


/s/ David Dumouchel_____
DAVID DUMOUCHEL (*pro hac vice*)
LAURIE J. MICHELSON (*pro hac vice*)
Butzel Long PC
150 W. Jefferson Avenue, Suite 100
Detroit, Michigan  48226
(313) 225-7004
*Counsel for Cathy Rozanski*

DT: #332837 v4 (74TH04!.DOC) 130104-2