**Exhibit A**

**Directors and Officers  Liability Insurance Policy**

# **AIG** AMERICAN INTERNATIONAL COMPANIES®

☐ AIU Insurance Company     ☐ Granite State Insurance Company
☐ American Home Assurance Company     ☐ Illinois National Insurance Company
☐ American International Pacific Insurance Company     ☒ National Union Fire Insurance Co. of Pittsburgh, Pa.®
☐ American International South Insurance Company     ☐ National Union Fire Insurance Company of Louisiana
☐ Birmingham Fire Insurance Company of Pennsylvania     ☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

**POLICY NUMBER:**
*931-88-56*
**REPLACEMENT OF POLICY NUMBER:**
*216-79-56*

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

### DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED ENTITY:** *DELPHI CORPORATION*<br>(herein "**Named Entity**") | |
| 1(a) | MAILING ADDRESS: *5725 DELPHI DRIVE*<br>*TROY, MI 48098* | |
| 1(b) | STATE OF INCORPORATION/FORMATION: *Delaware* | |
| 2 | **POLICY PERIOD:** From: *February 5, 2004*    To: *February 5, 2005*<br>12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | **POLICY AGGREGATE LIMIT OF LIABILITY**<br>(herein "**Limit of Liability**")<br>For all **Loss**, in the aggregate, under this policy<br>including **Defense Costs**:       *$25,000,000* | |
| 4 | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** –<br>(See Clause 6 for details.) | |
| 4(a) | **Securities Claims:** *$10,000,000* | 4(b) **Employment Practices Claims:** *N/A* |
| 4(c) | All other **Claims**: *$5,000,000* | |

*7037774*

75010 (2/00)

1

MDL-000001

DELPHI CONFIDENTIAL
Pg 3 of 77

| ITEMS (continued) | | | |
|---|---|---|---|
| 5 | **CONTINUITY DATE** (herein "**Continuity Date**") | | |
| 5(a) | Coverages A and B, other than **Outside Entity Executive** coverage:   *February 5, 1999* | 5(b) | **Outside Entity Executive** coverage, including Coverage C: | The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity** |
| 5(c) | Coverage D:   N/A | | |

| 6 | **PREMIUM:** *$1,250,000* |
|---|---|

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: Not applicable, coverage rejected by insured. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
*A copy of the TRIA disclosure sent with the original quote is attached hereto.*

| 7 | **CRISISFUND**$^{SM}$ limit: | | |
|---|---|---|---|
| 7(a) | **Crisis Loss:** *$0* | 7(b) | Additional **CRISISFUND**$^{SM}$ for **Delisting Crisis Loss:** *$0* |

| 8 | **NAME AND ADDRESS OF INSURER** (herein "**Insurer**"):<br>*National Union Fire Insurance Company of Pittsburgh, Pa.*<br>*175 Water Street*<br>*New York, NY 10038*<br><br>This policy is issued only by the insurance company indicated in this Item 8. |
|---|---|

*7037774*

75010 (2/00)

2

MDL-000002

## POLICYHOLDER DISCLOSURE STATEMENT
### UNDER
### TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage.  The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review.  There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act.  Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

Unless you sign this form and return it to us rejecting Terrorism Coverage under the Federal Act, you will be covered for Terrorism as defined in the Act and your premium for that coverage is *$12,500*            .

_____   I hereby reject coverage in accordance with the Act.

_____
Signature of Insured

_____
Print Name/Title

_____
Date

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *DELPHI CORPORATION*

Policy Number: *931-88-56*
Policy Period Effective Date From: *February 5, 2004*      To: *February 5, 2005*

MDL-000003

*DELPHI CONFIDENTIAL*

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

AON RISK SERVICES, INC. OF ILLINOIS
200 E. RANDOLPH ST., 14TH FL.
AON CENTER
CHICAGO, IL 60601-6060

7037774

75010 (2/00)

MDL-000004

# EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability*. This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

### COVERAGE D: CRISISFUND$^{SM}$ INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund**$^{SM}$, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

## 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

MDL-000005

*DELPHI CONFIDENTIAL*

the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

    (1) a written demand for monetary, non–monetary or injunctive relief;

    (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non–monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

    (3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

        (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

        (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund** $^{SM}$ " means:

    (1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

    (2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co–worker or subordinate position or otherwise, including any full–time, part–time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation**.

(i) "**Employment Practices Violation**" means any actual or alleged:

MDL-000006

*DELPHI CONFIDENTIAL*

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, **"Employment Practices Violation"** shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j)  **"Executive"** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**

(k) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(l) **"Foreign Policy"** means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **"Foreign Policy"** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

(m) **"Indemnifiable Loss"** means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n) "**Insured**" means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) "**Insured Person**" means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive**:

(p) "**Loss**" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, " **Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(C) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(C); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

(q) "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) "**No Liability**" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

MDL-000008

(t) **"Organization"** means:

    (1) the **Named Entity**;

    (2) each **Subsidiary**; and

    (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(u) **"Outside Entity"** means any: (1) not-for-profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy.

(v) **"Outside Entity Executive"** means any: (1) **Executive** of an **Organization** who is or was acting at the specific written request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(w) **"Policy Period"** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. **"Waste"** includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) **"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

    (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

        (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

        (b) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

    (2) brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**.

Notwithstanding the foregoing, the term **"Securities Claim"** shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

(z) **"Subsidiary"** means: (1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has **Management Control** ("Controlled Entity") on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**; and (2) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an **Organization**.

(aa) **"Wrongful Act"** means:

    (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**:

MDL-000009

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1–4, 9–13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

MDL-000010

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

(1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

(2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

(3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

(4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

(5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

MDL-000011

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

## 5. LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)

The **Limit of Liability** stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the CrisisFund[SM] shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the CrisisFund[SM]. The CrisisFund[SM] shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs* are not payable by the *Insurer* in addition to the *Limit of Liability*. *Defense Costs* are part of *Loss* and as such are subject to the *Limit of Liability* for *Loss*.

MDL-000012

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i) Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii) Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1) the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

MDL-000013

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to such circumstances or alleging any **Wrongful Act** circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

The **Insurer** does not, however, under this policy, assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the **Insurer**.

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

MDL-000014

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organization** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of Panel Counsel Firms may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

75011 (2/00)

MDL-000015

DELPHI CONFIDENTIAL

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, " **Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity**'s address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

MDL-000016

DELPHI CONFIDENTIAL

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

(1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

(2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "**Auto-Subsidiary Period**");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives*: Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An Organization ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

MDL-000017

*DELPHI CONFIDENTIAL*

### 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

### 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

### 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

### 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

### 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("ADR") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of ADR process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, in which case such **Insured's** choice of ADR process shall control.

MDL-000018

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

MDL-000019

*DELPHI CONFIDENTIAL*

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

75011 (2/00)

16

*DELPHI CONFIDENTIAL*

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

### ALASKA

DAVIS WRIGHT TREMAINE
701 W. Eighth Avenue, Suite 800,
Anchorage, AK 99501-3468
Tel: (907) 257-5300
Contact: David W. Oesting

FOSTER PEPPER & SHEFELMAN
1007 W. Third Ave., Ste. 100,
Anchorage, AK 99501
Tel: (907) 222-7100
Contact: Tim J. Filer / Roger D. Mellem

### CALIFORNIA

BINGHAM MCCUTCHEN LLP
1900 University Avenue,
East Palo Alto, CA 94303-1212
Tel: (650) 849-4914
Contact: Stephen D. Hibbard / Mary T. Huser

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center, San
Francisco, CA 94111 Tel: (415)
393-2626 Contact: David H.
Balabanian / Stephen D.
Hibbard

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400,
Los Angeles, CA 90071-1560
Tel: (213) 680-6416
Contact: John C. Morrissey

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393-2170
Contact: David M. Balabanian

CLIFFORD CHANCE US  LLP
One Market Steuart Tower, Suite 400,
San Francisco, CA 94105
Tel: (415) 778-4700
Contact: Tower C. Snow / Michael D. Torpey

CLIFFORD CHANCE US  LLP
601 South Figueroa Street,
Los Angeles, CA 90017
Tel: (213) 312-9400
Contact: Daniel J. Tyukody

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2073
Contact: Paul A. Renne

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2092
Contact: Benjamin K. Riley

COOLEY GODWARD, LLP
4401 Eastgate Mall,
San Diego, CA 92121-1909
Tel: (858) 550-6050
Contact: William E. Grauer

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5182
Contact: Stephen C. Neal

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5037
Contact: William S. Freeman

DAVIS WRIGHT TREMAINE
One Embarcadero Center, Suite 600,
San Francisco, CA 94111-3834
Tel: (415) 276-6500
Contact: Martin Fineman

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue,
Los Angeles, CA 90071-3197
Tel: (213) 229-7543
Contact: Phillip L. Bosl

GIBSON, DUNN & CRUTCHER LLP
1530 Page Mill Road,
Palo Alto, CA 94304
Tel: (650) 849-5300
Contact: John C. Dickey

GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza,
Irvine, CA 92614-8557
Tel: (949) 451-3800
Contact: Wayne W. Smith / Meryl L. Young

Revised (12/03)

MDL-000021

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

GRAY CARY
4365 Executive Drive,
San Diego, CA 92121-2133
Tel: (858) 677-1400
Contact: Shirli Fabbri Weiss /
Robert W. Brownlie

GRAY CARY
2000 University Avenue
East Palo Alto, CA 94303
Tel: (650) 833-2000
Contact: Shirli Fabbri Weiss /
David Priebe

IRELL & MANELLA LLP
1800 Ave. of the Stars, Suite 900,
Los Angeles, CA 90067
Tel: (310) 277-1010
Contact: David Schwarz / David Gindler /
David Siegel / Jim Adler / Richard H. Borow

MORGAN, LEWIS & BOCKIUS LLP
One Market Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Contact: Alfred J. Lechner Jr.

300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132
Tel: (213) 612-2500
Contact: Alfred J. Lechner Jr.

MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, CA 94105
Tel: (415) 268-7000
Contact: Melvin R. Goldman / Paul T. Friedman

MORRISON & FOERSTER LLP
555 West 5th Street, Suite 3500,
Los Angeles, CA 90013
Tel: (213) 892-5200
Contact: B. Scott Silverman / Robert S. Stern

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9264
Contact: Dennis L. Kinnaird

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9152
Contact: John W. Spiegel

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9153
Contact: George M. Garvey

O'MELVENY & MYERS LLP
400 South Hope St., 15th Floor,
Los Angeles, CA 90071
Tel: (213) 430-6000
Contact: Robert Vanderet / Seth Aronson

O'MELVENY & MYERS LLP
610 Newport Center, 17th Floor,
Newport Beach, CA 92660
Tel: (949) 760-9600
Contact: Michael G. Yoder / Phillip Kaplan

O'MELVENY & MYERS LLP
275 Battery Street,
San Francisco, CA 94111
Tel: (415) 984-8700
Contact: Daniel Bookin / Michael F. Tubach

ORRICK HERRINGTON & SUTCLIFFE LLP
Old Federal Reserve Bank Building,
400 Sansome Street,
San Francisco, CA 94111
Tel: (415) 392-1122
Contact: William F. Alderman

ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road,
Menlo Park, CA 94025
Tel: (650) 614-7400
Contact: W. Reece Bader

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 S. Flower Street, Twenty-Third Floor,
Los Angeles, CA 90071-2371
Tel: (213) 683-6000
Contact: William F. Sullivan

PILLSBURY WINTHROP LLP
Pacific Bell Building, 101 W. Broadway,
Suite 1800,
San Diego, CA 92101-8219
Tel: (619) 234-5000
Contact: Richard M. Segal

PILLSBURY WINTHROP LLP
2550 Hanover Street,
Palo Alto, CA 94304-1115
Tel: (650) 233-4500
Contact: Walter J. Robinson

MDL-000022

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

PILLSBURY WINTHROP LLP
725 South Figueroa Street, Suite 2800,
Los Angeles, CA 90017-5443
Tel: (213) 488-7100
Contact: Robert L. Wallan

PILLSBURY WINTHROP LLP
50 Fremont Street,
San Francisco, CA 94105-2228
Tel: (415) 983-1000
Contact: Bruce A. Ericson

SIMPSON THACHER & BARTLETT
3373 Hillview Avenue,
Palo Alto, CA 94304
Tel: (650) 251-5000
Contact: George M. Newcombe /
James G. Kreissman

SIMPSON THACHER & BARTLETT
10 Universal City Plaza, Suite 1850,
Los Angeles, CA 91608
Tel: (818) 755-7000
Contact: Chet Kronenberg /
Seth A. Ribner

SULLIVAN & CROMWELL
1888 Century Park East,
Los Angeles, CA 90067-1725
Tel: (310) 712-6600
Contact: Robert A. Sacks

WILSON, SONSINI, GOODRICH & ROSATI
650 Page Mill Road,
Palo Alto, CA 94304-1050
Tel: (650) 493-9300
Contact: Bruce G. Vanyo / Boris Feldman /
Steven M. Schatz

**COLORADO**

COOLEY GODWARD, LLP
380 Interlocken Crescent, Suite 900,
Broomfield, CO 80021-8023
Tel: (720) 566-4000
Contact: James E. Nesland

GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4100,
Denver, CO 80202
Tel: (303) 298-5700
Contact: George Curtis

**DISTRICT OF COLUMBIA**

ARNOLD & PORTER
555 Twelfth Street, NW,
Washington, DC 20004-1202
Tel: (202) 942-5672
Contact: Scott B. Schreiber

CAHILL GORDON & REINDEL
1990 K Street, N.W., Suite 950,
Washington, DC 20006
Tel: (202) 862-8900
Contact: Donald J. Mulvihill

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.,
Washington, DC 20036-5306
Tel: (202) 955-8500
Contact: F. Joseph Warin / John C. Millian

GREENBERG TRAURIG
800 Connecticut Avenue, N.W., Suite 500,
Washington, DC 20036
Tel: (202) 331-3100
Contact: Joe R. Reeder

PATTON BOGGS LLP
2550 M Street, N.W.,
Washington, DC 20037
Tel: (202) 457-6000
Contact: Eric A. Kuwana /
Ronald S. Liebman

PIPER RUDNICK LLP
1200 Nineteenth Street, NW,
Washington, DC 20036
Tel: (202) 861-3900
Contact: David Clarke, Jr. / Robert J. Mathias /
James D. Mathias

SULLIVAN & CROMWELL
1701 Pennsylvania Avenue, N.W.,
Washington, DC 20006-5805
Tel: (202) 956-7500
Contact: Daryl A. Libow / Margaret K. Pfeiffer

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW,
Washington, DC 20005
Tel: (202) 434-5000
Contact: John K. Villa

WILLKIE FARR & GALLAGHER
1875 K Street, N.W.,
Washington, DC 20006-1238
Tel: (202) 303-1105
Contact: Kevin B. Clark

MDL-000023

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

WILMER, CUTLER & PICKERING
2445 M Street, N.W.,
Washington, DC 20037
Tel: (202) 663-6000
Contact: Charles A. Davidow / David P. Donovan

### DELAWARE

BLANK ROME LLP
1201 Market Street, 21st Floor,
Wilmington, DE 19801
Tel: (302) 425-6400
Contact: Thomas P. Preston /
Neal C. Belgam

WOLF, BLOCK, SCHORR AND SOLISCOHEN LLP
Wilmington Trust Center,
1100 N. Market Street, Suite 1001,
Wilmington, DE 19801
Tel: (302) 777-5860
Contact: Barry Klayman

### FLORIDA

AKERMAN SENTERFITT & EIDSON, P.A.
Citrus Center, 17th Floor,
255 South Orange Avenue,
Orlando, FL 32801
Tel: (407) 843-7860
Contact: J. Thomas Cardwell

AKERMAN SENTERFITT & EIDSON, P.A.
SunTrust International Center, 28th Floor,
Miami, FL 33131
Tel: (305) 374-5600
Contact: Stanley H. Wakshlag

CARLTON FIELDS
4000 International Place,
100 S.E. Second Street,
Miami, FL 33131-9101
Tel: (303) 530-0050
Contact: Steven J. Brodie

CARLTON FIELDS
One Harbour Place,
Tampa, FL 33602-5790
Tel: (813) 223-7000
Contact: Gary L. Sasso

GREENBERG TRAURIG
1221 Brickell Avenue,
Miami, FL 33131
Tel: (305) 579-0500
Contact: Hilarie Bass

GREENBERG TRAURIG
777 South Flagler Drive,
West Palm Beach, FL 33401
Tel: (561) 650-7900
Contact: Bradford D. Kaufman

HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600,
P.O. Drawer 810 (Zip 32302),
Tallahassee, FL 32301
Tel: (850) 224-7000
Contact: Robert R. Feagin / Elizabeth Bevington

HOLLAND & KNIGHT LLP
625 North Flagler Drive, Suite 700,
West Palm Beach, FL 33401
Tel: (561) 833-2000
Contact: Tracy A. Nichols /
Scott Newman

HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600,
P.O. Box 1525 (Zip 32802),
Orlando, FL 32801
Tel: (407) 244-1115
Contact: William Wilson

HOLLAND & KNIGHT LLP
701 Brickell Avenue - Suite 3000,
P.O. Box 015441 (Zip 33101),
Miami, FL 33131
Tel: (305) 374-8500
Contact: Gregory A. Baldwin / Tracy A. Nichols /
Mitchell Eliot Herr / Louisa Brais

HOLLAND & KNIGHT LLP
400 North Ashley Drive, Suite 2300,
Tampa, FL 33602
Tel: (813) 227-8500
Contact: Tracy A. Nichols / Michael L. Chapman

HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900,
P.O. Box 52687 (Zip 32201),
Jacksonville, FL 32202
Tel: (904) 353-2000
Contact: Tracy A. Nichols / George E. Schulz Jr

MCGUIREWOODS LLP
Bank of America Tower,
50 North Laura Street,
Jacksonville, FL 32202
Tel: (904) 798-3200
Contact: David M. Wells

MDL-000024

*DELPHI CONFIDENTIAL*

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

STEEL HECTOR & DAVIS LLP
200 South Biscayne Boulevard,
Miami, FL 33131-2398
Tel: (305) 577-2957
Contact: Lewis F. Murphy, P.A. / Wendy Leavitt

STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard,
Miami, FL 33131-2385
Tel: (305) 358-9900
Contact: Richard B. Simring

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131-2352
Tel: (305) 371-2700
Contact: Charles C. Kline

## GEORGIA

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree Street,
Atlanta, GA 30309-3424
Tel: (404) 881-7167
Contact: Peter Q. Bassett

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree St.,
Atlanta, GA 30309
Tel: (404) 881-7000
Contact: John Goselin / Mary Gill / Todd R. David

KING & SPALDING
191 Peachtree Street,
Atlanta, GA 30303-1763
Tel: (404) 572-4600
Contact: M. Robert Thornton / Michael R. Smith

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, NE, Suite 5300,
Atlanta, GA 30308
Tel: (404) 527-4000
Contact: J. David Dantzler, Jr. / David L. Balser

PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, N.W., Suite 2400,
Atlanta, GA 30308-2222
Tel: (404) 815-2500
Contact: J. Allen Maines

SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II,
1230 Peachtree Rd., N.E.,
Atlanta, GA 30309-3592
Tel: (404) 815-3730
Contact: John G. Despriet

## ILLINOIS

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5452
Contact: David H. Kistenbroker

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5200
Contact: Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen Hennessy / Bonita L. Stone

KIRKLAND & ELLIS
200 East Randolph Drive,
Chicago, IL 60601
Tel: (312) 861-2000
Contact: Robert J. Kopecky

PIPER RUDNICK, LLP
203 North LaSalle Street, Suite 1800,
Chicago, IL 60601-1293
Tel: (312) 368-4000
Contact: Samuel B. Isaacson / Michael S. Poulos

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7850
Contact: Hillie R. Sheppard

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Desrborn Street,
Chicago, IL 60603
Tel: (312) 853-7279
Contact: Eugene A. Schoon

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7734
Contact: Walter C. Carlson

MDL-000025

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-8224
Contact: Christopher Q. King

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-7483
Contact: David L. Schiavone

### LOUISIANA

LOCKE LIDDELL & SAPP LLP
601 Poydras Street, Suite 2400,
New Orleans, LA 70130-6036
Tel: (504) 558-5100
Contact: Brad Foster / John McElhaney /
W.C. (Peter) Flynn

### MASSACHUSETTS

EDWARDS & ANGELL LLP
101 Federal Street,
Boston, MA 02110-1800
Tel: (617) 951-3373
Contact: John D. Hughes

HALE & DORR LLP
60 State Street,
Boston, MA 02109
Tel: (617) 526-6000
Contact: Jeffrey B. Rudman / William H. Paine /
Andrea J. Robinson

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center,
Boston, MA 02111
Tel: (617) 542-6000
Contact: Patrick J. Sharkey / Peter M. Saparoff

ROPES & GRAY
One International Place,
Boston, MA 02110-2624
Tel: (617) 951-7566
Contact: John D. Donovan

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7363
Contact: Jordan D. Hershman

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7253
Contact: Brian E. Pastuszenski

### MINNESOTA

DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500,
Minneapolis, MN 55402
Tel: (612) 340-2600
Contact: Brian E. Palmer / Edward J.
Pluimer / J. Jackson / Peter W. Carter /
Roger J. Magnuson

FAEGRE & BENSON LLP
90 South Seventh Street,
Minneapolis, MN 55402-3901
Tel: (612) 336-3000
Contact: Robert L. Schnell / Thomas L. Kimer

WINTHROP & WEINSTINE, PA
3000 Dain Rauscher Plaza,
60 South Sixth Street,
Minneapolis, MN 55402
Tel: (612) 347-0700
Contact: David P. Pearson / Thomas H. Boyd

### NEW YORK

ARNOLD & PORTER
399 Park Avenue,
New York, NY 10022-4690
Tel: (212) 715-1000
Contact: Kent A. Yalowitz / Scott B. Schreiber

BLANK ROME LLP
The Chrysler Building,
405 Lexington Avenue,
New York, NY 10174
Tel: (212) 885-5000
Contact: Robert J. Mittman

CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane,
New York, NY 10038
Tel: (212) 504-6000
Contact: Dennis J. Block / Gregory A. Markel /
Howard R. Hawkins / Jonathan M. Hoff

CAHILL GORDON & REINDEL
Eighty Pine Street,
New York, NY 10005
Tel: (212) 701-3000
Contact: Charles A. Gilman / Immanuel Kohn /
Thomas J. Kavaler

MDL-000026

DELPHI CONFIDENTIAL

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**CLIFFORD CHANCE US LLP**
200 Park Avenue,
New York, NY 10166
Tel: (212) 878-8000
Contact: James B. Weidner / James N.
Benedict / John K. Carroll / Mark Holland

**CRAVATH, SWAINE & MOORE**
Worldwide Plaza,
825 Eighth Avenue,
New York, NY 10019-7475
Tel: (212) 474-1000
Contact: Evan R. Chesler / Francis P.
Barron / Julie A. North / Keith R. Hummel /
Paul C. Saunders / Peter T. Barbur /
Richard W. Clary / Robert H. Baron /
Ronald S. Rolfe / Rory O. Millson /
Thomas G. Rafferty

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON**
One New York Plaza,
New York, NY 10004
Tel: (212) 859-8000
Contact: William G. McGuinness / Alexander R.
Sussman / Debra M. Torres / Douglas H. Flaum /
Barry G. Sher / John A. Borek

**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue,
New York, NY 10166-0193
Tel: (212) 351-4000
Contact: Wesley G. Howell / Robert F. Serio /
Peter Beshar

**GREENBERG TRAURIG**
885 Third Avenue, 21st Floor,
New York, NY 10022
Tel: (212) 801-3134
Contact: Robert A. Horowitz

**KATTEN MUCHIN ZAVIS ROSENMAN**
575 Madison Avenue,
New York, NY 10022
Tel: (212) 940-8800
Contact: David Kistenbroker, Robert W. Gottlieb
and Joel W. Sternman.

**KAYE, SCHOLER, FIERMAN, HAYS & HANDLER**
425 Park Avenue,
New York, NY 10022
Tel: (212) 836-8663
Contact: Fredric W. Yerman

**KIRKLAND & ELLIS**
Citicorp Center, 153 East 53rd Street,
New York, NY 10022-4675
Tel: (212) 446-4800
Contact: Yosef J. Riemer

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
919 Third Avenue,
New York, NY 10022
Tel: (212) 715-9100
Contact: Gary P. Naftalis / Alan Friedman

**MAYER, BROWN ROWE & MAW**
1675 Broadway,
New York, NY 10019
Tel: (212) 506-2500
Contact: Dennis P. Orr / Richard A. Spehr /
Steven Wolowitz

**MILBANK, TWEED, HADLEY & MCCLOY**
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5832
Contact: Michael L. Hirschfeld

**MILBANK, TWEED, HADLEY & MCCLOY**
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5149
Contact: Scott A. Edelman / Michael L.
Hirschfeld

**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Contact: Alfred J. Lechner, Jr.

**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas,
New York, NY 10104
Tel: (212) 468-8000
Contact: Anthony M. Radice / Jack C. Auspitz

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
399 Park Avenue, Thirty-First Floor,
New York, NY 10022-4697
Tel: (212) 318-6000
Contact: J. Allen Maines

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**
1285 Avenue of the Americas,
New York, NY 10019-6064
Tel: (212) 373-3000 Contact: Daniel J. Beller /
Martin Flumenbaum / Claudia Hammerman /
Brad S. Karp / Mark F. Pomerantz / Daniel J.
Kramer / Richard A. Rosen

Revised (12/03)

MDL-000027

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**PIPER RUDNICK LLP**
1251 Avenue of the Americas,
New York, NY 10020
Tel: (212) 835-6000
Contact: Joseph G. Finnerty III / Keara M.
Gordon / David E. Nachman / John J. Clarke

**SCHULTE ROTH & ZABEL LLP**
900 Third Avenue,
New York, NY 10022
Tel: (212) 756-2000
Contact: Betty Santangelo / Howard O.
Godnick / Irwin J. Sugarman / Michael S.
Feldberg / Robert M. Abrahams

**SIMPSON THACHER & BARTLETT**
425 Lexington Avenue,
New York, NY 10017
Tel: (212) 455-2000
Contact: Bruce D. Angiolillo / Michael J.
Chepiga / Paul C. Curnin / Roy L. Reardon

**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane,
New York, NY 10038
Tel: (212) 806-5400
Contact: Laurence Greenwald / Melvin A.
Brosterman / Robert Lewin

**SULLIVAN & CROMWELL**
125 Broad Street,
New York, NY 10004-2498
Tel: (212) 558-4000
Contact: D. Stuart Meiklejohn / Gandolfo V.
DiBlasi / John L. Hardiman / John L. Warden /
Philip L. Graham, Jr. / Richard H. Klapper

**WACHTELL, LIPTON, ROSEN & KATZ**
51 W. 52nd Street, 29th Floor,
New York, NY 10019
Tel: (212) 403-1208
Contact:  Paul Vizcarrondo / Ted Mirvis

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue,
New York, NY 10153
Tel: (212) 310-8000
Contact: Greg A. Danilow / Irwin H. Warren /
Joseph Allerhand

**WILLKIE FARR & GALLAGHER**
787 Seventh Avenue,
New York, NY 10019-6099
Tel: (212) 728-8000
Contact: Michael R. Young / Richard L. Posen

**WILMER, CUTLER & PICKERING**
520 Madison Ave.,
New York, NY 10022
Tel: (212) 230-8800
Contact: Peter Vigeland / Robert B. McCaw

## OHIO

**JONES, DAY, REAVIS & POGUE**
North Point, 901 Lakeside Avenue,
Cleveland, OH 44114
Tel: (216) 586-3939
Contact: John M. Newman / John W. Edwards

## OREGON

**DAVIS WRIGHT TREMAINE**
2300 First Interstate Tower,
1300 S.W. Fifth Avenue,
Portland, OR 97201
Tel: (503) 241-2300
Contact: John F. McGrory

**FOSTER PEPPER & SHEFELMAN**
101 S.W. Main Street, 15th Floor,
Portland, OR 97204-3223
Tel: (503) 221-0607
Contact: Tim J. Filer / Roger D. Mellem

**LANE POWELL SPEARS LUBERSKY LLP**
601 S.W. Second Avenue, Suite 2100,
Portland, OR 97204
Tel: (503) 778-2100
Contact: D. Meredith Wilson / Milo
Petranovich / Robert E. Maloney

## PENNSYLVANIA

**BLANK ROME LLP**
One Logan Square,
Philadelphia, PA 19103-6998
Tel: (215) 569-5500
Contact: Alan J. Hoffman / Ian Comisky

**BUCHANAN INGERSOLL, PC**
One Oxford Centre, 20th Floor,
301 Grant Street,
Pittsburgh, PA 15219-8800
Tel: (412) 562-1880
Contact: John R. Leathers

**MDL-000028**

*DELPHI CONFIDENTIAL*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

MORGAN, LEWIS & BOCKIUS
1701 Market Street,
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Contact: Francis S. Chlapowski / Marc J.
Sonnenfeld / Elizabeth Hoop Fay /
Christopher (Kip) P. Hall / Alfred J.
Lechner / Karen Pieslak Pohlmann /
Kevin T. Rover / Stuart Sarnoff / Keith Olin

PEPPER HAMILTON LLP
3000 Two Logan Square, Eighteenth
and Arch Streets,
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Contact: Barbara W. Mather / Jon A.
Baughman / Laurence Z. Shiekman / M.
Duncan Grant / Robert L. Hickok / Thomas E.
Zemaitis

WOLF, BLOCK, SCHORR and SOLIS-
COHEN LLP
1650 Arch Street, 22nd Floor,
Philadelphia, PA 19103-2097
Tel: (215) 977-2058
Contact: Ian A.L. Strogatz / Jay A. Dubow /
Jerome J. Shestack / M. Norman Goldberger /
Mark L. Alderman

## TEXAS

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Pennzoil Place – South Tower,
711 Louisiana Street, Suite 1900,
Houston, TX 77002
Tel: (512) 499-6250
Contact: Paul R. Bessette / Gregg C. Laswell

AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P.
1700 Pacific Avenue, Suite 4100,
Dallas, TX 75201-4675
Tel: (512) 499-6250
Contact: Paul R. Bessette / Edward S.
Koppman / Orrin L. Harrison III

FULBRIGHT & JAWORSKI L.L.P
1301 McKinney, Suite 5100,
Houston, TX 77010-3095
Tel: (713) 651-5151
Contact: Frank G. Jones / Robert S. Harrell /
Gerard G. Pecht

FULBRIGHT & JAWORSKI L.L.P
2200 Ross Avenue, Suite 2800,
Dallas, TX 75201
Tel: (214) 855-8000
Contact: Karl G. Dial

JENKENS & GILCHRIST, P.C.
1100 Louisiana, Suite 1800,
Houston, TX 77002
Tel: (713) 951-3300
Contact: John Gilliam

JENKENS & GILCHRIST, P.C.
1445 Ross Avenue Suite 3200,
Dallas, TX 75202
Tel: (214) 855-4306
Contact: John Gilliam

LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300,
Austin, TX 78701-4042
Tel: (512) 305-4700
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200,
Dallas, TX 75201-6776
Tel: (214) 740-8000
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
600 Travis, 3400 Chase Tower,
Houston, TX 77002
Tel: (713) 226-1200
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

THOMPSON & KNIGHT, PC
Burnett Plaza, Suite 1600,
801 Cherry Street, Unit #1,
Fort Worth, TX 76102-6881
Tel: (817) 347-1700
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
1200 Smith Street, Suite 3600,
Houston, TX 77002
Tel: (713) 654-8111
Contact: Timothy R. McCormick

Revised (12/03)

MDL-000029

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

THOMPSON & KNIGHT, PC
1700 Pacific Avenue, Suite 3300,
Dallas, TX 75201
Tel: (214) 969-1103
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
98 San Jacinto Boulevard, Suite 1200,
Austin, TX 78701
Tel: (512) 469-6100
Contact: Timothy R. McCormick

WEIL, GOTSHAL & MANGES LLP
100 Crescent Court,
Dallas, TX 75201
Tel: (214) 746-7700
Contact: Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
700 Louisiana – Suite 1600,
Houston, TX 77002
Tel: (713) 546-5000
Contact: Ralph I. Miller

**VIRGINIA**

COOLEY GODWARD, LLP
One Freedom Square, Reston Town Center,
11951 Freedom Drive,
Reston, VA 20190-5601
Tel: (703) 456-8082
Contact: Robert R. Vieth

GREENBERG TRAURIG
1750 Tysons Boulevard 12th Fl.,
McLean, VA 22102
Tel: (703) 749-1300
Contact: Joe R. Reeder / John Scalia

MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800,
McLean, VA 22102
Tel: (703) 712-5000
Contact: Charles McIntyre

MCGUIREWOODS LLP
One James Center, 901 East Cary Street,
Richmond, VA 23219
Tel: (804) 775-1000
Contact: Anne Marie Whittemore

WILMER, CUTLER & PICKERING
1600 Tysons Boulevard, 10th Floor,
Tysons Corner, VA 22102
Tel: (703) 251-9700
Contact: David P. Donovan

WILSON, SONSINI, GOODRICH & ROSATI
7927 Jones Branch Drive, Suite 400,
McLean, VA 22102
Tel: (650) 320-4904
Contact: Bruce Vanyo

**WASHINGTON**

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101-1688
Tel: (206) 622-3150
Contact: Stephen M. Rummage

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101-1688
Tel: (206) 622-3150
Contact: Ladd B. Leavens

FOSTER PEPPER & SHEFELMAN
1111 Third Avenue, Suite 3400,
Seattle, WA 98101-3299
Tel: (206) 447-8998
Contact: Tim J. Filer / Roger D. Mellem

GRAY CARY
701 Fifth Avenue, Suite 7000,
Seattle, WA 98104-7044
Tel: (206) 839-4800
Contact: Stellman Keehnel

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue, Suite 4100,
Seattle, WA 98101-2338
Tel: (206) 223-7000
Contact: Christopher B. Wells / James B.
Stoetzer / James L. Robart / Larry S. Gangnes /
Rudy A. Englund

PERKINS COIE LLP
1201 Third Avenue, Ste. 4800,
Seattle, WA 98101-3099
Tel: (206) 583-8888
Contact: Barry M. Kaplan / Harry H. Schneider /
Ronald L. Berenstain

Revised (12/03)

MDL-000030

*DELPHI CONFIDENTIAL*

**APPENDIX B**

I.    **DEFINITIONS**

(a)    "**Crisis**" means:

(1)    a **Delisting Crisis**; or

(2)    one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a "**Material Effect on an Organization's Common Stock Price**":

(i)    *Negative earning or sales announcement*

The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

(ii)    *Loss of a patent, trademark or copyright or major customer or contract*

The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

(iii)    *Product recall or delay*

The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

(iv)    *Mass tort*

The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(v)    *Employee layoffs or loss of key executive officer(s)*

The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

(vi)    *Elimination or suspension of dividend*

The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

(vii)    *Write-off of assets*

The public announcement that an **Organization** intends to write off a material amount of its assets.

MDL-000031

*DELPHI CONFIDENTIAL*

(viii)  *Debt restructuring or default*

The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix)  *Bankruptcy*

The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x)  *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)  *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**^SM has been exhausted.

(b)  **"Crisis Firm"** means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any **"Crisis Firm"** may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)  **"Crisis Loss"** means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)  **"Crisis Services"** means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

75013 (2/00)

MDL-000032

*DELPHI CONFIDENTIAL*

(e) "Delisting Crisis" means written notice to an **Organization** that such **Organization**'s securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f) "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization**'s common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.   EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i)   any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii)  the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii) the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.   PRE-APPROVED CRISIS FIRMS

(a)   For all **Crisis** (including a **Delisting Crisis**, **Crisis Firm(s)** means any public relations firm listed in (1) − (8) below:

(1) ABERNATHY MACGREGOR SCANLON
501 Madison Avenue
New York, NY 10022
(212) 371-5999
Contact: James T. MᵃᶜGregor

(2) BURSON-MARSTELLER
230 Park Avenue South
New York, NY 10003-1566
(212) 614-5236
Contact: Michael Claes

(3) KEKST AND COMPANY
437 Madison Avenue
New York, NY 10022
(212) 593-2655
Contact: Andrew Baer

(4) ROBINSON LERER & MONTGOMERY
75 Rockefeller Plaza, 6th floor
New York, NY 10019
(212) 484-7721
Contact: Michael Gross

(5) SARD VERBINNEN & CO.
630 Third Avenue
New York, NY 10017
(212) 687-8080
Contact: Paul Verbinnen or George Sard

(6) SITRICK & COMPANY
2029 Century Park East
Suite 1750
Los Angeles, CA 90067
(310) 788-2850
Contact: Michael Sitrick

MDL-000033

DELPHI CONFIDENTIAL

| | |
|---|---|
| (7)   The MWW Group<br>1212 Avenue of the Americas<br>5th Floor<br>New York, NY 10036<br>(212) 827-3757<br>Contact: Michael Lendener | (8)   KROLL ASSOCIATES<br>900 3rd Avenue<br>New York, NY  10022<br>(212) 833-3385<br>Contact:  Richard G. McCormick |

(b)   Solely for **Delisting Crisis**, "**Crisis Firm(s)**" shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

MDL-000034

## ENDORSEMENT# *1*

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number   *931–88–56*
issued to *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### MICHIGAN
### AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" shall mean the insurance company which
issued this policy; and 2) "First Named Insured" shall mean the Named Corporation,
Named Organization, Named Sponsor, Named Insured, or Insured stated in the
declarations page.

It is hereby agreed and understood that the cancellation condition is deleted and replaced
by the following:

1.  This policy may be cancelled at any time at the request of the First Named Insured,
    in which case the Insurer shall, refund the excess of paid premium or assessment
    above the pro rata rates for the expired time.

2.  This policy may be cancelled at any time by the Insurer by mailing to the First
    Named Insured at the First Named Insured's address last known of the Insurer or an
    authorized agent of the Insurer, with postage fully prepaid, a not less than ten (10)
    days' written notice of cancellation with or without tender of the excess of paid
    premium or assessment above the pro rata premium for the expired time. The
    excess, if not tendered, shall be refunded on demand.

3.  The minimum earned premium on any policy cancelled hereunder shall not be less
    than the pro rata premium for the expired time or $25.00, whichever is greater.

All other terms and conditions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

### END 001

52149 (3/93)

MDL-000035

## ENDORSEMENT# 2

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number  *931-88-56*
issued to *DELPHI CORPORATION*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE PROGRAM**

**MICHIGAN AMENDATORY ENDORSEMENT**

The policy is hereby amended as follows:

Clause 7. **NOTICE/CLAIM REPORTING PROVISIONS**, is amended by the addition of the following:

- Notice given by or on behalf of the **Named Entity** to an authorized agent of the **Insurer** shall be deemed notice to the **Insurer** provided such notice contains sufficient particulars so as to reasonably allow the **Insurer** to identify the policy to which the notice applies.

Clause 12. **ORGANIZATIONAL CHANGES**, paragraph (a), is deleted in its entirety and replaced with the following:

(a)   If during the **Policy Period**:

(1)   the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2)   any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(either of such events being a **Transaction**), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may be cancelled at any time after a **Transaction** occurs at the request of the **Named Entity** in which case the **Insurer** shall refund the excess of paid premium above the pro rata rates for the expired time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of the policy.

Clause 14. **OTHER INSURANCE AND INDEMNIFICATION**, is deleted in its entirety and replaced with the following:

14.   **OTHER INSURANCE AND INDEMNIFICATION**

If there is any valid and collectible insurance which applies to any **Loss** covered by this policy, the **Insurer** shall not be liable for a greater proportion of such **Loss** than the applicable **Limit of Liability** under this policy for such **Loss** bears to the total applicable **Limit of Liability** of all valid and collectible insurance against them unless

*END 002*

MDL-000036

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# *2*    (continued)

such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 002*

MDL-000037

## ENDORSEMENT# *3*

This endorsement, effective *12:01 am*     *February 5, 2004*        forms a part of
policy number   *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly
     or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not
     limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or
         on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time
         possessed, handled, used, processed, stored, transported or disposed of by or
         on behalf of the **Organization**; or

   (3)   the furnishing by an Insured or the **Organization** of services, materials, parts
         or equipment in connection with the planning, construction, maintenance,
         operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its shareholders
         which allege, arise from, are based upon, are attributed to or in any way
         involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear
           Energy Liability Insurance Association, Mutual Atomic Energy Liability
           underwriters, or Nuclear Insurance Association of Canada, or would be insured
           under any such policy but for its termination or exhaustion of its limit of
           liability; or,

     (2)   with respect to which: (a) any person or organization is required to maintain
           financial protection pursuant to the Atomic Energy Act of 1954, or any law
           amendatory thereof, or (b) the **Insured** is, or had this policy not been issued
           would be, entitled to indemnity from the United States of America, or any
           agency thereof, under any agreement entered into by the United States of
           America, or any agency thereof, with any person or organization.

As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear facility**" means:

   (a)   any nuclear reactor;

   (b)   any equipment or device designed or used for

      (1)   separating the isotopes of uranium or plutonium,

### *END 003*

MDL-000038

<u>ENDORSEMENT#</u> *3*    (continued)

(2)    processing or utilizing spent fuel, or

(3)    handling, processing or packaging wastes;

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material," "Special Nuclear Material,"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE


*END 003*

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# *4*

This endorsement, effective *12:01 am*　　*February 5, 2004*　　forms a part of
policy number   *931-88-56*
issued to *DELPHI CORPORATION*

by　*National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon, attributable to the ownership, management, maintenance, operation and/or control by the **Organization** of any captive insurance company or entity including but not limited to any **Claim** alleging the insolvency or bankruptcy of an **Organization** as a result of such ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 004*

MDL-000040

## ENDORSEMENT# 5

This endorsement, effective *12:01 am*    *February 5, 2004*        forms a part of
policy number *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COMMISSIONS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured** alleging, arising out of, based upon, or attributable to:

(i)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time domestic or foreign government or armed
services officials, agents, representatives, employees or any members of their
family or any entity with which they are affiliated; or

(ii)    Payments, commissions, gratuities, benefits or any other favors to or for the
benefit of any full or part-time officials, directors, agents, partners,
representatives, principal shareholders, or owners or employees, or **"Affiliates"**
(as that term is defined in The Securities Exchange Act of 1934, including any
officers, directors, agents, owners, partners, representatives, principal
shareholders or employees of such **Affiliates**) of any customers of the
company or any members of their family or any entity with which they are
affiliated; or

(iii)    Political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 005*

MDL-000041

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# 6

This endorsement, effective *12:01 am      February 5, 2004*      forms a part of
policy number  *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED AND
### SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is hereby amended as follows:

(1)     The Definition of and all provisions referring to " **No Liability**" are hereby
deleted in their entirety.

(2)     Clause 6 RETENTION CLAUSE is deleted in its entirety and replaced by the
following:

### 6.     RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising
from a **Claim** which is in excess of the applicable Retention amounts stated
in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to
be borne by an **Organization** and/or the **Insured Person** and remain uninsured,
with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention
amount specified in:

(i)   Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;
(ii)   Item 4(b) applies to **Loss** that arises out of an **Employment Practices
Claim**; and
(iii)   Item 4(c) applies to **Loss** that arises out of any **Claim** other than a
**Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging
the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated
in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the
highest of such Retention amounts shall be deemed the Retention amount
applicable to **Loss** (to which a Retention is applicable pursuant to the terms
of this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

### END 6

*DELPHI CONFIDENTIAL*

<u>ENDORSEMENT# *6*</u>    (Co⋯ued)

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number  *931-88-56*
issued to  *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

      (3)    Item 4 of the Declarations is hereby deleted in its entirety and replaced by
           the following:

| 4 | **RETENTION:** | Not applicable to **Non-Indemnifiable Loss** | | | | |
|---|---|---|---|---|---|---|
| 4(a) | **Securities Claims:** | $10,000,000 | 4(b) | **Employment Practices Claims:** | | N/A |
| 4(c) | All other **Claims:** | $5,000,000 | | | | |

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 6*

**MDL-000043**

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# 7

This endorsement, effective *12:01 am*      *February 5, 2004*      forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PENDING AND PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s):

> alleging, arising out of, based upon or attributable to any pending or prior litigation as of February 5, 1999 or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 7*

**MDL-000044**

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# 8

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ORGANIZATION CHANGES AMENDED

In consideration of the premium charged, it is hereby understood and agreed that paragraph (b) of Clause 12, Organizational Changes, is deleted inn its entirety and replaced by the following:

(b) *Subsidiary Additions*: " Subsidiary" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

(1) whose assets total less than 10% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

(2) whose assets total 10% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a " Subsidiary" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter " **Auto-Subsidiary Period**");

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 8*

**MDL-000045**

### ENDORSEMENT# *9*

This endorsement, effective *12:01 am*   *February 5, 2004*   forms a part of
policy number  *931-88-56*
issued to  *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AMENDMENT TO "IN FACT"

In consideration of the premium charged, it is hereby understood and agreed that Exclusions (a) and (c) are deleted in their entirety and replaced by the following:

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the **Insured** establishes the **Insured** was not legally entitled;

(c) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by the **Insured** if a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the **Insured**(s) establishes that such deliberate criminal or deliberate fraudulent act was committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 9*

**MDL-000046**

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# 10

This endorsement, effective *12:01 am        February 5, 2004*        forms a part of
policy number   *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EMPLOYMENT PRACTICES CLAIMS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
**Insurer** shall not be liable  to make any payment for **Loss** in connection with  any
**Employment Practices Claim(s)** made against any **Insured**.


ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 10*

**MDL-000047**

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# 11

This endorsement, effective *12:01 am      February 5, 2004*      forms a part of
policy number  *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DELETION OF COVERAGE D

In consideration for the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), insurance as is provided by COVERAGE D: **CRISISFUNDSM** INSURANCE is deleted in its entirety.

This policy shall not pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization**.

All provisions of this policy as they relate to insurance as would be provided to **Crisis Loss** under Coverage D, are hereby deleted in their entirety. However, the provisions of this policy shall remain in full force and effect as they relate to insurance as is provided to **Loss** under Coverage A, Coverage B and Coverage C.

It is further understood and agreed that Subsection (c) of Clause 22 is hereby deleted in its entirety and replaced with the following:

(c)    only after payment of Loss has been made pursuant to Clause 22(a) and Clause 22(b) above, then with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(i) of this policy.

**It is further understood and agreed THAT IN NO EVENT SHALL THIS ENDORSEMENT HAVE THE EFFECT OF EXPANDING COVERAGE AS IS PROVIDED BY COVERAGE A, COVERAGE B OR COVERAGE C OF THIS POLICY.**

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**END 11**

## ENDORSEMENT# 12

This endorsement, effective *12:01 am      February 5, 2004*      forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TIE–IN OF LIMITS ENDORSEMENT
### (ABSOLUTE)

In consideration of the premium charged, it is hereby understood and agreed that the combined **Limit of Liability** of the **Insurer** for all **Claims** both under this policy's **Limit of Liability**, as set forth in the Declarations of this policy, and also under policy No. **931-88-61** issued to DELPHI CORPORATION by NATIONAL UNION (or any renewal or replacement of such policy or which succeeds such policy in time) (" **Other AIG Policy**"), shall be 25,000,000.

Accordingly, the **Limit of Liability** for **Loss** under this policy shall be reduced by **Loss** incurred under the **Other AIG Policy** because the **Limit of Liability** under the **Other AIG Policy** is now part of and not in addition to the **Limit of Liability** of this policy as set forth in the Declarations of this policy.

Finally, nothing in this endorsement shall be construed to increase the **Insurer's Limit of Liability** set forth in the Declarations of such **Other AIG Policy** which shall remain the maximum liability of the **Insurer** for all **Claims** under such **Other AIG Policy**, or the **Insurer's Limit of Liability** under this policy as set forth in the Declarations of this policy which shall remain the maximum liability of the **Insurer** for all **Loss** in the aggregate under this policy.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 12*

**MDL-000049**

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# 13

This endorsement, effective *12:01 am      February 5, 2004*      forms a part of
policy number    *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COVERAGES B(i) DELETED
### ALLOCATION ENDORSEMENT

In consideration for the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), insurance as is provided by COVERAGE B(i): *Organization Liability* is hereby deleted in its entirety.

All provisions of this policy as they relate to insurance as would be provided to **Loss** under Coverage B(i) are hereby deleted in their entirety and the policy is hereby amended as follows:

**I.**

**Clause 1. INSURING AGREEMENTS** is hereby amended as follows:

**COVERAGE B: ORGANIZATION INSURANCE** is hereby deleted in its entirety and replaced with the following:

**COVERAGE B: ORGANIZATION INSURANCE**

*Indemnification of an **Insured Person***:    This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

**II.**

**Clause 2. DEFINITIONS** is hereby amended as follows:

1. The Definition of **Insured** is deleted in its entirety and replaced with the following:

" **Insured**" means any:

(1) **Insured Person**; or
(2) **Organization**, but only with respect to Coverage B and subject to its limitations.

**END 13**

*DELPHI CONFIDENTIAL*

**ENDORSEMENT# 13    (Continued)**

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number    *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


2. The Definition of **Securities Claim** is deleted in its entirety and replaced with the
   following:

> " **Securities Claim**" means a **Claim** made against any **Insured Person**:

>> (1) alleging a violation of any federal, state, local or foreign regulation, rule
>>     or statute regulating securities (including, but not limited to, the purchase
>>     or sale or offer or solicitation of an offer to purchase or sell securities)
>>     which is:

>>> (a) brought by any person or entity alleging, arising out of, based upon or
>>>     attributable to the purchase or sale or offer or solicitation of an offer
>>>     to purchase or sell any securities of an **Organization**; or
>>> (b) brought by a security holder of an **Organization** with respect to such
>>>     security holder's interest in securities of such **Organization**; or
>> (2) brought derivatively on the behalf of an **Organization** by a security holder
>>     of such **Organization**, relating to a **Securities Claim** as defined in
>>     subparagraph (1) above.

3. The Definition of **Wrongful Act** is modified by deleting paragraph (2) thereof in its
   entirety.

**III.**

**Clause 6. RETENTION CLAUSE** is hereby amended by adding the following paragraph to
the end thereof:

With respect to any **Claim**, the applicable **Retention Amount** shall only apply to the
percentage of **Loss** which shall be payable by the **Insurer** and shall in no way be applicable
to the percentage of **Loss** payable by the **Organization**.


**END 13**

MDL-000051

**ENDORSEMENT# *13*    (C(   nued)**

This endorsement, effective *12:01 am*        *February 5, 2004*        forms a part of
policy number  *931-88-56*
issued to   *DELPHI CORPORATION*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


**IV.**

Clause 8.  DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE
ADVANCEMENT OF DEFENSE COSTS) is deleted in its entirety and replaced with the
following:

8.    DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT
      OF DEFENSE COSTS)

      (a)    Under Coverage A, B and C of this policy, except as hereinafter stated, the
             **Insurer** shall advance, excess of any applicable retention amount, covered
             **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer**
             of such defense bills. Such advance payments by the **Insurer** shall be repaid
             to the **Insurer** by each and every **Insured Person** or **Organization**, severally
             according to their respective interests, in the event and to the extent that
             any such **Insured Person** or **Organization** shall not be entitled under this
             policy to payment of such **Loss**.

      (b)    The **Insurer** does not, under this policy assume any duty to defend. The
             **Insureds Person** and, with respect to Coverage B, the **Organization**, shall
             defend and contest any **Claim** made against them. The **Insureds** shall not
             admit or assume any liability, enter into any settlement agreement, stipulate
             to any judgment, or incur any **Defense Costs** without the prior written
             consent of the **Insurer**. Only those settlements, stipulated judgments and
             **Defense Costs** which have been consented to by the **Insurer** shall be
             recoverable as **Loss** under the terms of this policy. The **Insurer's** consent
             shall not be unreasonably withheld, provided that the **Insurer** shall be entitled
             to effectively associate in the defense, the prosecution and the negotiation
             of any settlement of any **Claim** that involves or appears reasonably likely to
             involve the **Insurer**.

      (c)    The **Insurer** shall have the right to associate fully and effectively with each
             and every **Insured Person** and, with respect to Coverage B, the **Organization**,
             in the defense and prosecution of any **Claim** or any counterclaim, cross-claim
             or third party claim of any **Claim** that involves, or appears reasonably likely
             to involve, the **Insurer**, including, but not limited to, negotiating a settlement.
             Each and every such **Insured** shall give the **Insurer** full cooperation and such
             information as it may reasonably require relating to the defense of any **Claim**
             and the prosecution of any counterclaim, cross-claim or third party claim,
             including without limitation the assertion of indemnification or contribution


*END 13*

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# 13    (C(   nued)

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

rights. Each and every obligation of such **Insureds** hereunder is a condition
precedent to the coverage afforded by this policy, including the obligation to
advance **Defense Costs**.

Notwithstanding any of the foregoing, if all such **Insureds** are able to dispose of all
**Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for
an amount not exceeding any applicable retention amount, then the **Insurer's**
consent shall not be required for such disposition.

(d)   No **Organization** is covered in any respect under Coverage A or Coverage C.
An **Organization** is covered, subject to the policy's terms, conditions and
limitations only with respect to its indemnification of **Insured Persons** under
Coverage B as respects a **Claim** against such **Insured Persons**. Accordingly,
the **Insurer** has no obligation under this policy for covered **Defense Costs**
incurred by, judgments against or settlements by an **Organization** arising out
of a **Claim** made against an **Organization**, or any obligation to pay **Loss**
arising out of any legal liability that an **Organization** has to a claimant.

(e)   PRESET ALLOCATION

In connection with any **Securities Claim**, with respect to **Loss** incurred as: (i)
**Defense Costs** jointly incurred by, (ii) any joint settlement entered into by, or
(iii) any judgment of joint and several liability against an **Organization** and an
**Insured Person**, the following shall govern:

(i)    for any **Loss** incurred while a **Securities Claim** is made and maintained
solely against an **Insured Person**, this policy shall provide coverage for
100% of **Loss** incurred by the **Insured Person** up to the Limit of
Liability of the policy, subject to the policy's terms, conditions and
exclusions;

(ii)   for any **Loss** incurred while a **Securities Claim** is made and maintained
solely against the **Organization** and not an **Insured Person**, this policy
shall not provide any coverage for such **Loss**;

(iii)  for any **Loss**, other than **Non-indemnifiable Loss**, incurred while a
**Securities Claim** as defined in subparagraph (1)(a) or (1)(b) of the
Definition of **Securities Claim** is jointly made and maintained against
both the **Organization** and one or more **Insured Person(s)**, this policy
shall pay 100% of such **Loss** up to the Limit of Liability of the policy,
subject to the policy's terms, conditions and exclusions, and the
**Organization** shall pay the remaining 0% of each and every such
**Loss**;

*END 13*

MDL-000053

*DELPHI CONFIDENTIAL*

**ENDORSEMENT# *13*    (C(  nued)**

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

       (iv)    for any **Loss** incurred while a **Securities Claim** as defined in subparagraph (2) of the Definition of **Securities Claim** is jointly made and maintained against both the **Organization** and one or more **Insured Person(s)**, this policy shall provide coverage for 100% of such **Loss** up to the Limit of Liability of the policy and subject to the terms, conditions and exclusions; and

       (v)    this policy shall provide coverage for 100% of any **Non-indemnifiable Loss** incurred by any **Insured Person** up to the Limit of Liability of the policy, subject to the policy's terms, conditions and exclusions.

  (f)    In connection with any **Claim**, other than a **Claim** that is or includes a **Securities Claim**, with respect to: (i) **Defense Costs** jointly incurred by, (ii) any joint settlement entered into by, or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person**, there shall be a fair and equitable allocation as between any such **Organization** and any such **Insured Person**, taking into account the relative legal and financial exposures and the relative benefits obtained by any such **Insured Person** and any such **Organization**, without any presumption that the coverage afforded to the **Insured Person** shall in any way reduce the allocation to the **Organization** which shall not be insured for such allocation. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

  (g)    The **Organization** hereby agrees to indemnify the **Insured Persons** to the fullest extent that an **Organization** is permitted or required to provide such indemnification pursuant to law, common or statutory, or contract or by the charter, by-laws, operating agreement or similar documents of an **Organization**, which are hereby deemed to incorporate, for the purposes of this policy, the broadest provisions of the law which determines or defines such rights of indemnity. The **Organization** hereby agrees to indemnify the **Insured Persons** to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

*END 13*

MDL-000054

*DELPHI CONFIDENTIAL*

ENDORSEMENT# *13*    (Co...nued)

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number    *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


### V.

It is further understood and agreed that **Clause 19. BANKRUPTCY and Clause 22. ORDER OF PAYMENTS** are hereby deleted in their entirety and replaced with the following:

### 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

The coverage provided under this policy is intended as a matter of priority to protect and benefit the **Insured Persons** such that, in the event of bankruptcy of the **Organization**, the **Insurer** shall first pay **Loss** under Coverages A and C prior to paying **Loss** under Coverage B.

### VI.

It is further understood and agreed THAT IN NO EVENT SHALL THIS ENDORSEMENT HAVE THE EFFECT OF EXPANDING COVERAGE AS IS PROVIDED BY COVERAGE A; COVERAGE B(ii); OR COVERAGE C OF THIS POLICY.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

*END 13*

MDL-000055

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am*        *February 5, 2004*        forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CANCELLATION PROVISIONS CLARIFIED

In consideration of the premium charged, it is hereby understood and agreed that Clause
**11. CANCELLATION CLAUSE** is deleted in its entirety and is replaced by the following:

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written
prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized
agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of
non-payment of premium by the **Named Entity**. In the event of non-payment of
premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the
**Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first
class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations,
written notice stating when, not less than 15 days thereafter, the cancellation shall be
effective. The mailing of such notice as aforesaid shall be sufficient proof of notice.
The **Policy Period** terminates at the date and hour specified in such notice, or at the
date and time of surrender. The **Insurer** shall have the right to the premium amount for
the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the
customary short rate proportion of the premium herein. If the period of limitation
relating to the giving of notice as set forth in this Clause 11 is also set forth in any law
controlling the construction thereof, then such period shall be deemed to be amended
so as to be equal to the minimum period of limitation set forth in the controlling law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 14*

**MDL-000056**

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# 15

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number  *931-88-56*
issued to  *DELPHI CORPORATION*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RETENTION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that, solely
with respect to Claims made against DELPHI CHARITABLE FOUNDATION, Item 4,
Retention, of the Declarations page is hereby amended as follows:

I.    ITEM 4.

| 4 | RETENTION:    Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** - (See Clause 6 for details.) | | |
|---|---|---|---|
| 4(a) | **Securities**    **Claims:** $100,000 | 4(b) | **Employment Practices  Claims:** $N/A |
| 4(c) | All   other    **Claims:** $100,000 | | |

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED

*END 15*

AUTHORIZED REPRESENTATIVE

**MDL-000057**

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# *16*

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NEW POLICY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in the event that the **Insurer** shall announce either: (1) a new Directors and Officers Insurance policy form; or (2) a standard endorsement providing enhancements of coverage to this policy form, which is to be made available to all **Insureds** or potential **Insureds** and for which no additional premium is required, then the **Named Entity** shall have the right to such new policy or such new coverage enhancement endorsement subject to all underwriting information or particulars as the **Insurer** may require for such new policy or enhanced coverage.


ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.


*END 16*

_____
AUTHORIZED REPRESENTATIVE

**MDL-000058**

### ENDORSEMENT# *17*

This endorsement, effective *12:01 am*        *February 5, 2004*        forms a part of
policy number    *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY.**

**THIS IS ACCIDENT ONLY COVERAGE.  IT DOES NOT COVER SICKNESS OR DISEASE**

**TRAVEL ACCIDENT INSURANCE ENDORSEMENT**
**Executive & Organization Liability Insurance Policy**

The Policy is amended as follows:

I.    **ADDITIONAL DECLARATIONS** – For the purpose of the coverage provided by this
Endorsement, the following is added to the Declarations page:

1.    **Travel Accident Insurance Effective Date:** *February 5, 2004*

2.    **Classification of Eligible Persons:**

All current, duly elected and appointed Directors and Corporate Officers of the
**Named Entity.**

3.    **Principal Sum Amount (per Covered Person):** *$250,000*

4.    **Covered Hazard(s):**

Coverage is provided for **Injury** sustained by a **Covered Person** 24 hours per
day, 365 days per year.

With respect to any period of time such **Covered Person** is traveling on a
conveyance, coverage applies only with respect to **Injury** sustained by the
person:

1.    While operating or riding in or on (including getting in or out of, or on or
off of), or by being struck or run down by any conveyance being used as
a means of land or water transportation, except:

a.    Any such conveyance the **Covered Person** has been hired to
operate or for which the **Covered Person** has been hired as a crew
member;

b.    Any such conveyance the **Covered Person** is operating, or for
which the **Covered Person** is performing as a crew member,
(including getting in or out of, or on or off of) for the
transportation of passengers or property for hire, profit or gain; or

2.    While riding as a **Passenger** in or on (including getting in or out of, or
on or off of):

a.    Any **Named Entity** or any **Subsidiary** Aircraft
b.    Any **Civilian Aircraft**; or

*END 017*

MDL-000059

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# *17*    (continued)

c.    Any **Military Air Transport Aircraft**; or

3.    By being struck or run down by any aircraft.

5.    **Accident Aggregate Limit:** 10 times **Principal Sum** per accident.

II.    **INSURING AGREEMENT – TRAVEL ACCIDENT INSURANCE –** For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 1., INSURING AGREEMENTS:

• **TRAVEL ACCIDENT INSURANCE**

This Policy insures **Covered Persons** against a covered Accidental Death or Dismemberment or Paralysis loss arising from an **Injury** that results from an accident that occurs on or after the **Travel Accident Insurance Effective Date** and during a **Covered Hazard** as set out below. The **Principal Sum** Amount and the **Covered Hazard(s)** applicable to each **Covered Person** are set out in the **Schedule**.

A.    **Accidental Death Benefit.** If **Injury** to the **Covered Person** results in death within 365 days of the date of the accident that caused the **Injury**, the **Insurer** will pay 100% of the **Principal Sum.**

B.    **Accidental Dismemberment and Paralysis Benefit.** If **Injury** to the **Covered Person** results, within 365 days of the date of the accident that caused the **Injury**, in any one of the **Injury Losses** specified below, the **Insurer** will pay the percentage of the **Principal Sum** shown below for that **Injury Loss**:

| For Injury Loss of | Percentage of Principal Sum |
|---|---|
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and the Sight of One Eye | 100% |
| One Foot and the Sight of One Eye | 100% |
| Speech and Hearing in Both Ears | 100% |
| One Hand or One Foot | 50% |
| Sight of One Eye | 50% |
| Speech or Hearing in Both Ears | 50% |
| Hearing in One Ear | 25% |
| Thumb and Index Finger of Same Hand | 25% |
| Quadriplegia | 100% |
| Paraplegia | 50% |
| Hemiplegia | 50% |
| Uniplegia | 25% |

"**Injury Loss**" of a hand or foot means complete severance through or above the wrist or ankle joint. "**Injury Loss**" of sight of an eye means total and irrecoverable loss of the entire sight in that eye. "**Injury Loss**" of hearing in an ear means total and irrecoverable loss of the entire ability to hear in that ear. "**Injury Loss**" of speech means total and irrecoverable loss of the entire ability to speak. "**Injury Loss**" of thumb and index finger means complete severance through or above the metacarpophalangeal joint of both digits.

*END 017*

MDL-000060

DELPHI CONFIDENTIAL

## ENDORSEMENT# 17    (continued)

"Quadriplegia" means the complete and irreversible paralysis of both upper and both lower limbs.  "Paraplegia" means the complete and irreversible paralysis of both lower limbs.  "Hemiplegia" means the complete and irreversible paralysis of the upper and lower limbs of the same side of the body.  "Uniplegia" means the complete and irreversible paralysis of one limb. "Limb" means entire arm or entire leg.

If more than one **Injury** Loss is sustained by a **Covered Person** as a result of the same accident, only one amount, the largest, will be paid.

III.    **DEFINITIONS** – For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 2., DEFINITIONS:

- **Airworthiness Certificate** – means the "Standard" Airworthiness Certificate issued by the Federal Aviation Agency of the United States of America or its equivalent issued by the governmental authority having jurisdiction over civil aviation in the country of registry.

- **Civilian Aircraft** – means a civil or public aircraft having a current and valid **Airworthiness Certificate** and piloted by a person who has a current and valid medical certificate and pilot certificate with appropriate ratings for the aircraft.  A **Civilian Aircraft** does not include a **Named Entity** Aircraft.

- **Immediate Family Member** – means a person who is related to the **Covered Person** in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), brother or sister (includes stepbrother or stepsister), or child (includes legally adopted or stepchild).

- **Injury** – means bodily **Injury**: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's Travel Accident coverage is in force; (2) which occurs under the circumstances described in a **Covered Hazard** applicable to that person; and (3) which directly (independent of sickness, disease or any other cause) causes a covered loss under a Benefit applicable to such **Covered Hazard**.

- **Covered Person** – means a person: (1) who is a member of an eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule**; (2) for whom premium has been paid; and (3) while such person's Travel Accident coverage is in force.

- **Military Air Transport Aircraft** – means an aircraft having a current and valid **Airworthiness Certificate**; piloted by a person who has a current and valid medical certificate and pilot certificate with appropriate ratings for the aircraft; and operated by the United States of America, or by the similar air transport service of any duly constituted governmental authority of any other recognized country.

- **Passenger** – means a person not performing as a pilot, operator or crew member of a conveyance.

- **Physician** – means a licensed practitioner of the healing arts acting within the scope of his or her license who is not: (1) the **Covered Person**; (2) an **Immediate Family Member**; or (3) retained by any **Named Entity** or any **Subsidiary**.

*END 017*

MDL-000061

- **Schedule** – means the Additional Declarations section of this Travel Accident Insurance Endorsement.

- **Named Entity** Aircraft – means any aircraft with a current and valid **Airworthiness Certificate** and owned, leased or operated by the **Named Entity** or any **Subsidiary**.

**IV.   EXCLUSIONS** – For the purpose of the coverage provided by this Endorsement, Clause 4., EXCLUSIONS, is deleted in its entirety and replaced with the following **Exclusions:**

- **EXCLUSIONS** No coverage shall be provided for Travel Accident insurance and no payment shall be made for any Travel Accident loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks:

1.   suicide or any attempt at suicide or intentionally self–inflicted **Injury** or any attempt at intentionally self–inflicted **Injury** or auto–eroticism.

2.   war, whether declared or not, or any act or condition incident to war, civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

3.   full–time active duty in the armed forces, National Guard or organized reserve corps of any country or international authority (unearned premium will be returned if the **Covered Person** enters military service); (National Guard or reserve active duty for regularly scheduled training purposes is not excluded.)

4.   the **Covered Person** being under the influence of intoxicants while operating any vehicle or means of transportation or conveyance.

5.   the **Covered Person** being under the influence of drugs unless taken under the advice of and as specified by a **Physician**.

6.   the **Covered Person's** commission of or attempt to commit a crime.

7.   travel or flight in or on (including getting in or out of, or on or off of) any vehicle used for aerial navigation, whether as a pilot, operator or crew member.

8.   sickness, or disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these.

9.   infections of any kind regardless of how contracted, except bacterial infections that are directly caused by botulism, ptomaine poisoning or an accidental cut or wound independent and in the absence of any underlying sickness, disease or condition including but not limited to diabetes.

10.   the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment.

11.   stroke or cerebrovascular accident or event; cardiovascular accident or event; myocardial infarction or heart attack; coronary thrombosis; aneurysm.

**V.   LIMITS OF INSURANCE** – For the purpose of the coverage provided by this Endorsement, the following is added to the end of Clause 5., LIMIT OF LIABILITY

*END 017*

MDL-000062

*DELPHI CONFIDENTIAL*

ENDORSEMENT# *17*   (continued)

(FOR ALL LOSS – INCLUDING DEFENSE COSTS):

▪ **Travel Accident Aggregate Limit.** The maximum amount payable under the Travel Accident Benefit may be reduced if more than one **Covered Person** suffers a loss as a result of the same accident. The maximum amount payable for all such losses for all **Covered Persons** will not exceed the amount shown as the **Accident Aggregate Limit** in the **Schedule**. If the combined maximum amount otherwise payable for all **Covered Persons** must be reduced to comply with this provision, the reduction will be taken by applying the same percentage of reduction to the individual maximum amount otherwise payable for each **Covered Person** for all such losses. The **Travel Accident Aggregate Limit** is in addition to the Policy's Limit of Liability.

VI. **CLAIMS PROVISIONS** – For the purpose of coverage provided by this Endorsement, Clause 7., NOTICE OF CLAIM/REPORTING PROVISIONS, is deleted in its entirety and replaced with the following:

▪ **Notice of Claim.** Written notice of a claim for benefits must be given to the **Insurer** within 20 days after a **Covered Person's** loss, or as soon thereafter as reasonably possible. Notice given by or on behalf of the claimant to the **Insurer** at American International Companies®, Accident and Health Claims Division, P.O. Box 15701, Wilmington, DE 19850-5701, with information sufficient to identify the **Covered Person**, is deemed notice to the **Insurer**.

▪ **Claim Forms.** The **Insurer** will send claim forms to the claimant upon receipt of a written notice of claim. If such forms are not sent within 15 days after the giving of notice of a claim, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed herein for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the **Covered Person's** name, the **Named Entity** name and the Policy number.

▪ **Proof of Loss.** Written proof of loss must be furnished to the **Insurer** within 90 days after the date of the loss. If the loss is one for which this Endorsement requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as the **Insurer** may reasonably require. Failure to furnish proof within the time required neither invalidates nor reduces any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

▪ **Payment of Claims.** Upon receipt of due written proof of death, payment for loss of life of a **Covered Person** will be made, in equal shares, to the survivors in the first surviving class of those that follow: the **Covered Person's** (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the **Covered Person's** estate.

Upon receipt of due written proof of loss, payments for all losses, except loss of life, will be made to (or on behalf of, if applicable) the **Covered Person** suffering the loss. If a **Covered Person** dies before all payments due have been made, the amount still payable will be paid as described above for loss of life.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property. If the

*END 017*

MDL-000063

## ENDORSEMENT# *17*    (continued)

payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at the **Insurer's** option, to any relative by blood or connection by marriage of the payee, who, in the **Insurer's** opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment the **Insurer** makes in good faith fully discharges the **Insurer's** liability to the extent of the payment made.

- **Time of Payment of Claims.** Benefits payable for any loss other than loss for which this Endorsement provides any periodic payment will be paid immediately upon the **Insurer's** receipt of due written proof of the loss. Subject to the **Insurer's** receipt of due written proof of loss, all accrued benefits for loss for which this Endorsement provides periodic payment will be paid at the expiration of each month during the continuance of the period for which the **Insurer** is liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

- **Physical Examination and Autopsy.** The **Insurer** at its own expense has the right and opportunity to examine the person of any individual whose loss is the basis of claim hereunder when and as often as it may reasonably require during the pendency of the claim and to make an autopsy in case of death where it is not forbidden by law.

**VII.**    **ADDITIONAL PROVISIONS** – For the purpose of the coverage provided by this Endorsement, the following is added to the Policy:

- **Covered Person's Effective Date.** A **Covered Person's** Travel Accident Insurance coverage begins on the latest of: (1) the **Travel Accident Insurance Effective Date;** (2) the date the person becomes a member of an eligible class of persons as described in **the Classification of Eligible Persons** section of the **Schedule;** or (3) the date the appropriate premium is paid for the **Covered Person.**

- **Covered Person Termination Date.** A **Covered Person's** Travel Accident Insurance coverage ends on the earliest of: (1) the date the Policy is terminated; (2) the date this Endorsement is terminated; (3) the premium due date if premiums for this coverage are not paid when due; or (4) the date the **Covered Person** ceases to be a member of any eligible class of persons as described in the **Classification of Eligible Persons** section of the **Schedule.**

Termination of coverage will not affect a claim for a covered loss that occurred while the **Covered Person's** Travel Accident Insurance coverage was in force.

All other terms, conditions, and exclusions of the Policy shall remain unchanged. However, Clauses 6, 8, 9, 10, 12, 13, 14, 17, 19 and 20 of the Policy do not apply to the coverage provided by this Endorsement.

_____
AUTHORIZED REPRESENTATIVE

### END 017

MDL-000064

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# 18

This endorsement, effective *12:01 am*      *February 5, 2004*      forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

#### ADDITION TO THE TERM EXECUTIVE

In consideration of the premium charged, it is hereby understood and agreed that the term
" **Executive**" is amended to include the individual(s) listed below, but solely for **Wrongful Acts** committed in his or her respective capacity(ies) described below.

#### CAPACITY
EXECUTIVE DIRECTOR OF EMPLOYEE BENEFITS
EXECUTIVE DIRECTOR OF INDUSTRIAL RELATIONS

Furthermore, provided that for the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the individuals afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify such persons pursuant to law (common or statutory) or contract or the charter, bylaws, operating agreement or similar documents of an **Organization** (which are hereby deemed to adopt the broadest provision of the law which determines, or defines such rights of indemnity). The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

It is further understood and agreed that only as respects any additional coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against an **Insured** alleging any **Wrongful Act** occurring prior to each individual's respective **Continuity Date** if an **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*END 18*

_____
AUTHORIZED REPRESENTATIVE

**MDL-000065**

*DELPHI CONFIDENTIAL*

**ENDORSEMENT# 19**

This endorsement, effective   *12:01 am*      *February 5, 2004*         forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**APPLICATION DEFINITION AMENDED**

In consideration of the premium charged it is hereby understood  and agreed that Clause 2.
DEFINITIONS (a) " **Application**," is deleted in its entirety and replaced by the following:

> "**Application**" means each  and every  signed application, any  attachments to  such
> applications, other  materials submitted  therewith  or  incorporated therein  and any
> other documents submitted in connection with the underwriting of this policy or the
> underwriting of any other directors and officers (or  equivalent)  liability policy issued
> by the Insurer, or any of its affiliates, of which this policy is a renewal, replacement
> or which it  succeeds in  time; and  any public  documents filed  by an  **Organization**
> within the last twelve months (12) months (prior to the inception date of this policy)
> with the Securities  and Exchange Commission  (SEC) (or any  similar federal, state,
> local or foreign regulatory agency),  including, but not limited  to, the **Organization's**
> Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 19*

MDL-000066

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# *20*

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number  *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY ENDORSEMENT
### (TRIPLE EXCESS)

In consideration of the premium  charged, it is hereby  understood and agreed that each  of
the following entities shall be deemed an " **Outside Entity.**"

### OUTSIDE ENTITY

1)    any not-for-profit organization;

2)    Covisent, LLC

3)    any for-profit entity

It is further  understood and agreed  that, solely  in regard to  the **Outside  Entity Executive**
coverage provided  by this policy for any **Executive** of the **Organization** serving as an
**Executive** of an **Outside Entity** listed in (3) above the policy is hereby amended as follows:

(1)    Clause 1 Coverage B(ii) is hereby  deleted in its  entirety and  replaced by the
following:

*(ii)*    *Indemnification of an **Insured Person***:  This policy shall pay  the **Loss** of an
**Organization** arising from a **Claim** made against an **Insured Person** (other than
an **Outside Entity  Executive**) for any **Wrongful Act** of such **Insured Person**,
but only to  the extent that  such **Organization** has  indemnified such **Insured
Person.**

(2)    The second paragraph of Clause 14 is hereby  deleted in its entirety and replaced  by
the following:

In the event  of a **Claim** made  against an **Outside Entity Executive**, coverage as is
afforded by this policy shall  be specifically excess of: (1)  any indemnification provided
by an **Outside  Entity**; (2) any insurance coverage  afforded to an **Outside Entity** or its
**Executives** applicable  to such **Claim**; and (3) any indemnification provided  by an
**Organization**. Further, in the event such  other **Outside Entity** insurance is provided by
the **Insurer** or any other company of American International Group, Inc. ( **AIG**) (or would
be provided but for  the application of the  retention amount, exhaustion  of the limit of
liability or failure to submit a notice of a claim as  required) then the **Insurer's** maximum
aggregate **Limit of Liability**  for all **Loss**  under this policy, as respects any  such **Claim**,
shall be reduced by the amount of the limit of liability (as  set forth on the Declarations)
of the other **AIG** insurance provided to such **Outside Entity**. It is further understood  and

### *END 20*

MDL-000067

ENDORSEMENT# *20*    (Co    ued)

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number    *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

agreed that for the purposes of the applicability of this policy to **Loss** of an **Outside Entity Executive** of an **Outside Entity** listed in (3) above, the **Organization** will be conclusively deemed to have indemnified the **Insureds** to the maximum extent that the **Organization** is permitted or required pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization** (which are hereby deemed to adopt the broadest provisions of the law which determined or defines such rights of indemnity). The **Organization** hereby agrees to indemnify the **Insureds** to the fullest extent permitted by law including the making in good faith of any required application for court approval.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 20*

MDL-000068

## ENDORSEMENT# 21

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number *931-88-56*
issued to *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PUNITIVE DAMAGES
### OTHER THAN EMPLOYMENT PRACTICES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Definition
(p) " **Loss**" is hereby amended by deleting the second paragraph thereof and replacing it
with the following:

> Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to
> this policy's other terms, conditions and limitations, including but not limited to
> exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts):
> (1) civil penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B)
> of the Foreign Corrupt Practices Act, 15 U.S.C. ' 78dd-2(g)(2)(B); and (2) with
> respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and
> multiplied damages imposed upon an **Insured**. Enforceability of this paragraph shall
> be governed by such applicable law that most favors coverage for such penalties and
> punitive, exemplary and multiplied damages.

It is further understood and agreed that solely in regard to the coverage provided by this
endorsement the **Insurer** shall not be liable to make any payment for **Loss** in connection
with any **Claim** made against an **Insured** arising out of, based upon or attributable to the
committing in fact of a dishonest act or any willful violation of any statute, rule or law.
For the purpose of determining the applicability of the foregoing exclusion the facts
pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any
other **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 21*

**MDL-000069**

*DELPHI CONFIDENTIAL*

## ENDORSEMENT# *22*

This endorsement, effective *12:01 am      February 5, 2004*        forms a part of
policy number   *931-88-56*
issued to *DELPHI CORPORATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TERRORISM EXCLUSION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that this
insurance does not apply to any loss, injury, damage, claim or suit, arising directly or
indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions.,
of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

Wherever used in this endorsement: 1) **"Insurer"** means the insurance company which
issued this policy; and 2) **"Insured"** means the Named Employer, Named Corporation,
Named Sponsor, Named Organization, Named Entity, Named Insured or Insured stated in
Item 1. of the Declarations.

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance
Act of 2002, an "act of terrorism" shall mean:

(1)   Act of Terrorism –

    (A)   Certification. – The term "act of terrorism" means any act that is certified by
        the Secretary of the Treasury of the United States of America, in concurrence
        with the Secretary of State, and the Attorney General of the United States of
        America --

            (i)    to be an act of terrorism;
            (ii)   to be a violent act or an act that is dangerous to --
                (I)    human life;
                (II)   property; or
                (III)  infrastructure;
            (iii)  to have resulted in damage within the United States of America, or
                outside of the United States of America in the case of --
                (I)    an air carrier or vessel described in paragraph (5)(B); [for the
                      convenience of this endorsement, paragraph (5)(B) reads:
                      occurs to an air carrier (as defined in Section 40102 of title
                      49, United States Code) to a United States flag vessel (or a
                      vessel based principally in the United States of America, on
                      which United States income tax is paid and whose insurance
                      coverage is subject to regulation in the United States of
                      America), regardless of where the loss occurs, or at the
                      premises of any United States of America mission]; or
                (II)   the premises of a United States of America mission; and
            (iv)   to have been committed by an individual or individuals acting on
                behalf of any foreign person or foreign interest, as part of an effort
                to coerce the civilian population of the United States of America or
                to influence the policy or affect the conduct of the United States
                Government by coercion.

*END 022*

MDL-000070

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# *22*   (continued)

(B)   Limitation. -- No act shall be certified by the Secretary as an act of terrorism if --

   (i)   the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

   (ii)   property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C)   Determinations Final. -- Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D)   Nondelegation. -- The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

For the purposes of this endorsement, the Insured: 1) acknowledges that it has received a Policyholder Disclosure Statement Under Terrorism Risk Insurance Act of 2002; 2) has elected not to purchase insurance coverage for losses arising out of an Act of Terrorism; 3) has not paid any premium for such coverage; and 4) has affirmatively authorized the Insurer to attach this exclusion.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 022*

MDL-000071

## ENDORSEMENT# 23

This endorsement, effective *12:01 am*        *February 5, 2004*        forms a part of
policy number  *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the
following Clause is added to the policy at the end thereof:

### SEVERABILITY

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon
the statements, warranties and representations contained in the **Application** as
being accurate and complete. All such statements, warranties and representations
are the basis for this policy and are material to the risk assumed by the **Insurer**, and
are to be considered as incorporated into this policy.

The **Insureds** agree that in the event that the particulars and statements contained
in the **Application** are not accurate and complete, then this Policy shall be void as to
any **Insured** who knew as of the inception date of the **Policy Period** of the facts that
were not accurately and completely disclosed in the **Application** (whether or not
such **Insured** knew that such facts were not accurately and completely disclosed in
the **Application**) and as to any **Insured** to whom such knowledge is imputed.

For purposes of determining whether knowledge shall be imputed to an **Insured**:

> (1) knowledge possessed by a past or present: (i) chief executive officer or
> (ii) chief financial officer of the **Named Entity** shall be imputed to all
> **Insureds**; and

> (2) knowledge possessed by an **Insured Person**, other than a past or present:
> (i) chief executive officer or (ii) chief financial officer of the **Named Entity**
> shall not be imputed to any other **Insured Person**.

Notwithstanding the foregoing, this policy shall provide coverage, subject to the
policy's terms, conditions and exclusions, for any **Non-Indemnifiable Loss** of any
**Insured Person** to whom knowledge is imputed pursuant to subparagraph (1) above,
provided that such **Insured Person** did not have knowledge of the facts that were
not accurately and completely disclosed.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

*END 23*

MDL-000072

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# *24*

This endorsement, effective *12:01 am*    *February 5, 2004*    forms a part of
policy number  *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of either the amendatory or the policy which are more favorable to the **Insured**; provided, however, that in no event shall this provision apply to the amended Discovery Clause per Endorsement #25 of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 24*

MDL-000073

### ENDORSEMENT# 25

This endorsement, effective *12:01 am    February 5, 2004*    forms a part of
policy number   *931-88-56*
issued to   *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DISCOVERY AMENDED
### PREMIUM PRESET ONE YEAR - ALL OTHER TBD

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

Except as indicated below, if the Named Corporation shall cancel or the Named Corporation or the Insurer shall refuse to renew this policy, the Named Corporation shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "Discovery Period") upon payment of the respective "Additional Premium Amount" described below in which to give to the Insurer written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) Claims first made against an Insured; and (ii) circumstances of which a Company or an Insured shall become aware, in either case during said Discovery Period and solely with respect to a Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy.

The Additional Premium Amount for: (1) one year shall be no more than 200% of the Full Annual Premium; (2) two years shall be an amount to be determined by the Insurer in its sole and absolute discretion; and (3) three years shall be an amount to be determined by the Insurer in its sole and absolute discretion. As used herein, "Full Annual Premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction as defined in Clause 12, the Named Corporation shall have the right to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction). The Insurer shall offer such Discovery Period pursuant to such terms, conditions, exclusions and additional premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The Discovery Period is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a Discovery Period together with any additional premium due is received by the Insurer no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or Transaction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 25*

**MDL-000074**

*DELPHI CONFIDENTIAL*

## NOTICE TO MICHIGAN INSUREDS

**MICHIGAN DISCLAIMER**
**Michigan Senate Bill 1213**
**Exempt Commercial Policyholder**

This following notice is being provided in compliance with Michigan Law:

**This policy is exempt from the filing requirements of section 2236 of the insurance code of 1956, 1956 PA 218, MCL 500.2236.**

MI Exempt Commercial Policy Disclaimer
Revised 3/2003

Page 1 of 1

MDL-000075

*DELPHI CONFIDENTIAL*

### ENDORSEMENT# 26

This endorsement, effective *12:01 am    May 5, 2004*          forms a part of
policy number  *931-88-56*
issued to    *DELPHI CORPORATION*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

#### ADDITION TO THE TERM EXECUTIVE

In consideration of the premium charged, it is hereby understood and agreed that the term " **Executive** " is amended to include the individual(s) listed below, but solely for **Wrongful Acts** committed in his or her respective capacity(ies) described below and subject to the individual's respective **Continuity Date.**

| INDIVIDUALS | CAPACITY | CONTINUITY DATE |
| --- | --- | --- |
| Roger S. Penske | Senior Advisor to the Board of Directors | February 5, 1999 |

Furthermore, provided that for the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the individuals afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify such persons pursuant to law (common or statutory) or contract or the charter, bylaws, operating agreement or similar documents of an **Organization** (which are hereby deemed to adopt the broadest provision of the law which determines, or defines such rights of indemnity). The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 26*

**MDL-000076**