**Hearing Date and Time: October 19, 2006 at 10:00 a.m.**
          **Response Date and Time: October 12, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

DEBTORS' FIRST OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN
<u>(I) DUPLICATE AND AMENDED CLAIMS AND (II) EQUITY CLAIMS</u>

("FIRST OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (the "First Omnibus Claims Objection").  In support of this First Omnibus Claims Objection, the Debtors respectfully represent as follows:

## Background

A.   The Chapter 11 Filings

1.   On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.   No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

3.   This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      As of December 31, 2005, Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

---

[1]     The aggregated financial data used in this objection generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.     The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[2]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.  The Debtors' Transformation Plan

11. On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

E.    Bar Date And Proofs Of Claim

13.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order"). Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor (collectively, the "Claimants") to file a proof of claim form (the "Proofs of Claim") with respect to each such Claim.

14.    On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of bar date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, upon (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements. In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

15.    In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), the USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal,

6

the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and the Vindicator, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

16.     Approximately 16,000 proofs of claim have been timely filed against the Debtors in these cases. In this First Omnibus Claims Objection, the Debtors are objecting to approximately 3,500 claims.[3]

## Relief Requested

17.     By this Objection, the Debtors seek entry of an order pursuant 11 U.S.C. § 502(b) and Bankruptcy Rule 3007 disallowing and expunging (a) those Claims set forth on Exhibit B attached hereto because they are duplicative of other Claims or have been amended or superseded by later filed Claims and (b) those Claims set forth on Exhibit C attached hereto because they were filed by holders of Delphi common stock solely on account of their stock holdings.

---

[3]  The Debtors will provide each Claimant whose Proof of Claim is subject to an objection pursuant to this First Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection. A form of Notice Of Objection To Claim is attached hereto as Exhibit A. Claimants will also receive a copy of this First Omnibus Claims Objection without Exhibits B and C hereto. Claimants will nonetheless be able to review such exhibits free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).

A.      Duplicate And Amended Claims

18.     During the Debtors' review of the Proofs of Claim received to date, the Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact assert duplicate Claims (each, a "Duplicate Claim") for a single liability.

19.     Additionally, the Debtors have determined that many Claims evidenced by Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by creditors with respect to the same liabilities. For instance, many amended Proofs of Claim (the "Amended Proofs of Claim") were filed to amend an amount previously claimed in an earlier Proof of Claim (the "Original Proof of Claim"). Other Amended Proofs of Claim were filed to amend the classification of part or all of an earlier Original Proof of Claim.

20.     It is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a debtor. Accordingly, the Debtors wish to eliminate the Duplicate Claims. In addition, the Debtors wish to eliminate from the Debtors' claims register Original Proofs of Claim for which Amended Proofs of Claim were subsequently filed (collectively, the "Duplicate and Amended Claims").

21.     Set forth on Exhibit B attached hereto is a list of Claims that the Debtors have identified as Duplicate and Amended Claims. For each Duplicate and Amended Claim, Exhibit B classifies Proofs of Claim as either a Claim To Be Expunged (the "Expunged Claim") or as a Surviving Claim (the "Surviving Claim").[4] The Debtors request that the Claims marked as Expunged Claims on Exhibit B be disallowed and expunged. With respect to the Claims on Exhibit B marked as Surviving Claims, the Debtors do not seek any relief at this time. The

---

[4]  Certain of the Claims on Exhibit B are listed in the amount of $0.00. This generally reflects the fact that the claim amount asserted by the Claimant is unliquidated.

8

inclusion of the Surviving Claims on <u>Exhibit B</u>, however, does not reflect any view as to the ultimate validity of any such Claim by the Debtors. The Debtors therefore expressly reserve all of their rights to further object to any or all of the Surviving Claims at a later date on any basis whatsoever.

22. Accordingly, the Debtors (a) object to the Duplicate and Amended Claims and (b) seek entry of an order disallowing and expunging the Duplicate and Amended Claims in their entirety.

B. <u>Equity Claims</u>

23. During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact represent proofs of interest that were filed on behalf of persons or entities holding Delphi common stock (the "Equity Claims"). The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of Delphi common stock to ensure that holders of stock who desired to assert claims against any of the Debtors that were not based solely upon their ownership of Delphi common stock would be afforded the opportunity to file claims in these chapter 11 cases.

24. The ownership of Delphi common stock constitutes an equity interest in Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section 101(5) of the Bankruptcy Code. Furthermore, as set forth in the Bar Date Notice that was approved by this Court, creditors and equityholders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[5]

---

[5] The Bar Date Order provided, in relevant part:

> Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:
>
> \* \* \*
>
> *(cont'd)*

9

25. Attached hereto as <u>Exhibit C</u> is a list of the Equity Claims which the Debtors have identified as solely representing proofs of interest and therefore seek to have reclassified from Claims to interests and disallowed and expunged. To the extent that any of the individuals or entities that filed the Equity Claims listed on <u>Exhibit C</u> hold valid equity interests in Delphi as of the applicable record date, the requested reclassification of their Proofs of Claim and disallowance of their Claims will not impair any entitlements they may ultimately have under a plan of reorganization with respect to such equity interests.

26. Accordingly, the Debtors (a) object to the Equity Claims and (b) seek entry of an order disallowing and expunging the Equity Claims in their entirety.

Separate Contested Matters

27. To the extent that a response is filed with respect to any Claim listed in this First Omnibus Claims Objection and the Debtors are unable to resolve the response prior to the hearing on this objection, the Debtors request that each such Claim and the objection to such Claim asserted in this First Omnibus Claims Objection be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. The Debtors further request that any order entered by the Court with respect to an objection asserted in this First Omnibus Claims Objection be deemed a separate order with respect to each Claim.

---

*(cont'd from previous page)*
    (h) Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; <u>provided, however</u>, that any such holder which wishes to assert a Claim against any of the Debtors <u>that is not based solely upon its ownership of the Debtors' securities</u>, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

Reservation Of Rights

28.     The Debtors expressly reserve the right to amend, modify, or supplement this First Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors. Should one or more of the grounds for objection stated in this First Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases. In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

Responses To Objections

A.     Filing And Service Of Responses

29.     To contest an objection, responses (a "Response"), if any, to the First Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered on May 19, 2006 (the "Seventh Supplemental Case Management Order") (Docket No. 3824), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive,

11

Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel to the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel to the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel to the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel to the Official Committee of Equity Security Holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), and (vii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard) in each case so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on October 12, 2006 (the "Response Deadline").

B.   Contents Of Responses

30.   Every Response to this First Omnibus Claims Objection must contain at a minimum the following:

(a)   a caption setting forth the name of the Court, the names of the Debtors, the case number and the title of the First Omnibus Claims Objection to which the Response is directed;

(b)   the name of the Claimant and description of the basis for the amount of the Claim;

(c)   a concise statement setting forth the reasons why the Claim should not be disallowed, expunged, or reclassified for the reasons set forth in the First Omnibus Claims Objection, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the First Omnibus Claims Objection;

    (d) all documentation or other evidence of the Claim, to the extent not included with the Proof of Claim previously filed with the Court, upon which the Claimant will rely in opposing the First Omnibus Claims Objection;

    (e) the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the Claim; and

    (f) the name, address, and telephone number of the person (which may be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on behalf of the Claimant.

C.  <u>Timely Response Required</u>

    31. If a Response is properly and timely filed and served in accordance with the above procedures, and the Debtors are unable to reach a consensual resolution with the Claimant, the Debtors may request the Court to conduct a hearing with respect to the First Omnibus Claims Objection and the Response on October 19, 2006 at 10:00 a.m. or as soon thereafter as counsel may be heard.

    32. Only those Responses made in writing and timely filed and received will be considered by the Court at any such hearing. The Debtors reserve the right to seek to adjourn a hearing with respect to a specific objection set forth herein and any Response thereto.

    33. <u>If a Claimant whose Claim is subject to this First Omnibus Claims Objection and who is served with the First Omnibus Claims Objection fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors may present to the Court an appropriate order disallowing and expunging such Claim without further notice to the Claimant.</u>

<u>Replies To Responses</u>

    34. The Debtors may, at their option, file and serve a reply to a Claimant's Response so that it is received by the Claimant (or counsel, if represented) no later than 4:00 p.m.

(Prevailing Eastern Time) on the day immediately preceding the date of any hearing on this First Omnibus Claims Objection.

### Further Information

35.     Questions about the First Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims thereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese). Questions regarding the amount of a Claim or the filing of a Claim should be directed to Claims Agent at 1-888-259-2691 or www.delphidocket.com.  <u>Claimants should not contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

### Notice

36.     Notice of this Objection has been provided in accordance with the Seventh Supplemental Case Management Order.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

37.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other further relief as is just.

Dated:  New York, New York
        September 19, 2006

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 9331)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession