Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :

    In re                                    :        Chapter 11
                                           :
DELPHI CORPORATION, et al.,      :        Case No. 05-44481 (RDD)
                                           :
                          Debtors.    :        (Jointly Administered)
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
DLA PIPER LLP
AS CORPORATE, EMPLOYMENT, AND INTELLECTUAL PROPERTY COUNSEL
TO DEBTOR MOBILEARIA, INC. NUNC PRO TUNC TO MAY 1, 2006

("DLA PIPER RETENTION APPLICATION")

        MobileAria, Inc. ("MobileAria"), an affiliate of Delphi Corporation ("Delphi") and a debtor and debtor-in-possession in the above-captioned cases, hereby submits this application (the "Application") for an order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of DLA Piper LLP ("DLA Piper") as corporate, employment, and intellectual property counsel to MobileAria nunc pro tunc to May 1, 2006. In support of this Application, MobileAria submits the Affidavit of James M. Koshland, sworn to October 17, 2006 (the "Koshland Affidavit"), and respectfully represents as follows:

Background

A.    The Chapter 11 Filings

    1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates (collectively, the "Debtors"),[1] including MobileAria, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

    2.    No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

    3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1] In addition to Delphi and MobileAria, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Furukawa Wiring Systems LLC, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Receivables LLC, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

4.  The statutory predicates for the relief requested herein are sections 327(e) and 1107(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.  Current Business Operations Of The Debtors

5.  Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.  Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive

---

[2] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.  Events Leading To The Chapter 11 Filing

8. In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9. The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Overview

13.     MobileAria provides fleet management, efficiency, and security services for mobile transportation systems, using patented hardware and software that tracks vehicles by satellite. Since 2000, DLA Piper (via its predecessor Gray Cary Ware & Freidenrich) has provided general business, employment, and corporate advice, as well as advice related to MobileAria's interest in domestic and international patents and other intellectual property interests. As noted above, MobileAria filed for chapter 11 protection on October 14, 2005 and is one of the Debtors in these jointly-administered chapter 11 cases.

14.     MobileAria had retained DLA Piper as an ordinary course professional according to the Order Under 11 U.S.C §§ 327, 330, And 331 Authorizing Retention Of Professionals Utilized By Debtors In Ordinary Course Of Business entered by this Court on November 4, 2005 (Docket No. 883) (the "Ordinary Course Professionals Order"). At the end of April 2006, DLA Piper exceeded the fee cap established in the Ordinary Course Professionals Order. In light of this, pursuant to the Ordinary Course Professionals Order, for DLA Piper to be authorized to continue rendering the services that it had been engaged by MobileAria to perform as an ordinary course professional, DLA Piper must be formally retained by MobileAria. For this reason, MobileAria requests authority to formally retain DLA Piper as corporate, employment, and intellectual property counsel in these chapter 11 cases.

15.     With the assistance and advice of DLA Piper, MobileAria closed the sale of substantially all of its assets for $11.7 million on July 31, 2006.

16.     With this Court's approval, DLA Piper will continue to serve as corporate, employment, and intellectual property counsel to MobileAria during these chapter 11 cases.

DLA Piper has performed similar work for MobileAria for the past six years and is therefore very familiar with MobileAria's businesses and operations.

## Relief Requested

17.  By this Application, MobileAria requests entry of an order authorizing MobileAria to employ and retain DLA Piper as corporate, employment, and intellectual property counsel for MobileAria in these chapter 11 cases pursuant to the letter agreement attached to the Koshland Affidavit as <u>Exhibit A</u>, <u>nunc</u> <u>pro</u> <u>tunc</u> to May 1, 2006.

## Basis For Relief

18.  MobileAria submits that DLA Piper's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented the debtor prior to the commencement of its chapter 11 case, for a "specified special purpose" if such employment is in the best interests of the debtor.  Because DLA Piper is proposed corporate, employment, and intellectual property counsel to MobileAria, but not the proposed bankruptcy counsel in these chapter 11 cases, section 327(e) does not require that DLA Piper and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code. Rather, section 327(e) requires that DLA Piper not represent or hold any interest adverse to the Debtors' estates or the Debtors with respect to the matter on which DLA Piper is to be employed. As discussed below, the employment of DLA Piper as corporate, employment, and intellectual property counsel to MobileAria is in the best interests of MobileAria's estate.

MobileAria's Employment Of DLA Piper<br><u>Is In The Best Interests Of MobileAria's Estate</u>

19.  As noted above, MobileAria had retained DLA Piper as an ordinary course professional according to the Ordinary Course Professionals Order.  At the end of April 2006,

7

DLA Piper exceeded the fee cap established in the Ordinary Course Professionals Order. Pursuant to the Ordinary Course Professionals Order, for MobileAria to continue to engage DLA Piper in the same capacity, MobileAria must formally retain DLA Piper. Therefore, MobileAria requests authority to formally retain DLA Piper as corporate, employment, and intellectual property counsel in these chapter 11 cases.

20. DLA Piper will continue to serve as corporate, employment, and intellectual property counsel to MobileAria during these chapter 11 cases. DLA Piper has performed similar work for MobileAria for the past six years and is therefore very familiar with MobileAria's businesses and operations.

21. DLA Piper is one of the largest full service law firms in the world with more than 3,000 attorneys who handle a wide range of sophisticated commercial and other business matters for some of the nation's largest companies and non-profit organizations. Most importantly for present purposes, several members of DLA Piper have extensive experience in corporate, employment, and intellectual property law and the interplay of those practice areas with restructuring and bankruptcy law. Accordingly, MobileAria believes that DLA Piper is well-qualified to serve as corporate, employment, and intellectual property counsel to MobileAria in these chapter 11 cases in an efficient and effective manner.

22. MobileAria believes that the employment of DLA Piper will enhance and will not duplicate the employment of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), the Debtors' general bankruptcy counsel, Shearman & Sterling LLP, the Debtors' special counsel, Togut, Segal & Segal LLP, the Debtors' conflicts counsel, or any other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by DLA

8

Piper as corporate, employment, and intellectual property counsel to MobileAria. DLA Piper will work with the other professionals retained by the Debtors to avoid any such duplication.

### Services To Be Rendered By DLA Piper

23. MobileAria wishes to engage DLA Piper <u>nunc pro tunc</u> to May 1, 2006 to provide legal services to MobileAria in connection with corporate, employment, and intellectual property issues. Such services have included, and MobileAria anticipates that such services will continue to include, the following:

(a) To advise and represent MobileAria with respect to general business, corporate, and employment matters as they arise,

(b) To maintain MobileAria's rights in intellectual property assets and to counsel MobileAria with respect to its rights in connection with any reorganization, restructuring, sale, or transfer of its intellectual property rights, as may be necessary, and

(c) To advise and assist MobileAria with the sale of substantially all of its assets.

24. DLA Piper has indicated its desire and willingness to represent MobileAria as set forth herein and to render the necessary professional services as legal counsel to MobileAria.

25. MobileAria may request that DLA Piper undertake specific matters beyond the scope of the responsibilities set forth above. Should DLA Piper agree, in its discretion, to undertake any such matter, MobileAria shall seek further order of this Court.

### Disinterestedness Of Professionals

26. The Koshland Affidavit filed in support of this Application contains information available to date on DLA Piper's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a). To the best of MobileAria's knowledge, and based on the information in the attached Koshland Affidavit, DLA Piper, its shareholders, counsel, and

9

associates do not hold or represent any interest adverse to MobileAria or the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the U.S. Trustee, or any person employed therein, with respect to the matters on which DLA Piper is to be employed.

27. As previously noted, DLA Piper is currently engaged on an hourly basis to provide legal services to MobileAria. DLA Piper's original engagement with MobileAria provided for a special deferment of fees for the first year of the engagement. In consideration for the deferment, DLA Piper retained the right to purchase up to one-half percent (0.5%) of the outstanding shares of MobileAria's common stock at the current fair market value. The deferment has expired and DLA Piper did not purchase any of MobileAria's stock under the agreement, and hereby expressly waives any right it has to acquire stock in MobileAria.

28. DLA Piper is scheduled as an unsecured creditor of MobileAria in the amount of $8,811.98. According to DLA Piper's accounting records, the correct amount of its claim against MobileAria is $8,770.83.

29. Lawyers in other DLA Piper offices currently represent potential creditors of the Debtors in matters not related to MobileAria. As set forth in the Verified Statement Of DLA Piper Rudnick Gray Cary US LLP Pursuant To Rule 2019 Of The Federal Rules Of Bankruptcy Procedure Regarding Representation Of Multiple Parties filed in these cases, DLA Piper also represents the following parties in connection with Delphi:

    a. DLA Piper's Austin, Texas office represents Silicon Laboratories, Inc. ("Silicon"), an alleged creditor of one or more of the Debtors. Silicon has asserted claims against Delphi.

    b.  DLA Piper's San Diego, California office represents PEC of America Corporation ("PEC"), an alleged creditor of one or more of the Debtors. PEC has asserted a claim against Delphi.

    c.  DLA Piper's San Diego, California office also represents ASE, an alleged creditor of one or more of the Debtors. ASE has asserted claims against Delphi.

    d.  DLA Piper's Baltimore, Maryland office represents Constellation New Energy, Inc. ("Constellation"), an alleged creditor of one or more of the Debtors. Constellation has asserted claims against Delphi.

    e.  DLA Piper's Baltimore, Maryland office also represents Computer Sciences Corporation ("CSC") in negotiating a potential service agreement with one or more of the Debtors.

    30.  DLA Piper has established a screen isolating the professionals designated to represent MobileAria from the professionals representing Silicon, PEC, ASE, Constellation, or CSC. The DLA Piper personnel representing MobileAria will not disclose any information relating to the engagement to any personnel representing Silicon, PEC, ASE, Constellation, or CSC. Conversely, DLA Piper personnel representing Silicon, PEC, ASE, Constellation, or CSC will not disclose any information to the DLA Piper personnel representing MobileAria. In addition, all MobileAria files and records will be isolated from the personnel representing Silicon, PEC, ASE, Constellation, or CSC. A memorandum has been issued to all DLA Piper personnel involved in these matters outlining the protocol for maintaining the screen.

    31.  DLA Piper represents @Road, Inc. ("@Road") in matters unrelated to MobileAria and its bankruptcy case. @Road and MobileAria agreed to waive any potential conflicts of interest to allow DLA Piper to represent MobileAria in negotiations for the sale of

11

substantially all of MobileAria's assets. @Road submitted a qualified bid to participate in an auction of MobileAria's assets on July 6, 2006 and submitted a $500,000.00 deposit (the "Good Faith Deposit") to DLA Piper's escrow account pursuant to the bidding procedures. At the auction, @Road was determined to have the successful bid and MobileAria entered into a definitive agreement with @Road to sell substantially all of its assets. On the evening of July 18, 2006, @Road declined to consummate the purchase of substantially all of MobileAria's assets and requested return of the Good Faith Deposit. MobileAria contended that it was entitled to retain the Good Faith Deposit. DLA Piper notified both MobileAria and @Road that it could not represent either of them in the dispute regarding the Good Faith Deposit and that it would be filing an interpleader action in the bankruptcy case to resolve the dispute. DLA Piper filed an interpleader in the bankruptcy case on July 25, 2006, Adversary Proceeding No. 06-01671. The interpleader action settled on August 4, 2006 and the Good Faith Deposit was disbursed shortly thereafter. The DLA Piper personnel representing DLA Piper in the interpleader action were not the same DLA Piper personnel representing MobileAria in its bankruptcy case.

32. DLA Piper has disclosed to MobileAria and the Debtors in the Koshland Affidavit that DLA Piper has in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to MobileAria or its chapter 11 case. DLA Piper does not believe that the foregoing raises any actual or potential conflict of interest of DLA Piper relating to the representation of MobileAria as its corporate, employment, and intellectual property counsel in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution. The Debtors understand that, to vitiate any actual or potential conflicts of interest, DLA Piper will not assist the Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with whom DLA

12

Piper has existing client relationships, and that Skadden (or other counsel if Skadden has a conflict), instead, will handle these tasks.

<u>Applicable Fee Arrangement</u>

33.    MobileAria understands that DLA Piper intends to apply to this Court for compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules for the Southern District of New York, orders of this Court, and guidelines established by the U.S. Trustee.

34.    DLA Piper and MobileAria have agreed to a compensation arrangement. MobileAria proposes to pay DLA Piper its standard hourly rates and to reimburse DLA Piper for expenses according to the Debtors' reimbursement policies. The DLA Piper attorneys who are expected to be principally responsible for the matters in these chapter 11 cases and their respective hourly rates are:

| | |
|---|---|
| James Koshland | $685 |
| Victoria Lee | $495 |
| Michael Standlee | $495 |
| Christie Branson | $405 |

These hourly rates are subject to annual adjustment according to DLA Piper's standard policies, subject to the approval of this Court.

35.    No arrangement is proposed between MobileAria and DLA Piper for compensation to be paid in these chapter 11 cases other than as set forth above and in the Koshland Affidavit.

36.    At MobileAria's request and pursuant to the Ordinary Course Professionals Order, DLA Piper has continued to assist MobileAria in connection with corporate, employment, and intellectual property matters since October 2005 when MobileAria sought for chapter 11

protection. Because DLA Piper exceeded the fee threshold as laid out in the Ordinary Course Professionals Order in May 2006, MobileAria requests that DLA Piper's retention be effective nunc pro tunc to May 1, 2006.

## Conclusion

37.    For the foregoing reasons, MobileAria submits that the employment of DLA Piper as MobileAria's corporate, employment, and intellectual property counsel on the terms set forth herein is in the best interests of the estates.

## Notice

38.    Notice of this Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, MobileAria submits that no other or further notice is necessary.

## Memorandum Of Law

39.    Because the legal points and authorities upon which this Application relies are incorporated herein, MobileAria respectfully requests that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, MobileAria respectfully requests that this Court enter an order (a) authorizing MobileAria to employ and retain DLA Piper as corporate, employment, and intellectual property counsel to perform the services set forth herein, nunc pro tunc to May 1, 2006 and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         October 30, 2006

                        MOBILEARIA, INC.

                        By:   /s/ Robert Schumacher_____
                               Name: Robert Schumacher
                               Title:  Director