**Hearing Date and Time: November 30, 2006 at 10:00 a.m.**
**Response Date and Time: November 24, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
        In re                      :    Chapter 11
                                   :
DELPHI CORPORATION, et al.,     :    Case No. 05-44481 (RDD)
                                   :
                                   :    (Jointly Administered)
              Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SECOND OMNIBUS OBJECTION (PROCEDURAL) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (I) EQUITY CLAIMS,
(II) CLAIMS DUPLICATIVE OF CONSOLIDATED TRUSTEE OR AGENT CLAIMS,
AND (III) DUPLICATE AND AMENDED CLAIMS

("SECOND OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Second Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims On Procedural Grounds (the "Second Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.     The Chapter 11 Filings

1.     On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.     No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.     This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicates for the relief requested herein are section 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      As of December 31, 2005, Delphi and its subsidiaries and affiliates

(collectively, the "Company") had global 2005 net sales of approximately $26.9 billion and

global assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked

as the fifth largest public company business reorganization in terms of revenues, and the

thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S.

subsidiaries are not chapter 11 debtors and continue their business operations without

supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

---

[1]    The aggregated financial data used in this objection generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.      The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[2]      Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

5

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

13.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor (collectively, the "Claimants") to file a proof of claim form with respect to each such Claim.

14.    On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of bar date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

15.    In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis Star, the

Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los

Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile Register,

the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw

News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and the

Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

16.    Approximately 16,000 proofs of claim (the "Proofs of Claim") have been

timely filed against the Debtors in these cases.  On September 19, 2006, the Debtors filed the

First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain

(i) Duplicate And Amended Claims And (ii) Equity Claims ("First Omnibus Claims Objection").

In the First Omnibus Claims Objection, the Debtors objected to approximately 3,500 claims.  On

October 24, 2006, the Court entered an order disallowing and expunging (a) certain Claims

because they were duplicative of other Claims or had been amended or superseded by later filed

Claims and (b) certain Claims because they were filed by holders of Delphi common stock solely

on account of their stock holdings.  In this Second Omnibus Claims Objection, the Debtors are

objecting to 2,853 claims.[3]

Relief Requested

17.    By this Objection, the Debtors seek entry of an order pursuant to 11 U.S.C.

§ 502(b) and Bankruptcy Rule 3007 disallowing and expunging (a) those Claims set forth on

---

[3]    Consistent with the notice provided to claimants with respect to the First Omnibus Claims Objection and
approved by this Court in the order entered with respect thereto, the Debtors will provide each Claimant whose
Proof of Claim is subject to an objection pursuant to this Second Omnibus Claims Objection with a
personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is
subject to an objection and the basis for such objection.  A form of Notice Of Objection To Claim is attached
hereto as Exhibit A.  Claimants will receive a copy of this Second Omnibus Claims Objection without Exhibits
B-1, B-2, C, and D hereto.  Claimants will nonetheless be able to review such exhibits free of charge by
accessing the Debtors' Legal Information Website (www.delphidocket.com).

Exhibit B-1 attached hereto because they were filed by holders of Delphi common stock solely

on account of their stock holdings, (b) those Claims set forth on Exhibit B-2 attached hereto

because they were filed by holders of Delphi common stock solely on account of their stock

holdings or, in the alternative, were untimely pursuant to the Bar Date Order, (c) those Claims

set forth on Exhibit C attached hereto because (i) they were filed by individual noteholders or

trust preferred security holders and are duplicative of the consolidated proof of claim filed on

their behalf by Wilmington Trust Company ("Wilmington Trust") or Law Debenture Trust

Company of New York ("Law Debenture," together with Wilmington Trust, "Trustees"), as

appropriate, or (ii) they were filed by individual lenders under the prepetition credit facility and

are duplicative of the liabilities in the master proof of claim filed by JPMorgan Chase Bank, N.A.

("JPMorgan" or "Agent") on behalf of itself and each of the prepetition secured lenders, and (d)

those Claims set forth on Exhibit D attached hereto because they are duplicative of other Claims

or have been amended or superseded by later filed Claims.

A.    Equity Claims

        18.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim filed against the Debtors in fact represent proofs of interest

that were filed on behalf of persons or entities holding Delphi common stock (the "Equity

Claims").  The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of

Delphi common stock to ensure that holders of stock who desired to assert claims against any of

the Debtors that were not based solely upon their ownership of Delphi common stock would be

afforded the opportunity to file claims in these chapter 11 cases.

        19.    The ownership of Delphi common stock constitutes an equity interest in

Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section

101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was

8

approved by this Court, creditors and equityholders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[4]

20.    In addition, certain of the Equity Claims were received by the Debtors after the Bar Date ("Untimely Equity Claims").  With respect to those Untimely Equity Claims, the Debtors also object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.[5]

21.    Attached hereto as Exhibit B-1 is a list of the Equity Claims that the Debtors have identified as solely representing proofs of interest.  The Debtors therefore seek to have reclassified from Claims to interests and disallowed and expunged.  To the extent that any of the individuals or entities that filed the Equity Claims listed on Exhibit B-1 hold valid equity interests in Delphi as of the applicable record date, the requested reclassification of their Proofs

---

[4]    The Bar Date Order provides, in relevant part:

> Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:
>
> *    *    *
>
> (h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

[5]    The Bar Date Order provides:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

of Claim and disallowance of their Claims will not impair any entitlements they may ultimately

have under a plan of reorganization with respect to such equity interests.  Attached hereto as

Exhibit B-2 is a list of Untimely Equity Claims which the Debtors have identified as solely

representing proofs of interest and therefore seek to have reclassified from Claims to interests

and disallowed and expunged.  In addition, the Debtors seek to have such Untimely Equity

Claims disallowed and expunged as Claims that were not timely filed pursuant to the Bar Date

Order.[6]

22.    Accordingly, the Debtors (a) object to the Equity Claims, (b) object to the

Untimely Equity Claims, and (c) seek entry of an order disallowing and expunging both the

Equity Claims and Untimely Equity Claims in their entirety.

B.    Claims Duplicative Of Consolidated Trustee Or Agent Claims

23.    During the Debtors' review of the Proofs of Claim, the Debtors

determined that certain of the Proofs of Claim filed by certain claimants against the Debtors in

fact assert duplicate Claims for a single liability.

24.    Wilmington Trust is the successor indenture trustee under a 1999

Indenture Agreement ("1999 Indenture") for a series of senior unsecured securities that were due

in 2006, 2009, 2013, and 2029.  Pursuant to Section 6.02 of the 1999 Indenture, Wilmington

Trust is authorized to file a proof of claim on behalf of all holders of notes.[7]  On August 2, 2006,

---

[6]    None of the Untimely Equity Claims listed on Exhibit B-2 hereto was included as part of the Motion For Order
Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated
September 29, 2006 (Docket No. 5238).

[7]    1999 Indenture provides, in relevant part:

In case there shall be pending proceedings for the bankruptcy or for the reorganization of the Corporation
or any other obligor upon Securities of any series under Title 11 of the United States Code or any other
applicable law, or in case a receiver or trustee shall have been appointed for the property of the
Corporation or such other obligor, or in case of any other judicial proceedings relative to the Corporation

*(cont'd)*

Wilmington Trust filed with this Court a consolidated Proof of Claim on behalf of the noteholders in the amount of $2,044,593,402.77 plus amounts presently unliquidated (Claim No. 10271) (the "Wilmington Trust Trustee Claim").

25.    Law Debenture is the successor indenture trustee and property trustee under an October 2003 and a November 2003 Indenture Agreement for junior subordinated notes due 2033 and adjustable rate junior subordinated notes due 2033.  On April 17, 2006, Law Debenture filed with this Court a consolidated Proof of Claim on behalf of individual holders in the amount of $420,083,457.18 (Claim No. 2660) (the "Law Debenture Trustee Claim").

26.    Certain individual holders filed Proofs of Claim asserting liabilities also asserted by either the Wilmington Trust Trustee Claim or the Law Debenture Trustee Claim (the "Individual Holder Claims").  Because the Trustees also filed consolidated Proofs of Claim on behalf of their respective holders, the Individual Holder Claims are duplicative.  Furthermore, as set forth in the Bar Date Notice that was approved by this Court, individual holders were notified that they were not required to file proofs of claim based exclusively on the issuance of Delphi

---

*(cont'd from previous page)*

> or such other obligor, or to the creditors or property of the Corporation or such other obligor, the Trustee, irrespective of whether the principal of the Securities of such series shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the <u>Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal</u> (or, with respect to Original Issue Discount Securities, such portion of the principal amount as may be specified in the terms of that series), and premium, if any, interest, if any, and Additional Amounts, if any, owing and unpaid in respect of the Securities of such series, and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee under Section 7.06 and of the Holders of the Securities and Coupons of such series allowed in any such judicial proceedings relative to the Corporation or other obligor upon the Securities of such series, or to the creditors or property of the Corporation or such other obligor.

1999 Indenture ¶6.02 (emphasis added).

senior and junior subordinated unsecured debt.[8]  Therefore, the Debtors object to the Individual

Holder Claims as duplicative, but are not objecting to the Wilmington Trust Trustee Claim or the

Law Debenture Trustee Claim.[9]

        27.     JPMorgan is the administrative agent for the lenders under the Debtors'

prepetition 2005 credit facility.  Pursuant to the Bar Date Order, JPMorgan was authorized to file

a master proof of claim ("JPMorgan Master Proof of Claim") on behalf of all the lenders.[10]  On

---

[8]    The Bar Date Order provided, in relevant part:

> <u>Proofs of Claim are not required</u>, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:
>
> *   *   *
>
> (g)  <u>Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior and junior subordinated unsecured debt</u> (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033 (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

  Bar Date Order ¶5 (emphasis added).

[9]    The Debtors expressly reserve all of their rights to further object to either or both of the Wilmington Trust Trustee Claim and the Law Debenture Trustee Claim at a later date on any basis whatsoever.

[10]    The Bar Date Order provides, in relevant part:

> (a)  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce any unnecessary expense to the Debtors' estates, the Pre-Petition Agent (as defined in the Final DIP Financing Order) is authorized to file a master proof of claim on behalf of itself and the Pre-Petition Secured Lenders (as defined in the Final DIP Financing Order) on account of their claims arising under the Third Amended and Restated Credit Agreement, dated as of June 14, 2005, and all other documentation executed in connection therewith (collectively, the "Loan Documents") and under the Final Order under 11 U.S.C §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (i) Authorizing the Debtors to Obtain Post-Petition Financing, (ii) to Utilize Cash Collateral and (iii) Granting Adequate Protection to Pre-Petition Secured Parties, dated October 28, 2005 (the "Final DIP Financing Order"), against all of the Debtors (the "Master Proof of Claim"), and the Pre-Petition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Bankruptcy Rules.

<i>(cont'd)</i>

July 26, 2006, JPMorgan filed its Master Proof of Claim in the amount of $2,547,541,816.00

(Claim No. 11047).  Despite the provisions of the Bar Date Order providing that upon filing of

the Master Proof of Claim each lender shall be deemed to have filed a proof of claim, certain

lenders filed proofs of claim asserting liabilities under the prepetition credit facility (the

"Individual Lender Claims").  Because the Individual Lender Claims are thus duplicative of the

liabilities asserted under the Master Proof of Claim, the Debtors object to the Individual Lender

Claims.  At this time, the Debtors are not objecting to the Master Proof of Claim.[11]

28.    Attached hereto as Exhibit C is a list of Claims that the Debtors have

identified as Individual Holder Claims and Individual Lender Claims.  For each Individual

Holder Claim and Individual Lender Claim listed on Exhibit C hereto, the Debtors have

indicated the appropriate Trustee or Agent Claim that will be the "Surviving Claim."  The

Debtors (a) object to the Individual Holder Claims, (b) object to the Individual Lender Claims,

and (c) seek entry of an order disallowing and expunging the Individual Holder Claims and

Individual Lender Claims in their entirety.

C.    Duplicate And Amended Claims

29.    During the Debtors' review of the Proofs of Claim received to date, the

Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact assert

_____
*(cont'd from previous page)*

(b) Upon the filing of the Master Proof of Claim against the Debtors, the Pre-Petition Agent and each Pre-Petition Secured Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim against each Debtor in the amount set forth opposite its name therein in respect of its claims against each Debtor arising under the Loan Documents, and the claim of the Pre-Petition Agent and each Pre-Petition Secured Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in the chapter 11 cases in the amount set forth opposite each name in the Master Proof of Claim. . . .

Bar Date Order ¶10.

[11]    The Debtors expressly reserve all of their rights to further object to the Master Proof of Claim at a later date on any basis whatsoever.

duplicate Claims (each, a "Duplicate Claim") for a single liability.  In some instances, Duplicate

Claims arose when a claimant filed Proofs of Claim against multiple Debtor entities for the same

liability.   In an effort to eliminate the Duplicate Claims, the Debtors reviewed the Proofs of

Claim, the supporting documentation provided for those Proofs of Claim, and the Debtors'

Schedules and Statements to make a determination as to which duplicate claim should be the

surviving claim.

30.       Additionally, the Debtors have determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities.  For instance, many amended Proofs of Claim (the

"Amended Proofs of Claim") were filed to amend an amount previously claimed in an earlier

Proof of Claim (the "Original Proof of Claim").  Other Amended Proofs of Claim were filed to

amend the classification of part or all of an earlier Original Proof of Claim.

31.       It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate

Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original

Proofs of Claim for which Amended Proofs of Claim were subsequently filed (collectively, the

"Duplicate and Amended Claims").

32.       Set forth on Exhibit D attached hereto is a list of Claims that the Debtors

have identified as Duplicate and Amended Claims.  For each Duplicate and Amended Claim,

Exhibit D classifies Proofs of Claim as either a Claim To Be Expunged (the "Expunged Claim")

or as a Surviving Claim (the "Surviving Claim").[12]  Generally, the Surviving Claims reflect the

_____

[12]    Certain of the Claims on Exhibit B are listed in the amount of $0.00.  This generally reflects the fact that the
        claim amount asserted by the Claimant is unliquidated.

14

classifications of the liabilities as reflected on the Debtors' Schedules.[13]  The Debtors request that

the Claims marked as Expunged Claims on Exhibit D be disallowed and expunged.  With respect

to the Claims on Exhibit D marked as Surviving Claims, the Debtors do not seek any relief at

this time.  The inclusion of the Surviving Claims on Exhibit D, however, does not reflect any

view by the Debtors as to the ultimate validity of any such Claim.  The Debtors therefore

expressly reserve all of their rights to further object to any or all of the Surviving Claims at a

later date on any basis whatsoever.

33.    Accordingly, the Debtors (a) object to the Duplicate and Amended Claims

and (b) seek entry of an order disallowing and expunging the Duplicate and Amended Claims in

their entirety.

Separate Contested Matters

34.    To the extent that a response is filed with respect to any Claim listed in

this Second Omnibus Claims Objection and the Debtors are unable to resolve the response prior

to the hearing on this objection, the Debtors request that each such Claim and the objection to

such Claim asserted in this Second Omnibus Claims Objection be deemed to constitute a

separate contested matter as contemplated by Bankruptcy Rule 9014.  The Debtors further

---

[13]   As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors'
Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

> Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records
> for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General
> Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the
> "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has
> been consolidated for purposes of the Schedules and Statements and such consolidated financial
> information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  Where claimants filed Proofs of Claim against ASEC Manufacturing and one or more of the
other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the Claim filed
against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of the books and
records of the Catalyst Entities, claimants should not retain more than one claim for a single liability.
Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as obligations of
another Debtor entity at a later date.

15

request that any order entered by the Court with respect to an objection asserted in this Second

Omnibus Claims Objection be deemed a separate order with respect to each Claim.

Reservation Of Rights

35.    The Debtors expressly reserve the right to amend, modify, or supplement

this Second Omnibus Claims Objection and to file additional objections to the Proofs of Claim or

any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more

of the grounds for objection stated in this Second Omnibus Claims Objection be dismissed, the

Debtors reserve their rights to object on other stated grounds or on any other grounds that the

Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to

seek further reduction of any Claim to the extent that such Claim has been paid.

Responses To Objections

A.    Filing And Service Of Responses

36.    To contest an objection, responses (a "Response"), if any, to the Second

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered on October 26, 2006 (the

"Eighth Supplemental Case Management Order") (Docket No. 5418), (c) be filed with the

Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of

the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest

must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (d) be submitted in hard copy form directly

to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United

16

States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John

Wm. Butler, Jr.), (iii) counsel to the agent under the Debtors' prepetition credit facility, Simpson

Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S.

Ziman), (iv) counsel to the agent under the postpetition credit facility, Davis Polk & Wardwell,

450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian

Resnick), (v) counsel to the Official Committee of Unsecured Creditors, Latham & Watkins LLP,

885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A.

Broude), (vi) counsel to the Official Committee of Equity Security Holders, Fried, Frank, Harris,

Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie

Steingart), and (vii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard)

in each case so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on November

24, 2006.

B.      Contents Of Responses

                37.      Every Response to this Second Omnibus Claims Objection must contain at

a minimum the following:

                (a)      a caption setting forth the name of the Court, the names of the
Debtors, the case number, and the title of this Second Omnibus Claims Objection to which the
Response is directed;

                (b)      the name of the Claimant and description of the basis for the amount
of the Claim;

                (c)      a concise statement setting forth the reasons why the Claim should
not be disallowed, expunged, or reclassified for the reasons set forth in the Second Omnibus

17

Claims Objection, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing this Second Omnibus Claims Objection;

(d)    all documentation or other evidence of the Claim upon which the Claimant will rely in opposing the Second Omnibus Claims Objection to the extent not included with the Proof of Claim previously filed with the Court,;

(e)    the address(es) to which the Debtors must deliver any reply to the Response, if different from the address(es) presented in the Claim; and

(f)    the name, address, and telephone number of the person (which may be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on behalf of the Claimant.

C.    <u>Timely Response Required</u>

38.    If a Response is properly and timely filed and served in accordance with the above procedures, and the Debtors are unable to reach a consensual resolution with the Claimant, the Debtors may request the Court to conduct a hearing with respect to the Second Omnibus Claims Objection and the Response on November 30, 2006 at 10:00 a.m. or as soon thereafter as counsel may be heard.

39.    Only those Responses made in writing and timely filed and received will be considered by the Court at any such hearing.  The Debtors reserve the right to seek to adjourn a hearing with respect to a specific objection set forth herein and any Response thereto.

40.    <u>If a Claimant whose Claim is subject to this Second Omnibus Claims Objection and who is served with this Second Omnibus Claims Objection fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors may present to the Court an appropriate order disallowing and expunging or otherwise limiting such Claim without further notice to the Claimant.  Thus, a failure to respond may forever bar Claimants listed on this Second Omnibus Claims Objection from sustaining a Claim against the Debtors.</u>

<u>Replies To Responses</u>

41.    The Debtors may, at their option, file and serve a reply to a Claimant's
Response so that it is received by the Claimant (or counsel, if represented) no later than 4:00 p.m.
(Prevailing Eastern Time) on the day immediately preceding the date of any hearing on this
Second Omnibus Claims Objection.

<u>Service Of Second Omnibus Claims Objection Order</u>

42.    Consistent with Bankruptcy Rule 9022, the Debtors respectfully request
that this Court direct the Claims Agent to serve the order entered with respect to this Second
Omnibus Claims Objection, including exhibits, only on the master service list and the 2002 list.
The Debtors further request that this Court direct the Claims Agent to serve all Claimants whose
proofs of claim are listed on an exhibit to this Second Omnibus Claims Objection with a copy of
the order, without exhibits, and a personalized Notice Of Entry Of Order in the form attached
hereto as <u>Exhibit E</u> specifically identifying the Claimant's proof of claim that is subject to the
order, the Court's treatment of such proof of claim, and the basis for such treatment, and advising
the Claimant of its ability to view the order with exhibits free of charge on the Debtors' Legal
Information Website.

<u>Further Information</u>

43.    Questions about this Second Omnibus Claims Objection or requests for
additional information about the proposed disposition of Claims hereunder should be directed to
the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in
writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,
Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese).
Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-259-2691 or www.delphidocket.com.  <u>Claimants should not contact the</u> <u>Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

44.     Notice of this Objection has been provided in accordance with the Amended Eighth Supplemental Case Management Order.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

45.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

granting the relief requested herein and (b) granting the Debtors such other and further relief as is

just.

Dated:          New York, New York
                October 31, 2006
                                SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP

                                By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606

                                    - and -

                                By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036

                                Attorneys for Delphi Corporation, et al.,
                                    Debtors and Debtors-in-Possession

21