**Hearing Date and Time: November 30, 2006 at 10:00 a.m.**
**Response Date and Time: November 24, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                           :
      In re                    :     Chapter 11
                           :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                           :
                           :     (Jointly Administered)
           Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 502(b) AND 502(c) AND FED. R. BANKR. P.
2002(m), 3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR HEARINGS
REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS
AND (II) CERTAIN NOTICES AND PROCEDURES GOVERNING HEARINGS
REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS

("CLAIM OBJECTION AND ESTIMATION PROCEDURES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Motion For Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (the "Motion").  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 502(b)

and 502(c) of the Bankruptcy Code and Rules 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      As of December 31, 2005, Delphi and its subsidiaries and affiliates

(collectively, the "Company") had global 2005 net sales of approximately $26.9 billion and

global assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked

as the fifth largest public company business reorganization in terms of revenues, and the

thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S.

subsidiaries are not chapter 11 debtors and continue their business operations without

supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

---

[1]    The aggregated financial data used in this objection generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

        8.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

        9.      The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

        10.      In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[2]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

        11.     On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

        12.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

13.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor (collectively, the "Claimants") to file a proof of claim form (the "Proofs of Claim") with respect to each such Claim.

14.    On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of bar date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, upon (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

15.    In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal,

the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis Star, the
Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los
Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile Register,
the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw
News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and the
Vindicator, and electronically through posting on the Delphi Legal Information Website,
www.delphidocket.com, on or before April 24, 2006.

16.    Approximately 16,000 proofs of claim have been timely filed against the
Debtors in these cases (the "Proofs of Claim").  Collectively, the Proofs of Claim assert
liquidated claims of more than $36 billion against the Debtors.  In addition, more than 6,000
Proofs of Claim assert additional unliquidated claims against the Debtors.  Although the Debtors
have not completed the process of reconciling the Proofs of Claim, the Debtors believe that the
Proofs of Claim dramatically overstate the Debtors' prepetition obligations.

17.    On September 19, 2006, the Debtors filed the First Omnibus Objection
Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And
Amended Claims And (ii) Equity Claims ("First Omnibus Claims Objection").   In the First
Omnibus Claims Objection, the Debtors objected to approximately 3,500 of the Proofs of Claim
asserting liquidated claims of approximately $1.7 billion against the Debtors, which claims
consisted of duplicative, amended, or superseded claims and claims filed by holders of Delphi
common stock solely on account of their stock holdings.  On October 24, 2006, the Court entered
an order disallowing and expunging most of the claims subject to the First Omnibus Claims
Objection.

18.     Contemporaneously herewith, the Debtors are filing their Second
Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims,
And (iii) Duplicate And Amended Claims (the "Second Omnibus Claims Objection").  In the
Second Omnibus Claims Objection, the Debtors object to and seek disallowance of 2,853 of the
Proofs of Claim.  The Proofs of Claim covered by the Second Omnibus Claims Objection assert
liquidated claims of approximately $5.7 billion against the Debtors.

19.     Contemporaneously herewith, the Debtors are also filing the Debtors' (i)
Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P.
3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By
Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To
Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (the "Third
Omnibus Claims Objection").  In the Third Omnibus Claims Objection, the Debtors object to and
seek disallowance of 1,017 of the Proofs of Claim.  To the extent that a Proof of Claim included
in the Third Omnibus Claims Objection asserts contingent or unliquidated claims, the Debtors
seek estimation of such Proof of Claim pursuant to section 502(c) of the Bankruptcy Code.  The
Proofs of Claim covered by the Third Omnibus Claims Objection assert liquidated claims of
approximately $1.3 billion against the Debtors.

<u>Relief Requested</u>

20.     By this Motion, the Debtors seek entry of an order pursuant to 11 U.S.C. §
502(b) and 502(c) and Bankruptcy Rules 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 (a)
scheduling special hearings to consider contested claims matters, (b) establishing certain
procedures governing the filing and contents of responses of claimants to omnibus claims

objections, (c) approving certain procedures for the service of omnibus claims objections, (d)

approving certain procedures governing the adjudication of contested claims matters, and (e)

directing the Claims Agent to limit service of orders entered with respect to omnibus claims

objections to avoid unnecessary costs to the Debtors' estates.

<u>Basis For Relief</u>

21.      As described above, more than 16,000 Proofs of Claim have been timely

filed in these chapter 11 cases, asserting liabilities in excess of $36 billion.  As the Debtors have

reported, they are currently engaged in framework discussions with their principal stakeholders

attempting to reach agreement on the terms and structure of a plan of reorganization in these

cases.  The Debtors and their key constituents continue to believe that it is important for the

Debtors to emerge from these chapter 11 cases as expeditiously as possible and the Debtors

continue to target the first half of 2007 for emergence to occur.  In the course of the ongoing

framework discussions, it has become clear to all of the participants that the parties' ability to

reach agreement on a framework for the Debtors' emergence is predicated upon a clear

understanding of the scope of the claims against the Debtors which will ultimately be allowed in

these cases.

22.      Therefore, after examining the number and amount of the Proofs of Claim,

the Debtors and their professionals established a comprehensive strategy to address on an

expedited basis the significant number of improperly filed, baseless, and overstated Proofs of

Claim.  As stated above, the Debtors have already filed three omnibus objections to claims,

seeking disallowance of more than 7,000 of the Proofs of Claim.  The Debtors continue to

conduct an expedited claims analysis, reconciliation, and objection process and expect this

process to continue for an extended period of time.

23.     To further hasten claims reconciliation and administration, the Debtors hereby request that this Court establish special periodic hearings (the "Claims Hearings") to consider contested claims objections and requests to estimate contingent and unliquidated claims pursuant to section 502(c) of the Bankruptcy Code.  The Debtors further request that this Court approve procedures governing motion practice, discovery, and the conduct of the Claims Hearings.

A.     The Claims Hearings

24.     Pursuant to the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered on October 26, 2006 (the "Amended Eighth Supplemental Case Management Order") (Docket No. 5418) and its predecessors, this Court established monthly omnibus hearings (the "Omnibus Hearings") in these cases.  Given the size and complexity of these cases, there are frequently dozens of discrete matters scheduled for hearing at any given Omnibus Hearing.

25.     In light of the limited amount of time available at each Omnibus Hearing and the amount of this Court's time that the Debtors anticipate will be necessary to hear objections or to estimate the Proofs of Claim, the Debtors request that this Court set separate Claims Hearings to consider contested claims matters.  Specifically, the Debtors request that this Court set Claims Hearings for the following dates and times:

> December 13, 2006 at 10:00 a.m. (prevailing Eastern time)
>
> January 12, 2007 at 10:00 a.m. (prevailing Eastern time)
>
> February 14, 2007 at 10:00 a.m. (prevailing Eastern time)
>
> March 1, 2007 at 10:00 a.m. (prevailing Eastern time)
>
> March 21, 2007 at 10:00 a.m. (prevailing Eastern time)

10

April 5, 2007 at 10:00 a.m. (prevailing Eastern time)

April 27, 2007 at 10:00 a.m. (prevailing Eastern time)

May 10, 2007 at 10:00 a.m. (prevailing Eastern time)

May 24, 2007 at 10:00 a.m. (prevailing Eastern time)

June 1, 2007 at 10:00 a.m. (prevailing Eastern time)

June 14, 2007 at 10:00 a.m. (prevailing Eastern time)

June 22, 2007 at 10:00 a.m. (prevailing Eastern time)

July 12, 2007 at 10:00 a.m. (prevailing Eastern time)

July 20, 2007 at 10:00 a.m. (prevailing Eastern time)

August 2, 2007 at 10:00 a.m. (prevailing Eastern time)

August 17, 2007 at 10:00 a.m. (prevailing Eastern time)

August 30, 2007 at 10:00 a.m. (prevailing Eastern time)

September 28, 2007 at 10:00 a.m. (prevailing Eastern time)

October 11, 2007 at 10:00 a.m. (prevailing Eastern time)

October 26, 2007 at 10:00 a.m. (prevailing Eastern time)

November 8, 2007 at 10:00 a.m. (prevailing Eastern time)

November 30, 2007 at 10:00 a.m. (prevailing Eastern time)

December 6, 2007 at 10:00 a.m. (prevailing Eastern time)

26.    In the first instance, the Debtors propose to schedule the return date for

omnibus claims objections for hearing at Omnibus Hearings.  For Proofs of Claim subject to an

omnibus claims objection and with respect to which no response is filed in accordance with the

proposed response procedures outlined below, or with respect to which a response is filed in

accordance with the proposed response procedures but is resolved prior to the hearing thereon,

the Debtors anticipate requesting that this Court enter an order sustaining their objection with

respect to, and, for most Proofs of Claim, disallowing and expunging, such Proofs of Claim.  For

Proofs of Claim as to which a response is filed in accordance with the proposed response

procedures (each, a "Contested Claim"), the Debtors expect to request that the hearing on the

objection to such Contested Claim be adjourned and set for a contested hearing at a Claims

Hearing to be scheduled as set forth below.

B.    Responses To Objections

             27.    The Debtors request that this Court set certain procedures governing the

filing and contents of responses of claimants to claims objections or omnibus claims objections

(the "Responses").  Specifically, the Debtors request that this Court require that any Response (a)

be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy

Rules for the Southern District of New York, and the Amended Eighth Supplemental Case

Management Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-

242 (as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable

Document Format (PDF), WordPerfect, or any other Windows-based word processing format),

(d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of

New York, One Bowling Green, Room 610, New York, New York 10004, and (e) be served

upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive,

Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel to the agent under

the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel to the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel to the Official Committee

of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel to the Official Committee

of Equity Security Holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza,

New York, New York 10004 (Att'n: Bonnie Steingart), and (vii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n:  Alicia M. Leonhard) in each case so as to be received no later than 4:00 p.m.

(prevailing Eastern time) on the seventh calendar day prior to the Omnibus Hearing for which

the relevant omnibus claims objection is scheduled.

28.     The Debtors further request that this Court require that every Response

contain at a minimum the following:

(a)     a caption setting forth the name of the Court, the names of the
Debtors, the case number and the title of the omnibus claims objection to which the Response is
directed;

(b)     the name of the claimant and a description of the basis for the
amount of the Claim;

(c)     a concise statement setting forth the reasons why the Claim should
not be disallowed, expunged, reduced, or reclassified for the reasons set forth in the omnibus
claims objection, including, but not limited to, the specific factual and legal bases upon which
the Claimant will rely in opposing the omnibus claims objection;

(d)     all documentation or other evidence of the Claim upon which the
Claimant will rely in opposing the omnibus claims objection to the extent not included with the
Proof of Claim previously filed with the Court;

(e)     to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate;

(f)     the address(es) to which the Debtors must deliver any reply to the
Response, if different from the address(es) presented in the Proof of Claim; and

(g)     the name, address, and telephone number of the person (which may
be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile,
settle, or otherwise resolve the Claim on behalf of the Claimant.

29.    The Debtors further request that only those Responses made in writing and timely filed and received be considered by the Court at any hearing on the relevant objection. The Debtors also request that this Court order that, if a Claimant whose Claim is subject to a claims objection and who is served with the relevant claims objection fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the relevant claims objection without further notice to the Claimant.

30.    To the extent that a Contested Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code and the Debtors have sought authority to estimate such Contested Claim, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Contested Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Contested Claim upon liquidation of the Contested Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), <u>the Debtors respectfully request authorization, in their sole discretion, to elect to provisionally accept the Claimant's Asserted Estimated Amount as the estimated amount of such Contested Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes, subject to further objection and reduction as appropriate</u>, by providing notice as described more fully below.

31.    Finally, to the extent that a response is filed with respect to any Claim listed in a claims objection and the Debtors are unable to resolve the response prior to the hearing on such objection, the Debtors request that the objection to such Claim asserted in the omnibus claims objection be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  The Debtors further request that any order entered by the Court with

14

respect to an objection asserted in an omnibus claims objection be deemed a separate order with respect to each Claim.

32.    In addition to applying to each claims objection filed by the Debtors from and after the entry of the order, the Debtors also respectfully request that this Court approve the application of the above Response procedures to the Second Omnibus Claims Objection and the Third Omnibus Claims Objection.

C.    Replies To Responses

33.    Consistent with the provisions of the Amended Eighth Supplemental Case Management Order, the Debtors further request that this Court confirm that the Debtors may, at their option, file and serve a reply to the Response of any Claimant no later than 4:00 p.m. (prevailing Eastern time) on the day immediately preceding the date of any hearing on the subject claims objection.

D.    Service Of Omnibus Claims Objections And Omnibus Claims Objection Orders

34.    As a result of the significant number of proofs of claim filed in these chapter 11 cases, the service of omnibus claims objections, as well as orders entered with respect thereto, is a significant expense to the estates.  For example, the Debtors' First Omnibus Claims Objection objected to approximately 3,500 Proofs of Claim and contained more than 500 pages including exhibits.  The cost of having the Claims Agent serve each Claimant having filed a Proof of Claim covered by the First Omnibus Claims Objection with the complete Objection including exhibits would have been approximately $200,000.  For each of the first three omnibus claims objections, therefore, the Debtors instead served upon each Claimant a complete copy of the relevant omnibus claims objection, without exhibits, as well as a personalized Notice Of Objection To Claim which specifically identified the Claimant's Proof of Claim that was subject to objection and the basis for such objection.  Claimants were advised in the objection that they

15

could nonetheless review the exhibits to the objection in their entirety free of charge by

accessing the Debtors' Legal Information Website.  Service of a personalized Notice of Objection

upon each Claimant rather than a lengthy exhibit saved the Debtors' estates approximately

$175,000 with respect to service of the First Omnibus Claims Objection.  Although the Court

retroactively approved the Debtors' use of personalized Notices Of Objection To Claim pursuant

to the order sustaining the First Omnibus Claims Objection, out of an abundance of caution, the

Debtors seek approval of this notice procedure prospectively with respect to all future omnibus

claims objections.

　　　　35.　　　Similarly, the order (the "First Omnibus Claims Order") sustaining the

First Omnibus Claims Objection including exhibits was approximately 475 pages in length.  The

cost to serve such order on each Claimant covered thereby would thus also be substantial.

Consistent with Bankruptcy Rule 9022, the Debtors respectfully request that this Court direct the

Claims Agent to serve orders entered with respect to omnibus claims objections, including

exhibits, only on the master service list and the 2002 list.  The Debtors further request that this

Court direct the Claims Agent to serve all Claimants whose Proofs of Claim are the subject of an

order entered with respect to an omnibus claims objection with a copy of such order, without

exhibits, and a personalized Notice Of Entry Of Order in the form attached hereto as <u>Exhibit A</u>

specifically identifying the Claimant's Proof of Claim that is subject to the order, the Court's

treatment of such Proof of Claim, and the basis for such treatment.  The proposed Notice Of

Entry Of Order would also advise the Claimant of its ability to view the order with exhibits free

of charge on the Debtors' Legal Information Website.  The Claims Agent has not yet provided

parties with service of the First Omnibus Claims Order in the manner outlined above, and the

Debtors therefore request that the Court direct the Claims Agent to serve the First Omnibus

Claims Order, as well as any subsequent orders respecting claims, in accordance with the

procedures outlined above.

E.     Contested Claims Hearing Procedures

        36.     The Debtors anticipate that they will likely be able to consensually resolve

the vast majority of Contested Claims, although the negotiation of such resolutions may

frequently not be completed prior to the Omnibus Hearing for which the objection is initially

scheduled.  Therefore, to allow the maximum number of Contested Claims to be consensually

resolved and to avoid overburdening this Court with relatively minor claims disputes, the

Debtors request permission to schedule individual Contested Claims for hearing at a Claims

Hearing.  Specifically, the Debtors request that this Court approve the following procedures for

adjudicating Contested Claims (the "Claims Hearing Procedures"):

        (a)     Adjournment To Claims Hearing.

                (i)    The Debtors, in their sole discretion, would adjourn
        the hearing on each Contested Claim to a Claims Hearing of the Debtors' election
        by providing the Claimant with a notice identifying the date and type following
        the filing of the Response:

                        (1)    for a non-evidentiary hearing to address the
        legal sufficiency of the particular proof of claim and whether the proof of claim
        states a colorable claim against the asserted Debtor (a "Sufficiency Hearing"),[3] by
        providing the relevant Claimant with, and filing with this Court, a notice
        substantially in the form attached hereto as Exhibit B at least ten calendar days
        prior to the date of such Sufficiency Hearing,

                        (2)    to the extent such Contested Claim is
        unliquidated or contingent, for a hearing to estimate the Contested Claim for all
        purposes, including voting and distribution, pursuant to section 502(c) of the
        Bankruptcy Code (an "Estimation Hearing"), by providing the relevant Claimant
        with, and filing with this Court, a notice substantially in the form attached hereto

---

[3]     The standard of review that the Debtors propose to be applied by the Court at a Sufficiency Hearing would be
        equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim.

as <u>Exhibit C</u> (the "Notice Of Adjourned Estimation Hearing") at least 45 days prior to the date of such Estimation Hearing,[4] or

(3)    for an evidentiary hearing on the merits of such Contested Claim (an "Claims Objection Hearing"), by providing the relevant Claimant with, and filing with this Court, a notice substantially in the form attached hereto as <u>Exhibit D</u> (the "Notice Of Adjourned Claims Objection Hearing") at least 45 days prior to the date of such Claims Objection Hearing.

(ii)    The Debtors, in their sole discretion, would be authorized to further adjourn a hearing scheduled in accordance herewith at any time by providing notice to the Court and the Claimant at least five business days prior to the date of the scheduled hearing.

(b)    <u>Sufficiency Hearing Procedures</u>.

(i)    To the extent that a Contested Claim is adjourned by the Debtors to a Sufficiency Hearing, the Debtors would file and serve their Supplemental Reply no later than ten calendar days before the scheduled Sufficiency Hearing.  The Supplemental Reply would be limited to fifteen single-sided, double-spaced pages.

(ii)    To the extent that a Contested Claim is adjourned by the Debtors to a Sufficiency Hearing, the Claimant would file and serve its Supplemental Response no later than three calendar days before the scheduled Sufficiency Hearing.  The Supplemental Response would be limited to fifteen single-sided, double-spaced pages.

(iii)    The Court, in considering whether to grant the relief sought by the Debtors with respect to such Contested Claim, would rely solely on (a) the Claimant's Proof of Claim, Response, and Supplemental Response (if any), (b) the Debtors' omnibus claims objection, reply, and Supplemental Reply (if any), and (c) the Claimant's and the Debtors' arguments at the Sufficiency Hearing.

(iv)    To the extent that the Court determines upon conclusion of such Sufficiency Hearing that such Contested Claim cannot be disallowed without further proceedings, the Debtors, in their sole discretion, could elect to estimate or seek disallowance of the Contested Claim pursuant to the procedures set forth herein with respect to an Estimation Hearing or Claims Objection Hearing.

---

[4]    Consistent with 28 U.S.C. § 157(b)(2)(B), the Debtors do not seek to estimate, or to set for an Estimation Hearing, any contingent or unliquidated personal injury tort or wrongful death claims asserted against the Debtors' estates.

(c)    <u>Mandatory Meet And Confer</u>.

(i)    To the extent that a Contested Claim (A) exceeds $250,000 or asserts unliquidated claims and (B) is scheduled by the Debtors for either an Estimation Hearing or a Claims Objection Hearing, the Debtors and the relevant Claimant (unless such Claimant irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $250,000) would be required to hold an in-person meet and confer (an "In-Person Meet and Confer") at a neutral location in Troy, Michigan, or such other location as is reasonably acceptable to the Debtors within five business days of service of the Notice Of Adjourned Estimation Hearing or Notice Of Adjourned Claims Objection, as appropriate.

(ii)    To the extent that (A) a Contested Claim is less than or equal to $250,000 or asserts unliquidated claims and the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $250,000, and (B) is scheduled by the Debtors for either an Estimation Hearing or a Claims Objection Hearing, and the Claimant asserting a Contested Claim that would otherwise require an In-Person Meet and Confer pursuant to clause (c)(i) demonstrates good cause why an In-Person Meet and Confer would be unduly burdensome, the Debtors and the relevant Claimant would be required to hold telephonic meet and confer (a "Telephonic Meet and Confer" and, collectively with In-Person Meet and Confers, the "Meet and Confers") within five business days of service of the Notice Of Adjourned Estimation Hearing or Notice Of Adjourned Claims Objection, as appropriate.

(iii)    The following representatives of each of the Debtors and the Claimant would be required to attend a Meet and Confer: (A) counsel for each of the parties, except for a Claimant proceeding <u>pro se</u>, and (B) a person possessing ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of the Debtors and the Claimant, respectively.

(iv)    Failure by the Claimant to participate in a Meet and Confer within five business days of service of the Notice Of Adjourned Estimation Hearing or Notice Of Adjourned Claims Objection, as appropriate, would constitute grounds for disallowance and expungement of the Contested Claim.

(d)    <u>Claimant's Supplemental Response</u>.  To the extent that the Debtors schedule an Estimation Hearing or a Claims Objection Hearing for a Contested Claim, the following procedures would apply to the Claimant's written supplemental response (the "Supplemental Response"):

(i)    The Claimant would be required to file and serve its Supplemental Response no later than five business days after conclusion of the

19

Meet and Confer.  The Supplemental Response would be limited to fifteen single-sided, double-spaced pages (exclusive of exhibits or affidavits).

     (ii) If the Claimant relies on exhibits, the Claimant would be required to include such exhibits in its Supplemental Response (other than those previously included with either its Proof of Claim or its Response).  If a Contested Claim is based upon a contract or other agreement that was not attached to the Proof of Claim or the Response, the Claimant would be required to include such contract as an exhibit to the Supplemental Response.  The Claimant would be required to include a certificate of counsel or a declaration or affidavit authenticating any documents attached to the Supplemental Response.

     (iii) The Supplemental Response could include affidavits or declarations from no more than two witnesses setting forth the basis of the Contested Claim and evidence supporting the Contested Claim.  The Claimant would be required to have any witnesses whose affidavits or declarations are submitted with the Supplemental Response present at the Estimation Hearing or the Claims Objection Hearing, as appropriate. The Claimant would not be permitted to elicit any direct testimony of those witnesses at the Estimation Hearing or the Claims Objection Hearing, as appropriate; instead, the affidavit or declaration submitted with the Supplemental Response would serve as the witnesses' direct testimony and the Debtors would be allowed to cross examine the witnesses at the Estimation Hearing or the Claims Objection Hearing, as appropriate.  No other or additional witnesses would be allowed to introduce evidence at the hearing on behalf of the Claimant.

     (iv) No later than three business days prior to commencement of the Estimation Hearing or Claims Objection Hearing, as appropriate, the Claimant could file a supplemental affidavit or declaration on behalf of each of its two witnesses solely for the purpose of supplementing such witness' prior affidavit or declaration with respect to matters adduced through the discovery provided by these Claims Hearing Procedures.

   (e) <u>Debtors' Supplemental Reply</u>.  To the extent that the Debtors schedule an Estimation Hearing or a Claims Objection Hearing with respect to a Contested Claim, the following procedures would apply to the Debtors' written supplemental reply, if any (the "Supplemental Reply"):

     (i) The Debtors could file and serve a Supplemental Reply no later than 20 business days prior to commencement of the Estimation Hearing or the Claims Objection Hearing, as appropriate.  The Supplemental Reply would be limited to fifteen single-sided, double-spaced pages (exclusive of exhibits or affidavits).

     (ii) If the Debtors rely on exhibits, the Debtors would have to include such exhibits in their Supplemental Reply other than those previously included with either their objection or reply.  The Debtors would be

required to include a certificate of counsel or a declaration or affidavit authenticating any documents attached to the Supplemental Reply.

(iii)    The Supplemental Reply could include affidavits or declarations from no more than two witnesses setting forth the Debtors' basis for objecting to the Contested Claim and evidence in support of such objection or in support of their proposed estimated amount of the Contested Claim.  The Debtors would be required to have any witnesses whose affidavits or declarations are submitted with the Supplemental Reply present at the Estimation Hearing or the Claims Objection Hearing, as appropriate. The Debtors would not be permitted to elicit any direct testimony of those witnesses at the Estimation Hearing or the Claims Objection Hearing, as appropriate; instead, the affidavit or declaration submitted with the Supplemental Reply would serve as the witnesses' direct testimony and the Claimant would be allowed to cross examine the witnesses at the Estimation Hearing or the Claims Objection Hearing, as appropriate.  No other or additional witnesses would be allowed to introduce evidence at the hearing on behalf of the Debtors.

(iv)    No later than three business days prior to commencement of the Estimation Hearing or Claims Objection Hearing, as appropriate, the Debtors could file a supplemental affidavit or declaration on behalf of each of their two witnesses solely for the purpose of supplementing such witness' prior affidavit or declaration with respect to matters adduced through the discovery provided by these Claims Hearing Procedures.

(f)    <u>Mandatory Non-Binding Summary Mediation</u>.  At least 15 business days prior to commencement of the Estimation Hearing or the Claims Objection Hearing, as appropriate, the Debtors and the Claimant would submit to mandatory non-binding summary mediation (each, a "Mediation") in an effort to resolve the outstanding objection consensually or determine an agreed estimated amount of the Contested Claim.  The following procedures would apply to Mediation:

(i)    Each Mediation would be assigned to one of the approved mediators at the Debtors' discretion (each, a "Mediator").[5]

(ii)    The Mediator would consider a record consisting only of the contents of the Contested Claim, the Debtors' omnibus claims objection and/or motion to estimate, the Claimant's Response, the Debtors' reply, the Claimant's Supplemental Response, the Debtors' Supplemental Reply, and any other relevant pleadings filed by the Debtors or the Claimant prior to the commencement of the Mediation.  The Mediator would not have the authority to require either the Debtors or the Claimant to provide any additional briefing with respect to the Mediation.

---

[5]    The Debtors propose to file a proposed listed of mediators no later than November 16, 2006.

21

(iii)    To the extent that a Contested Claim exceeds $250,000 or asserts unliquidated claims (unless the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $250,000), the Mediation would be required to be held at a neutral location in Troy, Michigan or such other location as is reasonably acceptable to the Debtors in their sole discretion.

(iv)    To the extent that the Contested Claim is less than or equal to $250,000 or asserts unliquidated claims and the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $250,000, the Mediation could be held telephonically at either the Debtors' or the Claimant's request.

(v)    The following representatives of each of the Debtors and the Claimant would be required to attend the Mediation: (A) counsel for each of the parties, except for a Claimant proceeding pro se, and (B) a person possessing ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of the Debtors and the Claimant, respectively.

(vi)    If no consensual agreement is reached for settlement of the Debtors' objection or on an estimate of the Contested Claim, as appropriate, and the parties agree or the Mediator determines that further Mediation is not likely to yield such an agreement, the Claimant and the Debtors, or the Mediator, as the case may be, would be required to sign a statement that the Contested Claim could not be settled after a good faith effort.

(vii)    Failure by the Claimant to participate in a Mediation would constitute grounds for disallowance and expungement of the Contested Claim.

(viii)    The Debtors and the Claimant would each bear its own costs in participating in the Mediation.  The Debtors would be authorized to pay the Mediator's fees.

(g)    Estimation And Claims Objection Hearing Discovery.  To the extent that the Debtors set a Contested Claim for an Estimation Hearing or a Claims Objection Hearing, the Debtors and the Claimant would be bound by the following discovery procedures:

(i)    No later than five business days after service of the Supplemental Response, the Debtors could request:

(1)    That the Claimant produce documents relevant to the Contested Claim.  Documents would be required to be produced within five business days following conclusion of a Mediation, unless the parties agreed otherwise.

(2)    That the Claimant respond to no more than five interrogatories, including discrete subparts.  Responses would be required to

22

be produced within five business days following conclusion of the Mediation, unless the parties agreed otherwise.

(3)    That the Claimant respond to no more than ten requests for admission.  Responses would be required to be produced within five business days following conclusion of the Mediation, unless the parties agreed otherwise.

(ii)    No later than five business days after service of the Supplemental Reply, the Claimant could request:

(1)    That the Debtors produce documents relevant to the Contested Claim.  Documents would be required to be produced within five business days following conclusion of the Mediation, unless the parties agreed otherwise.

(2)    That the Debtors respond to no more than five interrogatories, including discrete subparts.  Responses would be required to be produced within five business days following conclusion of the Mediation, unless the parties agreed otherwise.

(3)    That the Debtors respond to no more than ten requests for admission.  Responses would be required to be produced within five business days following conclusion of the Mediation, unless the parties agreed otherwise.

(iii)    No earlier than the conclusion of the Mediation and no later than ten business days after conclusion of the Mediation, the Debtors could, at their election, take the deposition upon oral examination of each witness whose affidavit or declaration was proffered in support of the Claimant's Supplemental Response.  Each deposition would be limited to three hours.

(iv)    No earlier than the conclusion of the Mediation and no later than ten business days after conclusion of the Mediation, the Claimant could, at its election, take the deposition upon oral examination of each witness whose affidavit or declaration was proffered in support of the Debtors' Supplemental Reply.  Each deposition would be limited to three hours.

(h)    <u>Conduct Of The Estimation Or Claims Objection Hearing</u>.  If the Claimant files a Supplemental Response and participates in the Meet and Confer and the Mediation, the Court would hold an Estimation Hearing or the Claims Objection Hearing, as appropriate, at which the Debtors and the Claimant would each have one hour to present its respective case, inclusive of time cross-examining their opponent's witnesses and making argument to the Court.

(i)    <u>Mandatory Appearance At Claims Hearings</u>.  With respect to each Contested Claim to be considered at a Sufficiency Hearing, an Estimation Hearing, or a Claims Objection Hearing, each of the Claimant and the Debtors would be required to have the

23

following representatives present at the hearing: (i) counsel, except to the extent that such Claimant was proceeding pro se, and (ii) a person possessing the ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of the Claimant and the Debtors, respectively.  Failure by the Claimant to appear in person at a Sufficiency Hearing, an Estimation Hearing, or a Claims Objection Hearing, or to have a person with the ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim present at such hearing, would constitute grounds for disallowance and expungement of the Contested Claim without further hearing or notice to the Claimant.

(j)    Summary Estimation Of Contested Claims When Appeal Is Pending. To the extent that the underlying merits supporting a Contested Claim which is set for an Estimation Hearing have been determined in a binding adjudication, either by a court of competent jurisdiction, a binding arbitration process, or otherwise, and such determination was on appeal as of the Petition Date, but was stayed pursuant to section 362 of the Bankruptcy Code, neither the Debtors nor the relevant Claimant would be entitled to conduct any discovery of the other party prior to such Estimation Hearing and the Court, in considering whether to grant the relief sought by the Debtors with respect to such Contested Claim, would rely solely on (i) the Claimant's Proof of Claim and Response and the Debtors' omnibus claims objection and reply (if any), (ii) the record on appeal, and (iii) the Claimant's and the Debtors' arguments at the Estimation Hearing.

(k)    Estimation Based Upon Claimant's Asserted Estimated Amount.  To the extent that a Contested Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code and the Debtors have sought authority to estimate such Contested Claim pursuant to an omnibus claims objection and/or a motion to estimate claims, if the Claimant has filed a Response in accordance with the procedures outlined above which (i) acknowledges that the Contested Claim is contingent or fully or partially unliquidated and (ii) provides the amount that the Claimant believes would be the allowable amount of such Contested Claim upon liquidation of the Contested Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), the Debtors would be authorized, in their sole discretion, to elect to provisionally accept the Claimant's Asserted Estimated Amount as the estimated amount of such Contested Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes, subject to further objection and reduction as appropriate.  The Debtors' election would be made by serving the Claimant with a Notice Of Election To Accept Claimant's Asserted Estimated Amount in the form attached hereto as Exhibit E.

(l)    Ability To Modify Procedures By Agreement Or For Good Cause Shown.  No discovery, testimony, or motion practice other than that described herein would be permitted, unless otherwise agreed by the parties or as ordered by the Court for good cause shown.

37.    The Debtors respectfully assert that the procedures described above are reasonable and appropriate in light of the need to estimate and resolve Contested Claims on an expedited basis in these chapter 11 cases.  Holding In-Person Meet and Confers and in-person

24

Mediations in the Troy, Michigan area would be convenient for the Debtors as well as the largest group of the Debtors' creditors, most of whom are located in, or have substantial operations in, the Detroit metropolitan area.  Conducting such proceedings in the Troy area is also appropriate because most of the Debtors' representatives who will be necessary to such proceedings are resident at or in the vicinity of the Debtors' headquarters.  Therefore, the Debtors believe that holding Meet and Confers and Mediations in Troy will be the most cost effective solution for the Debtors and their creditors.  Approval and implementation of these procedures will benefit all parties-in-interest by promoting the ability of the Debtors to reach a consensual resolution on the terms of a plan of reorganization, emerge from chapter 11, and begin distributions on claims.

38.    Additionally, the Claims Hearing Procedures would alleviate the massive burden that would otherwise be impressed upon the Court.  For example, pursuant to the Claims Hearing Procedures, the Debtors believe that many Contested Claims will be resolved or estimated through consensual negotiations of the parties or through the mandatory summary Mediation.  This would avoid the Court's having to hear objections to the Contested Claims, or having to estimate the Contested Claims, and having to conduct full evidentiary hearings in connection therewith.

39.    Without the Claims Hearing Procedures, litigation to resolve many of the claims would necessarily be complex and expensive.  Certain litigation would require extensive discovery, including significant document production and numerous depositions, with the attendant demand on the Court's time to supervise and/or resolve disputes related thereto.

<u>Applicable Authority</u>

40.    Bankruptcy courts have broad latitude in determining the process for hearing contested matters.  The Advisory Committee Note to Bankruptcy Rule 3007 specifically

directs that a contested matter initiated by an objection to a claim is governed by Rule 9014.

Bankruptcy Rule 9014 provides that this Court "may at any stage in a particular matter direct that

one or more of the other rules in Part VII shall apply." See Fed. R. Bankr. P. 9014(c).

   41. With respect to the Sufficiency Hearings, the Court has the discretion to

disallow and expunge legally insufficient claims at summary hearing.  This is consistent with the

Court's discretion to rule on the sufficiency of the pleadings presented by the Claimant under

Bankruptcy Rule 7012(b) (incorporating by reference Fed. R. Civ. P. 12(b)(6) (motion to dismiss

for failure to state a claim) and Fed. R. Civ. P. 12(c) (judgment on the pleadings)) which the

Court, in its discretion, may apply under Bankruptcy Rule 9014.  The burden of proof to

establish a claim against an estate rests on the claimant and, if a proof of claim does not include

sufficient factual support, the proof of claim is not entitled to a presumption of prima facie

validity pursuant to Bankruptcy Rule 3001(f) .  In re WorldCom, Inc., No. 02-13533, 2005 WL

3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to

support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof

of claim); see also In re Allegheny Intern., Inc., 954 F.2d 167, 174 (3d Cir. 1992) (in its initial

proof of claim filing, claimant must allege facts sufficient to support claim).  As a result of the

Claimants' failure to sufficiently support the Contested Claims, such Contested Claims do not

make out a prima facie case against the Debtors and are subject to disallowance and

expungement following a Sufficiency Hearing pursuant to Bankruptcy Rule 7012(b).

42.    The Debtors further request that this Court exercise its discretion under

Bankruptcy Rule 9014 to direct that Bankruptcy Rule 7016, which concerns pre-trial procedures,

apply with respect to all proceedings regarding Contested Claims. See Fed. R. Bankr. P. 7016.[6]

43.    Bankruptcy Rule 7016 makes applicable Rule 16 of the Federal Rules of

Civil Procedure.  Pursuant to Rule 16, trial courts have broad authority to enter orders to

"provide for the prompt litigation and disposition of every adversary proceeding and to require

strict adherence to the Scheduling Order."  See In re Bonfiglio, 231 B.R. 197, 198 (Bankr.

S.D.N.Y. 1999).  Rule 16 is designed to give the trial court a "firm hand" with which it can

control the litigation before it. See Campania Management Co. v. Rooks, Pitts, & Poust, 290

F.3d 843, 851-52 (7th Cir. 2002).  Rule 16 also gives the trial court the powers it needs to

"achieve the orderly and expeditious disposition of cases." See Link v. Wabash Railroad Co.,

370 U.S. 626, 630-31 (1962); see also Spain v. Board of Education, 214 F.3d 925, 930 (7th Cir.

2000) (same).  These powers include the ability of the trial court to conduct pre-trial conferences

to force the litigants to refine the issues and particularize their claims. See Berkovitz v. Home

Box Office, Inc., 89 F.3d 24, 28-29 (1st Cir. 1996).  If after conducting such pre-trial

conferences the trial court is convinced that summary judgment is proper, the court is

empowered to sua sponte dispose of those claims. Id. ("there is no reason to require that the

elimination of nontrialworthy claims await a formal motion for summary judgment.").

---

[6]    Other courts have adopted a similar position.  For example, a standing order of the United States Bankruptcy
Court for the Eastern District of Missouri applies Bankruptcy Rule 7016 to all claims objection procedures.  See
American Martial Arts, Inc. v. Interco, Inc. (In re Interco Inc.), 139 B.R. 224, 225 n.1 (Bankr. E.D. Mo. 1992)
("This Court has made Rule 16 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule
7016, applicable to claims objections procedures.   See Standing Order $ 3, April 18, 1991 at 12.   This is in
accordance with the Federal Rules of Civil Procedure and the Bankruptcy Rules.   The Advisory Committee
Note to Bankruptcy Rule 3007 directs that a 'contested matter initiated by an objection to a claim is governed by
Rule 9014 ...'  Rule 9014 sets out the rules under Part VII of the Bankruptcy Rules which shall apply to
contested matters and provides that '[t]he court may at any stage in a particular matter direct that one or more of
the other rules in Part VII shall apply.'").

44.    Specifically, Fed. R. Civ. P. 16 grants authority for trial courts to issue orders to:

(a)    limit the time available for discovery and the types of discovery to be used (Fed. R. Civ. P. 16(b)(3), (c)(6));

(b)    formulate and simplify the issues, including the elimination of frivolous claims or defenses Fed. R. Civ. P. 16(c)(1));

(c)    avoid unnecessary proof and cumulative evidence and place limitations or restrictions on the use of expert testimony (Fed. R. Civ. P. 16(c)(4));

(d)    examine the appropriateness of summary adjudication under Rule 56 (Fed. R. Civ. P. 16(c)(5));

(e)    schedule the exchange of pre-trial briefs (Fed. R. Civ. P. 16(c)(7));

(f)    employ special procedures to assist in resolving the dispute when authorized by statute or local rule (Fed. R. Civ. P. 16(c)(9)), including the use of mini-trials and summary trials (1993 Notes of Advisory Committee to Rule 16, ¶ 10);

(g)    establish limits on the time allowed for presenting evidence (Fed. R. Civ. P. 16(c)(15)); and

(h)    facilitate in the "just, speedy, and inexpensive disposition of the action." (Fed. R. Civ. P. 16(c)(16).

45.    Further support for the Claims Hearing Procedures can be found in Rule 26(b)(2) of the Federal Rules of Civil Procedure, which is applicable to contested matters pursuant to Bankruptcy Rules 7026 and 9014. See Fed. R. Bankr. P. 7026; Fed. R. Bankr. P. 9014(c) ("Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: . . . 7026"). Fed. R. Civ. P. 26(b)(2) provides that the court may alter the limits on the number of depositions, interrogatories, and requests for admissions, as well as the length of depositions, upon a determination that, inter alia, "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). The Claims Hearing Procedures allow the Debtors and the Claimants to conduct meaningful discovery with respect to Contested Claims while avoiding the tremendous burden that would be placed upon the Debtors'

ability to formulate a plan of reorganization and emerge from chapter 11 protection if the

Procedures were not approved.  Furthermore, where a Claimant can show that additional or

expanded discovery would provide significant benefits, the Claims Hearing Procedures expressly

preserve this Court's ability to modify the limits on discovery appropriately, thereby protecting

Claimants' rights.

46.    Bankruptcy Rule 9014(c) also provides that the Court "shall give the

parties notice of any order issued under this paragraph to afford them a reasonable opportunity to

comply with the procedures prescribed by the order."  Fed. R. Bankr. P. 9014(c).  The Debtors

propose to provide such notice to all Claimants whose Proofs of Claim are subject to future

claims objections to which the Claims Hearing Procedures are applicable by (a) providing each

such Claimant with a copy of any order entered with respect to this Motion as part of the service

of the claims objection, and (b) including the following language in the personalized Notices Of

Objection To Claim sent to each such Claimant:

> THOSE PROCEDURES PROVIDED BY THE TERMS OF THAT CERTAIN
> ORDER PURSUANT TO 11 U.S.C. §§ 502(b) AND 502(c) AND FED. R.
> BANKR. P. 2002(m), 3007, 7016, 7026, 9006, 9007, AND 9014
> ESTABLISHING (I) DATES FOR HEARINGS REGARDING
> DISALLOWANCE OR ESTIMATION OF CLAIMS AND (II) CERTAIN
> NOTICES AND PROCEDURES GOVERNING HEARINGS REGARDING
> DISALLOWANCE OR ESTIMATION OF CLAIMS, DATED NOVEMBER __,
> 2006 (THE "PROCEDURES ORDER"), ARE APPLICABLE TO YOUR
> PROOFS OF CLAIM THAT ARE SUBJECT TO OBJECTION BY THE
> DEBTORS PURSUANT TO THE OBJECTION SET FORTH ABOVE.  A
> COPY OF THE PROCEDURES ORDER IS INCLUDED HEREWITH.

47.    There is also ample authority for the Court to estimate the contingent or

unliquidated Contested Claims for purposes of a distribution under a plan of reorganization.

Indeed section 502(c) of the Bankruptcy Code provides that the Court shall estimate for purposes

of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the

case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c); see also In

re Chateaugay Corp., 944 F.2d 997, 1006 (2d Cir. 1991) (stating that courts should make a

"speedy and rough estimation of claims for purposes of determining [the claimant's] voice in the

Chapter 11 proceeding"); In re Fox, 64 B.R. 148, 151 (Bankr. N.D. Ohio 1986) ("The language

of section 502(c) is mandatory and places an affirmative duty on the court to estimate

unliquidated claims under proper circumstances").

            48.     In estimating Contested Claims, this Court has broad latitude and may use

whatever method is best suited to the contingencies of the case, so long as the procedure is

consistent with the fundamental policy of chapter 11 which encourages quick and efficient

reorganizations.  In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003)

(stating that "estimation, authorized under section 502(c) of the Code, provides a means for a

bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the

results of legal proceedings that could take a very long time to determine"); see also Bittner v.

Borne Chem. Co., 691 F.2d 134, 134 (3d Cir. 1982) (finding that in estimating value, court is

bound by legal rules which may govern ultimate value of claims, but court is not limited in its

authority to evaluate claims except for general principles which should inform all decisions made

under Bankruptcy Code).  Moreover, since neither the Bankruptcy Code nor the Bankruptcy

Rules prescribe any method for estimating claims, bankruptcy courts have employed a variety of

claim estimation methods depending on what best suits the particular circumstances of a case. In

re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (applying

probability of success test, which requires court to estimate claims according to present value of

probability of success);  In re Kaplan, 186 B.R. 871 874 (Bankr. D.N.J. 1995) (estimating

unliquidated guarantee claim at $0 under section 502(c)(1)); In re Windsor Plumbing Supply Co.,

Inc., 170 B.R. 503, 520 (Bankr. E.D.N.Y 1994) (stating that estimated value of claim should be amount of claim diminished by probability that it may be sustainable only in part or not at all).

49.     The procedures proposed herein are fair and reasonable and cause exists to justify the granting of the relief requested by this Motion. As described above, more than 16,000 proofs of claim have been filed in the Debtors' chapter 11 cases, including more than 6,000 which assert unliquidated claims and thousands more that are likely to be disputed by the Debtors.  The magnitude of the administration required in respect of analyzing and resolving the Proofs of Claims as well as the magnitude of coordinating and organizing the task cannot be overstated. The procedures proposed herein provide a streamlined method, including through the utilization of estimation as permitted by the Bankruptcy Code, to efficiently resolve many issues attendant to the estimation and resolution of the Contested Claims.

50.     The Debtors' proposed procedures permit the Debtors and Claimants an opportunity to engage in systematic negotiations to attempt to reach a consensual settlement outside of the confines of a courtroom.  The procedures also provide guidelines for the Debtors and Claimants to bring Contested Claims to the Court and to prosecute and resolve the Contested Claims in an equitable and efficient manner.

51.     The Debtors' implementation of an expedited claims administration process, of which the relief sought by this Motion is a cornerstone, is critical to the Debtors' ability to emerge from these chapter 11 cases promptly.  In the course of the ongoing framework discussions among the Debtors, their statutory committees, and other parties-in-interest, it has become clear that the parties' ability to reach agreement on a framework for the Debtors' emergence is predicated upon a clear understanding of the scope of the claims against the Debtors that will ultimately be allowed in these cases.  Such an agreement is a prerequisite for

the Debtors to be able to file a consensual plan of reorganization and to proceed with confirmation of such a plan.

52.    Finally, the proposed procedures will alleviate the massive burden that would otherwise be impressed upon the Court.  For example, pursuant to the Claims Hearing Procedures, the Debtors believe that many Contested Claims would be resolved or estimated through consensual negotiations of the parties or through the mandatory summary Mediation. This would avoid the Court's having to hear objections to such Contested Claims, or having to estimate the Contested Claims, and having to conduct full evidentiary hearings in connection therewith.

53.    For all of the above reasons, the Debtors submit that entry of an order authorizing and establishing the procedures outlined herein is appropriate and is in the best interests of the Debtors, their creditors, and their estates.

## Notice

54.    Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Case Management Order.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

55.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other further relief as is just.

Dated:      New York, New York
            October 31, 2006

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By:   /s/ John Wm. Butler, Jr.
                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 9331)
                            Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois 60606

                            - and -

                        By:   /s/ Kayalyn A. Marafioti
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession