Hearing date: November 30, 2006<br>
10:00 a.m. Eastern<br>
Response deadline: November 22, 2006<br>
4 p.m. Eastern

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

In Re:

    DELPHI CORPORATION, et al.,

                                        Case No. 05-44481 (RDD)

                     Debtors.

------------------------------------------------------------------ x

## MOTION OF USW TO COMPEL DEBTORS TO SUBMIT INDIVIDUAL EMPLOYEE MATTER TO IMPARTIAL MEDICAL AUTHORITY

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"), successor by merger to the United Steelworkers of America, and its Local Union No. 87L hereby moves for an Order directing Delphi Corporation, et al. ("Debtors") to comply with the impartial medical dispute provisions of its collective bargaining agreement with the USW, as follows:

### Preliminary Statement

1.    This is a motion to compel "arbitration" of a request by Terry Detrick, a former employee of Debtors and former member of the USW, who retired under a disability pension, and who seeks to return to active employment under provisions of the Pension Plan between the parties permitting such return where the cause of the disability has abated.

## Collective Agreements

2.  At all times relevant hereto, the Debtors and USW Local 87L have been and remain parties to a series of collective bargaining agreements governing the wages, hours and conditions of employment of the employee-members at the Dayton, Ohio Plant. The most recent Collective Bargaining Agreement between the parties was effective December 8, 1999 and by its terms remains in effect through September 14, 2007. Like its predecessors, the current labor contract consists of a main agreement and a series of supplemental agreements on various subjects, including a pension program.

3.  The current Supplemental Agreement (Pension Plan) identified as Exhibit A to the Collective Bargaining Agreement is dated December 8, 1999 and by its terms remains in effect through the termination of the Collective Bargaining Agreement. Exhibit A-1 to the Supplemental Agreement (Pension Plan) is the plan document known formally as "The Delphi Hourly-Rate Employees Pension Plan."

4.  Among other benefits, the Pension Plan provides for a Total and Permanent Disability Retirement ("T&PDR") (Article II, Sec. 3) for employees who become totally and permanently disabled prior to attaining age 65 and who have at least ten years of credited service. The Plan also provides that those who retire on a T&PDR may be required to submit to medical examinations up to twice per year prior to age 65. Retirees deemed recovered by such medical examinations can have their T&PDR pensions terminated. (Article II, Sec. 3(c).).

5.  Similarly, persons retired on a total and permanent disability pension may return to work with the employer if the medical condition causing the disability abates. Appendix D -- Agreement Implementing Section 3(c) of the Supplemental Agreement (Pension

Plan), as adopted by the Board of Administration of the Plan, provides a procedure to be followed if a retiree asserts that he/she has recovered and notifies the Corporation of his/her intent to return to work.

6. Reduced to its essence, the procedure involves the submission of medical evidence to the Plant Medical Director, a consultative review with the Corporation and a determination by the Plant Medical Director. If the retiree and the Union Benefit Representative ("UBR") disagree with that determination, they may initiate a further review with the Corporate Medical Director. A continuing dispute as to the ability of a retiree, who has been retired for five or more years, is to be decided by the final and binding decision of an impartial specialist jointly selected by the Debtors and the UBR. A true and correct copy of the procedure as found in Appendix D, Sec. B(2)(i) at pages 87-89 of the Supplemental Agreement (Pension Plan) is attached hereto as Exhibit A to this Motion.

### Terry Detrick

7. Terry Detrick is an adult individual who was hired by the Debtors and employed at the Dayton Plant beginning September 24, 1967. Detrick was diagnosed with severe anxiety disorder, agoraphobia and dysthymic disorder in 1983. He applied for and received a T&PD pension from the Debtors, effective June 1, 1983.

8. Detrick requested that his medical disability be rescinded and that he be returned to work twice in the 1990s. The requests were denied. On May 2, 2001, Detrick again requested reinstatement and supported his request with three letters from Ieva Veveras, MD, the psychiatrist who had treated him since February, 1985.

9. On August 19, 2002, Dr. Thomas Pace, Divisional Medical Director -- Delphi Energy and Chassis Systems, wrote to USW Staff Representative Eldon House rejecting

-3-

the application on the basis of an absence of "current documentation to substantiate a reversal of the Total and Permanent Disability that was approved in June, 1983." Exhibit B to this Motion.

10. On October 3, 2002, Johnny Carroll, Benefit Chairman of Local 87L, the Union Benefits Representative, wrote to Delphi requesting an Impartial Medical Opinion ("IMO") for Mr. Detrick at the earliest possible time. Exhibit C to this Motion.

11. Further correspondence pressing the Debtors for an IMO for Mr. Detrick did not produce a response. Exhibit D to this Motion (letter dated September 8, 2003 from USW Staff Representative Wardrup to Delphi Personnel Director Alexander).

12. On January 18, 2005, Local 87L Benefit Committee Chairman Johnny Carroll again wrote to Tonya Rutledge, Delphi Chassis Systems Medical Director. On this occasion, Mr. Carroll enclosed a full and complete copy of Dr. Ieva Veveras' file on Mr. Detrick, along with a HIPAA authorization for the release of medical information relating to Mr. Detrick. Mr. Carroll renewed the union's demand for an IMO for Mr. Detrick. To date, no response has been received. A copy of Mr. Carroll's January 18, 2005 letter is attached hereto as Exhibit E to this Motion.

13. As a total and permanent disability retiree, Terry Detrick may seek reinstatement to employment on the basis of his recovery from the medical condition that caused his disability. Under the procedures adopted by the Pension Plan Board of Administration, disputes as to the medical capacity of a medical retiree to resume employment are to be resolved by the final and binding determination of an impartial medical clinic or physician.

### Relief Requested

14. The USW has repeatedly requested an impartial medical evaluation on behalf of Mr. Detrick, but the Debtors have refused and continue to refuse to cooperate in the

selection of such an impartial medical authority. Section 1113(f) of the Bankruptcy Code provides that a debtor is obligated to honor the terms of its collective bargaining agreements unless and until the Court has entered an order permitting the debtor to reject that agreement or to modify it on an interim basis pursuant to Section 1113(e). In <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 992 (2nd Cir. 1990) the Court of Appeals squarely held that Section 1113(f) requires a debtor to honor the neutral dispute resolution mechanism in collective bargaining agreement. That is precisely what the USW seeks here.

15.     It should be noted that the outcome of the impartial medical dispute resolution procedure would have virtually no impact on the Debtors' operations or its ability to reorganize, even if Detrick ultimately is found capable of returning to work.

16.     Indeed, the Debtors apparently believe that Detrick is not able to return to work - that his disability was so significant and his recovery so unsubstantiated that he cannot perform the duties of the job. If they are correct, an impartial examination will uphold their conclusion. If the Debtors are mistaken, then Detrick has the right to go back to work.

17.     The Court has not entered such an order.

18.     Because the points of law upon which this Motion relies are incorporated herein, the USW respectfully requests that the requirement of service and filing of a separate Memorandum of Law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, USW and its Local Union 87L request that this Court enter an Order:

(A)    Enforcing the impartial medical dispute provisions of the parties' Supplemental Agreement (Pension Plan);

(B)    Requiring the Debtors to cooperate in the joint selection of an impartial medical authority and the referral of the Detrick dispute to that authority; and

(C)    Directing the Debtors to comply with the determinations made by such impartial authority as provided by the parties' agreement.

                        MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:    _____/s/_____
Lowell Peterson (LP 5405)
1350 Broadway, Suite 501
New York, New York 10018
(212) 239-4999

David R. Jury, Assistant General Counsel
Melvin Stein, Assistant General Counsel
United Steelworkers
Five Gateway Center, Room 807
Pittsburgh, Pennsylvania 15222
(412) 562-2545
djury@usw.org
mstein@usw.org

Attorneys for United Steelworkers

Dated:    November 2, 2006

80712

-6-

(2) If the Union member of the Pension Committee disagrees with the Corporation's determination, the procedure described in Paragraph B3 (e) will apply.

(g) When it is found that a disability pensioner is employed, the Corporation will make such investigation as it considers appropriate to determine if the pensioner is engaged in gainful employment for purposes other than rehabilitation. If the Corporation determines, on the basis of evidence satisfactory to it, that the employment in which the disability pensioner is engaged is gainful employment and is not for purposes of rehabilitation, the Corporation will prepare form HRP-23 and will furnish copies to the disability pensioner, the Union member of the Pension Committee, the local Personnel Director, and two copies to the Board.

(1) If such pensioner disputes the Corporation's determination on the basis that the employment is not gainful employment, such determination may be appealed by filing a written claim with the Pension Committee as set forth in Section K herein.

(2) If such pensioner disputes the Corporation's determination on the basis that the employment is for purposes of rehabilitation, such pensioner may, within 30 days of receipt of such determination, file a written claim with the Center on form BA 1, "Employee Claim to Pension Committee". The Pension Committee shall then designate a clinic in the area which is on the approved list (Appendix D-1) to examine the pensioner. The opinion of the clinic shall decide the question with respect to whether the employment in which the disability pensioner is engaged is rehabilitative or not and such opinion shall be final and binding on the pensioner, the Corporation and the Union. Such clinic exam shall not be performed

86

if there is any unresolved claim pending with respect to whether such pensioner's employment is gainful employment.

(h) If a disability pensioner returns to work for the Corporation, Management will notify the Union member of the Pension Committee and the Center of such return to work.

(i) When a former employee who has retired under total and permanent disability provisions (T&PD) asserts such retiree has recovered and notifies the Corporation of their intent to return to work, the following procedure will be utilized:

(1) The retiree will provide medical evidence to the Plant Medical Director, satisfactory to the Corporation, that supports that such retiree is no longer T&PD. The information will include, among other relevant information, a narrative report that details what has improved and why the condition under which such retiree was determined to be T&PD no longer exists or no longer disables the retiree. Documentation will include appropriate lab reports and/or test results.

(2) If necessary, the Plant Medical Director may examine the retiree to determine if the retiree has recovered.

(3) If the Plant Medical Director determines the retiree has recovered and is able to engage in regular employment on a job within the plant, the Plant Medical Director will review the matter with the Corporation. If the Corporation agrees, the retiree is to be removed from T&PD status and seniority will be treated as set forth in Exhibit A, Section 4(b) of the Supplemental Agreement (Pension Plan), and the retirement is to be cancelled. The Plant Medical Director will advise the retiree, the Union Benefit Representative (UBR), and the Center.

87

EXHIBIT
A

Appendix D

(4) If the Plant Medical Director determines that the retiree has not recovered and should remain on T&PD retirement, the retiree will continue in T&PD status under the Pension Plan. The Plant Medical Director will advise the retiree, the UBR and the Center.

(5) If the retiree disagrees, the retiree may contact the UBR. If the UBR disagrees with the Plant Medical Director's determination, the UBR will forward the case, with all pertinent medical information, to the Union Benefit Representative. The Union Benefit Representative may forward the case to the Delphi Employee Benefits (EB) Staff. After reviewing the case with the Corporate Medical Director, the Delphi EB Staff will provide the Union Benefit Representative with the Corporate Medical Director's decision of why the retiree has not recovered and is not able to engage in regular employment on a job within the plant. If the Union Benefit Representative disagrees with the determination of the Corporation, the Union Benefit Representative and the Delphi EB Staff may agree to schedule an exam with an impartial specialist physician selected by the Plant Medical Director or, in the absence of such agreement, the Delphi EB Staff will advise the Plant Medical Director to schedule an exam with an impartial clinic in the area which is on the approved list (Appendix D-1). However, in all cases where the retiree has been retired for five or more years, the retiree will be sent to an impartial specialist approved by the Delphi EB Staff and the Union Benefit Representative. The impartial clinic or physician will determine whether the retiree has recovered and is able to engage in regular employment on a job within the plant. The decision of the impartial clinic or physician is final and binding on the retiree, the Union and the Corporation.

88

If the impartial clinic determines the retiree remains totally and permanently disabled, the former employee remains retired and cannot reapply to return to work unless there is a substantial change in the retiree's medical condition subsequent to the initial request to return to work. If the impartial physician determines the retiree has recovered and is able to engage in regular employment on a job within the plant, the retiree is to be removed from T&PD status and seniority will be treated as set forth in Exhibit A, Section 4(b) of the Supplemental Agreement (Pension Plan). The Plant Medical Director will advise the retiree, the Union Benefit Representative and the Center of the determination.

### C. PENSION BENEFITS TO SURVIVING SPOUSE

1. An employee who retires prior to age 55 with benefits commencing on or after October 1, 1970, excluding 1) an employee with 30 or more years of credited service who retires with benefits commencing on or after October 1, 1974, or 2) an employee retiring with benefits commencing on or after October 1, 1984, as early as age 50 under mutually satisfactory conditions in accordance with the Standards set forth in the Pension Plan, will be informed by the Center prior to age 55 with respect to surviving spouse coverage. The retired employee for whom such surviving spouse coverage is to be effective must advise the Center of the intent to reject the coverage, on a form approved by the Corporation, "Rejection/Election of Survivor Coverage", which includes the written consent of the pensioner's spouse that informs the spouse of the effect of rejection, and that is witnessed by a notary public, and filing it with the Center, during the month prior to the month in which the pensioner attains age 55.

89

Appendix D

262-3542

# DELPHI
Automotive Systems

memo

Date: August 19, 2002
To: Eldon House, Local 87
From: Thomas Pace, M.D.
Subject: Terry Detrick

Mr. House,

After thorough examination of reports and records submitted, I find no current documentation to substantiate a reversal of the Total and Permanent Disability that was approved in June, 1983.

Thomas Pace, M.D.

EXHIBIT
B



# United Steelworkers of America
AFL-CIO/CLC

RUBBER/PLASTICS INDUSTRY CONFERENCE
Local Union No. 87-L
21 Abbey Avenue
Dayton, Ohio 45417
268-6646
Fax 262-3542

DENNIS A. BINGHAM, President
CURT VARNER, Vice President
VIC ALEXANDER, Secretary
JOHNNY L. CARROLL, Treasurer

October 3, 2002

Dr. Tonya Rutledge
Medical Director
Delphi Chassis Systems
P. O. Box 1224
Dayton, Ohio 45401

RE: Terry Detrick

Dear Dr. Rutledge:

Per the attached documents we request an Impartial Medical Opinion be scheduled at the earliest possible time for the employee Terry Detrick.

Please inform the union of your decision in writing.

I am thanking you in advance for your cooperation in this matter.

Sincerely,

*Johnny L. Carroll*

Johnny L. Carroll
Benefit Chairman
USWA Local 87-L
AFL-CIO/CLC

JLC:dw
Opeiu-98



OCT 0 3 2002
PERSONNEL DEPT.

EXHIBIT C



# United Steelworkers of America

AFL-CIO-CLC

District 1 / Sub-District 3

1329 E. Kemper Road, Building 400
Suite 4214
Cincinnati, Ohio 45246
Office: (513) 671-8792 • FAX: (513) 671-6011

---

David R. McCall, *Director*                                                                 Dan Winslow, *Assistant Director*
                                                                                            Wm. J. Hocevar, *Assistant Director*

September 8, 2003

Fred Alexander
Director Personnel
Delphi Chassis Systems
2701 Home Avenue
Dayton, OH 45417

RE:   **TERRY DETRICK**

Dear Mr. Alexander,

I had sent you a letter requesting an Independent Medical Opinion (IMO) for retiree Terry Detrick and am yet to have received a response. I would appreciate at least a statement of the companies' position on this matter.

I would be happy to meet with any agent of the company to bring resolution to this matter. If you have any questions you may contact me at my office.

Sincerely,

Ronnie Wardrup
Staff Representative
United Steelworkers of America
Cincinnati Office

RW/jlm

Cc:   David McCall, Director, District One, United Steelworkers of America
      David Caldwell, Sub District Director, District One - Sub District Three, United Steelworkers of America
      Mel Stein, Legal Council, United Steelworkers of America
      John Carroll, Benefits Representative United Steelworkers of America, Local 87L
      Gary Adams, Shop Chairman, United Steelworkers of America, Local 87L
      Tonya Rutledge, Medical Director, Delphi Chassis Systems



EXHIBIT D



# United Steelworkers of America
AFL-CIO/CLC

DENNIS A. BINGHAM, President
VIC ALEXANDER, Vice President
DARRELL COLLINS, Recording Secretary
JOHNNY L. CARROLL, Financial Secretary
EARL D. SHEPARD, Treasurer

RUBBER/PLASTICS INDUSTRY CONFERENCE
Local Union No. 87-L
21 Abbey Ave.
Dayton, OH 45417
Office: (937) 268-6646
Fax: (937) 262-3542

January 18, 2005

Dr. Tonya Rutledge
Medical Director
Delphi Chassis Systems
P.O. Box 1224
Dayton, OH  45401

RE:  Terry Detrick
S.S. #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

Dear Dr. Rutledge:

For the past several years, we have been attempting to secure for Mr. Detrick his contractual right to return to work following his recovery from the anxiety disorder that forced his disability retirement. The Company has refused either to reinstate Mr. Detrick to employment or to cooperate in scheduling an impartial medical opinion to resolve any dispute as to Mr. Detrick's recovery and ability to return to work. Specifically, the Company has insisted that they had insufficient medical information on which to proceed.

Enclosed please find the complete medical records covering Mr. Detrick's treatment from February 1985 through September 2001. We ask that the Company promptly review these records and either agree to reinstate Mr. Detrick or with the participation of the Union, schedule a medical review by a qualified impartial psychiatrist. Such physician must be truly impartial and not have any financial ties or obligations to the Company or Union. Assuming an IMO is required, we submit the following individuals as both qualified and impartial.

Please find enclosed a copy of the HIPAA authorization form pursuant to 45 CFR 164.508 authorizing release of protected health information to: Melvin Stein, Esq.; Ron Wardrup, USWA Field Representative; John Carroll, USWA Local 87L Benefit Chairman & General Motors' representative.



EXHIBIT E

Terry Detrick                                                                                         Page 2
January 18, 2005

       Dr. Vinod Patwa
       3131 South Dixie Drive
       Moraine, OH
       (937)395-3525

       Dr. Mahendra Mahajan & Associates
       9000 N. Main Street
       Englewood, OH
       (937)836-7666

       Dr. Amita Patel
       9000 N. Main Street, Suite 222
       Englewood, OH
       (937)832-8883

Should you have any questions, please contact me. We look forward to an early response.

                                                    Very truly yours,

                                                    *Johnny L. Carroll* (signature)

                                                    Johnny L. Carroll
                                                    Benefit Committee Chairman
                                                    USWA Local 87L, AFL-CIO/CLC

JLC:dw
Opeiu-98
Afl-cio/clc

CC:   Ron Wardrup, USWA Staff Representative
       Melvin P. Stein, Senior Counsel USWA Local 87
       Frank Payson, Esquire

ENCL/T.Detrick records