**Hearing Date: November 30, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                             :
    In re                         :       Chapter 11
                             :
DELPHI CORPORATION, et al.,     :       Case No. 05-44481 (RDD)
                             :
                Debtors.    :       (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' REPLY TO OBJECTION OF ORIX WARREN, LLC TO MOTION FOR ORDER
UNDER 11 U.S.C. § 365(d)(4) EXTENDING DEADLINE TO ASSUME OR REJECT
UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY

("DEBTORS' REPLY TO ORIX WARREN OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby submit this reply (the "Reply") to the Objection Of Orix Warren, LLC To Motion For Order Under 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired Lease Of Nonresidential Real Property (Docket No. 1123) (the "Objection"), which has been set for hearing on November 30, 2006 at 10:00 a.m. (Prevailing Eastern Time) pursuant to the Notice of Objection Of Orix Warren, LLC To Motion For Order Under 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired Lease Of Nonresidential Real Property (Docket No. 5178) (the "Notice of Objection") and respectfully represent as follows:

<u>Preliminary Statement</u>

1.    The Objection should be overruled because cause exists for extending the deadline to assume or reject all nonresidential real property leases to June 7, 2007, as more fully set forth in the Debtors' Motion For Order Under 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired Lease Of Nonresidential Real Property (Docket No. 995) (the "365(d)(4) Motion").  Of the nearly 90 lessors affected, Orix Warren, LLC ("Orix Warren") was the only one to file an objection to the 365(d)(4) Motion.[2]  Orix Warren's Objection was subsequently resolved, although temporarily, as memorialized in the Order Pursuant to 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired Lease Of Nonresidential Real Property entered by the Court on November 29, 2005 (Docket No. 1345), a copy of which is

---

[1]    Delphi Automotive Systems LLC is the tenant and the obligor under the lease subject to this Reply.  The term "Debtors" is used pervasively herein because the Reply represents the position of the Debtors. Obligations and liabilities inherent in such references, however, are attributable only to Delphi Automotive Systems LLC.

[2]    Months after the 365(d)(4) Motion was approved, Cherokee North Kansas City, LLC ("Cherokee"), a lessor at the Debtors' North Kansas City, Missouri manufacturing facility, sought to shorten the Debtors' 365(d)(4) assumption/rejection deadline (Docket No. 1834).  The Debtors prevailed and on April 11, 2006, this Court entered an order denying Cherokee's motion (Docket No. 3199).

attached hereto as Exhibit A.  Specifically, Orix Warren agreed to the eighteen-month extension

applicable to all non-residential real property leases subject to its right, on or prior to October 1,

2006, to file a notice of objection if it was opposed to the final six months of the extension.  In

the event of such an objection, the burden would shift back to the Debtors to show cause (as the

term "cause" is contemplated under section 365(d)(4) of the Bankruptcy Code) for the last six

months of the extension.[3]  On September 21, 2006, Orix Warren filed the Notice of Objection,

setting a hearing on November 30, 2006 on its Objection.

        2.      Cause for such an extension exists.  Indeed, as set forth more fully below,

the Debtors satisfy the factors that the United States Court of Appeals for the Second Circuit has

held should be weighed in determining whether cause exists to extend a debtor's deadline to

assume or reject an unexpired lease.  See South Street Seaport L.P. v. Burger Boys, Inc., 94 F.3d

755, 761 (2d Cir. 1996).  First, Delphi Automotive Systems LLC ("DAS LLC"), an Affiliate

Debtor that is the tenant under the subject lease (the "Orix Lease"), is current on its postpetition

lease payments.  Second, the Debtors' continued occupation of the property will not damage Orix

Warren beyond the compensation available under the Bankruptcy Code.  Third, although the

Orix Lease is not DAS LLC's primary asset, it is a part of the Debtors' real estate portfolio, and

the evaluation of that portfolio in its entirety to determine which real estate leases will remain

part of the Debtors' core operations, and which will not, is one of the essential components of the

Debtors' reorganization efforts that the Debtors must complete to fully implement their

transformation plan.  Fourth, because of the size of the Debtors' chapter 11 cases and the

complexity of the issues involved in this restructuring, the Debtors have not had sufficient time

---

[3]      The Debtors reserve all rights to seek a further extension of the current deadline.

to make critical decisions regarding all of their leases, including the Orix Lease.  For the foregoing reasons and as set forth in more detail below, the Objection should be overruled.

Argument

A.    <u>"Cause" Exists To Justify Extending The 365(d)(4) Deadline</u>

3.    The term "cause" as used in 11 U.S.C. § 365(d)(4) is not defined in the Bankruptcy Code.  To meet its burden to show cause, however, the Debtors must satisfy the factors enumerated by the Second Circuit in <u>South Street Seaport L.P. v. Burger Boys, Inc.</u>, 94 F.3d 755 (2d Cir. 1996).  Those factors are:

(a)    whether the debtor was paying for the use of the property;

(b)    whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

(c)    whether the lease is the debtor's primary asset; and

(d)    whether the debtor has had sufficient time to formulate a plan of reorganization.

<u>Id.</u> at 761.  Additional factors that may merit consideration include the complexity of the case and the number of leases that the debtor must evaluate.  <u>Id.</u>  <u>See</u> <u>also</u> 130 Cong. Rec. 58,894-95 (1984), <u>reprinted in</u> 1984 U.S.C.C.A.N. 590, 597 ("cause" includes large number of leases) (statement of Sen. Hatch); <u>In re Unit Portions of Del., Inc.</u>, 53 B.R. 83, 85 (Bankr. E.D.N.Y. 1985).

4.    A brief review of the factors set forth by the <u>Burger Boys</u> court indicates that cause exists to extend the Debtors' deadline under section 365(d)(4) of the Bankruptcy Code to assume or reject the Orix Lease.

4

(i)    DAS LLC Is Continuing To Pay For The Use Of The Property

5.    DAS LLC is current in all of its postpetition obligations under the Orix

Lease.[4]  Moreover, DAS LLC has significant resources and liquidity, including access to the

Debtors' substantial debtor-in-possession credit facility, which provide adequate assurance to

Orix Warren that it will continue to receive its postpetition rent timely.  See Declaration Of John

D. Sheehan In Support Of The Debtors' Reply To Objection Of Orix Warren, LLC To Motion

For Order Under 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired

Lease Of Nonresidential Real Property (the "Sheehan Declaration") at ¶ 4.

(ii)    Orix Warren Will Not Suffer Any Harm Beyond Compensation Available Under
        The Bankruptcy Code Because Of The Debtors' Continued Occupation

6.    There is no harm beyond compensation available under the Bankruptcy

Code that will befall Orix Warren if the Debtors' assumption/rejection deadline under section

365(d)(4) of the Bankruptcy Code is maintained to June 7, 2007.  By staying in the premises of

the Orix Lease and timely paying its postpetition rent, DAS LLC is not increasing the damages

to Orix Warren that would not be compensable under the Bankruptcy Code.

(iii)    The Orix Lease Is Important to the Debtors' Estates

7.    The Orix Lease is currently being used as a research facility for one of the

Debtors' core divisions.  Although the Debtors acknowledge that the Orix Lease is not the

primary asset of the Debtors' businesses, this facility is nonetheless important to the Debtors'

estates.  As this Court recognized when ruling on the Cherokee dispute this past Spring, ". . . [the

Kansas City facility] is a piece in the very complicated puzzle that the debtor is still putting

---

[4]    As noted by this Court in its ruling at the April 7, 2006 omnibus hearing denying Cherokee's motion to
shorten the Debtors' deadline to assume or reject an unexpired lease:  "[H]ere, of course, the debtor is
paying and that's a strong factor for continuing the debtor's ability to decide whether to assume or reject to
a later date."  Transcript of April 7, 2006 Omnibus Hearing at 82:5-9.  The quoted excerpt of the transcript
is attached hereto as Exhibit B.

together, with the help of its various constituencies including the creditors' committee . . . ."

Transcript of April 7, 2006 Omnibus Hearing at 85:11-17.

        8.      Indeed, the Debtors' research and technical centers, manufacturing sites, and sales offices are all vital to the Debtors' business operations.  As part of the Debtors' restructuring efforts, the Debtors are in the process of evaluating all owned and leased real estate, including the Orix Lease.  In considering their options with respect to the real property leases, the Debtors are evaluating a variety of factors to determine whether it is appropriate to assume, assume and assign, or reject each particular real property lease.  See Sheehan Declaration at ¶ 5.

        9.      The Debtors have announced their transformation plan, which outlines the realignment of their global product portfolio and manufacturing footprint to preserve the Debtors' core businesses.  Implementation of that transformation plan, however, will take time as the Debtors continue to evaluate the allocation of their resources, which include their real estate holdings.  Moreover, the completion of the Debtors' negotiations with their major stakeholders is integral to their decision-making.  Indeed, the results of the Debtors' framework discussions and their ongoing business planning are likely to have an impact on their analysis.  Forcing a premature decision to assume or reject the Orix Lease would harm the Debtors, their estates, and all other stakeholders because it could force DAS LLC to assume excess administrative liabilities under the Orix Lease or forfeit value on account of a marketable or otherwise necessary lease. See Sheehan Declaration at ¶ 6.

      (iv)    The Debtors Have Not Had Sufficient Time To Formulate A Plan Of Reorganization

        10.     In the Objection, Orix Warren notes that the Debtors have no more than 90 leases to evaluate in these cases and that "[t]his relatively small number of leases weighs against the grant of an 18 month extension."  Objection at ¶ 8.  This argument is hollow because it

completely ignores the complexity of this multi-billion dollar restructuring.  The Second Circuit

has held that prior to making critical assumption or rejection decisions, a debtor must be

permitted "the leeway needed to appraise its financial situation and the potential value of its

assets in terms of the formulation of a plan."  Theatre Holding Corp. v. Mauro, 681 F.2d at 102,

104 (2d Cir. 1982); see also In re Teligent, Inc., 268 B.R. 723, 739 (Bankr. S.D.N.Y. 2001).

11.    At this point in the Debtors' chapter 11 cases, the Debtors' energies are

focused on negotiating with key constituencies to formulate a plan of reorganization which will

allow for the continued implementation of the Debtors' transformation plan.  These discussions

are likely to influence the Debtors' decisions regarding the assumption or rejection of their leases.

The Debtors need to focus on implementing the transformation plan, not making one-off

decisions about leases or facilities.  See Sheehan Declaration at ¶ 7.

12.    Many courts facing similar issues have declined to force a debtor to

prematurely assume or reject a lease or executory contract because the "interests of the creditors

collectively and the bankrupt estate as a whole will not yield easily to the convenience or

advantage of one creditor."  See Public Svc. Co. of New Hampshire v. New Hampshire Elec.

Coop., Inc. (In re Public Svc. Co. of New Hampshire ), 884 F.2d 11, 14-15 (1st Cir. 1989); see

also In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980) (denying motion to

compel assumption of lease and stating that "debtor should not be expected to jump too soon into

this complex matter"); see also Hiser v. Blue Cross of Greater Philadelphia (In re St. Mary

Hosp.), 89 B.R. 503, 513-14 (Bankr. E.D.Pa. 1988) ("the interests of the Debtor here in denying

a precipitous assumption or rejection appear to us much greater than the interests of HHS in

forcing a prompt resolution").  Forcing DAS LLC to assume or reject the Orix Lease prematurely

would simply benefit Orix Warren to the potential detriment of all other creditors.

7

13.    As the Second Circuit has cautioned, premature assumption of a lease should be avoided, if possible, because if the lease is subsequently breached when a debtor changes its business plan or its forecasted revenues, the lessor would have an administrative claim rather than a general unsecured claim that would be subject to the cap on lease rejection damages under section 502(b)(6) of the Bankruptcy Code.  See In re Klein Sleep Products, Inc., 78 F.2d 18, 29 (2d Cir. 1996).  Such caution is warranted here.  The Orix Lease, by its terms, expires December 31, 2008 and requires DAS LLC to pay approximately $158,000 in monthly obligations.  See Sheehan Declaration at ¶ 8.  Forcing DAS LLC to assume or reject the Orix Lease when the Debtors have not yet determined their plans with respect to that lease could trigger additional administrative claims that would otherwise be a general unsecured claim limited by section 502(b)(6) of the Bankruptcy Code in the event of a rejection of that lease.  Accordingly, DAS LLC cannot, and should not, be required to make preemptory lease assumption and rejection decisions at this time.

(v)    The Complexity And Size Of The Debtors' Chapter 11 Filings Warrant A Considerable Period In Which To Evaluate The Consequences Associated With Assumption Or Rejection Of All Leases

14.    The complexity and size of these cases also warrant denial of the Objection at this time.  The complexity of the issues that the Debtors face in implementing their transformation plan and negotiating with their major stakeholders is magnified by the size of these cases, currently among the largest pending before any bankruptcy court in the United States.  In summary:

(a)    Delphi and 41 affiliated entities sought chapter 11 relief.

(b)    As of the commencement of these chapter 11 cases, the Debtors were the largest manufacturing and technology company ever to seek chapter 11 relief and employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees work in approximately 44 manufacturing sites, 13 technical centers, and

8

Delphi's Troy, Michigan worldwide headquarters. The company's foreign entities employed more than 134,000 people supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

(c)    The Debtors' global 2005 revenues were approximately $26.9 billion, and global assets as of December 31, 2005 were approximately $17 billion.

(d)    The Debtors supply products to nearly every major global automotive original equipment manufacturer, with 2005 sales to the Debtors' former parent, General Motors Corporation, equaling approximately $12.9 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

(e)    Approximately 16,000 proofs of claim have been timely filed against the Debtors in these cases and there are more than 5,100 scheduled liabilities for which no proof of claim was filed. Collectively, these proofs of claim and scheduled liabilities assert liquidated claims of more than $37 billion against the Debtors. In addition, more than 6,000 proofs of claim assert additional unliquidated claims against the Debtors.

15.    Courts have recognized that complex cases require a more careful and extended consideration by the debtor of whether to assume or reject leases. See In re Burger Boys, Inc., 94 F.3d at 761.

### Conclusion

16.    The Debtors have shown that cause exists for a extending the deadline to assume or reject the Orix Lease to June 7, 2007. The Objection should therefore be overruled and the Debtors' deadline to decide whether to assume or reject the Orix Lease should be consistent with the current deadline for the Debtors' other unexpired leases of nonresidential real property.

### Notice

17.    Notice of this Reply has been provided in accordance with the Amended Eighth Supplemental Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m),

9

9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case

Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in

Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on October 26,

2006 (Docket No. 5418).  In light of the nature of the relief requested, the Debtors submit that no

other or further notice is necessary.

<u>Memorandum Of Law</u>

18.    Because the legal points and authorities upon which this Reply relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the court enter an order (a) overruling the Objection and extending the Debtors' deadline to decide whether to assume or reject the Orix Lease to a date consistent with the current deadline for the Debtors' other unexpired leases of nonresidential real property and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
        November 20, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Albert L. Hogan III (AH 8807)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

11

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                 :
        In re                        :       Chapter 11
                                 :
DELPHI CORPORATION, <u>et al.</u>,    :       Case No. 05-44481 (RDD)
                                 :
             Debtors.      :       (Jointly Administered)
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


ORDER PURSUANT TO 11 U.S.C. § 365(d)(4) EXTENDING
DEADLINE TO ASSUME OR REJECT UNEXPIRED
<u>LEASES OF NONRESIDENTIAL REAL PROPERTY</u>

("365(d)(4) DEADLINE EXTENSION ORDER")

        Upon the motion, dated November 9, 2005 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §

365(d)(4) extending the deadline for the Debtors to assume or reject unexpired leases of

nonresidential real property; and upon the record of the hearing held on the Motion; and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest; and this Court having found

that the only objection filed against the Debtors' Motion was the Objection of ORIX Warren,

LLC to Motion for Order Under 11 U.S.C. § 365(d)(4) Extending Deadline to Assume or Reject

Leases of Nonresidential Real Property (Docket No. 1123) which objection was subsequently

resolved pursuant to the terms of this Order; and this Court having further found that no other

objections or responses have been timely or properly filed; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is necessary; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The date by which the Debtors must assume or reject any and all

unexpired leases of nonresidential real property (the "Real Property Leases"), except for the Real

Property Lease set forth in paragraph 3 below, is extended to and including June 7, 2007.

3.      The date by which the Debtors must assume or reject the lease between

Orix Warren, LLC ("Orix") and Delphi Automotive Systems, LLC of non-residential real

property located at 4551 Research Parkway, Warren, Ohio (the "Orix Lease") is hereby extended

to and including December 7, 2006 (the "Initial Extension").  The Initial Extension shall be

further extended for an additional six months to June 7, 2007, without further notice or a hearing

(the "Additional Extension"), unless Orix files and serves a notice of objection to the Additional

Extension on or prior to October 1, 2006, in which case a hearing with respect to the Orix Lease

and the granting of the Additional Extension shall be held at the next omnibus hearing to occur at

least 30 days following the October 1, 2006 deadline.  In the event of such a hearing, the Debtors

shall bear the burden of proof regarding "cause" for such extension, as such term is contemplated

under 11 U.S.C. § 365(d)(4) and the Debtors shall file their related pleading at least 10 calendar

days prior to the applicable omnibus hearing.  Notwithstanding the aforementioned, all filings,

service and deadlines related thereto shall be determined pursuant to the Order Under 11 U.S.C.

§§ 102(1) and 105 and Fed.R.Bankr.P. 2002(m), 9006, 9007, and 9014 Establishing (I) Omnibus

Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, and (III)

Scheduling an Initial Case Conference in Accordance with Local Bankr.R. 1007-2(e) ("Case

2

Management Order") (Docket No. 245).  To the extent such hearing occurs after the expiration of the Initial Extension, the deadline to assume or reject the Orix Lease shall be automatically extended until the later of (a) the date set forth in any subsequent order or (b) ten business days after the Court rules on Orix's objection.

4.      The entry of this Order shall be without prejudice to (a) the Debtors' right to seek from this Court further extensions of the assumption and rejection deadline with respect to any or all of their Real Property Leases and (b) the right of any party to any Real Property Lease to seek from this Court a shortening of the deadline with respect to any or all of its Real Property Leases for cause shown.

5.      Notwithstanding anything contained in this Order, provided that the Debtors file a subsequent motion to extend the section 365(d)(4) deadline in time to be heard prior to the expiration of the applicable section 365(d)(4) deadline for a particular lease, the deadline to assume or reject such lease shall be automatically extended until the later of (a) the date set forth in any subsequent order or (b) three business days after the Court rules on such motion.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

7.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:  New York, New York
          November 29, 2005

                              /s/Robert D. Drain  _____
                              UNITED STATES BANKRUPTCY JUDGE

3

**<u>Exhibit B</u>**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


Debtor.


- - - - - - - - - - - - - - - - - - - -x


U.S. Bankruptcy Court

One Bowling Green

New York, New York


April 7, 2006

10:16 a.m.


B E F O R E:


HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1          DELPHI CORPORATION                    80

2          hurt lies otherwise.

3                    THE COURT:  Okay.  All right.  I

4          have in front of me a motion by one of

5          Delphi Automotive Systems, LLC's

6          landlords, Cherokee North Kansas City,

7          LLC, to shorten the time under Section

8          365 of the Bankruptcy Code for the debtor

9          to determine whether to assume or reject

10         its lease.

11                   As the Second Circuit laid out in

12         In re Burger Boys, Inc., 94 F.3d 755,

13    761 (2d Cir. 1996), in

14         connection with requests to determine

15         "cause" under Section 365, although there,

16         as an aside, the Court was determining

17         cause for an extension as opposed to

18         cause for termination of the time to

19         assume or reject,

20         the Second Circuit set forth

21         various factors that the bankruptcy court

22         should consider when determining whether

23         cause exists or not, although cautioning

24         that those factors should not be applied

25         in a mechanical or formulaic manner.

1          DELPHI CORPORATION                    81

2                    Cherokee has the burden here to show cause

3          to require a shortening of the time to assume or

4          reject the lease because that is what my order,

5          previously extending the assume or reject period,

6          Provided.  That order was dated November 29, 2005.

7                    Now, I don't agree with the debtor

8          that Cherokee is estopped from seeking to

9          shorten the assume or reject period

10         provided in that order, because the order

11         did recognize the right of a landlord to

12         come in and seek a shorter period for

13         cause.  But obviously, under the order,

14         Cherokee does have the burden.

15                   In going through the factors made

16         out by Burger Boys and subsequent cases,

17         I conclude that it has not carried that

18         burden.  The first factor is whether the

19         debtor is paying for its use of the

20         property.  And it is undisputed that the

21         debtor is paying for use here.

22                   I should note that Burger Boys

23         reversed the lower courts for directing

24         the end of the assume-or-reject period

25         simply because the debtor was not paying

1          DELPHI CORPORATION                    82

2          and said, that even if the debtor was not

3          paying, there might be other reasons to

4          continue the assume-or-reject period.

5               But here, of course, the debtor is

6          paying and that's a strong factor for

7          continuing the debtor's ability to decide

8          whether to assume or reject to a later

9          date.

10               Secondly, I need to inquire whether

11          the debtor's continued occupation of the

12          premises damages the landlord beyond

13          compensation available under the

14          Bankruptcy Code.  As far as this record

15          provides, I believe that to the extent

16          there is any damage whatsoever that would

17          not be compensable under Section 502 of

18          the Bankruptcy Code or alternatively, if

19          for some reason the debtor stop paying

20          under section 507, it is negligible.

21               The debtor has pointed out that the

22          landlord did, in fact, successfully

23          refinance its loan, which it knew it

24          would have to do in the fall of 2005,

25          since the loan expired at the end of that

1        DELPHI CORPORATION                    83

2        year and that the finance charge was a

3        charge that would have been incurred in

4        any event and that the interest rate did

5        not change.

6            The only added burden on the

7        landlord, in connection with that

8        refinancing, was the requirement to put

9        up an additional amount of cash that

10       eventually will aggregate 200 thousand

11       dollars, which is being held at interest

12       as security for breach of the lease.

13       Because it's being held as interest, the

14       only real damage there, is the

15       difference between that interest rate and

16       the amount that Cherokee could earn over

17       and above that interest rate, separately.

18           Cherokee says it's also damaged

19       because it's not able to sell the

20       property, given the debtor's bankruptcy

21       case and the uncertainty over the lease.

22       I believe, however, this factor was not

23       contemplated when the Second Circuit laid

24       out the consideration of whether the

25       lessor would be damaged beyond the

```
1            DELPHI CORPORATION                    84

2       compensation available under the Bankruptcy Code.

3            The relationship between Cherokee

4       and the debtor is a landlord tenant

5       relationship.  In that relationship, the

6       debtor is not obligated to enhance the

7       landlord's ability to sell the property

8       and it's clearly recognized that merely

9       the fact of a debtor being a debtor under

10      the Bankruptcy Code is not a reason to

11      terminate a lease or to compel assumption

12      or rejection of it simply because that fact

13      would somehow make it harder for a landlord to

14      sell its property.  If that were the case, debtors'

15      time to assume or reject the lease would almost as a

16      matter of course be terminated.

17            Moreover, as the landlord points out, given

18      Delphi's current statement that it intends to sell

19      its cockpit manufacturig line, and consequently

20      that the likelihood that eventually the line will

21      be sold and consequently the facility in

22      Kansas City will go along with that sale,

23      Cherokee's ability to sell the premises

24      premises should significantly improve,

25      provides better clarification for
```

```
 1           DELPHI CORPORATION                85

 2      prospective buyers.

 3           In addition, Exhibit 10 suggests

 4      that, ultimately, such a sale is

 5      achievable for a price to the landlord that is not

 6      materially worse than what it could be

 7      sold at today, after you back out the

 8      amount of rent that the debtor will be

 9      paying until its decision to assume or

10      reject.

11           The lease is not the debtor's

12      primary asset, but it's a significant

13      facility and it is a piece in the very

14      complicated puzzle that the debtor is

15      still putting together, with the help of

16      its various constituencies including the

17      creditors' committee, and I believe that

18      it has not had sufficient time to

19      formulate a plan, given the complexity of

20      that puzzle.

21           So, in evaluating those last two

22      factors laid out by Burger Boys, it again

23      appears to me that those factors also

24      argue for not shortening the time to

25      assume or reject.
```

```
 1            DELPHI CORPORATION                    86
 2                 I should note, finally, that the
 3            Second Circuit cautioned in the Klein
 4            Sleep, 78 F.3d 18, 29 (2d Cir. 1996), that
 5            assumption of a lease should be avoided,
 6            if possible, given the fact that if the lease
 7            is subsequently breached because a debtor
 8            changes its business plan or its
 9            forecasted revenues, upon which the
10            business plan was based proved to be less
11            than the forecast, the claim is an
12            administrative claim, a hundred cent
13            dollar claim as opposed to a lease
14            rejection claim.  Consequently, given the
15            uncertainty as to the ultimate sale and
16            the terms of the ultimate sale, including
17            the terms by which the lease might be
18            assumed, all of which will not become
19            completely clear, it appears on this
20            record, until the last quarter of 2007,
21            at my best estimate, it would appear to
22            me to be premature to force the debtor to
23            get into a negotiation regarding
24            assumption or rejection with the landlord
25            at this time.
```

```
 1          DELPHI CORPORATION                    87

 2              The prospect of a sale, I'd agree,

 3         is quite strong.  But that should be

 4         additional protection for the landlord,

 5         since that should lead, ultimately, to

 6         assumption of the lease and, if not full

 7         payment, because the lease may be

 8         renegotiated to some extent, at least a

 9         much better result than rejection.

10              But given the uncertainties here

11         and the fact that the debtor's paying

12         currently, the debtor should not be

13         forced to get into those negotiation and

14         decision making process at this time.

15              So, Mr. Butler, you can submit an

16         order denying the motion for the reasons

17         stated.

18              MR. BUTLER:  Thank you, Your Honor.

19         Your Honor, the next matter on the agenda

20         is matter number 10.  It's the O'Neil

21         lift stay motion.  And this was filed by

22         Mary O'Neil and Liam O'Neil at docket

23         number 2748.  We filed a response at

24         docket number 3051.  I understand there

25         was a reply filed last evening and this
```

```
1              DELPHI CORPORATION                    153

2                 C E R T I F I C A T I O N

3          I, Esther Accardi, hereby certify that

4     the foregoing is a true and correct

5     transcription, except where, as indicated, the

6     Court has modified its bench ruling, to the best

7     of my ability of the sound recorded proceedings

8     submitted for transcription in the matter of:

9     Delphi Corporation.

10

11         I further certify that I am not employed

12    by nor related to any party to this action.

13

14         In witness whereof, I hereby sign this

15    date:

16    April 11, 2006

17

18    _____

19    Esther Accardi

20

21

22

23

24

25
```