**Hearing Date and Time:  November 30, 2006 at 10:00 a.m.**
                                                        **Response Date and Time:  November 24, 2006 at 4:00 p.m.**

KAYE SCHOLER LLP
Richard G. Smolev (RS 2222)
425 Park Avenue
New York, New York  10022
(212) 836-8000 (telephone)
(212) 836-8689 (facsimile)

*Counsel for InPlay Technologies, Inc.,*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No.:  05-44481 (RDD) |
|  | : |  |
|               Debtors. | : | Jointly Administered |
|  | : |  |

**OBJECTION OF INPLAY TECHNOLOGIES, INC. TO THE CLAIMS
OBJECTION AND ESTIMATION PROCEDURES MOTION [DOCKET NO. 5453]**

        InPlay Technologies, Inc. (f/k/a DuraSwitch Technologies, Inc.) ("InPlay"), by its attorney, Richard G. Smolev of Kaye Scholer LLP respectfully objects to the Claims Objection and Estimation Procedures Motion and states as follows:

        1.      InPlay markets and licenses proprietary emerging technologies for a variety of commercial and industrial applications.  In April, 2000, InPlay and Delphi Automotive Systems LLC ("Delphi") entered into a License Agreement (the "License Agreement") under which InPlay granted Delphi an exclusive license for certain patented technology in the original equipment, service parts and aftermarket passenger automobile, light truck and heavy truck industries and a nonexclusive license in other fields.  The License Agreement required Delphi to

make $12 million in minimum royalty payments through 2007.  Delphi made $3 million in payments and then defaulted when its financial condition deteriorated.  InPlay timely filed claim number 2558 in the amount of $9 million, representing the balance of the minimum royalty payments due from Delphi under the License Agreement.

      2.      Delphi rejected the License Agreement shortly after its bankruptcy filing (Docket No. 762).  In moving to reject the License Agreement (Docket No. 329), Delphi made the following admission in paragraph 17 regarding its liability under the License Agreement: "Indeed, the DuraSwitch License Agreement requires DAS to pay at least $12 million in minimum royalty payments over the first seven years of the term of the license through June 30, 2007."

      3.      As detailed in its Response to the Third Omnibus Claims Objection (the "Response"), a copy of which is incorporated herein by reference, at about the same time that it entered into the License Agreement, Delphi made an investment in InPlay and now owns 1,651,846 shares of InPlay common stock, representing approximately 15% of InPlay's common stock.  InPlay is listed on the NASDAQ under the symbol NPLA.

      4.      Although it admitted its liability for the minimum royalty payments in Docket No. 329 (although not for a specific number), Delphi objected to claim number 2558 as an Unsubstantiated Claim in its Third Omnibus Claims Objection (Docket No. 5452).  The basis for the objection was that the amount of minimum royalties due under the License Agreement set forth in claim 2558 could not be reconciled to the Debtors' books and records.

      5.      Although, as Delphi acknowledged, the License Agreement contained confidentiality provisions that prohibited Delphi from attaching a copy to its rejection motion,

31360432.DOC          2

InPlay satisfied those conditions by providing a copy of all of its proposed filings in this Court to Delphi and it is free to spread the License Agreement of record.  As the Court can see from Section 3.2 of the License Agreement (attached as Exhibit A to the Affidavit of Robert J. Brilon (the "Brilon Affidavit") that is incorporated into this Objection by reference), the total amount of minimum royalties due under the License Agreement is $12 million.  The Brilon Affidavit details that Delphi paid $3 million of that amount, leaving $9 million unpaid.  Unless Delphi can show that it made other minimum royalty payments that InPlay failed to credit, claim 2558 should be allowed in full rather than channeled into protracted procedures.  A draft Order allowing claim 2558 is attached as Exhibit A for the Court's convenience.

    6.    InPlay thus objects to the Claims Objection and Estimation Procedures Motion because it does not contain a mechanism for claimants to be removed from the process and to allow claims (such as claim 2558) on which there is no dispute as to liability to be resolved on an expedited basis.

    7.    In the alternative, InPlay objects to the Claims Objection and Estimation Procedures Motion because it does not contain a mechanism that allows claimants with overly complex claims to be afforded a full and complete opportunity to present all facts supporting their claims to the Court.

    8.    Although it may appear to be inconsistent to say that claim 2558 could fall into either the category of simple or overly complex claims, that is precisely the position that it finds itself in, because InPlay does not know whether Delphi will object to claim 2558 on grounds other than those already advanced.

9. It is not InPlay's place to speculate what bases Delphi might assert in opposition to claim 2558. When it moved to reject the License Agreement, (despite the way that it holds the technology out to the world on its web site, as detailed in Group Exhibit B to the Brilon Affidavit), Delphi said that the licensed technology "has proven to be of little value in connection with automotive applications without significant further investment." If Delphi files a substantive objection that raises issues that require the Court to take testimony regarding the value of the licensed technology, InPlay respectfully submits that there is no way that a proper record can be made under the truncated discovery and hearing rights proposed in the Claims Objection and Estimation Procedures Motion. Claim 2558 should not be channeled into the contemplated procedures until Delphi discloses the bases upon which it will object to the Claim so that the Court can determine whether relief from the claim resolution protocols is required to afford all parties an opportunity to present a complete record after a full and complete discovery and hearing process.

10. As Delphi notes in its motion, this is not the first bankruptcy court that has been asked to approve global claims resolution procedures. Other courts overseeing large and complex cases that enter comparable claims resolution protocols, however, generally include safety valves that allow claimants who hold overly complex claims to opt out of the global procedures so that they may have an opportunity to fully and adequately present all facts and law that support their claim. By way of illustration, the order approving the Enron claim resolution protocols (Enron Corp, Case number 01-16034 in the United States Bankruptcy Court for the Southern District of New York, Docket No. 16353), allowed holders of what was defined as Overly Complex Claims to meet and confer with the debtor to develop modified resolution procedures and then to seek exemption from the court if no agreement could be reached. A copy

of the order entered as Docket No. 16353 in the Enron bankruptcy is attached hereto as Exhibit B.  InPlay respectfully requests that the Claims Objection and Estimation Procedures Motion be denied unless a comparable opt-out provision is included in the order approving any claim resolution protocols.

11. InPlay recognizes that the debtors need procedures to resolve their large inventory of claims in an efficient fashion.  At the same time, InPlay respectfully asks that the Court recognize that those holders of claims in liquidated amounts for which the debtors already have admitted liability should not be swept up into those procedures.  Alternatively, if Delphi is allowed to challenge claim 2558 on grounds that require anything other than a calculation of the amount of unpaid minimum royalties that are due under the License Agreement, InPlay respectfully suggests that the order approving any such procedures must include an opt-out provision comparable to that allowed in other large cases for claim 2558.

CONCLUSION

WHEREFORE, For all of the foregoing reasons, InPlay Technologies, Inc. requests either than claim 2558 be removed from inclusion in the proposed claim resolution protocols and allowed immediately by the entry of the order attached hereto as Exhibit A or that approval of the debtors' motion be conditioned on the inclusion of opt-out provisions that are fair and designed to assure that InPlay has a full and complete opportunity to properly present all facts and law supporting claim 2558 to this Court.

Dated: New York, New York
November 21, 2006

KAYE SCHOLER LLP

 /s/ Richard G. Smolev
Richard G. Smolev (RS 2222)
A Member of the Firm
425 Park Avenue
New York, New York  10022
(212) 836-8000 (telephone)
(212) 836-8689 (facsimile)
*Attorney for InPlay Technologies, Inc.*