Hearing Date and Time:
November 30, 2006 at 10:00 a.m.
(Prevailing Eastern Time)
Objection Deadline: November 24, 2006

Alan E. Marder (AM-0114)
Jil Mazer-Marino (JM-6470)
ROSEN SLOME MARDER LLP
333 Earle Ovington Boulevard, Suite 901
Uniondale, New York 11553-3622
(516) 227-1600

Counsel for Kilroy Realty, L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| DELPHI CORPORATION, et al., | ) Case No. 05-44481(RDD) |
| | ) (Jointly Administered) |
| Debtors. | |

KILROY REALTY, L.P.'S OBJECTION TO THE DEBTORS' PROPOSED
PROCEDURES GOVERNING HEARINGS REGARDING DISALLOWANCE OR
ESTIMATION OF CLAIMS

Kilroy Realty, L.P. ("Kilroy") objects to the Debtors' proposed procedures governing hearings regarding disallowance or governance of claims for the following reasons:

Background

1.      Debtors Delphi Automotive Systems, LLC ("Delphi") and Packard Hughes Interconnect, a Delaware corporation ("Packard"), leased a 157,458 square foot building (the "Building"), located in Irvine, California, from Kilroy.

2. As set forth in detail in the proofs of claim filed by Kilroy and the affidavit of James P. Axtell, sworn to on November 20, 2006, and the exhibits annexed thereto, filed in response to the Debtors' "omnibus objection" to Kilroy's proofs of claim, Kilroy has a valid claim against Delphi and Packard (collectively, the "Debtors"), for approximately $2.1 million for, inter alia, rejection damages and as a result of the serious damage that the Debtors caused to the Building.

3. The procedures set forth in the Debtors' proposed "claim objection and estimation procedures order" (the "Proposed Order"), are unfair, one-sided, and would severely prejudice claimants' ability to prosecute their claims.

(i) The Claim Objection Procedures Are Unfair And Are Contrary To The Rules Governing The Resolution Of Claim Objections

4. Rule 3001 of the Bankruptcy Rules provides that a "proof of claim" is prima facie evidence of the validity of a claim. To overcome that presumption, a debtor must produce specific and detailed allegations that place the claim in dispute. See In re Lenz, 110 B.R. 523, 525 (D. Colo. 1990).

5. Kilroy has now, twice, submitted detailed evidence supporting its claim in its proofs of claim and the affidavit and exhibits submitted in response to the Debtors' third omnibus claim objection.

6. In contrast, the totality of the Debtors' objection to Kilroy's claim are the conclusory statements, in the Debtors' third omnibus objection, that Kilroy's claims are "unsubstantiated" and "assert liabilities or amounts that the Debtors have determined are not owing pursuant to the Debtors' books and records." Based on the Debtors' objection, Kilroy has no way of knowing what factual or legal aspects of Kilroy's claim are being objected to by the Debtors.

2

7.      Nevertheless, despite the lack of any meaningful information underlying the objection, the Proposed Order (¶10(d)(i)), would require Kilroy to submit a "Supplemental Response" within ten days after receiving notice of the date selected by the Debtors (in their sole discretion), to schedule a hearing on the Debtors' objection to Kilroy's claim.

8.      Critically, if approved, the Proposed Order would require claimants to submit their "Supplemental Response:" (i) before discovery, (ii) before mediation, (iii) before the Debtors submit their "Supplemental Reply" (which does not have to be served until twenty days before the claim objection hearing and which, for the first time, will presumably set forth the basis for the Debtors' claim objection), and (iv) before learning what issues and facts the Debtors dispute and the identity of the Debtors' proposed witnesses.

9.      In addition, the Proposed Order (¶10(d)(iii)) would limit the claimants' trial witnesses to individuals who submit affidavits as part of the claimants' "Supplemental Response" (even though, at the time it is required to submit the "Supplemental Response," the claimant will have no way of knowing what factual and legal issues are in dispute) and would not permit claimants to call additional or rebuttal witnesses after learning the factual and legal bases for the Debtors' objection to a claimant's claim.

10.     Indeed, according to the procedures set forth in the Proposed Order (¶10(d)(iii)), a claimant would not have the ability to rely on any witness at trial other than the two witnesses it relies on in its "Supplemental Response" and, if the Debtors raise an issue in their "Supplemental Reply" that cannot be addressed by the two

3

witnesses selected for the claimant's "Supplemental Response," claimant would not be able to rely on any additional witnesses to respond to the Debtors' assertions. Thus, for instance, if the Debtors allege in their "Supplemental Reply" that a representative of the claimant made an admission, the individual who allegedly made the admission would not be able to testify or submit an affidavit denying that the admission was made unless he previously submitted an affidavit as part of the claimant's "Supplemental Response." In addition, even those two witnesses would be permitted to respond only to facts learned in discovery and not to any assertions made by the Debtors' in their "Supplemental Reply." (Proposed Order, ¶10(d)(v))

11. Surely, a claimant should not have to identify its trial witnesses and submit its direct trial testimony until it learns what factual and legal matters are in dispute. A procedure which would provide otherwise (such as the one set forth in the Proposed Order) is manifestly unfair and would turn the claims objection process on its head. Claimants should not have to submit their "Supplemental Response" until a reasonable time (i.e. twenty days) after discovery and after the Debtors set forth the factual and legal bases for their objection.

12. While the procedures set forth in the Proposed Order may, on the surface, appear even-handed because the Debtors are also limited, at trial, to the witnesses identified in their "Supplemental Reply" (¶10(e)(iii)), a closer analysis reveals the inherent unfairness of this procedure. In contrast to claimants, who have to submit their "Supplemental Response" without knowing the bases for the Debtors' defenses, Debtors will have received three detailed explanations of the claimants' claims, (i.e. in

4

the proof of claim, response to the Debtors' claim objection and in the "Supplemental Response"), before the Debtors file their "Supplemental Reply."

13. Moreover, the Debtors' proposal to limit the claimants to two affidavit witnesses is improper. Unless the Court is prepared to suspend the hearsay rules for these cases, many claimants may need more than two witnesses to substantiate their claims. For instance, Kilroy may need a witness to testify about what amounts are due under the Lease and other witnesses to describe the damages caused to the Building and the costs to repair the damage. Without knowing what issues are in dispute, it is impossible to commit to how many witnesses and how much testimony will be required at the time of the submission of the "Supplemental Response."

14. Furthermore, the Proposed Order would not permit a claimant to call a third party witness who is not under claimant's control or to call representatives of the Debtors as witnesses because, according to the procedures set forth in the Proposed Order, the claimant can only call witnesses for whom it has submitted affidavits. This is, obviously, improper.

(ii) <u>The Proposed Deadlines Are Unfair</u>

15. Although the timing of the procedures set forth in the Proposed Order appear to be even-handed on the surface, this is just an illusion because, on the one hand, while the Debtors have the unfettered right to adjourn any hearing on five days' notice (Proposed Order ¶10(a)(i)(ii)), claimants are given no such right.

16. Thus, the deadlines proposed by the Proposed Order are one-sided and prejudicial to claimants.

5

17. The two most glaring examples of unfairness are the trial deadlines and discovery deadlines.

18. As set forth above, pursuant to the Proposed Order, the claimants would have to submit their "Supplemental Response" -- which, according to the procedures, constitutes the claimant's direct trial testimony -- within ten days of receiving a notice from the Debtors and before they learn the factual or legal basis for the Debtors' objection.

19. As set forth above, the claimants should not have to submit their "Supplemental Response" and commit to their trial testimony until a reasonable time (i.e. 20 days) after discovery and after they receive a statement by the Debtors setting forth the factual and legal bases for their objection to the claim (i.e. more than the conclusory statement that a claimant's claim is "unsubstantiated").

20. On the other hand, the deadline for the Debtors' "Supplemental Reply" is open-ended. While the procedures indicate that it must be served "no later than twenty days prior to the commencement of" the Claims Objection Hearing, because the Debtors' proposed procedures would permit the Debtors an unlimited right to adjourn the hearing in their "sole" discretion (¶10(a)(i)(ii)), the Debtors can serve their "Supplemental Reply" whenever they wish to do so.

21. The discovery procedures (Proposed Order, ¶10(g)), are equally unfair. According to the Proposed Order, the mediation is to take place fifteen days before the Claims Hearing Date (Proposed Order, ¶10(f)) and no party is required to produce any discovery until five days after the mediation (¶10(g)) or ten days before trial. (The parties are only given five days to respond to discovery requests and, then, are

6

required to take all depositions within five days of the receipt of discovery responses, and then be ready for trial five days later). Indeed, pursuant to the Proposed Order, claimants would not even be able to request discovery until twenty days before the Claims Objection Hearing because, until they receive the Debtors' "Supplemental Reply," they will not know what issues are in dispute and what discovery is needed.

22. Twenty days is simply not enough time to conduct discovery.

23. At least sixty days is appropriate for discovery and discovery should not commence until after the mediation and, in any event, not until after the Debtors serve their "Supplemental Reply" or some other statement setting forth the factual and legal bases for their claim objection.

(iii) <u>The Meet And Confer Procedures Are Unfair As To Time, Place And Remedy</u>

24. According to the procedures set forth in the Proposed Order (¶10(c)(ii)), claimants (by both counsel and a person with settlement authority), would be required to "meet and confer" with the Debtors on a mere five-days' notice in Troy, Michigan. The consequence of failing to do so would be the dismissal of the claimant's claim. In contrast, there is no remedy proposed for the Debtors' failure to "meet and confer" at the designated time and place even though the Debtors control when the notice triggering the duty to "meet and confer" is issued and when the five-day time period commences.

25. There is no requirement in the Bankruptcy Rules to "meet and confer" to attempt to settle a case and, certainly, no duty to "meet and confer," in person, on five-days' notice, at a location thousands of miles away from the location of the

7

bankruptcy court hearing the Debtors' cases and the place where all of the events giving rise to the claimant's claim took place.

26.   While Kilroy has no objection to meeting and conferring with the Debtors to try to settle this matter and, in fact, welcomes the opportunity, the parties should be required to "meet and confer" at a mutually convenient time and place and in a mutually convenient manner.

27.   There is nothing "mutual" or "convenient" about the Debtors' proposed "meet and confer" procedures.

28.   First, there is no reason for the "meet and confer" to take place in Troy, Michigan.

29.   Kilroy's claim relates to the Debtors' breaches of a lease to use real property in Irvine, California and these bankruptcy cases are pending in New York. There is no valid justification for requiring Kilroy's officers (who all reside in California) and Kilroy's attorneys (who are located in New York), to travel to Michigan, on five days' notice, to "meet and confer." The "meet and confer" should take place at a mutually convenient place. If the parties cannot agree on a mutually convenient place, the "meet and confer" should take place telephonically. If the Court determines that the "meet and confer" must be in person, it should take place in New York (the location of these proceedings) or at the location of the parties' dispute (in Kilroy's case, California).

30.   Second, it is unreasonable to expect claimants to "meet and confer" on such short notice given the necessity of making travel arrangements, etc. Parties should be required to mutually agree to dates and times for the "meet and confer" within a reasonable amount of time, i.e. twenty days.

8

31.     <u>Third</u>, the remedy (Proposed Order ¶10(c)(iv)) for failing to meet and confer at the place and time designated by the Debtors is too harsh and one-sided. The consequence of a claimant failing to "meet and confer" should not be the expungment and disallowance of a claim, especially if the Debtors' request that these meetings take place on five days' notice in Michigan is approved by the Court. Moreover, if such a harsh remedy for a claimant's failure to "meet and confer" is approved, a similar remedy should apply to the Debtors for failing to "meet and confer," <u>i.e.</u> the dismissal of the Debtors' objection to the claimant's claim.

(iv)    <u>The Mediation Procedures are Unfair As to Place, Selection of Mediator and Remedy</u>

32.     According to the Proposed Order (¶10(f)), a mandatory mediation will be conducted by a mediator chosen by the Debtors, in their sole discretion, and take place in Troy, Michigan. Again, Kilroy has no objection to mediation. However, the mediation procedures should be fair to all parties.

33.     <u>First</u>, like the "meet and confer," there is no reason that Kilroy should be required to mediate in Michigan. The mediation should take place in New York or California, the location of these proceedings or the location of the parties' dispute.

34.     <u>Second</u>, there is no reason why the Debtors should, in their sole discretion, select the mediator for Kilroy's dispute. The rules in this District, as set forth in this Court's Amended Order No. M-143 (the "Mediation Order"), require that both parties have input on the selection of a mediator.

35.     <u>Third</u>, again, the remedy for failing to mediate is harsh and one-sided. If the failure of a claimant to participate in mediation results in the expungement

and disallowance of its claim, the failure of the Debtors to participate in mediation should similarly result in the dismissal of the Debtors' objection to the claimant's claim.

(v) <u>The Debtors Should Not Be Permitted To Adjourn Hearings In Their Sole Discretion</u>

36. The Debtors' unfettered right to adjourn hearings (Proposed Order, (¶10(a)(i) and (ii)) in their sole discretion is unfair.

37. To be fair, the procedures approved by this Court should be even-handed. Either both parties, or neither party, should have the right to adjourn hearings.

38. It is submitted that the procedures approved by this Court should permit either party, on five days' notice to the other party, to request that the Court adjourn a hearing. Only the Court should be allowed to adjourn hearings.

39. Otherwise, the extremely rigorous deadlines contained in the Proposed Order can and will and be used as a club by the Debtors to force claimants to submit to their demands without any equal pressure on the Debtors.

<u>Conclusion</u>

40. For the foregoing reasons, it is submitted that the Proposed Order is improper and should not be approved by the Court.

Dated: November 21, 2006
      Uniondale, New York

    ROSEN SLOME MARDER LLP

    By: /s/ Alan E. Marder
        Alan E. Marder (AM-0114)
        Jil Mazer-Marino (JM-6470)

    333 Earle Ovington Boulevard,
    Suite 901
    Uniondale, New York 11553
    (516) 227-1600
    *Attorneys for Kilroy Realty, L.P.*

G:\Kilroy\Delphi\lit\Procedure Objection v.2.doc