# EXHIBIT E – Part 2

The Respondents reserve, and this Settlement Agreement is without prejudice to, potential claims against the United States for intentional or willful torts committed by any employee of the United States while acting within the scope of their office or employment, to the extent such claims are otherwise allowed by any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA. Respondents' reservation does not include any claim based on U.S. EPA's selection of response actions, or U.S. EPA's oversight or approval of the Work.

57. Nothing in this Agreement shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXII. OTHER CLAIMS

58. By issuance of this Settlement Agreement, the United States and U.S. EPA assume no liability for injuries or damages to persons or property resulting from any acts or omissions of Respondents. The United States or U.S. EPA shall not be deemed a party to any contract entered into by Respondents or its directors, officers, employees, agents, successors, representatives, assigns, contractors, or consultants in carrying out actions pursuant to this Settlement Agreement.

59. Except as expressly provided in Section XIX (Covenant Not to Sue by U.S. EPA), nothing in this Settlement Agreement constitutes a satisfaction of or release from any claim or cause of action against Respondents or any person not a party to this Settlement Agreement, for any liability such person may have under CERCLA, other statutes, or common law, including but not limited to any claims of the United States for costs, damages and interest under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607.

60. No action or decision by U.S. EPA pursuant to this Settlement Agreement shall give rise to any right to judicial review, except as set forth in Section 113(h) of CERCLA, 42 U.S.C. § 9613(h).

## XXIII. CONTRIBUTION

61.a. The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Respondents are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Settlement Agreement. The "matters addressed" in this Settlement Agreement are the Work and Future Response Costs.

b. The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9113(f)(3)(B), pursuant to which the Respondents have, as of the Effective Date, resolved their liability to the United States

21

for the Work and Future Response Costs.

c. Nothing in this Settlement Agreement precludes the United States or Respondents from asserting any claims, causes of action, or demands for indemnification, contribution, or cost recovery against any person not a party to this Settlement Agreement. Nothing herein diminishes the right of the United States, pursuant to Section 113(f)(2) and (3), 42 U.S.C. § 9613(f)(2) and (3), to pursue any such persons to obtain additional response costs or response action, and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

62. The Parties agree that Respondents are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Settlement Agreement. The "matters addressed" in this Settlement Agreement are the Work performed pursuant to this Settlement Agreement and Future Response Costs. Except as expressly provided herein, nothing in this Settlement Agreement precludes the United States or Respondents from asserting any claims, causes of action, or demands against any persons not parties to this Settlement Agreement for indemnification, contribution, or cost recovery.

## XXIV. INDEMNIFICATION

63. Respondents shall indemnify, save and hold harmless the United States, its officials, agents, contractors, subcontractors, employees and representatives from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Respondents, its officers, directors, employees, agents, contractors, or subcontractors, in carrying out the Work pursuant to this Settlement Agreement. In addition, Respondents agree to pay the United States all costs incurred by the United States, including but not limited to attorneys fees and other expenses of litigation and settlement, arising from or on account of claims made against the United States based on negligent or other wrongful acts or omissions of Respondents, its officers, directors, employees, agents, contractors, subcontractors and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Settlement Agreement. The United States shall not be held out as a party to any contract entered into by or on behalf of Respondents in carrying out activities pursuant to this Settlement Agreement. Neither Respondents nor any such contractor shall be considered an agent of the United States.

64. The United States shall give Respondents notice of any claim for which the United States plans to seek indemnification pursuant to this Section and shall consult with Respondents prior to settling such claim.

65. Respondents waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Respondents and any person for performance of Work. In addition, Respondents shall indemnify and hold harmless the

United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Respondents and any person for performance of Work.

## XXV. INSURANCE

66. At least 10 days prior to commencing any On-Site Work under this Settlement Agreement, Respondents shall secure, and shall maintain for the duration of this Settlement Agreement, comprehensive general liability insurance and automobile insurance with limits of one million dollars, combined single limit, naming the United States as an additional insured. Within the same period, Respondents shall provide U.S. EPA with certificates of such insurance and a copy of each insurance policy. Respondents shall submit such certificates and copies of policies each year on the anniversary of the Effective Date. In addition, for the duration of the Settlement Agreement, Respondents shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Respondents in furtherance of this Settlement Agreement. If Respondents demonstrate by evidence satisfactory to U.S. EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering some or all of the same risks but in an equal or lesser amount, then Respondents need provide only that portion of the insurance described above which is not maintained by such contractor or subcontractor.

## XXVI. FINANCIAL ASSURANCE

67. Within 30 days of the Effective Date, Respondents shall establish and maintain financial security in the amount of $1,000,000 in one or more of the following forms:

    a. a surety bond guaranteeing performance of the Work;

    b. one or more irrevocable letters of credit equaling the total estimated cost of the Work;

    c. a trust fund;

    d. a guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Respondents; or

    e. a demonstration that one or more of the Respondents satisfies the requirements of 40 C.F.R. Part 264.143(f).

68. If Respondents seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Subparagraph 67.a., above, Respondents shall demonstrate

23

that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Respondents seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Subparagraph 67.d. or e., they shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that U.S. EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Respondents shall, within 30 days of receipt of notice of U.S. EPA's determination, obtain and present to U.S. EPA for approval one of the other forms of financial assurance listed in Paragraph 67. Respondents' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Settlement Agreement.

69. If, after the Effective Date, Respondents can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 67 of this Section, Respondents may, on any anniversary date of the Effective Date, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining Work to be performed. Respondents shall submit a proposal for such reduction to U.S. EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by U.S. EPA. In the event of a dispute, Respondents may reduce the amount of the security in accordance with the written decision resolving the dispute.

70. Respondents may change the form of financial assurance provided under this Section at any time, upon notice to and approval by U.S. EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Respondents may change the form of the financial assurance only in accordance with the written decision resolving the dispute.

## XXVII. SEVERABILITY

71. If a court issues an order that invalidates any provision of this Settlement Agreement or finds that Respondents have sufficient cause not to comply with one or more provisions of this Settlement Agreement, Respondents shall remain bound to comply with all provisions of this Settlement Agreement not invalidated or determined to be subject to a sufficient cause of defense by the court's order.

## XXVIII. EFFECTIVE DATE AND TERMINATION

72. This Settlement Agreement shall be effective 5 business days after the Settlement Agreement is signed by the Director, Superfund Division, U.S. EPA, Region 5. If, pursuant to CERCLA, Remedial Investigation/Feasibility Study (RI/FS) or Remedial Design/Remedial Action (RD/RA) activities begin at the Landfill which supercede the activities to be performed under this Settlement Agreement, this Settlement Agreement shall terminate upon issuance of written notice by U.S. EPA.

## XXIX. MODIFICATIONS

73. The RPM may make modifications to any schedule established under this Settlement Agreement in writing or by oral direction, provided that Respondents' deadlines shall not be accelerated without Respondents' prior written consent. Any oral modification will be memorialized in writing by U.S. EPA promptly, but shall have as its effective date the date of the RPM's oral direction. Any other requirements of this Settlement Agreement may be modified in writing by mutual agreement of the parties. Wherever in this Settlement Agreement the approval or consent of the United States is required, such approval or consent shall not unreasonably be withheld.

74. If Respondents seek permission to deviate from any approved agreement or schedule, Respondents' Project Coordinator shall submit a written request to U.S. EPA for approval outlining the proposed modification and its basis. Respondents may not proceed with the requested deviation until receiving oral or written approval from the RPM pursuant to Paragraph 73.

75. No informal advice, guidance, suggestion, or comment by the RPM or other U.S. EPA representatives regarding reports, plans, specifications, schedules, or any other writing submitted by Respondents shall relieve Respondents of its obligation to obtain any formal approval required by this Settlement Agreement, or to comply with all requirements of this Settlement Agreement, unless it is formally modified.

## XXX. NOTICE OF COMPLETION OF WORK

76. At any time after the submission of the Final Report provided pursuant to Paragraph 21, Respondents may submit a written request to U.S. EPA (with a copy to Ohio EPA) requesting a Notice of Completion of Work. When U.S. EPA determines (in consultation with the Ohio EPA), after U.S. EPA's review of the request for Notice of Completion of Work that all Work has been fully performed in accordance with this Settlement Agreement, U.S. EPA will provide written notice to Respondents. If U.S. EPA determines that any such Work has not been completed in accordance with this Settlement Agreement, U.S. EPA will notify Respondents and provide a list of the deficiencies. Respondents shall correct the deficiencies as directed by U.S. EPA and shall submit a modified request for Notice of Completion in accordance with the U.S. EPA notice. Failure by Respondents to correct any deficiencies in the Work as directed shall be a violation of this Settlement Agreement. The Notice of Completion of Work may except and may reserve rights to enforce the Settlement Agreement concerning continuing obligations under this Settlement Agreement such as record retention and access to property and information.

25

**IN THE MATTER OF:**

**THE LANDFILL OPERABLE UNIT AT
THE TREMONT CITY LANDFILL SITE,
CLARK COUNTY, OHIO**

## SIGNATORIES

Each undersigned representative of a signatory to this Administrative Settlement Agreement and Order on Consent certifies that he or she is fully authorized to enter into the terms and conditions of this Administrative Settlement Agreement and Order on Consent and to bind such signatory, its directors, officers, employees, agents, successors and assigns, to this document.

By: _____          Agreed this ___ day of _____, 2006.

For: _____


By: _____          Agreed this ___ day of _____, 2006.

For: _____


By: _____          Agreed this ___ day of _____, 2006.

For: _____


By: _____          Agreed this ___ day of _____, 2006.

For: _____


By: _____          Agreed this ___ day of _____, 2006.

For: _____

**IN THE MATTER OF:**

**THE LANDFILL OPERABLE UNIT AT
THE TREMONT CITY LANDFILL SITE,
CLARK COUNTY, OHIO**

### SIGNATORIES (Continued)

By: _____    Agreed this ___ day of _____, 2006.

For: _____

By: _____    Agreed this ___ day of _____, 2006.

For: _____

By: _____    Agreed this ___ day of _____, 2006.

For: _____

By: _____    Agreed this ___ day of _____, 2006.

For: _____

By: _____    Agreed this ___ day of _____, 2006.

For: _____

By: _____    Agreed this ___ day of _____, 2006.

For: _____

27

IN THE MATTER OF:

**THE LANDFILL OPERABLE UNIT AT THE TREMONT CITY LANDFILL SITE, CLARK COUNTY, OHIO**

IT IS SO ORDERED AND AGREED:

BY: _____     DATE: _____
     Richard C. Karl, Director
     Superfund Division
     United States Environmental Protection Agency
     Region 5

## ATTACHMENT A

## MAP OF LANDFILL



FIGURE 2

# ATTACHMENT B

## MAP OF THE TREMONT CITY LANDFILL SITE



USGS 7.5 MINUTE TOPOGRAPHIC MAP
URBANA WEST

TREMONT CITY LANDFILL
BARREL FILL OPERABLE UNIT
TREMONT CITY, OH

SITE LOCUS

SCALE: 1:24,000         AUGUST 2005

FIGURE 1

## ATTACHMENT C

## RESPONDENTS

1. Waste Management, Inc.
   on behalf of itself and
   Chemical Waste Management, Inc.,
   Waste Management of Ohio, Inc.,
   SC Holdings, Inc.,
   Industrial Waste Disposal Company,
   Blaylock Trucking Co., Inc.,
   Koogler Suburban Refuse Removal
   Company and SCA Services

2. Springfield Gas Company, Inc.

3. Allied Waste Industries, Inc.
   on behalf
   of itself and Laidlaw Waste and
   Laidlaw Marysville

4. Tremont Landfill Company, Inc.

5. International Truck & Engine Corporation

6. Goodyear Tire & Rubber

7. SK Construction

8. Delco

9. Peerless Transportation

10. Hobart Brothers (aka Trimark, Inc.)

11. Reliable Construction Services