# EXHIBIT F – Part 2

## VII. AUTHORITY OF THE U.S. EPA REMEDIAL PROJECT MANAGER

The RPM shall be responsible for overseeing the implementation of this Order. The RPM shall have the authority vested in a RPM by the NCP, including the authority to halt, conduct, or direct any work required by this Order, or to direct any other response action undertaken by U.S. EPA or Performing Respondents at the Site. Absence of the RPM from the Site shall not be cause for stoppage of work unless specifically directed by the RPM.

## VIII. REIMBURSEMENT OF COSTS

A. Reimbursement of Future Oversight Costs. Performing Respondents shall reimburse Future Oversight Costs to be incurred and paid by the United States that are not inconsistent with the NCP, in the manner described below.

U.S. EPA will send Performing Respondents a bill for "Future Oversight Costs" on a semi-annual basis. Any failure by U.S. EPA to provide these bills on an annual basis shall not provide a defense to Performing Respondents' Oversight Cost payment obligations.

Performing Respondents shall, within 45 calendar days of receipt of a bill, remit a cashier's or certified check for the amount of the bill, made payable to the "Hazardous Substance Superfund," to the following address:

U.S. Environmental Protection Agency
Program Accounting and Analysis Section
P. O. Box 70753
Chicago, Illinois 60673

Performing Respondents shall simultaneously transmit a copy of the check to the Director, Superfund Division, U.S. EPA Region 5, 77 West Jackson Blvd., Chicago, Illinois 60604-3590. Such payments shall be designated as "Response Costs - Tremont City Barrel Fill Operable Unit" and shall reference the name of the trust established by the Performing Respondents for payment of costs related to the Site (or individual Performing Respondents' names if appropriate), the U.S. EPA site identification number (#PO), and the docket number of this Order.

In the event that any payment is not made within the deadlines described above, Performing Respondents shall pay interest on the unpaid balance ("Interest"). Interest is established at the rate specified in Section 107(a) of CERCLA, 42 U.S.C. §9607(a). The Interest shall begin to accrue on the date of the Performing Respondents' receipt of the bill. Interest shall accrue at the rate specified through the date of the payment. Payments of Interest made under this paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Performing Respondents' failure to make timely payments under this Section.

Performing Respondents may dispute all or part of a bill for Oversight Costs submitted under this Order, if Performing Respondents allege that U.S. EPA has made an accounting error, or if Performing Respondents allege that a cost item is inconsistent with the NCP.

If any dispute over costs is resolved before payment is due, the amount due will be adjusted as necessary. If the dispute is not resolved before payment is due, Performing Respondents shall pay the full amount of the uncontested costs into the Hazardous Substance Fund as specified above on or before the due date. Within the same time period, Performing Respondents shall pay the full amount of the contested costs into an interest-bearing escrow account. Performing Respondents shall simultaneously transmit a copy of both checks to the RPM. Performing Respondents shall ensure that the prevailing party or parties in the dispute shall receive the amount upon which they prevailed from the escrow funds plus interest within 20 calendar days after the dispute is resolved.

B. Waiver of Past Costs. Due to the significant number of recalcitrant and/or defunct Barrel Fill PRPs that are not participating in the funding of the Work, the Parties agree that the Respondents will be funding much more than their collective fairly allocated share of the Work. In recognition of this, the U.S. EPA waives any claims for its Past Oversight Costs against the Respondents.

## IX. DISPUTE RESOLUTION

Unless otherwise expressly provided for in this Order, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve all disputes arising with respect to this Order.

A. Informal Resolution. The parties to this Order shall attempt to resolve, expeditiously and informally, any disagreements concerning this Order and shall reduce any and all such resolutions to a writing executed by the Performing Respondents and the RPM as soon as is practical after any such resolution.

B. Objections. If the Performing Respondents object to any U.S. EPA action taken pursuant to this Order, the Performing Respondents shall notify U.S. EPA in writing of their objection within 14 calendar days of such action, unless the objections have been informally resolved. This written notice shall include a statement of the issues in dispute, the relevant facts upon which the dispute is based, all factual data, analysis or opinion supporting Performing Respondents' position, and all supporting documentation on which such party relies ("Statement of Position"). U.S. EPA shall submit its Statement of Position, including supporting documentation, no later than 14 calendar

days after receipt of the written notice of dispute. In the event that these 14-day time periods for exchange of written documents may cause a delay in the work, they shall be shortened upon, and in accordance with, notice by U.S. EPA. The time periods for exchange of written documents relating to disputes over billings for response costs may be extended at the sole discretion of U.S. EPA.

C. Record. An administrative record of any dispute under this Section shall be maintained by U.S. EPA. The record shall include the written notification of such dispute, and the Statements of Position served pursuant to this Section. Any agreement reached by the Parties to the dispute pursuant to this Section shall be in writing, signed by all Parties to the dispute, and shall upon the signature of such Parties be incorporated into and become an enforceable element of this Order.

D. Resolution by Director. If the Parties to the dispute are unable to reach an agreement within the negotiation period, upon review of the administrative record, the Director of the Superfund Division, U.S. EPA Region 5, shall resolve the dispute consistent with the NCP and the terms of this Order.

E. No Tolling. Performing Respondents' obligations under this Order, except as expressly provided in Section XI (Stipulated and Statutory Penalties), shall not be tolled by submission of any objection for dispute resolution under this Section. Following resolution of the dispute, as provided by this Section, Performing Respondents shall fulfill the requirements that were the subject of the dispute in accordance with the agreement reached or with the Director's decision, whichever applies.

## X. FORCE MAJEURE

Performing Respondents agree to perform all requirements under this Order within the time limits established under this Order unless the performance is delayed by a force majeure. For purposes of this Order, a force majeure is defined as any event arising from causes beyond the control of Performing Respondents, or of any entity controlled by Performing Respondents, including but not limited to their contractors and subcontractors, that delays or prevents performance of any obligation under this Order despite Performing Respondents' best efforts to fulfill the obligation. Force majeure does not include financial inability to complete the Work or increased cost of performance.

Performing Respondents shall notify U.S. EPA orally within 24 hours after they become aware of any event that Performing Respondents contend constitutes a force majeure, and in writing within seven calendar days after any such event. Such notice shall: identify the event causing the delay or anticipated

delay; estimate the anticipated length of delay, including necessary demobilization and remobilization; state the measures taken or to be taken to minimize the delay; and estimate the timetable for implementation of the measures. Performing Respondents shall take all reasonable measures to avoid and minimize the delay. Failure to comply with the notice provision of this Section shall be grounds for U.S. EPA to deny Performing Respondents an extension of time for performance. Performing Respondents shall have the burden of demonstrating by a preponderance of the evidence that the event is a force majeure, that the delay is warranted under the circumstances, and that best efforts were exercised to avoid and mitigate the effects of the delay.

If U.S. EPA determines a delay in performance of a requirement under this Order is or was attributable to a force majeure, the time period for performance of that requirement shall be extended as deemed necessary by U.S. EPA. Such an extension shall not alter Performing Respondents' obligation to perform or complete other tasks required by the Order which are not directly affected by the force majeure.

## XI. STIPULATED AND STATUTORY PENALTIES

For each day, or portion thereof, that Performing Respondents fail to fully perform their obligations related to the following enumerated items in accordance with the schedule established pursuant to this Order, Performing Respondents shall be liable as follows:

| Violation | Penalty Per Violation Per Day | | |
|---|---|---|---|
| | Up to 30 Days | Up to 60 Days | Over 60 Days |
| Failure to submit timely or adequate progress reports: | $500 | $1,000 | $1,500 |
| Failure to submit timely or adequate Supplemental RI/FS Support Sampling Plans or RI/FS Report: | $1,000 | $2,000 | $5,000 |
| Failure to provide timely notice of appointment of or change in: | | | |
| Supervising Contractor | $500 | $1,000 | $1,500 |
| Project Coordinator | $500 | $1,000 | $1,500 |
| Alternate Project Coordinator | $500 | $1,000 | $1,500 |
| Failure to provide timely notice of sampling event: | $1,000 | $2,000 | $5,000 |

| Failure to provide timely notice of Work-related release: | $1,000 | $5,000 | $10,000 |
|---|---|---|---|

In no event shall the total stipulated penalties under this paragraph exceed $100,000.

Upon receipt of written demand by U.S. EPA, Performing Respondents shall make payment to U.S. EPA within 20 days and interest shall accrue on late payments in accordance with Section VIII of this Order (Reimbursement of Costs).

Even if violations are simultaneous, separate penalties may accrue for separate violations of this Order. Penalties accrue and are assessed per violation per day. Penalties shall accrue regardless of whether U.S. EPA has notified Performing Respondents of a violation or act of noncompliance. The payment of penalties shall not alter in any way Performing Respondents' obligations to complete the performance of the work required under this Order. Stipulated penalties shall accrue, but need not be paid, during any dispute resolution period concerning the particular penalties at issue. If Performing Respondents prevail in such a dispute, Performing Respondents shall pay only such penalties as the resolution requires. In its unreviewable discretion, U.S. EPA may waive its rights to demand all or a portion of the stipulated penalties due under this Section. Such a waiver must be made in writing.

If Performing Respondents fail to pay stipulated penalties when due, U.S. EPA may institute proceedings to collect the penalties, as well as interest. Interest is established at the rate specified in Section 107(a) of CERCLA, 42 U.S.C. §9607(a). The interest shall begin to accrue on the date of the Performing Respondents' receipt of the demand. Interest shall accrue at the rate specified through the date of the payment. Payments of interest made under this paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Performing Respondents' failure to make timely payments under this Section.

Should Performing Respondents violate this Order or any portion hereof, U.S. EPA may carry out the required actions unilaterally, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and/or may seek judicial enforcement of this Order pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.

## XII. RESERVATION OF RIGHTS

Except as specifically otherwise provided in this Order, nothing herein shall limit the power and authority of U.S. EPA or the United States to take, direct, or order all actions necessary to protect public health, welfare, or the environment or to prevent, abate, or minimize an actual or threatened release of hazardous substances, pollutants or contaminants, or hazardous

or solid waste on, at, or from the Barrel Fill. Further, nothing herein shall prevent U.S. EPA or Performing Respondents from seeking legal or equitable relief to enforce the terms of this Order. Except as otherwise provided herein, U.S. EPA also reserves the right to take any other legal or equitable action as it deems appropriate and necessary, or to require the Performing Respondents in the future to perform additional activities pursuant to CERCLA or any other applicable law. Except as otherwise provided in this Order, Performing Respondents reserve all rights, defenses and legal arguments to contest any and all alleged liability or responsibility for hazardous substances, materials, or contamination at or emanating from the Barrel Fill.

## XIII. OTHER CLAIMS

By issuance of this Order, the United States and U.S. EPA assume no liability for injuries or damages to persons or property resulting from any acts or omissions of Performing Respondents. The United States or U.S. EPA shall not be a party or be held out as a party to any contract entered into by the Performing Respondents or their directors, officers, employees, agents, successors, representatives, assigns, contractors, or consultants in carrying out activities pursuant to this Order. Each party shall bear its own costs and attorneys fees in connection with the action resolved by this Order.

Except as expressly provided in Section XIV (Covenant Not To Sue), nothing in this Order constitutes a satisfaction of or release from any claim or cause of action against the Respondents or any person not a party to this Order, for any liability such person may have under CERCLA, other statutes, or the common law, including but not limited to any claims of the United States for costs, damages and interest under Sections 106(a) or 107(a) of CERCLA, 42 U.S.C. §§9606(a), 9607(a).

This Order does not constitute a preauthorization of funds under Section 111(a)(2) of CERCLA, 42 U.S.C. §9611(a)(2). The Respondent(s) waive(s) any claim to payment under Sections 106(b), 111, and 112 of CERCLA, 42 U.S.C. §§9606(b), 9611, and 9612, against the United States or the Hazardous Substance Superfund arising out of any action performed under this Order. No action or decision by U.S. EPA pursuant to this Order shall give rise to any right to judicial review except as set forth in Section 113(h) of CERCLA, 42 U.S.C. §9613(h).

## XIV. COVENANT NOT TO SUE

A. Covenants Not to Sue Performing Respondents. Except as otherwise specifically provided in this Order, upon issuance of the U.S. EPA notice referred to in Section XVIII (Notice of Completion), U.S. EPA covenants not to sue Performing Respondents for judicial imposition of damages or civil penalties or to take administrative action against Performing

Respondents for any failure to perform removal actions agreed to in this Order except as otherwise reserved herein.

Except as otherwise specifically provided in this Order, in consideration and upon Respondents' payment of the response costs specified in Section VIII (Reimbursement of Costs) of this Order, U.S. EPA covenants not to sue or to take administrative action against Performing Respondents under Section 107(a) of CERCLA, 42 U.S.C. §9607(a), for recovery of Past Oversight Costs or Future Oversight costs incurred by the United States in connection with this removal action and this Order. This covenant not to sue shall take effect upon the receipt by U.S. EPA of the payments required by Section VIII.

These covenants not to sue Performing Respondents are conditioned upon the complete and satisfactory performance by Performing Respondents of their obligations under this Order. These covenants not to sue extend only to the Performing Respondents and do not extend to any other person.

B. Covenants Not to Sue Buyout Respondents. Except as otherwise specifically provided in this Order, upon payment by the Buyout Respondents of the Buyout Settlement Amounts designated in Attachment B hereto into the Barrel Fill Trust Fund, U.S. EPA covenants not to sue or to take any other civil or administrative action against Buyout Respondents or their subsidiaries, officers, directors, parents, predecessors and successors for judicial imposition of damages or civil penalties under CERCLA Sections 106 or 107 or RCRA Section 7003 for costs or actions related to the Matters Addressed in this Order, as defined in Section XV (Contribution Protection).

These covenants not to sue the Buyout Respondents are conditioned upon their full payment of their respective Buyout Settlement Amounts into the Barrel Fill Trust Fund within 30 days of the effective date of this Order. These covenants not to sue extend only to the Buyout Respondents and do not extend to any other person.

C. Reservation of Rights by United States. Notwithstanding any other provision of this Order, the United States reserves, and this Order is without prejudice to, all rights against each Respondent with respect to:

(i) failure by a Buyout Respondent to make timely payments as required in Attachment B of this Order;

(ii) liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances by a Respondent at any location that is both outside of the Site and outside the areas where hazardous substances from the Site have or may

come to be located as a result of migration of existing waste materials from the Site;

(iii) liability for future disposal of waste Material at the Site by a Respondent;

(iv) criminal liability; and

(v) liability for costs of performance of Site response actions other than those performed to date or to be performed pursuant to this Order.

D. Buyout Respondent's Certification. By execution of this Order, each Buyout Respondent certifies that, based on information currently available to it and to the best of its knowledge and belief: (1) it has made reasonable inquiries to gather all information which relates to its ownership, operation, generation, arrangement, treatment, transportation, storage or disposal of hazardous substances at or in connection with the Barrel Fill, and has provided, directly or indirectly, all such information to the United States; and (2) it is aware of no facts indicating that its contribution was more than 1% of the value of wastes in the Barrel Fill or that the toxic or other hazardous effects of its contribution to the Barrel Fill was not minimal in comparison to other hazardous substances at the Barrel Fill.

E. Covenants Null and Void. If it is ever shown that a Buyout Respondent made a false certification under Paragraph D above, this covenant not to sue shall be null and void as to that Buyout Respondent, and the violator may be subject to proceedings under 42 U.S.C. Title 18.

F. No other obligation. Notwithstanding any other provision of this Consent Order, Buyout Respondents shall have no obligation or liability under this Consent Order other than payment of their individual Buyout Settlement Amounts.

## XV. CONTRIBUTION PROTECTION

The Parties agree that each Performing Respondent and each Buyout Respondent, including their subsidiaries, officers, directors, parents, predecessors, and successors, are entitled, as of the effective date of this Order, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Order. "Matters Addressed" in this Order shall include all Past Oversight Costs, Future Oversight Costs and all Work to be undertaken pursuant to this Order and oversight costs incurred or to be incurred by the EPA regarding the Work done pursuant to this Order. Notwithstanding the provisions of this Section, each Performing Respondent reserves its right to assert claims

related to response costs incurred that are related to the Barrel Fill against other Performing Respondents and against other parties that are not Respondents to this Agreement.

Nothing in this Order precludes Parties from asserting any claims, causes of action or demands against any persons not parties to this Order for indemnification, contribution, or cost recovery.

## XVI. INDEMNIFICATION

Performing Respondents agree to indemnify, save and hold harmless the United States, its officials, agents, contractors, subcontractors, employees and representatives from any and all claims or causes of action: (A) arising from, or on account of, negligent or otherwise wrongful acts or omissions of Performing Respondents and Performing Respondents' officers, directors, employees, agents, contractors, subcontractors, receivers, trustees, successors or assigns, in carrying out actions pursuant to this Order; and (B) for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Performing Respondents, and any persons for performance of Work on or relating to the Barrel Fill, including claims on account of construction delays. Nothing in this Order, however, requires indemnification by Performing Respondents for any claim or cause of action against the United States based on action (negligent or otherwise) taken solely and directly by U.S. EPA (not including oversight or approval of plans or activities of the Performing Respondents).

## XVII. MODIFICATIONS

Modifications to any plan or schedule may be made in writing by the RPM or at the RPM's oral direction. If the RPM makes an oral modification, it will be memorialized in writing within seven business days; however, the effective date of the modification shall be the date of the RPM's oral direction. Any other requirements of this Order may only be modified in writing by mutual agreement of all parties.

If Performing Respondents seek permission to deviate from any approved plan or schedule, Performing Respondents' Project Coordinator shall submit a written request to U.S. EPA for approval outlining the proposed modification and its basis.

No informal advice, guidance, suggestion, or comment by U.S. EPA regarding reports, plans, specifications, schedules, or any other writing submitted by the Performing Respondents shall relieve Performing Respondents of their obligations to obtain such formal approval as may be required by this Order, and to comply with all requirements of this Order unless it is formally modified.

## XVIII. NOTICE OF COMPLETION, TERMINATION

When U.S. EPA determines, after U.S. EPA's review of the revised RI/FS report, that all Work has been fully performed in accordance with this Order, except for certain continuing obligations required by this Order (e.g., record retention, payment of costs), U.S. EPA will provide written notice to the Performing Respondents. If U.S. EPA determines, after reasonable opportunity to review and comment by the State, that any activities have not been completed in accordance with this Order, U.S. EPA will notify Performing Respondents in writing of the activities that must be undertaken by Performing Respondents pursuant to this Order to complete the Work, provide a list of the deficiencies, and require that Performing Respondents modify the revised RI/FS Report if appropriate to correct such deficiencies. U.S. EPA will set forth in the notice a schedule for performance of such activities consistent with the Order or require Performing Respondents to submit a schedule to U.S. EPA for approval in the manner provided in Section VI.B.2. above. Performing Respondents shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution). The Performing Respondents shall implement the required activities and shall submit a modified final report in accordance with the U.S. EPA notice. Failure to timely implement the required activities and revisions shall be a violation of this Order. Issuance of the determination by U.S. EPA that all Work pursuant to this Order satisfactorily has been completed shall serve to terminate this Order, except for the continuing obligation required by this Order noted above.

## XIX. SEVERABILITY

If a court issues an order that invalidates any provision of this Order or finds that Performing Respondents have sufficient cause not to comply with one or more provisions of this Order, Performing Respondents shall remain bound to comply with all provisions of this Order not invalidated by the court's order. In the case of a discrepancy or inconsistency between this Order and the SOW, this Order shall control.

## XX. COMMUNITY RELATIONS

Performing Respondents shall propose to U.S. EPA their participation in the U.S. EPA's community relations activities to be conducted with respect to this Order and Performing Respondents shall receive all Public Notices related to the Site. The Performing Respondents have the right to attend and submit comments during all public meetings related to the Site. U.S. EPA will determine the appropriate role for the Performing Respondents in community relations activities conducted by the U.S. EPA. Performing Respondents shall also cooperate with U.S.

EPA in providing information regarding the Work to the public. As requested by U.S. EPA, Performing Respondents shall participate in the preparation of such information for dissemination to the public in public meetings which may be held or sponsored by U.S. EPA to explain activities at or relating to the Site.

## XXI. EFFECTIVE DATE

This Order shall be effective upon receipt by Respondents of a copy of this Order signed by the Director, Superfund Division, U.S. EPA Region 5.

CHI01\40995\2
Revised 5/21/02

**IN THE MATTER OF:** )
)
**TREMONT CITY BARREL FILL** )
**OPERABLE UNIT** )

**SIGNATORIES**

Each undersigned representative of a signatory to this Administrative Order on Consent certifies that he or she is fully authorized to enter into the terms and conditions of this Order and to bind such signatory, its directors, officers, employees, agents, successors and assigns, to this document.

Agreed this ________ day of __________________________, 2002.

By: ________________________________________

Printed Name: ______________________________

Company: ___________________________________

Company Representing: ______________________

Address: ___________________________________

___________________________________

Telephone: ___________________

Fax: _________________________

E-mail: ______________________

**IN THE MATTER OF:** )
)
**TREMONT CITY BARREL FILL** )
**OPERABLE UNIT** )

IT IS SO ORDERED AND AGREED this _____ day of _________, 2002.

By: ______________________________________________

William E. Muno, Director
Superfund Division
United States Environmental Protection Agency
Region 5

**ATTACHMENT A**

**Name of Performing Respondents**

# ATTACHMENT B

## List of Buyout Respondents and Payment Amounts

**ATTACHMENT C**

**Trust Agreement**