# EXHIBIT 1

Alan E. Marder (AM-0114)
Jil-MazerMarino (JM-6470)
ROSEN SLOME MARDER LLP
333 Earle Ovington Boulevard
Suite 901
Uniondale, New York 11553-3622
(516) 227-1600

Counsel for Kilroy Realty L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Delphi Corporation,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

| | |
|---|---|
| STATE OF CALIFORNIA<br><br>COUNTY OF LOS ANGELES | ) <br>) ss:<br>) |

AFFIDAVIT IN RESPONSE TO DEBTORS'
THIRD OMNIBUS OBJECTION WITH RESPECT TO
KILROY REALTY, L.P.'S PROOFS OF CLAIM NOS. 13268 AND 13269

James P. Axtell, being duly sworn, deposes and says:

1. I am the Vice President of Asset Management for Kilroy Realty, L.P. ("Kilroy"). I am fully familiar with the facts set forth below.

2. This affidavit is submitted in response to the Debtors' objections to Proofs of Claim Nos. 13628 and 13629 filed by Kilroy against debtors Delphi Automotive Systems, LLC ("Delphi") and Packard Hughes Interconnect, a Delaware corporation ("Packard"). Copies of Kilroy's proofs of claim and request for payment of administrative expenses are annexed hereto as Exhibits A-C, respectively.

(i) <u>Summary</u>

3. All of Kilroy's claims (which total at least $2,090,306.47) arise from a real property lease for property located in Irvine, California and include the following categories of damages:

A. As set forth in paragraphs 14 - 15 below, $1,015,915.05 for rejection damages.

B. As set forth in paragraphs 16 - 23 below and Exhibits D - F, $560,047.72 to repair the damages caused by the Debtors to the leased premises during the period between the date that the Debtors filed their bankruptcy petitions and the effective date of the Debtors' rejection of the subject lease.

C. As set forth in paragraphs 24 - 27 below and Exhibits D, E and G, $451,308.70 for the cost of restoring the leased premises as a result of the Debtors' failure to remove alterations and repair the damage to the premises caused by those alterations.

D. As set forth in paragraphs 28 - 31 below and Exhibits H and I, $63,035.00 for the cost of retaining an environmental consultant to conduct Phase I and Phase II environmental studies of the leased premises. In addition, pending the completion of the Phase II study, Kilroy may have a remediation claim against the Debtors.

E. As set forth in paragraphs 32 - 33 below, attorneys' fees in an amount to be determined.

(ii)  The Lease

4.  Kilroy is the fee owner of the building known as 17150 Von Karman Avenue, Irvine, California (the "Building"). The Building has 157,458 rentable square feet.

5.  On or about October 11, 1995, Kilroy's predecessor, as landlord, on the one hand, and General Motors Corporation ("GM") and Packard, as tenants, on the other, entered into a lease (the "Lease"), pursuant to which Kilroy leased the entire Building (the "Premises") to GM and Packard. A copy of the Lease is annexed to the Proofs of Claims (Exhibits A and B hereto), as Exhibit 1.

6.  The initial term of the Lease expired on December 21, 2001.

7.  On or about December 10, 1998, GM, with Kilroy's consent, assigned its interest in the Lease to Delphi and Delphi agreed to assume and perform all of the obligations under the Lease from and after January 1, 1999. A copy of the Assignment and Assumption Agreement ("Assignment Agreement"), is annexed to the Proofs of Claim (Exhibits A and B hereto), as Exhibit 2.

8.  On or about October 31, 2000 and March 25, 2005, Kilroy, as landlord, and Packard and Delphi, as tenants, entered into Amendment No. 1 and Amendment No. 2 to the Lease, respectively, pursuant to which the term of the Lease was extended to December 21, 2006. Amendment No. 1 and Amendment No. 2 are annexed to the Proofs of Claim (Exhibits A and B hereto), as Exhibit 1. The Lease and Amendments are collectively referred to herein as the "Lease".

9. Pursuant to the Lease, Packard and Delphi:

A. agreed to pay base rent (Amendment No. 2, ¶2) of $155,883.42 per month during the period between the effective date of the Debtors' rejection of the Lease and the end of the term of the Lease;

B. agreed to pay, in addition to base rent: (i) real property taxes (Lease, ¶10); (ii) insurance costs (Lease, ¶16); (iii) the cost of replacing the roof of the Building (Lease, ¶30 and Amendment No. 2, ¶3 of); (iv) utilities (Lease, ¶11), and; (vi) landscaping and maintenance costs (Lease, ¶12);

C. were required (Lease, ¶12(a)(1)), at their sole cost and expense, to:

> keep the Premises and every part thereof in good order, condition and repair, ordinary wear and tear excepted, structural and non-structural (whether or not such portion of the Premises requiring repairs, or the means of repairing same, are reasonably or readily accessible to [Debtors], and whether or not the need for such repairs occurs as a result of [Debtors] use, any prior use, the elements or the age of such portion of the Premises… Tenant's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair;

D. were required (Lease, ¶12(d)(6)), upon the expiration or early termination of the lease, to:

> return the Premises to Landlord clean and in the same condition as on the date that Tenant took possession pursuant to the terms of [the] Lease … Any damage to the Premises, including structural damage, resulting from Tenant's use … or from the removal of Tenant's fixtures, furnishings and equipment shall be repaired by Tenant at Tenant's expense.

4

      E. were required (Lease, ¶14), if Kilroy so elected, to remove any and all alterations they made to the Premises;

      F. were required (Lease, ¶7(g)), upon surrender or termination of the Lease, to: (i) engage and pay for an environmental consultant to conduct a Phase I environmental review of the Premises and to prepare a Phase I environmental report; (ii) to the extent required by the Phase I report, engage and pay for an environmental consultant to conduct a Phase II environmental review of the Premises and to prepare a Phase II environmental report and; (iii) retain and pay for contractors to perform all remedial work required by the environmental reports;

      G. were required (Lease, ¶31(f)), to pay Kilroy's reasonable attorneys' fees and court costs if Kilroy "becomes a party to any litigation concerning [the] Lease or the Premises by reason of any act or omission by [the Debtors]" or "if either party commences any litigation against the other" and Kilroy is the prevailing party in the litigation.

(iii) <u>The Bankruptcy Proceedings And The Debtors' Rejection Of The Lease</u>

    10. On or about October 8, 2005 (the "Petition Date"), Delphi and Packard filed petitions for relief pursuant to chapter 11 of the Bankruptcy Code.

    11. On or about June 29, 2006, the Debtors notified Kilroy that the Lease would be rejected, effective on July 13, 2006 (the "Rejection Date").

    12. On or about July 13, 2006, Delphi vacated the Premises.

    13. Since July, 2006, Kilroy has attempted to lease the Premises but, to date, has been unsuccessful.

(iv)   Kilroy's Claims Pursuant To The Lease

   A.   Rejection Damages

   14.   As set forth in paragraphs 9(A) (B) above, the Debtors agreed to pay base rent of $155,883.42 per month and additional rent charges for the replacement of the roof for the Premises, real property taxes, insurance, utilities, landscaping and maintenance.

   15.   The following, which is based on Kilroy's books and records, are the rent and additional rent charges (totaling $1,015,915.05) due Kilroy pursuant to the Lease for the period from the Rejection Date through December 21, 2006:

| UNPAID JULY RENT AND ADDITIONAL RENT | AMOUNT |
|---|---|
| Partial amount outstanding for 7/1/05 - 12/31/05 Property Taxes *Tenant paid $9419.58 of $63,684.73 (Invoice #71711) | $34,265.15 |
| Partial amount outstanding for 7/1/06 Rent: *Tenant paid $67,314.15 of $155,883.42 (Invoice #76352) | $88,569.29 |
| 7/1/06 Roof Reimbursement: | $4,634.91 |
| Subtotal: | $127,469.35 |
| **POST-REJECTION DATE RENT AND ROOF REIMBURSEMENT CHARGES** | |
| 8/1/06 Rent | $155,883.42 |
| 8/1/06 Roof Reimbursement | $4,634.91 |
| 9/1/06 Rent | $155,883.42 |
| 9/1/06 Roof Reimbursement | $4,634.91 |
| 10/1/06 Rent | $155,883.42 |
| 10/1/06 Roof Reimbursement | $4,634.91 |
| 11/1/06 Rent | $155,883.42 |
| 11/1/06 Roof Reimbursement | $4,634.91 |
| 12/1/06 - 12/21/06 Rent (Prorated) | $105,598.45 |
| 12/1/06 - 12/21/06 Roof Reimbursement (Prorated) | $3,139.78 |
| Subtotal: | $750,811.55 |

6

| POST-REJECTION DATE PROPERTY TAXES | |
|---|---|
| Estimated Property Taxes for period of 7/1/06 - 12/21/06<br>*(Taxes were prorated using 174 days out of 184 days)<br>**(Total Tax Amount for period of 7/1/06 - 12/31/06 = $63,684.73) | $61,428.08 |

| POST-REJECTION DATE INSURANCE | |
|---|---|
| Insurance for period of 7/13/06 - 12/21/06 @ $1,965.07/month: | $9,113.11 |

| POST-REJECTION DATE UTILITIES & LANDSCAPE MAINTENANCE CHARGES | |
|---|---|
| Irvine Ranch Water District (Water) for the period 7/13/06 - 12/21/06 | $2,339.61 |
| Southern California Edison (Electricity) for the period 7/13/06 - 12/21/06 | $11,698.03 |
| AT & T (FLS phone lines) for the period 7/13/06 - 12/21/06 | $280.75 |
| Landscape Maintenance for the period 7/13/06 - 12/21/06 | $8,890.50 |
| Subtotal: | $23,208.89 |

| EXCESS ROOF REIMBURSEMENTS | $43,884.07 |
|---|---|
| TOTAL DUE: | $1,015,915.05 |

B.  Damage Caused To Premises As A Result Of The Debtors Removal Of Their Furniture, Fixtures And Equipment After The Petition Date And Prior To The Effective Date Of The Rejection Of The Lease

16. As set forth in paragraph 9(C) above, during the term of the Lease, the Debtors had an ongoing obligation to keep the Premises in "good order, condition and repair."

17. In addition, as set forth in paragraph 9(D) above, the Debtors had an obligation to return the Premises to Kilroy clean and in the same condition as on the date that the Tenant took possession of the Premises.

18. As illustrated in the photographs annexed hereto as Exhibit D (the "Before Pictures") and Exhibit E (the "After Pictures"), Delphi breached the obligations set forth in paragraphs 9(C) and 9(D) above.

7

19. The Before Pictures (which were taken on or about November 24, 2005), illustrate the condition of the Premises on the Petition Date.

20. The After Pictures (which were taken on or about July 6, 2006; one week before the Rejection Date), show the damage and destruction caused to the Premises by the Debtors during the period after the Petition Date and prior to the Rejection Date.

21. Far from ordinary wear and tear, the Debtors cut enormous holes in several walls of the Premises to remove their furniture, fixtures and equipment (After Pictures, pp. 1 and 2); left pipes hanging from the ceiling (After Pictures pp. 2, 4 and 5); left huge holes in the floor (After Pictures, bottom of p. 2 - top of p. 3 and top of p. 4); left steel walls corroded by caustic chemicals used by the Debtors (After Pictures, middle of p. 3); left huge holes in the ceiling where the Debtors removed their equipment from the roof (After Pictures, p. 3); and left other equipment on the roof (After Pictures, p. 6).

22. Annexed hereto as Exhibit F is a Project Detail Budget prepared by Kilroy based on a bid prepared by 2H Construction, an independent contracting firm, which shows that it will cost Kilroy $560,047.72 to repair the damage that the Debtors caused to the Premises.

23. Moreover, I am advised by Kilroy's attorneys that, because the Debtors damaged the Premises during the period between the Petition Date and Rejection Date (as illustrated by the photographs annexed hereto as Exhibits D and E), this portion of Kilroy's claim should be treated as an administrative expense claim.

C.     <u>Damages Caused By The Debtors' Failure To Remove Their Alterations To The Debtors' Wet Processing Area And Damages To The Premises Caused By Those Alterations</u>

24.     During the term of the Lease, the Debtor altered the Premises by, among other things, installing alterations to the "wet process" area of the Premises. Apparently, the wet processing area was used in connection with the Debtors' manufacturing process which requires the use of a tremendous amount of water. The Debtors built in an approximately 8-foot deep containment pit (that is approximately 8 feet by 35 feet), into the floor of the Premises for this process (<u>See</u>, After Pictures, bottom of p. 2 - top of p.3).

25.     These alterations caused substantial damage to the Premises and Kilroy elected to have the Debtors remove the "wet process" alterations pursuant to paragraph 14 of the Lease and the Debtors have failed to do so.

26.     Substantial work is required to restore this area to marketable condition and the cost to correct this damage is compensable pursuant to paragraphs 12 and 14 of the Lease.

27.     Annexed hereto as Exhibit G is a detailed itemized breakdown that shows that it will cost Kilroy $451,308.70 to remove and repair the damage caused by the Debtors' "wet process" alterations.

D.     <u>Environmental Reports And Removal Of Hazardous Materials</u>

28.     As set forth in paragraph 9(F) above, the Lease required the Debtors, upon the termination of the Lease, to obtain and pay for a Phase I and, if necessary, Phase II environmental reviews and reports of the Premises and to retain and pay for contractors to perform all remedial work required by those reports.

29.     When the Debtors delayed providing Kilroy with a copy of its Phase I report, Kilroy was required to engage Ninyo & Moore, an environmental consulting firm, to perform the Phase I environmental review and report at a cost (Exhibit H) to Kilroy of $4,700.00.

30.     In addition, Ninyo & Moore has advised Kilroy (Exhibit I) that a Phase II report, at an estimated cost of $33,235.00, is required because chemicals used at the Building by GM and the Debtors may have impacted soil or groundwater beneath the Building. In addition, Ninyo & Moore has indicated (Exhibit J) that, based on its preliminary findings during the performance of the Phase II and its review of the Phase I report obtained from Delphi (which was provided to Kilroy after Kilroy had obtained its own Phase I report), additional testing that will cost $25,100 should be performed at the site of the Building.

31.     In addition, based on the result of the Phase II studies, the Debtors may be liable to Kilroy for remediation costs.

E.      Attorneys' Fees

32.     As set forth in paragraph 9(G) above, the Debtors are required to reimburse Kilroy for all attorneys' fees and costs if Kilroy incurs fees and costs as a result of the Debtors' acts and omissions and if Kilroy is the prevailing party in litigation commenced by Kilroy or the Debtors.

33.     As a result of this claim objection and the Debtors' multiple breaches of the Lease as detailed in this affidavit, Kilroy has and will incur substantial attorneys' fees and costs, the amount of which cannot be determined until the ultimate resolution of this matter.

## Conclusion

34. As set forth above and the annexed Exhibits, Kilroy has valid claims against Delphi and Packard in the amount of $2,090,306.47 plus costs and attorneys' fees and, possibly, remediation costs.

_____
James P. Axtell

State of California      )
                         ) ss.:
County of Los Angeles    )

Subscribed and sworn to (or affirmed) before me this 20th day of November, 2006 by James P. Axtell, personally known to me ~~(or proved to me on the basis of satisfactory evidence)~~ to be the person who appeared before me.

WITNESS my hand and official seal.

Signature _____

[Notary Stamp: JUDY LACOSS, Commission # 1628006, Notary Public - California, Los Angeles County, My Comm. Expires Dec 8, 2009]

[SEAL]

*G:\Kilroy-Delphi-Int\affidavit response to debtor's objection v.3.doc*

11