Hearing Date and Time: November 30, 2006 at 10:00 AM
Response Date and Time: November 24. 2006 at 4:00 PM

McDERMOTT WILL & EMERY LLP
Peter A. Clark (IL# 6203985)
Jason J. DeJonker (IL# 6272128)
227 West Monroe Street
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

Nava Hazan, Esq. (NH-0447)
Abigail M. Beal (AB-1808)
340 Madison Avenue
New York, New York 10017-4613
Telephone: 212.547.5400
Fax: 212.547.5444

*Counsel for Heraeus Amersil, Inc. a/k/a Heraeus
Tenevo, Heraeus, Inc., Circuit Materials Division,
and Heraeus Metal Processing, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X
In re                                            : Chapter 11
                                                 :
DELPHI CORPORATION, et al.,                      : Case No. 05-44481 (RDD)
                                                 :
            Debtors.                             : (Jointly Administered)
                                                 :
                                                 :
------------------------------------------------ X

**HERAEUS' RESPONSE TO THE DEBTORS' SECOND OMNIBUS**
**OBJECTION TO CLAIMS AND THIRD OMNIBUS OBJECTION TO CLAIMS**

Heraeus Amersil, Inc. a/k/a Heraeus Tenevo ("**Amersil**"), Heraeus, Inc., Circuit Materials Division, a/k/a Heraeus Cermalloy Inc. and Heraeus Inc., Cermalloy Division ("**Circuit Materials**"), and Heraeus Metal Processing, Inc. ("**Metal Processing**") (Amersil, Circuit Materials, Metal Processing, and their affiliated and related entities shall collectively be referred to as "**Heraeus**"), by and through its undersigned counsel, hereby submit this response

CHI99 4746629-1.050346.0010

to the Debtors' Second Omnibus Objection to Claims (the "**Second Objection**") and Third Omnibus Objection to Claims (the "**Third Objection**").

1. On October 8, 2005, Delphi Corporation ("**Delphi Corp.**"), Delphi Automotive Systems, LLC ("**Delphi Automotive**"), Delphi Mechtronic Systems, Inc. ("**Delphi Mechtronic**"), ASEC Manufacturing General Partnership ("**ASEC Manufacturing**"), ASEC Sales General Partnership ("**ASEC Sales**"), Environmental Catalysts, LLC ("**Environmental Catalysts**"), and Exhaust Systems Corporation ("**Exhaust Systems**") and certain related entities (collectively, "**Delphi**") filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York. Delphi remains in possession of its property and continues to operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

2. Amersil has filed claim numbers 10960 and 10959 against the Debtors (collectively, the "**Amersil Claims**"). Circuit Materials has filed claim numbers 10394 and 10393 against the Debtors (collectively, the "**Circuit Materials Claims**"). Metal Processing has filed claim numbers 10122, 10123, 10124, 10121, and 10120 against the Debtors (collectively, the "**Metal Processing Claims**").

3. By this response, Heraeus objects to the Debtors' proposed treatment of the Amersil Claims, the Circuit Materials Claims and the Metal Processing Claims as proposed in the Second Objection and the Third Objection.[1]

---

[1] Amersil, Circuit Materials, and Metal Processing rely upon the Amersil Claims, the Circuit Materials Claims and the Metal Processing Claims and the agreements and other documents attached thereto to support their claims. These materials have not been submitted with this Response but are available from Amersil, Circuit Materials, and Metal Processing upon request. All of these materials have been previously submitted to the Debtors.

CHI99 4746629-1.050346.0010

### The Amersil Claims Against The Debtors

4. In Schedule F of its bankruptcy schedules, Delphi Automotive has scheduled an "Environmental Claim" of Amersil against Delphi Automotive purportedly related to Mercury Refining Superfund Site, located at 26 Railroad Avenue, Albany County, Colonie, New York 12205 (the "**Mercury Site**"). Similarly, in Schedule F of its bankruptcy schedules, Delphi Corp. has scheduled an "Environmental Claim" of Amersil against Delphi Corp. purportedly related to the Mercury Site. Neither Schedule F includes any additional information about Amersil alleged claims against the Debtors related to the Mercury Site. On information and belief, such claim may be related to Amersil alleged role as a potentially responsible party under the environmental laws, including, but not limited to, the Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), 42 U.S.C. § 9601, *et seq.*, with respect to the Mercury Site.

5. Amersil has no interest in the Mercury Site, and specifically denies that Amersil (or any related entity or predecessor-in-interest to Amersil) arranged for the disposal or treatment of hazardous substances at the Mercury Site. At this time, Amersil is without knowledge or information sufficient to determine if the Debtors caused contaminant-related damage at the Mercury Site. To the extent, however, that (a) Amersil is held to be liable or (b) claims of liability are asserted against Amersil with respect to the Mercury Site, then, based on the foregoing, Amersil may hold statutory and common law rights to contribution against the Debtors. Therefore, Amersil may be owed unpaid amounts and / or damages arising from or relating to the Mercury Site on behalf of itself and its affiliates. By its claim, Amersil requested allowance of all such amounts, subject to final liquidation and reconciliation of each account related to the Mercury Site.

6. In response to the Amersil Claims in the Third Objection, the Debtors have argued that the claims are unsubstantiated. However, as described above, the Debtors have

CHI99 4746629-1.050346.0010

scheduled the claims and stated that such claims generally exist against them. The Debtors offer no support or proof as to why the Amersil Claims should be disallowed as unsubstantiated

### The Setoff Relationship Amongst Heraeus and the Debtors

7.  Circuit Materials and Metal Processing, along with its parent, W.C. Heraeus GmbH ("**W.C. Heraeus**"), and its affiliates, are a global precious metals and technology group headquartered in Hanau, Germany and a market and technology leader in the business areas of precious metals, dental health, sensors, quartz glass, and specialty lighting sources.

8.  Over the years, Heraeus conducted (and continues to conduct) business with the Debtors, and the parties entered into several agreements governing these business relationships. Circuit Materials and the Debtors, acting through Delphi Delco Electronics Division, entered into a long term contract dated as of March 25, 2003 (the "**Circuit Materials Agreement**") whereby Circuit Materials agreed to sell and the Debtors agreed to purchase certain quantities of "Solder Paste." The Circuit Materials Agreement expressly incorporated Delphi's General Terms and Conditions. [Circuit Materials Agreement, § 5, a copy of which is attached as Exhibit 1 to the Circuit Materials Claims and incorporated herein by reference.]

9.  Similarly, Metal Processing and the Debtors, acting through Delphi Energy and Chassis Division and Delphi Catalyst Unit, entered into a long term contract dated as of June 24, 2003 and amended as of July 23, 2004 (the "**Metal Processing Agreement**"), whereby Metal Processing agreed to sell and Delphi agreed to purchase certain chemical products. The Metal Processing Agreement expressly incorporated Delphi's General Terms and Conditions. [Metal Processing Agreement, § 5, a copy of which is attached hereto as Exhibit 1 to the Metal Processing Claims and incorporated herein by reference.]

10. Article 21 of Delphi's General Terms & Conditions states as follows:

-4-

> With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against any sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates.

[General Terms and Conditions, § 21, a copy of which is attached as <u>Exhibit 2</u> to the Circuit Materials Claims and Metal Processing Claims and incorporated herein by reference.]

11. To give Heraeus the setoff rights that the Debtors already had as provided in Delphi's General Terms and Conditions and to expand such rights for both parties, Heraeus and the Debtors entered into that certain Mutual Setoff Agreement dated August 10, 2005, a copy of which is attached as <u>Exhibit 3</u> to the Circuit Materials Claims and Metal Processing Claims and incorporated herein by reference (the "**Mutual Setoff Agreement**"). Pursuant to the Mutual Setoff Agreement, the Parties agreed that:

> a. Should any of the Debtors not make timely payment on any obligation owing under the respective terms of any agreement between any of the Debtors and Heraeus then (i) Heraeus shall be allowed the right of setoff against amounts that Heraeus may owe any of the Debtors under any agreement, and (ii) recoup any such amounts previously paid to any of the Debtors by Heraeus; and
>
> b. Should Heraeus not make timely payment on any obligation owing under the respective terms of any agreement between any of the Debtors and Heraeus then (i) any of the Debtors would be allowed the right of setoff against amounts that any of the Debtors may owe Heraeus under any agreement, and (ii) recoup any such amounts previously paid to Heraeus by any of the Debtors.

[*See* Mutual Setoff Agreement, § 5]. Moreover, Heraeus and the Debtors agreed that any party seeking bankruptcy relief would not oppose any motion or other papers filed by the other party to seek relief from the automatic stay under federal bankruptcy law (Bankruptcy Code section 362) which would allow the other party to exercise all of their rights of setoff and recoupment as expressly allowed under state law and/or Bankruptcy Code section 553. [*See id.*, § 6]

12. The Mutual Setoff Agreement was negotiated in good faith and at arm's length. Article 21 of the Delphi General Terms & Conditions and the Mutual Setoff Agreement clearly

-5-

demonstrate the parties' pre-petition intent to aggregate debts of the parties and their affiliates and create a global resolution to settle claims among all of the various parties and their affiliates.

## Claims of Circuit Materials Against the Debtors

13. *Circuit Materials' Secured Setoff and Unpaid Prepetition Invoice Claims*: Circuit Materials' records of account demonstrate that it is owed a total of $594,923.93 from the Debtors under the Circuit Materials Agreement. A schedule of the amounts owed from the Debtors to Circuit Materials is attached to the Circuit Materials Claims as Exhibit 4. As outlined in a letter from counsel to Heraeus to counsel to the Debtors, dated December 6, 2005 (the "**Setoff Demand**," a copy (without exhibits) of which is attached to the Circuit Materials Claims as Exhibit 5), Circuit Materials seeks to setoff a portion of its claim against the Debtors ($594,923.93) against amounts owed by Heraeus to the Debtors ($488,660.90) pursuant to Bankruptcy Code section 553 and the Mutual Setoff Agreement. Under Bankruptcy Code section 506(a), a claim that is subject to a right of set-off against property in which the bankruptcy estate has an interest is a secured claim, and therefore Circuit Materials asserts a secured claim in the amount of $488,660.90.

14. *Circuit Materials - Executory Contracts*: The Debtors have filed their Schedules of Assets and Liabilities, including "Schedule G – Executory Contracts and Unexpired Leases." In their Schedules, the Debtors have listed 33 "Purchase Contracts / Purchase Orders" between the Debtors and Heraeus (the "**Scheduled Contracts**") as contained in Exhibit 6 to the Circuit Materials Claims.[2] Circuit Materials is or may become owed unpaid amounts and / or damages arising from or relating to the Scheduled Contracts on behalf of itself and Heraeus.

---

[2] The Debtors that have Scheduled Contracts with Heraeus include ASEC Manufacturing General Partnership (7 Scheduled Contracts), Delphi Mechatronic Systems, Inc. (2 Scheduled Contracts), Delco Electronics Overseas Corporation (1 Scheduled Contract), and Delphi Automotive Systems LLC (23 Scheduled Contracts).

CHI99 4746629-1.050346.0010

15. *Total Claim of Circuit Materials*: Accordingly, the Debtors are liable to Circuit Materials in the total amount of at least $594,923.93, comprising (a) $106,263.03 as a general unsecured claim for goods manufactured and delivered by Circuit Materials to Delphi, and (b) $488,660.90 remaining due and unpaid as a secured setoff claim relating to the Setoff Demand.

16. In contesting the Circuit Materials claims in the Third Objection, the Debtors have argued that claim no. 10393 asserted against Delphi Mechtronic should be disallowed as unsubstantiated and that claim no. 10394 against Delphi Automotive should be reduced and reclassified from an approximately $594,000 secured claim to an approximately $366,000 unsecured claim. As stated above, however, certain portions of the Circuit Materials Claims should be treated as secured by the Court, particularly Circuit Materials setoff claims. Moreover, the Debtors offer no support or proof as to why the Circuit Materials Claims should be reduced in amount or why the Circuit Material Claim against Delphi Mechtronic should be disallowed as unsubstantiated. Instead, Circuit Materials has offered substantial proof as to the validity and sufficient documentary evidence to establish the bona fide nature and amount of its claims.

### Claims of Metal Processing Against the Debtors

17. *Metal Processing's Secured Setoff and Unpaid Prepetition Invoice Claims*: Metal Processing's records of account demonstrate that it is owed a total of $322,860.53 from Delphi under the Metal Processing Agreement. Invoices for the amounts outstanding are attach as Exhibit 4 to the Metal Processing Claims and a schedule of amounts owed is attached as Exhibit 5 to the Metal Processing Claims. As outlined in a letter from counsel to Heraeus to counsel to the Debtors, dated December 6, 2005 (the "**Setoff Demand**," a copy (without exhibits) of which is attached as Exhibit 6 to the Metal Processing Claims), Metal Processing seeks to setoff its claim against the Debtors ($322,860.53) against amounts owed by Heraeus to the Debtors

($488,660.90) pursuant to Bankruptcy Code section 553 and the Mutual Setoff Agreement. Under Bankruptcy Code section 506(a), a claim that is subject to a right of set-off against property in which the bankruptcy estate has an interest is a secured claim, and therefore Metal Processing asserts a secured claim in the amount of $322,860.53.

18.    *Metal Processing – Reclamation Claim*: On February 21, 2006, Metal Processing and the Debtors entered into an agreement, a copy of which is attached to the Metal Processing Claims (without exhibits) as Exhibit 7 (the "**Reconciliation Agreement**"), to reconcile Metal Processing's reclamation demand against Delphi for $58,336.35 (the "**Reclamation Demand**"). Pursuant to Bankruptcy Code section 546(c), Metal Processing has asserted the Reclamation Demand against the Debtors. Under Bankruptcy Code section 546(c), a valid reclamation claim is a secured claim.

19.    *Metal Processing - Executory Contracts*: The Debtors have filed their Schedules of Assets and Liabilities, including "Schedule G – Executory Contracts and Unexpired Leases." In their Schedules, the Debtors have listed 33 "Purchase Contracts / Purchase Orders" between Delphi and Heraeus (the "Scheduled Contracts") as contained in Exhibit 8 to the Metal Processing Claims.[3] Metal Processing is or may become owed unpaid amounts and / or damages arising from or relating to the Scheduled Contracts on behalf of itself and Heraeus.

20.    *Total Claim of Metal Processing*: Accordingly, the Debtors are liable to Metal Processing in the total amount of at least $322,860.53, comprising: (a) $264,524.18 as a secured setoff claim relating to the Setoff Demand and (b) $58,336.35 remaining due and unpaid as a secured reclamation claim relating to the Reclamation Demand.

---

[3]    The Debtors that have Scheduled Contracts with Heraeus include ASEC Manufacturing General Partnership (7 Scheduled Contracts), Delphi Mechtronic Systems, Inc. (2 Scheduled Contracts), Delco Electronics Overseas Corporation (1 Scheduled Contract), and Delphi Automotive Systems LLC (23 Scheduled Contracts).

21.  In the Third Objection, the Debtors, without support, argue that Metal Processing Claims should be reduced from an approximately $322,000 secured claim to an approximately $303,000 unsecured claim. In the Second Objection, the Debtors, again without support, seek to consolidate all of the Metal Processing Claims against all of the Debtors to one claim against ASEC. As stated above, certain portions of the Metal Processing Claims should be treated as secured by the Court, particularly the setoff and reclamation claims. Metal Processing has offered substantial proof as to the validity and sufficient documentary evidence to establish the bona fide nature and amount of its claims. Metal Processing also has incurred these claims against multiple Debtors, not just ASEC. On the other hand, the Debtors offer no support or proof as to why the Metal Processing Claims should be reduced or consolidated.

## ARGUMENT

### In The Second Objection and Third Objection, The Debtors Have Not Met Their Burden To Disallow Heraeus' Claims.

22.  In response to the Amersil Claims in the Third Objection, the Debtors have argued that the claims are unsubstantiated. However, as described above, the Debtors have scheduled the claims and stated that such claims generally exist against them. The Debtors offer no support or proof as to why the Amersil Claims should be disallowed as unsubstantiated.

23.  Moreover, the mere fact that the Amersil Claims are contingent and unliquidated does not render them unenforceable. The procedure for addressing contingent and unliquidated claims is set forth in Bankruptcy Code section 502(c), which requires the court to estimate any claim when actual liquidation of the claim would unduly delay administration of the estate. "The essence of section 502(c) is that 'all claims against the debtor be converted into dollar amounts.'" 4 Collier on Bankruptcy ¶ 502.04[1], at 502-53 (15th ed.) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), reprinted in 1978 U.S.C.C.A.N. at p. 6310).

-9-

CHI99 4746629-1.050346.0010

24.     Bankruptcy Code section 502 makes no provision for the disallowance of a contingent claim based on any contingency. To the contrary, Bankruptcy Code section 502(b)(1) provides that the bankruptcy court may disallow a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable *for a reason other than because such claim is contingent or unmatured.*" 11 U.S.C. § 502(b)(1) (emphasis added); In re Lamarre, 269 B.R. 266 (Bankr. D. Mass. 2001) ("[S]ection 502(b)(1) prohibits the disallowance of contingent or unmatured claims if the disallowance is based solely on the contingent or unmatured nature of the claim"). Here, the Debtors have not requested that this Court estimate the Amersil Claims. Such estimation at this time would be improper because the fixing of these claims will not delay the administration of the estate.

25.     In the Third Objection, the Debtors have argued that the Metal Processing Claims should be reduced from an approximately $322,000 secured claim to an approximately $303,000 unsecured claim and that all of the Metal Processing Claims against all of the Debtors should be reduced to one claim against ASEC Manufacturing. As stated above, certain portions of the Metal Processing Claims should be treated as secured by the Court, particularly the setoff and reclamation claims. Metal Processing has offered substantial proof as to the validity and sufficient documentary evidence to establish the bona fide nature and amount of its claims. Metal Processing also has incurred these claims against multiple Debtors, not just ASEC. On the other hand, the Debtors offer no support or proof as to why the Metal Processing Claims should be reduced or consolidated.

26.     In the Third Objection, the Debtors have argued that Circuit Materials Claim no. 10393 asserted against Delphi Mechtronic should be disallowed as unsubstantiated and Circuit Materials Claim no. 10394 against Delphi Automotive should be reduced and reclassified from

CHI99 4746629-1.050346.0010

an approximately $594,000 secured claim to an approximately $366,000 unsecured claim. As stated above, however, certain portions of the Circuit Materials Claims should be treated as secured by the Court, particularly Circuit Materials setoff claims. Moreover, the Debtors offer no support or proof as to why the Circuit Materials Claims should be reduced in amount or why the Circuit Material Claim against Delphi Mechtronic should be disallowed as unsubstantiated. In contrast, Circuit Materials has offered substantial proof as to the validity and sufficient documentary evidence to establish the bona fide nature and amount of its claims.

27.     A timely and properly filed proof of claim constitutes prima facie evidence of the claim's validity and amount. See Fed. R. Bankr. P. 3001(f); see also McGee v. O'Connor (In re O'Connor), 153 F.3d 258, 260-261 (5th Cir. 1998); ); In re Mid-Am. Waste Sys., Inc., 284 B.R. 53, 65 (Bankr. D. Del. 2002) ("A claimant filing a proof of claim must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid pursuant to Fed. R. Bankr. P. 3001(f).").

28.     A party objecting to a timely and properly filed proof of claim bears the initial burden of presenting "*enough evidence* to overcome the *prima facie* effect of the claim." O'Connor, 153 F.3d at 261 (emphasis added); In re Mid-Am. Waste Sys., Inc., 284 B.R. at 65 (objecting party must present "*sufficient evidence* to overcome the presumed validity and amount of the claim") (emphasis added). The objector must "produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." See In re Simmons, 765 F.2d 547, 552 (5th Cir. 1985); In re Alleghany Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (objector must present evidence that is "equal in force" to the prima facie evidence supporting the claim).

29. By merely stating that the claims are unsubstantiated, should be reduced or should be consolidated, the Debtors have not met their burden of presenting "enough evidence" to overcome the presumptive validity of the timely and properly supported claims of Heraeus. For these reasons, this Court should deny the Second Objection and Third Objection as to the claims of Heraeus. Heraeus reserves all other rights and remedies under the Bankruptcy Code and other applicable law.

WHEREFORE, Heraeus respectfully requests that the Court deny the Second Objection and Third Objection as to Heraeus' claims and grant it such other relief as the Court deems just and proper.

Dated: November 21, 2006

          Respectfully submitted,
          **McDermott Will & Emery LLP**

          By: /s/ Abigail M. Beal
          Nava Hazan, Esq. (NH-0447)
          Abigail M. Beal (AB-1808)
          340 Madison Avenue
          New York, New York 10017-4613
          Telephone: 212.547.5400
          Fax: 212.547.5444

          Peter A. Clark
          Jason J. DeJonker
          227 West Monroe Street
          Chicago, Illinois 60606
          Telephone: (312) 372-2000
          Facsimile: (312) 984-7700

          *Counsel for Heraeus Amersil, Inc. a/k/a Heraeus Tenevo, Heraeus, Inc., Circuit Materials Division, and Heraeus Metal Processing, Inc.*

CHI99 4746629-1.050346.0010

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C. §1746 that on November 21, 2006 I caused to be served upon the parties listed on the annexed service list a true and correct copy of the accompanying Heraeus' Response to the Debtors' Second Omnibus Objection to Claims and Third Omnibus Objection to Claims by First Class Mail.

Dated: New York, New York
       November 21, 2006

_____
Bonnie S. Schwab

## DELPHI SERVICE LIST

**John Wm. Butler, Jr.**
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606-1285
(312) 407-0700
Fax : (312) 407-0411
Email: jbutler@skadden.com

**Kayalyn A. Marafioti**
**Thomas J. Matz**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
(212) 735-3000
Fax : (212) 735-2000
Email: kmarafio@skadden.com
Email: tmatz@skadden.com

**Sean P. Corcoran**
**Karen J. Craft**
Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

**Mark A. Broude**
**Robert J. Rosenberg**
Latham & Watkins
885 Third Avenue
New York, NY 10022-4802
(212) 906-1200
Fax : (212) 751-4864
Email: mark.broude@lw.com
Email: robert.rosenberg@lw.com

**Kenneth S. Ziman**
**Robert H. Trust**
**William T. Russell, Jr.**
SIMPSON THATCHER & BARLETT LLP
425 Lexington Avenue
New York, NY 10017
Email: kziman@stblaw.com
Email: rtrust@stblaw.com
Email: wrussell@stblaw.com

**Donald Bernstein**
DAVIS POLK & WARDELL
450 Lexington Avenue
New York, NY 10017
Email: donald.berstein@dpw.com

**Douglas P. Bartner**
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-8190
Fax : (212) 848-4387
Email: dbartner@shearman.com

**Jessica Kastin**
O'Melveny & Myers
7 Times Square
New York, NY 10036
(212) 326-2000
Fax : (212) 326-2061
Email: jkastin@omm.com

**Mateo Fowler**
Quinn Emanuel Urquhardt Oliver & Hedges
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax : (213) 443-3100
Email: mateofowler@quinnemanuel.com

## DELPHI SERVICE LIST

**Paul J. N. Roy**
Mayer, Brown, Rowe & Maw LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 701-7370
Fax : (312) 706-8196
Email: proy@mayerbrownrowe.com

**Alicia M. Leonhard**
Office of the United States Trustee
Southern District of New York
33 Whitehall Street, Suite 2100
New York, NY 10004
212-510-0508
Fax : 212-668-2255

**Tracy Hope Davis**
United States Trustee Office
33 Whitehall Street
21st Floor
New York, NY 10004
(212) 510-0500
Fax : (212) 668-2255

**Michael D. Warner**
Warner Stevens, L.L.P.
301 Commerce Street
Suite 1700
Fort Worth, TX 76102
(817) 810-5250
Fax : (817) 810-5255
Email: bankruptcy@warnerstevens.com