# EXHIBIT F



Cooper & Elliott LLC
Attorneys at Law

June 22, 2005

**VIA FACSIMILE AND**
**REGULAR U.S. MAIL**

Jeffrey D. Winchester, Esq.
Jones Day
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215

For discussion purposes only. Under Evidence Rule 408 and other applicable standards, this correspondence is not to be considered as evidence, admissions or for any purposes other than discussion of resolution of this matter.

Re:    **Edith C. James v. Delphi Automotive Systems, *et al.*** 
Case No. 03CVH02-2213

Dear Jeffrey:

As we discussed some time ago, I am providing you with plaintiff's settlement demand in advance of the mediation in this matter. Edith James has asserted claims of race and gender discrimination and intentional infliction of emotional distress and the Court of Appeals has remanded all three claims for a jury trial. Ms. James is seeking past and future lost income, the emotional distress she suffered as a result of Delphi's unlawful actions, an award of punitive damages and plaintiff's attorneys fees, which will easily exceed $200,000 should this case proceed to trial.

As you know, the evidence will establish that Ms. James applied for the position of Supervisor Salaried Personnel Administrator, a seventh level HR position traditionally held by a white male. Defendants gave the job to Ms. James because there were no other options; however, once she was placed in the job, defendants quickly revoked the supervisory job title and added the duties and responsibilities of two former full-time employees. As a result of her "promotion," Ms. James' income was actually reduced and she further lost the ability to earn a substantial amount of overtime pay. For example, in 2000, Ms. James earned $69,730.71 as a sixth level manufacturing advisor. Ms. James should have received a promotion to the seventh level position Supervisor Salaried Personnel Administrator in 2001. However, she was denied the promotion and title and earned a sixth level salary of $53,962.24 in 2001, approximately $17,000 less than she earned while working on the production floor.

We produced information demonstrating Ms. James' efforts to find comparable employment. The enclosed W-2 statements establish that she was discharged from Delphi in 2002 and earned $27,548.83 that year; in 2003, Ms. James earned $26,978.53; and in 2004 Ms. James earned $37,599.27. Ms. James has found full-time employment with the State of Ohio with an hourly salary of $22.62 per hour and we project that she will earn approximately $47,000 for the year 2005.

Jeffrey D. Winchester, Esq.
June 22, 2005
Page 2

   Further, Ms. James will show that as a result of defendants' unlawful actions, she began to suffer extreme emotional distress including extremely high blood pressure. Both Ms. James family doctor's records and the records maintained by Delphi's in-house medical facility show that, at the height of defendants' discrimination, Ms. James' blood pressure was so high that her doctor placed her on medication and she was required to have her blood pressure monitored daily. Even Delphi's medical staff became concerned of Ms. James' extremely high blood pressure. As a result, we anticipate a substantial award for Ms. James' emotional distress.

   In sum, if a jury returns a verdict in favor of Ms. James, she will be entitled to four years of back pay. The jury will hear evidence that Ms. James should have received a pay increase to the seventh level which would range from $4,500 to $7,500 a month and that her successor, Michael Waters, received a seventh level pay at a monthly rate of $5,475.00 plus overtime pay. Thus, after mitigating, Ms. James is entitled to back pay totaling $124,000 (approximately $38,000 for 2002, $39,000 for 2003, $28,000 for 2004, and $19,000 for 2005). Further, Ms. James has not been able to obtain "comparable" employment despite her efforts and we believe that she will be awarded at least three years of front pay totaling $57,000. In the event a jury concludes defendants discriminated against Ms. James on the basis of her race and gender, she also will receive an award of punitive damages and attorneys fees which could exceed $1,000,000. Finally, Ms. James has suffered significant emotional distress because of defendants' actions and will be entitled to an award on this claim as well.

   Therefore, based upon the foregoing, we would seek a jury verdict in this case as follows:

| | |
|---|---|
| Lost income (back pay and front pay) | $181,000 |
| Emotional distress | $250,000 |
| Punitive damages | $500,000 |
| Attorney fees | $200,000 |
| Total | $1,131,000 |

Based upon our analysis of Ms. James' damages, we would demand a lump sum payment of $350,000 to resolve this action. We believe a settlement in this range will be substantially more economical for Delphi when considering defendants' exposure in the case and the enormous legal bill the company will incur through a trial of this dispute.

Jeffrey D. Winchester, Esq.
June 22, 2005
Page 3

      If you have any questions about this settlement demand, please do not hesitate to call me. Otherwise, we look forward to mediating this matter with Magistrate Pam Browning.

Very truly yours,

Sheila P. Vitale

SPV/lls

Enclosures

cc:    Rex H. Elliott, Esq.
       Charles H. Cooper, Jr., Esq.
       Ms. Edith C. James