**William M. Hawkins (WH-1865)**
**LOEB & LOEB LLP**
**345 Park Avenue**
**New York, NY 10154**
**(212) 407-4000**

**Attorneys for Kyocera Industrial Ceramics Corporation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X
In re:                                                    :
                                                          : Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               : Case No. 05-44481 (RDD)
                                                          :
           Debtors.                                       : (Jointly Administered)
                                                          :
--------------------------------------------------------- X

**RESPONSE OF CREDITOR KYOCERA INDUSTRIAL CERAMICS CORPORATION**
**TO DEBTORS' THIRD OMNIBUS CLAIM OBJECTION**

Creditor Kyocera Industrial Ceramics Corporation ("KICC"), by and through its undersigned counsel Loeb & Loeb LLP, hereby submits its response (the "Response") to the above-captioned debtors' (the "Debtors") third omnibus claim objection dated October 31, 2006 (docket number 5452) (the "Omnibus Claim Objection"). In support of its Response, KICC respectfully represents as follows:

**BACKGROUND**

1.      KICC is a leading manufacturer and provider of industrial, automotive and semiconductor processing related advanced ceramic components, cutting tool products, liquid crystal displays, thermal printheads, metallized assemblies and industrial lenses.

2.      Prior to the commencement of the Debtors' bankruptcy proceedings, KICC sold various types of ceramic heaters to Debtor Delphi Automotive Systems LLC ("Delphi

Automotive").[1]  This contractual relationship was evidenced by various purchase orders, true and correct copies of which are attached hereto as <u>Exhibit A</u>, that were in effect between the parties from time to time (the "Agreement").

3. Pursuant to the Agreement, KICC agreed to, among other things, supply Delphi Automotive with its requirement of 12 watt heaters (part number 25108420) ("12 Watt Heaters") and 18 watt heaters (part number 25165124) ("18 Watt Heaters," and together with the 12 Watt Heaters, the "Heaters").

**The 18 Watt Heaters Claim**

4. Typically, Delphi Automotive communicated its need for Heaters during upcoming periods by transmitting the relevant information into the i-Supply service ("i-Supply"). i-Supply is a third-party supply chain application that is subscribed to by various manufacturers, distributors and their direct material supply chains in order to optimize supply chain relationships.  KICC would then access i-Supply and adjust its production to meet the demand of Delphi Automotive, as reflected in i-Supply.

5. In the early part of 2004, KICC personnel began to notice that i-Supply's 16 week forecasts (the "i-Supply Forecasts") with respect to Delphi Automotive's demand for the 18 Watt Heaters was substantially higher than the 12-month global forecasts compiled by Susann Halverson (the "Halverson Forecasts") at the Debtors' Warren, Ohio plant.  True and correct copies of the relevant i-Supply Forecasts are attached hereto as <u>Exhibit B</u>.  True and correct copies of the relevant Halverson Forecasts are attached hereto as <u>Exhibit C</u>.

6. Alarmed by the large discrepancy between the projections contained in the i-Supply Forecasts and the Halverson Forecasts, KICC contacted Delphi Automotive in order to

---

[1] KICC has continued to supply products to the Debtors in the post-petition period.

determine upon which set of forecasts KICC should base its production schedule.  In fact, on April 15, 2004, Ms. Sheila Murphy, Sales-Engineer-Automotive Division for KICC, visited the Debtors' Juarez facility in Mexico to discuss the issue with Mr. Ruben Estrada, a purchasing manager for the Debtors, and Mr. Fernando DeLeon, a buyer for the Debtors.  At that meeting, Mr. DeLeon specifically advised Ms. Murphy that the <u>only forecast that KICC should reference is i-Supply</u>.  Ms. Murphy's contemporaneous notes of this meeting are attached hereto as <u>Exhibit D</u>.

7.      Accordingly, KICC continued to rely upon the i-Supply Forecasts in its production of the 18 Watt Heaters, dedicating significant resources to assure it could meet the apparent upcoming requirements.  Unfortunately, in June of 2004, Delphi Automotive's requirements for the 18 Watt Heaters dropped dramatically - from 12,000 units per week down to 2,000 units per week within a 4 week period.  In short, the i-Supply Forecasts that KICC were instructed to rely upon, and which KICC did rely upon, proved to be incorrect.  Worse yet, KICC had warned the Debtors of the problem and KICC was instructed by the Debtors to ignore it, increasing the damage sustained by KICC.

8.      As a result of the failure of the i-Supply Forecasts, KICC now possesses an overstock inventory of 145,000 18 Watt Heaters.  The production cost, as set forth on <u>Exhibit E</u> attached hereto, is $2.09 per 18 Watt Heater.  Therefore, KICC has a claim against the Debtor in respect of its overproduction of the 18 Watt Heaters in the amount of $303,050.00 (the "18 Watt Heaters Claim").

**<u>The 12 Watt Heaters Claim</u>**

9.      Shortly before the commencement of the Debtors' cases, KICC delivered 12 Watt Heaters to Delphi Automotive for which, to date, it has not received payment.

3

10.     The relevant invoices are as follows: (i) invoice number 96361247 dated September 15, 2005 in the amount of $23,400.00; (ii) invoice number 96361248 dated September 15, 2005 in the amount of $23,400.00; and (iii) invoice number 96363006 dated September 26, 2005 in the amount of $39,000.00.  True and correct copies of invoice numbers 96361247, 96361248, and 96363006, are attached hereto as <u>Exhibit F</u>.

11.     Accordingly, on account of the 12 Watt Heaters, KICC possesses a claim against Delphi Automotive in the amount of $85,800.00 (the "12 Watt Heaters Claim").

**<u>Setoffs and Recoupments</u>**

12.     On April 27, 2004, Delphi Automotive made a duplicate payment with respect to invoice number 3K3952200040211 (for 18 Watt Heaters) in the amount of $46,600.00 (the "Pre-Petition Overpayment").  Payment for this invoice had been previously remitted to KICC on April 1, 2004.  KICC intends to file a motion with the Court to lift the automatic stay so that it may apply the Pre-Petition Overpayment against its own pre-petition claims (<u>i.e.</u>, the 18 Watt Heaters Claim and the 12 Watt Heaters Claim).

13.     On October 18, 2005, Delphi Automotive made a duplicate payment with respect to invoice number 96365776 (for 12 Watt Heaters) in the amount of $30,420.00 (the "Post-Petition Payment").  Payment for this invoice had been previously remitted on October 7, 2005.  In October of 2005, Mr. Chris Reider, Delphi-P Electrical Commodity Manager, informed Ms. Sheila Murphy that the Debtors authorized KICC's application of the Post-Petition Payment against KICC's pre-petition claim (the "Delphi Authorization").

14.     Pursuant to paragraph 4 of the Court's essential supplier order dated October 13, 2005 (the "Essential Supplier Order"), the Debtors are authorized, in their sole discretion, "to make payments on account of Essential Supplier Claims in the absence of a Trade Agreement

4

after the Debtors have undertaken diligent efforts to cause the Essential Supplier to execute a Trade Agreement and if the Debtors determine, in their sole discretion, that failure to pay the Essential Supplier Claim is likely to result in irreparable harm to the Debtors' business operations."

15. The Debtors' authorization and KICC's subsequent application of the Post-Petition Payment is fully consistent with the terms the Court's Essential Supplier Order.

- The Debtors had requested, prior to the Delphi Authorization, that KICC enter into a "Trade Agreement," i.e., an agreement concerning ongoing supply of parts, but KICC and the Debtors had not then agreed to new, ongoing terms.

- Upon information and belief, the Debtors had determined that their inability to continue to receive heaters from KICC would cause their business "irreparable harm."

- Following the Delphi Authorization, which was part of a negotiation process that had begun prior thereto and continued for a time thereafter, KICC entered into a "purchase order change" by which it agreed in effect to supply certain heaters to the Debtors on an on-going basis. A copy of this "Purchase Order Change" is attached hereto as Exhibit G (the "Post-Petition Supply Agreement"). In short, the Delphi Authorization, in part, led to the successful completion of the Post-Petition Supply Agreement.

**KICC's Proof of Claim**

16. On July 28, 2006, KICC filed its proof of claim (claim number 12530) (the "Proof of Claim") in these cases, asserting that Delphi Automotive is indebted to it in the amount of no

5

less that $311,830.00.[2] This amount consists of (i) the 18 Watt Heaters Claim ($303,050.00) plus (ii) the 12 Watt Heaters Claim ($85,800.00) minus (iii) the application of the Pre-Petition Overpayment ($46,600.00) and the Post-Petition Overpayment ($30,420.00).

**The Debtors' Omnibus Claim Objection**

17.  In their Omnibus Claim Objection, the Debtors have objected to KICC's Proof of Claim, and propose to reduce it to the amount of $54,405.00. The Debtors have provided KICC with little, if any, of the grounds supporting this proposed treatment. However, it would appear that the Debtors are assigning a zero value to KICC's 18 Watt Heaters Claim.

**RESPONSE**

18.  KICC reaffirms its entitlement to the claim asserted in the Proof of Claim against Delphi Automotive (subject to the modification set forth in note 2 hereof). The specific bases for its claim are set forth above. In addition, as set forth above, the documentation supporting KICC's claim is attached hereto.[3]

19.  Any replies to this Response, should b delivered to Loeb & Loeb LLP, 345 Park Avenue, New York, New York, 10154, Attention: William M. Hawkins, Esq. Mr. Hawkins possesses ultimate authority to reconcile, settle or otherwise resolve KICC's claim on behalf of KICC.

---

[2]   In its Proof of Claim, KICC asserted a total claim in the amount of $312,610.00. This amount reflected an additional $780.00 claim with respect to the 12 Watt Heaters. KICC had believed that Delphi Automotive had taken an unauthorized deduction of 2.5% ($780.00) with respect to its payment of invoice number 96365776 dated October 7, 2005. A subsequent review of KICC's records revealed that this deduction had, in fact, been authorized. Therefore, KICC's claim, as asserted in the Proof of Claim, should be reduced accordingly from $312,610.00 to $311,830.00.

[3]   KICC reserves all of its rights, including the right to (i) supplement this Response in all respects (including, without limitation, to raise other and further defenses and responses) and (ii) submit additional documentation in support of its claims. KICC further notes that most of the documentation it will rely upon to support its claims should, upon information and belief, already be in the Debtors' possession. Accordingly, KICC also reserves the right to, inter alia, take discovery in this matter.

WHEREFORE, KICC respectfully requests that this Court (i) denies the Omnibus Objection with respect to KICC's Proof of Claim; (ii) allow the Proof of Claim in its entirety; and (iii) grant such other and further relief as is just and proper.

Dated: New York, New York
November 22, 2006

LOEB & LOEB LLP

By: /s/ William M. Hawkins
William M. Hawkins (WH-1865)
345 Park Avenue
New York, NY 10154
(212) 407-4000
Attorneys for Kyocera Industrial Ceramics Corporation