MORGAN, LEWIS & BOCKIUS LLP   Hearing Date:  November 30, 2006
Attorneys for Hitachi Chemical (Singapore) Pte. Ltd. Hearing Time: 10:00 a.m.
101 Park Avenue
New York, New York  10178-0060
(212) 309-6000
Menachem O. Zelmanovitz (MZ-0706)
Mark C. Haut (MH-0429)


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:         :    Chapter 11
           :
DELPHI CORPORATION, et al.   :   Case No.  05-44481 (RDD)
           :   (Jointly Administered)
        Debtors. :
-------------------------------------------------------x

## OBJECTION OF HITACHI CHEMICAL (SINGAPORE) PTE. LTD. TO MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§502(C) AND FED. R. BANKR. P. 2002(M), 3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR HEARINGS REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS AND (II) CERTAIN NOTICES AND PROCEDURES GOVERNING HEARINGS REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS

Hitachi Chemical (Singapore) Pte. Ltd. (f/k/a Hitachi Chemical Asia-Pacific Pte. Ltd.)

("*HCS*") by and through its undersigned counsel, submits this objection (the "*Objection*") to the

Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 502(C) and Fed. R. Bankr. P. 2002(M),

3007, 7016, 7026, 9006, 9007, and 9014 Establishing (i) Dates for Hearings Regarding

Disallowance or Estimation of Claims and (ii) Certain Notices and Procedures Governing

Hearings Regarding Disallowance or Estimation of Claims, dated October 31, 2006 (the

"*Motion*").  In support of the Objection, HCS respectfully states as follows:

### Preliminary Statement

1.  The Motion seeks to establish procedures governing the litigation of disputed

claims in a manner which dramatically tilts the playing field in favor of the Debtors and against

creditors, especially foreign creditors such as HCS, thereby chilling the ability of such creditors to fairly contest claims objections.

2.      Specifically, the Debtors' Motion inequitably seeks to require, among other things:

- A mandatory in person "meet and confer" on shortened notice in the Debtors' backyard, Troy, Michigan, where the Debtors' elected not to file the bankruptcy cases and where HCS and, presumably, most other foreign creditors have no presence;

- A mediation on shortened notice in the same "neutral" location before a mediator unilaterally selected by the Debtors, in clear contravention to the procedures governing mediation of matters in bankruptcy cases and adversary proceedings adopted by order of this Court (the "*SDNY Mediation Procedures*");

- A highly accelerated claims dispute process in which the Debtors have the unilateral right to delay the court hearing of the dispute; and

- Various other draconian measures, including requiring the production and filing with the Court of possibly thousands upon thousands of documents with the creditor's initial response before the Debtors produce any documents to support their objection.

Under the Debtors' proposed procedures, the failure to comply with any of these provisions may result in the disallowance of otherwise meritorious claims *without notice* to the affected creditors.

3.      Debtors' proposed procedures clearly place an unreasonable burden upon creditors, thereby unfairly prejudicing the rights of creditors to fairly and fully prosecute their claims.  Accordingly, the Motion should be denied, or alternatively, the relief sought should be limited so as to provide a level playing field for the resolution of disputed claims.

## Factual Background

4.      On October 8, 2005 (the "*Filing Date*"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11, United States Code.

5.      HCS is a corporation organized under the laws of Singapore.  HCS has no place of business in Troy, Michigan.  Commencing prior to the Filing Date and continuing thereafter, HCS was and is a supplier to the Debtors of printed circuit boards and related equipment pursuant to certain supply contracts and purchase orders.

6.      On November 7, 2005, HCS filed its original proof of claim against Delphi Corp. in the amount of $5,415,329.84, based on its shipment and delivery of goods prior to the Filing Date for which payment had not been made.  As a protective measure, on July 24, 2006, HCS timely filed proofs of claims in the same amount against the three Debtors identified in the Schedules of Assets and Liabilities as indebted to HCS for various portions of HCS' claim.

7.      Pursuant to their Second Omnibus Objection to Claims, dated October 31, 2006, Debtors' objected to certain of HCS' claims.  Contemporaneously herewith, HCS is filing a separate response to the Debtors' objection to its claims.

## Objection

A.      The Mandatory Meet and Confer and Mediation Provisions
        are Unreasonably Onerous And Inequitable.

8.      For claims in excess of $250,000 that will be scheduled for a Claims Objection Hearing (as defined in the Motion), the Motion provides that the parties "would be required to

hold an in-person meet and confer . . . at a neutral location in Troy, Michigan, or such other location as is reasonably acceptable to the Debtors within five business days of service of the Notice of Adjourned Estimation Hearing or Notice of Adjourned Claims Objection, as appropriate." *See* Motion at ¶36(c)(i).

9.      Thus, for a claim in excess of $250,000, such as HCS' claim, the creditor may not satisfy the "meet and confer" provision by phone, but must travel to Troy, Michigan or some other allegedly "neutral" location that will be acceptable only to the Debtors, in order to "meet and confer" in person.  To impose such a requirement on a foreign creditor, such as HCS, who has no physical presence in Troy, Michigan, and to do so on such limited notice is patently unreasonable.  Such an onerous requirement can only serve to improperly dissuade foreign creditors from exercising their right to contest objections to their claims by compelling such creditors to needlessly incur significant time, expense and resources in attending in-person "meet and confers" at an unfair location.  Indeed, considering that parties may participate by phone at court hearings, no justification can be proffered for requiring in person "meet and confers" under such circumstances.

10.     Moreover, the Debtors did not file their bankruptcy petitions in Michigan, but rather, in New York, and their attorneys are located in New York.  HCS, which is located in Singapore, and has no presence in Michigan, retained counsel in New York since that was the forum chosen by the Debtors for their bankruptcy filing.  To now require HCS to "meet and confer" in Michigan, rather than New York, would simply and unjustifiably add another layer of expense to HCS' already difficult burden in prosecuting its claim.  In addition, the need for both a "meet and confer" and mediation, with the attendant duplication of cost, is highly questionable at best.

11.    Indeed, the Debtors have promulgated a proposed mediation procedure that is at least equally slanted to their advantage and against creditors, especially foreign creditors such as HCS.  The Motion states that:  "Mediation would be required to be held at a neutral location in Troy, Michigan or such other location as is reasonably acceptable to the Debtors in their sole discretion."  *See* Motion at ¶36(f)(iii).  As discussed above, this requirement is clearly and impermissible inequitable to creditors.  Moreover, this requirement is in direct contravention with the SDNY Mediation Procedures adopted by this Court which provide that the mediator "shall fix a reasonable time and place for the initial mediation conference" after "consultation with all attorneys."  *See* Amended General Order M-143 at §3.0.

12.    In addition, the Debtors' proposed method for the selection of mediators is similarly unfair and inconsistent with the SDNY Mediation Procedures.  The Motion provides that each "Mediation would be assigned to one of the approved mediators at the *Debtors' discretion*. . . ."  *See* Motion at ¶36(f)(i) (emphasis added).  However, the SDNY Mediation Procedures provide that the "parties will ordinarily choose a mediator from the Register for appointment by the Court.  If the parties cannot agree upon a mediator within seven (7) days of assignment to mediation, the court shall appoint a mediator and alternate mediator."  *See* Amended General Order M-143 at §2.2.  The Debtors brazen attempt to unfairly seize additional advantage in the mediation and claim dispute process, by ignoring this Court's governing procedures and issuing to themselves the unilateral right to select a mediator and the location for the mediation, must be rejected.

B.    Debtors' Proposed Schedule Provides for an Unreasonably Short Time Frame While Retaining for Debtors the Unilateral Right to Extend Such Period.

13.    For factually disputed claims that will be scheduled for a Claims Objection Hearing, the Debtors seek to require the completion of the claims resolution process within 45

days. *See* Motion at ¶36. During this 45 day period, the Debtors seek to compel the parties to:

(i) attend a "meet and confer" *and* a mediation, (ii) file their respective supplemental pleadings,

(iii) complete all discovery, including document production, interrogatories, requests to admit,

fact and expert witness, depositions, and (iv) prepare and file supplemental affidavits. *See* the

chart, attached hereto as Exhibit A, as an example of such period with respect to one of the

identified hearing dates. Especially for foreign creditors, such as HCS, many of whose witnesses

and documents are located overseas, such time period is patently unreasonable and does not

provide the creditor with a full and fair opportunity to prepare its case.

14.    Moreover, the Debtors seek to retain the right "in their sole discretion" to adjourn

the Claims Objection Hearing. *See* Motion at ¶36(a). Thus, unlike creditors, should the Debtors

have insufficient time to comply with the proposed procedures *and* prepare for trial, they can

unilaterally decide to adjourn the hearing.

15.    In sum, this expedited schedule and the Debtors' unilateral right to adjourn the

hearing unfairly disadvantages creditors, especially foreign creditors, such as HCS, and would

practically eviscerate such creditors' rights to a full and fair opportunity to be heard.

C.    Debtors Proposed Procedures are Unduly Onerous and Violate Due Process.

16.    The Motion further seeks to compel each creditor responding to a claims

objection to produce and file with its initial response, "all documentation or other evidence of the

Claim upon which the Claimant will rely in opposing the omnibus claims objection to the extent

not included with the Proof of Claim previously filed with the Court . . . ." *See* Motion at ¶28(d).

This would require a claimant to speculate as to the documents that may be necessary to support

its claim without having seen any evidence to support the Debtors' objection, thus potentially

requiring the production and filing with this Court of thousands upon thousands of pages of

documents in the creditor's initial, responsive pleading.  For example, this provision could be interpreted to require HCS to serve and file thousands of purchase orders, invoices and other documents, including certain confidential agreements[1], copies of all of which the Debtors should already have.

17.     Requiring the production and filing of all such documents with the creditors' initial response would subject the creditor to significant and needless cost and expense.  Instead of unfairly burdening the creditor with such unreasonable document production obligations, the Debtors should be required to first negotiate a more reasonable and cost effective solution as to the documents to be provided by each side simultaneously.

18.     Finally, the Motion provides that the Debtors may submit an order to the Court, *without notice*, expunging a claim if the claimant does not comply with *any* of the proposed procedures.  *See* Motion at ¶ 29.  At the very least, claimants are entitled to notice with regard to *any* order relevant to their claims, and the failure to provide notice of an order seeking to expunge a claim is a clear violation of due process.  *In re Randbre Corp.*, 66 B.R. 482, 488 (Bankr. S.D.N.Y. 1986) (order expunging claim vacated for failure to give proper notice); *see also In re Ms. Interpret*, 222 B.R. 409, 415 ("[d]ue process requires notice which will warn the parties about the action and allow them to present their positions").

19.     Moreover, this provision allows the Debtors to submit an order expunging an otherwise meritorious claim, without notice, on the most insignificant, technical grounds.  For example, paragraph 28(g) of the Motion provides that the claimant must list the name, address and telephone number of the person with ultimate authority to settle the claim.  It is simply

---

[1]     Certain of the agreements between the Debtors and HCS contain confidential, proprietary information, as well as express confidentiality provisions prohibiting HCS from disclosing their terms to third parties.

absurd to suggest that a claim should be expunged (without notice to the claimant) because the claimant neglected to include any of that information.

20.      Finally, the Debtors attempt to limit what this Court can consider in deciding a claims objection by proposing that the Court rely "solely" upon the items listed in ¶36(b)(iii) of the Motion.  Obviously, the Debtors should not be permitted to circumscribe the scope of this Court's review in determining the merits of such disputes.

D.      <u>There is No Legal Authority for the Proposed Procedures.</u>

21.      The Debtors cite no relevant authority for a claims dispute procedure that is patently and substantially prejudicial and unfairly onerous to creditors.  While a bankruptcy court has discretion to manage its docket and to enter orders establishing procedures for the resolution of claims, such discretion is not unlimited and such procedures must comply with due process requirements.  *In re Drexel Burnham Lambert Group, Inc.,* 160 B.R. 729, 733-34 (S.D.N.Y. 1993).  In addition, while the court has the power to require parties to attend settlement conferences, "that power should be invoked with great care so that it does not become unduly burdensome or coercive."  Wright & Miller, 6A Federal Rules of Civil Practice at 1525.1 (2d ed. 1990).

22.      Bankruptcy Rule 7016, cited by the Debtors for the proposition that a scheduling order is an appropriate mechanism to "control the litigation" before the Court (s*ee* Motion at ¶43), lends no support for the one sided procedures proposed by the Motion.  Generally, under Rule 7016 "the dates provided in the Scheduling Order are selected *by counsel for the parties themselves*."  *In re Coyne Electrical Contractors, Inc.*, 231 B.R. 204, 207 (Bankr. S.D.N.Y. 1999).  Thus, "it is and should be a rare case when events intervene requiring extension of those deadlines."  *Id.*  Here, the Debtors seek to have this Court impose a procedure that, effectively,

would allow the Debtors to unilaterally impose a schedule and other requirements beneficial to their interests and prejudicial to claimants. Debtors' attempt to unfairly shift the burden to creditors for modifying this inequitable procedure must be rejected. *In re Orange Boat Sales,* 239 B.R. 471, 474 (S.D.N.Y. 1999).

### Memorandum of Law

23.     Because the legal points and authorities upon which this Objection relies are incorporated herein, HCS respectfully requests that the requirement of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied or waived.

### Conclusion

24.     In their zeal to gain a windfall with claims dispute procedures that will choke the practical ability of creditors to effectively oppose objections to their claims, the Debtors have trampled on the most basic principles of due process and ignored the guidelines set by this Court. Accordingly, HCS respectfully submits that this Court should deny the Motion in its entirety, or in the alternative, modify the proposed procedures to provide a level playing field for the resolution of disputed claims.

Dated: New York, New York
      November 22, 2006

MORGAN, LEWIS & BOCKIUS LLP


By:  /s/ Menachem O. Zelmanovitz
    Menachem O. Zelmanovitz (MZ-0706)
    Mark C. Haut (MH-0429)

101 Park Avenue
New York, New York  10178
Telephone No.:  (212) 309-6000
Facsimile: (212) 309-6001

**<u>EXHIBIT A</u>**

**2/14/07 Hearing**

| | | |
|---|---|---|
| 12/29/06 | Notice of Adjourned Claims Objection Hearing | 45 days notice |
| 1/8/07 | Meet and Confer | 5 bus. days after notice |
| 1/15/07 | Supplemental Response Due | 5 bus. days after meet and confer |
| 1/17/07 | Supplemental Reply | 20 bus. days prior to hearing |
| 1/22/07 | Debtor serves discovery requests | 5 bus. days after Supp. Response |
| 1/24/07 | Claimant serves discovery requests | 5 bus. days after Supp. Reply |
| | and | |
| | Mediation | 15 bus. days prior to hearing |
| 1/31/07 | All discovery responses due | 5 bus. days after mediation |
| 1/25/07 – 2/7/07 | Depositions[2] | 10 bus. day period after mediation |
| 2/9/07 | Supplemental Affidavits | 3 bus. days before hearing |
| 2/7/07 | Debtor may unilaterally adjourn hearing on or before this date | 5 bus. days before hearing |

---

[2]    Realistically, this period would be reduced to the 5 business day period of 2/1/07 through 2/7/07 since depositions should be taken after discovery responses have been received.