Victor J. Mastromarco, Jr. (Mich Bar No P34564)   Hearing Date: Nov. 30, 2006
THE MASTROMARCO FIRM                              Time:  10:00 a.m.
Counsel to H.E. Services Company &
Robert Backie
1024 North Michigan Avenue
Post Office Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414

<div align="center">

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

</div>

In re:

              Chapter 11

DELPHI CORPORATION, et al.,     Case No. 05-44481 (RDD)

              (Jointly Administered)

        Debtors.

**<u>H.E. SERVICES COMPANY AND ROBERT BACKIE'S RESPONSE TO
DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 502 (b)
AND 502 (c) AND FED. R. BANKR. P. 2002(m), 3007, 7016, 7026, 9006, 9007,
AND 9014 ESTABLISHING (I) DATES FOR HEARINGS REGARDING
DISALLOWANCE OR ESTIMATION OF CLAIMS AND (II) CERTAIN
NOTICES AND PROCEDURES GOVERNING HEARINGS REGARDING
DISALLOWANCE OR ESTIMATION OF CLAIMS</u>**

  Now comes the Creditors, H.E. Services Company, and Robert Backie, Majority Shareholder [hereinafter referred to as Creditors], by and through their attorneys, who hereby files this response in opposition to Debtors' motion for the reasons as set forth more fully below:

1.  Debtors motion seeks certain procedures for alleged contested matters and seeks to impose certain conditions upon the Creditors.

2.    In the case of the Creditors' claims, the Debtors unsubstantiated argument is that the claims assert liabilities or dollar amounts that the Debtors have determined are not owing pursuant to the Debtors' books and records.

3.    The fallacy to Debtors' motion is that the Debtors have failed to submit any evidence (i.e. affidavit testimony) challenging the proofs of claims that are considered "prima facie valid". In re Armstrong Finishing, LLC, No. 99-11576, 2001 WL 170029 (Bankr. M.D.N.C. May 2, 2001). In other words, the Debtors have failed to submit any evidence as to what their books and records state.

4.    Regardless, the proofs of claims submitted by the Creditors have included a detailed amended complaint (with exhibits) setting forth the factual basis of the Creditors' claims.

    A.    The Creditors have attached to their proof of claim an eight count, thirty-one page (158 paragraphs) Complaint setting forth the facts in detail as to their claims against the Debtors. (See Amended Complaint with attached exhibits - **Exhibit 1**). A Creditor is only required to allege the facts in support of its claims. See In re Armstrong Finishing, LLC, No. 99-11576, 2001 WL 170029 (Bankr. M.D.N.C. May 2, 2001). The Debtors have not alleged any deficiency in Creditors' allegations.

    B.    The Debtors have failed to submit one scintilla of admissible evidence in support of their unsubstantiated assertions choosing

2

instead to rely upon inadmissible hearsay spreadsheets without any
affidavit support in violations of the Federal Rules of Evidence. See
Federal Rule of Evidence 802 and 901. See <u>In re Dwight C. Lundell</u>,
223 F.3d 1035, 1039 (9th Cir. 2000)(an objector must submit
evidence).

5.  Having failed to rebut (through admissible evidence) the proof of claims
being challenged, the imposition of additional requirements on the part of
the Creditor (i.e. requiring creditors to submit additional documentation) is
unwarranted and contrary to the prevailing case law, since the Debtors have
failed to establish that the amounts sought by the Creditors are contested.
See <u>In re Dwight C. Lundell</u>, 223 F.3d 1035, 1039 (9th Cir. 2000)(an
objector must submit evidence in opposition to a proof of claim).

6.  Having failed to rebut (through admissible evidence) the proof of claims
being challenged, the setting of contested hearings is also unwarranted.  In
the alternative, the proposed process set forth by the Debtors would be
unduly prejudicial and burdensome to the Creditors. Specifically, the
process proposed by the Debtors does not consider the varying degree of
complexity of the various claims. The Creditors claims are complex as
evidenced by the Amended Complaint which has set forth several causes of
action.

7.     Estimation of Creditors claims is also inappropriate, since the Debtors have failed to submit any admissible evidence contesting the validity of Creditors claims.

8.     In light of the fact that no evidence has been submitted establishing the existence of a conflict, the contested matters suggested by the Debtors are not warranted.

9.     The Creditors do not waive their previous argument that their claims contain non-core proceedings which is outside of this Court's jurisdiction.

10.    Because the legal points and authorities upon which this response relies are incorporated herein, the Creditors respectfully request that the requirement of the service and filing of a separate memorandum of law under this Court's Local Rules be deemed satisfied.

WHEREFORE, the Creditors H.E. Services Company and Robert Backie respectfully submit that the Court should deny Debtors' motion as it pertains to Creditors' claims against Debtors.

Dated: November 22, 2006              Respectfully submitted,

                                      THE MASTROMARCO FIRM

                                      s/ Victor J. Mastromarco, Jr.
                                      Victor J. Mastromarco, Jr. (P34564)
                                      Attorney for Creditors
                                      vmastromar@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

H.E. SERVICES COMPANY, and
ROBERT BACKIE, Majority
Shareholder

    Plaintiffs,

vs.

DELPHI AUTOMOTIVE
SYSTEMS, LLC, a foreign corporation.

    Defendant.

File No. 05-10053

Hon. David M. Lawson
Magistrate Judge Charles E. Binder

VICTOR J. MASTROMARCO, JR. (P34564)
MANDA L. WESTERVELT (P62597)
MASTROMARCO & JAHN, P.C.
Attorneys for Plaintiffs
1024 North Michigan Avenue, P.O. Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414

ARTHUR T. LIPPERT, JR. (P16714)
LIPPERT, HUMPHREYS, CAMPBELL,
DUST & HUMPHREYS, P.C.
Attorneys for Defendant
4800 Fashion Square Boulevard
Plaza North, Suite 410
Saginaw, Michigan 48604-2604
(989) 792-2552

DONALD R. PARSHALL, JR. (P50267)
Attorney for Defendant
Delphi World Headquarters
M/C: 480-410-254
5825 Delphi Drive
Troy, Michigan 48098-2815
(248) 813-3445

There is no other pending or resolve civil action arising out of the transaction
or occurrence alleged in the complaint.

**AMENDED COMPLAINT, RELIANCE UPON EARLIER DEMAND FOR JURY TRIAL
AND PRE-TRIAL CONFERENCE**

---

NOW COMES the Plaintiff, H.E. Services Company, and Robert Backie, by and through
their attorneys, MASTROMARCO & JAHN, P.C., and hereby Complains against the Defendant
stating more fully as follows:

**Common Allegations**

1.

That at all times material hereto, the Plaintiff, H.E. Services Company (hereinafter HES),
is a certified minority-owned business and the race of its primary majority shareholders is that of
Native American Chippewa Indian.

2.

That Plaintiff, Robert Backie, is at all times material hereto, a 51% shareholder and is a
natural born Native American Chippewa Indian.

3.

That this action is brought pursuant to 42 U.S.C § 1981 and as such, this Court has
federal question jurisdiction over this cause pursuant to 28 U.S.C. 1331.

4.

That this jurisdiction is also based on the diversity standing of Delphi Automotive
Systems, LLC, said corporation being a citizen of a different state and a foreign corporation from
Michigan pursuant to 28 U.S.C § 1332.

5.

That at all times material hereto, the Plaintiffs, HES and Robert Backie, are within the
"zone of interest" protected by 42 U.S.C § 1981.

2

EXHIBIT
1

6.

That furthermore, HES and Robert Backie, have the "racial identity" to also sufficiently fall within the "zone of interest" to have prudential standing to bring this action under Section 42 U.S.C. § 1981.

7.

That Plaintiff also brings claims of promissory estoppel, breach of contract, breach of contract (UCC), as well as violations of Michigan Public Policy, fraud and misrepresentation premised on Michigan Law and this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

8.

That furthermore, Plaintiffs' sale of goods to the Defendant is also governed by the Uniform Commercial Code.

9.

That furthermore, the amount in controversy exceeds the sum of 20 million dollars, exclusive of costs, interest and attorney fees.

**Factual Background**

10.

That indicated above, both Plaintiffs are a member of a certified minority group protected by 42 USC § 1981.

11.

That the Plaintiff, HES, was incorporated in 1986.

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197  (989) 752-1414
Website: Mastromarco-Jahn.com

3

12.

That Plaintiffs were encouraged by the Defendant to obtain minority status and if said status was obtained, Plaintiffs would be given favored status by Defendant, pursuant to their internal policies.

13.

That Plaintiffs did in fact obtain minority status based upon the specific urging of GM/Saginaw Steering Gear (later Delphi) personnel. (See Exhibit 1).

14.

That Plaintiffs were also told that GM/Saginaw Steering Gear and later Delphi, did have a policy and procedure and had certain "buyer responsibilities" and that once minority status was achieved that the following would be initiated by Delphi:

a.  Refer promising, minority suppliers to local minority supplier coordinators as possible candidates for the Mentorship Program;

b.  Refer competitive minority suppliers to other organizations to expand their opportunities;

c.  They would ensure minority suppliers purchasing goals were included in the buyers (Delphi is the buyer) annual business plan;

d.  They would ensure mentees (minorities) were included on all appropriate bidding lists;

e.  They would ensure tier 1 suppliers (non-minorities) are actively supporting the Mentorship Program through their tier 2 (minority) sourcing;

f.  Employ the "Bridge Solution" when a mainstream (mentee(minority) company is competitive or a defending minority source is involved;

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197  (989) 752-1414
Website: Mastromarco-Jahn.com

4

g.    Actively promote through their Vice-President of Global Purchasing of Delphi Automotive Systems, LLC so as to "build a network of business relationships and rapidly increase [purchases] from the minority supplier";

15.

That the Plaintiff, HES, did obtain minority status and continued their business with Delphi Automotive Systems LLC.

16.

That Defendant does not have a minority status; however, upon information and belief the Defendant bids on government contracts with the State of Michigan as well as the federal government.

17.

That furthermore and as will be set forth below in further detail, Delphi Automotive Systems LLC used the minority status of the Plaintiff, HES, to the Plaintiff, HES' detriment and, to the detriment of Plaintiff, Robert Backie, majority shareholder of HES.

18.

That as will be set forth in further detail, the Defendant, Delphi Automotive Systems LLC, did discriminate against the Plaintiffs herein, by using their minority status to drive down the cost of other third-party suppliers, and then, after successfully using Plaintiffs' minority status to drive down prices they then discriminated further by awarding contracts to the third-party suppliers to the detriment of the Plaintiffs because Plaintiffs were a minority.

19.

That the Defendant did discriminate against the Plaintiffs by using the policies of Delphi as it would relate to Plaintiffs' minority status and by misrepresenting its business need for

services and parts (a statement of existing fact) so as to induce the Plaintiff to expend resources on the guarantee (or in the alternative, a bad-faith promise) of business contracts so that Defendant could drive down prices with the present intention of awarding the contracts to non-minority business suppliers or to drive down the prices of existing non-minority suppliers who have existing contracts to gain a competitive advantage to the Plaintiffs' detriment.

**Juarez, Mexico**

20.

That Plaintiff, Robert Backie, became acquainted with Mr. Gregg A. Novak, with Worldwide Purchasing Delphi Energy and Management Systems, in approximately January of 1995.

21.

That Plaintiff, Robert Backie's, relationship with Mr. Novak continued when he was transferred from Flint, Michigan, to Delphi's new Technical Center in Juarez, Mexico later in 1995/1996.

22.

That apparently Delphi began experiencing problems with prototype machining availabilities in the Juarez, Mexico, area sometime in 1996.

23.

And as such, and in approximately April of 1996, Mr. Novak introduced Plaintiffs to representatives from Delphi including Tony Kazyod, Jerry Heller, Roberto Martinez and Enrique Chavez, along with several of Defendant's Project Engineers, who sought from Plaintiffs a capability profile and an engineering prototype support center proposal to support Defendant's Delphi-Juarez operations.

24.

The Plaintiffs were informed that the support proposal was to be modeled after Plaintiffs' Ancon Prototype Facility which was an approved minority source for Defendant.

25.

That specifically the Prototype Support Center was to supply Delphi with prototype machines, parts, assembly, inspection and related services for Defendants' Juarez facility.

26.

That in August of 1996, at the urging of Delphi, HES did organize a team of corporate executives to concentrate their efforts on the Delphi-Juarez program, including the request and requirement of sending sales representatives to live in neighboring El Paso, Texas, for purposes of meeting Delphi-Juarez's demands (Defendant's present need for services and parts).

27.

That specifically Plaintiffs were requested to attend a series of meetings in Juarez, Mexico, put on by Defendant Delphi in the summer and fall of 1996.

28.

That in July, 1996, Plaintiffs participated in a meeting with Delphi where Mr. Richard Bolt, a Senior Vice President for Republic Bank, was in attendance whereby Delphi misrepresented facts concerning the exclusive nature of Plaintiff's proposed facility along with its existing need for services and parts in Juarez, Mexico, with the knowledge that Plaintiff and the bank were relying on this information for financing and for their business plan, and Defendant specifically knew that this information would be utilized by the Plaintiff and the bank in their business plan for purposes of financing.

29.

That furthermore HES was assured by Delphi representatives that if in fact they made the financial commitment, and established a manufacturing facility in El Paso, Texas, that they would be given the exclusive contract to serve the present needs (as Defendant misrepresented said need for services and parts to be) of Defendant.

30.

That furthermore specific information was given in the form of a description of the type of parts that they had an on-going need for and the equipment which was needed to perform the services pertaining to those parts including but not limited to CNC machining centers, CNC lathes, Wire & Solid EDM machines, co-ordinate measuring machines for inspection, hydraulic presses, surface grinders, assorted work stations, stock/saw support tooling, and also assorted computer and information technology equipment required for the office, etc., which further confirmed the bad-faith promises made by Delphi concerning the Delphi-Juarez relationship with HES.

31.

That in point of fact, and as a result of these false representations of existing fact, confirmation, assurances and promises (bad-faith), Republic Bank did give the go ahead to HES for purposes of financing the project at issue.

32.

That Defendants agents, at the aforesaid meetings referred to above, further informed Plaintiffs that if Plaintiffs' proposal was accepted by Defendant, the Plaintiffs would be the exclusive Prototype Support Center for Defendants' Juarez facility for the filing of the programs

7

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

8

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

and that the facility had an on-going need for a Prototype Support Center and the services which it would supply.

33.

That as such, and at Defendants request, Plaintiff did provide a written Proposal/Agreement which is attached as Exhibit 1A.

34.

That furthermore, and at Defendants request, and as discussed in Paragraph 23 above, Plaintiff provided an "Engineering Prototype Support Center Proposal" (See Exhibit 1A) and a "Capability Profile." (See Exhibit 2).

35.

Further, at Delphi's request, HES personnel made multiple trips to El Paso, Texas, including the President of HES, Vice-President of Manufacturing, Vice-President of Sales, Director of Quality Control, Director of Manufacturing and Facilities and the Manager of the Ancon Division of HES.

36.

That following the above-mentioned meetings the 'Defendant accepted Plaintiffs' proposal in October of 1996.

37.

That following the series of meetings referred to above and following Defendant's acceptance of the proposal, the Plaintiffs did, as a result of Delphi's misrepresentation of its present need for services and parts (a statement of existing fact) along with its representations that Defendant would exclusively utilize Plaintiffs' facility, install a "state of the art" machine shop and inspection facility in a leased site in El Paso, Texas in reliance on Defendant's

9

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

misrepresentation of its present need for services and parts and also based on bad-faith promises made by the Defendant as set forth above for the purposes of meeting the Defendant's present need for services and parts at the Delphi-Juarez facility as it was represented by the Defendant.

38.

That Plaintiffs' Plant opened as set forth in their Proposal on or about February 1, 1997, and the opening was attended by Delphi personnel amid fanfare with local dignitaries.

39.

That all in all, and with the knowledge of Delphi, HES had an initial investment of over $1.35 million dollars in the El Paso operation.

40.

That the Defendant breached its Agreement by not honoring its agreement to have Plaintiffs serve as the exclusive source for prototype services and mislead Plaintiffs as to their true intentions.

41.

That despite the fact that Defendants' facility continued to operate, the Plaintiffs did not receive the promised business.

42.

That the above investment was all lost as were the profits when the Plaintiffs were forced to close down their Texas Facility in approximately October of 2000, as a result of Defendant's misrepresentations as to Plaintiffs' exclusive contract along with its misrepresentations as to its present need for services and parts as well as its bad-faith promise to provide business to the Plaintiffs.

10

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

43.

That the Plaintiffs' damages include the expense of an A2 LA Laboratory Certification and Inspection equipment which was never used, or if used, to a minimal extent. All such certification was required by Delphi for the El Paso site.

44.

That as a result of Defendant's misrepresentation of the exclusive nature of Plaintiffs' contract, along with its misrepresentations as to its present need for services and parts and as a result of the bad-faith promises made to the Plaintiffs, Plaintiffs were forced to lay off personnel beginning in approximately July of 2000.

45.

That Delphi did refuse to pay the delinquent invoices for the site.

46.

That as such, Plaintiffs have been severely damaged, including breach of contract, revenues and expenditures.

### HES Flint Manufacturing Division

47.

That in approximately October, 1999, Delphi, through its agents, Duane Bollinger, Director of Purchasing, Walter R. Jennings, Manager of Minority Supplier Development, Jodi Wood, Purchasing Department, Steven Dawe, Purchasing Manager Contract Manufacturing, and Dale Kowaleski, Purchasing Department, approached Plaintiffs for purposes of providing four multiple additional projects with high volume production.

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

11

48.

That in subsequent meetings Defendant Delphi did provide yearly volumes (based on statements of present need for services and parts) of what projects and programs would be supplied to HES (a bad-faith promise), and Delphi also agreed to supply all the necessary and suitable machinery and tooling for the jobs.

49.

The Defendant entered into a contract with Plaintiff that upon the opening of Plaintiff's facility, the Plaintiff would receive 7,586,999 parts in year one of its operation, with a probable increase of 360,878 parts above and beyond the 7,586,999 parts within year one, and a follow-up increase of 2,713,840 parts in year one to two above and beyond the above mentioned quantities for the life of the programs. (See Exhibit 3 and Plaintiff HES' Manufacturing Program Log - Volume Per Year)

50.

That at the end of year one, the Plaintiff had only received thirty-three percent of the parts ordered.

51.

That Delphi also enticed HES to establish a Plant in the "Flint area" with its above-mentioned misrepresentations of its present need for services and parts and bad-faith promises.

52.

That the Plaintiffs were further enticed to establish the Plant in the Flint Area by Defendant's ongoing representations, from the above-mentioned representatives, as to the preferential treatment which was to provided to minority corporations along with Defendant's repeated acknowledgment as to Plaintiffs' minority status.

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

12

53.

That Defendant Delphi also required that the Plaintiff lease a building, provide a Plant layout, and receive approval from Delphi Saginaw Management for the lease which then intended to enter.

54.

That in reliance on Defendant's representations of its present need for services and parts and in further reliance on Defendant's bad-faith promises, HES did contract with Cooper Real Estate in Flint, Michigan for purposes of finding a suitable accommodation which would satisfy Delphi's Saginaw Purchasing and Manufacturing.

55.

That Delphi's Supervisors and Representatives specifically chose the location for the HES Plant, and had in fact turned down several other locations because "we don't want this facility being too close to any union activity."

56.

That in point of fact, the Plaintiff did maintain and enter into contractual relations based upon Delphi's representation of its present need for services and parts and in reliance on its bad-faith promises of future business, and based upon Plaintiffs' reliance upon Defendant's representations of preferential treatment towards Plaintiffs as a minority business, after locating a building at 5117 South Dort Highway, Flint, Michigan.

57.

That said building, both office and distribution facilities, consisted of over 47,000 square feet of office and warehouse space, including parking and two easements for driveways. (See Exhibit 4).

58.

That as such, HES entered into a lease term for the building for five years with an annual base rent of $227,950.00, said lease also requiring a security deposit of $25,000 triple net.

59.

That Plaintiff, HES, did take possession of said building on March 27, 2000.

60.

That in fact, the machines that Delphi supplied for purposes of the HES Plant, were inferior, old, antiquated and not suitable for the jobs.

61.

That furthermore, Defendants did not provide the contracts, to the level of production that they agreed to supply (based on representations of its present need for services and parts) to the Plaintiff once the Plaintiff set up the Flint operation.

62.

That specifically, Plaintiffs did meet with the Defendants to explain the losses that they had been incurring on September 28, 2001, and specifically discussed with Delphi their failure to meet the promised obligations and contractual agreement. Please see Exhibit 5 which is the Organizational Financial Overview, which was provided to Ray Campbell, Vice President of Worldwide Purchasing for Delphi Automotive.

63.

That specifically, Plaintiffs did meet with the Defendants to explain the losses that they had been incurring on September 28, 2001, and specifically discussed with Delphi their failure to meet the promised obligations and contractual agreement. Please see Exhibit 5 which is the

Organizational Financial Overview, which was provided to Ray Campbell, Vice President of Worldwide Purchasing for Delphi Automotive.

64.

That when this was brought to the Defendant Delphi's attention, Defendants immediately began to threaten HES' operations in Saginaw and Flint.

65.

That specifically Defendants did state that notwithstanding the quotes which were based on Delphi's misrepresented present need for services and parts (a statement of existing fact) by Delphi, that Delphi was intending to hold HES to the bidding contract price based on the high volume of units that Delphi had promised (in bad-faith) but not supplied.

66.

That furthermore, at that point Delphi threatened to pull all contracts and breach all existing multi-year contracts with the Plaintiff, HES.

67.

That furthermore, Defendants did not provide the contracted for and projected business, and in fact, did provide bogus representations of what they intended to provide to the Plaintiffs, so they could utilize the bids so as to specifically drive down the bid prices of other non-minority third party bidders and those who had existing contracts for those same parts.

68.

That instead of providing the orders as agreed upon, the Defendant eventually provided those orders to non-minority businesses.

69.

That Defendant in fact did make good on its bad-faith threat and did pull all contracts and equipment, in breach of said contracts from the Plaintiff in all their Saginaw and Flint Plants and provided the equipment and contracts to non-minority companies contributing to the demise of HE Services Flint facility in July of 2003.

70.

That because of the Defendant Delphi's actions herein, Plaintiff has suffered losses in the Flint location alone that exceed $10.6 million dollars and losses in setup of over $1.83 million dollars.

71.

That Defendant Delphi's decision to move equipment from a key minority supplier of 17 years did proximately contribute to the demise of HE Services as a whole in April 2004.

### EX-CELL-O Grinding Machine XJ 690

72.

That in early 1999 HES was approached by Mr. Bruce Waslusky and Dave McGregor who were both with Delphi purchasing in Saginaw, Michigan.

73.

That on November 1, 1999, Defendant in the purchase order # S3B00028, to reimburse Plaintiff $621,696 for the purchase of the Ex-Cell-O Grinding Machine XJ 690 over three years, and further agreed to purchase a minimum of 7000 pieces of twelve specific parts on an annual basis for three years at $130.70 for each piece.

74.

That pursuant to the purchase order the machine was to be designed per Defendants' specifications and built by the manufacturer of Defendants' choosing, and that the machine as designed by Defendant would be capable of making the twelve specific parts in the quantity as set forth above.

75.

That the Plaintiffs accepted Defendant's offer on December 14, 1999, and purchased the machine (PO 5351005T).

76.

That Delphi orchestrated, with their engineers, the design of the machine, and required it to be equipped with "fanuc" controls as opposed to "scimen" controls that were normally provided with the machine by EX-CELL-O.

77.

That in fact, Defendant Delphi did interfere and exercise control over its manufacturer of choice EX-CELL-O on the actual design of the machine, which as noted herein and which precipitated the problems which later occurred with the machine.

78.

That the machine as designed by the Defendant was delivered by the manufacturer of Defendant's choosing to the Plaintiffs in March of 2002.

79.

That Plaintiffs immediately learned upon the delivery and installation of the machine, that the machine was incapable of making the 7000 parts annually for two of the twelve parts and was wholly incapable of producing of any quantity of ten of the twelve different part designs.

80.

Further, the Defendant submitted orders for less than five percent of the 7000 pieces which the Defendant had agreed to order on an annual basis.

81.

That instead of submitting orders for the above-mentioned parts to the Plaintiffs, the Defendant instead submitted orders for those parts to a non-minority corporation "Ranger Tool & Die Corporation", and paid the non-minority corporation more money per piece then Defendant was paying the Plaintiffs for the same piece, and the Defendant refused to pay the Plaintiffs the same price.

82.

That in point of fact, Defendants conduct in giving the above-mentioned business to a non-minority corporation was contrary to Defendant's earlier promise (in bad-faith) to the Plaintiffs that if Plaintiffs purchased said machine, that the Defendant Delphi would purchase spindle shafts (based on representations of its present need for spindle shafts, i.e., a statement of existing fact) over a period of many years, and that a portion of the purchases would be delegated or designated toward the purchase of the machine.

83.

That as such, Plaintiff has been damaged in projected profits, downtime and lost labor due to Defendant Delphi's actions herein.

84.

That all of Defendants actions were motivated in part, because of the Defendants minority status, to the Plaintiffs detriment, and in violation of the anti-discrimination laws.

## COUNT 1 - 42 U.S.C. § 1981

85.

That the Plaintiffs hereby incorporate paragraphs 1 through 84 of the factual allegations word for word and paragraph by paragraph as if restated herein.

86.

That Plaintiff's have standing to commence this action brought pursuant to 42 U.S.C. § 1981 because a harm has been suffered which is cognizable under section 1981 and has acquired an imputed racial identity.

87.

That Plaintiffs are within the statutory zone of interest to have prudential standing to bring an action under section 1981.

88.

That Plaintiff HES is a minority-owned technology services contractor certified by the United States Small Business Administration (SBA) as a firm owned and operated by socially and economically disadvantaged individuals, eligible to receive federal contracts under the SBA's business development program. 42 U.S.C. 637.

89.

That HES' majority shareholder, Robert Backie, is a Native American Chippewa Indian.

90.

That Plaintiffs suffered a violation of section 1981 which states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

19

MASTROMARCO & JAIN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197  (989) 752-1414
Website: Mastromarco-Jain.com

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

91.

That 42 U.S.C. § 1981(b) defines "make and enforce contracts" as follows: "For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

92.

That Defendant violated section 1981 when it breached existing contractual agreements, made false promises and misrepresentations regarding contractual negotiations and when they gave non-minority companies preferential treatment, to the detriment of Plaintiffs, as set forth more fully in Plaintiffs' statement of facts.

93.

That as a result of Defendant's violations of section 1981, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

94.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

20

MASTROMARCO & JAIN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197  (989) 752-1414
Website: Mastromarco-Jain.com

## COUNT II - INNOCENT/NEGLIGENT MISREPRESENTATIONS

95.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations and paragraphs 85 through 94 of Count I word for word and paragraph by paragraph as if restated herein.

96.

That Plaintiffs claim that Defendant made innocent or negligent misrepresentations of a material fact (as set forth more fully in the factual allegations).

97.

That the misrepresentation was made in connection with the making of a contract between Plaintiffs and Defendant.

98.

That the misrepresentation was false when made, and/or were made negligently.

99.

That Plaintiffs would not have entered into the contract if Defendant had not made the representations.

100.

That Plaintiffs suffered economic and non-economic damages as a result of entering into the contract.

101.

That Plaintiffs loss benefited the Defendant.

102.

That as a result of Defendant's misrepresentation, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which, the Plaintiffs further seek.

103.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

## COUNT III - FRAUDULENT MISREPRESENTATION

104.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, word for word and paragraph by paragraph as if restated herein.

105.

That Defendant made material representations as set forth more fully above in the statement of facts.

106.

That said material representations were false.

107.

That at the time Defendant made the material representations, the Defendant knew that the representations were false, or made the representations recklessly, without knowledge of its truth as a positive assertion.

108.

That the Defendant made the representations with the intention that the Plaintiffs would act upon said representations.

109.

That the Plaintiffs acted in reliance on the representations as set forth more fully in the statement of facts.

110.

That the Plaintiffs suffered damage as a result.

111.

That as a result of Defendant's misrepresentation, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

112.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

## COUNT IV - SILENT FRAUD

113.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, paragraphs 104 through 112 of Count III, word for word and paragraph by paragraph as if restated herein.

114.

That Defendant made material false representations to the Plaintiffs as set forth more fully in the statement of facts.

115.

That the material representations were known by the Defendant to be false or were made recklessly without knowledge of its truth or falsity.

116.

That Defendant intended that the Plaintiffs rely on the representations.

117.

That Plaintiffs in fact acted upon the representations made by the Defendant.

118.

That Plaintiffs thereby suffered injury.

119.

That Defendant had a legal or equitable duty of disclosure that the suppression of information constitutes silent fraud.

120.

That as a result of Defendant's misrepresentation and suppression of information, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

121.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

COUNT V - FRAUD BASED ON BAD-FAITH PROMISE

122.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, paragraphs 104 through 112 of Count III, paragraphs 113 through 121 of Count IV, word for word and paragraph by paragraph as if restated herein.

123.

That Defendant defrauded it by making bad-faith promises (as set forth more fully in Plaintiffs' factual allegations).

124.

That Defendant made bad-faith promises of future conduct to Plaintiffs as set forth more fully in the statement of facts.

25

125.

That at the time Defendant made these promises it did not intend to keep the promises.

126.

That Defendants made these promises with the intent that Plaintiff rely on said promises.

127.

That the Plaintiffs relied on said promises to their detriment.

128.

That as a result of Defendant's fraud based on a bad-faith promise, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

129.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

COUNT VI - PROMISSORY ESTOPPEL

130.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, paragraphs 104 through 112 of Count III, paragraphs 113 through 121 of Count IV, paragraphs 122 through 129 of Count V, word for word and paragraph by paragraph as if restated herein.

26

131.

That Defendant made promises, as set forth in the preceding and subsequent paragraphs, to the Plaintiff that were clear and definite as set forth more fully in the statement of facts.

132.

That when said promises were made, the Defendant knew or should reasonably have expected that these promises would induce the Plaintiffs to take certain action.

133.

That the Plaintiffs did take action in reliance on the promises made by Defendant.

134.

That Plaintiffs were damaged as a result of their reliance on the promises made by the Defendant.

135.

That as a result of Defendant's conduct, Plaintiffs have suffered economic damages in excess of 20 Million dollars, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

136.

That Plaintiffs have also suffered non-economic loss including emotional distress, anguish, mortification, humiliation, and loss of pleasures of life.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount to compensate the Plaintiffs for the damages as set forth herein.

27

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

## COUNT VII - CONTRACT ACTION-UCC

137.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, paragraphs 104 through 112 of Count III, paragraphs 113 through 121 of Count IV, paragraphs 122 through 129 of Count V, paragraphs 130 through 136 of Count VI, word for word and paragraph by paragraph as if restated herein.

138.

That Plaintiffs bring this claim as a seller against Defendant, a buyer, for the sale of goods.

139.

That Defendant entered into an agreement with Plaintiffs by its words and conduct which manifested its intent to make a contract.

140.

That a contract existed between Plaintiffs and the Defendant. MCL 440.2206; 440.2207.

141.

That the Defendant submitted purchase orders to the Plaintiff which were in turn accepted by the Plaintiff who provided the requested goods along with an invoice.

142.

That Defendant, the buyer, breached the contract by failing to pay on invoices in excess of $400,000, along with failing to comply and fulfill its contractual obligations towards Plaintiffs

28

MASTROMARCO & JAHN, P.C., 1024 N. Michigan Avenue, P.O. Box 3197, Saginaw, MI 48605-3197 (989) 752-1414
Website: Mastromarco-Jahn.com

facility in Flint, Michigan, and with regards to the Ex-Cell-O machine as set forth earlier in this Complaint.

143.

That the amount which remains unpaid includes as an example those set forth in Plaintiffs Delphi Accounts Receivable Reconciliation. (See Exhibit 6).

144.

That Plaintiffs were damaged by the breach of contract.

145.

That this action is brought pursuant to MCL 440.2709 as a result of Defendant's breach by nonpayment after acceptance of the goods.

146.

That Plaintiffs are entitled to the price due under the contract together with any commercially reasonable charges, expenses the Plaintiffs incurred as a result of Defendant's breach.

147.

That as a result of Defendant's breach of contract, Plaintiffs have suffered economic damages in excess of $400,000, exclusive of attorney fees, costs, and interest.

## COUNT VIII - CONTRACT ACTION

148.

That Plaintiffs hereby incorporate Paragraphs 1 through 84 of the factual allegations, paragraphs 85 through 94 of Count I, paragraphs 95 through 103 of Count II, paragraphs 104 through 112 of Count III, paragraphs 113 through 121 of Count IV, paragraphs 122 through 129

29

of Count V, paragraphs 130 through 136 of Count VI, paragraphs 137 through 147 of Count VII, word for word and paragraph by paragraph as if restated herein.

149.

That Plaintiffs bring this claim as a seller and provider of services against Defendant, a buyer, for those services.

150.

That Defendant entered into an agreement with Plaintiffs by its words and conduct which manifested its intent to make a contract.

151.

That a contract existed between Plaintiffs and the Defendant.

152.

That the Defendant submitted purchase orders to the Plaintiff which were in turn accepted by the Plaintiff who provided the requested services along with an invoice.

153.

That Defendant, the buyer, breached the contract by failing to pay on invoices in excess of $400,000, along with failing to comply and fulfill its contractual obligations towards Plaintiffs facility in Texas, in Flint, Michigan, and with regards to the Ex-Cell-O machine as set forth earlier in this Complaint.

154.

That the amount which remains unpaid includes as an example those set forth in Plaintiffs Delphi Accounts Receivable Reconciliation. (See Exhibit 6).

155.

That Plaintiffs were damaged by the breach of contract.

30

156.    That this action is brought as a result of Defendant's breach by nonpayment after acceptance of the services.

157.    That Plaintiffs are entitled to the price due under the contract together with any commercially reasonable charges, expenses the Plaintiffs incurred as a result of Defendant's breach.

158.    That as a result of Defendant's breach of contract, Plaintiffs have suffered economic damages in excess of $400,000, exclusive of attorney fees, costs, and interest which the Plaintiffs further seek.

WHEREFORE, Plaintiff requests that this Honorable Court enter Judgment in favor of the Plaintiffs and award damages in an amount in excess of 20 Million Dollars to compensate the Plaintiffs for the damages as set forth herein.

PREPARED BY:

MASTROMARCO & JAHN, P.C.

DATED:    6/9    2005

/s/Russell C. Babcock
RUSSELL C. BABCOCK (P57662)
Attorneys for Plaintiff
1024 N. Michigan Ave., P.O. Box 3197
Saginaw, MI 48605-3197
(989) 732-1414

31

## RELIANCE UPON DEMAND FOR TRIAL BY JURY

NOW COMES, the above-entitled Plaintiffs, by and through their attorneys, MASTROMARCO & JAHN, P.C., and hereby relies upon their earlier demand for a trial by jury of all issues in this cause of action unless expressly waived.

PREPARED BY:

MASTROMARCO & JAHN, P.C.

DATED:    6/9    2005

/s/Russell C. Babcock
RUSSELL C. BABCOCK (P57662)
Attorneys for Plaintiff
1024 N. Michigan Ave., P.O. Box 3197
Saginaw, MI 48605-3197
(989) 732-1414

32

## RELIANCE UPON EARLIER DEMAND FOR PRE-TRIAL CONFERENCE

*NOW COMES,* the above-entitled Plaintiffs, by and through their attorneys,

MASTROMARCO & JAHN, P.C., and hereby relies upon their earlier demand for a Pre-Trial

Conference.

PREPARED BY:

MASTROMARCO & JAHN, P.C.

DATED: ___6/9___ 2005

/s/Russell C. Babcock
RUSSELL C. BABCOCK (P57662)
Attorneys for Plaintiff
1024 N Michigan Ave., P.O. Box 3197
Saginaw, MI 48605-3197
(989) 752-1414

33

## PROOF OF SERVICE

I hereby certify that on ___June 9, 2005___ I presented the foregoing paper to the

Clerk of the Court for filing and uploading to the ECF system which will send

notification of such filing to the following: **Mr. Donald R. Parshall, Jr.** and I hereby

certify that I have mailed by United States Postal Service the document to the following

non ECF participants: **Mr. Arthur T. Lippert, Jr.**

/s/Russell C. Babcock
RUSSELL C.BABCOCK (P57662)

**Business Address:**
1024 North Michigan Avenue
P.O. Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414 Telephone
(989) 752-6202 Fax
Russellbabcock@aol.com

34

H.E. SERVICES COMPANY and ROBERT BACKIE v DELPHI
AUTOMOTIVE SYSTEMS, LLC.
File No. 05-10053
Hon. David M. Lawson

AMENDED COMPLAINT
EXHIBIT INDEX

| Exhibit # | Description |
|---|---|
| 1. | Minority Supplier Recognition |
| 1A. | H.E.S.-Ancon Tex-Mex Engineering/Prototype Support Center Proposal |
| 2. | H.E. Services Capability Profile |
| 3. | H.E. Services Manufacturing Program Log |
| 4. | Floor Plan |
| 5. | Organizational Financial Overview |
| 6. | Delphi Accounts Receivable Reconciliation |

---

G.M. RECOGNIZED MINORITY SUPPLIER

GM

Worldwide Purchasing

October 21, 1993

H.E. Services Co.
Attn: Mr. Robert L. Backie, President
3870 East Washington
Saginaw, MI 48601

Dear Mr. Backie:

Thank you for supplying our office with the requested documentation regarding H.E. SERVICES CO.'s certification as a minority-owned enterprise. On the basis of the information submitted, we are pleased to inform you that H.E. SERVICES COMPANY currently has a minority-owned status at General Motors.

Attached, for your information, is a list of GM's Worldwide Purchasing Minority Coordinators whom you may wish to contact concerning potential sales to General Motors.

Sincerely,

*Jim Conley*

James S. Conley, Jr.
Director
Minority Supplier Development

/ct
Enclosure

North American Operations
30400 Mound Road, Warren, MI 48090-9015

PLAINTIFF'S
EXHIBIT

# H.E.S.-ANCON
# TEX-MEX
# ENGINEERING/PROTOTYPE
# SUPPORT CENTER
# PROPOSAL

October, 1996

tabbies
PLAINTIFF'S
EXHIBIT
1 A

# Table of Contents

| | | | PAGE |
|---|---|---|---|
| 1.0 | Statement of Work | | 1, 2 |
| | 1.1 | Introduction | |
| | 1.2 | Working Mission | |
| | 1.3 | Deliverables | |
| | 1.4 | Tasks | |
| 2.0 | Support Services | | 3 |
| | 2.1 | Capabilities/Support | |
| | 2.2 | Special Requirements | |
| 3.0 | Logistics | | 4 |
| | 3.1 | Customer/Supplier Distribution | |
| | 3.2 | Proximity to Customers | |
| | 3.3 | Shipping Requirements | |
| | 3.4 | Required Systems | |
| 4.0 | Influencing Factors | | 5 |
| | 4.1 | Government Issues | |
| | 4.2 | Local Content | |
| | 4.3 | Proprietary | |
| 5.0 | Processes | | 6 |
| | 5.1 | Key Technologies | |
| | 5.2 | Lean Process Flow | |

ii

PAGE

6.0    Resources                                                    7
   6.1    Engineering support
   6.2    Skilled Trades
   6.3    Projected Headcount
   6.4    Innovative Approaches
   6.5    Training

7.0    Facilities/Timing                                            8
   7.1    Square Foot Requirements (Phase I)
   7.2    Timing
   7.3    Future Floorspace Requirements (Phase II)
   7.4    Building Characteristics
   7.5    Equipment Spec/Install
   7.6    Required Utilities

8.0    Conclusion                                                   9

Appendix A                                                          10
   Facility Layout
   Timing

iii

# 1.0 *Statement of Work*

Provide facilities, labor and materials to support Engineering - Prototype - Machining requirements of Tex-Mex Operations.

## 1.1 Introduction

The following will provide you with an overview of H.E.S. Services/Ancon objectives necessary to meet the requirements of an engineering/prototype support facility.

H.E. Services is confident we can provide the necessary support to meet engineering/manufacturing requirements. The following proposal will review our intent and timing as well as the proposed structure to perform services. The capabilities of our operations are outlined.

To meet today's emerging needs in the automotive industry, H.E. Services can provide a complete engineering service organization capable of handling manufacturing support requirements. We are part of your Engineering Team, an extension of your organization. We are H.E. Services.

## 1.2 Working Mission

Maintain an unrelenting commitment to:

• Always being in tune with the voice of the customer

• Work in "full partnership" with the customer

• Being a "full service" supplier

• Striving for "continuous improvement"

• Operating with the highest integrity

• Providing the best in cost, quality and timing

• Caring for the well-being and advancement of our people

1

## 1.3    Deliverables

1. Product and Machine Tool Engineering. - Build and Prototype Support to OEM and Tier One customers acting as primary source.

## 1.4    Tasks

1. Procure equipment and install per layout by January, 1997.
2. Debug and Qualify all machine and inspection equipment.
3. Provide all skilled trade support as required.
4. Procure all inventory materials for prototype/machine tool support.
5. Procure all perishables for prototype and machine tool support.
6. Schedule and expedite all components.
7. Set up proper systems for material, processing traceability.
8. Manage schedules (Build and Ship).
9. Maintain all appropriate documentation (process control, shipping, QS-9000, CP11, ect.).

# 2.0    *Support Services*

## 2.1    Capabilities/Support

•Product Engineering
•Machine/Test Apparatus Design
•Prototype Support
•Machine/Fixture Build
•Quality Inspection Services
•Technical Illustration Support
•Testing Support
•Technical Contract Support
•Managed Program Capability
•Manufacturing/Logistics Support

## 2.2    Special Requirements

H.E.S. - Ancon and its affiliates will provide QS-9000, CP11 and CP3 certification as required. Plan for certification will be provided upon request.

## 3.0 _Logistics_

### 3.1 Customer/Supplier Distribution

The targeted distribution includes potential customers in El Paso, Texas and Juarez, Mexico.

### 3.2 Proximity to Customer

Geographical location of the facility will be a primary industrial area of El Paso, Texas allowing close proximity to airport and border bridges. Location will facilitate synchronized (JIT) deliveries of materials to the next manufacturing process.

### 3.3 Shipping Requirements

H.E.S. - Ancon will adhere to practices of lean concepts and minimum inventories.

### 3.4 Required Systems

H.E.S. - Ancon will commit to any necessary systems for coordination of logistics and materials to meet customer requirements.

1

4

## 4.0 _Influencing Factors_

### 4.1 Government Issues

None known.

### 4.2 Local content

No local content requirements at this time.

### 4.3 Proprietary

As always, security of customer engineering, products and processes will be treated with appropriate discretion.

1

5

## 5.0 Processes

### 5.1 Key Technologies

"High Tech" and unusual processes will be applied to meet cost, quality and timing objectives of customer.

### 5.2 Lean Process Flow

Lean concepts will allow built-in error proofing. Innovative staffing will provide the flexibility to respond to shifts in volume and design changes by increasing and decreasing headcount when available.

6

## 6.0 Resources

### 6.1 Engineering Support

Product, Process, and Controls engineering can be provided by H.E.S. - Ancon. Existing knowledge and technology can be potentially transferred physically or via electronically.

### 6.2 Skilled Trades

Prototype and supporting staff will be recruited or transferred from existing sites as required.

### 6.3 Projected Headcount

Flexibility and versatility to manpower requirements will allow H.E.S. - Ancon the necessary means to address customer needs.

### 6.4 Innovative Approaches

Multiple shift utilization of equipment will allow accelerated turn-around of customer requirements while addressing cost cutting issues.

### 6.5 Training

On-the-job training, seminars, and apprenticeship programs will be administered locally to address skill sets to meet job requirements.

7

## 7.0 _Facilities/Timing_

**7.1**   Square foot requirements (Phase I)

Initial square footage requirements will include 14,300 expandable to 28,600 square feet (see layout).

**7.2**   Timing

Facility readiness is projected for February 1, 1997 in proposed brand new facility.

**7.3**   Future Floorspace Requirements (Phase II)

Unlimited floorspace and location including Mexico would be made available to meet customer objectives dependent on nature of program.

**7.4**   Building Characteristics

Building will house multiple offices and climate controlled EDM and Quality Assurance areas. Industrial space will include necessary utilities (electrical, air, water) and data interchange for CNC machining. Facility includes drive through bays and multiple truck bays for material handling.

**7.5**   Equipment Spec/Install

Equipment installed mid December and January, 1997 per the enclosed timeline.

**7.6**   Required Utilities

Facility will have 480V 3 phase power along with standard 110V. Additional utility requirements will be made available per customer request.

8

## 8.0 _Conclusion_

The enclosed proposal has been compiled through customer directives and extensive experience in the discipline as explained. Additional input and requirements will be met through H.E.S. - Ancon versatility and flexibility to meet the objectives of our customer.

Contacts:

Robert Backie, CEO

Timothy Fortier, President

Wesley Yee, Chief Financial Officer / Exec. V.P.

Raymond Atwood, Prototype Operations Mgr.

Robin Backie, Human Resources Director

ph. 517 / 753-9015 - or - 810 / 969-9810

9

1

Appendix

10



PROPOSED LAYOUT
TEXAS FACILITY

## H.E. SERVICES COMPANY
### TEX/MEX IMPLEMENTATION SCHEDULE

|  |  |  | 1996 | | | 1997 | |
| ID | TASK NAME | DUR | OCTOBER | NOVEMBER | DECEMBER | JANUARY | FEBRUARY |
|---|---|---|---|---|---|---|---|
| 1 | SCOPE DEFINED | 0W | X | | | | |
| 2 | MARKET RESEARCH | 5W | ▆▆▆ | | | | |
| 3 | EST. BUSINESS PLAN | 6W | ▆▆▆▆ | | | | |
| 4 | SITE SELECTION | 6W | ▆▆▆ | | | | |
| 5 | SITE SECURED | 0W | | X | | | |
| 6 | FACILITY READINESS | 8W | | ▆▆▆▆ | | | |
| 7 | EQUIPMENT INSTALLATION | 4W | | | ▆▆ | | |
| 8 | EQUIPMENT SET-UP/DEBUG | 4W | | | | ▆▆ | |
| 9 | STAFFING | 9W | | ▆▆▆▆▆ | | | |
| 10 | INITIATE START-UP | 0W | | | | X | |
| 11 | TRAINING | 9W | | | ▆▆▆ | ▆▆▆▆ | |
| 12 | CUSTOMER BASE ESTABLISHED | | | | | ▆▆▆ | ▆ |

10/28/96



CAPABILITY PROFILE

PLAINTIFF'S EXHIBIT 2

# H.E. SERVICES COMPANY

## CAPABILITY PROFILE

June 30, 1997

## INTRODUCTION

The following pages will provide you with an overview of H. E. Services engineering, testing, and manufacturing capabilities that can meet all your requirements.

Accordingly, the following provides the scope and quality of our current capabilities based on H.E. Services objectives of diversity and adaptability. To meet ever-changing client needs and the impact of changing technology, these two objectives deliver the most qualified engineering personnel possible.

Basic sections of the presentation detail the full range and flexibility of current facilities available for customer usage. Presentation language will address in particular, the areas of engineering, prototype, short run manufacturing and test capabilities.

Concepts including Value Management, Simultaneous Engineering, Four Phase and other programs associated with H. E. Services Total Project Management are also described.

H.E. Services currently functions under a minority owned status. We operate under P.L. 95-507 and other executive orders pertaining to ownership of a minority owned and controlled business. A copy of our annual certification is included in this package.

We recognize the importance of quality standards and procedure documentation. We have been approved for Q.S. 9000 certification as of June, 1997.

To meet today's and tomorrow's emerging needs in industry, H.E. Services provides you with a complete engineering service organization capable of handling all your technical support requirements. We are an extension of your engineering organization. We are H.E. Services Company.

# MISSION

Maintain an unrelenting commitment to:

- Always being in tune with the "voice of the customer"
- Working in "full partnership" with the customer
- Being a "full service" supplier
- Striving for "continuous improvement"
- Operating with the highest integrity
- Providing the best in cost, quality and timing
- Caring for the well-being and advancement of our people

## H.E. SERVICES COMPANY ENGINEERING AND MANUFACTURING OPERATIONS

The H.E. Services Company provides worldwide technical and engineering services for all industries.

The individual companies of The H.E.S. Group have been serving the industry for many years. Each company has built its reputation as an industry leader by providing its clients with technical services in a specific field. We value these traditional client relationships and continue to excel in these services.

More recently, we have been able to step beyond individual services to offer our clients INTEGRATED ENGINEERING. From inception to production, when integrated design, engineering, development and build services are needed, the H.E.S. Group has the flexibility to organize a complete team under centralized management.

H.E.S. Group is a valuable resource providing practical, innovative solutions to project needs—no matter how large or how small, in your facilities or ours. Through our extensive human resources and technology network, we are able to respond quickly and efficiently to any client needs.

## H.E.S. PRODUCT ENGINEERING
- Program Management
- Process Driven Design
- Design Concept to Integrated
- Engineering Programs
- Product Design/Development
- Assembly Tooling
- Specification Development
- Analytical/Statistical Consultation
- Cost Estimation Specialization
- CAD/CAM/CAE
- Vehicle Mechanical Components
- Gear Development Technology
- Steering Pumps & Columns
- Power Train Development

## H.E.S. MANUFACTURING SYSTEMS
- Specializing in the design, processing & build of sheet metal dies
- Checking Systems
- Stamped Gears
- Seal Belt Components
- Specialty Parts
- Manufacturing Consultation
- Gage Development

## H.E.S. PROTOTYPE
- Full CAD/CAM Capabilities
- Tooling Aids
- CNC Machining (Milling & Turning)
- Draw Die Development
- Electro Discharge Machining EDM
- Plunge & Wire
- Stampings
- Plastics
- Metal Parts Fabrication
- Sub-Assemblies
- Models (Visual, Display)
- Inspection & Verification GP-11 etc.
- Coordinate Measuring & Inspection
- CMM
- Compression Molding (Vac Forming)

## H.E.S. OFFICE SERVICES
- Temporary Secretarial
- Clerical and Support Personnel
- ENGINEERING
- Word Processing
- Desktop Publishing
- Graphs/Charts
- Laser Printing
- Resume
- Cover Letters

## H.E.S. TECHNICAL ILLUSTRATION SERVICES
- Die Sublimation Process
- Business Card Design
- Graphical Presentations/Overheads
- Compatible with most CAD Systems
- Technical Manuals & Graphic Aids

## H.E.S. DESIGN CONCEPTS
- Plant Layouts
- Design Concepts
- Product Definition
- Pre-Production & Design
- Documentation
- Scale and Full Size Model Making
- Complete Product Build Capabilities

## H.E.S. COMPUTER SERVICES
- Contract Software & Systems
- Engineering Expertise
- Document Management Systems
- Information Retrieval Systems
- System Integration Services
- Image Conversion

## H.E.S. TESTING
- Specialized Products
- Environmental
- Thermal
- Torsional
- Electrical
- Hydraulic/Mechanical Wear
- Data Acquisition Systems
- Vehicle
- Bench/Function

Fixture Development
- Validation
- Developmental

## H.E.S. QUALITY INSPECTION SERVICE
- CMM
- Optical Comparator
- Reverse Engineering
- Material Inspection
- Initial Sample Inspection
- Technical Competitive Analysis

## H.E.S. AFFILIATE GROUP RESOURCES
- Maintenance: IBM 3090 Model 200
- E. Prime 9755, AS/400 Model B40,
- Hewlett Packard System 58,
- Hewlett Packard System 70
- Plotters: Versatec 44" Versatec 52", Hewlett Packard 53", Versatec 42" pen plotter, Xynetics 54" Flatbed plotter, LA120 Decwriter
- Workstation: Over 300 operating AutoCAD, Autocad, CATIA, CGS, PDGS, CADAM, BRAVO 3, CIM/UNIC, Prime Unigraphics II, IGDES, GRIP, registered
- Trademark(s)
- Telephone & electronic data network
- Multi-axis NC machining
- Fire, CMM machine certification (24 ft. bed)
- Optical verification
- Five Tarus 3-axis CNC Mills
- Two & 3 dimensional Scale Control
- Laser cutting machine Multi-million lb/year Zinc alloy foundry capacity
- Eighteen hydraulic & mechanical presses, up to 1400 ton, for die tryout & forming of plastic and metal parts
- Machine Shop, Plaster Model Shop, Foundry, Welding, Paint, Assembly, & Fabrication areas as well as full site studios for clay modeling
- Temporary Technical & Office services

## H.E.S. TECHNICAL PLACEMENT
- Engineering
- Designers
- Technicians
- Technical/Clerical
- Layout People
- Checkers
- Product Specialists
- Facilities Management

235 E. Morley Drive, Saginaw, Michigan 48601
FOR MORE INFORMATION, CALL (517) 753-9915 OR FAX (517) 753-7703

## CAPABILITIES

### Engineering and Design

H.E. Services provides product engineering, design, detail, checking and various analytical tasks to meet all of your engineering needs. We serve as an extension to your engineering group or as a separate project team with specific design assignments.

The diverse and extensive experience of our staff provides development through production follow-up to meet prompt performance and cost goal needs. A continuous improvement plan allows our group to expedite perpetual customer satisfaction.

Currently, the main focus of H.E. Services Engineering and Design involves the following categories:

Engineers:    Product (Mechanical, Electrical)

- Manufacturing
- Analytical
- Industrial
- Special Machine

Designers (CAD and Manual)
Detailers (CAD and Manual)
Computer Aided Design

- Unigraphics Software
- Autocad Software
- Iges Capability

Computer Aided Engineering

- Solids Modeling
- Finite Element Analysis
- Surfaces
- Wire Framing
- Numerically Controlled Package
- Variation Simulation Analysis
- Monte Carlo Statistical Analysis
- Program Development Access

Certified Checkers
Geometric Dimensioning & Tolerancing Analysis
Dimensional Management
Program Management
Technical Illustration Services
Die Sublimation Process
Presentation Artwork/Overheads
Meeting Recording Services
Time Line Services

## CAPABILITIES - CONTINUED

### Engineering Technical Services

MicroSoft Word                    MicroSoft Excel
PowerPoint                        PageMaker
Lotus 1-2-3                       First Choice
Word Perfect                      Harvard Graphics
Display Write Timelines
Professional Write
Powerbase                         Windows
Paradox                           (Registered Trademarks)

### Prototype/Build

Computer Aided Manufacturing (CAM)
Computer Integrated Manufacturing (CIM)
Computer Numerically Controlled (CNC)
Reverse Engineering
Electro Discharge Machining (Wire & Plunge)
Various Stamping, Special Machine, Gage, Fixture, Machining, & Build
Rework Production
Display Model Assembly
Presentation Cutaway Models
Coordinate Measuring Machine (CMM) Inspection
Other Quality Verification Capabilities

### Testing

Fatigue
Ultimate
Wear
Environmental
Thermal
Impact
Vehicle Hoist

### Manufacturing (Production & Short Run)

Conventional Stamping
Re-Manufacturing
Sub Assembly
Assembly

# CAPABILITIES - CONTINUED

**Technical Placement (On-Site - Your Facility)**

Engineers: Mechanical, Electrical, Industrial, Manufacturing, Process Industrial, Chemical.

Designers: CAD, Product, Machine, Gage, Fixture, Layout.

Technicians: Mechanical, Electronic, Electrical, Hydraulic, Instrumentation, Chemical, Metallurgical, Dynamometer.

Other Disciplines: Test Drivers, Technical/Clerical, Engineering Support, Computer Support, Facility Management Personnel.

## Computer Aided Design/Computer Aided Manufacturing

H.E. Services Engineering Group prides itself in meeting all Computer Aided Design (CAD) requirements. We offer a fully integrated Computer Aided Engineering (CAE)/Computer Aided Manufacturing (CAM) system. (Our CAD group provides the necessary information quickly and in a usable format).

Hardware and software needs are utilized through the latest state-of-the-art computer based technology. We house Unigraphics II and Autocad in our Saginaw facilities. We also add translation capabilities to many other CAD systems including CATIA.

Our hardware/software configuration can be made 100% compatible with your requirements. All revisions to existing software packages would conform to your revision levels. Also, H.E. Services can easily align itself with your engineering standards.

Our CAD personnel attend all System Manufacturer user group meetings. This keeps our CAD group up-to-date on the most current technology available. Operators utilize the latest Hewlett Packard hardware components in providing engineering support.

H.E. Services systems network can accommodate any needs for direct translation. This provides conversions from usable existing data quickly and efficiently.

## Value Management

H.E. Services management subscribes to the principles of, and employs trained personnel in, Value Management (Value Engineering).

Simply stated, the technique aims at scientific problem solving in manufacturing design, process, or procedure cost reduction. Team members represent a variety of engineering and technical disciplines. Specific responsibilities for cost reduction problems are assigned to individuals.

Geared to improve the efficiency of engineering meetings and transfer of data via meeting minutes, our technical recording services has, for its base, potential for successful Value Management concepts. A representative of H.E. Services utilizes a personal computer and printer especially designed for the tasks at hand to provide meeting minutes for immediate review and participant distribution. The service provides smooth, timely flow of engineering documentation to engineers and technicians.

## Simultaneous Engineering

A listing of various programs has been provided to demonstrate how H.E. Services management achieves the overall goals and objectives of simultaneous engineering. Basically stated, simultaneous engineering allows engineers in a variety of functional disciplines (industrial, electrical, mechanical, etc.) to interact constructively. The result improves the entire design, test, modification and build process.    H.E.    Services supports simultaneous engineering by utilizing written, verbal and electronically advanced communication media. The result is a positive effect within our companies' capabilities to Design, Engineer, Build, Manufacture and Test.

## Ancon Prototype And Machining

Ancon Prototype and Machining specializes in producing prototypes and build for your platform developments, design aids, manufacturing and testing.   We rely on CAD/CAM systems and CNN machine tools to eliminate all questionable transfer medium.  We are capable of machining a wide variety of materials.   All components we build are subjected to a thorough inspection by our in-house quality department.

Ancon Tool is supported by the full range of H.E. Services engineering and design. We can take your project from initial design through finished product.

- Full CAD/CAM capabilities
- Stampings
- CNC Machining
- Models (visual-aid, display)
- Sub-Assemblies
- CNC EDM
- CMM Inspection
- Injection Molds
- Fixture
- Metal Fabrication
- Machine Tool Build
- Full Quality Assurance
- QS 9000

See the following sheets for equipment/machine listings.

## ANCON MACHINERY LIST

| | Quantity | MACHINE |
|---|---|---|
| 1) | | **EDM** |
| | 1 | CNC WIRE MACHINE, JAPAX LDM 20A |
| | 1 | KING SPARK EDM PLUNGE WITH 2 AXIS CNC ORBITAL HEAD |
| 2) | | **CNC CONTROL** |
| | 10 | CNC MILLS, ANILAM SUPERMAX YCM 40 WITH MASTERCAM (LEVEL 3) |
| | 1 | CNC MILL, MAZAK 20/40B WITH 30 HEAD TOOL CHANGER |
| | 3 | CNC MILL, MAZAK VTC 16B WITH 24 HEAD TOOL CHANGER |
| | 1 | CNC MILL, PROTO TRAK |
| | 4 | CNC LATHE, MAZAK 15 N WITH 8 TOOL TURRET HEAD |
| 3) | | **GENERAL MACHINE CONTROL** |
| | 19 | BRIDGEPORT MILLS, ALL FITTED WITH X & Y READOUTS |
| | 5 | LATHES, CLASING COLCHESTER (2) 17" (1) 15" & (2) 14" |
| 4) | | **STAMPING CENTER** |
| | 4 | PRESSES, (2) 150 TON DAKE, (2) 75 TON DAKE |
| | 3 | PRESSES, 25 TON K.R. WILSON |
| | 1 | O.B.I., 35 TON, BUSS PRESS |
| | 3 | HYDRAULIC, AUTOMATIC PRESSES |
| 5) | | **GRINDING CENTER** |
| | 1 | GRINDER, 6" I.D./O.D., MYFORD |
| | 1 | SURFACE GRINDER, 6" X 18", HARIG |
| | 1 | SURFACE GRINDER, 24" X 36", KINKINDA |
| | 1 | SURFACE GRINDER, 6" X 18", KENT |
| 6) | | **QUALITY ASSURANCE EQUIPMENT** |
| | 1 | CMM MITUTOYO, AE 122 (24" X 36") WITH HP 216 P.C. |
| | 1 | 16" OPTICAL COMPARITOR WITH READOUT |
| | 1 | CMM ZEISS (36X48) |

## Testing

H.E. Services incorporates a dedicated product test facility for testing production and prototype product lines including both developmental and validation testing. Experienced personnel trained in various test procedures and specifications assume responsibility for set-up, monitoring, analysis and documentation of completed test units.

Our testing operation has been designed with the capability of being flexible to meet your testing needs. Space requirements, trained technicians, and excellent service will be provided in a timely manner to meet your program deadlines. All testing operations are performed with 24 hour per day, seven days a week capabilities. Our engineering-build facilities compliment our testing division when time restraints apply.

MISCELLANEOUS MACHINERY

| | |
|---|---|
| 2 | BRIDGEPORT #80 2 HEAD, TRACER DUPLICATOR |
| 2 | HORIZONTAL BANDSAW, WELLSAW |
| 3 | VERTICAL BANDSAW, WELLSAW |
| 1 | POWER SHEAR, 10 GAGE (.159), NATIONAL |
| 2 | VIBRATORY TUMBLER, 40 GALLON & 80 GALLON, GIANT MFG. |
| 1 | HYDRAULIC IRONWORKER, JAWS 4, EDWARDS |
| 1 | DRY BLAST, 36" X 24", TRINCO |
| 1 | POWER HONE, MODEL J, SUPERIOR HONE |
| 1 | WIRE ARC WELDER |
| 1 | VACUUM PUMP WITH CHAMBER, 1/2 H.P., GAST INC. |

7

# H.E. SERVICES PROGRAMS

The following is a listing of various programs coordinated in a Total Project Management capacity. Many of them required Engineering Design, Build, Test and Production follow-up.

## Product Engineering

Lost Motion Analysis of Lock Cylinder to Ignition Mechanism
Lock Cylinder Push Button Key Release Design
Steering Column Design
Park Lock-Up Tolerance Analysis
Supplementary Inflatable Restraint Design (Air Bag)
Steering Column Tilt Mechanism Tolerance Analysis
Steering Column Design
Electronic Variable Orifice Slip Analysis
Floor Shift & Column Shift Tilt Angle Analysis
Linear Shift Development (New Shifting Mechanism)
Supplementary Inflatable Restraint Development (Air Bag)
Power Tilt and Telescoping  Steering Column Y-Car Development
Power Rake Development (Electronic Steering Column Tilt From Toe Plate Area)
Electronic Shift Development
Various Anti-Theft Mechanical, Electrical Device Development
Various Steering Column Stiffness Development
Linear Shift Design
Brake Transmission Shift Interlock Development (BTSi)
Hydro Tilt Steering Column Development
Linear Shift Development
Multiple Steering Column Tilt Positions
Quarter Turn Tilt Lever Patent
Plug-In Tilt Lever Design
Column Development
Axle Solids, Analysis CAD
Axle Design-CAD
10 1/2" Outer Drum Axle Asm Development
All Wheel Drive Asm Development
All Wheel Drive Prop Shaft Asm Development
ABS Axle Asm Development
Disc Brake Development
ABS Axle Asm Development
Gear Summary 8 1/2", 9 1/2", 7 5/8" Axle Asm Development
Truck ABS Axle Asm Development
10 1/2 " Carrier Casting Development
Electro Magnetic Power Steering Design (EPS)
Magnetic Steering Variable Assistance Design
Integral Gear Tolerance Analysis

## Product Engineering Cont'd

Pump Solid Model, NC-CAD
Speed Sensitive Steering R & P Design
Cutaway Display Models
Steering Gear Development (600 Series)
Various Pump Asm Engineering & Analysis
Window Frame Fixtures
Many other Proprietary Programs

NOTE:    H.E. Services has also provided the following:
Certified checking for Production Release, Engineering
Notices and Cost Requests, Variation Simulation Analysis,
and Technical Illustration.

## Special Machine Engineering

• Vertical 2 Spindle Boring Machine With Automatic Load
• 2 Station Milling & Centering Machine With Automatic Load
• Gearbox Test Fixture
• Ball Nut Inspection Fixture
• Opel Steering Column Fixture

## CONCLUSION

With available resources structured to meet ever-changing customer technology and worker requirements, it has been demonstrated that H.E. Services has the experience and reputation to address a wide spectrum of your engineering needs.

The Data reflects the scope, diversity, and resources available to you, through H. E. Services.

In addition, documentation has been included that defines the range of engineering services available to you from this complete engineering service organization.

For additional information contact:

Robert L. Backle, C.E.O.
Timothy E. Fortier, President
Robert Moore, Vice President - Sales
(517) 753 - 9015



SHIFT TUBE (BATCH BUILD)
MACHINE STORAGE AREA
PRESS
500 SIDE COVER
NORTH DOCK
AREA DESIGNATED FOR KURO TABLES
LOCK MODULE (2 GEAR)
UNIVERSAL CARBIDE
ENGINEERING
SECURE AREA

PLAINTIFF'S EXHIBIT 4

PLAINTIFF'S EXHIBIT 3

## H.E.SERVICES MANUFACTURING PROGRAM LOG

| CUSTOMER | BUYER | DESCRIPTION | RFQ # | UNIT PRICE | VOL/YR. | SALES/YR. | LIFE | SALES/JOB | LOCATION | SQ.F |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CURRENT PROJECTS | | | | | | | | |
| DELPHI -S | BONNER | LOWER COLUMN BRACKET ASSEMBLY | F-9662 | $0.130 | 438,262 | $56,503 | 5 | $282,515 | UV | 300 |
| DELPHI -S | BONNER | DIAMONDSIZE & ASSEM. PUMP HSG. | G-033 | $0.890 | 304,000 | $270,560 | 3 | $811,680 | UV | 750 |
| DELPHI - S | BONNER | MACHINE SHIFT TUBES | F-8700 | VARIES | 108,737 | $230,485 | 10 | $2,304,850 | FLINT | 2000 |
| DELPHI - S | BONNER | PRESS 2 PINS TO SUPPORT HOUSINGS | F-9342 | $0.126 | 3.6 MIL | $453,600 | 3 | $1,360,800 | FLINT | 2500 |
| DELPHI - S | BURKE | MACHINE 670 GEAR SIDECOVERS | F-9724 | $3.105 | 336,000 | $1,043,256 | 3 | $3,129,768 | FLINT | 800 |
| DELPHI -S | BRYANT | ASSEMBLE LOCK MODULES | G-0514 | .10 - .075 | 2.8 MIL | $230,000 | 3 | $690,000 | UV | 600 |
| | | SUBTOTALS: | | | | $2,284,404 | | $8,579,613 | | 6,950 |
| | | HIGH PROBABILITY | | | | | | | | |
| DELPHI -S | BURKE | MACHINE Y - CAR R&P HOUSING | VERBAL | $19.000 | 11,550 | $230,000 | 3 | $690,000 | ANCON | 0 |
| DELPHI -S | BURKE | MACHINE SHIFT BOWLS | VERBAL | $11.880 | 15,000 | $178,200 | 4 | $712,800 | ANCON | 500 |
| DELPHI -S | WISNEWSKI | MACHINE ROCTEL TC PUMPS | VERBAL | $2.110 | 1,446 | $3,055 | 4 | $12,220 | FLINT | 200 |
| DELPHI -S | WASHINGTON | ASSEMBLE GMX215 PWR T&T COMPONENTS | VERBAL | | | $34,122 | 4 | $136,488 | FLINT | 300 |
| DELPH - S | BONNER | MACHINE TRUNNION, SPACER & BEARING HOLDER | VERBAL | | | $158,000 | 4 | $632,000 | UV | 200 |
| DELPH -S | BURKE | ADDED 670 SIDE CVR VOLUME | VERBAL | $0.749 | 332,880 | $249,327 | 4 | $997,308 | FLINT | 400 |
| | | SUBTOTALS: | | | | $852,704 | | $3,188,816 | | 1600 |
| | | MEDIUM PROBABILITY | | | | | | | | |
| DELPHI -S | BURNHAM | MACHINE PUMP END HOUSINGS | G-1221A | $0.980 | 336,000 | $327,714 | 5 | $1,638,570 | FLINT | 1000 |
| DELPHI -S | BRYANT | ASSEMBLE LINEAR SHIFTER ASSYS. | G-2091 | $1.200 | 2.2 MIL | $2,640,000 | 3 | $7,920,000 | FLINT | 8000 |
| DELPHI -S | BONNER | ASSEMBLE TOELINKS | G-0330 | $1.250 | 76,080 | $95,418 | 5 | $477,090 | UV | 1000 |
| | | SUBTOTALS: | | | | $3,083,132 | | $10,035,660 | | 10000 |
| | | EVENTUAL | | | | | | | | |
| DELPHI -S | BONNER | PWR. T&T SUBASSEMBLIES FOR FORD | G-0791 | $8.760 | 101,760 | $891,414 | 3 | $2,674,242 | UV | 500 |
| | | SUBTOTALS: | | | | $891,414 | | $2,674,242 | | 500 |
| | | TOTALS: | | | | $7,081,654 | | $24,470,331 | | 19,050 |

# ORGANIZATIONAL FINANCIAL OVERVIEW
## (CONFIDENTIAL)

## DELPHI AUTOMOTIVE SYSTEMS
## RAY CAMPBELL MEETING

## September 28, 2001



CONFIDENTIAL

DELPHI AUTOMOTIVE SYSTEMS
H.E. Services

AGENGA

➢ Delphi Program Overview

➢ H.E. Services Excess Capital Investments

➢ Projected Financial Position – 16 Month Income Trend

➢ Actual Financial Position – 16 Month Income Trend

➢ Eight Phases – Austerity Programs

➢ Ownership Commitment

➢ Required Action

# PROGRAM OVERVIEW

- ## QUALITY RECORD
- ## UNREALIZED BUSINESS



| MONTH | PPM | SHIPPED | REJECTED |
|-------|-----|---------|----------|
| January | 0 | 508,720 | 0 |
| February | 5.8 | 509,579 | 3 |
| March | 1.8 | 536,548 | 1 |
| April | 0 | 600,510 | 0 |
| May | 0 | 608,953 | 0 |
| June | 4.9 | 608,005 | 3 |
| July | 4.2 | 698,554 | 3 |
| August | 1.4 | 704,480 | 1 |

TOTAL SHIPPED: 4,775,349

*YEAR TO DATE PPM AVERAGE = 2.3

2000 DELPHI PPM: 47

DELPHI SUPPLIER PPM OBJECTIVE: 25

H.E.S. ROLLING 6 MONTH COMPOSITE PPM: 2.3

H.E. SERVICES                                                    9/27/01
**UNREALIZED BUSINESS BACK-UP**

### PROGRAM - VOLUME / SALES
### MAY 2000 - SEPTEMBER 2001

| PROGRAM | | VOLUMES X 16 MONTHS | | SALES/MO. X 16 MONTHS | |
|---|---|---|---|---|---|
| SHIFT TUBE | Quoted Volume / mo. | 9,061 | 144,976 | $20,425.20 | $326,800.00 |
| | Actual Volume / mo. | 4,426 | 70,816 | $9,857.00 | $157,712.00 |
| | Difference / mo. | (4,635) | (74,160) | ($10,568.00) | ($169,088.00) LOSS |
| LOCK MODULE | Quoted Volume / mo. | 63,840 | 1,021,440 | $6,384.00 | $102,144.00 |
| | Actual Volume / mo. | 74,152 | 1,186,432 | $7,415.00 | $118,640.00 |
| | Difference / mo. | 10,312 | 164,992 | $1,031.00 | $16,496.00 GAIN |
| SUPPORT HSG. | Quoted Volume / mo. | 300,000 | 4,800,000 | $37,800.00 | $604,800.00 |
| | Actual Volume / mo. | 254,614 | 4,073,824 | $32,081.00 | $513,296.00 |
| | Difference / mo. | (45,386) | (726,176) | ($5,719.00) | ($91,504.00) LOSS |

| | | VOLUMES X 9 MONTHS | | SALES/MO. X 9 MONTHS | |
|---|---|---|---|---|---|
| SIDE COVER (26063061) | Quoted Volume / mo. | 28,000 | 252,000 | $23,156.00 | $208,404.00 |
| | Actual Volume / mo. | 11,485 | 103,365 | $9,498.00 | $85,482.00 |
| | Difference / mo. | (16,515) | (148,635) | ($13,658.00) | ($122,922.00) LOSS |

| | | VOLUMES X 16 MONTHS | | SALES/MO. X 16 MONTHS | |
|---|---|---|---|---|---|
| COUPLING | Quoted Volume / mo. | 3,100 | 49,600 | $7,285.00 | $116,560.00 |
| | Actual Volume / mo. | 1,862 | 29,792 | $4,375.26 | $70,004.16 |
| | Difference / mo. | (1,238) | (19,808) | ($2,910.00) | ($46,555.84) LOSS |
| SUPPORT ASSEMBLE | Quoted Volume / mo. | 3,580 | 57,280 | $10,740.00 | $171,840.00 |
| | Actual Volume / mo. | 3,252 | 52,032 | $9,756.25 | $156,100.00 |
| | Difference / mo. | (328) | (5,248) | ($985.00) | ($15,740.00) LOSS |

Sales Summary 5-00 thru 9-01.xls/summary

---

H.E. SERVICES                                                    9/27/01
**UNREALIZED BUSINESS BACK-UP**

### PROGRAM - VOLUME / SALES
### MAY 2000 - SEPTEMBER 2001

| PROGRAM | | VOLUMES X 16 MONTHS | | SALES/MO. X 16 MONTHS | |
|---|---|---|---|---|---|
| JACKSCREW | Quoted Volume / mo. | 3,580 | 57,280 | $2,112.20 | $33,795.20 |
| | Actual Volume / mo. | 3,299 | 52,784 | $1,946.15 | $31,138.40 |
| | Difference / mo. | (281) | (4,496) | ($166.00) | ($2,656.80) LOSS |
| SHIELD | Quoted Volume / mo. | 3,580 | 57,280 | $1,969.00 | $31,504.00 |
| | Actual Volume / mo. | 3,000 | 48,000 | $1,650.00 | $26,400.00 |
| | Difference / mo. | (580) | (9,280) | ($319.00) | ($5,104.00) LOSS |
| HOLDER ASSEMBLY | Quoted Volume / mo. | 6,000 | 96,000 | $1,140.00 | $18,240.00 |
| | Actual Volume / mo. | 6,175 | 98,800 | $1,173.25 | $18,772.00 |
| | Difference / mo. | 175 | 2,800 | $33.00 | $532.00 GAIN |
| OUTER TIE RODS | Quoted Volume / mo. | 2,000 | 32,000 | $15,780.00 | $252,480.00 |
| | Actual Volume / mo. | 0 | 0 | $0.00 | $0.00 |
| | Difference / mo. | (2,000) | (32,000) | ($15,780.00) | ($252,480.00) LOSS |

| | | VOLUMES X 12 MONTHS | | SALES/MO. X 12 MONTHS | |
|---|---|---|---|---|---|
| TIE RODS INNER | Quoted Volume / mo. | 2,000 | 24,000 | $16,660.00 | $199,920.00 |
| | Actual Volume / mo. | 1,450 | 17,400 | $12,078.50 | $144,942.00 |
| | Difference / mo. | (550) | (6,600) | ($4,582.00) | ($54,978.00) LOSS |

Sales Summary 5-00 thru 9-01.xls/summary

H.E. SERVICES                                                                9/27/01
UNREALIZED BUSINESS BACK-UP

### PROGRAM - VOLUME / SALES
### MAY 2000 - SEPTEMBER 2001

|  |  | VOLUMES X 10 MONTHS |  | SALES/MO. X 10 MONTHS |  |  |
|---|---|---|---|---|---|---|
| LOCK MODULE | Quoted Volume / mo. | 140,000 | 1,400,000 | $21,560.00 | $215,600.00 |  |
|  | Actual Volume / mo. | 153,662 | 1,536,620 | $23,663.95 | $236,639.50 |  |
|  | Difference / mo. | 13,662 | 136,620 | $2,104.00 | $21,039.50 | GAIN |
|  |  |  |  |  |  |  |
| PUMPS | Quoted Volume / mo. | 25,320 | 253,200 | $21,851.16 | $218,511.60 |  |
|  | Actual Volume / mo. | 17,974 | 179,740 | $15,511.65 | $155,116.50 |  |
|  | Difference / mo. | (7,346) | (73,460) | ($6,340.00) | ($63,395.10) | LOSS |

| QUOTED VOLUME: | 8,245,056 |
|---|---|
| ACTUAL VOLUME: | 7,449,605 |
| NET DIFFERENCE: | (795,451) |

| QUOTED SALES | $2,500,598.80 |
|---|---|
| ACTUAL SALES | $1,714,242.56 |
| DIFFERENCE | ($786,356.24) |

Sales Summary 5-00 thru 9-01.xls/summary

CONFIDENTIAL

### DELPHI AUTOMOTIVE SYSTEMS
### H.E. Services

### Excess Capital Investments
### Based on Good Faith Judgment

#### MACHINERY

➢ Numerous CNC Machining Centers

➢ Inspection & CMM Programming Equipment

➢ Production Equipment / Machine Tooling

➢ Several Support Equipment

#### REAL ESTATE

| Location | Program Description |
|---|---|
| ➢ El Paso, Texas | ➢ Delphi Mexico Prototype / Validation Center – Terminated and Facility Closed Due to Lack of Work (Delphi A) |
| ➢ Fenton, Michigan | ➢ Delphi Oxygen Center – Program Terminated and Transferred;  Moved Program In-House to Delphi (Delphi E/C) |
| ➢ Flint Tech Center | ➢ Catalytic Converter Program – Transferred and Multiple Delphi Production Projects Cancelled (Delphi E/C and S) |
| ➢ Hill Rd., Flint, Michigan | ➢ Aftermarket and Filtration Projects – In Process of Assessing Cancellation and Transfer of Programs (Delphi E/C) |

**Summary of Income/(Loss) Trends**
Projected Amounts Based on Assumed Orders & Volume Projections
Received from Delphi Automotive



| | May-00 | Jun-00 | Jul-00 | Aug-00 | Sep-00 | Oct-00 | Nov-00 | Dec-00 | Jan-01 | Feb-01 | Mar-01 | Apr-01 | May-01 | Jun-01 | Jul-01 | Aug-01 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income -- Projected | 269,304 | 248,021 | (35,303) | 198,215 | 272,753 | 336,252 | 194,962 | 144,815 | (250,086) | 25,188 | (53,474) | 68,868 | (19,076) | 83,356 | (12,769) | 125,559 |
| Accumulated Income -- Projected | 269,304 | 517,325 | 482,022 | 680,237 | 953,990 | 1,209,242 | 1,524,204 | 1,669,019 | 1,418,933 | 1,444,121 | 1,390,647 | 1,459,515 | 1,440,439 | 1,523,795 | 1,511,024 | 1,636,583 |

9/27/01/6:06 PM                                                                                     sales & income trends 9-9-01.xls/Projected NI Graph

H.E. Services

**Summary of Income/(Loss) Trends**
Actual Amounts Based on Assumed Orders & Volume Projections
Received from Delphi Automotive



| | May-00 | Jun-00 | Jul-00 | Aug-00 | Sep-00 | Oct-00 | Nov-00 | Dec-00 | Jan-01 | Feb-01 | Mar-01 | Apr-01 | May-01 | Jun-01 | Jul-01 | Aug-01 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income -- Actual | (161,503) | (48,379) | (198,140) | (58,150) | (156,278) | (92,021) | (83,531) | (22,371) | (104,270) | (141,720) | (107,309) | (135,034) | (15,802) | (242,066) | (165,261) | (92,217) |
| Accumulated Income -- Actual | (161,503) | (209,942) | (408,082) | (466,332) | (592,510) | (684,531) | (768,062) | (790,433) | (874,703) | (1,016,422) | (1,123,738) | (1,258,772) | (1,274,574) | (1,516,640) | (1,681,901) | (1,774,118) |

9/27/01/03:37 AM                                                                                     sales & income trends 9-9-01/Actual NI Graph



CONFIDENTIAL

### DELPHI AUTOMOTIVE SYSTEMS
H.E. Services

**Ownership Commitment**

➢ **In the Past Year, H.E. Services Ownership has Infused Over $1,000,000 into the Business**

## H.E.S. – DELPHI

## WIN – WIN STATUS
### 8/25/01

| DATE PRESENTED | DESCRIPTION | STATUS |
|---|---|---|
| 12/7/00 | Engineering, Prototype, Inspection, Manufacturing Managed Services, Staffing open capacity addressed to provide Win-Win. Also, A/R support | Business has continued to decline in all areas. Out-standing A/R was addressed |
| 3/16/01 | Overview of above Win-Win options including side-cover and linear shift proposals | No action |
| 5/16/01 | Reviewed unrealized volumes and non-materialized programs included side covers, other machining, consolidated machining package and other considerations | Nothing materialized |
| 7/19/01 | Reviewed side cover received a committal for additional volumes. Also reviewed shift bowl, spacer bearing holder pressure plate, prototype center and cost bridging and level II containment | Side cover order under review, other programs quoted or in process |

CONFIDENTIAL

### DELPHI AUTOMOTIVE SYSTEMS
### H.E. Services

## REQUIRED ACTIONS

### OPERATIONAL IMMEDIATE TERM – WITHIN 2 WEEKS

1. Level II Containment Support (Delphi E/C & S) (Lee Lambert) — AZLA, methology lab —
2. Cost Bridging (Delphi S) (Joe Stearns)
3. Side Covers (Delphi S) (Joe Stearns)
4. Barriers to Cancellation:
   ➤ Aftermarket        (Delphi E/C) (Tim Fortier)
   ➤ Filtration Test Lab    (Delphi E/C) (Tim Fortier)

### MID-TERM – WITHIN 2 MONTHS

1. Production Program Requote – Unrealized Volumes (Delphi S) (Joe Stearns)
2. Additional Manufacturing Options – Resourcing due to Insolvency, Quality and Delivery (Delphi A) (Joe Stearns)

### FINANCIAL IMMEDIATE ACTION

1. Immediate (No Discount Rate) Payment – Delphi (GE Capital) (Mark Lesperance)
2. Interest Free Loan (Tim Fortier / Mark Lesperance)
3. Minority Incentive Programs (Tim Fortier)

## H. E. Services - Ancon Phototype & Machine
### Delphi Accounts Receivable Reconciliation

| Purchase Order No. | Date Ordered | Invoice No. | Invoice Date | Amount Due | Total Due | Comments |
|---|---|---|---|---|---|---|
| PR3334046-006 | | 710000008 | 08/22/03 | 585.00 | 585.00 | Signed Shipper/Purchase Order |
| PR3334046-001 | | 710000131 | 09/05/03 | 6,537.00 | 6,537.00 | Signed Shipper |
| 902401 | | 710000149 | 09/15/03 | 1,800.00 | | Signed Shippers |
| 802401 | | 710000149 | 09/16/03 | 2,520.00 | | Signed Shippers |
| 57N11052 | 11/18/03 | 710000393 | 12/16/03 | 2,280.00 | 4,320.00 | Purchase Order |
| | | | 02/01/04 | 2,280.00 | 2,280.00 | Purchase Order |
| S3S28879 | 03/25/04 | 226 | 03/01/04 | 837.00 | 837.00 | Corrected Invoice |
| S3S23710 | 09/27/03 | 508 | 03/01/04 | -485.00 | -485.00 | Signed Shipper/Purchase Order |
| S3S28309 | 02/12/04 | 511 | 04/11/04 | 150.00 | 150.00 | Signed Shipper |
| S3S28546 | 02/13/04 | 512 | 04/11/04 | 821.25 | 821.25 | Purchase Order Alteration |
| S3S28345 | 02/13/04 | 513 | 04/11/04 | 1,454.00 | 1,454.00 | Signed Shipper/Purchase Order |
| S3S28346 | 02/13/04 | 514 | 04/11/04 | 1,500.00 | 1,500.00 | Purchase Order Alteration |
| S3S28379 | 02/16/04 | 515 | 04/11/04 | 1,173.00 | 1,173.00 | Purchase Order Alteration |
| S3S28557 | 03/01/04 | 516 | 04/11/04 | 1,715.45 | 1,715.45 | Signed Shipper/Purchase Order |
| S3S28900 | 03/29/04 | 518 | 04/11/04 | 360.00 | 360.00 | Signed Shipper/Purchase Order |
| Total | | | | 22,207.76 | 22,207.76 | |

## H. E. Services - Staffing
### Delphi Accounts Receivable Reconciliation

| Purchase Order No. | Date Ordered | Invoice No. | Invoice Date | Amount Due | Total Due |
|---|---|---|---|---|---|
| S2S45340 | | 195 | 03/17/04 | 777.00 | 777.00 |
| S2S45186 | | 201 | 03/24/04 | 1,680.00 | 1,680.00 |
| S2S45196 | | 213 | 03/29/04 | 1,680.00 | 1,680.00 |
| S2S45533 | | 217 | 04/04/04 | 1,638.00 | 1,638.00 |
| Total | | | | 5,775.00 | - |



PLAINTIFF'S EXHIBIT 6

tabbies

## H.E. Services - Engineering/Testing
### Delphi Account Receivable Reconciliation

| Purchase Order No. | Date Ordered | Invoice No. | Invoice Date | Amount | Total Due | Comments |
|---|---|---|---|---|---|---|
| SP48197 | 12/19/03 | 105 | 01/20/04 | 8,288.00 | 8,288.00 | |
| S2S46221 | 12/22/03 | 130 | 02/19/04 | 9,336.00 | 9,336.00 | |
| S2S46792 | 02/10/04 | 132 | 02/19/04 | 4,410.00 | | |
| S2S46792 | | 132a | 02/19/04 | 933.00 | | |
| S2S46792 | | 133 | 02/19/04 | 5,077.00 | | |
| S2S46792 | 02/10/04 | 134 | 02/19/04 | 3,354.00 | (2,145.00) | Credit Memo: 10001 |
| S2S46792 | | 134 | 02/19/04 | (2,282.00) | (2,145.00) | Credit Memo: 10001 |
| S2S46792 | 02/10/04 | 137 | 02/29/04 | 10,457.50 | 9,380.00 | Credit Memo: 10002 |
| S2S46792 | | 138 | 02/29/04 | 3,744.00 | 10,457.50 | |
| S2S46771 | 11/22/02 | 138 | 02/29/04 | 3,744.00 | 3,744.00 | Alteration |
| S2S20950-004 | 02/05/04 | 139 | 02/29/04 | 9,976.00 | 9,976.00 | |
| | 11/25/03 | 144 | 02/29/04 | 4,160.00 | 4,160.00 | |
| S2S46563 | 01/26/04 | 145 | 02/29/04 | 4,160.00 | 4,160.00 | |
| S2S44701 | 02/23/04 | 146 | 02/29/04 | 1,976.00 | 1,976.00 | |
| S2S46297 | 01/08/04 | 147 | 02/29/04 | 5,382.00 | 5,382.00 | |
| S2S46297 | 01/08/04 | 148 | 02/29/04 | 5,850.00 | 5,650.00 | |
| S2S46398 | 01/08/04 | 149 | 02/29/04 | 2,379.00 | | |
| S2S46300 | 01/08/04 | 150 | 02/29/04 | 6,903.00 | 6,903.00 | |
| S2S46300 | | 164 | 03/19/04 | 548.00 | 548.00 | |
| | 01/26/04 | 153 | 02/29/04 | 9,823.00 | 9,823.00 | |
| | 02/18/04 | 173 | 04/04/04 | 1,548.00 | 1,548.00 | |
| | 11/25/03 | 174 | 04/04/04 | 9,976.00 | | |
| | 03/17/04 | 175 | 04/04/04 | 3,225.00 | | |
| | 03/17/04 | 186 | 04/04/04 | 2,150.00 | | |
| | 03/17/04 | 189 | 04/04/04 | 946.00 | 14,276.00 | |
| | 03/17/04 | 177 | 04/04/04 | 5,418.00 | 5,977.00 | |
| | 12/02/03 | 184 | 04/04/04 | 559.00 | 5,977.00 | |
| | 08/05/03 | 179 | 04/04/04 | 9,574.00 | | |
| | 03/17/04 | 178 | 04/04/04 | 8,944.00 | 8,944.00 | |
| | 03/17/04 | 180 | 04/04/04 | 9,589.00 | 9,589.00 | |
| | 03/17/04 | 181 | 04/04/04 | 559.00 | | |
| | 03/17/04 | 182 | 04/04/04 | 5,386.00 | | |
| | 03/17/04 | 200 | 04/04/04 | 4,941.00 | 15,132.00 | |
| | 12/01/03 | 201 | 04/04/04 | 5,160.00 | | Delphi Purchase Request |
| | 12/01/03 | 165 | 04/04/04 | 1,935.00 | | Delphi Purchase Request |
| | 12/01/03 | 190 | 04/04/04 | 2,752.00 | 9,847.00 | Delphi Purchase Request |
| | 03/09/04 | 191 | 04/16/04 | 9,498.00 | 9,498.00 | Delphi Purchase Request |
| | 03/09/04 | 187 | 04/04/04 | 9,386.00 | | |
| | 03/05/04 | 194 | 04/14/04 | 935.00 | 9,030.00 | |
| | 03/05/04 | 195 | 04/14/04 | 1,689.00 | | |
| | 03/16/04 | 196 | 04/14/04 | 3,354.00 | 3,354.00 | |
| | 03/16/04 | 198 | 04/14/04 | 9,126.00 | 9,126.00 | |
| | 03/17/04 | 202 | 04/14/04 | 3,627.00 | | |
| | 03/17/04 | 203 | 04/14/04 | 7,059.00 | | |
| | 03/17/04 | 204 | 04/14/04 | 380.00 | | |
| | 03/17/04 | 205 | 04/14/04 | 2,106.00 | 13,182.00 | |
| | 03/17/04 | 206 | 04/14/04 | 5,848.00 | 5,848.00 | |
| **Sub-Total** | | | | **216,965.50** | **216,965.50** | |

## H.E. Services - Engineering/Testing
### Delphi Account Receivable Reconciliation

| Purchase Order No. | Date Ordered | Invoice No. | Invoice Date | Amount | Total Due | Comments |
|---|---|---|---|---|---|---|
| S2S47556 | 03/17/04 | 207 | 04/14/04 | 1,333.00 | | No Purchase Order |
| S2S47556 | | 208 | 04/14/04 | 1,032.00 | | No Purchase Order |
| S2S47556 | 03/17/04 | 209 | 04/14/04 | 4,601.00 | 10,105.00 | No Purchase Order |
| S2S47556 | | 210 | 04/14/04 | 3,178.00 | 10,179.00 | No Purchase Order |
| S2S47527 | 03/17/04 | 211 | 04/14/04 | 10,179.00 | 10,179.00 | No Purchase Order |
| S2S47527 | 03/23/04 | 216 | 04/14/04 | 2,820.00 | 2,820.00 | No Purchase Order |
| S2S47759 | 04/02/04 | 217 | 04/14/04 | 8,460.00 | 8,460.00 | No Purchase Order |
| SMST78320 | 03/05/04 | 218 | 04/14/04 | 3,000.00 | 3,000.00 | Credit Memo? |
| SMST78357 | 03/11/04 | 220 | 04/14/04 | 2,500.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 221 | 04/14/04 | 688.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 222 | 04/14/04 | 258.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 223 | 04/14/04 | 1,075.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 224 | 04/14/04 | 215.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 225 | 04/14/04 | 129.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 226 | 04/14/04 | 1,505.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 227 | 04/14/04 | 301.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 228 | 04/14/04 | 946.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 229 | 04/14/04 | 86.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 230 | 04/14/04 | 817.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 231 | 04/14/04 | 215.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 232 | 04/14/04 | 85.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 233 | 04/14/04 | 215.00 | | No Purchase Order |
| SMST78357 | 03/11/04 | 234 | 04/14/04 | 172.00 | 10,062.00 | No Purchase Order |
| SMST78147 | 03/11/04 | 235 | 04/14/04 | 5,848.00 | | No Purchase Order |
| SMST78147 | | 236 | 04/14/04 | 5,160.00 | | No Purchase Order |
| SMST78147 | | 237 | 04/15/04 | 1,376.00 | | No Purchase Order |
| SMST78147 | | 238 | 04/15/04 | 1,290.00 | | No Purchase Order |
| SMST78147 | | 239 | 04/15/04 | 688.00 | | No Purchase Order |
| SMST78147 | | 240 | 04/15/04 | 241.00 | | No Purchase Order |
| SMST78147 | | 242 | 04/15/04 | 430.00 | | No Purchase Order |
| SMST78147 | | 243 | 04/15/04 | 430.00 | | No Purchase Order |
| SMST78147 | | 244 | 04/15/04 | 344.00 | | No Purchase Order |
| SMST78147 | | 245 | 04/15/04 | 646.00 | | No Purchase Order |
| SMST78147 | | 246 | 04/15/04 | 1,376.00 | | No Purchase Order |
| SMST78147 | | | 04/15/04 | 1,720.00 | 19,092.00 | No Purchase Order |
| **Sub-Total** | | | | **63,718.00** | **63,718.00** | |
| **Total** | | | | **280,683.50** | **280,683.50** | |

**H.E. Services - Universal Inspection Group**
**Delphi Account Receivable Reconciliation**

| Purchase Order Nr. | Date Ordered | Invoice No. | Invoice Date | Amount Due | Total Due | Comments |
|---|---|---|---|---|---|---|
| 2794 | | 39460 | 04/10/02 | 1,248.00 | 1,248.00 | Delphi Purchase Request |
| 2794 | | 35745 | 09/26/02 | 1,938.30 | | |
| 2794 | | 35281 | 10/11/02 | 1,446.85 | | |
| 2794 | | 39548 | 10/17/02 | 497.25 | | |
| 2794 | | 37371 | 10/30/02 | 2,063.10 | | |
| 2794 | | 38023 | 11/13/02 | 1,142.70 | | |
| 2794 | | 38053 | 11/13/02 | 2,031.50 | | |
| 2794 | | 38416 | 11/22/02 | 1,267.50 | 11,959.05 | Signed Shippers |
| 2794 | | 39409 | 12/12/02 | 1,593.15 | 1,593.15 | Signed Shipper |
| 4080 | | 40560 | 01/22/03 | 230.00 | | No Purchase Order |
| 3254278 | | 2017 | 08/29/03 | 200.00 | | |
| 3254276 | | 4698 | 11/14/03 | (6.00) | | |
| 3254505 | | 4665 | 11/14/03 | 91.00 | 554.00 | Noation of Credit Due |
| 325418150 | 10/14/03 | 2021 | 08/22/03 | 320.00 | 51.00 | |
| 3282395 | 10/22/03 | 2782 | 10/03/03 | 333.00 | 2,827.50 | |
| 3282395 | | 4229 | 10/01/03 | 180.00 | | Delphi Purchase Request |
| | | 4234 | 10/01/03 | 550.00 | 840.00 | Delphi Purchase Request |
| | | 4250 | 10/17/03 | 350.00 | 180.00 | Delphi Purchase Request |
| | | 4283 | 10/21/03 | 94.00 | 550.00 | Delphi Purchase Request |
| | | 4277 | 10/31/03 | 541.40 | 350.00 | Delphi Purchase Request |
| | | 6011 | 12/26/03 | 369.00 | 94.00 | Delphi Purchase Request |
| 14000/1980 | | 6527 | 0/09/04 | 240.00 | 8,400.00 | Delphi Purchase Request |
| | | 107 | 01/22/04 | 369.00 | 369.00 | Signed Shipper |
| | | 121 | 01/22/04 | 1,304.55 | 240.00 | Signed Shipper |
| | | 4890 | 11/07/03 | 3,169.88 | | |
| 3254240 | 10/24/03 | 5300 | 12/21/03 | 5,638.50 | | |
| 3254240 | 10/24/03 | 6519 | 01/16/04 | 5,235.14 | | |
| 3254240 | | 6540 | 01/16/04 | 4,112.75 | 25,506.82 | Signed Shippers |
| | | 123 | 02/06/04 | (697.19) | | Credit Memo 10001 |
| A/G0092519 | | 159 | 02/06/04 | 7,334.22 | | Signed Shippers |
| A/G0092519 | | 217 | 02/27/04 | 6,860.45 | | Signed Shippers |
| A/G0092519 | | 232 | 03/05/04 | 6,986.33 | | Signed Shippers |
| A/G0092519 | | 257 | 03/05/04 | 5,838.50 | | Signed Shippers |
| A/G0092519 | | 281 | 03/12/04 | 7,818.15 | | Signed Shippers |
| A/G0092519 | | 310 | 03/19/04 | 5,619.58 | | Signed Shippers |
| A/G0092519 | | 333 | 03/26/04 | 4,414.34 | | Signed Shippers |
| A/G0092519 | | 361 | 03/26/04 | 9,342.51 | 60,788.15 | Signed Shippers |
| | | 133 | 02/06/04 | 840.00 | 840.00 | Signed Shippers |
| 3287150 001 | | 166 | 02/13/04 | 321.00 | 321.00 | Purchase Order Alteration |
| 03/01/04 | | 188 | 02/06/04 | 2,222.12 | | |
| 03/01/04 | | 197 | 02/13/04 | 3,078.00 | | Delphi Purchase Request |
| | 04/02/04 | 222 | 02/20/04 | 204.00 | | Delphi Purchase Request |
| 02/20/04 | | 224 | 02/20/04 | 180.00 | | |
| 02/20/04 | | 241 | 02/27/04 | 100.00 | | |
| 02/01/04 | | 260 | 03/05/04 | 80.00 | | |
| 04/20/04 | | 267 | 03/05/04 | 255.00 | | No Purchase Order |
| | | 277 | 03/05/04 | 1,205.00 | | |
| 02/23/04 | | 268 | 03/12/04 | 380.00 | | |
| 03/09/04 | | 291 | 03/12/04 | 800.00 | | No Purchase Order |
| 01/06/04 | | 295 | 03/12/04 | 130.00 | | |
| 03/12/04 | | 307 | 03/19/04 | 1,520.00 | | Delphi Purchase Request |
| | | 308 | 03/19/04 | 480.00 | | Delphi Purchase Request |
| | | 315 | 03/19/04 | 320.00 | | |
| | 03/01/04 | 337 | 03/26/04 | 120.00 | | |
| | 03/03/04 | 339 | 03/26/04 | 120.00 | | Signed Shippers |
| | 03/31/04 | 351 | 03/26/04 | 3,420.00 | | Signed Shippers |
| | | 353 | 03/26/04 | 590.00 | | Delphi Purchase Request |
| | | 354 | 03/26/04 | 3,656.00 | | Delphi Purchase Request |
| | | 355 | 03/26/04 | 1,077.20 | | |
| | | 355 | 03/26/04 | 500.00 | | Signed Shippers |
| | | 355 | 03/26/04 | 1,080.00 | | Signed Shipper |
| | | 356 | 03/26/04 | 65.00 | | |
| **Total** | | | | | **135,160.80** | **135,160.80** |