**Hearing Date and Time: November 30, 2006
at 10:00 a.m.**

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER<br>   & FLOM LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr. (JB 4711)<br>John K. Lyons (JL 4951)<br>Ron E. Meisler (RM 3026) | O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>(202) 383-5300<br>Robert A. Siegel (RS 0922)<br>Tom A. Jerman (TJ 1129)<br>Rachel S. Janger<br>Jessica Kastin (JK 2288) |
| SKADDEN, ARPS, SLATE, MEAGHER<br>   & FLOM LLP<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>Kayalyn A. Marafioti (KM 9632)<br>Thomas J. Matz (TM 5986) | GROOM LAW GROUP, CHTD<br>1701 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>(202) 857-0620<br>Lonie A. Hassel (LH 8805) |

Attorneys for Delphi Corporation, et al.,
    Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
    In re                                                  :    Chapter 11
:
DELPHI CORPORATION, et al.,            :    Case No. 05-44481 (RDD)
:
                             Debtors.    :    (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' RESPONSE TO MOTION OF USW TO COMPEL DEBTORS TO SUBMIT
INDIVIDUAL EMPLOYEE MATTER TO IMPARTIAL MEDICAL AUTHORITY**

("RESPONSE TO USW MOTION TO COMPEL")

Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this response (the "Response") to the motion filed by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO/CLC ("USW" or the "Union") seeking to compel Delphi to have an impartial medical examiner determine whether Terry Detrick ("Detrick"), an individual retiree, has recovered from the condition that qualified him for total and permanent disability retirement more than 20 years ago and is able to return to work (the "Motion").[1] In support of this Response, the Debtors respectfully represent as follows:

### Preliminary Statement

1. Through its Motion, the USW asks this Court to administer Delphi's Hourly-Rate Employees Pension Plan ("HRP"), which is applicable to all of Delphi's union-represented employees. The USW asks the Court to substitute its judgment for that of the Company's with regard to the sufficiency of the medical information that an individual retiree, Terry Detrick, has provided in support of his claim that he is fit to return to work after retiring from General Motors Corporation ("GM") in 1983 as totally and permanently disabled by his psychological disorders.

2. The USW's Motion must be denied on two grounds. First, the Motion is procedurally deficient because it fails to initiate an adversary proceeding by filing a summons and complaint with an underlying cause of action -- a necessary prerequisite to this Court's consideration of this matter.

---

[1] Mr. Detrick retired from General Motors Corporation in 1983. Subsequently, General Motors' Dayton, Ohio facility where Mr. Detrick worked was spun off as a Delphi facility. In order to return to work at the Delphi plant, the USW must follow the procedure set forth in the HRP (as defined herein). Declaration of James M. Petrie ¶ 16.

2

3.	Second, the USW's Motion fails on the merits because Detrick has failed to exhaust the administrative procedures set forth in the HRP as required by both the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Labor Management Relations Act.  Exhaustion of these procedures is required before the USW can seek judicial relief from a determination made pursuant to the collectively bargained provisions of the HRP.

## Relevant Background

4.	Delphi and the USW have entered into a series of agreements governing the terms and conditions of employment for USW-represented employees at Delphi facilities in Vandalia and Dayton, Ohio.  Among these are a series of supplemental agreements containing the terms of various benefit programs, including the HRP, which are incorporated as part of the main collective bargaining agreement between Delphi and the USW (the "CBA").  Currently, the CBA remains in effect through September 14, 2007.[2]  The terms of the HRP apply not only to Delphi's USW-represented employees and retirees, but to all of Delphi's union-represented employees and retirees.  Declaration of James M. Petrie, executed November 22, 2006 ("Petrie Decl.") ¶ 5.

A.	Total & Permanent Disability Retirement Provisions

5.	The HRP allows an employee to retire when he or she is totally and permanently disabled and therefore unable to perform work in any capacity for the Company.[3]  The plan sets a high bar and outlines a strict review procedure for determining whether an employee is permanently and totally disabled and therefore eligible to receive total and permanent disability benefits ("T&PD benefits") -- potentially for the rest of the employee's life.  Petrie Decl. ¶¶ 6-8, 28.

---

[2] The CBA is subject to the Section 1113/1114 Motion initiated by the Debtors on March 31, 2006.
[3] The GM pension plan, under which Detrick retired, contains a similar provision.  Petrie Decl. ¶ 6.

3

6.    An employee who retires because he or she is found to be totally and permanently disabled may apply to return to work only if the employee is able to demonstrate that there has been a change in the permanent and total nature of the qualifying disability that has resulted in the retiree no longer having the disability or no longer being disabled from it.  The HRP outlines a straightforward review procedure for return to work requests (collectively bargained and agreed to by the unions representing Delphi's employees, including the USW), including an appeals process, for evaluating whether a T&PD retiree is fit to return to work.  <u>Id</u>. ¶ 9.

7.    The first step in evaluating the fitness of an individual on T&PD retirement to return to work requires the retiree "to provide medical evidence to the Plant Medical Director, <u>satisfactory to the Corporation</u>, that supports that such retiree is no longer T&PD."  The information provided must include, "among other relevant information, <u>a narrative report</u> that details what has improved and why the condition under which such retiree was determined to be T&PD no longer exists or no longer disables the retiree."  In addition, "[d]ocumentation will include <u>appropriate lab reports and/or test results</u>."  Petrie Decl. ¶ 10, Ex. A at 87 (emphasis added).

8.    If the Plant Medical Director determines, after reviewing the medical documentation provided by the retiree (and in some cases an examination by the Plant Medical Director), that the employee's condition has not changed in a manner that renders the employee fit to return to work, he or she is required to advise the retiree, union benefit representative, and third party pension administrator of this determination.  If the retiree disagrees with the Plant Medical Director's finding, the retiree may contact his or her union benefit representative who may forward the case to Delphi's Employee Benefits Staff for review with the Corporate Medical

4

Director.  The Benefits Staff and Corporate Medical Director will then provide an explanation as to why they have found that the retiree is not fit to return to work.  Petrie Decl. ¶ 11, Ex. A at 88.

9. If the union benefit representative disagrees with the Company's determination, then he or she may then seek an impartial medical opinion.  "[I]n all cases where the retiree has been retired for five or more years, the retiree will be sent to an impartial specialist approved by the Delphi [employee benefits] staff and the Union Benefit Representative."  The decision of the impartial physician or clinic is "final and binding on the retiree, the Union and the Corporation."  Petrie Decl. ¶ 12, Ex. A at 88.

10. The discretion afforded to Delphi with respect to the adequacy of medical documentation provided by an employee is important both in determining whether an employee is totally and permanently disabled and whether a retiree's total and permanent condition has changed.  A determination that an employee is eligible for T&PD benefits means that the employee is unable to perform any job at any Delphi facility in which he or she has seniority and that the employee may be entitled to receive pension and health benefits for life.  Petrie Decl. ¶ 28.

11. The Company's discretion is equally important in determinations to return a T&PD retiree to work given the localized safety and health issues implicated by the decision.  Id. ¶ 29.

12. The terms of the HRP apply to all union-represented Delphi employees. Delphi and the unions representing its employees have successfully followed the procedures outlined in the HRP since they were negotiated in 1999.  On at least thirteen occasions, Delphi has followed the procedures set forth in the HRP to determine whether a T&PD retiree was fit to return to work.  Five retirees have returned to work and several remain retired either because,

5

like Detrick, they have not provided adequate medical documentation to allow Delphi to make an initial determination regarding fitness to return to work, or because they were determined through the HRP procedure to remain unable to work. Petrie Decl. ¶ 13.

    B.    <u>Terry Detrick</u>

    13.    Terry Detrick was an employee in GM's Dayton, Ohio facility for approximately 15 years. In the early 1980s, Detrick developed

. On the "Statement of Employee's Physician" portion of Detrick's application for T&PD retirement, Detrick's physician indicated that

. Petrie Decl. ¶ 14, Ex. B.

    14.    Detrick was determined to be eligible for T&PD retirement effective June 1, 1983. Detrick has been retired and receiving pension and health benefits under the terms of the GM pension plan continuously since June 1, 1983. Petrie Dec. ¶ 16.

    15.    Between the late 1990's and 2005, the USW sent letters to GM (prior to 1999) and Delphi requesting that Detrick no longer be considered totally and permanently disabled. These letters, however, did not include any medical documentation in support of the request beyond brief doctor's notes and a list of the dates of his psychiatric treatment sessions -- none more recently dated than 2001. Despite the USW's allegations, Delphi's local representatives discussed Detrick's requests with local USW representatives during this time period. <u>Id</u>. ¶¶ 17-21.

    16.

. Petrie Decl. ¶ 21. Delphi has been unable to assess Detrick's fitness to return to work based on the limited and outdated documentation provided by the USW. <u>Id</u>. ¶ 22.

6

17.    Delphi informed Detrick on several occasions that the doctor's notes were inadequate for Delphi to make a determination as to his ability to return to work.  For example, in a letter dated August 19, 2002, Dr. Pace, the Divisional Medical Director, stated that he found "no current documentation to substantiate a reversal" of Detrick's T&PD status.  Id. ¶ 20, Ex. D.

18.    Given the USW's failure to comply with the first step in the HRP procedure, it does not have a right to bypass the HRP procedure to obtain an impartial medical examination as the USW requests in its Motion.

19.    In response to more recent requests by Detrick to return to work, Steven Gebbia, Delphi's Executive Director, Benefits & Policy, wrote a letter to the USW's Senior Counsel dated February 22, 2006 again stating Delphi's position that Detrick has not submitted the documentation required by the HRP, and "until he does so, no decision can be made" with respect to his fitness to return to work.  Petrie Decl. ¶¶ 23-24, Ex. E.  Mr. Gebbia lists the specific documentation Delphi would need to assess Detrick's case and suggests that the USW contact him directly.  Delphi never received a response to this letter and to date, the USW has not provided medical documentation of Detrick's condition dated more recently than 2001.  Id.  Despite the USW's allegations in its Motion, local Delphi representatives have discussed Mr. Detrick's requests to return to work with local USW representatives throughout the years in connection with the sporadic requests described above.

C.    Benefits Associated With Detrick's Return To Work

20.    At the time that Detrick retired under the T&PD provisions of the HRP in 1983, he had 15.3 years of credited service and he was a Basic Benefit Class Code of A.  The Benefit Class Code is based on the rate of pay for the classification held by the applicant and determines the monthly benefit rate.  At the time of his retirement, his basic benefit rate was $18.20 per month per year of credited service (or $18.20 multiplied by 15.3 years of credited

7

service to obtain his monthly benefit amount). With post retirement increases, his rate today is $26.50 per month per year of credited service, for a total of $405.45 per month, less $20.27 for the surviving spouse option, equaling an adjusted monthly gross benefit of $385.18. Petrie Decl. ¶ 25.

21. Notably, Detrick has been approved by the Social Security Administration to receive social security disability insurance benefits ("SSDIB"), indicating that the federal government also considers Detrick to be unable to work. If he were not receiving SSDIB, Detrick would qualify for an additional Temporary Benefit under the GM pension plan, payable until he reached age 62 and one month. Id.

22. If Detrick recovered from the condition that caused him to be totally and permanently disabled and was able to return to work and then he subsequently retired (which he would have to do prior to the closing of the Dayton, Ohio plant in December 2007), his basic benefit rate would be $50.90 per month per year of credited service, and he would return to work with the 15.3 years of credited service. His subsequent retirement with unreduced benefits would result in a gross benefit of approximately $778.77 ($50.90 x 15.3 years of credited service), less surviving spouse coverage of $38.94, for an adjusted gross monthly benefit of approximately $739.83 -- a 92.1% increase over the amount of benefits he receives currently. Id. ¶ 26.

Argument

I.    The USW Has Failed To Initiate An Adversary Proceeding

23. The USW has not commenced an adversary proceeding as required under the United States Bankruptcy Code. This failure is fatal to the USW's Motion.

24. To commence an adversary proceeding and thereby invoke the Bankruptcy Court's jurisdiction, a party must file a complaint stating an underlying cause of action, along

with fulfilling other requirements such as service of a summons.  Fed. R. Bankr. P. 7003; Fed. R. Civ. P. 3; <u>see generally</u>  Fed. R. Bankr. P.  7004-7010.  "Adversary proceedings" include proceedings "to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief."   Fed. R. Bankr. P. 7001.

25.     While the USW's Motion seeks equitable relief, the USW has failed to bring an adversary proceeding because, among other things, it has not filed a complaint stating an underlying cause of action.  <u>See</u>  <u>In re Garnett</u>, 47 B.R. 170 (E.D.N.Y. 1985) (debtor's motion to enjoin creditors' action denied in part because he failed to commence the required adversary proceeding); <u>In re Dahlquist</u> 33 B.R. 101 (Bankr. D. S.D. 1983) (court dismissed action for permanent injunction where plaintiffs failed to file complaint and serve summons as required for adversary proceedings); <u>see also</u> <u>In re Emmerling</u>, 223 B.R. 850, 870 (B.A.P. 2d. Cir. 1997) (motion to reopen bankruptcy proceeding served with summons was a procedural nullity because party failed to file a complaint).

26.     Instead of properly initiating an adversary proceeding, the USW merely filed a motion unsupported by any legal authority asking this Court to administer Delphi's HRP. Through its Motion, the USW asks the Court to circumvent the very procedures -- including the discretion afforded to the Company -- that it negotiated and agreed to as part of the 1999 amendments to the HRP.

27.     The USW's failure to initiate an adversary proceeding is fatal.  The Motion must be denied in its entirety because the USW has failed to follow the requirements set forth in the Bankruptcy Code necessary for the Court to consider this matter.  Fed. R. Bankr. P. 7001(7), 7003, 7041, F. R. Civ. P. 41(b).

9

II.   Detrick Failed To Exhaust The Administrative Procedure Set Forth In The HRP

28.   Even if the Court overlooks the procedural deficiencies in the USW's Motion, the Motion should be denied on the merits because Detrick and the USW failed to exhaust the administrative procedure set forth in the HRP as required by ERISA and the Labor Management Relations Act.  The Union is required to exhaust these procedures prior to seeking enforcement of any labor or pension agreement by the Court.

A.   ERISA

29.   ERISA Section 503 requires that any plans administered under its provisions, such as Delphi's HRP, provide certain administrative remedies.  29 U.S.C. § 1133.  Specifically, "every employee benefit plan shall -- (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied . . . (2) afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary".  Detrick's request to return to work is consistent with a "claim for benefits" under Section 503 because, if granted, Detrick will automatically be entitled to a higher pension benefit rate upon subsequent retirement (which would occur sometime prior to December 31, 2007 when the plant to which he would return is scheduled to close).  Petrie Decl. ¶¶ 25-26.

30.   Based on the requirements set forth in Section 503, courts have obligated plan participants to exhaust a plan's administrative procedures before seeking relief from the court.  The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."  Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 595 (2d. Cir. 1993);  see Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (noting requirement that ERISA claimants exhaust administrative remedies provided for by their plan).  As a result, courts generally dismiss claims for benefits brought before the

10

plaintiff has exhausted the administrative remedies provided in the plan.  See Kennedy (affirming district court's grant of summary judgment for defendant on basis that plaintiff did not exhaust administrative remedies), Klecher v. Metro. Life Ins. Co., 01 Civ. 9566, 2003 U.S. Dist. LEXIS 9572 (S.D.N.Y. June 5, 2003) (dismissing claim for benefits under long-term disability plan for failure to exhaust administrative remedies); Barnett v. IBM Corp., 885 F. Supp. 581 (S.D.N.Y. 1995) (ERISA claim precluded when employee failed to exhaust remedies).

31.     Requiring exhaustion of plan procedures promotes important policy goals. "The primary purposes of the exhaustion requirement are to: (a) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (b) provide a sufficiently clear record of administrative action if litigation should ensue; and (c) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo."  Kennedy, 989 F.2d at 594, (citing Denton v. First Nat'l Bank, 765 F.2d 1295 (5th Cir.), reh'g denied, 772 F.2d 904 (5th Cir. 1985)).  The requirement is also intended to "help reduce the number of frivolous lawsuits under ERISA; promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and minimize the costs of claims settlement for all concerned."  Id., (citing Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)).

32.     Here, the USW has not exhausted the procedures set forth in the HRP for T&PD retirees seeking to return to work.  In fact, through its Motion, the USW argues that despite the clear terms of the HRP to which it agreed, the Court should substitute its judgment for the Company's and find that the provision of short doctor's notes and an outdated medical file entitles Detrick to skip steps in the HRP administrative procedure and allow him to be examined

11

by an impartial medical examiner -- the last step in the T&PD retirement return to work determination.

33. The terms of the HRP are very clear, however: an employee wishing to end his T&PD retirement must first present medical evidence "satisfactory to the Corporation." The HRP even enumerates the categories of documentation a retiree is required to furnish to the Company. Petrie Decl., Ex. A at 87. The USW agreed to this procedure, including the standard that a retiree's medical documentation be satisfactory to the Company.

34. Despite the fact that Delphi has specifically advised Detrick on several occasions of the documentation required to evaluate his request to return to work, Detrick continues to fail to comply with the Company's requirement -- he has not yet presented any medical documentation supporting a change in his total and permanent disability that indicates his ability to return to work. Delphi is certainly entitled to know what has changed in Detrick's total and permanent disability as a basis for consideration of his return to work before it invests the time and resources involved with determining whether Detrick is fit to return to work. Only after Detrick submits sufficient medical documentation can Delphi's plant level medical examiner make a determination as to his fitness to return.

35. The HRP then sets forth several levels of review should the USW dispute the plant level decision -- the final step being a review by an impartial medical examiner. The Union's attempt to bypass this collectively-bargained procedure must be denied.

36. Further, pursuing the administrative procedures outlined in the HRP would not be futile in this case because there has been no denial of the benefits Detrick seeks -- a determination that he is fit to return to work and the associated increase in pension benefits he would be entitled to upon subsequent retirement. See Davenport v. Harry N. Abrams, Inc., 249

12

F.3d 130, 133 (2d Cir. 2001) (correspondence in which employer stated that it did not consider employee eligible for benefits did not amount to "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile").  Delphi has not denied Detrick a benefit, it has merely informed Detrick that he needs to provide adequate medical documentation before the Plant Medical Director can make a determination regarding his fitness to return to work.  Detrick has refused to follow the contract procedures without explanation, however, even after Delphi has reiterated its need for additional documentation in order to assess his claim.  Cf. Thomas v. Verizon, 02 Civ. 3083, 2004 WL 1948753, at *5 (S.D.N.Y. Sept. 2, 2004) (granting summary judgment for defendant when plaintiff refused to submit to medical examination required by plan procedures).  If challenged through an ERISA action, the Company's decisions under the HRP are held to an arbitrary and capricious standard.  See Kennedy, 989 F.2d at 594

37.   Requiring the USW to follow the procedures set forth in the HRP is consistent with the law and promotes ERISA's policy goals by assuring that any judicial review of fiduciary action (or inaction) applies the well-settled arbitrary and capricious standard, creating a clear record, and avoiding frivolous lawsuits.  See id.

38.   Most significantly here, a failure to enforce the HRP's administrative procedures would contravene Congress' intent for ERISA trustees, not federal courts, to administer benefit plans.  Allowing the USW to proceed with its claim could open the flood gates to any number of suits by GM and Delphi retirees disagreeing with a Company decision under the HRP.  See id.  Delphi's decisions under the HRP are to be given deference, unless a court finds them to be arbitrary and capricious -- a standard that the USW fails to meet here in challenging Delphi's assessment that Detrick's non-specific doctor's notes from 2001 are not

13

adequate to entitle him to a Company review of his fitness to return to work after retiring as totally and permanently disabled over 20 years ago.

  B. <u>Labor Management Relations Act</u>

  39. Similarly, Section 301 of the Labor Management Relations Act provides that prior to filing any suit to enforce the terms of a collective bargaining agreement (including an HRP), an employee or union must make "use of the contract grievance procedures agreed upon by employer and union."  29 U.S.C. § 185; <u>see</u> <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650, 653 (1965); <u>see also</u> <u>Vera v. Saks. & Co.</u>, 335 F.3d 109, 118-19 (2d Cir. 2003) (upholding grant of summary judgment in favor of employer because "plaintiff failed to exhaust his remedies under the CBA to grieve and arbitrate his [ ] claim").

  40. An employee may only be excused from the obligation to exhaust the procedures outlined in the CBA in very limited circumstances "where the conduct of the employer amounts to a repudiation of those contractual procedures."  <u>Heyer v. Morris Okun, Inc.</u>, 03 Civ. 2218, 2003 U.S. Dist. LEXIS 14495 (S.D.N.Y. Aug. 20, 2003), (quoting <u>Vaca v. Sipes</u>, 386 U.S. 171, 185 (1967)); <u>see, e.g.</u>, <u>Desrosiers v. American Cyanamid Co.</u>, 377 F.2d 864, 870 (2d Cir. 1967) (affirming dismissal in part where plaintiff did not show futility to excuse his failure to exhaust his remedies under the contract).  The USW is obligated to follow the administrative procedures outlined in the HRP prior to filing any lawsuit to enforce its terms.

Notice

  41. Notice of this Response has been provided in accordance with the Amended Eighth Supplemental Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in

14

Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

42. Because the legal points and authorities upon which this Response relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

### Conclusion

43. The Debtors respectfully request that the Court enter an order (a) denying the USW's Motion and (b) granting such other and further relief as is just and proper.

Dated: New York, New York
November 22, 2006

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

O'MELVENY & MYERS LLP

By: /s/ Tom A. Jerman
    Robert A. Siegel (RS 0922)
    Tom A. Jerman (TJ 1129)
    Rachel S. Janger
    Jessica Kastin (JK 2288)
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

GROOM LAW GROUP, CHARTERED

By: /s/ Lonie A. Hassel
    Lonie A. Hassel (LH 8805)
1701 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 857-0620

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession