Hearing Date and Time: November 30, 2006 at 10:00 a.m.
Response Date and Time: November 24, 2006 at 4:00 p.m.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer (TM-9357)
Gordon Z. Novod (GN-0494)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Electronic Data Systems Corporation,
EDS Information Services L.L.C. and
EDS de Mexico, S.A. de C.V.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
In re:                                                         :    Chapter 11
                                                               :
DELPHI CORPORATION, et al.,                                    :    Case No. 05-44481 (RDD)
                                                               :
                                                               :    (Jointly Administered)
                                          Debtors.             :
                                                               :
-------------------------------------------------------------- x

**RESPONSE OF ELECTRONIC DATA SYSTEMS, EDS INFORMATION SERVICES L.L.C. AND EDS de MEXICO S.A. de C.V. TO THE DEBTORS' SECOND OMNIBUS OBJECTION (PROCEDURAL) TO CERTAIN (I) EQUITY CLAIMS, (II) CLAIMS DUPLICATIVE OF CONSOLIDATED TRUSTEE OR AGENT CLAIMS AND (III) DUPLICATE AND AMENDED CLAIMS (DOCKET NO. 5451); AND THIRD OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN (A) CLAIMS WITH INSUFFICIENT DOCUMENTATION, (B) CLAIMS UNSUBSTANTIATED BY DEBTORS' BOOKS AND RECORDS, AND (C) CLAIMS SUBJECT TO MODIFICATION (DOCKET NO. 5452)**

Electronic Data Systems Corporation ("EDS Corp."), EDS Information Services

L.L.C. ("EIS") & EDS de Mexico, S.A. de C.V. ("EDS Mexico") (together with EDS Corp. and

EIS, "EDS") responds to the above-captioned jointly administered Debtors' Second Omnibus

Objection (Procedural) to Certain (I) Equity Claims, (II) Claims Duplicative of Consolidated

KL2 2474877.5                                    1

Trustee or Agent Claims and (III) Duplicate and Amended Claims (Docket No. 5451) (the "Second Omnibus Objection"); and Third Omnibus Objection (Substantive) to Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification (Docket No. 5452) (the "Third Omnibus Objection", collectively with the Second Omnibus Objection, the "Omnibus Objections").

## PROCEDURAL HISTORY

A. The Chapter 11 Filings

1. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2. No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). EDS was appointed by the U.S. Trustee to serve on the Creditors' Committee and continues to serve on the Creditors' Committee today.

3. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

4. This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

B.  **Bar Date, Proofs Of Claim, And Omnibus Claims Objections**

5. On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor to file a proof of claim form with respect to each Claim.

C.  **EDS' Proofs of Claim**

6. On July 28, 2006, EDS timely filed a total of six proofs of claim (each a "Proof of Claim", collectively, the "Proofs of Claim") against Delphi Corporation ("Delphi Corp.") and Delphi Automotive Systems LLC ("DAS") (together with Delphi Corp., "Delphi" or the "Debtors").

7.      The names of the EDS entity who filed each proof of claim, the individual Debtor against which the proof of claim was filed, the amount of claim filed and the priority status are set forth in the chart below.

| Claim No. | Claimant | Debtor | Asserted Claim Amount and Priority Status |
|---|---|---|---|
| 12678 | EDS Corp. | DAS | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) |
| 12679 | EDS Corp. | Delphi Corp. | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) |
| 12680 | EDS Mexico | DAS | $ 2,061,011.00 (Priority)<br>$    518,330.54 (Unsecured)<br>$2,579,341.54 (Total) |
| 12681 | EIS | DAS | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) |
| 12682 | EDS Mexico | Delphi Corp. | $2,061,011.00 (Priority)<br>$   518,330.54 (Unsecured)<br>$ 2,579,341.54 (Total) |
| 12683 | EIS | Delphi Corp. | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) |

8.      EDS and EIS filed Proofs of Claim 12678 and 12681 respectively against DAS seeking payment of the same debt. Similarly, EDS and EIS filed Proofs of Claim 12679 and 12683 respectively against Delphi Corp. seeking payment of the same debt. The amount requested by EDS Mexico against DAS and Delphi Corp. seeks repayment of same claims made by EIS and EDS against the Debtors. EDS acknowledges that it may only have one claim against one debtor for amounts due. EDS submits that it filed both sets of Proofs of Claim on behalf of EDS, EIS and EDS Mexico against DAS and Delphi Corp. since all three entities technically hold claims against each debtor.

KL2 2474877.5                                                                                4

D.  The Debtors' Claims Procedures Motion

9. On October 31, 2006, the Debtors filed the Omnibus Objections and their Motion for Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Disallowance or Estimation of Claims And (ii) Certain Notices and Procedures Governing Hearings Regarding Disallowance or Estimation of Claims (the "Claims Procedures Motion").

E.  The Debtors' Second and Third Omnibus Claims' Objections

10. On October 31, 2006, the Debtors filed the Omnibus Objections to the EDS' Proofs of Claim. The Second Omnibus Objection seeks to expunge EDS' proofs of claim numbered 12679, 12680 and 12683 as "Duplicate And Amended Claims." A chart summarizing the Debtors' Second Omnibus Objection as it applies to EDS is set forth below.

| Claims to be Expunged | | | | Surviving Claims | | | |
|---|---|---|---|---|---|---|---|
| **Claim No.** | **Claimant** | **Debtor** | **Asserted Claim Amount and Priority Status** | **Claim No.** | **Claimant** | **Debtor** | **Asserted Claim Amount and Priority Status** |
| 12679 | EDS Corp. | Delphi Corp. | $ 2,061,011.00 (Priority) $16,691,418.68 (Unsecured) $18,752,429.68 (Total) | 12678 | EDS Corp. | DAS | $ 2,061,011.00 (Priority) $16,691,418.68 (Unsecured) $18,752,429.68 (Total) |
| 12683 | EIS | Delphi Corp. | $ 2,061,011.00 (Priority) $16,691,418.68 (Unsecured) $18,752,429.68 (Total) | 12681 | EIS | DAS | $ 2,061,011.00 (Priority) $16,691,418.68 (Unsecured) $18,752,429.68 (Total) |
| 12680 | EDS Mexico | DAS | $ 2,061,011.00 (Priority) $   518,330.54 (Unsecured) $ 2,579,341.54 (Total) | 12682 | EDS Mexico | Delphi Corp. | $ 2,061,011.00 (Priority) $   518,330.54 (Unsecured) $ 2,579,341.54 (Total) |

11. The Third Omnibus Objection seeks to reduce EDS' proofs of claim numbered 12678, 12681 and 12682. A chart summarizing the Debtors' Third Omnibus Objection as it applies to EDS is set forth below.

| Claim No. | Claimant | Debtor | Asserted Claim Amount and Priority Status | Modified Claim Amount and Priority Status |
|---|---|---|---|---|
| 12678 | EDS Corp. | DAS | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) | $         0.00 (Priority)<br>$11,176,646.96 (Unsecured)<br>$11,176,646.96 (Total) |
| 12681 | EIS | DAS | $ 2,061,011.00 (Priority)<br>$16,691,418.68 (Unsecured)<br>$18,752,429.68 (Total) | $         0.00 (Priority)<br>$11,176,646.96 (Unsecured)<br>$11,176,646.96 (Total) |
| 12682 | EDS Mexico | Delphi Corp. | $ 2,061,011.00 (Priority)<br>$    518,330.54 (Unsecured)<br>$ 2,579,341.54 (Total) | $         0.00 (Priority)<br>$    172,392.41 (Unsecured)<br>$    172,392.41 (Total) |

12. The Omnibus Objections also mandate that every response to the Omnibus Objections must include:

    (a)    a caption setting forth the name of the Court, the names of the Debtors, the case number, and the title of [the Omnibus Objection] to which the Response is directed;

    (b)    the name of the Claimant and description of the basis for the amount of the Claim;

    (c)    a concise statement setting forth the reasons why the Claim should not be disallowed, expunged, or reclassified for the reasons set forth in [the Omnibus Objection], including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing [the Omnibus Objection];

    (d)    all documentation or other evidence of the Claim upon which the Claimant will rely in opposing [the Omnibus Objection] to the extent not included with the Proof of Claim previously filed with the Court;

    (e)    the address(es) to which the Debtors must deliver any reply to the Response, if different from the address(es) presented in the Claim; and

    (f)    the name, address, and telephone number of the person (which may be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on behalf of the Claimant.

See Second Omnibus Objection ¶37; Third Omnibus Objection ¶47.

13. The Omnibus Objections also provide that:

> If a Claimant whose Claim is subject to [the Omnibus Objection] and who is served with [the Omnibus Objection] fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors may present to the Court an appropriate order disallowing and expunging or otherwise limiting such Claim without further notice to the Claimant. Thus, a failure to respond may forever bar Claimants listed on [the Omnibus Objection] from sustaining a Claim against the Debtors.

See Second Omnibus Objection ¶40; Third Omnibus Objection ¶50.

14. The Third Omnibus Objection also provides that:

> If a Response is properly and timely filed and served in accordance with the above procedures, and the Debtors are unable to reach a consensual resolution with the Claimant, the Debtors request that this Court conduct a status hearing on November 30, 2006 at 10:00 a.m. regarding this Third Omnibus Claims Objection and any Response hereto and set further hearings pursuant to the [Claims Procedures Motion] . . . **The procedures set forth in the [Claims Procedures Motion] will apply to all Responses and hearings arising from this Third Omnibus Claims Objection.**

See Third Omnibus Objection ¶48 (emphasis added).

## EDS' PROCEDURAL OBJECTIONS

15. Separately from this response, EDS filed an Objection to certain of the Debtors' requested claims' procedures as set forth in the Claims Procedures Motion and incorporates those objections herein. EDS objects to the proposed procedures contained in both the Claims Procedures Motion and in the Omnibus Objections (collectively, the "Proposed Procedures") because of the draconian effect that results if the procedures are not followed. Simply put, the Debtors appear to propose that if a claimant fails to comply to the letter with the minutiae of the Proposed Procedures, the claim will be lost in its entirety.

16. The Debtors' Proposed Procedures mandate that a Claimant's response contain all documentation or other evidence upon which the Claimant will rely in opposing the Omnibus

Objection to the extent the information is not included with the Proof of Claim previously filed with the Court.  Failure to comply with these procedures is grounds for the Debtors to present to the Court an order granting the relief requested by the Debtors without providing notice to the Claimant.  See Second Omnibus Objection ¶40, Third Omnibus Objection ¶50, Claims Procedures Motion ¶29.  EDS objects to this procedure for three reasons.

17. First, the aforementioned document requirement is contrary to procedures established in the Bankruptcy Rules for contested matters which apply to the Debtors' Omnibus Objections.  See Fed. R. Bankr. P. 3001, 9014, 7026.  A validly filed proof of claim need not include copies of all documents supporting the claim.  See Official Form 10 (creditor with voluminous documents supporting the claim may attach a summary).  The mandatory disclosures sought by the Debtors exceed those provided by Federal Rule of Civil Procedure 26(a).  In any case, the mandatory disclosures required by Federal Rule of Civil Procedure 26(a) would apply to both EDS and the Debtors -- and the Proposed Procedures impose no comparable disclosure obligations on the Debtors.

18. Second, EDS should not be required to provide any additional information regarding the basis for its claims until such time as the Debtors have provided a more specific statement regarding the basis for its objections.  As it currently stands, the Debtors filed boilerplate Omnibus Objections which do not set forth the basis for the Debtors' objections.

19. Third, EDS objects to the requirement that a Claimant is required to file publicly with the Court all supporting documents and exhibits to the Supplemental Response.  The contracts underlying EDS' Proofs of Claim contain highly proprietary and confidential business information which EDS is bound to keep confidential under the terms of the Contracts (as defined below).  The Debtors have previously conceded the confidential nature of similar

contracts in connection with the Debtors' request for authority to enter into new Information Technology Infrastructure Outsourcing Agreements (Docket No. 5237) with EDS and Hewlett Packard Company.

20. To the extent that the Court overrules EDS' objections to the Proposed Procedures, EDS reserves the right to comply with these procedures within a reasonable time after a protective order has been entered by the Court and in accordance with applicable Federal Rules of Civil Procedure. Even if the Court were to order mandatory disclosure under Federal Rule of Civil Procedure 26(a), such disclosure is not required until 14 days after a discovery conference under Federal Rule of Civil Procedure 26(f) has been held.

21. Notwithstanding its objections, EDS discloses that Mr. David Lee possesses the ultimate authority to reconcile, settle, or otherwise resolve EDS' Proofs of Claim on behalf of EDS. Mr. Lee's contact information is as follows: David Lee, Electronic Data Systems Corporation, 5400 Legacy Drive, MS: H1-6C-48, Plano, TX 75024, Tel: (972) 605-1135. In addition, all correspondence regarding the Proofs of Claim should be delivered to: (i) Electronic Data Systems Corporation, 5400 Legacy Dr., Mail Stop H3-3A-05, Plano, TX 75024, Attention: Ayala Hassell, Esq., and (ii) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attention: Thomas Moers Mayer, Esq. and Gordon Z. Novod, Esq.

## FACTS REGARDING EDS' PROOFS OF CLAIMS

22. EDS provides to Delphi and it subsidiaries and affiliates a full suite of information technology outsourcing services. Prior to the Bar Date, EDS Corp. filed Proofs of Claim 12678 and 12679 seeking from DAS and Delphi Corp., respectively, **$18,752,429.68** plus any and all applicable post-petition interest. Similarly, prior to the Bar Date EIS filed Proofs of

Claim 12681 and 12683 seeking from DAS and Delphi Corp., respectively, the same amount as sought by EDS Corp.  In addition, prior to the Bar Date EDS Mexico filed Proofs of Claim 12680 and 12682 seeking from DAS and Delphi Corp., respectively, **$2,579,341.54** plus any and all applicable post-petition interest.  These amounts shall be collectively referred to as the "Disputed Claim Amount."

23.     The Disputed Claim Amount arises from a series of executory contracts and agreements (collectively, the "Contracts") entered into by EDS Corp., EIS and/or EDS Mexico, and Delphi, DAS and/or Delphi Automotive Systems, S.A. de C.V. ("Delphi Mexico").  The Contracts include the Master Agreement,[1] and certain I/T Agreements (as defined under Section 1.1 of the Terms and Conditions to the Master Agreement) and certain Sub-Agreements (as defined below).

24.     Both Delphi Corp. and DAS owe the entire amount claimed in the Proofs of Claim.  The Master Agreement (and its Terms and Conditions incorporated thereto) provides that Delphi Corp. will be liable for all prepetition claims that any EDS entity may have against DAS.  The Terms and Conditions of the DMA provides as follows:

---

[1] The Delphi Master Agreement (the "Master Agreement" or "DMA"), effective as of July 1, 1999, by and among Delphi Automotive Systems Corporation n/k/a Delphi Corporation, Electronic Data Systems Corporation, EDS Information Services L.L.C.  The Master Agreement was amended in twice in 2001: (i) Amendment 1 to the Delphi Master Agreement and Existing Contracts by and Between Delphi Automotive Systems Corp., Electronic Data Systems Corporation, and EIS Information Services, L.L.C. dated July 1, 1999" and is effective October 1, 2001 ("Amendment 1"); and (ii) Amendment 2 to the Delphi Master Agreement and Existing Contracts by and Between Delphi Automotive Systems Corp., Electronic Data Systems Corporation, and EIS Information Services, L.L.C. dated July 1, 1999" and is effective October 1, 2001 ("Amendment 2").

KL2 2474877.5                                                         10

> **1.4 Rights and Obligations of Parties.** Notwithstanding anything to the contrary contained herein: (i) each of EDS Parent and **Delphi Parent**[2] **shall remain responsible and liable for** all performance by, and any **obligations of**, **each** EDS Contracting Party and **Delphi Contracting Party**,[3] respectively, under the I/T Agreement; and (ii) each of Delphi Parent and the Delphi Contracting Party and EDS Parent and the EDS Contracting Party shall have all of the applicable rights and benefits under the I/T Agreement to the extent that Delphi Parent or such Delphi Contracting Party and EDS Parent or such EDS Contracting Party, respectively, has executed and delivered the I/T Agreement.

Terms and Conditions §1.4 (emphasis added).

25. The Terms and Conditions of the DMA are incorporated into each of the other applicable EDS/Delphi contracts (together, the "Sub-Agreements"). Sub-Agreements are either forms of "Delphi Service Agreements" ("DSAs") or they are "Transaction Agreements," which are entered into pursuant to the DSAs. In addition to incorporating the Terms and Conditions of the DMA, either (i) Delphi Corp.; (ii) DAS; or (iii) Delphi Mexico[4] was the counterparty of each Sub-Agreement.

26. Under each of the Sub-Agreements, the Delphi Contracting Party is liable for payment of EDS' invoices in accordance with Section 19.4 of the Terms and Conditions.[5] The

---

[2] "Delphi Parent" means Delphi Automotive Systems Corporation n/k/a Delphi Corp. See DMA preamble.

[3] Section 1.1(1)(k) of the Terms and Conditions to the Master Agreement, define a "Delphi Contracting Party" as "(i) with respect to the Delphi Master Agreement, Delphi Parent, (ii) with respect to any Delphi Service Agreement, the Delphi Affiliate that enters into the Delphi Service Agreement and is identified as such therein, and (iii) with respect to any Transaction Agreement, the Delphi User Organization that enters into the Transaction Agreement and is identified as such therein."

[4] Delphi Corp. and DAS are debtor entities. Although Delphi Mexico is not a debtor entity, under Section 1.4 of the Terms and Conditions of the DMA, Delphi Corp. is liable for any debts incurred by Delphi Mexico. The Mexico Delphi Service Agreement also contains a separate "Acknowledged and Agreed" entry for DAS on the signature page.

[5] Section 19.4 of the Terms and Conditions provides that Delphi "shall pay invoices in accordance with its Multilateral Netting System (MNS-2)." Section 19.4 of the Terms and Conditions is incorporated in each of the Contracts. See U.S. Delphi Service Agreement §5.4(b); Global Desktop Program DSA §5.3(b); Global Applications Support Service Agreement §3.3(e)(iv); Mainframe Computing Services Agreement §5.4(b); Mexico DSA §5.4(b); Label Error Proofing Services Transaction Agreement §1.1, Exhibit 3.3; Mexico Help Desk Transaction Agreement §1.1, Exhibit 3.3; Mexico Information Protection Services Transaction Agreement §1.1, Exhibit 3.3.

KL2 2474877.5                                11

Debtors have not offered any theory as to why EDS does not have valid claims against Delphi Corp. and DAS under these agreements.

27.     The Disputed Claim Amount collectively represents four types of obligations due: (i) amounts due with respect to EDS' U.S. operations; (ii) amounts due with respect to EDS' Mexico operations; (iii) amounts due under the Delphi/EDS Agreement on US DMA and Non-Commutable Costs Payment Terms dated May 2, 2002; and (iv) invoices pertaining to Services Minimum Commitment Shortfall.

28.     <u>Amounts Owed With Respect to U.S. and Mexico Services</u>.  EDS is obligated to provide Delphi with invoices for all Services performed by EDS and all related charges incurred by Delphi during the immediately prior calendar month.  Terms and Conditions §19.4.  These invoices were provided to the Debtors on a monthly basis on or before the 20th day of each calendar month.  <u>Id</u>.  Section 19.4 of the Terms and Conditions also provides that Delphi "shall pay invoices in accordance with its Multilateral Netting System (MNS-2), which provides, on average, that payment shall be made on the second day of the second month, following the calendar month during which such services and related charges were invoiced."  <u>Id</u>.

29.     The Terms and Conditions further provide that:

> [w]here products are destined for locations or Services are performed outside of the United States, then invoices shall be sent and payments received between the EDS and Delphi Affiliates in those applicable countries or as otherwise agreed and, unless otherwise agreed, all payments will be made by Delphi in the applicable local currency."

<u>Id</u>.  In the case of EDS Mexico, it was the practice of the parties that EDS would invoice DAS for invoices with respect to EDS Mexico operations.

30.     Proofs of Claim 12678, 12679, 12681 and 12683 request payment of $11,173,088.21 plus applicable post-petition interest with respect to EDS' United States operations.  EDS invoiced DAS for these amounts and specified in each invoice the Delphi

division (i.e., Delphi Headquarters, Aftermarket, DTI, Chassis/Energy & Engine, Harrison, Packard Electric, Saginaw, Delco) which incurred the charge.

31.     Proofs of Claim 12680 and 12682 request payment of $518,330.54 plus applicable post-petition interest with respect to EDS' Mexico operations. EDS Mexico invoiced DAS for this amount and the invoices were denominated in U.S. currency. All the EDS Mexico invoices were pursuant to the Mexico DSA,[6] a Sub-Agreement or a Transaction Agreement entered into by Delphi.

32.     These Transaction Agreements include, without limitation, the Mexican Label Error Proofing Services Transaction Agreement,[7] the Mexico Transaction Agreement for Help Desk Services,[8] Joint U.S./Mexico Information Protection Services Transaction Agreement.[9]

33.     DAS and Delphi are liable under either the Mexico DSA or under the Master Agreement for any amounts owing with respect to the Mexico Transaction Agreements.

34.     <u>Delphi/EDS Agreement on US DMA and Non-Commutable Costs Payment Terms</u>.  Amounts due with respect to the Delphi/EDS Agreement on US DMA and Non-Commutable Costs Payment Terms dated May 2, 2002 total $4,999,999.93 plus applicable post-petition interest. The amounts arise under an agreement entered into as of May 2, 2002 by and among DAS and EDS Corp. which revised the payment terms for the Vega 2 Delphi Service

---

[6] The Mexico DSA entered into pursuant to the Master Agreement as of April 1, 2000 by and among EDS Mexico and Delphi Mexico and was acknowledged and agreed to by DAS.

[7] Entered into as of October 1, 2003 by and among EDS Mexico and Delphi Mexico pursuant to the Mexico DMA and the Master Agreement.

[8] Entered into as of April 13, 2004 by and among EDS Corp., EIS, EDS Mexico, and DAS pursuant to the Master Agreement.

[9] Entered into as of November 26, 2003 by and among EDS Corp., EIS, EDS Mexico, DAS and Delphi Mexico pursuant to the Master Agreement.

Agreement (the "Vega 2 Services Agreement")[10] and the DMA dated July 1, 1999. The amount due under this part of EDS' Proofs of Claim arises with respect to non-commutable costs. This agreement amends certain payment terms for the Vega 2 Services Agreement and the Master Agreement. Because this agreement incorporates the Terms and Conditions and the Master Agreement, DAS and Delphi are primarily liable for any amounts owing with respect thereto.

35. <u>Invoices Pertaining to Services Minimum Commitment Shortfall</u>. Under Amendment 1 and 2 to the Master Agreement, Delphi and EDS agreed that Delphi would use and pay EDS for a pre-determined amount of annual services. In the event that Delphi did not meet its Services Minimum Commitment, creating a difference between a Services Minimum Commitment and actual payments, Delphi had the option to either rollover the balance, buy down the amounts owed upon termination or pay a "shortfall fee" calculated as set forth in Amendment 1. <u>See</u> Amendment 1, §5, amending the Terms and Conditions as set forth therein. Amendment 1 provides for a tracking and settlement process of Services Minimum Commitments as follows:

> Delphi and EDS will track progress toward achievement of the Services Minimum Commitment on a monthly basis. . . . On or before December 10, of the then current year, EDS and Delphi will complete a preliminary year end reconciliation. If the mutually agreed preliminary reconciliation indicated a Shortfall in that year, Delphi .may elect to execute a provision described in paragraph 18.1 [therein]. EDS will invoice Delphi for any amounts due per the preliminary reconciliation on the final invoice of each calendar year. A final reconciliation will be completed by February 15 , of the following year. . . . Any variance amounts will be invoiced . . . to Delphi in the next invoice period.

Amendment 1 § 5(d).

36. Prior to EDS' filing of the Proofs of Claim Delphi agreed that $2,139,604.00 is the value of the Debtors' shortfall for its Services Minimum Commitment. Of this amount, EDS

---

[10] Entered into as of December 21, 2001 by and among EDS Corp., EIS, EDS Mexico, Delphi Corp. pursuant to the Master Agreement.

KL2 2474877.5                                14

and Delphi have agreed that $78,593[11] is due as a postpetition administrative expense claim pursuant to 11 U.S.C. §§ 503 and 507 (an "<u>Administrative Expense Claim</u>").  EDS and the Debtors disagree on whether the remaining $2,061,011.00 is properly treated as an Administrative Expense Claim.

37.    EDS believes that the entire Services Minimum Commitment Shortfall amount ($2,139,604.00) is properly characterized as an Administrative Expense Claim since the shortfall fee became due and owing post-petition after the Debtors conducted their reconciliation of services used.  Secondly, Delphi continued to use EDS' services post-petition which benefited the estate with full knowledge that this fee became due and owing post-petition.  <u>See</u>, <u>e.g.</u>, <u>Adelphia Business Solutions, Inc.</u>, 296 B.R. 656 (Bankr. S.D.N.Y. 2003) (finding that the "inducement" requirement for administrative expense treatment must be construed in accordance with common sense: administrative expense treatment is required where the postpetition benefit is knowingly accepted and desired, postpetition by the postpetition debtor-in-possession.).  To date, the Debtors have not rejected the Master Agreement and have continued to use the services provided by EDS there under.  Therefore, the entire Services Minimum Commitment Shortfall ($2,139,604.00) should be characterized and allowed as an Administrative Expense Claim.

## THE DEBTORS' OMNIBUS OBJECTIONS.

38.    The Debtors do not identify the specific basis for their contention that EDS' Proofs of Claim 12679, 12680 and 12683 are duplicative in the Debtors' Second Omnibus Objection.  The Debtors seek to expunge duplicate claims arising "when a claimant filed [p]roofs of [c]laim against multiple Debtors entities for the same liability" asserting that it "is axiomatic

---

[11] Of this amount, $59,759 was invoiced to and paid by the Debtors in December 2005, leaving $18,834 due and owing.

KL2 2474877.5              15

that creditors are not entitled to multiple recoveries for a single liability against a debtor." Second Omnibus Objection, ¶31.

39.     Although the Debtors have characterized their Second Omnibus Objection as "procedural," this is hardly a procedural objection.  The Debtors actually seek to disallow EDS' substantive rights of recovery held against Delphi and DAS.  The Debtors skirt over the issue of joint and several liability and particular rights which arise under EDS' Contracts with Delphi.  The Proofs of Claim do not seek nor do they entitle EDS to recover more than once on the same debt against the same debtor.  Rather, they preserve the right of EDS to recover a maximum recovery of up to 100% in the aggregate plus applicable post-petition interest against either DAS or Delphi Corp. or both.  The Debtors have not argued for nor is it appropriate to grant the Debtors substantive consolidation in a claims objection.  Absent an order granting the Debtors substantive consolidation, EDS is entitled to collect the outstanding debt from both Delphi Corp. and DAS.

40.     Like the Second Omnibus Objection, the Third Omnibus Objection also fails to provide the specific basis for the relief sought by the Debtors.  The Third Omnibus Objection and each EDS customized notice there under states that EDS' Proofs of Claim are "subject to modification ... claims that were overstated or denominated in foreign currencies..."  See particularized notices for EDS Proofs of Claim attached hereto as Exhibit A.  The Third Omnibus Objection does not state any basis for the reduction of EDS' Proofs of Claim.  Finally, the invoices attached to the Proofs of Claim are denominated in U.S. currency and not in a foreign currency.  Therefore, the Debtors' Third Omnibus Objection as it applies to claims denominated in foreign currencies is inapplicable to EDS.  See Exhibit D to Proofs of Claim 12678, 12679, 12681, 12683 and Exhibit C to Proofs of Claim 12680 and 12682.

**ARGUMENT**

41.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that, "a claim of interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest…objects." 11 U.S.C. § 502(a).  It is also well established that a validly filed proof of claim constitutes prima facie evidence of the claim's validity.  See Fed. R. Bankr. P. 3001(f).

42.     EDS' Proofs of Claim were properly prepared, timely filed, supported and documented.  A timely filed proof of claim constitutes *prima facie* evidence of the amount and validity of the claim.  11 U.S.C. § 502(a); Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.), 372 F.3d 637, 640 (4th Cir. 2004); In re St. Johnsbury Trucking Co., 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) aff'd 221 B.R. 692 (S.D.N.Y. 1998), aff'd 1999 WL 248153, 173 F.3d 846 (2d Cir. 1999); In re 183 Lorraine St. Assoc., 198 B.R. 16, 26 (E.D.N.Y. 1996); Fed. R. Bankr. P. 3001(f).  Accordingly, EDS' properly filed proofs of claim constitute *prima facie* evidence of the amount and validity of these claims.  Neither a debtor's books and records nor its schedules of liabilities are determinative of the validity of a claim in a bankruptcy case.  In re Systems Communications, Inc., 234 B.R. 143 (Bankr. M.D. Fla. 1999).

43.     EDS is mindful of, and respects, the Debtors' obligation to review claims and to object to the allowance of improper claims.  See In re International Yacht and Tennis, Inc., 922 F.2d 659, 663 (11th Cir. 1990).  The Omnibus Objections, however, are mere boilerplate and do not provide any factual support or analysis for the Debtors' position, nor do they rebut the validity of EDS' Proofs of Claim.  To rebut the *prima facie* validity of EDS' Proofs of Claims, the Debtors must come forward with specific, not general, objections and facts in support of such objections.  See, e.g., In re Homelands of DeLeon Springs, Inc., 190 B.R. 666 (Bankr. M.D. Fla.

1995) (party objecting to proof of claim has burden of proof to produce evidence equivalent in probative value to that of the creditor to rebut the *prima facie* effect of the proof of claim). Only when sufficient evidence is produced to negate the validity of a properly filed claim does the burden shift back to the creditor to establish by a preponderance of the evidence that the claim is valid. <u>In re Mission of Care, Inc.</u>, 164 B.R. 877, 879 (Bankr. D. Del. 1994); <u>see</u> <u>also</u> <u>In re Hemingway Trans., Inc.</u>, 993 F.2d 915, 925 (1st Cir. 1993) ("the imposition of an objection does not deprive the proof of claim presumptive validity unless the objection is supported by *substantial evidence*.") (emphasis added).

    44.    Here, the Debtors, with the assistance of Booze Allen Hamilton, recently conducted an extensive review of Selling, General and Administrative Expenses and entered into a new information technology infrastructure outsourcing agreement with EDS. The Debtors should be able to readily identify in detail the basis for their objection to the Proofs of Claim. They have failed to do so. Therefore, the Omnibus Objections fail to satisfy the Debtors' burden of rebutting with credible evidence EDS' *prima facie* valid claims.[12]

## MEMORANDUM OF LAW

    45.    This Response sets forth specific responses with supporting law divided under numerous paragraphs. EDS respectfully requests that the requirements of the service and filing of an answering memorandum of law under Local Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

---

[12] EDS reserves the right to amend or supplement this response (and provide supporting documents and/or evidence) after the Debtors have stated with greater specificity (presumably in their "<u>Supplemental Reply</u>") the basis of their Omnibus Objections.

## CONCLUSION

46.     For all of the foregoing reasons, this Court should (1) deny with prejudice the Debtors' Second Omnibus Claim Objection as it applies to Proofs of Claim 12680, 12683, 12679; (2) deny with prejudice the Debtors' Third Omnibus Claim Objection as it applies to Proofs of Claim 12678, 12681, 12682; (3) deny application of the procedures found in ¶¶ 37 and 40 of the Second Omnibus Objection and ¶¶47, 48 and 50 of the Third Omnibus Objection as they apply to the EDS' Proofs of Claim; and (4) award EDS its costs and expenses, including reasonable attorneys' fees, for having to file this Response to the factually and legally insufficient Omnibus Objections.

Dated: New York, New York            KRAMER LEVIN NAFTALIS & FRANKEL LLP
       November 22, 2006

                                    /s/ Gordon Z. Novod
                                    Thomas Moers Mayer (TM-9357)
                                    Gordon Z. Novod (GN-0494)
                                    1177 Avenue of the Americas
                                    New York, New York  10036
                                    Telephone: (212) 715-9100

                                    Attorneys for Electronic Data Systems Corporation, EDS
                                    Information Services L.L.C. and EDS de Mexico, S.A. de C.V.