Hearing Date and Time: November 30, 2006 at 10:00 a.m.

William E. Dornbos, Esq.
Assistant Attorney General
Environmental Protection Bureau
New York State Attorney General's Office
120 Broadway, 26th Floor
New York, NY 10271
(212) 416-8483 (tel)
(212) 416-6007 (fax)
William.Dornbos@oag.state.ny.us

Counsel for Claimant New York State
Department of Environmental Conservation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re DELPHI CORPORATION, et al.,

                                Debtors.

-----------------------------------------------------------------X

Chapter 11

Case No. 05-44481 (RDD)
(Jointly Administered)

### NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION'S RESPONSE TO DEBTORS' THIRD OMNIBUS OBJECTION TO PROOFS OF CLAIM NOS. 13776 AND 13881

      The New York State Department of Environmental Conservation (DEC) hereby responds, through its undersigned counsel, to the debtors' Third Omnibus Objection to DEC's timely filed Proofs of Claim, Nos. 13776 and 13881 (Claims), as follows:

**I.**    **FACTUAL BACKGROUND**

      1.    Delphi Automotive Systems LLC (Delphi)[1] owns and operates two inactive

---

[1] Delphi Automotive Systems LLC is an affiliate of Delphi Corporation and has filed a petition (Chapter 11 Case No. 05-44640) that is being jointly administered in the above-

hazardous waste disposal sites in the State of New York.[2]  One site is commonly known as the Delphi Automotive Systems Site (Delphi Automotive Site) and is located at 1000 Lexington Avenue, Rochester, New York.  *See* Claim 13776 (attached Order on Consent).  The other site is commonly known as the Delphi Harrison Thermal Systems Site (Delphi Harrison Site) and is located at 200 Upper Mountain, Lockport, New York.  *See* Claim 13881 (attached Order on Consent).

        **A.**        **Ongoing Cleanup at Delphi Automotive Site**

        2.        Delphi has owned and operated the Delphi Automotive Site since December 10, 1988.  *See* Claim 13776, attached Order on Consent, ¶ 2.  The Site has been contaminated with an underground plume of oil-like product, called LNAPL (light non-aqueous phase liquid).  *See id.*, ¶ 10.  Based on this contamination, DEC listed the Site on its Registry of Inactive Hazardous Waste Disposal Sites as Site No. 828064.  *See id.*, ¶ 5.  DEC classified the Site as "Class 2," meaning that the Site presents a significant threat to the public health or environment.  *See id.*

        3.        On February 4, 2002, Delphi entered into an Order on Consent with DEC regarding the Site.  *See id*.  The Order obligated DEC to perform a remedial investigation and feasibility study of the Site's contamination.  *See id.*, ¶ 12.  It also obligated Delphi to reimburse DEC's administrative costs for overseeing Delphi's remedial work.  *See id.*  This Order on

---

captioned proceeding with Delphi Corporation's petition (Chapter 11 Case No. 05-44481).

   [2]  The background outlined here in summary fashion is detailed extensively in the documents originally submitted with Claims 13776 and 13881, unless otherwise indicated.  DEC relies on all of the facts and evidence contained in the Claims and their attachments in support of DEC's Response to the debtors' Third Omnibus Objection.  DEC reserves the right to offer supplemental evidence and arguments in support of both Claims, particularly in light of the *pro forma* nature of the debtors' objection.

Consent remains in effect.

4.      Delphi is currently undertaking the required remedial investigation and feasibility study for the Site, but it is not yet complete. *See* Affidavit of Kelly Cloyd (Cloyd Aff.), ¶ 4, attached hereto as Exhibit 1. No remedy has been chosen for the Site. *See id.* The Record of Decision for the Site, in which DEC selects the remedy, is not expected to be issued until March 2008. *See id.*

5.      DEC intends to require Delphi to implement a remedy for the Site either by entering into an Order on Consent for that purpose or, if Delphi is unwilling to do so, by pursuing Delphi through an enforcement proceeding that would seek injunctive relief requiring Delphi to complete the Site's remediation.[3] *See id.*

### B.      Ongoing Cleanup at Delphi Harrison Site

6.      Delphi has owned the Delphi Harrison Site since December 10, 1988. *See* Proof of Claim 13881 (attached Order on Consent, ¶ 2). The Site's soil and groundwater have primarily been contaminated with the solvent and volatile organic compound, trichloroethylene (TCE). *See id.* (¶¶ 3-5); *see also* Claim 13881 (attached Record of Decision, pp. 5-7). Based on this TCE contamination, DEC listed the Site on its Registry of Inactive Hazardous Waste Disposal Sites as Site No. 932113. *See* Claim 13881 (attached Order on Consent, ¶ 6). DEC determined that the Site's TCE contamination created potential threats to human health and the environment

---

[3] Regardless of the disposition of these Proofs of Claim, DEC reserves the right to seek and obtain injunctive relief against the debtors for any future remediation of the Site. *See Torwico Elec., Inc. v. State of New Jersey, Dept. of Envtl. Protection*, 8 F.3d 146, 151 (3rd Cir. 1993). The debtors' duty to comply fully with the State of New York's environmental laws and DEC's regulatory requirements is nondischargeable and survives this bankruptcy proceeding. *See id.*

3

that required remedial action. *See* Claim 13881 (attached Record of Decision, pp. i, 1.)

7.   On July 31, 2001, Delphi entered into an Order on Consent with DEC to perform a remedial investigation and feasibility study of the Site's contamination. *See* Claim 13881 (attached Order on Consent). In March 2005, after the completion of Delphi's investigation, DEC issued a Record of Decision[4] that selected "monitored natural attenuation" as the final remedy for the Site. *See* Claim 13881 (attached Record of Decision, p. i-ii, 13-15.). The Record of Decision estimated that the total present worth, or cost, of this remedy was $255,000. *See id.* (p. 10).

8.   The final remedy has not yet been implemented. *See* Affidavit of Glenn M. May (May Aff.), attached hereto as Exhibit 2. DEC intends to require Delphi to implement a final remedy for the Site either by entering into an Order on Consent for that purpose or, if Delphi is unwilling to do so, by pursuing Delphi through an enforcement proceeding that would seek injunctive relief requiring Delphi to complete the Site's remediation. *See id.*, ¶ 6.

**C.   DEC'S Proofs of Claim**

9.   DEC has filed two Proofs of Claim against the debtors, one for each inactive hazardous waste disposal site owned and operated by the debtors.

**1.   Proof of Claim #13776 – Delphi Automotive Site**

10.  On July 31, 2006, DEC timely filed Proof of Claim 13776 against Delphi for DEC's past and estimated future remedial costs relating to the cleanup of contamination at the

---

[4] The Record of Decision for the Delphi Harrison Site is based on an extensive administrative record compiled by DEC. *See* Proof of Claim 13881 (attached Record of Decision, p. i, Appendix B.) DEC also relies on that administrative record as evidentiary support for Proof of Claim 13881. The administrative record is too voluminous, and contains too many documents, to attach to the Claim or here.

4

05-44481-rdd    Doc 5734    Filed 11/22/06    Entered 11/22/06 14:42:27    Main Document
                                    Pg 5 of 14

Delphi Automotive Site. *See* Claim 13776 and Attachment A. DEC's Claim stated a total claim against Delphi of $9,962,674.48. *See id.* A portion of that total, $6,906.48, consisted of DEC's liquidated administrative oversight costs for the Site that had been incurred prior to the filing of the Claim. *See id.* The remainder, $9,955,768.00, consisted of DEC's estimated and unliquidated future remedial costs for the Site in the event the Department must implement the remedy using State Superfund monies. *See id.*; *see also* Exhibit 1, Cloyd Aff., ¶ 3.

11. DEC's estimate of future remedial costs assumes that the remedy at the Site will consist of the following: the removal of approximately 20,000 tons of contaminated soil at a cost of $100 per ton ($2,000,000.00); the installation of five multi-phase extraction systems to address grossly contaminated source areas ($850,000.00); the installation of one additional non-aqueous phase liquid collection system ($100,000.00); the extension of the existing fractured bedrock groundwater collection system ($100,000.00); payments for engineering services (approximately 15%) and a fixed fee (approximately 5%) on these capital costs; annual operation, maintenance, and monitoring costs of approximately $496,000.00 over 30 years for a total of $6,154,864.00 (present value); and DEC's estimated future administrative costs for the Site of $140,904.00. *See* Attachment A to Claim; Exhibit 1, Cloyd Aff., ¶ 5.

    **2.  Proof of Claim #13881 – Delphi Harrison Site**

12. On July 31, 2006, DEC timely filed Proof of Claim 13881 against Delphi for DEC's past and estimated future remedial costs relating to the cleanup of contamination at the Delphi Harrison Site. *See* Claim 13881 and Attachment A. DEC's Claim stated a total claim against Delphi of $407,031.73. *See id.* A portion of that total, $2,031.73, consisted of DEC's liquidated administrative oversight costs for the Site that had been incurred prior to the filing of

the Claim. *See id.* The remainder, $405,000.00, consisted of DEC's estimated and unliquidated future remedial costs for the Site in the event the Department must implement the final remedy using State Superfund monies. *See id.*; *see also* Exhibit 2, May Aff., ¶ 3.

13. This future remedial cost estimate of $405,000.00 had two components: (1) the expected cost of groundwater monitoring and related annual operating and maintenance costs, which the Record of Decision for the Site had already calculated to be $255,000.00; and (2) the expected cost of a soil vapor mitigation system – a cost estimated to be $150,000.00 – if such a system was found to be necessary by an ongoing soil vapor intrusion investigation at the Site. *See* Attachment A to Claim; Exhibit 2, May Aff., ¶ 4.

14. Since the filing of DEC's Claim, the soil vapor intrusion investigation at the Delphi Harrison Site has concluded, and the Department and the New York State Department of Health have determined that there is no need for a soil vapor mitigation system at the Site. *See* Exhibit 1, May Aff., ¶ 5. DEC's estimate of future remedial costs at the Site must be adjusted to reflect this new information, and, therefore, the estimate of unliquidated future remedial costs for Claim 13881 is now the one arrived at in the Record of Decision for the Site: $255,000.00. *See id.*

## II.     ARGUMENT

### A.     The Debtors' Frivolous *Pro Forma* Objection Fails to Refute DEC's Well-Documented Proofs of Claim.

15. In their Third Omnibus Objection, the debtors state only one reason for objecting to DEC's Proofs of Claim Nos. 13776 and 13881: the Claims are "unsubstantiated" because they do not appear in the debtors' "books and records." *See* Debtor's Notice of Objection; Third

6

Omnibus Objection, p. 12.  The objection contains no analysis of DEC's Claims or even any discussion of the contents of the Claims or their supporting documents and references.  The objection, in fact, offers no evidence at all.  It is a bald assertion.

16.     The filing of a proof of claim constitutes *prima facie* evidence of its amount and validity.  *See* Fed. R. Bankr. P. 3001(f); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B. R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd* 91 F.3d 151 (9th Cir. 1996).  A proof of claim that is *prima facie* valid "alleges facts sufficient to support a legal liability [of the debtor] to the claimant[.]" *In re Allegheny*, 954 F.2d at 173-74.

17.     DEC's well-documented Proofs of Claim more than satisfy the requirements of Rule 3001(f).  For both Claims, DEC attached a claim narrative that explained the factual and legal bases of the Claims and their estimates in detail, attached copies of the Orders on Consent for each Site, and attached copies of DEC cost summaries and personnel billing records for each Site to substantiate its claims for past oversight costs.  For the Delphi Harrison Site, DEC also attached a copy of the Site's public Record of Decision to further substantiate DEC's estimate of unliquidated future remedial costs for that Site.  Accordingly, DEC's Claims are entitled to be treated as *prima facie* evidence of the validity and amount of the Claims at issue.

18.     Mere conclusory statements, like those made in the debtors' Third Omnibus Objection, do not rebut the *prima facie* presumption of validity of DEC's Proofs of Claim.  *See In re Brown*, 221 B.R. 46, 48 (Bankr. S.D. Ga. 1998).  Pursuant to Rule 3001(f), "[a] party objecting to a claim has the initial burden of presenting a substantial factual basis to overcome the *prima facie* validity of a proof of claim [and] [t]his evidence must be of a probative force

equal to that of the creditor's proof of claim." *In re Hinkely*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), *aff'd* 89 B.R. 608 (S.D. Tex. 1988), *aff'd* 875 F.2d 859 (5th Cir. 1989) (internal citations omitted). In order "to overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000), *aff'd* 34 Fed. Appx. 20 (2d Cir. 2000).

19. Where a debtor simply makes a *pro forma* objection without any evidentiary support, a court may summarily overrule the objection. *See, e.g., In re Garner*, 246 B.R. 617, 620, 623 (B.A.P. 9th Cir. 2000) (debtor's assertion that there was no valid obligation to pay, without any evidentiary support, denied because the debtor failed to carry its burden to overcome the presumption of validity conferred on a proof of claim). The *prima facie* validity of a proof of claim is "strong enough to carry over a mere formal objection without more." *In re Schlehr*, 290 B.R. 387, 395 (Bankr. D. Mont. 2003) (internal citation omitted).

20. In this case, the debtors have filed a *pro forma* objection against Proofs of Claim that have more than sufficient evidentiary support and are thus *prima facie* valid. The debtors' utter failure to even attempt to refute the probative force of DEC's claims requires the immediate denial of their *pro forma* Third Omnibus Objection without a hearing or the initiation of a contested matter.[5]

21. Furthermore, in light of all of the evidence DEC has submitted in support of their

---

[5] Counsel for DEC has tried to avoid burdening the Court with unnecessary litigation by attempting to contact counsel for the debtors on November 14, 2006 both through the telephone number provided by the debtors and through the debtors' designated e-mail address. Counsel for DEC did so in hopes of reaching an informal resolution regarding the Third Omnibus Objection. Counsel for the debtors has not returned the call or replied to the e-mail.

Proofs of Claim, it is unreasonable to believe the debtors do not possess books and records that identify their liability to DEC. The debtors have been aware for some time of the environmental contamination that forms the factual basis for DEC's Claims – certainly since they entered into Orders on Consent with DEC for each Site several years ago. Under those Orders, the debtors agreed to perform thorough remedial investigations of the environmental contamination at each Site. Those investigations – one of which is ongoing at the Delphi Automotive Site – have resulted in the creation of numerous documents and records that are undoubtedly in the possession and control of the debtors. The debtors are also in regular contact with DEC technical staff regarding the ongoing cleanups at both Sites.

22.     Given the debtors' long-standing knowledge of the contaminated sites at issue in DEC's Claims, their Third Omnibus Objection is frivolous and an abuse of this Court's process, causing the State of New York to bear an unnecessary public expense in the preparation of a response. *See In re Ambotiene*, 316 B.R. 25, 33-36 (E.D.N.Y. 2004); 28 U.S.C. § 1927; Bankruptcy Code 105, 11 U.S.C. § 105. For this reason alone, the Third Omnibus Objection should be denied and the State should be awarded its attorneys' fees and costs incurred in the preparation of its Response.

    **B.**     **The Debtors Cannot Avoid Compliance with Their Environmental Duties through Bankruptcy.**

23.     Delphi's Third Omnibus Objection to DEC's Claims should also be denied by the Court to the extent that the Objection is an attempt to circumvent state and federal environmental laws and regulations governing the cleanup of inactive hazardous waste disposal sites.

24.     Delphi has a statutory duty under state and federal environmental law to fully

9

investigate and clean up the contamination at the Delphi Automotive and Delphi Harrison Sites. *See, e.g., Ohio v. Kovacs*, 469 U.S. 274 (1985) (debtor in possession of a hazardous waste site may not refuse to remove the source of pollution as obligated by state law); *United States v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077 (3d Cir. 1987) (Chapter 11 debtor was obliged to comply with Clean Air Act); *In re Allegheny Int'l, Inc.*, 158 B.R. 343 (Bankr. W.D. Pa. 1992) (Chapter 11 debtor was required to comply with pre-petition consent decree ordering cleanup of facilities that debtor no longer owned or actively operated); *In re Envtl. Waste Control*, 125 B.R. 546, 550 (N.D. Ind. 1991).

25.     Any use of the Bankruptcy Code to effectively immunize Delphi from complying with police and regulatory laws is also contrary to the exclusion from the automatic stay for enforcement of police or regulatory powers provided in 11 U.S.C. § 362(b)(4). For example, the Bankruptcy Code does not preclude a state from enforcing an administrative consent order requiring compliance with state environmental laws and corrections of prior violations, *see Penn Terra Ltd. v. Pennsylvania Dep't of Envtl. Resources*, 733 F.2d 267 (3d Cir. 1984), or preclude the government from bringing a CERCLA cost-recovery action, *see United States v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir. 1988).

26.     Any use of the Bankruptcy Code to escape obligations to clean up property is also contrary to the overriding policy of protecting public health and safety, which limits trustees' ability to abandon contaminated property. *See Midlantic National Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494 (1986); *Pennsylvania Dep't of Envtl. Resources v. Conroy*, 24 F.3d 568 (3d Cir. 1994).

27.     Furthermore, DEC's investigatory Order on Consent for the Delphi Automotive

10

Site is not a "claim" that can be discharged or impaired in bankruptcy. A claim is defined to include "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such equitable remedy is reduced to judgment, liquidated, fixed, contingent, mature, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). This provision carves out specific-performance type remedies from bankruptcy proceeds, because such claims would have limited meaning if they could be avoided simply by filing for chapter 11 reorganization. Plainly prohibitory injunctions do not fall withing the definition of "claim." As to mandatory injunctions such as cleanup orders, the key question is whether a breach of a cleanup order gives rise to a right to payment within the meaning of this definition.

28.     The Order on Consent at issue is a mandatory injunction requiring Delphi to investigate the Delphi Automotive Site. Breach of the Consent Order does not give rise to an alternative right to payment in lieu of dealing with the pollution; Delphi may not avoid complying with the Consent Order, just as sellers of real estate cannot generally pay damages or penalties after a breach. *Cf. Penn Terra*, 733 F.2d 267 (even though compliance with consent would require expenditure of money, state was not seeking to enforce a money judgment). If cleanup obligations were "claims," the exception in the definition of "claim" for certain equitable remedies would be a nullity because every case with a breach of an equitable remedy will have some potential for a separate monetary claim.

29.     Even where DEC has an independent, pre-existing right to clean up, stop, or ameliorate ongoing pollution and then seek recovery of costs, that independent right does not arise from a breach of the cleanup order and is therefore not a "claim" within the meaning of

Bankruptcy Code 101(5), 11 U.S.C. § 101(5). *See In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992); *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2d Cir. 1991). Bankruptcy law should not be used to provide a substantive right that does not exist under non-bankruptcy law, nor should it provide a way to avoid environmental laws.

30. Thus, a state cleanup order to address ongoing pollution is not a dischargeable claim in bankruptcy. *See Torwico*, 8 F.3d at 150-51. Rather, the debtor's obligation to clean up property that it no longer owned or operated is an ongoing regulatory obligation that is not a repackaged claim for damages. *Id.* at 151. *Torwico* dictates that this Court should not relieve Delphi of its duty to satisfy its obligations under the Order on Consent for the Delphi Automotive Site.

31. In addition, Delphi's liability for DEC's remedial costs is clear and indisputable. The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq.* (CERCLA), provides that current "owners and operators" of facilities "from which there is a release, or a threatened release ... of a hazardous substance, shall be liable for ... all costs of ... remedial action incurred by ... a State." 42 U.S.C. § 9607(a). Delphi easily satisfies these statutory elements of a CERCLA cause-of-action. Delphi is the current owner and operator of two New York facilities where there have been documented releases of hazardous substances, TCE and LNAPL, into the environment. Delphi is thus liable under CERCLA for the liquidated remedial costs DEC has already incurred relating to the Sites, as well as for any contingent, unliquidated costs that DEC might also incur in the future relating to the Sites.

32. DEC may also impose cleanup liability under state law through ECL Article 27, title 13, and the implementing regulations at 6 NYCRR Part 375, which apply to inactive

12

hazardous waste disposal sites. Delphi's ownership of two sites that have been listed by DEC on New York's State Superfund Registry triggers its cleanup liability under state law.

33. For all of these reasons, the debtors' frivolous *pro forma* Third Omnibus Objection should also be denied as an attempt by the debtors to avoid compliance with federal and state environmental laws and regulations pertaining to the cleanup of hazardous waste.

### III. CLAIMANT'S ADDRESS AND SETTLEMENT AUTHORITY

34. The debtors must address any reply intended for the Claimant, New York State Department of Environmental Conservation, to the following address:

> William E. Dornbos, Esq.
> Assistant Attorney General
> Environmental Protection Bureau
> New York State Attorney General's Office
> 120 Broadway, 26th Floor
> New York, NY 10271
> (212) 416-8483
> (212) 416-6007 (fax)
> William.Dornbos@oag.state.ny.us

35. The person with settlement authority in this matter is:

> Richard Sherman, Esq.
> Division of Environmental Enforcement
> New York State Department of Environmental
>  Conservation
> 625 Broadway, 14th Floor
> Albany, New York 12233-5500

### IV. CONCLUSION AND REQUESTED RELIEF

36. The Claimant, New York State Department of Environmental Conservation, respectfully requests: (1) that the Court enter an order denying the debtors' Third Omnibus Objection without a hearing or the initiation of a contested matter; (2) that the Court award the

13

State of New York its attorneys' fees and costs for having to unnecessarily expend public resources to respond to the debtors' frivolous Third Omnibus Objection; and (3) such other relief as justice may require.

Dated: New York, New York
       November 22, 2006

ELIOT SPITZER
New York State Attorney General

By:   s/ William E. Dornbos
WILLIAM E. DORNBOS
Assistant Attorney General

Environmental Protection Bureau
New York State Attorney General's Office
120 Broadway, 26th Floor
New York, New York 10271
(212) 416-8483
(212) 416-6007 (fax)
William.Dornbos@oag.state.ny.us

Counsel for Claimant New York State
Department of Environmental Conservation