# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302    Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

1

---- **VOLUMEN 6 (VI), SEXTO.**------------------------------------------------

---- **INSTRUMENTO NUMERO 66, SESENTA Y SEIS.**------------------------------

---- **FOLIO NUMERO 53, CINCUENTA Y TRES.**----------------------------------

---- En la Ciudad de Reynosa, Estado de Tamaulipas, Estados Unidos Mexicanos, siendo las nueve horas del día ( 11 ) once del mes de Abril de 2005 (dos mil cinco), el Suscrito, **LICENCIADO J. GUILLERMO GARCIA ADAME, NOTARIO PUBLICO NUMERO CIENTO CUARENTA,** con ejercicio en el Quinto Distrito Judicial en el Estado, con residencia en ésta Ciudad, hace constar el Contrato de Compraventa que celebran de una parte la Sociedad Mercantil DELPHI DELCO ELECTRONICS DE MEXICO, SOCIEDAD ANONIMA DE CAPITAL VARIABLE, que en lo sucesivo será denominada como "LA PARTE VENDEDORA" y que es representada por su Apoderado, el Señor John Wade Schwarm Jenkins, quien se hace acompañar del Licenciado Juan Sebastián Ruiz de Velasco para efectos de interpretación, y por la otra BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA, que en lo sucesivo será denominada como "LA PARTE COMPRADORA", en su calidad de fiduciaria bajo el Contrato de Fideicomiso de Administración de Actividad Empresarial de fecha diecinueve de Enero de dos mil cinco, identificado para efectos internos de la fiduciaria bajo la clave F/00121 (F diagonal cero cero ciento veintiuno) y que en lo sucesivo será denominado como el "FIDEICOMISO", que es representada por su Apoderado, el Señor Francisco Andragnes, mismo que sujetan al tenor de los siguientes Antecedentes, Declaraciones y Cláusulas.----------------------------------------------------------------------------

-------------------------------- **ANTECEDENTES:** ----------------------------------

---- **I. LA PARTE VENDEDORA** es legítima propietaria de los siguientes tres inmuebles:--------

---- **I.a.** Inmueble ubicado sobre la Avenida Fomento Industrial y marcado con el Número Oficial 3007 (tres mil siete), en la Manzana Número Tres del Parque Industrial del Norte, en la Ciudad de Reynosa, Tamaulipas, con superficie de 93,069.97 M2. (Noventa y tres mil sesenta y nueve metros noventa y siete centímetros cuadrados), el cual se delimita bajo las siguientes medidas y colindancias:--------------------------------------------------------------------------------

---- Al Norte, en 259.537 m.l. (Doscientos cincuenta y nueve punto quinientos treinta y siete metros lineales) con Avenida Fomento Industrial;--------------------------------------------

---- Al Sur, en 259.537 m.l. (Doscientos cincuenta y nueve punto quinientos treinta y siete metros lineales) con Avenida Industrial Falcón Oriente;------------------------------------

---- Al Este, en 358.60 m.l. (Trescientos cincuenta y ocho punto sesenta metros lineales) con

2

terreno de conformidad con la Escritura Pública Número 8,566 (ocho mil quinientos sesenta y seis), de fecha siete de Junio de mil novecientos noventa y cuatro, otorgada ante la Fe del Licenciado Aníbal Pérez Vargas, Notario Público Número 51 (cincuenta y uno), con ejercicio en ésta Ciudad de Reynosa, Tamaulipas, cuyo Primer Testimonio obra inscrito ante el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas bajo la Sección Primera, Número 26,992 (veintiséis mil novecientos noventa y dos), Legajo 540 (quinientos cuarenta), Municipio Reynosa, en fecha diez de Agosto de mil novecientos noventa y cuatro.------------------

---- Posteriormente, mediante Escritura Pública 10,255 (diez mil doscientos cincuenta y cinco), de fecha treinta de Diciembre de mil novecientos noventa y siete, otorgada ante la Fe del Licenciado Jorge A. García Corcuera, Notario Público Número 140 (ciento cuarenta), que ejerció en ésta Ciudad de Reynosa, Tamaulipas, cuyo Primer Testimonio obra inscrito ante el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas bajo la Sección Primera, Número 50,749 (cincuenta mil setecientos cuarenta y nueve), Legajo 1,015 (mil quince), Municipio Reynosa, en fecha veintisiete de Enero de mil novecientos noventa y ocho, LA PARTE VENDEDORA transmitió la propiedad de una fracción con superficie de 38,202.48 M2. (Treinta y ocho mil doscientos dos metros cuarenta y ocho centímetros cuadrados) de la totalidad del inmueble amparado por la Escritura a que se refiere el párrafo precedente, reservándose en propiedad una fracción con superficie de 266,956.12 M2. (Doscientos sesenta y seis mil novecientos cincuenta y seis metros doce centímetros cuadrados).--------------------------

---- A su vez, la fracción con superficie de 266,956.12 M2. (Doscientos sesenta y seis mil novecientos cincuenta y seis metros doce centímetros cuadrados) que LA PARTE VENDEDORA se reservó en propiedad fue objeto de una subdivisión conforme al plano que obra inscrito ante el Archivo de la Dirección de Catastro del Municipio de Reynosa, Tamaulipas, bajo el Número 998 (novecientos noventa y ocho), en fecha 28 (veintiocho) de Febrero de 2005 (dos mil cinco), y ante el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas bajo la Sección Primera, Número 2,687 (dos mil seiscientos ochenta y siete), Legajo 2-054 (dos guión cero cincuenta y cuatro), Municipio Reynosa, en fecha ocho de Marzo de dos mil cinco, de la cual resultó el INMUEBLE 1 con la superficie, medidas y colindancias que se han precisado.------------------------------------------------------------------------

---- **I.b.** Inmueble urbano ubicado sobre la Brecha 99 (noventa y nueve) Este y marcado con el Número Oficial 1011 (mil once), dentro del Parque Industrial Reynosa, a 1,222.92 mts. (mil doscientos veintidós metros noventa y dos centímetros) del Kilómetro 13 (trece) de la Carretera Reynosa-Matamoros, en la Ciudad de Reynosa, Tamaulipas, con superficie de 161,880.481 M2. (Ciento sesenta y un mil ochocientos ochenta punto cuatrocientos ochenta y un metros cuadrados), el cual se delimita bajo las siguientes medidas y colindancias: Del punto 1 (uno) al

# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

3

con propiedad que hasta ésta fecha es de LA PARTE VENDEDORA.------------------------

---- Sobre dicho inmueble se encuentran construidas dos naves industriales con una superficie aproximada en conjunto de 30,418.00 M2. (Treinta mil cuatrocientos dieciocho metros cuadrados) y es controlado con la clave catastral número 31-01-18-897-004 (treinta y uno guión cero uno guión dieciocho guión ochocientos noventa y siete guión cero cero cuatro) ante la Dirección de Predial y Catastro del Municipio de Reynosa, Tamaulipas. Para los efectos de la presente Escritura Pública el referido inmueble y todo lo que por hecho y derecho le corresponda será denominado como el "INMUEBLE 2".--------------------------------------

---- LA PARTE VENDEDORA adquirió la propiedad del INMUEBLE 2 de conformidad con la Escritura Pública Número 8,565 (ocho mil quinientos sesenta y cinco), de fecha siete de Junio de mil novecientos noventa y cuatro, otorgada ante la Fe del Licenciado Aníbal Pérez Vargas, Notario Público Número 51 (cincuenta y uno), con ejercicio en ésta Ciudad de Reynosa, Tamaulipas, cuyo Primer Testimonio obra inscrito ante el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas bajo la Sección Primera, Número 26,998 (veintiséis mil novecientos noventa y ocho), Legajo 540 (quinientos cuarenta), Municipio Reynosa, en fecha ocho de Agosto de mil novecientos noventa y cuatro.--------------------------------------

---- **I.c.** Inmueble urbano ubicado sobre la Brecha 99 (noventa y nueve) Este y marcado con el Número Oficial 1011-A (mil once guión A), dentro del Parque Industrial Reynosa, en la Ciudad de Reynosa, Tamaulipas, con superficie de 161,879.80 M2. (Ciento sesenta y un mil ochocientos setenta y nueve metros ochenta centímetros cuadrados), el cual se delimita bajo las siguientes medidas y colindancias: Del punto 1 (uno) al punto 2 (dos) en 308.92 m.l. (Trescientos ocho metros noventa y dos centímetros lineales), con rumbo N 12°00' E, con la Brecha Este 99 (noventa y nueve); Del punto 2 (dos) al punto 3 (tres) en 438.52 m.l. (Cuatrocientos treinta y ocho metros cincuenta y dos centímetros lineales), con rumbo N 78°00' W, con propiedad del Señor Rubén Rodríguez Camino; Del punto 3 (tres) al punto 4 (cuatro) en 386.24 m.l. (Trescientos ochenta y seis metros veinticuatro centímetros lineales), con rumbo S 12°00' W, con propiedad del Señor Rubén Rodríguez Camino; Del punto 4 (cuatro) al punto 5 (cinco) en 83.93 m.l. (Ochenta y tres metros noventa y tres centímetros lineales), con rumbo S 66°24.1' E; Del punto 5 (cinco) al punto 6 (seis) en 15.65 m.l. (Quince metros sesenta y cinco centímetros lineales), con rumbo S 23°41.9' W, con pozo de PEMEX; y Del punto 6 (seis) al punto 1 (uno) en 375.76 m.l. (Trescientos setenta y cinco metros setenta y seis centímetros lineales), con rumbo N 85°03.6' E, con derecho de vía de PEMEX.----------------------

---- Sobre dicho inmueble se encuentran construidas dos naves industriales con superficie

4

Tamaulipas, cuyo Primer Testimonio obra inscrito ante el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas bajo la Sección Primera, Número 26,999 (veintiséis mil novecientos noventa y nueve), Legajo 540 (quinientos cuarenta), Municipio Reynosa, en fecha ocho de Agosto de mil novecientos noventa y cuatro.-----------------------------------------------------

---- **I.d.** Para los efectos de la presente Escritura Pública el INMUEBLE 1, el INMUEBLE 2 y el INMUEBLE 3 serán denominados conjuntamente como los "INMUEBLES".-----------------------

---- **II.** En fecha diecinueve de Enero de dos mil cinco las Sociedades PLA Holding VI, LLC. ("Prudential" para efectos del FIDEICOMISO), y Desarrollos Brasa, Sociedad Anónima de Capital Variable, con el carácter de fideicomitentes y fideicomisarias, y LA PARTE COMPRADORA, con el carácter de fiduciaria, celebraron el FIDEICOMISO, y en dicho acto las fideicomisarias aportaron las cantidades de dinero que en dicho documento se indican. El Suscrito Notario agrega una copia simple del FIDEICOMISO al Apéndice de ésta Escritura Pública marcada con la letra "A".-------------------------------------------------------------------

---- **III.** De acuerdo a lo dispuesto en la Cláusula Quinta del FIDEICOMISO el patrimonio del FIDEICOMISO se compondrá, entre otras cosas, con las propiedades que adquiera LA PARTE COMPRADORA de la manera prevista en el FIDEICOMISO y las mejoras construidas o que se construyan en dichas propiedades.-------------------------------------------------------------------------

---- **IV.** Que constituyen los fines del FIDEICOMISO los previstos en la Cláusula Sexta de dicho documento, misma que se transcribe a continuación: "SEXTA. FINES DEL FIDEICOMISO. Son fines del presente Fideicomiso (i) que el Fiduciario adquiera las Propiedades de acuerdo con las instrucciones por escrito de Prudential y que el Fiduciario mantenga la titularidad del Patrimonio Fideicomitido, (ii) que el Fiduciario celebre los contratos necesarios para el desarrollo y la administración de las Propiedades, incluyendo pero no limitando al Contrato de Servicios de Administración de conformidad con la Cláusula Décima Primera de este Fideicomiso y/o adquiera los derechos y obligaciones de otros contratos, tomando en consideración lo dispuesto en la Sección 11.7 de este Fideicomiso, (iii) que el Fiduciario celebre los contratos de arrendamiento futuros, de conformidad con la Sección 11.6 de este Fideicomiso, (iv) que el Fiduciario celebre los Documentos del Préstamo que le indique Prudential por escrito para la Deuda Permitida a ser obtenida en un futuro, otorgando las garantías fiduciarias en el Patrimonio Fideicomitido que se acuerden al respecto, asumiendo las obligaciones adicionales que se deriven de los Documentos del Préstamo, y realizar los pagos establecidos en los Documentos del Préstamo de conformidad con los términos de los mismos, esto en su calidad de Fiduciario del Fideicomiso, (v) transmitir el dominio de cualquiera o todas las Propiedades o cualquier parte del Patrimonio Fideicomitido de conformidad con las instrucciones por escrito de Prudential o de acuerdo a los Documentos del Préstamo, (vi) que sujeto a lo establecido en los



# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

5

escrito a LA PARTE COMPRADORA para que adquiriera los INMUEBLES en los términos de este Instrumento, con la finalidad de que estos formen parte del patrimonio del FIDEICOMISO y los destine a los fines del mismo. El Suscrito Notario agrega una copia simple de la carta de instrucción en mérito al Apéndice de ésta Escritura Pública marcada con la letra "B".--------------

-------------------------------------------- **DECLARACIONES:** --------------------------------------

---- I. Declara LA PARTE VENDEDORA, por conducto del Señor John Wade Schwarm Jenkins:------------------------------------------------------------------------------------------------------

---- **I.a.** Que es una S ociedad M ercantil l egalmente c onstituida y e xistente d e a cuerdo c on l a legislación Mexicana, así como que la persona que la representa en este acto tiene las facultades para ello, mismas que no le han sido limitadas o revocadas en forma alguna, según consta en el apartado de personalidad de este Instrumento.-----------------------------------------------------------------

---- **I.b.** Que es legítima propietaria y poseedora de los INMUEBLES, con las superficies, linderos, medidas, colindancias y demás características precisadas en el apartado de Antecedentes de este Instrumento.------------------------------------------------------------------------------

---- **I.c.** Que los INMUEBLES se encuentran libres de gravámenes, lo cual acredita con los Certificados de Libertad de Gravámenes expedidos por el Registro Público de la Propiedad y de Comercio del Estado de Tamaulipas, mismos que se agregan al Apéndice de ésta Escritura Pública marcados con la letra "C".-----------------------------------------------------------------------------

---- **I.d.** Que los INMUEBLES se encuentran al corriente de pago del impuesto predial hasta el sexto bimestre del año dos mil cinco, lo cual acredita con las copias certificadas de los recibos de pago de dicha contribución y con los certificados de no adeudo del impuesto predial que expidió la Dirección de Predial y Catastro del Municipio de Reynosa, Tamaulipas, mismos que se agregan al Apéndice de ésta Escritura Pública marcados con la letra "D".-----------------------------

---- **I.e.** Que el servicio de agua potable y drenaje en relación con los INMUEBLES se encuentra al corriente de pago, lo cual acredita con las constancias de no adeudo expedidas por la Comisión Municipal del Agua Potable y Alcantarillado del Municipio de Reynosa, Tamaulipas, mismas que se agregan al Apéndice de ésta Escritura Pública marcados con la letra "E".------------

---- **I.f.** Que de acuerdo con los avalúos periciales que expidió la Dirección de Predial y Catastro del Municipio de Reynosa, Tamaulipas, en relación con los INMUEBLES, estos atribuyen los siguientes valores a cada uno de los INMUEBLES:--------------------------------------------------------

---- Al INMUEBLE 1, se le asignó un valor total de $17'497,160.00 m.n. (Diecisiete millones cuatrocientos noventa y siete mil ciento sesenta pesos, 00/100 Moneda Nacional);-------------------

---- Al INMUEBLE 2, se le asignó un valor total de $92'206,800.00 m.n. (Noventa y dos

6

ocho mil seiscientos pesos, 00/100 Moneda Nacional) a las construcciones en él edificadas.--------

---- **II.** Declara LA PARTE COMPRADORA, por conducto del Señor Francisco Andragnes:------

---- **II.a.** Que es una Institución de Crédito legalmente constituida y existente de acuerdo con la legislación Mexicana, así como que la persona que la representa en este acto tiene las facultades para ello, mismas que no le han sido limitadas o revocadas en forma alguna, según consta en el apartado de personalidad de este Instrumento.---------------------------------------------------------------

---- **II.b.** Que para la celebración del Contrato de Compraventa contemplado en este Instrumento solicitó y obtuvo de la Secretaría de Relaciones Exteriores los Permisos números (a) 023260 (cero veintitrés mil doscientos sesenta), Expediente número 39137/94 (treinta y nueve mil ciento treinta y siete diagonal noventa y cuatro), Folio número 1849 (mil ochocientos cuarenta y nueve) de fecha 1 (uno) de Abril de 2005 (dos mil cinco); (b) 022658 (cero veintidós mil seiscientos cincuenta y ocho), Expediente número 39137/94 (treinta y nueve mil ciento treinta y siete diagonal noventa y cuatro), Folio 0803 (cero ochocientos tres), de fecha 17 (diecisiete) de Febrero de 2005 (dos mil cinco); y (c) 022657 (cero veintidós mil seiscientos cincuenta y siete), Expediente número 39137/94 (treinta y nueve mil ciento treinta y siete diagonal noventa y cuatro), Folio 0802 (cero ochocientos dos), de fecha 17 (diecisiete) de Febrero de 2005 (dos mil cinco); mismos que Yo, el Notario Público, Doy Fe tener a la vista y los cuales en original agrego al Apéndice de este Instrumento marcados con la letra "F" y que se transcriben íntegramente a continuación:-----------------------------------------------------------------------------------

---- (a) "Al margen superior centro: DIRECCION GENERAL DE ASUNTOS JURIDICOS.- DIRECCION DE PERMISOS ARTICULO 27 CONSTITUCIONAL.- Al margen superior derecho: FOLIO NO: 1849.- EXPEDIENTE: 39137/94.- NO. PERMISO: 023260.- RESERVADO.- Al margen izquierdo: La SECRETARIA DE RELACIONES EXTERIORES, con fundamento en lo dispuesto por los artículos 10, fracción II y 11 fracciones I y II de la Ley de Inversión Extranjera, CONCEDE a: BANCO J.P. MORGAN, S.A., Institución de Banca Múltiple, Institución de Crédito constituida y en funciones conforme a las disposiciones legales de nuestro país, PERMISO para adquirir como FIDUCIARIA, el dominio sobre el (los) inmueble(s) materia del fideicomiso que se detalla(n) en la presente autorización.- El contrato de fideicomiso correspondiente deberá sujetarse a las características y condiciones que a continuación se señalan:- Al centro: CARACTERISTICAS.- Al margen izquierdo: FIDEICOMITENTE(S): DESARROLLOS BRASA, S.A. DE C.V. Y DELNOSA, S.A. DE C.V., AHORA DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V..- NACIONALIDAD: MEXICANAS.- CON CLAUSULA DE: ADMISION DE EXTRANJEROS.- FIDUCIARIO: BANCO J.P. MORGAN, S.A., INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA.- FIDEICOMISARIO(S): PLA HOLDING



# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

7

TOTAL: 93,069.97 M2.- DISTANCIA A LA ZONA FEDERAL MARITIMA O A LA
FRONTERA: 14 KILOMETROS.- Medidas, linderos y colindancias, las que se detallan en el
anexo que debidamente sellado forma parte integrante del presente permiso.- Rúbricas.-
CONDICIONES.- PRIMERA.- El (los) fideicomisario(s) de conformidad con lo dispuesto por la
fracción I, del artículo 27 de la Constitución Política de los Estados Unidos Mexicanos,
CONVIENE(N) expresamente ante la SECRETARIA DE RELACIONES EXTERIORES, en
considerarse como mexicano(s), respecto del bien materia del fideicomiso, y por lo mismo, en no
invocar la protección de su gobierno, bajo la pena en caso de faltar al convenio de renuncia, de
perder sus derechos de FIDEICOMISARIO en beneficio de la Nación Mexicana;- SEGUNDA.-
Los FINES DEL FIDEICOMISO, derivados del presente permiso, consistirán en que la
FIDUCIARIA conserve siempre la titularidad sobre el dominio del (de los) Inmueble(s)
fideicomitido(s) y sin conceder DERECHOS REALES, permita el uso y aprovechamiento
temporal al fideicomisario o a quienes este (estos) indique(n), para destinarlo(s) a FINES NO
RESIDENCIALES;- 1849.- TERCERA.- La FIDUCIARIA, de conformidad con lo que establece
el artículo 11, fracción III, del Reglamento de la Ley de Inversión Extranjera y del Registro
Nacional de Inversiones Extranjeras, deberá presentar a más tardar en abril de cada año ante la
SECRETARIA DE RELACIONES EXTERIORES, un informe sobre los fideicomisos
autorizados en caso de sustitución fiduciaria, así como de designación de FIDEICOMISARIO(S)
SUSTITUTO(S) o cesión de derechos fideicomisarios en favor de persona(s) física(s) o
moral(es) extranjera(s) o de sociedades mexicanas con cláusula de admisión de extranjeros,
tratándose de inmuebles adquiridos para fines residenciales;- CUARTA.- El o los
FIDEICOMISARIO(S) se obliga(n) a informar a la FIDUCIARIA sobre la realización de los
fines del fideicomiso y del cumplimiento de las condiciones contenidas en este permiso;-
QUINTA.- La FIDUCIARIA, se obliga a vigilar e informar a la SECRETARIA DE
RELACIONES EXTERIORES, sobre el cumplimiento de los fines para los cuales se autoriza la
constitución del fideicomiso y de las condiciones establecidas en el presente permiso;- SEXTA.-
De conformidad con lo que señala el artículo 11, fracción IV, segundo párrafo del Reglamento
de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, en caso de
incumplimiento o violación a cualquiera de las condiciones que este permiso establece, la
FIDUCIARIA contará con un plazo de 60 días hábiles para subsanarlas y corregirlas contados a
partir de la fecha de notificación por parte de la SECRETARIA DE RELACIONES
EXTERIORES, de dichas irregularidades; en caso contrario la SECRETARIA DE
RELACIONES EXTERIORES podrá solicitar a la FIDUCIARIA la extinción del fideicomiso la



COTEJADO

8

artículo 13 de la Ley de Inversión Extranjera y 12 de su Reglamento, debiendo la FIDUCIARIA, solicitar ante la SECRETARIA DE RELACIONES EXTERIORES la prórroga correspondiente dentro de los noventa días hábiles anteriores a la extinción del contrato;- 1849.- DECIMA.- El fideicomiso que se constituya al amparo del presente permiso, deberá inscribirse en el Registro Nacional de Inversiones Extranjeras, en los términos que establecen los artículos 32, fracción III en relación con el 2º, fracción II, inciso C) de la Ley de Inversión Extranjera y 41 de su Reglamento;- DECIMA PRIMERA.- Este permiso se condiciona en los términos de su solicitud a que el FIDEICOMISARIO lleve a cabo una inversión de $4'800,000.00 Dólares estadounidenses; (CUATRO MILLONES OCHOCIENTOS MIL DOLARES ESTADOUNIDENSES) en un plazo de 24 meses contados a partir de la fecha de expedición del permiso.- DECIMA SEGUNDA.- La FIDUCIARIA y el (los) FIDEICOMISARIO(S), se obligan a que dentro del (de los) bien(es) que se afecte(n) para cumplir el (los) fin(es) del fideicomiso al amparo de este permiso, no se colocarán bardas, cercas, alambrados o cualquier otro elemento que impida o constituya un obstáculo al libre acceso a la zona federal marítimo terrestre, misma que de conformidad con el artículo 29, fracción V, de la Ley General de Bienes Nacionales, es un bien de uso común. El incumplimiento de esta condición por parte del (los) FIDEICOMISARIO(S), será sancionado en los términos del artículo 97 en relación con los artículos 1º y 2º, fracción I de la Ley invocada, sin perjuicio de lo estipulado en la condición SEXTA del presente permiso;- DECIMA TERCERA.- En los términos del segundo párrafo del artículo 13, de la Ley de Inversión Extranjera, la SECRETARIA DE RELACIONES EXTERIORES se reserva la facultad de verificar en cualquier tiempo, el cumplimiento de los fines del fideicomiso y de las condiciones a que se refiere el presente permiso; en caso de contravenir estos, se reserva la facultad de revocar el permiso otorgado. El uso de este permiso implica su aceptación incondicional y su incumplimiento o violación dará lugar a las sanciones que en el se establecen, independientemente de las prescritas por los ordenamientos legales aplicables;- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- ABR. 1 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Rúbricas.- El otorgamiento de este permiso no exime a el (los) FIDEICOMISARIO(S), FIDEICOMITENTE(S) y FIDUCIARIA, del cumplimiento de los planes y programas de desarrollo urbano y ordenamientos de la localidad en la que se ubique el (los) inmueble(s) ni de los criterios de sustentabilidad de la política ambiental.- El texto íntegro de este permiso deberá transcribirse en la escritura donde se formalice el fideicomiso que se constituya al amparo del mismo.- Este permiso se otorga con fundamento en el artículo 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos; artículos 10, fracción II, 11, fracciones I y II, 13 y 14 de la Ley de Inversión

# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

9

R. 1 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- JADH/ARPB/JAST.- Rúbricas.- ANEXO "A".- MEDIDAS Y COLINDANCIAS DEL INMUEBLE Y ESCRITURA DE PROPIEDAD DEL INMUEBLE.- Inmueble urbano ubicado sobre la Avenida Fomento Industrial, en la Manzana Número Tres del Parque Industrial del Norte, en la Ciudad de Reynosa, Tamaulipas, con superficie de 93,069.97 M2., el cual se delimita bajo las siguientes medidas y colindancias:- Al Norte, en 259.537 (doscientos cincuenta y nueve punto quinientos treinta y siete) Metros con Avenida Fomento Industrial; Al Sur, en 259.537 (doscientos cincuenta y nueve punto quinientos treinta y siete) Metros con Avenida Industrial Falcón Oriente; Al Este, en 358.60 (trescientos cincuenta y ocho puntos sesenta) Metros con propiedad de Delphi Delco Electronics de México, S.A. de C.V.; y Al Oeste, en 358.60 (trescientos cincuenta y ocho punto sesenta) Metros con propiedad en fideicomiso de Bancomer, S.A..- Anexo 1849.- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- Secretaría de Relaciones Exteriores.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- ABR. 1 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Terreno → Se adjunta Escritura Pública No. 8566 y mapa de subdivisión.".-------------------------------------------------------------
---- (b) "Al margen superior centro: DIRECCION GENERAL DE ASUNTOS JURIDICOS.- DIRECCION DE PERMISOS ARTICULO 27 CONSTITUCIONAL.- Al margen superior derecho: FOLIO NO: 0803.- EXPEDIENTE: 39137/94.- NO. PERMISO: 022658.- RESERVADO.- Al margen izquierdo: La SECRETARIA DE RELACIONES EXTERIORES, con fundamento en lo dispuesto por los artículos 10, fracción II y 11 fracciones I y II de la Ley de Inversión Extranjera, CONCEDE a: BANCO J.P. MORGAN, S.A., Institución de Banca Múltiple, Institución de Crédito constituida y en funciones conforme a las disposiciones legales de nuestro país, PERMISO para adquirir como FIDUCIARIA, el dominio sobre el (los) inmueble(s) materia del fideicomiso que se detalla(n) en la presente autorización.- El contrato de fideicomiso correspondiente deberá sujetarse a las características y condiciones que a continuación se señalan:- Al centro: CARACTERISTICAS.- Al margen izquierdo: FIDEICOMITENTE(S): DELNOSA, S.A. DE C.V., AHORA DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V..- NACIONALIDAD: MEXICANAS.- CON CLAUSULA DE: ADMISION DE EXTRANJEROS.- FIDUCIARIO: BANCO J.P. MORGAN, S.A., INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA.- FIDEICOMISARIO(S): PLA HOLDING VI, LLC, Y

10

SUPERFICIE TOTAL: 161,880.481 M2.- DISTANCIA A LA ZONA FEDERAL MARITIMA
O A LA FRONTERA: 3 KILOMETROS.- Medidas, linderos y colindancias, las que se detallan
en el anexo que debidamente sellado forma parte integrante del presente permiso.- Rúbricas.-
CONDICIONES.- PRIMERA.- El (los) fideicomisario(s) de conformidad con lo dispuesto por la
fracción I, del artículo 27 de la Constitución Política de los Estados Unidos Mexicanos,
CONVIENE(N) expresamente ante la SECRETARIA DE RELACIONES EXTERIORES, en
considerarse como mexicano(s), respecto del bien materia del fideicomiso, y por lo mismo, en no
invocar la protección de su gobierno, bajo la pena en caso de faltar al convenio de renuncia, de
perder sus derechos de FIDEICOMISARIO en beneficio de la Nación Mexicana;- SEGUNDA.-
Los FINES DEL FIDEICOMISO, derivados del presente permiso, consistirán en que la
FIDUCIARIA conserve siempre la titularidad sobre el dominio del (de los) Inmueble(s)
fideicomitido(s) y sin conceder DERECHOS REALES, permita el uso y aprovechamiento
temporal al fideicomisario o a quienes este (estos) indique(n), para destinarlo(s) a FINES NO
RESIDENCIALES;- 0803.- TERCERA.- La FIDUCIARIA, de conformidad con lo que establece
el artículo 11, fracción III, del Reglamento de la Ley de Inversión Extranjera y del Registro
Nacional de Inversiones Extranjeras, deberá presentar a más tardar en abril de cada año ante la
SECRETARIA DE RELACIONES EXTERIORES, un informe sobre los fideicomisos
autorizados en caso de sustitución fiduciaria, así como de designación de FIDEICOMISARIO(S)
SUSTITUTO(S) o cesión de derechos fideicomisarios en favor de persona(s) física(s) o
moral(es) extranjera(s) o de sociedades mexicanas con cláusula de admisión de extranjeros,
tratándose de inmuebles adquiridos para fines residenciales;- CUARTA.- El o los
FIDEICOMISARIO(S) se obliga(n) a informar a la FIDUCIARIA sobre la realización de los
fines del fideicomiso y del cumplimiento de las condiciones contenidas en este permiso;-
QUINTA.- La FIDUCIARIA, se obliga a vigilar e informar a la SECRETARIA DE
RELACIONES EXTERIORES, sobre el cumplimiento de los fines para los cuales se autoriza la
constitución del fideicomiso y de las condiciones establecidas en el presente permiso;- Un sello
con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.-
SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL
DE ASUNTOS JURIDICOS".- SEXTA.- De conformidad con lo que señala el artículo 11,
fracción IV, segundo párrafo del Reglamento de la Ley de Inversión Extranjera y del Registro
Nacional de Inversiones Extranjeras, en caso de incumplimiento o violación a cualquiera de las
condiciones que este permiso establece, la FIDUCIARIA contará con un plazo de 60 días hábiles
para subsanarlas y corregirlas contados a partir de la fecha de notificación por parte de la
SECRETARIA DE RELACIONES EXTERIORES, de dichas irregularidades; en caso contrario
la SECRETARIA DE RELACIONES EXTERIORES podrá solicitar a la FIDUCIARIA la

# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PÚBLICO 140
Reynosa, Tam.

11

de Inversión Extranjera y 12 de su Reglamento, debiendo la FIDUCIARIA, solicitar ante la SECRETARIA DE RELACIONES EXTERIORES la prórroga correspondiente dentro de los noventa días hábiles anteriores a la extinción del contrato;- 0803.- DECIMA.- El fideicomiso que se constituya al amparo del presente permiso, deberá inscribirse en el Registro Nacional de Inversiones Extranjeras, en los términos que establecen los artículos 32, fracción III en relación con el 2°, fracción II, inciso C) de la Ley de Inversión Extranjera y 41 de su Reglamento;- DECIMA PRIMERA.- Este permiso se condiciona en los términos de su solicitud a que el FIDEICOMISARIO lleve a cabo una inversión de $8'200,000.00 Dólares estadounidenses; (OCHO MILLONES DOSCIENTOS MIL DOLARES ESTADOUNIDENSES) en un plazo de 24 meses contados a partir de la fecha de expedición del permiso.- DECIMA SEGUNDA.- La FIDUCIARIA y el (los) FIDEICOMISARIO(S), se obliga a que dentro del (de los) bien(es) que se afecte(n) para cumplir el (los) fin(es) del fideicomiso al amparo de este permiso, no se colocarán bardas, cercas, alambrados o cualquier otro elemento que impida o constituya un obstáculo al libre acceso a la zona federal marítimo terrestre, misma que de conformidad con el artículo 29, fracción V, de la Ley General de Bienes Nacionales, es un bien de uso común. El incumplimiento de esta condición por parte del (los) FIDEICOMISARIO(S), será sancionado en los términos del artículo 97 en relación con los artículos 1° y 2°, fracción I de la Ley invocada, sin perjuicio de lo estipulado en la condición SEXTA del presente permiso;- DECIMA TERCERA.- En los términos del segundo párrafo del artículo 13, de la Ley de Inversión Extranjera, la SECRETARIA DE RELACIONES EXTERIORES se reserva la facultad de verificar en cualquier tiempo, el cumplimiento de los fines del fideicomiso y de las condiciones a que se refiere el presente permiso; en caso de contravenir estos, se reserva la facultad de revocar el permiso otorgado. El uso de este permiso implica su aceptación incondicional y su incumplimiento o violación dará lugar a las sanciones que en el se establecen, independientemente de las prescritas por los ordenamientos legales aplicables;- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Rúbricas.- El otorgamiento de este permiso no exime a el (los) FIDEICOMISARIO(S), FIDEICOMITENTE(S) y FIDUCIARIA, del cumplimiento de los planes y programas de desarrollo urbano y ordenamientos de la localidad en la que se ubique el (los) inmueble(s) ni de los criterios de sustentabilidad de la política ambiental.- El texto íntegro de este permiso deberá transcribirse en la escritura donde se formalice el fideicomiso que se constituya al amparo del mismo.- Este permiso se otorga con fundamento en el artículo 27,

12

0803.- JADH/ARPB/JAST.- Rúbricas.- ANEXO "B".- MEDIDAS Y COLINDANCIAS DEL INMUEBLE Y ESCRITURA DE PROPIEDAD DEL INMUEBLE.- Inmueble urbano ubicado dentro del Parque Industrial Reynosa, Ciudad de Reynosa, Tamaulipas, con superficie de 161,880.481 M2., con las siguientes medidas y colindancias:- Del punto 1 al punto 2 rumbo NE 12°, mide 400.79 y colinda con Brecha Este 99; Del punto 2 al punto 3 con rumbo NW 78° mide 309.282 y colinda con propiedad que es o fue del señor Elías Rodríguez Farias; Del punto 3 al punto 4 con rumbo SW 37° 16' 30, mide 443.219 y colinda con propiedad del Fraccionamiento Almaguer; del punto 4 al punto 1 para cerrar el polígono, con rumbo SE 78° mide 498.52 y colinda con propiedad de Delnosa, S.A. de C.V.- Anexo 803.- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- Secretaría de Relaciones Exteriores.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Edificio 1 y 2 → Se adjunta Escritura Pública No. 8,565.".--------------------------------------
---- (c) "Al margen superior centro: DIRECCION GENERAL DE ASUNTOS JURIDICOS.- DIRECCION DE PERMISOS ARTICULO 27 CONSTITUCIONAL.- Al margen superior derecho: FOLIO NO: 0802.- EXPEDIENTE: 39137/94.- NO. PERMISO: 022657.- RESERVADO.- Al margen izquierdo: La SECRETARIA DE RELACIONES EXTERIORES, con fundamento en lo dispuesto por los artículos 10, fracción II y 11 fracciones I y II de la Ley de Inversión Extranjera, CONCEDE a: BANCO J.P. MORGAN, S.A., Institución de Banca Múltiple, Institución de Crédito constituida y en funciones conforme a las disposiciones legales de nuestro país, PERMISO para adquirir como FIDUCIARIA, el dominio sobre el (los) inmueble(s) materia del fideicomiso que se detalla(n) en la presente autorización.- El contrato de fideicomiso correspondiente deberá sujetarse a las características y condiciones que a continuación se señalan:- Al centro: CARACTERISTICAS.- Al margen izquierdo: FIDEICOMITENTE(S): DELNOSA, S.A. DE C.V., AHORA DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V.- NACIONALIDAD: MEXICANAS.- CON CLAUSULA DE: ADMISION DE EXTRANJEROS.- FIDUCIARIO: BANCO J.P. MORGAN, S.A., INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA.- FIDEICOMISARIO(S): PLA HOLDING VI, LLC, Y DESARROLLOS BRASA, S.A. DE C.V., EN TERMINOS DEL CONTRATO DE FIDEICOMISO DE ACTIVIDAD EMPRESARIAL DE ADMINISTRACION DE FECHA 19 DE ENERO DE 2005.- NACIONALIDAD: ESTADOUNIDENSE Y MEXICANA.- DURACION DEL FIDEICOMISO: 50 AÑOS.- FINES: NO RESIDENCIALES.- BIEN O BIEN(ES) MATERIA DEL FIDEICOMISO: INMUEBLE URBANO.- UBICADO EN:

# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LiC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

13

artículo 27 de la Constitución Política de los Estados Unidos Mexicanos, CONVIENE(N) expresamente ante la SECRETARIA DE RELACIONES EXTERIORES, en considerarse como mexicano(s), respecto del bien materia del fideicomiso, y por lo mismo, en no invocar la protección de su gobierno, bajo la pena en caso de faltar al convenio de renuncia, de perder sus derechos de FIDEICOMISARIO en beneficio de la Nación Mexicana;- SEGUNDA.- Los FINES DEL FIDEICOMISO, derivados del presente permiso, consistirán en que la FIDUCIARIA conserve siempre la titularidad sobre el dominio del (de los) Inmueble(s) fideicomitido(s) y sin conceder DERECHOS REALES, permita el uso y aprovechamiento temporal al fideicomisario o a quienes este (estos) indique(n), para destinarlo(s) a FINES NO RESIDENCIALES;- 0802.- TERCERA.- La FIDUCIARIA, de conformidad con lo que establece el artículo 11, fracción III, del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, deberá presentar a más tardar en abril de cada año ante la SECRETARIA DE RELACIONES EXTERIORES, un informe sobre los fideicomisos autorizados en caso de sustitución fiduciaria, así como de designación de FIDEICOMISARIO(S) SUSTITUTO(S) o cesión de derechos fideicomisarios en favor de persona(s) física(s) o moral(es) extranjera(s) o de sociedades mexicanas con cláusula de admisión de extranjeros, tratándose de inmuebles adquiridos para fines residenciales;- CUARTA.- El o los FIDEICOMISARIO(S) se obliga(n) a informar a la FIDUCIARIA sobre la realización de los fines del fideicomiso y del cumplimiento de las condiciones contenidas en este permiso;- QUINTA.- La FIDUCIARIA, se obliga a vigilar e informar a la SECRETARIA DE RELACIONES EXTERIORES, sobre el cumplimiento de los fines para los cuales se autoriza la constitución del fideicomiso y de las condiciones establecidas en el presente permiso;- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- SEXTA.- De conformidad con lo que señala el artículo 11, fracción IV, segundo párrafo del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras, en caso de incumplimiento o violación a cualquiera de las condiciones que este permiso establece, la FIDUCIARIA contará con un plazo de 60 días hábiles para subsanarlas y corregirlas contados a partir de la fecha de notificación por parte de la SECRETARIA DE RELACIONES EXTERIORES, de dichas irregularidades; en c aso c ontrario l a S ECRETARIA D E R ELACIONES E XTERIORES p odrá solicitar a la FIDUCIARIA la extinción del fideicomiso la cual deberá efectuarse dentro de los ciento ochenta días siguientes contados a partir de la fecha de notificación del requerimiento.- Rúbricas.- SEPTIMA.- En caso de extinción del fideicomiso constituido al amparo del presente

14

Extranjeras, en los términos que establecen los artículos 32, fracción III en relación con el 2°, fracción II, inciso C) de la Ley de Inversión Extranjera y 41 de su Reglamento;- DECIMA PRIMERA.- Este permiso se condiciona en los términos de su solicitud a que el FIDEICOMISARIO lleve a cabo una inversión de $8'200,000.00 Dólares estadounidenses; (OCHO MILLONES DOSCIENTOS MIL DOLARES ESTADOUNIDENSES) en un plazo de 24 meses contados a partir de la fecha de expedición del permiso.- DECIMA SEGUNDA.- La FIDUCIARIA y el (los) FIDEICOMISARIO(S), se obligan a que dentro del (de los) bien(es) que se afecte(n) para cumplir el (los) fin(es) del fideicomiso al amparo de este permiso, no se colocarán bardas, cercas, alambrados o cualquier otro elemento que impida o constituya un obstáculo al libre acceso a la zona federal marítimo terrestre, misma que de conformidad con el artículo 29, fracción V, de la Ley General de Bienes Nacionales, es un bien de uso común. El incumplimiento de esta condición por parte del (los) FIDEICOMISARIO(S), será sancionado en los términos del artículo 97 en relación con los artículos 1° y 2°, fracción I de la Ley invocada, sin perjuicio de lo estipulado en la condición SEXTA del presente permiso;- DECIMA TERCERA.- En los términos del segundo párrafo del artículo 13, de la Ley de Inversión Extranjera, la SECRETARIA DE RELACIONES EXTERIORES se reserva la facultad de verificar en cualquier tiempo, el cumplimiento de los fines del fideicomiso y de las condiciones a que se refiere el presente permiso; en caso de contravenir estos, se reserva la facultad de revocar el permiso otorgado. El uso de este permiso implica su aceptación incondicional y su incumplimiento o violación dará lugar a las sanciones que en el se establecen, independientemente de las prescritas por los ordenamientos legales aplicables;- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Rúbricas.- El otorgamiento de este permiso no exime a el (los) FIDEICOMISARIO(S), FIDEICOMITENTE(S) y FIDUCIARIA, del cumplimiento de los planes y programas de desarrollo urbano y ordenamientos de la localidad en la que se ubique el (los) inmueble(s) ni de los criterios de sustentabilidad de la política ambiental.- El texto íntegro de este permiso deberá transcribirse en la escritura donde se formalice el fideicomiso que se constituya al amparo del mismo.- Este permiso se otorga con fundamento en el artículo 27, fracción I de la Constitución Política de los Estados Unidos Mexicanos; artículos 10, fracción II, 11, fracciones I y II, 13 y 14 de la Ley de Inversión Extranjera; 28, fracción V de la Ley Orgánica de la Administración Pública Federal; 11 y 12 del Reglamento de la Ley de Inversión Extranjera y del Registro Nacional de Inversiones Extranjeras; 14, fracción VI y 34, fracción VI del Reglamento Interior de la Secretaría de Relaciones Exteriores y Cuarto, inciso c), fracción V del Acuerdo Delegatorio de Facultades, publicado en el Diario Oficial de la Federación el 27 de



# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302    Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

15

rumbo N-12° 00', brecha Este 99; del punto 2-3 en 438.52 con rumbo N-78° 00 W, con propiedad del señor Rubén Rodríguez Camino; del punto 3-4 en 386.24 con rumbo S 12° 00' W con propiedad del señor Rubén Rodríguez Camino; del punto 4-5 en 83.93 con rumbo S 66° 24.1' E; del punto 5-6 en 15.65 con rumbo S 23° 41.9' W con pozo de PEMEX; y del punto 6-1 en 375.76 con rumbo N 85° 03.6' E con derecho de vía de PEMEX.- Anexo 802.- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- SECRETARIA DE RELACIONES EXTERIORES.- FEB. 17 2005.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".- Un sello con el emblema nacional que a la letra dice: "ESTADOS UNIDOS MEXICANOS.- Secretaría de Relaciones Exteriores.- DIRECCION GENERAL DE ASUNTOS JURIDICOS".-Edificio 3 y 4 → Se adjunta Escritura Pública No. 8,567.".---------------------------

---- Expuesto lo anterior, los comparecientes otorgan las siguientes -----------------------------

------------------------------------------ **CLAUSULAS:** ---------------------------------

---- **PRIMERA.** DELPHI DELCO ELECTRONICS DE MEXICO, SOCIEDAD ANONIMA DE CAPITAL VARIABLE, vende a BANCO J.P. MORGAN, SOCIEDAD ANONIMA, INSTITUCION DE BANCA MULTIPLE, J.P. MORGAN GRUPO FINANCIERO, DIVISION FIDUCIARIA, en su calidad de fiduciaria bajo el FIDEICOMISO, quien compra y adquiere para sí, los INMUEBLES, con las superficies, medidas, linderos, colindancias y demás características que aparecen descritas en el apartado de Antecedentes de este Instrumento, mismos que se tienen aquí por reproducidos como si a la letra se insertasen, con las características, antigüedad, estado de conservación y superficie de las construcciones en ellos existentes.------------------------------

---- **SEGUNDA.** El precio de los INMUEBLES es la cantidad de E.U.A.$22'500,000.00 (Veintidós millones quinientos mil dólares, 00/100 Moneda de curso legal en los Estados Unidos de América), el cual en este acto es recibido por LA PARTE VENDEDORA, otorgando a LA PARTE COMPRADORA el recibo más amplio que en derecho corresponda conforme a la Ley. El Precio de los INMUEBLES equivale a $251'876,250.00 m.n. (Doscientos cincuenta y un millones ochocientos setenta y seis mil doscientos cincuenta pesos, 00/100 Moneda Nacional), de acuerdo con el tipo de cambio para solventar obligaciones denominadas en moneda extranjera publicado en el Diario Oficial de la Federación el día anterior hábil a la fecha de firma de la presente Escritura, el cual es de $11.1945 m.n. (Once punto mil novecientos cuarenta y cinco pesos, Moneda Nacional), por cada Dólar.------------------------------------------------------

---- El precio de los INMUEBLES se desglosa de la siguiente manera:-----------------------

---- (a) Al INMUEBLE 1 corresponde la cantidad de E.U.A.$2'000,000.00 (Dos millones de dólares, 00/100 Moneda de curso legal en los Estados Unidos de América).-----------------

16

2 es la cantidad de E.U.A.$1'065,129.00 (Un millón sesenta y cinco mil ciento veintinueve dólares, 00/100 Moneda de curso legal en los Estados Unidos de América), que equivale a $11'923,586.60 m.n. (Once millones novecientos veintitrés mil quinientos ochenta y seis pesos, 60/100 Moneda Nacional), de acuerdo con el tipo de cambio indicado con anterioridad.------------

---- (c) Al INMUEBLE 3 corresponde la cantidad de E.U.A.$10'250,000.00 (Diez millones doscientos cincuenta mil dólares, 00/100 Moneda de curso legal en los Estados Unidos de América), y de ésta cantidad corresponden E.U.A.$3'196,609.00 (Tres millones ciento noventa y seis mil seiscientos nueve dólares, 00/100 Moneda de curso legal en los Estados Unidos de América) al terreno, mientras que a la construcción la cantidad de E.U.A.$7'053,391.00 (Siete millones cincuenta y tres mil trescientos noventa y un dólares, 00/100 Moneda de curso legal en los Estados Unidos de América).-------------------------------------------------------------------

---- Para los efectos de lo dispuesto por el Artículo 10 (diez) del Reglamento de la Ley del Impuesto al Valor Agregado, el monto del Impuesto al Valor Agregado trasladado por LA PARTE VENDEDORA a LA PARTE COMPRADORA con motivo de la venta del INMUEBLE 3 es la cantidad de E.U.A.$1'058,009.00 (Un millón cincuenta y ocho mil nueve dólares, 00/100 Moneda de curso legal en los Estados Unidos de América), que equivale a $11'843,881.75 m.n. (Once millones ochocientos cuarenta y tres mil ochocientos ochenta y un pesos, 75/100 Moneda Nacional), de acuerdo con el tipo de cambio indicado con anterioridad.------------------------------

---- Asimismo, LA PARTE COMPRADORA paga a LA PARTE VENDEDORA el Impuesto al Valor Agregado trasladado con motivo de la Compraventa aquí contemplada al momento de firmar la presente Escritura Pública en fondos inmediatamente disponibles, y ésta última expide el recibo más amplio que en derecho proceda respecto a dicha cantidad.------------------------------

---- **TERCERA.** LA PARTE VENDEDORA en este acto declara y garantiza a LA PARTE COMPRADORA que:-----------------------------------------------------------------------------

---- (a) LA PARTE VENDEDORA (i) se encuentra debidamente constituida y existente de conformidad con la Ley General de Sociedades Mercantiles de México; y (ii) tiene las facultades necesarias para ser propietario, arrendar y operar sus activos, propiedades y empresas y para realizar su trabajo de la manera y en los lugares en donde dichos activos, propiedades y acuerdos en donde se tienen, arriendan u operan o donde se realice dicho negocio;-----------------------------

---- (b) LA PARTE VENDEDORA tiene las facultades necesarias para otorgar la presente Escritura Pública y para llevar a cabo las obligaciones que asume por virtud de Contrato de Compraventa aquí contemplado;----------------------------------------------------------------

---- (c) La celebración de este instrumento no (i) violan, contravienen o incumplen o constituyen un incumplimiento de su escritura constitutiva y cualquiera de sus reformas de LA PARTE VENDEDORA, (ii) violan, contravienen, incumplen o constituyen un incumplimiento bajo



# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

17

amenazadas en contra de, respecto de o afectando los INMUEBLES; y (ii) juicios pendientes, órdenes, decretos, escritos, interdictos, decisiones, o adjudicaciones en contra de, respecto de, o que de alguna manera afecten a los INMUEBLES;--------------------------------------------------------

---- (e) LA PARTE VENDEDORA ha llevado a cabos sus negocios dentro del curso ordinario de los mismos;--------------------------------------------------------------------------------------------

---- (f) Es la legítima propietaria de los INMUEBLES;------------------------------------------------

---- (g) Todos los impuestos prediales, servicios públicos y todos y cada uno de los cargos y/o contribuciones vencidas o debidas que afectan a los INMUEBLES han sido oportunamente pagados;--------------------------------------------------------------------------------------------

---- (h) Los INMUEBLES se encuentran libres de gravámenes, limitaciones o restricciones de dominio, embargos u ocupaciones;-----------------------------------------------------------------

---- (i) LA PARTE COMPRADORA no asume responsabilidad ambiental alguna mediante la celebración de este Contrato y LA PARTE VENDEDORA manifiesta y garantiza que los INMUEBLES se encuentran y se mantendrán libres de cualquier derrame, accidente de naturaleza ecológica, almacén o disposición final o reciclado de cualquier materia o residuo que se considere como peligroso de conformidad con la Ley General de Equilibrio Ecológico y Protección al Ambiente, su reglamento y las Normas Oficiales Mexicanas y, convienen en indemnizar y mantener a salvo a LA PARTE COMPRADORA en contra de cualquier responsabilidad, incluyendo multas y recargos que LA PARTE COMPRADORA deba pagar por cualquier acto u omisión o falsedad en declaraciones de LA PARTE VENDEDORA que directa o indirectamente resulten en tal responsabilidad;----------------------------------------------------

---- (j) Sobre los INMUEBLES no pesa (i) servidumbre alguna; (ii) limitación de ninguna índole o; (iii) afectaciones de cualquier naturaleza, incluyendo en materia agraria;----------------------

---- (k) Todos los trabajos de construcción en los INMUEBLES, tales como la construcción de cimientos, estructuras, paredes, piso, techos, instalaciones hidráulicas, eléctricas y sanitarias de los INMUEBLES se encuentran en buen estado y condición y aptas para el uso al que están destinadas;--------------------------------------------------------------------------------------------

---- (l) No ha celebrado contrato, acuerdo, convenio, entendimiento o compromiso alguno, ya sea oral o escrito, preliminar o definitivo, para (A) transmitir, ceder, vender, o de cualquier otra manera disponer de cualquiera de los INMUEBLES o cualquier parte de los mismos a terceras personas, (B) otorgar cualquier clase de derechos de uso relacionados con los INMUEBLES a terceras personas, (C) gravar o establecer cualquier tipo de gravamen sobre los INMUEBLES, o (D) otorgar cualquier tipo de derechos de opción, de preferencia, o cualquier otro tipo de

18

acuerdos, obligaciones, representaciones, anexos, certificados o documentos, incluyendo todos los documentos de auditoria que LA PARTE VENDEDORA ha proporcionado a LA PARTE COMPRADORA, contiene declaración falsa respecto de algún hecho importante que sea necesario para realizar dicha declaración o garantía, anexo, certificado u otro documento, y (B) no existe hecho, condición o circunstancia alguna que afecte de manera adversa la condición de los INMUEBLES y/o de LA PARTE VENDEDORA; y -------------------------------------------------
---- (o) Los INMUEBLES se encuentran libres de cualquier contaminación.------------------------
---- **CUARTA.** LA PARTE VENDEDORA de manera ilimitada, sacará en paz y a salvo a LA PARTE COMPRADORA, los fideicomisarios bajo el FIDEICOMISO, sus delegados fiduciarios, empleados, apoderados y demás personal, de cualquier daño, perjuicio, pena, multa, interés, responsabilidad, obligación o pago, derivado de cualquier demanda, litigio o reclamación, sea de la naturaleza que fuere, relacionada con cualquier inexactitud en las declaraciones realizadas de acuerdo a la cláusula anterior y, en general, por cualquier acto, hecho u omisión cuyo hecho generador haya tenido lugar con anterioridad a la celebración de este Contrato en relación a los INMUEBLES (una "Reclamación"). A tal efecto, LA PARTE COMPRADORA notificará de inmediato a LA PARTE VENDEDORA en cuanto tenga conocimiento de una Reclamación, proporcionándole copia de toda la información que LA PARTE COMPRADORA hubiere recibido al respecto. LA PARTE VENDEDORA, dentro de los tres días siguientes a la fecha de la notificación de la Reclamación de que se trate, deberá, a su opción, ya sea (i) entregar a la LA PARTE COMPRADORA las cantidades que se reclamen en la correspondiente Reclamación, o (ii) notificar a LA PARTE COMPRADORA su decisión de litigar la Reclamación de que se trate, acompañando dicha notificación con un depósito, fianza u otra garantía aceptable para LA PARTE COMPRADORA, cubriendo el monto de la Reclamación y, en su caso, sus accesorios, para que LA PARTE COMPRADORA los aplique al pago de la Reclamación en caso de que LA PARTE VENDEDORA no prevalezca en el litigio correspondiente. ------------------------------------
---- **QUINTA.** LA PARTE VENDEDORA se obliga al saneamiento para el caso de evicción, en los términos de Ley. Asimismo, LA PARTE VENDEDORA responderá de los vicios ocultos que pueda presentar los INMUEBLES por un periodo de un año contado a partir de la fecha de firma del presente INSTRUMENTO.------------------------------------------------------------------------
---- **SEXTA.** LA PARTE COMPRADORA se obliga a destinar los INMUEBLES objeto de ésta Escritura a un uso que no contravenga las disposiciones legales vigentes, de conformidad con lo dispuesto en la Ley de Ordenamiento Territorial y Desarrollo Urbano del Estado de Tamaulipas, y de los Artículos 53 (cincuenta y tres) y 54 (cincuenta y cuatro) de la Ley General de Asentamientos Humanos.-------------------------------------------------------------------------------
---- **SEPTIMA.** Los gastos, impuestos, derechos y honorarios que se causen con motivo de la

# Lic. J. Guillermo García Adame
## Notario Público 140

Cd. Reynosa, Tam.
Teléfono (899) 922 5302   Facsímile (899) 922 4702

LIC. J. GUILLERMO GARCIA ADAME
NOTARIO PUBLICO 140
Reynosa, Tam.

19

---- **NOVENA.** Para los efectos de este Contrato de Compraventa las partes designan como sus domicilios los siguientes:------------------------------------------------------------------------------

---- Domicilio de LA PARTE VENDEDORA: Carretera Sendero Nacional Kilómetro 3.5 (tres punto cinco), Parque Industrial del Norte, Matamoros, Tamaulipas, México, Código Postal 87350 (ochenta y siete mil trescientos cincuenta).------------------------------------------------------------

---- Domicilio de LA PARTE COMPRADORA: Prudential Real Estate Investors. Andrés Bello 10-401 (diez guión cuatrocientos uno), Colonia Polanco, México, Distrito Federal, Código Postal 11560 (once mil quinientos sesenta). Teléfono: 011-52-55-5093-2772 (cero, uno, uno, guión, cinco, dos, guión, cinco, cinco, guión, cinco, cero, nueve, tres, guión, dos, siete, siete, dos). Facsímile: 011-52-55-5093-2789 (cero, uno, uno, guión, cinco, dos, guión, cinco, cinco, guión, cinco, cero, nueve, tres, guión, dos, siete, ocho, nueve). Atención: Francisco Andragnes. Correo electrónico: francisco.andragnes@prudential.com.------------------------------------------------------

-------------------------------------- **APARTADO FISCAL:** --------------------------------------

---- (i) La operación formalizada en los términos de la presente Escritura Pública se encuentra sujeta al cálculo y pago del 2% (dos por ciento) del Impuesto Sobre Adquisición de Inmuebles;----

---- (ii) No se retiene el Impuesto Sobre la Renta en virtud de que la Sociedad Mercantil Delphi Delco Electronics de México, Sociedad Anónima de Capital Variable, es una persona moral sujeta al Título Segundo de la Ley del Impuesto Sobre la Renta, con Registro Federal de Contribuyentes DDE-850531-NI2; y -----------------------------------------------------------------

---- (iii) El Suscrito Notario queda relevado de la obligación de calcular y retener el Impuesto al Valor Agregado trasladado con motivo de la operación de Compraventa formalizada en los términos de ésta Escritura Pública, debido a que la Sociedad Mercantil Delphi Delco Electronics de México, Sociedad Anónima de Capital Variable, se encuentra en el supuesto del Artículo 48 (cuarenta y ocho) del Reglamento de la Ley del Impuesto al Valor Agregado, y exhibió al Suscrito las últimas declaraciones provisionales y la última anual de dicho Impuesto, mismas que en copia simple se agregan al Apéndice de ésta Escritura marcadas con la letra "G".----------------

----------------------------------------- **PERSONALIDAD:** -----------------------------------------

---- El Señor John Wade Schwarm Jenkins justificó el carácter con el que comparece y la existencia legal de su representada, Delphi Delco Electronics de México, Sociedad Anónima de Capital Variable, con la certificación que se agrega al Apéndice de ésta Escritura Pública marcada con la letra "H", y que en su momento se agregará a los Testimonios que del presente Instrumento se expidan.-----------------------------------------------------------------------------------

----------------------------------------- **PERSONALIDAD:** -----------------------------------------

20

Abril de dos mil cinco.------------------------------------------------------------------------------------

---- El Señor Francisco Andragnes se identificó y justificó su legal existencia en el País con el documento migratorio FM-3 (F, M, guión, tres) Número 1573423 (un millón quinientos setenta y tres mil cuatrocientos veintitrés), expedido por la Delegación del Instituto Nacional de Migración con sede en la Ciudad de México, Distrito Federal, y con fecha de vencimiento el ocho de Junio de dos mil cinco.------------------------------------------------------------------------------

---- El Licenciado Juan Sebastián Argomedo Ruiz de Velasco se identificó con credencial de elector con fotografía, con clave de elector ARRZJN68071009H800 (A, R, R, Z, J, N, seis, ocho, cero, siete, uno, cero, cero nueve, H, ocho, cero, cero), expedida por el Instituto Federal Electoral.--------------------------------------------------------------------------------------------------

----------------------------------------- **GENERALES:** -----------------------------------------

---- Los comparecientes manifestaron como sus generales los siguientes:----------------------------

---- John Wade Schwarm Jenkins, Norteamericano, casado, con fecha de nacimiento el nueve de Febrero de mil novecientos cincuenta y uno, ejecutivo de empresa de profesión, originario del Estado de Ohio, Estados Unidos de América, y con domicilio en Carretera Sendero Nacional Kilómetro 3.5 (tres punto cinco), Parque Industrial del Norte, Matamoros, Tamaulipas, México, Código Postal 87350 (ochenta y siete mil trescientos cincuenta).-------------------------------------

---- Francisco Andragnes, Argentino, soltero, con fecha de nacimiento el diecisiete de Mayo de mil novecientos setenta y dos, Licenciado en Administración de profesión, originario de Buenos Aires, Argentina, y con domicilio en Dickens Número 43 (cuarenta y tres), Colonia Polanco, Delegación Hidalgo, México, Distrito Federal, C.P. 11560 (once mil quinientos sesenta).----------

---- Juan Sebastián Argomedo Ruiz de Velasco, Mexicano, casado, con fecha de nacimiento el diez de Julio de mil novecientos sesenta y ocho, Abogado de profesión, originario de la Ciudad de México, Distrito Federal, y con domicilio en Avenida Adolfo López Mateos Número 1524-23 (mil quinientos veinticuatro guión veintitrés) Norte, Ciudad Juárez, Chihuahua, México, Código Postal 32310 (treinta y dos mil trescientos diez).-----------------------------------------------------

---- Yo, el Notario, Doy Fe:----------------------------------------------------------------------------

---- (i) Que el Licenciado Juan Sebastián Argomedo Ruiz de Velasco, conforme a la Fracción III (tercera) del Artículo 119 (ciento diecinueve) de la Ley Notariado para el Estado de Tamaulipas, protestó cumplir lealmente el cargo de intérprete que le confirió el Señor John Wade Schwarm Jenkins;-------------------------------------------------------------------------------------------------

---- (ii) Que el Señor John Wade Schwarm Jenkins me exhibió la constancia de renovación de inscripción de su representada ante la Sección Segunda del Registro Nacional de Inversiones Extranjeras para el año dos mil cuatro, misma que en copia simple se agregó al Apéndice de ésta Escritura Pública marcada con la letra "J";-------------------------------------------------------------



# ESTADO DE TAMAULIPAS

## *REGISTRO PUBLICO DE LA PROPIEDAD Y DE COMERCIO*



REGISTRO PUBLICO
DE LA PROPIEDAD
Y DE COMERCIO

# APENDICE

18/04/2005  355

### DATOS DE REGISTRO

PRESENTA:    LIC. JOSE GUILLERMO GARCIA ADAME,  140

**CONTRATO DE COMPRAVENTA.**

VENDEDOR:
DELNOSA, S.A. DE C.V.

COMPRADOR:
BANCO JP MORGAN, SOCIEDAD ANONIMA,,
REPRESENTADO EN ESTE ACTO POR SU APODERADO
ESPECIAL EL

ESCRITURA       66-VI



| SECCION | NUMERO | LEGAJO | FECHA |
|---|---|---|---|
| PRIMERA | 4537 | 2087 | 22/04/2005 |

| ANTECEDENTE:NÚMERO | LEGAJO | AÑO | SEC |
|---|---|---|---|
| 98 | 540 | 94 | 1 |

EL DIRECTOR
Cd. Victoria, Tamaulipas.

LIC. HERMINIO GARZA PALACIOS

COORDINADOR REGISTRAL

LIC. CLAUDIA DEL VALLE SANCHEZ

REGISTRÓ

JULIO CESAR ROJAS RIVERA





REGISTRO PUBLICO
DE LA PROPIEDAD
Y DE COMERCIO

| | |
|---|---|
| **OPCIÓN DE COMPRA DE FECHA 16 DE DICIEMBRE DE 2004, (LA "OPCIÓN"), OTORGADA POR DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V. (EL "VENDEDOR") A FAVOR DE PLA HOLDING VI, LLC (EL "COMPRADOR") DE CONFORMIDAD CON LAS SIGUIENTES:** | **THIS PURCHASE OPTION DATED DECEMBER 16, 2004, (THE "OPTION"), IS MADE AND GRANTED BY DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V. (THE "SELLER") IN FAVOR OF PLA HOLDING VI, LLC (THE "BUYER"), PURSUANT TO THE FOLLOWING:** |
| **DECLARACIONES** | **RECITALS** |
| I. Declara el Vendedor que: | I. The Seller recites that: |
| (a) Es una sociedad debidamente constituida y existente de conformidad con las leyes de México. | (a) It is a corporation legally incorporated and validly existing under the laws of Mexico. |
| (b) Es el propietario de los siguientes inmuebles: | (b) It is the record legal owner of the following real properties: |
| (i) inmueble ubicado en la Calle Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99 del Parque Industrial Reynosa, en Reynosa, Tamaulipas, México, con una superficie total de 1,665,304 pies cuadrados, con 327,168 pies cuadrados de construcciones consistentes en dos naves industriales (los "Edificios Delphi 1 y 2"). | (i) the real property located at Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99, Parque Industrial Reynosa, in Reynosa, Tamaulipas, Mexico, with a total surface of 1,665,304 square foot, with 327,168 square foot of constructions consisting of two industrial plants (the "Delphi Buildings 1 and 2"). |
| (ii) inmueble ubicado en la Calle Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99 del Parque Industrial Reynosa, en Reynosa, Tamaulipas, México, con una superficie total de 1,807,852 pies cuadrados, con 321,444 pies cuadrados de construcciones consistentes en dos naves industriales (los "Edificios Delphi 3 y 4"). | (ii) the real property located at Calle Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99, Parque Industrial Reynosa, in Reynosa, Tamaulipas, Mexico, with a total surface of 1,807,852 square foot, with 321,444 square foot of constructions consisting of two industrial plants (the "Delphi Buildings 3 and 4"). |
| (iii) lote ubicado en la Calle Fomento Industrial sin número, Parque Industrial Del Norte, en Reynosa, Tamaulipas, México, con una superficie total de 9.31 hectáreas (equivalente a 23.01 acres) (el "Terreno"). | (iii) the lot located at Calle Fomento Industrial, sin número Parque Industrial Del Norte, in Reynosa, Tamaulipas, Mexico, with a total surface of 9.31 hectares (equivalent to 23.01 acres (the "Vacant Lot"). |
| Los inmuebles identificados en los incisos (i) a (iii) anteriores, conjuntamente se identificarán para efectos de la presente Opción como las "Propiedades" | The real properties identified in sections (i) through (iii) above, are hereby collectively identified as the "Properties". |

1

(c) Es su deseo otorgar una opción unilateral irrevocable al Comprador y/o sus designatarios, para adquirir las Propiedades en los términos establecidos bajo la presente opción.

(d) Su representante cuenta con las facultades necesarias para la celebración de la presente Opción, las cuales no han sido revocadas o modificadas de forma alguna.

En virtud de lo anterior, el Vendedor otorga la presente Opción bajo las siguientes.

## CLAUSULAS

1.   **Otorgamiento de la Opción.** Mediante la firma de la presente Opción, el Vendedor en este acto otorga de manera irrevocable y unilateral al Comprador una opción exclusiva para adquirir las Propiedades en los términos establecidos más adelante (la "Opción"), que puede ser ejercitada por el Comprador a su entera discreción. La Opción deberá continuar en vigor a beneficio del Comprador hasta (i) las 5:00 p.m. hora de la montaña, del ██ de enero del 2005 (el "Período de Opción"). No obstante lo anterior, la presente Opción se podrá extender el Período de Opción mediante acuerdo por escrito firmado por el Vendedor y el Comprador.

2. **Exclusividad.** La Opción se otorga de manera exclusiva y por lo tanto, respecto de las Propiedades, a partir de la fecha del otorgamiento de la presente Opción y hasta ocurra el primero de los siguientes supuestos, el Vendedor no deberá de celebrar ningún contrato, acuerdo, arreglo, y/o entendido, ya sea oral o escrito, definitivo o preliminar para la venta, transmisión, gravamen o disposición de cualquier otra forma de las Propiedades: (i) que el Comprador o su designatario adquiera las Propiedades, (ii) el Comprador notifique al Vendedor su decisión de no ejercitar la Opción respecto de las Propiedades, o (iii) el Período de Opción se venza sin que el Comprador notifique al Vendedor su deseo de ejercitar la Opción. La firma de la presente Opción por parte del Vendedor formaliza

(c) It wishes so to grant a unilateral and irrevocable option to the Buyer and/or its designees, to acquire the Properties, in the terms set forth herein.

(d) Its representative has the sufficient powers and authority to enter into this Option, which powers and authority have not been revoked or otherwise modified.

Therefore, in consideration of the foregoing, the Seller hereby grants this Option in accordance with the following.

## CLAUSES

1. **Granting of the Option.** Upon the granting of this Option, the Seller hereby unilaterally and irrevocably grants to the Buyer an exclusive option to acquire the Properties in the terms set forth below (the "Option"), exercisable by the Buyer in its entire discretion. The Option shall continue to be in full force and effect in the benefit of the Buyer until (i) 5:00 p.m. MDT on January ██, 2005, (the "Option Period"). Notwithstanding the foregoing, the parties hereto may extend the Option Period through written agreement signed by the Seller and the Buyer.

2. **Exclusivity.** The Option is granted as exclusive and, therefore with respect to the Properties, from the time the Option is granted and until the first of the following occurs, the Seller shall not enter into any agreements, contracts, arrangements and/or understanding, whether written or oral, definitive or preliminary, for the sale, transfer, encumbrance or any other way of disposition of the Properties: (i) the Buyer or its designee acquires such Properties, (ii) the Buyer notifies the Seller its election not to exercise the Option, or (iii) the Option Period expires without the Buyer notifying the Seller that it wishes to exercise the Option. The execution of this Option by the Seller formalizes its unilateral and irrevocable promise to sell the

su promesa unilateral e irrevocable de vender las Propiedades al Comprador o su designatario en los términos establecidos bajo la presente Opción, en caso de que el Comprador decida ejercitar la Opción respecto de las Propiedades.

**3. Contraprestación por la Opción.** Como contraprestación a la Opción y en especial por la exclusividad pactada en la Sección anterior, el Comprador deberá entregar al Vendedor al momento de ejercitar la Opción la cantidad de $22,500.00 (veintidos mil quinientos) Dólares, Moneda de curso legal de los Estados Unidos de América que es el equivalente al 0.1% del Precio de Compra, según se define mas adelante en la Sección 5 de esta Opción. La contraprestación pactada en esta Sección se acreditará al Precio de Compra, en el caso en que el Comprador elija ejercitar la Opción, pero no se devolverá en caso de que no se celebre la operación de compraventa por cualquier causa.

**4. Ejercicio.**

(a) Aviso. En cualquier momento previo a la terminación del Período de Opción, el Comprador podrá entregar un aviso por escrito (el "Aviso de Opción") al Vendedor indicando si ha decidido ejercitar o no la Opción respecto de las Propiedades.

(a) No ejercicio. Si el Comprador indica en el Aviso de Opción que ha optado por no ejercitar la Opción, o en caso de que el Período de Opción termine sin que el Comprador envíe un aviso al Vendedor, entonces la Opción terminará y el Vendedor podrá ejercer todos sus derechos con respecto a las Propiedades con completa libertad y sin restricción alguna con respecto de el Comprador, y el Comprador cesará de gozar cualquier derecho de compra o de opción a compra con respecto a las Propiedades.

(c) Ejercicio Afirmativo. En caso de que el Comprador elija ejercitar la Opción respecto de las Propiedades, entonces el Comprador deberá

Properties to the Buyer or its designee in the terms set forth herein, if the Buyer chooses to exercise the Option with respect to such Properties.

**3. Consideration to the Option.** As a consideration to the Option and especially for the exclusivity set forth in the preceding Section, the Buyer shall deliver at the moment of exercise of the Option the amount of $22,500.00 (twenty two thousand five hundred) Dollars, lawful currency of the United States of America to the Seller, which is the equivalent of 0.1% of the Purchase Price as established further in Section 5 of this Option. The amount paid for consideration hereunder, shall be accredited against the Purchase Price in case the Buyer elects to exercise the Option, however it shall not be reimbursed if the sale purchase transaction is not finalized for any reason whatsoever.

**4. Exercise.**

(a) Notice. At any time prior to the expiration of the Option Period, Buyer may deliver a written notice (the "Option Notice") to Seller indicating whether or not it has elected to exercise the Option.

(a) Non-exercise. If Buyer indicates in the Option Notice that it has elected not to exercise the Option, or if the Option Period expires without the Buyer sending a notice to the Seller, then the Option will expire and the Seller may exercise all its rights with respect to the Properties with absolute freedom and without any restriction with respect to the Buyer, and the Buyer will cease to have any right of purchase or of an option to purchase the Properties.

(c) Affirmative Exercise. If the Buyer elects to exercise the Option with respect to the Properties, then the Buyer shall set forth in the

3

establecer en el Aviso de Opción el lugar, tiempo y fecha del cierre de la compra de las Propiedades (cuya fecha deberá ser no antes del 3 de enero del 2005 y no después del 31 de Enero de 2005) y el nombre del notario público ante el cual se celebrará el instrumento público formalizando la transmisión de las Propiedades del Vendedor al Comprador o su designatario (el "Contrato de Compraventa"). 1 Contrato de Compraventa contendrá sustancialmente las declaraciones y garantías del Vendedor relativas a las Propiedades contenidas en la Cláusula Sexta de esta Opción, así como la obligación del Vendedor de indemnizar y sacar en paz y a salvo al Comprador y/o su designatario en caso de incumplimiento a cualquiera de dichas declaraciones y garantías

En caso de que el Comprador elija ejercitar la Opción respecto de las Propiedades, el Vendedor deberá negociar de buena fe con el Comprador respecto a los Edificios Delphi 1, 2, 3 y 4, satisfactorios para ambas partes y que reflejen las condiciones de plazo y costo insertados del Anexo "A". Los contratos de arrendamiento se identificará como los "Arrendamientos". Lo anterior sin que se entienda que la Compraventa materia de esta Opción se encuentra condicionada a la celebración de los Arrendamientos

**5. Precio de Compra.** Al momento de firma del Contrato de Compraventa respectivo, el Comprador o su designataria pagará al Vendedor la cantidad de US$22,500,000.00 Dólares (Veintidós Millones Quinientos Mil dólares de los Estados Unidos de América, 00/100), más el Impuesto al Valor Agregado correspondiente a las construcciones de dichos inmuebles, por concepto de precio de compra de las Propiedades (el "Precio de Compra"):

El Precio de Compra de las Propiedades se pagará en dólares de los Estados Unidos de América en El Paso, Estado de Texas, mediante transferencia bancaria a la cuenta número 72061159984, ABA 113000809 que el Vendedor mantiene con el Banco JP Morgan Chase.

Option Notice the place, time and date for closing of the purchase of the Properties (which date shall be no earlier than January 3rd, 2005 and no later than January 31, 2005)(the "Closing"), and the name of the notary public before which the final notarized deeds formalizing the transfer of the Properties from the Seller to the Buyer or its designee (the "Purchase and Sale Agreement"). At the Closing the parties shall execute (i) the Purchase and Sale Agreement, which shall contain representations and warranties from the Seller related to the Properties substantially in the terms of those contained in Section Six of this Option, as well as the Seller's obligation to indemnify and hold the Buyer and/or its designee harmless in case of breach of any such representations and warranties; and (ii) the lease agreements set forth as Exhibits "A1" and "A2" with respect to the Properties (collectively the "Leases").

If the Buyer elects to exercise the Option with respect to the Properties, then at closing the Seller and Buyer shall negotiate in good faith the lease agreements with respect to Delphi Buildings 1, 2, 3 and 4; satisfactory to both parties that would reflect the cost and time terms inserted in Exhibit "A". The lease agreements hereby described shall be identified as the "Leases". The above, without understanding the execution of the Leases as a condition for the Purchase of the Properties.

**5. Purchase Price.** Upon the execution of the Purchase and Sale Agreement, the Buyer or its designee shall pay the Seller the amount of $22,500,000.00 (Twenty Two Million Five Hundred Thousand dollars 00/100) legal currency of the United States of America, plus the corresponding value added tax, on the industrial buildings as purchase price of the Properties (the "Purchase Price").

The Purchase Price of the Properties shall be paid in dollars of the United States of America

4

**6. Declaraciones y Garantías del Vendedor.** El Vendedor en este acto garantiza al Comprador que a esta fecha:

(a) El Vendedor (i) se encuentra debidamente constituido y existente de conformidad con la Ley General de Sociedades Mercantiles de México; y (ii) tiene las facultades necesarias para ser propietario, arrendar y operar sus activos, propiedades y empresas y para realizar su trabajo de la manera y en los lugares en donde dichos activos, propiedades y acuerdos se tienen, arriendan u operan o donde se realice dicho negocio.

(b) El Vendedor tiene las facultades necesarias para otorgar la presente Opción y para llevar a cabo sus obligaciones bajo la misma.

(c) El otorgamiento de la presente Opción, la consumación de las transacciones contempladas bajo la presente Opción y el cumplimiento por parte del Vendedor de esta Opción no (i) violan, contravienen o incumplen o constituyen un incumplimiento bajo sus Estatutos Sociales (los presentes y como los mismos se modifiquen), (ii) violan, contravienen, incumplen o constituyen un incumplimiento bajo ningún contrato, acuerdo, deuda, instrumento o compromiso del cual el Vendedor sea parte, o de las cuales sus activos, propiedades o empresas estan sujetas, o a través de las cuales cualesquiera de ellas se encuentren obligadas o afectadas; (iii) resulte en o de derecho a alguna persona a buscar u ocasionar la terminación, modificación o renegociación de cualquier contrato, acuerdo, instrumento o compromiso al que el Vendedor o las Propiedades se encuentren obligados o afectados, excepto por los casos previstos en el **Anexo "B"**.



(d) Excepto por lo contenido en el **Anexo "C"**, a la fecha de la presente Opción no existen (i) acciones, juicios, reclamaciones, demandas, investigaciones, arbitrajes u otros procedimientos

---

In El Paso, State of Texas, through wire transfer at account No. 72061159984, ABA 113000609 that the Seller maintains with JP Morgan Chase Bank, N.A.

**6. Representations and Warranties of the Seller.** Seller hereby represents and warrants to the Buyer that as of this date:

(a) The Seller (i) is duly incorporated and organized and validly existing under the General Law of Business Organizations of Mexico; and (ii) has all necessary corporate powers and authority to own, lease and operate its assets, properties and undertakings and to conduct its business as and in the places where such assets, properties and undertakings are now owned, leased or operated or such business is now conducted.

(b) The Seller has the necessary authority to grant this Option and to perform its obligations hereunder.

(c) The execution and delivery of this Option, the consummation of the transactions contemplated herein, the performance by the Seller of its obligations hereunder and the compliance by the Seller with this Option , do not: (i) violate, contravene or breach, or constitute a default under, the Charter and By-laws (Estatutos Sociales) (both currently in force and as amended as provided herein) of the Seller; (ii) violate, contravene or breach, or constitute a default under any contract, agreement, indenture, instrument or commitment to which the Seller may be a party, or its assets, properties or undertakings may be subject to, or by which any of them is bound or affected; (iii) result in, or give any person the right to seek or to cause the termination, amendment or renegotiation of any contract, agreement, indenture, instrument or commitment to which the Seller or the Properties are bound or affected, except as set forth in **Exhibit "B"**.

5

pendientes o, a conocimiento del Vendedor, hechas o amenazadas en contra de, respecto de o afectantes a las Propiedades; y (ii) juicios pendientes, órdenes, decretos, escritos, interdictos, decisiones, o adjudicaciones en contra de, respecto de, o que de alguna manera afecte a las Propiedades.

(e) El Vendedor ha llevado a cabos sus negocios dentro del curso ordinario de los mismos.

(f) Es el legítimo propietario de las Propiedades.

(g) Todos los impuestos prediales, servicios públicos y todos y cada uno de las cargas y/o contribuciones vencidas o debidas que afectan a las Propiedades han sido debidas y oportunamente pagados.

(h) Las Propiedades se encuentran libres de gravámenes, limitaciones o restricciones de dominio, embargos u ocupaciones por terceras personas.

(i) Todos los trabajos de construcción en las Propiedades tales como la construcción de cimientos, estructuras, paredes, piso, techos, instalaciones hidráulicas, eléctricas y sanitarias respecto de las Propiedades se encuentran en buen estado y condición y aptas para el uso al que están destinadas.

(j) No ha celebrado ningún contrato, acuerdo, convenio, entendimiento, o compromiso ya sea oral o escrito, preliminar o definitivo, para (A) transmitir, ceder, vender, o de cualquier otra manera disponer de las Propiedades o cualquier parte de las mismas a terceras personas, (B) otorgar cualquier clase de derechos de uso relacionados con las Propiedades a terceras personas, (C) gravar o establecer cualquier tipo de gravamen sobre las Propiedades, o (D) otorgar cualquier tipo de derechos de opción, de preferencia, o cualquier otro tipo de derechos sobre las Propiedades a terceras personas.

(k) El Vendedor ha llevado a cabo la investigación respecto de (i) cada acuerdo,

(d) Except as set forth in Exhibit "C", as at the date hereof there are: (i) no actions, suits, claims, trials, demands, investigations, arbitrations and other proceedings pending or, to the knowledge of the Seller, threatened against, with respect to, or affecting the Properties; and (ii) no outstanding judgments, orders, decrees, writs, injunctions, decisions, rulings or awards against, with respect to, or in any manner affecting the Properties.

(e) The Seller has conducted its business in the ordinary course of business.

(f) It is the record legal owner of the Properties.

(g) All real property taxes, utilities and any and all charges and/or assessments due and payable affecting the Properties have been duly and timely paid.

(h) The Properties are free and clear of any liens, encumbrances, restrictions, ownership limitations or third party occupants.

(i) All construction works on the Properties such as the buildings' foundations, structures, walls, floors, ceilings, hydraulic, electric and sanitary installations constructions with respect to the Properties are in good care and condition, suitable for their intended use.

(j) It has not entered into any type of agreement, contract, understanding, arrangement or commitment, whether written or oral, preliminary or definitive, to (A) transfer, assign, sell or otherwise dispose of the Properties or any part thereof to third parties, (B) grant any type of use rights relating to any of the Properties to third parties, (C) encumber or establish any type of liens on any of the Properties, or (D) grant any third parties option rights, rights of first refusal, preemptive rights

6

obligación y declaración contenida en esta Opción; (ii) todos los Anexos a esta Opción; y (iii) cualquier certificado u otros documentos mencionados bajo la presente Opción suministrado o a suministrarse al Comprador de conformidad con la presente Opción. Al leal saber y entender del Vendedor (A) ninguna de las garantías, acuerdos, obligaciones, representaciones, Anexos, certificados o documentos, incluyendo todos los Documentos de Auditoría (como dicho término se define en la Sección 6(d) de la presente Opción) proporcionados al Comprador, contiene o contendrá ninguna declaración falsa respecto de algún hecho importante que sea necesario para realizar dicha declaración o garantía, Anexo, certificado u otro documento, y (B) no existe ningún hecho, condición o circunstancia que afecte de manera adversa la condición de las Propiedades, ni el Vendedor y/o su habilidad para realizar las obligaciones bajo la presente Opción.

**7. Obligaciones y Acuerdos.** A partir de la fecha del otorgamiento de la presente Opción y hasta que (i) el Contrato de Compraventa sea celebrado, (ii) el Comprador notifique al Vendedor su decisión de no ejercitar la Opción, o (iii) la terminación del Período de Opción sin que el Comprador mande un Aviso de Opción al Vendedor, el Vendedor acuerda que:

(a) todas las declaraciones y garantías contenidas en la Sección 5 anterior continuarán siendo verdaderas y correctas;

(b) no deberá realizar ningún acto u omisión que pudiera tener un efecto materialmente adverso en las Propiedades, el cumplimiento por parte del Vendedor de sus obligaciones bajo los permisos, licencias y autorizaciones relacionadas con las Propiedades, o la habilidad del Vendedor de cumplir con sus obligaciones bajo la presente Opción;

(c) Hará su mejor esfuerzo y gestiones para obtener todas los consentimientos, aprobaciones y autorizaciones necesarias para que el Vendedor cumpla con sus obligaciones bajo la presente

or any other type of rights over any of the Properties.

(k) The Seller has made the inquiry and investigation with respect to: (i) each covenant, agreement, obligation, representation and warranty contained in this Option; (ii) all Schedules to this Option; and (iii) any certificates or other documents referred to herein furnished or to be furnished to the Buyer pursuant hereto. To the Seller's knowledge, (A) none of the aforesaid covenants, agreements, obligations, representations, warranties, Exhibits, certificates or documents, including all Due Diligence Materials (as such term is defined in Section 6(d) hereof) contains or will contain any untrue statement of a material fact or omits to state a material fact necessary to make such representation, warranty, Exhibit, certificate or other document not misleading, and (B) there is no fact, condition or circumstance which adversely affect the condition of the Properties, the Seller and/or its ability to perform its obligations under this Option

**7. Covenants.** From the date this Option is granted and until (i) the Purchase and Sale Agreement is executed, (ii) the Buyer notifies the Seller its decision not to exercise the Option, or (iii) the expiration of the Option Period without the Buyer sending an Option Notice to the Seller, the Seller agrees that

(a) all representations and warranties contained in Section 5 above shall continue to be true and correct;

(b) it shall not carry out any act or omission that could have a material adverse effect on the Properties, the compliance by the Seller of its obligations under the permits, licenses and authorizations relating to the Properties, or the Seller's ability to comply with its obligations hereunder;

7

Opción, incluyendo la transmisión del título de propiedad de las Propiedades al Comprador o su designatario.

(d) Al momento en que lo solicite el Comprador, deberá entregar al Comprador y/o sus consultores, todos los documentos, certificados e información relacionada con las Propiedades, los Arrendamientos requeridos por el Comprador, así como todos los documentos necesarios para preparar y celebrar el Contrato de Compraventa (los "Materiales de Auditoría"); toda la información contenida en los Materiales de Auditoría que sean entregados al Comprador y/o sus consultores de conformidad con lo anterior, deberá ser correcta y exacta.

(e) deberá dar aviso inmediato al Comprador de cualquier hecho, acto, omisión o circunstancia conocida por el Vendedor que pueda afectar las Propiedades o bajo la presente Opción;

(f) Deberá continuar con sus operaciones en el curso ordinario de los negocios;

(g) Realizará ante la Comisión Federal de Electricidad, si así lo solicita el Comprador, la compra de 6000 KVA de energía los cuales servirán exclusivamente al Terreno. Los costos y gastos derivados de la compra de Kva por el Vendedor a CFE deberán ser pagados por el Comprador al Vendedor. En caso de que la presente Opción no sea ejercitada por el Comprador o por cualquier motivo no se celebre el Contrato de Compraventa según lo previsto en la presente Opción, el Vendedor conviene en reembolsar al Comprador todos los gastos y costos pagados por la compra de los Kva.

8. **Incumplimiento del Vendedor.**

En caso de que el Comprador envíe un Aviso de Opción al Vendedor indicando su deseo de adquirir las Propiedades, y por causa imputable únicamente al Vendedor éste no celebre el Contrato de Compraventa en la fecha indicada por el Comprador

(c) It shall use its best efforts and carry out all undertakings to obtain all consents, approvals and authorizations required for the Seller to comply with its obligations hereunder, including transferring title to the Properties to the Buyer or its designee.

(d) Immediately upon the Buyer's request, it shall deliver to the Buyer and/or its consultants, all documents, certificates and information relating to the Properties, the Leases requested by the Buyer as well as those documents necessary to prepare and execute the Purchase and Sale Agreement (the "Due Diligence Materials"); all information contained in the Due Diligence Materials delivered to the Buyer and/or its consultants in accordance with the foregoing shall be accurate and correct;

(e) It shall give immediate notice to the Buyer of any event, act, omission or circumstance known by Seller that could affect the Properties and/or Seller's ability to comply with its obligations hereunder;

(f) It shall continue its operations in the normal course of business.

(g) If requested by Buyer, it shall purchase with the Federal Power Commission (CFE) 6000 Kva of electricity for the exclusive use of the Vacant Lot. The costs and expenses derived from the purchase of Kva by Seller to CFE shall be paid by Buyer to Seller. In the event the present Option is not exercised by Buyer or for any reason the parties fail to execute the Purchase and Sale Agreement as indicated hereof, Seller agrees to reimburse Buyer all costs and expenses paid for the purchase of KVA.

8. **Seller's Default.**

If the Buyer sends an Option Notice to the Seller indicating that it wishes to acquire the Properties, and the Seller for any reason attributable solely to

en el Aviso de Opción, atento a lo previsto en el segundo párrafo del punto anterior, entonces el Comprador, a su elección, podrá: (i) solicitar el cumplimiento forzoso del Contrato de Compraventa o, (ii) solicitar la rescisión del Contrato de Compraventa. En ambos casos, el Comprador tendrá derecho al resarcimiento de los daños y perjuicios que ocasione al Vendedor por motivo de su incumplimiento y la devolución de la cantidad pactada como contraprestación de la Opción al amparo de la Sección 3 anterior.

the Seller fails to execute such Purchase and Sale Agreement on the date indicated by the Buyer in the Option Notice, pursuant to the terms of the second paragraph of the section above, then the Buyer, at its entire election, may either (i) request specific performance of the Purchase and Sale Agreement or, (ii) request the rescission of the Purchase and Sale Agreement. In both cases, the Buyer shall have the right to seek the costs, expenses and damages resulting from the Seller's non-compliance and, also, the reimbursement of the consideration for the Option set in Section 3 above.

**9. Incumplimiento del Comprador.** En caso de que habiendo enviado el Comprador un Aviso de Opción al Vendedor indicando su deseo de adquirir las Propiedades y, el Comprador o su designatario por causa imputable únicamente al Comprador y/o su designatario no celebre el Contrato de Compraventa en la fecha indicada en el Aviso de Opción, entonces el Vendedor, a su entera elección, podrá (i) solicitar el cumplimiento forzoso del Contrato de Compraventa o, (ii) solicitar la rescisión del Contrato de Compraventa. En ambos casos, el Vendedor tendrá derecho al resarcimiento de los daños y perjuicios que ocasione el Comprador por motivo de su incumplimiento y a la retención de la cantidad pactada como contraprestación de la Opción al amparo de la Sección 3 anterior.

**9. Buyer's Default.** If the Buyer sends an Option Notice to the Seller indicating that it wishes to acquire the Properties, and the Buyer or its designee for any reason attributable solely to the Buyer and/or its designee fails to execute such Purchase and Sale Agreement on the date indicated in the Option Notice, then the Seller, at its entire option, may either (i) request specific performance of the Purchase and Sale Agreement or, (ii) request the rescission of the Purchase and Sale Agreement. In both cases, the Seller shall have the right to seek the costs, expenses and damages resulting from the Buyer's non-compliance and, also, retain the the consideration for the Option set in Section 3 above.

**10. Efecto Obligatorio.** El otorgamiento por parte del Vendedor de esta Opción expresamente constituye una oferta unilateral e irrevocable del Vendedor de transmitir las Propiedades al Comprador en los términos establecidos bajo la presente Opción, en caso de que el Comprador decida ejercitar la Opción. Sin embargo, nada en la presente Opción deberá interpretarse en sentido de obligar al Comprador o su designatario a ejercitar la Opción y celebrar el Contrato de Compraventa o crear cualquier clase de responsabilidad en el Comprador o su designatario en caso de que decidan no adquirir las Propiedades.

**10. Binding Effect.** The granting by the Seller of this Option expressly constitutes the irrevocable unilateral consent and agreement (oferta unilateral) of the Seller to transfer the Properties to the Buyer in the terms set forth herein, should the Buyer choose to exercise the Option. Nothing in this Option however, shall be construed to impose an obligation on the Buyer or its designee to exercise the Option and execute the Purchase and Sale Agreement regarding the same or to create any type of liability or responsibility on the Buyer or its designee should they choose not to acquire the Properties.

**11. Gastos.** Cada una de las partes será

**11. Expenses.** The parties shall each bear and

9

responsable de pagar sus costas, gastos y honorarios (incluyendo de manera enunciativa pero no limitativa, honorarios de abogados y de contadores así como gastos y honorarios de consultores) incurridos por ellas en relación con la preparación, otorgamiento y consumación de esta Opción y las operaciones contempladas bajo la presente Opción, en la inteligencia de que al celebrarse el Contrato de Compraventa, el Comprador o su designatario pagará todos los gastos, derechos e impuesto que se generen con motivo de la transmisión de las Propiedades, excepción hecha del Impuesto Sobre la Renta que será con cargo al Vendedor.

| pay their own costs, expenses and fees (including, without limitation, legal counsel and accounting fees and disbursements and brokers fees) incurred by them in connection with the preparation, granting and consummation of this Option and the transactions contemplated hereunder, in the understanding that upon execution of the Purchase and Sale Agreement, the Buyer or its designee shall pay all expenses, costs and taxes derived from the transfer of the Properties, with the exception of the Income Tax which shall be paid by the Seller.

**12. Avisos y Comunicaciones.** Todos los avisos y comunicaciones requeridos bajo esta Opción deberán ser por escrito y se considerarán válidamente entregados en la fecha enviada si fueron enviados por (i) Federal Express o cualquier otro servicio de correo de un día a otro o (ii) facsímil dirigido de la siguiente forma (o cualquier otra dirección que la parte a la que se deba notificar haya designado al que envíe por aviso similar):

**12. Notices and Communications.** All notices and communications required under this Option must be in writing and shall be deemed validly given on the date posted if sent by (i) federal express or another reputable overnight courier service or (ii) facsimile addressed as follows (or any other address that the party to be notified may have designated to the sender by like notice):

AL VENDEDOR
DELPHI DELCO ELECTRONICS DE MÉXICO, S.A. de C.V.
Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99 del Parque Industrial Reynosa, en Reynosa, Tamaulipas, México
Atm: John W. Schwarm

THE SELLER:
DELPHI DELCO ELECTRONICS DE MEXICO, S.A. DE C.V.
Carretera Reynosa- Matamoros km 13.5 sin número, brecha E 99 del Parque Industrial Reynosa, en Reynosa, Tamaulipas, México

Attn: John W. Schwarm

Con copia a
Roberto Berry
Delphi Counsel Latin America
Hermanos Escobar 5756
Ciudad Juarez, Chihuahua, 32310

THE BUYER:
PLA HOLDING VI, LLC.
8 Campus Drive
Parsippany, New Jersey 07054
Telephone: 973-734-1347
Facsimile: 973-683-1789
Attn: Francisco Andragnes

AL COMPRADOR
PLA HOLDING VI, LLC.
8 Campus Drive
Parsippany, New Jersey 07054
Teléfono: 973-734-1347
Facsímile: 973-683-1789
Atm: Francisco Andragnes

With a copy to:
Enriquez, Gonzalez, Aguirre y Ochoa, S.C.
Ejercito Nacional 7695-C
Plaza del Camino
Partido Iglesias

10

Con copia a:
Enríquez, González, Aguirre y Ochoa, S.C.
Avenida Ejército Nacional 7695-C
Plaza del Camino
Partido Iglesias
32530 Cd. Juárez, Chihuahua
Teléfono: (656) 618-2351
Facsímile: (656) 618-2391
Attn: Lic. Carlos Enríquez Terrazas

Mayer, Brown Rowe & Maw LLP
190 S. LaSalle Street
Chicago, Illinois 60603
Attn: Michael T. Fishman
Teléfono: 312-701-8374
Fax: 312-706-8175

---

32530 Cd. Juárez, Chihuahua, Mexico
Phone: (656) 618-2351
Fax: (656) 618-2391
Attn: Mr. Carlos Enrique-Terrazas

Mayer, Brown Rowe & Maw LLP
190 S. LaSalle Street
Chicago, Illinois 60603
Attn: Mr. Michael T. Fishman
Telephone: 312-701-8374
Facsimile: 312-706-8175

---

**13. Solución de Controversias.** Cualquier controversia que surja entre las partes en relación con esta Opción, deberá resolverse de manera definitiva por arbitraje de conformidad con las disposiciones de la Cámara Internacional de Comercio ("ICC")", por un solo árbitro designado, de conformidad con dichas reglas. El Arbitraje deberá de llevarse a cabo en México, Distrito Federal, México, en idioma español, pero pruebas y testimonios podrían presentarse en idioma inglés. Respecto de la sustancia de la controversia, deberá resolverse por el Árbitro de conformidad con las leyes sustantivas aplicables de Tamaulipas, México. En caso de arbitraje entre las partes respecto de esta Opción, la parte que prevalezca deberá ser pagada por la parte que no prevalezca todos los costos y gastos, incluyendo de manera enunciativa pero no limitativa, los honorarios razonables de abogados y costos razonables incurridos de forma incidental a dicho litigio.

**14. Idioma.** En caso de controversia entre las versiones inglés y español de esta Opción, la versión en español prevalecerá.

**15. Integración.** Esta Opción constituye la oferta unilateral del Vendedor y sustituye y reemplaza cualquier otra oferta o extendimiento previo

---

**13. Dispute Resolution.** Any controversy arising between the parties in connection with this Option shall be resolved definitively by arbitration in accordance with the provisions of the Mexican Arbitration Center Rules (International Chamber of Commerce "ICC"), by a single arbitrator appointed in accordance with such rules. The Arbitration shall take place in Mexico City, Mexico, in the Spanish language, but evidence and testimony may be presented in English. As to the substance of the controversy such shall be resolved by the Arbitrator in accordance with substantive laws applicable Tamaulipas, Mexico. In the event of any arbitration between the parties concerning this Option, the prevailing party shall be paid by the non-prevailing party all its costs and expenses, including, without limitation, reasonable attorney's fees and reasonable costs incurred incident to such litigation.

**14. Language.** In case of controversy between the Spanish and English versions of this Option, the Spanish version shall govern and control.

**15. Entire Agreement.** This Option constitutes the Seller's unilateral offer, and substitutes and replaces all other previous offer granted by

11

| | |
|---|---|
| otorgado por el Vendedor al Comprador en relación con los fines de la presente Opción. | Buyer to Seller in connection with the purpose hereof. |
| [SIGUE PÁGINAS DE FIRMAS] | [SIGNATURE PAGE FOLLOWS] |
| Esta Opción ha sido firmada en la fecha mencionada en el preámbulo del presente en presencia de dos testigos. | This Option has been signed on the date first above written in the presence of two witnesses. |
| El Vendedor | The Seller: |
| DELPHI DELCO ELECTRONICS DE MEXICO, S.A. de C.V. | DELPHI DELCO ELECTRONICS DE MEXICO, S.A. de C.V. |
| Por: _____ 22 Dic 2004 | By: _____ 22 Dec 2004 |
| Nombre: John W Schwarm | Name: John W Schwarm |
| Cargo: Senior Finance Administrator | Title: Senior Finance Administrator |
| Aceptada por el Comprador: | Accepted by the Buyer: |
| PLA HOLDING VI, LLC. | PLA HOLDING VI, LLC. |
| Por: _____ | By: _____ |
| Nombre: | Name: |
| Cargo: | Title: |
| Testigos | Witnesses |
| Por: _____ | By: _____ |
| Nombre: _____ | Name: _____ |
| Por: _____ | By: _____ |
| Nombre: _____ | Name: _____ |
| **ANEXO "A"** | **EXHIBIT "A"** |
| **TERMINOS DEL CONTRATO DE** | |

| ARRENDAMIENTO | TERMS OF THE LEASE AGREEMENT |
|---|---|
| **PLANTA: Edificios 1 y 2 y Edificios 3 y 4.**<br>**SUPERFICIE ARRENDADA:**<br>Edificios 1 y 2 327,168 pies cuadrados<br>Edificios 3 y 4 321,444 pies cuadrados<br>**PRECIO:** $0.32 USD por pie cuadrado al mes, ajustable conforme al CPI<br>**PLAZO:** Edificios 1 y 2 el término del arrendamiento vencerá el 31 de Diciembre de 2008. Edificios 3 y 4 vencerá el 30 de junio de 2005.<br>**NATURALEZA** Triple Net (Cobertura de Seguros, Mantenimiento y Predial a cargo de la Arrendataria) | **PLANT Buildings 1 and 2 and Buildings 3 and 4**<br>**SURFACE:**<br>Building 1 & 2: 327,168 sq. Ft.<br>Building 3 & 4 : 321,444 sq. Ft.<br>**PRICE** $0.32 USD/sq.ft./ month adjusted annually by US CPI<br>**TERM** Building 1 & 2 expires on December 31st., 2008. Building 3 & 4 expires June 30, 2005<br><br>**NATURE : Triple Net** |
| <u>**ANEXO "B"**</u><br><br>**CASOS DE TERMINACIÓN,<br>MODIFICACIÓN O RENEGOCIACIÓN DE<br>ACUERDOS QUE AFECTAN AL<br>VENDEDOR Y/O A LAS PROPIEDADES** | <u>**EXHIBIT "B"**</u><br><br>**CASES OF TERMINATION,<br>MODIFICATION OR RENEGOTIATION<br>OF AGREEMENTS AFFECTING THE<br>SELLER AND/OR THE PROPERTIES** |
| <u>**ANEXO "C"**</u><br><br>**LITIGIOS QUE AFECTAN A AL<br>VENDEDOR Y/O A LAS PROPIEDADES** | <u>**EXHIBIT "C"**</u><br><br>**LITIGATIONS AFFECTING THE<br>SELLER AND/OR THE PROPERTIES** |

13