Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                       :

In re:                                         :      Chapter 11
                                                   :
  Delphi Corporation, et al.,          :      Case No.  05-44481 (RDD)
                                                   :      (Jointly Administered)
                      Debtors.          :
                                                   :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY
       HOLDERS TO THE MOTION OF CERTAIN FORMER EMPLOYEES OF
       DEBTOR FOR LIMITED RELIEF FROM THE AUTOMATIC STAY, TO
       THE EXTENT APPLICABLE, TO PAY AND/OR ADVANCE DEFENSE
       <u>COSTS UNDER THE DEBTORS' INSURANCE POLICIES</u>

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

       The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi Corporation ("Delphi") and the other above-captioned debtors (collectively, the "Debtors") hereby files this objection (the "Objection") to the motion (the "Motion") of former Delphi employees J.T. Battenburg III ("Battenburg"), Alan S. Dawes ("Dawes"), Paul Free ("Free"), John Blahnik ("Blahnik"), Milan Belans ("Belans"), Catherine Rozanski ("Rozanski"), Pamela Geller ("Geller"), Peter Janak ("Janak"), and Laura Marion ("Marion") (collectively, the "Movants") for relief from the automatic stay, to the extent applicable, to permit National Union Fire Insurance Co. ("National Union") to advance or pay under certain insurance policies defense

costs being incurred by the Movants in pending and future lawsuits, proceedings, and investigations, subject to a reservation of rights by National Union and the execution of a written undertaking by each of the Movants. In support of the Objection, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Delphi is embroiled in (i) an investigation by the Securities and Exchange Commission ("SEC") related to Delphi's accounting practices and adequacy of financial disclosures that has resulted in the SEC naming Delphi and each of the Movants other than Janak and Geller as defendants,[1] (ii) an ongoing investigation by the Department of Justice relating to similar issues, and (iii) a multi-district litigation alleging securities fraud in which Delphi and Dawes, Blahnik, and Free are named defendants. The Movants are now seeking, pursuant to the Motion, to deplete or otherwise diminish the proceeds of certain insurance policies by using those funds to pay the defense costs incurred in connection with the investigations and litigation. The Movants' claims for payment of their legal fees and expenses, however, are prepetition claims that are subject to disallowance under the Bankruptcy Code (based on fraud, unclean hands, and other defenses) and it would be inappropriate to permit the Movants to receive any payment on account of such claims unless and until such claims are ultimately allowed. Moreover, contrary to the Movants' assertions, the insurance proceeds are property of Delphi's estate and no disbursement of those proceeds may properly be made until such time as all claims that could potentially be satisfied pursuant to the policies are ascertained. Thus, it is premature to permit the Movants to receive payments at this time, and prior to a determination of: (i) the

---

[1] Battenberg, Dawes, Free, Blahnik, Belans, and Rozanski were each charged with participating in or aiding and abetting fraud committed by Delphi. Marion was charged with aiding and abetting certain financial disclosure violations committed by Delphi.

2

scope of the insurance policies, (ii) the total amount of the available insurance proceeds, (iii) the claims pending against the Debtors that may be satisfied out of those proceeds, and (iv) the total amount of such claims. Finally, certain Movants are barred from the relief requested under the doctrine of unclean hands.

## BACKGROUND

2. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On October 8, 2005, as part of their first-day pleadings, the Debtors filed a Motion For Order Under 11 U.S.C. Sections 105(a), 363, 507, 1107, and 1108 (I) Authorizing Debtors to Pay Prepetition Wages and Salaries To Employees and Independent Contractors, (II) Authorizing Debtors to Pay Prepetition Benefits and Continue Maintenance of Human Capital Benefit Programs in the Ordinary Course, and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Human Capital Obligations (the "Human Capital Obligations Motion").

4. On October 13, 2005, the Court entered an order granting the Human Capital Obligations Motion (the "Human Capital Obligations Order").

5. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Creditors' Committee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

6. Upon information and belief, on or about February 13, 2006, in an exercise of its discretion under the Human Capital Obligations Order, the Compensation Committee of Delphi's board of directors (the "Compensation Committee") denied the advancement of legal expenses to each of the Movants except Battenburg and Marion. Upon information and belief, on or about June 7, 2006, the Compensation Committee denied the advancement of legal expenses to Battenburg and Marion.

7. On March 30, 2006, the Court entered an order directing the U.S. Trustee to appoint a committee of equity security holders pursuant to section 1102 of the Bankruptcy Code, and on April 28, 2006 the U.S. Trustee appointed the Equity Committee.

8. On October 30, 2006, the SEC filed a civil complaint against Delphi and each of the Movants other than Janak and Geller. Simultaneously with the filing of the complaint, Delphi and Dawes and Marion (the "Settling Defendants") settled the charges against them. The charges against the other Movants named by the SEC are still pending (the "Non-Settling Defendants").[2]

## OBJECTION

I. The Proceeds of the Insurance Policies Are Property of the Estate and Are Not Available to the Movants

    A. *The Proceeds of the Insurance Policies Are Property of the Estate*

9. The proceeds of the insurance policies are property of the estate and

---

[2] For the avoidance of confusion, the Non-Settling Defendants are Battenburg, Free, Blahnik, Belans, and Rozanski.

4

cannot be claimed against by the Movants.  Although the Movants assert that, as former Delphi officers, directors, and/or employees, they are insureds under a directors and officers liability insurance policy (the "D&O Policy") and an employee benefit plan fiduciary liability insurance policy (the "ERISA Policy" and, together with the D&O Policy, the "Insurance Policies") that Delphi has with National Union, they are not entitled to advancement of fees and costs pursuant to the terms of the Insurance Policies during the Chapter 11 Cases.  The Insurance Policies and any proceeds thereof are property of Delphi's estate and are not available to the Movants.

10. Pursuant to the Motion, each of the Movants is seeking advancement or interim payment of defense costs related to the investigation of Delphi by the Department of Justice and the complaint filed by the SEC.  Dawes, Blahnik, and Free are also seeking payment of costs relating to various securities and ERISA lawsuits in which they, along with Delphi, are defendants.  National Union has allegedly agreed to provide interim funding to the Movants, subject to National Union's reservation of rights and the execution by each of the Movants of an undertaking to repay all monies received if it is determined that such individual is not entitled to coverage under the Insurance Policies.  See Motion at ¶ 24.

11. The Movants concede that insurance polices are routinely held to be property of the estate.  See, e.g., In re Adelphia Communications. Corp., 298 B.R. 49, 52-3 (Bankr. S.D.N.Y. 2003), citing MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 92 (2d Cir. 1988) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction.").  The Movants, however, incorrectly assert that the *proceeds* of such policies are not property of the Debtors' estates.

12. Courts have rejected arguments that directors and officers liability policies are not property of the estate because they benefit only the officers and directors and not the

5

corporation itself and have instead held that such policies "also benefit [the debtor] because the policies insure [the debtor] against indemnity claims made by officers and directors." Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Engl. Reins. Corp. (In re Minoco Group of Cos., Ltd.), 799 F.2d 517, 519 (9th Cir. 1986). The Ninth Circuit further noted that "we see no significant distinction between a liability policy that insures the debtor against claims by consumers and one that insures the debtor against claims by officers and directors. In either case, the insurance policies protect against diminution of the value of the estate." Id. As such, "liability policies meet the fundamental test of whether they are 'property of the estate' because the debtor's estate is worth more with them than without them." Id. The Minoco court also rejected the idea that liability policies are not property of the estate because they are held by a debtor for the benefit of others. See id. ("Liability policies, however, are not held in constructive trust by the insured for the benefit of potential claimants; they are held by the insured as protection against claims that may be asserted against the insured.").

    13.  In the instant case, Delphi has an interest in the proceeds of the D&O Policy because of the possibility that the various actions pending against the Movants or other covered acts or omissions by other current and former directors and officers might deplete the policy. See In re Leslie Fay Cos., 207 B.R. 764, 785 (Bankr. S.D.N.Y. 1997). Other courts have also followed the line of cases holding that the proceeds of a directors and officers liability insurance policy are property of the estate. See, e.g., In re Cybermedica, Inc., 280 B.R. 12, 17 (Bankr. D. Mass. 2002), citing In re Minoco, 799 F.2d at 519 ("This Court adopts the logic of the cases holding that D&O insurance proceeds are property of the estate. There is a fundamental test that has been used in determining whether or not property belongs to the estate and that test is whether 'the debtor's estate is worth more with them then without them.' This Court finds that

6

the D&O Policy is of benefit to the estate since the estate is worth more with it than without it because it insures the Debtor against indemnity and entity claims and is therefore part of the bankruptcy estate."); In re Sacred Heart Hospital of Norristown, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) ("an indemnification interest in proceeds is sufficient to bring those proceeds into the estate.").[3]

14. In addition, as National Union has reserved all of its rights under the Insurance Policies, it is possible that after making the requested payments to the Movants, National Union could shift the obligation to fund the Movants' defense costs to Delphi by seeking to have Delphi reimburse National Union for all payments made to the Movants. This would clearly result in the requested payments being provided directly from Delphi's estate and such a result must not be allowed.

B.  *Any Disbursement of the Proceeds of the Insurance Policies Is Premature*

15. The Movants' claims are prepetition general unsecured claims. Pursuant to the Motion, the Movants are seeking to elevate their claims to administrative priority status. However, as with all other claims in the Chapter 11 Cases, there should be no disbursement of the proceeds of the Insurance Policies until all claims that could potentially be satisfied from such proceeds are liquidated and evaluated. The Movants specify neither the amount of the claims that they are currently seeking nor the amounts they believe they will seek in the future under the Insurance Policies. In addition, the range of claims that may be asserted under the Insurance Polices includes potential claims by existing directors and officers of the Debtors and

---

[3] The Equity Committee recognizes that not all courts hold that a directors and officers liability policy is property of the estate. See e.g., In re Allied Digital Tech. Corp., 306 B.R. 505, 512 (Bankr. D. Del. 2004) ("when the indemnification policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the estate."). Here, however, the request for indemnification is neither hypothetical or speculative as, pursuant to the Motion, the Movants are essentially seeking indemnification pursuant to Delphi's directors and officers liability insurance policies.

7

other potential claimants, the amounts of which are presently unknown.

16.     It is therefore entirely possible that the Insurance Policies that are property of the estate will be reduced by certain claimants receiving distributions of the proceeds of such policies ahead of other claimants, despite there being no basis in law for such a result.  Such an outcome would be wholly anathema to the policies embodied in the Bankruptcy Code and this Court should not permit National Union to disburse any of the proceeds of the Insurance Policies until all claims that may be entitled to share in such proceeds are liquidated and evaluated.  To do otherwise may result in payments being made on account of claims that are subject to disallowance and that ultimately are disallowed to the detriment of holders of valid allowed claims.

II.     The Unclean Hands Doctrine Bars the Relief Sought by the Movants

17.     In addition to the harm Delphi will incur if the Movants are permitted to receive payment of their defense costs from National Union, the Settling Defendants' fraud and violations of the securities laws renders the relief they have requested from the Court unavailable under the "unclean hands" doctrine.  Courts apply the unclean hands doctrine "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." Balaber-Strauss v. Murphy (In re Murphy), 331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005), quoting Estate of Lennon v. Screen Creations, Ltd., 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (discussing requirements for a party to be entitled to equitable relief).  In addition, "[w]ell-accepted general principles of equity support [the] contention that a statutory violation gives a party unclean hands." Metro Motors v. Nissan Motor Corp., 339 F.3d 746, 750 (8th Cir. 2003); see also Northeast Women's Ctr., Inc. v. McMonagle, 665 F. Supp. 1147, 1158 (E.D. Pa. 1987) (holding "relief at equity is precluded" for

8

a party in violation of state law). Here, as a result of their settlements with the SEC, the Settling Defendants are unable to assert that they did not engage in conduct that is in violation of federal securities laws.[4] As such, the relief sought must be denied as to the Settling Defendants.

        18.      Although the unclean hands doctrine is an equitable principle and the relief sought by the Settling Defendants is arguably legal in nature as they seek advancement of funds they assert they are entitled to under the Insurance Policies, by seeking to obtain proceeds that are property of Delphi's estate, the Settling Defendants are subject to the Court's equity jurisdiction. See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 231 (2d Cir. 2002) ("Creditors subject themselves to the bankruptcy court's equity jurisdiction by submitting a claim against the bankruptcy estate."); Eastern Air Lines, Inc. v. The Ins. Co. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996) ("The bankruptcy court is essentially a court of equity. Its proceedings [are] inherently proceedings in equity."). As such, the equitable unclean hands doctrine can and should be used to deny the Settling Defendants the relief they seek. See New Valley Corp., 181 F.3d 517 (3d Cir. 1999), cert. denied, 528 U.S. 1138 (2000) (implicitly recognized that equitable defenses are applicable to legal claims in a bankruptcy proceeding); Energy Income Fund, L.P. v. Compression Solutions, Co., L.L.C. (In re Magnolia Gas Co., L.L.C.), 255 B.R. 900 (Bankr. W.D. Okla. 2000) (accepting the doctrine of unclean hands as a defense to allowance of administrative claims); In re Sanborn, Inc., 181 B.R. 683, 693 (Bankr. D. Mass. 1995) (applying the unclean hands doctrine to deny administrative claim). In addition, "the primary principle guiding application of the unclean hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters

---

[4]      Pursuant to the consent decrees entered into with the SEC, Marion and Dawes agreed "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." Dawes Consent Decree at ¶ 12; Marion Consent Decree at ¶ 11.

9

before the court for resolution. . . [and] the connection between the misconduct and the claim must be close." In re New Valley Corp., 181 F.3d at 525 (reviewing a bankruptcy court decision but finding that the facts did not warrant finding of unclean hands). Here, the connections between the misconduct and the Settling Defendants' claims that they are entitled to advancement of defense costs are intertwined as the Settling Defendants are claiming that Delphi should pay the Settling Defendants for the expenses that their misconduct has spawned.

19. In addition, in accordance with Delphi's bylaws, the Settling Defendants, along with the other Movants, are entitled to indemnification in connection with the SEC investigation only to the extent that they "acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation." Section 5.1(a) of Delphi's Amended and Restated Bylaws (the "Bylaws"). However, pursuant to the consent decrees entered into with the SEC (copies of which are attached hereto as Exhibits A and B), the Settling Defendants are unable to deny the allegations raised in the SEC's complaint and therefore cannot refute the clear fact that their conduct does not entitle them to indemnification. As such, the Settling Defendants' underlying claims against the estate must be disallowed and, as they are co-liable with Delphi, their indemnification claims must be disallowed pursuant to section 502(e)(1)(A) of the Bankruptcy Code.[5]

III. The Movants' Claims Are Contingent and Therefore Must Be Disallowed

20. As noted above, the Settling Defendants' settlements with the SEC render them unable to refute their misconduct and thus not entitled to the relief requested. With regard to the Non-Settling Defendants, Janak, and Geller, if the alleged misconduct at issue that resulted

---

[5] Section 502(e)(1)(A) provides, in relevant part, that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on . . . to the extent that– (A) such creditor's claim against the estate is disallowed." 11 U.S.C. § 502(e)(1)(A).

in Delphi and the those individuals being investigated by the SEC and Delphi and certain of the Movants being named as defendants in multiple securities and ERISA lawsuits is proven to have occurred, such actions will be shown to have been opposed to the best interests of Delphi. As such, unless and until it is established that the Movants do not have unclean hands with regard to the alleged misconduct, equity dictates that the Movants not be allowed to recover from the Debtors' estates. Moreover, because the unclean hands doctrine may also apply to the Non-Settling Defendants, Janak, and Geller depending on the outcome of the prosecution of the SEC complaint, continuing investigations, and lawsuits, the Bankruptcy Code does not permit the relief requested at this time.

21.     Section 502(e)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on . . . to the extent that– (B) such claim for reimbursement or contribution is contingent as of the time of disallowance of such claim for reimbursement or contribution." 11 U.S.C. § 502(e)(1)(B). Section 502(e)(1)(B) of the Bankruptcy Code thus serves to "prevent[] a distribution from the estate from being made on the basis of contingent claims." N.Y. City Employees Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.), 293 B.R. 308, 323 (S.D.N.Y. 2003); see also Aetna Cas. & Sur. Co. v. Ga. Tubing Corp., 93 F.3d 56, 57 (2d Cir. 1996). "Contingency in the context of a claim for contribution by a joint tortfeasor relates to both liability and payment." Id. In the instant case, the claims of the Non-Settling Defendants are contingent in that the liability of each of the Non-Settling Defendants remains to be determined. In addition, Janak and Geller remain involved in the SEC's investigation. Finally, Dawes, Blahnik, and Free are each a named defendant, along with Delphi, in the pending multi-district securities fraud litigation; therefore their claims are also contingent pending the resolution of that

action. As such, the costs incurred by the Movants associated with the inquiries into the misconduct and the litigations may not be allowed at this point in time.

        22.    The disallowance of the contingent claims of the Non-Settling Defendants and Janak and Geller furthers Congressional policy behind the enactment of section 502(e)(1)(B) of the Bankruptcy Code as "part of the purpose of this section is administrative, to permit 'distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit.'" In re Drexel Burnham Lambert Group, 148 B.R. 982, 986 (Bankr. S.D.N.Y. 1992), citing, In re Wedtech Corp, 87 Bankr. 279, 290 (Bankr. S.D.N.Y. 1988). Such treatment under section 502(e)(1)(B) of the Bankruptcy Code is permissible, even though direct contingent claims are not subject to mandatory disallowance as the disallowance of claims for indemnity improves a debtor's prospects for reorganization. See Sorensen v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert), 146 B.R. 92, 98 (S.D.N.Y. 1992).

        23.    Based on the foregoing it is clear that, in accordance with section 502(e)(1) of the Bankruptcy Code, the claims of the Non-Settling Defendants and Janak and Geller must be disallowed at this time because of their contingent nature.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

24. The Movants are not entitled to the relief requested in the Motion because (i) the Insurance Policies are property of the estate and any disbursement of the proceeds of the Insurance Policies would be premature at this time, (ii) the doctrine of unclean hands bars the relief requested, and (iii) the claims are contingent and must be disallowed under section 502(e)(1) of the Bankruptcy Code. Therefore, and for the foregoing reasons, the Equity Committee respectfully requests that the Motion be denied.

Dated: New York, New York
November 22, 2006

                        FRIED, FRANK, HARRIS, SHRIVER
                           & JACOBSON LLP

                        By:  /s/ Bonnie Steingart
                           Bonnie Steingart (BS-8004)
                           Debra M. Torres (DT-9093)

                        One New York Plaza
                        New York, New York 10004
                        Telephone: 212.859.8000
                        Facsimile: 212.859.4000

                        *Counsel for the Official Committee of Equity Security Holders*

568580