Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
  Delphi Corporation, et al.,                           :    Case No.  05-44481 (RDD)
                                                        :    (Jointly Administered)
                              Debtors.                  :
                                                        :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS TO THE MOTION OF CREDITORS/INTERESTED PARTIES
JOHN BLAHNIK, PAUL FREE, MILAN BELANS, LAURA MARION,
PETER JANAK, AND CATHY ROZANSKI TO MODIFY OCTOBER 13,
2005, ORDER, AND TO COMPEL DELPHI CORPORATION TO
ADVANCE LEGAL FEES AND COSTS

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi

Corporation ("Delphi") and the other above-captioned debtors (collectively, the "Debtors")

hereby files this objection (the "Objection") to the motion (the "Motion") of creditors/interested

parties John Blahnik ("Blahnik"), Paul Free ("Free"), Milan Belans ("Belans"), Laura Marion

("Marion"), Peter Janak ("Janak"), and Cathy Rozanski (collectively, the "Movants") to modify

the Court's October 13, 2005 Order, and to compel Delphi, in compliance with its bylaws, to

advance legal fees and costs to Movants.  In support of the Objection, the Equity Committee

respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Delphi is embroiled in (i) an investigation by the Securities and Exchange

Commission ("SEC") related to Delphi's accounting practices and adequacy of financial

disclosures that has thus far resulted in the SEC naming Delphi and each of the Movants other

than Janak as defendants,[1] (ii) an ongoing investigation by the Department of Justice relating to

similar issues, and (iii) a multi-district litigation alleging securities fraud in which Delphi and

Blahnik and Free are named defendants.  Pursuant to the Motion, the Movants are now

attempting to harm the Debtors, their creditors, equity security holders, and their estates by

seeking to have the Debtors expend their scarce resources to pay the costs incurred by the

Movants in connection with the investigations and litigation.  However, at the present time, the

Movants' claims must be disallowed under the Bankruptcy Code (as defined below) and it would

be inappropriate to permit the Movants to receive any payment on account of such claims unless

and until such claims are ultimately allowed.  In addition, Marion is barred from the relief she is

requesting under the doctrine of unclean hands.

2.      Specifically, the Movants seek to modify the Human Capital Obligations

Order (as defined below) and to compel Delphi to advance their legal costs.  Pursuant to the

Human Capital Obligations Order, the Debtors were authorized to continue their *prepetition*

indemnification policy with respect to the Movants, among others, subject to an aggregate cap of

$5 million and subject to approval by the Compensation Committee of Delphi's board of

---

[1]      Free, Blahnik, Belans, and Rozanski were each charged with participating in or aiding and abetting fraud
committed by Delphi.  Marion was charged with aiding and abetting certain financial disclosure violations
committed by Delphi.

directors (the "Compensation Committee").  Under the guise of the Human Capital Obligations

Order not being final with respect to each of the Movants because the Movants allegedly did not

receive proper notice, the Movants now seek to challenge a final order of the Court and to

compel Delphi to advance their legal costs and fees.  The Movants are seeking this relief more

than eight months after they became aware that the Compensation Committee determined to

cease advancement of their legal costs and fees.[2]  Even if the Movants were able to overcome the

fact that they had, at the very least, constructive notice of the Human Capital Obligations Order

in February 2006, their claims are subject to mandatory disallowance under the Bankruptcy

Code.  In addition, the very misconduct that forms the basis of Marion's claim bars the relief

requested and precludes the Court from requiring the Debtors to pay her prepetition claim.

3.       The Equity Committee has reviewed a draft of the Debtors' objection to

the Motion that the Equity Committee understands the Debtors intend to file.  The Equity

Committee agrees with and supports the Debtors' positions in their objection.

## BACKGROUND

4.       On October 8 (the "Petition Date") and 14, 2005, Delphi and certain of its

U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the

Southern District of New York.  This Court entered orders directing the joint administration of

the Debtors' chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

---

[2]       As set forth below, upon information and belief, the Compensation Committee did not deny the
advancement of expenses to Marion until June 2006.  Nevertheless, Marion neglected to file the Motion
until over four months after the Compensation Committee denied the advancement of her expenses.

5.    On October 8, 2005, as part of their first-day pleadings, the Debtors filed a

Motion For Order Under 11 U.S.C. Sections 105(a), 363, 507, 1107, and 1108 (I) Authorizing

Debtors to Pay Prepetition Wages and Salaries To Employees and Independent Contractors, (II)

Authorizing Debtors to Pay Prepetition Benefits and Continue Maintenance of Human Capital

Benefit Programs in the Ordinary Course, and (III) Directing Banks to Honor Prepetition Checks

for Payment of Prepetition Human Capital Obligations (the "Human Capital Obligations

Motion").

6.    On October 13, 2005, the Court entered an order granting the Human

Capital Obligations Motion (the "Human Capital Obligations Order").

7.    On October 17, 2005, the Office of the United States Trustee (the "U.S.

Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases.  No

trustee or examiner has been appointed in the Chapter 11 Cases.

8.    Upon information and belief, on or about February 13, 2006, in an

exercise of its discretion under the Human Capital Obligations Order, the Compensation

Committee denied the advancement of legal expenses to each of the Movants except Marion.

Upon information and belief, on or about June 7, 2006, the Compensation Committee denied the

advancement of legal expenses to Marion.

9.    On March 30, 2006, the Court entered an order directing the U.S. Trustee

to appoint a committee of equity security holders pursuant to section 1102 of the Bankruptcy

Code, and on April 28, 2006, the U.S. Trustee appointed the Equity Committee.

10.    On October 30, 2006, the SEC filed a civil complaint against Delphi and

each of the Movants other than Janak.  Simultaneously with the filing of the complaint, Delphi

and Marion settled the charges against them.  The charges against the other Movants named by

the SEC are still pending (the "Non-Settling Defendants").[3]

## **OBJECTION**

I.  <u>The Debtors Are Neither Required nor Permitted to Make Payments to the Movants on
Account of Prepetition Obligations</u>

      11.     Contrary to their assertions, the Movants are not entitled to

indemnification pursuant to section 5.1(a) of Delphi's Amended and Restated Bylaws (the

"Bylaws").  As of the Petition Date, the automatic stay came into effect and Delphi had no

obligation to continue its prepetition indemnification practices.  By contending that the Human

Capital Obligations Order made the advancement of their defense costs discretionary, the

Movants are overlooking the fact that, because any obligation of the Debtors to indemnify them

arises from services provided to Delphi prior to it seeking bankruptcy protection, as of the

Petition Date the Movants' rights to indemnification, if any, became prepetition claims against

the Debtors that can only be satisfied pursuant to a chapter 11 plan.  <u>See</u>, <u>e.g.</u>, <u>In re Adelphia</u>

<u>Communications Corp.</u>, 302 B.R. 439, 444 (Bankr. S.D.N.Y. 2003) ("Here, as in many (if not

most) chapter 11 cases, claims by officers or directors for indemnification, for which the debtors

might then seek reimbursement from their insurers, would be pre-petition claims. . . .  None of

the Debtors could make payments on account of such pre-petition claims except under a chapter

11 plan."); <u>In re Baldwin-United Corp.</u>, 43 B.R. 443, 456 (S.D. Ohio 1984) ("We therefore

conclude that § 503(b)(1)(A) does not permit the debtors to advance attorney fees to their former

officers and directors in order that they might defend themselves against allegations of

misconduct during their tenure on the boards.  We do not decide, since the question is not before

---

[3]     For the avoidance of confusion, the Non-Settling Defendants include all of the Movants other than Janak
and Marion.

us, whether, in the event that the preconditions to indemnification as set forth in the corporate

bylaws are met, the former officers and directors would be entitled to administrative expense

treatment after judgment.  However, it seems even less likely that such payments would assist in

'preserving the estate' after the individuals' liability has been determined one way or another

than at the present time.  While this unmistakably rings of 'Catch 22,' we can justify no other

result within the framework of the Bankruptcy Code.").

       12.      Essentially, the Movants are seeking to have their claims against the

Debtors afforded administrative expense status in the Chapter 11 Cases.  This Court should

refuse to grant priority to the Movants in their requests for payments.  In <u>In re Amfesco Indus.,</u>

<u>Inc.</u>, 81 B.R. 777 (Bankr. S.D.N.Y. 1988), the court denied an administrative expense application

by current and former directors to have the debtors pay legal expenses incurred in connection

with threatened litigation against the individuals in their capacities as directors.  The court noted

that the applicants in that case sought administrative priority

> for post-petition legal fees necessary to defend allegations asserted against them
> as officers and directors of the Debtors, not for legal fees incurred in defense of
> the Debtors. . . .  All of the operative facts, legal relationships, and conduct of the
> Applicants upon which is based the threatened litigation occurred pre-petition.
> The indemnification agreement entered into between the Applicants and the
> Debtors occurred pre-petition.  Any duty of the Debtors to indemnify the
> Applicants arises from services provided to the pre-petition Corporation not for
> services rendered post-petition to the Debtors-in-Possession.  As such, the
> Applicants' legal fees claim arises from their pre-petition services rather than any
> post-petition services.

<u>Id</u>. at 785 (citations omitted).

       13.      While denying the Movants the status of administrative expense claims by

for indemnification may arguably place the Movants under significant hardship, equitable

considerations mandate denial of their claims.  <u>See</u> <u>Amfesco</u>, 81 B.R. at 785 ("the basic problem

here is that the officers and directors have served in reliance on indemnification, and to have

6

them now personally held liable for costs and judgments against them for acts done in their

corporate capacities, and giving them only dubious general unsecured claims against their now-

bankrupt employer corporations appears 'unfair.'  However, their plight is neither better nor

worse than that of thousands of other general creditors who rendered services or supplied goods

in reliance upon the expectation of payment.") (internal citation omitted).  Indeed, in Baldwin-

United, the court's denial of the administrative claim was based partly on the fact that the

directors' alleged misconduct involved a breach of the duty of care.  See Baldwin-United, 43

B.R. at 457, citing In re THC Financial Corporation, 446 F. Supp. 1329, 1332 (D. Haw. 1977).

("It must also be noted in the context of the equities here that the actions against the directors

assert that they breached their duty of care with respect to the debtors.  While the directors and

debtors are likely persuaded that the lawsuits are meritless, 'it would be simply intolerable for a

bankrupt corporation's estate to be responsible for preadjudication [*sic*] defense costs when it

may be possible that allegations of misconduct are in fact true.'").

14.    Recognizing that the Bankruptcy Code precludes the payments the

Movants are seeking, the Debtors nevertheless sought and received authority from the Court

pursuant to the Human Capital Obligations Motion to continue, among other things, their

prepetition indemnification practices, albeit subject to certain conditions.  Delphi's decision to

discontinue advancement of the Movants' indemnification costs therefore constitutes an

appropriate act of discretion under the Human Capital Obligations Order and cannot be deemed a

breach of Delphi's indemnification obligations under the Bylaws because, as of the Petition

Date, Delphi's prepetition indemnification obligations were superseded by the Bankruptcy Code

and the Human Capital Obligations Order.  Granting the Movants the relief requested would

prematurely give the Movants allowed administrative expense claims.  Such a result cannot be

permitted.

II.    The Unclean Hands Doctrine Bars the Relief Sought by Marion

15.    As set forth in the SEC complaint, Marion committed violations of the securities laws that have caused her to incur legal defense costs for actions for which she is not entitled to indemnification or reimbursement under the Bylaws or otherwise.  In addition, her actions preclude her from seeking relief from the Court because of the "unclean hands" doctrine and, as such, this Court should not grant Marion the relief she seeks.

16.    Courts apply the unclean hands doctrine "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." Balaber-Strauss v. Murphy (In re Murphy), 331 B.R. 107, 135 (Bankr. S.D.N.Y. 2005), quoting Estate of Lennon v. Screen Creations, Ltd., 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (discussing requirements for a party to be entitled to equitable relief).  In addition, "[w]ell-accepted general principles of equity support [the] contention that a statutory violation gives a party unclean hands." Metro Motors v. Nissan Motor Corp., 339 F.3d 746, 750 (8th Cir. 2003); see also Northeast Women's Ctr., Inc. v. McMonagle, 665 F. Supp. 1147, 1158 (E.D. Pa. 1987) (holding "relief at equity is precluded" for a party in violation of state law).  Here, as a result of her settlement with the SEC, Marion is unable to assert that she is not liable for misconduct that involves deceit and bad faith, and that is in violation of federal securities laws.  As such, the relief she is seeking must be denied.

17.    Further, although the unclean hands doctrine is an equitable principle and the relief sought by Marion is arguably legal in nature, as she seeks advancement of funds she asserts she is entitled to under Delphi's Bylaws, by seeking payment from the Debtors' estates Marion is subject to the Court's equity jurisdiction.  See Luan Inv. S.E. v. Franklin 145 Corp. (In

8

re Petrie Retail, Inc.), 304 F.3d 223, 231 (2d Cir. 2002) ("Creditors subject themselves to the

bankruptcy court's equity jurisdiction by submitting a claim against the bankruptcy estate.");

Eastern Air Lines, Inc. v. The Ins. Co. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir.

1996) ("The bankruptcy court is essentially a court of equity.  Its proceedings [are] inherently

proceedings in equity.").  As such, the equitable unclean hands doctrine can and should be used

to deny Marion the relief she seeks.  See New Valley Corp., 181 F.3d 517 (3d Cir. 1999), cert.

denied, 528 U.S. 1138 (2000) (implicitly recognized that equitable defenses are applicable to

legal claims in a bankruptcy proceeding); Energy Income Fund, L.P. v. Compression Solutions,

Co., L.L.C. (In re Magnolia Gas Co., L.L.C.), 255 B.R. 900 (Bankr. W.D. Okla. 2000) (accepting

the doctrine of unclean hands as a defense to allowance of administrative claims); In re Sanborn,

Inc., 181 B.R. 683, 693 (Bankr. D. Mass. 1995) (applying the unclean hands doctrine to deny

administrative claim).  In addition, "the primary principle guiding application of the unclean

hands doctrine is that the alleged inequitable conduct must be connected, i.e., have a relationship,

to the matters before the court for resolution. . . [and] the connection between the misconduct

and the claim must be close."  In re New Valley Corp., 181 F.3d at 525 (reviewing a bankruptcy

court decision but finding that the facts did not warrant finding of unclean hands).  Here, the

connections between the misconduct and Marion's claim that she is entitled to advancement of

defense costs are intertwined as she is claiming that Delphi should pay for her to defend herself

against the charges that her misconduct has spawned.

18.    In addition, in accordance with the Bylaws, Marion, along with the other

Movants, is entitled to indemnification in connection with the SEC investigation only to the

extent that she "acted in good faith and in a manner such person reasonably believed to be in or

not opposed to the best interests of the Corporation."  Bylaws, § 5.1(a).  However, as noted

above, pursuant to the Consent Decree Marion is unable to deny the allegations raised in the

SEC's complaint and therefore cannot refute the clear fact that her conduct does not entitle her to

indemnification.  As such, Marion's underlying claim against the estate must be disallowed and

her indemnification claim must be disallowed pursuant to section 502(e)(1)(A) of the Bankruptcy

Code.[4]

III.    The Movants' Claims Are Contingent and Therefore Must Be Disallowed

19.    With respect to the Movants other than Marion, even if the automatic stay

did not render the Movants unable to receive indemnification payments from Delphi, their rights

to indemnification are also governed by section 5.1(a) of the Bylaws and they are entitled to

indemnification only if they "acted in good faith and in a manner such person reasonably

believed to be in or not opposed to the best interests of the Corporation."  Bylaws at § 5.1(a).  As

noted above, Marion's settlement with the SEC renders her unable to deny the allegations set

forth in the SEC's complaint and thus not entitled to the relief requested.  With regard to the

other Movants, if the alleged misconduct at issue that resulted in Delphi and the other Movants

being investigated by the SEC and Delphi and certain of the Movants being named as defendants

in multiple securities and ERISA lawsuits is proven to have occurred, such actions will be shown

to have been opposed to the best interests of Delphi.  As such, unless and until it is established

that the Movants do not have unclean hands with regard to the alleged misconduct, equity

dictates that the Movants not be allowed to recover from the Debtors' estates.  Moreover,

because the unclean hands doctrine may also apply to the Non-Settling Defendants and Janak

depending on the outcome of the prosecution of the SEC complaint, continuing investigations,

---

[4]    Section 502(e)(1)(A) provides, in relevant part, that "the court shall disallow any claim for reimbursement
or contribution of an entity that is liable with the debtor on . . . to the extent that– (A) such creditor's claim
against the estate is disallowed."  11 U.S.C. § 502(e)(1)(A).

and lawsuits, the Bankruptcy Code does not permit the relief requested at this time.

20.    Section 502(e)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on . . . to the extent that– (B) such claim for reimbursement or contribution is contingent as of the time of disallowance of such claim for reimbursement or contribution."  11 U.S.C. § 502(e)(1)(B).  Section 502(e)(1)(B) of the Bankruptcy Code thus serves to "prevent[] a distribution from the estate from being made on the basis of contingent claims."  N.Y. City Employees Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.), 293 B.R. 308, 323 (S.D.N.Y. 2003); see also Aetna Cas. & Sur. Co. v. Ga. Tubing Corp., 93 F.3d 56, 57 (2d Cir. 1996). "Contingency in the context of a claim for contribution by a joint tortfeasor relates to both liability and payment."  Id.  In the instant case, the claims of the Non-Settling Defendants are contingent in that, while Delphi has settled with the SEC and is therefore liable for the conduct underlying the SEC's investigation, the liability, and thus co-liability, of each of the Non-Settling Defendants remains to be determined.[5]  In addition, Janak remains subject to investigation and may also be named as a defendant in a complaint by the SEC.  Finally, Blahnik and Free are each named defendants, along with Delphi, in the pending multi-district securities fraud litigation; therefore their claims are also contingent pending the resolution of that action.  As such, the costs incurred by the Movants associated with the inquiries into the misconduct and the litigations may not be allowed at this point in time.

21.    The disallowance of the contingent claims of the Non-Settling Defendants and Janak furthers Congressional policy behind the enactment of section 502(e)(1)(B) of the

---

[5]    Pursuant to the consent decree entered into with the SEC, Delphi agreed "not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis."  Consent Decree at ¶ 10.

11

Bankruptcy Code as "part of the purpose of this section is administrative, to permit 'distribution to unsecured creditors without a reserve for these types of contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit.'" In re Drexel Burnham Lambert Group, 148 B.R. 982, 986 (Bankr. S.D.N.Y. 1992), citing, In re Wedtech Corp, 87 Bankr. 279, 290 (Bankr. S.D.N.Y. 1988).  Such treatment under section 502(e)(1)(B) of the Bankruptcy Code is permissible, even though direct contingent claims are not subject to mandatory disallowance as the disallowance of claims for indemnity improves a debtor's prospects for reorganization.  See Sorensen v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert), 146 B.R. 92, 98 (S.D.N.Y. 1992).

22.    Based on the foregoing it is clear that, in accordance with section 502(e)(1) of the Bankruptcy Code, the claims of the Non-Settling Defendants and Janak must be disallowed at this time because of their contingent nature.

IV.    Denial of the Motion Would Not Violate the Movants' Constitutional Rights

23.    The Movants assert that Delphi's exercise of it is discretion to deny them advancement impermissibly violates their constitutional rights.  In that regard, the Movants rely on United States v. Stein, 435 F. Supp. 2d 330, 364-5 (S.D.N.Y. 2006), in which the United States District Court for the Southern District of New York (the "District Court") held that a provision of the Department of Justice's guidelines that requires all federal prosecutors "to consider the advancing of legal fees by business entities, except such advances as are required by law, as at least possibly indicative of an attempt to protect culpable employees and as a factor weighing in favor of indictment of [a corporate entity]" violated the Due Process Clause of the Fifth Amendment.  The Movants' reliance on Stein, however, is misplaced as the concerns that prompted the District Court's holding are not present in the instant case.

12

24.    In <u>Stein</u>, KPMG LLC ("KPMG") refused to advance defense costs to current and former partners and employees in accordance with its longstanding practice as a result of government pressure.  <u>See id</u>. at 336.  Specifically, KPMG acquiesced to pressure from the government and refused to advance defense costs after the government did not provide KPMG comfort that payment of such costs would not be held against KPMG when the government determined whether to indict the firm.  <u>See id</u>. at 353-53.  Here, however, there is no allegation of any overt or implied threat by the government that resulted in Delphi's decision to discontinue advancing the Movants' defense costs.  In fact, the Debtors specifically sought authority to advance, and had been advancing, such costs earlier in the Chapter 11 Cases. Absent any evidence or even allegation that the Compensation Committee's decisions to discontinue advancing payment for defense costs to the Movants was the result of governmental pressure, the Compensation Committee's determination to stop expending Delphi's scare resources on the Movants' defenses costs was a justified action within Delphi's discretion.  Such a decision is a rational exercise of Delphi's business judgment and is in furtherance of Delphi's fiduciary duties to its constituents and should not be overruled by the Court.  To the extent the Movants have any claims against Delphi's estate for indemnification, they were required to file proofs of claim for such alleged entitlements and should seek compensation through the bankruptcy claims process and after the pending SEC and other securities actions and investigations are resolved.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

25.    The Movants are not entitled to the relief requested in the Motion because

(i) their claims, if allowed, would be prepetition obligations of the Debtors, (ii) the unclean hands

doctrine bars the relief sought by Marion, (iii) the Movants' claims are contingent and cannot be

allowed at this time and (iv) denial of the relief requested would not violate their constitutional

rights.  Therefore, and for the foregoing reasons, the Equity Committee respectfully requests that

the Motion be denied.

Dated: New York, New York
        November 22, 2006

                                        FRIED, FRANK, HARRIS, SHRIVER
                                           & JACOBSON LLP

                                        By:   /s/  Bonnie Steingart
                                             Bonnie Steingart (BS-8004)
                                             Debra M. Torres (DT-9093)

                                        One New York Plaza
                                        New York, New York 10004
                                        Telephone:  212.859.8000
                                        Facsimile:  212.859.4000

                                        *Counsel for the Official Committee of Equity
                                        Security Holders*

568551

14