**Hearing Date: November 30, 2006**
**Hearing Time: 10:00 a.m. Prevailing Eastern Time**

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE AND LIMITED OBJECTION TO MOTION OF CERTAIN
FORMER EMPLOYEES OF DEBTOR FOR LIMITED RELIEF FROM
AUTOMATIC STAY, TO EXTENT APPLICABLE, TO PAY AND/OR
ADVANCE DEFENSE COSTS UNDER DEBTORS' INSURANCE POLICIES

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), respectfully

submit this Response and Limited Objection (the "Response") to the Motion Of Certain Former

Employees Of Debtor For Limited Relief From The Automatic Stay, To The Extent Applicable,

To Pay And/Or Advance Defense Costs Under The Debtors' Insurance Policies (the "Insurance

Motion") and state as follows: [1]

Preliminary Statement

1.      This Insurance Motion arises following decisions by the Compensation

Committee of the Debtors' Board of Directors, made pursuant to the Human Capital Obligations

Order entered by this Court on October 13, 2005, to discontinue advancement of defense costs

and fees to the Movants.  In making these decisions, the Compensation Committee made no

determination whatsoever regarding the Movants' rights to advancement or indemnification

under Delphi's bylaws and Delaware Law.  The Movants' advancement and indemnification-

related claims are prepetition claims subject to resolution through the claims process in these

Chapter 11 cases.  Absent the specific authority granted by the Court in the Human Capital

Obligations Order, the Debtors would not have been permitted to make <u>any</u> advancements prior

to a confirmed plan of reorganization.  That said, the Debtors' decisions to discontinue

advancement to the Movants here were not undertaken lightly.  The Debtors appreciate the

---

[1]      Concurrently with the filing of this Response, the Debtors filed a response in opposition
to the Motion of Creditors/Interested Parties John Blahnik, Paul Free, Milan Belans,
Laura Marion, Peter Janak, And Cathy Rozanski To Modify October 13, 2005, Order,
And To Compel Delphi Corporation To Advance Legal Fees And Costs (the
"Advancement Motion" or "Adv. Mtn.") (Docket No. 5354).  Matters addressed by the
Debtors in their Response to the Advancement Motion concerning the Debtors'
obligations, if any, under the indemnification and advancement provisions of Delphi's
bylaws are hereby incorporated by reference into this Response.

2

important function served by indemnification-related provisions, as well as by director and

officer liability policies, in protecting (and attracting) key employees of a corporation.

2.       Nonetheless, the Movants are not the only persons with a stake in the proceeds of

the two liability insurance policies at issue.  Indeed, as explained fully herein, the Debtors have a

potential interest in the proceeds of these insurance policies.  Thus, the Debtors themselves, as

well as current and former employees <u>other</u> than the Movants, may have direct and competing

claims for the insurance proceeds sought by the Movants.

3.       In these circumstances, the Debtors believe that the Court should craft an

equitable, provisional remedy that will provide the Movants with immediate, interim relief, while

at the same time protecting the insurance proceeds available for named defendants and insured

persons other than the Movants.  The Debtors do not object to the Insurance Motion to the extent

that: (i) reasonable limitations and oversight can be ensured with respect to any advancement by

the Insurer of defense costs to the Movants under the Policies; and (ii) the Debtors, the Insurer,

and the Movants reserve all rights to contest the impact on the parties' respective rights (whether

under the terms of the policies or otherwise) of any advancements that the Insurer may make to

the Movants.

Background

A.       <u>The Chapter 11 Filings.</u>

4.       On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

3

5.      No trustee or examiner has been appointed in the Debtors' cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

6.      This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under

28 U.S.C. § 157(b).

B.      Events And Litigation Leading Up To The Movants' Current Claims For
        Advancement.

7.      In late July 2004, Delphi received a subpoena from the Securities and Exchange

Commission ("SEC") requesting information about certain agreements between the Company

and one of its information technology service providers.  Shortly thereafter, Delphi received a

copy of the SEC's formal order of investigation related to those same and other transactions.  In

response, the Company commenced an independent investigation of matters underlying the

SEC's inquiries, and in early October 2004, the Audit Committee of Delphi's Board of Directors

assumed oversight responsibility for the Company's internal review.

8.      In connection with and as a result of the Audit Committee's ongoing investigation,

Delphi announced on October 18, 2004 that its independent auditors had not yet completed their

review of the Company's consolidated financial statements for the period ending September 30,

2004, and that Delphi would not file its Form 10-Q for the third quarter until such time as its

auditors and the Audit Committee had completed their respective reviews.  In early December

2004, Delphi reported the preliminary results of the Audit Committee's investigation.  On March

4, 2005, Delphi announced the Audit Committee's position that the Company's financial

statements for 2001 and certain subsequent periods should no longer be relied upon and that a

4

restatement would be required.  On June 30, 2005, the Company issued its financial restatements for the affected periods.

9.      In March 2005, shortly after the Company announced its intention to restate certain prior period financial statements, a number of claimants filed putative securities class actions in various United States District Courts.  The suits alleged that Delphi, certain current and former directors and officers of the Company, and others violated the federal securities laws in connection with matters related to the Company's pending restatement.  In December 2005, these individual actions were consolidated in the United States District Court for the Eastern District of Michigan and assigned to the Honorable Gerald E. Rosen for coordination or consolidated pretrial proceedings under the caption In re Delphi Corp. Securities, Derivative and "ERISA" Litigation, No. 05-MD-01725 (GER) (E.D. Mich.) (the "Multidistrict Litigation").

10.      Named as defendants in the consolidated securities class action complaint filed in the Multidistrict Litigation were Movants Battenberg, Dawes, Free, and Blahnik.  Other named defendants include:

   a.      Delphi;

   b.      Former Vice Chairman and Chief Technology Officer Donald Runkle, and former acting Chief Financial Officer and Chief Accounting Officer and current Chief Restructuring Officer John Sheehan;

   c.      Former and current Delphi Audit Committee members Robert Brust, Oscar De Paula Bernardes Neto, Cynthia Niekamp, John Opie, and Thomas Wyman; and

      d.     Former and current Delphi Board of Directors members Virgis Colbert, David Farr, Dr. Bernd Gottschalk, Shoichiro Irimajiri, Michael Losh, Susan McLaughlin, Harry Pearce, Roger Penske, John Smith, and Patricia Sueltz.[2]

11.     In March 2005, shortly after the Company announced its intention to restate certain prior period financial statements, claimants filed the first of several putative class actions alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA").  The suits, arising from the purchase or sale of securities issued by the Company, alleged that Delphi, certain current and former directors, officers, and employees of the Company, and others violated a number of ERISA-imposed duties in connection with matters related to the Company's pending restatement.  In December 2005, these individual ERISA class actions were consolidated, along with the securities class actions, in the United States District Court for the Eastern District of Michigan under the caption referenced above.

---

[2]     It also should be noted in this regard that on November 22, 2005, the securities class action lead plaintiffs filed in this Court an opposition to the Debtors' October 13, 2005 Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket Nos. 213 and 1161, respectively).  The securities plaintiffs "identified" the following additional Delphi officers and employees whom they contend participated in, knew of, or recklessly disregarded the conduct that forms the basis of their complaint:  Rodney O'Neal, President and Chief Operating Officer; Mark Weber, Executive Vice President, Operations, Human Resource Management & Corporate Affairs; David Wohleen, President, Electrical, Electronics, and Safety Division; John Arle, Vice President and Treasurer; Rick Birch, Global Director of Production, Control and Logistics; Rajib Chakravarty, Manager, Energy and Chassis Division; William Elia, Plant Manager, Energy and Chassis Division; Guy Hatchey, President, Energy and Chassis Division; Alison Jones, Production Control and Logistics Director; Derek Kolano, Director, Corporate Audit Services; Mark Lorenz, Vice President, Operations and Logistics; Dan Renick, Director of Plant Production, Control and Logistics, Electronics Safety Division; John Rotko, Head of Indirect Materials, Mexico; Bette Walker, Vice President and Chief Information Officer.  (Lead Plaintiffs' Objection to KECP Mtn. ¶¶ 22–26 (Docket No. 1161) (Nov. 22, 2005).)

12.    Named as defendants in the consolidated ERISA class action complaint filed in

the Multidistrict Litigation were Movants Battenberg and Dawes.  Other named defendants

include:

a.    Former and current Delphi Board of Directors Executive Committee

members John Opie, Thomas Wyman, Susan McLaughlin, and Robert Brust; and

b.    All members of the employee benefit plan Investment Policy Committee

who served during the putative class period.  Although not named as defendants,

Movants Blahnik and Free are former members of the Investment Policy Committee.

13.    Delphi is described throughout the consolidated ERISA class action complaint as

the employee benefit plans' administrator, a plan fiduciary, and responsible in large measure for

the harms alleged therein.  (E.g., Consol. ERISA Class Action Compl. ¶¶ 99–104 (Docket No.

45).)  The consolidated ERISA class action complaint does not assert claims against the Debtors

at this time, however, because of the automatic stay provisions of the Bankruptcy Code.

Nevertheless, the ERISA plaintiffs have indicated that "[i]f the bankruptcy stay is modified or

lifted to permit further prosecution of this action against Delphi, . . . Plaintiffs will . . . seek to

name Delphi . . . as a defendant[] in this action. . . . [I]t is likely that, once the discovery process

begins in earnest, . . . Plaintiffs will seek leave to amend this Complaint to add new parties

and/or new claims against those parties and/or existing parties."  (Id. at vi.)

14.    In March 2005, shortly after the Company announced its intention to restate

certain prior period financial statements, a third group of claimants began to file shareholder

derivative actions on behalf of the Company, as a nominal defendant.  A total of four complaints

were filed:  two in federal court (one in the Eastern District of Michigan and the other in the

Southern District of New York) and two in Michigan state court (Oakland County Circuit Court

in Pontiac, Michigan).  These suits alleged that certain current and former directors and officers

7

of the Company breached a variety of duties owed by them to the Company in connection with matters related to its pending restatement. The federal cases were consolidated with the securities and ERISA class before Judge Rosen in the Eastern District of Michigan under the caption referenced above. Following the filing on October 8, 2005, of the Debtors' petition for chapter 11 relief, all the derivative cases have been administratively closed.

15.      Named as defendants in the shareholder derivative actions consolidated with the securities and ERISA class actions referenced above were Movants Battenberg, Dawes, Blahnik, and Free. Other named defendants include:

a.      Former and current Delphi Board of Directors members John Opie, Oscar De Paula Bernardes Neto, Virgis Colbert, Dr. Bernd Gottschalk, Shoichiro Irimajiri, Robert Brust, David Farr, Craig Naylor, Cynthia Niekamp, Roger Penske, Susan McLaughlin, Donald Runkle, and Patricia Sueltz; and

b.      Delphi President and Chief Operating Officer Rodney O'Neal, and former Chief Accounting Officer and current Chief Restructuring Officer John Sheehan.

16.      In connection with the decision to transfer and consolidate the securities and ERISA class actions, as well as the shareholder derivative actions, the Judicial Panel on Multidistrict Litigation observed:

> On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact . . . . arising from alleged misrepresentations or omissions concerning Delphi's financial condition. Whether the actions are brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of Delphi, or participants in retirement savings plans suing for violations of ERISA, all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses.

(MDL Transfer Order, Dec. 14, 2005, at 1.)

17.      On October 30, 2006, the SEC filed a civil complaint in the United States District Court for the Eastern District of Michigan, under the caption United States Securities and

8

Exchange Commission v. Delphi Corp., No. 06–CV–14891 (E.D. Mich.).  Named as defendants

in that action were Delphi, nine former Company officers and employees, and four others, all of

which or whom are alleged to have violated the federal securities laws.  By agreement and

signed consent, the charges against the Debtor and Movants Dawes, Pasricha, and Marion

provisionally were settled simultaneously with the filing of the complaint, subject to the approval

of this Court.  (Mtn. for Order Authorizing Entry into Settlement with the Securities and

Exchange Comm'n ¶¶ 15–16, 30–36 (Docket No. 5520) (Nov. 10, 2006).)

18.    The SEC is continuing to prosecute its civil case against Movants Battenberg,

Free, Blahnik, Belans, Rozanski, and Kudla.  The SEC's investigation likewise is ongoing,

notwithstanding the filing of its complaint.  (SEC Litig. Release No. 19891, Oct. 30, 2006, at 4.)

The Department of Justice, the Federal Bureau of Investigation, and other agencies also are

investigating matters related to Delphi's June 30, 2005 restatement.  (Ins. Mtn. ¶¶ 15–16.)

19.    The Debtors do not generally dispute that the Movants have incurred legal costs

in connection with the litigation and investigations referenced above.  (Ins. Mtn. ¶¶ 15–21; Adv.

Mtn. ¶¶ 2–4.)  The Debtors also confirm that until recently, they had been paying advancements

to the Movants, subject to a full reservation of rights to dispute, as necessary and appropriate, the

reasonableness of those claims, as the Bankruptcy Code, Delaware indemnification law, and the

Debtors' bylaws provide.  The Debtors subsequently halted these advancements, however,

pursuant to the authority granted them by their amended and restated bylaws and this Court's

Human Capital Obligations Order.  (Ins. Mtn. ¶¶ 3–4; Adv. Mtn. ¶¶ 6, 8–9, 13–14, 21, 33.)

C.    The Policies At Issue In The Insurance Motion

20.    The two insurance policies referenced in the Insurance Motion were issued to

Delphi Corporation, as the Named Entity or Named Sponsor, by the National Union Fire

Insurance Company of Pittsburgh, Pennsylvania. (the "Insurer").  (Ins. Mtn. ¶¶ 7–14; D&O

Policy (Ins. Mtn., Ex. A), Decl. (MDL-000001); Fiduciary Policy (Ins. Mtn., Ex. B), Decl.
(MDL-000077).)  The policies, a directors and officers liability policy (the "D&O Policy") and a
fiduciary liability policy (the "Fiduciary Policy"), are attached as Exhibits A and B, respectively,
to the Insurance Motion.

21.    The D&O Policy provides two types of coverage.  Side A coverage is intended to
cover insured losses incurred by "Insured Persons," except "when and to the extent that an
Organization has indemnified such Insured Person."  (D&O Policy (Ins. Mtn., Ex. A), cl. 1
(MDL-000005.)  Side B coverage, as amended in relevant part by Endorsement 13, provides
coverage for insured losses incurred by "an Organization arising from a Claim made against an
Insured Person . . . for any Wrongful Act of such Insured Person, but only to the extent that such
Organization has Indemnified such Insured Person."  (Id., End. 13, cl. 1 (MDL-000050); see also
id., cl. 8 (a), (d) (MDL-000052–53).)

22.    "Organization" is defined in the D&O Policy as "the Named Entity," its
subsidiaries, and, "in the event a bankruptcy shall be instituted by or against the foregoing
entities, the resulting debtor-in-possession."  (Id., cl. 2(t) (MDL-000009).)  "Insured Person," in
turn, is defined as an "Executive" or an "Employee" of the Organization, including, in relevant
part, "any past, present, and future duly elected or appointed director, officer, trustee, or
governor of a corporation," as well as "any past, present or future employee, other than an
Executive of an Organization, whether such employee is in a supervisory, co-worker or
subordinate position or otherwise."  (Id., cl. 2(g), (j), (o), (t) (MDL-000006–9).)  Subject to the
various terms and conditions of the D&O Policy, therefore, the Movants are "Insured Persons."
So, too, are the persons identified above in paragraphs 10(b) through (d); footnote 2; and
paragraphs 15(a) and (b).  The Debtors themselves, however, are not.

23.    Side A coverage of the D&O Policy does not contain a retention clause.  (Id.,
Decl., End. 6, 13 (MDL-000042, 51.)  Side B coverage does include retention for securities
claims, under which the first $10 million of liability, including defense costs, is borne by the
Company.  The D&O Policy also provides that in the event of a bankruptcy, and as a "matter of
priority to protect and benefit the Insured Persons," the insurer "shall pay first pay Loss under
Coverage[] A . . . prior to paying Loss under Coverage B."  (Id., cl. 22 (MDL-000055).) [3]

24.    The Fiduciary Policy referenced in paragraphs 9 through 11 of the Insurance
Motion provides coverage for insured losses incurred by "each and every Insured arising from a
Claim against an Insured for any actual or alleged Wrongful Act by any such Insured (or by any
employee for whom such Insured is legally responsible."  (Fiduciary Policy (Ins. Mtn., Ex. B),
cl. 1(a) (MDL-000081).)

25.    In relevant part, the term "Insured(s)" is defined in the Fiduciary Policy as "any
Natural Person Insured" and "the Sponsor Organization."  (Id., cl. 3 (MDL-000084).)  "Sponsor
Organization" means "the Named Sponsor . . . and any Subsidiary thereof; and, in the event any
bankruptcy proceeding shall be initiated by or against the Named Sponsor or any Subsidiary
thereof, the resulting debtor in possession."  (Id. (MDL-000086).)  "Natural Person Insured"
means "any past, present or future natural person director, officer, . . . or employee of a Sponsor
Organization or if applicable, of a Plan, and to all of the above in his or her capacity as a
Fiduciary, Administrator or trustee of a Plan."  (Id. (MDL-000085).)  Although the Movants do
not address this point in the Insurance Motion, Messrs. Battenberg and Dawes appear to be
"Insureds" under the Fiduciary Policy, subject to its various terms and conditions.  So, too, are

---

[3]    As noted in footnote 6, the Debtors and the Insurer currently are in disagreement about
whether the Debtors already have incurred defense costs in excess of the retention.
Although this dispute is not currently ripe, it is at least possible that the parties will move
this Court for resolution of this matter.

the persons identified or referenced above in paragraphs 12(a) and (b) and, under certain

circumstances, the Sponsor Organization.

26.       Although the D&O and Fiduciary Policies provide coverage for liability incurred

under different statutory regimes—the D&O Policy provides coverage for liability in actions

arising out of the federal securities laws, for example, while the Fiduciary Policy provides

coverage for breaches of ERISA-based fiduciary liability—claimants often characterize the same

acts or omissions as both securities violations and ERISA violations.  (See Response, supra, at

¶¶ 9, 11, 13, 17.)  Consequently, while the D&O Policy and the Fiduciary Policy each provide an

aggregate liability limit of $25 million per covered event, inclusive of defense costs, the liability

limits of the two policies are tied and jointly capped at an aggregate $25 million, inclusive of

defense costs, if the same acts or omissions form the basis of the various complaints.  (D&O

Policy (Ins. Mtn., Ex. A), Decl., cl. 5, End. 12 (MDL-000001, 12, 49) ("[T]he limit of Liability

for Loss under this policy shall be reduced by Loss incurred under the Other AIG Policy because

the Limit of Liability under the Other AIG Policy is now part of and not in addition to the Limit

of Liability of this policy as set forth in the Declarations of this policy."); Fiduciary Policy (Ins.

Mtn., Ex. B), Decl., cl. 6, End. 6 (same) (MDL-000077, 89, 105).)[4]

<u>Argument</u>

27.       The Insurance Motion assumes that the Debtors have no interest whatsoever in the

policies identified in the Insurance Motion.  This is not so.  The Movants, the Debtors, and other

current and former officers, directors, and employees share an interest in the policy proceeds.

For this reason and those set forth below, the Debtors believe that an appropriate resolution of

---

[4]       It also should be noted that there are additional excess coverage policies that provide
supplemental, stratified coverage totaling $200 million.  These policies are not implicated
in light of the amount of defense costs at issue here, however, and are mentioned only for
completeness.

the Insurance Motion would permit the Movants to pursue policy proceeds, subject to an

aggregate cap and Court oversight.

A.     Bankruptcy Creates An Estate That Consists Of All Of The Debtors' Property,
       Which The Bankruptcy Court Controls For The Benefit Of All Parties.

       28.     The commencement of a bankruptcy creates an estate that consists of "all legal or

equitable interests of the Debtor" in any property, whether tangible or intangible, "wherever

located and by whomever held."  11 U.S.C. § 541(a).

       29.     Once property is determined to belong to the Debtor's estates, it is subject to the

automatic stay provisions of the Bankruptcy Code.  This permits the Court to marshal, preserve,

and protect all of the debtor's property for the benefit of the debtor and its creditors alike.  See id.

§ 362(a)(3); In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002).  The power vested in the

Court by section 362 of the Bankruptcy Code "allow[s] the bankruptcy court to centralize all

disputes concerning property of the debtor's estate so that reorganization can proceed

efficiently."  SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (citation omitted).  The automatic

stay thus represents "one of the fundamental debtor protections provided by the bankruptcy

laws."  Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (citation

omitted); In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837 ((Bankr. S.D.N.Y. 1990)

("Automatic stay is key to the collective and preservative nature of a bankruptcy proceeding.").

       30.     To that end, the property and automatic stay provisions of the Bankruptcy Code

have been construed expansively.  See, e.g., United States v. Whiting Pools, Inc., 462 U.S. 198,

204–05 (1983); Straton v. New, 283 U.S. 318, 320–21 (1931); MacArthur Co. v. Johns-Manville

Corp., 837 F.2d 89, 91–92 (2d Cir. 1988); In re Adelphia Commc'ns Corp., 298 B.R. 49, 52–53

(S.D.N.Y. 2003).

       31.     The Bankruptcy Code also provides the Court with broad discretion to "issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

13

title." 11 U.S.C. § 105.  To effectuate the policies, priorities, and protections provided by the

Bankruptcy Code, "the Second Circuit, courts in this District, and courts in other circuits have

'construed [§ 105] liberally to enjoin suits that might impede the reorganization process.'"

Adelphia Commc'ns, 298 B.R. at 54 (quoting Johns-Manville, 837 F.2d at 93).  Thus, for

example, a bankruptcy court may employ section 105 to enjoin a claim brought against a debtor's

insurer, if the claim would have "an immediate adverse economic consequence for the debtor's

estate."  Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003) (quoted in Adelphia

Commc'ns, 298 B.R. at 54).

32.    Nevertheless, the Bankruptcy Code's automatic stay provisions can be lifted for

cause.  The Second Circuit has explained that the burden of proof on a motion to lift or modify

an automatic stay is "a shifting one."  Sonnax Indus. v. TriComponent Prods. Corp., 907 F.2d

1280, 1285 (2d Cir. 1990).

> Section 362(d)(1) requires an initial showing of cause by the movant, while
> Section 362(g) places the burden of proof on the debtor for all issues other than
> "the debtor's equity in property," 11 U.S.C. § 362(g)(1).  See 2 Collier on
> Bankruptcy ¶ 362.10, at 362–76.  If the movant fails to make an initial showing of
> cause, however, the court should deny relief without requiring any showing from
> the debtor that it is entitled to continued protection.

Id.

33.    The Court also retains the authority to impose "appropriate conditions" on any

lifting of the automatic stay.  In re Arter & Hadden, LLP, 335 B.R. 666, 674 (Bankr. S.D. Ohio

2005) (collecting cases) (cited with approval in Ins. Mtn. ¶ 29).  This includes, for example, the

entry of an order requiring that counsel for a claimant submit to the Court for review periodic

and "detailed statement[s] of the services rendered, time expended and expenses incurred."  Id.

(quoting Fed. R. Bankr. P. 2016(a)); see also Citadel Holding Co. v. Roven, 603 A.2d 818, 823–

24 (Del. 2004) ("Under . . . the [Delaware indemnification] statute . . . , the corporation's

obligation to pay expenses is subject to a reasonableness requirement. . . .").

14

B.      Whether The Proceeds Of A D&O Liability Policy Are Estate Property Is A Fact-
        Bound Question That Must Be Analyzed On A Case-By-Case Basis.

34.     Because corporations pay for and own insurance policies, and because a debtor's
corporate estate is more valuable with the policy than without, insurance <u>policies</u> generally are
considered property of the estate.  <u>Johns-Manville</u>, 837 F.2d at 92 (collecting cases).

35.     This is particularly so when the debtor itself maintains an interest in the proceeds
and when defense costs are included in (and thereby deplete) the policy's limits.  <u>See</u> <u>In re Metro.</u>
<u>Mortgage & Sec. Co., Inc.</u>, 325 B.R. 851, 855–57 (Bankr. E.D. Wash. 2005); <u>see also, e.g.</u>, <u>In re</u>
<u>Minoco Group of Cos., Inc.</u>, 799 F.2d 517 (9th Cir. 1986) ("Liability policies . . . are not held for
the benefit of potential claimants; they are held . . . as protection against claims that may be
asserted against the insured."); <u>In re Jasmine, Ltd.</u>, 258 B.R. 119, 128 (D.N.J. 2000) ("Jasmine's
duty of indemnification was established prior to its filing for bankruptcy by the Policy itself. . . .
Since Jasmine's duty of indemnification was established and not merely speculative, . . . the
proceeds are property of the estate . . . .").

36.     Nevertheless, whether the potential <u>proceeds</u> of a D&O liability policy are estate
property remains a fact-bound question that must be analyzed in light of the facts presented, as
well as the scope and language of the subject policies.  <u>See, e.g.</u>, <u>Adelphia Commc'ns</u>, 298 B.R.
at 54; <u>In re Allied Digital Tech. Corp.</u>, 306 B.R. 505, 509–12 (Bankr. D. Del. 2004).

C.      <u>The Debtors Retain An Actual Interest In The Policy Proceeds At Issue.</u>

37.     It is true that the Movants have a direct interest in the proceeds of the D&O
Policy, and that the D&O Policy does not provide any direct entity coverage for losses incurred
by Delphi.  Not surprisingly, therefore, the Movants have emphasized their direct interest in the
D&O Policy in the Insurance Motion.  This policy cannot be analyzed in isolation, however,
because the liability limits of the D&O and Fiduciary Policies are tied and jointly capped under
exactly the sort of factual scenario alleged in the consolidated securities and ERISA class

15

actions.  The plain language of the Fiduciary Policy, moreover, makes clear that the Debtors may

potentially assert a competing claim to the proceeds under the policies, when those policies are

construed in a holistic and practical manner.[5]

38.    The Fiduciary Policy provides coverage to the "the Sponsor Organization," i.e.,

the Debtors, for covered losses and defense costs.  (Fiduciary Policy (Ins. Mtn., Ex. B), cl. 3

(MDL-000084, 86).)  Moreover, the coverage provided by the D&O and Fiduciary polices is tied

and jointly capped at $25 million for all of the policies' insureds, inclusive of defense costs.

(D&O Policy (Ins. Mtn., Ex. A), Decl., cl. 5, End. 12 (MDL-000001, 12, 49); Fiduciary Policy

(Ins. Mtn.,, Ex. B), Decl., cl. 6, End. 6 (MDL-000077, 89, 105).)  Because the violations alleged

in the consolidated class actions, the derivative action, and the SEC enforcement action all

concern substantially the same acts and omissions (see, e.g., Response, supra, at ¶¶ 7, 9, 11, 13–

14, 16–17), any drawdown of proceeds under either policy, by the Movants or others, has a

dollar-for-dollar impact on potential coverage otherwise provided to the Debtors, as the Sponsor

Organization, under the Fiduciary Policy.[6]  See, e.g., Arter & Hadden, 335 B.R. at 673 ("The

[Movant] has not offered any reason why a direct suit against the Debtor is either practically or

procedurally untenable.").

---

[5]    As explained above in paragraph 13, although the consolidated ERISA class action
complaint (which was filed postpetition) does not name the Debtors as defendants, the
ERISA plaintiffs have stated that this omission is due to the automatic stay, and that they
may seek to name Delphi as a defendant if and when permitted to do so.  Thus, direct
coverage under the Fiduciary Policy may become an issue in the future.

[6]    In relevant part, the ERISA plaintiffs have alleged that Delphi is the Plan Administrator
and a de facto fiduciary for the employee benefit plans identified in the consolidated
ERISA class action.  (Consol. ERISA Class Action Compl. ¶¶ 93–94, 99–104; ERISA
Proof of Claim ¶¶ 19–21, 30, 42–49.)  Based on the allegations in the Consolidated
ERISA Class Action Complaint, "Claimants and the Class assert claims against the
Debtor in an amount which is unliquidated this time, but is in excess of $500 million."
(Proof of Claim No. 1797 (Feb. 3, 2007), ¶ 82.)

39.    The Debtors also have an indirect claim to the proceeds of both the D&O and Fiduciary Policies.  The pleadings in the consolidated securities and ERISA class actions, as well as the derivative action, make clear that many current and former officers, directors, and employees of the Debtors other than the Movants are defendants (or remain at high risk of becoming defendants) in those actions.  (Response, supra, at ¶¶ 10(b)–(d), 12(a)–(b) & n.2, 15(a)–(b).)  It should be noted in this regard not only that these others are "Insured Persons" or "Natural Persons Insured" (subject to the terms and conditions, respectively, of the D&O and Fiduciary Policies), but also that the ongoing efforts of many of these insureds are crucial to the emergence of the Debtors from bankruptcy, and thus the preservation of the Debtors' estates.  And because the Debtors have expended significant amounts in defending these other insureds in connection with the litigation referenced above, the Company has asserted on their behalf a claim to the policies' proceeds.

40.    Finally, the Debtors already have made significant advances to the Movants, as they themselves admit.  (Adv. Mtn. ¶¶ 2, 4, 7; Ins. Mtn. ¶ 4.)  The Debtors therefore will look to the proceeds of these two policies for Side B coverage for advances in excess of the $10 million retention for securities claims.  See Jasmine, 258 B.R. at 128.

41.    In sum, it simply cannot be said that the Debtors' interest in the proceeds of these two policies is formalistic, merely hypothetical, or otherwise unsubstantiated.  Compare, e.g., Adelphia Commc'ns, 298 B.R. at 53 ("Although the D&O policies reimburses [sic] each estate to the extent that the estate advances funds because of the indemnification obligations in the charter or bylaws, 'it has not been suggested that any of the Debtors has made any payments for which it would be entitled to indemnification coverage, or that any such payments are now contemplated[.]'") (citations omitted).

17

42.     Accordingly, the Debtors have a legitimate interest in the proceeds of the policies at issue here.

D.      In Light Of The Parties' Common Interest In The Policy Proceeds, The Court Should Forge An Equitable Resolution Of The Insurance Motion.

43.     The Movants acknowledge that there are "competing legitimate interests at stake here—the interest of Delphi and its creditors in preventing the depletion of assets of the bankruptcy estate, versus the interest of Movants in defending themselves from claims arising out of their employment at Delphi."  (Adv. Mtn., ¶ 35 n.5.)  And, as outlined above, insured persons other than the Movants also have legitimate, direct, and substantial competing claims to the proceeds of the policies, based on their own status as defendants in the litigation described above.

44.     Given these conflicting claims, however, as well as the current uncertainty about whether, how, to whom, and to what extent liability ultimately may be assigned, the Debtors believe that it is prudent to adopt an interim remedy that provides immediate relief to the Movants, while ensuring the protection of the Debtors' estates, for the benefit of all interested parties.

45.     The prudential reasons for offering indemnification and advancements to corporate officers, directors, and employees are well settled and beyond reasonable dispute.  See, e.g., Mooney v. Willys-Overland Motors, Inc., 204 F.2d 888, 898 (3d Cir. 1953) (qualified and capable persons should be encouraged to serve as corporate officers and directors, "secure in the knowledge that expenses incurred by them in upholding their honesty and integrity [as corporate servants] will be borne by the corporation they serve").  Even where a debtor can assert directly a claim to the protection of a D&O policy, courts are reluctant to leave corporate officers and directors entirely exposed and therefore often times find good cause for lifting the automatic stay provisions of the Bankruptcy Code.  See, e.g., Arter & Hadden, 335 B.R. at 674 ("[T]he

18

Executive and Management Committee members may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense . . . .").

46.    The Movants represent that National Union "has agreed to provide interim funding" of the Movants' advancements, pending resolution of certain disputes between the Insurer and the Debtors regarding particulars of policy coverage.  (Adv. Mtn. ¶ 26 n.3.)[7]

47.    Under the circumstances, therefore, the Debtors do not object to advancement by the Insurer of defense costs actually and reasonably incurred by the Movants, subject to the following terms and conditions, which are reflected in the Proposed Order attached hereto:

a.    any advancements by the Insurer shall not modify, amend, abridge, or compromise any term, condition, or limitation, either express or implied by operation of law, contained in the D&O Policy or the Fiduciary Policy.  All disputes between the parties about such matters, as appropriate, will be addressed at a later date;

b.    any advancements by the Insurer under the terms of the Court Order contemplated by this proposal shall not modify, amend, abridge, compromise, or deprive any interested party of any of right, protection, burden, obligation, or duty otherwise applicable or available under the Bankruptcy Code, or any other federal, state, local, or common law, statute, regulation, or ordinance.  All disputes between the parties about such matters, as appropriate, will be addressed at a later date;

---

[7]    The Debtors contend, for example, that certain investigative and defense costs were jointly incurred by the Debtors and the Movants, and therefore should be considered in satisfaction of the Debtors' Side B retention.  Conversely, the Insurer contends that Delphi is obligated to continue advancement of all costs and fees incurred by the Movants and others until the Insurer determines that Delphi's $10 million Side B retention has been satisfied and that only a fraction of the claims submitted to date by the Debtors properly may be credited against the retention limits.

19

   c.  during the pendency of these chapter 11 cases, and pursuant to the authority and discretion granted to this Court by section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(a), the Movants shall submit to this Court, the Debtors, and the Official Committee of Unsecured Creditors for review and prior approval (i) all invoices for advancements not yet paid by the Debtors and (ii) all future invoices for advancements for costs and fees claimed by the Movants to have been reasonably and actually incurred in connection with the litigation and investigations referenced above.  Such submissions shall be without prejudice to any party, including the Debtors and the Insurer, to contest or otherwise challenge any invoices for advancements; and

   d.  any advancements by the Insurer under the terms of the proposed Court Order contemplated by this proposal shall be capped at an aggregate amount of $5,000,000.

  48.  The Debtors are well aware of the important function served by insurance policies that provide exclusive coverage for directors, officers, and employees.  As a result, the Debtors have given careful and thorough consideration to the matters raised by the Movants in their Insurance Motion.  In light of the specific language of the D&O and Fiduciary Policies, the competing claims of all insured persons (including the Movants), and the Debtors' fiduciary duties with respect to estate property, the Debtors believe that the above-mentioned proposal is in the best interests of all parties, and should be granted.

<u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that this Court enter an order

permitting the Insurer to advance Movants' defense costs, subject to the terms and conditions

outlined herein and in the proposed order submitted herewith.

Dated: New York, New York
      November 22, 2006            SKADDEN, ARPS, SLATE, MEAGHER &
                              FLOM LLP

                           By: /s/ John Wm. Butler, Jr.
                              John Wm. Butler, Jr. (JB 4711)
                              Albert L. Hogan III (AH 8807)
                              John K. Lyons (JL 4951)
                              Ron E. Meisler (RM 3026)
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                         By: /s/ Kayalyn A. Marafioti
                              Kayalyn A. Marafioti (KM 9632)
                              Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York 10036
                         (212) 735-3000