SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
    In re                            :          Chapter 11
                                 :
DELPHI CORPORATION, et al.,      :          Case No. 05-44481 (RDD)
                                 :
                 Debtors.      :          (Jointly Administered)
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF JOHN D. OPIE IN SUPPORT OF DEBTORS' OBJECTION TO
MOTION OF JOHN BLAHNIK, PAUL FREE, MILAN BELANS, LAURA MARION, PETER
JANAK, AND CATHY ROZANSKI TO MODIFY OCTOBER 13, 2005 ORDER AND TO
<u>COMPEL DELPHI CORPORATION TO ADVANCE LEGAL FEES AND COSTS</u>

I, John D. Opie, declare and state as follows:

1. Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases (collectively, the "Debtors"). I submit this declaration in support of the Debtors' Objection to the Motion of Creditors/Interested Parties John Blahnik, Paul Free, Milan Belans, Laura Marion, Peter Janak, and Cathy Rozanski (together, the "Movants") to Modify October 13, 2005, Order And To Compel Delphi Corporation To Advance Legal Fees And Costs (the "Objection" and the "Advancement Motion," respectively).

2. Since 1999, I have served as an independent director and, since 2002, as Lead Independent Director on the Board of Directors of Delphi Corporation (the "Board"). I am an ex officio member of the Audit Committee, the Corporate Governance and Public Issues Committee, and the Compensation and Executive Development Committee of Delphi's Board. Prior to my association with Delphi, I worked for General Electric Company ("GE") for 39 years. During the period from 1961 until I retired from GE in 2000, I held numerous senior management positions, including Vice President of its Lexan and Specialty Plastics Divisions, President of its Lighting Business, and, from 1995 to 2000, Vice Chairman and a director of GE itself. From 2003 until I resigned earlier this year, I also served as a member of the Board of Directors of Wal-Mart Stores, Inc.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or knowledge obtained from members of Delphi management reporting to me in the course of their duties. If I were called upon to testify, I could and would testify to the facts set forth herein.

**Declaration of John D. Opie**

The Compensation Committee and Its Oversight of Advancements to Former Employees

4. From October 8, 2005 to the present, the Compensation and Executive Development Committee of Delphi's Board (the "Committee") has been comprised of the following independent, outside directors: Virgis W. Colbert, Director and former Executive Vice President, Miller Brewing Company (a Delphi director since February 10, 1999 and Committee Chairman); Craig G. Naylor, Group Vice President, E.I. du Pont de Nemours & Company (a Delphi director since February 1, 2005); and myself. In addition, Raymond J. Milchovich, Chairman, President & CEO, Foster Wheeler Inc. (a Delphi director since December 7, 2005), joined the Compensation Committee as of December 7, 2005.

5. The Compensation Committee discharges the Board's responsibilities relating to all aspects of compensation for directors, officers, and other executives, including the review, approval and administration of any benefit or incentive compensation plan of the Company and its subsidiaries. It is responsible for recommending a succession plan to the Board for the Company's CEO and its senior executives. It is also responsible for producing a compensation discussion and analysis for inclusion in the Company's Annual Report on Form 10-K or its proxy statement, as applicable. The Committee operates under a written charter, which is available for review on Delphi's Internet site (www.Delphi.com). The Committee generally meets six to eight times per year. In 2005, the Compensation Committee met nine times, and so far in 2006, the Compensation Committee has met six times.

6. The members of the Committee recognize their obligation, pursuant to the Bankruptcy Court's Order entered on October 13, 2005 granting the Debtors' first day Human Capital Obligations Motion, to determine whether to advance defense costs to former directors and employees under the indemnification and advancement provisions of Delphi's Bylaws.

**Declaration of John D. Opie**

Specifically, the Committee is aware that, based on the Bankruptcy Court's Order, its discretion is delimited as follows: (i) the advancements must relate solely to costs and expenses incurred in responding to the Securities and Exchange Commission investigation and/or defending against related securities and ERISA class actions; (ii) the advancements must not exceed a $5 million aggregate cap; (iii) the advancements must only cover expenses not otherwise reimbursable by third parties; and (iv) the Compensation Committee must make any such advancements based on a case-by-case determination.

7.    The Committee takes its oversight of advancement of defense costs to former directors and employees very seriously. In the postpetition period, the Compensation Committee has reviewed, discussed, and specifically authorized each advancement of defense costs to former employees prior to the disbursement of any such funds.

8.    All members of the Committee have received regular, detailed reports (approximately every five weeks) ("Reports") from Delphi's Legal Staff (i) reviewing the relevant parameters set by the Human Capital Objections Order (outlined in paragraph six above) and (ii) identifying, in an individualized manner, the amounts previously advanced (if any), the outstanding amounts requested, and any pertinent facts regarding the former employees at issue.

9.    At most of the Committee's meetings following the filing of these chapter 11 cases, David M. Sherbin, Delphi's Vice President and General Counsel, made a presentation focused in part on a case-by-case review of pending requests for the advancement of defense costs. At its meetings in the postpetition period, the Compensation Committee has specifically authorized, or declined to authorize, the advancement of defense costs to former employees, on a case-by-case basis.

The Committee's Decisions Regarding the Six Movants

10.  I am aware that six former employees have filed a motion challenging Delphi's decision to discontinue advancement of their defense costs: Milan Belans, John Blahnik, Paul Free, Peter Janak, Laura Marion, and Cathy Rozanski (the "Movants").  With respect to these six Movants, the Committee made determinations to stop advancing legal fees and expenses at two separate meetings: one on February 8, 2006 and the other on June 7, 2006.  The Committee did not take these decisions lightly.  To the contrary, at our meetings on February 8, 2006, and June 7, 2006, we engaged in thorough discussions before coming to a decision that we thought would inure to the best interests of the Debtors' estates and their creditors and stakeholders.

11.  Prior to the February 8, 2006 meeting of the Compensation Committee, the Committee members received a Report (dated February 7, 2006) from Delphi's Legal Staff (i) noting that no advancement to former employees had been made since October 8, 2005 and (ii) summarizing outstanding requests from ten former employees for advancement of legal expenses in connection with the SEC investigation, including requests from all six of the Movants.

12.  At our February 8, 2006 meeting, Mr. Sherbin reviewed both the parameters set forth in the Human Capital Obligations Order and the facts relevant to the Committee's decision regarding advancement to former employees, on a case-by-case basis.

13.  The members of the Committee then discussed whether advancement would be in the best interests of the Debtors' estates and their stakeholders, with particular attention to the following factors:  (i) whether the former employee resigned after the Audit Committee expressed concerns regarding the role such former employee played in the transactions that were the subject of Delphi's June 30, 2005 restatement (or if the Audit

5

**Declaration of John D. Opie**

Committee otherwise found that he or she had played a key role in these transactions); (ii) the interests of current employees involved in responding to governmental investigations and lawsuits and the potential impact on employee morale of any decision to stop further advancements; (iii) the potential views of the other creditors of the Debtors' estates with respect to advancement, in light of the fact that these former employees are unsecured creditors to the extent they have claims for indemnification; and (iv) the impact on the Debtors' and other defendants' ability to successfully defend the pending lawsuits and respond to the ongoing governmental investigations.

14.    Taking all of these considerations into account, the Committee ultimately determined during our February 8 meeting that it would not authorize advancements under the Human Capital Obligation Order to any former employees who resigned after the Audit Committee expressed concerns regarding the role such employees played in the transactions that were the subject of the Company's June 30, 2005 restatement of financial results (or if the Audit Committee otherwise found that they had played a key role in these transactions).  In making this determination, the Committee took particular heed of the findings of Delphi's Audit Committee following its internal inquiry into these transactions.  The Committee determined that it could not in good faith pay advancements to former employees whose actions the Audit Committee found were linked to the restatement and all related negative consequences.  At the same time, the Committee did not determine whether these former employees were ultimately entitled to indemnification.  If a former employee did in fact act in good faith and in a manner he or she believed to be in or not opposed to the best interests of the Corporation, then we understood that the former employee would have a right to assert an indemnification claim against the Debtors' estates.

15. Movants Belans, Blahnik, Free, Janak, and Rozanski (as well as two other former employees who had requested advancement in advance of our February 8 meeting) fell in the category of former employees who resigned after the Audit Committee expressed concerns regarding the role such employees played in the transactions that were the subject of the Company's restatement (or who were otherwise found by the Audit Committee to have played a key role in structuring such transactions). Thus, the Committee made the decision to deny advancement to these employees.

16. The next meeting of the Committee took place on April 18, 2006. The Committee did not make any determinations with respect to the Movants at that meeting.

17. The Committee made a decision to cease advancement to movant Laura Marion at its next meeting held on June 7, 2006. Prior to that meeting, the Committee received additional, detailed Reports (dated March 14, April 28, and May 18, 2006) from Delphi's Legal Staff summarizing advancements to former employees made pursuant to the Committee's prior authorization and providing updates on communications with former employees who had requested advancements. Notably, we were informed through these Reports that several of the employees about whom the Audit Committee had expressed concern (and to whom we had decided in February to cease advancements) had subsequently received Wells Notices from the SEC.

18. At the June 7, 2006 meeting, Mr. Sherbin reviewed these Reports and discussed the guidelines that the Committee had been following, pursuant to the Human Capital Obligations Order, in connection with our discretion regarding advancements of defense costs to former employees. Mr. Sherbin also reviewed facts relevant to our decision regarding advancement to former employees, on a case-by-case basis.

19.    At the June 7, 2006 meeting, the Committee members again engaged in a robust discussion of whether advancement would be in the best interests of the Debtors' estates, with particular attention to the same factors we considered during our February 8, 2006 meeting (listed in paragraph 13 above).  In light of those factors, we determined that we could not in good faith continue to pay advancements to additional former employees who had also received Wells Notices from the SEC.  The Committee ultimately determined not to authorize any further advancements under the Human Capital Obligation Order to movant Laura Marion for this reason.  In addition to Ms. Marion, the Committee also denied advancement to a former executive who had also received a Wells Notice, while authorizing advancement to four other former employees, none of whom had received a Wells Notice.

<u>No Pressure form the Government</u>

20.    I understand that the Movants have suggested in their motion that the advancement decisions listed above were made in response to pressure from the SEC.  This is not true.  I am not aware of Delphi ever having been pressured by the SEC or any other governmental entity to discontinue advancement of defense costs to anyone.  In addition, I have confirmed with counsel working on responding to the governmental investigations that Delphi never received such a request from the government.  Simply put, the Committee never discussed or responded to any request of any governmental agency in our deliberations or decision-making regarding advancements under the Human Capital Obligations Order.  To the contrary, the bases for the Committee's decisions to discontinue advancement to the Movants are the reasons I have set forth above.

**Declaration of John D. Opie**

21. I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on November 22, 2006 in Weston, Connecticut.

_____
John D. Opie