UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
     In re                    :    Chapter 11
                              :
DELPHI CORPORATION, et al.,   :    Case No. 05-44481 (RDD)
                              :
                              :    (Jointly Administered)
          Debtors.            :
------------------------------x


# EXHIBIT G

# TO

# RESPONSE OF ROBERT BOSCH GmbH TO DEBTORS' THIRD OMNIBUS OBJECTION TO CLAIMS

§ 1    Scope of DE 3729785 C1 Method for actuating a safety device for vehicle occupants

Today vehicle safety devices use electrically actuated ignition tablets to actuate a passenger restraint devices (e.g. seat bells, airbags). When electric current flows through an ignition tablet the tablet ignites and thus actuates the restraint device. The ignition tablets are constructed in a way that they should carry no electrical current after actuation. One problem with ignition tablets is that they form an electrical shunt between the power supply and the mass of the car after ignition. As a result, electric current continues to flow through the ignition tablet thus draining the power supply.
When a capacitor is used as a power supply only a limited amount of energy can be stored therein. Thus a shunt in an ignition tablet causes a complete energy drain from the capacitor within a very short time. This problem is particularly critical if there is only one capacitor which serves mare than only one ignition tablet. As a result, the remaining ignition tablets for the other restraint devices cannot be actuated and the occupants in the vehicle are not protected.


§ 2    Solution claimed (e.g. claim 1)

A method of actuating a vehicular passenger restraint device comprising the following steps:
1. directing electric current from a storage device to an actuating device to actuate the actuation device and in turn the passenger restaint device
2. measuring the energy supplied by the storage device to the actuation device; and
3. if the energy supplied to the actuation device is greater than a predetermined amount, interrupting the flow of electric current to the actuation device to maintain a substantially predetermined amount of energy within the storage device to actuate other actuation devices.

This solution allows to reliably operate safety devices for vehicle occupants. An energy portion of the capacitor is allocated to each respective ignition tablet and therefore to a particular vehicular passenger restaint device. When a predetermined amount of energy is exceeded, the flow of electric current from the capacitor to a respective ignition tablet is interrupted. If an ignition tablet has a shunt the flow of electric current to the respective ignition tablet is interrupted. As a result the shunted ignition tablet does not drain the capacitor. The capacitor therefore maintains a sufficient amount of energy to actuate other passenger restaint devices in order to protect the occupants in the vehicle during a collision.

§ 3    Indications of infringement by Delphi products

Delphi supplies several car makers, e.g. GM, with sensing and diagnostic modules (SMD) for automotive restraint systems. GM specifies the SMD and makes this specification available to all suppliers who want to bid for this SMD. These specifications are laid down, e.g., in:

    GM Worldwide Engineering Standards
    General Specification
    GMW-3320 Epsilon
    General Motors
    Baseline Component Technical specification
    SDM/ESS - 40.7.03
    Version 3.5
    April 18, 2000

(Appendix A)

In 3.2.1.4.1 "**Deployment Energy Reserve**" (Appendix , page 17) the requierements for the SMD energy reserve are specified:
    (1) The SDM shall provide an energy reserve for the first 4 deployment loops to allow deployment 150 ms after power to the battery input is lost.
    (2) A shorted ignition input shall not deplete the energy reserves prior to commanded deployment.
    (3) A shorted squib or short to ground in one or more deployment loops (e.g., shorted squib caused by a plasma forming in the igniter) shall not result in the inability to deploy other deployment loops or cause the energy reserve times in the other loops to be less than 150 ms.

In other words: the SMD shall be designed in a way that in case of a short in the deployment loops, e.g. shorted squib, sufficient energy will remain in the energy reserve to deploy all squibs which are connected to it. In doing so, the SMD interrupts the deployment loop.
This is precisely what is stated in the claimed solution of the Bosch patent DE3729785C1.

Under 3.1.4.2.5.1 "**Squibs**" (page 8), the requirements for igniting the squibs are specified:
a.    The SDM shall provide a minimum of 1.2 and a maximum of 1.92 amps for 2 ms. The SDM should provide a minimum of 1.2 and a maximum of 1.92 amps for 2.1 ms at the time of required deployment.

In 3.1.4.2.5-I "**Resistance of Deployment Loops**" (Appendix A, page 10), the requirements for resistance of the deployment loops are specified, e.g:
Driver Loop (@25°C/@Temp.Limits)    Min 2.09/2.01$\Omega$ (Ohm)   Max 3.99/4.24$\Omega$ (Ohm)

Physical laws state that the energy W is determined by

$W = R \cdot I^2 \cdot t$         *R*: Resistance of the deployment loop
                        *I*: current through the squib
                        *t*: duration of the current through the squib

In other words: the energy supplied by the capacitor to the ignition tablet is measured as claimed in the Bosch patent DE3729785C1.

Therefore all Delphi Sensing and Diagnostic Modules delivered from Delphi to GM make use of the Bosch patent DE3729785C1.

We looked In detail at the following SMD units from Delphi:

| SMD Number | Car |
|---|---|
| GM#12249609 | Chevrolet Tahoe |
| GM#12240200 | Chevrolet Blazer (GMT 420) |
| GM#12238300 | Pontiac GrandPrix |
| GM#12241730 | Chevrolet Impala |
| GM#12236510 | Buick Rendevous (GMT 257) |
| GM#12231830 | GMC Savana |
| GM#09352679 | Isuzu |
| GM#90512128 | |
| GM#90464705 | Opel Vectra |

These cars have more than one restraint device and will - according to the specification by GM - make use of the Bosch patent DE3729785C1.

(19) **BUNDESREPUBLIK DEUTSCHLAND**



**DEUTSCHES PATENTAMT**

(12) **Patentschrift**
(11) **DE 3729785 C1**

(51) Int. Cl.⁴:
**B 60 R 21/02**
B 60 R 21/16
B 60 R 22/46
B 60 R 21/32

(21) Aktenzeichen: P 37 29 785.6-21
(22) Anmeldetag: 5. 9. 87
(43) Offenlegungstag: —
(45) Veröffentlichungstag der Patenterteilung: 9. 2. 89

DE 3729785 C1

Innerhalb von 3 Monaten nach Veröffentlichung der Erteilung kann Einspruch erhoben werden

(73) Patentinhaber:
Robert Bosch GmbH, 7000 Stuttgart, DE

(72) Erfinder:
Burger, Wilfried, Dipl.-Phys., 7254 Hemmingen, DE;
Nitschke, Werner, Dipl.-Phys., 7257 Ditzingen, DE;
Taufer, Peter, 7253 Renningen, DE; Weller, Hugo,
7141 Oberriexingen, DE

(56) Für die Beurteilung der Patentfähigkeit
in Betracht gezogene Druckschriften:
DE    36 16 975 A1
DE    28 51 333 A1
DE    24 54 424 A1

(54) Verfahren zum Betrieb einer Sicherheitseinrichtung für Fahrzeuginsassen

Es wird ein Verfahren zum Betrieb einer Sicherheitseinrichtung für Fahrzeuginsassen mit einer Speichereinrichtung für elektrische Energie, sowie mit mehreren mit der Speichereinrichtung verbindbaren Auslösemitteln für Rückhaltemittel, wie Luftsack, Gurtstraffer oder dergleichen vorgeschlagen, bei dem nach Betätigung jedes Auslösemittels die dem Auslösemittel zugeführte Energie gemessen wird und bei dem nach Erreichen eines vorgebbaren Energiegrenzwertes die Energiezufuhr zu dem bereits betätigten Auslösemittel unterbrochen wird. Dies führt zu einer Schonung der in der Speichereinrichtung vorhandenen begrenzten Energiereserve, wenn nach der Betätigung eines Auslösemittels in diesem unerwünschte Nebenschlüsse auftreten.



BUNDESDRUCKEREI   12. 88   808 166/357   90

Patentansprüche

1. Verfahren zum Betrieb einer Sicherheitseinrichtung für Fahrzeuginsassen mit einem Speicherelement für elektrische Energie, sowie mit mehreren, mit dem Speicherelement verbindbaren Auslösemitteln für Rückhaltevorrichtungen, wie Gassack oder Gurtstraffer, dadurch gekennzeichnet, daß nach Betätigung jedes Auslösemittels die dem Auslösemittel zugeführte Energie gemessen wird, und daß nach Erreichen eines festlegbaren Energiegrenzwertes die Energiezufuhr zu dem zuvor betätigten Auslösemittel unterbrochen wird.

2. Verfahren nach Anspruch 1, dadurch gekennzeichnet, daß zur Feststellung der einem Auslösemittel zugeführten Energiemenge die an dem Speicherelement (C12) anliegende Spannung (V) gemessen und mit einem vorgebbaren Sollwert (V2 bzw. V4) verglichen wird und daß bei Unterschreiten eines vorgebbaren Spannungssollwertes das zuvor betätigte Auslösemittel von dem Speicherelement (C12) abgetrennt wird.

3. Vorrichtung zur Durchführung des Verfahrens nach einem der Ansprüche 1 und 2, dadurch gekennzeichnet, daß die Auslösemittel (14a bzw. 14b bzw. 14c) in bekannter Weise mittels durch eine Auswerteeinrichtung (10) ansteuerbarer Schalteinrichtungen (11a bzw. 11b bzw. 11c) zur Bildung eines geschlossenen Stromkreises mit einem elektrische Energie speichernden Speicherelement (C12) verbindbar sind.

4. Vorrichtung nach Anspruch 3, dadurch gekennzeichnet, daß Mittel zur Erfassung der an dem Speicherelement (C12) anstehenden Spannung (V) und zum Vergleich dieser Spannung mit einem vorgebbaren Spannungsreferenzwert (V2 bzw. V4), vorgesehen sind.

5. Vorrichtung nach Anspruch 3, dadurch gekennzeichnet, daß Mittel vorgesehen sind zur Erfassung der an den Auslösemitteln (14a bzw. 14b bzw. 14c) anstehenden Spannung und des durch die Auslösemittel (14a bzw. 14b bzw. 14c) fließenden Stroms, sowie Mittel zur Berechnung der elektrischen Energie aus den erfaßten Spannungs-Stromwerten und zum Vergleich der berechneten Energiewerte mit einem vorgebbaren Energiegrenzwert.

Beschreibung

Die Erfindung geht aus von einem Verfahren zum Betrieb einer Sicherheitseinrichtung für Fahrzeuginsassen nach der Gattung des Patentanspruchs 1. Bei aus der DE-OS 28 51 333 oder aus der DE-OS 24 54 424 bekannten Sicherheitseinrichtungen ist aus Sicherheitsgründen ein Speicherelement für elektrische Energie vorgesehen, um die Sicherheitseinrichtung vermittels elektrisch betätigbarer Auslösemittel auch dann noch betätigen zu können, wenn beispielsweise die Verbindung zur Hauptenergiequelle des Fahrzeuges unterbrochen ist. Als elektrisch betätigbares Auslösemittel werden in Sicherheitseinrichtungen häufig sogenannte Zündpillen verwendet, die bei Stromdurchfluß elektrisch erhitzt werden und dadurch eine pyrotechnische Reaktion in Gang setzen. Derartige Zündpillen neigen jedoch nach der Zündung zu Nebenschlüssen, die die begrenzte Energiereserve des Speicherelements beanspruchen. Aufgrund der unerwünschten Entladung des Speicherelements reicht die dann noch zur Verfügung stehende Energiemenge häufig nicht mehr aus, um weitere, für zeitlich aufeinanderfolgende Auslösung bestimmte Auslösemittel auch andere Rückhaltevorrichtungen noch zu betätigen.

Durch die nachveröffentlichte DE-OS 36 16 975 ist es zwar auch bekannt, in einer Auslösevorrichtung für eine Fahrzeuginsassen-Sicherheitseinrichtung funktionsunfähige Zündpillen (Lastwiderstände) von der Endstufe zu trennen, doch geschieht dieses im Rahmen eines Prüfprogramms zur Überwachung der im Ruhezustand befindlichen Sicherheitsvorrichtung und nicht nach der tatsächlichen Auslösung der einzelnen Sprengsätze für die Sicherheitsvorrichtungen, bei der das Problem des durch den Abbrand verursachten Nebenschlusses auftritt.

Der Erfindung liegt die Aufgabe zugrunde, die nachteiligen Folgen von Nebenschlüssen bei schon betätigten Auslösemitteln zu vermeiden, um so trotz einer begrenzten Energiereserve in dem Speicherelement noch zu betätigende Auslösemittel sicher auslösen zu können.

Die Lösung dieser Aufgabe erfolgt durch die Merkmale im kennzeichnenden Teil des Patentanspruches 1.

Die erfindungsgemäße Lösung hat den Vorteil, daß die Sicherheitseinrichtung für Fahrzeuginsassen außerordentlich zuverlässig arbeitet. Obwohl nämlich in dem von der Hauptenergieversorgung des Fahrzeugs unabhängigen Speicherelement für den Notfall lediglich eine begrenzte Energiemenge gespeichert ist, gelingt es mit der erfindungsgemäßen Lösung dennoch, die für die Aktivierung der Rückhaltevorrichtungen vorgesehenen Auslösemittel sicher zu betätigen. Dies wird hauptsächlich dadurch erreicht, daß die zur Betätigung jedes Auslösemittels notwendige Energiemenge präzise zugemessen wird. Sobald ein willkürlich vorgebbarer Energiegrenzwert überschritten ist, wird das zuvor jeweils betätigte Auslösemittel von dem Speicherelement abgetrennt. Auf diese Weise wird verhindert, daß beispielsweise durch einen entstandenen Nebenschluß die begrenzte Energiemenge unnötigerweise verbraucht wird. Es steht daher im Notfall noch ausreichend Energie zur Betätigung weiterer Auslösemittel zu Verfügung.

Durch die in den Unteransprüchen aufgeführten Maßnahmen sind vorteilhafte Weiterbildungen und Ausgestaltungen des im Hauptanspruch angegebenen Verfahrens möglich. Weiter werden in den Unteransprüchen zur Durchführung des Verfahrens besonders geeignete Vorrichtungen beschrieben.

Ausführungsbeispiele der Erfindung sind in der Zeichnung dargestellt und in der nachfolgenden Beschreibung näher erläutert. Es zeigt

Fig. 1 ein Blockschaltbild einer Sicherheitseinrichtung für Fahrzeuginsassen zur Durchführung des erfindungsgemäßen Verfahrens;

Fig. 2 in einem Diagramm die Darstellung der an der Speichereinrichtung anliegenden Spannung als Funktion der Zeit;

Fig. 3 ein Ausführungsbeispiel der Sicherheitseinrichtung nach Fig. 1 mit einem Transistor als Schaltelement;

Fig. 4 ein Funktionsdiagramm zur Erläuterung der Funktionsweise der Sicherheitseinrichtung nach Fig. 1, bzw. Fig. 3.

Eine Sicherheitseinrichtung 1 für Fahrzeuginsassen (Fig. 1) besteht aus einem Beschleunigungsaufnehmer S1, an dessen Ausgang entweder ein beschleunigungsproportionales Signal erzeugt wird oder ein Signal, das erst bei Überschreiten einer festlegbaren Beschleunigungsschwelle entsteht. Dieses Signal wird einer Auswerteeinrichtung 10 zugeführt, in der das vom Beschleu-

3

nigungsaufnehmer S1 abgegebene Signal daraufhin untersucht wird, ob ein Unfall vorliegt. Mit der Auswerteeinrichtung 10 verbunden und von dieser betätigbar sind Schaltelemente 11a, 11b, 11c, mittels derer die mit den vorgenannten Schaltelementen in Serie geschaltete Auslösemittel 14a, 14b, 14c an eine Betriebsspannungsquelle 17 oder an ein für den Notfall vorgesehenes Speicherelement für elektrische Energie C12 legbar sind. Die elektrisch betätigbaren Auslösemittel 14a, 14b, 14c sind jeweils Rückhaltevorrichtungen 18 zugeordnet. Bei den Rückhaltevorrichtungen 18 handelt es sich um einen Gassack, Gurtstraffer oder dergleichen. Bei Betätigung eines Schaltelementes 11a, 11b, 11c durch die Auswerteeinrichtung 10 wird ein Stromkreis geschlossen, dessen Bestandteil mindestens eines der Auslösemittel 14a, 14b, 14c ist. Bei diesen Auslösemitteln handelt es sich vorzugsweise um sogenannte Zündpillen, die z. B. bei Stromdurchfluß stark erhitzbar sind und dadurch die Zündung einer pyrotechnischen Zündkette einleiten.

Mittels der pyrotechnischen Zündkette wird schließlich auf pyrotechnischem Weg ein Gas erzeugt, das z. B. den Gassack in sehr kurzer Zeit aufbläst. Aus Sicherheitsgründen ist neben der Betriebsspannungsquelle 17 (z. B. Fahrzeugbatterie) eines von dieser Betriebsspannungsquelle unabhängige Speicherelement C12 vorgesehen, in dem eine elektrische Energiereserve zur Betätigung der Auslösemittel 14a bis 14c für den Fall gespeichert wird, daß beispielsweise infolge eines Unfalls die Verbindung der Sicherheitseinrichtung 1 zur Betriebsspannungsquelle 17 unterbrochen ist. Als Speicherelement C12 wird in herkömmlichen Sicherheitseinrichtungen ein Kondensator verwendet, dessen Kapazitätswert jedoch begrenzt ist, da aus Platzgründen kein beliebig großes Bauvolumen zur Verfügung steht. In dem Speicherelement C12 ist daher nur eine begrenzte Energiemenge gespeichert.

Bei herkömmlichen Sicherheitseinrichtungen mit Zündpillen als Auslösemittel hat sich nun als nachteilig herausgestellt, daß die Zündpillen zu Nebenschlüssen neigen. Das heißt, trotz der Aktivierung der Zündpillen durch Stromerwärmung, die in der Regel eine Zerstörung der Zündpille und damit eine Unterbrechung des die Zündpille aktivierenden Stromkreises zur Folge hat, kann ein vergleichsweise geringer Restwiderstand erhalten bleiben, der einen geschlossenen Stromkreis aufrecht erhält und damit zu einem unerwünschten Abfluß von Energie aus dem Speicherelement C12 führt. Dies ist insbesondere dann außerordentlich nachteilig und für die Betriebssicherheit der Sicherheitseinrichtung abträglich, wenn in einem zeitlichen Abstand nacheinander mehrere Zündpillen aktiviert werden sollen, die je einzeln mehreren Rückhaltevorrichtungen zugeordnet sind. Ein bestehender Nebenschluß einer zeitlich zuvor aktivierten Zündpille verbraucht in unerwünschter Weise die in dem Speicherelement C12 abgespeicherte Energie, so daß keine ausreichende Energiemenge für die nachfolgende Aktivierung weiterer Zündpillen zur Verfügung steht. Diesen Nachteil vermeidet die Erfindung nun auf einfache Weise dadurch, daß nach Betätigung jedes Auslösemittels die dem Auslösemittel zugeführte Energie gemessen wird, und daß nach Erreichen eines festlegbaren Energiegrenzwertes die Energiezufuhr zu dem jeweils betätigten Auslösemittel unterbrochen wird. Diese Maßnahme wird jetzt im einzelnen anhand von Fig. 1, Fig. 2 und Fig. 4 erläutert. Es wird angenommen, daß das Speicherelement C12 auf seine Sollspannung V1 aufgeladen sei und somit die maximal mögliche Energiemenge enthält. Weiter werde eine

4

Notfallsituation angenommen, bei der die Sicherheitseinrichtung 1 von der Spannungsquelle 17 abgetrennt ist und somit nur die begrenzte Energiereserve in dem Speicherelement C12 zur Verfügung steht. Vom Beschleunigungsaufnehmer S1 wird die Beschleunigung erfaßt, der das Fahrzeug ausgesetzt ist und eine der Beschleunigung entsprechende Spannung erzeugt, die der Auswerteeinrichtung 10 zugeführt wird. Diese Auswerteeinrichtung entscheidet nach vorgebbaren Kriterien, ob ein Unfallereignis vorliegt oder nicht. Es wird angenommen, daß ein Unfallereignis dann vorliegt, wenn die vom Beschleunigungsaufnehmer S1 festgestellte Beschleunigung einen vorgegebenen Grenzwert $a0$ überschreitet. Solange dieser Grenzwert nicht erreicht ist, entscheidet die Auswerteeinrichtung 10, daß die Rückhaltevorrichtungen 18 nicht aktiviert werden muß. Demzufolge bleiben die Schaltelemente 11a, 11b, 11c geöffnet und die Auslösemittel 14a, 14b, 14c werden nicht betätigt. Abgesehen von unvermeidlichen Energieverlusten in dem Speicherelement C12 bleibt somit die in dem Speicherelement C12 angesammelte Energie im wesentlichen erhalten. Sobald jedoch die Auswerteeinrichtung 10 feststellt, daß die vom Beschleunigungsaufnehmer S1 erfaßte Beschleunigung einen vorgegebenen Grenzwert $a0$ überschritten hat, wird das Schaltelement 11a von der Auswerteeinrichtung 10 angesteuert und geschlossen. Unter Einfluß eines Auslösemittels, nämlich der Zündpille 14a, wird somit zum Zeitpunkt $t1$ (Fig. 2) ein geschlossener Stromkreis gebildet, der zu einem Stromfluß führt und die in dem Speicherelement 12 gespeicherte Energiemenge verringert. Der Stromfluß führt zu einer Erhitzung der Zündpille 14a, die wiederum, wie oben schon beschrieben, ggf. eine pyrotechnische Zündkette in Gang setzt und mittels pyrotechnisch erzeugter Gasmengen eine Rückhaltevorrichtung 18, beispielsweise einen Gassack, aufbläst. Wenn sich nun bei der Aktivierung der Zündpille 14a ein Nebenschluß bildet, wird ständig Energie aus dem Speicherelement C12 verbraucht. Dieses ist an einem Absinken der an C12 gemessenen Spannung zu erkennen. Die Spannung wird — entsprechend der in Fig. 2 gestrichelt gezeichneten Kurve — von einem Maximalwert V1 noch vor dem Zeitpunkt $t3$ nahezu auf Null sinken. Für die Auslösung der anderen Zündpillen 14b, 14c wobei zunächst 14b zum Zeitpunkt $t3$ ausgelöst werden soll, steht in diesem Fall keine Energiereserve mehr zu Verfügung. Gemäß der Erfindung wird nun nach Aktivierung der Zündpille 14 zum Zeitpunkt $t1$ die der Zündpille 14a zugeführte elektrische Energie ermittelt. Sobald eine vorgebbare Energiemenge entnommen worden ist, diese wird zweckmäßig pragmatisch ermittelt, wird der Stromkreis durch erneute Betätigung des Schaltelementes 11a durch ein entsprechendes Signal der Auswerteeinrichtung 10 zum Zeitpunkt $t2$ wieder geöffnet. Dies hat zur Folge, daß die Energiezufuhr zur Zündpille 14a trotz eines dort gegebenenfalls gebildeten Nebenschlusses unterbrochen wird, so daß sich die Spannung an dem Speicherelement C12 bei einem Wert V2 stabilisiert. Es steht somit eine genügend große Energiereserve zur Verfügung, um zum Zeitpunkt $t3$ ein weiteres Auslösemittel, beispielsweise die Zündpille 14b, zu betätigen. Dazu wird durch Ansteuerung des Schaltelementes 11b wiederum ein geschlossener Stromkreis gebildet, der die vorerwähnte Zündpille 14b einschließt. Nach hinreichender Energiezufuhr wird zum Zeitpunkt $t4$ durch erneutes Ansteuern des Schaltelements 11b dieses geöffnet und der Stromkreis unterbrochen, so daß sich zum Zeitpunkt $t4$ an dem Spei-

5

cherelement eine Spannung $V4$ einstellt. In analoger Weise könnten noch weitere Auslösemittel, wie beispielsweise die in Fig. 1 noch dargestellte Zündpille 14c, betätigt werden. Als Maß für die dem jeweiligen Auslösemittel (Zündpille 14a, 14b, 14c) zugeführte Energiemenge kann nun auf einfache Weise die Spannung $V$ an dem Speicherelement $C12$ dienen, die beispielsweise durch den in Fig. 1 angedeuteten Spannungsmesser 13 erfaßt und von der Auswerteeinrichtung 10 verarbeitet werden kann. Die Auswerteeinrichtung 10 kann dafür an sich bekannte Komparatorschaltungen umfassen, die die an $C12$ gemessene Spannung mit vorgegebenen Referenzwerten, also beispielsweise den Spannungswerten $V2$ und $V4$ in Fig. 2, vergleichen. Dieser Vorgang wird auch durch das Ablaufdiagramm nach Fig. 4 verdeutlicht. Die Auswerteeinrichtung 10 erkennt am Ausgangssignal des Beschleunigungsaufnehmers $S1$ das Überschreiten eines vorgegebenen Beschleunigungsgrenzwerts $a0$. Daraufhin wird zur Betätigung des Auslösemittels 14a zunächst das Schaltelement 11a angesteuert und geschlossen. Durch den auf diese Weise geschlossenen Stromkreis wird dem Auslösemittel 14a elektrische Energie aus dem Speicherelement $C12$ zugeführt, wodurch die an $C12$ abstehende Spannung $V$ vom zunächst vorhandenen Maximalwert $V1$ absinkt. Die Auswerteeinrichtung 10 prüft ständig, ob die an $C12$ anstehende Spannung den vorgegebenen Grenzwert $V2$ erreicht hat, bzw. diesen unterschreitet. Solange dies noch nicht der Fall ist, bleibt das Schaltelement 11a geschlossen. Wird das Erreichen des Spannungsgrenzwertes $V2$ festgestellt, erfolgt eine erneute Ansteuerung des Schaltelementes 11a, dieses wird geöffnet, und der geschlossene Stromkreis wird unterbrochen. Bis zum Zeitpunkt $t3$ steht an $C12$ die Spannung $V2$ an. Alternativ läßt sich die den Auslösemitteln zugeführte Energiemenge auch dadurch bestimmen, daß die an dem jeweiligen Auslösemittel 14a, 14b, 14c anliegende Spannung erfaßt und gleichzeitig der durch das Auslösemittel fließende Strom gemessen wird. Diese Maßnahme wird schematisch veranschaulicht durch die in Fig. 1 im Zusammenhang mit der Zündpille 14a dargestellten Strommesser 15 und Spannungsmesser 16.

In einer vorteilhaften Ausgestaltung der Einrichtung zur Durchführung des erfindungsgemäßen Verfahrens werden als Schaltelemente 11a, 11b, 11c Halbleiterschalter eingesetzt. Dies ist beispielhaft in Fig. 3 verdeutlicht, in der zur Betätigung des Auslösemittels 14a ein Transistor $T30$ dient.

Hierzu 2 Blatt Zeichnungen

6

ZEICHNUNGEN BLATT 2

Nummer: 37 29 785
Int. Cl.⁴: B 60 R 21/02
Veröffentlichungstag: 9. Februar 1989



FIG. 3



FIG. 4

808 166/357

Nummer: 37 29 785
Int. Cl.⁴: B 60 R 21/02
Veröffentlichungstag: 9. Februar 1989



FIG. 1



FIG. 2

808 166/357