**HEARING DATE AND TIME: November 30, 2006 at 10:00 AM**
**OBJECTION DEADLINE: November 24, 2006 at 4:00 PM**

ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Tel: (202) 942-5000
Facsimile: (202) 942-5999
Joel M. Gross (JG 5229)
joel_gross@aporter.com

*Attorney for CSX Realty Development LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

---

**RESPONSE AND OBJECTION OF CSX REALTY DEVELOPMENT LLC
TO DEBTORS' (I) THIRD OMNIBUS OBJECTION (SUBSTANTIVE)
PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN
(A) CLAIMS WITH INSUFFICIENT DOCUMENTATION, (B) CLAIMS
UNSUBSTANTIATED BY DEBTORS' BOOKS AND RECORDS, AND
(C) CLAIMS SUBJECT TO MODIFICATION
AND (II) MOTION TO ESTIMATE CONTINGENT AND UNLIQUIDATED
CLAIMS PURSUANT TO 11 U.S.C. § 502(c) AND
RESPONSE AND OBJECTION OF CSX REALTY DEVELOPMENT LLC
TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 502(b) AND
502(c) AND FED. R. BANKR. P. 2002(m), 3007, 7016, 7026, 9006, 9007, AND 9014
ESTABLISHING (I) DATES FOR HEARINGS REGARDING DISALLOWANCE
OR ESTIMATION OF CLAIMS AND (II) CERTAIN NOTICES AND
PROCEDURES GOVERNING HEARINGS REGARDING DISALLOWANCE OR
<u>ESTIMATION OF CLAIMS</u>**

CSX Realty Development LLC hereby responds and objects to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (hereinafter "Third Omnibus Claims Objection" or "Objection" and "Motion" respectively) to the extent that Debtors seek to disallow its claim and move to estimate its claim pursuant to 11 U.S.C. § 502(c). CSX Realty Development LLC also hereby objects to the Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 502(b) and 502(c) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (I) Dates for Hearings Regarding Disallowance or Estimation of Claims and (II) Certain Notices and Procedures Governing Hearings Regarding Disallowance or Estimation of Claims (hereinafter "Claim Objection and Estimation Procedures Motion"). In support of its collective Response and Objection, CSX Realty Development LLC ("CSXR") respectfully represents as follows:

## BACKGROUND

1.  CSXR is a Georgia limited liability company with its principal place of business in Jacksonville, Florida.

2.  On July 31, 2006, CSXR duly filed a Proof of Claim (the "Proof of Claim") against Debtor Delphi Automotive Systems LLC ("Delphi" or "Debtor"). A copy of that Proof of Claim is attached as Exhibit A hereto.

3. As alleged in the Proof of Claim, Delphi has owned and operated two automotive components fabrication and assembly plants in Vandalia, Ohio ("Vandalia Plants").

4. CSXR owns property in Vandalia, Ohio adjacent to Debtors' property located east of Debtors' facility in the area known as Northwoods Business Park, between Interstate 75 on the west and Cassell Road on the east, and within the Northwoods Business Park, in Vandalia, Ohio (the "CSXR Property"). The location of the CSXR Property is further described in the Declaration of Mark Holder ("Holder Decl."), dated November 22, 2006, submitted herewith.

5. Hazardous wastes and hazardous constituents from Debtors' Vandalia Plants have migrated to soils, groundwater and/or other subsurface media and then have migrated laterally, and have come to be located in the subsurface of the CSXR Property. This migration of contamination onto the CSXR Property is continuing and will continue for many years. The groundwater aquifer beneath the CSXR Property contains trichloroethene ("TCE") and other hazardous materials released from Debtors' Vandalia Plants. See ¶ 5 of the Declaration of R. Neil Davies, dated November 22, 2006 ("Davies Decl."), submitted herewith. The concentration of TCE in the groundwater is in excess of maximum contaminant levels for drinking water established by EPA. See Davies Decl., ¶ 6; EPA "Statement of Basis for Delphi Corporation, Vandalia, Ohio," dated October 2006, page 4 ("EPA Statement of Basis"), Davies Decl. Exhibit D2.

6. In or about January 2002, EPA Region 5 issued an Administrative Order on Consent ("AOC") to Debtor requiring it to undertake specified investigatory and remedial work to, *inter alia*, address and remediate releases of hazardous wastes or

hazardous constituents from the Vandalia Plants. Davies Decl. Exhibit D3. Debtor has taken various activities to comply with the AOC and, upon information and belief, those activities are continuing.

7. As set forth in Debtors' Revised Corrective Measures Proposal, dated June 5, 2006 ("Debtors' CMP"), Davies Decl. Exhibit D4, and EPA's Statement of Basis, Debtors' proposed remedy developed under the AOC provides for an active groundwater capture and treatment system on its own site, i.e. the Vandalia Plants. In contrast, Debtors' proposed remedy provides nothing more than continued off-site monitoring and institutional controls as an off-site remedial measure. See Debtors' CMP, page i; EPA Statement of Basis, page 12. In other words, Delphi is proposing not to remediate the contamination it caused at the CSXR Property. Moreover, the institutional controls proposed by Debtors would prevent CSXR from using the groundwater on its Property. Davies Decl., ¶ 7. CSXR reserves its right to comment to EPA on, and to oppose, the selection of the proposed remedy, but if EPA selects the proposed remedy, the contamination at the CSXR Property will remain for a very long time, running into decades. Davies Decl. ¶ 7.

8. On October 8 and 14, 2005 Debtors commenced their chapter 11 cases by filing voluntary petitions.

9. CSXR's Proof of Claim relates to, and seeks recovery of or compensation for, costs CSXR may incur as a result of Debtors' failure to undertake full remediation of the contamination and for damage to the value of the CSXR Property resulting from the contamination from the Vandalia Plants and Debtors' failure prior hereto or hereinafter to undertake appropriate remedial measures.

10. On October 31, 2006, the Debtors filed their Third Omnibus Objection, pursuant to which they propose to disallow CSXR's Claim as being "unsubstantiated" by Debtors' books and records and, in the alternative, request the Court to estimate CSXR's Claim for the purposes of setting a maximum allowable amount of the Claim for all purposes. Debtors chose to not address CSXR's claim in any specific way, but lump it with hundreds of other claims. Debtors suggest that they tried unsuccessfully to obtain additional information from CSXR about its Proof of Claim, but there is no record of any such communication.

11. The Third Omnibus Objection should be overruled with respect to CSXR's Claim because the Proof of Claim sets forth a valid and enforceable claim under the terms of applicable law and the Debtors have not met their burden of proof with respect to disallowing any portion of the Proof of Claim. As set forth below, Delphi is liable to CSXR as has been alleged in the Proof of Claim. That the Claim is unliquidated does not subject it to disallowance. It may subject the Claim to estimation, but the estimation procedures proposed by Debtor are fundamentally one-sided and unfair.

## RESPONSE TO THE DEBTORS' CLAIM OBJECTION

**A. The Debtors Have Not Met Their Burden In Objecting To The Proof Of Claim.**

12. A proof of claim that is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitute *prima facie* evidence of the validity and amount of the claim. See Fed. R. Bankr. P. 3001(f); see also Carey v. Ernst, 333 B.R. 666, 672 (S.D.N.Y. 2005); In re Elmira Litho, Inc., 174 B.R. 892, 901 (Bankr. S.D.N.Y. 1994). CSXR's Proof of Claim was timely filed and executed in accordance with the

- 5 -

Bankruptcy Rules and the Bankruptcy Code and, accordingly, constitutes *prima facie* evidence of the validity and amount of CSXR's claim.

13.     Once a proof of claim has been filed, the claim is deemed valid. The burden then shifts to the party objecting to the claim to present proof that the claim is invalid. See, e.g., Carey, 333 B.R. at 672; In re Woodmere Investors Ltd. P'ship, 178 B.R. 346, 354 (Bankr. S.D.N.Y. 1995); 4 Collier on Bankruptcy ¶ 502.02[3][f] (15th ed. 2005) ("Unless the trustee, as objector, introduces evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."); 2 Norton Bankruptcy Law and Practice 2d § 41.7, at 41-29 (2001) ("A duly executed proof of claim being a prima facie case for the claimant, the burden is on the objecting party to go forward with evidence establishing the basis of the objection. For example, if the objection is that no debt is owed or that the amount of the debt is different from the claimed amount, proof of the fact must be presented."). One court has explained the allocation of the burden of proof as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

14.     Merely objecting to a claim does not deprive the claim of its presumptive validity; rather, the evidentiary presumption remains in effect notwithstanding a claim objection. See In re Goodell, 2006 WL 23568, at *2 (Bankr. E.D. Pa. Jan. 4, 2006)

- 6 -

("Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force."); In re Wheatley, 251 B.R. 430, 432 (Bankr. N.D. Okla. 2000); Townview Nursing Home v. New York (In re Townview Nursing Home), 28 B.R. 431, 443 (Bankr. S.D.N.Y. 1983) (interpreting Rule 301 under the Bankruptcy Act). In order to satisfy the burden of proof on a claim objection, the objector must offer "substantial evidence" in support of its objection to the claim. See Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). Specifically, "[t]he objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force *equal to that of the allegations of the creditor's proof of claim*." In re Goodell, 2006 WL 23568, at *2 (emphasis added).

15.     The Proof of Claim describes each component of CSXR's claim and provides the basis for the amounts set forth therein. CSXR's Proof of Claim should be allowed as filed because the Debtors have not met their burden of providing substantial evidence to support the Objection or to contradict the Proof of Claim. Indeed, the Debtors have not provided *any* evidence in support of their Objection.

16.     The Proof of Claim is listed among hundreds of other claims on Exhibit C-1 to the Objection, "Unsubstantiated Claims." There is no specific discussion of any aspect of the Proof of Claim and no evidence to challenge its presumptive validity. This falls far short of the requirements set forth in the case law cited above, which makes clear that the Debtors must provide substantial evidence, equal in weight to that submitted by CSXR, in order to successfully object to the Proof of Claim. The only explanation the Debtors give for objecting to the Proof of Claim is a general statement that all of the claims listed on Exhibit C-1 are "not supported by the Debtors' books and records" and,

accordingly, the Debtors seek to disallow and expunge such claims in their entirety. Nowhere in the Objection do the Debtors specifically address the Proof of Claim – there is no explanation of why their books and records allegedly do not reflect the existence of such claim.

17. In short, the Debtors' blanket reference to their books and records as a basis for disallowing and expunging CSXR's claim is nothing more than a bare denial of liability that falls far short of the required burden of providing "substantial evidence" that is equal in probative force to the Proof of Claim. See In re Hemingway Transp., Inc., 993 F2.d at 925; In re Goodell, 2006 WL 23568, at *2; In re Wheatley, 251 B.R. at 432. Accordingly, the Objection should be overruled with respect to the Proof of Claim, and the Proof of Claim should be allowed as filed.

**B.    The Proof Of Claim Is Fully Supported By Applicable Law.**

18. Notwithstanding the fact that CSXR's Proof of Claim should be allowed as filed, CSXR hereby provides additional information substantiating its Proof of Claim in accordance with the information the Debtor seeks in its Motion. In its Motion, the Debtor seeks to have claimants whose claims are objected to provide seven categories of information as follows: (1) a caption setting forth the name of the Court, the names of the Debtors, the case number, and the title of this Third Omnibus Claims Objection to which the Response is directed; (2) the name of the Claimant and a description of the basis for the amount of the Claim; (3) a concise statement setting forth the reasons why the Claim should not be disallowed, expunged, or reclassified for the reasons set forth in this Third Omnibus Claims Objection, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the Third Omnibus Claims Objection; (4) all documents or other evidence of the Claim upon which the Claimant

will rely in opposing the Third Omnibus Claims Objection to the extent not included with the Proof of Claim previously filed with the Court; (5) to the extent that the Claim is fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; (6) the address(es) to which the Debtors must deliver any reply to the Response, if different from the address(es) presented in the Claim; and (7) the name, address, and telephone number of the person (which may be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on behalf of the Claimant. Each category of information is dealt with in turn in the following paragraphs.

19.    <u>A caption setting forth the name of the Court, the names of the Debtors, the case number, and the title of this Third Omnibus Claims Objection to which the Response is directed</u>. <u>See</u> page 1 of this Response and Objection.

20.    <u>The name of the Claimant and a description of the basis for the amount of the Claim</u>. As previously stated, the name of the Claimant is CSX Realty LLC ("CSXR"). As provided in CSXR's Proof of Claim, and as further described above, the releases of hazardous waste, hazardous constituents and other materials from Debtors' Vandalia Plants, including but not limited to the contamination now located beneath the CSXR Property, has caused damage to CSXR's Property, including without limitation the diminution in value of the property and the costs of any remedial activity or corrective measures that CSXR may in the future undertake to facilitate the unrestricted use or development of the CSXR Property. Accordingly, the basis for the amount of CSXR's Claim is a function of the diminution in value of the CSXR Property together with certain

- 9 -

costs it has incurred or may incur as a result of Debtor's chemical contamination, as further set forth in the Declarations and Exhibits submitted herewith.

21.    <u>A concise statement setting forth the reasons why the Claim should not be disallowed, expunged, or reclassified for the reasons set forth in this Third Omnibus Claims Objection, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the Third Omnibus Claims Objection</u>.  Debtors' Objection states no reason why the Claim <u>should</u> be disallowed or expunged.  In any event, set forth below are the specific factual and legal bases upon which CSXR relies in opposing the Objection.

    a.    <u>Factual basis</u>. <u>See</u> <u>supra</u> ¶¶ 1-9 and the Declarations and Exhibits submitted herewith.

    b.    <u>Legal basis</u>. CSXR's claim against Debtors, based upon the contamination of the CSXR Property by TCE emanating from Debtors' Vandalia Plants, is grounded in common law, including trespass and nuisance, and statutory law, including the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 <u>et</u> <u>seq</u>. ("RCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 <u>et</u> <u>seq</u>. ("CERCLA"):

    i.    <u>Trespass</u>.  Ohio recognizes a common law cause of action in trespass where, as a result of defendant's operation, pollutants are deposited upon plaintiff's property, "thus interfering with his exclusive possessory interest by causing substantial damage to the res."  <u>Brown v. County Comm'rs of Scioto County</u>, 622 N.E.2d 1153, 1162 (Ohio Ct. App. 1993).  In this case, TCE emanating from Debtors' Vandalia Plants have been deposited upon CSXR's Property and have interfered with CSXR's

- 10 -

exclusive possessory interest by causing substantial damage to CSXR's Property.  Thus, CSXR properly has a trespass cause of action against Debtor.

        ii.      <u>Nuisance</u>.  Under Ohio law, a "private nuisance is defined as a nontrespassory invasion of another's interest in the private use and enjoyment of land." <u>Hager v. Waste Tech. Indus., Inc.</u>, No. 2000-CO-45, 2002 WL 1483913 (Ohio Ct. App. June 27, 2002).  "A civil action based upon the maintenance of a qualified private nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm ultimately resulting in injury." <u>Id</u>. In this case, Debtor negligently caused the contamination of CSXR's Property and negligently remediated or failed to remediate such contamination, which by itself has resulted in injury to CSXR illustrated by CSXR's loss of enjoyment of the use of its Property and a diminution in the value of its Property.

        iii.      <u>Damages under trespass and nuisance</u>.  Under Ohio law, the proper measure of damages in tort for real property is diminution in the value of that property where plaintiff's land has sustained a permanent or irreparable injury. See <u>Reeser v. Weaver Bros., Inc.</u>, 605 N.E.2d 1271, 1274 (Ohio. Ct. App. 1992) (citing <u>Ohio Colleries Co. v. Cocke</u>, 140 N.E. 356 (Ohio 1923).  Where the injury is temporary and susceptible to repair, then the "landowner may recover the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration." <u>Reeser</u>, 605 N.E.2d at 1274.  Where restoration costs are the appropriate remedy, however, "the recoverable restoration cost cannot exceed the difference between pre-injury and post-injury fair market value of the real property." <u>Id</u>. at 1278. Consequently, the appropriate damages for CSXR will at least be as great as the

- 11 -

diminution in fair market value of the CSXR Property. In Ohio, "the opinion testimony of an owner of real property . . . is competent and admissible on the question of the value of such property regardless of his knowledge of property values" for purposes of establishing diminution in the fair market value of the owner's property. Abdalla v. Unkefer, No. 495, 1985 WL 6982, at *1 (Ohio Ct. App. June 19, 1985). Approximately 100 acres of CSXR's Property, which in total consists of approximately 500 acres, has been appraised at approximately $2.4 million based on the assumption that it was not contaminated. See ¶ 5 of the Declaration of Mark Middleton, dated November 22, 2006 ("Middleton Decl."), submitted herewith. The as-clean value of the entire 500 acre property would obviously be far more than $2.4 million and CSXR is in the process of having the entire property appraised. Because of the contamination which is continuing to migrate to CSXR's Property, CSXR has been unable to sell the Property with terms and conditions regarding the contamination on CSXR's Property that were acceptable to both the buyer and seller. See Holder Decl., ¶¶ 3,4.

    iv.  RCRA § 7002. In addition to claims based on Ohio common law, CSXR may also have a claim against Delphi based on RCRA. Under Section 7002 of RCRA, CSXR may seek a court order to address any disposal of hazardous wastes that may be presenting an imminent and substantial endangerment to public health or the environment. The TCE and other contamination at issue here may present such a risk. See Davies Decl. ¶ 7, and CSXR would be entitled to an appropriate court order to abate such contamination. It is the position of CSXR that such equitable obligations are not claims or debts subject to discharge under Section 1129 of the Bankruptcy Code, and that such obligations could be asserted even post-bankruptcy. See In re Torwico, 8 F.3d 146,

- 12 -

151 (3d Cir. 1993) (holding debtors' obligations to New Jersey Department of Environmental Protection were not "claims" under the Bankruptcy Code). To the extent Debtor asserts that such an obligation is subject to discharge because there CSXR has some alternative right to payment, then Debtor is liable to CSXR for the costs of such remediation, which costs would likely exceed $10 million. See Davies Decl., ¶ 8.

   v. <u>CERCLA § 107</u>. In addition, if Delphi does not remediate the contamination of CSXR's Property, CSXR may remediate such contamination, which arises from a release of hazardous substances at the Vandalia Plants. As the owner and operator of a facility from which there has been a release of hazardous substances, Delphi is or will be liable to CSXR under CERCLA § 107(a)(1), 42 U.S.C. 9607(a)(1) for all costs of remediation incurred by CSXR consistent with the National Contingency Plan.

  22. <u>All documents or other evidence of the Claim upon which the Claimant will rely in opposing the Third Omnibus Claims Objection to the extent not included with the Proof of Claim previously filed with the Court</u>: CSXR would rely on the following documents and to the extent appropriate other documents obtained during the discovery process. CSXR reserves the right to rely on other documents and evidence developed in preparation for an estimation hearing if one is set by the Court:

   a. The full administrative record regarding the 2002 AOC between EPA Region 5 and Delphi including, without limitation: (1) the AOC; (2) Delphi's June 2006 Revised Corrective Measures Proposal; and (3) EPA's October 2006 Statement of Basis;

   b. Appraisals of the CSXR Property, and related documents.

    c. Documents and records relating to CSXR's attempts to market and sell the CSXR Property;

    d Land records and other records of sale in the surrounding area of the CSXR Property and the Vandalia Plants; and

    e. The Declarations submitted herewith.

  23. <u>To the extent that the Claim is fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate</u>. CSXR's claim is unliquidated. As noted above, the value of one-fifth of the property has been appraised, on an as-clean basis, for more than $2.4 million. If the remainder of the property had the same per-acre value, the total value would exceed $12 million. CSXR is performing an appraisal of the property and will provide it to the Debtor when complete. There has been a significant reduction in value because of the contamination, and the contamination has resulted in at least one proposed sale falling through. <u>See</u> Holder Decl., ¶ 3. There is no requirement under the Bankruptcy Code that CSXR provide the diminution in value of its property or other elements of its claim at this stage in the bankruptcy proceedings, and this Court should not require it. CSXR was given only approximately three weeks from the date of Debtors' Objection filing to provide the information requested by Debtor. CSXR has not yet sold the CSXR Property and therefore cannot provide a precise calculation of the diminution in value caused by the contamination. CSXR is in the process of obtaining an appraisal value for the entire CSXR Property. <u>See</u> Holder Decl., ¶ 5. Should the Court require CSXR to submit its assessment of the diminution in

- 14 -

property value of CSXR's Property, CSXR requests an additional 45 days to conduct the necessary analysis and provide the requested information.

24.     <u>The address(es) to which the Debtors must deliver any reply to the Response, if different from the address(es) presented in the Claim</u>.

> Joel M. Gross
> ARNOLD & PORTER LLP
> 555 Twelfth Street, N.W.
> Washington, D.C.  20004-1206
> Tel:  (202) 942-5000
> Facsimile:  (202) 942-5999

25.     <u>The name, address, and telephone number of the person (which may be the Claimant or his/her/its legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the Claim on behalf of the Claimant</u>.

> Joel M. Gross
> ARNOLD & PORTER LLP
> 555 Twelfth Street, N.W.
> Washington, D.C.  20004-1206
> Tel:  (202) 942-5000
> Facsimile:  (202) 942-5999

**C.    Estimation Procedures Proposed by Debtor are Fundamentally One-sided and Unfair.**

26.     Section 502(c) of the Bankruptcy Code permits this Court to estimate contingent or unliquidated claims.  The duty to estimate, however, "is not mandatory until the court determines that liquidation of the claim outside of the bankruptcy court would unduly delay the bankruptcy proceeding."  In re Apex Oil Co., 107 B.R. 189, 193 (Bankr. E.D.Mo. 1989).  "From the plain language of § 502(c), it is clear that estimation does not become mandatory merely because liquidation may take longer and thereby delay administration of the case.  Liquidation of a claim, in fact, will almost always be

more time consuming than estimation. Nonetheless, bankruptcy law's general rule is to liquidate, not to estimate. For estimation to be mandatory, then, the delay associated with liquidation must be 'undue.'" In re Dow Corning Corp., 211 B.R. 545, 560-61 (Bankr. E.D.Mich. 1997). Here, there is no showing that liquidating of CSXR's claim would cause undue delay.

27. In the event this Court determines estimation is appropriate, there are limitations on a bankruptcy court's "authority to either liquidate or estimate the value of a claim for purposes of allowance and distribution may be circumscribed depending on the type of claim with which the court is confronted." In re Dow Corning Corp., 211 B.R. 545, 560-61 (Bankr. E.D.Mich. 1997) (finding cause did not exist to estimate mass tort claims in lieu of liquidation).

28. To be sure, courts have broad discretion in estimating claims, but a court's estimation method must be consistent with the fundamental policy of chapter 11 and be best suited to the circumstances of the case. See In re Armstrong World Indus., Inc., 348 B.R. 111, 123 (D. Del. 2006) (holding that the "'principal consideration,' in an estimation proceeding, 'must be an accommodation to the underlying purposes of the Code.'") (citations omitted); In re G-I Holdings, Inc., Nos. 01-30135, 01-38790, 2006 WL 2403531 (Bankr. D.N.J. Aug. 11, 2006) (finding that "[i]n general, a bankruptcy court has discretion to determine the appropriate method of estimation in light of the particular circumstances of the bankruptcy case before it.").

29. Thus, "[w]hile the clearly stated purpose of allowing for such estimation is 'to avoid undue delay in the administration of bankruptcy proceedings,'" Section 502(c) is also designed "to promote a *fair distribution to creditors* through a realistic assessment

of uncertain claims." In re Enron, No. 01-16034 (AJG), 2006 WL 544463, at *3 (Bankr. S.D.N.Y. Jan. 17, 2006) (quoting In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993) (emphasis added). To that end, courts have held that for claims estimation purposes, claims are to be appraised on the basis of what would have been a fair resolution of the claims in the absence of bankruptcy. See Owens Corning v. Credit Suisse First Boston, 322 B.R. 719, 722 (D. Del. 2005) (finding that "claims are to be appraised on the basis of what would have been a fair resolution of the claims in the absence of bankruptcy.").

30.     Debtor requests that the Court estimate CSXR's Claim and that of other similarly situated creditors for the purposes of setting a <u>maximum</u> allowable amount of the Claim. "The Debtors request that any Estimable Claim estimated by this Court *never be allowed in an amount in excess of the estimated amount of such claim*." Debtors' Third Omnibus Objection, ¶ 39 (emphasis added). Although Debtors' proposed estimation procedures would prevent CSXR from obtaining an amount in excess of the estimated amount, Debtors' "reserve all of their rights with respect to such Estimable Claims, including, without limitation, the right to object to the Estimable Claims on any basis whatsoever, as well as the *right to seek to reduce the estimated amount of the Estimable Claim*." Id., ¶ 40 (emphasis added).

31.     Debtors' one-sided estimation procedures contradicts the underlying purpose of Section 502(c) -- the promotion of a fair distribution to creditors. Debtors seek to set a cap on CSXR's claim without also having that number serve as the floor for the Estimable Claim. This self-serving procedure places CSXR at a disadvantage in the distribution of its Claim. If Debtor is going to insist on an early and expedited estimation

of CSXR's claim, that estimation should determine the amount of the claim for all purposes. Alternatively, if the estimation will only set a cap on the amount of the claim, the Court should make clear that the estimation will determine not the expected amount of the claim, but the highest amount that will be reasonably likely when the claim is liquidated. Accordingly, should Debtor have the opportunity to reduce the Estimated Claim according to its proposed estimation procedures, distribution to CSXR would still fall within a fair range of value.

## CONCLUSION

32. The Debtors' have not met their burden in order to object to the Proof of Claim. The single-line reference to CSXR's Claim that set forth in Exhibit C-1 to the Objection is insufficient and does not outweigh the presumptive validity of the Proof of Claim and, for that reason alone, the Objection should be overruled. Moreover, the elements of CSXR's claim are supported by the factual record and applicable law. Additionally, to the extent CSXR's Claim may be subject to estimation, the estimate procedures proposed by Debtors' Motion are fundamentally one-sided and unfair and should be overruled or modified.

Wherefore, CSXR respectfully requests that the Court enter an order (i) overruling the Objection with respect to CSXR's Proof of Claim, (ii) deny Debtor's requested estimation procedures, (iii) overruling the Claim Objection and Estimation Procedures Motion, and (iv) granting such other and further relief as the Court deems just and appropriate.

## **MEMORANDUM OF LAW**

33. Because the legal points and authorities upon which this Response relies are incorporated herein, CSXR respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

Dated: November 22, 2006
        Washington D.C.

                                Respectfully submitted,

                                */s/ Joel M. Gross*

                                ARNOLD & PORTER LLP
                                Joel M. Gross (JG 5229)
                                555 Twelfth Street, N.W.
                                Washington, D.C. 20004-1206
                                Tel: (202) 942-5000
                                Facsimile: (202) 942-5999

                                *Attorney for CSX Realty LLC*

# CERTIFICATE OF SERVICE

I certify that on the 22 day of November, 2006, I caused a copy of the **RESPONSE AND OBJECTION OF CSX REALTY DEVELOPMENT LLC TO DEBTORS' (I) THIRD OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) CLAIMS WITH INSUFFICIENT DOCUMENTATION, (B) CLAIMS UNSUBSTANTIATED BY DEBTORS' BOOKS AND RECORDS, AND (C) CLAIMS SUBJECT TO MODIFICATION AND (II) MOTION TO ESTIMATE CONTINGENT AND UNLIQUIDATED CLAIMS PURSUANT TO 11 U.S.C. § 502(c)** to be served *via* express overnight delivery to be received by 4 pm on November 24, 2006 upon

General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, MI  48098-2815
Phone: (248) 813-2000

John William Butler, Jr., Esq.
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL  60606-1220
Phone: (312) 407-0590

Kenneth S. Ziman, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017-3954
Phone: (212) 455-2000

Marlane Melican, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY  10017-3911
Phone: (212) 450-4000

Robert J. Rosenberg, Esq.
Mark A. Broude, Esq.
Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, NY  10022-4834
Phone: (212) 906-1200

Bonnie Steingart, Esq.
Fried Frank Harris Shriver & Jacobson LLP
One New York Plaza
New York, NY  10004-1980
Phone: (212) 859-8000

Alicia M. Leonhard, Esq.
Office of the U.S. Trustee for
  the Southern District of New York
33 Whitehall Street
Suite 2100
New York, NY  10004
Phone: (212) 510-0500

                                                            */s/ Joel M. Gross*
                                                            Joel M. Gross