( FINAL + EXECUTED )

Warehouse Lease/GMC Lessee
GMC876.DOC - Revised 4/98

# L E A S E



**THIS LEASE,** made as of the 28th day of September, 1998, between **JOHN E. BENZ,** with his principal address c/o John E. Benz & Co., 3017 Exchange Court, Suite A, West Palm Beach, Florida 33409, hereinafter referred to as Lessor, and **GENERAL MOTORS CORPORATION,** a Delaware corporation, with its principal address at 3044 West Grand Boulevard, Detroit, Michigan 48202, hereinafter referred to as Lessee,

## W I T N E S S E T H :

1. **BASIC LEASE PROVISIONS:** This Section contains or refers to certain basic provisions of this Lease (the "Basic Lease Provisions"). Other sections of this Lease explain, define, and are to be read in conjunction with the Basic Lease Provisions.

    1.1    <u>Lessor</u>:        John E. Benz

                        Rents shall be made payable to John E. Benz

                        Notice and Rental Payments shall be sent as follows:
                        John E. Benz
                        c/o John E. Benz & Co.
                        3017 Exchange Court, Suite A
                        West Palm Beach, FL 33409

    1.2    <u>Lessee</u>:        General Motors Corporation
                        3044 West Grand Boulevard
                        Detroit, MI 48202

    1.3    <u>Premises</u> (See Section 2):

        (a)    Address:       3535 Kettering Boulevard
                        Moraine, Ohio

        (b)    Legal Description of real property improved with Lessor's building (collectively, the "Premises"): See Exhibit "A"

        (c)    Physical Description: Approximately 312,000 square feet of office and warehouse space. See Exhibit "B".

        (d)    Use: In consideration of the undertakings of the parties contained herein, Lessor leases to Lessee, and Lessee leases from Lessor, an office, light manufacturing, and a warehouse facility requiring loading and unloading, outside parking, and storage, or any purpose not inconsistent with the present character and use of the Premises.

    1.4    <u>Term</u>:

(a)    Primary Term (See Section 3.1):  A period commencing on October 1, 1998 (the "Commencement Date"), and ending at 12:00 midnight on the last day of the sixty-sixth (66th) calendar month following the calendar month during which the Commencement Date shall have occurred.  As used herein, the term "Lease Year" shall mean a period of twelve (12) consecutive months, except that the first Lease Year shall commence on the Commencement Date and shall end at 12:00 midnight on the last day of the twelfth (12th) calendar month following the calendar month during which the Commencement Date shall have occurred.  It is understood and agreed, however, that Lessee shall have the right to occupy the Premises without payment of rent set forth in Section 1.5 from the Commencement Date through March 31, 1999.  With the exception of said free rent, all other terms and conditions of the lease shall apply during said rent free period.

(b)    Option(s) to Extend [See Section 3.2 Section 18.4 (a)]:

    (i)    Extension Terms:  Two (2) five (5) year renewal options:

        1st option:    Lease Years 6 - 10
        2nd option:    Lease Years 11 - 15

    (ii)    Exercise Date(s):  Two hundred seventy (270) days prior to the expiration of the Primary Term and each Extension Term.

1.5    Rent:

    (a)    Primary Term (See Section 4):  Monthly installments of $58,333.33 which shall commence on April 1, 1999 (the first six (6) months of the Primary Term being free of such monthly installments).

    (b)    Option(s) to Extend [See Section 3.2 and Section 18.4 (a)]:

        1st option:    Monthly installments of $65,000.00
        2nd option:    Monthly installments of $71,666.67

1.6    Broker (See Section 18.9):    Ostendorf - Morris Colliers, Inc.
                                   525 Vine Street, Suite 1700
                                   Cincinnati, OH  45202

2.    PREMISES: The Premises shall consist of:

(a)    Exclusive use of Lessor's building and all adjoining exterior loading, parking, and drive areas;

(b)    The right to use the roof of Lessor's building for the purpose of installing a satellite dish for Lessee's communication system (See Section 39).

- 2 -

(c)   If Lessor desires to sell the Premises during the Term of this Lease, Lessor shall, in each case, inform Lessee by notice under Section 26 hereof.

**3.   TERM:**

3.1   <u>Primary Term</u>:  The primary term of this Lease shall be for the period specified in Section 1.4 (the "Primary Term") unless this Lease shall be earlier terminated as hereinafter provided.

3.2   <u>Extension Terms</u>:  Lessee shall have the right and option to extend the Primary Term for extension terms as set forth in Section 1.4 (the "Extension Terms"), upon the same terms and conditions of this Lease, except as otherwise provided in Section 1.5.  Lessee shall deliver to Lessor notice of its election so to extend the Primary Term on or before the respective Exercise Dates set forth in Section 1.4.

3.3   <u>Term of this Lease</u>:  The Primary Term and all Extension Terms elected by Lessee sometimes shall be referred to collectively hereinafter s the "Term of this Lease".

**4.   RENT:**  During the Term of this Lease, Lessee shall pay rent to Lessor at the address set forth in Section 1.1, or at such other address as Lessor may designate in writing at any time or from time to time, in monthly installments as set forth in Section 1.5 (the "Rent"). Such monthly installments of Rent shall, subject to Section 1.4 (a), be payable in advance on or before the Commencement Date and on or before the first business day of each calendar month thereafter.  Rent for partial months at the inception or the termination of the Lease shall be prorated.  The term "Rent" shall also include additional rent and other charges payable hereunder.  Each and every installment of Rent which shall not be paid when due shall bear interest at the lesser of the highest rate then payable by Lessee in the state in which the Premises are located, or at a rate per annum equal to two percent (2%) in excess of the announced base rate of interest of American National Bank and Trust Company of Chicago in effect on the due date of such payment, from the date when the same is payable under the terms of this Lease until the same shall be paid.

**5.   REAL ESTATE TAXES AND ASSESSMENTS:**  Lessee shall pay (after receipt of any such tax bill from Lessor and prior to the date of delinquency) as additional Rent for the Premises, all taxes and assessments, general and special, water rates and all other impositions, ordinary and extraordinary, of every kind and nature whatsoever, which may be levied, assessed, charged or imposed during the term of the Lease upon the Premises, or any part thereof, or upon any improvements at any time situated thereon ("Impositions"); provided, however, that Impositions levied against the Premises shall be prorated between Lessor and Lessee as of the Commencement Date for the first year of the Lease term and as of the expiration of the Lease term for the last year of the Lease term (and shall be paid by Lessee upon such expiration based on Lessor's reasonable estimate thereof).  Impositions shall also include fees and costs incurred by Lessor during or prior to the Lease term for the purpose of contesting or protesting tax assessments or rates, to the extent such fees and costs relate to savings realized during the term of the Lease and any extension thereof.  Lessee may take the benefit of the provisions of any statute or ordinance permitting any assessment to be paid over a period of years, and Lessee shall be obligated to pay only those installments falling due during the term of this Lease.

-3-

**ALTERNATIVE TAXES:** If at any time during the term of this Lease the method of taxation prevailing at the commencement of the term hereof shall be altered so that any new tax, assessment, levy, imposition or charge, or any part thereof, shall be measured by or be based in whole or in part upon the Lease, or the Premises, or the Annual Rent, additional rent or other income therefrom and shall be imposed upon the Lessor, then all such taxes, assessments, levies, impositions, or charges, or the part thereof, to the extent that they are so measured or based, shall be deemed to be included within the term Impositions for the purposes hereof to the extent that such Impositions would be payable if the Premises were the only property of Lessor subject to such Impositions, and Lessee shall pay and discharge the same as herein provided in respect of the payment of Impositions. There shall be excluded from Impositions all federal income taxes, state and local net income taxes, federal excess profit taxes, franchise, capital stock and federal or state estate or inheritance taxes of Lessor.

6.    **UTILITIES:** During the Term of this Lease, Lessee shall arrange and pay for all utility services consumed by Lessee upon the Premises on or before their due date, including without limitation gas and electricity, sanitary and storm sewer, water, and telephone services. To the extent that any utility services supplied to the Premises are billed directly to Lessor, Lessee shall likewise pay, after Lessor's delivery to Lessee of any bill therefor, for such utility services which are attributable to Lessee's use of the particular utility service.

7.    **IMPROVEMENT WORK:**

**ROOF:** Lessee shall at its expense replace the roof on or before September 30, 1999, in accordance with those specifications prepared by General Motors Corporation, dated September, 1998, and attached hereto as Exhibit "C". A ten (10) year bond on said roof (assignable to Lessor if Lessee fails to exercise its option to purchase within the term of said bond) shall be delivered to Lessor and Lessee upon completion of the roof. The certification by General Motors Corporation that the work described in said specifications has been substantially completed in accordance therewith shall be binding and conclusive on Lessor and Lessee.

**PAINTING:** Lessee shall, at its expense, repaint the exterior of the Premises in colors as selected by Lessee, and in accordance with Lessee's specifications set forth in Exhibit "D".

8.    **LESSEE IMPROVEMENTS:** Except as to structural improvements (for which Lessor's reasonable written consent is required) and the replacement at Lessee's expense of the roof and HVAC systems servicing the building, Lessee, at its sole cost and expense, shall have the right but shall not be obligated prior to and during the Term of this Lease to improve, alter, and renovate the Premises in any manner which Lessee deems necessary or desirable to make the same fit and suitable for the conduct of its business operations, including without limitation painting, decorating, redecorating, and installing partitions, floor coverings, wall coverings, drop ceilings, and light fixtures. Lessee shall perform all work described in this Section according to the standards set forth in Section 18.1(b). Unless otherwise agreed in writing by the parties and subject to Section 9 below, any improvements, alterations, and renovations made to the Premises by Lessee pursuant to

-4-

this Section shall remain on the Premises upon the expiration or earlier termination of this Lease.

9.   **TRADE FIXTURES; PERSONAL PROPERTY:**  Lessee, at its sole cost and expense, shall have the right, without Lessor's consent, to install, use, replace, substitute, or remove its trade fixtures and personal property including, without limitation, telephone, teletype and other equipment, machinery, conveyor systems, docks, dock levelers, task lights, office furniture, and its satellite dish.  Upon the expiration of the term or the earlier termination of this Lease, Lessee shall have the right to remove its trade fixtures and personal property from the Premises, provided that Lessee shall repair all damage to the Premises resulting from such removal.

10.   **MAINTENANCE AND REPAIRS BY LESSOR:**

10.1   Lessor, at its sole cost and expense, shall perform during the Term of this Lease all necessary maintenance, repairs, and replacements to the structure and exterior of Lessor's building, including without limitation the exterior walls and foundations, in accordance with the standards set forth in Section 18.1 (a) and shall have no other maintenance, repair, and replacement obligations hereunder.

10.2   Timely Performance:  In the event of an emergency (defined as any condition other than damage or destruction described in Section 14 or eminent domain described in Section 15 which impairs Lessee's ability to use and occupy the Premises for the conduct of its business operations) and Lessor's failure to perform promptly any of Lessor's maintenance, repair, and replacement obligations as described in Sections 10.1 and 10.2, or in the event of no emergency and Lessor's failure to perform such maintenance and repair obligations within fifteen (15) days after Lessee's delivery to Lessor of notice of the need for any such maintenance or repairs, Lessee shall have the rights and remedies to which Lessee may be entitled under Section 17.

11.   **MAINTENANCE AND REPAIRS BY LESSEE:**  Lessee, at its sole cost and expense during the Term of this Lease, shall maintain, repair, and replace the land and building (excluding the obligations of Lessor as set forth in Article 10.1), including without limitation roof, roof membranes, roof vents, drains and downspouts, heating, ventilating, air conditioning, lighting, electrical, plumbing, gas, water, sanitary sewers, storm sewers and storm drainage systems, sprinkler system, telephone lines, underground and overhead electrical supply, fencing, landscaping, and parking surfaces. If Lessee fails to perform its maintenance and repair obligations within fifteen (15) days after Lessor's delivery to Lessee of notice of the need for any such maintenance and repairs, the Lessor shall have the right, upon delivery of three (3) business days notice to Lessee, to perform all or part of such maintenance and repairs, at the sole cost and expense of Lessee, and Lessee shall reimburse Lessor for such costs and expenses within thirty (30) days after Lessor's delivery to Lessee of an invoice therefor.

12.   **INSURANCE:**  Lessee shall procure and maintain policies of insurance, at its own cost and expense, insuring:

(a)     Lessor, Lessor's Mortgagee, if any, of which Lessee is given written notice, and Lessee from all claims, demands or actions made by or on behalf of any person or persons, firm or corporation and arising from, related to, or connected with the Premises for bodily injury to or personal injury to or death of any person, or more than one (1) person, or for damage to property in an aggregate amount of not less than $2,000,000.00 per location and an occurrence limit of not less than $2,000,000.00 combined single limit. Said insurance shall be written on an "occurrence" basis and not on a "claims made" basis. Lessee shall have the right, exercisable by giving written notice thereof to Lessee, to require Lessee to increase such limit if, in Lessor's reasonable judgment, the amount thereof is insufficient to protect Lessor and Lessee from judgments which might result from such claims, demands or actions.

(b)     Lessor and Lessee in the amount of $250,000.00 against loss or damage from external explosion or breakdown of boilers, air conditioning equipment and miscellaneous electrical apparatus, if any, on the Premises.

(c)     Lessee from all worker's compensation claims.

(d)     Flood insurance whenever, in the judgment of Lessor, such protection is necessary and it is available.

(e)     All contents, and Lessee's trade fixtures, machinery, equipment, furniture and furnishings in the Premises to the extent of at least one hundred percent (100%) of their replacement cost under broad form named perils coverage insurance.

Lessor shall procure and maintain policies of insurance, insuring the improvements at any time situated upon the premises under "all risk coverage insurance" (including vandalism and malicious mischief) for an amount equal to but not less than one hundred percent (100%) of the fair replacement cost and excess replacement of the improvements to the Premises, written on a replacement cost and excess replacement cost basis, and with a replacement cost endorsement (without depreciation) and an agreed amount endorsement pertaining to the co-insurance clause. Lessor shall be named as the insured and all proceeds of insurance shall be payable to Lessor. Lessee shall pay the cost of such insurance within ten (10) days of being invoiced therefor.

The aforesaid insurance shall be in companies and in form, substance and amount (where not stated above) satisfactory from time to time to Lessor and any mortgagee of Lessor, and shall contain standard mortgage clauses satisfactory to Lessor's mortgagee. The aforesaid insurance shall unconditionally provide that it is not subject to cancellation or non-renewal except after at least thirty (30) days prior written notice to Lessor, and any mortgagee of Lessor.

Whenever (i) any loss, cost, damage or expense resulting from fire, explosion or any other casualty or occurrence is incurred by either of the parties of this Lease, or anyone claiming by, through, or under it in connection with the Premises; and (ii) such party is then covered in whole or in part by insurance with respect to such loss, cost, damage or expense or is required under this Lease to be so insured,

- 6 -

by Lessee for the conduct of its business operations shall be reduced, in Lessee's sole judgment.

## 15.  **EMINENT DOMAIN:**

15.1  Repair and Restoration:  In the event that all or any portion of the Premises shall be taken or threatened to be taken under the power of eminent domain or settlement in lieu thereof for any public or quasi-public use, Lessor promptly shall deliver to Lessee notice thereof.  Unless terminated pursuant to Section 15.2, this Lease shall remain in full force and effect, and Lessor, at its sole cost and expense, shall exercise good faith and diligent efforts promptly to repair the damage and restore the Premises so as to constitute the remaining portion thereof a complete architectural unit.  If Lessee remains in occupancy of the Premises, Lessor shall exercise such repair and restoration efforts in a manner so as not to interfere unreasonably or materially with the use and occupancy of the Premises by Lessee for the conduct of its business operations.  Until the completion of Lessor's repair and restoration pursuant to this Section, Lessee's obligation to pay Rent and other amounts payable by Lessee hereunder shall be abated as of the date on which possession of the Premises or portion thereof shall be required by the public or quasi-public body in proportion to the extent that the value of the Premises for the use and occupancy thereof by Lessee for the conduct of its business operations shall be reduced, in Lessee's sole judgment.  Lessee shall be entitled to seek from the condemning authority the value of any Lessee fixtures and improvements and the value of Lessee's unexpired leasehold estate.  In the event Lessee shall elect to exercise its option to purchase the land and building, Lessor shall pay to Lessee all sums received by the condemning authorities.

15.2  Rights of Termination:  Lessee shall have the right to terminate this Lease upon the occurrence of a taking or a threatened taking under the power of eminent domain or settlement in lieu thereof, if, as a result thereof, the Premises no longer shall be fit and suitable for the use and occupancy thereof by Lessee for the conduct of its business operations by reason of a material reduction of any portion of the Premises, in which event Lessee may elect to terminate this Lease by delivery of notice to Lessor within thirty (30) days after the earlier of (i) Lessor's delivery to Lessee of notice regarding such taking or threatened taking; or (ii) the date on which possession of the Premises or portion thereof shall be required by the public or quasi-public body.  Upon delivery of any such notice, this Lease shall terminate as of the date on which such possession shall be required by the public or quasi-public body unless otherwise provided in such notice, and Lessee shall have no further liabilities or obligations hereunder other than to pay Rent accrued hereunder as of such date of termination.

## 16.  **DEFAULT; REMEDIES:**

16.1  Lessee's Default:  Each of the following events shall constitute a default of this Lease by Lessee (a "Lessee Default"):

-8-

(a)     The failure of Lessee to pay any Rent or other amount payable by Lessee hereunder within five (5) days after the date on which Lessee receives from Lessor notice specifically describing such failure; and

(b)     Subject to Section 11, the failure of Lessee to perform any other term, condition, covenant, or obligation of this Lease on the part of Lessee to be performed within thirty (30) days after the date on which Lessee receives from Lessor notice by certified or registered mail specifically describing such failure (see Section 16.3).

16.2    Lessor's Remedies:  Upon the occurrence of any one or more events of Lessee Default, Lessor may at its election terminate this Lease or terminate Lessee's right to possession only, without terminating the Lease.  Upon termination of the Lease, or upon any termination of Lessee's right to possession without termination of the Lease, Lessee shall surrender possession and vacate the Premises immediately, and deliver possession thereof to Lessor, and hereby grants to Lessor the full and free right, without demand or notice of any kind to Lessee (except as hereinabove expressly provided for), to enter into and upon the Premises in such event with process of law and to repossess the Premises as Lessor's former estate and to expel or remove Lessee and any others who may be occupying or within the Premises without being deemed in any manner guilty of trespass, eviction, or forcible entry or detainer, without incurring any liability for any damage resulting therefrom and without relinquishing Lessor's rights to Rent or any other right given to Lessor hereunder or by operation of law.  Upon termination of the Lease, Lessor shall be entitled to recover as damages all Rent and other sums due and payable by Lessee on the date of termination plus (a) an amount equal to the value, on an annual basis, of the excess (discounted to present value at six percent [6%] annually) of (i) the Rent and other sums provided herein to be paid by Lessee for the residue of the stated term hereof over (ii) the fair rental value of the Premises for the residue of the stated term taking into account the time and expenses necessary to obtain a replacement tenant or tenants, including expenses hereinafter described relating to recovery of the Premises, preparation for reletting and for reletting itself; and (b) the cost of performing any other covenants to be performed by Lessee.  If Lessor elects to terminate Lessee's right to possession only without terminating the Lease, Lessor may, at Lessor's option, enter on to the Premises, remove Lessee's signs and other evidences of tenancy, and take and hold possession thereof as hereinafter provided, without such entry and possession terminating the Lease or releasing Lessee, in whole or in part, from Lessee's obligations to pay the Rent and other sums provided herein to be paid by Lessee for the full term or from any other of its obligations under this Lease. Lessor may relet all or any part of the Premises for such Rent and upon such terms as shall be satisfactory to Lessor.  For the purpose of such reletting, Lessor may decorate or make any repairs, changes, alterations or additions in or to the Premises that may be necessary or convenient.  If Lessor does not relet the Premises, Lessee shall pay to Lessor on demand damages equal to the amount of the Rent, and other sums provided herein to be paid by Lessee for the remainder of the Lease term.  If the Premises are relet and a sufficient sum shall not be realized from such reletting after paying all of the expenses of such decorations, repairs, changes, alterations, additions, the expenses of such reletting and the

collection of the rent accruing therefrom (including, but not by way of limitation, attorneys' fees and brokers' commissions), to satisfy the Rent and other sums herein provided to be paid for the remainder of the Lease term, Lessee shall pay to Lessor on demand any deficiency and Lessee agrees that Lessor may file suit to recover any Rent or other sums falling due under the terms of this Section from time to time. Lessor shall use reasonable efforts to mitigate its damages arising out of Tenant's default.

16.3    <u>Lessee's Opportunity to Cure</u>:  If Lessee defaults under Section 16.1 (i), and such default cannot with due diligence be cured within a period of thirty (30) days, and if notice thereof in writing shall have been given to Lessee, and if Lessee, prior to the expiration of thirty (30) days from and after the giving of such notice, commences to eliminate the cause of such default and proceeds diligently and with reasonable dispatch to take all steps and do all work required to cure such default and does so cure such default, then a Lessee Default shall not be deemed to have occurred; provided, however, that Lessee's right to cure hereunder shall not extend beyond the expiration of the Lease term, and provided further that the curing of any default in such manner shall not be construed to limit or restrict Lessor's remedies for any other default which becomes a Lessee Default.

16.4    <u>Lessor's Right to Cure</u>:  Lessor may, but shall not be obligated to, cure any default by Lessee (specifically including, but not by way of limitation, Lessee's failure to obtain insurance, make repairs, or satisfy lien claims) and whenever Lessor so elects, all costs and expenses paid by Lessor in curing such default, including without limitation reasonable attorneys' fees, shall be so much additional rent due on the next rent date after such payment together with interest (except in the case of said attorneys' fees) at the lesser of the highest rate then payable by Lessee in the state in which the Premises are located, or at a rate per annum equal to two percent (2%) in excess of the announced base rate or equivalent rate of interest of American National Bank and Trust Company of Chicago (as publicly announced by said Bank) in effect on the date of such advance, from the date of the advance to the date of repayment by Lessee to Lessor.

16.5    <u>Remedies Cumulative</u>:  No remedy herein or otherwise conferred upon or reserved to Lessor shall be considered to exclude or suspend any other remedy but the same shall be cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law or in equity or by statute, and every power and remedy given by this Lease to Lessor may be exercised from time to time and so often as occasion may arise or as may be deemed expedient.

16.6    <u>No Waiver</u>:  No delay or omission of Lessor to exercise any right or power arising from any default shall impair any such right or power or be construed to be a waiver of any such default or any acquiescence therein.  No waiver of any breach of any of the covenants of this Lease shall be construed, taken or held to be a waiver of any other breach, or as a waiver, acquiescence in or consent to any further or succeeding breach of the same covenant.  The acceptance by Lessor of any payment of Rent after the termination by Lessor of this Lease or of Lessee's right to possession hereunder shall not, in the absence of agreement in writing to the contrary by Lessor, be deemed to restore this Lease or Lessee's right to

possession hereunder, as the case may be, but shall be construed as a payment on account, and not in satisfaction of damages due from Lessee to Lessor.

17.   **LESSOR'S DEFAULT AND LESSEE'S REMEDIES:**  In the event of any failure by Lessor to perform any term, condition, covenant, or obligation of this Lease on the part of Lessor to be performed within fifteen (15) days after the date on which Lessor receives from Lessee notice by certified or registered mail specifically describing such failure [provided, however, that if Lessor shall exercise in good faith diligent efforts within such fifteen (15) day period to cure the failure specified in the notice but shall not be able to do so because of a cause or causes beyond the control of Lessor, then any such failure shall not be considered a default of this Lease by Lessor so long as Lessor shall continue to exercise in good faith such diligent efforts to cure such failure and shall do so within a reasonable period of time), Lessee (in addition to all other rights and remedies to which Lessee may be entitled under this Section, elsewhere hereunder or at law or in equity) may cure such default by Lessor on behalf of, and at the sole cost and expense of Lessor, including a supervision charge of seven percent (7%) of all costs and expenses incurred by Lessee, and Lessor shall reimburse Lessee for its costs and expenses in connection therewith within thirty (30) days after Lessee's delivery to Lessor of an invoice therefor, failing which Lessee may offset such costs and expenses against fifty percent (50%) of the installments of Rent under Section 1.5 as and when the same become due and payable.

18.   **WARRANTIES AND REPRESENTATIONS:**

18.1   Compliance with Laws:

(a)   Lessor warrants and represents for the benefit of Lessee that Lessor's improvements and maintenance and repairs under Section 10.1 shall be done in a good and workmanlike manner and comply with all laws, ordinances, and requirements, including without limitation the procuring of all building and other permits, licenses, approvals, and certificates of occupancy and the observance of applicable building, zoning, and other code requirements of governmental authorities with competent jurisdiction.

(b)   Lessee represents and warrants for the benefit of Lessor that Lessee's maintenance, repairs, and replacements, and its use and occupancy of the Premises for the conduct of its business operations shall comply with all applicable laws, ordinances, and requirements of governmental authorities with competent jurisdiction; provided, however, that no alleged violation by Lessee of any such law, ordinance, or requirement shall be deemed to constitute a Lessee Default so long as Lessee shall contest, in good faith, the validity of such law, ordinance, or requirement or the existence of the alleged violation thereof.  If required by any law, ordinance, or requirement in effect at the time, Lessor shall join in any proceedings initiated by Lessee pursuant to this Section 18.1(b) or permit the same to be brought in its name, as applicable, provided that Lessee shall pay all costs and expenses in connection therewith, including reasonable costs and expenses incurred by Lessor.

- 11 -

18.2    Warranty of Title: Lessor warrants and represents for the benefit of Lessee that (a) Lessor is the fee simple owner of the Premises with full authority to execute, deliver, and perform this Lease; and (b) as of the date of this Lease, no third party has any right, title, or interest adverse to Lessee's right, title, and interest hereunder in or to the Premises and no mortgage or deed of trust or other lien or restriction encumbers the Premises, except as set forth in Exhibit "E".

18.3    Underground Storage Tanks:

(a)    Lessor warrants and represents that there are two underground storage tanks ("USTs"), a 10,000 gallon diesel UST and a 1,000 gallon gasoline UST located on the eastern side of the warehouse, and that there may be another UST located on the northeastern corner of the warehouse. Lessee covenants and agrees that Lessee shall not install use or operate any USTs at the Premises during the Term of this Lease.

(b)    Notwithstanding anything herein to the contrary, Lessor covenants and agrees that Lessor shall, within sixty (60) business days from the commencement of this Lease, notify the applicable agency(ies) with jurisdiction over the matter and shall, in accordance with all Environmental Laws and section 18.4 (b) below, remove the two (2) USTs and any associated fuel delivery systems or equipment, remediate any and all soil and/or groundwater contamination associated with the USTs, and deliver to Lessee the appropriate clean closure certifications from the agency with jurisdiction over such USTs. Lessor shall also take all necessary steps to confirm the presence or absence of the third UST that may be located at the Premises, and, if present, shall take all necessary steps to complete closure of the third UST as well.

18.4    Environmental Condition:

(a)    (i)    The parties acknowledge and agree that at the commencement of this Term, Lessee is in the process of performing its due diligence activities at the Premises. Lessee's due diligence thus far, has been reported in the Phase I Environmental Site Assessment, dated August 6, 1998 from EnecoTech (the "Phase I ESA"), a copy of which has been delivered to Lessor. The Phase I ESA has identified the presence of several areas of environmental concern, including two "pits" located in the northeastern portion of the warehouse, the presence of trench-type floor drains, and unlabeled drums, surface staining and debris throughout the interior and exterior of the warehouse.

(ii)    Lessee, at its sole discretion, shall perform a Phase II Environmental Site Assessment. In the event the Phase II ESA identifies the presence of any Hazardous Materials (as defined below) in violation of any applicable Environmental Laws (as defined below), Lessee shall promptly provide notice to Lessor of the violation, and deliver a copy of the Phase II ESA to Lessor.

- 12 -

Lessor may, at its option and expense, elect to report and remedy such violation, and if Lessor does not elect to report and remedy, then Lessee in such event may, at its option, report and perform the required remediation at its cost, or forego the option to purchase the land and building as set forth in Section 38 and the existing options to extend the Lease as set forth in Section 1.4 (b), and Section 3 shall be amended to provide for an addition of three (3) five (5) year renewal options at a monthly rental rate of $78,833.33 for the first renewal period (Lease Years 16-20), $86,716.67 for the second renewal period (Lease Years 21-25), and $95,388.33 for the third renewal period (Lease Years 26-30).

If Lessor elects to conduct such remediation, Lessor shall diligently pursue all necessary steps to attain all cleanup standards set forth in all applicable Environmental Laws ("Lessor's Remediation").

(iii)  No fact or condition disclosed in the Phase II ESA shall constitute a breach of warranty by Lessor hereunder or a breach of any other term, condition or provision of this Lease. Lessor shall have no obligation under this Lease to report or remedy any matter disclosed therein and Lessee shall have no other rights or remedies with respect to the matters disclosed other than as set forth in subparagraph 18.4(a)(ii) of this Lease

(b)  Prior to the implementation of any Remediation by Lessor, Lessor shall provide Lessee with the proposed scope of work, a schedule for the completion of Lessor's Remediation, and estimated costs to perform Lessor's Remediation. Lessor shall provide Lessee with copies of all correspondence, notifications, reports, analyses and/or other information Lessor sends to or receives from any applicable agency, or is otherwise developed, in connection with Lessor's Remediation.

(c)  Lessee acknowledges and agrees that Lessor, if it chooses to remediate, will utilize the following factors in developing Lessor's Remediation: (a) Specific requirements, if any, under applicable Environmental Laws and, to the extent not specifically precluded by such Environmental Laws, consideration of (i) technical feasibility of the action(s), (ii) continued industrial use of the Real Property, and (iii) the following human health and environmental risk-based factors:  Likely exposure pathways consistent with such industrial use, typical simulated exposure distributions consistent with such exposures, fate and transport characteristics, local geology and hydrogeology and toxicity of the material(s) in question.

(d)  (i)  "Environmental Laws" means all federal, state and local laws, whether common laws, court or administrative decisions, statutes, rules, regulations, ordinances, court orders, and decrees and authority relating to the environment, public health, occupational

- 13 -

safety, industrial hygiene, any Hazardous Substances (including the disposal, generation, manufacture, presence, processing, production, release, storage, transportation, treatment or use thereof), or the environmental conditions on, under or about the Premises, as amended and as in effect from time to time.

(ii)     "Hazardous Substances" means all chemicals, materials and substances, exposure to which, or the release of which, is prohibited, limited or regulated by any governmental authority, including friable asbestos and asbestos-containing materials in any form, radioactive materials, polychlorinated biphenyls ("PCBs") and substances and compounds containing PCB's, petroleum and all derivatives thereof or synthetic substitutes thereof.

18.5   Environmental Warranty:  Except as disclosed in the Phase I ESA, Lessor warrants and represents to Lessee that Lessor has received no written notices, complaints or orders of violation of noncompliance with Environmental Laws concerning the Premises, and no federal, state or local environmental investigation is, to Lessor's knowledge, pending or to Lessor's knowledge, has been threatened against Lessor with regard to the Premises, any use thereof or any alleged violation of Environmental Laws with respect thereto; the Premises have not been used by Lessor nor, to its knowledge, have the Premises ever been used to manufacture, process, distribute, use, treat, store, dispose of, handle or transport any Hazardous Substances in any quantity or manner that violates or gives rise to liability under any Environmental Laws; and, to Lessor's knowledge, there are no Hazardous Substances present on the Premises in any quantity or manner that violates or gives rise to liability under any Environmental Laws.

18.6   Compliance by Lessee:  Lessee shall, at all times during the Lease term, comply with all environmental laws applicable to the Premises and shall not, in the use and occupancy of the Premises, cause or contribute to, or permit or suffer any other party to cause or contribute to any environmental condition on or about the Premises.

18.7   Environmental Indemnity:

(a)     Lessee will protect, indemnify, and save harmless Lessor from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs, and expenses (including, without limitation, reasonable attorneys' fees and expenses) of whatever kind or nature, contingent or otherwise, known or unknown, incurred or imposed, based upon any Environmental Laws or resulting from any environmental condition on or about the Premises which occurs or is contributed to during the Lease term.

(b)     Lessor will protect, indemnify, and save harmless Lessee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs, and expenses (including, without limitation, reasonable attorneys'

- 14 -

fees and expenses) of whatever kind or nature, contingent or otherwise, known or unknown, incurred or imposed, based upon any Environmental Laws or resulting from any environmental condition on or about the Premises which occurs on or about the Premises as a result of an environmental condition existing prior to the Lease term.

(c) The indemnification obligation created by this Section shall be expressly conditioned upon the party seeking indemnification (i) delivering to the other party prompt notice of any event giving rise to such indemnification obligation and (ii) providing such other party the opportunity to defend itself from and against any losses. The obligations of the parties under this Section shall survive the expiration or earlier termination of this Lease.

18.8    <u>Testing and Remedial Work</u>: Lessor may conduct tests on or about the Premises for the purpose of determining the presence of any environmental condition. If such tests indicate the presence of an environmental condition on or about the Premises which occurs or is contributed to during the Lease term, Lessee shall, in addition to its other obligations hereunder, reimburse Lessor for the cost of conducting such tests. Without limiting Lessee's liability hereunder, in the event of any such environmental condition, Lessee shall promptly and at its sole cost and expense, take any and all steps necessary to remedy the same, complying with all provisions of applicable law, or shall, at Lessor's election, reimburse Lessor for the cost to Lessor of remedying the same. The reimbursement shall be paid by Lessee to Lessor in advance of Lessor's performing such work based upon Lessor's reasonable estimate of the cost thereof, and upon completion of such work by Lessor, Lessee shall pay to Lessor any shortfall promptly after Lessor bills Lessee therefor, or Lessor shall promptly refund to Lessee any excess deposit, as the case may be.

18.9    <u>Broker's Commission</u>: Lessor and Lessee each warrant and represent for the benefit of the other, that it has not dealt with any real estate broker, finder, or agent in connection with this Lease other than the broker, finder, or agent identified in Section 1.6, for whose commission Lessor shall be responsible.

19.    **LESSOR'S RIGHT OF ENTRY:** Following reasonable notice to Lessee, Lessor may enter upon the Premises as often as Lessor reasonably may deem necessary for the purposes of performing such maintenance and repairs as Lessor may reasonably deem necessary or may lawfully be required to perform, inspecting the Premises, offering the Premises for lease [but only during the period which commences one hundred eighty (180) days prior to the expiration of the then existing Primary Term or Extension Term in the event that Lessee shall not have elected further to extend the Term of this Lease] or offering the Premises for sale. Lessor's right of entry shall be exercised in a manner and during reasonable hours at times such that there shall be no unreasonable or material interference with the use and occupancy of the Premises by Lessee for the conduct of its business operations.

20.    **MUTUAL INDEMNIFICATION:** Lessor and Lessee each agree to indemnify and hold the other harmless from and against any and all losses, damages, claims, suits, actions, judgments, liabilities, and expenses, including without limitation reasonable attorneys' fees

- 15 -

(collectively, "Losses"), arising out of or with respect to (a) any breach of any warranty or representation or any covenant or agreement of Lessor or Lessee, respectively, under this Lease; or (b) any injury to or death of persons and/or any damage to or destruction of property on or about the Premises and attributable to the negligence or misconduct of Lessor or Lessee, respectively, or their respective officers, employees, agents, contractors, or invitees, except for any such breach, any injury or death, or any damage or destruction arising out of with respect to the negligence or misconduct of the indemnified party or any of its officers, employees, agents, contractors, or invitees, or as otherwise specifically provided in this Lease; provided, however, that the indemnification obligation created by this Section shall be expressly conditioned upon the party seeking indemnification (i) delivering to the other party prompt notice of any event giving rise to such indemnification obligation and (ii) providing such other party the opportunity to defend itself from and against any losses.

21. **TRANSFERS:**

  21.1    Assignment and Subletting:  Except as provided in this Section, Lessee shall not assign this Lease nor sublet all or any portion of the Premises without the consent of Lessor, which consent shall not be unreasonably withheld or delayed; provided, however, that Lessee shall have the right, without the consent of Lessor, to assign this Lease or sublet all or any portion of the Premises to Delphi Automotive Systems, Inc., or to any General Motors Corporation wholly-owned subsidiary.  In the event of an assignment to Delphi Automotive Systems, Inc., Lessee shall be released from any prospective obligation or liability under this Lease provided that Delphi Automotive Systems, Inc., shall assume all of the obligations of Lessee under this Lease that shall accrue from and after the effective date of such assignment.    Otherwise and absent the written agreement of Lessor, no assignment of this Lease or subletting of all or any portion of the Premises shall relieve Lessee of any of the terms, conditions, covenants, and obligations of this Lease on the part of Lessee to be performed.

  21.2    Notice of Sale:  In the event that Lessor, at any time on or before the expiration of the Term of this Lease or the earlier termination of this Lease, shall transfer, assign, or otherwise convey to a third party all or any portion of its right, title, and interest in and to the Premises, Lessor shall deliver to Lessee notice of the name and address of the purchaser of such right, title, or interest at least ten (10) days prior to the closing of any such transaction.

22. **HOLDING OVER:**  If Lessee shall continue to occupy the Premises after the expiration of the Term of this Lease or the earlier termination of this Lease, then Lessee shall be deemed to be occupying the Premises as a tenant from month-to-month, subject to the terms and conditions of this Lease; provided, however, that either party shall have the right to terminate such month-to-month tenancy upon delivery of thirty (30) days notice to the other.

23. **QUIET ENJOYMENT:**  Lessor covenants and agrees that Lessee shall have the peaceful and quiet possession and enjoyment of the Premises (subject to all mortgages and other matters to which this Lease is or shall become subordinate in accordance with the

- 16 -

provisions of Section 24) for the conduct of its business operations during the Term of this Lease without hindrance by Lessor or any party whatsoever.

24.    <u>SUBORDINATION AND ATTORNMENT/ESTOPPEL:</u> (a) Lessee covenants and agrees, on the terms and conditions provided in this Section, that this Lease shall be subordinate to any institutional mortgage or deed of trust that now or hereafter shall encumber the Premises, provided that each named mortgagee or beneficiary shall execute and deliver to Lessee a non-disturbance, attornment and subordination agreement stating (in addition to other reasonable terms, if any) in substance that (i) if Lessee is not in default hereunder, the right of possession of Lessee to the Premises shall not be affected or disturbed by any mortgagee in the exercise of any of its rights under a mortgage or the note secured thereby, and any sale of the Premises pursuant to the exercise of any rights and remedies under a mortgage or otherwise shall be made subject to Lessee's right of possession to the Premises under this Lease; and (ii) Lessee shall attorn to any mortgagee or purchaser at a foreclosure sale (a "Purchaser) upon acquisition of title to the Premises by a mortgagee or Purchaser and notice to Lessee thereof, and this Lease shall continue in full force and effect between Lessee and such mortgagee or Purchaser.   Upon Lessee's receipt and approval of such a non-disturbance/attornment agreement from a mortgagee or beneficiary from time to time, Lessee covenants and agrees to attorn to such mortgagee or beneficiary upon foreclosure.   Without limiting the generality of the foregoing, within thirty (30) days after the date of this Lease, Lessor shall deliver to Lessee such a non-disturbance/attornment agreement from the mortgagee and beneficiary of each mortgage and deed of trust, respectively, including without limitation all mortgages and deeds of trust set forth in Exhibit "E", now encumbering the Premises.   If Lessor shall fail to obtain any such non-disturbance/attornment agreement within such thirty (30) day period, or if the form thereof shall not be reasonably acceptable to Lessee, then Lessee may, at its option, deem such failure a Lessor default subject to Section 17.

(b)   In the event that estoppel certificates now or hereafter may be required by any purchaser, mortgagee or beneficiary of any mortgage or deed of trust, respectively, encumbering the Premises, Lessee further covenants and agrees to execute certificates containing the substance of the following statements (together with other reasonable terms, if any):   (i) that the copy of the Lease attached to the certificate is a true and complete copy of the Lease and there are no amendments, modifications, or alterations of the Lease, except as stated; (ii) that the Premises required to be furnished under the Lease have been completed in accordance therewith, the date on which Lessee accepted possession of such Premises and that Lessee now occupies the same; (iii) that Lessee began paying monthly installments of rent under the Lease on a given date and no such installment has been paid more than one month in advance; and (iv) that the Lease is in full force and effect, and, except as noted, there exists to Lessee's knowledge no defense or offset to enforcement of the Lease by Lessor, and to Lessee's knowledge Lessor is not in default under the Lease.

25.    <u>SURRENDER OF PREMISES:</u>   Upon the expiration of the Term of this Lease or the earlier termination of this Lease, Lessee shall deliver up and surrender the Premises to Lessor in as good order and condition as upon the Lessee possession date, subject to (a) Lessee's improvements, alterations, and renovations to the Premises; (b) normal wear and tear; (c) damage by fire, explosion, or other insurable casualty; and (d) Lessee's removal of its trade fixtures.

26.  **NOTICES; COMPUTATION OF TIME:**  For the purposes of payments of Rent and other amounts payable by Lessee to Lessor hereunder and notices and other communications between the parties, the addresses of Lessor and Lessee shall be as follows:

Lessor:        At the address shown in Section 1.1

Lessee:        At the address shown in Section 1.2
    With a copy to:        General Motors Corporation
                           c/o Worldwide Real Estate
                           485 West Milwaukee Avenue
                           MC 482-309-939
                           Detroit, MI  48202
                           Attention:  General Director

Any notices and other communications to be delivered by either party to the other pursuant to this Lease shall be in writing and shall be deemed delivered as follows, except as otherwise specifically provided in this Lease: (a) One (1) business day after mailing by Federal Express or other overnight courier service; or (b) three (3) business days after deposit (or, in the case of any notices sent by Lessee to Lessor for the purpose of exercising rights of first refusal and rights and options to extend the Primary Term or any Extension Term, to lease any additional portion of the Premises or to purchase any portion of the Premises or Lessor's right, title, and interest therein, upon deposit) in the United States mail by certified mail, postage prepaid, return receipt requested, addressed to the party to be charged with notice at the above-recited address or the above-recited telecopier number or such other address or telecopier number as either party from time to time may designate by notice delivered to the other; provided, however, that no notice of change of address or telecopier number shall be deemed given until received by the party to be notified.

27.  **ENTIRE AGREEMENT; AMENDMENTS:**  This Lease contains the entire agreement between the parties and no promise, representation, warranty, covenant, agreement, or understanding not specifically set forth in this Lease shall be binding upon or inure to the benefit of either party.  This Lease may not be amended, altered, modified, or supplemented in any manner except by an instrument in writing duly executed by the parties.

28.  **GOVERNING LAW; INTERPRETATION:**  This Lease shall be construed and enforced in accordance with the laws of the state in which the Premises shall be located.  The fact that this Lease shall have been prepared by the attorney for either Lessor or Lessee shall not be used to construe or interpret this Lease for or against either party; the parties intend that the provisions of this Lease shall be given their fair meaning and no court shall construe this Lease more stringently against one party than against the other.

29.  **AUTHORITY; BINDING EFFECT:**  If Lessor or Lessee shall be a corporation, trust, or general or limited partnership, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of such entity.  The provisions of this Lease shall be binding upon and shall inure to the benefit of the parties and their respective heirs, executors, administrators, personal and legal representatives, successors, and assigns.

- 18 -

30. **NO WAIVER:** The failure of Lessor or Lessee to insist upon strict performance of any of the terms, conditions, covenants, and obligations contained in this Lease shall not be deemed a waiver of any rights or remedies for any subsequent breach or default in the terms, conditions, covenants, and obligations herein contained.

31. **RECORDING:** If Lessor or Lessee requests, the parties shall execute and acknowledge a short form of lease in the form attached as Exhibit "F" for recording purposes, which short form of lease shall be recorded at the expense of the party requesting the same, which party shall pay any documentary transfer tax or other special tax or assessment associated with or triggered by such recording.

32. **SIGNS:** Lessee shall have exclusive sign rights for the Premises, exterior and interior, and shall have the right to erect and display signs on the Premises and on such other areas of the Premises as Lessee reasonably may request, subject only to compliance with applicable laws, ordinances, and requirements of governmental authorities with competent jurisdiction.

33. **INCORPORATION OF EXHIBITS:** Each of the attached Exhibits hereby is incorporated in and made a part of this Lease as if set forth herein. In the event of any conflict between the body of this Lease and the provisions set forth in the Exhibits, the provisions set forth in the Exhibits shall be deemed to control.

34. **SECTION HEADINGS:** The section headings hereof are intended for convenience and reference purposes only and shall not be used to construe or interpret this Lease.

35. **SEVERABILITY:** If any provision of this Lease shall be determined by any court to be invalid, illegal, or unenforceable to any extent, then the remainder of this Lease shall not be affected, and this Lease shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in this Lease.

36. **TRANSMITTAL:** Submission of this Lease for examination, even though executed by Lessor or Lessee, shall not bind the other party in any manner, and no lease or other obligation on the part of either party shall arise until this Lease shall be executed and delivered by the parties, each to the other.

37. **COUNTERPARTS:** This Lease may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

38. **OPTION TO PURCHASE:**

    38.1 <u>Grant of Option</u>: Lessor hereby gives and grants to Lessee the option ("Option") of purchasing the Premises, provided that Lessee is not in material default under the terms of this Lease up to and including the Closing Date (as hereinafter defined).

    38.2 <u>Expiration Date</u>: This Option shall expire, unless exercised before the beginning of the fifth lease year, before the beginning of the tenth lease year, and before

the beginning of the fifteenth lease year.  The first lease year shall commence on the Commencement Date.

38.3    <u>Method of Exercise</u>:  This Option shall be exercised, if at all, by Lessee (i) notifying Lessor in writing of Lessee's exercise of such Option; and (ii) delivering to Lessor the sum of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) as Lessee's good faith deposit.

38.4    <u>Failure to Exercise</u>:  If Lessee does not exercise this Option as herein provided, the same shall expire and neither party shall have any further rights or claims against the other as optionor or optionee.

38.5    <u>Closing Date</u>:  If the Option is exercised, Lessee shall complete the purchase of the Premises on the Closing Date (as hereinafter defined), unless mutually agreed otherwise, at the office of the title insurer approved by Lessee.  The Closing Date shall be the last day of the fifth lease year if the Option is exercised prior to the commencement of the fifth lease year.  The Closing Date shall be the last day of the tenth lease year if the Option is exercised prior to the tenth lease year.  The Closing Date shall be the last day of the fifteenth lease year if the Option is exercised prior to the fifteenth lease year.

38.6    <u>Purchase Price</u>:  If the Option shall be exercised as set forth in Paragraph 38.3 above, Lessor shall sell to Lessee and Lessee shall purchase the Premises from Lessor for a purchase price of SIX MILLION TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($6,200,000.00).  The Premises shall be purchased for cash and without prorations.

38.7    <u>Conveyance</u>:  Title to the Premises shall be conveyed by Special Warranty Deed.

38.8    <u>Title Insurance - Failure of Title</u>:  Lessor shall deliver or cause to be delivered to Lessee not less than sixty (60) days prior to Closing Date, a commitment for an owner's title insurance policy issued by a title company reasonably approved by Lessee in the amount of the purchase price of the Premises, covering title to the Premises on or after the date of the exercise of the Option, showing title in the intended grantor subject only to those title exceptions shown on Exhibit "E" or resulting from the acts of Lessee (the "Permitted Exceptions").

If the title commitment discloses unpermitted exceptions, Lessor shall have fifteen (15) days from the date of delivery thereof to have the exceptions removed from the commitment or to have the title insurer commit to insure against loss or damage that may be occasioned by such exceptions.  If Lessor shall fail to have the exception removed or corrected or in the alternative, to obtain the commitment for title insurance specified above as to such exceptions within the specified time, Lessee may elect not to purchase the Premises or may elect, upon notice to Lessor within thirty (30) days after the expiration of a fifteen (15) day period, to take title to the Premises as it then is with the right to deduct from the purchase price liens or encumbrances of a definite or ascertainable amount.  If Lessee does not elect to take title to the Premises with the right to

deduct from the purchase price liens or encumbrances of a definite or ascertainable amount, then this Option shall become null and void without further action of the parties, the parties shall have no liability with respect to each other concerning the Premises, and the FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) referred to in Paragraph 38.3 above shall be returned to Lessee within thirty (30) days and this Lease shall remain in full force and effect.

38.9    Escrow: At the election of Lessor or Lessee upon notice to the other party not less than five (5) days prior to the Closing Date, the sale thereof shall be closed through an escrow with said title insurer in accordance with the general provisions of the usual form of deed and money escrow agreement then in use by such title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Article. The cost of the escrow shall be divided between Lessor and Lessee.

38.10    Application of $50,000.00 Payment: At the time of the closing of the Premises, said sum of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) referred to above shall be applied against the Purchase Price of the Premises.

38.11    Default: If Lessor shall default in the performance of any of its obligations under this Article, Lessee shall have the right as its sole and exclusive remedy to either:

　　(i)    Terminate the agreement contained in this Article and receive the return of said sum of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00), in which event Lessor shall not be obligated to sell the Premises to Lessee, Lessee shall not be obligated to purchase the Premises from Lessor, and this Lease shall remain in full force and effect; or

　　(ii)    Seek specific performance of Lessor's obligations hereunder.

If Lessee shall default in the performance of its obligations under this Article, Lessor shall be entitled, as its sole and exclusive remedy, to retain said sum of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00) as Lessor's liquidated damages arising from and on account of Lessee's default hereunder, the agreements contained in this Article shall be deemed terminated, and Lessor shall be under no obligation to sell the Premises to Lessee and Lessee shall be under no obligation to purchase the Premises from Lessor, and this Lease shall remain in full force and effect.

38.12    Entire Agreement: This Article contains the entire agreement of the parties with respect to the transaction hereinabove set forth, and this Article may not be amended, modified, released, or discharged, in whole or in part, except by an instrument in writing signed by both of the parties hereto.

38.13    Binding Effect: Except as hereinabove otherwise provided, this Lease shall bind and inure to the benefit of Lessor and Lessee and the successors and assigns of each.

38.14 <u>Continuing Validity of Lease</u>:  In the event Lessee exercises this Option, this Lease shall not terminate but shall remain in full force and effect and Lessee shall be and remain fully liable under the terms of this Lease until the Date of Closing.

38.15 <u>Exchange</u>:  Should Lessee exercise the Option, Lessor will desire to exchange, for other property of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code of 1986 as amended, and the regulations promulgated thereunder, fee title in the Premises.  Lessor expressly reserves the right to assign its right under this Article to a qualified intermediary as provided in Internal Revenue Code Regulation I.103 (k)-1(g)(4) on or before the Closing Date and to take such other steps as are necessary to qualify for like kind exchange treatment under Section 1031.  Lessee will cooperate with Lessor in effectuating such exchange, provided that in connection with what is exchanged, Lessee assumes no liability, is not required to take title to any other property, and said exchange is put into effect at Lessor's sole cost and expense.

39.  **LIMITATION ON PERSONAL LIABILITY:**  Anything in this Lease, either expressed or implied, to the contrary notwithstanding, Lessee acknowledges and agrees that each of the covenants, undertakings and agreements herein made on the part of Lessor, while in form purporting to be covenants, undertakings and agreements of Lessor, are, nevertheless, made and intended not as personal covenants, undertakings and agreements of Lessor, or for the purpose of binding Lessor personally or the assets of Lessor, except Lessor's interest in the Building; and that no personal liability or personal responsibility is assumed by, nor shall at any time be asserted or enforceable against Lessor, any partner of Lessor, any parent or subsidiary of Lessor, or any of their respective heirs, personal representatives, successors and assigns, or officers or employees on account of this Lease or on account of any covenant, undertaking or agreement of Lessor in this Lease contained, all such personal liability and personal responsibility, if any, being expressly waived and released by Lessee.

40.  **RELEASE OF DOWER:**  For a valuable consideration, the receipt of which is hereby acknowledged, Barbara M. Benz, wife of John E. Benz, Lessor, hereby agrees that whatever rights she may now have or hereafter acquire in the leased premises shall be subject to the terms of this Lease and does hereby specifically release her dower interest or whatever estate or interest she may have in the leased premises without, however, relinquishing any right that she may have to be endowed of the rents accruing hereunder.

41.  **SATELLITE DISH:**  That the Lessee may, at its expense and option, install a satellite dish and related equipment on the roof of the Premises.  Lessee shall be responsible for the installation, engineering, maintenance, and removal of the equipment in accordance with all federal, state, and local laws and ordinances.  Lessee shall also be responsible for any damage to the Lessor's property caused by such installation, maintenance, and removal and shall indemnify and hold the Lessor harmless from any loss, injury, or death which may occur by reason of such satellite dish.  Upon the expiration of this Lease, Lessee

shall promptly remove said satellite dish and related equipment and make any necessary repairs to the roof.

**IN WITNESS WHEREOF**, Lessor has signed and sealed this instrument this __28th__ day of __September__, 1998, and Lessee has signed and sealed this instrument this __29th__ day of __September__, 1998.

In the presence of:

_____          _____ L.S.
                                        JOHN E. BENZ

_____          _____ L.S.
                                        BARBARA M. BENZ

In the presence of:                    GENERAL MOTORS CORPORATION

_____          BY _____
R. D. HERRINGTON                            J. J. Dues General Director
                                            Worldwide Real Estate

_____          ATTEST _____
PATRICIA M. CHASTNEY                            Bernice G. Heady
                                                Assistant Secretary

- 23 -

# FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE (this **"Amendment")**, is made and entered into this 30th day of ~~March~~ April, 2004, by and between the JOHN E. BENZ, whose address is c/o John E. Benz & Co., 3017 Exchange Court, Suite A, West Palm Beach, Florida 33409 ("Lessor"), and DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Lessee"), based upon the following:

A.    Lessor and Lessee, as successor-in-interest to General Motors Corporation, entered into a Lease Agreement dated as of September 28, 1998 (the "Lease"), covering the Premises located at 3535 Kettering Boulevard, Moraine, Ohio.

B.    Lessor and Lessee desire to amend the Lease as set forth in this Amendment.

NOW, **THEREFORE**, for and in consideration of the covenants herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.    Terms used with initial capital letters and not otherwise defined in this Amendment have the meaning ascribed to them in the Lease.

2.    The term of the Lease shall be extended for a period of three (3) years commencing on November 1, 2004, and continuing through October 31, 2007 (the "First Extension Term").

3.  Section 1.4(b) of the Lease is hereby amended and restated as follows:

"(b)    Option(s) to Extend [See Section 3.2 Section 18.4(a)]:

(i)    Extension Terms:  Two (2) successive term(s) of three (3) years each following the First Extension Term.

| Option | Renewal Term |
|---|---|
| 1st Option | 11/1/07 – 10/31/10 |
| 2nd Option: | 11/1/10 – 10/31/13 |

(ii)    Exercise Date(s):  Two Hundred Seventy (270) days prior to the expiration of the then-current Extension Term."

4.  Section 1.5(b) of the Lease is hereby amended and restated as follows:

"(a)    First Extension Term:  Monthly installments of $62,500.00 commencing on November 1, 2004.

(b)    Additional Extension Terms:

| Option | Renewal Term | Rent |
|---|---|---|
| 1st Option | 11/1/07 – 10/31/10 | Monthly installments of $66,666.67 |
| 2nd Option: | 11/1/10 – 10/31/13 | Monthly installments of $66,666.67" |

5.    Lessor covenants that it will pay Lessee Two Hundred Fifty Thousand and 00/100ths Dollars ($250,000.00) (the "Wastewater Treatment Plant Payment") for Lessee's use in constructing and installing a wastewater treatment plant to treat process wastewaters (the "Wastewater Treatment Plant").  The Wastewater Treatment Plant Payment shall be paid by Lessor to Lessee within thirty (30) days after Lessor receives written request from Lessee but in no event later than October 31, 2004.  It is understood and agreed that the wastewater treatment plant shall be and remain the personal property of Lessee provided that Lessee is not in default of its Lease and Lessee may remove the same from the Premises, restoring and repairing, at its

-2-

expense, any damage caused by the removal of such personal property or, at Lessee's election, Lessee may leave the Wastewater Treatment Plant in place at the Premises at the end of the term.

6.      On the first day of the first (1st) through the thirty-sixth (36th) months following Lessee's receipt of the Wastewater Treatment Plant Payment from Lessor, Lessee shall pay to Lessor as the "Wastewater Treatment Plant Rent," monthly installments of Seven Thousand Eight Hundred Thirty-Four and 00/100ths Dollars ($7,834.00). Lessee shall not be obligated to make additional payments of the Wastewater Treatment Plant Rent after the thirty-sixth (36th) monthly installment.

7.      Lessee shall have the option to terminate the Lease anytime on or after November 1, 2006. Lessee must give to Lessor at least six (6) months' prior written notice of exercise of this termination right, i.e., for a notice of termination to be effective on November 1, 2006, it must be given at least six (6) months before November 1, 2006. If Lessee elects to terminate the Lease during the First Extension Term, Lessee shall pay to Lessor a termination fee equal to the sum of (A) Three Hundred Seventy-Five Thousand and 00/100ths Dollars ($375,000.00) plus (B) the product of (x) Nine Thousand Six Hundred Eighty-Nine and 00/100ths Dollars ($9,689.00) and (y) the total number of months remaining in the First Extension Term on the date of termination. This termination payment will be in lieu of any further payments of Rent, including, without limitation the Wastewater Treatment Plant Rent. If Lessee elects to terminate the Lease, Lessor shall, on the effective date of termination, release Lessee, its successors and assigns, from each and every obligation, covenant, agreement, stipulation, payment and every other liability in any manner connected with the Lease or Lessee's use of the premises or required to be performed under the terms of the Lease, including by way of illustration but not by way of limitation, all prior and future rent, any past-due obligations, and all future fees, expenses, damages, or causes of action of any type or nature whatsoever.

- 3 -

8.    Lessor and Lessee hereby acknowledge and agree that Lessor has agreed to pay Colliers Turley Martin Tucker a commission equal to Sixty Seven Thousand Five Hundred and 00/100ths Dollars ($67,500.00) at the time of Lessee's execution of this Amendment. ~~If Lessor fails to make the commission payment within thirty (30) days after written notice from Lessee to Lessor, Lessee will have the right to pay the commission and offset the amount of the commission against rent due under the Lease~~.

9.    Except as expressly modified by this Amendment, all of the terms, covenants and conditions of the Lease as amended by this Amendment shall remain in full force and effect and are hereby ratified and confirmed. In the event of any inconsistency between this Amendment and the Lease, the terms of this Amendment shall be controlling.

**IN WITNESS WHEREOF**, Lessor and Lessee are entering into this First Amendment to Lease as of the day and year first above written.

In the Presence of:

By: _____
     John E. Benz

By: _____
     Barbara M. Benz

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By:    Delphi Corporation,
       a Delaware corporation

Its:    Managing Member

By:    _____

       John A. Jaffurs
Its:    Authorized Signatory

- 4 -

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE (this "Amendment")**, is made and entered into this ___30th___ day of ~~March~~ April, 2004, by and between the JOHN E. BENZ, whose address is c/o John E. Benz & Co., 3017 Exchange Court, Suite A, West Palm Beach, Florida 33409 ("Lessor"), and DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Lessee"), based upon the following:

A.     Lessor and Lessee, as successor-in-interest to General Motors Corporation, entered into a Lease Agreement dated as of September 28, 1998 (the "Lease"), covering the Premises located at 3535 Kettering Boulevard, Moraine, Ohio.

B.     Lessor and Lessee desire to amend the Lease as set forth in this Amendment.

**NOW, THEREFORE,** for and in consideration of the covenants herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Lessor and Lessee agree as follows:

1.     Terms used with initial capital letters and not otherwise defined in this Amendment have the meaning ascribed to them in the Lease.

2.     The term of the Lease shall be extended for a period of three (3) years commencing on November 1, 2004, and continuing through October 31, 2007 (the "First Extension Term").

3. Section 1.4(b) of the Lease is hereby amended and restated as follows:

"(b)   Option(s) to Extend [See Section 3.2 Section 18.4(a)]:

(i)   Extension Terms:  Two (2) successive term(s) of three (3) years each following the First Extension Term.

| Option | Renewal Term |
|--------|--------------|
| 1st Option | 11/1/07 – 10/31/10 |
| 2nd Option: | 11/1/10 – 10/31/13 |

(ii)   Exercise Date(s):  Two Hundred Seventy (270) days prior to the expiration of the then-current Extension Term."

4. Section 1.5(b) of the Lease is hereby amended and restated as follows:

"(a)   First Extension Term:  Monthly installments of $62,500.00 commencing on November 1, 2004.

(b)   Additional Extension Terms:

| Option | Renewal Term | Rent |
|--------|--------------|------|
| 1st Option | 11/1/07 – 10/31/10 | Monthly installments of $66,666.67 |
| 2nd Option: | 11/1/10 – 10/31/13 | Monthly installments of $66,666.67" |

5.   Lessor covenants that it will pay Lessee Two Hundred Fifty Thousand and 00/100ths Dollars ($250,000.00) (the "Wastewater Treatment Plant Payment") for Lessee's use in constructing and installing a wastewater treatment plant to treat process wastewaters (the "Wastewater Treatment Plant").  The Wastewater Treatment Plant Payment shall be paid by Lessor to Lessee within thirty (30) days after Lessor receives written request from Lessee but in no event later than October 31, 2004. It is understood and agreed that the wastewater treatment plant shall be and remain the personal property of Lessee provided that Lessee is not in default of its Lease and Lessee may remove the same from the Premises, restoring and repairing, at its

-2-

expense, any damage caused by the removal of such personal property or, at Lessee's election, Lessee may leave the Wastewater Treatment Plant in place at the Premises at the end of the term.

6.      On the first day of the first (1st) through the thirty-sixth (36th) months following Lessee's receipt of the Wastewater Treatment Plant Payment from Lessor, Lessee shall pay to Lessor as the "Wastewater Treatment Plant Rent," monthly installments of Seven Thousand Eight Hundred Thirty-Four and 00/100ths Dollars ($7,834.00). Lessee shall not be obligated to make additional payments of the Wastewater Treatment Plant Rent after the thirty-sixth (36th) monthly installment.

7.      Lessee shall have the option to terminate the Lease anytime on or after November 1, 2006. Lessee must give to Lessor at least six (6) months' prior written notice of exercise of this termination right, i.e., for a notice of termination to be effective on November 1, 2006, it must be given at least six (6) months before November 1, 2006. If Lessee elects to terminate the Lease during the First Extension Term, Lessee shall pay to Lessor a termination fee equal to the sum of (A) Three Hundred Seventy-Five Thousand and 00/100ths Dollars ($375,000.00) plus (B) the product of (x) Nine Thousand Six Hundred Eighty-Nine and 00/100ths Dollars ($9,689.00) and (y) the total number of months remaining in the First Extension Term on the date of termination. This termination payment will be in lieu of any further payments of Rent, including, without limitation the Wastewater Treatment Plant Rent. If Lessee elects to terminate the Lease, Lessor shall, on the effective date of termination, release Lessee, its successors and assigns, from each and every obligation, covenant, agreement, stipulation, payment and every other liability in any manner connected with the Lease or Lessee's use of the premises or required to be performed under the terms of the Lease, including by way of illustration but not by way of limitation, all prior and future rent, any past-due obligations, and all future fees, expenses, damages, or causes of action of any type or nature whatsoever.

-3-

8.      Lessor and Lessee hereby acknowledge and agree that Lessor has agreed to pay Colliers Turley Martin Tucker a commission equal to Sixty Seven Thousand Five Hundred and 00/100ths Dollars ($67,500.00) at the time of Lessee's execution of this Amendment.  If Lessor fails to make the commission payment within thirty (30) days after written notice from Lessee to Lessor, Lessee will have the right to pay the commission and offset the amount of the commission against rent due under the Lease.

9.      Except as expressly modified by this Amendment, all of the terms, covenants and conditions of the Lease as amended by this Amendment shall remain in full force and effect and are hereby ratified and confirmed.  In the event of any inconsistency between this Amendment and the Lease, the terms of this Amendment shall be controlling.

**IN WITNESS WHEREOF**, Lessor and Lessee are entering into this First Amendment to Lease as of the day and year first above written.

In the Presence of:

By: _____
John E. Benz

By: _____
Barbara M. Benz

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By:     Delphi Corporation,
        a Delaware corporation

Its:    Managing Member

By:     _____
        John A. Jaffurs

Its:    Authorized Signatory

- 4 -