ALSTON & BIRD LLP
Dennis J. Connolly (DC-9932)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

**Hearing Date: November 30, 2006, 10:00 am**

*Counsel to Cadence Innovation LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                    :

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DELPHI CORPORATION, *et. al.*,** | : | **Case No. 05-44481 (RDD)** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |

----------------------------------------------------------x

**LIMITED OBJECTION OF CADENCE INNOVATION LLC TO
DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 502(B)
AND 502(C) AND FED. R. BANKR. P. 2002(M), 3007, 7016, 7026, 9006,
9007 AND 9014 ESTABLISHING (I) DATES FOR HEARINGS
REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS AND
(II) CERTAIN NOTICES AND PROCEDURES GOVERNING HEARINGS
REGARDING DISALLOWANCE OR ESTIMATION OF CLAIMS**

COMES NOW Cadence Innovation LLC ("Cadence"), as successor in interest to

Patent Holding Company ("PHC"), and hereby files this Limited Objection (the

"Objection")[1] to the Delphi Corporation, et al.'s (the "Debtors")[2] Motion for Order

---

[1]    Nothing herein or otherwise, including, but without limitation, any later appearance, pleading, claim, or action, is intended or shall be deemed to be a waiver, release, or modification by Cadence of its (a) right to have final orders in noncore matters entered after de novo review by a District Judge; (b) right to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to these cases; (c) right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (d) other rights, remedies, claims, actions, defenses, setoffs, or recoupments to which Cadence and/or PHC are or may be entitled, all of which are hereby expressly reserved. Cadence further reserves its right to (i) amend or replace this claim as is appropriate, (ii) assert an administrative expense priority claim with respect to its claim for damages arising out of the Debtors' postpetition infringement of the referenced patents, (iii) file a motion for relief from the automatic stay to allow Cadence to proceed with the Action (as defined below) and enforce any judgment rendered, and (iv) seek withdrawal of the reference with respect to any and all claims that Cadence, may bring against the Debtors.

Pursuant to 11 U.S.C. § 502(b) and 502(c) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007 and 9014 Establishing (I) Dates for Hearings Regarding Disallowance or Estimation of Claims and (II) Certain Notices and Procedures Governing Hearings Regarding Disallowance or Estimation of Claims (the "Motion") [Docket No. 5453]. Although counsel to the Debtors has represented to counsel to Cadence that the procedures contemplated by the Motion will not apply to the Cadence Claims (as defined below), because the parties were unable to prepare written documentation of the stipulation Cadence submits the Objection to preserve its rights in respect of the Motion. Accordingly, in support of this Objection, Cadence shows the Court as follows:

## I.    PRELIMINARY STATEMENT

1.    Cadence objects to the entry of an order approving the estimation procedures set forth in the Motion because the procedures contemplated by the Debtors are contrary to the provisions of Section 502(c) of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").  First and foremost, the Motion should be

---

[2]    The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing General Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC, ASEC Sales General Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas Corporation; Delphi Automotive Systems Korea, Inc.; Delphi Automotive Systems International, Inc.; Delphi International Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International Services, Inc.; Environmental Catalysts, LLC; Specialty Electronics International, LTD; Delphi Automotive Systems Thailand, Inc.; Delco Electronic Overseas Corporation; Delphi Technologies, Inc.; Delphi Automotive Systems (Holding), Inc.; Exhaust Systems Corporation; Delphi Medical Systems Corporation; Delphi Diesel Systems Corp.; Delphi Integrated Service Solutions, Inc.; Packard Hughes Interconnect Company; Delphi Electronics (Holding) LLC; Delphi Mechatronic Systems, Inc.; Specialty Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.; Delphi LLC; Dreal, Inc.; Delphi Automotive Systems Risk Management Corp.; Delphi Automotive Systems Services LLC; Delphi Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services Holding Corporation; Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global (Holding) Inc.; Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC; and MobileAria, Inc.

denied because the procedures fail to preserve Cadence's due process rights.   In particular, the overreaching summary procedures contemplated by the Motion do not take into consideration the complex scientific and technical issues in the Action (defined below).[3]   Second, the Motion should be denied because the procedures contemplated do not require the Debtors to satisfy their burden of demonstrating that estimation of the Cadence Claims (defined below) – or any other claim in their cases – is <u>necessary</u> to avoid undue delay in the administration of their estates or the confirmation of a plan. Third, the Motion should be denied because the Debtors improperly seek authority to estimate the value of the Cadence Claims for all purposes.   Fourth, the Motion should be denied because it fails to explicitly preserve the right to seek reconsideration of any claims estimation in accordance with Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008.   At bottom, the overall objective of the proposed procedures is to vest in the Debtors significant (and in some cases, unlimited) discretion to structure the litigation of contested claims to their own advantage or convenience.   While the Debtors want the benefit of separate contested matters for each individual claim objection, the Debtors do not propose to provide any of the procedural protections to claimants that they normally would obtain under the Bankruptcy Rules and the Local Rules.   Nor do the proposed procedures contemplate the complexities of the Claims asserted by Cadence. For all of these reasons, the Motion should be denied, at least in so far as the Claims of Cadence are concerned.

---

[3]   Attached hereto as Exhibit A is the summary of the Action that Cadence attached to the Cadence Claims (defined below).

LEGAL02/30151347v1

## II.    BACKGROUND

2.    On December 15, 1999, Cadence's predecessor in interest, PHC, commenced an action (the "Action") against Delphi Automotive Systems Corp. ("Delphi") in the District Court for the Eastern District of Michigan, Southern Division (the "District Court") [Case No. 99-76013] on account of the Debtors' direct and willful infringement[4] of three patents (the "Patents").  In May 2003, the District Court bifurcated the patent infringement (i.e., the "liability") phase from the damages and willfulness (i.e., "damages") phase of the action and directed that the Action first go forward with respect to paradigm claims of the Patents (the "Paradigm Claims")[5] and Debtors' six paradigm infringing airbag covers.[6]  In bifurcating the damages phase of the Action, the District Court specifically recognized that it was necessary to determine liability – in the liability phase – prior to ascertaining damages.

3.    Between April and December 2003, Debtors and PHC briefed and argued their proposed definitions of the Paradigm Claim terms that the Debtors disputed.  The first hearing on the Paradigm Claim construction, commonly known as a "Markman" hearing, was held on June 30, 2003.  On December 5, 2003, the District Court ruled in PHC's favor by selecting PHC's proposed Paradigm Claim definition.

4.    On April 5, 2004, a Special Master issued a recommended Paradigm Claim construction with respect to 13 remaining issues, ruling in PHC's favor on 11 of the 13.  Subsequently, the Debtors and PHC participated in an oral Markman hearing

---

[4]    Pursuant to that certain Stipulated Order dated August 15, 2001, Delphi stipulated that they had been on notice of its infringement since October 1997.

[5]    In designating the paradigm claims, Cadence (by its predecessor in interest) expressly reserved its right to assert infringement and/or additional claims with respect to Debtors' infringement of additional patents.

[6]    In designating the paradigm claims, Cadence (by its predecessor in interest) expressly reserved its right to assert infringement and/or additional claims with respect to Debtors' infringement of additional patents.

with respect to the 13 issues before the District Court. On August 6, 2004, the District

Court issued its decision (dated August 2, 2004) adopting the Special Master's

recommended Paradigm Claim construction in favor of PHC. Taken together, the Special

Master and the District Court ruled in PHC's favor on virtually all of the disputed

Paradigm Claim terms.

5.      On May 2, 2005, PHC formally assigned the Patents to Cadence.

6.      On October 8 and 14, 2006, the Debtors filed voluntary petitions for relief

under Chapter 11 of the Bankruptcy Code.[7] At the time of the Debtors' bankruptcy

filing, the Action was ongoing. Because the parties had not been able to mediate their

dispute, the Final Pretrial Order was scheduled to be submitted to the District Court on

March 28, 2006.

7.      Due to the imposition of Section 362 of the Bankruptcy Code"), however,

the separate liability phase and damages phase of the Action were stayed. As a result, the

automatic stay has precluded Cadence from proceeding with discovery concerning (i) the

Debtors' infringing airbag covers; (ii) the Debtors' manufacturing of infringing airbag

covers; and (iii) technical information used by the Debtors to manufacture the infringing

airbag covers, in addition to the ultimate resolution of the Action.

8.      On July 20, 2006, Cadence timely filed Proof of Claim Nos. 10074,

10077, 10078, 10079, 10080, 10081, 10082, 10083, 10084, 10085, 10086, 10087, 10088,

10089, 10090, 10091, 10092, 10093, 10094, 10095, 10096, 10097, 10098, 10099, 10100,

10101, 10102, 10103, 10104, 10105, 10106, 10107, 10108, 10109, 10110, 100111 10112,

10113, 10114, 10115, 10116, (collectively, the "Cadence Claims") against the Debtors

---

[7] The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(b) and 1108 of the Bankruptcy Code.

LEGAL02/30151347v1

and Debtors in Possession, styled "Cadence, as successor in interest to Patent Holding Company" in respect of the claims asserted in the Action. Cadence filed the Cadence Claims against each and every Delphi Debtor to reflect the fact that Delphi works through numerous subsidiaries and affiliates and, depending on discovery, those affiliates may have separate, independent liability for manufacturing airbags that infringe on the Patents.[8]

9.      By filing the Cadence Claims, Cadence asserts (i) a general unsecured claim with respect to the Debtors' prepetition infringement of the Patents and (ii) an administrative expense priority claim with respect to the Debtors' postpetition infringement of the Patents. Although these claims are currently unliquidated, Cadence contends that these claims, once liquidated, will be in an amount not less than $21 million on account of the Debtors' prepetition infringement and an unknown amount (well in excess of $4 million) on account of the Debtors' postpetition infringement. Furthermore, because the Debtors willfully and deliberately infringe the Patents, Cadence is entitled to an award of treble damages and its reasonable attorneys' fees. Because the full extent of the Debtors' infringement is not yet known, including the possible award of treble damages and attorneys' fees, the ultimate value of the patent infringement claim will be determined at trial.[9]

---

[8]     35 U.S.C. § 271 provides that whoever makes, uses offers to sell, or sells any patented invention or actively induces infringement of a patent shall be liable for infringement.

[9]     In connection with the Claims Estimation Motion, the Debtors have filed two (2) separate objections to the Cadence Claims. In the Second Omnibus Objection, the Debtors contend that the Cadence Claims against all Debtors other than Delphi Corporation are "duplicative." In the Third Omnibus Objection, the Debtors contend that the claims against Delphi Corporation and Delphi Automotive Systems LLC are not supported or not shown on the Debtors' books and records; and, as a result, should be disallowed and expunged. Both Objections should be overruled. In respect of the Second Omnibus Claim, as set forth in the contemporaneously filed response thereto, the duplication argument is simply without merit as the claims are not duplicative of the claims against Delphi Corporation, but rather reflect the fact that Delphi works through numerous subsidiaries and affiliates and, depending on discovery, those affiliates may have

### III.  THE DEBTORS' PROPOSED PROCEDURES

10.    In the Motion the Debtors seek, among other things, to establish procedures for estimating the Cadence Claims.  The proposed procedures include the following:

- A requirement that Cadence submit <u>all</u> documentation or other evidence in respect of the Cadence Claims which Cadence will rely upon in opposing the Debtors' omnibus claims objection.  Motion ¶ 28 (d).

- A requirement that Cadence state the amount that Cadence believes would be the allowable amount of any claim upon liquidation.  Motion ¶ 28(e).

- The estimation of claims for all purposes, including voting and distribution, pursuant to Section 502(c) of the Bankruptcy Code.  Motion ¶ 36(a)(i)(2).

- Cadence, as the holder of a claim in excess of $250,000, would be required to meet and confer (the "Meet and Confer") with the Debtors in Troy, Michigan, within five days notice of adjournment of its objection to the Debtors' proposed treatment of its claim to a claims estimation hearing.  Motion ¶ 36(c)(i).

- Failure by Cadence to participate in the Meet and Confer within five business days of the service of the notice of adjournment, would constitute grounds for disallowance and expungement of its contested claim.  Motion ¶ 36(c)(iv).

- To the extent the Debtors schedule a hearing to estimate Cadence's claim, Cadence would be required to file and serve its supplemental response – limited to 15 double spaced pages – no  later than five days after the conclusion of the Meet and Confer.  Motion ¶ 36(d)(i).

- If Cadence intends to rely on exhibits to support its claim, such exhibits must be included in its supplemental response.  Motion ¶ 36(d)(ii).

- If Cadence desires to submit affidavits or declarations in support of its claim, it is limited to two witnesses setting forth the basis of the contested

---

separate, independent patent liability.  As to the Third Omnibus Objection, the Debtors reflect the pending Action in their schedules and statement of financial affairs; the claims are simply unliquidated.  The fact that the Debtors may not have reflected the amount asserted by Cadence means nothing.  The Debtors have failed to adduce any evidence to controvert the allegations contained within the Proof of Claim.  As a result, both the Second Omnibus Objection and the Third Omnibus Objection should be overruled.

claim and evidence in support who must attend the claims estimation hearing; no other witnesses are allowed. Motion ¶ 36(d)(iii).

- Cadence, as the holder of a claim in excess of $250,000, would be required to participate in non-binding mediation; failure to participate constitutes grounds for disallowance and expungement of the Cadence Claims. Motion ¶ 36(f).

- To the extent the Debtors and Cadence proceed with a claims estimation hearing, Cadence would be constrained by the following discovery procedures:

  o Cadence would be required to produce relevant documents within five business days following the conclusion of non-binding mediation. Motion ¶ 36(g)(i)(1).

  o The Debtors will respond to no more than five interrogatories, including discrete subparts. Motion ¶ 36(g)(ii)(2).

  o The Debtors will respond to no more than ten requests for admission. Motion ¶ 36(g)(ii)(3).

  o No later than 10 days after the conclusion of non-binding mediation Cadence may take the deposition of the Debtors' two proffered witnesses. Motion ¶ 36(g)(iv).

- At the estimation hearing, Cadence will have one hour to present its action (i.e., fully explain and argue the merits of its complex patent infringement action currently pending before the District Court) and cross examine the Debtors' witnesses. Motion ¶ 36(h).

11.    These requirements and the Debtors' attempt to impose summary proceedings to estimate the Cadence Claims violate Cadences' due process rights.[10] The Action, which was commenced prepetition, has lasted more than four years because it

---

[10]    Although certain concepts contemplated by the Debtors – such as the Meet and Confer requirement – may assist the resolution of disputed claims, the majority of the provisions imposed – such as the five (5) day production requirement and automatic disallowance of claims – are unnecessary and overreaching. Another example of the unnecessary and overreaching provisions in the proposed procedures is the authorization for the Debtors to file a reply at 4:00 p.m. before the date of a hearing. (Motion ¶ 33). Obviously, the Debtors, with their extraordinary resources, do not need the authority for last-minute gamesmanship and places creditors at a significant disadvantage. The Debtors do provide the potential for a mediation of issues and have filed a list of proposed mediators pursuant to the Motion. While certain of the proposed mediators are well-known bankruptcy practitioners (for example, Mark Abrams of the Wilke, Farr & Gallagher firm, and former judges Barliant and Katz), the Debtors provide no information as to the qualifications of the mediators in respect of particularized litigation issues and, in particular, the complex patent issues involved in the Action.

LEGAL02/30151347v1

involves numerous technical/scientific issues concerning the Patents and the need to introduce technical evidence and expert testimony. Because the Debtors' proposed procedures fail to even contemplate complex litigation or complex factual disputes, the proposed procedures fail to preserve Cadence's due process rights.

12.    Accordingly, the Motion should be denied to the extent it seeks the use of summary proceedings to estimate the value of the Cadence Claims – claims that arise out of the Debtors' willful and intentional decision to infringe the Patents – asserted in the Action.[11]

### A.    The Procedures Set Forth in the Motion Are Improper Because The Summary Nature of The Procedures Are Overreaching and Fail to Preserve Cadence's Due Process Rights

13.    Section 502(c) of the Bankruptcy Code provides bankruptcy courts with the discretion to establish procedures to estimate the value of contingent or unliquidated claims, for purposes of allowance, when a full adjudication of such claims would unduly delay the administration of the bankruptcy case. See United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1006 (2d Cir. 1991) (noting that a rough estimation of the EPA's claim was necessary to determine its voice in the Chapter 11 proceedings.); In re Cont'l Airlines, Inc., 981 F.2d 1450, 1461 (5th Cir. 1993) (concluding that bankruptcy

---

[11]    Concurrently herewith, Cadence has submitted its request for relief from the automatic stay so that its claim against the Debtors may be liquidated in the District Court. In addition, Cadence has also contemporaneously filed a motion for the allowance and payment of an administrative expense claim in respect of the damages accruing postpetition by virtue of the Debtors' continuing infringement on the Patents. As set forth therein, the liquidation of that claim should be undertaken by the District Court as well, in the interest of judicial efficiency and economy and the avoidance of inconsistent results. See, e.g. Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble), 776 F.2d 802, 807 (9th Cir. 1985) ("Many cases have held that a district court may properly consider the factor of judicial economy in deciding whether to lift an automatic stay. The prior extensive preparation for the damages retrial made proceeding with that trial efficient. The decision to lift the stay could be upheld on this ground alone.") (citations omitted); Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys.), 304 B.R. 111, 131 (Bankr. D.N.J. 2003) ("[T]he notion of judicial economy compels this Court to conclude that the stay should be lifted so as to permit the litigation to proceed in state court. Simply stated the substantial time, effort, and resources already expended by the parties, Judge Escala, and the Discovery Master in moving this case closer to trial should not be interfered by this Court.").

- 9 -

courts may estimate claims under Section 502(c) of the Bankruptcy Code to (i) avoid the need to await resolution of outside disputes and (ii) promote a fair distribution to creditors through a realistic assessment of uncertain claims). This discretion is not, however, without boundaries.

14.    Given the impact that estimation may have on a claimant's rights, in determining whether estimation procedures are proper, courts evaluate whether the procedures meet general due process requirements. See In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, (Bankr. S.D.N.Y. 2003); see also In re Hoffinger Indus., Inc., 307 B.R. 112, 117 (Bankr. E.D. Ark. 2004); Beatrice Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.), 153 B.R. 535 (N.D. Ill. 1993). Due process is not an inflexible standard, but requires a balancing of interests and a recognition of the circumstances at issue. Hoffinger, 307 B.R. at 122; see also Rusty Jones, 153 B.R. at 537-38 (determining that the estimation of claims was improper after the court balanced the interests of the parties).

15.    Cadence recognizes that the estimation procedures proposed in the Motion may work for many, if not most, of the claims asserted in the Debtors' bankruptcy cases. However, the proposed procedures fail to adequately provide for estimation of complex claims such as those represented by the Cadence Claims. As summarized above, Cadence's predecessor in interest commenced the Action against the Debtors almost seven years ago, on December 15, 1999, on account of the Debtors' direct and willful infringement of the Patents. Then, after nearly four and a half years, the District Court

issued its decision adopting the Special Master's recommended Paradigm Claim construction in favor of Cadence's predecessor.[12]

16.    The complexity and scope of discovery that will be required in the Action is evident from the tasks required up to this point in the Action.  Obtaining the Markman Paradigm Claim construction rulings alone required significant discovery, hearings, and pleadings; (i) Cadence took seven (7) depositions, (ii) Delphi took six (6) depositions, (iii) the District Court held one full hearing with respect to one Paradigm Claim term, (iv) after the District Court's Markman hearing, the District Court issued an opinion with respect to one Paradigm Claim term; (v) the District referred the remaining Paradigm Claim terms to a Special Master; (vi) the Special Master held one full hearing on the remaining Paradigm Claim terms, (vii) after the Special Master's hearing, the Special Master issued three opinions with respect to the remaining Paradigm Claim terms; (viii) in response to the Special Master's opinions, the parties filed objections before the District Court that required another round of briefings; and (ix) yet another hearing, an oral Markman hearing, was held before the District Court.

17.    After designating and construing the disputed Paradigm Claim terms, the District Court was prepared to conclude the liability phase of the Action with a jury trial before proceeding with the damages phase.  Together, the liability phase and the damages phase of the Action will require at least: (i) technical experts' reports and depositions concerning the Debtors' "two-shot" airbag covers; (ii) analysis of whether the Debtors' airbag covers infringe on the Patents – as defined during the Markman hearing; (iii) discovery related to the Debtors' production of infringing airbag covers;

---

[12]    Taken together, the Special Master and the District Court ruled in PHC's favor on virtually all of the disputed claim terms; thereby framing the issue for the District Court's determination in the damages phase of the Action.

LEGAL02/30151347v1

(iv) discovery related to Delphi's opinions of counsel; (v) damages experts' reports and depositions; (vi) discovery as to which Debtor or Debtors manufactured infringing airbag covers; (vii) 30(b)(6) depositions of key Delphi/Debtor employees; (viii) a determination with respect to Cadence's damages; and (ix) a determination as to the award of treble damages and attorneys' fees due to  the Debtors' willful and intentional patent infringement.

18.    If the Cadence's Claims are litigated on their merits, the parties would have at their disposal the full spectrum of discovery devices, procedures, and protections. Those rules provide for, among other things, the opportunity of each party to obtain comprehensive written discovery from all parties, the right to depose parties and pertinent third parties, the ability to retain and to depose experts, the opportunity to file dispositive motions and limit the issues for trial, and the right to have the issues heard and resolved in a comprehensive fashion by a trier of fact in a thorough and orderly trial on the merits.

19.    In the proposed procedures, the Debtors seek to replace the full spectrum of discovery required to resolve the Action, and the District Court's specific recognition that it was necessary to conclude the liability phase prior to resolving damages with (i) five interrogatories; (ii) ten requests for admission; (iii) two witnesses; and (iv) one hour of testimony, inclusive of cross examinations.  Motion ¶¶ 36(d)(iii), 6(g)(ii)(2-3), 36(h).  Because the proposed procedures fail to adequately provide for the estimation of the Cadence Claims, the Motion must be denied.[13]

---

[13]    Moreover, the requirement contemplated in Paragraph 28(d) of the Motion to the effect that "all documents" to be relied upon by the Claimant in opposition to the objection be attached to the response to the objection, is entirely inappropriate and without merit.  The documents upon which Cadence will rely are voluminous and many of those documents may well be in the possession of Delphi.  This attempted limitation on the documents available for use by any particular Claimant turns the discovery rules on their head and is entirely inappropriate for the patent litigation at issue in the Action and asserted in the Cadence Claims.

- 12 -

**B.    The Procedures Set Forth in the Motion Are Improper Because They Do Not Require the Debtors to Establish that the Administration of the Case would be Unduly Delayed in the Absence of Estimation**

20.    The Motion should be denied because the proposed procedures are improper under Section 502(c) of the Bankruptcy Code in that the Debtors seek the ability to obtain the estimation of any unliquidated claim – in their sole discretion – without demonstrating that undue delay would result if the claims are not estimated. Pursuant to Section 502(c) of the Bankruptcy Code, "[c]ontingent claims may be estimated if their liquidation 'would unduly delay the administration of the case.'" See Chateaugay, 944 F.2d at 1006 (quoting 11 U.S.C. § 502(c)); see also In re Statewide Realty Co., 159 B.R. 719, 725 (Bankr. D.N.J. 1993) (denying debtor's request to estimate claims because (i) confirmation was not dependent on the estimation of the claim and (ii) the allowance of the claim would not alter distributions to unsecured creditors).

21.    The Debtors cannot satisfy their burden of establishing undue delay merely by making generalized and conclusory statements such as those set forth in the Motion. Motion ¶ 51 ("The Debtors' implementation of an expedited claims administration process, of which the relief sought by this Motion is a cornerstone, is critical to the Debtors' ability to emerge from these chapter 11 cases promptly."). Section 502(c) requires the Debtors to make a particularized showing as to why undue delay in the administration of their bankruptcy cases would occur in the absence of estimation of claims.[14] See, e.g., In re Dow Corning Corp., 211 B.R. 545, 562-74 (E.D. Mich. 1997) (denying motions to estimate tort claims under Section 502(c) of the

---

[14]    Recognizing that (i) the claims asserted against the Debtors exceed $36 billion, (ii) the Debtors have global assets of approximately $17 billion, and (iii) the Debtors had net sales of $26.9 billion (in 2005), Debtors will not be able to establish that the Cadence Claims, which total approximately $75 million (assuming treble damages) would unduly delay the confirmation of the Debtors' bankruptcy case or dilute in any significant manner general unsecured claims (including bond and trade claims).

LEGAL02/30151347v1

Bankruptcy code because movant did not establish that there would be undue delay); In re Marvin Johnson's Auto Serv., Inc., 192 B.R. 1008 (Bankr. N.D. Ala. 1996) (denying estimation of fraud claims because, *inter alia*, no evidence was presented that established that the case would be delayed); Statewide Realty, 159 B.R. 719 (holding that debtor failed to establish that arbitrating dispute that arose out of management would unduly delay its reorganization).

22.    Further, the Debtors bear the burden of establishing that the estimation of a claim is required to avoid undue delay. See, e.g., Dow Corning, 211 B.R. at 562-74. In particular, as recognized by the court in Dow Corning, "[w]hen dealing with a motion for estimation, a court starts with a baseline knowledge of what is involved with liquidating a claim. Therefore, the party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process." Id. at 573 (emphasis added). As a result, the Debtors must be required to make a showing of undue delay at the time they seek to estimate claims, including the Cadence Claims; the Debtors cannot simply decide – in their sole discretion – that estimation is necessary.

23.    On March 31, 2006, the Debtors outlined certain "key" tenets of its transformation plan that the Debtors believe will facilitate the return to stable, profitable business operations and allow the Debtors to emerge from their Chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors contend that they must focus on five key areas: (i) modifying their labor agreements to create a competitive arena in which to conduct business; (ii) concluding negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Debtors; (iii) streamlining their product portfolio to

LEGAL02/30151347v1

capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; (iv) transforming their salaried workforce to ensure that the Debtors' organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and (v) devise a workable solution to their current pension situation. As of the filing of the Motion, the Debtors have not fully resolved any of these "key" tenets. See Motion for Order Extending Debtors' Exclusive Period (the "Extension Motion") [Docket No. 4035]. In particular, in the Extension Motion, the Debtors note that: (i) they have not resolved their labor concerns;[15] (ii) they have not concluded negotiations with GM regarding unprofitable contracts;[16] (iii) the Debtors have not wound down their product portfolio;[17] and (iv) the Debtors have failed to resolve their long-term pension liability.

24.    Recognizing these complexities, on June 6, 2006 [Docket No. 4035], the Debtors sought and on June 19, 2006, obtained [Docket No. 4266] an order extending the exclusive period within which they may file and solicit acceptances of a plan of reorganization through February 1, 2007, and April 2, 2007 respectively. The motion and order recognize that the Debtors have not been able to formulate a plan of reorganization that will enable them to exit bankruptcy and, as a result, need additional time to negotiate, prepare and prosecute any plan of reorganization. By Orders dated November 13, 2006,

---

[15]  "Delphi has not reached comprehensive agreements with its unions and GM." Extension Motion ¶ 13.

[16]  "Contemporaneously therewith, the Debtors also moved to reject unprofitable supply contracts with GM. . . . Although the filing of these motions was a necessary procedural step, the Debtors remain focused on reaching a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is necessary." Extension Motion ¶ 13.

[17]  "The Company will seek to sell or wind down these noncore product lines (which will include approximately one-third of its global manufacturing sites) and will consult with its customers, unions, and other stakeholders to carefully manage the transition of such affected product lines. The Company intends to sell or wind down the non-core product lines and manufacturing sites by January 1, 2008." Extension Motion ¶ 15.

LEGAL02/30151347v1

this Court set a November 17, 2006 status conference in respect of the Debtors' motion to reject certain executory contracts with General Motors Corporation and the Sections 1113 and 1114 motions filed by the Debtors previously in the cases. As a result of those conferences, on November 22, 2006, the Court entered further Orders adjourning the hearing on the motion to reject certain executory contracts with General Motors Corporation and the Sections 1113 and 1114 motions and extending the date by which the Court must issue its ruling on the 1113 and 1114 motions to January 31, 2007, for the Company to proceed with what Debtors' counsel has characterized as "very constructive talks with labor unions." Of course, these very constructive talks have been continuing since the Summer of 2006. It may well be that the Debtors and the other parties to those negotiations will be before the Court in late January, 2007 asking for yet another extension of the deadlines. (Yet another closed-door status conference on these motions has been scheduled before this Court on November 30, 2006).

25.    The Motion is devoid of any information concerning the process of formulating a plan of reorganization. In fact, in Paragraph 51 of the Motion the Debtors contend that the "ability to reach agreement on a framework for the Debtors' emergence is predicated upon a clear understanding of the scope of the claims against the Debtors that will ultimately be allowed in these cases" and that "[s]uch an agreement is a prerequisite for the Debtors to be able to file a consensual plan of reorganization and to proceed with confirmation of such a plan." Motion ¶ 51. Because the Debtors have only begun the process of resolving claims asserted against their estates, a clear understanding of the scope of the claims asserted against their estate is not close.

26.    In the absence of a provision that would require the Debtors to make a particularized showing of undue delay for the claims they seek to estimate, including the Cadence Claims, the procedures contemplated by the Motion cannot be approved and must be denied.

## C.    The Procedures Set Forth in the Motion Are Improper Because They Seek to Estimate Claims for All Purposes

27.    Section 502(c) of the Bankruptcy Code provides that "[t]here shall be estimated for purposes of allowance under this section -- (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). Section 502(c) does not, however, address what, if any, preclusive effect the bankruptcy court's estimation should have with respect to the amount of the claim on its merits.

28.    Courts addressing this issue in the Southern District of New York have properly concluded, however, that a bankruptcy court's estimation of a claim should not be deemed a final determination of the amount of the claim on its merits. See, e.g., Adelphia, 341 B.R. at 423 ("Estimation thus is an essential prerequisite to confirmation of the Plan. However, it is not, in my view, likewise an essential prerequisite to fixing the allowed amount of ACC's admin claim."); In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) ("This being but an estimation hearing, my findings of fact will not have any preclusive effect upon the ultimate disposition of [the creditor's] claim . . . due to the fundamental difference between the adjudication of a claim and its temporary allowance for plan purposes."); United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.), 261 B.R. 800, 808 (B.A.P. 1st Cir. 2001) ("[W]e proceed with the understanding that the bankruptcy court was estimating the

IRS's administrative tax claim only for the limited purpose of approving the final
accounts subject to the Colorado district court's adjudication of the tax liability."); <u>Nat'l
Labor Relations Bd. V. Greyhound Lines, Inc. (In re Eagle Bus Mfg., Inc.)</u>, 158 B.R. 421,
437 (Bankr. S.D. Tex. 1993) ("[T]he bankruptcy court's estimation does not serve as a
cap to the administrative law judge's ultimate award, if any, for the [claimant's] claim.").

29.    Here, the Debtors request that the Court estimate the amount of claims not
only for purposes of evaluating the feasibility of an unarticulated and unformulated plan
of reorganization, but for all purposes.  The Debtors offer no support for this proposition,
nor is it consistent with the Bankruptcy Code, due process, or the authority addressing the
estimation of claims in this district.

30.    Furthermore, as is the case with the Cadence Claims – which assert both a
prepetition general unsecured claim and a postpetition administrative expense claim for
the Debtors infringement on its patents – if the claim being estimated is an administrative
expense claim, the argument against the finality of an estimation finding is particularly
compelling.

31.    In <u>In re MacDonald</u>, 128 B.R. 161 (Bankr. W.D. Tex. 1991),[18] the court
was asked to estimate, pursuant to section 502(c), certain administrative expense claims
arising out of the debtor's purported postpetition tortious conduct. While the court was
willing to "adapt" the estimation concepts of section 502(c), which "facially applies only
to <u>pre-petition</u> claims," 128 B.R. at 165, to an administrative expense claim, the court
admonished

> The estimation of post-petition administrative claims is especially
> sensitive because such claims must be paid in full and such payment is a

---

[18]    Cited with approval by the court in <u>Adelphia</u>, 341 B.R. at 423.

precondition to confirmation. "Guessing wrong," as it were, can result in
confirmation of plans which should never have been confirmed (where the
estimate is too low) or in scuttling plans which otherwise could have
worked, to the detriment of other creditors (where the court overestimates
the value of the claim).

Id. at 166.

32.    The MacDonald court further observed that "if a pre-petition claim is

estimated for plan purposes under Section 502(c), it is very likely that the balance of the

claim in excess of the estimated amount is discharged by the plan" because of "the

precise language of Section 502(c) itself" (which states that a prepetition claim is

estimated for purpose of allowance). Id. at 167. In contrast, the court noted:

Congress certainly intended that post-petition administrative claims be
paid in full, and that they be paid in advance of pre-petition creditors.
Were the estimation process to set the outer limits of allowance for such
claims, the due process rights of such claimants would be jeopardized . . .

Id.

33.    As a result, the court concluded that it was "not bound to blindly apply

Section 502(c) and all its legal baggage to post-petition administrative claims,"

particularly where "to do so would defeat the legitimate ends of other provisions of the

Bankruptcy Code," such as the requirement that administrative expense claims be paid in

full. Id. The court reasoned that "[t]he better rule seems to be that estimation primarily

serves to assist the court and parties in interest in evaluating the feasibility of a given plan

under section 1129(a)(11)" but "will not . . . set the 'outer limits of a claimant's right to

recover.'" Id. at 167-68 (internal quotations omitted).

34.    All the considerations that informed the court's analysis in MacDonald are

equally applicable here. Accordingly, because the Debtors seek to impose procedures

that will enable the Debtors to estimate Cadence's claims for all purposes, the Motion

should be denied.

**D.    The Motion Violates Section 502(j) of the Bankruptcy Code and Bankruptcy
Rule 3008**

35.    The procedures contemplated by the Motion also improperly limit the

right of creditors to seek reconsideration of their claims, by failing to explicitly preserve

the rights conferred by Section 502(j) of the Bankruptcy Code and Bankruptcy Rule

3008.[19]

36.    Section 502(j) of the Bankruptcy Code provides that "[a] claim that has

been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be

allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).  Since

Section 502(c) of the Bankruptcy Code allows estimation "for purpose of allowance,"

these estimations must be made subject to Cadence's rights to reconsideration under

Section 502(j) of the Bankruptcy Code.  See, e.g., In re MCorp. Fin., Inc., 137 B.R. 219,

226 (Bankr. S.D. Tex. 1992 ("[A]ny claim estimated under § 502(c) is subject to

adjustment per § 502(j) after the claim has been liquidated or the contingency

removed."); Woburn Assocs. V. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 n.8

(1st Cir. 1992) ("Under Bankruptcy Code § 502(j), the holder of a contingent claim

incorrectly estimated at the time of allowance may request reconsideration and the court

'may increase or decrease the amount of [the] prior allowance . . or enter any other

appropriate order.'").  Furthermore, Bankruptcy Rule 3008 provides that: "A party in

interest may move for reconsideration of an order allowing or disallowing a claim against

---

[19]    Although the Motion does not specifically exempt its estimation procedures from Section 502(j) of the
Bankruptcy Code, the summary proceedings contemplated do not provide that this Section is applicable.

the estate." Fed. R. Bankr. P. 3008. Therefore, by failing to provide that Cadence may request reconsideration, the proposed procedures are overreaching.

37.    The Debtors provide no legal basis for depriving Cadence, or other claimants, of their rights under Section 502(j) of the Bankruptcy Code. Therefore, the procedures sought in the Motion cannot be affirmed.

WHEREFORE, for the foregoing reasons, Cadence respectfully requests the following relief:

(i)    That the Court deny, in its entirety, the Motion in respect of the Cadence Claims;

(ii)    That the Court grant the contemporaneously-filed Motion for Relief from the Automatic Stay so as to allow Action to proceed in the United States District Court for the Eastern District of Michigan (Southern Division);

(iii)    That the Court direct that the scheduling orders and trial of the Action by the District Court shall be applicable to the Claims and the Administrative Expense Claim asserted by Cadence; and

(iv)    That the Court grant Cadence such other and further relief as is just and proper.

Respectfully submitted this 22nd day of November 2006.

ALSTON & BIRD LLP

 /s/ Dennis J. Connolly
Dennis J. Connolly (DC-9932)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777
*Counsel to Cadence Innovation LLC*

- 21 -