Hearing Date and Time: November 30, 2006 at 10:00 a.m.
Response Date and Time: November 24, 2006 at 4:00 p.m.

WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
Patrick B. Howell (State Bar No. 1008527)
Ann M. Maher (State Bar No. 1000529)
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Contact Person Email: phowell@whdlaw.com

Attorneys for HB Performance Systems, Inc.



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :
                                          :    Chapter 11
        DELPHI CORPORATION, et al.,       :
                                          :    Case No. 05-44481 (RDD)
                Debtors.                  :
                                          :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## HB PERFORMANCE SYSTEMS, INC.'S RESPONSE TO DEBTORS' (I) THIRD OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) CLAIMS WITH INSUFFICIENT DOCUMENTATION, (B) CLAIMS UNSUBSTANTIATED BY DEBTORS' BOOKS AND RECORDS, AND (C) CLAIMS SUBJECT TO MODIFICATION AND (II) MOTION TO ESTIMATE CONTINGENT AND UNLIQUIDATED CLAIMS PURSUANT TO 11 U.S.C. § 502(c)

HB Performance Systems, Inc., an unsecured creditor in part and a partially secured

creditor under 11 U.S.C. §§ 553 and 506, by its attorneys, Whyte Hirschboeck Dudek S.C.

hereby responds to Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. §

502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims with Insufficient Documentation, (B)

Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification

and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. §502(c)

("Third Omnibus Objection to Claims") and states as follows:

## DESCRIPTION OF CLAIM

1.      HB Performance Systems, Inc., formerly known as Hayes Brake, Inc. ("HB")

entered into an Engineering Services Agreement ("Agreement") with Delphi Automotive

Systems, LLC (the "Debtor") on August 1, 2002, wherein the Debtor agreed to assist HB with

motorcycle brake systems HB supplied to Harley-Davidson, Inc. ("Harley") for use on Harley

motorcycles. A true and correct copy of the relevant non-confidential portions of the Agreement

were attached to the HB Proof of Claim filed on July 31, 2006 and are attached to this Response

as Exhibit 1 and incorporated herein by reference.

2.      Pursuant to the Agreement, the Debtor agreed to make qualified engineers and

support staff available to HB beginning August 1, 2002 for an average of 10,000 hours per year.

3.      In return, HB agreed to pay the Debtor for services it agreed to supply pursuant to

the terms of the Agreement. Pursuant to Exhibit III to the Agreement, <u>Compensation</u> at

paragraph 1, "the total payment to Delphi shall be a minimum of $1.0 million per year, unless

Hayes Brake gets less than 100% of the 2007 Harley-Davidson Platform. If Hayes Brake gets

less than 100%, then this Agreement shall be subject to renegotiation."

4.      HB and the Debtor were notified in early 2003 that HB would not receive 100%

of the 2007 Harley Platform. Pursuant to the Agreement, upon receiving this notification, HB

attempted to renegotiate the Agreement, however the Debtor refused. In the alternative, the

Debtor assured HB that it would continue to provide the 10,000 hours of service to HB per year.

5.      During contract year 2002-2003, the Debtor provided 3,673 hours of service to

HB. During contract year 2003-2004, the Debtor provided 5,281 hours of service to HB. During

contract year 2004-2005, the Debtor provided only 1,753 hours of service.

6.    Despite not providing the required hours of service, HB continued to pay the Debtor $75,000 per month as required in the Agreement through December 2004. Due to not receiving the required number of service hours in the past three contract years, HB stopped making monthly payments in January 2005.

7.    On June 3, 2005, the Debtor sent a letter to HB indicating it had not received monthly payments for January 2005 through June 2005 per the Agreement for a total amount due of $450,000 and demanding payment of same no later than June 15, 2005. A true and correct copy of the June 3, 2005 letter is attached as Exhibit 2 and incorporated herein by reference.

8.    On June 16, 2005, after HB refused to pay additional monies under the Agreement for service hours it was not receiving, the Debtor sent a Notice of Termination indicating the Agreement would terminate in June 2007. Also in this letter, the Debtor indicated it would communicate directly with Harley with respect to the Delphi/HB relationship, a direct violation of the confidentiality agreement which was in place. A true and correct copy of the June 16, 2005 letter is attached as Exhibit 3 and incorporated herein by reference.

9.    In a September 7, 2005 letter from HB to the Debtor, HB indicated that due to the Debtor contacting Harley directly, in breach of the Agreement, the Agreement was terminated immediately and it demanded immediate payment of $1,778,100 pursuant to Paragraph 4.1(g) of the Agreement which states "In case of termination, the Parties shall reimburse the other Party … 2) for amounts paid for which the other party has not already received the associated deliverables …". A true and correct copy of the September 7, 2005 letter is attached as Exhibit 4 and incorporated herein by reference. Attached as Exhibit 5 and incorporated herein by reference is a chart indicating that HB had paid for 23,750 hours of service, but only received 17,781 hours of service as of the time that HB stopped making its monthly payments to the Debtor in December 2004.

10.    In a September 27, 2005 letter the Debtor declined making the $1,778,100 payment, contested the immediate termination of the Agreement and declined to meet with HB in an effort to resolve its differences. A true and correct copy of the September 27, 2005 letter is attached as Exhibit 6 and incorporated herein by reference.

11.    As a result of the impasse between the Debtor and HB, HB commenced litigation in Ozaukee County, Wisconsin Circuit Court as Case No. 05-CV-419 on September 28, 2005. A true and correct copy of the Ozaukee County Complaint was attached to the Proof of Claim filed on July 31, 2006 and is attached to this Response as Exhibit 7 and incorporated herein by reference. The Debtor identified this litigation in response to Question 4(a) of the Statement of Financial Affairs filed in these proceedings.

12.    On October 8, 2005 and October 14, 2005, the Debtor commenced its Chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of New York, thereby staying the Ozaukee County Wisconsin litigation.

13.    As a result of the Debtor's breach of the Agreement, HB has suffered damages in the amount of at least $1,778,100 which includes payments made to the Debtor for which no corresponding service was received and lost value, for which it filed Proof of Claim No. 14012 on July 31, 2006.

## LEGAL BASIS FOR ALLOWANCE OF CLAIM

14.    In the Debtors' Third Omnibus Objection to Claims, Claim No. 14012 of HB was objected to as an unsubstantiated claim. Unsubstantiated claims are described as claims for which the Debtor's books and records indicate the liability is not owing or that the asserted claim does not exist.

15.    As stated in Paragraph 11, the litigation commenced by HB on account of the Debtor's breach of the Agreement was identified in the Statement of Financial Affairs. In

addition, Schedule G – Executory Contracts and Unexpired Leases (page 5052 of 12307 in Case No. 05-44640) identifies the Agreement as an executory contract consisting of professional services as detailed herein.

16.    The specific legal basis for HB's proof of claim is the existence of the Agreement between HB and the Debtor followed by the Debtor's breach of the Agreement causing damages to HB as a direct and proximate result of the Debtor's breaches.

17.    In particular, the Debtor breached the Agreement by:

    a.    failing to renegotiate it as the result of the fact that, in 2003, Harley did not award HB with 100% of the 2007 Platform;

    b.    filing to provide HB with an average of 10,000 hours of service per year; and

    c.    notifying Harley that it was no longer doing business with HB.

18.    At the same time, the Debtor has indicated that it considers HB to be in breach of the Agreement by failing to pay for engineering services which were not provided by the Debtor. The Debtor asserts that it has the right to terminate the Agreement with two (2) years notice and that the Debtor is entitled to be paid for engineering services under the Agreement regardless of whether the Debtor provided (or provides) such services.

19.    HB and the Debtor have respective claims against the other subject to further liquidation and set-off under 11 U.S.C. §§ 553, 506 and 365.

## EVIDENCE UPON WHICH THE CLAIM IS BASED

20.    The evidence upon which HB's claim is based is set forth in the "Description of Claim" section above as well as being attached to this Response as Exhibits 1 through 7. Individuals at HB likely to be used for testimonial evidence include, but would not be limited to, Russ Dudan, Rod Fostner and Troy Tessmer.

## UNLIQUIDATED AND CONTINGENT CLAIMS

21.    Upon liquidation of the claim, HB believes they have an allowable general unsecured claim of $1,778,100 as set forth in paragraph 13 of this Response.  However, as stated above, HB believes that the respective claims asserted by the parties or to others may be appropriately set-off against one another.

## REPLIES TO HB PERFORMANCE SYSTEMS, INC.'S RESPONSE

22.    Any and all replies to HB's Response to Debtors' Third Omnibus Objection to Claims should be directed to the name and address on the Proof of Claim and restated below:

HB Performance Systems, Inc.
c/o Whyte Hirschboeck Dudek S.C.
Attn:  Ann M. Maher
Attn:  Patrick B. Howell
555 East Wells Street, Suite 1900
Milwaukee, WI  53202
Telephone:  (414) 978-5526
Facsimile:  (414) 223-5000
Email:  amaher@whdlaw.com
Email:  phowell@whdlaw.com

## SETTLEMENT AUTHORITY

23.    Any and all settlement and/or resolution discussions should be directed to Ann M. Maher and/or Patrick B. Howell as indicated in paragraph 22 above.

WHEREFORE, HB Performance Systems, Inc. requests that the Court enter an Order allowing its claim as a general unsecured claim in the amount of $1,778,100.00 and for further relief as the Court deems just and reasonable.

Dated at Milwaukee, Wisconsin, this 21 day of November, 2006.

WHYTE HIRSCHBOECK DUDEK S.C.

By: _____
Patrick B. Howell
State Bar No. 1008527
Ann M. Maher
State Bar No. 1000529

One of the attorneys for HB Performance
Systems, Inc.

Of Counsel:

Whyte Hirschboeck Dudek S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
(414) 273-2100

# EXHIBIT 1

## AGREEMENT

This Agreement is by and between **HAYES BRAKE, LLC**, a corporation duly organized under the laws of Delaware and having its registered office at 5800 W. Donges Bay Rd., Mequon, WI 53092 USA ("Hayes"), and **DELPHI Automotive Systems, LLC**, a corporation duly organized under the laws of the state of Delaware of the USA and having its registered office at 5725 Delphi Drive Troy, Michigan 48098-2815 USA ("Delphi"), Hayes and Delphi individually referred to in this Agreement as a "Party" and collectively as the "Parties".

**Recitals:**

A.      Hayes Brake, LLC currently supplies motorcycle brake systems to Harley-Davidson, Inc. ("Harley-Davidson") for use on Harley-Davidson motorcycles ("Current Brake").

B.      Harley-Davidson has requested a proposal ("RFQ") from Hayes for a motorcycle brake system to be used on the proposed 2007 Harley-Davidson Brake System Platform ("2007 Brake").

C.      Hayes has issued an RFQ to Delphi for Delphi's assistance with the Current Brake and the proposed 2007 Brake (see Exhibit V). This will include Delphi providing its know-how and expertise in the analysis, review, evaluation (including testing), and recommend improvements in the Current Brake and the 2007 Brake, including reviewing associated manufacturing and assembled methodologies, with a view toward improving brake design and manufacturing, and making recommendations about specific components.

D.      Delphi agrees to provide such assistance in accordance with this Agreement, including the Exhibits attached hereto.

In consideration of the mutual covenants contained in this Agreement, the Parties agree to the following terms and conditions:

## ARTICLE I

### The Product

1.1      The "Product(s)" provided for in this agreement includes the Current Brake products Hayes Brake supplies to Harley-Davidson, the 2007 Brake and the Advanced Brake contemplated for the 2007 Harley-Davidson Brake System Platform, and a Controlled Brake which could be integrated with other Controlled Brake Components.

1.2      The Current Brake and the 2007 Brake include, but are not limited to: calipers, linings, rotors, brake hoses and pipes, rear brake pedals, hand brakes, brake light switches, and master cylinders. 2007 Brake Systems are all 2007 Brake Components integrated as a system with the addition of all required fasteners. The Advanced Brake includes the necessary 2007



EXHIBIT

A

Brake Components, allowing for technological features such as ABS. The Controlled Brake includes, but is not limited to, modulators and a control unit, and is integrated with other Controlled Brake Components.

## ARTICLE II

### The Program

2.1     The "Program" includes the optimization of the Current Brake and the development of the 2007 Brake and Advanced Brake for the Harley-Davidson 2007 Brake System Platform ("Platform"), consistent with Harley-Davidson's requirement to be a world class leader in motorcycle brakes. Delphi agrees to use its resources, such that Hayes Brake will have a braking Program to meet Harley-Davidson requirements.

2.2     Delphi, will make qualified engineers, and support staff, available to Hayes Brake beginning the effective date hereof, for an average total of 10,000 hours per year to support the Program. This includes the use of related equipment, tools and materials. Overall Program direction will be provided by Hayes Brake. Delphi resources will belocated at Hayes Brake, Harley-Davidson, or at Delphi as necessary to support the Program. Delphi agrees to allow Hayes Brake personnel to be on site at Delphi as needed to ensure project success.

These engineers will provide support to Hayes Brake in the design, analysis, testing, evaluation, and recommend improvements in the Current Brake, the 2007 Brake, and the Advanced Brake. This includes reviewing associated manufacturing and assembly methodologies, with a view toward improving brake design and manufacturing, and making recommendations about specific components, improving supply chain management (access to Delphi's supply base), and cost controls.





2.3    Delphi agrees as follows:

a) To review the Current Brake and make recommendations for improvements in cost and brake performance;

b) To review the Hayes Brake proposed 2007 Brake for Harley-Davidson and make recommendations for improvements in cost and brake performance;

c) To allow access to Delphi's advanced braking technology to Hayes Brake, for use in the 2007 Platform, to include such features as ABS, system integration, etc. ("Advanced Brake"), including prototypes; such as the customer may require, in cooperation to develop an Advanced Brake System. Hayes will retain responsibility for the development and sale of the 2007 Brake, and Delphi will retain the right to sell all controlled brake modulator and related hardware. If necessary, licensing of Delphi Technology will be specifically covered under a separate licensing agreement under reasonable commercial terms.

d) To take part in Hayes Brake' presentations to Harley-Davidson as needed to secure the 2007 Brake System Platform, and as needed from time to time during the life of the contract.

2.4    Each Party will make the resources available that it deems necessary to fulfill its Program responsibilities, within the limits defined in 2.2.

2.5    Delphi will, on a timely basis, do such testing, analysis and development, for Hayes Brake, at its cost, as is reasonably requested by Hayes Brake in support of the Program and as defined in the Statement of Work, attached hereto as Exhibit II. All test fixtures, other testing, analysis and development as requested by Hayes Brakes will be quoted for time and material and can debit against the allotted 10,000 man hours or be invoiced separately as parties shall agree from time to time.



3



2.6    The parties intend this Agreement to define the first step in a broader relationship which would allow Delphi to develop an integrated system of control suspension, control engine, and control brakes for Harley-Davidson, and other systems for different applications.

2.7    The Harley-Davidson Foundation Brake RFQ is attached as Exhibit I.

### ARTICLE III

### Harley-Davidson Contract

3.1    Hayes Brake has contractual Agreements with Harley-Davidson for the Current Brake. Hayes Brake has made a quotation to Harley-Davidson for an Agreement with Harley-Davidson for the 2007 Brake, as part of Harley-Davidson's 2007 Platform, and intends to make proposals for the Advanced Brake. Hayes Brake will retain all rights and responsibilities in conjunction with any Agreement with Harley-Davidson.

### ARTICLE IV

### Term and Termination

4.1    a.    This Agreement is effective as of the date the Parties agree, and will continue through the life of the Harley-Davidson 2007 Brake System Platform to Hayes Brake. In the event that Harley-Davidson does not award the 2007 Brake System Platform to Hayes Brake by December 31, 2002, or sometime after the award of the 2007 Brake Program, cancels Hayes Brake as the Brake Supplier, then this Agreement shall terminate.

b.    Notwithstanding the foregoing, one year after the 2007 Harley-Davidson Platform launch, either Party may terminate this Agreement by providing a two (2)-year written notice to the other Party.

c.    In the event that Hayes Brake sells its assets which relate to the Harley-Davidson business, or has a change of control of its member interest, then the purchaser of the assets, or new controlling member, or Delphi, has the right to terminate this Agreement, with six (6) months' written notice.



4



d.      In the event that Harley-Davidson awards a significant part of the 2007 Brake (brake system, system integration or control braking business) to a competitor of Delphi, Delphi has the right to terminate this Agreement, with two (2) year written notice.

e.      In the event that Delphi or Hayes Brake fails to meet its obligations as provided herein, the other party has the right to terminate this Agreement, with six (6) month's written notice.

f.      In the event that either party elects to terminate this Agreement , both parties agree to work with Harley-Davidson to ensure a smooth transition with minimal impact on Harley-Davidson.

g.      In case of a termination, the Parties shall reimburse the other Party for either: 1) the costs proven to have been incurred up to the date of termination, which have not been paid, but which would normally be paid; or 2) for amounts paid for which the other party has not already received the associated deliverables, as provided for in the Statement of Work attached hereto.

## ARTICLE V

### Statement of Work

5.1     A Statement of Work is attached as Exhibit II.

## ARTICLE VI

### Compensation

6.1     The Compensation to be paid is described in the attached Exhibit III.

## ARTICLE VII

### Terms and Conditions

7.1     Terms and conditions governing this Agreement are attached in Exhibit IV.



5



The Parties have caused their duly authorized representatives to execute two copies of this Agreement on the date(s) given below.

**Hayes Brake LLC**

By: _Rand McNally_

Print Name: _RAND McNALLY_

Title: _President & CEO._

Date: _8.1.2002_

**Delphi Automotive Systems LLC**

By: _Bruce T Beck_

Print Name: _BRUCE T BECK_

Title: _CHIEF ENGINEER CHASSIS MODULES_

Date: _01 AUG2_

6

Exhibit II

## Statement of Work

### Immediate Program Opportunities:

1) **ABS modulator and control system from concept through production for Harley-Davidson Police bikes and limited FL volumes** (Current for MY07 foundation dictated by Harley-Davidson timing.)

2) **MY07 Foundation Brake System Support**
   a) Technical and Process Training for Hayes Brake -- ADAMS, Advanced Braking, Reliability Testing, NVH, Program Management, Supplier Sourcing, Manufacturing Methods, Foundation Brake Design
   b) Program support:  Risk analysis, FMEA review, analysis plan, sourcing support, and system analysis support

3) **Current Brake System Support**
   a) NVH  plan and support
   b) Manufacturing, supply chain and product cost reduction opportunities
   c) Pad wear improvement opportunities

### Working Construct:

### 1)  ABS add-on system for Harley-Davidson Police and FL's

   a) Hayes Brake will retain "Tier 1" status with Harley-Davidson for the ABS Base Brake System application and Delphi will be "Tier 1" for the sale of ABS Modulators to Harley-Davidson and both



Hayes Brake and Delphi will submit a joint commercial proposal for the complete controlled brake system to Harley-Davidson.

b) Delphi is responsible for ABS modulator specification, design, performance, validation, reliability, supply, and the resources associated with the project (modulator development will not count against Hayes Brake 10,000 man hour per year allowance, however integration of the modulator into the vehicle environment will be part of the 10,000 hours of technical support, platform specific algorithm development can be part of the 10,000 hours of technical support and will not exceed 320 man hours per platform application.).

c) Delphi will share information with Hayes Brake related to ABS based on normal supply relationship. Delphi proprietary information will not be shared.

d) Hayes Brake will assign an engineer to work directly with Delphi to set system specifications and defining algorithms.

e) Delphi will be responsible for the development of all related software and algorithms

f) Hayes Brake is responsible for the controlled brake / foundation brake system specification, design, performance, validation, reliability, supply, and resources associated with the project.

g) Hayes Brake will lead vehicle integration, however, Harley-Davidson will need to direct the Hayes Brake/Delphi team on vehicle locations and envelope sizes.

h) Vehicle level prove-out and tuning will be a collaborative effort between Hayes Brake and Delphi on a closed course at a mutually agreed location.

## 2)   MY07 Foundation Brake System Support

a) MY07 Foundation Brake System Program Support:  Risk analysis, specification review, FMEA review, analysis plan, sourcing support, engineering support and system analysis support.

   i)   Hayes Brake and Delphi will review the Phase #0 and Phase #1 project plans and determine where Delphi support should be applied for the first year.

   ii)   Quarterly consultation and program review sessions will be held with a Delphi executive mentor and appropriate members of Delphi engineering and reliability team and the Hayes Brake development team.

3





iii) Delphi activity will be required in advanced manufacturing and supply chain activities early in the program.

iv) Delphi will be requested to provide laboratory, dynamometer, data reduction, analysis and validation assistance from Delphi facilities and resources will be allocated based on constraints and priority of all programs in queue. All tests, fixtures, and validation resources will be quoted for test time and material, and are subject to the terms of Article 2.5 of this Agreement.

b) Technical and Process Training for Hayes Brake – ADAMS, CAE Analysis, Advanced Braking, Reliability Testing, NVH, Program Management, Supplier Sourcing, Manufacturing Methods, Foundation Brake Design

i) Delphi will provide Hayes Brake with in-depth training on critical topics for continued Hayes Brake business growth and development.

ii) Delphi agrees to allow reasonable access to Delphi facilities, as needed to ensure project success, and Hayes Brake personnel will be subject to site rules for safety and confidentiality.

c) ADAMS and CAE Analysis

i) Hayes Brake personnel will interact with Delphi's Manager of the mechanical integration group to fulfill the analysis (ADAMS, thermal analysis, structural analysis, dynamic analysis) plan deliverables for the MY07 project.

(1) Hayes Brake personnel to reside at Delphi's Tech Center Brighton to work under the direction of the Mechanical Integration Group on a specific Hayes Brake project.

ii) Delphi should direct and support the contract as soon as it is signed with Harley-Davidson for the 2007 project to work hand in hand with Hayes Brake personnel in creating the complete motorcycle model and validating the models for dynamic and NVH analysis.

**3)  Current Brake System Support**





a) Support in the identification and solution to the root cause of ~620 Hz brake noise on the current Harley-Davidson platforms

   i) Delphi will assign NVH resources to work with Hayes Brake personnel.

   ii) Delphi will be requested to provide laboratory, dynamometer, data reduction, analysis and validation assistance from Delphi facilities and resources will be allocated based on constraints and priority of all programs in queue. All tests, fixtures, and validation resources will be quoted for test time and material, and are subject to the terms of Article 2.5 of this Agreement.

   iii) Noise solution for the current brake system must be available for a MY05 launch.

   iv) Delphi will support activities to assist Hayes Brake to develop friction material to improve wear characteristics with a target of 15% improvement with no negative effect on brake noise.

b) Cost reduction efforts on the current Hayes Brake product for the MY05 and MY06 offerings.

   i) Delphi and Hayes Brake will jointly review current product, processes, and supply chain for potential savings.

   ii) Potential opportunities will need to be analyzed through business cases jointly developed by Hayes Brake and Delphi.

   iii) A joint Hayes Brake and Delphi committee will prioritize cost reduction efforts based on risk, return, and customer impact.

   iv) Small project teams will be setup to focus on individual cost reduction efforts.

   v) The team should focus on internal changes to our processes for MY04 through MY06. Design changes can be incorporated into the MY06 product, but the payback of the cost reductions would be limited to 1 – 2 years.




**Working Rules:**

In order to insure speed, thoroughness, effectiveness, and efficiency of the Hayes Brake / Delphi team the following working rules should be adopted.

1) All programs need to be reviewed jointly by Hayes Brake and Delphi to determine the resource budget; what types of resources should be applied to which projects and when.

2) Both Hayes Brake and Delphi employees are to interact with each company's tools and techniques freely as required to support the program. All activities are governed by the terms of confidentiality as provided in paragraph 3 of Exhibit IV herein. All intellectual property is protected as provided in paragraph 4 of Exhibit IV herein.

3) Each party will be responsible for their own travel related expenses associated with the exchange program and facilities and equipment usage, (not including laboratory, test, and dyno) at the others site are to be forgiven by both sides as a cost of doing business in the program.

4) In the event that Delphi resources are requested by Hayes Brakes to re-locate to Harley-Davidson or Hayes Brake as a resident, Hayes Brake will reimburse Delphi for Delphi normal and customary employee re-location expenses.

5) Formal request and planning process for resources shall be created and agreed to between Hayes Brake and Delphi.

6) A reporting system must be created to track the usage of the 10,000 hour per year allotment.

6

BTB



Exhibit III

## Compensation

1.      Hayes Brake will pay 3% of OEM Harley-Davidson "Net Sales" for the Current Brake, and

for the 2007 Harley-Davidson Platform, as defined in the current RFQ for the term of the 2007 Platform

OEM sales, a copy of which is attached hereto as Exhibit "I" . Hayes Brake shall pay Delphi $75,000 on

the 1st of every month with adjustments made quarterly to the 3% requirement.  Notwithstanding the

foregoing, the total payment to Delphi shall be a minimum of $1.0 million per year, unless Hayes Brake

gets less than 100% of the 2007 Harley-Davidson Platform.  If Hayes Brake gets less than 100%, then

this Agreement shall be subject to renegotiation.  The parties agree that the maximum payment shall be

$1,500,000 (adjusted for inflation with the year 2002 as the base) per year, no matter what the sales for

the Current Brake, or the 2007 Brake total.


Such payment will commence at the execution of this document.  This compensation is for

engineering services and is not intended as payment for a license in Delphi's Intellectual Property.


In the event that Delphi becomes the Tier 1 supplier to Harley-Davidson for the Current Brake or

the 2007 Brake, these payments shall cease.


"Net Sales" shall mean any and all sales, less returns, allowances, and credits, on OEM Harley-

Davidson Braking System sales for the Current Brake and the 2007 Harley-Davidson Advanced Brake

Platform.  No payment will be due to Delphi for Hayes Brake's sales to Harley-Davidson for the

"Sportster" platform, parts, or accessories, or other non-brake sales to Harley-Davidson, including

clutches.


2.      Hayes Brake shall account for OEM Harley-Davidson Sales quarterly, commencing with

the execution of this agreement.  Such accounting shall be completed within forty-five (45) days after the

BTB

7



end of the quarter. Hayes Brake shall pay the amount based on Net Sales to Harley-Davidson during the quarter, less all monthly payments during the period.

3.      Hayes Brake will share with Delphi 50% of any cost savings realized by Hayes Brake as a direct result of Delphi's involvement with Hayes Brake. These savings are exclusive of the $1.5 million maximum fee due Delphi under paragraph 1 above.

The cost reduction savings will be split after first applying any savings to offset the price reductions already included in the 2007 Platform. Delphi acknowledges that Hayes Brake is required to share cost savings with Harley-Davidson and that Hayes Brake will only share the portion of cost savings actually realized by Hayes Brake resulting from this agreement. Hayes Brake will solely determine whether or not to implement a proposed cost savings program.

If any capital improvements are required to achieve such savings, Hayes Brake will, in its sole discretion, determine whether or not to make such capital improvement. Any savings will be calculated after the cost of capital improvements. Capital Improvements will be considered a "depreciation expense" in calculating any savings, and such expense will be carried forward until a "net savings" can be realized.

4.      In the event that Delphi wishes to use any concepts or ideas generated as a direct result of Hayes involvement with Delphi, as defined in Section 4 of Exhibit IV, a separate agreement will be negotiated.

5.      The Parties contemplate, for future Harley-Davidson platforms, that Delphi will be the Tier One supplier at such time as Delphi provides an Integrated Controlled Brake System. Delphi agrees that Hayes Brake would then supply brake components to Delphi, based on competitive price, quality and delivery with the right of last refusal for current and future business. tegrated Controlled Brake Syste. In

[3] B

8



the event Delphi becomes the Tier One supplier to Harley-Davidson, this Agreement shall terminate, except for the obligation to purchase the Brake Systems from Hayes Brake as provided for above.



9



**Exhibit III-A**

## <u>Employees Subject to Non –Hire Provision</u>
### (Paragraph 2 of Exhibit IV)

### <u>Hayes Brake</u>
- **Rand McNally**
- **Jim Buckley**
- **Russ Dudan**
- **Bill Jacob**
- **Jim Dimsey**
- **Korey Johnson**
- **Lee Pfeil**
- **Toby Lichensteiger**
- **Ryan Lichensteiger**
- **Antonio Rodriguez**
- **Matt Soik**
- **Glen Metzefeld**
- **Dan Haas**
- **Gabe Lucas**
- **Pat Finucan**
- **Scott Stonecipher**
- **Lee Schultz**
- **Tim Abhold**
- **Tim Poop**
- **Pat Bartels**

### <u>Delphi</u>
- **Joe Elliott**
- **Bryan Fulmer**
- **Tom McCready**
- **Mark Sonnenberg**
- **Kevin O'Dea**
- **Richard Brown**
- **Bob Mattern**
- **Marc Georgin**



# EXHIBIT 2

# DELPHI

Gregory V. Prucey
(248) 813.4819
gregory.v.prucey@delphi.com

June 3, 2005

## BY FACSIMILE AND FEDERAL EXPRESS

Rand McNally
President CEO
Hayes Brake LLC

*Re:    Engineering Assistance Payment*

Dear Mr. McNally,

Pursuant to the Engineering Services Agreement (the "Agreement") between Hayes Brake, LLC and Delphi Automotive Systems LLC, dated August 1, 2002, Hayes Brake is obligated to pay Delphi $75,000.00 (Seventy-Five Thousand Dollars) on the first of every month with adjustments made quarterly to the 3% (Three Percent) calculation (the "Payment") against Hayes Brake's OEM Harley-Davidson Net Sales for the Current Brake, and for the 2007 Harley-Davidson Platform, as defined in the RFQ, a copy of which is referenced as Exhibit I in the Agreement.

As of the date of this letter Delphi has not received the aforementioned Payment for January, due in March, the Payment for February, due in April, and the Payment for March due in May, and the total of these Payments is $225,000.00 (Two Hundred Twenty-Five Thousand Dollars). The invoices for Payments due in April, May, and June are in the process of being issued and now total an additional $225,000.00 (Two Hundred Twenty-Five Thousand Dollars). Delphi considers these Payments for April, May, and June due per the Agreement.

The Payment delinquency is unfortunate and unacceptable.

Recognizing that Delphi has continued to honor current activities per Hayes Brakes requests against the 10,000 (Ten Thousand) average man hours provided each year, the fact remains that, Hayes Brake now owes Delphi a significant amount of money.

Therefore, to prevent Delphi from proceeding with legal action to collect all monies owed to Delphi, Hayes Brake must undertake the following:

By June 15, 2005, present to Delphi the total Payment in the amount of $450,000 (Four Hundred Fifty Thousand Dollars) to be applied to the amounts owed under the Agreement and continue to work in good faith to resolve your concerns through open dialogue.

Mr. Rand McNally
June 3, 2005
Page 2 of 2

Until Hayes Brake meets this requirement, Delphi's engineering support activity will be suspended due to material breach of the Agreement by Hayes Brake for failure to meet the Payment obligation.  Certainly Hayes Brake must understand Delphi's need to take this action.

Nothing contained in this letter constitutes a waiver of any rights of Delphi under the Agreement, nor any commitment by Delphi to modify the terms of the Agreement.  Delphi shall not be bound by any modification of its contractual agreements with Hayes Brake unless and until Delphi so agrees in writing.

I look forward to hearing from you or your representative to immediately put these actions into effect.

Sincerely,

Greg Prucey
Manager, Mergers & Acquisitions
Delphi Corporation


cc:    Mr. D. Warrell
       Mr. M. Reder
       Mr. K. Wan
       Mr. D. Unrue
       Mr. K. Weaver

# EXHIBIT 3

# DELPHI

Gregory V. Prucey
(248) 813.4819
gregory.v.prucey@delphi.com

June 16, 2005

**BY FACSIMILE AND FEDERAL EXPRESS**

Rand McNally
President CEO
Hayes Brake LLC

*Re:*   *Notice of Termination - Engineering Assistance Agreement*

Dear Mr. McNally,

Referencing the Engineering Services Agreement (the "Agreement") entered into by and between Hayes Brake, LLC and Delphi Automotive Systems, LLC, dated August 1, 2002, Delphi had notified Hayes in a letter dated June 3, 2005, that Hayes was delinquent in their obligation to pay Delphi the contractual payments for services since January 2005.

Hayes has not remedied the delinquency referenced in the letter of June 3, 2005, as of the date of this letter. Although Delphi has worked in good faith to provide the contractual services to Hayes in support of our mutual relationship with Harley–Davidson, the payment delinquency is unacceptable.

Since Harley-Davidson has awarded a significant part of the 2007 Brake System Platform to Brembo (a competitor of Delphi), Delphi is invoking its right to terminate the Agreement with two (2) years notice per Article IV Section 4.1.d of the Agreement. This period of service should provide sufficient transition time for Harley-Davidson. Delphi will communicate the change in Delphi's relationship with Hayes to Harley-Davidson.

Delphi will proceed with legal action to recover all contractual payments owed by Hayes to Delphi. Delphi had hoped to avoid reaching this point. Delphi must pursue remedy for the payment breach by Hayes.

Nothing contained in this letter constitutes a waiver of any rights of Delphi under the Agreement, or any commitment by Delphi to modify the terms of the Agreement. Delphi shall not be bound by any modification of its contractual agreements with Hayes Brake unless and until Delphi so agrees in writing.

Sincerely,

Greg Prucey
Manager, Mergers & Acquisitions
Delphi Corporation

cc:    Mr. D. Warrell
       Mr. M. Reder
       Mr. K. Wan
       Mr. D. Unrue
       Ms. C. Comerford
       Mr. S. Pfeifenberger

# EXHIBIT 4

**PERFORMANCE SYSTEMS INC.**

Office of
**Rand McNally**
President and
Chief Executive Officer
Direct: (262) 238.4305
Facsimile: (262) 512.4200
Email: rand.mcnally@hbpsi.com

September 7, 2005

<u>Facsimile to 248.813.3825 and Express Mail</u>

Delphi
Energy & Chassis Systems
M/C 480-405-100
5725 Delphi Drive
Troy, MI 48098-2815

Att: Mr. Greg Prucey, Manager, Mergers & Acquisitions

Re: Response to August 8th, 2002 letter regarding the Engineering Services Agreement

Dear Mr. Prucey:

I am disappointed that despite my reminder of Delphi's obligations under the Engineering Service Agreement (the "Agreement"), Delphi communicated with Harley-Davidson ("H-D") about this dispute in violation of our confidentiality agreement and without first consulting with me about the content of that communication. This is a breach of our Agreement. Your reference to Section 9 pertaining to "Media" releases is inappropriate because that section includes a restriction by "<u>**excluding**</u> specific terms of this agreement." Termination is a specific term of our Agreement. In addition, at Delphi's meeting with H-D, we have been advised Delphi indicated it was "no longer doing business with Hayes Brake". In light of these facts, I question whether Delphi is truly committed to participating in "good faith negotiations as a way to avoid litigation."

Your message to H-D was we are "no longer doing business". We interpret the communication of this change in our relationship to signal to H-D there are no further deliverables to H-D from the HB/Delphi relationship. In this case, we consider the relationship terminated immediately.

Paragraph 4.1(g) provides that "In case of a termination, the Parties shall reimburse the other Party… for amounts paid for which the other party has not already received the associated deliverables…". Please find attached an invoice for non-rendered services totaling 17,781 hours amounting to $1.7MM per the Agreement. Please respond promptly with payment information.

I am willing to meet with a representative of Delphi who has authority to enter into a binding settlement agreement to make one last effort to resolve this matter. I am available to meet in a neutral location, like Chicago, during the week of September 12, 2005. Please let me know by Friday, September 9th, whether Delphi is interested in making an effort and, if so, what dates during that week work for you.

Sincerely,

<u>Rand McNally</u>



Delphi September 8, 2005 letter V5.doc

5800 W. Donges Bay Road ♦ Mequon, Wisconsin 53092 U.S.A.

# PERFORMANCE SYSTEMS, INC.

Phone: 262-242-4300

**REMIT TO:**
Performance Systems, Inc.
Box 88114
Milwaukee, WI 53288-0114

**\*Invoice\***

| Date | 9/7/05 |
|------|--------|
| Inv # | DEL-001 |

**\*Invoice\***

| Bill To: | Customer # |
|----------|-----------|
| Delphi | |
| Energy & Chassis Systems | |
| 5820 Delphi Drive | |
| Troy, MI 48098 | |

| Ship To: |
|----------|
| Delphi |
| Energy & Chassis Systems |
| 5820 Delphi Drive |
| Troy, MI 48098 |

| Our Ord # | Customer Ord # | Date Ordered | Date Shipped | Salesperson | Payment Terms |
|-----------|----------------|--------------|--------------|-------------|---------------|
| NA | NA | | NA | | Net 30 |

| PO # | Packing List # | FOB Point | Shipped Via | | Freight Terms |
|------|----------------|-----------|-------------|--|---------------|
| NA | NA | Per Instructions | | | NA |

| LN | Part Number and Description | Qty | Unit Price | Extended Amount |
|----|----------------------------|-----|------------|-----------------|
| 1 | Non-Rendered Services<br>Contract Years 2002 through 2005 | 1 | 1,778,100.00 | 1,778,100.00 |

**\*\* Invoice Total \*\***   1,778,100.00

# EXHIBIT 5

| Contract Year | Paid HB Hours | Hours Used | ABS Hours | Total Value | Non-Rendered Services | Delphi Refund |
|---|---|---|---|---|---|---|
| 2002/03 | 10000 | 3673 | 2296 | 1377 | 8623 | $862,300 |
| 2003/04 | 10000 | 5281 | 2442 | 2839 | 7161 | $716,100 |
| 2004/05* | 3750 | 1926 | 173 | 1753 | 1997 | $199,700 |
| TOTALS | 23750 | 10880 | 4911 | 5969 | 17781 | $1,778,100 |

* Paid for Aug, Sept, Oct, Nov, Dec in 2004/5 contract year (5*75k = 3750 hours)

# EXHIBIT 6

# DELPHI

Gregory V. Prucey
(248) 813.4819
gregory.v.prucey@delphi.com

September 27, 2005

**BY FACSIMILE AND FEDERAL EXPRESS**

Rand McNally
President CEO
Hayes Brake LLC

**Re:   *Engineering Services Agreement entered into by and between Hayes Brake, LLC ("Hayes") and Delphi Automotive Systems, LLC ("Delphi"), dated August 1, 2002 (the "Agreement") - Response to Hayes Brake Letter Dated September 7, 2005***

Dear Mr. McNally,

I write in response to your letter dated September 7, 2005.

First, Delphi appropriately communicated to Harley-Davidson the fact Delphi sent a termination notice to Hayes that will terminate the Agreement effective June 16, 2007, as permitted by Section 9 of Exhibit IV to the Agreement. Delphi's communication to Harley-Davidson stated the facts that the Delphi and Hayes Brake relationship was changing and we were in a wind-down period. Delphi employees did not discuss any specific terms of the Agreement with Harley-Davidson. Further, at no time did Delphi employees state to Harley-Davidson, to use your quote, that Delphi was "no longer doing business with Hayes Brake".

Secondly, your use of this incorrect statement as an attempt by Delphi to terminate the Agreement is inappropriate. Under the Section 4 of the Agreement, the Agreement may only be terminated by written notice under specific conditions so that incorrectly attributed statement would not be an effective termination under the Agreement. Also, Delphi has already notified Hayes by written notice on June 16, 2007 that Delphi is terminating the Agreement pursuant to Section 4.1.d of the Agreement. Under Section 4.1.d there is also a two-year wind down period so as not to leave Hayes and Harley-Davidson inconvenienced. Therefore, both Delphi and Hayes continue to have obligations related to the Agreement, including payment obligations by Hayes to Delphi, during this two-year wind-down period. As Delphi has stated repeatedly, including in my letter to you on August 8th, 2005, as always, Delphi stands ready to provide any additional engineering services due to Hayes under the Agreement.

Thirdly, your interpretation of Paragraph 4.1(g) as a clause providing Hayes the right to invoice Delphi for "non-rendered services" is incorrect. Delphi has fully satisfied its obligation to provide engineering services under the Agreement and no payment will be made against your invoice.

Regarding your demand for a meeting, as Hayes has made no attempt to resolve this issue, Delphi now requires Hayes to become current on all past payments from January 2005 through September 2005 prior to any meetings. In the meantime, Delphi will seek legal recourse to recover the monies owed by Hayes.

Nothing contained in this letter constitutes a waiver of any rights of Delphi under the Agreement, or any commitment by Delphi to modify the terms of the Agreement. As set forth in the Agreement, (Exhibit IV, Section 7), no modification of the Agreement is allowed except agreed to by the parties in writing.

Sincerely,

Greg Prucey
Manager, Mergers & Acquisitions
Delphi Corporation

cc:    Mr. D. Warrell          Mr. M. Reder          Mr. K. Wan
       Mr. D. Unrue            Ms. C. Comerford      Mr. S. Pfeifenberger

# EXHIBIT 7

AUTHENTICATED COPY
CLERK OF COURTS

STATE OF WISCONSIN            CIRCUIT COURT            OZAUKEE COUNTY

---

HB PERFORMANCE SYSTEMS, INC.,
A Wisconsin corporation,
5800 W. Donges Bay Road
Mequon, Wisconsin 53092,

           Plaintiff,

  vs.

DELPHI AUTOMOTIVE SYSTEMS LLC
a Delaware corporation,
5725 Delphi Drive,
Troy, Michigan 48098-2815,

           Defendant.

Case No.        05 CV 0419

Classification: 30701, 30303

OZAUKEE COUNTY, WISCONSIN
FILED

SEP 28 2005

JEFFREY S. SCHMIDT
CLERK OF COURTS

---

## COMPLAINT

---

Plaintiff, HB Performance Systems, Inc., by its attorneys, Whyte Hirschboeck Dudek S.C., for its Complaint against the defendant, alleges and states as follows:

1.      The Plaintiff, HB Performance Systems, Inc. ("HB Performance"), formerly known as Hayes Brake, Inc., is a Wisconsin corporation with its principal place of business located at 5800 W. Donges Bay Road, Mequon, Wisconsin 53092. HB Performance manufactures and sells high performance disc brake systems.

2.      The Defendant, Delphi Automotive Systems, LLC ("Delphi"), is a Delaware corporation with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. Delphi manufactures and sells mobile electronics and transportation components and systems technology.

3.      On or about August 1, 2002, HB Performance and Delphi entered into an Agreement pursuant to which Delphi agreed, among other things, to assist HB Performance with certain of the motorcycle brake systems HB Performance supplied to Harley-Davidson, Inc. for

use on Harley-Davidson motorcycles, the 2007 Brake and Advanced Brake contemplated for the

2007 Harley-Davidson Brake System Platform, and a Controlled Brake which could be

integrated with other Controlled Brake Components. A true and correct copy of relevant

portions of the Agreement that are not Confidential are attached hereto as Exhibit A and

incorporated herein by reference.

      4.     In that regard, Delphi agreed, among other things, to make qualified engineers,

and support staff, available to HB Performance beginning on August 1, 2002 for an average of

10,000 hours per year to support the "Program" as described in the Agreement.

      5.     For its part, HB Performance agreed to pay Delphi for the services it agreed to

provide pursuant to the terms of the Agreement. HB Performance's compensation obligations –

and the Agreement itself – were subject to renegotiation under certain circumstances. The

Agreement provided, with respect to Compensation, as follows:

> Notwithstanding the foregoing, the total payment to Delphi shall be a minimum
> of $1.0 million per year, unless Hayes Brake gets less than 100% of the 2007
> Harley-Davidson Platform. If Hayes Brake gets less than 100%, then this
> Agreement *shall be* subject to renegotiation.

Agreement, Exhibit II at p. 7 (emphasis added).

      6.     The Agreement further provided as follows:

> In the event that Harley-Davidson does not award the 2007 Brake System
> Platform to Hayes Brake by December 31, 2002, or sometime after the award of
> the 2007 Brake Program, cancels Hayes Brake as the Brake Supplier, then this
> Agreement will terminate.

Agreement at ¶ 4.1(a).

      7.     In early 2003, HB Performance and Delphi learned that HB Performance would

not get 100% of the 2007 Harley-Davidson Platform.

      8.     Notwithstanding that fact, and despite repeated efforts by HB Performance to

renegotiate the Agreement pursuant to the terms of Exhibit II thereof, Delphi refused to

renegotiate the terms of the Agreement – or terminate it - and assured HB Performance that it would continue to provide the requisite 10,000 hours of services per year to HB Performance.

9.    Notwithstanding those assurances, and repeated efforts on the part of HB Performance to obtain the requisite services from Delphi for which HB Performance continued to pay, Delphi failed to provide those services.

10.    During 2003-04, Delphi provided HB Performance with only 5281 of the anticipated 10,000 hours of engineering services.  During 04-05 (to date), Delphi provided HB Performance with only 1753 hours of engineering services.

11.    Up to and including December 2004, HB Performance continued to pay Delphi $75,000 per month pursuant to the terms of the Agreement.

12.    Thereafter, and although Delphi had only provided 41% of the services it was required to provide under the Agreement over the prior two year period, Delphi demanded continued payments from HB Performance.

13.    On June 16, 2005, Delphi notified HB Performance that it was "invoking its right to terminate the Agreement with two (2) years notice."

14.    Delphi also demanded that HB Performance pay for engineering services it had not provided under the Agreement.

15.    It is Delphi's position that HB Performance must continue to pay under the Agreement for two (2) years regardless of whether it provides the 10,000 hours of engineering services required thereby.

16.    In June 2005, Delphi advised Harley-Davidson that it was no longer doing business with HB Performance.

3

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

17.    Plaintiff repeats the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

18.    Delphi breached the Agreement by failing to renegotiate it as the result of the fact that, in 2003, Harley-Davidson did not award HB Performance with 100% of the 2007 Platform.

19.    Delphi breached the Agreement by failing to provide HB Performance with an average of 10,000 hours of service per year.

20.    Delphi breached the Agreement by notifying Harley-Davidson that it was no longer doing business with HB Performance.

21.    As a direct and proximate result of Delphi's breaches of the Agreement, HB Performance suffered damages in the amount of at least $1,778,100 including, but not limited to, payments made to Delphi for which it received no corresponding services, lost employee time and lost value.

## SECOND CAUSE OF ACTION - DECLARATORY JUDGMENT

22.    Plaintiff repeats the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

23.    As a party interested under a written contract, whose rights, status, or other legal relations are affected by the contract, HB Performance is entitled to a determination of questions of construction or validity arising under the contract and to obtain a declaration of rights, status or legal relations pursuant to Wis. Stat. § 806.04.

24.    Delphi has notified HB Performance that it considers HB Performance to be in breach of the Agreement by failing to pay for engineering services despite the fact that Delphi has not provided those services.  Delphi has also notified HB Performance that it is invoking its

4

right to terminate the Agreement with two (2) years notice and that it is entitled to be paid for engineering services under the Agreement regardless of whether Delphi provides those services.

25.    HB Peformance disputes the contentions set forth in paragraph 24. HB Performance has a contractual right to require that Delphi renegotiate the Agreement.

26.    HB Performance is not obligated to pay for engineering services it has not received or to continue to pay for engineering services that Delphi cannot or will not provide to it.

27.    HB Performance is entitled to terminate the Agreement as the result of Delphi's breach thereof.

28.    The parties need a judicial determination of these issues, and their respective rights and obligations.

29.    HB Performance seeks declaratory relief against Delphi establishing their respective rights and obligations under the Agreement.

WHEREFORE, Plaintiff demands as follows:

A.    On the First Cause of Action, for a money judgment against Delphi Automotive Systems LLC in the amount of $1,778,100;

B.    On the Second Cause of Action, for a declaratory judgment declaring that Delphi Automotive Systems LLC is obligated to renegotiate the terms of the Agreement or, in the alternative, that the Agreement terminated and that HB Peformance Systems, Inc. has no further obligations thereunder;

C.    For the costs, expenses and attorneys' fees incurred in this action; and

D.    For such other and further relief as the Court deems just and equitable.

Dated this 27th day of September 2005.

WHYTE HIRSCHBOECK DUDEK S.C.
Attorneys for Plaintiff HB Performance
Systems, Inc.,

P.O. ADDRESS:

555 East Wells Street
Suite 1900
Milwaukee, WI 53202
414-273-2100

By: _____
Ann M. Maher
State Bar No. 1000529

6