IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                              :

                                    :        Chapter 11

DELPHI CORPORATION, *et al.*,       :

                                    :        Case No.  05-44481 (RDD)

Debtors.                            :

                                    :        (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**WORLDWIDE BATTERY'S (I) RESPONSE IN OPPOSITION
TO THIRD OMNIBUS CLAIMS OBJECTION (REF. CLAIM NO. 2479), and
(II) MOTION FOR ENLARGEMENT OF TIME
TO SUBMIT ADDITIONAL EVIDENCE IN SUPPORT OF PROOF OF CLAIM**

For its response in opposition to the Third Omnibus Claims Objection filed by Delphi

Corporation and certain of its subsidiaries and affiliates (collectively, "Debtors"), and for its

motion for enlargement of time to submit additional evidence in support of its Proof of Claim

(Claim No. 2479), WorldWide Battery Company, LLC ("WorldWide"), states:

### *Procedural History*

1.      On October 8 and 14, 2005, Delphi Corporation and certain of its subsidiaries and

affiliates filed voluntary petitions for bankruptcy relief under Chapter 11 of Title 11 of the

United States Bankruptcy Code.  Thereafter, the Court directed that the bankruptcy cases be

jointly administered.

2.      On April 3, 2006, WorldWide timely filed its Proof of Claim, identified as Claim

No. 2479, a copy of which is attached hereto as Exhibit A.

3.      WorldWide's Proof of Claim alleges that debtor Delphi Corporation is liable for

damages to WorldWide in the amount of $2,819,166.35, based on breach of a contract between

Delphi and WorldWide.  As is set forth in the Proof of Claim, WorldWide's claim was calculated

based on lost profits of over $80,500 per month, for the period of August 2005 to the end of the original contract term on June 30, 2008.  (See attached Exhibit A.)

4.      On October 31, 2006, Debtors filed their *(I) Third Omnibus Objection (Substantive) pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification, and (II) Motion to Estimate Contingent and Unliquidated Claims pursuant to 11 U.S.C. § 502(c)* ("Third Omnibus Claims Objection").

5.      In their Third Omnibus Claims Objection, Debtors object to and seek disallowance of 1,017 of the approximately 16,000 Proofs of Claim filed against the Debtors. (Claim Objection and Estimation Procedures Motion at 7-8.)

6.      With regard to WorldWide's Proof of Claim, Debtors request that the Court enter an Order disallowing and expunging WorldWide's claim as an "Unsubstantiated Claim," defined by the Debtors as those Proofs of Claim that assert liabilities or dollar amounts that are not owing pursuant to the Debtors books and records.  (Third Omnibus Claims Objection at 11-12 & Exhibit C-1.)

7.      This Court has jurisdiction over the Debtors' Third Omnibus Claims Objection and WorldWide's response thereto pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### *Standard of Review*

8.      The standard for resolving Debtors' objection to WorldWide's claim has been articulated as follows:

> The burden of proof for claims filed in bankruptcy cases rests on different parties at different times.  Initially, the claimant must allege facts sufficient to

support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid. *In re Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir. 1992).* The burden then shifts to the objector to produce evidence sufficient to contest the validity of the prima facie claim. *Id.* Thus, the objector must provide credible evidence that negates at least one of the allegations necessary for the claims legal sufficiency. *Id.* Finally if the objector does provide such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id. at 174.* The burden of persuasion is always on the claimant.

In re: United Cos. Financial Corp., 267 B.R. 524, 527 (Bankr.S.D.Del. 2000). As noted by the

Debtors, "[a] claimant's proof of claim is entitled to the presumption of prima facie validity

under Bankruptcy Rule 3001(f)," until an objecting party refutes at least one of the elements

required to establish the sufficiency of the claim. (Third Omnibus Claims Objection at 12.)

### *Background Facts Supporting the Validity of WorldWide's Claim*

9.       WorldWide is a large-volume importer, recycler, and seller of batteries and

battery-related products. (Affidavit of David J. Petruzzi ("Petruzzi Aff.") attached hereto as

Exhibit B, at 1, ¶ 4.)

10.      On or about March 16, 2004, WorldWide and Delphi Corporation entered a

written Recycled Battery Sales Agreement (the "Agreement"), pursuant to which Delphi agreed

to sell to WorldWide, and WorldWide agreed to purchase from Delphi, certain used lead-acid

batteries that WorldWide could recondition and then sell as reconditioned batteries. The original

term of the Agreement expires at midnight on June 30, 2008. (Id. at 2, ¶ 7; Exhibit A.)

11.      Under the Agreement, Delphi regularly shipped trailer loads of batteries to the

WorldWide facilities in Anderson, Indiana. (Petruzzi Aff. at 2, ¶ 10.) WorldWide would then

sort the batteries, remove and retain those batteries that were deemed appropriate for

reconditioning, and then replace the battery weight for those retained batteries with similar used

lead-acid batteries. After WorldWide sorted the batteries, the remaining, non-recyclable

batteries were then shipped to a smelter in Indianapolis, Indiana, at Delphi's expense.
WorldWide paid Delphi for the batteries retained by WorldWide on a per pound basis. (Id., at 2,
¶ 14.)

12.    For more than a year, the WorldWide and Delphi performed pursuant to and
enjoyed the benefits of the Agreement. (Id., at 2, ¶ 16.) By partnering with WorldWide, Delphi
secured a method of used battery disposal that permitted Delphi to generate revenue from
otherwise non-productive used batteries. (Id., at 2, ¶ 18.) By partnering with Delphi,
WorldWide secured a reliable and continuous source of a large volume of used batteries. (Id., at
2, ¶ 18.)

13.    The Agreement included an option for Delphi to terminate the Agreement in the
event of demonstrated "significant hardship" upon at least ninety (90) days prior written notice.
(Exhibit A, Agreement at 4-5, §4.5.) This provision protected Delphi in the event of a bona fide
significant business hardship, and protected WorldWide from a sudden and unexpected
termination of the Agreement and corresponding battery supply. (Id.)

14.    In early 2005, WorldWide was advised by Mr. Craig Kellogg of Delphi that
Delphi was considering a sale of Delphi's battery related assets to Johnson Controls, Inc.
("JCI"), and that if such a transaction were consummated, the Agreement would be assigned to
JCI. (Petruzzi Aff. at 3, ¶ 22.)

15.    On June 30, 2005, JCI did purchase substantially all of Delphi's battery related
assets. (Petruzzi Aff. at 4, ¶ 24.) After the closing on the transaction, Kellogg advised
WorldWide that the Agreement had been assigned to JCI as a part of the transaction. (Id., at 4, ¶
29.) Delphi never gave a 90-day written termination notice to WorldWide, based on undue
hardship or otherwise. (Id., at 5, ¶ 31.)

16.    JCI continued to make shipments of batteries to WorldWide through July of 2005. All battery shipments to WorldWide were abruptly discontinued in August of 2005, however, without any prior notice to WorldWide. JCI eventually refused to perform pursuant to the terms of the Agreement and disavowed any legal obligation to perform pursuant to the terms of the Agreement. (Petruzzi Aff. at 4, ¶¶ 26-27 & 30.)

17.    On March 8, 2006, WorldWide filed suit against JCI, et al., under Cause No. 48C01-0603-PL-00297, in the Madison County Circuit Court, in the State of Indiana, asserting numerous claims, including claims for damages arising out of breach of the Agreement. (Id. at 5, ¶ 35.) The action was removed by the defendants to the United States District Court for the Southern District of Indiana, Indianapolis Division, Case No. 1:06-cv-0602-DFH-TAB. WorldWide then filed a motion to remand the action and, on July 7, 2006, the District Court issued an Order remanding the case to the Madison County Superior Court.

18.    In responding to WorldWide's complaint, JCI has denied that the Agreement was assigned by Delphi to JCI as a part of the battery asset acquisition transaction, and has denied ever assuming any liabilities under the Agreement. (See, e.g., Defendants Johnson Controls, Inc. and Johnson Controls Battery Group, Inc.'s Joint Answer to Plaintiff's First Amended Complaint, attached hereto as Exhibit C, at 4, ¶ 16.) The parties to the JCI litigation are presently engaged in discovery.

19.    To the extent that JCI never took an assignment of the Agreement from Delphi, Delphi remains liable to WorldWide under the terms and conditions of the Agreement.

### *Estimation of Claim*

20.    In responding to the Third Omnibus Claims Objection, claimants asserting contingent or unliquidated claims are required to state the amount the claimant believes would be

the allowable amount of such claim upon liquidation or the occurrence of the contingency, as applicable. (Notice of Objection to Claim at 3.)

21.    The issue of whether the Agreement was assigned by Delphi to JCI has yet to be determined in any tribunal. To the extent that JCI did not take an assignment of the Agreement, as JCI has alleged, Delphi remains liable under the Agreement, and WorldWide's claim for lost profits is a valid claim against Delphi for with respect to lost profits accruing on and after July 1, 2005.

22.    Accordingly, based on WorldWide's calculation of lost profits arising from breach of the Agreement and WorldWide's understanding that Delphi has not assumed the Agreement as part of these bankruptcy proceedings, WorldWide estimates that the maximum allowable amount of WorldWide's claim against Delphi is less than or equal to $250,000.[1]

### Motion for Enlargement of Time to Submit Additional Evidence in Support of Proof of Claim

23.    Claimants filing responses to the Third Omnibus Claims Objection are direct to submit, together with their response, "all documentation or other evidence of the claim upon which [the claimant] will rely in opposing the Third Omnibus Objection to the extent not included with the proof of claim previously filed with the Bankruptcy Court." (Notice of Objection to Claim at 3.) Given the very generalized nature of the Debtors' statement of objection, however, it simply is not possible for WorldWide to identify all such documentation and evidence.

24.    WorldWide's claim is listed among sixty-five (65) pages of allegedly Unsubstantiated Claims identified by the Debtors. (Third Omnibus Claims Objection, Exhibit C-

---

[1]    This estimation is made only for purposes of these bankruptcy proceedings with respect to WorldWide's Proof of Claim against Delphi. This estimation should not be construed as, and does not constitute, a statement of, estimation of, or limitation on (a) WorldWide's claims against JCI or any other party, or (b) claims that might be asserted outside of these bankruptcy proceedings against any party.

1.) With respect to these claims, the Debtors allege simply that the claims assert liabilities or

dollar amounts that are not owing pursuant to the Debtors books and records. From this general

allegation, WorldWide cannot possibly determine the basis for the Debtors' conclusion that the

amounts claimed by WorldWide are not due and owing.

25.    As is noted above, a claimant's proof of claim is entitled to a presumption of

prima facie validity until an objecting party refutes at lease one of the elements required to

establish the sufficiency of the claim. The Debtors have yet to specifically identify one or more

elements of WorldWide's claim the Debtors intend to refute, let alone submit any evidence

negating an element of WorldWide's claim. Whether the Debtors intend to challenge the

validity of the Agreement or the amount of the claim, or intend to assert that the Agreement was

assigned to JCI on June 30, 2005, will dramatically impact the nature and extent of the evidence

to be presented by WorldWide at any evidentiary hearing on the objection to the claim.

26.    In addition, requiring the disclosure and filing in open Court of documents

containing WorldWide's confidential information regarding costs, expenses, and profits

associated with the Recycled Battery Sales Agreement at this juncture, in the absence of an

appropriate protective order, would be manifestly unjust. It is not even clear whether Debtors

even challenge WorldWide's statement of lost monthly profits.

27.    WorldWide is therefore submitting with this response sufficient documentation to

establish the basis for the Proof of Claim and the facts set forth in this response, and respectfully

requests that the Court grant WorldWide an enlargement of time for filing additional documents

and evidence in support of the claim based on an articulation of Delphi's specific objection to the

claim. WorldWide is willing to establish with Debtors an agreed upon deadline and procedure

for the exchange and/or submission of such additional documents and evidence in advance of any hearing date set by the Court on WorldWide's claim and Debtors' objection thereto.

28.     Debtors may deliver any reply to this response to the below-signed counsel for WorldWide, whose contact information is set forth below and in the Proof of Claim.

29.     Counsel for WorldWide are the claimant's designated legal representatives for reconciling, settling, or resolving the claim.

30.     For all the foregoing reasons, WorldWide respectfully requests that the Court deny the Debtors' request that WorldWide's claim be disallowed or expunged, accept WorldWide's statement of estimation of claim as set forth in this response, grant WorldWide an enlargement of time for the submission of additional documents and evidence in support of WorldWide's claim, and grant WorldWide such further relief as is just and proper in the premises.

Respectfully submitted,

ROBERGE & ROBERGE

By: _____
Elizabeth A. Roberge (#17139-49)

Christopher S. Roberge (#6413-98)
Elizabeth A. Roberge (#17139-49)
Eliza K. Bradley (#22284-20)
ROBERGE & ROBERGE
9190 Priority Way West Drive, Ste. 100
Indianapolis, Indiana 46240
317/818-5500
317/818-5510 – Fax
E-mail: croberge@robergelaw.com
        eroberge@robergelaw.com
        ebradley@robergelaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of the foregoing *WorldWide Battery's (I) Response in Opposition to Third Omnibus Claims Objection (Ref. Claim No. 2479), and (II) Motion for Enlargement of Time to Submit Additional Evidence in Support of Proof of Claim* are being served by third-party commercial carrier, this 22nd day of November, 2006, for delivery prior to 4:00 p.m. on November 24, 2006, on the following:

Clerk of the United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York 10004

Honorable Robert D. Drain
United State Bankruptcy Judge
United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
Room 610
New York, New York 10004

Delphi Corporation
Attn.: General Counsel
5725 Delphi Drive
Troy, Michigan 48098

Skadden, Arps, Slate, Meagher & Flom, LLP
Attn.: John Wm. Butler, Jr.
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606

Simpson Thacher & Bartlett LLP
Attn.: Kenneth S. Ziman
425 Lexington Avenue
New York, New York 10017

Davis Polk & Wardwell
Attn.: Donald Bernstein & Brian Resnick
450 Lexington Avenue
New York, New York 10017
Latham & Watkins, LLP
Attn.: Robert J. Rosenberg & Mark A. Broude
885 Third Avenue
New York, New York 10022

Fried, Frank, Harris, Shriver & Jacobson, LLP
Attn.: Bonnie Steingart
One New York Plaza
New York, New York 10004

Office of the United States Trustee
for Southern District of New York
Attn.: Alicia M. Leonard
33 Whitehall Street
Suite 2100
New York, New York 10004

Elizabeth A. Roberge

ROBERGE & ROBERGE
9190 Priority Way West Drive, Suite 100
Indianapolis, Indiana 46240
Telephone: (317) 818-5500
Facsimile: (317) 818-5510

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT   Southern   DISTRICT OF   New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Delphi Corporation | Case Number<br>05-44481-rad |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Worldwide Battery Company, LLC

Name and address where notices should be sent:

Roberge & Roberge
9190 Priority Way West Drive, Suite 100
Indianapolis, Indiana 46240

Telephone number: (317) 818-5500

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

RECEIVED
APR 3 2006
U.S. BANKRUPTCY COURT
S.D. OF NEW YORK

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated:_____

**1. Basis for Claim**

☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other   Breach of contract

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #:
Unpaid compensation for services performed
from _____ to _____
        (date)            (date)

**2. Date debt was incurred:**
8/1/2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 2,819,166.35

| (unsecured) | (secured) | (priority) | 2,819,166.35 |
|---|---|---|---|
|  |  |  | (Total) |

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other.

Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any:   $_____

**6. Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority   $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>3/27/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>Christopher S. Roberge, Esq. on behalf of Creditor | EXHIBIT A |
|---|---|---|

In re: Delphi Corporation
Case No. 05-44481

## Calculations of debt owed to Worldwide Battery Company, LLC

Contract included transactions from August, 2005, through the end of June, 2008, with an expected average income per month in the amount of $80,547.61.  Due to Delphi's breach of the contract, Worldwide Battery Company lost income of $80,547.61 per month for 35 months.

$~~~~~$ 80,547.61 lost income per month
x $~~~~~~~~~~~$ 35 $~$ total months
**$2,819,166.35 total lost income**

## RECYCLED BATTERY SALES AGREEMENT



This Agreement is entered into as of the 16th day of March, 2004 by and between:

Delphi Corporation, a Delaware corporation
4800 South Saginaw Street
Flint, Michigan 413501-1360
("Delphi" or "Seller"), and:

Worldwide Battery Company, LLC
538 Meridian St.
Anderson, Indiana 46016
("Worldwide" or "Buyer")

The purpose of this Agreement is to set forth the terms and conditions under which Delphi agrees to sell, and Buyer agrees to buy, the opportunity to sort and obtain certain recyclable lead-acid batteries that Buyer intends to recondition and sell as reconditioned batteries. As part of its reconditioning work, Buyer agrees to obliterate any trade name and other information on the batteries to be reconditioned in order to alleviate the potential for consumer confusion, and to affix its own proper identification and other appropriate information, including, as necessary, Proposition 65 and similar warnings, for battery sales in California and other states as required.

### 1. Quantities, Title and Location(s)

1.1    Batteries hereunder are those lead-acid starting, lighting and ignition batteries, and occasionally other similar batteries, which have been returned to one of Delphi's Battery Distribution Centers ("BDC") located in the United States. [This Agreement does **not** include or cover what are referred to as "blems" or "blemished batteries."] Batteries from said Battery Distribution Center(s) identified in Exhibit 1, will be directed to Buyer's facility(ies), identified in Exhibit 2, in truckload quantities. Batteries to be directed to Buyer are influenced by many factors, including availability to Delphi and Buyer's ability to receive and process said quantities. The parties will communicate through their authorized representatives hereunder to establish periodic updated estimates of batteries available to Delphi, Buyer's needs, and delivery schedules. Delphi intends to provide 8 loads or more per week; however, market and business conditions can impact the number of loads available; therefore, no quantity is guaranteed by Delphi hereunder.

1.2    Buyer is solely responsible for handling and risk of loss associated with all batteries on its premises. Buyer has expertise surrounding such things as health and environmental considerations associated with handling of batteries, and agrees to take appropriate measures to assure employee health and environmental protection.

1.3    Batteries from Delphi's BDC listed in Exhibit 1 shall be shipped at Delphi's expense (rate shall not exceed established rates from the BDC to the designated smelter plus $30 stop-off fee), via third party billing, to Buyer's facility identified in Exhibit 2. Additional expenses shall be invoiced to the Buyer and payment shall be as referenced in 2.2. Buyer may retain such batteries as it determines are reconditionable, replacing the battery weight retained with similar recyclable lead-acid batteries. Buyer will process batteries in a timely manner. The equivalent

## RECYCLED BATTERY SALES AGREEMENT

truckload will be shipped at Seller's expense, to a smelter as identified in Exhibit 3. Any deviations to this provision are specified in Exhibit 4.

1.4    Shipping documents for said batteries (ref 1.3) shall contain a listing and approximate count and weight of the batteries shipped. Shipment weight shall be accurately determined through a certified scale weight, or other agreed method. This certified weight shall be accepted as the weight shipped from the BDC to Buyer.

1.5    Batteries loaded onto the truck will be loaded consistent with specifications applicable to loading of such materials.

1.6    Title and risk of loss for all batteries loaded onto any truck hereunder for transport from Delphi on behalf of Delphi shall remain with Delphi (or its designee) until such time as when the batteries arrive at Buyer's facility. Buyer shall assume risk of loss, but not title, when the batteries arrive at Buyer's facility. Risk of loss for all batteries shipped from Buyer's premises to Delphi's designated smelter or other facility, shall remain the Buyer's (or its designee or Delphi's designee) until such time as when the batteries arrive at Delphi's designated destination. At all times, Delphi will retain title to the batteries shipped except for those batteries recovered and exchanged by Seller for in kind, non-rechargeable scrap batteries.

1.7    Delphi and Buyer agree that the shipment weight as received by Delphi's smelter identified in Exhibit 3 shall be accepted by Delphi and Buyer as the basis for determining battery weight returned to Delphi.

1.8    If Buyer is in default or imminent default; if the contract terminates or if Delphi reasonably believes it necessary to limit risk for human health, safety or the environment, Delphi shall have the right to enter Buyer's facility and repossess Delphi's batteries.

## 2.    Prices; Payment Terms; Records

2.1    The Buyer shall continue to compensate Delphi in the amount of $0.0194/pound (i.e., $873.00 for a full 45,000 pound truckload) as noted in Exhibit 5 for the remainder of calendar year 2004. The price per pound shall thereafter be established as follows: (a) Not later than November 15th in 2004 and in each subsequent year thereafter that this Agreement shall be in effect, the parties shall convene a meeting or meeting(s), either in person or by conference call, to consider and establish the price per pound for the following year based on the then-current market conditions. The parties thereafter shall continue their negotiations to the extent necessary in order to reach final agreement on and set the price per pound for the following calendar year on or before December 1st of the current calendar year; (b) In the event that the parties are not able to reach agreement on the price per pound for the following year pursuant to the terms of Section 2.1(a), supra, on or before December 1st of any given year, then in such event, the price per pound for the following calendar year shall be set based on an objective determination of the then prevailing market rate. Specifically, Seller

## RECYCLED BATTERY SALES AGREEMENT

shall solicit bona fide quotes from third parties in the form of written price per pound bids based on the identical terms and conditions as are contained within this Agreement. The price per pound shall thereafter be established by averaging the price per pound bids obtained by Seller in all such bona fide quotes received by Seller; provided, however, that in no event shall any adjustment in price per pound pursuant to this Section 2.1(b) exceed a ten percent (10%) deviation from the then effective price per pound. Upon closing of the receipt of quotes by Seller, Buyer shall be provided with complete copies of all such bona fide quotes received by Seller.

2.2    On a monthly basis, or more frequently as agreed, Buyer will provide to Delphi a summary in form and detail outlined in Exhibit 6 which identifies the weight of batteries received by the Buyer during the period and the weight of batteries returned to Delphi's designated destination. The balance of battery weight due from Buyer to Delphi on the reporting date shall also be stated. Said summary shall be submitted by mail or email to the Delphi representative listed in Exhibit 7.

2.3    A copy of the summary in form (ref. 2.2) shall be mailed by Buyer to the Delphi representative listed in Exhibit 7.

2.4    Buyer will maintain adequate records consistent with generally accepted accounting principles, pertaining to its performance under this Agreement, including a daily log of recycled battery shipments received and dispatched listing at a minimum, the date, origin, destination, bill of lading number, certified weight, seal number and trucking company. Buyer will provide Delphi, upon reasonable request and during normal business hours, access to all relevant records for purpose of auditing battery receipts and reprocessing. Buyer will preserve its records for at least two years.

## 3.    Reprocessing Operations; No Delphi Warranty

3.1    Buyer is solely responsible for its reprocessing operations. In those operations, it shall obliterate any trade name and other information on the batteries to be reconditioned in order to alleviate the potential for consumer confusion, and affix its own proper identification and other appropriate information to reprocessed batteries, including, as necessary, Proposition 65 and similar warnings, for battery sales in California and other states as required.

3.2    The batteries exchanged hereunder are generally considered to be scrap. They are exchanged AS IS, AND WITH ALL FAULTS AND WITHOUT WARRANTIES OF ANY KIND (EXCEPT TITLE), EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR PURPOSE, AND DELPHI HEREBY DISCLAIMS AND BUYER HEREBY WAIVES ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR DEMAND IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PATENT INFRINGEMENT, OR OTHERWISE WITH RESPECT THERETO. Without limiting the generality of the foregoing, Buyer acknowledges and agrees that (a) Delphi neither represents nor warrants that the batteries will operate satisfactorily or that any such batteries comply with any applicable federal, state, or local laws, regulations or ordinances or industry standards, (b)

## RECYCLED BATTERY SALES AGREEMENT

Buyer accepts the entire risk and responsibility of taking any necessary action to make the batteries comply with any applicable federal state, or local laws, regulations or ordinances or industry standards, and (c) Delphi shall have no liability or responsibility fair the condition, operation and/or yield of the batteries after transfer to Buyer, its agents' representatives, and/or contractors.

4.    **Term; Termination**

4.1    Unless earlier terminated, this Agreement shall remain in force through June 30, 2008 with the option to negotiate an additional two year contract.

4.2    In the event of significant default hereunder by one party, the other may provide written notice thereof following which this Agreement may be terminate immediately provided such default is not corrected within thirty business days. Failure of either party to provide notice of a default, whether or not significant, shall not constitute waiver of rights hereunder. A significant default shall include, but not be limited to, failure of Buyer to accept and purchase truckloads offered to Buyer, failure of Buyer to remain current in payments, insolvency of Buyer, filing of Bankruptcy petition by Buyer, indictment or conviction of Buyer or its principal officers of a felony criminal offense or any criminal offense involving theft, fraud or dishonesty or of a criminal environmental offense

4.3    Delphi shall have the right to terminate this Agreement should Worldwide or its division Eagle Battery, Inc., unreasonably and without good cause refuse to accept and purchase truck loads of recycled batteries offered to them coming from the Delphi Battery Distribution Centers located in Bolingbrook, Illinois and Plainfield, Indiana. Good cause to refuse to accept delivery shall not be deemed to be mere financial convenience or inconvenience for the Buyer. The Buyer recognizes and acknowledges that as Delphi is willing to provide all available loads from the Bolingbrook and Plainfield Battery Distribution Centers that are routed to the RSR smelter in Indianapolis, that Delphi is at risk of lost of revenue should Buyer fail to accept and purchase the offered loads available to Buyer. As part of the exclusive arrangement called for in this Agreement on behalf of Buyer in regard to truck loads of recycled batteries, Buyer agrees to accept all truck loads from Bolingbrook and Plainfield Battery Distribution Centers.

4.4    In the event Buyer can show that this Agreement has become a significant hardship to its business, Buyer may terminate this Agreement by providing written notice to Seller not less than (90) days in advance.

4.5    In the event that Delphi can show that this Agreement has become a significant hardship to its business, Delphi may terminate this Agreement by providing written notice to Buyer not less than (90) days in advance. A significant hardship for Delphi shall be deemed to include, but not be limited to: the closure or unavailability of the RSR smelter in the Indianapolis area thus necessitating use of another smelter that is not geographically aligned with the present transportation route; business, economic, environmental or potential legal liability circumstances cause Delphi to utilize a different smelter location that is not geographically aligned with Worldwide's location in Anderson, Indiana; the closure of either or both of the Battery Distribution Centers (that is the Bolingbrook or Plainfield Centers); Delphi loses the Wal-Mart as a customer or

## RECYCLED BATTERY SALES AGREEMENT

other significant customer that materially affects or will materially affect the volume of recycled batteries or their quality; and, Delphi decides to sell or close its battery manufacturing operations or Delphi otherwise ceases to be involved in battery manufacturing.

4.6   In the event the Buyer refuses delivery of any batteries, Delphi shall have the option to transfer the shipment. The Buyer shall communicate delivery schedules every Wednesday by 4:30 p.m. (Indianapolis time) of subsequent week deliveries. Maximum quantity desired, company name, address, contact name, and telephone number must be included.

## 5.   Buyers Compliance with Laws; Indemnification

5.1   Buyer, its employees, agents, representatives, and contractors, shall comply with all applicable federal, state, and local laws, regulations and ordinances. Buyer acknowledges that its battery reprocessing operations involve work with materials which are considered hazardous, and agrees to defend, indemnify and hold Delphi and its officers, directors, and employees harmless from any and all claims made against them arising out of transport or disposal of batteries delivered by Delphi hereunder, or Buyer's failure to comply with federal, state or local laws, regulations or ordinances applicable to hazardous waste.

5.2   Buyer agrees to defend, indemnify and hold Delphi and its officers, directors, and employees harmless from any and all claims made against them arising from the reconditioning, sale, or re-use of the batteries.

## 6.   Insurance

6.1   During the term of this Agreement, Buyer shall obtain and maintain at least the insurance as specified in Exhibit 8, and furnish certificate(s) of insurance therefore to Delphi.

6.2   All contracts of insurance shall provide 30 days prior written notice of cancellation, non- renewal and/or modification to Delphi as an "additional insured." All contracts of insurance shall be underwritten by an insurance company acceptable to Delphi.

## 7.   General Terms

7.1   Waiver of Terms and Conditions:  No waiver by either party of any breach of any of the terms or conditions herein contained to be performed by the other party shall be construed as a waiver of any subsequent breach, whether of the same or of any other term or condition hereof.

7.2   Arm's Length Agreement:  The relationship of the parties hereunder is that of individual contracting parties and neither Delphi nor Buyer, nor any of their directors, officers, agents, servants or employees, is or shall be or become the agent or employee of the other party for any purpose in connection with the performance hereof.

## RECYCLED BATTERY SALES AGREEMENT

7.3     Choice of Law:  This Agreement and the execution thereof shall be governed by the laws of the State of Michigan, and the substantive laws (but not the law of conflict of laws) of such state shall govern the validity, construction, enforcement, performance and interpretation of this Agreement.

7.4     Severability:  If any provision of this Agreement shall be invalid, illegal or unenforceable under any law applicable thereto, such provision shall be deemed deleted from this Agreement without impairing or prejudicing the validity, legality and enforceability of the remaining provisions hereof.

7.5     Any delay or failure of either party to perform its obligations hereunder shall be excused if, and to the extent that it is caused by an event or occurrence beyond the reasonable control of the party and without its fault or negligence, such a by way of example and not by way of limitation, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), inability to obtain fuel, power, material, labor, equipment or transportation, or court injunction or order; provided that written notice of such delay (including the anticipated duration of the delay) shall be given by the affected party to the other party within 10 days.

7.6     Any notice which either party may be required or desires to give to the other party hereunder shall be deemed to be fully given when delivered in person or sent via fax and first class mail, postage prepaid, to the other party at the addresses listed in Exhibit 7, or at any other address subsequently designated by such party in written.

7.7     Entire Agreement:  This Agreement contains all of the representations and agreements of and between the parties hereto with respect to the subject matter hereof and shall not be amended or modified except by a written instrument duly executed by both parties.  This Agreement replaces and supercedes the original Recycled Battery Sales Agreement dated January 24, 2003, by and between Delphi and Eagle Battery, Inc., which original Agreement shall be of no further force or effect upon execution of this Agreement

7.8     Assignment:  This assignment shall be binding upon and continue to the benefit of the parties hereto and their respective successors and assigns. Any assignment of the Agreement or any of the rights or obligations of either party hereunder to any other person, firm or corporation whatsoever, whether by merger or operation of law or otherwise, without the prior written consent of the other, shall be void.

7.9     No Third Party Beneficiary Intended:  This contract is not intended to convey third party beneficiary rights.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

Buyer: Worldwide Battery Company, LLC          Seller: Delphi Corporation

C.S.A.
3|19|04

D.L    Buyer Initials
03|19|04

Page 6

A.B.    Delphi Initials
03/16/04

RECYCLED BATTERY SALES AGREEMENT

By: _____

Printed Name: _Dave Petruzzi_

Title: _Pres._

By: _____

Printed Name: _ALFRED L. BRUNNER_

Title: _NORTH AMERICA
BATTERY MARKETING
MANAGER_

## RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 1 — Delphi Battery Distribution Centers

Delphi Battery Distribution Center(s) ("BDC(s)") from which batteries will be shipped, as referenced in 1.1.

Worldwide shall have exclusive rights(s) and opportunity(ies) to sort, obtain, and/or buy the recyclable lead-acid batteries that are the subject of this Agreement from Delphi's BDC's located in:

> Bolingbrook, Illinois
> Plainfield, Indiana

Worldwide also shall have the non-exclusive right(s) and opportunity(ies) to sort, obtain, and/or buy lead-acid batteries that are the subject of this Agreement, and the right to bid to make such rights exclusive, with respect to the following Delphi BDC:

> Delta, Ohio

## RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 2— Buyer's Facilities

Buyer's facilities to which Delphi shall send batteries, referenced in 1.1.

| Company Name | Worldwide Battery Company, LLC | |
|---|---|---|
| Contact Name 1 | Randy Batt | |
| Contact Name 2 | John Carter | |
| Address Line 1 | 538 Meridian Street | |
| Address Line 2 | | |
| City | Anderson | |
| State | Indiana | |
| Zip Code | 46016 | |
| Phone Number | 765-643-4001 | |
| Fax Number | 765-643-5001 | |
| Cell Phone | | |
| E-mail | | |

C.Sd.  DP
       03/14/04 _____ Buyer Initials

_A.B._ Delphi Initials
03/16/04

## RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 3— Delphi's Designated Smelter

Delphi's designated smelter or other facility to which Buyer shall return batteries, as referenced in 1.3.

RSR — Quemetco, Inc.
7870 W. Morris St.
Indianapolis, IN 46241

C.5,R.    DR 03|16|04    _____ Buyer Initials

A.S. _____ Delphi Initials
03/16/04

# RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 4— Deviations to 1.3

As referenced in 1.3, the following deviations apply.

Batteries transported from remote domicile locations to Buyer's facilities in Exhibit 2 shall be at Buyer's expense. Batteries transported from Buyer's facilities in Exhibit 2 to the smelter listed in Exhibit 3 shall be at Delphi's expense, via third party billing.

_____ Buyer Initials

_____ Delphi Initials

## RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 5— Buyer Compensation to Delphi

As referenced in 2.1, Buyer will compensate Delphi per truckload of junk shipped as is for all shipments received.

RECYCLED BATTERY SALES AGREEMENT

EXHIBIT 6

# SUBSTITUTE CORRECT PAGE!!!

# RECYCLED BATTERY SALES AGREEMENT

## EXHIBIT 7— Addresses for Notice

As referenced in 2.2, 2.3, and 7.6, addresses for notice are below.

|  | Delphi | Buyer |
|---|---|---|
| Company Name | Delphi Corporation | Worldwide Battery Company, LLC |
| Contact Name 1 | James Crawford | Neil Schneider |
| Contact Name 2 |  |  |
| Address Line 1 | Mail Code 39-1008 | 538 Meridian Street |
| Address Line 2 | 8750 Hague Road P.O. Box 502650 |  |
| City | Indianapolis | Anderson |
| State | IN | IN |
| Zip Code | 46250 | 46016 |
| Phone Number | 317-579-3401 | 765-643-4001 |
| Fax Number | 317-579-3411 | 765-643-5001 |
| Cell Phone |  |  |
| E-mail |  | neil@worldwidebattery.com |

_____ Buyer Initials

Delphi Initials

## RECYCLED BATTERY SALES AGREEMENT

### EXHIBIT 8— Insurance Requirements

As referenced in 6.1, the following insurance shall be obtained and maintained by Buyer for the term of this Agreement.

| Coverage | Limits |
|---|---|
| Comprehensive General Liability Including E Form Contractual Liability coverage | $2,000,000 per occurrence combined single limit for Personal Injury and Property Damage |
| Automobile Liability covering all Owned, hired and non-owned vehicles | $1,000,000 per occurrence combined single limit for Personal Injury and Property Damage |
| Worker's Compensation | Statutory for all states of operation |
| Employers Liability | $250,000 each accident disease policy limit/$25 0,000 disease each employee |

_____ Buyer Initials

D.R. 03/19/04

51.
3/19/04

_____ Delphi Initials

03/16/04

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

In re:                          :       Chapter 11

DELPHI CORPORATION, *et al.*,   :

                                    :       Case No.  05-44481 (RDD)

Debtors.                   :

                                    :       (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF DAVID J. PETRUZZI

I, David J. Petruzzi, being first duly sworn upon my oath, state as follows:

1.     I am over the age of eighteen (18) years of age, I am competent to testify to and have personal knowledge of, the facts and matters contained in this affidavit, and to the best of my knowledge and recollection, the following representations are true.

2.     I am the President of Petruzzi Holdings, Inc., the sole member of WorldWide Battery Company, LLC ("WorldWide"), located in Anderson, Indiana.

3.     My business address is 538 Meridian Street, Anderson, Indiana 46016-1517. My business telephone number at that location is (765) 643-4001.

4.     WorldWide is a large-volume importer, recycler, and seller of batteries and battery-related products.

5.     WorldWide was formed as an Indiana limited liability company in February of 2001. I have worked in the battery business for approximately nineteen (19) years.

6.     On or about March 16, 2004, WorldWide and Delphi Corporation ("Delphi") entered a written Recycled Battery Sales Agreement (the "Agreement"). A true and correct copy of the Agreement is attached to WorldWide's Proof of Claim filed in the Delphi bankruptcy.

EXHIBIT ___B___

7.      Pursuant to the terms of the Agreement, Delphi agreed to sell to WorldWide, and

WorldWide agreed to purchase from Delphi, certain used lead-acid batteries that WorldWide

could recondition and then sell as reconditioned batteries.  The term of the Agreement expires at

midnight on June 30, 2008, with an option to negotiate a two (2) year continuation of the

Agreement.

8.      Such batteries, prior to reconditioning, are commonly referred to in the battery

industry as "junks."

9.      The Agreement included an option for Delphi to terminate the Agreement in the

event of demonstrated "significant hardship" upon at least ninety (90) days written notice. This

provision protected Delphi in the event of a bona fide significant business hardship, and

protected WorldWide from a sudden and unexpected termination of the Agreement and

corresponding battery supply.

10.     Pursuant to the terms of the Agreement, Delphi regularly shipped trailer loads of

batteries to the WorldWide facilities in Anderson, Indiana.

11.     WorldWide would then sort the batteries, remove and retain those batteries that

were deemed appropriate for reconditioning, and then replace the battery weight for those

retained batteries with similar used lead-acid batteries.

14.     After WorldWide sorted the batteries received from Delphi, the remaining, non-

recyclable batteries were then shipped to a smelter in Indianapolis, Indiana, at Delphi's expense.

15.     WorldWide paid Delphi for the batteries retained by WorldWide on a per pound

basis, with a provision in the Agreement for annual adjustments to the price per pound.

16.     For more than a year, the parties performed pursuant to the terms of the

Agreement without incident.  Attached hereto collectively as Exhibit 1 are true and correct

copies of a few of the bills of lading and truck weights from June 2005 associated with the program.

17.     The recycled battery program which was the subject of the Agreement was a "win" for all parties concerned.

18.     By partnering with Delphi, WorldWide secured a reliable and continuous source of a large volume of used batteries. By partnering with WorldWide, Delphi secured a method of used battery disposal that permitted Delphi to generate revenue from otherwise non-productive used batteries. And, not insignificantly, the public benefited through the recycling of the used batteries which otherwise would have been sent to a smelter or discarded prior to consumption of their remaining useful life.

19.     On March 30, 2005, John Carter of WorldWide and I met with Craig Kellogg ("Kellogg") of Delphi, who supervised the battery program under the Agreement for Delphi.

20.     During that meeting, Kellogg urged WorldWide to expand the battery program to other geographical areas including, without limitation, to Richmond, Virginia.

21.     After that meeting, at the very end of March or early April 2005, Kellogg called me to tell me that Delphi had signed a letter of intent with Johnson Controls for the possible acquisition by Johnson Controls of Delphi's battery related assets. Kellogg told me that we were the first people he called to share this news.

22.     When I asked Kellogg what impact this might have on the battery program, Kellogg informed me that it was not certain whether the proposed acquisition actually would take place, and that if the acquisition did occur, the Agreement was being assigned to Johnson Controls as a part of the transaction, but Kellogg could not assure that the Richmond, Virginia expansion would be assigned to Johnson Controls.

23.     In response to Delphi's urgings, WorldWide did expand the battery program into Richmond, Virginia, with the understanding that if the Johnson Controls acquisition did take place, the future of that branch of the program was not certain. Regular shipments of batteries continued from Delphi, and the parties continued to enjoy a successful and profitable battery program.

24.     On or around June 30, 2005, Johnson Controls purchased substantially all of Delphi's battery related assets.

25.     After the closing on the asset acquisition, Kellogg informed me that the Agreement had been assigned to Johnson Controls as a part of the transaction.

26.     Johnson Controls continued to make battery shipments to WorldWide such as those that had been made by Delphi, and WorldWide continued to remit the price per pound required by the Agreement.

27.     The battery shipments by Johnson Controls continued through the month of July and through the majority of August 2005; specifically, to and including August 29, 2005.

28.     Suddenly, and without any prior notice to WorldWide, however, the battery shipments stopped.

29.     Representatives of WorldWide met with representatives of Johnson Controls in early September 2005. Johnson Controls apologized for discontinuing the shipments, claimed to be unaware of its obligations under the Agreement, and assured WorldWide that the shipments would be resumed.

30.     Johnson Controls then made several shipments in the month of September, but the shipments again abruptly stopped without any prior notice or explanation to WorldWide.

31.     Neither Delphi nor Johnson Controls ever issued a ninety (90) day termination letter to WorldWide or otherwise claimed significant hardship from continued performance under the Agreement.

32.     WorldWide attempted to work cooperatively with Johnson Controls toward resumption of the battery program.  Johnson Controls refused to comply with the terms of the Agreement, however, and denied that it had any obligation to WorldWide under the Agreement.

33.     The termination of the battery program has had a profound effect on WorldWide's operations including, without limitation, the forced layoff of two (2) upper level management personnel and six (6) hourly employees, as well as substantial and ongoing loss of revenue.

34.     WorldWide's average monthly profits from the battery program had been over $80,700.

35.     On March 8, 2006, WorldWide filed suit against Johnson Controls and several other individual and corporate defendants in the Madison County Superior Court, under Cause No. 48C01-0603-PL-00297.  In response to WorldWide's claims against Johnson Controls for breach of the Agreement, Johnson Controls has denied that it ever took an assignment of the Agreement.

Further, the affiant saith not.

## VERIFICATION

I affirm, under the penalties for perjury, that the foregoing representations are true.

_David J. Petruzzi_

David J. Petruzzi

STATE OF INDIANA      )
                            ) SS:

COUNTY OF Marion    )

       Before me, the undersigned Notary Public in and for the State of Indiana, personally appeared **David J. Petruzzi**, who having been duly sworn upon his oath, executed the foregoing Affidavit as his free act and deed, and stated that the facts contained therein are true.

       Dated this _22_ day of _November_, 2006.

                                          _____

                                        Notary Public     # 513719

                                        Stephanie Lalani
                                        Printed

My Commission Expires:  _1/28/2010_

My County of Residence:  _Marion_

# FLYING J TRAVEL PLAZA



## J-SCALE-GUARANTEED WEIGHT



WEIGHED AT:

COMMODITY

X _____
WEIGHER SIGNATURE

GUARAN...

J-SCA...

Our Seal M...
"GUARAN...

EXHIBIT 1

WW/JC

| | |
|---|---|
| SHIP FROM: | **Ship Date** |
| Delphi Prod & Svc Solutions | 5/27/2005 |
| 471 Quadrangle Dr. | |
| Bolingbrook      IL  60440 | |
| (800) 628-7020 | |
| | |
| SHIP TO : | |
| | |
| Worldwide Battery | |
| 556 Meridian | |
| | |
| Anderson      IN  46016 | |

STRAIGHT BILL OF LADING
Short Form                    Original Not-Negotiable

Subject to Section 7 of conditions, of applicable Bill of Lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignee shall sign the following statement.
     The carrier shall not make delivery of the shipment without payment of freight and all other lawful charges.

DELPHI AUTOMOTIVE

Per _____
                    (Signature of Consignor)

If charges are to be prepaid, write or stamp here.
"To Be Prepaid."                    TO BE PREPAID

| SEAL #1 | 8898 |
|---|---|
| SEAL #2 | 0 |
| SEAL #3 | 0 |
| SEAL #4 | 0 |

| BOL No. | Truck No. | Carrier Name | Carrier SCAC Code | Carrier PRO No. |
|---|---|---|---|---|
| 6255 | 5327 | RPS Trucking | RPIN | Bill Vandivin |

| Pallets | HM | Description Instructions | Items | Weight |
|---|---|---|---|---|
| 18 | x | Batteries, wet, filled with acid, 8 (Corrosive Material), UN 2794, PG III : Emergency Response Guide #154 - Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $1.00 per pound.    (NMFC IT. 60720-2) | 1153 | 41268lb |
| | | Scrap Lead    (Wheel weights) | 0 | 0lb |

TOTALS :

| 1153 | 41268lb |
|---|---|

This is to certify, that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.
(Signed ___ *Diahado R Hernandez* ___

3rd Party Prepaid
DELPHI E&C ~ Cisco Code 35037
C/O Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

Per _____

(HM)- Mark with 'X' to designate hazardous materials as defined in the Dept. of Trans. regulations governing transportation of hazardous materials. The use of the column is a method of designating hazardous materials on Bill of Ladings per sec 172.201 and 172.202b; of the regulations governing

WW/JC

00004

39284182

TICKET NUMBER

**CAT SCALE**
**COLLECTO**
**CARD**
**INSIDE**

# CAT

### SCALE

The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.©

**THE CAT SCALE GUARANTEE**

**"WEIGH WHAT WE SAY OR WE PAY"** ®

If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will:
(1)   Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2)   A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1)   Post bond and request a court date.
2)   Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3)   **IMMEDIATELY** send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

# CERTIFIED
# AUTOMATED
# TRUCK
# SCALE

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6263
www.catscale.com

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

IMPRINT SEAL HERE
(IF APPLICABLE)

* The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

| | |
|---|---|
| DATE: | |
| **5-31-2005** | |

SCALE
LOCATION:  **408**
**PILOT 362**
**I 69 EXIT 14**
**FORTVILLE IN**

| | | |
|---|---|---|
| STEER AXLE | **11240** | **lb** |
| DRIVE AXLE | **31660** | **lb** |
| TRAILER AXLE | **28620** | **lb** |
| GROSS WEIGHT | **71520** | **lb** |

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED       **FREIGHT ALL KINDS**

COMPANY                                                                TRACTOR #  **824**      TRAILER #  **5316**

WEIGH NUMBER
**4182**

| | |
|---|---|
| FEE  **8.00** | WEIGHMASTER OR WEIGHER SIGNATURE |
| | **KRISTINA DICK** |

FULL WEIGH
TICKET #
(IF REWEIGH)

DRIVER IN TRUCK UNLESS CHECKED HERE

CUSTOMER COPY

© 1998 CAT Scale Company®

ME OF CARRIER: HUB's & S Trucking

...ceived, subject to the classifications and tariffs in effect on the date of the issue of the Bill of Lading.

Straight Bill of Lading
Short Form    Original Not-Negoti...

...M: Ryder Integrated Logistics

...IP FROM: INDY X-DOCK
2379 HADLEY RD.
PLAINFIELD, IN    46168
1-317-839-8400
CONTACT:   JERRY FARNHAM

Subject to Section 7 of condition, of applicable Bill of
Lading, if this shipment is to be delivered to the
consignee without recourse on the consignor, the consign...
shall sign the following statement.
    The carrier shall not make delivery of this
shipment without payment of freight and all other lawful
charges.
Ryder Integrated Logistics

Per _____

_(Signature of Consignor)_

If charges are to be prepaid
Write or stamp here "To Be Prepaid"    **To Be Prepaid**

... AGENT FOR SHIPPER BELOW:
...HIP TO:   WORLDWIDE BATTERY
516 MERIDIAN
ANDERSON, IN    46016
1-765-643-4001
CONTACT: RANDY BATT

| WHSE. B/L NO. | SHIPPER'S REF NO. |
|---|---|
| SHIP DATE 5-31-05 | SHIPPER'S WHSE NO. 896 |
| RECEIVED DATE | CUSTOMER CODE |

| S&S Trucking | CARRIER SCAC CODE HCIN | VEHICLE NO. S316 | CARRIER PRO NO. |
|---|---|---|---|

| CUSTOMER P.O. NO. **SCRAP BATTERIES** | DELIVERY RECEIPT NO. **SCRAP BATTERIES** |
|---|---|

| NUMBER OF PACKAGES | HM | DESCRIPTION OF INSTRUCITONS | WEIGHT (SUB TO CORR.) | PART NUMBER | NMFC ITEM NUMBER | CLASS | LINE NUMBER | CHECK COLUM... |
|---|---|---|---|---|---|---|---|---|
| 18 | X | BATTERIES, wet, filled with acid 8, (corrosive material) UN 2794, PG III Emergency Response Guide #154 Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound. (NFMC IT. 60720-2) | 40,000 | | | | | |
| | | Batteries, Electric storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound (NFMC IT. 60720-2) | | | | | | |
| | | Battery boxes, Plastic, N.O.I. (In Boxes Or Wrapped And Secured To Pallets) (NFMC IT. 60740) | | | | | | |
| | | Battery Covers Or Vents, Plastic, N.O.I. (In Boxes) (NMFC IT. 60800) | | | | | | |
| | | Battery Insulating Partitions, Plastic (In Boxes) (NMFC IT. 60840) | | | SEAL # Make Delivery Appointment | YES | NO | |
| | | Battery Parts, Lead, N.O.I. (NMFC IT. 60880) | | | | | | |
| | | Battery Plates, Lead (NMFC IT. 60760) | | | | | | |
| | | Boxes, Fibre Board, Corrugated, K.D. Flat (NMFC IT. 29175) | | | | | | |
| 18 | X | ⬅ TOTAL ➡ | 40,000 | | | | | |

This is an Interstate Shipment Unless Otherwise Noted Intrastate Shipment"
...t to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according...
...plicable regulations of the Department of Transportation
...ned [signature]

Press Hard You Are making 4 Copies

FOR THE ACCOUNT OF (SHIPPER)
Delphi E & C – Cisco 35037
c/o Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

SEND FREIGHT BILL TO
Delphi E & C – Cisco 35037
c/o Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

**WW/JCI**

000043

5-31-05

...rrier:   Above Shipper's Ref. And Whse. B/L No. Must Appear On All Freight Bills.

[signature] Matt Nightingale    Per    Ryder    S&S

...rmanent P.O. address of shipper, Delphi Energy & Engine Management Systems   Agent   James Pacan
...t with "X" to designate hazardous materials as defined in the Dept. of Transportation regulations governing transportation...
...f hazardous materials.   The use of the column is an optional method of designating hazardous materials on Bills of Lading b...

To reorder: 1-800-225-63b0 or www.nebs.com

**STRAIGHT BILL OF LADING–SHORT FORM–ORIGINAL–NOT NEGOTIABLE**

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading.

The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this a motor carrier shipment. Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

DESIGNATE WITH AN (X)
BY TRUCK ☐   FREIGHT ☐

| From At | EAGLE BATTERY, INC.<br>538 Meridian Street<br>Anderson, Indiana 46016 | DATE 6-1-05 | SHIPPER'S NO. E 6800 |
|---|---|---|---|

CARRIER

BY  S & S Trucking

CARRIER'S NO.

CONSIGNEE AND DESTINATION

RSR·Delphi
7870 W. morris
Indianapolis, In 46231

ROUTE

DELIVERING CARRIER

CAR OR VEHICLE INITIALS & NO.

| NO. PACKAGES | *HM | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | ERG | *WEIGHT (SUBJECT TO CORR.) | CLASS OR RATE | ✓ |
|---|---|---|---|---|---|---|
| 17 | | Skids of scrap batteries | | 48,150 | | |
| | | truck # 824 | | | | |
| | | trailer# 5316 - 5317 | | | | |
| | | bol # 896 - P | | | | |

Subject to Section 7 of Conditions applicable bill of lading, if this shipment be delivered to the consignee without recourse to the consignor, the consignor shall sign the following statement.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Per _____
(Signature of Consignor)

If charges are to be prepaid, write or stamp here, "To be Prepaid."

Received $ _____
to apply in prepayment of the charges on the property described hereon.

Agent or Cashier

Per _____
(The signature here acknowledges only the amount prepaid.)

Batteries, Wet Filled With Acid, Electric Storage 8, UN 2794, 111, Corrosive

Emergency Response: CHEMTREC (800) 424-9300

PLACARDS SUPPLIED   ☐ YES  ☐ NO

DRIVER'S SIGNATURE

EMERGENCY RESPONSE PHONE NO.

Charges Advanced:

$ _____

SHIPPERS CERTIFICATION: This is to certify that the above-named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

SIGNATURE _____  TITLE _____

C.O.D. SHIPMENT

C.O.D. Amt _____

* If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight".
† Shipper's imprints in lieu of stamp; not a part of Bill of Lading approved by the Interstate Commerce Commission.
Note – Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____

THIS SHIPMENT IS CORRECTLY DESCRIBED.

†The fibre boxes used for this shipment conform to the specifications set forth in the box makers certificate thereon, and all other requirements of the Consolidated Freight Classification.

Collection Fee _____

Total Charges _____

CORRECT WEIGHT IS _____ LBS.

EAGLE BATTERY INC.
(765) 643-4001
538 Meridian St.  Anderson, Indiana 46016

Permanent post-office address of shipper

Shipper, Per John, C   6-1-05   Agent, Per _____

Per _____   Shipper _____

WW/JCP

99284216

TICKET NUMBER

# CAT SCALE

### SCALE

**C**ERTIFIED
**A**UTOMATED
**T**RUCK
**S**CALE

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6263
www.catscale.com

The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.

CAT SCALE
COLLECT
CARD
INSID

### "WEIGH WHAT WE SAY OR WE PAY" ®

If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will:
(1) Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2) A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1) Post bond and request a court date.
2) Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3) **IMMEDIATELY** send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

* The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

**DATE:**

6-01-2005

**SCALE
LOCATION:**

408
PILOT 362
I 69 EXIT 14
FORTVILLE IN

| | |
|---|---|
| STEER AXLE | 11240 lb |
| DRIVE AXLE | 28040 lb |
| TRAILER AXLE | 29020 lb |
| * GROSS WEIGHT | 68300 lb |

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

IMPRINT SEAL HERE
(IF APPLICABLE)

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED    **FREIGHT ALL KINDS**

COMPANY _____    TRACTOR # **824**    TRAILER # **5316**

**WEIGH NUMBER
4210**

FEE **8.00**    WEIGHMASTER OR
WEIGHER SIGNATURE

**COLLIN BUCK**

FULL WEIGH
TICKET #
(IF REWEIGH)

DRIVER IN TRUCK UNLESS CHECKED HERE: ___

© 1998 CAT Scale Compa

CUSTOMER COPY

NAME OF CARRIER:    HUB/S & S Trucking                                                                          PAGE:    ;1    ' OF:

received, subject to the classifications and tariffs in effect on the date of the issue of the Bill of Lading.

**Straight Bill of Lading**
Short Form        Original Not-Neg

FROM:  Ryder Integrated Logistics

SHIP FROM:  INDY X-DOCK
          2379 HADLEY RD.
          PLAINFIELD, IN    46168
          1-317-839-8400
          CONTACT:  JERRY FARNHAM

AGENT FOR SHIPPER BELOW:

SHIP TO:  WORLDWIDE BATTERY
          516 MERIDIAN
          ANDERSON, IN    46016
          1-765-643-4001
          CONTACT:  ANDY BATT

Subject to Section 7 of condition, of applicable Bill
Lading, if this shipment is to be delivered to the
consignee without recourse on the consignor, the con
shall sign the following statement.
    The carrier shall not make delivery of this
shipment without payment of freight and all other law
charges.
Ryder Integrated Logistics

Per _____
                          (Signature of Cons

If charges are to be prepaid
Write or stamp here "To Be Prepaid"        **To Be Prep**

| WHSE. B/L NO. | SHIPPER'S REF NO. |
|---|---|
| SHIP DATE 6-1-05 | SHIPPER'S WHSE NO. 896 |
| RECEIVED DATE | CUSTOMER CODE |

| ROUTING S+S Trucking | CARRIER SCAC CODE  HCIN | VEHICLE NO. 5316 | CARRIER PRO NO. |
|---|---|---|---|

DELIVERY RECEIPT NO.

CUSTOMER P.O. NO.    **SCRAP BATTERIES**                    **SCRAP BATTERIES**

| NUMBER OF PACKAGES | H/M | DESCRIPTION OF INSTRUCITONS | WEIGHT (SUB TO CORR.) | PART NUMBER | NMFC ITEM NUMBER | CLASS | LINE NUMBER | CHECK CO |
|---|---|---|---|---|---|---|---|---|
| 18 | X | BATTERIES, wet, filled with acid 8, (corrosive material) UN 2794, PG III Emergency Response Guide #154 Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound.  (NFMC IT. 60720-2) | 36,000 | | | | | |
| | | Batteries, Electric storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound (NFMC IT. 60720-2) | | | | | | |
| | | Battery boxes, Plastic, N.O.I. (In Boxes Or Wrapped And Secured To Pallets) (NFMC IT. 60740) | | | | | | |
| | | Battery Covers Or Vents, Plastic, N.O.I. (In Boxes) (NMFC IT. 60800) | | | | | | |
| | | Battery Insulating Partitions, Plastic (In Boxes) (NMFC IT. 60840) | | | | SEAL # _____ Make Delivery Appointment | YES    NO | |
| | | Battery Parts, Lead, N.O.I. (NMFC IT. 60880) | | | | | | |
| | | Battery Plates, Lead (NMFC IT. 62675) | | | | | | |
| | | Boxes, Fibre Board, Corrugated, N.O.I. (NMFC IT. 29275) | | | | | | |
| 18 | X | ◄——  TOTAL  ——► | 36,000 | | | | | |

This is an Interstate Shipment Unless Otherwise Noted "Intrastate Shipment".
we to to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according to

applicable regulations of the Department of Transportation

_____                                    Press Hard You Are making 4 Copies

FOR THE ACCOUNT OF (SHIPPER)            SEND FREIGHT BILL TO            **WW/JO**
Delphi E & C – Cisco 35037              Delphi E & C – Cisco 35037
c/o Data2Logistics                      c/o Data2Logistics              00004
42 Thomas Patten Dr.                    42 Thomas Patten Dr
Randolph, MA 02368                      Randolph, MA 02368              6 - 1 - 05

Carrier:  Above Shipper's Ref. And Whse. B/L No. Must Appear On All Freight Bills.

_____        Per _____ Ryder                 S+S

Permanent P.O. address of shipper, Delphi Energy & Engine Management Systems    Agent  James Par____
mark with "X" to designate hazardous materials as defined in the Dept. of Transportation regulations governing transporta
of hazardous materials.  The use of the column is an optional method of designating hazardous materials on Bills of Lading

NCBS To reorder: 1-800-225-63bu or www.nebs.com

# STRAIGHT BILL OF LADING–SHORT FORM–ORIGINAL–NOT NEGOTIABLE

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading.

The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this a motor carrier shipment. Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

**DESIGNATE WITH AN (X)**
BY TRUCK ☐   FREIGHT ☐

**From At**
EAGLE BATTERY, INC.
538 Meridian Street
Anderson, Indiana 46016

**DATE** 6-1-05

**SHIPPER'S NO.** E   6801

**CARRIER**
**BY** S & S Trucking

**CARRIER'S NO.**

**CONSIGNEE AND DESTINATION**
RSR Delphi
7870 W. Morris
Indianapolis, IN 46231

**ROUTE**

**DELIVERING CARRIER**

**CAR OR VEHICLE INITIALS & NO.**

| NO. PACKAGES | * HM | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | ERG # | *WEIGHT (SUBJECT TO CORR.) | CLASS OR RATE | ✓ |
|---|---|---|---|---|---|---|
| 17 | | Skids of scrap batteries | | 48,150 | | |
| | | truck # 824 | | | | |
| | | trailer # 5317-5316 | | | | |
| | | bol # 6256-896-B | | | | |

Batteries, Wet Filled With Acid, Electric Storage 8, UN 2794, 111, Corrosive

Emergency Response: CHEMTREC (800) 424-9300

Subject to Section 7 of Conditions applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.
    The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Per _____
    (Signature of Consignor)

If charges are to be prepaid, write or stamp here, "To be Prepaid."

Received $ _____
to apply in prepayment of the charges on the property described hereon.

Agent or Cashier

Per _____
(The signature here acknowledges only the amount prepaid.)

Charges Advanced:
$ _____

**PLACARDS SUPPLIED** ☐ YES ☐ NO

**DRIVER'S SIGNATURE**

**EMERGENCY RESPONSE PHONE NO**

SHIPPERS CERTIFICATION: This is to certify that the above-named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

**SIGNATURE** _____   **TITLE** _____

* If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight".
† Shipper's imprints in lieu of stamp; not a part of Bill of Lading approved by the Interstate Commerce Commission.
Note – Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____

THIS SHIPMENT IS CORRECTLY DESCRIBED.

†The fibre boxes used for this shipment conform to the specifications set forth in the box makers certificate thereon, and all other requirements of the Consolidated Freight Classification.

CORRECT WEIGHT IS _____ LBS.

**C.O.D. SHIPMENT**
C.O.D. Amt _____
Collection Fee _____
Total Charges _____

Per _____   Shipper _____

EAGLE BATTERY INC.
(765) 643-4001
538 Meridian St.  Anderson, Indiana 46016

Shipper, Per John C   6-1-05   Agent, Per _____

**Permanent post-office address of shipper**

WW/ICI

TICKET NUMBER

# CAT SCALE

**C**ERTIFIED
**A**UTOMATED
**T**RUCK
**SCALE**

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6263
www.catscale.com

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

**THE CAT SCALE GUARANTEE**

The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.©

**"WEIGH WHAT WE SAY OR WE PAY"** ®

If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will:

(1) Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2) A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1) Post bond and request a court date.
2) Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3) **IMMEDIATELY** send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

**CAT SCALE
COLLECTOR
CARD
INSIDE!**

* The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

DATE:  6-01-2005

SCALE LOCATION:  359
PILOT
I 65 EXIT 201
REMINGTON IN

STEER AXLE    11420  lb
DRIVE AXLE    28520  lb
TRAILER AXLE  29920  lb
* GROSS WEIGHT  69860  lb

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

IMPRINT SEAL HERE
(IF APPLICABLE)

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED   FREIGHT ALL KINDS
COMPANY  S AND S                    TRACTOR # 824   TRAILER # 5317

**WEIGH NUMBER
4014**

FEE  8.00

WEIGHMASTER OR
WEIGHER SIGNATURE   YOLANDA VILLEGAS

FULL WEIGH
TICKET #
(IF REWEIGH)

DRIVER IN TRUCK UNLESS CHECKED HERE:

CUSTOMER COPY

© 1998 CAT Scale Company®

SHIP FROM :

Delphi Prod & Svc Solutions

471 Quadrangle Dr.

Bolingbrook       IL  60440

(800) 628-7020

SHIP TO :

Worldwide Battery

538 Meridian

Anderson        IN  46016

| Ship Date | |
|---|---|
| 5/31/2005 | |
| SEAL #1 | |
| 8802 | |
| SEAL #2 | |
| 0 | |
| SEAL #3 | |
| 0 | |
| SEAL #4 | |
| 0 | |

STRAIGHT BILL OF LADING
Short Form          Original Not-Negotiable

Subject to Section 7 of conditions, of applicable Bill of Lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.

The carrier shall not make delivery of the shipment without payment of freight and all other lawful charges.

DELPHI AUTOMOTIVE

Per

_____
(Signature of Consignor)

If charges are to be prepaid, write or stamp here, "To Be Prepaid."
                                        TO BE PREPAID

| BOL No. | Truck No. | Carrier Name | Carrier SCAC Code | Carrier PRO NO. |
|---|---|---|---|---|
| 6256 | 5317 | S&S Trucking | HCIN | |

| Pallets | HM | Description Instructions | Items | Weight |
|---|---|---|---|---|
| 18 | x | Batteries, wet, filled with acid, 8 (Corrosive Material), UN 2794, PG III : Emergency Response Guide #154 - Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 per pound.    (NMFC IT. 60720-2) | 1179 | 41172lbs |
| | | Scrap Lead    (Wheel weights) | 0 | 0lbs |

TOTALS :

| | |
|---|---|
| 1179 | 41172lbs |

This is to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

(Signed)_____

3rd Party Prepaid
DELPHI E&C - Cisco Code 35037
C/O Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

Per _____        Per _James Paman_

WW/JC

00004

5-31-05

S+S

(HM)- Mark with 'X' to designate hazardous materials as defined in the Dept. of Trans. regulations governing transportation of hazardous materials. The use of the column is a method of designating hazardous materials on Bill of Ladings per sec 172.301 and 172.202b: of the regulations governing

95925698
**TICKET NUMBER**

The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.®

**"WEIGH WHAT WE SAY OR WE PAY"** ®

If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will **STAND BY YOU**

(1)  Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2)  A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

**CAT SCALE**
**COLLECT**
**CARD**
**INSIDE**

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1)  Post bond and request a court date.
2)  Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3)  **IMMEDIATELY** send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

**C**ERTIFIED
**A**UTOMATED
**T**RUCK
**SCALE**

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6263
www.catscale.com

* The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

1339
95925698

**SCALE
LOCATION:**

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

**DATE:**   6-02-2005

177
CRAZY D S
I 69 EXIT 78
WARREN IN

| | |
|---|---|
| STEER AXLE | 11340 lb |
| DRIVE AXLE | 27920 lb |
| TRAILER AXLE | 30820 lb |
| * GROSS WEIGHT | 70080 lb |

IMPRINT SEAL HERE
(IF APPLICABLE)

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED    FREIGHT ALL KINDS

COMPANY    LANDSTAR RANGER

TRACTOR #  435252    TRAILER #  637378

**WEIGH NUMBER**
5698

FEE  8.00    WEIGHMASTER OR
WEIGHER SIGNATURE    *Phyllis Dennis*    FULL WEIGH
TICKET #
(IF REWEIGH)

PHYLLIS DENNIS

DRIVER IN TRUCK UNLESS CHECKED HERE: ___

**CUSTOMER COPY**

© 1998 CAT Scale Compa

NAME OF CARRIER: **Landstar**.

PAGE    1    OF    1

Received, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading.

**Straight Bill of Lading**
**Short Form    Original Not-Ne**

T:

FROM:  **Ryder Integrated Logistics**

SHIP FROM:  **Delta Cross Dock (Ryder)**
                    **1140 main st.**
                    **Delta, Oh  43515**
                    **419-559-1062**

AS AGENT FOR SHIPPER BELOW:

SHIP TO:  **WORLDWIDE BATTERY**
                    **516 MERIDIAN**
                    **ANDERSON, IN    46016**
                    **1-765-643-4001**

Subject to Section 7 of condition, of applicable Bill of Lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the co shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other l charges.
Ryder Integrated Logistics

Per    Robert

(Signature of

If charges are to be prepaid write or stamp here "To Be Prepaid"    **To Be Prep**

| WHSE. B/L NO. | SHIPPER'S REF N |
|---|---|
| SHIP DATE  6-2-05 | SHIPPER'S WHSE NO  896 |
| RECEIVED DATE | CUSTOMER CODE |

ROUTING: **Landstar**

| CARRIER SCAC CODE  **HCIN** | VEHICLE NO.  637378 | CARRIER PRO.NO. |
|---|---|---|

CUSTOMER P.O. NO.  **SCRAP BATTERIES**

DELIVERY RECEIPT NO.  **SCRAP BATTERIES**

| NUMBER OF PACKAGES | *e HM | DESCRIPTION OF INSTRUCITONS | WEIGHT (SUB TO CORR.) | PART NUMBER | NMFC ITEM NUMBER | CLASS | LINE NUMBER | CHECK |
|---|---|---|---|---|---|---|---|---|
| 1,150 pieces | X | BATTERIES, wet, filled with acid 8, (corrosive material) UN 2794, PG III Emergency Response Guide #154 Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound. (NFMC IT. 60720-2) | 41,500 lbs. (19 Pallets) | | | | | |
| 19 | | Batteries, Electric storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound (NFMC IT. 60720-2) | 19 | | | | | |
| Pallet | | Battery boxes, Plastic, N.O.I. (In Boxes Or Wrapped And Secured To Pallets) (NFMC IT. 60740) | | | | | | |
| | | Battery Covers Or Vents, Plastic, N.O.I. (In Boxes) (NMFC IT. 60800) | | | | SEAL # | | |
| | | Battery Insulating Partitions, Plastic (In Boxes) (NMFC IT. 60840) | | | | Make Delivery Appointment | YES   NO | |
| | | Battery Parts, Lead, N.O.I. (NMFC IT. 60860) | | | | | | |
| | | Battery Plates, Lead (NMFC IT. 62675) | | | | | | |
| | | Boxes, Fibre Board, Corrugated, K.D. Flat (NMFC IT. 29275) | | | | | | |
| 19 | | | | | | | | |
| 1,150 pieces | | ◄—    TOTAL    —► | 41,500 lbs. | | | | | |

This is an Interstate Shipment Unless Otherwise Noted: "Intrastate Shipment"

This is to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation acc the
Applicable regulations of the Department of Transportation.

Signed _____

Press Hard You Are making 4 Copies

FOR THE ACCOUNT OF (SHIPPER)
3rd Party Prepaid
Delphi E & C – Cisco 36037
c/o Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

SEND FREIGHT BILL TO:
3rd Party Prepaid
Delphi E & C Cisco 36037
c/o Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

Carrier:  Above Shipper's Ref. And Whse. B/L No. Must Appear On All Freight Bills.

Per    **RYDER**

(NEBS) To Reorder: 1-800-225-6380 or www.nebs.c...

## STRAIGHT BILL OF LADING–SHORT FORM–ORIGINAL–NOT NEGOTIABLE

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of issue of this Bill of Lading.

DESIGNATE WITH AN (X)
BY TRUCK ☐     FREIGHT

The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said carrier (the word carrier being understood throughout th... as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route or at said destination. It is mutually ... to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and co... the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this a motor carrier ... Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are here... to by the shipper and accepted for himself and his assigns.

| | |
|---|---|
| From | **EAGLE BATTERY, INC.** |
| At | 538 Meridian Street<br>Anderson, Indiana 46016 |

DATE **6-2-05**    SHIPPER'S NO.  E   6795

CONSIGNEE AND DESTINATION

RSR · Delphi
7870 W. Morris
Indianapolis, In 46231

CARRIER
BY **S & S Trucking**

ROUTE

DELIVERING CARRIER

CAR OR VEHICLE INITIALS & NO.

| NO. PACKAGES | HM | DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS | ENG # | *WEIGHT (SUBJECT TO CORR.) | CLASS OR RATE | ✓ | |
|---|---|---|---|---|---|---|---|
| 17 | | Skids of scrap batteries | | 48,150 | | | Subject to Section 7 of ... applicable bill of lading, if this ship... be delivered to the consignee... recourse on the consignor, the ... shall sign the following statement. |
| | | | | | | | The carrier shall not make d... this shipment without payment... and all other lawful charges. |
| | | truck # 824 | | | | | Per_____ (Signature of Consignor) |
| | | trailer # 5316-5310 | | | | | If charges are to be prepaid... stamp here, "To be Prepaid." |
| | | bol # 896-A | | | | | |
| | | Batteries, Wet Filled With Acid, Electric Storage 8, UN 2794, 111, Corrosive | | | | | Received $_____ to apply in prepayment of the ch... the property described herein. |
| | | Emergency Response: CHEMTREC (800) 424-9300 | | | | | Agent or Cashier |
| | | | | | | | Per_____ |

PLACARDS SUPPLIED   ☐ YES  ☐ NO

DRIVER'S SIGNATURE

EMERGENCY RESPONSE PHONE NO

(The signature here acknowledges ... the amount prepaid.)

Charges Advanced.

SHIPPERS CERTIFICATION: This is to certify that the above-named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

SIGNATURE _____   TITLE_____

\$ _____

* If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight".
† Shipper's imprints in lieu of stamp; not a part of Bill of Lading approved by the Interstate Commerce Commission.
Note – Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

**C.O.D. SHIPMENT**
C.O.D. Aml _____

| THIS SHIPMENT IS CORRECTLY DESCRIBED. | † The fibre boxes used for this shipment conform to the specifications set forth in the box makers certificate thereon, and all other requirements of the Consolidated Freight Classification. | Collection Fee_____ |
|---|---|---|
| CORRECT WEIGHT IS _____ LBS. | Per _____   Shipper | Total Charges _____ |

**EAGLE BATTERY INC.**
(765) 643-4001
538 Meridian St.  Anderson, Indiana 46016
Permanent post-office address of shipper

Shipper, Per **John. C**  **6-2-05**  Agent, Per _____

WW/JCI...



CAT SCALE
COLLECTOR
CARD
INSIDE!

99284186

TICKET NUMBER

# CAT SCALE

CERTIFIED
AUTOMATED
TRUCK
SCALE

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6263
www.catscale.com

1541
99284182

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

IMPRINT SEAL HERE
(IF APPLICABLE)

WEIGH NUMBER
4182

**THE CAT SCALE GUARANTEE**
The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.©

**"WEIGH WHAT WE SAY OR WE PAY"** ®
If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will:
(1) Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2) A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1) Post bond and request a court date.
2) Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3) IMMEDIATELY send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

> * The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

DATE: 6-2-2005

SCALE
LOCATION:
408
PILOT 362
I 69 EXIT 14
FORTVILLE IN

| | |
|---|---|
| STEER AXLE | 11240 lb |
| DRIVE AXLE | 31660 lb |
| TRAILER AXLE | 28620 lb |
| * GROSS WEIGHT | 71520 lb |

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED    FREIGHT ALL KINDS

COMPANY  S AND S                                    TRACTOR # 324    TRAILER # 5316

FEE  8.00        WEIGHMASTER OR
                 WEIGHER SIGNATURE                   FULL WEIGH
                        KRISTINA DICK                 TICKET #
                                                      (IF REWEIGH)

DRIVER IN TRUCK UNLESS CHECKED HERE: ___

© 1998 CAT Scale Company® 04/04

:ceived, subject to the classifications and tariffs in effect on the date of the issue of the Bill of Lading.

**Straight Bill of Lading**
**Short Form    Original Not-Negof**

:OM:  **Ryder Integrated Logistics**

:IP FROM:  **INDY X-DOCK**
          **2379 HADLEY RD.**
          **PLAINFIELD, IN    46168**
          **1-317-839-8400**
          **CONTACT:  JERRY FARNHAM**

; AGENT FOR SHIPPER BELOW:

:IP TO:  **WORLDWIDE BATTERY**
         **516 MERIDIAN**
         **ANDERSON, IN    46016**
         **1-765-643-4001**
         **CONTACT:  RANDY BATT**

Subject to Section 7 of condition, of applicable Bill
Lading, if this shipment is to be delivered to the
consignee without recourse on the consignor, the consi;
shall sign the following statement.
      The carrier shall not make delivery of this
shipment without payment of freight and all other lawfu
charges.
Ryder Integrated Logistics

Per _____

_____(Signature of Consign

If charges are to be prepaid     **To Be Prepai**
Write or stamp here "To Be Prepaid"

| WHSE. B/L NO. | SHIPPER'S REF NO. |
|---|---|
| SHIP DATE 6-2-05 | SHIPPER'S WHSE N. 896 |
| R___ SD DATE 5316 | CUSTOMER CODE |

:TING **S + S**     CARRIER SLAC CODE  **HCIN**     VEHICLE NO.     CARRIER PRO NO

:TOMER P.O. NO.  **SCRAP BATTERIES**     DELIVERY RECEIPT NO.     **SCRAP BATTERIES**

| UMBER OF PACKAGES | ⊗ HM | DESCRIPTION OF INSTRUCITONS | WEIGHT (SUB TO CORR.) | PART NUMBER | NMFC ITEM NUMBER | CLASS | LINE NUMBER | CHECK COLU |
|---|---|---|---|---|---|---|---|---|
| 18 | X | BATTERIES, wet, filled with acid 8, (corrosive material) UN 2794, PG III Emergency Response Guide #154 Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound. (NFMC IT. 60720-2) | 40,000 | | | | | |
| | | Batteries, Electric storage, Assembled, N.O.I., Value Not To Exceed $2.00 Per Pound (NFMC IT. 60720-2) | | | | | | |
| | | Battery boxes, Plastic, N.O.I. (In Boxes Or Wrapped And Secured To Pallets) (NFMC IT. 60740) | | | | | | |
| | | Battery Covers Or Vents, Plastic, N.O.I. (In Boxes) (NMFC IT. 60800) | | | | | | |
| | | Battery Insulating Partitions, Plastic (In Boxes) (NMFC IT. 60840) | | | SEAL # _____ Make Delivery Appointment | YES | NO | |
| | | Battery Parts, Lead, N.O.I (NMFC IT. 60860) | | | | | | |
| | | Battery Plates, Lead (NMFC IT. 62675) | | | | | | |
| | | Boxes, Fibre Board, Corrugated, K.D. Flat (NMFC IT. 29275) | | | | | | |
| 18 | X | ◀━━━━ TOTAL ━━━━▶ | 40,000 | | | | | |

This is an Interstate Shipment Unless ___ noted "Intrastate Shipment"

:s is to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation accor:
:plicable regulations of the Department of Transportation

:ned _____

Press Hard You Are making 4 Copies

**WW/J○**

FOR THE ACCOUNT OF (SHIPPER)
Delphi E & C – Cisco 35037
c/o Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

SEND FREIGHT BILL TO
Delphi E & C – Cisco 35037
c/o Data2Logistics
42 Thomas Patten Dr
Randolph, MA 02368

0000.
6-2-05

5+S

_____ Per _____ Ryder

:r: :ec:  Above Shipper's Ref. And Whse. B/L No. Must Appear On All Freight Bills.

:manent P.O. address of shipper, Delphi Energy & Engine Management Systems  Agent
___ with "WW" to designate hazardous materials as defined in the Dept. of Transportation regulations governing transportati



P.O. Box 6730, Evansville, IN 47719-0730
Ph. (812) 421-8212 Fax: (812) 421-8325
www.interstatescales.com

No. 929905

IF REWEIGH

FIRST TICKET #

INTSCL

HOOSIER HEARTLAND TRAVEL CENTER
I-65 & U.S. 24 EXIT #201
REMINGTON, IN 47340

LICE
PUBLIC WE
SE
(IF APP

SM

**DRIVER COPY**

11240 lb          28060 lb                    28920 lb

68220 lb GROSS

THE GROSS WEIGHT IS THE CERTIFIED WEIGHT
ENTIRE TRUCK MUST BE ON SCALE TO BE CERTIFIED
MULTIPLE DRAFT WEIGHTS ARE NOT LEGAL FOR TRADE

Weigh Fee $7.50

This is to certify that the following described merchandise was weighed, counted or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

Tractor # _____  **TRUCK #: 717**  Trailer # 5320   Company  S/S

#1 Driver Code          P.O.#          Trip #          Weighmaster  M. Burch

©Hargett Enterprises, Inc. 2002. All rights reserved. No part of t
be reproduced without the express written consent of Interstate

SHIP FROM:

Delphi Prod & Svc Solutions

471 Quadrangle Dr.

Bolingbrook    IL  60440

(800) 628-7020

SHIP TO :

Worldwide Battery

538 Meridian

Anderson    IN  46016

| | |
|---|---|
| Ship Date | 6/1/2005 |
| SEAL #1 | 8895 |
| SEAL #2 | 0 |
| SEAL #3 | 0 |
| SEAL #4 | 0 |

STRAIGHT BILL OF LADING

Short Form          Original Not-Negotiable

Subject to Section 7 of conditions, of applicable Bill of Lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.

The carrier shall not make delivery of the shipment without payment of freight and all other lawful charges.

DELPHI AUTOMOTIVE

Per _____

(Signature of Consignor)

If charges are to be prepaid, write or stamp here,
"To Be Prepaid."

TO BE PREPAID

| BOL No. | Truck No. | Carrier Name | Carrier SCAC Code | Carrier PRO NO. |
|---------|-----------|--------------|-------------------|-----------------|
| 6258 | 5320 | S&S Trucking | HCIN | |

| Pallets | HM | Description Instructions | Items | Weight |
|---------|----|--------------------------|-------|--------|
| 18 | x | Batteries, wet, filled with acid, 8 (Corrosive Material), UN 2794, PG III : Emergency Response Guide #154 - Batteries, Electric Storage, Assembled, N.O.I., Value Not To Exceed $2.00 per pound.    (NMFC IT. 60720-2) | 1144 | 411841 |
| | | Scrap Lead    (Wheel weights) | 0 | 01 |

TOTALS :    | 1144 | 411841

*David Bell*

6-2-05

This is to certify that the above named materials are properly classified, described, packaged, marked and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

(Signed)

3rd Party Prepaid
DELPHI E&C - Cisco Code 35037
C/O Data2Logistics
42 Thomas Patten Dr.
Randolph, MA 02368

Per                                                    Per

(HM)- Mark with 'X' to designate hazardous materials as defined in the Dept. of Trans. regulations governing transportation of hazardous materials. The use of the column is a method of designating hazardous materials on Bill of Ladings per sec 172.301 and 172.202b: of the regulations governing

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WORLDWIDE BATTERY COMPANY, LLC, | ) | CASE NO: 1:06-cv-0602-DFH-TAB |
| | ) | |
| Plaintiff, | ) | JUDGE: David F. Hamilton |
| | ) | |
| | ) | |
| v. | ) | **DEFENDANTS JOHNSON CONTROLS,** |
| | ) | **INC. AND JOHNSON CONTROLS** |
| | ) | **BATTERY GROUP, INC.'S JOINT** |
| JOHNSON CONTROLS, INC., JOHNSON | ) | **ANSWER TO PLAINTIFF'S FIRST** |
| CONTROLS BATTERY GROUP, INC., | ) | **AMENDED COMPLAINT** |
| INTERSTATE BATTERY FRANCHISING & | ) | |
| DEVELOPMENT, INC., DENNIS | ) | **(Removed from the Madison County** |
| MCDANIEL AND LARRY LARSH, | ) | **Circuit Court, Cause No. 48C01-0603-PL-** |
| | ) | **00297)** |
| Defendants. | ) | |
| | ) | |
| | ) | |

Defendants Johnson Controls, Inc. ("JCI") and Johnson Controls Battery Group, Inc.,

("JCI Battery Group") (collectively, the "JCI Defendants"), for their Answer to the First

Amended Complaint ("Plaintiff's Complaint") of Plaintiff WorldWide Battery Company, LLC

("WorldWide" or "Plaintiff"), state as follows:

1.      JCI Defendants are without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint and therefore

deny the allegations.

2.      JCI Defendants admit the allegations contained in Paragraph 2 of Plaintiff's

Complaint.

3.      JCI Defendants admit the allegations contained in Paragraph 3 of Plaintiff's

Complaint.

4.      Upon information and belief, JCI Defendants admit that Interstate Battery

CLE - 937689.5

Franchising & Development, Inc. is a corporation organized and existing under the laws of the State of Delaware, but are without knowledge or information sufficient form a belief as to the truth of the remaining allegations contained in Paragraph 4 of Plaintiff's Complaint and therefore deny the remaining allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.      Upon information and belief, JCI Defendants admit the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6.      Upon information and belief, JCI Defendants admit the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7.      JCI Defendants deny the allegations contained in Paragraph 7 of Plaintiff's Complaint. Further answering, JCI Defendants state that JCI is the 48% owner of Interstate Battery Systems International, Inc., which is the corporate parent of, among other entities, Retail Acquisition & Development, Inc., which is the corporate parent of, among other entities, Interstate Battery Franchising & Development, Inc. (defined as "Interstate Battery" in Plaintiff's Complaint).

8.      In response to Paragraph 8 of Plaintiff's Complaint, JCI Defendants admit that a copy of a document captioned "Recycled Battery Sales Agreement" to which the JCI Defendants were not signatories is attached as Exhibit A to Plaintiff's Complaint, and state that the terms of the document speak for themselves. JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of Plaintiff's Complaint and therefore deny the remaining allegations.

9.      In response to Paragraph 9 of Plaintiff's Complaint, JCI Defendants admit that a copy of a document captioned "Recycled Battery Sales Agreement" to which the JCI Defendants were not signatories is attached as Exhibit A to Plaintiff's Complaint, and state that the terms of

2

the document speak for themselves. JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 of Plaintiff's Complaint and therefore deny the remaining allegations.

10.    JCI Defendants deny the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.    JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of Plaintiff's Complaint and therefore deny the allegations.

12.    JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of Plaintiff's Complaint and therefore deny the allegations.

13.    JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of Plaintiff's Complaint and therefore deny the allegations.

14.    In response to Paragraph 14 of Plaintiff's Complaint, JCI Defendants admit that a copy of a document captioned "Recycled Battery Sales Agreement" is attached as Exhibit A to Plaintiff's Complaint, and state that the terms of the document speak for themselves.    JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of Plaintiff's Complaint and therefore deny the remaining allegations.

15.    In response to Paragraph 15 of Plaintiff's Complaint, JCI Defendants admit that a copy of a document captioned "Recycled Battery Sales Agreement" is attached as Exhibit A to Plaintiff's Complaint, and state that the terms of the document speak for themselves.    JCI

3

Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of Plaintiff's Complaint and therefore deny the remaining allegations.

16.    In response to Paragraph 16 of Plaintiff's Complaint, JCI Defendants admit that on or about June 30, 2005, JCI purchased certain of Delphi's battery-related assets, but in the United States JCI only assumed those assets expressly agreed upon by the parties. JCI did not assume the Recycled Battery Sales Agreement or any liabilities related thereto. JCI Defendants deny the remaining allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.    JCI Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of Plaintiff's Complaint and therefore deny the allegations.

18.    JCI Defendants deny the allegations contained in Paragraph 18 of Plaintiff's Complaint. Answering further, JCI Defendants do admit that certain batteries were shipped to WorldWide after the Delphi sale of assets to JCI, but JCI was under no contractual obligation to ship such batteries and WorldWide was under no contractual obligation to accept such batteries.

19.    JCI Defendants admit that JCI Defendants ceased shipments to WorldWide, but deny the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.    JCI Defendants admit that there was a meeting in September 2005, but deny the remaining allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.    JCI Defendants deny the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.    JCI Defendants admit that WorldWide claimed that WorldWide was entitled to bind JCI Defendants to the Recycled Battery Sales Agreement, but JCI Defendants denied then

4

and deny now that JCI Defendants are or were bound by this agreement.  JCI Defendants deny the remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.    JCI Defendants admit the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.    In response to Paragraph 24 of Plaintiff's Complaint, JCI Defendants admit that in or around November 2005, JCI sent a letter to WorldWide, and state that the terms of the letter speak for themselves.  JCI Defendants deny the remaining allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.    JCI Defendants admit that JCI proposed entering into a new agreement with WorldWide and state further that since the parties did not enter into an agreement, JCI has no contractual obligations to WorldWide.  JCI Defendants deny the remaining allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.    JCI Defendants deny that their conduct was wrongful.  JCI Defendants are without knowledge or information sufficient form a belief as to the truth of the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint and therefore deny the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.    In response to Paragraph 27 of Plaintiff's Complaint, JCI Defendants admit that there is a document attached to Plaintiff's Complaint as Exhibit B.  JCI Defendants deny the remaining allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.    JCI Defendants state that Paragraph 28 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required.  To the extent that Paragraph 28 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

5

29.    To the extent they relate to Delphi, JCI Defendants deny the allegations contained in Paragraph 29 of Plaintiff's Complaint. JCI Defendants state that the remainder of Paragraph 29 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 29 of Plaintiff's Complaint is determined to contain factual allegations relating to JCI Defendants, JCI Defendants deny the allegations.

30.    JCI Defendants state that Paragraph 30 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 30 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

31.    JCI Defendants state that Paragraph 31 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 31 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

32.    JCI Defendants state that Paragraph 32 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 32 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

33.    JCI Defendants state that Paragraph 33 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 33 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

34.    JCI Defendants state that Paragraph 34 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 34

of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

36.     Upon information and belief, JCI Defendants admit the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36.     JCI Defendants deny the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.     JCI Defendants state that Paragraph 37 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 37 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

38.     JCI Defendants state that Paragraph 38 of Plaintiff's Complaint contains statements of law to which no responsive pleading is required. To the extent that Paragraph 38 of Plaintiff's Complaint is determined to contain factual allegations, JCI Defendants deny the allegations.

39.     To the extent that any allegation is not specifically admitted, it is denied.

### AFFIRMATIVE DEFENSES

40.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

41.     Plaintiff's claims against JCI Defendants are barred to the extent that JCI Defendants are neither assignees nor purchasers of the Recycled Battery Sales Agreement which forms the basis of Plaintiff's claims.

42.     Plaintiff's claims are, or may be, barred by the doctrine of waiver, laches and/or estoppel.

43.     Plaintiff's claims are barred by lack of consideration.

44.     Plaintiff's claims are barred by lack of mutual assent.

7

45.    Plaintiff's damages, if any, were the direct and proximate result of the acts of third parties over which JCI Defendants have neither control nor a duty to control.

46.    Plaintiff's claims are solely against Delphi, and any liability has been discharged in bankruptcy.

47.    To the extent that Plaintiff suffered any damages, Plaintiff failed to mitigate its damages.

48.    JCI Defendants specifically reserve the right to add additional affirmative defenses as may become available through the course of this action.

## DEMAND FOR RELIEF

WHEREFORE, Defendants Johnson Controls, Inc. and Johnson Controls Battery Group, Inc., respectfully request that judgment be entered in their favor and against Plaintiff WorldWide Battery Company, LLC, as follows:

1.    That Plaintiff's Complaint, and all claims for relief set forth therein, be dismissed, with prejudice;

2.    That judgment be entered in favor of JCI Defendants and against Plaintiff on all claims for relief set forth in Plaintiff's Complaint;

3.    That JCI Defendants be awarded their costs of suit; and

4.    That JCI Defendants be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted.

OF COUNSEL:

HAHN LOESER & PARKS LLP

/s/ Jeffrey A. Brauer
Royce R. Remington (OH #0040408)
Jeffrey A. Brauer (OH #0069908)

3300 PB Tower
200 Public Square
Cleveland, Ohio 44114-2301
Phone:  (216) 621-0150
Telefax:  (216) 241-2824
E-mail:  rrremington@hahnlaw.com
          jabrauer@hahnlaw.com

Attorneys for Defendants
Johnson Controls, Inc. and Johnson Controls
Battery Group, Inc.

CLE - 937689.5

## CERTIFICATE OF SERVICE

I certify that on the 20th day of April, 2006, the foregoing was filed electronically.

Notice of this filing will be sent to the following parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Christopher S. Roberge, Esq.<br>Elizabeth A. Roberge, Esq.<br>Eliza K. Bradley, Esq.<br>ROBERGE & ROBERGE<br>9190 Priority Way West Dr., Suite 100<br>Indianapolis, IN 46240<br><br>Attorneys for Plaintiff WorldWide Battery<br>Company, LLC | Eric A. Riegner<br>eriegner@locke.com<br>LOCKE REYNOLDS LLP<br>201 North Illinois, Suite 1000<br>P.O. Box 44961<br>Indianapolis, IN 46244-0961<br>Phone: (317) 237-3800<br>Telefax: (317) 237-3900<br><br>Attorney for Defendant<br>Interstate Battery Franchising & Development,<br>Inc. |
| Donald G. Orzeske<br>dorzeske@goblaw.com<br>GOODIN ORZESKE & BLACKWELL, P.C.<br>9102 N. Meridian Street, Suite 400<br>Indianapolis, IN 46260<br>Phone: (317) 846-4000<br>Telefax: (317) 846-8000<br><br>Attorney for Defendant Dennis McDaniel | John C. Trimble<br>jtrimble@lewiswagner.com<br>LEWIS WAGNER LLP<br>501 Indiana Avenue, Suite 200<br>Indianapolis, IN 46202<br>Phone: (317) 237-0500<br>Telefax: (317) 630-2790<br><br>Attorney for Defendant Larry Larsh |

/s/ Jeffrey A. Brauer
One of the Attorneys for Defendants
Johnson Controls, Inc. and Johnson Controls
Battery Group, Inc.

CLE - 937689.5

## Christopher Roberge

| | |
|---|---|
| **From:** | insd_cmecf@insd.uscourts.gov |
| **Sent:** | Thursday, April 20, 2006 10:13 AM |
| **To:** | e-filer@insd.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-00602-DFH-TAB WORLDWIDE BATTERY COMPANY, LLC v. JOHNSON CONTROLS, INC. et al "Answer to Complaint (Notice of Removal)" |

**\*\*\* NOTICE \*\*\* The electronically filed document(s) may be viewed once at no charge by clicking on the Document Number hyperlink (example - 21). To avoid PACER charges for subsequent viewing, download or print a copy of the document(s) during the first viewing. If the document number is not hyperlinked, the filing was not submitted electronically and must be served in paper form pursuant to Fed.R.Civ.P.5(b).**

**U.S. District Court**
**Southern District of Indiana**
**Office of the Clerk**
**(317) 229-3700**
www.insd.uscourts.gov

Notice of Electronic Filing

The following transaction was received from Brauer, Jeffrey A. entered on 4/20/2006 at 10:13 AM EST and filed on 4/20/2006

| | |
|---|---|
| **Case Name:** | WORLDWIDE BATTERY COMPANY, LLC v. JOHNSON CONTROLS, INC. et al |
| **Case Number:** | 1:06-cv-602 |
| **Filer:** | JOHNSON CONTROLS, INC. JOHNSON CONTROLS BATTERY GROUP, INC. |
| **Document Number:** | 9 |

**Docket Text:**
*Joint* ANSWER to Complaint (Notice of Removal) by JOHNSON CONTROLS, INC., JOHNSON CONTROLS BATTERY GROUP, INC..(Brauer, Jeffrey)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP insdStamp_ID=989432984 [Date=4/20/2006] [FileNumber=920184-0] [
5cec48dd0a2eef96d4c04dede00f5e25225118063820849ff2ccfad1c6a34614c34c02
f16577730640a38a8dbc9592dbf6d02f0b35fd83cfe9331fbd20d6369f]]

**1:06-cv-602 Notice will be electronically mailed to:**

Jeffrey A. Brauer    jabrauer@hahnlaw.com, eblevasseur@hahnlaw.com

Donald Orzeske     dorzeske@goblaw.com, dnorton@goblaw.com

Royce R. Remington     rrremington@hahnlaw.com, edtropf@hahnlaw.com

Eric A. Riegner     eriegner@locke.com, mharris@locke.com

Christopher S. Roberge     croberge@robergelaw.com

John Carl Trimble     jtrimble@lewiswagner.com, jjohnson@lewiswagner.com

**1:06-cv-602 Notice will be delivered by other means to:**
--- [This E-mail scanned for viruses by iLectris Virus Scan]