Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
      In re                              :        Chapter 11
                                             :
DELPHI CORPORATION, et al.,      :        Case No. 05-44481 (RDD)
                                             :
                        Debtors.     :        (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
AND FED. R. BANKR. P. 2014 AUTHORIZING AMENDMENT OF FEE STRUCTURE FOR
MERGER AND ACQUISITION TRANSACTION SERVICES INVOLVING DEBTORS'
STEERING AND INTERIOR DIVISIONS PROVIDED BY
<u>ROTHSCHILD INC. NUNC PRO TUNC TO JULY 19, 2006</u>

("ROTHSCHILD SUPPLEMENTAL RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

---

[1] In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,

(collectively, the "Debtors"), hereby submit this supplemental retention application (this "Supplemental Retention Application") for an order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 authorizing the amendment of the fee structure for services provided by Rothschild Inc. ("Rothschild") as financial advisor and investment banker to the Debtors, nunc pro tunc to July 19, 2006, in connection with any merger and acquisition transaction ("M&A Transaction") involving the Debtors' (i) steering division (the "Steering Division"), which division includes the Debtors' Steering Systems and Halfshafts businesses, and/or (ii) interior division (the "Interior Division"), which division includes the Debtors' Instrument Panels and Consoles, Cockpits, Door Modules, and Latching Systems businesses.  In support of this Supplemental Retention Application, the Debtors submit the Supplemental Declaration Of David L. Resnick, sworn to November 28, 2006, (the "Resnick Declaration").  In further support of this Supplemental Retention Application, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

---

Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.  Current Business Operations Of The Debtors

5. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6. The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

---

[2] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

7.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.     The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

---

[3]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

        10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.      <u>The Debtors' Transformation Plan</u>

        11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

13. By this Supplemental Retention Application, the Debtors seek to amend the structure for compensation payable to Rothschild for services rendered in connection with any M&A Transaction involving the Steering Division and/or the Interior Division (the "Minimum M&A Fee") by adding a "floor" with respect to such compensation. Accordingly, the Debtors respectfully request the entry of an order under sections 327(a) and 328 of the Bankruptcy Code authorizing the amendment of the fee payable to Rothschild in connection with any M&A Transaction involving the Steering Division and/or the Interior Division pursuant to the letter agreement (the "Supplemental Engagement Letter") attached as Exhibit 2 to the Resnick Declaration, nunc pro tunc to July 19, 2006.

Overview

14. The Debtors filed an application for employment of Rothschild as financial advisor and investment banker to the Debtors in these chapter 11 cases on October 8, 2005 (the "Rothschild Retention Application"). On November 30, 2005, this Court approved the Rothschild Retention Application, with certain modifications, and entered the Final Order Under §§ 327(a) And 328 Authorizing Employment And Retention Of Rothschild Inc. As Financial Advisor And Investment Banker To The Debtors (Docket No. 1363) (the "Retention Order").

Rothschild is currently providing the Debtors with a wide array of financial advisory and investment banking services in support of their reorganization process. As part of this process, the Debtors are considering selling certain of their businesses, including, among other businesses, the Steering Division and the Interior Division.

15. The Original Engagement Letter (as defined below) provides that the Debtors have the ability to designate Rothschild as their primary advisors and investment bankers for certain transactions, including mergers and acquisitions. Pursuant to the terms of the Original Engagement Letter, Rothschild has been asked by the Debtors to assist in the sale of the Debtors' Steering Division, which division includes the Debtors' Steering Systems and Halfshafts businesses, and the Interior Division, which division includes the Debtors' Instrument Panels and Consoles, Cockpits, Door Modules, and Latching Systems businesses. Rothschild has been providing such services since April 2006. The Debtors confirmed such designation in a letter dated May 17, 2006, and the Supplemental Engagement Letter was executed as of July 19, 2006. Delphi's Board of Directors approved the Supplemental Engagement Letter on September 20, 2006.

16. The Original Engagement Letter provides for a transaction fee based on the aggregate consideration payable to the Debtors in connection with mergers and acquisitions transactions. Due to the inter-relationship of the Debtors' divestitures and their negotiations regarding a possible reorganization plan, Rothschild and the Debtors have agreed to modify the fee structure set forth in the Original Engagement Letter to one that is fair and reasonable in light of the unique circumstances surrounding the terms of sales of the Debtors' Steering and Interiors Divisions.

17.     Because of the uncertainty regarding the terms of any sales, which sales would require the same commitment and expertise on the part of Rothschild to accomplish a successful divestiture, the Debtors and Rothschild have agreed that the fee set forth for Rothschild in the Original Engagement Letter may not be equitable because it may not (i) competitively compensate Rothschild for the time and expertise that would be required of Rothschild and (ii) adequately incentivize Rothschild appropriately in connection with such a transaction.  The terms of the Supplemental Engagement Letter were agreed upon by the Debtors and Rothschild to ensure that Rothschild is appropriately compensated for such M&A Transactions.  The Minimum M&A Fee is structured as a floor on the compensation payable to Rothschild in connection with an M&A Transaction of the Steering Division, Interior Division, or any part thereof.  If the Steering Division, the Interior Division, and/or any of their respective business lines are sold for amounts exceeding the value implied by the Minimum M&A Fee, the fee payable to Rothschild will not be affected by the amendment provided in the Supplemental Engagement Letter and the fee will be calculated pursuant to the terms of the Original Engagement Letter.  As a result of the circumstances surrounding the potential sales of divisions within the Debtors' chapter 11 cases, the Debtors submit that the relief sought hereby is reasonable.

Applicable Fee Arrangement

18.     Rothschild and the Debtors have agreed upon the following Minimum M&A Fee structure for any M&A Transaction involving the Debtors' Steering Division (which includes the Debtors' Steering Systems and Halfshafts businesses).  The Minimum M&A Fee for such services will not be less than:

    (a)    $5 million, if such M&A Transaction involves both the Debtors' Steering Systems and Halfshafts businesses and is consummated in a single transaction;

    (b)    $3.50 million, if such M&A Transaction involves only the Debtors' Steering Systems business; or

    (c)    $1.50 million, if such M&A Transaction involves only the Debtors' Halfshafts business.

19.    Moreover, Rothschild and the Debtors have agreed upon the following Minimum M&A Fee structure for any M&A Transaction involving the Debtors' Interior Division (which includes the Debtors' Instrument Panels and Consoles, Cockpits, Door Modules, and Latching Systems businesses). The applicable compensation for such services will not be less than:

    (a)    $4 million, if such M&A Transaction involves all four of the Debtors' Interior Division business lines in a single transaction;

    (b)    $3 million, if such M&A Transaction involves any three of the Debtors' Interior Division business lines in a single transaction;

    (c)    $2 million, if such M&A Transaction involves any two of the Debtors' Interior Division business lines in a single transaction;

    (d)    $1.25 million, if such M&A Transaction involves any one of the Debtors' Interior Division business lines in a single transaction.

20.    The Debtors and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed in connection with the sale of the Debtors' Steering Division and/or Interior Division

may be variable, and the Debtors and Rothschild have taken such factors into account in setting the Minimum M&A Fee in connection with such sale.

21. In the event that the Debtors decide not to complete an M&A Transaction for the Steering Division or Interior Division, or any portion thereof, as a result of an agreement with the Debtors' stakeholders on a plan of reorganization, the Debtors and Rothschild will agree in good faith at that time on a fee commensurate with Rothschild's services in connection with the contemplated M&A Transactions for the Debtors' Steering Division and Interior Division.

22. In addition to any Minimum M&A Fee payable pursuant to the Supplemental Engagement Letter, Rothschild will only bill for its actual expenses incurred on the Debtors' behalf while performing any services relating to an M&A Transaction involving the Debtors' Steering Division and/or Interior Division. Rothschild will not charge any markup, overhead, profit, or other fees on these reimbursable expenses.

23. Rothschild will continue to apply to this Court for allowance of compensation and reimbursement of expenses related to any services performed by Rothschild in connection with an M&A Transaction for the Debtors' Steering and Interior Divisions in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules for the Southern District of New York, orders of this Court, and guidelines established by the U.S. Trustee.

24. The Debtors and Rothschild believe that the Minimum M&A Fee is reasonable and is consistent with the market for comparable mergers and acquisitions services performed by financial advisors and investment bankers for companies both in and outside chapter 11.

Other Terms And Provisions

25. All other terms and provisions of the original letter agreement, dated as of October 8, 2005, between the Debtors and Rothschild attached as <u>Exhibit 1</u> to the Resnick Declaration (the "Original Engagement Letter"), including any credits, and the Retention Order are hereby incorporated by reference into this Supplemental Retention Application and remain in full force and effect. For avoidance of doubt, the Debtors and Rothschild agree that, among other terms, <u>Exhibit C</u> to the Original Engagement Letter, which provides for the indemnification by the Debtors of Rothschild and certain related persons and entities will remain in full force and effect and shall be deemed to cover Rothschild's engagement as amended hereby.

26. Subject to this Court's approval of this Supplemental Retention Application, (a) Rothschild's fees and expenses will be subject to (i) the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and the Retention Order, (ii) any applicable fee and expense guideline orders, and (iii) any requirements governing interim and final fee applications, and (b) the Debtors will pay all fees under the Supplemental Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

Conclusion

27. For the foregoing reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors and their estates and creditors and should be approved.

Notice

28. Notice of this Supplemental Retention Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

29. Because the legal points and authorities upon which this Supplemental Retention Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the amendment of the fee structure for any M&A Transaction involving the Debtors' Steering and Interior Divisions to reflect the arrangement outlined in the Supplemental Engagement Letter, <u>nunc</u> <u>pro</u> <u>tunc</u> to July 19, 2006 and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         November 28, 2006

                                DELPHI CORPORATION, on behalf of itself and certain of its subsidiaries and affiliates, as Debtors and Debtors-in-possession

                                By:   /s/ John D. Sheehan_____
                                      Name: John D. Sheehan
                                      Title:  Vice President and Chief Restructuring Officer