Hearing date: November 30, 2006
10:00 a.m. Eastern

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

In Re:

DELPHI CORPORATION, et al.,

Case No. 05-44481 (RDD)

Debtors.

------------------------------------------------------------------ x

# REPLY OF USW IN SUPPORT OF MOTION TO COMPEL DEBTORS TO SUBMIT INDIVIDUAL
# EMPLOYEE MATTER TO IMPARTIAL MEDICAL AUTHORITY

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"), successor by merger to the United Steelworkers of America, and its Local Union No. 87L submits this Reply to the Debtors' Response to Motion of USW to Compel Debtors to Submit Individual Employee Matter to Impartial Medical Authority dated November 22, 2006 ("Debtors' Response").

## Exhaustion of Remedies

1. Terry Detrick seeks to return to work from disability retirement. The USW has submitted whatever medical documents he possesses to Delphi, which has concluded that these documents do not demonstrate he is able to return to work.

2. Delphi and the USW negotiated a straightforward process for resolving disputes about whether an employee such as Detrick is able to return to work where, as here, Delphi believes the medical evidence is insufficient to support a request to return.

3. That process is to select an independent medical specialist to examine the individual and make a binding determination.

4. According to the Debtors' Response, Delphi has the right to forestall that process before it even begins simply by declaring that the individual has not presented sufficient evidence of ability to return to work.

5. It is Delphi, and not the USW, which ignores the internal dispute resolution mechanism set forth in the supplement to the collective bargaining agreement; the contention is that, if the company decides that an employee has not presented sufficient evidence to support a request to return to work, the Union's sole recourse is to file an ERISA lawsuit in federal court.

6. Delphi's principal defense to such a suit would be that the Union has failed to exhaust internal remedies. Debtors' Response at para. 32. This is perfectly circular, and simply wrong. What the USW and Detrick seek to do is precisely to invoke and exhaust the internal remedies.

7. Delphi also suggests that the USW could bring a lawsuit in federal court under Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185. Here again the Debtors defense is that the Union should have first exhausted the internal remedies. Debtors' Response at para. 39.

8. Perhaps to avoid the conclusion that this dispute should be sent to the next step of the internal process, Delphi asserts that it has not received enough information to determine whether or not Detrick has recovered sufficiently to return to work. Debtors' Response at para. 20. Even assuming that Delphi has the right to thwart the internal review process by simply asserting a lack of sufficient information, the fact is the Delphi has made a

determination "on the merits" in Detrick's case. Exhibit D to the Debtors' Response is a letter from the Division Medical Director, Thomas Pace, M.D., to the Union stating: "After thorough examination of reports and records submitted, I find no current documentation to substantiate a reversal of the Total and Permanent Disability that was approved in June, 1983." Thus, Delphi has rejected Detrick's request to return to work, both at the plant level and at the level of the Divisional Medical Director. The next step is independent medical review.

9.    Delphi also asserts that the collective bargaining agreement (or, more precisely, the Supplemental Agreement) gives it the right to demand all of the information set forth in Steve Gebbia's letter to USW in-house attorney Mel Stein dated February 22, 2006, which is Exhibit E to the Debtors' Response.

10.    That letter goes far beyond the language of the CBA, which simply says the medical evidence "will include, among other relevant information, a narrative report that details what has improved and why the condition under which such retiree was determined to be T&PD no longer exists or no longer disables the retiree. Documentation will include appropriate lab reports and/or test results." Appendix D Section 3(h)(1).

11.    Gebbia's letter requests a lot more information, including a complete list of all physicians who have treated Detrick over the course of more than twenty years, plus each physician's treatment plan, and all therapy dates (plus progress summaries), plus a complete list of all prescriptions taken (in detail) for the same period, and all hospitalizations (including dates, diagnoses, admitting physicians, and admitting diagnoses), copies of all psychological tests, "detailed" copies of all psychiatric treatment plans, and a complete copy of his medical file from his current physician. One can imagine requesting such an enormous amount of documentation in connection with a personal injury lawsuit or something similar, but nothing in the CBA gives

Delphi the right to demand it from an individual seeking to return to work from disability retirement - or, to be more precise, to refuse to permit the individual to proceed to independent medical examination.

12. In any event, Detrick's physician did provide a "letter of narrative support", as Delphi's Tonya Rutledge, M.D., acknowledged in her letter to the Divisional Medical Director. That letter is Exhibit C to the Debtors' Response. The physician submitted her entire file, which documented all psychiatric sessions held, the physician's observations, and progress notes; these are the data for the conclusions set forth in her letters supporting Detrick's return to work.

13. Section 3(h)(1) does refer to "appropriate" lab reports or test results but does not state that the retiree must go to a lab or undergo tests. Many conditions simply do not involve lab tests, including the kind of psychological condition which led Detrick to take a T&PD retirement in 1983. If there are no lab reports or test results, clearly Delphi cannot require that such materials be submitted. Perhaps Delphi might believe that Detrick should obtain some unspecified type of testing or lab work, and perhaps an independent medical specialist might agree with the company. Or perhaps not.

14. It is important to review the actual language of the independent medical review provisions of the agreement. Section 3(i)(5) describes the procedure, including submission of information by the Union Benefits Representative, to be reviewed by the company, and the Union and the company agreeing to an exam with an independent specialist physician. The following language is the key: "However, in <u>all</u> cases where the retiree has been retired for five or more years, the retiree <u>will</u> be sent to an impartial specialist approved by the Delphi EB Staff and the Union Benefit Representative." (Emphasis added.) It is difficult to

imagine language which is clearer or more definitive. In <u>all</u> cases the retiree <u>will</u> be sent to independent medical examination. This is the contract provision that the USW invokes here. There is no way to read this provision to permit Delphi to foreclose the independent medical review step by declaring that the retiree has not presented sufficient information, or to grant the company has the nearly unfettered discretion to decide whether the information is in the proper form or includes all of the testing the company might prefer.

15. For that matter, the provision relied upon by Delphi - that the retiree "will provide medical evidence to the Plant Medical Director, satisfactory to the Corporation", Section 3(i)(1), simply precludes the <u>Union</u> from skipping the next steps in the internal review procedure. Thus, the fact that the retiree or the Union might think that the medical evidence is sufficient to support a return to work is not enough, and the Union cannot simply bring a grievance or a lawsuit to force Delphi to take the retiree back. Instead, the retiree must be sent to the independent medical specialist.

**ERISA or LMRA Litigation**

16. As noted above, Delphi contends that the USW is obligated to bring a separate piece of litigation against the Debtors under ERISA or under Section 301 of the LMRA. (We will address the Debtors' contention that the Union must present its request in the form of an adversary proceeding below.)

17. Delphi correctly asserts that, before bringing an action for benefits, an ERISA plaintiff must first attempt to exhaust the employee benefit plan's internal review procedures. Debtors' Response at paras. 30-31. As the Debtors state, the purpose of this requirement is to ensure that a benefit plan participant has adequate notice of a benefit claim

denial and reasonable opportunity for "full and fair review" by the plan's fiduciaries. Debtors' Response at para. 29, citing ERISA Section 503, 29 U.S.C. Section 1133.

18. In any event, ERISA does not govern this action. Neither the USW nor Detrick is seeking benefits from an ERISA-regulated employee benefit plan. Neither the USW nor Detrick is asking this Court to direct any ERISA-regulated employee benefit plan to do anything.

19. Indeed, Detrick is not seeking benefits at all. He is seeking reinstatement, which is an employment decision which ERISA simply does not address. If he is successful, he will stop receiving T&PD benefits.

20. Delphi is closer to the mark with its Section 301 arguments. Section 301 does give a federal district court jurisdiction over a union's suit to enforce a collective bargaining agreement. However, it is not necessary to invoke a federal district court's jurisdiction under Section 301 because this Court already possesses the authority to direct the Debtors to obey Section 1113(f) of the Bankruptcy Code, as discussed below. Moreover, as noted above, Delphi would simply contend that the USW and Detrick have failed to exhaust internal remedies. As discussed above, if Delphi can unilaterally decide exactly what evidence must be submitted, in what form, for the dispute to advance in the administrative review process, then the final step of an independent medical review is an illusory promise and the language is rendered nugatory. Contracts cannot be interpreted in such a manner.

21. Delphi contends that its decision not to permit the USW and Detrick to bring the dispute to the next step in the internal review process is subject to the "arbitrary and capricious" standard. Debtors' Response at para. 38.

22. The "arbitrary and capricious" standard does <u>not</u> apply unless the relevant plan documents expressly grant the fiduciaries of the benefit plan complete discretion to interpret the plan terms. <u>Firestone Tire & Rubber v. Bruch</u>, 489 U.S. 101, 112-113 (1989)  The Debtors have not presented any evidence of such a provision in the documents governing the Pension Plan.

23. Delphi has not cited a single case for the proposition that the "arbitrary and capricious" standard can be used to block internal appeals. To the contrary, the cases cited by the Debtors - like all exhaustion cases - apply to judicial review of a benefit claim denial <u>after</u> the internal appeals process has been exhausted. Again, the USW simply seeks to move this matter to the next step of the internal review process. The Union does not seek any ruling from this Court on the merits - that is, on whether Delphi's view of whether Detrick's is medically able to return to work is correct or incorrect[1].

24. Moreover, the arbitrary and capricious standard of review applies to fiduciaries of employee benefit plans when they make determinations about the terms of those employee benefit plans, as all of the cases cited in the Debtors' Response indicate. Delphi has not identified the benefit plan fiduciary whose decision would be entitled to judicial deference.

---

[1] If the USW were, in fact, seeking a ruling on the merits - that is, that Delphi should be directed to put Detrick back to work - then the company would probably be precluded from contending that the suit should be dismissed for lack of exhaustion because it is Delphi which has prevented Detrick and the Union from following the internal appeals/review procedure. <u>Nichols v. Prudential Insur. Co. of America</u>, 406 F.3d 98, 101 (2nd Cir. 2005)(plan's failure to provide response to claim in manner required by plan's internal review procedure (a) deprives plan of failure to exhaust defense and (b) subjects plan's denial of benefit claim to <u>de novo</u> judicial review rather than arbitrary and capricious); <u>Lee v. California Butchers' Pension Trust Fund</u>, 154 F. 3d 1075, 1080 (9th Cir. 1998)("The plan itself thwarted proper exhaustion of procedures for review by the trustees, so [the plaintiff] was relieved from following them.")  See also  <u>Paese v. Hartford Life & Accident Insur. Co.</u>, 449 F.3d 445 (2nd Cir. 2006) (exhaustion not required if it would be futile).

25. In any event, the central problem with Delphi's argument is that the USW is not bringing an action against an employee benefit plan for payment of a benefit.

26. As for the contention that permitting Detrick to be examined by an independent medical authority would "open the floodgates to any number of suits . . . disagreeing with a Company decision under the HRP," Debtors' Response at para. 38, there are two responses: (a) the HRP provides a mechanism other than litigation for disagreeing with a Company decision under the HRP, and the USW is simply seeking to enforce that mechanism and (b) if Delphi seriously contends that ERISA should govern this dispute then it must accept that ERISA expressly authorizes people to bring lawsuits disagreeing with company decisions, 29 U.S.C. Section 1132(a). In fact, permitting individuals to sue to overturn benefits decisions was one of the main reasons Congress adopted ERISA in 1974. See <u>Massachusetts Mutual Life Insur. Co v. Russell</u>, 473 U.S. 134, 146 ( )(ERISA created "panoply of remedial devides" for people seeking benefits).

**<u>Adversary Proceeding</u>**

27. Delphi incorrectly contends that the USW's motion is procedurally improper because it was not brought as an adversary proceeding accompanied by a separate complaint. Debtors' Response at paras. 25-27.

28. The Debtors' Response asserts that an adversary proceeding is the only appropriate procedure for the USW to use in order to "invoke the Bankruptcy Court's jurisdiction", Debtors' Response at para. 24, but this Court already has jurisdiction of this matter.

29. The Debtors' obligations in connection with the USW collective bargaining agreement are governed by Section 1113 of the Bankruptcy Code. Section 1113(f) provides that a debtor is obligated to honor the terms of a collective bargaining agreement unless

and until the Court has entered an order permitting the debtor to reject that agreement or to modify it on an interim basis pursuant to Section 1113(e). As discussed in the USW's Motion, the Court of Appeals in In re Ionosphere Clubs, Inc., 922 F.2d 984, 992 (2nd Cir. 1990) squarely held that Section 1113(f) requires a debtor to honor the neutral dispute resolution mechanism in collective bargaining agreement. That is what the USW seeks here[2]. This court has ample authority to grant the request relief under both Section 1113 and Section 105.

30.  None of the cases cited in the Debtors' Response is to the contrary. In In re: Garnett, 47 B.R. 170 (Bankr. E.D. N.Y. 1985), a Chapter 7 Debtor sought to extend the automatic stay provisions of Section 362 to enjoin a separate state court action brought by creditors against non-parties. The court simply did not have jurisdiction over non-parties without an adversary proceeding. The same is true of In re: Dahlquist, 33 B.R. 101 (Bankr. S. D. 1983)(debtors sought injunction to stay separate state court proceedings against non-debtor).

31.  In re: Emmerling, 223 B.R. 860 (B.A.P. 2nd Cir. 1997) is also inapposite. Although the undersigned readily concede fallibility, presumably the following statement does not apply to any party to these proceedings: "Both parties' conduct of proceedings in the Bankruptcy Court leading ultimately to the motion to reopen constituted a virtually unbroken chain of violations of applicable rules, mistakes and bad judgment." 223 B.R. at 860. The underlying issue in Emmerling was a brawl outside the Country Roads Saloon and Dance Hall in

---

[2] Before Ionosphere it was not entirely clear whether arbitration of a union grievance would violate the automatic stay provisions of Section 362 of the Code. The Second Circuit held that Section 1113(f) precludes application of the automatic stay in this context. 922 F.2d at 992-993 (and cases cited therein). We note that the Debtors have not suggested that a motion for relief from the automatic stay would be appropriate here; presumably that is because the law is so clear that the internal dispute resolution mechanism in a collective bargaining agreement remains in effect in Chapter 11 cases - that debtors must agree to arbitrate disputes rather than forcing bankruptcy courts to hear those disputes on the merits.

upstate New York and the extent to which a default judgment could be used to obtain damages from one of the combatants, who had filed a Chapter 7 petition at some point in the several-year feud. Among the many procedural shortcomings was one party's failure to append a complaint to a summons in connection with an adversary proceeding. Even if <u>Emmerling</u>'s twisted tale of alcohol-fueled woe were somehow relevant to the USW's Motion, the fact is that the B.A.P. remanded that case with instructions to permit the offending party "to serve and file a proper complaint . . . with relation back to the original summons." 223 B.R. at 870.

32.    In any event, Delphi has already presented its contention that, were the USW to bring an adversary proceeding, the underlying complaint would have to be dismissed because the Union failed to exhaust the internal review procedures - a contention refuted above. It would be an unnecessary expenses of the parties' (and the Court's) time and resources to require an adversary proceeding to arrive at precisely the same issue presented by the Motion - that is, whether Delphi can unilaterally block an independent medical review in Detrick's case by asserting that he has not provided enough evidence to satisfy the company.

33.    Delphi's asserts that if Detrick is allowed to return to work he might then retire and this would cost the pension plan a lot of money. Debtors' Response at paras. 20, 22. This underscores the importance of having an <u>independent</u> review of Detrick's medical condition. The company's opposition to Detrick's request appears to stem as much from a concern that he might then retire and receive enhanced pension benefits as from a thoroughly-considered determination that he is unfit to return.

34.    This concern simply does not relieve Delphi of its procedural obligations under the collective bargaining agreement.

35. In any event, this puts the cart before the horse. What is at stake here is the contractual dispute-resolution mechanism, not the substantive outcome.

36. If the independent medical authority examines Detrick and decides that he is, in fact, able to return to work, and if Delphi can demonstrate that putting him back on the job would impede reorganization (which seems very unlikely), the company can make that argument at that time. Again, this motion seeks to enforce the internal dispute resolution mechanism.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____/s/_____
Lowell Peterson (LP 5405)
1350 Broadway, Suite 501
New York, New York 10018
(212) 239-4999

David R. Jury, Assistant General Counsel
Melvin Stein, Assistant General Counsel
United Steelworkers
Five Gateway Center, Room 807
Pittsburgh, Pennsylvania 15222
(412) 562-2545
djury@ usw.org
mstein@usw.org

Attorneys for United Steelworkers

Dated:    November 29, 2006

81308