BURR & FORMAN LLP                          Hearing Date at Time:  January 11, 2007 at 10:00 a.m.
420 North 20th Street
Suite 3100
Birmingham, Alabama 35203
(205) 251-3000
Michael Leo Hall

Attorneys for Creditor
WACHOVIA BANK, NATIONAL ASSOCIATION


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------
                                   :
    In re                          :         Chapter 11
                                   :
DELPHI CORPORATION et al., [1]     :         Case No. 05-44481 (RDD)
                                   :
    Debtors.                       :         (Jointly Administered)
--------------------------------------------

### WACHOVIA BANK, NATIONAL ASSOCIATION'S MOTION PURSUANT TO 11 U.S.C. § 362 FOR RELIEF FROM THE AUTOMATIC STAY, IF APPLICABLE, TO PROCEED WITH LITIGATION AGAINST LARRY GRAVES, A NON-DEBTOR DELPHI EMPLOYEE, IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI

**COMES NOW** Wachovia Bank, National Association, successor by merger to

SouthTrust Bank ("Wachovia"), and, moves (this "Motion") the Court for relief from the

automatic stay, if applicable, to proceed with a Mississippi state court lawsuit pending against

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources, LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Services Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc, Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

Larry Graves ("Graves"), a non-debtor employee of Delphi Automotive Systems, LLC, and former employee of Delphi Corporation.  It is Wachovia's position that the automatic stay does not apply to this lawsuit, but, due to prior proceedings in the state court action, Wachovia files this Motion out of an abundance of caution.  Wachovia does not seek stay relief to pursue its pending claims, or otherwise take any action, against bankrupt Delphi entities.  In support of its Motion, Wachovia shows the Court as follows:

<u>**JURISDICTIONAL INFORMATION**</u>

1.    On October 8, 2005 (the "Petition Date"), Delphi Corporation, and certain of its subsidiaries (the "Subsidiaries"), as debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. On the Petition Date, this Court entered an order directing the procedural consolidation and joint administration of the Debtors' Chapter 11 cases (the "Bankruptcy Case").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' Chapter 11 cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is Bankruptcy Code § 362.

<u>**RELIEF REQUESTED**</u>

3.    Wachovia requests the entry of an order (i) granting Wachovia relief from the automatic stay to proceed with state court litigation pending against Larry Graves, a non-debtor, employee of a bankrupt Delphi entity who is individually liable for the tortious conduct alleged, or (ii) determining that § 362 does not stay the pending lawsuit.  It is Wachovia's position that the stay does not apply; however, because the state court judge has held that the automatic stay

2

barred the commencement of litigation against Delphi employees sought to be added in the case, Wachovia files this Motion in the abundance of caution. Wachovia does not seek relief from stay to proceed with litigation against any of the Debtors.

### SUMMARY OF FACTS AND PRIOR PROCEEDINGS

4.    On April 14, 2003, Wachovia filed a complaint (the "Original Complaint") against Charles Doty ("Doty"), against Lextron Corporation and Lextron Automotive, LLC ("Lextron," and together with Doty, the "Lextron Defendants"), and against Delphi Corporation, Delphi Automotive Systems USA, LLC, Delphi Automotive Systems, LLC, Delphi Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and Delphi Safety and Interior Systems (collectively, "Delphi") in the Circuit Court of the Second Judicial District of Hinds County, Mississippi (the "Mississippi State Court"), commencing Civil Action No. 2003-14 (the "State Court Action"). A true and correct copy of the Original Complaint is attached hereto as **Exhibit A**.

5.    The Original Complaint asserted a cause of action against the Lextron Defendants for non-payment of loans. The Original Complaint alleged causes of action against Delphi for misrepresentation, suppression, conspiracy, breach of covenants, tortious interference with business relationship, breach of duty of good faith and fair dealing, negligence and promissory estoppel, alleging that Delphi requested that Wachovia loan additional funds to Lextron and forbear from collecting sums owed and that, in order to induce said financial accommodations, misrepresented to Wachovia that Delphi would maintain and support Lextron as a supplier.

6.    On May 23, 2003, the Lextron Defendants filed an answer, cross-claim and motion to implead a third-party, and on June 25, 2003 Delphi filed its answer to the Original Complaint.

3

7.     Depositions of Delphi employees, including Graves, were noticed for the week of September 24, 2003. Graves' deposition was taken on the 24th and 25th of September 2003, the deposition of Greg Naylor was taken on the 25th and 26th of September 2003, and the deposition of Martha Everett was begun on September 26, 2003, but was ultimately adjourned to a later agreed upon date. When the depositions were scheduled to resume, Delphi changed counsel and requested additional time for counsel to familiarize itself with the State Court Action. Delphi then removed the case to the United States District Court for the Southern District of Mississippi (the "Mississippi District Court"), Case No. 3:03cv1341WS, on December 12, 2003.

8.     Wachovia filed a motion to remand the civil action to the Mississippi State Court on January 9, 2004, and, thereafter, Delphi moved for an order staying the case pending a ruling on the remand motion. Granting Delphi's motion to stay, the Mississippi District Court entered orders on January 29, 2004, and February 2, 2004, respectively, staying the case and permitting only remand-related discovery to proceed.

9.     On March 28, 2005, the Mississippi District Court entered an order remanding the action to the Circuit Court, which order was entered on the docket of the Mississippi State Court on May 11, 2005. For unknown reasons Wachovia did not receive notice of the remand until it was discovered in a check of the courthouse records in June of 2005. Depositions resumed in the Summer of 2005, and, in late August 2005, Wachovia was able to complete the deposition of Martha Everett and take the deposition of Sidney Johnson.

10.     At a hearing held on September 16, 2005, Wachovia sought leave to file its first amended complaint (the "First Amended Complaint") to add Graves as a defendant based on facts learned in the course of discovery.

11.     The Original Complaint alleges that Graves made certain misrepresentations to Wachovia, and the First Amended Complaint amends the Original Complaint to further allege that Graves personally participated in and is liable for the negligent, reckless, wanton or intentional tortious acts and omissions set forth with respect to Delphi.  The Mississippi State Court orally granted Wachovia's motion for leave to file the First Amended Complaint in open court, but no order effectuating the motion was entered on the Court's docket.  A true and correct copy of the First Amended Complaint is attached hereto as **Exhibit B**.

12.     Relying on the Court's oral ruling, Wachovia filed the First Amended Complaint on December 1, 2005, and, on December 5, 2005, Graves was served by certified mail.

13.     On September 23, 2005, Wachovia filed a motion for leave to file a second amended complaint (the "Second Amended Complaint") to add Delphi employees Jonathon R. Stegner, R. David Nelson, Martha Everett, Sidney Johnson and Greg Naylor as defendants (the "Other Delphi Employees"), based on additional facts learned in the course of discovery.  The Second Amended Complaint alleged that the Other Delphi Employees personally participated in and were liable for the alleged negligent, reckless, wanton, or intentional tortious conduct set forth with respect to Delphi in the Original Complaint.

14.     On October 8, 2006 the Debtors commenced the Bankruptcy Case.  Neither Graves nor any of the Other Delphi Employees is a debtor in the Bankruptcy Case.

15.     On November 22, 2005, Wachovia moved for a hearing on its request for permission to file the Second Amended Complaint and also filed a motion to sever Delphi, against whom litigation had been stayed pursuant to § 362 of the Bankruptcy Code.

16.     On December 12, 2005, Delphi filed its consolidated response in opposition to Wachovia's motion for leave to file the Second Amended Complaint and motion to sever.  In its

response Delphi asserted, among other arguments, that the automatic stay imposed by the Bankruptcy Code barred the commencement and continuation of proceedings against the Other Delphi Employees.

17.    Delphi also filed a motion for clarification regarding Wachovia's First Amended Complaint on December 16, 2005, contending that the Mississippi State Court did not grant Wachovia leave to file the First Amended Complaint and seeking to have the First Amended Complaint stricken.

18.    Wachovia filed its reply to Delphi's response to the motion to allow the Second Amended Complaint and motion to sever on December 20, 2005, asserting that the automatic stay does not apply to the non-debtor employees of a bankrupt entity; that leave to amend should be freely given when justice so requires; that any delay in filing its motions for leave to file the First and Second Amended Complaints was caused by Delphi's improvident removal of the litigation to the Mississippi District Court; and that there was no conceivable prejudice to the added defendants or to Delphi.

19.    On December 28, 2005, Wachovia filed its response to the motion for clarification, stating that the request for leave to file its First Amended Complaint was granted in open court.  Delphi filed a reply to Wachovia's response on January 5, 2006.

20.    The Mississippi State Court scheduled a hearing on the pending motions for March 31, 2006.

21.    On April 11, 2006, the Mississippi State Court entered an order (the "April 11th Order") denying Wachovia's motion for leave to file its Second Amended Complaint, finding that the facts alleged by Wachovia not indicate any basis for holding the Other Delphi Employees individually liable, since the acts alleged were performed by them in their

representative capacities and in the course and scope of their employment with Delphi; that the automatic stay afforded Delphi extends to the Other Delphi Employees; and that SouthTrust's request for leave to file its Second Amended Complaint was untimely and would be prejudicial if granted.  A true and correct copy of the April 11th Order is attached hereto as **Exhibit C**.

22.    Also on April 11, 2006, the Mississippi State Court entered an order severing the Lextron Defendants.

23.    On May 2, 2006 Wachovia filed a petition for interlocutory appeal by permission with the Mississippi Supreme Court, which petition was denied on June 8, 2006.

24.    On August 23, 2006, the Mississippi State Court entered an order (the "August 23rd Order") on the motion for clarification, finding that the Mississippi State Court had granted Wachovia's motion for leave to file the First Amended Complaint in open court but since no order effectuating the ruling had been entered, the oral ruling on September 16, 2005 had been of no force and effect.  The August 23rd Order provides that, in the interests of justice and judicial economy, the First Amended Complaint was not due to be stricken and is effective as of the date of the August 23rd Order.  However, the August 23rd Order further provides that "in the event the [Mississippi State] Court subsequently determines that any litigation in this case against Graves, individually, is barred by the stay in Delphi's bankruptcy proceedings, the Court will consider, upon motion by Graves, assessing plaintiff the reasonable expenses, including attorney's fees incurred by him in defending the action brought by plaintiff's amended complaint."  A true and correct copy of the August 23rd Order is attached hereto as **Exhibit D**.

25.    On September 25, 2006, Graves filed a motion to dismiss (the "Motion to Dismiss") the First Amended Complaint for lack of personal jurisdiction, insufficiency of service

of process, forum non conveniens, as well as on the grounds that the automatic stay warrants

dismissal of the pending action.  The Motion to Dismiss is set for hearing on December 1, 2006.

26.    Wachovia has filed a response to the Motion to Dismiss in the State Court Action,

requesting that the Mississippi Court refrain from ruling on the Motion to Dismiss until such

time as the Court rules on this Motion; however, so as not to prejudice its rights in the State

Court Action, Wachovia has also responded to each of the arguments set forth in the Motion to

Dismiss.

27.    Ultimately, though the Mississippi State Court has not concluded that the

automatic stay bars litigation of Wachovia's claims against Graves, in light of the Mississippi

State Court's April 11th Order finding that the automatic stay extended to the Other Delphi

Employees and the August 23rd Order threatening sanctions if Wachovia is found to be in

violation of the stay in pursuing its lawsuit against Graves, Wachovia moves the Court for the

entry of an order holding that the automatic stay does not apply or, alternatively, granting

Wachovia stay relief to proceed against Graves.

## LEGAL ARGUMENT

**II.    The automatic stay imposed by the Bankruptcy Code does not extend to non-debtor
employees of a bankrupt entity.**

28.    Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy

petition operates as a stay of "the commencement or continuation, including the issuance or

employment of process, of a judicial, administrative, or other action or proceeding *against the*

*debtor* that was or could have been commenced before the commencement of the case under this

title, or to recover a claim *against the debtor* that arose before the commencement of the case

under this title."  11 U.S.C. § 362(a)(1) (emphasis added).   In addition, the stay enjoins "any act

to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

29.    The Second Circuit and other federal courts of appeals have routinely held that the automatic stay does not extend to non-debtor, co-defendants of a bankrupt entity.  *See, e.g., Teachers Insurance and Annuity Association of America v. Butler*, 803 F.2d 61, 65 (2nd Cir. 1986); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1329-30 (10th Cir. 1984); *Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 126-27 (4th Cir. 1983); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196-97 (6th Cir. 1983); *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (5th Cir. 1983); *Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 4-5 (1st Cir.).

30.    Although the Second Circuit has recognized that a bankruptcy court, vested with certain equitable powers under § 105 of the Bankruptcy Code, may under certain circumstances affirmatively extend the stay to non-bankrupt co-defendants, the Second Circuit has held that the stay imposed by the Bankruptcy Code does not "automatically" bar the commencement and litigation of an action against non-debtor, co-defendants.  *Teachers Insurance and Annuity Association of America v. Butler*, 803 F.2d at 65-66.

31.    Moreover, the circumstances under which bankruptcy courts have seen fit to affirmatively enjoin litigation commenced against a non-debtor, are not present in this case.  As one bankruptcy court for the Southern District of New York has stated:

> [I]n light of the 'narrow construction' courts give the scope of § 362 stays, extension of a stay to a non-debtor only 'arises where there is such identity between the debtor and non-debtor that the debtor may be said to be the real party defendant and that a judgment against the non-debtor will in effect be a judgment against the debtor…Courts in this district have stayed actions against non-debtors…only where the stayed actions would have posed a serious threat to the debtors' reorganization efforts.

*Gray v. Hirsch*, 230 B.R. 239, 242-43 (Bankr. S.D. N.Y. 1999).

32.     In this case the requisite identity of parties for extension of the automatic stay is not present.  As several Second Circuit bankruptcy courts have noted, "in situations where the codefendant is independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such."  *In re The Metal Center, Inc.*, 31 B.R. 458, 461 (Bankr. D. Conn. 1983); *see also Thomson Kernaghan & Co. v. Global Intellicom, Inc*., 2000 WL 640653 (S.D. N.Y. 2000).

33.     It is a basic tenet of tort law that a person is individually liable for the tortious acts committed by him.  Accordingly, "directors, officers, and agents may be liable for torts [of a corporation] where they either participated in the act, authorized it or directed it, gave consent to an act, or even acquiesced in a tortious act that they knew of or 'should have known of' in the exercise of reasonable care."  *Howard v. Estate of Harper ex rel. Harper,* 2006 WL 3026398, at *9 (Miss. 2006); *see also Turner v. Wilson*, 620 So.2d 545, 548-49 (Miss. 1993) (stating "the general rule is well established that when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable"); *Mississippi Printing Company, Inc. v. Maris, West & Baker, Inc*., 492 So. 2d 977 (Miss. 1986) (same).  The fact that a principal may also be held liable for the conduct of its agent does not extinguish the individual liability of the agent.  *See, e.g., Holland v. Mayfield*, 826 So.2d 664, 670 (Miss. 1999) ("an agent who commits a tort is liable in both his representative capacity and in his individual capacity") (citing *American Fire Protection, Inc. v. Lewis*, 653 So.2d 1387, 1391 (Miss. 1995).

34.    As the Original Complaint and First Amended Complaint allege that Graves personally participated in negligent, reckless, wanton, or intentional tortious conduct, Wachovia has alleged claims giving rise to liability on the part of Graves in his individual capacity.

35.    There also can be no contention that the continuance of litigation would pose a serious threat to the Delphi's reorganization efforts.  Several Second Circuit courts hold that a potential claim for indemnification does not give rise to the level of unusual circumstances necessary for an extension of the stay.  *See e.g., Thomson Kernaghan & Co. v. Global Intellicom, Inc.*, 2000 WL 640653 (S.D. N.Y. 2000); *Gray v. Hirsch*, 230 B.R. 239, 243 (Bankr. S.D. N.Y. 1999); *In re United Health Care Org.*, 210 B.R. 228, 234 (S.D. N.Y. 1997); *In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993).  In fact, Delphi has already obtained bankruptcy court authorization to indemnify non-debtor employees, in its discretion, which further suggests that the potential for the assertion of indemnification claims by the Delphi employees will not substantially impact the administration of the bankruptcy estate.  Therefore, the affirmative stay of litigation against Graves is not warranted.

36.    In sum, the automatic stay of § 362 does not "automatically" enjoin the commencement and litigation of this action against the non-debtor employees of Delphi, and the issuance of an injunction staying litigation of this action against Graves is not warranted in this case, as Graves is individually liable for his own tortious acts and omissions and continuation of the State Court Action will not threaten Delphi's reorganization efforts.

**II.    Even if the automatic stay is held to apply or if the Court determines that, upon a motion by the Debtors, the stay would be due to be affirmatively extended, cause exists to lift the stay to allow the State Court Action to proceed against Graves.**

37.    Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under

sub-section (a) of this section, such as by terminating, annulling, modifying, or conditioning such

stay…for cause." 11 U.S.C. § 362(d).

38.     As the Second Circuit Court of Appeals explains:

> Although the term "for cause" is not defined in the bankruptcy
> code, we have adopted 12 factors to consider when deciding
> whether or not to lift a stay in order that litigation may continue to
> completion in another tribunal…We consider (1) whether relief
> would result in a partial or complete resolution of the issues; (2)
> lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a
> fiduciary; (4) whether a specialized tribunal with the necessary
> expertise has been established to hear the cause of action; (5)
> whether the debtor's insurer has assumed full responsibility for [a
> defense]; (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the
> interests of other creditors; (8) whether the judgment claim arising
> from the other action is subject to equitable subordination; (9)
> whether the movant's success in the other proceeding would result
> in a judicial lien avoidable by the debtor; (10) the interests of
> judicial economy and the expeditious and economical resolution of
> litigation; (11) whether the parties are ready for trial in the other
> proceeding; and (12) impact of the stay on the parties and the
> balance of harms.

*In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

39.     "Not every one of these factors will be relevant in every case. The ultimate

determination whether to lift a stay depends upon the facts underlying a given motion." *Id*.

40.     In the instant case, the respective interests of the parties weigh in favor of

granting relief from the stay, if applicable. In particular, the facts that support the assertion that

the stay does not apply equally support the proposition that the stay is due to be lifted for cause.

41.     The defendant is a non-debtor, individually liable for the tortious acts and

omissions committed by him, regardless of whether said conduct was within the scope of his

employment. Wachovia does not seek the entry of a judgment against Delphi but only the entry

of a judgment against Graves. Wachovia does not intend, nor would Wachovia be entitled to

collect a judgment rendered against Graves from Delphi.  To the extent Wachovia has a valid claim against the non-debtor, Graves, Wachovia should not be precluded from recovering that claim.  The litigation of the State Court Action will not have a significant impact on the Bankruptcy Case.  If anything, a recovery against Graves might reduce the amount by which Delphi is liable to Wachovia on its proof of claim.

42.    Furthermore, because the State Court Action has been pending in the Mississippi State Court for several years, having been delayed by Delphi's removal of the State Court Action, judicial economy and the State Court Judge's familiarity with the case argue in favor of permitting litigation to go forward in the State Court.

43.    Ultimately, then, even if the stay is held to apply, or due to be affirmatively extended, cause exists to permit the State Court Action to proceed in Mississippi.

## <u>MEMORANDUM OF LAW</u>

44.    Because the legal points and authorities upon which this Motion relies are incorporated herein, MBUSI requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013(b) be deemed satisfied.

**WHEREFORE**, Wachovia requests the entry of an order (i) holding that the automatic stay does not bar prosecution of the State Court Action against Graves or (ii) holding that cause exists to terminate, annul, modify, or condition the automatic stay so as to permit Wachovia to litigate the State Court Action as against Graves.  Wachovia also requests such other and further relief as this Court deems appropriate.  Alternate proposed orders are attached as **Exhibit E** and **Exhibit F**.

Dated:  Birmingham, Alabama
        November 28, 2006

BURR & FORMAN LLP


By: /s/ Michael Leo Hall
      Michael Leo Hall (pro hac vice)
      D. Christopher Carson (pro hac vice)
      Jennifer A. Harris (pro hac vice)

420 North 20th Street
Suite 3100
Birmingham, Alabama 35203
(205) 251-3000

Attorneys for Creditor
WACHOVIA BANK, NATIONAL ASSOCIATION

BURR & FORMAN LLP

420 North 20th Street
Suite 3100
Birmingham, Alabama 35203
(205) 251-3000
Michael Leo Hall

Attorneys for Creditor
MERCEDES-BENZ U.S. INTERNATIONAL, INC.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the foregoing document by transmitting a copy by means of overnight mail, by placing same in a sealed envelope with account number affixed thereto and marked "overnight priority," addressed to the below listed parties and each of the persons listed in the "Master Service List" dated November 28, 2006, and causing same to be placed into an official depository of Federal Express located within the State of Alabama.  I further served the foregoing by electronic mail, or U.S. mail where an e-mail address was not provided, on all those persons listed in the "2002 List" dated November 28, 2006.

     Reuben V. Anderson
     Frank W. Trapp
     Michael B. Wallace
     Debra M. Brown
     Attorneys for Larry Graves
     111 East Capitol Street, Suite 600
     P.O. Box 23066
     Jackson, Mississippi 39225-3066

Dated: November 29, 2006
     Birmingham, Alabama

BURR & FORMAN LLP

By:/s/ Michael Leo Hall
Michael Leo Hall

420 North 20th Street
Suite 3100
Birmingham, Alabama 35203
(205) 251-3000

# **<u>EXHIBIT A</u>**

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI

*FILED*

APR 1 4 2003

BARBARA DUNN, CIRCUIT CLERK
BY_____ D.C.

SOUTHTRUST BANK, a corporation        )
                                      )
              Plaintiff,              )
                                      )
v.                                    )
                                      )
LEXTRON CORPORATION, a                )
corporation; CHARLES DOTY, an         )
individual; LEXTRON AUTOMOTIVE,       )
LLC, a limited liability company;     )
DELPHI CORPORATION, a                 )
corporation; DELPHI AUTOMOTIVE        )
SYSTEMS USA, LLC, a limited           )        CIVIL ACTION NO. *2003 - 14*
liability company; DELPHI             )
AUTOMOTIVE SYSTEMS, LLC, a            )
limited liability company; DELPHI     )
PACKARD,  DELPHI PACKARD              )
ELECTRIC SYSTEMS, DELPHI              )
ENERGY & CHASSIS SYSTEMS, and         )
DELPHI SAFETY AND INTERIOR            )
SYSTEMS, divisions, subsidiaries or
affiliates of defendant, Delphi
Corporation,

              Defendants.

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW plaintiff, SouthTrust Bank, and for its Complaint against defendants

Charles Doty. Lextron Corporation, Lextron Automotive, LLC. Delphi Corporation.

Delphi Automotive Systems USA, LLC, Delphi Automotive Systems, LLC, Delphi

Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and

Delphi Safety and Interior Systems (collectively, the "Defendants"), states the following:

## I. PARTIES

1.      Plaintiff, SouthTrust Bank, is an Alabama banking corporation, doing business in Hinds County, Mississippi ("SouthTrust").

2.      Defendant Lextron Corporation ("Lextron Corp.") is a Mississippi corporation with its principal place of business located in the City of Jackson, Hinds County, Mississippi. Lextron Corp. is named as a defendant in this action by virtue of the unpaid Loans (herein after defined) owing to SouthTrust.

3.      Defendant Charles Doty ("Doty") is an individual resident citizen of Hinds County, Mississippi.   Doty is named as a defendant in this action by virtue of his personal guarantee of the Loans.

4.      Defendant Lextron Automotive, LLC ("Lextron Automotive," and together with Lextron Corp., "Lextron") is a Mississippi limited liability company with its principal place of business located in the City of Jackson, Hinds County, Mississippi. Lextron Automotive is named as a defendant in this action by virtue of its guarantee of the Loans.

5.      Defendant Delphi Corporation ("Delphi Corp.") is a Delaware corporation doing business in Mississippi.

6.      Defendant Delphi Automotive Systems USA, LLC ("Delphi Auto USA") is a Michigan limited liability company doing business in Mississippi.

7.      Defendant Delphi Automotive, LLC ("Delphi Automotive") is a Delaware limited liability doing business in Mississippi.

8.      Defendants Delphi Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and Delphi Safety and Interior Systems are divisions,

subsidiaries or affiliates of Delphi Corp., Delphi Auto USA and/or Delphi Automotive, and are doing business in Mississippi (collectively, and together with Delphi Corp., Delphi Auto USA and Delphi Automotive, the "Delphi Defendants").

9.    The Delphi Defendants are named as defendants in this action by virtue of covenants, assurances, commitments, fraud, negligence, breaches of covenants of good faith and fair dealing, and misrepresentations made to SouthTrust regarding the Delphi Defendants' business relationship with Lextron.

## II. FACTS

10.    From time to time, SouthTrust made loans (the "Loans") to Lextron to fund its business operations, including its manufacturing and assembly business with the Delphi Defendants.  The Loans are evidenced by various promissory notes and credit agreements (the "Loan Documents").  [Copies of the Loan Documents, the Collateral Documents (hereinafter defined) and the Guaranties (hereinafter defined) are so voluminous that it is not practical to attach copies to this Complaint.  Such copies will be made available to the Court, the jury and the Defendants].

11.    The Loans are secured by various mortgages, security agreements and other collateral documents made by Lextron in favor of SouthTrust (the "Collateral Documents").

12.    Doty and Lextron Automotive unconditionally guaranteed the Loans as evidenced by various guaranties executed in favor of SouthTrust (the "Guaranties" and together with the Loan Documents and the Collateral Documents, the "Credit Documents").

13.    Defaults occurred under the Credit Documents, and all applicable cure periods have expired, Lextron and Doty failed to cure such defaults.  The total amount

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030      Pg 21 LANGSTON-SWEET-F                                    @05

Apr-14-03 03:43P                                                                 P.05

of the Loans, including all principal, interest and agreed charges, are now due and payable by Lextron and Doty.

14.    Since 1997 Lextron has been a manufacturer, assembler and supplier of certain automobile parts for one or more of the Delphi Defendants.

15.    The Delphi Defendants shipped raw materials to Lextron, creating an account payable ("Accounts Payable") owing by Lextron to the Delphi Defendants.

16.    Lextron manufactured finished products from the raw materials and shipped the finished products back to the Delphi Defendants thereby creating accounts receivable owing by the Delphi Defendants ("Accounts Receivable").

17.    The Accounts Receivable were to exceed the Accounts Payable, and the Delphi Defendants would pay the excess to Lextron; such excess represented Lextron's gross profits from this arrangement.  The Accounts Receivable were pledged to SouthTrust as security for the Loans pursuant to the terms of the Collateral Documents.

18.    The Delphi Defendants frequently turned to Lextron to perform  work that was to be completed by other suppliers who could not meet the Delphi Defendants' production demands.

19.    The business relationship between Lextron and the Delphi Defendants grew to the point that by August 2001 Lextron completed construction of a 59,000 square foot, state-of-the-art warehouse/office facility in Jackson, Mississippi to ensure that Lextron could meet the production demands of the Dephi Defendants.

20.    Lextron received over 90% of its revenue from the work it performed for the Delphi Defendants, and the Delphi Defendants were aware of this fact.

05-44481-rdd    Doc 5951    Filed 11/29/06    Entered 11/29/06 17:44:45    Main Document
04/14/03  18:56  FAX 2058717030        Pg 22 KINGSTON-SWEET-F                              ☑06

Apr-14-03 03:44P                                                                         P.06

21.    Apparently due to rapid growth in business, in November 2002, Lextron began experiencing financial difficulties and defaults occurred under the Credit Documents. Andy Raine, a Vice-President of SouthTrust ("Raine"), met with Lextron and Doty to discuss a strategy for Lextron to work through its financial difficulties and repay the Loans to SouthTrust.

22.    Due to the defaults, SouthTrust entered into a Forbearance Agreement dated   December 31, 2002 with Lextron and Doty, whereby it was agreed that SouthTrust would forbear for a period of time from exercising its remedies to collect the Loans and otherwise forbear from enforcing the Credit Documents. It was anticipated that during this period of forbearance, Lextron would work through its financial problems.

23.    Approximately one week later, in early January of 2003, Mr. Raine received a telephone call from Sidney Johnson ("Johnson"), Director of Purchasing for Delphi Automotive. Mr. Johnson asked SouthTrust to lend Lextron additional money so Lextron could pay its payroll due to employees.

24.    Mr. Raine told Mr. Johnson that SouthTrust would not loan Lextron additional money without assurances from the Delphi Defendants that they would not terminate their business relationship with Lextron, and that Lextron would have enough work from the Delphi Defendants to continue in business. Mr. Johnson gave Mr. Raine those assurances, but these promises were not true.

25.    After Mr. Johnson's phone conversation with Mr. Raine, Greg Naylor ("Naylor") and Martha "Marty" Everett ("Everett") from the Delphi Defendants, on

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030         Pg 23 LANGSTON-SWEET-F                    @07

Apr-14-03 03:44P                                                              P.07

separate occasions, discussed with Mr. Raine Lextron's financial status and Lextron's relationship with the Delphi Defendants.

26.    In those conversations, Mr. Naylor and Ms. Everett specifically stated that the Delphi Defendants would continue their business relationship with Lextron and specifically requested that SouthTrust lend additional sums of money to Lextron and to forbear taking any collection action against Lextron.

27.    In these conversations, Mr. Raine requested that the Delphi Defendants provide written confirmation of their commitment to Lextron, and on or about January 9, 2003, Larry W. Graves, North American Purchasing Director Delphi Packard Electric Systems, ("Graves") sent a memorandum to Mr. Raine via e-mail (the "Delphi Memo") with copies going to Mr. Johnson, Mr. Naylor and Ms. Everett.

28.    The Delphi Memo made reference to the conversations between representatives of SouthTrust and the Dephi Defendants, and went on to say that "I am writing you [SouthTrust] this memo to re-iterate Delphi Packard's (Delphi-P) focus to maintain Lextron corporation as a supplier. We have the resources to assist Lextron, including a reduction in our payment terms to Net 15, during its cash flow shortfall." The Delphi Memo specifically asked that "because of Delphi-P's support and interest in Lextron, Delphi-P is requesting SouthTrust Bank to continue its support of Lextron."

29.    In reliance on the assurances made in the phone conversations with Mr. Johnson, Mr. Naylor, Ms. Everett and Mr. Graves, and in reliance of the representations made in the Delphi Memo, SouthTrust loaned Lextron an additional $800,000.

05-44481-rdd    Doc 5951    Filed 11/29/06    Entered 11/29/06 17:44:45    Main Document
04/14/03  18:56  FAX 2058717030        Pg 24 of 69 LANGSTON-SWEET-F                          @08

Apr-14-03 03:44P                                                                    P.08

30.    At all times during their communications with SouthTrust, the Delphi Defendants were fully aware of Lextron's financial difficulties.

31.    Even though the Delphi Defendants had given the foregoing assurances to SouthTrust, SouthTrust learned on February 25, 2003 that the Delphi Defendants intended to terminate their business relationship with Lextron effective February 28, 2003.

32.    Representatives of Lextron, its financial consultant and SouthTrust phoned the Delphi Defendants several times to discuss the termination of Lextron as a supplier; however no one from any of the Delphi Defendants ever attempted to explain their decision to abruptly terminate Lextron.

33.    Moreover, on February 28, 2003, SouthTrust sent a letter to Delphi Corp. (the "February 28 Letter") expressing its concerns regarding the Delphi Defendants' unilateral decision to terminate the Lextron relationship, and the increase in the Loans in reliance upon the assurances given by the Delphi Defendants.

34.    No one from the Delphi Defendants responded to the February 28 Letter.

35.    Because the Delphi Defendants abruptly terminated their business relationship with Lextron, Lextron was forced to lay-off approximately 150 employees and cease all but a minor part of its manufacturing operations.

36.    After the Delphi Defendants terminated their business relationship with Lextron, SouthTrust learned that the Delphi Defendants were moving the manufacturing work previously performed by Lextron "in-house," presumably to their Delphi Hinds County, Mississippi facility.

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030        Pg 25 of 69  LANGSTON-SWEET-F                    ☑09

Apr-14-03 03:44P                                                                        P.09

37.   The Delphi Defendants have not attempted to hire any of the 150 employees laid-off by Lextron.

### COUNT I

### NON-PAYMENT OF LOANS

38.   SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 37.

39.   Lextron Corp., Lextron Automotive and Doty are obligated to repay the Loans to SouthTrust pursuant to the terms of the Credit Documents.

40.   Lextron Corp., Lextron Automotive and Doty breached their obligations owing to SouthTrust by failing to pay the principal of, interest on and agreed charged due on the Loans.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment against Lextron Corp., Lextron Automotive, and Doty, jointly and severally, for compensatory damages in an amount equal to the total principal, interest and agreed charges (including attorney's fees and other expenses of collection) due on the Loans and otherwise owing under the Credit Documents, and such other and further relief as this Court deems appropriate.

### COUNT II - MISREPRESENTATION

41.   SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 40 above.

42.   The Delphi Defendants intentionally, willfully, negligently, wantonly or recklessly misrepresented to SouthTrust that they would continue their manufacturing relationship with Lextron and continue to give business to Lextron (the "Delphi

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030        Pg 26 LANGSTON-SWEET-F                    ☑10

Apr-14-03 03:44P                                                          P.10

Representations") for the purpose of inducing SouthTrust to continue its banking relationship with Lextron and to induce SouthTrust to make additional loan advances to Lextron.

43.     The Delphi Representations were false.

44.     Delphi made the Delphi Representations to SouthTrust knowing the Delphi Representations were false or with ignorance of their truth.

45.     Delphi intended that SouthTrust would act upon the Delphi Representations in a manner reasonably contemplated.

46.     SouthTrust did not know the Delphi Representations were false.

47.     SouthTrust relied on the Delphi Representations.

48.     SouthTrust had the right to rely on the Delphi Representations.

49.     SouthTrust was injured as a consequence of the Delphi Representations being false.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

A.     Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.     Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

## COUNT III - SUPPRESSION

50.     SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 49 above.

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030        Pg 27 LANGSTON-SWEET-F        ☑11

Apr-14-03 03:45P                                                        P.11

51.   The Delphi Defendants had a duty to disclose existing material facts to SouthTrust regarding their relationship with Lextron.

52.   The Delphi Defendants suppressed those material facts from SouthTrust to induce SouthTrust to continue its banking relationship with Lextron and make additional loan advances to Lextron.

53.   SouthTrust was injured and suffered actual damages as a result of the Delphi Defendants' suppression of the material facts.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

A.   Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.   Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

## COUNT IV – CONSPIRACY

54.   SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 53 above.

55.   The Delphi Defendants conspired to defraud SouthTrust.

56.   The Delphi Defendants' committed overt acts of fraud by sending correspondence and having phone conferences with SouthTrust in furtherance of the conspiracy.

57.   SouthTrust suffered damages as a result of the fraud and conspiracy.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

1084062 v3                           10

05-44481-rdd    Doc 5951    Filed 11/29/06    Entered 11/29/06 17:44:45    Main Document
04/14/03  18:56  FAX 2058717030        Pg 28 of 69 LANGSTON-SWEET-F                                    ☑12

Apr-14-03 03:45P                                                                                       P.12

A.      Against the Delphi Defendants, jointly and severally, for compensatory

damages in an amount to be determined at trial, plus accruing charges and attorneys

fees, costs of this action, and such other and further relief as this Court deems

appropriate.

B.      Against the Delphi Defendants, jointly and severally, for punitive damages

in an amount to be determined at trial.

### COUNT V - BREACH OF COVENANTS

58.      SouthTrust hereby adopts and incorporates the allegations set forth in the

paragraphs 1 through 57 above.

59.      The Delphi Representations constituted covenants by the Delphi

Defendants that they would continue to give manufacturing, assembly and supply

business to Lextron thereby giving Lextron the wherewith all to stay in business and

repay the Loans to SouthTrust.

60.      In consideration of the covenants made by the Delphi Defendants, and at

the request of the Delphi Defendants, SouthTrust made additional advances to Lextron

on the Loans.

61.      The Delphi Defendants breached their covenants made to SouthTrust

when they terminated their business relationship with Lextron.

62.      SouthTrust suffered damages as a direct consequence of such breach by

the Delphi Defendants.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment against the

Delphi Defendants, jointly and severally, for compensatory damages in an amount to be

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058717030        Pg 29 of 69 LINGSTON-SWEET-F                          @13

Apr-14-03 03:45P                                                              P.13

determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

### COUNT VI – INTERFERENCE WITH BUSINESS RELATIONSHIP

63.   SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 62 above.

64.   SouthTrust and Lextron had a contractual business and banking relationship.

65.   The Delphi Defendants knew of this relationship between SouthTrust and Lextron.

66.   The Delphi Defendants intentionally interfered with such business and banking relationship.

67.   The Delphi Defendants' interference with such business and banking relationship was intentional and willful.

68.   The Delphi Defendants' interference with such business and banking relationship was not justified.

69.   The Delphi Defendants' actions were calculated to cause damage to SouthTrust.

70.   The Delphi Defendants' actions were done with the unlawful purpose of causing damage and loss, without right or justifiable cause.

71.   SouthTrust has suffered damages as a result of the Delphi Defendants' interference.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

:

A.    Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.    Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

## COUNT VII – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

72.    SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 71 above.

73.    The Delphi Defendants owed a duty of good faith and fair dealing to SouthTrust.

74.    The Delphi Defendants breached that duty of good faith and fair dealing when they terminated their business relationship with Lextron.

75.    SouthTrust suffered damages that were caused by the Delphi Defendants' breach of good faith and fair dealing.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

A.    Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.    Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

## COUNT VIII – NEGLIGENCE

76.    SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 75 above.

77.    The Delphi Defendants owed a duty to SouthTrust.

78.    The Delphi Defendants breached that duty when they terminated their business relationship with Lextron.

79.    SouthTrust was injured, and the Delphi Defendants' breach of duty was the proximate and cause-in-fact of SouthTrust's injury.

80.    SouthTrust suffered actual loss and damage resulting to the interests of the Delphi Defendants.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

A.    Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.    Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

## COUNT XI – PROMISSORY ESTOPPEL

81.    SouthTrust hereby adopts and incorporates the allegations set forth in the paragraphs 1 through 80 above.

82.    The Delphi Defendants promised SouthTrust that the Delphi Defendants would not terminate their business relationship with Lextron and that Lextron would have enough work from the Delphi Defendants to continue in business.

83.   The Delphi Defendants reasonably expected such promises to induce SouthTrust to act by lending additional money to Lextron.

84.   The expected action or forbearance by SouthTrust was of a definite and substantial character.

85.   The promises did, in fact, induce SouthTrust into lending additional money to Lextron.

WHEREFORE, PREMISES CONSIDERED, SouthTrust demands judgment as follows:

A.   Against the Delphi Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, plus accruing charges and attorneys fees, costs of this action, and such other and further relief as this Court deems appropriate.

B.   Against the Delphi Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

SOUTHTRUST DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS OF THIS COMPLAINT

Dennis C. Sweet, III (MB #: 8105)
Richard A. Freese (MB # 99885)
Attorneys for Plaintiff, SouthTrust Bank

OF COUNSEL:

LANGSTON SWEET & FREESE, P.C.
201 North President Street
Jackson Mississippi 39201
(601) 969-1356
(601) 968-3866 Fax

1084962 v3                                    15

OF COUNSEL:

**LANGSTON SWEET & FREESE, P.C.**
2900 Highway 280
Suite 240
Birmingham, AL  35223
(205) 871-4144
(205) 871-4104

OF COUNSEL:

Robert H. Walker, Esquire
**BURR & FORMAN LLP**
210 East Capitol Street – Suite 700
Jackson, MS  39201
(601) 355-3434
(601) 355-5150 Fax

OF COUNSEL:

D. Christopher Carson, Esquire
Christina A. Graham, Esquire
**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, AL  35203
(205) 251-3000
(205) 358-5100 Fax

## DEFENDANTS ADDRESSES:

Charles Doty
249 Mitchell Avenue
Jackson, Mississippi 39213

Lextron Corporation
249 Mitchell Avenue
Jackson, Mississippi 39213

Lextron Automotive, LLC
249 Mitchell Avenue
Jackson, Mississippi 39213

Delphi Corporation

05-44481-rdd   Doc 5951   Filed 11/29/06   Entered 11/29/06 17:44:45   Main Document
04/14/03  18:56  FAX 2058737030        Pg 34 of 65 LANGSTON-SWEET-F                    ☒18

Apr-14-03 03:46P                                                              P.18

5725 Delphi Drive
Troy, Michigan 48098-2815

Delphi Automotive Systems USA, LLC
6540 Mercantile Way
Lansing, Michigan 48911

Delphi Automotive Systems, LLC
7525 Delphi Drive
Troy, Michigan  48098

Delphi Packard
408 Dana Street
Warren, Ohio 44486

Delphi Packard Electric Systems
408 Dana Street
Warren, Ohio 44486

Delphi Energy & Chassis Systems
5725 Delphi Drive, Building D
Troy, Michigan 48098

Delphi Safety & Interior Systems
1401 Crooks Road
M/C: 480-009-130
Troy, Michigan 48084

# EXHIBIT B

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL DISTRICT OF
HINDS COUNTY, MISSISSIPPI

SOUTHTRUST BANK, a banking corporation,    )

    Plaintiff,    )

v.    )

LEXTRON CORPORATION, a corporation;    )
CHARLES DOTY, an individual; LEXTRON    )
AUTOMOTIVE, LLC, a limited liability    )
company; DELPHI CORPORATION, a    )
corporation; DELPHI AUTOMOTIVE    )
SYSTEMS USA, LLC, a limited    )
liability company; DELPHI AUTOMOTIVE SYSTEMS,    )
LLC; a limited liability company; DELPHI    )
PACKARD, DELPHI PACKARD ELECTRIC    )
SYSTEMS, DELPHI ENERGY & CHASSIS    )
SYSTEMS, DELPHI SAFETY AND INTERIOR    )
SYSTEMS, divisions, subsidiaries or affiliates of    )
defendant, Delphi Corporation, and LARRY    )
GRAVES, an individual    )
    )
    Defendants.    )

**FILED**

DEC 0 1 2005

BARBARA DUNN, CIRCUIT CLERK
BY _____ D.C

CIVIL ACTION NO. 2003-14

## FIRST AMENDED COMPLAINT

    COMES NOW the plaintiff SouthTrust Bank ("SouthTrust"), by and through its undersigned counsel, and hereby amends its Complaint against defendants Charles Doty ("Doty"), Lextron Corporation ("Lextron"), Lextron Automotive, LLC ("Lextron Automotive," and together with Lextron and Doty, the "Lextron Defendants"), and Delphi Corporation, Delphi Automotive Systems USA, LLC, Delphi Automotive Systems, LLC, Delphi Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and Delphi Safety and Interior Systems to add Larry W. Graves (collectively, the "Delphi Defendants") as a defendant.

    1.    Upon information and belief, Larry W. Graves is an individual citizen of the State of Texas.

1390925

2.      SouthTrust adopts, references and incorporates all allegations set forth in its original Complaint as if fully set forth herein.

3.      Mr. Graves, a director of Delphi, personally participated in and was responsible for the negligent, reckless, wanton or intentional tortious conduct and breaches set forth in the original complaint including the counts set forth in the Complaint for misrepresentation, suppression, conspiracy, breach of covenants, interference with business relationship, breach of duty of good faith and fair dealing, negligence and promissory estoppel.

4.      In inducing SouthTrust to forbear from exercising its rights against the Lextron Defendants and to loan more money to Lextron, the Delphi Defendants (through Mr. Graves) gave both oral and written assurances to SouthTrust that the Delphi Defendants would continue to do business with Lextron.  Before, during and after the time the Delphi Defendants gave these assurances to SouthTrust, the Delphi Defendants had invoked processes to terminate Lextron as a supplier.

5.      Despite the oral and written assurances given to SouthTrust, the Delphi Defendants terminated Lextron as a supplier in late February 2003.

**WHEREFORE, PREMISES CONSIDERED,** SouthTrust demands judgment against the Delphi Defendants for the following:

(i)      a money judgment for compensatory damages and punitive damages in an amount to be determined at trial; and

(ii)      such other and further relief as this Court deems appropriate.

SouthTrust Demands a Trial by Struck Jury on All Counts of the Complaint and
this First Amended Complaint.

James J. Robinson
D. Christopher Carson
Jason D. Woodard
BURR & FORMAN LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

and

Dennis C. Sweet, III (Miss. Bar No. 8105)
Richard Freese (Miss. Bar No. 9885)
SWEET & FREESE, PLLC
201 North President Street
Jackson Mississippi 39201
Telephone: 601-969-1356
Facsimile: 601-968-3866

Attorneys for Plaintiff SouthTrust Bank, N.A.

**OF COUNSEL:**
BURR & FORMAN LLP
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

**Defendant's Address:**
Larry W. Graves
c/o Frank Trapp
Phelps Dunbar, LLP
111 East Capitol Street, Suite 600
P. O. Box 23066
Jackson, Mississippi 39225-3066

1390925

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following by directing same to their office addresses through first-class, United States mail, postage prepaid, on this the _____ day of _____, 2005:

Frank Trapp
Debra Brown
Phelps Dunbar, LLP
111 East Capitol Street, Suite 600 (39201-2122)
P.O. Box 23066
Jackson, Mississippi 39225-3066

Joseph E. Papelian
Delphi Legal Staff
5725 Delphi Drive
Troy, MI 48098-2815
Telephone: 248-813-2535

Sheila M. Bossier, Esq.
Attorney for Lextron Corporation
Bossier Kitchens, PLLC
1520 N. State Street
Jackson, Mississippi 39202
email:  sbossier@bkpllc.com
Facsimile:  301-352-5452

Mikel J. Bowers
Attorney for Lextron Corporation
Capshaw Goss Bowers LLP
3031 Allen Street, Suite 200
Dallas, Texas  75204
email:  mike@cgb-law.com
Facsimile:  214-761-6611

_____
OF COUNSEL

# **EXHIBIT C**

**FILED**

APR 1 1 2006

BARBARA DUNN, CIRCUIT CLERK

BY S. Williams D.C.

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI**

SOUTHTRUST BANK, a corporation                                      **PLAINTIFF**

V.                                                          CIVIL ACTION NO. 2003-14

LEXTRON CORPORATION, a corporation, et al.                  **DEFENDANTS**

## ORDER DENYING SOUTHTRUST BANK'S MOTION
## FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

THIS MATTER is before the Court on the motion of SouthTrust Bank ("SouthTrust"), seeking leave to file a Second Amended Complaint for the purpose of adding as party defendants certain employees of Delphi Corporation; Delphi Automotive Systems USA, LLC; and Delphi Automotive Systems, LLC, together with its divisions, Delphi Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and Delphi Safety and Interior Systems (collectively, "Delphi")—specifically, Jonathan R. Stegner, R. David Nelson, Martha Everett, Sidney Johnson and Greg Naylor (collectively, "the Delphi Employees"). Having considered the written submissions of the parties, the arguments of counsel at hearing, and applicable law, the Court finds as follows:

1.      SouthTrust seeks individual liability against the Delphi Employees based solely on alleged acts they performed in their representative capacity and in the course and scope of their employment with Delphi. No allegations in the proposed Second Amended Complaint indicates any basis for liability against the Delphi Employees in their individual capacity.

2.      SouthTrust's claims against Delphi are subject to the automatic stay afforded Delphi as a result of its Chapter 11 bankruptcy filing on October 8, 2005. The bankruptcy automatic stay afforded Delphi also applies to the Delphi Employees.

3.      SouthTrust's request for leave to file a Second Amended Complaint at this stage of the litigation is too late and is, therefore, untimely. Such request, if granted, would be prejudicial. *Harris v. Mississippi State University*, 873 So.2d 970 (Miss. 2004).

JO.99326392.1

4.    Based on the findings above, SouthTrust's request for leave to file a Second Amended Complaint should be denied.

IT IS, THEREFORE, HEREBY ORDERED that SouthTrust Bank's Motion for Leave to File Second Amended Complaint is denied.

SO ORDERED, this _____ day of _____, 2006.

_____
CIRCUIT COURT JUDGE

Presented by:

_____
Frank W. Trapp (MSB #8261)
Phelps Dunbar LLP
111 East Capitol Street, Suite 600
Jackson, Mississippi 39201
(601) 352-2300

**ATTEST A TRUE COPY**

APR 1 1 2006

BARBARA DUNN, CIRCUIT CLERK

BY S. Williams D.C.

JO.99326392.1

# **EXHIBIT D**

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF **F I L E D**
HINDS COUNTY, MISSISSIPPI

**AUG 2 3 2006**

SOUTHTRUST BANK                              PLAINTIFF    BARBARA DUNN, CIRCUIT CLEᴿ

VS.                                                        NO. 252-03-14 CIV  BY S. Williams

LEXTRON CORP., ET AL                         DEFENDANTS

<u>ORDER</u>

THIS CAUSE this day came on for consideration on the motion filed by

defendant Delphi to strike the plaintiff's first amended complaint, and the Court, having

considered said motion, plaintiff's response thereto, as well as the authorities of law

submitted by the parties, and being otherwise fully advised in the premises, finds as

follows:

1.  Plaintiff brought on for hearing, at a September 16, 2005 status conference in this

    cause, a motion seeking leave of Court to file a first amended complaint, adding

    one Larry Graves as an individual defendant. After hearing arguments on said

    issue and also concerning a trial setting and entry of a scheduling order, the Court

    ruled, in pertinent part, "…with this many lawyers and with yet another party

    being about to be included by the Court's granting the motion filed by the plaintiff

    to file an amended complaint, and that motion, by the way, is granted…" (See

    Transcript of Proceedings, p. 13).

2.  No order, however, effectuating that ruling was ever submitted by the plaintiff for

    entry by the Court and spread upon its minutes.

3.  As a court of record, this Court may only speak through its minutes. *Oliver v.*

    *Miles*, 110 So. 666 (Miss. 1927). Consequently, the Court's oral ruling of

    September 16, 2005, has to date been of no force and effect.

4. The Court, however, has ruled that plaintiff may file the amended complaint, and it would not be in the best interests of justice and judicial economy to strike the said amended complaint, require plaintiff to re-file the motion, set it for another hearing, and reach the same result.

5. One of the grounds upon which Delphi opposed plaintiff's motion to file an amended complaint, adding Graves as a defendant, is because Graves is alleged to be an officer of Delphi and that the stay entered in Delphi's bankruptcy proceedings likewise bar further proceedings against its officers who are sued individually.

IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff's motion seeking leave to file a first amended complaint be, and the same is hereby, sustained, as pronounced by the Court in its oral ruling of record on September 16, 2005, and the first amended complaint filed thereafter shall not be stricken, but shall be effective only from and after this date; and

IT IS FURTHER ORDERED AND ADJUDGED that any and all dispositive issues concerning the aforesaid Larry Graves, will be addressed by the Court, once Mr. Graves is made a defendant in this action, by virtue of the said first amended complaint, and upon any dispositive motion being filed on his behalf; and

IT IS FURTHER ORDERED AND ADJUDGED that in the event the Court subsequently determines that any litigation in this cause against Graves, individually, is barred by the stay in Delphi's bankruptcy proceedings, the Court will consider, upon motion by Graves, assessing plaintiff the reasonable expenses, including attorney's fees,

incurred by him in defending the action brought by plaintiff's amended complaint.

SO ORDERED AND ADJUDGED, this the 23rd day of August, 2006.

CIRCUIT JUDGE

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL

DISTRICT OF HINDS COUNTY, MISSISSIPPI


SOUTHTRUST BANK                                     PLAINTIFF

V.                                          NO. 252-03-14

LEXTRON CORPORATION, ET AL            DEFENDANTS

*********************************************************

TRANSCRIPT OF THE PROCEEDINGS HAD AND DONE IN THE

STATUS CONFERENCE OF THE ABOVE STYLED AND NUMBERED

CAUSE, BEFORE THE HONORABLE BOBBY B. DELAUGHTER,

CIRCUIT JUDGE, SOLE PRESIDING, ON THE 16TH DAY OF

SEPTEMBER, 2005.

*********************************************************

APPEARANCES:


        DENNIS C. SWEET, III
        SWEET & FREESE, PLLC
        200 SOUTH LAMAR STREET
        JACKSON, MISSISSIPPI 39201
                        REPRESENTING THE PLAINTIFF.

        REUBEN V. ANDERSON
        FRANK W. TRAPP
        PHELPS DUNBAR, LLP
        111 EAST CAPITOL STREET
        SUITE 600
        JACKSON, MISSISSIPPI 39201

        D. CHRISTOPHER CARSON
        BURR & FORMAN, LLP
        420 NORTH 20TH STREET
        BIRMINGHAM, ALABAMA 35203
                        REPRESENTING THE DEFENDANTS.



REPORTED BY:
        BRENDA DALE HUNT, CSR
        P. O. BOX 327
        JACKSON, MISSISSIPPI 39205
        CSR NO. 1062

i

# TABLE OF CONTENTS

| | PAGE NO. |
|---|---|
| Style, Number of Cause, Appearances | 1 |
| SEPTEMBER 16, 2005: | |
| Motion for Trial Setting: | |
| Mr. Sweet | 2 |
| Mr. Trapp | 4 |
| Mr. Sweet | 6 |
| Mr. Trapp | 8 |
| Letters Rogatory: | |
| Mr. Carson | 9 |
| Mr. Trapp | 10 |
| Mr. Carson | 11 |
| Ruling of the Court | 12 |
| Hearing Concluded | 15 |
| Court Reporter's Certificate | 16 |

1          MR. SWEET:  May it please the Court.

2     Your Honor, we had the matter of a status

3     conference.  I think we had a motion for

4     trial setting, which if can I address the

5     Court, and then my co-counsel, we had one

6     issue about letters rogatory and my

7     co-counsel will address the Court on that.

8          Your Honor, we are -- as far as the --

9     just brief issue, we filed this case in April

10     of 2003 -- April 14th, 2003.  There was other

11     counsel involved at that time.  Delphi has

12     since went and hired some real big guns since

13     that time.  And the case is pending for a few

14     months.  The Court had original trial date of

15     July of 2004.  New counsel saw and raised

16     some issues that the previous counsel did not

17     raise and in December of 2004 we were removed

18     to federal court.

19          Your Honor, at that time once we were

20     removed there were some issues raised and

21     litigated and the Court there granted Delphi

22     opportunity to conduct quite a bit of

23     discovery on the issues that they presented

24     to Judge Wingate.  The matter was then

25     remanded.  Of course, we had lost our July,

26     2004, original trial date because the issues

27     that were raised on removal we were still in

28     federal court litigating those issues.

29          Your Honor, we have been remanded back

1    for several months and before the Court now

2    for a status conference.

3         Your Honor, at this time we would like to

4    if we could leave today with a trial date.

5    There is one additional thing that we have

6    done in connection with that that may raise

7    an issue as far as trial date.  We recently

8    filed an amended -- a motion for leave to

9    amend the complaint where we added an

10   additional party.

11        Just briefly to explain to the Court who

12   the party is, Delphi -- well, Southtrust Bank

13   was making a determination of whether or not

14   they were going to lend Mr. Doty's company

15   some money and they wanted some assurances,

16   and that's what this case is about, from

17   Delphi that they were going to continue to do

18   business and that to make a determination of

19   whether the large sum of money they were

20   going to loan, they had good protection from.

21   There is a officer of Delphi, Mr. Larry

22   Graves, who, in fact, wrote the letter

23   assuring them they had every intention of

24   keeping Mr. Doty's business going, and those

25   type things.  Our case is about the fact that

26   that letter and those intentions were not

27   adequately represented.

28        The amended complaint now after we have

29   been through quite a bit of discovery in the

1    federal court and depositions, we have chosen

2    to amend in Mr. Graves personally.  And that

3    is the amendment on the complaint.

4        So, your Honor, as far as the management

5    is concerned we have been -- the case is

6    approaching -- it's two-and-a-half years old,

7    getting ready to approach three years.  Quite

8    a bit of discovery is done.  We had an

9    original July, 2004, trial date.  And, your

10   Honor, with the amendment we would ask the

11   Court if the Court would consider setting a

12   new trial date.  We have served the amended

13   complaint today.  We filed motion to leave

14   and the complaint today.  We would ask the

15   Court to allow us to amend it, to give us

16   thirty days for them to respond and ninety

17   days for discovery, and so we would ask the

18   Court to have a cushion of a trial date

19   within 150 days, which would put us in late

20   January, early February of 2006 for a trial

21   date.  That's our request, your Honor.

22        THE COURT:  Response?

23        MR. TRAPP:  Your Honor, the amended --

24   filing the amended complaint, I think, puts a

25   different perspective on all of this.  We

26   don't disagree with a trial setting.  I don't

27   agree with the days that he has mentioned

28   because we don't know when they will get

29   served.

1     Secondly, there is discovery that we will
2  need to do in this case.  The discovery that
3  was on removal really went to establish the
4  coordination going on between Lextron
5  lawyers, and Southtrust lawyers.  It didn't
6  really go to the substance of the claims.
7     Mr. Larry Graves, I believe is -- to the
8  best of my knowledge is still employed with
9  Delphi.  I don't know -- I didn't know about
10  this proposed amendment until today, but I
11  would think, your Honor, if he is going to be
12  brought in as a party questions about his
13  representation and what discovery his counsel
14  feels is needed and scheduling ought to be
15  considered by the Court before a trial
16  setting.
17     One other thing I would like to request
18  of the Court, when this matter is tried, if
19  it is tried, there will be a number of Delphi
20  people who are involved who are from out of
21  state, and by the same token I believe, of
22  course, they can speak for themselves, the
23  Southtrust representatives are from
24  Birmingham and we would request a first
25  setting so that we will know, in essence, a
26  time certain that we will be going to trial
27  so that we can coordinate bringing those
28  folks down and they can coordinate bringing
29  theirs over.  So having said that we think

1   that it would be appropriate to have a

2   scheduling order worked out with the parties

3   that would set discovery designation of

4   expert, dispositive motions, discovery

5   deadlines, have that worked out, presented to

6   the Court, and essentially work backwards

7   from a trial date.  But I would request an

8   opportunity to let Mr. Graves be served and a

9   decision made about how he would be

10   represented in this case before that will be

11   done.

12        THE COURT:  Thank you.

13        MR. SWEET:  May I just for the Court,

14   this matter was pending from April 14th,

15   2003, to December of 2003 before it was

16   removed.  And we had a status conference and

17   discovery was ongoing with the other firm and

18   we had a trial date.  The case was removed.

19   The number one person, Mr. Andy Rains, for

20   Southtrust, just to give the Court an

21   example, who was the person who made the

22   decision and had communications with Delphi,

23   along with other discovery.  But, your Honor,

24   in connection with this transaction and

25   Delphi -- Delphi has taken over the company

26   they made the loan to, they have deposed Mr.

27   Andy Rains a total of seventeen hours about

28   that transaction.  They said it was remand

29   related discovery, your Honor.  And we went

STATUS CONFERENCE

1    back and forth about repeating and going

2    through, but he has been deposed seventeen

3    hours.  There has been substantial discovery

4    ongoing already.  In over two-and-a-half

5    years the Court can imagine the amount.  So

6    that, your Honor, the only issue -- I don't

7    think it's an issue of discovery.  We agree

8    to a scheduling order but we would like a

9    trial date to get to -- almost all the

10   documents have been sent -- exchanged between

11   the parties.  So there may be a couple or a

12   few depositions but, your Honor, the bulk of

13   discovery is done.  We are prepared to try

14   the case within thirty days.  I mean, there's

15   been so much done already.

16       There are no real new issues as far as

17   Mr. Graves is going, your Honor.  The issue

18   between Mr. Graves and Southtrust is Andy

19   Rains and he discussed it.  There were

20   communications with them about this loan and

21   he wrote a letter, and that is the issue

22   between them.  It's the same exact issues

23   that have been involved in the case.  The

24   only issue with Mr. Graves is we are going to

25   bring him in in his official capacity.

26   That's the only additional thing.  So there

27   is no whole new case, no whole new theories,

28   not even any new issues.  He has to get

29   representation.  If he wants to do some --

1   repeat some of the depositions that have been
2   done over and over by Delphi, we will have
3   time to do it within the ninety days allowed
4   by the Court.  Thank you.
5        MR. TRAPP:  May I address one point,
6   your Honor.  The removal discovery was
7   limited by Judge Wingate to the events that
8   transpired after termination that dealt with
9   the coordination by Mr. Sweet with Lextron's
10  lawyers, the bank loaning money post
11  termination, post by Delphi, and what
12  happened during that time period when they
13  sat down and planned how to bring this
14  lawsuit in this jurisdiction and keep it here
15  so that it couldn't be removed.
16       Mr. Rains' deposition has been taken in a
17  case involving Lextron and Delphi that is in
18  the federal court.  None of -- that
19  deposition does have some facts which were
20  relevant to this case here, but that
21  deposition didn't deal with the basis of all
22  the allegations in the complaint that they
23  filed against Delphi.  It did not deal, most
24  importantly, your Honor, with damages.  It
25  didn't deal with the mitigation.  While the
26  bank said in March of 2003, to Delphi, "You
27  are going to cause Lextron to go out of
28  business and that's going to hurt us,"
29  Lextron is in business today.  The bank

1    continued to keep them in business and we are

2    entitled to discovery about all of those

3    things because it goes to the issues of

4    damages which are not part of any deposition

5    that has been taken anywhere as it relates to

6    Southtrust.  So I just want to clarify the,

7    quote, seventeen hours.  And Mr. Graves is

8    entitled to have his circumstances evaluated

9    by somebody who has his specific interests in

10   mind.

11        Thank you, your Honor.

12        THE COURT:  Yes, sir.  All right.  There

13   was an issue concerning some letters

14   rogatory.

15        MR. CARSON:  Yes, your Honor.  Chris

16   Carson for Southtrust Bank.

17        We have asked the Court to issue letters

18   rogatory to BBK, its custodian of records,

19   and an employee of BBK.  BBK were the

20   consultants for Delphi at Lextron during the

21   time period which is at issue in this

22   lawsuit.  We -- in looking at Michigan law

23   and what's required, Mr. Banbury and BBK is

24   located in Michigan.  It is our understanding

25   that under Michigan law this Court will have

26   to issue letters rogatory in order to make

27   sure that those people are properly

28   subpoenaed for deposition.

29        THE COURT:  Response?

1       MR. TRAPP:  Your Honor, I want to be

2   clear on my response here.  In terms of form

3   I have no objection.  In terms of substance I

4   believe there is an abuse of the discovery

5   process going on here.  Delphi Corporation is

6   subject to a Securities and Exchange

7   Commission investigation of certain

8   accounting practices.  Apparently, at some

9   point in time -- and, obviously, none of us

10   are involved in that -- apparently at some

11   point in time, according to news accounts,

12   there was an inventory sale from Delphi to

13   the company employing Mr. Banbury.  It's

14   called BBK or Better Business Knowledge, your

15   Honor.

16       The letter -- the document requests and

17   the subpoena itself, the document request

18   subject to the corporate representative of

19   BBK and the subpoena to BBK itself to the

20   extent it deals with this case and documents

21   relating to what Mr. John Banbury and those

22   associated with him did at Lextron, that is

23   perhaps arguably applicable.  But what

24   happened here, your Honor, they are trying to

25   get discovery here for Lextron in the federal

26   case because the discovery date has run over

27   there and they don't want to grant the

28   extension we have asked for.  They want to

29   circumvent it and use it over here.  The

1    Security -- Mr. Banbury did not even know

2    about Lextron and he certainly -- while he

3    came on-site at Lextron all of those things

4    took place after the communications that is

5    at the heart of their lawsuit, your Honor.

6    He wasn't involved in those communications.

7    Nothing in the Security and Exchange

8    Commission investigation has anything to do

9    with Delphi's decision to exit Lextron.

10   Nothing in the Security and Exchange

11   investigation has anything to do with

12   Delphi's communications with Southtrust Bank.

13   Those are totally irrelevant and they are

14   trying to get information that would be

15   useful or may be useful for Lextron in the

16   lawsuit that's in federal court, and it's an

17   end run and we think from a -- again, your

18   Honor, from a substance standpoint we want to

19   be very clear about it, we are most

20   vehemently opposed to it.

21        THE COURT:  Response.

22        MR. CARSON:  Judge DeLaughter, if I

23   could just briefly, your Honor.  You know, I

24   disagree with Mr. Trapp's characterization

25   about the purposes behind Southtrust

26   opposing --

27        THE COURT:  I can't imagine.

28        MR. CARSON:  -- BBK.  I know that comes

29   as a shock to you.  I don't believe that I

STATUS CONFERENCE

1     have even discussed this motion with

2     Lextron's counsel over in the case that

3     Delphi filed.  Be that as it may, we are

4     clearly entitled to discover this type of

5     information.  I mean, the relationship

6     between BBK and Delphi is absolutely relevant

7     to the lawsuit that is at issue here today.

8     It's relevant at the very least as to our

9     damages and the wrongfulness of the conduct

10    and who knew what when.  It's not just the

11    assurances that were made in early January.

12    It's the fact that at no time thereafter was

13    Southtrust made aware by anyone at Delphi

14    that it had been misled, that Delphi in spite

15    of saying they were going to maintain and

16    grow Lextron as a supplier, it was those

17    assurances upon which Southtrust lent that

18    money, they are actually already behind the

19    scenes working to get rid of Lextron.  So I

20    think, clearly, this information, the

21    accounting irregularities, the scope of the

22    relationship between Delphi and BBK are

23    discoverable in this action.

24        THE COURT:  All right.  Well, the Court

25    has a preference for setting target trial

26    dates rather than to wait until all discovery

27    is complete but to allow adequate time for

28    any supplemental discovery to be made and

29    there doesn't appear to be any opposition to

1   setting a trial date.  It's just a question

2   of when.  And from an administrative

3   standpoint the Court is interested in finding

4   a date that would fit within the Court

5   calendar.  So that's the reason I have been

6   conferring with the law clerk and the court

7   administrator.  There are enough parties and

8   lawyers in this case that I think a first

9   setting is desirable by the Court.  I don't

10  indicate by that that every case needs a

11  first setting because I have found that if

12  you set a case for trial 98 percent of them

13  end up settling out if not on the week before

14  trial, on the day of trial, and so I have

15  found that a fourth or even a fifth setting

16  you are pretty much assured of going to trial

17  but it's not a guarantee.  But with this many

18  lawyers and with yet another party being

19  about to be included by the Court is granting

20  the motion filed by the plaintiff to file an

21  amended complaint and that motion by the

22  way is granted.

23       I have looked at the calendar to see when

24  the first available first setting will be and

25  that is here in Raymond commencing Monday,

26  May 8th.  So I am going to set the trial as a

27  first setting for that day.  Trial will

28  commence at 1:30 that afternoon.  I have got

29  to use the morning to qualify the jurors.

STATUS CONFERENCE

1       All right.  Now do the parties think you
2    can reach an agreement as far as a scheduling
3    order or do you want the Court to establish
4    some deadlines?
5       MR. TRAPP:  Your Honor, I think that I
6    would suggest if its permissible with the
7    Court to get Mr. Graves officially in the
8    case and figure out his representation and
9    then at that point work back from that trial
10   date, if that's appropriate with the Court.
11      THE COURT:  All right.  Well, I
12   certainly think his counsel needs to have
13   some input in that.  So there won't be any
14   question of whether or not there is a state
15   of limbo concerning discovery, my position is
16   -- and I think I have posted this in my
17   policies and procedures on the website -- my
18   position is that unless and until a
19   scheduling order to the contrary is entered
20   that the Court operates under the Uniform
21   Rules of Circuit and County Court which
22   imposes a ninety day deadline from the time
23   that the applicable defendant files his
24   answer.  So unless I hear from you gentlemen
25   to the contrary that's what I intend do.
26      MR. TRAPP:  Well, your Honor, that would
27   be ninety days from the service of the
28   amended complaint that the Court -- because
29   the first ninety days has been gone a while.

15

1          THE COURT:  Yes, sir.  Absolutely.

2          MR. TRAPP:  Okay.

3          THE COURT:  Any other clarification

4     needed?

5          MR. SWEET:  No, your Honor.

6          THE COURT:  Thank you.  Y'all have a

7     good weekend.

8          * * * HEARING CONCLUDED * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

## COURT REPORTER'S CERTIFICATE

STATE OF MISSISSIPPI
COUNTY OF HINDS

I, Brenda Dale Hunt, Official Court Reporter for the Seventh Circuit Court District of the State of Mississippi, hereby certify that to the best of my skill and ability I have reported the proceedings had and done in the trial of SOUTHTRUST BANK V. LEXTRON CORPORATION, ET AL being No. 252-03-14 on the docket of the Circuit Court of the Second Judicial District of Hinds County, Mississippi, and that the above and foregoing fifteen (15) pages contain a true, full and correct transcript of my stenographic notes and tape taken in said proceedings.

I do further certify that my certificate annexed hereto applies only to the original and certified transcript. The undersigned assumes no responsibility for the accuracy of any reproduced copies not made under my control or direction.

This the 1st _____ day of August, 2006.


                        _____
                        BRENDA DALE HUNT
                        Official Court Reporter


CSR NO. 1062

# **EXHIBIT E**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------
                                :
    In re                       :        Chapter 11
                                :
DELPHI CORPORATION et al.,      :        Case No. 05-44481 (RDD)
                                :
    Debtors.                    :        (Jointly Administered)
-----------------------------------------------

## ORDER PURSUANT TO 11 U.S.C. § 362(d)
## MODIFYING THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. § 362(a)

Upon the Motion, dated November 28, 2006 (the "Motion"), of Wachovia Bank,

National Association, successor by merger to SouthTrust Bank ("Wachovia"), for the entry of an

order determining that the automatic stay does not apply to the lawsuit commenced by Wachovia

against Larry Graves ("Graves") in the Circuit Court for the Second Judicial District of Hinds

County, Mississippi, Case No. 2003-14 (the "Lawsuit"), or, alternatively, granting relief from the

automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy

Code") to allow Wachovia to proceed with the Lawsuit, and for related relief; and due and

proper notice of the Motion having been made on all necessary parties; and the Court having

held a hearing (the "Hearing") on the Motion on January 11, 2007; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefore; and for the reasons stated by the Court on the record of the Hearing, it is hereby

ORDERED that the Motion is granted as provided herein; and it is further

DETERMINED that the automatic stay imposed in this case by section 362(a) does not

stay litigation of the Lawsuit filed by Wachovia against Graves nor stay any action to enforce

and/or collect a judgment entered in the Lawsuit against Graves and in favor of Wachovia.

1521375

Dated: _____ __, 200_
        New York, New York

_____
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT F**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------
                                    :
    In re                           :        Chapter 11
                                    :
DELPHI CORPORATION et al.,          :        Case No. 05-44481 (RDD)
                                    :
    Debtors.                        :        (Jointly Administered)
---------------------------------------------

### ORDER PURSUANT TO 11 U.S.C. § 362(d)
### MODIFYING THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. § 362(a)

Upon the Motion, dated November 28, 2006 (the "Motion"), of Wachovia Bank,

National Association, successor by merger to SouthTrust Bank ("Wachovia"), for the entry of an

order determining that the automatic stay does not apply to the lawsuit commenced by Wachovia

against Larry Graves ("Graves") in the Circuit Court for the Second Judicial District of Hinds

County, Mississippi, Case No. 2003-14 (the "Lawsuit"), or, alternatively, granting relief from the

automatic stay pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy

Code") to allow Wachovia to proceed with the Lawsuit, and for related relief; and due and

proper notice of the Motion having been made on all necessary parties; and the Court having

held a hearing (the "Hearing") on the Motion on January 11, 2007; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefore; and for the reasons stated by the Court on the record of the Hearing, it is hereby

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the automatic stay imposed in this case by section 362(a) of the

Bankruptcy Code is modified under section 362(d) of the Bankruptcy Code to permit Wachovia

1521367

to proceed with the Lawsuit against Graves and to enforce and/or collect any judgment entered in

the Lawsuit against Graves and in favor of Wachovia.

Dated: _____ __, 200_
      New York, New York

                                   _____
                                   HON. ROBERT D. DRAIN
                                   UNITED STATES BANKRUPTCY JUDGE