Hearing Date and Time: March 22, 2007 10:00 a.m.
Fee Committee Objection Deadline: March 15, 2006 4:00 p.m.

**COVINGTON & BURLING LLP**
1330 Avenue of the Americas
New York, NY 10019-5400
(212) 841-1000
Aaron R. Marcu (AM-6309)
Susan Power Johnston (SJ-9386)

Foreign Trade and Special Corporate Committee
Counsel to the Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
                               :
    In re                      :   Chapter 11
                               :
DELPHI CORPORATION, et al.,    :   Case No. 05-44481 (RDD)
                               :
                    Debtors.   :   (Jointly Administered)
                               :
------------------------------ x

**THIRD INTERIM APPLICATION OF COVINGTON & BURLING LLP,
FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE LEGAL COUNSEL
TO THE DEBTORS AND DEBTORS-IN-POSSESSION,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM JUNE 1, 2006 THROUGH SEPTEMBER 30, 2006**

TO:   THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

Covington & Burling LLP ("**Covington**"), foreign trade and special corporate committee legal counsel to the above-captioned debtors and debtors-in-possession (collectively, "**Delphi**", the "**Company**" or the "**Debtors**"), submits this third interim application (the "**Third Application**") for allowance of compensation for professional services rendered and

reimbursement of expenses incurred from June 1, 2006 though September 30, 2006 (the "**Third Application Period**").

## PRELIMINARY STATEMENT

1. By this Third Application and pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Covington requests that this Court authorize: (a) interim allowance of compensation for professional services Covington rendered during the Third Application Period in the amount of $499,681.75; and (b) the reimbursement of actual and necessary expenses Covington incurred in connection with the rendition of such professional services in the amount of $22,535.33.[1]

2. The Third Application reflects the time, skill and effort Covington expended during the Third Application Period providing assistance to the Company as its foreign trade and special corporate committee legal counsel. Covington has: (a) advised and assisted the Company on U.S. foreign trade control matters, including the scope, applicability, licensing and compliance requirements under the International Traffic in Arms Regulations, Directorate of Defense Controls, U.S. Department of State; (b) advised a Special Committee (the "**Special Committee**") of the Company's Board of Directors (the "**Board**") in connection with demands which have been or may be made by Delphi shareholders with regard to various accounting issues now under investigation and in litigation; and (c) advised the Special Committee in connection with its response to an informal inquiry by the Securities and Exchange Commission (the "**SEC**").

---

[1] Certain expenses incurred during the Third Application Period may not have been posted as of the date of this Third Application. Covington reserves the right to seek reimbursement for such expenses at a later date.

2

3. This Court has jurisdiction over this Third Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Third Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## GENERAL BACKGROUND

4. On October 8, 2005 (the "**Petition Date**"), Delphi and certain of its U.S. subsidiaries filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, three additional U.S. subsidiaries of Delphi also sought relief in this Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

5. On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). On March 30, 2006, the Court issued an order directing the United States Trustee to appoint an official committee of equity holders (the "**Equity Committee**") to represent the interests of Delphi's shareholders. No trustee or examiner has been appointed in the Debtors' cases.

6. On November 4, 2005, the Court issued an Order Under 11 U.S.C. §§ 331 (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Setting a Final Hearing Thereon (Docket No. 869) (the "**First Interim Compensation Order**"), pursuant to which, on March 31, 2006 and April 28, 2006, Covington made its First Application and Revised First Application (as defined below).

3

7. On February 17, 2006, the Debtors filed an Application for Order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Covington & Burling as Foreign Trade and Special Corporate Committee Legal Counsel to Debtors (Docket No. 2424) (the "**Retention Application**"), seeking the retention of Covington *nunc pro tunc* to October 8, 2005.

8. On March 8, 2006 and March 28, 2006, the Court issued the first and second Supplemental Orders Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, amending and supplementing the First Interim Compensation Order. The March 8 order (Docket No. 2747) established timelines for the submission of applications, and provided for the establishment of a fee committee. The March 28 order (Docket No. 2986) further clarified the timing for the filing of fee applications, and set a date for a hearing on those applications which had been received in a timely fashion.

9. On March 9, 2006, the Court granted the Retention Application, authorizing the employment and retention of Covington as Foreign Trade and Special Corporate Committee Legal Counsel to the Debtors (Docket No. 2769) (the "**Retention Order**").

10. Before the Petition Date, Covington performed numerous services for the Debtors. As a result of these prepetition services, Covington was owed, and continues to be owed, approximately $263,559.79. Covington has filed a proof of claim regarding this amount. Neither the compensation nor expenses requested pursuant to this Third Application includes any portion of this amount. See Certification Pursuant to Local Guidelines, US Trustee Guidelines and Fee Committee Guidelines for Fees and Disbursements attached as **Exhibit A**.

11. On March 31, 2006, Covington filed the First Interim Application of Covington & Burling, as Foreign Trade and Special Corporate Committee Legal Counsel to the

4

Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from October 8, 2005 Through January 31, 2006 (Docket No. 3060) (the "**First Application**").

12. On April 18, 2006, the Court issued its Order Approving Joint Interest Agreement Between Debtors and Official Committee of Unsecured Creditors, Implementing Protective Order, And Approving Procedures to Protect Information in Fee Statements (Docket No. 3279) (the "**Joint Interest Agreement Order**"). In recognition of the confidential, privileged and sensitive nature of the work performed by some of the Debtors' professionals, the Joint Interest Agreement Order authorized confidential time records to be filed under seal. A copy of the Joint Interest Agreement Order is attached as **Exhibit B.**

13. Due to the confidential nature of Covington's time entries, on April 28, 2006, Covington withdrew the First Application, and filed its Revised First Interim Application of Covington & Burling, as Foreign Trade and Special Corporate Committee Legal Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from October 8, 2005 Through January 31, 2006 (Docket No. 3509) (the "**Revised First Application**"), to comply with the procedures implemented by the Joint Interest Agreement Order.

14. On May 5, 2006, the Court issued the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 3630) (the "**Third Interim Compensation Order**"). The Interim Compensation Order provided for the establishment of a Joint Fee Review Committee (the "**Fee Committee**") and established protocols regarding the composition, mandate and procedures relating to the Fee Committee.

5

15. On June 19, 2006, the Fee Committee issued a memorandum containing guidelines for retained professionals to use when billing time (the "**Fee Committee Guidelines**"). The Fee Committee Guidelines included a timetable for the submission of budgets and future fee applications by the Debtors' retained professionals, formatting requirements for all submissions to the Fee Committee, and a detailed delineation of recommended timekeeping methods, expense categories and examples of improper timekeeping procedures.

16. On July 13, 2006, the Court issued the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 4545) (the "**Fourth Interim Compensation Order**"). The Fourth Interim Compensation Order rescheduled the hearing date on the first interim fee applications of the Debtors' retained professionals from July 19, 2006 to October 19, 2006, when they could be considered along with the professionals' second interim fee applications, and provided that one-half of the amount held back by the Debtors from certain fees requested on account of time billed through May 31, 2006 be released.

17. On July 31, 2006, Covington filed its Second Interim Application of Covington & Burling LLP, as Foreign Trade and Special Corporate Committee Legal Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from February 1, 2006 Through May 31, 2006 (Docket No. 4794) (the "**Second Application**").

18. On October 13, 2006, the Court issued the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 5310) (the "**Fifth Interim Compensation Order**").

The Fifth Interim Compensation Order rescheduled the hearing date on the first and second interim fee applications of the Debtors' retained professionals from October 19, 2006 to November 30, 2006.

19. On October 24, 2006, Covington filed the Amended Second Interim Application of Covington & Burling LLP, as Foreign Trade and Special Corporate Committee Legal Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period from February 1, 2006 Through May 31, 2006 (Docket No 5385) (the "**Amended Second Application**"), to address issues raised by the Creditors' Committee in its response to the Second Application.

## COVINGTON'S FEES AND EXPENSES

20. Covington's services in these cases have been substantial, necessary, and beneficial to the Debtors and the Special Committee, the Company's creditors, and other parties-in-interest. Throughout the Third Application Period, Covington has addressed a variety of pressing issues that required Covington, in the discharge of its professional responsibilities, to devote substantial time by its professionals on an ongoing and, at times, daily basis.

21. Covington has submitted invoices for postpetition services rendered to the Special Committee and to the Debtors for payment pursuant to the Interim Compensation Order. No agreement or understanding exists between Covington or any other entity for the sharing of compensation to be received for services rendered in or in connection with this case.

22. Covington's personnel maintain written contemporaneous records of the time expended in rendering professional services to the Debtors and the Special Committee. A copy of the daily time records for the Third Application Period, broken down by matter and listing

7

the name of the attorney or paraprofessional, the date on which the services were performed, and the amount of time spent in performing the services, is attached as **Exhibit C**.

23. Because many of the services Covington rendered during the Third Application Period are confidential and sensitive, Covington has filed Exhibit C to this Application under seal pursuant to the Joint Interest Agreement Order.

24. Attached as **Exhibit D** is a list of the attorneys and paraprofessionals who have worked on Delphi matters during the Third Application Period, the aggregate time expended by each individual during the Third Application Period, his or her hourly billing rate during the Third Application Period, and the amount of Covington's fees attributable to each individual.[2] Additionally, included as part of Exhibit D is a list of all the matters for which services were rendered and the aggregate amount of hours and fees expended for each of those matters.

25. Covington also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of professional services. A schedule setting forth the categories of expenses and amounts for which reimbursement is requested is attached as **Exhibit E**.

---

[2] Covington customarily adjusts its billing rates on an annual basis, usually as of October 1 of each year. However, pursuant to the terms of its engagement letter dated June 8, 2005 (the "**Engagement Letter**"), Covington did not increase its billing rates for representation in the Delphi proceeding on October 1, 2005. In accordance with the terms of the Engagement Letter, Covington raised its rates on June 8, 2006, and this increase in Covington's billing rates is reflected in the fees requested in this Third Application.

## **SUMMARY OF SERVICES RENDERED**

26. The following summary highlights the principal areas to which Covington devoted substantial time and attention during the Third Application Period. The full breadth of Covington's services is reflected in Covington's time records.

### Foreign Trade Control Representation

27. Covington provided advice and assistance to the Debtors on many facets of U.S. foreign trade control laws, including compliance with export laws administered by the Departments of Commerce and State, import laws administered by the Department of State and Bureau of Customs and Border Protection, and economic sanctions programs administered by the Treasury Department.

28. Covington assisted the Debtors in evaluating certain sales by the Debtors' foreign affiliates for compliance with U.S. foreign trade controls, and assisted on issues relating to the export from the U.S. of various items including machines, chemicals, electrical components and software.

29. Covington assisted the Debtors in the drafting and submission of regulatory applications on behalf of the Debtors.

30. Covington provided training to the Debtors' employees in compliance with foreign trade control laws, and consulted with the Debtors on the development of various compliance initiatives.

### Special Committee Representation

31. In response to a demand letter issued by a Delphi shareholder, a Special Committee of the Board was formed to investigate issues now in litigation and/or under investigation, to advise the Board regarding whether there are viable claims against potential

9

defendants in connection with these issues, and, if so, to make recommendations regarding whether it is in the Company's best interest to pursue them.

32. As counsel to the Special Committee, Covington attorneys reviewed numerous documents relating to these issues, including emails, notes, memoranda, correspondence, presentations, contracts and accounting records. Covington attorneys conducted research regarding potential causes of action against current and former Delphi directors and officers.

33. Covington attorneys met numerous times with counsel to the Creditors' Committee, and prepared and reviewed productions of documents to be delivered to the Creditors' Committee.

34. Covington attorneys participated in numerous meetings and telephone conferences with the members of the Special Committee to provide updates on work completed, present key evidence, provide advice regarding proposed investigative steps, and receive direction from the Special Committee.

### Informal SEC Inquiry

35. Covington was asked by the Special Committee of Delphi's Board to respond to an informal inquiry by the staff of the SEC's Enforcement Division concerning the accounting treatment that a Delphi customer accorded a transaction with a Delphi division. Covington attorneys assisted in many aspects of the Debtors' ongoing response to this inquiry.

### Case Administration

36. During the Third Application Period, Covington prepared and drafted the Second Application, Amended Second Application and all supporting documents, and addressed supplemental disclosure issues.

37. Throughout the progress of the Debtors' chapter 11 cases, Covington has communicated extensively with the Debtors and the Special Committee, participating in meetings and telephone conferences with representatives of the Debtors and members of the Special Committee, and exchanging email and other correspondence. These communications were crucial in keeping the Debtors, the Special Committee and the members of the Board apprised of the status of issues of concern to them.

38. As highlighted above, Covington has provided essential services to the Debtors and the Special Committee, and these services have benefited the Debtors, the Special Committee, their creditors and other parties-in-interest in these bankruptcy cases. Covington rendered these services in an expeditious and efficient manner and in compliance with the requirements of the Bankruptcy Code.

### COVINGTON'S REQUEST FOR INTERIM COMPENSATION

39. The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

40. The First and Third Interim Compensation Orders require professionals in the Debtors' chapter 11 cases to serve monthly fee statements upon notice parties listed in those

11

Orders[3] to obtain allowance of compensation and reimbursement of 80% of fees and 100% of expenses identified in each monthly statement. Approximately every 120 days, professionals in the Debtors' chapter 11 cases serve and file with the Court an application for interim or final compensation pursuant to sections 330 and 331 of the Bankruptcy Code. These Interim Compensation Orders are not intended to alter the fee application requirements set forth in sections 330 and 331 of the Bankruptcy Code. See First Interim Compensation Order at ¶ 2(b).

41. Section 330(a)(1) of the Bankruptcy Code provides, in pertinent part, that a court may award to a professional person, including a debtor's attorney:

> reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney . . . .

11 U.S.C. § 330(a)(1). The Congressional intent and policy expressed in section 330 of the Bankruptcy Code is to provide for adequate compensation to attract qualified and competent practitioners to bankruptcy cases.

42. Covington submits that its request for interim allowance of compensation in the amount of $499,681.75 is reasonable. The services rendered by Covington, as highlighted above, were necessary to fulfill the Debtors' and the Special Committee's requests for legal counsel.

43. Covington has made, and continues to make, efforts to work with the Debtors' other counsel to ensure that there is no unnecessary duplication of work between Covington and such other firms. Covington and the other firms retained in these chapter 11 cases have clearly delineated the division of labor between them to maximize the efficient usage of their combined resources by the Debtors' estate.

---

[3]   As modified by the Joint Interest Agreement Order.

44. The services rendered by Covington during the Third Application Period were performed diligently and efficiently. When possible, Covington delegated tasks to lower-cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the particular task at issue. While that approach may have required intra-office conferences or involved individual attorneys who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency. The blended hourly rate for all attorneys and paraprofessionals is approximately $296.00, which is within the range of fees normally charged for similar services rendered in a chapter 11 case by major law firms in the New York City and Washington, D.C. areas.

45. The services rendered to the Debtors by Covington during the Third Application Period, after writing off the time for all timekeepers who billed less than three hours during the Third Application Period, required an aggregate expenditure of 1,479.20 recorded hours of the time of attorneys and paraprofessionals. Based upon the number of hours spent and Covington's hourly billing rate established by the engagement letter dated June 8, 2005, and the increase to Covington's billing rates that became effective on June 8, 2006, the value of the recorded services rendered by Covington's attorneys and paraprofessionals is $499,681.75. Exhibit D sets forth a list of such individuals, the aggregate amount of time expended by each and the current hourly billing rate for each. The fair and reasonable value of the services rendered by Covington to the Debtors and recorded during the Third Application Period is set forth in Exhibit C and summarized above.

## **DISBURSEMENTS**

46. Covington incurred actual and necessary out-of-pocket expenses during the Third Application Period, in connection with the rendition of the professional services described above, in the amount of $22,535.33, as set forth in detail in Exhibit E.[4]

47. The disbursements for which Covington seeks reimbursement include the following:

1. Duplicating - Charged at $0.10 per page;

2. Telecommunications - Long-distance calls and long-distance facsimile transmissions are billed at actual cost. There is no charge for incoming facsimiles;

3. Computer Research Charges - Covington's practice is to bill clients for LEXIS and Westlaw research at actual cost;

4. Overtime Expenses - Covington's practice is to allow any attorney working later than 8:00 p.m. and any legal assistant working later than 7:30 p.m. to charge a working meal to the appropriate client. The meal charge is limited to $20 per person. Upon occasion, the actual expense for a meal exceeded $20, and in those cases, Covington absorbed the amount in excess of $20 and did not bill the Debtors for that excess amount. In compliance with the Fee Committee Guidelines, these instances are noted and itemized in Exhibit E;

5. Local Car Service - Covington's practice is to allow attorneys, legal assistants and secretaries to charge car service to the appropriate client after 8:00 p.m.;

6. Delivery Services - Covington's practice is to charge postal, overnight delivery and courier services at actual cost; and

7. Overtime Word Processing Charges and Secretarial Overtime - Covington's practice is to bill clients for overtime word processing charges and secretarial overtime at actual cost, and therefore includes such charges in this Third Application.

---

[4] Covington's standard practice is to treat certain expenses as having been incurred when such obligations are recorded and reflected as payable in Covington's accounting system.

14

## COMPLIANCE WITH LOCAL RULES, U.S. TRUSTEE GUIDELINES AND FEE COMMITTEE GUIDELINES

48. Covington submits that this Third Application complies with the guidelines set forth by this Court in its Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "**Local Rules**"), and its administrative orders M-104 and M-150, and with the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "**U.S. Trustee Guidelines**").

49. The Fee Committee Guidelines require applicants to submit their invoices and fee applications to Legal Cost Control, Inc., the Fee Examiner for the Fee Committee (the "**Fee Examiner**"). For the most part, Covington believes that the Fee Examiner and Fee Committee Guidelines track the U.S. Trustee Guidelines. Covington's Third Application deviates from the Fee Committee Guidelines in certain minor respects described below.

50. First, the Fee Committee Guidelines prohibit overtime meals and cars home unless the attorneys and staff billed at least 8 hours during the day to the Debtors. It is Covington's normal policy, however, to allow attorneys and staff to bill overtime meals and cars when those individuals have worked more than eight hours in a single day and two hours beyond the close of their office's regular workday, but not to require that all eight hours billed be attributable to the client to whom the meals and transportation expenses are billed. Covington permits the attorneys and staff to use their best judgment as to which client should bear the cost of the meals and transportation. Covington respectfully submits that all overtime expenses for which reimbursement is requested in the Third Application were necessary and appropriate.

51. Covington also respectfully disagrees with the Fee Committee's Guidelines on "transitory timekeepers." Covington has already written off all time for timekeepers who billed less than three hours during the Third Application Period as a whole on the grounds that attorneys and other time keepers who spend less than three hours during a three month period are likely to be transitory. However, most of the attorneys and paralegals who spent less than ten hours in a given month during the Third Application Period are significantly and substantively involved on a continuous basis with the work done for Delphi. Their roles are not transitory as most of them have billed time in each of the post-petition months, and their contribution is highly significant to the success of the work performed for the Debtors. Many of them are senior supervisory attorneys whose contribution to the work done is both highly valuable and not subject to dispute. They provide valuable but inexpensive guidance to the legal team because of their significant experience and expertise in the areas in which their specialized guidance is sought. Consulting them ultimately saves the Debtors significant cost because they can provide advice based on their experience that otherwise would have to be developed through substantial additional research by less experienced lawyers, as a fair review of the time records in their entirety demonstrates.

52. The Fee Committee Guidelines disfavor time spent by attorneys and staff on "administrative and clerical" tasks. Although some Covington timekeepers may have engaged in tasks that appear to be purely clerical in nature, those tasks in fact required considerable knowledge of the Debtors' case and skills far beyond what would be needed for rote, truly uncomplicated chores. In each case, the tasks performed, generally by paraprofessionals or junior attorneys, required judgment, training, and substantive awareness of the case. They were in all cases intended to make the work more efficient. In some situations, the tasks performed

16

involved interaction with members of the Delphi Board of Directors, and could not responsibly have been delegated to Covington's administrative personnel. These tasks are not subject to delegation, and time billed for them is essential to Covington's handling of the Debtors' case.

53. Finally, the Fee Committee recommends that firms not be reimbursed for time expended in the performance of conflicts checks. As described above, during the Third Application Period, Covington continued to perform its supplemental conflict checks, as required by Bankruptcy Rules 2014(a) and 327(a). Bankruptcy professionals are required by statute to perform rigorous conflicts checks of all parties-in-interest to ensure that they do not hold or represent any adverse interests, and have a continuing duty of disclosure. The consequences of failing to perform the checks with meticulous attention can be harsh for a firm. In this case, with thousands of debtor entities and many more thousands of creditors and other parties-in-interest, performing the initial and supplemental conflicts checks has been an extremely onerous and very time-consuming task. Covington does not bill for the hours spent by its conflicts staff searching its conflicts database, but it does bill, and expects to be reimbursed, for the time spent by paralegals and attorneys supervising the staff's work, compiling the lists of parties-in-interest whom Covington represents in unrelated matters and preparing the requisite disclosure declarations.

## PROCEDURE

54. In accordance with the First Interim Compensation Order, the Third Interim Compensation Order, the Joint Interest Agreement Order, and the Court's Local Rules, notice of this Third Application has been provided to the 2002 notice list, and the Third Application with all exhibits has been served on: the Debtors, their attorneys, the United States Trustee, counsel to and Chair of the Creditor's Committee, the Fee Examiner and the members of the Fee

17

Committee. The Third Application without the detailed time records has been served on the counsel to and the chair of the Equity Committee. Covington submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

55. Because the Third Application presents no novel issue of law, Covington requests that the Court dispense with the requirement of Local Rule 9013-1(b) that a memorandum of law be submitted herewith.

56. No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, Covington respectfully requests that this Court enter an order awarding Covington:

1. interim compensation from the Debtors for services rendered for the period from June 1, 2006 through September 30, 2006, inclusive, in the amount of $499,681.75;

2. reimbursement of actual and necessary expenses incurred in connection with the rendition of such services, in the amount of $22,535.33; and

3. such other and further relief as may be just and proper.

Dated: November 30, 2006

COVINGTON & BURLING LLP

By:   /s/ Susan Power Johnston
      Aaron R. Marcu  (AM-6309)
      Susan Power Johnston  (SJ-9386)

1330 Avenue of the Americas
New York, NY  10019-5400
(212) 841-1000

**Foreign Trade and Special Corporate Committee Counsel to the Debtors and Debtors-in-Possession**

19