# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
    In re                               :       Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :       Case No. 05-44481 (RDD)
                                              :
                Debtors.          :       (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### ORDER APPROVING JOINT INTEREST AGREEMENT BETWEEN DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, IMPLEMENTING PROTECTIVE ORDER, AND APPROVING PROCEDURES TO PROTECT INFORMATION IN FEE STATEMENTS

### ("JOINT INTEREST AGREEMENT ORDER")

Upon the motion, dated March 28, 2006 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 105,

107 and 1103 and Bankruptcy Rules 7026 and 9018, approving the Joint Interest Agreement[1]

between the Debtors and the Creditors' Committee, preserving for the benefit of the Debtors'

estates certain protections and privileges from disclosure of information and documents

produced pursuant to the Joint Interest Agreement, and approving procedures to protect

confidential and privileged information in fee statements and fee applications of professionals

retained in these cases; and upon the record of the hearing held on the Motion; and this Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties-in-interest; and it appearing that proper and

---

[1]    Terms not defined herein shall have the meanings ascribed to them in the Motion.

adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Debtors and the Creditors' Committee are separate fiduciaries of these estates with distinct fiduciary duties that share a common interest with respect to the subject matter of the Information (as defined herein).  In addition, the Court as well as the Debtors and the Creditors' Committee have an interest in ensuring that its orders are implemented appropriately. To carry out their respective fiduciary duties efficiently and effectively in general, the Debtors and the Creditors' Committee must be able to share confidential information within the subject matter of the Information free from the risk that any of them would be required to divulge such information to third parties later.

B.    Given the common interest of the Debtors and the Creditors' Committee with respect to the Information, the sharing of the confidential Information between the Debtors and the Creditors' Committee shall not prejudice any rights, remedies, or causes of action of the Debtors or the Creditors' Committee applicable with respect to any causes of action arising out of the Information.

C.    The Debtors' administration of their cases should not be prejudiced by the exchange of the Information.  Any Information provided by the Debtors to the Creditors' Committee should be used only as provided in the Joint Interest Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2

2.      The Court hereby approves the Joint Interest Agreement, a copy of which is attached hereto as Exhibit 1. Any non-public information and documents provided by the Debtors to the Creditors' Committee related to the Investigations, whether written or oral, including by virtue of participation by any Reviewing Party (as defined below) in the Investigations, to the designees of the Creditors' Committee (which designees shall be the outside professionals of the Creditors' Committee and, at the election of the Creditors' Committee, either the chair of the Creditors' Committee or a subcommittee of the Creditors' Committee in a number reasonably acceptable to the Debtors) (each a "Reviewing Party"), shall be deemed confidential information subject to the provisions of the Joint Interest Agreement ("Information"), and no attorney-client, attorney work-product doctrine, or similar privilege shall be waived solely by reason of the sharing of such Information under the terms of the Joint Interest Agreement. The Debtors shall maintain a privilege log identifying privileged documents provided to the Creditors' Committee pursuant to the Joint Interest Agreement and this Order. The Debtors' provision of Information pursuant to the Joint Interest Agreement shall not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including the Creditors' Committee, to Information that is otherwise discoverable to the extent so ordered by the Court or another Court of competent jurisdiction in litigation authorized by the Court.

3.      The Joint Interest Agreement between the Debtors and the Creditors' Committee shall apply only to the Investigations.

4.      Nothing in this Order shall be deemed to expand or narrow the scope of the common interest privilege.

3

5.      Nothing in this Order shall preclude the Debtors from expressly waiving any privilege or attorney work-product doctrine applicable with respect to any Information in the future.

6.      The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigations.

7.      Nothing in this Order or the Joint Interest Agreement shall limit, modify, or otherwise diminish the Debtors' or the Creditors' Committee's rights and powers under applicable law, including the rights of the Creditors' Committee, to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses the Debtors may have to any such involuntary production are not diminished by this Order or the Joint Interest Agreement).

8.      Nothing in this Order or in the Joint Interest Agreement shall affect the separate representation of the parties by their respective counsel nor shall anything in this Order or the Joint Interest Agreement be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney. The Debtors' provision of Information pursuant to the Joint Interest Agreement shall not be a basis for disqualification of any of the Creditors' Committee counsel.

9.      No discovery in respect of matters that are the subject of the Investigations shall be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise

4

agreed, or (c) in connection with an adversary proceeding initiated by the Debtors or a contested

hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the

Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all

rights and defenses with respect thereto are reserved).

10.     The provisions of the Order Under 11 U.S.C. § 331 Establishing

Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals

(Docket No. 869), as amended (Docket No. 2747) relating to monthly fee statements and fee

applications containing Confidential Time Records shall be modified in accordance with Exhibit

2 attached hereto.  The dissemination and disclosure of the Confidential Time Records in

accordance with these procedures shall not constitute a waiver of the attorney-client or attorney

work product privileges, or of any right to the confidentiality of such information by any party.

The Debtors shall promptly serve a copy of this Order on all professionals retained pursuant to a

retention order entered by this Court.

11.     The Court expressly retains exclusive jurisdiction to determine any dispute

regarding the interpretation or enforcement of this Order and the Joint Interest Agreement.  On

request of a party in interest, the Court may issue any order necessary or appropriate to enforce

or give effect to the provisions of this Order or the Joint Interest Agreement, including, but not

limited to, this retention of jurisdiction.

5

12.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       April 18, 2006

                           ____/s/Robert D. Drain_____
                              UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

Joint Interest Agreement

Exhibit 2

Fee Procedures

A.       The disclosure of the Confidential Time Records shall be limited to (i) Debtors and their counsel, (ii) counsel to the Creditors' Committee, (iii) the United States Trustee, (iv) this Court (in the case of interim or final fee applications), and (v) any other entity consented to in writing by the Debtors as set forth below, or designated by this Court after notice and a hearing (together, the "Designated Recipients").

B.       Except as set forth below, all retained professionals shall file their fee applications, monthly fee statements, and related documents and records (including expense records) in accordance with the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals (Docket No. 869), as amended (Docket No. 2747), and relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable orders and guidelines.

C.       Service and distribution of monthly fee statements and interim and final fee applications containing the Confidential Time Records shall be limited to the Designated Recipients. Monthly fee statements and interim and final fee applications sent to or served on non-Designated Recipients will have the Confidential Time Records redacted.  Corresponding interim and final fee applications, with unredacted confidential time records, filed with this Court shall be filed under seal.

D.       Any party receiving the Confidential Time Records shall be required to maintain the confidentiality of such information and shall not publicly file, provide, or disclose the Confidential Time Records, directly or indirectly, or by any means or in any manner whatsoever, to anyone other than another Designated Recipient.

E.       Any party who wishes to become a Designated Recipient shall submit a written request to the Debtors, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: David Sherbin), with a copy to Debtors' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), setting forth with specificity the basis for the request.  The Debtors shall have twenty days after receipt of such request to respond in writing to any such request and shall use reasonable efforts to resolve any such request without judicial intervention.  In the event that the Debtors agree in writing to supply the requested information, the requesting party shall be deemed to be a Designated Recipient and shall be required to maintain the confidentiality of the time records as set forth above.  If the Debtors determine not to supply the requested information, such requesting party shall then be entitled to file an appropriate motion or other pleading with this Court upon proper notice.

F.       The dissemination and disclosure of the Confidential Time Records in accordance with these procedures shall not constitute a waiver of the attorney-client or attorney work product privileges, or of any right to the confidentiality of such information by any party.

G.    Any objection to a fee application or fee statement, pleading, or other filing of a Designated Recipient that contains the content of the Confidential Time Records shall be filed with the Court in a form complying with the following requirements, with copies of such pleadings to be sent solely to the Designated Recipients:

1.    All such objections, pleadings, or other filings referenced in section G shall be filed with a cover sheet reciting the following information:

The materials herein are filed pursuant to the Joint Interest Agreement Order, entered by this Court April ___, 2006 (the "Order"). Pursuant to the Order, the attached materials contain confidential information and may be viewed only by the Chambers of the Honorable Robert D. Drain, the Debtors' counsel, the United States Trustee, and other Designated Recipients. Copies of the attached materials are available solely under the procedures set forth in the Order.

2.    The cover sheet with respect to any objections, pleadings, or other filings shall contain the caption of the case, designate the party filing the materials, and be signed by counsel for such party. Only the cover sheet shall become part of the public record. The pleadings or other materials being filed shall be maintained by the Court in accordance with its procedures for documents filed under seal.

H.    With respect to any hearing concerning fee statements, fee applications, time records, or related documents or records containing Confidential Time Records, the necessary arrangements to maintain the confidentiality of the Confidential Time Records shall be addressed with the Court in advance of such hearing.

2

## JOINT INTEREST AGREEMENT

WHEREAS, on October 8, 2005 (the "Initial Filing Date"), Delphi

Corporation ("Delphi") and certain of its U.S. subsidiaries (the "Initial Filers") filed

voluntary petitions in the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court") for reorganization relief under chapter 11 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of

Delphi (together with the Initial Filers, collectively, the "Debtors") also sought

reorganization relief. The Debtors continue to operate their businesses and manage

their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

WHEREAS, on October 17, 2005, the Office of the United States Trustee

appointed an official committee of unsecured creditors (the "Creditors' Committee").

WHEREAS, prior to the Initial Filing Date, certain events occurred which

prompted informal and formal investigations by Delphi and its subsidiaries and

affiliates (collectively, the "Company") and third parties. The investigations include,

but are not limited to (a) the internal review conducted by the Company's Audit

Committee, (b) the formal ongoing investigations by several governmental agencies,

(c) the Company's restatement of earnings for fiscal years 2001-03, (d) the subject

matter related to the commencement of certain class actions, including, without

limitation, actions brought under ERISA (as defined below) and various securities

actions, and (e) the review by a special committee of the Company's Board of

Directors of certain shareholder derivative demands and related actions (collectively,

the "Investigations").

WHEREAS, the Company is the subject of an ongoing investigation by the

Securities and Exchange Commission ("SEC") and other federal authorities

involving its accounting for and the adequacy of disclosures for a number of

transactions dating from the Company's spin-off from GM.  Delphi is fully

cooperating with the SEC's ongoing investigation and requests for information as

well as the related investigation being conducted by the Department of Justice. The

Company has entered into an agreement with the SEC that currently suspends the

running of the applicable statute of limitations until April 6, 2006, which is likely to

be further extended.  The SEC investigation and the related investigation by the

Department of Justice were not stayed as a result of the Debtors' commencement of

their chapter 11 cases.

WHEREAS, Delphi completed a financial restatement in June 2005, the

effects of which reduced retained earnings as of December 31, 2001 by $265 million,

reduced 2002 net income by $24 million, and reduced 2003 net loss by $46 million.

The nature of the restatement adjustments have been described on Form 8-K filings

with the SEC.  In conjunction with the restatement, the audit committee of the

Company's Board of Directors conducted and concluded an internal investigation of

2

certain accounting transactions over the previous five years. The Company is

continuing to cooperate fully with the government's investigations in these matters.

WHEREAS, several class action lawsuits have been commenced against

Delphi, Delphi Trust I, Delphi Trust II, current and former directors, certain current

and former officers, General Motors Investment Management Corporation (the

named fiduciary for investment purposes and investment manager for Delphi's

employee benefit plans), and certain current and former employees of Delphi or its

subsidiaries, as a result of the Company's announced financial restatement. These

lawsuits fall into three categories: (a) lawsuits brought under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), purportedly on

behalf of participants in certain of the Company's and its subsidiaries' defined

contribution employee benefit pension plans which invested in Delphi common stock

(the "ERISA Actions"), (b) lawsuits alleging that the Company and certain of its

current and former directors and officers made materially false and misleading

statements in violation of federal securities laws (the "Securities Actions"), and (c)

shareholder derivative actions (the "Shareholder Derivative Actions"). The Board of

Directors of the Company has appointed a special committee to investigate certain

shareholder derivative demands. On or about December 12, 2005, the Judicial Panel

on Multidistrict Litigation transferred, and consolidated into one action, the ERISA

Actions, the Securities Actions, and the federal Shareholder Derivative Actions. The

3

litigation was transferred to Judge Gerald R. Rosen in the United States District

Court for the Eastern District of Michigan and consolidated under the title In re

Delphi Securities, Derivative and ERISA Litigation (MDL No. 1725).

     WHEREAS, the Debtors and the Creditors' Committee have determined that

it is in the best interests of the Debtors' estates that they share material confidential

information with each other and consult with each other regarding the Investigations.

The Debtors and the Creditors' Committee further believe that it is in the best

interests of the Debtors' estates for the Debtors to provide such confidential, non-

public information and documents related to the Investigations, whether written or

oral, including by virtue of participation by any Reviewing Party (as defined below)

in the Investigations ("Information") to the designees of the Creditors' Committee

(which designees shall be the outside professionals of the Creditors' Committee and,

at the election of the Creditors' Committee, either the chair of the Creditors'

Committee or a subcommittee of the Creditors' Committee in a number reasonably

acceptable to the Debtors), to keep them adequately apprized of the ongoing progress

of the Investigations, without losing any privilege or protection attaching to any

produced information through the disclosure thereof.

     WHEREAS, the Debtors and the Creditors' Committee believe that they

share common interests in this regard, and intend through this Agreement that any

and all sharing of information pursuant to this Agreement be protected pursuant to

4

the "common interest" or "joint defense" doctrine, to the fullest extent such
protection is available under applicable case law subject to the provisions of this
Agreement.

WHEREAS, the Debtors and the Creditors' Committees wish to memorialize,
and to set forth the terms and conditions of, their understanding with respect to the
foregoing.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the
Debtors and the Creditors' Committee, that:

1.    The Debtors may voluntarily share Information related to the
Investigations with the members and professionals of the Creditors' Committee
identified on Appendix A to this Agreement (collectively, the "Reviewing Parties").
The Reviewing Parties shall treat all Information obtained from the Debtors in
accordance with this Agreement.  No other additional persons, firms, or entities shall
be added to the Reviewing Parties list, unless prior email notice is provided to
counsel for the Debtors and the Debtors consent in writing to such additions.  The
Reviewing Parties may share and discuss Information with each other.  The
designated professional firms identified on Appendix A may disclose Information as
necessary in the ordinary course of their work to legal assistants, secretaries, or other
non-professional staff, but shall disclose information only to individuals who have a
need to know the Information for purposes of participating in the Investigations.

5

2.      The Debtors may voluntarily make available for inspection and
copying by the Reviewing Parties certain Information, including deposition
transcripts, internal memoranda, and other documents and information.  Upon the
Debtors' request (the consent to which a Reviewing Party shall not unreasonably
withhold), at the close of the chapter 11 cases or such other time as may be
reasonable the Reviewing Parties shall return all originals and return copies of any
and all Information produced pursuant to this Agreement, and shall certify their
compliance with this paragraph to the Debtors in writing, provided that the
professionals retained by the Creditors' Committee may retain (but must use for no
other purpose other than as set forth in paragraph 3) their own work product.

3.      All Information received by the Reviewing Parties in connection with
the Investigations shall be held in strict confidence and used solely for purposes of
the Investigations and any litigation subsequently authorized by the Bankruptcy
Court.  The Reviewing Parties shall not disclose Information received in connection
with the Investigations except to one another.

4.      In the event that a Reviewing Party is legally required by the
Bankruptcy Court, any other court of competent jurisdiction or by a federal, state or
local governmental or regulatory body, to disclose any of the Information, such
Reviewing Party shall, to the extent lawful, provide the Debtors with prompt written
notice of any such requirement to the Debtors no less than ten business days prior to

6

such required disclosure (provided that if a Reviewing Party is required to make a disclosure in less than 10 business days, such Reviewing Party shall provide notice to the Debtors as soon as reasonably practicable, but not later than one calendar day after the Reviewing Party is informed of the need to make such required disclosure) so that the Debtors may seek a protective order or other appropriate remedy and/or waive compliance with this Agreement. The Reviewing Party shall provide service of such notice by facsimile and Federal Express to: (a) Delphi Corporation, Att'n: David Sherbin, 5725 Delphi Drive, Troy, MI 48098 (facsimile (248) 813-2491); (b) Delphi Corporation, Att'n: Joseph Papelian, 5725 Delphi Drive, Troy, MI 48098 (facsimile (248) 813-3251); and (c) Skadden, Arps, Slate, Meagher & Flom LLP, Att'n: John Wm. Butler, Jr., 333 W. Wacker Drive, Chicago, IL 60606 (facsimile (312) 407-0411). If, in the absence of a protective order or other remedy or the receipt of a waiver from the Debtors, such Reviewing Party is nonetheless required to disclose any of the Information, such Reviewing Party may, without liability hereunder, disclose only that portion of the Information which such Reviewing Party is advised by counsel it is legally required to disclose, provided that such Reviewing Party shall use its reasonable best efforts to preserve the privileges and confidentiality of the Information by reasonably cooperating with the Debtors to obtain an appropriate protective order or other reliable assurance that the privileges and other confidential treatment will be accorded the Information.

7

5.      The parties agree that all Information provided to the Reviewing Parties prior to the execution of this Agreement was provided in furtherance of the parties' common interests and the prior provision of Information by the Debtors, and its receipt by the Reviewing Parties, is subject to this Agreement.

6.      The Reviewing Parties will not assert that the Debtors' production of Information pursuant to this Agreement constitutes a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

7.      The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigations, through its own representatives.

8.      No discovery in respect of matters that are the subject of the Investigations will be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise agreed, or (c) in connection with an adversary proceeding initiated by the Debtors or a contested hearing adjudicating a motion initiated by the Debtors, such discovery is

8

permissible under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all rights and defenses with respect thereto are reserved).

9.      It is the express intent of the parties to this Agreement, and of the Bankruptcy Court, if it approves the Agreement, that the Agreement and the production of Information pursuant thereto will not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including any Reviewing Party, to Information that is otherwise discoverable to the extent so ordered by the Bankruptcy Court or another court of competent jurisdiction in litigation authorized by the Bankruptcy Court.

10.     Nothing herein shall, or is intended in any way to limit, modify or otherwise diminish the Debtors' or the Creditors' Committee's rights and powers under applicable law, including under the Bankruptcy Code and Bankruptcy Rules, or the rights of the Creditors' Committee to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses that Debtors may have to any such involuntary production are preserved).

11.     Nothing herein shall be or is intended to constitute an admission by any person or entity of any wrongdoing or liability or of the existence of any claims or causes of action in connection with the subject matter of the Investigations or otherwise.

9

12. This Agreement shall be binding upon the parties' respective successors and assigns.

13. This Agreement shall be submitted for approval by the Bankruptcy Court, but if not approved, shall remain in full force and effect as an agreement among the parties.

14. This Agreement may be executed in several counterparts, all of which constitute the same agreement.

15. Nothing herein shall affect the separate and independent representation of the parties by their respective counsel nor shall anything herein be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney. The sharing of Information pursuant to this Agreement shall not be a basis for disqualification of any Reviewing Party's counsel.

16.    This Agreement constitutes the full agreement among the parties

regarding the production and sharing of Information.  Modifications of this

Agreement must be in writing and signed by counsel to all parties hereto.


Dated:    _____, 2006

SKADDEN, ARPS, SLATE,                          LATHAM & WATKINS LLP
  MEAGHER & FLOM LLP

By:    _____              By:    _____
        John Wm. Butler, Jr. (JB 4711)                Robert J. Rosenberg (RR-9585)
        David E. Springer (DS 9331)                    Mitchell A. Seider
        John K. Lyons (JL 4951)                          Mark A. Broude (MB-1902)
        Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100            885 Third Avenue
Chicago, Illinois 60606                              New York, New York 10022-4802
(312) 407-0700                                      (212) 906-1200

            - and -                                  Attorneys for The Official Committee
                                                    of Unsecured Creditors
By:    _____
        Kayalyn Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession


11

## APPENDIX A

### LIST OF REVIEWING PARTIES FOR
### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

#### DESIGNATED COMMITTEE MEMBERS
[list individuals and firm affiliations]

To be determined

#### DESIGNATED PROFESSIONALS
[list firms]

Latham & Watkins LLP
Mesirow Financial Consulting LLC
Jefferies & Company, Inc.