*Hearing Date/Time: March 22, 2007 at 10:00 a.m.*
*Objection Deadline: March 15, 2007 at 4:00 p.m.*

Michael P. Richman (MR 2224)
FOLEY & LARDNER LLP
90 Park Avenue, 37th Floor
New York, NY 10016-1314
Tel: (212) 682-7474
Fax: (212) 687-2329

John A. Simon (admitted *pro hac vice*)
FOLEY & LARDNER LLP
One Detroit Center
500 Woodward Ave, Suite 2700
Detroit, MI 48226-3489
Tel: (313) 234-7100
Fax: (313) 234-2800
*Attorneys for Ernst & Young LLP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
    In re                                   :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THIRD APPLICATION OF ERNST & YOUNG LLP, AS INDEPENDENT AUDITORS, ACCOUNTANTS AND TAX ADVISORS TO DEBTORS, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES

| | |
|---|---|
| Name of Applicant: | Ernst & Young LLP |
| Authorized to Provide Professional Services to: | Delphi Corporation, and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession |
| Date of Retention Order: | April 5, 2006, *nunc pro tunc* to January 1, 2006 |
| Period for Which Compensation and Reimbursement is Sought: | May 27, 2006 through September 30, 2006 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $4,599,870 |

| | |
|---|---:|
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $90,257 |
| Less: Aggregate Amounts Paid to Date: | (3,385,801) |
| Amount of Compensation Requested for Payment: | $1,304,326 |
| Voluntary Reductions: | |
|     Monthly Fee Statements: | $0 |
|     Fee Applications: | $0 |
|     Total Voluntary Reductions: | $0 |

This is a(n) _X_ Interim __ Final Application

Prior Applications Filed:

Ernst & Young LLP, as Sarbanes-Oxley, Valuation, and Tax Services Providers for the Debtors:

| Date Filed | Period Covered | Fees | Expenses | Status |
|---|---|---|---|---|
| 3/29/06 | 10/8/05 – 1/31/06 | $3,140,215 | $152,464 | Pending; Hearing Scheduled for March 22, 2007 |

Ernst & Young LLP, as Independent Auditors, Accountants and Tax Advisors to Debtors

| Date Filed | Period Covered | Fees | Expenses | Status |
|---|---|---|---|---|
| 7/31/06 | 1/1/06 – 5/31/06 | $3,349,072 | $74,755 | Pending; Hearing Scheduled for March 22, 2007 |

Ernst & Young LLP (the "Applicant" or "E&Y"), as Independent Auditors, Accountants and Tax Advisors to Delphi Corporation, and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), respectfully represents:

### INTRODUCTION

1.  This is the Applicant's third application (the "Application") for allowance and payment of compensation for professional services and reimbursement of expenses pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the Court's General Orders M-104 and M-151 (the "General Orders"), the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. §330 adopted on January 30, 1996 (the "UST Guidelines") and the Order under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals, entered November 4, 2005 (Docket No. 869), as supplemented by the orders dated March 8, 2006, March 28, 2006, May 5, 2006, July 13, 2006 and October 13, 2006 (Docket Nos. 2747, 2986, 3630, 4545 and 5310) (as supplemented and amended, the "Interim Compensation Order," and collectively, the "Applicable Guidelines and Orders").

2.  This Application requests compensation for independent auditing, accounting and tax advisory services (the "Services") rendered by the Applicant on behalf of the Debtors during the period May 27, 2006 through September 30, 2006 (the "Compensation Period") and reimbursement of actual and necessary expenses incurred by (or first billed by outside vendors

to) the Applicant during the Compensation Period in connection with the rendering of such Services. This Application also includes requests for relatively small amounts of fees incurred (and not included in prior fee applications) during February, March, April and May 2006, as included in time details attached hereto as Exhibit D. This Application complies with the Bankruptcy Code, the Bankruptcy Rules, the UST Guidelines and the Local Rules, as stated in the certification dated November 30, 2006, attached hereto as Exhibit A, made on behalf of the Applicant by Steven Sheckell (the "Certification").

3. This Application seeks the final approval and allowance of compensation in the amount of $4,599,870 representing the fees for Applicant's actual time charges for 14,862.3 hours of professional services rendered during the Compensation Period, plus reimbursement of actual and necessary expenses incurred in the amount of $90,257, for a total of $4,690,127, all as more fully set forth below. This Application also requests this Court authorize and direct the Debtors to pay E&Y unpaid fees and expenses in the amount of $1,304,326. Applicant submits that allowance and payment of these amounts are fully warranted given the actual and necessary services rendered to the Debtors by the Applicant as described in this Application.

## JURISDICTION

4. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5. On October 8, 2005 (the "Petition Date"), Delphi Corporation and certain of its U.S. subsidiaries filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, three additional U.S. subsidiaries of Delphi

Corporation also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

6. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in the Debtors' cases.

7. On May 5, 2006, this Court entered the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Fee Committee Order") in these cases. The Fee Committee Order established a Joint Fee Review Committee (the "Fee Committee") and approved a fee protocol (the "Fee Protocol") which charges the Fee Committee with the primary responsibility to review and analyze fee statements and interim and final fee applications submitted by professionals appointed by this Court in these chapter 11 cases and verify compliance with the other procedures described [in the Fee Protocol.]" *See* Fee Committee Order, ¶ 1, and Fee Protocol, at 1.

8. On November 4, 2005, this Court entered the Interim Compensation Order, which authorizes the monthly payment of eighty percent (80%) of fees and one hundred percent (100%) of expenses to retained professionals upon submission of timely monthly statements to, and provided no formal objections were filed by, the Debtors and their counsel, the U.S. Trustee, counsel for the Creditors' Committee, counsel for the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors' postpetition credit facility, and the members of any Fee Committee (collectively, the "Notice Parties"). The Interim Compensation Order also

requires the submission of periodic interim fee applications and a final fee application for approval and allowance of compensation and reimbursement of expenses, upon which any formal objections not resolved consensually will be presented to the Court.

### RETENTION OF ERNST & YOUNG LLP AND MONTHLY FEE STATEMENTS

9.  Prior to the Compensation Period, and pursuant to an order entered on January 5, 2006 approving Applicant's retention as such (Docket No. 1743), E&Y, together with certain other subcontracted Ernst & Young Global Limited member firms (the "EYGL Member Firms"), provided Sarbanes-Oxley, valuation and tax services for the Debtors (the "Prior Services"). E&Y and the EYGL Member Firms completed all of the Prior Services on or before December 16, 2005, and on December 29, 2005, Applicant provided formal notice of termination of the Prior Services to the Debtors.

10. On March 29, 2006, E&Y filed its first and final fee application (the "First Fee Application") for the allowance and payment of compensation for professional services and reimbursement of actual and necessary fees and expenses related to the Prior Services rendered between the Petition Date and January 31, 2006. In accordance with discussions with the Creditors' Committee, E&Y has agreed to seek only interim, and not final, allowance with respect to the First Fee Application.

11. On July 31, 2006, E&Y filed its second interim fee application (the "Second Fee Application") for the allowance and payment of compensation for professional services and reimbursement of actual and necessary fees and expenses for independing auditing, accounting and tax advisory services rendered between January 1, 2006 through May 31, 2006. A hearing on the First Fee Application and the Second Fee Application is set for March 22, 2007.

12. During the pendency of these Cases, the Debtors required the provision of independent auditing, accounting and tax advisory services. The Debtors retained Applicant based on Applicant's professional standing and reputation, experience in providing independent auditing and tax advisory services in restructurings and reorganizations, experience in rendering services in large, complex chapter 11 cases on behalf of debtors and creditors throughout the United States, and experience with Tier 1 automotive suppliers.

13. On March 17, 2006, the Debtors filed the Application for Order under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Ernst & Young LLP as Independent Auditors, Accountants, and Tax Advisors to Debtors, Effective *Nunc Pro Tunc* To January 1, 2006 (Docket No. 2867) (the "Retention Application"). The Retention Application sought the Court's authorization of the Debtors' employment of the Applicant to perform certain auditing, accounting and tax advisory services (the "Services") in accordance with the terms of two engagement letters attached as exhibits to the Retention Application (the "Engagement Letters"). The Engagement Letters set forth, among other matters, the scope of the Services and the terms of compensation for fees and expenses.

14. On April 5, 2006, the Court entered an order approving the Retention Application on a final basis, *nunc pro tunc* to January 1, 2006 (Docket No. 3121) (the "Retention Order").

15. With respect to the compensation period, Applicant has distributed four monthly fee statements (i) on July 27, 2006 for May 27, 2006 through June 30, 2006 requesting $370,459 in fees $45,962 (the "June Fee Statement"), (ii) on August 29, 2006 for July 1 through July 31, 2006 requesting $3,450,290 in fees and $14,110 in expenses (the "July Fee Statement"), (iii) on September 28, 2006 for August 1 through August 31, 2006 requesting $318,312 in fees and $14,480 in expenses (the "August Fee Statement"); and (iv) on October 27, 2006 for September

1 through September 30, 2006 requesting $460,809 in fees and $15,705 in expenses (the "September Fee Statement," and collectively, the "Monthly Fee Statements") to the Notice Parties.

16.  No party has filed an objection to Applicant's Monthly Fee Statements, and neither Applicant nor counsel for Applicant have received any objections to the Monthly Fee Statements.

17.  The Debtors have paid Applicant $3,385,801, representing eighty percent (80%) of the fees for professional services and one hundred percent (100%) of the expenses invoiced under the June, July, and August Fee Statements.

18.  No agreement or understanding exists between Applicant and any other person for the sharing of compensation received from services rendered or in connection with Debtors' chapter 11 cases, nor shall Applicant share or agree to share the compensation paid or allowed from Debtors' estates for such services with any other person.

## SUMMARY OF SERVICES RENDERED BY ERNST & YOUNG LLP DURING THE COMPENSATION PERIOD

19.  During the Compensation Period, Applicant provided the Services under a number of different discrete projects. The Services fall under the general project categories of (I) Audit Services: 2006 Consolidated Audit (the "2006 Consolidated Audit"), (II) Accounting Assistance services (the "Accounting Assistance Services"), (III) tax services (the "Tax Services"), and (IV) services related to Applicant's retention and monthly invoicing (the "Retention/Fee Application Services").

20.  Attached hereto as Exhibit B is a schedule specifying the amount of fees and expenses for which the Applicant sought in this Application, separated by project.

21.     The attached Exhibit C sets forth the names, titles, hourly rates (for projects not billed on fixed fee arrangement), and the number of hours billed of or by all partners, principals, managers and auditors of Applicant who rendered services to the Debtors during the Compensation Period. The hourly rates comply with the terms of the Engagement Letters and Retention Order, reflect the normal hourly rates for professional services charged by each partner, principal, manager and auditors of Applicant for this type of work, and are consistent with rates typically charged by other comparable firms for this type of work.

22.     E&Y's professionals have maintained contemporaneous time records which indicate the time that each professional spent working on a particular matter and the nature of the work performed. Copies of these time records are annexed to this Application as Exhibit D.

23.     Attached hereto as Exhibit E are contemporaneously maintained records of the expenses for which the Applicant is seeking reimbursement, separated by project.

**(I) Audit Services: 2006 Consolidated Audit**

24.     Under the Audit Services project, E&Y has been performing an audit of the Debtors' consolidated financial statements and its internal control over financial reporting, which services may include auditing and reporting on the consolidated financial statements of Delphi for the year ending December 31, 2006, auditing and report on management's assessment of the effectiveness of internal control over financial reporting and on the effectiveness of internal control over financial reporting as of December 31, 2006, and reviewing the Debtors' unaudited interim financial information before the Debtors file their Form 10-Q.

25.     In connection with the foregoing services, E&Y's professionals expended a total of 9,319.6 hours during the Compensation Period for which E&Y seeks allowance of compensation for professional services of $3,000,000 and expenses of $44,540.

### (II)  Accounting Assistance Services

26. Under the Accounting Assistance Services project, E&Y has been providing accounting advisory and research services in connection with various accounting matters, which services may include consultations required for significant proposed or executed transactions; continuing education support; assistance with and review of registration statements, comfort letters and consents; information technology internal controls; services related to mergers, acquisitions, and divestitures; as and when requested by the Debtors, performing additional audit procedures with respect to any financial statements of a consolidated or non-consolidated affiliate of Delphi which are required to be filed with Delphi's annual report on Form 10-K pursuant to Article 3-09 of Regulation S-X of the Securities and Exchange Act of 1934, as amended, or otherwise; or providing services to audit the accounts, transactions and disclosures associated with the Debtors operating under Chapter 11 of the Bankruptcy Code.

27. In connection with the foregoing services, E&Y's professionals expended a total of 4,880.7 hours during the Compensation Period for which E&Y seeks allowance of compensation for professional services of $1,433,401 and expenses of $44,656.

### (III)  Tax Services

28. Under the Tax Services project, E&Y performed bankruptcy tax services on an as-requested basis by the Debtors, which services may include advising and assisting on the federal, state and local income tax consequences of proposed plans of reorganization, including, if necessary, assisting in the preparation of IRS ruling requests regarding the tax consequences of alternative reorganization structures; preparing calculations and applying the appropriate federal, state and local tax law to historic information regarding changes in ownership of the Debtors' stock to calculate whether any of the shifts in stock ownership may have caused an ownership

change that will restrict the use of tax attributes (such as net operating loss, capital loss, credit carry forwards, and build in losses) and the amount of any such limitation; analyzing information contained in historic tax returns and other relevant client records and application of relevant consolidated tax return rules, prepare calculations and apply the appropriate federal, state and local tax law to determine the tax asset and stock basis and deferred inter-company transactions and other consolidated return issues for each legal entity in the client's U.S. tax group; identifying major deferred inter-company transaction, excess loss accounts, etc.; preparing calculations and apply the appropriate federal, state and local tax law to determine the amount of tax attribute reduction related to debt cancellation income; or analyzing the federal, state and local tax treatment or consequences governing (i) the timing of deductions of plant shut down, severance and other costs incurred as the client rationalizes its operations including tax return disclosure and presentation, (ii) the costs and fees incurred by the client in connection with the bankruptcy proceedings, including tax return disclosure and presentation, (iii) interest and financing costs related to debt subject to the automatic stay, and new debt incurred as the client emerges from bankruptcy including tax return disclosure and presentation, (iv) the restructuring and rationalization of inter-company accounts, (v) proposed dispositions of assets during bankruptcy including tax return disclosure and presentation, (vi) restructuring the U.S. or worldwide corporate groups during bankruptcy including tax return disclosure and presentation, (vii) potential bad debt and worthless stock deductions including tax return disclosure and presentation, or (viii) employee benefit plans.

29.    In connection with the foregoing services, E&Y's professionals expended a total of 75.6 hours during the Compensation Period for which E&Y seeks allowance of compensation for professional services of $42,969, and expenses of $1,061.

### (IV)  Retention/Fee Application Services

30. The Retention/Fee Application Services project consisted of work relating to the organization and execution of the required bankruptcy retention process, including preparing and reviewing documents required for inclusion within the retention affidavit (including drafting engagement letters), discussions with internal and external legal counsel regarding filing requirements under the Applicable Guidelines and Orders, drafting and filing the completed retention affidavit in accordance with the Applicable Guidelines and Orders, collecting billing information and preparing/distributing the Monthly Fee Statements.  E&Y is not seeking reimbursement for the time spent by E&Y's in-house counsel nor fees paid by E&Y to its external bankruptcy counsel in connection with its retention or billing in these chapter 11 cases.

31. In connection with the foregoing services, E&Y's professionals expended a total of 586.4 hours during the Compensation Period for which E&Y seeks allowance of compensation for professional services of $123,500 (and no expenses).

32. Every effort has been made to reduce fees by assigning work to professionals with lower hourly rates whenever possible.  Upon information and belief, the services provided by Applicant were not duplicative in any manner with the services performed by other professionals retained by the Debtors.

33. All services rendered by the Professionals for the Debtors during the Compensation Period were performed in connection with the representation of Debtors in this chapter 11 case.

### THE REQUESTED COMPENSATION SHOULD BE ALLOWED

34. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330(a)(3) further provides that in determining the amount of reasonable compensation to be awarded,

> [T]he court shall consider the nature and extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

35.    In light of the foregoing, Applicant respectfully submits that the Services for which compensation is sought were necessary and beneficial to the estate and that the compensation sought is reasonable in light of the nature, extent and value of such services.

## NOTICE AND PRIOR APPLICATIONS

36.    Pursuant to paragraph 7 of the Interim Compensation Order, a complete copy of this Application with exhibits has been provided to the Notice Parties. Pursuant to paragraph 8 of the Interim Compensation Order, notice of the filing (including of all exhibits) of and the hearing on the Application has been provided by email (or First Class U.S. Mail if no email address is available) to all parties (other than the Notice Parties) who have filed a notice of appearance, based on the "2002 Entities List" available on the Debtors' "virtual docket" website (http://www.delphidocket.com). Upon request, E&Y shall provide a copy of the Application,

with all exhibits, to any party-in-interest who cannot access this Application on the Court's website or the Debtors' "virtual docket" website. In light of the nature of the relief requested herein, Applicant submits that no other or further notice need be provided.

37. No prior application for the relief sought herein has been made to this or any other Court.

**CONCLUSION**

WHEREFORE, Ernst & Young LLP respectfully requests that this Court enter an order (i) approving and allowing on a final basis compensation of fees for professional services rendered for the Debtors during the Compensation Period in the amount of $4,599,870, and reimbursement for actual and necessary expenses incurred during the Compensation Period in the amount of $90,257, for a total of $4,690,127; (ii) authorizing and directing the Debtors to pay E&Y the total unpaid fees and expenses, including any unpaid portion of the twenty percent (20%) of fees held back from payment, in the amount of $1,304,326; and (iii) granting such other and further relief as this Court deems just and equitable under the circumstances.

Dated: Detroit, Michigan
       November 30, 2006

By:    /s/ John A. Simon
       John A. Simon (admitted *pro hac vice*)
       FOLEY & LARDNER LLP
       One Detroit Center
       500 Woodward Ave, Suite 2700
       Detroit, MI  48226-3489
       Tel:  (313) 234-7100
       Fax:  (313) 234-2800

       and

       Michael P. Richman (MR 2224)
       FOLEY & LARDNER LLP
       90 Park Avenue, 37th Floor
       New York, NY 10016-1314
       Tel:  (212) 682-7474
       Fax: (212) 687-2329
       *Attorneys for Ernst & Young LLP*