Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11
                                              :
  Delphi Corporation, <u>et</u> <u>al</u>.,  :    Case No.  05-44481 (RDD)
                                              :    (Jointly Administered)
                         Debtors.             :
                                              :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COVER SHEET TO SECOND INTERIM FEE APPLICATION OF FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AND POSTED DURING THE PERIOD FROM JUNE 1, 2006 THROUGH SEPTEMBER 30, 2006**

NAME OF APPLICANT:                Fried, Frank, Harris, Shriver
                                   & Jacobson LLP

ROLE IN THE CASE:                 Attorneys for the Official Committee of
                                   Equity Security Holders.

DATE OF RETENTION:                May 8, 2006

COMPENSATION PERIOD:              June 1, 2006 through
                                  September 30, 2006

TOTAL BILLED HOURS:               5,260.40

COMPENSATION SOUGHT:              $2,673,791.00

EXPENSE REIMBURSEMENT SOUGHT:          $162,011.61

BLENDED RATE:                          $508.29

BLENDED RATE
(EXCLUDING PARAPROFESSIONALS):         $573.24

PRIOR APPLICATIONS:

    First Interim Fee Application:   Fees Requested:      $598,265.00
                                          Fees Awarded:        Not Yet Approved
                                          Expenses Requested:  $5,451.63
                                          Expenses Awarded:    Not Yet Approved

AGGREGATE AMOUNTS PAID TO DATE:        $2,322,862.99

568204

**HOURS BILLED**

| Name of Professional Individual | Year First Admitted to Practice | Hourly Billing Rate during Fee Period[1] | Total Hours Billed during Fee Period | Total Compensation Requested during Fee Period |
|---|---|---|---|---|
| Partners | | | | |
| Donald Carleen | 1984 | $780 | 6.50 | $5,070.00 |
| Dixie Johnson | 1987 | $795 | 26.90 | $21,385.50 |
| Jonathan Lewis | 1995 | $690 | 41.70 | $28,773.00 |
| Vivek Melwani | 1996 | $670 | 353.90 | $237,113.00 |
| Brad Eric Scheler | 1978 | $995 | 284.50 | $283,077.50 |
| Bonnie K. Steingart | 1980 | $780 | 512.60 | $399,828.00 |
| Debra Torres | 1984 | $750 | 223.20 | $167,400.00 |
| Counsel | | | | |
| Alan Resnick | 1973 | $850 | 36.90 | $31,365.00 |
| Special Counsel | | | | |
| John Brewer | 1994 | $595 | 267.70 | $159,281.50 |
| Associates | | | | |
| Kimberly Cain | 2005 | $315 | 6.50 | $2,047.50 |
| Marc Feldhamer | 2006 | $315 - $370 | 257.10 | $86,745.00 |
| Darcy M. Goddard | 2001 | $500 - $525 | 212.90 | $107,050.00 |
| Uri Horowitz | 2006 | $315 - $370 | 68.30 | $21,652.00 |
| Christina McGill | 2004 | $420 - $445 | 256.90 | $108,998.00 |
| Jordanna Nadritch | 2004 | $420 | 7.00 | $2,940.00 |
| Thomas Porcella | 2005 | $370 - $420 | 202.70 | $79,089.00 |
| Jennifer Rodburg | 2001 | $500 - $525 | 603.50 | $303,857.50 |
| Richard Slivinski | 2002 | $470 - $500 | 513.10 | $243,899.00 |
| Marissa Soto | Not Yet Admitted | $315 | 74.00 | $23,310.00 |
| Jason R. Wolf | 2002 | $445 - $470 | 368.50 | $166,017.50 |
| Summer Associates | | | | |
| John Eakins | N/A | $245 | 39.30 | $9,628.50 |
| Stephanie Froes | N/A | $245 | 8.50 | $2,082.50 |
| Zachary Hall | N/A | $245 | 37.00 | $9,065.00 |
| Jason Juceam | N/A | $245 | 26.80 | $6,566.00 |
| Rachel Levine | N/A | $245 | 26.60 | $6,517.00 |
| Kimberly Walker | N/A | $245 | 14.50 | $3,552.50 |
| Joelle Webb | N/A | $245 | 11.10 | $2,719.50 |
| Benjamin Whetsell | N/A | $245 | 52.00 | $12,740.00 |

---

[1]    Fried Frank's billing rates for associates are normally adjusted on September 1 of every year to reflect the associate's "graduation" to the next seniority class.  Thus, all hourly billing rate ranges represent the associate's hourly billing rate from June 1, 2006 through August 31, 2006 and from September 1, 2006 through September 30, 2006.  If there is no hourly billing rate range for an associate, the hourly billing rate represents that attorney's hourly billing rate in effect at the time such associate performed services for the Official Committee of Equity Security Holders.

| Name of Professional Individual | Year First Admitted to Practice | Hourly Billing Rate during Fee Period[1] | Total Hours Billed during Fee Period | Total Compensation Requested during Fee Period |
|---|---|---|---|---|
| Discovery Attorneys | | | | |
| Dean Rosen | 2000 | $200 | 90.30 | $18,060.00 |
| Paraprofessionals | | | | |
| Tom Adesko | N/A | $200 | 10.50 | $2,100.00 |
| Jeffrey Anderson | N/A | $220 | 9.00 | $1,980.00 |
| Jacqueline Bevilaqua | N/A | $170 | 6.80 | $1,156.00 |
| Vincent Bianco | N/A | $170 | 5.90 | $1,003.00 |
| Michael Birnbaum | N/A | $180 | 10.90 | $1,962.00 |
| Charlotte Borroughs | N/A | $170 | 22.60 | $3,842.00 |
| Marcia Early | N/A | $220 | 76.80 | $16,896.00 |
| Jeffrey Eigen | N/A | $185 | 60.50 | $11,192.50 |
| Laura Guido | N/A | $185 | 117.60 | $21,756.00 |
| Francis Hegarty | N/A | $210 | 8.80 | $1,848.00 |
| Elsie Larrea | N/A | $210 | 6.30 | $1,323.00 |
| Scott Leyse | N/A | $225 | 32.00 | $7,200.00 |
| Steven Lomperis | N/A | $225 | 5.80 | $1,305.00 |
| William Luebke | N/A | $235 | 5.30 | $1,245.50 |
| Eric Scott | N/A | $190 | 19.80 | $3,762.00 |
| Ellen Simsarian | N/A | $225 | 8.50 | $1,912.50 |
| Omar Solivan | N/A | $175 | 143.00 | $25,025.00 |
| Natalie Spano | N/A | $220 | 7.30 | $1,606.00 |
| Monika Swiatkowska | N/A | $210 | 7.00 | $1,470.00 |
| Joseph Tadera | N/A | $185 | 7.00 | $1,295.00 |
| Pamela Twyble | N/A | $200 | 8.40 | $1,680.00 |
| Gabor Wasserman | N/A | $195 | 16.10 | $3,139.50 |
| Other Professionals[2] | Various | $170 - $780 | 34.00 | $9,262.00 |
| **TOTAL** | | | **5,260.40** | **$2,673,791.00** |

---

[2]    This entry reflects charges incurred by professionals and paraprofessionals with less than 5 hours billed to the engagement.

Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Delphi Corporation, <u>et al.</u>, | : | Case No.  05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECOND INTERIM FEE APPLICATION OF FRIED, FRANK,
HARRIS, SHRIVER & JACOBSON LLP, COUNSEL FOR THE
OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, FOR
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED AND POSTED
DURING THE PERIOD FROM
JUNE 1, 2006 THROUGH SEPTEMBER 30, 2006

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), attorneys for the

Official Committee of Equity Security Holders (the "Equity Committee ") of Delphi Corporation

("Delphi," and together with the other above-captioned debtors, the "Debtors") in the above-

captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code"), hereby submits this second interim fee application (the "Fee

Application") for (i) payment of compensation in the amount of $2,637,791.00, for the

reasonable and necessary legal services rendered by Fried Frank on behalf of the Equity

Committee (the "Fees") during the period from June 1, 2006 through September 30, 2006 (the

"Fee Period"), and (ii) reimbursement in the amount of $162,011.61, for the actual and necessary

expenses incurred and posted (the "Expenses") during the Fee Period.  Fried Frank submits this

Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code and in accordance

with the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation and

Reimbursement of Expenses of Professionals, entered November 4, 2005 (Docket No. 869) (as

supplemented by Docket Nos. 2747, 2986, 3630, 4545, and 5310, the "Interim Compensation

Order"), the Amended Guidelines for Fees and Disbursements of Professionals in the Southern

District of New York Bankruptcy Cases, adopted by this Court on April 19, 1995 (the "Amended

Guidelines"), and the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, adopted on January

30, 1996 (the "UST Guidelines").  In support of this Fee Application, Fried Frank respectfully

states as follows:

PRELIMINARY STATEMENT

1.      The Equity Committee retained Fried Frank on May 8, 2006, subject to

Bankruptcy Court approval, which was subsequently obtained on June 19, 2006.  In assisting the

Equity Committee during the Fee Period, Fried Frank devoted, and through the present date,

Fried Frank continues to devote, a significant amount of professional effort to reviewing the

pressing transformational issues in the Chapter 11 Cases, including issues relating to labor,

pension, other benefits, and General Motors Corporation ("GM").  In addition, Fried Frank is

working with the Equity Committee, the Debtors, and other parties in interest in the Chapter 11

Cases to negotiate a consensual resolution of the Chapter 11 Cases in a way that maximizes

value for all of the Debtors' constituencies.

2.      The Interim Compensation Order provides that, no later than the last

calendar day of the second month following each four-month fee application period,

professionals may request court approval of the compensation and reimbursement of expenses

requested.  In accordance with the Interim Compensation Order, Fried Frank now submits its

second interim fee application.

BACKGROUND

3.        On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession.  This Court entered orders directing the joint administration of the Chapter 11 Cases.

4.        On October 17, 2005, the Office of the United States Trustee (the "UST") appointed the official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

5.        On March 30, 2006, the Court entered an order (the "Equity Committee Order") directing the UST to appoint a committee of equity security holders pursuant to section 1102 of the Bankruptcy Code.

6.        On April 28, 2006, the UST appointed the Equity Committee.  On May 8, 2006, the Equity Committee determined, subject to Court approval, to retain Fried Frank as its counsel.  The retention of Fried Frank *nunc pro tunc* to May 8, 2006 was approved by this Court by order dated June 19, 2006 (the "Retention Order").[1]

7.        On July 31, 2006, Fried Frank filed its first interim fee application for the period from May 8, 2006 through May 31, 2006 (the "First Interim Fee Application").  In accordance with the Interim Compensation Order, Fried Frank's First Interim Fee Application is scheduled to be heard on November 30, 2006.  The First Interim Fee Application seeks the allowance of (i) fees in the amount of $598,265.00 and expenses in the amount of $5,451.63.  In accordance with the Interim Compensation Order, on July 28, 2006, Fried Frank received payment of $484,063.63, which represented 80% of the fees and 100% of the expenses incurred by Fried Frank during the period from May 8, 2006 through May 31, 2006.  Also in accordance

---

[1]        A copy of the Retention Order is attached hereto as **Exhibit A**.

with the Interim Compensation Order, on August 14, 2006, Fried Frank received payment of

$59,826.50, which represented one-half of the amount of professional fees held back and

retained by the Debtors for the period ended on or before May 31, 2006.

8.    During the Fee Period, Fried Frank submitted monthly fee statements in

accordance with the Interim Compensation Order for the periods June 1, 2006 through June 30,

2006 (the "June Fee Period"), July 1, 2006 through July 31, 2006 (the "July Fee Period"), August

1, 2006 through August 31, 2006 (the "August Fee Period"), and September 1, 2006 through

September 30, 2006.  To date, Fried Frank has received payment equal to 80% of fees and 100%

of expenses incurred during the June Fee Period, the July Fee Period, and the August Fee Period.

<u>JURISDICTION AND VENUE</u>

9.    This Court has jurisdiction over the Fee Application pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this

Court pursuant to 28 U.S.C. § 1409.

<u>COMPLIANCE WITH APPLICABLE ORDERS AND GUIDELINES</u>

10.    This Fee Application has been prepared in compliance with the Interim

Compensation Order, the Amended Guidelines, and the UST Guidelines.  Pursuant to the

Amended Guidelines, a certification regarding compliance is attached hereto as **Exhibit B**.

<u>SUMMARY OF APPLICATION</u>

11.    Since its retention in the Chapter 11 Cases, Fried Frank has acted as

counsel to the Equity Committee and advised the Equity Committee with respect to the

numerous issues that confront the Debtors and the Debtors' equity security holders, consistent

with the Equity Committee Order.  As more fully described below, the professional services

rendered by Fried Frank have included, among others:

(i)    assisting, advising and representing the Equity Committee in its meetings
with the Debtors, the Creditors' Committee, and potential investors;

(ii)    assisting, advising and representing the Equity Committee in evaluating
and analyzing the various labor issues involving the Debtors, their unions,

4

and their workforce, including the 1113/1114 Motion (as defined below) and the Debtors' attrition programs;

(iii)     assisting, advising and representing the Equity Committee in its evaluation of various claims by and against GM, including reviewing and responding to the Creditors' Committee's motion for standing to bring claims against GM on behalf of the Debtors;

(iv)     assisting, advising and representing the Equity Committee in reviewing and determining the Equity Committee's rights and obligations;

(v)     assisting the Equity Committee in evaluating the various term sheets and framework restructuring proposals developed by various parties in interest in the Chapter 11 Cases; and

(vi)     assisting, advising and representing the Equity Committee in the performance of its duties and powers under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in accordance with the scope of the Equity Committee's mandate imposed by the Court, and assisting the Equity Committee in becoming fully versed in issues of the Chapter 11 Cases.

12.     During the Fee Period, partners, counsel and associates of Fried Frank have devoted many hours to the Chapter 11 Cases, and have addressed, and continue to address, the issues and concerns of the Equity Committee in an effort to assist with the reorganization of the Debtors' business.

13.     During the Fee Period, the partners, counsel, associates and paraprofessionals of Fried Frank devoted approximately 5,260 hours in the rendition of professional services on behalf of the Equity Committee. A schedule setting forth the number of hours expended by each of the partners, counsel, associates and paraprofessionals of Fried Frank accompanies this Fee Application as **Exhibit C**.

14.     In addition, Fried Frank is requesting reimbursement of disbursements in the amount of $162,011.61for expenses incurred and posted during the Fee Period. With respect to the disbursements incurred and posted, Fried Frank has eliminated a number of disbursements that are non-compensable. A schedule setting forth the categories of expenses for which Fried

Frank is seeking reimbursement and the total amount for each expense category is attached hereto as **Exhibit D**.

15.    Pursuant to section II.D. of the UST Guidelines, a schedule setting forth a description of the project categories utilized by Fried Frank in the Chapter 11 Cases, the number of hours expended by the partners, counsel, associates, and paraprofessionals of Fried Frank by project category, and the aggregate fees associated with each project category is attached hereto as **Exhibit E**.

16.    There does not exist any agreement or understanding between Fried Frank and any other entity for the sharing of compensation to be received for services rendered in or in connection with the Chapter 11 Cases.

<u>REASONABLE AND NECESSARY SERVICES RENDERED BY FRIED FRANK</u>

17.    Set forth below is a description of the services rendered during the Fee Period.  The attorneys and paraprofessionals of Fried Frank maintained daily detailed records of their time concurrently with the rendition of professional services.  To the extent possible, the details of each and every conference, telephone conversation, negotiating session, letter, memorandum, factual investigation, drafting activity and research project that occupied the time of a Fried Frank professional were set forth in such time records.  Accompanying this Fee Application as **Exhibit F** are compilations of the contemporaneous daily time entries recorded by Fried Frank's attorneys and paraprofessionals during the Fee Period.  Those entries describe in detail the services rendered by each attorney and paraprofessional, as corrected to reflect errors that were found in Fried Frank's review.  Accordingly, the following is intended to serve as a summary description of the principal professional services Fried Frank rendered, and to highlight the benefits that were thereby conferred upon the Equity Committee.

<u>General Committee Matters</u>

18.    Fried Frank rendered a total of 1,108.00 hours and $666,172.00 in services falling within the category of "General Committee Matters."  This category includes time spent on various matters that did not expressly fall into other categories, including participating in

6

various meetings and telephone conferences with the Debtors, the Creditors' Committee, and other key parties in the Chapter 11 Cases. In addition, Fried Frank spent numerous hours researching and discussing general issues related to the Debtors' restructuring and preparing and revising memoranda necessary to understand those issues that do not fall into the more specific categories set forth in this Fee Application. Fried Frank also worked to obtain access to, and then to review and analyze, certain documents provided by the Debtors to the Securities and Exchange Commission (the "SEC") in connection with the SEC's investigation of the Debtors' accounting practices. Moreover, Fried Frank lawyers also attended to the general management of the Equity Committee and its members.

19. For example, during the Fee Period, Fried Frank worked with the Debtors to negotiate terms under which the Debtors would consent to the Equity Committee's retention of a financial advisor. In that regard, Fried Frank worked with the Debtors to negotiate a proposed compensation structure and scope of services to be provided by the financial advisor ultimately selected by the Equity Committee. Fried Frank then facilitated the Equity Committee's selection of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") as financial advisors. Fried Frank worked with the Debtors, the Creditors' Committee, and the UST on the retention of Houlihan Lokey as financial advisors to the Equity Committee, *nunc pro tunc* to July 31, 2006, to ensure that Houlihan Lokey's compensation and the scope of its work were acceptable to Houlihan Lokey, the Debtors, and the Equity Committee. Fried Frank also worked with Houlihan Lokey, the UST, and the Debtors to resolve concerns those parties had with the terms of the Equity Committee's retention of Houlihan Lokey.

20. During the Fee Period, the Debtors, the Creditors' Committee, and other parties in interest invited the Equity Committee to participate in the ongoing discussions relating to the framework of a consensual restructuring of the Debtors. In connection with the framework discussions, Fried Frank worked with Houlihan Lokey and the Equity Committee to evaluate various restructuring proposals and term sheets and to formulate the term sheet that the Equity Committee provided to the Debtors.

7

Meetings and Communications with Equity Holders

21.    Fried Frank rendered a total of 548.10 hours and $365,596.00 in services falling within the category of "Meetings and Communications with Equity Holders." This category includes time Fried Frank spent preparing for and attending regular weekly meetings with the Equity Committee and related communications with the Equity Committee. The weekly meetings served to keep the Equity Committee updated on all developments and issues facing the Debtors and equity holders. This category also includes time Fried Frank spent responding to questions from equity holders who are not members of the Equity Committee.

Hearings

22.    Fried Frank rendered a total of 56.80 hours and $39,217.50 in services falling within the category of "Hearings." This category includes time Fried Frank attorneys spent attending omnibus hearings on June 19, July 19, August 17, and September 14. In addition, this category includes time Fried Frank attorneys spent attending status conferences on the Debtors' Motion for Order Under 11 U.S.C. Section 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. Section 1114(g) Authorizing Modification of Retiree Welfare Benefits (the "1113/1114 Motion") and the Debtors' Motion for Order Under 11 U.S.C. § 365 Fed. R. Bankr. P. 6006 Authorizing Rejection of Certain Executory Contracts with General Motors Corporation.

Miscellaneous Litigation and Motions

23.    Fried Frank rendered a total of 198.90 hours and $100,005.00 in services falling within the category of "Miscellaneous Litigation and Motions." This category includes time Fried Frank spent analyzing, researching, and preparing memoranda addressing issues relating to various pleadings filed during the Fee Period. It also includes time spent preparing for each of the omnibus hearings and status conferences that occurred during the Fee Period.

Pension Issues

24.    Fried Frank rendered a total of 51.00 hours and $17,814.00 in services falling within the category of "Pension Issues."  This category includes time Fried Frank spent analyzing and researching various issues relating to the Debtors' pension plans and pension liabilities in the Chapter 11 Cases.

1113/1114 Issues

25.    Fried Frank rendered a total of 237.50 hours and $86,344.00 in services falling within the category of "1113/1114 Issues."  This category includes time Fried Frank spent analyzing, researching, and addressing issues related to sections 1113/1114 of the Bankruptcy Code and the 1113/1114 Motion, including reviewing the declarations submitted by various witnesses and the deposition testimony of certain of those witnesses.  Fried Frank also spent time communicating with the Equity Committee with respect to these issues and responding to questions posed by various members of the Equity Committee.

Other Labor Matters

26.    Fried Frank rendered a total of 258.40 hours and $133,244.50 in services falling within the category of "Other Labor Matters."  This category includes time Fried Frank spent reviewing labor issues that do not fall into the category of "1113/1114 Issues," including reviewing and analyzing the various agreements between the Debtors and their unions and agreements between the Debtors and GM relating to the Debtors' labor force.  In addition, Fried Frank prepared and revised memoranda relating to the various OPEB issues and their costs and benefits.  Fried Frank also reviewed and analyzed the Debtors' attrition programs and responded to questions posed by various members of the Equity Committee regarding these programs.  Fried Frank also drafted and filed a limited objection to the Debtors' supplemental attrition program.

Relationship with Primary Customer

27.    Fried Frank rendered a total of 2,636.90 hours and $1,196,141.50 in services falling within the category of "Relationship with Primary Customer."  This category

includes time Fried Frank spent reviewing and analyzing the relationship between the Debtors

and GM, including potential claims GM may assert against the Debtors in the Chapter 11 Cases

and the causes of action and defenses the Debtors have against GM.  In addition, in response to a

request from counsel to the Debtors, Fried Frank devoted a substantial amount of time during the

Fee Period preparing a letter to counsel to the Debtors discussing the claims, causes of actions,

and defenses the Equity Committee believes exist against GM and the basis for such claims,

causes of action, and defenses.  Fried Frank reviewed and analyzed the Creditors' Committee's

motion for standing to pursue the Debtors' claims against GM on the Debtors' behalf and spent a

significant amount of time during the Fee Period drafting an objection and supplemental

objection to that motion.  Fried Frank also spent time reviewing and summarizing the various

documents produced to the Equity Committee by the Debtors and by GM in connection with the

Equity Committee's investigation and analysis of potential claims, causes of action, and defenses

against GM.

Fee Applications and Retention

28.    Fried Frank rendered a total of 156.80 hours and $ 69,226.50 in services

falling within the category of "Fee Applications and Retention."  This category includes time

Fried Frank spent preparing, reviewing, and revising the First Interim Fee Application and Fried

Frank's monthly fee statements that were served in accordance with the Interim Compensation

Order during the Fee Period.  In addition, Fried Frank worked to implement task codes and

electronic filing procedures for its monthly fee statements in accordance with the guidelines

promulgated by Legal Cost Control, Inc. on behalf of the Fee Committee (as such term is defined

in the Interim Compensation Order) established in the Chapter 11 Cases.

## FRIED FRANK'S FEES AND EXPENSES ARE FAIR AND REASONABLE

29.    In accordance with the factors enumerated in section 330 of the

Bankruptcy Code, Fried Frank believes that the total fees and expenses for the Fee Period are fair

and reasonable in view of the time spent, the complexity and intricacy of the proceedings, and

the problems and issues encountered.  Fried Frank and the Equity Committee worked diligently

10

throughout the Fee Period to address key issues in the Chapter 11 Cases as expeditiously as

possible and to ensure that their efforts were within the scope of the Equity Committee's

mandate, as set forth in the Equity Committee Order.  Therefore, in accordance with the factors

enumerated in 11 U.S.C. §330(a)(3), Fried Frank believes that the compensation sought herein

should be approved.

## APPLICABLE AUTHORITY

30.    In awarding compensation pursuant to section 328 of the Bankruptcy Code

to counsel for an official equity committee, this Court must take into account the reasonableness

of the terms and conditions of employment.  Section 328(a) of the Bankruptcy Code provides in

pertinent part:

> (a)    The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the employment
> of a professional person under section 327 or 1103 of this title, as the case
> may be, on any reasonable terms and conditions of employment, including
> on a retainer, on an hourly basis, or on a contingent fee basis.
> Notwithstanding such terms and conditions, the court may allow
> compensation different from the compensation provided under such terms
> and conditions after the conclusion of such employment, if such terms and
> conditions prove to have been improvident in light of developments not
> capable of being anticipated at the time of the fixing of such terms and
> conditions.

11 U.S.C. § 328(a).

31.    In awarding compensation to professionals pursuant to section 330 of the

Bankruptcy Code, this Court must take into account the cost of comparable non-bankruptcy

services, among other factors.  Section 330(a) of the Bankruptcy Code provides in pertinent part:

> (1)    . . . [T]he court may award to a trustee, an examiner, a
> professional person employed under section 327 or 1103 -
>
> (A)    reasonable compensation for actual, necessary
> services rendered by the trustee, examiner, professional person,
> or attorney and by any paraprofessional person employed by
> any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

\*     \*     \*

(3)   (A)   In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

32.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, Fried Frank respectfully submits that the fees and expenses incurred in the course of rendering professional services are actual, necessary and reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in non-bankruptcy cases, so as to best serve the needs of the Equity Committee and the Debtors' estate.  Fried Frank submits further that the legal services performed herein among partners, associates, and paraprofessionals have been executed in accordance with the principles outlined above, and moreover, in a manner consistent with the overall goal of Fried Frank to provide the highest quality of legal representation at a reasonable cost.  Fried Frank has demonstrated by this Fee Application that the work it has done on behalf of the Equity Committee was necessary, reasonable and benefits the Debtors' equity security holders, unsecured creditors and the Debtors' estates.

33.    This Fee Application clearly reflects (a) the number of hours of recorded time Fried Frank has devoted to the performance of legal services; (b) the number of hours worked by each of Fried Frank's professionals and paraprofessionals and the hourly rate customarily charged by such persons; (c) a detailed description of the services provided by Fried Frank's professionals and paraprofessionals during each of those hours; and (d) the quality and nature of the services provided by each of Fried Frank's professionals and paraprofessionals. Fried Frank submits that its fees and expenses were actual, necessary, reasonable, justified and should, therefore, be allowed in full.

<u>COMPENSATION REQUESTED</u>

34.    Given the circumstances of the Chapter 11 Cases, the professional services rendered by Fried Frank require an expenditure of a great deal of time and effort. During the Fee Period, approximately 5,260 recorded hours were expended by Fried Frank's partners, counsel, associates and paraprofessionals in the rendition of Fried Frank's professional services.

35.    Fried Frank believes that its services were rendered in a highly efficient manner, by attorneys with high levels of skill in the areas for which they rendered services. The core group of attorneys working on this matter has expended considerable time in connection with the Equity Committee's general legal needs and in furtherance of the Equity Committee's goal of furthering the interests of all equity security holders. This experienced group of attorneys makes every effort to ensure that the Chapter 11 Cases progress in as efficient and expeditious a manner as possible and result in the successful reorganization of the Debtors.

36.    For all the foregoing reasons, Fried Frank respectfully requests approval and allowance of its compensation in the amount of $2,673,791.00, with an authorization for, and direction to, the Debtors to disburse such amounts to Fried Frank. This Fee Application is Fried Frank's second interim fee application for allowance of fees and disbursements incurred by Fried Frank as counsel to the Equity Committee. An allowance of compensation in the amount sought in this Fee Application would result in a blended aggregate average billing rate of

13

approximately $508.29 per hour and a blended rate (excluding paraprofessionals) of approximately $573.24 per hour (based on recorded hours).

EXPENSES

37.    As noted above, Fried Frank incurred and posted disbursements in the amount of $162,011.61 for actual and necessary expenses incurred and recorded during the Fee Period.  These disbursements are itemized in **Exhibit D**.

38.    Fried Frank's billing rates do not include components for duplicating, word processing, and other extraordinary charges that may be incurred by particular clients because of the exigencies of time and volume of demand.  Fried Frank's billing method, whereby only the clients who use copying, word processing and other office services are charged for such services, maximizes fairness to all clients.  Fried Frank commenced a comprehensive study and review to determine its actual costs per page for duplicating.  Such study and review determined that, at the present time, Fried Frank's actual duplicating cost is 12¢ per page.

39.    Fried Frank's billing rates do not include a component for word processing as part of overhead.  Some time ago, Fried Frank analyzed its method of charging clients for word processing services and, specifically whether it was appropriate to charge clients for word processing as part of overhead or based on the extent to which word processing was used.  After such analysis, Fried Frank elected to keep its charges for word processing as a disbursement.  Fried Frank concluded that it was fairer to its clients not to increase its billing rates to account for word processing services that might or might not be used by the client.  In this way, only clients who used such services would be charged for services.

40.    The time constraints imposed by the circumstances of these Chapter 11 Cases, and by Fried Frank's late appearances in the Chapter 11 Cases required Fried Frank's attorneys and other employees to devote substantial amounts of time during the evenings and on weekends to the performance of legal services on behalf of the Equity Committee.  As a consequence, Fried Frank was required to incur overtime secretarial charges to discharge its professional responsibilities.

14

41.    Fried Frank attempted to reduce overtime secretarial charges and to limit them to instances where such were necessary, by encouraging its attorneys to use a secretarial pool. If a secretary was not needed at the attorney's desk for the entire evening, the attorney was required to bring his or her work to the firm's secretarial pool. The client was then only charged for the word processing charges associated with the document, rather than charging the client for a secretary spending an entire evening at a desk whether or not the attorney actually used the secretary for the entire time.

42.    Fried Frank's attorneys and other employees who worked late into the evenings were reimbursed for their reasonable meal costs and their transportation costs home. Such transportation costs are necessary expenses because it is a Fried Frank policy to ensure safe transportation for its attorneys and staff after the hours when public transportation cannot be deemed safe. Fried Frank's regular practice is to charge its clients for these and other out-of-pocket disbursements incurred during the regular course of the rendition of services.

43.    Since certain members of the Equity Committee and other key parties in interest in the Chapter 11 Cases, and/or their counsel, are located outside of New York, some long-distance telephone calls were required.[2] Fried Frank also incurred expenses for delivery of documents. Fried Frank also seeks reimbursement for transportation costs and reasonable meal costs incurred by Fried Frank's attorneys and administrative support staff working overtime and late into the evening. Fried Frank made every effort to minimize its disbursements in providing its legal services to the Equity Committee. The expenses incurred in the rendition of professional services were necessary, reasonable and justified under the circumstances to serve the needs of the Equity Committee and were billed at rates and in accordance with practices customarily employed by Fried Frank and generally accepted by Fried Frank's clients.

---

[2]    Due to delays caused by accounting processing procedures, certain long-distance telephone calls that were made during the Fee Period may not be included in the Fee Application. Fried Frank reserves the right to seek such expenses in a subsequent fee application.

## WAIVER OF MEMORANDUM OF LAW

44.    Pursuant to Local Rule 9013-1(b), Fried Frank respectfully requests that the Court waive the requirement that Fried Frank file a memorandum of law in support of this Fee Application, since this Fee Application raises no novel issues of law.

## NOTICE

45.    In compliance with the Interim Compensation Order, notice of the filing of this Fee Application has been provided to all parties who have filed a notice of appearance with the Clerk of this Court and requested notice of pleadings in these Chapter 11 Cases.  In addition, the Fee Application in its entirety has been served on the following parties: (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Att'n: David Sherbin, Esq., (ii) counsel to the Debtors, Skadden, Arps, Slate & Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Attn.: John Wm. Butler Jr., (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004, Att'n: Alicia M. Leonhard, Esq., (iv) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022-4802, Att'n: Robert J. Rosenberg, Esq., (v) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Att'n: Marissa Wesley, Esq., (vi) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Att'n: Donald Bernstein, Esq. and Brian Resnick, Esq., (vii) the members of the Fee Review Committee, and (viii) Legal Cost Control Inc., 255 Kings Highway East, Haddonfield, NJ 08033, Att'n: Susan Trevejo.  In light of the nature of the relief requested, the Equity Committee submits that no other or further notice is necessary.

## CONCLUSION

46.    Although every effort has been made to include all Fees and Expenses incurred in the Fee Period in this Fee Application, some Fees and Expenses might not be included in this Fee Application due to delays caused by accounting processing procedures.

16

Fried Frank reserves the right to make further application to this Court for allowance of such Fees and Expenses not included herein.  Subsequent fee applications will be filed in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules, and the Interim Compensation Order.

        47.    For the reasons set forth above, Fried Frank respectfully submits that the professional services rendered and disbursements incurred and posted on behalf of the Equity Committee were of substantial benefit to the Equity Committee, other equity holders, creditors and the Debtors.  Fried Frank submits further that it provided such services in an economical and efficient manner.  Accordingly, Fried Frank respectfully requests that the relief requested in this Fee Application be granted in full.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Fried Frank requests that it be allowed and paid interim compensation for its Fees and Expenses in the total amount of $2,835,802.61 consisting of (a) $2,673,791.00 for reasonable and necessary professional services rendered by Fried Frank, and (b) $162,011.61 for actual and necessary Expenses incurred on behalf of the Equity Committee.  Fried Frank further requests that the total amount of $2,835,802.61 be paid as an administrative expense of the Debtors' estates.

Dated: New York, New York
       November 30, 2006

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By:  /s/ Bonnie Steingart
     Bonnie Steingart (BS-8004)
     Debra M. Torres (DT-9093)

One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity
Security Holders*

566640

18