UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DELPHI CORPORATION, et al.,

Debtors.

Hon. Robert D. Drain
Chapter 11
Case No. 05-44491 (RDD)

(Jointly Administered)

LABORSOURCE 2000, INC.,
a Michigan corporation,

Claimant.

_____/

| | |
|---|---|
| SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>By: John Wm. Butler, Jr. (JB 4711)<br>    John K. Lyons (JL 4951)<br>    Ron E. Meisler (RM 3026)<br>333 West Wacker Drive, Ste. 2100<br>Chicago, Illnois 60606<br>(312) 407-0700<br>    and<br>SKADDEN, ARPS, SLATE,<br>MEAGHER & FLOM LLP<br>By: Kayalyn A. Marafioti (KM 9632)<br>    Thomas J. Matz (TM 5986)<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>Attorneys for Delphi Corporation, et al.<br>Debtors and Debtors-in Possession | LAW OFFICES OF HARVEY ALTUS, P.C.<br>By: Harvey Altus (P-30846)<br>Attorney for Claimant LaborSource 2000<br>30500 Northwestern Hwy., Ste. 500<br>Farmington Hills, Michigan 48334<br>(248) 626-7211 |

_____/

## LABORSOURCE 2000, INC.'S RESPONSE TO
## DEBTORS' THIRD OMNIBUS OBJECTION TO ITS CLAIM No. 2707

### Background and Factual Basis for Claim

LaborSource 2000, Inc. is a personnel company which provided specialized contract labor services in the automotive industry. Its claim is based on litigation pending when Delphi filed its petition in bankruptcy. Its Proof of Claim filed herein is supported by the Complaint filed in state

court and supporting exhibits, which pleadings are attached to the Claim and incorporated herein by reference.

Successfully responding to a bid request of Delphi Automotive Systems, LLC (bid dated August 27, 2002), LaborSource and Delphi entered into an agreement whereby LaborSource provided labor to Delphi's automotive cockpit manufacturing plant in Lansing, Michigan. These cockpits were being produced relative to an underlying agreement between Delphi and General Motors.

After the parties had entered into their agreement and LaborSource had begun performance, it was advised of requirements and events which were not previously disclosed and which were not part of the original bid request nor part of the contractual agreement. For example, LaborSource was expected to honor a union contract covering workers on the project even though it was not a party to that contract. Further, the project was subject to and in fact suffered significant "down time," being periods when Delphi ordered work on the project to cease, and that it was also subject to early cancellation by General Motors, which in fact did occur.

LaborSource was paid only for hours actually worked; it made no money during periods of down time, even though it was expected to maintain its own fixed costs, such as employee health care costs, insurance expenses, vacation and holiday pay and workers compensation expenses.

LaborSource suffered tremendous losses and advised Delphi that it could not continue the project while meeting these additional conditions. However, in order to keep LaborSource servicing the project, Delphi represented that it had other, more profitable projects that it would grant to LaborSource in order to compensate for the losses being incurred with respect to the instant project. Despite applying for these other projects, LaborSource was never granted any.

Two other factual bases serve to support LaborSource's claim and deserve quick note. First, during the term of the project, General Motors became aware of the economic distress to which LaborSource and other suppliers were subject. It provided Delphi with financial assistance and concessions, which it expected would be passed on to LaborSource, in order that the project could continue and produce the parts that GM required. Delphi accepted these concessions and assistance but retained the benefits without even advising LaborSource that same had been made.

Finally, Delphi offered to its suppliers, including LaborSource, a "Supplier Suggestion Program" through which Delphi invited cost and expense-saving ideas from its suppliers. If a suggestion is utilized, Delphi was to compensate the supplier by paying one-half of the money saved. LaborSource in fact made a suggestion described as a "Job Bank." While it advised LaborSource that it was rejecting the suggestion, Delphi nevertheless utilized it, advertised the Job Bank program and realized savings therefrom. When confronted by LaborSource, Delphi failed to specify its savings under the program or pay to LaborSource one-half of same.

### Legal Basis for Claim/Supporting Documentation

The facts support several causes of action, which are set forth in detail in LaborSource's Complaint. They include Fraudulent Misrepresentations and Omissions, Breach of Contract and Third Party Beneficiary, Conversion, Breach of Unilateral Contract and Implied Contract and Promissory Estoppel. The Complaint includes an action for an Accounting, since much of LaborSource's claim finds support in Delphi's own books and records. Unfortunately, before LaborSource was able to engage in necessary discovery, its lawsuit was subjected to the Automatic Stay provision of the Bankruptcy Code.

Delphi's basis for its objection to LaborSource's claim is that it is "unsubstantiated;" i.e., that the liabilities or amounts claimed are not owing pursuant to Delphi's own books and records.

LaborSource admittedly suffers from a certain handicap in pursuing its claim in that the evidence upon which it would rely, including documentary evidence, is contained within the files and records of the Debtor itself and would have been discoverable had LaborSource been able to pursue its litigation. Indeed, the extent of the documentation is itself not entirely known. For Delphi to object to a claim as "unsubstantiated" while denying LaborSource the ability to discover otherwise is entirely self serving and unfair to a claimant with legitimate causes of action.

At a minimum, the documents on which LaborSource would rely include the Bid Request (Exhibit "A" to LaborSource's Complaint) already attached to its Claim, and the resulting Purchase Order, attached as Exhibit "B." Other documents in LaborSource's own files may become pertinent depending on what specific facts are contested by Delphi, but are simply too voluminous to anticipate and inclusively integrate with this Response. Still other documents include, *inter alia*, those in support of damages (please see **Allowable Amount of Claim**, *infra*) which include certain employee records, LaborSource's books of account, tax returns, and claims against it brought by others.

## Allowable Amount of Claim

LaborSource's claim is unliquidated and in the amount of $2,284,000. Determining how much would be allowed upon liquidation is no easy task since, as explained above, so much supporting evidence is within the Debtor's own possession. For example, LaborSource's reward for its Job Bank suggestion is one-half of the money Delphi saved by using the idea. Without the ability to engage in discovery, how can LaborSource know the dollar amount of this element of damage?

For purposes of this Response to Objections, however, let us first look at the revenue lost to LaborSource due to unexpected down time (22 weeks during the life of the project) and early

termination (53 weeks additional; the project was priced to run through June, 2006 but terminated May 6, 2005). LaborSource supplied 197 employees for which Delphi paid $840 each per week ($21 per hour at 40 hours) or $165,480.00 per week for the workforce. For the 75 weeks that the project was down, LaborSource lost revenue of $12,411,000.00. With a profit margin of $3 per hour per employee, LaborSource lost profits of $1,773.000.00.

Additional damages include increased workers compensation premiums totaling $320,000.00, necessitated due to unanticipated union requirements; $65,000.00 in outstanding employee medical bills resulting from the cancellation of medical insurance that LaborSource could not sustain, and $160,000.00 additional interest and expenses for bridge loans LaborSource sought to maintain.

LaborSource believes the allowable amount of the claim is the $2,284,000.00 claimed, which does not include losses on the Job Bank issue.

### Reply to Response; Authority to Resolve Claim

The Reply to this Response is to be sent to the address on the proof of claim, which is counsel's address, below. Further, the undersigned counsel has ultimate authority to resolve this claim.

Respectfully submitted,

LAW OFFICES OF HARVEY ALTUS, P.C.

/s/ Harvey Altus
By: Harvey Altus (P30846)
Attorney for Claimant LaborSource 2000
30500 Northwestern Hwy., Ste. 500
Farmington Hills, MI 48334
(248) 626-7211

DATED: November 20, 2006