**Hearing Date and Time: March 22, 2007 at 10:00 a.m.**
**Objection Deadline: March 15, 2007 at 4:00 p.m.**

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179
Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                                           :
                                                           :
                                                           :
In re:                                                     :      Chapter 11
                                                           :
DELPHI CORPORATION, et al.,                                :      Case No.  05 – 44481 (RDD)
                                                           :
                    Debtors.                               :      (Jointly Administered)
                                                           :
                                                           :
                                                           :
-----------------------------------------------------------x
```

COVER SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

NAME OF APPLICANT:        Shearman & Sterling LLP

TIME PERIOD:              June 1, 2006 through September 30, 2006

ROLE IN THE CASE:         Special Counsel to the Debtors and the Debtors in Possession

DATE OF FINAL RETENTION:  November 4, 2005

APPLICATION:              Fees Requested:                        $262,199.10
                          Expenses Requested:                     $20,500.98
                          Existing Holdback Requested (20%):      $52,439.82

PRIOR APPLICATION:        July 31, 2006

THIS IS A(N):             X  Interim     ___ Final Application

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179
Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
:
:
**In re:**                                                    :        **Chapter 11**
:
**DELPHI CORPORATION, et al.,**                               :        **Case No.  05 – 44481 (RDD)**
:
                                        **Debtors.**          :        **(Jointly Administered)**
:
:
:
---------------------------------------------------------------x


**THIRD APPLICATION OF SHEARMAN & STERLING LLP, AS
SPECIAL COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF INTERIM
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM JUNE 1, 2006 THROUGH SEPTEMBER 30, 2006**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Shearman & Sterling LLP ("S&S"), special counsel to Delphi Corporation and

certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submits this application (this "Application"),

pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the interim allowance of compensation for professional services performed by S&S for the

period from June 1, 2006 through September 30, 2006 (the "Compensation Period"), and for

reimbursement of actual and necessary expenses incurred during the Compensation Period and

respectfully represent:

**Professional Compensation
and Reimbursement of Expenses Requested**

1.      S&S prepared this application in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"),

the Order Under 11 U.S.C. § 331 Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals (Docket No. 869) (the "Monthly Compensation

Order,") the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals (Docket No. 2147)(the

"Supplemental Compensation Order"), the Second Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 2986)(the "Second Supplemental Compensation Order"), the Third

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals (Docket No. 3630)(the "Third Supplemental

Compensation Order") including the Fee Committee And Fee Procedures Protocol approved by

the Court (the "Fee Protocol"), the Fourth Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 4545)(the "Fourth Supplemental Compensation Order") and the Fifth

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals (Docket No. 5310)(the "Fifth Supplemental

Compensation Order" together with the Local Guidelines, UST Guidelines, Monthly

Compensation Order, Supplemental Compensation Order, Second Supplemental Compensation

Order, Third Supplemental Compensation Order, Fee Protocol and the Fourth Supplemental

Compensation Order, the "Guidelines").  Pursuant to the Local Guidelines, a certification

regarding compliance with the Guidelines is attached hereto as Exhibit A.

    2.  This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and

1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28

U.S.C. § 157(b)(2).

    3.  S&S seeks allowance of the interim compensation for professional

services rendered to the Debtors during the Compensation Period, in the aggregate amount of

$262,199.10 and for reimbursement of expenses incurred in connection with the rendition of

such services in the aggregate amount of $20,500.98   During the Compensation Period, S&S

attorneys and paraprofessionals expended a total of 668.4 hours for which compensation is

requested.

    4.  Pursuant to Bankruptcy Rule 2016(b), there is no agreement or

understanding between S&S and any other person, other than members of the firm, for the

sharing of compensation to be received for services rendered in these chapter 11 cases.

    5.  S&S's fees in these cases are billed in accordance with its existing billing

rates and procedures in effect for the representation of the Debtors in relation to the chapter 11

cases (the "Bankruptcy Matters") and for the representation of Delphi Corporation, affiliated

non-debtors, certain current and former officers and certain current and former directors in

relation to an investigation and several litigation matters (the "Litigation Matters," and together

with the Bankruptcy Matters, "Delphi Matters") during the Compensation Period.  The rates S&S

charges for the services rendered by its professionals and paraprofessionals in relation to the

Bankruptcy Matters are generally the same rates S&S charges for professional and

paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are

reasonable based on the customary compensation charged by comparably skilled practitioners in

comparable nonbankruptcy cases in a competitive national legal market.  The rates S&S charges

for the services rendered by its professionals and paraprofessionals in relation to the Litigation

Matters are discounted pursuant to a separate agreement between Debtors and S&S as further

described herein.

6.      Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule

setting forth all S&S professionals and paraprofessionals who have performed services in

relation to the Delphi Matters during the Compensation Period, the capacities in which each such

individual is employed by S&S, the department in which each individual practices, the hourly

billing rate charged by S&S for services performed by such individual, the aggregate number of

hours expended in this matter and fees billed therefor, and the year in which each professional

was first licensed to practice law.

7.      Annexed hereto as Exhibit C is a schedule specifying the categories of

expenses for which S&S is seeking reimbursement and the total amount for each such expense

category.

8.      Pursuant to Section II.D of the UST Guidelines, annexed hereto as

Exhibit D is a summary by project categories of the services performed by S&S during the

Compensation Period.

9.      S&S maintains computerized records of the time spent by all S&S
attorneys and paraprofessionals in connection with the Delphi Matters.  Subject to redaction for
the attorney-client privilege or confidential information where necessary to protect the Debtors'
estates, copies of these computerized records have been furnished to the United States Trustee
for the Southern District of New York (the "U.S. Trustee"), the attorneys for the official
committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors
Committee"), the attorneys for the committee of equity security holders appointed in these
chapter 11 cases (the "Equity Committee"), the attorneys for the Debtors prepetition lenders (the
"Prepetition Lenders"), the attorneys for the Debtors' postpetition lenders (the "DIP Lenders")
and the joint fee review committee (the "Fee Review Committee") in connection with S&S's
monthly fee statements.

10.     As of the date hereof, S&S maintains a retainer in the amount of
$325,324.92 for professional service performed and to be performed, and expenses incurred and
to be incurred, in connection with the Delphi Matters.

11.     Also in accordance with the Monthly Compensation Order, S&S
submitted monthly statements to the Debtors (and certain other parties-in-interest as set forth in
the Monthly Compensation Order), and received payments on account of monthly statements
submitted during the Compensation Period, as follows:

| Monthly Statement | Total Fees | 80% of Fees | 20% of Fees | Expenses (100%) |
|---|---|---|---|---|
| June 1, 2006 – June 30, 2006 | $123,104.20 | $98,483.36 Payment Received | $24,620.84 | $11,848.26 Payment Received |
| July 1, 2006 – July 31, 2006 | $48,920.05 | $39,136.04 Payment Received | $9,784.01 | $4,570.96 Payment Received |
| August 1, 2006 – August 31, 2006 | $23,160.45 | $18,528.36 Payment Received | $4,632.09 | $2,142.47 Payment Received |

| September 1, 2006 – September 30, 2006 | $67,014.40 | $53,611.52 **Payment Outstanding** | $13,402.88 | $3,067.04 **Payment Outstanding** |
|---|---|---|---|---|
| **TOTAL** | $262,199.10 | $209,759.28 | $52,439.82 | $21,628.73 |

12.     As set forth above, S&S has received payments totaling $174,709.45 representing payment of eighty percent (80%) of the fees for professional services and one hundred percent (100%) of the expenses incurred by S&S for the period June 1, 2006 through August 31, 2006[1].

13.     On or about October 30, 2006, S&S submitted to the Debtors its monthly fee statement for the period from September 1, 2006 to September 30, 2006 seeking payment of 80% of the fees requested and 100% of the expenses requested in accordance with the Monthly Compensation Order.  Since the 45-day objection period provided for in the Monthly Compensation Order has not expired as of the date hereof, S&S has not received any payments on account of this monthly fee statement.

14.     Accordingly, the Debtors hereby seek approval of a total of $262,199.10 in fees during the Compensation Period.  The Debtors hereby also seek approval of a total of $20,500.98 in expenses for the Compensation Period.  The total of the 20% holdback of fees for the Compensation Period is $52,439.82, which is outstanding as of the date hereof.

15.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, S&S reserves the right to request additional compensation for such services and reimbursement of such expenses in a future fee application.

---

[1] The monthly fee statements submitted during the Fee Period contained an aggregate of $21,628.73 in expenses, which has been paid in full by the Debtors prior to the date hereof.  However, pursuant to this Application S&S voluntarily is reducing the amount of reimbursement for expenses to $20,500.98.  Accordingly, the difference of $1,127.75 will be applied to reduce outstanding fees payable by the Debtors after approval of this Application.

**Background**

16.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code.

17.    On October 17, 2005, the U.S. Trustee appointed the Creditors' Committee.  As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.

18.    Pursuant to the Court's order dated March 30, 2006, the U.S. Trustee appointed the Equity Committee on April 28, 2006.

19.    On May 5, 2006, the Court appointed the Fee Review Committee consisting of representatives of the Office of the U.S. Trustee, the Debtors and the Creditors' Committee.

20.    The Debtors have continued in possession of their respective properties and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

21.    Pursuant to an order of this Court dated November 4, 2005 (Docket No. 1376), the Debtors were authorized to retain S&S on a final basis as their special counsel to render legal services in the prosecution of these chapter 11 cases (the "S&S Retention Order").

22.    S&S does not hold or represent any interest adverse to the estates, and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.  S&S has previously filed affidavits with this Court attesting to its disinterestedness (Docket Nos. 49 and 845).

23.    No disclosure statement or plan of reorganization has been filed with this

Court as of the date hereof.  The Debtors have the exclusive right to file a chapter 11 plan

through February 1, 2007 and the Debtors may exclusively solicit acceptances on such a plan

through April 2, 2007.

### Summary of Services

24.    The Debtors' chapter 11 cases are large and complex.  Since the inception

of these chapter 11 cases S&S has dedicated significant resources to help the Debtors finance

and stabilize their ongoing business operations.  During the Compensation Period, S&S

assisted – consistent with its role as 327(e) special counsel and at the request of the Debtors'

327(a) restructuring counsel – in legal research and the preparation of memoranda, presentations

for the board of directors, and other relevant documents on behalf of the Debtors.  As of the date

hereof, over a year from the commencement of these chapter 11 cases, there are over 5923

docket entries for these cases.  These figures evidence the size of these chapter 11 cases and,

accordingly, the magnitude of the professional services that these cases have demanded.

25.    During the Compensation Period, S&S spent significant time and

expended considerable efforts in advising Delphi with respect to an ongoing special board

project (the "Special Board Project").  S&S has also devoted time and effort in advising the

Debtors with respect to its postpetition financing facility (the "DIP Facility") and rendering

services to the Debtors throughout these chapter 11 cases.

26.    In addition, S&S represents Delphi Corporation, affiliated non-debtors and

certain current and former officers and directors in connection with the Litigation Matters with

respect to numerous putative class actions in federal court alleging violations of, among other

things, the federal securities laws and the Employee Retirement Income Securities Act of 1974

("ERISA") and both federal and state derivative actions alleging, among other things, breaches of

various fiduciary duties.  The federal securities, ERISA and derivative actions have been

transferred to the United States District Court for the Eastern District of Michigan for

coordinated or consolidated pretrial proceedings before Judge Gerald E. Rosen.  The federal and

state derivative actions have been administratively closed in light of the bankruptcy stay.  S&S

also represents Delphi Corporation with respect to an investigation by the United States

Securities and Exchange Commission ("SEC") in connection with issues relating to Other

Postemployment Benefits ("OPEB").

27.    Given the complexity of the chapter 11 cases and the litigation matters in

which S&S represents the Debtors, certain matters required the attention of two or more S&S

attorneys with expertise in different areas of law.  For example, attorneys in S&S's bankruptcy

and finance groups coordinated their efforts in preparing documents in connection with the

postpetition financing facility and S&S's litigation attorneys consult with bankruptcy attorneys as

required.

28.    To ensure that the legal fees were appropriate given the nature of the

matter or dispute at issue, attorneys with lower billing rates were assigned to handle certain

matters, such as researching and preparing initial drafts of documents.  In order to utilize S&S

attorneys in this cost-effective manner, more senior attorneys reviewed the work of junior

attorneys and, when necessary, meetings were held among attorneys to coordinate their efforts.

Absent meetings of this nature, all matters would have been handled by the senior attorney – at a

higher cost to the estate – who more often had direct contact with the Debtors and other parties in

interest and their respective counsel.

29.    To facilitate effective review of this Application, in accordance with the

UST Guidelines and the Fee Protocol, S&S has utilized the following separate billing categories

and project codes during the compensation period as appropriate:

| Litigation Matters | S&S Matter | Delphi Project Code |
|---|---|---|
| * Securities Class Action Litigation | 20 | 23 S&S |
| * ERISA Class Action Litigation | 22 | 25 S&S |
| * SEC OPEB Investigation | 23 | 26 S&S |
| Bankruptcy Matters | | |
| * Case Administration | 26 | 4 |
| * DIP Financing | 28 | 9 |
| * Employment Applications & Objections | 31 | 8 |
| * Fee Applications & Objections | 33 | 7 |
| * Litigation | 36 | 10 |
| * Non-Working Travel | 38 | 30 S&S |
| * Expenses | 46 | 34 S&S |
| * Board Advice | 49 | 37 S&S |

30.    Set forth below is a brief summary of certain of the matters on which S&S

spent a significant number of hours and it is not meant to be a detailed description of all of the

work performed, nor does it necessarily reflect all of the separate billing categories established

by S&S.  A complete summary of the fees attributable to each category is provided in <u>Exhibit D</u>

hereto.  The time details which fully describe the day-to-day services provided by S&S, and the

time expended performing such services in each of the categories, have been served upon those

parties set forth in the Monthly Compensation Order and are available for review by any other

interested party upon request to S&S.

<u>LITIGATION MATTERS</u>

A.  <u>Securities Class Action</u> (Fees: $76,342.95 Hours: 168.2)

- Conducted legal research for and drafted reply brief in further support of
  motion to dismiss Consolidated Amended Complaint.

- Conducted legal research regarding plaintiffs' motion to lift PSLRA discovery
  stay.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

- Reviewed and revised draft agreement regarding retention of economic consultants.

B.  <u>ERISA Class Action</u> (Fees: $78,797.70; Hours: 225.0)

- Conducted legal research for and drafted reply brief in further support of motion to dismiss Consolidated Class Action Complaint.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Participated in communications regarding provision of ERISA-specific documents and reviewed related materials.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

<u>BANKRUPTCY MATTERS</u>

C.  <u>Debtor In Possession Financing</u> (Fees: $26,942.50; Hours: 57.2)

- Rendered advice to the Debtors with respect to the Debtors' use of and compliance with the DIP Facility.

- Advised Debtors regarding and drafted a collateral access agreements to the DIP Facility.

- Negotiated and obtained amendments to the DIP Facility as necessary.

- Advised Debtors and participated in meetings and teleconferences regarding a possible refinancing of the DIP Facility.

- Prepared 8-K filings with respect to amendments to the DIP Facility.

D.  <u>Fee Applications & Objections</u> (Fees: $26,770.00; Hours: 105.0)

- Reviewed and revised monthly invoices in order to ensure compliance with the Guidelines.

- Prepared monthly fee statements and served the same in compliance with the Guidelines.

- Prepared, filed and served the Second Application of Shearman & Sterling LLP, as Special Counsel to the Debtors, for Allowance of Interim Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from February 1, 2006 through May 31, 2006 (the "Second Interim Fee Application").

- Prepared memo to team members summarizing billing procedure changes to be made in order to comply with the Fee Protocol.

- Revised billing procedures in order to comply with the Fee Protocol.

- Prepared and formatted historical invoices for electronic submission to Legal Cost Control in compliance with the Fee Protocol.

- Drafted a template for the submission of budgets in compliance with the Fee Protocol.

E.  Board Advice (Fees: $50,011.00; Hours: 100.3)

- Reviewed letter to Equity Committee regarding the Special Board Project.

- Advised Debtors and participated in meetings and teleconferences regarding the Special Board Project.

- Conducted research and case law analysis regarding the Special Board Project.

- Prepared a legal memoranda and executive summary with respect to the issues presented by the Special Board Project.

31.    S&S submits that the professional services performed by S&S were necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest.  Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

32.    Pursuant to a separate arrangement between S&S and the Debtors those services performed in relation to the Litigation Matters were billed with the application of certain

discounts to fees and expenses (the "Discounted Rate"). In accordance with the Discounted Rate, the rates charged during the Compensation Period with respect to the Litigation Matters were discounted by 10%. In addition, the Debtors were not billed for non-working travel time relating to the Litigation Matters.

33.     The professional services performed by S&S on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 668.4 recorded hours by S&S's members, counsel, associates, and paraprofessionals. Of the aggregate time expended, 89.4 recorded hours were expended by partners and counsel of S&S, 408.4 recorded hours were expended by associates, and 170.6 recorded hours were expended by paraprofessionals of S&S. The professional services were performed with expedience and in an efficient manner.

34.     During the Compensation Period, S&S's hourly billing rates for attorneys ranged from $385.00 to $875.00 per hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $459.23 (based on 497.8 recorded hours for attorneys at S&S's regular and negotiated billing rates in effect at the time of the performance of services). Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a competitive national legal market. As noted, attached hereto as Exhibit B is a schedule listing each S&S professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by S&S for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

### Actual and Necessary Disbursements of S&S

35.     As set forth in Exhibit C hereto, S&S has disbursed $21,628.73 in expenses incurred in providing professional services during the Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.

For example, in order for S&S to properly analyze and address the complex issues that have arisen in these chapter 11 cases, S&S attorneys performed considerable electronic research during the Compensation Period, all of which was necessary to facilitate the Debtors' reorganization and in the best interests of the Debtors' estates.

36.    Consistent with firm policy, attorneys and other employees of S&S who worked late into the evenings or weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.  S&S's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the Guidelines.

37.    Likewise, consistent with firm policy, given the time constraints imposed by the circumstances of these cases which required S&S attorneys and other employees to work late into the evenings and weekends, S&S has been required to utilize some overtime secretarial help, thereby incurring a certain amount of overtime charges.

38.    Pursuant to the Fee Protocol, as of September 1, 2006 S&S has charged $0.10 per page for photocopying expenses with respect to all of the Delphi Matters.  Prior to that date and in accordance with the S&S Retention Order, S&S had charged its standard rate of $0.18 per page for photocopying with respect to the Bankruptcy Matters and a discounted rate of $0.15 per page for photocopying with respect to the Litigation Matters.  Both of these charges were less than the $0.20 per page maximum permitted by the Local Guidelines and UST Guidelines.

39.    In compliance with the Guidelines S&S does not charge for in-coming facsimiles.  With respect to out-going facsimile expenses, as permitted in the Guidelines, S&S charges $1.25 per page for domestic facsimile transmissions and $2.50 per page for international facsimile transmissions.  These charges are intended to cover S&S's direct operating costs, which costs are not incorporated into the S&S hourly billing rates.  Only clients who actually use services of the types set forth in <u>Exhibit C</u> hereto are charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose unfairly such costs upon clients who do not require extensive photocopying and other facilities and services.

40.    In addition, because of the multiple locations of the Debtors' businesses, long distance telephone calls were required.  On several occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in S&S's overhead for the purpose of setting billing rates.  S&S has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

41.    Throughout these cases, S&S has expended a considerable effort to "self police" its fees by critically reviewing all time charges entered into its billing system.  S&S's vigilance in scrutinizing the time billed to the Debtors' has led to the voluntary reductions.

42.    S&S has revised its billing procedures in accordance with the Fee Protocol effective as of September 1, 2006.  Pursuant to the Fee Protocol (and as discussed in paragraph 37 above) photocopying expenses are not to exceed $0.10 per page and there is to be no charge for proofreading.  In light of the Fee Protocol, S&S voluntarily is reducing the amounts charged

for photocopying and proofreading during the Fee Period prior to the Fee Protocol effective date

for all Delphi Matters.  This results in a voluntary expense reduction of $1,007.75 on account of

photocopying expenses and $120.00 on account of proofreading expenses.  These reductions are

detailed in Exhibit C hereto.

43.    The Fee Protocol also mandates that non-working travel time be billed at

50% effective as of September 1, 2006.  From the outset of these cases S&S voluntarily has

billed its non-working travel time for the Bankruptcy Matters at 50%.  For the Fee Period, this

results in a voluntary fee reduction of $309.75 representing non-working travel prior to the

effectiveness of the Fee Protocol.  These reductions were taken on a monthly basis and are

already incorporated into the exhibits hereto.

44.    Those fee reductions are in addition to efforts usually expended by S&S to

ensure that its clients are not charged for unnecessary services.  In that regard, as is the firm's

policy, S&S carefully managed staffing in a manner to avoid overstaffing and, where possible

(after taking into consideration the nature and complexity of a matter or dispute), utilized

attorneys with lower billing rates.

## The Requested Compensation Should Be Allowed

45.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern this Court's award of such compensation.  11 U.S.C. § 331.  Section 330 of the Bankruptcy Code, provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, extent and the value of such services, taking into account all relevant factors, including –
>
> > the time spent on such services;
> >
> > the rates charged for such services;
> >
> > whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
> >
> > whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and
> >
> > whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than in cases under this title.

11 U.S.C. § 330(a)(3).

46.     Applying these factors, S&S respectfully submits that the services for which it seeks compensation in this Application were beneficial and necessary to the Debtors' cases and reorganization.  Moreover, S&S submits that the compensation sought for these services is reasonable in light of the nature, extent and value of those services to the Debtor, its estate and all parties in interest.

47.    Throughout the Compensation Period, S&S worked diligently to anticipate obstacles to the Debtors' reorganization and to respond to the problems it faced -- from emergent crises to more mundane matters.  These services, in addition to the services more directly focused on the reorganization process, were necessary and beneficial to the Debtors' estate and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved.  Accordingly, allowance of the compensation sought herein is warranted.

48.    In addition to time and labor devoted, other factors may be considered in awarding fees for legal services.  In considering the reasonableness of fees, courts often consider the standards established in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977), and then to determine what a reasonable fee would be under the circumstances.  See also D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990); Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1976).  Accordingly, these factors generally considered in determining the reasonableness of a fee application are: (i) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (ii) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (iii) the fee customarily charged in the locality for similar services; (iv) the amount involved and the results obtained; (v) the time limitations imposed by the client or by circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation and ability of the lawyer or lawyers performing the services; and (viii) whether the fee is fixed or contingent.  All of these factors justify the compensation sought herein.

## No Duplication of Service Among Counsel

49.    S&S has developed a cooperative working relationship with other firms retained by the Debtors, including, among others, Skadden, Arps, Slate, Meagher & Flom LLP, Togut, Segal & Segal LLP, the Groom Law Group Chartered and O'Melveney & Myers LLP. Because each firm is aware of each of the other's role and scope of services being provided to the Debtors, S&S believes that no unnecessary duplication of services has occurred.  As a result, the Debtors' law firms were able to provide the necessary legal services to the Debtors in an expeditious and efficient manner.

## Review of Application by Debtors

50.    As provided in section II.A.5 of the UST Guidelines, the officer designated by the Debtors to be responsible for such matters, David Sherbin, has been provided with a copy of this Application.  Mr. Sherbin has approved the amounts requested for compensation for professional services and reimbursement of actual and necessary expenses as set out in this Application.

## Requirements of Local Rule 9013-1(b)

51.    Given that there are no novel issues of law presented herein and that the legal authority for the relief being sought is set forth herein, S&S respectfully requests that this Court waive the requirement that S&S file a memorandum of law in support of this Application as provided in Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

## No Prior Request

52.    No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE S&S respectfully requests (i) allowance of compensation for professional services rendered during the Compensation Period in the amount of $262,199.10 and reimbursement for actual and necessary expenses S&S incurred during the Compensation Period in the amount of $20,500.98; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to S&S's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) this Court grant S&S such other and further relief as is just.

Dated:    New York, New York
          November 30, 2006

By:    _/s/Douglas P. Bartner_____
       Douglas P. Bartner (DB-2301)
       Andrew V. Tenzer (AT-2263)

       SHEARMAN & STERLING LLP
       599 Lexington Avenue
       New York, New York  10022
       Telephone: (212) 848-4000
       Facsimile:  (212) 848-7179

       Special Counsel to the Debtors and
       Debtors in Possession