September 28, 2005

OUR FILE NUMBER
600,000-012

WRITER'S DIRECT DIAL
213-430-6005

**CONFIDENTIAL**

WRITER'S E-MAIL ADDRESS
rsiegel@omm.com

Beth Sax, Esq.
Assistant General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Re:   *Section 1113/1114 Advice – Terms of*
      *<u>Engagement, Conflict Waiver and Relationship Matters</u>*

Dear Ms. Sax:

      We are pleased to have the opportunity to serve as attorneys for Delphi Corporation (the "Company"). This letter agreement and the enclosed Terms of Engagement (the "Terms") contain the Company's agreement with us regarding the engagement of our firm.

**<u>Subject Matter and Scope of Representation</u>**

      Our representation of the Company relates only to Bankruptcy Code Section 1113/1114 advice and related labor law advice (the "Subject Matter"). We have not been asked to represent the Company in other legal matters at this time,[1] and our representation as to any matters not specified will be subject to resolution of any conflict issues that may arise and our acceptance in writing at the time of a request from the Company for a particular undertaking. The Company

---

[1] We currently represent Alan S. Dawes, Vice Chairman and Chief Financial Officer, in connection with the Securities and Exchange Commission investigation captioned, *In the Matter of Delphi Corporation.* In addition, we represent Mr. Dawes in *Glinka v. Delphi Corp.*, No. 05-71291 (E.D. Mich). The complaint alleges various violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, as a result of the purchase and holding of Delphi common stock by the Delphi Savings-Stock Purchase Program for Salaried Employees of the United States. The representations are subject to an indemnification agreement by which Delphi is funding our defense of Mr. Dawes. O'Melveny will not assist Mr. Dawes in his ongoing employment termination discussions with the Company. O'Melveny's representation of Mr. Dawes is subject to the "Waiver of Prospective Conflicts on Unrelated Matters," addressed below.

September 28, 2005 - Page 2

can limit the scope of our representation at any time. Any substantial expansion of our representation should be evidenced by a written mutual understanding. Unless otherwise agreed in writing, the terms of this letter agreement and the Terms will also apply to any additional matters we agree to handle on the Company's behalf.

**Identity of Client**

We will represent only the Company in connection with the Subject Matter. Unless expressly agreed in writing, we will not be representing any of the Company's related or affiliated or associated persons or entities (collectively, "Affiliates"), i.e., any parent, subsidiary, or affiliated corporation or other entity, or any of the Company's or their officers, directors, investors, agents, partners or employees (collectively, "Agents"), in connection with the Subject Matter. Accordingly, we will generally not be precluded from representing other existing clients or future clients in legal matters relating or adverse to the Company's Affiliates or any of its or their Agents.

**Waiver of Prospective Conflicts on Unrelated Matters**

We represent many other clients. It is possible that during or after the time we represent the Company, other present or future clients will ask us to represent them in disputes or transactions with or involving the Company (which term in this section includes any Affiliates or Agents) as to legal matters substantially unrelated to our representation of the Company.

As I mentioned to you, we have represented General Motors in the past, but we no longer represent General Motors in any active matter. We understand that the Company is willing to accept the risk of disqualification of O'Melveny due to O'Melveny's past representation of General Motors. In addition, we currently represent GMAC or its GMAC affiliates in our Shanghai and Tokyo offices in corporate matters. While we do not believe these representations pose a current conflict with representation of the Company in the Subject Matter, we are disclosing them in the utmost of caution.

Because our representation of the Company is limited to the Subject Matter, we wish to clarify our mutual understanding with the Company as to the extent to which our present representation both will affect, and will not affect, our ability to represent other existing or future clients in other legal matters, whether or not the Company (including, for these purposes, Affiliates and Agents) is adverse or otherwise involved in those matters. As a condition of our undertaking this matter, the Company agrees that

- we can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings, so long as the matter is not substantially related to our work for the Company on the Subject Matter, even if those other clients' interests are adverse to the Company in the other matter;

September 28, 2005 - Page 3

- we might obtain confidential information of interest to the Company in these other matters that we cannot share with the Company; and

- the Company waives any conflict of interest that might arise from any of such engagements, and will not seek to disqualify us in or assert a conflict with respect to any of those engagements.

If for any reason, the Company's consent and waiver of potential conflicts is not effective in the circumstances, the Company consents to our resignation from our representation of it if resignation at that time is otherwise permissible under applicable professional rules. In that case, the Company would need to engage, at the Company's expense, separate counsel to represent its interests.

Of course, without the Company's further prior written consent, we cannot and will not represent another client in a matter adverse to the Company if we have obtained confidential information of a nonpublic nature from the Company, as a result of our representation of the Company, that, if known to the other client, could be used in the other matter by the other client to the Company's material disadvantage unless we establish a "screen" to preserve the Company's confidences; the Company consents to this arrangement.

### Responsible Attorneys

I and my partner, Tom Jerman, will be primarily responsible for this matter. My direct dial at the office is 213-430-6005 and my e-mail address is rsiegel@omm.com. Tom Jerman is available at 202-383-5233 and tjerman@omm.com. We may delegate to other attorneys and staff particular tasks and responsibilities to better serve your interests. In particular, I anticipate that counsel Rachel Janger, and associates Jessica Kastin, Heidi Son, and Kyra Grundeman will assist. Ms. Janger, Ms. Son and Ms. Grundeman have significant experience in 1113 and 1114 matters, and Ms. Janger, Ms. Son and Ms. Kastin have significant traditional labor and employment law experience. Additionally, first year associates Stacy Hauf, Deepa Ambekar and Melissa Janiak will provide assistance in drafting and other appropriate tasks as needed on a cost-effective basis. If you have any questions at any time about appropriate staffing, I encourage you to call.

### Fees and Charges

Our fees are based primarily on time spent at then applicable billing rates. My individual current rate on this engagement is $690 per hour. Tom Jerman's current rate is $680 per hour, Rachel Janger's is $460, Jessica Kastin's is $465, Heidi Son's is $400, Kyra Grundeman's is $270, Stacy Hauf's is $205, and Deepa Ambekar's and Melissa Janiak's are $235. Charges for all attorneys, legal assistants, staff and ancillary services will be at their applicable rates, which are available on request.

Our rates will change from time to time based on, among other variables, changes in attorney seniority or status, changes in our rates generally, and changes in the nature of the

September 28, 2005 - Page 4

services performed. For more information on this subject, including frequency of billing, payment deadlines, notice of rate changes, and other factors affecting fees and other charges, as well as agreements concerning charges and expenses, please refer to the Terms. We have reviewed the attached Instructions of Delphi Corporation relating to law firm billing, and believe they are generally consistent with the Terms, except that one-half of unproductive travel time will be billable. To the extent there are additional inconsistencies between the Terms and the Instructions of Delphi Corporation, we agree that the Instructions of Delphi Corporation will control. Also, we understand that no new billing attorney will be added to the file without your prior approval.

If for any reason you become dissatisfied with our charges or services, we encourage you to tell us immediately. We believe that most problems of this nature can be resolved promptly through good faith discussion.

**Advances for Fees**

On an "evergreen" (i.e., continuing) basis, we request for our benefit an advance payment for our legal fees in the amount of $300,000. Advances from the client may be treated as the property of the lawyer if the client so consents, but otherwise will be treated as the property of the client and held in a separate account. In order to avoid administrative burdens of separate accounts, we request the Company's consent to our treating the advance as our property and commingling the advance with our funds, as described in the Terms under the section captioned "Advances." The Company's acceptance of this engagement letter will constitute its consent. The Company's rights to a refund (if any) at the conclusion of the engagement and other terms applicable to the advance are described in greater detail in the Terms.

**Possible Premium Fee**

The Subject Matter poses significant challenges. Therefore, if our legal services contribute to an exceptionally successful result, we expect to have the opportunity to discuss an additional fee (without any advance commitment from the Company) based on the nature and quality of our contribution to the results achieved rather than a fee based solely on the time expended would dictate. We understand that the Company will consider such factors as the actual result, its subjective view of our contribution to the Subject Matter, our efficiency and cost containment efforts, and its perception of our success in integrating with and utilizing the Company's in-house team.

**Media Contact**

Without the Company's express consent, we will not make, respond to or engage in any media contact relating to this matter or any aspect of our relationship with the Company, other than to confirm that we are its counsel and a polite "I am not authorized to comment". We will refer any contact by the media relating to the Subject Matter to the Company's media relations representative. We request that the Company advise us in advance, however, of any information releases concerning the Subject Matter.

September 28, 2005 - Page 5

### ADR Processes with Adverse Party

The Company should note that alternative dispute resolution (ADR) processes may provide a means to resolve disputed claims. ADR processes include any structured process in which a neutral assists disputants in reaching a voluntary settlement by means of dispute resolution techniques such as mediation, conciliation, early neutral evaluation, nonjudicial settlement conferences or any other proceeding leading to a voluntary settlement. We will be prepared to discuss with the Company from time to time the advantages, disadvantages and availability of ADR processes as events unfold. The Company will have the ultimate authority, subject to applicable legal limits or orders, to determine (and eventually will need to determine) whether or not to pursue an ADR process.

### Arbitration

**The Terms include an agreement to arbitrate certain matters before and pursuant to the Commercial Rules (as then in effect) of the American Arbitration Association in the City of Los Angeles. The Company should note that discovery rules, standards of evidence, rights to appeal, and procedural rules, among other things, differ in arbitration from the rules applicable in a civil trial. By agreeing to arbitration, the Company also will be agreeing to waive any right to a jury or court trial.**

**If the Company does <u>not</u> wish to agree now to arbitration of any disputes, claims or controversies to the extent provided in the attached Terms, check this box ☐. If the box is checked, the arbitration provisions in the enclosed Terms will be deemed deleted.**

---

Our engagement, conflict and billing practices reflect our desire to deal fairly with our clients in these as in all other aspects of our relationship. We welcome the opportunity to be retained by the Company, and, assuming this letter is acceptable to the Company, we look forward to providing our services to it on a mutually satisfactory basis.

We encourage the Company to consult with other counsel or advisors of its choice regarding these matters, and to consider fully the possible implications of our representation on the basis described. If the Company agrees to all the foregoing matters and Terms of Engagement, please communicate that agreement by signing and returning to me the enclosed copy of this letter.

The effective date of our agreement is the date on which our services commenced. The date of this letter on page 1 is for convenience of reference only. Although this engagement letter is considered confidential, you agree that we may share the terms of any conflict waivers (after redacting any otherwise confidential information) with our other affected client(s) and that we may disclose the fact of your waiver publicly or to other persons where reasonably necessary to rebut allegations that we are engaged in improper conflicting representations.

September 28, 2005 - Page 6

    If you have any questions, please do not hesitate to give me a call.

    Best personal regards.

                                Sincerely,

                                Robert A. Siegel
                                of O'MELVENY & MYERS LLP

**ACCEPTED AND AGREED WITH
CONSENTS AND WAIVERS GRANTED:
DELPHI CORPORATION**

By: _____
     Beth Sax
Its   Assistant General Counsel

**O'MELVENY & MYERS LLP**
**TERMS OF ENGAGEMENT**

Except as modified in writing, O'Melveny & Myers LLP ("we") and the client ("you") agree to the following provisions with respect to the relationship between them identified in the accompanying letter agreement:

### Respective Responsibilities of Attorney and Client

We will keep you reasonably informed of significant developments in the Subject Matter and as necessary to perform our services. We will consult with you as to our progress and issues that arise.

You will be candid and cooperative with us and will keep us informed with complete, accurate and timely factual information, documents and other communications relevant to the Subject Matter or otherwise reasonably requested by us to perform the services. We may rely on these communications, without independent verification. You will also assist us by making business, strategic and technical decisions appropriate to enable completion of the work and performance of the services.

We provide only legal services. You are not relying on us for and, among other things, we are not providing investment, insurance, accounting or technical advice or making business decisions, nor are we investigating the character or credit of persons with whom you may be dealing.

### Timely Billing and Payments

Fees, charges and expenses will generally be billed monthly and are payable upon presentation. You agree that you will promptly review our statements, raise any questions regarding the amounts and items billed within 30 days of presentation and pay all amounts billed consistent with these Terms of Engagement. We expect prompt payment. In our experience prompt billing and prompt payment enhance the working relationship.

We reserve the right to postpone or defer providing additional services or to discontinue our representation, if billed amounts are not paid when due. We also reserve a right to charge a late fee at the rate of 10% per annum on all sums not paid within 30 days of presentation of our statement, and you agree to pay such late fees if applicable. Our failure to charge late fees at any time or on any occasion(s) is not a waiver of our right to do so on any unpaid amount then outstanding, from the 31st day after such amount was first billed.

### Billing Rates

You agree to pay our fees based on time expended on your behalf, computed on an hourly basis at our then applicable rates for this engagement for the applicable attorneys and staff on the matter.

Generally speaking, these hourly rates currently range, with limited exceptions, in our California and Washington D.C. offices from $205 per hour for our most junior attorneys, to $790 per hour for our most experienced partners.

For legal assistants and practice support staff and managers, the current range firm-wide is from $45 per hour for our most junior clerks ($150 per hour for junior legal assistants) to $265 per hour for our most seasoned, non-attorney legal assistants and managers (except for certain special trade and other consultants whose higher rates are available on request).

Beth Sax, Esq., September 28, 2005 - Page 2

We will not separately bill for the following services: word processing, coders, text editing, distribution and proofreading, and (when required by the urgency of a client's matter) secretarial overtime.

We change our rates, as well as our other charges, from time to time, to reflect competitive conditions, inflation and other factors. You agree that those and other changes apply prospectively to all matters then being handled by the firm for you and may result in increases in excess of the specific numbers or ranges provided to you at a particular time. In addition to periodic or general changes in rates, changes in an attorney's status at various intervals may result in more frequent increases in a particular attorney's rate. (For example, if an associate becomes a senior counsel, his or her billing rate may exceed that of an associate with the same tenure; or if an associate becomes a partner, his or her rate will increase.) You will receive notice of general rate changes no later than upon delivery of our first statement that includes the new rates. Individual rate changes will be evident from the detailed information you receive with each bill.

*The rates in all our offices of the specific attorneys or staff involved from time to time in your matters, and the basis of all of our other charges, are available to you at any time on request.*

### Charges for Other Items

Your statement will include other charges and costs, summarized below, that you agree by these Terms to pay. (Additional information about the amount and the basis of all of our charges is available on request.) More specifically, you agree to pay:

***Duplicating/Printing and Faxes.*** Our standard charges for duplicating (including copying, printing, scanning, and alternative means of reproduction), currently at $.15 per page. There will be no fee for outgoing facsimile transmissions other than for long distance charges associated with such transmissions. There is no charge for incoming faxes.

***Charges for Travel, Lodging, Meals and Meetings.*** Amounts charged for transportation fares, hotels and other lodging, meals and other travel accommodations, including (as applicable) agency fees.

If a meeting is for your benefit, direct and specific meeting-related costs, including but not limited to meals (and related service).

***Research/Telephone Charges.*** Automated database and computer–assisted legal and other research and search charges, long distance telephone charges, and other similar items (generally billed at or below our estimated costs, including an allocation of associated overhead or of associated aggregate discounts or both). These charges are in addition to professional fees associated with the specific research or communications.

***Costs and Expenses.*** Any and all other costs that we incur for your benefit. These costs may include, for example, filing fees, special deliveries, messengers, expert witnesses, consulting services, external duplicating, and imaging, as well as special appearance fees and other local charges imposed on attorneys solely in connection with the specific engagement. You agree to pay vendor invoices sent to you for direct payment in a timely manner. (We assume no obligation to advance any costs or expenses on your behalf or to pay vendors, experts, consultants or other third parties we engage on your behalf.)

Beth Sax, Esq., September 28, 2005 - Page 3

### Estimates Not Binding

It is often impractical to determine in advance the amount of effort that will be needed to complete all the necessary work on a matter or the total amount of fees, charges and costs that may be incurred. Obviously, if any estimates or budgets are provided, they may need to be adjusted upward or downward in response to changing circumstances. Unless otherwise expressly agreed in writing, our estimates and budgets are not intended to be binding, are subject to unforeseen circumstances, and by their nature are inexact and do not limit or "cap" our fees and other charges or costs.

### Advances

Before commencing or during the course of work for you, we may require, for our benefit, an advance payment for our professional fees and charges. We will notify you as the advance is applied to pay our monthly statements, and we will account to you regularly on the application of our fees and charges to the advance in our statements or on request at any time. We also may unilaterally require, as a condition to providing further services, the restoration of this advance to the original level on a continuing or "evergreen" basis, or to a higher level, if in our reasonable judgment the circumstances so warrant. In such case, the required advance must be paid not more than 30 days after the earlier of our notice to you of that requirement or the date of the statement indicating a lower balance than required. Of course, any other remaining balances must also be timely paid.

The advanced amount should not be viewed as a quote or a limitation on fees. Our fees could well exceed the amount of the advance.

***Advances are for Our Benefit.*** All advance payments will be considered advances for professional fees and charges of our attorneys and staff (as distinguished from costs and expenses billed to you). These advances are for our (and not for your) account and benefit; they are not intended as a security deposit. Unless otherwise required by law, advance payments will not be maintained in a separate account or retained as trust funds, and they will earn no interest, for your benefit.

You agree that we may withdraw or suspend services if our bills or required advances are not timely paid or restored as agreed, subject to any required notice or applicable judicial or professional rules.

***Refund of Any Excess Amount.*** After the nearly all work on the Subject Matter is completed (i.e., all litigation is completed) payment of our final statement incorporating charges for such work, if amounts paid (including advances) by you or on your behalf exceed aggregate amounts charged by us, the difference will be repaid to you.

### Experts

You authorize us to retain on your behalf or directly any investigators, consultants or experts necessary in our judgment to represent your interests. We recognize that the Company retains the right to make the final selection of any experts, and we will seek the Company's approval prior to retaining any expert.

### Fees Not Contingent

Unless otherwise specifically agreed in writing, our fees are not contingent upon the outcome or completion of a matter.

Beth Sax, Esq., September 28, 2005 - Page 4

**No Guarantee of Outcome**

We do not and cannot guarantee the outcome of any matter. Either at the commencement or during the course of our representation, we may express our opinions, views or beliefs concerning claims or courses of action and the results that might be anticipated. Any such statement made by any representative of our firm is intended to be an expression of opinions, views and beliefs only, based on information available to us at the time, and should not be construed by you as a guarantee of any type.

**E-mail Communications**

During the course of our engagement, we may exchange electronic versions of documents and e-mails with you using commercially available software. Unfortunately, such communications are occasionally victimized by the creation and dissemination of so-called viruses, destructive electronic programs or invasions of expected privacy. Our virus scanning software also may occasionally reject a communication that you send to us, or we in turn may send you something that is rejected by your system. We believe these infrequent occurrences are to be expected as part of the ordinary course of business, although they do affect the security and reliability of these communications.

We cannot guarantee that our communications and documents will always be virus free or immune from invasions of expected privacy. If for these or other reasons you would prefer or require that we not use electronic communications or that we follow special instructions or use encryptions, on e-mail or other communications, you should promptly advise in writing those working on your matters of this preference or requirement.

**Termination of Representation**

You can terminate our services at any time. If you do, you agree to give us prompt written notice of the termination. Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf before the termination or which are reasonably necessary thereafter. If we are attorneys of record in any proceeding, you agree to promptly execute and return to us the Substitution of Attorney we provide to you.

We can also withdraw from this representation at any time, except to the extent limited by applicable law or rules of professional conduct. Some reasons for our withdrawal might include:

- You fail to honor the terms of our engagement letter and these Terms of Engagement or fail to pay our statements in a timely manner, or you decline to pay any increased rates contemplated by this agreement;

- You make it unreasonably difficult to represent you effectively or you insist on conduct contrary to our advice on a matter; or

- Facts or circumstances arise that, in our view, render our continuing representation unlawful or unethical.

If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such withdrawal, you will remain obligated to pay us for all services provided and to

Beth Sax, Esq., September 28, 2005 - Page 5

reimburse us for all costs and expenses paid or incurred on your behalf before the termination or which are reasonably necessary thereafter.

Our representation of you will be considered terminated at the earliest of your termination of our representation, our withdrawal from our representation of you, or the substantial completion of our work for you (as may be evidenced by a final bill, by a substantial period of inactivity not caused by our negligence or otherwise).

**Arbitration and Waiver of Jury Trial**

*Arbitration of All Disputes, Claims or Controversies. As a material part of our agreement, you and we agree that any and all disputes, claims or controversies arising out of or relating to this agreement, our relationship, or the services performed, will be determined exclusively by confidential, final and binding arbitration, in accordance with the then existing Commercial Rules of the American Arbitration Association, in the [City of Los Angeles/City of New York]. Disputes, claims and controversies subject to final and binding arbitration include, without limitation, all those that otherwise could be tried in court to a judge or jury in the absence of this agreement to arbitrate. Such disputes, claims and controversies include, without limitation, claims of professional malpractice or other disputes over the quality of our services, claims relating to or arising out of your or our performance under these Terms, and disputes over fees or other charges, costs or expenses (except as covered by the next paragraph or prohibited by law) and any other claims arising out of any alleged act or omission by you or us. By agreeing to submit all such disputes, claims and controversies to binding arbitration, you and we expressly waive any rights to have such matters heard or tried in court before a judge or jury or in another tribunal. Any award will be final, binding and conclusive upon the parties, subject only to judicial review provided by statute, and a judgment rendered on the arbitration award can be entered in any state or federal court having jurisdiction thereof.*

*California State Bar Fee Arbitration. Notwithstanding the above, in a dispute subject to the jurisdiction of the State of California over fees, charges, costs or expenses, you have the right to elect arbitration pursuant to the fee arbitration procedures of the State Bar of California, as set forth in California Business & Professions Code §§ 6200 et seq. Those procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute has arisen, to be bound by the arbitration award. If you do not elect to proceed under the State Bar fee arbitration procedures, any dispute over fees, charges, costs or expenses, will be resolved by binding arbitration in accordance with the then existing Commercial Rules of the American Arbitration Association, as provided above.*

*New York Fee Dispute Arbitration. Notwithstanding the above, in a dispute over fees, charges, costs or expenses ("NY Fee Dispute") subject to the jurisdiction of the State of New York Fee Dispute Resolution Program ("FDRP"), Part 137 of the Rules of the Chief Administrator of the courts of the State of New York, the commercial arbitration and waiver provisions of this section on "Arbitration and Waiver of Jury Trial" shall not apply to the NY Fee Dispute, unless you then duly elect to use such provisions after notice and due consideration of any rights you may then have to elect arbitration pursuant to the FDRP.*

*Waiver of Right to Jury or Court Trial. You understand that by entering into this agreement to arbitrate you and we are waiving any right to a jury or court trial, to the extent permitted by law.*

Beth Sax, Esq., September 28, 2005 - Page 6

***Other Arbitration Service Providers. Nothing herein shall limit the right of the parties to mutually stipulate and agree to conduct the arbitration before and pursuant to the then existing rules of any other agreed-upon arbitration services provider.***

**Disclosure of Conflicts and Other Information**

To allow us to conduct a conflicts check, you represent that you have identified for us all persons and entities that are or may become involved in the subject matter, including all persons and entities that in any material respect are related, affiliated or associated with you, and other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You also agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in the matter. You agree to cooperate fully with us and to provide promptly all information known or available to you that is relevant to our representation.

**Registered Limited Liability Partnership/Limitation on Liability**

The firm of O'Melveny & Myers LLP is a California registered limited liability partnership, registered also as a foreign limited liability partnership in other jurisdictions in which our domestic offices are located. As a result, with certain possible limited exceptions, none of which may be applicable, our partners, as distinguished from the partnership, by reason of being a partner or acting in the conduct of the business or activities of O'Melveny & Myers LLP, are not liable or accountable to you, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the firm or another partner, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the firm.

**Document Retention and Destruction**

In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or otherwise constituting client records, such as correspondence, pleadings, transcripts, exhibits, physical evidence, and other items reasonably necessary to your representation (collectively, "Client Materials"). Once the particular matter to which those Client Materials relate has been concluded, we will make arrangements either to return the Client Materials to you, retain them in our storage facilities or dispose of them. If you do not request their return and in the absence of any other specific arrangements with you or legal requirements to the contrary, you agree that we may dispose of those Client Materials consistent with any reasonable records retention policy that we may have in effect from time to time. Moreover, unless you have sought the return of such Client Materials within two years after the conclusion of the matter to which they relate, we may destroy them and will be relieved of any responsibility to you with respect to them. If we conclude that it would be inappropriate or impermissible to destroy all or any portion of these Client Materials, you agree that we may return or deliver them to you at your last known address, and we will be relieved of any responsibility with respect to them. We may retain copies if we choose. You agree to pay the expense of the return (or any other directed delivery) of Client Materials. You also agree to take possession (whether or not you take possession of other Client Materials) of original documents, such as wills, investments, stock certificates, etc., whereupon we will have no further responsibility for them.

Our own files pertaining to the matter will not be delivered to you. You agree that our firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records, as well as internal lawyers' work product (such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports and mental impressions,

Beth Sax, Esq., September 28, 2005 - Page 7

prepared by us or for our internal use). You agree that our files remain our property and for various reasons, including the minimization of unnecessary storage expenses, or for no reason, we may destroy or otherwise dispose of our files a reasonable time after the conclusion of the matter.

**Miscellaneous**

These Terms of Engagement and the accompanying letter agreement supersede all other prior and contemporaneous written and oral agreements and understandings between us and contain the entire agreement between us, and can be modified only by your and our subsequent written agreement. You acknowledge that no promises have been made to you by us other than those stated in these writings.

Any provision of these Terms of Engagement or the accompanying letter agreement held in whole or in part to be unenforceable for any reason shall be severable if the essential terms of engagement both to you and us remain enforceable. In that case, the remainder of that provision and our agreement will remain in effect.

Our agreement will be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of California, except to any extent required by applicable law or rules of professional conduct.

**Application to Other Matters**

The agreement reflected in these Terms of Engagement and in the accompanying letter agreement applies to our present representation of you and to any subsequent matters we agree to undertake on your behalf, unless we agree in writing to a different arrangement

You also agree to pay us on the same basis as set forth above with respect to our fees and charges and for expenses incurred in responding to subpoenas, in testifying (and preparing testimony) by deposition or otherwise, and otherwise responding with respect to obligations, claims or demands relating to or arising out of the matters in which we have represented or are representing you, whether or not related to our services and whether or not we are then representing you.

DC1:640558.3

Beth Sax, Esq., September 28, 2005 - Page 8


bcc:   Tom Jerman
       Rachel Janger
       Jessica Kastin