SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
            In re                                   :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-_____ (___)
                                                    :
                            Debtors.                :    (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 329
AND FED. R. BANKR. P. 2014 AND 2016 (I) AUTHORIZING EMPLOYMENT
AND RETENTION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
AND AFFILIATES AS ATTORNEYS FOR DEBTORS-
IN-POSSESSION AND (II) SCHEDULING A FINAL HEARING THEREON

("SKADDEN RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby apply (the "Application") to this Court for interim and

final orders under 11 U.S.C. §§ 327(a) and 329 and Fed. R. Bankr. P. 2014 and 2016

(a) authorizing the employment and retention of Skadden, Arps, Slate, Meagher & Flom LLP

and affiliates (collectively, "Skadden" or the "Firm") as counsel for the Debtors as of the

Petition Date (as hereinafter defined) and (b) scheduling a final hearing thereon.  In support of

this Application, the Debtors submit the Declaration of John Wm. Butler, Jr. (the "Butler

Declaration") and the Affidavit of Robert S. Miller, Jr. in Support of Chapter 11 Petitions and

First Day Orders, sworn to October 8, 2005.  In further support of this Application, the

Debtors respectfully represent as follows:

---

[1]    In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing
General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas
Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global
(Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems
International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi
Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp.,
Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi
Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel
Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated
Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi
Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical
Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas
Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi
Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation,
Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics
International Ltd.

2

Background

A.   The Chapter 11 Filings

  1.   On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order for joint administration of these chapter 11 cases.

  2.   No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

  3.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

  4.   The statutory predicate for the relief requested herein are sections 327(a) and 329 of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

B.   Current Business Operations Of The Debtors

  5.   With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of

---

[2]  The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.    Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than

4

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions

5

representing most of its U.S. hourly employees which coincides with the expiration of the

Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the

Company generated more than $2 billion in net income.  Every year thereafter, however, with

the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company

reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a

downturn in the marketplace, Delphi's financial condition has deteriorated further in the first

six months of 2005.  The Company experienced net operating losses of $608 million for the

first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is

approximately $1 billion less in sales than during the same time period in calendar year

2004.[3]

11.    The Debtors believe that three significant issues have largely contributed

to the deterioration of the Company's financial performance:  (a) increasingly unsustainable

U.S. legacy liabilities and operational restrictions driven by collectively bargained

agreements, including restrictions preventing the Debtors from exiting non-strategic, non-

profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a

competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion
tax charge, primarily related to the recording of a valuation allowance on the U.S.
deferred tax assets as of December 31, 2004.

6

number of motor vehicles that GM produces annually in the United States and related pricing

pressures, and (c) increasing commodity prices.

12.   In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities,

product portfolio, operational issues and forward looking revenue requirements.  Having

concluded that pre-filing discussions with its Unions and GM were not leading to the

implementation of a plan sufficient to address the Debtors' issues on a timely basis, the

Company determined to commence these chapter 11 cases for its U.S. businesses to complete

the Debtors' transformation plan and preserve value.

13.   Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-

competitive legacy liabilities and burdensome restrictions under current labor agreements and

realigning Delphi's global product portfolio and manufacturing footprint to preserve the

Company's core businesses.  This will require negotiation with key stakeholders over their

respective contributions to the restructuring plan or, absent consensual participation, the

utilization of the chapter 11 process to achieve the necessary cost savings and operational

effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a

substantial segment of Delphi's U.S. business operations must be divested, consolidated, or

wound-down through the chapter 11 process.

14.   Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal

7

all of its resources to continue to deliver value and high-quality products to its customers

globally.  Additionally, the Company will preserve and continue the strategic growth of its

non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Application, the Debtors seek to employ and retain the firm of

Skadden, as of the Petition Date, to represent the Debtors as their principal restructuring and

bankruptcy counsel in connection with the filing of their chapter 11 petitions and prosecution

of their chapter 11 cases.  Accordingly, the Debtors respectfully request entry of  interim and

final orders under sections 327(a) and 329 of the Bankruptcy Code and Rules 2014 and 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing each

of them to employ and retain Skadden as their attorneys under a general retainer to perform

the legal services that will be necessary during their chapter 11 cases and (b) scheduling a

hearing to determine whether the relief should be granted on a final basis.

16.    Since July 12, 2005, Skadden has performed extensive legal work for the

Debtors in connection with their ongoing restructuring efforts designed to complete their

transformation plan and to preserve the value of the company.

17.    Prior to commencement of these chapter 11 cases, the Debtors sought the

services of Skadden with respect to, among other things, advice regarding restructuring

matters in general and, if required,  preparation for the potential commencement and

prosecution of chapter 11 cases for the Debtors pursuant to an engagement agreement with

Skadden dated as of July 12, 2005 (the "Engagement Agreement").

## Basis For Relief

18.    The Debtors believe that continued representation by their prepetition

restructuring counsel, Skadden, is critical to the Debtors' efforts to restructure their businesses

because Skadden has become familiar with the Debtors' business and financial and legal

affairs and, accordingly, is well-suited to guide the Debtors through the chapter 11 process.

19.    Since the commencement of this engagement, Skadden has assisted the

Debtors and their affiliates in connection with, among other things, acting as special corporate

counsel to the Debtors and providing advice regarding, without limitation, their efforts to

effectuate a consensual resolution with General Motors Corporation and the Debtors' major

unions, attending board of directors meetings (and various committees thereof) and internal

company meetings from time to time, and the preparations for the filing of these cases.

20.    The Debtors have selected Skadden as their attorneys because of its

experience and knowledge in the field of debtors' and creditors' rights and business

reorganizations under chapter 11 of the Bankruptcy Code. Indeed, Skadden believes it has

assembled a highly qualified team of attorneys to service the Debtors during their

reorganization efforts. John Wm. Butler, Jr., co-leader of Skadden worldwide corporate

restructuring practice will coordinate the overall representation of the Debtors along with

Peter Allan Atkins. Mr. Butler has served as counsel in transactional work with debtors,

sellers, purchasers and creditors of financially troubled companies, in nonjudicial

restructurings, and in chapter 11 reorganization cases in several hundred transactions across

North America and in international transactions located in Asia, Australia, Europe, South

America and the Middle East. Mr. Butler has also represented creditors' and equity

committees, secured lenders and chapter 7 trustees in numerous cases in this and other

jurisdictions.  Attached hereto as Exhibit A is the professional biography of Mr. Butler

detailing his specific experience.  In addition, other members of Skadden who have been

actively involved in representing the Debtors prior to the commencement of these cases will

continue to perform services for the Debtors postpetition.

      21.   Each of the Debtors desire to employ Skadden under a general retainer

because of the extensive legal services that will be required in connection with their

respective chapter 11 cases and the firm's familiarity with the business, financial and legal

affairs of the Debtors and their affiliates.

Services To Be Rendered

      22.   The services of attorneys are necessary to enable the Debtors to execute

faithfully their duties as debtors-in-possession.  Subject to further order of this Court, the firm

of Skadden will be required to render, among others, the following services to the Debtors as

requested by the Debtors:

    (a)   advise the Debtors with respect to their powers and duties as debtors and
debtors-in-possession in the continued management and operation of their
business and properties;

    (b)   attend meetings and negotiate with representatives of creditors and other
parties in interest;

    (c)   advise and consult on the conduct of the case, including all of the legal
and administrative requirements of operating in chapter 11;

    (d)   advise the Debtors in connection with any contemplated sales of assets or
business combinations, including the negotiation of asset, stock purchase,
merger or joint venture agreements, formulate and implement bidding
procedures, evaluate competing offers, draft appropriate corporate

10

documents with respect to the proposed sales, and counsel the Debtors in connection with the closing of such sales;

(e)  advise the Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f)  provide advice to the Debtors with respect to legal issues arising in or relating to the Debtors' ordinary course of business including attendance at senior management meetings, meetings with the Debtors' financial advisors and meetings of the board of directors, and advice on employee, workers' compensation, employee benefits, executive compensation, tax, environmental, banking, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs and regulatory matters and advise the Debtors with respect to continuing disclosure and reporting obligations, if any, under securities laws;

(g)  take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against those estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(h)  negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(i)  prepare on the Debtors' behalf all petitions, motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(j)  attend meetings with third parties and participate in negotiations with respect to the above matters;

(k)  appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(l)  perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these chapter 11 cases and bring the Debtors' chapter 11 cases to a conclusion.

23.  Skadden has indicated a willingness to act on behalf of, and render such services to, the Debtors.[4]

<u>Disinterestedness Of Professionals</u>

24.  Except as set forth in the Butler Declaration, to the best of the Debtors' knowledge, the members, counsel and associates of the firm of Skadden (a) do not have any connection with any of the Debtors, their affiliates, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party-in-interest, or their respective attorneys and accountants, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the Debtors' estates.

25.  More specifically, as set forth in the Butler Declaration:

(a)  Neither Skadden nor any attorney at the Firm holds or represents an interest adverse to the estates.

(b)  Except as set forth herein and in the Butler Declaration, neither Skadden nor any attorney at the Firm is or was a creditor, an equity holder, or an insider of the Debtors, except that Skadden previously rendered legal services to the Debtors for which it was compensated. Certain Skadden attorneys may own Delphi common stock, either directly or indirectly. Also, partners of the Firm may hold Delphi common stock in managed accounts over which they have no control over investment decisions pertaining to holdings in such accounts. Pursuant to the internal policy of Skadden, the Debtors have been placed on the firm's "restricted list" and no sale or purchase of securities or claims relating to the Debtors will be

---

[4]    Concurrently herein, the Debtors have filed an application under 11 U.S.C. § 327(a) to retain Togut Segal & Segal as conflicts counsel and an application under 11 U.S.C. § 327(e) to retain Shearman & Sterling LLP as their special counsel. The Debtors will take the appropriate steps to ensure that there is no unnecessary and wasteful duplication of efforts by and between Togut Segal & Segal, Shearman & Sterling LLP and Skadden.

12

authorized or permitted during the pendency of our retention as the Debtors' counsel in the chapter 11 cases.

(c) Neither Skadden nor any attorney at the Firm is or was an investment banker for any outstanding security of the Debtors.

(d) Neither Skadden nor any attorney at the Firm is or was, within three years before the filing of the Debtors' chapter 11 cases, an investment banker for any security of the Debtors, or an attorney for an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

(e) Neither Skadden nor any attorney at the Firm is or was, within two years before the Petition Date, a director, officer or employee of the Debtors or of an investment banker of the Debtors.

(f) Skadden does not have an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or an investment banker specified in the foregoing paragraphs, or for any other reason.

26.    In view of the foregoing, the Debtors believe that Skadden is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, except as set forth in the Butler Declaration.

27.    In addition, the Debtors are informed by Skadden that no other attorney at Skadden is related to any United States Bankruptcy Judge for the Southern District of New York or to the United States Trustee for such district or to any employee in the office thereof, except that Adlai S. Hardin III, a Corporate Restructuring associate employed by Skadden in its New York office, is the son of Judge Adlai Hardin.

<u>Professional Compensation</u>

28.    The Engagement Agreement provided for the implementation of a retainer program pursuant to which the Debtors paid an initial retainer of $500,000 for

13

professional services rendered and to be rendered and charges and disbursements incurred to Skadden on behalf of the Debtors in connection with those services described in the Engagement Agreement (the "Initial Retainer"). Thereafter, Skadden periodically invoiced the Debtors and drew down the Initial Retainer in payment of such invoices and was paid certain supplemental amounts in order to replenish the Initial Retainer (collectively, the "Supplemental Retainer") in the following amounts and on the following dates: $1,600,000 on August 19, 2005, $2,000,000 on September 8, 2005, and $1,750,000 on September 27, 2005.

29.    Pursuant to the Engagement Agreement, Skadden received a filing retainer of $4,000,000 to be utilized in accordance with the Engagement Agreement to cover a portion of the projected fees, charges and disbursements to be incurred during the reorganization cases (the "Filing Retainer," and, together with the Initial Retainer and the Supplemental Retainer, the "Retainer").

30.    Pursuant to the Engagement Agreement, Skadden will apply the Retainer to pay any fees, charges and disbursements which remain unpaid as of the Petition Date and will retain the remainder of the Retainer to be applied to any fees, charges and disbursements which remain unpaid at the end of the reorganization cases. As of October 7, 2005 (the last date on which the firm's books and records were reviewed in connection with the preparation of this application), after application of all prepetition fees, charges and disbursements incurred and posted as of that date (including estimated fees, charges and disbursements billed as of October 8, 2005 prior to the commencement of these cases), the amount of the Retainer was $4,033,019.

14

31.    According to Skadden's books and records, for the period July 12, 2005,

through October 8, 2005, the total amount of services billed to the Debtors in connection with

contingency planning was $2,845,087 with an additional $227,668 for charges and

disbursements. During the same period, the total aggregate amount of all services billed was

$5,500,654 plus charges and disbursements in the amount of $315,327. Skadden's books and

records further reflect that for the period July 12, 2005 through October 8, 2005, Skadden

received an aggregate of $9,850,000 from the Debtors, including payments received for

services rendered prior to the filing on October 8, 2005, and is inclusive of the Retainer

balance of $4,033,019. The aggregate amount applied to fees, charges and disbursements for

the same period was $5,816,981, exclusive of the Retainer balance of $4,033,019. Any

portion of the prepetition amounts received by Skadden that has not yet been applied to

prepetition fees and expenses will be applied when such amounts are identified. Should any

balance remain after such application, the remainder will be held as a retainer for and applied

against postpetition fees and expenses that are allowed by the Court.

32.    Pursuant to the Engagement Agreement, Skadden provides the Debtors

with periodic (no less frequently than monthly) statements for services rendered and charges

and disbursements incurred. During the course of the reorganization cases, the issuance of

periodic statements shall constitute a request for an interim payment against the reasonable

fees to be determined at the conclusion of the representation. For professional services,

Skadden's fees are based in part on its guideline hourly rates which are periodically adjusted.

Skadden will be providing professional services to the Debtors under its standard bundled rate

schedule and, therefore, Skadden will not be seeking to be separately compensated for certain

staff, clerical and resource charges.  As of September 1, 2005, the hourly rates under the

bundled rate structure range from $585 to $835 for partners and of counsel, $560 to $640 for

counsel and special counsel, $295 to $540 for associates, and $90 to $230 for legal assistants

and support staff.  The hourly rates set forth above are subject to periodic increases in the

normal course of the firm's business, often due to the increased experience of a particular

professional.

      33.   Skadden intends to apply to the Court for allowance of compensation for

professional services rendered and reimbursement of charges and disbursements incurred in

these chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules for the Southern District of New York (the "Local Rules")

and the United States Trustee Guidelines.  Skadden will seek compensation for the services of

each attorney and paraprofessional acting on behalf of the Debtors in these cases at the then-

current bundled rate charged for such services on a non-bankruptcy matter.

      34.   The hourly rates set forth above are the Firm's standard bundled hourly

rates for work of this nature.  These rates are set at a level designed to compensate Skadden

fairly for the work of its attorneys and legal assistants and to cover fixed and routine overhead

expenses including those items billed separately to other clients under the Firm's standard

unbundled rate structure.  Consistent with the Firm's policy with respect to other clients,

Skadden will continue to charge the Debtors for all other services provided and for other

charges and disbursements incurred in the rendition of services.  These charges and

disbursements include, among other things, costs for telephone charges, photocopying (at a

reduced rate of $0.10 per page for black and white copies and higher commensurate charges

16

for color copies), travel, business meals, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.  Charges and disbursements are invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements. (The "Policy Statement Concerning Charges and Disbursements" is attached as Exhibit B to the Engagement Agreement.)  Certain charges and disbursements are not separately charged for under the bundled rate structure as described in the Engagement Agreement.

35.   Skadden has agreed to accept as compensation such sums as may be allowed by this Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues or tasks addressed in these cases.

36.   Other than as set forth above and in the Butler Declaration, no arrangement is proposed between the Debtors and Skadden for compensation to be paid in these cases, and no agreement or understanding exists between Skadden and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

<u>Notice</u>

37.   Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to (i) the office of the United States Trustee, (ii) the Debtors' fifty (50) largest unsecured creditors, (iii) counsel for the agent to the Debtors' pre-petition credit facility, and (iv) counsel for the agent to the Debtors' proposed

post-petition credit facility.  In light of the nature of the relief requested, the Debtors submit

that no other or further notice is necessary.

### Memorandum Of Law

38.    Because the legal points and authorities upon which this Motion relies

are incorporated herein, the Debtors respectfully request that the requirement of the service

and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

18

WHEREFORE, the Debtors respectfully request that this Court enter interim and final and orders (i) authorizing the Debtors' retention of Skadden upon the terms outlined in this Application, (ii) scheduling a final hearing thereon, and (iii) granting such other and further relief as is just and proper.

Dated:   New York, New York
         October 8, 2005

                                Delphi Corporation, et al.,
                                Debtors and Debtors-In-Possession


                                By:  s/ John D. Sheehan_____
                                Title: John D. Sheehan
                                Name: Vice President and Chief
                                       Restructuring Officer

Exhibit A
Professional Biography of John Wm. Butler, Jr.

# Biography



## John Wm. Butler Jr.

*Partner*
*Skadden, Arps, Slate, Meagher & Flom LLP*
*Corporate Restructuring*

Jack Butler is co-leader of Skadden's worldwide corporate restructuring practice, which serves corporations and their principal creditors and investors by providing value-added legal solutions in troubled company M&A, financing and restructuring situations. He has acted as lead counsel for sellers, purchasers and creditors in hundreds of transactions across the Americas as well as cross-border transactions in Asia, Australia, Europe and the Middle East. Mr. Butler also advises officers and directors of public companies involved in debt restructuring on matters related to corporate governance and fiduciary duty.

Mr. Butler's representative company matters include the restructuring of Delphi Corporation, Friedman's Inc., Haynes International, Inc., Kmart Corporation, Per-Se Technologies, Inc. (formerly Medaphis Corporation), Rite Aid Corporation, Singer N.V., Venator Group, Inc., Wickes Furniture Co., Inc. and Xerox Corporation, and special counsel representations of 360/networks, inc., Enron Corporation and The Warnaco Group, Inc. He also represented US Airways Group, Inc. in its 2002 restructuring, which provided the company with $1.24 billion in liquidity. Mr. Butler has substantial experience in representing companies in transactions that provided for the disposition of their assets and operating businesses to third parties as part of Chapter 11 cases, including: Air Transport International LLC, Comdisco, Inc., Eagle Food Centers, Inc., FPA Medical Management, Inc., Peter J. Schmitt Co., Inc., Service Merchandise Company, Inc. and USN Communications, Inc.

Mr. Butler's cross-border experience includes representing numerous companies such as AM International, Inc., Comdisco, Singer, Warnaco and Xerox with the restructuring of their subsidiaries located outside the United States, international financing transactions, and divestiture of various business lines and entities. He has also advised on cross-border matters on behalf of Faurecia N.A., a French automotive equipment supplier, in connection with distressed acquisitions and other matters; and Lightel, S.A. and Tess, S.A., Brazilian telecommunications companies, in connection with the financing and structuring of various privatization transactions in Brazil.

Representative creditor matters include advice to Bankers Trust Company, as agent for the senior lenders in the reorganization cases of Bradlees, Inc. and The Grand Union Company; Credit Suisse First Boston, in connection with the restructuring and sale of Long John Silver's restaurants; and Verizon Capital Corporation and its special purpose affiliates in the reorganization cases of PG&E National Energy Group, Inc. and USGen New England, Inc.

Chicago Office
T: 312.407.0730
F: 312.407.8501

New York Office
T: 212.735.3114

E: jbutler@skadden.com

### Education

J.D., University of Michigan Law School, 1980

A.B., Princeton University, 1977
*(magna cum laude)*

### Admissions

Illinois
Michigan
U.S. Supreme Court

### Associations/Affiliations

Chairman (1996-1997) and Director (1991-1999, 2001-2004), Turnaround Management Association

Fellow, American College of Bankruptcy (Elected 1997)

Fellow, International Insolvency Institute (Elected 2002)

Director, American Bankruptcy Institute (1992-1998)

Chairman (1997) and Director (1993-2003), American Board of Certification

Chairman (1997), Governing Board, Commercial Finance Association Education Foundation

(continued on reverse side)

# Biography

## John Wm. Butler Jr.

Mr. Butler was the recipient of the first-ever Chairman's Award from the Turnaround Management Association in 2001 for his contributions to and standing in the corporate renewal industry. He has been listed in all editions of the *K&A Restructuring Register*, the peer group listing of the top restructuring attorneys and financial advisors in the United States; has been named by *Turnarounds & Workouts* to its list of the top dozen restructuring lawyers in America for the last seven consecutive years; is listed as a leader in the corporate restructuring and insolvency field in *Chambers USA: America's Leading Lawyers for Business 2005* and in the 10th edition (2005) of *Global Counsel (PLC Which Lawyer?)*; and was named as one of the top 25 most highly regarded global restructuring lawyers in the 2005 edition of *The International Who's Who of Business Lawyers* and as one of the top 10 worldwide restructuring lawyers in 2002 by *Global Counsel* magazine.

In addition, Mr. Butler was profiled as one of the "Dealmakers of the Year" by *The American Lawyer* in its 2004 Corporate Scorecard issue (April 2004); was named to the BTI Consulting Group's Client Service All-Star Team for 2004 based on interviews with more than 200 corporate counsel at *Fortune* 1000 companies; and was selected as one of the top 100 lawyers in Illinois in 2005 by *Law & Politics* and *Chicago* magazine.

Associate General Counsel, Commercial Finance Association (1998-2002)

Group of Thirty Six INSOL International (1995-present)

Co-Chair, 2005 INSOL World Congress

Chairman (1998 and 2003), Turnaround Management Association Tenth and Fifteenth Anniversary Conventions

Co-Chair, *The American Lawyer* and Zeughauser Group Best in the Business: Annual Practice Leaders Conference (2004-present)

Co-Chair, Renaissance American/BeardGroup Corporate Reorganizations Conference (1999-present) and Healthcare Transactions Conference (2000-present)

Executive Advisory Council, Children Affected by AIDS Foundation (2003-present)

Board of Governors, Hugh O'Brian Youth Leadership (1998-present)

Day School Advisory Board, St. Chrysostom's Day School (2005-present)

Second Century Campaign Steering Committee, Francis W. Parker School (2005-present)

John Maclean Society, Princeton University (1985-present)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                          :     Chapter 11
                       :

DELPHI CORPORATION, et al.,   :     Case No. 05-_____ (___)
                       :

                Debtors.   :     (Jointly Administered)
                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF JOHN WM. BUTLER, JR. IN SUPPORT OF APPLICATION
FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 329 AND FED.R. BANKR. P. 2014
AND 2016 AUTHORIZING EMPLOYMENT AND RETENTION OF SKADDEN,
ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
AS ATTORNEYS FOR DEBTORS-IN-POSSESSION**

I, JOHN WM. BUTLER, JR., declare that:

STATE OF NEW YORK      )
                           ) ss:
COUNTY OF NEW YORK    )

        1.      I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP, which maintains an office for the practice of law at 333 West Wacker Drive, Chicago, Illinois 60606-1225. I am a member in good standing of the bars of, and am admitted to practice in, the States of Illinois and Michigan, the United States District Courts for the Northern District of Illinois and the Eastern and Western Districts of Michigan, the United States Court of Appeals for the Sixth and Seventh Circuits, and the United States Supreme Court. I submit this declaration pursuant to 11 U.S.C. §§ 327 and 329 and Fed. R. Bank. P. 2014 and 2016 in support of the Application for Order Pursuant to 11 U.S.C. §§ 327(a) and 329 Authorizing the Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates as Attorneys for the Debtors-in-Possession (the "Application"), filed contemporaneously herewith by the Debtors. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.[1]

## QUALIFICATION OF PROFESSIONALS

        2.      As of July 12, 2005, Skadden, Arps, Slate, Meagher & Flom LLP and its affiliates (collectively, "Skadden" or the "Firm") began representing Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate

---

[1]     Certain of the disclosures herein relate to matters within the knowledge of other attorneys at Skadden (as defined below) and are based on information provided by them.

Debtors,")[2] , debtors and debtors in possession in the above-captioned cases, (collectively, the "Debtors") in their present efforts to restructure their businesses pursuant to an engagement agreement with Skadden dated as of July 12, 2005 (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit A.

　　　　　3.　　　Skadden believes it has assembled a highly qualified, dedicated team of attorneys that have committed, and will continue to commit, a concentrated effort to the Engagement to represent the Debtors during their reorganization efforts.  I am the co-leader of Skadden's worldwide corporate restructuring practice and have served as counsel in transactional work with debtors, sellers, purchasers, and creditors of finan-cially troubled companies, in nonjudicial restructurings and in chapter 11 reorganization cases in several hundred transactions across North America, and in international transac-tions located in Asia, Australia, Europe, South America, and the Middle East.  I am a Fellow of the American College of Bankruptcy and the International Insolvency Institute, served as Chairman of the Turnaround Management Association in 1996 and 1997 and as director from 1991-99 and again from 2001-04, was President and Chairman of the

---

[2]　　　In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufactur-ing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connec-tion Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corpora-tion, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmen-tal Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

American Board of Certification from 1995-97, was a director of the American Bank-

ruptcy Institute from 1991-98, was Chairman of the Governing Board of the Commercial

Finance Association Education Foundation from 1994-96, and was Associate General

Counsel of the Commercial Finance Association from 1996-2000.

    4.  Peter Allan Atkins and I will coordinate Skadden's overall repre-

sentation of the Debtors.  Other Skadden partners with principal responsibilities in the

Engagement matters are Eric L. Cochran, N. Lynn Hiestand, John K. Lyons and Kayalyn

A. Marafioti.  Mr. Atkins, a corporate partner resident in the New York office, concen-

trates on corporate, securities, and financial practice areas, including extensive involve-

ment in the mergers and acquisitions field.  Mr. Cochran, a corporate partner resident in

the New York office, has extensive experience in international transactions, mergers and

acquisitions, and corporate governance matters.  Ms. Hiestand, a corporate restructuring

partner resident in the London office, represents buyers, sellers, borrowers and lenders,

debtors, creditors, and financial advisors in a variety of international transactions,

primarily those involving financially troubled companies and will lead the legal efforts in

connection with international initiatives and issues.  Mr. Lyons, a corporate restructuring

partner resident in the Chicago office, represents debtors, creditors, sellers, purchasers,

and other financial advisors in all stages of complex restructuring transactions from

chapter 11 reorganizations to out of court negotiations, workouts and divestitures, and

will be primarily responsible advising the Debtors at their worldwide headquarters on

general aspects of the reorganization.  Ms. Marafioti, a corporate restructuring partner

resident in the New York office, who represents creditors, debtors, committees, equity

security holders, and foreign liquidators in a wide range of restructuring transactions and

bankruptcy litigation, will be responsible for general aspects of the reorganization including coordination of the chapter 11 cases in this Court.

5.    Other Skadden partners presently with engagement responsibilities include Lawrence D. Frishman (finance), John P. Furfaro (labor), Cliff Gross (tax), Neil M. Leff (executive compensation), Marian P. Wexler (real estate) and George Zimmerman (litigation).  Additional lawyers will be added to Skadden's representation of the Debtors in these chapter 11 cases on an as needed basis.

6.    As a result of its representation of the Debtors, Skadden has become informed about the Debtors and their businesses, and is generally familiar with the Debtors' capital structure and those material agreements relating to Skadden's engagement as disclosed to us by the Debtors.

<u>SERVICES TO BE RENDERED</u>

7.    The Debtors have requested that Skadden render the following services in connection with these cases:

   (a)    advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

   (b)    attend meetings and negotiate with representatives of creditors and other parties-in-interest;

   (c)    advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in chapter 11;

   (d)    advise the Debtors in connection with any contemplated sales of assets or business combinations, including the negotiation of asset, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtors in connection with the closing of such sales;

5

(e)    advise the Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f)    provide advice to the Debtors with respect to legal issues arising in or relating to the Debtors' ordinary course of businesses, including attendance at senior management meetings, meetings with the Debtors' financial advisors, meetings of the board of directors, and advice on employee, workers' compensation, employee benefits, executive compensation, tax, environmental, banking, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs, and regulatory matters, and advise the Debtors with respect to continuing disclosure and reporting obligations, if any, under securities laws;

(g)    take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against those estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(h)    negotiate and prepare on the Debtors' behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents and take any necessary action on behalf of the Debtors to obtain confirmation of such plan(s);

(i)    prepare on the Debtors' behalf all petitions, motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(j)    attend meetings with third parties and participate in negotiations with respect to the above matters;

(k)    appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(l)    perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with these chapter 11 cases and bring the Debtors' chapter 11 cases to a conclusion.

6

8.      Subject to this Court's approval of the Application, Skadden is willing to serve as the Debtors' counsel and to perform the services described above.

## DISINTERESTEDNESS OF SKADDEN

9.      Except as otherwise set forth herein, the partners, counsel, and associates of Skadden (a) do not have any connection with the Debtors or their affiliates, their creditors, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants, (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and (c) do not hold or represent any interest adverse to the estates.

10.     Skadden represented, represents, and in the future likely will represent, certain creditors of the Debtors and other parties-in-interest in matters unrelated to the Debtors, the Debtors' reorganization cases, or such entities' claims against or interests in the Debtors.  Of the Debtors' (a) affiliates, (b) officers and directors, (c) joint owners of Debtors' affiliates, (d) fifty largest unsecured creditors (on a consolidated basis as of September 2005 as determined by the Debtors), (e) counterparties to major contracts, (f) major lenders, (g) shareholders who own over 5% of the Debtors' shares, (h) professionals, (i) counterparties to major leases, (j) insurance providers, (k) major vendors, (l) major customers, (m) non-Debtor parties to collective bargaining agreements with the Debtors, (n) indenture trustees, (o) underwriters of securities, (p) major litigation parties, (r) state and governmental agencies, and (s) Judges and United States Trustees for the United States Bankruptcy Court for the Southern District of New York, Skadden currently represents or has represented the following entities (or in some cases their affiliates as indicated):

7

11.    <u>Officers and Directors</u>:  The current and former directors and

officers of the Debtors include Jose Maria Alapont, J.T. Battenberg III, R. H. Brust, Alan

S. Dawes, Richard Erwin, Robert Katz, Jeffrey Krause, Robert Steve Miller Jr., Rodney

O'Neal, Brian O'Neill, John D. Opie, Roger S. Penske, John D. Sheehan, John Short and

Robert Sparks.  In addition, John D. Opie is an outside director of NBC, Inc., an affiliate

of GE; R. H. Brust is an executive director of Eastman Kodak Co., Robert S. Miller Jr. is

a current outside director of Symantec Corporation and UAL Corp. and a former outside

director of Federal-Mogul Corp. and DaimlerChrysler Motors Corp.; Rodney O'Neal is an

outside director of Goodyear Tire & Rubber Co.; Roger S. Penske is on the board of

directors of Penske Corp. and GE Co.; Alan S. Dawes is an outside director of

Autonation, Inc.; Brian O'Neill is director of Prudential International Assurance Public

Ltd. Co.; J. T. Battenberg III is outside director of Sara Lee Corporation; Jeffrey Krause is

executive of First Interstate Insurance Agency of Oregon; Jose Maria Alapont is Execu-

tive of Federal-Mogul Corporation; Richard Erwin is a Managing Director of Roche OY;

Robert Katz is President of Liberty Supply, Inc.  Skadden currently represents or has

represented NBC, Inc., Eastman Kodak Co, Federal-Mogul Corp., Symantec Corporation,

DaimlerChrysler Motors Corp., Waste Management, Inc., UAL Corp., Goodyear Tire &

Rubber Co., Penske Corp., GE Co., Autonation, Inc., The Williams Companies Inc.,

Prudential International Assurance Public Ltd. Co., Sara Lee Corporation, First Interstate

Insurance Agency of Oregon, Atlas Processing Company, Roche OY, and Liberty Supply,

Inc. or their affiliates in matters unrelated to the Debtors.

12.    Skadden represents Robert S. "Steve" Miller, Jr., Delphi's Chair-

man and Chief Executive Officer, on a matter unrelated to the Company involving Mr.

Miller's directorship of Waste Management, Inc.  In addition, prior to the Petition Date

and with the prior knowledge and consent of the Company, Skadden provided advice to

John D. Sheehan, the Company's Vice President and Chief Restructuring Officer, in

connection with meetings, interviews, testimony, and submissions relating to the investi-

gation of the Company by the Securities and Exchange Commission as well as the

internal investigation completed prior to July 2005 on a basis that was not adverse to the

Company.

        13.    <u>Joint Owners of Debtors' affiliates</u>:  Skadden currently represents

RS Investment Management in matters unrelated to the Debtors and their chapter 11

cases.  In addition, Skadden currently represents or in the past has represented Palm, Inc.

and Royce & Assocs, believed to be affiliates of some of the Debtors' joint owners of

their affiliates in matters unrelated to the Debtors and their chapter 11 cases.

        14.    <u>Fifty Largest Unsecured Creditors</u>:  Skadden currently represents

or has represented the following fifty largest unsecured creditors or their affiliates in

matters unrelated to the Debtors and their chapter 11 cases: AK Steel Corporation;

affiliates of American Axle and Manufacturing Holdings Inc.; and an affiliate of Autocam

Corp; the parent company of Autoliv Asp Inc.; Engelhard Corporation and some affili-

ates; affiliates of Freescale Semiconductor Inc.; General Motors Corp. and affiliates[3];

affiliates of HSBC Bank USA, N.A.; affiliates of Infineon Technologies AG; Ispat Inland,

---

[3]      As of the date of this Affidavit, Skadden does not represent GM and will not represent GM in the
future prior to the termination of the Engagement except on unrelated matters in accordance with
the terms of Skadden's Engagement Agreement and after disclosure to the Debtors, the United
States Trustee and the Court of the fact of any such engagement.  Skadden currently represents a
subsidiary of and certain financial advisors to GM on certain limited matters unrelated to the
Debtors, but is free to represent the Debtors on a basis adverse to GM in the chapter 11 cases
without any notice to or further consent from GM.

9

Inc.; Johnson Electric Holdings Ltd.; affiliates of Molex Inc.; affiliates of NEC Electronics Inc.; Olin Corp. and an affiliate; an affiliate of Panasonic Automotive; an affiliate of Pechiney Rolled Products LLC.; an affiliate of Robert Bosch Corporation; SGS Thomson; affiliates of Siemens Automotive Ltd.; affiliates of TRW Automotive; Tyco International Ltd. and affiliates; an affiliate of Waupaca Foundry Inc.

      15.   <u>Counterparties to Major Contracts</u>:  Skadden currently represents or has represented the following counterparties to major contracts or their affiliates in matters unrelated to the Debtors and their chapter 11 cases: Alltel Corporation and an affiliate; affiliates of American Electric Power (AEP); affiliates of Ameritech Information Systems, Inc.; AT&T Corporation and an affiliate; AT&T Wireless and affiliates; affiliates of Cardinal Health, Inc.; Cellco Partnership (d/b/a Verizon Wireless) and affiliates; the parent company of Cinergy PSI IN; Consumers Energy Company and affiliates; Consumers Power Company and affiliates; an affiliate of the Deparment of Commerce/National Institute of Standards and Technology (DOC/NIST); an affiliate of the Department of Defense/Tank-Automotive and Armaments Command (DOD/TACOM); an affiliate of the Department of Energy/National Energy Technology Laboratory (DOE/NETL); an affiliate of the Department of Transportation; an affiliate of DPL Energy Resources, Inc.; affiliates of DTE Energy Co.; Entergy (MS Power & Light) USA and affiliates; affiliates of El Paso Electric Co.; an affiliate of Georgia Power Company; Honeywell International; an affiliate of Indiana Michigan Power Company; affiliates of Indiana-American Water Company; affiliates of Indianapolis Power & Light Company; an affiliate of Kokomo Gas & Fuel Co.; KPL (Western Resourses); affiliates of Mississippi Power Company; an affiliate of National Aeronautics and Space Adminis-

tration (NASA); Nextel Communications, Inc.; OneOK Energy Marketing and affiliates;

affiliates of Pepco Energy Services; affiliates of PSE&G; affiliates of SBC Ameritech;

affiliates of SBC Global Services, Inc.; affiliates of SkyTel; an affiliate of Southern

California Edison; affiliates of Sprint United; an affiliate of Tennessee Valley Authority;

affiliates of Time Warner, Inc.; affiliates of Verizon; and an affiliate of Wisconsin

Electric Power Co.

     16.   <u>Major Lenders</u>:[4] Skadden currently represents or has represented

the following major lenders or their affiliates in matters unrelated to the Debtors and their

chapter 11 cases: several affiliates of ABN Amro Bank N.V.; Amaranth Partners LLC;

affiliates of Banc One Capital Markets, Inc.; Bank of China Luxembourg S.A.; Bank of

New York; Bank of Nova Scotia and affiliates; The Bank of Tokyo-Mitsubishi, Ltd. and

affiliates; Barclays Bank plc. and affiliates; affiliates of Bear Stearns Investment Prod-

ucts; BNP Paribas and affiliates; Calyon NY Branch (f/k/a Credit Lyonnais) and affili-

ates; affiliates of Cargill Financial Services International, Inc.; an affiliate of Cede & Co.;

Citibank N.A. and affiliates; affiliates of Citicorp Securities, Inc.; affiliates of Citicorp

Vendor Finance, Inc.; Citigroup Financial Products Inc. and affiliates; affiliates of

Comerica Bank; Commerzbank A.G. and affiliates; and affiliates of Compaq Financial

Services Corp.; an affiliate of Dai-Ichi Kangyo Trust Co. of New York; Deutsche Bank

A.G. and affiliates; Deutsche Bank Trust Company; Fifth Third Bank; several affiliates of

First Chicago Capital Markets, Inc.; Goldman Sachs Credit Partners L.P.; an affiliate of

---

[4]     Each of the lenders included in this category is limited to a $10 million commitment. Skadden
may have represented or may represent certain of the lenders below the $10 million threshold in
matters unrelated to the Debtors and their chapter 11 cases. Skadden is in the process of conduct-
ing disclosure research with respect to the voluminous number of lenders who have extended credit
to the Debtors in an amount below this threshold and will include these results in a supplemental
declaration after completion.

HBK Master Fund L.P.; J.P. Morgan Chase Bank, N.A. and several of its affiliates[5];

affiliates of KeyBank National Association; affiliates of Lehman Commercial Paper, Inc.;

Mizhuo Corporate Bank Ltd. (f/k/a DKB); affiliates of Morgan Stanley Senior Fundings,

Inc.; the parent company and affiliates of Regions Bank; Societe Generale S.A. and

affiliates; Sumitomo Mitsui Banking Corporation and an affiliate; UBS AG and several of

its affiliates; an affiliate of UFJ Bank Limited; Wachovia Bank, N.A. and affiliates; an

affiliate of Whitney National Bank.

17.    <u>Major Shareholders</u>:  Skadden currently represents or has repre-

sented the following major shareholders or affiliates of such major shareholders in

matters unrelated to the Debtors and their chapter 11 cases: affiliates of Capital Group

International, Inc.; Capital Research & Management Co.; affiliates of Dodge & Cox; and

State Street Bank and Trust Co.

18.    <u>Professionals</u>:  Skadden currently represents or has represented the

following professionals or affiliates of such professionals in matters unrelated to the

Debtors and their chapter 11 cases: BBK Ltd.; an affiliate of Corporate Executive Board

Co.; Ernst & Young LLP and an affiliate; affiliates of Fidelity Employer Services

Company LLC; FTI Consulting, Inc.; KPMG LLP and affiliates; Salomon Smith Barney

---

[5]    Skadden also represented JP Morgan Chase Bank, N.A. in connection with a Receivables Purchase
Agreement, dated as of March 31, 2003, as amended from time to time, among Delphi Receivables
LLC as Seller, Delphi Corporation as Servicer, JP Morgan, Falcon Asset Securitization Corpora-
tion, ABN AMRO Bank N.V., Amsterdam Funding Corporation, The Bank of Tokyo-Mitsubishi,
Ltd., and Gotham Funding Corporation.  On October 6, 2005, the Debtors gave notice of their
election to terminate the U.S. Facility Program pursuant to the terms of the relevant agreements
upon the earlier of October 11, 2005 and the occurrence of an amortization event.  The commence-
ment of these chapter 11 cases has constituted such an amortization event and the U.S. Facility
Program has terminated.   As of the Petition Date, there were no borrowings under the U.S.
Facility Program.

Inc. (a/k/a Citigroup) and several affiliates; affiliates of Sedgwick Claims Management

Services, Inc.; and Sitrick & Company, Inc.

19.    Counterparties to Major Leases:  Skadden represents or has

represented the following counterparties to major leases or affiliates of such

counterparties to major leases in matters unrelated to the Debtors and their chapter 11

cases: affiliates of Ford Motor Land Development Corporation; an affiliate of Kilroy

Relaty, L.P. (b/k/a Limar Realty Corp.); and LaSalle National Bank.

20.    Insurance Providers:  Skadden represents or has represented the

following insurance providers or affiliates of such insurance providers in matters

unrelated to the Debtors and their chapter 11 cases: an affiliate of ACE American

Insurance Company; ACE USA and an affiliate of ACE USA; affiliates of AIG Excess

Casualty North America; affiliates of AIU, Inc.; Allianz of America Corp. and affiliates;

affiliates of American Home Assurance Co.; affiliates of American International Group,

Inc. (AIG); the parent company of AON (Bermuda) Limited; the ultimate company of

AON UK; an affiliate of Arch Insurance Group Inc. (U.S.); Blue Cross Blue Shield of

Michigan; affiliates of Canawill, Inc.; the parent company and an affiliate of CIGNA

Behavioral Health; CIGNA Corp.; Continental Casualty Co. (C.N.A.); an affiliate of

Delta Dental Plans Association; affiliates of Great American Insurance Co.; affiliates of

Gulf Underwriters Insurance Company; affiliates of Hewitt Associates; affiliates of Ins.

Co. of the State of Pennsylvania (AIG); Liberty Mutual Insurance Company; affiliates of

Marsh USA, Inc.; an affiliate of Medco Health Solutions, Inc.; the parent company of The

Medstat Group Inc.; Metropolitan Life Insurance Co. (MetLife) and some of its affiliates;

National Union Fire Ins. Co. (AIG) and affiliates; affiliates of Pacific Employers Insur-

ance Co. (ACE USA); PriceWaterhouseCoopers International Ltd.; affiliates of St. Paul

Fire & Marine Insurance Company; affiliates of Steadfast Insurance Company (Zurich);

Swiss Re Company and affiliates; affiliates of Twin City Fire Insurance (Hartford);

United Health Group; affiliates of United State Aviation Insurance Group (USAIG); an

affiliate of Watson Wyatt & Co.; XL Global Reinsurance Company, Ltd.; and the parent

company of Zurich American Insurance Company.

     21.   Major Vendors: Skadden represents or has represented the

following major vendors or affiliates of such vendors in matters unrelated to the Debtors

and their chapter 11 cases: 3M Company; affiliates of Advanced Micro Devices, Inc.;

affiliates of Advanced Polymer Systems, Inc. (n/k/a AP Pharma Inc.); Alcoa Inc. and an

affiliate; affiliates of Analog Devices Inc.; Basell USA Inc.; an affiliate of Bayer AG;

Best Buy Co.; affiliates of Carpenter Technology Corporation; Circuit City Stores Inc.

and affiliates; Dana Corporation; Deloitte & Touche USA LLP and some of its affiliates;

affiliates of Dura Automotive Systems Inc; an affiliate of ECO-BAT America LLC;

Electronic Data Systems Corporation (EDS); Exxon Mobil Corp. and an affiliate; an

affiliate of Federal Environmental Protection Agency; affiliate of The Furukawa Electric

Co.; General Electric Capital Co. and several of its affiliates; General Electric Co. and

several of its affiliates; affiliates of Georgia Gulf Corp.; Hayes Lemmerz International

Inc.; affiliates of Henkel KGAA; affiliates of Hitachi Ltd.; Hub Group Inc.; an affiliate of

Hyatt Legal Plans Inc.; an affiliate of Illinois Tool Works Inc.; an affiliate of International

Wire Group, Inc.; affiliates of Internet Corp.; an affiliate of Kyocera Corp.; Mahle

GMBH; Martinrea International Inc.; affiliates of Microchip Technology Inc.; an affiliate

of Mittal Steel (b/k/a ISPAT International Ltd.); affiliates of Motorola Automotive;

Motorola Inc. and an affiliate; affiliates of National Semiconductor Corp.; NEC Corp. and affiliates; an affiliate of Plymouth Rubber Company; PricewaterhouseCoopers LLP; an affiliate of RLI Surety; an affiliate of Robert Stiftung Bosch GMBH; RSR Corporation; Safeco Insurance Co. and affiliates; affiliates of Seiko Epson Corporation; an affiliate of Sequa Corp.; affiliates of Shell Oil; an affiliate of Spartech Corp.; SPX Corp; affiliates of Standard Motor Products Inc.; an affiliate of Steel Technologies Inc.; Texas Pacific Group Ltd.; Textron Inc. and an affiliate; an affiliate of Thyssenkrupp AG; affiliates of Tower Automotive Inc.; the parent company of Trico Products Corporation; affiliates of Tyco Electronics Corp; Unigraphics Solutions Inc.; US Steel Corporation and an affiliate; and Visteon Automotive Systems, Inc.

22.    Major Customers:  Skadden represents or has represented the following customers or affiliates of such customers in matters unrelated to the Debtors and their chapter 11 cases: affiliates of Aftermarket Technology Corp.; affiliates of Agilent Technologies Inc.; affiliates of Arvinmeritor Inc.; affiliate of AZ Automotive Corp.; an affiliate of Michael Baker, Corp.; Benteler Industries, Inc.; Brite Smile and affiliates; an affiliate of Cambrex Bio Science Inc.; affiliates of Cardinal Health Inc.; affiliates of Caterpillar Inc.; affiliates of Coinstar, Inc.; affiliates of Cummins, Inc.; DaimlerChrysler AG; Fiat Group and affiliates; Ford Motor Company; an affiliate of Harley Davidson, Inc.; Hewlett-Packard Co. and affiliates; affiliates of HP Financial Services; Hyundai Motor America; INO Therapeutics LLC; an affiliate of International Truck & Engine Corporation; an affiliate of Intier Automotive Inc.; Johnson Controls Inc.; the parent company of Kautex Textron;  affiliates of KLA Tencor Corp.; an affiliate of L-3 Communications Holdings Inc.; affiliates of Lear Corporation Automotive

15

Systems; and affiliates of Magna International Inc.; affiliates of Matco Tools; affiliates of

Medrad Inc.; Medtronic Inc.; Mitsubishi Motors of America Credit Co.; Navistar

International Corporation; affiliates of NuVasive, Inc.; affiliates of StorageTek (a/k/a

Starage Technology Corp.); Sunrise Medical Ltd. and an affiliate; an affiliate of Verilink

Corporation; and an affiliate of Volvo Parts North America, Inc.

23.    Non-Debtor Parties to Collective Bargaining Agreements:

Skadden has not previously represented any of the non-Debtor parties to collective

bargaining agreements.

24.    Indenture Trustees:  Skadden represents or has represented the

following indenture trustees or affiliates of such indenture trustees in matters unrelated to

the Debtors and their chapter 11 cases:  Bank One Trust Company N.A. and affiliates;

First National Bank of Chicago (a/k/a Bank One, N.A.) and several of its affiliates.; J.P.

Morgan Chase; and J.P. Morgan Trust Company, N.A. and affiliates.

25.    Underwriters of Securities:  Skadden represents or has represented

the following underwriters of securities or affiliates of such underwriters in matters

unrelated to the Debtors and their chapter 11 cases:  A.G. Edwards & Sons, Inc.; ABN

AMRO Incorporated and affiliates; Advest, Inc. and affiliates; Banc of America Securi-

ties LLC and affiliates; Barclays Capital Inc. and affiliates; BNP Paribas Securities Corp.

and affiliates; Citigroup Global Markets Inc. and affiliates; an affiliate of Comerica

Securities Inc.; Credit Suisse First Boston LLC and affiliates, Deutsche Bank Securities

Inc. and affiliates; HSBC Securities (USA) Inc. and affiliates; J.P. Morgan Securities Inc.

and affiliates; an affiliate of Janney Montgomery Scott LLC; McDonald Ivestments Inc.,

affiliates of Merrill Lynch, Pierce, Fenner & Smith Inc.; Morgan Stanley & Co. Incorpo-

rated and affiliates; Oppenheimer & Co. Inc. and affiliates; affiliates of Quick & Reilly, Inc.; RBC Dain Rauscher Inc. and affiliates; The Royal Bank of Scotland plc. and affiliates; Scotia Capital (USA) Inc. and affiliates; SG Cowen Securities Corp. and affiliates; Stifel, Nicolaus & Co., Inc.; UBS Securities LLC and affiliates; US Bancorp Piper Jaffray Inc. and an affiliate; Utendahl Capital Partners, L.P. and an affiliate; and Wachovia Capital Markets, LLC and affiliates.

26.    Major Litigation Parties:  Skadden represents or has represented the following major litigation parties or affiliates of such parties in matters unrelated to the Debtors and their chapter 11 cases:  an affiliate of Altria Corporate Services, a client of the firm; James Arnold Jr., who is Secretary of a company whose affiliates are clients of the firm; affiliates of Building Materials Holding Corp (d/b/a BMC West Corp.); James Burdette, who is president of Lockwood Financial Services Inc., affiliates of which company are clients of the firm, and President of Bank of New York, a client of the firm; an affiliate of The Chamberlain Group, Inc.; an affiliate of DSL Net Inc.; Eaton Corporation and affiliates; William P. Edwards, who is the President of Vendome, and an affiliate of which company is a client; affiliates of Elco textro Fastening Systems; affiliates of Elco Textron, Inc.; Terrence Evans, who is VP of Newark Road Realty Co., affiliates of which company are clients of the firm; Faurecia Exhaust Systems, Inc.; Greystone & Co.; John Harden, who is Vice President of Macquarie Aviation North America 2 Inc., an affiliate of Honeywell ACS Sensing & Control; Robert Hillman, who is President of a company, affiliates of which company are clients of the firm; Linda Hudson, who is President of General Dynamics Armament and Technical Products, Inc., affiliate of General Dynamics Corporation, a client of the firm; an affiliate of IMSS (Instituto

17