Hearing Date: **February 15, 2007**
                                    Hearing Time: **10:00 a.m. (Prevailing Eastern Time)**
                                    Objection Deadline: **February 8, 2007 at 4:00 p.m.**
                                                            **(Prevailing Eastern Time)**

**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
(317) 236-1313
Michael K. McCrory, Esq.
Robert D. MacGill, Esq.
Mark R. Owens, Esq. (MO 9742)

*Attorneys for Clarion Corporation of America*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                                          :
In re:                                                 :        Chapter 11
                                                          :
DELPHI CORPORATION, et al.,          :        Case No. 05-44481(RDD)
                                                         :
                                  Debtors.       :        (Jointly Administered)
———————————————————— x

**MOTION OF CLARION CORPORATION OF AMERICA,
PURSUANT TO 11 U.S.C. §§ 503 AND 507, FOR ALLOWANCE
OF AN ADMINISTRATIVE EXPENSE CLAIM**

      Clarion Corporation of America ("Clarion"), by and through its undersigned counsel, files this motion pursuant to 11 U.S.C. §§ 503 and 507, for allowance of an administrative expense claim against the estate of Delphi Automotive Systems LLC (d/b/a Delphi Electronics & Safety) ("Delphi") and respectfully states as follows:

**PROCEDURAL BACKGROUND**

1.  On October 8, 2005 (the "Petition Date"), Delphi Corporation and several of its affiliates, including Delphi Automotive Systems, LLC (d/b/a Delphi Electronics & Safety), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.  Delphi continues to operate its businesses pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**JURISDICTION**

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**BACKGROUND**

4.  Beginning in 2002 and continuing through 2005, Clarion bid for and entered into contracts with Delphi under which Clarion agreed to sell and Delphi agreed to purchase four (4) different kinds of car-audio equipment. These contracts are known as the (i) DA4.5/4.5C Playback Mechanism Contract, (ii) GIX & GIX-MP3 Playback Mechanism Contract, and (iii) DA5C Playback Mechanism Contract (collectively, the "Contracts"). Each of the Contracts was bid and awarded based on volume-based, or bracketed, pricing (i.e., at Delphi's request, Clarion tied its pricing to the various volumes of product to be produced). Additional information concerning the Contracts, such as the background concerning the formation of the Contracts and

the bidding process, is described in detail in the Complaint attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

5. Clarion has been performing under the Contracts, and has been supplying (and continues to supply) Delphi with product. Historically, Delphi purchased product in volumes that entitled it to receive Clarion's agreed-upon and discounted high-volume prices. However, in the Fall of 2005 (after the Petition Date), Clarion's sales and market-forecast information revealed that Delphi would be unable to meet its volume expectations, and as such, it could not continue to receive the benefit of Clarion's discounted high-volume pricing. This forecast became a reality when Delphi did not order the volume required to qualify for the discounted high-volume pricing.

6. Clarion has communicated with and written Delphi several times informing Delphi that Delphi's current volume does not qualify for the discounted high-volume pricing and has demanded that Delphi pay the price appropriate for the lower volume of product ordered. Delphi has refused to pay a price commensurate with the reduced volumes and instead continues to pay at the discounted high-volume rate. Therefore, each month Delphi is receiving the benefit of the discounted high-volume rate without qualifying for that discounted rate. Currently, Delphi has underpaid Clarion in the amount of not less than $1 million from the Petition Date through December 2006 (the "Post-Petition Underpayments").

7. Clarion twice met with Delphi on March 1 and 8, 2006 in an effort to resolve this pricing dispute, but was unsuccessful. Clarion has continued to supply Delphi with product up to the present, under continuing objection to the pricing structure.

**RELIEF REQUESTED**

8. By this motion, Clarion seeks allowance of an administrative expense claim in an amount to be determined at trial (or evidentiary hearing), but an amount not less than $ 1 million, for the Post-Petition Underpayments.

9. Clarion also seeks a finding by the Court that Delphi must honor and pay according to the volume-based pricing anticipated by the Contracts going forward and that any further Post-Petition Underpayments will qualify for administrative expense claim priority.

**BASIS FOR RELIEF REQUESTED**

10. Section 503(b)(1)(A) of the Bankruptcy Code, as it applies to this case, provides for the allowance of an administrative expense claim for "the actual, necessary costs and expenses of preserving the [debtor's] estate . . . rendered after the commencement of the case." *See In re Enron Corp.*, 300 B.R. 201, 206-07 (Bankr. S.D.N.Y. 2003). In *In re Enron Corp.* the court stated that

> [a]dministrative expenses are afforded a priority to facilitate the reorganization effort by encouraging third parties, who might be reluctant to deal with a debtor-in-possession, to transact such business. Otherwise, absent this incentive, the third parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors.

*Id.* at 207.

11. A claimant seeking an administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code must satisfy a two pronged test and show that the expense arose "out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and 'only to the extent that the consideration supporting the claimant's right to

payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc. (In re McFarlin's Inc.)*, 789 F.2d 98, 101 (2d Cir. 1986)(citations omitted); *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998)(two-part test).

12. Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, Clarion is entitled to an administrative expense claim against Delphi for the Post-Petition Underpayments ("Clarion's Administrative Expense Claim"). *In re Crystal Apparel, Inc.*, 220 B.R. at 830 ("Transactions in the ordinary course of business of the debtor in possession create expenses of administration.").

13. Clarion has satisfied the first prong of the test for the allowance of an administrative expense claim against Delphi by providing necessary product to Delphi after the Petition Date. As previously noted, Clarion continues to provide product to Delphi. Therefore, Clarion's Administrative Expense Claim arose from a post-petition transaction with Delphi.

14. Clarion has also satisfied the second prong of the test for the allowance of an administrative expense claim against Delphi because the post-petition product provided to Delphi benefited Delphi's estate and represents an actual and necessary cost of preserving Delphi's estate. *See Andres Lumber and Supply Co. v. Pioneer Acceptance Corp. (In re Pioneer Acceptance Corp.)*, 110 B.R. 314, 317 (Bankr. S.D. Ohio 1990)(building materials supplied to the debtor, who was in the construction business, which were used for their intended purpose were a benefit to the debtor's estate and necessary for the debtor to continue its operations). As in *Pioneer*, Clarion provided post-petition product to Delphi pursuant to the Contracts for Delphi's intended purpose, and Clarion's deliveries were both ordinary and necessary in the operation of Delphi's post-petition business operations, and essential to those operations.

15. Clarion's Administrative Expense Claim should be allowed in the full amount because the volume-based pricing structured in the Contracts represents the reasonable value of the actual product provided to Delphi. *N.L.R.B. v. Bildisco and Bildisco (In re Bildisco and Bildisco)*, 465 U.S. 513, 531 (1984)("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract[.]")(citations omitted); *Peoples Gas System, Inc. v. Thatcher Glass Corp. (In re Thatcher Glass Corp.)*, 59 B.R. 797, 799 (Bankr. D. Conn. 1986)("While it is true that the reasonable value of post petition goods is not necessarily measured by the price established by the contract under which they were delivered, the contract rate is presumed to be reasonable.").

16. The Contracts between Clarion and Delphi represent the perfect example of why the contract rate should be presumed to be reasonable and used to establish the amount of Clarion's Administrative Expense Claim. As set forth more fully in the Complaint attached hereto as Exhibit A, complex negotiations and several rounds of on-line bidding resulted in Clarion being awarded the Contracts. Through the bidding process, Delphi tested the market with respect to the product purchased, and at all times solicited bids based on volume based-pricing. Accordingly, the volume-based pricing reflected in the Contracts represents the mechanism that should be used to determine the amount of Clarion's Administrative Expense Claim.

17. Pursuant to Section 507(a)(1) of the Bankruptcy Code, as it applies to this case, Clarion's Administrative Expense Claim is entitled to first payment priority. *In re Enron Corp.*, 300 B.R. at 207 ("This priority is based on the premise that the operation of the business by a

debtor-in possession [sic] benefits pre-petition creditors; therefore, any claims that result from that operation are entitled to payment prior to payment to 'creditors for whose benefit the continued operation of the business was allowed.'")(citations omitted).

## THE MICHIGAN CIRCUIT COURT COMPLAINT

18.     As previously noted, attached hereto as Exhibit A is a Complaint.[1] Since all acts with respect to the Post-Petition Underpayments occurred after the Petition Date, Clarion filed the Complaint in The Circuit Court for the County of Oakland, State of Michigan (the "Michigan Circuit Court") on November 16, 2006. The facts and allegations in the Complaint establish Clarion's entitlement to Clarion's Administrative Expense Claim.

19.     Before filing this motion, Clarion transmitted for filing in the Michigan Circuit Court a motion requesting that the state-court action be stayed until this Court provides guidance on how this Court would like to proceed with respect to Clarion's Administrative Expense Claim. This Court can of course choose to conduct an evidentiary hearing with respect to the facts and allegations contained in the Complaint to establish the amount of Clarion's Administrative Expense Claim, or depending upon the state court's willingness to proceed, this Court can abstain and wait for the Michigan Circuit Court to apply Michigan law with respect to the contractual and other underpinnings of Clarion's Administrative Expense Claim.

---

[1] To protect the confidential and proprietary nature of the Exhibits to the Complaint, the Complaint was filed without exhibits and the Exhibits are not attached hereto, pending entry of an applicable protective order. The copy of the Complaint served on Delphi contained a set of all exhibits. In the interim, the exhibits referenced in the Complaint are of course available for the Court's *in camera* review.

## **MEMORANDUM OF LAW**

20.     This Motion sets forth the relief requested by Clarion under appropriate headings and contains citation of legal authorities upon which the relief requested is based. Clarion respectfully requests that the requirements of the service and filing of a memorandum of law under Local Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, Clarion requests that the Court enter an order (i) allowing Clarion's Administrative Expense Claim in an amount to be determined at trial (or evidentiary hearing); (ii) providing that any further Post-Petition Underpayments be allowed as administrative expense claims; and (iii) granting such other and further relief as is just and appropriate.

Dated: Indianapolis, Indiana
       December 12, 2006

Respectfully submitted,

/s/ Mark R. Owens
Michael K. McCrory, Esq.
Robert D. MacGill, Esq.
Mark R. Owens, (MO 9742)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Phone: (317) 236-1313
Facsimile: (317) 231-7433

*Attorneys for Clarion Corporation of America*

INDS01 MOWENS 905033v2