UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
        In re                                            :    Chapter 11
                                                         :
DELPHI CORPORATION, et al.,                              :    Case No. 05-44481 (RDD)
                                                         :
                                 Debtors.                :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2),
364(c)(3), 364(d)(1), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014
6004(g)(I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITIONPOST-
PETITION FINANCING, (II) TO UTILIZE CASH COLLATERAL AND (III)
GRANTING ADEQUATE PROTECTION TO AND (II) AUTHORIZING DEBTORS
TO REFINANCE SECURED POST-PETITION FINANCING AND PREPETITION
SECURED PARTIESDEBT

("FINAL DIP FINANCINGREFINANCING ORDER")

Upon the motion, dated October 8, 2005December 18, 2006 (the "Motion"), of

Delphi Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

interim and final ordersan order under sections 105, 361, 362, 363(c), 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11

U.S.C. §§ 101,101-1330 as amended and in effect on October 8, 2005, et seq. (the

"Bankruptcy Code"), and Rules 2002, 4001 and 90146004(g) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)  authorization for the Borrower to obtain post -petition

financing (the "Financing") to refinance its existing debtor-in-possession

financing and certain pre-petition indebtedness of the Borrower, and for

all of the other Debtors (the "Guarantors") to guaranty the Borrower's obligations in connection with the Financing, up to the aggregate principal amount of $2,000,000,0004,495,820,240.59 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), pursuant to a credit facility with JPMorgan Chase Bank, N.A. ("JPMCB"), acting as Administrative Agent (in such capacity, the "Agent") for itself and a syndicate of financial institutions (together with JPMCB and including the fronting and issuing banks for the letters of credit, the "DIP Lenders"), and Citicorp USA, Inc. ("CUSA") as Syndication Agent for the First Priority Facilities (as defined below), to be arranged by J.P. Morgan Securities Inc. and("JPMorgan"), Citigroup Global Markets, Inc. (and Deutsche Bank Securities Inc. as Joint Lead Arrangers for the First Priority Facilities (the "First Priority Facilities Joint Lead Arrangers"), and JPMorgan as sole Lead Arranger for the Tranche C Term Loan (as defined below) (the "Tranche C Lead Arranger", and together with the First Priority Facilities Joint Lead Arrangers, the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)  the granting of adequate protection to the lenders (the "Pre-Petition Secured Lenders")use of certain proceeds of the Financing to (a) irrevocably repay in full all outstanding loans under that certain Third

Amended and Restated Credit Agreement, dated as of June 14, 2005 (as heretofore amended, supplemented or otherwise modified, the "Pre-Petition Credit Agreement" and, together with the mortgages and all other documentation executed in connection therewith, the "Existing Pre-Petition Facility Documents"), among the Borrower, the several lenders from time to time party thereto (the "Pre-Petition Secured Lenders"), and JPMCB, as administrative agent for the Pre-Petition Secured Lenders (in such capacity, the "Pre-Petition Agent"), and in connection with that certain Guarantee and Collateral Agreement, (such repayment in full referred to herein as the "Pre-Petition Facility Refinancing"), the authorization of which constitutes an "Extraordinary Provision" under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order"), and (b) irrevocably repay in full all loans and other obligations under that certain Revolving Credit, Term Loan and Guaranty Agreement dated as of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of the Pre-Petition AgentOctober 14, 2005 (as heretofore amended, supplemented or otherwise modified, the "Guarantee and Collateral Agreement" and, collectively with the Pre-PetitionExisting DIP Credit Agreement, and" and, together with the mortgages and all other documentation executed in connection therewith, the "Existing Agreements"), whose liens andDIP Facility Documents") by and among the Borrower, the several lenders from time to time party thereto (the "Existing DIP Lenders"), and JPMCB,

as administrative agent for the DIP Lenders (in such capacity, the "Existing DIP Agent") (such repayment in full, the "DIP Facility Refinancing", and together with the Pre-Petition Facility Refinancing, the "Refinancing"),

(4)  the continuation of certain adequate protection with respect to various parties, whose liens, security interests or setoff rights were primed by the Existing DIP Facility Documents and are being primed by some or all of the Financing;

(45)  continuation of the authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Secured Lenders certain parties have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders such parties with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of their interest in the Pre-Petition Collateral (as defined below) therein;

(5)  approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom, that are "Extraordinary Provisions" (each an "Extraordinary Provision") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order");

(6)  permission to accelerate Borrowings and the termination of the Commitments under the DIP Credit Agreement upon (a) a Change of Control (as each such term is defined in the DIP Credit Agreement) or (b)

the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Borrower or any of the Guarantors which have a value in excess of $20 million in the aggregate, which are Extraordinary Provisions under the General Order; and

(7) subject and only effective upon the entry of a final order granting such relief, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code, which is an Extraordinary Provision under the General Order; and authorized under the Existing DIP Order (as hereinafter defined).

(8) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to forthwith borrow or obtain letters of credit from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $950,000,000 (subject to any limitations of borrowings under the DIP Documents), (b) authorizing the Debtors' use of cash collateral, and (c) granting the adequate protection described therein; and
(9) that this Court schedule a final hearing (the "Final Hearing") to be held within 45 days of the entry of the Interim Order to consider entry of a final order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in

5

the Motion and the DIP Documents filed with this Court (the "Final

Order").

The Interim Hearing having been held by this Court on October 11, 2005, at

which the Court issued and entered the Interim Order among other things (a) authorizing

the Borrower to borrow or obtain letters of credit up to an aggregate principal or face

amount of $950,000,000 of the Financing from the DIP Lenders as provided for in the

Interim Order and (b) scheduling the Final Hearing to consider entry of an order

authorizing the balance of the Financing, all as set forth in the Motion, the Interim Order,

this Final Order and the loan documentation filed with this Court; and

The Final Hearing having been held by this Court on October 27, 2005 at 10:00

a.m.; and

Due and appropriate notice of the Motion, and the relief requested therein, the

Interim Hearing and the Final Hearing having been served by the Debtors on the fifty

largest unsecured creditors of the Debtors, on the Agent, the DIP Lenders, the Prepetition

Agent, the Prepetition Secured Lenders, the indenture trustee for the Debtors' senior

noteholders, known holders of prepetition liens against the Debtors' property and the

United States Trustee for the Southern District of New York; and in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates And

Certain Notice, Case Management, And Administrative Procedures, entered by this Court

on October 26, 2006.

Objections to the Motion having been filed by Bank of America Leasing &

Capital (Docket Nos. 70 and 565), LLC, the Ad Hoc Committee of Prepetition Secured

6

Lenders (Docket Nos. 101 and 553), Venture Plastics, Inc. (Docket No. 436), Gibbs Die

Casting Corporation (Docket No. 455), DaimlerChrysler Corporation (Docket No. 450),

Mercedes-Benz U.S. International, Inc. (Docket No. 436), Autocam Corporation (Docket

No. 459), Lorentson Manufacturing Company Southwest, Inc. (Docket No. 461),

Lorentson Manufacturing Company, Inc. (Docket No. 458), Calsonic Kansei North

America, Inc. (442), Decatur Plastic Products, Inc. (Docket No. 451), Pension Benefit

Guaranty Corporation (Docket No. 437), Ford Motor Company (Docket Nos. 495 and

623), Freescale Semiconductor, Inc. (Docket No. 501), Nissan North America, Inc.

(Docket No. 503), Fujikura America, Inc. (Docket Nos. 506 and 648), Murata Electronics

North America, Inc. (Docket Nos. 507 and 649), Flextronics International Asia Pacific

Ltd. and Flextronics Technology (M) Sdn. Bhd. (Docket No. 511) Multek Flexible

Circuits, Inc., Sheldahl de Mexico S.A. de C.V. and Northfield Acquisition Co. (Docket

No. 512) , Omega Tool Corp., L&W Engineering Co., Southtec, LLC, DOTT Industries,

Inc., ALPS Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics

Limited, Android Industries, Inc., Ai Doraville, LLC, and Ai Genesee, LLC (Docket No.

551), Honda of America Manufacturing, Inc. (Docket No. 577), OSRAM Opto

Semiconductors Inc. (Docket No. 589), Worthington Steel Company and Worthington

Steel of Michigan, Inc. (Docket No. 590), Hitachi Automotive Products (Docket No.

591), National Molding Corp. and Security Plastics Division/NMC, LLC (Docket No.

600), Arneses Electronics Automotrices, S.A. de C.V. and Cordaflex, S.A. de C.V.

(Docket No. 619), Neuman Aluminum Automotive, Inc., Neuman Aluminum Impact

Extrusion, Inc. (Docket No. 631), Magna International, Inc. and certain of its foreign and

domestic affiliates (Docket No. 632), A. Schulman, Inc. (Docket No. 634), the Creditors'

Committee (as hereinafter defined) (Docket No. 641), Textron Fastening Systems, Inc.

(Docket No. 643), ARC Automotive, Inc. (Docket No. 646), XM Satellite Radio Inc.

(Docket No. 651), General Motors Corporation (Docket No. 658), Benteler Automotive

Corp. (Docket No. 695), Pentastar Aviation, LLC (Docket Nos. 683 and 684) Lear

~~Corporation (Docket Nos. 676 and 678), American Axle & Manufacturing, Inc. (Docket Nos. 679 and 682), Robert Bosch Corporation  (Docket No. 428) and Semiconductor Components Industries, LLC (Docket No. 701)[+] (and any other objections filed or raised at the Final Hearing, collectively, the "Objections"); and~~ A hearing on the Motion having been held by this Court on January 5, 2007 at 10:00 a.m. (the "Hearing");

Upon the record made by counsel to the Debtors at the ~~Interim Hearing and the Final Hearing, including the representations and clarifications on the record by counsel to the Debtors and for the Agent and the Pre-Petition Agent; and all Objections having been resolved on the record~~Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion~~, the Interim Hearing,~~ and the ~~Final~~ Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

~~3.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights contained in paragraph 16 below), the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:~~

---

~~[+]    Inclusive of objections filed prior to 11:00 p.m. on October 26, 2005.~~

8

(a)    (i) as of the filing of the Debtors' chapter 11 petitions (the "Petition Date"), (x) the Borrower was indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $2,488,329,620.59 in respect of loans made and in the aggregate face amount of approximately $91,453,431.26 in respect of letters of credit issued, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), charges and other obligations incurred in connection therewith including, without limitation, amounts owing under "Specified Swap Agreements" (as defined in the Pre-Petition Credit Agreement), as provided in the Existing Agreements (collectively, the "Pre-Petition Debt"), and (y) each Debtor other than the Borrower was contingently liable to the Pre-Petition Secured Lenders in respect of the Pre-Petition Debt owing by the Borrower pursuant to the Guarantee and Collateral Agreement, (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured

Lenders, the Pre-Petition Agent and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys;

(b)    the liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Existing Agreements (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, control agreements and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection with the Existing Agreements, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property constituting "Collateral" (as defined in the Existing Agreements) immediately prior to the Petition Date (the "Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral; and

(c)    the aggregate value of the Pre-Petition Collateral substantially exceeds the aggregate amount of the Pre-Petition Debt.

3.    4.  *Findings Regarding The Financing.*

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors require the remainderproceeds of the this Financing and use of Cash Collateral (as defined below) in order to reduce their cost of financing

(NY) 27011/094/REFI/delphi.refi.approval.order.doc                                    12/17/06 4:41 PM

and to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The reduction in financing costs together with continued access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and ~~maintenance~~enhancement of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain adequate secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in ~~the Interim Order,~~ this Order and in the DIP Documents.

(d)    The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The Financing has been negotiated in good faith and at arm's length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors'

11

obligations and indebtedness arising under, in respect of or in connection with the

Financing and the DIP Documents, including without limitation, (i) all loans made to, and

all letters of credit issued for the account of, the Debtors pursuant to the Revolving

Credit, Term Loan and Guaranty Agreement substantially in the form attached as Exhibit

A to the Motion, as amended by the Amendment No. 1 thereto dated as of October 27,

2005,, a copy of which was filed with the Court prior to commencement of the Final

Hearing (as so amended, the "DIP Credit Agreement"), and (ii) any "Obligations" and all

other "Secured Obligations" (as each such term is defined in the DIP Credit Agreement),

including any hedging obligations of the Debtors permitted under the DIP Credit

Agreement and any Indebtedness (as defined in the DIP Credit Agreement) permitted by

Section 6.03(viii) thereof, in each case owing to JPMCB, any DIP Lender or any of their

respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the

"DIP Obligations"), shall be deemed to have been extended by the Agent and the DIP

Lenders and their affiliates in good faith, as that term is used in section 364(e) of the

Bankruptcy Code and in express reliance upon the protections offered by section 364(e)

of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of

the Bankruptcy Code in the event that this Order or any provision hereof is vacated,

reversed or modified, on appeal or otherwise.

> (f)    The Debtors have requested entry of this Order pursuant to
Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 6004(g).

> (g)    (f) The Debtors have requested entry of this Order pursuant to
Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this
Order, the Debtors' estates will be immediately and irreparably harmed.

~~Consummation~~ For the reasons set forth in the Motion and based on the evidence presented at the Hearing, consummation of the Financing and the use of Cash Collateral in accordance with this Order and the DIP Documents is ~~therefore~~ in the best interest of the Debtors' estates.

    4. ~~5.~~ *Authorization Of The Financing And The DIP Documents.*

        (a)    The Debtors are hereby authorized to be a party to the DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such letters of credit, up to an aggregate principal or face amount ~~, inclusive of amounts authorized by the Interim Order, of $2,000,000,000~~ of $4,495,820,240.59 (plus interest, fees and other expenses provided for in the DIP Documents), subject to any limitations of borrowings under the DIP Documents, and in accordance with the terms of this Order and the DIP Documents, which shall be used solely for purposes permitted under the DIP Documents, including, without limitation, (i) with respect to the the Tranche A Loan and the Tranche B Loan (as each such term is defined in the DIP Credit Agreement, as hereinafter defined, referred to herein as the "Tranche A Loan" and "Tranche B Loan", respectively, and collectively as the "First Priority Facilities"), for the DIP Facility Refinancing and to provide working capital for the Borrower and the Guarantors and for other general corporate purposes and to pay interest, fees and expenses in accordance with this Order and the DIP Documents and (ii) with respect to the Tranche C Loan (as defined in the DIP Credit Agreement, the "Tranche C Loan"), for the Pre-Petition Facility Refinancing. In addition to such loans and obligations, the Debtors are authorized to incur overdrafts

13

and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB, CUSA, or any other DIP Lender or any of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB or CUSA or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)    the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Security and Pledge Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any, contemplated thereby (collectively, and together with the letter agreements referred to in clause (iiiiv) below, the "DIP Documents"),;

(ii)    the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and the DIP Lenders may agree (it being understood that (A)(A) no further approval of

14

the Court shall be required for amendments to the DIP Credit Agreement that do not (i)

shorten the maturity of the extensions of credit thereunder, (ii) increase the commitments,

the rate of interest or the letter of credit fees payable thereunder, (iii) amend the financial

covenants in Section 6.04 therein to be more restrictive on the Debtors or (iv) amend the

notice provisions of Section 7.01 therein (i.e., notice of exercise of remedies after the

occurrence of an Event of Default), and ~~(B)~~(B) the Debtors shall provide the official

committee of unsecured creditors (the "Creditors' Committee") with five (5) business

days' prior notice (or such shorter period as the Creditors' Committee and the Debtors

may agree) of any amendment to the DIP Credit Agreement that causes the Borrowing

Base to be decreased)~~. Notwithstanding any other provision hereof, without further~~

~~approval of this Court, amendments to the DIP Documents may be made at any time (x)~~

~~prior to the Successful Syndication (as defined in the Second Amended and Restated Fee~~

~~Letter dated October 27, 2005 among the Borrower, JPMCB and the Joint Lead~~

~~Arrangers (the "Fee Letter")), to the extent contemplated by the Fee Letter (permitting~~

~~certain modifications to the DIP Credit Agreement necessary or advisable to ensure a~~

~~successful syndication), and (y) as contemplated by the DIP Credit Agreement with~~

~~respect to the Borrowing Base Amendment.~~;

~~In addition, Section 2.13 of the DIP Credit Agreement shall be amended to~~

~~provide for the application of net cash proceeds from asset sales to be subject to~~

~~mandatory prepayments and permanent reductions of commitments under the Facility or~~

~~to be held in a cash collateral account maintained with the DIP Agent for the benefit of~~

~~holders of the liens and claims granted hereunder in the manner set forth below.~~

~~Notwithstanding anything to the contrary in this Order or the DIP Credit Agreement, the~~

amendments to Section 2.13 of the DIP Credit Agreement set forth in this paragraph 5(b)(iii), (x) are intended, in part, for the benefit of the Pre-Petition Agent and the Pre-Petition Secured Lenders, (y) may be enforced by the Pre-Petition Agent and the Pre-Petition Secured Lenders as though they were parties to the DIP Credit Agreement solely for such purposes and (z) shall survive and remain in full force and effect regardless of the permanent repayment in full of the DIP Obligations or the termination of the DIP Credit Agreement or any provision hereof.  This paragraph 5(b)(iii) shall not be amended, supplemented, waived or otherwise modified without the prior written consent of the Pre-Petition Agent.  Specifically, Section 2.13 will be amended to (i) reorder subsection "(b)" to be subsection "(c)" and (ii) adding a new subsection (b) to read as follows:

"If on any date the Borrower or any Guarantor shall receive Net Cash Proceeds from (i) any Asset Sale or (ii) any Recovery Event (except to the extent that Net Cash Proceeds received in connection with such Recovery Event are applied within 180 days of receipt thereof to the replacement or repair of the assets giving rise thereto), and in each case, the aggregate amount of all Net Cash Proceeds from Asset Sales and Recovery Events received by the Borrower and the Guarantors from Asset Sales and Recovery Events occurring on and after the Closing Date exceeds $125,000,000 then (without duplication of any reduction to the Borrowing Base as a result of such Asset Sale or Recovery Event), an amount equal to 66-2/3% of such Net Cash Proceeds received on such date shall be promptly, and in any event, within 10 days after such date either (i) first, applied to the prepayment of the Tranche B Loans (with a corresponding permanent reduction of the Total Tranche B Commitments) and second, applied to the prepayment of the Tranche A Loans (with a corresponding permanent reduction of the Total Tranche A Commitments) or (ii) deposited into a cash collateral account maintained with the DIP Agent for the benefit of the holders of Liens and claims granted under the Final DIP Order in the order of priority set forth therein; *provided* that the Borrower shall be permitted to request approval of the Bankruptcy Court to use such proceeds in accordance with Section 363 of the Bankruptcy Code so long as such uses are permitted under the DIP Credit Agreement and subject to the rights of parties in interest to contest such request."

The following related definitions will also be added to the DIP Credit Agreement:

"Asset Sale": any Disposition of property or series of related Dispositions of property by the Borrower or any Guarantor (excluding any such Disposition permitted by clauses (i), (ii), (iii), (v), (vii) and (viii) of Section 6.10).

"Disposition": with respect to any property, any sale, lease, sale and leaseback, assignment (other than for security or collection in the ordinary course of business), conveyance, transfer or other disposition thereof. The terms "Dispose" and "Disposed of" shall have correlative meanings.

"Net Cash Proceeds": in connection with any Asset Sale or any Recovery Event, the proceeds thereof in the form of cash and Permitted Investments, net of attorneys' fees, accountants' fees, investment banking fees, commissions, premiums, amounts required to be applied to the repayment of Indebtedness secured by a Lien permitted hereunder on any asset that is the subject of such Asset Sale or Recovery Event (other than any Lien pursuant to the Security and Pledge Agreement) and other customary fees and expenses actually incurred in connection therewith and net of taxes paid or reasonably estimated to be payable as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements) and a reasonable reserve for purchase price adjustments and indemnification payments that could reasonably be expected to arise during the term of the Tranche A Loans and the Tranche B Loans; *provided* that in the case of any Asset Sale or Recovery Event in respect of which the Net Cash Proceeds do not exceed $2,500,000, such Net Cash Proceeds shall not be deemed to constitute "Net Cash Proceeds" for purposes of Section 2.13 until the aggregate amount of all such excluded Net Cash Proceeds is at least $10,000,000.

"Recovery Event": any settlement of or payment in respect of any property or casualty insurance claim or any condemnation proceeding relating to any asset of the Borrower or any Guarantor, in each case in an amount in excess of $5,000,000.

(iii)    the non -refundable payment to the Agent, the Joint Lead Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents,; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.    6.  *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations, as defined in the Existing DIP Order, referred to herein as the "Adequate Protection Obligations"), Replacement Liens and Junior Adequate Protection Liens (each as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (other than to the extent of any statutory liens or security interests arising after the filing of the Debtors'

chapter 11 petitions (the "Petition Date") and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest), which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein; *provided, however*, that (i) the Superpriority Claims in respect of the First Priority Facilities shall be senior in priority to the Superpriority Claims in respect of the Tranche C Loan, and (ii) the Superpriority Claims granted hereunder shall remain subject and subordinate to any Superpriority Claims arising under the Existing DIP Order (as defined therein) until such Superpriority Claims under the Existing DIP Order have been irrevocably paid in full.

       (b)     For purposes hereof, the "Carve Out" means (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii)(ii) all fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii)(iii) after the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement), all allowed and unpaid professional fees and disbursements incurred by the Debtors and any statutory committees appointed in the Cases (each, a "Committee"), and Transaction Expenses (as defined in the Equity Purchase and Commitment Agreement (the "EPCA"), a copy of which is attached to the Expedited Motion For Order Authorizing And Approving The Equity Purchase And Commitment Agreement Pursuant To Sections 105(A), 363(B), 503(B) And 507(A) Of The Bankruptcy Code And The Plan Framework Support Agreement Pursuant To Sections 105(A), 363(B), And 1125(E) Of The Bankruptcy Code (the "Plan Investment And

Framework Support Approval Motion"), filed concurrently with the DIP Refinancing Motion) incurred from and after the date that an order is entered approving the EPCA (the "Post-Order Transaction Expenses"), that remain unpaid subsequent to the payment, pro rata with other nonpriority administrative creditors, of such fees and expenses from available funds remaining in the Debtors' estates for such creditors, in an aggregate amount not exceeding $35,000,000, which amount may be used subject to the terms of this Order, including, without limitation, paragraph 17<del>14</del> hereof, and <del>(iv)</del>(iv) all unpaid professional fees and disbursements incurred or accrued by the Debtors and any Committees, and Post-Order Transaction Expenses, in each case incurred or accrued at any time when no Event of Default is continuing (and promptly upon receipt of a notice of an Event of Default, the Debtors shall provide a copy of such notice to counsel for the Creditors' Committee), that remain unpaid subsequent to the payment, pro rata with other nonpriority administrative creditors, of such fees and expenses and Post-Order Transaction Expenses from available funds remaining in the Debtors' estates for such creditors, in an aggregate amount not exceeding the sum of (x) such unpaid professional fees and disbursements, and Post-Order Transaction Expenses, reflected on the most recent Borrowing Base Certificate (as defined in the DIP Credit Agreement) delivered to the Agent prior to any Event of Default that is then continuing and (y) such unpaid professional fees and disbursements, and Post-Order Transaction Expenses, incurred or accrued after such Borrowing Base Certificate (but at a time when no Event of Default is continuing) in an aggregate amount under this clause (y) not exceeding $5,000,000 (and with amounts included in this clause (y), to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each

of the foregoing clauses (i), (ii), (iii) and (iv), to the extent allowed by the Bankruptcy

Court at any time; *provided*, *however*, that (1) to the extent the dollar limitation in this

clause 65(b) on fees and disbursements and Post-Order Transaction Expenses is reduced

by any amount as a result of the payment of fees and disbursements and Post-Order

Transaction Expenses during the continuance of an Event of Default, and such Event of

Default is subsequently cured or waived and no other Event of Default then exists, then

effective as of the effectiveness of such cure or waiver, such dollar limitation shall be

increased by an amount equal to the amount by which it has been so reduced and (2) (A)

(A) nothing herein shall be construed to impair the ability of any party to object to any of

the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv)

above and (B)(B) following the Termination Date (as defined in the DIP Credit

Agreement), cash or other amounts on deposit in the Letter of Credit Account (as defined

in the DIP Credit Agreement), shall not be subject to the Carve Out.

     6.      7. *DIP Liens.*

     As security for the DIP Obligations, effective and perfected upon the date of entry

of the Interim Order occurrence of the Closing Date (as defined in the DIP Credit

Agreement) and the Refinancing (the "Refinancing Date", at which time all liens,

mortgages and security interests under the Existing DIP Facility Documents and the

Existing Pre-Petition Facility Documents shall be deemed released and of no further force

or effect) and without the necessity of the execution, recordation of filings by the Debtors

of mortgages, security agreements, control agreements, pledge agreements, financing

statements or other similar documents, the following security interests and liens are

hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all

property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"; the DIP Liens securing the First Priority Facilities, the "First Priority DIP Liens"; and the DIP Liens securing the Tranche C Loan, the "Second Priority DIP Liens"):

(a)    First Lien On Cash Balances And Unencumbered Property.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre-petition and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the ~~Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code~~Refinancing Date (after giving effect to the release of liens occurring at such time) (collectively, "Unencumbered Property"), including without limitation, all cash and cash collateral of the Debtors (whether maintained with the Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing, *provided*, *however*, that the Borrower and the Guarantors shall not be required to pledge

22

to the Agent in excess of 65% of the voting capital stock of its direct Foreign Subsidiaries
or any of the capital stock or interests of its indirect Foreign Subsidiaries (if, in the good
faith judgment of the Borrower, adverse tax consequences would result to the Borrower).
Unencumbered Property shall exclude the Debtors' claims and causes of action under
sections 502(d), 544, 545, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code, or any
other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"),
and any proceeds or property recovered, unencumbered or otherwise the subject of
successful Avoidance Actions.

(b)    ~~Liens~~ Priming ~~Pre-Petition Secured Lenders'~~ Liens.  Pursuant to
section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable,
fully-perfected first priority senior priming security interest in and lien upon all pre-
petition and post-petition property of the Debtors (including, without limitation, cash
collateral, inventory, accounts receivable, other rights to payment whether arising before
or after the Petition Date, contracts, properties, plants, equipment, general intangibles,
documents, instruments, interests in leaseholds, real properties, patents, copyrights,
trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the
proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject
to the existing liens ~~presently securing the Pre-Petition Debt (including in respect of
issued but undrawn letters of credit).~~ remaining after the occurrence of the Refinancing
Date that pursuant to the terms of the order of this Court dated October 28, 2005
approving the Borrower's and the Guarantors' entry in the Existing DIP Facility
Documents (the "Existing DIP Order") are subject and subordinate to the DIP Liens as
defined in the Existing DIP Order (the "Existing DIP Liens"), including, without

23

limitation, all Replacement Liens and Debtor Liens (as each such term is defined in the Existing DIP Order), and any other liens granted under the Existing DIP Order (collectively, the "Primed Liens").  Such security interests and liens shall be senior in all respects to the interests in such property of the ~~Pre-Petition Secured Lenders arising from current and future liens of the Pre-Petition Secured Lenders (including, without limitation, adequate protection liens granted hereunder)~~holders of the Primed Liens in respect thereof, and shall be subject and subordinate to (i) the Carve Out (except as provided in paragraph ~~6~~5 hereof), (ii) any valid, perfected and unavoidable interests of other parties arising out of liens existing on the Refinancing Date, if any, on such property ~~existing immediately prior to the Petition Date~~, that pursuant to the terms of the Existing DIP Order are senior in priority to the Existing DIP Liens and (iii) ~~any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and (iv)~~ statutory liens or security interests arising after the ~~Petition~~Refinancing Date and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest.  In addition, notwithstanding anything to the contrary contained in this paragraph 6(b), any valid, perfected and non-voidable liens or security interests that remain in existence after the Refinancing Date and that were senior to or *pari passu* with the liens securing the Pre-Petition Secured Facility prior to the Refinancing Date (including, without limitation, to the extent provided in paragraph 15 of this Order, the Replacement Liens and Junior Adequate Protection Liens) shall maintain such priority or *pari passu* position relative to the liens securing the Tranche C Loan.

(c)    <u>Liens Junior To Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre-petition and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph ~~7,~~<u>6,</u> as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, that <u>as of the Refinancing Date</u> is subject to valid, perfected and unavoidable liens ~~and, as to Pre-Petition Payables and Setoffs (each as defined below) in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code~~, which security interests and liens in favor of the Agent and the Lenders are junior to such valid, perfected and unavoidable liens ~~and Setoffs~~.

(d)    <u>Liens Senior To Certain Other Liens</u>.  The DIP Liens, the ~~Adequate Protection Liens, the~~ Replacement Liens and the Junior Adequate Protection Liens (each as defined below) shall not be subject or subordinate to (i) solely in the case of the DIP Liens, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the ~~Petition~~<u>Refinancing</u> Date<u>,</u> including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than with respect to any liens or security interests arising after the ~~Petition~~<u>Refinancing</u> Date and permitted under the DIP Credit Agreement to be senior to the DIP Liens.

25

7.    8. Protection Of DIP Lenders' Rights.

(a)    So long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters or credit are outstanding) outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the holders of Replacement Liens, the holders of Junior Adequate Protection Liens and the holders of Debtor Liens (as defined below) shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing AgreementsPre-Petition Facility Documents, the Existing DIP Order or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court and (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents, provided that the Pre-Petition Agent and any Pre-Petition Secured Lender may appear and be heard as a party in interest in connection with any proceeding relating to the sale, transfer or other disposition of any Collateral and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless solely as to this clause (iii), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date. Notwithstanding the foregoing, the Pre-Petition Secured Lenders shall be permitted to file pleadings with respect to any proposed sale,

26

transfer or other disposition of the Collateral by the Debtors outside the ordinary course
of business so long as such pleadings do not contravene the provisions of this paragraph
8 7 and do not otherwise interfere with the exercise of any right or remedy by the Agent
or the DIP Lenders.  Nothing herein shall be read to permit the Pre-Petition Agent, the
Pre-Petition Secured Lenders, or the holders of Replacement Liens, the holders of Junior
Adequate Protection Liens or the holders of Debtor Liens to take any action in violation
of the Bankruptcy Code or other applicable law.  This paragraph 8 7(a) defines the
relative rights of the DIP Agent and the DIP Lenders, on the one hand, and the Pre-
Petition Agent and the Pre-Petition Secured Lenders, on the other, and is not intended to
confer any rights on the Debtors except with respect to the Debtor Liens.

        (b)     The automatic stay provisions of section 362 of the Bankruptcy
Code are vacated and modified to the extent necessary to permit the Agent and the DIP
Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all
rights and remedies under the DIP Documents other than those rights and remedies
against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and
during the continuance of an Event of Default and the giving of five business days prior
written notice to the extent provided for in the DIP Credit Agreement (promptly upon
receipt of such notice, the Debtors shall provide a copy of such notice to counsel for the
Creditors' Committee), all rights and remedies against the Collateral provided for in the
DIP Documents (including, without limitation, the right to setoff monies of the Debtors
in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any
exercise of rights or remedies, the only issue that may be raised by any party in
opposition thereto shall be whether, in fact, an Event of Default has occurred and is

continuing, and the Debtors, the Existing DIP Agent, the Pre-Petition Agent, the Pre-Petition Secured Lenders, and the holders of Replacement Liens or Junior Adequate Protection Liens hereby waive in such capacities, but not in capacities as holders of general unsecured claims, their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall the Agent, the DIP Lenders, the Existing DIP Agent, the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of Replacement Liens or Junior Adequate Protection Liens be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

8. 9. *Limitation On Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Agent, the Existing DIP Agent or the Pre-Petition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent, the DIP Lenders, the Existing DIP Agent, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10. *The Cash Collateral*.  To the extent any funds of any Debtor party to the Existing Agreements (other than funds in accounts subject to lock-box arrangements under the Debtors' receivables financing) were on deposit with the Pre-Petition Secured Lenders as of the Petition Date, including, without limitation, all such funds deposited in,

28

~~or credited to, an account of any Debtor party to the Existing Agreements with any Pre-~~
~~Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy~~
~~petitions (the "Petition Time") (regardless of whether, as of the Petition Time, such funds~~
~~had been collected or made available for withdrawal by any such Debtor), such funds (the~~
~~"Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the~~
~~Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders~~
~~pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured~~
~~Lenders are obligated, to the extent provided in the Existing Agreements, to share the~~
~~benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to~~
~~such Existing Agreements.  The cash of the Debtors party to the Existing Agreements,~~
~~including, without limitation, the Deposited Funds or any other funds on deposit at the~~
~~Pre-Petition Secured Lenders as of the Petition Date, and any proceeds generated by the~~
~~collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition~~
~~Collateral are cash collateral of the Pre-Petition Secured Lenders within the meaning of~~
~~section 363(a) of the Bankruptcy Code, and all such "cash collateral" is referred to herein~~
~~as "Cash Collateral."  The Pre-Petition Secured Lenders have objected to the use by the~~
~~Debtors of the Pre-Petition Collateral, including Cash Collateral, except on the terms of~~
~~this Order.~~

<u>9.</u>    ~~11.~~ *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral <u>(as defined in the Existing DIP Order)</u> of the Pre-Petition Secured Lenders and of the holders of Replacement Liens or Junior Adequate Protection Liens, and the Pre-Petition Secured Lenders and the holders of Replacement Liens or Adequate Protection Liens <u>(as defined in the Existing DIP Order)</u> are directed promptly to turn over

to the Debtors all Cash Collateral received or held by them, provided that, until the Refinancing Date, the Pre-Petition Secured Lenders and the holders of Replacement Liens or Adequate Protection Liens are granted adequate protection as ~~hereinafter~~ set forth in the Existing DIP Order.  The Debtors' right to use Cash Collateral shall terminate automatically upon the occurrence of the Termination Date or the voluntary reduction by the Borrower of the Total Commitments to zero (as each such term is defined in the DIP Credit Agreement).

~~12.    *Adequate Protection*.  The Pre-Petition Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of their interest in the Pre-Petition Secured Lenders' Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the following (collectively, the "Adequate Protection Obligations"), to the extent of such diminution:~~

~~(a)    *Adequate Protection Liens*.  As security for the payment of the Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Secured Lenders) is hereby granted (effective and perfected as of the~~

(NY) 27011/094/REFI/delphi.refi.approval.order.doc                                                                12/17/06 4:41 PM

Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral to which such liens so granted to the Agent are junior, (ii) the Replacement Lien (as hereinafter defined) and (iii) the Carve Out, *provided* that the security interest in and lien granted to the Pre-Petition Agent pursuant to this paragraph 12(a) upon Collateral that is not (x) Pre-Petition Collateral or (y) Collateral that would have constituted Pre-Petition Collateral but for the operation of section 552(a) of the Bankruptcy Code as to which, without further action, the Pre-Petition Agent would have had a valid and perfected security interest or lien shall be *pari passu* with the Junior Adequate Protection Liens granted to any Setoff Claimant in such Collateral pursuant to this Order (the "Adequate Protection Liens");

(b)    Section 507(b) Claim.  The Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted, subject to the payment of the Carve Out and to the payment of all reasonable fees, costs and expenses (including the professional fees and expenses) incurred by or on behalf of the Debtors' estates in the pursuit of Avoidance Actions, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code equal in priority to the priority granted to the Setoff Claimants in paragraph 18(b) below, limited in amount to the aggregate diminution in value of the Pre-Petition Secured Lenders' interest in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value)

31

of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders; *provided*, *however*, that the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Existing Agreements unless and until the DIP Obligations have indefeasibly been paid in cash in full;

(c)    Interest, Fees, And Expenses.  The Pre-Petition Agent shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Debt and letter of credit fees at the non-default contract rates provided for in the Existing Agreements, and all other accrued and unpaid fees and disbursements payable to or for the benefit of the Pre-Petition Agent under the Existing Agreements and incurred prior to the Petition Date, including, but not limited to, reasonable fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current cash payments of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Pre-Petition Agent,  (iii) on the first business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and other fees at the non-default contract rate (including at the option of

32

the Borrower, the Eurodollar Rate plus the Applicable Margin (each as defined in the Pre-Petition Credit Agreement)) applicable under the Existing Agreements, *provided* that, (x) without prejudice to the rights of the Debtors or any other party to contest such assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis provided for in the Existing Agreements, and for the payment of any other amounts provided for in the Existing Agreements, and (y) notwithstanding anything to the contrary in this Order or the Pre-Petition Credit Agreement, as to each Pre-Petition Secured Lender which executes and delivers a written consent in the form to be provided by the Pre-Petition Agent (which consent shall be in form and substance reasonably satisfactory to the Borrower), waiving and releasing all claims, if any, in respect of default interest and any claims related to the early prepayment of the loans, including, without limitation, any prepayment premiums under the Pre-Petition Credit Agreement, interest shall accrue and be paid by the Borrower to such Pre-Petition Secured Lender and its assignee(s) on the first business day of each month at ABR (as defined in the Pre-Petition Credit Agreement) plus the Applicable Margin in respect of the pre-petition loans held by such Pre-Petition Secured Lender from and after the later of (a) the expiry of existing LIBOR contracts and (b) the delivery of such release and waiver, (iv) current cash payment of all reasonable out-of-pocket expenses of the members of any steering committee of Pre-Petition Secured Lenders, in their capacity as such (but excluding any fees and disbursements of counsel, financial or other consultants to such steering committee).  The Debtors shall pay the fees and expenses provided for in the preceding clause (ii) or clause

(iv) only after reasonably detailed invoices for such fees and expenses shall have been submitted to the Debtors and counsel to the official committee of unsecured creditors (the "Creditors' Committee"). The rights of all parties in interest with respect to the application of such payments in clauses (ii), (iii) and (iv) above shall be preserved in accordance with Paragraph 16 below. The Debtors shall pay the reasonable and documented fees and expenses of counsel to the Ad Hoc Committee of Pre-Petition Secured Lenders in connection with the Motion through the date of the Final Hearing in an aggregate amount not to exceed the cap previously agreed upon by the Debtors and such counsel. The Creditors' Committee shall be provided an opportunity to review such fees and expenses prior to the payment thereof. During the pendency of the Chapter 11 Cases, and except as otherwise set forth in any confirmed reorganization plan, the Pre-Petition Debt of any Pre-Petition Secured Lender shall not be repaid or refinanced in whole unless (x) it is part of a transaction in which the obligations under the DIP Credit Agreement and the Pre-Petition Credit Agreement are repaid or refinanced in whole, or (y) such Pre-Petition Secured Lender consents to such repayment.

(d)    Access To Collateral. The Pre-Petition Agent (for the benefit of the Pre-Petition Secured Lenders) and their experts and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral; and

(e)    Information. The Debtors shall provide the Pre-Petition Agent and the Creditors' Committee with any written financial information or periodic reporting that is provided to, or required to be provided to, the Agent or the DIP Lenders; *provided, however*, that to the extent such information is provided to the Creditors' Committee, the

34

Debtors shall be entitled to reasonably restrict access to such information solely to professionals retained by such committee.  The Debtors shall also provide the Agent and the Pre-Petition Agent with information related to payments made to and setoffs taken by the Debtors' suppliers in respect of any pre-petition claims to the extent such information is provided to the Creditors' Committee or is otherwise required to be supplied pursuant to the DIP Documents.

(f)    Pre-Petition Letters of Credit.  Subject to the terms and conditions of the DIP Documents, letters of credit issued and outstanding under the Pre-Petition Credit Agreement shall be replaced by letters of credit issued under the DIP Documents at the earlier of the stated expiry of such letters of credit and the next notice date for non-renewal of such letters of credit.  The Pre-Petition Agent, in consultation with and after prior notice to the Debtors, is authorized to provide notice of non-renewal to letter of credit beneficiaries to prevent the automatic renewal of "evergreen" Letters of Credit.

13.    *Reservation of Rights of Pre-Petition Secured Lenders*.  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders.  Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization of the use of any Cash Collateral and the granting of any Replacement Liens or Junior Adequate Protection Liens) shall impair or modify any rights, claims or defenses available in law or equity, including, without limitation, any right to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, to the Pre-Petition Agent, any Pre-Petition

35

~~Secured Lender, the Agent or any DIP Lender including, without limitation, rights of a
party to a swap agreement, securities contract, commodity contract, forward contract or
repurchase agreement with a Debtor to assert rights of setoff or other rights with respect
thereto as permitted by law (or the right of a Debtor to contest such assertion).  The Pre-
Petition Agent and the Pre-Petition Secured Lenders shall have the right to request further
or different adequate protection under sections 361, 363(e) and 364(d)(2) of the
Bankruptcy Code following the occurrence of any event after the Petition Date, that could
reasonably be expected to have a material adverse effect on (A) the Debtors' ability to
repay or refinance the Pre-Petition Obligations in full in cash under a Chapter 11 plan of
reorganization or (B) the Debtors' ability to satisfy the Adequate Protection Obligations.
The Debtors or any other party in interest may object to any such request, and with
respect to such objections nothing herein shall operate to shift any applicable burdens of
proof from those set forth in the Bankruptcy Code.~~

      10.    *Adequate Protection of Pre-Petition Secured Lenders*.  The Adequate
Protection Liens and other rights afforded to the Pre-Petition Agent and the Pre-Petition
Secured Lenders under paragraphs 12 and 13 of the Existing DIP Order shall continue in
effect until the Refinancing Date, whereupon the Adequate Protection Liens shall be
deemed released and the provisions of paragraphs 12 and 13 of the Existing DIP Order
shall be of no further force or effect.

      11.    ~~14.~~ *Perfection Of DIP Liens ~~And Adequate Protection Liens~~*.

      (a)     Subject to the provisions of paragraph ~~8~~7(a) above, the Agent ~~and
the Pre-Petition Agent are~~is hereby authorized, but not required, to file or record
financing statements, trademark filings, copyright filings, mortgages, notices of lien or

similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Agent on behalf of the DIP Lenders ~~or the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders~~ shall, in ~~their~~its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to ~~them~~the Agent hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and as of the date of entry of this Order. Upon the request of the Agent, each of the Existing DIP Agent and the Existing DIP Lenders, and the Pre-Petition Agent and Pre-Petition Secured Lenders, without any further consent of any party, is authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the Agent to further validate, perfect, preserve and enforce DIP Liens.

(b)    A certified copy of this Order may, in the discretion of the Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)    Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Credit Agreement or this Order.

12. 15.*Preservation Of Rights Granted Under The Order.*

(a) No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Setoff Claimants, respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens, the Adequate Protection Liens, the Replacement Liens and the Junior Adequate Protection Liens shall not be (i) solely in the case of the DIP Liens, subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than as specifically provided for in this Order). Nothing in this paragraph 1512(a) shall limit (x) the rights of the Debtors to refinance the Financing in compliance with the DIP Credit Agreement or (y) the rights of any party in interest with respect to any such refinancing.

(b) Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash

38

collateralized in accordance with the provisions of the DIP Credit Agreement), the

Debtors shall not seek, and it shall constitute an Event of Default and a termination of the

right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i)(i) any

modifications or extensions of this Order without the prior written consent of the Agent,

and no such consent shall be implied by any other action, inaction or acquiescence by the

Agent, or (ii)(ii) an order dismissing any of the Cases.  If an order dismissing any of the

Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered,

such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy

Code) that (x) the Superpriority Claims, priming liens, security interests and replacement

security interests granted to the Agent and, as applicable, the Pre-Petition Agent, the

Setoff Claimants or the holders of the Debtor Liens pursuant to this Order, shall continue

in full force and effect and shall maintain their priorities as provided in this Order until all

DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied

in full (and that such Superpriority Claims, priming liens and replacement security

interests, shall, notwithstanding such dismissal, remain binding on all parties in interest)

and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the

purposes of enforcing the claims, liens and security interests referred to in (x) above.

        (c)     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior

to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of

the effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations ~~or Adequate Protection Obligations~~ incurred by the Debtors to the Agent, or the DIP ~~Lenders, the Pre-Petition Agent or the Pre-Petition Secured~~ Lenders prior to the actual receipt of written notice by the Agent ~~and Pre-Petition Agent~~ of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agent, ~~DIP Lenders, Pre-Petition Agent and Pre-Petition Secured~~ and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, ~~DIP Obligations~~ and ~~Adequate Protection~~ DIP Obligations.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights

40

and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

16.    *Effect Of Stipulations On Third Parties*.  Subject to the reservation of rights set forth in this paragraph 16, the stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be binding upon the Debtors in all circumstances. The stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be binding upon all other parties in interest, including, without limitation, the Creditors' Committee, unless (a) a party-in-interest has timely filed an adversary proceeding or contested matter, or commenced litigation for authorization to commence such adversary proceeding or contested matter ("Authorization Motion"), (subject to the limitations contained herein, including, *inter alia*, in paragraph 17) by no later than January 16, 2006 in the case of clause (i) below and April 17, 2006 in the case of clauses (ii) and (iii) below (or, in each case, such later date (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole discretion or (y) as has been ordered by the Court) (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral, (ii) seeking a determination that the Pre-Petition Debt was under-secured as of the Petition Date, or (iii) otherwise asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims or causes of action , objections, contests or defenses (collectively, "Claims and Defenses") against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders or their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Existing

41

Agreements, the Pre-Petition Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date other than any such Claims and Defenses as they relate to the appropriateness of any interest rate, fees or expenses charged or claimed by the Pre-Petition Secured Lenders (except with respect to the payments of interest at ABR plus the Applicable Margin to any Pre-Petition Secured Lender who has executed and delivered the release and waiver, and the other fees and expenses, all as provided in paragraph 12(c) of this Order), including, without limitation, the allowance of any claim for default interest under Section 2.14 of the Pre-Petition Credit Agreement or the allowance of any claim for any prepayment premium under Sections 2.10 or 2.11 of the Pre-Petition Credit Agreement. Subject in each case to the reservation of the Debtors' rights set forth above to contest the allowance of any claim for default interest on the Pre-Petition Debt or any prepayment premium, if no such adversary proceeding or contested matter is timely filed (it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion), (x) the Pre-Petition Debt and all related obligations of the Debtors (the "Pre-Petition Obligations") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to defense, counterclaim, recharacterization,

42

subordination or avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any other or further challenge by any party-in-interest, and any such party-in-interest shall be enjoined from, seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed (it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion), the stipulations and admissions contained in paragraphs 3 and 10 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter (it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion).  Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Existing Agreements or the Pre-Petition Debt other than the Creditors' Committee, which is hereby vested with standing and authority to pursue any cause of action arising from or related to the Debtors' stipulations and admissions in paragraphs 3 and 10 of this Order.

13.     *Effect Of Stipulations On Third Parties*.  Notwithstanding the Fourth
Stipulation Between the Creditors' Committee and JPMorgan Chase Bank, N.A., as
Agent for the Pre-Petition Secured Lenders, with Respect to an Extension of Deadlines
Established Pursuant to Final DIP Financing Order, entered by this Court on June 13,
2006, the stipulations and admissions contained in paragraphs 3 and 10 of the Existing
DIP Order shall be binding upon the Creditors' Committee, and the time period during
which the Creditors' Committee is permitted to raise "Claims and Defenses" as provided
in paragraph 16 of the Existing DIP Order, is hereby terminated.

14.     ~~17.~~ *Limitation On Use Of Financing Proceeds And Collateral*.
Notwithstanding anything herein or in any other order by this Court to the contrary, no
borrowings, letters of credit, Cash Collateral, ~~Pre-Petition Collateral,~~ Collateral or the
Carve Out may be used to (a) object, contest or raise any defense to, the validity,
perfection, priority, extent or enforceability of any amount due under the DIP
Documents, the Existing DIP Facility Documents or the Existing ~~Agreements~~Pre-Petition
Facility Documents, or the liens or claims granted under this Order, the Existing DIP
Order, the DIP Documents or the Existing ~~Agreements~~Pre-Petition Facility Documents,
(b) assert any ~~Claims and Defenses or any other~~ causes of action against the Agent, the
DIP Lenders, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent
or the Pre-Petition Secured Lenders or their respective agents, affiliates, representatives,
attorneys or advisors, ~~(c)~~ prevent, hinder or otherwise delay the Agent's ~~or the Pre-
Petition Agent's~~ assertion, enforcement or realization on the Cash Collateral or the
Collateral in accordance with the DIP Documents, ~~the Existing Agreements~~ or this Order,
~~(d)~~(c) seek to modify any of the rights granted to the Agent, the DIP Lenders, the

Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders hereunder or under the DIP Documents or the Existing Agreements,

under the Existing DIP Order or under the DIP Documents, the Existing DIP Facility

Documents or the Existing Pre-Petition Facility Documents, in each of the foregoing

cases without such parties' prior written consent or (e)(d) pay any amount on account of

any claims arising prior to the Petition Date unless such payments are (i) approved by an

Order of this Court and (ii) in accordance with the DIP Credit Agreement or otherwise

approved by the Agent in its sole discretion; *provided* that, notwithstanding anything to

the contrary herein, the Creditors' Committee shall be limited to $250,000 to perform the

investigations contemplated hereby and no other official committee shall be authorized to

perform such investigations; *provided, further,* that such $250,000 limit shall not include

the fees and expenses of an investment banker in connection with the investigations

contemplated by clause (a)(ii) of paragraph 16 of this Order.

     15.    18. *Setoff, Replacement Liens and Junior Adequate Protection Liens.*  To

the extent that a customer or supplier of the Debtors that has an allowable setoff claim

under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any

Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment

that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"),

such customer or supplier (a "Setoff Claimant") is hereby provided, consistent with the

terms of the Existing DIP Order, with certain rights and adequate protection as described

below.  For the avoidance of doubt, nothing herein shall be construed to be an admission

or acknowledgement, or an increase or decrease in the monetary amount of the pre-

petition setoff or recoupment rights of any person, under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(a)    <u>Exercise of Set Off</u>.  (1)  Any exercise of a Setoff Right (as defined below) in accordance with this Order shall not be stayed by section 362 of the Bankruptcy Code.  Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.  Nothing in this Order shall prevent any holder of a right of Setoff from seeking relief from the automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest from objecting or being heard with respect to any such request.  A Setoff Claimant shall, in accordance with this paragraph, be entitled to exercise its Setoff that arose in the ordinary course of business for any claims or recoupment defenses arising from or related to the claims for prepetition warranty and/or product recall claims, customer adjustments, customer rebates and allowances, overpricing claims, claims for short shipments and damaged goods, customer/supplier netting and other similar claims arising in the ordinary course of business of the relevant parties other than any such claims or recoupment defenses arising as a result of the filing of the cases (a "Setoff Right").  A Setoff Right shall not include any claims or recoupment defenses arising from or related to employee or employee benefit matters, retiree benefit or pension matters, including, without limitation, any related indemnities or guarantees, the rejection of executory contracts, or consequential or punitive damages.  The determination as to whether a Setoff Claimant may exercise a "Setoff Right" will be made solely by ~~(i)~~(i) the agreement of the Setoff Claimant, the Creditors' Committee and the Debtors, ~~(ii)~~(ii) pursuant to the procedures hereinafter set forth or ~~(iii)~~(iii) order of the Court.

46

(2)     Any Setoff Claimant seeking to exercise a Setoff Right against payables during any month (whether against Pre-Petition Payables or post-petition payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and reasonably detailed documentation supporting such Setoff Right.  If the Setoff Claimant, the Creditors' Committee and the Debtors fail to agree in writing that any amount is included in a Setoff Right within 10 business days after submission of such information to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors and such Setoff Claimant shall (unless all such parties agree to extend such 10 business day period) seek resolution of such matter through a mediator agreed to by the Debtors and such Setoff Claimant or appointed by this Court.  Such mediation shall end not later than 30 days after the Agreement Deadline unless such period is extended by agreement of the Debtors and such Setoff Claimant.  If the Debtors and such Setoff Claimant cannot resolve the matter through such mediation, then such matter may be submitted to binding arbitration to a single arbitrator agreed to by all such parties or appointed by this Court, and such parties shall request that such arbitrator issue its ruling within 90 days after the Agreement Deadline.  Notwithstanding any award in any such arbitration, in no event shall the Setoff Claimant be permitted to exercise its Setoff Right against any payables other than Pre-Petition Payables except as set forth in this paragraph 18.15.

(3)     In the event any Setoff Claimants (the "Non-Exercising Setoff Claimants") have not exercised their asserted Setoff Rights in respect of their respective Pre-Petition Payables and have instead paid their Pre-Petition Payables to the Debtors, in addition to any other adequate protection provided to such Non-Exercising Setoff

47

Claimants herein, the Non-Exercising Setoff Claimants may exercise Setoff Rights established in accordance with this paragraph against post-petition payables owed by such Non-Exercising Setoff Claimants to the Debtor or Debtors against which such Non-Exercising Setoff Claimants have their Setoff Rights; *provided* that (a) in the case of the exercise of any Setoff Rights by General Motors Corporation or any of its affiliates ("GM"), the aggregate amount of Setoff Rights that may be exercised pursuant to this subparagraph (3) against Pre-Petition Payables or post-petition payables owed by GM to the Debtors during any month shall not exceed $35 million (the "Aggregate Monthly Cap Amount") and (b) to the extent Setoff Rights are recognized in accordance with this Order or the Existing DIP Order in excess of the Setoff Rights that are permitted to be exercised pursuant to such limitations, Setoff Claimants may carry forward their Setoff Right to succeeding months, subject to the applicable monthly limitations, if any, until such Setoff Rights have been fully exercised.

(4)        (a) Except as set forth above, and subject to the adequate protection provided to Setoff Claimants as herein set forth, Setoff Claimants shall not be permitted to exercise any Setoff until the later of (x) the effective date of the Debtors' confirmed plan of reorganization and (y) allowance of the Setoff as a claim in these Cases.  Any exercise of Setoff pursuant to (x) or (y) above is subject to the treatment afforded to such Setoff under a plan of reorganization confirmed by the Bankruptcy Court.  Nothing contained herein shall limit (i) the discretion of the Debtors to pay warranty and/or product recall claims in accordance with orders of the Court, (ii) the right of any party in interest to exercise a post-petition setoff or recoupment against a

48

post-petition payable or (iii) the right of a Setoff Claimant to request further adequate

protection (or the Debtors or any party in interest to oppose any such request).

(b)      Adequate Protection.  A Setoff Claimant is entitled, pursuant to

sections 361, 362(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its

Setoff to the extent it does not exercise such Setoff and remits the amount of such Pre-

Petition Payables not setoff or recouped.  As adequate protection therefor, each such

Setoff Claimant is hereby granted, effective upon payment to the Debtors of the amount

subject to such Setoff, the following (collectively, including any Junior Adequate

Protection Liens granted pursuant to the Existing DIP Order, the "Junior Adequate

Protection Liens"), such Junior Adequate Protection Liens to be effective and perfected

without the necessity of the execution by the Debtors of mortgages, security agreements,

pledge agreements, financing statements or other agreements:

(i)      A replacement lien (including any Replacement Liens granted

pursuant to the Existing DIP Order, the "Replacement Lien") on such Setoff Claimant's

post-petition payables to the extent that it is determined that such Setoff Claimant had a

Setoff in respect of the Pre-Petition Payables that have been remitted to the Debtors,

which Replacement Lien is limited to the amount of the Setoff; *provided, however*, that

(i) the Debtors reserve their rights to any and all Claims and Defenses that may be

asserted with respect to such Setoff and (ii) the Replacement Liens are subject and

subordinate to and only to (x) the ~~security interests and liens~~Existing DIP Liens, the First

Priority DIP Liens granted to the Agent for the benefit of the DIP Lenders in this Order

and pursuant to the DIP Documents, and any liens to which such liens so granted to the

Agent are junior and (y) the Carve-Out.

49

(ii)        As further adequate protection to protect the Setoff Claimant against any diminution in the value of its Replacement Lien, the Setoff Claimant is hereby granted a security interest in and lien upon all the other Collateral, subject and subordinate to and only to (A) the security interests and liens(A) the Existing DIP Liens, the DIP Liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents, and any liens to which such liens so granted to the Agent are junior, (B) (B) the Carve Out and (C)(C) until the Refinancing Date, the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders, under the Existing DIP Order; *provided* that the Setoff Claimant's security interest in and lien upon Collateral which is not (x) Pre-Petition Collateral (as defined in the Existing DIP Order), (y) Collateral that would have constituted Pre-Petition Collateral but for the operation of section 552(a) of the Bankruptcy Code as to which, without further action, the Pre-Petition Agent would have had a valid and perfected security interest or lien or (z) subject to the Replacement Lien, shall be *pari passu* with the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders in such Collateralpursuant to the Existing DIP Order and *pari passu* with the DIP Liens on Collateral that is not included in clauses (x), (y) or (z) solely to the extent such DIP Liens secure the Tranche C Term Loan.

(iii)        As further Adequate Protection, to the extent that the post-petition payables in respect of which the Setoff Claimant is granted a Replacement Lien are less than the Setoff of such Setoff Claimant, such Setoff Claimant is hereby granted an administrative claim under section 507(b) of the Bankruptcy Code in the amount of such

deficiency subject to the Carve Out and equal in priority to the administrative claim

granted as adequate protection to the Pre-Petition Secured Lenders in ~~Paragraph 12(b)~~

~~above~~paragraph 12(b) of the Existing DIP Order and the Superpriority Claim in respect

of the Tranche C Loan; *provided, however*, that the Setoff Claimant shall not receive or

retain any payments, property or other amounts in respect of the claims under section

507(b) of the Bankruptcy Code granted hereunder unless and until the DIP Obligations in

respect of the First Priority Facilities have indefeasibly been paid in cash in full and no

letters of credit under the First Priority Facilities remain outstanding.

      16.      ~~19.~~*Debtor Reimbursement Claims and Debtor Liens.*  Without limiting

the joint and several liability of each of the Debtors for the DIP Obligations, the Debtors

shall use their reasonable best efforts to ensure that Debtors that receive the benefit of

funds advanced under the Financing repay their share thereof on a dollar for dollar basis.

To the extent a Debtor ~~(i)~~(i) incurs any of the DIP Obligations (including as a result of

intercompany balances incurred after the Petition Date to the extent such balances arise

from the incurrence of DIP Obligations) or ~~(ii)~~(ii) receives a ~~postpetition~~post-petition

intercompany loan or transfer (including as a result of the Debtors' cash management

system or otherwise) (each a "Beneficiary Debtor"), and such DIP Obligations were

repaid or such ~~postpetition~~post-petition intercompany loan or transfer is made (including

from cash collateral) (each an "Advance") by ~~(A)~~(A) any other Debtor that is a Borrower

or Guarantor under the Financings or ~~(B)~~(B) any non-Debtor affiliate (together (A) and

(B) an "Adequately Protected Entity"), the Adequately Protected Entity shall have,

subject to the limitations set forth in paragraph ~~20~~17 below (a) an allowed claim under

sections 364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for

the amount of such Advance, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate agreed between the Debtors from time to time for the period accruing from and after the date such claim arises until repayment thereof (collectively, including Debtor Reimbursement Claims granted pursuant to paragraph 17 of the Existing DIP Order, the "Debtor Reimbursement Claim") and ~~(b)~~(b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code securing such Debtor Reimbursement Claim (including Debtor Liens granted pursuant to paragraph 17 of the Existing DIP Order, a "Debtor Lien").  All ~~Debtor~~ Liens are effective and perfected without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements.

17.    ~~20.~~ All Debtor Reimbursement Claims and Debtor Liens shall be junior, subject and subordinate to and only to the Superpriority Claims, the DIP Liens, ~~the~~ Adequate Protection Obligations, the Junior Adequate Protection Liens, the Replacement Liens and to any claims against such Beneficiary Debtor that are expressly senior to, and on a parity with, or carved out from the Superpriority Claims, the DIP Liens, ~~the~~ Adequate Protection ~~Obligations~~Obligation, Junior Adequate Protection Liens or the Replacement Liens.  All Debtor Liens shall be "silent" liens and the Adequately Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor Reimbursement Claim or Debtor Lien, including, without limitation, taking any of the actions that the ~~Pre-Petition Agent, the Pre-Petition Secured Lenders and~~ holders of Replacement Liens and Junior Adequate Protection Liens are prohibited from taking pursuant to paragraph ~~8,~~7, including, without limitation, as to

52

seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon

repossession or liquidation of any property of another Debtor, or taking any position with

respect to any disposition of the property, the business operations, or the reorganization

of another Debtor. The Agent shall have the exclusive right to manage, perform and

enforce all rights and remedies described in the DIP Documents.  The Debtor Lien of the

Adequately Protected Entity automatically, and without further action of any person or

entity of any kind, shall be released or otherwise terminated to the extent that property

subject to such Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent

or any other Debtor or to the extent that such property is subject to a lien prior to the DIP

Liens and such lien is permitted under the DIP Documents.

18.    *Sufficiency of Adequate Protection*.  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of all parties with liens against or interests in property of the Borrower or the Guarantors.

19.    ~~21.~~ With respect to the effect of Debtor Liens on any sale of property by

the Debtors, ~~(a)~~(a) the Debtors may sell property, in accordance with section 363 of the

Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the

proceeds of sale in the same priority and subject to the same limitations and restrictions

as existed in respect of the property sold and ~~(b)~~(b) the provisions of section 363(k) of the

Bankruptcy Code shall not apply.

20.    ~~22.~~ *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as

Collateral Agent under the Existing ~~Agreements~~Pre-Petition Facility Documents, is the

secured party under any Control Agreements (as defined in the Existing ~~Agreements~~Pre-Petition Facility Documents), listed as loss payee under the Debtors' insurance policies as required under ~~the~~that certain Guarantee and Collateral Agreement, dated as of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of the Pre-Petition Agent, or is the secured party under any other Existing ~~Agreement~~Pre-Petition Facility Document, JPMCB, in its role as Collateral Agent under the DIP Credit Agreement, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors' insurance policies and the secured party under any other Existing ~~Agreement~~Pre-Petition Facility Document and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing ~~Agreements~~Pre-Petition Facility Documents.

21.    ~~23.~~ *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the ~~DIP~~Existing DIP Order, the DIP Documents or the Existing DIP Facility Documents, the provisions of this Order shall govern.  Subject to the terms of this Order, the provisions of the Existing DIP Order shall remain in full force and effect.  The terms of this Order shall govern to the extent of any inconsistency between this Order and that certain Cash Management Order dated October 14, 2005, including, without limitation, with respect to the matters set forth in paragraphs ~~19~~16 to ~~21~~18 of this Order.

22.    ~~24.~~ *Binding Effect; Successors And Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in

interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate Protection Lien hereunder or under the Existing DIP Order, any Committee appointed in these Cases, and the Debtors, for themselves and not for their estates, and their respective successors and assigns and shall inure to the benefit of the Agent, the DIP Lenders, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Replacement Lien or Junior Adequate Protection Lien, and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent, the Existing DIP Agent, the Pre-Petition Agent, the DIP Lenders, the Existing DIP Lenders and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent, the Pre-Petition Agent, the Existing DIP Agent, the DIP Lenders, the Existing DIP Lenders and the Pre-Petition Secured Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

55

23.    25. *Aircraft Leases.*  Notwithstanding anything to the contrary contained in this Order and consistent with this Court's September 29, 2006 order (Docket No. 5234), no DIP Liens or any other liens or interests granted, authorized or contemplated herein shall attach to any interests of Delphi Automotive Systems Human Resources, LLC ("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001 between Bank of America, N.A., and Delphi HR (the "Aircraft Leases"), or in any personal property, cash collateral or proceeds that is the subject of the Aircraft Leases.

24.    26. *Objections Overruled.*  Any Objection objection to the Motion which has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.

(NY) 27011/094/REFI/delphi.refi.approval.order.doc                                                              12/17/06 4:41 PM

25.    27. *Committee Notices.*  All notices to be provided to the Creditors'

Committee shall be sent to Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New

York, NY 10022-4834, Attn: Robert Rosenberg, Esq.

26.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(g) or

any other provision of the Bankruptcy Rules or Bankruptcy Code, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated:    October 28,
          2005_____, 200_
          New York, New York

                              /s/ ROBERT D. DRAIN
                              _____
                              UNITED STATES BANKRUPTCY JUDGE

Document comparison done by DeltaView on Sunday, December 17, 2006 4:43:10 PM

| Input: | |
|---|---|
| Document 1 | file://M:/REFI/DELTAVIEW/Existing.Final.DIP.Order.061217_0957.doc |
| Document 2 | file://M:/REFI/DELTAVIEW/delphi.refi.approval.order.061217_1641.doc |
| Rendering set | DPW -- Color Legislative |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 197 |
| Deletions | 245 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 442 |