**Hearing Date:  February 14, 2007**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :
       In re                        :      Chapter 11
                                   :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                   :
                 Debtors.    :      (Jointly Administered)
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT TO
### PROOF OF CLAIM NUMBER 16322 (INOVISE MEDICAL, INC.)

### ("STATEMENT OF DISPUTED ISSUES – INOVISE MEDICAL, INC.")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Statement Of Disputed Issues (the "Statement Of Disputed Issues") With

Respect To Proof Of Claim Number 16322 (the "Proof Of Claim") filed by Inovise Medical, Inc.

("Inovise") (which was subsequently transferred to Longacre Master Fund Ltd. ("Longacre"))

and respectfully represent as follows:

<u>Background</u>

1.      Inovise filed the Proof Of Claim on or about September 18, 2006.  The

Proof Of Claim asserts an unsecured nonpriority claim in the amount of $600,000.00 (the

"Claim") against Delphi Automotive Systems LLC ("DAS LLC") for amounts allegedly owed

pursuant to a OEM License and Supply Agreement between Inovise and Delphi Medical

Systems Corporation ("Delphi Medical"), dated April 11, 2005 (the "Agreement").[1]  Specifically,

the Claim is comprised of alleged obligations under an invoice dated September 30, 2005 in the

amount of $150,000.00 (the "Prepetition Invoice") and guaranteed payments under section 4.3 of

the Agreement in the amount of $450,000.00 (the "Asserted Rejection Damages").  <u>See</u>

Attachment to Proof Of Claim at p. 1.

2.      Inovise had previously filed two proofs of claim asserting the same Claim.

Inovise filed proof of claim number 8983 against Delphi on or about July 5, 2006.  Inovise

subsequently filed proof of claim number 16315 against "Delphi Automotive Systems

---

[1]      The Agreement contains a confidentiality provision which limits the Debtors' ability to
disclose certain terms thereof.  The Debtors are therefore not attaching the Agreement as
an exhibit hereto, but will make a copy available to Inovise, upon its request, or to
Longacre, upon its request and receipt of written consent from Inovise for the Debtors to
provide a copy of the Agreement to Longacre.

Corporation" on or about September 14, 2006.[2]  The Debtors have not yet objected to either proof of claim number 8983 or proof of claim number 16315 and such claims are therefore not the subject of this Statement Of Disputed Issues and the Debtors expressly reserve the right to object to such proofs of claim at a later date.

3.      On April 11, 2005, Delphi Medical and Inovise entered into the Agreement, pursuant to which Inovise granted Delphi Medical a license of certain intellectual property for use in Delphi Medical's electrocardiography products.  Pursuant to the Agreement, Delphi Medical made certain minimum royalty commitments for the initial portion of the Agreement's term.  See Agreement, § 4.3.  However, the Agreement also includes a provision granting Delphi Medical the right to terminate the Agreement for any reason, and provides a separate measure of damages in the event that Delphi Medical elected to terminate the Agreement.   See Agreement, Appendix 2.6, ¶11.  The Agreement was rejected by Delphi Medical, effective as of May 12, 2006, pursuant to this Court's Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of OEM License and Supply Agreement With Inovise Medical, Inc. (Docket No. 3947) dated May 30, 2006.

4.      The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

---

[2]      Delphi Automotive Systems Corporation is the former name of Delphi and proof of claim number 16315 listed Delphi's case number (05-44481).  The claims and noticing agent therefore docketed proof of claim number 16315 against Delphi.

5.      Longacre filed its Response Of Longacre Master Fund Ltd. To Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5810) (the "Response") on November 24, 2006.

<u>Disputed Issues</u>

A.    Delphi Medical Has No Obligation For
      <u>Any Damages Arising From Rejection Of The Agreement</u>.

6.      The Agreement includes, in Appendix 2.6 thereto, certain General Terms And Conditions (the "Terms and Conditions") which govern each of Inovise's and Delphi Medical's rights and obligations under the Agreement and any ancillary agreements entered into pursuant thereto.  <u>See</u> Agreement, Appendix 2.6, ¶1 ("[Inovise] acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, the OEM License and Supply Agreement by and between Inovise Medical, Inc. ('Seller') and Delphi Medical Systems Corporation ('Buyer') . . ..").  The Terms and Conditions provide Delphi Medical with an express "termination for convenience" right:

> In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing.  Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work in process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition.  The purchase price for such finished goods, raw materials and work in process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work in process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such

4

costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent.  In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable.  Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination.  Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

Agreement, Appendix 2.6, ¶11.

7.      Therefore, Inovise's claim for Rejection Damages should be limited to the amount that Inovise was entitled to recover upon a termination of the Agreement for convenience by Delphi Medical under paragraph 11 of the Terms and Conditions.  Pursuant to paragraph 11, Inovise has no right to collect any damages as a result of a termination for convenience by Delphi Medical, as the paragraph expressly provides that Delphi Medical "may, at its option, purchase from Seller any or all raw materials, work in process and finished goods inventory related to the goods under this Contract."  Agreement, Appendix 2.6, ¶11 (emphasis added).  As the provision is permissive not mandatory, Inovise has no right to receive any payment of damages from Delphi Medical upon a termination of the Agreement.  Furthermore, even if paragraph 11 of the General Terms and Conditions were interpreted to provide Inovise a right to recover damages upon a termination of the Agreement, Inovise's damages would be limited to:

(a)      the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus

(b)      the actual costs of work in process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are

5

reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract <u>less</u>

(c)   the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent.

8.     No goods or services were being provided by Inovise under the Agreement as of the effective date of the rejection.  Inovise also had no work in process or raw materials inventory as of the effective date of the rejection.  Therefore, even if Inovise did have a right to recover damages in an amount measured by paragraphs (a), (b), and (c) above, the amount of Inovise's Rejection Damages would be $0.00.

B.     **If Any Portion Of The Claim For Rejection**
       **<u>Damages Is Valid, It Must Be Discounted To Present Value</u>.**

9.     Even if the Court were to determine that any portion of the Claim for Rejection Damages is valid, the entire claim was unmatured as of October 8, 2005 (the "Petition Date").  Pursuant to the Agreement, Delphi Medical was required to provide Inovise with minimum royalties for the first, second, and third "Royalty Years" in the amount of $150,000.00 per Royalty Year.  <u>See</u> Agreement, § 4.3.  A "Royalty Year" is defined in the Agreement as "each of the twelve-month periods commencing on the earlier of (a) the date the first Product is offered for commercial sale, and (b) September 30, 2005, and each anniversary thereof thereafter."  Agreement, § 1.23.  No Products (as defined in the Agreement) were ever offered for commercial sale and the first, second, and third Royalty Years therefore would have ended September 29, 2006, September 29, 2007, and September 29, 2008, respectively.

10.    Payment of the minimum royalties for each Royalty Year were due with the next regular royalty payment, which royalty payments were made quarterly.  <u>See</u> Agreement, §§ 4.3, 4.4.  Regular quarterly royalty payments were due "within forty-five (45) days following the end" of a "Royalty Quarter," which was defined as "each three-month period ending March

31, June 30, September 30 and December 31 within a Royalty Year." <u>See</u> Agreement, §§ 1.23,

4.4.  Therefore, the next regular royalty payment after the end of each of the first, second, and

third Royalty Years would have been due on November 14, 2006, November 14, 2007, and

November 14, 2008, respectively.  Each portion of the Claim for Rejection Damages, if

ultimately determined to be valid, must be discounted to its value as of the Petition Date utilizing

an appropriate discount rate.  Discounting those portions of the Claim to their value as of the

Petition Date would result in a significant reduction in the amount of the Claim.

C.    <u>Inovise Has Provided No Evidence That It Has Fully Mitigated Its Claim</u>.

11.    A claimant is required to mitigate its damages arising as a result of a

breach of an agreement, including as a result of the rejection of such agreement pursuant to 11

U.S.C. § 365.  Neither the Proof Of Claim nor the Response contain any evidence that Inovise

has undertaken any attempt to mitigate its damages, if any, arising as a result of Delphi Medical's

rejection of the Agreement.  Pursuant to the Agreement, Inovise granted Delphi Medical an

exclusive license with respect to certain technology in certain markets.  As Delphi Medical's

rejection of the Agreement allowed Inovise to license the technology covered by the Agreement

to any other party, the Debtors believe that Inovise should have been able to mitigate its damages,

at least in part, which would further reduce the amount of the Claim.

D.    <u>The Proof Of Claim Is Untimely</u>.

12.    Pursuant to the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a)

And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For

Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206)

(the "Bar Date Order"), claimants, including Inovise, were required to file proofs of claim on or

before July 31, 2006 at 4:00 p.m. (the "Bar Date").  The Proof Of Claim, however, was not filed

until September 18, 2006.  As described below, the Bar Date Order also required claimants to file a separate proof of claim against each Debtor entity which such claimant believed was, or may be, liable to such claimant.

13.    Prior to the Bar Date, Inovise elected to file a proof of claim against only Delphi, and not to file any proofs of claim against any of the other Debtors, including DAS LLC. As Delphi and DAS LLC are separate and distinct legal entities, Inovise's attempt to amend its earlier proof of claim to modify the Debtor entity against which it is asserted is a substantive amendment and may affect recoveries of other creditors of DAS LLC.  Furthermore, freely allowing the untimely amendment of proofs of claim to modify the Debtor entity against which such claim is asserted runs afoul of the express provisions of the Bar Date Order and may prejudice the Debtors' on-going efforts to formulate a plan of reorganization, as the Debtors will have no certainty as to the potential claims against any individual Debtor.  Therefore, the Proof Of Claim should be disallowed in its entirety as being untimely pursuant to the Bar Date Order.

E.    DAS LLC Has No Obligation For Rejection Damages Under The Agreement.

14.    The Claim is asserted by Inovise against DAS LLC.  The Debtors dispute that DAS LLC owes any obligation for Rejection Damages, if any, to Inovise. [3]  As noted above, the basis for the Rejection Damages portion of the Claim is Delphi Medical's rejection of the Agreement, which is between Inovise and Delphi Medical.  Delphi Medical and DAS LLC are separate and distinct legal entities.  Neither the Proof Of Claim nor the Response assert any basis upon which DAS LLC would be liable for Delphi Medical's obligations, if any, for Rejection

---

[3]    The Debtors acknowledge that Schedule F of the Schedules of Liabilities of DAS LLC reflects an undisputed unsecured prepetition obligation owing to Inovise in the amount of $150,000.00, which is incorporated in the Proof Of Claim.  As provided herein, the Debtors do not dispute the portion of the Claim that asserts the obligation listed on DAS LLC's Schedule F.

Damages under the Agreement.  Similarly, the Agreement provides no basis for claims to be asserted against DAS LLC.  The Agreement clearly and unambiguously identifies Delphi Medical as the party to the Agreement.  See, e.g., Agreement at pp. 1 and 23.  DAS LLC is not, and has never been, a party to the Agreement.

15.     Furthermore, pursuant to the Bar Date Order, claimants, including Inovise, were required to file proofs of claim against the appropriate Debtor entity.  Specifically, paragraph 3(f) of the Bar Date Order provides:

> Proofs of Claim must clearly indicate the name of the applicable Debtor against which the Claim is asserted and the applicable reorganization case number for such Debtor, and if a Claim is asserted against more than one of the Debtors, a separate Proof of Claim must be filed in each such Debtor's reorganization case.

16.     Furthermore, the Notice Of Bar Date For Filing Proofs Of Claim (the "Bar Date Notice") which was approved by the Court pursuant to Bar Date Order also specifically stated that "each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case."  See Bar Date Notice at p. 2.  Exhibit A to the Bar Date Notice specifically identified Delphi Medical as a Debtor and identified its case number.  See Exhibit A to Bar Date Notice at p. 2.

17.     Nonetheless, Inovise filed its Proof Of Claim only against DAS LLC, and did not file any proofs of claim against Delphi Medical.  The July 31, 2006 bar date passed over four and one-half months ago and a further untimely amendment should not be permitted for the reasons set forth above.  As the Proof Of Claim was asserted against DAS LLC and DAS LLC clearly has no obligation under the Agreement, including, but not limited to, the payment of any Rejection Damages arising with respect thereto, the Claim for Rejection Damages is invalid and should be reduced to the $150,000.00 reflected on DAS LLC's Schedule F.

## Reservation Of Rights

18.     This Statement Of Disputed Issues is submitted by the Debtors pursuant to

paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions

of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of

Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional

legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim

and (b) the Debtors' right to later identify additional documentation supporting the disallowance,

expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

disallowing and expunging the Claim, (b) in the alternative, reducing the Claim to $150,000.00,

(c) further in the alternative, discounting the Claim to its value as of the Petition Date utilizing an

appropriate discount rate, and (d) granting the Debtors such other and further relief as is just.

Dated: New York, New York
      December 18, 2006

                  SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP

                  By: /s/ John Wm. Butler, Jr.
                      John Wm. Butler, Jr. (JB 4711)
                      John K. Lyons (JL 4951)
                      Ron E. Meisler (RM 3026)
                  333 West Wacker Drive, Suite 2100
                  Chicago, Illinois  60606
                  (312) 407-0700

                  - and -

                  By: /s/ Kayalyn A. Marafioti
                      Kayalyn A. Marafioti (KM 9632)
                      Thomas J. Matz (TM 5986)
                  Four Times Square
                  New York, New York  10036
                  (212) 735-3000

                  Attorneys for Delphi Corporation, et al.,
                    Debtors and Debtors-in-Possession