David S. Rosner (DR-4214)
Michael M. Fay (MF-7006)
Adam L. Shiff (AS-7571)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800

COUNSEL TO THE DELPHI TRADE COMMITTEE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
In re                                : Chapter 11
                                     :
DELPHI CORPORATION, et al.,          : Case No. 05-44481 (RDD)
                                     :
            Debtors.                 : (Jointly Administered)
--------------------------------------------------------x

PRELIMINARY OBJECTION OF THE DELPHI TRADE COMMITTEE TO THE
EXPEDITED MOTION FOR ORDER AUTHORIZING AND APPROVING THE EQUITY
PURCHASE AND COMMITMENT AGREEMENT PURSUANT TO SECTIONS 105(a),
363(b), 503(b) AND 507(a) OF THE BANKRUPTCY CODE AND THE PLAN
FRAMEWORK SUPPORT AGREEMENT PURSUANT TO SECTIONS
105(a), 363(b) AND 1125(e) OF THE BANKRUPTCY CODE

The Committee of Delphi Trade Claim Holders (the "Delphi Trade Committee"), by and through its undersigned counsel, hereby files this preliminary objection to the *Expedited Motion for Order Authorizing and Approving Equity Purchase and Commitment Agreement Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code and the Plan Framework Support Agreement Pursuant to Sections 105(a), 363(b) and 1125(e) of the Bankruptcy Code* (the "Motion"),[1] and respectfully represents as follows:

---

[1] Capitalized terms used but not defined have the meanings assigned in the Motion.

## BACKGROUND

1.    The members of the Delphi Trade Committee hold trade claims (the "Trade Claims") against Delphi Automotive Systems LLC and its domestic operating subsidiaries.

2.    In October 2006, the Delphi Trade Committee's counsel and financial advisor, Capstone Advisory Group, LLC, executed confidentiality agreements with Delphi Corporation *et al.* ("Delphi").  The Delphi Trade Committee's intention was to obtain necessary information about these cases and to negotiate acceptable treatment.

3.    Delphi initially provided the Delphi Trade Committee with limited information but rejected a second request for information and refused to allow it to participate in the "framework discussions."

4.    On December 19, 2006, the Debtors filed the Motion, seeking among other things approval of the Equity Purchase and Commitment Agreement (the "Investment Agreement"), approval of the Plan Framework Support Agreement (the "Plan Support Agreement"), approval of over $80 million in fees and expenses, approval of a $100 million break up fee, and approval of plan security pricing that may provide pricing value of between $405 million and $972 million.

## OBJECTION

5.    Though subject to confidentiality agreements, the Delphi Trade Committee has not been involved in any respect with the Investment Agreement and Plan Support Agreement. Accordingly, upon initial review and without the information necessary to evaluate the agreements completely, the Delphi Trade Committee objects to approval based on the following:

   (a)    Approval of the Investment Agreement is premature.  The obligations of the Proposed Investors are not binding until several material conditions are met, including confirmation and effectiveness of a chapter 11 plan.

2

        Delphi offers no meaningful justification for ramming this through during Christmas and New Years.

(b)     The Debtors are agreeing to pay excessively large Commitment Fees without a true commitment being provided by the Proposed Investors. The Debtor is obligating itself to pay a break up fee upon mere entry into an Alternative Transaction, not its closing.

(c)     The difference in the dictated purchase price of the common stock ($35 per share) from the "treatment" value ($45 per share) either over states creditor recoveries or provides the Investors an additional $63 million "pricing" fee and the opportunity for a further $567 million.

(d)     The difference in the conversion price of the preferred stock ($35 per share) from the "treatment" value ($45 per share) either overstates creditor recoveries or provides Investors an additional "pricing" fee of $342.9 million.

(e)     If the "correct" price is what Delphi is using to treat its creditors, $45 per share, then, the Investment Agreement yields fees, on the common equity, of between $118.125 million (5.4%) and $685.125 million (31.1%).

(f)     If the "correct" price is that which the asserted arms'-length buyer is paying, $35 per share, then Delphi is "satisfying in full" the Trade Claims with inflated equity rendering the plan illusory and not confirmable (as indicated below).

(g)     The Limited Termination rights appear to provide full commitment fees to certain Investors with absolutely no commitment, even one arguably to negotiate agreement in good faith.

(h)     The Investment Agreement dictates critical plan provisions making it an improper *sub rosa* plan.

(i)     The Investment Agreement provides section 1125(e) protection without approval of a disclosure statement.

(j)     The terms of the proposed chapter 11 plan for the Trade Claims provide treatment that violates the Bankruptcy Code and discriminates against trade creditors including (i) provision of a significant recovery to equity without paying the Trade Claims in full with full postpetition interest, (ii) imposition of an arbitrary claims cap that reduces Trade Claim recovery in favor of junior classes, (iii) treatment of similarly situated claims differently with bond claims treated more favorably; and (iv) provision of

    postpetition interest for some claims and not others (and then provision for only 95% payment as with the Trade Claims' principal).[2]

(k) The Investment Agreement value Delphi with two markedly different valuations.

(l) The reasons stated by the Official Creditors Committee which the Delphi Trade Committee adopts.

(m) The $1.7 billion limitation on allowed trade and unsecured claims (other than unsecured funded debt) potentially further reduces creditor recoveries.

## RESERVATION OF RIGHTS

6. The Delphi Trade Committee reserves its right to supplement this preliminary objection and to press any and all other and further objections it may have to the relief Delphi seeks in the Motion.

---

[2] Assuming that $35 per share is the "correct" price (that is what the buyer is paying), then the deemed plan value of $45 per share, as applied to 20% of the Trade Claim recovery results in 15%, not 20%. Therefore the treatment is 95%, not 100%; yet equity holders, which the Delphi Trade Committee believe overlap with the Investors, still recover handsomely.

4

CONCLUSION

The Delphi Trade Committee respectfully requests that this Court deny the Motion and grant it such other and further relief as is just and proper.

Dated: New York, New York
December 21, 2006

                                  KASOWITZ, BENSON, TORRES
                                         & FRIEDMAN LLP

                                  /s/ David S. Rosner
                                  David S. Rosner (DR-4214)
                                  Michael M. Fay (MF-7006)
                                  Adam L. Shiff (AS-7571)
                                  1633 Broadway
                                  New York, New York 10019
                                  Telephone: (212) 506-1700
                                  Facsimile:  (212) 506-1800

                                  COUNSEL TO THE DELPHI TRADE
                                  COMMITTEE