William M. Hawkins (WH-1865)      Hearing Date: January 11, 2007 at 10:00 a.m.
Jason Blumberg (JB-1033)     Objection Deadline: January 8, 2007 at 4:00 p.m.
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000

**Attorneys for Kyocera Industrial Ceramics Corporation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
In re:                          :
                                :  Chapter 11
                                :
DELPHI CORPORATION, et al.,    : Case No. 05-44481 (RDD)
                                :
               Debtors.         : (Jointly Administered)
                                :
---------------------------------------------------------- X

**MOTION OF KYOCERA INDUSTRIAL CERAMICS CORPORATION
FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT
IT TO EXERCISE SETOFF AND/OR RECOUPMENT RIGHTS**

     Creditor Kyocera Industrial Ceramics Corporation ("KICC"), by and through its undersigned counsel Loeb & Loeb LLP, hereby moves (the "Motion") this Court for an order granting KICC relief from the automatic stay to permit it to exercise its setoff and/or recoupment rights with respect to the Pre-Petition Overpayment (as defined below). In support of its Motion, KICC respectfully represents as follows:

**BACKGROUND**

     1.      Prior to the commencement of the above-captioned Debtors' (the "Debtors") bankruptcy proceedings, KICC sold various types of ceramic heaters to Debtor Delphi Automotive Systems LLC ("Delphi Automotive").[1] This contractual relationship was evidenced

---

[1] KICC has continued to supply products to one or more of the Debtors in the post-petition period.

by various purchase orders, true and correct copies of which are attached hereto as <u>Exhibit A</u>, that were in effect between the parties from time to time (the "Agreement").

2. Pursuant to the Agreement, KICC agreed to, among other things, supply Delphi Automotive with its requirement of 12 watt heaters (part number 25108420) ("12 Watt Heaters") and 18 watt heaters (part number 25165124) ("18 Watt Heaters," and together with the 12 Watt Heaters, the "Heaters").

**The 18 Watt Heaters Claim**

3. Typically, Delphi Automotive communicated its need for Heaters during upcoming periods by transmitting the relevant information into the i-Supply service ("i-Supply"). i-Supply is a third-party supply chain application that is subscribed to by various manufacturers, distributors and their direct material supply chains in order to optimize inventory and parts supply relationships. KICC would then access i-Supply and adjust its production to meet the demand of Delphi Automotive, as reflected in i-Supply.

4. In the early part of 2004, KICC personnel began to notice that i-Supply's 16 week forecasts (the "i-Supply Forecasts") with respect to Delphi Automotive's demand for the 18 Watt Heaters was substantially higher than the 12-month global forecasts compiled by Susann Halverson (the "Halverson Forecasts") at the Debtors' Warren, Ohio plant. The Halverson Forecasts were prepared by the Debtors monthly <u>at the request of KICC</u> precisely for the reason of avoiding any inconsistencies between Delphi Automotive's demand and KICC's supply and manufacture of Heaters.

5. Alarmed by the large discrepancy between the projections contained in the i-Supply Forecasts and the Halverson Forecasts, KICC contacted Delphi Automotive in order to determine upon which set of forecasts KICC should base its production schedule. In fact, on

2

April 15, 2004, Ms. Sheila Murphy, Sales-Engineer-Automotive Division for KICC, visited the Debtors' Juarez facility in Mexico to discuss the issue with Mr. Ruben Estrada, a purchasing manager for the Debtors, and Mr. Fernando DeLeon, a buyer for the Debtors. At that meeting, Mr. DeLeon specifically advised Ms. Murphy that the <u>only forecast that KICC should reference is i-Supply</u>.

6.      Accordingly, at Delphi Automotive's direction, KICC continued to rely upon the i-Supply Forecasts in its production of the 18 Watt Heaters, dedicating significant resources to assure it could meet the apparent upcoming requirements. Unfortunately, in June of 2004, Delphi Automotive's requirements for the 18 Watt Heaters dropped dramatically - from 12,000 units per week down to 2,000 units per week within a 4 week period. In short, the i-Supply Forecasts that KICC were instructed to rely upon, and which KICC did rely upon, proved to be incorrect. Worse yet, KICC had warned the Debtors of the problem and KICC was instructed by the Debtors to ignore it, increasing the damage sustained by KICC in its reliance on and adherence to Delphi Automotive's instruction.

7.      As a result of the failure of the i-Supply Forecasts, KICC now possesses an overstock inventory of 145,000 18 Watt Heaters, manufactured to meet the i-Supply Forecasts. Therefore, based on the applicable costs of the 18 Watt Heaters and KICC's justified reliance on the i-Supply Forecasts, KICC has a claim against Delphi Automotive in respect of its overproduction of the 18 Watt Heaters in the amount of $303,050.00 (the "18 Watt Heaters Claim").

**The 12 Watt Heaters Claim**

8.      Shortly before the commencement of the Debtors' cases, KICC delivered 12 Watt Heaters to Delphi Automotive for which, to date, it has not received payment.

3

9.  The relevant invoices are as follows: (i) invoice number 96361247 dated September 15, 2005 in the amount of $23,400.00; (ii) invoice number 96361248 dated September 15, 2005 in the amount of $23,400.00; and (iii) invoice number 96363006 dated September 26, 2005 in the amount of $39,000.00.

10. Accordingly, on account of the 12 Watt Heaters, KICC possesses a claim against Delphi Automotive in the amount of $85,800.00 (the "12 Watt Heaters Claim").

**The Pre-Petition Overpayment**

11. On April 27, 2004, Delphi Automotive made a duplicate payment with respect to invoice number 3K3952200040211 (for 18 Watt Heaters) in the amount of $46,600.00 (the "Pre-Petition Overpayment"). Payment for this invoice had been previously remitted to KICC on April 1, 2004.

12. KICC has now filed this Motion with the Court for relief from the automatic stay so that it may apply the Pre-Petition Overpayment against its own pre-petition claims (i.e., the 18 Watt Heaters Claim and the 12 Watt Heaters Claim).

**KICC's Proof of Claim**

13. On July 28, 2006, KICC filed its proof of claim (claim number 12530) (the "Proof of Claim") in these cases, asserting that Delphi Automotive is indebted to it in the amount of no less that $311,830.00.[2] This amount consists of (i) the 18 Watt Heaters Claim ($303,050.00) plus (ii) the 12 Watt Heaters Claim ($85,800.00) <u>minus (iii) (A) the application of the Pre-</u>

---

[2] The Debtors objected to the Proof of Claim in their third omnibus claim objection dated October 31, 2006 (docket number 5452) (the "Omnibus Claim Objection"). In their Omnibus Claim Objection, the Debtors have proposed to reduce the Proof of Claim to the amount of $54,405.00. However, the Debtors have provided KICC with little, if any, of the grounds supporting this proposed treatment. Accordingly, on November 22, 2006, KICC filed its response (the "Response") to the Omnibus Claim Objection.

4

<u>Petition Overpayment ($46,600.00)</u> as well as (B) the application of a post-petition payment in the amount of $30,420.00 (the "Post-Petition Payment").[3]

**<u>The Final DIP Financing Order</u>**

14.     On October 28, 2005, the Court entered the Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) to Utilize Cash Collateral and (III) Granting Adequate Protection to Pre-Petition Secured Parties (the "Final DIP Financing Order").

15.     The Final DIP Financing Order provides in relevant part as follows:

> To the extent that a customer or supplier of the Debtors that has an allowable setoff claim under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"), such customer (a "Setoff Claimant") is hereby provided with certain rights and adequate protection as described below... Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.

<u>See</u> Final DIP Financing Order, ¶ 18.

16.     Thus, the Final DIP Financing Order arguably requires holders of recoupment rights to seek relief from the automatic stay prior to exercising such rights.

**RELIEF REQUESTED**

17.     By this Motion, KICC seeks entry of an order granting it relief from the automatic stay (and any additional stay imposed by the Final DIP Financing Order) to allow it to exercise immediately its setoff and/or recoupment rights with respect to the Pre-Petition Overpayment.

---

[3]     In its Response, KICC has asserted, <u>inter alia</u>, that application of the Post-Petition Payment (i) was authorized by the Debtors and (ii) was, therefore, appropriate under paragraph 4 of the Court's essential supplier order dated October 13, 2005. Application of the Post-Petition Payment is not at issue in this Motion, as it may be an issue raised in the Omnibus Claim Objection and KICC's Response.

5

## BASIS FOR RELIEF REQUESTED

### A.  KICC Has a Valid Right of Setoff and/or Recoupment.

18.     Section 553 of the Bankruptcy Code provides that:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ….

11 U.S.C. § 553(a).  As such, a valid right of setoff will be respected in bankruptcy. Citizens Bank of Maryland v. Strumpf, 526 U.S. 16, 18 (1995).

19.     In order for a creditor to establish that it has valid right of setoff, it must demonstrate that:

(a)     a debt exists from the creditor to the debtor and that debt arose prior to the commencement of the case;
(b)     the creditor has a claim against the debtor that arose prior to the commencement of the bankruptcy case; and
(c)     the debt and the claim are mutual obligations.

See United States v. Gerth, 991 F.2d 1428, 1431 (8th Cir. 1993); Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1035 (5th Cir. 1987).  In this case, all three elements are present.

20.     First, KICC owes a debt (on account of the Pre-Petition Overpayment) to Delphi Automotive that arose prior to the petition date.  As set forth above, that debt consists of the Pre-Petition Overpayment.

21.     Second, KICC has a claim against Delphi Automotive that arose prior to the petition date.  This claim is set forth, as discussed above, in the Proof of Claim.

22.     Finally, KICC's claim against Delphi Automotive and its debt (on account of the Pre-Petition Overpayment) to Delphi Automotive are mutual obligations.  Debts are mutual when the credits and debts are in the same right and are between the same parties, standing in the same capacity.  See In re Drexel Burnham Lambert Group, Inc., 113 B.R. 830, 847 (Bankr.

6

S.D.N.Y. 1990); In re Bennett Funding Group, Inc., 146 F.3d 136, 139 (2d Cir. 1998). In this case, the credits and debts are between Delphi Automotive and KICC.

23. Even if it did not have a setoff right, KICC has a right of recoupment with respect to the Pre-Petition Overpayment. The "typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction for the same goods or services." In re University Medical Ctr., 973 F.2d 1065, 1081 (3d Cir. 1992).

24. The doctrine of recoupment is intended to provide relief to creditors facing situations such as that with which KICC is faced in this case. See In re Public Service Co. of New Hampshire, 107 B.R. 441 (Bankr. D.N.H. 1989); Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984) ("[i]n bankruptcy, the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtors' claim against the creditor arise out of the same contract.").

25. In this case, KICC's was bound to provide Heaters to Delphi Automotive pursuant to the Agreement, and Delphi Automotive was obligated to pay for such Heaters. Although, the Agreement was evidenced by various purchase orders that were in effect from time, the Agreement clearly constituted one integrated contractual relationship. Accordingly, KICC's claim against Delphi Automotive, and KICC's debt to Delphi Automotive (on account of the Pre-Petition Overpayment), both arise from the Agreement.

**B. The Automatic Stay Should Be Lifted to Permit KICC to Setoff and/or Recoup the Pre-Petition Overpayment.**

26. Section 362(a)(7) of the Bankruptcy Code provides that the filing of a voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). However, Section 362(a)(7) "does not affect

7

the right of a creditor to setoff," but "simply stays its enforcement pending an orderly examination of the debtors' and creditors' rights." H.R. Rep. No. 595, 95th Cong., 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., at 51 (1978).

27. Thus, a party may still exercise its right of setoff in a bankruptcy proceeding, but must first obtain relief from the automatic stay or obtain an order allowing setoff prior to exercising any such right. In re Wicks, 176 B.R. 695, 698 (Bankr. E.D.N.Y. 1995); In re NTG Indus., Inc., 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).

28. Section 362(d) of the Bankruptcy Code provides that:

> [o]n request of a party in interest and after a notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause,....

11 U.S.C. § 362(d).

29. Here, cause exists to lift the automatic stay so as to permit KICC to setoff the Pre-Petition Overpayment because, inter alia, the Debtors have objected to KICC's Proof of Claim (i.e., in the Omnibus Claim Objection). While it does not appear that the basis of the Debtors' objection in any way relates to the Pre-Petition Overpayment (or KICC's application thereof), KICC's failure to act at this juncture could conceivably prejudice its rights with respect to the Pre-Petition Overpayment. In any event, the Court's determination of KICC's rights with respect to the Pre-Petition Overpayment will necessarily streamline the issues to be decided in the context of the Omnibus Claim Objection. Moreover, the modest amount of the Pre-Petition Overpayment ($46,600.00) is insignificant to the Debtors and their reorganization.

30. With respect to recoupment, "[t]he Bankruptcy Code does not contain a recoupment provision." Cooper-Jarrett, Inc. v. Central Transport, Inc., 726 F.2d 93, 96 (3d Cir.

8

1984). However, although the Bankruptcy Code does not specifically provide for recoupment, "[t]he common law doctrine of recoupment provides an exception to setoff in bankruptcy cases." In re University Medical Ctr., 973 F.2d 1065, 1079 (3d Cir. 1992).

31.     "Recoupment 'is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.'" Id. at 1079 (quoting 4 Collier on Bankruptcy, §553.03 at 553-15 to 553-17); see also Reiter v. Cooper, 507 U.S. 258, 264 (1993) (defining recoupment as "the setting off against asserted liability of a counterclaim arising out of the same transaction"); In re Jones,122 B.R. 246, 249 (W.D. Pa. 1990). "[S]o long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code § 553." In re University Medical Ctr., 973 F.2d 1065, 1080 (3d Cir. 1992); In re Flagstaff Realty Assocs., 1995 WL 447934, at *4 (3d Cir. 1994) (requiring "single integrated transaction"). Therefore, a creditor may assert "recoupment claims 'against pre-petition debts to the debtor, post-petition debts, or some combination of these.'" Reading Co. v. City of Philadelphia, 155 B.R. 890, 910 (E.D. Pa. 1993).

32.     In contrast to the right of setoff, the automatic stay does not apply to a creditors' exercise of the right of recoupment, which is "a non-statutory, equitable exception to the automatic stay." In re University Medical Ctr., 973 F.2d at 1080; accord Rooster, Inc. v. Raphael Roy, S.R.L., 127 B.R. 560, 570 (Bankr. E.D. Pa. 1991). Notwithstanding this, creditors often seek, and courts routinely grant, orders lifting the automatic stay to permit recoupment. The need for such an order is heightened in this case by the Court's entry of the Final DIP

9

Financing Order, which requires holders of recoupment rights to seek relief from the automatic stay, along with holders of setoff rights, prior to exercising such rights.

33. As for "cause," the same facts justifying relief from the automatic stay to permit setoff apply here.

## WAIVER OF MEMORANDUM OF LAW

34. This Motion does not raise any novel issues of law and, accordingly, KICC respectfully requests that this Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of this Motion.

## NOTICE

35. Notice of this Motion will be provided in accordance with the Court's order dated March 17, 2006 establishing case management and notice procedures in these cases. Accordingly, KICC respectfully submits that no further or other notice need be provided. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, KICC respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit B: (i) granting the Motion; (ii) authorizing KICC's immediate exercise of setoff and/or recoupment rights with respect to the Pre-Petition Overpayment; and (iii) granting such further relief as is appropriate.

Dated: New York, New York
       December 22, 2006

                                  LOEB & LOEB LLP

                          By:   /s/ William Hawkins
                                William M. Hawkins (WH-1865)
                                Jason Blumberg (JB-1033)
                                345 Park Avenue
                                New York, NY 10154
                                (212) 407-4000
                                Attorneys for Kyocera Industrial
                                Ceramics Corporation