**Exhibit A**

X FDP9006-0400
VALL91

PURCHASE ORDER CHANGE - EFFECTIVE 11-19-03
THIS NUMBER MUST APPEAR ON ALL INVOICES

PEDP2910056 003

PURCHASE ORDER NUMBER OR RELEASE NUMBER IF ISSUED TOGETHER WITH PART NUMBER OR ITEM NUMBER, PACKING SLIP NUMBER, AND PLANT NUMBER, MUST APPEAR ON ALL INVOICES, PACKAGES, PACKING SLIPS AND BILLS OF LADING.

# DELPHI

DELIVER TO: ( AS RELEASED )
EL PASO TX

VENDOR CODE

DUNS: 695283358-P01 / 800432635-C01

TO:
KYOCERA INDUSTRIAL CERAMICS CORP
25 NW POINT BLVD STE 450
ELK GROVE VILLAGE IL 60007 US

PLEASE ENTER OUR ORDER/REVISION AS LISTED HEREON, SUBJECT TO TERMS AND CONDITIONS CONTAINED WITHIN.

PURCHASE ORDER PEDP2910056 003
ORDER DATE 11-06-02
REF. INQ. NO.

PRICES IN USD EXPIRATION 12-31-04 REVISION DATE 11-19-03

| FREIGHT TERM | SHIPPING POINT | PAYMENT TERM |
|---|---|---|
| FOB-OUR PLANT FREIGHT COLLECT | FREIGHT COLLECT | 2ND DAY OF 2ND MONTH |

| TITLE TRANSFER | SHIPPING INSTRUCTION | BUYER |
|---|---|---|
| TITLE TRANSFER OUR PLANT | BEST WAY | 91 |

REVISION TO CHANGE STD. PACK FROM
5000 TO 4000.
OR/MC.

REVISIONS TO PART
25108420 CHARGE % A 100 PRICE/UOM 1.9500/PCS

| LEAD-DAYS | STD-PACK | CONTR | ALT-UOM | CONV-FACTOR | COO |
|---|---|---|---|---|---|
| 20 | 4000 | CTN | | | JP |

REVISIONS TO PART
25165124 CHARGE % A 100 PRICE/UOM 2.3300/PCS

| LEAD-DAYS | STD-PACK | CONTR | ALT-UOM | CONV-FACTOR | COO |
|---|---|---|---|---|---|
| 20 | 4000 | PCS | | | JP |

| DELIVER-TO | STA | DEPT | GEN-LED | ACCT | DEPT/POM | W.O. | PROJ | DEBIT | JOB-NUMBER | CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| EL PASO | | | 80180 | 80180 | | | | | | A |

3-00001-8279-7

NO SALES OR USE TAX. EXEMPT PER PERMITS: AZ 07-379796-T, MS 902, OH T-98000623, TX 3-0001-8279-7
NO CHANGE OR DEVIATION FROM PRINTS, SPECIFICATIONS, OR MATERIALS PERMITTED WITHOUT BUYER APPROVAL.

IMPORTANT NOTICE: UNLESS YOU NOTIFY THE BUYER AND OBTAIN A FORMAL REVISION FROM HIM PRIOR TO SHIPMENT, THE PRICES ON THIS ORDER ARE THE MAXIMUMS THAT WILL BE PAID AGAINST INVOICES FOR MATERIAL OR SERVICES SUPPLIED.

IMPORTANT: This order is not binding until accepted. When requested - acceptance must be executed on acknowledgement copy which must be returned to Buyer. This order, including the terms and conditions contained within, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon Buyer unless made in writing and signed by Buyers authorized representative.

MC 11/24/03

DELPHI PACKARD ELECTRIC SYSTEMS
Delphi Packard Electric
P.O. BOX 431 WARREN, OHIO 44486

KEVIN J VELASQUEZ
PHONE 330 505-3042
BUYER

SIDNEY JOHNSON

PAGE 1 OF 2

# PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this Contract). [illegible]

2. SHIPPING AND BILLING

2.1 Shipping. [illegible]

2.2 Billing. [illegible]

2.3 Delivery Schedules. [illegible]

2.4 Premium Shipments. [illegible]

3. SPECIFICATION, DESIGN AND SCOPE CHANGES

[illegible]

4. QUALITY AND INSPECTION

[illegible]

5. NON-CONFORMING GOODS

[illegible]

6. FORCE MAJEURE

[illegible]

7. WARRANTY

7.1 General. [illegible] to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for non-conforming goods.

7.2 Date and Time Processing. Seller warrants and guarantees to Buyer and its customers that any products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.

7.3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

10. TERMINATION FOR BREACH

Buyer my terminate all or any part of this contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Sellers warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract; or (c) fails to assure timely and proper completion of services or delivery of goods.

11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Sellers sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyers written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Sellers standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

12. TECHNICAL INFORMATION

12.1 Exchange of information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyers drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyers customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may hereafter disclose in connection with the goods or services covered by this Contract.

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyers customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under the Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, microcode, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing the Contract (separately or as a part of any goods and components) are works made for hire and the sole property of Buyer. To the extent that all right, title and interest in any intellectual property rights in such works authorship.

13. INDEMNIFICATION

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that such infringement arose out of compliance with Buyers specifications.

13.2 Activities on Buyers Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyers or Buyers customers premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyers customer.

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyers specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than seller.

14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyers request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from the Sellers noncompliance with this Article.

15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Sellers obligations or liabilities under this Contract.

16. SELLERS EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract (Sellers Equipment). Seller will insure Sellers Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Sellers Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Sellers Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Sellers Equipment. The option will not apply to the extent that Sellers Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Sellers right to exercise this option is not conditioned on Sellers breach or Buyers termination of this Contract or upon payment of any other amounts due under this Contract.

17. BUYERS PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part (Buyers Property), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyers property (such as tooling), Seller will purchase and pay for such Buyers Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyers Property (such as tooling) without separate or additional payment or reimbursement by Seller. Seller acknowledges and agrees that Buyers issuance of this Contract is good and sufficient consideration for such Buyers Property and that title to such Buyers property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyers property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyers property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyers ownership of Buyers property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment or incorporation into Buyers property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyers property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyers Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyers property for work performed on such property or otherwise. Goods manufactured based on Buyers drawings and/or specifications may not be used for Sellers own use or sold to third parties without Buyers express written authorization.

17.2 Sellers Duties with Respect to Buyers Property. While Buyers property is in Sellers possession and until Seller delivers Buyers property back to Buyer, Seller bears the risk of loss and damage to Buyers property. Seller will be responsible for the cost of repairing or replacing Buyers property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyers Property at Sellers own expense, (b) use Buyers Property only for the performance of this Contract, (c) deem Buyers property to be personal property, (d) conspicuously mark Buyers property as the property of Buyer and maintain such markings, (e) not commingle Buyers property with the property of Seller or with that of a third person, (f) not move Buyers Property from Sellers premises without Buyers written approval, and (g) use Buyers Property in compliance with Buyers or the manufacturers instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Sellers premises at all reasonable times to inspect Buyers Property and Sellers records with respect thereto.

17.3 Return of Buyers property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyers property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Sellers premises and take possession of any and all of Buyers Property. Upon Buyers request and in accordance with Buyers instructions, Buyers Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Sellers plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyers Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyers Property to the location Buyer designates. If Seller does not release and deliver any Buyers Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Sellers premises, with or without legal process, and take immediate possession of Buyers Property.

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyers Property nor the manufacturers agent nor a dealer therein, (ii) Buyer is bailing Buyers property to Seller for Sellers benefit, (iii) Seller is satisfied that Buyers Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYERS PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyers Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits, or any other indirect, special or consequential damages.

17.5 Development, Engineering and Consulting Services. Engineering, consulting or development services (Development Services) funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property (IP) shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services (Developed IP) to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyers service and replacement parts requirements to Buyers customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyers and its customers service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the Post-Production Period), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyers service activities.

19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to the Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Sellers affiliates to Buyer or Buyers affiliates, Buyer may (i) setoff such obligations against and sums owing to Seller or Sellers affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Sellers affiliates by Buyer or Buyers affiliates.

22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Sellers advertising or promotional materials unless Buyer consents in writing.

23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Sellers obligations under this Contract.

24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Sellers prior written consent. Seller may not assign or delegate its rights or obligations under this contract without Buyers prior written consent.

25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyers option, in the court(s) having jurisdiction over Buyers location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order of rule, and the remaining provisions of this Contract will remain in full force and effect.

28. RIGHT TO AUDIT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Sellers administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Seller has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Sellers performance of the Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by the Buyer. Notwithstanding anything to the contrary contained herein, Buyer expressly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyers claims, rights, or remedies.

JUNE 1999

FDP9006-0400

PURCHASE ORDER

PEDP4420062

PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS, BILLS OF LADING, AND RELATED DOCUMENTS.

DELPHI

DELIVER TO: ( AS RELEASED )
EL PASO TX

VENDOR CODE

DUNS: 695283358-P01 / 800432635-C01 PHONE 000-000-0000

PLEASE ENTER OUR ORDER/REVISION AS LISTED HEREON, SUBJECT TO TERMS AND CONDITIONS CONTAINED WITHIN.

TO:
KYOCERA INDUSTRIAL CERAMICS CORP
25 NW POINT BLVD STE 450
ELK GROVE VILLAGE IL 60007 US

PURCHASE ORDER PEDP4420062
ORDER DATE 08-19-04
REF. INQ. NO. 000

| FREIGHT TERM | SHIPPING POINT | PAYMENT TERM |
|---|---|---|
| FOB-OUR PLANT FREIGHT COLLECT | KOKUBU | 2ND DAY OF 2ND MONTH |

| TITLE TRANSFER | SHIPPING INSTRUCTION | BUYER |
|---|---|---|
| TITLE TRANSFER OUR PLANT | BEST WAY | 42 |

PART NO. DESCRIPTION / PERCENT PRICE QUANTITY UOM SHIP
PRICES IN USD

REQUIREMENTS CONTRACT STATEMENT:
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
SELLER AGREES TO SELL AND BUYER AGREES TO PURCHASE AT THE PRICE AND SUBJECT TO THE TERMS AND CONDITIONS HEREOF, THE PART NUMBERS INDICATED HEREIN. SHIPMENTS ARE AUTHORIZED ONLY WHEN RELEASED BY OUR SHIPPING SCHEDULE OR SPOT BUY PURCHASE ORDER. ALL MATERIAL SHALL BE SUPPLIED IN CONFORMANCE WITH SPECIFICATIONS, DRAWINGS, SAMPLES, OR OTHER DESCRIPTIONS PROVIDED. PACKAGING SHALL BE IN COMPLIANCE WITH DELPHI AUTOMOTIVE GLOBAL SUPPLIER PACKAGING MANUAL (AVAILABLE AT WWW.DELPHI.COM). ALL REQUIREMENTS LISTED IN DELPHI AUTOMOTIVE SUPPLIER GUIDELINES APPLY. A COPY OF THESE GUIDELINES ARE AVAILABLE AT WEBSITE WWW.DELPHI.COM
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
ALL NAFTA RELATED DOCUMENT AS WELL AS MANUFACTURER'S AFFIDAVITS SHOULD BE SENT TO:
DELPHI CORPORATION
M/C 480-410-228
5825 DELPHI DRIVE
TROY, MI 48098
ATTN: JEROME KLOTZ

25108420 REV 39
CRG: A 100
HEATER 1.9500 AS RELEASED PCS
++++++++++++++++++++++++++++++++++++++++
PER GPS 2500177526
7/1/01 = 1.95
7/1/02 = 1.95
7/1/03 = 1.95

| LEAD-DAYS | STD-PACK | CONTR | COO |
|---|---|---|---|
| 20 | 4000 | CTN | JP |

EFFECTIVE 09-01-04 EXPIRATION 12-31-05 TAX CODE: 00

| DELIVER-TO | STA | DEPT | GEN-LED | ACCT | DEPT/POM | W.O. | PROJ | DEBIT | JOB-NUMBER | CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| EL PASO | | | 80180 | 80180 | | | | | | A |

3-00001-8279-7

NO SALES OR USE TAX. EXEMPT PER PERMITS: AZ 07-379796-T, MS 902, OH T-98000623, TX 3-0001-8279-7
NO CHANGE OR DEVIATION FROM PRINTS, SPECIFICATIONS, OR MATERIALS PERMITTED WITHOUT BUYER APPROVAL.

IMPORTANT NOTICE: UNLESS YOU NOTIFY THE BUYER AND OBTAIN A FORMAL REVISION FROM HIM PRIOR TO SHIPMENT, THE PRICES ON THIS ORDER ARE THE MAXIMUMS THAT WILL BE PAID AGAINST INVOICES FOR MATERIAL OR SERVICES SUPPLIED.

Delphi Automotive Systems LLC
c/o Delphi Packard
P.O. Box 431 Warren, Ohio 44486

FERNANDO DE LEON
PHONE: 915 612-8543 BUYER

SIDNEY JOHNSON

[x] FDP8006-0400

PURCHASE ORDER

PEDP4420062

PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS, BILLS OF LADING, AND RELATED DOCUMENTS.

DELPHI

DELIVER TO: ( AS RELEASED )
EL PASO TX

VENDOR CODE

DUNS: 695283358-P01 / 800432635-C01 PHONE 000-000-0000

PLEASE ENTER OUR ORDER/REVISION AS LISTED HEREON, SUBJECT TO TERMS AND CONDITIONS CONTAINED WITHIN.

TO: KYOCERA INDUSTRIAL CERAMICS CORP
25 NW POINT BLVD STE 450
ELK GROVE VILLAGE IL 60007 US

PURCHASE ORDER PEDP4420062
ORDER DATE 08-19-04
REF. INQ. NO. 000

| FREIGHT TERM | SHIPPING POINT | PAYMENT TERM |
|---|---|---|
| FOB-OUR PLANT FREIGHT COLLECT | KOKUBU | 2ND DAY OF 2ND MONTH |

| TITLE TRANSFER | SHIPPING INSTRUCTION | BUYER |
|---|---|---|
| TITLE TRANSFER OUR PLANT | BEST WAY | 42 |

PART NO. DESCRIPTION / PERCENT PRICE QUANTITY UOM SHIP
CARRY OVER: A

25165124 REV A
CRG: A 100
18 WATT HEATER ROD 2.3300 AS RELEASED PCS
++++++++++++++++++++++++++++++++++++++++++
PER GPS 2500177526
7/1/01 = 2.33
7/1/02 = 2.33
7/1/03 = 2.33

| LEAD-DAYS | STD-PACK | CONTR | INNER-PACK | COO |
|---|---|---|---|---|
| 20 | 4000 | PCS | 1000 | JP |

CARRY OVER: A

TOTAL IN USD

EFFECTIVE 09-01-04 EXPIRATION 12-31-05 TAX CODE: 00

| DELIVER-TO | STA | DEPT | GEN-LED | ACCT | DEPT/POM | W.O. | PROJ | DEBIT | JOB-NUMBER | CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| EL PASO | | | 80180 | 80180 | | | | | | A |

3-00001-8279-7

NO SALES OR USE TAX. EXEMPT PER PERMITS: AZ 07-379796-T, MS 902, OH T-98000623, TX 3-0001-8279-7
NO CHANGE OR DEVIATION FROM PRINTS, SPECIFICATIONS, OR MATERIALS PERMITTED WITHOUT BUYER APPROVAL.

IMPORTANT NOTICE: UNLESS YOU NOTIFY THE BUYER AND OBTAIN A FORMAL REVISION FROM HIM PRIOR TO SHIPMENT, THE PRICES ON THIS ORDER ARE THE MAXIMUMS THAT WILL BE PAID AGAINST INVOICES FOR MATERIAL OR SERVICES SUPPLIED.

Delphi Automotive Systems LLC
c/o Delphi Packard
P.O. Box 431 Warren, Ohio 44486

FERNANDO DE LEON
PHONE: 915 612-8543 BUYER

SIDNEY JOHNSON

Effective March 2004

# DELPHI CORPORATION

## GENERAL TERMS AND CONDITIONS

[illegible]

[illegible]