Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

SUPPLEMENTAL APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF WILMER CUTLER PICKERING HALE AND DORR LLP AS SPECIAL COUNSEL TO DELPHI NUNC PRO TUNC TO NOVEMBER 1, 2006

("WCPHD SUPPLEMENTAL RETENTION APPLICATION")

Delphi Corporation ("Delphi") hereby submits this supplemental retention application (the "Supplemental Retention Application") for an order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of Wilmer Cutler Pickering Hale and Dorr LLP ("WCPHD") as special counsel to Delphi in connection with the preparation and filing of Delphi's annual report, executive compensation, and related disclosure matters, nunc pro tunc to November 1, 2006. In support of this Application, Delphi submits the Declaration of Knute J. Salhus, sworn to December 22, 2006 (the "Salhus Declaration"). In further support of this Supplemental Retention Application, Delphi respectfully represents as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates (the "Affiliate Debtors" and together with Delphi, the "Debtors")[1], filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.      No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1]     In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

4.      The statutory predicates for the relief requested herein are sections 327(e) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive

---

[2]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.     The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors reached another milestone in their chapter 11 cases when they announced their acceptance of a proposal for an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the Plan Investors agreed to invest up to $3.4 billion in preferred and common equity in the

5

reorganized Delphi to support the Debtors' transformation plan and its Plan Framework Support Agreement (as defined below).  The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.

13.    Also, on December 18, 2006, in further support of its transformation plan, the Company announced that it had entered into a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors.  The Plan Framework Support Agreement as well as the economics and structure of the plan framework itself are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.  Contemporaneously with the issuance of these announcements on December 18, 2006, the Debtors sought authorization and approval of the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement, which is scheduled to be heard by the Court on January 11, 2007 (Docket No. 6179). Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.    By this Supplemental Retention Application, Delphi seeks to employ and retain WCPHD, as special counsel in connection with the preparation and filing of Delphi's annual report, executive compensation, and related disclosure matters, effective as of November 1, 2006.  Accordingly, Delphi respectfully requests entry of an order under sections 327(e) of the Bankruptcy Code authorizing the employment and retention of WCPHD as special counsel in accordance with the terms set forth in this Supplemental Retention Application, the Salhus Declaration, the engagement letter dated November 1, 2006 (the "Supplemental Engagement Letter")[4], and any applicable order of this Court.

Overview

16.    As previously disclosed by the Company, since 2004 the Securities and Exchange Commission (the "SEC") and other authorities have been investigating Delphi's accounting and adequacy of disclosures for a number of transactions (the "SEC Investigation"). The Audit Committee of the Company's Board of Directors (the "Audit Committee") undertook the task of examining the circumstances giving rise to the SEC Investigation and ensuring that appropriate actions were taken with respect thereto, including disciplinary actions against certain employees and communicating and cooperating fully with the SEC and other government authorities.  In connection with this matter, Delphi retained WCPHD to represent the Audit

---

[4]    Both the original engagement letter and the Supplemental Engagement Letter are annexed, respectively, to the Salhus Declaration as Exhibits 1 and 2 thereto.

Committee for these purposes under the terms of that certain engagement letter dated August 24, 2004 (the "Original Engagement Letter").  The Audit Committee selected WCPHD as its special regulatory counsel because of the firm's reputation and extensive experience and knowledge, and in particular, its national reputation and recognized expertise in the field of securities law.

17. As a result of the filing of these chapter 11 cases, on November 9, 2005, the Debtors applied to this Court for authority to continue the retention of WCPHD.  See Debtors' Application For Entry Of Order Under 11 U.S.C. §§ 327(e) And 1107(b) Authorizing Employment And Retention Of Wilmer Cutler Pickering Hale And Dorr LLP As Special Regulatory Counsel (Docket No. 999) (the "Retention Application").  On December 2, 2005, the Court authorized this retention and entered the Order Under 11 U.S.C. §§ 327(e) And 1107(b) Authorizing Employment And Retention Of Wilmer Cutler Pickering Hale And Dorr LLP As Special Regulatory Counsel (Docket No. 1430).

18. In connection with the SEC Investigation, on October 30, 2006, the SEC commenced and simultaneously settled with Delphi a lawsuit alleging violations of federal securities laws.  As set forth in further detail in the Debtors' Motion For Order Authorizing Entry Into Settlement With The Securities And Exchange Commission Delphi filed with this Court on November 10, 2006 (Docket No. 5520), Delphi, with WCPHD's assistance, negotiated that settlement with the SEC.  WCPHD continues to serve as special regulatory counsel for the Audit Committee.

19. Subsequently, Delphi elected to expand WCPHD's retention to include the provision of legal advice in connection with Delphi's annual report, executive compensation, and related disclosure matters, as described in the Supplemental Engagement Letter.  Delphi believes that WCPHD is both well-qualified and uniquely able to provide legal services in

8

connection with the matters described in the Supplemental Engagement Letter and Delphi further believes that WCPHD will provide the most effective and efficient representation available to it.

20.     Delphi submits that WCPHD's proposed retention meets all the prerequisites for retention as special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented such debtor prior to the commencement of its chapter 11 case, for a "specified special purpose" if such employment is in the best interest of that entity.  Pursuant to the Retention Application, WCPHD is presently employed as special regulatory counsel to the Audit Committee.  WCPHD is not the proposed bankruptcy counsel in these chapter 11 cases.  Accordingly, for purposes of obtaining the Court's approval of the present Supplemental Retention Application, section 327(e) does not require that WCPHD and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) instead requires that WCPHD not represent or hold any interest adverse to Delphi or its estates with respect to the matters on which WCPHD is to be employed herein.  As discussed below, the employment of WCPHD to provide the aforementioned legal advice to Delphi is in Delphi's and its estates' best interests and WCPHD does not represent or hold any interest adverse to Delphi or its estates with respect to the matters on which WCPHD is to be employed herein.

The Employment Of WCPHD
Is In The Best Interests Of The Estates

21.     WCPHD will serve as special counsel to Delphi in connection with the preparation and filing of Delphi's annual report, executive compensation, and related disclosure matters.  WCPHD has performed regulatory work prior to, and since, the petition date and is therefore familiar with Delphi's businesses and operations and certain regulatory issues affecting the Company.

9

22. WCPHD is a full-service, international law firm of more than 1,100 attorneys with offices in Washington, D.C., New York, New York, and 11 other locations worldwide. WCPHD provides legal services in many practice areas, including corporate, securities, trial and appellate litigation, regulatory, intellectual property, banking, tax, employee benefits, and international trade. Most importantly for present purposes, WCPHD has extensive experience in securities law and regulatory matters. Accordingly, Delphi believes that WCPHD is well-qualified to serve as special counsel in these chapter 11 cases in an efficient and effective manner.

23. Furthermore, Delphi believes that the employment of WCPHD will enhance and will not duplicate the efforts of the other retained professionals in these chapter 11 cases. Delphi understands that WCPHD will work with the other professionals retained by the Debtors to avoid any such duplication.

### Services To Be Rendered By WCPHD

24. As set forth in the Salhus Declaration and the Supplemental Engagement Letter annexed thereto, Delphi wishes to engage WCPHD to provide legal services in connection with the preparation and filing of Delphi's annual report, executive compensation, and related disclosure matters. Delphi anticipates that such services will include the following:

    (a)    reviewing documents and preparing materials for Delphi's annual report;

    (b)    advising Delphi on matters related to executive compensation and related disclosure matters; and

    (c)    performing the full range of services normally associated with matters such as those identified above, as special counsel, which WCPHD is in a position to provide.

25. WCPHD has indicated its desire and willingness to represent Delphi as set forth herein and to render the necessary professional services as special counsel.

10

26. Delphi or any of its Affiliated Debtors may request that WCPHD undertake specific matters beyond the scope of the responsibilities set forth above. Should WCPHD agree in its discretion to undertake any such matter, Delphi, or its Affiliated Debtors, as applicable, shall seek further order of this Court.

WCPHD's Connections To Parties-In-Interest

27. As required by Bankruptcy Rule 2014(a), the Salhus Declaration filed in support of this Supplemental Retention Application sets forth information concerning WCPHD's connections with Delphi, its Affiliated Debtors, and certain other parties-in-interest in these chapter 11 cases. To the best of Delphi's knowledge, and based on the information in the attached Salhus Declaration, neither WCPHD nor any of its partners, junior partners, counsel, or associates holds or represents any interest adverse to Delphi or its estates with respect to the matters on which WCPHD is to be employed.

28. As set forth in the Salhus Declaration, WCPHD has in the past represented, currently represents, and likely in the future will represent certain creditors and other parties-in-interest herein in matters unrelated to Delphi, its Affiliated Debtors, or their chapter 11 cases. WCPHD does not believe that the foregoing raises any actual or potential conflict of interest of WCPHD relating to its engagement as special counsel in these chapter 11 cases, but such connections are disclosed out of an abundance of caution. The Debtors understand that, to vitiate any actual or potential conflicts of interest, WCPHD will not assist the Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with whom WCPHD has existing client relationships, and that Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") (or other counsel if Skadden has a conflict), instead, will handle these tasks.

11

Professional Compensation

29.  WCPHD intends to apply to this Court for compensation and reimbursement of expenses in accordance with sections 330(a) and 331 of the Bankruptcy Code, the Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District Of New York (the "Local Rules"), and orders of this Court.  WCPHD acknowledges that all compensation will be subject to this Court's final review and approval, following notice and opportunity for a hearing.

30.  Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines established by the U.S. Trustee, the Local Rules, and orders of this Court, Delphi and WCPHD have agreed to the following compensation arrangement.  Two WCPHD attorneys will be responsible for the services described in the Supplemental Engagement Letter and their respective hourly rates are as follows[5]:

| | |
|---|---|
| Knute Salhus – Partner | $625 |
| Jennifer Zepralka - Associate | $390 |

These hourly rates will remain in effect through March 31, 2007.  After such date if the project is still ongoing, WCPHD may request an adjustment in professional rates billed for these matters to reflect the regular hourly rates charged to its other clients at that time.  Prior to any adjustment, WCPHD will contact Delphi to discuss any requested rate adjustment and obtain written approval from Delphi of any proposed adjustment.  WPCHD and Delphi agree that WCPHD's hourly billing rates include all overhead and internal charges associated with WCPHD's practice

---

[5]  In the event others from WCPHD become necessary to assist Delphi on this matter, WCPHD will obtain written permission from Delphi before engaging those individuals.  WCPHD understands that no fees will be paid for work performed by other individuals prior to obtaining Delphi's written permission.

and Delphi's billing instructions and limitations are incorporated by reference into the Supplemental Engagement Letter and are attached thereto.

31. Furthermore, Delphi's in-house counsel will be fully engaged on the matters for which WCPHD is being retained pursuant to this Supplemental Retention Application. Accordingly, WCPHD and Delphi agree that before WCPHD's team undertakes an in-depth research project, or any other significant project, WCPHD will first obtain Delphi's consent as Delphi may choose to handle such project internally using its own resources.

32. No arrangement is proposed between WCPHD and Delphi for compensation to be paid in these chapter 11 cases other than as set forth above and in the Salhus Declaration.

## Conclusion

33. For the foregoing reasons, Delphi submits that the employment of WCPHD as special counsel on the terms set forth herein is in its and its estates' best interest.

## Notice

34. Notice of this Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, Delphi submits that no other or further notice is necessary.

## Memorandum Of Law

35. Because the legal points and authorities upon which this Supplemental Retention Application relies are incorporated herein, Delphi respectfully requests that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Rules be deemed satisfied.

13

WHEREFORE, Delphi respectfully requests that this Court enter an order (a) authorizing Delphi to employ and retain WCPHD as its special counsel to perform the services set forth herein, and (b) granting Delphi such other and further relief as is just.

Dated:   New York, New York
         December 26, 2006

                                          DELPHI CORPORATION, as Debtor and Debtor-in-possession

                                          By:   /s/ Marjorie Harris Loeb_____
                                                Name: Marjorie Harris Loeb
                                                Title:   Assistant General Counsel and Corporate Secretary