| | |
|---|---|
| Judith Elkin (JE-4112)<br>HAYNES AND BOONE, LLP<br>153 East 53rd Street<br>Suite 4900<br>New York, NY 10022<br>Telephone: (212) 659-7300<br>Facsimile: (212) 918-8989 | Hearing Date and Time: January 11, 2007 at 10:00 a.m.<br>Objection Deadline: January 2, 2007 at 4:00 p.m. |

Lenard M. Parkins (TX-15518200)
*(pro hac vice motion pending)*
Kenric D. Kattner (TX-11108400)
*(pro hac vice motion pending)*
HAYNES AND BOONE, LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone:  (713) 547-2000
Facsimile:  (713) 547-2600

Attorneys for Highland Capital Management, LP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
                                                                        :
In re:                                                                  :    Chapter 11
                                                                        :
DELPHI CORPORATION, *et al.*,                                           :    Case No.  05-44481 (RDD)
                                                                        :
            Debtors.                                                    :    (Jointly Administered)
------------------------------------------------------------------------X

**HIGHLAND CAPITAL MANAGEMENT, LP'S OBJECTION AND RESPONSE TO EXPEDITED MOTION FOR ORDER AUTHORIZING AND APPROVING THE EQUITY PURCHASE AND COMMITMENT AGREEMENT PURSUANT TO SECTIONS 105(a), 363(b), 503(b) AND 507(a) OF THE BANKRUPTCY CODE AND THE PLAN FRAMEWORK SUPPORT AGREEMENT PURSUANT TO SECTIONS 105(a), 363(b) AND 1125(e) OF THE BANKRUPTCY CODE**

Highland Capital Management, LP ("Highland Capital"), on behalf of itself, certain of its affiliates and related entities (collectively, "Highland" or the "Plan Investor") files this Objection and Response (the "Objection") to the Expedited Motion for Order Authorizing and Approving the Equity Purchase and Commitment Agreement Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code and the Plan Framework Support Agreement Pursuant to

Sections 105(a), 363(b), and 1125(e) of the Bankruptcy Code (the "Motion"), and respectfully represents as follows:

### SUMMARY OF RELIEF REQUESTED

1. Delphi and certain of its subsidiaries and affiliates are debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, "Delphi," the "Debtors," or the "Company"). On December 18, 2006, the Debtors filed the Motion seeking an order authorizing and approving the Debtors' entry into an equity investment and plan framework (the "Appaloosa/Cerberus Proposal") proposed by Appaloosa Management, L.P. ("Appaloosa"), Cerberus Capital Management, L.P. ("Cerberus"), Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), Merrill Lynch & Co. and UBS Securities, LLC. (collectively, the "Appaloosa/Cerberus Group"). The Appaloosa/Cerberus Proposal is set out in the Equity Purchase and Commitment Agreement (defined in the Motion as the "EPCA")[1] and certain related agreements pursuant to sections 105(a), 363(b), 503(b), and 507(a) of the Bankruptcy Code and the Plan Framework Support Agreement (defined in the Motion as the "PSA") pursuant to sections 105(a), 363(b), and 1125(e) of the Bankruptcy Code. Both the EPCA and PSA are attached to the Motion. The hearing on the Motion was scheduled for January 5, 2007, and the objection deadline is January 2, 2007.[2] The hearing has been continued until January 11, 2007. On December 22, 2006, the Court issued its Pretrial and Scheduling Order Relating to the Motion (the "Scheduling Order").

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] Numerous objections have been filed to the Motion, including the preliminary and first supplemental objections to the Motion filed by the Official Committee of Unsecured Creditors (Docket No. 6209), the Official Committee of Equity Security Holders (Docket Nos. 6211 and 6247), the IUE-CWA (Docket No. 6242), and the Delphi Trade Committee (the "Trade Committee") (Docket No. 6254) (together, the "Objecting Parties").

2. Highland vigorously opposes the Motion and the Appaloosa/Cerberus Proposal. Highland believes that the Appaloosa/Cerberus Proposal embodied in the Motion is fundamentally unfair to the common stockholders of Delphi and not in the best interests of the Delphi estate. Rather than keeping the value of the Company and its post-confirmation corporate governance with the common stockholders, the Appaloosa/Cerberus Proposal unnecessarily diverts both value and control to a small select group of investors at a price that is not reflective of the current value of the Company and in a manner that dilutes the rights of common stockholders and violates the Bankruptcy Code. Highland's opposition to the Motion and the Appaloosa/Cerberus Proposal runs deep - - so deep, that Highland has stepped up to the plate by delivering a commitment letter to Delphi's board of directors on December 21, 2006 outlining Highland's proposal and commitment (the "Highland Commitment") to invest up to $4.7 billion in new Common Stock of reorganized Delphi (as defined below), in a transaction similar to that being proposed by the Appaloosa/Cerberus Group, but consistent with the principles of fairness embodied in the Bankruptcy Code. The Highland Commitment also specifies the terms of and support for a plan of reorganization (the "Plan") that is based on this new investment in Common Stock. A copy of the Highland Commitment is attached hereto as ***Exhibit A.***

3. The Highland Commitment is predicated on a fair distribution of Delphi's value to all creditors and stockholders. The Highland Commitment makes this value available to all current stockholders who elect to participate in a Rights Offering. Certain of these stockholders will also be granted the right to participate in Highland's proposed Backstop of the Rights Offering. The Highland Commitment makes no special allocations of Direct Subscription Shares or Preferred Shares to a small group of insiders. Moreover, under the Highland Commitment, the board of directors will not be controlled by a select few insiders; rather, a truly independent

board will govern the reorganized Delphi.  Additionally, under the Highland Commitment, all creditors will receive all the value they are entitled to receive under the Bankruptcy Code.  In sum, the Highland Commitment provides for participation in Delphi's future by all common stockholders through a Rights Offering, followed by the establishment of a independent board of directors to manage Delphi's future success.  Finally, the market recognizes the inherent fairness of the Highland Commitment because common shares are trading 30% higher after the Highland Commitment was announced.

4. The relief requested in the Motion and Appaloosa/Cerberus Proposal is fundamentally unfair because it diverts enormous value and significant corporate governance control rights to a select few investors in violation of the Bankruptcy Code's absolute priority rule.  The Appaloosa/Cerberus Proposal takes an estimated $1.29 billion of aggregate value from common stockholders and constitutes an inappropriate raid on the corporate treasury through a one day transfer of massive value from current stockholders to a small alliance of privileged investors and to creditors whose claims are paid in excess of 100%.[3]  In addition, to avoid even the most basic level of scrutiny, the Motion needlessly seeks emergency approval of the Appaloosa/Cerberus Proposal without ever addressing the grounds for emergency relief as required by this Court's Case Management Orders.[4]  For the reasons set forth in this Objection, the Appaloosa/Cerberus Proposal outlined in the Motion is not in the best interests of Delphi's

---

[3] The transfer of value is based on an implied value per share determined on a post-confirmation basis of $57.90 per share (calculated with respect to common share prices as of December 19, 2006).  The exclusive distribution of the excess implied value per share over the lower share issuance prices in the Appaloosa/Cerberus Proposal causes the inappropriate transfer of value away from existing shareholders.  The transfer of value is approximately $144.3 million concerning the Direct Subscription Shares, $785.1 million concerning the Preferred Shares, $232.2 million in overpayment to unsecured and bond creditors and $129 million in overpayment to junior creditors.

[4] See March 17, 2006 Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, ¶ 11.

entire estate and stakeholders, but rather is designed to benefit only a few inside investors at the expense of current stockholders.

5. Therefore, Highland requests: (i) that the Motion be denied in its entirety, or, alternatively, (ii) that the hearing on the Motion be rescheduled to occur shortly before January 22, 2006 to allow Delphi's board of directors adequate time, commensurate with its fiduciary duties, to review the Highland Commitment, and engage in dialogue and negotiate with Highland regarding the Highland Commitment as a better equity investment and plan framework for the Debtors' estate.

**BACKGROUND**

6. On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' Chapter 11 cases.

7. No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

8. This Court has jurisdiction over the Motion and any objections thereto pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**OBJECTIONS TO THE MOTION**

9.      The Appaloosa/Cerberus Proposal wrongfully and unnecessarily strips enormous value and corporate control from the common stockholders of Delphi and effectively gives that value and control to the Appaloosa/Cerberus Group. The Appaloosa/Cerberus Proposal is unfair and should not be approved.

**A.      Transfer of Value to the Appaloosa/Cerberus Group**

10.     The Appaloosa/Cerberus Proposal, if sanctioned by the Court, would give the Appaloosa/Cerberus Group the exclusive right to own a significant portion, and potentially the majority, of the reorganized Company. Pursuant to the Appaloosa/Cerberus Proposal, the Appaloosa/Cerberus Group is entitled to acquire 6.3 million shares of Common Stock called the Direct Subscription Shares (at $35 per share for an aggregate amount of $220,500,000) – which is significantly below the emergence price of $45 per share. No other common stockholder is given the right to acquire any Common Stock from this reserved block of 6.3 million shares. Further, the Appaloosa/Cerberus Group is also granted the exclusive right to acquire 17.143 million shares of Series A Convertible Preferred Stock and 17.143 million shares of Series B Convertible Preferred Stock (for an aggregate amount of $1.2 billion). Likewise, under the EPCA, no other common stockholder is given the right to acquire any Preferred Stock. The Preferred Stock is reserved for a select few investors to the exclusion of all others.

11.     The Appaloosa/Cerberus Proposal takes the value current stockholders are entitled to receive and gives it to a small group of investors who have the exclusive right to buy Common Stock at not only a discount to market price, but at a substantial discount to the emergence price. Specifically, approximately $785.1 million is taken from common stockholders as a result of the exclusive issuance of the Preferred Shares and approximately

$144.3 million is taken from common stockholders as a result of the exclusive issuance of the Direct Subscription Shares to the Appaloosa/Cerberus Group. The total value taken from stockholders aggregates $1.29 billion. This transfer of enormous value from current stockholders to a small alliance of investors limited to Cerberus, Appaloosa and Harbinger not only constitutes an inappropriate raid on the corporate treasury, but also violates the Bankruptcy Code's provisions on equal distribution of assets and equal treatment of similarly situated creditors and equity holders.

12.   The exclusive right of the Appaloosa/Cerberus Group to acquire the Preferred Shares and the Direct Subscription Shares also gives the Appaloosa/Cerberus Group almost 30% of the reorganized Company on the effective date of a plan, exclusive of the Rights Offering shares that the Appaloosa/Cerberus Group may also purchase. Because the Appaloosa/Cerberus Group has the exclusive right to purchase approximately 30% of the reorganized Company's capital structure at below market prices, this excess equity value is being taken from the existing common stockholders who are entitled to receive it under applicable law. In effect, the Appaloosa/Cerberus Group is given a 30% head start over all other common stockholders in the future capital structure of the reorganized Company. Even worse, the Company is paying the Appaloosa/Cerberus Group huge commitment fees to support its exclusive right to buy the shares. Specifically, the Appaloosa/Cerberus Group is receiving a 1.75% commitment fee worth $20 million to purchase Preferred Stock that they are only offering to themselves.

13.   This effective diversion of value and rights from common stockholders should not be condoned. Enterprise value and the corresponding equity value must be distributed as required by law, and should flow appropriately to *all* creditors and stockholders instead of being siphoned away from the bankruptcy priority waterfall and given to a select few. The

Appaloosa/Cerberus Proposal, as currently supported by Delphi, disenfranchises stockholders, freezes them out of an equal opportunity to purchase Common Stock and represents a failure of Delphi's board to uphold its fiduciary duties to current stockholders.

**B.      Stacked Board of Directors**

14.     As to corporate governance, the Appaloosa/Cerberus Group's exclusive right to acquire Preferred Stock also gives it disproportionate control of the board of directors and exclusive approval rights over future business decisions of the reorganized Company. Appaloosa and Cerberus are granted "super powers" as the only holders of Series A Preferred Stock. Rank and file holders of Common Stock are subject to the management whim and control of Appaloosa and Cerberus after the Company successfully reorganizes. Specifically,

- Out of a twelve member board of directors, Appaloosa and Cerberus (as the only entities allowed to acquire Series A Preferred Shares) are entitled to **elect six** of the initial twelve directors.

- The initial Executive Chairman, who holds one of the twelve seats on the board, is selected by a super-majority vote of four of the five members of the Selection Committee. Appaloosa and Cerberus are two of the members of the Selection Committee, and as a result, they can block the selection of any Executive Chairman that they deem inappropriate. Accordingly, Appaloosa and Cerberus control the selection of seven of the twelve board members – a majority of the board.

- Moreover, Appaloosa and Cerberus, as the only holders of Series A Preferred Shares, have the exclusive right to remove the Executive Chairman at any time.

- Finally, Cerberus and Appaloosa have exclusive veto rights over various corporate actions. Instead of giving holders of Common Stock an equal voice in these corporate actions, Appaloosa and Cerberus can exercise their veto rights **even if** a majority of holders of Common Stock are in favor of the proposed action. Corporate actions subject to this veto right include: (i) new debt or lease financings in excess of $100 million within twelve months from the Issue Date; (ii) granting any liens or mortgages on assets having a value in excess of $100 million within twelve months from the Issue Date; (iii) a sale of substantially all of the assets of the Company; (iv) a merger or consolidation involving a change of control, as well as

>any acquisition or investment with a value in excess of $100 million from the Issue Date; (v) any issuance of equity securities at less than fair market value, (vi) payment of any cash dividends; and (vii) any amendment of the Company's articles or bylaws.

15. Although the rights offering makes 56.7 million shares of new Common Stock available to existing common shareholders, these shareholders are only entitled to select four of the twelve board seats. This meager representation on the board is further diluted by the "super powers" given to Appaloosa and Cerberus as the only holders of Series A Preferred Stock.

**C.    Overpayment of Creditor Claims**

16. In addition to the exclusive right to acquire the reorganized Company's capital structure and the management super powers granted to Appaloosa and Cerberus, the plan framework described in the Appaloosa/Cerberus Proposal significantly overpays creditor claims, diverting value that common stockholders are entitled to receive under the priority scheme mandated by the Bankruptcy Code. The Company's operations and outlook have improved during 2006 and they continue to improve. Earnings should increase dramatically in 2007 based on labor cost reductions and a number of operational improvements made in 2006. The Company's shares are more valuable in the market than the emergence price of $45 per share ascribed to them under the Appaloosa/Cerberus Proposal. Highland believes that the Company's value is substantially in excess of its debt obligations. Current stockholders are entitled to receive this excess value.

17. Specifically, because Common Stock is being used to partially pay creditor claims at lower than market values, creditor claims are being overpaid. Unsecured creditors are being overpaid by approximately $232.2 million and junior creditors are being overpaid by approximately $129 million.

**D.     Unnecessary and Inappropriate Break-Up Fees**

18.    If the Motion is granted, Delphi will put an additional $100 million breakup fee price tag on the better transaction from Highland which is ripe for consideration and can be effectuated now.  No good reason exists to grant the Motion before Delphi has engaged in discussions with Highland to try and implement the $4.7 billion Highland Commitment.  In contrast, Highland is willing to commit to a much lower breakup fee in the range of $20 million.

19.    Before Delphi locks up with anyone, including the Appaloosa/Cerberus Group, the Debtors should engage in negotiations with Highland to explore the $4.7 billion Highland Commitment.  This Court should deny the Motion or, in the alternative, continue the hearing thereon, so that the $4.7 billion Highland Commitment can be fully analyzed and considered by Delphi's board and its creditor and equity constituencies to insure that the interests of the common stockholders of Delphi are protected in the Plan process.

**E.     Expedited Consideration of the Motion is Unfair.**

20.    The Motion was filed on December 18, 2006.  The scope of the relief requested in the Motion is enormous and of dramatic consequence to all constituencies in these Chapter 11 cases. The Motion is intended to reshape the course of Delphi's reorganization and set in stone a course of action that is fundamentally unfair and in derogation of the rights of the common stockholders of Delphi.  Instead of being "frozen out," as contemplated by the Appaloosa/Cerberus Proposal, Highland believes that existing stockholders should be engaged in the reorganization process, be permitted to participate in an equity based funding and be given the opportunity to maintain control of the Company at the common stockholder level.  Under the Appaloosa/Cerberus Proposal, the existing stockholders will receive only 2.2% (compared to their 100% current ownership) of the equity of the reorganized Company, with the opportunity to

increase ownership up to 44.1% under the limited and narrow rights offering made available to existing stockholders under the Appaloosa/Cerberus Proposal.

21. The Motion should not be heard on an expedited basis -- especially when the review and consideration of the Motion is set to occur during and shortly after a holiday period when many financial and other necessary parties are unavailable or have limited availability. Delphi and Appaloosa and Cerberus have been negotiating for approximately six months over the subject matter of the Motion, but suddenly, are trying to force their desired result on all of the Company's constituencies with no showing of necessity (as none exists).

22. To add insult to injury, Delphi has agreed to barricade the accelerated process with an enormous breakup fee of $100 million without adequately testing the market. At the very least, the Court should continue the hearing on the Motion for at least two weeks to allow for due consideration of the Highland Commitment by interested parties without imposing a needless $100 million break up fee. The Debtors' fiduciary duties demand that the process accommodate consideration of better offers.

**F.     Lock-Up Agreement Makes Alternative Transaction a Sham**

23. The substance of the Motion indicates that Delphi never really shopped for alternative sources of funding from the common stockholders to permit a plan of reorganization to be funded and confirmed such that the common stockholders of Delphi could actively participate in the upside value of the reorganized Debtors and control the post-emergence direction of the Company. At the very least, this is required by applicable law. *See Bank of America Nat. Trust and Sav. Assn. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 456-458, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

24. To further compound the problem, the PSA negotiated among the Debtors, GM

and the Appaloosa/Cerberus Group contains a provision that prohibits GM from entering into any discussions or negotiations with third parties concerning any Alternative Transaction for an extended period of time until April 1, 2007.  *See PSA § 2.4.*  In addition, the PSA cannot be terminated by the Debtor or the other parties thereto, including GM, until April 1, 2007.  *See PSA § 3.1(b).*  No Alternative Transaction is possible because a critical element of any plan of reorganization is GM's consent – which cannot be obtained because GM is contractually prohibited from negotiating or discussing an Alternative Transaction.  Any effort toward an Alternative Transaction would be completely stymied by GM's absence from the negotiating table.  While GM may use a "fiduciary out" to commence discussions with other possible suitors, the existence of the lock-up provision in the PSA in and of itself chills the bidding and shows that the Appaloosa/Cerberus Group is not interested in a level playing field or maximizing value for all Delphi stakeholders.  The Motion should be denied and the Debtors should commence discussions with Highland under the framework of the Highland Commitment.

## THE HIGHLAND COMMITMENT OF DECEMBER 21, 2006

### A.    Background of Highland

25.    Highland Capital is an SEC-registered investment adviser specializing in credit and alternative investing and equity investments. Highland Capital currently manages approximately $35 billion in leveraged loans, high yield bonds, structured products, distressed assets, equity investments and other assets for banks, insurance companies, pension plans, foundations and endowments.  Highland Capital has wide ranging experience in Chapter 11 cases in this district and throughout the United States.  By delivering the Highland Commitment to Delphi, Highland Capital intends to facilitate a confirmation of a plan of reorganization with a fair and ecumenical allocation of value to all of the Debtors' creditors and stockholders.

26.     Currently, certain of Highland Capital's affiliates and related entities collectively are the second largest beneficial stockholder in Delphi with aggregate holdings of approximately 8.8% of the currently issued and outstanding common stock, par value $0.01 per share of Delphi. These investment funds also hold $30 million of junior debt, $211 million of bond debt and $84 million of pre-petition bank debt dating back to October 2005.

### B.     Terms of the Highland Commitment

27.     On December 21, 2006, Highland Capital, as Plan Investor, on behalf of itself, certain of its affiliates and related entities submitted the Highland Commitment to Delphi's board of directors that outlines the terms of a $4.7 billion equity investment in Delphi. The Highland Commitment is superior to the Appaloosa/Cerberus Proposal supported by the Company. The Highland Commitment provides a viable alternative to the Appaloosa/Cerberus Proposal that is in the best interests of the Debtors and their various creditors, stockholders and other parties in interest, including, most importantly, the common stockholders.

28.     Pursuant to the Highland Commitment, the Plan Investor will purchase up to $4.7 billion of new common stock, par value $0.01 per share (the "Common Stock"), of the reorganized Delphi to support the Company's transformation plan announced on March 31, 2006 and the Plan. Subject to the agreement of the Company to file and seek confirmation of the Plan, the Plan Investor commits to enter into agreements on the same terms and subject to the same conditions as those set forth in the ECPA and the PSA that were filed with the Bankruptcy Court on December 18, 2006, except as otherwise specified in the Highland Commitment. Subject to the Company's agreement to move forward with respect to the Highland Commitment, the Plan Investor will proceed along a similar path to confirmation as described in the Appaloosa/Cerberus Proposal pursuant to the filings made with the Bankruptcy Court on

December 18, 2006.

29. The following is a summary of the principal terms under which the Plan Investor will commit to the equity investment in the Company and to support the Plan:

- **Equity Purchase and Rights Offering.** The Company will conduct a Rights Offering (the "Rights Offering") by offering and selling shares of its Common Stock to its existing stockholders on the terms and subject to the conditions set forth in an Equity Purchase and Commitment Agreement (the "New Equity Agreement") to be entered into by the Company and the Plan Investor similar in form and substance to the one agreed to with the Appaloosa/Cerberus Group, except as otherwise provided in the Highland Commitment. The Plan Investor will purchase any shares of Common Stock that are unsubscribed in the Rights Offering up to $4.7 billion (the "Backstop") and receive a fee in the amount of 2.5% of the Rights Offering (the "Backstop Fee").

- **Participation in Rights Offering and Backstop.** Subject to compliance with all applicable laws, all existing holders of Common Stock (the "Stockholders") holding a minimum of 0.5% of the currently issued and outstanding shares of Common Stock of the Company will be given the option to participate in the Backstop and earn their pro-rata share of the Backstop Fee. As more particularly to be set forth in the New Equity Agreement, the Rights Offering will provide (i) that the existing Stockholders will receive the right to acquire new Common Stock of the Company (the "Rights") either as part of confirmation of a Plan or subject to the effectiveness of a registration statement to be filed with the Securities and Exchange Commission, (ii) that the Rights Offering be subject to prior approval of the Bankruptcy Court and satisfaction of certain other terms and conditions similar in scope to those set forth in the Equity Agreement and (iii) that the Rights will entitle the eligible Stockholders to purchase their pro rata share of the Common Stock at a discount to the anticipated business enterprise value of the reorganized Company and would be transferable by the original eligible Stockholders. The Rights Offering may be reduced to $4.2 billion by the Plan Investor, subject to the terms specified in the Highland Commitment.

- **No Preferred Stock or Direct Subscription Shares.** No preferred stock in the reorganized Delphi will be offered or purchased pursuant to this Commitment by the Plan Investor.

30. The Highland Commitment also specifics that the Plan Investor will enter into a Plan Framework Support Agreement (the "New Plan Agreement") similar to the PSA entered

into with the Appaloosa/Cerberus Group, except as provided in the Highland Commitment. The New Plan Agreement will outline the proposed framework for the Plan and the treatment of claims and interests under the Plan. The following is a summary of the principal terms of the New Plan Agreement:

- **Senior Secured Debt.** All senior secured debt will be refinanced and paid in full, and all allowed administrative and priority claims will be paid in full.

- **Trade and Funded Debt.** Trade, other unsecured claims and unsecured funded debt claims will be reinstated pursuant to terms satisfactory to the Plan Investor or be satisfied in full with cash. The framework requires that the amount of allowed trade and unsecured claims (other than funded debt claims) not exceed $1.7 billion.

- **GM Treatment**. As set forth in the Appaloosa/Cerberus Proposal, General Motors Corporation ("GM") will receive 7.0 million shares of Common Stock in the reorganized Company, $2.63 billion in cash, and an unconditional release of any alleged estate claims against GM in exchange for a financial contribution to the Company's transformation plan and in satisfaction of GM's claims against the Company. In addition, as with other customers, certain GM claims would flow-through the Chapter 11 cases and be satisfied by the reorganized Company in the ordinary course of business. Any other terms relating to GM as outlined in the Company's announcement dated December 18, 2006, will also be accepted by the Plan Investor.

- **Subordinated Debt.** All subordinated debt claims ("Preferred Holders") will be satisfied in full with cash. In the event the Plan Investor determines to reduce the Rights Offering to $4.2 billion, the claims of the Preferred Holders would be satisfied with $450 million in common stock (10 million out of the total 135.3 million shares) in the reorganized Company, at a deemed value of $45 per share and the balance in cash.

- **Existing Equity.** As a result of the Plan and the Rights Offering, holders of existing equity securities in the Company will effectively receive 3.0 million shares out of a total of 135.3 million shares of Common Stock in the reorganized Company, at a deemed value of $45 per share, and rights to purchase approximately 125.3 million shares of Common Stock in the reorganized Company for $4.7 billion at a deemed exercise price of $37.23 per share (subject to the Rights Offering becoming effective and certain other conditions). In the event the Plan Investor determines to reduce the Rights Offering to $4.2 billion, holders of existing equity will

receive rights to purchase approximately 115.3 million shares of common stock in the reorganized Company for $4.2 billion at a deemed exercise price of $36.56 per share.

- **Refinance of DIP Facility.**  Pursuant to the New Plan Agreement, the Plan Investor will support the Company with its announced efforts to refinance in full its existing $2.0 billion DIP facility and $2.5 billion pre-petition revolver and term loan facilities with JPMorgan Chase Bank, N.A. and other lenders, as announced by the Company on December 18, 2006.

- **Improved Corporate Governance Structure.**  Because no Preferred Stock in the reorganized Company possessing veto rights will be issued and there will be no imposed and required change of control pursuant to the Highland Commitment, the common equity holders will be protected from a corporate governance perspective post-confirmation.  The executive management team, as announced by Delphi on December 18, 2006, will be left in place post-confirmation.  Highland will also accept the proposal that the Company be governed by a twelve (12) member board of directors, ten (10) of whom would be independent directors and two (2) of whom would be the new Executive Chairman and a new Chief Executive Officer and President.

- **Board Selection**.  With respect to the appointment of post-confirmation directors, a board selection panel of six members will be created to choose the members of the reorganized Company board (the "Panel").  The Panel will consist of the Plan Investor and a maximum of two other significant Stockholders of the reorganized Company, one representative from GM, one management representative, and one representative from the Equity Committee.  This Panel will provide representation by all significant stakeholders, without granting control of this process to the Appaloosa/Cerberus Group.  The new board of directors will satisfy all New York Stock Exchange/NASDAQ independence requirements. Executive compensation for the reorganized Company will be on market terms and reasonably acceptable to the Plan Investor, and the overall executive compensation plan design will be described in the Company's disclosure statement and incorporated into the Plan.

- **Pension Funding.**  The Plan Investor will support the Company's earlier commitment to preserve its salaried and hourly defined benefit U.S. pension plans, and will include an arrangement to fund approximately $3.5 billion of its pension obligations similar to that proposed by the Appaloosa/Cerberus Group.

31.     The $4.7 billion Highland Commitment is significantly better than the Appaloosa/Cerberus Proposal because it distributes value fairly among all creditor and equity

constituencies, puts corporate governance into the hands of the real stakeholders and prevents a small alliance of investors from hijacking current equity value and any future upside of the reorganized Delphi from current stockholders.

C. **Benefits of the Highland Commitment**

32. The Highland Commitment is clearly superior to the Appaloosa/Cerberus Proposal and is in the best interests of the Company and its creditors, stockholders and other parties in interest. While the Appaloosa/Cerberus Proposal seeks to disenfranchise and dilute existing stockholders, notwithstanding the enterprise value of the Company, the Highland Commitment maximizes the value of the Company for *all* constituents, provides significant operational benefits to the Company and is consistent with the absolute priority rule of the Bankruptcy Code. Some of the benefits of the Highland Commitment include:

- The ability of the present board of directors to submit a proposal to the Court that is consistent with **its fiduciary duties** to all of its stakeholders and should garner the support of the Equity Committee;

- The ability of the Company to obtain **$4.7 billion of capital** without offering a "sweetheart" $1.2 billion preferred stock deal to the Appaloosa/Cerberus Group that significantly dilutes the existing stockholders, allows the Appaloosa/Cerberus Group to take control of the Company through its preferential acquisition of almost 30% of the Company's equity and grants special veto rights to the Appaloosa/Cerberus Group on significant Delphi transactions in the future;

- The ability to proceed with a **rights offering** that does not guarantee an allocation of equity (6.3 million shares) to the new insider control group (*i.e.*, the Appaloosa/Cerberus Group);

- The ability to endorse the management of the Company, as announced on December 18, 2006, while at the same time ensuring that this management will report to an **independent board of directors** that is not subject to the whims of and controlled by the Appaloosa/Cerberus Group;

- A transaction that accepts the negotiated deal between the Company and GM, which should be **equally supported** by GM and the statutory committees;

- A transaction that offers existing stockholders the ability to capture the **economic value** of the enterprise, rather than allowing the taking of this value by the Appaloosa/Cerberus Group in violation of the spirit and letter of the Bankruptcy Code; and

- A transaction that will be **embraced by the market** because it is reflective of and enhances the current value of the Company.

### LEGAL MEMORANDUM

33. Because the applicable legal points and authorities upon which this Objection relies are incorporated herein, Highland respectfully request that the service and filing of a separate memorandum of law required under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

### RELIEF REQUESTED

Wherefore, based on the forgoing, Highland respectfully requests that the Motion be denied at this time, or alternatively, that the hearing on the Motion be continued to a later date so that there is sufficient time for the Debtors and all estate constituencies to consider the $4.7 billion Highland Commitment to invest in the common stock of reorganized Delphi through a plan of reorganization supported by Highland.

Dated: December 28, 2006.

    /s/ Judith Elkin
**HAYNES AND BOONE, LLP**
Judith Elkin (JE-4112)
153 East 53rd Street
Suite 4900
New York, NY 10022
Telephone: (212) 659-7300
Facsimile: (212) 918-8989

**HAYNES AND BOONE, LLP**
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
Lenard M. Parkins (TX-15518200)
*(pro hac vice motion pending)*

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT, LP**

# EXHIBIT A

## Highland Commitment Letter

Objection and Response.doc