Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
    In re                                    :    Chapter 11
                                             :
DELPHI CORPORATION, et al.,                  :    Case No. 05-44481 (RDD)
                                             :
                          Debtors.           :    (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL APPLICATION FOR SUPPLEMENTAL ORDER UNDER 11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING EXPANSION OF SCOPE OF EMPLOYMENT OF MAYER, BROWN, ROWE & MAW LLP AS SPECIAL OUTSOURCING COUNSEL TO DEBTORS TO INCLUDE BUSINESS PROCESS OUTSOURCING SERVICES, NUNC PRO TUNC TO JULY 1, 2006

("MAYER BROWN SUPPLEMENTAL RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this supplemental retention application (this

---

[1]   In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

"Supplemental Retention Application") for a supplemental order under 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 and 2016 authorizing the expansion of the scope of employment of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") to include additional outsourcing work related to the consummation of a business process outsourcing services contract, <u>nunc pro tunc</u> to July 1, 2006. In support of this Supplemental Retention Application, the Debtors submit the Second Supplemental Declaration And Statement Of Paul J.N. Roy Under Fed. R. Bankr. P. 2014 And 2016, sworn to December 19, 2006 (the "Roy Declaration"). In further support of this Supplemental Retention Application, the Debtors respectfully represent as follows:

Background

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicates for the relief requested herein are sections 327(e) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these

---

[2]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.     The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors reached another milestone in their chapter 11 cases when they announced their acceptance of a proposal for an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the

5

Plan Investors agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan and its Plan Framework Support Agreement (as defined below). The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.

13.     Also, on December 18, 2006, in further support of its transformation plan, the Company announced that it had entered into a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM. The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors. The Plan Framework Support Agreement as well as the economics and structure of the plan framework itself are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM. Contemporaneously with the issuance of these announcements on December 18, 2006, the Debtors sought authorization and approval of the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement, which are scheduled to be heard by the Court on January 11, 2007 (Docket No. 6179). Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.     Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### Relief Requested

15.     By this Supplemental Retention Application, the Debtors seek to expand the scope of Mayer Brown's employment as special counsel to the Debtors to include the provision of services related to the finance and accounting outsourcing project (the "F&A Project"), <u>nunc pro tunc</u> to July 1, 2006.

### Overview

16.     The Debtors filed an application to retain and employ Mayer Brown as Special Information Technology Outsourcing Counsel to the Debtors in these chapter 11 cases on April 21, 2006 (the "Mayer Brown Retention Application").  On May 12, 2006, this Court approved the Mayer Brown Retention Application, and entered the Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing The Employment And Retention Of Mayer, Brown, Rowe, And Maw LLP As Special Information Technology Outsourcing Counsel To Debtors <u>Nunc Pro Tunc</u> To February 1, 2006 (Docket No. 3758) (the "Retention Order").

17.     Since February of 2006, Mayer Brown has represented, and continues to represent, the Debtors as their Special Information Technology Outsourcing Counsel in support of their reorganization process.  In particular, in accordance with the scope of authority provided in the Retention Order, Mayer Brown's services have involved a series of projects that can broadly be

7

characterized as relating to "information technology" outsourcing, including infrastructure, application development, and network projects.

18.   Another general field of outsourcing work involves business processes. In business process outsourcing, a service provider takes responsibility for performing general and administrative functions such as human resources administration, logistics, procurement, customer contact centers, and finance and accounting. The F&A Project, which is the subject of that certain supplemental engagement letter dated August 18, 2006, between Delphi and Mayer Brown (the "Supplemental Engagement Letter"), is within the field of business process outsourcing. After initially being of the view of that Mayer Brown's retention as special outsourcing counsel was sufficiently broad to include the F&A Project, subsequently, in the Fall of 2006, it was decided that because Mayer Brown's initial engagement was limited to doing work as special <u>information technology</u> outsourcing counsel, it was appropriate and necessary to obtain Court approval to expand the scope of Mayer Brown's outsourcing work to include <u>business processes</u>.[4]

19.   This Supplemental Retention Application sets forth the proposed additional services to be provided by Mayer Brown and the associated fee arrangement and seeks the Court's approval for expansion of Mayer Brown's role.

Scope Of Additional Services

20.   Pursuant to the supplemental engagement letter, a copy of which is attached to the Roy Declaration as <u>Exhibit 1</u>, the Debtors seek to expand Mayer Brown's current scope of services to include services in connection with a financial and accounting outsourcing services

---

[4]   To further illustrate the point, the Debtors believe that following entry of a supplemental order approving the Supplemental Application that Mayer Brown should be referred to as Special Outsourcing Counsel, so that Mayer Brown no longer is limited solely to information technology-related outsourcing projects.

contract, the consummation of which will enable Delphi to outsource to a third-party service provider the following Delphi functions on a global basis: accounts payable, accounts receivable, fixed assets accounting, general ledger, travel and expense processing, and contract administration. Through Mayer Brown's efforts in connection with the F&A Project, Delphi expects to substantially reduce its costs while significantly improving its operational efficiency.

### Services To Be Rendered

21. As set forth in the Supplemental Engagement Letter, the Debtors wish to retain Mayer Brown to provide services to the Debtors in connection with the F&A Project and other business process outsourcing matters, including:

   (a) Drafting, revising, and editing a form of outsourcing agreement appropriate for the applicable business processing services;

   (b) Negotiating specific business process outsourcing agreements with third-party bidders to (i) obtain commitments to provide a defined scope of services at agreed-upon levels of service quality and agreed pricing, (ii) provide for ongoing improvement and change in Delphi's needs and available technology, (iii) establish a framework for governing the outsourcing relationship, and (iv) allocate legal and business risks associated with the services arrangement; and

   (c) Assisting Delphi in selection of a finalist from the bidding process and finalizing the documentation to be entered into by Delphi with the selected service provider.

22. The Debtors believe that the further employment of Mayer Brown will enhance and will not duplicate the employment of other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by Mayer Brown as special outsourcing counsel. The Debtors understand that Mayer Brown will work with the other professionals retained by the Debtors to avoid any such duplication.

23. The Debtors further believe that the F&A Project is of significant value to the Debtors and anticipate that significant savings will be realized as a result of this undertaking. The F&A Project is intended to improve the Debtor's control, efficiency, and flexibility with

9

respect to its finance and accounting processes. An outsourcing contract is necessary to obtain binding legal commitments from the service provider for services and pricing that are expected to yield these benefits.

Disinterestedness Of Professionals

24.     On April 21, 2006, Paul J.N. Roy executed a declaration (the "Original Declaration") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the Mayer Brown Retention Application. On August 17, 2006, Mr. Roy executed the First Supplemental Declaration and Statement of Paul J.N. Roy Under Fed. R. Bankr. P. 2014 and 2016 (the "First Supplemental Declaration"). As previously noted, filed concurrently herewith is the Roy Declaration (collectively, with the Original Declaration and the First Supplemental Declaration, the "Declarations"). Except as otherwise set forth in the Declarations and to the extent known after reasonable inquiry, Mayer Brown, through its partners, counsel, and associates, (a) does not have any connections with the Debtors or their affiliates, their creditors, the United States Trustee for the Southern District of New York (the "U.S. Trustee") or any person employed in the office of the U.S. Trustee, or any other party-in-interest, or their respective attorneys and accountants, (b) is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (c) does not hold or represent any interest adverse to the Debtors' estates.

Applicable Fee Arrangement

25.     Mayer Brown and the Debtors have agreed that Mayer Brown's fees will continue at the rates stated in the original engagement letter through September 30, 2006, and will then increase as set forth below to reflect the change in Mayer Brown's hourly rates in June of each

10

calendar year. Specifically, the hourly rates for the professionals expected to work on this engagement are[5]:

| Professional | Until 9/30/06 | From 10/1/06 |
|---|---|---|
| Paul Roy | $580 | $650 |
| Brad Peterson | $540 | $590 |
| Paul Chandler | $475 | $510 |
| Sonia Baldia | $460 | $485 |
| Greg Manter | $300 | $345 |
| Kristina Herrmann | $260 | $320 |

These hourly rates will remain in effect until the earlier of the completion of the engagement and June 30, 2007, and thereafter, will revert to Mayer Brown's standard hourly rates in effect at such time, subject to the approval of this Court.

26.     Further, in addition to the rate discount disclosed in the Mayer Brown Retention Application, Mayer Brown has agreed to discount its rates by 5% for the first $400,000 of fees with respect to each of the application development management and network infrastructure phases of the project, and with respect to the first $500,000 of fees with respect to the F&A Project, and at 10% for the portion of Mayer Brown's fees for each portion of the engagement that exceeds the foregoing threshold. In addition, Mayer Brown agrees not to charge for travel time, though the firm will charge for time spent working on Delphi matters while traveling.

27.     Mayer Brown will continue to apply to this Court for allowance of compensation and reimbursement of expenses related to the F&A Project in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy

---

[5] In the event others from Mayer Brown become necessary to assist the Debtors on this matter, Mayer Brown will obtain written permission from the Debtors before engaging those individuals. Mayer Brown understands that no fees will be paid for work performed by other individuals prior to obtaining the Debtors' written permission.

11

Rules for the Southern District of New York (the "Local Rules"), orders of this Court, and the guidelines established by the U.S. Trustee (the "U.S. Trustee Guidelines").

28. Mayer Brown will not bill for the F&A Project separately from its other legal advisory services, but rather will designate a separate billing matter number so that the services rendered in connection with the F&A Project may be distinguishable and distinct from such other services.

29. Pursuant to the Delphi Billing Instructions and Limitations annexed to the Supplemental Engagement Letter, the guidelines established by the Court in connection with these proceedings, the Local Rules, and the U.S. Trustee Guidelines, Mayer Brown will bill only for reasonable expenses and will not charge any markup, overhead, profit, or other fees on reimbursable expenses.

## Other Terms And Provisions

30. All other terms and provisions that are applicable to the F&A Project are consistent with the Mayer Brown Retention Application and are hereby incorporated by reference into this Supplemental Retention Application and remain in full force and effect.

## Conclusion

31. For the foregoing reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates and creditors, and should be approved.

## Notice

32. Notice of this Supplemental Retention Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court

on October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

33. Because the legal points and authorities upon which this Supplemental Retention Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter a supplemental order (a) authorizing the expansion of the scope of Mayer Brown's employment as Special Information Technology Outsourcing Counsel to the Debtors to include the provision of services related to the F&A Project, <u>nunc</u> <u>pro</u> <u>tunc</u> to July 1, 2006 and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         December 29, 2006

                        DELPHI CORPORATION, on behalf of itself and
                        certain of its subsidiaries and affiliates, as Debtors and
                        Debtors-in-possession

                        By:   /s/ John D. Sheehan_____
                              Name: John D. Sheehan
                              Title:   Vice President and Chief Restructuring
                                     Officer