Paul J. N. Roy, Esq.
Craig E. Reimer, Esq.
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel. 312.782.0600
Fax 312.701.7711
(Special Information Technology Outsourcing
Counsel to Debtors and Debtors-in-Possession)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                               :    Chapter 11
                                                     :    Case No.  05-44481 (RDD)
DELPHI CORPORATION, INC., et al.,                    :    (Jointly Administered)
                                Debtors.             :
------------------------------------------------------------x

## SECOND SUPPLEMENTAL DECLARATION AND STATEMENT OF PAUL J. N. ROY UNDER FED. R. BANKR. P. 2014 AND 2016

PAUL J. N. ROY, being duly sworn, deposes and says:

1.  I am a member of the firm of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") which maintains an office for the practice of law at 71 South Wacker Drive, Chicago, Illinois 60606-4637. On April 21, 2006, I executed a declaration (the "Original Declaration") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the Application for Order Under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Mayer, Brown, Rowe & Maw LLP as Special Information Technology Outsourcing Counsel to Debtors Nunc Pro Tunc to February 1, 2006 (the "Retention Application"). Pursuant to an order entered May 12, 2006, this Court authorized the retention of Mayer Brown to serve as the Debtors' Special Information Technology Outsourcing Counsel.

Since February 1, 2006, Mayer Brown has represented, and continues to represent, the Debtors as their Special Information Technology Outsourcing Counsel[1].

2.      On August 17, 2006, I executed the First Supplemental Declaration and Statement of Paul J.N. Roy Under Fed. R. Bankr. P. 2014 and 2016 (the "First Supplemental Declaration", collectively, with the Original Declaration, the "Declarations").

3.      Among other things, the Declarations were filed in order to: (a) demonstrate that Mayer Brown did not hold any interest adverse to the Debtors in respect of any of the matters for which it is acting as special counsel; and (b) comply with Sections 327(e), 328, 329 and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b) and 5002 and the local rules of the United States District Court for the Southern District of New York and the United states Bankruptcy Court for the Southern District of New York.

4.      I hereby reaffirm and verify each and every one of the statements set forth in the Declarations, which are incorporated herein and made a part of this second supplemental declaration (the "Second Supplemental Declaration") as if set forth in their entirety in this paragraph.

5.      Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto. Certain of

---

[1] The *Supplemental Application for Supplemental Order Under 11 U.S.C.§ 327(e) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Expansion of Scope of Employment of Mayer, Brown, Rowe & Maw LLP as Special Outsourcing Counsel to Debtors to Include Business Process Outsourcing Services, Nunc Pro Tunc to July 1, 2006* is being filed concurrently by the Debtors, in connection with business process outsourcing services being provided by Mayer Brown on behalf of Delphi, pursuant to their mutual agreement memorialized by that certain supplemental engagement letter, dated August 18, 2006 and annexed hereto as Exhibit 1.

2

the disclosures herein, however, relate to matters within the knowledge of other attorneys at Mayer Brown and are based on information provided by them.

6. Prior to the execution of the Original Declaration, Mayer Brown performed extensive relationship and disclosure research with respect to the Debtors' affiliates, directors and officers, joint owners of the Debtors' affiliates, fifty largest unsecured creditors (on a consolidated basis as of September 2005, as determined by the Debtors), counterparties to major contracts, major lenders, shareholders owning more than 5% of outstanding shares, professionals, utility companies, counterparties to major leases, insurance providers, major vendors, major customers, non-Debtor parties to collective bargaining agreements with the Debtors, indenture trustees, underwriters of securities, major litigation parties, state and governmental agencies, and Judges and United States Trustees for the United States Bankruptcy Court for the Southern District of New York. The disclosures in the Original Declaration were based on that inquiry.

7. Since its retention, and subsequent to the execution and filing of the First Supplemental Declaration, Mayer Brown has conducted additional queries of its client databases regarding possible relationships with, or connections to, the parties that filed formal notices of appearance in these cases (the "Rule 2002 Entities"), the parties on the master service list (the "Master Service List Parties"), and certain other parties who have been actively involved in these cases or otherwise identified to Mayer Brown.

8. Mayer Brown is filing this Second Supplemental Declaration to supplement the disclosures in the Declarations and to provide additional disclosures regarding the results of its continued client database research of the parties that have appeared in these cases and other additional due diligence. Mayer Brown will continue

to conduct further due diligence and research of its client databases and will periodically file additional supplemental declarations regarding its retention, to the extent necessary.

9.  Except as otherwise set forth in the Declarations and in this Second Supplemental Declaration, to the extent known by me after reasonable inquiry, Mayer Brown, through its partners, counsel, and associates, (a) does not have any connections with the Debtors or their affiliates, their creditors, the United States Trustee for the Southern District of New York (the "U.S. Trustee") or any person employed in the office of the U.S. Trustee, or any other party-in-interest, or their respective attorneys and accountants, (b) is a "disinterested person", as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (c) does not hold or represent any interest adverse to the Debtors' estates.

10. Except as otherwise set forth in the Declarations and in this Second Supplemental Declaration, to the extent known by me after reasonable inquiry, Mayer Brown does not represent and has not represented any entity, other than the Debtors, in matters related to these bankruptcy cases. To the extent known by me after reasonable inquiry, the identity of any adverse or potentially adverse parties-in-interest were disclosed in the Declarations or are disclosed in this Second Supplemental Declaration. Mayer Brown's representation of any such entities has not and will not affect its representation of the Debtors in these cases as Special Outsourcing Counsel.

### Supplemental Due Diligence And Disclosures

11. Subsequent to the execution and filing of the First Supplemental Declaration, the Debtors provided Mayer Brown with a list, current through November 1, 2006, of names of additional potential parties-in-interest in these cases.  Based on this

new information, Mayer Brown performed additional searches of its client databases for the Rule 2002 Entities known to the Debtors as of November 1, 2006, the Master Service List Parties known to the Debtors as of November 1, 2006, retained professionals, and certain other potential parties-in-interest. Based on such subsequent client database queries, Mayer Brown has determined that it represents or has represented (in addition to those entities previously disclosed in the Declarations) certain creditors or other potential parties-in-interest (or in some cases their affiliates as indicated) on matters unrelated to the Debtors or these cases as follows:

12. <u>Professionals</u>: Ropes & Gray, LLP.

13. <u>Major Vendors</u>:  Speedline Technologies, Inc., Ametek, Inc.[2]

14. <u>Rule 2002 Entities, Entities Actively Involved in these Cases, and Master Service List Parties</u>: Comerica Leasing[3], Merrill Lynch Credit Products, LLC[4].

15. <u>Additional Disclosures</u>:  Delphi is in the process of evaluating AT&T Corporation ("AT&T") and other potential bidders competing for the telecom portion of certain information technologies outsourcing work. In connection with scope of services

---

[2] Mayer Brown represents or has represented Ametek GmbH, an affiliate of Ametek, Inc.

[3] Mayer Brown represents or has represented the following affiliates of Comerica Leasing: (i) Comerica Bank-Detroit; (ii) Comerica;  (iii) Comerica Corporation; (iv) Comerica, Inc. and Munder Capital Management; (v) Comerica Bank-California; (vi) Comerica Bank and Century Capital Markets, LLC; (vii) Comerica Securities Inc.; and (viii) Comerica Bank & Mass Mutual Life Insurance Co.

[4] Mayer Brown represents or has represented the following affiliates of Merrill Lynch Credit Products, LLC: (i) Merrill Lynch & Co., Inc.; (ii) Merrill Lynch, Pierce, Fenner & Smith, Inc.; (iii) Merrill Lynch Capital Corporation; (iv) Merrill Lynch Money Markets, Inc.; (v) Merrill Lynch International Limited; (vi) Merrill Lynch International; (vii) Merrill Lynch Investment Managers; (viii) Merrill Lynch Global Markets; (ix) Merrill Lynch Commercial Loan Corporation; (x) Morgan Stanley & Co. Incorporated/Merrill Lynch & Co.; (xi) Services Regulations Coalition consisting of, among others, Merrill Lynch & Co., Inc.; (xii) Merrill Lynch &Co., Inc. (Customer Pay); (xiii) Wachovia Securities and Merrill Lynch &Co., Inc. (Customer Pay); (xiv) Wachovia Securities and Merrill Lynch & Co.; Merrill Lynch, Pierce, Fenner & Smith Incorporated (Bank Pay); (xv) Aztex Associates, L.P.; (xvi) Dresdner bank AG London Branch; Merrill Lynch International; (xvii) Nationwide Building Society and Merrill Lynch Commercial Loan Corporation; (xviii) Merrill Lynch International; Citigroup Global Markets Ltd.; (xix) Merrill Lynch, Professional Clearing Corp.; and (xx) Merrill Lynch Commercial Loan Corporation; Capmark Services Ireland Limited.

Mayer, Brown already is authorized to provide as Special Information Technology Outsourcing Counsel, Mayer Brown has been representing Delphi in that bidding process and will continue to represent Delphi in negotiations and any further dealings with the telecom party selected to be the winning bidder. While no decision has yet been made as to whom the winning bidder may be, for purposes of full disclosure it should be noted that Mayer Brown has in the past represented, is currently representing and may in the future represent AT&T or its affiliates in matters that are completely unrelated to this engagement, specifically, or to Delphi and its chapter 11 cases, generally. In addition, conflict waiver letters have been obtained from both AT&T and Delphi with respect thereto.

### **Further Due Diligence**

16. Mayer Brown intends to conduct further database queries and file supplemental declarations, to the extent necessary and as warranted, periodically, over the duration of its retention and participation in these chapter 11 cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on December 19, 2006, at Chicago, Illinois

/s/ Paul J. N. Roy
Paul J. N. Roy

**Exhibit 1**
**Supplemental Engagement Letter**

August 18, 2006

Marjorie Harris Loeb, Esq.
Assistant General Counsel
 Corporate and Securities
Delphi Corporation
MC 483.400.603
5725 Delphi Place
Troy, Michigan 48098

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Paul J.N. Roy
Direct Tel (312) 701-7370
Direct Fax (312) 706-8196
proy@mayerbrownrowe.com

Dear Ms. Loeb:

This letter supplements our agreement for the provision of legal services by this Firm to Delphi Corporation ("Delphi") as outlined in my letter to you dated February 3, 2006 (the "Original Engagement Letter") and outlines the terms by which the Firm has agreed to expand the scope of services provided in connection with an IT outsourcing services contract (the "ITO Project") and further agrees to provide services in connection with a Financial and Accounting outsourcing services contract (the "F&A Project"), subject to the attainment of waiver letters, if necessary. Specifically the scope of the ITO Project will be expanded to cover the negotiation of outsourcing services contracts related to two additional service towers, applications development management (the "ADM Phase") and network infrastructure (the "Network Phase"). You may limit or expand the scope of our representation at any time, provided that any expansion must be by mutual consent. We are very pleased that you have retained us and will, of course, answer any questions you may have about these arrangements.

## PAYMENT PROVISIONS

We recognize that in choosing us to provide these services, you are choosing specific individuals at the Firm, including myself, Brad Peterson, Sonia Baldia, Paul Chandler, Greg Manter and Kristina Herrmann. I will continue to be your primary interface on this engagement with respect to the ITO Project and Brad Peterson will be your primary interface with respect to the F&A Project and each of us will supervise the other professionals involved. I, with the continued assistance of Paul Chandler with respect to our work under the Original Engagement Letter, and with the assistance of both Paul Chandler and Sonia Baldia with respect to the ADM Phase and Network Phase, will lead the ITO Project. Brad Peterson, with assistance from Sonia Baldia, will lead the F&A Project. As per our discussion, I will keep you informed of staffing needs and work with you in coordinating with Delphi's internal legal staff so that together we can insure the most cost-efficient and effective delivery of services. Others from the Firm may be necessary to assist us on this engagement, but we have agreed to obtain your written permission before engaging them. No fees will be paid for work performed by others before we

9056727 42007437

Berlin Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 2

have obtained your written permission. The Firm endeavors, to the maximum extent compatible with the quality of our work product, to assign our personnel in a way designed to produce timely and economical handling of matters. If at any time you have questions, concerns or suggestions, please contact me promptly.

Our fees for services are based on time (at quarter hour increments) spent on specific projects, computed at our hourly rates for those persons performing the services required. As we discussed, our fees will continue at the rates stated in the Original Engagement Letter through September 30, 2006, and will then increase as set forth below to reflect the increase in the Firm's hourly rates as of June 1, 2006. Specifically the hourly rates for the professionals you have approved for this engagement are as follows:

| PROFESSIONAL | UNTIL 9/30/06 | FROM 10/01/06 |
|---|---|---|
| Paul Roy | $580 | $650 |
| Brad Peterson | $540 | $590 |
| Paul Chandler | $475 | $510 |
| Sonia Baldia | $460 | $485 |
| Greg Manter | $300 | $345 |
| Kristina Herrmann | $260 | $320 |

We agree these hourly rates will remain in effect until the earlier of the completion of the engagement and June 30, 2007 and thereafter will revert to the Firm's standard hourly rates in effect at such time, in all cases subject to the agreed upon discounts set forth below.

Our agreement to discount our rates with respect to the first phase of the IPO Project remains as set forth in the Original Engagement Letter. We also agree to discount our rates by 5% for the first $400,000 of fees with respect to each of the ADM Phase and Network Phase, and with respect to the first $500,000 of fees with respect to the F&A Project, and at 10% for the portion of our fees for each portion of the engagement that exceed the foregoing thresholds. We will not charge for travel time, though we will charge for time we are working on your matters while traveling.

Our hourly billable rates include our general overhead and internal charges associated with our practice. A copy of the Delphi billing instructions and limitations is enclosed and incorporated into this engagement agreement by this reference, together with a copy of our current schedule of charges, which will apply only to the extent permitted by the Delphi billing instructions and limitations.

9056727 42007437

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 3

We anticipate submitting to you monthly invoices for the professional (lawyer and paralegal) services rendered and other charges and expenses incurred. Payment is due upon receipt of our statement and in no event later than 30 days thereafter, subject to the terms of any applicable court orders issued in the bankruptcy proceedings involving Delphi and its affiliated debtors. We will provide you with billing details specifying the individuals involved, their positions here, the hours and work performed and an itemization of other charges.

CONFLICT PROVISIONS

You agree that our Firm may represent the persons or entities listed in Attachment A where their interests are adverse (in litigation, transactions or otherwise) to you or your affiliates in matters not substantially related to our engagement by you. In addition, you agree that our Firm may represent other persons or entities (i.e., not listed in Attachment A) whose interests are adverse to you or your affiliates in matters not substantially related to our engagement by you, provided that so long as you remain a continuing client of our Firm, we will not represent such other persons or entities in any litigation or arbitration adverse to Delphi without having obtained a separate waiver from you for that representation.

We agree, however, that your prospective consent to adverse representation shall not apply in any instance where, as the result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to any such other client of ours, could be used in a matter in which we are retained by our other client to your material disadvantage unless we have screened our lawyers and paralegals who have such information from any involvement in the adverse representation. In addition no lawyer of our Firm who is representing Delphi will participate in the representation of another person or entity adverse to Delphi. The attorneys in our Firm working on matters for Delphi and persons or entities adverse to Delphi will, of course, keep segregated and separate any work product and information concerning the matters for Delphi from any work product and information concerning the matters for any person or entity adverse to Delphi.

For the purpose of determining whether a conflict of interest exists, it is only you and your subsidiaries which we will represent and not your stockholders or other related companies (collectively "Other Related Persons"). You agree not to give us confidential information regarding your Other Related Persons. While we recognize that to act adversely to any Other Related Persons could jeopardize a long term relationship with you, which we would naturally be reluctant to do, for conflict of interest purposes we reserve the right to represent another client with interests adverse to any Other Related Person without obtaining any consent from you or such Other Related Person.

TERMINATION OF ENGAGEMENT

Following termination of our engagement, any otherwise nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable

9056727 42007437

08/21/2006 10:22    248-813-2491    DELPHI LEGAL STAFF    PAGE 02/02

FROM : MARJORIE HARRIS LOEB    FAX NO. : 12485938059    Aug. 19 2006 11:41AM P1

Mayer, Brown, Rowe & Maw LLP

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 4

rules of professional conduct. At your request, your papers and property will be returned to you; our own files, including lawyer work product, pertaining to the matter will be retained by us, however we will provide copies of such materials to you should you request us to do so. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable time after the termination of the engagement.

Our attorney-client relationship will be considered terminated if more than 12 months have elapsed from the last time you requested and we furnished any billable services to you. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any supplemental terms of engagement. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are engaged in writing to do so.

ACCEPTANCE

This letter constitutes the entire understanding between you and Mayer, Brown, Rowe & Maw LLP and supersedes all prior understandings, written or oral, relating to its subject matter. Any change must be made or confirmed in writing. If this letter correctly reflects your understanding of the terms and conditions of our engagement, please indicate your acceptance by signing the enclosed copy of this letter in the space provided below and returning it to our office, to my attention.

On behalf of Mayer, Brown, Rowe & Maw LLP, I thank you for the opportunity to be of service.

Sincerely,

Paul J.N. Roy

We agree to the foregoing terms:

DELPHI CORPORATION

By: _____

Delphi Billing Instructions and Limitations

**Payment Terms**

Delphi payment terms are MSN-2 (second day of the second month, after the date of the invoice).

**Permitted Reimbursables**

Delphi will reimburse a law firm for reasonable and actual out-of-pocket payments made to third-party vendors (i.e., Delphi will **not** pay for markups or surcharges added by the law firm) for the following items:

- Air freight/express mail deliveries
- Bond fees and premiums
- Coach-class air fare (lowest available rate/class)
- Computerized legal research (e.g., Lexis, Westlaw)
- Court reporter fees
- Expert witness fees
- Filing fees
- Inside photocopy (up to 10 cents per page)
- Local business transportation (e.g., taxi fares)
- Long distance telephone charges (for voice, fax or data)
- Outside messenger services
- Outside photocopy, binding, and printing services
- Postage
- Travel (airfare, hotel, rental car)

Delphi will **not** pay for:

- Books/subscriptions
- Fax communications (except long distance telephone charges)
- Hourly fees while traveling
- Inside photocopy (more than 10 cents per page)
- Local meals
- Local personal transportation (taxi/limousine to/from home)
- Local telephone charges
- Membership fees
- Office supplies
- Overtime charges
- Secretarial/clerical charges
- Storage charges

9056727 42007437

- Word processing

Mayer, Brown, Rowe & Maw LLP
U. S. Offices

Schedule of Non-fee Charges to Clients

(which will apply only to the extent permitted by the Delphi Billing Instructions and Limitations)

July 1, 2005

I.     Long Distance Telephone.

We purchase our long-distance telephone service from telecommunications providers at discounted rates. We charge clients at rates calculated to recover our cost.

II.     Automated Research.

We purchase services from Lexis and Westlaw at fixed monthly rates which are substantially below their published rates. We charge clients for the Lexis and Westlaw connections at rates calculated to recover our cost.

III.     Telefax Service.

We charge clients $1.00 per page, plus applicable long distance telephone charges regardless of length at our discounted rates. There is no charge for incoming telefaxes.

IV.     Document Reproduction.

We charge clients for standard-size internal black and white copies at the rate of $.15 per page. We charge clients for standard-size internal color document reproduction (if specifically requested by clients) at the rate of $1.00 per page. We currently reproduce documents using photocopiers, laser printers, and digital copiers, and may in the future use other means of reproduction. Outside copying is charged at actual out-of-pocket cost.

V.     Postage.

We charge clients at cost for postage when the cost of mailing is $1.00 or more.

9056727 42007437

VI.  Out-of-pocket Disbursements.

The following types of disbursements when related to a client matter are charged at the firm's cost:

>   Advances on behalf of clients (*e.g.*, tax payments, filing fees, title charges)
>   Consultants' and expert witnesses' fees and expenses
>   Courier and messenger services
>   Court reporters
>   Equipment when purchased solely for a client matter
>   Meals
>   Outside services (including cost of litigation support services purchased from outside vendors)
>   Service of process
>   Records searches
>   Supplies (when amounts are large or type of supply item is special)
>   Tax return processing charges
>   Taxis, mileage, parking (local)
>   Travel (airfares, hotels, meals, car rentals, fees of travel agencies and professionals, taxis and incidentals)*
>   Trial exhibits
>   Witness fees and costs
>   Other items not covered above that are directly attributable to a client matter
>
>   *We use commissions paid to our travel agents by hotels and auto rental companies to reduce the costs to us of our Travel Department.

VII.  Items Not Charged to Clients.

>   Administrative overhead
>   Air conditioning and electricity for overtime work
>   Client entertainment
>   Local and suburban telephone calls
>   Rent for conference rooms

9056727 42007437

Attachment A

Gail O'Brien
Logan Robinson
Oppenheimer Senior Floating Rate Fund
Tenneco and its subsidiaries
TRW Automotive Inc. and its subsidiaries
Ispat Inland/Mittal Steel USA Inc. and its subsidiaries
United Stars, Inc. and its subsidiaries
Hub Group and its subsidiaries
Micronas Semi-Conductors and its subsidiaries
Bank of America N.A. and its subsidiaries
Milan E. Belans II