**Hearing Date:  March 1, 2007**
                                        **Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT
TO PROOF OF CLAIM NUMBER 12083 (THOMAS WIMSATT/DONNA WILSON)

("STATEMENT OF DISPUTED ISSUES – THOMAS WIMSATT/DONNA WILSON")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Statement of Disputed Issues (the "Statement of Disputed Issues") With Respect To Proof Of Claim Number 12083 (the "Proof of Claim") filed by Donna Wilson ("Wilson"),[1] and respectfully represent as follows:

## Background

1. Wilson filed the Proof of Claim on or about July 28, 2006. The Proof of Claim asserts an unsecured nonpriority claim in the amount of $250,000.00 (the "Claim") based on an alleged civil rights violation by the Debtors.

2. The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

3. On November 22, 2006, Wilson filed the Response In Opposition To Debtor's Third Omnibus Objection To Claim Of Donna L. Wilson (Docket No. 5856) (the "Response"). The Response asserts that the Claim arises from a lawsuit filed against the Debtors in which Wilson asserts that the Debtors violated her civil rights.

4. Wilson is African-American. She was 49 years old when deposed in June, 2005. Wilson claims under Michigan law that the Debtors discriminated against her on the basis of her race when the Debtors suspended her from their employ for approximately two weeks. Wilson seeks both (a) economic damages measured by (i) wages she would have earned during

---

[1] The Proof of Claim actually lists Wilson's attorney, Thomas Wimsatt ("Wimsatt"), as the claimant. However, it appears that this was a typographical error because the Proof of Claim attaches a complaint in which Wilson (represented by Wimsatt) is the named plaintiff, and because Wilson (again represented by Wimsatt) filed a response to the Debtors' objection to the Proof of Claim.

the suspension and (ii) the alleged $0.80/hour less she earns in her current employment compared to her employment at the time of her suspension, and (b) noneconomic damages.

5.  Wilson began employment with General Motors Corporation beginning September 15, 1975. She has always been an hourly employee and is a member of UAW Local 699.

## Disputed Issues

6.  In March 2004, the Debtors' superintendent at Plant 6 in Saginaw ("LO") was dissatisfied with the performance of an African American B shift supervisor in Department 32-1 ("TG"). Consequently, on Friday, March 5, 2004, LO advised TG that she was discharging him. LO had determined to replace TG with the person that was TG's predecessor, and who, after leaving the job, was again available for employment.

7.  At the time of TG's discharge, thirteen hourly persons worked the B shift in Department 32-1, Plant 6, nine of whom were African American and four of whom were Caucasian. Wilson had transferred to the B shift effective Monday, March 8, 2004.

8.  On Monday, March 8, 2004 none of the African American employees appeared to work the B shift as scheduled, although all four Caucasian employees appeared.

9.  Wilson worked Saturday, March 6, 2004, on the A shift. She acknowledges that on March 6, 2004 she knew that she was scheduled to work the B shift on March 8, 2004, and understood that her shift was scheduled to begin at 3:00 p.m. Wilson acknowledges that she did not appear for work on March 8, 2004 at 3:00 p.m., as scheduled. Instead, after Saturday, March 6, 2004, Wilson next appeared for work on Tuesday, March 9, 2004 at the beginning of the B shift (3:00 p.m.).

3

10. Wilson claims that she did not appear for work as scheduled on March 8, 2004 at 3:00 p.m. because she was sick as the consequence of a "breast infection." She claims that, while her breast ailment was a chronic problem, she began experiencing acute symptoms on Sunday, March 7, 2004, in the morning. Wilson asserts that, as a consequence, she called her physician sometime during the morning hours on Monday, March 8, 2004, and at that time she made a doctor's appointment for 2:00 p.m. that afternoon. Wilson claims that she was still at her physician's office at 3:00 p.m. that afternoon, when the B shift was scheduled to start.

11. Wilson admits that she did not advise the Debtors before 3:00 p.m. on March 8, 2004 that she would not appear for her shift that day. Wilson did make a telephone call to Delphi's toll-free number at approximately 5:00 p.m., reporting that she was off work because of illness and that she would be returning to work on Tuesday, March 9, 2004. Wilson returned to work on March 9, 2004.

12. On Tuesday, March 9, 2004, LO indefinitely suspended all nine African American employees for their participation in an unauthorized work stoppage. On March 10, 2004, LO converted the indefinite suspensions to suspensions for the balance of the shift on March 9, 2004 and 30 days with respect to seven of the nine employees, including Wilson. After the UAW pursued grievances with respect to the discipline, LO agreed to settle the grievances for those employees who consented, one of whom was Wilson, by converting the suspensions to time off work for the balance of the shift and two weeks. Wilson returned to work in another of the Debtors' departments upon completion of her suspension.

13. LO was insistent that none of the conspirators return to their jobs in Department 32-1. The union committeeman and the employees, including Wilson, agreed to the

4

settlement of the grievances knowing of LO's insistence that the conspirators not return to their jobs in Department 32-1.

14. Wilson has a claim against the Debtors only if Wilson can demonstrate that the Debtors suspended Wilson because of her race. The Debtors have demonstrated that LO had legitimate business reasons for her decision to suspend Wilson and her co-conspirators. As a result, Wilson cannot prevail against the Debtors on her claims of race discrimination. Hence, the Claim should be disallowed and expunged.

## Reservation of Rights

15. This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
January 3, 2007

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession