**Hearing Date: March 1, 2007**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT TO
PROOF OF CLAIM NUMBER 9451 (TERRENCE EVANS)

("STATEMENT OF DISPUTED ISSUES – TERRENCE EVANS")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement Of Disputed Issues (the "Statement Of Disputed Issues") With Respect To Proof Of Claim Number 9451 (the "Proof Of Claim") filed by Terrence Evans ("Evans") and respectfully represent as follows:

Background

1. Evans filed the Proof Of Claim on or about July 13, 2006. The Proof Of Claim asserts an unsecured nonpriority claim in the amount of $300,000 (the "Claim") for alleged employment discrimination and retaliatory firing. Evans' initial proof of claim (Proof of Claim No. 253), filed on October 31, 2005, was expunged and disallowed as a duplicative claim under the Court's Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging (i) Duplicate And Amended Claims And (ii) Equity Claims Identified In First Omnibus Claims Objection (Docket No. 5390) and therefore is not the subject of this Statement of Disputed Issues.

2. The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

3. Evans filed his Response Of Claimant/Creditor Terrence Evans To Debtor's (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims

Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) And Motion To Lift Stay (Docket No. 5822) (the "Response") on November 21, 2006.

Disputed Issues

4. Terrence Evans began employment with what is now the Debtors in November 1978. At all pertinent times, he worked as a Mechanical Hardware Engineer, an 8th-level position in the Debtors' compensation system.

5. During 2003, Evans' African-American Supervisor, Bill Brown, determined that Evans' performance was unacceptable and placed him on a PBP Supplement, a performance improvement tool. Shortly thereafter, Brown moved on to another opportunity. Thomas Hamilton, who is white, became Evans' supervisor.

6. Based on his 2003 performance, Evans received a 1.8% recognition bonus rather than a base salary increase. He complained to human resources and repeated a prior request to transfer out of engineering. His human resources representative advised him that while she would let other managers know about his desire to move, it would be difficult to do so – particularly at an 8th-level position – because he had spent his whole career in engineering.

7. Evans' performance did not improve. In February 2004, after several updates, Hamilton advised that Evans that he had not successfully completed the PBP. On or about April 20, 2004, Hamilton, acting in conjunction with human resources, placed Evans on a Performance Improvement Plan ("PIP") – a more serious performance improvement tool – which was scheduled to last 90 days. A number of progress meetings were expected during the 90 days. The plan spelled out, in very specific terms, performance deficiencies and type of improvement that the Debtors expected to see for each. Progress meetings occurred in May, June, and July

2004. Evans then took a medical leave until October 15, 2004. Due to Evans' leave, the Debtors extended his PIP to November 16, 2004. Employees normally are not allowed to transfer out of their departments when they are on a PIP.

8. In late October 2004, Evans had a confrontation with Hamilton over the fit of a particular part. Evans complained to human resources that Hamilton "threw [him] out of [Hamilton's] office when [he] attempted to explain something to Hamilton." He further alleged that Hamilton treated him "with a lack of respect" and asked why he was forced to endure such "treatment, harassment and/or discrimination." Evans' human resources representative asked Evans if he was talking about race discrimination. Evans replied, "I can't see in his head." Evans also denied that Hamilton had ever said anything race-related to him. Age was not mentioned. Human resources investigated the incident, including review of a witness account that was inconsistent with Evans' story. No evidence of race discrimination emerged.

9. At the conclusion of the PIP, on November 16, 2004, Evans had successfully completed only one of the six PIP requirements. On November 19, 2004, Hamilton and human resources personnel told Evans he was being demoted to a 7th-level position due to his failure to complete the PIP requirements. The demotion, effective November 22, 2004, caused no base salary reduction. Evans did, however, lose the opportunity to have a company vehicle.

10. On August 10, 2005, Evans filed a Complaint and Demand for Jury Trial in the United States District Court for the Southern District of Indiana (the "Indiana Court") against Delphi, alleging retaliation, race discrimination, and age discrimination.

11. On October 18, 2005, due the Debtors' chapter 11 filings, the Indiana Court administratively closed without prejudice Evans' action.

A. Evans Cannot Prove Race or Age Discrimination

12. Evans has no direct or circumstantial evidence of either race or age discrimination. He must, therefore, use an indirect method of proof. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to establish a prima facie case, Evans must demonstrate that (a) he is a member of a protected class; (b) his job performance met the Debtors' legitimate expectations; (c) he suffered an adverse employment action, and (d) another similarly situated individual who was not in the protected class was treated more favorably than Evans was treated. See, e.g., Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006). If he establishes a prima facie case, the burden of production shifts to the Debtors "to articulate some legitimate non-discriminatory reason" for their actions. Id. Evans would bear the burden of proving pretext. Id.

13. Evans cannot establish the second or fourth elements of his prima facie case. Evans repeatedly failed to meet the Debtors' legitimate performance expectations. The Debtors used two different performance improvement vehicles to document and attempt to solve Evans' performance problems. Evans failed to meet the requirements of either plan. Evans cannot demonstrate that any similarly-situated employee over the age of 40 or employee of another race had the same performance problems he did and received different treatment from the Debtors.

14. Even if Evans could establish a prima facie case of discrimination, the Debtors would still prevail because Evans has no evidence of pretext. The Debtors gave Evans every opportunity, over a period of more than a year, to improve his performance. Despite the fact that the Debtors carefully articulated what improvements were needed, Evans did not improve. A recognition award rather than a base pay increase and, finally, a demotion were

more than justified. Neither Evans' race nor his age influenced the Debtors' decisions, and he cannot prove otherwise. Evans is therefore not entitled to any form of monetary relief for his discrimination claims.

B. Evans Cannot Prove Retaliation

15. Evans seeks to demonstrate retaliation using a direct method of proof. To do so, he would need to demonstrate (a) a statutorily protected activity; (b) an adverse action; and (c) a causal connection between the two. Burks v. Wisconsin Dept. of Transportation, 464 F.2d 744, 758 (7th Cir. 2006). However, "speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation . . .. Indeed, the mere fact that one event preceded another does nothing to prove that the first event caused, the plaintiff also must put forth other evidence that reasonably suggests that [his] protected . . . activities were related to [his] employer's discrimination and termination." Id at 759 (internal quotations and citations omitted).

16. Evans' late October 2004 complaint to human resources about Hamilton was arguably protected activity. Even then, however, he had no evidence suggesting that his disagreements with Hamilton were over anything other than work-related issues. The Debtors explored the allegations, and found nothing suggesting race discrimination. Evans never mentioned age discrimination. The demotion occurred in accord with the normal PIP process, its relative closeness in time to Evans' complaint to human resources is not evidence of retaliation. There was no retaliation and the Claim is thus without merit.

C. The Automatic Stay Should Not Be Lifted

17. Evans includes in his Response a request for relief from the automatic stay provisions of section 362 of the Bankruptcy Code. Evans' request for stay relief is procedurally

improper, as such relief must be sought by a separate motion that is properly noticed for hearing in accordance with the case management procedures adopted in these chapter 11 cases. As such, the request for relief from the automatic stay should be denied without further consideration.

18. Even if this Court were to consider Evans' procedurally-improper request for relief from the automatic stay, such request is without merit. A tort claim for a statutory violation of a anti-discrimination law does not constitute a "personal injury tort" under 28 U.S.C. § 157(b)(5) because a claim for a tort without trauma or bodily injury is not within the statutory exception for a personal injury tort. As such, employment discrimination does not constitute a personal injury tort under 28 U.S.C. § 157(b)(5), and this Court is not precluded from adjudicating the merits of the Claim.

19. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. Evans has failed to meet his burden making even an initial showing of cause and the request for relief from the automatic stay should therefore be denied. Further, even if Evans had made a sufficient initial showing, application of the twelve-factor test generally applied in the Second Circuit in evaluating the propriety of a request for relief from the automatic stay strongly favors denial of Evans' requested relief. See Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990).

Reservation Of Rights

20. This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) expunging and disallowing the Claim, and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
January 3, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti.
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession