**Hearing Date: March 1, 2007**
                                                    **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

                    **DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT
                    <u>TO PROOF OF CLAIM NUMBER 5119 (HAROLD WOODSON)</u>**

                         ("STATEMENT OF DISPUTED ISSUES – HAROLD WOODSON ")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Statement of Disputed Issues (the "Statement of Disputed Issues") With Respect To Proof Of Claim Number 5119 (the "Proof of Claim") filed by Harold Woodson ("Woodson"), and respectfully represent as follows:

Background

1. Woodson filed the Proof of Claim on or about May 8, 2006. The Proof of Claim asserts an unsecured nonpriority claim in an unliquidated amount based on an alleged civil rights violation by the Debtors (the "Claim").

2. The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

3. On November 21, 2006, Woodson filed the Claimant, Harold Woodson's, Brief In Opposition To Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5928) (the "Response"). The Response asserts that the Claim arises from a lawsuit filed against the Debtors in which Woodson asserts that the Debtors violated his civil rights.

Disputed Issues

4.  Woodson is African American. He was 53 years old when deposed in May 2005. Woodson claims under Michigan law that the Debtors discriminated against him on the basis of his race when the Debtors selected for job vacancies candidates other than Woodson. Woodson seeks both (a) economic damages measured by the difference between the compensation and benefits earned in his current employment and that which he would have earned had he been promoted, and (b) non-economic damages.

5.  Woodson began his employment with General Motors Corporation at AC Spark Plug in Flint, Michigan on January 15, 1974, in a management training program. On August 1, 1974, upon completion of that program, Woodson became a sixth level supervisor; he was still a sixth level supervisor in production when deposed. Although Woodson has held a number of different supervisory positions, some in inspection and some in production, the Debtors never permanently promoted Woodson beyond the sixth level. Woodson did serve as a temporary seventh level general supervisor in the fabrication area for several months in 2002.

6.  In April 2002, Woodson applied for a seventh level job titled "General Supervisor—Operations—Injection Molding." The Debtors' superintendent for fabrication at the Debtors' Flint East Plant 2 ("JG") rejected Woodson's application because Woodson had no "factory management council" ("FMC") training. The successful candidate ("AB"), an African-American who transferred from another plant in Saginaw, had that training.

7.  Woodson acknowledges that he had no FMC training at the time he interviewed for the job. Woodson acknowledges further that, according to his understanding, AB had FMC training when selected for the job.

3

8. In April 2002, Woodson applied for a seventh level job titled "General Supervisor—Operations" in the electric fuel pumps division. The Debtors' superintendent for assembly at the Debtors' Flint East Plant 2 rejected Woodson's application because Woodson had no FMC training and because the successful applicant ("DL"), who transferred from the Debtors' AC Spark Plug West facility in Flint, had that training, and because DL, but not Woodson, had assembly experience.

9. Woodson acknowledges that he had no FMC training at the time he was interviewed for the job. Woodson acknowledges further that, according to his understanding, DL had FMC training when selected for the job.

10. In September 2002, Woodson applied for a seventh level job titled "General Supervisor—Operations" in the Debtors' plastics division. The Debtors' superintendent for assembly at the Debtors' Flint East Plant 2 ("CA") rejected Woodson's application because the successful applicant ("AS"), in contrast to Woodson, at the job interview demonstrated full familiarity with the Debtors' Delphi Manufacturing System ("DMS") and presented specific ideas about the manner in which AS would apply DMS principles at the plant. CA, who at the time had conducted "a couple hundred" interviews during his career, was sufficiently impressed with AS's interview that CA described that interview as the best in which he had ever participated.

11. In August 2003, Woodson applied for a seventh level job titled "General Supervisor—Operations" in the Debtors' plastics division. JG, then the Debtors' superintendent for fabrication in the Debtors' Flint East Plant 2, rejected Woodson's application because the successful candidate was a seventh level supervisor at one of the Debtors' injection molding

4

plant, and the Debtors' preference was to laterally move an applicant into a job vacancy, rather than to promote a candidate.

12. In May 2003, Woodson applied for a job titled "Senior Supervisor Quality Network" and in June 2003 applied for a job titled "Senior Salaried Personnel Representative." The Debtors rejected Mr. Woodson's application because Mr. Woodson had no human resources experience. The successful applicants for the two jobs did have human resources experience at the time the Debtors selected them for the jobs.

13. Woodson acknowledges that he had no human resources experience at the time the Debtors filled the Quality Network and Salaried Personnel Representative job vacancies.

14. Woodson has a claim against the Debtors only if Woodson can demonstrate that the Debtors' managers selected persons other than Woodson for job vacancies because of Woodson's race. The Debtors have demonstrated that the Debtors' managers had legitimate business reasons for their decisions to select for job vacancies persons other than Woodson. Woodson, as a result, cannot prevail against the Debtors on his claims of race discrimination. Thus, the Claim should be disallowed and expunged.

## Reservation of Rights

15. This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional

legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       January 3, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP

                                        By: /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 4951)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois  60606
                                        (312) 407-0700

                                        - and -

                                        By: /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York  10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession