**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
           mitchell.seider@lw.com
           mark.broude@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d)
EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH
TO FILE AND SOLICIT ACCEPTANCES OF REORGANIZATION PLAN**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (the "Debtors"), by and through its counsel, hereby files this objection (this "Objection") to the *Motion for Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which to File and Solicit Acceptances of Reorganization Plan* (the "Motion"). In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      By the Motion, the Debtors have asked this Court to approve another nearly six-month extension of their exclusive periods within which to file, and solicit acceptances of, a chapter 11 plan of reorganization – to July 31, 2007 and to September 30, 2007, respectively. The Committee believes that this lengthy proposed extension is inappropriate, given that the Debtors already have received two six-month extensions of their original exclusive periods and still have not achieved a plan framework that is acceptable to most of their major stakeholders. Indeed, the Debtors admit in the Motion that in the fourteen months since their chapter 11 filing they still have not reached agreements with their U.S. labor unions and General Motors Corporation ("GM").[1]  Moreover, the Debtors have failed to reach agreements with the Committee, the official committee of equity security holders (the "Equity Committee"), an ad hoc committee of trade claim holders (the "Ad Hoc Trade Committee") or any other major constituency regarding a proposed reorganization plan.

2.      Instead of using the ample time in which they had the exclusive right to file and solicit acceptances of a plan to negotiate a comprehensive restructuring deal that is satisfactory to their constituencies, the Debtors have proposed a transaction (the "Proposed Transaction") with certain potential third party plan investors containing terms that are objectionable to nearly all of these constituencies.[2]  Indeed, so far the Committee, the Equity Committee, the Ad Hoc Trade Committee, the IUE-CWA, the International Union of Operating Engineers Local Union Nos. 18S, 101S and 832S, the International Brotherhood of Electrical Workers Local 663 and the International Association of Machinists and Aerospace Workers District 10, the United States

---

[1] *See* Motion ¶ 36.

[2] *See* Expedited Motion for Order Authorizing and Approving the Equity Purchase and Commitment Agreement Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code and the Plan Framework Support Agreement Pursuant to Sections 105(a), 363(b) and 1125(e) of the Bankruptcy Code (Docket No. 6179).

2

NY\1226430.4

Trustee, and Highland Capital Management, LP and certain of its affiliates ("Highland Capital") each have filed objections to the Debtors' motion for an order approving the Proposed Transaction. Other parties may file objections in the future. While the Committee finds certain terms of the Proposed Transaction highly objectionable, it remains hopeful that its objections will be resolved.

3. The Committee will consent to a 60-day extension of the periods in which the Debtors have the exclusive right (a) to file a plan of reorganization, through April 2, 2007 and (b) to solicit acceptances for such plan, through June 1, 2007. The Committee believes that an extension of this length is warranted because GM already has obligated itself to support the Proposed Transaction until April 2, 2007, and because the terms of the Proposed Transaction are still capable of being revised so as to be acceptable to the Committee. However, the Committee believes that any longer extension would be excessive.

## BACKGROUND

4. On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

5. The Committee was appointed nine days after the Petition Date, on October 17, 2005.[3] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker.

---

[3] The following members originally were appointed to the Committee: (a) Capital Research and Management Company; (b) Electronic Data Systems Corp.; (c) Flextronics International Asia-Pacific, Ltd.; (d) Freescale Semiconductor, Inc.; (e) General Electric Company; (f) IUE-CWA and (g) Wilmington Trust Company, as Indenture Trustee. Flextronics International Asia-Pacific, Ltd. has resigned from the Committee, and Tyco Electronics Corporation has since been appointed to the Committee. The Pension Benefit Guaranty Corporation and the UAW have been added as *ex officio* members of the Committee.

3

NY\1226430.4

6. On January 6, 2006, this Court entered an order extending the Debtors' exclusive periods for (a) filing a plan of reorganization to and including August 5, 2006 and (b) soliciting acceptances of such plan of reorganization to and including October 4, 2006. On June 19, 2006, this Court entered an order further extending the Debtors' exclusive periods for (a) filing a plan of reorganization to and including February 1, 2007 and (b) soliciting acceptances of such plan of reorganization to and including April 2, 2007. The Committee did not oppose either of these extensions under the circumstances that existed at the time the Debtors sought such relief.

7. On July 28, 2006, the Committee filed a motion for an order granting it standing to pursue the Debtors' estates' claims and defenses against GM (the "STN Motion"). Shortly after the STN Motion was filed, GM and a subcommittee of the Committee (the "GM Subcommittee") commenced bilateral discussions regarding the Committee's assertions against GM, as well as GM's role in the Debtors' transformation efforts. GM and the GM Subcommittee made meaningful progress in these negotiations, and the parties even were close to reaching an agreement on an outline of a standalone reorganization plan that in many circumstances would have provided the Debtors' unsecured creditors a 100% recovery on account of their claims plus accrued prepetition and postpetition interest, without the involvement of any third party plan investors.[4]

8. After discussions between GM and the GM Subcommittee began to bear fruit without the Debtors' involvement, the Debtors summoned the GM Subcommittee, GM and a subcommittee of the Equity Committee to meet to discuss a "framework" for a plan of

---

[4] The Debtors' assertion that a 100% recovery for unsecured creditors can only be produced with the participation of a third party plan investor is demonstrably false. The 100% recovery for unsecured creditors is achieved through contributions from GM in a settlement of the estates' claims and defenses against GM. The Debtors obfuscate the distinction between a 100% recovery for unsecured creditors through either a voluntary contribution from GM or a judgment in rde estates' favor against GM, and the cash component of such a recovery.

4

NY\1226430.4

reorganization. The Debtors also convened their own private meetings with parties whom the Debtors unilaterally determined would be interested in purchasing equity in the reorganized Debtors. The Debtors brought the parties they deemed worthy of being "potential plan investors" into meetings with the Debtors, GM, the GM Subcommittee and the subcommittee of the Equity Committee. The Debtors ultimately favored a plan investment proposal extended by (a) a group of investors led by Appaloosa Management L.P. and (b) Cerberus Capital Management L.P. (the "Proposed Investors"), even though the Committee and the Equity Committee immediately and consistently expressed strong objections to numerous terms of the Proposed Transaction.

9. The Debtors ignored the statutory committees' objections, asserting simply that their Board of Directors had decided to support the Proposed Transaction. In addition, since the middle of November, the Debtors for the most part have refused to include the Committee and the Equity Committee in their discussions with GM and the Proposed Investors regarding the terms of the Proposed Transaction. Instead, the Committee and the Equity Committee were only given the opportunity to provide written comments to drafts of the operative documents of the Proposed Transaction, and the Debtors refused to accept most of those comments.

10. On December 18, 2006, the Debtors filed a motion (the "Plan Investment Motion") seeking an order (a) approving and authorizing them to enter into that certain Equity Purchase and Commitment Agreement among Delphi Corporation, A-D Acquisition Holdings, LLC, Harbinger Del-Auto Investment Company, Ltd., Dolce Investments LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated and UBS Securities LLC, (b) authorizing them to pay certain fees to the Proposed Investors and (c) approving and authorizing them to enter into that certain Plan Framework Support Agreement among Delphi Corporation, GM, Appaloosa

5

Management L.P., Cerberus Capital Management, L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Incorporated and UBS Securities LLC.

11.     On December 19, 2006, the Committee filed a preliminary objection, in which it outlined its objections to the Plan Investment Motion in summary fashion and reserved the right to file one or more supplemental objections. Thereafter, the Equity Committee, the Ad Hoc Trade Committee, the IUE-CWA, the International Union of Operating Engineers Local Union Nos. 18S, 101S and 832S, the International Brotherhood of Electrical Workers Local 663 and the International Association of Machinists and Aerospace Workers District 10, the United States Trustee, and Highland Capital each filed objections to the Plan Investment Motion. The hearing to consider the Plan Investment Motion and the objections thereto currently is scheduled for January 11, 2007.

12.     On December 21, 2006, Highland Capital announced that it sent a letter to the board of directors of Delphi Corporation that outlines its opposition to the Proposed Transaction and that offers an alternative proposal. In its proposal, Highland Capital refers to several of the infirmities with the Proposed Transaction that the Committee and the Equity Committee highlighted in their objections to the Plan Investment Motion, and states that its proposal does not contain those infirmities. The Debtors have acknowledged receipt of Highland Capital's proposal but, to the Committee's knowledge, they have not yet responded to it.

# OBJECTION

## I. Legal Standard for Extending the Exclusive Periods

13. Section 1121(d) of the Bankruptcy Code, as applicable to the Debtors' chapter 11 cases, provides:[5] "[o]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, *the court may for cause* reduce or increase the 120-day period or 180-day period referred to in this section." 11 U.S.C. § 1121(d) (emphasis added). Section 1121 of the Bankruptcy Code represents a departure from the procedure under the former Bankruptcy Act where only the debtor could file a plan. The policy goal reflected in section 1121 of the Bankruptcy Code, in allowing other interested parties to file a plan of reorganization after the expiration of the debtor's exclusivity period, was predicated on the theory that there should be a relative balance of negotiating strength between debtors and creditors during the reorganization process. *See, e.g.*, *In re Texaco, Inc.*, 76 B.R. 322, 325-26 (Bankr. S.D.N.Y. 1987) citing *Teachers Insurance and Annuity Association of America v. Lake In The Woods (In re Lake In the Woods)*, 10 B.R. 338, 343 (E.D. Mich. 1981).

14. The burden of demonstrating cause rests with the party seeking the extension, and a "debtor must make a clear showing of 'cause' to support an extension of the exclusivity period." *In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992); *see also In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). The mere recitations of allegations deemed by a debtor to constitute cause for an extension of the exclusive periods is insufficient to allow such an extension. *See In re Ravenna Indus., Inc.*, 20 B.R. 886, 889 (Bankr. N.D. Ohio 1982).

---

[5] These chapter 11 cases are not subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Thus, these cases are not subject to the 18-month and 20-month limitations on plan filing and solicitation exclusivity.

7

NY\1226430.4

15. Section 1121(d) of the Bankruptcy Code does not define or indicate factors that should be utilized in determining "cause." Whether or not the debtors have established cause is a question committed to the sound discretion of the bankruptcy court. *See, e.g.*, *Texaco*, 76 B.R. at 325; *All Seasons*, 121 B.R. at 1004 (citing *Gibson & Cushman*, 101 B.R. at 409); *In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987) (stating that "the court is granted broad discretion to determine what is sufficient cause in each individual case."). Some factors that courts have found relevant to the determination of whether cause exists are:

- the size and complexity of the debtor's case;
- the existence of good faith progress toward reorganization;
- whether the debtor is seeking to extend exclusivity to pressure creditors to accede to its reorganization demands;
- existence of an unresolved contingency; and
- the length of previous extensions of exclusivity.

*See, e.g.*, *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

16. Courts have noted that "a request to either extend or reduce the period of exclusivity is a serious matter. Such a motion should be granted neither routinely nor cavalierly." *All Seasons*, 121 B.R. at 1004, citing *McLean*, 87 B.R. at 834; *see also In re Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987) (stating that "[a] court considering a motion to extend the 120-day period … should not routinely grant an extension. It should act only where cause is shown."). Section 1121 of the Bankruptcy Code was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors. *See, e.g.*, *United States Savs. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd* 484 U.S. 365 (1988). Specifically, courts will not routinely extend the

8

exclusive periods absent a showing of "cause" when creditors object to a request for an extension. These courts have noted that an extension should not be employed as a tactical device to put pressure on creditors to yield to a plan that they might consider unsatisfactory. *See, e.g.*, *Gibson & Cushman*, 101 B.R. at 409; *Curry*, 148 B.R. at 756. Even if the court is satisfied that sufficient cause may exist, it may still deny an extension of the exclusive periods. This may occur where, although a debtor seeking reorganization is unusually large, the debtor has delayed in arriving at an agreement or is attempting to pressure other parties to yield to a position which is necessarily prejudicial. *See, e.g.*, *Sharon Steel*, 78 B.R. at 765.

## II. The Debtors Should Not Be Granted an Extension of the Exclusive Periods of More Than 60 Days

17. In support of their request for a third six-month extension of their exclusive periods, the Debtors recite certain boilerplate factors typically cited by chapter 11 debtors to justify extensions. For example, they (a) note the size and complexity of their cases, (b) allege that they making good faith progress toward the development of a viable plan, (c) deny their use of exclusivity to coerce other parties in interest and (d) tout their practice of making required postpetition payments as they come due. As described herein, the Debtors' conclusory allegations that they are making good faith progress toward the development of a viable plan and that they are not using exclusivity to coerce other parties in interest are dubious. Moreover, while the Committee does not quibble with the assertions that the Debtors' cases are large and complex and that they are making required postpetition payments as they come due, these factors simply do not justify the long extension of the exclusive period that the Debtors request.

18. The facts present in these cases demonstrate that cause does not exist to grant the Debtors another six-month extension of the exclusive periods. In support of their request, the Debtors assert that the recent plan framework support agreement with the Proposed Investors

9

NY\1226430.4

creates a "springboard from which the Debtors, GM and the unions should be able to reach consensus on all remaining issues."[6] However, the Debtors have made little or no meaningful progress in negotiations with their labor unions since March 2006, before they filed their motions under sections 1113 and 1114 of the Bankruptcy Code.[7] The Debtors also fail to mention that their labor unions, the Committee, the Equity Committee and the Ad Hoc Trade Committee have not agreed to the terms of the Proposed Transaction. Here, the Debtors have ignored the meaningful concerns of their unions and the statutory representatives of their unsecured creditors and stockholders, for the benefit of potential investors who offer capital that is not necessarily needed for the Debtors' reorganization.[8] At the same time, the Debtors have requested an extension of the exclusive periods so that they can prevent their unsecured creditors and stockholders from protecting their claims and interests by pursuing an alternative plan.

19.  To date, the Debtors have had more than fourteen months to negotiate a plan framework that is acceptable to all of their major constituents, but they have failed to do so. Instead, the Debtors have resolved to support the Proposed Transaction that a number of parties, including the Committee, find objectionable.[9] The Debtors largely have ignored the Committee's concerns with the terms of the Proposed Transaction, and for the most part have decided not to include the Committee in their discussions with the Proposed Investors and GM

---

[6] Motion ¶¶ 25, 41.

[7] If the Debtors have made any meaningful progress in these negotiations, they have not communicated that fact to the Committee.

[8] *See* ¶ 7, *supra*.

[9] As noted in its objection to the Plan Investment Motion, the Committee's principal objections to the Proposed Transaction include: (a) the payment of commitment fees to the Proposed Investors when they have nothing at risk, (b) the payment of an alternate transaction fee to the Proposed Investors in certain circumstances, (c) certain terms of the Proposed Transaction, including the extraordinarily broad corporate governance powers to be granted to the new money investors, in their capacity as holders of a series of convertible preferred stock to be issued by reorganized Delphi, are unacceptable, (d) the lack of Committee input and consent rights with respect to any of the transaction documents and (e) the Debtors' indemnification obligations to the new money investors. The Committee likely will elaborate on these objections and others in a supplemental objection to the Plan Investment Motion.

10

NY\1226430.4

since the middle of November. The Debtors also have refused to incorporate most of the Committee's and the Equity Committee's comments to the operative transaction documents. There is very little indication by way of the Debtors' past behavior and actions that a lengthy extension of the exclusive periods would help to achieve a consensual, viable plan that is acceptable to the Committee and other parties.

20.     Another principal justification for the Debtors' request for an extension of the exclusive periods is "their decision" to commence the "framework discussions." However, it should be noted that no serious plan-related discussions had occurred until after the Committee filed the STN Motion. Prior to that time, there had been no discussions between GM and the Committee about GM's role in the Debtors' transformation efforts, and the Debtors steadfastly had refused to assert their estates' claims and defenses against GM either through negotiation or litigation. Indeed, the Committee believes that there might have been no "framework discussions" among the Debtors' principal stakeholders unless they had filed the STN Motion. As such, these framework discussions did not commence because of the Debtors' actions or their desire to achieve a consensual reorganization plan, but rather they commenced because of the Committee's actions. In addition, after the STN Motion was filed, GM and the GM Subcommittee came close to reaching an agreement (without the Debtors' involvement) on an outline of a standalone reorganization plan that in many circumstances would have provided the Debtors' unsecured creditors a 100% recovery on account of their claims plus accrued prepetition and postpetition interest, without the involvement of any third party plan investor.

21.     The Debtors also fail to mention in the Motion that the time in which they must reach agreements with their labor unions and GM is very short. In fact, the Proposed Investors are entitled to terminate the Proposed Transaction if the Debtors (a) do not enter into tentative

11

labor agreements with the UAW, the IUE-CWA and the USW by January 31, 2007 or (b) do not reach a settlement with GM by January 31, 2007, each with terms satisfactory to the Proposed Investors in their sole discretion.[10] The Debtors note in the Motion that the outstanding issues with these parties are "significant for both their magnitude and complexity,"[11] but they have never explained to the Committee how they plan to resolve each and every one of these issues in less than one month on terms that are satisfactory to the Proposed Investors in their sole discretion. If (a) the Debtors fail to reach these agreements with the labor unions and GM by January 31, 2007, (b) the Proposed Investors terminate the Proposed Transaction and (c) the Motion is granted, then the Debtors still would have the exclusive right to file a plan for up to *six months* after the Proposed Investors walk away. The Debtors simply have not demonstrated cause to grant such a long extension of the exclusive periods under these circumstances. With a 60-day extension of the exclusive periods, the Debtors would be compelled to negotiate with their statutory committees and other constituencies in good faith.

22.   The Committee further believes that any extension of the Debtors' exclusive periods must be short, in light of the plan investment proposal that the Debtors recently received from Highland Capital and any proposals they may receive from other parties in the future. Highland Capital's proposal appears to be serious and it should be analyzed fully. However, it is not clear to the Committee whether the Debtors will undertake a complete analysis of Highland Capital's proposal, given that they already have decided to support the Proposed Transaction. As the Debtors' co-fiduciary to the unsecured creditor body, the Committee must have all of the tools at their disposal to ensure that any plan investment transaction the Debtors ultimately

---

[10] *See* Equity Purchase and Commitment Agreement §§ 12(g), 22.

[11] Motion ¶ 36.

accept would provide the best outcome for unsecured creditors.  These tools include the right to file a competing plan of reorganization, if necessary.  The Committee cannot serve its fiduciary function to the greatest extent when the Debtors are granted long extensions of their exclusive periods in these circumstances.  The balance of negotiating strength currently is skewed too heavily in favor of the Debtors, and real balance must be restored.

**WHEREFORE,** the Committee respectfully requests that this Court (a) grant the Debtors at most a 60-day extension of their current exclusive periods to file, and solicit acceptances for, a plan of reorganization and (b) grant the Committee such other relief as is just and proper.

Dated:  January 4, 2007
         New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Mitchell A. Seider (MS-4321)
    Mark A. Broude (MB-1902)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone:  (212) 906-1200

Counsel for the Official Committee
of Unsecured Creditors

13

NY\1226430.4