**Hearing Date: January 12, 2007**
                               **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
     In re                                     :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                              :
                                              :      (Jointly Administered)
                    Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' (1) OBJECTION TO CADENCE INNOVATIONS LLC'S MOTION FOR
RELIEF FROM AUTOMATIC STAY TO PROCEED WITH PATENT LITIGATION
AGAINST DEBTORS, AND (2) RESPONSE TO CADENCE INNOVATIONS LLC'S
APPLICATION PURSUANT TO 11 U.S.C. § 503 FOR ALLOWANCE AND
<u>PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection and response (the "Objection") to Cadence Innovations LLC's ("Cadence") (1) Motion For Relief From The Automatic Stay To Proceed With Its Patent Litigation Against The Debtors, dated November 22, 2006 (the "Lift Stay Motion") (Docket No. 5777), and (2) Application Pursuant To 11 U.S.C. § 503, For Allowance And Payment Of An Administrative Expense Claim, dated November 22, 2006 (the "503 Application" and together with the Lift Stay Motion, the "Motions") (Docket No. 5774), and respectfully represent as follows:

Preliminary Statement

1.    Cadence seeks stay relief merely to continue its prepetition patent litigation (the "Litigation") to establish liability on its unliquidated and disputed prepetition general unsecured patent infringement claim (the "Unsecured Claim") that purportedly exceeds $21 million.  Cadence also seeks to pursue the Litigation to establish liability on its unliquidated and disputed postpetition administrative patent infringement claim (the "Administrative Claim" and, together with the Unsecured Claim, the "Claim")[1]

---

[1]   On July 20, 2006, Cadence filed identical proofs of claim in each of the Debtors' cases (proof of claim nos. 10074, 10077, 10078, 10079, 10080, 10081, 10082, 10083, 10084, 10085, 10086, 10087, 10088, 10089, 10090, 10091, 10092, 10093, 10094, 10095, 10096, 10097, 10098, 10099, 10100, 10101, 10102, 10103, 10104, 10105, 10106, 10107, 10108, 10109, 10110, 10111, 10112, 10113, 10114, 10115, 10116, and 10117).  On October 31, 2006, the Debtors submitted their Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (I) Equity Claims, (II) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (III) Duplicate And Amended Claims (the "Second Omnibus Claims Objection") (Docket No. 5451), objecting to all of the Claims against Debtors, other than Delphi Automotive Systems Corp., as duplicative.  On the same date, the Debtors also filed their (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (the "Third Omnibus Claims Objection") (Docket No. 5452), objecting to the Claims as either not supported or not on the Debtors' books and records.

that Cadence asserts is likely to exceed $4 million. The Court should deny the Lift Stay Motion. Among other reasons, this litigation has been going on for more than six years and is likely to continue for another year or two—if not more. The limited delay caused by these chapter 11 cases—especially in light of the Debtors' progress and targeted emergence in the first half of 2007—does not and could not possibly satisfy cause sufficient to lift the automatic stay.

2.    Indeed, Cadence's own 14-month delay in bringing these Motions is, by itself, a tacit admission that there will be little prejudice in waiting for Cadence's claim to be liquidated following emergence. The Lift Stay Motion reveals no change in circumstances other than Cadence's desire to have its Claim determined ahead of other creditors, at a time and in a forum of its choosing. This would be particularly unfair in light of the claims resolution procedures (the "Claims Procedures") recently approved by the Court to govern the orderly administration of more than 16,000 claims that have been filed in these cases. Despite the fact that Cadence requested to opt out of the Claims Procedures, this maneuver should not give Cadence license to jump ahead of all other creditors that are subject to the Claims Procedures. It is exactly this type of conduct that runs contrary to the policy behind the automatic stay.

3.    In addition, the Debtors and its management are focused on their reorganization, as evidenced by the recent filing of the Debtors' Expedited Motion For Order Authorizing And Approving The Equity Purchase And Commitment Agreement Pursuant To Sections 105(a), 363(b), 503(b), And 507(a) Of The Bankruptcy Code And The Plan Framework Support Agreement Pursuant To Sections 105(a), 363(b), And 1125(e) Of The Bankruptcy Code (the "Plan Investment And Framework Support

Approval Motion") (Docket No. 6179). Three days after the Plan Investment And Framework Support Approval Motion was filed, on December 21, 2006, Highland Capital Management, L.P. ("Highland Capital") made an unsolicited proposal, which in Highland's view represents up to a $4.7 billion equity commitment. In accordance with their fiduciary obligation to maximize values for all stakeholders, the Debtors have begun evaluating the Highland Capital proposal. Now is not the time for the Debtors to be unnecessarily distracted by the Cadence Litigation.

4. Furthermore, although Cadence gives short shrift to the Debtors' lack of insurance to cover this matter, this lack of insurance is an important fact that should be considered here. Even if Cadence prevails in its Litigation (which the Debtors think is unlikely), there would be no insurance proceeds available with which to pay Cadence.

5. Finally, the 503 Application should be denied because it is simply premature. Cadence's Claim is still disputed <u>and</u> unliquidated and is likely to remain so for at least one or two or more years. Cadence should be permitted to seek such relief only after its Claim is liquidated. Even then, this Court has discretion regarding when administrative claims are to be paid. At this time, it is a waste of the Court's resources to adjudicate the 503 Motion.

<u>Background</u>

6. On December 15, 1999, Cadence's predecessor in interest, Patent Holding Company ("PHC"), commenced the Litigation against Delphi Automotive Systems Corp. ("Delphi") in the District Court for the Eastern District of Michigan, Southern Division (the "District Court") (Case No. 99-76013), asserting damages for

Delphi's alleged infringement of three patents (the "Patents") related to the design of certain automotive airbag covers (the "Airbag Covers").[2]

7. As Cadence states in its Motions, on August 6, 2004, after bifurcating the Litigation into liability and damages phases, the District Court issued its Memorandum And Order On Claim Construction (the "Memorandum") (attached hereto as "Exhibit A") accepting several of Cadence's recommendations on claim construction.[3] The Memorandum also contained several key rulings that favor Delphi's noninfringement defenses and undercut Cadence's patent claim, however. Delphi also believes that it possesses other strong defenses against Cadence's patent and damages claims.[4]

8. After mediation attempts in respect of the Litigation proved unsuccessful, but before the Debtors sought chapter 11 relief, the District Court set March 28, 2006 as the date upon which the parties were to submit a final pretrial order. Prior to the commencement of these chapter 11 cases, however, the parties had not yet begun discovery with respect to the damages phase of the Litigation and had not

---

[2] Cadence asserts that after PHC commenced the Litigation, on May 2, 2005, PHC assigned the Patents to Cadence. Cadence's name has not been substituted for PHC in the Litigation, but for ease of reference the Litigation is referred to as if Cadence had been the original owner of the Patents and the original plaintiff in the Litigation.

[3] Before a court can decide if a patent has been infringed, it must first interpret the meaning of disputed claim limitations with the patent claims. A court defines the meaning of the patent claims during the claim construction process (often called a "Markman" hearing). The determination of whether an accused product infringes a patent claim is an independent issue for the court or jury that follows the claim construction process after the close of discovery.

[4] The Debtors have asserted substantial patent invalidity and unenforceability defenses against each of Cadence's asserted Patents, success at trial on any of which would render one or more of Cadence's Patents invalid or unenforceable and thereby defeat Cadence's asserted patent infringement claims. Furthermore, Cadence fails to mention that the District Court ruled, in its November 19, 2003 Order Granting Summary Judgment Of Non-Liability For Acts Of Patent Infringement Committed By General Motors Corporation Prior To January 1, 1999 (attached hereto as "Exhibit B"), that Delphi is not liable for any alleged infringement of the Patents that occurred prior to January 1, 1999. Accordingly, the Debtors submit that Cadence's assertion of its potential damages for alleged prepetition patent infringement are most likely substantially overstated.

completed discovery with regard to the liability phase. In addition, the parties had not yet filed substantive dispositive pre-trial motions addressing the parties' claims and defenses, which are commonly considered in patent cases.

9. To properly defend the estates against Cadence's Claim at trial, the Debtors would need to allocate resources that are otherwise being used in their restructuring efforts and claims resolution process. Indeed, the Debtors' in-house attorneys are involved in this suit, and most other litigation against the Debtors, and will continue to be involved, despite the retention of Quinn Emanuel Urquhart Oliver & Hedges, LLP as special litigation counsel for the Debtors. Continuation of this Litigation would be a distraction from the Debtors' focus on their reorganization and eventual emergence. Specifically, the Debtors are engaged in continuing progress to ensure a successful transaction with plan investors. Consummation and realization of a transaction with plan investors would facilitate, among other things, the inflow of significant investments to support the Debtors' transformation plan and plan of reorganization framework. The Debtors' ability to consummate a transaction with plan investors, however, is dependent upon the Debtors' successful and timely resolution of many obstacles to emergence, including: (a) achieving agreements with General Motors Corporation ("GM") and (b) reaching tentative labor agreements with certain of its unions located in the United States that would permit achievement of a transaction with plan investors. Any distraction at this time would be detrimental to all of the Debtors' stakeholders.

10. In addition, the deadline for creditors to file proofs of claim has passed and the Debtors are working steadily to liquidate and process the thousands of

6

claims subject to the Claims Procedures in a timely, orderly, and efficient manner.[5] To grant Cadence's request would allow Cadence to jump ahead of the line and have its claims liquidated ahead of other creditors. This would be unfair to the Debtors, their estates and other creditors at this critical juncture in the chapter 11 cases. Accordingly, Cadence's Motions should be denied.

Argument

I.      The Lift Stay Motion Should Be Denied

11.     The automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other things, give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000).

---

[5] Indeed, on December 7, 2006, this Court entered an Order (Docket No. 6089) approving the Debtors' Motion For Order Pursuant To 11 U.S.C. Sections 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (II) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (Docket No. 5939). Upon Cadence's objections to the Claims Procedures, the parties have agreed and the Order reflects that the Claims Procedures will not apply to Cadence's Claims. Nevertheless, the automatic stay should remain in place while the Debtors prosecute all claims objections.

12. The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operation. See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted).

13. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." While debtors still retain the exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) (emphasis added). As more fully described below, Cadence has failed to show sufficient, extraordinary cause to obtain relief from the automatic stay.

14. The lifting of the stay is committed to the sound discretion of the Court. In re Sonnax Indus., 907 F.2d 1280, 1288 (2d Cir. 1990). Because of the unstructured nature of the issues that are often contemplated in lift stay proceedings, certain courts, including the Second Circuit, have used a list of twelve factors when determining whether cause exists to modify or lift the automatic stay. The Second Circuit in Sonnax set forth the list of twelve factors that may be considered when

8

deciding whether the stay should be lifted to allow litigation against a Debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Sonnax Indus., 907 F.2d at 1286. See also In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors.  See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

15. As demonstrated below, as it pertains to the Litigation, Cadence has not, and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay.  "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief).

9

      A.      Lifting The Stay Would Unnecessarily Interfere
With The Debtors' Restructuring Efforts

      16.      The Debtors and their estates would be prejudiced if the automatic stay were modified now to permit the Litigation to proceed. As already stated, the Debtors are in the midst of navigating the many obstacles to emergence that must be timely resolved if the Debtors are to realize the benefits of a transaction with plan investors that, among other things, will provide billions of dollars in investments to support the Debtors' transformation plan and plan of reorganization framework.

      17.      Instead, Cadence seeks to force the Debtors to proceed with a potentially time-consuming and costly lawsuit. The Debtors' management and in-house legal team are in a critical period. The Debtors are parties to more than 200 active and threatened lawsuits across the country. If the automatic stay is lifted to allow Cadence to pursue its Litigation, this might encourage other parties with general unsecured litigation claims against the Debtors to seek similar relief, thereby forcing the Debtors to defend against numerous motions to modify the automatic stay. This has the potential of creating a situation where the Debtors' management and in-house legal team would be forced to expend time and resources to defend litigation rather than focus on the steps necessary for the Debtors to emerge from chapter 11. The Debtors' management should be allowed to focus intensely on the touchstone issues in these cases. Modification of the automatic stay at this crucial stage of these cases to allow Cadence to go forward is simply unwarranted.

      18.      Allowing Cadence to proceed with its Litigation at this time would distract the Debtors from these and other critical challenges facing them and will thus cause significant prejudice to the Debtors' estates. In re U.S. Brass Corp., 173 B.R. 1000,

1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); see In re Comdisco, 271 B.R. 273, 280 (Bankr. N.D. Ill. 2002) (finding that "it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization"). Denying Cadence's Lift Stay Motion is consistent with one of the purposes of the automatic stay, which is to allow the Debtors breathing space.

19. Indeed, the fundamental purpose of the stay imposed by section 362(a)(i) of the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the time and an opportunity "to attempt a repayment or reorganization plan." Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)); see, e.g., In re Enron Corp., 300 B.R. at 211 (finding that "'[t]he purpose of the automatic stay is to give the debtor a breathing spell from creditors'") (citations omitted). Bankruptcy Code section 362(a)(i), therefore, stays pending prepetition litigation to "avoid interference with the . . . rehabilitation of the debtor." Borman, 946 F.2d at 1036 (quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

    B.    **The Court Should Not Allow Cadence To Jump Ahead Of Other Creditors**

20. The Debtors should not be forced to divert their attention from their current endeavors to appease Cadence. Permitting Cadence to proceed with its Litigation at this time would be an improper preference of this creditor over all other

holders of disputed, unliquidated claims in these cases. As stated above, the Debtors have established the Claims Procedures to ensure an orderly reconciliation of all claims. Cadence's decision to opt out of the Claims Procedures does not give it the right to make an end-run around the claims reconciliation process. Cadence simply should not be allowed to cut in line ahead of other creditors. See, e.g., LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837; AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

        C.        The Debtors And Their Creditors Will Be Prejudiced Because The Debtors Do Not Have Insurance To Cover The Liability Asserted By Cadence

        21.        The Debtors have no insurance coverage for the Cadence Claims and thus, the continuation of the Litigation now will not benefit Cadence, but will directly affect the Debtors and their estates to the detriment of all other creditors. Even if Cadence were ultimately to prevail in its Litigation, all Cadence could possibly receive is an allowed claim against the Debtors' estates. Then, Cadence would again have to wait in line with all other similarly situated claimants because there are no insurance proceeds available to satisfy Cadence's Claim. All costs associated with defending the Litigation and any liability that might ultimately arise on account of the Litigation, however, would

be borne directly by the Debtors to the detriment of their stakeholders. As a result, the Debtors and their estates would be prejudiced if the automatic stay were modified to permit the Litigation to proceed at this point in these chapter 11 cases.

D. The Parties Are Not Ready For Trial

22. As stated above, the Litigation is not staged for trial. No discovery has been conducted with regard to the damages phase and the parties have not completed discovery with regard to the liability phase. Furthermore, neither party has filed substantive dispositive pre-trial motions. See In re Comdisco, 271 B.R. at 277-80 (denying motion to lift stay regarding securities class action in its early stages). The Debtors estimate that the Litigation cannot possibly be concluded before the end of 2008 and an appeal would likely delay the ultimate conclusion another year or two. Furthermore, the Debtors estimate that the costs of briefing and defending the Litigation will cost hundreds of thousands of dollars. The parties are not ready for trial and the Debtors should not now be forced to turn their attention to preparing to defend the Litigation.

E. The Balance Of Harms Weighs In The Favor Of The Debtors

23. The Debtors and their estates would be prejudiced if the automatic stay were modified to permit the Litigation to proceed at this point in these chapter 11 cases. Cadence has disregarded the continuing intensity of these cases. The Debtors should not be distracted at this time by prepetition litigation.

24. As stated above, allowing Cadence to proceed with the Litigation, would likely encourage other parties with general unsecured litigation claims against the Debtors to seek similar relief and potentially create a situation where the Debtors'

13

management and in-house legal team are being forced to expend time and resources to defend a multitude of lift stay actions or litigation, rather than focus on what is necessary to emerge from chapter 11.  In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).  Clearly, the purpose of the automatic stay is to allow the Debtors breathing space to avoid spending the Debtors' and the estates' time and resources on briefing and arguing a very significant matter to the Debtors.  See, e.g., In re U.S. Brass Corp., 173 B.R. 1000 (Bankr. E.D. Tex. 1994) (finding debtor would be prejudiced and denying motion to lift stay, reasoning that debtor's insurance coverage was in dispute and "even claims against Debtors' insurance impacts upon property of the estate and Debtor must expend its resources to some degree to defend even claims which are ultimately totally covered for payment by insurance.") (citing In re Metro Transp. Co., 82 B.R. 351, 354 (Bankr. E.D. Pa. 1988)).

25.     In addition, the Litigation will require management involvement and significant monetary resources to defend this matter.  Cadence seeks millions of dollars in damages from the Debtors and injunctive relief, potentially prohibiting Delphi from using important vehicle safety devices.  As stated above, briefing has not yet begun and the Debtors estimate the cost of briefing this Litigation and defending at the District Court will most likely cost hundreds of thousands of dollars.

26.     In stark contrast to the prejudice that the Debtors and the Debtors' other creditors similarly situated with Cadence would suffer if the Motion were granted,

Cadence cannot demonstrate that it would be prejudiced if the Motion were denied. In fact, the delay should not prejudice Cadence at all. Specifically, assuming the stay is not lifted, should the Debtors ultimately prevail at trial then Cadence is no worse off because the Debtors will not owe Cadence anything. Should Cadence ultimately prevail at trial, then once again the delay will not prejudice Cadence because Cadence would be entitled to a claim for damages, which will be accorded appropriate treatment under any plan of reorganization to be confirmed. Accordingly, the delay does not put Cadence in any worse position.

27.     Nevertheless, the Debtors recognize that this Court may not be the appropriate forum for ultimate liquidation of Cadence's claim, either because the District Court is a specialized tribunal or because judicial economy may be served by allowing the Litigation to be resolved in front of the District Court at a later point. Cadence has shown no prejudice that it has suffered during the past 14 months. Nor has Cadence demonstrated any prejudice that might arise between now and the resolution of its claim through an orderly claims reconciliation process. At most, Cadence would face only the ordinary delay that all creditors face in complex chapter 11 cases. See In re Comdisco, 271 B.R. at 277-80 (finding that "the automatic stay almost always delays litigants . . . [t]hat, after all, is its purpose, and the reason they call it a 'stay'").

II.    The 503 Motion Is Improper At This Time And Should Be Denied

28.     The 503 Motion seeks allowance of and administrative expense priority status under Bankruptcy Code section 503 for a disputed and unliquidated claim. Until the Claim is liquidated in this forum or another, however, the Claim is not ripe for allowance. Indeed, the very structure of the Bankruptcy Code makes it clear that

unliquidated claims do not fall under Bankruptcy Code section 503, but rather Bankruptcy Code section 502(c) instead, which deals specifically with unliquidated claims.[6]  The 503 Motion should be denied because Cadence's request is simply inappropriate at this time.

29.    The 503 Motion also requests that this Court make a determination that the Claim be paid by the Debtors immediately upon liquidation of the Claim. "Bankruptcy courts have broad discretion over the timing of payment of administrative expenses."  Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.), 161 B.R. 571, 575 (S.D.N.Y. 1993) (quoting In re Photo Promotion Associates, Inc., 881 F.2d 6, 8-9 (2d Cir. 1989)); see also In re TLI, Inc., 213 B.R. 946, 952 (N. D. Tex. 1997) (holding that bankruptcy courts have considerable discretion in addressing timing of post-confirmation administrative expense payments).  Furthermore, "often in Chapter 11 cases, administrative expenses are not required to be paid until confirmation."  In re Child World, Inc., 161 B.R. at 575 (quoting In re Appletree Markets Inc., 139 B.R. 417, 419 (Bankr. S.D. Tex. 1992)); see also In re HQ Global Holdings, Inc., 282 B.R. 169, 173-74 (Bankr. D. Del. 2002) (administrative expense claims may be deferred if subsequent events may moot such claims).  Even if it were likely that the Claim could be liquidated before the Debtors submit and obtain confirmation of a plan of reorganization, the Debtors should not have to pay the Claim until a plan is confirmed and the Claim is

---

[6]    Bankruptcy Code section 502(c) provides, in pertinent part, that:
There shall be estimated for purpose of allowance under this section—
(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
(2) any right to payment arising from a right to an equitable remedy for breach of performance.
11 U.S.C. § 502(c).

liquidated. Because the 503 Motion is premature, the Debtors request that the Court deny the 503 Motion.

## Conclusion

30.     For all of the reasons set forth above, the Motions should be denied.

## Notice

31.     Notice of this Objection has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006. The Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

32.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Lift Stay Motion in its entirety, (ii) denying the 503 Application in its entirety, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       January 4, 2007

                                          SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                        By: /s/ John Wm. Butler, Jr.
                                            John Wm. Butler, Jr. (JB 4711)
                                            John K. Lyons (JL 4951)
                                            Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                        - and -

                                        By: /s/ Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti (KM 9632)
                                            Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession