| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER<br>  &amp; FLOM LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr. (JB 4711)<br>John K. Lyons (JL 4951)<br>Ron E. Meisler (RM 3026) | SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br>Douglas P. Bartner (DB 2301)<br>Andrew V. Tenzer (AT 2263) |

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x<br>In re<br><br>DELPHI CORPORATION, et al.,<br><br>                           Debtors.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br>Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered)<br> |

DEBTORS' (I) REPLY TO LIMITED OBJECTION OF HOWARD
COUNTY, INDIANA TO DIP REFINANCING MOTION AND (II) SUMMARY OF
<u>MODIFICATIONS TO FORM OF ORDER AND CREDIT AGREEMENT</u>

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this reply (the "Reply") to the limited objection (the "Objection") of Howard County, Indiana ("Howard County") (Docket No. 6369) to the Motion for Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 6004(g) (I) Authorizing Debtors To Obtain Post-Petition Financing And (II) Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured Debt (the "Motion").  In addition, this Reply summarizes the resolution of various issues raised by certain interested parties, including the Existing DIP Lenders, Prepetition Secured Lenders, GM, Highland Capital Management, LP ("Highland"), and the Creditors' Committee.[1] The changes made to the proposed Order filed with the Motion (Docket No. 6180) are reflected in the marked proposed Order, a copy of which is attached hereto as <u>Exhibit A</u>.  Similarly, certain changes to the Replacement Credit Agreement previously filed with this Court on December 26, 2006 (Docket No. 6300) are reflected in the marked Replacement Credit Agreement, a copy of which is attached hereto as <u>Exhibit B</u>.  In further support of the Motion, the Debtors respectfully represent as follows:

       1.     The Debtors filed the Motion on December 18, 2006, seeking approval of an approximately $4.5 billion refinancing that will save the Debtors significant financing costs. The Debtors believe that this proposed refinancing is in the best interests of their estates and stakeholders.  Indeed, the savings generated by the refinancing would preserve additional value of the Debtors' estates and would enhance the ability of the Debtors to implement their transformation plan and to emerge from chapter 11 protection.  The fact that only one party (Howard County) of the nearly 500 served has objected – and that this Objection has been resolved – reflects overwhelming support for the Motion.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2

    2. <u>The Howard County Objection</u>.  The Objection by Howard County was based on the county's concern that its tax liens could be negatively affected by the refinancing.  This Objection was resolved when Howard County understood that the refinancing does not adversely affect, in any material respect, the current priority of Howard County's tax liens that secure outstanding tax claims against the Debtors relative to other liens.  Specifically, such tax liens will have the same priority relative to the first priority DIP liens as they currently have relative to the existing DIP liens, and will have the same priority relative to the Second Priority DIP Liens as they currently have relative to the liens held by the Prepetition Secured Lenders.

    3. <u>Changes To The Proposed Order</u>.  Moreover, since filing the Motion, the Debtors have engaged in constructive discussions with the counsel for certain parties-in-interest, including the Creditors' Committee, the Agent for the Existing DIP Lenders, the Agent for the Prepetition Secured Lenders, General Motors, and Highland, and have made various changes to the proposed Order based on those discussions.  One change of note is the increase to the carve-out under the proposed Order.  To address concerns based on the Debtors' undertaking to pay the Transaction Expenses of the Plan Investors, the Debtors and the Replacement DIP Lenders have agreed to increase the amount of the pre-default carve-out from $5 million to $10 million if the Court enters an order approving the Equity Commitment Purchase Agreement.   The Order was also changed by, among other things, adding language to paragraph 5(a) to make it clear that the Order preserves the relative priority between the new Tranche C term loan and the Setoff Claims (as defined in the proposed Order).  The proposed Order has also been revised by adding a new paragraph 10 and amending paragraph 11 to clarify that both the DIP Lenders and the Prepetition Secured Lenders will receive the fees, expenses, and indemnities to which they are entitled under their respective loan documents.  These and other changes are reflected in <u>Exhibit A</u>.

4. <u>Changes To The Replacement Credit Agreement</u>.  The Debtors have also amended the Replacement Credit Agreement that was filed on December 26, 2006.  The two significant changes to the Replacement Credit Agreement relate to the carve-out (as discussed above) and to provisions governing whether the Debtors can undergo a change of corporate control without being in default under the terms of the credit agreement.  The change of control provision contained in the Replacement Credit Agreement filed on December 26, 2006 provided that the Plan Investors' acquisition of a controlling stake in the Debtors would not constitute a default under the agreement, but that any other change of control would constitute a default.  To resolve issues raised by certain parties-in-interest, the section of the agreement which provided that the occurrence of a change in control solely as a result of any change in ownership of the stock of Delphi would trigger a default was deleted.  These changes to the Replacement Credit Agreement are reflected in <u>Exhibit B</u>.

5. The Debtors continue to believe, in their sound business judgment, that the refinancing is in the best interests of the Debtors' estates and stakeholders.  For the reasons set forth in this Reply and in the Motion, the Motion should be granted.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the Motion and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
January 4, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

- and –

SHEARMAN & STERLING LLP

By: /s/ Douglas P. Bartner
Douglas P. Bartner (DB 2301)
Andrew V. Tenzer (AT 2263)
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

5