UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
    In re                              :    Chapter 11
                                                         :
DELPHI CORPORATION, et al.,                              :    Case No. 05-44481 (RDD)
                                                         :
                Debtors.    :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 6004(g)(I)
AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND (II)
AUTHORIZING DEBTORS TO REFINANCE SECURED POST-PETITION
FINANCING AND PREPETITION SECURED DEBT

("DIP REFINANCING ORDER")

Upon the motion, dated December 18, 2006 (the "Motion"), of Delphi

Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an

order under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and

364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended and in

effect on October 8, 2005, et seq. (the "Bankruptcy Code"), and Rules 2002, 4001 and

6004(g) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

seeking, among other things:

        (1)  authorization for the Borrower to obtain post-petition

        financing (the "Financing") to refinance its existing debtor-in-possession

        financing and certain pre-petition indebtedness of the Borrower, and for

        all of the other Debtors (the "Guarantors") to guaranty the Borrower's

obligations in connection with the Financing, up to the aggregate principal

amount of $4,495,820,240.59 (the actual available principal amount at any

time being subject to those conditions set forth in the DIP Documents (as

defined below)), pursuant to a credit facility with JPMorgan Chase Bank,

N.A. ("JPMCB"), acting as Administrative Agent (in such capacity, the

"Agent") for itself and a syndicate of financial institutions (together with

JPMCB and including the fronting and issuing banks for the letters of

credit, the "DIP Lenders"), and Citicorp USA, Inc. ("CUSA") as

Syndication Agent for the First Priority Facilities (as defined below), J.P.

Morgan Securities Inc. ("JPMorgan"), Citigroup Global Markets, Inc. and

Deutsche Bank Securities Inc. as Joint Lead Arrangers for the First

Priority Facilities (the "First Priority Facilities Joint Lead Arrangers"), and

JPMorgan as sole Lead Arranger for the Tranche C Term Loan (as defined

below) (the "Tranche C Lead Arranger", and together with the First

Priority Facilities Joint Lead Arrangers, the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP

Documents and to perform such other and further acts as may be required

in connection with the DIP Documents;

(3)  the use of certain proceeds of the Financing to (a) irrevocably

repay in full all outstanding loans under that certain Third Amended and

Restated Credit Agreement, dated as of June 14, 2005 (as heretofore

amended, supplemented or otherwise modified, the "Pre-Petition Credit

Agreement" and, together with the mortgages and all other documentation

2

executed in connection therewith, the "Existing Pre-Petition Facility

Documents"), among the Borrower, the several lenders from time to time

party thereto (the "Pre-Petition Secured Lenders"), and JPMCB, as

administrative agent for the Pre-Petition Secured Lenders (in such

capacity, the "Pre-Petition Agent") (such repayment in full referred to

herein as the "Pre-Petition Facility Refinancing"), the authorization of

which constitutes an "Extraordinary Provision" under General Order No.

M-274 of the United States Bankruptcy Court for the Southern District of

New York (the "General Order"), and (b) irrevocably repay in full all

loans and other obligations under that certain Revolving Credit, Term

Loan and Guaranty Agreement dated as of October 14, 2005 (as heretofore

amended, supplemented or otherwise modified, the "Existing DIP Credit

Agreement" and, together with the mortgages and all other documentation

executed in connection therewith, the "Existing DIP Facility Documents")

by and among the Borrower, the several lenders from time to time party

thereto (the "Existing DIP Lenders"), and JPMCB, as administrative agent

for the DIP Lenders (in such capacity, the "Existing DIP Agent") (such

repayment in full, the "DIP Facility Refinancing", and together with the

Pre-Petition Facility Refinancing, the "Refinancing"),

(4)  the continuation of certain adequate protection with respect to

various parties, whose liens, security interests or setoff rights were primed

by the Existing DIP Facility Documents and are being primed by some or

all of the Financing;

3

(5)  continuation of the authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which certain parties have an interest, and the granting of adequate protection to such parties with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of their interest therein;

(6)  permission to accelerate Borrowings and the termination of the Commitments under the DIP Credit Agreement upon (a) a Change of Control (as each such term is defined in the DIP Credit Agreement) or (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Borrower or any of the Guarantors which have a value in excess of $20 million in the aggregate, which are Extraordinary Provisions under the General Order; and

(7)  the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code, which is an Extraordinary Provision under the General Order and authorized under the Existing DIP Order (as hereinafter defined).

Due and appropriate notice of the Motion and the relief requested therein having been served by the Debtors in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and

9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on October 26, 2006.

A hearing on the Motion having been held by this Court on January 5, 2007 at

10:00 a.m. (the "Hearing");

Upon the record made by counsel to the Debtors at the Hearing, and after due

deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the above-captioned

cases (the "Cases"), this Motion, and the parties and property affected hereby pursuant to

28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

2.      *Notice*.  Under the circumstances, the notice given by the Debtors of the

Motion and the Hearing constitutes due and sufficient notice thereof and complies with

Bankruptcy Rules 4001(b) and (c).

3.      *Findings Regarding The Financing.*

(a)      Good cause has been shown for the entry of this Order.

(b)      The Debtors require the proceeds of this Financing and use of Cash

Collateral (as defined below) in order to reduce their cost of financing and to permit,

among other things, the orderly continuation of the operation of their businesses, to

maintain business relationships with vendors, suppliers and customers, to make payroll,

to make capital expenditures and to satisfy other working capital and operational needs.

The reduction in financing costs together with continued access of the Debtors to

sufficient working capital and liquidity through the use of Cash Collateral, incurrence of

new indebtedness for borrowed money and other financial accommodations is vital to the

preservation and enhancement of the going concern values of the Debtors and to a

successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable

terms from sources other than the DIP Lenders under the DIP Documents and are unable

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Debtors are also unable to obtain adequate

secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the

Bankruptcy Code without the Debtors granting to the Agent and the DIP Lenders, subject

to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (as

defined below) under the terms and conditions set forth in this Order and in the DIP

Documents.

(d)    The terms of the Financing and the use of Cash Collateral are fair

and reasonable, reflect the Debtors' exercise of prudent business judgment consistent

with their fiduciary duties and constitute reasonably equivalent value and fair

consideration.

(e)    The Financing has been negotiated in good faith and at arm's

length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors'

obligations and indebtedness arising under, in respect of or in connection with the

Financing and the DIP Documents, including without limitation, (i) all loans made to, and

all letters of credit issued for the account of, the Debtors pursuant to the Revolving

Credit, Term Loan and Guaranty Agreement, a copy of which was filed with the Court

prior to commencement of the Hearing (the "DIP Credit Agreement"), and (ii) any

6

"Obligations" and all other "Secured Obligations" (as each such term is defined in the DIP Credit Agreement), including any hedging obligations of the Debtors permitted under the DIP Credit Agreement (the "Secured Hedging Obligations") and any Indebtedness (as defined in the DIP Credit Agreement) permitted by Section 6.03(viii) thereof (the "Cash Management Obligations"), in each case owing to JPMCB, any DIP Lender or any of their respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the "DIP Obligations"), shall be deemed to have been extended by the Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 6004(g).

(g)     For the reasons set forth in the Motion and based on the evidence presented at the Hearing, consummation of the Financing and the use of Cash Collateral in accordance with this Order and the DIP Documents isare in the best interest of the Debtors' estates.

4.     *Authorization Of The Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to be a party to the DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such letters of

credit, up to an aggregate principal or face amount of $4,495,820,240.59 (plus interest,

fees and other expenses provided for in the DIP Documents), subject to any limitations of

borrowings under the DIP Documents, and in accordance with the terms of this Order and

the DIP Documents, which shall be used solely for purposes permitted under the DIP

Documents, including, without limitation, (i) with respect to the ~~the~~ Tranche A Loan and

the Tranche B Loan (as each such term is defined in the DIP Credit Agreement, as

hereinafter defined, referred to herein as the "Tranche A Loan" and "Tranche B Loan",

respectively, and collectively as the "First Priority Facilities"), for the DIP Facility

Refinancing and to provide working capital for the Borrower and the Guarantors and for

other general corporate purposes and to pay interest, fees and expenses in accordance

with this Order and the DIP Documents and (ii) with respect to the Tranche C Loan (as

defined in the DIP Credit Agreement, the "Tranche C Loan"), for the Pre-Petition Facility

Refinancing.  In addition to such loans and obligations, the Debtors are authorized to

incur overdrafts and related liabilities arising from treasury, depository and cash

management services or in connection with any automated clearing house fund transfers

provided to or for the benefit of the Debtors by JPMCB or any other DIP Lender or any

of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB

or any other party to incur overdrafts or to provide any such services or functions to the

Debtors.

> (b)    In furtherance of the foregoing and without further approval of this

Court, each Debtor is authorized and directed to perform all acts, to make, execute and

deliver all instruments and documents (including, without limitation, the execution or

recordation of security agreements, mortgages and financing statements), and to pay all

fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)  the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Security and Pledge Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any, contemplated thereby (collectively, and together with the letter agreements referred to in clause (iv) below, the "DIP Documents");

(ii) the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and the DIP Lenders may agree (it being understood that (A) no further approval of the Court shall be required for amendments to the DIP Credit Agreement that do not (i) shorten the maturity of the extensions of credit thereunder, (ii) increase the commitments, the rate of interest or the letter of credit fees payable thereunder, (iii) amend the financial covenants in Section 6.04 therein to be more restrictive on the Debtors or (iv) amend the notice provisions of Section 7.01 therein (i.e., notice of exercise of remedies after the occurrence of an Event of Default), and (B) the Debtors shall provide the official committee of unsecured creditors (the "Creditors' Committee") with five (5) business days' prior notice (or such shorter period as the Creditors' Committee and the Debtors may agree) of any amendment to the DIP Credit Agreement that causes the Borrowing Base to be decreased);

(iii)    the non-refundable payment to the Agent, the Joint Lead Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations, as defined in the Existing DIP Order, referred to herein as the "Adequate Protection Obligations"), Replacement Liens and Junior Adequate Protection Liens (each as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (other than to the extent of any statutory liens or security interests arising after the filing of the Debtors' chapter 11 petitions (the "Petition Date") and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest), which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein; *provided, however*, that (i) the Superpriority Claims in respect of the First Priority Facilities shall be senior in priority to the Superpriority Claims in respect of the Tranche C Loan, ~~and~~ (ii) the Superpriority Claims granted hereunder shall remain subject and subordinate to any Superpriority Claims arising under the Existing DIP Order (as defined therein) until such Superpriority Claims under the Existing DIP Order have been irrevocably paid in full and (iii) the Superpriority Claims in respect of the Tranche C Loan shall be equal in priority to the claims granted to the Setoff Claimants in paragraph 16(b)(iii) below (subject to the proviso thereof).

      (b)     For purposes hereof, the "Carve Out" means (i) all unpaid fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii) after

11

the occurrence and during the continuance of an Event of Default (as defined in the DIP

Credit Agreement), all allowed and unpaid professional fees and disbursements incurred

by the Debtors and any statutory committees appointed in the Cases (each, a

"Committee"), and Transaction Expenses (as defined in the Equity Purchase and

Commitment Agreement (the "EPCA"), a copy of which is attached to the Expedited

Motion For Order Authorizing And Approving The Equity Purchase And Commitment

Agreement Pursuant To Sections 105(A), 363(B), 503(B) And 507(A) Of The

Bankruptcy Code And The Plan Framework Support Agreement Pursuant To Sections

105(A), 363(B), And 1125(E) Of The Bankruptcy Code (the "Plan Investment And

Framework Support Approval Motion"), filed concurrently with the DIP Refinancing

Motion) incurred from and after the date that an order is entered approving the EPCA

(the "Post-Order Transaction Expenses"), that remain unpaid subsequent to the payment,

pro rata with other nonpriority administrative creditors, of such fees and expenses from

available funds remaining in the Debtors' estates for such creditors, in an aggregate

amount not exceeding $35,000,000, which amount may be used subject to the terms of

this Order, including, without limitation, paragraph 1415 hereof, and (iv) all unpaid

professional fees and disbursements incurred or accrued by the Debtors and any

Committees, and Post-Order Transaction Expenses, in each case incurred or accrued at

any time when no Event of Default is continuing (and promptly upon receipt of a notice

of an Event of Default, the Debtors shall provide a copy of such notice to counsel for the

Creditors' Committee), that remain unpaid subsequent to the payment, pro rata with other

nonpriority administrative creditors, of such fees and expenses and Post-Order

Transaction Expenses from available funds remaining in the Debtors' estates for such

creditors, in an aggregate amount not exceeding the sum of (x) such unpaid professional

fees and disbursements, and Post-Order Transaction Expenses, reflected on the most

recent Borrowing Base Certificate (as defined in the DIP Credit Agreement) delivered to

the Agent prior to any Event of Default that is then continuing and (y) such unpaid

professional fees and disbursements, and Post-Order Transaction Expenses, incurred or

accrued after such Borrowing Base Certificate (but at a time when no Event of Default is

continuing) in an aggregate amount under this clause (y) not exceeding

$~~5,000,000~~10,000,000 if this Court has entered an order approving the EPCA, or

$5,000,000 if this Court has not entered such an order (and with amounts included in this

clause (y), to be supported by back-up documentation in respect of the amounts and dates

of incurrence of such fees and disbursements), in each of the foregoing clauses (i), (ii),

(iii) and (iv), to the extent allowed by the Bankruptcy Court at any time; *provided*,

*however*, that (1) to the extent the dollar limitation in this clause 5(b) on fees and

disbursements and Post-Order Transaction Expenses is reduced by any amount as a result

of the payment of fees and disbursements and Post-Order Transaction Expenses during

the continuance of an Event of Default, and such Event of Default is subsequently cured

or waived and no other Event of Default then exists, then effective as of the effectiveness

of such cure or waiver, such dollar limitation shall be increased by an amount equal to the

amount by which it has been so reduced and (2) (A) nothing herein shall be construed to

impair the ability of any party to object to any of the fees, expenses, reimbursement or

compensation described in clauses (iii) and (iv) above and (B) following the Termination

Date (as defined in the DIP Credit Agreement), cash or other amounts on deposit in the

Letter of Credit Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

      6.    *DIP Liens*.

      As security for the DIP Obligations, effective and perfected upon the occurrence of the Closing Date (as defined in the DIP Credit Agreement~~) and the Refinancing (the "Refinancing Date", at which time all liens, mortgages and security interests under the Existing DIP Facility Documents and the Existing Pre-Petition Facility Documents shall be deemed released and of no further force or effect~~, hereinafter referred to as the "Refinancing Date") and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"; the DIP Liens securing the First Priority Facilities, the "First Priority DIP Liens"; and the DIP Liens securing the Tranche C Loan, the "Second Priority DIP Liens"):

      (a)    <u>First Lien On Cash Balances And Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre-petition and post-petition property of the Debtors, whether existing on the Petition Date

or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and

enforceable liens in existence as of the Refinancing Date (after giving effect to the release

of liens occurring at such time) (collectively, "Unencumbered Property"), including

without limitation, all cash and cash collateral of the Debtors (whether maintained with

the Agent or otherwise) and any investment of such cash and cash collateral, inventory,

accounts receivable, other rights to payment whether arising before or after the Petition

Date, contracts, properties, plants, equipment, general intangibles, documents,

instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade

names, other intellectual property, capital stock of subsidiaries, and the proceeds of all

the foregoing, *provided*, *however*, that the Borrower and the Guarantors shall not be

required to pledge to the Agent in excess of 65% of the voting capital stock of its direct

Foreign Subsidiaries or any of the capital stock or interests of its indirect Foreign

Subsidiaries (if, in the good faith judgment of the Borrower, adverse tax consequences

would result to the Borrower).  Unencumbered Property shall exclude the Debtors'

claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and

553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy

Code (collectively, "Avoidance Actions"), and any proceeds or property recovered,

unencumbered or otherwise the subject of successful Avoidance Actions.

> (b)    <u>Priming Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy

Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior

priming security interest in and lien upon all pre-petition and post-petition property of the

Debtors (including, without limitation, cash collateral, inventory, accounts receivable,

other rights to payment whether arising before or after the Petition Date, contracts,

properties, plants, equipment, general intangibles, documents, instruments, interests in

leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual

property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether

now existing or hereafter acquired, that is subject to the existing liens remaining after the

occurrence of the Refinancing Date that pursuant to the terms of the order of this Court

dated October 28, 2005 approving the Borrower's and the Guarantors' entry in the

Existing DIP Facility Documents (the "Existing DIP Order") are subject and subordinate

to the DIP Liens as defined in the Existing DIP Order (the "Existing DIP Liens"),

including, without limitation, all Replacement Liens and Debtor Liens (as each such term

is defined in the Existing DIP Order), and any other liens granted under the Existing DIP

Order (collectively, the "Primed Liens").  Such security interests and liens shall be senior

in all respects to the interests in such property of the holders of the Primed Liens in

respect thereof, and shall be subject and subordinate to (i) the Carve Out (except as

provided in paragraph 5 hereof), (ii) any valid, perfected and unavoidable interests of

other parties arising out of liens existing on the Refinancing Date, if any, on such

property, that pursuant to the terms of the Existing DIP Order are senior in priority to the

Existing DIP Liens and (iii) statutory liens or security interests arising after the

Refinancing Date and permitted under the DIP Credit Agreement that by operation of law

would have priority over a previously perfected security interest.  In addition,

notwithstanding anything to the contrary contained in this paragraph 6(b), any valid,

perfected and non-voidable liens or security interests that remain in existence after the

Refinancing Date and that were senior to or *pari passu* with the liens securing the Pre-

Petition Secured Facility prior to the Refinancing Date (including, without limitation, to

16

the extent provided in paragraph ~~15~~16 of this Order, the Replacement Liens and Junior

Adequate Protection Liens) shall maintain such priority or *pari passu* position relative to

the liens securing the Tranche C Loan.

(c)    Liens Junior To Certain Other Liens.  Pursuant to section 364(c)(3)

of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security

interests in and liens upon all pre-petition and post-petition property of the Debtors (other

than the property described in clauses (a) or (b) of this paragraph 6, as to which the liens

and security interests in favor of the Agent will be as described in such clauses), whether

now existing or hereafter acquired, that as of the Refinancing Date is subject to valid,

perfected and unavoidable liens, which security interests and liens in favor of the Agent

and the DIP Lenders are junior to such valid, perfected and unavoidable liens.

(d)    Liens Senior To Certain Other Liens.  The DIP Liens, the

Replacement Liens and the Junior Adequate Protection Liens (each as defined below)

shall not be subject or subordinate to (i) solely in the case of the DIP Liens, any lien or

security interest that is avoided and preserved for the benefit of the Debtors and their

estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the

Refinancing Date, including, without limitation, any liens or security interests granted in

favor of any federal, state, municipal or other governmental unit, commission, board or

court for any liability of the Debtors other than with respect to any liens or security

interests arising after the Refinancing Date and permitted under the DIP Credit

Agreement to be senior to the DIP Liens.

7.      *Protection Of DIP Lenders' Rights.*

(a)      So long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters or credit are outstanding) outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the holders of Replacement Liens, the holders of Junior Adequate Protection Liens and the holders of Debtor Liens (as defined below) shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing Pre-Petition Facility Documents, the Existing DIP Order or this Order, or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court and (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless solely as to this clause (iii), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date. Notwithstanding the foregoing, the Pre-Petition Secured Lenders shall be permitted to file pleadings with respect to any proposed sale, transfer or other disposition of the Collateral by the Debtors outside the ordinary course of business so long as such pleadings do not contravene the provisions of this paragraph 7 and do not otherwise interfere with the exercise of any

right or remedy by the Agent or the DIP Lenders.  Nothing herein shall be read to permit the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of Replacement Liens, the holders of Junior Adequate Protection Liens or the holders of Debtor Liens to take any action in violation of the Bankruptcy Code or other applicable law.  This paragraph 7(a) defines the relative rights of the DIP Agent and the DIP Lenders, on the one hand, and the Pre-Petition Agent and the Pre-Petition Secured Lenders, on the other, and is not intended to confer any rights on the Debtors except with respect to the Debtor Liens.

(b)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the extent provided for in the DIP Credit Agreement (promptly upon receipt of such notice, the Debtors shall provide a copy of such notice to counsel for the Creditors' Committee), all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Existing DIP Agent, the Pre-Petition Agent, the Pre-Petition Secured Lenders, and the holders of Replacement Liens or Junior Adequate

Protection Liens hereby waive in such capacities, but not in capacities as holders of

general unsecured claims, their right to seek relief, including, without limitation, under

section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or

restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or

the DIP Documents.  In no event shall the Agent, the DIP Lenders, the Existing DIP

Agent, the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of

Replacement Liens or Junior Adequate Protection Liens be subject to the equitable

doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

8.      *Limitation On Charging Expenses Against Collateral*.  Except to the

extent of the Carve Out, no expenses of administration of the Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code, shall be charged against or recovered from the

Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of

law, without the prior written consent of the Agent, the Existing DIP Agent or the Pre-

Petition Agent, as the case may be, and no such consent shall be implied from any other

action, inaction, or acquiescence by the Agent, the DIP Lenders, the Existing DIP Agent,

the Pre-Petition Agent or the Pre-Petition Secured Lenders.

9.      *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all

Cash Collateral (as defined in the Existing DIP Order) of the Pre-Petition Secured

Lenders and of the holders of Replacement Liens or Junior Adequate Protection Liens,

and the Pre-Petition Secured Lenders and the holders of Replacement Liens or Adequate

Protection Liens (as defined in the Existing DIP Order) are directed promptly to turn over

to the Debtors all Cash Collateral received or held by them, provided that, until the

Refinancing Date, the Pre-Petition Secured Lenders and the holders of Replacement

Liens or Adequate Protection Liens are granted adequate protection as set forth in the

Existing DIP Order.  The Debtors' right to use Cash Collateral shall terminate

automatically upon the occurrence of the Termination Date or the voluntary reduction by

the Borrower of the Total Commitments to zero (as each such term is defined in the DIP

Credit Agreement).

10.    *Payments to Existing DIP Agent and Existing DIP Lenders.*  (a) On the

Refinancing Date, the Debtors are hereby authorized and directed to (i) use the proceeds

of borrowings under the DIP Credit Agreement to irrevocably repay in full all obligations

then due and payable to the Existing DIP Agent and the Existing DIP Lenders under the

Existing DIP Facility Documents and the Existing DIP Order, (ii) cancel or "cash

collateralize" all outstanding letters of credit issued pursuant to the Existing DIP Credit

Agreement in accordance with the provisions thereof and (iii) pay or secure all (x)

hedging obligations of the Debtors permitted under the Existing DIP Credit Agreement

and (y) Indebtedness (as defined in the Existing DIP Credit Agreement) permitted by

Section 6.03(viii) thereof, in each case under collateral arrangements reasonably

satisfactory to the respective obligee of such obligations, whereupon all liens, mortgages

and security interests granted to the Existing DIP Agent and the Existing DIP Lenders

under the Existing DIP Order and the Existing DIP Facility Documents shall be deemed

released and of no further force or effect.

(b)    Subsequent to the Refinancing Date, (x) the Debtors shall promptly

pay and/or reimburse the Existing DIP Agent and/or Existing DIP Lenders for any and all

fees, costs, expenses, losses and damages (including, without limitation, any fees, costs,

21

expenses, losses and damages contemplated by Section 10.05 of the Existing DIP Credit

Agreement) incurred thereafter to the extent that the Existing DIP Credit Agreement or

any other Existing DIP Facility Document entitles them to such payment, indemnity or

reimbursement after termination of such Existing DIP Facility Document (subject to all

parties' reservation of rights to contest whether the Existing DIP Agent or Existing DIP

Lender is entitled to such payment, indemnity or reimbursement by the Debtors) and (y)

such amounts shall, until paid in full in cash, constitute superpriority administrative

expense claims under section 507(b) of the Bankruptcy Code, senior in all respects to the

Superpriority Claims granted in paragraph 5(a) above.

11.    10. *Adequate Protection of Pre-Petition Secured Lenders*.  (a) The

Adequate Protection Liens and other rights afforded to the Pre-Petition Agent and the

Pre-Petition Secured Lenders under paragraphs 12 and 13 of the Existing DIP Order shall

continue in effect until the Refinancing Date, whereupon the Adequate Protection

LiensDebtors repay the amounts outstanding under the Existing Pre-Petition Facility

Documents and the Existing DIP Order in accordance with this paragraph 11.  On the

Refinancing Date, the Debtors are hereby authorized and directed to use the proceeds of

borrowings under the DIP Credit Agreement to irrevocably repay in full all obligations

then due and payable to the Pre-Petition Agent and the Pre-Petition Secured Lenders

under the Existing Pre-Petition Facility Documents and the Existing DIP Order.  Upon

repayment of all such obligations, all liens, mortgages and security interests granted to

the Pre-Petition Agent and the Pre-Petition Secured Lenders under the Existing Pre-

Petition Facility Documents and the Existing DIP Order shall be deemed released and of

no further force or effect, and the provisions of paragraphs 12 and 13 of the Existing DIP

Order shall be of no further force or effect.

(b)      Subsequent to the Refinancing Date, (x) the Debtors shall promptly

pay and/or reimburse the Pre-Petition Agent and/or Pre-Petition Secured Lenders for any

and all reasonable fees, costs, expenses, losses and damages (including, without

limitation, any fees, costs, expenses, losses and damages contemplated by Section 10.6 of

the Pre-Petition Credit Agreement) incurred thereafter to the extent that the Pre-Petition

Credit Agreement or any other Existing Pre-Petition Facility Document entitles them to

such payment, indemnity or reimbursement after termination of such Existing Pre-

Petition Facility Document (subject to all parties' reservation of rights to contest whether

the Pre-Petition Agent or Pre-Petition Secured Lender is entitled to such payment,

indemnity or reimbursement by the Debtors) and (y) such amounts shall, until paid in full

in cash, constitute superpriority administrative expense claims under section 507(b) of the

Bankruptcy Code to the extent allowed, subject and junior in all respects to the

Superpriority Claims granted in paragraph 5(a) above and to the claims granted to the

Setoff Claimants in paragraph 16(b)(iii) below.

12.      11. *Perfection Of DIP Liens.*

(a)      Subject to the provisions of paragraph 7(a) above, the Agent is

hereby authorized, but not required, to file or record financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments in any

jurisdiction or take any other action in order to validate and perfect the liens and security

interests granted to them hereunder.  Whether or not the Agent on behalf of the DIP

Lenders shall, in its sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise

confirm perfection of the liens and security interests granted to the Agent hereunder, such

liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-

avoidable and not subject to challenge dispute or subordination, at the time and as of the

date of entry of this Order.  Upon the request of the Agent, each of the Existing DIP

Agent and the Existing DIP Lenders, and the Pre-Petition Agent and Pre-Petition Secured

Lenders, without any further consent of any party, is authorized to take, execute and

deliver such instruments (in each case without representation or warranty of any kind) to

enable the Agent to further validate, perfect, preserve and enforce DIP Liens.

(b)      A certified copy of this Order may, in the discretion of the Agent,

be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)      Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other

parties or (ii) the payment of any fees or obligations to any governmental entity, in order

for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby

deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any

such provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or

sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Credit Agreement or this Order.

      13.    12. *Preservation Of Rights Granted Under The Order.*

      (a)    No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders or to the Setoff Claimants, respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens, the Replacement Liens and the Junior Adequate Protection Liens shall not be (i) solely in the case of the DIP Liens, subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than as specifically provided for in this Order). Nothing in this paragraph 12 13(a) shall limit (x) the rights of the Debtors to refinance the Financing in compliance with the DIP Credit Agreement or (y) the rights of any party in interest with respect to any such refinancing.

      (b)    Unless all DIP Obligations shall have been paid in full (and, or (x) with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cancelled or "cash collateralized" in accordance with the provisions of the DIP Credit Agreement thereof and (y) with respect to Secured Hedging Obligations and Cash Management Obligations, secured under collateral arrangements reasonably satisfactory to the respective obligee of such obligations), the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any

of the Debtors seek, or if there is entered, (i) any modifications or extensions of this

Order without the prior written consent of the Agent, and no such consent shall be

implied by any other action, inaction or acquiescence by the Agent, or (ii) an order

dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112

of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in

accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority

Claims, priming liens, security interests and replacement security interests granted to the

Agent, the Setoff Claimants or the holders of the Debtor Liens pursuant to this Order,

shall continue in full force and effect and shall maintain their priorities as provided in this

Order until all DIP Obligations shall have been paid and satisfied in full (and that such

Superpriority Claims, priming liens and replacement security interests, shall,

notwithstanding such dismissal, remain binding on all parties in interest) and (y) this

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of

enforcing the claims, liens and security interests referred to in (x) above.

        (c)     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations incurred prior to the actual receipt of written

notice by the Agent, as applicable, of the effective date of such reversal, stay,

modification or vacation or (ii) the validity or enforceability of any lien or priority

authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any

DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal,

stay, modification or vacation, any use of Cash Collateral, or DIP Obligations incurred by

the Debtors to the Agent or the DIP Lenders prior to the actual receipt of written notice

by the Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral and DIP Obligations.

(d)    Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

14.    13. *Effect Of Stipulations On Third Parties*.  Notwithstanding the Fourth Stipulation Between the Creditors' Committee and JPMorgan Chase Bank, N.A., as Agent for the Pre-Petition Secured Lenders, with Respect to an Extension of Deadlines

Established Pursuant to Final DIP Financing Order, entered by this Court on June 13, 2006, the stipulations and admissions contained in paragraphs 3 and 10 of the Existing DIP Order shall be binding upon the Creditors' Committee, and the time period during which the Creditors' Committee is permitted to raise "Claims and Defenses" as provided in paragraph 16 of the Existing DIP Order, is hereby terminated. subject to the occurrence of the closing on the Refinancing.  As a consequence of the foregoing and the stipulations and admissions contained in paragraphs 3 and 10 of the Existing DIP Order, (a) the Pre-Petition Debt and all related obligations of the Debtors under the Existing Pre-Petition Facility Documents (the "Pre-Petition Obligations") shall hereby be deemed to constitute allowed secured claims against the Borrower and each of the other Debtors that are guarantors under the Existing Pre-Petition Facility Documents, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 cases, (b) as of the Petition Date, the aggregate value of the Pre-Petition Collateral (as defined below) in which the Pre-Petition Agent held, for the ratable benefit of the Pre-Petition Secured Lenders, valid, binding, perfected, enforceable first priority liens, exceeded the aggregate amount of the Pre-Petition Obligations and (c) the Pre-Petition Obligations, the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral, and the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any Claims and Defenses (as defined in the Existing DIP Order) or any other challenge by the Debtors, any other party in interest or any successor to the Debtors (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors).

15. 14. *Limitation On Use Of Financing Proceeds And Collateral*.

Notwithstanding anything herein or in any other order by this Court to the contrary, no

borrowings, letters of credit, Cash Collateral Collateral or the Carve Out may be used to

(a) object, contest or raise any defense to, the validity, perfection, priority, extent or

enforceability of any amount due under the DIP Documents, the Existing DIP Facility

Documents or the Existing Pre-Petition Facility Documents, or the liens or claims granted

under this Order, the Existing DIP Order, the DIP Documents or the Existing Pre-Petition

Facility Documents, (b) assert any causes of action against the Agent, the DIP Lenders,

the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent or the Pre-

Petition Secured Lenders or their respective agents, affiliates, representatives, attorneys

or advisors, prevent, hinder or otherwise delay the Agent's assertion, enforcement or

realization on the Cash Collateral or the Collateral in accordance with the DIP

Documents or this Order, (c) seek to modify any of the rights granted to the Agent, the

DIP Lenders, the Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent

or the Pre-Petition Secured Lenders hereunder, under this Order, the Existing DIP Order

or under the DIP Documents, the Existing DIP Facility Documents or the Existing Pre-

Petition Facility Documents, in each of the foregoing cases without such parties' prior

written consent or (d) pay any amount on account of any claims arising prior to the

Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in

accordance with the DIP Credit Agreement or otherwise approved by the Agent in its sole

discretion.

16. 15. *Setoff, Replacement Liens and Junior Adequate Protection Liens*.  To

the extent that a customer or supplier of the Debtors that has an allowable setoff claim

under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any

Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment

that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"),

such customer or supplier (a "Setoff Claimant") is hereby provided, consistent with the

terms of the Existing DIP Order, with certain rights and adequate protection as described

below.  For the avoidance of doubt, nothing herein shall be construed to be an admission

or acknowledgement, or an increase or decrease in the monetary amount of the pre-

petition setoff or recoupment rights of any person, under the Bankruptcy Code, applicable

non-bankruptcy law or otherwise.

      (a)    <u>Exercise of Set Off</u>.  (1)  Any exercise of a Setoff Right (as defined

below) in accordance with this Order <u>or the Existing DIP Order</u> shall not be stayed by

section 362 of the Bankruptcy Code.  Any exercise of any right of Setoff other than in

accordance with this Order is subject to section 362 of the Bankruptcy Code.  Nothing in

this Order shall prevent any holder of a right of Setoff from seeking relief from the

automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest

from objecting or being heard with respect to any such request.  A Setoff Claimant shall,

in accordance with this paragraph, be entitled to exercise its Setoff that arose in the

ordinary course of business for any claims or recoupment defenses arising from or related

to the claims for prepetition warranty and/or product recall claims, customer adjustments,

customer rebates and allowances, overpricing claims, claims for short shipments and

damaged goods, customer/supplier netting and other similar claims arising in the ordinary

course of business of the relevant parties other than any such claims or recoupment

defenses arising as a result of the filing of the cases (a "Setoff Right").  A Setoff Right

shall not include any claims or recoupment defenses arising from or related to employee

or employee benefit matters, retiree benefit or pension matters, including, without

limitation, any related indemnities or guarantees, the rejection of executory contracts, or

consequential or punitive damages.  The determination as to whether a Setoff Claimant

may exercise a "Setoff Right" will be made solely by (i) the agreement of the Setoff

Claimant, the Creditors' Committee and the Debtors, (ii) pursuant to the procedures

hereinafter set forth or (iii) order of the Court.

          (2)      Any Setoff Claimant seeking to exercise a Setoff Right against

payables during any month (whether against Pre-Petition Payables or post-petition

payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the

Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and

reasonably detailed documentation supporting such Setoff Right.  If the Setoff Claimant,

the Creditors' Committee and the Debtors fail to agree in writing that any amount is

included in a Setoff Right within 10 business days after submission of such information

to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors

and such Setoff Claimant shall (unless all such parties agree to extend such 10 business

day period) seek resolution of such matter through a mediator agreed to by the Debtors

and such Setoff Claimant or appointed by this Court.  Such mediation shall end not later

than 30 days after the Agreement Deadline unless such period is extended by agreement

of the Debtors and such Setoff Claimant.  If the Debtors and such Setoff Claimant cannot

resolve the matter through such mediation, then such matter may be submitted to binding

arbitration to a single arbitrator agreed to by all such parties or appointed by this Court,

and such parties shall request that such arbitrator issue its ruling within 90 days after the

Agreement Deadline.  Notwithstanding any award in any such arbitration, in no event shall the Setoff Claimant be permitted to exercise its Setoff Right against any payables other than Pre-Petition Payables except as set forth in this paragraph 15.16.

(3)      In the event any Setoff Claimants (the "Non-Exercising Setoff Claimants") have not exercised their asserted Setoff Rights in respect of their respective Pre-Petition Payables and have instead paid their Pre-Petition Payables to the Debtors, in addition to any other adequate protection provided to such Non-Exercising Setoff Claimants herein, the Non-Exercising Setoff Claimants may exercise Setoff Rights established in accordance with this paragraph against post-petition payables owed by such Non-Exercising Setoff Claimants to the Debtor or Debtors against which such Non-Exercising Setoff Claimants have their Setoff Rights; *provided* that (a) in the case of the exercise of any Setoff Rights by General Motors Corporation or any of its affiliates ("GM"), the aggregate amount of Setoff Rights that may be exercised pursuant to this subparagraph (3) against Pre-Petition Payables or post-petition payables owed by GM to the Debtors during any month shall not exceed $35 million (the "Aggregate Monthly Cap Amount") and (b) to the extent Setoff Rights are recognized in accordance with this Order or the Existing DIP Order in excess of the Setoff Rights that are permitted to be exercised pursuant to such limitations, Setoff Claimants may carry forward their Setoff Right to succeeding months, subject to the applicable monthly limitations, if any, until such Setoff Rights have been fully exercised.

(4)      (a) Except as set forth above, and subject to the adequate protection provided to Setoff Claimants as herein set forth, Setoff Claimants shall not be permitted to exercise any Setoff until the later of (x) the effective date of the Debtors'

confirmed plan of reorganization and (y) allowance of the Setoff as a claim in these

Cases.  Any exercise of Setoff pursuant to (x) or (y) above is subject to the treatment

afforded to such Setoff under a plan of reorganization confirmed by the Bankruptcy

Court.  Nothing contained herein or in the Existing DIP Order shall limit (i) the discretion

of the Debtors to pay warranty and/or product recall claims in accordance with orders of

the Court, (ii) the right of any party in interest to exercise a post-petition setoff or

recoupment against a post-petition payable or (iii) the right of a Setoff Claimant to

request further adequate protection (or the Debtors or any party in interest to oppose any

such request).

      (b)     <u>Adequate Protection</u>.  A Setoff Claimant is entitled, pursuant to

sections 361, 362(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its

Setoff to the extent it does not exercise such Setoff and remits the amount of such Pre-

Petition Payables not setoff or recouped.  As adequate protection therefor, each such

Setoff Claimant is hereby granted, effective upon payment to the Debtors of the amount

subject to such Setoff, the following (collectively, including any Junior Adequate

Protection Liens granted pursuant to the Existing DIP Order, the "Junior Adequate

Protection Liens"), such Junior Adequate Protection Liens to be effective and perfected

without the necessity of the execution by the Debtors of mortgages, security agreements,

pledge agreements, financing statements or other agreements:

      (i)     A replacement lien (including any Replacement Liens granted

pursuant to the Existing DIP Order, the "Replacement Lien") on such Setoff Claimant's

post-petition payables to the extent that it is determined that such Setoff Claimant had a

Setoff in respect of the Pre-Petition Payables that have been remitted to the Debtors,

which Replacement Lien is limited to the amount of the Setoff; *provided, however*, that

(i) the Debtors reserve their rights to any and all Claims and Defenses that may be

asserted with respect to such Setoff and (ii) the Replacement Liens are subject and

subordinate to and only to (x) the Existing DIP Liens, the First Priority DIP Liens granted

to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP

Documents, and any liens to which such liens so granted to the Agent are junior and (y)

the Carve-Out.

        (ii)     As further adequate protection to protect the Setoff Claimant

against any diminution in the value of its Replacement Lien, the Setoff Claimant is

hereby granted a security interest in and lien upon all the other Collateral, subject and

subordinate to and only to (A) the Existing DIP Liens, the DIP Liens granted to the Agent

for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents, and

any liens to which such liens so granted to the Agent are junior, (B) the Carve Out and

(C) until the Refinancing Date, the Pre-Petition Secured Lenders' liens on the Pre-

Petition Collateral and the Adequate Protection Liens granted to the Pre-Petition Agent

and the Pre-Petition Secured Lenders under the Existing DIP Order; *provided* that the

Setoff Claimant's security interest in and lien upon Collateral which is not (x) Pre-

Petition Collateral (as defined in the Existing DIP Order, the "Pre-Petition Collateral"),

(y) Collateral that would have constituted Pre-Petition Collateral but for the operation of

section 552(a) of the Bankruptcy Code as to which, without further action, the Pre-

Petition Agent would have had a valid and perfected security interest or lien or (z) subject

to the Replacement Lien, shall be *pari passu* with the Adequate Protection Liens granted

to the Pre-Petition Agent and the Pre-Petition Secured Lenders pursuant to the Existing

DIP Order and *pari passu* with the DIP Liens on Collateral that is not included in clauses
(x), (y) or (z) solely to the extent such DIP Liens secure the Tranche C Term Loan.

        (iii)      As further Adequate Protection, to the extent that the post-
petition payables in respect of which the Setoff Claimant is granted a Replacement Lien
are less than the Setoff of such Setoff Claimant, such Setoff Claimant is hereby granted
an administrative claim under section 507(b) of the Bankruptcy Code in the amount of
such deficiency subject to the Carve Out and equal in priority to the administrative claim
granted as adequate protection to the Pre-Petition Secured Lenders in paragraph 12(b) of
the Existing DIP Order and the Superpriority Claim in respect of the Tranche C Loan;
*provided, however*, that the Setoff Claimant shall not receive or retain any payments,
property or other amounts in respect of the claims under section 507(b) of the Bankruptcy
Code granted hereunder unless and until the DIP Obligations in respect of the First
Priority Facilities have indefeasibly been paid in cash in full and no letters of credit under
the First Priority Facilities remain outstanding unless "cash collateralized" in accordance
with the DIP Credit Agreement.

      17.    16. *Debtor Reimbursement Claims and Debtor Liens*.  Without limiting
the joint and several liability of each of the Debtors for the DIP Obligations, the Debtors
shall use their reasonable best efforts to ensure that Debtors that receive the benefit of
funds advanced under the Financing repay their share thereof on a dollar for dollar basis.
To the extent a Debtor (i) incurs any of the DIP Obligations (including as a result of
intercompany balances incurred after the Petition Date to the extent such balances arise
from the incurrence of DIP Obligations) or (ii) receives a post-petition intercompany loan
or transfer (including as a result of the Debtors' cash management system or otherwise)

(each a "Beneficiary Debtor"), and such DIP Obligations were repaid or such post-petition intercompany loan or transfer is made (including from cash collateral) (each an "Advance") by (A) any other Debtor that is a Borrower or Guarantor under the Financings or (B) any non-Debtor affiliate (together (A) and (B) an "Adequately Protected Entity"), the Adequately Protected Entity shall have, subject to the limitations set forth in paragraph 1718 below (a) an allowed claim under sections 364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate agreed between the Debtors from time to time for the period accruing from and after the date such claim arises until repayment thereof (collectively, including Debtor Reimbursement Claims granted pursuant to paragraph 1718 of the Existing DIP Order, the "Debtor Reimbursement Claim") and (b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code securing such Debtor Reimbursement Claim (including Debtor Liens granted pursuant to paragraph 1718 of the Existing DIP Order, a "Debtor Lien").  All Debtor Liens are effective and perfected without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements.

18.    17. All Debtor Reimbursement Claims and Debtor Liens shall be junior, subject and subordinate to and only to the Superpriority Claims, the DIP Liens, Adequate Protection Obligations, the Junior Adequate Protection Liens, the Replacement Liens and to any claims against such Beneficiary Debtor that are expressly senior to, and on a parity with, or carved out from the Superpriority Claims, the DIP Liens, Adequate Protection

~~Obligation~~Obligations, Junior Adequate Protection Liens or the Replacement Liens.  All Debtor Liens shall be "silent" liens and the Adequately Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor Reimbursement Claim or Debtor Lien, including, without limitation, taking any of the actions that the holders of Replacement Liens and Junior Adequate Protection Liens are prohibited from taking pursuant to paragraph 7, including, without limitation, as to seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, the business operations, or the reorganization of another Debtor. The Agent shall have the exclusive right to manage, perform and enforce all rights and remedies described in the DIP Documents.  The Debtor Lien of the Adequately Protected Entity automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that property subject to such Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent or any other Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such lien is permitted under the DIP Documents.

19.        ~~18.~~ *Sufficiency of Adequate Protection*.  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of all parties with liens against or interests in property of the Borrower or the Guarantors.

20.        ~~19.~~ With respect to the effect of Debtor Liens on any sale of property by the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the

37

Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

21.    20.  *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as Collateral Agent under the Existing Pre-Petition Facility Documents or the Existing DIP Facility Documents (the "Existing Facilities Documents"), is the secured party under any Control Agreements (as defined in the Existing Pre-Petition Facility Documents such documents), listed as loss payee under the Debtors' insurance policies as required under that certain Guarantee and Collateral Agreement, dated as of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of the Pre-Petition Agent the Existing Facilities Documents, or is the secured party under any other Existing Pre-Petition Facility Facilities Document, JPMCB, in its role as Collateral Agent under the DIP Credit Agreement, is also shall, as of the Refinancing Date, be deemed to be the secured party under such Control Agreements, the loss payee under the Debtors' insurance policies and the secured party under any other Existing Pre-Petition Facility Facilities Document and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Pre-Petition Facility Documents such capacities.

22.    21.  *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the Existing DIP Order, the DIP Documents or the Existing

DIP Facility Documents, the provisions of this Order shall govern.  Subject to the terms

of this Order, the provisions of the Existing DIP Order, including, without limitation,

paragraphs 3 and 16 thereof, shall remain in full force and effect.  The terms of this Order

shall govern to the extent of any inconsistency between this Order and that certain Cash

Management Order dated October 14, 2005, including, without limitation, with respect to

the matters set forth in paragraphs 1617 to 1819 of this Order.

23.        22. *Binding Effect; Successors And Assigns*.  The DIP Documents and the

provisions of this Order, including all findings herein, shall be binding upon all parties in

interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the

Existing DIP Agent, the Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, any party granted a Junior Adequate Protection Lien hereunder or

under the Existing DIP Order, any Committee appointed in these Cases, and the Debtors,

for themselves and not for their estates, and their respective successors and assigns and

shall inure to the benefit of the Agent, the DIP Lenders, the Existing DIP Agent, the

Existing DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any

party granted a Replacement Lien or Junior Adequate Protection Lien, and the Debtors

and their respective successors and assigns; *provided*, *however*, that the Agent, the

Existing DIP Agent, the Pre-Petition Agent, the DIP Lenders, the Existing DIP Lenders

and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash

Collateral or extend any financing to any chapter 7 trustee or similar responsible person

appointed for the estates of the Debtors.  In determining to make any loan under the DIP

Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or

remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent,

the Pre-Petition Agent, the Existing DIP Agent, the DIP Lenders, the Existing DIP

Lenders and the Pre-Petition Secured Lenders shall not be deemed to be in control of the

operations of the Debtors or to be acting as a "responsible person" or "owner or operator"

with respect to the operation or management of the Debtors (as such terms, or any similar

terms, are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar

federal or state statute).

24.    23. *Aircraft Leases.*  Notwithstanding anything to the contrary contained

in this Order and consistent with this Court's September 29, 2006 order (Docket No.

5234), no DIP Liens or any other liens or interests granted, authorized or contemplated

herein shall attach to any interests of Delphi Automotive Systems Human Resources,

LLC ("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001

between Bank of America, N.A., and Delphi HR (the "Aircraft Leases"), or in any

personal property, cash collateral or proceeds that is the subject of the Aircraft

Leases.

25.    24. *Objections Overruled.* Any *Objections Overruled.*  On January 2,

2007, Howard County, Indiana ("Howard County") filed a limited objection to the

Motion (Docket No. 6369) (the "Howard County Objection").  The Howard County

Objection has been consensually resolved by the parties prior to the Hearing and is

hereby deemed withdrawn.  Any other objection to the Motion which has not been

withdrawn or resolved is, to the extent not resolved, hereby overruled.

26.    25. *Committee Notices*.  All notices to be provided to the Creditors'

Committee shall be sent to Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New

York, NY 10022-4834, Attn: Robert Rosenberg, Esq.

27.    26.

Notwithstanding the possible applicability of Bankruptcy Rule 6004(g) or any other

provision of the Bankruptcy Rules or Bankruptcy Code, the terms and conditions of this

Order shall be immediately effective and enforceable upon its entry.


Dated:    ~~————~~January  __ ,
          ~~200~~ 2007
          New York, New York

                              _____
                              UNITED STATES BANKRUPTCY JUDGE

Document comparison done by Workshare Professional on Thursday, January 04, 2007 12:53:03 PM

| Input: | |
|---|---|
| Document 1 | file://M:\REFI\DELTAVIEW\delphi.refi.approval.order.061217_2151.doc |
| Document 2 | file://M:\REFI\DELTAVIEW\delphi.refi.approval.order.070104_1243.doc |
| Rendering set | DPW -- Color Legislative |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 55 |
| Deletions | 46 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 101 |