IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                        :     Chapter 11
                       :

DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                       :

             Debtors.   :     (Jointly Administered)
                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On December 29, 2006, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

1) Supplemental Application for Supplemental Order Under 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Expansion of Scope of Employment of Mayer, Brown Rowe & Maw LLP as Special Outsourcing Counsel to Debtors to Include Business Process Outsourcing Services, Nunc Pro Tunc to July 1, 2006 ("Mayer Brown Supplemental Retention Application") (Docket No. 6346) [a copy of which is attached hereto as Exhibit D]

2) Supplemental Application for Order Under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 Expanding the Scope of Retention of PricewaterhouseCoopers LLP to Provide Due Diligence Services Nunc Pro Tunc to December 15, 2006 ("PwC Supplemental Retention Application") (Docket No. 6347) [a copy of which is attached hereto as Exhibit E]

On December 29, 2006, I caused to be served the document listed below upon the parties listed on Exhibit F hereto via overnight delivery:

3) Supplemental Application for Supplemental Order Under 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Expansion of Scope of Employment of Mayer, Brown Rowe & Maw LLP as Special Outsourcing Counsel to Debtors to Include Business Process Outsourcing Services, Nunc Pro Tunc to July 1, 2006 ("Mayer Brown Supplemental Retention

Application") (Docket No. 6346) [a copy of which is attached hereto as Exhibit D]

On December 29, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit G</u> hereto via overnight delivery:

4)  Supplemental Application for Order Under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 Expanding the Scope of Retention of PricewaterhouseCoopers LLP to Provide Due Diligence Services Nunc Pro Tunc to December 15, 2006 ("PwC Supplemental Retention Application") (Docket No. 6347) [a copy of which is attached hereto as Exhibit E]

Dated: January 4, 2007

_____*/s/ Evan Gershbein*_____
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 4th day of January, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____*/s/ Shannon J. Spencer*_____

Commission Expires: ___*6/20/10*_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivinj@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

1/3/2007 2:36 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason 2. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

1/3/2007 2:36 PM
Master Service List Overnight Mail

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivini@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

1/3/2007 2:36 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

1/3/2007 2:36 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

1/3/2007 2:36 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Madison County (Indiana) Treasurer |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Rzefeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Michael J Alerding Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com malerding@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel to Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-225-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Aerospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | | 615-321-0555 | 615-321-9555 | amalone@colwinlaw.com | Counsel to Averitt Express, Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk0@daimlerchrysler.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | | Southaven | MS | 38671 | | | | akatz@entergy.com | Entergy Services, Inc. Company |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbeler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Carren Shulman Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | carren.shulman@hellerehrman.com timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry F. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Rjefeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative of Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr., Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Technetrol, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel to Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel To The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Anthony Princi Esq Thomas L Kent Esq | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5000 | 212-506-5151 | aprinci@orrick.com tkent@orrick.com | Counsel to Ad Hoc Committee of Trade Claimants |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas A. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel to IBJTC Business Credit Corporation |
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel to Marshall E. Campbell Company |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel to  Means Industries |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | 415-393-9887 | | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L. Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLp | Michael S. McElwee | Bridgewater Place | P.O. Box 353 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz / Gerard Uzzi / Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com / guzzi@whitecase.com / dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria / Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com / featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel to National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 17

1/3/2007 2:36 PM
Delphi 2002 lists Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | Counsel to Lunt Mannfacturing Company |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

1/3/2007 2:37 PM
Delphi 2002 lists US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to Means Industries |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy G. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | 212-476-4770 | Counsel to SPCP Group LLC |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

1/3/2007 2:37 PM
Delphi 2002 lists US Mail

# EXHIBIT D

**Presentment Date and Time: January 8, 2007 at 4:00 p.m.**
**Objection Deadline: January 8, 2007 at 2:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :    Chapter 11
                                                          :
    DELPHI CORPORATION, et al.,                           :    Case No. 05-44481 (RDD)
                                                          :
                                    Debtors.              :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF SUPPLEMENTAL ORDER UNDER 11 U.S.C.
§ 327(e) AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING EXPANSION OF
SCOPE OF EMPLOYMENT OF MAYER, BROWN, ROWE & MAW LLP AS
SPECIAL OUTSOURCING COUNSEL TO DEBTORS TO INCLUDE BUSINESS
PROCESS OUTSOURCING SERVICES, NUNC PRO TUNC TO JULY 1, 2006

PLEASE TAKE NOTICE that on December 29, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed the Supplemental Application For Supplemental Order Under 11 U.S.C. § 327(e) And Fed. R. Bankr. P. 2014 And 2016 Authorizing Expansion Of Scope Of Employment Of Mayer, Brown, Rowe & Maw LLP As Special Outsourcing Counsel To Debtors To Include Business Process Outsourcing Services, Nunc Pro Tunc To July 1, 2006 (the "Supplemental Application," attached to this notice as Exhibit A).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed, served, and received in accordance with this notice, a hearing to consider approval of the Supplemental Application will be held on January 12, 2007 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the Supplemental Application are timely filed, served, and received, the supplemental order filed with the Supplemental Application and attached to this notice as Exhibit B will be submitted for signature to the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004 on January 8, 2007 at 4:00 p.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Supplemental Application must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105

2

And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates And Certain Notice, Case Management, And Administrative Procedures, entered

by this Court on October 26, 2006, as amended (the "Amended Eighth Supplemental

Case Management Order") (Docket No. 5418), (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) registered users of the Bankruptcy

Court's case filing system must file electronically, and all other parties-in-interest must

file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (d) be submitted in hard-copy form

directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy

Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan

48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition

credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New

York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York

10017 (Att'n: Brian Resnick), (v) counsel for the Official Committee Of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022

(Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) Mayer, Brown, Rowe & Maw

LLP, 71 South Wacker Drive, Chicago, Illinois 60606 (Att'n: Paul J. N. Roy), (vii)

counsel for the Official Committee Of Equity Security Holders, Fried Frank, Harris,

Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n:

Bonnie Steingart), and (viii) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004

(Att'n: Alicia M. Leonhard), in each case so as to be **received** no later than **2:00 p.m.**

**(Prevailing Eastern Time) on January 8, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Amended Eighth Supplemental Case Management

Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the

Supplemental Application are timely filed and served in accordance with the procedures

set forth herein and in the Amended Eighth Supplemental Case Management Order, the

Bankruptcy Court may enter an order granting the Supplemental Application **without**

**further notice**.

Dated:   New York, New York
      December 29, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 9331)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

    - and -

By:   /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

4

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL APPLICATION FOR SUPPLEMENTAL ORDER UNDER 11 U.S.C.
§ 327(e) AND FED. R. BANKR. P. 2014 AND 2016 AUTHORIZING EXPANSION OF
SCOPE OF EMPLOYMENT OF MAYER, BROWN, ROWE & MAW LLP AS SPECIAL
OUTSOURCING COUNSEL TO DEBTORS TO INCLUDE BUSINESS PROCESS
OUTSOURCING SERVICES, NUNC PRO TUNC TO JULY 1, 2006

("MAYER BROWN SUPPLEMENTAL RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), [1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this supplemental retention application (this

---

[1]     In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

"Supplemental Retention Application") for a supplemental order under 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 and 2016 authorizing the expansion of the scope of employment of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") to include additional outsourcing work related to the consummation of a business process outsourcing services contract, nunc pro tunc to July 1, 2006.  In support of this Supplemental Retention Application, the Debtors submit the Second Supplemental Declaration And Statement Of Paul J.N. Roy Under Fed. R. Bankr. P. 2014 And 2016, sworn to December 19, 2006 (the "Roy Declaration").  In further support of this Supplemental Retention Application, the Debtors respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.      No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.        The statutory predicates for the relief requested herein are sections 327(e) and

1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").

B.        Current Business Operations Of The Debtors

5.        Delphi and its subsidiaries and affiliates (collectively, the "Company") as of

December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of

approximately $17.0 billion.[2]  At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.        The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.        Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of

General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's

business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to the Company in accordance with

the terms of a Master Separation Agreement between Delphi and GM.  In connection with these

---

[2]        The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.        In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.        The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.        In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its

---

[3]        Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the

Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors'

transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

11.      On March 31, 2006, the Company outlined the key tenets of its transformation

plan.  The Company believes that this plan will enable it to return to stable, profitable business

operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.

To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi

must modify its labor agreements to create a competitive arena in which to conduct business.

Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support

for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the

Company.  Third, the Debtors must streamline their product portfolio to capitalize on their

world-class technology and market strengths and make the necessary manufacturing alignment

with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that

the Company's organizational and cost structure is competitive and aligned with its product

portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to

their current pension situation.

12.      On December 18, 2006, the Debtors reached another milestone in their chapter 11

cases when they announced their acceptance of a proposal for an equity purchase and

commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of

Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital

Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC

(collectively, the "Plan Investors").  Under the Equity Purchase and Commitment Agreement, the

Plan Investors agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan and its Plan Framework Support Agreement (as defined below).  The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.

13.    Also, on December 18, 2006, in further support of its transformation plan, the Company announced that it had entered into a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors.  The Plan Framework Support Agreement as well as the economics and structure of the plan framework itself are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.  Contemporaneously with the issuance of these announcements on December 18, 2006, the Debtors sought authorization and approval of the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement, which are scheduled to be heard by the Court on January 11, 2007 (Docket No. 6179).  Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.       Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.       By this Supplemental Retention Application, the Debtors seek to expand the scope of Mayer Brown's employment as special counsel to the Debtors to include the provision of services related to the finance and accounting outsourcing project (the "F&A Project"), nunc pro tunc to July 1, 2006.

Overview

16.       The Debtors filed an application to retain and employ Mayer Brown as Special Information Technology Outsourcing Counsel to the Debtors in these chapter 11 cases on April 21, 2006 (the "Mayer Brown Retention Application").  On May 12, 2006, this Court approved the Mayer Brown Retention Application, and entered the Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing The Employment And Retention Of Mayer, Brown, Rowe, And Maw LLP As Special Information Technology Outsourcing Counsel To Debtors Nunc Pro Tunc To February 1, 2006 (Docket No. 3758) (the "Retention Order").

17.       Since February of 2006, Mayer Brown has represented, and continues to represent, the Debtors as their Special Information Technology Outsourcing Counsel in support of their reorganization process.  In particular, in accordance with the scope of authority provided in the Retention Order, Mayer Brown's services have involved a series of projects that can broadly be

7

characterized as relating to "information technology" outsourcing, including infrastructure, application development, and network projects.

18.        Another general field of outsourcing work involves business processes.  In business process outsourcing, a service provider takes responsibility for performing general and administrative functions such as human resources administration, logistics, procurement, customer contact centers, and finance and accounting.  The F&A Project, which is the subject of that certain supplemental engagement letter dated August 18, 2006, between Delphi and Mayer Brown (the "Supplemental Engagement Letter"), is within the field of business process outsourcing.  After initially being of the view of that Mayer Brown's retention as special outsourcing counsel was sufficiently broad to include the F&A Project, subsequently, in the Fall of 2006, it was decided that because Mayer Brown's initial engagement was limited to doing work as special <u>information technology</u> outsourcing counsel, it was appropriate and necessary to obtain Court approval to expand the scope of Mayer Brown's outsourcing work to include <u>business processes</u>.[4]

19.        This Supplemental Retention Application sets forth the proposed additional services to be provided by Mayer Brown and the associated fee arrangement and seeks the Court's approval for expansion of Mayer Brown's role.

<u>Scope Of Additional Services</u>

20.        Pursuant to the supplemental engagement letter, a copy of which is attached to the Roy Declaration as <u>Exhibit 1</u>, the Debtors seek to expand Mayer Brown's current scope of services to include services in connection with a financial and accounting outsourcing services

---

[4]        To further illustrate the point, the Debtors believe that following entry of a supplemental order approving the Supplemental Application that Mayer Brown should be referred to as Special Outsourcing Counsel, so that Mayer Brown no longer is limited solely to information technology-related outsourcing projects.

contract, the consummation of which will enable Delphi to outsource to a third-party service

provider the following Delphi functions on a global basis: accounts payable, accounts receivable,

fixed assets accounting, general ledger, travel and expense processing, and contract

administration. Through Mayer Brown's efforts in connection with the F&A Project, Delphi

expects to substantially reduce its costs while significantly improving its operational efficiency.

<u>Services To Be Rendered</u>

21.        As set forth in the Supplemental Engagement Letter, the Debtors wish to retain

Mayer Brown to provide services to the Debtors in connection with the F&A Project and other

business process outsourcing matters, including:

    (a)    Drafting, revising, and editing a form of outsourcing agreement appropriate for the applicable business processing services;

    (b)    Negotiating specific business process outsourcing agreements with third-party bidders to (i) obtain commitments to provide a defined scope of services at agreed-upon levels of service quality and agreed pricing, (ii) provide for ongoing improvement and change in Delphi's needs and available technology, (iii) establish a framework for governing the outsourcing relationship, and (iv) allocate legal and business risks associated with the services arrangement; and

    (c)    Assisting Delphi in selection of a finalist from the bidding process and finalizing the documentation to be entered into by Delphi with the selected service provider.

22.        The Debtors believe that the further employment of Mayer Brown will enhance

and will not duplicate the employment of other professionals retained by the Debtors to perform

specific tasks that are unrelated to the work to be performed by Mayer Brown as special

outsourcing counsel.   The Debtors understand that Mayer Brown will work with the other

professionals retained by the Debtors to avoid any such duplication.

23.        The Debtors further believe that the F&A Project is of significant value to the

Debtors and anticipate that significant savings will be realized as a result of this undertaking.

The F&A Project is intended to improve the Debtor's control, efficiency, and flexibility with

respect to its finance and accounting processes.  An outsourcing contract is necessary to obtain

binding legal commitments from the service provider for services and pricing that are expected

to yield these benefits.

Disinterestedness Of Professionals

24.        On April 21, 2006, Paul J.N. Roy executed a declaration (the "Original

Declaration") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") in support of the Mayer Brown Retention Application.  On August 17, 2006,

Mr. Roy executed the First Supplemental Declaration and Statement of Paul J.N. Roy Under Fed.

R. Bankr. P. 2014 and 2016 (the "First Supplemental Declaration").  As previously noted, filed

concurrently herewith is the Roy Declaration (collectively, with the Original Declaration and the

First Supplemental Declaration, the "Declarations").  Except as otherwise set forth in the

Declarations and to the extent known after reasonable inquiry, Mayer Brown, through its

partners, counsel, and associates, (a) does not have any connections with the Debtors or their

affiliates, their creditors, the United States Trustee for the Southern District of New York (the

"U.S. Trustee") or any person employed in the office of the U.S. Trustee, or any other party-in-

interest, or their respective attorneys and accountants, (b) is a "disinterested person," as that term

is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, and (c) does not hold or represent any interest adverse to the Debtors' estates.

Applicable Fee Arrangement

25.        Mayer Brown and the Debtors have agreed that Mayer Brown's fees will continue

at the rates stated in the original engagement letter through September 30, 2006, and will then

increase as set forth below to reflect the change in Mayer Brown's hourly rates in June of each

10

calendar year.  Specifically, the hourly rates for the professionals expected to work on this engagement are[5]:

| Professional | Until 9/30/06 | From 10/1/06 |
|---|---|---|
| Paul Roy | $580 | $650 |
| Brad Peterson | $540 | $590 |
| Paul Chandler | $475 | $510 |
| Sonia Baldia | $460 | $485 |
| Greg Manter | $300 | $345 |
| Kristina Herrmann | $260 | $320 |

These hourly rates will remain in effect until the earlier of the completion of the engagement and June 30, 2007, and thereafter, will revert to Mayer Brown's standard hourly rates in effect at such time, subject to the approval of this Court.

26.     Further, in addition to the rate discount disclosed in the Mayer Brown Retention Application, Mayer Brown has agreed to discount its rates by 5% for the first $400,000 of fees with respect to each of the application development management and network infrastructure phases of the project, and with respect to the first $500,000 of fees with respect to the F&A Project, and at 10% for the portion of Mayer Brown's fees for each portion of the engagement that exceeds the foregoing threshold.  In addition, Mayer Brown agrees not to charge for travel time, though the firm will charge for time spent working on Delphi matters while traveling.

27.     Mayer Brown will continue to apply to this Court for allowance of compensation and reimbursement of expenses related to the F&A Project in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy

---

[5]     In the event others from Mayer Brown become necessary to assist the Debtors on this matter, Mayer Brown will obtain written permission from the Debtors before engaging those individuals.  Mayer Brown understands that no fees will be paid for work performed by other individuals prior to obtaining the Debtors' written permission.

Rules for the Southern District of New York (the "Local Rules"), orders of this Court, and the guidelines established by the U.S. Trustee (the "U.S. Trustee Guidelines").

28.     Mayer Brown will not bill for the F&A Project separately from its other legal advisory services, but rather will designate a separate billing matter number so that the services rendered in connection with the F&A Project may be distinguishable and distinct from such other services.

29.     Pursuant to the Delphi Billing Instructions and Limitations annexed to the Supplemental Engagement Letter, the guidelines established by the Court in connection with these proceedings, the Local Rules, and the U.S. Trustee Guidelines, Mayer Brown will bill only for reasonable expenses and will not charge any markup, overhead, profit, or other fees on reimbursable expenses.

### Other Terms And Provisions

30.     All other terms and provisions that are applicable to the F&A Project are consistent with the Mayer Brown Retention Application and are hereby incorporated by reference into this Supplemental Retention Application and remain in full force and effect.

### Conclusion

31.     For the foregoing reasons, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates and creditors, and should be approved.

### Notice

32.     Notice of this Supplemental Retention Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court

12

on October 26, 2006 (Docket No. 5418).   In light of the nature of the relief requested, the

Debtors submit that no other or further notice is necessary.

Memorandum Of Law

33.        Because the legal points and authorities upon which this Supplemental Retention

Application relies are incorporated herein, the Debtors respectfully request that the requirement

of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be

deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter a supplemental order (a) authorizing the expansion of the scope of Mayer Brown's employment as Special Information Technology Outsourcing Counsel to the Debtors to include the provision of services related to the F&A Project, nunc pro tunc to July 1, 2006 and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          December 29, 2006

                           DELPHI CORPORATION, on behalf of itself and
                           certain of its subsidiaries and affiliates, as Debtors and
                           Debtors-in-possession

                           By:  /s/ John D. Sheehan_____
                                Name: John D. Sheehan
                                Title:  Vice President and Chief Restructuring
                                        Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                                       :

In re                           :         Chapter 11

                                         :

DELPHI CORPORATION, et al.,     :         Case No. 05-44481 (RDD)

                                       :

                    Debtors.     :         (Jointly Administered)

                                         :
--------------------------------------------------------x

SUPPLEMENTAL ORDER UNDER 11 U.S.C. § 327(e) AND FED. R. BANKR. P.2014
AUTHORIZING EXPANSION OF SCOPE OF EMPLOYMENT OF
MAYER, BROWN, ROWE & MAW LLP AS
SPECIAL OUTSOURCING COUNSEL TO DEBTORS TO INCLUDE
BUSINESS PROCESS OUTSOURCING SERVICES, NUNC PRO TUNC TO JULY 1, 2006

("MAYER BROWN SUPPLEMENTAL RETENTION ORDER")

Upon the supplemental retention application, dated December 29, 2006 (the "Supplemental Retention Application"), of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for a supplemental order (the " Supplemental Order") under 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014 authorizing the expansion of the scope of employment of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") to include additional outsourcing work related to the consummation of a business process outsourcing services contract, nunc pro tunc to July 1, 2006; and this Court having determined that the relief requested in the Supplemental Retention Application is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Supplemental Retention Application has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Supplemental Retention Application is GRANTED.

2.     The Debtors' employment of Mayer Brown as their special outsourcing counsel, pursuant to the Supplemental Retention Application, is approved under section 327(e) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with approval of such employment being effective as of July 1, 2006.

3.     Mayer Brown shall continue to be compensated in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and further orders of this Court.

4.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Supplemental Order.

5.     The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Supplemental Retention Application.


Dated: New York, New York
_____, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

Paul J. N. Roy, Esq.
Craig E. Reimer, Esq.
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel. 312.782.0600
Fax 312.701.7711
(Special Information Technology Outsourcing
Counsel to Debtors and Debtors-in-Possession)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                  :    Chapter 11
                                                        :    Case No.   05-44481 (RDD)
     DELPHI  CORPORATION, INC., et al.,                 :    (Jointly Administered)
                                   Debtors.             :
-------------------------------------------------------------x

## SECOND SUPPLEMENTAL DECLARATION AND STATEMENT OF
## PAUL J. N. ROY UNDER FED. R. BANKR. P. 2014 AND 2016

PAUL J. N. ROY, being duly sworn, deposes and says:

1.      I am a member of the firm of Mayer, Brown, Rowe & Maw LLP ("Mayer

Brown") which maintains an office for the practice of law at 71 South Wacker Drive,

Chicago, Illinois 60606-4637. On April 21, 2006, I executed a declaration (the "Original

Declaration") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") in support of the Application for Order Under 11 U.S.C. §§ 327(e)

and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of

Mayer, Brown, Rowe & Maw LLP as Special Information Technology Outsourcing

Counsel to Debtors Nunc Pro Tunc to February 1, 2006 (the "Retention Application").

Pursuant to an order entered May 12, 2006, this Court authorized the retention of Mayer

Brown to serve as the  Debtors' Special Information Technology Outsourcing Counsel.

Since February 1, 2006, Mayer Brown has represented, and continues to represent, the Debtors as their Special Information Technology Outsourcing Counsel[1].

2.     On August 17, 2006, I executed the First Supplemental Declaration and Statement of Paul J.N. Roy Under Fed. R. Bankr. P. 2014 and 2016 (the "First Supplemental Declaration", collectively, with the Original Declaration, the "Declarations").

3.     Among other things, the Declarations were filed in order to: (a) demonstrate that Mayer Brown did not hold any interest adverse to the Debtors in respect of any of the matters for which it is acting as special counsel; and (b) comply with Sections 327(e), 328, 329 and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b) and 5002 and the local rules of the United States District Court for the Southern District of New York and the United states Bankruptcy Court for the Southern District of New York.

4.     I hereby reaffirm and verify each and every one of the statements set forth in the Declarations, which are incorporated herein and made a part of this second supplemental declaration (the "Second Supplemental Declaration") as if set forth in their entirety in this paragraph.

5.     Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto. Certain of

---

[1] The *Supplemental Application for Supplemental Order Under 11 U.S.C.§ 327(e) and Fed. R. Bankr. P. 2014 and 2016 Authorizing Expansion of Scope of Employment of Mayer, Brown, Rowe & Maw LLP as Special Outsourcing Counsel to Debtors to Include Business Process Outsourcing Services, Nunc Pro Tunc to July 1, 2006* is being filed concurrently by the Debtors, in connection with business process outsourcing services being provided by Mayer Brown on behalf of Delphi, pursuant to their mutual agreement memorialized by that certain supplemental engagement letter, dated August 18, 2006 and annexed hereto as Exhibit 1.

the disclosures herein, however, relate to matters within the knowledge of other attorneys at Mayer Brown and are based on information provided by them.

6.     Prior to the execution of the Original Declaration, Mayer Brown performed extensive relationship and disclosure research with respect to the Debtors' affiliates, directors and officers, joint owners of the Debtors' affiliates, fifty largest unsecured creditors (on a consolidated basis as of September 2005, as determined by the Debtors), counterparties to major contracts, major lenders, shareholders owning more than 5% of outstanding shares, professionals, utility companies, counterparties to major leases, insurance providers, major vendors, major customers, non-Debtor parties to collective bargaining agreements with the Debtors, indenture trustees, underwriters of securities, major litigation parties, state and governmental agencies, and Judges and United States Trustees for the United States Bankruptcy Court for the Southern District of New York. The disclosures in the Original Declaration were based on that inquiry.

7.     Since its retention, and subsequent to the execution and filing of the First Supplemental Declaration, Mayer Brown has conducted additional queries of its client databases regarding possible relationships with, or connections to, the parties that filed formal notices of appearance in these cases (the "Rule 2002 Entities"), the parties on the master service list (the "Master Service List Parties"), and certain other parties who have been actively involved in these cases or otherwise identified to Mayer Brown.

8.     Mayer Brown is filing this Second Supplemental Declaration to supplement the disclosures in the Declarations and to provide additional disclosures regarding the results of its continued client database research of the parties that have appeared in these cases and other additional due diligence.  Mayer Brown will continue

3

to conduct further due diligence and research of its client databases and will periodically file additional supplemental declarations regarding its retention, to the extent necessary.

9.    Except as otherwise set forth in the Declarations and in this Second Supplemental Declaration, to the extent known by me after reasonable inquiry, Mayer Brown, through its partners, counsel, and associates, (a) does not have any connections with the Debtors or their affiliates, their creditors, the United States Trustee for the Southern District of New York (the "U.S. Trustee") or any person employed in the office of the U.S. Trustee, or any other party-in-interest, or their respective attorneys and accountants, (b) is a "disinterested person", as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (c) does not hold or represent any interest adverse to the Debtors' estates.

10.    Except as otherwise set forth in the Declarations and in this Second Supplemental Declaration, to the extent known by me after reasonable inquiry, Mayer Brown does not represent and has not represented any entity, other than the Debtors, in matters related to these bankruptcy cases. To the extent known by me after reasonable inquiry, the identity of any adverse or potentially adverse parties-in-interest were disclosed in the Declarations or are disclosed in this Second Supplemental Declaration. Mayer Brown's representation of any such entities has not and will not affect its representation of the Debtors in these cases as Special Outsourcing Counsel.

### Supplemental Due Diligence And Disclosures

11.    Subsequent to the execution and filing of the First Supplemental Declaration, the Debtors provided Mayer Brown with a list, current through November 1, 2006, of names of additional potential parties-in-interest in these cases.  Based on this

new information, Mayer Brown performed additional searches of its client databases for

the Rule 2002 Entities known to the Debtors as of November 1, 2006, the Master Service

List Parties known to the Debtors as of November 1, 2006, retained professionals, and

certain other potential parties-in-interest. Based on such subsequent client database

queries, Mayer Brown has determined that it represents or has represented (in addition to

those entities previously disclosed in the Declarations) certain creditors or other potential

parties-in-interest (or in some cases their affiliates as indicated) on matters unrelated to

the Debtors or these cases as follows:

12.    <u>Professionals</u>: Ropes & Gray, LLP.

13.    <u>Major Vendors</u>:  Speedline Technologies, Inc., Ametek, Inc.[2]

14.    <u>Rule 2002 Entities, Entities Actively Involved in these Cases, and Master</u>

<u>Service List Parties</u>: Comerica Leasing[3], Merrill Lynch Credit Products, LLC[4].

15.    <u>Additional Disclosures</u>:  Delphi is in the process of evaluating AT&T

Corporation ("AT&T") and other potential bidders competing for the telecom portion of

certain information technologies outsourcing work.  In connection with scope of services

---

[2] Mayer Brown represents or has represented Ametek GmbH, an affiliate of Ametek, Inc.

[3] Mayer Brown represents or has represented the following affiliates of Comerica Leasing: (i) Comerica Bank-Detroit; (ii) Comerica;   (iii) Comerica Corporation; (iv) Comerica, Inc. and Munder Capital Management; (v) Comerica Bank-California; (vi) Comerica Bank and Century Capital Markets, LLC; (vii) Comerica Securities Inc.; and (viii) Comerica Bank & Mass Mutual Life Insurance Co.

[4] Mayer Brown represents or has represented the following affiliates of Merrill Lynch Credit Products, LLC: (i) Merrill Lynch & Co., Inc.; (ii) Merrill Lynch, Pierce, Fenner & Smith, Inc.; (iii) Merrill Lynch Capital Corporation; (iv) Merrill Lynch Money Markets, Inc.; (v) Merrill Lynch International Limited; (vi) Merrill Lynch International; (vii) Merrill Lynch Investment Managers; (viii) Merrill Lynch Global Markets;  (ix) Merrill Lynch Commercial Loan Corporation; (x) Morgan Stanley & Co. Incorporated/Merrill Lynch & Co.; (xi) Services Regulations Coalition consisting of, among others, Merrill Lynch & Co., Inc.; (xii) Merrill Lynch &Co., Inc. (Customer Pay); (xiii) Wachovia Securities and Merrill Lynch &Co., Inc. (Customer Pay); (xiv) Wachovia Securities and Merrill Lynch & Co.; Merrill Lynch, Pierce, Fenner & Smith Incorporated (Bank Pay); (xv) Aztex Associates, L.P.; (xvi) Dresdner bank AG London Branch; Merrill Lynch International; (xvii) Nationwide Building Society and Merrill Lynch Commercial Loan Corporation; (xviii) Merrill Lynch International; Citigroup Global Markets Ltd.; (xix) Merrill Lynch, Professional Clearing Corp.; and (xx) Merrill Lynch Commercial Loan Corporation; Capmark Services Ireland Limited.

Mayer, Brown already is authorized to provide as Special Information Technology Outsourcing Counsel, Mayer Brown has been representing Delphi in that bidding process and will continue to represent Delphi in negotiations and any further dealings with the telecom party selected to be the winning bidder. While no decision has yet been made as to whom the winning bidder may be, for purposes of full disclosure it should be noted that Mayer Brown has in the past represented, is currently representing and may in the future represent AT&T or its affiliates in matters that are completely unrelated to this engagement, specifically, or to Delphi and its chapter 11 cases, generally. In addition, conflict waiver letters have been obtained from both AT&T and Delphi with respect thereto.

### **Further Due Diligence**

16.    Mayer Brown intends to conduct further database queries and file supplemental declarations, to the extent necessary and as warranted, periodically, over the duration of its retention and participation in these chapter 11 cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on December 19, 2006, at Chicago, Illinois

/s/ Paul J. N. Roy
Paul J. N. Roy

**Exhibit 1**
**Supplemental Engagement Letter**

August 18, 2006

Marjorie Harris Loeb, Esq.
Assistant General Counsel
  Corporate and Securities
Delphi Corporation
MC 483.400.603
5725 Delphi Place
Troy, Michigan 48098

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Paul J.N. Roy
Direct Tel (312) 701-7370
Direct Fax (312) 706-8196
proy@mayerbrownrowe.com

Dear Ms. Loeb:

This letter supplements our agreement for the provision of legal services by this Firm to Delphi Corporation ("Delphi") as outlined in my letter to you dated February 3, 2006 (the "Original Engagement Letter") and outlines the terms by which the Firm has agreed to expand the scope of services provided in connection with an IT outsourcing services contract (the "ITO Project") and further agrees to provide services in connection with a Financial and Accounting outsourcing services contract (the "F&A Project"), subject to the attainment of waiver letters, if necessary. Specifically the scope of the ITO Project will be expanded to cover the negotiation of outsourcing services contracts related to two additional service towers, applications development management (the "ADM Phase") and network infrastructure (the "Network Phase"). You may limit or expand the scope of our representation at any time, provided that any expansion must be by mutual consent. We are very pleased that you have retained us and will, of course, answer any questions you may have about these arrangements.

## PAYMENT PROVISIONS

We recognize that in choosing us to provide these services, you are choosing specific individuals at the Firm, including myself, Brad Peterson, Sonia Baldia, Paul Chandler, Greg Manter and Kristina Herrmann. I will continue to be your primary interface on this engagement with respect to the ITO Project and Brad Peterson will be your primary interface with respect to the F&A Project and each of us will supervise the other professionals involved. I, with the continued assistance of Paul Chandler with respect to our work under the Original Engagement Letter, and with the assistance of both Paul Chandler and Greg Manter with respect to the ADM Phase and Network Phase, will lead the ITO Project. Brad Peterson, with assistance from Sonia Baldia, will lead the F&A Project. As per our discussion, I will keep you informed of staffing needs and work with you in coordinating with Delphi's internal legal staff so that together we can insure the most cost-efficient and effective delivery of services. Others from the Firm may be necessary to assist us on this engagement, but we have agreed to obtain your written permission before engaging them. No fees will be paid for work performed by others before we

9056727 42007437

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 2

have obtained your written permission.  The Firm endeavors, to the maximum extent compatible with the quality of our work product, to assign our personnel in a way designed to produce timely and economical handling of matters.  If at any time you have questions, concerns or suggestions, please contact me promptly.

Our fees for services are based on time (at quarter hour increments) spent on specific projects, computed at our hourly rates for those persons performing the services required.  As we discussed, our fees will continue at the rates stated in the Original Engagement Letter through September 30, 2006, and will then increase as set forth below to reflect the increase in the Firm's hourly rates as of June 1, 2006.  Specifically the hourly rates for the professionals you have approved for this engagement are as follows:

| PROFESSIONAL | UNTIL 9/30/06 | FROM 10/01/06 |
|---|---|---|
| Paul Roy | $580 | $650 |
| Brad Peterson | $540 | $590 |
| Paul Chandler | $475 | $510 |
| Sonia Baldia | $460 | $485 |
| Greg Manter | $300 | $345 |
| Kristina Herrmann | $260 | $320 |

We agree these hourly rates will remain in effect until the earlier of the completion of the engagement and June 30, 2007 and thereafter will revert to the Firm's standard hourly rates in effect at such time, in all cases subject to the agreed upon discounts set forth below.

Our agreement to discount our rates with respect to the first phase of the IPO Project remains as set forth in the Original Engagement Letter.  We also agree to discount our rates by 5% for the first $400,000 of fees with respect to each of the ADM Phase and Network Phase, and with respect to the first $500,000 of fees with respect to the F&A Project, and at 10% for the portion of our fees for each portion of the engagement that exceed the foregoing thresholds.  We will not charge for travel time, though we will charge for time we are working on your matters while traveling.

Our hourly billable rates include our general overhead and internal charges associated with our practice.  A copy of the Delphi billing instructions and limitations is enclosed and incorporated into this engagement agreement by this reference, together with a copy of our current schedule of charges, which will apply only to the extent permitted by the Delphi billing instructions and limitations.

9056727 42007437

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 3

We anticipate submitting to you monthly invoices for the professional (lawyer and paralegal) services rendered and other charges and expenses incurred. Payment is due upon receipt of our statement and in no event later than 30 days thereafter, subject to the terms of any applicable court orders issued in the bankruptcy proceedings involving Delphi and its affiliated debtors. We will provide you with billing details specifying the individuals involved, their positions here, the hours and work performed and an itemization of other charges.

CONFLICT PROVISIONS

You agree that our Firm may represent the persons or entities listed in Attachment A where their interests are adverse (in litigation, transactions or otherwise) to you or your affiliates in matters not substantially related to our engagement by you. In addition, you agree that our Firm may represent other persons or entities (i.e., not listed in Attachment A) whose interests are adverse to you or your affiliates in matters not substantially related to our engagement by you, provided that so long as you remain a continuing client of our Firm, we will not represent such other persons or entities in any litigation or arbitration adverse to Delphi without having obtained a separate waiver from you for that representation.

We agree, however, that your prospective consent to adverse representation shall not apply in any instance where, as the result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to any such other client of ours, could be used in a matter in which we are retained by our other client to your material disadvantage unless we have screened our lawyers and paralegals who have such information from any involvement in the adverse representation. In addition no lawyer of our Firm who is representing Delphi will participate in the representation of another person or entity adverse to Delphi. The attorneys in our Firm working on matters for Delphi and persons or entities adverse to Delphi will, of course, keep segregated and separate any work product and information concerning the matters for Delphi from any work product and information concerning the matters for any person or entity adverse to Delphi.

For the purpose of determining whether a conflict of interest exists, it is only you and your subsidiaries which we will represent and not your stockholders or other related companies (collectively "Other Related Persons"). You agree not to give us confidential information regarding your Other Related Persons. While we recognize that to act adversely to any Other Related Persons could jeopardize a long term relationship with you, which we would naturally be reluctant to do, for conflict of interest purposes we reserve the right to represent another client with interests adverse to any Other Related Person without obtaining any consent from you or such Other Related Person.

TERMINATION OF ENGAGEMENT

Following termination of our engagement, any otherwise nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable

**Mayer, Brown, Rowe & Maw LLP**

Marjorie Harris Loeb, Esq.
August 18, 2006
Page 4

rules of professional conduct. At your request, your papers and property will be returned to you;
our own files, including lawyer work product, pertaining to the matter will be retained by us,
however we will provide copies of such materials to you should you request us to do so. For
various reasons, including the minimization of unnecessary storage expenses, we reserve the
right to destroy or otherwise dispose of any such items retained by us within a reasonable time
after the termination of the engagement.

Our attorney-client relationship will be considered terminated if more than 12 months
have elapsed from the last time you requested and we furnished any billable services to you. If
you later retain us to perform further or additional services, our attorney-client relationship will
be revived, subject to these and any supplemental terms of engagement. The fact that we may
inform you from time to time of developments in the law which may be of interest to you, by
newsletter or otherwise, should not be understood as a revival of an attorney-client relationship.
Moreover, we have no obligation to inform you of such developments in the law unless we are
engaged in writing to do so.

<u>ACCEPTANCE</u>

This letter constitutes the entire understanding between you and Mayer, Brown, Rowe &
Maw LLP and supersedes all prior understandings, written or oral, relating to its subject matter.
Any change must be made or confirmed in writing. If this letter correctly reflects your
understanding of the terms and conditions of our engagement, please indicate your acceptance by
signing the enclosed copy of this letter in the space provided below and returning it to our office,
to my attention.

On behalf of Mayer, Brown, Rowe & Maw LLP, I thank you for the opportunity to be of
service.

Sincerely,

Paul J.N. Roy

We agree to the foregoing terms:

DELPHI CORPORATION

By:

Delphi Billing Instructions and Limitations

## Payment Terms

Delphi payment terms are MSN-2 (second day of the second month, after the date of the invoice).

## Permitted Reimbursables

Delphi will reimburse a law firm for reasonable and actual out-of-pocket payments made to third-party vendors (i.e., Delphi will not pay for markups or surcharges added by the law firm) for the following items:

- Air freight/express mail deliveries
- Bond fees and premiums
- Coach-class air fare (lowest available rate/class)
- Computerized legal research (e.g., Lexis, Westlaw)
- Court reporter fees
- Expert witness fees
- Filing fees
- Inside photocopy (up to 10 cents per page)
- Local business transportation (e.g., taxi fares)
- Long distance telephone charges (for voice, fax or data)
- Outside messenger services
- Outside photocopy, binding, and printing services
- Postage
- Travel (airfare, hotel, rental car)

Delphi will not pay for:

- Books/subscriptions
- Fax communications (except long distance telephone charges)
- Hourly fees while traveling
- Inside photocopy (more than 10 cents per page)
- Local meals
- Local personal transportation (taxi/limousine to/from home)
- Local telephone charges
- Membership fees
- Office supplies
- Overtime charges
- Secretarial/clerical charges
- Storage charges

9056727 42I07437

- Word processing

9056727 42007437

Mayer, Brown, Rowe & Maw LLP
U. S. Offices

Schedule of Non-fee Charges to Clients

(which will apply only to the extent permitted by the Delphi Billing Instructions and Limitations)

July 1, 2005

I.    Long Distance Telephone.

We purchase our long-distance telephone service from telecommunications providers at

discounted rates. We charge clients at rates calculated to recover our cost.

II.    Automated Research.

We purchase services from Lexis and Westlaw at fixed monthly rates which are substantially

below their published rates. We charge clients for the Lexis and Westlaw connections at rates

calculated to recover our cost.

III.    Telefax Service.

We charge clients $1.00 per page, plus applicable long distance telephone charges regardless of

length at our discounted rates. There is no charge for incoming telefaxes.

IV.    Document Reproduction.

We charge clients for standard-size internal black and white copies at the rate of $.15 per page.

We charge clients for standard-size internal color document reproduction (if specifically

requested by clients) at the rate of $1.00 per page. We currently reproduce documents using

photocopiers, laser printers, and digital copiers, and may in the future use other means of

reproduction. Outside copying is charged at actual out-of-pocket cost.

V.    Postage.

We charge clients at cost for postage when the cost of mailing is $1.00 or more.

9056727 42007437

VI.    Out-of-pocket Disbursements.

The following types of disbursements when related to a client matter are charged at the firm's

cost:

> Advances on behalf of clients (*e.g.*, tax payments, filing fees, title
> charges)
> Consultants' and expert witnesses' fees and expenses
> Courier and messenger services
> Court reporters
> Equipment when purchased solely for a client matter
> Meals
> Outside services (including cost of litigation support services
> purchased from outside vendors)
> Service of process
> Records searches
> Supplies (when amounts are large or type of supply item is special)
> Tax return processing charges
> Taxis, mileage, parking (local)
> Travel (airfares, hotels, meals, car rentals, fees of travel agencies
> and professionals, taxis and incidentals)*
> Trial exhibits
> Witness fees and costs
> Other items not covered above that are directly attributable to a
> client matter
>
> *We use commissions paid to our travel agents by hotels and auto
> rental companies to reduce the costs to us of our Travel
> Department.

VII.    Items Not Charged to Clients.

> Administrative overhead
> Air conditioning and electricity for overtime work
> Client entertainment
> Local and suburban telephone calls
> Rent for conference rooms

9056727 42007437

Attachment A

Gail O'Brien
Logan Robinson
Oppenheimer Senior Floating Rate Fund
Tenneco and its subsidiaries
TRW Automotive Inc. and its subsidiaries
Ispat Inland/Mittal Steel USA Inc. and its subsidiaries
United Stars, Inc. and its subsidiaries
Hub Group and its subsidiaries
Micronas Semi-Conductors and its subsidiaries
Bank of America N.A. and its subsidiaries
Milan E. Belans II

9056727 42007437

# EXHIBIT E

**Presentment Date and Time: January 8, 2007 at 4:00 p.m.**
**Objection Deadline: January 8, 2007 at 2:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                              :
                In re                                         :      Chapter 11
                                                              :
    DELPHI CORPORATION, et al.,                               :      Case No. 05-44481 (RDD)
                                                              :
                                Debtors.                      :      (Jointly Administered)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
AND FED. R. BANKR. P. 2014 EXPANDING THE SCOPE OF RETENTION OF
PRICEWATERHOUSECOOPERS LLP TO PROVIDE DUE DILIGENCE SERVICES
NUNC PRO TUNC TO DECEMBER 15, 2006

PLEASE TAKE NOTICE that on December 29, 2006, Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned cases, filed the Supplemental Application For Order Under 11 U.S.C. §§ 327(a) And 328 And Fed. R. Bankr. P. 2014 Expanding The Scope Of Retention Of PricewaterhouseCoopers LLP To Provide Due Diligence Services <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To December 15, 2006 (the "Supplemental Application," attached to this notice as <u>Exhibit A</u>).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed, served, and received in accordance with this notice, a hearing to consider approval of the Supplemental Application will be held on January 12, 2007 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the Supplemental Application are timely filed, served, and received, the supplemental order filed with the Supplemental Application and attached to this notice as <u>Exhibit B</u> will be submitted for signature to the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004 on January 8, 2007 at 4:00 p.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Supplemental Application must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

2

Dates And Certain Notice, Case Management, And Administrative Procedures, entered

by this Court on October 26, 2006, as amended (the "Amended Eighth Supplemental

Case Management Order") (Docket No. 5418), (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) registered users of the Bankruptcy

Court's case filing system must file electronically, and all other parties-in-interest must

file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (d) be submitted in hard-copy form

directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy

Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan

48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition

credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New

York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York

10017 (Att'n: Brian Resnick), (v) counsel for the Official Committee Of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022

(Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for

PricewaterhouseCoopers LLP, Office of the General Counsel, 3 Embarcadero Center,

San Francisco, CA 94111 (Att'n: Kim A. Thompson), (vii) counsel for the Official

Committee Of Equity Security Holders, Fried Frank, Harris, Shriver & Jacobson LLP,

One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), and (viii)

the Office of the United States Trustee for the Southern District of New York, 33

3

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard),

in each case so as to be **received** no later than **2:00 p.m. (Prevailing Eastern Time) on**

**January 8, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Amended Eighth Supplemental Case Management

Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the

Supplemental Application are timely filed and served in accordance with the procedures

set forth herein and in the Amended Eighth Supplemental Case Management Order, the

Bankruptcy Court may enter an order granting the Supplemental Application **without**

**further notice.**

Dated:   New York, New York
              December 29, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   /s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 9331)
        Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By:   /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

4

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                             :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

SUPPLEMENTAL APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
AND FED. R. BANKR. P. 2014 EXPANDING THE SCOPE OF RETENTION OF
PRICEWATERHOUSECOOPERS LLP TO PROVIDE DUE DILIGENCE SERVICES
NUNC PRO TUNC TO DECEMBER 15, 2006

("PWC SUPPLEMENTAL RETENTION APPLICATION")

        Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned cases, hereby submits this supplemental retention application (this "PwC Supplemental Retention Application") for a supplemental order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 expanding the scope of its retention of PricewaterhouseCoopers LLP ("PwC"), nunc pro tunc to December 15, 2006.  Specifically, Delphi proposes to retain PwC to perform due diligence services for Delphi that will facilitate due diligence by plan investors working with the Company (as defined below) to facilitate its emergence from chapter 11.  In support of this PwC Supplemental Retention Application, Delphi submits the Supplemental Declaration Of Colin Wittmer, executed on December 29, 2006 (the "Wittmer Declaration"), and respectfully represents as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates (the "Affiliate Debtors" and together with Delphi, the "Debtors")[1], filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended and in effect on October 8, 2005 (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

---

[1]    In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code and rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to the Company in accordance with

the terms of a Master Separation Agreement between Delphi and GM.  In connection with these

transactions, Delphi accelerated its evolution from a North American-based, captive automotive

supplier to a global supplier of components, integrated systems, and modules for a wide range of

customers and applications.  Although GM is still the Company's single largest customer, today

more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

        8.    In the first two years following Delphi's separation from GM, the Company

generated approximately $2 billion in net income.  Every year thereafter, however, with the

exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company

reported a net loss of approximately $4.8 billion on $28. billion in net sales.[3]  Reflective of a

continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4

billion on net sales of $26.9 billion.

        9.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

---

[3]        Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording
of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net
operating loss in calendar year 2004 was $482 million.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

5

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

13.    Delphi respectfully requests the entry of a supplemental order under sections

327(a) and 328 of the Bankruptcy Code expanding the scope of its retention of PwC <u>nunc</u> <u>pro</u>

<u>tunc</u> to December 15, 2006 for PwC to provide due diligence services to the Company on the

terms and conditions of that certain Master Professional Services Agreement dated as of March

17, 2006 (the "Master Agreement"), a copy of which is attached as Exhibit 1 to the Wittmer

Declaration, and the Statement of Work For Transaction Services dated as of December 15, 2006

(the "Transaction Services Statement Of Work"), a form of which is attached as Exhibit 2 to the

Wittmer Declaration, <u>nunc</u> <u>pro</u> <u>tunc</u> to December 15, 2006.

<u>Overview Of Delphi's Retention Of PwC</u>

14.    On June 5, 2006, the Debtors filed an application (Docket No. 4028) (the

"Initial PwC Application") to employ PwC to provide assistance to Delphi in complying with the

provisions of the Sarbanes-Oxley Act of 2002 including, but not limited to, section 404 of the

Sarbanes-Oxley Act, as well as to provide certain compliance, tax and financial planning, and

other general tax consulting services to the Debtors in these chapter 11 cases on the terms and

conditions of the Master Agreement and applicable statements of work (the "Statements Of

Work") between PwC and the Debtors.

15.    On June 21, 2006, this Court approved the Initial PwC Application and

entered the Order Under 11 U.S.C. §§ 327(a) And 328 Fed. R. Bankr. P. 2014 Authorizing

Employment And Retention Of PricewaterhouseCoopers LLP To Provide Certain Sarbanes-

Oxley Compliance, Tax And Financial Planning, And Other General Tax Consulting Services To

Debtors Nunc Pro Tunc to January 1, 2006 (Docket No. 4310) (the "Initial PwC Retention

Order").  The Initial PwC Retention Order authorized the Debtors to enter into additional

Statements Of Work with PwC for the provision of additional services under the Master

Agreement and the Initial PwC Application, provided, however, that if PwC sought to perform

services which were not covered by the Master Agreement and the Initial PwC Application, the

Debtors would be required to file a supplemental application seeking court approval for the

performance of such additional services.  The services described in this PwC Supplemental

Retention Application and the Transaction Services Statement Of Work are not covered under

the Master Agreement and the Initial PwC Application.  Accordingly, Delphi submits this PwC

Supplemental Retention Application.

      16.    Delphi seeks to employ PwC to help facilitate its plan of reorganization

diligence process.  As more fully described below, PwC's work under the terms of the

Transaction Services Statement Of Work should facilitate plan investors' diligence process.  PwC

has been providing such services to Delphi since December 15, 2006.

Services To Be Rendered

      17.    The work that PwC will perform under the terms of the Transaction Services

Statement Of Work will include, but will not be limited to, holding discussions with certain

officers, employees, and outside consultants of Delphi, performing financial analysis of the

historical results and trends of Delphi, commenting on projected financial information prepared

by management, and performing certain other procedures, as described in more detail below.

Throughout this project, PwC will provide Delphi with oral reports, various outlines, executive

summaries, analytical schedules, and similar work product, as requested.

7

<u>Responsibilities And Limitations</u>

18.    The Master Agreement and the Transaction Services Statement Of Work

provide for various responsibilities and limitations of the expanded retention which are

summarized below:[4]

(a)    <u>Limitations Regarding Information Provided By Delphi</u>.  PwC assumes no responsibility and makes no representations with respect to the accuracy or completeness of information provided by Delphi.  Moreover, PwC's work cannot provide assurance that matters of significance to the financial information or to Delphi's plan of reorganization process will be disclosed and that a plan investor's due diligence will not identify significant matters not previously identified by PwC or management of Delphi.

(b)    <u>Responsibilities Of Delphi</u>.  It is Delphi's responsibility to determine the adequacy of the work to be performed for its purposes.  Also, it is understood that it is Delphi's right and responsibility to (1) designate a management-level individual or individuals to be responsible for overseeing the services being provided, (2) evaluate the adequacy of the services performed and any findings that result, (3) make all management decisions and perform all management functions, including accepting responsibility for the results of the services to be rendered by PwC, and (4) determine exclusively the scope of work (as described further below) included in Exhibit I to the Transaction Services Statement Of Work.  Delphi is solely responsible for all information provided to plan investors.

(c)    <u>Limitation Of Liability</u>.

(i)    The Transaction Services Statement Of Work is between Delphi and PwC only.  In the course of providing services under the Transaction Services Statement Of Work, PwC, in its discretion, may draw on the resources of other firms affiliated with PwC.  Provision of services, however, remains PwC's responsibility alone and Delphi agrees that no other firm affiliated with PwC, nor the partners,

---

[4]    The discussion of the Master Agreement and the Transaction Services Statement Of Work contained herein is a summary only.  In the event of any inconsistency between this summary and either the Master Agreement or the Transaction Services Statement Of Work, the terms of the Master Agreement or the Transaction Services Statement Of Work, as the case may be, control.

principals, or employees of PwC or other firms affiliated with PwC who perform work in connection with the Transaction Services Statement of Work, will have any liability to Delphi in connection with the Master Agreement or the Transaction Services Statement Of Work or services provided thereunder.  Delphi therefore agrees that it will not bring any claim under the Master Agreement or Transaction Services Statement Of Work against PwC or any affiliated firm relating to the services provided thereunder, except where such claim cannot be excluded by law.

(ii)    Delphi agrees to release PwC from any and all claims, liabilities, costs, and expenses attributable to any knowing misrepresentation by Delphi or Delphi management.

(iii)    Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC, PwC's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence, or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to PwC for services provided under the Transaction Services Statement of Work.

(d)    <u>Termination</u>.  The Master Agreement provides that either PwC or Delphi may terminate it or any Statement Of Work if a material breach of the Master Agreement is not cured within 30 days after receipt of written notice of such breach.  In addition, Delphi may terminate the Master Agreement or any Statement Of Work for convenience at any time upon 30 days' prior written notice.  If Delphi terminates the Master Agreement or any Statement Of Work for any other reason or if PwC terminates for a material breach by Delphi, then Delphi will be responsible for fees and expenses incurred through the actual date of termination.

<u>Procedures To Be Followed By PwC</u>

19.    Subject to a work plan to be authorized by Delphi, PwC will perform certain

due diligence procedures covering the general areas outlined below and more fully set forth in

the Transaction Services Statement Of Work and Exhibit I thereto:

(a)    Obtain an understanding of the Company's accounting policies and how those policies impact reported results.  Assess the overall

9

adequacy of the Company's compliance with Sarbanes-Oxley rules and reporting responsibilities.

(b)    Obtain an understanding of the status of significant "investigations" into the Company's financial reporting and the Company's current estimate, if any, of the range of the potential effects to its reported earnings.

(c)    Understand significant joint-venture agreements and how their accounting treatment impacts reported EBITDA and cash flow.

(d)    Summarize the key financial aspects of transactions and agreements/arrangements between the Company and General Motors.

(e)    Perform appropriate due diligence procedures on the following subject areas pursuant to a work plan to be authorized by Delphi:

(i)    Quality Of Earnings/Cash Flow (performed for each operating division as appropriate);

(ii)    Operating Division Analysis And Corporate Headquarters (performed for each operating division as appropriate);

(iii)    2007 To 2012 Business Plan (performed for each operating division as appropriate);

(iv)    Balance Sheet;

(v)    Tax Due Diligence; and

(vi)    Employee Benefits Due Diligence

20.    Subject to this Court's approval of the PwC Supplemental Retention Application, PwC is willing to perform the services described in the Transaction Services Statement Of Work on the terms set forth therein and in the Master Agreement.

<u>Disinterestedness Of Professionals</u>

21.    The Declaration of Brian D. Decker executed on June 5, 2006 (Docket No. 4028) (the "Original Declaration"), filed in support of the Initial PwC Application, and the Wittmer Declaration (together with the Original Declaration, the "PwC Declarations"), filed in

10

support of this PwC Supplemental Retention Application, contain information available as of the

date hereof with respect to PwC's connections with other parties-in-interest, as required by

Bankruptcy Rule 2014(a).  Based on the information set forth in the PwC Declarations, Delphi

submits that PwC and the professionals in the firm are "disinterested persons," as that term is

used in section 101(14) of the Bankruptcy Code, and are otherwise eligible to be retained under

section 327(a) of the Bankruptcy Code.

23.     Moreover, the Transaction Services Statement Of Work provides that the

PwC team assigned to this engagement will not have access to the team members, working

papers, or reports of any other PwC engagements in these chapter 11 cases without Delphi's prior

consent.

Professional Compensation

23.     Consistent with the Master Agreement and the Transaction Services

Statement Of Work and as described in the Wittmer Declaration, Delphi has agreed to

compensate PwC reasonable sums in accordance with the normal rates charged by PwC for the

services provided.  In addition, as set forth in the Master Agreement, PwC will bill Delphi for

pre-approved and reasonable out of pocket and travel expenses according to the guidelines set

forth in Exhibit A to the Master Agreement (Delphi Travel and Expense Reimbursement Policy

For Contractors).[5]  As stated in the Wittmer Declaration, PwC estimates that its fees for this

engagement will range from $3.5 million to $5.5 million.  If, during the course of PwC's work

pursuant to the Transaction Services Statement Of Work, it appears that PwC's fee will exceed

this estimate, PwC will advise Delphi immediately and will not undertake additional work

---

[5]     Pursuant to the Master Agreement, included in travel expenses will be PwC internal ticket charges for
booking travel (as agreed from time to time between PwC and Delphi).  The internal per ticket charge is an
allocation of estimated costs of running PwC's travel department in a manner to maximize cost savings.

11

without Delphi's prior approval.  This estimate is based upon PwC's hourly rates for the

individuals to be assigned to this engagement.  The agreed upon range of rates are:

| | |
|---|---|
| Partner & Managing Director | $775 to $900 |
| Director | $515 to $600 |
| Manager | $390 to $450 |
| Senior | $325 to $375 |
| Associate | $290 to $325 |
| Administration | $100 to $150 |

These rates are PwC's normal and customary rates for the type of services to be provided.

Delphi is advised that these rates are subject to change but that any changes will remain in line

with market rates for comparable services.

24.    In the event that this Court approves Delphi's retention of PwC, (a) PwC's

fees and expenses will be subject to (i) the jurisdiction and approval of this Court with regard to

PwC's retention, (ii) the Interim Compensation Order (Docket No. 869), the Supplemental

Interim Compensation Order (Docket No. 2747), the Second Supplemental Interim

Compensation Order (Docket No. 2986), the Third Supplemental Interim Compensation Order

(Docket No. 3630), the Fourth Supplemental Interim Compensation Order (Docket No. 4545),

the Fifth Supplemental Interim Compensation Order (Docket No. 5310), and the Sixth

Supplemental Interim Compensation Order (Docket No. 6145) (collectively, the "Interim

Compensation Orders") and any amendments thereto, and (iii) any requirements governing

interim and final fee applications as set forth in the Interim Compensation Orders and (b) Delphi

will pay all fees and expenses of PwC under the Transaction Services Statement Of Work as

promptly as practicable in accordance with the terms thereof, the Interim Compensation Orders,

as may be amended, and any other orders of this Court governing interim and final fee

applications, and after obtaining all necessary further approvals from this Court, if any.

25.    PwC will continue to file fee applications for interim and final allowance of

compensation and reimbursement of expenses pursuant to the procedures set forth in sections

330 and 331 of the Bankruptcy Code, any applicable Bankruptcy Rules, the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules"), the guidelines established by the Office of the United States Trustee, and further orders

of this Court.

<u>Dispute Resolution Procedures</u>

26.    As set forth in the Transaction Services Statement Of Work, Delphi and

PwC have agreed, subject to this Court's approval of this PwC Supplemental Retention

Application, that:  (a) any controversy or claim with respect to, in connection with, arising out of,

or in any way related to this PwC Supplemental Retention Application or the Transaction

Services Statement Of Work or the services provided by PwC to Delphi as outlined in this PwC

Supplemental Retention Application or the Transaction Services Statement Of Work, including

any matter involving a successor in interest or agent of any of Delphi or of PwC, will be brought

in this Court or the United States District Court for the Southern District of New York if such

District Court withdraws the reference, (b) PwC and Delphi and any and all successors and

assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive

forum (unless such court does not have or retain jurisdiction over such claims or controversies)

for the resolution of such claims, causes of actions or lawsuits, (c) PwC and Delphi, and any and

all successors and assigns thereof, waive trial by jury, such waiver being informed and freely

made, (d) if this Court, or the District Court if the reference is withdrawn, does not have or retain

jurisdiction over the foregoing claims and controversies, PwC and Delphi, and any and all

successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is

13

not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit III to the Transaction Services Statement Of Work, and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

27.    PwC has agreed, as set forth in the Transaction Services Statement Of Work, not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the United States District Court for the Southern District of New York (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this PwC Supplemental Retention Application or the services provided hereunder.

<u>Conclusion</u>

28.    For the foregoing reasons, Delphi submits that the relief requested herein is in the best interests of Delphi and its estates and stakeholders and should be approved.

<u>Notice</u>

29.    Notice of this PwC Supplemental Retention Application has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418).  In light of the nature of the relief requested, Delphi submits that no other or further notice is necessary.

<u>Memorandum Of Law</u>

30.    Because the legal points and authorities upon which this PwC Supplemental Retention Application relies are incorporated herein, Delphi respectfully requests that the

requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, Delphi respectfully requests that this Court enter a supplemental order (a) authorizing the expansion of the scope of retention of PwC to perform the services set forth in the Transaction Services Statement Of Work <u>nunc pro tunc</u> to December 15, 2006 and (b) granting Delphi such other and further relief as is just.

Dated:    December 29, 2006

DELPHI CORPORATION, as Debtor and Debtor-in-possession

By:   _/s/ John D. Sheehan _____
        Name: John D. Sheehan
        Title:   Vice President and Chief Restructuring
                   Officer

15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
          In re                            :    Chapter 11
                                           :
DELPHI CORPORATION, et al.,                :    Case No. 05-44481 (RDD)
                                           :
                       Debtors.            :    (Jointly Administered)
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
AND FED. R. BANKR. P. 2014 EXPANDING THE SCOPE OF
RETENTION OF PRICEWATERHOUSECOOPERS LLP TO PROVIDE DUE
DILIGENCE SERVICES NUNC PRO TUNC TO DECEMBER 15, 2006

("PWC SUPPLEMENTAL RETENTION ORDER")

Upon the supplemental application, dated December 29, 2006 (the "PwC

Supplemental Retention Application"),[1] of Delphi Corporation ("Delphi"), debtor and

debtor-in-possession in the above-captioned cases, for an order (the "Order") under 11 U.S.C.

§§ 327(a) and 328 and Fed. R. Bankr. P. 2014 authorizing the expansion of the scope of Delphi's

retention of PricewaterhouseCoopers LLP ("PwC") for PwC to perform certain due diligence

services to Delphi, nunc pro tunc to December 15, 2006 on the terms and conditions of that

certain Master Professional Services Agreement dated as of March 17, 2006 (the "Master

Agreement"), a copy of which is attached hereto as Exhibit 1, and that certain Statement of Work

For Transaction Services dated as of December 15, 2006 (the "Transaction Services Statement

Of Work"), a form of which is attached hereto as Exhibit 2, which services will facilitate due

diligence by plan investors working with Delphi to facilitate its emergence from chapter 11; and

this Court having determined that the relief requested in the PwC Supplemental Retention

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PwC
Supplemental Retention Application.

Application is in the best interests of Delphi, its estates, its stakeholders, and other parties-in-

interest; and it appearing that proper and adequate notice of the PwC Supplemental Retention

Application has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The PwC Supplemental Retention Application is GRANTED nunc pro tunc

to December 15, 2006.

2.    Pursuant to the PwC Supplemental Retention Application, the Master

Agreement, and the Transaction Services Statement Of Work, Delphi's retention of PwC is

hereby amended in accordance with 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 to

authorize the expansion of the scope of Delphi's retention of PwC for PwC to provide the due

diligence services described in the PwC Supplemental Retention Application and the Transaction

Services Statement Of Work.

3.    PwC shall continue to file fee applications for interim and final allowance of

compensation and reimbursement of expenses pursuant to the procedures set forth in sections

330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in

effect on October 8, 2005, any applicable Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

(the "Local Rules"), the guidelines established by the Office of the United States Trustee, and

further orders of this Court.

4.    The terms of the Order Under 11 U.S.C. §§ 327(a) And 328 Fed. R. Bankr. P.

2014 Authorizing Employment And Retention Of PricewaterhouseCoopers LLP To Provide

Certain Sarbanes-Oxley Compliance, Tax And Financial Planning, And Other General Tax

2

Consulting Services To Debtors <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to January 1, 2006 (Docket No. 4310), as

modified hereby, shall remain in full force and effect.

       5.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

       6.   The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is satisfied by the PwC Supplemental Retention Application.


Dated:    New York, New York
          January ___, 2007


                                        _____
                                       UNITED STATES BANKRUPTCY JUDGE

<u>EXHIBIT 1</u>

Master Professional Services Agreement dated as of March 17, 2006

# MASTER PROFESSIONAL SERVICES AGREEMENT

This is a MASTER PROFESSIONAL SERVICES AGREEMENT, dated as of March 17, 2006 (this "Agreement"), between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Delphi Corporation, a Delaware corporation ("Client"), each a Party, and together Parties, to this Agreement.

## Background

PwC and Client desire to establish a contract pursuant to which Client may, from time to time, obtain from PwC, and PwC may provide to Client, certain professional Services (as defined in Section 1(a)), all on the terms and subject to the conditions set forth in this Agreement and in the applicable statement of work ("SOW").

## Terms and Conditions

In consideration of the premises and of the mutual covenants and agreements contained herein, and intending to be legally bound, the Parties hereby agree as follows:

1.  Services.

    (a)    This Agreement establishes the standard terms and conditions pursuant to which PwC may provide to Client certain professional services (the "Services"), as may be performed or agreed upon from time to time in writing in an SOW. Notwithstanding any provision to the contrary contained herein, audit, attest and other assurance services are not within the definition of "Services" and such engagements are not covered by this Agreement. An executed SOW, attached and incorporated into a Client purchase order, may expressly identify and amend terms and conditions in this Agreement, or list special terms and conditions, effective for that SOW only. Unless modified by provisions contained in an SOW, the terms and conditions in this Agreement are incorporated into and made part of each SOW. To the extent of any express conflict or inconsistency between the terms and conditions of an SOW and the terms and conditions of this Agreement, the terms and conditions of the SOW will control.

    (b)    An SOW shall contain the following, as applicable: (i) the term or period of time during which PwC will perform the Services, provide resources or otherwise perform its obligations as specified in the SOW; (ii) a description of the obligations of, and Services to be performed by, PwC; (iii) a description of Client's responsibilities related to the SOW, including any facilities, equipment, personnel and tasks or other support to be provided or performed by Client; (iv) PwC's fees and expenses under the SOW, or, if applicable, the basis on which such fees and expenses will be computed; (v) any provision limiting the liability of either Party other than, or in addition to, those provision set forth herein, and (vi) any other terms and conditions

appropriate to the Services to be performed and the obligations of the Parties under that SOW. Forms of Statements of Work are attached hereto as Attachment A.

2.    Term.

The term of this Agreement shall commence as of October 8, 2005, and shall continue until March 31, 2007, whereupon Client and PwC may agree to extend the Agreement for successive one (1) year periods. Each SOW shall become effective as of the date of the commencement of the Services or, if earlier, the date of execution of such SOW. Each SOW executed by the Parties prior to the effective date of a termination (as provided for in Section 7) shall remain in full force and effect in accordance with its terms, including the terms and conditions of this Agreement. If PwC commenced the performance of the Services prior to the execution of this Agreement, this Agreement shall be effective as of the commencement of such Services and shall cover such Services, unless the performance of such Services are governed by an existing executed agreement. The Parties agree that any such existing executed agreements shall be converted to SOWs within ninety (90) days of the execution of this Agreement, unless the services under such existing executed agreements have been completed by such date.

3.    Fees, Expenses and Taxes.

    (a)    In addition to professional fees outlined in the applicable SOW, PwC will also bill Client for pre-approved, reasonable out-of-pocket and travel expenses according to the guidelines set forth in Exhibit A: Delphi Travel and Expense Reimbursement Policy for Contractors; provided, however, that instead of submitting all expenses on Delphi expense vouchers, PwC shall account for such expenses within PwC's normal expense reimbursement system. Included in travel expenses shall be PwC internal per ticket charges for booking travel (as agreed from time to time between PwC and Delphi). The internal per ticket charge is an allocation of estimated costs of running PwC's travel department in a manner to maximize cost savings. PwC shall provide Client with a summary of such expenses and Client shall have the right to audit such expenses.

    (b)    Client shall pay for all taxes, other than withholding taxes and taxes based on or measured by PwC's or PwC's personnel's net income, including any interest and penalties from any related deficiency if due to an act by Client and not that of PwC, in connection with this Agreement, including any sales, use, excise, value-added, services, consumption, and other taxes and duties assessed on the provision of Services by PwC to Client or on PwC's charges to Client under this Agreement including the reimbursement of expenses, so long as such taxes are listed in the applicable SOW. The parties shall cooperate in good faith to minimize such tax liabilities to the extent legally permissible.

2

4.    Invoices.

Unless otherwise provided in an SOW, PwC will submit an invoice to Client at the end of every month for all hours of service provided to Client by PwC, together with all expenses incurred by PwC, during the preceding month period.  The invoices shall be in the form and contain all information required by the rules and procedures of the United States Bankruptcy Court for the Southern District of New York.  Each such invoice shall be due and payable pursuant to Client's Multilateral Netting System ("**MNS-2**"), which provides, on average, that payment shall be on the second day of the second month following the date of the invoice, recognizing that the rules and procedures of the United States Bankruptcy Court for the Southern District of New York will apply.  In no event shall Client pay Supplier interest or other late charges on any fees due under this Agreement.

5.    Client Responsibilities.

(a)    Client shall provide PwC with all information relevant to the Services and any reasonable assistance as may be required to properly perform the Services.  Unless otherwise indicated, Client represents and warrants to PwC that all such information will be accurate and complete in all material respects, to the best of Client's knowledge.  The overall definition and scope of the work to be performed, and the adequacy of such definition and scope in addressing Client's needs, is Client's responsibility.  Client shall perform all management functions and make all management decisions in connection with the Services, and shall assign competent individuals to oversee the Services.  Client is also responsible for the implementation of actions identified in the course of this engagement and results achieved from using any Services or Deliverables as defined in Section 6(a) below.

(b)    Each Party shall use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each Party recognizes that such procedures cannot be a guarantee that transmissions will be virus free.  It remains the responsibility of the Party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

(c)    Neither Party shall be responsible for any delay, cost increase or other consequences due to the other Party's failure to perform any of its obligations under this Agreement or an SOW or otherwise due to factors beyond its reasonable control.  Each Party will use commercially reasonable efforts to mitigate such costs or expenses.  Any PwC deadline that is affected by any Client default shall be extended by a reasonable amount of time provided that PwC has provided timely communication to Client.

6.    Deliverables.

(a)    Ownership.  PwC shall own any general skills, know-how, expertise, ideas, concepts, methods, techniques, processes, software, materials or other intellectual property or information which may have been discovered, created, developed or derived by PwC either prior to or as a result of its provision of Services under this Agreement ("PwC Materials").  Subject to the restrictions in this Agreement, Client will own all tangible written material

3

originally prepared expressly for Client and delivered to Client under this Agreement (the "Deliverables"), excluding any PwC Materials contained or embodied therein. PwC's working papers and PwC's Confidential Information (as defined in Section 9(a)) belong exclusively to PwC; provided, however, PwC shall provide a copy of such working papers to Client after consultation and agreement with Client. Client will have a non-exclusive, non-transferable license to use PwC Materials for Client's own internal use and only for the purposes for which they are delivered to the extent that they form part of the Deliverables.

(b)        Use of Deliverables.    Except as otherwise expressly stated in the applicable SOW, all Deliverables are solely for Client's internal use and benefit. Client shall not authorize any third party ("Third Party") to rely upon any of the Deliverables except as set forth in an SOW or, if not set forth in an SOW, without PwC's prior written consent. Except that Deliverables may be disclosed to (i) taxing authorities, (ii) an accounting firm providing attest services to Client (solely to the extent necessary for the performance of such attest services), and (iii) as set forth in this Section 9(b) or (iv) as set forth in an SOW; Client shall not distribute to, discuss with, or otherwise disclose the Deliverables to any Third Party without PwC's prior written consent. Oral or preliminary information, drafts or advice given by PwC may not be relied upon or attributed to PwC unless PwC specifically confirms such information or advice or otherwise reduces such draft to a final writing.

7.    Termination.

(a)    Either Party may terminate this Agreement or any SOW under this Agreement in the event of a material breach of this Agreement that is not cured within thirty (30) days after receipt of written notice of such breach. Unless otherwise provided in the applicable SOW, Client may terminate this Agreement or any SOW for convenience at any time upon thirty (30) days prior written notice. In the event of Client termination for breach by PwC, Client shall be responsible for fees earned and expenses incurred only up to the date of written notice to PwC of the breach. In the event of other termination by Client or termination by PwC for breach by Client, Client will be responsible for fees earned and expenses incurred through the actual date of termination. In the event of termination by mutual agreement, the Parties shall jointly determine the fees due or to be refunded.

(b)        PwC may also resign from performing all or any portion of the Services and terminating this Agreement and/or any Schedule immediately upon written notice in the event that circumstances arise that would make continuation of all or any portion of the Services by PwC in conflict with any independence or other professional regulations, standards or guidelines to which PwC conforms. If Client is or becomes an SEC registrant audit client of PwC and the Services performed and/or Deliverables provided under a particular SOW will be relied upon by the PwC audit team, the limitation of liability and Client's obligation to indemnify under this Agreement will not apply to such Services and/or Deliverables.

8.    Warranty.

PwC warrants that it has the requisite power and authority to enter into and perform its obligations under this Agreement and each SOW. PwC further warrants that the Services will be

performed by qualified personnel. PwC warrants that it will provide its non-tax related Services in a manner consistent with the terms and conditions of this Agreement and in accordance with the applicable Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA") as well as any applicable standards (as agreed to between the Parties) of the Public Company Accounting Oversight Board ("PCAOB"). PwC warrants that it will provide its tax services in a manner consistent with the terms and conditions of this Agreement and in accordance with the AICPA Statements on Standards for Tax Services and any applicable standards (as agreed to between the Parties) of the PCAOB. THE WARRANTIES IN THIS SECTION 8 AS WELL AS ANY EXPRESS WARRANTY IN ANY APPLICABLE SOW (BUT ONLY IF EXPRESSLY IDENTIFIED AS A "WARRANTY" IN SUCH SOW) ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, OR WHETHER ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR PROFESSION OR OTHERWISE, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

9.    Confidentiality.

(a)    All data relating specifically to a Party's business and any other information which reasonably should be understood to be confidential in nature are confidential information of such Party. PwC's proprietary software, tools, methodologies, techniques, ideas, discoveries, inventions, know-how and any other information which reasonably should be understood to be confidential to PwC are confidential information of PwC. Client confidential information and PwC confidential information are collectively referred to as "Confidential Information." Each Party shall use Confidential Information of the other Party only in furtherance of the purposes of this Agreement and shall not disclose such Confidential Information to any third party without the other Party's prior written consent. Each Party agrees to take reasonable measures to protect the confidentiality of the other Party's Confidential Information and to advise its employees of the confidential nature of the Confidential Information and of the confidentiality provisions and use prohibitions herein.

(b)    Notwithstanding any terms or conditions in this Agreement to the contrary, no conditions of confidentiality within the meaning of Internal Revenue Code §6111(d) or U.S. Treasury regulations §1.6011-4 are intended, and Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction and all materials of any kind (including opinions or other tax analysis) that are provided to the Client relating to such tax treatment and tax structure, subject to the limitations set forth in the following sentence. In the event that a Deliverable includes discussion of such tax treatment or tax structure, disclosure of the Deliverable will be limited solely to the section or sections discussing the tax treatment or tax structure; all other information in the Deliverable unrelated to the tax treatment or tax structure remains subject to the restrictions set forth in Section 9(a) and all references to "PwC" or "PricewaterhouseCoopers" and all branding and other identifiers of PwC shall be redacted from the tax treatment and tax structure portions of such Deliverable, and/or shall otherwise not be distributed to any other third party, except as may be expressly provided for in this Agreement.

This Section 9(b)) is effective as of the commencement of any discussions the Parties may have had regarding any transaction related to any Services.

(c)    Notwithstanding anything to the contrary contained in this Agreement, neither Party shall be obligated to treat as confidential any information disclosed by the other Party (the "Disclosing Party") which: (i) is rightfully known to the recipient prior to its disclosure by the Disclosing Party except that which was disclosed under a prior confidentiality agreement between the Parties; (ii) is released by the Disclosing Party to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without any use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a Party from any nonparty. Notwithstanding the foregoing, either Party may disclose Confidential Information of the other to a third party as may be required by law, statute, rule or regulation, including any subpoena or other similar form of process, or by the standards of the AICPA or other professional self-regulatory authority, provided that (and without breaching any legal or regulatory requirement) the Party to which the request is made provides the other Party with prompt written notice thereof and, if practicable under the circumstances, allows the other Party to seek a restraining order or other appropriate relief.    Subject to PwC's confidentiality obligations in this Agreement, nothing herein shall preclude or limit PwC from providing services similar to the Services to other PwC clients.

10.    Indemnification.

(a)    Subject to the provisions hereof, each Party shall indemnify, defend and hold harmless the other from and against any and all amounts payable under any judgment, verdict, court order or settlement for death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, but only to the extent the foregoing arise out of the indemnitor's gross negligence or intentional misconduct in the performance of this Agreement.

(b)    PwC agrees to indemnify, defend and hold harmless Client from and against any and all amounts payable under any judgment, verdict, court order or settlement for Third Party claims of infringement or misappropriation of any trade secrets, copyrights, trademarks, trade names or other intellectual property rights alleged to have occurred and arising from the Deliverables. Should Client's use of such Deliverables be determined to have infringed, or if, in PwC's judgment, such use is likely to be infringing, PwC may, at its option: (i) procure for Client the right to continue using such Deliverables provided, or (ii) replace or modify them to make their use non-infringing while yielding substantially equivalent results. If neither of the above options are or would be available on a basis that PwC finds commercially reasonable, then, PwC may terminate this Agreement, Client shall return such Deliverables provided to PwC and PwC will refund to Client the fees paid for the Deliverables provided. This infringement indemnity does not cover claims to the extent arising from: (1) the combination of such Deliverables with products or services not provided by PwC; (2) the modification of such Deliverables by any person, other than PwC; (3) Deliverables complying with or based upon: (A) designs provided by or at the direction of Client or (B) specifications or other information provided by or at the direction of the Client; or (4) use of systems, materials or work performed in a manner not permitted or contemplated hereunder or by another obligation of Client to PwC.

6

11.    Limitation of Liability.

(a)    PwC is the US member firm of the global network of PricewaterhouseCoopers firms (exclusive of PwC, the "PricewaterhouseCoopers Firms"). In the course of providing the Services and/or Deliverables hereunder, PwC, may, in its discretion, draw on the resources of and subcontract to other PricewaterhouseCoopers Firms. Client agrees that PwC may provide any information PwC receives in connection with this engagement to other PricewaterhouseCoopers Firms for the purpose of providing the Services and/or for internal administrative and regulatory compliance purposes. The provision of Services and/or Deliverables will remain the responsibility of PwC. Client agrees that in relation to the Services and this Agreement, its relationship is solely with PwC. Client further agrees that no PricewaterhouseCoopers Firms, nor the partners, principals or employees of PwC or the PricewaterhouseCoopers Firms (together the "Beneficiaries"), who perform work in connection with the Services and/or Deliverables will have any liability to Client in connection with the Services or this Agreement. Client therefore agrees to bring any claim under this Agreement against PwC and not to bring a claim of any nature against any such PricewaterhouseCoopers Firm relating to the Services, Deliverables or this Agreement except where such a claim cannot be excluded by law.

(b)    The provisions of this Agreement and any SOWs relating to the Beneficiaries, have been stipulated by PwC expressly for their benefit. Client agrees that each of the Beneficiaries shall have the right to rely on said provisions as if they were Parties to this Agreement. Client likewise agrees on behalf of all of its business operations in which Client has a direct or indirect controlling interest and that are receiving Services or Benefits of Services under this Agreement ("Service Recipients"), that they are bound by these provisions as if they were Parties to this Agreement. Without limiting any other indemnification provision set forth in this Agreement, Client agrees to indemnify and hold harmless PwC and the Beneficiaries from and against any claim that is asserted by any Service Recipient other than Client arising out of or relating to the Services and/or Deliverables provided under this Agreement, and all liabilities, costs, damages and expenses imposed or incurred in connection therewith, including reasonable attorneys' fees.

(c)    Each SOW shall include a provision setting forth any applicable limitation of liability. The parties acknowledge and agree that no SOW shall be valid unless it contains such a provision.

In addition, neither party will be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Further, PwC shall have no liability to Client arising from or relating to any third party hardware, software, information or materials supplied by Client.

(d)    PwC accepts no liability to third parties with respect to the Services and Deliverables. Client agrees (without limiting any other indemnification provision set forth in this Agreement) to indemnify and hold PwC and the Beneficiaries (as defined in Section 11(a)) harmless from and against any and all Third Party claims, suits and actions, and all associated damages, settlements, losses, liabilities, costs, and expenses, including without limitation reasonable attorneys fees, arising from or relating to the Services and/or Deliverables under this

7

Agreement, except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC relating to such Services and/or Deliverables.

12.    Changes; Additional Services.

PwC will not be responsible for work that is beyond the scope of Services set forth in this Agreement or the applicable SOW. Either Party may request changes to the Services. Changes must be agreed between the Parties and may be subject to reasonable adjustments to fees and schedules. Changes to an SOW that amount to the provision of additional Services, rather than adjustments to the Services already agreed, must be in writing and signed by both Parties.

13.    Subcontracts.

PwC may subcontract any of the Services hereunder, with written approval of Client, provided that PwC shall be responsible for the fulfillment of its obligations hereunder. For purposes of this section, PwC firms outside of the US are not considered subcontractors. Notwithstanding anything to the contrary in this Agreement, PwC may disclose Client's Confidential Information to such approved subcontractors involved in the provision of the Services.

14.    Engagement Limitations Applicable to All Services.

(a)    The Services do not include the provision of legal advice and PwC makes no representations regarding questions of legal interpretation. Client should consult with its attorneys with respect to any legal matters or items that require legal interpretation, under federal, state or other type of law or regulation. Changes in the law and/or its interpretation may take place before PwC's advice is acted upon, or may be retrospective in effect; PwC accepts no responsibility for changes in the law or its interpretation which may occur after the provision of the Services. Without limiting the generality of the foregoing, Client acknowledges that tax laws and regulations are subject to change at any time, and such changes may be retroactive in effect and may be applicable to advice given or other Services rendered before their effective dates. PwC does not assume responsibility (and will have no liability) for such changes occurring after the date it has completed its Services under a particular SOW.

(b)    PwC will provide no opinion, attestation or other form of assurance with respect to its work or the information upon which its work is based. The procedures PwC will be performing under this Agreement will not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. PwC will not audit or otherwise verify the information supplied to it in connection with any engagement under this Agreement, from whatever source, except as may be specified in the applicable SOW.

(c)    PwC has not been engaged to, nor will PwC provide any management functions or make management decisions for Client under this Agreement. It is Client's responsibility to establish and maintain its internal controls. In addition, it is Client's responsibility to determine the procedures deemed necessary in connection with its compliance with the provisions of the Sarbanes-Oxley Act of 2002 (the "Act") and related SEC rules, to execute those procedures and to assess the results of its procedures and the adequacy thereof. PwC provides no opinion or

8

other form of assurance with respect to Client's compliance with the Act, related SEC rules, or Client's procedures. PwC makes no representation as to the sufficiency of Client's procedures for its own purposes. The Services should not be taken to supplant inquiries and procedures that Client should undertake for purposes of obtaining and using the information necessary in connection with Client's compliance with the provisions of the Act and related SEC rules.

15.    <u>General</u>.

(a)    PwC, in furnishing Services to Client, is acting only as an independent contractor and is not acting as a fiduciary of Client. PwC does not undertake to perform any obligation of Client, whether regulatory or contractual, or to assume any responsibility for Client's business or operations. PwC has the sole right and obligation to supervise, manage, contract, direct, procure, perform or cause to be performed all work to be performed by PwC, except as otherwise provided in this Agreement or any SOW. PwC accepts full and exclusive liability for the payment of all employer contributions and taxes measured by the remuneration paid to PwC employees as required by all applicable United States federal, state and local laws, rules and regulations.

(b)    This Agreement may only be amended by written agreement signed by a duly authorized representative of each Party.

(c)    THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED, INTERPRETED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MICHIGAN, WITHOUT GIVING EFFECT TO THE PROVISIONS RELATING TO CONFLICT OF LAWS.

(d)    No delay or omission by either Party in exercising any right or power shall impair such right or power or be construed to be a waiver. A waiver by either Party of any of the covenants to be performed by the other or any breach thereof shall not be construed to be a waiver of any succeeding breach or of any other covenant. No waiver or discharge shall be valid unless in writing and signed by an authorized representative of the Party against whom such waiver or discharge is sought to be enforced.

(e)    This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their permitted successors and assigns, and, except as expressly provided herein, nothing in this Agreement shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. Neither Party may, nor shall have the power to, assign or transfer this Agreement or any rights or obligations hereunder or claims arising hereunder, without the prior written consent of the other Party. Any attempt to assign or transfer this Agreement in violation of this subsection shall be void and of no force and effect.

(f)    This Agreement and the applicable SOW constitutes the entire agreement between the Parties with respect to the Services and the rights and responsibilities of the Parties with respect to such applicable SOW.

(g)     Neither Party shall publicize their relationship or the terms of this Agreement or any SOW or use the other Party's name or other trademarks or service marks in any advertisement or publication without the other Party's prior written approval.

(h)     The provisions of this Agreement, which expressly or by implication are intended to survive its termination or expiration, will survive and continue to bind both Parties.

(i)     If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both Parties shall be relieved of all obligations arising under such provision, but if the remainder of this Agreement shall not be affected by such declaration or finding and is capable of substantial performance, then each provision not so affected shall be enforced to the extent permitted by law.

(j)     Except as expressly provided herein, all remedies provided for in this Agreement shall be cumulative and in addition to and not in lieu of any other remedies available to either Party at law, in equity or otherwise.

(k)     Where agreement, approval, acceptance, consent or similar action by Client or PwC is required, such action shall not be unreasonably delayed or withheld.

(l)     Headings in this Agreement are for convenience only.  The headings shall not be used in interpreting this Agreement or any provision of it.

(m)     Neither Party shall be liable to the other for any delay or failure to perform any of the Services or obligations set forth in this Agreement due to causes beyond its reasonable control.

(n)     The engagement limitations set forth on Addendum A are incorporated by reference herein.

(o)     All of PwC's agents, employees, subcontractors and/or independent contractors furnished by PwC to perform the Services (collectively, "Personnel") are and will remain PwC's employees and/or independent contractors and, under no circumstances, will any Personnel furnished by PwC be deemed to be Client's employees or agents.  PwC is solely responsible, at PwC's sole cost and expense, for (i) the fulfillment of all obligations to Personnel, and (ii) the compliance by PwC and personnel with Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

(BALANCE OF THIS PAGE INTENTIONALLY BLANK)

10

(p)    PwC will assure that all Personnel who are performing Services on behalf of PwC are competent to perform the Services.  PwC will require all Personnel who are performing any work on Client's premises to comply with all of Client's reasonable instructions, regulations and policies that have been provided to PwC in writing in a timely manner.  Client, in its sole discretion, has the right to: (i) bar any of Personnel from Client's premises for failure to observe Client's regulations or policies, (ii) require that PwC promptly remove from Client's premises any Personnel who violate any of Client's regulations or policies, and (iii) require that PwC cease using any Personnel to perform the Services who are reasonably unacceptable to Client. Client will confer with PwC to discuss Client's concerns prior to requiring removal of any Personnel.  PwC will replace any barred or removed Personnel with Personnel reasonably acceptable to Client.

In witness whereof, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first above written.

Delphi Corporation                                 PricewaterhouseCoopers LLP


By: _Kevin Smith_____      By:_Matt Mendel_____
Name: Kevin Smith                         Name:  Mark J Mendola
Title: Director, Indirect and MRE          Title:  Partner
       Procurement


11

**Exhibit A**

**Delphi Travel and Per Diem Expense Reimbursement Policy for
Contractors**

A.      If Contractor is required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel and per diem expenses, subject to prior written approval of Delphi, will be reimbursable as follows:

| | | |
|---|---|---|
| 1. | Air Travel | Economy/Coach class only.  Business class is permitted only upon prior written consent by Delphi. |
| 2. | Hotel | Contractor will exercise good, sound business judgment and discretion in choosing hotels, such as moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested. |
| 3. | Rental Cars | Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of Contractor. |
| 4. | Mileage Allowance | Reimbursement will be at the then current IRS rate (currently $0.44 per mile) for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, Contractor will not be reimbursed for excess miles, additional driving time, etc. |
| 5. | Expense Reports | If requested, Contractor will provide receipts for all reimbursable expenses, including meals and other expenditures, in excess of $25.00 or more. |
| 6. | Meals | Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by Contractor. |

12

| 7. Extended Travel | Contractor should review the home visit policy prior to a trip. Generally, the following provisions apply: |
|---|---|
| | If the travel expense is less than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every week. |
| | If the travel expense is more than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every two weeks. |
| | Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval. |
| 8. Miscellaneous | When Contractor chooses an alternative method of transportation, *e.g.,* to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs. Documentation to support the lesser cost must be attached to expense report. Travel time must also be limited if on working hours. |
| | The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form. |
| | Contractor is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, Contractor will make all travel arrangements through Global Experts in Travel, using a special account set up for such purposes. |
| | Any cash advance by Contractor to its employee is the responsibility of Contractor. |
| 9. Per Diem | In certain instances, a per diem will be paid to Contractor in accordance with Delphi's standard per diem policy. |

B.    All travel and per diem for which Contractor seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

13

## ADDENDUM A

**1.    Engagement Limitations Applicable to Tax Services.**

(a)    With regard to any tax Services provided pursuant to this Agreement, Client shall bring to PwC's attention any matters that may reasonably be expected to require further consideration to determine the proper treatment of any relevant item and any changes in the information as originally presented as soon as such information becomes available. PwC is not responsible (and shall not be liable) for any penalties assessed against Client as a result of Client's failure to provide PwC with all the relevant information relative to the issue under consultation and Client agrees to reimburse PwC for any penalties imposed on PwC, its partners or staff, as the result of Client's failure to provide such information.

(b)    Some of the tax matters on which PwC may be asked to advise Client may have implications to other persons or entities. However, PwC shall have no responsibility or liability to these persons or entities unless PwC specifically is engaged to address these issues to such persons or entities, and PwC expressly agrees to do so in an SOW.

(c)    Tax jurisdictions may impose penalties for certain failures. Relative to the Services provided under the terms of this Agreement, PwC will discuss with Client any tax positions of which PwC is aware that PwC believes may subject Client to penalties. PwC will also discuss with Client possible courses of action related to the Client's tax return, where applicable, to avoid the imposition of any penalty (e.g., disclosure). PwC will use its judgment in resolving questions where the tax law may be unclear, or where there are conflicts between taxing authorities' interpretations of the law and other supportable positions, and discuss them with Client. PwC is not responsible for any penalties imposed for positions that have been discussed with Client where PwC recommended a course of action to avoid penalties and Client elected not to pursue such course.

(d)    US Treasury regulation §1.6011-4 requires that taxpayers disclose to the IRS their participation in certain "reportable transactions." Client shall advise PwC if it determines that any matter covered by this Agreement is a reportable transaction that is required to be disclosed under §1.6011-4. Similar Treasury regulations issued under Internal Revenue Code §6112 require that PwC maintain lists of certain client engagements where it is a material advisor to clients that have participated in either a reportable transaction or a transaction that is required to be registered with the IRS as a tax shelter. If PwC determines, after consultation with Client, that Client has participated in either a reportable transaction or one required to be registered under Internal Revenue Code §6111, PwC will place Client's name and other required information on a list and will so advise Client. Sometime in the future the IRS may request PwC's lists of reportable or §6011 transactions, and PwC may be compelled to provide the IRS with the contents of its lists, including Client's name. PwC will advise Client if it is ultimately required to provide Client's name to the IRS in connection with any matter covered by this Agreement.

14

**2.    Engagement Limitations Applicable to Transaction Services/Due Diligence Services.**

(a)    Where PwC's work expressly includes consideration of prospective financial information, PwC will comment on the bases and assumptions underlying the prospective financial information adopted as the case may be by Client or by the management of the company who is the subject of a due diligence investigation (the "Target Company"), but PwC's work will not constitute an examination, compilation or agreed-upon procedures in accordance with standards established by the AICPA, and PwC will not express any opinion or provide any assurance (in the sense in which "opinion" and "assurance" are used in the AICPA standards). Where PwC comments on bases and assumptions underlying the prospective financial information, PwC reports may include tables aggregating quantified vulnerabilities and sensitivities in order to illustrate effects of possible alternative assumptions. Those tables should not be regarded as a restatement of the Target's and/or management's prospective financial information, or preparation of revised prospective financial information; they are provided as a means of summarising PwC comments to assist Client in considering Client's implications for the transaction. It is Client's responsibility to consider PwC comments and make Client's own decision based on the information available to the Client. Client must make its own decision about likely future profitability and the cash flows likely to be generated by the Target and Client understands that, with regard to illustrations of sensitivities that may be included in our Deliverables, there may be other, equally valid ways of assessing the sensitivities and possible outcomes. Client understands that our Deliverables are not prepared for the purposes of managing the Target's business and because events and circumstances frequently do not occur as expected, there will usually be differences between predicted and actual results, and those differences may be material. PricewaterhouseCoopers LLP is not responsible for developing the underlying assumptions of the prospective financial information and we take no responsibility and accept no liability for the achievement of predicted results.

(b)    Except to the extent expressly agreed to the contrary in writing, where PwC comments on use of Internet technologies in key business processes, PwC does so as business advisors rather than as information technology specialists.

(c)    Where the work expressly includes consideration of potential operational improvements, PwC will comment on the Client and/or Target Company's view of such improvements. PwC's comments will be provided solely in the light of our business experience of operational matters but will not be based on direct experience of Client's operations or the Target Company's operations, specific industry or commercial sector. PwC's comments may not represent the optimal operational solution and there may be other, equally valid, views. Further, the results which can be achieved will depend upon the detailed circumstances at the time and on the way in which planned operational improvements are implemented. PwC takes no responsibility for the achievement of potential operational improvements.

(d)    PwC assumes no responsibility and makes no representations with respect to the accuracy or completeness of information provided by any Target Company. PwC will not provide assurance that matters of significance to the financial information or to Client's due diligence investigation will be disclosed. We have not been engaged to, nor will we provide any management functions or make management decisions for Client. Further, PwC's work is not

15

designed to and is not likely to reveal fraud or misrepresentation by the management of a Target Company.

(e)    Advice and comments that PwC may provide in the course of a due diligence engagement regarding the accounting and tax treatment of a proposed transaction should not be viewed as a formal accounting or tax opinion of PwC. If such opinions are desired and PwC determines that such an opinion can be issued, the terms of an engagement to provide such an opinion will be subject to a separate SOW.

(f)    Client acknowledges that PwC may be asked to provide services to other clients who may be in competition with Client or whose interests may conflict with Client's interests, or regarding the possible purchase or sale of a Target Company that may be in competition with Client or whose interests may conflict with Client's interests. PwC will not be prevented or restricted by virtue of its relationship with Client under this Contract from providing services to other clients. Except as required by law or professional regulations, PwC will maintain the information obtained during the course of each engagement it performs for Client confidentially in accordance with Section 9 of the Agreement.

**3.    Circular 230: Limitations.**

(a)    <u>For Tax Services:</u>

i.    *Other Written Advice.* It is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by Treasury Circular 230. Accordingly, unless otherwise prohibited or PwC agrees to issue a Covered Opinion as defined by Circular 230, PwC written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. PwC advice will contain any other disclosures required by Circular 230.

ii.    *Covered Opinion.* If expressly set forth in the applicable Statement of Work, or in the deliverable itself, PwC's final written deliverable will be a Covered Opinion as defined by Circular 230. All other written advice provided prior to PwC's final deliverable may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed on the taxpayer. In the event Client does not proceed with the transaction that is the subject of PwC's advice or proceeds with the transaction but choose not to receive a final deliverable from PwC, Client may not rely on any of the advice provided by PwC for the purpose of avoiding any penalties that the IRS may impose. To the extent Client is entitled to rely on PwC's written advice for purposes of penalty protection, Client understands that such reliance will be limited to the issues expressly addressed, therein. PwC's final deliverable may contain certain disclosures required by Circular 230.

(b)    <u>For Transaction Services/Due Diligence:</u>

The Tax advice provided in PwC reports or other forms of written communication relative to PwC's due diligence work may be considered written tax advice subject to the rules of Treasury Circular 230. Accordingly, unless otherwise prohibited or agreed to with the Client in

advance to the contrary, such tax advice in any written form will constitute "Other Written Advice" as defined by Circular 230. Accordingly, tax information and/or advice provided in the report or other forms of written communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties that may be imposed on the taxpayer. In accordance with these regulations, PwC's written communications will include a disclosure to this effect. Further, PwC reports or other forms of written communication relating to the provision of due diligence services will not be written to support the promotion or marketing of this or any transaction or matters addressed in the report or other forms of written communication and should not be considered a Marketed Opinion under Circular 230.

4.      **Engagement Limitations Applicable to Dispute Analysis/Expert Witness Services.**

(a)      Client acknowledges that PwC is a large firm who is engaged by new clients every day throughout the United States. PwC will undertake a reasonable review of its records to determine its professional relationships with any persons or entities Client identifies in connection with any dispute analysis/expert witness engagement that PwC undertakes for Client. PwC will advise Client of any conflicts of interest of which PwC becomes aware that would preclude PwC from performing such work.

(b)      PwC may be engaged by parties adverse to Client to perform dispute analysis/expert witness services in litigation matters that are unrelated to any dispute analysis/expert witness services that PwC may perform for Client under this Agreement. Client agrees not to use the fact of any current or previous PwC engagement for expert witness services by opposing parties in other matters as a means of enhancing or diminishing PwC's credibility in conjunction with any appearance before a trier of fact.

Master Services Agreement
Dated _____, 200__

**ATTACHMENT A**
**SAMPLE FORM**

**Statement of Work ("SOW")**
**Between Delphi Corporation and PricewaterhouseCoopers LLP**

Project Name: _____

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated _____, 200__ between _____ ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

**I.      PURPOSE AND SCOPE OF THIS SOW:**

This SOW covers _____ [describe project generally]. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project/effort.

**II.     PARTIES' RESPONSIBILITIES UNDER THIS SOW**

**2.1     Services to be provided by PwC:**

**2.2     Deliverables:**

**2.3     Client's Responsibilities:**

**2.4     Timing**

The timing of the services to be provided hereunder is as follows:

| | |
|---|---|
| Project Start Date: | |
| Estimated Project Completion Date: | |

18

**Master Services Agreement**
**Dated _____, 200__**

## III. RESOURCES ASSIGNED TO THIS SOW

The PricewaterhouseCoopers personnel assigned to provide services and deliverables under this SOW are as follows:

## IV. PAYMENT; EXPENSES; AND INVOICES

### 4.1 Payment Terms

### 4.2 Professional Fees and Expenses [list any taxes applicable]

## V. OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1 Limitation of Liability:** Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC, PwC's liability to pay damages for any losses incurred by Client as a result of breach of contract, negligence or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than [_____ (_) times] the total amount of fees paid to PwC for the Services provided under this SOW. Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Client or in connection with Client's violation of its obligations under Section 6(b) of the Agreement, Client's liability to pay damages for any losses incurred by PwC as a result of breach of contract, negligence or other tort committed by Client, regardless of the theory of liability asserted, is limited to no more than [_____ (_) times] the total amount of fees paid to PwC for the services provided under this SOW.

**5.2 [Insert terms specific to Project – [*consult sample SOWs for practice group*]]**

**5.3 For engagements that will take over a year:** Because adverse income tax consequences may result from assignment of personnel at project sites for an engagement for a year or more, such personnel may annually be required by PwC to break from providing services to Client. PwC will monitor its staff on the long-term expense reimbursement policy and will inform Client prior to such break. If Client does not want to release personnel from performing Services for the aforementioned period, Client shall pay to PwC the amount of compensation provided by PwC to its personnel to cover the tax consequences thereof.

**5.4 If applicable:** Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform

19

**Master Services Agreement**
**Dated _____, 200__**

the Services.   Client shall perform the tasks and provide the assistance described in this SOW.  Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides.  Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.  Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF,** the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| Signature | Printed Name | Title | Date |
| **DELPHI CORPORATION** | | | |
| Authorized Signature | Printed Name | Title | Date |
| Authorized Signature | Printed Name | Title | Date |

20

## EXHIBIT 2

Transaction Services Statement Of Work



**PricewaterhouseCoopers LLP**
300 Madison Avenue
New York NY 10017
Telephone (646) 471-3000
Direct Phone (646) 471-3542
Direct Fax (813) 375-6478
www.pwc.com

**Statement of Work ("SOW") - Number _____**
**Between Delphi Corporation and PricewaterhouseCoopers LLP**

**Project Name:** Transaction Services
**Project Date:** December 15, 2006

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated March 17, 2006 between Delphi Corporation ("Delphi" or the "Company") and PricewaterhouseCoopers LLP (PwC), and is fully incorporated therein.  All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    PURPOSE AND SCOPE OF THIS SOW:

The purpose of this SOW is to confirm our understanding of the terms and objectives of our engagement to provide you advice and assistance with the due diligence analysis of Delphi in preparation for a potential transaction.

## II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW:

### 2.1    Services to be provided by PwC:

The work that we will perform will include, but will not necessarily be limited to, holding discussions with certain officers, employees and outside consultants of the Company, performing financial analysis of the historical results and trends of the Company, commenting on projected financial information prepared by management, and performing certain other procedures which generally follow those outlined in Exhibit I.  The procedures outlined in Exhibit I represent our current understanding of the scope of work we anticipate performing.

During various stages of our work, we will provide you with verbal reports, various outlines, executive summaries, analytical schedules, etc. as requested.  We understand that you may make information available to potential investors, whether in a data room or by other means, that we may have advised on or assisted in the analysis thereof.  Our work is undertaken on the basis that we are working for you alone.  We make no representation about the suitability of any such information for disclosure to third parties and any responsibility for

# PRICEWATERHOUSECOOPERS ⟨PwC⟩

representations made to third parties remains yours alone.  Any written material we may advise you on that you wish to make available to potential investors should only be provided where you have first carefully considered the contents of such documents and have adopted them as your own and should be prepared without PricewaterhouseCoopers' branding and you should not make any attribution to PricewaterhouseCoopers' advice thereon.

We will assume no responsibility and make no representations with respect to the accuracy or completeness of information provided by the Company.  Moreover, our work cannot provide assurance that matters of significance to the financial information or to your plan process will be disclosed and that an investor's due diligence will not identify significant matters not previously identified by us or management of the Company.  Further, our work is not designed to and is not likely to reveal fraud or misrepresentation by the management of the Company or any other person.

PricewaterhouseCoopers LLP is not a registered broker/dealer as defined by Federal securities laws.  Our role is that of an advisor to the Company, not a broker of securities, and any fee paid to PricewaterhouseCoopers LLP is not contingent on a transaction closing nor is it based on the value of the Company.  Further, it is understood that PricewaterhouseCoopers LLP is not authorized to make any decisions or to negotiate with others on behalf of the Company and will not hold itself out as having any authority to do so for the Company.  Any descriptive information which PricewaterhouseCoopers LLP advises and assists the Company in preparing will be the sole responsibility of the Company and should not be referenced to PricewaterhouseCoopers LLP by name.

## 2.2    Deliverables:

If requested, upon the completion of our work, we will provide you with a written report setting forth the significant matters that came to our attention.  You understand that any report we prepare on the business will not be written from an investor's perspective. This report in either draft or final form or portions thereof including our oral comments, should neither be associated with the financial statements of the Company nor be communicated or distributed to any party who is not a member of the management of the Company, other than the Company's legal counsel, nor should they be referred to or quoted, in whole or in part, in any offering memorandum, prospectus, registration statement, public filing, loan, other agreement or document, in any such case without our express written consent (which is not to be unreasonably withheld) or except as required by law, regulation, or legal process.  In the event that our report is to be distributed to another party, a release letter similar to that set forth in Exhibit II must be received from that party prior to the distribution.  It is agreed that the terms of such release letter are to be determined exclusively by PricewaterhouseCoopers LLP, provided that PwC shall not require a release letter from a potential investor that is less favorable to that party than as set forth on Exhibit II.  In the event that our report is to be distributed to a potential investor, we will require your assurance that any potential investor receiving our report will be given an opportunity to carry out its own due diligence.

(2)



During the engagement we may provide oral comments, or drafts of: written reports, presentations, letters, schedules or hard or soft copies of electronic work products. As these represent work in progress and/or not our final findings, we do not assume any responsibility in respect of them. The final results of our work will be contained in our final report.

**2.3    Delphi's Responsibilities:**

It is your responsibility to determine the adequacy of the work to be performed for your purposes. We make no representations as to whether these procedures are sufficient for your purposes. Also it is understood that it is your right and responsibility to (1) designate a management-level individual or individuals to be responsible for overseeing the services being provided, (2) evaluate the adequacy of the services performed and any findings that result, (3) make all management decisions and perform all management functions, including accepting responsibility for the results of the our services, and (4) determine exclusively the scope of work included in Exhibit I, which will be subject to a work plan to be authorized by you. The Company is solely responsible for the plan process; for implementation of any advice; for the materials created in connection with this engagement and for all information provided to potential investors, including but not limited to any descriptive memoranda, management presentations and projected financial information, for all negotiations with third parties and for determining the adequacy and acceptability of any offers received by third parties.

**2.4    Timing:**

The timing of our services to be provided hereunder is as follows:

Project Start Date:                                    December 15, 2006
Estimated Project Completion Date:        March 31, 2007


**III.    *RESOURCES ASSIGNED TO THIS SOW:***

The PricewaterhouseCoopers personnel assigned to lead the services under this SOW are as follows:

Colin Wittmer, Lead Engagement Partner
Michael Burwell, Concurring Review Partner
Pete Smidt, Lead Engagement Director
Dave Dilcher, Lead Human Resources Partner
Eric Miller, Lead Tax Partner



## IV.    PAYMENT; EXPENSES; AND INVOICES:

### 4.1    Payment Terms:

Payment terms are consistent with the terms in Section 4 of the Agreement.

### 4.2    Professional Fees and Expenses:

Completion of the procedures is subject to, among other things, appropriate cooperation from Company personnel including providing necessary information and timely responses to our inquiries.  We will advise you promptly should we believe we would be unable to complete the procedures and issue our report.

Our fees will be based on applying the hourly rates for the individuals assigned to the engagement.  Our agreed upon rates are as set forth below:

|  | Low | High |
|---|---|---|
| Partner & Managing Director | $775 | $900 |
| Director | $515 | $600 |
| Manager | $390 | $450 |
| Senior | $325 | $375 |
| Associate | $290 | $325 |
| Administration | $100 | $150 |

We estimate our fees for this engagement will range from $3,500,000 to $5,500,000.

If, during the course of our work, it appears that our fee will exceed our estimate, we will advise you immediately and we will not undertake additional work without prior approval.

We also will bill you for our reasonable out-of-pocket expenses and our internal per-ticket charges for booking travel.  Our fees and expenses will be billed in accordance with Sections 3 and 4 of the Agreement.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW:

### 5.1    Limitation of Liability

Because of the importance of oral and written representations by Delphi or Delphi management on PwC's ability to effectively perform the services as set forth in this SOW, Delphi releases PwC from any and all claims, liabilities, costs and expenses attributable to any knowing misrepresentation by Delphi or Delphi management.

Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC, PwC's liability to pay damages for any losses incurred by

(4)

# PRICEWATERHOUSECOOPERS ⓡ

Delphi as a result of a breach of contract, negligence or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to PwC for Services provided under this SOW.

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, Delphi and PricewaterhouseCoopers have agreed that: (1) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this SOW or the services provided by PricewaterhouseCoopers to Delphi as outlined in this SOW, including any matter involving a successor in interest or agent of Delphi or of PricewaterhouseCoopers, shall be brought in the Bankruptcy Court or the District Court for the Southern District of New York if such District Court withdraws the reference; (2) PricewaterhouseCoopers and Delphi and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (3) PricewaterhouseCoopers and Delphi, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (4) if the Bankruptcy Court, or the District Court if the reference is withdrawn, does not have or retain jurisdiction over the foregoing claims and controversies, PricewaterhouseCoopers and Delphi, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit III to this SOW; and (5) judgment on any arbitration award may be entered in any court having proper jurisdiction.

Further, PricewaterhouseCoopers has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the Southern District of New York (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this SOW or the services provided hereunder.

## 5.2    Other matters:

PricewaterhouseCoopers LLP is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs.  Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

There are other PricewaterhouseCoopers teams assigned to engagements for Delphi that have been completed or are underway.  The PricewaterhouseCoopers team assigned to this engagement will not have access to the team members, working papers or reports of those other PricewaterhouseCoopers engagements without Delphi's prior consent.

If there are any questions, please call Colin Wittmer, Partner, at (646) 471 3542 or Mike Burwell, Partner, at (313) 394 3504 who will lead our engagement team.  If the services

(5)



outlined herein are in accordance with your requirements and if the above terms are acceptable, please have one copy of this letter signed in the space provided below and return it to us.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| **PwC LLP** | | | |
|---|---|---|---|
| Signature<br><br>_____ | Printed Name<br><br>Colin Wittmer | Title<br><br>Partner | Date<br><br>Dec. 15, 2006 |
| **Delphi Corporation** | | | |
| Authorized Signature<br><br>_____ | Printed Name<br><br>John Sheehan | Title<br>Vice President,<br>Chief Restructuring<br>Officer | Date<br><br>Dec. 15, 2006 |



**Exhibit I**

The following is a summary of the due diligence areas for which we propose to perform due diligence procedures.  Given our understanding of the Company's organization and reporting structure, we expect to perform and report on certain procedures for each operating division as appropriate using separate teams, all coordinated via a central team located at Delphi Headquarters in Troy, MI.

**Financial Due Diligence**

1. Obtain an understanding of the Company's accounting policies and how those policies impact reported results.  Assess the overall adequacy of the Company's compliance with Sarbanes-Oxley rules and reporting responsibilities.

2. Obtain an understanding of the status of significant "investigations" into the Company's financial reporting and the Company's current estimate, if any, of the range of the potential effects to its reported earnings.

3. Understand significant joint-venture agreements and how their accounting treatment impacts reported EBITDA and cash flow.

4. Summarize the key financial aspects of transactions and agreements/arrangements between the Company and General Motors.

5. Perform appropriate due diligence procedures on the following subject areas pursuant to a work plan to be authorized by you:

    (a)    Quality of Earnings / Cash Flow (performed for each operating division as appropriate)

    (b)    Operating Division Analysis and Corporate Headquarters (performed for each operating division as appropriate)

    (c)    2007 to 2012 Business Plan (performed for each operating division as appropriate)

    (d)    Balance Sheet

    (e)    Tax Due Diligence

    (f)    Employee Benefits Due Diligence



**Exhibit II**

**Standard Release Letter - Report Access Requested by Client for Nonclient**


[Nonclient Recipient Letterhead]


[Date]

Colin Wittmer
PricewaterhouseCoopers LLP
PricewaterhouseCoopers Center
300 Madison Ave.
New York, NY 10017

Dear Mr. Wittmer:

Delphi Corporation (the "Company") has informed [name of recipient] that
PricewaterhouseCoopers LLP has performed certain procedures to assist the Company in
connection with its own due diligence of the Company. We understand that the work
performed by PricewaterhouseCoopers LLP was performed in accordance with instructions
provided by Company and was performed exclusively for the Company's sole benefit and use.

The Company has requested that PricewaterhouseCoopers LLP provide [name of recipient]
access to the report of their findings dated [date]. [name of recipient] acknowledges that this
report was prepared at the direction of the Company and may not include all procedures
deemed necessary for the purposes of [name of recipient] and that certain findings and
information may have been communicated to the Company that are not reflected in the report.
Potential investors should take note that this document is different in scope and content from a
due diligence report typically prepared for potential investors. The report is provided to
potential investors solely to assist the Company in providing relevant information about the
business; it has not been prepared as, and it should not be used in place of, the due diligence
enquiries and procedures potential investors would normally carry out prior to investing in a
business.

In consideration of PricewaterhouseCoopers LLP allowing [name of recipient] access to the
report and, if requested by [name of recipient], discussing the report, [name of recipient]
agrees that it does not acquire any rights as a result of such access that it would not otherwise
have had and acknowledges that neither PricewaterhouseCoopers LLP nor any other
PricewaterhouseCoopers Firm involved in performing the work or preparing the report
("Released Firm") assumes any duties or obligations to [name of recipient] in connection with
such access.

(8)



[name of recipient] agrees to release PricewaterhouseCoopers LLP, each Released Firm and their personnel from any claim by [name of recipient] that arises as a result of PricewaterhouseCoopers LLP permitting [name of recipient] access to the report.  Further, [name of recipient] agrees not to disclose or distribute the report, or information received, orally or in writing from PricewaterhouseCoopers LLP or a Released Firm to any other parties (including, if applicable, to any other members of a lending syndicate) without PricewaterhouseCoopers LLP's prior written consent, except as required by law, regulation, or legal process, provided that, except in the case of routine supervisory examinations by bank regulatory authorities, [name of recipient] provides PricewaterhouseCoopers LLP with prompt notice of any request that [name of recipient] disclose such information (so long as such notice is not prohibited by law), so that PricewaterhouseCoopers LLP may at its option object to the request and/or seek an appropriate protective order.  It is understood and agreed that any objection of PricewaterhouseCoopers LLP to such a request shall not affect [name of recipient]'s obligations to produce materials called for by appropriate legal or regulatory process.

Acknowledged by [name of recipient] representative:

By:    _____
          (Name of company official)


          _____
          (Title)


          _____
          (Date)



**Exhibit III**

**Dispute Resolution Procedures**

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in this SOW. If any of these procedures are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

<u>Mediation</u>

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by the parties. If the parties cannot agree on the mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and will be agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

<u>Arbitration</u>

If a dispute has not been resolved in 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").

(10)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL DECLARATION AND STATEMENT OF COLIN WITTMER
UNDER FED. R. BANKR. P. 2014 IN SUPPORT OF SUPPLEMENTAL
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AND
FED. R. BANKR. P. 2014 EXPANDING THE SCOPE OF RETENTION OF
PRICEWATERHOUSECOOPERS LLP TO PROVIDE DUE DILIGENCE
SERVICES NUNC PRO TUNC TO DECEMBER 15, 2006

Colin Wittmer, under penalty of perjury, declares and says:

1.     I am a Certified Public Accountant and a partner of

PricewaterhouseCoopers LLP ("PwC"), a professional services firm.  I am authorized to

execute this declaration (this "Declaration") on behalf of PwC.

2.     I submit this Declaration under sections 327(a) and 328 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8,

2005 (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") in support of the Supplemental Application For

Order Under 11 U.S.C. §§ 327(a) And 328 And Fed. R. Bankr. P. 2014 Expanding The

Scope Of Retention Of PricewaterhouseCoopers LLP To Provide Due Diligence Services

Nunc Pro Tunc To December 15, 2006 (the "PwC Supplemental Retention Application"),

filed contemporaneously herewith by Delphi Corporation ("Delphi"), debtor and debtor-

in-possession in the above-captioned cases.  The PwC Supplemental Retention

Application requests entry of an order authorizing Delphi to expand the scope of its

retention of PwC to perform due diligence services for Delphi that will facilitate due

diligence by plan investors working with Delphi to facilitate its emergence from chapter

11. These services will be provided on the terms and conditions of that certain Master

Professional Services Agreement dated as of March 17, 2006 (the "Master Agreement"),

a copy of which is attached hereto as <u>Exhibit 1</u>, and the Statement of Work For

Transaction Services dated as of December 15, 2006 (the "Transaction Services

Statement Of Work"), a form of which is attached hereto as <u>Exhibit 2</u>, <u>nunc</u> <u>pro</u> <u>tunc</u> to

December 15, 2006. Except as otherwise indicated, I have personal knowledge of the

matters set forth herein and if called as a witness, would testify competently thereto.

<u>Delphi's Retention Of PwC</u>

3. On June 5, 2006, the Debtors filed an application (Docket No. 4028)

(the "Initial PwC Application") to employ PwC to provide assistance to the Debtors in

complying with the provisions of the Sarbanes-Oxley Act of 2002 including, but not

limited to, section 404 of the Sarbanes-Oxley Act, as well as to provide certain

compliance, tax and financial planning, and other general tax consulting services to the

Debtors in these chapter 11 cases on the terms and conditions of the Master Professional

Services Agreement dated as of March 17, 2006 (the "Master Agreement") and applicable

statements of work (the "Statements Of Work") between PwC and the Debtors.

4. On June 21, 2006, this Court approved the Initial PwC Application

and entered the Order Under 11 U.S.C. §§ 327(a) And 328 Fed. R. Bankr. P. 2014

Authorizing Employment And Retention Of PricewaterhouseCoopers LLP To Provide

Certain Sarbanes-Oxley Compliance, Tax And Financial Planning, And Other General

Tax Consulting Services To Debtors <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to January 1, 2006 (Docket No.

2

4310) (the "Initial PwC Retention Order").  The Initial PwC Retention Order authorized

the Debtors to enter into additional Statements Of Work with PwC for the provision of

additional services under the Master Agreement and the Initial PwC Application,

provided, however, that if PwC sought to perform services which were not covered by the

Master Agreement and the Initial PwC Application, the Debtors would be required to file

a supplemental application seeking court approval for the performance of such additional

services.

Transaction Services Statement Of Work

5.    The work that PwC will perform under the terms of the Transaction

Services Statement Of Work will include, but will not be limited to, holding discussions

with certain officers, employees, and outside consultants of Delphi, performing financial

analysis of the historical results and trends of Delphi, commenting on projected financial

information prepared by management, and performing certain other procedures, as

described in more detail below.  Throughout this project, PwC will provide Delphi with

verbal reports, various outlines, executive summaries, analytical schedules, and similar

work product, as requested.

6.    It is my understanding that, subject to the execution of a non-

disclosure agreement and satisfaction of certain conditions set forth in the Transaction

Services Statement Of Work,  Delphi may make PwC's work product available to plan

investors.

7.    Subject to a work plan to be authorized by Delphi, PwC will perform

certain due diligence procedures covering the general areas outlined below and a more

fully set forth in the Transaction Services Statement Of Work and Exhibit I thereto:

3

(a)    Obtain an understanding of the Company's accounting policies and how those policies impact reported results. Assess the overall adequacy of the Company's compliance with Sarbanes-Oxley rules and reporting responsibilities.

(b)    Obtain an understanding of the status of significant "investigations" into the Company's financial reporting and the Company's current estimate, if any, of the range of the potential effects to its reported earnings.

(c)    Understand significant joint-venture agreements and how their accounting treatment impacts reported EBITDA and cash flow.

(d)    Summarize the key financial aspects of transactions and agreements/arrangements between the Company and General Motors.

(e)    Perform appropriate due diligence procedures on the following subject areas pursuant to a work plan to be authorized by Delphi:

   (i)    Quality Of Earnings/Cash Flow (performed for each operating division as appropriate);

   (ii)   Operating Division Analysis And Corporate Headquarters (performed for each operating division as appropriate);

   (iii)  2007 To 2012 Business Plan (performed for each operating division as appropriate);

   (iv)   Balance Sheet;

   (v)    Tax Due Diligence; and

   (vi)   Employee Benefits Due Diligence

8.    Subject to this Court's approval of the PwC Supplemental Retention Application, PwC is willing to perform the services described in the Transaction Services Statement Of Work on the terms set forth therein and in the Master Agreement.

4

Dispute Resolution Procedures

9.    As set forth in the Transaction Services Statement Of Work, Delphi and PwC have agreed, subject to this Court's approval of the PwC Supplemental Retention Application, that:  (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to the PwC Supplemental Retention Application or the Transaction Services Statement Of Work or the services provided by PwC to Delphi as outlined in the PwC Supplemental Retention Application or the Transaction Services Statement Of Work, including any matter involving a successor in interest or agent of any of Delphi or of PwC, shall be brought in this Court or the United States District Court for the Southern District of New York if such District Court withdraws the reference, (b) PwC and Delphi and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits, (c) PwC and Delphi, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made, (d) if this Court, or the District Court if the reference is withdrawn, does not have or retain jurisdiction over the foregoing claims and controversies, PwC and Delphi, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit III to the Transaction Services Statement Of Work, and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

10.     As set forth in the Transaction Services Statement Of Work, PwC has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or the United States District Court for the Southern District of New York (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to the PwC Supplemental Retention Application or the services provided thereunder.

Disinterestedness Of Professionals

11.     The Declaration of Brian D. Decker executed on June 5, 2006 (Docket No. 4028) (the "Original Declaration"), filed in support of the Initial PwC Application and this Declaration (together with the Original Declaration, the "PwC Declarations") filed in support of the PwC Supplemental Retention Application contain information on PwC's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  PwC maintains procedures on an ongoing basis to evaluate its connections with parties-in-interest in the Debtors' chapter 11 cases (the "Conflicts Procedures").  Based on the information set forth in the PwC Declarations and the Conflicts Procedures, PwC and the professionals in the firm are "disinterested persons," as that term is used in section 101(14) of the Bankruptcy Code, and are otherwise eligible to be retained under section 327(a) of the Bankruptcy Code.

12.     PwC's identification of material relationships is ongoing.  If and when additional information becomes available with respect to any other relationships which may exist between PwC and the Debtors, creditors, or any other parties-in-interest

which may affect these chapter 11 cases, supplemental declarations describing such
information will be filed with this Court.

13.    Moreover, the Transaction Services Statement Of Work provides
that the PwC team assigned to this engagement will not have access to the team members,
working papers, or reports of any other PwC engagements in these chapter 11 cases
without Delphi's prior consent.

Professional Compensation

14.    Consistent with the Master Agreement and the Transaction Services
Statement Of Work and as described in this Declaration, Delphi has agreed to
compensate PwC reasonable sums in accordance with the normal rates charged by PwC
for the services provided. In addition, as set forth in the Master Agreement, PwC will bill
Delphi for pre-approved and reasonable out of pocket and travel expenses according to
the guidelines set forth in Exhibit A to the Master Agreement (Delphi Travel and
Expense Reimbursement Policy For Contractors). [1]   PwC estimates that its fees for this
engagement will range from $3.5 million to $5.5 million.  If, during the course of PwC's
work pursuant to the Transaction Services Statement Of Work, it appears that PwC's fee
will exceed this estimate, PwC will advise Delphi immediately and will not undertake
additional work without Delphi's prior approval.  This estimate is based upon PwC's
hourly rates for the individuals to be assigned to this engagement.  The agreed upon rates
are:

---

[1]    Pursuant to the Master Agreement, included in travel expenses will be PwC internal ticket charges
for booking travel (as agreed from time to time between PwC and Delphi).  The internal per ticket
charge is an allocation of estimated costs of running PwC's travel department in a manner to
maximize cost savings.

7

| | |
|---|---|
| Partner & Managing Director | $775 to $900 |
| Director | $515 to $600 |
| Manager | $390 to $450 |
| Senior | $325 to $375 |
| Associate | $290 to $325 |
| Administration | $100 to $150 |

These rates are PwC's normal and customary rates for the type of services to be provided. These rates are subject to change but that any changes will remain in line with market rates for comparable services.

15.    In the event that this Court approves the expanded scope of Delphi's retention of PwC, (a) PwC's fees and expenses under the Transaction Services Statement Of Work will be subject to (i) the jurisdiction and approval of this Court with regard to PwC's retention, (ii) the Interim Compensation Order (Docket No. 869), the Supplemental Interim Compensation Order (Docket No. 2747), the Second Supplemental Interim Compensation Order (Docket No. 2986), the Third Supplemental Interim Compensation Order (Docket No. 3630), the Fourth Supplemental Interim Compensation Order (Docket No. 4545), the Fifth Supplemental Interim Compensation Order (Docket No. 5310), and the Sixth Supplemental Interim Compensation Order (Docket No. 6145) (collectively, the "Interim Compensation Orders") and any amendments thereto, and (iii) any requirements governing interim and final fee applications as set forth in the Interim Compensation Orders and (b) Delphi will pay all fees and expenses of PwC under the Transaction Services Statement Of Work as promptly as practicable in accordance with the terms thereof, the Interim Compensation Orders, as may be amended, and any other orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

16.    PwC will continue to file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of title 11 of the Bankruptcy Code, any applicable Bankruptcy Rules, the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, the guidelines established by the Office of the United States Trustee, and further orders of this Court.

17.    This declaration is provided in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

18.    Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 29th day of December, 2006, in New York, New York.


    /s/ Colin Wittmer
    Colin Wittmer
    Partner

## EXHIBIT 1

Master Professional Services Agreement dated as of March 17, 2006

# MASTER PROFESSIONAL SERVICES AGREEMENT

This is a MASTER PROFESSIONAL SERVICES AGREEMENT, dated as of March 17, 2006 (this "Agreement"), between PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC"), and Delphi Corporation, a Delaware corporation ("Client"), each a Party, and together Parties, to this Agreement.

## Background

PwC and Client desire to establish a contract pursuant to which Client may, from time to time, obtain from PwC, and PwC may provide to Client, certain professional Services (as defined in Section 1(a)), all on the terms and subject to the conditions set forth in this Agreement and in the applicable statement of work ("SOW").

## Terms and Conditions

In consideration of the premises and of the mutual covenants and agreements contained herein, and intending to be legally bound, the Parties hereby agree as follows:

1.  <u>Services</u>.

    (a)    This Agreement establishes the standard terms and conditions pursuant to which PwC may provide to Client certain professional services (the "Services"), as may be performed or agreed upon from time to time in writing in an SOW. Notwithstanding any provision to the contrary contained herein, audit, attest and other assurance services are not within the definition of "Services" and such engagements are not covered by this Agreement. An executed SOW, attached and incorporated into a Client purchase order, may expressly identify and amend terms and conditions in this Agreement, or list special terms and conditions, effective for that SOW only. Unless modified by provisions contained in an SOW, the terms and conditions in this Agreement are incorporated into and made part of each SOW. To the extent of any express conflict or inconsistency between the terms and conditions of an SOW and the terms and conditions of this Agreement, the terms and conditions of the SOW will control.

    (b)    An SOW shall contain the following, as applicable: (i) the term or period of time during which PwC will perform the Services, provide resources or otherwise perform its obligations as specified in the SOW; (ii) a description of the obligations of, and Services to be performed by, PwC; (iii) a description of Client's responsibilities related to the SOW, including any facilities, equipment, personnel and tasks or other support to be provided or performed by Client; (iv) PwC's fees and expenses under the SOW, or, if applicable, the basis on which such fees and expenses will be computed; (v) any provision limiting the liability of either Party other than, or in addition to, those provision set forth herein, and (vi) any other terms and conditions

1

appropriate to the Services to be performed and the obligations of the Parties under that SOW. Forms of Statements of Work are attached hereto as Attachment A.

2.    Term.

The term of this Agreement shall commence as of October 8, 2005, and shall continue until March 31, 2007, whereupon Client and PwC may agree to extend the Agreement for successive one (1) year periods. Each SOW shall become effective as of the date of the commencement of the Services or, if earlier, the date of execution of such SOW. Each SOW executed by the Parties prior to the effective date of a termination (as provided for in Section 7) shall remain in full force and effect in accordance with its terms, including the terms and conditions of this Agreement. If PwC commenced the performance of the Services prior to the execution of this Agreement, this Agreement shall be effective as of the commencement of such Services and shall cover such Services, unless the performance of such Services are governed by an existing executed agreement. The Parties agree that any such existing executed agreements shall be converted to SOWs within ninety (90) days of the execution of this Agreement, unless the services under such existing executed agreements have been completed by such date.

3.    Fees, Expenses and Taxes.

(a)    In addition to professional fees outlined in the applicable SOW, PwC will also bill Client for pre-approved, reasonable out-of-pocket and travel expenses according to the guidelines set forth in Exhibit A: Delphi Travel and Expense Reimbursement Policy for Contractors; provided, however, that instead of submitting all expenses on Delphi expense vouchers, PwC shall account for such expenses within PwC's normal expense reimbursement system. Included in travel expenses shall be PwC internal per ticket charges for booking travel (as agreed from time to time between PwC and Delphi). The internal per ticket charge is an allocation of estimated costs of running PwC's travel department in a manner to maximize cost savings. PwC shall provide Client with a summary of such expenses and Client shall have the right to audit such expenses.

(b)    Client shall pay for all taxes, other than withholding taxes and taxes based on or measured by PwC's or PwC's personnel's net income, including any interest and penalties from any related deficiency if due to an act by Client and not that of PwC, in connection with this Agreement, including any sales, use, excise, value-added, services, consumption, and other taxes and duties assessed on the provision of Services by PwC to Client or on PwC's charges to Client under this Agreement including the reimbursement of expenses, so long as such taxes are listed in the applicable SOW. The parties shall cooperate in good faith to minimize such tax liabilities to the extent legally permissible.

2

4.    <u>Invoices</u>.

Unless otherwise provided in an SOW, PwC will submit an invoice to Client at the end of every month for all hours of service provided to Client by PwC, together with all expenses incurred by PwC, during the preceding month period. The invoices shall be in the form and contain all information required by the rules and procedures of the United States Bankruptcy Court for the Southern District of New York. Each such invoice shall be due and payable pursuant to Client's Multilateral Netting System ("**MNS-2**"), which provides, on average, that payment shall be on the second day of the second month following the date of the invoice, recognizing that the rules and procedures of the United States Bankruptcy Court for the Southern District of New York will apply. In no event shall Client pay Supplier interest or other late charges on any fees due under this Agreement.

5.    <u>Client Responsibilities</u>.

(a)    Client shall provide PwC with all information relevant to the Services and any reasonable assistance as may be required to properly perform the Services. Unless otherwise indicated, Client represents and warrants to PwC that all such information will be accurate and complete in all material respects, to the best of Client's knowledge. The overall definition and scope of the work to be performed, and the adequacy of such definition and scope in addressing Client's needs, is Client's responsibility. Client shall perform all management functions and make all management decisions in connection with the Services, and shall assign competent individuals to oversee the Services. Client is also responsible for the implementation of actions identified in the course of this engagement and results achieved from using any Services or Deliverables as defined in Section 6(a) below.

(b)    Each Party shall use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each Party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the Party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

(c)    Neither Party shall be responsible for any delay, cost increase or other consequences due to the other Party's failure to perform any of its obligations under this Agreement or an SOW or otherwise due to factors beyond its reasonable control. Each Party will use commercially reasonable efforts to mitigate such costs or expenses. Any PwC deadline that is affected by any Client default shall be extended by a reasonable amount of time provided that PwC has provided timely communication to Client.

6.    <u>Deliverables</u>.

(a)        <u>Ownership</u>. PwC shall own any general skills, know-how, expertise, ideas, concepts, methods, techniques, processes, software, materials or other intellectual property or information which may have been discovered, created, developed or derived by PwC either prior to or as a result of its provision of Services under this Agreement ("PwC Materials"). Subject to the restrictions in this Agreement, Client will own all tangible written material

3

originally prepared expressly for Client and delivered to Client under this Agreement (the "Deliverables"), excluding any PwC Materials contained or embodied therein. PwC's working papers and PwC's Confidential Information (as defined in Section 9(a)) belong exclusively to PwC; provided, however, PwC shall provide a copy of such working papers to Client after consultation and agreement with Client. Client will have a non-exclusive, non-transferable license to use PwC Materials for Client's own internal use and only for the purposes for which they are delivered to the extent that they form part of the Deliverables.

(b)          Use of Deliverables.    Except as otherwise expressly stated in the applicable SOW, all Deliverables are solely for Client's internal use and benefit. Client shall not authorize any third party ("Third Party") to rely upon any of the Deliverables except as set forth in an SOW or, if not set forth in an SOW, without PwC's prior written consent. Except that Deliverables may be disclosed to (i) taxing authorities, (ii) an accounting firm providing attest services to Client (solely to the extent necessary for the performance of such attest services), and (iii) as set forth in this Section 9(b) or (iv) as set forth in an SOW; Client shall not distribute to, discuss with, or otherwise disclose the Deliverables to any Third Party without PwC's prior written consent. Oral or preliminary information, drafts or advice given by PwC may not be relied upon or attributed to PwC unless PwC specifically confirms such information or advice or otherwise reduces such draft to a final writing.

7.    Termination.

(a)    Either Party may terminate this Agreement or any SOW under this Agreement in the event of a material breach of this Agreement that is not cured within thirty (30) days after receipt of written notice of such breach. Unless otherwise provided in the applicable SOW, Client may terminate this Agreement or any SOW for convenience at any time upon thirty (30) days prior written notice. In the event of Client termination for breach by PwC, Client shall be responsible for fees earned and expenses incurred only up to the date of written notice to PwC of the breach. In the event of other termination by Client or termination by PwC for breach by Client, Client will be responsible for fees earned and expenses incurred through the actual date of termination. In the event of termination by mutual agreement, the Parties shall jointly determine the fees due or to be refunded.

(b)          PwC may also resign from performing all or any portion of the Services and terminating this Agreement and/or any Schedule immediately upon written notice in the event that circumstances arise that would make continuation of all or any portion of the Services by PwC in conflict with any independence or other professional regulations, standards or guidelines to which PwC conforms. If Client is or becomes an SEC registrant audit client of PwC and the Services performed and/or Deliverables provided under a particular SOW will be relied upon by the PwC audit team, the limitation of liability and Client's obligation to indemnify under this Agreement will not apply to such Services and/or Deliverables.

8.    Warranty.

PwC warrants that it has the requisite power and authority to enter into and perform its obligations under this Agreement and each SOW. PwC further warrants that the Services will be

4

performed by qualified personnel. PwC warrants that it will provide its non-tax related Services in a manner consistent with the terms and conditions of this Agreement and in accordance with the applicable Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA") as well as any applicable standards (as agreed to between the Parties) of the Public Company Accounting Oversight Board ("PCAOB"). PwC warrants that it will provide its tax services in a manner consistent with the terms and conditions of this Agreement and in accordance with the AICPA Statements on Standards for Tax Services and any applicable standards (as agreed to between the Parties) of the PCAOB. THE WARRANTIES IN THIS SECTION 8 AS WELL AS ANY EXPRESS WARRANTY IN ANY APPLICABLE SOW (BUT ONLY IF EXPRESSLY IDENTIFIED AS A "WARRANTY" IN SUCH SOW) ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, OR WHETHER ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR PROFESSION OR OTHERWISE, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

9.    Confidentiality.

(a)    All data relating specifically to a Party's business and any other information which reasonably should be understood to be confidential in nature are confidential information of such Party. PwC's proprietary software, tools, methodologies, techniques, ideas, discoveries, inventions, know-how and any other information which reasonably should be understood to be confidential to PwC are confidential information of PwC. Client confidential information and PwC confidential information are collectively referred to as "Confidential Information." Each Party shall use Confidential Information of the other Party only in furtherance of the purposes of this Agreement and shall not disclose such Confidential Information to any third party without the other Party's prior written consent. Each Party agrees to take reasonable measures to protect the confidentiality of the other Party's Confidential Information and to advise its employees of the confidential nature of the Confidential Information and of the confidentiality provisions and use prohibitions herein.

(b)    Notwithstanding any terms or conditions in this Agreement to the contrary, no conditions of confidentiality within the meaning of Internal Revenue Code §6111(d) or U.S. Treasury regulations §1.6011-4 are intended, and Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction and all materials of any kind (including opinions or other tax analysis) that are provided to the Client relating to such tax treatment and tax structure, subject to the limitations set forth in the following sentence. In the event that a Deliverable includes discussion of such tax treatment or tax structure, disclosure of the Deliverable will be limited solely to the section or sections discussing the tax treatment or tax structure; all other information in the Deliverable unrelated to the tax treatment or tax structure remains subject to the restrictions set forth in Section 9(a) and all references to "PwC" or "PricewaterhouseCoopers" and all branding and other identifiers of PwC shall be redacted from the tax treatment and tax structure portions of such Deliverable, and/or shall otherwise not be distributed to any other third party, except as may be expressly provided for in this Agreement.

5

This Section 9(b)) is effective as of the commencement of any discussions the Parties may have had regarding any transaction related to any Services.

(c)     Notwithstanding anything to the contrary contained in this Agreement, neither Party shall be obligated to treat as confidential any information disclosed by the other Party (the "Disclosing Party") which: (i) is rightfully known to the recipient prior to its disclosure by the Disclosing Party except that which was disclosed under a prior confidentiality agreement between the Parties; (ii) is released by the Disclosing Party to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without any use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a Party from any nonparty. Notwithstanding the foregoing, either Party may disclose Confidential Information of the other to a third party as may be required by law, statute, rule or regulation, including any subpoena or other similar form of process, or by the standards of the AICPA or other professional self-regulatory authority, provided that (and without breaching any legal or regulatory requirement) the Party to which the request is made provides the other Party with prompt written notice thereof and, if practicable under the circumstances, allows the other Party to seek a restraining order or other appropriate relief.   Subject to PwC's confidentiality obligations in this Agreement, nothing herein shall preclude or limit PwC from providing services similar to the Services to other PwC clients.

10.   Indemnification.

(a)     Subject to the provisions hereof, each Party shall indemnify, defend and hold harmless the other from and against any and all amounts payable under any judgment, verdict, court order or settlement for death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, but only to the extent the foregoing arise out of the indemnitor's gross negligence or intentional misconduct in the performance of this Agreement.

(b)     PwC agrees to indemnify, defend and hold harmless Client from and against any and all amounts payable under any judgment, verdict, court order or settlement for Third Party claims of infringement or misappropriation of any trade secrets, copyrights, trademarks, trade names or other intellectual property rights alleged to have occurred and arising from the Deliverables. Should Client's use of such Deliverables be determined to have infringed, or if, in PwC's judgment, such use is likely to be infringing, PwC may, at its option: (i) procure for Client the right to continue using such Deliverables provided, or (ii) replace or modify them to make their use non-infringing while yielding substantially equivalent results. If neither of the above options are or would be available on a basis that PwC finds commercially reasonable, then, PwC may terminate this Agreement, Client shall return such Deliverables provided to PwC and PwC will refund to Client the fees paid for the Deliverables provided.   This infringement indemnity does not cover claims to the extent arising from: (1) the combination of such Deliverables with products or services not provided by PwC; (2) the modification of such Deliverables by any person, other than PwC; (3) Deliverables complying with or based upon: (A) designs provided by or at the direction of Client or (B) specifications or other information provided by or at the direction of the Client; or (4) use of systems, materials or work performed in a manner not permitted or contemplated hereunder or by another obligation of Client to PwC.

6

11.    Limitation of Liability.

(a)    PwC is the US member firm of the global network of PricewaterhouseCoopers firms (exclusive of PwC, the "PricewaterhouseCoopers Firms"). In the course of providing the Services and/or Deliverables hereunder, PwC, may, in its discretion, draw on the resources of and subcontract to other PricewaterhouseCoopers Firms. Client agrees that PwC may provide any information PwC receives in connection with this engagement to other PricewaterhouseCoopers Firms for the purpose of providing the Services and/or for internal administrative and regulatory compliance purposes. The provision of Services and/or Deliverables will remain the responsibility of PwC. Client agrees that in relation to the Services and this Agreement, its relationship is solely with PwC. Client further agrees that no PricewaterhouseCoopers Firms, nor the partners, principals or employees of PwC or the PricewaterhouseCoopers Firms (together the "Beneficiaries"), who perform work in connection with the Services and/or Deliverables will have any liability to Client in connection with the Services or this Agreement. Client therefore agrees to bring any claim under this Agreement against PwC and not to bring a claim of any nature against any such PricewaterhouseCoopers Firm relating to the Services, Deliverables or this Agreement except where such a claim cannot be excluded by law.

(b)    The provisions of this Agreement and any SOWs relating to the Beneficiaries, have been stipulated by PwC expressly for their benefit. Client agrees that each of the Beneficiaries shall have the right to rely on said provisions as if they were Parties to this Agreement. Client likewise agrees on behalf of all of its business operations in which Client has a direct or indirect controlling interest and that are receiving Services or Benefits of Services under this Agreement ("Service Recipients"), that they are bound by these provisions as if they were Parties to this Agreement. Without limiting any other indemnification provision set forth in this Agreement, Client agrees to indemnify and hold harmless PwC and the Beneficiaries from and against any claim that is asserted by any Service Recipient other than Client arising out of or relating to the Services and/or Deliverables provided under this Agreement, and all liabilities, costs, damages and expenses imposed or incurred in connection therewith, including reasonable attorneys' fees.

(c)    Each SOW shall include a provision setting forth any applicable limitation of liability. The parties acknowledge and agree that no SOW shall be valid unless it contains such a provision.

In addition, neither party will be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Further, PwC shall have no liability to Client arising from or relating to any third party hardware, software, information or materials supplied by Client.

(d)    PwC accepts no liability to third parties with respect to the Services and Deliverables. Client agrees (without limiting any other indemnification provision set forth in this Agreement) to indemnify and hold PwC and the Beneficiaries (as defined in Section 11(a)) harmless from and against any and all Third Party claims, suits and actions, and all associated damages, settlements, losses, liabilities, costs, and expenses, including without limitation reasonable attorneys fees, arising from or relating to the Services and/or Deliverables under this

7

Agreement, except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC relating to such Services and/or Deliverables.

12.   Changes; Additional Services.

PwC will not be responsible for work that is beyond the scope of Services set forth in this Agreement or the applicable SOW. Either Party may request changes to the Services. Changes must be agreed between the Parties and may be subject to reasonable adjustments to fees and schedules. Changes to an SOW that amount to the provision of additional Services, rather than adjustments to the Services already agreed, must be in writing and signed by both Parties.

13.   Subcontracts.

PwC may subcontract any of the Services hereunder, with written approval of Client, provided that PwC shall be responsible for the fulfillment of its obligations hereunder. For purposes of this section, PwC firms outside of the US are not considered subcontractors. Notwithstanding anything to the contrary in this Agreement, PwC may disclose Client's Confidential Information to such approved subcontractors involved in the provision of the Services.

14.   Engagement Limitations Applicable to All Services.

(a)   The Services do not include the provision of legal advice and PwC makes no representations regarding questions of legal interpretation. Client should consult with its attorneys with respect to any legal matters or items that require legal interpretation, under federal, state or other type of law or regulation. Changes in the law and/or its interpretation may take place before PwC's advice is acted upon, or may be retrospective in effect; PwC accepts no responsibility for changes in the law or its interpretation which may occur after the provision of the Services. Without limiting the generality of the foregoing, Client acknowledges that tax laws and regulations are subject to change at any time, and such changes may be retroactive in effect and may be applicable to advice given or other Services rendered before their effective dates. PwC does not assume responsibility (and will have no liability) for such changes occurring after the date it has completed its Services under a particular SOW.

(b)   PwC will provide no opinion, attestation or other form of assurance with respect to its work or the information upon which its work is based. The procedures PwC will be performing under this Agreement will not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. PwC will not audit or otherwise verify the information supplied to it in connection with any engagement under this Agreement, from whatever source, except as may be specified in the applicable SOW.

(c)   PwC has not been engaged to, nor will PwC provide any management functions or make management decisions for Client under this Agreement. It is Client's responsibility to establish and maintain its internal controls. In addition, it is Client's responsibility to determine the procedures deemed necessary in connection with its compliance with the provisions of the Sarbanes-Oxley Act of 2002 (the "Act") and related SEC rules, to execute those procedures and to assess the results of its procedures and the adequacy thereof. PwC provides no opinion or

other form of assurance with respect to Client's compliance with the Act, related SEC rules, or Client's procedures. PwC makes no representation as to the sufficiency of Client's procedures for its own purposes. The Services should not be taken to supplant inquiries and procedures that Client should undertake for purposes of obtaining and using the information necessary in connection with Client's compliance with the provisions of the Act and related SEC rules.

15.    <u>General.</u>

(a)    PwC, in furnishing Services to Client, is acting only as an independent contractor and is not acting as a fiduciary of Client. PwC does not undertake to perform any obligation of Client, whether regulatory or contractual, or to assume any responsibility for Client's business or operations. PwC has the sole right and obligation to supervise, manage, contract, direct, procure, perform or cause to be performed all work to be performed by PwC, except as otherwise provided in this Agreement or any SOW. PwC accepts full and exclusive liability for the payment of all employer contributions and taxes measured by the remuneration paid to PwC employees as required by all applicable United States federal, state and local laws, rules and regulations.

(b)    This Agreement may only be amended by written agreement signed by a duly authorized representative of each Party.

(c)    THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED, INTERPRETED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MICHIGAN, WITHOUT GIVING EFFECT TO THE PROVISIONS RELATING TO CONFLICT OF LAWS.

(d)    No delay or omission by either Party in exercising any right or power shall impair such right or power or be construed to be a waiver. A waiver by either Party of any of the covenants to be performed by the other or any breach thereof shall not be construed to be a waiver of any succeeding breach or of any other covenant. No waiver or discharge shall be valid unless in writing and signed by an authorized representative of the Party against whom such waiver or discharge is sought to be enforced.

(e)    This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their permitted successors and assigns, and, except as expressly provided herein, nothing in this Agreement shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. Neither Party may, nor shall have the power to, assign or transfer this Agreement or any rights or obligations hereunder or claims arising hereunder, without the prior written consent of the other Party. Any attempt to assign or transfer this Agreement in violation of this subsection shall be void and of no force and effect.

(f)    This Agreement and the applicable SOW constitutes the entire agreement between the Parties with respect to the Services and the rights and responsibilities of the Parties with respect to such applicable SOW.

9

(g)    Neither Party shall publicize their relationship or the terms of this Agreement or any SOW or use the other Party's name or other trademarks or service marks in any advertisement or publication without the other Party's prior written approval.

(h)    The provisions of this Agreement, which expressly or by implication are intended to survive its termination or expiration, will survive and continue to bind both Parties.

(i)    If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both Parties shall be relieved of all obligations arising under such provision, but if the remainder of this Agreement shall not be affected by such declaration or finding and is capable of substantial performance, then each provision not so affected shall be enforced to the extent permitted by law.

(j)    Except as expressly provided herein, all remedies provided for in this Agreement shall be cumulative and in addition to and not in lieu of any other remedies available to either Party at law, in equity or otherwise.

(k)    Where agreement, approval, acceptance, consent or similar action by Client or PwC is required, such action shall not be unreasonably delayed or withheld.

(l)    Headings in this Agreement are for convenience only.  The headings shall not be used in interpreting this Agreement or any provision of it.

(m)    Neither Party shall be liable to the other for any delay or failure to perform any of the Services or obligations set forth in this Agreement due to causes beyond its reasonable control.

(n)    The engagement limitations set forth on Addendum A are incorporated by reference herein.

(o)    All of PwC's agents, employees, subcontractors and/or independent contractors furnished by PwC to perform the Services (collectively, "Personnel") are and will remain PwC's employees and/or independent contractors and, under no circumstances, will any Personnel furnished by PwC be deemed to be Client's employees or agents.  PwC is solely responsible, at PwC's sole cost and expense, for (i) the fulfillment of all obligations to Personnel, and (ii) the compliance by PwC and personnel with Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

(BALANCE OF THIS PAGE INTENTIONALLY BLANK)

(p)    PwC will assure that all Personnel who are performing Services on behalf of PwC are competent to perform the Services. PwC will require all Personnel who are performing any work on Client's premises to comply with all of Client's reasonable instructions, regulations and policies that have been provided to PwC in writing in a timely manner. Client, in its sole discretion, has the right to: (i) bar any of Personnel from Client's premises for failure to observe Client's regulations or policies, (ii) require that PwC promptly remove from Client's premises any Personnel who violate any of Client's regulations or policies, and (iii) require that PwC cease using any Personnel to perform the Services who are reasonably unacceptable to Client. Client will confer with PwC to discuss Client's concerns prior to requiring removal of any Personnel. PwC will replace any barred or removed Personnel with Personnel reasonably acceptable to Client.

In witness whereof, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first above written.

Delphi Corporation                              PricewaterhouseCoopers LLP

By: _Kevin Smith_____         By: _Mark Mendola_____
Name: Kevin Smith                       Name: Mark J Mendola
Title: Director, Indirect and M&E        Title: Partner
       Procurement

**Exhibit A**

**Delphi Travel and Per Diem Expense Reimbursement Policy for
Contractors**

A.      If Contractor is required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel and per diem expenses, subject to prior written approval of Delphi, will be reimbursable as follows:

1.  Air Travel           Economy/Coach class only.  Business class is permitted only upon prior written consent by Delphi.

2.  Hotel                Contractor will exercise good, sound business judgment and discretion in choosing hotels, such as moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested.

3.  Rental Cars          Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of Contractor.

4.  Mileage              Reimbursement will be at the then current IRS rate (currently
    Allowance            $0.44 per mile) for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, Contractor will not be reimbursed for excess miles, additional driving time, etc.

5.  Expense Reports      If requested, Contractor will provide receipts for all reimbursable expenses, including meals and other expenditures, in excess of $25.00 or more.

6.  Meals                Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by Contractor.

12

| | |
|---|---|
| 7. Extended Travel | Contractor should review the home visit policy prior to a trip. Generally, the following provisions apply: |
| | If the travel expense is less than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every week. |
| | If the travel expense is more than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every two weeks. |
| | Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval. |
| 8. Miscellaneous | When Contractor chooses an alternative method of transportation, *e.g.,* to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs.  Documentation to support the lesser cost must be attached to expense report.  Travel time must also be limited if on working hours. |
| | The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form. |
| | Contractor is responsible for travel reservations, hotel/motel accommodations and rental cars.  If directed by Delphi, Contractor will make all travel arrangements through Global Experts in Travel, using a special account set up for such purposes. |
| | Any cash advance by Contractor to its employee is the responsibility of Contractor. |
| 9. Per Diem | In certain instances, a per diem will be paid to Contractor in accordance with Delphi's standard per diem policy. |

B.    All travel and per diem for which Contractor seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

13

## ADDENDUM A

**1.    Engagement Limitations Applicable to Tax Services.**

(a)    With regard to any tax Services provided pursuant to this Agreement, Client shall bring to PwC's attention any matters that may reasonably be expected to require further consideration to determine the proper treatment of any relevant item and any changes in the information as originally presented as soon as such information becomes available. PwC is not responsible (and shall not be liable) for any penalties assessed against Client as a result of Client's failure to provide PwC with all the relevant information relative to the issue under consultation and Client agrees to reimburse PwC for any penalties imposed on PwC, its partners or staff, as the result of Client's failure to provide such information.

(b)    Some of the tax matters on which PwC may be asked to advise Client may have implications to other persons or entities. However, PwC shall have no responsibility or liability to these persons or entities unless PwC specifically is engaged to address these issues to such persons or entities, and PwC expressly agrees to do so in an SOW.

(c)    Tax jurisdictions may impose penalties for certain failures. Relative to the Services provided under the terms of this Agreement, PwC will discuss with Client any tax positions of which PwC is aware that PwC believes may subject Client to penalties. PwC will also discuss with Client possible courses of action related to the Client's tax return, where applicable, to avoid the imposition of any penalty (e.g., disclosure). PwC will use its judgment in resolving questions where the tax law may be unclear, or where there are conflicts between taxing authorities' interpretations of the law and other supportable positions, and discuss them with Client. PwC is not responsible for any penalties imposed for positions that have been discussed with Client where PwC recommended a course of action to avoid penalties and Client elected not to pursue such course.

(d)    US Treasury regulation §1.6011-4 requires that taxpayers disclose to the IRS their participation in certain "reportable transactions." Client shall advise PwC if it determines that any matter covered by this Agreement is a reportable transaction that is required to be disclosed under §1.6011-4. Similar Treasury regulations issued under Internal Revenue Code §6112 require that PwC maintain lists of certain client engagements where it is a material advisor to clients that have participated in either a reportable transaction or a transaction that is required to be registered with the IRS as a tax shelter. If PwC determines, after consultation with Client, that Client has participated in either a reportable transaction or one required to be registered under Internal Revenue Code §6111, PwC will place Client's name and other required information on a list and will so advise Client. Sometime in the future the IRS may request PwC's lists of reportable or §6011 transactions, and PwC may be compelled to provide the IRS with the contents of its lists, including Client's name. PwC will advise Client if it is ultimately required to provide Client's name to the IRS in connection with any matter covered by this Agreement.

14

2.    **Engagement Limitations Applicable to Transaction Services/Due Diligence Services.**

(a)    Where PwC's work expressly includes consideration of prospective financial information, PwC will comment on the bases and assumptions underlying the prospective financial information adopted as the case may be by Client or by the management of the company who is the subject of a due diligence investigation (the "Target Company"), but PwC's work will not constitute an examination, compilation or agreed-upon procedures in accordance with standards established by the AICPA, and PwC will not express any opinion or provide any assurance (in the sense in which "opinion" and "assurance" are used in the AICPA standards). Where PwC comments on bases and assumptions underlying the prospective financial information, PwC reports may include tables aggregating quantified vulnerabilities and sensitivities in order to illustrate effects of possible alternative assumptions. Those tables should not be regarded as a restatement of the Target's and/or management's prospective financial information, or preparation of revised prospective financial information; they are provided as a means of summarising PwC comments to assist Client in considering Client's implications for the transaction. It is Client's responsibility to consider PwC comments and make Client's own decision based on the information available to the Client. Client must make its own decision about likely future profitability and the cash flows likely to be generated by the Target and Client understands that, with regard to illustrations of sensitivities that may be included in our Deliverables, there may be other, equally valid ways of assessing the sensitivities and possible outcomes. Client understands that our Deliverables are not prepared for the purposes of managing the Target's business and because events and circumstances frequently do not occur as expected, there will usually be differences between predicted and actual results, and those differences may be material. PricewaterhouseCoopers LLP is not responsible for developing the underlying assumptions of the prospective financial information and we take no responsibility and accept no liability for the achievement of predicted results.

(b)    Except to the extent expressly agreed to the contrary in writing, where PwC comments on use of Internet technologies in key business processes, PwC does so as business advisors rather than as information technology specialists.

(c)    Where the work expressly includes consideration of potential operational improvements, PwC will comment on the Client and/or Target Company's view of such improvements. PwC's comments will be provided solely in the light of our business experience of operational matters but will not be based on direct experience of Client's operations or the Target Company's operations, specific industry or commercial sector. PwC's comments may not represent the optimal operational solution and there may be other, equally valid, views. Further, the results which can be achieved will depend upon the detailed circumstances at the time and on the way in which planned operational improvements are implemented. PwC takes no responsibility for the achievement of potential operational improvements.

(d)    PwC assumes no responsibility and makes no representations with respect to the accuracy or completeness of information provided by any Target Company. PwC will not provide assurance that matters of significance to the financial information or to Client's due diligence investigation will be disclosed. We have not been engaged to, nor will we provide any management functions or make management decisions for Client. Further, PwC's work is not

15

designed to and is not likely to reveal fraud or misrepresentation by the management of a Target Company.

(e)     Advice and comments that PwC may provide in the course of a due diligence engagement regarding the accounting and tax treatment of a proposed transaction should not be viewed as a formal accounting or tax opinion of PwC.  If such opinions are desired and PwC determines that such an opinion can be issued, the terms of an engagement to provide such an opinion will be subject to a separate SOW.

(f)     Client acknowledges that PwC may be asked to provide services to other clients who may be in competition with Client or whose interests may conflict with Client's interests, or regarding the possible purchase or sale of a Target Company that may be in competition with Client or whose interests may conflict with Client's interests.  PwC will not be prevented or restricted by virtue of its relationship with Client under this Contract from providing services to other clients.  Except as required by law or professional regulations, PwC will maintain the information obtained during the course of each engagement it performs for Client confidentially in accordance with Section 9 of the Agreement.

**3.     Circular 230: Limitations.**

(a)     <u>For Tax Services:</u>

<u>i.</u>     *Other Written Advice.*  It is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by Treasury Circular 230.  Accordingly, unless otherwise prohibited or PwC agrees to issue a Covered Opinion as defined by Circular 230, PwC written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed.  PwC advice will contain any other disclosures required by Circular 230.

ii.     *Covered Opinion.*  If expressly set forth in the applicable Statement of Work, or in the deliverable itself, PwC's final written deliverable will be a Covered Opinion as defined by Circular 230.  All other written advice provided prior to PwC's final deliverable may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed on the taxpayer.  In the event Client does not proceed with the transaction that is the subject of PwC's advice or proceeds with the transaction but choose not to receive a final deliverable from PwC, Client may not rely on any of the advice provided by PwC for the purpose of avoiding any penalties that the IRS may impose.  To the extent Client is entitled to rely on PwC's written advice for purposes of penalty protection, Client understands that such reliance will be limited to the issues expressly addressed, therein.  PwC's final deliverable may contain certain disclosures required by Circular 230.

(b)     <u>For Transaction Services/Due Diligence:</u>

The Tax advice provided in PwC reports or other forms of written communication relative to PwC's due diligence work may be considered written tax advice subject to the rules of Treasury Circular 230.  Accordingly, unless otherwise prohibited or agreed to with the Client in

advance to the contrary, such tax advice in any written form will constitute "Other Written Advice" as defined by Circular 230.  Accordingly, tax information and/or advice provided in the report or other forms of written communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties that may be imposed on the taxpayer.  In accordance with these regulations, PwC's written communications will include a disclosure to this effect.  Further, PwC reports or other forms of written communication relating to the provision of due diligence services will not be written to support the promotion or marketing of this or any transaction or matters addressed in the report or other forms of written communication and should not be considered a Marketed Opinion under Circular 230.

4.      **Engagement Limitations Applicable to Dispute Analysis/Expert Witness Services.**

(a)      Client acknowledges that PwC is a large firm who is engaged by new clients every day throughout the United States.  PwC will undertake a reasonable review of its records to determine its professional relationships with any persons or entities Client identifies in connection with any dispute analysis/expert witness engagement that PwC undertakes for Client.  PwC will advise Client of any conflicts of interest of which PwC becomes aware that would preclude PwC from performing such work.

(b)      PwC may be engaged by parties adverse to Client to perform dispute analysis/expert witness services in litigation matters that are unrelated to any dispute analysis/expert witness services that PwC may perform for Client under this Agreement.  Client agrees not to use the fact of any current or previous PwC engagement for expert witness services by opposing parties in other matters as a means of enhancing or diminishing PwC's credibility in conjunction with any appearance before a trier of fact.

Master Services Agreement
Dated _____, 200__

**ATTACHMENT A**
**SAMPLE FORM**

**Statement of Work ("SOW")**
**Between Delphi Corporation and PricewaterhouseCoopers LLP**

Project Name: _____

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated _____, 200__ between _____ ("Client") and PricewaterhouseCoopers LLP, ("PwC") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

**I.    PURPOSE AND SCOPE OF THIS SOW:**

This SOW covers _____ [describe project generally]. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project/effort.

**II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW**

**2.1    Services to be provided by PwC:**

**2.2    Deliverables:**

**2.3    Client's Responsibilities:**

**2.4    Timing**

The timing of the services to be provided hereunder is as follows:

| Project Start Date: | |
|---|---|
| Estimated Project Completion Date: | |

18

**Master Services Agreement**
**Dated _____, 200__**

## III.   RESOURCES ASSIGNED TO THIS SOW

The PricewaterhouseCoopers personnel assigned to provide services and deliverables under this SOW are as follows:

## IV.   PAYMENT; EXPENSES; AND INVOICES

**4.1   Payment Terms**

**4.2   Professional Fees and Expenses [list any taxes applicable]**

## V.   OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1   Limitation of Liability:**  Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC, PwC's liability to pay damages for any losses incurred by Client as a result of breach of contract, negligence or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than [_____( _) times] the total amount of fees paid to PwC for the Services provided under this SOW.  Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Client or in connection with Client's violation of its obligations under Section 6(b) of the Agreement, Client's liability to pay damages for any losses incurred by PwC as a result of breach of contract, negligence or other tort committed by Client, regardless of the theory of liability asserted, is limited to no more than [_____( _) times] the total amount of fees paid to PwC for the services provided under this SOW.

**5.2   [Insert terms specific to Project – [*consult sample SOWs for practice group*]]**

**5.3 For engagements that will take over a year:**  Because adverse income tax consequences may result from assignment of personnel at project sites for an engagement for a year or more, such personnel may annually be required by PwC to break from providing services to Client.  PwC will monitor its staff on the long-term expense reimbursement policy and will inform Client prior to such break.  If Client does not want to release personnel from performing Services for the aforementioned period, Client shall pay to PwC the amount of compensation provided by PwC to its personnel to cover the tax consequences thereof.

**5.4 If applicable:**  Client shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform

19

**Master Services Agreement**
**Dated _____, 200__**

the Services.  Client shall perform the tasks and provide the assistance described in this SOW.  Client shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides.  Client consents to the use, by staff visiting or working from the Client site, of the Client's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.  Client agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF**, the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| PricewaterhouseCoopers LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| Signature | Printed Name | Title | Date |
| **DELPHI CORPORATION** | | | |
| Authorized Signature | Printed Name | Title | Date |
| Authorized Signature | Printed Name | Title | Date |

20

## EXHIBIT 2

Transaction Services Statement Of Work



PricewaterhouseCoopers LLP
300 Madison Avenue
New York NY 10017
Telephone (646) 471-3000
Direct Phone (646) 471-3542
Direct Fax (813) 375-6478
www.pwc.com

**Statement of Work ("SOW") - Number _____**
**Between Delphi Corporation and PricewaterhouseCoopers LLP**

**Project Name:**  Transaction Services
**Project Date:**  December 15, 2006

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated March 17, 2006 between Delphi Corporation ("Delphi" or the "Company") and PricewaterhouseCoopers LLP (PwC), and is fully incorporated therein.  All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    *PURPOSE AND SCOPE OF THIS SOW:*

The purpose of this SOW is to confirm our understanding of the terms and objectives of our engagement to provide you advice and assistance with the due diligence analysis of Delphi in preparation for a potential transaction.

## II.    *PARTIES' RESPONSIBILITIES UNDER THIS SOW:*

### 2.1    Services to be provided by PwC:

The work that we will perform will include, but will not necessarily be limited to, holding discussions with certain officers, employees and outside consultants of the Company, performing financial analysis of the historical results and trends of the Company, commenting on projected financial information prepared by management, and performing certain other procedures which generally follow those outlined in Exhibit I.  The procedures outlined in Exhibit I represent our current understanding of the scope of work we anticipate performing.

During various stages of our work, we will provide you with verbal reports, various outlines, executive summaries, analytical schedules, etc. as requested.  We understand that you may make information available to potential investors, whether in a data room or by other means, that we may have advised on or assisted in the analysis thereof.  Our work is undertaken on the basis that we are working for you alone.  We make no representation about the suitability of any such information for disclosure to third parties and any responsibility for

# PRICEWATERHOUSE COOPERS 🅡

representations made to third parties remains yours alone.  Any written material we may advise you on that you wish to make available to potential investors should only be provided where you have first carefully considered the contents of such documents and have adopted them as your own and should be prepared without PricewaterhouseCoopers' branding and you should not make any attribution to PricewaterhouseCoopers' advice thereon.

We will assume no responsibility and make no representations with respect to the accuracy or completeness of information provided by the Company.  Moreover, our work cannot provide assurance that matters of significance to the financial information or to your plan process will be disclosed and that an investor's due diligence will not identify significant matters not previously identified by us or management of the Company.  Further, our work is not designed to and is not likely to reveal fraud or misrepresentation by the management of the Company or any other person.

PricewaterhouseCoopers LLP is not a registered broker/dealer as defined by Federal securities laws.  Our role is that of an advisor to the Company, not a broker of securities, and any fee paid to PricewaterhouseCoopers LLP is not contingent on a transaction closing nor is it based on the value of the Company.  Further, it is understood that PricewaterhouseCoopers LLP is not authorized to make any decisions or to negotiate with others on behalf of the Company and will not hold itself out as having any authority to do so for the Company.  Any descriptive information which PricewaterhouseCoopers LLP advises and assists the Company in preparing will be the sole responsibility of the Company and should not be referenced to PricewaterhouseCoopers LLP by name.

## 2.2    Deliverables:

If requested, upon the completion of our work, we will provide you with a written report setting forth the significant matters that came to our attention.  You understand that any report we prepare on the business will not be written from an investor's perspective. This report in either draft or final form or portions thereof including our oral comments, should neither be associated with the financial statements of the Company nor be communicated or distributed to any party who is not a member of the management of the Company, other than the Company's legal counsel, nor should they be referred to or quoted, in whole or in part, in any offering memorandum, prospectus, registration statement, public filing, loan, other agreement or document, in any such case without our express written consent (which is not to be unreasonably withheld) or except as required by law, regulation, or legal process.  In the event that our report is to be distributed to another party, a release letter similar to that set forth in Exhibit II must be received from that party prior to the distribution.  It is agreed that the terms of such release letter are to be determined exclusively by PricewaterhouseCoopers LLP, provided that PwC shall not require a release letter from a potential investor that is less favorable to that party than as set forth on Exhibit II.  In the event that our report is to be distributed to a potential investor, we will require your assurance that any potential investor receiving our report will be given an opportunity to carry out its own due diligence.

(2)



During the engagement we may provide oral comments, or drafts of: written reports, presentations, letters, schedules or hard or soft copies of electronic work products.  As these represent work in progress and/or not our final findings, we do not assume any responsibility in respect of them.  The final results of our work will be contained in our final report.

## 2.3    Delphi's Responsibilities:

It is your responsibility to determine the adequacy of the work to be performed for your purposes.  We make no representations as to whether these procedures are sufficient for your purposes.  Also it is understood that it is your right and responsibility to (1) designate a management-level individual or individuals to be responsible for overseeing the services being provided, (2) evaluate the adequacy of the services performed and any findings that result, (3) make all management decisions and perform all management functions, including accepting responsibility for the results of the our services, and (4) determine exclusively the scope of work included in Exhibit I, which will be subject to a work plan to be authorized by you.  The Company is solely responsible for the plan process; for implementation of any advice; for the materials created in connection with this engagement and for all information provided to potential investors, including but not limited to any descriptive memoranda, management presentations and projected financial information, for all negotiations with third parties and for determining the adequacy and acceptability of any offers received by third parties.

## 2.4    Timing:

The timing of our services to be provided hereunder is as follows:

Project Start Date:                             December 15, 2006
Estimated Project Completion Date:            March 31, 2007

## III.    RESOURCES ASSIGNED TO THIS SOW:

The PricewaterhouseCoopers personnel assigned to lead the services under this SOW are as follows:

Colin Wittmer, Lead Engagement Partner
Michael Burwell, Concurring Review Partner
Pete Smidt, Lead Engagement Director
Dave Dilcher, Lead Human Resources Partner
Eric Miller, Lead Tax Partner

(3)



## IV.    PAYMENT; EXPENSES; AND INVOICES:

### 4.1    Payment Terms:

Payment terms are consistent with the terms in Section 4 of the Agreement.

### 4.2    Professional Fees and Expenses:

Completion of the procedures is subject to, among other things, appropriate cooperation from Company personnel including providing necessary information and timely responses to our inquiries.  We will advise you promptly should we believe we would be unable to complete the procedures and issue our report.

Our fees will be based on applying the hourly rates for the individuals assigned to the engagement.  Our agreed upon rates are as set forth below:

|                             | Low   | High  |
|-----------------------------|-------|-------|
| Partner & Managing Director | $775  | $900  |
| Director                    | $515  | $600  |
| Manager                     | $390  | $450  |
| Senior                      | $325  | $375  |
| Associate                   | $290  | $325  |
| Administration              | $100  | $150  |

We estimate our fees for this engagement will range from $3,500,000 to $5,500,000.

If, during the course of our work, it appears that our fee will exceed our estimate, we will advise you immediately and we will not undertake additional work without prior approval.

We also will bill you for our reasonable out-of-pocket expenses and our internal per-ticket charges for booking travel.  Our fees and expenses will be billed in accordance with Sections 3 and 4 of the Agreement.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW:

### 5.1    Limitation of Liability

Because of the importance of oral and written representations by Delphi or Delphi management on PwC's ability to effectively perform the services as set forth in this SOW, Delphi releases PwC from any and all claims, liabilities, costs and expenses attributable to any knowing misrepresentation by Delphi or Delphi management.

Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of PwC, PwC's liability to pay damages for any losses incurred by

(4)

# PRICEWATERHOUSECOOPERS 🄯

Delphi as a result of a breach of contract, negligence or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to PwC for Services provided under this SOW.

In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, Delphi and PricewaterhouseCoopers have agreed that: (1) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this SOW or the services provided by PricewaterhouseCoopers to Delphi as outlined in this SOW, including any matter involving a successor in interest or agent of Delphi or of PricewaterhouseCoopers, shall be brought in the Bankruptcy Court or the District Court for the Southern District of New York if such District Court withdraws the reference; (2) PricewaterhouseCoopers and Delphi and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (3) PricewaterhouseCoopers and Delphi, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (4) if the Bankruptcy Court, or the District Court if the reference is withdrawn, does not have or retain jurisdiction over the foregoing claims and controversies, PricewaterhouseCoopers and Delphi, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit III to this SOW; and (5) judgment on any arbitration award may be entered in any court having proper jurisdiction.

Further, PricewaterhouseCoopers has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the Southern District of New York (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this SOW or the services provided hereunder.

## 5.2    Other matters:

PricewaterhouseCoopers LLP is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs.  Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

There are other PricewaterhouseCoopers teams assigned to engagements for Delphi that have been completed or are underway.  The PricewaterhouseCoopers team assigned to this engagement will not have access to the team members, working papers or reports of those other PricewaterhouseCoopers engagements without Delphi's prior consent.

If there are any questions, please call Colin Wittmer, Partner, at (646) 471 3542 or Mike Burwell, Partner, at (313) 394 3504 who will lead our engagement team.  If the services



outlined herein are in accordance with your requirements and if the above terms are acceptable, please have one copy of this letter signed in the space provided below and return it to us.

**IN WITNESS WHEREOF**, the parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| **PwC LLP** | | | |
|---|---|---|---|
| Signature<br><br>_____ | Printed Name<br><br>Colin Wittmer | Title<br><br>Partner | Date<br><br>Dec. 15, 2006 |
| **Delphi Corporation** | | | |
| Authorized Signature<br><br>_____ | Printed Name<br><br>John Sheehan | Title<br>Vice President,<br>Chief Restructuring<br>Officer | Date<br><br>Dec. 15, 2006 |

(6)



**Exhibit I**

The following is a summary of the due diligence areas for which we propose to perform due diligence procedures.  Given our understanding of the Company's organization and reporting structure, we expect to perform and report on certain procedures for each operating division as appropriate using separate teams, all coordinated via a central team located at Delphi Headquarters in Troy, MI.

**Financial Due Diligence**

1. Obtain an understanding of the Company's accounting policies and how those policies impact reported results.  Assess the overall adequacy of the Company's compliance with Sarbanes-Oxley rules and reporting responsibilities.

2. Obtain an understanding of the status of significant "investigations" into the Company's financial reporting and the Company's current estimate, if any, of the range of the potential effects to its reported earnings.

3. Understand significant joint-venture agreements and how their accounting treatment impacts reported EBITDA and cash flow.

4. Summarize the key financial aspects of transactions and agreements/arrangements between the Company and General Motors.

5. Perform appropriate due diligence procedures on the following subject areas pursuant to a work plan to be authorized by you:

    (a)   Quality of Earnings / Cash Flow (performed for each operating division as appropriate)

    (b)   Operating Division Analysis and Corporate Headquarters (performed for each operating division as appropriate)

    (c)   2007 to 2012 Business Plan (performed for each operating division as appropriate)

    (d)   Balance Sheet

    (e)   Tax Due Diligence

    (f)   Employee Benefits Due Diligence

(7)



**Exhibit II**

**Standard Release Letter - Report Access Requested by Client for Nonclient**


[Nonclient Recipient Letterhead]


[Date]


Colin Wittmer
PricewaterhouseCoopers LLP
PricewaterhouseCoopers Center
300 Madison Ave.
New York, NY 10017

Dear Mr. Wittmer:

Delphi Corporation (the "Company") has informed [name of recipient] that PricewaterhouseCoopers LLP has performed certain procedures to assist the Company in connection with its own due diligence of the Company.  We understand that the work performed by PricewaterhouseCoopers LLP was performed in accordance with instructions provided by Company and was performed exclusively for the Company's sole benefit and use.

The Company has requested that PricewaterhouseCoopers LLP provide [name of recipient] access to the report of their findings dated [date].  [name of recipient] acknowledges that this report was prepared at the direction of the Company and may not include all procedures deemed necessary for the purposes of [name of recipient] and that certain findings and information may have been communicated to the Company that are not reflected in the report. Potential investors should take note that this document is different in scope and content from a due diligence report typically prepared for potential investors.  The report is provided to potential investors solely to assist the Company in providing relevant information about the business; it has not been prepared as, and it should not be used in place of, the due diligence enquiries and procedures potential investors would normally carry out prior to investing in a business.

In consideration of PricewaterhouseCoopers LLP allowing [name of recipient] access to the report and, if requested by [name of recipient], discussing the report, [name of recipient] agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that neither PricewaterhouseCoopers LLP nor any other PricewaterhouseCoopers Firm involved in performing the work or preparing the report ("Released Firm") assumes any duties or obligations to [name of recipient] in connection with such access.

(8)



[name of recipient] agrees to release PricewaterhouseCoopers LLP, each Released Firm and their personnel from any claim by [name of recipient] that arises as a result of PricewaterhouseCoopers LLP permitting [name of recipient] access to the report.  Further, [name of recipient] agrees not to disclose or distribute the report, or information received, orally or in writing from PricewaterhouseCoopers LLP or a Released Firm to any other parties (including, if applicable, to any other members of a lending syndicate) without PricewaterhouseCoopers LLP's prior written consent, except as required by law, regulation, or legal process, provided that, except in the case of routine supervisory examinations by bank regulatory authorities, [name of recipient] provides PricewaterhouseCoopers LLP with prompt notice of any request that [name of recipient] disclose such information (so long as such notice is not prohibited by law), so that PricewaterhouseCoopers LLP may at its option object to the request and/or seek an appropriate protective order.  It is understood and agreed that any objection of PricewaterhouseCoopers LLP to such a request shall not affect [name of recipient]'s obligations to produce materials called for by appropriate legal or regulatory process.


Acknowledged by [name of recipient] representative:


By:    _____
          (Name of company official)


          _____
          (Title)


          _____
          (Date)

(9)



**Exhibit III**

**Dispute Resolution Procedures**

The following procedures shall be used to resolve any controversy or claim ("dispute") as provided in this SOW. If any of these procedures are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

Mediation

A dispute shall be submitted to mediation by written notice to the other party or parties. In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations. The mediator will be selected by the parties. If the parties cannot agree on the mediator, a mediator will be designated by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party. Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and will be agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

Arbitration

If a dispute has not been resolved in 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration. The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").

(10)

# EXHIBIT F

Delphi Corporation
Mayer Brown Special Parties

| COMPANY | CONTACT | ADDRESS1 | CITY | STATE | ZIP |
|---------|---------|----------|------|-------|-----|
| Mayer, Brown, Rowe & Maw LLP | Paul J.N. Roy | 71 South Wacker Drive | Chicago | IL | 60606-1404 |

# EXHIBIT G

Delphi Corporation
PricewaterhouseCoopers Retention
Special Parties Service List

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY/FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| PricewaterhouseCoopers LLP Office of the General Counsel | Kim A. Thompson | 3 Embarcadero Center | San Francisco | CA | 94111 | 415-498-7950 | 813-329-8664 | kim.thompson@us.pwc.com | PricewaterhouseCoopers General Counsel |
| PricewaterhouseCoopers LLP | Colin Wittmer | PricewaterhouseCoopers Center 300 Madison Avenue | New York | NY | 10017 | 646-471-3542 | 813-375-6478 | colin.e.wittmer@us.pwc.com | PricewaterhouseCoopers |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    1

PwC Retention Application
Special Parties Service List