Bonnie Steingart (BS-8004)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000

Counsel for the Official Committee of Equity Security Holders

Blair Connelly (BC-0237)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

Counsel for the Official Committee of Unsecured Creditors

David S. Rosner (DR-4214)
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
Facsimile: 212.506.1800

Counsel for the Ad Hoc Trade Committee


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :   Chapter 11
                                          :
  Delphi Corporation, et al.,             :   Case No. 05-44481 (RDD)
                                          :   (Jointly Administered)
                     Debtors.             :
                                          :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOINT OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS
AND THE AD HOC TRADE COMMITTEE TO THE DEBTOR'S MOTION
UNDER FED. R. BANKR. P 9016 AND FED. R. CIV. P. 45 TO QUASH TRIAL
<u>SUBPOENAS SERVED ON ROBERT S. MILLER AND JOHN D. OPIE</u>**

The Unsecured Creditors Committee, the Equity Committee and the Ad Hoc Trade Committee (the "Committees") hereby submit this opposition to Debtors' Motion to Quash Trial Subpoenas Served by the Committees on Robert S. Miller and John D. Opie (the "Motion to Quash").

**Preliminary Statement**

1. The Debtors have asked this Court to conduct a hearing on the exercise of the Debtors' business judgment in connection with agreements that are designed to effectuate a sale of the company. In connection with this hearing, the Committees have issued trial subpoenas to those individuals whose business judgment is at issue, namely, to two key members of Delphi's Board of Directors – Mr. John Opie, lead independent director, and Mr. Robert Miller, the Executive Chairman of the Board.

2. Despite the fact that the Debtors have requested a hearing on the exercise of the *Board's* business judgment, the Debtors have moved to quash the subpoenas on the ground that compliance with them would be unduly burdensome, and have insisted that the testimony of two other witnesses – *neither of whom are directors* – is sufficient. According to the Debtors, Messrs. Miller and Opie are simply too busy to testify on January 11, 2007, the day Debtors themselves have set for the hearing. Motion to Quash ¶ 1.

3. In support of the Motion to Quash, the Debtors make the hollow arguments that (i) this critical Director testimony need not take place live, but should instead be presented "in the more efficient and less burdensome means of deposition designations;" and (ii) since the Debtors are offering the testimony of other "representatives" at the hearing, neither of whom is a Director, this will somehow render the live testimony of its key Board members duplicative. These arguments border on frivolous.

## ARGUMENT

4. It is well established that the burden of persuasion in a motion to quash a subpoena under Rule 45 rests with the moving party, here the Debtors. *See Kirschner v. Klemons*, 2005 U.S. Dist. LEXIS 9803, *6 (S.D.N.Y. May 19, 2005) ("Because the burden is on the party seeking to quash a subpoena… that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance."). The Debtors have failed to meet their burden.

5. At the core of the Debtors' motion is the assertion that Messrs. Miller and Opie are simply too busy to be bothered to attend the hearing the Debtors themselves have sought, and have employed the tried and true excuse that Mr. Opie has an out-of-state, pre-scheduled matter unrelated to Delphi to attend. While the Committees do not doubt that the directors are busy men, "[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner,* 2005 U.S. Dist. LEXIS 9803 at *6.

6. More importantly, in determining whether a subpoena subjects a witness to an undue burden, "depends upon such factors as relevance and the burden imposed." *In re Blackstone Partners, L.P.*, 2005 U.S. Dist. LEXIS 13177, *5-6 (S.D.N.Y. July 1, 2005). As the Debtors' motion to approve the Framework Agreements (as defined below) tacitly admits, the thought process and consideration of a corporation's directors are fundamental to the analysis under the business judgment test, which explores whether the "***directors*** of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." Debtors' Framework Motion ¶55.

7. In this matter, the Debtors seek relief under Bankruptcy Code section 363(b)(1), which permits a chapter 11 debtor to use property of the estate if certain requirements are met. Courts apply the business judgment standard in determining whether to authorize a transaction pursuant to this section. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d. Cir. 1983). Thus here, the Court must assess whether the Delphi Board did – or did not – exercise proper business judgment, and the testimony of the Directors is fundamental to such an inquiry. *See, e.g., In re: Global Crossing Ltd.*, 295 B.R. 726, 743 (S.D.N.Y. 2003) (noting that it is the decision-making of the board of directors that underlies the business judgment rule). Indeed, such testimony is especially critical where live testimony will be necessary for the Court to assess issues about whether the Delphi Board was uninformed and misinformed about the agreements currently before the Court (the "Framework Agreements").

8. The Debtors' argument that presenting Messrs. Sheehan and Resnick as substitute witnesses will obviate the need for key Director testimony is therefore unavailing. First, although Messrs. Sheehan and Resnick may well be able to provide detailed testimony about the Framework Agreements, since the key inquiry is whether the ***Board*** properly considered these Framework Agreements, the testimony of Messrs. Sheehan and Resnick will, by definition, be insufficient. Despite the Debtors' protestations, the live testimony from Directors sought by the Committees could not possibly be duplicative of the substitute testimony the Debtors say they will offer because the Debtors are not offering the testimony of ***any Director at all***.

9. Moreover, the Debtors' argument that using deposition designations from Messrs. Miller and Opie will make their live testimony "duplicative" similarly misses the crux of the matters that the Debtors have put before the Court. As a threshold matter, this Court cannot have an adequate hearing on the Debtors' current motion for approval of the Framework Agreements

-4-

without testimony by the persons who actually had a duty to exercise business judgment. Mr. Opie is Delphi's lead independent director. It is essential for the Court to receive live testimony from him before making a determination about the Board's consideration of these agreements and its purported exercise of business judgment. The same is true of Mr. Miller who is Chairman of the Board and operated as a key part of management. The Court must hear from these directors directly about what they were told, what they understood, what they were not told and how they went about assessing these transactions. On matters of such significance, deposition testimony is an inadequate substitute for live testimony. *See Smart v. Goord*, 21 F. Supp. 2d 309 (S.D.N.Y. 1998) ("While it is possible to introduce at a hearing the depositions of witnesses who cannot be compelled to testify in person… such a procedure is a poor substitute for live testimony.")

10. In addition, it is important here that the depositions the Debtors seek to substitute here were taken only for purposes of discovery, not for trial, and it would therefore be fundamentally unfair for the Committees to be limited to the testimony obtained in those depositions after the fact. This is especially true when considering the Debtors had not stated its objection to producing Messrs. Miller and Opie until *after* their depositions were completed.

11. During a phone call in connection with a "meet and confer" before the depositions, the Debtors were told that the Committees would be serving trial subpoenas on the Directors being deposed. The Debtors made no objection nor did they raise any misgivings during that call. The Committees, thereafter, took the same pre-hearing discovery of the Directors as of Messrs. Sheehan and Resnick – who will provide live testimony and who will be subject to cross-examination. After the depositions of Messrs. Miller and Opie had concluded – and it was too late for the Committees to elicit the testimony intended to elicit at the hearing –

the Debtors announced that they were seeking to quash the subpoenas. Such gamesmanship by the Debtors should not be countenanced here.

12. The depositions of Messrs. Miller and Opie were taken to obtain discovery concerning the Board's consideration and deliberations with respect to the Framework Agreements. Not all of the materials and matters that will be covered before the Court were touched on during the depositions. As to the Committees, both Directors are, in a sense, hostile witnesses and depositions are typically used to set up the matters that will be explored during cross examination rather than acting as a substitute for such live testimony. Therefore it would be prejudicial to the Committees to allow the depositions to take the place of live testimony here.

## Conclusion

13. The Debtors' arguments that this testimony of Messrs. Miller and Opie is either burdensome or duplicative or unnecessary can only be characterized as frivolous. The same must be said of the Debtors arguments about inconvenience and unavailability. It is the Debtors own motion for Court approval of the Debtors' exercise of business judgment that makes this testimony essential. And, since the timing of both the hearing and the Court's consideration of these matters is wholly within the control of the Debtors, the Motion to Quash should be denied.

Dated: January 8, 2007
     New York, New York

                FRIED, FRANK, HARRIS, SHRIVER
                    & JACOBSON LLP

                By: /s/ Bonnie Steingart
                    Bonnie Steingart (BS-8004)

One New York Plaza
New York, New York 10004
Telephone: 212.859.8000

*Counsel for the Official Committee of Equity Security Holders*


LATHAM & WATKINS LLP

By: /s/ Blair Connelly
     Blair Connelly (BC-0237)

885 Third Avenue
New York, New York 10022
Telephone: 212.906.1200

*Counsel for the Official Committee of Unsecured Creditors*


KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP

By: /s/ David Rosner
     David S. Rosner (DR-4214)

1633 Broadway
New York, New York 10019
Telephone: 212.506.1700

*Counsel for the Ad Hoc Trade Committee*