# Exhibit A

# 6/30/03 Hearing Transcript

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
                      SOUTHERN DIVISION


PATENT HOLDING COMPANY,

             Plaintiff,
                                    HONORABLE AVERN COHN
    v.
                                    No. 99-76013
DELPHI AUTOMOTIVE SYSTEMS
CORPORATION,

             Defendant.
_____/



                       MARKMAN HEARING

                  Monday, June 30, 2003

                         -   -   -

Appearances:

Richard W. McLaren, Jr.          Steven R. Hansen
Thomas L. Gemmell                Charles Verhoven
Erik Flom                        Quinn Emanuel
Welsh & Katz, Ltd.               865 S. Figueroa St., 10th Fl
120 S. Riverside Plaza, 22nd FL  Los Angeles, CA  90017
Chicago, Illinois  60606         (213) 624-7707
(312) 655-1500
                                 William Cosnowski, Jr.
Counsel for Plaintiff            Delphi World Headquarters
                                 5825 Delphi Drive
                                 Troy, Michigan  48098
                                 (248) 813-3309

                                 Counsel for Defendant

                         -   -   -

         Sheri K. Ward, Official Court Reporter
         Theodore Levin United States Courthouse
         231 West Lafayette Boulevard, Room 219
                  Detroit, Michigan  48226
                       (313) 965-4401

     Proceedings recorded by mechanical stenography.
   Transcript produced by computer-aided transcription.
```

Page 70

1    container rim."

2        THE COURT: All we're talking about now is whether
3    the connector element requires a substantial -- there's a
4    significant difference in interpretation of the connector
5    element, not the groove element.

6        MR. HANSEN: I understand, and there is, there is.

7        THE COURT: All right. So then there's three:
8    The cover/homogeneous thermoplastic molded body, there's the
9    groove, and there's the connector. All I'm trying to do is
10   reduce the ten elements that I've been told are ambiguous to
11   a lower number for purposes of claim interpretation.

12        MR. HANSEN: I understand that, and I
13   understand -- that makes sense from your perspective, but we
14   definitely have a dispute over what receive means and engage
15   means also because you heard Mr. McLaren get up and explain
16   why they don't want the definitions that we obtained from
17   dictionary sources to reflect the ordinary meaning of those
18   terms, engage meaning attach or secure and receive meaning
19   to hold, bear or contain.

20        THE COURT: Let me suggest something to you. I
21   will deal with as many elements as it takes. It takes an
22   average of three months for a judge from the time of oral
23   argument to come to a conclusion in a Markman hearing. I'm
24   going to bifurcate this. I'm going to deal with one patent
25   at a time. I have other work to do. I can't devote my

PHC v. Delphi

Engagement Member
Mon./6-30-03

Page 71

1  whole time and attention to three separate patents
2  simultaneously.
3           So when we get done with this one, we will go
4  to the next one. It's the only way I can handle it. As
5  long as you two are going to make a federal case out of this
6  and not cooperate to reduce the number of ambiguous elements
7  to focus on what really divides you, that's quite all right
8  with me, you know, so you've got to -- you are entitled to
9  put up a Stalingrad-like defense and they are going to
10 figure out how to break through it or we're going to try
11 this case in the siege modality. I am not going to spend
12 the next three months full time trying to resolve these
13 questions of claim construction.
14          So all we'll deal with today is the
15 '485 patent. You all think about what I have said. Now, I
16 have been kind of rough on him because I haven't felt, and
17 you haven't gotten there, I haven't felt that the lawyers in
18 this case appreciate the difficulty that the judge has in
19 claim interpretation. 50 percent of all claim
20 interpretations are reversed by the Federal Circuit, you
21 know, 50 percent of them. There's as much chance I get it
22 wrong as I get it right, and I want to be careful.
23          Now we've got ten terms, and you tell me all
24 ten of them. I don't know. We'll see, we'll see. You've
25 got to reformulate your terms because, as I have told you,

PHC v. Delphi

Engagement Member
Mon./6-30-03

Page 72

1   your argument is too difficult to follow, there's too much
2   of it buried in the footnotes, and it would require me to
3   read the brief with those huge books alongside of me and go
4   through the brief to the book, back to the brief and have
5   law clerks and interns making copies of the papers. You
6   know what I'm talking about.
7           MR. HANSEN: Yes, although I'm hoping I can
8   clarify. We did it a certain way to simplify the issue, and
9   if I direct you to the right place in the homogeneous
10  thermoplastic argument, it may help you.
11          THE COURT: It may, but the file history, the
12  prosecution history is significant?
13          MR. HANSEN: Yes, it is for certain terms.
14          THE COURT: The only way you can deal with it --
15  if you go back and look at the decision in BEI v.
16  Matsushita, you would see the difficulty I had with the file
17  history because after I got done with interpretation on the
18  motion for summary judgment it was the whole thing all over
19  there because I was reinterpreting what I was interpreting.
20          But go ahead, I'm going to let you give your
21  presentation.
22          MR. HANSEN: Okay. I'm going to use the lectern.
23          MR. McLAREN: Do you want me to take that down?
24          MR. HANSEN: If you would, please.
25          THE COURT: Did you just hand me something? Oh,

PHC v. Delphi