# **Exhibit A**

# EXHIBIT A
# SUMMARY OF OBJECTIONS TO PLAN INVESTMENT AND
# FRAMEWORK SUPPORT APPROVAL MOTION
### (Organized by Objection)

Eight parties filed objections.  The filing deadline for objections was January 2, 2007, and for supplemental objections was January 9, 2007 at 12:00 p.m.

| Summary of Objection | Docket Nos. | Resolution, Response or Proposal |
|---|---|---|
| 1. Commitment Fees<br>(a) Payment of commitment fees is inappropriate when Plan Investors have nothing at risk and/or their commitment is illusory. | 6209 (CC)<br>6211/6247 (EC)<br>6496 (IUE-CWA)<br>6501 (TC)<br>6344 (IUOE)<br>6367 (IBEW & IAMAW) | The commitment fees were negotiated at arms-length and approved in the exercise of the Debtors' business judgment.  There are appropriate milestones such that only $10 million becomes payable on the Due Diligence Expiration Date, the balance of the first 50% becomes payable only after the Investors approve the GM Settlement, and the final 50% becomes payable only after the court has approved the Plan disclosure statement. |
| 2. Alternate Transaction Fee<br>(a) General objection. | 6209 (CC)<br>6496 (IUE-CWA) | The Alternate Transaction Fee was negotiated at arms-length and approved in the exercise of the Debtors' business judgment.  Such "topping" fees are common and the $100 million amount is reasonable (approx. 3% of new money raised).  Also, prior to the Court's approval of the Plan disclosure statement, Debtors' aggregate liability for commitment fees, Alternate Transaction Fee, investor expenses and breach damages, inclusive, is capped at $100 million. |
| (b) Alternative Transaction Fee should not be payable because of GM's actions. | 6211/6247 (EC)<br>6344 (IUOE) | The EPCA is clarified to remove GM actions from definition of Change of Recommendation. |
| (c) Alternative Transaction Fee should be narrowed to change in control of debtors. | 6211/6247 (EC) | The Alternate Transaction Fee was negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| (d) Alternative Transaction Fee "tail" should be six months, not two years. | 6211/6247 (EC)<br>6344 (IUOE) | The Alternate Transaction Fee was negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| (e) Alternate Transaction Fee should only be payable upon closing of an alternate transaction. | 6501 (TC) | Withdrawn. |
| (f) Approval of the Alternate Transaction Fee is inappropriate prior to consideration of Highland's offer. | 6330 (HCM)<br>6367 (IBEW & IAMAW)<br>6497 (EC) | The Debtors are considering Highland's offer prior to the January 11, 2007 hearing.  The Investors may terminate if the approval order has not been entered and become final by January 22, 2007. |

**Objecting Parties (Docket Number(s))**
Official Committee of Unsecured Creditors ("CC") (6209) -- To Be Withdrawn Subject To Settlement
Official Committee of Equity Security Holders ("EC") (6211, 6247, 6497)
International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Communications Workers of America ("IUE-CWA") (6242, 6496, 6500)
*Ah Hoc* Committee of Delphi Trade Claim Holders ("TC") (6254, 6501, 6508) -- To Be Withdrawn Subject To Settlement
Highland Capital Management, LP ("HCM") (6330)
International Union of Operating Engineers, Local Unions Nos. 18S, 101S, and 832S ("IUOE") (6344)
International Brotherhood of Electrical Works Local 663 ("IBEW") and International Association of Machinists and Aerospace Workers District 20 ("IAMAW") (6367)
United States Trustee ("UST") (6401)

1

| Summary of Objection | Docket Nos. | Resolution, Response or Proposal |
|---|---|---|
| 3. Investor Expenses<br>(a) Payment of transaction expenses is inappropriate before Investors have committed to transaction. | 6496 (IUE-CWA) | The investor expenses were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| (b) Court should not give blanket approval but should reimburse on application only "reasonable, actual and necessary" expenses or for "substantial contribution." | 6401 (UST) | The investor expenses were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| 4. Indemnification<br>(a) The Debtors' indemnification obligations to new money investors are too broad. | 6209 (CC)<br>6496 (IUE-CWA) | The indemnification provisions were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| 5. Motion Premature<br>(a) Consideration of the Motion is premature due to ongoing negotiations. | 6211/6247 (EC) | The Debtors are considering Highland's offer prior to the January 11, 2007 hearing. The Investors may terminate if the approval order has not been entered and become final by January 22, 2007. |
| (b) Approval of the EPCA is premature prior to Plan confirmation. | 6254 (TC)<br>6367 (IBEW & IAMAW) | The Investors may terminate if the approval order has not been entered and become final by January 22, 2007. Bankruptcy courts often approve investment agreements prior to plan confirmation. |
| (c) Expedited consideration of the motion is unfair, particularly in light of the Alternate Transaction Fee. | 6330 (HCM) | The Motion is no longer expedited because the hearing on the Motion was continued to January 11, 2007. |
| (d) The time for approval of Motion is artificially foreshortened. | 6344 (IUOE) | The Motion is no longer expedited because the hearing on the Motion was continued to January 11, 2007. |
| (e) There is no basis for waiver of the 10-day stay period under rule 6004(g). | 6211/6247 (EC) | The Investors may terminate if the approval order has not been entered and become final by January 22, 2007. |
| 6. Corporate Governance/Preferred Stock<br>(a) Extraordinarily broad corporate governance powers granted to new money investors as holders of convertible preferred stock are unacceptable. | 6209 (CC)<br>6496 (IUE-CWA) | The corporate governance provisions were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |
| (b) Affiliates of Series A Preferred Stock holders should not be able to vote Series B stock for Common Directors. | 6211/6247 (EC) | Resolved. The Preferred Stock Term Sheet is clarified to restrict affiliates from voting for Common Directors. |
| (c) Directors elected by Series A Preferred Stock holders should be required to resign when Series A loses power to appoint. | 6211/6247 (EC) | The corporate governance provisions were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |
| (d) Series A Preferred Stock should convert to Series B Preferred Stock when affiliated holder ceases to be affiliated. | 6211/6247 (EC) | Automatic conversion of Series A Preferred Stock is governed by beneficial ownership test. |
| (e) Agreements should clarify that restrictions on Appaloosa, ADAH, Cerberus, and Dolce, respectively, apply to their affiliates. | 6211/6247 (EC) | Resolved. Agreements are clarified to apply restrictions on Appaloosa and Cerberus to affiliates. |
| (f) The Plan Investors will have disproportionate control of the board and exclusive approval rights over future business decisions of the reorganized company. | 6330 (HCM) | The corporate governance provisions were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |

2

| Summary of Objection | Docket Nos. | Resolution, Response or Proposal |
|---|---|---|
| 7. Rights Offering<br>(a) The Rights Offering should be conducted post-confirmation under section 1145 rather than pre-confirmation subject to a Rights Offering Registration Statement. | 6211/6247 (EC) | The terms of the Rights Offering were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |
| (b) The Registration Condition means that it is possible the Rights Offering will be negated if the Registration Statement does not become effective during the Plan solicitation period | 6211/6247 (EC) | EPCA Section 1(c)(ii) requires that the Registration Statement be effective prior to Plan solicitation. |
| (c) Transferability of the Rights is impaired because marking the Plan solicitation ballot is the only means for exercising Rights | 6211/6247 (EC) | Resolved. The EPCA is clarified to provide a separate document for the exercise of Rights |
| 8. Treatment of Claims<br>(a) Difference in purchase price of common stock ($35) and treatment value for creditor recoveries ($45) either overstates creditor recoveries (and renders Plan unconfirmable) or provides unfair "pricing fee" to investors. | 6254 (TC) | Withdrawn. |
| (b) Plan pays trade claims in part with common stock at a deemed value of $45 per share, but allows equity holders to purchase common stock at a deemed value of $35 per share | 6344 (IUOE) | The Motion does not seek approval of the Plan. The $45 treatment value is calculated to provide full recovery for creditors. The $35 strike price applicable to the Rights Offering provides an additional implied recovery to current equity holders. |
| (c) The proposed plan framework will significantly overpay creditor claims due to deemed value of $45 per share. | 6330 (HCM) | The Motion does not seek approval of the Plan. The $45 treatment value is calculated to provide full recovery for creditors. |
| (d) The proposed plan discriminates against trade creditors in favor of bond creditors. | 6254 (TC) | Withdrawn. |
| (e) The $1.7 billion cap on allowed trade and unsecured claims potentially further reduces creditor recoveries. | 6254 (TC) | Withdrawn. |
| (f) PSA treats employee obligations as flow-through claims, but excludes collective bargaining related employee claims. | 6344 (IUOE)<br>6367 (IBEW & IAMAW) | The Motion does not seek approval of the Plan. The Agreements assume resolution of collective bargaining-related claims prior to Plan Confirmation. |
| 9. Statutory Committee Consent<br>(a) There is no provision for Creditors' Committee input and consent with respect to any of the transaction documents. | 6209 (CC) | Withdrawn. |
| (b) The Equity Committee must have the right to review, comment on and approve restructuring documents. | 6211/6247 (EC) | The Motion does not seek approval of the Plan. The Equity Committee has had, and continues to have, opportunity for input, including statutory rights. The Equity Committee is not entitled to a right of consent. |
| (c) Any GM Settlement, including any release of GM, must be approved by the Equity Committee. | 6211/6247 (EC) | The Motion does not seek approval of the GM Settlement or the Plan. The Equity Committee is not entitled to an approval right. |

| Summary of Objection | Docket Nos. | Resolution, Response or Proposal |
|---|---|---|
| 10. Other Equity Committee Objections<br>(a) The cap on the Plan Investors' liability should not apply to willful breach. | 6211/6247 (EC) | The liability caps were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| (b) The Plan Investors' termination rights based on projected EBITDA levels are too broad. | 6211/6247 (EC) | The Investors termination rights were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| (c) Documents should confirm that GM will be responsible for transformation costs. | 6211/6247 (EC) | The documents assume a GM Settlement in the future. The Debtors have not yet reached a settlement with GM setting the extent of GM's responsibility for transformation costs. |
| (d) Delphi's directors were uninformed when they approved the Framework Agreements | 6497 (EC) | The record shows that the directors were fully informed. |
| (e) The Plan Investors receive an unconscionable return on investment (in addition to fees paid to them) | 6497 (EC) | The preferred share structure and pricing were negotiated at arms-length and approved in the exercise of the Debtors' business judgment. |
| 11. Other Highland Objections<br>(a) The EPCA takes the value from current stockholders and gives it to a small group of investors who have the exclusive opportunity to buy stock at a discount. | 6330 (HCM)<br>6497 (EC) | There is no value for current equity without a GM deal. The terms of the Rights Offering were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |
| (b) The EPCA grants the Plan Investors the exclusive right to acquire Preferred Stock. | 6330 (HCM)<br>6497 (EC) | The terms of the Rights Offering were negotiated at arm-length and approved in the Debtors' business judgment. The Motion does not seek approval of the Plan. |
| (c) The Motion should be denied because the Highland proposal is superior. | 6330 (HCM)<br>6497 (EC) | The Debtors are considering Highland's offer prior to the January 11, 2007 hearing. |
| (d) The PSA lock-up provision makes any alternate proposal a sham because it prohibits GM from entering negotiations and GM is critical to any alternate proposal. | 6330 (HCM)<br>6497 (EC) | GM may participate with the Debtors in considering any alternate proposal in the exercise of the Debtors' fiduciary duties, and after April 1, 2007, negotiate with the Debtors' consent. |
| 12. *Sub rosa* Plan<br>(a) The Agreements dictate critical plan provisions making them an improper *sub rosa* plan. | 6254 (TC)<br>6401 (UST)<br>6496 (IUE-CWA) | The Motion does not seek approval of the Plan. |
| (b) The EPCA provides for liability protection under section 1125(e) (applicable to plan solicitation and to the offer, issuance, sale, or purchase of a security pursuant to a plan) without the approval of a disclosure statement. | 6254 (TC) | Withdrawn. |
| 13. Other Union Objections<br>(a) Requirement that Plan Investors consent to consensual agreements with labor unions, and pattern bargaining, puts union agreements in the hands of Plan Investors and the UAW. | 6344 (IUOE)<br>6367 (IBEW & IAMAW) | The Motion does not seek approval of the Plan. Neither the EPCA nor the PSA precludes the Debtors from negotiating with any party, including the IUOE, IBEW, and IAMAW. Likewise, the approval rights afforded to the Plan Investors with respect to tentative labor agreements does not limit the rights of any union or any other party in interest to negotiate with the Debtors. |
| (b) PSA calls for Pension Plan spin-off without regard to collective bargaining agreements; IUOE locals want to negotiate a spin off for IUOE represented plan participants to a multiemployer plan but have been stonewalled by the Debtors. | 6344 (IUOE) | The Motion does not seek approval of the Plan. The Debtors are unwilling to negotiate the type of multiemployer spin off the IUOE is seeking. |