**Hearing Date and Time: January 12, 2007 at 10:00 a.m.**
**Objection Deadline: January 4, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :
In re                :    Chapter 11
                  :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                  :
                  :    (Jointly Administered)
          Debtors.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE AND SOLICIT ACCEPTANCES OF REORGANIZATION PLAN

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this reply to the objection of Highland Capital Management, LP ("Highland") (Docket No. 6442) and the response of the Official Committee of Equity Security Holders (the "Equity Committee") (Docket No. 6444) (collectively, the "Objections") to the Debtors' motion for an order under 11 U.S.C. § 1121(d) further extending the Debtors' exclusive periods ("Exclusive Periods") within which to file and solicit acceptances of a plan of reorganization (the "Motion") (Docket No. 6285). A chart summarizing the Objections and the Debtors' responses is attached hereto as Exhibit A.

In support of this Reply, the Debtors respectfully represent as follows:

Preliminary Statement

1.      Of all the Debtors' stakeholders, only a single party-in-interest—Highland—maintains an objection to an extension of the Exclusive Periods. As a would-be plan funder, however, Highland's motives are obviously to disrupt the existing Plan Investors' actions under the Framework Agreements.[1]  Highland's purported grounds for terminating exclusivity are nothing more than a thinly-veiled effort to seek advantage for itself at the expense of Delphi's unfolding reorganization process.

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

2.      The Official Committee of Unsecured Creditors (the "Creditors'
Committee") initially objected to the length of the extension,[2] but now affirmatively
supports the relief sought in the Motion.[3]  The Equity Committee elected not to object in
its "Statement," expressly deferring to this Court's discretion.

3.      The record of these cases shows unequivocally that the Debtors have
moved their reorganization forward without delay and that a six-month extension of the
Exclusive Periods is warranted at this time because it coincides with the timeframe
contemplated by the Framework Agreements.  The Objections should therefore be
overruled.

Background

4.      As noted in the Motion, on December 21, 2006, Delphi received an
unsolicited offer from Highland, which Highland believes, if implemented, would provide
a superior alternative proposal to the EPCA and PSA with the Plan Investors including up
to a $4.7 billion equity commitment.  Promptly after receiving the Highland offer, Delphi
acknowledged publicly on December 21, 2006 that "it would carefully analyze and
consider Highland's proposal and discuss its merit with its Board of Directors" and reached
out to Highland and began discussions with respect to the Highland proposal.  Delphi's

_____

[2]    Objection Of The Official Committee of Unsecured Creditors To Motion For Order Under 11 U.S.C.
       § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of
       Reorganization Plan (Docket No. 6440).

[3]    See Statement of the Official Committee of Unsecured Creditors in Support of the Expedited Motion for
       Order Authorizing and Approving the Equity Purchase and Commitment Agreement Pursuant to
       Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code and the Plan Framework Support
       Agreement Pursuant to Sections 105(a), 363(b), and 1125(e) of the Bankruptcy Code, Withdrawal of
       Preliminary Objection Thereto, and Withdrawal of Objection to Debtors' Motion for Order Extending
       Exclusive Periods Within Which to File and Solicit Acceptances of Reorganization Plan (Docket
       No. 6532).

Board of Directors met on January 3, 2007 and again on January 9 and 10, 2007 to consider two decisions: (a) whether to proceed with the hearing on the Framework Motion on January 11, 2007 and (b) what to communicate to Highland in response to its December 21st proposal.

5.      Earlier today (January 10, 2007), Delphi advised Highland that the Debtors had decided to proceed to seek approval of the Framework Motion at the January 11, 2007 hearing in the Bankruptcy Court having concluded that it continues to be in the best interests of the Company and its stakeholders, taken as a whole, for the Debtors to be permitted to enter into the PSA and EPCA and perform those agreements in accordance with their terms.

6.      Delphi advised Highland that based on the information presently available to the Debtors, the Debtors could not conclude that the Highland proposal, as a matter of fact, would deliver superior value to Delphi stakeholders and that, like the EPCA and PSA, there is significant conditionality and risks of execution.   Delphi also advised Highland that the Debtors had concluded that it is premature to move forward with Highland regarding a transaction at the present time but would consider reviewing this assessment consistent with the requirements of the EPCA and PSA should Highland choose to address various issues outlined to Highland by Delphi.  Delphi also acknowledged to Highland that time is of the essence and, at some point in the future, the mere passage of time, the progress made under the EPCA and PSA, and/or other considerations may preclude further practical consideration of Highland's interest in Delphi.

4

<u>Argument</u>

A.    <u>Cause Exists For Extension Of The Exclusive Periods</u>

7.      Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend a debtor's exclusive periods for cause.  <u>See</u> 11 U.S.C. § 1121(d).  As detailed in the Motion, courts examine the following factors to determine whether "cause" exists to extend a debtor's Exclusive Periods:

> (a)    the existence of good faith progress toward reorganization;
>
> (b)    existence of an unresolved contingency;
>
> (c)    the size and complexity of the debtor's case;
>
> (d)    a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the Debtor's] reorganization demands"; and
>
> (e)    the fact that the debtor is paying its bills as they come due.

<u>In re McLean Indus., Inc.</u>, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); <u>accord</u> <u>In re Hoffinger Indus., Inc.</u>, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003).

8.      Highland makes little effort to refute any of the <u>McLean</u> factors. Highland's objection is based not on a lack of cause, but primarily on the ground that it should not be required to sign the same confidentiality agreement signed by other interested plan investors.

B.    <u>Highland's Limited Objection Is Without Merit</u>

> (i)    The Debtors Are Not Seeking To Extend Exclusivity To Pressure Creditors To Accede To Their Demands

9.      Highland cites the <u>McLean</u> factor that exclusivity should not be used to give the debtor an unfair bargaining leverage, but then makes the unfounded assertion

5

that Highland's own failure to sign the same confidentiality agreement already signed by other potential plan investors somehow supports denial of the Motion.[4]  Not surprisingly, Highland offers no authority or rationale to explain why its refusal to sign constitutes unfair leverage by the Debtors or an absence of cause to extend exclusivity.

10.    To the extent that Highland or the Equity Committee adopt the assertion that the Debtors have pressured their creditors by unilaterally summoning parties to meetings or by agreeing to conduct framework discussions only after the STN Motion[5] was filed, such assertions are contrary to the facts.  The framework discussions were the result of a collaborative effort to find and implement a process to execute the Debtors' Transformation Plan.

11.    Shortly after adjournment of the 1113/1114 Motion in early June 2006, the Debtors and their advisors began to develop strategies to resolve labor issues and transformation issues related to GM.  In the week before the Creditors' Committee filed the STN Motion on July 28, 2006, the Debtors and Creditors' Committee discussed the need for a process to resolve the GM claims with the participation of all key parties.  On July 27, 2006, the Creditors' Committee reiterated its desire that the Debtors and their counsel take the initiative to lead the parties in resolving these issues.  At the end of that week, on July 28, 2006, the Debtors' advisors scheduled the meetings that resulted in the framework

---

[4]    Additionally, the Debtors object to Highland's disclosure of the contents of its negotiations with the Debtors over a confidentiality agreement.  Highland's public description of confidential negotiations further supports the Debtors' insistence on entry into a confidentiality agreement acceptable to the Debtors.

[5]    Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors, filed on July 28, 2006 (Docket No. 4718) (the "STN Motion").

discussions during the following week, from August 1-3, 2006.  Moreover, regardless of

what prompted the Debtors to schedule the framework discussions, the fact remains that

the Debtors decided to pursue the framework discussions, prepared for and arranged for

them to occur, and caused them to remain on track until their consummation in the form of

the consensual Framework Agreements.

12.      Rather than railroading their stakeholders into a predetermined

course of action, the Debtors and their professionals have consistently conferred with their

constituencies on all major matters in these cases, and have often incorporated other

positions in deference to the views of the Creditors' Committee, the Equity Committee, and

other stakeholders.  The Debtors continued this track record with respect to the Framework

Agreements, which were the result of five months of negotiations and incorporate many of

the statutory committees' comments or positions.  These are not the actions of a debtor

seeking to use exclusivity to pressure creditors into acceding to its demands.

(ii)      Highland Acknowledges Unresolved Contingencies

13.      Highland argues that existence of a single <u>McLean</u> factor—

"unresolved contingencies"—actually weighs against extending exclusivity.  The

contingencies inherent in completing the process contemplated by the Framework

Agreements, however, demonstrate the need for continued exclusivity.  An extension is

necessary to allow the Debtors to complete the potential reorganization made possible by

the Framework Agreements.  An extension would further allow the Debtors to make

progress with respect to any other approach that may be required as events continue to

develop.

14.    Nor do the contingencies represented by the pending objections to the Framework Motion militate against an extension.  As shown in the reply to those objections,[6] the commitment fees under the Framework Agreements are reasonable when compared to the related transaction and do not become payable until significant, meaningful milestones are achieved.  The remaining terms of the Framework Agreements also fall squarely within the Debtors' business judgment.  In any event, the test has never required that the contingencies be subject to a 100 percent chance of completion.  By its nature, a contingency involves a risk that something may or may not occur.

15.    What Highland obviously seeks is to pressure Delphi during its continuing evaluation of Highland's unsolicited proposal and to obtain the right to file its own plan of reorganization.  Highland, however, should not be permitted to substitute its own judgment for that of the Debtors as to how the Debtors respond to the Highland proposal.  Highland's objection also ignores the many risks, difficulties, distractions, potential loss of value, and significant costs that result when termination of exclusivity permits the filing of competing plans of reorganization.  These risks and costs are particularly unwarranted when, as here, the Debtors are working toward a plan proposal that would pay all creditors in full as contemplated in the Framework Agreements.

(iii)    The Other <u>McLean</u> Factors Are Not
       Contested

16.    Highland explicitly acknowledges that the Debtors have made significant progress toward reorganization during the past six months, as detailed in the

---

[6]    For a more comprehensive discussion of the Debtors' evaluation of the Highland proposal, <u>see</u> Debtors' Omnibus Reply To Objections To Plan Investment And Framework Support Approval Motion filed on January 10, 2007 (Docket No. 6531).

Motion and as is uncontested by the Equity Committee. And Highland does not dispute

that the Debtors' cases are complex or that the Debtors are timely paying their bills.  Thus,

Highland does not dispute three of the five <u>McLean</u> factors.

C.    <u>Exclusivity Should Be Extended For An Additional Six Months</u>

17.    As set forth in the Motion, the Debtors seek a six-month exclusivity

extension that is consistent with the timeframe contemplated by the Framework

Agreements and no greater than prior extensions granted by this Court.  The Creditors'

Committee now supports this relief, and Highland and the Equity Committee are silent as

to the proper length on any extension.  The fact that the Debtors now need to reach

agreements with certain unions and GM to implement the Framework Agreements only

highlights how important it is that exclusivity be extended for another six months.

D.    The Equity Committee's Statement Does Not
<u>Oppose The Debtors' Request For An Extension</u>

18.    The Equity Committee merely states the obvious and

uncontroversial proposition that the reorganization process should be fair and designed to

maximize value without favoring any one party.  Delphi is acting in accord with this

principle and is thoroughly evaluating the Highland proposal, as it would any proposal that

has the potential of supporting a successful reorganization.[7]  Delphi will continue that

process in accordance with its fiduciary duties.  Thus, the Equity Committee's Statement

should be viewed as supporting the relief requested in the Motion.

---

[7]    <u>See</u> <u>infra</u> note 6.

9

Conclusion

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) granting the Motion and (ii) granting the Debtors such other further relief as is

just.

  Dated:       New York, New York
              January 10, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

                        By:   /s/ John Wm. Butler, Jr.
                              John Wm. Butler, Jr. (JB 4711)
                              George N. Panagakis (GP 0770)
                              Ron E. Meisler (RM 3026)
                       333 West Wacker Drive, Suite 2100
                       Chicago, Illinois 60606
                       (312) 407-0700

                                - and -

                        By:   /s/ Kayalyn A. Marafioti
                              Kayalyn A. Marafioti (KM 9632)
                              Thomas J. Matz (TM 5986)
                       Four Times Square
                       New York, New York 10036
                       (212) 735-3000

                       Attorneys for Delphi Corporation, et al.,
                        Debtors and Debtors-in-Possession

10