Hearing Date and Time: February 15, 2007 at 10:00 a.m.
Response Date and Time: February 8, 2007 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
          In re                           :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                                          :     (Jointly Administered)
          Debtors.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SIXTH OMNIBUS OBJECTION (PROCEDURAL)
PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A)
DUPLICATE AND AMENDED CLAIMS AND (B) EQUITY CLAIMS

("SIXTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Sixth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And

Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims

(the "Sixth Omnibus Claims Objection"), and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On

October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an

official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an

official committee of equity holders.

3.    This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

2

B.    Current Business Operations Of The Debtors

5.    As of December 31, 2005, Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]    The aggregated financial data used in this objection generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.       Events Leading To The Chapter 11 Filing

        8.       In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.

        9.       The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

        10.       In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

        11.     On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

        12.     On December 18, 2006, the Debtors reached another milestone in their

chapter 11 cases when they announced their acceptance of a proposal for an equity purchase and

commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of

Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital

Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC

(collectively, the "Plan Investors").  Under the Equity Purchase and Commitment Agreement, the

Plan Investors agreed to invest up to $3.4 billion in preferred and common equity in the

reorganized Delphi to support the Debtors' transformation plan and its Plan Framework Support

5

Agreement (as defined below).  The Equity Purchase and Commitment Agreement is subject to

the completion of due diligence, satisfaction or waiver of numerous other conditions (including

Delphi's achievement of consensual agreements with its U.S. labor unions and GM), and the non-

exercise by either Delphi or the Plan Investors of certain termination rights.

13.    Also on December 18, 2006, in further support of its transformation plan,

the Company announced that it had entered into a plan framework support agreement (the "Plan

Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework

Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of

reorganization, including the distributions to be made to creditors and shareholders, the treatment

of GM's claims, the resolution of certain pension funding issues, and the corporate governance of

the reorganized Debtors.  The Plan Framework Support Agreement as well as the economics and

structure of the plan framework itself are expressly conditioned on the Debtors' reaching

consensual agreements with their U.S. labor unions and GM.  Contemporaneously with the

issuance of these announcements on December 18, 2006, the Debtors sought authorization and

approval of the Equity Purchase and Commitment Agreement and the Plan Framework Support

Agreement, which is scheduled to be heard by the Court on January 11, 2007 (Docket No. 6179).

Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and

their stakeholders are together navigating a course that should lead to a consensual resolution

with their U.S. labor unions and GM while providing an acceptable financial recovery

framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

E.       Bar Date, Proofs Of Claim, And Omnibus Claims Objections

15.      On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§

107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor

(collectively, the "Claimants") to file a proof of claim form with respect to each such Claim.

16.      On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with

this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,

2006) and (b) the persons and entities included in the notice database compiled by the Debtors,

but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date

Notices to more than 500,000 persons and entities.

17.      In addition, the Debtors published the Bar Date Notice in the <u>New York</u>

<u>Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions),

<u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions

of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo</u>

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

       18.     Approximately 16,000 proofs of claim (the "Proofs of Claim") were filed

against the Debtors in these cases.  To date, the Debtors have filed three omnibus claims

objections which objected to claims on procedural grounds[3] and two omnibus claims

objections which objected to claims on substantive grounds.[4]  Pursuant to such omnibus claims

objections, the Court has disallowed and expunged approximately 6,850 Proofs of Claim.

       19.     On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

---

[3]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006, the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006, and Debtors' Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006.

[4]    The Debtors filed their (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006 and their Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records (Docket No. 6100) on December 8, 2006.

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453) (the "Claims Objection Procedures Motion"), in which

the Debtors requested this Court, among other things, approve certain procedures for contested

claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i)

Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

20.    In this Sixth Omnibus Claims Objection, the Debtors are objecting to 74

proofs of claim.[5]

Relief Requested

21.    By this objection, the Debtors seek entry of an order pursuant to 11 U.S.C.

§ 502(b) and Bankruptcy Rule 3007 disallowing and expunging (a) those Claims set forth on

Exhibit A-1 attached hereto because they are duplicative of other Claims or have been amended

or superseded by later filed Claims, (b) those Claims set forth on Exhibit A-2 attached hereto

because they are duplicative of other Claims or have been amended or superseded by later filed

Claims, and are survived by two Claims, (c) those Claims set forth on Exhibit B-1 attached

hereto because they were filed by holders of Delphi common stock solely on account of their

stock holdings, and (d) those Claims set forth on Exhibit B-2 attached hereto because they were

---

[5]    Contemporaneously with this Sixth Omnibus Claims Objection, the Debtors are filing the Seventh Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims Not
Reflected On The Debtors' Books And Records (b) Claims Subject to Modification (the "Seventh Omnibus
Claims Objection").  In the Seventh Omnibus Claims Objection, the Debtors object to claims on substantive
grounds and are seeking to expunge and disallow claims that are liabilities or dollar amounts that are not
reflected on the Debtors' books and records and to modify certain claims.  The Debtors are objecting to 412
proofs of claim in the Seventh Omnibus Claims Objection.

filed by holders of Delphi common stock solely on account of their stock holdings and were untimely pursuant to the Bar Date Order.

A.    Duplicate And Amended Claims

22.    During the Debtors' review of the Proofs of Claim received to date, the Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact assert duplicate Claims (each, a "Duplicate Claim") for a single liability.  In some instances, Duplicate Claims arose when a claimant filed Proofs of Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation provided for those Proofs of Claim, and the Debtors' Schedules and Statements to make a determination as to which duplicate claim should be the surviving claim.

23.    Additionally, the Debtors determined that many Claims evidenced by Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by creditors with respect to the same liabilities.  For instance, many amended Proofs of Claim (the "Amended Proofs of Claim") were filed to amend an amount previously claimed in an earlier Proof of Claim (the "Original Proof of Claim").  Other Amended Proofs of Claim were filed to amend the classification of part or all of an earlier Original Proof of Claim.

24.    It is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original Proofs of Claim for which Amended Proofs of Claim were subsequently filed (collectively, the "Duplicate and Amended Claims").

25.    Set forth on Exhibit A-1 attached hereto is a list of Claims that the Debtors have identified as Duplicate and Amended Claims.  For each Duplicate and Amended Claim,

Exhibit A-1 classifies Proofs of Claim as either a Claim To Be Expunged (the "Expunged Claim") or as a Surviving Claim (the "Surviving Claim").[6]  Generally, the Surviving Claims reflect the classifications of the liabilities as reflected on the Debtors' Schedules.[7]  Set forth on Exhibit A-2 attached hereto is an additional list of Claims that the Debtors have identified as Duplicate and Amended Claims.  The Claims listed on Exhibit A-2 were amended to reflect either that the original Claim was partially transferred, leaving two different Claimants to split the original liability between the two Surviving Claims, or to differentiate the types and amounts of obligations allegedly owed by the Debtors.  Because of these amendments, each Expunged Claim listed on Exhibit A-2 has two Surviving Claims.  The Debtors request that the Claims marked as Expunged Claims on Exhibits A-1 and A-2 be disallowed and expunged.  With respect to the Claims on Exhibits A-1 and A-2 marked as Surviving Claims, the Debtors do not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibits A-1 and A-2, however, does not reflect any view by the Debtors as to the ultimate validity of any such Claim. The Debtors therefore expressly reserve all of their rights to further object to any or all of the

---

[6]    Certain of the Claims on Exhibit A are listed in the amount of $0.00.  This generally reflects the fact that the claim amount asserted by the Claimant is unliquidated.

[7]    As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors' Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

> Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has been consolidated for purposes of the Schedules and Statements and such consolidated financial information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of the books and records of the Catalyst Entities, claimants should not retain more than one claim for a single liability.  Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as obligations of another Debtor entity at a later date.

Surviving Claims at a later date on any basis whatsoever, except as expressly provided in paragraph 34 below.

26.    Accordingly, the Debtors (a) object to the Duplicate and Amended Claims and (b) seek entry of an order disallowing and expunging the Duplicate and Amended Claims in their entirety.

B.    Equity Claims

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact represent proofs of interest that were filed by or on behalf of persons or entities holding Delphi common stock (the "Equity Claims").  The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of Delphi common stock to ensure that holders of stock who desired to assert claims against any of the Debtors that were not based solely upon their ownership of Delphi common stock would be afforded the opportunity to file claims in these chapter 11 cases.

28.    The ownership of Delphi common stock constitutes an equity interest in Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section 101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was approved by this Court, creditors and equity holders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[8]

---

[8]    The Bar Date Order provides, in relevant part:

Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:

\*    \*    \*

(h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for

(cont'd)

29.     In addition, certain of the Equity Claims were received by the Debtors after the Bar Date ("Untimely Equity Claims").  With respect to those Untimely Equity Claims, the Debtors also object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.[9]

30.     Attached hereto as Exhibit B-1 is an Equity Claim that the Debtors have identified as representing solely a proof of interest.  The Debtors therefore seek to have this claim reclassified from a Claim to an interest and be disallowed and expunged.  To the extent that the entity that filed the Equity Claim listed on Exhibit B-1 holds a valid equity interest in Delphi as of the applicable record date, the requested reclassification of the Proof of Claim and disallowance of the Claim will not impair any entitlements the Claimant may ultimately have under a plan of reorganization with respect to such equity interest.  Attached hereto as Exhibit B-2 is a list of Untimely Equity Claims which the Debtors have identified as representing solely proofs of interest and which were not timely filed pursuant to the Bar Date Order.[10]  The Debtors

_____

*(cont'd from previous page)*

damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

[9]     The Bar Date Order provides:

Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

[10]     None of the Untimely Equity Claims listed on Exhibit B-2 hereto was included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238).

therefore seek to have these Untimely Equity Claims reclassified from Claims to interests and

disallowed and expunged as untimely.

31.      Accordingly, the Debtors (a) object to the Equity Claim, (b) object to the

Untimely Equity Claims, and (c) seek entry of an order disallowing and expunging the Equity

Claim and Untimely Equity Claims in their entirety.

## Separate Contested Matters

32.      Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Sixth Omnibus Claims Objection, each

such Claim and the objection to such Claim asserted in this Sixth Omnibus Claims Objection

will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule

9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with

respect to an objection asserted in this Sixth Omnibus Claims Objection will be deemed a

separate order with respect to each Claim.

## Reservation Of Rights

33.      The Debtors expressly reserve the right to amend, modify, or supplement

this Sixth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or

any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more

of the grounds for objection stated in this Sixth Omnibus Claims Objection be dismissed, the

Debtors reserve their rights to object on other stated grounds or on any other grounds that the

Debtors discover during the pendency of these cases.

34.      Notwithstanding the foregoing, solely to the extent that (a) a claimant filed

duplicative claims against different Debtors for the same asserted obligation (the "Multiple

Debtor Duplicative Claims") and (b) the Debtors are seeking to have certain of such claimant's

Multiple Debtor Duplicative Claims disallowed and expunged hereby, the Debtors would not

seek to have the claimant's remaining Multiple Debtor Duplicative Claim (the "Remaining

Claim") disallowed and expunged solely on the basis that such Remaining Claim is asserted

against the incorrect Debtor, provided that one of the Multiple Debtor Duplicative Claims was

originally filed against the correct Debtor.  For the avoidance of doubt, except as expressly

provided in the preceding sentence, the Remaining Claims would remain subject to further

objection on any grounds whatsoever, including, without limitation, that any such Remaining

Claim is asserted against the incorrect Debtor if the claimant did not file a Multiple Debtor

Duplicative Claim against the correct Debtor.  Furthermore, the Debtors reserve the right to

object to any Remaining Claim and any holder of a Remaining Claim may seek relief from this

Court for the purposes of requesting that this Court modify the Debtor or Debtors against which

such Remaining Claim is asserted.

Responses To Objections

35.     Responses to the Sixth Omnibus Claims Objection are governed by the

provisions of the Claims Objection Procedures Order.  The following summarizes the provisions

of that Order, but are qualified in all respects by the express terms thereof.

A.     Filing And Service Of Responses

36.     To contest an objection, responses (a "Response"), if any, to the Sixth

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

15

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Randall G. Reese) in each case so as to be received no later than 4:00 p.m.

(prevailing Eastern time) on February 8, 2007.

B.    Contents Of Responses

37.    Every Response to this Sixth Omnibus Claims Objection must contain at a

minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the proof of claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant shall disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim subject to appropriate confidentiality constraints;

(e)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

C.    Timely Response Required

38.    If a Response is properly and timely filed and served in accordance with

the above procedures, the hearing on the relevant Claims covered by the Response will be

16

adjourned to a future claims hearing.  With respect to all uncontested objections, the Debtors

request this Court conduct a final hearing on February 15, 2007 at 10:00 a.m.

        39.    <u>Only those Responses made in writing and timely filed and received will</u>

<u>be considered by the Court.  If a Claimant whose proof of claim is subject to the Sixth Omnibus</u>

<u>Claims Objection and who is served with the Sixth Omnibus Claims Objection fails to file and</u>

<u>serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors</u>

<u>may present to the Court an appropriate order seeking relief with respect to such claim consistent</u>

<u>with the relief sought in the Sixth Omnibus Claims Objection without further notice to the</u>

<u>Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the</u>

<u>entry of such order as provided in the Claims Objection Procedures Order, provided further,</u>

<u>however, that if the Claimant files a timely Response which does not include the required</u>

<u>minimum information required by the Claims Objection Procedures Order, the Debtors will seek</u>

<u>disallowance and expungement of the relevant claim or claims only in accordance with the</u>

<u>Claims Hearing Procedures Order.</u>

Replies To Responses

        40.    Replies to any Responses shall be governed by the Claims Objection

Procedures Order.

Service Of Sixth Omnibus Claims Objection Order

        41.    Service of any order with regard to this Sixth Omnibus Claims Objection

will be made in accordance with the Claims Objection Procedures Order.

Further Information

        42.    Questions about this Sixth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

17

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-259-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

43.     Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418)

and the Claims Objection Procedures Order.

44.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Sixth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection, as well as a copy of the Claims Objection Procedures Order.  A form of Notice Of

Objection To Claim is attached hereto as Exhibit D.  Claimants will receive a copy of this Sixth

Omnibus Claims Objection without Exhibits A-1, A-2, B-1, or B-2, hereto.  Claimants will

nonetheless be able to review Exhibits A-1, A-2, B-1, and B-2 hereto free of charge by accessing

the Debtors' Legal Information Website (www.delphidocket.com).  In light of the nature of the

relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

45.     Because the legal points and authorities upon which this objection relies
are incorporated herein, the Debtors respectfully request that the requirement of the service and
filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy
Rules for the United States Bankruptcy Court for the Southern District of New York be deemed
satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:          New York, New York
                January 12, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP


                              By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                    - and -


                              By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

20