Hearing Date and Time: February 15, 2007 at 10:00 a.m.
Response Date and Time: February 8, 2007 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
　　Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　In re　　　　　　　　　　　　　　　　:　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　:
DELPHI CORPORATION, et al.,　　　　　:　Case No. 05-44481 (RDD)
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:　(Jointly Administered)
　　　　　　　　　　Debtors.　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE)
PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A)
INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON
DEBTORS' BOOKS AND RECORDS, AND (C) UNTIMELY CLAIMS

("SEVENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not

Reflected On Debtors' Books And Records, And (C) Untimely Claims (the "Seventh Omnibus

Claims Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy

Code"). The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This

Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases. On

October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an

official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an

official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 502(b)

of the Bankruptcy Code and rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

        5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global

assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the

fifth largest public company business reorganization in terms of revenues, and the thirteenth

largest public company business reorganization in terms of assets.  Delphi's non-U.S.

subsidiaries are not chapter 11 debtors and continue their business operations without

supervision from the Bankruptcy Court.

        6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems

and modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

        7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted

the Company's business through various divisions and subsidiaries.  Effective January 1, 1999,

the assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
        and its worldwide subsidiaries and affiliates.

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of

creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for

domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually

in the United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors reached another milestone in their chapter 11 cases when they announced their acceptance of a proposal for an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment Agreement, the Plan Investors agreed to invest up to $3.4 billion in preferred and common equity in the

5

reorganized Delphi to support the Debtors' transformation plan and its Plan Framework Support

Agreement (as defined below).  The Equity Purchase and Commitment Agreement is subject to

the completion of due diligence, satisfaction or waiver of numerous other conditions (including

Delphi's achievement of consensual agreements with its U.S. labor unions and GM), and the

non-exercise by either Delphi or the Plan Investors of certain termination rights.

13.    Also on December 18, 2006, in further support of its transformation plan,

the Company announced that it had entered into a plan framework support agreement (the "Plan

Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework

Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of

reorganization, including the distributions to be made to creditors and shareholders, the

treatment of GM's claims, the resolution of certain pension funding issues, and the corporate

governance of the reorganized Debtors.  The Plan Framework Support Agreement as well as

the economics and structure of the plan framework itself are expressly conditioned on the

Debtors' reaching consensual agreements with their U.S. labor unions and GM.

Contemporaneously with the issuance of these announcements on December 18, 2006, the

Debtors sought authorization and approval of the Equity Purchase and Commitment Agreement

and the Plan Framework Support Agreement, which was heard by the Court on January 11,

2007 (Docket No. 6179).  Although much remains to be accomplished in the Debtors'

reorganization cases, the Debtors and their stakeholders are together navigating a course that

should lead to a consensual resolution with their U.S. labor unions and GM while providing an

acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

6

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

D.      Bar Date, Proofs Of Claim, And Omnibus Claims Objections

        15.      On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§

107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of

Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date

Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities

holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a

Debtor (collectively, the "Claimants") to file a proof of claim form with respect to each such

Claim.

        16.      On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with

this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,

2006) and (b) the persons and entities included in the notice database compiled by the Debtors,

but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date

Notices to more than 500,000 persons and entities.

        17.      In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

7

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and the Vindicator, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,000 proofs of claim (the "Proofs of Claim") were filed against the Debtors in these cases.  To date, the Debtors have filed three omnibus claims objections which objected to claims on procedural grounds[3] and two omnibus claims objection which objected to claims on substantive grounds.[4]  Pursuant to such omnibus claims objections, the Court has disallowed and expunged approximately 6,850 Proofs of Claim, and there are

---

[3]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006, the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006, and the Fourth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006.

[4]    The Debtors filed their (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006 and their Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records (Docket No. 6100) on December 8, 2006.

approximately 950 additional Proofs of Claim that are pending disallowance and expungement

upon entry of orders with respect to the Fourth Omnibus Claims Objection and the Fifth

Omnibus Claims Objection consistent with the record of the hearing held on January 12, 2007.

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of

Claims And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance

Or Estimation Of Claims (Docket No. 5453) (the "Claims Objection Procedures Motion"), in

which the Debtors requested this Court, among other things, approve certain procedures for

contested claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection

Procedures Order").

20.    In this Seventh Omnibus Claims Objection, the Debtors are objecting to

412 proofs of claim.[5]

<u>Relief Requested</u>

21.    By this objection, the Debtors seek entry of an order pursuant to 11 U.S.C.

§ 502(b) and Bankruptcy Rule 3007 (a) disallowing and expunging those Claims set forth on

---

[5]    Contemporaneously with the Seventh Omnibus Claims Objection, the Debtors are filing the Sixth Omnibus
Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Duplicate
And Amended Claim And (b) Equity Claims (the "Sixth Omnibus Claims Objection").  In the Sixth Omnibus
Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow
(a) certain Claims that are duplicative of other Claims or have been amended or superseded by later filed Claims
and (b) certain Claims because they were filed by equity holders solely on account of their stock holdings.  The
Debtors are objecting to 74 proofs of claim in the Sixth Omnibus Claims Objection.

Exhibit A-1 attached hereto because they contain insufficient documentation in support of the Claims asserted, (b) disallowing and expunging those Claims set forth on Exhibit A-2 attached hereto because they contain insufficient documentation in support of the Claims asserted and were untimely pursuant to the Bar Date Order, (c) disallowing and expunging those Claims set forth on Exhibit B-1 attached hereto because they are liabilities or dollar amounts that are not reflected on the Debtors' books and records, (d) disallowing and expunging those Claims set forth on Exhibit B-2 attached hereto because they are liabilities or dollar amounts that are not reflected on the Debtors' books and records and were untimely pursuant to the Bar Date Order, and (e) disallowing and expunging those Claims set forth on Exhibit C attached hereto because they were untimely pursuant to the Bar Date Order.

Objections To Claims

A.      Insufficiently Documented Claims

22.      During their review, the Debtors discovered that certain Proofs of Claim that were filed in these cases do not include sufficient documentation to support the claim asserted (the "Insufficiently Documented Claims").  This deficiency in documentation has made it impossible for the Debtors meaningfully to review the asserted Claims.  To enhance the review process, the Debtors contacted each Claimant which filed an Insufficiently Documented Claim (other than those Claimants who filed a blank proof of claim form).[6]

23.      The burden of proof to establish a claim against an estate rests on the claimant.  If a proof of claim does not include sufficient factual support, the proof of claim is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) .  In

---

[6]    Claims who responded to the Debtors' communications and provided additional information are not included as part of this objection.

re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005)

(only claims alleging facts sufficient to support legal liability to claimant satisfies claimant's

initial obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954

F.2d 167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts

sufficient to support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006)

(claimant bears initial burden of sufficiently alleging claim and establishing facts to support

legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2

(Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its

proof of claim is it entitled to have claim considered prima facie valid); In re United Cos. Fin.

Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to

support legal basis for its claim to have claim make prima facie case).  As a result of the

Claimants' failure to provide sufficient documentation to permit an understanding of the basis

for the Insufficiently Documented Claims, such Claims do not make out a prima facie case

against the Debtors.

        24.    The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim

against the Debtors, and/or (d) contain no supporting documentation or provide no evidence of

the Debtors' liability for the Claim.  In addition, certain of the Insufficiently Documented

Claims were received by the Debtors after the Bar Date (the "Untimely Insufficiently

Documented Claims").  With respect to the Untimely Insufficiently Documented Claims, the

Debtors also object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.[7]

25.    Attached hereto as <u>Exhibit A-1</u> is a list of the Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the claim.  Attached hereto as <u>Exhibit A-2</u> is a list of Untimely Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the claim and that were not timely filed pursuant to the Bar Date Order.[8]  In the event that this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Insufficiently Documented Claims and Untimely Insufficiently Documented Claims at a later date on any basis whatsoever.

26.    Accordingly, the Debtors (a) object to both the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claims and (b) seek entry of an order disallowing and expunging the Insufficiently Documented Claims and Untimely Insufficiently Documented Claims in their entirety.

---

[7]    The Bar Date Order provides:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

[8]    None of the Untimely Insufficiently Documented Claims listed on <u>Exhibit A-2</u> hereto was included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

B.      Claims Not Reflected On The Debtors' Books And Records

27.      During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books and Records Claims").  In addition, the Debtors determined that certain other Proofs of Claim also assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and that were not timely filed pursuant to the Bar Date Order (the "Untimely Books and Records Claims").  The Debtors believe that the parties asserting both Books and Records Claims and Untimely Books and Records Claims are not creditors of the Debtors.

28.      The bases for determining that the Debtors are not liable for an asserted Books and Records Claim include, but are not limited to, the following: (a) the Debtors' books and records do not reflect the existence of the asserted Books and Records Claim or of the Claimant asserting such Claim, (b) the Debtors' books and records reflect that the Books and Records Claim has been paid pursuant to a prior order of this Court, (c) the Debtors' books and records reflect that the Claimant has signed a release and/or waiver stating that the Debtors are not liable to the Claimant for such Claim, (d) the Debtors' books and records reflect that the asserted Books and Records Claim was properly paid prior to the commencement of the Debtors' cases, and (e) the Books and Records Claim constitutes a postpetition liability that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

29.      A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"

Id.  The Debtors' books and records refute an essential allegation as to each of the Books and Records Claims, namely, that the claims asserted therein are owed by any of the Debtors.

30.  Attached hereto as Exhibit B-1 is a list of the Books and Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto as Exhibit B-2 is a list of the Untimely Books and Records Claims which the Debtors have also identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely Books and Records Claims not only because the Debtors have no liability in respect thereof, but also because the Claims were not timely filed pursuant to the Bar Date Order.  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books and Records Claims and the Untimely Books and Records Claims at a later date on any basis whatsoever.

31.  Accordingly, the Debtors (a) object to both the Books and Records Claims and the Untimely Books and Records Claims and (b) seek entry of an order disallowing and expunging both the Books and Records Claims and the Untimely Books and Records Claims in their entirety.

C.  Untimely Claims

32.  During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim filed against the Debtors were received by the Debtors after the Bar Date ("Untimely Claims").  With respect to the Untimely Claims, the Debtors object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.

33.     Attached hereto as <u>Exhibit C</u> is a list of Untimely Claims.  The Debtors seek to have such Untimely Claims disallowed and expunged as Claims that were not timely filed pursuant to the Bar Date Order.[9]

### Separate Contested Matters

34.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Seventh Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Seventh Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Seventh Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

### Reservation Of Rights

35.     The Debtors expressly reserve the right to amend, modify, or supplement this Seventh Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more of the grounds for objection stated in this Seventh Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

---

[9]     None of the Untimely Claims listed on <u>Exhibit C</u> hereto was included as part of the Claims Timeliness Motion.

Responses To Objections

36.     Responses to the Seventh Omnibus Claims Objection are governed by the

provisions of the Claims Objection Procedures Order.  The following summarizes the

provisions of that Order, but are qualified in all respects by the express terms thereof.

A.    Filing And Service Of Responses

37.     To contest an objection, responses (a "Response"), if any, to the Seventh

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case

filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-

based word processing format), (d) be submitted in hard copy form directly to the chambers of

the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy

Court for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:

John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese) in each case so as to be received

no later than 4:00 p.m. (Prevailing Eastern Time) on February 8, 2007.

B.    Contents Of Responses

38.     Every Response to this Seventh Omnibus Claims Objection must contain

at a minimum the following:

(a)     the title of the claims objection to which the Response is directed;

16

(b)      the name of the Claimant and a brief description of the basis for the amount of the Claim;

(c)      a concise statement setting forth the reasons why the Claim should not be disallowed and expunged expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)      unless already set forth in the proof of claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant shall disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim subject to appropriate confidentiality constraints;

(e)      to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)      the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

C.      Timely Response Required

39.      If a Response is properly and timely filed and served in accordance with the procedures described above, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which shall be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request this Court conduct a final hearing on February 15, 2007 at 10:00 a.m.  The procedures set forth in the Claims Objection Procedures Motion will apply to all Responses and hearings arising from this Seventh Omnibus Claims Objection.

40.      Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose proof of claim is subject to the Seventh Omnibus Claims Objection and who is served with the Seventh Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures

17

Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the Seventh Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order, provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors will seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures Order.

41.     To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to provisionally accept the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

42.     Replies to any Responses are to be governed by the Claims Objection Procedures Order.

18

Service Of Seventh Omnibus Claims Objection Order

43.    Service of any order with regard to this Seventh Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

44.    Questions about this Seventh Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed

to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or

in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-259-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

45.    Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr.

P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice,

Case Management, And Administrative Procedures, entered on October 26, 2006 (Docket No.

5418) and the Claims Objection Procedures Order.

46.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Seventh

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of

19

Notice Of Objection To Claim is attached hereto as <u>Exhibit D</u>.  Claimants will receive a copy of this Seventh Omnibus Claims Objection without <u>Exhibits</u> <u>A-1</u>, <u>A-2</u>, <u>B-1</u>, <u>B-2,</u> or <u>C</u> hereto. Claimants will nonetheless be able to review such exhibits free of charge by accessing the Debtors' Legal Information Website (<u>www.delphidocket.com</u>).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

47.     Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)
granting the relief requested herein and (b) granting the Debtors such other and further relief as is
just.

Dated:          New York, New York
                January 12, 2007
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                       & FLOM LLP

                                    By:   /s/ John Wm. Butler, Jr.
                                        John Wm. Butler, Jr. (JB 4711)
                                        John K. Lyons (JL 9331)
                                        Ron E. Meisler (RM 3026)
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606

                                        - and -

                                    By:   /s/ Kayalyn A. Marafioti
                                        Kayalyn A. Marafioti (KM 9632)
                                        Thomas J. Matz (TM 5986)
                                    Four Times Square
                                    New York, New York 10036

                                    Attorneys for Delphi Corporation, et al.,
                                        Debtors and Debtors-in-Possession

21