# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| Delphi Corporation, et al. | ) ) | Case No. 05-44481 (RDD) |
| Debtors. | ) ) ) | (Jointly Administered) |

### ORDER AUTHORIZING AND APPROVING THE EQUITY PURCHASE AND COMMITMENT AGREEMENT PURSUANT TO SECTIONS 105(a), 363(b), 503(b) AND 507(a) OF THE BANKRUPTCY CODE AND THE PLAN FRAMEWORK SUPPORT AGREEMENT PURSUANT TO SECTIONS 105(a), 363(b), AND 1125(e) OF THE BANKRUPTCY CODE

Upon the motion (the "Motion")[1], dated December 18, 2006, of Delphi Corporation ("Delphi") and certain of its domestic subsidiaries and affiliates, debtors and debtor-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), for an order authorizing and approving the entry into the Equity Purchase and Commitment Agreement, the Supplement to the Equity Purchase and Commitment Agreement (together with the Equity Purchase and Commitment Agreement, the "EPCA"), and associated Investment Proposal Letter (the "Proposal Letter") and Commitment Letters (the "Commitment Letters", and together with the Proposal Letter and EPCA, the "Investment Agreements"),[2] as the same may have been modified through the date of the Hearing (defined below), pursuant to sections 105(a), 363(b), 503(b) and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and the Plan Framework Support Agreement and the Amendment and Supplement to the Plan Framework Support

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2]  The Investment Agreements are attached to this Order as Exhibit 1.

Agreement (collectively, the "Plan Framework Support Agreement")[3] pursuant to sections 105(a), 363(b) and 1125(e) of the Bankruptcy Code; the Court having reviewed the Motion, having heard the statements of counsel and the evidence presented regarding the relief requested in the Motion at a hearing before the Court on January 11 and 12, 2007 (the "Hearing") and having issued its bench ruling at the conclusion of the Hearing; due and appropriate notice of the Motion under the circumstances having been made, and notice of the Hearing having been served on the Debtors and their counsel, the Office of the United States Trustee, the members of and counsel for the official committee of unsecured creditors (the "Creditors' Committee"), the members of and counsel for the official committee of equity security holders (the "Equity Committee"), counsel for the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors' postpetition credit facility, those parties on the Debtors' Master Service List, such other parties requesting service of notice under Bankruptcy Rule 2002 and otherwise in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. Sections 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (Docket No. 5418), and sufficient cause appearing therefor; now, therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[4]

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, the Motion, this Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

---

[3]    The Plan Framework Support Agreement is attached to this Order as Exhibit 2.

[4]    This Order constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

predicates for the relief requested herein are Sections 105(a), 363(b), 503(b), 507(a) and 1125(e) of the Bankruptcy Code.

2.   *Notice*.   The notice given by the Debtors of the Motion and the Hearing constitutes proper, timely, adequate and sufficient notice thereof and complies with the Bankruptcy Code, the Bankruptcy Rules and applicable local rules, and no further or other notice is necessary.

3.   *Findings.*

(a)   On October 8 and October 14, 2005, the Debtors commenced the Chapter 11 Cases for the purpose of restructuring their businesses and related financial obligations pursuant to an overall transformation strategy (the "Transformation Plan") that would incorporate the following structural components:

(i)   Modification of the Debtors' labor agreements;

(ii)   Resolution of all issues and disputes between the Debtors and General Motors Corporation ("GM") and its subsidiaries and affiliates regarding (A) certain legacy obligations, including allocating responsibility for various pension and other post-employment benefit obligations; (B) all alleged claims and causes of action arising from the spin-off of Delphi from GM; (C) costs associated with the transformation of the Debtors' business (including the establishment of support to be provided by GM in connection with certain of those businesses that the Debtors intend to shut-down or otherwise dispose of); (D) the restructuring of ongoing contractual relationships with respect to continuing operations; and (E) the amount and treatment of GM's claims in the Chapter 11 Cases (together, the "Designated Issues");

3

(iii) Development of a strategically focused product portfolio and realignment of production capacity to support it;

(iv) Transformation of the Debtors' work force in keeping with a sustainable cost structure and streamlined product portfolio;

(v) Resolution of the Debtors' pension issues; and

(vi) Restructuring of the Debtors' balance sheet to accommodate the transformed business.

(b) The Debtors continue to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases. Pursuant to an Order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

(c) Pursuant to its authority under section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York appointed the Creditors' Committee and the Equity Committee in the Chapter 11 Cases.

(d) In the summer of 2006, Appaloosa Management L.P. ("Appaloosa") and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), as significant stakeholders of the Debtors, negotiated and entered into non-disclosure agreements with the Debtors pursuant to which they obtained certain information from and about the Debtors and their businesses and engaged in discussions regarding various potential reorganization structures and related matters, including the potential requirement for a substantial equity investment in Delphi to facilitate the Debtors' restructuring.

4

(e) Separately, the Debtors conducted negotiations with other potential investors, including Cerberus Capital Management, L.P. ("Cerberus").

(f) At the Debtors' request, Appaloosa, Harbinger and Cerberus engaged in discussions regarding their respective views of the Transformation Plan, the terms of a potential investment in Delphi and the general terms of various potential restructuring strategies for the Debtors.

(g) The foregoing discussions led to an agreement on the Plan Framework Support Agreement, which sets forth the proposed terms in respect of a chapter 11 plan (the "Plan") for the Debtors that would include, *inter alia*, (i) the implementation of the Transformation Plan, including a settlement of the Designated Issues, and (ii) a proposed equity investment by certain affiliates of Appaloosa, Harbinger, and Cerberus, and by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill"), and UBS Securities LLC ("UBS", and together with Merrill and certain affiliates of Appaloosa, Harbinger, Cerberus, the "Investors") in Delphi (the "Investment").

(h) Subject to the terms of the Plan Framework Support Agreement, the parties thereto have agreed to work together to attempt to complete the negotiation of the terms of the Plan, as well as to resolve other outstanding issues, and to formulate and facilitate confirmation and consummation of the Plan and the transactions contemplated by the Plan Framework Support Agreement; provided, however, that Delphi will be the sole proponent of the Plan.

(i) The Investment, which would be an integral component of the Plan, would be made pursuant to the Investment Agreements, which set forth the terms and conditions under which the Investors would (i) purchase any unsubscribed shares issued under a

5

rights offering of new common stock of Delphi to be issued pursuant to the Plan (as defined in the Plan Framework Support Agreement), and (ii) purchase newly issued shares of common stock and preferred stock of Delphi.

(j)    In connection with the EPCA, Appaloosa, Harbinger and Cerberus (collectively, the "Commitment Parties" and together with the Investors, the "Plan Investors") will provide the Commitment Letters to the Investors and Delphi, whereby each Commitment Party will provide funding to the Investors, under the terms and subject to the limitations set forth in the Commitment Letters.

(k)    The Plan Framework Support Agreement and the Investment Agreements, all of which are incorporated herein, are fair and equitable to all parties.

(l)    The Debtors' decision to enter into the Plan Framework Support Agreement and the Investment Agreements is a sound exercise of their business judgment, is consistent with their fiduciary duties and is based on good, sufficient and sound business purposes and justifications.

(m)    The Plan Framework Support Agreement and the Investment Agreements were negotiated at arms' length and in good faith.

(n)    The Plan Framework Support Agreement and the Investment Agreements are fair, reasonable, and in the best interests of the Debtors, their estates, shareholders, creditors and all parties-in-interest.

(o)    The entry into the Plan Framework Support Agreement by the parties thereto, and the performance and fulfillment of their obligations thereunder, does not violate any law, including the Bankruptcy Code, and does not give rise to any claim or remedy against any of the parties including, without limitation, the designation of the

vote of GM or any Plan Investor or any affiliate of any Plan Investor under Section 1125(e) of the Bankruptcy Code on account of entering into the Plan Framework Support Agreement and the performance and fulfillment of their obligations thereunder. Notwithstanding anything contained herein, except with respect to claims, causes of action, or application of remedies (including the designation of the votes of GM and any of the Plan Investors or any affiliate of any Plan Investor) against any of the parties to the Plan Framework Support Agreement on account of entering into the Plan Framework Support Agreement, or performing or fulfilling their obligations thereunder, nothing contained herein shall limit the rights of any party to raise any issue or objection which could otherwise have been raised at a disclosure statement or confirmation hearing.

(p)     The provisions in the EPCA for the payment of the indemnities provided in Section 10 of the EPCA (the "<u>Indemnity</u>"), the Transaction Expenses, the Commitment Fees and the Alternate Transaction Fee (each as defined in the EPCA) are integral parts of the transactions contemplated by the EPCA and without any one of these provisions, the Plan Investors would not enter into the Investment Agreements.

(q)     The incurrence of the Indemnity, the Transaction Expenses, the Commitment Fees, the Alternate Transaction Fee and any damage claims ("Damage Claims") that may arise against the Debtors pursuant to the terms of the EPCA shall be deemed to have been incurred in good faith, as such term is used in Section 363(m) of the Bankruptcy Code, and the priorities extended to the Plan Investors pursuant to this Order (as described below) shall be entitled to all of the protections provided herein or otherwise contemplated hereby.

7

(r) The relief requested in the Motion, as modified on the record of the Hearing, is in the best interests of the Debtors, their estates, shareholders, creditors and all parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion, as modified on the record of the Hearing, is GRANTED in its entirety.

2. Any objection to the Motion not withdrawn or otherwise resolved as set forth in this Order is hereby overruled.

3. Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors and the Plan Investors are hereby authorized, but not directed, to execute, deliver and implement the Plan Framework Support Agreement and all exhibits and attachments thereto, and to take any and all actions necessary and proper to implement the terms of the Plan Framework Support Agreement, and such agreements and documents shall be binding and enforceable against the Debtors and their estates and the other parties thereto in accordance with their terms and subject to the conditions therein.

4. The entry into the Plan Framework Support Agreement by the parties thereto, and the performance and fulfillment of their obligations thereunder, does not violate any law, including the Bankruptcy Code, and may not give rise to any claim or remedy against any of the parties thereto including, without limitation, the designation of the vote of GM or any Plan Investor or any affiliate of any Plan Investor under Section 1125(e) of the Bankruptcy Code on account of entering into the Plan Framework Support Agreement and the performance and fulfillment of their obligations thereunder. Notwithstanding anything contained herein, except with respect to claims, causes of action, or application of remedies (including the designation of

8

the votes of GM and any of the Plan Investors or any affiliate of any Plan Investor) against any of the parties to the Plan Framework Support Agreement on account of entering into the Plan Framework Support Agreement, or performing or fulfilling their obligations thereunder, nothing contained herein shall limit the rights of any party to raise any issue which could otherwise have been raised at a disclosure statement or confirmation hearing.

5. Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code, the Debtors and the applicable Plan Investors are hereby authorized, but not directed, to execute, deliver and implement the Investment Agreements and all exhibits and attachments thereto, and to take any and all actions necessary and proper to implement the terms of the Investment Agreements, and such agreements and documents shall be binding and enforceable against the Debtors, their estates, and the other parties thereto in accordance with their terms and subject to the conditions therein.

6. The Debtors are authorized to pay the Indemnity (if applicable), the Transaction Expenses, the Commitment Fees, the Alternate Transaction Fee (if applicable) and any Damage Claim (if applicable, and to the extent allowed), each in accordance with its terms and as and when required by the Investment Agreements, except as otherwise provided below, without further Order of the Court. The Debtors are authorized to make all other payments to or for the benefit of the Plan Investors as and when required by the Investment Agreements and any exhibit, schedule or attachment thereto, on the terms set forth therein, without further Order of the Court. Any such payments shall be fully earned when paid, non-refundable and not subject to avoidance or disgorgement under any theory at law or in equity; <u>provided</u> <u>however</u>, that notwithstanding the forgoing, so long as the Creditors' Committee shall support the Investment Agreements and the Plan Framework Support Agreement and the transactions contemplated

9

thereby, the Plan Investors shall provide to the Creditors' Committee an itemization of any Transaction Expenses for which payment is being sought, together with appropriate back-up therefore, and 90% of such Transaction Expenses shall be paid in accordance with the terms of the Investment Agreement as and when required thereby without further Order of the Court, with the remaining 10% (the "Holdback") to be paid ten days subsequent to the delivery of such itemization and backup to the Creditors' Committee, unless prior to the expiration of such ten day period, the Creditors' Committee objects to any of the amounts submitted for payment, in which case an amount equal to the amount of Transaction Expenses objected to (up to the maximum amount of the Holdback) shall be retained and not paid to the Investors pending resolution of the dispute with the Creditors' Committee or further order of the Court, and subject further to the U.S. Trustee's review, as set forth on the record of the Hearing.

7. Each of the Indemnity (if applicable), the Transaction Expenses (to the extent payable pursuant to the preceding paragraph), the Commitment Fees, the Alternate Transaction Fee (if applicable) and any Damage Claim against the Debtors (if applicable) provided for or permitted by the Investment Agreements shall constitute allowed claims pursuant to Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be paid as and when provided for in the Investment Agreements without further application to or order of the Bankruptcy Court except that (i) in the case of any Damage Claim against the Debtors provided for or permitted by the Investment Agreements, such Damage Claim shall be allowed in the amount determined by the Bankruptcy Court after notice and a hearing, (ii) in the case of any Indemnity claim against the Debtors provided for or permitted by the Investment Agreements, such claim shall be resolved in a manner pursuant to the Investment Agreement with any disputes to be resolved by the Bankruptcy Court, and (iii) the Transaction Expenses incurred by ADAH or its affiliates on

or prior to May 17, 2006 (see EPCA § 2(j)(i)), as set forth on the record of the hearing. In addition, to the extent permitted under any order authorizing the Debtors to obtain post-petition financing and/or to utilize cash collateral then or thereafter in effect (each a "Financing Order") the Transaction Expenses incurred from and after the date of entry of this Order shall be protected by and entitled to the benefits of the carve-out for professionals as provided in any such Financing Order.

8. If the Committee of Delphi Trade Claim Holders has not subsequently withdrawn, qualified or modified in a manner adverse to the Investors (or resolved to do any of the foregoing) its support for the entry of this Order, the implementation of the Investment Agreements, the Plan Framework Support Agreement, or any of the transactions contemplated by the Investment Agreements and the Plan Framework Support Agreement (as such exists as of the date hereof), the Plan Investors, the Debtors, and the Creditors' Committee shall not oppose any application by the Committee of Delphi Trade Claim Holders for the payment of fees and expenses of their professionals pursuant to Section 503(b) of the Bankruptcy Code provided that the Plan Investors, the Creditors' Committee and the Debtors may oppose the reimbursement of fees and expenses in excess of $750,000.

9. This Order is a final and non-interlocutory order and is immediately subject to appeal pursuant to 28 U.S.C. Section 158(a).

10. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

11. The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:   January 12, 2007

11

New York, New York

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE