**Hearing Date:  April 13, 2007**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
      In re                     :     Chapter 11
                                 :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                 :
                  Debtors.     :     (Jointly Administered)
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' OMNIBUS STATEMENT OF DISPUTED ISSUES WITH RESPECT TO PROOFS OF CLAIM NUMBERS 2237, 2238, AND 14762 (ROBERT BACKIE, H.E. SERVICES COMPANY AND RICHARD JANES)

### ("STATEMENT OF DISPUTED ISSUES – H.E. SERVICES, ET AL.")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Omnibus Statement Of Disputed Issues (the "Statement Of Disputed Issues") With Respect To Proofs Of Claim Numbers 2237, 2238, and 14762 (the "Proofs Of Claim") filed by H.E. Services Company ("H.E. Services"), Robert Backie ("Backie"), and Richard Janes ("Janes" and, collectively with H.E. Services and Backie, the "Claimants") and respectfully represent as follows:

<u>Background</u>

1.      H.E. Services and Backie each filed a proof of claim on or about March 9, 2006, and Janes filed a proof of claim on July 31, 2006.  H.E. Services' proof of claim asserts an unsecured nonpriority claim in excess of $30 million for "civil rights and Constitutional violations" and related contract- and fraud-based claims (the "H.E. Services Claim").  Backie's proof of claim asserts an unsecured nonpriority claim in excess of $30 million based on the same underlying allegations (the "Backie Claim").  Janes' proof of claim asserts an unsecured nonpriority claim for $6 million for "damages due to breach of contract, <u>prima facie</u> tort, misrepresentation, and other claims" (the "Janes Claim" and collectively with the H.E. Services Claim and the Backie Claim, the "Claims").

2.      H.E. Services and Backie attach, and Janes references, as the basis of their Claims an amended complaint filed by H.E. Services and Backie in the United States District Court for the Eastern District of Michigan, Case No. 05-10053 (the "Underlying Complaint").  In that suit, H.E. Services and Backie allege violations of 42 U.S.C. § 1981 and assert claims based on fraud, misrepresentation, breach of contract, and promissory estoppel. (Underlying Complaint, ¶¶ 5-7).  Notwithstanding the allegation that the Debtors breached certain contractual obligations

to H.E. Services and the requirements of the proof of claim form (Form 10) approved by the Bar

Date Order,[1] H.E. Services failed to attach the alleged underlying contract, a necessary

supporting document, to the Complaint or the H.E. Services Claim.  The case was

administratively closed on October 24, 2005 due to the pendency of these Chapter 11

proceedings.

       3.      The Debtors objected to the Claims pursuant to the Debtors' (i) Third

Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007

To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By

Debtors' Books And Records, And (C) Claims Subject To Modification And (ii) Motion To

Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No.

5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

       4.      H.E. Services and Backie filed their joint Response To Debtors' (I) Third

Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007

To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By

Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To

Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) on November 22,

2006 (Docket No. 5679) (the "H.E. Services/Backie Response").  Janes also filed a Response To

Debtors' Objection To Claim on November 22, 2006 (Docket No. 5742) (the "Janes Response"

and collectively with the H.E. Services/Backie Response, the "Responses").

---

[1]   See Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P.
1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of
Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the
"Bar Date Order"), Proof of Claim Form 10..  Item 7 of the Proof of Claim Form 10
requires a claimant to "*[a]ttach copies of supporting document*s, such as . . . purchase
orders, . . . contracts . . . .". (emphasis in original).

<u>Disputed Issues</u>

A.    <u>Debtors Did Not Breach Their Contracts With Claimants</u>

5.    Although the Bar Date Order required the Claimants to do so, the

Claimants failed to attach what they believe to be the operative contractual agreement between

the parties.  To the extent that there exists a contract between the parties, the Debtors' General

Terms and Conditions would govern the parties' contractual rights (the "Terms and Conditions,"

a copy of which is attached hereto as Exhibit A).  Agreements to purchase parts would be based

on the Debtors' requirements, and equipment purchases would be made in accordance with the

terms and conditions of a purchase order.

6.    Reliance on other statements, agreements, or documents is precluded by

the Terms and Conditions, which contain an integration clause. Specifically, Section 29 of the

Terms and Conditions provides, in relevant part:

> This Contract, together with the attachments, exhibits, supplements or other terms
> of Buyer specifically referenced in this Contract, constitutes the entire agreement
> between Seller and Buyer with respect to the matters contained in this Contract
> and supersedes all prior oral or written representations and agreements.

(Terms and Conditions at Section 29).  The Terms and Conditions also provide that any

modification must be by written contract amendment issued by the Debtors.  (<u>Id.</u>; <u>see also</u>

Section 1 ("Any additions to, changes in, modifications of, or revisions of this Contract

(including these General Terms and Conditions) which Seller proposes will be deemed to be

rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals

in writing.")).

7.    In addition, the Terms and Conditions provide that the Debtors may

terminate any contract for convenience at any time.  Section 11 of the Terms and Conditions

provides, in relevant part:

4

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. . . . The purchase price for such finished goods, raw materials and work-in-progress, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, <u>plus</u> (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract <u>less</u> (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent.  In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable.  Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. . . .

(<u>Id.</u> at Section 11).

8.    The Debtors fulfilled their obligations under any agreements they had with the Claimants.  The Claimants, on the other hand, did not satisfy all of their obligations under their agreements with the Debtors.

B.    <u>Debtors Did Not Discriminate Against Claimants</u>

9.    The Debtors did not discriminate against the Claimants based on H.E. Services' status as a minority-owned business or Backie's status as a minority. The Claimants have failed to provide any evidence that the Debtors committed such discrimination.

10.    The Debtors did business with the claimants for many years, but eventually turned to other suppliers when the Claimants could not provide the parts and services the Debtors needed—not because of the minority status of the Claimants.  (<u>See</u> Answer to

5

Amended Complaint and Affirmative Defenses in Underlying Matter, ¶ 68 attached hereto as

Exhibit B).

C.    Debtors Did Not Misrepresent Any Material Fact

11.    The Debtors did not make any material misrepresentations – either

intentionally or negligently – to the Claimants on which the Claimants reasonably relied to their

detriment.

12.    The Claimants generally allege that the Debtors made misrepresentations

as to the exclusivity of any relationship with the Claimants and as to the Debtors needs for parts

and services.  However, the Claimants provide no specific evidence as to the date, time, place, or

speaker as to any alleged misrepresentations. Furthermore, any representation made by the

Debtors as to their existing or anticipated need for parts and services was true.

13.    Moreover, the Terms and Conditions which would govern any contractual

relations between the parties belie any "exclusivity" in that the Debtors expressly reserved the

right to terminate any contract for convenience.  (Terms and Conditions at Section 11).

D.    Debtors Did Not Make Bad Faith Promises

14.    The Claimants provide no evidence of bad faith on the part of the Debtors.

15.    The Claimants allege that the Debtors communicated their existing needs

for parts and services. For example, the Claimants allege that they were shown "yearly volumes

based on statements of present need for services or parts" (see Underlying Complaint, ¶ 48).

However, such statements were forecasts or estimates, and they were communicated to the

Claimants as such.  They were not promises or guarantees that the Debtors would order a certain

number of parts and services from the Claimants.  The Debtors did not commit to any specific

level of need for parts or services.  As stated in Section 11 of the Terms and Conditions, cited above, the Debtors expressly retain the right to terminate any contract for convenience.

16.     Thus, any reliance the Claimants placed on these statements and estimates was not reasonable.  Any level of need for parts and services provided to the Claimants during any negotiations was merely an estimate and by no means a firm commitment from the Debtors. Nor was it communicated to the Claimants as such.

17.     The Claimants also allege that the Debtors communicated their anticipated future needs for parts and services.  However, those communications were not promises or guarantees that the Debtors would order a certain number of parts and services from the Claimants.  The Debtors did not commit to any specific future level of need for parts or services and, as stated in the Terms and Conditions, any orders were subject to termination for convenience.  Any reliance that the Claimants placed on these statements and estimates was not reasonable.  The level of need for parts and services provided to the Claimants during any negotiations was merely an estimate and by no means firm commitment from the Debtors.  Nor was it communicated to the Claimants as such.

18.     Even if the Claimants had a unilateral expectancy of a volume of services and parts above that which the Debtors ultimately required, the Claimants have failed to assert, and cannot assert, a legal basis upon which the Debtors are liable to the Claimants for any loss of such expectancy.  The Debtors simply made no promises with regard to the volume of services they would require from the Claimants, and thus they are not liable to the Claimants if such volume was less than the Claimants had hoped.  Furthermore, the Claimants' reliance on such estimates would have been unreasonable in light of both the integration clause and the right to terminate for convenience contained in the Terms and Conditions.

19.     The Debtors did not make any of the bad faith promises generally alleged in the Underlying Complaint.  The Claimants fail to explain why they believe any statements were made in bad faith.  (see Underlying Complaint, ¶ 44.)

E.     Delphi Corporation Has No Liability In the Underlying Lawsuit

20.     H.E. Services and Backie assert claims against Delphi.  The Debtors dispute that Delphi faces even potential liability in the underlying lawsuit filed by the Claimants.  As noted above, the basis for the Claim is a law suit filed by H.E. Services and Backie against Delphi Automotive Systems LLC ("DAS LLC").  Delphi and DAS LLC are separate and distinct legal entities.  Neither the Claims nor the Responses assert any basis upon which Delphi would be liable for DAS LLC's obligations, if any.  Delphi is not, and has never been, a party to the Underlying Complaint.

21.     Furthermore, pursuant to the Bar Date Order, the claimants, including H.E. Services, Backie and Janes, were required to file proofs of claim against the appropriate Debtor entity.  Specifically, paragraph 3(f) of the Bar Date Order provides:

> Proofs of Claim must clearly indicate the name of the applicable Debtor against which the Claim is asserted and the applicable reorganization case number for such Debtor, and if a Claim is asserted against more than one of the Debtors, a separate Proof of Claim must be filed in each such Debtor's reorganization case.

22.     Furthermore, the Notice Of Bar Date For Filing Proofs Of Claim (the "Bar Date Notice") which was approved by the Court pursuant to Bar Date Order also specifically stated that "each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case."  See Bar Date Notice at p. 2.  Exhibit A to the Bar Date Notice specifically identified DAS LLC as a Debtor and identified its case number.  (See Exhibit A to Bar Date Notice at p. 4).

8

23.    Nonetheless, H.E. Services and Backie filed their Proofs Of Claim only against Delphi, and did not file any proofs of claim against DAS LLC.  The July 31, 2006 bar date passed over five and one-half months ago.  As the Proofs Of Claim were asserted against Delphi and Delphi clearly is not a party to the Underlying Complaint, the Claim is invalid and should be disallowed in its entirety.

F.    Claimants' Claims Suffer Other Defects

24.    The Claimants have failed to state a cause of action as a matter of law.

25.    The Claimants seek several forms of unrecoverable damages, including but not limited to Claimants' alleged damages that are remote, contingent, or speculative damages.

26.    The Claimants cannot recover for claims that do not comport with the Statute of Frauds, which requires that contracts for the sale of goods that cannot be completed in one year be in writing.  See UCC 2-201.

27.    The Claimants cannot recover for claims barred by the applicable statute of limitations.

28.    The shareholder Claimants cannot recover for claims that are solely derivative of their ownership interest in H.E. Services.

Reservation Of Rights

29.    This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions

of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of

Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional

legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim

and (b) the Debtors' right to later identify additional documentation supporting the disallowance,

expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

disallowing and expunging the Claims, and (b) granting the Debtors such other and further relief

as is just.

Dated: New York, New York
      January 16, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -


By:  /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

11