**Hearing Date:   February 14, 2007**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                             :

|  |  |
|---|---|
| In re | :    Chapter 11 |
| DELPHI CORPORATION, et al., | :    Case No. 05-44481 (RDD) |
|  | :    (Jointly Administered) |
|          Debtors. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF
OF CLAIM NUMBER 2479 (WORLDWIDE BATTERY COMPANY, LLC)

("SUPPLEMENTAL REPLY – WORLDWIDE BATTERY COMPANY, LLC")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Supplemental Reply (the "Supplemental Reply") With Respect To Proof Of Claim Number 2479 (the "Proof of Claim") filed by WorldWide Battery Company, LLC ("WorldWide"), and respectfully represent as follows:

## Background

1. WorldWide filed the Proof of Claim on or about April 3, 2006. The Proof of Claim asserts an unsecured nonpriority claim in the amount of $2,819,166.35 (the "Claim") pursuant to a Recycled Battery Sales Agreement dated March 16, 2004 entered into by Delphi and WorldWide (the "Agreement") in which Delphi agreed to sell recyclable batteries to WorldWide. The Proof of Claim asserts that the Claim constitutes 35 months of average income of $80,547.61 per month that WorldWide claims to have lost due to an alleged breach of the Agreement by Delphi when the Debtors sold its battery-related assets to Johnson Controls, Inc. ("JCI").

2. The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

3. On November 27, 2006,[1] WorldWide filed WorldWide Battery's (i) Response In Opposition To Third Omnibus Claims Objection (Ref. Claim No. 2479), And (ii) Motion For Enlargement Of Time To Submit Additional Evidence In Support Of Proof Of Claim

---

[1] The deadline to file a response to the Third Omnibus Claims Objection was November 24, 2006 at 4:00 p.m. (Prevailing Eastern Time). See Third Omnibus Claims Objection, ¶ 46.

2

(Docket No. 5864) (the "Response"). The Response asserts that the maximum allowable amount of the Claim is less than or equal to $250,000.

    4.  On December 18, 2006 the Debtors filed its Statement of Disputed Issues With Respect To Proof Of Claim 2479 (WorldWide Battery) (Docket No 6201) (the "Statement of Disputed Issues").

    5.  On December 22, 2006, the Debtors and WorldWide, with their legal counsel, conducted a telephonic meet and confer pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

    6.  On January 3, 2007, WorldWide filed its Supplemental Response (Re: Claim No. 2479) To Debtors' Third Omnibus Claims Objection And Statement Of Disputed Issues (the "Supplemental Response") (Docket No. 6405).

Argument

A. <u>The Debtors Have Not Breached The Agreement</u>

    7.  The Debtors never breached the Agreement with WorldWide. The Agreement did not commit Delphi to sell a specific quantity of batteries to WorldWide. Although the Agreement calls for periodic estimates of the Debtors' supply and WorldWide's needs for batteries, the Agreement expressly states that "no quantity is guaranteed by Delphi hereunder." See Agreement, ¶ 1.1.[2]

---

[2] The declaration of Al L. Brunner in support of this Supplemental Reply (the "Brunner Declaration") is attached hereto as <u>Exhibit A</u>. A true and correct copy of the Agreement is attached to the Brunner Declaration as <u>Exhibit 1</u>.

8.      Michigan law follows the Uniform Commercial Code (the "UCC") on requirements and output contracts. Michigan Combined Law 440.2306 provides that "[a] term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith . . . ." MCL 440.2306(1). The burden is on the party that would benefit from a showing of bad faith, here WorldWide, to prove a seller's bad faith in reducing its output. See Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1123-23 (3d Cir. 1992) (applying Michigan contract law). Cases interpreting the nearly identical provision of the UCC, section 2-306, hold that a party's output may, in good faith, be reduced to zero without constituting a breach of an output contract if that reduction in output is based in sound business judgment and not in an effort to avoid the output contract or agreement. Tigg Corp., 962 F.2d at 1126 (confirming that a party may have a good faith reason for supplying or demanding no goods, and in such a case, there is no breach); see also Wilsonville Concrete Prods. v. Todd Building Co., 574 P.2d 1112, 1115 (Or. 1978) ("[b]oth pre-Code cases and [UCC] 2-306(1) allow 'good faith' reductions and even abandonment"); Feld v. Henry S. Levy & Sons, Inc., 45 A.D.2d 720, 721 (NY App. Div. 1974) ("in an output-requirements contract good faith cessation of business terminates any further obligations thereunder and excuses further performance by the party discontinuing business"); Neofotistos v. Harvard Brewing Co., 171 N.E.2d 865, 868 (Mass. 1961) (where seller in output contract ceased operation and thus reduced output to zero, court found no breach of contract and noted that "any loss to [plaintiff] is a consequence of the kind of agreement into which it entered").

9.      When the Debtors sold their battery-related assets to JCI, Delphi no longer had any batteries to sell to WorldWide. Because the decision to sell the assets to JCI was based on sound business judgment, and was in no way motivated by any desire to avoid the Agreement

4

and related obligations to WorldWide, the resulting elimination of the Debtors' output of batteries was in good faith.  Delphi never agreed to sell a specific quantity of batteries to WorldWide, and Delphi had no duty to continue to sell batteries to WorldWide after the sale of the Debtors' battery business line.  Accordingly, the cessation of battery sales did not constitute a breach of the Agreement.  Because Delphi has not breached the Agreement, the Claim should be disallowed and expunged.

B.    Debtors' Sale To JCI Was A De Facto Termination Of Its Agreement With WorldWide, So At Most, The Claim Is Limited To 90 Days Of Lost Profits

10.    Even if the Debtors did breach the Agreement (which the Debtors dispute), the Claim should be limited to 90 days of WorldWide's lost profits.  As WorldWide acknowledged in its Response, the Agreement allows Delphi to terminate the Agreement upon 90 days' written notice upon certain conditions, including the sale of the Debtors' battery manufacturing operations.  See Agreement, ¶ 4.5.  Because the Debtors sold their battery manufacturing operations to JCI, Delphi was entitled to terminate the Agreement upon 90 days' notice.

11.    Upon the sale of the battery related assets to JCI, Delphi no longer had a supply of batteries to sell to WorldWide.  This lack of supply made it impossible for Delphi to continue to perform under the contract.  Where, as here, an Agreement can be terminated due to sale of the business or other impossibility of performance, the occurrence of such impossibility constitutes de facto termination of the Agreement, even if written notice has not been given.  See Auto Electric & Service Corp. v. Rockwell Int'l Corp., 111 Mich. App. 292, 314 N.W.2d 592 (Mich. Ct. App. 1982) (finding that defendant's assignment of a contract, which made plaintiff's performance impossible, was a de facto termination of the contract, even where contract called for written notice of termination).  Thus, the Debtors terminated the contract on June 30, 2005

5

when JCI purchased the Debtors' battery related assets, albeit without the required 90 days' notice. Therefore, any alleged breach of the Agreement would entitle WorldWide to, at most, a damage claim for 90 days of lost profits to compensate WorldWide for the lack of notice of termination as required under the Agreement. Accordingly, even if the Debtors breached the Agreement, the Claim is limited to 90 days of WorldWide's lost profits.[3]

C.     WorldWide's Claim For Damages Must Account For Mitigation

12.    Even if WorldWide's claim for 90 days worth of lost profit is allowed, which the Debtors believe is unwarranted, it should be offset by the profits WorldWide made during those 90 days based on shipments of batteries from JCI.

13.    The Debtors terminated the Agreement on June 30, 2005 by selling the battery related assets to JCI. WorldWide acknowledges that it received shipments from JCI through the entire month of July and up through August 29, 2005, as well as "several shipments in the month of September." (Affidavit of David J. Petruzzi, Exhibit B to Response, at ¶¶ 27, 30). WorldWide cannot recover for damages that it did not incur as a result of mitigation. JCI's shipments to WorldWide appear to have mitigated more than two-thirds of the 90 days of lost profits. It appears that WorldWide's actual lost profits, if any, during the 90-day period of required notice of termination were limited solely to a portion of September. Pending the discovery responses regarding the JCI shipments, the Debtors believe that even if WorldWide is entitled to a claim under the Agreement, WorldWide's claim should be capped at its actual lost profits.

---

[3]    The Debtors await discovery responses from WorldWide to substantiate its calculation of its alleged monthly lost profits. Nothing contained herein is an acceptance, or acknowledgment of the accuracy, of WorldWide's calculation.

6

D.     WorldWide's Affiliate Entered Into A Release Of All Claims Against The Debtors

14.    The Debtors negotiated and entered into a settlement agreement and release dated December 8, 2005 (the "Settlement Agreement") with American Energy LLC ("American Energy"), an affiliate of WorldWide.  A copy of the Agreement is attached hereto as Exhibit B.  At the time this settlement was negotiated, the parties believed that American Energy was negotiating to settle all of the claims it and its related entities (including, without limitation, WorldWide) had against the Debtors.  The parties agreed to a "settlement of all past, present, and future claims and obligations of both parties."  (Settlement Agreement).  Therefore, even were the Claim to survive the Debtors' arguments that there was no breach of contract, WorldWide's Claim must be disallowed and expunged because it was settled and released pursuant to the Settlement Agreement.

E.     Response Was Untimely

15.    Pursuant to the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418) and the Third Omnibus Claims Objection, responses to the Third Omnibus Claims Objection were due by November 24, 2006.  The Response was filed after the deadline, and thus was not timely.  WorldWide's failure to file a timely response to the Third Omnibus Claims Objection lends further support for the disallowance and expungement of the Claim.

Reservation of Rights

16.    This Supplemental Reply is submitted by the Debtors pursuant to paragraph 9(f) of the Claims Objection Procedures Order.  Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Supplemental Reply is

7

without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

8

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim, (b) in the alternative, reducing the amount of the Claim, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       January 17, 2007

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Hearing Date and Time: February 14, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
|---|---|
| : | |
| In re : | Chapter 11 |
| : | |
| DELPHI CORPORATION, et al., : | Case No. 05-44481 (RDD) |
| : | |
| : | (Jointly Administered) |
| Debtors. : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

## CERTIFICATE OF COUNSEL

    I, John K. Lyons, certify that the settlement agreement dated December 8, 2005, attached

as <u>Exhibit B</u> to the Supplemental Reply With Respect To Proof Of Claim Number 2479

(Worldwide Battery Company, LLC), is, to the best of my knowledge, a true and accurate copy

of such document.

Dated: January 17, 2007

        /s/ John K. Lyons
John K. Lyons