**Hearing Date:   March 21, 2007**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ - x
                                  :
    In re                         :        Chapter 11
                                  :
DELPHI CORPORATION, et al.,       :        Case No. 05-44481 (RDD)
                                  :
                                  :        (Jointly Administered)
            Debtors.              :
------------------------------ - - x

DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT
TO PROOF OF CLAIM NUMBER 7090 (BANK OF LINCOLNWOOD)

("STATEMENT OF DISPUTED ISSUES – BANK OF LINCOLNWOOD")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Statement of Disputed Issues (this "Statement of Disputed Isssues") With

Respect To Proof Of Claim Number 7090 (the "Proof of Claim") filed by Bank of Lincolnwood

("Lincolnwood"), and respectfully represent as follows:

Background

1.      Lincolnwood filed the Proof of Claim on or about May 30, 2006. The

Proof of Claim asserts an unsecured nonpriority claim in the amount of $1,208,562.95 (the

"Claim"), based upon the rejection of a Master Lease Agreement dated June 29, 2001 (the

"Lease") between Delphi Automotive Systems, LLC ("DAS LLC"), as lessee, and Pacific Rim

Capital, Inc. ("Pacific Rim" or "Lessor"), as lessor, whereby DAS LLC leased certain equipment

and other personal property (the "Equipment") from Pacific Rim. The Proof of Claim further

asserts that Pacific Rim assigned its rights in the Lease to Lincolnwood, and that the Claim

consists of lease rejection damages calculated as the Stipulated Loss Value of the Equipment in

the amount of $1,502,655.51, less the net sale price of $300,000.00 realized by Lincolnwood in

the sale of the Equipment.

2.      The Debtors objected to the Claim pursuant to the Debtors' (i) Third

Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007

To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors'

Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate

Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the

"Third Omnibus Claims Objection"), which was filed on October 31, 2006.

3.      On November 21, 2006, Lincolnwood filed its Opposition Of Creditor

Bank Of Lincolnwood To Debtors' Third Omnibus Claims Objection (Docket No. 5611) (the

"Response").

2

<u>Disputed Issues</u>

4.      The Debtors dispute Lincolnwood's calculation of its rejection damages

based on the Stipulated Loss Value.  Lincolnwood asserts that the rejection of the Lease

constitutes an Event of Default, and relies upon Section XII of the Lease, which provides, in

relevant part, that upon an Event of Default the Lessor may "demand that Lessee pay to Lessor

on a payment date specified in a written notice from Lessor, as damages for loss of a bargain and

not as a penalty, the Stipulated Loss Value of the Equipment."  Lease, § XII.  Lincolnwood

asserts that the Stipulated Loss Value with respect to the Equipment is $1,502,655.51.[1]  <u>See</u>

Response at 5.  The Stipulated Loss Value, however, is not the appropriate measure of

Lincolnwood's rejection damages because it constitutes a penalty rather than an enforceable

liquidated damages clause, and is disproportionate to any actual damages Lincolnwood incurred

as a result of the rejection of the Lease.

5.      Courts routinely refuse to enforce liquidated damages provisions in

rejected executory contracts when the provisions operate as penalties.  <u>See</u> <u>In re Exemplar Mfg.</u>

<u>Co.</u>, 331 B.R. 704, 714 (Bankr. E.D. Mich. 2005) (holding that liquidated damages clause

operated as a penalty, under Michigan law); <u>In re Health America Medical Group</u>, 293 B.R. 799,

804 (Bankr. M.D. Fla. 2003 (holding that liquidated damages clause in a rejected equipment

---

[1]    Even if the Stipulated Loss Value is the appropriate measure of Lincolnwood's rejection damages – a position
the Debtors dispute – the Debtors assert that Lincolnwood has incorrectly calculated the Stipulated Loss Value
pursuant to the Lease.  Annex D to Equipment Schedule No. 1 to the Lease sets forth the applicable percentages
by which the Stipulated Loss Value is calculated, with the applicable percentage being measured according to
the rental period immediately preceding an Event of Default.  To calculate the Stipulated Loss Value, the
applicable percentage is multiplied by the Capitalized Lessor's Cost, which is listed in Equipment Schedule No.
1 as $3,108,161.60.  For the rental period ending September 30, 2005, the applicable percentage is 47.974%.
This percentage multiplied by the Capitalized Lessor's Cost (47.974% x $3,108,161.60) equals $1,491.109.45,
not $1,502,655.51.  Thus, even if the Stipulated Loss Value is the appropriate measure of damages,
Lincolnwood has overstated that number by at least $11,546.06.

lease operated as a penalty, under Florida law); In re Montgomery Ward Holding Corp., 269 B.R.

1, 9 (D. Del. 2001) (holding that liquidated damages clause in a rejected equipment lease

operated as a penalty, under Illinois law); In re D.H. Overmyer Co., Inc., 60 B.R. 391, 397

(S.D.N.Y. 1986) (upholding bankruptcy court's decision not to enforce liquidated damages

clause in rejected lease because lessor suffered no actual damages).  Under Michigan law,[2] a

liquidated damages provision is enforceable only "if the amount is reasonable with relation to the

possible injury suffered and not unconscionable or excessive."  St. Clair Medical, P.C. v. Borgiel,

715 N.W.2d 914, 921 (Mich. App. 2006).  Whether such a clause is reasonable is a question of

law, in which there is no inquiry made into the intent of the parties and the fact that particular

words (such as "liquidated" or "penalty") are used in a contract have no bearing.  Moore v. St.

Clair County, 328 N.W.2d 47, 49-50 (Mich.App. 1982).

        6.     Here, the Stipulated Loss Value is not reasonably related to the possible

injury suffered by the Lessor in the case of a breach of the Lease, even when reasonableness is

viewed at the time of execution of the contract.  The section of the Lease titled "Stipulated Loss

Value" applies upon the occurrence of an Event of Loss, which is any event in which the

Equipment is lost, destroyed, or damaged.  The Stipulated Loss Value entitles the Lessor to the

Stipulated Loss Value as a result of the loss, destruction, or damage it its Equipment.  See Lease,

§ VII.  Thus, the Stipulated Loss Value attempts to measure the Lessor's damages in the event its

Equipment is lost, destroyed, or damaged.  Although the Stipulated Loss Value may be a

reasonable estimate of such damages,[3] it is not a reasonable estimate of the possible injury

---

[2]    The Lease is governed by Michigan law.  See Lease, § XXIII(k).

[3]    The Debtors note that, according the Lincolnwood, the net proceeds of its sale of the Equipment was $300,000.
    See Response at 5.  Thus, the Debtors question whether the Stipulated Loss Value, which is over five times
                                                *(cont'd)*

suffered by the Lessor if the Lease is breached through rejection, because it bears no relationship

to the actual damages Lessor would suffer in such a case, especially when, like here, the

equipment is returned.

7.    In Montgomery Ward, the court refused to enforce a liquidated damages

provision in a rejected executory equipment lease because such provision granted the lessor

damages that were over double the amount of remaining rent due under the lease, and thus would

allow the lessor to collect over double the amount it would have been due had the lease been

fully performed.  Montgomery Ward, 269 B.R. at 7.  Likewise, allowing Lincolnwood a claim

equal to the Stipulated Loss Value would allow it to recover approximately double the amount it

was due in remaining rent under the Lease.  As Lincolnwood noted in the Response, basic rent

due under the Lease was approximately $54,000 per month and there were twelve months

remaining on the Lease's term when it was rejected.  Thus, DAS LLC would have had to pay

approximately $650,000 in rent had it not rejected the Lease, which is one-half the amount

Lincolnwood seeks to recover.

8.    Accordingly, the Stipulated Loss Value is not a reasonable measure of the

possible damages incurred by Lincolnwood upon the breach of the Lease through rejection, and

thus the Claim should be reduced to Lincolnwood's actual damages.

9.    The Debtors also dispute Lincolnwood's claim for attorney fees.  See

Rider to Proof of Claim of Bank of Lincolnwood, at 5.  Lincolnwood has not provided

documentation detailing the nature of the services performed that form the basis of its claim.

The Debtors reserve the right to dispute Lincolnwood's claim for attorney fees, including, but not

_____

*(cont'd from previous page)*
    what was actually received in a sale, is even a reasonable estimate of the Lessor's damages had the Equipment
    been lost, destroyed, or damaged.

5

limited to, the reasonableness of such fees and whether Lincolnwood has the right to include
attorney fees as part of its rejection damage claim.

10.    Finally, to the extent Lincolnwood asserts a claim for late charges or
interest, the Debtors dispute the same.  Lincolnwood states that it is entitled to late charges and
interest pursuant to the Lease, but does not assert a specific amount of late charges or interest as
part of its claim.  See Response, at 4.  To the extent Lincolnwood does assert a claim for late
charges or interest, the Debtors reserve the right to dispute the same, including, but not limited to,
Lincolnwood's method of calculating the late charges and interest due pursuant to the Lease, if
any.

Reservation of Rights

11.    This Statement Of Disputed Issues is submitted by the Debtors pursuant to
paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),
3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding
Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims
(Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions
of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of
Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional
legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim
and (b) the Debtors' right to later identify additional documentation supporting the disallowance,
expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)
reducing the amount of the Claim and (b) granting the Debtors such other and further relief as is
just.

6

Dated: New York, New York
      January 22, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession