Hearing Date and Time: February 15, 2007 at 10:00 a.m.
Response Date and Time: February 8, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br><br>DELPHI CORPORATION, et al.,<br><br>　　　Debtors. | Chapter 11<br><br>Case No., 05-44481 (RDD)<br><br>(Jointly Administered) |

## MOTION OF SUMIDA AMERICA INC. TO ALLOW SETOFF/RECOUPMENT AND FOR RELIEF FROM THE AUTOMATIC STAY

Sumida America Inc. ("Sumida America"), by its undersigned counsel, hereby moves this Court for entry of an order (i) allowing Sumida America to setoff and/or to recoup certain amounts owed to it by Delphi Energy & Chassis Systems (a division of Delphi Automotive Systems), Delphi Automotive Systems, and/or Delphi Mechatronic Systems (collectively, "Delphi") and/or (ii) modifying the automatic stay to allow Sumida America to effect a setoff and recoupment of such amounts. In support of its Motion, Sumida America respectfully states as follows:

### I. JURISDICTION AND STATUTORY PREDICATE

1.    This Court has jurisdiction over this core proceeding and contested matter under 28 U.S.C. §§1334, 157(b)(2)(G) and (M) and venue is proper under 28 U.S.C. §1408, *et seq.* The statutory basis for this motion is 11 U.S.C. §§362(a), (d), and 553 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York.

## II. BACKGROUND

2.      On October 8, 2005, (the "Petition Date"), Delphi filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

3.      The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      The Debtors' cases are being jointly administered pursuant to an order of the Court.

5.      No trustee or examiner has been appointed in these Chapter 11 cases.

6.      An Official Committee of Unsecured Creditors was appointed on or about October 17, 2005.

7.      Sumida America has been supplying Delphi, their subsidiaries and various of their divisions with tooling and goods for several years.  In addition to several purchase orders issued from Delphi to Sumida America before the Petition Date, Delphi agreed on a pre-petition basis to a long-term contract for, among other things, the purchase of certain tooling from Sumida America.  The agreement was finally memorialized in a writing on a post-petition basis on or about January 6, 2006 (collectively, the "Long Term Contract").   A copy of the Long Term Contract is attached hereto as **Exhibit "A."**

8.      Delphi submitted purchase orders to Sumida America under the parties' Long Term Contract.

9.      As of the Petition Date, as a result of certain alleged overpayments, the Debtors are seeking the return of $77,000.00 from Sumida America.

10.    As of the Petition Date, Delphi owed Sumida America $81,613.00 for certain goods sold and shipped to Delphi. Copies of the invoices related to said goods are attached hereto as Exhibit B.

11.    Since the Petition Date, Sumida America has continued to support Delphi by accepting purchase orders for additional goods to be manufactured to Delphi's specifications.

### III.  RELIEF REQUESTED

12.    For the reasons set forth herein, Sumida America requests relief from the automatic stay for the limited purpose of effectuating a setoff with Delphi in the event Sumida America is foreclosed from asserting a claim for recoupment.

### IV.  AUTHORITIES SUPPORTING SETOFF

13.    Section 362(a)(7) of the Bankruptcy Code provides that the filing of a debtor's voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. §362(a)(7). However, section 363(a)(7) does not affect a creditor's setoff rights. H.R. Rep. No. 595, 95th Cong., 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., at 51 (1978). Section 362(a)(7) "simply stays its enforcement pending an orderly examination of the debtors' and creditors' rights." *Id.* Thus, a party may still exercise its right to setoff in a bankruptcy proceeding if it obtains relief from the automatic stay or obtains an order allowing setoff prior to exercising any right to setoff. *In re NTG Indus., Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).

14.    Setoff is the common law right to subtract a debt from an unrelated claim against the same creditor. Essentially, the right to setoff allows entities that have mutual obligations "to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B

when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 18 (1995)(quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523 (1913)).

15.    Bankruptcy law preserves these rights as they exist under non-bankruptcy law. 11 U.S.C. §553(a); *In re HAL, Inc.*, 196 B.R. 159, 161 (9th Cir. B.A.P. 1996)("To enforce a setoff right, a creditor 'must establish that (1) it has a right or setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553.'"); *see also In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994)(statute governing setoff in bankruptcy does not create a right of setoff, but rather, preserves the right where is exists under applicable non-bankruptcy law); *In re Gordon Sel-Way, Inc.* 239 B.R. 741, 751 (E.D. Mich. 1999). Thus, a creditor seeking to setoff a claim against a debtor in bankruptcy must establish its right to do so under state or federal law.

16.    "Under §553, a creditor with an independent right of setoff may setoff a debtor's obligations only if the creditor satisfies three elements. First, the creditor must owe a debt to the debtor that 'arose before the commencement of' the bankruptcy proceedings. Second, the creditor must have a claim against the debtor that 'arose before the commencement of' the bankruptcy proceedings. Third, the creditor's and debtor's obligations must be mutual." *U.S. v. Myers,* 362, F.3d 667, 672 (10th Cir. 2004); *see also Scherling*, 181 B.R. at 739.

17.    In order for opposing claims to be mutual, the two claims must: (1) be held by the same parties; (2) in the same right or capacity; and (3) both arise either pre-petition or post-petition. *See Whitaker*, 173 B.R. at 361; *accord Sel-Way*, 229 B.R. at 741.

18.    In general, mutuality is construed narrowly. Thus, even if the parties are identical, the respective obligations must have been incurred in the same capacity. There is no mutuality unless the parties stand in the same relationship to one another with respect to both offsetting obligations. Debts are mutual when the obligations are in the same right and are

between the same capacity. *Official Committee of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 139 (2d Cir. 1998); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990).

19.    First, to the extent Sumida America's right to recoupment is limited or prevented, which Sumida America denies, Sumida America asserts, to the alternative, that it is entitled to rights of setoff. Delphi has asserted that Sumida America owes a "debt" to Delphi. As stated above, Delphi asserts that as of the Petition Date Sumida America owes Delphi $77,000.00 on account of certain overpayments, credits and payables.

20.    In addition, Sumida America holds a valid and enforceable "claim" against Delphi that arose before the commencement of the bankruptcy proceedings. *See* 11 U.S.C. § 101(5)(A).[1]  As stated above, Delphi owed Sumida America $81,613.00 as of the Petition Date. In *Johnson v. Home State Bank*, the Supreme Court stated that "a right to payment" means "nothing more nor less than an enforceable obligation." *Johnson v. Home State Bank*, 505 U.S. 78, 83 (1991)(internal quotations omitted). Therefore, a claim arises pre-petition for set-off purposes when some "right to payment" exists pre-petition, meaning, when an enforceable obligation exists at the time the debtor files his bankruptcy petition.

21.    Here, Sumida America had a right to payment from Delphi within thirty (30) days after each invoice for products was billed to Delphi. Further, Delphi's pre-petition acceptance of the products gave Sumida America a pre-petition right to payment for set-off purposes pursuant to Article 2 of the Uniform Commercial Code, §§2-507, 2-606, and 2-607.

22.    The claim and debt are "mutual" as they are "due to and from the same person in the same capacity." *Packaging Ind. Group. v. Dennison Mfg. Co., Inc.*, 192 B.R. 41, 45

---

[1] Section 101 of the Bankruptcy Code defines a "claim" as any "right of payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."

(N.D.N.Y. 1996). This requirement is met because the parties owe each other money as a result of Sumida America acting as the seller and manufacturer of goods ordered by Delphi, as the purchaser.

23.    Because Delphi sought the protection of the Bankruptcy Code, to the extent Sumida America's claim is one in setoff as opposed to recoupment, the automatic stay prevents Sumida America from setting off the amount it owes to Delphi. 11 U.S.C. §362(a)(7). Sumida America is therefore seeking relief from the automatic stay pursuant to Section 362(d)(1) for "cause."

24.    Although "cause" is not defined in the Bankruptcy Code, in deciding whether to grant relief from the stay, courts look to "the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (Bankr. D. Del. 1993).

25.    Sumida America submits that cause exists to grant it relief. Sumida America has established that it has the right of setoff under the applicable law and that Sumida America should be permitted to exercise that right.

## VI.  RECOUPMENT

26.    In addition to the foregoing setoff rights, Sumida America possesses rights in recoupment. To the extent the amount Delphi is seeking from Sumida America arose under the same agreement as the amounts Sumida America is seeking from Delphi, Sumida America possesses rights of recoupment which are not subject to the stay. Sumida America also sold, shipped, and invoiced certain goods to Delphi on a post-petition basis which remain unpaid. As such, to the extent those amounts and the $81,613.00 due on a pre-petition basis, arose under the

same agreement under which Delphi is seeking payment for the $77,000.00, Sumida America is entitled to automatically recoup that amount without violating the automatic stay.

27.    The doctrine of recoupment is overall more expansive than the doctrine of setoff. As a general rule, §553 requirements and limitations applicable to setoff do not apply to recoupment. 5 COLLIER ON BANKRUPTCY § 553.10, at 553-99 (15th ed. 2002). As a result, Sumida America is entitled to recoup the entire amount of $77,000.00.

## VII.  WAIVER OF MEMORANDUM OF LAW

28.    This Motion does not raise any novel issues of law. Sumida America therefore respectfully requests that this Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of this Motion.

## VIII.  NOTICE

29.    Notice of this Motion will be provided in accordance with this Court's Order dated October 14, 2005, establishing case management and notice procedures in these Chapter 11 cases. No further or other notice need be provided. No previous motion for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, Sumida America, Inc. respectfully requests the Court to enter an Order:

A.    Granting the Motion;

B.    Lifting the automatic stay with respect to Sumida America to exercise its setoff;

C.    Ordering that any amounts due Delphi are subject to recoupment rights of Sumida America, Inc.; and

D.    Ordering such other relief as the Court deems just under the circumstances.

RESPECTFULLY SUBMITTED this 25th day of January, 2007.

By:      _____/s/ Joseph H. Lemkin_____
         Joseph H. Lemkin, Esq. (JL/2490)
         Walter J. Greenhalgh, Esq.
         DUANE MORRIS LLP
         A Delaware Limited Liability Partnership
         744 Broad Street, Suite 1200
         Newark, New Jersey 07102
         Tel:    (973) 424-2000
         Fax:    (973) 424-2001

                  and

         Masuda, Funai, Eifert & Mitchell
         Suite 2500
         203 North LaSalle Street
         Chicago, IL 60601-1262
         Tel. (312) 245-7441
         Fax (312) 245-7467

         Attorneys for Sumida America Inc.

# EXHIBIT A

## DELPHI AUTOMOTIVE SYSTEMS
## LONG TERM CONTRACT

### 1.    Purchase of Product

Sumida America Inc. ("Seller"), a company organized and existing under the laws of the state of Delaware with its principal place of business located at 1701 Golf Road, Tower 1, Suite 1108, Rolling Meadows, Illinois, IL 60008, USA agrees to sell, and **Delphi Automotive Systems LLC** acting through its Delphi Energy and Chassis Division ("Buyer") agrees to purchase production and service requirements for the following products (each referred to as a "Product" and collectively referred to as the "Products"):

| Part Number | Description | Daily Tool Capacity |
|---|---|---|
| 22208100 | Piston Core | 6300 per day (2 shifts) |
| 22208391 | Piston Core | Included in above capacity |
| 22222503 | Piston Core | 3150 per day (1 shift) |
| 22232255AA | Piston Core | 1000 per day (1 shift) |
| 22232574AA | Piston Core | 1000 per day (1shift) |

### 2.    Term

With respect to each Product, the term of this Contract is from March 1, 2005 through December 31, 2011.

### 3.    Prices

The per-unit price of each Product is EXW Guadalajara for North America and European applications. Payment term is MNS-2. Pricing for each subsequent period is outlined below and **is not** based on volume:

| Delphi Part # | 03/01/05 thru 10/31/05 Price | MY06 (11/01/05 – 06/30/06) Price | MY07 - 08 (07/01/06 – 06/30/08) Price | MY09 (07/01/08 – 06/30/09) Price | MY10 (07/01/09 – 06/30/10) Price | MY11 (07/01/10 – 12/31/11) Price |
|---|---|---|---|---|---|---|
| 22208100 | $3.10 | $3.2235 | $3.2235 | $3.1335 | $3.0435 | $3.0435 |
| 22208391 | $3.10 | $3.2235 | $3.2235 | $3.1335 | $3.0435 | $3.0435 |
| 22222503 | $4.10 | $4.2735 | $4.2735 | $4.1435 | $4.1435 | $4.1435 |
| 22232255AA | $4.85 | $4.9735 | $4.9735 | $4.9735 | $4.8235 | $4.6835 |
| 22232574AA | . | $8.8735 | $8.8735 | $8.8735 | $8.8735 | $8.8735 |

Buyer and Seller will use their best efforts to implement cost savings and productivity improvements in order to reduce Seller's costs of supplying Product. Buyer and Seller agree that the pricing of each Product will be reduced (in addition to any scheduled price reductions) as set forth above by an amount equal to **seventy-five percent (75%)** of any net cost savings achieved with respect to such Product (i.e., savings after recovery by Seller of a pro rata portion, based on the remaining term of this Contract, of the reasonable and documented costs to achieve such cost savings), provided, however, that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to seventy five percent (75%) of any savings resulting from reduction on the content of the such Product.



**EXHIBIT**

"A"

## DELPHI AUTOMOTIVE SYSTEMS
## LONG TERM CONTRACT

No price increases (including any decrease of the scheduled price reductions) will be made due to (i) Seller's failure to achieve any expected cost savings or productivity improvements or (ii) any increases in Seller's labor, materials, overhead and other costs. In the event the Buyer agrees to any price increases (or a decrease of any scheduled price reductions) with respect to any Product, then, notwithstanding anything to the contrary set forth in this Contract, the pricing of each Products will be reduced (in addition to any scheduled price reductions) by an amount equal to seventy five percent (75%) of any subsequent net cost savings achieved by Seller with respect to such Product until aggregate price reductions on account of Seller's cost savings equal any price increases previously agreed to by Buyer.

### 4. Tooling

Seller will be responsible for designing and supplying all production tooling required to produce Products provided that title and ownership of all such tooling be transferred to Buyer. Seller must obtain authorization from Buyer for any new tooling. Should Buyer decide to purchase any such or new tooling, Buyer shall issue separate purchase order(s) for such tooling and payment shall be made in accordance with MNS-2 payment terms following PPAP and validation of the tooling.

Seller will not provide any drawings of the tooling (hard copy, CAD data, Scanned Data, etc.) to the buyer.

### 5. Right to Audit

Buyer has the right to audit production process, quality control, and financial information relating to this contract for cost modeling and cost reduction activities. The financial information will be provided to Buyer through piece price breakdown data sheets. Buyer's right to audit does not include Seller's financial information that does not relate to this contract.

### 6. Right to Purchase from Others

During the entire term of this Contract, Seller will assure that each Product remains competitive in terms of technology, design, service, and quality with any similar product available to Buyer. Following Calendar Year 2005, Seller will also assure that each Product remains competitive in terms of price with any similar product available to Buyer. If, in the reasonable opinion of Buyer, a Product does not remain competitive, Buyer, to the extent it is free to do so, will advise Seller in writing of the area(s) in which a similar product is more competitive. If, within ninety (90) days, Seller does not agree to immediately sell any Product with comparable technology, design, quality, or, if applicable, price, Buyer may elect to purchase any similar products available to Buyer without any liability to Seller under this Contract.

### 7. Scheduling Lead Time

Buyer agrees to the following lead-time for scheduling.

Delphi revised on: 12/14/2005

## DELPHI AUTOMOTIVE SYSTEMS
## LONG TERM CONTRACT

| Part Number | Sumida's Part # | Finished Product | Raw Material |
|---|---|---|---|
| 22208100 | MR38A | 4 weeks | 8 weeks |
| 22208391 | MR38B | 4 weeks | 8 weeks |
| 22222503 | MR28A | 4 weeks | 8 weeks |
| 22232255AA | MR28B | 4 weeks | 8 weeks |
| 22232574AA | MR39 | 4 weeks | 8 weeks |

PC&L will generate and provide schedules to vendors through EDI system. Buyer will provide Seller with estimates, forecasts or projections of its future anticipated volume or quantity requirements every six months. Seller acknowledges that any such forecasts are provided for informational purposes only and, like any other forward looking projections, are based on a number of economic and business factors, variables and assumptions, some or all of which may change over time. Buyer makes no representation, warranty, guaranty or commitment of any kind or nature, express or implied, regarding any such forecasts provided to Seller, including with respect to the accuracy or completeness of such forecasts.

### 8. Purchase Orders

All Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping instructions) issued by Buyer from time to time during the term of this Contract. Buyer's General Terms and Conditions, a copy of which is attached, are hereby incorporated into this Contract by reference, **provided, however, that Buyer's right to "terminate for convenience" under the General Terms and Conditions will be applicable to this Contract until December 31, 2007.** Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that (i) Buyer provides Seller with a copy of such revised Terms and Conditions and (ii) Seller does not object to such revised Terms and Conditions in writing within thirty (30) days after receipt. The Terms and Conditions (together with any revision made a part of this Contract) shall be construed, to the extent possible, as consistent with the terms and conditions set forth in this Contract and as cumulative, provided, however, that if such construction is unreasonable, the terms and conditions set forth in this Contract shall control.

EXECUTED by Buyer and Seller as of _November 1_, 2005.

| Buyer:<br>Delphi Automotive Systems LLC<br>Acting through its Energy and Chassis Division | Seller:<br>Sumida America Inc.<br>Automotive Products |
|---|---|
| Name: Lillie R. Smith | Name: Doug Malcolm |
| Title: Commodity Buyer | Title: General Manager |
| Date: 1-6-2006 | Date: Jan 4, 2006 |

Delphi revised on: 12/14/2005