Hearing Date and Time: February 15, 2007 at 11:00 A.M.
Objection Deadline: February 8, 2007 at 4:00 P.M.

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Jayme T. Goldstein (JG-9054)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
In re:                                                       :
                                                             :    Chapter 11
DELPHI CORPORATION, et al.,                                  :    Case No. 05-44481 [RDD]
                                                             :
                              Debtors.                       :    Jointly Administered
                                                             :
------------------------------------------------------------x

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENT WITH BARCLAYS BANK, PLC

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

       Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), by their undersigned counsel, as and for their motion (the "Motion") for an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement annexed hereto as Exhibit

"1" (the "Settlement Agreement") by and between Delphi and Barclays Bank, PLC ("Barclays Bank"), respectfully show this Honorable Court that:

## BACKGROUND

**A.   The Chapter 11 Filings**

1.   On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.   No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the Unites States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.   The statutory predicate for the relief requested herein is Bankruptcy Rule 9019.

**B.   Current Business Operations Of The Debtors**

5.   Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global net sales of approximately $26.9 billion

and global assets of approximately $17.0 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.   The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.   Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

---

[1]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

**RELIEF REQUESTED**

8.    The Debtors seek approval of the Settlement Agreement with Barclays Bank pursuant to Bankruptcy Rule 9019.  Pursuant to the Settlement Agreement, Delphi will recover $9,044,399.41 from Barclays Bank representing the full amount of a termination payment that became due as a result of Barclays Bank's early termination of its Master Agreement (defined below) with Delphi.  For the reasons set forth below, the Debtors believe that the settlement embodied in the Settlement Agreement is fair and equitable, falls well within the range of reasonableness, is in the best interest of the Debtors' estates and should be approved.

**BASIS FOR RELIEF**

**A.    Background To The Proposed Settlement Agreement**

9.    On November 23, 2001, Delphi entered into a master swap agreement (the "Master Agreement") with Barclays Bank.

10.    On October 10, 2005, Barclays Bank sent Delphi a Notice of Termination of the Master Agreement, which constituted early termination thereof. Section 6 of the Master Agreement requires Barclays Bank to make a termination payment to Delphi upon the early termination of the Master Agreement.

11.    On October 26, 2005, Barclays Bank sent Delphi a Statement of Payment on Early Termination, pursuant to which Barclays Bank represented that it owed Delphi $10,178,261.40 as the termination payment provided for by the Master Agreement.

12.    Barclays Bank later recalculated the amount due to Delphi as a result of the early termination of the Master Agreement, and on November 14, 2005,

4

Barclays Bank sent Delphi an Amended Statement of Payment on Early Termination, revising the amount that it owed Delphi to $9,044,399.41 (the "Termination Payment").

13. Delphi made proper demand upon Barclays Bank for payment and delivery of the Termination Payment, which is due and payable to Delphi. In response, Barclays Bank asserted that it had a right to withhold payment of all or part of the Termination Payment to protect its alleged setoff rights on account of any indemnification payment obligations that may be owed to it by Delphi pursuant to, and in connection with: (i) the indemnity provisions of the Master Agreement; (ii) the pre-petition issuance of certain Delphi bonds (the "Bonds") by Barclays Capital Inc. ("Barclays Capital"), an affiliate of Barclays Bank; and (iii) claims that have been asserted against Barclays Capital in a class action filed in the Southern District of New York, styled *In re Delphi Corp. Securities Litigation, 1:05-cv-2637* (the "Litigation")[2].

14. Delphi has asserted that it does not owe any indemnification obligation to Barclays Bank because, *inter alia*, Barclays Bank was neither an issuer of the Bonds nor was it named as a defendant in the Litigation, and the issuance of the Bonds by Barclays Capital was wholly unrelated to the Master Agreement and the parties' rights and obligations thereunder.

B. **The Proposed Settlement Agreement**

15. Diligence and arms-length negotiations between Delphi and Barclays Bank regarding Delphi's demand for the return of the Termination Payment

---

[2] On February 6, 2006, the Litigation was consolidated with several other actions pending against Delphi and related entities and transferred to the United States District Court for the Eastern District of Michigan as part of the consolidated proceeding known as *In re Delphi Corporation Securities, Derivative and ERISA Litigation* (MDL No. 1725).

have produced the Settlement Agreement, subject to Bankruptcy Court approval, the significant portions of which are[3]:

    (a)    The Settlement Agreement will become effective on the date when an Order of the Court (the "Approval Order") approving the terms thereof becomes final and not subject to any stay or appeal (the "Effective Date");

    (b)    Within three (3) business days after the Effective Date, Barclays Bank will pay the full amount of the Termination Payment in the amount of $9,044,399.41 (the "Settlement Amount") to Delphi;

    (c)    Payment of the Settlement Amount by Barclays Bank to Delphi is in full and final satisfaction of any and all claims that Delphi may have against Barclays Bank for the return of the Termination Payment. Upon entry of the Approval Order and payment to Delphi of the Settlement Amount, subject only to the reservations set forth in paragraphs "4" and "7" of the Settlement Agreement, Delphi will release and waive any claims, charges, causes of action and avoidance actions it may assert or may have been able to assert against Barclays Bank, its affiliates, subsidiaries, shareholders, officers, directors, employees, attorneys and agents regarding the Termination Payment, including, but not limited to, any claims Delphi may assert or may have been able to assert against Barclays Bank under Chapter 5 of the Bankruptcy Code pertaining to the Termination Payment;

    (d)    Delphi and Barclays Bank agree that Barclays Bank is deemed to be a "Setoff Claimant" within the meaning of paragraph 18 of the Court's October 28, 2005 Order authorizing the Debtors to, among other things, obtain postpetition financing, utilize cash collateral, and grant adequate protection to prepetition secured parties (the "Final DIP Order") and paragraph 16 of the Court's January 5, 2007 Order authorizing, *inter alia*, the Debtors to refinance their postpetition financing and prepetition secured debt (the "Refinancing Order" and, together with the Final DIP Order, the "DIP Orders") and retains, and has not waived, any and all of Barclays Bank's rights pursuant to and in accordance with the DIP Orders pertaining to the Termination Payment, including the administrative claim and other forms of adequate protection described therein. Delphi retains, and has not waived, any and all rights to challenge and object to any claims or rights asserted by Barclays Bank, its successors and assigns pursuant to the DIP Orders; and

---

[3] This Motion provides a summary of the Settlement Agreement. The provisions of the Settlement Agreement govern the parties' agreement.

6

> (e) Except for the agreement memorialized by the Settlement Agreement, Delphi and Barclays Bank retain all of their rights, claims and defenses, including those concerning any claims filed by Barclays Bank in the Debtors' chapter 11 cases.

16. The Debtors have determined that the proposed Settlement Agreement is in the best interests of the Debtors' estates and, in reaching that conclusion, have considered, among other things, the cost, expense and delay associated with litigation regarding the Termination Payment and Barclay Bank's assertion of setoff and/or indemnification claims in connection with the Termination Payment, the result of which is not certain.

## APPLICABLE AUTHORITY

17. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. P. 9019(a). Indeed, settlements and compromises are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Commc'ns Corp., 327 B.R. 143, 159, adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

18. To approve a compromise and settlement under Bankruptcy Rule 9019(a), courts have held that the proposed compromise and settlement should be found to be fair and equitable, reasonable and in the best interests of the debtor's estate. See In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); Adelphia Commc'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn

7

Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)). Additionally, the decision to approve a particular settlement lies within the sound discretion of the Bankruptcy Court. See Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).

        19. In exercising its discretion, the Bankruptcy Court must make an independent determination that the settlement is fair and reasonable. Id. at 122. The Court, however, may consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. See In re Purofied Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993). In addition, the Bankruptcy Court should exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); see also Shugrue, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

        20. In determining whether to approve a proposed settlement, a Bankruptcy Court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983); accord Purofied Down Prods., 150 B.R. at 522 ("the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

        21. Bankruptcy Courts have applied the following factors in determining whether a settlement should be approved: (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (c) the proportion of creditors who do not object to, or who affirmatively support the proposed settlement; and (d) the extent to which the settlement is truly the product of arm's length bargaining and not the product of fraud

8

or collusion.  See In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); In re Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).  See also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002) (also incorporating as a factor the "likely difficulties in collection").

        22.      The relevant factors set forth above support a finding that the compromise that is embodied in the Settlement Agreement is fair and equitable, in the best interests of the Debtors and should be approved.  The Debtors and Barclays Bank propose to presently resolve all claims relating to the Debtors' recovery of the full amount of the Termination Payment and Barclay Bank's right of setoff and/or indemnification in connection with the Termination Payment consensually, without further litigation.  If these matters are not resolved through the proposed settlement, future litigation before this Court will result in additional expense for the Debtors with no certainty as to the outcome.

        23.      The benefits flowing from the settlement and compromise embodied in the Settlement Agreement -- including:  (a) the payment of the Settlement Amount;  (b) the elimination of a material risk of an unfavorable litigation outcome;  (c) the avoidance of the significant costs, uncertainties and delays likely attendant to any litigation and possible resulting judgment;  and (d) the waiver of any and all claims that Barclays Bank may possess against the Debtors regarding the Termination Payment, except for those concerning Barclays Bank's rights pursuant to and in accordance with the DIP Orders (including the forms of adequate protection described therein), all clearly demonstrate that approval of the Settlement Agreement is in the best interests of the Debtors and the Debtors' estates.

        24.      Additionally, the Settlement Agreement is the product of arm's length bargaining and negotiations between Delphi and Barclays Bank.  Accordingly,

the Debtors submit that the parties' proposed settlement and compromise is appropriate in light of the relevant factors and should be approved.

## NOTICE OF MOTION

25. Notice of this Motion is being given in accordance with the Eighth Supplemental Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by this Court on October 25, 2006 (Docket No. 5401). The Debtors submit that no other notice need be given.

## MEMORANDUM OF LAW

26. This Motion does not present any novel issues of law. Consequently, the Debtors respectfully request that the Court waive the requirement that they file a memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(b). The Debtors reserve the right, however, to file a separate memorandum of law in support hereof or in response to any objection to this Motion.

27. No previous motion for the relief sought herein has been made to this or any other Court.

**[Concluded on Following Page]**

**WHEREFORE**, the Debtors respectfully request that the Court approve the settlement and compromise by and among the Debtors and Barclays Bank by "So Ordering" the annexed Settlement Agreement, and grant such other and further relief as the Court deems just and appropriate

Dated: New York, New York
January 26, 2007

                                      DELPHI CORPORATION, et al.
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000

11