**Exhibit 1**

**Form Of Non-Disclosure Agreement**

## NON-DISCLOSURE AGREEMENT

In consideration of the disclosure of proprietary information by Delphi Automotive Systems LLC, (hereinafter "**Delphi**") to _____, having a place of business at _____ (hereinafter "**Recipient**"), which information relates to the potential sale by Delphi to Recipient of assets associated with the brake hose products manufactured by Delphi (hereinafter collectively "**Proprietary Information**"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Recipient agrees as follows:

1. Proprietary Information disclosed by Delphi to Recipient hereunder may be in written form or it may be electronically, orally, or visually presented. If in written form, it shall be identified as Proprietary Information by an appropriate legend indicating its proprietary or confidential nature. If disclosed electronically, orally or visually, it shall be identified by Delphi as Proprietary Information at the time of disclosure and shall be confirmed as such by written summary mailed to Recipient within thirty (30) days of the original disclosure.

2. Recipient agrees:

(a) not to disclose any such Proprietary Information received by it to any third party, exercising the same degree of care with regard to the protection of Proprietary Information as Recipient uses in protecting and preserving its own confidential and proprietary information, but at no time shall such degree of care be less than reasonable care; and

(b) to restrict the dissemination of such Proprietary Information received by it to only those employees, Affiliates, advisors, consultants, and/or agents who have a need to know such information in the performance of their duties related to the purpose of this Agreement, and to inform such employees and/or agents of Recipient's obligations under this Agreement. "**Affiliate**" means any entity owned or controlled by, under common ownership or control with, or which owns or controls a Party to this Agreement. Ownership or control shall mean ownership or control, directly or indirectly, of at least 50% of the voting stock or equity of the respective Party or entity, as the case may be; and

(c) not to use any such Proprietary Information received by it except as approved by Delphi.

3. The obligations of Recipient as set forth in this Agreement shall not apply to any Information which Recipient can establish by reasonably documented proof:

(a) has become generally available in the public domain without breach of this Agreement; or

(b) was in its possession prior to disclosure pursuant to this Agreement; or

(c) was developed independently without access by the developing person(s) to the Information received in confidence from Delphi; or

1

(d)   Delphi has disclosed to a third party without restriction; or

(e)   Recipient has received from a third party who is properly in possession thereof and who has not received the same through an agreement with Delphi or another party to maintain such information in confidence; or

(f)   Recipient is compelled to release by law or in the course of litigation by a third party, provided that Recipient provides Delphi with notice of such compulsion sufficiently in advance of disclosure so as to provide Delphi a reasonable time period to seek a protective order.

4.   Proprietary Information is and shall remain the property of Delphi, and at the request of Delphi, Recipient shall promptly return such Information to Delphi.

5.   Proprietary Information is provided "as is" and Delphi makes no warranties, whether express, implied or statutory, regarding the Proprietary Information, including accuracy, completeness, sufficiency, fitness for a particular purpose, and non-infringement.

6.   The Agreement shall not constitute the grant of any license under any patent, patent application, copyright, trademark, or other similar proprietary right, now or hereafter owned or controlled by Delphi.

7.   This Agreement shall be construed in accordance with the laws of the State of Michigan, without regard to its conflict of laws principles.  The parties acknowledge and agree that the forum for all disputes arising out of this Agreement shall be an appropriate federal or state court in Michigan.

8.   Without the prior written consent of Delphi, Recipient shall not disclose to any person:

(a)   the fact that any investigations, discussions, or negotiations are taking place or have taken place; or

(b)   the financial or other terms, conditions, and other facts with respect to the investigations, discussions, or negotiations, including the status thereof; or

(c)   the existence of this Agreement or any correspondence relating thereto; or

(d)   the fact that Recipient has received any Proprietary Information from Delphi or the nature of such Proprietary Information.

9.   This Agreement is effective when duly signed by Recipient and shall terminate one (1) year thereafter or upon written notice by either party to the other, whichever is first to occur.  The obligations of paragraphs 2, 5,  6, 7, 9, 10, and 11 hereof shall survive termination.

10.   This Agreement contains the entire agreement between the parties pertaining to the subject matter hereof.  No change, modification, alteration, or addition to any provision

2

      of this Agreement shall be binding unless in writing and signed by duly authorized representatives of both parties.

11.    The obligations set forth above shall be binding on all successors and assigns of Recipient.

IN WITNESS WHEREOF, Recipient has caused this Agreement to be executed by its duly authorized representative.

_____

By:    (signature) _____

       (printed name) _____

Title: _____

Date: _____

3