IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
　　　In re                          :     Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :     Case No. 05-44481 (RDD)
                                    :
　　　　　　　　　　　　　Debtors.      :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

　　　　I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

　　　　On January 26, 2007, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

　　　　　　Motion for Orders Under 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014(A) Approving (I) Bidding Procedures, (II) Certain Bid Protections, (III) Form and Manner of Sale Notices, and (IV) Sale Hearing Date and (B) Authorizing and Approving (I) Sale of Certain of Debtors' Assets Comprising Assets Exclusively Used in Debtors' Brake Hose Business Free and Clear of Liens, Claims, and Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities ("Brake Hose Business Sale Motion") (Docket No. 6742) [a copy of which is attached hereto as Exhibit D]

Dated: January 30, 2007

　　　　　　　　　　　　　　　　　　　　　　　　　_/s/ Evan Gershbein_
　　　　　　　　　　　　　　　　　　　　　　　　　Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 30th day of January, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: 　_/s/ Shannon J. Spencer_

Commission Expires: 　_6/20/10_

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Davis, Polk & Wardwell | Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4213 | 212-450-3213 | brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivirij@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

1/29/2007 3:57 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

1/29/2007 3:57 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

1/29/2007 3:57 PM
Master Service List Overnight Mail

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| A B & W Inc | | 157 Washington St | | Dorchester | MA | 02121-3603 | |
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 | |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 | |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 | |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 | |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 | |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 | |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 | |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 | |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 | |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 | |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 | |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 | |
| All Rite Industries Inc | | 470 Oakwood Rd | | Lake Zurich | IL | 60047-1515 | |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 | |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 | |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 | |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 | |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 | |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 | |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 | |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 | |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 | |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 | |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 | |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 | |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 | |
| Bae Industries Inc | | 24400 Sherwood Ave | | Center Line | MI | 48015-2023 | |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 | |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 | |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 | |
| Batesville Tool & Die Inc | | 177 Six Pine Ranch Rd | | Batesville | IN | 47006 | |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 | |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 | |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 | |
| Beaver Manufacturing Co | | 12 Ed Needham Dr | | Mansfield | GA | 30055 | |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 | |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 | |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 | |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 | |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 | |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 | |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 | |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 | |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 | |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 | |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 | |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 | |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 16

1/29/2007 3:54 PM
Brake Hose Special Parties 070126

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 | |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 | |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 | |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 | |
| BSI Management Systems | | 12110 Sunset Hills Rd Ste 200 | | Reston | VA | 20190-3231 | |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 | |
| Bunzl Plastic Inc | Alliance Plastics | PO Box 7284 | | Erie | PA | 16510-0284 | |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 | |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 | |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 | |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 | |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 | |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 | |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 | |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 | |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 | |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 | |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 | |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 | |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 | |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 | |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 | |
| Carby Corp | | PO Box 427 | | Watertown | CT | 06795-0427 | |
| Carius Tool Co Inc | | 3762 Ridge Rd | | Cleveland | OH | 44144-1125 | |
| Carlisle Plastics Co Inc | | PO Box 146 | | New Carlisle | OH | 45344-0146 | |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 | |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 | |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 | |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 | |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 | |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 | |
| Charter Manufacturing Co Inc | Charter Wire Div | 114 N Jackson St | | Milwaukee | WI | 53202 | |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 | |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 | |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 | |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 | |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 | |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 | |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 | |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 | |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 | |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 | |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 | |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 | |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 | |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 | |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 | |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 | |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 | |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 | |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 | |
| City Of Dayton | Department Of Water | 320 W Monument Dr | | Dayton | OH | 45402 | |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 | |
| City Of Dayton | Department Of Water | Division Of Wastewater Treatment | 2800 Guthrie Rd | Dayton | OH | 45418 | |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 | |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 | |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn | MI | 48126 | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 | |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 | |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 | |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 | |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 | |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 | |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 | |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 | |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 | |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 | |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 | |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 | |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 | |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 | |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 | |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 | |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 | |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 | |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 | |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 | |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 | |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 | |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 | |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 | |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 | |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 | |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 | |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 | |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 | |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 | |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 | |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 | |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 | |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 | |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 | |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 | |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 | |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 | |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 | |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 | |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 | |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 | |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 | |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 | |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 | |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 | |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 | |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 | |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterbury | CT | 06723 | |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 | |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 | |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 | |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 | |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 | |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 | |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 | |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 | |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 | |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 | |
| Cleveland Die & Manufacturing Co | | 20303 First St | | Cleveland | OH | 44130 | |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 | |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 | |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 | |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 | |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 | |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 | |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 | |
| Colorado Department Of Revenue | | | | Denver | CO | 80261-0006 | |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 | |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 | |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 | |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 | |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 | |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 | |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 | |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 | |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 | |
| Cooper Standard Automotive | Michael Verwilst | 39550 Orchard Hill Pl Dr | | Novi | MI | 48375 | |
| Cooper Standard Automotive Inc | Fluid Handling Systems Division | 2378 State Rte 345 Ne | | New Lexington | OH | 43764 | |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 | |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 | |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 | |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 | |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 | |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 | |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 | |
| Coupled Products Inc | | 200 E Wyandotte St | | Wharton | OH | 43359 | |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 | |
| Crown Packaging Corp | | 1885 Woodman Ctr Dr | | Dayton | OH | 45420 | |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 | |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 | |
| Cxm Inc | | 1601 S 54th Ave | | Cicero | IL | 60804-1892 | |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 | |
| Dan River Inc | Engineered Products Div | PO Box 2025 | | Covington | GA | 30015 | |
| Dana Fluid System Products | | 500 Raybestos Dr | | Upper Sandusky | OH | 43351 | |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 | |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 | |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 | |
| Dbg | | 110 Ambassador Dr | | Mississauga | ON | L5T 2J2 | Canada |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 | |
| Dc Office Of Tax & Revenue | | PO Box 96019 | | Washington | DC | 20090-6019 | |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 | |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 | |
| Dearborn County In | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 | |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 | |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 | |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 | |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 | |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 | |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 | |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 | |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 | |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 | |
| Dietech Tool & Mfg Inc | | 385 Industrial Pky | | Imlay City | MI | 48444 | |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 | |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 | |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 | |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 | |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 | |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 | |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 | |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 | |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 | |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 | |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 | |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 | |
| Elco Textron Inc | Textron Fastening Systems | 1111 Samuelson Rd | | Rockford | IL | 61109 | |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 | |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 | |
| Ernie Green Industries Inc | Darrel W Hollenbacher | 1785 Big Hill Rd | | Dayton | OH | 45439 | |
| Essexville City Of Bay | | | | Essexville | MI | | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 | |
| F & G Multi Slide Inc | | PO Box 39 | | Franklin | OH | 45005-0039 | |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 | |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 | |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 | |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 | |
| Filtrona Plc | Alliance Plastics Division | PO Box 7284 | | Erie | PA | 16510-0284 | |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 | |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 | |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 | |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 | |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 | |
| Fluid Motion Technologies | | 2565 Rena Rd | | Mississauga | ON | L4T-1G6 | Canada |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 | |
| Forsyth Twp Marquette | | | | Gwinn | MI | | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 | |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 | |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 | |
| Freudenberg Nok | Randy J Ross | 47690 East Anchor Court | | Plymouth | MI | 48170 | |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 | |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 | |
| Furon Co | | 210 Harmony Rd | | Mickleton | NJ | 08056-1209 | |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 | |
| Genasys Lc | General Motors Corporation | Manual Po Support Workgroup | PO Box 63070 | Phoeniz | AZ | 85082-3070 | |
| General Motors Corporation | Manual Po Support Workgroup | PO Box 63070 | | Phoeniz | AZ | 85082-3070 | |
| General Motors Of Canada Limited | Manual Po Support Workgroup | PO Box 63070 | | Phoeniz | AZ | 85082-3070 | |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 | |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 | |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 | |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 | |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 | |
| Gm De Mexico Sde Rl De Cv | Av Ejercito Nacional 843 | Col Granada | | Col Granada | DF | 11520 | Mexico |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 | |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 | |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 | |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 | |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 | |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 | |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 | |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 | |
| Guiltford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 | |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 | |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 | |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 | |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 | |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 | |
| Harco Brake Systems Inc | | PO Box 326 | | Englewood | OH | 45322-0326 | |
| Harco Industries Inc | | 707 Harco Dr | | Englewood | OH | 45322 | |
| Harco Industries Inc | | PO Box 335 | | Englewood | OH | 45322-0335 | |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 | |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 | |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 | |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 | |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 | |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 | |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 | |
| Hellermanntyton Corp | | PO Box 245017 | | Milwaukee | WI | 53224 | |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 | |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 | |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 | |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 | |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 | |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 | |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 | |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 | |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 | |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 | |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 | |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 | |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 | |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 | |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 | |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 | |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 | |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 | |
| Industrial Automation Controls Inc | President | 5719 Webster St | | Dayton | OH | 45414 | |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Itt Corp | Itt Automotive New Lex Plt | PO Box 650 | | New Lexington | OH | 43764 | |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 | |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 | |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 | |
| Jada Precision Plastics Co Inc | | 1667 Emerson St | | Rochester | NY | 14606 | |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 | |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 | |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 | |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 | |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 | |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 | |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 | |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 | |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 | |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 | |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 | |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 | |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 | |
| Kando Of Cincinnati Inc | Franklin Brazing & Metal Treating | 2025 Mckinley Blvd | | Lebanon | OH | 45036 | |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 | |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 | |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 | |
| Kecy Products Inc | | PO Box 150 | | Hudson | MI | 49247 | |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 | |
| Kendale Industries Inc | | 7600 Hub Pky | | Valley View | OH | 44125-5700 | |
| Kentucky Department Of Revenue | | | | Frankfurt | KY | 40619-0007 | |
| Kentucky Revenue Cabinet | | | | Frankfurt | KY | 40620 | |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 | |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 | |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 | |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 | |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 | |
| Komotech Co Ltd | | 305 3 Ma Shihwa Ind Com Chongwang Dong | | Shiheung Kyonggi Do | | 429450 | South Korea |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 | |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 | |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 | |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 | |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 | |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 | |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 | |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 | |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 | |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 | |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 | |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 | |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 | |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 | |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 | |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 | |
| Liteflex Llc | John Prikkel | 100 Holiday Dr | | Englewood | OH | 45322 | |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 | |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 | |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 | |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 | |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 | |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 | |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | 90054 | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 | |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 | |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 | |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 | |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 | |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 | |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 | |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 | |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 | |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 | |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 | |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 | |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 | |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 | |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 | |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 | |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 | |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 | |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 | |
| Magna Drivetrain | Steyr De Mexico Sa De Cv | Calle 1 No 104 Parque Ind Santa Maria | 25947 Ramos Arizpe | Coahuila | RFC | SME991215 7 NA | Mexico |
| Manager Of Finance | Jackson County Manager Of Finance | Bankrutpcy 415 E 12th St | | Kansas City | MO | 64106 | |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 | |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 | |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 | |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 | |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 | |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 | |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 | |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 | |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 | |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 | |
| Martinrea Industies | Bishop Circle Assembly Division | 2319 Bishop Circle | | Dexter | MI | 48130 | |
| Martinrea International Inc | Nat Rea | 30 Aviva Pk Dr | | Vaughan | ON | L4L 9C7 | Canada |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 | |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 | |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 | |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 | |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 | |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 | |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 | |
| Metal Component Engineering Shanghai | | No 750 Riyin Rd N | Waigaoqiao Free Trade Zone | Shanghai | | 200131 | China |
| Metprotech Inc | | PO Box 1311 | | Dayton | OH | 45401-1311 | |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 | |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 | |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 | |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 | |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 | |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 | |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 | |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 | |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 | |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 | |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 | |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 | |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 | |
| Mnp Corp | | PO Box 189002 | | Utica | MI | 48318 | |
| Modatek Systems | A Division Of Magna Structural Systems Inc | 400 Chisholm Dr | | Milton | ON | L9T 5V6 | |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 | |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 | |
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 | |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 | |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 | |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Montgomery / Greene County Lepc | One Dayton Ctr | One South Main St | Ste 260 | Dayton | OH | 45402 | |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 | |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 | |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 | |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 | |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 | |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 | |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 | |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 | |
| Moore Alliance Inc | Michael L Mudd | 2011 Madison Rd | | Cincinnati | OH | 45208 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 16

1/29/2007 3:54 PM
Brake Hose Special Parties 070126

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 | |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 | |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 | |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 | |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 | |
| National Manufacturing Services Inc | | 98 Quality Ln | | West Carrollton | OH | 45449 | |
| National Response Center | C/o United States Coast Guard G Opf | Room 2611 | 2100 2nd St Sw | Washington | DC | 20593-0001 | |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 | |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 | |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 | |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 | |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 | |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 | |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 | |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 | |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 | |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 | |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 | |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 | |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 | |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 | |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 | |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 | |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 | |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 | |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 | |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 | |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 | |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 | |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 | |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 | |
| Oem/miller Corporation | | 1300 Danner Dr | | Aurora | OH | 44202-9284 | |
| Oepa | Attn Derr/emergency Response Unit | 50 West Town St Ste 700 | PO Box 1049 | Columbus | OH | 43216-1049 | |
| Oepa Southwest District Office | | 401 E Fifth St | | Dayton | OH | 45402 | |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 | |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 | |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 | |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 | |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 | |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 | |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 | |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 | |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 | |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 | |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 | |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 16

1/29/2007 3:54 PM
Brake Hose Special Parties 070126

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---------|---------|----------|----------|------|-------|-----|---------|
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 | |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 | |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 | |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 | |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 | |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 | |
| Outokumpu Copper Valleycast Llc | Valley Cast Inc | PO Box 1714 | | Appleton | WI | 54912 | |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 | |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 | |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 | |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 | |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 | |
| Parker Hannifin Corp | Parker Seal Co | PO Box 11751 | | Lexington | KY | 40512-1751 | |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 | |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 | |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 | |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 | |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 | |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 | |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 | |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 | |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 | |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 | |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 | |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 | |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 | |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 | |
| Pridgeon & Clay Inc | | 50 Cottage Grove Sw | | Grand Rapids | MI | 49507-1622 | |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 | |
| Progressive Stamping Co De Inc | | 2807 Samoset Rd | | Royal Oak | MI | 48073-1726 | |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 | |
| Regional Air Pollution Control Agency Rapca | | 117 South Main St | | Dayton | OH | 45422 | |
| Republic Engineered Products Llc | | 3770 Embassy Pky | | Akron | OH | 44333 | |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 | |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 | |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 | |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 | |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 | |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 | |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 | |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 | |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 | |
| S&z Tool & Die Co Inc | L&j Tool & Die | 3180 Berea Rd | | Cleveland | OH | 44111-1595 | |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 | |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 | |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 | |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 | |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 | |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 | |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 | |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Sandram Fasteners Ltd | C/o Project Management Inc | 51548 Filomena Dr | | Utica | MI | 48315 | |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 | |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 | |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 | |
| Saturn | General Motors Corporation | Manual Po Support Workgroup | PO Box 63070 | Phoeniz | AZ | 85082-3070 | |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 | |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 | |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 | |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 | |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 | |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 | |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 | |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 | |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 | |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 | |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 | |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 | |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 | |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 | |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 | |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 | |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 | |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 | |
| Sperry & Rice Manufacturing Co Llc | | 9146 Us 52 | | Brookville | IN | 47012-9607 | |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 | |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 | |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 | |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 | |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 | |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 | |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 | |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 | |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 | |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 | |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 | |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 | |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 | |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 | |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 | |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 | |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 | |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 | |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 | |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 | |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 | |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 | |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 | |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 | |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 | |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 | |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 | |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 | |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 | |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 | |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 | |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 | |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 | |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 | |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 | |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 | |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 | |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Colle | PO Box 7100 | Milton | FL | 32572 | |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 | |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 | |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 | |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 | |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 | |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 | |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Textron Inc | Textron Fastening Systems | 29201 Telegraph Rd Ste 606 | | Southfield | MI | 48034 | |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 | |
| Thyssenkrupp Budd Systems Llc | | 175 National Pk Dr | | Fowlerville | MI | 48836 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 16

1/29/2007 3:54 PM
Brake Hose Special Parties 070126

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Ti Group Automotive Systems Llc | | 26950 23 Mile Rd Ste 200 | | Chesterfield | MI | 48051 | |
| Ti Group Automotive Systems Llc | Attn Corporate Accounts Payable | PO Box Drawer Dd | | Hidalgo | TX | 78557-3033 | |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 | |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 | |
| Tower Automotive | | 5640 Pierson Rd | | Lansing | MI | 48917 | |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 | |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 | |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 | |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 | |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 | |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 | |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 | |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 | |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 | |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 | |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 | |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 | |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 | |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 | |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 | |
| Trelleborg Automotive | George Caplea | 400 Aylworth Ave | | South Haven | MI | 49090 | |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 | |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 | |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 | |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 | |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 | |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 | |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 | |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 | |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 | |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Us Epa Region 5 | | 77 West Jackson Blvd | | Chicago | IL | 60604-3590 | |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 | |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 | |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 | |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 | |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 | |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 | |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 | |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 | |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 | |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 | |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 | |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 | |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 | |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 | |

Delphi Corporation
Brake Hose Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 | |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 | |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 | |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 | |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 | |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 | |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 | |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 | |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 | |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 | |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 | |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 | |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 | |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 | |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 | |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 | |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 | |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 | |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 | |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 | |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 | |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 | |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 | |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 | |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 | |
| Wright Bros Aero Inc | | 3700 Mccaluey Dr | Dayton International Airport | Vandalia | OH | 45377 | |
| Wv Secretary Of State | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | | Charleston | WV | 225305 | |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 | |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 | |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 | |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 | |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 | |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 | |
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 | |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 16

1/29/2007 3:54 PM
Brake Hose Special Parties 070126

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivin@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

1/29/2007 3:57 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

1/29/2007 3:57 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

1/29/2007 3:57 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com / dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Madison County (Indiana) Treasurer |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Michael J Alerding Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com malerding@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Industries |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel to Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale, Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | (230) 862-8231 | (203) 629-1977 | 203-862-8200 / 203-629-1977 mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | | Southaven | MS | 38671 | | | | akatz@entergy.com | |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | frikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinprocter.com | Counsel to UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinprocter.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | 200 Park Avenue | | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Williams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-1246 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions Nos. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney. com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah N. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb / Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 / 616-831-1726 | 616-988-1748 / 616-988-1726 | sarbt@millerjohnson.com / wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc. |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel to Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Orrick, Herrington & Sutcliffe LLP | Anthony Princi Esq Thomas L Kent Esq | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5000 | 212-506-5151 | aprinci@orrick.com tkent@orrick.com | Counsel to Ad Hoc Committee of Trade Claimants |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, LLC |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel to  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  Ie Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Madison L. Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | | 100-8322 | Japan | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel to National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 17

1/29/2007 3:55 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | Counsel to Lunt Mannufacturing Company |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

1/29/2007 3:55 PM
Delphi 2002 lists US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy G. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | 212-476-4770 | Counsel to SPCP Group LLC |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

1/29/2007 3:55 PM
Delphi 2002 lists US Mail

# EXHIBIT D

**Bidding Procedures Hearing Date And Time: February 15, 2007 at 10:00 a.m.**
**Bidding Procedures Objection Deadline: February 8, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time: March 22, 2007 at 10:00 a.m.**
**Sale Hearing Objection Deadline: March 15, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


     - and -


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                              :
         In re                                :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No. 05-44481 (RDD)
                                              :
                                              :      (Jointly Administered)
         Debtors.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 (A) APPROVING (I) BIDDING PROCEDURES, (II) CERTAIN BID
PROTECTIONS, (III) FORM AND MANNER OF SALE NOTICES, AND (IV) SALE
HEARING DATE AND (B) AUTHORIZING AND APPROVING (I) SALE OF CERTAIN
OF DEBTORS' ASSETS COMPRISING ASSETS EXCLUSIVELY USED IN DEBTORS'
BRAKE HOSE BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES,
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>


("BRAKE HOSE BUSINESS SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for orders under 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 approving (i) the bidding procedures set forth herein and attached hereto as Exhibit A (the "Bidding Procedures"), (ii) the granting of certain bid protections, (iii) the form and manner of sale notices (the "Notice Procedures"), and (iv) the setting of a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") comprising substantially all of the assets exclusively used in the brake hose product line of DAS LLC (as defined below) (the "Business") and certain intellectual property of DTI (as defined below) related to the Business (the "Purchased Intellectual Property," together with the Acquired Assets, the "Purchased Assets") for $9.8 million and other consideration, free and clear of liens, claims, and encumbrances, to Harco Manufacturing Group, LLC (the "Purchaser") pursuant to the Sale And Purchase Agreement dated January 25, 2007 by and among Delphi Automotive Systems LLC ("DAS LLC"), Delphi Technologies, Inc. ("DTI" and, collectively with DAS LLC, the "Selling Debtor Entities"), the Purchaser, and Harco Brake Systems, Inc. (the "Agreement")[1] or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Contracts") to the Purchaser or the Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchaser or the Successful Bidder.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

2

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

   1. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

   2. On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the Office of the United States Trustee appointed an official committee of equity security holders (the "Equityholders' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

   3. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

   4. The statutory predicates for the relief requested herein are sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    <u>Current Business Operations Of The Debtors</u>

   5. Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

3

approximately $17.1 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from this

Court.

6.       The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.       Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to the Company in accordance with the terms of a

Master Separation Agreement between Delphi and GM.  In connection with these transactions,

Delphi accelerated its evolution from a North American-based, captive automotive supplier to a

global supplier of components, integrated systems, and modules for a wide range of customers

and applications.  Although GM is still the Company's single largest customer, today more than

half of Delphi's revenue is generated from non-GM sources.

C.       Events Leading To The Chapter 11 Filing

8.       In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

---

[2]       The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

4

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

9.      The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

11.      On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
       valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
       loss in calendar year 2004 was $482 million.

5

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

          12.      On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management,

L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and

UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and

Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred

and common equity in the reorganized Delphi to support the Debtors' transformation plan.  The

Equity Purchase and Commitment Agreement is subject to the completion of due diligence,

satisfaction or waiver of numerous other conditions (including Delphi's achievement of

consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by

either Delphi or the Plan Investors of certain termination rights.  The second agreement was a

plan framework support agreement (the "Plan Framework Support Agreement") with the Plan

Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of

the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors

and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues,

and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework

Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements

with their U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute,

deliver, and implement the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement (Docket No. 6589).  Although much remains to be accomplished

in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a

course that should lead to a consensual resolution with their U.S. labor unions and GM while

providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    On January 25, 2007, the Selling Debtor Entities and the Purchaser

entered into the Agreement which provides for the Sale of the Purchased Assets, which comprise

the assets exclusively used in the Business, to the Purchaser, an affiliate of the contract

assembler of DAS LLC's brake hose assemblies, for $9.8 million and other consideration.  The

7

proposed Sale is subject to approval by this Court and additional competitive bidding pursuant to

the proposed Bidding Procedures.  By this Motion, the Debtors[4] seek entry of two orders.  First,

at the omnibus hearing scheduled to be held on February 15, 2007, the Debtors request entry of

an order substantially in the form attached hereto as <u>Exhibit B</u> (the "Bidding Procedures Order")

approving the Bidding Procedures, Notice Procedures, and certain bid protections to be provided

to the Purchaser pursuant to the Agreement and as described more fully herein.  Second, subject

to the terms of the Bidding Procedures Order, at the omnibus hearing scheduled to be held on

March 22, 2007, the Debtors request entry of an order substantially in the form attached hereto as

<u>Exhibit C</u> (the "Sale Order") authorizing and approving the Sale, the assumption and assignment

of the Assigned Contracts, and the assumption of the Assumed Liabilities.

16.    As more fully set forth below, after a comprehensive strategic review, the

Debtors believe that the Sale is its best opportunity under the circumstances to maximize the

underlying core value of the Business and that, therefore, the sale is in the best interests of their

estates and their creditors.

<u>Basis For Relief</u>

A.    <u>The Brake Hose Business</u>

17.    The Debtors supply a complete array of brake hose assemblies, including

brake hoses and fittings, brackets, and clips, for a wide range of vehicles from small automobiles

to mid-size trucks.  These brake hose assemblies are specifically designed to transmit hydraulic

brake fluid from a vehicle's rigidly mounted brake pipes to a caliper or drum brake, allowing the

brake/tire combination the flexibility to move throughout its full range of operation.  The

---

[4]    For the purpose of convenience, references to "the Debtors" or "Delphi" herein shall mean, as the context
requires, (i) DAS LLC, the Debtor entity that manufactures and sells brake hose products for the Business
and enters into contracts in connection with the Business or (ii) DTI, the Debtor entity that holds the
intellectual property relating to the Business.

Debtors' brake hose assemblies are designed, constructed, and tested to withstand extremes of

weather and driving conditions, including water, salt, road dirt, and temperature changes, and the

assemblies exceed engineering and safety standards.

18.    The Debtors' brake hoses consist of a number of layers, beginning with an

inner tube layer made from a rubber compound manufactured by the Debtors and covered with

two layers of braid.  The hose is then wrapped in a tough sheath of rubber and brackets and

armoring and end fittings are added to complete the brake hose assembly.  For installation of

brake hoses onto vehicles, the Debtors provide connective end fittings, tube and block fittings,

brass banjo and junction block fittings, and a wide variety of brackets and clips.

19.    The Debtors, in operating the Business as part of the Chassis Systems

Product Business Unit within their Automotive Holdings Group Division, mix the rubber hose

compound and manufacture the rubber hose and fittings at their Home Avenue facility in

Dayton, Ohio.[5]  The Debtors then deliver those brake hose components to Harco Brake Systems,

Inc. ("Harco"), Delphi's brake hose contract assembler in Clayton, Ohio and an affiliate of the

Purchaser, for final assembly prior to direct shipment by Harco to GM, Delphi's sole OEM

customer of the Business.  The Debtors are a Tier I supplier to GM and a Tier II supplier to

several Tier I brake hose assembly suppliers to GM.

20.    The brake hose product line has been an ongoing business concern since

1936.  In 1997, the brake hose final assembly operation was moved to Harco.  Because Delphi's

long term supply agreement with Harco expired at the end of 2004, DAS LLC and Harco

executed an extension effective January 1, 2005 and continuing until December 31, 2007 under a

---

[5]    The Home Avenue facility also fabricates the rubber compound used in the Delphi Powertrain Mounts
product line and.  Under a contractual relationship, the facility will continue to manufacture that compound
for Harco for up to 18 months after the Closing..

"Brake Hose Assembly Contract Policy Statement" (the "Extension").  The Extension provides,
among other things, for DAS LLC to pay Harco $2.5 million in cancellation costs if the brake
hose business is in-sourced or completely exited by DAS LLC.  The Extension also gives Harco
a right of first refusal to buy the brake hose business before any alternative purchaser is
considered by DAS LLC.  If Harco were to decide not to purchase the Business, then DAS LLC
would be responsible only for transfer costs to the new supplier.  Under the terms of the
Agreement, the Purchaser or an alternative purchaser of the Business must assume the Extension
and the Debtors would have no further obligations thereunder.

B.      Factors Leading To The Sale

        21.     Although the Debtors believe that the brake hose product line is
fundamentally strong, the Business does not fit within the Debtors' anticipated product portfolio
under their transformation plan.  In particular, the Debtors have determined that they lack a
global manufacturing presence in this particular product line to grow the Business.  In addition,
the Debtors lack the fitting capacity and designs for brake hose assemblies in non-GM vehicles.

        22.     The Debtors believe, however, that as a standalone business,
unencumbered by legacy costs, the brake hose product could be a profitable and competitive
business line.  The Debtors have therefore determined that the value of the Business will be
maximized through the divestiture of its assets.  To achieve that goal, the Debtors are willing to
support transition of the Business to a prospective buyer.

        23.     In mid-2005, the Debtors sought potential acquirers of the Business.  In
late 2005, the Debtors identified six potential bidders based upon those companies' strategic fit,
financial characteristics, and their ability to satisfy customer requirements.  The Debtors
determined that three of the six potential bidders would satisfy such requirements.

10

24.    The Debtors assembled an electronic data room and prepared management

presentations to provide for an organized and efficient transmission of significant amounts of

data related to the Business.  During June 2005, management presentations were made to three of

the potential bidders.  Following this initial round of diligence, on or about June 23, 2006, three

of the potential bidders submitted proposals for the acquisition of the Business.  The Debtors

evaluated the terms and benefits of each proposal, as well as the benefits of other alternatives.

The Debtors, in their business judgment, concluded that the proposal from the Purchaser, which

formed the basis of the Agreement attached hereto as Exhibit D, offered the most advantageous

terms and the greatest economic benefit to the Debtors.

25.    The Purchaser's offer is the highest and best offer because not only is the

Purchaser offering the highest amount of consideration for the Business but also because of

certain intangible factors.  The Purchaser and its affiliate, Harco, are experienced in the field of

brake hose manufacture and have assembled products for the Business and provided other

services to the Business since 1997.  The Debtors have determined that a sale of the Business to

an experienced brake hose manufacturer such as the Purchaser would cause less disruption to

customers, thereby maximizing the value of the Business.  Moreover, pursuant to the Agreement

the Debtors will assume current executory agreements with Harco, curing the prepetition amount

owed to Harco in an amount approximating $1.6 million.

C.    The Need For An Expedited Sale Process

26.    As noted above, the Debtors face decreased revenues from brake hose

sales.  The Debtors have determined, however, that as a standalone product line, unencumbered

by legacy costs, the brake hose product could be a profitable and competitive business line.  In

light of the Debtors' desire to focus their available free cash on investments in those business

11

lines which are more likely to comprise their restructured product portfolio, there is a risk of

value erosion if a sale of the brake hose business is not effected promptly.  The overall value of

the Business will be maintained and maximized through an expedited sale process."

D.      The Agreement

      27.      Pursuant to the Agreement, (a) the Selling Debtor Entities will (i) sell the

Acquired Assets for $9.75 million and other consideration, free and clear of all liens, claims,

interests, and encumbrances, (ii) sell the Purchased Intellectual Property for $50,000.00, free and

clear of all liens, claims, interests, and encumbrances, and (iii) assume and assign the Assigned

Contracts to the Purchaser and (b) the Purchaser will assume the Assumed Liabilities.

      28.      The significant terms of the Agreement are as follows:[6]

      (a)      General Terms.  The Purchaser will acquire the Purchased Assets, which
comprise substantially all of the assets exclusively used by the Business through an asset sale.
Among others, certain bailed assets, personnel records, financial assets, contracts, tax refunds,
intellectual property, personnel and medical records, real property, services offered under a
transition services agreement, manufacturing services agreement, or a rubber supply agreement,
benefits arising under insurance policies, and the Debtors' rights under chapter 5 of the
Bankruptcy Code are excluded from the Purchased Assets.[7]

      (b)      Bankruptcy Approval.  The Sale is subject to approval by this Court and
competitive bidding pursuant to the Bidding Procedures.

      (c)      Documentation.  The Sale will be effected pursuant to the Agreement and
related documentation.  At the closing, the Selling Debtor Entities and the Purchaser will enter
into, among others, the following agreements: (i) an Intellectual Property Assignment granting
the Purchaser certain rights in certain Purchased Intellectual Property owned by DTI, (ii) an
indemnity escrow agreement by and among the Selling Debtor Entities, the Purchaser, and an
Escrow Agent for the purposes described below, (iii) a Manufacturing Services Agreement, (iv)
a Rubber Compound Supply Agreement, and (v) a Transition Services Agreement.

---

[6]    In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of
    the Agreement are controlling.

[7]    Copies of the (i) schedules to the Agreement and (ii) the above-referenced transition services agreement,
    manufacturing services agreement, and rubber supply agreement are available upon request to parties-in-interest
    who can show that they would be impacted by the relief requested by this Motion.

(d)    Purchase Price.  The purchase price to be paid by the Purchaser is $9.8 million, which is an aggregate of $9.75 million to be paid by the Purchaser to DAS LLC for the Acquired Assets and $50,000.00 to be paid by the Purchaser to DTI for the Purchased Intellectual Property.

(e)    Deposit Escrow.  Upon execution of the Agreement, the Purchaser will place $500,000.00 of the purchase price into an escrow account.  Upon Closing, or if the Agreement is terminated prior to Closing because of certain actions of the Purchaser, the Debtors are entitled to keep the funds in the escrow account.  Any such payment shall constitute the Debtors' sole recourse in the event that the Purchaser terminates the Agreement prior to the date of the Auction (as defined below).  Upon any breach by the Purchaser on the date of or after the date of the Auction, the Selling Debtor Entities will be entitled to all available remedies in law or equity.  If the Agreement is terminated for any other reason, the escrow amount will be returned to the Purchaser.

(f)    Representations And Warranties.  Pursuant to the Agreement, the Selling Debtor Entities will provide comprehensive representations and warranties relating to the Sale and the Purchased Assets.  The representations and warranties of the Selling Debtor Entities will survive the closing of the Sale and generally expire on the first anniversary of the date of closing. The Purchaser will also provide standard representations and warranties which will survive the closing of the Sale and expire on the first anniversary of the date of closing.

(g)    Covenants.  Between the date of signing the Agreement and the closing, the Selling Debtor Entities will be required to, among other things: (i) carry on their business in substantially the same manner as they have heretofore and perform in all material respects all of its obligations under certain enumerated contracts, (ii) use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, and employees, and (iii) use commercially reasonable efforts to take all actions necessary, proper, or advisable to effectuate the Sale in accordance with the Agreement.  For a period of two years after the closing, the Selling Debtor Entities will be required not to take certain actions which would place it in competition with the Purchaser with respect to the Business.

(h)    Indemnification.  Upon the Closing, the Purchaser will place $750,000.00 of the purchase price in to an indemnity escrow account (the "Indemnity Escrow Account").  The Selling Debtor Entities have agreed to indemnify the Purchaser for damages related to the following items: (i) those liabilities and excluded assets retained by the Debtors at closing, but only to the extent the Sale Order, the Bankruptcy Code, and other applicable Laws fail to discharge liabilities with respect to any claims brought by a third party against the Purchaser relating thereto, (ii) the Selling Debtor Entities' breach of any representation or warranty in the Agreement, (iii) a breach of any agreement or covenant of the Selling Debtor Entities in the Agreement, and (iv) failure by the Debtors to pay any amount owed with respect to a purchase money security interest under the Permitted Liens.  The sole and exclusive recourse of the Purchaser with respect to breaches of representations and warranties described above is a claim against the Indemnity Escrow Account described above.

(i)    Closing Conditions.  In addition to certain other customary closing conditions relating to bankruptcy court approvals and regulatory matters, the obligation of the

13

Purchaser to close the Sale is subject to the satisfaction of the following conditions: (i) the performance in all respects by the Selling Debtor Entities of their covenants under the Agreement and (ii) the accuracy of the Selling Debtor Entities' representations and warranties in all material respects. Furthermore, the obligation of the Purchaser and the Selling Debtor Entities to close the Sale is subject to the Debtors' obtaining the waiver by the United Steel Workers of America Union, Local 871, AFL-CIO/CLC (the "USW") (the union representing the Business's hourly workforce) of any "no-sale" clause contained in any agreement between Delphi and the USW.

(j)    Termination.  The Agreement may be terminated in the following circumstances (but not by a party that is in breach of the Agreement): (i) upon mutual written consent of the Debtors and the Purchaser, (ii) by either the Debtors or the Purchaser if consummation of the Sale would violate any final non-appealable order of any regulatory governmental entity other than this Court, (iii) by either the Selling Debtor Entities or the Purchaser if the Debtors consummate an alternative transaction, (iv) by either the Selling Debtor Entities or the Purchaser if the closing has not occurred within 90 days after entry of the Sale Order, (v) by either the Debtors or the Purchaser if the Sale Order is not entered by this Court by May 25, 2007 or if the Sale Order is subject to a stay or injunction, (vi) by the Purchaser within ten business days of becoming aware that a material adverse effect has occurred and is continuing, or (vii) by the Selling Debtor Entities if they accept or are about to accept a qualified bid at the auction other than that of the Purchaser (provided that such termination under (vii) will be of no effect unless the Selling Debtor Entities enter into an agreement with respect to such qualified bid within two business days of termination and subsequently complete the Sale pursuant thereto).

(k)    Break-up Fee.  Subject to Court approval, the Selling Debtor Entities will be required to pay a Break-Up Fee to the Purchaser in the amount of $294,000.00 – 3.0% of the preliminary purchase price – if the Selling Debtor Entities sell, transfer, lease, or otherwise dispose of, directly or indirectly, including through an asset sale, stock sale, merger, or other similar transaction, all or substantially all or a material portion of the Acquired Assets in a transaction or a series of transactions with one or more parties other than the Purchaser.

(l)    Expense Reimbursement.  Subject to Court approval, the Selling Debtor Entities will be required to reimburse the Purchaser's reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Agreement in an amount not to exceed $100,000.00 to the Purchaser upon (i) a termination of the Agreement by reason of the failure of the Closing to occur within 90 days after entry of the Sale Order or (ii) a termination of the Agreement by reason of (A) the failure of the Sale Order to be entered on or before May 25, 2007 or (B) the Sale Order being subject to a stay or injunction, in any case provided that the Purchaser is not then in breach of the Agreement for which the Selling Debtor Entities had previously notified the Purchaser.  The Purchaser has agreed that, in the event that it is entitled to receive both the break-up fee and the expense reimbursement under the Agreement, the Purchaser shall only be entitled to receive the larger of the two and in no case shall be entitled to receive payment of both.

14

(m)    <u>Assumption Of Extension</u>.  Upon the Closing, the Successful Bidder must assume the Extension.  Following such assumption, the Debtors would have no further obligations under the Extension.

E.    <u>Workforce Provisions And Union Waiver Of No-Sale Clause</u>

29.    The Agreement does not provide for a transfer of the Business's workforce to the Purchaser.  Under a manufacturing services agreement to be entered into at the Closing, hourly employees of the Debtors will continue to produce brake hose products for a maximum period of 12 months.  Under a transition services agreement, salaried employees of the Business will support such activities for a similar period.

30.    As noted above, the Business's hourly workforce is represented by the USW.  The Debtors are negotiating with the USW to obtain the USW's waiver of any no-sale clause contained in agreements between Delphi and the USW, with the objective of obtaining such waiver prior to the Closing.

F.    <u>Bidding Procedures</u>

31.    The Sale of the Purchased Assets is subject to higher or otherwise better offers pursuant to the Bidding Procedures.  Accordingly, the Debtors seek approval of the Bidding Procedures for the Sale of the Purchased Assets.  The Debtors have determined that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Purchased Assets for the benefit of the Debtors' estates, creditors, and other interested parties.

32.    The Bidding Procedures describe, among other things, the assets available for sale, the manner in which bidders and bids become "qualified," the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any

15

subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s), and

this Court's approval thereof (collectively, the "Bidding Process").

33.    The proposed Bidding Procedures attached hereto as <u>Exhibit A</u> provide, in

relevant part, as follows:[8]

(a)    <u>Assets To Be Sold</u>:  The assets proposed to be sold are the
Purchased Assets.

(b)    <u>"As Is, Where Is"</u>:  The sale of the Purchased Assets will be on an
"as is, where is" basis and without representations or warranties of any kind, nature, or description
except as set forth in the Agreement or the purchase agreement of a Successful Bidder.

(c)    <u>Free Of Any And All Claims And Interests</u>: The Purchased Assets
are to be sold free and clear of all pledges, liens, security interests, encumbrances, claims,
charges, options, and interests thereon (collectively, the "Claims and Interests") and the Claims
and Interests are to attach to the net proceeds of the sale of such Purchased Assets except as set
forth in the Agreement or the purchase agreement of a Successful Bidder.

(d)    <u>Participation Requirements</u>:  To ensure that only bidders with a
serious interest in the purchase of the Purchased Assets participate in the Bidding Process, the
Bidding Procedures provide for minimal requirements for a potential bidder to become a
"Qualified Bidder:"  (i) executing a confidentiality agreement substantially in the form attached to
the Bidding Procedures, (ii) providing the Debtors with certain financial assurances as to such
bidders' ability to close a transaction, and (iii) submitting a preliminary proposal reflecting the
purchase price range, any Purchased Assets expected to be excluded, the structure and financings
of the transaction, any anticipated regulatory approvals, anticipated time frame and any
anticipated impediments to obtaining such approval, any additional conditions to closing it may
wish to impose, and the nature and extent of any due diligence it may wish to conduct and the
date by which such due diligence will be completed.

(e)    <u>Due Diligence</u>:  All Qualified Bidders an opportunity to participate
in the diligence process.  The Debtors will coordinate the diligence process and provide due
diligence access and additional information as reasonably requested by any Qualified Bidders.

(f)    <u>Assumption Of Extension</u>.  The Debtors expect that the Purchaser
or an alternative purchaser of the Business must assume the Extension, which is an extension of
the Debtors' long term supply agreement with Harco, until December 31, 2007.  Following such
assumption, the Debtors would have no further obligations under the Extension.

---

[8]    In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the
provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary
have the meanings ascribed to them in the Bidding Procedures.

16

(g)    Bid Deadline:  A bid deadline of 11:00 a.m. (prevailing Eastern time) on March 2, 2007 (the "Bid Deadline") has been established.  As soon as reasonably practicable following receipt of each Qualified Bid, the Debtors will deliver to the  Purchaser and its counsel complete copies of all items and information set forth in section (g) below.

(h)    Bid Requirements:  All bids must include the following documents: (i) a letter stating that the bidder's offer is irrevocable for the period set forth in the Bidding Procedures, (ii) an executed copy of the Agreement, together with all schedules, marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) a good faith deposit of $500,000.00, and (iv) satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

(i)    Qualified Bids: To be deemed a "Qualified Bid," a bid must be received by the Bid Deadline and, among other things, must (i) be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtors than those contained in the Agreement, (ii) not be contingent on obtaining financing or the outcome of unperformed due diligence, (iii) have a value greater than the purchase price reflected in the Agreement, plus the amount of the Break-Up Fee, plus $500,000.00 initially, then in increments of $250,000.00, (iv) not be conditioned on bid protections, other than those contemplated in the Bidding Procedures, (v) contain acknowledgements and representations as set forth in the Bidding Procedures, and (vi) include a commitment to consummate the purchase or the Purchased Assets within not more than 15 days after entry of a bankruptcy court order approving such purchase.  With certain limited exceptions, the Debtors retain the sole right to deem a bid a Qualified Bid, if such bid does not conform to one or more of the aforementioned requirements; provided, however, that such bid must have a value greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus $500,000.00, taking into account all material terms of any such bid.  Each Qualified Bid other than that of the Purchaser will be referred to as a "Subsequent Bid."

(j)    Conduct Of Auction: If the Debtors receive at least one Qualified Bid in addition to that of the Purchaser, they will conduct an auction (the "Auction") of the Purchased Assets at 10:00 a.m. (prevailing Eastern time) on or before March 16, 2007, or such later time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than March 20, 2007), in accordance with the procedures outlined in the Bidding Procedures which include: (i) attendance at the Auction will be limited to specified parties as outlined in the Bidding Procedures, (ii) at least two business days prior to the Auction, each Qualified Bidder with a Qualified Bid must inform the Debtors whether it intends to participate in the Auction and at least one business day prior to the Auction the Debtors must provide such bidders with copies of the Qualified Bid which the Debtors believe is the highest or otherwise best offer for the Purchased Assets, (iii) all Qualified Bidders will be entitled to be present for all Subsequent Bids, and (iv) bidding at the Auction will begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $250,000, and conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids.

17

(k)    <u>Selection Of Successful Bid</u>:  As soon as practicable after the conclusion of the Auction, the Debtors will review each Qualified Bid and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid") and the bidder making such bid (the "Successful Bidder").  The Debtors will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by this Court after the hearing (the "Sale Hearing").

(l)    <u>Sale Hearing</u>: The Debtors request that the Sale Hearing be scheduled for March 22, 2007 at 10:00 a.m. (prevailing Eastern time) and that the Sale Hearing may be adjourned or rescheduled by the Debtors without notice other than by an announcement of the adjourned date at the Sale Hearing.  If no Qualified Bids other than that of the Purchaser are received, the Debtors will proceed with the sale of the Purchased Assets to the Purchaser following entry of the order approving the Sale.  If the Debtors do receive additional Qualified Bids, then at the Sale Hearing, the Debtors will seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid" and such bidder, the "Alternate Bidder").  A bid will not be deemed accepted by the Debtors unless and until approved by theis Court.  Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will effectuate a sale to the Alternate Bidder without further order of this Court.

(m)    <u>Return Of Good Faith Deposits</u>:  Good faith deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open until two business days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the good faith deposit submitted by the Successful Bidder, together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder.  If a Successful Bidder fails to consummate an approved sale, the Debtors will not have any obligation to return such good faith deposit and such deposit will irrevocably become property of the Debtors.  On the Return Date, the Debtors will return the good faith deposits of all other Qualified Bidders, together with the accrued interest thereon.

(n)    <u>Reservation Of Rights</u>:  The Debtors, after consultation with the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time, any bid (other than the Purchaser's bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estate, and their creditors as determined by the Debtors in their sole discretion.

G.    <u>Bid Protections</u>

34.    The Purchaser has expended, and likely will continue to expend, considerable time, money, and energy pursuing the Sale and has engaged in extended arms' length and good faith negotiations.  The Agreement is the culmination of these efforts.

18

35.    In recognition of this expenditure of time, energy, and resources, the Debtors have agreed to provide certain bid protections to the Purchaser (the "Bid Protections"). Specifically, the Agreement provides for, and the Debtors respectfully request that the Bidding Procedures Order approve, a break-up fee payable by the Selling Debtor Entities to the Purchaser in the amount of $294,000.00 – 3.0% of the preliminary purchase price – if (a) the Selling Debtor Entities sell, transfer, lease or otherwise dispose of, directly or indirectly, including through an asset sale, stock sale, merger, or other similar transaction, all or substantially all or a material portion of the Purchased Assets in a transaction or a series of transactions with one or more parties other than the Purchaser. The Selling Debtor Entities' obligation to pay the Bid Protections, as provided by the Agreement, will survive termination of the Agreement and, until paid, will constitute a superpriority administrative expense claim.

36.    In addition, the Agreement provides, and the Debtors respectfully request that the Bidding Procedures Order approve, reimbursement of the Purchaser's reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Agreement not to exceed $100,000.00, subject to this Court's approval pursuant to the Bidding Procedures Order, upon (y) a termination of the Agreement by reason of the failure of the Closing to occur within 90 days after entry of the Sale Order or (z) a termination of the Agreement by reason of (1) the failure of the Sale Order to be entered on or before May 25, 2007 or (2) the Sale Order's being subject to a stay or injunction, in any case provided that the Purchaser is not then in breach of the Agreement for which the Debtors had previously notified the Purchaser. The Purchaser has agreed that, in the event that it would otherwise be entitled to receive both the break-up fee and the expense reimbursement under the Agreement, the

Purchaser would only be entitled to receive the larger of the two and in no case would be entitled to receive payment of both.

37.    The Bid Protections were a material inducement for, and a condition of, the Purchaser's entry into the Agreement.  The Debtors believe that the Bid Protections are fair and reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation undertaken by the Purchaser in connection with the Sale and (b) the fact that the Purchaser's efforts have increased the chances that the Debtors will receive the highest or otherwise best offer for the Purchased Assets, to the benefit of the Debtors, their estates, their creditors, and all other parties-in-interest.

38.    The Purchaser is unwilling to commit to hold open its offer to purchase the Purchased Assets under the terms of the Agreement unless the Bidding Procedures Order authorizes payment of the Bid Protections.  Thus, absent entry of the Bidding Procedures Order and approval of the Bid Protections, the Debtors  may lose the opportunity to obtain what they believe to be the highest and best offer for the Purchased Assets.

39.    Payment of the Bid Protections will not diminish the Debtors' estates.  The Debtors would not expect to terminate the Agreement so as to incur the obligation to pay either of the Bid Protections unless they do so to accept an alternative Successful Bid, which must exceed the price offered by the Purchaser by an amount sufficient to pay the applicable Bid Protections.  The Debtors thus request that this Court authorize payment of the Bid Protections pursuant to the terms and conditions of the Agreement.

H.    Notice Of Bid Procedures

40.    Notice Of Sale Hearing.  Within five days after entry of the Bidding Procedures Order (the "Mailing Date"), the Debtors (or their agent) propose to serve the Motion,

20

the Agreement, the proposed Sale Order, the Bidding Procedures, and a copy of the Bidding

Procedures Order by first-class mail, postage prepaid, upon (a) all entities known to have

expressed an interest in a transaction with respect to the Purchased Assets during the past six

months,[9] (b) all entities known to have asserted any lien, claim, interest, or encumbrance in or

upon the Purchased Assets, (c) all federal, state, and local regulatory or taxing authorities or

recording offices which have a reasonably known interest in the relief requested by the Motion,

(d) all parties to the Assigned Contracts, (e) all parties to the Post-Petition Contracts, (f) the

United States Attorney's office, (g) the Securities and Exchange Commission, (h) the Internal

Revenue Service, (i) all entities on the 2002 List, and (j) counsel to the Creditors' Committee and

the Equityholders' Committee.

I.      Assumption And Assignment Of Contracts

41.      In connection with the proposed Sale, the Debtors seek authority to

assume and assign the Assigned Contracts to the Purchaser or the Successful Bidder.  With

respect to the Assigned Contracts, on or before February 23, 2007, the Debtors will file with this

Court and serve on each non-Debtor party to an Assigned Contract a cure notice substantially in

the form attached hereto as Exhibit E (the "Cure Notice").  The Cure Notice would state the cure

amount that the Debtors believe is necessary to assume such contract or lease pursuant to section

365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or

contract will be assumed and assigned to the Purchaser or the Successful Bidder to be identified

at the conclusion of the Auction.  In addition, such Cure Amounts would be listed on a schedule

to the Sale Order.

---

[9]    All such entities will also be served by electronic mail to the extent the Debtors have electronic mail addresses
for such parties.

21

42.    In addition, on or before February 23, 2007, the Debtors propose to file with this Court and serve on each non-Debtor party to an Assigned Contract a notice, substantially in the form of the notice attached hereto as <u>Exhibit F</u> (the "Purchaser Assumption/Assignment Notice").  The Purchaser Assumption/Assignment Notice would identify the Purchaser as the party that will be assigned all of the Debtors' rights, title, and interest in the Postpetition Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  Any objection to the assumption and assignment of any Assigned Contract would be required to be filed within ten days from the service of the Purchaser Assumption/Assignment Notice and would be required to state, with specificity, the legal and factual basis of its objection, unless otherwise ordered by this Court.

43.    Any objection to the Cure Amount would be required to be filed by within ten days of the date of the Cure Notice (the "Cure Objection Deadline").  Any objection to the Cure Amount would be required to state with specificity what cure the party to the Assigned Contract believes is required with appropriate documentation thereof.  If no objection is timely received, the Cure Amount set forth in the Cure Notice would be controlling notwithstanding anything to the contrary in any Assigned Contract, Post-Petition Contract, or other document and the non-Debtor party to the Assigned Contract or Post-Petition Contract will be forever barred from asserting any other claims against the Debtors, the Purchaser, or the Successful Bidder (as appropriate) or the property of any of them, as to such Assigned Contract or Post-Petition Contract, as the case may be.

44.    On March 5, 2007, the business day following the Bid Deadline, the Debtors would send a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form attached hereto as <u>Exhibit G</u>, to each non-Debtor party to an Assigned

22

Contract identifying the Successful Bidder.  Any objection to the assumption and assignment of

any Assigned Contract would be required to be filed within ten days from service of the

Qualified Bidder Assumption/Assignment Notice and would be required to state, with

specificity, the legal and factual basis of its objection, unless otherwise ordered by this Court.

<u>Applicable Authority</u>

A.    <u>Bidding Procedures</u>

      45.    Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use

property of the estate "other than in the ordinary course of business" after notice and a hearing.

11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be

authorized if the debtor demonstrates a sound business justification for it.  <u>See</u> <u>In re Lionel</u>

<u>Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good

business reason exists to grant debtor's application under section 363(b)); <u>In re Delaware Hudson</u>

<u>Ry. Co.</u>, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

      46.    The Second Circuit has held that, although the bankruptcy court sits as an

"overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . .

debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors

and the estate."  <u>In re Orion Pictures Corp.</u>, 4 F.3d 1095, 1098-99 (2d Cir. 1993).  The Court's

consideration of a debtor's section 363(b) motion is a summary proceeding, intended merely as a

means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift

administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a

lengthy trial with disputed issues."  <u>Orion Pictures</u>, 4 F.3d at 1098-99.

      47.    Once the debtor articulates a valid business justification, a presumption

arises that "in making a business decision the directors of a corporation acted on an informed

<center>23</center>

basis, in good faith and in the honest belief that the action was in the best interests of the

company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).  Thereafter,

"[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of

rebutting the presumption of validity." Id.  To satisfy its burden, it is not enough for an objector

simply to raise and argue an objection. Rather, an objector "is required to produce some evidence

respecting its objections." Lionel, 722 F.2d at 1071.

48.    As a rule, the debtor's business judgment "should be approved by the court

unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound

business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74,

81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo.

1991)).

49.    As set forth above, the Debtors have sound business justifications for

pursuing a sale process at this time.  Although the Debtors believe that their brake hose product

line is fundamentally strong, the Business does not fit the Debtors' anticipated product portfolio

under their transformation plan.  Thus, the Debtors have determined that the Business' value will

be maximized through the divestiture of its assets.  Moreover, delaying the sale of the Purchased

Assets may result in the erosion of the Business' value.  Accordingly, there is a sound business

purpose for pursuing the sale process promptly and in accordance with the Bidding Procedures..

50.    Moreover, a prospective purchaser of assets from a chapter 11 debtor may

be reluctant to make an offer, because it knows that even if it reaches agreement with the debtor,

its offer is subject to overbid.  Pre-approved bidding procedures address these concerns, by

assuring initial bidders that any auction procedure will be reasonable.  Thus, the Debtors submit

that the use of the Bidding Procedures also reflects sound business judgment.

24

B.    Sale Of The Purchased Assets Free And
        Clear Of Liens, Claims, Encumbrances, And Interests

51.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may

sell property free and clear of any lien, claim, or interest in such property if, among other things:

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such
     interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is sold is great that the
     aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled in a legal or equitable proceeding, to accept a
     money satisfaction of such interest.

11 U.S.C. § 363(f).

52.    Therefore, section 363(f) permits the Debtors to sell the Purchased Assets

free and clear of all liens, claims, and encumbrances, except the liabilities specifically assumed

by a Successful Bidder or the Permitted Liens.  Each lien, claim, or encumbrance that is not the

result of an assumed liability satisfies at least one of the five conditions of 11 U.S.C. § 363(f),

and the Debtors submit that any such lien, claim, or encumbrance will be adequately protected

by attachment to the net proceeds of the Sale, subject to any claims and defenses the Debtors

may possess with respect thereto.  Accordingly, the Debtors request that the Purchased Assets be

transferred to the Successful Bidder(s) free and clear of all liens, claims, and encumbrances,

except for the liens resulting from the Assumed Liabilities or the Permitted Liens, with such

liens, claims, and encumbrances to attach to the proceeds of the Sale of the Purchased Assets.

25

C.    The Purchaser Is A Good Faith Purchaser Pursuant To
Section 363(m) Of The Bankruptcy Code And The Transaction
Contemplated By The Agreement Should Carry The
Protections Of Section 363(n) Of The Bankruptcy Code

53.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under
subsection (b) or (c) of this section of a sale or lease of property does not
affect the validity of a sale or lease under such authorization to an entity
that purchased or leased such property in good faith, whether or not such
entity knew of the pendency of the appeal, unless such authorization and
such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second

Circuit Court of Appeals in In re Gucci held that the

good faith of a purchaser is shown by the integrity of his conduct during
the course of the sale proceedings; where there is a lack of such integrity,
a good faith finding may not be made.  A purchaser's good faith is lost by
'fraud, collusion between the purchaser and other bidders or the trustee, or
an attempt to take grossly unfair advantage of other bidders.'

126 F.3d at 390 (quoting In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir.

1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m))); see also Evergreen

Int'l Airlines Inc. v. Pan Am Corp. (In re Pam Am Corp.), Case Nos. 91 Civ. 8319 (LMM) to 91

Civ. 8324 (LMM), 1992 WL 154200 at *4 (S.D.N.Y. June 18, 1992); In re Sasson Jeans, Inc., 90

B.R. 608, 610 (S.D.N.Y. 1988).

54.    Section 363(n) of the Bankruptcy Code further provides, in relevant part,

that:

The trustee may avoid a sale under this section if the sale price was
controlled by an agreement among potential bidders at such sale, or may
recover from a party to such agreement any amount by which the value of
the property sold exceeds the price at which such sale was consummated,
and may recover any costs, attorneys' fees, or expenses incurred in
avoiding such sale or recovering such amount.

26

55.     The Debtors submit, and will present evidence at the Sale Hearing, that as set forth above, the Agreement reflects an intensely negotiated, arm's-length transaction. Throughout the negotiations respecting the Agreement, the Purchaser has at all times acted in good faith.  The Debtors, therefore, request that this Court make a finding that the Purchaser has purchased the Purchased Assets and assumed the Assigned Contracts and Assumed Liabilities in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Further, the Debtors submit that any asset purchase agreement reached as a result of the Bidding Procedures will be an arm's-length, intensely-negotiated transaction entitled to the protections of section 363(m) of the Bankruptcy Code and the Debtors will present evidence of the same at the Sale Hearing. Because a key element of a good faith finding is that the Purchaser's successful bid is not the product of fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders, the Debtors further request that this Court make a finding that the transactions contemplated by the Agreement are not avoidable under section 363(n) of the Bankruptcy Code.

D.     The Assumption And Assignment Of The Assigned Contracts

56.     Section 365(f)(2) of the Bankruptcy Code provides that:

[t]he trustee may assign an executory contract or unexpired lease of the debtor only if –

(A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

27

57.     Under section 365(a) of the Bankruptcy Code a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements

for assuming an unexpired lease or executory contract of a debtor.  It provides:

> (b)(1)  If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease unless, at
> the time of the assumption of such contract or lease, the trustee –
>
>> (A)     cures, or provides adequate assurance that the
>> trustee will promptly cure, such default;
>>
>> (B)     compensates, or provides adequate assurance that
>> the trustee will promptly compensate, a party other than the debtor to such
>> contract or lease, for any actual pecuniary loss to such party resulting from
>> such default; and
>>
>> (C)     provides adequate assurance of future performance
>> under such contract or lease.

11 U.S.C. § 365(b)(1).

58.     Courts give the phrase "adequate assurance of future performance" a

"practical, pragmatic construction."  See In re Sanshoe Worldwide Corp., 139 B.R. 585, 592

(S.D.N.Y. 1992) (the presence of adequate assurance should be "determined under the facts of

each particular case"); see also In re Fifth Avenue Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y.

1983) (holding that adequate assurance was furnished on two separate grounds).  Courts have

consistently held that the phrase does not provide total assurances.  In re Natco Industries, Inc.,

54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor

will thrive and make a profit."); In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla.

1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of performance.").  In fact, adequate assurance has

been provided by demonstrating the assignee's financial health and experience in managing the

28

type of enterprise or property assigned. See In re Bygraph, Inc., 56 B.R. 596, 605-06 (Bankr.

S.D.N.Y. 1986) (adequate assurance of future performance exists when prospective assignee of

lease from debtor has financial resources and has expressed willingness to devote sufficient

funding to business in order to give it strong likelihood of succeeding).

59.    To the extent that any defaults exist under any executory contract or

unexpired lease that is to be assumed and assigned in connection with the sale of the Purchased

Assets or any portion thereof, the Debtors will cure any such default prior to such assumption

and assignment.  Moreover, the Debtors will adduce facts at the Sale Hearing demonstrating the

financial wherewithal of any Successful Bidder, its experience in the industry, and its willingness

and ability to perform under the contracts to be assumed and assigned to it.

60.    The Sale Hearing therefore will provide this Court and other parties-in-

interest ample opportunity to evaluate and, if necessary, challenge the ability of the Successful

Bidder(s) to provide adequate assurance of future performance under the contracts to be

assumed.  This Court therefore should have a sufficient basis to authorize the Debtors to assume

and assign contracts as set forth in the Agreement.

E.    Approval Of The Bid Protections

61.    Bidding incentives encourage potential bidders to invest the requisite time,

money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to

the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11

process.  See, e.g., In re 995 Fifth Ave. Associates, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992)

(bidding incentives may "be legitimately necessary to convince a white knight to enter the

bidding by providing some form of compensation for the risks it is undertaking") (citation

omitted).  Bankruptcy courts often approve bidding incentives under the business judgment rule.

29

In re Global Crossing Ltd., 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("[N]o litigant has seriously argued the inapplicability of the business judgment test, and if any such argument had been made, the Court would be compelled . . . to reject it."); In re Bethlehem Steel Corp., Case No. 02 Civ. 2854 (MBM), 2003 WL 21738964 at *8 n.13 (S.D.N.Y. July 28, 2003) (the court should approve agreements providing bidding incentives "unless they are unreasonable or appear more likely to chill the bidding process than to enhance it").  One court, explaining the force of the business judgment rule in this context, stated "the business judgment rule does not become inapplicable simply because a court decides a break-up fee is too large."  In re Integrated Resources, 147 B.R. at 660.

62.    This district has established a three part test for determining when to permit bidding incentives.  Id. at 657-58.  The three factors are: "whether (1) relationship of parties who negotiated breakup fee is tainted by self-dealing or manipulation; (2) whether fee hampers, rather than encourages, bidding; and (3) amount of fee is unreasonable relative to purchase price."  Id.

63.    Here, the Debtors seek authority to utilize the Bidding Process and Bid Protections in the event that the Purchaser is not ultimately the Successful Bidder or must increase the Purchaser's bid price to become the Successful Bidder.  The Bid Protections are fair and reasonable in amount, particularly in view of the efforts to be made by the Purchaser and the risk to the Purchaser of being used as a stalking horse.  Indeed, the maximum amount of the Break-Up Fee – $294,000.00 (3.0% of the preliminary purchase price) – not only constitutes a fair and reasonable percentage of a proposed purchase price, but also is customary for similar transactions of this type in the bankruptcy context.  In addition, the payment of expenses and the indemnification and expense reimbursement provisions of the Agreement are reasonable in light

30

of the significant investment in time and resources that the Purchaser will have contributed as the

stalking horse bidder.   Further, the Purchaser has agreed that the break-up fee and the expense

reimbursement will be mutually exclusive – in the event that it would otherwise be entitled to

receive both the break-up fee and the expense reimbursement under the Agreement, the

Purchaser will only be entitled to receive the larger of the two and in no case will be entitled to

receive payment of both.   Moreover, the amount of the proposed Break-Up Fee is within the

range of breakup fees typically approved by courts in this district.   <u>See</u>, <u>e.g.</u>, <u>In re Allegiance</u>

<u>Telecom, Inc.</u>, Case No. 03-13057 (RDD) (Bankr. S.D.N.Y. 2004) (allowing 2.8% break-up fee

and expense reimbursement provision in asset sale agreement); <u>In re Enron Corp.</u>, Case No. 01-

16034 (AJG) (Bankr. S.D.N.Y. 2004) (approving 3% break-up fee if debtor closes a superior

transaction); <u>In re Loral Space & Communications Ltd.</u>, Case Nos. 03-41710 and 03-41709

(RDD) (Bankr. S.D.N.Y. 2003) (allowing 2% for break-up fee and .8% for expense

reimbursement allowed only if court enters order approving alternative transaction).

    64.  The Debtors submit that the Bidding Procedures and the Bid Protections

have encouraged competitive bidding in that the Purchaser would not have entered into the

Agreement without such provisions.   The Bidding Procedures and the Bid Protections have thus

induced a bid that otherwise would not have been made and without which bidding would be

limited.   Finally, the mere existence of the Bidding Procedures and Bid Protections permits the

Debtors to insist that competing bids be materially higher or otherwise better than the

Agreement, which will produce a clear benefit to the Debtors, their estates, their creditors, and

all other parties-in-interest.

G.    Waiver Of The Ten-Day Stays Provided By Bankruptcy Rules 6004 And 6006

65.    Bankruptcy Rule 6004(g) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides: "An order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."

66.    Courts in this district have waived these ten-day stays upon a showing of business need.  See In re Adelphia Commc'ns Corp., 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005) ("As I find that the required business need for a waiver has been shown, the order may provide for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g)."); In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (requiring a demonstration of "a business exigency" for a waiver of the ten-day stays under Bankruptcy Rules 6004(g) and 6006(d)).  In general, courts will grant waivers when doing so is important to the Debtor's financial health.  See In re Second Grand Traverse School, 100 Fed.Appx. 430, 434-35 (6th Cir. 2004) (affirming decision waiving ten-day stay because "time was of the essence"); In re Decora Industries, Inc., Case No. 00-4459 (JJF), 2002 WL 32332749, at *9 (D. Del. May 20, 2002) ("[T]he Court understands that an immediate closing is required to remedy Debtors' precarious financial and business position. Accordingly, the Court will waive the Rules 6004(g) and 6006(d), allowing the parties to close.").

67.    As described above, although the Business is strong, the Debtors face decreased revenues from brake hose sales.  The Debtors have determined, however, that as a standalone product line, unencumbered by legacy costs, the brake hose product could be a

32

profitable and competitive business line.  In light of the Debtors' desire to focus their available

free cash on investments in those business lines which are more likely to comprise their

restructured product portfolio, there is a risk of value erosion if a sale is not effectuated

promptly.  Moreover, a delay in the ability of a Successful Bidder to close the Sale could chill

prospective bidders from entering the sale process out of a reluctance to keep bids open for an

extended period of time and thus could prevent the Debtors from maximizing the value of its

assets.  Finally, the Purchaser has insisted upon the ability to close the transactions contemplated

by the Agreement, assuming that the Debtors do not receive a higher or otherwise better bid at

the auction, quickly following entry of the Sale Order and has therefore required that the Sale

Order include a waiver of the ten-day stays provided under Bankruptcy Rules 6004(g) and

6006(d) by the terms of the Agreement.

                68.        Because the Debtors have demonstrated a business need requiring closing

within ten days, this Court should exercise its authority under Bankruptcy Rules 6004(g) and

6006(d) and waive the ten-day stays.

H.        Conclusion

                69.        The Debtors submit that the granting of the Bidding Procedures, Bid

Protections, and Notice Procedures, the setting of the Sale Hearing, and entry of an order

approving the Sale of the Purchased Assets free and clear of liens, claims, and encumbrances to

the Purchaser or to the Successful Bidder, the assumption and assignment of the Assigned

Contracts to the Purchaser or the Successful Bidder, and the assumption of the Assumed

Liabilities by the Purchaser or the Successful Bidder, are in the best interests of the Debtors'

estates and will maximize value for all creditors as described above.

33

## Notice Of Motion

70.     Notice of this Motion has been provided in accordance with the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered by this Court on October 26, 2006

(Docket No. 5418).  Further notice with respect to the Sale will be provided in accordance with

the Notice Procedures described herein.[10]  In light of the nature of the relief requested, the

Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

71.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

---

[10]    In addition, notice of this Motion has also been provided by electronic mail to potential bidders for the
Purchased Assets.

34

WHEREFORE the Debtors respectfully request that this Court enter an

order (a) approving (i) the Bidding Procedures, (ii) the Bid Protections, (iii) the Notice

Procedures, and (iv) the setting of the Sale Hearing; (b) approving (i) the Sale of the Purchased

Assets free and clear of liens, claims, and encumbrances to the Purchaser or to the Successful

Bidder, (ii) the assumption and assignment of the Assigned Contracts to the Purchaser or the

Successful Bidder, and (iii) the assumption of the Assumed Liabilities by the Purchaser or the

Successful Bidder; and (c) granting them such other and further relief as is just.

Dated:  New York, New York
         January 26, 2007

<div style="margin-left: 40%;">

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  /s/  John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By:  /s/  Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

</div>

## Exhibit A

## Bidding Procedures

**DELPHI AUTOMOTIVE SYSTEMS LLC AND DELPHI TECHNOLOGIES, INC.
BRAKE HOSE BUSINESS BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of certain assets used exclusively in the brake hose business (the "Business") of Delphi Automotive Systems LLC (the "Seller") and certain intellectual property of Delphi Technologies, Inc. ("DTI" and collectively with the Seller, the "Selling Debtor Entities") relating to the Business. On January 25, 2007, the Selling Debtor Entities executed that certain Sale And Purchase Agreement by and among Harco Manufacturing Group, LLC (the "Purchaser"), Harco Brake Systems, Inc. and the Selling Debtor Entities (the "Agreement"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code") and certain other closing conditions, including waiver of any "no-sale" provision contained in any agreement between Delphi Corporation and the United Steel Workers Of America.

On January 26, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed a Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (a) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving (i) Sale Of Certain Of The Debtors' Assets Comprising Assets Exclusively Used In The Debtors' Brake Hose Business Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (the "Sale Motion"). On February 15, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") approving the Bidding Procedures. The Bidding Procedures Order set March 22, 2007 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). The Debtors intend to consult with, among others, the Official Committee of Unsecured Creditors (the "Creditors' Committee") throughout the Bidding Process. In the event that the Debtors and any such constituent disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court shall have jurisdiction to hear and resolve such dispute.

1

## <u>Assets To Be Sold</u>

The assets proposed to be sold include substantially all of the assets exclusively relating to the Business and the Purchased Intellectual Property (collectively, the "Assets").

## <u>"As Is, Where Is"</u>

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except, with respect to the Purchaser, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

## <u>Free Of Any And All Claims And Interests</u>

Except, with respect to the Purchaser, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Debtors' right, title, and interest in and to the Assets, or any portion thereof, to be acquired shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Assets.

## <u>Participation Requirements</u>

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Purchaser, must deliver (unless previously delivered) to the Debtors and their counsel at the addresses provided below:

(a) An executed confidentiality agreement substantially in the form attached hereto as <u>Exhibit 1</u> (or in such other form acceptable to the Debtors);

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtors and their advisors; and

(c) A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any Assets expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite Good Faith Deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature

2

and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Debtors determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement shall be deemed a "Qualified Bidder."  As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Debtors shall determine, and shall notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time that the Debtors notify the Potential Bidder that it is a Qualified Bidder, the Debtors shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Assets and the Business as provided below.  Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.

## Due Diligence

The Debtors shall afford each Qualified Bidder due diligence access to the Assets and the Business.  Due diligence access may include management presentations as may be scheduled by the Debtors, access to data rooms, on-site inspections, and such other matters which a Qualified Bidder may request and as to which the Debtors, in their sole discretion, may agree.  The Debtors shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence shall not continue after the Bid Deadline.  The Debtors may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Debtors nor any of their affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Assets and the Business to any person other than to Qualified Bidders who make an acceptable preliminary proposal.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets and the Business prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets and the Business in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, the Business, or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except, as to the Successful Bidder, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court.

## Assumption Of Extension

The Successful Bidder must assume that certain "Brake Hose Assembly Contract Policy Statement" between DAS LLC and Harco Brake System, Inc. effective January 1, 2005 (the

3

"Extension").  Following such assumption, the Debtors would have no further obligations under the Extension.

## Bid Deadline

A Qualified Bidder, other than the Purchaser, who desires to make a bid shall deliver written copies of its bid to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098, Att'n: Steve Daniels, with copies to:  (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Att'n: Margaret M. Fukuda, Legal Staff; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Att'n: John K. Lyons; (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Att'n: Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Att'n: Ben Pickering; and (v) counsel to the debtors' postpetition lenders, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Att'n: Donald Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on March 2, 2007 (the "Bid Deadline").  As soon as reasonably practicable following receipt of each Qualified Bid, the Debtors shall deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to (a) the Purchaser and its counsel, and (b) counsel for the Official Committee of Equity Security Holders (the "Equityholders' Committee").

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a) A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Assets.

(b) An executed copy of the Agreement, together with all schedules (a "Marked Agreement") marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

(c) A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Debtors in their sole discretion) payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to $500,000.00.

(d) Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to the Debtors and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

(a) is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtors than, those contained in the Agreement;

4

(b) is not conditioned on obtaining financing or on the outcome of unperformed due
diligence by the bidder;

(c) proposes a transaction that the Debtors determine, in their sole discretion, is not
materially more burdensome or conditional than the terms of the Agreement and has a
value, either individually or, when evaluated in conjunction with any other Qualified Bid,
greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up
Fee, plus (i) in the case of the initial Qualified Bid, $500,000.00, and (ii) in the case of
any subsequent Qualified Bids, $250,000.00 over the immediately-preceding highest
Qualified Bid;

(d) is not conditioned upon any bid protections, such as a break-up fee, termination fee,
expense reimbursement, or similar type of payment;

(e) an acknowledgement and representation that the bidder:  (i) has had an opportunity to
conduct any and all due diligence regarding the Assets prior to making its offer, (ii) has
relied solely upon its own independent review, investigation and/or inspection of any
documents and/or the Assets in making its bid, and (iii) did not rely upon any written or
oral statements, representations, promises, warranties, or guaranties whatsoever, whether
express, implied, by operation of law, or otherwise, regarding the Assets, the
completeness of any information provided in connection therewith, or the Auction,
except as expressly stated in the Agreement or the Marked Agreement;

(f) includes a commitment to consummate the purchase of the Assets (including the receipt
of any required governmental or regulatory approvals) within not more than 15 days after
entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt
of any governmental or regulatory approvals which must be obtained within 60 days after
entry of such order; and

(g) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it
includes all of the Required Bid Documents and meets all of the above requirements; provided,
however, that the Debtors shall have the right, in their sole discretion, to entertain bids for the
Assets that do not conform to one or more of the requirements specified herein and deem such
bids to be Qualified Bids.  Notwithstanding the foregoing, the Purchaser shall be deemed a
Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in
connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued
based upon factors such as the net value provided by such bid and the likelihood and timing of
consummating such transaction.  Each Qualified Bid other than that of the Purchaser is referred
to as a "Subsequent Bid."

If the Debtors do not receive any Qualified Bids other than the Agreement received from
the Purchaser, the Debtors will report the same to the Bankruptcy Court and will proceed with
the Sale pursuant to the terms of the Agreement.

## Bid Protection

Recognizing the Purchaser's expenditure of time, energy, and resources, the Debtors have agreed to provide certain bidding protections to the Purchaser. Specifically, the Debtors have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed and, therefore, is entitled to be selected as the Purchaser. As a result, the Debtors have agreed that if the Debtors sell the Assets to a Successful Bidder other than the Purchaser, the Debtors shall, in certain circumstances, pay to the Purchaser a Break-Up Fee. In the event the Agreement is terminated pursuant to certain other provisions thereof, then the Debtors shall, in certain circumstances, be obligated to pay the Purchasers' Expense Reimbursement. The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) shall be governed by the provisions of the Agreement and the Bidding Procedures Order.

## Auction

If the Debtors receive at least one Qualified Bid in addition to the Agreement, the Debtors will conduct an auction (the "Auction") of the Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before the tenth Business Day following the expiration of the Bid Deadline, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(a) Only the Debtors, the Purchaser, any representative of the Creditors' Committee, any representative of the Equityholders' Committee, any representative of the Debtors' postpetition secured lenders (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid shall be entitled to attend the Auction, and only the Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction, and at least one Business Day prior to the Auction the Debtors shall provide all Qualified Bidders who have informed the Debtors of their intent to participate in the Auction with copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe comprise the highest or otherwise best offer. Should an Auction take place, the Purchaser shall have the right, but not the obligation, to participate in the Auction. The Purchaser's election not to participate in an Auction shall in no way impair its entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

(c) All Qualified Bidders shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid shall be fully disclosed to all other bidders throughout the entire Auction.

(d) The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $250,000.00 higher than the previous bid or bids.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), the Debtors shall give the Purchaser a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement that may be payable to the Purchaser under the Agreement and shall give effect to any assets and/or equity interests to be retained by the Debtors.

## Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Debtors, in consultation with their advisors, shall:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Assets received at the Auction (the "Successful Bid" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Debtors shall sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "Sale Hearing").  If, after an Auction in which the Purchaser:  (i) shall have bid an amount in excess of the consideration currently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Seller's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Seller's acceptance of the bid.  The Seller will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing is currently scheduled to take place before the Honorable Robert D. Drain, United States Bankruptcy Judge, on March 22, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.  The Sale Hearing may be adjourned or rescheduled by the Debtors without notice other than by an announcement of the adjourned date at the Sale Hearing.

7

If the Debtors do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Debtors will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Assets to the Purchaser following entry of the Sale Order.  If the Debtors do receive additional Qualified Bids, then at the Sale Hearing the Debtors shall seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)" and such bidder(s), the "Alternate Bidder(s)").  The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute the Debtors' acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and the Debtors shall effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtors.  On the Return Date, the Debtors shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Debtors, after consultation with the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchaser's bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and their creditors as determined by Debtors in their sole discretion.

## **Exhibit 1**

**Form Of Non-Disclosure Agreement**

## NON-DISCLOSURE AGREEMENT

In consideration of the disclosure of proprietary information by Delphi Automotive Systems LLC, (hereinafter "**Delphi**") to _____, having a place of business at _____ (hereinafter "**Recipient**"), which information relates to the potential sale by Delphi to Recipient of assets associated with the brake hose products manufactured by Delphi (hereinafter collectively "**Proprietary Information**"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Recipient agrees as follows:

1.      Proprietary Information disclosed by Delphi to Recipient hereunder may be in written form or it may be electronically, orally, or visually presented.  If in written form, it shall be identified as Proprietary Information by an appropriate legend indicating its proprietary or confidential nature.  If disclosed electronically, orally or visually, it shall be identified by Delphi as Proprietary Information at the time of disclosure and shall be confirmed as such by written summary mailed to Recipient within thirty (30) days of the original disclosure.

2.      Recipient agrees:

(a)     not to disclose any such Proprietary Information received by it to any third party, exercising the same degree of care with regard to the protection of Proprietary Information as Recipient uses in protecting and preserving its own confidential and proprietary information, but at no time shall such degree of care be less than reasonable care; and

(b)     to restrict the dissemination of such Proprietary Information received by it to only those employees, Affiliates, advisors, consultants, and/or agents who have a need to know such information in the performance of their duties related to the purpose of this Agreement, and to inform such employees and/or agents of Recipient's obligations under this Agreement. "**Affiliate**" means any entity owned or controlled by, under common ownership or control with, or which owns or controls a Party to this Agreement. Ownership or control shall mean ownership or control, directly or indirectly, of at least 50% of the voting stock or equity of the respective Party or entity, as the case may be; and

(c)     not to use any such Proprietary Information received by it except as approved by Delphi.

3.      The obligations of Recipient as set forth in this Agreement shall not apply to any Information which Recipient can establish by reasonably documented proof:

(a)     has become generally available in the public domain without breach of this Agreement; or

(b)     was in its possession prior to disclosure pursuant to this Agreement; or

(c)     was developed independently without access by the developing person(s) to the Information received in confidence from Delphi; or

1

(d)     Delphi has disclosed to a third party without restriction; or

(e)     Recipient has received from a third party who is properly in possession thereof and who has not received the same through an agreement with Delphi or another party to maintain such information in confidence; or

(f)     Recipient is compelled to release by law or in the course of litigation by a third party, provided that Recipient provides Delphi with notice of such compulsion sufficiently in advance of disclosure so as to provide Delphi a reasonable time period to seek a protective order.

4.     Proprietary Information is and shall remain the property of Delphi, and at the request of Delphi, Recipient shall promptly return such Information to Delphi.

5.     Proprietary Information is provided "as is" and Delphi makes no warranties, whether express, implied or statutory, regarding the Proprietary Information, including accuracy, completeness, sufficiency, fitness for a particular purpose, and non-infringement.

6.     The Agreement shall not constitute the grant of any license under any patent, patent application, copyright, trademark, or other similar proprietary right, now or hereafter owned or controlled by Delphi.

7.     This Agreement shall be construed in accordance with the laws of the State of Michigan, without regard to its conflict of laws principles.  The parties acknowledge and agree that the forum for all disputes arising out of this Agreement shall be an appropriate federal or state court in Michigan.

8.     Without the prior written consent of Delphi, Recipient shall not disclose to any person:

(a)     the fact that any investigations, discussions, or negotiations are taking place or have taken place; or

(b)     the financial or other terms, conditions, and other facts with respect to the investigations, discussions, or negotiations, including the status thereof; or

(c)     the existence of this Agreement or any correspondence relating thereto; or

(d)     the fact that Recipient has received any Proprietary Information from Delphi or the nature of such Proprietary Information.

9.     This Agreement is effective when duly signed by Recipient and shall terminate one (1) year thereafter or upon written notice by either party to the other, whichever is first to occur.  The obligations of paragraphs 2, 5,  6, 7, 9, 10, and 11 hereof shall survive termination.

10.     This Agreement contains the entire agreement between the parties pertaining to the subject matter hereof.  No change, modification, alteration, or addition to any provision

2

of this Agreement shall be binding unless in writing and signed by duly authorized representatives of both parties.

11.   The obligations set forth above shall be binding on all successors and assigns of Recipient.

IN WITNESS WHEREOF, Recipient has caused this Agreement to be executed by its duly authorized representative.

_____

By:   (signature)  _____

       (printed name)  _____

Title:  _____

Date:  _____

**<u>Exhibit B</u>**

**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
          In re                       :     Chapter 11
                               :
     DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                               :
                 Debtors.    :     (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 2002
AND 9014 APPROVING (I) BIDDING PROCEDURES, (II) CERTAIN
BID PROTECTIONS, (III) FORM AND MANNER OF SALE
NOTICES, AND (IV) SETTING OF SALE HEARING IN
CONNECTION WITH SALE OF BRAKE HOSE BUSINESS

("BRAKE HOSE BUSINESS BIDDING PROCEDURES ORDER")

        Upon the motion, dated January 26, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for orders

pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014

(a) (i) approving the bidding procedures set forth herein and attached hereto as Exhibit 1

(the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form

and manner of sale notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b)

authorizing and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the

"Purchased Assets"), which comprise the assets exclusively used in the Debtors' brake

hose product line (the "Business") and certain intellectual property for $9.8 million and

other consideration, free and clear of liens, claims, and encumbrances, to Harco

Manufacturing Group, LLC (the "Purchaser") pursuant to the Sale And Purchase

Agreement dated January 25, 2007 by and among Delphi Automotive Systems LLC

("DAS LLC") and Delphi Technologies, Inc. (collectively with DAS LLC, the "Selling

Debtor Entities") and the Purchaser and Harco Brake Systems, Inc. (the "Agreement")[1] or

to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better

bid,  (ii) the assumption and assignment of certain prepetition executory contracts and

unexpired leases (the "Assigned Contracts") and the assignment of certain postpetition

executory contracts and unexpired leases (the "Postpetition Contracts," and collectively

with the Assigned Contracts, the "Assigned Contracts") to the Purchaser or the

Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed

Liabilities") by the Purchaser or the Successful Bidder; and upon the record of the

Hearing on the Motion; and after due deliberation thereon, and sufficient cause appearing

therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over this matter and over the property of

the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and

1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(N), and (O).

C.    The relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings
       ascribed to them in the Agreement.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law
       shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P.
       7052.

2

D.    The notice given by the Debtors of the Motion and the Hearing constitutes due and sufficient notice thereof.

E.    The Debtors have articulated good and sufficient reasons for the Court to approve (i) the Bidding Procedures, (ii) the granting of certain bid protections as provided in the Agreement, (iii) the manner of notice of the Motion, the Sale Hearing, and the assumption and/or assignment of the Assigned Contracts, (iv) the form of notice of the Motion and the Sale Hearing to be distributed to creditors and other parties-in-interest, including prospective bidders, (v) the form of notice of the Cure Amounts (as defined below) and the assumption of the Assigned Contracts to be filed with the Court and served on parties to each Assigned Contract, and (vi) the setting of the Sale Hearing.

F.    The Debtors' payment to the Purchaser (as set forth in the Agreement) of the Break-Up Fee and the Expense Reimbursement (collectively, the "Bid Protections") (i) is an actual and necessary cost and expense of preserving their estates, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) is of substantial benefit to their estates, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchaser notwithstanding that the proposed Sale is subject to higher or better offers for the Purchased Assets, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Purchased Assets.  The Bid Protections were a material inducement for, and condition of, the Purchaser's entry into the Agreement.  The Purchaser is unwilling to commit to hold open its offer to purchase the Purchased Assets under the terms of the Agreement unless it is assured of payment of the Bid Protections. Thus, assurance to the

3

Purchaser of payment of the Bid Protections has promoted more competitive bidding by

inducing the Purchaser's bid that otherwise would not have been made, and without

which other bidding would have been limited.  Further, because the Bid Protections

induced the Purchaser to research the value of the Purchased Assets and submit a bid that

will serve as a minimum or floor bid on which other bidders can rely, the Purchaser has

provided a benefit to the Debtors' estates by increasing the likelihood that the price at

which the Purchased Assets are sold will reflect their true worth.  Finally, absent

authorization of the Bid Protections, the Debtors may lose the opportunity to obtain the

highest or otherwise best available offer for the Purchased Assets.

   G.  The Bidding Procedures are reasonable and appropriate and

represent the best method for maximizing the realizable value of the Purchased Assets.

   THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

<u>Bidding Procedures</u>

   1.  The Bidding Procedures, as set forth on <u>Exhibit 1</u> attached hereto

and incorporated herein by reference as if fully set forth in this Order, are hereby

approved and shall govern all proceedings relating to the Agreement and any subsequent

bids for the Purchased Assets in these cases.

   2.  The Debtors may: (a) determine, in their business judgment, which

Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of

any official committee or significant constituent in connection with the Bidding

Procedures, and (c) reject at any time before entry of an order of the Court approving a

Qualified Bid, any bid (other than the Purchaser's bid) which, in the Debtors' sole

discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of

the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii)

contrary to the best interests of the Debtors, their estate, and their creditors.  The Debtors

are authorized (i) to terminate the Bidding Process or the Auction at any time if they

determine, in their business judgment, that the Bidding Process will not maximize the

value of the Purchased Assets to be realized by the Debtors' estates and (ii) seek

Bankruptcy Court approval of the Agreement with Purchaser.

<div align="center">Sale Hearing</div>

3.      The Sale Hearing shall be held before this Court on March 22,

2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, at which time the Court shall consider the Motion, the Successful Bidder,

and confirm the results of the Auction, if any.  Objections to the Motion, if any, shall be

filed and served no later than 4:00 p.m. (prevailing Eastern time) on March 15, 2007 (the

"Objection Deadline").

4.      The failure of any objecting person or entity to timely file its

objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or

thereafter, of any objection to the Motion, the Sale, or the Selling Debtor Entities'

consummation and performance of the Agreement (including the transfer of the

Purchased Assets and Assigned Contracts free and clear of liens, claims, and

encumbrances), if authorized by the Court.

5.      The Sale Hearing may be adjourned from time to time without

further notice to creditors or parties-in-interest other than by announcement of the

<div align="center">5</div>

adjournment in open court or on the Court's calendar on the date scheduled for the Sale

Hearing or any adjourned date.

<div align="center">Bid Protections</div>

6.    The Bid Protections, as more fully described in the Motion and the

Agreement, are hereby approved.  The Debtors' obligation to pay the Bid Protections, as

provided by the Agreement, shall survive termination of the Agreement and, until paid,

shall constitute a superpriority administrative expense claim.  The Debtors shall be

authorized to pay the Bid Protections to the Purchaser in accordance with the terms of the

Agreement without further order of the Court.

<div align="center">Notice</div>

7.    Notice of (a) the Motion, (b) the Sale Hearing, and (c) the

proposed assumption and/or assignment of the Assigned Contracts to the Purchaser

pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no

other or further notice shall be required, if given as follows:

(a)    Notice Of Sale Hearing.  On or before February 20, 2007 (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the Agreement, the proposed Sale Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past six months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Purchased Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) all parties to the Assigned Contracts; (v) all parties to the Postpetition Contracts; (vi) the United States Attorney's office; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) all entities that filed a notice of appearance or request for notice in these cases; and (x) counsel to the official committee of unsecured creditors and the official committee of equity security holders appointed in these cases.

<div align="center">6</div>

      (b)    <u>Cure Notice</u>.  On or before February 23, 2007, the Debtors shall file with the Court and serve on all non-Debtor parties to the Assigned Contracts a notice (the "Cure Notice"), substantially in the form attached hereto as <u>Exhibit 2</u>, of the cure amount necessary to assume the Assigned Contracts (the "Cure Amount").  The Debtors shall also file with the Court and serve on all non-Debtor parties to the Postpetition Contracts a Cure Notice providing any Cure Amount necessary to assign the Postpetition Contracts.  Each non-Debtor party to the Assigned Contracts or Postpetition Contracts shall have ten days from the service of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, Postpetition Contract, or any other document, and the non-Debtor party to an Assumed Contract or Postpetition Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims against the Debtors, the Purchaser, or the Successful Bidder (as appropriate), or the property of any of them, as to such Assumed Contract or Postpetition Contract, as the case may be.

      (c)    <u>Assumption/Assignment Notice For Purchaser</u>.  On or before February 23, 2007, the Debtors shall file with the Court and serve on all non-Debtor parties to the Assigned Contracts a notice (the "Purchaser Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, identifying the Purchaser as the party that will be assigned all of the Debtors' right, title, and interest in the Assigned Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  The Debtors shall also file with the Court and serve on all non-Debtor parties to the Postpetition Contracts a Purchaser Assumption/Assignment Notice identifying the Purchaser as the party that will be assigned all of the Debtors' rights, title, and interest in the Postpetition Contracts, subject to completion of the bidding process provided under the Bidding Procedures. The non-Debtor party to the Assumed Contract or Postpetition Contract shall have ten days from the service of the Purchaser Assumption/Assignment Notice to object to the proposed assumption and/or assignment to the Purchaser and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract or Postpetition Contract shall be deemed to have consented to the assumption and assignment of the Assigned Contract to the Purchaser and shall be forever barred from asserting any objection with regard to the assumption and/or assignment.

      (d)    <u>Assumption/Assignment Notice For Qualified Bidders</u>.  On or before March 5, 2007, the Debtors shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 4</u>, to be sent to each non-Debtor party to an Assumed Contract or Postpetition Contract identifying all Qualified Bidders.  The non-Debtor party to the Assumed Contract or Postpetition Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and/or assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor

party to the Assumed Contract or Postpetition Contract and shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchaser or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and/or assignment.

        8.     This Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

        9.     The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated:   New York, New York
        February  __, 2007

_____
   UNITED STATES BANKRUPTCY JUDGE

8

**<u>Exhibit C</u>**

**Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
      In re                       :      Chapter 11
                                          :
DELPHI CORPORATION, <u>et al.</u>,     :      Case No. 05-44481 (RDD)
                                          :
               Debtors.    :      (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006,
AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF DEBTORS'
ASSETS COMPRISING ASSETS EXCLUSIVELY USED IN DEBTORS' BRAKE HOSE
BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II)
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("BRAKE HOSE BUSINESS SALE ORDER")

            Upon the motion, dated January 26, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving bidding procedures, (ii)

granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv)

setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the

"Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising assets exclusively

used in the Debtors' brake hose product line (the "Business") and certain intellectual property for

$9.8 million and other consideration, free and clear of liens, claims, and encumbrances, to Harco

Manufacturing Group, LLC (the "Purchaser") pursuant to the Sale And Purchase Agreement

dated January 25, 2007 by and between Delphi Automotive Systems LLC ("DAS LLC") and

Delphi Technologies, Inc. (together with DAS LLC, the "Selling Debtor Entities") and the

Purchaser and Harco Brake Systems, Inc. (the "Agreement")[1] or to the party submitting the

highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and/or assignment of

certain executory contracts and unexpired leases (including the Post-Petition Contracts) (the

"Assigned Contracts") to the Purchaser or the Successful Bidder, and (iii) the assumption of

certain liabilities (the "Assumed Liabilities") by the Purchaser or the Successful Bidder; and the

Court having entered an order on February [●], 2007 (the "Bidding Procedures Order") (a)

approving bidding procedures, (b) granting certain bid protections, (c) approving the form and

manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held

on February 15, 2007, at which time all interested parties were offered an opportunity to be heard

with respect to the Motion; and the Court having reviewed and considered (x) the Motion, (y) the

objections thereto, if any, (z) the arguments of counsel made, and the evidence proffered or

adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and all other parties-in-interest; and

after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Agreement.  A true and correct copy of the Agreement is attached hereto as Schedule 1.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

B.    The statutory predicates for the relief sought in the Motion are sections

363 and 365 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and/or assignment of

the Assigned Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C.

§§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was

good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of

the Motion, the Sale Hearing, the Sale, or the assumption and/or assignment of the Assigned

Contracts is or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Debtors have marketed the Purchased Assets and conducted the sale process in

compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted

in a non-collusive, fair, and good faith manner.

E.    The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other documents contemplated thereby, and the transfer and conveyance

of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by

all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority

necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken

all action necessary to authorize and approve the Agreement and the consummation by the

Selling Debtor Entities of the transactions contemplated thereby, and no consents or approvals,

3

other than those expressly provided for in the Agreement, are required for the Selling Debtor

Entities to consummate such transactions.

F.    The Debtors have demonstrated (i) good, sufficient, and sound business

purpose and justification for the Sale because, among other things, the Debtors and their advisors

diligently and in good faith analyzed all other available options in connection with the

disposition of the Purchased Assets and determined that the terms and conditions set forth in the

Agreement, and the transfer to Purchaser of the Purchased Assets pursuant thereto, represent a

fair and reasonable purchase price and constitute the highest or otherwise best value obtainable

for the Purchased Assets and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization because, among other things, absent the

Sale the value of the Purchased Assets will be substantially diminished.

G.    A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured

Creditors appointed in these chapter 11 cases, (iv) counsel for the Official Committee of Equity

Security Holders appointed in these chapter 11 cases, (v) all entities known to have expressed an

interest in a transaction with respect to the Purchased Assets during the past six months, (vi) all

entities known to have asserted any Interests and/or Claims (as defined below) in or upon the

Purchased Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording

offices, including but not limited to environmental regulatory authorities, which have a

reasonably known interest in the relief requested by the Motion, (viii) all parties to Assigned

Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice,

4

(xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities as are

required to be served with notices under the Supplemental Case Management Order.

H.   The Purchaser is not an "insider" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

I.   The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Purchaser have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

J.   The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as

such, is entitled to all of the protections afforded thereby.  The Purchaser will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this Sale Order.

K.   The consideration provided by the Purchaser for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would

be provided by any other practical available alternative, and (iv) constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession, or the District of Columbia.

5

L.      The Sale must be approved and consummated promptly to preserve the viability of the Business as a going concern.

M.      With the exception of the Assumed Liabilities and the Permitted Liens, the transfer of the Purchased Assets to the Purchaser shall be a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Selling Debtor Entities to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to October 8, 2005, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including, but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the transfer of the Purchased Assets to the Purchaser (collectively, the "Interests and/or Claims").

N.      If the Sale of the Purchased Assets were not free and clear of all Interests and/or Claims as set forth in the Agreement and this Sale Order, or if the Purchaser would, or in the future could, be liable for any of the Interests and/or Claims as set forth in the Agreement and this Sale Order, the Purchaser would not have entered into the Agreement and would not

6

consummate the Sale or the transactions contemplated by the Agreement, thus adversely

affecting the Debtors, their estates, and their creditors.

O.     The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately

protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale

ultimately attributable to the property against or in which they claim an Interest or Claim.

P.     The (i) transfer of the Purchased Assets to the Purchaser and (ii)

assumption and/or assignment to the Purchaser of the Assigned Contracts and Assumed

Liabilities will not subject the Purchaser to any liability whatsoever with respect to the operation

of the Business prior to the Closing of the Sale or by reason of such transfer under the laws of the

United States, any state, territory, or possession thereof, or the District of Columbia based, in

whole or in part, directly or indirectly, on any theory of law or equity, including, without

limitation, any theory of equitable law, including, without limitation, any theory of antitrust or

successor or transferee liability.

Q.     The Selling Debtor Entities have demonstrated that it is an exercise of

their sound business judgment to assume and/or assign the Assigned Contracts to the Purchaser

in connection with the consummation of the Sale, and the assumption and/or assignment of the

Assigned Contracts is in the best interests of the Debtors, their estates, and their creditors.  The

Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchaser are an

7

integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, such

assumption and assignment of Assigned Contracts and liabilities are reasonable, enhance the

value of the Debtors' estates, and do not constitute unfair discrimination.

R.     The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure, of any default existing prior to the Closing of the Sale under any of the

Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts

provided on Schedule 2 hereto and (ii) provided compensation or adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Assigned Contracts, within the meaning of 11 U.S.C. §

365(b)(1)(B), and the Purchaser has provided adequate assurance of its future performance of

and under the Assigned Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and

365(f)(2)(B).   The Court hereby finds that the Assigned Contracts to be assumed and/or assigned

under the Agreement shall be assigned and transferred to, and remain in full force and effect for

the benefit of the Purchaser notwithstanding any provision in the contracts or other restrictions

prohibiting their assignment or transfer, pursuant to 11 U.S.C. § 365(f).

S.     Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests

of the Debtors, their creditors, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

General Provisions

1.     The Motion is GRANTED.

8

Approval Of The Agreement

2.        Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.        Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized

to perform their obligations under the Agreement and comply with the terms thereof and

consummate the Sale in accordance with and subject to the terms and conditions of the

Agreement.

4.        Each of the signatories to the Agreement is directed to take all actions

necessary or appropriate to effectuate the terms of this Sale Order.

5.        The Selling Debtor Entities are authorized and directed to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

with all additional instruments and documents that may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Purchaser

for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary

or appropriate to the performance of the obligations as contemplated by the Agreement.

6.        This Sale Order and the Agreement shall be binding in all respects upon

all creditors (whether known or unknown) of the Debtors, the Purchaser, all successors and

assigns of the Purchaser and the Selling Debtor Entities, all affiliates and subsidiaries of the

Purchaser and the Selling Debtor Entities, and any subsequent trustees appointed in the Debtors'

chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be

subject to rejection.  To the extent any provision of this Sale Order is inconsistent with the terms

of the Agreement, this Sale Order shall govern.

7.      The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; <u>provided</u> that any such modification,

amendment, or supplement is not material.

<u>Sale And Transfer Of The Purchased Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for in the

Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the

consummation of the Agreement, the Purchased Assets shall be transferred to the Purchaser free

and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash

proceeds of the Sale in the order of their priority, with the same validity, force, and effect which

they now have as against the Purchased Assets, subject to any claims and defenses the Debtors

may possess with respect thereto.

9.      The transfer of the Purchased Assets to the Purchaser pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall

vest the Purchaser with all right, title, and interest of the Selling Debtor Entities in and to the

Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages,

mechanic's liens, <u>lis pendens,</u> or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the

Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination

10

statements, instruments of satisfaction, releases of all Interests and/or Claims that the person or

entity has with respect to the Purchased Assets, or otherwise, then (a) the Debtors are hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Purchased Assets and (b) the Purchaser is

hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which,

once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release

of all Interests and/or Claims in the Purchased Assets of any kind or nature whatsoever.

11.    This Sale Order (a) shall be effective as a determination that, upon the

Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to

the Debtors or the Purchased Assets prior to the Closing of the Sale have been unconditionally

released, discharged, and terminated (other than any surviving obligations), and that the

conveyances described herein have been effected and (b) shall be binding upon and shall govern

the acts of all entities including, without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Purchased

Assets.

12.    Except as expressly permitted or otherwise specifically provided by the

Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt

security holders, equity security holders, governmental, tax, and regulatory authorities, lenders,

trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature

11

whatsoever against or in the Debtors or the Purchased Assets (whether legal or equitable, secured

or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated),

arising under or out of, in connection with, or in any way relating to, the Business, the Purchased

Assets, the operation of the Business prior to the Closing of the Sale, or the transfer of the

Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently

enjoined from asserting against the Purchaser, its successor or assign its property, or the

Purchased Assets, such persons' or entities' Interests and/or Claims.

13.     Upon the consummation of the transactions contemplated by the

Agreement, the Purchaser shall not be deemed to (a) be the successor of the Selling Debtor

Entities, (b) have, de facto or otherwise, merged with or into the Selling Debtor Entities, (c) be a

mere continuation or substantial continuation of the Selling Debtor Entities or the enterprise(s) of

the Selling Debtor Entities, or (d) be liable for any acts or omissions of the Selling Debtor

Entities in the conduct of the Business.

## Assumption And Assignment To The Purchaser Of The Assumed Contracts

14.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement, of the

Assigned Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and

365(f) with respect thereto are hereby deemed satisfied.

15.     The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchaser, effective upon the

Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any

kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other

12

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchaser.

16.    The Assigned Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchaser in accordance with their respective terms,

notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors shall be

relieved from any further liability with respect to the Assigned Contracts after the assignment to

and assumption by the Purchaser.

17.    All defaults or other obligations of the Debtors under the Assigned

Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the

Bankruptcy Code) shall be cured by the Selling Debtor Entities at the Closing of the Sale or as

soon thereafter as practicable, and the Purchaser shall have no liability or obligation arising or

accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in

the Agreement.  Each non-debtor party to any Assigned Contracts is deemed to have consented

to the assumption and/or assignment of the Assigned Contracts to the Purchaser and is forever

barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser,

or the property of any of them, any default existing, arising, or accruing as of the date of the

Closing or any purported written or oral modification to the Assigned Contracts.  The failure of

the Debtors or the Purchaser to enforce prior to the Closing of the Sale one or more terms or

conditions of any Assumed Contracts shall not be a waiver of such terms or conditions, or of the

13

Debtors' or Purchaser's rights to enforce every term and condition of any such Assigned

Contracts.

<u>Additional Provisions</u>

18.    The consideration provided by the Purchaser for the Purchased Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory,

possession, or the District of Columbia.

19.    Upon the Closing of the Sale, this Sale Order shall be construed as and

shall constitute for any and all purposes a full and complete general assignment, conveyance, and

transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale transferring

good and marketable title in the Purchased Assets and Assigned Contracts to the Purchaser

pursuant to the terms of the Agreement.

20.    Except as otherwise provided in the Agreement, upon the Closing of the

Sale, each of the Debtors' creditors is authorized and directed to execute such documents and

take all other actions as may be necessary to release their respective Interests and/or Claims

against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

21.    Each and every federal, state, and governmental agency or department,

and any other person or entity, is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Agreement.

14

22.    All entities who are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchaser upon the Closing of the Sale.

23.    The Purchaser shall have no liability or responsibility for any liability or other obligation of the Selling Debtor Entities arising under or related to the Purchased Assets other than for the Assumed Liabilities and the Permitted Liens.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Purchaser shall not be liable for any claims against the Selling Debtor Entities or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing of the Sale, now existing or hereafter arising, whether fixed or contingent, with respect to the Business or any obligations of the Selling Debtor Entities arising prior to the Closing of the Sale, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Business prior to the Closing of the Sale.

24.    Under no circumstances shall the Purchaser be deemed a successor of or to the Selling Debtor Entities for any Interest or Claim against or in the Business or the Purchased Assets of any kind or nature whatsoever. The sale, transfer, assignment, and delivery of the Purchased Assets shall not be subject to any Interests and/or Claims, and Interests and/or Claims of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Selling Debtor Entities.  All persons holding Interests and/or Claims against or in the Debtors or the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such

15

Interests and/or Claims of any kind or nature whatsoever against the Purchaser, its property, its

successors and assigns, or the Purchased Assets with respect to any Interest or Claim of any kind

or nature whatsoever which such person or entity had, has, or may have against or in the Selling

Debtor Entities, their estates, their officers, their directors, their shareholders, or the Purchased

Assets.  Following the Closing of the Sale, no holder of an Interest or Claims in the Debtors shall

interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or

related to such Interest or Claim, or any actions that the Debtors may take in their chapter 11

cases.

      25.     The transactions contemplated by the Agreement are undertaken by the

Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchaser, unless such authorization is duly stayed pending such appeal.  The Purchaser is a

purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded

by section 363(m) of the Bankruptcy Code.

      26.     The consideration provided by the Purchaser for the Purchased Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

      27.     The Selling Debtor Entities, including, but not limited to, their officers,

employees, and agents, are hereby authorized to execute such documents and do such acts as are

necessary or desirable to carry out the transactions contemplated by the terms and conditions of

the Agreement and this Sale Order.  The Selling Debtor Entities shall be, and they hereby are,

authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order.

16

28.    The terms and provisions of the Agreement and this Sale Order shall be

binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their

estates, and their creditors, the Purchaser, and their respective affiliates, successors, and assigns,

and any affected third parties, including, but not limited to, all persons asserting an Interest or

Claim in the Purchased Assets to be sold to the Purchaser pursuant to the Agreement,

notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary

under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or

other fiduciary such terms and provisions likewise shall be binding.

29.    Notwithstanding anything contained herein to the contrary, the term

"Purchased Assets" as defined herein does not include property that is not property of the Selling

Debtor Entities' estates, such as funds that are trust funds under any applicable state lien laws.

30.    To the extent permitted by section 525 of the Bankruptcy Code, no

governmental unit may revoke or suspend any permit or license relating to the operation of the

Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or

pendency of these chapter 11 cases or the consummation of the Sale.

31.    The failure specifically to include or to reference any particular provision

of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Agreement be authorized and approved in its

entirety.

32.    The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court, <u>provided</u> that any such modification,

17

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates.

33.    The provisions of this Sale Order are nonseverable and mutually

dependent.

34.    Nothing in this Sale Order shall alter or amend the Agreement and the

obligations of the Selling Debtor Entities and the Purchaser thereunder.

35.    This Court retains exclusive jurisdiction to interpret, construe, enforce,

and implement the terms and provisions of this Sale Order, the Agreement, all amendments

thereto, any waivers and consents thereunder, and of each of the agreements executed in

connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a)

compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the purchase

price or performance of other obligations owed to the Debtors pursuant to the Agreement, (c)

resolve any disputes arising under or related to the Agreement, except as otherwise provided

therein, (d) interpret, implement, and enforce the provisions of this Sale Order, (e) protect the

Purchaser against any Interests and/or Claims against the Debtors or the Purchased Assets, of

any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine all

disputes among the Debtors, the Purchaser, and any non-debtor parties to any Assigned

Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or assignment of

any Assigned Contract to the Purchaser under the Agreement.

36.    Notwithstanding Rules 6004(g) and 6006(d) of the Federal Rules of

Bankruptcy Procedure or any other Bankruptcy Rule, this Sale Order shall take effect

immediately upon its entry.

18

37.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       [ ___ ], 2007


_____
         UNITED STATES BANKRUPTCY JUDGE

## **Exhibit D**

**Sale And Purchase Agreement**

**SALE AND PURCHASE AGREEMENT**

**BY AND AMONG**

**HARCO MANUFACTURING GROUP, LLC and HARCO BRAKE SYSTEMS, INC.**

**AND**

**DELPHI AUTOMOTIVE SYSTEMS LLC**

**AND**

**DELPHI TECHNOLOGIES, INC.**

**January 25, 2007**

# TABLE OF CONTENTS

**PAGE**

1. **CONVEYANCE OF THE ACQUIRED ASSETS** ...................................................... 11
    1.1 Acquired Assets Transaction ............................................................... 11
    1.2 Intellectual Property Rights and Licenses ........................................... 14

2. **ASSUMPTION OF LIABILITIES** .............................................................. 15
    2.1 Assumed Liabilities ............................................................................. 15
    2.2 No Expansion of Third Party Rights .................................................... 15
    2.3 Retained Liabilities ............................................................................. 15

3. **RESERVED** ........................................................................................... 16

4. **PURCHASE PRICE** ............................................................................... 16
    4.1 Preliminary Purchase Price, Deposit Amount, Purchase Price ........... 16
    4.2 Preparation of Inventory Valuation ..................................................... 18
    4.3 Preliminary Purchase Price Adjustment .............................................. 18
    4.4 Allocation of Purchase Price ............................................................... 19

5. **REPRESENTATIONS AND WARRANTIES** .............................................. 19
    5.1 Warranties of Seller ........................................................................... 19
    5.2 Warranties of Purchaser .................................................................... 25
    5.3 Survival of Representations, Warranties and Covenants .................... 27

6. **CONDITIONS TO CLOSING** ................................................................... 27
    6.1 Conditions to Obligations of Seller, DTI and Purchaser .................... 27
    6.2 Conditions to Obligations of Purchaser .............................................. 28
    6.3 Conditions to Obligations of Seller and DTI ....................................... 29

7. **CLOSING** ............................................................................................. 29
    7.1 The Closing ........................................................................................ 29
    7.2 Ancillary Agreements ......................................................................... 29
    7.3 Seller's Deliveries .............................................................................. 30
    7.4 Purchaser's Deliveries ....................................................................... 31

8. **CERTAIN ADDITIONAL COVENANTS** .................................................... 31
    8.1 Bankruptcy Actions ............................................................................ 31
    8.2 Registrations, Filings and Consents; Further Actions ........................ 31
    8.3 Operation of the Business Pending Closing ........................................ 32
    8.4 Assumed Contracts; Cure Amounts .................................................... 32
    8.5 Post-Closing Covenants ..................................................................... 32
    8.6 Further Assurances ............................................................................ 35
    8.7 Purchaser's Financing Activities ........................................................ 35
    8.8 Certain Transactions .......................................................................... 36
    8.9 Guarantee by Affiliate of Purchaser ................................................... 36
    8.10 NHTSA Requirements ...................................................................... 36
    8.11 Communications with Customers and Suppliers .............................. 36

i

**9. TERMINATION** ................................................................................ **36**
9.1  Termination ................................................................................ 36
9.2  Notice of Termination .................................................................. 37
9.3  Break-Up Fee; Expense Reimbursement ...................................... 38
9.4  Procedure and Effect of Termination ........................................... 38

**10. OTHER TAX MATTERS** ...................................................................... **39**

**11. BIDDING PROCEDURES** .................................................................... **40**
11.1  Delphi Initial Bankruptcy Actions............................................... 40
11.2  Court Approval ......................................................................... 40
11.3  Qualified Bidder........................................................................ 41
11.4  Bid Deadline ............................................................................ 42
11.5  Due Diligence........................................................................... 42
11.6  Bid Requirements ..................................................................... 43
11.7  Qualified Bids .......................................................................... 43
11.8  Bid Protection .......................................................................... 44
11.9  Auction, Bidding Increments and Bids Remaining Open ................ 44
11.10  Acceptance of Qualified Bids..................................................... 46
11.11  Sale Hearing............................................................................. 46
11.12  Return of Good Faith Deposit .................................................... 46
11.13  Reservations of Rights .............................................................. 46

**12. INDEMNIFICATION** ........................................................................... **47**
12.1  Seller's Agreement to Indemnify................................................. 47
12.2  Purchaser's Agreement to Indemnify .......................................... 47
12.3  Limitations on Agreements to Indemnify ..................................... 47
12.4  Third Party Indemnification ....................................................... 49

**13. MISCELLANEOUS** ............................................................................. **49**
13.1  Bulk Sales Laws ....................................................................... 49
13.2  Notices .................................................................................... 50
13.3  Assignment .............................................................................. 50
13.4  Entire Agreement ...................................................................... 50
13.5  Waiver...................................................................................... 50
13.6  Severability.............................................................................. 51
13.7  Amendment............................................................................... 51
13.8  Expenses .................................................................................. 51
13.9  Third Parties............................................................................. 51
13.10  Headings .................................................................................. 51
13.11  Counterparts............................................................................. 51
13.12  Governing Law .......................................................................... 51
13.13  Public Announcements............................................................... 51
13.14  Sales or Transfer Taxes ............................................................ 52
13.15  Venue and Retention of Jurisdiction ........................................... 51
13.16  Risk of Loss............................................................................. 51
13.17  Enforcement of Agreement........................................................ 51
13.18  Dispute Resolution .................................................................... 52
13.19  No Right of Setoff..................................................................... 52
13.20  Dollar Amounts......................................................................... 53
13.21  Limitation on Damages.............................................................. 53

**LIST OF SCHEDULES**

| Schedule Designation | Schedule Description |
|---|---|
| A | Seller's Knowledge |
| B | Deposit Escrow Agreement |
| 1.1.1.B | Personal Property and Software |
| 1.1.1.C | Permits |
| 1.1.1.D | Inventory |
| 1.1.1.E | Transferred Contracts |
| 1.1.2.A | Third Party Bailed Assets |
| 1.1.2.L | Other Excluded Assets |
| 4.2.1 | Initial Inventory Valuation |
| 4.4.1 | Allocation of Preliminary Purchase Price |
| 5.1.3 | Third Party Requirements |
| 5.1.5.A | Title to Personal Property |
| 5.1.5.C | Other Inventory Locations |
| 5.1.5.D | Machinery, Equipment and Capitalized Tools |
| 5.1.6 | Litigation |
| 5.1.7.A.1 | Owned Intellectual Property |
| 5.1.7.A.2 | Licensed Intellectual Property |
| 5.1.7.A.3 | Software |
| 5.1.7.B | Intellectual Property Litigation Claims |
| 5.1.7.C | Rights Granted to Third Parties |
| 5.1.8 | Permit Compliance |
| 5.1.11 | December 31, 2003, 2004 and 2005 Unaudited Pro forma Income Statements for the Business |
| 5.1.12 | Absence of Certain Changes |
| 5.1.13.A | Listed Contracts |
| 5.1.13.B | Listed Contracts - Exceptions |
| 5.1.16 | Insurance |
| 5.2.3 | No Violations |
| 6.3.3 | Wire Transfer Instructions |
| 7.2.1 | Manufacturing Services Agreement |
| 7.2.2 | Assignment of Patent Rights |
| 7.2.3 | Assignment and Assumption Agreement |
| 7.2.4 | Transition Services Agreement |
| 7.2.6 | Bill of Sale |
| 7.2.7 | Indemnity Escrow Agreement |
| 7.2.8 | Guarantee by Harco |
| 7.2.9 | Rubber Compound Supply Agreement |
| 8.4 | Assumed Contracts |

## SALE AND PURCHASE AGREEMENT

**THIS SALE AND PURCHASE AGREEMENT** dated **January 25, 2007,** by and among **Harco Manufacturing Group, LLC,** an Ohio limited liability company ("**Purchaser**" or "**AcquisitionCo**"), **Harco Brake Systems, Inc.**, an Ohio corporation ("**Harco**"), **Delphi Automotive Systems LLC.**, a Delaware limited liability company ("**Delphi**" or "**Seller**"), and **Delphi Technologies, Inc.**, a Delaware corporation ("**DTI**"). For convenience, AcquisitionCo, and Harco are sometimes jointly and severally referred to in this Agreement as "**Purchaser**".

## R E C I T A L S :

**WHEREAS**, Delphi is engaged in the Business (as hereinafter defined).  DTI owns the Purchased Intellectual Property used in the Business.

**WHEREAS**, on October 8, 2005 (the "**Petition Date**"), Delphi, DTI and certain of their affiliates filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§101 et seq. (as amended) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**WHEREAS**, All of the capital stock of Harco is owned and controlled by Larry G. Harris, an individual ("**Harris**").  Harco and Purchaser  are Affiliates of one another by virtue of Harris's common control.

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 105, 363, 365 and 1146 of the Bankruptcy Code, Delphi desires to sell to Purchaser all right, title and interest of Delphi in and to the Acquired Assets (as hereinafter defined), DTI desires to sell to Purchaser the Purchased Intellectual Property, and Purchaser (as hereinafter defined) desires to make such purchases, subject to Purchaser's assumption of the Assumed Liabilities and the conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

## DEFINITIONS

The following terms, as used in this Agreement, shall have the following meanings whether used in the singular or plural (other terms are defined in Sections or Schedules to which they pertain):

"**Accounts Payable**" means all trade accounts payable and other obligations to pay suppliers and third parties to the extent arising from the conduct of the Business or relating to the Acquired Assets to the extent not settled prior to the Closing Date.

"**Accounts Receivable**" means all trade accounts receivable and other rights to payment from customers and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in

1

respect of Products delivered to customers, all other accounts or notes receivable and the full benefit of all security for such accounts or notes and any claim, remedy or other right related to any of the foregoing.

"**Acquired Assets**" means the assets referred to in Section 1.1.1.

"**AcquisitionCo**" shall have the meaning set forth in the Recitals.

"**Administrative Assets**" means books, records and other administrative assets including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, billing records, accounting records, other financial records, and sale order files; provided, however that Administrative Assets do not include Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity. For purposes of this definition, control means ownership of at least fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.  For the purposes of this definition, a Party shall be deemed to control the shares or other equity interest of said Party's spouse.

"**Agreement**" means this Sale And Purchase Agreement, including its Schedules.

"**Allocation**" means allocation of the Purchase Price, as described in Section 4.4.1.

"**Alternate Bid(s)**" shall have the meaning set forth in Section 11.11.

"**Alternate Bidder(s)**" shall have the meaning set forth in Section 11.11.

"**Alternative Transaction**" shall have the meaning set forth in Section 9.3.1.

"**Ancillary Agreements**" means the agreements referred to in Section 7.2.

"**Assumed Contracts**" means assumed Contracts of the Seller as further described in Section 8.4.

"**Assumed Liabilities**" means the obligations assumed by Purchaser pursuant to Article 2.

"**Auction**" shall have the meaning set forth in Section 11.9.

"**Bankruptcy Cases**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Code**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Court**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Bid Deadline**" shall have the meaning set forth in Section 11.4.

2

"**Bidding Procedures**" means the bidding procedures set forth in Section 11.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures.

"**Bidding Process**" shall have the meaning set forth in Section 11.1.

"**Book Assets**" means: (i) all rights to or in connection with prepaid expenses; and (ii) all claims and similar rights (and benefits arising from such claims or rights) owing to Seller, whether or not yet due and payable, including the benefit of all security therefor and of all guarantees, indemnities and rights (including warranty rights against suppliers) in respect of the same.

"**Break-Up Fee**" shall have the meaning set forth in Section 9.3.1.

"**Business**" means Seller's brake hose Product line, including, but not limited to, brake hoses, components, fittings, assemblies and the design and validation processes associated therewith.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York are authorized or obligated by law or executive order to close.

"**Claims**" mean losses, liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Closing**" shall have the meaning set forth in Section 7.1.

"**Closing Date**" means the date of Closing.

"**Commitment Letter**" shall have the meaning set forth in Section 5.2.7.

"**Competitive Business**" shall have the meaning set forth in Section 8.5.1.A.

"**Contracts**" mean all written or oral purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases (real property, personal property, or otherwise), product warranty or service agreements and other commitments, agreements and undertakings of any kind outstanding on the Closing Date.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein, provided by international treaties or conventions; (ii) moral rights (including, without limitation, rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications for registration thereof; (v) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (vi) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (vii) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

3

"**Creditors Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Cases as set forth in Section 11.4.

"**Cure Amounts**" means all cure amounts payable by Seller or DTI in order to cure any monetary defaults required to be cured under Section 365(b)(1) or otherwise effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchaser of Assumed Contracts assigned to Purchaser under the Sale Approval Order.

"**Debt**" means financing-type indebtedness consisting of obligations for borrowed money as evidenced by bonds, debentures, notes or other similar instruments, and including principal and interest thereon.

"**Defending Party**" shall have the meaning set forth in Section 13.18.

"**Delphi**" shall have the meaning set forth in the Recitals.

"**Demanding Party**" shall have the meaning set forth in Section 13.18.

"**Deposit Amount**" shall have the meaning set forth in Section 4.1.1.

"**Deposit Escrow Agent**" means JPMorgan Trust Company, National Association, a national banking association.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement entered into among Seller, Purchaser and the Deposit Escrow Agent as of the date of this Agreement in the form attached hereto as <u>Schedule B</u>.

"**Direct Material Inventory**" means finished goods, raw materials and work-in-progress that is used to produce Products.

"**Disclosure Schedule**" means, collectively, the Schedules to Seller's Representations and Warranties contained in Section 5.1.

"**DTI**" means Delphi Technologies, Inc.

"**Equityholders Committee**" means the Official Committee of Equity Security Holders as set forth in Section 11.4.

"**Escrow Period**" shall have the meaning set forth in Section 4.1.3.

"**Excess Direct Material Inventory**" shall have the meaning set forth in Section 4.2.2.

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.1.2.

"**Excluded Contracts**" shall have the meaning set forth in Section 1.1.2.C.

"**Excluded Intellectual Property**" shall have the meaning set forth in Section 1.1.2.E.

"**Expense Reimbursement**" shall have the meaning set forth in Section 9.3.2.

4

"**Expiration Date**" shall have the meaning set forth in Section 5.3.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending; or (ii) if an appeal, writ of certiorari, re-argument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or re-argument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

"**Financial Assets**" means the assets referred to in Section 1.1.2.B.

"**Financial Statements**" shall have the meaning set forth in Section 5.1.11.

"**Financing**" shall have the meaning set forth in Section 5.2.7.

"**Good Faith Deposit**" shall have the meaning set forth in Section 11.6.3.

"**Governmental Entity**" means any United States federal, state or local, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality or body having governmental authority with respect to the transactions contemplated hereby, under applicable law.

"**Guarantee by Harco**" shall have the meaning set forth in Section 7.2.8.

"**Harco**" means Harco Brake Systems, Inc., an Ohio corporation.

"**Harris**" means Larry G. Harris, an individual.

"**Indemnification Claim**" shall have the meaning set forth in Section 12.4.

"**Indemnity Escrow Agent**" shall have the meaning set forth in Section 4.1.3.

"**Indemnity Escrow Agreement**" shall have the meaning set forth in Section 4.1.3.

"**Indemnity Escrow Amount**" shall have the meaning set forth in Section 4.1.3.

"**Independent Accounting Firm**" shall have the meaning set forth in Section 4.2.2.

"**Initial Inventory Valuation**" shall have the meaning set forth in Section 4.2.1.

"**Intellectual Property**" means the Patent Rights, Copyrights, Software, Technical Documentation, Trade Secrets and Know-How.

5

"**Intellectual Property Purchase Price**" shall have the meaning set forth in Section 4.1.2.

"**Inventory**" means finished goods, raw materials, work-in-process, and packaging, spare parts, stores, stock, supplies and other inventory, wherever located.

"**Inventory Valuation**" shall have the meaning set forth in Section 4.2.2.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Know-How**" means proprietary technical and business knowledge and information, including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

"**Licensed Intellectual Property**" means Seller and DTI rights with respect to all Intellectual Property licensed or sublicensed to Seller from an affiliated or unaffiliated third party.

"**Lien**" means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

"**Listed Contracts**" means the Business' contracts and commitments listed on Schedule 5.1.13.A.

"**Manufacturing Services Agreement**" shall have the meaning set forth in Section 7.2.1.

"**Marked Agreement**" shall have the meaning set forth in Section 11.6.2.

"**Material Adverse Effect**" means any change or event that has a material adverse effect on the business, assets, properties, financial condition or results of operations of the Business taken as a whole, except any change or event resulting from, relating to or arising out of: (a) any act or omission of a Seller taken with the prior written consent of the Purchaser; (b) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement; (c) general business or economic conditions; (d) conditions affecting the industry and markets in which the Business generally operates; (e) increases in energy, electricity, natural gas, raw materials or other operating costs; (f) changes resulting from the filing of the Bankruptcy Cases or from any action required by the Bankruptcy Court; (g) national or international political or social conditions, including the engagement by the United States in hostilities, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon such country, or any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment

6

or personnel of any of such countries; (h) acts of God; (i) financial, banking or securities markets (including any disruption thereof and any decline in the price of any security or any market index); (j) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction; (k) changes in any Law; (l) any existing event, occurrence or circumstance listed in the Disclosure Schedules as of the date hereof; (m) any adverse change in or effect on the Business that is cured, in its entirety, by Seller before the earlier of: (1) the Closing Date; and (2) the date on which this Agreement is terminated pursuant to Section 9.1 hereof; or (n) the regulatory status of the Purchaser.

"**Notice**" shall have the meaning set forth in Section 13.18.

"**OFAC**" shall have the meaning set forth in Section 5.2.9.

"**Ordinary Course of Business**" means, with respect to the Business, the ordinary course of business consistent with custom and practice of the Business from and after the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases.

"**Organizational Documents**" means: (a) the articles of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) the articles or certificate of organization and the operating agreement or other document intended to govern the structure and/or internal affairs of a limited liability company; (e) any charter, agreement, indenture, or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (f) any amendment to the foregoing.

"**Owned Intellectual Property**" means all Intellectual Property in and to which DTI or Sellers holds, or has a right to hold, in whole or in part, right, title and interest.

"**Party**" or "**Parties**" means Purchaser, Harco, DTI and Seller.

"**Patent Rights**" means: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including, without limitation, any patent disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents, and patent applications (including all provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions, and all patentable improvements to the inventions disclosed in each such registration, patent or application; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to Seller and that are currently used exclusively for the purpose of carrying on the Business or that relate exclusively to the Acquired Assets.

"**Permitted Lien**" means: (i) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to customer tooling arising in the Ordinary Course of Business; and (iii) Liens of Seller's pre-Petition Date secured lenders and post-Petition Date secured lenders which will be released on or prior to the Closing of the Sale; provided that, if not practicable to obtain prior to Closing, then within five (5) Business Days thereafter.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production and process fixtures, material handling equipment, computer hardware and other IT assets other than Intellectual Property, model shop equipment, laboratory test fixtures, and other tangible personal property, whether located on the Seller's premises, at the place of business of a vendor or elsewhere.

"**Petition Date**" shall mean October 8, 2005.

"**Policy Statement**" shall have the meaning set forth in Section 8.4.

"**Post-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Post-Petition Contracts**" means the Contracts of Delphi relating exclusively to the Business entered into on or after the Petition Date.

"**Potential Bidder**" shall have the meaning set forth in Section 11.3.

"**Pre-Closing Portion**" shall have the meaning set forth in Section 10.3.

"**Pre-Petition Contracts**" means the Contracts of the Seller relating exclusively to the Business entered into before the Petition Date.

"**Preliminary Purchase Price**" means the payment referred to in Section 4.1.

"**Products**" means components, hose, fittings and assemblies of brake hoses manufactured both directly at Delphi's facility located in Dayton, Ohio, U.S.A. and, indirectly through contract manufacturers.

"**Purchase Price**" means the final purchase price paid on the Closing Date, after taking into account the Purchase Price Adjustment, pursuant to Article 4.

"**Purchase Price Adjustment**" means the adjustment to the Preliminary Purchase Price described in Section 4.3.

"**Purchase Price Decrease**" shall have the meaning set forth in Section 4.3.

"**Purchase Price Increase**" shall have the meaning set forth in Section 4.3.

"**Purchased Intellectual Property**" means all Owned Intellectual Property and Licensed Intellectual Property exclusively used in, exclusively arising from, or exclusively relating to the Business.

8

"**Purchaser**" means Harco Manufacturing Group, LLC, an Ohio limited liability company.

"**Purchaser Damages**" shall have the meaning set forth in Section 12.1.

"**Purchaser's Disclosure Schedules**" means, collectively, the Schedules to Purchaser's Representations and Warranties contained in Section 5.2.

"**Qualified Bid**" shall have the meaning set forth in Section 11.7.7.

"**Qualified Bidder**" shall have the meaning set forth in Section 11.3.

"**Required Bid Documents**" shall have the meaning set forth in Section 11.6.

"**Retained Liabilities**" shall have the meaning set forth in Section 2.3.

"**Return Date**" shall have the meaning set forth in Section 11.12.

"**Sale**" means the sale of the Business in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court approving the Sale issued pursuant to Sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Purchaser, authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets, Purchased Intellectual Property and Assumed Liabilities to the Purchaser in accordance with the terms and conditions of this Agreement, free and clear of all Liens other than Permitted Liens.

"**Sale Hearing**" shall have the meaning set forth in Section 11.10.

"**Sale Motion**" means the motion filed by Seller with the Bankruptcy Court for approval of the Sale Approval Order.

"**SDN List**" shall have the meaning set forth in Section 5.2.9.

"**Seller**" means Delphi Automotive Systems LLC, a Delaware limited liability company.

"**Seller Damages**" shall have the meaning set forth in Section 12.2.

"**Seller's Knowledge**" or "**Knowledge of Seller**" means the actual knowledge after reasonable investigation of the individuals listed on <u>Schedule A</u> in each of their respective functional areas without imputation of the knowledge of any other Person.

"**Software**" means Seller or DTI computer software and programs, including, without limitation, source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**Straddle Period**" means any taxable period that begins on or prior to the Closing Date and ends after the Closing Date.

9

"**Subsequent Bid**" shall have the meaning set forth in Section 11.7.7.

"**Successful Bid(s)**" shall have the meaning set forth in Section 11.9.6.

"**Successful Bidder(s)**" shall have the meaning set forth in Section 11.9.6.

"**Tax Return**" means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any Schedule or attachment thereto.

"**Tax(es)**" means any tax or similar governmental charge, impost or levy whatsoever (including, without limitation, income, franchise, transfer taxes, use, gross receipts, value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty, minimum or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

"**Technical Documentation**" means all documented technical information currently in the files of the Business used in the Business owned by Seller, in each case pertaining to the design or manufacture of the Products of the Business.

"**Termination Date**" shall have the meaning set forth in Section 9.1.1.E.

"**Third Party Bailed Assets**" shall have the meaning set forth in Section 1.1.2.A.

"**Third-Party Requirements**" shall have the meaning set forth in Section 5.1.3.

"**Trade Secrets**" means: (i) all forms and types financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); (ii) all copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (iii) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (iv) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" means: (i) trademarks, trade names and service marks; (ii) the good will associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transferred Contracts**" shall have the meaning set forth in Section 1.1.1.E.

"**Transition Services Agreement**" shall have the meaning set forth in Section 7.2.4.

"**Union**" means the United Steel Workers of America, Local 87L, AFL-CIO/CLC.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**USA PATRIOT Act**" shall have the meaning set forth in Section 5.2.9.

"**Warranties**" refers to the representations and warranties provided by Seller to Purchaser, or by Purchaser to Seller, as the case may be, in each case as referred to in Article 5 of this Agreement.

# 1.    CONVEYANCE OF THE ACQUIRED ASSETS:

**1.1.    Acquired Assets Transaction**. Upon the terms and subject to the conditions set forth in this Agreement at Closing Seller shall sell, transfer, assign, convey and deliver to the Purchaser, and Purchaser shall purchase, accept and acquire from the Seller, free and clear of all Liens except Permitted Liens, all of the assets and properties wherever located (collectively, the "**Acquired Assets**") described in Section 1.1.1 below, subject in each case to Section 1.1.2.

**1.1.1.    Acquired Assets.**  The Acquired Assets consist of all of Seller's right, title and interest in and to the rights and assets exclusively used in, exclusively arising from, or exclusively relating to the Business (other than the Excluded Assets and the Purchased Intellectual Property), including:

      **A.**    Book Assets of the Business;

      **B.**    Only the Personal Property and Software set forth on Schedule 1.1.1.B;

      **C.**    Only the Permits set forth on Schedule 1.1.1.C;

      **D.**    Only the Inventory set forth on Schedule 1.1.1.D, as modified in the Inventory Valuation;

      **E.**    Only the Contracts set forth on Schedule 1.1.1.E ("**Transferred Contracts**");

      **F.**    Administrative Assets of the Business; and

      **G.**    All going concern value of the Business, if any.

The parties agree that Schedules 1.1.1.B, 1.1.1.D and 1.1.1.E shall be updated by mutual agreement of the parties (such agreement not to be unreasonably withheld) at Closing for those significant items acquired or Contracts of any significance entered into after the execution of this Agreement, if any.

**1.1.2.  Excluded Assets.**  Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets of Seller and DTI shall not be included in the Acquired Assets:

      **A.**  **Bailed Assets.**  Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by any other third party, including such items set forth on Schedule 1.1.2.A ("**Third Party Bailed Assets**").  To Seller's Knowledge, the items set forth on Schedule 1.1.2.A were the only items provided by General Motors Corporation relating exclusively to the Business.

      **B.**  **Certain Financial Assets.**  Accounts Receivable, cash, cash equivalents and bank accounts ("**Financial Assets**").

      **C.**  **Excluded Contracts.**  All Contracts that are not Transferred Contracts ("**Excluded Contracts**").

      **D.**  **Tax Refunds.**  Any refund of Taxes, or claim for refund of Taxes, of any kind relating to the Acquired Assets for any period prior to the Closing Date.

      **E.**  **Excluded Intellectual Property.**  All Intellectual Property not exclusively used, exclusively arising from or exclusively relating to the Business as currently conducted (collectively, the "**Excluded Intellectual Property**") subject to the limited rights granted to Purchaser pursuant to Section 1.2.1.  In particular, without limiting the foregoing, "Delphi" and all other trademarks, service marks, trade names and logos not listed on Schedule 5.1.7.A.1, and all Software is excluded, except for the Software listed on Schedule 1.1.1.B or that may be a deliverable to Delphi under a Contract set forth on Schedule 1.1.1.E.

      **F.**  **Privileged Information and Materials.**  Information and materials protected by the attorney-client privilege or that Seller considers to be proprietary information; and the lack of which excluded information and materials are not material to the operation of the Business.

      **G.**  **Personnel and Medical Records.**  All employees of Seller operating or supporting the Business and all work histories, personnel and medical records of employees and former employees of Seller who worked at any time for any reason at the Business for whom a record exists at the Business as of the Closing Date.

      **H.**  **Real Property.**  All real property and interests of any kind or nature in real property, including any and all buildings, fixtures (except as explicitly set forth in Schedule 1.1.1.B) and other improvements, owned, leased, controlled, or used by Seller or any Affiliate or subsidiary of Seller.

      **I.**  **Transition Services Agreement, Manufacturing Services Agreement and Rubber Supply Agreement.**  All services and products offered to be provided directly or indirectly under the Transition

12

Services Agreement, the Manufacturing Services Agreement and/or the Rubber Supply Agreement.

**J.      Insurance.**    The benefit of any of Seller's or Seller's Affiliates' insurance policies relating to the operation of the Business (including any right to proceeds thereunder).

**K.      Certain Rights.**    All of the rights and claims of the Seller available to Seller under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

**L.      Other Assets.**    (i) All finished goods Inventory and all inventories, products, rights, properties, assets and businesses of the Business which shall have been transferred or disposed of by Seller prior to Closing not in breach of this Agreement; (ii) any document, information, Permit, Contract, Intellectual Property or other asset the transfer of which is prohibited by any Law; and (iii) all computer hardware, equipment, or other assets listed on Schedule 1.1.2.L.

**1.1.3.  Post-Closing Asset Deliveries.**  Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Acquired Assets or Purchased Intellectual Property are still in the possession of Seller and/or DTI, Seller and/or DTI, as applicable, shall promptly deliver them to Purchaser at no cost to Purchaser.  Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Purchaser, Purchaser shall promptly return them to Seller at no cost to Seller other than reimbursing Purchaser's reasonable out-of-pocket costs.

**1.1.4.  Non-Assignable Permits and Contracts:**

**A.      Non-Assignability.**  To the extent that any Transferred Contract or Permit included in the Acquired Assets is not capable of being assigned to Purchaser at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, unless any such consent or waiver is obtained.

**B.      Efforts to Obtain Consents and Waivers.**    At Purchaser's request, Seller shall, at its expense, use commercially reasonable efforts, and Purchaser shall, at Seller's expense, cooperate with Seller, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.1.4.A after the Closing.

**C.      If Waivers or Consents Cannot be Obtained.**  To the extent that the consents and waivers referred to in Section 1.1.4.A are not

13

obtained by Seller, or until the impracticalities of assignment referred to therein are resolved, Seller's sole responsibility with respect to such matters, notwithstanding Section 1.1, shall be to use, during the one hundred eighty (180) day period commencing with the Closing, all commercially reasonable efforts, at no cost to Purchaser (other than pursuant to Section 1.1.4.D) to: (i) provide to Purchaser the benefits of any Permit or Transferred Contract, all as referred to in Section 1.1.4.A, included in the Acquired Assets; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Purchaser, without incurring any financial obligation to Purchaser; and (iii)  at the request and direction of Purchaser, enforce for the account of Purchaser and at the cost of Purchaser any rights of Seller arising from the Permits or Transferred Contracts included in the Acquired Assets referred to in Section 1.1.4.A against such issuer thereof or other party or parties thereto.

**D.**    **Obligation of Purchaser to Perform.**  To the extent that Purchaser is provided the benefits pursuant to Section 1.1.4.C of any Permit or Transferred Contract included in the Acquired Assets, Purchaser shall perform, on behalf of Seller, for the benefit of the issuer thereof or the other party or parties thereto the obligations of Seller thereunder or in connection therewith and if Purchaser shall fail to perform to the extent required herein, Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.1.4.C in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or at Purchaser's request, Seller may perform at Purchaser's sole reasonable cost and expense, in which case Purchaser shall reimburse Seller's reasonable costs of such performance immediately upon receipt of an invoice therefor.

**1.2.**    **Intellectual Property Rights and Licenses**:

**1.2.1.  License to Purchaser.**  DTI and Seller, as applicable, hereby grant to Purchaser, as of the date of Closing, but subject to any restrictions arising from rights granted to third parties prior to the Closing Date, a worldwide, perpetual, paid-up, royalty free, non-exclusive license, without the right to sublicense except as provided in Section 1.2.3, to develop, manufacture, use, import, export and sell Products using Excluded Intellectual Property embodied in or used in the manufacture of Products as of the Closing Date by Seller, including US Patent No. 6689243, and other than: (i) Trademark Rights; and (ii) third-party Software.  The license granted to Purchaser under this Section 1.2.1 shall not be assignable in whole or in part except to a purchaser of all or substantially all of the Business.

**1.2.2.  License Retained by DTI.**  DTI will retain a worldwide, perpetual, paid-up, royalty free, non-exclusive license allowing it and its Affiliates to develop, manufacture, use, import, export and sell products and services (other than Products), and sublicense others to do so (other than Products), using any Purchased Intellectual Property, subject to any restrictions arising from rights granted to third parties prior to the Closing Date.

14

**1.2.3. Further Understandings.** It is further understood and agreed that the licenses granted or retained in this Section 1.2: (i) include the right for the licensed party to sub-license to any of its Affiliates; (ii) include the right for the Purchaser to sub-license to any of its subcontractors, provided that such subcontractors use the licensed material for the benefit of making Products for Purchaser and/or Purchaser's customer; and (iii) do not include any right to use any Trademark Rights.

## 2.  ASSUMPTION OF LIABILITIES:

**2.1.  Assumed Liabilities.** At and as of the Closing, Purchaser shall assume and agree to pay, perform and discharge when due, and shall be liable with respect to, all obligations, liabilities and responsibilities specifically referred to in this Section 2.1 ("**Assumed Liabilities**"), other than the Retained Liabilities, as follows:

**2.1.1.** The executory obligations of Seller to be performed under the Transferred Contracts and the obligations of Seller to be performed under, licenses, Permits and leases included in the Acquired Assets and assigned or otherwise transferred to Purchaser pursuant to this Agreement.

**2.1.2.** Any and all liabilities, claims and other obligations relating to ownership or use of the Acquired Assets arising after the Closing Date.

**2.1.3.** The obligation to pay for assets, goods or services ordered by Seller on or prior to the Closing in the Ordinary Course of Business and that are reasonably anticipated by the Seller to be received by the Purchaser after the Closing Date, provided that the individual amounts of such purchases do not exceed $10,000.00 unless otherwise approved by Purchaser.

**2.1.4.** Liabilities and obligations arising out of, resulting from, or relating to sales of Products pursuant to the Transferred Contracts after the Closing Date, including all Product warranty, Product returns, Product liability and Product recall liability related thereto. Purchaser and Seller acknowledge and agree that nothing in this Agreement is intended to alter the allocation of responsibilities or obligations, including, but not limited to, liability for Product warranty, Product returns, Product liability and Product recall liability, for Products assembled by Harco and purchased by Seller prior the Closing Date.

**2.1.5.** All obligations to fulfill orders relating to Products of the Business outstanding on the Closing Date.

**2.2.  No Expansion of Third Party Rights.** The assumption by Purchaser of the Assumed Liabilities shall in no way expand the rights or remedies of any third party against Purchaser or Seller as compared to the rights and remedies which such third party would have had against Seller absent the Bankruptcy Cases, had Purchaser not assumed such Assumed Liabilities. Without limiting the generality of the preceding sentence, the assumption by Purchaser of the Assumed Liabilities shall not create any third-party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

**2.3.  Retained Liabilities.** Notwithstanding anything in this Agreement to the contrary, Purchaser shall not assume or be deemed to have assumed, and shall have no

15

liability or obligation with respect thereto, any other liability or obligation of the Seller or DTI (collectively, "**Retained Liabilities**"), including, but not limited to, the following: (i) liabilities in respect of employment or services performed on or prior to the Closing; (ii) product liability claims for Products manufactured prior to the Closing Date; (iii) existing litigation for which a claim has made or threatened in writing against Seller on or before the Closing Date; (iv) Tax liabilities for periods ending on or before the Closing Date; (v) any liability or obligation of Seller for administrative fees and expenses, including, without limitation, "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code; (vi) any liability or obligation of Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement;  (vii) Accounts Payable; (viii) all Debt owed by Seller to any person or entity; and (ix) any liability or obligation not expressly assumed pursuant to Section 2.1.

3.    **RESERVED.**

4.    **PURCHASE PRICE**:

    **4.1.    Preliminary Purchase Price, Deposit Amount, Purchase Price.** Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets shall be the amount of: (i) Nine Million Seven Hundred Fifty Thousand Dollars ($9,750,000.00); plus or minus (ii) the Purchase Price Adjustment (as finally determined in accordance with Sections 4.2 and 4.3 below); plus (iii) assumption of the Assumed Liabilities.  The term  "**Preliminary Purchase Price**" refers to the sum of the amount referred to in clause (i) above plus the Intellectual Property Purchase Price.    The final aggregate purchase price, as determined in accordance with this Article 4, is referred to herein as the "**Purchase Price**".

        **4.1.1.    Deposit Amount.**  Upon execution of this Agreement, Purchaser shall pay $500,000.00 in immediately available funds to the Deposit Escrow Agent pursuant to the terms of the Deposit Escrow Agreement (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Deposit Escrow Agent in an interest bearing account reasonably acceptable to Purchaser to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures:

            **A.    Deposit Instructions.**  At Closing, Seller and Purchaser shall jointly instruct the Deposit Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Seller in the Deposit Escrow Agreement (and such amount shall be applied towards the payment of the Purchase Price).  The costs and expenses of the Deposit Escrow Agent will be paid from and borne solely by the Deposit Amount;

            **B.    Termination of Agreement.**    Upon any failure by Purchaser to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Article 7 hereof, the Deposit Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Seller in the Deposit Escrow Agreement, to be retained by Seller. Any such payment shall constitute Seller's sole recourse in the event Purchaser notifies

16

Seller, prior to the Auction date, of Purchaser's intent to terminate this Agreement. Upon any breach by Purchaser on or after the Auction date, Seller will be entitled to all available remedies in law or equity.

**C.    Other Reason.**  Upon termination of this Agreement for any other reason or upon the failure by Seller to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Section 7, Seller and Purchaser shall jointly instruct the Deposit Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Purchaser in the Deposit Escrow Agreement, to be retained by Purchaser.

**4.1.2.  Transfer of Purchased Intellectual Property and Purchase Price of Purchased Intellectual Property.**  Upon the terms and subject to the conditions set forth in this Agreement at Closing Seller and DTI shall sell, transfer, assign, convey and deliver to the Purchaser, and Purchaser shall purchase, accept and acquire from DTI, free and clear of all Liens except Permitted Liens; the Purchased Intellectual Property, subject to Section 1.1.2.

Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Purchased Intellectual Property shall be the amount of Fifty Thousand Dollars ($50,000.00) ("**Intellectual Property Purchase Price**").

**4.1.3.  Delivery of Purchase Price and Intellectual Property Purchase Price.**  At Closing, Purchaser shall pay to Seller an aggregate amount equal to the Preliminary Purchase Price less the Deposit Amount (apportioned pursuant to the allocation referred to in Section 4.4) and less the Indemnity Escrow Amount (as described below) by wire transfer in U.S. Dollars in immediately available funds to the account of the appropriate Seller, pursuant to this Agreement and a notice delivered by Seller to Purchaser prior to Closing. At Closing, Purchaser shall pay to "**Indemnity Escrow Agent**" hereunder $750,000.00 of the Purchase Price (hereinafter referred to as the "**Indemnity Escrow Amount**") to be held by the Indemnity Escrow Agent, in an interest bearing account, as collateral to secure the rights of the Purchaser under Article 12 hereof. The Indemnity Escrow Amount shall be held pursuant to the provisions of an escrow agreement substantially in the form of Schedule 7.2.7 (the "**Indemnity Escrow Agreement**"). The Indemnity Escrow Amount will be held by the Indemnity Escrow Agent from the Closing Date until twelve (12) months after the Closing Date (the "**Escrow Period**"); provided, however, that in the event Purchaser has made a claim under Article 12 prior to the end of the Escrow Period, then the Escrow Period shall continue (and the Indemnity Escrow Agent will continue to hold in escrow that portion of the Indemnity Escrow Amount which is equal to the amount which is necessary to satisfy such indemnity claim) until such claim is fully and finally resolved. The costs and expenses of the Indemnity Escrow Agent will be paid from and borne solely by the Escrow Amount. Purchaser's recourse for any indemnification under Article 12 hereunder shall be limited to the Indemnity Escrow Amount.

17

**4.2.    Preparation of Inventory Valuation:**

**4.2.1.** Commencing on the Closing Date, Purchaser and Seller shall jointly conduct a physical count of the Direct Material Inventory as of the Closing Date. Following the physical count, the parties shall calculate the value of the Direct Material Inventory (the "**Initial Inventory Valuation**") using the same methods used by Seller in calculating the value of Direct Material Inventory as of April 27, 2006, as set forth in Schedule 4.2.1. Purchaser and Seller will receive a copy of the Initial Inventory Valuation. Within thirty (30) days following the Closing Date, Purchaser and Seller shall agree upon the Initial Inventory Valuation.

**4.2.2.** If Purchaser and Seller do not agree upon the Initial Inventory Valuation within thirty (30) days after the Closing Date, any disagreement shall be submitted for final determination to an independent regional accounting firm (the "**Independent Accounting Firm**"). The Independent Accounting Firm shall follow such procedures as it deems appropriate for obtaining the necessary information in considering the positions of Purchaser and Seller. The Independent Accounting Firm shall render its determination on the matter within twenty (20) days of its submission by Purchaser and Seller, and such determination shall be final, conclusive and binding upon Purchaser and Seller. The fees and expenses of the Independent Accounting Firm shall be paid equally by Purchaser and Seller. The term "**Inventory Valuation**" refers to the final Initial Inventory Valuation as agreed by the parties or as determined by the Independent Accounting Firm. Under no circumstances shall the Inventory Valuation under this Agreement include: (i) any obsolete or other non-saleable Direct Material Inventory; or (ii) any Excess Direct Material Inventory. "**Excess Direct Material Inventory**" shall mean any Inventory held for service parts in excess of reasonable amounts needed for projects that have been terminated or will be terminated within one (1) year of the Closing which exceed the Inventory necessary to complete any such project, as reasonably determined by Seller consistent with current customer forecasts and historical requirements and agreed by Purchaser (such agreement not to be unreasonably withheld).

**4.3.    Preliminary Purchase Price Adjustment.** The Preliminary Purchase Price shall be adjusted ("**Purchase Price Adjustment**") as follows:

The Purchase Price shall be increased (the "**Purchase Price Increase**") by the amount, if any, by which the Inventory Valuation is greater than Four Million Seven Hundred Thousand Dollars ($4,700,000.00). The Purchase Price shall be decreased (the "**Purchase Price Decrease**") by the amount, if any, by which the Inventory Valuation is less than Four Million Seven Hundred Thousand Dollars ($4,700,000.00). Within twenty (20) days following the date upon which the Inventory Valuation is mutually agreed upon by Purchaser and Seller or determined pursuant to Section 4.2.2, Purchaser shall pay by wire transfer in U.S. Dollars in immediately available funds to an account designated by Seller any Purchase Price Increase or Seller shall pay by wire transfer in U.S. Dollars in immediately available funds to an account designated by Purchaser any Purchase Price Decrease.

18

**4.4.    Allocation of Purchase Price:**

**4.4.1.**  The Parties agree to allocate the Purchase Price (i.e., both the Preliminary Purchase Price and the Purchase Price Adjustment) among the Business and the agreements provided herein for transfer of the Business to Purchaser, for all purposes (including financial, accounting and tax) (the "**Allocation**") in a manner consistent with the Allocation Schedule attached as Schedule 4.4.1.

**4.4.2.**  Purchaser and Seller shall each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law.  Seller shall provide Purchaser and Purchaser shall provide Seller with a copy of any information required to be furnished to the Secretary of the Treasury under Internal Revenue Code Section 1060.

**5.    REPRESENTATIONS AND WARRANTIES:**

**5.1.    Warranties of Seller.**  Seller and DTI, represent and warrant, severally but not jointly with respect to the Acquired Assets being sold by Seller and the Purchased Intellectual Property being sold by DTI, to Purchaser as follows:

**5.1.1.    Organization and Good Standing.**  Each of Seller and DTI is a legal entity duly organized, validly existing and in good standing under the laws of Delaware, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate their respective properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property, except where the failure so to qualify or to be so licensed would not have a Material Adverse Effect.

**5.1.2.    Corporate Power; Due Authorization.**  Each of Seller and DTI has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, subject to Bankruptcy Court approval, to which it is a party, and to perform its respective obligations hereunder and thereunder, and to consummate the transactions contemplated herein and therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements by the Seller and DTI and the consummation of the contemplated transactions have been duly authorized by all necessary action on the part of Seller and DTI, as the case may be.  Subject to the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, this Agreement, and the Ancillary Agreements, have been duly and validly executed and delivered by or on behalf of each of the Seller and DTI, and (assuming this Agreement constitutes a valid and binding obligation of Purchaser) constitutes a legal, valid and binding agreement of Seller and DTI, enforceable against Seller and DTI in accordance with its terms, subject to applicable bankruptcy,

19

reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3.  No Violations.**    No consent, approval, authorization of, declaration, filing or registration with any domestic or foreign government, regulatory authority, union, or any other third party is required to be made or obtained by Seller or DTI in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements, except for: (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court; (ii) waiver of any "no sale" provision contained in any agreement between Delphi Corporation and the Union; and (iii) other consents, approvals, authorizations, declarations, filings and registrations set forth on <u>Schedule 5.1.3</u>.  The items referred to in clauses (i) and (ii) of this Section 5.1.3 are hereinafter referred to as the "**Third Party Requirements**".

**5.1.4.  Sufficiency of Assets.**  The Acquired Assets and the Purchased Intellectual Property comprise all of the assets reasonably necessary to carry on the Business in all material respects as it is now being conducted, except for the Excluded Assets.

**5.1.5.  Personal Property; Condition of Personal Property**:

**A.    Title to Personal Property**.    Except for the Personal Property leases and other Personal Property referred to in <u>Schedule 5.1.5.A</u>, Seller has good, valid and marketable title to the Personal Property and Inventory included in the Acquired Assets. Upon entry by the Bankruptcy Court of the Sale Approval Order, Seller shall transfer the Acquired Assets free and clear of any Lien, except as otherwise expressly indicated on <u>Schedule 5.1.5.A</u>.

**B.    Condition of Personal Property.**    To the Seller's Knowledge and subject further to the last sentence of this Section 5.1.5.B, the Personal Property included in the Acquired Assets are in such condition (considering age and purpose for which used) as to enable the Business to be conducted as currently conducted without material disruption.  With respect to all Personal Property included in the Acquired Assets, Seller has performed maintenance consistent with divisional maintenance policies and procedures and will continue to perform such maintenance through the Closing Date.    NO REPRESENTATION OR WARRANTIES OF ANY KIND ARE MADE AS TO ANY PERSONAL PROPERTY LOCATED AT ANY PURCHASER OR HARCO FACILITY.

**C.    Inventory.**    Except to the extent identified in <u>Schedule 5.1.5.C</u>, the Inventory included in the Acquired Assets will, as of the Closing, be located at Delphi's Dayton, Ohio, Home Ave. site buildings number 25 and 27 and at all the contract manufacturers supporting component and fitting machining and the brake hose assembly as set forth on <u>Schedule 5.1.5.C</u>, and will be fit for the purpose for which it is ordinarily acquired, merchantable in the Ordinary Course of Business,

and saleable in the Ordinary Course of Business. NO REPRESENTATION OR WARRANTIES OF ANY KIND ARE MADE AS TO ANY INVENTORY LOCATED AT ANY PURCHASER OR HARCO FACILITY.

D.    **Machinery, Equipment and Tools.** Regarding the Acquired Assets, Schedule 5.1.5.D sets forth a list of substantially all machinery, equipment and capitalized tools with an acquisition value greater than $1,000.00, included in the Acquired Assets and exclusively used in or exclusively related to the Business.

5.1.6.    **Litigation.** Except for the pendency of the Bankruptcy Cases and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to any of the Seller's Knowledge, threatened against or affecting Seller, the outcome  of which would have, individually or in the aggregate, a Material Adverse Effect, nor is there an Order outstanding against Seller that would have a Material Adverse Effect.

5.1.7.    **Intellectual Property Assets:**

A.    Schedule 5.1.7.A.1 sets forth a true and complete list, including a complete identification of each patent, trademark registration, copyright registration, domain name registration and application therefor included in the Owned Intellectual Property; and Schedule 5.1.7.A.2 sets forth a true and complete list of all Licensed Intellectual Property. Schedule 5.1.7.A.3 sets forth a true and complete list, in all material respects, of all material Software currently used by the Business. To Seller's Knowledge, there are no impediments to the ability of DTI under applicable Laws to maintain in effect or renew their respective rights, in all material respects, in and to the Owned Intellectual Property.

B.    To Seller's Knowledge, Seller is conducting the Business in a manner that does not violate the intellectual property right of another Person and no Claim has been made by any third party against Seller of Intellectual Property infringement or misappropriation resulting from the operation of the Business, except as set forth in Schedule 5.1.7.B. In particular, Seller has received no notice from General Motors that Seller is conducting the business in a manner that violates any intellectual property rights granted exclusively by General Motors to a third party.

C.    DTI has not granted any license, sublicense or other permission to use the Owned Intellectual Property to any third party, that would materially affect Purchaser's conduct of the Business, except as set forth on Schedule 5.1.7.C.

D.    Seller or DTI have good, valid and marketable title to the Purchased Intellectual Property consisting of Owned Intellectual Property and upon entry by the Bankruptcy Court of the Sale Approval Order, Seller or DTI, as applicable, shall transfer such Purchased Intellectual Property free and clear of any encumbrances thereon.

21

**E.**      Seller and DTI have taken commercially reasonable steps to protect rights in confidential information (and that of third parties that the Seller has received under an obligation of confidentiality), except where the failure to do so would not have a Material Adverse Effect.

**F.**      The Seller has secured from all named inventors who have created any material portion of, or otherwise have any rights in or to, Patents included in the Purchased Intellectual Property set forth in <u>Schedule 5.1.7.A.1</u>, valid and enforceable written assignments or licenses to the Seller or DTI, as applicable.

**5.1.8.  <u>Compliance with Other Instruments and Laws; Permits</u>.**  To Seller's Knowledge, the Business is in compliance with all Laws applicable to the conduct of the Business and all Permits, except where the failure to be in compliance would not have a Material Adverse Effect.  All Permits that are necessary for the conduct of the Business and the ownership and operation of the Acquired Assets have been duly obtained, and, except as indicated on <u>Schedule 5.1.8,</u> are in full force and effect.  There are no proceedings pending or, to Seller's Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit, except in each case as would not, individually or in the aggregate, result in a Material Adverse Effect.  The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by Seller will not, with or without the passage of time or the giving of notice, result in any such violation or be in conflict with or constitute a default under any Permit.

**5.1.9.  <u>Brokers</u>.**  Seller has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Purchaser would be liable.

**5.1.10. <u>Consents and Approvals</u>.**      Assuming that the Third Party Requirements have been obtained or satisfied as of Closing, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Seller, nor the consummation by Seller of the Sale, nor compliance by Seller with any of the provisions hereof and of the Ancillary Agreements, will, with or without the passage of time or the giving of notice: (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of Seller; (ii) result in a violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which Seller is a party or by which its properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to Seller or to any of its properties or assets; or (iv) result in the creation or imposition of any Lien other than a Permitted Lien on any asset of Seller, except in the case of clauses (ii), (iii) and (iv) above, for violations, breaches, defaults, terminations, cancellations, accelerations, creations,

22

impositions, suspensions or revocations that: (a) would not individually or in the aggregate have a Material Adverse Effect; or (b) are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**5.1.11. Financial Statements.**  Since the Business is a product line within Delphi's Chassis Systems Product Business Unit and not a separate corporate entity, independent financial statements have not been required or maintained for the Business.  Accordingly, the pro forma statements of income, as of and for the fiscal years ended December 31, 2003, December 31, 2004 and December 31, 2005, for the Business are set forth in Schedule 5.1.11 have not been audited and have been derived from unaudited management reports and forecast systems and have, to Seller's Knowledge, been adjusted and modified to reflect in-house estimates of the Business' financial operations as if it were operating as a stand-alone business, and they were calculated solely in conjunction with the proposed transaction (such financial statements are collectively referred to as the "**Financial Statements**").

**5.1.12. Events Subsequent to Latest Financial Statements.**  Except as referred to on Schedule 5.1.12 or as otherwise contemplated by or referred to in this Agreement or the Ancillary Agreements, since June 14, 2006: (i) there has not been any Material Adverse Effect; and (ii) the Business has been conducted and carried on only in the Ordinary Course of Business.

**5.1.13. Contracts:**

**A.**    Schedule 5.1.13.A lists all material Contracts exclusively used in, exclusively arising from, or exclusively relating to the Business as it is currently conducted by Seller ("**Listed Contracts**").  Seller has delivered or made available to Purchaser either: (i) true, correct and complete copies in all material respects; or (ii) accurate written descriptions in all material respects, of the Listed Contracts.

**B.**    Each of the Transferred Contracts is valid, binding and, subject to payment of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchaser of such of those Transferred Contracts which are also Assumed Contracts under the Sale Approval Order, if applicable, enforceable against Seller, to the extent set forth therein, and, to Seller's Knowledge, the other parties thereto, in accordance with its terms, and is in full force and effect. Except as set forth on Schedule 5.1.13.B(i), and other than with respect to monetary defaults by Seller under Transferred Contracts that are curable by payment of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchaser of such Transferred Contracts under the Sale Approval Order, if applicable, Seller, and to Seller's Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in default in respect of, any of such Transferred Contracts, and there is not a default thereunder or claim of default and there has not occurred any event which, with the passage of time or the giving of notice or both, would constitute a default thereunder, on the part of Seller, or to Seller's Knowledge, on the part of any other party thereto; in each case,

23

other than where the failure to perform or such default would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.    Except as set forth in Schedule 5.1.13.B(ii), and other than with respect to monetary defaults by Seller under Transferred Contracts that are curable by payment of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchaser of such Transferred Contracts under the Sale Approval Order, if applicable, to Seller's Knowledge, Seller has received no claim or notice from any other party to any such Transferred Contract that Seller has breached any obligations to be performed by it thereunder, where the consequence of such breach or default would be reasonably expected to have a Material Adverse Effect. Schedule 5.1.13.B(iii) identifies all Post-Petition Contracts included within the Transferred Contracts  (including open purchase orders) entered into in the Ordinary Course of Business.    Except as set forth on Schedule 5.1.13.B(iv), none of the Post-Petition Contracts included within the Transferred Contracts contains any provisions restricting its assumption and assignment to Purchaser pursuant to the terms of this Agreement.

**5.1.14. <u>Tax Matters</u>:**

**A.**    Seller has: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all Tax Returns required to be filed and such Tax Returns were true, correct and complete; and (ii) and have paid all Taxes shown thereon as due and owing, except where the failure to file or to pay such Taxes would not result in any liability to the Purchaser or result in any lien on the Acquired Assets.

**B.**    Seller has properly and timely withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor or other third party (including, without limitation, federal income taxes, sales and use taxes, personal property taxes, Federal Insurance Contribution Act taxes and Federal Unemployment Tax Act taxes) and has properly and timely paid the same to the proper Tax receiving officers or authorized depositories, except in each case where such failure would not result in any liability to the Purchaser or any Lien on the Acquired Assets.

**C.**    There are no Tax liens on any of Seller's assets, except for liens for Taxes not yet due and payable.

**5.1.15. <u>Absence of Other Representations or Warranties</u>.**  Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, neither Seller nor DTI make any representations or warranties, express or implied, with respect to the Acquired Assets, the Purchased Intellectual Property, the Assumed Liabilities, the sale of the Business, and in particular but without limitation, neither Seller nor DTI make any representation with respect to any plan(s) of Purchaser for the future conduct of the Business. For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or

24

other information  not contained in this Agreement or the Ancillary Agreements, or on any projected volumes of the Business, all which were produced only for information purposes.

**5.1.16. <u>Insurance</u>.**  <u>Schedule 5.1.16</u> contains a complete and correct list, in all material respects, of all material policies of insurance covering any of the assets primarily used in or relating to the Business, indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder.  All such policies are outstanding and in full force and effect.

**5.1.17. <u>Fair Disclosure</u>.**  Any matter fairly disclosed in any Schedule to this Agreement shall be deemed an exception for all other representations and warranties contained in this Agreement whether or not such other representations or warranties contain a reference to such Schedule.

**5.2.    <u>Warranties of Purchaser</u>.**  For purposes of this Section 5.2, the term "**Purchaser**" shall include both Harco and AcquisitionCo.  Harco and AcquisitionCo, as Purchaser, jointly and severally, warrant and represent to Seller as follows:

**5.2.1.  <u>Corporate Data</u>.**  Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of Ohio, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.

**5.2.2.  <u>Corporate Power; Due Authorization</u>.**  Purchaser has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements have been duly authorized by all necessary action on the part of Purchaser.  This Agreement is, and the Ancillary Agreements to which Purchaser is a party will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Seller), valid and legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

**5.2.3.  <u>No Violations</u>.**  Except as set forth on <u>Schedule 5.2.3</u>,  neither the execution, delivery or performance of this Agreement by Purchaser, nor the consummation by Purchaser of the transactions contemplated herein, nor compliance by Purchaser with any of the provisions hereof, will: (i) except for the Third Party Requirements, require Purchaser to obtain any consent, approval or action of, or make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of Purchaser; or (iii) result in a violation or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, acceleration, vesting, payment, exercise, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage,

25

deed of trust, security interest, indenture, license, contract, agreement, plan or other instrument or obligation to which Purchaser is a party or by which Purchaser or Purchaser's properties or assets may be bound or affected; (iv) violate any order, writ, injunction, decree, statute, rule or regulation applicable to Purchaser or Purchaser's properties or assets; or (v) result in the creation or imposition of any Lien on any asset of Purchaser (except for any loan of Purchaser or its Affiliates to consummate the transaction contemplated hereunder).

5.2.4.  **Litigation.**    Except for the pendency of the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to the knowledge of Purchaser, threatened against or affecting Purchaser which could reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

5.2.5.  **Brokers.**    Purchaser has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Seller would be liable.

5.2.6.  **Solvency.**    Upon the consummation of the transactions contemplated by this Agreement: (i) Purchaser will not be insolvent; (ii) Purchaser will not be left with unreasonably small capital; (iii) Purchaser will not have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Purchaser will not be impaired; and (v) immediately following closing, Purchaser will have sufficient capital to continue the Business as a going concern (it being understood that Purchaser will have no obligation to continue all or any portion of the Business as a going concern).

5.2.7.  **Availability of Funds.**    Purchaser has or will have available, at or prior to Closing, sufficient cash in immediately available funds to pay the Purchase Price and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement and the Ancillary Agreements. Purchaser has delivered to Seller the executed commitment letter (the "**Commitment Letter**") with respect to the financing arrangements for the transactions contemplated by this Agreement and the Ancillary Agreements (the "**Financing**").  As of the date of this Agreement: (i) the Commitment Letter is in full force and effect and has not been amended or rescinded; and (ii) Purchaser has delivered to Seller written confirmation, satisfactory to Seller in its sole discretion, of National City Bank that Purchaser's Financing is not contingent upon additional or further due diligence, agreement of loan structures, or collateral matters.  The aggregate proceeds of the Financing provided for in the Commitment Letter, together with cash available to Purchaser, will be sufficient to pay the Purchase Price and satisfy the other obligations of Purchaser necessary to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.  Purchaser expressly acknowledges and agrees that its obligation to consummate the transactions contemplated by this Agreement and the Ancillary Agreements is not subject to any condition or contingency with respect to financing.

26

**5.2.8.  Compliance with Law.**  Purchaser is in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

**5.2.9.  Anti-Money Laundering.**  Purchaser is in compliance with: (i) all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which Purchaser operates or does business.  Neither the Purchaser nor any of its directors, officers or Affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and Purchaser is not affiliated in any way with, or providing financial or material support to, any such persons or entities. Purchaser agrees that should it, or any of its directors, officers or Affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Purchaser shall inform the Seller in writing immediately.

**5.2.10. Adequate Assurance of Future Performance.**  Purchaser has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed Contract to the parties thereto (other than Seller) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance shall be necessary thereunder with respect to any Assumed Contract.

**5.3.    Survival of Representations, Warranties and Covenants.**  The representations and warranties made by the Seller or DTI in Section 5.1 or by the Purchaser in Section 5.2 shall survive the Closing and shall expire on the first anniversary of the Closing Date or, in the case of patents described in Schedule 5.1.7.A.1, the date that is eighteen (18) months after the Closing Date (the "**Expiration Date**").  The covenants set forth in Section 8 shall survive for a period of one (1) year following the Closing Date, except for those covenants that expressly have a longer period.  Any claim based on breach of a covenant must be made within sixty (60) days after a party knows or should know of any failure of the other party to perform such covenant.

**6.    CONDITIONS TO CLOSING:**

**6.1.    Conditions to Obligations of Seller, DTI and Purchaser.**  The respective obligations of each party to effect the transactions contemplated by this

27

Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following conditions precedent:

6.1.1.  **Sale Approval Order.**  The Sale Approval Order, in form and substance reasonably satisfactory to Purchaser, shall be entered by the Bankruptcy Court and shall not be subject to a stay or injunction.

6.1.2.  **No Law, Judgments, etc.**  No provisions of any applicable Law and no judgment, injunction (preliminary or permanent), order or decree that prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement shall be in effect (each party taking any and all steps required by Section 8.2 of this Agreement).

6.1.3.  **Other Approvals.**  All consents, approvals and filings in connection with Third Party Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Parties.

6.2.  **Conditions to Obligations of Purchaser.**  The obligation of Purchaser to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchaser):

6.2.1.  **Accuracy of Warranties.**  Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Seller and DTI contained in this Agreement shall be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time).  Subject to the preceding sentence, Seller and/or DTI may update or supplement the Disclosure Schedule prior to Closing by written notice to Purchaser, but any such update or supplement shall not be taken into account in determining whether the condition set forth in this Section 6.2.1 has been satisfied.  Any claim that Purchaser may have based on matters disclosed by Seller or DTI in such updated or supplemented Disclosure Schedule will be deemed waived by Purchaser if Purchaser nonetheless completes the transactions contemplated herein.

6.2.2.  **Performance of Covenants.**  Each of the Ancillary Agreements to which Seller or DTI is a party shall have been executed and delivered by the appropriate party to Purchaser, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Seller or DTI on or before the Closing shall have been performed in all respects.

6.2.3.  **Payment of Cure Amounts.**  Seller shall have made sufficient provisions to satisfy all Cure Amounts with respect to Assumed Contracts as set forth in Section 8.4 hereof.

6.2.4.  **Other Approvals.**  Except as expressly obviated by the terms of the Sale Approval Order, all consents, approvals and filings in connection with Third-Party Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchaser.

28

**6.3.**    **Conditions to Obligations of Seller and DTI.**    Except as otherwise permitted by this Agreement, the obligation of Seller and DTI to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Seller and DTI):

**6.3.1.**    **Accuracy of Warranties.**    The representations and warranties of Purchaser and Harco contained in this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein), shall be true and correct as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on either Purchaser's or Harco's ability to consummate the transactions contemplated by this Agreement.

**6.3.2.**    **Performance of Covenants.**    Each of the Ancillary Agreements to which Purchaser and/or Harco is a party shall have been executed and delivered by such Party to Seller and/or DTI, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Purchaser and/or Harco on or before the Closing shall have been performed in all material respects.

**6.3.3.**    **Delivery of Purchase Price.**    Purchaser shall have delivered to: (i) Seller the Purchase Price by wire transfer, in immediately available funds, to the bank account designated on Schedule 6.3.3; and (ii) DTI the Intellectual Property Purchase Price by wire transfer, in immediately available funds, to the bank account designated on Schedule 6.3.3.

**7.**    **CLOSING:**

**7.1.**    **The Closing.**    Subject to the satisfaction of the conditions set forth in Article 6 of this Agreement, the closing (the "**Closing**") of the transactions contemplated hereby shall take place at the offices of Delphi at 10:00 a.m. on the second Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree.   For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. EDST on the Closing Date.

**7.2.**    **Ancillary Agreements.**    At the Closing, the Parties shall execute and deliver each to the other the following agreements to which they are a party:

**7.2.1.**    Manufacturing Services Agreement substantially in the form attached hereto as Schedule 7.2.1.

**7.2.2.**    An Intellectual Property Assignment from DTI to Purchaser of the Patent Rights set forth in Schedule 5.1.7.A.1 substantially in the form attached hereto as Schedule 7.2.2.

29

**7.2.3.** Assignment and Assumption Agreement relating to the Assumed Contracts and Permits, consistent with the Sale Approval Order, substantially in the form attached hereto as <u>Schedule 7.2.3</u>.

**7.2.4.** Transition Services Agreement (which shall, among other things, provide for the supply of brake hose rubber compound) substantially in the form attached hereto as <u>Schedule 7.2.4</u>.

**7.2.5.** Intentionally omitted.

**7.2.6.** Bill of Sale substantially in the form attached hereto as <u>Schedule 7.2.6</u>.

**7.2.7.** Indemnity Escrow Agreement between Seller, Purchaser and the Indemnity Escrow Agent substantially in the form attached hereto as <u>Schedule 7.2.7</u>.

**7.2.8.** Guarantee of Harco Brake Systems, Inc. substantially in the form attached hereto as <u>Schedule 7.2.8</u> ("**Guarantee by Harco**").

**7.2.9.** Rubber Compound Supply Agreement substantially in the form attached hereto as <u>Schedule 7.2.9</u>.

**7.3.** <u>Seller's Deliveries.</u> At the Closing, Seller shall deliver to Purchaser the following, in proper form for recording where appropriate:

**7.3.1.** Executed assignments for the Permits and Assumed Contracts to be acquired by Purchaser pursuant to Article 1.

**7.3.2.** An officer's certificate, dated as of the Closing Date, executed on behalf of each of Seller and DTI, certifying that the conditions specified in Section 6.2 have been fulfilled.

**7.3.3.** A certificate, dated as of the Closing Date, executed on behalf of each of Seller and DTI by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Seller's or DTI's Organizational Documents as the case may be; and (ii) a true and correct copy of the resolutions of Seller's and DTI's, as the case may be, board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which Seller and/or DTI, as the case may be, is a party and the consummation of the transactions contemplated hereby and thereby.

**7.3.4.** Certified copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

**7.3.5.** Duly executed Bill of Sale transferring the Acquired Assets to Purchaser.

**7.3.6.** Appropriate receipts.

**7.4.    Purchaser's Deliveries.**  At the Closing, Purchaser shall deliver to each of Seller and DTI, in proper form for recording where appropriate:

**7.4.1.**  To Seller, the Preliminary Purchase Price less the Escrow Amount, less the Deposit Amount, and less any other amounts required by, and in accordance with, Article 4.

**7.4.2.**  To DTI, the Intellectual Property Purchase Price as required by and in accordance with Section 4.1.

**7.4.3.**  Assignment and Assumption Agreement pursuant to which the Purchaser assumes the Assumed Liabilities.

**7.4.4.**  An officer's certificate, dated as of the Closing Date, executed on behalf of Purchaser, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.5.**  A certificate, dated as of the Closing Date, executed on behalf of the Purchaser by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchaser's Organizational Documents; and (ii) a true and correct copy of the resolutions of the Purchaser's board authorizing the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby.

**8.    CERTAIN ADDITIONAL COVENANTS:**

**8.1.    Bankruptcy Actions:**

**8.1.1.**  The Bidding Procedures are set forth in Section 11.1.  As soon as practicable after the execution of this Agreement, Seller shall file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking approval of the Bidding Procedures Order and the Sale Approval Order.

**8.1.2.**  Seller shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Acquired Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Approval Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.2.    Registrations, Filings and Consents; Further Actions.** Upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including, without limitation, using their reasonable best efforts to cause the satisfaction of all conditions to Closing.

31

**8.3.    Operation of the Business Pending Closing.**  Except: (i) as otherwise provided herein; (ii) required by or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iii) subject to any changes that may be required under applicable Laws; and (iv) as set forth in the following sentence, until the Closing, Seller will: (a) carry on the Business in substantially the same manner as heretofore; and (b) will perform in all material respects all of its obligations under all Transferred Contracts and not amend, alter or modify in any significant respect that is adverse to the Business any provision of any Transferred Contract; keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; endeavor to maintain the goodwill of the Business; and promptly advise Purchaser of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets. Seller shall promptly notify Purchaser if Seller becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2 or 6.2.1 hereof to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Seller to be untrue.

**8.4.    Assumed Contracts; Cure Amounts.**  As soon as practicable after the date hereof, Seller shall, pursuant to a motion in form and substance reasonably acceptable to Purchaser (which motion may be incorporated into the Sale Motion) move to assume and assign to Purchaser the Pre-Petition  Contracts that the Purchaser has identified for assumption and assignment to the Purchaser set forth on Schedule 8.4 (collectively, the "**Assumed Contracts**") and shall provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court. Upon the Closing, Purchaser will assume the Delphi Energy Chassis (AHG) & Harco Brake Systems Brake Hose Assembly Contract Policy Statements dated as of January 1, 2005 (the "**Policy Statement**") and immediately thereafter any obligations of the Seller under the Policy Statement shall be terminated pursuant to Section (A) of the Policy Statement under the heading "Future Business Strategies". Alternatively, if Seller consummates an Alternative Transaction, as contemplated in Section (B) of such "Future Business Strategies", the Successful Bidder will assume the Policy Statement as a Transferred Contract, and Seller will have no further obligations under the Policy Statement.  Subject to the preceding two (2) sentences, Seller shall pay Cure Amounts required to effect assumption and assignment of the Assumed Contracts as agreed to by the Seller and each party to an Assumed Contract or, absent such agreement, by order of Court in the time and manner specified by the Sale Approval Order.

**8.5.    Post-Closing Covenants.**  From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

**8.5.1.  Seller Post-Closing Covenants:**

**A.    Non-Competition.**  Seller has as at Closing, established the reputation of the Business. Seller undertakes and agrees with Purchaser that for a period of two (2) years after the Closing Date, except with the consent of Purchaser, Seller shall not either on its own account or in conjunction with or on behalf of any person, firm or company whether by sales, marketing, investing, managing or other activities, carry

32

on, or be engaged, concerned or interested, directly or indirectly, whether as a equity owner, lender, officer, director, employee, partner, agent or otherwise in carrying on any business, in North America, which is engaged in the design, development, manufacture or sale of Products as carried on by the Business at the Closing Date (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 8.5.1 will not prohibit, in any way: (i) the acquisition of a controlling interest or merger with any person, or a division or business unit thereof, acquired by or merged, directly or indirectly, into Seller or any of its Affiliates after the Closing Date if the Competitive Business accounts for five (5%) percent or less of the sales or five (5%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than fifteen (15%) percent of such acquired business's sales or value; (ii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of a non-controlling ownership interest in any person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater) and the Competitive Business is not anticipated to become greater than twenty percent (20%) of such acquired business's sales or value; (iii) the acquisition by Seller or any of its Affiliates, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any person engaged in a Competitive Business; and (iv) provision of consulting services to any Person for the purpose of designing or manufacturing on behalf of Seller or any Seller Affiliate or selling to Seller or any Seller Affiliate components and parts solely for automotive applications other than those that would constitute Products.

**B.**    While the restrictions contained in this Section 8.5.1 are considered by the parties to be reasonable in all the circumstances, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions shall be adjudged to be void as going beyond what is reasonable in all the circumstances for the protection of the interests of Purchaser and/or the Business but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope the said restriction shall apply with such modifications as may be necessary to make it valid and effective.

**8.5.2.    Technical Documentation.**    Seller and DTI have delivered, or will deliver on or before the Closing, to the Purchaser, a copy of all Technical Documentation included in the Acquired Assets.  For a period of not less than one (1) year commencing at Closing, Purchaser and its Affiliates shall use reasonable efforts to maintain all Technical Documentation applicable to product design, test, release, validation and manufacture it acquires from Seller and its Affiliates in connection with the purchase of the Acquired Assets under Article 1 of this Agreement at a location at which they shall be reasonably accessible to Seller and its Affiliates upon request.  During such one (1) year period, Purchaser shall not destroy or give up possession of its final copy of such documentation

33

without offering Seller the opportunity, at Seller's expense but without any payment to Purchaser, to obtain a copy of such documentation.

### 8.5.3.  <u>Books and Records and Litigation Assistance From and After Closing</u>:

**A.**    Purchaser and its Affiliates shall use commercially reasonable efforts to preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchaser by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than one (1) year from the Closing Date or for any longer period as may be required by any government agency, ongoing litigation, law, regulation, audit or appeal of Taxes, or Tax examination at Purchaser's sole cost and expense.  During such period, Purchaser shall: (i) provide Seller or its Affiliates with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of the Business as of December 31, 2006; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any legal proceedings against or governmental investigations of Seller and its Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Seller and its Affiliates, the Business or the Acquired Assets during such period.  Seller or its Affiliates shall reimburse Purchaser for the reasonable out-of-pocket expenses incurred in connection with any request by Seller to make available records pursuant to the foregoing sentence.  In the event Purchaser wishes to destroy or dispose of such books and records after one (1) year from the Closing Date, or such other longer period as may be required by any governmental agency, ongoing litigation, law, regulation, audit or appeal of Taxes, or Tax examination, it shall first give not less than ninety (90) days' prior written notice to Seller or its Affiliates, and Seller or its Affiliates shall have the right, at its option, upon prior written notice given to Purchaser within sixty (60) days of receipt of Purchaser's notice, to take possession of said records within ninety (90) days after the date of Purchaser's notice to Seller hereunder.

**B.**    Purchaser, for itself and on behalf of its Affiliates, agrees to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations and all documents that may be reasonably required to establish due care or to otherwise assist Seller and its Affiliates in pursuing, contesting or defending such claims; (ii) make available documents and records delivered to it by Seller reasonably necessary in connection with any pursuit, contest or defense related to the Business, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Purchaser must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchaser must notify Seller of the existence of such privileged documents); and (b) Seller and its Affiliates will agree to keep confidential and not use for any other purpose documents and records that are confidential or are subject to trade secret protection); (iii) make available,

34

as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Purchaser's business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Seller and its Affiliates in connection with such claim.

**8.5.4.** **Payment and Collections.** Seller shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchaser after Closing, and Purchaser shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Seller after Closing, in order to ensure that the cost of the related liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement.   To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party, Seller or Purchaser, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments.   Seller shall promptly send Purchaser copies of all remittance advices and checks related to payments received by Seller with respect to such items.   Purchaser shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Seller shall cooperate with Purchaser as is reasonably necessary to so notify such customers, including providing appropriate contact information for each such customer.

**8.6.** **Further Assurances.** If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement).

**8.7.** **Purchaser's Financing Activities:**

**8.7.1.** Purchaser acknowledges and agrees that Seller and its Affiliates have no responsibility for any financing that Purchaser may raise in connection with the transactions contemplated hereby, including, with respect to any offering materials and other documents prepared by or on behalf of or utilized by Purchaser or its Affiliates, or Purchaser's financing sources, in connection with Purchaser's financing activities in connection with the transactions contemplated hereby which include any information provided by Seller or any of its Affiliates (including the Business).

**8.7.2.** Purchaser shall use its reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable to: (i) maintain in effect the Financing and the Commitment Letter; (ii) enter into definitive financing agreements with respect to the Financing, so that such agreements are in effect as promptly as practicable but, in any event, no later than the Closing Date; and (iii) consummate the Financing at or prior to Closing.    Purchaser shall keep Seller reasonably informed of material developments in respect of the financing process relating thereto.   Prior to the

35

Closing, Purchaser shall not agree to, or permit, any amendment or modification of, or waiver under, the Commitment Letter or other documentation relating to the Financing without the prior written consent of Seller. In the period between the date hereof and the Closing Date, upon request of Purchaser, Seller shall reasonably cooperate with Purchaser in connection with the Financing. If, notwithstanding the use of reasonable best efforts by Purchaser to satisfy its obligations under this Section 8.7, any of the Financing or the Commitment Letter (or any definitive financing agreement entered with respect thereto) expire or are terminated prior to the Closing, in whole or in part, for any reason, Purchaser shall: (i) promptly notify Seller of such expiration or termination and the reasons therefor; and (ii) use commercially reasonable efforts promptly to arrange for alternative financing (which shall not contain any conditions in addition to those contained in such expired or terminated commitments or agreements) to replace the financing contemplated by such expired or terminated commitments or agreements in an amount sufficient to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

**8.8.    Certain Transactions.**    Purchaser shall not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any material delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Entity necessary to consummate the transactions contemplated by this Agreement or the Ancillary Agreements or the expiration or termination of any applicable waiting period; (ii) significantly increase the risk of any Governmental Entity entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) materially delay or prevent the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.9.    Guarantee by Affiliate of Purchaser.**    Harco agrees to unconditionally guarantee all obligations of Purchaser pursuant to the terms of this Agreement, including, without limitation, to pay the Purchase Price and any indemnification obligations of Purchaser. Harco shall also reimburse Seller and/or DTI for reasonable fees and expenses (including reasonable fees of counsel) incurred in successfully enforcing the guarantee obligations set forth in this Section 8.9.

**8.10.    NHTSA Requirements.**    Effective as of the Closing Date and at Purchaser's sole cost and expense, the Parties shall work together in good faith to terminate Seller's and obtain Purchaser's National Highway Transportation Safety Administration code(s) relating to the sale of Products.

**8.11.    Communications with Customers and Suppliers.**    Prior to the Closing, Purchaser shall not, and shall cause its Affiliates and representatives not to, contact, engage in any discussions or otherwise communicate with any of the Business' customers, suppliers and others with whom it has material commercial dealings without obtaining the prior written consent of Seller (which shall not be unreasonably withheld but which may be conditioned on Seller having the right to participate in any meetings or

36

discussion with any such customers, suppliers or others). Purchaser and Seller shall work together in good faith to arrange for an orderly transition of customer, supplier, and other third party relationships, including, without limitation, at the request of Purchaser, meetings and other correspondence with such customers, suppliers, and other third parties to ensure such orderly transition.

9.    **TERMINATION:**

    **9.1.    Termination.** Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

        **9.1.1.    By either Party:**

            **A.**    By mutual written consent of Seller and Purchaser.

            **B.**    Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any regulatory Governmental Entity, other than the Bankruptcy Court.

            **C.**    If Seller consummates an Alternative Transaction.

            **D.**    Provided the terminating Party is not in default of its obligations under this Agreement, by either Seller or Purchaser if the Closing shall not have occurred within ninety (90) days after entry of the Sale Approval Order.

            **E.**    If the Bankruptcy Court has not entered the Sale Approval Order, within one hundred twenty (120) days after the date of this Agreement (the "**Termination Date**") or such Sale Approval Order is subject to a stay or injunction; provided, however, that the right to terminate this Agreement pursuant to this Section 9.1.1.E shall not be available to Purchaser if Purchaser shall have failed to perform, or caused any of its respective Affiliates to perform, any of its respective material obligations under this Agreement.

        **9.1.2.    By Purchaser.**  By Purchaser (provided that Purchaser is not then in material breach of any representation, warranty, covenant or other agreement contained herein) at any time prior to Closing,  if a Material Adverse Effect shall have occurred, Purchaser may terminate within ten (10) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination.

        **9.1.3.    By Seller.**  If Seller accepts or is about to accept a Qualified Bid at the Auction other than that of Purchaser, provided that such termination shall be of no effect if Seller does not: (i) enter into an agreement with respect to such Qualified Bid within two (2) Business Days after termination hereunder; and (ii) subsequently complete the Sale to an Alternative Bidder.

    **9.2.    Notice of Termination.**  In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given

to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

### 9.3.    Break-Up Fee; Expense Reimbursement:

9.3.1.  **Break-Up Fee.**  Subject to Section 9.3.4, in the event that Seller sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, all or substantially all or a material portion of the Business or the Acquired Assets in a transaction or a series of transactions with one or more parties other than Purchaser  (such event being an "**Alternative Transaction**"), Seller shall, within two (2) Business Days after the consummation of an Alternative Transaction(s), pay to Purchaser an amount equal to $294,000.00 (the "**Break-Up Fee**"), unless: (i) the Agreement is then terminable under Sections 9.1.1.B; or (ii) Seller is entitled to keep the Deposit Amount under Section 4.1.1.B, in which case no Break-Up Fee shall be payable.  The claim of Purchaser for a Break-up Fee shall be paid to Purchaser from the sale proceeds of an Alternative Transaction and, until paid in full, shall constitute a superpriority administrative expense claim .

9.3.2.  **Expense Reimbursement.**   In the event this Agreement is terminated pursuant to Sections 9.1.1.D or 9.1.1.E, and provided that Purchaser is not then in breach of this Agreement for which Seller had previously notified Purchaser, and, in the case of Section 9.1.1.D, the failure or occurrence of the event giving rise to any such termination results solely from the status of Seller or any intentional action or conduct of Seller and not from the status of Purchaser or any action or conduct of Purchaser, then Seller shall be obligated to pay Purchaser an amount equal to Purchaser's reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement (the "**Expense Reimbursement**") up to a maximum of $100,000.00.   Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Seller to Purchaser promptly upon the delivery of an invoice related to such Expense Reimbursement to Seller by Purchaser to be delivered to Seller within ten (10) Business days of termination of this Agreement.   The claim of Purchaser for an Expense Reimbursement shall constitute a superpriority administrative expense claim.

9.3.3.  Payments to Purchaser pursuant to this Section 9.3 shall be by wire transfer of immediately available funds in U.S. Dollars, to such account or accounts as Purchaser shall designate in writing.

9.3.4.  Purchaser acknowledges and agrees that, in the event that it terminates this Agreement or Seller terminates this Agreement and Purchaser becomes entitled to receive or receives any Expense Reimbursement, Purchaser shall not be entitled to receive nor shall it receive the Break-Up Fee or any portion thereof, and, conversely, that in the event that Purchaser becomes entitled to receive or receives any Break-Up Fee, it shall not be entitled to receive nor shall it receive the Expense Reimbursement or any portion thereof.  In the event that Purchaser would be entitled to receive both the Break-Up Fee and Expense Reimbursement but for the operation of this Section 9.3.4, Purchaser shall be entitled to receive the greater of such amounts.

**9.4.    Procedure and Effect of Termination.** In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto.  If this Agreement is terminated as provided herein no Party shall have any liability or further obligation to any other Party resulting from such termination except for the provisions of: (i) (a) Purchasers' obligations under that certain confidentiality agreement between the Parties dated June 28, 2005, and extended by agreement dated June 27, 2006; (b) Article 9 (Termination); and (c) Sections 4.1.1 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.15 (Venue and Retention of Jurisdiction) and 13.18 (Dispute Resolution), all of which shall remain in full force and effect; and (ii) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Purchaser is entitled to receive the Break-Up Fee, the right of Purchaser to receive such amount shall constitute Purchaser's sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by Seller of any of its representations, warranties, covenants or agreements set forth in this Agreement.  Any payment to Seller of the Deposit Amount under Section 4.1.1.B shall constitute Seller's sole recourse in the event Purchaser notifies Seller, prior to the Auction date, of Purchaser's intent to terminate this Agreement.  Upon any breach by Purchaser on or after the Auction Date, Seller will be entitled to all available remedies in law or equity.   In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

## 10.    OTHER TAX MATTERS:

**10.1.**    Seller will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due prior to the Closing, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds.  Purchaser shall make available to Seller (and to Seller's accountants and attorneys) any and all books and records and other documents and information in its possession or control reasonably requested by Seller to prepare these Tax Returns.  Seller will make all payments required with respect to any such Tax Return.

**10.2.**    Purchaser will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due after the Closing (other than for Taxes with respect to periods for which the consolidated, unitary and Tax Returns of Seller will include the operations of the Business).  Purchaser shall be responsible for and shall pay when due all Taxes attributable, levied or imposed upon or incurred in connection with the Acquired Assets and the Business pertaining to: (a) any period ending after the Closing Date; and (b) the portion of any Taxes for which Purchaser is liable as determined in accordance with Section 10.3 below.

**10.3.**    For purposes of this Article 10 and Section 2.3, whenever it is necessary to allocate the liability for Taxes for a Straddle Period, the determination of the Taxes of

the Business for the portion of the Straddle Period ending at the end of the Closing Date (the "**Pre-Closing Portion**") and the portion of the Straddle Period beginning after the Closing Date (the "**Post-Closing Portion**") will be determined by assuming that the Straddle Period consisted of two taxable years or periods, one of which ended at the close of business on the Closing Date and the other of which began at the beginning of the day after the Closing Date, and items of income, gain, deduction, loss or credit related to the Acquired Assets and the Business for the Straddle Period will be allocated between such two (2) taxable years or periods on a "closing of the books basis" by assuming that the books associated with the Business were closed at the end of the Closing Date; provided, however, that all real property taxes, personal property taxes, ad valorem obligations and similar taxes imposed on a periodic basis, in each case levied with respect to the Acquired Assets (other than Taxes resulting from the transactions described herein as provided for in Section 13.14) for a Straddle Period shall be apportioned between Seller and Purchaser as of the Closing Date based on the number of days of such taxable period up to and including the Closing Date and the number of days of such taxable period following the Closing Date. Seller shall be liable for the proportionate amount of such taxes that is attributable to the period up to and including the Closing Date; Purchaser shall be liable for the proportionate amount of such taxes that is attributable to the period following the Closing Date.

      **10.4.**    Seller and Purchaser will cooperate in connection with: (i) the preparation of filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets. Such cooperation includes a reasonable amount of direct access to accounting, engineering and contracting personnel, subject to availability, which shall not be unreasonably restricted, and advance notice to Purchaser's chief financial officer.

      **10.5.**    Seller shall not, and shall not cause the Business to make, revoke or amend any tax election, execute any waiver of restrictions or tax assessments or collections or extensions if there will be any impact on the Purchaser as a result of doing so.

**11.**    **BIDDING PROCEDURES**:

      **11.1.**    **Delphi Initial Bankruptcy Actions.**    This Article 11 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the sale (the "**Sale**") of the Acquired Assets.  The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order.  The following overbid provisions and related bid protections are designed to compensate the Purchaser for its efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Acquired Assets for the benefit of Seller and its Affiliates' creditors, shareholders and bankruptcy estate.

      **11.2.**    **Court Approval.** Promptly after the execution of this Agreement, Seller shall file the Sale Motion with the Bankruptcy Court seeking: (i) entry of the Bidding Procedures Order approving the Bidding Procedures, the Break-Up Fee and the Expense Reimbursement; and (ii) subject to the competitive bidding process provided under the Bidding Procedures, entry of the Sale Approval Order approving this Agreement and the transaction specified herein. It is a material inducement to Purchaser to be able to acquire the Acquired Assets pursuant to the provisions of Sections 363 and

365 of the Bankruptcy Code, including in particular free and clear of Liens pursuant to Section 363(f) of the Bankruptcy Code. Therefore, notwithstanding anything in this Agreement to the contrary, any and all obligations of Purchaser under this Agreement are subject to the entry of the Sale Approval Order approving this Agreement and the transaction specified herein, and ordering, finding or concluding that, among other things: (a) notice of the Sale Motion and the transactions contemplated hereunder was proper and sufficient to all parties entitled to such notice; (b) the sale of the Acquired Assets to Purchaser is approved pursuant to Section 363(b) of the Bankruptcy Code; (c) the assumption and assignment of the Assumed Contracts to the Purchaser is approved pursuant to Section 365 of the Bankruptcy Code and that the Cure Amounts to be paid by the Seller on the Closing Date to the non-debtor parties to the Assumed Contracts satisfy all monetary obligations and defaults of the Seller to those non-debtor third parties required to be cured pursuant to Section 365(b)(1) of the Bankruptcy Code; (d) the sale of the Acquired Assets to the Purchaser pursuant to this Agreement will be free and clear of all known and unknown Liens pursuant to Section 363(f) of the Bankruptcy Code; (e) Purchaser is not a continuation of Seller or its estate, there is no continuity of enterprise between Seller and Purchaser, Purchaser is not a successor to Seller or its estate and the transactions contemplated by this Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of Purchaser and Seller or its estate; (f) Purchaser has acted in good faith within the context of and is entitled to the protections of Section 363(m) of the Bankruptcy Code; (g) the transactions contemplated hereunder are not avoidable pursuant to Section 363(n) of the Bankruptcy Code; (h) Purchaser is not assuming or acquiring any of Seller's liabilities except as specifically provided in this Agreement; and (i) the Sale Approval Order shall be effective immediately notwithstanding the provisions of Bankruptcy Rules 6004(g) and 6006(d). Seller shall be responsible for making all appropriate filings relating thereto with the Bankruptcy Court, which filings shall be submitted to the Purchaser as far prior to their filing with the Bankruptcy Court as reasonably practicable for the Purchaser's prior review and, solely with respect to the Bidding Procedures Order and the Sale Approval Order, approval, which shall not be unreasonably withheld or delayed. Should Seller not have received Purchaser's approval of the Bidding Procedures Order and the Sale Approval Order prior to Seller's deadline for filing with the Bankruptcy Court, Seller may file such documents with the Bankruptcy Court and may submit a revised Bidding Procedures Order and/or Sale Approval Order reflecting agreed modifications thereto, if any, to the Bankruptcy Court prior to the hearing thereon.

      **11.3.**   **Qualified Bidder.**  Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Seller, in order to participate in the bidding process, each person (a "**Potential Bidder**"), other than the Purchaser, must deliver (unless previously delivered) to Seller:

      **11.3.1.** An executed confidentiality agreement in form and substance satisfactory to Seller.

      **11.3.2.** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Purchased Intellectual Property, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Seller and its financial advisors; and

05-44481-rdd   Doc 6762   Filed 01/30/07   Entered 01/30/07 18:21:55   Main Document
Pg 170 of 200

**11.3.3.** A preliminary (non-binding) written proposal regarding: (i) the purchase price; (ii) any assets expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

**11.3.4.** A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale, if selected as a successful bidder, and that the Seller determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement shall be deemed a "**Qualified Bidder**".  Notwithstanding the foregoing, Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.  As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Seller shall determine, and shall notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time that Seller notifies the Potential Bidder that it is a Qualified Bidder, Seller shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Business as provided in Section 11.5 below.

**11.4.   Bid Deadline.**  A Qualified Bidder, other than Purchaser, that desires to make a bid shall deliver written copies of its bid to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Steve Daniels with copies to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Margaret M. Fukuda, Legal Staff; (ii) Seller's bankruptcy counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60606-1285, Attention: John K. Lyons; (iii) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Creditors Committee**"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (v) counsel to the debtors' post-petition secured lenders, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick so as to be received not later than 11:00 A.M. (New York Time), on March 2, 2007 (the "**Bid Deadline**").  As soon as reasonably practicable following receipt of each Qualified Bid, Seller shall deliver   complete copies of all items and information enumerated in Section 11.6 of this Agreement to: (a) Purchaser and its counsel; and (b) counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**").

**11.5.   Due Diligence.**  Seller shall afford each Qualified Bidder due diligence access to the Acquired Assets and the Business.  Due diligence access may include management presentations as may be scheduled by Seller, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Seller, in its sole discretion, may agree to.  Seller shall designate an employee or other representative to coordinate all reasonable requests for additional information and

due diligence access from Qualified Bidders. Any additional due diligence shall not continue after the Bid Deadline. Seller may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither Seller nor any of its Affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Acquired Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**11.6.** **Bid Requirements.** All bids must include the following documents (the "**Required Bid Documents**"):

**11.6.1.** A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Acquired Assets.

**11.6.2.** An executed copy of the Agreement, together with all Schedules marked (a "**Marked Agreement**") to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

**11.6.3.** Except for Purchaser, a good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Seller in its sole discretion) payable to the order of Seller (or such other party as Seller may determine) in an amount equal to $500,000.00.

**11.6.4.** Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Seller and its advisors.

**11.7.** **Qualified Bids.** A bid will be considered only if the bid:

**11.7.1.** Is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Seller than, those contained in the Agreement.

**11.7.2.** Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**11.7.3.** Proposes a transaction that Seller determines, in its sole discretion, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus: (i) in the case of the initial Qualified Bid, $500,000.00; and (ii) $250,000.00 in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**11.7.4.** Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

**11.7.5.** An acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and Purchased Intellectual Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and Purchased Intellectual Property in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**11.7.6.** Includes a commitment to consummate the purchase of the Acquired Assets and Purchased Intellectual Property (including the receipt of any required governmental or regulatory approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within sixty (60) days after entry of such order.

**11.7.7.** The bid is received by the Bid Deadline.  A bid received from a Qualified Bidder will constitute a "**Qualified Bid**" only if it includes all of the Required Bid Documents and meets all of the above requirements, provided, however, that Seller shall have the right, in its sole discretion, to entertain bids for the Acquired Assets and Purchased Intellectual Property that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Purchaser is referred to as a "**Subsequent Bid**".

If Seller does not receive any Qualified Bids other than the Agreement received from the Purchaser, Seller will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**11.8.   Bid Protection.  Reserved.**

**11.9.   Auction, Bidding Increments and Bids Remaining Open.**   If Seller receives at least one (1) Qualified Bid in addition to the Agreement, Seller will conduct an auction (the "**Auction**") of the Acquired Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or before the tenth (10th) Business Day following the expiration of the Bid Deadline, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois  60606, or such later time or other place as Seller shall notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

**11.9.1.** Only Seller, Delphi, Purchaser, any representative of the Creditors' Committee, any representative of the Equityholders' Committee, any

representative of the secured lenders (and the legal and financial advisers to each of the foregoing) and any Qualified Bidder who has timely submitted a Qualified Bid shall be entitled to attend the Auction, and only Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

11.9.2. At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Seller whether it intends to participate in the Auction and at least one (1) Business Day prior to the Auction, Seller shall provide copies of the Qualified Bid or combination of Qualified Bids which Seller believes is the highest or otherwise best offer to all Qualified Bidders who have informed Seller of their intent to participate in the Auction.  Should an Auction take place, Purchaser shall have the right, but not the obligation, to participate in the Auction. Purchaser's election not to participate in an Auction shall in no way impair its entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

11.9.3. All bidders shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

11.9.4. Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

11.9.5. Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $250,000.00 higher than the previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), Seller shall give Purchaser a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement that may be payable to Purchaser under the Agreement and shall give effect to any assets and/or equity interests to be retained by Seller.

11.9.6. At the conclusion of the Auction, or as soon thereafter as practicable, Seller, in consultation with its financial advisors, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Purchased Intellectual Property received at the Auction (the "**Successful Bid(s)**" and the bidder(s) making such bid, the "**Successful Bidder(s)**").

**11.10.  Acceptance of Qualified Bids.**  Seller shall sell the Acquired Assets for the highest or otherwise best Qualified Bid upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "**Sale Hearing**"). If, after an Auction in which the Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.

Seller's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Seller's acceptance of the bid. Seller will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**11.11.  Sale Hearing.**  The Sale Hearing will be held before the Honorable Robert D. Drain on March 22, 2007 at 10:00 a.m. (prevailing Eastern time) at the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, Room 610, New York, New York  10044, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.  If Seller does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), Seller will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchaser following entry of the Sale Order.  If Seller does receive additional Qualified Bids, then, at the Sale Hearing, Seller shall seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**"). Seller's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Seller's acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Seller or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Seller shall effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

**11.12.  Return of Good Faith Deposit.**  Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, Seller will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of Seller.   On the Return Date, Seller shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**11.13.  Reservations of Rights.**  Seller, after consultation with the Creditors Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise

46

best offer; and (ii) may reject at any time, any bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale; or (c) contrary to the best interests of Seller, its estate and creditors as determined by Seller in its sole discretion.

## 12.    INDEMNIFICATION:

**12.1.    Seller's Agreement to Indemnify.** If the Closing occurs and Purchaser makes a written claim for indemnification against Seller or DTI in accordance with the procedures set forth in this Article 12, from and after the Closing, then Seller or DTI, as appropriate, agrees to indemnify and hold harmless Purchaser from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, the "**Purchaser Damages**") incurred by Purchaser as a result of or arising out of: (i) to the extent that the Sale Approval Order, the Bankruptcy Code and other applicable Laws fail to discharge liability with respect to any claims brought by a third party against Purchaser relating thereto, those Retained Liabilities and those Excluded Assets that are retained at Closing by Seller or DTI; (ii) of a breach of any representation or warranty contained in this Agreement (other than Inventory representations for which an adjustment is made in the Purchase Price Adjustment); (iii) a breach of any covenant to be performed by Seller or DTI under this Agreement; or (iv) failure by Seller to pay any amount owed with respect to a purchase money security interest under the Permitted Liens. The sole source to satisfy any remedy with respect to (ii) above shall be the Indemnity Escrow Amount. As soon as possible after the Expiration Date, the Indemnity Escrow Amount, including all cash, interest accrued thereon and other property retained by the Indemnity Escrow Agent, will be delivered to Seller by the Indemnity Escrow Agent, less an estimated amount, if any, reasonably sufficient to satisfy the amount of all then outstanding claims, if any, by Purchaser for Purchaser Damages in accordance with the terms of the Indemnity Escrow Agreement provided such claims exceed or have already exceeded the amount set forth in Section 12.3.5.

**12.2.    Purchaser's Agreement to Indemnify.** If the Closing occurs and Seller and/or DTI makes a written claim for indemnification against Purchaser in accordance with the procedures set forth in this Article 12, then, from and after the Closing, Purchaser shall indemnify and hold harmless Seller and/or DTI, as appropriate, from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, the "**Seller Damages**") incurred by Seller and/or DTI, as appropriate, as a result of or arising out of: (i) the Assumed Liabilities; (ii) a breach of any representation or warranty of Purchaser contained herein; (iii) a breach of any covenant to be performed by Purchaser in connection with this Agreement; or (iv) the use, operation or ownership of the Business or any of the Acquired Assets or Purchased Intellectual Property after the Closing unless such matters are of a nature also subject to indemnification pursuant to Section 12.1.

**12.3.    Limitations on Agreements to Indemnify.** The obligations of either Party to indemnify the other pursuant to this Article 12 are subject to the following limitations:

**12.3.1.** Each Party agrees that, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by the other Party of any representation, warranty, agreement or covenant contained in this Agreement, and that there shall be no other remedy for any breach by a party in respect of any claim for monetary damages arising out of or under this Agreement.

**12.3.2.** In calculating amounts payable to an indemnified party, the amount of any indemnified Purchaser Damages or Seller Damages, as the case may be, shall be determined without duplication of any other damages for which a claim has been made or could be made under any other representation, warranty or covenant included herein.

**12.3.3.** Any written notice delivered by an indemnified party to an indemnifying party seeking indemnification pursuant to this Agreement shall set forth, with as much specificity as is reasonably practicable, the basis of the claim, the sections of this Agreement which form the basis for the claim, and, to the extent reasonably practicable, a reasonable estimate of the amount of the Purchaser Damages or Seller Damages, as the case may be, that have been or may be sustained by such indemnified party.

**12.3.4.** Notwithstanding any other provision of this Agreement, in no event shall an indemnified party be entitled to indemnification pursuant to this Agreement to the extent any Purchaser Damages or Seller Damages, as the case may be, were attributable solely to the indemnified party's own gross negligence or willful misconduct.

**12.3.5.** No indemnifying party shall be liable to an indemnified party until the amount of all indemnifiable damages of such indemnified party in the aggregate exceeds $50,000.00, after which point the indemnifying party will be obligated to the indemnified party for all damages (and not just the amount in excess of such amount).

**12.3.6.** To the extent an indemnifying party makes any indemnification payment pursuant this Article 12 for which the indemnified party has a right to recover against a third party (including an insurance company), the indemnifying party shall be subrogated to the right of the indemnified party to seek and obtain recovery from such third party.

**12.3.7.** Any indemnity amounts payable pursuant to this Agreement (including, without limitation, any indemnity payment made under this Article 12) shall be reduced by any Tax benefit arising from the claim, loss or damage for which the indemnity is being paid, including any increase in deductions, credits or losses of the indemnified Party.  In the case of Tax benefits consisting of depreciation, amortization or other similar deductions, the Tax benefit amount will be based on the net present value of such deductions using a discount rate equal to the mid-term applicable federal rate in effect on the day on which the indemnification payments are due.  Any calculations of the Tax benefit under this Section 12.3.7 shall be determined assuming the paying Party pays Taxes at the highest combined marginal Tax rate for applicable U.S. federal, foreign, state and local Taxes.

**12.4.    Third Party Indemnification.**  The obligations of any indemnifying party to indemnify any indemnified party under Sections 12.1 or 12.2 with respect to Purchaser Damages or Seller Damages, as the case may be, resulting from the assertion of liability by third parties (including Governmental Entities) (an "**Indemnification Claim**"), shall be subject to the following terms and conditions:

**12.4.1.** Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of Section 12.3.3), and to the extent such matter involves a third party claim, the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party.  Failure to give prompt written notice of an Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 12, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice.  The indemnified party, at the indemnifying party's expense, shall, and shall cause its employees and representatives to, reasonably cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within thirty (30) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party.

**12.4.2.** Anything in this Section 12.4 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne exclusively by the indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

**12.4.3.**  Nothing in this Agreement, the Sale Approval Order or any Ancillary Agreements including, without limitation, any right to indemnification in favor of Purchaser, shall alter or otherwise vitiate the legal effect of the bar date order and discharge injunction under a confirmation on any third party claim against Seller or DTI that would otherwise be barred or discharged thereunder. Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, upon receipt of any such third party claim, Seller and/or DTI, as appropriate, in its sole discretion, may elect to defend against such claim and settle or otherwise resolve such claim without Purchaser's consent.

**13.    MISCELLANEOUS:**

**13.1.    Bulk Sales Laws.**  Seller and Purchaser hereby waive compliance by Seller with the provisions of the bulk sales Law of any state or foreign jurisdiction.

49

**13.2.  Notices.**  All notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first business day after sent by reputable overnight carrier, or on the third business day after sent by registered or certified first class mail (with receipt confirmed), to the following:

<table>
<tr><td><b>If to Seller or DTI:</b></td><td><b>DELPHI AUTOMOTIVE SYSTEMS LLC</b><br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  AHG – Manager, Mergers & Acquisitions<br>        – Brake Hose Transaction<br>Fax No.: 248-813-2410</td></tr>
<tr><td><b>With a copy to:</b></td><td><b>DELPHI AUTOMOTIVE SYSTEMS LLC</b><br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  Deputy General Counsel – Transactional and Restructuring<br>Fax No.:  248-813-2491</td></tr>
<tr><td><b>If to Purchaser or Harco:</b></td><td><b>HARCO BRAKE SYSTEMS, INC.</b><br>707 Harco Drive<br>Clayton, Ohio 45315<br>Attn:  Larry G. Harris, President<br>Fax No.: (937) 832-1097</td></tr>
<tr><td><b>With a copy to:</b></td><td><b>COOLIDGE WALL CO., L.P.A.</b><br>33 West First Street<br>Dayton, Ohio 45402<br>Attn: Ronald S. Pretekin, Esq.<br>Fax No.:  (937) 223-6705</td></tr>
</table>

provided, however, if a Party shall have designated a different addressee by notice, then to the last addressee so designated.

**13.3.  Assignment.**  This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties and their Affiliates, but no rights, obligations, duties or liabilities of any Party may be assigned without the prior written consent of the others, which shall not be unreasonably withheld.

**13.4.  Entire Agreement.**  This Agreement, together with the Ancillary Agreements, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein.  This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5.  Waiver.**  Any waiver by Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be

50

construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6.    Severability.**    Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7.    Amendment.**    This Agreement may only be amended only in writing by duly authorized representatives or officers of the Parties.

**13.8.    Expenses.**    Except as otherwise expressly provided in Section 9.3 of this Agreement or an Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9.    Third Parties.**    Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10.    Headings.**    The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11.    Counterparts.**    More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.

**13.12.    Governing Law.**    This Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13.    Public Announcements.**    Seller may inform its employees, customers, suppliers and/or any of the constituents in the Bankruptcy Cases (including, without limitation, the Union, the unsecured creditors committee, the equity committee, ad hoc committees and the plan investors and other stakeholders and General Motors) of the substance of this Agreement. Seller and Purchase will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press

release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation.

13.14. **Sales or Transfer Taxes**.   All sales taxes, documentary and stamp taxes, transfer taxes, use taxes, gross receipts taxes, excise taxes, value-added gross receipt taxes or similar charges and all charges for filing and recording documents in connection with the transfer of the Acquired Assets (including intellectual property filing and recording fees) shall be paid by Purchaser.

13.15. **Venue and Retention of Jurisdiction**.  All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

13.16. **Risk of Loss.**  Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Seller.

13.17. **Enforcement of Agreement**.  The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

13.18. **Dispute Resolution.**  Seller and Purchaser will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Ancillary Agreement by good faith negotiations by senior management of each party.  If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute.  Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response.  The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties.  Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute.  All reasonable requests for information made by one party to the other will be honored promptly.  All negotiations pursuant to this Section 13.18 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.  In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.15 above.

13.19. **No Right of Setoff.**  Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

**13.20.  Dollar Amounts.**  All amounts referenced herein are in US dollars.

**13.21.  Limitation    on    Damages.**    NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASER, DTI OR SELLER BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

*[Remainder of Page Intentionally Left Blank]*

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed by their duly authorized officers.

| | |
|---|---|
| **DELPHI AUTOMOTIVE SYSTEMS LLC** | **HARCO MANUFACTURING GROUP, LLC** |
| By: /s/ John Arle | By: /s/ Larry G. Harris |
| Print Name: **John Arle** | Print Name: **Larry G. Harris** |
| Title: **Vice President** | Title: **President** |
| | |
| **DELPHI TECHNOLOGIES, INC.** | **HARCO BRAKE SYSTEMS, INC.** |
| By: /s/ John Arle | By: /s/ Larry G. Harris |
| Print Name: **John Arle** | Print Name: **Larry G. Harris** |
| Title: **Vice President** | Title: **President** |

**<u>Exhibit E</u>**

**Cure Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

          - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
     In re                                    :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                              Debtor.         :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND/OR ASSIGNED
WITH RESPECT TO THE SALE OF THE BRAKE HOSE BUSINESS

PLEASE TAKE NOTICE THAT:

          1.          Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P.

2002 And 9014  Approving  Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the

"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") on February 15, 2007, Delphi Automotive

Systems LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the

"Selling Debtor Entities") have entered into a Sale And Purchase Agreement ("Agreement"),

which Agreement is subject to an overbid auction, with Harco Manufacturing Group, LLC

(the "Purchaser") and Harco Brake Systems, Inc. for the purchase of assets exclusively used

the Debtors' brake hose business and certain intellectual property (the "Assets").  The Selling

Debtor Entities hereby provide notice (the "Notice") of their intent to assume and/or assign

the executory contract or unexpired lease (the "Assigned Contract") listed on Exhibit 1 hereto

to the Successful Bidder with respect to the Assets.  Capitalized terms used but not otherwise

defined in this notice have the meanings ascribed to them in the Bidding Procedures Order.

2.      On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Selling

Debtor Entities will pay the amount the Selling Debtor Entities' records reflect is owing for

prepetition arrearages, if any, as set forth on Exhibit 1 hereto (the "Cure Amount").  The

Selling Debtor Entities' records reflect that all postpetition amounts owing under the

Assigned Contract have been paid and will continue to be paid until the assumption and/or

assignment of the Assigned Contract and that, other than the Cure Amount, there are no other

defaults under the Assigned Contract.

3.      Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure asserted to be required, (c) include appropriate

documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Amended Eighth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

2

Management, And Administrative Procedures, entered by this Court on October 26, 2006

(Docket No. 5418), (e) be filed with the Bankruptcy Court in accordance with General Order

M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (f) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (g) be served in hard-copy form so that they are actually received within ten

days of service of this Notice upon (i) Delphi Automotive Systems LLC, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: General Counsel), (iii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:

John Wm. Butler, Jr.), (iv) counsel for the agent under the postpetition credit facility, Davis

Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald

Bernstein and Brian Resnick), (v) counsel for the Official Committee of Unsecured Creditors,

Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J.

Rosenberg and Mark A. Broude), (vi) counsel for the Official Committee of Equity Security

Holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York,

New York 10004 (Att'n: Bonnie Steingart), (vii) counsel for the Purchaser, Coolidge Wall

Co., L.P.A., 33 West First Street, Dayton, Ohio 45402 (Att'n: Ronald S. Pretekin), and (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

        4.       If an objection to the Cure Amount is timely filed, a hearing with

respect to the objection will be held before the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, at such date and time as the

Court may schedule. A hearing regarding the Cure Amount, if any, may be continued at the

sole discretion of the Selling Debtor Entities until after the Closing Date.

       5.     If no objection is timely received, the Cure Amount set forth in <u>Exhibit</u>

<u>1</u> hereto shall be controlling, notwithstanding anything to the contrary in any Assigned

Contract or any other document, and the non-Debtor party to the Assigned Contract shall be

deemed to have consented to the Cure Amount and shall be forever barred from asserting any

other claims against the Debtors, the Purchaser, or the Successful Bidder (as appropriate), or

the property of either of them, as to such Assigned Contract. The failure of any objecting

person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing

or thereafter, of any objection to the Sale Motion, the Sale, or the Selling Debtor Entities'

consummation and performance of the Agreement (including the transfer of the Assets and

the Assigned Contracts free and clear of all Interests), if authorized by the Court.

4

6.      Prior to the Closing Date, the Selling Debtor Entities may amend their

decision with respect to the assumption and/or assignment of the Assigned Contract and

provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
           February [●], 2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

                    By: _____
                          John Wm. Butler, Jr. (JB 4711)
                          John K. Lyons (JL 4951)
                          Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                              - and -

                    By: _____
                          Kayalyn A. Marafioti (KM 9632)
                          Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

5

**<u>Exhibit F</u>**

**Purchaser Assumption/Assignment Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                        Debtor.     :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO PURCHASER
 WITH RESPECT TO BRAKE HOSE BUSINESS

PLEASE TAKE NOTICE THAT:

        1.        Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the

"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") on February 15, 2007, Delphi Automotive

Systems LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the

"Selling Debtor Entities") have entered into a Sale And Purchase Agreement ("Agreement"),

which Agreement is subject to an overbid auction, with Harco Manufacturing Group, LLC

(the "Purchaser") and Harco Brake Systems, Inc. for the purchase of assets exclusively used

by the Debtors' brake hose business and certain intellectual property (the "Assets").

Capitalized terms used but not otherwise defined in this notice (the "Notice") shall have the

meanings ascribed to them in the Bidding Procedures Order.

        2.      Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, the Selling Debtor Entities will seek to assume and/or assign the contracts listed on

Exhibit 1 hereto (the "Assigned Contracts") at the hearing to be held at 10:00 a.m. (Prevailing

Eastern Time) on March 22, 2007 (the "Sale Hearing") before the Honorable Robert D.

Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, Room 610, New York, New York 10004.

        3.      Objections, if any, to the assumption and/or assignment of an Assigned

Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c)

conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

Southern District of New York, and the Amended Eighth Supplemental Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418), (d)

be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted

in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so it is actually received within ten days after the date of this Notice upon (i) Delphi

Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii)

Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (iii)

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iv) counsel for the

agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue,

New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the

Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue,

New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vii) counsel

for the Official Committee of Equity Security Holders, Fried, Frank, Harris, Shriver &

Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart),

(viii) counsel for the Purchaser, Coolidge Wall Co., L.P.A., 33 West First Street, Dayton,

Ohio 45402 (Att'n: Ronald S. Pretekin), and (ix) the Office of the United States Trustee for

the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard).

        4.      If an objection to the assumption and/or assignment of an Assigned

Contract is timely filed, a hearing with respect to the objection will be held before the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no

objection is timely received, the non-Debtor party to the Assigned Contract shall be deemed

to have consented to the assumption and assignment of the Assigned Contract and shall be

forever barred from asserting any other claims, including, but not limited to, the propriety or

effectiveness of the assumption and assignment of the Assigned Contract, against the Debtors

or the Purchaser, or the property of either of them, as to such Assigned Contract.

    5.    Pursuant to 11 U.S.C. § 365, there is adequate assurance of future

performance that the Cure Amount set forth in the Cure Notice shall be paid in accordance

with the terms of the Sale Order.  Further, there is adequate assurance of the Purchaser's

future performance under the executory contract or unexpired lease to be assumed and

assigned because of the significant resources of the Purchaser.

    6.    Prior to the Closing Date, the Selling Debtor Entities may amend their

decision with respect to the assumption and/or assignment of any Assigned Contract and

provide a new notice amending the information provided in this Notice.

4

Dated:  New York, New York
      [_____], 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: _____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
  333 West Wacker Drive, Suite 2100
  Chicago, Illinois  60606
  (312) 407-0700

     - and -

By:_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
  Four Times Square
  New York, New York 10036
  (212) 735-3000

  Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

# **Exhibit G**

**Qualified Bidder Assumption/Assignment Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                :
    In re              :   Chapter 11
                :
DELPHI CORPORATION, et al.,   :   Case No. 05-44481 (RDD)
                :
          Debtor.   :   (Jointly Administered)
                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS
WITH RESPECT TO SALE OF BRAKE HOSE BUSINESS

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. § 105(a) And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on February 15, 2007, Delphi Automotive Systems LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the "Selling Debtor Entities") have entered into a Sale And Purchase Agreement ("Agreement"), which Agreement is subject to an overbid auction, with Harco Manufacturing Group, LLC (the "Purchaser") and Harco Brake Systems, Inc. for the purchase of assets exclusively used by the Debtors' brake hose business and certain intellectual property (the "Assets"). Capitalized terms used but not otherwise defined in this notice (the "Notice") shall have the meanings ascribed to them in the Bidding Procedures Order.

2.    Pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, the following parties have submitted Qualified Bids for the Assets and will participate in an Auction to be held March [●], 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing).

3.    Pursuant to the terms of the Agreement (or any asset sale and purchase agreement that the Selling Debtor Entities may enter into with the Successful Bidder), the Selling Debtor Entities will seek to assume and/or assign the contracts listed on Exhibit 1 hereto (the "Assigned Contracts") at the hearing to be held at 10:00 a.m. (Prevailing Eastern Time) on March 22, 2007 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

2

4.        Objections, if any, to the assumption and/or assignment of an Assigned

Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c)

conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

Southern District of New York, and the Amended Eighth Supplemental Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418), (d)

be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted

in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so they are actually received within ten days after the date of this Notice upon (i) Delphi

Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii)

Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (iii)

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iv) counsel for the

agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue,

New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the

Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue,

New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel

for the Official Committee of Equity Security Holders, Fried, Frank, Harris, Shriver &

Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart),

3

(vii) counsel for the Purchaser, Coolidge Wall Co., L.P.A., 33 West First Street, Dayton,

Ohio 45402 (Att'n: Ronald S. Pretekin), and (viii) the Office of the United States Trustee for

the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard).

5.    If an objection to the assumption and/or assignment of an Assigned

Contract is timely filed, a hearing with respect to the objection will be held before the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no

objection is timely received, the non-Debtor party to the Assigned Contract shall be deemed

to have consented to the assumption and assignment of the Assigned Contract and shall be

forever barred from asserting any other claims, including, but not limited to, the propriety or

effectiveness of the assumption and assignment of the Assigned Contract, against the Debtors

or the Purchaser, or the property of either of them, as to such Assigned Contract.

6.    Pursuant to 11 U.S.C. § 365, there is adequate assurance of future

performance that the Cure Amount set forth in the Cure Notice shall be paid in accordance

with the terms of the Sale Order.  Further, there is adequate assurance of the Purchaser's

future performance under the executory contract or unexpired lease to be assumed and

assigned because of the significant resources of the Purchaser.

7.    Prior to the Closing Date, the Selling Debtor Entities may amend their

decision with respect to the assumption and/or assignment of any Assigned Contract and

provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
      [_____], 2007

                                       SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP

                     By: _____

                         John Wm. Butler, Jr. (JB 4711)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                             - and -

                     By:_____

                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                     Debtors and Debtors-in-Possession