TOGUT, SEGAL & SEGAL LLP
Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Howard P. Magaliff (HM-2189)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
 :
In re: : Chapter 11
 : Case No. 05-44481 [RDD]
 :
DELPHI CORPORATION, *et al.* :
 :
                  Debtors. :
 :
-----------------------------------------------------------x
 :
DELPHI CORPORATION, : Adversary Proceeding
 : No. 07-_____
 :
                  Plaintiff, :
 :
   - against - :
 :
NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA, :
 :
                  Defendant. :
 :
-----------------------------------------------------------x

## COMPLAINT FOR DECLARATORY JUDGMENT

       Delphi Corporation ("Delphi"), as Plaintiff, by and through its attorneys,

for its complaint against National Union Fire Insurance Company of Pittsburgh, PA

("National Union" or the "Defendant") alleges the following upon knowledge as to itself and otherwise upon information and belief:

## SUMMARY OF ACTION

1. Plaintiff brings this action for a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that, under Executive and Organization Liability Insurance policy number 931-88-56 issued by Defendant to Plaintiff, Defendant must reimburse Plaintiff for all Loss,[1] including Defense Costs -- in excess of the $10 million Retention and within the $25 million Limit of Liability -- paid by Plaintiff after October 15, 2004, for (a) its joint investigation and defense and (b) in fulfillment of Plaintiff's obligations to advance fees, costs and expenses for the defense of its current and former directors, officers and employees, in response to an SEC investigation and ensuing Securities and Derivative Litigation.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Delphi Corporation is a Delaware corporation with a principal place of business in Troy, Michigan.

3. Defendant is a Pennsylvania corporation with a principal place of business in New York, New York.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). To the extent the Court determines that any claim asserted herein is not core, Plaintiff hereby consents to the entry of a final order and judgment by the Bankruptcy Court.

---

[1] Capitalized terms used herein not defined within the Complaint have the meanings ascribed to them in Executive and Organization Liability Insurance policy number 931-88-56, discussed below.

2

6. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The predicates for the relief requested are 28 U.S.C. §§ 2201 and 2202 and Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

**The Chapter 11 Cases**

8. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries (the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code.

9. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' Chapter 11 cases.

10. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these cases. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

11. No trustee or examiner has been appointed in the Debtors' cases.

**The SEC Investigation, the Securities and**
**Derivative Litigation, and the ERISA Actions**

12. On July 21, 2004, the Securities and Exchange Commission ("SEC") issued a formal order of investigation alleging that:

> Members of the staff have reported information to the Commission that tends to show that from at least January 1, 2001 . . . In connection with the purchase or sale of securities, Delphi, certain of its present and/or former officers, directors, employees, affiliates and other persons or entities may have, directly or indirectly, (i) employed devices, schemes or artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary

3

        in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices or courses of business which operated as a fraud or deceit upon others concerning, among other things, the accounting for certain loans and/or payments from third parties.

13. By the express terms of the SEC's formal order of investigation, the SEC's investigation was directed at Delphi and certain of Delphi's current and former officers, directors and employees.

14. On October 15, 2004, the SEC issued its first subpoena to a former Delphi officer concerning the allegations asserted in the formal order of investigation.

15. To investigate and defend itself and to fulfill its obligations to its current and former directors, officers and employees in response to the SEC investigation Delphi, among other things, retained Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale").

16. In early October 2004, the Audit Committee of Delphi's Board of Directors assumed oversight responsibility for the Company's internal review, from which point WilmerHale reported to the Audit Committee.

17. In mid-October 2004, WilmerHale retained Pricewaterhouse-Coopers L.L.P. to provide forensic accounting assistance.

18. Pursuant to its obligations to its current and former directors, officers and employees, and for its own defense, Delphi has paid the reasonable fees, costs and expenses charged by WilmerHale and PricewaterhouseCoopers L.L.P.

19. In addition, pursuant to its obligations, Delphi has advanced the reasonable fees, costs and expenses charged by additional counsel for certain of its current and former directors, officers and employees for the SEC investigation.

4

20. As set forth in Section 5.5(b) of Delphi's bylaws, each current or former director, officer, and employee has signed an agreement "to repay such amount [of costs advanced] if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation in respect to such costs and expenses as authorized by this Article [Article V]."

21. In March of 2005, Delphi announced that it intended to restate certain of its filed financial disclosures (the "Restatement Announcement").

22. After the Restatement Announcement, numerous lawsuits were filed against Delphi and some of its current and former directors, officers and employees, including securities fraud actions and derivative litigation (collectively, the "Securities and Derivative Litigation"), and Employee Retirement Income Security Act actions (the "ERISA Actions").

23. Delphi has retained and paid counsel to defend itself and certain of its current and former directors, officers and employees in response to the Securities and Derivative Litigation and the ERISA Actions.

24. In addition, pursuant to Delphi's obligations to its current and former directors, officers and employees, Delphi has advanced the funds for the fees, costs and expenses of certain of Delphi's current and former directors, officers and employees in response to the Securities and Derivative Litigation and the ERISA Actions.

25. Delphi's obligations were established, in part, by the Bankruptcy Court's Order dated October 8, 2005 (the "October 8 Order") setting forth the conditions under which Delphi is permitted to advance funds for the fees, costs and expenses incurred by current and former employees and directors.

5

26. Pursuant to the October 8 Order: (a) for current employees and directors, Delphi has the authority, but not the obligation, to advance funds for expenses incurred both pre and post-petition, regardless of the underlying matter for which the fees were incurred; and (b) for former employees and directors, Delphi has the authority, but not the obligation, to advance expenses that such individuals may incur in defending only against the Derivative Actions and ERISA Actions, and participating in the SEC investigation.

27. This Court's authorization under the October 8 Order to pay the expenses for former employees and directors is: (a) subject to an aggregate cap of $5 million; (b) to be made on a case by case basis pursuant to approval by the Compensation Committee of Delphi's Board of Directors (the "Compensation Committee"); and (c) to be paid only if advances are not available from other third parties.

28. The Compensation Committee has followed the October 8 Order and, in some cases, declined to advance expenses to certain former officers and employees.

29. Since October 15, 2004, Delphi has expended approximately $19 million to jointly defend itself and, pursuant to its obligations, certain of its current and former directors, officers, and employees, in response to the SEC investigation, the Securities and Derivative Litigation and the ERISA Actions.

**The D&O Policy and the Fiduciary Policy**

30. On February 3, 2004, National Union issued to Delphi, an Executive and Organization Liability Insurance, policy number 931-88-56 (the "D&O Policy").

31. The D&O Policy's Preset Allocation provision provides coverage for losses incurred by Delphi while a Securities Claim (as defined below) is jointly made

and maintained against both Delphi and one or more of its current or former officers, directors or employees. (D&O Policy, Endorsement 13.IV.8(e)(iii).)

32. Since October 15, 2004, a Securities Claim (as defined below) has been jointly made and maintained against both Delphi and one or more of its current or former officers, directors or employees.

33. The D&O Policy's Coverage B provision provides coverage for indemnification costs Delphi paid in indemnifying and advancing fees, costs and expenses to one or more of its current or former officers, directors and employees, arising from a Claim (as defined below) asserted against such officers, directors or employees. (D&O Policy, Endorsement 13.I.)

34. National Union also issued to Delphi Employee Benefit Plan Fiduciary Liability Insurance, policy number 931-88-61 (the "Fiduciary Policy").

35. The Fiduciary Policy provides coverage to Delphi for fees, costs and expenses paid by Delphi in connection with the ERISA Actions.

36. National Union does not dispute its obligation to provide insurance coverage to Delphi in connection with the ERISA Actions under the Fiduciary Policy.

37. Pursuant to the Preset Allocation and Part B coverage provisions of the D&O Policy, once Delphi meets the D&O Policy's $10 million Retention, National Union must reimburse Delphi 100% for (a) the fees, costs and expenses Delphi incurs in the joint investigation and defense of itself and certain of its current and former directors, officers and employees after October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation, and (b) the costs Delphi incurs in advancing fees, costs and expenses to its current and former director, officers and employees, after October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation.

7

**The Preset Allocation and Part B Coverage Provisions of the D&O Policy**

      38.    The Preset Allocation provision of the D&O Policy provides:

> In connection with any Securities Claim, with respect to Loss incurred as: (i) Defense Costs jointly incurred by, (ii) any joint settlement entered into by, or (iii) any judgment of joint and several liability against an Organization and an Insured Person, the following shall govern:
>
> for any Loss … incurred while a Securities Claim … is jointly made and maintained against both the Organization and one or more Insured Person(s), this policy shall pay 100% of such Loss up to the Limit of Liability of the policy, subject to the policy's terms, conditions and exclusions, and the Organization shall pay the remaining 0% of each and every such Loss.

(D&O Policy, Endorsement 13.IV.8(e)(iii).)

      39.    The Part B coverage provision of the D&O Policy provides:

> This policy shall pay the Loss of an Organization arising from a Claim made against an Insured Person … for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person.

(D&O Policy, Endorsement 13.I.)

      40.    The D&O Policy requires National Union to "advance, excess of any applicable retention amount, covered Defense Costs no later than ninety (90) days after the receipt by the Insurer of such defense bills." (D&O Policy, Endorsement 13.IV.8(a).)

      41.    The D&O Policy requires Delphi to "indemnify . . . Insured Persons to the fullest extent permitted by law. . . ." (D&O Policy, Endorsement 13.IV.8(g).)

      42.    The D&O Policy defines a Loss to include Defense Costs and defines Defense Costs to include "reasonable and necessary fees, costs and expenses … resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured." (D&O Policy, ¶ 2(p), (f).)

8

43. The SEC investigation and the Securities and Derivative Litigation constitute Securities Claims because:

    a. the D&O Policy defines "Securities Claim" to include,

> a Claim made against any Insured Person … alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities … which is … brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization.

(D&O Policy, Endorsement 13.II.2.(1)(a).); and

    b. the D&O Policy defines "Claim" to include:

> a civil, criminal, administrative or regulatory investigation of an Insured Person … in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such Insured Person.

(D&O Policy, ¶ 2(b)(3)(ii).)

44. The D&O Policy defines "Organization" as the "Named Entity" and defines the "Named Entity" to mean Delphi. (D&O Policy, ¶ 2(t), Declarations, Item 1.)

45. The D&O Policy defines "Insured Person" to include past, present and future duly elected or appointed directors and officers, and past, present or future employees. (D&O Policy, ¶ 2(g), 2(j), 2(o).)

46. The D&O Policy defines "Limit of Liability" as "[f]or all Loss, in the aggregate, under this policy including Defense Costs: $25,000,000." (D&O Policy, Declarations, Item 3.)

47. The Preset Allocation provision and the Part B coverage provision, together with their embedded definitions, demonstrate that the fees, costs and expenses paid or advanced by Delphi after October 15, 2004 in response to the SEC investigation

9

and the Securities and Derivative Litigation are covered under the D&O Policy because they are (a) a "Loss . . . incurred while a Securities Claim . . . is jointly made and maintained against both the Organization and one or more Insured Person(s)" within the "Limit of Liability" for which National Union must reimburse Delphi;  and (b) a "Loss of an Organization arising from a Claim made against an Insured Person . . . for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person."

**The D&O Policy's Retention Provisions**

48. The D&O Policy provides "the Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention amounts stated in . . . Item[] 4(a) [which] applies to Loss that arises out of a Securities Claim."  (D&O Policy, Endorsement 6(2).)

49. The D&O Policy provides for a $10,000,000 retention (the "Retention") for "Securities Claims." (D&O Policy, Declarations, Item 4(a).)

50. After initially maintaining that Delphi was required to satisfy two separate retentions for the SEC investigation and the Securities and Derivative Litigation, and the ERISA Actions, by letter dated October 3, 2006, National Union notified Delphi that "National Union is prepared to agree to apply only one $10,000,000 retention to both the current securities fraud class action and the ERISA employer stock class action if Delphi funds the full $10,000,000 in relation to covered Defense Costs and/or settlement in those suits."

51. Delphi has paid in excess of the Retention for fees, costs and expenses (presently approximately $19 million), both to jointly defend itself and certain of its current and former directors, officers and employees, and to advance defense costs to certain current and former directors, officers, and employees and employees, all in

response to the SEC investigation, the Securities and Derivative Litigation and the ERISA Actions.

52. The Retention has been satisfied.

53. Delphi timely gave notice to National Union of the SEC investigation, the Securities and Derivative Litigation and the ERISA Actions.

54. Delphi has submitted to National Union detailed documentation (and continues to provide periodic updates) of both the costs it has paid to jointly defend itself and certain of its current and former directors, officers and employees, and the costs it has advanced to certain current and former directors, officers, and employees and employees, all in response to the SEC investigation, the Securities and Derivative Litigation and the ERISA Actions.

55. All conditions precedent for coverage under the D&O Policy have been fulfilled or waived or are subject to estoppel.

56. National Union has refused to reimburse Delphi in full, or to pay on Delphi's and its directors' and officers' behalf, or to advance Defense Costs for the costs Delphi paid in excess of the Retention to jointly investigate and defend itself and its current and former directors, officers and employees in response to the SEC investigation and the Securities and Derivative Litigation, as required by the D&O Policy.

## COUNT I
**(Declaratory Judgment)**

57. Plaintiff realleges and incorporates by reference the preceding paragraphs.

58. Costs paid by Delphi after October 15, 2004, to jointly defend itself and certain of its current and former directors, officers and employees in response to the

SEC investigation and the Securities and Derivative Litigation constitute a "Loss … incurred while a Securities Claim … is jointly made and maintained against both the Organization and one or more Insured Person(s)" within the "Limit of Liability" for which National Union must reimburse Delphi.

59. Costs advanced by Delphi after October 15, 2004 in fulfillment of its obligations to its current and former officers, directors and employees are a "Loss of an Organization arising from a Claim made against an Insured Person … for any Wrongful Act of such Insured Person, but only to the extent that such Organization has indemnified such Insured Person."

60. National Union contends that certain costs Delphi incurred after October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation, such as costs of the internal investigation conducted by Delphi in response to the SEC investigation, are not a "Loss … incurred while a Securities Claim … is jointly made and maintained against both the Organization and one or more Insured Person(s)."

61. Upon information and belief, National Union does not intend to apply to the Retention certain costs, such as costs of the internal investigation conducted by Delphi in response to the SEC investigation, which Delphi incurred jointly with certain of its current and former directors, officers and employees after October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation.

62. As a direct and proximate result of National Union's refusal to apply to the Retention certain costs Delphi jointly incurred with certain of its current and former directors, officers and employees, Plaintiff is being deprived of the benefit of the insurance coverage for which National Union was paid substantial premiums.

12

63. Because there are no other adequate means to resolve this controversy, Plaintiff is compelled and entitled to seek a declaration of its rights under the D&O Policy pursuant to 28 U.S.C. § 2201.

64. An actual controversy exists between Plaintiff and National Union concerning the scope of National Union's obligations to provide insurance coverage for the fee, costs and expenses paid by Delphi to jointly defend itself and its current and former directors, officers and employees after October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation.

**WHEREFORE**, Plaintiff respectfully requests the entry of a judgment against Defendant:

   a. declaring that all of the fees, costs and expenses Delphi incurred in investigating and defending itself and certain of its current and former directors, officers and employees in response to the SEC investigation and the Securities and Derivative Litigation are a Loss incurred while a Securities Claim is jointly made and maintained against Delphi and one or more current or former Delphi directors, officers or employees under the D&O Policy, and that such costs apply towards satisfaction of the Retention;

   b. declaring that Defendant shall provide insurance coverage, in excess of the Retention, to Plaintiff for all of the fees, costs and expenses paid by Delphi to jointly defend itself and its current and former directors, officers and employees from October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation to date;

   c. declaring that Defendant shall provide insurance coverage, in excess of the Retention, to Plaintiff for all of the fees, costs and expenses paid by Delphi to jointly defend itself and its current and former directors, officers and employees from October 15, 2004 in response to the SEC investigation and the Securities and Derivative Litigation going forward, as long as such costs are within the Limit of Liability of the D&O Policy;

**[concluded on following page]**

      d.  awarding Plaintiff reasonable attorneys' fees, and costs, together with pre- and post-judgment interest;  and

      e.  granting such other and further relief as is just and proper.

Dated:    New York, New York
             January 31, 2007

                                    DELPHI CORPORATION, *et al.,*
                                    Debtors and Debtors in Possession,
                                    By their Bankruptcy Co-Counsel,
                                    TOGUT, SEGAL & SEGAL LLP,
                                    By:

                                    /s/ Neil Berger
                                    ALBERT TOGUT (AT-9759)
                                    NEIL BERGER (NB-3599)
                                    HOWARD P. MAGALIFF (HM-2189)
                                    One Penn Plaza, Suite 3335
                                    New York, New York 10119
                                    (212) 594-5000

**Of Counsel:**

Timothy W. Burns
Tonya G. Newman
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street – Suite 2200
Chicago, Illinois 60602
(312) 386-1656 (telephone)
(312) 269-1747 (facsimile)

14