SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

         - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.Delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF JAMES N. ROBBINS IN SUPPORT OF DEBTORS' SUPPLEMENTAL
REPLY WITH RESPECT TO PROOF OF CLAIM 2707 (LABORSOURCE 2000, INC.)

("ROBBINS DECLARATION – LABORSOURCE 2000, INC.")

James N. Robbins declares as follows:

1.      Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases.  I submit this declaration in support of the Debtors' Supplemental Reply With Respect To Proof Of Claim 2707 (LaborSource 2000, Inc.) (the "Supplemental Reply").  Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply.

2.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, and my experience with and knowledge of Delphi's relationship with LaborSource 2000, Inc. ("LaborSource").  If I were called upon to testify, I could and would testify to the facts set forth herein.

3.      Since April 2003, I have been a purchasing manager at Delphi Automotive Systems LLC (which, with certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases, are referred to collectively and variously herein as "Delphi" or the "Debtors").  In that capacity, I oversaw the purchase of labor services with respect to the certain project (the "Project") to produce automotive cockpits for General Motors Corporation ("GM") and am familiar with the documents kept in the ordinary course of business related to the Project.

4.      On August 27, 2002, it is my understanding that Delphi sent such a bid request to potential suppliers, including LaborSource (the "Bid Request") to solicit bids to provide labor services for the Project.  A true and correct copy of the Bid Request in Delphi's files is attached hereto as Exhibit 1.  In connection with the bid process, I am not aware of any representations or promises made by Delphi to LaborSource, outside the terms and conditions outlined in the Bid Request.

5.    LaborSource submitted the successful bid to provide labor services for the Project.  It is my understanding that LaborSource's bid, and the terms and conditions upon which Delphi agreed to procure such labor services from LaborSource, were memorialized in that certain purchase order FDBO1793 dated October 15, 2002 (the "Purchase Order"), a true and correct copy of the Purchase Order is attached hereto as <u>Exhibit 2</u>.  I am not aware of any other agreement between LaborSource and Delphi at that time, outside of the terms and conditions of the Purchase Order and general terms and conditions incorporated therein.  Nor do I know of any other Delphi employee who made a representation or promise to LaborSource that would add to or modify the terms of the Purchase Order, other than those modifications expressly set forth below.

6.    In April 2003, I began overseeing the Delphi-LaborSource relationship.  At that time, LaborSource was aware that its workforce at Delphi's manufacturing plant in Lansing, Michigan was unionized.

7.    In mid-2004, LaborSource Vice President and Chief Operating Officer Robert Sharpley contacted me and informed me that LaborSource was struggling financially and requested that Delphi make certain accommodations to help offset LaborSource's costs.  Mr. Sharpley also informed Delphi that LaborSource's debt to its primary lender was under-collateralized by approximately $1.1 million and that LaborSource risked default and foreclosure of its loan as a result.

8.    In July of 2004, Delphi and LaborSource entered into a Settlement and Accommodation Agreement (the "Settlement Agreement").  I was personally involved in the negotiations with Mr. Sharpley of LaborSource regarding the Settlement Agreement, a true and accurate copy of which is attached as <u>Exhibit 3</u>.

3

9.      Although Delphi was not obligated to do so, Delphi agreed to certain modifications of the terms of the Purchase Order to support LaborSource financially.  The Settlement Agreement increased the bill rate under the Purchase Order for certain of LaborSource's employees from $21.58 per hour to $23.00 per hour.  Moreover, Delphi agreed to cover approximately one-half of the $1.1 million unsecured debt owed by LaborSource to its lender through the payment of a surcharge in the amount of $4.10 per billable hour (the "Surcharge") until Delphi had purchased 137,000 billable hours from LaborSource. Delphi did in fact pay the Surcharge on 137,000 billable hours it purchased from LaborSource, for a total payment of $561,700.00.

10.     The Settlement Agreement also addresses the obligations of Delphi and possible claims of LaborSource. Specifically, paragraph 1(b) confirms, among other things, that "neither the Purchase Order nor this [Settlement] Agreement create any obligation of Delphi to purchase, obtain or pay for any minimum number of hours of any personnel, and [LaborSource] and Delphi agree that Delphi is under no such obligation." In paragraph 2, LaborSource confirmed its obligations and that it had "no offsets or defenses to the obligation to perform under the Purchase Order (as amended in accordance with this [Settlement] Agreement)." Finally, paragraph 3 states that LaborSource waives any and all claims it has against Delphi based on events or circumstances occurring before July 2004.

11.     In late 2004, Mr. Sharpley again approached me and said that LaborSource was still struggling financially and losing more money on the Project.  I was concerned that LaborSource's financial problems could cause it to go bankrupt and become unable to perform the remainder of its existing obligations under the Purchase Order and Settlement Agreement.  Therefore, around this time, Delphi sought confirmation that LaborSource was still finan-

cially sound and not in risk of defaulting on its obligations under the Purchase Order and Settlement Agreement.  Delphi personnel periodically reviewed LaborSource's cost estimates that Mr. Sharpley provided for that purpose. Around and after this time, Delphi therefore proposed additional support to LaborSource in order to help LaborSource with its financial difficulties, even though Delphi was not obligated to provide such support. Specifically, Delphi offered to pay to LaborSource $28,000 per week that the Project was down in calendar year 2005 to cover LaborSource's fixed costs for such weeks.  This offer to pay such costs applied only to down weeks prior to the termination of the Project.  There was only one week of down time in 2005 prior to termination of the Project.

12.    By letter dated March 3, 2005 (the "March 3, 2005 Letter") from Mr. Sharpley to me, Mr. Sharpley stated his concerns about both the losses LaborSource incurred with respect to the Project and the termination of the Project and informed me that it would help if Delphi consider granting LaborSource additional contracts.  A true and correct copy of the March 3, 2005 Letter is attached as Exhibit 4. At no point did I ever make any promises or guarantees regarding future contracts. To the best of my knowledge, no Delphi employee has ever made a representation or promise to LaborSource regarding future contracts. In addition, by letter dated April 6, 2005 (the "April 6, 2005 Letter," a true and correct copy of which is attached as Exhibit 5), Delphi offered to cover certain other costs of LaborSource, including $45,000 of certain hourly and salaried vacation costs, as well as an additional $40,000 for certain hourly and salaried retention bonuses, even though not obligated to do so.

13.    Although Delphi did propose to provide additional financial support to LaborSource that it was not obligated to provide, Delphi never agreed to any additions to, changes in, modifications of, or revisions to the Purchase Order and Settlement Agreement terms

and conditions (other than the modifications expressly set forth in the Settlement Agreement). Therefore, to the best of my knowledge, the Purchase Order and the Settlement Agreement reflect the entire agreement between Delphi and LaborSource with respect to the Project.

14.     The Project was terminated by GM in May of 2005.  Upon such termination, Delphi had no further need for labor services from LaborSource pursuant to the Purchase Order and Settlement Agreement.

15.     To the best of my knowledge, Delphi did not use a "job bank" idea belonging to LaborSource.

16.     To the best of my knowledge, I am not aware of any money received from GM that Delphi was obligated to pay LaborSource as an accommodation.

17.     To the best of my knowledge, Mr. Sharpley has continued to operate a labor outsourcing business, under the name Integrated Outsourcing Solutions, and, most recently, under the name National Outsourcing Solutions.


I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on January 31, 2007, in Troy, Michigan.


_____/s/ James N. Robbins_____
James N. Robbins

**Exhibit 1**

# DELPHI
## Automotive Systems

REF. INQUIRY NO.   #Q00796

**REQUEST FOR QUOTATION**
**NOT AN ORDER**
USE ATTACHED FORM WHEN QUOTING
FURNISH NET PRICES WHERE POSSIBLE

**TO: POTENTIAL BIDDERS**

## INSTRUCTIONS

1. PLEASE REFERENCE THE ABOVE REF. INQUIRY NO. ON YOUR QUOTATION.
2. IF YOU HAVE STANDARD QUANTITY BRACKET PRICES, PLEASE QUOTE IN THAT MANNER IN ADDITION TO QUANTITIES SHOWN.
3. PLEASE QUOTE TOOLS, IF NECESSARY TO PRODUCE THIS PART, AS A SEPARATE ITEM. IF YOU ARE THE SUCCESSFUL BIDDER AND SHOULD PACKARD PAY FOR THE TOOLS, IT WOULD BE WITH THE UNDERSTANDING THAT THESE TOOLS WOULD BECOME PACKARD PROPERTY. (if applicable)
4. PLEASE PROVIDE YOUR COMPANY'S DUNN & BRADSTREET NUMBER ON YOUR QUOTATION

| DATE PREPARED | BID MUST BE RECEIVED BY | TECHNICAL SUPPORT |
|---|---|---|
| 08/27/02 | End of Business Day<br>**September 17, 2002** | Name:   Linda Giordano<br>Phone:   517.322.4803 or<br>Del Kane<br>517.322.4950 |

**ATTENTION**
Please note that quoting in currencies other than the one requested will result in a risk factor being applied that will impact your price.

## PLEASE QUOTE EACH PART ON THIS INQUIRY TO INCLUDE – if applicable:

1. TOOLING PRICE (TO INCLUDE NECESSARY GAGES OR FIXTURES).
2. PIECE PRICE PER THOUSAND (TO INCLUDE TOOL MAINTENANCE).
3. COMPLETE DIMENSIONAL INSPECTION REPORT OF EACH CAVITY.
4. TOOL CAPACITY PER HOUR.
5. TOOL CAPACITY PER DAY.
6. TOOL CAPACITY PER MONTH.
7. RAW MATERIAL PRICE / LB.
8. ESTIMATED PART WEIGHT.
9. SUPPLIER PACKAGING INFORMATION FORM.
10. LEADTIME.
11. NAFTA CERTIFICATE.
12. MANUFACTURES AFFIDAVIT.

PRICES SUBMITTED WILL COVER PRODUCTION AND SERVICE REQUIREMENTS FOR A MINIMUM OF 3 YEARS BEYOND LAST YEAR IN PRODUCTION. WITH CERTAIN COMMODITIES, SET-UP CHARGES MAY BE ACCEPTABLE TO FACILITATE HOLDING PRODUCTION PRICES FOR 3 YEARS BEYOND LAST YEAR OF PRODUCTION.

## RETURN SIGNED AND DATED QUOTATIONS TO:

Vicki L. McGrath              Phone:   248.655.0715        Fax No.:   248.655.8350
Delphi Global Purchasing                                               e-mail vicki.l.mcgrath @
                                                                       delphiauto.com
Delphi Safety & Interior Systems

**Regular Mail**                                         **Overnight Packages**

P.O. Box 5032 M/C 480.009.160                            1401 Crooks Road
Troy, MI 48084                                           Troy, MI 48084

## TERMS

1. THE QUOTATION IS SUBJECT TO STANDARD DELPHI TERMS AND CONDITIONS INCLUDING MNS-2 PAYMENT AND Y2K COMPLIANCE AS WELL AS ANY ADDITIONAL TERMS AND CONDITIONS ATTACHED TO THIS DOCUMENT.
2. SUPPLIERS RESPONDING TO THIS REQUEST FOR QUOTE ARE EXPECTED TO MEET ALL REQUIREMENTS DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES & REFERENCE DOCUMENTS. THESE DOCUMENTS ARE AVAILABLE ON THE DELPHI AUTOMOTIVE SYSTEMS WEBSITE, WWW.DELPHIAUTO.COM (BY CLICKING ON "SUPPLIERS IN THE HEADER AND THEN "SUPPLIER STANDARDS ON THE SUPPLIER PAGE).
3. WE RESERVE THE RIGHT TO REJECT ANY AND ALL QUOTATIONS.
4. QUOTATIONS RECEIVED AFTER THE BID CLOSING DATE ARE SUBJECT TO REJECTION.
5. SUPPLIERS MUST CONFORM TO THE DELPHI GLOBAL SUPPLIER PACKAGING MANUAL (REF. WWW.DELPHIAUTO.COM).

6. IF UNRETREVABLE FROM THE DELPHI AUTOMOTIVE WEB SITE A COPY OF THE TERMS AND CONDITIONS, SUPPLIER PACKAGING INFORMATION MANUAL/FORM OR SUPPLIER GUIDELINES MAY BE OBTAINED FROM THE BUYER SENDING THIS REQUEST.

NPURW 9.1-2 F.1 (4/1/01)

EX. A

# Statement of Requirements

## For

## Contract Service Provider for Delphi Cockpit Facilities

### Dated: August 26, 2002

### Section 1.0 - PURPOSE

This Statement of Requirement is a contract that details Delphi's expectations and requirements of the source responsible for providing labor to the Delphi Cockpit facilities. The information in this bid package is intended for those companies or groups who are interested in providing a labor service to the Delphi Cockpit plant in Lansing.

### Section 2.0 – STATEMENT OF REQUIREMENTS

### Section 2.1 – EMPLOYMENT TEMPLATE

The labor provider is responsible for ensuring that all positions on the manning template are filled on a daily basis. The labor provider should be staffed to ensure a full template given a certain rate of absenteeism. If absenteeism is greater than the staffing plan, the service provider must provide prompt resolution by offering employees from the opposite shift additional work hours. The labor provider will not charge Delphi a labor premium for overtime hours worked to cover absenteeism. If absenteeism is less than the staffing plan, the service provider must have a means by which the excess employees' work day is cancelled. Delphi will not incur any costs for employees in excess of the specified template. The template will change based on volumes, the manufacturing process, product changes, etc.

### Section 2.2 – SALARIED POSITIONS

The labor provider will be responsible for providing resumes for Delphi's review based on job responsibilities, required qualifications, and other information provided on the requisition form submitted by Delphi. Personnel will be interviewed by the service provider, in conjunction with Delphi (if appropriate), to further assess qualifications of the individuals.

These positions may include, but are not limited to, the following:

- Production Supervisors
- Materials Supervisors
- Shipping Coordinators
- Material Planners
- IT Administrators
- Engineers – Quality, Product, Manufacturing
- Human Resource manager

### Section 2.3 – HOURLY POSITIONS

A Functional Capacity Evaluation will be performed on all employees to assess range of motion, strength, sensibility, coordination, mobility, and body mechanics. It will be expected the labor provider define

## Statement of Requirements

## For

## Contract Service Provider for Delphi Cockpit Facilities

### Dated: August 26, 2002

### Section 1.0 - PURPOSE

This Statement of Requirement is a contract that details Delphi's expectations and requirements of the source responsible for providing labor to the Delphi Cockpit facilities. The information in this bid package is intended for those companies or groups who are interested in providing a labor service to the Delphi Cockpit plant in Lansing.

### Section 2.0 – STATEMENT OF REQUIREMENTS

### Section 2.1 – EMPLOYMENT TEMPLATE

The labor provider is responsible for ensuring that all positions on the manning template are filled on a daily basis. The labor provider should be staffed to ensure a full template given a certain rate of absenteeism. If absenteeism is greater than the staffing plan, the service provider must provide prompt resolution by offering employees from the opposite shift additional work hours. The labor provider will not charge Delphi a labor premium for overtime hours worked to cover absenteeism. If absenteeism is less than the staffing plan, the service provider must have a means by which the excess employees' work day is cancelled. Delphi will not incur any costs for employees in excess of the specified template. The template will change based on volumes, the manufacturing process, product changes, etc.

### Section 2.2 – SALARIED POSITIONS

The labor provider will be responsible for providing resumes for Delphi's review based on job responsibilities, required qualifications, and other information provided on the requisition form submitted by Delphi. Personnel will be interviewed by the service provider, in conjunction with Delphi (if appropriate), to further assess qualifications of the individuals.

These positions may include, but are not limited to, the following:

- Production Supervisors
- Materials Supervisors
- Shipping Coordinators
- Material Planners
- IT Administrators
- Engineers – Quality, Product, Manufacturing
- Human Resource manager

### Section 2.3 – HOURLY POSITIONS

A Functional Capacity Evaluation will be performed on all employees to assess range of motion, strength, sensibility, coordination, mobility, and body mechanics. It will be expected the labor provider define

these tests to minimize absences related to workman's compensation and injuries. The labor provider will incur all costs for these tests.

Employees will be "Temp to Perm", with a 90-day review period. Each week, the HR representative, in conjunction with each employee's immediate supervisor, will be responsible for performing an evaluation of the employee until the permanent status is reached. The evaluation categories will include, but not be limited to, Attendance, Quality, Attitude, Aptitude, Work Habits, etc.

## Section 2.4 – DRUG-SCREENING CANDIDATES

Pre-screening for drug use (hair testing) and background verification will be conducted by the supplier prior to contract service personnel being placed with Delphi. The labor provider will incur all costs for these tests.

## Section 2.5 – ON-SITE HUMAN RESOURCE STAFF

The service provider will have on-site representatives to perform the following functions:
- Time keeping and reporting
- Performance Reporting – absenteeism, turnover, demographics, etc.
- Union contract maintenance
- Employee reviews, discipline, hiring, and removal
- Employee Involvement Team activities
- Health and Safety reporting and improvement activities
- Benefits Administration
- Orientation activities
- Exit Interviews

The cost for these on-site members of the labor provider staff should be included in the "mark-up" portion of the billing rate.

## Section 3.0 – BILLING RATES

Delphi only pays for "hours worked." The labor provider will be expected to pay all costs associated with time off due to vacation, contractual holidays, bereavement, jury duty, workman's compensation, short-term disability, non-Delphi specific training, etc.

The labor provider will list all items included in any burden mark-up applied to a base wage rate.

## Section 4.0 - SUPPORTING DOCUMENTS

All labor providers will be responsible for reviewing the Delphi Automotive "U.S. Contract Service Personnel Administration Manual"(7/00) and adhering to the policies and procedures contained within this document. Any variances to the manual must be outlined in the quote submission for review. If no variances are submitted, it will be assumed that the service provider has included all aspects of this document into the submitted quote.

## Section 5.0 – LIABILITY

All labor providers will be responsible for contract service personnel actions on Delphi premises.

**Section 6.0 – CONTRACT SERVICE PERSONNEL REMOVAL**

It is Delphi's ongoing commitment to maintain a workplace environment free from all discrimination, hostility, unsafe behavior, and harassment including sexual harassment. If a contract service person is found to be in clear violation of the mentioned the labor provider will restrict the contract person from all Delphi assignments.

**Exhibit 2**

# DELPHI
Automotive Systems

## PURCHASE ORDER: FDB01793

PAGE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

SHIP TO:

TO:
DELPHI AUTOMOTIVE SYSTEMS
1401 CROOKS ROAD
TROY MI
48084

US

| ORDER DATE | ALTERATION EFFECTIVE DATE | PURCHASING AGENT |
|---|---|---|
| 10/15/02 | | V.L. MCGRATH |

PHONE: 248-655-0715

VENDOR NUMBER 94-910-5191
LABOR SOURCE 2000 INC
PEOPLE RESOURCES INTERNATIONAL
23800 10 MILE RD STE 232
SOUTHFIELD MI
48034

INVOICE TO:
INVOICING NOT REQUIRED FOR
DELPHI S&I - DIV. OFFICE.
PAYMENTS ARE GENERATED FROM
RECEIPT OF GOODS AND SERVICES.
TERMS NOTED ON ORDER.

US

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned... (fine print, illegible)

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA | |
|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SERVICE | | CHEAPEST WAY | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE UNIT/MULTIPLE MEAS |
|---|---|---|---|---|---|---|---|---|---|
| B000959 | USER: VICKI L MC GRATH | | ### | THIS IS A LOCAL BLANKET ORDER | ### | | | | |

EFFECTIVE DATE: 12/02/02   EXPIRATION DATE: 06/01/03

THIS ORDER LISTED IN THE FOLLOWING CURRENCY
USD DOLLAR (UNITED STATES)

THIS BLANKET ORDER IS ISSUED TO COVER OUR ORDER OF
THE MATERIAL OR SERVICES IDENTIFIED DURING THE PERIOD
FROM 12/02/02 TO 12/31/05. SPECIFIC QUANTITIES OR
SERVICES,IF ANY,TO BE COVERED IN SUBSEQUENT REQUESTS.

PLEASE FAX A COPY OF YOUR COMPLETED INVOICE NOTING
PURCHASE ORDER TO THE ATTENTION OF CAROLINE NASAL
AT 517.322.4804 TO ASSURE PROMPT AND ACCURATE
PAYMENT. PH: 517.322.4854.

PRICING BASED ON QUOTATION #000796, DPR#S20T063 AND
ATTACHMENT A DATED 12/06/02.

ORIGINAL

CONTINUE PAGE 2

EX. B

DELPHI S&I - DIVISIONAL OFFICE
BLANKET ORDER ATTACHMENT FORM
ORDER NUMBER FDB01793 ISSUE DATE 10/15/02

PAGE    2

BUYER NAME: VL MCGRATH
BUYER CODE: EC
VENDOR    : LABOR SOURCE 2000 INC

| ITEM SEQ | PERCENT | VENDOR ITEM IDENTIFICATION | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE | PRICE MULT | BUY U/M |
|---|---|---|---|---|---|---|---|---|
| 00001 | 0.10% | MFG-4401 | SERVICE OUTSIDE | SERVICES - MANUFACTURING DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00002 | 0.10% | ENG-4424 | SERVICE OUTSIDE | SERVICES - ENGINEERING DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00003 | 0.10% | PCL-4461 | SERVICE OUTSIDE | SERVICES - PC&L DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00004 | 0.10% | HRE-4467 | SERVICE OUTSIDE | SERVICES - HUMAN RESOURCES DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00005 | 0.10% | OFF-4471 | SERVICE OUTSIDE | SERVICES - OFFICE DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00006 | 0.10% | QUA-4474 | SERVICE OUTSIDE | SERVICES - QUALITY CONTROL DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00007 | 0.10% | ITE-4492 | SERVICE OUTSIDE | SERVICES - INFORMATION TECHNOLOGY DEPARTMENT | | 1.0000 | 1 | DOLS |
| 00008 | 0.10% | MISCEXP | CHARGE MISCELLANEOUS | CHARGES AND EXPENSES | | 1.0000 | 1 | DOLS |

*********INDEPENDENT CONTRACTOR CLAUSE*********
IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THE
PERSONNEL FURNISHED BY SELLER TO PERFORM THE SERVICES
DESCRIBED IN THIS PURCHASE ORDER SHALL BE AND REMAIN
SELLER'S EMPLOYEES OR APPROVED SUB-CONTRACTORS, AND
UNDER NO CIRCUMSTANCES ARE SUCH EMPLOYEES TO BE
CONSIDERED BUYER'S EMPLOYEES OR AGENTS.  SELLER
ACKNOWLEDGES AND AGREES THAT THERE SHALL BE AN
INDEPENDENT CONTRACTOR RELATIONSHIP BETWEEN THE
SELLER AND THE BUYER AT ALL TIMES

SELLER AGREES TO REQUIRE SELLER'S EMPLOYEES ASSIGNED
TO PERFORM WORK FOR BUYER TO SIGN THE ATTACHED
INTELLECTUAL PROPERTY RIGHTS AGREEMENT.  SELLER
FURTHER AGREES TO WITNESS THE SIGNING OF SUCH AGREE-
MENTS FOR BUYER, TO MAINTAIN SUCH SIGNED AGREEMENTS

B000959    USER: VICKI L MC GRATH

CONTINUE PAGE    3

Vicki L. McGrath

12-18-02

BUYER NAME: VL MCGRATH
BUYER CODE: EC
VENDOR : LABOR SOURCE 2000 INC

DELPHI S&I - DIVISIONAL OFFICE
BLANKET ORDER ATTACHMENT FORM
ORDER NUMBER FDB01793 ISSUE DATE 10/15/02

PAGE    3

| ITEM SEQ | VENDOR ITEM PERCENT IDENTIFICATION | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE | PRICE MULT | BUY U/M |
|---|---|---|---|---|---|---|---|

ON FILE FOR A PERIOD OF FIVE (5) YEARS AFTER THE
COMPLETION OF WORK UNDER THIS PURCHASE CONTRACT, AND,
AT BUYER'S REQUEST AT ANY TIME BEFORE THE END OF THAT
FIVE-YEAR PERIOD TO DELIVER ANY OR ALL SUCH SIGNED
AGREEMENTS TO BUYER.

CONFIDENTIALITY CLAUSE
ALL INFORMATION AND DATA OF WHATSOEVER KIND OR NATURE
FURNISHED OR MADE AVAILABLE TO SELLER BY
DELPHI CORPORATION IN CONNECTION WITH YOUR
SERVICES HEREUNDER & ALL INFORMATION AND DATA OF
WHATSOEVER KIND OR NATURE FURNISHED BY YOU TO
DELPHI CORPORATION SHALL BE TREATED AS
CONFIDENTIAL BY YOU AND SHALL NOT BE DISCLOSED BY
SELLER OR ANYONE, EITHER IN WHOLE OR PART, EXCEPT
UPON WRITTEN AUTHORIZATION FROM DELPHI CORPORATION
SYSTEMS.
ALL EMPLOYEES UNDER YOUR JURISDICTION, WITH ACCESS
TO THIS PROJECT SHOULD BE APPRISED OF THE IMPORTANT
RESPONSIBILITY WHICH THEY HAVE TO SAFEGUARD SUCH
INFORMATION. STRICT SECURITY IN THE SAFEGUARDING
OF THIS PROJECT AND CONTENT IS ESSENTIAL TO THE
SUCCESSFUL OPERATION OF OUR BUSINESS. EACH EMPLOYEE
WORKING ON THIS DESIGN/PROJECT HAS AN INDIVIDUAL
RESPONSIBILITY TO SAFEGUARD THIS CONFIDENTIAL
INFORMATION. IN THIS REGARD CONFIDENTIAL INFORMATION
SHOULD ONLY BE ACCESSIBLE ON A NEED TO KNOW BASIS.
SELLER HEREBY ASSIGNS DELPHI CORPORATION ALL
RIGHTS TITLE AND INTEREST IN AND TO ANY CREATIVE
MATERIALS, FILMS, DISKS, PHOTOGRAPHY AND/OR
SERVICES PROVIDED BY THE SELLER TO DELPHI CORPORATION,
SHALL YOU RECEIVE THIS CONTRACT ALL DRAWINGS,
DESIGNS, SPECIFICATIONS AND OTHER DATA PREPARED.
SELLER SHALL BE THE SOLE PROPERTY OF DELPHI
CORPORATION, AND DELPHI CORPORATION
SHALL BE FREE TO USE AND DISCLOSE SUCH DATA WITHOUT
ANY RESTRICTIONS WHATSOEVER.
SHOULD YOU RECEIVE THIS CONTRACT, SELLER GRANTS
PURCHASING ACCESS TO AND THE RIGHT TO
EXAMINE/AUDIT ANY PERTINENT BOOKS, RECORDS, PAPERS
AND DOCUMENTS OF THE SELLER INVOLVING CHARGES OR

CONTINUE PAGE    4

B000959   USER: VICKI L MC GRATH

Vicki L. McGrath
12-18-02

BUYER NAME: VL MCGRATH
BUYER CODE: EC
VENDOR: LABOR SOURCE 2000 INC

DELPHI S&I - DIVISIONAL OFFICE
BLANKET ORDER ATTACHMENT FORM
ORDER NUMBER F0B01793 ISSUE DATE 10/15/02          PAGE   4

| ITEM SEQ | VENDOR PERCENT | ITEM IDENTIFICATION | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE | PRICE MULT | BUY U/M |
|---|---|---|---|---|---|---|---|---|

B000959

TRANSACTION OF ANY NATURE RELATED TO THIS CONTRACT.
PLEASE SIGN AND RETURN THE ATTACHED FORM TO
PURCHASING.

*** ALL INFORMATION FURNISHED OR MADE AVAILABLE
BY THE BUYER TO SELLER OR TO ITS EMPLOYES OR SUB-
CONTRACTORS IN CONNECTION WITH THE WORK AND SER-
VICES TO BE PERFORMED FOR BUYER UNDER THIS PURCHASE
ORDER, AND ALL INFORMATION GENERATED OR DEVELOPED
BY SELLER OR ITS EMPLOYES OR SUBCONTRACTORS
BUYER SHALL BE TREATED AS CONFIDENTIAL BY SELLER
AND ITS EMPLOYES AND SUBCONTRACTORS AND SHALL NOT
BE DISCLOSED BY EMPLOYES AND SUB-CONTRACTORS TO
ANYONE, EITHER IN WHOLE OR IN PART OR USED BY SELLER
FOR ANY PURPOSES OTHER THAN IN CONNECTION WITH WORK
OR SERVICES FOR BUYER, EXCEPT UPON WRITTEN
AUTHORIZATION BY BUYER.

BY ACCEPTANCE OF THIS PURCHASE ORDER, SELLER HEREBY
INDEMNIFIES AND AGREES TO HOLD DELPHI INTERIOR
HARMLESS AGAINST ANY AND ALL CLAIMS OR DEMANDS, OF
ANY NATURE WHICH ARISE OUT OF OR RESULT IN ANY WAY
FROM THE PERFORMANCE OF THE SERVICES SPECIFIED IN
THIS PURCHASE ORDER. THIS INDEMNIFICATION INCLUDES
ALL ACTION OR ON-ACTION OF THE VENDOR AND IS NOT
LIMITED.

***** RIGHT TO AUDIT *****

BY ACCEPTANCE OF THIS PURCHASE ORDER THE SELLER
GRANTS TO DELPHI AUTOMOTIVE ACCESS TO ALL PERTINENT
LEDGERS, PAYROLL DATA, BOOKS, RECORDS, CORRESPONDENCE
WRITTEN INSTRUCTIONS, DRAWINGS, RECEIPTS,
VOUCHERS AND OTHER DOCUMENTS FOR THE PURPOSE OF
AUDITING THE CHARGES AND/OR ALL ALLOCATIONS
RELATED TO THIS PURCHASE ORDER. SELLER FURTHER
AGREES, FOR THIS PURPOSE, TO STORE ALL THE
ABOVE ENUMERATED DOCUMENTS FOR A PERIOD OF ONE
YEAR BEYOND FINAL PAYMENT HEREUNDER.

INSURANCE TERMS (IT): SPECIAL TERMS UNITED STATES..
FOR PURPOSES OF THIS AGREEMENT,THE INSURANCE COVERAGE

CONTINUE PAGE   5

USER: VICKI L MC GRATH

Vicki L. McGrath
12-18-02

DELPHI S&I - DIVISIONAL OFFICE

BUYER NAME: VL MCGRATH                                                    PAGE    5
BUYER CODE: EC                    BLANKET ORDER ATTACHMENT FORM
VENDOR : LABOR SOURCE 2000 INC    ORDER NUMBER FD801793 ISSUE DATE 10/15/02

| ITEM VENDOR ITEM | NOUN NAME    DESCRIPTION         RFQ NUMBER | BASE UNIT PRICE PRICE BUY |
| SEQ PERCENT IDENTIFICATION |                                           | MULT U/M |

UNDER PARAGRAPH 17 ("INSURANCE") OF THE GENERAL TERMS
AND CONDITIONS ARE AS FOLLOWS: (A) WORKERS COMPEN-
SATION: APPLICABLE IN THE STATE(S) IN WHICH
THIS CONTRACT IS TO BE PERFORMED (OR EVIDENCE OF AU-
THORITY TO SELF INSURE); (B) EMPLOYER'S LIABILITY:
$500,000 EACH ACCIDENT FOR BODILY INJURY BY ACCIDENT
AND $500,000 EACH EMPLOYEE FOR BODILY INJURY BY DIS-
EASE; (C) COMMERCIAL GENERAL LIABILITY ON AN OCCUR-
RENCE FORM COVERING LIABILITY ARISING FROM PREMISES,
OPERATIONS, INDEPENDENT CONTRACTORS, PRODUCTS/COM-
PLETED OPERATIONS, PERSONAL INJURY AND ADVERTISING
INJURY, AND LIABILITY ASSUMED UNDER AN INSURED CON-
TRACT- $5,000,000 EACH OCCURRENCE; AND (D) AUTOMOBILE
LIABILITY (INCLUDING OWNED, NON-OWNED AND HIRED
VEHICLES): $5,000,000 EACH ACCIDENT....(IT)

CONTRACTOR'S PERSONNEL ARE REQUIRED TO PROVIDE AND
USE SAFETY GLASSES AND EAR PROTECTION IN ALL MANU-
FACTURING, LABORATORY AND SHOP AREAS.

THE CONTRACTOR AND SUBCONTRACTOR SHALL COMPLY WITH
THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970 DURING
THE CONDUCT OF PERFORMANCE ON AND IN CONNECTION WITH
THIS PROJECT.

WORK DESCRIBED HEREON SHALL BE PERFORMED IN ACCORD-
ANCE WITH DELPHI CORPORATION CONSTRUCTION GENERAL
CONDITIONS, DELPHI SAFETY AND INTERIOR CONTRACTOR
SPECIFICATIONS AND THE SAFETY RULES AND PRECAUTIONS
ESTABLISHED BY DELPHI SAFETY AND INTERIOR SAFETY
DEPARTMENT. INSURANCE COVERAGES AND CERTIFICATION
REQUIREMENTS ARE SET FORTH ON THE REVERSE HEREON.

TERMS AND CONDITIONS JANUARY 2001, APPLY
OF WHICH SUPPLIER HAS RECEIVED A COPY.

B000959   USER: VICKI L MC GRATH                    LAST PAGE

*Vicki Mc Grath* (signature)

# LaborSource2000 Lansing [Ra]tes 12/2/2002 - 6/1/2003

## Attachment A-Billing Rates

**Hourly Employees:** Any hours over 8 in a day, plus Saturday scheduled work will be paid at a rate of 1.5 - but the company (Delphi) will be billed at a rate of 1.05.

| Classification | # | ST Pay Rate | ST Billing Bill Rate | OT Pay (1.5X) Rate | OT Bill (1.0X) | Double Time OT Pay (2.0X) Rate | Bill Rate | Names (for info only) |
|---|---|---|---|---|---|---|---|---|
| Pre-certified trainees < 32 hrs (AM) | | $8.00 | $0.00 | $12.00 | $0.00 | $16.00 | $0.00 | |
| Pre-certified trainees < 32 hrs (PM) | | $8.50 | $0.00 | $12.75 | $0.00 | $17.00 | $0.00 | |
| Temporary employees (AM) | | $9.50 | $14.00 | $14.25 | $14.70 | $19.00 | $19.60 | |
| Temporary employees (PM) | 125 | $9.85 | $14.50 | $14.78 | $15.23 | $19.70 | $20.30 | J. Myers - Operations Mgr. |
| Employee < 90 days | | $10.50 | $17.50 | $15.75 | $18.38 | $21.00 | $24.50 | TBD - Admin Assist, J. Martinez - Mfg. Supv.; C. Banks - Mfg. Supv. |
| Employee <180 days | | $11.00 | $18.00 | $16.50 | $18.90 | $22.00 | $25.20 | M. Sebastian - DBS Coord.; |
| Employee < 270 days | | $11.50 | $18.25 | $17.25 | $19.16 | $23.00 | $25.55 | A. Garza - Receiving Supv. |
| Employee < 360 days | | $12.00 | $18.75 | $18.00 | $19.69 | $24.00 | $26.25 | L. Battleshaw - PC&L Planner; |
| Line Attendant>360 days | | $12.50 | $18.75 | $18.75 | $19.69 | $25.00 | $26.25 | T. Bertram - PC&L Planner, K. Jones - Mfg. Supv.; C. Trapp - IT Admin; J. White - Mfg. Supv. |
| Matl Handler> 360 days | 20 | $13.00 | $19.25 | $19.50 | $20.21 | $26.00 | $26.95 | F. Palmer-Rey - Ops Mgr **PASS THROUGH** |
| Team Tech/MTMS | 16 | $13.00 | $19.75 | $20.25 | $20.74 | $27.00 | $27.65 | E. Bergeron - IT Admin; M. Mattingly - IT Admin |
| Lead Team Tech | 4 | $14.56 | $20.75 | $21.84 | $21.79 | $29.12 | $29.05 | J. Eschilsen, J. Smith, E. Rodriguez, N. Garza |
| Quality Tech | 4 | $14.56 | $20.75 | $21.84 | $21.79 | $29.12 | $29.05 | F. Hummel, J. Collier, S. Keller, Y. Edgar |
| Engineering Tech | 4 | $14.56 | $20.75 | $21.84 | $21.79 | $29.12 | $29.05 | T. Crosslan, C. Powell, K. Oliver, K. Thomas |
| Admin Clerk | 2 | $12.50 | $18.75 | $18.75 | $19.69 | $25.00 | $26.25 | C. Nasal, K. Herrick |
| Dock Coord | 2 | $15.60 | $23.10 | $23.40 | $23.50 | $31.20 | $31.25 | L. Feldpausch, R. Crosby |

**Salary Employees:** All salaried overtime must be pre-approved by Delphi Management.

| Salary Ranges | # | Hourly ST Bill Rate | Annual ST Bill Rate | OT Pay (1.0X) | OT Bill | Names/Position (for info only) |
|---|---|---|---|---|---|---|
| 00,000-00,000 | 1 | $0.00 | $0.00 | | $0.00 | |
| 30,000-33,000 | 0 | $19.95 | $41,500.00 | | $20.24 | J. Myers - Operations Mgr. |
| 33,100-36,000 | 3 | $21.15 | $44,000.00 | | $21.95 | TBD - Admin Assist, J. Martinez - Mfg. Supv.; C. Banks - Mfg. Supv. |
| 36,100-39,000 | 1 | $22.60 | $47,000.00 | | $23.66 | M. Sebastian - DBS Coord.; |
| 39,100-42,000 | 1 | $24.52 | $51,000.00 | | $25.37 | A. Garza - Receiving Supv. |
| 42,100-45,000 | 1 | $25.96 | $54,000.00 | N/A | $27.09 | L. Battleshaw - PC&L Planner; |
| 45,100-48,000 | 4 | $27.40 | $57,000.00 | | $28.80 | T. Bertram - PC&L Planner, K. Jones - Mfg. Supv.; C. Trapp - IT Admin; J. White - Mfg. Supv. |
| 41,600 | 1 | | | | | |
| 48,100-51,000 | 0 | $29.33 | $61,000.00 | | $30.51 | F. Palmer-Rey - Ops Mgr **PASS THROUGH** |
| 51,100-54,000 | 2 | $30.77 | $64,000.00 | | $32.22 | E. Bergeron - IT Admin; M. Mattingly - IT Admin |
| 54,100-57,000 | 0 | $32.45 | $67,500.00 | | $33.93 | |
| 57,100-60,000 | 0 | $33.94 | $70,606.00 | | $35.64 | |
| 60,100-63,000 | 0 | $35.34 | $73,500.00 | | $35.64 | |
| 63,100-66,000 | 0 | $37.16 | $77,300.00 | | $39.06 | |

**Note:** The number in class/position represents current number of employees in each category, subject to change based on Delphi requirements.

December 6, 2002

**<u>Exhibit 3</u>**

## SETTLEMENT AND ACCOMMODATION AGREEMENT

This Settlement and Accommodation Agreement (this "Agreement") is made and entered into on June ___, 2004, between Labor Source 2000, Inc., a Michigan corporation (a.k.a. LS2000) ("Supplier"), and Delphi Automotive Systems LLC ("Delphi") based upon the following:

A.      Pursuant to Purchase Order FDBO1793 issued by Delphi to Supplier and accepted by Supplier (as amended as set forth on Exhibit A attached to this Agreement, the "Purchase Order"), Supplier is obligated to provide Delphi with labor services at Delphi's cockpit plant in [Lansing], Michigan as set forth in the Purchase Order (the "Services").

B.      Supplier has advised Delphi that it has faced financial losses in its provision of the Services and fulfillment of its other obligations under the Purchase Order.

C.      Supplier has requested that Delphi amend the Purchase Order to provide for increased compensation for certain of the Services in order to permit Supplier to continue to provide the Services to Delphi in accordance with the Purchase Order.

D.      Delphi is willing to amend the Purchase Order on the terms and conditions set forth in this Agreement, provided that Supplier confirms its obligations under the Purchase Order, provides the assurances and grants the waivers and releases set forth in this Agreement.

E.      In order to induce Delphi to amend the Purchase Order as set forth in this Agreement, Supplier is willing to confirm its obligations under the Purchase Order, provide the assurances and grant the waivers and releases set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Supplier and Delphi acknowledged, Supplier and Delphi agree as follows:

1

1.     **Amendment to the Purchase Order**.  (a)  Delphi will issue an amendment to the Purchase Order under which Delphi agrees as follows:

(i)     Effective as of May 31, 2004, the hourly rate under the Purchase Order for assemblers, material handlers and hourly techs (collectively, the "Adjusted Classifications") will be increased to $23.00 per hour;

(ii)     In addition to the increase in the hourly rates set forth in Paragraph 1(a)(i) above, effective as of May 31, 2004, and continuing until such time (if any) as Supplier has provided 137,000 billable hours of hourly rate services of personnel within the Adjusted Classifications (for the period commencing on May 31, 2004), Delphi will pay an hourly surcharge of $4.10 per billable hour (the "Surcharge") for personnel within the Adjusted Classifications; and

(iii)     At such time (if any) as Supplier has provided 137,000 billable hours of hourly rate services of personnel within the Adjusted Classifications (for the period commencing on May 31, 2004), the Surcharge will be eliminated.

(b)     Neither the Purchase Order nor this Agreement create any obligation of Delphi to purchase, obtain or pay for any minimum number of hours of any personnel, and Supplier and Delphi agree that Delphi is under no such obligation.  In addition, nothing contained in this Agreement limits in any manner Delphi's right to reduce Delphi's requirements of Supplier, or to terminate the Purchase Order in accordance with its terms, including, without limitation, Delphi's termination right in accordance with Section 13 of the Delphi Terms and Conditions (January 2001), which have been and remain incorporated in the Purchase Order by reference.

2

(c)     Supplier represents and warrants that simultaneously with Supplier's execution and delivery of this Agreement, Supplier will satisfy and discharge all of Supplier's obligations to Madison Resource Funding, which currently provides financing to Supplier, and enter into a new financing agreement with an alternative lender selected by Supplier, which will provide Supplier with adequate financing to support Supplier's operations for the remainder of the term of the Purchase Order.

(d)     Supplier will, within ten (10) business dates, following the end of each month during the term of the Purchase Order, provide Seller with any financial information regarding Supplier which Delphi reasonably requests.

2.      **Confirmation of Obligations.**     Supplier hereby ratifies and confirms its obligations to provide the Services in accordance with the terms of the Purchase Order (as amended in accordance with this Agreement) and represents and warrants to Delphi that Supplier has no offsets or defenses to the obligation of Supplier to perform under the Purchase Order (as amended in accordance with this Agreement).

3.      **Waiver by Supplier and Release of Delphi.**  (a)  Supplier, on behalf of itself and its predecessors-in-interest, affiliates, parent corporation, divisions, partners, shareholders, agents, representatives, attorneys, employees, executors, administrators, heirs, beneficiaries, successors, assigns and any and all other persons or entities acting or purporting to act on its behalf, or which hold any interest in Supplier, hereby fully and forever releases, acquits, and discharges Delphi and its predecessors-in-interest, affiliates, parent corporation, divisions, partners, shareholders, agents, representatives, attorneys, employees, executors, administrators, heirs, beneficiaries, successors, assigns and any and all other persons or entities acting or purporting to act on their behalf, from,

3

and terminates and waives, any and all claims, damages, liabilities, actions, demands, obligations, and lawsuits relating in anyway to the Purchase Order based upon acts of occurrences at any time prior to the date of this Agreement.

(b)     Supplier represents and warrants to Delphi that prior to, and as of the date of execution of this Agreement, Supplier has never assigned or transferred to any person or entity any claims against Delphi or any of the obligations of Delphi to Supplier except for certain assignments of receivables to Madison Resource Funding and General Electric Capital Corporation. Supplier further represents and warrants to Delphi that it is lawfully empowered to fully release, discharge and terminate, without the joinder of any other person, any and all of the claims against Delphi that are released pursuant to this Agreement. Supplier will indemnify, defend and hold Delphi harmless from and against any claims, damages, liabilities, actions, demands, obligations, lawsuits, fines, penalties, costs, losses or expenses of any nature whatsoever (including reasonable attorneys' fees) to which Delphi may be subjected as a result of or in connection with any breach of Supplier's representations and warranties in this Paragraph 3(b).

4.     **No Admission**.     Supplier and Delphi agree that nothing contained in this Agreement is intended to constitute an admission of liability or responsibility for any losses, costs or expenses which have arisen in connection with the delivery of the Services under the Purchase Order prior to the date of this Agreement.

5.     **Authorization**.     The parties executing this Agreement warrant that they have the full power and authority to execute this Agreement and that this Agreement has been duly authorized by the parties.

4

6.     **Cooperation**.  Each party agrees to cooperate fully with the other parties and to take all additional actions that may be necessary to give full force and effect to this Agreement.

7.     **Section Headings**.   The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation of this Agreement.  All references to Sections, Schedules, and Exhibits are to Sections, Schedules, and Exhibits in or to this Agreement unless otherwise specified.

8.     **No Waiver; Cumulative Remedies; Unenforceability**.  Supplier and Delphi shall not by any act, delay, indulgence, omission, or otherwise be deemed to have waived any right or remedy under this Agreement or of any breach of the terms and conditions of this Agreement.  A waiver by Supplier or Delphi of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy which Supplier or Delphi would otherwise have had on a subsequent occasion.  No failure to exercise, nor any delay in exercising, on the part of Supplier or Delphi any right, power, or privilege under this Agreement, shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or future exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies under this Agreement are cumulative, may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by any other agreements or applicable law.  Should any provision of this Agreement be held invalid or unenforceable, the remainder of this Agreement will not be affected thereby.

9.     **Waivers and Amendments; Successors and Assigns**.  No term or provision of this Agreement may be waived, altered, modified, or amended except by a written instrument,

5

duly executed by Supplier and Delphi. This Agreement and all of the parties' obligations are binding upon their respective successors and assigns, and together with the rights and remedies of the parties under this Agreement, inure to the benefit of the parties and their respective successors and assigns. Supplier may not assign or transfer any right or obligation under this Agreement without the prior written consent of Delphi.

10.   **Notices**. All notices, requests, and other communications that are required or may be given under this Agreement must be in writing, and shall be deemed to have been given on the date of delivery, if delivered by hand, telecopy or courier, or three (3) days after mailing, if mailed by certified or registered mail, postage prepaid, return receipt requested, addressed as set forth below (which addresses may be changed, from time to time, by notice given in the manner provided in this Section):

If given to Supplier, sent to:   Labor Source 2000, Inc.
23800 West Ten Mile Road
Southfield, MI 48034
Attn: Mr. Robert A. Sharpley

with a copy to:   Law Offices of Harvey Altus
30500 Northwestern Highway, Suite 500
Farmington Hills, MI 48334
Attn: Harvey Altus, Esquire
Facsimile: 248-851-9421

If given to Delphi, sent to:   Martha Everett
Supplier Risk Manager
Delphi Corporation
5725 Delphi Drive
Troy, MI 48098
Facsimile: 248-813-2066

with a copy to:   Sean P. Corcoran
Assistant General Counsel
Commercial & Transactional
Delphi Corporation

6

5725 Delphi Drive
Troy, MI 48098
Facsimile: 248-813-2491

11.    **No Intended Third Party Beneficiary**.    The parties hereto acknowledge and agree that the rights and interests of the parties under this Agreement are intended to benefit solely the parties to this Agreement.

12.    **Counterparts**.    This Agreement may be executed in any number of counterparts and by each party hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.    For purposes of this Agreement, facsimile signatures shall also constitute originals.

13.    **Entire Agreement; Conflicts; Ambiguous Language**.    This Agreement and the Purchase Order constitute the entire understanding of the parties in connection with the subject matter hereof and this Agreement any and all previous negotiations, representations, covenants, promises, understandings and agreements of the parties regarding the subject matter hereof are merged and integrated into the Purchase Order and this Agreement.    The parties expressly acknowledge that in entering into this Agreement they are not relying, nor have they relied, upon any covenants, promises, conditions or understandings, either oral or written, other than those contained in this Agreement and the Purchase Order.    This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Supplier.    Should an inconsistency or conflict exist between the terms of the Purchase Order and this Agreement, the

7

terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Supplier and its counsel. Therefore, any ambiguous language in this Agreement will not be construed against any particular party as the drafter of such language.

14.     **Governing Law**.  This Agreement is made in the State of Michigan and shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

15.     **CONSULTATION WITH COUNSEL.    THE PARTIES HERETO ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH COUNSEL BEFORE EXECUTING THIS AGREEMENT AND ARE EXECUTING SUCH AGREEMENT WITHOUT DURESS OR COERCION AND WITHOUT RELIANCE ON ANY REPRESENTATIONS, WARRANTIES OR COMMITMENTS OTHER THAN THOSE REPRESENTATIONS, WARRANTIES AND COMMITMENTS SET FORTH IN THIS AGREEMENT AND THE PURCHASE ORDER (AS AMENDED IN ACCORDANCE WITH THIS AGREEMENT).**

**[signatures are set forth on the next page]**

8

**LABOR SOURCE 2000, INC.,**
a Michigan corporation

By: _____

Its: *Vice President*    7/12/04

**DELPHI AUTOMOTIVE SYSTEMS LLC,**
a Delaware limited liability company

By: _____    7/27/04

Its: DrecTor of PurcHASinG

_____
**James E. Riedy**
**Director of Finance**

9

# EXHIBIT A

## PURCHASE ORDER

Purchase Order FDB01793 dated 10/15/02
Alteration No. 001 dated 6/26/03
Alteration No. 002 dated 7/22/03
Alteration No. 003 dated 8/27/03

**Exhibit 4**

# LS2000

Integrated Outsourcing Solutions
21472 Bridge Street
Southfield, MI 48034
248/ 233-0920

March 3, 2005

Mr. James N. Robbins
Delphi /Manager
Machinery Equipment & Indirect

Dear Mr. Robbins:

It was a pleasure attending the 10th annual Delphi Matchmaker this week. Unfortunately as you know, the event was somewhat shadowed by the bad news we received of General Motors decision to close the Lansing Car Assembly plant 14 months before schedule. Of course this has dramatically changed matters in light of our attempts to work out a viable solution to the mounting and continued financial losses attached to the Lansing cockpit program. And as you well know we have been attempting to work things out for almost a year now. However, as soon as it seems we may have a workable solution something else comes up and this latest news is a perfect example.

Since taking on this program LS2000 has experienced 20 weeks of non-billed downtime totaling a loss of $2,160,000.00. This has been lessened by Delphi's surcharge increase of $4.10 per hr per UAW worker and it has helped but LS2000 still has been negatively impacted in a number of ways exclusive to this program. With the LCA plant closing early we will now see an additional revenue loss of $3,658,725.00. That's a total of 5.8 million in loss revenue in only three years. James this is very serious! Obviously something needs to be done and done quickly. Since the workforce is aware of the matter some serious discussion regarding this closing such as: attendance, workers quitting, product quality, fixed costs, employee displacement as well as other issues needs to be discussed. And since we have less than 60 working days remaining, solutions and understandings based on these changed conditions need to be reached within the next two weeks.

Of course it would help if LS2000 was sourced additional Delphi business. But this is Delphi's call. LS2000 will need to recover losses incurred based upon fixed costs paid based on the understanding that our contract with Delphi was to run until Sept. 2006 with a workforce head count of approximately 75-100 employees with estimated yearly hours totaling 137,000 each year. And while perhaps there was nothing that could have been done to prevent these events from occurring from a Delphi's perspective in connection with GM's decisions, certainly something can be done in behalf of LS2000. The negative impact of our servicing this program has seriously affected us; additional business equalizing these losses sourced by Delphi to LS2000 would remedy the situation and rightly so, based on our performance under these extreme conditions.

We eagerly await your timely response.

Sincerely,

Robert A. Sharpley

VP / COO LS2000

**Exhibit 5**



Automotive Systems

To:            Bob Sharpley

From:          Vicki L. McGrath

Date:          April 6, 2005

Subject:       Ramp Down Agreement


Bob,

Effective immediately, per our discussion between you, Scott Rowell and James Robbins Delphi T&I Lansing cockpit plant agrees to pay LS2000 a lump sum pay out of $45,000 to cover the hourly and salaried vacation payable at the end of the program, providing that there is no interruption to pay or benefits for the employees, past practices for vacation authorization are continued, and the staffing template is maintained throughout the remainder of the contract.

Delphi also agrees to cover any approved hourly or salary retention bonus costs estimated at approximately $40,000.  Per our discussion, it is understood that the retention bonuses may go up or down for particular individuals based on their performance per discussion between Scott Rowell and Jocelyn Kooyers.  Delphi also agrees to cover Jocelyn Kooyers salary effective March 1, 2005 through the end of the program or as agreed between Delphi and LS2000.

As discussed, I will also schedule a weekly touch base meeting starting next Thursday, April 14, 2005.  I will check everyone's calendar and send out a meeting notice under separate cover.


Sincerely,


Vicki L McGrath
Sr. Buyer-Indirect
Delphi Global Supply Management
Thermal & Interior—Troy, MI