SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
                                          :
In re                                     :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05–44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF JAY HUDSON IN SUPPORT OF DEBTORS' SUPPLEMENTAL
REPLY WITH RESPECT TO PROOF OF CLAIM 2707 (LABORSOURCE 2000, INC.)

("JAY HUDSON – LABORSOURCE 2000, INC.")

Jay Hudson declares as follows:

1.      Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases.  I submit this declaration in support of the Debtors' Supplemental Reply With Respect To Proof Of Claim 2707 (LaborSource 2000, Inc.) (the "Supplemental Reply").  Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply.

2.      Since May 2006, I have been a manager of cash management at Delphi Automotive Systems LLC (which, with certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases, are referred to collectively and variously herein as "Delphi" or the "Debtors").  From October 2004 until May 2006, I was the manager of troubled suppliers at Delphi.  As manager of troubled suppliers, I was involved with, and have personal knowledge of, Delphi's relationship with LaborSource 2000, Inc. ("LaborSource") with respect to the certain project (the "Project") to produce automotive cockpits for General Motors Corporation ("GM").  My role in the troubled suppliers department generally entails determining whether it makes sense from a financial perspective for Delphi to assist a financially struggling supplier, even though Delphi is under no legal obligation to provide such assistance.

3.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, and my experience with and knowledge of Delphi's relationship with LaborSource.  If I were called upon to testify, I could and would testify to the facts set forth herein.

4.      In October 2004, I began participating in direct discussions with, among others, LaborSource Vice President and Chief Operating Officer Robert Sharpley regarding LaborSource's financial condition, projections, and actual costs calculations.  The discussions oc-

curred regularly from October 2005 through December 2005.  During these discussions, Mr.

Sharpley often relayed to me and others at Delphi his projections regarding LaborSource's finan-

cial condition, including his estimates regarding LaborSource's costs and revenues with respect

to the Project.  Mr. Sharpley had requested that Delphi provide financial support to LaborSource.

Although it is my understanding that Delphi was under no obligation to provide such support, I

evaluated whether it made sense for Delphi to assist LaborSource while it was struggling with

costs associated with the Project.  I participated in these discussions until early 2005.

       5.      During my discussions with Mr. Sharpley between late 2004 and early

2005, I do not recall ever hearing Mr. Sharpley or anyone at Delphi say that Delphi was obli-

gated to pay the costs associated with LaborSource's down time.  Although I helped evaluate Mr.

Sharpley's requests for financial accommodations, I did not make any promises or representa-

tions to Mr. Sharpley regarding financial accommodations that Delphi would provide to Labor-

Source.  Nor to the best of my knowledge did any other Delphi representative make such a prom-

ise or representation.

       6.      In addition, at no time during my involvement with LaborSource or the

regular discussions with Mr. Sharpley did I, or, to the best of my knowledge, any other represen-

tative of Delphi promise or represent that LaborSource would receive additional contracts from

Delphi.  Also, at no time during my involvement with LaborSource or interaction with Mr. Shar-

pley did I ever hear Mr. Sharpley or anyone else mentioned a "job bank" idea belonging to La-

borSource that Delphi used improperly.  Finally, at no time during my involvement with Labor-

Source or interaction with Mr. Sharpley did I learn of anything regarding money received from

GM that Delphi was obligated to pay LaborSource as an accommodation.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on January 31, 2007, in Troy, Michigan.


_____/s/ Jay Hudson_____

Jay Hudson