Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
    In re    :    Chapter 11
:
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
:
    Debtors.    :    (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
IVINS, PHILLIPS & BARKER AS SPECIAL PENSION BENEFITS TAX COUNSEL TO
DEBTORS NUNC PRO TUNC TO NOVEMBER 1, 2006

("IPB RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors")[1], debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this application (this "Application") for an order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of Ivins, Phillips & Barker ("IPB") as special pension benefits tax counsel to the Debtors, nunc pro

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

tunc to November 1, 2006. In support of this Application, the Debtors submit the Declaration And Disclosure Of William L. Sollee, Jr. In Support Of Application For Entry Of Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Ivins, Phillips & Barker As Special Pension Benefits Tax Counsel To Debtors Nunc Pro Tunc To November 1, 2006, executed on January 31, 2007 (the "Sollee Declaration"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 327(e) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.  Current Business Operations Of The Debtors

5.  Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2005 had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[2]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.  Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

---

[2]  The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.

9.      The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

11.      On March 31, 2006, the Company outlined the key tenets of its transformation plan. The Company believes that this plan will enable it to return to stable, profitable business

---

[3]      Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors must focus on five key areas. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint. Finally, the Debtors must devise a workable solution to their current pension situation.

12. On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements. The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan. (The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.) The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM. The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan

of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors. The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589). Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15.    By this Application, the Debtors request authorization to employ and retain IPB as special pension benefits tax counsel, effective as of November 1, 2006. Accordingly, the Debtors respectfully request the entry of an order under sections 327(e) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014 authorizing the employment and retention of IPB in accordance with the terms set forth in the Affidavit of Legal Ordinary Course Professional dated November 9, 2005 and attached as <u>Exhibit 1</u> to the Sollee Declaration (hereinafter, the "Ordinary Course Affidavit").

Basis For Relief

16.     The Debtors submit that IPB's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel for a "specified special purpose" if such employment is in the best interest of the Debtors.

The Debtors' Employment Of IPB
Is In The Best Interests Of The Estates

17.     Commencing on or about November 9, 2005, the Debtors retained IPB as an ordinary course professional according to the Order Under 11 U.S.C §§ 327, 330, And 331 Authorizing Retention Of Professionals Utilized By Debtors In Ordinary Course Of Business (the "Ordinary Course Professionals Order") (Docket No. 883). It is apparent, however, that IPB will exceed the fee cap established in the Ordinary Course Professionals Order. In light of this, pursuant to the Ordinary Course Professionals Order, if IPB is to continue rendering the services that it had been engaged by the Debtors as an ordinary course professional to perform, IPB must be formally retained by the Debtors. Therefore, the Debtors request that IPB be retained as special pension benefits tax counsel to the Debtors in these chapter 11 cases.

18.     IPB is especially attuned to the unique employee benefits issues that arise in the Debtors' industry. IPB is a law firm founded in 1936 that practices exclusively in the areas of tax, employee benefits, and estate planning, with offices in Washington, D.C. and Los Angeles, California. Most importantly for purposes of this Application, approximately half of IPB's 28 attorneys have extensive experience in legal services relating to employee benefits, and several of those attorneys have had experience in preparing private letter ruling requests for the Internal Revenue Service that involve pension issues. Accordingly, the Debtors continue to believe that IPB is well-qualified to serve as special pension benefits tax counsel in these chapter 11 cases in an efficient and effective manner.

7

19.     The Debtors believe that the continued employment of IPB will enhance, and will not duplicate, the employment of any of the other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by IPB as special pension benefits tax counsel to the Debtors. The Debtors understand that IPB will work with the other professionals retained by the Debtors to avoid any such duplication.

Services To Be Rendered By IPB

20.     The Debtors wish to retain IPB to provide the Debtors with legal advice and services regarding the Debtors' employment, compensation, and employee benefit plans and arrangements; corporate, employee benefits, and employment tax matters; representation before federal agencies, Congress, and the courts; and related issues.

21.     IPB has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as special pension benefits tax counsel to the Debtors.

22.     The Debtors may request that IPB undertake specific matters beyond the scope of the responsibilities set forth above.  Should IPB agree in its discretion to undertake any such matter, the Debtors will seek further order of this Court.

Disinterestedness Of Professionals

23.     Section 327(e) does not require that IPB and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) of the Bankruptcy Code requires that IPB not represent or hold any interest adverse to the estates or the Debtors with respect to the matters on which IPB is to be employed.  As discussed above, the employment of IPB as special pension benefits tax counsel to the Debtors is in the best interests of the Debtors.

24.     The Sollee Declaration filed in support of this Application contains information available to date on IPB's connections with other parties-in-interest, as required by Bankruptcy

Rule 2014(a). According to the Sollee Declaration, IPB, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the U.S. Trustee, or any person employed therein, with respect to the matters on which IPB is to be employed.

25.    IPB has disclosed to the Debtors that IPB has in the past represented, currently represents, and likely in the future will represent, certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases, and in certain matters related to these chapter 11 cases, but unrelated to the matters on which IPB is to be employed. IPB does not believe that the foregoing raises any actual or potential conflict of interest for IPB relating to the representation of the Debtors as their special pension benefits tax counsel in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution. The Debtors understand that, to vitiate any actual or potential conflicts of interest, IPB will not assist the Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with whom IPB has existing client relationships, and that Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") (or other counsel if Skadden has a conflict), instead, will handle any such tasks.

## Professional Compensation

26.    IPB intends to apply to this Court for compensation and reimbursement of expenses in accordance with sections 330(a) and 331 of the Bankruptcy Code, the Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, and orders of this Court.[4] IPB acknowledges that all compensation will be subject to this Court's review and approval, after notice and a hearing.

---

[4]    If the requested relief is granted and the Debtors are authorized to employ and retain IPB as special pension benefits tax counsel, effective as of November 1, 2006, IPB will be required to submit fee applications with this Court for only those periods including and following November 1, 2006.

9

27.     Under the applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtors propose to pay IPB its rates as disclosed in the Ordinary Course Affidavit.  IPB's hourly rates for the lawyers expected to provide the Pension Benefit Services range from $725 to $200, and the rate is $200 for paralegals and most other paraprofessionals. These hourly rates will remain in effect until the earlier of the completion of the PLR requests and related activities or December 31, 2007.  With respect to Pension Benefits Services, if any, provided after January 1, 2008, IPB reserves the right to adjust its hourly rates in accordance with the firm's annual, general adjustment to its attorneys' and paraprofessional rates as may be made thereafter.  IPB's hourly billable rates include its general overhead and internal charges associated with its practice.

28.     No arrangement is proposed between the Debtors and IPB for compensation to be paid in these chapter 11 cases other than as set forth above, in the Ordinary Course Affidavit, and in the Sollee Declaration.

29.     At the Debtors' request, IPB has assisted the Debtors in connection with their employee benefits tax issues since October 8, 2005, but IPB is expected to exceed the fee cap established in the Ordinary Course Professionals Order for work performed on and after November 1, 2006, and hence the Debtors request IPB's retention to be effective <u>nunc pro tunc</u> to November 1, 2006.

<u>Conclusion</u>

30.     For the foregoing reasons, the Debtors submit that the employment of IPB as the Debtors' special pension benefits tax counsel on the terms set forth herein is in the best interests of the estates.

10

Notice

31.     Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5481). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

32.     Because the legal points and authorities upon which this Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the Debtors to employ and retain IPB as their special pension benefits tax counsel to perform the services set forth herein, nunc pro tunc to November 1, 2006, and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
        January 31, 2007

                          DELPHI CORPORATION, on behalf of itself and certain of its subsidiaries and affiliates, as Debtors and Debtors-in-Possession

                          By:    /s/ John D. Sheehan
                                 Name: John D. Sheehan
                                 Title:  Vice President, Chief Restructuring Officer, and Controller