IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Delphi Corporation, et al. | : | Case No. 05-44481 |
| | : | Chapter 11 |
| Debtors. | : | (Jointly Administered) |
| | : | |

CROWN CREDIT COMPANY'S RESPONSE TO DETBORS' FIFTH
OMNIBUS OBJECTION TO CLAIM

Now comes Crown Credit Company ("Crown"), of New Bremen, Ohio 45869, by and through counsel, for its Response to the Debtor's Fifth Omnibus Objection to Certain Claims dated December 8, 2006.

On or about November 28, 2005 Crown filed Proof of Claim No. 910 in the United States Bankruptcy Court, Southern District of New York, Delphi Corporation Claims, Bowling Green Station, P.O. Box 5058, New York, NY 10274-5058 in the amount of $2,152.00. A statement of account was attached showing invoice number, invoice date and amount, which enabled Debtor to verify the Crown claim as well as the lease documentation supporting that claim (attached as Exhibit "A").

A duplicate Claim was submitted to the Court on May 22, 2006 as Claim No. 6578. (attached as Exhibit "B"). Both claims were filed before the Bar Date of July 31, 2006. On October 31, 2006 a Notice of Objection to Claim No. 910 was received from Delphi on the basis that Proof of Claim Numbers 910 and 6578 were duplicates. Crown did not contest the objection to Claim No. 910, acknowledging the duplication, and so Claim No. 6578 was left as the surviving claim, in the amount of $2,152.00. The Debtor's direction to Claim No. 910 specifically identified Claim No. 6578 as a "Surviving Claim" (attached as Exhibit C).

If there is a fault to Claim 6578, it is not apparent from Delphi's objection of December 8, 2006. Although the stated reason for the dispute is a vague "books and records" claim, the objection did not contain individual discussion about Crown's claim and provided no specifics as to why the documentary evidence attached to Claim No. 6578 should be disregarded. Delphi's objection did not challenge the legitimacy or accuracy of the supporting documentation provided by Crown, nor is there any merit to Debtor's Contention that the Claim was not timely filed since

-1-

both the original claim and its surviving duplicate were both filed before the Ban Date. Claim No. 6578 is valid in the amount of $2,152.00

WHEREFORE, Crown contests the Objection of the Debtor and requests this Court allow Claim No. 6578.

Respectfully submitted,

Robert G. Hanseman, Esq.
Ohio Supreme Court No. 0071825
SEBALY SHILLITO + DYER
A Legal Professional Association
1900 Kettering Tower
Dayton, OH 45423
Phone: (937) 222-2500

Fax: (937) 222-6554
rhanseman@ssdlaw.com
*Attorney for Crown Credit Company*

## CERTIFICATE OF SERVICE

A copy of Response was mailed on this 2nd day of January, 2007 to:

| | |
|---|---|
| Delphi Corporation | John Wm. Butler, Jr. |
| Attn: General Counsel | John K. Lyons |
| 5725 Delphi Drive | Randall G. Reese |
| Troy, MI 48098 | Skadden, Arps, Meagher & Flam, LLP |
| | 333 W. Wacker Drive |
| | Suite 2100 |
| | Chicago, IL 60606 |

Robert G. Hanseman, Esq.

560224.2

-2-

| UNITED STATE BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: DELPHI CORPORATION, ET AL. | Case Number: 05-44481 (RDD) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503

Name of Creditor (The person or other entity to whom the debtor owes money or property)

CROWN CREDIT COMPANY
115 NORTH MAIN STREET
NEW BREMEN, OHIO 45869

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

Name and address where notices should be sent:

CROWN EQUIPMENT CORPORATION
ATTN: RODNEY J. HINDERS, ESQ.
40 SOUTH WASHINGTON STREET
NEW BREMEN, OHIO 45869

Telephone number: 419-629-2220 EXT. 2062

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim   ☐ replaces   ☐ amends a previously filed claim, dated:____

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   X Other EQUIPMENT LEASE – UNPAID RENTALS

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and corporation (fill out below)
   Your SS # : ____ ____ ____
   Unpaid compensation for services performed
   from _____ to _____
   (date)          (date)

2. Date debt was incurred: _____

3. If court, judgment, date obtained: _____

4. Total Amount of The Claim at Time Case Filed: $2,152.00 _____.
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: _____

6. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim.
   ☐ Wages, salaries, or commissions (up to $4,300),* earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier—11 U.S.C. § 507(a)(3)
   ☐ Contributions to an employee benefit plan—11 U.S.C. § 507(a)(4)
   ☐ Up to $1,950* of deposits toward purchase, lease or rental of property or services for personal, family, or household use—11 U.S.C. § 507(a)(6)
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child—11 U.S.C. § 507(a)(7)
   ☐ Taxes or penalties of governmental units—11 U.S.C. § 507(a)(8)
   ☐ Other—Specify applicable paragraph of 11 U.S.C. § 507(a)(___)
   *Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to case commenced on or after the date of adjustment.

7. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary. LEASE ATTACHED.

9. **Date-stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED NOV 28 2005 CLAIMS PROCESSING CENTER USBC, SDNY

Date: 11/17/2005

*Peter J. Donahue* (signature)
PETER J. DONAHUE, ESQ., ATTORNEY & AGENT

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.


EXHIBIT A

STATEMENT OF ACCOUNT

Date : 10/13/2005

ASEC MANUFACTURING SUBSIDIARY
OF DELPHI AUTOMOTIVE SYSTEMS
PO BOX 1679

CATOOSA, OK  74015

Cust No. CC8336                                  Account Balance    2,152.00

Aging Analysis in Days on Document Date
  0 - 30      31 - 60      61 - 90      91 - 120     121 - 150    151 - Over
  2,152

------------------------ Account Detail ----------------------------

Invoice No.      Inv. Date         Amt. Open    Agreement      Cust P.O. No.
IRS 421205       10-07-2005         2152.00     0000020520     MICHAEL HEFNER

Please reference the Invoice Number and Invoice Amount when making payment. Send your remittance to the following address:

   Crown Credit Company
   P.O. Box 640352
   Cincinnati, OH 45264-0352

For questions contact:    Kathy Manbeck
                          Phone  419-629-2220   ext. 2308
                          Fax    419-629-9224
                          Email  kathy.manbeck@crown.com

**CROWN Credit Company**
New Bremen, Ohio 45869 USA
Phone: 419/629-2311
Fax: 419/629-9224

**Master Lease Agreement**

THIS AGREEMENT is being made, effective as of the _____ day of _____, 2001, by and between CROWN CREDIT COMPANY, with offices at the address set forth above ("Lessor"), and ASEC Manufacturing Subsidiary of Delphi Automotive Systems, _____, a _____ Corporation with offices at 1301 Main Street, Catoosa, OK 74015 _____, "Lessee").

*Any amendments or modifications of this Agreement must be in writing and signed by Lessee and Lessor to be binding. (Lessee's Initials) [signature]

### SECTION 1. LEASING OF UNITS.

1.01 From time to time during the term of this Agreement, Lessee may, subject to agreement by Lessor, lease units of material handling equipment and related equipment ("Units") from Lessor.

1.02 A Unit shall become subject to this Agreement upon the parties' execution of a Lease Schedule (a "Schedule") therefor. Each Schedule shall be deemed to incorporate all of the terms and conditions of this Agreement and shall contain such additional terms and conditions as may be mutually agreed by Lessor and Lessee.

1.03 Concurrently with delivery of each Unit, Lessee shall execute and deliver to Lessor a notice of delivery form indicating the date of delivery. The term of the lease for each Unit shall begin on the date of delivery thereof as indicated on the applicable notice of delivery form and shall continue for the period stated in the Schedule covering such Unit.

### SECTION 2. TERMS OF PAYMENT; TAXES.

2.01 Lessee shall pay to Lessor the rent ("Rental Charge") for each Unit set forth in the applicable Schedule, such Rental Charge to be payable beginning on the date, and at the intervals during the term of the lease of the Unit, provided in such Schedule.

2.02 Lessor shall equip each Unit with a meter for recording the number of hours of its operation. Lessor may, from time to time, in its discretion, read or cause such meters to be read in order to determine whether any Excess Usage Charges (as defined in the Schedule applicable thereto) are payable by Lessee. Should any meter on any Unit break or fail to function so that an accurate reading of the actual hours of usage is not possible, Lessee shall pay Excess Usage Charges as reasonably computed by Lessor on the basis of Lessee's previous usage of the Unit and such other factors and information relating to the use of the Unit as Lessor may have available to it.

2.03 Lessor shall invoice Lessee on a periodic basis for any Excess Usage Charges and any other amounts payable by Lessee under this Agreement, and Lessee shall remit payment of the same to Lessor within 30 days after the date of Lessor's invoice.

2.04 Rental Charges shall be paid by Lessee by automatic debit from the bank account specified by Lessee or by any other means so as to constitute immediately available funds. If not paid by automatic debit, all charges payable by Lessee under this Agreement or any Schedule shall be sent to Lessee at the address indicated on the invoice relating thereto.

2.05 Interest shall accrue on amounts payable and past due under this Agreement or any Schedule from the date any such amount is due until the date of payment at a rate equal to fifteen percent (15%) per annum or at the then highest allowable interest rate per annum under the law of the state in which the Lessee's principal office is located, whichever is less.

2.06 All charges set forth herein are exclusive of any sales, use, recording, personal property, or other taxes applicable to or arising in connection with the leasing of the Units hereunder. All such taxes, other than taxes based upon the net income of Lessor, shall be the responsibility of Lessee and shall be paid to Lessor when invoiced.

2.07 Lessor shall prepare and file all personal property and other such tax reports or returns relating to the Units. Lessee shall promptly provide Lessor with all necessary information or assistance to enable Lessor to file such reports or returns in a timely manner and shall, when invoiced, pay Lessor a reasonable service charge related thereto.

### SECTION 3. DELIVERY; OWNERSHIP; LIENS.

3.01 Unless otherwise indicated in the applicable Schedule, all Units will be shipped F.O.B. shipping point and Lessee shall bear all transportation and insurance charges to the location specified in the Schedule. Lessee assumes all risk of loss or damage to the Units after they are delivered to the carrier at the shipping point.

3.02 Ownership of any Unit covered hereby shall remain in Lessor, and Lessee shall not, by means of this Agreement or any Schedule, acquire any interest in any Unit other than that of a lessee. Lessee hereby grants its power of attorney to Lessor to execute, on Lessee's behalf, all financing and continuation statements and other documents which Lessor deems necessary or advisable in order to record and secure Lessor's ownership of and interest in the Units. In addition, if so requested by Lessor, Lessee shall itself execute all such statements and documents and deliver the same to Lessor.

3.03 Lessee shall not permit any liens, charges, or encumbrances to be placed upon any Unit. Notice of any such lien, charge or encumbrance shall be forwarded to Lessor immediately upon receipt by Lessee.

3.04 Upon Lessor's request, Lessee shall cause the Units to be plainly, permanently, and conspicuously marked to indicate Lessor's interest in the Units. Lessee shall promptly replace any such markings which may be removed or destroyed or become illegible and shall keep all Units free from any marking or labelling which could be interpreted as a claim of ownership thereof by Lessee or anyone other than Lessor.

### SECTION 4. WARRANTY AND LIMITATION OF LIABILITY.

4.01 Lessee acknowledges that Lessor is not the manufacturer of any Unit or the manufacturer's agent; that each Unit is of a size, design, capacity, description, and manufacture selected by Lessee; and that Lessee is satisfied that each Unit is suitable and fit for its purposes. The only warranty made in connection with any Unit shall be the standard warranty, if any, of the manufacturer of such Unit which is in effect on the date of execution of the Schedule covering such Unit. As the lessor of the Units, LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WHETHER OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE, WITH RESPECT TO THE UNITS OR ANY PARTS OR LABOR FURNISHED DURING ANY SERVICING OF THE UNITS. Lessor does not intend, and shall not be deemed, to adopt as its own any warranty given by any manufacturer. For so long as no default by Lessee under this Agreement or any Schedule shall have occurred and be continuing (i) Lessor assigns to Lessee all rights of Lessor under any warranties given by the manufacturer of each Unit, to the extent that such warranties are assignable by Lessor; and (ii) Lessor shall, at Lessee's expense, cooperate with and assist Lessee in obtaining the benefits of any warranties given by the manufacturer of any Unit. Lessee agrees that its rights under or as a beneficiary of any such warranties shall be subject to the terms of Lessor's supply contracts with the manufacturers.

4.02 Lessee agrees that Lessor SHALL NOT BE LIABLE to Lessee for (i) any defect in any Unit, (ii) any liability, claim, loss, damage, or expense of any kind arising out of or in any way related to Lessee's possession, use or operation of any Unit, (iii) any delay in providing any Unit, or (iv) any SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, howsoever caused.

4.03 Lessee shall defend and hold Lessor harmless from and against any and all of the following (whether actual or alleged), unless directly caused by Lessor's gross negligence, willful misconduct, or failure to perform its obligations under this Agreement: all damages, claims, suits, proceedings, liens, penalties, liabilities, and expenses (including attorneys' fees) arising out of or in any manner related to Lessee's possession, use or operation of any Unit.

### SECTION 5. USE, CARE, AND RETURN OF UNITS.

5.01 Lessee agrees to comply with all applicable federal, state, or local laws, regulations, or orders affecting the possession or use of any Unit by Lessee; to operate each Unit within its rated capacity and in accordance with any instructions provided by Lessor or the manufacturer of the Unit; to restrict operation of each Unit to safe, careful, competent and trained personnel selected and controlled by Lessee; to properly store each Unit; to immediately notify Lessor of any malfunction of the hour meter on any Unit; not to permit any party other than Lessor to service, repair, or otherwise tamper with the hour meter on any Unit; and not to remove any Unit from the location specified in the applicable Schedule without Lessor's prior consent (which shall not be unreasonably withheld).

5.02 Lessee shall not affix or install upon any Unit any accessory, attachment or other device or make any modifications or alterations to any Unit without the prior written consent of Lessor (which shall not be unreasonably withheld). Lessee hereby releases and agrees to indemnify Lessor from and against all responsibility or liability (including liability for any violation of federal, state, or local laws, rules or regulations) arising out of, in connection with, or in any way related to the installation or use of such devices on any Unit or the modification or alteration of any Unit.

5.03 In order to ascertain whether Lessee is fulfilling its obligations hereunder, Lessor shall have the right to inspect any Units from time to time without advance notice to Lessee.

5.04 Within three business days after the date of expiration or termination of the term of any lease of any Unit, Lessee shall return such Unit, at Lessee's cost and risk, to Lessor, in care of the authorized dealer for Lessor's parent corporation, Crown Equipment Corporation ("Crown"), which is closest to the location of the Unit, or to such other location as Lessor and Lessee shall mutually agree.

### SECTION 6. INSURANCE; DAMAGE; LOSS OR DESTRUCTION.

6.01 Until each Unit is returned to Lessor as provided in this Agreement, Lessee relieves Lessor from, and Lessee shall bear, responsibility for all risk of damage to or loss or destruction of the Unit, howsoever caused.

6.02 Lessee shall, at its cost, provide all risk insurance for each Unit in an amount at least equal to the replacement cost thereof and maintain with respect to each Unit (and any temporary Units furnished by Lessor) adequate comprehensive general liability insurance (minimum limits: $2,000,000.00 combined single limit) against any bodily injury and property damage arising out of or in any manner related to Lessee's possession, use or operation of the Unit. All such insurance shall name Lessor and Crown as additional insureds, shall contain an endorsement providing that such insurance shall be primary insurance and shall provide that Lessor shall receive thirty days prior notice of cancellation, nonrenewal, advance of any retrospective date, or aggregate erosion. Lessee shall furnish to Lessor, on or before the date of delivery of the Unit to Lessee, certificates evidencing such insurance. Lessee shall be liable for any amounts which are within the deductibles or which exceed the limits of the above-described insurance.

**PROVISIONS CONTINUED ON REVERSE.**

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

CROWN CREDIT COMPANY (LESSOR)

By _[signature]_____

ASEC Manufacturing
Subsidiary of Delphi Automotive Systems _____ (LESSEE)

By _[signature]_____

*Note: Lessee must also initial in box above.

CF 367 Rev. 4

WHITE & CANARY–Return to Crown Credit Company, PINK–Lessee Copy, GOLDENROD–Branch/Dealer Copy

Printed in U.S.A.

6.03  Lessee shall notify Lessor of any major damage to, and the need for any major repair of, any Unit. Lessee shall not perform or engage any party to perform any such repairs on any Unit unless Lessee or the party so engaged has been first authorized by Lessor to perform the same.

6.04  If any Unit becomes lost, stolen, destroyed, irreparably damaged, confiscated, or requisitioned (a "Loss"), Lessee shall promptly notify Lessor thereof in writing. Provided that Lessee is not then in default under this Agreement or the applicable Schedule, Lessee shall, at its option, either (i) request that Lessor provide to Lessee, at Lessee's cost, a replacement Unit for the Unit affected by the Loss, the performance specifications, features, and useful life of the replacement Unit being at least equal to those of the Unit being replaced; or (ii) pay the applicable Termination Amount (as hereinafter defined) to Lessor, whereupon the lease of the Unit affected by the Loss shall terminate and all right, title, and interest of Lessor therein shall vest in Lessee. If a Loss occurs while Lessee is in default under this Agreement or the applicable Schedule, Lessee's obligation shall be as set forth in (ii) above. Any insurance proceeds payable with respect to the Loss shall be applied to reduce amounts otherwise payable by Lessee with respect to the replacement Unit or the Termination Amount, as the case may be.

6.05  For purposes of this Agreement, the applicable "Termination Amount" shall be an amount equal to the sum of (i) all unpaid Rental Charges and other amounts payable to Lessor under this Agreement or the applicable Schedule with respect to the affected Unit accruing or for any period prior to the date of the Loss; (ii) the present value of all remaining Rental Charges with respect to the affected Unit for the remainder of the term of its lease under the Schedule applicable thereto, discounted at a rate of six percent (6%) per annum; and (iii) the present value of the Residual Value of the affected Unit (as hereinafter defined), discounted at a rate of six percent (6%) per annum. "Residual Value" of an affected Unit means the value of the Unit at the expiration of the term of its lease hereunder, as estimated by Lessor at the time the Schedule covering such Unit was executed.

SECTION 7.  MAINTENANCE.

7.01  Other than as set forth in the applicable Schedule, Lessor shall have no obligation to maintain or service any Unit.

7.02  Lessee shall have sole and complete responsibility for the performance of its maintenance responsibilities with respect to each Unit, as specified in the Schedule covering such Unit. Lessee shall cause such responsibilities to be undertaken on a timely, workmanlike basis by qualified personnel. If any inspection by Lessor reveals that Lessee has neglected any of its responsibilities, Lessor shall so notify Lessee and Lessee shall promptly cause the same to be undertaken. Should Lessee fail to undertake such responsibilities promptly and to complete the same within a reasonable time, Lessor may, in addition to any other rights or remedies available to Lessor, perform such responsibilities or cause the same to be performed and invoice Lessee for the cost thereof.

7.03  All maintenance which Lessor is required to perform under the terms of any Schedule shall be performed during Lessor's regular working hours. Should Lessee request Lessor to perform maintenance at times other than Lessor's regular working hours, Lessee shall pay to Lessor, in addition to the applicable Rental Charges, all then applicable overtime charges for each hour of work by Lessor's personnel other than during regular working hours.

7.04  To enable Lessor to provide any maintenance which Lessor is required to perform under the terms of any applicable Schedule, Lessee shall make the Units available to Lessor at the dates and at times mutually agreed by Lessor and Lessee and provide such further assistance as Lessor may reasonably request from time to time.

7.05  Lessor shall repair or replace the hour meter on any Unit promptly upon learning that the meter is broken or not functioning properly. If any hour meter is damaged as a result of Lessee negligence, accidents, abuse or misuse of the Unit, the cost of such repair or replacement shall be separately invoiced to Lessee.

7.06  If Lessee permits any party other than Lessor, the authorized Crown dealer designated by Lessor, or another party specifically approved by Lessor, to perform any repairs, maintenance, or services on any Unit which are, in Lessor's judgment, improperly performed or make more difficult or costly the maintenance which Lessor is required to perform under the terms of any applicable Schedule, Lessor may, at its option (i) treat such improper performance as a breach of Lessee's obligations under subsection 7.02, or (ii) cease performing the maintenance which Lessor is required to provide for the Unit under the terms of such Schedule; provided, however, that such cessation shall not relieve Lessee of its responsibility to pay Rental Charges or Excess Usage Charges under such Schedule.

SECTION 8.  CONTINGENCIES.

8.01  Lessor shall not incur any liability to Lessee, nor shall this Agreement or any Schedule be cancellable, for Lessor's failure to perform or delay in performing its obligations hereunder or thereunder, if prevented by wars, fires, strikes or other labor disputes, accidents, acts of God, governmental regulations or interference, delays in transportation, shortage or breakdown of or inability to obtain or nonarrival of any labor, material, or equipment used in the performance of this Agreement or any Schedule, or other causes beyond Lessor's control.

SECTION 9.  TERM; TERMINATION.

9.01  The term of this Agreement shall begin on the date of execution hereof and, unless earlier cancelled in accordance with the provisions of this Agreement, shall continue until terminated by either party upon 30 days' prior notice to the other.

9.02  Termination of this Agreement by notice in accordance with subsection 9.01 shall not affect the obligations of the parties with respect to any Units leased under Schedules executed prior to the date of such termination. Such Schedules shall continue in full force and effect in accordance with the terms of such Schedule and this Agreement notwithstanding termination of this Agreement.

SECTION 10.  CANCELLATION.

10.01  In the event that either party shall breach or fail to comply with any provision of this Agreement or any Schedule and such breach or failure shall continue for a period of 30 days after the giving of notice thereof by the other party, the other party may cancel this Agreement and/or the Schedule involved immediately upon the giving of notice thereof to the defaulting party. Notwithstanding the foregoing, if Lessee shall have failed to make any payment due under any Schedule within ten days after having been so notified by Lessor, Lessor may cancel this Agreement and/or the Schedule involved immediately after the expiration of the ten day period by giving notice of such cancellation to Lessee.

10.02  Upon Lessor's cancellation of any Schedule in accordance with the provisions of this Section, Lessee shall immediately (i) return at its risk, cost and expense, all Units covered by such Schedule to Lessor at such location as Lessor shall specify, and (ii) pay to Lessor all sums due and unpaid and any other amounts to which Lessor may be entitled by way of damages. Should Lessee fail to so return any Units, Lessor shall have the right to repossess the same and Lessee shall assemble such Units, provide Lessor with access to the premises at which the Units are located, and make the Units available to Lessor for repossession. Lessee shall be responsible and liable for all costs and expenses, including reasonable attorneys' fees, incurred by Lessor in attempting to collect from Lessee any amounts payable and past due or in enforcing Lessor's rights under this Agreement, including without limitation, in connection with the repossession of any Units which Lessee has not returned to Lessor.

10.03  Upon Lessor's cancellation of this Agreement or any applicable Schedule in accordance with the provisions hereof, Lessor shall be entitled to recover as damages for the loss of its bargain and not as a penalty, an amount equal to the sum of the following, less the fair market value of each affected Unit in the condition in which it was returned to or repossessed by Lessor (if it has been so returned or repossessed): (i) the applicable Termination Amount for each affected Unit (assuming, for purposes of calculation, that the effective date of the cancellation is the date of the Loss); (ii) any expenses paid or incurred by Lessor in connection with any repossession, holding, repair, subsequent sale, re-leasing, or other disposition of any affected Unit, including without limitation, attorneys' fees; and (iii) all other amounts then payable by Lessee to Lessor hereunder, including without limitation, amounts owing for indemnification. Amounts payable pursuant to this subsection shall be paid by Lessee within ten days after the date of Lessor's demand.

10.04  The rights and remedies given to either party in this Section (including without limitation, Lessor's right to recover liquidated damages in accordance with the provisions of subsection 10.03) shall be deemed to be in addition to, and not in lieu of, any other rights or remedies under the Uniform Commercial Code or otherwise at law or in equity.

SECTION 11.  CONDITION OF UNITS UPON RETURN; SECURITY DEPOSIT.

11.01  Upon the expiration, termination, or cancellation of any Schedule, all Units covered thereby shall be returned to Lessor in good condition, ordinary wear and tear excepted. A signed bill of lading, pick-up receipt, or similar document does not constitute acknowledgment by Lessor of any condition of any Unit being returned. Unit condition will be determined by a final inspection by Lessor after Unit has been returned to Lessor. If any Unit is returned to Lessor in a condition other than as set forth above and if such condition is not due to Lessor's failure to perform the maintenance it was required to perform under the applicable Schedule, Lessee shall pay to Lessor, in addition to all other charges, expenses, or damages payable by Lessee, an amount equal to the difference between the fair market value of the Unit if it had been returned in good condition, ordinary wear and tear excepted, and the actual fair market value of the Unit in the condition in which it was returned, each as determined by Lessee in its reasonable business judgment.

11.02  Lessor shall have the right, upon expiration, termination, or cancellation of any Schedule, to apply any security deposit paid pursuant to the terms of such Schedule or any other Schedule to any amount owing to Lessor under such Schedule, this Agreement, or any other Schedule. The balance of any security deposit not so applied shall be remitted to Lessee within 30 days after the date of expiration, termination or cancellation.

SECTION 12.  MISCELLANEOUS.

12.01  All notices, reports, consents, approvals, or other communications required or permitted under this Agreement shall be in writing, shall be delivered in person, by facsimile, by courier or express service, or by mail, with proper charges prepaid, to the party for whom intended at its address first set forth in this Agreement or to such other address as such party may hereafter direct by notice to the other party, and shall be deemed to be given upon the date of actual receipt. The sending party shall have the burden of proving receipt.

12.02  Lessor shall have the right to charge Lessee a reasonable documentation preparation fee in connection with each Schedule executed pursuant to this Agreement, and Lessee shall pay such fee upon receipt of Lessor's invoice therefor.

12.03  WITHOUT LESSOR'S PRIOR CONSENT (WHICH SHALL NOT BE UNREASONABLY WITHHELD), LESSEE SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY PART OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT OR ANY SCHEDULE OR ENTER INTO ANY SUBLEASE OF ANY UNIT.

12.04  Except as otherwise expressly provided in this Agreement, no failure on the part of either party to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver or relinquishment thereof; nor shall any single or partial exercise by either party of any right under this Agreement preclude any other or further exercise thereof, or the exercise of any other right. Waiver by any party of any breach of any provision of this Agreement shall not constitute or be construed as a continuing waiver or as a waiver of any breach of any other provision of this Agreement.

12.05  This instrument embodies the whole agreement of the parties relating to the subject matter of this Agreement and supersedes any and all prior oral or written negotiations, communications and agreements by or on behalf of the parties. This Agreement may not be varied by any purchase order, acknowledgment, confirmation, invoice, or shipping document issued by either party.

12.06  Lessor may assign or transfer this Agreement, any Schedule, or Lessor's interest in any Unit without notice to Lessee; provided, however, that no such assignment or transfer shall relieve Lessor of its obligations hereunder. Any assignee of Lessor shall have all of the rights, but none of the obligations, of Lessor under this Agreement or the affected Schedule, and Lessee agrees that it will not assert against any assignee of Lessor any defense, counterclaim, or offset that Lessee may have against Lessor. Lessee acknowledges that any assignment or transfer by Lessor will not materially change Lessee's duties or obligations under this Agreement or the affected Schedule, nor materially increase the burdens or risks imposed on Lessee.

12.07  Any lawsuit or other action brought by Lessee against Lessor which is based upon any claim under this Agreement or any Schedule or upon any other claim relating to any Unit or Lessee's possession, use, or operation of any Unit must be commenced within one year after the date the act or omission on which such claim is based is or should have been discovered by Lessee.

12.08  This Agreement and all Schedules entered into pursuant to this Agreement shall be construed and enforced in accordance with the laws of the State of Ohio, as applicable to agreements made and wholly performed therein.

# CROWN Credit Company

New Bremen, Ohio 45869 USA
Phone: 419/629-2311
Fax: 419/629-9224

## Lease Schedule

No. 20520

THIS SCHEDULE is being executed as of the _____ day of _____, 2001 _____, pursuant to the terms of the Master Lease Agreement, dated as of _____ (the "Master Lease"), between CROWN CREDIT COMPANY ("Lessor") and ASEC Manufacturing Subsidiary of Delphi Automotive Systems _____, with offices at PO Box 1679, Catoosa, OK 74015 _____ ("Lessee"), and is subject to provisions of the Master Lease, all of which are incorporated herein by reference. Capitalized terms used but not defined herein shall have the meanings given to them in the Master Lease.

### SECTION 1. UNITS BEING LEASED

| Item No. | Description (Make, Model & Serial Number) | Rental Charge |
|---|---|---|
| 1-4 | Crown RC3020-30-190 | $2,719.00 |
| | SN: 1A249060, 1A249263, 1A24930?, & 1A249252 | plus tax per truck |
| 5-8 | Renegade Batteries 185-110G3-15 | |
| | SN: AZE237677, AZE237680, AZE237679, & AZE237678 | |
| 9-12 | Renegade Chargers 61SS12/650 | |
| | SN: Z54777, Z550280, Z551772, & Z550279 | |

Reference PO #

Note: 1" invoice covers first and last payment of the contract.

Maintenance Option (Sec 4 on Reverse): [ ] A [ ] B

Delivery/

Rental Charge Start Date: _____

Payment Frequency: Monthly

### SECTION 2. TERM; DELIVERY; LOCATION OF UNITS

2.01    Unless earlier terminated or cancelled as provided in the Master Lease, the initial term of the lease of each Unit leased hereunder shall commence upon first delivery to Lessee and shall continue for a period of _____ months. Thereafter, the term of the lease of such Unit shall continue for successive thirty day periods until terminated by either party by giving the other party at least thirty days prior notice of termination.

2.02    The Units shall be delivered to Lessee at the following location and shall be used by Lessee only at such location. Lessee shall under no circumstances remove any Unit from such location without Lessor's prior written consent (which shall not be reasonably withheld).

Location: 1301 Main Parkway, Catoosa, OK 74015

2.03    All Units shall be leased F.O.B. Delivered and _____ shall pay all transportation and insurance charges to the location specified in subsection 2.02.

IN WITNESS WHEREOF, the undersigned have executed this Schedule as of the date first above written.

CROWN CREDIT COMPANY (LESSOR)

By: _____

ASEC Manufacturing
Subsidiary of Delphi Automotive Systems
(LESSEE)

By: _Frances Dresher_

CCF3670 Rev. 1/00    WHITE & CANARY–Return to Crown Credit Company, PINK–Lessee Copy, GOLDENROD–Branch/Dealer Copy

Printed in U.S.A.

SECTION 3. PAYMENT.

3.01  The rental charge for each Unit ("Rental Charge") shall be as set forth above in Section 1 adjacent to the description of that Unit and shall begin on the date and be payable at the intervals indicated in Section 1.

3.02  If the number of hours of operation of any Unit in any period exceeds the number of base hours for that Unit as shown in Section 1 ("Base Hours"), Lessee shall pay to Lessor, in addition to the Rental Charge for the Unit, the amount set forth in Section 1 for each hour of operation exceeding the Base Hours ("Excess Usage Charge").

3.03  If a security deposit for any Unit is indicated in Section 1, Lessee shall make payment of such security deposit to Lessor concurrently with Lessee's execution of this Schedule. Lessor shall be under no obligation to deliver any Units to Lessee until all such security deposits have been received.

3.04  Lessee acknowledges that the above charges for each Unit have been determined using information provided to Lessor by Lessee. If that information is or hereafter becomes inaccurate, Lessor shall have the right, in addition to any other rights or remedies provided in this Schedule or the Master Lease, to make appropriate adjustments in such charges.

3.05  All charges set forth herein are exclusive of any sales, use, recording, personal property, or other taxes applicable to or arising in connection with the leasing of the Units hereunder. All such taxes shall be the responsibility of Lessee, other than taxes based upon the net income of Lessor.

SECTION 4. MAINTENANCE.

4.01  During the term of the lease of the Units hereunder:

A. Lessee shall be responsible for all Planned Maintenance and Maintenance Services on the Units.

B. Lessor shall be responsible for all Planned Maintenance on the Units, and Lessee shall be responsible for all Maintenance Services on the Units.

C. Lessor shall be responsible for all Planned Maintenance and Maintenance Services on the Units.

Regardless of the maintenance option selected by Lessee, and indicated in Section 1, Lessee shall, at its own cost and expense, be responsible for the performance of Lessee's Responsibilities with respect to each Unit and the performance of all Additional Services required for each Unit.

4.02  Each party shall perform its responsibilities under this Section 4 or cause its responsibilities to be performed on its behalf by a third party duly authorized by Lessor. Unless otherwise provided in the Master Lease or this Schedule, all costs incurred by each party in connection with the performance of its responsibilities under this Section 4 shall be borne by such party.

4.03  If Lessor is to provide Maintenance Services hereunder, Lessee shall promptly notify Lessor upon discovering any condition indicating that Maintenance Services are needed. Should Lessee notify Lessor that it is not possible to operate the Unit without servicing, Lessor shall use its best efforts to commence Maintenance Services on the Unit promptly after receipt of Lessee's request for service.

4.04  Regardless of the maintenance option selected by Lessee, Lessee has full responsibility for the replacement of batteries and tires/wheels for each Unit beyond those originally supplied with that Unit, except as follows: _____

4.05  As used in this Schedule:

"Planned Maintenance" means the performance, in accordance with the instructions of the manufacturer of each Unit and at such times as Lessor may agree or the manufacturer may specify, of all planned maintenance services for the Unit which are recommended by its manufacturer.

"Lessee's Responsibilities" means the performance of all services recommended by the manufacturer of each Unit in connection with the normal daily operational needs of the Unit.

"Maintenance Services" means all work required to keep each Unit in good working order, other than Planned Maintenance, Lessee's Responsibilities, and repairs, maintenance or servicing (i) arising out of Lessee negligence, accidents, abuse or misuse of the Unit; (ii) resulting from Lessee's failure to perform, or the improper performance of, Lessee's Responsibilities; or (iii) necessitated or occasioned by repairs or servicing undertaken by any party, including Lessee, other than Lessor.

"Additional Services" means all repairs, maintenance, or service which is required (in addition to Planned Maintenance, Maintenance Services, and Lessee's Responsibilities) to keep each Unit in good working order.

SECTION 5. ADDITIONAL PROVISIONS OR RIDERS.

None, except as noted below:

☐ Purchase Option Supplement
☒ Additional Equipment Rider
☐ Other _____

DELIVERY RECEIPT   w/o 61132

# SOUTHERN MATERIAL HANDLING COMPANY
P.O. Box 470890
8118 East 44th Street
TULSA, OKLAHOMA 74145
(918) 622-7200

Delivered to: ASEC Manufacturing

1301 Main Parkway

Catoosa, OK 74015

DELIVERY RECEIPT NO.

DATE  7/17/01

| SHIPPED VIA | | CARTONS-PKGS. | TOTAL WEIGHT | YOUR ORDER NO. | OUR ORDER NO. | PPD. OR COLL. |
|---|---|---|---|---|---|---|
| | | | | Lease | | |

| QUANTITY ORDERED | QUANTITY SHIPPED | ITEMS |
|---|---|---|
| 1 | 1 | New Crown RC3020-35, S/N 1A243250, with Renegade 18-110GS-15 Battery, S/N AZE237377 |
| 1 | 1 | New Crown RC3020-35, S/N 1A243251, with Renegade 18-110GS-15 Battery, S/N AZE237378 |
| 1 | 1 | New Crown RC3020-35, S/N 1A243252, with Renegade 18-110GS-15 Battery, S/N AZE237379 |
| 1 | 1 | New Crown RC3020-35, S/N 1A243253, with Renegade 18-110GS-15 Battery, S/N AZE237380 |
| 4 | 4 | New Renegade GTS-18-850B Chargers, S/N ZB47771/2 and ZB4 S/N ZD50279/80 |

Received in good order by ASEC Jerry Trundle   Per ____   Date 7/24/01

Reorder Item #F22 Grayarc, P.O. Box 2944, Hartford, CT 06104-2944
©EGI, 1982, Printed in U.S.A.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone: (800) 331-3282  Fax: (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

93561 CROWN.CR
3281975-40-1

File with: Oklahoma

DOC # 2002004124015
DATE 04/04/2002
TIME 09:51:56
TYPE UC1
CAROLYNN CAUDILL
OKLAHOMA County Clerk
RECORDED AND FILED

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

- 1a. ORGANIZATION'S NAME: ASEC Manufacturing
- 1c. MAILING ADDRESS: 1301 Main Parkway
- CITY: Catoosa
- STATE: OK
- POSTAL CODE: 74105
- 1e. TYPE OF ORGANIZATION: Corporation
- 1f. JURISDICTION OF ORGANIZATION: OK
- 1g. ORGANIZATIONAL ID #: [X] NONE

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** — (blank)

**3. SECURED PARTY'S NAME**
- 3a. ORGANIZATION'S NAME: Crown Credit Company
- 3c. MAILING ADDRESS: 44 S Washington Street
- CITY: New Bremen
- STATE: OH
- POSTAL CODE: 45869

**4. This FINANCING STATEMENT covers the following collateral:**

(2) Crown Lift Trucks, Model: RC3020-35, SN: 1A243250, 1A243253 (2) Renegade Batteries, Model: 18-110GS-15, SN: AZE237377, AZE237380 (2) Renegade Chargers, Model: GTS18-850, SN: ZD50280, ZB47771

**8. OPTIONAL FILER REFERENCE DATA**
3281975

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282