# **<u>EXHIBIT B</u>**

        **Hearing Date:  March 1, 2007**
        **Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
|                 Debtors. | : | (Jointly Administered) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

## DECLARATION OF LORETTA NASH WOOLRIDGE

Pursuant to 28 U.S.C Section 1746, I, Loretta Woolridge, declare the following:

1. My name is Loretta Nash Woolridge. I am over age 18 and have personal knowledge of the facts contained in this declaration. I am competent to testify to the facts contained herein. Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply.

2. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, and my experience with and knowledge of Delphi's relationship with Edith James. If I were called upon to testify, I could and would testify to the facts set forth herein.

3. In January 2001, I was Plant Personnel Director at Delphi Automotive Systems LLC's ("DAS LLS") Columbus, Ohio facility.

4. In January 2001, Edith James was placed in the Salaried Personnel Position at DAS LLC's Columbus, Ohio facility. Previously, Ms. James was a Manufacturing Advisor at DAS LLC's Columbus, Ohio facility and was in salary grade 6B. When Ms. James took the Salaried Personnel Position, she retained her salary grade 6B and had no supervisory responsibility or authority in the new position.

5. The Salaried Personnel position that Ms. James assumed in 2001 reported directly to the plant Personnel Director and was responsible for, among other things: (i) administering the plant Merit Compensation Plan, by which salaried employees at the Columbus facility received pay increases; (ii) administering the Personnel Business Plan process, by which salaried employees receive performance objectives and reviews; (iii) keeping track of the plant salaried headcount, specifically entering new hires, transfers, and terminations into the Human Resources ("HR") database and ensuring that the database is accurate; (iv) administering plant

Affirmative Action Plan and Equal Employment Opportunity ("EEO") database; (v) providing information to salaried employees regarding Delphi HR policies; and (vi) training.

6. In May 2000, Frank Cerny was Supervisor of Salaried Personnel Administration. When I became his supervisor, I reviewed Mr. Cerny's employment file and learned that he had worked his entire career in the GM and subsequently Delphi Human Resources Department, in various position. Mr. Cerny had been at a seventh level pay rate for fourteen years before assuming the Supervisor of Salaried Personnel position. He earned that promotion after years of working in the department. See Cerny Employment History, attached hereto as Exhibit 1. Based on my interaction with Mr. Cerny, he was generally a good performer and competent to perform his job duties, and I did not experience the same sort of difficulties and poor performance with him as I experienced with Ms. James. In late 2000, Mr. Cerny announced that he would retire from Delphi.

7. Following Mr. Cerny's announcement, I asked him to create a posting for his position. At that time, DAS LLC was undergoing internal cost-cutting efforts by reducing the number of salaried employees. The duties of many salaried employees were consolidated with those of existing positions to achieve structural cost reductions for the plant.

8. Over the years, as the number of salaried employees decreased in the plant, the number of salaried employees in the personnel office was also reduced. By 2000, the Salaried Personnel Office had only two salaried employees, Mr. Cerny, Supervisor Salaried Personnel Administration, and Marcia Brown, Salaried Personnel Representative.

9. Because the duties of the office had decreased in recent years, DAS LLC determined that the positions held by Mr. Cerny and Ms. Brown could be combined into a single non-supervisory position. Delphi also determined that the Salaried Education and Training

position could be combined with Mr. Cerny's and Ms. Brown's positions, because those job duties and the plant population had been significantly reduced. The modified position was the Salaried Personnel Position, which was designed subsequent to Mr. Cerny's job posting.

10. DAS LLC received applications from employees at the Columbus Facility and other Delphi facilities for the Salaried Personnel Position. I interviewed candidates for the position. Following the consolidation of job duties, I informed candidates, including Ms. James, that it was not a supervisory position and that it would include the duties of a Salaried Training and Education job, which had been eliminated, as well as some of the duties of the prior Salaried Personnel department. After explaining the modifications to the employees, I gave candidates the opportunity to withdraw from consideration for the position. Ms. James was given the option of withdrawing, but she decided not to withdraw her name.

11. After interviewing all of the candidates, I created a list of my top three candidates for the position to present to the HRM Committee. My first choice for the position was a Caucasian male working at Delphi's Sandusky, Ohio plant as a Senior Salaried Personnel Representative. Delphi's management at the Columbus facility decided against giving the position to this individual, as he would increase the Columbus plant's salaried headcount.

12. My second choice for the position was a Caucasian female employee at the Columbus facility in the Finance Department. Local management decided against giving the job to this individual because her talents were better utilized in the Finance Department.

13. My third choice for the position was Ms. James. I felt that Ms. James had demonstrated some of the attributes to perform the personnel job, but that she did not have sufficient Delphi experience or Human Resources background to allow her to hit the floor running. It was the consensus of the HRM Committee that I should offer the position to Ms.

James. In addition to these three candidates there were other candidates, including a Caucasian male, who were not selected for the position.

14. Consequently, the Salaried Personnel position was offered to Ms. James. Because Ms. James had been with Delphi for a little more than a year and had no experience in Human Resources functions, I felt that Ms. James faced a steep learning curve in the position. The Plant Manager, Jan Santerre, and I decided that Ms. James' move to the position was a lateral transfer and was classified as a developmental opportunity. (Ms. Santerre left the Plant Manager position and DAS LLC in April 2001).

15. It was common for Delphi to replace 7th level with 6th level employees in contexts similar to James' where a seasoned employee vacated a position and it was used a developmental opportunity. In the past, Delphi had placed both male and Caucasian employees at the 6th level salary code when replacing 7th level employees.

16. In December 2000, I offered Ms. James the Salaried Personnel Position and reiterated to her that the position had been modified, as explained above. I told her that it was no longer a supervisory position and that it included the education and training duties.

17. I also informed Ms. James that DAS LLC had hoped to give the position to a more qualified candidate, but because they were unable to do so she would be given an opportunity to take the position and grow into it. I strongly emphasized at the time of the offer that her learning curve would be steep, but with her strong interest in the job and the support she would receive from the Human Resources department, we felt she could do it. Ms. James accepted the offer.

18. Ms. James was placed in the Salaried Personnel Position in early January 2001 so she could train with Mr. Cerny before he retired at the end of that month.

19. After Ms. James filled the Salaried Personnel Position, she met with me to discuss why she was remaining at her level 6 salary code. I reiterated that, given her inexperience, this was a developmental opportunity and, therefore, considered a lateral transfer. I also explained that in the future, with good performance, she could be considered for a promotional increase to level 7. I also told Ms. James that if she would like to reconsider her assignment to the Salaried Personnel job, the assignment could be reversed and she could return to her Manufacturing Advisory job. Ms. James felt comfortable that she could perform the job, even as modified.

20. Ms. James spent January 2001 shadowing Mr. Cerny, except for a short period of time that she spent learning about the training and education duties and training her Manufacturing Advisory replacement. Mr. Cerny trained Ms. James in all the essential functions in the Salaried Personnel Position, including the Merit Compensation Plan, the Affirmative Action Plan, the salaried personnel database, and the plant EEO target database. Mr. Cerny offered to stay late to offer additional training to Ms. James, but Ms. James declined the offer. Even after his retirement, Mr. Cerny remained available to answer Ms. James' questions by phone. Marcia Brown, who worked under Mr. Cerny, and was reassigned after his retirement, was also available to answer questions for Ms. James.

21. Ms. James was instructed to call Salaried Personnel Representatives of other plants with questions if they arose, as well as to call members of corporate management for help and advice.

22. Ms. James also spent time with Sandy Swanson, Senior Salaried Personnel Representative at Delphi's Vandalia plant, reviewing Ms. Swanson's Affirmative Action Plan and asking her questions about her job.

23. Ms. James was assisted by Sherry Rice, a clerical employee, who was assigned to the Salaried Personnel office part-time to assist in entering data into the database, which constituted the bulk of the education responsibility. Ms. Rice also assisted Ms. James by answering the phones, typing letters, organizing documents, filing information in employee records, and performing other clerical tasks.

24. I received numerous complaints from several members of Delphi's management team about Ms. James's performance.

25. In August 2001, I reviewed Ms. James's performance and indicated that Ms. James was behind target with regard to the Columbus Facility's affirmative action plan, quarterly training schedule, and Personnel Business Plan administrative duties. These were significant responsibilities of her position. I also noted mistakes in Ms. James's administration of the facility's 2001 Merit Compensation Plan.

26. In late August 2001, Ms. James submitted a letter of resignation. After some discussion, I was unable to convince her to remain with DAS LLC. I notified the new Plant Manager, Tom Green, of her decision and he requested to speak with her. Following their discussion she informed me that she would not be resigning after all.

27. James Barr replaced me as Plant Personnel Director in September 2001. After September 2001 I had no supervisory responsibilities nor input into Ms. James' Personal Business Plan.

28. Ms. James' gender and race were in no way factors in the decisions that were made regarding her employment.

29. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on February 1, 2007, in Troy, Michigan.

                                                                   /s/ *Loretta Nash Woolridge*
                                                                      Loretta Nash Woolridge

# EXHIBIT 1

03/26/03  11:56  FAX 614 275 5010  DPH-INTERIOR  ☒004

```
Delphi                                                                                    Date: 03/25/2003
User: KZDXPS                          Employment History                                  Time: 13:16:01
Employee: 01022631                       CONFIDENTIAL
```

| Employee No | 01022631 Frank J Cerny |
| Continuous Service Date | 10/01/1960 |
| Residence Status | |
| Exempt Status | Exempt |
| SSN | |
| Gender | Male |
| Birth Date | 06/03/1942 |
| Ethnic Origin | White/Not Hispanic origin |
| Veteran Status | Non-veteran |
| Disability | No |
| Telephone | |
| Address | |

**Education**

| Certificate | Year School | Brn of Study 1 | Brn of Study 2 | GPA |
|---|---|---|---|---|
| Bachelor | 1965 Kettering Univ (Formerly Gmi) | Enrg - General/Mechanical | Gmi Gradua | .0 |

**Language**

| Language | Skill | Proficiency |

**Appraisal**

| Date | App Crit | Appraiser |

**Employment**

| Date | Position | PY PY GD LV Dlv/Stf | Pers. Area | Sub Area | Org Unit | EE SG | Reason for Action |
|---|---|---|---|---|---|---|---|
| 02/01/2001 | SUPV-SALARIED PERSONNEL ADMIN | 7 7B GM DPH I&L | COLUMBUS | OH | PERSON D5030/430 | SE | RETIRE(ERLY)-AGE < 60 |
| 01/01/1999 | SUPV-SALARIED PERSONNEL ADMIN | 7 7B GM DPH I&L | COLUMBUS | OH | PERSON D5030/430 | RA | HIRE-SUCCESSOR ENTERPRISE |
| 12/31/1998 | SUPV-SALARIED PERSONNEL ADMIN | 7 7B GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | SE | SEP-SUCCESSOR ENTERPRISE |
| 04/01/1992 | SUPV-SALARIED PERSONNEL ADMIN | 7 7B GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | RA | RECLASS-POS CODE CHG |
| 05/01/1989 | SUPV-HOURLY PERSONNEL ADMINIST | 7 7C GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | RA | CHG-REORG/ORG NAME |
| 01/01/1986 | SUPV-HOURLY PERSONNEL ADMINIST | 7 7C GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | RA | BUILD CHANGES |
| 09/01/1982 | SUPV-HOURLY PERSONNEL ADMINIST | 7 7C GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | RA | * TRANS FROM PLT W/IN DIV |
| 05/01/1981 | SUPV-HOURLY PERSONNEL ADMINIST | 7 7C GM DPH I&L | COLUMBUS | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 10/16/1978 | SUPV-LABOR RELATIONS | 7 7B GM DPH I&L | CLEVELAND | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 12/01/1978 | SUPV-LABOR RELATIONS | 6 6B GM DPH I&L | CLEVELAND | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 04/01/1977 | LABOR RELATIONS REPRESENTATIVE | 6 6A GM DPH I&L | CLEVELAND | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 01/01/1975 | INT'L - PERSONNEL | 6 6B GM DPH I&L | CLEVELAND | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 09/30/1974 | LABOR RELATIONS REPRESENTATIVE | 6 6B GM DPH I&L | CLEVELAND | OH | PERSON 06840/430 | RA | UNKNOWN TEXT IN PRISM |
| 09/16/1974 | LABOR RELATIONS REPRESENTATIVE | 6 6B GM DPH I&L | CLEVELAND | OH | PERSON 06840/301 | RA | UNKNOWN TEXT IN PRISM |
| 10/01/1960 | LABOR RELATIONS REPRESENTATIVE | XA GM DPH I&L | UNKNOWN TEXT | IN PR | PERSON 06840/ | RA | HIRE-REGULAR |
| 01/01/1901 | | XA GM DPH I&L | UNKNOWN TEXT | IN PR | 06840/ | RA | UNKNOWN TEXT IN PRISM |

CONFIDENTIAL
Subject to Protective Order

DEL/IAM000105

PLAINTIFF'S EXHIBIT A  tabbies