**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
In re:
                                                                    :        Chapter 11
DELPHI CORPORATION., et al.,                                                 Case No. 05-44481
                                                                    :        Jointly Administered
            Debtors.
                                                                    :
----------------------------------------------------------x

**NOTICE OF TRANSFER OF CLAIM PURSUANT TO FRBP RULE 3001(e)(2)**

TO:             Greer Stop Nut, Inc. ("Transferor")
                301 Highland Avenue
                Jenkinton, PA 19046

2.      Please take notice of the transfer of $37,253.38 of your claim described in the attached Evidence of Transfer, together with all applicable interest, fees and expenses related thereto, and any and all proofs of claim filed in connection therewith, including Proof of Claim No. 9798 (the "Transferred Claim") to:

                Bear Stearns Investment Products Inc. ("Transferee")
                383 Madison Avenue
                New York, NY 10179
                Attention: Laura Torrado

3.      No action is required if you do not object to the transfer of the Transferred Claim as described above.  **IF YOU OBJECT TO THE TRANSFER OF THE TRANSFERRED CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:**

                **FILE A WRITTEN OBJECTION TO THE TRANSFER with:**
                Clerk of the Court
                United States Bankruptcy Court
                Southern District of New York
                One Bowling Green
                New York , New York 10004-1408

                **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE**
                Refer to **INTERNAL CONTROL NO.____** in your objection.

4.      If you file an objection, a hearing will be scheduled.  **IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING.**

Dated: _____, __ 2007                                 _____
                                                        Clerk of the Court
**FOR CLERK'S OFFICE USE ONLY:**
This notice was mailed to the first named party, by first class mail, postage prepaid on _____, 2007.
INTERNAL CONTROL NO._____
Copy (Check): Claims Agent:_____  Transferee: _____  Debtor's Attorney: _____

                                                        _____
                                                        Deputy Clerk

040-2948/COURT/1111901.1

# TRANSFER OF CLAIM AGREEMENT

## SPS TECHNOLOGIES, LLC, ET AL. PREPETITION CLAIMS
## VERSUS
## DELPHI CORPORATION, DELPHI AUTOMOTIVE SYSTEMS, LLC, ET AL.

This agreement (the "Agreement") is entered into between SPS Technologies, LLC a/k/a SPS Technologies-Cleveland; SPS Technologies Waterford Company, f/k/a Terry Machine Company; Greer Stop Nut, Inc., and NSS Technologies, Inc. f/k/a National Set Screw Corp. (hereinafter collectively referred to as "Assignor") and Bear Stearns Investment Products, Inc. ("Assignee") with regard to the following matters:

## RECITALS

A.  Delphi Corporation (together with its affiliates, subsidiaries, and other related debtors, collectively "Delphi") commenced Chapter 11 bankruptcy cases on October 8, 2005 ("Petition Date"), with the U.S. Bankruptcy Court (S.D.N.Y.) (the "Bankruptcy Court"), which are jointly administered at Bky No. 05-44481 (the "Bankruptcy Case").

B.  Assignor and Delphi are parties to contracts or purchase orders for the manufacture of products ("Parts"), primarily in the automobile industry.

Assignor represents that it has no information that any contracts or purchase orders relating to the Parts have been assumed or rejected in accordance with Section 365 of the Bankruptcy Code, 11 U.S.C. § 365. Delphi has filed a motion to reject certain purchase orders with General Motors Corporation which is a matter of public record. Assignor makes no representation that any of the SPS Parts are included or excluded in the motion described in this paragraph. Assignee assumes all responsibility for determining the status of Assignor's contracts or purchase orders.

C.  Prebankruptcy Claim:

Assignor has filed the following Proofs of Claim asserting unsecured nonpriority claims in the Bankruptcy Case (collectively the "Claim"). An itemization of Assignor's Reclamation claims and a schedule of the itemized claims as reflected on Delphi's Schedules of Assets and Liabilities follows:

| Entity | Claim # | Claim Amount | Reclamation Claim | Delphi Scheduled Amount |
|---|---|---|---|---|
| SPS Technologies Waterford Company, f/k/a Terry Machine Company | ~~9771~~ 9772 | $ 72,034.20 | $ 25,549.79 | $ 71,237.34 |
| Greer Stop Nut, Inc. | 9798 | $ 37,253.38 | $ 16,955.14 | $ 36,736.14 |
| NSS Technologies, Inc., f/k/a National Set Screw Corp. | ~~9772~~ 9771 | $ 977,354.65 | $ 147,797.63 | $686,491.55 |
| **Total** | | **$1,086,642.23** ("Total Claim") | **$ 190,302.56** | **$794,465.03** |

Assignor represents and warrants that the above listed amounts are true and correct as of the date hereof and that no objections have been filed to the Claim.

The Reclamation Claim was assigned number: 493. The Total Amount of the Reclamation Claim is included within the Total Claim.

367467.1/37859

E.     Proofs of Claim in respect to the above have been duly and timely filed.

F.     True and correct copies of all contracts, invoices, purchase orders, and/or proofs of delivery that relate to the Claim are attached. All information contained in these documents is proprietary information of the Assignor and may not be revealed to any person without the express written consent of the Assignor, except with respect to a sale of all or any portion of the Claim, provided however, that any potential assignee to whom such document is delivered shall agree to the terms of this Section F. Under no circumstance may the original Assignee or any subsequent Assignee disclose any information provided in the supporting document to any direct competitor of the Assignor.

## AGREEMENT

1.     The RECITALS stated above are incorporated herein as if set forth at length.

2.     Assignee shall pay                                                      of the amount acknowledged by Delphi concurrent with the execution of this Agreement in exchange for all of SPS' right, title and interest to the Total Claim including the right to amounts owed under any contract or purchase order and any respective cure amount related to the potential assumption and cure of any contract or purchase order due and owing as of the Petition Date. Assignee shall pay the percentage stated in this paragraph to Assignor of any additional amount up to a maximum amount evidenced by the proof of claim filed by the Assignor when acknowledged by Delphi within twenty (20) days of the acknowledgement and allowance of such amount by final Order of the Bankruptcy Court. The total amount to be paid shall be considered the "Purchase Price." The Claim is based on valid amounts owed to Assignor by Delphi as set forth herein and this assignment is an absolute and unconditional assignment of ownership of the Claim, and shall not be deemed to create a security interest.

3.     Assignee shall be entitled to all distributions made by Delphi on account of the Claim, even distributions made and attributable to the Claim being allowed in the Debtor's case in an amount in excess of the Total Claim provided such distribution is measured by the Total Claim.

4.     Assignee shall not be entitled to receive any payment in any form for any intellectual property supplied by Assignor to Delphi under any circumstances.

5.     Assignee shall not be entitled to receive any payment in any form for any finished or semi-finished parts, materials on consignment, tooling or equipment supplied to Delphi by Assignor at any time except as included in the Claim as identified in the RECITALS above.

6.     Assignor represents and warrants that the amount of the Claim is not less than the Total Claim, that the Total Claim is the true and correct amount owed by the Delphi to the Assignor, and that no valid defense or right of set-off to the Claim exists.

7.     Assignor has asserted a claim for reclamation of certain goods delivered to Delphi prior to the filing of the Proceedings ("Reclamation Claim") and Delphi has disputed the Reclamation Claim. In addition to the payment of the Purchase Price, Assignee shall pay to Assignor an additional zero percent (0.0 %) over the amount previously paid pursuant to paragraph 2 above of any amount of the Reclamation Claim allowed as a "reclamation claim" by final order of the Bankruptcy Court or by agreement with Delphi. Assignee shall pay such amount to Assignor within thirty (30) days of receipt of such final order or stipulation executed by Delphi. In the event that Assignor elects, at its sole discretion, not to pursue any Reclamation Claim, Assignor shall not be entitled to any additional consideration from Assignee as contemplated by this paragraph. If Assignor elects, after the execution of this Agreement, at its sole discretion, to pursue any Reclamation Claim, then such action shall be taken at Assignor's own expense without reimbursement from

367467.1/37859

2

Assignee and if the Reclamation Claim is thereafter allowed, Assignor shall be entitled only to the consideration provided in this paragraph. If Assignee elects to pursue any Reclamation Claim, Assignor shall take such actions as are reasonable to provide documentation in its business records to support such Reclamation Claim.

8.   Assignor represents and warrants that no payment has been received by Assignor or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, that Assignor has not previously assigned, sold or pledged the Claim, in whole or in part, to any third party, that Assignor owns and has title to the Claim free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, and that there are no offsets or defenses that have been or may be asserted by or on behalf of the Delphi or any other party to reduce the amount of the Claim or to impair its value.

9.   Should it be asserted that any transfer by Delphi to the Assignor made prior to the Petition Date is or could be avoided as a preferential payment or fraudulent conveyance, pursuant to the Bankruptcy Code, 11 U.S.C. §101 et seq. ("Avoidance Action") and the Assignee is not a defendant in such Avoidance Action, Assignee shall promptly notify Assignor, and thereafter Assignor shall assume the defense of such Avoidance Action and Assignor shall be responsible for resolving such Avoidance Action, at its sole discretion, up to and including potential repayment of such transfer to the Debtor. In the event Delphi, or any party claiming for or through Delphi, commences an action in the Bankruptcy Court for the recovery of any Avoidance Action, Assignor may assert any defense permitted by law in respect to such Avoidance Action, whether or not such defense relates to the Claim or any part of the Claim transferred pursuant to this Agreement.

10.   Assignor is aware that the Purchase Price may differ from the amount ultimately distributed in the Bankruptcy Case with respect to the Claim and that such amount may not be absolutely determined until entry of a final order confirming a plan of reorganization or sometime thereafter. Assignor acknowledges that, except as set forth in this Agreement, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise), any other matter relating to the proceedings, Delphi, or the likelihood of recovery of the Claim. Assignor and Assignee each represent that it has independent and adequate information concerning the business and financial condition of Delphi and the status of the Proceedings to make an informed decision regarding the sale of the Claim and that it not relying on the other for its decision to enter into this Agreement.

11.   Should any attempt be made to disallow, reduce, subordinate, setoff against or impair any or all of the amounts scheduled in the Claim, Assignee shall promptly notify Assignor, and thereafter Assignee may defend the Claim at Assignor's expense relating to the defense of the Claim. Assignor shall have the option of defending the Claim at Assignor's expense. In the event any portion or all of the Claim, as identified in this Agreement is disallowed, reduced, subordinated, set off against or impaired or if distributions are not paid in the same manner and pro rata amount and at the same time as general unsecured creditors of Delphi generally, Assignor will promptly refund to Assignee on Assignee's demand, an amount equal to the product of the ratio of the amount of the Claim subject to the treatment above divided by the portion of the Claim to which the Purchase Price paid related multiplied by the Purchase Price paid, plus interest at the Wall Street Journal prime rate + 1% per annum as of the date of the Transfer Agreement.

12.   To the extent that it may be required by applicable law, Assignor hereby irrevocably appoints Assignee as its true and lawful attorney in fact and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim and not any other claim or cause of action which Assignor may have against Delphi. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and Assignor's rights thereunder. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that the Assignee may exercise or decline to exercise such powers at Assignee's

367467.1/37859

3

sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings or in any other dispute arising out of or relating to the Claim, whether or not suit or other proceedings are commenced, and whether in mediation, arbitration, at trial, on appeal, or in administrative proceedings. Assignor agrees to take such reasonable further action, as may be necessary or desirable to effect the Assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

13.    Assignor shall forward to Assignee all notices received from the Debtor, the Bankruptcy Court or any third party with respect to the Claim, including any ballot with regard to voting the Claim in the Proceeding, and shall take such action with respect to the Claim in the proceedings, as Assignee may request from time to time. Assignor acknowledges that any distribution received by Assignor on account of the Claim from any source, whether in form of cash, securities, instrument or any other property or right, is the property of and absolutely owned by the Assignee, that Assignor holds and will hold such property in trust for the benefit of Assignee and will, at its own expense, promptly but in any event within 5 days, deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

14.    Nothing herein shall constitute an assignment of any claim on behalf of Assignor against Delphi in respect to any raw material, finished product, inventory, equipment or tooling delivered to Delphi on and after the Petition Date and Assignor shall be entitled to all rights, specifically but not limited to the right of collection, in respect to such delivery.

15.    Assignor shall have the sole right to make any decision in respect to the assumption or rejection, or modification, of any contract or purchase order in respect to any of the parts identified in this Agreement. To the extent that the exercise of any such decision affects the payment by Delphi in respect to any Claim transferred pursuant to this Agreement, Assignor shall have no responsibility to refund or otherwise remit any payment from Delphi except if such payment relates to the Claim.

16.    The terms of this Agreement shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

17.    Subject to the conditions specified therein, Assignor hereby acknowledges that Assignee may at any time further assign the Claim together with all rights, title and interests of Assignee under this Agreement and such subsequent assignee shall be bound by the terms of this Agreement. All representations and warranties of the Assignor made herein shall survive the execution and delivery of this Agreement. This Agreement may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

18.    This contract is not valid and enforceable without acceptance of this Agreement with all necessary supporting documents by the Assignee, as evidenced by a countersignature of this Agreement.

19.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Agreement may be brought in any state or federal court located in New York only; provided, however, unless expressly provided in any contract or purchase order that the operation of New York law shall apply then the law of New York shall not affect the choice of laws under any underlying contract or purchase order. Assignor and Assignee each consent to and confer personal jurisdiction over each of them by such court or courts and agree that service of process may be made upon them by mailing a copy of said process to them at the address set forth in this Agreement, and in any action hereunder, Assignor and Assignee waive any right to demand a trial by jury.

20. Assignor hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives its right to raise any objection thereto and its right to receive notice pursuant to Rule 3001 of the Federal Rules of the Bankruptcy Procedure.

IN WITNESS WHEREOF, intending to be legally bound, the undersigned Assignor and Assignee have executed this Agreement effective this seventh day of August 2006.

**ASSIGNOR**

SPS Technologies, LLC a/k/a SPS Technologies-Cleveland; NSS Technologies, Inc. f/k/a National Set Screw Corp.; SPS Technologies Waterford Company, f/k/a Terry Machine Company; and Greer Stop Nut, Inc.

By _Dennis R. Shea_
Signature

Dennis R. Shea, Esquire,
Director, Legal and Environmental Affairs

SPS Technologies, LLC
301 Highland Avenue
Jenkintown, PA 19046

**ASSIGNEE**

_Bear Stearns Investment Product, Inc._
Name of Company

By _[signature]_
Signature

_Jon Weiss, Vice President_
[Print Name and Title]

_383 Madison Ave, New York, NY 10179_
Street Address
City, State & Zip

367467.1/37859                                   5