**Hearing Date: April 13, 2007**
                          **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT
TO PROOF OF CLAIM NUMBER 7907 (Yilmaz Sahinkaya Structural Mechanics Analysis, Inc.)

("STATEMENT OF DISPUTED ISSUES – Yilmaz Sahinkaya Structural Mechanics Analysis, Inc.")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement of Disputed Issues (the "Statement of Disputed Issues") With Respect To Proof Of Claim Number 7907 (the "Proof of Claim") filed by Yilmaz Sahinkaya Structural Mechanics Analysis, Inc. ("Yilmaz SMA"), and respectfully represent as follows:

## Background

1.  Yilmaz SMA filed the Proof of Claim on or about June 13, 2006. The Proof of Claim asserts an unsecured nonpriority claim in the amount of $42,400 (the "Claim") stemming from an agreement between Yilmaz SMA and Delphi Automotive Systems LLC ("DAS LLC") whereby Yilmaz SMA agreed to provide technical services required by DAS LLC in conjunction with a certain project (the "Project") to develop an accurate and reliable computer modeling and simulation program to be used as a system design and analysis tool to test and analyze electrical systems in automotive vehicles. The Purchase Order dated July 2, 1999 (the "Purchase Order"), the purchase order terms for information systems and services ("IS&S Terms"), the statement of work ("SOW"), and the terms and conditions from September 30, 1998 ("Terms and Conditions") contain the terms by which DAS LLC agreed to purchase services from Yilmaz SMA. See Purchase Order, attached to the Proof of Claim as Attachment A.

2.  The Debtors objected to the Claim pursuant to the Debtors' (i) Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation and (b) Claims Not Reflected on Debtors' Books and Records (Docket No. 6100) (the "Fifth Omnibus Claims Objection"), which was filed on December 8, 2006.

   3. On January 3, 2007, Yilmaz SMA filed a Response to Debtors' Fifth Omnibus Objection To Its Claim No. 7907 (Docket No. 6421) (the "Response"). In the Response, Yilmaz SMA asserts that the Claim constitutes its completion of "80% of the work products described in the [SOW]" for the Project. <u>See</u> Response, p. 1. Yilmaz SMA further explains that the Claim is based on work between April 28, 2000 and September 14, 2000. <u>See</u> Invoice 2, attached to the Proof of Claim as Attachment C.

Disputed Issues

   4. The Debtors are not liable to Yilmaz SMA for any alleged costs beyond the $24,000 they already paid Yilmaz SMA on June 14, 2000. DAS LLC and Yilmaz SMA entered into the Purchase Order that, along with the IS&S Terms, the SOW, and the Terms and Conditions, all incorporated in the Purchase Order, set forth the terms upon which DAS LLC would purchase services from Yilmaz SMA for the Project. <u>See</u> Purchase Order, attached to the Proof of Claim as Attachment A.

   5. The goal of the Project was for Yilmaz SMA to provide DAS LLC a user friendly computer modeling and simulation program (the "Program") that would allow DAS LLC engineers to experiment through simulation with various electrical architectures, i.e., electrical components and their interconnections, under a wide range of load demands and vehicle operating conditions. Ultimately, the Program's business purpose was to help DAS LLC achieve its goal of reaching an appropriate margin between high fuel efficiency and price point for a particular vehicle. Although DAS LLC employs its own engineers, DAS LLC hired Yilmaz SMA as an outside consultant because Yilmaz SMA represented it had expertise with this type of Project and it could focus exclusively on the Project while DAS LLC engineers could focus on other matters.

6.   The Purchase Order sets forth the four interrelated tasks and associated costs that Yilmaz SMA agreed to provide DAS LLC related to the Project:

| | | |
|---|---|---|
| Task 1: | Power Source Sub System Analysis and Program Development | $32,000 |
| Task 2: | Electrical Power Demand Loads Sub System Analysis and Program Development | $48,000 |
| Task 3: | Integrated System Analysis and Program Development | $24,000 |
| Task 4: | Documentation/Training | $16,000 |

See Purchase Order, attached to the Proof of Claim as Attachment A. DAS LLC agreed to pay Yilmaz SMA the amount associated with each task upon the timely and satisfactory completion of such task.

7.   Task 1 required Yilmaz SMA to provide analysis and models related to the various components that represent the power system, i.e., *sources* of power and their distributors, in automobiles. Task 2, on the other hand, required Yilmaz SMA to provide analysis and models for various components that are *users* of power in automobiles. Task 3 required Yilmaz SMA to provide a Program that allows DAS LLC engineers to combine the component models from Tasks 1 and 2 into any desired electrical architecture they needed for a particular vehicle. Task 4 required Yilmaz to prepare and timely deliver a final report describing the analysis and results from Task 1 through Task 3 and to conduct onsite training regarding the Program.

A.   <u>Yilmaz SMA Did Not Timely And Satisfactorily Complete Task 1</u>.

8.   With respect to Task 1, Yilmaz SMA agreed to create component models for all aspects of the electrical power system of a vehicle that would ultimately provide building blocks for a larger simulation program. The work product Yilmaz SMA delivered to DAS LLC failed to meet the requirements of the Purchase Order.

4

9. As an initial matter, Yilmaz SMA's work was untimely and incomplete. Yilmaz SMA agreed to complete all tasks within 6 months of the commencement of the Project on August 16, 1999, i.e., by February 2000. See Kickoff Memorandum, attached to the Response as Attachment 2. However, Yilmaz SMA's own records reflect that it reduced the first invoice for Task 1 work from $32,000 to $24,000 in recognition of the fact that at best only 75% of the work on Task 1 was completed by April 28, 2000 and that there was an error in at least one component model it provided DAS LLC. See Response, p. 4; see also Invoice 1, attached to Proof of Claim as Attachment B. In any event, on June 14, 2000, DAS LLC paid Yilmaz SMA $24,000 for services related to the Project rendered through April 28, 2000. Yilmaz SMA had not timely and satisfactorily completed Task 1 by the date DAS LLC paid Invoice 1.

10. Moreover, it was only with extensive assistance from DAS LLC's own in house resources that Yilmaz SMA even completed any work of Task 1. During the Project, DAS LLC expended a considerable amount of in house resources to educate Yilmaz SMA about basic technologies related to the Project that Yilmaz SMA had represented to DAS LLC it had expertise in prior to commencement of the Project. For example, DAS LLC provided Yilmaz SMA all information it needed to develop analyses and models as contemplated for the Project. Nevertheless, DAS LLC engineers had to run shadow models to explain various aspects of the process to Yilmaz SMA. Yilmaz SMA was providing to DAS LLC engineers only what they had already modeled and provided to Yilmaz SMA. In fact, DAS LLC's engineers working with the same information as Yilmaz SMA were able to develop just such models for the Project. Yilmaz SMA's work therefore was of no value or use to DAS LLC.

11. Furthermore, the models and analyses Yilmaz SMA provided were of no use to DAS LLC because they were in hard copy format and in a software language with which

5

DAS LLC engineers were unfamiliar.  Even putting aside the untimely nature of the work and DAS LLC's extensive assistance with its development, Yilmaz SMA only provided materials to DAS LLC in hard copy format despite an agreement to the contrary and repeated requests for electronic models.  As a result of Yilmaz SMA's failure to provide models in electronic format, DAS LLC engineers could not use or test any of the work that Yilmaz SMA submitted.

           12.      Yilmaz SMA also insisted at the onset of the Project that it should develop the Program in CSSL-V, a software system not generally used by DAS LLC or the industry. DAS LLC only agreed to the use of CSSL-V on the condition that Yilmaz SMA convert the component models (and later the Program) into DAS LLC's preferred software programs of Saber or Matlab/Simulink and also provide DAS LLC with the CSSL-V codes that it used for the Project.  Yilmaz SMA never complied with those obligations.

B.     <u>Yilmaz SMA Did Not Timely And Satisfactorily Complete Task 2</u>.

           13.      With respect to Task 2, Yilmaz SMA agreed to create component models for all aspects of a vehicle that demand/utilize power and would ultimately provide the building blocks for a larger simulation Program.  Even if Yilmaz SMA provided DAS LLC some component models within Task 2, any alleged work product it provided failed to meet the requirements of the Purchase Order.  Similar to Task 1, the work was untimely.  Task 2 was scheduled for completion in four months.  Yet the task remained incomplete as of September 14, 2000 – nearly 13 months after commencement of the Project.  <u>See</u> Invoice 2, attached to the Proof of Claim as Attachment C; <u>see also</u> Kickoff Memorandum, attached to the Response as Attachment 2.

           14.      Moreover, any alleged work submitted by Yilmaz SMA related to Task 2 suffered from the same infirmities as those submitted with respect to Task 1.  For example,

Yilmaz SMA required excessive assistance from DAS LLC engineers, provided models to DAS LLC only in hard copy format, and used a software language unfamiliar to DAS LLC.

C.    Yilmaz SMA Did Not Timely And Satisfactorily Complete Tasks 3 and 4.

15.    With respect to Tasks 3 and 4, Yilmaz SMA agreed to provide DAS LLC the ability to integrate all the component models into a user friendly computer simulation Program and conduct training related to the Program. As of September 14, 2000, Yilmaz SMA had not even completed Tasks 1 or 2, i.e., the building blocks for the Program, let alone development of the Program itself or providing any related documentation or training to DAS LLC. In fact, Yilmaz SMA itself admits as much in its Response when it states that the "final technical report [was] written by the SMA team after the cancellation of the [Purchase Order]." See Response, p. 6.

D.    Yilmaz SMA's Claim Is Excessive and Unsubstantiated.

16.    DAS LLC terminated Yilmaz SMA's services with respect to the Project on September 14, 2000 ("Termination Letter") because Yilmaz SMA did not meet its obligations under the Purchase Order. Notably, Yilmaz SMA had not completed Task 1 or any of the remaining tasks by the date of the Termination Letter – almost 13 months after the Project started on August 16, 1999 – notwithstanding that Yilmaz SMA had agreed all tasks would be finished within 6 months of the commencement of the Project. See Kickoff Memorandum, attached to the Response as Attachment 2. Accordingly, DAS LLC was not obligated to compensate Yilmaz SMA for services invoiced and therefore the Claim is excessive and unsubstantiated.

## Conclusion

17.    In short, Yilmaz SMA's work related to Tasks 1 and 2 should have been building blocks for Task 3 and part of a comprehensive Program that gave DAS LLC engineers

7

the ability in a user friendly manner to manipulate the electrical components (e.g., building blocks) and/or external conditions to simulate a range of results in vehicles. Instead, Yilmaz SMA provided only a limited number of stand-alone components in hard copy format (that DAS LLC had already developed in house) with no process for integration and with no ability to conduct user friendly computer simulation. DAS LLC already has paid Yilmaz SMA $24,000 which more than compensates Yilmaz SMA. Simply put, Yilmaz SMA did not timely and satisfactorily perform the work it promised to do. Accordingly, DAS LLC has no obligation to pay Yilmaz SMA additional compensation and the Claim should be disallowed and expunged.

Reservation of Rights

18.     This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order disallowing and expunging the Claim and granting the Debtors such other and further relief as is just.

Dated: New York, New York
       February 14, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr.
   John Wm. Butler, Jr. (JB 4711)
   John K. Lyons (JL 4951)
   Albert L. Hogan III (AH 8807)
   Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
   Kayalyn A. Marafioti (KM 9632)
   Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession