Hearing Date and Time: March 22, 2007 at 10:00 a.m.
Response Date and Time: March 15, 2007 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                          :
        In re                             :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                                          :     (Jointly Administered)
                Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' NINTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) UNTIMELY CLAIMS, AND (D) CLAIMS SUBJECT TO MODIFICATION

("NINTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And

Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not

Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To

Modification (the "Ninth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.      The Chapter 11 Filings

        1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

        2.      On October 17, 2005, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders.  No trustee or examiner has been

appointed in the Debtors' cases.

        3.      This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

        4.      The statutory predicates for the relief requested herein are section 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

2

B.    Current Business Operations Of The Debtors

5.    As of December 31, 2005, Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion and global assets of approximately $17.0 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]    The aggregated financial data used in this objection generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.        The Debtors' Transformation Plan

          11.     On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

          12.     On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

5

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's achievement of consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

            13.      On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  Although much remains to be accomplished in the

Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course

that should lead to a consensual resolution with their U.S. labor unions and GM while providing

an acceptable financial recovery framework for the Debtors' stakeholders.

            14.      Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

E.     Bar Date, Proofs Of Claim, And Omnibus Claims Objections

15.     On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor (collectively, the "Claimants") to file a proof of claim form with respect to each such Claim.

16.     On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

17.     In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

7

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,500 proofs of claim (the "Proofs of Claim") were filed

against the Debtors in these cases.  To date, the Debtors have filed four omnibus claims

objections that objected to claims on procedural grounds[3] and three omnibus claims objections

that objected to claims on substantive grounds.[4]  Pursuant to such claims objections, the Court

has disallowed and expunged approximately 7,282 Proofs of Claim.

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

---

[3]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; and the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 6571) on January 12, 2007.

[4]    The Debtors filed their Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records  (Docket No. 6100) on December 8, 2006; and Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007.

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (Docket No. 5453) (the "Claims Objection Procedures Motion"), in which the Debtors requested this Court, among other things, approve certain procedures for contested claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

      20.     In this Ninth Omnibus Claims Objection, the Debtors are objecting to 1,836 proofs of claim.[5]

Relief Requested

      21.     By this Objection, the Debtors seek entry of an order pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007 (a) disallowing and expunging those Claims set forth on Exhibit A-1 attached hereto because they contain insufficient documentation in support of the Claims asserted, (b) disallowing and expunging the Claim set forth on Exhibit A-2 attached hereto because it contains insufficient documentation in support of the Claim asserted and was untimely pursuant to the Bar Date Order, (c) disallowing and expunging those Claims set forth on Exhibit B-1 attached hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records, (d) disallowing and expunging those Claims set

---

[5]    Contemporaneously with the Ninth Omnibus Claims Objection, the Debtors are filing the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (the "Eighth Omnibus Claims Objection").  In the Eighth Omnibus Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims, (b) are duplicative of the consolidated trustee claims, (c) were filed by equity holders solely on account of their stock holdings, and (d) are protective claims.  The Debtors are objecting to 236 proofs of claim in the Eighth Omnibus Claims Objection.

forth on <u>Exhibit B-2</u> attached hereto because they assert liabilities or dollar amounts that are not

reflected on the Debtors' books and records and were untimely pursuant to the Bar Date Order, (e)

disallowing and expunging the Claims set forth on <u>Exhibit C</u> attached hereto because they were

untimely pursuant to the Bar Date Order, and (f) modifying the asserted amount or classification,

and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on <u>Exhibit</u>

<u>D</u> attached hereto.

Objections To Claims

A.    <u>Insufficiently Documented Claims</u>

22.    During their review, the Debtors discovered that certain Proofs of Claim

that were filed in these cases do not include sufficient documentation to support the claim

asserted (the "Insufficiently Documented Claims").  This deficiency in documentation has made

it impossible for the Debtors meaningfully to review the asserted Claims.  Furthermore, the

Debtors contacted each Claimant which filed an Insufficiently Documented Claim (other than

those Claimants which filed a blank proof of claim form), and the Debtors received no additional

documentation from such Claimants.[6]

23.    The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of <u>prima facie</u> validity pursuant to Bankruptcy Rule 3001(f) .  <u>In re</u>

<u>WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); <u>see also</u> <u>In re Allegheny Intern., Inc.</u>, 954 F.2d

---

[6]    Claimants which responded to the Debtors' communications and provided additional information are not
included as part of this objection.

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit A-1 to provide sufficient documentation to permit an understanding of the basis for

their Claims, those Claims do not make out a prima facie case against the Debtors.

            24.    The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against

the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence

of the Debtors' liability for the Claim.  In addition, the Insufficiently Documented Claims listed

on Exhibit A-2 were received by the Debtors after the Bar Date (the "Untimely Insufficiently

Documented Claim").  With respect to the Untimely Insufficiently Documented Claim, the

Debtors also object to such Claim on the basis that it was not timely filed pursuant to the Bar

Date Order.[7]

---

[7]    The Bar Date Order provides, in relevant part:

       Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails
       to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and
       enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in
       an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-
       contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set
       forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon,
       or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in

                                                                                              *(cont'd)*

25.      Attached hereto as <u>Exhibit A-1</u> is a list of the Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the claim.  Identified on <u>Exhibit A-2</u> are the Untimely Insufficiently Documented Claims, which the Debtors have concluded do not contain sufficient documentation to permit an understanding of the basis for the Claim and, in addition, were not timely filed pursuant to the Bar Date Order.[8]  In the event that this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claims and Untimely Insufficiently Documented Claim at a later date on any basis whatsoever.

26.      Accordingly, the Debtors (a) object to both the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim and (b) seek entry of an order disallowing and expunging both the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim in their entirety.

B.      <u>Claims Not Reflected On The Debtors' Books And Records</u>

27.      During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records ("Books and Records Claims").  In addition, the Debtors determined that certain other Proofs of Claim also assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and were not timely filed pursuant to the Bar Date

_____
*(cont'd from previous page)*
        respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from
        any and all indebtedness or liability with respect to such Unscheduled Claim.

   Bar Date Order ¶ 11.

[8]     The Untimely Insufficiently Documented Claims listed on <u>Exhibit A-2</u> were not included as part of the Motion
        For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed,
        dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

Order ("Untimely Books and Records Claims").  The Debtors believe that the parties asserting

both Books and Records Claims and Untimely Books and Records Claims are not creditors of

the Debtors.

28.    The bases for determining that the Debtors are not liable for an asserted

Claim include, but are not limited to, the following: (a) the Debtors' books and records do not

reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the

Debtors' books and records reflect that the Debtors have assumed the Claimant's executory

contract and cured any prepetition claims relating thereto, (c) the Debtors' books and records

reflect that the Claim has been paid pursuant to a prior order of this Court, (d) the Debtors' books

and records reflect that the Claimant has signed a release and/or waiver stating that the Debtors

are not liable to the Claimant for such Claim, (e) the Debtors' books and records reflect that the

asserted Claim was properly paid prior to the commencement of the Debtors' cases, and (f) the

Claim constitutes a postpetition liability that has been paid by the Debtors in the ordinary course

of the Debtors' businesses.

29.    A claimant's proof of claim is entitled to the presumption of prima facie

validity under Bankruptcy Rule 3001(f) only until such time an objecting party refutes "'at least

one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL

3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the

burden reverts to the claimant to prove the validity of the claim by a preponderance of the

evidence.'"  Id.  The Debtors' books and records refute an essential allegation as to each Books

and Records Claims, namely, that the claims asserted therein are owed by any of the Debtors.

30.    Attached hereto as Exhibit B-1 is a list of the Books and Records Claims

that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto

as Exhibit B-2 is a list of the Untimely Books and Records Claims which the Debtors have also

identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely

Books and Records Claims not only because the Debtors have no liability in respect thereof, but

also because the Claims were not timely filed pursuant to the Bar Date Order.[9]  If this Court does

not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to

further object to any or all of the Books and Records Claims and the Untimely Books and

Records Claims at a later date on any basis whatsoever.

31.    Accordingly, the Debtors (a) object to both the Books and Records Claims

and the Untimely Books and Records Claims and (b) seek entry of an order disallowing and

expunging both the Books and Records Claims and the Untimely Books and Records Claims in

their entirety.

C.    Untimely Claims

32.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim filed against the Debtors were received by the Debtors after

the Bar Date ("Untimely Claims").  With respect to the Untimely Claims, the Debtors object to

such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.

Attached hereto as Exhibit C is a list of Untimely Claims.  The Debtors seek to have such

Untimely Claims disallowed and expunged as Claims that were not timely filed pursuant to the

Bar Date Order.[10]

---

[9]    The Untimely Books and Records Claims listed on Exhibit B-2 hereto were not included as part of the Claims
Timeliness Motion.

[10]    None of the Untimely Claims listed on Exhibit C hereto was included as part of the Claims Timeliness Motion.

D.    Claims Subject To Modification

33.    During the Debtors' review of the Proofs of Claim, the Debtors have determined that certain Claims asserted against the Debtors (a) are overstated, including as a result of the assertion of invalid unliquidated claims, or were denominated in a foreign currency, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured, administrative, or priority status (collectively, the "Claims Subject to Modification").

34.    Based on an initial review of the Claims Subject to Modification, the Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth on Exhibit D attached hereto.  Moreover, in some cases, the Debtors have determined that such Claims should be re-classified and/or asserted against a different Debtor entity as set forth on Exhibit D attached hereto.    The bases for placing a Claim in the Claims Subject to Modification category of objection include, but are not limited to, the following:  (a) the asserted Claim does not account for amounts that may have been paid or credited against such Claim prior to the commencement of these cases, (b) may include post-petition liabilities, (c) the asserted Claim does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases, (d) the asserted Claim was denominated in foreign currency in violation of the Bar Date Order,[11] (e) the asserted Claim was docketed and filed against the wrong Debtor entity, and/or (f) the asserted Claim is misclassified as a priority or secured claim.  Thus, the Debtors seek to (i) modify the dollar amount of the Claims Subject to Modification to a fully liquidated, U.S.-denominated amount consistent with the Debtors' books and records and/or the liquidated amounts requested by the Claimants (thus eliminating

---

[11]    See Bar Date Order ¶ 3(d) ("Proofs of Claim must . . . (iv) be denominated in United States currency. . .").

the unliquidated component), as appropriate, (ii) change the identity of the Debtor against which

the Claim is asserted, and/or (iii) appropriately reclassify the Claim.

35.     As stated above, a claimant's proof of claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the Unsubstantiated Claims,

the Debtors' books and records refute that certain of the claims asserted in each Claim Subject to

Modification are actually owed by any of the Debtors.

36.     Set forth on Exhibit D attached hereto is a list of Claims Subject to

Modification that the Debtors believe should be modified to solely assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Claim Subject to

Modification, Exhibit D reflects the amount, classification, and Debtor asserted in the Claimant's

Proof of Claim in a column titled "Claim As Docketed"[12] and the proposed modified dollar

amount, classification, and Debtor for the Claim in a column titled "Claim As Modified."

37.     The Debtors object to the amount, classification, and/or Debtor for each

Claim Subject to Modification on Exhibit D and request that each such Claim be amended to

reflect the amount, classification, and Debtor listed in the "Claim As Modified" column of

Exhibit D.  Thus, no Claimant listed on Exhibit D would be entitled to (a) recover for any Claim

Subject to Modification in an amount exceeding the dollar value listed as the "Modified Total"

Amount for such Claim on Exhibit D, (b) assert a classification that is inconsistent with the

classification that is listed in the "Claim As Modified" column, and/or (c) assert a claim against a

---

[12]    As a result of the manner in which Claims are docketed by the Claims Agent, Claims asserted in foreign
currency may be listed on Exhibit D as $0.00.  In addition, the Asserted Claim Amount on Exhibit D reflects
only asserted liquidated claims.

Debtor whose case number is listed in the "Claim As Modified" column on <u>Exhibit D</u>, subject to

the Debtors' right to further object to each such Claim Subject to Modification.  For clarity,

<u>Exhibit E</u> displays the formal name of each of the fifteen Debtor entities and their associated

bankruptcy case numbers referenced in <u>Exhibit D</u>.

38.    The inclusion of the Claims Subject to Modification on <u>Exhibit D</u>,

however, does not reflect any view by the Debtors as to the ultimate validity of any such Claim.

The Debtors therefore expressly reserve all of their rights to further object to any or all of the

Claims Subject to Modification at a later date on any basis whatsoever.

39.    Accordingly, the Debtors (a) object to the Asserted Claim Amount,

Classification, and/or Debtor for the Claims Subject to Modification and (b) seek an order

modifying the Claims Subject to Modification to the Modified Claim Amount, Debtor, and/or

Classification as set forth on <u>Exhibit D</u>.

<u>Separate Contested Matters</u>

40.    Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Ninth Omnibus Claims Objection, each

such Claim and the objection to such Claim asserted in this Ninth Omnibus Claims Objection

will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule

9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with

respect to an objection asserted in this Ninth Omnibus Claims Objection will be deemed a

separate order with respect to each Claim.

<u>Reservation Of Rights</u>

41.    The Debtors expressly reserve the right to amend, modify, or supplement

this Ninth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or

17

any other Claims (filed or not) which may be asserted against the Debtors, including without

limitation the right to object to any claim on the basis that it has been asserted against the wrong

Debtor entity.  Should one or more of the grounds for objection stated in this Ninth Omnibus

Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds

or on any other grounds that the Debtors discover during the pendency of these cases.  In

addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that

such Claim has been paid.

Responses To Objections

42.    Responses to the Ninth Omnibus Claims Objection are governed by the

provisions of the Claims Objection Procedures Order.  The following summarizes the provisions

of that Order, but are qualified in all respects by the express terms thereof.

A.    Filing And Service Of Responses

43.    To contest an objection, responses (a "Response"), if any, to the Ninth

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

18

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be received no later than 4:00 p.m.

(prevailing Eastern time) on March 15, 2007.

B.    Contents Of Responses

44.    Every Response to this Ninth Omnibus Claims Objection must contain at a

minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the proof of claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant shall disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

C.    Timely Response Required

45.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on March 22, 2007 at 10:00 a.m. (prevailing Eastern time). The procedures set forth in the Claims Objection Procedures Motion will apply to all Responses and hearings arising from this Ninth Omnibus Claims Objection.

46.    Only those Responses made in writing and timely filed and received will be considered by the Court. If a Claimant whose proof of claim is subject to the Ninth Omnibus Claims Objection and who is served with the Ninth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the Ninth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors will seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures Order.

47.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to provisionally accept the Claimant's Asserted

<u>Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the</u>

<u>Bankruptcy Code for all purposes other than allowance, but including voting and establishing</u>

<u>reserves for purposes of distribution, subject to further objection and reduction as appropriate</u>

<u>and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the

Claims Objection Procedures Order.

<u>Replies To Responses</u>

48.     Replies to any Responses shall be governed by the Claims Objection

Procedures Order.

<u>Service Of Ninth Omnibus Claims Objection Order</u>

49.     Service of any order with regard to this Ninth Omnibus Claims Objection

will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

50.     Questions about this Ninth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the</u>

<u>Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

51.     Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

21

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418)

and the Claims Objection Procedures Order.

52.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Ninth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of

Objection To Claim to be sent to the Claimants listed on <u>Exhibit D</u> is attached hereto as <u>Exhibit

F</u>.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on <u>Exhibits A</u>

through <u>C</u> is attached hereto as <u>Exhibit G</u>.  Claimants will receive a copy of this Ninth Omnibus

Claims Objection without <u>Exhibits A</u> through <u>D</u> hereto.  Claimants will nonetheless be able to

review such exhibits free of charge by accessing the Debtors' Legal Information Website

(www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

Memorandum Of Law

53.    Because the legal points and authorities upon which this Objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

granting the relief requested herein and (b) granting the Debtors such other and further relief as is

just.

Dated:    New York, New York
          February 15, 2007

                                          SKADDEN, ARPS, SLATE, MEAGHER
                                             & FLOM LLP

                                          By:    /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 9331)
                                              Ron E. Meisler (RM 3026)
                                          333 West Wacker Drive, Suite 2100
                                          Chicago, Illinois 60606

                                               - and -

                                          By:    /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                          Four Times Square
                                          New York, New York 10036

                                          Attorneys for Delphi Corporation, et al.,
                                             Debtors and Debtors-in-Possession

23