WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
Patrick B. Howell (State Bar No. 1008527)
Ann M. Maher (State Bar No. 1000529)
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Contact Person Email: phowell@whdlaw.com

Attorneys for HB Performance Systems, Inc.

Hearing Date: March 21, 2007

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------- x
                                :
In re:                          :
                                :   Chapter 11
   DELPHI CORPORATION, et al.,  :
                                :   Case No. 05-44481 (RDD)
         Debtors.               :
                                :   (Jointly Administered)
                                :
------------------------------- x

**HB PERFORMANCE SYSTEMS, INC. MOTIONS TO I) REQUIRE DEBTORS
TO INITIATE AN ADVERSARY PROCEEDING AND II) TO DISMISS WITH
PREJUDICE DEBTORS' AFFIRMATIVE CLAIM FOR MONEY DAMAGES AGAINST
CLAIMANT;**

**ALTERNATIVELY,**

**HB PERFORMANCE SYSTEMS, INC.'S SUPPLEMENTAL RESPONSE TO DEBTORS'
OBJECTIONS TO CLAIM NO. 14012 (HB PERFORMANCE SYSTEMS, INC.)**

HB Performance Systems, Inc. ("HB"), an unsecured creditor in part and a partially secured creditor under 11 U.S.C. §§ 553 and 506, by its attorneys, Whyte Hirschboeck Dudek S.C. submits its Motions to require the Debtors to initiate an adversary proceeding under Bankruptcy Rule 3007 and if not, to preclude the Debtors from pursuing any affirmative claim against HB Performance Systems, Inc. Alternatively, until such time as the requirements of Rule 3007 are implemented, HB Performance Systems, Inc. submits its Supplemental Response in

WHD\5143039.1

support of its claim.

## MOTION UNDER RULE 3007 TO INITIATE AN ADVERSARY PROCEEDING

1. The Rules of Bankruptcy Procedure, Rule 3007 states, in its pertinent part:

> ...(I)f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

2. In its objection documents to the claim of HB and specifically, the Debtor's Statement of Disputed Issues with Respect To Proof of Claim Number 14012 (HB Systems LLC), the Debtor states at page 5:

> C. Not Only Should The Claim Be Disallowed And Expunged, But The Debtors Should Recover On A Claim For Damages Against The Claimant
>
> 8. Because DAS LLC complied with all terms and fully performed under the Agreement, the Claim should be disallowed and expunged. **Moreover, the Debtors have a claim against the Claimant for breach of contract and should collect the unpaid fees due under the Agreement.** As of January 2005, the Claimant stopped making the $75,000 monthly payments due under the Agreement. The Claimant did not terminate or otherwise seek to modify its obligations to make these payments. The Claimant has not remedied this breach and **therefore still owes the Debtors pursuant to the Agreement**. (Emphasis supplied)

3. Bankruptcy Rule 7001 states that the following are adversary proceedings:

> (1) a proceeding to recover money or property .....
>
> ……..
>
> (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing;

4. The Debtors clearly stake out the position that they are owed money by the Claimant and specifically indicate such in the documents filed with the Court as required under the Claims Objection Procedural Order. The purpose of Rule 3007 is to bring together all claims which the Debtor and the Claimant may have as against the other and resolve such competing claims in a single proceeding.

2

5. The Debtors have been requested to comply with Rule 3007 and proceed with the consolidated claims of the parties as an adversary proceeding. The Debtors have refused to initiate an adversary proceeding despite the mandate of Rule 3007 and the fact that the Debtors assert a money claim against this Claimant.

6. That is, the Debtors' demand and the Claimant's response requires the initiation of an adversary proceeding under Rules 3007 and 7001(1) and (9).

7. In the event the Debtors' persist in their refusal to initiate an adversary proceeding and consolidate the mutual claims of these parties as required under the Rules, HB moves to preclude the Debtors from further asserting or prosecuting any affirmative claim against HB under the Agreement. The failure of the Debtors to prosecute its demand for relief of the kind specified under Rule 7001 which it raised in its objection pleadings will effect a waiver of that claim and preclude Debtors from asserting that claim at any time in the future. *In re Mathiason, 16 F.3d 234 (8th Cir. 1994)* The entire adjustment or restructuring of debtor-creditor rights may be determined with finality in one forum. *In re Treadway, 117 B.R. 76 (Bankr. D.Vt. 1990)*

8. Even if a formal adversary proceeding is not required to be filed by the Debtors, the procedures applicable to adversary proceedings under Rule 7001 et. seq. will apply. The Debtors efforts to force this matter through the Claims Procedure mandates is improper and impermissible under applicable Rules.

### SUPPLEMENTAL RESPONSE TO DEBTORS OBJECTION TO CLAIM NO. 14012

I. **DESCRIPTION OF CLAIM**

9. HB Systems, Inc., formerly known as Hayes Brake, Inc. ("HB") entered into an Engineering Services Agreement ("Agreement") with Delphi Automotive Systems, LLC (the

3

"Debtor") on August 1, 2002, wherein the Debtor agreed to assist HB with motorcycle brake systems HB supplied to Harley-Davidson, Inc. ("Harley") for use on Harley motorcycles.

10. Pursuant to the Agreement, the Debtor agreed to make qualified engineers and support staff available to HB beginning August 1, 2002 for an average of 10,000 hours per year.

11. In return, HB agreed to pay the Debtor for services it agreed to supply pursuant to the terms of the Agreement. Pursuant to Exhibit III to the Agreement, <u>Compensation</u> at paragraph 1, "the total payment to Delphi shall be a minimum of $1.0 million per year, unless Hayes Brake gets less than 100% of the 2007 Harley-Davidson Platform. If Hayes Brake gets less than 100%, then this Agreement shall be subject to renegotiation."

12. HB and the Debtor were notified in early 2003 that HB would not receive 100% of the 2007 Harley Platform. Pursuant to the Agreement, upon receiving this notification, HB attempted to renegotiate the Agreement, however the Debtor refused. In the alternative, the Debtor assured HB that it would continue to provide the 10,000 hours of service to HB per year.

13. During contract year 2002-2003, the Debtor provided 3,673 hours of service to HB. During contract year 2003-2004, the Debtor provided 5,281 hours of service to HB. During contract year 2004-2005, the Debtor provided only 1,753 hours of service.

14. Despite not providing the required hours of service, HB continued to pay the Debtor $75,000 per month as required in the Agreement through December 2004. Due to the material breach by the Debtor in not providing the required number of service hours in the past three contract years, HB stopped making monthly payments in January 2005.

15. On June 3, 2005, the Debtor sent a letter to HB indicating it had not received monthly payments for January 2005 through June 2005 per the Agreement for a total amount due of $450,000 and demanding payment of same no later than June 15, 2005.

4

16.     On June 16, 2005, after HB refused to pay additional monies under the Agreement for service hours it was not receiving, the Debtor sent a Notice of Termination indicating the Agreement would terminate in June 2007. Also in this letter, the Debtor indicated it would communicate directly with Harley with respect to the Delphi/HB relationship, a direct violation of the confidentiality agreement which was in place.

17.     In a September 7, 2005 letter from HB to the Debtor, HB indicated that due to the Debtor contacting Harley directly, in breach of the Agreement, the Agreement was terminated immediately and it demanded immediate payment of $1,778,100 pursuant to Paragraph 4.1(g) of the Agreement which states "In case of termination, the Parties shall reimburse the other Party ... 2) for amounts paid for which the other party has not already received the associated deliverables ...".

18.     In a September 27, 2005 letter the Debtor declined making the $1,778,100 payment, contested the immediate termination of the Agreement and declined to meet with HB in an effort to resolve its differences.

19.     As a result of the impasse between the Debtor and HB, HB commenced litigation in Ozaukee County, Wisconsin Circuit Court as Case No. 05-CV-419 on September 28, 2005. A true and correct copy of the Ozaukee County Complaint was attached to the Proof of Claim filed on July 31, 2006 and is incorporated herein by reference. The Debtor identified this litigation in response to Question 4(a) of the Statement of Financial Affairs filed in these proceedings.

20.     On October 8, 2005 and October 14, 2005, the Debtor commenced its Chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of New York, thereby staying the Ozaukee County Wisconsin litigation.

WHD\5143039.1

21. As a result of the Debtor's breach of the Agreement, HB has suffered damages in the amount of at least $1,778,100 which includes payments made to the Debtor for which no corresponding service was received and lost value, for which it filed Proof of Claim No. 14012 on July 31, 2006.

## II. LEGAL BASIS FOR ALLOWANCE OF CLAIM

22. The specific legal basis for HB's proof of claim is the existence of the Agreement between HB and the Debtor followed by the Debtor's breach of the Agreement causing damages to HB as a direct and proximate result of the Debtor's breaches.

23. In particular, the Debtor breached the Agreement by:

   a. failing to renegotiate it as the result of the fact that, in 2003, Harley did not award HB with 100% of the 2007 Platform;

   b. filing to provide HB with an average of 10,000 hours of service per year; and

   c. notifying Harley that it was no longer doing business with HB.

24. The failure of the Debtor to perform its obligations under the Agreement and specifically, the failure to provide the required engineering services and the failure to engage in good faith efforts to renegotiate the Agreement when Harley failed to award the specific brake work to HB was a material breach by the Debtor. This material breach provided a legal basis for HB to cease its payments under the Agreement. *Entzminger v. Ford Motor Co. 47 Wis. 2d 751, 177 N.W. 2d 899 (1970); Restatement (Second) of Contracts §241 (1979).*

25. The Debtor's acknowledged failures under the Agreement can in no way be considered substantial performance of its obligations set forth in the Agreement. The Debtor can point to no legal excuse for not performing, providing sufficient grounds for the damages claimed by HB. *Restatement (Second) of Contracts § 236 (1979)*

WHD\5143039.1

26. The Debtors were provided repeated and ample opportunity to cure but even if it could be argued that the Debtors were without such notice, such fact is irrelevant to preserving HB's claim for damages due to the Debtor's breach. *Steele v. Pacesetter Motor Cars, Inc. 267 Wis. 2d 873, 672 N.W. 2d 141 (Wis. App. 2003)* Wisconsin law is clear that a material breach of the contract -- one that deprives the non-breaching party of the benefit reasonably expected -- releases the non-breaching party from performance. *State v. Dielke, 274 Wis. 2d 595, 682 N. W. 2d 945 (2004)*

27. While the Agreement is silent on the choice of law, the Agreement does contemplate that the place of performance is Wisconsin and Wisconsin would appear to have the most significant relationship with the subject matter of the Agreement. In any event, the contractual principles involved are well established in any jurisdiction and Michigan law mirrors Wisconsin law on these issues. See *Blazer Foods, Inc. v. Restaurant Properties, Inc. 259 Mich. App. 241, 673 N. W. 2d 805 (2004)* (When one party to a contract materially breaches the contract by failing to perform duties under the contract, the other party can consider the contract terminated and seek damages); *Michaels v Amway Corporation 206 Mich. App. 644, 522 N. W. 2d 703 (1994)* (The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for any alleged subsequent breach)

## III. EVIDENCE UPON WHICH THE CLAIM IS BASED

28. The evidence upon which HB's claim is based is set forth in the Affidavit of Rand McNally, President and CEO of HB and the Declaration of Russell Dudan, Chief Financial Officer of HB. The Affidavit and Declaration of these witnesses have attached Exhibits as more fully described in the respective Declarations which support the testimonial evidence.

WHD\5143039.1

29.     The Affidavit, Declaration and the attached exhibits demonstrate what is, at root, a very straightforward breach of the Agreement by the Debtor. The Agreement required that over the term of the Agreement, however long that might be, the Debtor would provide on the average 10,000 hours of service per year. There can be no reading of the undisputed facts to even suggest that the Debtor came close to complying with its obligations in this regard.

30.     Nevertheless, the Affidavit and Declaration demonstrate that HB continued to pay until it became apparent that the Debtor was not going to provide those service hours despite repeated assurances by the Debtor that it would comply with the Agreement. HB paid $1,778,100 in anticipation of receiving those hours and in reliance upon the Debtor's continued statements that the hours would be provided. The Debtor is simply not entitled to retain HB's money while breaching the Agreement.

31.     On the other hand, in the event that it is determined by the Court that HB is not entitled to essentially restitution for the amounts the Debtor has been unjustly enriched, then the Debtor is required to provide services to HB equal to the amounts which it has paid. The Affidavit and Declaration amply demonstrate however, that the Debtor has no intent to provide such services as required under the Agreement.

## IV.    **CONCLUSION**

The disputes between HB and the Debtor and the respective claims for money damages require that these matters be treated as an adversary proceeding. The Claims Procedural Order would not govern these proceedings accordingly. However, HB's Supplemental Response clearly demonstrates that HB's claim is valid and the testimonial evidence proves that the Debtor's material breach of the Agreement caused substantial damages to HB by paying $1,778,100 and not receiving the bargained for services. In the event that the Debtor does not

prosecute its asserted claim for damages at this time and within an adversary proceeding, the Debtor will have waived any claim against HB. The Court is respectfully requested to allow HB Performance Systems, Inc. Claim No. 14012 in the amount of $1,778,100.

Dated at Milwaukee, Wisconsin, this 8th day of February, 2007.

WHYTE HIRSCHBOECK DUDEK S.C.

By: /s/ Patrick B. Howell
Patrick B. Howell
State Bar No. 1008527
Ann M. Maher
State Bar No. 1000529

One of the attorneys for HB Performance Systems, Inc.

Of Counsel:

Whyte Hirschboeck Dudek S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
(414) 273-2100