**Hearing Date and Time: March 21, 2007 at 10:00 a.m.**

DICONZA LAW, P.C.
Gerard DiConza (GD 0890)
Lance A. Schildkraut (LS-9350)
630 Third Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 682-4940
Facsimile: (212) 682-4942

HASKIN LAUTER LARUE & GIBBONS
Kenneth E. Lauter, Esq.
Meghan Lehner, Esq.
255 North Alabama Street
Indianapolis, IN 46204
Telephone: (317) 955-9500
Facsimile: (317) 955-2570

*Co-Counsel for Creditor, Eva Orlik*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re                                                                   :
                                                                        :   Chapter 11
DELPHI CORPORATION, *et al.*,                                           :
                                                                        :   Case No. 05-44481 RDD
                    Debtors.                                            :
                                                                        :   (Jointly Administered)
                                                                        :
------------------------------------------------------------------------x

## SUPPLEMENTAL RESPONSE OF EVA ORLIK TO DEBTORS' THIRD OMNIBUS OBJECTION TO PROOF OF CLAIM NO. 12163

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Eva Orlik ("Claimant"), by her undersigned counsel, submits this Supplemental Response to the above-captioned Debtors' Third Omnibus Objection (the "Third Omnibus Objection") to certain claims, including Claimant's Proof of Claim No. 12163 (the "Proof of Claim"), and in support hereof, respectfully states that:

**Introduction**

1. The Proof of Claim asserts an unsecured claim in the amount of $1,374,322.08 (the "Claim") arising from a final default judgment entered against Delphi Automotive Systems in connection with an employment discrimination and retaliation action commenced by Claimant in the Indiana courts.

2. Specifically, Claimant filed suit in the Howard County, Indiana, Circuit Court (the "Trial Court") properly pleading causes of action for (a) national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., as amended by the Civil Rights Act of 1991 and (b) retaliatory discharge in violation of the common law of the State of Indiana. Claimant filed her Complaint on June 19, 2000 (Cause No. 3402-0006-CT-00438). The Debtors failed to answer the Complaint and, on April 30, 2001, Claimant filed Motion for Default Judgment. On May 2, 2001, the Trial Court entered default judgment against the Debtors.

3. On June 6, 2001, the Debtors filed a motion to set aside the default judgment alleging excusable neglect. After a hearing, the Trial Court by order dated September 1, 2004 denied the Debtors' motion to set aside the default judgment. The Debtors appealed the Trial Court's decision to the intermediate appellate courts of Indiana, the Indiana Court of Appeals (the "Court of Appeals"). The Court of Appeals affirmed the Trial Court's decision in Claimant's favor by decision and order dated July 26, 2005 (the "Decision and Order"). A copy of the Decision and Order is annexed as Exhibit "B" to Claimant's Proof of Claim. On or about August 25, 2005, the Debtors requested a rehearing of the Decision and Order. On September 21, 2005, the Court of Appeals denied the Debtors' request for rehearing.

4.  The Debtors filed their chapter 11 cases before a hearing was held to determine Claimant's damages pursuant to Ind. R. Tr. P. 55(B).

**Procedural Background**

5.  On October 31, 2006, the Debtors filed the Third Omnibus Objection, asserting a series of objections to various claims or groups of claims, including: (a) claims with insufficient documentation; (b) claims unsubstantiated by the Debtors' books and records; (c) claims unsubstantiated by the Debtors' books and records and also filed untimely; and (d) claims subject to modification, due primarily to the assertion of the claim in non-U.S. currency.

6.  In the Notice of Objection to the Proof of Claim submitted with the Third Omnibus Objection, the Debtors asserted a single objection to the Proof of Claim, to-wit, that it is an "unsubstantiated claim."

7.  On November 22, 2006, Claimant filed her Response to the Third Omnibus Objection. On January 3, 2007, the Debtors filed their Statement of Disputed Issues with Respect to Claim No. 12163 (the "Statement of Disputed Issues"). On January 8, 2007, Claimant and her representatives participated on a telephonic "Meet & Confer" with the Debtors and their representatives. A mediation session is currently scheduled for February 27, 2007.

8.  In the Statement of Disputed Issues, the Debtors raise several defenses to the Claim. The first defense raised by the Debtors is that Debtors' failure to answer the Complaint was caused by excusable neglect and, accordingly, the Debtors are not liable to Claimant. (Statement of Disputed Issues ¶¶ 5-6). As for their second defense, the Debtors assert that Claimant's asserted damages are unreasonable and cannot be substantiated by the evidence. (Statement of Disputed Issues ¶¶ 7-11).

9.      For the reasons set forth below, the Debtors' defenses are unavailing and, accordingly, this Court should deny the Third Omnibus Objection and allow the Proof of Claim in full.

### Discussion

**A.     By Their Default, the Debtors Have Foreclosed A Trial On The Merits**

10.     Since the Debtors' liability has been previously determined, the Debtors are precluded from attacking the merits of the Claim. Simply put, the Debtors may not relitigate an issue that has already been determined by the Indiana courts under principles of estoppel, res judicata and the Rooker-Feldman doctrine. To the extent the Debtors seek to relitigate the liability issue, this Court should abstain and allow the parties to proceed and complete the Indiana state court proceedings.[1]

11.     In their Statement of Disputed Issues, the Debtors argue that they did "not discriminate against Claimant based on her national origin," that "Claimant has failed to provide any evidence that the Debtors committed such discrimination," and that the "Debtors terminated Claimant's employment on September 1, 1999 due to poor job performance." (Statement of Disputed Issues ¶¶ 12-13). These claims, however, were the bases of the Complaint and the Debtors cannot now relitigate the default judgment by attempting to introduce substantive defenses attacking the validity of the Complaint in contravention of Indiana law. See Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin Cnty Com'rs, 507 N.E.2d 1001, 1008 (Ind. Ct. App. 1987) ("At a hearing on the issue of unliquidated damages after entry of default, the defendant may cross-examine plaintiff's witnesses and he may call witnesses of his own to

---

[1] To the extent the Debtors believe they may timely appeal the Court of Appeals Decision and Order, this Court should abstain and allow the parties to proceed in the Indiana courts to determine the Debtors' appeal rights and finalize the Claimant's damages. Claimant reserves all her defenses, including her right to contest the timeliness of any such appeal.

4

prove any matters which extenuate or mitigate damages alleged by the plaintiff. The defendant may not introduce a substantive defense.") (internal citations omitted).

12. After the default judgment was entered, the Debtor filed a Motion to reconsider the default judgment with the Trial Court. After a hearing on the Motion to reconsider the default judgment, the Trial Court refused to set it aside. The Debtors appealed the Trial Court's decision to the Court of Appeals and default judgment was affirmed. The Debtors then sought a rehearing of the Court of Appeals decision; that request was denied. Accordingly, the sole remaining issue before this Court is the amount of Claimant's damages, not the Debtors' liability. Since the Trial Court, by entering the default judgment, has ruled that the Debtors are liable to Claimant (which decision was affirmed by the Court of Appeals), the Debtors are precluded from relitigating that issue before this Court.

### 1. **The Rooker-Feldman Doctrine**

13. The Rooker-Feldman doctrine prohibits this Court from challenging the decisions of the Trial Court and Court of Appeals. Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress. ASARCO Inc. v. Kadish, 490 U.S. 605, 622 (1989).

14. The doctrine applies to those cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

5

Exxon Mobil Corp. v. Saudi Basic Ind. Corp., 544 U.S. 280, 284 (2005). This comity principle seeks to prevent "state and federal courts . . . [from] fighting each other for control of a particular case." Atl. Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970).

      15.     A claim is barred under the Rooker-Feldman doctrine:

> [F]irst, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that the federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005).

      16.     In Knapper, a debtor attempted to set aside state foreclosure sales on the basis that it was conducted in violation of her due process rights. As do the Debtors here, Knapper contended that service of process was defective. She did not contest the matters in state court and default judgments were entered. After filing for bankruptcy, Knapper filed an adversary proceeding seeking to set aside default judgments, foreclosures and sheriffs sales. The Third Circuit Court of Appeals found that Knapper could not have prevailed on her federal claim without obtaining an order that would negate the state court judgment and therefore ruled Knapper's "federal claim" was inextricably intertwined with the state court adjudications. Accordingly, Knapper's claim was barred by the Rooker-Feldman doctrine. Id. at 581.

      17.     Similar to the debtor in Knapper, here the Debtors seek to have the state default judgment ignored on the basis of alleged defective service. (See Statement of Disputed Issues ¶ 5). Like Knapper, the Debtors attempt to have this Court essentially negate Claimant's default judgment. The relief sought by the Debtors can only be predicated upon a voiding of the state court adjudication. That is precisely what Rooker-Feldman prohibits. Under the Rooker-

6

Feldman doctrine, this Court should not overrule the decisions of the Trial Court and Court of Appeals finding the Debtors liable to Claimant.

### 2. Res Judicata and Collateral Estoppel

18.    Pursuant to *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980); Landscape Properties, Inc. v. Whisenhunt, 127 F.3d 678 (8th Cir. 1997). The doctrine is intended to relieve parties of burdensome multiple lawsuits, prevent inconsistent decisions, and encourage reliance on adjudications.

19.    Collateral estoppel applies when a particular issue actually and necessarily is adjudicated and determined in a prior action and then is put into issue in a subsequent action between the same parties or those in privity with them. Kelleran v. Andrijevic, 825 F.2d 692 (2d Cir. 1987), cert. denied, 484 U.S. 1007 (1988); In re Gottheiner, 703 F.2d 1136 (9th Cir. 1983) State Farm Mutual Automobile Insurance Co. v. Glasgow, 478 N.E. 2d 918, 923 (Ind. App. 1985). Collateral estoppel serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue ... and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-29 (1971).

20.    The Second Circuit has ruled that a bankruptcy court must give preclusive effect to a state court default judgment entered prior to the bankruptcy filing. See Kelleran, 825 F.2d at 694. In Kelleran, the Second Circuit reversed the District Court and Bankruptcy Court decisions to disregard the preclusive effect of a state court default judgment. Id. In that case, certain creditors of the debtor obtained a prepetition judgment by default in state court against

7

the debtor. As here, the debtor attempted to reopen the default judgment in the state court but was unsuccessful. The New York Supreme Court entered judgment in favor of the creditors and scheduled a damages inquest. As here, before the damages inquest could take place, the debtor filed for bankruptcy relief. The creditors filed a proof of claim in the bankruptcy case seeking to enforce the state court default judgment. The debtor objected and the bankruptcy court found that the creditors' claims were without merit and refused to give the state court default judgment binding effect. The district court affirmed. Id.

21. On appeal the Second Circuit held that the bankruptcy court was bound to give preclusive effect to the default judgment to the same extent as would a New York court. The Second Circuit based its decision on the full faith and credit section of Title 28, United States Code. See 28 U.S.C. § 1738. Id. at 695. According to the Court, full faith and credit must apply to former state court adjudication unless one of two following exceptions exist: the judgment was obtained in fraud or through collusion. Id. at 694. In New York, as in Indiana, when a party defaults by failure to answer and the court orders an inquest as to damages, the defaulting litigant may not further contest the liability issues. Id. at 694 (citations omitted); see also In re Catt, 368 F.3d 789, 792 (7th Cir. 2004) (holding that underlying finding of fraud made against debtor in Indiana state court proceeding which culminated in entry of a default judgment against debtor was entitled to preclusive effect in subsequent bankruptcy proceeding.); Small v. Centocor, Inc., 731 N.E.2d 22, 28 (Ind. App. 2000) (applying Indiana law); Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin Cnty Com'rs, 507 N.E.2d 1001, 1008 (Ind. Ct. App. 1987) (applying Indiana law).

22.  Here, since the Debtors have not alleged, nor can they, that default judgment was obtained through fraud or collusion, this Court should give preclusive effect to the default judgment and uphold the Debtors' liability on the Complaint.

**B.  Claimant's Asserted Damages Are Reasonable and Based On Applicable Law**

23.  Claimant has properly plead causes of action for national origin discrimination and retaliation in violation of Title VII and the tort of retaliatory discharge in violation of Indiana state law.  Therefore, Claimant is entitled to the damages asserted in her Proof of Claim.

24.  The Debtors argue that Claimant is not entitled to damages for her Indiana state law claim alleging retaliatory discharge.  Specifically, the Debtors argue that "Claimant failed to state a claim upon which relief could be granted" because she has not "demonstrate[d] that [she] was discharged either for exercising a statutory right or for refusing to violate a statutorily imposed duty."  (Statement of Disputed Issues ¶ 7).  Again, the Debtors' argument must fail because Claimant is not required to *demonstrate* that her discharge was retaliatory, as default judgment has already been entered against the Debtors on this claim and therefore, liability determined.

25.  Additionally, the Debtors' argument fails because Claimant's Complaint properly states a cause of action for retaliatory discharge pursuant to Ind. R. Tr. P. 8.  Indiana is a notice pleading state and pursuant to Ind. R. Tr. P. 8, "to state a claim for relief . . . a pleading must contain: (1) a short and plain statement of the claims showing that the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled."  Ind. R. Tr. P. 8(A).  Claimant's Complaint satisfies both of these requirements.  The Debtors' argument appears to arise out of Ind. R. Tr. P. 12(B)(6), which prescribes dismissal of causes of action for failure to

9

state upon which relief can be granted, could have and should have been raised before the Trial Court.

26. As the Debtors note, relying on Frampton v. Central Indiana Gas, Co., 297 N.E.2d 425 (Ind. 1973) and McClanahan v. Remington Freight Lines, 517 N.E.2d 390 (Ind. 1988), Indiana recognizes causes of action for retaliatory discharge when a plaintiff pleads that he or she was discharged either for exercising a statutory right or for refusing to violate a statutorily imposed duty.[2]  Claimant's Complaint properly states a cause of action for retaliatory discharge under McClanahan.  Generally, Indiana is an employment-at-will state.  See Campbell v. Eli Lilly and Co., 413 N.E.2d 1054 (Ind. Ct. App. 1980).  However, in McClanahan, as in other cases, Indiana Courts have created exceptions to the employment-at-will doctrine.  See generally Frampton, 297 N.E.2d 425 (Ind. 1973); Call v. Scott Brass, Inc., 553 N.E.2d 1125 (Ind. Ct. App. 1990); M.C. Welding and Machining Co., Inc. v. Kotwa, 845 N.E.2d 188 (Ind. Ct. App. 2006).  In McClanahan, the Indiana Supreme Court held that a plaintiff properly states a cause of action for retaliatory discharge where the plaintiff claims he or she was terminated in retaliation for refusing to commit an illegal act.  McClanahan, 517 N.E.2d at 393.  Like the plaintiff in McClanahan, Claimant's Complaint alleges that she was terminated in retaliation for refusing to commit an illegal offense.  Specifically, Claimant alleges:

---

[2]  Claimant asks the Court to note that the Debtors' argument attempts to oversimplify the history and adaptation of the employment-at-will doctrine and the cause of retaliatory discharge in Indiana.  A cause of action for retaliatory discharge has been recognized in Indiana since 1973.  See Frampton, 297 N.E.2d 425 (Ind. 1973).  Since Frampton, Indiana Courts have revisited the issue on numerous occasions and each time the law continues to evolve.  Most notably, the Indiana Supreme Court heard arguments in Meyers v. Meyers, 860 N.E.2d 591 (Ind. 2006) in November 2006 on the issue of extending retaliatory discharge causes of action to include those where a plaintiff claims he or she was discharged for complaining about unpaid wages and the Indiana Supreme Court has not issued its ruling in Meyers as of the filing of this Supplemental Response.  Therefore, the issue is not as concrete as the Debtors would like this Court to believe.  Moreover, as noted above, the Debtors' argument is not proper in the case at bar, as it was not raised in a Ind. R. Tr. P. 12(B)(6) motion for failure to state a claim for which relief can be granted as prescribed by Indiana law.

- In early 1999, the national corporate office began an audit of Delphi Kokomo with national auditors.

- During the course of the national audit, Claimant categorized certain questionable Delphi Kokomo financial reporting concerning loss revenues.

- On August 19, 1999, Claimant's supervisor chastised Claimant for giving too much information and being candid with corporate auditors about Delphi Kokomo's financial information and practices.

- Claimant was further instructed that communication with the national auditors had to be "controlled" so as not to reveal too much.

- On August 27, Claimant reported the above information to the corporate office and the Delphi Kokomo plant, and asked for an investigation and meeting before further adverse action.

- On September 1, 1999, Claimant was terminated from her position with Delphi.

(Claimant's Compl. at ¶¶ 21-22, 24-25, 27-28). A copy of the Complaint is annexed hereto as Exhibit "1". Claimant properly plead that the Debtors asked her to commit an illegal act when they asked her to withhold financial information from the Debtors' auditors. Moreover, Claimant properly plead that she refused to assist the Debtors with withholding financial information and practices from auditors, as evidenced by Claimant's averments that she reported Debtors' requests to the corporate office and asked that an investigation be conducted. The fact that Claimant's Complaint does not included the terms "illegal" or "refuse" does not act as a bar to her demand for damages for retaliatory discharge, as, pursuant to Ind. R. Tr. P. 8(A), Claimant has properly plead her causes of action.

27. Therefore, in addition to her Title VII damages, Claimant is entitled to the damages arising from her claim of retaliatory discharge, including, but not limited to, compensatory damages, including back pay and front pay, prejudgment interest pursuant to Ind. Code § 34-51-4-7, and punitive damages pursuant to Ind. Code § 34-51-3-4.

11

28. Attached hereto as Exhibit "2" is the Affidavit of Randy Gomez of Alliance Benefit Group (the "Gomez Affidavit") in support of Claimant's pecuniary damages. Mr. Gomez is a Principal and Chief Actuary of Alliance Benefit Group and is an expert on employee benefits. Claimant reserves the right to supplement the Gomez Affidavit.

C. **To the Extent and an Evidentiary Hearing is Required to Determine the Extent and Amount of Damages, the Trial Court Should Make That Determination**

29. Since the Debtors' liability has previously been determined by the Indiana courts, the only possible remaining issue is the amount of damages suffered by Claimant. That issue is a non-bankruptcy law issue and should be decided by a jury in the Trial Court or the United States District Courts for either the Southern District of New York or the Southern District of Indiana.

30. This Court does not have core jurisdiction over the Claimant's Claim under 28 U.S.C. § 157(b)(2)(O) and the Debtors' objection to the Claim may not be tried by this Court pursuant to 28 U.S.C. § 157(b)(5). See, e.g., In re Schepps Food Stores, Inc., 169 B.R. 374 (Bankr. S.D. Tex. 1994) (holding bankruptcy court lacked jurisdiction to decide pending summary judgment motion on objection to claim because adjudication of objection would result in "*de facto*" trial of underlying state court action in contravention of section 157(b)). Section 157(b)(5) provides:

> (5) The district court shall order that *personal injury tort and wrongful death claims* shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

31. Claims alleging that a debtor unlawfully discriminated in employment on basis of race, creed, disability or sex are "personal injury tort claims," which the bankruptcy

court may not adjudicate. Goldschmidt v. Erickson (In re Erickson), 330 B.R. 346, 349 (Bankr. D. Ct. 2005) (granting claimant relief from automatic stay to proceed with adjudication of employment discrimination suit in state court); Thomas v. Adams (In re Gary Brew Enterprises Ltd.), 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996) (holding employee discrimination complaint under federal civil rights statute was in nature of "personal injury tort" that must be tried in district court, not bankruptcy court).

33. Here, Claimant's claims are employment discrimination and retaliation-based "personal injury" claims and, accordingly, Claimant is entitled to a jury trial, see 28 U.S.C. § 157(b)(5), in either the Trial Court or the District Courts.

33. Since the underlying state action was already pending at the time the Debtors filed their chapter 11 petitions, this Court should exercise its discretion and abstain from deciding the issue before it pursuant to 28 U.S.C. § 1334(c)(1) and allow the parties to complete the damages proceedings before the Trial Court.

34. 28 U.S.C. § 1334(c) provides as follows:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest in justice, or in the interest in comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

35. In determining whether discretionary abstention is appropriate, courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to

13

be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

Continental Airlines, Inc. v. Allen (In re Continental Airlines, Inc.), 156 B.R. 441, 443 (Bankr. D. Del. 1993); Citicorp. Sav. Of Ill v. Chapman (In re Chapman), 132 B.R. 153, 157-58 (Bankr. N.D. Ill. 1991).

36.  Where, as here, the issue before the Court is one solely of state law or applicable non-bankruptcy law, when a state action is already pending, the interests of comity dictate that the matter is better resolved in state court. The amount of Claimant's damages is better decided by the Trial Court. See In re Denton, 161 B.R. 987 (Bankr. E.D. Ark. 1993) (after debtor filed objection to claimant's proof of claim, bankruptcy court abstained since issue was issue better decided by state court where action was pending).

37.  At this juncture, the better course is to abstain and allow the Trial Court to determine the amount of Claimant's damages. As noted, the underlying state action has been pending since 2000 and the Trial Court is fully familiar with the issues. The Trial Court could quickly determine the extent and amount of damages suffered by Claimant.

## Memorandum of Law

38.  Since the legal authorities relied on by Claimant are set forth herein, Claimant has not filed a separate memorandum of law. Claimant reserves the right to file a separate memorandum of law in reply to any response filed by the Debtors.

## Reservation of Rights

39.  Claimant reserves the right to amend or supplement (i) her filed Proof of Claim, (ii) the documentary evidence filed in support of the Proof of Claim, (iii) this

Supplemental Response, and (iv) the evidentiary record in support of the Proof of Claim at a later date.

## Replies

40. Replies to this Supplemental Response should be made to (a) DiConza Law, P.C., 630 Third Avenue, Seventh Fl., New York, New York 10017, Attn: Gerard DiConza, Esq. and (b) Haskin Lauter Larue & Gibbons, 255 North Alabama Street, Indianapolis, Indiana 46204, Attn: Kenneth E. Lauter, Esq.

## Conclusion

41. Claimant respectfully requests that the Court deny the Third Omnibus Objection in its entirety, allow the Proof of Claim in the full amount asserted, and grant such other relief as is just and proper.

Dated: New York, New York
      February 19, 2007

Respectfully submitted,

DICONZA LAW, P.C.

By: /s/ Gerard DiConza
Gerard DiConza (GD-0890)
630 Third Avenue, 7th Floor
New York, NY 10017
(212) 682-4940

HASKIN LAUTER LARUE & GIBBONS
Kenneth E. Lauter, Esq.
Meghan Lehner, Esq.
255 North Alabama Street
Indianapolis, IN 46204
(317) 955-9500

*Co-Counsel for Eva Orlik*

15

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re                                           :
                                                :    Chapter 11
DELPHI CORPORATION, *et al.*,                   :
                                                :    Case No. 05-44481 RDD
                       Debtors.                 :
                                                :    (Jointly Administered)
                                                :
------------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

        Gerard DiConza, being duly admitted to practice before the Southern District of New York, certifies that on the 19th day of February 2007, I caused service of the Supplemental Response of Eva Orlik to the above-captioned Debtors' Third Omnibus Claim Objections by regular mail, facsimile and email on the parties listed below:

Skadden, Arps, Slate, Meagher & Flom
Four Times Square
New York, NY 10036
Attn:  Kayalyn A. Marafioti, Esq.
(kmarafioti@skadden.com)
Facsimile:  212-735-2000

Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606
Attn:  John Wm. Butler, Jr., Esq.
(jbutler@skadden.com)
Facsimile:  312-407-8501

John K. Lyons, Esq.
(jlyonsch@skadden.com)
Facsimile:  312-407-8532

Sarah J. Platt, Esq.
(splatt@skadden.com)
Facsimile:  312-827-9417

Courtney E. VanLonkHuyzen, Esq.
(cvanlonk@skadden.com)
Fax No. 312-827-9387

2

Dated: February 19, 2007
      New York, New York                                  /s/ Gerard DiConza
                                                           Gerard DiConza (GD 0890)

2