ScanFile Retrieval v4.1 - Computer: APRIL8 User: Guest 10 Date/Time: 9/22/2000 3:30:43 PM
Closing Date: January 27 , 1998   Document Title: Specific Lessee Documents   Company Name: General Motors Corporation

## MASTER LEASE AGREEMENT   NO. 9708DEC545

THIS MASTER LEASE AGREEMENT, dated as of __August 29, 1997__ ("Agreement"), is between General Motors Corporation, __Delphi Energy and Engine Management System__ Division, a corporation organized and existing under the laws of the State of Delaware, with an office at __2900 Scatterfield Road,__ __Anderson, IN  46018-2439__ (hereinafter called, together with its successors and assigns, if any, "Lessee"), and __American Finance Group, Inc.__, a corporation organized and existing under the laws of the State of __Delaware__, with an office at __24 School Street,__ __Boston, MA  02108__, (hereinafter called, together with its successors and assigns, if any, "Lessor").

### WITNESSETH:

**I.   LEASING:**

(a)   Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment ("Equipment") described in Annex A to any schedule attached hereto or made a part hereof ("Schedule"). Terms defined in a Schedule and not defined herein shall have the meanings contained in such Schedule.

(b)   The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof ("Supplier") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment, (ii) a Purchase Order Assignment and Consent in the form of Annex B to the applicable Schedule, unless Lessor shall have delivered its purchase order for such Equipment, (iii) evidence of insurance which complies with the requirements of Section IX, and (iv) such other documents as Lessor may reasonably request. As a further condition to such obligations of Lessor, Lessee shall, upon delivery of such Equipment (but not later than the Last Delivery Date specified in the applicable Schedule) execute and deliver or have delivered to Lessor a Certificate (in the form of Annex C to the applicable Schedule) covering such Equipment, and deliver or have delivered to Lessor a bill of sale therefor (in form and substance satisfactory to Lessor). Lessor hereby appoints Lessee as its agent for inspection and acceptance of the Equipment from the Supplier. Upon execution by Lessee of such Certificate, the Equipment described thereon shall be deemed to have been delivered to, and received and irrevocably accepted by, Lessee, as between Lessee and Lessor only, for lease hereunder. It is understood that such Certificate does not limit any rights Lessee may have against the Supplier.

**II.   TERM, RENT, AND PAYMENT:**

(a)   The rent payable hereunder and Lessee's right to use the Equipment shall commence on the date of execution by Lessee of the Certificate (in the form of Annex C to the applicable Schedule) for such Equipment ("Lease Commencement Date"). The term of this Agreement shall be the period specified in the applicable Schedule. If any term is extended, the word "term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as otherwise agreed to in writing.

(b)   Rent shall be paid to Lessor at its address stated above, except as otherwise directed by Lessor. Payments of rent shall be in accordance with the provisions of the applicable Schedule. If Advance Rentals are payable, such Advance Rental shall be (i) set forth on the applicable Schedule, (ii) due upon acceptance by Lessor of such Schedule, and (iii) when received by Lessor, applied to the first rent payment and the balance, if any, to the final rental payment(s) under such Schedule. In no event shall any Advance Rental or any other rent payments be refunded to Lessee. If rent is not paid within ten (10) days of its due date, Lessee agrees to pay a late charge of one cent ($.01) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any.

Rev. 5/14/92

- 1 -

ScanFile Retrieval v4.1  -  Computer: ATLESSO   User: Guest 10   Date/Time: 9/22/2000 3 30 48 PM

Closing Date: January 27 , 1998   Document Title: Specific Lessee Documents   Company Name  General Motors Corporation

## III.   TAXES:

Lessee shall have no liability for taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the total gross income, net income, total gross receipts, capital, capital stock, or net worth of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees, and assessments due, imposed, assessed, or levied against the Equipment, or the purchase, ownership, delivery, leasing, possession, the use or operation thereof, or upon the rentals or receipts with respect to this Agreement or any Schedule hereunder, including all license and registration fees and all sales, use, personal property, excise, gross receipts, stamp, or other similar taxes, imposts, duties, and charges, together with any penalties, fines, or interest thereon, imposed against this Agreement or any Schedules or Supplemental Documents, or against Lessor, Lessee, or the Equipment by any federal, state, or local government or taxing authority during or relating to the term of this Agreement (all hereinafter called "Taxes"). Lessee shall not be liable, however, for any penalties, fines, or interest resulting from any acts or omissions of the Lessor, but only to the extent such penalties, fines, or interests have not arisen from Lessor's acts or omissions which are predicated on a request from Lessee or reliance on Lessee's representations or duties pursuant to this Agreement. Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, provided such Taxes have not previously been paid by, or simultaneously billed to Lessee (in this regard Lessor and Lessee agree to mutually cooperate in the resolution of such matters with the appropriate taxing authorities), (ii) on written request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports and returns show ownership of the Equipment by Lessor, and (iv) upon receipt of written request, send a copy thereof to Lessor.

## IV.   REPORTS:

(a)   Lessee will notify Lessor in writing, within ten (10) days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification unless the same shall have been removed or fully discharged by the Lessee.

(b)   Lessee will permit Lessor to inspect any Equipment during normal business hours, provided that no exercise of such inspection right shall materially interfere with the normal operation of the Equipment or the business of Lessee.

(c)   Lessee will keep the Equipment at the Equipment Location (specified in the applicable Schedule) and will promptly notify Lessor of any relocation of Equipment. Upon written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification.

(d)   Lessee will promptly and fully report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed ten percent (10%) of its then fair market value), or is otherwise involved in an accident causing personal injury or property damage.

## V.   DELIVERY, USE, AND OPERATION:

(a)   All Equipment shall be shipped directly from the Supplier to Lessee.

(b)   Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable federal, state, and local laws and regulations.

(c)   LESSEE SHALL NOT ASSIGN, MORTGAGE, SUBLET, OR HYPOTHECATE ANY EQUIPMENT, OR THE INTEREST OF LESSEE HEREUNDER, NOR SHALL LESSEE REMOVE ANY EQUIPMENT FROM THE CONTINENTAL UNITED STATES, WITHOUT THE PRIOR WRITTEN CONSENT OF THE LESSOR. SUCH CONSENT SHALL NOT UNREASONABLY BE WITHHELD.

(d)   Lessee will keep the Equipment free and clear of all liens and encumbrances other than the following: (1) liens arising from claims attributable to Lessor, (2) liens for taxes of Lessee either not yet due or being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of

Rev. 5/14/92

the Equipment or any interest therein, and (3) materialmen's, mechanics', workmen's, repairmen's, or other like liens arising in the ordinary course of Lessee's business (including those arising under maintenance agreements entered into in the ordinary course of business) securing obligations that are not overdue or are being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of the Equipment or any interest therein.

## VI.   SERVICE:

(a)      Lessee will, at its sole expense, maintain or cause to be maintained each unit of Equipment in good operating order, repair, condition, and appearance in accordance with normal industry standards, normal wear and tear excepted. Lessee shall, if at any time requested by Lessor, affix in a prominent position on each unit of Equipment plates, tags, or other identifying labels showing ownership thereof by Lessor. So long as no event of default shall have occurred and be continuing, and so long as Lessee shall comply with Section VI(b) hereof, Lessee may, without the prior written approval of Lessor, deliver possession of Equipment to the Supplier or to any other provider for testing, service, repair, maintenance, or overhaul work on such Equipment.

(b)      Lessee will not, without the prior consent of Lessor, affix or install any accessory, equipment, or device on any Equipment if such addition will impair the originally intended function or use of such Equipment. All additions, repairs, parts, supplies, accessories, equipment, and devices furnished, attached, or affixed to any Equipment which are not readily removable shall be made only in compliance with applicable law, including Internal Revenue Service guidelines, and shall become the property of Lessor and subject to the terms of this Agreement. Lessee will not, without the prior written consent of Lessor and subject to such conditions as Lessor may impose for its protection, affix or install any Equipment to or in any other personal or real property.

(c)      Any alterations or modifications to the Equipment that may, at any time during the term of this Agreement, be required to comply with any applicable law, rule, or regulation shall be made at the expense of Lessee.

## VII.   STIPULATED LOSS VALUE:

"Event of Loss" with respect to the Equipment means any of the following: (1) the loss of such Equipment or use thereof due to the destruction of or damage to such Equipment which renders repair uneconomic or which renders such Equipment permanently unfit for normal use by Lessee for any reason whatsoever; (2) the theft, disappearance, confiscation, condemnation, or seizure of title to such Equipment which shall have resulted in the loss of possession or use of such Equipment by Lessee for a period in excess of sixty (60) consecutive days; or (3) imposition of environmental or other legal restrictions that make continued use of the Equipment uneconomic or illegal. Lessee shall promptly and fully notify Lessor in writing upon the occurrence of any Event of Loss. On the rental payment date next succeeding an Event of Loss (the "Payment Date"), Lessee shall pay Lessor without duplication the sum of (x) the Stipulated Loss Value of such unit calculated as of the rental period immediately preceding such Event of Loss ("Calculation Date"); and (y) all rental and other amounts which are due hereunder as of the Payment Date. Upon payment of all sums due hereunder, the term of this lease as to such unit shall terminate, and (except in the case of the loss, theft, or complete destruction of such unit) Lessor shall be entitled to recover possession of such unit.

## VIII.   RISK OF LOSS:

Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever from the time the Equipment is shipped to Lessee.

## IX.   INSURANCE:

Lessee agrees, at its own expense, to keep all Equipment insured with "ALL-RISKS" property insurance to a limit of the Stipulated Loss Value, including, but not limited to, insurance for damage to or loss of such Equipment and liability coverage for personal injuries, death, or property damage that may result from the use or operation of the Equipment, with Lessor

named as additional insured and with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. All such policies shall be with reputable companies and on terms reasonably satisfactory to Lessor. Lessee agrees to deliver to Lessor, upon written request by Lessor, certificate(s) of insurance. Said certificate(s) shall state that the insurance is primary to any other insurance that may be available to Lessor and provide at least thirty (30) days' written notice to Lessor of cancellation, modification, or material change to any policy. Lessee will not make adjustments with insurers except (i) with respect to claims for damage to any unit of Equipment where the repair costs do not exceed ten percent (10%) of such unit's fair market value, or (ii) with Lessor's written consent. Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor hereunder.

## X.   RETURN OF EQUIPMENT:

(a)   Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense; (i) perform any testing and repairs required to place the affected units of Equipment in the good condition and repair, reasonable wear and tear excepted, and in good working order for their originally intended purpose; (ii) if deinstallation, disassembly, or crating is required, cause such units to be properly deinstalled, disassembled, and crated in accordance with normal industry standards; and (iii) tender such units to Lessor at the Equipment Location specified in the applicable Schedule or, at the option of Lessor, at any location designated by Lessor within two hundred fifty (250) miles of said Equipment Location. Upon and after tender of delivery to Lessor, Lessee shall have no new responsibilities for the Equipment. This shall not affect any obligations hereunder predating said tender.

(b)   Until Lessee has complied with the requirements of Section X(a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate such continued leasehold interest upon ten (10) days' notice to Lessee.

## XI.   EVENTS OF DEFAULT:

Lessor may in writing declare this Agreement in default upon the occurrence of any one of the following events ("Events of Default"):

(a)   Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days after written notice thereof;

(b)   Lessee breaches any of its insurance obligations under Section IX and fails to cure the breach within ten (10) days after written notice thereof;

(c)   Lessee breaches any of its other obligations, representations, or warranties and fails to cure that breach within thirty (30) days after written notice thereof;

(d)   Lessee becomes insolvent or ceases to do business as a going concern; or

(e)   any Equipment is illegally used and Lessee fails to cease such use as soon as possible, not to exceed five (5) working days, after written notice thereof.

Such declaration of default shall apply to all Schedules except as specifically excepted by Lessor.

## XII.   REMEDIES:

(a)   Upon the declaration of default and at any time thereafter so long as an Event of Default shall be continuing, Lessor may at its option do one or more of the following with respect to all or any part of the Equipment, to the extent permitted by, and subject to compliance with any mandatory requirements of, applicable law then in effect:

Rev. 5/14/92

05-44481-rdd   Doc 6990-5   Filed 02/19/07   Entered 02/19/07 16:27:30   Exhibit B to
ScanFile Retrieval v4.1 - Computer: Affidavit   Page 6 of 10  Date/Time: 9/22/2000 3:31:01 PM
Closing Date: January 27 , 1998   Document Title: Specific Lessee Documents   Company Name: General Motors Corporation

(1)     upon the written demand of Lessor and at Lessee's expense cause Lessee to return promptly, and Lessee shall return promptly, all or any part of the Equipment as the Lessor may demand in the manner and condition required by, and otherwise in accordance with Section X(a) hereof, as if the Equipment were being returned at the end of the Term; and/or

(2)     enter the premises, with or without legal process, where all or any part of the Equipment is located and take immediate possession; and/or

(3)     sell the Equipment, upon fifteen (15) days' written notice to Lessee, at public or private sale, as Lessor may determine, or otherwise dispose of, hold, use, operate, lease to others, or keep idle the Equipment as Lessor, in its sole discretion, may determine, all free and clear of any rights of Lessee, except as hereinafter set forth in this Section XII. Lessor may sell the Equipment without having the Equipment present at place of sale, and Lessor may make reasonable use of Lessee's premises for the purpose of displaying and selling the equipment at no expense to Lessor; and/or

(4)     whether or not Lessor shall have exercised, or shall thereafter at any time exercise, any of its rights under subparagraphs (1), (2), and (3) of this Section XII with respect to any of the Equipment, Lessor, by written notice to Lessee specifying a payment date of such notice, may demand that the Lessee pay to Lessor, as damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the rental period immediately preceding the declaration of default), all rent due for Equipment prior to the payment date so specified, any late charges provided for in Section II hereof, any interest provided for in Section XXI(e) hereof, any accrued and then-due taxes, and all reasonable costs and expenses, including reasonable legal fees incurred by the Lessor in connection with the enforcement of, but not the administration of, the Agreement; and/or

(5)     in the event Lessor, pursuant to subparagraph (3) of this Section XII, shall have sold, released, or otherwise disposed of the Equipment, the proceeds of sale, lease, or other disposition, if any, shall be applied in the following order of priorities: (i) to pay all Lessor's reasonable costs, charges, and expenses incurred in taking, removing, holding, repairing, selling, leasing, or otherwise disposing of Equipment; then (ii) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (iii) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and then (iv) any surplus shall be retained by Lessor (Lessee shall remain responsible for any deficiency in (i) and (ii) forthwith).

(b)     The foregoing remedies are cumulative and not exclusive of other remedies, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute. Waiver of any default shall not be a waiver of any other or subsequent default.

XIII.   ASSIGNMENT:

(a)     LESSEE WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, ASSIGN, CONVEY, OR SUBLEASE ITS RIGHTS OR INTEREST IN THIS AGREEMENT.

(b)     Lessor may, without the consent of Lessee, assign this Agreement or any Schedule. Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Equipment Schedule to such assignee or as instructed by Lessor. Lessee further agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee. Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim, or counterclaim which Lessee has or may at any time have against Lessor, Supplier, or any prior assignee for any reason whatsoever.

(c)     Subject to the foregoing, the terms and provisions of this Agreement shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and permitted assigns.

## XIV.   NET LEASE; NO SET-OFF, ETC.:

This Agreement is a net lease.  Lessee's obligation to pay rent and other amounts due hereunder shall be absolute and unconditional.  Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation, those arising by virtue or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor or Supplier) of Lessee against Lessor or Supplier under this Agreement or otherwise.  Nor shall this Agreement terminate or the obligations of Lessee be affected by reason of any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause.  It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation is terminated pursuant to the express terms hereof.

## XV.   INDEMNIFICATION:

(a)      Lessee and Lessor hereby agree to indemnify, save and keep harmless the other, the other's agents, employees, successors, and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, arising during the term of this Agreement out of the breach by the Lessor or Lessee, respectively, of any part of this Agreement.  However, to the extent that any losses, damages, penalties, injuries, claims, actions and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, arising during the term of this Agreement out of the breach by the Lessor or Lessee, respectively, of any part of this Agreement are caused by negligence or malfeasance of the indemnified party, there shall be no indemnification under the first sentence of this subsection.  Additionally, Lessee hereby agrees to indemnify and keep harmless Lessor, its agents, employees, successors, and assigns against any and all losses, damages, penalties, injuries, claims, actions, and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, and including Lessor's strict liability in tort, arising during the term of this Agreement, out of selection, manufacture, acceptance, or rejection of Equipment, and the delivery, possession, maintenance, uses, condition, return, or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark, or copyright infringement or environmental damage).  Lessor or Lessee, respectively, shall, upon request, defend any actions based on, or arising out of, any such indemnification.

(b)      Lessee hereby represents, warrants, and covenants that (i) Lessor shall be the party entitled to claim accelerated cost recovery deductions ("Tax Benefits") as defined by the Internal Revenue Code of 1986, as amended, available for Lessor's purchase and ownership of the Equipment purchased and leased hereunder, (ii) on Lease Commencement Date for any unit of Equipment, such unit will qualify for all Tax Benefits specified in Section C of the applicable Schedule(all references to Lessor in this Section XV include Lessor and the consolidated taxpayer group of which Lessor is a member), and (iii) at no time during the term of this Agreement will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action which will result in the disqualification of any Equipment for, reduction of (which is not the result of Lessor having alternative minimum tax status), or recapture of, all or any portion of such Tax Benefits.

(c)      Notwithstanding any other provisions in this document, if as a result of a breach of any representation, warranty, and covenant of the Lessee contained in this Agreement or any Schedule (i) tax counsel of Lessor shall reasonably determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any such Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any such Tax Benefit is recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture being hereinafter called a "Loss"), then to the extent of any such breach Lessee shall pay to Lessor, as additional rental payments, such amount as shall cause the Lessor's net after-tax return on investment to equal the net after-tax return on investment (assuming an effective tax rate of thirty-four percent [34%]) that would have been realized by the Lessor if such Loss had not occurred, computed in all cases using the same assumptions utilized in originally evaluating the transaction.  Such amount shall be payable within thirty (30) days after the Lessor has notified the Lessee in writing that such a Loss has occurred, including a written statement describing in reasonable detail such Loss and the computation thereof.

Rev. 5/14/92

- 6 -

(d)     All of Lessor's and Lessee's rights, privileges, and indemnities contained in this Section XV shall survive the expiration or other termination of this Agreement and the rights, privileges, and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor and Lessee, respectively, their successors and assigns, respectively.

## XVI.   DISCLAIMER:

LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss, or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation, or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits, or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement, or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

## XVII.   REPRESENTATIONS AND WARRANTIES OF LESSEE:

Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a)     Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)     The Documents have been duly authorized, executed, and delivered by Lessee and constitute valid, legal, and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c)     No approval, consent, or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d)     The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law, or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws; or (ii) result in any breach of, constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan, or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e)     There are no suits or proceedings pending or threatened in court or before any commission, board, or other administrative agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

05-44481-rdd   Doc 6990-5   Filed 02/19/07   Entered 02/19/07 16:27:30   Exhibit B to
ScanFile Retrieval v4.1 - Computer: Affidavit  UPg 8 of 10 Date/Time: 9/22/2000 3:31:14 PM
Closing Date: January 27 , 1998   Document Title: Specific Lessee Documents   Company Name: General Motors Corporation

(f)     The Equipment listed on any Certificate (in the form of Annex C to the applicable Schedule) is and will remain tangible personal property.

(g)     Lessee is and will be at all relevant times validly existing and in good standing under the laws of the State of its incorporation (specified in the first sentence of this Agreement).

(h)     The Equipment will at all times be used for commercial or business purposes.

## XVIII.  REPRESENTATIONS AND WARRANTIES OF LESSOR:

(a)     Lessor covenants that it will not directly or indirectly create, incur, assume, or suffer to exist any lien attributable to it on the Equipment which has priority over the Lessee's rights under this Agreement.

(b)     Lessor covenants that it will not, through its own actions or inactions, interfere in Lessee's quiet enjoyment of the Equipment during the applicable lease term so long as this Agreement shall not have been declared in default under Section XI above.

## XIX.   EARLY TERMINATION:

(a)     On or after the First Termination Date (specified in the applicable Schedule), Lessee may, so long as no default exists hereunder, terminate this Agreement as to all (but not less than all) of the Equipment on such Schedule as of a rent payment date ("Termination Date") upon at least ninety (90) days' prior written notice to Lessor.

(b)     Lessee shall, and Lessor may, solicit cash bids for the Equipment on an AS IS, WHERE IS BASIS without recourse to or warranty from Lessor, express or implied ("AS IS BASIS").  Prior to the Termination Date, Lessee shall (i) certify to Lessor any bids received by Lessee and (ii) pay to Lessor (A) the Termination Value (calculated as of the rental due on the Termination Date) for the Equipment, and (B) all rent and other sums due and unpaid as of the Termination Date.

(c)     Provided that all amounts due hereunder have been paid on the Termination Date, Lessor shall (i) sell the Equipment on an AS IS BASIS for cash to the highest bidder and (ii) refund the proceeds of such sale (net of any related expenses) to Lessee up to the amount of the Termination Value.  If such sale is not consummated, no termination shall occur and Lessor shall refund the Termination Value (less any expenses incurred by Lessor) to Lessee.

(d)     Notwithstanding the foregoing, Lessor may elect by written notice, at any time prior to the Termination Date, not to sell the Equipment.  In that event, on the Termination Date Lessee shall (i) return the Equipment (in accordance with Section X) and (ii) pay to Lessor all amounts required under Section XIX(b) less the amount of the highest bid certified by Lessee to Lessor.

## XX.    PURCHASE OPTION:

(a)     So long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least ninety (90) days' prior written notice to Lessor, purchase all (but not less than all) of the Equipment in any Schedule on an AS IS BASIS for the option price set forth in said Schedule (the "Option Price") (plus all applicable sales taxes). Lessor and Lessee agree that the Option Price is a reasonable prediction of the Equipment's "Fair Market Value" at lease expiration.

(b)     "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that Equipment

Rev. 5'14/92

05-44481-rdd   Doc 6990-5   Filed 02/19/07   Entered 02/19/07 16:27:30   Exhibit B to
ScanFile Retrieval v4 1 - Computer: Affidavit - Pg 9 of 10 Date/Time: 9/22/2000 3:31:18 PM
Closing Date January 27, 1998   Document Title: Specific Lessee Documents   Company Name: General Motors Corporation

shall be valued on an installed basis; and (iii) costs of removal from current location shall not be a deduction from such valuation.

XXI.   MISCELLANEOUS:

(a)   LESSEE AND LESSOR HEREBY UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS LEASE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). NOTWITHSTANDING ANY STATE OR FEDERAL LAW TO THE CONTRARY, LESSEE AND LESSOR AGREE THAT THIS WAIVER IS NOT UNILATERALLY REVOCABLE. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS LEASE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS LEASE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)   Unless and until Lessee exercises its rights under Section XX above, nothing herein contained shall give or convey to Lessee any right, title, or interest in and to any Equipment except as a lessee. Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement or any Schedule hereto, shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(c)   Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument reasonably necessary for filing, recording, or perfecting the interest of Lessor. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

Initials ____/____

(d)   In case of a failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all monies spent and expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five (5) days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e)   Any rent or other amount than rent not paid to Lessor when due hereunder shall bear annualized interest, both before and after any judgment or termination hereof, at the lesser of the Prime Rate (as shown in the "Money Rates" column of The Wall Street Journal as of the due date of the rent or other amount) or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule which are in conflict with any statute, law, or applicable rule shall be deemed omitted, modified, or altered to conform thereto.

(f)    This Agreement shall be governed by and construed and enforced according to the laws of the State of Michigan, excluding any such laws which direct the application of laws of any other jurisdiction.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

By  _LISA G. RYAN_

Title _Manager, Lease Underwriting_

LESSEE:

By  _DON RUNKLE_

Title _VP and GM Delphi Energy_

Rev. 5/14/92