**Hearing Date and Time: March 21, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.Delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO
PROOF OF CLAIM NO. 12163 (EVA ORLIK)**

("SUPPLEMENTAL REPLY – EVA ORLIK")

      Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit their

1

Supplemental Reply With Respect To Proof Of Claim No. 12163 (Eva Orlik) (this "Supplemental Reply"), and respectfully represent as follows:

Introduction

1.  Eva Orlik ("Orlik"), a former employee of Delphi Automotive Systems Corporation, a/k/a Delphi Automotive Systems LLC ("Delphi"), asserts that she is entitled to over $1.3 million dollars – nearly $900,000 of which is for punitive damages – because she endured a hostile environment, was treated less favorably than non-Polish workers, and was fired from her internal audit position for raising accounting concerns with Delphi auditors. Orlik received a default judgment in an Indiana court but that court did not, prior to the bankruptcy filing, hold a hearing to determine damages. On damages, Orlik is not entitled to anywhere close to the damages she seeks.

2.  As an initial matter, the default judgment below did not decide damages, and Orlik failed to timely submit any witness affidavits or declarations. Thus, because she has not timely submitted evidence of damages, Orlik cannot recover any damages in this hearing.

3.  Even if Orlik's failure to comply with this Court's order could be excused – which it should not – and Orlik could introduce damages testimony, Delphi's actual conduct is relevant at least to the issue of punitive damages notwithstanding the default judgment. Here, Delphi terminated Orlik after she failed to complete a targeted performance improvement plan that she agreed to complete. The decision was well-documented. Moreover, Delphi had a policy of encouraging employees to report discrimination of the sort that Orlik claimed happened to her. Yet Orlik never mentioned any discrimination in her reviews and never made a written complaint concerning it.

   4.  Lastly, Orlik greatly overstates her pecuniary losses, compensatory damages, and punitive damages and thus should not recover such damages.[1]

Background

   5.  Eva Orlik ("Orlik") began working as an analyst for Delphi's finance department on or about October 11, 1994. Declaration of Nancy Mills In Support Of Debtors' Supplemental Reply With Respect To Proof of Claim No. 12163 (the "Mills Dec.") ¶ 4, a true and accurate copy is attached hereto as Exhibit A. In late 1997, Delphi assigned Orlik to an Internal Auditor position. Id.

   6.  Delphi assigned Nancy Mills to manage its finance department in May of 1998 when Max McNeal was leaving the position. Id. As a result of that assignment, Mills became Orlik's direct manager. Id. When Mills joined the department, she had the opportunity to sit in on Orlik's last evaluation with McNeal. Id. Orlik had requested this special evaluation, outside of the normal review cycle, because she had not been awarded a merit increase in her salary the previous year, and she wanted to know why. Id. During the evaluation, McNeal explained Orlik's deficiencies during the previous evaluation period, which included poor communication skills. Id.

   7.  On or about February 5, 1999, Mills completed Orlik's final 1998 performance evaluation. Id. ¶ 7. Shortly thereafter, Mills met with Orlik to discuss the

---

[1] Orlik alleges in her untimely Supplemental Response that the Bankruptcy Court does not have jurisdiction over the Claim under 28 U.S.C. § 157(b)(2)(O), and that 28 U.S.C. § 157(b)(5) requires the Bankruptcy Court to remand the case to the district court. See Supplemental Response ("Supp. Resp.") ¶ 30. First, Orlik mistakenly relies on section 157(b)(2)(O) as the basis for Bankruptcy Court jurisdiction, but section 157(b)(2)(B) applies here, because the Bankruptcy Court is determining whether or not to allow or disallow an employment discrimination claim – not a "personal injury tort" under section 157(b)(5) because her claims are not torts accompanied by trauma or bodily injury. See Vinci v. Town of Carmel (In re Vinci), 108 B.R. 439 (Bankr. S.D.N.Y. 1989); Perino v. Cohen (In re Cohen), 107 B.R. 453 (Bankr. S.D.N.Y. 1989). As such, this Court is not precluded from adjudicating the merits of the Claim. Orlik also attempts to request relief from the automatic stay, but such relief must be made by a separate motion that is properly noticed for hearing in accordance with the case management procedures adopted in these chapter 11 cases. In addition, the Rooker-Feldman doctrine is inapplicable to the present matter and does not preclude this Court from allowing or disallowing the Claim.

3

Performance Development Plan ("PDP") that Mills completed as part of Delphi's evaluation process, in which Orlik's overall performance was rated as unsatisfactory. <u>Id.</u> ¶ 8.

        8.     Orlik submitted a detailed written response to her 1998 performance evaluation. <u>Id.</u> However, she did not address Delphi's primary concerns in the areas of communication skills or the ability to prioritize and balance multiple tasks, except to state that she accepted the criticism and had not previously been aware of the seriousness of the problem. <u>Id.</u>

        9.     With the help of a human resources representative, Mills designed a Performance Improvement Plan ("PIP) to address four primary areas of Orlik's deficient performance: (i) ineffective written and oral communication; (ii) inability to prioritize and balance multiple tasks; (iii) untimely assignments; and (iv) ineffective interpersonal relationships. <u>Id.</u> ¶¶ 10-13. The PIP outlined the behavior or results Delphi desired Orlik to achieve with regard to each problem. <u>Id.</u>, Ex. B. Orlik agreed to undertake various actions to address each performance issue identified. <u>Id.</u> She also agreed to maintain a task list, which was a tool designed for Orlik to organize and prioritize her work projects and Mills to provide direct feedback to Orlik on better ways to balance various projects. <u>Id.</u> The completion date for improving all of the four areas was set for July 1, 1999. <u>Id.</u>

        10.    As part of Delphi management's commitment to improve Orlik's performance pursuant to the PIP, it agreed to help Orlik enroll in classes and/or training opportunities available at Delphi related to effective communication and time management skills. <u>Id.</u> In fact, on Delphi management's recommendation, Orlik attended the "Getting Organized: How To Do More With Less" program that was offered through Delphi. Mills Dec. ¶ 15. Orlik could not attend various communication classes offered through Delphi because she was

4

studying for the CPA examination.  Id. ¶ 17.  To accommodate Orlik's schedule, Delphi management mentioned that Indiana University-Kokomo offered classes during Orlik's lunch hour – a time that did not interfere with her CPA studies.  Id.

        11.      From time to time, Orlik would tell Mills any concerns she had about the way that Delphi handled certain accounting entries or potential conflicts of interests, which was a normal part of her job in Delphi's internal audit department.  Id. ¶ 20.  Orlik never suggested that any practice she observed was unlawful or that she personally was asked to do anything unlawful.  Id.  Mills responded to Orlik's concerns just as she did the concerns of any other employee.  Id.  Mills did not find Orlik's concerns out of the ordinary and the comments did not negatively affect any evaluation or employment decision related to Orlik.  Id. ¶¶ 20,25.

        12.      By June 25, 1999, the week before Orlik's PIP was to expire, Mills believed that Orlik's performance remained unsatisfactory but noted some minor improvements in the previous two weeks.  Id. ¶ 21.  Generally, if an employee fails to meet the goals set forth in a PIP, Delphi will terminate his or her employment.  Id. ¶ 12.  Mills provided Orlik the benefit of the doubt and recommended the PIP be extended to allow Orlik a limited amount of additional time to improve her performance.  Id. ¶ 21.  Accordingly, the completion date for Orlik's PIP was extended from July 1, 1999 to August 31, 1999.  Id.

        13.      On August 13 1999, Orlik received a written employment offer for a position as a Business Manager from Brightpoint, Inc. ("Brightpoint").  See Brightpoint Letter dated August 13, 1999 to Orlik ("Brightpoint Letter"), attached hereto as Exhibit B.  The base salary for a potential position with Brightpoint was $57,000.00 a year, which was significantly higher than her then Delphi base salary of $48,720.00 a year.  Id.

5

14. As the end of August neared, Mills was determining whether Orlik had improved her performance or whether Orlik should be terminated on August 31, 1999. Mills Dec. ¶ 24. Despite a two-week period of improvement before the end of the first PIP deadline on July 1, 1999, Orlik's overall performance had not significantly improved since that time. Id. Thus, shortly thereafter and before August 24, 1999, Mills recommended to Delphi management that Orlik be terminated for poor job performance. Id. At the time Mills made the decision, Mills was not aware that Orlik had filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination. Id.

15. Sometime between August 25, 1999, and September 1, 1999, Delphi personnel in Kokomo learned that Orlik had filed the charge of discrimination with the EEOC. Id. ¶ 25. Mills was surprised by the charge because this was the first time she had heard allegations of national origin discrimination by Orlik. Id. Delphi management discussed the charge, reviewed the grounds for the discharge, consulted with Delphi legal staff, and decided to proceed with the termination because Orlik's inability to complete her PIP was unrelated to any EEOC allegations. Id.

16. Orlik filed Proof of Claim No. 12163 (the "Proof of Claim") on July 28, 2006. The Proof of Claim asserts an unsecured nonpriority claim in the amount of $1,374,322.08 (the "Claim"). On October 31, 2006, the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated by Debtors' Books and Records, and (c) Claims Subject to Modification and (ii) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (Docket No. 5452). On November 22, 2006, Orlik filed her Response to Debtors' Second and Third

6

Omnibus Objection to Claims (Docket No. 5789) (the "Response").  On January 3, 2007, the Debtors filed their Statement of Disputed Issues With Respect to Proof of Claim 12163 (Orlik) (Docket No. 6406).

17.    On January 8, 2007, the Debtors and Orlik, with their legal counsel, conducted a telephonic meet and confer pursuant to the Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (i) Dates for Hearings Regarding Objections to Claims and (ii) Certain Notices and Procedures Governing Objections to Claims (Docket No. 6089) (the "Procedures Order") (a copy of which the Debtors emailed to Orlik's counsel in preparation for the meet and confer).

Argument

18.    Orlik cannot establish that she is entitled to recover the punitive damages and other damages that she claims she suffered as a result of her discrimination- and retaliation-based claims.  As an initial matter, because Orlik failed to timely submit any witness affidavits or declarations, she cannot introduce evidence of damages at the hearing and, thus, cannot recover damages on her proof of claim.  Moreover, notwithstanding the default judgment, Delphi's actual conduct is relevant at least to the issue of punitive damages and clearly demonstrates that the circumstances in this case do not warrant any punitive damages – let alone the nearly $900,000 that Orlik claims.  Delphi did not terminate Orlik in retaliation for either reporting potential accounting improprieties or conflicts of interest or for filing a complaint with the EEOC.  Rather, the decision to terminate Orlik was made *after* the unsatisfactory completion of a well-documented PIP for poor job performance and *before* she filed the EEOC complaint.  Lastly, even if Orlik was entitled to some damages for her claims, the damages she seeks are unsubstantiated, excessive, and duplicative, and thus should not be allowed.

7

A.  Orlik Should Be Precluded From Introducing Evidence on Damages At the Hearing.

19. On December 26, 2006, the Debtors filed a Notice of Claims Objection Hearing with Respect to Debtors' Objection to Proof of Claim No. 12389 (Eva Orlik)(Docket No. 6288), and set the date for the hearing as March 1, 2007. A copy of this Court's Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (i) Dates for Hearings Regarding Objections to Claims and (ii) Certain Notices and Procedures Governing Objections to Claims (Docket No. 6089) (the "Procedures Order") was attached to and served with the notice to Orlik.[2]

20. On January 8, 2007, the Debtors and Orlik, with their legal counsel, conducted a telephonic meet and confer pursuant to the Procedures Order. Prior to the meet and confer the Debtors e-mailed another copy of the Procedures Order to Orlik's counsel. At the meet and confer, the parties discussed various aspects of the Procedures Order, including Orlik's request that the hearing on her claim be adjourned from March 1 to be adjudicated on March 21. The Debtors agreed and, on February 1, 2007, filed another notice adjourning the matter to March 21, 2007. Yet another copy of the Procedures Order was attached to the notice and served on Orlik's counsel.

21. The Procedures Order provides: "The Claimant may file and serve its Supplemental Response no later than 30 business days prior to commencement of the Claims Objection Hearing. . . . The Supplemental Response may include affidavits or declarations from no more than two witnesses setting forth the basis of the Contested Claim and evidence supporting the Contested Claim. . . . The Claimant shall not be permitted to elicit any direct testimony at the Claims Objection Hearing. . . ." See Procedures Order, ¶ 9(e).

---

[2] Two days later, the Debtors filed an amended notice merely to correct a typographical error in the claim number. (Docket No. 6328). It attached another copy of the Procedures Order and was served on Orlik.

8

    22.  Here, this Court's Procedures Order required Orlik to file her Supplemental Response along with any witness affidavits or declarations she intended on using at trial on or before February 6, 2007. Yet, without excuse, Orlik did not choose to file it until February 21, 2007 – over two weeks late. Indeed, Orlik's counsel was provided a copy of the Claim Procedures Order on no fewer than five separate occasions and the parties specifically discussed it during the meet and confer. It would be ironic if Orlik now claims that "excusable neglect" justifies her failure to abide by court-ordered deadlines, especially when she argued in the Indiana courts that Delphi could not set aside the default judgment based on excusable neglect. Because Orlik failed to file her Supplemental Response and affidavits or declarations by the court-ordered deadline, and has not articulated any reason that would excuse such a failure, the affidavit of Randy Gomez that Orlik has submitted should be stricken.

B.  <u>Orlik Cannot Recover Damages on Her Whistleblower Retaliation Claim.</u>

    23.  Orlik's cannot recover damages on her state law wrongful discharge claim.[3] Indiana is an "at-will" employment state: in the absence of a written employment contract establishing employment for a definite term, an employer may terminate an employee for a good reason, a bad reason, or no reason at all. See, e.g., <u>Wilmington v. Harvest Ins. Cos.</u>, 521 N.E.2d 953 (Ind. Ct. App. 1988). Indiana courts acknowledge only four narrow common law "exceptions" to the at-will doctrine: (1) termination for exercising a statutory right; (2) termination for refusing to commit an unlawful act; (3) termination after an offer of "permanent" employment; and (4) termination that implicates the equitable doctrine of promissory estoppel.

---

[3] Orlik's allegation that Delphi cannot raise this argument because it did not file a motion to dismiss under Indiana Trial Rule 12(b)(6) is spurious. Delphi raised the issue of failure to state a claim in its Brief in Support of Motion to Set Aside Default Judgment when arguing to the trial court that it had meritorious defenses to Orlik's claims. The fact that a complaint fails to state a claim is not grounds for setting aside a default in Indiana. <u>Henline, Inc. v. Martin</u>, 169 Ind. App. 260, 273; 348 N.E.2d 416, 423 (1976). Accordingly, a trial court refrained from ruling on the 12(b)(6) motion. Delphi has done all that is necessary to preserve this argument.

See, e.g., Orr v. Westminster Village North, 689 N.E.2d 712 (Ind. 1997). Indiana courts explicitly refuse to create a fifth "exception" to allow a retaliatory discharge tort for "employees whose employment is terminated for 'whistle-blowing,' or reporting their employer's misdeeds." McGarrity v. Berlin Metals, Inc., 774 N.E.2d 71, 78 (Ind. Ct. App. 2002).

24.     In paragraph 36 of her Complaint, Orlik states "Delphi discharged Ms. Orlik in retaliation for complaining about, and balking at, inappropriate and potentially actionable conflict of interest problems and accounting practices." The only possible reading of this paragraph is that Orlik angered local Delphi management when she complained to the auditors from the national corporate office about other employee's potentially unlawful accounting practices. In other words, she claims she irritated management by blowing the whistle, which is an action under which damages are not recoverable under Indiana law because no such cause of action exists. Her complaint cannot be read as stating an actionable claim for retaliatory discharge under Indiana law.[4]

C.     <u>Orlik Cannot Recover The Damages She Seeks Under Her Claims</u>.[5]

*The Underlying Conduct Is Relevant to The Issue of Damages.*

25.     Notwithstanding the default judgment, Delphi's actual conduct is relevant at least to the issue of punitive damages and clearly demonstrates that the circumstances in this case do not warrant any damages – let alone the nearly $900,000 in punitive damages that Orlik claims.[6]

---

[4] Orlik has not alleged that she was asked to do anything illegal or that she had a statutory duty under Indiana law to report accounting improprieties. Indiana law places a reporting requirement only on licensed accounting practitioners. Orlik was not a licensed accounting practitioner as defined by the Indiana Code. Ind. Code § 25-2.1-1-3; Ind. Code § 25-2.1-6-1; Ind. Code § 25-1-11-2.

[5] The Debtors note that Section 502(b)(2) of the Code precludes Orlik from claiming any accrued interest on her Claim after the date of the filing of the bankruptcy petition (October 8, 2005). See 11 U.S.C. § 502(b)(2).

[6] Despite Orlik's arguments to the contrary, the default judgment is not dispositive here and this Court is not precluded from adjudicating her Claim. Default judgments under Indiana law require a two-step process, including

10

26. Delphi did not terminate Orlik in retaliation for either reporting potential accounting improprieties or conflicts of interest or for filing a complaint with the EEOC. Mills Dec. ¶ 25. Rather, the decision to terminate Orlik was made *after* the unsatisfactory completion of a well-documented PIP for poor job performance and *before* she filed the EEOC complaint. Id. ¶¶ 24,25.

27. Prior to Mills becoming Orlik's supervisor, Orlik did not claim that she notified any member of Delphi management about her hostile work environment or that any member of Delphi management created a hostile work environment.[7] Also before Mills became Orlik's manager, Orlik was not meeting Delphi's employment expectations. Id. ¶ 4. Orlik's performance fell below Delphi's legitimate expectations and that Delphi communicated those performance concerns to Orlik, as reflected in Orlik's 1998 PDP rating of unsatisfactory and the subsequent PIP documentation. Id. ¶¶ 7-9. Delphi's actions were reasonable because it provided Orlik an extension to complete her PIP program. Id. ¶ 21. Yet she failed to successfully improve her performance even with that additional time. Id. In addition, Mills did not harass Orlik by rating her performance unsatisfactory, placing Orlik on a PIP, suggesting that she maintain a task prioritization list, or helping her attend classes as part of the PIP. Id. ¶ 21. All of these actions were implemented to improve Orlik's specific performance issues – not because of

---

a separate damage hearing that was not yet held in the present matter. See Stewart v. Hicks, 395 N.E. 2d 308, 313 (Ind. App. 1979) (citing Carson v. Perkins, 29 N.E.2d 772 (Ind. 1940)) Indiana law provides that:

> At such a hearing, the defendant may cross-examine the plaintiff's witnesses and he may call witnesses of his own to prove any matters which extenuate or mitigate the damages alleged by plaintiff. The defendant may not however, introduce a substantive defense, but subject to this qualification, *he may show that the plaintiff has no legal claim to any but nominal damages.*

Id. at 314 (emphasis added); see also Henline, Inc. v. Martin, 348 N.E.2d 416, 423 (Ind. App. 2 Dist. 1976) (emphasis added) (stating even after default has been entered, "[t]he failure of [a] complaint to state a claim sufficient to withstand a motion to dismiss may defeat a *recovery* upon that complaint."). The posture of Orlik's claim makes it particularly appropriate for adjudication by this Court because the default judgment was merely procedural and the Indiana Trial Court has not rendered any findings as to damages.

[7] Orlik alleged only that "on one occasion" her supervisor made an ethnic remark. Compl. ¶ 8.

11

Orlik's national origin. Mills was attempting to help Orlik develop the skills necessary to succeed in her job. Id. ¶¶ 10-19.

28. Delphi had an extensive anti-harassment policy in place when Orlik alleges such conduct occurred. Id. ¶ 26. Orlik never utilized the existing policy to complain about any jokes or comments or other grounds for discrimination to any member of Delphi management. Id. In particular, Orlik had ample opportunities to discuss her concerns with management yet Orlik failed to do so. For example, Orlik provided Delphi management a detailed written response to her 1998 negative performance evaluation, but failed to mention any alleged jokes and comments or other grounds for discrimination in that response. Id. ¶ 9. Orlik also went through a lengthy PIP process that included numerous private meetings with Mills and a human resources representative. Id. ¶¶ 10-19. Yet Orlik failed to mention any alleged jokes and comments or other grounds for discrimination in any those meetings. Id. ¶ 19. Instead, Orlik apparently decided to raise her claim of discrimination for the first time in August 1999, contemporaneous with her failure to complete her PIP and contemporaneous with her active search for a new job.

29. The PIP system was a standard practice used at Delphi to address poor performance, and Orlik's PIP was developed with the advice of human resources personnel who designed an improvement plan using proven tools and tactics to target Orlik's specific performance issues. Id. ¶ 11. For example, in the past, Mills herself had used the same task prioritization list that she recommended to Orlik. Id. ¶ 14. Delphi offered an entire in-house curriculum of professional development and training courses, including time management and communication classes, and therefore requiring Orlik to attend classes was not an unusual occurrence. Id. ¶ 15. Orlik only attended the classes offered by Indiana University-Kokomo

12

because she was not available to attend the in-house classes. Id. ¶ 17. Moreover, Delphi's standard protocol was to terminate employees, like Orlik, who failed to successfully improve their performance by the completion date of their PIP. Id. ¶ 12. Nowhere does Orlik allege that she completed the PIP successfully. Delphi did not treat other similarly-situated employees in Orlik circumstances more favorably.

30.     Orlik was not meeting Delphi's legitimate performance expectations and was not treated differently than other employees who exhibited the same performance deficiencies but did not file a charge of discrimination. Mills made the decision to terminate Orlik because she had not improved her performance as required under the PIP and that decision was made *before* Mills knew that Orlik had filed a charge of discrimination. Id. ¶ 24. In addition, Mills established a completion date of August 31, 1999, *before* Orlik filed the EEOC charge. Id. ¶ 10. Orlik was terminated one day following her completion date because she failed to improve her performance pursuant to the PIP – *not* for filing her EEOC charge. Id. ¶ 24.

*Orlik's Title VII Pecuniary Loss Would Be De Minimis.*

31.     In Orlik's Proof of Claim**,** she claims $193,256.03, which she mislabels compensatory damages, for her alleged pecuniary losses.[8] Potential Title VII pecuniary damages must be divided into two parts: back pay and front pay. Back pay runs from the time of discharge to the time of trial. See, e.g., McKnight v. General Motors, 973 F.2d 1366, 1369 (7th Cir. 1992). Front pay "is the difference (after discounting to present value) between what the plaintiff would have earned in the future had [she] been reinstated at the time of trial and what [she] would have earned in the future in [her] next best employment." Avita v. Metropolitan

---

[8] Although Orlik attached additional damage calculations to her untimely filed Supplemental Response, she provided several calculations for each item of damages, and the Debtors were unable to determine which figure Orlik relied upon. Therefore, the values and calculations attributed to Orlik throughout this Supplemental Reply are those that appeared on her damages calculation at Exhibit 3 to her Proof of Claim.

13

Club of Chicago, Inc. 49 F.3d 1219, 1231 (7th Cir. 1995).  Front pay may only be awarded until the plaintiff finds "employment comparable or superior to her old job."  Williams v. Pharmacia, 137 F.3d 944, 954 (7th Cir. 1998).  The court has broad equitable discretion regarding the award of back and front pay; the sole purpose of both of these types of damages is to make the plaintiff whole.  See Avita 49 F.3d at 1231.

        32.      Here, Orlik's back pay and front pay calculation is unsubstantiated and excessive.[9]  Indeed, ability to obtain back and front pay is dependent on the plaintiff receiving less in new employment with a new employer than she could have otherwise received had she not been terminated.  Orlik had an offer for comparable employment *before* Delphi terminated her.  See Brightpoint Letter.  Most important, at the time of her termination, her base salary at Delphi was $48,720.00/yr, and when she began employment with Brightpoint, her base starting salary there was $57,000.00/year.  Id.  Because she immediately found comparable employment, she is entitled neither to back pay nor front pay.

        33.      Even if Orlik were entitled to pecuniary damages – which she is not – her calculations are excessive.  For example, Orlik erroneously assumes that she would have been employed by Delphi until age 65 – a highly speculative assumption.  Likewise, she fails to take into account her employment offer from Brightpoint at a higher salary than she made at Delphi.  She includes health insurance benefits despite admitting that she has never elected health insurance at Delphi and her husband carries her on his policy.  A more accurate damage calculation, accounting for difference in value of the compensation package at Delphi and that at Brightpoint, indicates that Orlik would not be entitled to more than $34,765.82.  See Declaration of Steve W. Myers In Support Of Debtors' Supplemental Reply With Respect To Proof of Claim No. 12163, a true and accurate copy attached hereto as Exhibit C, ¶ 48.

---

[9] Orlik's calculations fail to differentiate between back pay and front pay.

14

*Orlik Cannot Recover Punitive Damages Under Title VII.*

34.     Orlik also claims the $300,000 statutory maximum of punitive damages in this Title VII case.  Orlik is not entitled to her alleged damages.  Punitive damages may be awarded in a Title VII case only "[i]f the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  This standard is met if, and only if, the plaintiff establishes:  (1) "that the employer acted with knowledge that its action may have violated federal law," and (2) "the employees who discriminated against him are managerial agents acting within the scope of their employment."  See, e.g., Bruso v. United Airlines, Inc., 239 F.3d 848, 857-58 (7th Cir. 2001) (citing Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999)).  If the plaintiff meets her burden, the "employer may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an antidiscrimination policy."  Id. at 858.

35.     As discussed above, Orlik has failed to establish that Delphi discriminated against her at all, much less with malice or reckless indifference.  None of the allegations in the complaint in the underlying action establishes the facts necessary to support punitive damages.  And Orlik has no evidence that Delphi took any action with knowledge that it would be violating federal law.  In fact, Delphi engaged in good faith efforts to implement an antidiscrimination policy in or around May 1999 and distribute a new Delphi Salaried Handbook (which included the policy) to all of its salaried employees, including Orlik.  Mills Dec. ¶ 26.  The handbook contained a policy that explicitly prohibited national origin harassment and detailed the reporting procedure.  Id.  Here, despite Orlik's multiple opportunities to report, she never complained about any alleged discrimination.  Id.  And, after Delphi received the EEOC charge, Delphi

15

management explicitly reviewed the grounds for charge, consulted with Delphi legal staff, and proceeded with its prior determination to terminate Orlik because the termination was unrelated to any EEOC allegations. Id. ¶ 25. Under these circumstances, Orlik is not entitled to any punitive damages much less the statutory maximum of $300,000 for an employer of Delphi's size. See 42 U.S.C. § 1981a(b)(3)(D).

> *Orlik Cannot Recover Compensatory Damages For Her State Law Retaliatory Discharge Claim.*

36. Orlik also claims $193,256.03 for alleged compensatory damages for her state law retaliatory discharge claim. Even if Orlik could recover any damages for this claim, she still could not recover the damages she seeks. Under Indiana law, "if the employee is able to find comparable employment, *damages may be recovered for the period in which he is unemployed*." Haas Carriage, Inc. v. Berna, 651 N.E.2d 284, 289-90 (Ind. Ct. App. 1995) (emphasis added). As explained above, Orlik found comparable employment with Brightpoint *before* she was terminated from Delphi and therefore she cannot recover any damages under Indiana law. The short time between her termination from Delphi and her employment starting at Brightpoint was a result of Orlik voluntarily taking an oversees trip therefore Orlik is not entitled to compensation for that period.

37. Orlik's claim for compensatory damages also arises from the same facts and circumstances as her Title VII damages claim, and the law does not permit her to recover her pecuniary losses *twice*. She also incorrectly claims pecuniary losses twice – once based on the state law public policy claim and again based on her Title VII claim – but the law does not permit a person to be made more than whole. See Gentile v. County of Suffolk, 962 F.2d 142, 153 (2d Cir. 1991) (internal citations omitted) (emphasis added) ("[W]hen a plaintiff seeks compensation for the same damages under different legal theories of wrongdoing, the plaintiff

16

should receive compensation for an item of damages only once."). In addition, the infirmities in Orlik's Title VII damage assumption apply equally here, and thus her damages calculation should be reduced accordingly and she is not entitled to more than $34,765.82. Myers Dec. ¶ 48. Orlik is not entitled to any damages for her state law retaliatory discharge claim. Nor is she entitled to any prejudgment interest because she did not make a written offer to settle this matter. See Indiana Code § 34-51-4-6; Gregory & Appel Ins. Agency v. Philadelphia Indemnity Ins. Co, 835 N.E.2d 1053, 1065 (Ind. Ct. App. 2005) (plaintiff denied prejudgment interest because he never made a written offer to settle).

> *Orlik Cannot Recover Punitive Damages For Her State Law Retaliatory Discharge Claim.*

38.     Orlik has not, and cannot demonstrate that she would be entitled to any punitive damages for the Indiana retaliatory discharge claim – let alone the excessive $579,768.09 punitive damage award to which she claims she is entitled.[10] Under Indiana law, "[p]unitive damages may be recovered only if there is clear and convincing evidence that the defendant's conduct was 'inconsistent with the hypothesis that the tortious conduct was the result of a mistake of fact or law, honest error of judgment, over-zealousness, mere negligence, or other such noniniquitious human failing." Hass Carriage, Inc., 651 N.E.2d at 290; see also Ind. Code § 34-51-3-2. Orlik has not provided evidence to support her state law punitive damage claim. In contrast, Delphi has demonstrated that Orlik never complained to her supervisor that she was asked to do anything illegal – or even that others' activities were illegal. Mills Dec. ¶ 20. Delphi also has demonstrated that Orlik's supervisor was not aware of Orlik raising any particular issues regarding "inappropriate and potentially actionable conflict of interest problems and accounting

---

[10]Orlik claims punitive damages to the *maximum* extent allowed under Indiana law. See Ind. Code § 34-51-3-4 ("A punitive damage award *may not be more than the greater* of: (1) three (3) times the amount of compensatory damages awarded in the action; or (2) fifty thousand dollars ($50,000).").

17

practices" outside the scope of Orlik's general internal audit duties.  Id.  Mills dealt with the concerns that Orlik mentioned in the ordinary course of business just as she dealt with concerns raised by other employees.  Id.  Accordingly, Orlik cannot recover punitive damages for her state law retaliatory discharge claim.

## Conclusion

39.    Orlik's failure to comply with this Court's order should not be excused and she should be barred from providing any testimony at the hearing on this matter.  To the extent she can introduce evidence of damages, her alleged damages are excessive, unsubstantiated and duplicative.  In any event, she flatly has not established grounds for any punitive damages here.  Therefore, the Proof of Claim should be disallowed and expunged.

## Memorandum of Law

40.    Because the legal points and authorities upon which this Supplemental Reply relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
February 21, 2007

      SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Albert L. Hogan III (AH 8807)
      Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

– and –

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:  /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,

Debtors and Debtors-in-Possession