# BARNES & THORNBURG LLP

11 South Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

Robert D. MacGill
(317) 231-7223
Email: robert.macgill@btlaw.com

www.btlaw.com

February 27, 2007

*Via Email and Federal Express*

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Courthouse
One Bowling Green
New York, New York 10004

    Re:    *In re Delphi Corporation*, Case no. 05-44481 (RDD)--December 12, 2006 Motion of Clarion Corporation of America, Pursuant to 11 U.S.C. §§ 503 and 507, For Allowance Of An Administrative Expense Claim (Docket No. 6135).

Dear Judge Drain:

    We write on behalf of our client, Clarion Corporation of America ("Clarion") in response to the February 23, 2007 letter (Docket No. 7044) to your chambers submitted by counsel for the Delphi Corporation and certain of its subsidiaries and affiliates (collectively, "Delphi") requesting a pre-motion conference under Local Rule 7056-1(a) regarding Delphi's intended motion for summary judgment with respect to Clarion' Motion for Allowance of an Administrative Claim (Docket No. 6135).

    Local Rule 7056-1(a) imposes the requirement upon the parties to request a pre-motion conference because "motions for summary judgment are frequently burdensome, in time and expense, for the Court and the parties." L.R. 7056-1(a) cmt. Further, the Court has found that parties "frequently file motions for summary judgment when an objective examination would reveal triable issues of fact or when the Court might conclude that it would be more cost-effective to resolve all issues at trial, given that most trials in bankruptcy courts are bench trials." *Id.* While the comment states that the pre-motion conference does not limit a party's right to file a motion for summary judgment, the clear implication is that the Court should dissuade parties from filing unwise, oppressive, or fruitless motions that will inevitably consume the parties' and Court's limited time and resources. For the following reasons, Clarion urges the Court to dissuade Delphi from proceeding with its intended summary judgment motion.

    First, Delphi is attempting an end-run around a case management plan that the parties just negotiated and submitted to the Court. On February 15, 2007, this Court signed that scheduling order. Among other things, the order contemplates that the parties will engage in written discovery and pursue depositions before submitting dispositive motions. Specifically, the plan

The Honorable Robert D. Drain
February 27, 2007
Page 2 of 4

requires the parties to exchange written discovery on February 16, 2007 (which the parties have done) and objections to that discovery on February 21 (which the parties have also done); to provide fact witnesses for deposition before March 30; and disclose experts by March 9 and take their depositions by March 30. Delphi's response date to Clarion's motion is not due until April 13, 2007, after the completion of discovery. And Clarion is permitted until April 20 to reply in support of its motion, before this Court holds an evidentiary hearing on April 25, 2007.

Clarion is entitled to pursue its negotiated discovery before it has to respond to Delphi's anticipated motion. Delphi's arguments for summary judgment are the same as its ultimate defenses to Clarion's motion -- namely, that the Long Term Agreements are integrated written documents and that those agreements do not provide for volume-based pricing. Thus, even if this Court decides it will entertain Delphi's summary judgment motion before it hears Clarion's motion for administrative claim, Clarion requests either (1) that the Court set Clarion's response date to Delphi's motion only after the completion of the discovery schedule agreed-upon by the parties and adopted by the Court or (2) that the Court also deviate from its prior scheduling order and require Delphi to produce its documents on Monday, March 5, and make its fact witnesses available on Wednesday, March 7, so that Clarion might have access to Delphi's discovery before being forced to respond to Delphi's motion. *See* Fed. R. Civ. P. 56(f) (allowing for continuance of response to motion for summary judgment to permit "depositions to be taken or discovery to be had.").

Clarion needs discovery to oppose Delphi's anticipated motion because, <u>second</u>, Delphi's anticipated grounds do not raise the pure issues of law or undisputed genuine issues of material fact that are appropriate for resolution by summary judgment. Genuine issues of material fact will preclude this Court from interpreting the relevant contracts as a matter of law and will necessitate a trial on the merits.

As set forth in Clarion's state-law complaint, attached as Exhibit A to its motion for an administrative claim, each of the exclusive requirements supply contracts at issue was bid for and awarded based upon volume-bracketed pricing. At Delphi's request, Clarion tied its price quotations to the volume of product to be ordered by Delphi. Moreover, with respect to the DA4.5C Playback Mechanism, the nomination letter Clarion received from Delphi informing Clarion that it had won Delphi's business expressly recognized that Clarion's winning bid was based upon a particular volume expectation and expressly guaranteed that if the volume did not reach that level, a different, higher price would govern retroactively to the start of Clarion's performance under the agreement. Similar representations and warranties with regarding to volume-based pricing were expressed by Delphi in the course of negotiating the other supply contracts.

Delphi contends that the facts regarding its solicitation of bids expressly tied to volume commitments and resulting agreements to buy product at prices associated with those particular volumes are irrelevant to its anticipated motion because a follow-on agreement, termed the long-term agreement (or LTA) did not make a representation of volume commitments and was fully integrated. Delphi's position is incorrect as a matter of fact and law on both points.

BARNES & THORNBURG LLP

Two of the three LTAs did make representations as to volume commitments. The LTA for the D.A 4.5C Playback Mechanism, for example, tied the per-unit price per progressive calendar year to an annual volume of 1.5M units. This is entirely consistent with Delphi's nomination letter, described above. Further, the LTA for the GIX and GIX-MP3 Playback Mechanisms also represented that the pricing therein was based upon a volume commitment of 1M+ units for both mechanisms. Delphi points to a subsequent LTA with respect to these GIX mechanisms that appears to omit this language, but Clarion is entitled to discover the facts with respect to that attempted modification and determine, at the least, the intent of both parties by the omission and whether such omission is operative or of any resulting effect. *See* Delphi's General Terms and Conditions at ¶ 29 ("This Contract may only be modified by a written contract amendment issued by the Buyer."). Furthermore, even if one entertains Delphi's factual representation that the LTAs are silent with respect to volume commitments, that does not, under Michigan law, resolve the issue of whether the Court may consider parol evidence to determine the parties intent. *See., e.g., Great American Environmental Service, Inc. v. Henricksen*, No. 251949, 2004 WL 2389211, at *5 (Mich. Ct. App. Oct. 26, 2004) ("The agreement is silent with respect to the amount to be charged for tipping fees; thus, because the agreement is incomplete on its face, parol evidence showing the parties' intent with respect to the amount of the tipping fees would be admissible, even though the agreement contains an integration clause.") (citing *UAW-GM Human Resource Center v KSL Recreation Corp*, 579 N.W.2d 411 (Mich. 1998) (parol evidence admissible notwithstanding merger clause "where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the "filling of gaps.").

Furthermore, Delphi will not be entitled to summary judgment as a matter of law. Delphi rests its argument for summary judgment that the LTAs are fully integrated and supersede all prior oral and written representations upon Delphi's General Terms and Conditions integration clause, which it contends is incorporated by reference into the LTAs. Delphi ignores the fact that its General Terms and Conditions define the "Contract" into which those terms and conditions are incorporated to include, among other things, any "other document, whether expressed in written form, by electronic data interchange or other tangible format, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this 'Contract')." General Terms and Conditions § 1. That "Contract" definition to which the General Terms and Conditions applies, therefore, is not only the LTA, as Delphi contends, but rather under its express terms all written documents, in whatever tangible format, related to the supply of these playback mechanisms, which would include, for example, Delphi's prior representations, written course of dealing, and agreements with respect to its solicitation and subsequent awarding of bids entirely predicated upon volume-based pricing.

At best, Delphi might contend that the Contract definition clause of the General Terms and Conditions conflicts with the integration clause upon which they rely. But if that is the argument, Michigan law, which governs the contracts at issue, is clear that "[i]f provisions of a contract irreconcilably conflict, the contractual language is ambiguous and the ambiguous language presents a question of fact to be decided by a jury." *Cole v. Auto Owners Ins. Co.*, 272 N.W.2d 922, 924 (Mich. Ct. App. 2006) (citing *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003)). Furthermore, the trier of fact must resort to extrinsic evidence in an effort to construe the parties' intent in interpreting an ambiguous contract, which again raises

BARNES & THORNBURG LLP

fact issues. *Id.*

For these and other reasons that Clarion will address more fully in its response, Delphi is not entitled to summary judgment on Clarion's motion for an administrative claim. Delphi's defenses inevitably raise genuine issues of material fact that the trier of fact must decide at an evidentiary hearing. For this reason, Clarion requests that the Court admonish against the filing of Delphi's anticipated motion at the pre-motion conference. Should Delphi proceed with its motion, Clarion requests that the Court set a briefing schedule on Delphi's motion that allows for Clarion to complete its discovery and set Delphi's motion for summary judgment for hearing at the April 25, 2007 hearing, particularly given the overlap between Delphi's summary judgment arguments and its ultimate defenses to Clarion's motion. Alternatively, Clarion requests that the Court accelerate the discovery schedule previously agreed-upon by the parties so that Clarion might have the benefit of the discovery it reasonably anticipates requiring before opposing Delphi's motion.

Sincerely,

Robert D. MacGill (wjh)

Robert D. MacGill

cc:   Albert L. Hogan, III, Esq., Skadden Arps
      Kurt Ramlo, Esq., Skadden Arps

INDS01 924807v1

**BARNES & THORNBURG LLP**