# Exhibit C

05-44481-rdd    Doc 7111-3    Filed 03/02/07    Entered 03/02/07 20:00:39    Exhibit C
Pg 1 of 9

# ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** is made and entered into this 2nd day of March, 2007, by and between Delphi Automotive Systems LLC, a Delaware limited liability company (the "Assignor") and The Metcalf Family Living Trust dated June 11, 1993  (the "Assignee"), and provides as follows:

## WITNESSETH:

**WHEREAS,** the Purchase and Sale Agreement dated as of March 2, 2007 (the "PSA") between Assignor, and Valeo Electrical Systems, Inc. (the "Seller") sets forth the terms by which Seller would agree to sell to Assignor certain premises consisting of approximately 437,800 square feet of building improvements located at 3000 University Drive, Auburn Hills, Michigan, (the "Property"), a copy of the PSA is attached hereto as **Exhibit A**; and

**WHEREAS,** Assignor has agreed to assign to Assignee its interest as Buyer, in and to the PSA and Assignee has agreed to accept such assignment and assume the obligations of Buyer under the PSA upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the parties hereto agree as follows:

1. Assignment and Assumption of the PSA.  Assignor hereby assigns to Assignee all of Assignee's right, title and interest in and Assignee hereby assumes and agrees to pay, discharge, and perform Assignor's rights and obligations arising from and after the date hereof related to the PSA.

2. Performance of Assigned Agreement.  Assignee shall be solely responsible for the performance of the obligations of Assignor related to the PSA from and after the date hereof and Assignee shall indemnify Assignor and hold it harmless from and against any and all claims, losses, damages, costs or expenses (including reasonable attorneys' fees) asserted against or incurred by Assignor due to any breach or default by Assignee related to the PSA from and after the date hereof.  The foregoing notwithstanding, any credits, prepaid expenses, advance payments, deposits and prepaid items either paid by Assignor or accruing to the benefit of Assignor prior to the date hereof shall be excluded from this Agreement and shall benefit the Assignor.  Assignor and Assignee agree that in the event that the parties are entitled to reimbursement pursuant to Section 6(b) of the PSA from Seller, Assignor shall be entitled to recover an amount equal to its actual and reasonable costs incurred in this transaction not to exceed Twenty Five Thousand Dollars and Assignee shall be entitled to recover an amount equal to its actual and reasonable costs incurred in this transaction not to exceed Fifty Thousand Dollars.

3. Representations and Warranties.  Assignee represents and warrants to Assignor that:

    (a) Assignee has full and lawful authority to accept assignment of and to agree to be bound by and perform all of the terms, covenants, obligations and conditions of the PSA on the part of the Buyer;

  (b)  Assignee shall timely and faithfully observe and perform all the terms, covenants, and conditions of the PSA to be observed and performed on Buyer's part under the PSA; and

  (c)  Assignee shall not amend the PSA without the prior written consent of Assignor, which Assignor may withhold in its sole and absolute discretion.

4. <u>Default</u> In the event Assignee shall do, or permit or suffer to be done, whether by action or inaction, anything contrary to any covenant or agreement on the part of Assignee herein contained, or shall fail in the keeping or performance of any of the covenants, agreements, terms, provisions, or conditions contained in the PSA which on the part of or behalf of Buyer are to be kept or performed, then the Assignee shall be considered in default hereunder and Assignor may, at its option, cure such default for the account of Assignee and any sum so expended by Assignor shall be paid by Assignee. Assignor, in addition to its other remedies, may terminate this Assignment, and Assignee shall nevertheless remain liable to Assignor for all sums due under this Assignment.

5. <u>Inspection and Due Diligence.</u>

 (A) Assignee has completed its due diligence inspection of the Property and accepts the Property in its present condition. Between Assignee and Assignor, Assignee shall be deemed to have waived any objection to the Property and to have affirmed the PSA and elected to purchase the Property with no reduction in the Purchase Price. Assignee represents and warrants that it is qualified through experience and training to make such investigation of the condition of the Property, both as to the type of investigation and as to the extent of the investigation, and that if Assignee is not qualified to make such investigation Assignee has the investigation made by persons who are so qualified. In purchasing and accepting the Property in its present condition, Assignee represents that it will rely solely upon its own investigation and will not rely upon any investigation or disclosure of Assignor regarding the Property.

 (B) Assignor shall not be obligated to conduct any inquiry or investigation regarding the condition of the Property in connection with this Assignment. The provisions herein shall survive the any closing of the sale of the Property to Assignee and execution of the Lease.

 (C) Assignee will send the Approval Notice (as defined in the PSA) or Termination Notice (as defined in the PSA) upon Assignor's direction.

 (D) Assignee will not send any notice either approving the condition of the Property (the "Approval Notice" as defined in the PSA) or a "Termination Notice" (as defined in the PSA), without Assignor's prior written approval. Notwithstanding anything to the contrary in this Assignment Agreement, if the Buyer's Conditions in the PSA are not timely satisfied: (i) Assignee shall have no obligation to deliver the Approval Notice; and (ii) may deliver the Termination Notice and receive its Deposit. If the Buyer's Conditions are timely satisfied, Assignor may require Assignee to send a

Termination Notice in Assignor's in sole and absolute discretion, in which case the entire Deposit shall be refunded to Assignee and Assignor shall reimburse Assignee for Assignee's actual and reasonable out-of-pocket expenses incurred in this transaction, with such expense reimbursement not to exceed a maximum of Fifty Thousand Dollars ($50,000.00).

6.     Post Closing Occupancy Rent.  Assignee hereby assigns to Assignor the Buyer's rights to any post-closing occupancy rent from Seller as set forth in the PSA. Assignee shall deliver any such post-closing occupancy rent received by Assignee from Seller or shall direct any escrow agent holding funds for post-closing occupancy rent to Assignor.

7.     Bill of Sale.  Upon the Closing of the PSA, Metcalf will execute and deliver the Bill of Sale attached hereto as **Exhibit B**.

8.     Notice.  All notices under the this Assignment shall be in writing and sent by registered or certified mail, or by nationally recognized overnight courier, postage prepaid, as follows:

If to Assignor:

   Delphi Automotive Systems LLC
   5825 Delphi Drive
   Troy Michigan 48095
   Attn:  Executive Director, Facility Services Group

   with a required copy to:

   Delphi Automotive Systems LLC
   5725 Delphi Drive
   Troy Michigan 48095
   Attn:  Deputy General Counsel – Transactional and Restructuring


If to Assignee:

   The Metcalf Family Living Trust dated June 11, 1993
   2920 Rohrer Drive
   Lafayette, CA 94549
   Attn:  David Metcalf

   With a copy to:

   Chris Hunter, Esq.
   Morgan Miller Blair
   1331 N. California Blvd., Suite 200
   Walnut Creek, CA  94596

-3-

Any party may change these persons or addresses to which notices are to be sent to it by giving notice as provided above. Notice shall be considered given and received upon receipt, or when receipt is rejected, by all persons and addresses to which notice is to be given.

9. Miscellaneous.

(a) This Agreement shall be binding upon and inure to the benefit of the Assignor and the Assignee and their respective successors and assigns. Assignee may not assign this agreement without Assignor's prior written consent.

(b) This Agreement shall be governed by the laws of the State of Michigan without reference to its conflicts of laws provisions.

(c) The paragraph headings used herein are for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

(d) Each and every provision of this Agreement shall be deemed severable and the invalidity or unenforceability of any one provision shall not affect the validity or enforceability of any other provision.

10. Conflict. In the event of a conflict between the terms of this Assignment and the terms of the PSA, the terms of this Assignment shall control.

11. Bankruptcy Court Approval. Assignor's obligations under this Agreement are contingent upon Bankruptcy Court Approval.

IN WITNESS WHEREOF, the parties have executed this Assignment Agreement as of the date first above written.

**ASSIGNOR:**                                              **ASSIGNEE:**

By: _____              By: _____

Its: _____             Its:_____

-4-

## Exhibit A

Purchase and Sale Agreement

**Exhibit B**

BILL OF SALE

For good and valuable consideration the receipt of which is hereby acknowledged, David R. Metcalf, Trustee of the Metcalf Family Living Trust dated June 11, 1993 ("**Seller**"), does sell, transfer, assign and convey to Delphi Automotive Systems LLC ("Buyer"), all of Seller's right, title and interest in the personal property owned by Seller that is listed on Schedule 1 attached hereto and located in or on the real property at 3000 University, Auburn Hills, Michigan (the "Personal Property").

Seller sells and delivers the Personal Property "as is" to Buyer, and Seller has not made, nor shall Seller be deemed to have made, any representation or warranty, express or implied, as to the value, merchantability, quality or fitness for use or purpose of the Personal Property. Seller warrants only that it has good and marketable title to the Personal Property and the Personal Property is not subject to any liens, claims, or encumbrances whatsoever.

Seller and Buyer agree as follows:

A. The Personal Property is furnished "AS IS", "WHERE IS", AND WITH ALL FAULTS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY NATURE WHATSOEVER, EXPRESS OR IMPLIED, ORAL OR WRITTEN, AND IN PARTICULAR, WITHOUT ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS BILL OF SALE, SELLER DISCLAIMS AND BUYER HEREBY WAIVES ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR DEMAND IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND PATENT INFRINGEMENT), STRICT LIABILITY OR OTHERWISE WITH RESPECT TO THE PERSONAL PROPERTY. Without limiting the generality of the foregoing, Buyer acknowledges and agrees: (i) that Seller neither represents nor warrants that the Personal Property conveyed under this Bill of Sale will operate satisfactorily, (ii) that Seller shall have no liability or responsibility for the condition and/or operation of the Personal Property after transfer to Buyer, its agents, representatives and/or contractors, and (iii) that Buyer is purchasing the Personal Property based solely upon its own inspection, evaluation, review and analysis and Buyer assumes the entire risk associated with such inspection, evaluation, review and analysis being incomplete or inaccurate.

B. In no event, whether occasioned by breach of contract, breach of warranty, tort (including negligence), strict liability or otherwise, shall Seller be liable to Buyer for incidental, indirect, special or consequential damages.

This sale is made without warranty of title or other warranty of any kind.

DATED this _____ day of _____, 2007.

**<u>SELLER</u>**:

DAVID R. METCALF,
Trustee of the Metcalf Family Living Trust dated June 11, 1993

By:_____

Print Name:  David R. Metcalf_____

Its:_____Trustee_____

**Schedule 1**
**to**
**Bill of Sale**

**List of Personal Property**

A. <u>**Office Area:**</u>
   1. Modular Furniture
   2. PBX and Handsets

B. <u>**Lab Area:**</u>
   1. Air Compressor #1
   2. Air Compressor #2
   3. Air Compressor #3