# Exhibit D

05-44481-rdd    Doc 7111-4    Filed 03/02/07    Entered 03/02/07 20:00:39    Exhibit D
Pg 1 of 9

## **SUBLEASE AGREEMENT**

This **SUBLEASE AGREEMENT** dated as of April ____, 2007 by and between Delphi Automotive Systems LLC, with offices at 5725 Delphi Drive, Troy, Michigan 48098 ("SUBLESSOR"), and Valeo Electrical Systems, Inc., with offices at 4100 N. Atlantic Boulevard, Auburn Hills, Michigan 48326 ("SUBLESSEE"), is based upon the following:

A. Sublessor has leased, as Tenant, from The Metcalf Family Living Trust dated June 11, 1993, as Landlord ("PRIME LANDLORD"), premises located at 3000 University Drive, in the City of Auburn Hills, County of Oakland, State of Michigan (the "DEMISED PREMISES"), pursuant to a certain lease dated March 2, 2007(the "PRIME LEASE"); and

B. Sublessor desires to sublet to Sublessee and Sublessee desires to hire from Sublessor a portion of the Demised Premises as described on Exhibit A attached hereto; and

NOW THEREFORE, the parties agree as follows:

1. **SUBLEASE.** Sublessor hereby sublets to Sublessee a portion of the Demised Premises, for use as general office, research laboratory and for no other purpose, as follows:

(a) The "Sublet Premises," as described on Exhibit A hereto, consists of one hundred forty-one thousand eight hundred (141,800) square feet as shown on Exhibits A-1, A-2, A-3 and A-5 attached hereto and made a part hereof.

(b) On or prior to one hundred twenty (120) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-2, A-3 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be reduced to fifty-seven thousand (57,000) square feet.

(c) On or prior to one hundred fifty (150) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-1 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be vacated in its entirety.

(d) During the term, Sublessor shall provide Sublessee with access to those portions of the IT Areas that are then portions of the Sublet Premises and Sublessee shall provide Sublessor access to those portions of the IT Areas which are not then portions of the Sublet Premises.

(e) During the term, Sublessee shall provide Sublessor with access to the portions of the laboratory space not part of the Sublet Premises and the restroom area in the laboratory area.

(f) Sublessee shall also have the right to utilize portions of the common areas of the Demised Premises as well as the parking areas in order to reasonably utilize the Sublet Premises during the term.

(g) Notwithstanding anything herein contained to the contrary, Sublessee may vacate and surrender portions of the Sublet Premises to Sublessor at any time and from time to time and upon such surrender in good broom clean condition, good order and repair, reasonable wear and tear excepted,

such surrendered portion of the Sublet Premises shall no longer be part of the Sublet Premises and Rent under Paragraph 3 shall be adjusted accordingly.

2.     **TERM.**   The term of this sublease ("SUBLEASE TERM") shall commence on the Commencement Date and shall expire One Hundred Fifty (150) days after the Commencement Date, or such earlier date upon which the Sublease Term expires or terminates pursuant to the provisions of this Sublease or pursuant to law.

3.     **RENT.**

(a)     The rent for the Sublease Term shall be Seven Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($780,250.00) ("Rent").  The foregoing amount has been determined based on Sublessee occupying the entire Sublet Premises for the full Sublease Term of each respective portion of the Sublet Premises.  Such Rent shall be paid to Sublessor in accordance with the terms of the "Escrow Agreement," as defined in Paragraph 4 hereof.

(b)     The Rent paid pursuant to this Paragraph 3 is paid on a gross basis and Sublessor shall pay all costs and expenses of operating and maintaining the Demised Premises, except that Sublessee shall provide janitorial service to the Sublet Premises at its sole cost and expense.

4.     **ESCROW AGREEMENT.**   Sublessee shall deposit with Lawyers Title Insurance Corporation (the "Escrow Agent") pursuant to an Escrow Agreement executed by Sublessee, Sublessor and the Escrow Agent, the sum of Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00) (the "Sublease Escrow Funds") to be utilized to satisfy Sublessee's obligations under this Sublease.  Escrow Agent will disburse the Sublease Escrow Funds pursuant to the terms of the Escrow Agreement.

5.     **MAINTENANCE AND REPAIR.**

(a)     Except as provided in Paragraph 5(b) hereof, Sublessor covenants and agrees that Sublessor will, at Sublessor's expense, during the continuation of this Sublease, keep the said Sublet Premises and the Demised Premises in good repair.

(b)     Sublessee shall repair any damage caused to the Demises Premises resulting from the negligence or wrongful acts of Sublessee, Nidec, and Sublessee's and Nidec's agents, contractors or employees.  Sublessee shall not be required to make any other repairs or replacements to the Demised Premises.

(c)     Sublessee shall not perform any acts or carry on any practices which may injure the Demised Premises or be a nuisance or menace to Sublessor.  Sublessee shall not conduct its business in a manner which would cause an increase in Sublessor's insurance premiums for the Demised Premises other than Sublessee's current operations.

(d)     The Sublessee shall at Sublessee's own expense under penalty of forfeiture and damages promptly comply with all lawful laws, orders, regulations or ordinances of all municipal, County and State authorities affecting the cleanliness, safety, occupation and use of same, except that Sublessee shall not be required to make any alterations to the Sublet Premises to so comply.

2

6. **UTILITIES AND TAXES.** Sublessor shall pay for all gas, water, heat and electricity charges for the Demised Premises during the term of this Sublease. Sublessor shall pay the real estate taxes and installments of special assessments relating to the Demised Premises during the term of this Sublease.

7. **DAMAGE OR INJURY.** Neither Prime Landlord nor Sublessor shall be responsible or liable to the Sublessee for any loss or damage (a) to Property or injury to persons sustained by Sublessee or others, caused by conditions or activities on the Sublet Premises (other than due to Sublessor's failure to repair), (b) that may be caused by the acts or omissions of persons occupying adjoining premises (other than Sublessor) or any part of the Demised Premises or (c) for any loss or damage resulting to Sublessee or Sublessee's property from bursting, stoppage or leaking of water, gas, sewer or steam pipes.

8. **INSURANCE.**

    (a)    (i)    Sublessee shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage. Such insurance shall name Sublessor and the Prime Landlord, as "additional insureds," shall specifically include the liability assumed hereunder by Sublessee, and shall provide that it is primary insurance and not excess over or contributory with any other valid, existing and applicable insurance in force for or on behalf of Sublessor and the Prime Landlord.

    (ii)    Sublessee shall procure and keep in effect "all risks" (also known as "special cause of loss," including theft, and leakage from fire protective devices) property insurance for the full replacement cost of Sublessee's trade fixtures, equipment, and personal property.

    (iii)    On Sublessor's or Prime Landlord's reasonable request, Sublessee shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

    (b)    (i)    Sublessor shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage. Such insurance shall name Sublessee and the Prime Landlord as "additional insureds" and shall specifically include the liability assumed hereunder by Sublessor.

    (ii)    Sublessor shall procure and keep in effect "all risks" (also known as "special cause of loss", including theft, and leakage from fire protective devices) property insurance for the full replacement value of the Demised Premises.

    (iii)    On Sublessee's reasonable request, Sublessor shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

    (c)    Sublessor, Sublessee and the Prime Landlord shall each be released from any liability (by way of subrogation or otherwise) for loss or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under workers' compensation laws and benefits, resulting from

3

damage by fire or casualty, irrespective of the cause of such fire or casualty to the extent that such loss or damage is insured or required to be insured under this Sublease.

9. **SERVICES BY PRIME LANDLORD.** Sublessee shall look only to Sublessor for any services to be furnished to Sublessee in accordance with this Sublease.

10. **ALTERATIONS.** Sublessee shall not make any alterations, additions or improvements upon or to the Sublet Premises without the prior written consent of Sublessor and Prime Landlord. Any permitted alterations, additions and improvements shall be made at the sole cost of Sublessee and shall become the property of Sublessor and shall remain on and be surrendered with the Sublet Premises at the termination of this Sublease; however, Sublessor, at the time of Sublessor's approval, may designate by written notice to Sublessee those alterations, additions, and improvements which shall be removed by Sublessee at the expiration or termination of this Sublease and Sublessee shall promptly remove the same and repair any damage to the Sublet Premises caused by such removal. Notwithstanding anything herein contained to the contrary, the movable office furniture, trade fixtures, business equipment and other personal property of Sublessee (other than any items included in the definition of Property under the Purchase and Sale Agreement dated March 2, 2007 between Sublessor and Sublessee) shall remain its property and may be removed from the Sublet Premises at the end of the Subleased Term. Sublessee shall deliver up the Sublet Premises, at the expiration or sooner termination of the term of this Sublease, in as good condition as they are now in and in a broom clean condition, ordinary wear, damage resulting from Sublessor's failure to repair, fire and other casualties excepted.

11. **ACCESS.** At all reasonable hours, the Sublet Premises shall be open to Prime Landlord and Sublessor, their agents and representatives for inspecting or for repairs, additions or alterations by either party.

12. **SUBLESSEE'S COVENANTS.** Sublessee covenants with Sublessor to hire the Sublet Premises and to pay the Rent therefor as aforesaid, that it will commit no waste, nor suffer the same to be committed thereon, nor injure nor misuse the same; and also that it shall not make alterations therein, nor use the same for any purposes but that hereinbefore authorized. Sublessee has inspected the Sublet Premises and accepts same in their present condition, without any warranties or representations (expressed or implied) being relied upon and is relying upon its own inspection. Sublessee further covenants that this Sublease shall not be assigned, encumbered or otherwise transferred, and the Sublet Premises shall not be further sublet by Sublessee, in whole or in part, and Sublessee shall neither suffer nor permit any of the Sublet Premise to be used or occupied by others without the prior consent of Prime Landlord in each instance; provided however, that notwithstanding the foregoing, Sublessee has the right to sublet to or otherwise permit Nidec Motors and Actuators USA, Inc. ("Nidec") to occupy portions of the Sublet Premises during the Term of this Sublease.

13. **PRIME LEASE.**

(a) Notwithstanding that this Sublease is a sublease, Prime Landlord, Sublessor and Sublessee acknowledge that the terms and provisions of this Sublease shall not be subordinate to the Prime Lease but that this Sublease contains all of the terms and conditions which have been agreed to by the parties without reference to the Prime Lease.

4

(b)     Notwithstanding anything contained to the contrary in the Prime Lease or in this Sublease, the parties agree that in the event of cancellation of the Prime Lease for any reason whatsoever, including the default of Sublessor, as tenant thereunder, or the surrender thereof, whether voluntary, involuntary or by operation of law, this Sublease shall not thereby be cancelled or terminated, but Sublessee shall make full and complete attornment to the Prime Landlord and the Prime Landlord shall recognize all of Sublessee's rights hereunder for the balance of the Sublease Term with the same force and effect as thought this Sublease were originally made from the Prime Landlord to Sublessee hereunder.

(c)     The Prime Landlord has executed his consent to this Sublease in order to evidence his acceptance and agreement to the foregoing provisions of this Paragraph 13.

14.     **FIRE.**  It is understood and agreed that if the Sublet Premises are damaged or destroyed in whole or in part by fire or other casualty during the term, Sublessor will repair and restore the same to good tenantable condition with reasonable dispatch, and the Rent herein provided for shall abate entirely in case the entire Sublet Premises are untenantable and pro rata for the portion rendered untenantable, in case a part only is untenantable, until the Sublet Premises are restored to a tenantable condition. If the Sublessee shall fail to adjust Sublessee's own insurance or to remove damaged goods, wares, equipment or property within a reasonable time, and as a result thereof the repairing and restoration is delayed, there shall be no abatement of rental during the period of such delay.  If Sublessee shall use any part of the Sublet Premises for storage during the period of repair a reasonable charge shall be made therefor against Sublessee.  In case the Sublet Premises, or the Demised Premises shall be destroyed to the extent of more than one-half of the value thereof, Sublessor shall have the option to terminate this Sublease by written notice to Sublessee.  In no event shall Sublessor be required to repair or replace Sublessee's merchandise, trade fixtures, leasehold improvements, business machines, equipment, freight or materials stored at the Sublet Premises.

15.     **INDEMNITY.**  Each of Sublessor and Sublessee (the "Indemnitor") shall hold the other and the Prime Landlord (the "Indemnitees") harmless from any damage to any property or injury to or death of any person arising in, on or upon the Demised Premises arising from the negligence or wrongful acts of the Indemnitor, its agents, contractors and/or employees (including in the case of, Sublessee, the negligence or wrongful acts of Nidec).  The foregoing indemnity obligations shall include reasonable attorneys' fees, investigation costs and other reasonable costs and expenses incurred by the Indemnitees from the first notice that any claim or demand is to be made or may be made.  The provisions of this Paragraph 15 shall survive the termination of this Sublease with respect to any damage, injury or death occurring prior to such termination.

16.     **DEFAULT AND REENTRY.**

(a)     If Sublessee shall be in default in performing any of the terms of this Sublease, Sublessor shall give Sublessee written notice of such default, and if Sublessee shall fail to cure such default within thirty (30) days after the receipt of such notice, or if the default is of such a character as to reasonably require more than thirty (30) days to cure, then if Sublessee shall fail, within said thirty (30) day period, to commence and thereafter proceed diligently to cure such default, then and in either of such events, Sublessor may (at its option and in addition to its other legal remedies) cure such default for the account of Sublessee, and any sum so expended by Sublessor plus interest shall be Rent for all purposes hereunder, and shall be paid by Sublessee with the next installment of Rent.

5

(b)     If any Rent referred to in Paragraph 16(a) hereof shall be due and unpaid or Sublessee shall be in default upon any of the other terms of this Sublease, and such default has not been cured after notice and within the time provided in Paragraph 16(a) hereof, then Sublessor, in addition to its other remedies, shall have the immediate right of re-entry.  Should Sublessor re-enter or take possession pursuant to legal proceedings or any notice provided for by law, Sublessor may terminate this Sublease and recover from Sublessee (or from the Escrow Funds) all amounts due Sublessor hereunder

17.     **QUIET ENJOYMENT.**  Sublessor covenants that Sublessee, on payment of all Rent due and performing all the covenants herein, shall and may peacefully and quietly have, hold and enjoy the Sublet Premises for the Term.

18.     **EXPENSES.**  The prevailing party in any lawsuit between Sublessor and Sublessee shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and costs.

19.     **REMEDIES NOT EXCLUSIVE.**  It is agreed that each and every of the rights, remedies and benefits provided by this Sublease shall be cumulative, and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

20.     **WAIVER.**  One or more waivers of any covenant or condition by Sublessor or Sublessee shall not be construed as a waiver of a further breach of the same covenant or condition.

21.     **NOTICES.**  Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Sublessee at 4100 N. Atlantic Boulevard, Auburn Hills, Michigan 48326 or to Sublessor, at the Demised Premises with a copy to the Manager, Real Estate Services, 5825 Delphi Drive, MC 480-410-174, Troy, Michigan 48098 or at such other place as may be designated by the parties from time to time.

22.     **HAZARDOUS SUBSTANCES.**  Sublessee shall not use, store, or dispose of any hazardous substances upon the Demised Premises, except use and storage of such substances if they are customarily used in Sublessee's business, and such use and storage complies with all environmental laws and regulations. Hazardous substances means any hazardous waste, substance or toxic materials regulated under any federal or state environmental laws or local regulations or ordinances applicable to the property. Notwithstanding anything herein contained to the contrary, Sublessor acknowledges that Sublessee's operation of the Sublet Premises in accordance with its prior practices shall not violate the provisions of this Paragraph 22.

23.     **HOLDING OVER.**  It is hereby agreed that if Sublessee holds over after the termination of this Sublease or the date to exclude the respective portion from the Sublet Premises as described in Paragraph 1 (including any holdover occupancy by Nidec), with respect to any portion of the Sublet Premises, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary and Sublessee shall pay as Rent for such portion of the Sublet Premises at the rate of $.0417 per square foot per day plus $3,800 per day for each day until the date such portion of the Sublet Premises are delivered to Sublessor

24.     **SURRENDER.**  Upon surrender, Sublessee shall promptly deliver all keys for the Sublet Premises to Sublessor at the place then fixed for notice.  No surrender of the Sublet Premises by

6

Sublessee, nor delivery of the keys therefor to Sublessor, nor acceptance by Sublessor of such surrender of keys, shall operate or be construed as relieving Sublessee of any of its obligations hereunder. This Sublease and the tenancy hereby created shall cease and terminate at the end of the original term hereof, and Sublessee hereby waives notice to move and agrees that Sublessor shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Sublet Premises from a tenant holding over to the same extent as if statutory notice were given.

All property, equipment, fixtures, and inventory including without limitation, all personal property, goods, improvements, fixtures and merchandise or any property owned or controlled by Sublessee left on the Demised Premises when Sublessee vacates shall be deemed to have been abandoned by Sublessee, and by such abandonment, Sublessee and any other person or corporation claiming through or under Sublessee, automatically relinquishes any right or interest therein and authorizes Sublessor to sell, dispose of, or destroy same. Sublessor shall have the exclusive right to retain all proceeds from any sale. Sublessee shall be liable to Sublessor for any reasonable costs of removal of Sublessee's property.

**IN WITNESS WHEREOF,** the parties hereto have executed this Sublease as of the date set forth above.

**SUBLESSOR:**   Delphi Automotive Systems LLC

_____   By:   _____
   Witness

   Its:   _____

**SUBLESSEE:**   Valeo Electrical Systems, Inc.

_____   By:   _____
   Witness

   Its:   _____

      The Prime Landlord hereby consents to the foregoing Sublease and specifically to the provisions of Paragraphs 13(a) and (b) of such Sublease.

                                          The Metcalf Family Living Trust dated June 11, 1993

_____                  By:   _____

    Witness                                                                                , Trustee

DETROIT.2514621.2

8