SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan III
John K. Lyons
Ron E. Meisler

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession
Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                        :
                                        :
In re                                   :   Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :   Case No. 05-44481 (RDD)
                                        :
Debtors.                                :   Jointly Administered
                                        :
------------------------------------------------------------x

## RESPONSE TO DEBTORS' FIRST REQUESTS FOR ADMISSIONS

Delphi Corporation and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, by and through their attorneys, request that Joseph Reno make the admissions set forth below pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims. The Debtors note that Joseph Reno failed to timely file a Supplemental Response, and expressly reserve the right to propound additional requests to the extent Joseph Reno files additional pleadings.

Instructions and Definitions

A. The requirements of Rules 7033-1 and 7034-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") are incorporated herein.

B. The Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern District of New York, incorporated by reference in Rule 7026–1 of the Local Rules shall apply to these requests for production.

C. "Bankruptcy Code" means the United States Code, 11 U.S.C. § 101 et. seq., as amended.

D. "Chapter 11 proceedings" means the Debtors' filings for protection under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York on or about October 8, 2005.

E. "Claim" means that which is defined by section 101(5) of the Bankruptcy Code.

F. "Communication" means the transmittal of information of any kind, in any form and by any means.

G. "Debtors" means Delphi Corporation, its affiliated debtors and debtors-in possession and/or any of its predecessor(s) or successor(s) in interest, parent corporations, subsidiaries, affiliates and other related entities, owners, officers, directors, employees, agents and beneficiaries, including attorneys, consultants and independent contractors.

H. "Reno" or the "Claimant" means Joseph Reno.

I. "Onyx" means Onyx Industrial Services.

J. "Proof of Claim" means proof of claim number 9956 filed by Reno.

K. "Response" means Reno's Response To Debtors' Objection To Claim No. 9965.

L. "Third Omnibus Claims Objection" means Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c).

3

Requests for Admissions

1. Admit that on February 16, 2004, before reporting the wastewater leak to his supervisor, Mark Gooding, Reno was interviewed by Mike Brown in conjunction with the internal investigation of Reno's use of Onyx disposal services.

**Response:** In response to Request for Admission No. 1, Claimant admits only that a leak of hazardous hexavalent chromium, a known carcinogen, was discovered on Friday, February 13, 2004, and that Mark Gooding was informed of this hazard to public safety prior to any interview with Investigator Brown on or about February 16, 2004.

2. Admit that when investigator Mike Brown scheduled an interview with the Claimant, Mr. Brown did not inform the Claimant of the purpose for the interview.

**Response:** In response to Request for Admission No. 2, Claimant admits only that prior to his interview with Investigator Brown, he (the Claimant) was informed of the purpose of this interview both by Troy Calton and by Claimant's former supervisor at Delphi.

3. Admit that the Claimant appeared at the February 16, 2004 interview and presented Mr. Brown with two typed statements signed by employees subordinate to the Claimant asserting that they had overheard earlier conversations between the Claimant and the Onyx driver, Troy Carlton, absolving the Claimant of any conduct that contravened Delphi policies relating to conflicts of interest involving vendors of Delphi.

**Response:** In response to Request for Admission No. 3, Claimant admits only that he obtained two witness statements, each independently authored, one by a Delphi employee and the other by an independent contractor. True and accurate copies of

4

of these signed witness statements are attached as Exhibits "A" and "B" and incorporated herein.

4. Admit that Reno was suspended with full pay and benefits on February 20, 2004, before sending his March 2, 2004 letter to Delphi's Legal-Environmental Department.

**Response:** Admitted.

5. Admit that on March 4, 2004 James Walle of Delphi's Legal-Environmental Department sent a letter to the Claimant acknowledging receipt of the Claimant's March 2, 2004 letter and promising to look into the situation, and Delphi subsequently commissioned both internal and outside engineers to investigate the safety of the chrome wastewater tanks.

**Response:** In response to Request for Admission No. 5, Claimant admits only (1) that Attorney Walle did send a letter dated March 4, 2004, (2) that this March 4 letter failed to comply with Ohio law (O.R.C. 4113.52), and (3) that the On-Site Report of Delphi's own inspectors (American Testing Services, Ltd.) dated February 20, 2004, (the same day as Claimant's suspension from Delphi employment) stated in pertinent part that due to a "fifteen inch crack" the involved tank was "rejected" and in violation of "ASW D1.1". A true and accurate copy of Delphi's own February 20, 2004, Inspection Report is attached as Exhibit "C" and incorporated herein.

6. Admit that the decision to suspend and later terminate the Claimant was made by Elizabeth Meyer, the Divisional Salaried Personnel Director, whose office was in Troy, Michigan, more than 100 miles north of the Claimant's place of employment, and that Ms. Meyer's decisions were based on the investigation conducted by Mike Brown

and were independent and without knowledge of the claimant's March 2, 2004 letter to James Walle.

**Response:** In response to Request for Admission No. 6, Claimant admits only that on September 28, 2005, Glenn Howarth, Delphi's Director of North America Regional Operations and Technical Services, gave sworn testimony that "Beth Patrick and myself [Glenn Howarth]" made the decision to terminate Mr. Reno's employment and that he [Glenn Howarth] was at that time fully "aware of the letter [March 2, 2004 whistleblower letter by Claimant]". A true and accurate copy of Mr. Howarth's sworn testimony is attached as Exhibit "D" and incorporated herein.

7. Admit that Reno did not object to the finding by the Department of Labor that (i) Delphi terminated Reno for misappropriating company assets, taking personal advantage of his business relationship with Delphi supplier, and trying to obstruct and mislead Delphi's subsequent investigation, and (ii) there was no reasonable cause to believe that Delphi violated Reno's rights under Section 21 and 42 U.S.C. 5851 and Section 11(c) and 29 C.F.R. 1977.9(a) and (c).

**Response:** In response to Request for Admission No. 7, Claimant admits only (1) that he filed Case No. 3:04CV0321 in the United States District Court, Southern District of Ohio, objecting to his wrongful termination of employment by Delphi, (2) that the Ohio Department of Job and Family Services has ruled, over Delphi's objection, that its termination of Claimant's employment was "without just cause", and (3) that discovery in Case No. 3:04CV0321 has evidenced the fact that Delphi representatives made significant misstatements of material fact to OSHA during the course of OSHA's government investigation.

6

February 4, 2004

In the lab, I heard a conversation between Joe Reno and Troy Calton. Joe talked to Troy about setting a box out at his new house for yard debris.

Troy said he didn't know how he'd bill for that. Joe said he would pay the tipping charge, whatever it was.

*D. K. Atchison*

David K. Atchison

EXHIBIT "A"

Date: 2/4/04

To: Joe Reno

From : David Low

Joe, I have recollection of conversation between you and Troy Calton. Where Troy asked, "How do I bill this?" and you replied "I can pay for it." I do not know what the conversation was about. I also do not remember the date of this conservation. This conversation was in the WTP control room and I think Dave Atchison was also present.

Dave Low

**EXHIBIT "B"**



American Testing Services, Ltd.
3060 East River Road
Dayton, OH 45439

## On-Site Inspection Report

**Customer Information**

Pyramid Riggers
2076 North Broad Street
Fairborn,     Ohio    45324

**Date:** 2-20-04
**PO Number:**
**Job Number:** ATS-MPF-471

**Item(s) to be Inspected:**
100% of welds on floor of chromic acid waste tank

**Inspection Method(s) to be Utilized:**
hand yoke S/N 1018 and 10517 dry red powder batch #038707-014

**Specification or Code:**
ASW D1.1 / no cracks allowed

**Results of Inspection:**
100% of welds on floor were inspected and were accepted at time of inspection. There was one crack located on the floor at the south end approx. 1.5" from outside wall and 2" west of the center weld. Crack is approx. 15" long. This tank is rejected.

**Technician:** Jeff Adams Level III
Signature on File

EXHIBIT "C"

DC 417

## READINGS AND LOCATIONS SIDE WALL
### South



Manway → 
North

Wall thickness Readings.

Orig. 0.25 in

| | | | |
|---|---|---|---|
| 58. | .253 | 69. | .255 |
| 59. | .254 | 70. | .267 |
| 60. | .252 | 71. | .264 |
| 61. | .248 | 72. | .266 |
| 62. | .246 | 73. | .268 |
| 63. | .249 | 74. | .264 |
| 64. | .252 | 75. | .262 |
| 65. | .255 | 76. | .259 |
| 66. | .260 | 77. | .248 |
| 67. | .260 | 78. | 255 |
| 68. | .256 | 79. | .253 |

DC 418

## READINGS AND LOCATIONS OF FLOOR



Floor reading.
Orig - 0.25 in

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. | .266 | 16. | .272 | 31. | .264 | 46. | .268 |
| 2. | .287 | 17. | .280 | 32. | .263 | 47. | .260 |
| 3. | .283 | 18. | .270 | 33. | .262 | 48. | .270 |
| 4. | .245 | 19. | .221 | 34. | .244 | 49. | .276 |
| 5. | .254 | 20. | .243 | 35. | .268 | 50. | .257 |
| 6. | .246 | 21. | .251 | 36. | .250 | 51. | .256 |
| 7. | .246 | 22. | .246 | 37. | .258 | 52. | .256 |
| 8. | .262 | 23. | .239 | 38. | .246 | 53. | .259 |
| 9. | .257 | 24. | .263 | 39. | .268 | 54. | .258 |
| 10. | .268 | 25. | .230 | 40. | .253 | 55. | .246 |
| 11. | .249 | 26. | .264 | 41. | .248 | 56. | .268 |
| 12. | .239 | 27. | .265 | 42. | .266 | 57. | .263 |
| 13. | .254 | 28. | .247 | 43. | .257 | | |
| 14. | .239 | 29. | .255 | 44. | .253 | | |
| 15. | .265 | 30. | .255 | 45. | .257 | | |

DC 419

```
 1                  UNITED STATES DISTRICT COURT
 2              FOR THE SOUTHERN DISTRICT OF OHIO
 3                        WESTERN DIVISION
 4
 5   JOSEPH RENO,
 6              Plaintiff,
 7        vs.                          Case No. 3:04-CV-0321
 8                                     Hon. Walter Herbert Rice
 9   DELPHI CORPORATION,
10              Defendant.                    ORIGINAL
11        _____
12
13
14        The Deposition of GLENN HOWARTH,
15        Taken at 30800 Telegraph Road, Suite 2925,
16        Bingham Farms, Michigan,
17        Commencing at 9:02 a.m.,
18        Wednesday, September 28, 2005,
19        Before Susan L. Law, CSR-3597.
20
21
22
23
24
25
```



BIENENSTOCK
COURT REPORTING & VIDEO



EXHIBIT "D"

```
1       operation at its plant in Nodia, N-O-D-I-A, India?
2               MR. LEWIS:  Object to form, foundation.
3   A.  I guess I'm not -- I do not know specifically, no.
4   BY MR. CHALKER:
5   Q.  Okay.  Do you know when Mr. Reno's employment with
6       Delphi Corporation was terminated?
7   A.  Yes, I do.
8   Q.  When was that?
9   A.  Based on Jeff Peterson's report to OSHA, I believe it
10      was March 17th.
11  Q.  2004?
12  A.  2004, yes.
13  Q.  Who made the ultimate decision to terminate Mr. Reno's
14      Delphi employment on March 17th, 2004?
15              MR. LEWIS:  Object to form.  Go ahead.
16  A.  From what I recall, it was Beth Patrick and myself
17      and, I believe, Maryann Polvinen was probably also
18      involved with the discussion.
19  BY MR. CHALKER:
20  Q.  This was a joint decision between these folks you've
21      just said?
22  A.  I think it was a -- we had a -- we had a meeting to
23      discuss the situation, and Beth Patrick and myself
24      made the ultimate decision.
25  Q.  Okay.  At the time you participated in this decision
```


BIENENSTOCK
COURT REPORTING & VIDEO

```
 1        to terminate Joe Reno's employment, were you aware --
 2        well, based on your prior testimony I guess you were,
 3        but let me just get this on the record.  Were you
 4        aware of the letter that Joe Reno had sent to Attorney
 5        Walle dated March 2nd of 2004?
 6                  MR. LEWIS:  Object to form.
 7   A.   Yes, I was aware of the letter.
 8   BY MR. CHALKER:
 9   Q.   You've referred on several occasions to Jeff
10        Peterson's letter.  Let me -- we're almost done.  Let
11        me show you what's been previously marked as
12        Plaintiff's Exhibit 23, and ask if this is the letter
13        without the attachments that you have been referring
14        to throughout your -- course of your deposition?
15   A.   Yes.
16   Q.   Okay.  Would you look at the last page of what's been
17        previously marked as Plaintiff's Exhibit 23 and note
18        the highlighted portion thereon.  I will represent to
19        you that the highlighting is mine, it was not on the
20        original document.  Do you see that?
21   A.   Yes, I do.
22   Q.   I'm going to read it and ask you so it's in the
23        record.
24             "Complainant was terminated solely because
25        he entered into a private arrangement that
```



## ACKNOWLEDGMENT

STATE OF OHIO            )
                         ) SS:
COUNTY OF MONTGOMERY     )

      Now comes Joseph Reno and hereby states that the foregoing responses are true and accurate to the best of my recollection.

_____
Joseph Reno

      Sworn to and subscribed in my presence by the said Joseph Reno this 5th day of ~~January~~ February 2007.

_____
Notary Public

BRAD A. CHALKER, Attorney at Law
Notary Public, State of Ohio
My Commission has no expiration date
Section 147.03 O. R. C

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by DHL delivery on this 5th day of February, 2007 to the following:

John William Butler, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

and by regular U.S. Mail to:

Kayalyn A. Marafioti, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

_____
Brad A. Chalker