**LOWENSTEIN SANDLER PC**
Michael S. Etkin, (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
           and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the Prospective Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br> DELPHI CORPORATION, et al., <br><br> Debtors. | Chapter 11 <br><br> Case No. 05-44481 (RDD) <br><br> (Jointly Administered) |

## LEAD PLAINTIFFS' SUPPLEMENTAL PLEADING IN FURTHER SUPPORT OF THE MOTION (DOCKET NO. 1063) FOR A LIMITED MODIFICATION OF THE AUTOMATIC STAY

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE**

### PRELIMINARY STATEMENT

In further support of their pending motion for a limited modification of the automatic stay pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001 (the "Motion"), Teachers' Retirement System Of Oklahoma, Public Employees' Retirement System Of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the Court-appointed Lead Plaintiffs in the securities class action entitled *In re Delphi Corp. Securities Litigation*, Master Case No. 05-md-1725 (GER)(Eastern District of Michigan) (the "Securities Litigation"), respectfully

18692/2
03/06/2007 2115567.02

submit this their Supplemental Pleading.

## INTRODUCTION

With respect to the Motion, this Court previously modified the automatic stay for the limited purpose of allowing Lead Plaintiffs to seek relief from the discovery stay under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in the pending Securities Litigation in the United States District Court for the Eastern District of Michigan (the "District Court") (Docket No. 1883). This Court ruled that Lead Plaintiffs could renew their motion for relief from the automatic stay after the District Court ruled on the motion to modify the PSLRA stay. The District Court has now granted modification of the PSLRA stay with respect to all defendants in the Securities Litigation, including Delphi Corporation ("Delphi" or "Debtors"), and certain non-parties.[1] Despite requests by Lead Plaintiffs to work out a voluntary production of documents in accordance with the District Court's decision, the Debtors have refused to agree to any such process. Accordingly, Lead Plaintiffs are compelled to return to this Court for relief as set forth in this Court's prior order.

Lead Plaintiffs now request, with respect to the Motion, that this Court "decide whether the automatic stay should in any way restrict [the] discovery" granted in the Securities Litigation. *See* Transcript of Omnibus Hearing, Jan. 5, 2006, attached hereto as Exhibit "A," p. 75, lines 7-8. As predicted by this Court over one year ago, the requested relief is "simply a matter of picking up boxes and limited review by counsel" and therefore, burden is not "much of an issue." *Id*. at p. 75, lines 9-10. Accordingly, Lead

---

[1] On March 2, 2007, defendants Delphi Corporation, Donald S. Runkle, John D. Sheehan, Robert H. Brust, Thomas H. Wyman, Oscar de Paula Bernardes Neto, John D. Opie, Cynthia A. Niekamp, Susan A. McLaughlin, Roger S. Penske, Patricia C. Sueltz, Virgis W. Colbert, David N. Farr, Shoichiro Irimajiri, Bernd Gottschalk, Delphi Trust I and Delphi Trust II and Deloitte & Touche LLP filed motions for reconsideration of the District Court order modifying the PSLRA stay. Pursuant to the local rules of the District Court, no response to and no oral argument on a motion for reconsideration are permitted unless ordered otherwise by the court. E.D. Mich. LR 7.1(g)(2). As of the date hereof, the court has not ordered that a response be filed.

Plaintiffs respectfully submit that this Court *should not restrict* the discovery granted in the Securities Litigation. Rather, Lead Plaintiffs request that this Court enable Lead Plaintiffs to obtain the relief granted by the District Court in the Securities Litigation, and thus allow Lead Plaintiffs to prosecute the Securities Litigation on equal footing as others intent on holding Delphi and the non-debtor defendants accountable for their wrongdoing.

Indeed, since the hearing before this Court over a year ago, Debtors voluntarily produced the same documents that Lead Plaintiffs seek to the Official Committee of Unsecured Creditors ("UCC") (Docket No. 3279), the Official Committee of Equity Security Holders (the "Equity Committee") (Docket No. 4960), and to Appaloosa Management L.P., one of Delphi's largest shareholders (Docket No. 5056). And, the Debtors have settled charges brought by the Securities and Exchange Commission ("SEC"), which settlement this Court has approved (Docket No. 6140). These developments underscore the need for and appropriateness of the relief sought by the Motion.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are 11 U.S.C. § 362(d) and Rules 4001 and 9014.

## PROCEDURAL BACKGROUND

2. On November 15, 2005, pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001, Lead Plaintiffs filed the Motion to permit Lead Plaintiffs to obtain from Delphi a copy of all documents and materials Delphi has produced or provided, in connection with any inquiries or investigations relating to Delphi's accounting practices or business affairs, to any of the following: (a) the Executive branch of the United States Government (including but not limited to the Department of Justice ("DOJ") and the SEC) or (b) Wilmer, Cutler, Pickering, Hale & Dorr ("Wilmer, Cutler") in connection with its

representation of the Special Investigative Committee of Delphi's Board of Directors.[2] Docket No. 1063.

3. Delphi objected to the Motion, asserting, in part, that Lead Plaintiffs should first seek relief from the PSLRA discovery stay in the District Court, where the Securities Litigation is pending. *See* Debtors' Objection to Lead Plaintiffs' Motion for Limited Modification of Automatic Stay, p. 4 (Docket No. 1667) ("Debtors' Objection") ("[U]nless and until [Lead Plaintiffs] obtain permission to proceed with discovery from the District Court, Lead Plaintiffs have no legitimate cause to seek modification of the automatic stay here."). Delphi did not assert any claim of burden or prejudice imposed by the requested relief, reserving its right to "supplement [its] objection and to provide evidence in support of the Debtors' burden of producing the requested documents." *Id.* at n.5.

4. On January 5, 2006, this Court heard oral argument on the Motion. Ruling from the bench, the Court granted the Motion in part. The ruling was subsequently embodied in an order dated January 25, 2006 (Docket No. 1883). Specifically, this Court granted the Motion and modified the automatic stay under U.S.C. §362(d)(1) solely to permit Lead Plaintiffs to seek relief in the District Court from the PSLRA discovery stay. This Court further ordered that if the District Court granted Lead Plaintiffs relief from the PSLRA stay, Lead Plaintiffs were to notify this Court and counsel for the Debtors, and the remaining portion of the Motion would be heard promptly thereafter, without the necessity of re-filing the Motion.[3]

5. On February 8, 2006, the District Court held an Initial Status Conference before the Honorable Gerald E. Rosen. Following that conference, on February 10, 2006,

---

[2] Lead Plaintiffs hereby incorporate by reference the Motion, as if set forth fully herein.
[3] *See* Ex. A, p. 75, lines 21-23 (THE COURT: "You can put it on the docket on short notice. I don't think that there's a need to have a lengthy delay after the District Court rules.").

-4-

the District Court issued a Scheduling Order, establishing a deadline of March 10, 2006 for Lead Plaintiffs to file "any motions regarding the PSLRA stay."

6.  Accordingly, on March 10, 2006, Lead Plaintiffs filed a motion requesting the District Court to partially lift the discovery stay imposed by the PSLRA (the "PSLRA Motion"). Lead Plaintiffs specifically requested entry of an order: (1) permitting Lead Plaintiffs to serve Defendants (other than Delphi) and certain non-parties with discovery requests to produce documents already gathered, reviewed, and produced to other persons; and (2) permitting Lead Plaintiffs to return to this Court to seek permission to serve Delphi with discovery requests to produce documents already produced to other persons. On May 12, 2006, Defendants in the Securities Litigation, including Delphi, filed responses to the PSLRA Motion, and on June 12, 2006, Lead Plaintiffs filed a reply in support of the PSLRA Motion.

7.  While the PSLRA Motion was pending in the District Court, and as further detailed below, Debtors voluntarily produced the same documents Lead Plaintiffs seek to the UCC, the Equity Committee, and to one of Delphi's largest shareholders, Appaloosa Management L.P. Also in this interim period, and as described below, the SEC filed, and simultaneously settled, civil fraud charges against Delphi and several of its former executives. This Court approved Delphi's settlement with the SEC.

8.  The District Court granted the PSLRA Motion on February 15, 2007 ("District Court Order").[4] The District Court found that Lead Plaintiffs had "adequately demonstrated" that the discovery sought was "necessary to prevent undue prejudice" and that, without such discovery, Lead Plaintiffs "would be unfairly disadvantaged in pursuing litigation and settlement strategy." Ex. B, p. 17. The District Court further found that "maintaining the discovery stay as to materials already provided to the federal

---

[4] A copy of the District Court Order is attached hereto as Exhibit "B."

-5-

authorities and to the [UCC] does not further the policies behind the PSLRA." *Id.* Thus, the District Court ordered that Lead Plaintiffs could obtain discovery:

> (1) from the named Defendants and third-parties [General Motors] and [Electronic Data Systems], limited to materials already produced to the SEC, DOJ, FBI and U.S. Postal Inspector; and (2) of materials produced in conjunction with the internal investigation conducted by the Delphi Audit Committee of its Board of Directors, represented by Wilmer Cutler, outside counsel, and PriceWaterhouseCooper, forensic accountants.

*Id.* at p. 18-19.

9. Immediately following the issuance of the District Court Order, Lead Plaintiffs contacted litigation counsel for the Debtors in an effort to resolve this matter by stipulation and/or agreed order. However, the Debtors refused to voluntarily produce any of the requested documents—documents the Debtors previously have assembled, indexed and produced multiple times, both pre and post-petition—thereby necessitating the placement of this matter back on the Court's calendar.

10. On February 21-26, 2007, pursuant to the District Court Order, Lead Plaintiffs served document requests upon the named Defendants in the Securities Litigation (other than Delphi), and a subpoena upon non-party Electronic Data Systems ("EDS").[5] Lead Plaintiffs anticipate that those documents will be produced within 30 days of service. Thus, the only remaining party on whom Lead Plaintiffs have not served document requests is Delphi.

## ADDITIONAL RELEVANT FACTS

11. As Judge Rosen determined in the District Court Order (over Delphi's objection), several key events have occurred that demonstrate Lead Plaintiffs' compelling need for the documents sought in the Motion. Those events—which include Delphi's production to others of the very same documents at issue here—also belie any claim of

---

[5] As of the filing date of this Motion, Lead Plaintiffs were in negotiations with non-party General Motors ("GM") regarding service of a subpoena upon them containing similar document requests. Lead Plaintiffs anticipate that this subpoena will be served within a week from the filing date of this Motion.

-6-

burden that the Debtors may (for the first time) assert as they continue to resist this Motion. For example:

  a. On or about March 29, 2006, Delphi entered into an agreement to give the UCC access to the very same documents sought by Lead Plaintiffs. *See* Docket No. 3279.

  b. On July 27, 2006, the UCC filed a Motion in this Court entitled "Ex Parte Motion for an Order Authorizing the Official Committee of Unsecured Creditors to File Under Seal Exhibits to the Committee's Motion for an Order Authorizing it to Prosecute the Debtors' Claims and Defenses against General Motors Corporation and Certain Former Officers and Debtors" ("UCC Motion") (Docket No. 4689). In the UCC Motion, the UCC requested leave to file under seal (1) a demand letter against GM and (2) a complaint against certain of Delphi's officers and directors[6] in order to recover damages. In the UCC Motion, the UCC stated that both the demand letter and the complaint are based upon its review of the documents previously produced to the SEC in its investigation of Delphi. Specifically, the UCC stated the following:

> In researching and preparing the complaint, the Committee used, and the Complaint and Demand Letter contain, information produced by the Debtors relating to ongoing investigations of the Debtors including investigations by the Securities and Exchange Commission.

UCC Motion at ¶5. Thus, the UCC sought to file a complaint against Delphi's officers and directors based upon the very same documents that are the subject of Lead Plaintiffs' request for limited stay relief.

The UCC apparently believed that the evidence contained in these documents provided a sufficient basis to file a meritorious claim for relief against the Delphi officers and directors responsible for Delphi's accounting violations. Further, in the Affidavit filed in support of the UCC Motion, the UCC stated that one reason it filed its motion is

---

[6]The UCC did not identify these officers and directors.

because extensive settlement negotiations were currently taking place between GM and Delphi, and the UCC wanted a "seat at the table in negotiations."

   c. On August 1, 2006, Appaloosa Management L.P. entered into a confidentiality agreement with Delphi under which Delphi agreed to furnish certain non-public, confidential information (the same information Lead Plaintiffs are seeking) necessary to evaluate a "possible negotiated business arrangement" involving Delphi in its reorganization under Chapter 11 (Docket No. 5056).

   d. On August 17, 2006, this Court approved an agreement between Delphi and the Equity Committee, giving the Equity Committee access to the same documents requested by Lead Plaintiffs and previously made available to the UCC (Docket No. 4960).

   e. On October 30, 2006, the SEC filed civil fraud charges against Delphi and nine of its former executives, as well as four employees of outside firms for their alleged involvement in Delphi's massive accounting fraud ("SEC Complaint"). The SEC Complaint sets forth four primary fraudulent accounting transactions that also are detailed in Lead Plaintiffs' Complaint in the Securities Litigation. Simultaneous with the charges being filed, Delphi and six individuals settled with the SEC. Among those settling was former Delphi Chief Financial Officer, Alan Dawes (who also is an individual defendant in the Securities Litigation), who reportedly agreed to pay $687,000 in fines and restitution. With respect to Delphi, the SEC settlement bars it from future violations of securities laws, but does not subject it to any financial penalties. On December 11, 2006, this Court authorized Delphi's settlement with the SEC (Docket No. 6140).

  The District Court found the SEC Complaint and the settlements related thereto

critical in granting Lead Plaintiffs' motion to modify the PSLRA discovery stay:

> The fact that the SEC brought an action predicated upon the very same accounting irregularities alleged in the Consolidated Class Action Complaint and named as defendants in that action many of the same Delphi officers and directors and third parties named in this suit, coupled with the fact that Defendants are consenting to judgment in that action, demonstrates that this is not a "frivolous securities class action" brought against innocent parties.

Ex. B, p. 18.

   f. In addition to the SEC Complaint and settlements, the DOJ continues its investigation into Delphi and its former officers and directors. *The Detroit News* reported on November 24, 2006 that federal prosecutors expect to decide by January 2007 whether to seek criminal charges against former Delphi executives involved in the fraud. To date, no formal charges have been filed.

   g. On January 31, 2007, Delphi sued its insurer, National Union Fire Insurance Co. of Pittsburgh, to recover $19 million in expenses incurred in connection with the accounting investigation and negotiations with the SEC (Adversary Proceeding No. 07-01435-rdd) (Docket No. 6782).

### THE *SONNAX* FACTORS WEIGH HEAVILY IN FAVOR OF MODIFYING THE AUTOMATIC STAY

  12. The burden of proof on a motion to lift or modify the automatic stay is a shifting one. *Sonnax Indus. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." *Id.*

  13. The Debtors argued in Debtors' Objection to the Motion that Lead Plaintiffs failed to make the required threshold showing of a valid "cause" to modify the

automatic stay. *See* Debtors' Objection at ¶¶ 8-12. The Debtors' argument rested on the misplaced premise that Lead Plaintiffs sought documents "to enable them to resist the motions to dismiss they know are coming in the Securities Litigation." *Id.* at ¶ 9. It is abundantly clear at this juncture that Lead Plaintiffs never did, nor do they now, possess such a motive. The motions to dismiss in the Securities Litigation have long-since been briefed and are *sub judice* before the District Court. Stripped of this baseless argument, the Debtors are left without a cogent argument that Lead Plaintiffs have not shown "cause." Moreover, the District Court Order leaves no doubt that Lead Plaintiffs have indeed shown "cause" for the requested relief. Accordingly, the burden now has shifted to the Debtors to establish why the automatic stay should not be modified consistent with the District Court Order. This is a burden that the Debtors cannot meet.

14. The Second Circuit has adopted twelve factors to be weighed in deciding whether to lift or modify the automatic stay and allow litigation to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax Indus.*, 907 F.2d at 1286. All twelve factors are not relevant in every case. *Mazzeo v. Lenhart*, 167 F.3d 139, 143 (2d Cir. 1999). Furthermore, courts need not afford

equal weight to each factor. *See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994). Here, each relevant factor weighs strongly in favor of modifying the automatic stay.

15. The Debtors previously conceded that "chief among the relevant considerations" is the interests of judicial economy and the expeditious and economical resolution of litigation. Debtors' Objection at ¶ 20. This factor obviously weighs in favor of modifying the automatic stay. Indeed, the only reason articulated by the Debtors to support their argument on this factor is now moot. The Debtors claimed that this Court "should not engage in making decisions about modification of the automatic stay unless and until the antecedent question of Lead Plaintiffs' entitlement to obtain discovery from the Debtors is decided by the District Court." *Id.* at ¶ 20. Because Lead Plaintiffs now have obtained an order from the District Court modifying the PSLRA stay, the Debtors' argument is no longer valid.

16. The Debtors also argued that the first factor—whether relief would result in a partial or complete resolution of the issues—weighs in their favor because modifying the stay "may protract the litigation as Lead Plaintiffs attempt to use the Debtors' documents to fashion a complaint that otherwise should be dismissed." *Id.* at ¶ 21. Debtors' speculative argument rings hollow, particularly today, in light of the District Court's Order. Not only do Lead Plaintiffs believe that their Complaint is more than sufficient to survive dismissal, but the District Court has lifted the PSLRA stay as to all defendants in the Securities Litigation, as well as Delphi. If the Motion was motivated solely by a desire to re-craft Lead Plaintiffs' Complaint, the relief obtained in the District Court provides more than enough additional discovery to do so. Further, the fact that the SEC filed and simultaneously settled formal charges against the Debtors, a settlement this

-11-

Court authorized, slams the door shut on this factor.

17. Next, the Debtors contended that they "should not be required to spend the time and money entailed in dealing with Lead Plaintiffs' discovery demands" because it would "interfere with the Debtors' attention to more immediate matters." *Id.* at ¶ 22. The Debtors again argued that Lead Plaintiffs' motion is "premature" and they should not be required to focus on the "nascent" Securities Litigation. *Id.* The validity of this concern has long-since faded. The Debtors now have been in bankruptcy for almost seventeen months. The Securities Litigation is far from "nascent," with motions to dismiss fully briefed and discovery underway. The time and money required for the Debtors to produce the requested documents will be minimal in comparison to the prejudice recognized by the District Court that Lead Plaintiffs will continue to endure if the stay is not modified. *This is particularly true given that the Debtors already have produced the requested documents to the UCC and the Equity Committee, among others.*

18. The Debtors further contended that modifying the automatic stay would essentially "open the floodgates," resulting in countless other parties seeking to obtain relief from the stay as well. *Id.* at ¶ 23. This contention is without merit. In fact, this Court has, for various reasons, modified the automatic stay no fewer than *twelve* times since the inception of Delphi's bankruptcy proceedings.[7] Notwithstanding these orders, the bankruptcy proceedings have suffered no cognizable harm or delay and Delphi has remained on the path towards plan formulation and emergence from bankruptcy protection. This Court's decision to modify the automatic stay in order to allow Lead Plaintiffs to obtain documents that the Debtors have already gathered, reviewed and

---

[7] *See, e.g.*, Docket Nos. 1757, 2363, 2364, 2768, 2856, 3200, 4366, 4370, 4409, 4917, 6198, and 6699.

produced will likewise have little or no deterrent effect upon the instant bankruptcy proceedings.

19. Debtors argued that because the Securities Litigation is "nowhere close to being ready for trial," the automatic stay should not be modified. *Id.* at ¶ 24. Again, time has erased this argument. The Securities Litigation is no longer "in its infancy." Quite the contrary, it now is poised to proceed with particularized discovery, unhindered by the PSLRA stay. The Securities Litigation should not be delayed further simply because the Debtors are unwilling to make Lead Plaintiffs a copy of the documents they already have produced multiple times to various parties.

20. Finally, Debtors argued that "the balance of harms weighs squarely in favor of continuing the automatic stay intact." *Id.* at ¶ 25. Judge Rosen found otherwise in his Order modifying the PSLRA stay. Specifically, Judge Rosen stated that Lead Plaintiffs faced "being left with nothing" if the Securities Litigation "does not keep pace with the bankruptcy and the SEC action." Ex. B, p. 16. Moreover, as Judge Rosen noted, the UCC and Equity Committee "have already been given copies of the same records which Lead Plaintiffs seek." Debtors' Objection at p. 17. "Armed with those documents, the UCC intends to press for participation in the settlement negotiations which have already begun between Delphi and GM. Lead Plaintiffs, however, are not being given the same opportunity in this case." *Id.* Indeed, Lead Plaintiffs are and will continue to be severely prejudiced without access to the requested documents. And, the Debtors can point to no harm to them if the requested modification of the automatic stay is granted.

## CONCLUSION

WHEREFORE, Lead Plaintiffs respectfully request entry of an Order modifying the automatic stay to the limited extent set forth in the Motion, and granting such other relief as the Court deems just and proper.

Dated:  March 6, 2007

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ Michael S. Etkin
Michael S. Etkin, Esq. (ME-0570)
Ira M. Levee, Esq. (IL-9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10019
(212) 262-6700  (Telephone)
(212) 262-7402  (Facsimile)
         and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs and the Prospective Class*

**NIX, PATTERSON & ROACH, L.L.P.**
Jeffrey J. Angelovich
Bradley E. Beckworth
Susan Whatley
205 Linda Drive
Daingerfield, Texas 75638
Telephone:   (903) 645-7333
Facsimile:     (903) 645-4415

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
John P. Coffey
Hannah E. Greeenwald
Matthew C. Moehlman
1285 Avenue of the Americas
New York, NY 10019
Telephone:   (212) 554-1400
Facsimile:     (212) 554-1444

-14-

**GRANT & EISENHOFER, P.A.**
Stuart M. Grant
James J. Sabella
45 Rockefeller Center
650 Fifth Avenue
New York, NY 10111
Telephone:   (212) 755-6501
Facsimile:    (212) 755-6503

-and-

Sharan Nirmul
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone:   (302) 622-7000
Facsimile:    (302) 622-7100

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, L.L.P.**
Michael Yarnoff
Sean M. Handler
Benjamin J. Hinerfeld
280 King of Prussia Road
Radnor, PA 19087
Telephone:   (610) 667-7056
Facsimile:    (610) 667-7706

*Co-Lead Counsel for Lead Plaintiffs and the Prospective Class*