# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
                                          :
In re:                                    :   Case No. 05-44481
                                          :
    DELPHI CORPORATION, et al,            :
                                          :   One Bowling Green
                                          :   New York, NY
                              Debtors.    :   January 5, 2006
------------------------------------------X

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:           JOHN W. BUTLER, JR., ESQ.
                           DAVID E. SPRINGER, ESQ.
                           SKADDEN, ARPS, SLATE,
                           MEAGHER & FLOM, LLP
                           333 West Wacker Drive, Suite 2100
                           Chicago, Illinois  60606

                           KEVIN M. MURPHY, ESQ.
                           SKADDEN, ARPS, SLATE,
                           MEAGHER & FLOM, LLP
                           1440 New York Avenue, N.W.
                           Washington, D.C. 20005

                           THOMAS J. MATZ, ESQ.
                           SKADDEN, ARPS, SLATE,
                           MEAGHER & FLOM, LLP
                           Four Times Square
                           New York, New York 10036

                           NEIL BERGER, ESQ.
                           TOGUT, SEGAL & SEGAL, LLP
                           One Penn Plaza, Suite 335
                           New York, New York 10119

(Appearances continued on next page)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


Special Counsel to          WILLIAM J.F. ROLL, III, ESQ.
  Delphi:                   LYNETTE C. KELLY, ESQ.
                            ANDREW V. TENZER, ESQ.
                            SHEARMAN & STERLING LLP
                            599 Lexington Avenue
                            New York, New York 10022


For DC Capital Partners:    JESSICA L. FAINMAN, ESQ.
                            SCHULTE ROTH & ZABEL LLP
                            919 3rd Avenue
                            New York, New York 10022


For Appaloosa               GERARD H. UZZI, ESQ.
Management, LP:             WHITE & CASE, LLP
                            200 S Biscayne Blvd, Suite 4900
                            Miami, Florida 33131


For Wilmington Trust        EDWARD M. FOX, ESQ.
Company:                    KIRKPATRICK & LOCKHART NICHOLSON
                            GRAHAM LLP
                            599 Lexington Avenue
                            New York, New York 10022


For the Lead Plaintiffs:    MICHAEL S. ETKIN, ESQ.
                            LOWENSTEIN SANDLER PC
                            65 Livingston Avenue
                            Roseland, New Jersey 07068


For the CreditorsROBERT J. ROSENBERG, ESQ.
Committee:                  LATHAM & WATKINS, LLP
                            53rd at Third, 885 Third Avenue
                            New York, New  York  10022-4802


For the Lead Plaintiffs:    JAMES J. SABELLA, ESQ.
                            GRANT & EISENHOFER, P.A.
                            Chase Manhattan Centre
                            1201 North Market Street
                            Wilmington, Delaware 19801


(Appearances continued on next page)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Co-Lead Counsel for Securities: | JOHN P. COFFEY, ESQ.<br>BERNSTEIN, LITOWITZ, BERGER<br>  AND GROSSMANN, LLP<br>1285 Avenue of the Americas<br>New York, New York 10019 |
| For U.S. | TRACY HOPE DAVIS, ESQ.<br>U.S. DEPARTMENT OF JUSTICE<br>33 Whitehall Street<br>New York, New York 10004 |
| For the Committee: | HENRY P. BAER, JR.<br>ROBERT J. ROSENBERG, ESQ.<br>Latham & Watkins<br>885 Third Avenue<br>New York, New York 10022 |
| For Pepco Energy Serv.: | CAMERON MACDONALD, ESQ.<br>WHITEFORD, TAYLOR & PRESTON, LLP<br>Seven Saint Paul Street<br>Baltimore, Maryland 21202 |
| For Creditors Comm. | MICHAEL D. WARNER, ESQ.<br>WARNER STEVENS, LLP<br>1700 City Center Tower II<br>301 Commerce Street<br>Fort Worth, Texas 76102 |
| For UMICORE: | EDWARD C. DOLAN, ESQ.<br>HOGAN & HARTSON, LLP<br>555 Thirteenth Street NW<br>Washington, DC 20004 |
| For UAW: | BABETTE CECCOTTI, ESQ.<br>COHEN, WEISS & SIMON, LLP<br>330 West 42nd Street<br>New York, New York 10036 |

(Appearances continued on next page)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


For ACE American Ins.        MARGERY N. REED, ESQ.
                             JOSEPH LEMKIN, ESQ.
                             DUANE MORRIS
                             30 South 17th Street
                             Philadelphia, PA 19103


For Capital Research:        RICHARD G. MASON, ESQ.
                             WACHTELL, LIPTON, ROSEN & KATZ
                             51 West 52nd Street
                             New York, New York 10019




Court Transcriber:           KATHLEEN PRICE, CET
                             TypeWrite Word Processing Service
                             356 Eltingville Boulevard
                             Staten Island, New York 10312




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

53

1           MR. BERGER:  Thank you.

2           THE COURT:  Thank you.

3           MR. BUTLER:  Your Honor, the next matter on the

4  agenda, Matter No. 32 is a motion filed by the lead plaintiffs

5  from the securities litigation for a limited modification of

6  the automatic stay at Docket No. 1063.  It is the first of

7  three motions on the calendar, the others being matters --

8  Matter No. 33 and then again back towards the end of the agenda

9  at Matter No. 37, three contested motions dealing with the lead

10 plaintiffs' attempt to obtain discovery, and we'll cede the

11 podium to them to present the motion.

12          THE COURT:  Okay.

13          MR. ETKIN:  Good morning, Your Honor.

14          Michael Etkin, Lowenstein Sandler on behalf of the

15 lead plaintiffs as bankruptcy counsel to the lead plaintiffs in

16 the consolidated securities litigation, and I will present the

17 initial matter that's on the agenda for today.

18          Your Honor, I'd like to begin by stating the obvious,

19 that this is a motion for a limited modification of the

20 automatic stay.  It is not a motion seeking to lift the stay so

21 as to proceed against the debtor in connection with the

22 securities litigation.

23          What the motion does seek are documents that have

24 already been assembled, indexed and produced in connection with

25 various demands for documents by the SEC, by the U.S.

54

1  Attorney's Office and the FBI as well as documents produced in

2  connection with the internal investigation commenced by the --

3  by the debtors.

4           And, also, again I believe stating the obvious --

5           THE COURT:  I'm sorry.  I thought you were -- when

6  you say as well as documents produced as part of the internal

7  investigation, I thought you were seeking only documents that

8  had already been produced to third parties.

9           MR. ETKIN:  That's correct, Your Honor.

10          THE COURT:  Okay.  Maybe I just misheard you.

11          MR. ETKIN:  Yeah.  That's correct.

12          THE COURT:  Okay.  You're saying the third party

13  would include the internal audit committee's counsel?

14          MR. ETKIN:  That's correct, Your Honor, all of course

15  subject to --

16          THE COURT:  So you would count them as a third party

17  --

18          MR. ETKIN:  That's correct, Your Honor.

19          THE COURT:  All right.  Okay.

20          MR. ETKIN:  And all, of course, as we've indicated

21  and as has been the case in prior orders entered in this

22  district subject to privilege to the extent that privilege has

23  not been laid.

24          THE COURT:  Okay.

25          MR. ETKIN:  Your Honor, and again, just to make it

55

1  clear to the extent that it isn't, we recognize that this is a

2  two-step process that initially we need to get relief from this

3  Court with respect to the limited modification of the automatic

4  stay, and then we need to proceed to get relief from the

5  district court in connection with the PSLRA stay.  So this --

6  this motion really must be viewed in that context.

7       Your Honor, in the debtors' opposition, I think we've

8  been criticized for relying heavily on previous decisions in

9  Worldcom and Enron which are circumstances that we believe are

10  identical to the circumstances that are raised with respect to

11  this motion, and in relying heavily on previous decisions, we

12  believe that all we've done is do what lawyers are supposed to

13  do, which is rely on precedent coming out of the same district

14  that dealt with not only similar sets of fact, but we believe

15  essentially identical sets of facts.

16       THE COURT:  Were those actually litigated decisions?

17       MR. ETKIN:  Yes, Your Honor.  I was involved.  So,

18  yes, they were litigated.  I was involved in the Worldcom

19  motion and that was litigated, opposed, and Judge Gonzales --

20       THE COURT:  So did the -- the orders that you attach

21  are the result of a decision in a matter that he actually

22  decided between the parties?

23       MR. ETKIN:  That's correct, Your Honor.

24       THE COURT:  Fine.  Okay.

25       MR. ETKIN:  The order in Worldcom was not a

56

1  stipulated order.

2        THE COURT:  Okay.

3        MR. ETKIN:  That I can tell you from personal

4  experience.

5        THE COURT:  Okay.

6        MR. ETKIN:  Your Honor, even the debtors although

7  they raise issues as to the precedential value of those

8  decisions, they even concede in their papers that this

9  precedent is at the very least highly persuasive, and measuring

10 this case against the situations in Worldcom and Enron all

11 involve the backdrop of massive accounting scandals with

12 enormous losses to the investing public.  All involve the

13 backdrop of pending governmental investigations as well as

14 internal investigations.

15       As the Court well knows, Your Honor, Enron and

16 Worldcom were no less complex Chapter 11 cases than the Delphi

17 case, and the parade of horrors that are speculated by the

18 debtors as well as the standard floodgates argument that's

19 conclusorily (sic) raised by the debtors in their opposition

20 are exactly that:  speculation and conclusory allegations.

21       I think the lesson to be learned is best learned from

22 what happened in Worldcom where that company, the largest

23 Chapter 11 filed managed to successfully reorganize.  Enron as

24 well successfully confirmed its plan, both with no ill effects

25 from the limited stay modification orders entered in both of

57

1  those cases.

2          Your Honor, by making the motion that's before you,

3  we are simply adopting a position and a procedure that has

4  already been expressly approved in this district.  Again,

5  there's backdrop of Federal and civil criminal investigations,

6  acknowledged significant accounting irregularities, years of

7  accounting restatements, a self-imposed internal investigation

8  commenced by the debtors, all strikingly similar to the

9  backdrop of facts and circumstances in Enron and in Worldcom.

10         The debtors in their opposition make this appear as

11 if this was a class action commenced willy-nilly by some

12 corporate gadfly, the kind of class actions that the PSLRA

13 presumably was intended to deal with.

14         Your Honor, as lead plaintiffs in this case appointed

15 by the District Court, we have state pension funds and

16 institutional investors, not individual corporate gadflies who

17 take this matter very seriously on their own behalf and on

18 behalf of the investors that they now represent as lead

19 plaintiffs.

20         Your Honor, the debtors have really offered nothing

21 in their opposition papers to dispute that the documents that

22 we've requested which have already been produced have been set

23 aside, have been culled, have been reviewed, have been indexed,

24 and we specifically in our motion --

25         THE COURT:  Well, don't they say that -- I thought

58

 1  they -- I thought they dispute that.

 2          MR. ETKIN:  I don't see anything specifically in

 3  their papers disputing that.  What I did read, Your Honor, is

 4  that there are statements that there's some -- some amorphous

 5  burden that they will at some point in the future attempt to

 6  bring before the Court.  I didn't see anything specific in

 7  their papers.  I thought that they reserved the right somewhere

 8  in their response to raise these issues or bring these issues

 9  before the Court at some later time.

10          I didn't see any indication that these documents have

11  not already been set aside and have not already been produced,

12  and essentially that's why we made the motion.  We're not

13  looking for documents that have not already been pulled

14  together, set aside and produced.

15          THE COURT:  Well, I -- I guess my question comes down

16  to this.  I understand that the orders in Enron and Worldcom,

17  at least two of the three, you know, expressly recognized that

18  lifting the stay in the bankruptcy case still leaves to be

19  decided by the District Court the right of the securities

20  plaintiffs to get access to the documents under the PSLRA, but

21  you know, I'm not familiar with the facts of those cases.  I

22  don't know why it was important, for example, for those

23  litigants to get the documents at that time or at least get

24  stay relief at that time.

25          But why not let the District Court decide first

59

1  whether the PSLRA stay applies or not and then -- I mean,

2  obviously, I would give you relief to the extent you needed it

3  to seek that relief from the District Court, and then -- then I

4  could decide on a record as to, you know, how -- how burdensome

5  if at all under _Sonax_ it is for the debtors to produce this

6  under the 362 _Sonax_ factors as opposed to deciding it somewhat

7  in the abstract, because really I don't know what the District

8  Court is going to do.  I mean, is it prejudicial to you just to

9  -- for me to say for now you're going to go to the District

10 Court and ask the District judge if the -- if the PSLRA should

11 be -- the stay under the PSLRA should be lifted, not the

12 Bankruptcy Code stay, and then I -- then I can decide the

13 latter stay issue and I can do that on an expedited basis?

14          I mean, you're going to have to do that anyway.  So I

15 don't understand why it's flipped the other way around.

16          MR. ETKIN:  Well, Your Honor, we actually don't think

17 that we flipped it.  We think that we've followed the procedure

18 that's been utilized --

19          THE COURT:  Well, I understand.  Just humor me for a

20 minute.  If you have to do it anyway, why should I decide this

21 in the abstract?

22          MR. ETKIN:  Well, Your Honor, I don't believe the

23 Court is deciding this in the abstract --

24          THE COURT:  But do I have to decide it at all?  I

25 mean, why should I -- why should I even spend any time on it if

60

1    it's -- if it's, you know, possible or even more than possible

2    than the District judge is going to say, well, until the

3    motions to dismiss are decided, -- I'm not going to give them

4    relief from the PSLRA.

5           MR. ETKIN:  The -- first of all, as the Court knows,

6    we're acknowledging that this is a two-step process, and if the

7    Court grants our motion, the debtor certainly does not -- does

8    not have to produce a document until the PSLRA stay is lifted

9    as well, and again, the Court actually alluded to an issue that

10   is one of the issues why we went to the Bankruptcy Court first

11   in both of those cases, which is that we believe that going to

12   the District Court first without stay relief would be a

13   violation of a 362 --

14          THE COURT:  Well, but I could give you relief from

15   the stay to go to the District Court.  That's no problem.  I

16   don't have a problem with that.

17          MR. ETKIN:  No, I understand you're saying that, Your

18   Honor, but in terms of the process that we've utilized here,

19   that's one of the issues that we took into consideration, and

20   we believe that the issue of getting stay relief, this limited

21   stay relief from this Court given the fact that these documents

22   are just sitting there and have already been produced and it

23   requires really no effort, and I understand --

24          THE COURT:  But so that begs the questions.  I mean,

25   if the debtors are going to say it does require effort, then I

61

1 need to balance Sonax, and that requires a hearing and it may

2 be a completely advisory or moot issue.

3          MR. ETKIN:  Well, that -- the debtors had an

4 opportunity to lay out in their opposition, Your Honor, what

5 burdens that they would have to undertake in connection with

6 producing these types of documents.  They chose not to do that,

7 and those really weren't issues in the prior cases and we

8 suspect that they really shouldn't be issues here.  The

9 substantive issue of whether the PSLRA stay should be lifted is

10 obviously a matter for the District Court, and we understand

11 that.

12          We don't -- certainly don't view getting this type of

13 limited stay relief a ministerial matter from this Court by any

14 stretch of the imagination, but given the underlying

15 circumstances, given what we're asking for, given the fact that

16 we've already indicated in our moving papers that we would pay

17 the cost of reproduction, there really is nothing else to do

18 for the debtor other than if the debtor chooses resisting the

19 motion before the District Court in the PSLRA -- in connection

20 with the PSLRA.

21          So we believe that a process by virtue of the prior

22 decisions has been outlined and we're attempting to follow that

23 process.  We believe that process makes sense because

24 ultimately for purposes of the securities litigation, it is the

25 District Court that makes the determination as to whether we

62

1  should get access on the merits prior to the motions to

2  dismiss.

3          We're simply taking the first step that we believe is

4  a process that's been endorsed in this Court previously.

5          THE COURT:  Okay.

6          MR. ETKIN:  And, certainly, Your Honor, and as

7  evidenced by the orders entered previously in the -- in

8  Enron and Worldcom, privilege issues that are raised can be

9  dealt with.  Those are lawyer-driven issues that can be

10 resolved and certainly, nothing is intended to waive those

11 rights to the extent that they -- that they still exist.

12         Your Honor, the bottom line is that the debtors in

13 their papers really have advanced no argument whatsoever to

14 distinguish this case from the circumstances in Worldcom and

15 Enron.

16         THE COURT:  Well, but the problem is I just don't

17 really what those -- all I have is our orders.  I don't really

18 what those circumstances were.  I don't know if they were under

19 deadlines from Judge Harmon or Judge Cote.  It's just -- I see

20 that there's a -- there was an order granted and it recognized

21 the type of relief you're seeking here, but I just don't know

22 what the exigencies were to do it that way rather than the

23 other way.

24         MR. ETKIN:  Well, in each of those --

25         THE COURT:  I don't know whether there was a hearing

63

1    on the Sonax factors either.

2         MR. ETKIN:  Your Honor, in terms of the Sonax

3    factors, I think in the first instance, the Sonax factors

4    really are -- they are certainly relevant, but more relevant to

5    circumstances where a party is seeking relief from the State

6    and continue with litigation in a court outside of the

7    Bankruptcy Court.

8         We're not seeking that kind of relief.  There have

9    been decisions which we have cited in our papers where limited

10   stay relief --

11        THE COURT:  No, I know.  You're saying basically the

12   debtor doesn't have to do anything.  It just has to move the

13   boxes from one place to another.

14        MR. ETKIN:  That's --

15        THE COURT:  And you'll pay for moving them.

16        MR. ETKIN:  That's -- that's the bottom line, Your

17   Honor.

18        THE COURT:  Right.  Okay.

19        MR. BUTLER:  Your Honor, the Court articulated what

20   our concern is.  We concur that this is a two-step process, but

21   we think the first step is in the District Court, not here.

22   Our understanding of what these -- of what the plaintiffs in

23   Enron and Worldcom did was once they got the stay relief from

24   the Bankruptcy Court, they ran to the District Court and said

25   hey, District Court, give us -- grant us the relief because

64

1  there's no reason why you shouldn't, we already got the

2  Bankruptcy Court approval, and so they used Your Honor's

3  determination as the sword to go into the District Court.

4          A couple of initial comments, Your Honor. This is

5  not Enron, and this is not Worldcom. Whatever our pre-petition

6  accounting issues were, they were not the proximate cause and

7  had no relationship to the commencement of these Chapter 11

8  cases. These Chapter 11 cases were filed as Your Honor knows

9  because of our high legacy costs, because of increasing

10 commodity prices and because of the deterioration of the North

11 American automotive industry. It had nothing to do with

12 accounting.

13         Now, we had pre-petition accounting issues that we

14 will be addressing, but that is not why we are in Bankruptcy

15 Court.

16         Number two, Your Honor, what plaintiffs are asking

17 for really is an advisory opinion from Your Honor. They're

18 asking without any evidentiary record here, there's none.

19 They've offered no evidence. All right. They basically said

20 it's up to the debtors to prove why we're prejudiced. Well,

21 Your Honor, they failed to meet their burden, which I believe

22 under Sonax means we don't even have to do anything and --

23         THE COURT: Well, but they're saying that -- I mean,

24 let me paraphrase it and Mr. Etkin can correct me. They're

25 saying that it's there, why not let us get started on reading

65

1  it now rather than six months from now.

2          MR. BUTLER:  Because, Your Honor, that's not what

3  PSLRA allows them to do.  They're asking you to give them here

4  on an advisory basis the ammunition to go to Judge -- to go to

5  Judge Rosen, who by the way, just got these cases within the

6  last thirty days.  Talk about infancy of a litigation.  These

7  were just consolidated.  They're just now in front of the

8  Court.  There's been no major activity, as I understand, in the

9  District Court since that act occurred.

10          This motion was filed thirty-eight days into our

11  bankruptcy and was heard less than ninety days after the

12  commencement of these cases without a scintilla of evidence as

13  to why it's necessary.  They are a year probably or more away

14  from being able to deal with the issues in the District Court,

15  and Your Honor, we don't think it's fair.  We think it's highly

16  prejudicial to the debtors to have them come in here and say to

17  Your Honor without any evidentiary demonstration by us.

18          Disregard Sonax because that doesn't apply to us.

19  Disregard -- just take the Enron opinions and the

20  Worldcom opinions which were very different cases and which, by

21  the way, Your Honor, I don't believe based on our review of the

22  record and some familiarity that I had with those cases, I

23  don't believe that the issue we've raised in our papers was

24  raised in those cases, which is if it's a two-step process, the

25  first step is that the plaintiffs have to go to District Court

66

1   and get relief from the PSLRA because then they're able to come

2   here and demonstrate cause or at least argue they have cause.

3   I'll argue that isn't even cause frankly when we get to that,

4   but they can't demonstrate that.

5          They come before you with no ability to demonstrate

6   any cause.  They tell you -- if they're being straightforward,

7   they tell you that Judge Rosen received these cases within the

8   last thirty days.  There has been no substantive activity in

9   the cases since Judge Rosen received the consolidated cases.

10  There's been no certification.  There has been no -- the

11  schedule set either for filing motions to dismiss.

12         You know, there -- you know, I mean, this is in such

13  a different posture than those cases, Your Honor, and we really

14  believe we have no issue.  If they want to take a shot at --

15  you know, on that record in front of Judge Rosen on getting the

16  PSLRA stay lifted, if they want to be able to do that and you

17  want Your Honor -- we don't have an issue with that.  We'll

18  take that battle on in the District Court, but only if they're

19  able to Judge Rosen to change what Congress had intended should

20  they then be able to come back here, and at that point in time,

21  we ought to have an evidentiary hearing and deal with the

22  Sonax factors.

23         We think Your Honor has it exactly right, and we do

24  think it's prejudicial, and you know, counsel can argue that

25  it's not, but Your Honor, for example, to just give one example

1  and, you know, maybe this matters, maybe it doesn't, but the

2  reality is, Your Honor, the accounting issues here while

3  important to plaintiffs are not the primary factors in this

4  case, and as Your Honor knows, we were retained in July of last

5  year to help on the restructuring.

6          Clearly, we need to get up to speed and understand

7  those issues at some point.  That hasn't even occurred in these

8  cases.  We've been a little busy in the first ninety days of

9  these cases doing a few other things like getting financing in

10 place and dealing with claims, trading -- assets and all the

11 issues we've dealt with, with the committee.  We haven't had --

12 and Mr. Rosenberg will tell you, we haven't had even the

13 opportunity to have the initial briefing with the committee on

14 these matters which they've requested and which we've agreed to

15 provide and both Mr. Rosenberg and I need to get a little

16 educated from special counsel about these matters.  Neither of

17 us had that opportunity.

18          This is extremely premature, Your Honor, and we think

19 highly prejudicial, and we think the plaintiffs have got it

20 exactly wrong and the Court has got it right.

21          Go to the District Court, see if you can get relief.

22  If you can get relief from the District Court, then at least

23 you arguably can say you've got cause under _Sonax_ here and then

24 the -- then the debtors are in a position with the creditors

25 committee and the other parties in this case to take on the

68

1 issue of whether or not in the balance of harms and prejudices

2 which is a bankruptcy calculation by this Court whether or not

3 Your Honor ought to then lift the stay or modify the stay in

4 this case.

5          And we'd ask Your Honor to deny the relief being

6 request other than giving them the limited opportunity to go

7 speak to Judge Rosen.

8          THE COURT:  Okay.

9          MR. ROSENBERG:  Good morning, Your Honor.  Robert

10 Rosenberg for the creditors committee.

11          Our silence until now on the various matters of

12 course indicates consent or assent agreement with the debtors'

13 position, and that of course is equally true on this one.

14 However, I believe on this one, the issues are sufficiently

15 significant that we ought to address them on the record.

16          Needless to say, we do agree with the assessment that

17 Mr. Butler just stated.  As he stated, we are struggling to get

18 educated on what the issues are in this case and what should

19 happen to them.

20          As Mr. Butler indicated, this was not the driving

21 factor here in arriving in Bankruptcy Court unlike <u>Enron</u> and

22 <u>Worldcom</u>, and therefore, simply is not at this moment at the

23 very top of the issue list.

24          We strongly agree with Your Honor that the -- the

25 plaintiffs here simply have the procedure backwards because

69

1 there is no reason to consider the balance of prejudice kinds

2 of issues under Section 362 until and unless the issue is ripe

3 and relevant at the District Court issue -- level, and without

4 an evidentiary hearing here, I daresay that I have a very hard

5 time believing that there are a bunch of boxes sitting in a

6 corner simply waiting for Federal Express pickup and that's all

7 that's involved here.

8         To the extent that documents were previously

9 delivered to a special committee at SEC, a justice department,

10 whatever, that hardly suggests to me that they don't need to be

11 entirely re-reviewed in connection with delivery to a private

12 litigant, re-reviewed for privilege, re-reviewed for

13 confidentiality, issues that may not be quite as relevant in

14 the context of an internal or a governmental investigation.

15         So, unless the debtor tells me otherwise, I don't

16 think this is a situation of saying to Federal Express come

17 pick them up.  Accordingly, I do think that an evidentiary

18 hearing is required on the balance of hurt here and it is

19 absurd to have one in a vacuum in a moot situation where the

20 District Court has not said production is ripe.

21         Thank you.

22         THE COURT:  Do you -- Mr. Rosenberg, do you remember

23 when Enron filed?  I'm just looking at these orders.

24         MR. ROSENBERG:  I certainly do, Your Honor.  December

25 2001.

1          THE COURT:  Okay.  Fine.

2          MR. ETKIN:  Your Honor, obviously, the primary issue

3     that's being raised is really somewhat of an chicken-and-egg

4     proposition with respect to the District Court and this Court.

5          Mr. Butler talks about what Congress intended.  I

6     didn't see anything about the debtors' papers that pointed out

7     some legislative history as to how to resolve that issue.

8          I think the only thing that the Court has to provide

9     some guidance as to how that issue has been resolved is how it

10    has, in fact, been resolved previously in the two cases that

11    have addressed this issue, and I think that raising the

12    question of whether the filing itself was precipitated by the

13    accounting improprieties is not really the issue.

14         The issue is what is the stat of play with respect to

15    those accounting improprieties going into the Chapter 11

16    proceeding, and there, the similarities are striking with

17    respect to restatements for years, admitted accounting

18    improprieties with respect to prior financial statements,

19    multiple government investigations.  There are no distinctions

20    as far as that is concerned.

21         And, in fact, if there weren't those governmental

22    investigations and if there wasn't the previous production of

23    documents to the government with respect to these issues, we

24    wouldn't be making this motion.

25         We're not seeking discovery from day one with respect

1 to our pending securities litigation.  We're seeking access to

2 documents that have already been produced, already have been

3 reviewed, already have been indexed.

4         Now, Mr. Rosenberg talks about the prospect of having

5 to review them again where the circumstances are different.

6 Your Honor, those are red herrings.  Those are roadblocks being

7 thrown up now with respect to dealing with what is -- what is

8 the obvious, and the obvious is that there's -- that there's no

9 desire to impede the debtor from exercising whatever privilege

10 objections that they might have or whatever privilege that they

11 might want to assert.

12        The orders that were previously entered in the prior

13 cases specifically provided for that.  The Worldcom motion was

14 hotly contested by the debtor.  Judge Gonzales issued an

15 opinion --

16        THE COURT:  Well, no, he didn't issue an opinion.

17        MR. ETKIN:  He signed an order.  I apologize.  He

18 signed an order based upon his decision and requested an order

19 to be presented.  That order was signed.  That order provides

20 all of the safeguards that the debtor could possibly want with

21 respect to those documents.

22        This is really an example of an effort to create

23 issues with respect to what has been the prior production of

24 documents that have been reviewed, indexed and are waiting to

25 be -- and are waiting to be copied subject to privilege

72

1  objections which is lawyer-driven not debtor-driven, but a

2  lawyer-driven process, and delivered over to the lead

3  plaintiffs in connection with their obligations and

4  responsibilities to move forward on behalf of the class that

5  they represent with respect to the litigation against non-

6  debtor third parties.

7          We understand what the PSLRA requires.  That's a

8  different showing to be made to a different court.  The debtor

9  does not have to do one thing until the District Court decides

10 that issue, similar to what was decided in the Enron and

11 Worldcom cases.  There's no need for a chicken-and-egg issue.

12 There's no need to reinvent the wheel with respect to how this

13 process has worked previously.  It should work no differently

14 in this case.

15         THE COURT:  Okay.  All right.

16         I have in front of me a motion by the lead plaintiffs

17 in the Delphi Corporation securities litigation for a limited

18 modification of the automatic stay under Section 362 of the

19 Bankruptcy Code to permit them to receive all documents

20 previously provided by Delphi to third parties including, an

21 internal audit committee investigation as well as the SEC and

22 others.

23         The issue as I see it is really pretty limited at

24 this point, which is an issue of timing.  That is because the

25 movants acknowledge that even if I were to lift the automatic

73

1   stay to permit the production of such documents, they could not

2   be produced until the movants also obtained relief from the

3   District Court presiding over the securities litigation under

4   the Private Securities Litigation Reform Act of 1995, the

5   PSLRA, which contains a separate stay driven by different

6   considerations than the automatic stay, which separately

7   currently stays the pendency of discovery in the underlying

8   securities litigation.

9         To me, the first gatekeeper issue is obtaining relief

10  from the stay -- relief from the stay in this court under

11  Section 362 to seek relief from the PSLRA stay.  That's the

12  first gatekeeper issue.

13        In my mind, logically, the next gatekeeper issue is

14  obtaining relief from the District Court under the PSLRA.  The

15  District Court is dealing obviously not only with that statute

16  but with discovery issues generally in consolidated litigation

17  that is clearly at a very early stage, and it seems to me that

18  I cannot reasonably predict what the District Court would do in

19  connection with an application for relief under the PSLRA for

20  production of documents or what sort of timetable the District

21  Court will set for the production of documents.

22        Given that fact, it seems to me that what I'm really

23  being asked here to do to the extent it goes beyond a request

24  for relief from the stay simply to go ask the District Court

25  for relief under the PSLRA, is in essence to decide an issue in

74

1    a vacuum or to give an opinion that is not at this time ripe to

2    be given.

3            To my mind, that would end the issue but for the fact

4    that apparently at least in two instances, a similar issue was

5    raised in the Bankruptcy Court in front of Judge Gonzales first

6    in the Enron case and then second in the Worldcom case.  The

7    movants have attached orders issued by Judge Gonzales in those

8    two cases, the first of which I note was issued very early in

9    the Enron case and does not mention the PSLRA, and it's not

10   clear to me whether this issue was even considered in

11   connection with that order.

12           The second Enron order and the Worldcom order

13   attached do specifically note that the relief granted to the

14   securities litigation plaintiffs is still subject to any

15   determination by the District Court presiding over the

16   securities litigation, including under the PSLRA, but I cannot

17   tell much more from those orders, which are just that:  orders;

18   they don't contain findings of fact, and there's no oral ruling

19   that would lay out findings of fact and conclusions of law as

20   to why Judge Gonzales granted that particular relief.

21           One of the things that's not clear to me is whether

22   there were any communications directly or indirectly from Judge

23   Harmon or Judge Cote, the judges presiding over the District

24   Court litigation referred to in those two orders respectively,

25   about the timing issues involved or the like.

75

1          So I think that not only as matter of judicial

2    economy, but frankly to avoid deciding an issue that's not

3    ripe, all that I will grant here today is relief from the stay

4    to seek relief from the PSLRA stay in the District Court.

5          If such relief is granted and the facts will be clear

6    as to what -- what discovery if any the District Court

7    authorizes under the PSLRA and then I'll decide whether the

8    automatic stay should in any way restrict that discovery.

9    **Frankly**, if, in fact, it's simply a matter of picking up boxes

10   and limited review by counsel, it may not be much of an issue.

11         On the other hand, I'm not going to get into the

12   facts at this point because I think it's premature and there

13   **may** be other considerations that are relevant under the

14   <u>Sonax</u> factors.

15         Moreover, at that time, there may be a more complete

16   discovery plan or a more complete litigation schedule that will

17   help me decide the issue.  So I will grant relief from the

18   automatic stay for the limited purpose of seeking relief from

19   the District Court under the PSLRA.

20         And, Mr. Etkin, I will carry the rest of the motion.

21   You can put it on the docket on short notice.  I don't think

22   that there's a need to have a lengthy delay after the District

23   Court rules.

24         MR. ETKIN:  Thank you, Your Honor.

25         THE COURT:  So I don't know which one of you should

76

1 submit an order to that effect.

2 　　　　MR. BUTLER:  Your Honor, we'll draft an order and

3 show it Mr. Etkin on that matter (sic).

4 　　　　Your Honor, also just so the record is clear today

5 because I don't want either the debtors or the lead plaintiffs

6 to be in a position to characterizing what occurred here today

7 in front of the District Court along the lines, say, gee, Judge

8 Rosen, you know, go ahead and approve this because it will --

9 you know, Judge Drain is ready to sort of, you know -- you

10 know, open the floodgates here.

11 　　　　THE COURT:  I think there are very different issues

12 involved.  I think the PSLRA addresses quite different issues

13 than the automatic stay addresses and I wouldn't presume to

14 give a District judge any sort of direction about how he or she

15 should manage their discovery docket or the PSLRA, and really

16 my ruling is based simply on, first, that deference and then

17 issues of ripeness.

18 　　　　MR. BUTLER:  And may the order also include a

19 statement that the rights of the debtor and the creditors

20 committee are fully reserved -- preserved in connection with

21 the --

22 　　　　THE COURT:  Yes.  I mean, everyone's -- yes.

23 　　　　MR. BUTLER:  I just think --

24 　　　　THE COURT:  I think -- normally, I recommend people

25 don't do that because then everyone wants to stand up and

77

1  reserve their rights, but I guess in this instance, it's

2  appropriate so that there's no confusion with another court,

3  but obviously, the class action plaintiffs' rights are fully

4  preserved, too.

5         MR. BUTLER:  We understand that, Your Honor.

6         THE COURT:  Okay.

7         MR. BUTLER:  Thank you very much, Your Honor.

8         Your Honor, the next matters on the agenda are

9  Matters 33 and 34.  These involve the application of the

10 debtors for the retention of Deloitte and Touche, LLP as

11 independent auditors and accountants to the debtors only with

12 respect to the 2005 fiscal year that has been completed.

13        The debtors have previously announced that they have

14 -- after a request for a proposal request that the debtors have

15 engaged other accountants going forward and will be filing a

16 separate application in connection with the retention of

17 auditors for the 2006 fiscal years --

18        THE COURT:  I think that's on my desk, actually.  I

19 think it's on my desk, isn't it?  Yeah.

20        MR. BUTLER:  Yeah.  So it's -- that we'll be moving

21 forward on that separately, Your Honor.

22        THE COURT:  All right.

23        MR. BUTLER:  Your Honor, the -- Matter No. 33 is lead

24 plaintiffs' motion to compel deposition testimony filed at

25 Docket Number -- I believe it's 1618 and we have filed --