IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

In re                          :     Chapter 11
                            :

DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                            :

                Debtors.   :     (Jointly Administered)
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On March 2, 2007, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

1)    Stipulation and Agreed Order in Respect of Debtors' Third Omnibus Objection to Claims of Cadence Innovations LLC (Docket No. 7046) [a copy of which is attached hereto as Exhibit D]

2)    Stipulation and Agreed Order Resolving Debtors' Fourth Omnibus Objection to Claims of Retirees of Delphi Corp. or any of its Predecessors, Subsidiaries or Related Entities Who Were Represented by IUE-CWA During Their Employment, IUE-CWA/Delphi Corp. Joint Activities Center, Local 711 IUE-CWA, Local 717 IUE-CWA, Local 718 IUE-CWA, Local 801 IUE-CWA, Local 1111 IUE-CWA, Local 416 IUE-CWA, Local 755 IUE-CWA, Local 698 IUE-CWA, IAMAW District 10 and Lodge 78, IBEW Lodge 663, IUOE Local 101S, IUOE Local 18S, and IUOE Local 832S (Docket No. 7047) [a copy of which is attached hereto as Exhibit E]

3)    Joint Stipulation Compromising and Allowing Proof of Claim 2258 (InPlay Technologies, Inc.) (Docket No. 7048) [a copy of which is attached hereto as Exhibit F]

4)    Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Number 8324 (Ericka Parker) (Docket No. 7083) [a copy of which is attached hereto as Exhibit G]

5)    Joint Stipulation Compromising and Allowing Proof of Claim Number 16322 (Longacre Master Fund, Ltd./Inovise Medical, Inc.) (Docket No. 7084) [a copy of which is attached hereto as Exhibit H]

6)   Notice of Fourth Application of Shearman & Sterling LLP, as Special Counsel to the Debtors, for Allowance of Interim Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2006 Through January 31, 2007 (Docket No. 7106) [a copy of which is attached hereto as <u>Exhibit I</u>]

7)   Motion for Order Under 11 U.S.C. Sections 363(b), 365(a), and 365(d) and Fed. R. Bankr. P. 6004 and 6006 Authorizing Debtors to (A) Enter Into and Assign Purchase Agreement (B) Enter Into Lease Agreement, and (C) Reject Certain Unexpired Leases of Nonresidential Real Property ("Lease Transaction Motion") (Docket No. 7111) [a copy of which is attached hereto as <u>Exhibit J</u>]

On March 2, 2007, I caused to be served the document listed below upon the party listed on <u>Exhibit K</u> hereto via overnight delivery:

8)   Stipulation and Agreed Order in Respect of Debtors' Third Omnibus Objection to Claims of Cadence Innovations LLC (Docket No. 7046) [a copy of which is attached hereto as <u>Exhibit D</u>]

On March 2, 2007, I caused to be served the document listed below upon the parties listed on <u>Exhibit L</u> hereto via overnight delivery:

9)   Stipulation and Agreed Order Resolving Debtors' Fourth Omnibus Objection to Claims of Retirees of Delphi Corp. or any of its Predecessors, Subsidiaries or Related Entities Who Were Represented by IUE-CWA During Their Employment, IUE-CWA/Delphi Corp. Joint Activities Center, Local 711 IUE-CWA, Local 717 IUE-CWA, Local 718 IUE-CWA, Local 801 IUE-CWA, Local 1111 IUE-CWA, Local 416 IUE-CWA, Local 755 IUE-CWA, Local 698 IUE-CWA, IAMAW District 10 and Lodge 78, IBEW Lodge 663, IUOE Local 101S, IUOE Local 18S, and IUOE Local 832S (Docket No. 7047) [a copy of which is attached hereto as <u>Exhibit E</u>]

On March 2, 2007, I caused to be served the document listed below upon the parties listed on <u>Exhibit M</u> hereto via overnight delivery:

10)  Joint Stipulation Compromising and Allowing Proof of Claim 2258 (InPlay Technologies, Inc.) (Docket No. 7048) [a copy of which is attached hereto as <u>Exhibit F</u>]

On March 2, 2007, I caused to be served the document listed below upon the party listed on Exhibit N hereto via overnight delivery:

11) Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Number 8324 (Ericka Parker) (Docket No. 7083) [a copy of which is attached hereto as Exhibit G]

On March 2, 2007, I caused to be served the document listed below upon the parties listed on Exhibit O hereto via overnight delivery:

12) Joint Stipulation Compromising and Allowing Proof of Claim Number 16322 (Longacre Master Fund, Ltd./Inovise Medical, Inc.) (Docket No. 7084) [a copy of which is attached hereto as Exhibit H]

On March 2, 2007, I caused to be served the document listed below upon the parties listed on Exhibit P hereto via overnight delivery:

13) Motion for Order Under 11 U.S.C. Sections 363(b), 365(a), and 365(d) and Fed. R. Bankr. P. 6004 and 6006 Authorizing Debtors to (A) Enter Into and Assign Purchase Agreement (B) Enter Into Lease Agreement, and (C) Reject Certain Unexpired Leases of Nonresidential Real Property ("Lease Transaction Motion") (Docket No. 7111) [a copy of which is attached hereto as Exhibit J]

Dated: March 6, 2007

_/s/ Evan Gershbein_
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 6th day of March, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:    _/s/ Shannon J. Spencer_

Commission Expires:    _6/20/10_

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivirj@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Internal Revenue |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et.al.
Case No. 05-44481 (RDD)

Page 1 of 3

3/5/2007 2:30 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

3/5/2007 2:30 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivini@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

3/5/2007 2:30 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

3/5/2007 2:30 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

3/5/2007 2:30 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Madison County (Indiana) Treasurer |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Rjafeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Michael J Alerding Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com malerding@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Industries |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel to Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co.. Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | (230) 862-8231 | (203) 629-1977 | 203-862-8200 203-629-1977 mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Street | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | | drosenzweig@fulbright.com | Counsel to Southwest Research Institute |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | jpb@greensfelder.com / ckm@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J. Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hiscock & Barclay, LLP | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SFX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Riley | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchel.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 212-947-1202 | | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 16

3/5/2007 2:27 PM
Delphi 2002 lists final

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative of Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@mmmlaw.com | Counsel to Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Anthony Princi Esq Thomas L Kent Esq | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5000 | 212-506-5151 | aprinci@orrick.com tkent@orrick.com | Counsel to Ad Hoc Committee of Trade Claimants |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com / mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Financ. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Rjafeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de Cv. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | rmsternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L. Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for The Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.co m | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5111 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel to National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.co m | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 16

3/5/2007 2:27 PM
Delphi 2002 lists Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | | Southaven | MS | 38671 | | Company |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

3/5/2007 2:27 PM
Delphi 2002 lists US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | Counsel to Lunt Mannufacturing Company |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy G. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | 212-476-4770 | Counsel to SPCP Group LLC |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                         :

In re:                               :        Chapter 11
                                           :

    DELPHI CORPORATION, *et. al.*,     :        Case No. 05-44481 (RDD)
                                         :

                     Debtors.    :        Jointly Administered

-------------------------------------------------------------------x

## STIPULATION AND AGREED ORDER IN RESPECT
## OF DEBTORS' THIRD OMNIBUS OBJECTION
## TO CLAIMS OF CADENCE INNOVATION LLC

On or about July 20, 2006, Cadence Innovation LLC ("Cadence") filed Proof of

Claim Nos. 10074, 10077, 10078, 10079, 10080, 10081, 10082, 10083, 10084, 10085,

10086, 10087, 10088, 10089, 10090, 10091, 10092, 10093, 10094, 10095, 10096, 10097,

10098, 10099, 10100, 10101, 10102, 10103, 10104, 10105, 10106, 10107, 10108, 10109,

10110, 10111, 10112, 10113, 10114, 10115, 10116, 10117 against certain affiliated

debtors and debtors in possession, styled "Cadence, as successor in interest to Patent

Holding Company" in respect of the claims asserted by Cadence against the Debtors[1] on

account of their direct and willful infringement of three patents in the District Court for

the Eastern District of Michigan, Southern Division (Case No. 99-76013) (the "Action").

---

[1]    The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing General Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC, ASEC Sales General Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas Corporation; Delphi Automotive Systems Korea, Inc.; Delphi Automotive Systems International, Inc.; Delphi International Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International Services, Inc.; Environmental Catalysts, LLC; Specialty Electronics International, LTD; Delphi Automotive Systems Thailand, Inc.; Delco Electronic Overseas Corporation; Delphi Technologies, Inc.; Delphi Automotive Systems (Holding), Inc.; Exhaust Systems Corporation; Delphi Medical Systems Corporation; Delphi Diesel Systems Corp.; Delphi Integrated Service Solutions, Inc.; Packard Hughes Interconnect Company; Delphi Electronics (Holding) LLC; Delphi Mechatronic Systems, Inc.; Specialty Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.; Delphi LLC; Dreal, Inc.; Delphi Automotive Systems Risk Management Corp.; Delphi Automotive Systems Services LLC; Delphi Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services Holding Corporation; Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global (Holding) Inc.; Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC; and MobileAria, Inc.

On October 31, 2006, the Debtors filed their Second Omnibus Objection to Claims (the "Second Omnibus Objection") (Docket No. 5451). In the Second Omnibus Objection, the Debtors sought to disallow and expunge Proof of Claim Nos. 10074, 10077, 10078, 10079, 10080, 10081, 10082, 10083, 10084, 10085, 10086, 10087, 10088, 10089, 10090, 10091, 10092, 10093, 10094, 10095, 10096, 10097, 10098, 10099, 10101, 10102, 10103, 10104, 10105, 10106, 10107, 10108, 10109, 10110, 10112, 10113, 10114, 10115, 10116, 10117 (the so-called, "Duplicative Claims") as duplicative of Cadence Proof of Claim 10100 (the "Delphi Corporation Claim"); with the Delphi Corporation Claim remaining on the Debtors' claims register.[2]

On October 31, 2006, the Debtors filed their Third Omnibus Objection to Claims (the "Third Omnibus Objection") (Docket No. 5452). In the Third Omnibus Objection, the Debtors sought to disallow and expunge the Delphi Corporation Claim (Claim No. 10100) and Proof of Claim No. 10111 (the "Delphi Automotive Systems LLC Claim", collectively, the "Surviving Claims") because "the Debtors determined that [the Surviving Claims] assert liabilities or dollar amounts not owing pursuant to the Debtors' books and records[.]"

On November 13, 2006, Cadence submitted its Response to the Second Omnibus Objection (Docket No. 5767) and its Response to the Third Omnibus Objection (Docket No. 5769) where it contended respectively that (i) the Duplicative Claims are not duplicative of the Delphi Corporation Claim, but rather reflect the fact that Delphi operates numerous subsidiaries and affiliates and those affiliates may have separate and independent liability for infringing Cadence's patents and (ii) the Third Omnibus Objection did not rebut the presumption of allowability of the Surviving Claims.

---

[2]    The Second Omnibus Objection did not assert an objection to Proof of Claim No. 10111.

On January 17, 2007, after Cadence and the Debtors agreed to terms resolving the Second Omnibus Objection, the Court entered its order (the "Second Omnibus Order") (Docket No. 6634) providing, in pertinent part, that (i) the Duplicative Claims were disallowed and expunged in their entirety, (ii) the Delphi Corporation Claim shall remain on the Debtors' claims register,[3] and (iii) to the extent the Duplicative Claims were filed against the correct Debtor or Debtors, entry of the Second Omnibus Order would not prejudice Cadence's right to reassert the relevant Duplicative Claim against the appropriate Debtor or Debtors.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Surviving Claims Proofs of Claim Nos. 10100 and 10111 shall remain on the Debtors' claims register.

2.      The Third Omnibus Objection shall be adjourned solely in respect of the Surviving Claims pending the resolution of the Action.  The Debtors reserve the right to resume prosecution of the Third Omnibus Objection upon notice to Cadence and with Cadence's opportunity to contest the same.  Absent a resumption of the Third Omnibus Objection, during the pendency of the Action, Cadence and the Debtors shall not be required to file any pleading; including, without limitation, a motion to withdraw the reference with respect to any action taken in respect of the Surviving Claims.

3.      Nothing herein or otherwise, shall waive, release, or modify Cadence's right to have final orders in noncore matters entered after de novo review by a District Judge; right to require trial by jury in any proceeding so triable in this case or any case,

---

[3]      As noted in Footnote 2 above, the Second Omnibus Objection did not assert an objection to the Delphi Automotive Systems Claim.   Accordingly, the Second Omnibus Order did not affect the Delphi Automotive Systems Claim; the Delphi Automotive Systems Claim remained on the Debtors' claims register.

controversy, or proceeding related to these cases; right to have reference withdrawn in any matter subject to mandatory or discretionary withdrawal; or other rights, remedies, claims, actions, defenses, setoffs, or recoupments to which Cadence may be entitled (subject to the Debtors' ability to contest the same) or the Debtors' right to seek estimation of the Cadence claims or resume prosecution of the Third Omnibus Objection or otherwise object to the Cadence claims (subject to Cadence's ability to contest the same).

4.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Stipulation and Agreed Order.

Date:  New York, New York

February 26, 2007

/s/Robert D. Drain_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | ALSTON & BIRD LLP |
|---|---|
| /s/ John K. Lyons_____<br>John Wm. Butler, Jr. (JB-4711)<br>John K. Lyons (JL-4951)<br>Ron E. Meisler (RM-3026)<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606-1285<br>(312) 407-0700 | /s/ Dennis J. Connolly_____<br>Dennis J. Connolly (DC-9932)<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424<br>Telephone (404) 881-7000<br>Facsimile (404) 881-7777 |
| *Attorneys for Delphi Corporation, et al.,*<br>   *Debtors and Debtors-in-Possession* | *Attorneys for Cadence Innovation LLC* |

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
                                        :
         In re                          :      Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :      Case No. 05–44481 (RDD)
                                        :
                      Debtors.          :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STIPULATION AND AGREED ORDER RESOLVING DEBTORS' FOURTH OMNIBUS
OBJECTION TO CLAIMS OF RETIREES OF DELPHI CORP. OR ANY OF ITS
PREDECESSORS, SUBSIDIARIES OR RELATED ENTITIES WHO WERE REPRESENTED
BY IUE-CWA DURING THEIR EMPLOYMENT, IUE-CWA/DELPHI CORP. JOINT
ACTIVITIES CENTER, LOCAL 711 IUE-CWA, LOCAL 717 IUE-CWA, LOCAL 718 IUE-
CWA, LOCAL 801 IUE-CWA, LOCAL 1111 IUE-CWA, LOCAL 416 IUE-CWA, LOCAL 755
IUE-CWA, LOCAL 698 IUE-CWA, IAMAW DISTRICT 10 AND LODGE 78, IBEW LOCAL
663, IUOE LOCAL 101S, IUOE LOCAL 18S, AND IUOE LOCAL 832S

WHEREAS, on the date set forth below (the "Proof of Claim Filing Date"), the

following claimants (the "Claimants") filed the following proofs of claim (the "Proofs of Claim")

against each of the debtors and debtors-in-possession in the above-referenced jointly

administered chapter 11 cases (the "Debtors")[1]:

---

[1]    The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing General
       Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC, ASEC Sales General
       Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas Corporation;
       Delphi Automotive Systems Korea, Inc.; Delphi Automotive Systems International, Inc.; Delphi International
       Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International Services, Inc.; Environmental
       Catalysts, LLC; Specialty Electronics International, LTD; Delphi Automotive Systems Thailand, Inc.; Delco
       Electronic Overseas Corporation; Delphi Technologies, Inc.; Delphi Automotive Systems (Holding), Inc.;
       Exhaust Systems Corporation; Delphi Medical Systems Corporation; Delphi Diesel Systems Corp.; Delphi
       Integrated Service Solutions, Inc.; Packard Hughes Interconnect Company; Delphi Electronics (Holding) LLC;
       Delphi Mechatronic Systems, Inc.; Specialty Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.;
       Delphi LLC; Dreal, Inc.; Delphi Automotive Systems Risk Management Corp.; Delphi Automotive Systems
       Services LLC; Delphi Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services
       Holding Corporation; Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global
       (Holding) Inc.; Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC;
       and MobileAria, Inc.

1

| **Claimant** | **Proofs of Claim** | **Proof of Claim Filing Date** |
|---|---|---|
| Retirees Of Delphi Corp. Or Any Of Its Predecessors, Subsidiaries Or Related Entities Who Were Represented By IUE-CWA During Their Employment (the "IUE-CWA Retirees") | Nos. 12574 and 12599 | July 28, 2006 |
| IUE-CWA/Delphi Corp. Joint Activities Center (the "IUE-CWA Joint Activities Center") | 12651 and 13272 | July 28, 2006 |
| Local 711 IUE-CWA | 12703, 12704, 12705, 12706, 12707, 12708, 12709, 12710, 12711, 12712, 12713, 12714, 12716, 12717, 12718, 12719, 12720, 12721, 12726, 12727, 12728, 12729, 12732, 12733, 12734, 12735, 12736, 12737, 12738, 12739, 12740, 12742, 12743, 12744, 12745 | July 28, 2006 |
| Local 717 IUE-CWA | 12722, 12723, 12724, 12725, 12746, 12747, 12748, 12749, 12750, 12752, 12753, 12754, 12755, 12756, 12757, 12759, 12760, 12761, 12762, 12764, 12765, 12766, 12767, 12768, 12769, 12770, 12771, 12772, 12775, 12776, 12777, 12778, 12779 | July 28, 2006 |

2

| **Claimant** | **Proofs of Claim** | **Proof of Claim Filing Date** |
|---|---|---|
| Local 718 IUE-CWA | 12880, 12881, 12882, 12883, 12884, 12886, 12887, 12888, 12889, 12890, 12891, 12893, 12894, 12895, 12896, 12897, 12898, 12899, 12900, 12901, 12902, 12904, 12905, 12906, 12907, 12908, 12909, 12910, 12911, 12912, 12913, 12916, 12917, 12918, 12919 | July 28, 2006 |
| Local 801 IUE-CWA | 12293, 12294, 12295, 12296, 12297, 12300, 12301, 12302, 12303, 12304, 12305, 12307, 12308, 12309, 12310, 12311, 12312, 12313, 12314, 12315, 12316, 12317, 12318, 12320, 12321, 12322, 12323, 12324, 12325, 12326, 12328, 12329, 12330, 12331, 12332, 12920 | July 28, 2006 |
| Local 1111 IUE-CWA | 12841, 12842, 12843, 12846, 12847, 12848, 12849, 12850, 12851, 12852, 12853, 12854, 12855, 12857, 12858, 12859, 12860, 12861, 12862, 12863, 12864, 12865, 12867, 12868, 12869, 12870, 12871, 12872, 12873, 12875, 12876, 12877, 12878, 12879, 12973 | July 28, 2006 |

| Claimant | Proofs of Claim | Proof of Claim Filing Date |
|---|---|---|
| Local 416 IUE-CWA | 12531, 12532, 12533, 12534, 12535, 12537, 12538, 12539, 12540, 12541, 12542, 12545, 12546, 12547, 12548, 12549, 12550, 12551, 12552, 12553, 12554, 12555, 12556, 12557, 12558, 12559, 12560, 12561, 12562, 12563, 12564, 12567, 12568, 12569, 12570 | July 28, 2006 |
| Local 755 IUE-CWA | 12451, 12452, 12453, 12454, 12457, 12458, 12459, 12460, 12461, 12462, 12463, 12464, 12465, 12466, 12468, 12469, 12470, 12471, 12472, 12473, 12474, 12475, 12476, 12478, 12479, 12480, 12481, 12482, 12483, 12485, 12486, 12487, 12488, 12489, 12490, 13274 | July 28, 2006 |
| Local 698 IUE-CWA | 12974, 12975, 12976, 12977, 12980, 12981, 12982, 12983, 12984, 12985, 12986, 12987, 12988, 12989, 12991, 12992, 12993, 12994, 12995, 12996, 13275, 13276, 13277, 13278, 13280, 13282, 13284, 13285, 13287, 13288, 13289, 13290, 13291, | July 28, 2006 |

| Claimant | Proofs of Claim | Proof of Claim Filing Date |
|---|---|---|
| IAMAW District 10 and Lodge 78 | 10431, 10432, 10433, 13839, 13840, 13841, 13842, 13843, 13844, 13845, 13846, 13847, 13848, 13849, 13850, 13851, 13852, 13853, 13854, 13855, 13856, 13857, 13858, 13859, 13860, 13861, 13862, 13863, 14328, 14329, 14330, 14331, 14332, 14333, 14335, 14336, 14337, 14339, 14340, 14341, 14342, 14343, 14344, 14974 | July 31, 2006 (except that Proofs of Claim Nos. 10431, 10432, and 10433 were filed July 24, 2006) |
| IBEW Local 663 | 10435, 10436, 10437, 13864, 13865, 13866, 13867, 13868, 13869, 13870, 13871, 13872, 13873, 13874, 13875, 13876, 13877, 13878, 13879, 14285, 14286, 14287, 14288, 14289, 14290, 14291, 14292, 14293, 14294, 14310, 14345, 14346, 14348, 14349, 14351, 14352, 14353, 14354, 14355, 14356, 14357, 14358, 14359, 14360 | July 31, 2006 (except that Proofs of Claim Nos. 10435, 10436, and 10437 were filed July 24, 2006) |
| IUOE Local 101S | 13660, 13661, 13662, 13663, 13664, 13683, 13684, 13685, 13705, 13706, 13707, 13721, 13722, 13723, 13724, 13725, 13726, 13727, 13728, 13729, 13731, 13732, 13733, 13736, 13737, 13738, 13739, 13745, 13746, 13747, 13755, 13756, 13757, 13765, 1418S, 14984, 14986, 14987, 14988, 14989, 14990 | July 31, 2006 |

| Claimant | Proofs of Claim | Proof of Claim Filing Date |
|---|---|---|
| IUOE Local 18S | 13651, 13652, 13653, 13654, 13656, 13657, 13665, 13690, 13704, 13734, 13735, 13741, 13742, 13744, 13748, 13749, 13750, 13751, 13753, 13754, 13758, 13759, 13760, 13761, 13762, 13763, 13764, 13766, 14033, 14055, 14108, 15021, 15022, 15023, 15069, 15079, 15080, 15081, 15082, 15083, 15084 | July 31, 2006 |
| IUOE Local 832S | 13666, 13667, 13668, 13669, 13670, 13671, 13672, 13673, 13674, 13675, 13676, 13677, 13678, 13679, 13680, 13681, 13682, 13686, 13687, 13688, 13689, 13691, 13692, 13693, 13694, 13695, 13696, 13697, 13698, 13700, 13701, 13702, 13703, 15070, 15072, 15073, 15074, 15075, 15076, 15077, 15078 | July 31, 2006 (except that Proof of Claim No. 13700 was filed July 29, 2006) |

WHEREAS, on December 8, 2006, the Debtors filed their Fourth Omnibus

Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain

Duplicate And Amended Claims (Docket No. 6099) (the "Fourth Omnibus Objection").  In the

Fourth Omnibus Objection, the Debtors sought to disallow and expunge the following proofs of

claim (the "Duplicative Claims") as duplicative of the Surviving Claims (as defined herein), as

set forth below, with the Surviving Claims remaining on the Debtors' claims register:

6

| Claimant | Duplicative Claims | Surviving Claims |
|---|---|---|
| IUE-CWA Retirees | 12574 | 12599 |
| IUE-CWA Joint Activities Center | 13272 | 12651 |
| Local 711 IUE-CWA | 12703, 12704, 12705, 12706, 12707, 12708, 12709, 12710, 12711, 12712, 12713, 12714, 12717, 12718, 12719, 12720, 12721, 12726, 12727, 12728, 12729, 12732, 12733, 12734, 12735, 12736, 12737, 12738, 12739, 12740, 12742, 12743, 12744, 12745 | 12716 |
| Local 717 IUE-CWA | 12722, 12723, 12724, 12725, 12746, 12747, 12748, 12749, 12752, 12753, 12754, 12755, 12756, 12757, 12759, 12760, 12761, 12762, 12764, 12765, 12766, 12767, 12768, 12769, 12770, 12771, 12772, 12775, 12776, 12777, 12778, 12779 | 12750 |
| Local 718 IUE-CWA | 12880, 12881, 12882, 12883, 12884, 12886, 12887, 12889, 12890, 12991, 12894, 12895, 12896, 12897, 12898, 12899, 12900, 12901, 12902, 12904, 12905, 12906, 12907, 12908, 12909, 12910, 12911, 12912, 12913, 12916, 12917, 12918, 12919 | 12893 |

| Claimant | Duplicative Claims | Surviving Claims |
|---|---|---|
| Local 801 IUE-CWA | 12293, 12294, 12295, 12296, 12297, 12300, 12301, 12302, 12303, 12304, 12305, 12307, 12308, 12309, 12310, 12311, 12312, 12313, 12314, 12315, 12316, 12317, 12320, 12321, 12322, 12323, 12324, 12325, 12326, 12328, 12329,12330, 12331, 12332, 12973 | 12318 |
| Local 1111 IUE-CWA | 12841, 12842, 12843, 12846, 12847, 12848, 12849, 12850, 12851, 12852, 12853, 12854, 12855, 12857, 12858, 12859, 12860, 12861, 12862, 12863, 12864, 12865, 12868, 12869, 12870, 12871, 12872, 12873, 12875, 12876, 12877, 12878, 12879, 12973 | 12867 |
| Local 416 IUE-CWA | 12531, 12532, 12533, 12534, 12535, 12537, 12538, 12539, 12540, 12541, 12542, 12545, 12546, 12547, 12548, 12549, 12550, 12551, 12552, 12553, 12554, 12555, 12556, 12557, 12558, 12559, 12560, 12561, 12562, 12563, 12564, 12567, 12568, 12569, 12570 | 12544 |

| Claimant | Duplicative Claims | Surviving Claims |
|---|---|---|
| Local 755 IUE-CWA | 12451, 12452, 12453, 12454, 12457, 12458, 12459, 12460, 12461, 12462, 12463, 12464, 12465, 12566, 12468, 12469, 12470, 12471, 12472, 12473, 12474, 12475, 12478, 12479, 12480, 12481, 12482, 12483, 12485, 12486, 12487, 12488, 12489, 12490, 13274 | 12476 |
| Local 698 IUE-CWA | 12974, 12975, 12976, 12977, 12980, 12981, 12982, 12983, 12984, 12985, 12986, 12987, 12988, 12989, 12991, 12992, 12993, 12994, 12995, 12996, 13275, 13276, 13277, 13280, 13282, 13284, 13285, 13287, 13288, 13289, 13290, 13291 | 13278 |
| IAMAW District 10 and Lodge 78 | 10431, 10432, 10433, 13839, 13840, 13841, 13842, 13843, 13844, 13845, 13846, 13847, 13848, 13849, 13850, 13851, 13852, 13853, 13854, 13855, 13856, 13857, 13858, 13859, 13860, 13861, 13862, 14328, 14329, 14330, 14331, 14332, 14333, 14335, 14336, 14337, 14339, 14340, 14341, 14342, 14343, 14344, 14974 | 13863 |

| Claimant | Duplicative Claims | Surviving Claims |
|---|---|---|
| IBEW Local 663 | 10435, 10436, 10437, 13864, 13865, 13866, 13867, 13868, 13869, 13870, 13871, 13872, 13873, 13874, 13876, 13877, 13878, 13879, 14285, 14286, 14287, 14288, 14289, 14290, 14291, 14292, 14293, 14294, 14310, 14345, 14346, 14348, 14349, 14351, 14352, 14353, 14354, 14355, 14356, 14357, 14358, 14359, 14360 | 13875 |
| IUOE Local 101S | 13660, 13661, 13662, 13664, 13683, 13684, 13685, 13705, 13706, 13707, 13721, 13722, 13723, 13724, 13725, 13726, 13727, 13728, 13729, 13731, 13732, 13733, 13736, 13737, 13738, 13739, 13745, 13746, 13747, 13755, 13756, 13757, 13765, 1418S, 14984, 14986, 14987, 14988, 14989, 14990 | 13663 |
| IUOE Local 18S | 13651, 13652, 13653, 13654, 13656, 13657, 13665, 13690, 13704, 13735, 13741, 13742, 13744, 13748, 13749, 13750, 13751, 13753, 13754, 13758, 13759, 13760, 13761, 13762, 13763, 13764, 13766, 14033, 14055, 14108, 15021, 15022, 15023, 15069, 15079, 15080, 15081, 15082, 15083, 15084 | 13734 |

| **Claimant** | **Duplicative Claims** | **Surviving Claims** |
|---|---|---|
| IUOE Local 832S | 13666,13667, 13668, 13669, 13670, 13671, 13672,13673, 13674, 13675, 13676, 13677, 13678, 13679, 13680, 13681, 13682, 13686, 13687, 13688, 13689, 13691, 13692, 13693, 13694, 13695, 13696, 13697, 13698, 13700, 13701, 13702, 13703, 15070, 15072, 15073, 15074, 15076, 15077, 15078 | 15075 |

WHEREAS, on January 4, 2007, the Claimants submitted their response, as identified by the corresponding docket number with respect to each Claimant, to the Fourth Omnibus Objection:

| **Claimant** | **Response** |
|---|---|
| IUE-CWA Retirees | Docket No. 6424 |
| IUE-CWA Joint Activities Center | Docket No. 6426 |
| Local 711 IUE-CWA | Docket No. 6427 |
| Local 717 IUE-CWA | Docket No. 6429 |
| Local 718 IUE-CWA | Docket No. 6430 |
| Local 801 IUE-CWA | Docket No. 6433 |
| Local 1111 IUE-CWA | Docket No. 6434 |
| Local 416 IUE-CWA | Docket No. 6435 |
| Local 755 IUE-CWA | Docket No. 6431 |
| Local 698 IUE-CWA | Docket No. 6428 |
| IAMAW District 10 and Lodge 78 | Docket No. 6454 |
| IBEW Local 663 | Docket No. 6454 |
| IUOE Local 101S | Docket No. 6454 |
| IUOE Local 18S | Docket No. 6454 |
| IUOE Local 832S | Docket No. 6454 |

WHEREAS, on or about January 10, 2007, the Debtors filed the Debtors' Omnibus Reply In Support Of Debtors' Fourth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6537) where the Debtors stated that pursuant to an agreement between the Debtors and the Claimants, the hearing on the Claimants' claims would be adjourned to February 14, 2007;

WHEREAS, on January 18, 2007, this Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Duplicate And Amended Claims Identified In Fourth Omnibus Claims Objection (Docket No. 6683), adjourning the hearing on the Claimants' claims to February 14, 2007;

WHEREAS, the Debtors and the Claimants have agreed to resolve the Debtors' objection to the Claimants' claims through the entry of this Stipulation and Agreed Order.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    For administrative convenience only, and without prejudice to its rights against the Other Debtor Entities[2], each Claimant agrees that the Duplicative Claims should be and are hereby expunged.

2.    Entry of this order is without prejudice to the Debtors' right to object to any other claims in these chapter 11 cases, or to further object to claims that are the subject of the Fourth Omnibus Objection, on any grounds whatsoever; provided, however, that solely to the extent that (a) Claimants filed Duplicative Claims against different Debtors for the same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) certain of such Claimants' Multiple Debtor Duplicative Claims are being disallowed and expunged hereby, the Debtors

---

[2]    For purposes of this Stipulation and Agreed Order, the entities for which the Multiple Debtor Duplicative Claims (as defined below) are asserted against are referred to herein as the "Other Debtor Entities."

shall not seek to have the Claimants' remaining Multiple Debtor Duplicative Claims (the

"Surviving Claim") disallowed and expunged solely on the basis that such Surviving Claims are

asserted against the incorrect Debtor, provided that one of the Multiple Debtor Duplicative

Claims was originally filed against the correct Debtor.  For the avoidance of doubt, except as

expressly provided in the preceding sentence, the Surviving Claims shall remain subject to

further objection on any grounds whatsoever, including, without limitation, that any such

Surviving Claims are asserted against the incorrect Debtor if the Claimants did not file a

Multiple Debtor Duplicative Claim against the correct Debtor.  Nothing contained herein shall

restrict the Debtors from objecting to any Surviving Claims or any holders of Surviving Claims

from seeking relief from this Court for the purposes of requesting that this Court modify the

Debtor or Debtors against which such Surviving Claims are asserted.

3.         With respect to any asserted obligation contained in the Surviving Claim

of a Claimant, entry of this order is without prejudice to such Claimant's right to reassert the

relevant Multiple Debtor Duplicative Claim or Claims against such other Debtor or Debtors and

such reasserted claims shall relate back to the original date of filing.  In the event a Claimant

wishes to reassert a Multiple Debtor Duplicative Claim or Claim against such other Debtor or

Debtors, such claimant must file such reasserted claim with the Bankruptcy Court and serve such

reasserted claim on counsel for the Debtors and the claims agent in these chapter 11 cases.  A

Claimant's right to reassert the relevant Multiple Debtor Duplicative Claim or Claims against

such other Debtor or Debtors is subject to the Debtors' or other parties-in-interest's continuing

right to object to such claim on any and all other grounds and such claimant's right to respond

and defend its claims.

4.         In the event a Claimant wishes to amend its claim to assert additional or

different obligations against Delphi or any of the Other Debtor Entities, such Claimant need only

13

amend the Surviving Claim (by filing such amendment with this Court and serving such

amendment on counsel for the Debtors and on the claims agent in these chapter 11 cases) and

such Claimant need not file new or amended proofs of claim against the Other Debtor Entities.

Any amendment of the Surviving Claim shall be considered as having been asserted against all

Other Debtor Entities as of the date of the amendment.  The Debtors' rights to object to any such

purported amendment on any basis, including, but not limited to, that such purported amendment

constitutes an untimely assertion of a new claim, are expressly preserved.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

5. This court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Stipulation and Agreed Order.

Dated: New York, New York
        February 26, 2007

                                    _____/s/Robert D. Drain_____
                                    UNITED STATES BANKRUPTCY JUDGE


/s/ John K. Lyons
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

            - and –

    Kayalyn A. Marafioti
    Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession


/s/ Thomas Kennedy
KENNEDY, JENNIK & MURRAY, P.C.
Counsel for IUE-CWA Retirees
    Susan M. Jennik
    Thomas Kennedy
113 University Place, 7th Floor
New York, New York  10003
(212) 358-1500

Attorneys for IUE-CWA Retirees, IUE-CWA Joint
Activities Center, Local 711 IUE-CWA, Local 717
IUE-CWA, Local 718 IUE-CWA, Local 801 IUE-
CWA, Local 1111 IUE-CWA, Local 416 IUE-
CWA, Local 755 IUE-CWA, and Local 698 IUE-
CWA

/s/ Marianne Goldstein Robbins
PREVIANT, GOLDBERG, UELMEN,
    GRATZ, MILLER & BRUEGGEMAN, S.C.
    Marianne Goldstein Robbins
1555 N. RiverCenter Drive, Suite 202
P.O. Box 12993
Milwaukee, Wisconsin  53212
(414) 271-4500

Attorneys for IBEW Local 663 and IAMAW
    District 10 and Lodge 78

/s/ Barbara Mehlsack
GORLICK, KRAVITZ & LISTHAUS, P.C.
    Barbara Mehlsack
17 State Street
New York, New York  10004
(212) 269-2500

Attorneys for IUOE Local 101S, IUOE Lcoal 18S,
and IUOE Local 832S

15

# EXHIBIT F

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
: 
In re                                          :          Chapter 11
: 
DELPHI CORPORATION, et al.,                    :          Case No. 05–44481 (RDD)
: 
                    Debtors.       :          (Jointly Administered)
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION COMPROMISING AND
ALLOWING PROOF OF CLAIM 2258
(INPLAY TECHNOLOGIES, INC.)

1

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), and InPlay Technologies, Inc. ("InPlay") respectfully submit this Joint Stipulation Compromising And Allowing Proof Of Claim Number 2558 (this "Stipulation") and agree and state as follows:

WHEREAS on October 8, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS InPlay filed proof of claim number 2558 against Delphi on April 4, 2006, which asserts an unsecured non-priority claim in the amount of $9 million (the "Claim").

WHEREAS the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

WHEREAS on February 20, 2007 in order to resolve the Third Omnibus Claims Objection with respect to the Claim, Delphi Automotive Systems LLC ("DAS LLC") and InPlay entered into a settlement agreement (the "Settlement Agreement").

WHEREAS pursuant to the Settlement Agreement DAS LLC acknowledges and agrees that the Claim shall be allowed against DAS LLC in the amount of $7.5 million.

WHEREAS DAS LLC is authorized to enter into this Settlement Agreement pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, and 503 and Fed. R. Bankr. P. 9019(b) Authorizing Debtors to Compromise or Settle Certain Classes of Controversy and Allow

2

Claims Without Further Court Approval (Docket No. 4414) entered by the this Court on June 29,

2006.

THEREFORE, DAS LLC and InPlay stipulate and agree as follows:

1.    The Claim shall be allowed in the amount of $7.5 million and shall be

treated as an allowed general unsecured non-priority claim.

2.     InPlay waives any and all rights to assert any claim against any of the

Debtors on any basis whatsoever, for any amount greater than $7.5 million.

3.    InPlay waives any right it has to assert the Claim should be classified as

anything other than a general unsecured non-priority claim.

So Ordered in New York, New York, this 26th day of February, 2007

_____/s/Robert D. Drain_____
UNITED STATES BANKRUPTCY JUDGE


AGREED TO AND
APPROVED FOR ENTRY:

/s/ John K. Lyons                                         /s/ Heath D. Rosenblat
John Wm. Butler, Jr.                                    Richard G. Smolev
John K. Lyons                                             Heath D. Rosenblat
Ron E. Meisler                                            KAYE SCHOLER LLP
SKADDEN, ARPS, SLATE, MEAGHER          425 Park Avenue
   & FLOM LLP                                            New York, New York  10022
333 West Wacker Drive, Suite 2100               212-836-8000
Chicago, Illinois  60606-1285
(312) 407-0700                                            Attorneys for InPlay Technologies, Inc.

                - and –

   Kayalyn A. Marafioti
   Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

3

# EXHIBIT G

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

          - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
                                    :
          In re                     :      Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :      Case No. 05–44481 (RDD)
                                    :
              Debtors.              :      (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER COMPROMISING AND ALLOWING
PROOF OF CLAIM NUMBER 8324
(ERICKA PARKER)

1

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), and Ericka Parker ("Parker"), duly appointed and acting chapter 7 trustee for Toledo Professional Temps, Inc. (f/k/a Flex-Tech Professional Services, Inc.), respectfully submit this Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 8324 (Ericka Parker) (this "Stipulation") and agree and state as follows:

WHEREAS on October 8, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS Parker filed proof of claim number 8324 against Delphi Automotive Systems LLC ("DAS LLC") on June 21, 2006, which asserts an unsecured non-priority claim (the "Claim").

WHEREAS the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

WHEREAS on February 6, 2007 in order to resolve the Third Omnibus Claims Objection respect to the Claim, DAS LLC and Parker entered into a settlement agreement (the "Settlement Agreement").

WHEREAS pursuant to the Settlement Agreement DAS LLC acknowledge and

2

agree that the Claim shall be allowed against DAS LLC in the amount of $50,000.00.

WHEREAS DAS LLC is authorized to enter into this Settlement Agreement pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, and 503 and Fed. R. Bankr. P. 9019(b) Authorizing Debtors to Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by the this Court on June 29, 2006.

THEREFORE, DAS LLC and Parker stipulate and agree as follows:

1.      The Claim shall be treated as an allowed general unsecured non-priority claim.

2.      Parker waives any and all rights to assert any claim against any of the Debtors on any basis whatsoever, for any amount greater than $50,000.00.

3.      Parker waives any right it has to assert the Claim should be classified as anything other than a general unsecured non-priority claim.

So Ordered in New York, New York, this 1st day of March, 2007

            /s/Robert D. Drain
            UNITED STATES BANKRUPTCY JUDGE

3

AGREED TO AND
APPROVED FOR ENTRY:

/s/ John K. Lyons
_____
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

              - and –

   Kayalyn A. Marafioti
   Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

/s/ Patricia B. Fugee
_____
Patricia B. Fugee
ROETZEL & ANDRESS
One SeaGate, Suite 999
Toledo, OH 43604
(419) 242-7985

Attorney for Ericka Parker, Chapter 7 trustee for
Toledo Professional Temps, Inc. (f/k/a Flex-Tech
Professional Services, Inc.)

4

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
                                            :
        In re                               :       Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :       Case No. 05–44481 (RDD)
                                            :
                        Debtors.            :       (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION COMPROMISING AND ALLOWING
PROOF OF CLAIM NUMBER 16322
(LONGACRE MASTER FUND, LTD. / INOVISE MEDICAL, INC.)

1

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), and Longacre Master Fund, Ltd. ("Longacre"), as the beneficial owner of the claims of Inovise Medical, Inc. ("Inovise") respectfully submit this Joint Stipulation Compromising and Allowing Proof Of Claim Number 16322 (this "Stipulation") and agree and state as follows:

WHEREAS on October 8, 2005, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS Inovise filed proof of claim number 16322 against Delphi Automotive Systems LLC ("DAS LLC") on September 18, 2006, which asserts an unsecured non-priority claim (the "Claim").

WHEREAS the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was filed on October 31, 2006.

WHEREAS on February 27, 2007 in order to resolve the Third Omnibus Claims Objection with respect to the Claim, DAS LLC and Longacre entered into a settlement agreement (the "Settlement Agreement").

WHEREAS pursuant to the Settlement Agreement the Debtors acknowledge and agree that the Claim shall be allowed against DAS LLC in the amount of $250,000.00.

WHEREAS DAS LLC is authorized to enter into this Settlement Agreement

2

pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, and 503 and Fed. R. Bankr. P.

9019(b) Authorizing Debtors to Compromise or Settle Certain Classes of Controversy and Allow

Claims Without Further Court Approval (Docket No. 4414) entered by the this Court on June 29,

2006.

THEREFORE, DAS LLC and Longacre stipulate and agree as follows:

1.    The Claim shall be allowed in the amount of $250,000.00 and shall be

treated as an allowed pre-petition general unsecured non-priority claim against DAS LLC.

2.    The Debtors waive any right to object to or seek offset against Longacre's

allowed general unsecured non-priority claim with respect to the Claim.

So Ordered in New York, New York, this 1st day of March, 2007

_____/s/Robert D. Drain_____
UNITED STATES BANKRUPTCY JUDGE


AGREED TO AND
APPROVED FOR ENTRY:

/s/ John K. Lyons
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

– and –

Kayalyn A. Marafioti
Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

/s/ Daniel A. Fliman
Daniel A. Fliman
KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Longacre Master Fund, Ltd.

# EXHIBIT I

SHEARMAN & STERLING LLP

599 Lexington Avenue

New York, New York 10022

Telephone: (212) 848-4000

Facsimile: (212) 848-7179

Douglas P. Bartner (DB-2301)

Jill Frizzley (JF-8174)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
                                                             :
                                                             :
**In re:**                                                   :       **Chapter 11**
                                                             :
**DELPHI CORPORATION, et al.,**                              :       **Case No.  05 – 44481 (RDD)**
                                                             :
                      **Debtors.**                           :       **(Jointly Administered)**
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x

**NOTICE OF FOURTH APPLICATION OF SHEARMAN & STERLING LLP,**
**AS SPECIAL COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF INTERIM**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM OCTOBER 1, 2006 THROUGH JANUARY 31, 2007**

            **PLEASE TAKE NOTICE** that the **Fourth Application Of Shearman &**

**Sterling LLP, As Special Counsel To The Debtors, For Allowance Of Interim**

**Compensation For Professional Services Rendered And Reimbursement Of Actual And**

**Necessary Expenses Incurred From October 1, 2006 Through January 31, 2007** (the

"Application") was filed with the United States Bankruptcy Court for the Southern District of

New York on March 2, 2007.  The Application seeks approval of reasonable compensation for

professional legal services rendered and expenses related thereto incurred by Shearman &

Sterling LLP, special counsel to Delphi Corporation ("Delphi") and certain of its subsidiaries and

affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for the period commencing October 1, 2006 through and including January 31, 2007

(the "Compensation Period"), in the amount of $383,155.15, (which is comprised of (i)

$363,217.65 for fees and (ii) $19,937.50 for expenses).

     **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the entry of an

Order granting the Application (a) must be in writing, (b) must conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Order Under 11 U.S.C. §§ 102(l) And 105 And Fed. R. Bank. P. 2002(m), 9006, 9007, And

9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) (Docket No. 245) (the "Case Management Order"), (c) must

state with particularity the legal and factual bases for the objection, (d) must be filed with the

Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of

the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest

must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (e) must be submitted in hard-copy form

directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and

(f) must be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

Esq.), (iii) counsel for the agent under the Debtors prepetition credit facility, Simpson Thacher &

Bartlett LLP, 425 Lexington Avenue, New York, New York  10017 (Att'n: Marissa Wesley,

Esq.), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell,

450 Lexington Avenue, New York, New York  10017 (Att'n: Marlane Melican, Esq.),(v) counsel

for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue,

New York, New York  10022 (Att'n: Robert J. Rosenberg, Esq.), (vi) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New

York, New York 10004 (Att'n: Alicia M. Leonhard), and (vii) special counsel for Debtors,

Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022, Attn: Douglas

P. Bartner, Esq., in each case **so as to be received on or before June 14, 2007 at 4:00 p.m.,**

**prevailing Eastern Time** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT A HEARING ON FINAL**

**APPROVAL OF THE APPLICATION WILL BE HELD ON June 21, 2007 AT 10:00 A.M.**

A copy of the Application can be obtained either by (a) accessing the document on the

Bankruptcy Court's website at the above-mentioned address, or (b) contacting Marian D. Luketić

of Shearman & Sterling LLP at (212) 848-4263.

Dated:   New York, New York
         March 2, 2007


                              By:     /s/ Douglas P. Bartner
                                      Douglas P. Bartner (DB-2301)
                                      Jill Frizzley (JF-8174)


                                      SHEARMAN & STERLING LLP
                                      599 Lexington Avenue
                                      New York, New York  10022
                                      Telephone: (212) 848-4000
                                      Facsimile:  (212) 848-7179

                                      Special Counsel to the Debtors and
                                      Debtors in Possession

# EXHIBIT J

**Hearing Date And Time: March 22, 2007 at 10:00 a.m.**
**Objection Deadline: March 15, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
         In re                        :    Chapter 11
                                      :
DELPHI CORPORATION, et al.,           :    Case No. 05-44481 (RDD)
                                      :
                                      :    (Jointly Administered)
         Debtors.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 363(b), 365(a), AND 365(d) AND FED. R.
BANKR. P. 6004 AND 6006 AUTHORIZING DEBTORS TO (A) ENTER INTO AND
ASSIGN PURCHASE AGREEMENT, (B) ENTER INTO LEASE AGREEMENT, AND
(C) REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

("LEASE TRANSACTION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 363(b), 365(a), and

365(d) and Fed. R. Bankr. P. 6004 and 6006 authorizing, but not directing, Delphi Automotive

Systems LLC  ("DAS LLC") to (a) enter into and assign a purchase agreement, (b) enter into a

lease agreement and other necessary agreements to effectuate a lease transaction (the "Lease

Transaction"), and (c) reject two leases of nonresidential real property, all under the terms set

forth more fully below, and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On

October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an

official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an

official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicates for the relief requested herein are sections 363(b),

365(a), and 365(d) of the Bankruptcy Code and rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of approximately $26.4 billion and global assets of

approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications. Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.     Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income. Every year thereafter, however,

with the exception of 2002, the Company has suffered losses. In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which were charges related to the U.S. employee special

attrition programs.

9.     The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

---

[2]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating
loss in calendar year 2004 was $482 million.

10.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.     On March 31, 2006, the Company outlined five key tenets of its transformation plan.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[3]  Finally, the Debtors must devise a workable solution to their current pension situation.

12.     On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements.  The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment

---

[3]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

5

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management,

L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and

UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and

Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred

and common equity in the reorganized Delphi to support the Debtors' transformation plan.  (The

Equity Purchase and Commitment Agreement is subject to the completion of due diligence,

satisfaction or waiver of numerous other conditions (including Delphi's achievement of

consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by

either Delphi or the Plan Investors of certain termination rights.)  The second agreement was a

plan framework support agreement (the "Plan Framework Support Agreement") with the Plan

Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of

the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors

and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues,

and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework

Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements

with their U.S. labor unions and GM.

    13.  On January 12, 2007, this Court authorized the Debtors to execute,

deliver, and implement the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement (Docket No. 6589).  Although much remains to be accomplished

in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a

course that should lead to a consensual resolution with their U.S. labor unions and GM while

providing an acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order under sections 363(b), 365(a), and 365(d) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 authorizing, but not directing, DAS LLC to (a) enter into agreements necessary to effectuate the Lease Transaction and (b) reject two leases of nonresidential real property, all under the terms set forth more fully below.  To effectuate the Lease Transaction, by this Motion the Debtors seek authority to enter into and assign a purchase and sale agreement (the "Purchase Agreement"), a lease (the "Lease"), an assignment agreement with respect to the Purchase Agreement (the "Assignment Agreement"), a sublease (the "Sublease"), and an escrow agreement (the "Escrow Agreement").[4]

<u>Basis For Relief</u>

16.    The Debtors are in the process of implementing their transformation plan. As part of the plan, the Debtors are streamlining their operations to capitalize on their world-class technology and market strengths.  Consistent with this plan, the Debtors have determined that it would be strategically advantageous to consolidate multiple office and technical sites in Michigan and Illinois into one new location in Michigan.  The goals behind this consolidation

---

[4]    Forms of the Purchase Agreement, Lease, Assignment Agreement, Sublease, and Escrow Agreement are attached hereto as <u>Exhibits A</u>, <u>B</u>, <u>C</u>, <u>D</u>, and <u>E</u>, respectively.

are to reduce operating costs and create a single technical center in close proximity to the

Debtors' major customers, thus promoting the Debtors' image of technical capability.  The

Debtors further believe that such a consolidated facility will stimulate discussion and dialogue

among diverse groups and teams at Delphi, and that this dialogue will spark new innovation that

will enable the Debtors to gain an edge on competitors in the industry.  To that end, in the latter

part of 2006 the Debtors began searching for an appropriate facility that would allow the Debtors

to meet this objective.

17.    In October 2006, the Debtors located a site in Auburn Hills, Michigan (the

"Property") that would satisfy their needs.  The Property comprises approximately 347,000

square feet of office space and 90,000 square feet of lab space situated on approximately 35

acres.  Moreover, the Property will allow the Debtors to locate a single state-of-the-art technical

center closer to their major customers such as General Motors, Ford, DaimlerChrysler, and

Hyundai.

A.    The Terms Of The Purchase And The Lease

18.    Having located the Property that would meet their needs, the Debtors

proceeded simultaneously to negotiate a multiparty transaction pursuant to which the Property

would be acquired by a third-party investor and leased to DAS LLC.  Accordingly, DAS LLC

negotiated with the Property's current owner, Valeo Electrical Systems, Inc. ("Valeo"), to acquire

the Property, subject to this Court's approval, among other things, for the sum of $33 million (the

"Purchase Price").

19.    To test the market for investment in the Lease Transaction, over a period

of several months, the Debtors solicited offers from numerous parties requesting proposals to

purchase the Property and lease it to DAS LLC on an initial lease term of ten years.  The Debtors

8

then analyzed those offers based on a number of factors, including total rent per square foot, total

rent over the lease term, costs under the lease, effective base rent upon execution and in year ten

of the lease, and applicable broker fees.  After reviewing more than ten offers, the Debtors

determined that the best offer was presented by the Metcalf Family Trust ("Metcalf").

   20.  The agreements that make up the Lease Transaction include the Purchase

Agreement, the Lease, the Assignment Agreement, the Sublease, and the Escrow Agreement.  To

effectuate the transaction, prior to filing this Motion DAS LLC executed the Purchase

Agreement and immediately assigned the Purchase Agreement to Metcalf under the Assignment

Agreement.  If Metcalf closes the transactions contemplated by the Purchase Agreement and

attains possession of the Property, the Lease from Metcalf to DAS LLC will commence.  For a

period of approximately five months following closing, Valeo will in turn sublease a portion of

the Property from DAS LLC while Valeo prepares to leave the building.  As security for

payment of the rent due under the Sublease, which could total $780,250, Valeo will deposit

$880,250 into escrow under the terms of the Escrow Agreement.  The Sublease rent payments

will then be periodically disbursed from the escrow account.

   21.  The salient terms of the Purchase Agreement are as follows:[5]

   (a)  <u>Property</u>.  Approximately 437,800 square feet of office and
laboratory space located at 3000 University Drive, Auburn Hills,
Michigan.

   (b)  <u>Purchase Price</u>.  $33 million.

   (c)  <u>Due Diligence Period</u>.  DAS LLC and Metcalf will have until April
6, 2007 to complete their due diligence of the Property and title
(the "Due Diligence Period").  Prior to the expiration of the Due
Diligence Period, and following Court approval, Metcalf is
required to give written notice of its approval (the "Approval

---

[5] To the extent this summary differs from the Purchase Agreement in any way, the provisions of the Purchase
Agreement control.

9

Notice") of the Property to Valeo.  Under the terms of the Purchase
Agreement and the Assignment Agreement, submission of the
Approval Notice will be at Delphi's sole direction.

(d)    Deposit.  As the purchaser, within three business days of execution
of the Purchase Agreement, Metcalf will deposit $825,000 with a
title company (the "Initial Deposit").  Once Metcalf gives the
Approval Notice, Metcalf will deposit an additional $825,000 with
a title company (collectively with the "Initial Deposit," the
"Deposit").  Once the Approval Notice is sent to Valeo, the
Deposit will be non-refundable.

(e)    Condition To Closing.  The effectiveness of the Purchase
Agreement is expressly conditioned upon Court approval.  Absent
such relief, the Purchase Agreement will be null, void, and of no
effect whatsoever and the Deposit will be refunded by Valeo.

(f)    Closing Date. April 30, 2007.

22.    The Assignment Agreement provides that Metcalf must accept the

Property in its current condition and further provides that Metcalf affirms its acceptance of the

terms of the Purchase Agreement.   The Assignment Agreement also provides that, if the Lease

Transaction is terminated through DAS LLC's direction and through no fault of Metcalf, DAS

LLC will compensate Metcalf for its actual and reasonable expenses, with such expenses not to

exceed $50,000.[6]  Finally, Metcalf must also assign to DAS LLC its interest, if any, in any rents

collected under the Sublease between DAS LLC and Valeo, as described below.

23.    The Lease provides for an initial term of ten years, with two optional

additional terms of five years each.  The monthly base rental for the initial ten-year term is

$268,125.00, or $7.35 per square foot, per annum.  After performing an extensive market

analysis, DAS LLC believes that this rental rate is within market rates for similar property in

similar locations.  Under the terms of the Lease, DAS LLC will also be responsible for all

---

[6]    For example, if DAS LLC determines to terminate the Lease Transaction based on its due diligence, then
Metcalf would be entitled to its actual and reasonable expenses under the Assignment Agreement.

10

operating expenses and real estate taxes.  Accordingly, the effective cost per square foot, including base rent and operating costs, is approximately $19.98 for the first year.

24.    Under the Sublease, Valeo will sublet a portion of the Property from DAS LLC while Valeo transitions out of the Property.  For the first 120 days following the effective date of the Lease, Valeo will sublet 141,800 square feet from DAS LLC.  Prior to the end of the succeeding 30 days, during which Valeo will sublet 57,000 square feet, Valeo will completely depart from the Property and the Sublease will terminate by its terms.  The total rent for the Sublease term amounts to $780,250.00, provided that Valeo does not elect to exit the Property prior to the end of the Sublease.  The Sublease will thus enable DAS LLC to earn revenue from a portion of the Property while DAS LLC is itself transitioning certain operations to the Property.  As mentioned above, as security for the rent due under the Sublease, and to protect DAS LLC from any potential damages related to Valeo's subtenancy, Valeo will deposit the sum of $880,250.00 into escrow under the terms of the Escrow Agreement.  The Purchase Agreement, Lease, Assignment Agreement, Sublease, and Escrow Agreement were negotiated at arms length and in good faith, and entry into these agreements as part of the Lease Transaction is in the best interests of the Debtors' estates.

B.    The Consolidated Facilities

25.    The size of the Property would enable the Debtors to consolidate in the near-term six of their leased office and technical centers located in Michigan and Illinois and a portion of one owned site located in Flint, Michigan.  The facilities that would be moved to the Property (or other Delphi facilities) and their current lease end dates (if applicable) are as follows:

| City | State | Address | Current Lease End Date | Short Description |
|------|-------|---------|------------------------|------------------|
| Brighton | Michigan | 12501 East Grand River | June 30, 2008 | "Brighton" |
| Troy | Michigan | 1322 Rankin | Apr. 30, 2007 | "Rankin" |
| Troy | Michigan | 1441 Long Lake Road | Apr. 30, 2007[7] | "Long Lake" |
| Troy | Michigan | 1401 Crooks Road | Mar. 31, 2010 | "Crooks Road" |
| Shelby Township | Michigan | 51786 Shelby Parkway | July 31, 2010 | "Shelby" |
| Downers Grove | Illinois | 3110 Woodcreek Drive | Aug. 14, 2010 | "Downers Grove" |
| Flint | Michigan | 1601 North Averill Avenue | N/A | "Flint Technical Center" |

With respect to the Brighton, Rankin, and Long Lake facilities, the Debtors would vacate those facilities and complete the transition of the functions performed in those facilities to the Property by the end of the current lease terms for each of the facilities.  With respect to the Crooks Road property, the Debtors would terminate the lease under its terms by exercising a negotiated termination provision in the lease.  Upon six months' written notice, the Debtors would be required to pay one year of base rent under the lease.  Some of the employees in the Flint Technical Center would move to the Property and the Flint Technical Center would await further disposition.  The leases for the Shelby and Downers Grove facilities would be rejected as set forth more fully below.

---

[7]    On February 27, 2007, the Debtors issued a notice of lease renewal for a nine-month extension or renewal of the Long Lake lease to January 31, 2008 under this Court's Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval entered on January 6, 2006 (the "Lease Procedures Order") (Docket No. 1777).  Under the Lease Procedures Order, this renewal will be final and effective barring objections as of March 13, 2007.

C.        Rejection Of Certain Of The Leases

26.        As set forth above, to effectuate the Lease Transaction the Debtors will reject their leases for the Shelby facility and the Downers Grove facility.[8]  As the Debtors sell or wind-down their non-core businesses, they will only be using approximately 76 percent of their office capacity at the Shelby facility and 33 percent of their office capacity at the Downers Grove facility.  In conjunction with their financial and real estate advisors, the Debtors have also determined that the Shelby Lease and the Downers Grove Lease cannot be profitably assumed and assigned to a third party.  With both leases set to expire in 2010, the Debtors need to reject the leases to avoid paying for excess capacity for the remainder of the lease terms.

27.        To transition out of these facilities seamlessly, the Debtors expect that they will need until approximately September 30, 2007 to vacate the Shelby facility and transition operations to the Property.  Similarly, the Debtors expect that they will need until approximately November 30, 2007 to vacate the Downers Grove facility.  Accordingly, the Debtors seek authority to reject the Shelby Lease effective as of September 30, 2007 and to reject the Downers Grove Lease effective as of November 30, 2007.  Notwithstanding the Debtors' belief that they will need the allotted time to vacate the Shelby and Downers Grove premises, the Debtors will nonetheless endeavor to vacate the two premises more quickly.  To avoid the cost and expense of seeking additional relief from this Court if the Debtors succeed in this effort, the Debtors now also seek authority to reject the Shelby and Downers Grove Leases effective as of August 31, 2007 and October 31, respectively, upon ten days' prior written notice to the respective lessors of those premises.

---

[8]    The Shelby lease was originally dated May 9, 2000, as amended and assigned, between Shelby Industrial Investors II LLC and Delphi (the "Shelby Lease").  The Downers Grove lease was originally dated January 31, 1991, as amended and assigned, between LaSalle National Bank, as Trustee Under Trust Agreement Dated October 1, 1990, and Known as Trust Number 115987 and Delphi Mechatronic Systems, Inc. (the "Downers Grove Lease").

D.      The Benefits Of The Lease Transaction

28.      The joinder of the seven facilities outlined above into one facility will enable the Debtors to create a consolidated footprint in Southeast Michigan that is closer to key customers.  The consolidation will also enable the Debtors to achieve efficiencies that will reduce headcount by approximately 57 employees in the aggregate in the engineering, information technology, and human resources departments.  Having a central and state-of-the-art facility will help attract top talent as the Debtors emerge from bankruptcy.  The Debtors also anticipate that a central facility will foster better communications among their employees, which will lead to improved quality and increased innovation.  Having one central technology center will thus facilitate the Debtors' efforts to focus on their world-class technology as outlined in the transformation plan.

29.      Further, entry into the Lease Transaction will generate net savings of approximately $123 million over ten years,[9] with one-time capital spending and expenses of approximately $41 million over two years.  These savings will be largely achieved through elimination of excess capacity at the consolidated facilities.  As the Debtors sell or wind-down their non-core operations, many of the consolidated facilities will have underutilized capacity that results in excess costs.   Entry into the Lease Transaction will enable the Debtors to minimize and ultimately eliminate these costs while providing the site-specific benefits outlined above.

---

[9]    This savings figure assumes approximately $9 million in state and local tax incentives that the Debtors expect to receive in connection with the Lease Transaction.

14

<u>Applicable Authority</u>

A.    <u>The Debtors Have Soundly Exercised Their Business Judgment</u>

30.    Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  <u>See</u> <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); <u>In re Delaware Hudson Ry. Co.</u>, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

31.    The Second Circuit has held that, although the Bankruptcy Court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate."  <u>In re Orion Pictures Corp.</u>, 4 F.3d 1095, 1098-99 (2d Cir. 1993).  The Court's consideration of a debtor's section 363(b) motion is a summary proceeding, intended merely as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues."  <u>Orion Pictures</u>, 4 F.3d at 1098-99.

32.    Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  <u>In re Integrated Resources, Inc.</u>, 147 B.R. 650, 656 (S.D.N.Y. 1992).  Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity."  <u>Id</u>.  To satisfy its burden, it is not enough for an objector

15

simply to raise and argue an objection. Rather, an objector "is required to produce some evidence respecting its objections." Lionel, 722 F.2d at 1071.

33.    As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

34.    As set forth above, the Debtors have sound business justification for entering into the Lease Transaction at this time.   The consolidation of seven facilities into one site would provide efficiencies that will result in net savings of $123 million over 10 years,[10] against one-time capital spending and expenses of only $41 million over a two-year period. Having one consolidated state-of-the-art facility in Southeast Michigan will allow the Debtors to improve their image of technical capability, while increasing their proximity to their key customers.   Finally, the agreements underlying the Lease Transaction were negotiated at arms length and in good faith.

35.    The Debtors have also exercised sound business judgment in deciding to reject the Shelby Lease and the Downers Grove Lease.  Under the Debtors' consolidation plan, these facilities carry and will continue to carry excess capacity that creates an unnecessary burden on the Debtors' estates.  These two leases cannot be profitably assumed and assigned. Furthermore, this Court has already approved the Debtors' exercise of their business judgment in determining whether to reject leases by approving the lease rejection procedures outlined in its Order Under 11 U.S.C. §§ 365(a) and 554 and Fed. R. Bankr. P. 6006 Approving Procedures For

---

[10]    See Supra n. 9.

16

Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain

Furniture, Fixture, and Equipment (the "Lease Rejection Procedures Order"), entered January 6,

2006 (Docket No. 1776).  Under the Lease Rejection Procedures Order, upon service of a

Rejection Notice (as defined in the Lease Rejection Procedures Order), such a rejection will

become effective absent objection after ten calendar days.

> 1.    The Debtors Have Shown Good Cause For Delayed Rejection Effective
> Dates For The Shelby and Downers Grove Leases

36.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject any executory contract or unexpired lease of the

debtor." 11 U.S.C. § 365(a).  The assumption or rejection of an executory contract or unexpired

lease by a debtor is subject to review under the business judgment standard.  See Orion Pictures

Corp. v. Showtime Network, Inc., 4 F.3d 1095, 1099 (2d Cir. 1993); In re The Penn Traffic Co.,

322 B.R. 63, 68 (Bankr. S.D.N.Y. 2005) (stating "[i]t is well established that the decision

whether to assume or reject an executory contract under section 365(a) is a matter of business

judgment to be exercised in the best interests of the debtor in possession and its creditors").

37.    The business judgment standard is satisfied when a debtor determines that

rejection will benefit the estate.  See In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y.

1992); In re Ionosphere Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989).  In applying this

standard, courts show great deference to a debtor's decision to reject an unexpired lease or

executory contract.  See In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

38.    The Debtors have satisfied the requirements described above.  This

Motion constitutes an application to reject the Shelby Lease and the Downers Grove Lease, and

the Debtors have shown that such rejection is necessary to allow the Debtors to transition out of

these facilities in an orderly manner.  On the other hand, the proposed delayed effective dates for

the rejection of these leases will not prejudice the lessors under these two leases, because the lessors are now aware, months in advance, of a specific effective date for rejection. To the extent that the Debtors are able to accelerate the rejection effective dates, the affected lessors are now aware of those accelerated dates as well, and the lessors will receive additional written notice of accelerated rejection, if it is to occur, a full ten days in advance of such accelerated dates. Further, the Debtors will abide by the provisions of the Lease Rejection Procedures Order that provide protection to lessors under rejected leases, including the lessor's ability to dispose of abandoned property and the Debtors' obligation to pay rent until the effective date of the rejection. For these reasons, the Debtors request that the Court approve the rejection of the Shelby Lease with an effective date of September 30, 2007 and the rejection of the Downers Grove Lease with an effective date of November 30, 2007. In the event the Debtors are able to vacate these facilities earlier than anticipated, the Debtors further request the authority to reject the Shelby Lease effective as of August 31, 2007 and the Downers Grove Lease effective as of October 31, 2007, upon ten days' written notice to the respective lessors of those premises. The Debtors propose that the form of such earlier rejection notice be in the form required under the Lease Rejection Procedures Order.

Conclusion

39.     The Debtors submit that the approval of the Lease Transaction, including the approval of the Purchase Agreement, the Lease, the Assignment Agreement, the Sublease, the Escrow Agreement, and the rejection of the Shelby Lease and the Downers Grove Lease are in the best interests of the Debtors' estates and will maximize value for all creditors as described above.

18

## Notice Of Motion

40.      Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

41.      Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order  (a) authorizing, but not directing, Delphi to (i) enter into the agreements necessary to effectuate the Lease Transaction, including the Purchase Agreement, the Lease, the Assignment Agreement, the Sublease, and the Escrow Agreement, and (ii) reject the Shelby Lease and the Downers Grove Lease upon the effective dates described herein, and (b) granting the Debtors such other and further relief as is just.

Dated:     New York, New York
          March 2, 2007

               SKADDEN, ARPS, SLATE, MEAGHER
                & FLOM LLP

           By:    /s/ John Wm. Butler, Jr.
                John Wm. Butler, Jr. (JB 4711)
                John K. Lyons (JL 4951)
                Ron E. Meisler (RM 3026)
           333 West Wacker Drive, Suite 2100
           Chicago, Illinois 60606
           (312) 407-0700

                   - and -

           By:    /s/ Kayalyn A. Marafioti
                Kayalyn A. Marafioti (KM 9632)
                Thomas J. Matz (TM 5986)
           Four Times Square
           New York, New York 10036
           (212) 735-3000

           Attorneys for Delphi Corporation, et al.,
            Debtors and Debtors-in-Possession

# Exhibit A

# PURCHASE AND SALE AGREEMENT

## 3000 University Drive, Auburn Hills, Michigan

This Purchase and Sale Agreement (this "**Agreement**") dated as of March 2, 2007 (the "**Effective Date**"), is made by Valeo Electrical Systems, Inc. ("**Seller**") and Delphi Automotive Systems LLC ("**Buyer**").

## RECITALS

A.      Seller is the owner of certain real property consisting of approximately 437,800 square feet of building improvements located at 3000 University Drive, Auburn Hills, Michigan, such building being more particularly described below (the "**Property**").

B.      Seller and Buyer entered into that certain Expression of Interest Letter dated January 12, 2007 (the "**Letter**") by which Seller and Buyer agreed to negotiate the terms of a purchase and sale agreement for the sale of the Property to Buyer.

C.      On October 8, 2005, Delphi Corporation and certain of its U.S. affiliates, including Buyer, filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and on October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions for reorganization under the Bankruptcy Code (collectively, the "**Debtors**").  The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Court.

D.      Buyer desires to purchase the Property, subject to the terms and conditions set forth herein.

IN CONSIDERATION of the respective agreements hereinafter set forth, Seller and Buyer agree as follows:

1.      <u>Sale and Purchase of Property</u>.  Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, subject to the terms and conditions set forth herein, the following:

(a)      that certain real property consisting of approximately 437,800 square feet of building improvements located at 3000 University Drive, Auburn Hills, Michigan (the "Property"), more particularly described in <u>Exhibit A</u> attached hereto (the "**Real Property**");

(b)      Seller's right, title and interest in any rights, privileges and easements appurtenant to the Real Property, including, without limitation, minerals, oil, gas and other hydrocarbon substances on and under the Real Property, development rights, air rights, water, water rights, riparian rights and water stock relating to the Real Property and rights-of-way or other appurtenances used in connection with the beneficial use and enjoyment of the Real Property (collectively, the "**Appurtenances**");

(c)    Seller's right, title and interest in the improvements and fixtures located on the Real Property, including, without limitation, all affixed equipment used in connection with the operation of the Real Property, and all on-site parking (collectively, the "**Improvements**"); and

(d)    Seller's right, title and interest, the personal property located in such building and described in <u>Exhibit B</u> attached hereto (the "**Personal Property**").

All of the items referred to in subparagraphs (a), (b), (c) and (d) above are collectively referred to as the "**Property**"; provided, however, that the Property shall not include Seller's signs upon the Real Property or the personal property listed on <u>Exhibit B</u>-1, attached hereto.

2.    Purchase Price.

(a)    The purchase price for the Property is Thirty Three Million Dollars ($33,000,000.00) (the "**Purchase Price**") and shall be paid as follows:

(i)    Within three (3) business days after execution of this Agreement by all parties hereto, Buyer will deposit with Lawyers Title Insurance Corporation (the "**Title Company**"), Eight Hundred Twenty Five Thousand Dollars ($825,000.00) which will be refundable to Buyer only if (a) Buyer does not timely approve in writing the Property (as defined below under "Due Diligence Period"), (b) any express condition of Seller's obligations under this Agreement failing to timely occur, (c) Seller defaults under this Agreement, or (d) the Bankruptcy Court does not approve the sale by April 6, 2007.  All interest earned on the Deposit shall become part of the Deposit.

(ii)    If prior to the end of the Due Diligence Period, Buyer gives written notice to Seller of its approval of the Property, Buyer will deposit an additional Eight Hundred Twenty Five Thousand Dollars ($825,000.00) into Escrow with Title Company.  Thereafter, the Initial Deposit, the Additional Deposit and interest thereon (collectively the "**Deposit**") will be non-refundable to Buyer except in the case of (a) a default by Seller under this Agreement, (b) any express condition of Seller's obligations under this Agreement failing to timely occur, or (c) the Bankruptcy Court does not approve the sale by April 6, 2007.

(iii)    The Title Company shall invest the Deposit in investments selected by Buyer and reasonably approved by Seller, which may include, without limitation, any certificates of deposit, savings or other accounts of any federally insured savings and loan association or bank, provided that no investment may have a maturity date later than the Closing or involve the risk of loss of principal.  In the event the sale of the Property as contemplated hereunder is consummated, the Deposit shall be credited against the Purchase Price.

The balance of the Purchase Price, i.e., the Purchase Price, less the Deposit shall be paid to Seller through escrow in immediately available funds at the closing of the purchase and sale

contemplated hereunder (the "**Closing**").  The Closing shall be deemed to occur upon the delivery and recording of the Deed (as defined in Section 3(a) below).

(b)    (i)    Upon receipt of each of the Initial Deposit and the Additional Deposit, Title Company shall execute the Receipt of Escrow Agent in the form of <u>Exhibit C</u> hereto and deliver a copy thereof to each of Seller and Buyer.  The Deposit is to be held in escrow by Title Company until completion of the transaction described herein or as otherwise set forth herein.  Upon Title Company's receipt of each portion of the Deposit, Title Company shall promptly notify Seller in writing thereof.

(ii)    (A)    By executing this Agreement, Title Company shall be deemed to have accepted the terms of this Agreement and agreed to receive, hold and disburse the Deposit as herein provided.

(B)    Title Company shall not be liable for any action taken or omitted by it in good faith and believed by Title Company to be authorized or within the rights or powers conferred upon it by this Agreement, except for damages caused by gross negligence or willful misconduct of the Escrow Agent.

(C)    In the event that a dispute shall arise in connection with the Deposit, or as to the rights of any of the parties in and to, or the disposition of, the Deposit, Title Company shall have the right to (1) hold and retain all or any part of the Deposit until such dispute is settled or finally determined by litigation, arbitration or otherwise, or (2) deposit the Deposit in an appropriate court of law, following which Title Company shall thereby and thereafter be relieved from any liability or obligation under this Section 2(b), or (3) institute an action in interpleader or other similar action permitted by stakeholders in the State of Michigan or (4) interplead any of the parties in any action or proceeding which may be brought to determine the rights of the parties to the Deposit.

(D)    Title Company shall not have any liability or obligation for loss of all or any portion of the Deposit by reason of the insolvency or failure of the institution of depository with whom the Deposit is maintained.

3.    <u>Transfer of Title to the Property</u>.

(a)    At the Closing, Seller shall convey to Buyer title to the Real Property, the Appurtenances and the Improvements, by duly executed and acknowledged limited warranty or covenant deed in the form attached hereto as <u>Exhibit D</u> (the "**Deed**").  At the Closing, Seller shall convey title to the Property, subject to no liens, encumbrances, claims, demands, security interests, options, purchase agreements, mortgages, pledges, leases, conditional sales or other title retention agreements, exceptions, or restrictions of any kind or nature whatsoever (collective, "**Encumbrances**") other than the Permitted Encumbrances, as hereinafter defined. "Permitted Encumbrances" means any Encumbrances identified on the Title Commitment attached hereto as <u>Exhibit E</u> (the "Title Commitment") and shown on the Survey, and matters which arise subsequent to the date of the Title Commitment that are disclosed in writing to Buyer are not objected to by Buyer at least five (5) business days prior to the expiration of the Due

Diligence Period (in each case meeting all of the requirements of this Agreement applicable thereto). Evidence of delivery of title shall be the issuance by Title Company to Buyer of an ALTA owners title insurance policy for the Purchase Price on Title Company's current form insuring fee ownership of the Real Property in Buyer subject to the Permitted Exceptions and such exceptions as are approved or waived by Buyer pursuant to Section 4(c) herein, with the standard exceptions deleted and including the following endorsements: zoning, access, survey, flood plain certification and comprehensive (ALTA 9.2) (collectively, the "**Title Policy**").

(b)    At the Closing, Seller will execute a bill of sale in the form attached hereto as Exhibit F (the "**Bill of Sale**").

4.    <u>Due Diligence Period</u>.

(a)    <u>Due Diligence Period</u>.  Buyer shall have until 5:00 p.m. (Eastern Time) on April 6, 2007 (the "**Due Diligence Period**") to conduct its due diligence review with respect to the Property.

(b)    <u>Due Diligence Deliveries</u>.  Seller has delivered to Buyer copies of the following documents to the extent in Seller's possession ("**Due Diligence Documents**"):

    (i)    An ALTA survey of the Property (the "**Survey**"),

    (ii)    Environmental, engineering, soils and other physical reports pertaining to the Real Property and Improvements, if any.

    (iii)    Any other agreements; contracts, documents; correspondence; tests; surveys; maps and any conditions to such maps; plans or other materials; right of way and easement agreements; bonds; permits; and entitlements.

(c)    <u>Title Matters; Buyer's Objections; Seller's Right to Cure</u>.  Seller has delivered to Buyer the Title Commitment and the Survey.  At least five (5) business days prior to the expiration of the Due Diligence Period, Buyer shall notify Seller in writing of any title matters which have arisen subsequent to the date of the Title Commitment that have been disclosed in writing to Buyer and to which Buyer objects (the "Title Exceptions").  If Buyer does not provide any such notification, Buyer shall be deemed to have approved all Title Exceptions.  If Buyer timely provides notice of objections, Seller then shall have three (3) business days in which to notify Buyer whether Seller will remove any such Title Exceptions to which Buyer has objected. If Seller does not agree to remove such Title Exceptions to Buyer's satisfaction, Buyer shall have the option during the Due Diligence Period to waive such Title Exceptions to which Buyer has objected and proceed to Closing, or to terminate this Agreement on or before the end of the Due Diligence Period.

(d)    <u>Buyer's Inspections</u>.  After the date of this Agreement, Buyer and its authorized agents, consultants and contractors may enter upon the Property during reasonable business hours to make and perform evaluations, inspections and investigations of the condition of the Property upon reasonable notice to Seller.  Notwithstanding the foregoing, any environmental investigation shall be conducted only by an environmental consulting or engineering firm

4

approved by Seller in writing, which approval shall not be unreasonably withheld.  Buyer and its authorized agents, consultants and contractors shall provide evidence of commercial general liability insurance in amounts not less than Two Million Dollars ($2,000,000) per occurrence and shall name Seller as an additional insured.  In addition, any such environmental consultant or engineering firm shall provide evidence of environmental liability insurance and errors and omissions coverage in amounts not less than Two Million Dollars ($2,000,000) per occurrence and shall name Seller as an additional insured.  To the extent Buyer desires to conduct any invasive tests of the Property, Buyer shall do so only after providing to Seller written notice detailing the scope of work and describing the tests, procedures and proposed sampling locations and only upon receipt of Seller's consent thereto.  Buyer shall pay the costs of all inspections and shall repair any damage to the Property caused thereby.  Buyer shall indemnify, defend, protect and hold Seller harmless from any claims, liabilities, damages or expenses, including without limitation, reasonable attorneys' fees and costs, arising from or in connection with any and all construction liens and any and all damage to property or persons arising out of the inspections, other than any damages due to Seller's negligence or misconduct, which obligations of Buyer shall survive the termination of this Agreement, any provision of this Agreement to the contrary notwithstanding.  The provisions of this Section 4(d) shall only apply to any inspections by Buyer conducted after the date of this Agreement.  Any inspections by Buyer pursuant to this Section 4(d) shall be conducted in such a manner as to minimize inconvenience caused to Seller and interference with Seller's business operations in the Real Property.

(e)    <u>Bankruptcy Court Approval</u>.  In order for Buyer to consummate the transactions contemplated by this Agreement, Buyer must first obtain approval of such transactions and this Agreement as well as the contemplated assignment of this Agreement to the Metcalf Family Living Trust, or its affiliate ("Metcalf"), the Lease between Metcalf, as landlord, and Buyer or its affiliate, as tenant, and the sublease between Buyer, as sublessor, and Seller as sublessee, from the Bankruptcy Court.  Buyer shall use commercially reasonable efforts to file a motion with the Bankruptcy Court (the "Motion") in order to obtain a final and non-appealable order of the Bankruptcy Court approving this Agreement (the "Order") and will take all appropriate actions in Buyer's discretion to obtain the Order.  The proposed Order must be reasonably acceptable to Buyer and Seller.  It is a condition precedent to this Agreement that Buyer obtain the Order prior to the expiration of the Due Diligence Period.  If the Motion is not approved by the Bankruptcy Court, this Agreement shall be null, void and of no effect whatsoever and the Deposit shall be refunded to the Buyer.

(f)    <u>Expiration of Due Diligence Period</u>.  Buyer shall have until expiration of the Due Diligence Period to deliver notice to Seller and Title Company that Buyer has approved its due diligence evaluation of the Property (the "Approval Notice"), which Buyer may approve or disapprove in its sole and absolute discretion.  During the Due Diligence Period, Buyer may send a notice terminating this Agreement because, based on the results of its due diligence evaluation of the Property, Buyer elects not to purchase the Property ("Termination Notice").  Notwithstanding anything herein contained to the contrary, Buyer shall not give the Approval Notice unless it has obtained the Order prior to such Approval Notice.  However, Buyer may send the Termination Notice at any time during the Due Diligence Period.  If Buyer does not deliver the Approval Notice to Seller before the end of the Due Diligence Period, Buyer shall be deemed to have elected to terminate this Agreement.  If Buyer elects, or is deemed to have

5

elected, to terminate this Agreement in accordance with this Section 4(f), Seller shall cause the Title Company to return the Deposit plus interest accrued thereon to Buyer, and neither party shall have any rights or obligations hereunder (except to the extent otherwise provided herein). If Buyer timely gives the Approval Notice (and has theretofore obtained the Order), this Agreement shall continue in effect and the Deposit shall be deemed nonrefundable to Buyer.

   5.  <u>Conditions to Closing</u>.

   (a)  The following conditions are precedent to Buyer's obligation to purchase the Property (the "**Buyer's Conditions**"):

      (i)  <u>Title Insurance</u>.  Title Company shall have issued or shall have unconditionally and irrevocably committed to issue the Title Policy.

      (ii)  <u>Representations, Warranties and Covenants</u>.  Seller shall have performed each covenant required to be performed by Seller under this Agreement and Seller's representations and warranties set forth in this Agreement shall be materially true and correct as of the Closing.

      (iii)  <u>Sublease</u>.  Seller shall have executed the Sublease in the form of <u>Exhibit G</u> hereto (the **"Sublease"**).

      (iv)  <u>Bankruptcy Court Approval</u>.  The Bankruptcy Court shall have entered a final, nonappealable order approving this Agreement, the Assignment Agreement, the Lease and the Sublease (collectively the **"Transaction"**).

      (v)  <u>Seller's Work</u>.  Seller has completed the Seller's Work, including delivery of the Remediation Certification required under Section 12(c).

   Buyer's Conditions are intended solely for the benefit of Buyer.  If any of Buyer's Conditions is not timely satisfied for any reason other than Buyer's default hereunder, Buyer shall have the right in its sole discretion to either (i) waive in writing such Buyer's Condition (other than the condition in Section 5(a)(iv)) and proceed with the Closing, or (ii) terminate this Agreement, in which event the Deposit shall be returned to Buyer and neither party shall have further obligations under this Agreement (other than obligations which by their terms survive such a termination); provided however that if Seller is in default, Buyer shall retain its remedies against Seller as provided in Section 6(b) below.  Buyer cannot waive the Condition in Section 5(a)(iv).

   (b)  The following conditions are precedent to Seller's obligation to sell the Property (the "**Seller's Conditions**"):

      (i)  <u>Deposit of Funds</u>.  Buyer shall have deposited the Purchase Price into escrow, and such other funds as may be required pursuant to Section 7(f) and any other provisions of this Agreement.

6

(ii) <u>Deliveries Complete</u>.  Buyer shall have delivered to Title Company the documents listed in Section 7(d) of this Agreement.

(iii) <u>Representations, Warranties and Covenants</u>.  Buyer shall have performed each and every covenant required to be performed by Buyer under this Agreement and all of Buyer's representations and warranties set forth in this Agreement shall be true and correct as of the Closing.

(iv) <u>Sublease</u>.  Buyer shall have executed and delivered and caused Metcalf to execute and deliver the Sublease.

Seller's Conditions are intended solely for the benefit of Seller. If any of Seller's Conditions is not satisfied, Seller shall have the right in its sole discretion either to (i) waive in writing the Seller's Condition and proceed with the sale, or (ii) terminate this Agreement; in which event the Deposit shall be returned to Buyer and neither party shall have further obligations under this Agreement (other than obligations which by their terms survive such a termination); provided however that if Buyer is in default, Seller shall retain the Deposit as liquidated damages, as provided in Section 6(a) below.

6. <u>Remedies</u>.

(a)    If the sale of the Property is not consummated because of a breach or default under this agreement by Buyer, the Deposit and interest accrued thereon shall be paid to and retained by Seller as liquidated damages and as Seller's sole remedy for such breach or default. By initialing below, the parties have agreed that Seller's actual damages in the event of a failure to consummate this sale due to Buyer's default would be extremely difficult or impracticable to determine.  After negotiation, the parties have agreed that, considering all the circumstances existing on the date of this Agreement, the amount of the deposit is a reasonable estimate of the damages that Seller would incur in such event.  The payment and retention of such amount as liquidated damages is not intended as a forfeiture or penalty, but is intended to constitute liquidated damages to Seller.  Seller waives all right to seek other rights or remedies against buyer, including without limitation, specific performance.  However, nothing in this Section shall preclude the recovery of attorneys' fees or other costs incurred by Seller in enforcing this agreement or limit the effectiveness of the indemnification obligations of Buyer under this agreement.

(b)    If the sale of the Property is not consummated because of a breach or default under this Agreement by Seller, Buyer may, as Buyer's sole and exclusive remedy exercise one, and only one, of the following: (i) terminate this Agreement by delivery of notice of termination to Seller, whereupon the Deposit shall be returned to Buyer and Seller shall reimburse Buyer and Metcalf for actual out-of-pocket expenses incurred in connection with the transaction contemplated hereunder, but in no event shall such reimbursement exceed Seventy-Five Thousand Dollars ($75,000) and all parties hereto shall be relieved of all further obligations hereunder (other than obligations which by their terms survive such a termination); or (ii) close and waive the default; or (iii) commence an action for specific performance.

7.    <u>Closing and Escrow</u>.

(a)    Upon mutual execution of this Agreement, the parties shall deposit an executed counterpart of this Agreement with Title Company as instructions to Title Company as the escrow holder for consummation of the purchase and sale contemplated hereby.  Seller and Buyer each agrees to execute such additional escrow instructions as may be reasonably appropriate, or reasonably required by Title Company, to enable Title Company, as escrow holder to comply with this Agreement; provided that in the event of any conflict between the provisions of this Agreement and any supplementary escrow instructions, the terms of this Agreement shall control.

(b)    The Closing hereunder shall be held and delivery of all items to be made at the Closing shall be made at the offices of Title Company at 10 a.m. (Eastern Time) on April 30, 2007.  The date so established for Closing is referred to herein as the "**Closing Date**".

(c)    At the Closing, subject only to the Sublease, Seller shall deliver to Buyer exclusive possession of the Property, and the Property in good broom clean condition, with all of Seller's personal property removed.

(d)    At or before the Closing, Seller shall deliver to Buyer, or to Title Company as escrow holder, the following:

(i)    a duly executed and acknowledged Deed in the form of <u>Exhibit D</u> hereto;

(ii)    a duly executed Bill of Sale in the form of <u>Exhibit F</u> hereto;

(iii)    three (3) duly executed copies of the Sublease in the form of <u>Exhibit G</u> hereto;

(iv)    three (3) duly executed copies of the Escrow Agreement in the form of <u>Exhibit H</u> hereto (the "Escrow Agreement");

(v)    any other instruments or records called for hereunder which have not previously been delivered, and keys to all doors to the Improvements which are in Seller's or its agents' possession; and

(vi)    an affidavit pursuant to Section 1445(b)(2) of the United States Internal Revenue Code (the "**Code**") and on which Buyer is entitled to rely, that Seller is not a "foreign person" within the meaning of Section 1445(f)(3) of the Code, substantially in the form of <u>Exhibit I</u> attached hereto.

Buyer may waive compliance on Seller's part under any of the foregoing items by an instrument in writing.

(e)    At or before Closing, Buyer shall deliver to Seller, or to Title Company as escrow holder, the following:

8

(i)      three (3) duly executed copies of the Sublease duly executed by Metcalf in the form of <u>Exhibit F</u> hereto;

(ii)     three (3) duly executed copies of the Escrow Agreement; and

(iii)    the Purchase Price as adjusted for prorations and costs as provided herein.

(f)     Seller and Buyer shall each deposit such other instruments as are reasonably required by the escrow holder or otherwise required to close the escrow and consummate the purchase and sale of the Property in accordance with the terms hereof.

(g)     The following are to be apportioned as of the Closing Date:

(i)      <u>Utility Charges</u>.  Seller shall pay all such charges for utilities used through the date prior to the Closing Date. Buyer will pay to Seller at Closing the amount of any utility deposit(s) made by Seller, and Seller will assign to Buyer all of its right, title and interest in and to the applicable deposit(s) relating thereto. Buyer will be responsible for the cost of all utilities used on or after the Closing Date.  Seller will pay all utility bills Seller has received prior to the Closing and will provide proof of payment of such utility bills prior to the Closing.

(ii)     <u>Other Apportionments; Closing Costs</u>.  Seller shall pay the premium for the Title Policy and any real estate transfer taxes.  Seller and Buyer shall equally split the escrow fees and all other costs incurred in connection with the transaction contemplated by this Agreement, as reasonably determined by Title Company.

(iii)    <u>Real Estate Taxes and Assessments</u>.  General real estate taxes and installment payments on assessments payable for all tax years ending prior to the Closing Date, and any supplemental or special tax assessments which are specific to the Seller and other real estate assessments which are relating to the period of time prior to the Closing, or due and payable as a result of the sale of the Property will be paid by Seller; provided however, Seller will not pay any increase in the real estate taxes as a result of the sale of the Property (uncapping).  General real estate taxes and the current installment payments on all assessments payable for the tax year in which the Closing Date occurs will be prorated by Title Company on a due date basis and allocated between Seller and Buyer as of the Closing Date.

(iv)     <u>Closing Statement</u>.  Title Company shall prepare a preliminary Closing settlement statement and shall deliver such statement to Buyer and Seller for approval no less than three (3) days prior to the Closing Date.

(v)      <u>Post-Closing Reconciliation</u>.  Seller and Buyer agree that if any of the foregoing prorations cannot be calculated accurately as of the Closing Date, then the same shall be estimated (based on current information then known) for

9

the purposes of Closing and within ninety (90) days after the Closing Date, or sooner if sufficient information is available to permit the parties to effectively calculate such prorations, either party owing the other party a sum of money based on such subsequent prorations shall pay such sum to the other party within ten (10) days after such calculations.

(vi)    Survival.    The provisions of this Section 7(f) shall survive the Closing.

8.    Representations and Warranties and Limited Indemnity of Seller.    Seller represents and warrants to Buyer as follows, which representations and warranties shall be true as of the date of this Agreement and as of the Closing:

(a)    Seller has full power and authority to enter into and perform the terms of this Agreement;

(b)    This Agreement is duly authorized and executed by Seller, and this Agreement and all documents required to be executed by Seller in connection herewith, are and shall be valid, legally binding obligations of Seller, enforceable in accordance with their terms;

(c)    Seller has no Knowledge and has not received written notice from any city, county, state or federal authority with jurisdiction ("Governmental Entity") of any order or directive that any work of repair, maintenance, or improvement be performed on the Property, which has not been performed;

(d)    Subject to the approval of the Transaction by the Bankruptcy Court, Seller has received no written notice and has no Knowledge that any action, proceeding or investigation is pending or threatened against Seller relating to the Property, before any court or governmental department, commission, board, agency or instrumentality that would affect its ability to carry out its obligations under this Agreement;

(e)    Seller is not a "foreign person" as that term is defined in Section 1445(f) of the Code and any similar provisions of applicable state law, and the regulations issued thereunder;

(f)    There are no management, service, maintenance, utility or other contracts or agreements affecting the Property, oral or written, which extend beyond the Closing Date and which would bind Buyer or encumber the Property after Closing;

(g)    Seller has received no writing from a Governmental Entity that there may be or are contemplated any condemnation proceedings against the whole or any part of the Property;

(h)    On the date hereof and as of the Closing Date, the Property is not encumbered by any mortgage or deed of trust.  Any existing encumbrances upon the Property which Seller is required to remove under this Agreement shall be paid and discharged prior to the Closing Date;

(i)       There is no litigation pending, or to Seller's Knowledge threatened, which affects title to, or possession of, the Property.  Seller will inform Buyer immediately upon the notice of the institution of any such litigation;

(j)       There are no written or oral leases or license agreements in effect with respect to the Property that will be in effect on the Closing Date and no person other than Seller will be in possession, entitled to or claims entitlement to possession of the Property on the Closing Date and Seller shall deliver exclusive possession of the Property to Buyer on the Closing Date, subject to the Sublease;

(k)       Seller has received no notice from any Governmental Entity and has no Knowledge of any violations concerning the condition and/or use of the Property which have not heretofore been corrected by Seller.  Seller shall correct, at its own cost and expense, any violations of law, ordinances, order or requirements of any Governmental Entities affecting the Property of which it has been notified or Ronald Floyd, Facilities Manager of Seller has actual knowledge without inquiry as of the Closing Date, which assumption of cost and liability shall survive the Closing Date;

(l)       Except for the existing underground water tank, Seller has received no written or official notice and has no Knowledge that any tanks, drums, toxic or hazardous materials (which are regulated by a state or federal environmental law ("Hazardous Material") are located on, in or under the Property or that Seller is in violation or alleged to be in violation of any state or federal environmental laws with respect to the Property;

(m)       With respect to the Property, Seller has received Buyer's phase I environmental site assessment dated March 2007, which identified two certain recognized environmental conditions as defined under the ASTM Standard E1527-05:  the existence of (i) an oil/water separator, and (ii) below grade hydraulic lifts; Seller has received no written or official notice of and has no Knowledge that there has been a release of a Hazardous Material into the soils or water or groundwater of the Property in connection with (i) or (ii) above.

(n)       (i)       Seller has received the report prepared for Buyer by Enviroair Consultants, Inc., dated February 20, 2007 for Project No. 070219-DCM1 (the "Enviroair Report").

(ii)       With respect to the identification, evaluation and remediation of damage to the Property from entry of water, fungus, mold or mold spores ("Water Damage"), Seller has provided to Buyer third party consultant and contractor reports in Seller's possession or in the possession of Seller's consultants, advisors, agents or attorneys (save attorney-client privileged documents) relating to Water Damage, and has granted Buyer access to all documents in Seller's possession related to Water Damage to Seller's Knowledge, and has given Buyer the opportunity to make copies of such documents.

(iii)       (A) Seller has received no written or official notice from a Governmental Entity other than as disclosed to Buyer and (B) other than information given by Seller to Buyer or access to which was granted by Seller to Buyer and as provided in the

11

Enviroair Report, Seller has no Knowledge of any such Water Damage to the Property which has not been repaired or which will not be repaired as "Seller's Slab Work" in accordance with the recommendations set forth in the consultants' reports set forth on Exhibit J hereto.  Except for the Seller's Slab Work, Seller has completed all of the recommendations set forth in the consultants' reports set forth on Exhibit J hereto.

(o)     Seller will promptly inform Buyer in writing of any material event adversely affecting the ownership, use, occupancy, operation or maintenance of the Property of which Seller has Knowledge.

For the purposes of this Agreement, Seller's Knowledge means the actual knowledge or knowledge a person would reasonably be expected to have based on reasonable investigation of Ronald Floyd, Facilities Manager of Seller.  If Buyer makes any claim for a breach of the foregoing representations and warranties based upon a breach of Seller's Knowledge then the Buyer bears the burden of proof to demonstrate Seller's Knowledge.

In the event any of the foregoing representations or warranties of the Seller are not true on the date hereof or on the Closing Date, Seller shall be considered in default and Purchaser, in addition to its other rights herein, shall have the right to waive the same and proceed to consummate the transaction contemplated herein, or to declare this Agreement null and void and thereby be entitled to an immediate refund of the Deposit.  The representations, warranties, and covenants set forth herein, as applicable, shall survive the Closing Date for a period of eighteen (18) months subsequent to which the same shall be null and void.

9.     Representations and Warranties of Buyer.  Buyer represents and warrants to Seller as follows:

(a)     Other than approval of the Transaction by the Bankruptcy Court, Buyer has full power and authority to enter into and perform the terms of this Agreement.

(b)     This Agreement is duly authorized and executed by Buyer, and this Agreement and all documents required to be executed by Buyer in connection herewith, are and shall be valid, legally binding obligations of Buyer, enforceable in accordance with their terms.

(c)     To Buyer's knowledge, no action, proceeding or investigation is pending or threatened against Buyer, before any court or governmental department, commission, board, agency or instrumentality that would affect its ability to carry out its obligations under this Agreement.

The representations, warranties, and covenants set forth herein, as applicable shall survive the Closing Date for a period of eighteen (18) months subsequent to which the same shall be null and void.

10.     Risk of Loss.  In the event any of the Property is damaged or destroyed prior to the Closing Date, and such damage or (i) would cost less than One Hundred Thousand Dollars ($100,000) to repair and is fully covered by Seller's insurance, except for the deductible amounts

thereunder, or (ii) is uninsured and would cost less than One Hundred Thousand Dollars ($100,000) to repair or restore, then this Agreement shall remain in full force and effect and Buyer shall acquire the Property upon the terms and conditions set forth herein ("**Minor Casualty**"). In such event, Buyer shall receive a credit against the Purchase Price equal to such (a) deductible amount (except the portion applied to repairs), and Seller shall assign to Buyer all of Seller's right, title and interest in and to all proceeds of insurance on account of such damage or destruction or (b) if clause (ii) above is applicable, the remaining cost to repair and restore. In the event of a casualty other than a Minor Casualty or the Property becomes the subject of any condemnation proceeding involving a portion of the Property greater than One Hundred Thousand Dollars ($100,000), then each of Buyer and Seller shall have the right, at its election, to terminate this Agreement by delivery of notice of termination to other on or before the scheduled Closing Date, whereupon Buyer and Seller shall instruct Title Company to return the Deposit to Buyer, and each shall be released from all obligations hereunder pertaining to the Property (other than the indemnification obligations under Section 4(d) and 13 (b)). If this Agreement is not terminated, Seller shall assign to Buyer any proceeds of insurance or condemnation awards and the Purchase Price shall be reduced by the amount of Seller's deductible (except the portion applied to repairs). Unless this Agreement shall be terminated pursuant to this Section 10, Buyer shall be responsible for all repairs which have not been completed by the Closing Date and the Closing Date shall not be delayed.

11.   Operation Pending Closing.   Prior to the Closing, Seller shall operate and maintain the Property substantially in accordance with Seller's past practices for the previous 12 months. Seller shall not enter into any new lease with respect to the Property prior to the Closing. Seller shall not enter into any contract with respect to the Property prior to the Closing if such contract would bind Buyer after the Closing, unless Buyer consents to such contract. Without the prior written consent of Buyer, which will not be unreasonably withheld or delayed, Seller will not subject the Property to any additional liens, encumbrances, covenants, conditions, easements, rights of way or similar matters after the Effective Date which could affect the Property following the Closing.

12.   Seller's Work.

(a)   Prior to the Closing Date, Seller at its sole cost and expense shall (i) remediate the water and fungal damage identified in the Enviroair Report and restore the portions of the Real Property affected by such remediation ("Seller's Enviroair Work") and (ii) seal the A Wing and G Wing concrete slab as recommended in the January 9, 2003 NTH Project NO:16-021141-00 report ("Seller's Slab Work"). Seller's Enviroair Work and Seller's Slab Work are collectively referred to as "Seller's Work".

(b)   Seller's Enviroair Work shall be conducted to remediate the Real Property with respect to the damage identified in the Enviroair Report to the extent required under the following standards of practice in the mold remediation industry: (i) the New York City Department of Health and Mental Hygiene Guidelines on Assessment and Remediation of Fungi in Indoor Environments, and (ii) the Institute of Inspection, Cleaning and Restoration Certification, Standard S-520, Standard and Reference Guide for Professional Mold Remediation. Seller's Work will be done in a good and workmanlike manner.

13

(c)     Upon the completion of Seller's Work, Seller shall cause its remediation contractor, who is reasonably acceptable to Buyer, to certify to Seller and Buyer ("**Remediation Certification**") that such remediation and sealing has been completed in accordance with this Section 12.

13.    <u>Miscellaneous</u>.

(a)     Notices.  Except as otherwise specifically provided in this Agreement, any notice, consent, request or approval required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given upon (i) hand delivery, (ii) one business day after being deposited with Federal Express or another reliable overnight courier service, (iii) transmission by facsimile telecopy during regular business hours at the receiver's location, with facsimile transmittal confirmation and with a confirming copy sent the same business day by United States mail, or (iv) upon receipt after being deposited in the United States mail, registered or certified mail, postage prepaid, return receipt required and addressed as follows:

| | |
|---|---|
| If to Buyer: | Delphi Automotive Systems LLC<br>5825 Delphi Drive,<br>Troy, Michigan 48098<br>Attn:  Executive Director, Operations Support Group |
| With a copy to: | Delphi Automotive Systems LLC<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  Deputy General Counsel – Transactional and<br>      Restructuring |
| With a copy to: | The Metcalf Family Living Trust<br>2920 Rohrer Drive<br>Lafayette, California  94549<br>Attention:  David Metcalf<br>Facsimile: 925-283-2263 |
| With a copy to: | Morgan Miller Blair<br>Suite 200<br>1331 N. California Blvd.<br>Walnut Creek, California 94596<br>Attention:  Chris Hunter, Esq.<br>Facsimile: 925-943-1106 |
| If to Seller: | Valeo Electrical Systems, Inc.<br>3000 University<br>Auburn Hills, Michigan  48326-2356<br>Attention:  Francoise Colpron<br>Facsimile: 248-340-8455 |

14

With a copy to:            Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
Attn:  E. Todd Sable, Esq.
Facsimile: 313-465-7549

If to Title              LandAmerica
Company:           1050 Wilshire Dr. Suite 310
Troy, Michigan
Attention: Steve Nadolski
Facsimile: 248-649-1626

or such other address as any of the foregoing may from time to time specify in writing to the other.

(b)      _Brokers/Intermediaries_.    Seller represents that Seller has not had any conversations or dealings with any broker, finder or other intermediary in connection with the Property other than Binswanger America, LLC and L. Mason Capitani Incorporated ("**Seller's Brokers**").  Buyer represents that Buyer has not had any conversations or dealings with any broker, finder or other intermediary in connection with the Property other than DREAL INC., Grubb & Ellis, Collier's International Partnership and Jones Lang LaSalle Americas, Inc. (**"Buyer's Brokers"**).  If and only if the Closing occurs hereunder at Closing Seller shall pay real estate commissions to Seller's Brokers equal to: (i) $660,000; and (ii) any additional commissions owing to Seller's Brokers.  Seller's Brokers shall pay the commissions due Buyer's Brokers as directed by DREAL INC. in accordance with a separate agreement between Seller's Brokers and DREAL INC.  Seller hereby authorizes the Title Company to deduct the commissions from the Purchase Price.  Seller agrees to defend, indemnify and hold harmless Buyer from and against any and all liabilities, claims, demands, damages, or costs of any kind (including attorneys' fees, costs and expenses) arising from or connected with any broker's or finder's fee or commission or charge ("**Broker Claims**") claimed to be due by Seller's Brokers or any other person other than Buyer's Brokers arising from or by reason of Seller's conduct with respect to this transaction.  Subject to Seller's payment of Seller's Brokers as provided above, Buyer agrees to defend, indemnify and hold harmless Seller from and against any and all Broker Claims claimed to be due Buyer's Broker or any other person arising from or by reason of Buyer's conduct with respect to this transaction other than claims of Seller's Brokers.  This Section 13(b) shall survive the close of Escrow or termination of this Agreement.

(c)      _Counterparts_.  This Agreement may be executed in any number of counterparts and each counterpart shall be deemed to be an original document.  Delivery of the executed Agreement may be accomplished by facsimile transmission, and if so, the facsimile copy shall be deemed an executed original counterpart of this Agreement.  All executed counterparts together shall constitute one and the same document, and any signature pages, including facsimile copies thereof, may be assembled to form a single original document.

(d)    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, administrators and assigns. Buyer may assign this Agreement and its rights hereunder upon written notice to Seller, and any such assignment will release Buyer from all liability under this Agreement.

(e)    <u>Amendments</u>.  Except as otherwise provided herein, this Agreement may be amended or modified only by an instrument executed by both parties.

(f)    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

(g)    <u>Integration of Prior Agreements</u>.  This Agreement and the exhibits hereto constitute the entire agreement between the parties and supersede all prior negotiations, correspondence, agreements and understandings between the parties relating to the subject matter hereof.

(h)    <u>Enforcement</u>.  In the event a dispute arises concerning the performance, meaning or interpretation of any provision of this Agreement, the defaulting party or the party not prevailing in such dispute (as the court shall determine) shall pay any and all reasonable costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, arbitration and court costs and attorneys' and experts' fees.  Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any such judgment.

(i)    <u>Time of the Essence; Dates</u>.  Time is of the essence of this Agreement.  If any of the dates specified in this Agreement shall fall on a Saturday, a Sunday, or a holiday, such date shall be deemed to have expired at 3:00 p.m. (Pacific Time) on the next business day, notwithstanding anything to the contrary herein.

(j)    <u>Severability</u>.  If any provision of this Agreement, or the application thereof to any person, place or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable or void, the remainder of this Agreement and such provisions as applied to other persons, places and circumstances shall remain in full force and effect.

(k)    <u>1031 Exchange</u>.  Buyer and Seller shall each, upon request of the other party, cooperate in effecting one or more tax-deferred like kind exchanges under Section 1031 of the Internal Revenue Code in connection with the transaction contemplated by this Agreement, including the execution of escrow instructions and other documents therefor; provided that the requesting party will pay any and all additional costs or expenses connected with such exchange and provided that the requested party shall not be required to take title to other real property in connection with the exchange and the Closing shall not be delayed as a result thereof.  Buyer and/or Seller may assign its rights in, and delegate its duties under this Agreement (in part or in whole), as well as transfer its interest in the Property, to an exchange intermediary, and Buyer

and/or Seller may add such intermediary as an additional party to the escrow, provided that Buyer and/or Seller, as applicable, shall remain primarily liable under this Agreement.

(l)    <u>Third Party Beneficiary</u>.    After any assignment of this Agreement by Delphi, Delphi shall remain a third party beneficiary to this Agreement.

(m)    <u>Bankruptcy Court Approval</u>.    Buyer's obligations under this Agreement are contingent upon Bankruptcy Court Approval.

(n)    Except as expressly provided in Section 8 hereof, Buyer expressly acknowledges that Seller has made no warranties or representations as to the condition of the Property, including but not limited to title conditions, soil conditions, environmental conditions, compliance with zoning laws or ordinances or building code provisions or set back lines, if any, or building, construction, use or occupancy restrictions or any federal, state or local government laws or regulations which may be applicable to the Property or its use, or availability of utilities. Purchaser further acknowledges that as of the Closing Date it will have inspected, analyzed, reviewed and evaluated the Property, that it and its representatives will have conducted such investigations of the Property as deemed necessary by Purchaser and that it will be thoroughly aware of the condition of the Property.    Except as expressly provided in Section 8 hereof, the property and any other property or right furnished or to be furnished under or in connection with this Agreement by Seller to Buyer are sold or furnished "AS IS, WHERE IS" AND WITH ALL FAULTS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY NATURE WHATSOEVER, EXPRESS OR IMPLIED, ORAL OR WRITTEN, AND IN PARTICULAR, WITHOUT ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND EXCEPT AS EXPRESSLY PROVIDED IN SECTION 8 HEREOF, AND/OR IN THE DEED TO BE DELIVERED BY SELLER TO BUYER. SELLER DISCLAIMS AND BUYER HEREBY WAIVES AND RELEASES SELLER FROM ANY OBLIGATION, LIABILITY, CLAIM OR DEMAND, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND PATENT INFRINGEMENT), STRICT LIABILITY OR OTHERWISE, WITH RESPECT TO THE PROPERTY, AND PURCHASER ASSUMES ALL LIABILITY FOR ANY CONDITION(S) ON THE PROPERTY, INCLUDING WITHOUT LIMITATION ENVIRONMENTAL AND SOIL CONDITIONS.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**<u>BUYER</u>**:

DELPHI AUTOMOTIVE SYSTEMS LLC

By:_____

Print Name:_____

Its:  Authorized Signatory

**SELLER**:

VALEO ELECTRICAL SYSTEMS, INC.

By:_____

Print Name:_____

Its:_____


Lawyers Title Insurance Corporation hereby executes this Agreement in order to evidence the acceptance and agreement to perform its undertakings as Title Company hereunder and to execute and deliver the Escrow Agreement at Closing.

**LAWYERS TITLE INSURANCE
CORPORATION**

By:    _____

Dated:    _____, 2007

LIST OF EXHIBITS

Exhibit A              Description of Real Property

Exhibit B              List of Personal Property

Exhibit B-1            Excluded Personal Property

Exhibit C              Receipt of Escrow Agent

Exhibit D              Covenant Deed

Exhibit E              Title Commitment

Exhibit F              Bill of Sale

Exhibit G              Sublease

Exhibit H              Escrow Agreement

Exhibit I              Certificate of Transferor (FIRPTA Affidavit)

Exhibit J              Water Damage Consultants' Recommendations

**EXHIBIT A**

**REAL PROPERTY**
**LEGAL DESCRIPTION**

A part of the West 1/2 of Section 13 and East 1/2 of Section 14, Town 3 North, Range 10 East, City of Auburn Hills, Oakland County, Michigan, being described as:  Commencing at the West 1/4 corner of Section 13; thence South 03 degrees 12 minutes 11 seconds East, 83.78 feet along the line between Sections 13 and 14, to a point on the Southerly line of University Drive, as proposed, thence along said line the following two courses:  (1) Along a curve to the right 156.21 feet, said curve having a radius of 3,153.84 feet, central angle of 02 degrees 50 minutes 16 seconds and a long chord bearing of South 61 degrees 47 minutes 48 seconds West 156.19 feet, and (2) South 63 degrees 12 minutes 55 seconds West, 606.47 feet to the point of beginning on the West line of the proposed parkway; thence along said line along the following five courses:  (1) South 26 degrees 47 minutes 05 seconds East, 44.69 feet, and (2) Along a curve to the left 328.13 feet, said curve having a radius of 350.00 feet, central angle of 53 degrees 42 minutes 55 seconds and a long chord bearing of South 53 degrees 38 minutes 32 seconds East, 316.24 feet, and (3) South 80 degrees 30 minutes 00 seconds East, 126.29 feet, and (4) Along a curve to the right 501.78 feet, said curve having a radius of 460.00 feet, central angle of 62 degrees 30 minutes 00 seconds and a long chord bearing of South 49 degrees 15 minutes 00 seconds East, 477.27 feet, and (5) South 18 degrees 00 minutes 00 seconds  East, 380.06 feet; thence South 72 degrees 00 minutes 00 seconds West, 146.77 feet; thence South 15 degrees 00 minutes 00 seconds West, 155.13 feet; thence South 61 degrees 00 minutes 00 seconds West, 394.00 feet; thence South 77 degrees 45 minutes 54 seconds West, 205.62 feet; thence South 69 degrees 30 minutes 00 seconds West, 105.00 feet; thence South 84 degrees 30 minutes 00 seconds West, 173.00 feet; thence North 82 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 64 degrees 30 minutes 00 seconds West, 285.00 feet; thence North 47 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 20 degrees 55 minutes 47 seconds West, 175.78 feet to a point on the Easterly line of proposed road; thence along said line along the following two courses:  (1) Along a curve to the left 664.23 feet, said curve having a radius of 770.00 feet, central angle of 49 degrees 25 minutes 32 seconds and a long chord bearing North 02 degrees 04 minutes 19 seconds West, 643.83 feet and (2) North 26 degrees 47 minutes 05 seconds West, 28.47 feet to a point on the Southerly line of University Drive, as proposed; thence North 63 degrees 12 minutes 55 minutes East, 769.65 feet to the point of beginning.

# EXHIBIT B

## LIST OF PERSONAL PROPERTY

A. **Office Area:**
   1. Auditorium AV Equipment
   2. Modular Furniture
   3. PBX and Handsets
   4. Sound System (Lobby / Cafeteria)

B. **Lab Area:**
   1. Air Compressor #1
   2. Air Compressor #2
   3. Air Compressor #3
   4. Material Lift
   5. Overhead Crane

C. **Kitchen Equipment:**
   1. All kitchen equipment excepting that which is listed in Exhibit B-1

D. **Building Systems:**
   1. Fire Extinguishers
   2. Building System Specific Spare Parts and Supplies (e.g. Heat Pump Filters)

**EXHIBIT B-1**

**EXCLUDED PERSONAL PROPERTY**

A. **Office Area:**
1. Art Work
2. Coat Racks (Portable)
3. Coffee Making Machines
4. Defibrillators
5. Display Cases
6. Electronic White Boards
7. Employee Badge System
8. First Aid Kits (Fire Blankets)
9. Flags
10. Ladders
11. Mail Room Equipment / Furniture
12. Microwave Ovens and Refrigerators
13. Office Equipment (Copiers, Fax Machines, Printers, Plotters, Binding Machines)
14. Office Furniture other than Modular Type
15. Paper Supplies
16. Picnic Tables
17. Plants
18. Podium (Portable)
19. Portable AV Equipment (TVs, DVD players, Projectors, Carts, Screens, Etc.)
20. Print Files
21. Recycle Bins
22. Visitor Badge ID System

B. **Lab Area:**
1. Eye Wash Stations
2. Fork Lifts and Chargers
3. Hazardous Material Cabinets
4. Laboratory Storage Racks
5. Laboratory Test Equipment (Chambers, Ovens, Fixtures, Instrumentation, Etc.)
6. Laboratory Work Benches
7. Maintenance Tools and General Supplies
8. Man Lifts
9. Pallet Jacks
10. Shipping Dock Equipment / Supplies
11. Sound Chamber Controls, Panels, Associated HVAC
12. Spill Kits
13. Vehicle Hoist

C. **Kitchen Equipment:**
1. Sharp Microwave (Property of Valeo)
2. Tropicana Display Cooler (Property of Aramark)
3. Coca Cola Display Cooler (Property of Aramark)
4. Snapple Display Cooler (Property of Aramark)
5. Amana Microwave (Property of Valeo)
6. Savor Toaster (Property of Valeo)
7. 5 Scotsman Ice Maker (Property of Valeo)
8. Pepsi Display Cooler (Property of Aramark)
9. Scotsman Flaker Ice Maker (3B Vending Area)

**EXHIBIT C**

**RECEIPT OF ESCROW AGENT**

Lawyers Title Insurance Corporation hereby acknowledges receipt of the sum of Eight Hundred Twenty Five Thousand Dollars ($825,000) which it agrees to hold in escrow, together with all interest thereon and any prior and/or future deposits, as the Deposit in accordance with the terms of the Purchase and Sale Agreement between Valeo Electrical systems Inc., as Seller, and Delphi Automotive Services LLC, as Purchaser, dated March 2, 2007 covering property at 3000 University Drive, Auburn Hills, Michigan.

**TITLE COMPANY:**

**LAWYERS TITLE INSURANCE CORPORATION**

By: _____

Name: _____

Its: _____

Date: _____, 2007

## EXHIBIT D

## COVENANT DEED

THIS INDENTURE, made this _____ day of _____, 2007, between **VALEO ELECTRICAL SYSTEMS, INC.**, a Delaware corporation, with its principal place of business at 3000 University, Auburn Hills, Michigan 48326-2356 (hereinafter referred to as "Grantor"), and **DAVID R. METCALF**, as Trustee of the Metcalf Family Living Trust, dated June 11, 1993, whose address is 2920 Rohrer Drive, Lafayette, California 94549 (hereinafter referred to as "Grantee").

WITNESSETH:

The Grantor for and in consideration of the sum of One Dollar ($1.00) in hand paid by Grantee, the receipt of which is hereby acknowledged, has granted, bargained, sold, remised, released, aliened and confirmed, and by these presents does grant, bargain, sell, remise, alien and confirm unto Grantee and Grantee's successors and assigns, forever, all of that certain parcel of land, situate, lying and being in the City of Auburn Hills, Oakland County, State of Michigan, described on Exhibit A hereto (hereinafter referred to as the "Real Property"); TOGETHER with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion or reversions, remainder or remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim or demand whatsoever, of Grantor, either in law or equity, of, in and to the above bargained Real Property, with the said hereditaments and appurtenances; TO HAVE AND TO HOLD the Real Property as before described, with the appurtenances, unto Grantee, its successors and assigns, FOREVER, subject to the matters set forth on Exhibit B hereto.  And Grantor, for itself, its successors and assigns, does covenant, grant, bargain, and agree to and with Grantee, its successors and assigns, that Grantor has not heretofore done, committed or wittingly or unwittingly suffered to be done or committed any act, matter or thing whatsoever, whereby the Real Property hereby granted, or any part thereof, is, or shall or may be charged or encumbered in title, estate or otherwise howsoever, except as may be hereinabove stated.

The Grantor grants to the Grantee the right to make all divisions under Section 108 of the Land Division Act, Act No. 288 of the Public Acts of 1967.

This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust,

odors, and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

**IN WITNESS WHEREOF**, Grantor has hereunto set its hand and seal on the day and year first above written.

Signed, seal and delivered:      **VALEO ELECTRICAL SYSTEMS, INC.,**
a Delaware corporation

_____  By:_____

Print Name:_____  Print Name:_____

_____  Its:_____

Print Name:_____


STATE OF MICHIGAN    )
                        )  ss:
COUNTY OF          )

      The foregoing instrument was acknowledged before me this _____ day of _____, 2007, by _____, the _____ of Valeo Electrical Systems, Inc., a _____ corporation, on behalf of said corporation.

[SEAL)

_____
Notary Public
_____ County, MI
My Commission expires:_____

Prepared by:
William J. Zousmer, Esq.
Honigman Miller Schwartz and Cohn
2290 First National Building
Detroit, Michigan 48226
313/465-7616

When recorded return to:
Ciara M. Comerford, Esq.
Delphi Automotive Systems LLC
5825 Delphi Drive; MC 480-410-268
Troy, MI  48098

# EXHIBIT A

## LEGAL DESCRIPTION

A part of the West 1/2 of Section 13 and East 1/2 of Section 14, Town 3 North, Range 10 East, City of Auburn Hills, Oakland County, Michigan, being described as: Commencing at the West 1/4 corner of Section 13; thence South 03 degrees 12 minutes 11 seconds East, 83.78 feet along the line between Sections 13 and 14, to a point on the Southerly line of University Drive, as proposed, thence along said line the following two courses: (1) Along a curve to the right 156.21 feet, said curve having a radius of 3,153.84 feet, central angle of 02 degrees 50 minutes 16 seconds and a long chord bearing of South 61 degrees 47 minutes 48 seconds West 156.19 feet, and (2) South 63 degrees 12 minutes 55 seconds West, 606.47 feet to the point of beginning on the West line of the proposed parkway; thence along said line along the following five courses: (1) South 26 degrees 47 minutes 05 seconds East, 44.69 feet, and (2) Along a curve to the left 328.13 feet, said curve having a radius of 350.00 feet, central angle of 53 degrees 42 minutes 55 seconds and a long chord bearing of South 53 degrees 38 minutes 32 seconds East, 316.24 feet, and (3) South 80 degrees 30 minutes 00 seconds East, 126.29 feet, and (4) Along a curve to the right 501.78 feet, said curve having a radius of 460.00 feet, central angle of 62 degrees 30 minutes 00 seconds and a long chord bearing of South 49 degrees 15 minutes 00 seconds East, 477.27 feet, and (5) South 18 degrees 00 minutes 00 seconds East, 380.06 feet; thence South 72 degrees 00 minutes 00 seconds West, 146.77 feet; thence South 15 degrees 00 minutes 00 seconds West, 155.13 feet; thence South 61 degrees 00 minutes 00 seconds West, 394.00 feet; thence South 77 degrees 45 minutes 54 seconds West, 205.62 feet; thence South 69 degrees 30 minutes 00 seconds West, 105.00 feet; thence South 84 degrees 30 minutes 00 seconds West, 173.00 feet; thence North 82 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 64 degrees 30 minutes 00 seconds West, 285.00 feet; thence North 47 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 20 degrees 55 minutes 47 seconds West, 175.78 feet to a point on the Easterly line of proposed road; thence along said line along the following two courses: (1) Along a curve to the left 664.23 feet, said curve having a radius of 770.00 feet, central angle of 49 degrees 25 minutes 32 seconds and a long chord bearing North 02 degrees 04 minutes 19 seconds West, 643.83 feet and (2) North 26 degrees 47 minutes 05 seconds West, 28.47 feet to a point on the Southerly line of University Drive, as proposed; thence North 63 degrees 12 minutes 55 minutes East, 769.65 feet to the point of beginning.

## EXHIBIT B

## PERMITTED EXCEPTIONS

1. Covenants and conditions set forth in a certain Deed recorded in Liber 10257, Page 184.

2. Maintenance Agreement and Easements, and the terms, conditions and provisions thereof, contained in Grant of Easement recorded in Liber 10257, Page 188.

3. Declaration of Covenants, Conditions and Restrictions recorded in Liber 10257, Page 157. Assignment of Covenant Rights to Chrysler Corporation, as contained in Liber 14122, Page 535.

4. Easement to Consumers Power Company for gas pipeline, as contained in Liber 14536, Page 565.

5. Agreements with Kasper Drain Drainage District, and the terms, conditions and provisions thereof, as contained in Liber 12488, Page 666, and Liber 12488, Page 671.

6. Grant of Easement to the Detroit Edison Company for electrical facilities, as contained in Liber 10856, Page 144.

7. Grant of Temporary Easements, as contained in Liber 10257, Page 204.

8. Grant of Easements to the City of Auburn Hills for underground sanitary, storm and sewer lines, and the terms, conditions and provisions thereof, as contained in Liber 14076, Page 686.

**EXHIBIT E**

**TITLE COMMITMENT**

[INSERT]

**EXHIBIT F**

**BILL OF SALE**

For good and valuable consideration the receipt of which is hereby acknowledged, Valeo Electrical Systems, Inc. ("**Seller**"), does sell, transfer, assign and convey to David R. Metcalf, Trustee of the Metcalf Family Living Trust dated June 11, 1993 ("Buyer"), all of Seller's right, title and interest in the personal property owned by Seller that is listed on Schedule 1 attached hereto and located in or on the real property at 3000 University, Auburn Hills, Michigan (the "Personal Property").

Seller sells and delivers the Personal Property "as is" to Buyer, and Seller has not made, nor shall Seller be deemed to have made, any representation or warranty, express or implied, as to the value, merchantability, quality or fitness for use or purpose of the Personal Property. Seller warrants only that it has good and marketable title to the Personal Property and the Personal Property is not subject to any liens, claims, or encumbrances whatsoever.

Seller and Buyer agree as follows:

A.    The Personal Property is furnished "AS IS", "WHERE IS", AND WITH ALL FAULTS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY NATURE WHATSOEVER, EXPRESS OR IMPLIED, ORAL OR WRITTEN, AND IN PARTICULAR, WITHOUT ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS BILL OF SALE, SELLER DISCLAIMS AND BUYER HEREBY WAIVES ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR DEMAND IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND PATENT INFRINGEMENT), STRICT LIABILITY OR OTHERWISE WITH RESPECT TO THE PERSONAL PROPERTY.    Without limiting the generality of the foregoing, Buyer acknowledges and agrees: (i) that Seller neither represents nor warrants that the Personal Property conveyed under this Bill of Sale will operate satisfactorily, (ii) that Seller shall have no liability or responsibility for the condition and/or operation of the Personal Property after transfer to Buyer, its agents, representatives and/or contractors, and (iii) that Buyer is purchasing the Personal Property based solely upon its own inspection, evaluation, review and analysis and Buyer assumes the entire risk associated with such inspection, evaluation, review and analysis being incomplete or inaccurate.

B.    In no event, whether occasioned by breach of contract, breach of warranty, tort (including negligence), strict liability or otherwise, shall Seller be liable to Buyer for incidental, indirect, special or consequential damages.

This sale is made without warranty of title or other warranty of any kind.

DATED this _____ day of _____, 2007.

**<u>SELLER</u>**:

**VALEO ELECTRICAL SYSTEMS, INC.,**
a Delaware corporation

By:_____

Print Name:_____

Its:_____

**Schedule 1**
**to**
**Bill of Sale**

**List of Personal Property**

A. <u>**Office Area:**</u>
    1.  Auditorium AV Equipment
    2.  Modular Furniture
    3.  PBX and Handsets
    4.  Sound System (Lobby / Cafeteria)

B. <u>**Lab Area:**</u>
    1.  Air Compressor #1
    2.  Air Compressor #2
    3.  Air Compressor #3
    4.  Material Lift
    5.  Overhead Crane

C. <u>**Kitchen Equipment:**</u>
    1.  All kitchen equipment excepting that which is listed in Exhibit B-1 to the Purchase and Sale Agreement

D. <u>**Building Systems:**</u>
    1.  Fire Extinguishers
    2.  Building System Specific Spare Parts and Supplies (e.g. Heat Pump Filters)

## EXHIBIT G

## SUBLEASE AGREEMENT

This **SUBLEASE AGREEMENT** dated as of April ____, 2007 by and between Delphi Automotive Systems LLC, with offices at 5725 Delphi Drive, Troy, Michigan 48098 ("SUBLESSOR"), and Valeo Electrical Systems, Inc., with offices at 4100 N. Atlantic Boulevard, Auburn Hills, Michigan 48326 ("SUBLESSEE"), is based upon the following:

A.      Sublessor has leased, as Tenant, from The Metcalf Family Living Trust dated June 11, 1993, as Landlord ("PRIME LANDLORD"), premises located at 3000 University Drive, in the City of Auburn Hills, County of Oakland, State of Michigan (the "DEMISED PREMISES"), pursuant to a certain lease dated March 2, 2007(the "PRIME LEASE"); and

B.      Sublessor desires to sublet to Sublessee and Sublessee desires to hire from Sublessor a portion of the Demised Premises as described on Exhibit A attached hereto; and

NOW THEREFORE, the parties agree as follows:

1.      **SUBLEASE.**  Sublessor hereby sublets to Sublessee a portion of the Demised Premises, for use as general office, research laboratory and for no other purpose, as follows:

(a)      The "Sublet Premises," as described on Exhibit A hereto, consists of one hundred forty-one thousand eight hundred (141,800) square feet as shown on Exhibits A-1, A-2, A-3 and A-5 attached hereto and made a part hereof.

(b)      On or prior to one hundred twenty (120) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-2, A-3 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be reduced to fifty-seven thousand (57,000) square feet.

(c)      On or prior to one hundred fifty (150) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-1 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be vacated in its entirety.

(d)      During the term, Sublessor shall provide Sublessee with access to those portions of the IT Areas that are then portions of the Sublet Premises and Sublessee shall provide Sublessor access to those portions of the IT Areas which are not then portions of the Sublet Premises.

(e)      During the term, Sublessee shall provide Sublessor with access to the portions of the laboratory space not part of the Sublet Premises and the restroom area in the laboratory area.

(f)    Sublessee shall also have the right to utilize portions of the common areas of the Demised Premises as well as the parking areas in order to reasonably utilize the Sublet Premises during the term.

(g)    Notwithstanding anything herein contained to the contrary, Sublessee may vacate and surrender portions of the Sublet Premises to Sublessor at any time and from time to time and upon such surrender in good broom clean condition, good order and repair, reasonable wear and tear excepted, such surrendered portion of the Sublet Premises shall no longer be part of the Sublet Premises and Rent under Paragraph 3 shall be adjusted accordingly.

2.    **TERM.**    The term of this sublease ("SUBLEASE TERM") shall commence on the Commencement Date and shall expire One Hundred Fifty (150) days after the Commencement Date, or such earlier date upon which the Sublease Term expires or terminates pursuant to the provisions of this Sublease or pursuant to law.

3.    **RENT.**

(a)    The rent for the Sublease Term shall be Seven Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($780,250.00) ("Rent").    The foregoing amount has been determined based on Sublessee occupying the entire Sublet Premises for the full Sublease Term of each respective portion of the Sublet Premises.    Such Rent shall be paid to Sublessor in accordance with the terms of the "Escrow Agreement," as defined in Paragraph 4 hereof.

(b)    The Rent paid pursuant to this Paragraph 3 is paid on a gross basis and Sublessor shall pay all costs and expenses of operating and maintaining the Demised Premises, except that Sublessee shall provide janitorial service to the Sublet Premises at its sole cost and expense.

4.    **ESCROW AGREEMENT.**    Sublessee shall deposit with Lawyers Title Insurance Corporation (the "Escrow Agent") pursuant to an Escrow Agreement executed by Sublessee, Sublessor and the Escrow Agent, the sum of Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00) (the "Sublease Escrow Funds") to be utilized to satisfy Sublessee's obligations under this Sublease.    Escrow Agent will disburse the Sublease Escrow Funds pursuant to the terms of the Escrow Agreement.

5.    **MAINTENANCE AND REPAIR.**

(a)    Except as provided in Paragraph 5(b) hereof, Sublessor covenants and agrees that Sublessor will, at Sublessor's expense, during the continuation of this Sublease, keep the said Sublet Premises and the Demised Premises in good repair.

(b)    Sublessee shall repair any damage caused to the Demises Premises resulting from the negligence or wrongful acts of Sublessee, Nidec, and Sublessee's and Nidec's agents, contractors or employees.    Sublessee shall not be required to make any other repairs or replacements to the Demised Premises.

(c)     Sublessee shall not perform any acts or carry on any practices which may injure the Demised Premises or be a nuisance or menace to Sublessor.  Sublessee shall not conduct its business in a manner which would cause an increase in Sublessor's insurance premiums for the Demised Premises other than Sublessee's current operations.

(d)     The Sublessee shall at Sublessee's own expense under penalty of forfeiture and damages promptly comply with all lawful laws, orders, regulations or ordinances of all municipal, County and State authorities affecting the cleanliness, safety, occupation and use of same, except that Sublessee shall not be required to make any alterations to the Sublet Premises to so comply.

6.     **UTILITIES AND TAXES.**  Sublessor shall pay for all gas, water, heat and electricity charges for the Demised Premises during the term of this Sublease.  Sublessor shall pay the real estate taxes and installments of special assessments relating to the Demised Premises during the term of this Sublease.

7.     **DAMAGE OR INJURY.**  Neither Prime Landlord nor Sublessor shall be responsible or liable to the Sublessee for any loss or damage (a) to Property or injury to persons sustained by Sublessee or others, caused by conditions or activities on the Sublet Premises (other than due to Sublessor's failure to repair), (b) that may be caused by the acts or omissions of persons occupying adjoining premises (other than Sublessor) or any part of the Demised Premises or (c) for any loss or damage resulting to Sublessee or Sublessee's property from bursting, stoppage or leaking of water, gas, sewer or steam pipes.

8.     **INSURANCE.**

(a)     (i)     Sublessee shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage.  Such insurance shall name Sublessor and the Prime Landlord, as "additional insureds," shall specifically include the liability assumed hereunder by Sublessee, and shall provide that it is primary insurance and not excess over or contributory with any other valid, existing and applicable insurance in force for or on behalf of Sublessor and the Prime Landlord.

(ii)     Sublessee shall procure and keep in effect "all risks" (also known as "special cause of loss," including theft, and leakage from fire protective devices) property insurance for the full replacement cost of Sublessee's trade fixtures, equipment, and personal property.

(iii)     On Sublessor's or Prime Landlord's reasonable request, Sublessee shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

(b)     (i)     Sublessor shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or

death, and property damage. Such insurance shall name Sublessee and the Prime Landlord as "additional insureds" and shall specifically include the liability assumed hereunder by Sublessor.

(ii)     Sublessor shall procure and keep in effect "all risks" (also known as "special cause of loss", including theft, and leakage from fire protective devices) property insurance for the full replacement value of the Demised Premises.

(iii)     On Sublessee's reasonable request, Sublessor shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

(c)     Sublessor, Sublessee and the Prime Landlord shall each be released from any liability (by way of subrogation or otherwise) for loss or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under workers' compensation laws and benefits, resulting from damage by fire or casualty, irrespective of the cause of such fire or casualty to the extent that such loss or damage is insured or required to be insured under this Sublease.

9.     **SERVICES BY PRIME LANDLORD.**  Sublessee shall look only to Sublessor for any services to be furnished to Sublessee in accordance with this Sublease.

10.     **ALTERATIONS.**  Sublessee shall not make any alterations, additions or improvements upon or to the Sublet Premises without the prior written consent of Sublessor and Prime Landlord. Any permitted alterations, additions and improvements shall be made at the sole cost of Sublessee and shall become the property of Sublessor and shall remain on and be surrendered with the Sublet Premises at the termination of this Sublease; however, Sublessor, at the time of Sublessor's approval, may designate by written notice to Sublessee those alterations, additions, and improvements which shall be removed by Sublessee at the expiration or termination of this Sublease and Sublessee shall promptly remove the same and repair any damage to the Sublet Premises caused by such removal.  Notwithstanding anything herein contained to the contrary, the movable office furniture, trade fixtures, business equipment and other personal property of Sublessee  (other than any items included in the definition of Property under the Purchase and Sale Agreement dated March 2, 2007 between Sublessor and Sublessee) shall remain its property and may be removed from the Sublet Premises at the end of the Subleased Term.  Sublessee shall deliver up the Sublet Premises, at the expiration or sooner termination of the term of this Sublease, in as good condition as they are now in and in a broom clean condition, ordinary wear, damage resulting from Sublessor's failure to repair, fire and other casualties excepted.

11.     **ACCESS.** At all reasonable hours, the Sublet Premises shall be open to Prime Landlord and Sublessor, their agents and representatives for inspecting or for repairs, additions or alterations by either party.

12.     **SUBLESSEE'S COVENANTS.**  Sublessee covenants with Sublessor to hire the Sublet Premises and to pay the Rent therefor as aforesaid, that it will commit no waste, nor suffer the same to be committed thereon, nor injure nor misuse the same; and also that it shall not make alterations therein, nor use the same for any purposes but that hereinbefore authorized.  Sublessee has inspected the Sublet Premises and accepts same in their present condition, without any warranties or

representations (expressed or implied) being relied upon and is relying upon its own inspection. Sublessee further covenants that this Sublease shall not be assigned, encumbered or otherwise transferred, and the Sublet Premises shall not be further sublet by Sublessee, in whole or in part, and Sublessee shall neither suffer nor permit any of the Sublet Premise to be used or occupied by others without the prior consent of Prime Landlord in each instance; provided however, that notwithstanding the foregoing, Sublessee has the right to sublet to or otherwise permit Nidec Motors and Actuators USA, Inc. ("Nidec") to occupy portions of the Sublet Premises during the Term of this Sublease.

13.     **PRIME LEASE.**

(a)     Notwithstanding that this Sublease is a sublease, Prime Landlord, Sublessor and Sublessee acknowledge that the terms and provisions of this Sublease shall not be subordinate to the Prime Lease but that this Sublease contains all of the terms and conditions which have been agreed to by the parties without reference to the Prime Lease.

(b)     Notwithstanding anything contained to the contrary in the Prime Lease or in this Sublease, the parties agree that in the event of cancellation of the Prime Lease for any reason whatsoever, including the default of Sublessor, as tenant thereunder, or the surrender thereof, whether voluntary, involuntary or by operation of law, this Sublease shall not thereby be cancelled or terminated, but Sublessee shall make full and complete attornment to the Prime Landlord and the Prime Landlord shall recognize all of Sublessee's rights hereunder for the balance of the Sublease Term with the same force and effect as thought this Sublease were originally made from the Prime Landlord to Sublessee hereunder.

(c)     The Prime Landlord has executed his consent to this Sublease in order to evidence his acceptance and agreement to the foregoing provisions of this Paragraph 13.

14.     **FIRE.**  It is understood and agreed that if the Sublet Premises are damaged or destroyed in whole or in part by fire or other casualty during the term, Sublessor will repair and restore the same to good tenantable condition with reasonable dispatch, and the Rent herein provided for shall abate entirely in case the entire Sublet Premises are untenantable and pro rata for the portion rendered untenantable, in case a part only is untenantable, until the Sublet Premises are restored to a tenantable condition. If the Sublessee shall fail to adjust Sublessee's own insurance or to remove damaged goods, wares, equipment or property within a reasonable time, and as a result thereof the repairing and restoration is delayed, there shall be no abatement of rental during the period of such delay.  If Sublessee shall use any part of the Sublet Premises for storage during the period of repair a reasonable charge shall be made therefor against Sublessee.  In case the Sublet Premises, or the Demised Premises shall be destroyed to the extent of more than one-half of the value thereof, Sublessor shall have the option to terminate this Sublease by written notice to Sublessee.  In no event shall Sublessor be required to repair or replace Sublessee's merchandise, trade fixtures, leasehold improvements, business machines, equipment, freight or materials stored at the Sublet Premises.

15.    **INDEMNITY.**  Each of Sublessor and Sublessee (the "Indemnitor") shall hold the other and the Prime Landlord (the "Indemnitees") harmless from any damage to any property or injury to or death of any person arising in, on or upon the Demised Premises arising from the negligence or wrongful acts of the Indemnitor, its agents, contractors and/or employees (including in the case of, Sublessee, the negligence or wrongful acts of Nidec).  The foregoing indemnity obligations shall include reasonable attorneys' fees, investigation costs and other reasonable costs and expenses incurred by the Indemnitees from the first notice that any claim or demand is to be made or may be made.  The provisions of this Paragraph 15 shall survive the termination of this Sublease with respect to any damage, injury or death occurring prior to such termination.

16.    **DEFAULT AND REENTRY.**

(a)    If Sublessee shall be in default in performing any of the terms of this Sublease, Sublessor shall give Sublessee written notice of such default, and if Sublessee shall fail to cure such default within thirty (30) days after the receipt of such notice, or if the default is of such a character as to reasonably require more than thirty (30) days to cure, then if Sublessee shall fail, within said thirty (30) day period, to commence and thereafter proceed diligently to cure such default, then and in either of such events, Sublessor may (at its option and in addition to its other legal remedies) cure such default for the account of Sublessee, and any sum so expended by Sublessor plus interest shall be Rent for all purposes hereunder, and shall be paid by Sublessee with the next installment of Rent.

(b)    If any Rent referred to in Paragraph 16(a) hereof shall be due and unpaid or Sublessee shall be in default upon any of the other terms of this Sublease, and such default has not been cured after notice and within the time provided in Paragraph 16(a) hereof, then Sublessor, in addition to its other remedies, shall have the immediate right of re-entry.  Should Sublessor re-enter or take possession pursuant to legal proceedings or any notice provided for by law, Sublessor may terminate this Sublease and recover from Sublessee (or from the Escrow Funds) all amounts due Sublessor hereunder

17.    **QUIET ENJOYMENT.**  Sublessor covenants that Sublessee, on payment of all Rent due and performing all the covenants herein, shall and may peacefully and quietly have, hold and enjoy the Sublet Premises for the Term.

18.    **EXPENSES.**  The prevailing party in any lawsuit between Sublessor and Sublessee shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and costs.

19.    **REMEDIES NOT EXCLUSIVE.**  It is agreed that each and every of the rights, remedies and benefits provided by this Sublease shall be cumulative, and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

20.    **WAIVER.**  One or more waivers of any covenant or condition by Sublessor or Sublessee shall not be construed as a waiver of a further breach of the same covenant or condition.

21.    **NOTICES.**  Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Sublessee at 4100 N. Atlantic Boulevard, Auburn Hills,

Michigan 48326 or to Sublessor, at the Demised Premises with a copy to the Manager, Real Estate Services, 5825 Delphi Drive, MC 480-410-174, Troy, Michigan 48098 or at such other place as may be designated by the parties from time to time.

22.    **HAZARDOUS SUBSTANCES.**    Sublessee shall not use, store, or dispose of any hazardous substances upon the Demised Premises, except use and storage of such substances if they are customarily used in Sublessee's business, and such use and storage complies with all environmental laws and regulations. Hazardous substances means any hazardous waste, substance or toxic materials regulated under any federal or state environmental laws or local regulations or ordinances applicable to the property.   Notwithstanding anything herein contained to the contrary, Sublessor acknowledges that Sublessee's operation of the Sublet Premises in accordance with its prior practices shall not violate the provisions of this Paragraph 22.

23.    **HOLDING OVER.**   It is hereby agreed that if Sublessee holds over after the termination of this Sublease or the date to exclude the respective portion from the Sublet Premises as described in Paragraph 1 (including any holdover occupancy by Nidec), with respect to any portion of the Sublet Premises, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary and Sublessee shall pay as Rent for such portion of the Sublet Premises at the rate of $.0417 per square foot per day plus $3,800 per day for each day until the date such portion of the Sublet Premises are delivered to Sublessor

24.    **SURRENDER.**   Upon surrender, Sublessee shall promptly deliver all keys for the Sublet Premises to Sublessor at the place then fixed for notice.  No surrender of the Sublet Premises by Sublessee, nor delivery of the keys therefor to Sublessor, nor acceptance by Sublessor of such surrender of keys, shall operate or be construed as relieving Sublessee of any of its obligations hereunder.  This Sublease and the tenancy hereby created shall cease and terminate at the end of the original term hereof, and Sublessee hereby waives notice to move and agrees that Sublessor shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Sublet Premises from a tenant holding over to the same extent as if statutory notice were given.

All property, equipment, fixtures, and inventory including without limitation, all personal property, goods, improvements, fixtures and merchandise or any property owned or controlled by Sublessee left on the Demised Premises when Sublessee vacates shall be deemed to have been abandoned by Sublessee, and by such abandonment, Sublessee and any other person or corporation claiming through or under Sublessee, automatically relinquishes any right or interest therein and authorizes Sublessor to sell, dispose of, or destroy same. Sublessor shall have the exclusive right to retain all proceeds from any sale.  Sublessee shall be liable to Sublessor for any reasonable costs of removal of Sublessee's property.

**IN WITNESS WHEREOF,** the parties hereto have executed this Sublease as of the date set forth above.

Witness

**SUBLESSOR**:

Delphi Automotive Systems LLC

_____

Print Name:_____

By:_____

Print Name:_____

Its:_____

Witness

**SUBLESSEE**:

Valeo Electrical Systems, Inc.

_____

Print Name:_____

By:_____

Print Name:_____

Its:_____

The Prime Landlord hereby consents to the foregoing Sublease and specifically to the provisions of Paragraphs 13(a) and (b) of such Sublease.

Witness

The Metcalf Family Living Trust,
dated June 11, 1993

Print Name:_____

By:_____

Print Name:_____

Its:_____

**EXHIBIT H**

**ESCROW AGREEMENT**

THIS ESCROW AGREEMENT (this "Escrow Agreement") made and entered into on April ___, 2007, among LAWYERS TITLE INSURANCE CORPORATION (the "Escrow Agent"), DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company ("Sublessor"), and VALEO ELECTRICAL SYSTEMS, INC., a Delaware corporation ("Sublessee"), is based upon the following:

A.    Sublessor and Sublessee entered into a Real Property Purchase Agreement, dated March 2, 2007 (the "Purchase Agreement"), with respect to the sale of real property that is located in the City of Auburn Hills, Oakland County, State of Michigan (the "State") (the "Property").

B.    Sublessor assigned its rights under the Purchase Agreement to Metcalf Family Trust ("Prime Landlord") pursuant to an Assignment and Assumption Agreement dated March 2, 2007. Sublessor and Prime Landlord executed a Lease Agreement for the Property dated March 2, 2007.

C.    Sublessor and Sublessee entered into a Sublease Agreement (the "Sublease") for Sublessee's post-closing occupancy of a portion of the Property (the "Premises").

D.    Pursuant to Paragraph 4 of the Sublease, Sublessor and Sublessee agreed to enter into an escrow agreement with Escrow Agent pursuant to which Sublessee will deposit with Escrow Agent an amount equal to Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00) representing the total rent payable by Sublessee during the term of the Sublease (as calculated based on a 360-day year) plus One Hundred Thousand Dollars ($100,000) (the "Sublease Escrow Funds").

E.    The Sublease Escrow Funds are to be disbursed for the payment of the Rent under the Sublease in accordance with this Escrow Agreement.

F.      Escrow Agent has agreed to receive, hold and return or release the Sublease Escrow Funds in the manner set forth in this Escrow Agreement.

NOW, THEREFORE, in consideration of the mutual promises, covenants, terms, and conditions contained in this Escrow Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Escrow Agreement agree as follows:

1.      <u>Defined Terms</u>.

(a)      Terms used in this Escrow Agreement with initial capital letters and not otherwise defined in this Escrow Agreement have the meaning ascribed to them in the Sublease.

(b)      Seller and Purchaser agree that the Sublease Escrow Funds are equal to Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00). Such amount has been computed as if Tenant occupied the entire Premises for the full term for each respective portion thereof as provided in the Sublease; however, Sublessor and Sublessee acknowledge that Sublessee may vacate portions of the Premises prior to the expiration of the full term of the Sublease with respect thereto, in which event the portion of the Sublease Escrowed Funds applicable to the unused term will be returned to Sublessee as herein provided.

2.      <u>Appointment of Escrow Agent</u>.  Sublessor and Sublessee appoint Escrow Agent as their escrow agent for the purposes set forth in this Escrow Agreement, and Escrow Agent accepts such appointment.

3.      <u>Delivery of Post Closing Escrowed Funds</u>.  On the date of this Agreement, Sublessee has delivered to Escrow Agent the Sublease Escrow Funds.

4.      <u>Acceptance of Appointment by Escrow Agent</u>.  Escrow Agent confirms receipt of the Sublease Escrow Funds.  Escrow Agent agrees to hold the Sublease Escrow Funds in a

federally-insured and interest-bearing account pursuant to the terms of this Escrow Agreement, with the interest earned thereon to be added to and become a part of the Sublease Escrow Funds. Escrow Agent agrees to hold and disburse the Sublease Escrow Funds and all accrued interest on the Sublease Escrow Funds in accordance with the terms and conditions of this Escrow Agreement.

5.    <u>Disposition of Sublease Escrow Funds</u>.  The Sublease Escrow Funds will be held and disbursed by Escrow Agent as follows:

(a)    The Escrow Agent will disburse the Escrow Funds to the Sublessor pursuant to the following schedule ("Disbursement Schedule"):

(i)    On the thirtieth (30th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(ii)    On the sixtieth (60th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(iii)    On the ninetieth (90th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(iv)    On the one hundred and twentieth (120th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(v)    On the one hundred and fiftieth (150th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, Seventy-one Thousand Two Hundred Fifty and 00/100 ($71,250.00).

All payments called for under the Sublease shall be made without setoff or deduction, at Sublessor's office or at such other address as Sublessor may designate subject to Sublessee's right to vacate portions of the Premises prior to the expiration of the term for that portion of the Premises as set forth in the Sublease.

(b)     If Sublessee vacates portions of the Premises prior to expiration of the term for that portion of the Premises as set forth in the Sublease, then at any time prior to the end of each respective period described above, Sublessee may provide Sublessor and the Escrow Agent a written notice ("Early Exit Notice") detailing (1) the reduction in the number of rentable square feet of the Premises, (2) the date of the number of rentable square feet of the Premises occupied on a daily basis during the preceding rental period, (3) the rent payable therefor (at the rate of $.0417 per square feet per day) ("Revised Rental Amount") and (4) the adjusted "Disbursement Schedule" for the remainder of the Term of the Sublease.

(c)     Within ten (10) days after receipt of such Early Exit Notice, the Escrow Agent shall pay the Revised Rental Amount due pursuant to such notice to Sublessor.  If Sublessee fails to so provide such notice prior to the end of each period described above, the Escrow Agent shall pay the amount due Sublessor pursuant to the above disbursement of Sublease Escrow Funds.

(d)     If Sublessee holds over after the termination of the term of the Sublease or the date to exclude the respective portion from the Sublet Premises as described in Paragraph 1 of the Sublease with respect to any portion of the Sublet Premises, thereafter the tenancy shall be from month-to-month in the absence of a written agreement to the contrary, and then at any time prior to the end of each respective period described above or within ten (10) days after the end of a month of holdover tenancy, Sublessor may provide Sublessee and the Escrow Agent a written notice ("Holdover Notice") detailing (1) the number of rentable square feet of the Premises in which Sublessee held over on a daily basis during either the preceding rental period or preceding month, and (2) the rent payable therefor (a the rate of $0.0417 per square foot per day plus $3,800 per day) ("Holdover Amount").

(e)     Within ten (10) days after receipt of such Holdover Notice, the Escrow Agent shall pay the Holdover Amount (plus any amount owed pursuant to the Disbursement Schedule in Paragraph 5(a)).

(f)     Upon Sublessee's vacation of the entire Premises, Sublessee shall deliver a written notice to the Escrow Agent and Sublessor notifying them of Sublessee's vacation of the Premises.  Escrow Agent shall pay the rent due Sublessor for such period and the balance of the Sublease Escrow Funds, if any, shall be paid to Sublessee.

(g)     Notwithstanding the provisions of Paragraph 5(a), (b) and (c) hereof:

(i)     If the Escrow Agent has not received an Early Exit Notice from Sublessee or Holdover Notice from Sublessor with respect to any period, the Escrow Agent shall pay to Sublessor the amount for such period payable with respect to the period described in the Disbursement Schedule above.

(ii)     Notwithstanding such Early Exit Notice from Sublessee and payment of such Revised Rental Amount by the Escrow Agent or Holdover Notice for Sublessor and payment of such Holdover Amount by Escrow Agent, Sublessor shall have the right to contest Sublessee's Early Exit Notice and Sublessee shall have the right to contest Sublessor's Holdover Notice for any respective period (or month during a holdover period) by written notice to the other party and the Escrow Agent within ten (10) days after receipt of Sublessee's Early Exit Notice or Sublessor's Holdover Notice with respect to such period.  If Sublessor or Sublessee fail to so provide such notice within such ten (10) day period, the other party's notice shall be conclusive.  If Sublessor or Sublessee provides such notice in a timely manner, Sublessor and Sublessee shall use good faith efforts to resolve such matter and the Escrow Agent shall continue to hold the disputed amount as provided in Paragraph 6 hereof.  Any undisputed amount shall be released to Sublessor and Sublessee as provided in Paragraphs 5(a)-(f) hereof.

6.     <u>Limitation on Escrow Agent's Liability</u>.  Except for Escrow Agent's willful default or misconduct or negligence, Escrow Agent will have no liability under this Escrow Agreement as long as it performs its obligations under this Escrow Agreement in good faith.  In the event of a dispute as to the disposition of the Sublease Escrow Funds, Escrow Agent is authorized and directed to do either of the following (the determination of which will be made by Escrow Agent in

its sole discretion):  (i) file an interpleader action as provided by law, in which event Escrow Agent will be released from any further liability under this Escrow Agreement, or (ii) hold the Sublease Escrow Funds until Escrow Agent receives an order of a court of competent jurisdiction or written instructions from both Sublessor and Sublessee directing the disposition of the Sublease Escrow Funds.  Sublessor and Sublessee, jointly and severally, agree to reimburse Escrow Agent for any and all expenses, including reasonable attorneys' fees, which Escrow Agent may incur as a result of any legal proceedings affecting this Escrow Agreement or the performance of Escrow Agent's duties, provided that as between Sublessor and Sublessee, the non-prevailing party in any dispute between Sublessor and Sublessee that results in expenses being incurred by Escrow Agent under this Escrow Agreement will be responsible for such expenses.  Upon the performance of the services described above, Escrow Agent will be released and acquitted from any further liabilities concerning this Escrow Agreement, it being expressly understood that such liability in any event is limited by the terms and conditions set forth in this Escrow Agreement.

7.    <u>Notices</u>.  All notices or other communications provided for under this Escrow Agreement must be in writing and signed on behalf of the party that sends the notice or other communication.  Notices and other communications must be personally delivered, sent by certified or registered mail, return receipt requested, or sent by a reputable national overnight delivery service, and will be effective upon the earlier of receipt or refusal or failure to accept receipt if sent to the following addresses:

|  |  |
|---|---|
| If to Escrow Agent: | Land America/Lawyers Title Corporation<br>1050 Wilshire Drive<br>Troy, Michigan  48084<br>Attention:      Steve Nadolski |
| If to Sublessor: | Delphi Automotive Systems LLC<br>5825 Delphi Drive<br>MC:  480-410-174<br>Troy, Michigan  48098<br>Attention:      Jeffrey Beaudoen, Manager,<br>                        Real Estate Services |

With a Copy to:                    Delphi Automotive Systems
                                   5725 Delphi Drive
                                   MC: 483-400-603
                                   Troy, Michigan  48098
                                   Attention:      Deputy General Counsel
                                                   Transactional & Restructuring


If to Sublessee:                   Valeo Electrical Systems, Inc.
                                   4100 North Atlantic Boulevard
                                   Auburn Hills, Michigan  48326
                                   Attention:      Francoise Colpron
                                   email: francoise.colpron@valeo.com

With a Copy to:                    Honigman Miller Schwartz and Cohn LLP
                                   2290 First National Building
                                   Detroit, Michigan  48226
                                   Attention:      E. Todd Sable, Esq.
                                   (313) 465-7549 (Fax)
                                   (313) 465-7548 (Voice)
                                   email: tsable@honigman.com

 Each party may change its address from time to time by delivering notice to each of the other parties in any manner described above.


8.      <u>Applicable Law</u>.  This Agreement will be interpreted and enforced according to the laws of the State of Michigan.


9.      <u>Counterparts</u>.  This Escrow Agreement may be executed in counterparts, each of which will constitute an original although not fully executed, but all of which when taken together, will constitute but one agreement.  Delivery by facsimile of this Escrow Agreement or an executed counterpart of this Escrow Agreement will be deemed a good and valid execution and delivery of this Escrow Agreement.


10.     <u>Entire Agreement</u>.  This Escrow Agreement and the Sublease represent the entire understanding between the parties with respect to the subject matter of this Escrow Agreement, and all prior agreements and understandings between the parties with respect to the subject matter of this Escrow Agreement are merged in this Escrow Agreement.  Any amendment, modification, or

waiver of any obligation under this Escrow Agreement must be in writing and signed by the parties that are to be bound by the applicable amendment, modification or waiver.

11.    <u>Successors and Assigns</u>.  This Escrow Agreement will be binding upon and inure to the benefit of the parties to this Escrow Agreement and their respective heirs, representatives, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the day and year first above written.

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By:_____

Its:      Authorized Signatory


VALEO ELECTRICAL SYSTEMS, INC.,
a Delaware corporation

By:_____

Its:_____


LAWYERS TITLE INSURANCE
CORPORATION

By:_____

Its:_____

**EXHIBIT I**

**CERTIFICATE OF TRANSFEROR**

**(FIRPTA Affidavit)**

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person.    To inform _____, the transferee of certain real property located 3000 University Drive, Auburn Hills, Michigan that withholding of tax is not required upon the disposition of such U.S. real property interest by the undersigned ("**Transferor**"), the undersigned certifies the following on behalf of Transferor:

I.        Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

II.       Transferor's U.S. tax identification number is _____; and

III.      Transferor's office address is _____.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by the transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalty of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

Dated: _____, 2007.


**Transferor**:


_____

By:_____
Print Name:_____
Its:_____

## EXHIBIT J

## WATER DAMAGE CONSULTANTS' RECOMMENDATIONS

| 1. | 09-28-2001 | Air Analysis & Consulting Report No. 012009-D |
|---|---|---|
| 2. | 10-02-2001 | Air Analysis & Consulting Report No. B-05969 |
| 3. | 10-02-2001 | Air Analysis & Consulting Report No. CR-010110-E |
| 4. | 10-19-2001 | Air Analysis & Consulting Report No. 011510-E |
| 5. | 10-19-2001 | MEA Project No. 2451 |
| 6. | 12-04-2001 | MEA Project No. 2451 (b) |
| 7. | 02-26-2002 | MEA Air Sample Data (no report) |
| 8. | 07-19-2002 | SME Project No. PG41597 |
| 9. | 10-04-2002 | BDN Air Sample Data and Analysis |
| 10. | 01-09-2003 | NTH Project No.: 16-021141-00 |
| 11. | 07-31-2003 | NTH Project No.: 16-021141-01 |
| 12. | 12-10-2003 | NTH Project No.: 16-021141-03 |
| 13. | 04-12-2004 | NTH Project No.: 16-040238-00 |
| 14. | 11-05-2004 | NTH Project No.: 16-041067-00 |

# Exhibit B

**EXECUTION COPY 03/02/2007**

# LEASE AGREEMENT

Between

The Metcalf Family Living Trust dated June 11, 1993

as Lessor

and

Delphi Automotive Systems LLC

as Lessee

TABLE OF CONTENTS

## ARTICLE I

SECTION 1.01.        LEASE OF PREMISES; TITLE AND CONDITION ..............................1

Section 1.02.        Use ...........................................................................................................1

Section 1.03.        Term ........................................................................................................1

Section 1.04.        Options To Extend the Term....................................................................2

Section 1.05.        Rent ........................................................................................................2

Section 1.06.        Right of First Refusal...............................................................................4

## ARTICLE II

SECTION 2.01.        MAINTENANCE AND REPAIR..............................................................4

Section 2.02.        Alterations, Replacements and Additions.................................................5

## ARTICLE III

SECTION 3.01.        SEVERABLE PROPERTY .......................................................................5

Section 3.02.        Removal ...................................................................................................6

## ARTICLE IV

SECTION 4.01.        LESSEE'S ASSIGNMENT AND SUBLETTING ...................................6

Section 4.02.        Transfer or Pledge by Lessor ...................................................................7

Section 4.03.        Sublessee SNDA's....................................................................................7

## ARTICLE V

SECTION 5.01.        NET LEASE...............................................................................................8

Section 5.02.        Taxes and Assessments; Compliance With Law ......................................9

Section 5.03.        Liens.......................................................................................................10

Section 5.04.        Indemnification ......................................................................................10

Section 5.05.        Permitted Contests .................................................................................11

Section 5.06.        Environmental Compliance ...................................................................11

## ARTICLE VI

SECTION 6.01.        PROCEDURE UPON PURCHASE ........................................................ 13

Section 6.02.        Condemnation and Casualty ................................................. 14

Section 6.03.        Insurance. ............................................................................ 17

## ARTICLE VII

SECTION 7.01.        CONDITIONAL LIMITATIONS; DEFAULT PROVISIONS .............. 19

Section 7.02.        Bankruptcy or Insolvency ...................................................... 22

Section 7.03.        Additional Rights of Lessor ................................................... 22

## ARTICLE VIII

SECTION 8.01.        NOTICES AND OTHER INSTRUMENTS ........................................... 23

Section 8.02.        Estoppel Certificates; Financial Information ........................... 24

## ARTICLE IX

SECTION 9.01.        NO MERGER ........................................................................ 26

Section 9.02.        Surrender.............................................................................. 26

Section 9.03.        Assumption .......................................................................... 26

Section 9.04.        Separability; Binding Effect; Governing Law ........................ 26

Section 9.05.        Table of Contents and Headings; Internal References............ 26

Section 9.06.        Counterparts ........................................................................ 27

Section 9.07.        Lessor's Liability ................................................................. 27

Section 9.08.        Amendments and Modifications ............................................ 27

Section 9.09.        Additional Rent.................................................................... 27

Section 9.10.        Consent of Lessor ................................................................ 27

Section 9.11.        Options................................................................................ 28

Section 9.12.        Schedules ............................................................................ 28

Section 9.13.        Currency.............................................................................. 28

Section 9.14.        Waiver of Jury Trial............................................................. 28

## SCHEDULES

Schedule A       The Land and Permitted Exceptions .................................................................. \

Schedule B       Term and Basic Rent........................................................................................ \

Schedule C       Commencement and Memorandum of Lease Agreement ................................ \

Schedule D       Lessee's Work.................................................................................................. \

**THIS LEASE AGREEMENT**, dated as of [_____] (this "Lease"), is made between The Metcalf Family Living Trust dated June 11, 1993 ("Lessor"), and Delphi Automotive Systems LLC, a Delaware limited liability company (herein, together with any entity succeeding thereto by consolidation, merger or acquisition of its assets substantially as an entirety, called the "Lessee").

## BACKGROUND

On _____, 2007, Lessee and Valeo Electrical Systems, Inc. (the "Seller") executed a Purchase and Sale Agreement (the "PSA") regarding the purchase by Lessee of the Premises (as defined below).  Lessee and Seller executed an Assignment Agreement whereby Lessee assigned its interest as Buyer, in and to the PSA and Assignee has agreed to accept such assignment and assume the obligations of Buyer under the PSA.

## ARTICLE I

**Section 1.01. Lease of Premises; Title and Condition**.  In consideration of the rents and covenants herein stipulated to be paid and performed by Lessee and upon the terms and conditions herein specified, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the premises (the "Premises") consisting of:

(a)     that parcel of land located in Auburn Hills, Michigan and more particularly described in Schedule A attached hereto and made a part hereof (the "Land");

(b)     all of the buildings, structures, fixtures, facilities, installations and other improvements of every kind and description now or hereafter in, on, over and under the Land and all plumbing, gas, electrical, ventilating, lighting and other utility systems, ducts, hot water heaters, oil burners, domestic water systems, elevators, escalators, canopies, air conditioning systems and all other building systems and fixtures attached to or comprising a part of the buildings but excluding all personal property now or hereafter belonging to Lessee and Severable Property (as defined in Section 3.01 hereof) (collectively, the "Improvements"); and

(c)     all of Lessor's right, title and interest, if any, in and to all easements, rights-of-way, appurtenances and other rights and benefits associated with the Land and to all public or private streets, roads, avenues, alleys or passways, open or proposed, on or abutting the Land (the "Agreements") (all of the foregoing being included within the term "Land").

The Premises are leased to Lessee subject to Permitted Exceptions listed in <u>Schedule A</u>.

**Section 1.02. Use**.  Lessee may use the Premises for any lawful purpose, provided such use shall not diminish the value of the Premises or constitute a nuisance.  Lessor acknowledges that Lessee's current use of the Premises does not diminish the value of the Premises or constitute a nuisance.

MMB:4000-016:736803.2

**Section 1.03.  Term**.  This Lease shall be for an initial term of ten (10) years beginning on the later of (a) the date hereof (b) the date on which possession of the Premises is delivered to Lessee pursuant to this Lease, or (c) the "Closing Date" of the sale of the Premises from the Seller to Lessor as defined in the PSA (the "Commencement Date") and ending at midnight on the tenth anniversary of the Commencement Date (the "Primary Term").  The time period during which this Lease shall be in effect, including the Primary Term and any Extended Term (as defined in Section 1.04) for which the right to extend is exercised, as any of the same may be terminated prior to their scheduled expiration pursuant to the provisions hereof, is sometimes referred to herein as the "Lease Term."

**Section 1.04.  Options To Extend the Term**.  Unless an Event of Default (as defined herein) has occurred and is continuing at the time any option is exercised, Lessee shall have the right and option to extend the Lease Term for two (2) additional periods of five (5) years each, each commencing at midnight on the day on which the then existing term of this Lease expires (an "Extended Term"), unless this Lease shall have expired or been terminated pursuant to any provision hereof.  The Primary Term and any Extended Term shall commence and expire on the dates set forth in <u>Schedule B</u>.  Prior to exercising its option to extend the Lease Term for each of the Extended Terms, Lessee shall first give Lessor written notice (the "Rental Determination Notice") at any time not more than fifteen (15) or less than nine (9) months prior to the expiration of the then existing Term or Extended Term of Lessee's intent to determine the Adjusted Fair Market Rental (as defined in Section 1.05).  Thereafter, the parties shall begin the determination of the Adjusted Fair Market Rental for the Premises for such Extended Term pursuant to subsection 1.05(d).  After the Adjusted Fair Market Rental for the immediately succeeding Extended Term is determined pursuant to the terms of subsection 1.05(d), Lessee may exercise its option to extend the Lease Term by delivering to Lessor a written instrument of exercise of option no later than six (6) months prior to the expiration of the then existing Lease Term; provided that, if such Adjusted Fair Market Rental value has not been so determined at least 30 days prior to the date by which Lessee must deliver such extension notice, Lessee shall have an additional 45 days after determination thereof within which to make such delivery.  Upon the delivery of the written instrument of exercise referred to in the immediately preceding sentence, as applicable, the Lease Term shall be automatically extended for the next succeeding Extended Term on the terms and conditions provided herein.  Upon the request of Lessor or Lessee, the parties hereto will, at the expense of Lessee, execute and exchange an instrument in recordable form setting forth the extension of the Lease Term in accordance with this Section 1.04.

**Section 1.05.  Rent**.

(a)  During the Primary Term, Lessee shall pay the amounts set forth in <u>Schedule B</u> and during any Extended Term the amount determined in accordance with subsection 1.05(b) and also set forth on <u>Schedule B</u>, as basic rent for the Premises ("Basic Rent").  Notwithstanding anything to the contrary herein, Lessee shall have no obligation to pay Basic Rent for the first full month following the Commencement Date. Lessee shall pay Basic Rent to Lessor, at Lessor's address as set forth herein, at such other address or to such other person as Lessor from time to time may designate in writing or, if Lessor and Lessee mutually elect, Lessee shall pay Basic Rent via wire transfer to an account specified by Lessor.  Lessor shall give Lessee not less than

2

15 days' prior written notice of any change in the address to which such payments are to be made. If the party entitled to receive Basic Rent or such party's address shall change, Lessee may, until receipt of notice of such change from the party entitled to receive Basic Rent immediately preceding such change, continue to pay Basic Rent and additional charges to the party to which, and in the manner in which, the preceding installment of Basic Rent or additional charges, as the case may be, was paid. Such annual rentals shall be payable in equal monthly installments in advance on the first day of each month. Any rental payment made with respect to a period which is less than one month shall be prorated by multiplying the then applicable monthly rental by a fraction the numerator of which is the number of days in such month with respect to which rent is being paid and the denominator of which is the total number of days in such month. Lessee shall perform all its obligations under this Lease at its sole cost and expense, and shall pay all Basic Rent, additional charges and any other sum due hereunder when due and payable, without notice or demand. Under the terms of this Lease, Lessee is not required to pay any separate management or administration fee to Lessor.

(b)    . During the Extended Terms hereof, Lessee shall pay to Lessor as Basic Rent for the Premises, without any prior demand therefor, an amount per annum equal to the Adjusted Fair Market Rental (as hereinafter defined). Such amounts shall be payable in equal monthly installments in advance on the first day of each month during the applicable Extended Term.

(c)    Intentionally Omitted.

(d)    The term "Adjusted Fair Market Rental" as used herein shall mean an amount equivalent to ninety-five percent (95%) of the then current fair market rate of rentals received for a triple net lease structure in the general market area in which the Premises are located for similar buildings of comparable characteristics, including, but not limited to, age, condition and classification. Following delivery of the Rental Determination Notice, the Adjusted Fair Market Rental shall be determined mutually by Lessor and Lessee within 30 days after Lessor's receipt of the Rental Determination Notice or, if no mutual determination is made, by the following procedure: not more than 40 days after Lessor's receipt of the Rental Determination Notice, the parties shall attempt to agree upon an appraiser. If the parties agree upon an appraiser, the appraiser so selected shall appraise the Adjusted Fair Market Rental value of the Premises within 30 days after selection. If the parties fail to so agree upon the selection of one such appraiser within 40 days after Lessor's receipt of Lessee's Rental Determination Notice, Lessee and Lessor shall each designate, within 10 days from the end of such 40-day period, one appraiser to determine such Adjusted Fair Market Rental value. In the event either party fails to so select its own appraiser, the other party may obtain court appointment of an appraiser. The two appraisers so selected shall attempt to agree upon such Adjusted Fair Market Rental value of the Premises as at the date of said appraisal. In the event the two appraisers fail to agree upon the Adjusted Fair Market Rental value of the Premises within 90 days after Lessor's receipt of Lessee's Rental Determination Notice, the two appraisers shall meet and select a third appraiser within 20 days after the expiration of such 90-day period. In the event the two appraisers fail to so select a third appraiser, either party may obtain court appointment of such third appraiser. Within

3

30 days after the third appraiser is selected, the three appraisers so selected shall meet and attempt to agree upon such Adjusted Fair Market Rental value of the Premises as at the date of said appraisal.  In the event the three appraisers fail to agree upon the Adjusted Fair Market Rental value of the Premises within 140 days after Lessor's receipt of Lessee's Rental Determination Notice, the third appraiser shall independently appraise the Adjusted Fair Market Rental value of the Premises within 10 days after such failure to agree, and the arithmetic mean of the three appraisals will be the Adjusted Fair Market Rental.  All appraisers shall be members in good standing of the American Institute of Real Estate Appraisers or any organization succeeding thereto and have had not less than 10 years' experience with commercial real estate of the type of the Premises in the general market area where the Premises are located.  Lessee and Lessor shall split the cost of all appraisals equally.

**Section 1.06.  Right of First Refusal.**  Lessor grants to Lessee the right of first refusal to purchase the Premises on the same terms and conditions as are stated in any offer for the sale of the Premises made by Lessor or submitted by a prospective purchaser and acceptable to Lessor (an "Offer").  Within five (5) business days after making or receiving any Offer, Lessor shall deliver to Lessee a true, correct and complete copy of the Offer.  Lessee shall have thirty (30) days after Lessee receives the Offer to elect to purchase the Premises on the terms and conditions that are stated in the Offer.  If Lessee does not exercise this right, Lessor may sell the Premises in accordance with the terms and provisions of the Offer during the six (6) month period after Lessee receives the Offer.  If a sale in accordance with an Offer does not close within six (6) months after submission of the Offer, Lessee's right of first refusal herein shall be reinstated. The right of first refusal contained in this Section 1.06 shall not apply to a foreclosure or similar sale of the Premises by any holder of a mortgage on the Premises or to the granting of a deed in lieu of foreclosure by Lessor to such holder.

**Section 1.07.   Commencement and Memorandum of Lease Agreement:**

The parties agree to execute a Commencement and Memorandum of Lease Agreement, in substantially the form attached hereto as Schedule C, setting forth the commencement, expiration, and anniversary dates of the Initial Term of the Lease and the commencement, expiration, and renewal notification dates of any renewal option(s).  Lessee may record the Commencement and Memorandum of Lease Agreement at Lessee's expense.  Neither party shall record the Lease or any portion thereof.

**ARTICLE II**

**Section 2.01.  Maintenance and Repair**.

(a)     Lessee acknowledges that it has received the Premises in good order and repair.  Subject to Lessor's reimbursement obligations set forth in Section 2.01(b) below, Lessee, at its own expense, will maintain all parts of the Premises in good repair and condition and will take all action and will make all structural and nonstructural, changes and repairs which may be required to keep all parts of the Premises in good repair and condition (including, but not limited to, all painting, glass, utilities, conduits, fixtures and

4

equipment, foundation, roof, exterior walls, heating and air conditioning systems, wiring, plumbing, sprinkler systems and other utilities, and all paving, sidewalks, roads, parking areas, curbs and gutters and fences), except to the extent any of the foregoing are caused by the Lessor's gross negligence or intentional conduct.  Other than due to Lessor's gross negligence or intentional conduct, Lessor shall not be required to maintain, repair or rebuild all or any part of the Premises.  Subject to the foregoing, Lessee waives the right to require Lessor to maintain, repair or rebuild all or any part of the Premises or make repairs at the expense of Lessor pursuant to any Legal Requirement, Agreement, contract, covenant, condition or restrictions at any time.

(b)    During any Extended Term, it is understood that capital repairs and replacements to the Premises made by Lessee during such Extended Term will be amortized in accordance with generally accepted accounting principles at the time such capital costs are incurred consistently applied over the useful life of the item so capitalized.  The amount of capital costs to be paid by Lessee shall be limited to the portion of the amortized capital costs incurred during the remaining Lease Term in respect to useful life of the item so capitalized.  If the useful life of item so capitalized exceeds the remaining Lease Term, Lessor shall pay the excess to Lessee by paying the entire amount of such excess to Lessee within thirty (30) days after presentation of an invoice.  If Lessee exercises the second Extended Term and for any extended term of the Lease beyond the second Extended Term (whether pursuant to the extension rights in this Lease or pursuant to any additional extension agreed upon by Lessor and Lessee) and Lessor previously paid for a portion of the costs provided for in this Section, then Lessee shall pay to Lessor prior to the commencement of the new extended Term an amount equal to the amortized portion of the capital repairs and replacements paid by Lessor in the prior Extended Term, which are applicable to the following extended Term.

**Section 2.02.  Alterations, Replacements and Additions**.  Lessee may, at its expense, make additions to and alterations of the Improvements, and construct additional Improvements, including performing the work set forth in Schedule D, provided that (i) the fair market value, the square footage (other than, in each case, a *de minimis* amount) or the useful life of the Premises shall not be lessened thereby, (ii) such work shall be expeditiously completed in a good and workmanlike manner and in compliance with all applicable Legal Requirements and the requirements of all insurance policies required to be maintained by Lessee hereunder, and (iii) Lessee shall have obtained Lessor's consent, provided that Lessor's consent shall not be required with respect to the work set forth on Exhibit D, although Lessor has the right to review the plans.  In the event Lessee desires Lessor's determination that a proposed alteration, if completed in accordance with detailed plans and specifications submitted to Lessor, which are prepared by a licensed architect, shall not lessen the fair market value of the  Premises or is not a structural alteration, Lessor shall advise Lessee of its determination within fifteen (15) days after Lessor receives such detailed plans and specifications for the alteration.  Cosmetic, interior or nonstructural alterations that cost $500,000 or less in any one project shall not require Lessor's prior written consent.  All additions and alterations of the Premises, without consideration by Lessor, shall be and remain part of the Premises and the property of Lessor and shall be subject to this Lease.

5

## ARTICLE III

**Section 3.01. Severable Property**.  Lessee may, at its expense, install, assemble or place on the Premises and remove and substitute any items of machinery, equipment, furniture, furnishings or other personal property used or useful in Lessee's business and trade fixtures (collectively, the "Severable Property"), and title to same shall remain in Lessee.  Lessor, on behalf of itself and any parties claiming through it, hereby (i) waives any right of distraint, landlord's lien, or any other interest, lien or claim Lessor may now have or hereafter obtain in such Severable Property whether by operation of law, contract or otherwise and (ii) agrees that Lessee may lease or enter into financing arrangements with respect to the Severable Property, and any lessor or lender of Severable Property may remove such Severable Property from the Premises within the time period provided for in Section 3.02 below, and may enter upon the Premises for such purpose, without hindrance or disturbance on the part of the Lessor.  Lessor agrees, at the request of Lessee, to execute a waiver agreement, reasonably satisfactory to Lessee and Lessor, for the benefit of any present or future holder of a security interest in or lessor of any Severable Property.

**Section 3.02.  Removal**.  Lessee may remove the Severable Property at any time during the Lease Term.  Any of Lessee's Severable Property not removed by Lessee prior to the expiration of the Lease or 30 days after an earlier termination shall be considered abandoned by Lessee and may be appropriated, sold, destroyed or otherwise disposed of by Lessor without obligation to account therefor.  Lessee will repair at its expense all damage to the Premises necessarily caused by the removal of Lessee's Severable Property, whether effected by Lessee or by Lessor (unless this Lease has been terminated as a result of casualty or condemnation).  The foregoing notwithstanding, Lessee's Severable Property shall not be considered abandoned unless and until Lessor shall have given to Lessee written notice and Lessee shall have failed to remove Lessee's Severable Property within five (5) days.

## ARTICLE IV

**Section 4.01.  Lessee's Assignment and Subletting**.  Unless an Event of Default shall have occurred hereunder and be continuing, Lessee may, for its own account, assign this Lease or sublet or license the use of all or any part of the Premises for the Primary Term or any Extended Term (with respect to which such extension has previously been exercised) of this Lease.  Each such assignment or sublease shall expressly be made subject to the provisions hereof.  No such assignment or sublease shall modify or limit any right or power of Lessor hereunder or affect or reduce any obligation of Lessee hereunder, and all such obligations shall be those of Lessee and shall continue in full effect as obligations of a principal and not of a guarantor or surety, as though no subletting or assignment had been made, such liability of the Lessee named herein to continue notwithstanding any subsequent modifications or amendments of this Lease; provided, however, that (other than with respect to any modifications required by law or on account of bankruptcy or insolvency) if any modification or amendment is made without the consent of Lessee named herein (which consent shall not be unreasonably withheld or delayed), such modification or amendment shall be ineffective as against Lessee named herein to the extent, and only to the extent, that the same shall increase the obligations of Lessee, it being expressly agreed that (even if any such modification or amendment shall materially

6

MMB:4000-016:736803.2

increase the likelihood of a default by Lessee under this Lease) Lessee named herein shall remain liable to the full extent of this Lease as if such modification had not been made.  Neither this Lease nor the Lease Term hereby demised shall be mortgaged by Lessee, nor shall Lessee mortgage or pledge its interest in any sublease of the Premises or the rentals payable thereunder. Any sublease made other than as expressly permitted by this Section 4.01 and any assignment of Lessee's interest hereunder made otherwise than as expressly permitted by this Section 4.01 shall be void.  Lessee shall, within 20 days after the execution of any assignment or sublease, deliver a conformed copy thereof to Lessor.  Notwithstanding anything herein to the contrary, Lessee shall be entitled to assign this lease in accordance with a confirmation plan approved by the Bankruptcy Court (as defined in Section 7.02 (a)).

      **Section 4.02.  Transfer or Pledge by Lessor**.  Lessor shall be free to transfer its fee interest in the Premises or any part thereof or interest therein; subject, however, to the terms of this Lease.  Any such transfer shall relieve the transferor of all liability and obligation hereunder (to the extent of the interest transferred) accruing after the date of the transfer and any assignee shall be bound by the terms and provisions of this Lease.  Lessor shall be free to pledge or mortgage its interest in the Premises and this Lease on the condition that either (i) this Lease shall be superior to such pledge or mortgage or (ii) if Lessor elects to have this Lease be subordinate to the mortgage of any lender of Lessor, Lessee receives a subordination, nondisturbance agreement and attornment reasonably acceptable to Lessee from the holder of such pledge or mortgage.

Such subordination, non-disturbance and attornment agreement shall be executed by Lessor, the mortgagee, and any other persons claiming benefits under such Agreement, and shall provide (i) that the Lease is subordinate to the lien of any mortgage or mortgages upon the Premises, (ii) that the Lessee's right of possession will not be disturbed by the mortgagee in connection with any mortgage foreclosure proceedings so long as Lessee performs its obligations set forth in the Lease, (iii) that the Lessee shall attorn to the foreclosing mortgagee or purchaser at the foreclosure sale, and (iv) such other provisions which are acceptable to Lessee.

Lessor agrees that, in the event a mortgage is placed on the Land or the Premises and a collateral assignment of rents or leases is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

# ARTICLE V

**Section 5.01.  Net Lease**.

      (a)     It is expressly understood and agreed by and between the parties that this Lease is a triple net lease, and the Basic Rent and all other sums payable hereunder to or on behalf of Lessor shall be paid without notice or demand and without setoff, counterclaim, abatement, suspension, deduction or defense.

MMB:4000-016:736803.2

(b)     Except as otherwise expressly provided in the Lease, this Lease shall not terminate, nor shall Lessee have any right to terminate this Lease or be entitled to the abatement of any rent or any reduction thereof, nor shall the obligations hereunder of Lessee be otherwise affected, by reason of any damage to or destruction of all or any part of the Premises from whatever cause, the taking of the Premises or any portion thereof by condemnation or otherwise, the prohibition, limitation or restriction of Lessee's use of the Premises, or interference with such use by any private person or corporation, or by reason of any eviction by paramount title or otherwise, or Lessee's acquisition of ownership of the Premises otherwise than pursuant to an express provision of this Lease, or for any other cause whether similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding, it being the intention of the parties hereto that the rent and all other charges payable hereunder to or on behalf of Lessor shall continue to be payable in all events and the obligations of Lessee hereunder shall continue unaffected, unless the requirement to pay or perform the same shall be terminated pursuant to an express provision of this Lease.  Nothing contained in this Section 5.01 shall be deemed a waiver by Lessee of any rights that it may have to bring a separate action with respect to any default by Lessor hereunder or under any other agreement.

(c)     Lessee covenants and agrees that it will remain obligated under this Lease in accordance with its terms, and that Lessee will not take any action to terminate, rescind or avoid this Lease, notwithstanding the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding-up or other proceeding affecting Lessor or any assignee of Lessor in any such proceeding and notwithstanding any action with respect to this Lease which may be taken by any trustee or receiver of Lessor or of any assignee of Lessor in any such proceeding or by any court in any such proceeding.

(d)     Except as otherwise expressly provided in this Lease, Lessee waives all rights now or hereafter conferred by law (i) to quit, terminate or surrender this Lease or the Premises or any part thereof or (ii) to any abatement, suspension, deferment or reduction of the rent, or any other sums payable hereunder to or on behalf of Lessor, regardless of whether such rights shall arise from any present or future constitution, statute or rule of law.

(e)     Lessor covenants that during the Lease Term and provided that Lessee has performed and observed all of the covenants and conditions on its part to be performed and observed under this Lease, Lessee's quiet and peaceful enjoyment of possession of the Premises shall not be disturbed by Lessor or persons claiming by, through or under Lessor.

**Section 5.02.  Taxes and Assessments; Compliance With Law**.

(a)     Lessee shall pay, prior to delinquency: (i) all taxes, assessments, levies, fees, water and sewer rents and charges and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are, at any time prior to or during the Primary Term or any Extended Term hereof imposed or levied upon or assessed against or which arise with respect to (A) the Premises, (B) any Basic Rent,

8

additional rent or other sums payable hereunder, (C) this Lease or the leasehold estate hereby created or (D) the operation, possession or use of the Premises; (ii) all gross receipts or similar taxes (i.e., taxes based upon gross income which fail to take into account deductions with respect to depreciation, interest, taxes or ordinary and necessary business expenses, in each case relating to the Premises) imposed or levied upon, assessed against or measured by any Basic Rent, additional rent or other sums payable hereunder; (iii) all sales, value added, ad valorem, use and similar taxes at any time levied, assessed or payable on account of the acquisition, ownership, leasing, operation, possession or use of the Premises; and (iv) all charges of utilities, communications and similar services serving the Premises.  Lessee shall be entitled to any abatement, refund or rebate made for any taxes, assessments, levies, fees or other amounts that are the responsibility of Lessee under this subsection 5.02(a).  Lessee shall not be required to pay any tax resulting from the negligence or fraud of Lessor, any excess profits, franchise, estate, inheritance, transfer, income, capital gains or similar tax of Lessor; provided, however, that if, at any time during the Lease Term, the method of taxation shall be such that there shall be assessed, levied, charged or imposed on Lessor a capital levy or other tax directly on the rents received therefrom, or upon the value of the Premises or any present or future improvement or improvements on the Premises, then all such levies and taxes or the part thereof so measured or based shall be payable by Lessee, and Lessee shall pay and discharge the same as herein provided.  Lessee will furnish to Lessor, promptly after demand therefor, proof of payment of all items referred to above which are payable by Lessee.  If any such assessment may legally be paid in installments, Lessee may pay such assessment in installments; in such event, Lessee shall be liable only for installments which become due and payable with respect to any tax period occurring in whole or in part during the Lease Term hereof; provided, however, that all amounts referred to in this Section 5.02(a) for the fiscal or tax year in which the Lease Term shall expire shall be apportioned so that Lessee shall pay those portions thereof which correspond with the portion of such year as are within the Lease Term hereby demised.

(b)     Lessee shall comply with and cause the Premises to comply with and shall assume all obligations and liabilities with respect to (i) all laws, ordinances and regulations and other governmental rules, orders and determinations presently in effect or hereafter enacted, made or issued, whether or not presently contemplated (collectively, "Legal Requirements"), applicable to the Premises or the ownership, operation, use or possession thereof and (ii) all agreements, contracts, insurance policies (including, without limitation, to the extent necessary to prevent cancellation thereof and to insure full payment of any claims made under such policies), agreements, covenants, conditions and restrictions now or hereafter applicable to the Premises or the ownership, operation, use or possession thereof, including, but not limited to, all such Legal Requirements, contracts, agreements, covenants, conditions and restrictions which require structural, unforeseen or extraordinary changes; provided, however, that, with respect to any of the obligations of Lessee in clause (ii) above, Lessee shall not be required to so comply unless Lessee is either a party thereto or has given its written consent thereto, or unless the same is occasioned by Legal Requirements or Lessee's default (including any failure or omission by Lessee) under this Lease.  Further, any such structural unforeseen or extraordinary changes will be amortized in accordance with generally accepted

9

accounting principles and the amount of the cost of such structural, unforeseen or extraordinary changes that Lessee is responsible for is limited to the remaining current lease term.    At Lessor's option, Lessor will pay the cost of the entire structural, unforeseen or extraordinary changes and bill Lessee for the Lessee's portion in equal monthly installments, or Lessee shall pay the entire cost and Lessor shall reimburse Lessee for Lessor's portion within 30 days after presentation of an invoice from Lessee. Nothing in clause (ii) of the immediately preceding sentence or the following sentence shall modify the obligations of Lessee under Section 5.04 of this Lease.    If Lessee exercises the second Extended Term and for any extended term of the Lease beyond the second Extended Term (whether pursuant to the extension rights in this Lease or pursuant to any additional extension agreed upon by Lessor and Lessee) and Lessor previously paid for a portion of the costs for structural, unforeseen or extraordinary changes provided for in this Section, then Lessee shall pay to Lessor prior to the commencement of the new extended Term an amount equal to the amortized portion of the costs for structural, unforeseen or extraordinary changes provided for in this Section paid by Lessor in the prior Extended Term, which are applicable to the following extended Term.

(c)    After the occurrence and during the continuance of an Event of Default by Lessee under this Lease, and upon the request of Lessor, Lessee shall, in addition to and concurrently with the payment of Basic Rent as required in subsection 1.05(a) hereof, pay one-twelfth of the amount (as estimated by Lessor) of the annual taxes and assessments described in subsection 5.02(a) hereof and the annual premiums for insurance required in Section 6.03 hereof next becoming due and payable with respect to the Premises, and Lessee shall also pay to Lessor on demand therefor the amount by which the actual taxes and assessments and insurance premiums exceed the payment by Lessee required in this subsection.

**Section 5.03.  Liens**.  Lessee will remove and discharge any charge, lien, security interest or encumbrance upon the Premises or upon any Basic Rent, additional rent or other sums payable hereunder which arise from the acts of Lessee, including, without limitation, all liens which arise out of the possession, use, occupancy, construction, repair or rebuilding of the Premises or by reason of labor or materials furnished to Lessee or for the Premises, but not including (i) the liens and encumbrances set forth in Schedule A, (ii) this Lease and any assignment hereof or any sublease permitted hereunder and (iii) any mortgage, charge, lien, security interest or encumbrance created or caused by Lessor or its agents, employees or representatives without the consent of Lessee.  Lessee may provide a bond or other security reasonably acceptable to Lessor to remove or pay all costs associated with the removal of any such lien, provided the conditions of Section 5.05 shall be satisfied.    Nothing contained in this Lease shall be construed as constituting the consent or request of Lessor, express or implied, to or for the performance (on behalf of or for the benefit of Lessor) by any contractor, laborer, materialman or vendor, of any labor or services or for the furnishing of any materials for any construction, alteration, addition, repair or demolition of or to the Premises or any part thereof.  Notice is hereby given that Lessor will not be liable for any labor, services or materials furnished or to be furnished to Lessee, or to anyone holding an interest in the Premises or any part thereof through or under Lessee, and that no mechanic's or other liens for any such labor, services or materials shall attach to or affect the interest of Lessor in and to the Premises.

MMB:4000-016:736803.2

**Section 5.04. Indemnification**.  Except for the negligence, gross negligence or willful misconduct of the Lessor, Lessee shall defend all actions against Lessor with respect to, and shall pay, protect, indemnify and save harmless the Lessor from and against, any and all liabilities, losses, damages, costs, expenses (including, without limitation, reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature arising from (i) injury to or death of any person, or damage to or loss of property, on the Premises, (ii) violation by Lessee of this Lease, (iii) use, act or omission of Lessee or its agents, contractors, licensees, sublessees or invitees and (iv) any contest referred to in Section 5.05 of this Lease.  Lessor shall indemnify Lessee against all damages arising from Lessor's negligence, gross negligence and willful misconduct.

**Section 5.05. Permitted Contests**.  Lessee, at its expense, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, any Legal Requirement with which Lessee is required to comply pursuant to Section 5.02(b), or the amount or validity or application, in whole or in part, of any tax, assessment or charge which Lessee is obligated to pay or any lien, encumbrance or charge not permitted by Sections 2.01, 2.02, 5.02(a), 5.03 and 6.01, provided that (i) the commencement of such proceedings shall suspend the enforcement or collection thereof against or from Lessor and against or from the Premises, (ii) neither the Premises nor any rent therefrom nor any part thereof or interest therein would be in any danger of being sold, forfeited, attached or lost, (iii) Lessee shall have furnished such security, if any, as may be reasonably required in the proceedings and as may be required by Lessor, and (iv) if such contest be finally resolved against Lessee, Lessee shall promptly pay the amount required to be paid, together with all interest and penalties accrued thereon.  Lessor, at Lessee's expense, shall execute and deliver to Lessee such authorizations and other documents as reasonably may be required in any such contest.  Lessee shall indemnify and save Lessor harmless against any cost or expense of any kind that may be imposed upon Lessor in connection with any such contest and any loss resulting therefrom.  Lessee shall not be in default hereunder in respect to the compliance with any Legal Requirement with which Lessee is obligated to comply pursuant to Section 5.02(b) or in respect to the payment of any tax, assessment or charge which Lessee is obligated to pay or any lien, encumbrance or charge not permitted by Section 2.01, 2.02, 5.02(a), 5.03 and 6.02 which Lessee is in good faith contesting pursuant to the terms of this Section 5.05.

**Section 5.06. Environmental Compliance.**

(a)     For purposes of this Lease:

(i)     the term "*Environmental Laws*" shall mean and include the Federal Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, the Hazardous Materials Transportation Act, the Toxic Substances Control Act, the Federal Insecticide, Fungicide and Rodenticide Act and all applicable federal, state and local environmental laws, ordinances, rules, requirements, regulations and publications, as any of the foregoing may have been or may be from time to time amended, supplemented or supplanted and any and all other federal, state or local laws, ordinances, rules, requirements, regulations and publications, now or hereafter existing, relating to the preservation or regulation of the public health, welfare or

11

environment or the regulation or control of toxic or hazardous substances or materials; and

(ii)    the term "*Regulated Substance*" shall mean and include any, each and all substances or materials now or hereafter regulated pursuant to any Environmental Laws, including, but not limited to, any such substance or material now or hereafter defined as or deemed to be a "regulated substance," "pesticide," "hazardous substance" or "hazardous waste" or included in any similar or like classification or categorization thereunder.

(b)    Lessee shall:

(i)    not cause or permit any Regulated Substance to be placed, held, located, released, transported or disposed of on, under, at or from the Premises in violation of Environmental Laws;

(ii)    provide Lessor with written notice (and a copy as may be applicable) of any of the following within 10 days of receipt thereof: (A) any actual or threatened release by Lessee of any Regulated Substance in any way adversely affecting the Premises, which is in violation of Environmental Laws; (B) Lessee's receipt or submission, or Lessee's obtaining knowledge or notice of any kind, of any report, citation, notice or other communication from or to any federal, state or local governmental or quasi-governmental authority regarding any Regulated Substance in any way adversely affecting the Premises; or (C) Lessee's obtaining knowledge or notice of any kind of the incurrence of any cost or expense by any federal, state or local governmental or quasi-governmental authority or any private party in connection with the assessment, monitoring, containment, removal or remediation of any kind of any Regulated Substance in any way adversely affecting the Premises, or of the filing or recording of any lien on the Premises or any portion thereof in connection with any such action or Regulated Substance in any way adversely affecting the Premises; and

(iii)    in addition to the requirements of Section 5.04 hereof, except related to the gross negligence or willful misconduct of Lessor, defend all actions against Lessor and pay, protect, indemnify and save harmless Lessor from and against any and all liabilities, losses, damages, costs, expenses (including, without limitation, reasonable attorneys' fees and expenses), causes of action, suits, claims, demands or judgments of any nature relating to any matters involving Environmental Laws, Regulated Substances or other environmental issues, but only to the extent relating to Lessee's operation of the Premises during the Term.

(c)    The indemnities contained in this Section 5.06 shall survive the expiration or earlier termination of this Lease.

(d)    In connection with any potential sale or financing of the Premises by Lessor during the term of this Lease, Lessor may, at its sole cost and expense, arrange for phase I environmental audits (as such term is defined now or hereafter by the

12

environmental remediation industry), to be conducted at the Premises, provided that any such audits are conducted in a manner so as not to unreasonably interfere with the conduct of Lessee's business on the Premises.

## ARTICLE VI

**Section 6.01.** Condemnation and Casualty.

(a)   ***General Provisions***.  Except as provided in Section 6.01(b), Lessee hereby irrevocably assigns to Lessor any award, compensation or insurance payment to which Lessee may become entitled by reason of Lessee's interest in the Premises (i) if the use, occupancy or title of the Premises or any part thereof is taken, requisitioned or sold in, by or on account of any actual or threatened eminent domain proceeding or other action by any person having the power of eminent domain (collectively, a "Condemnation") or (ii) if the Premises or any part thereof is damaged or destroyed by fire, flood or other casualty ("Casualty").  All awards, compensations and insurance payments (or, in the event Lessee elects or is permitted to self insure pursuant to Section 6.02(c), any and all amounts to be paid by Lessee in lieu of such insurance payment) on account of any Condemnation or Casualty are herein collectively called "Compensation."  Lessor may appear in any such proceeding or action to negotiate, prosecute and adjust any claim for any Compensation, and Lessor shall collect any such Compensation.  Other than with respect to a Condemnation which results in the termination of this Lease pursuant to the terms hereof, Lessee shall pay all of Lessor's reasonable costs and expenses in connection with each such proceeding, action, negotiation, prosecution and adjustment.  Lessee shall be entitled to participate in any such proceeding, action, negotiation, prosecution, appeal or adjustment as contemplated herein.  Notwithstanding anything to the contrary contained in this Article VI, if permissible under applicable law, any separate Compensation made to Lessee, including any payments made pursuant to insurance policies, for Lessee's moving and relocation expenses, business interruption, anticipated loss of business profits, loss of goodwill or fixtures and equipment which the Lessee is responsible to insure and which are not part of the Premises (including, without limitation, the Severable Property) shall be paid directly to and shall be retained by Lessee (and shall not be deemed to be "Compensation").  All Compensation shall be applied pursuant to this Section 6.01, and all such Compensation (less the expense of collecting such Compensation) is herein called the "Net Proceeds."

(b)   ***Substantial Condemnation***.  If a Condemnation shall, in Lessee's good faith judgment, affect all or a substantial portion of the Premises and shall render the Premises unsuitable for restoration for continued use and occupancy in Lessee's business, then Lessee may, not later than 60 days after a determination has been made as to when possession of the Premises must be delivered with respect to such Condemnation, deliver to Lessor (i) notice of its intention ("Notice of Intention") to terminate this Lease on the next rental payment date which occurs not less than 90 days after the delivery of such notice (the "Condemnation Termination Date"), (ii) a certificate of an authorized officer of Lessee describing the event giving rise to such termination and stating that Lessee has determined that such Condemnation has rendered the Premises unsuitable for restoration for continued use and occupancy in Lessee's business, and (iii) documentation or a

13

certificate to the effect that termination of this Lease will not be in violation of any agreement in effect as of the Condemnation Termination Date with which Lessee is obligated to comply pursuant to this Lease. This Lease shall terminate on the Condemnation Termination Date, except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the Condemnation Termination Date, upon payment by Lessee of all Basic Rent, additional rent and other sums due and payable hereunder up to and including the Condemnation Termination Date, and the Net Proceeds shall belong to Lessor. In the event Lessee does not deliver the Notice of Intention to Lessor, Lessor shall permit so much of the Net Proceeds as may be necessary to be utilized by Lessee to repair or restore the Premises.

(c)    **_Substantial Casualty During Extended Term_**.  If a Casualty shall, in Lessee's good-faith judgment, affect all or a substantial portion of the Premises during an Extended Term, if any, and shall render the Premises unsuitable for restoration for continued use and occupancy in Lessee's business, then Lessee may, not later than 150 days after such Casualty, deliver to Lessor (i) notice of its intention to terminate this Lease on the next rental payment date which occurs not less than 60 days after the delivery of such notice (the "Casualty Termination Date"), (ii) a certificate of an authorized officer of Lessee describing the event giving rise to such termination and stating that Lessee has determined that such Casualty has rendered the Premises unsuitable for restoration for continued use and occupancy in Lessee's business, and (iii) documentation or a certificate to the effect that termination of this Lease will not be in violation of any agreement then in effect with which Lessee is obligated to comply pursuant to this Lease.  Upon payment by Lessee of all Basic Rent, additional rent and other sums then due and payable hereunder to and including the Casualty Termination Date, this Lease shall terminate on the Casualty Termination Date except with respect to obligations and liabilities of Lessee hereunder, actual or contingent, which have arisen on or prior to the Casualty Termination Date, and the Net Proceeds shall be paid to and shall belong to Lessor.

(d)    **_Less Than Substantial Condemnation or Any Casualty During the Primary Term_**.  If, after a Condemnation or Casualty, Lessee does not give or does not have the right to give notice of its intention to terminate this Lease as provided in subsection 6.01(b) or (c), then this Lease shall continue in full force and effect and Lessee shall, at its expense, rebuild, replace or repair the Premises in conformity with the requirements of Sections 2.01, 2.02 and 5.03 so as to restore the Premises (in the case of Condemnation, as nearly as practicable) to the condition and character thereof immediately prior to such Casualty or Condemnation.  To the extent the Net Proceeds with respect to any Casualty or Condemnation are less than $500,000, such amount shall be paid to Lessee to be used to rebuild, replace or repair the Premises in a lien-free and good and workmanlike manner.  To the extent the Net Proceeds from any Casualty or Condemnation are $500,000 or greater, prior to any such rebuilding, replacement or repair, Lessee shall determine the maximum cost thereof (the "Restoration Cost"), which amount shall be acceptable to Lessor.  The Restoration Cost shall be paid first out of Lessee's own funds to the extent that the Restoration Cost exceeds the Net Proceeds payable in connection with such occurrence, after which expenditure Lessee shall be entitled to receive the Net Proceeds, but only against (i) certificates of Lessee delivered to

14

Lessor from time to time as such work of rebuilding, replacement and repair progresses, each such certificate describing the work for which Lessee is requesting payment and the cost incurred by Lessee in connection therewith and stating that Lessee has not theretofore received payment for such work and (ii) such additional documentation as Lessor may reasonably require, including, but not limited to, copies of all contracts and subcontracts relating to restoration, architects' certifications, title policy updates and lien waivers or releases.  Any Net Proceeds remaining after final payment has been made for such work and after Lessee has been reimbursed for any portions it contributed to the Restoration Cost shall be paid to Lessee.  In the event of any temporary Condemnation, this Lease shall remain in full effect and Lessee shall be entitled to receive the Net Proceeds allocable to such temporary Condemnation, except that any portion of the Net Proceeds allocable to the period after the expiration or termination of the Lease Term shall be paid to Lessor.  If the cost of any rebuilding, replacement or repair required to be made by Lessee pursuant to this subsection 6.01(d) shall exceed the amount of such Net Proceeds, the deficiency shall be paid by Lessee.

(e)      ***Disbursement of Insurance Proceeds***.  Notwithstanding anything to the contrary contained in this Section 6.01, in case of any Casualty which does not result in a termination of this Lease and with respect to which the Net Proceeds are not to be paid directly to Lessee to rebuild, replace or repair the Premises, such Net Proceeds (excluding, however, proceeds payable or on account of Severable Property) shall be paid directly to a third party depository which shall be a title insurance company, bank, trust company, or other institution reasonably acceptable to Lessor and Lessee, and such Net Proceeds shall be, upon Lessee's request, remitted by such depository to Lessee or to the persons designated by Lessee for the costs of labor and materials as the work of repair, replacement and/or restoration progresses.   The provisions set forth in Section 6.01(d) above shall be applicable with respect to the conditions governing disbursement of the Net Proceeds to Lessee.  The depository shall be instructed to invest the deposited funds in an interest bearing account in a national bank or in short-term securities of the United States of America and all interest earned shall be deemed a part of the deposit.

**Section 6.02.  Insurance**.

(a)      Lessee may self-insure the insurance coverage referred to in this Section 6.02, provided that such self insurance program does not violate any applicable laws.

(b)      The following terms and provisions shall apply:

(i)      Lessee will maintain insurance on the Premises of the following character:

(A)      Property insurance against all risks of direct physical loss, including loss by fire, lightning and other risks which at the time are included under "extended coverage" endorsements, which shall include flood insurance (if the Premises are located in a flood zone), in amounts sufficient to prevent Lessor and Lessee from becoming a coinsurer of any loss but in any event in amounts not less than 100% of the actual

15

replacement value of the Improvements, exclusive of foundations and excavations;

(B)    General public liability insurance and/or umbrella liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises, which insurance shall be written on an "occurrence basis," in the minimum amounts of $5,000,000 for bodily injury or death to any one person, $5,000,000 for any one accident and $5,000,000 for property damage to others;

(C)    Worker's compensation insurance (including employers' liability insurance, if requested by Lessor) to the extent required by the law of the state in which the Premises are located;

(D)    Boiler and machinery insurance in respect of any boilers and similar apparatus located on the Premises in the minimum amount of $500,000;

(E)    During any period of construction on the Premises, builder's risk insurance on a completed value, non-reporting basis for the total cost of such alterations or improvements, and workers' compensation insurance as required by applicable law.  This coverage may be provided by Lessee's all risk property insurance pursuant to Section 6.02(i) herein.

Such insurance shall be written by companies reasonably acceptable to Lessor and carrying an A.M. Best rating of "A-" or better, and with the exception of workers' compensation insurance, shall name Lessor as an additional insured as its interest may appear.  Insurance required to be carried hereunder may be provided under blanket or global policies .

(ii)    Every such property insurance policy (other than any workers' compensation policy) shall bear a mortgagee endorsement in favor of any mortgagee or beneficiary previously disclosed to Lessee in writing (whether one or more, the "Mortgagee") under each mortgage, deed of trust or similar security instrument creating a lien on the interest of Lessor in the Premises (whether one or more, the "Mortgage"), and any loss under any such policy shall be payable to the Mortgagee which has a first lien on such interest (if there is more than one first Mortgagee, then to the trustee for such Mortgagees) to be held and applied by Mortgagee toward restoration pursuant to Section 6.01.

(iii)    Lessee shall deliver to Lessor and Mortgagee upon request, copies of original or duplicate certificates of insurance, reasonably satisfactory to Lessor and Mortgagee evidencing the existence of all insurance which is required to be maintained by Lessee hereunder.  Any insurance required hereunder may be provided under blanket policies.

16

(iv)    Lessee hereby agrees to waive its insurer's rights of recovery against Lessor for loss of or damage to property or the property of others under its control.

(c)    The requirements of this Section 6.02 shall not be construed to negate or modify Lessee's obligations under Section 5.04.

## ARTICLE VII

**Section 7.01.**  Conditional Limitations; Default Provisions.

(a)    Any of the following occurrences or acts shall constitute an Event of Default under this Lease:

(i)    If Lessee shall (A) fail to pay any Basic Rent as and when required to be paid by Lessee hereunder and such failure shall continue for five (5) business days after receipt of written notice thereof from Lessor (provided that Lessor shall not be obligated to give such notice more than two (2) times in any calendar year), (B) fail to pay any additional rent or other sum as and when required to be paid by Lessee hereunder and such failure shall continue for three (3) business days after receipt of written notice thereof from Lessor, or (C) fail to observe or perform any other provision hereof and such nonmonetary failure shall continue for 30 days after written notice to Lessee of such failure (provided that, in the case of any such failure which cannot be cured by the payment of money and cannot with diligence be cured within such 30-day period, if Lessee shall commence promptly to cure the same and thereafter prosecute the curing thereof with diligence, the time within which such failure may be cured shall be extended for such period not to exceed 180 days as is necessary to complete the curing thereof with diligence);

(ii)    If any representation or warranty of Lessee set forth in any certificate provided by Lessee pursuant to this Lease, shall prove to be incorrect in any material adverse respect as of the time when the same shall have been made in a way adverse to Lessor and Lessor shall suffer a loss or detriment as a result thereof, including, without limitation, the taking of any action (including, without limitation, the demise of the Premises to Lessee herein) in reliance upon such representation or warranty and, in each case, the facts shall not be conformed to the representation and warranty as soon as practicable in the circumstances (but in no event to exceed 30 days) after written notice to Lessee from Lessor of such inaccuracy and Lessor restored to the position it would have enjoyed had such representation or warranty been accurate at the time it was made; or

(iii)    If the Premises shall have been abandoned and not maintained or secured in the manner required hereunder for a period of 30 consecutive days after written notice of such from Lessor to Lessee.

(b)    If an Event of Default shall have happened and be continuing, Lessor shall have the right to give Lessee notice of Lessor's termination of the Lease Term.  Upon the

17

giving of such notice, the Lease Term and the estate hereby granted shall expire and terminate on such date as fully and completely and with the same effect as if such date were the date herein fixed for the expiration of the Lease Term, and all rights of Lessee hereunder shall expire and terminate, but Lessee shall remain liable as hereinafter provided.

(c)    If an Event of Default shall have happened and be continuing, Lessor shall have the immediate right, whether or not the Lease Term shall have been terminated pursuant to subsection 7.01(b), to reenter and repossess the Premises and the right to remove all persons and property (subject to Section 3.02) therefrom by summary proceedings, ejectment or any other legal action or in any lawful manner Lessor determines to be necessary or desirable.  Lessor shall be under no liability by reason of any such reentry, repossession or removal.  No such reentry, repossession or removal shall be construed as an election by Lessor to terminate the Lease Term unless a notice of such termination is given to Lessee pursuant to subsection 7.01(b) or unless such termination is decreed by a court.

(d)    At any time or from time to time after a reentry, repossession or removal pursuant to subsection 7.01(c), whether or not the Lease Term shall have been terminated pursuant to subsection 7.01(b), Lessor may (but shall be under no obligation to) relet the Premises for the account of Lessee, in the name of Lessee or Lessor or otherwise, without notice to Lessee, for such term or terms and on such conditions and for such uses as Lessor, in its absolute discretion, may determine.  Lessor may collect any rents payable by reason of such reletting.  Lessor shall not be liable for any failure to relet the Premises or for any failure to collect any rent due upon any such reletting.

(e)    No expiration or termination of the Lease Term pursuant to subsection 7.01(b), by operation of law or otherwise, and no reentry, repossession or removal pursuant to subsection 7.01(c) or otherwise, and no reletting of the Premises pursuant to subsection 7.01(d) or otherwise, shall relieve Lessee of its liabilities and obligations hereunder, all of which shall survive such expiration, termination, reentry, repossession, removal or reletting.

(f)    In the event of any expiration or termination of the Lease Term or reentry or repossession of the Premises or removal of persons or property therefrom by reason of the occurrence of an Event of Default, Lessee shall pay to Lessor all Basic Rent, additional rent and other sums required to be paid by Lessee, in each case to and including the date of such expiration, termination, reentry, repossession or removal, and, thereafter, Lessee shall, until the end of what would have been the Lease Term in the absence of such expiration, termination, reentry, repossession or removal and whether or not the Premises shall have been relet, be liable to Lessor for, and shall pay to Lessor, as liquidated and agreed current damages: (i) all Basic Rent, all additional rent and other sums which would be payable under this Lease by Lessee in the absence of any such expiration, termination, reentry, repossession or removal, together with all expenses of Lessor in connection with such reletting (including, without limitation, all repossession costs, brokerage commissions, reasonable attorneys' fees and expenses (including, without limitation, fees and expenses of appellate proceedings), employee's expenses,

18

alteration costs and expenses of necessary preparation for such reletting), less (ii) the net proceeds, if any, of any reletting effected for the account of Lessee pursuant to subsection 7.01(d). Lessee shall pay such liquidated and agreed current damages on the dates on which rent would be payable under this Lease in the absence of such expiration, termination, reentry, repossession or removal, and Lessor shall be entitled to recover the same from Lessee on each such date.

(g)    At any time after any such expiration or termination of the Lease Term or reentry or repossession of the Premises or removal of persons or property therefrom by reason of the occurrence of an Event of Default, whether or not Lessor shall have collected any liquidated and agreed current damages pursuant to subsection 7.01(f), Lessor shall be entitled to recover from Lessee, and Lessee shall pay to Lessor on demand, as and for liquidated and agreed final damages for Lessee's default and in lieu of all liquidated and agreed current damages beyond the date of such demand (it being agreed that it would be impracticable or extremely difficult to fix the actual damages), an amount equal to the excess, if any, of (a) the aggregate of all Basic Rent for what would be the then unexpired Lease Term in the absence of such expiration, termination, reentry, repossession or removal, discounted at the rate of 5% per annum, over (b) the then fair rental value of the Premises, discounted at the rate of 5% per annum for the same period. If any law shall limit the amount of liquidated final damages to less than the amount above agreed upon, Lessor shall be entitled to the maximum amount allowable under such law.

**Section 7.02.**  Bankruptcy or Insolvency.

(a)    On October 8, 2005 Delphi Corporation ("Delphi") and certain of its U.S. affiliates filed voluntary petitions for reorganization under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and on October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions for reorganization under the Bankruptcy Code (collectively, the "Debtors"). The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Court. This Lease and Lessor's and Lessee's respective obligations under this Lease are contingent upon approval by the Bankruptcy Court.

**Section 7.03.**  Additional Rights of Lessor.

(a)    No right or remedy hereunder shall be exclusive of any other right or remedy, but shall be cumulative and in addition to any other right or remedy hereunder or now or hereafter existing. Failure to insist upon the strict performance of any provision hereof or to exercise any option, right, power or remedy contained herein shall not constitute a waiver or relinquishment thereof for the future. Receipt by Lessor of any Basic Rent, additional rent or other sums payable hereunder with knowledge of the breach of any provision hereof shall not constitute waiver of such breach, and no waiver by Lessor of any provision hereof shall be deemed to have been made unless made in writing. Lessor shall be entitled to injunctive relief in case of the violation, or attempted

19

or threatened violation, of any of the provisions hereof, or to a decree compelling performance of any of the provisions hereof, or to any other remedy allowed to Lessor by law or equity.

(b)    Lessee hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have to redeem the Premises or to have a continuance of this Lease after termination of Lessee's right of occupancy by order or judgment of any court or by any legal process or writ, or under the terms of this Lease, or after the termination of the Lease Term as herein provided, (ii) the benefits of any law which exempts property from liability for debt and (iii) Lessee specifically waives any rights of redemption or reinstatement available by law or any successor law.

(c)    If an Event of Default on the part of Lessee shall have occurred hereunder and be continuing, then, without thereby waiving such default, Lessor may, but shall be under no obligation to, take all action, including, without limitation, entry upon the Premises, to perform the obligation of Lessee hereunder immediately and without notice in the case of any emergency as may be reasonably determined by Lessor and upon five business days' notice to Lessee in other cases.  All reasonable expenses incurred by Lessor in connection therewith, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, those incurred in connection with any appellate proceedings), shall constitute additional rent under this Lease and shall be paid by Lessee to Lessor upon demand.

(d)    If Lessee shall be in default in the performance of any of its obligations under this Lease beyond any applicable grace or cure period hereunder, Lessee shall pay to Lessor, on demand, all expenses actually incurred by Lessor as a result thereof, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, those incurred in connection with any appellate proceedings).  If Lessor shall be made a party to any litigation commenced against Lessee and Lessee shall fail to provide Lessor with counsel approved by Lessor and pay the expenses thereof, Lessee shall pay all costs and reasonable attorneys' fees and expenses in connection with such litigation (including, without limitation, fees and expenses incurred in connection with any appellate proceedings).

(e)    If Lessee shall fail to pay when due any Basic Rent, additional rent or other sum required to be paid by Lessee hereunder, Lessor shall be entitled to collect from Lessee as additional rent and Lessee shall pay to Lessor, in addition to such Basic Rent, additional rent or other sum, a late payment charge on the delinquency equal to the Late Rate.  The Late Rate shall be the lesser of (i) that per annum rate of interest which exceeds by two percentage points the prime rate most recently published in the Wall Street Journal (or a comparable publication if the Wall Street Journal ever ceases publication) as the prime rate or (ii) the maximum rate permitted by applicable law, not to exceed 18%.  In addition to all other remedies Lessor has hereunder, if Lessee shall fail to pay any Basic Rent, additional rent or other sum, as and when required to be paid by Lessee hereunder prior to the expiration for the period of payment pursuant to subsection 7.01(a)(i)(A), Lessor shall be entitled to collect from Lessee, and Lessee shall

20

pay to Lessor, as additional rent, an amount equal to 1% of the amount shown in the notice as unpaid.  Lessor shall not exercise any late payment charge or interest penalty unless and until Lessor shall have given to Lessee written notice and Lessee shall have failed to remedy such non-payment within five (5) days, provided, however, Lessor shall not be obligated to give written notice of non-payment more than three (3) times in any 12-month period.

Nothing in this Lease will be construed to give Lessor the right to possession of any of Lessee's records, files, business records or customer names or records.  Lessee shall have the right to vacate the Premises without being in default of this Lease, provided Lessee continues to otherwise comply with the terms of the Lease.

## ARTICLE VIII

**Section 8.01.  Notices and Other Instruments**.  All notices, offers, consents and other instruments given pursuant to this Lease shall be in writing and shall be validly given when hand delivered or sent by a courier or express service guaranteeing overnight delivery or by telecopy, with original being promptly sent as otherwise provided above, addressed as follows:

| | |
|---|---|
| If to Lessor: | The Metcalf Family Living Trust dated June 11, 1993<br>2920 Rohrer Drive<br>Lafayette, CA 94549<br>Attn: David Metcalf<br>Facsimile:  [_____] |
| With a copy to: | Chris Hunter, Esq.<br>Morgan Miller Blair<br>1331 N. California Blvd., Suite 200<br>Walnut Creek, CA 94596<br><br>Facsimile:  (925) 943-1106 |
| If to Lessee: | Delphi Automotive Systems LLC<br>5825 Delphi Drive, Troy, MI  48098<br>Attention:  Operations Support Group - Director<br>Facsimile:  248.813.1422 |
| With a copy to: | Delphi Automotive Systems LLC<br>5725 Delphi Drive, Troy, MI  48098<br>Attention:  Deputy General Counsel - Transactional & Restructuring<br>Facsimile:  248.813.2491 |

Lessor and Lessee each may from time to time specify, by giving 15 days notice to each other party, (i) any other address in the United States as its address for purposes of this Lease and (ii) any other person or entity in the United States that is to receive copies of notices, offers,

21

consents and other instruments hereunder.  Notices given in accordance with this Section 8.01 shall be deemed delivered on the day after they are sent.

### Section 8.02.  Estoppel Certificates.

Lessee shall, within thirty (30) days of receipt of written notice from Lessor, execute and deliver an estoppel certificate certifying, if true, that:  (a) the Lease is in full force and effect and has not been modified or amended (or if modified or amended, describing the same); (b) the date Lessee accepted occupancy of the Premises; (c) the date to which Base Rent and additional rent has been paid; (d) to the best of Lessee's knowledge and belief and without due diligence investigation, the defenses or offsets thereto or defaults of Lessor under the Lease (or if none be claimed, stating that fact); and (e) such other matters as Lessor may reasonably request.

## ARTICLE IX

**Section 9.01.  No Merger**.  There shall be no merger of this Lease or of the leasehold estate hereby created with the fee estate in the Premises by reason of the fact that the same person acquires or holds, directly or indirectly, this Lease or the leasehold estate hereby created or any interest herein or in such leasehold estate, as well as the fee estate in the Premises or any interest in such fee estate.

**Section 9.02.  Surrender**.  Upon the expiration or termination of this Lease, Lessee shall surrender the Premises to Lessor in good repair and condition except for any damage resulting from Condemnation or Casualty or normal wear and tear not required to be repaired by Lessee. The provisions of this Section and Article III shall survive the expiration or other termination of this Lease.  All alterations, additions and improvements (other than the Severable Property) which shall have been made or installed by Lessee upon the Premises shall remain upon and be surrendered with the Premises as a part thereof, and Lessee shall have no obligation to restore the Premises to any previous condition.

**Section 9.03.  Assumption**.  In the event of a consolidation of Lessee with one or more entities where Lessee is not the surviving entity, the surviving entity shall deliver to Lessor, and any assignee of any interest of Lessor, an acknowledged instrument assuming all obligations, covenants and responsibilities of Lessee hereunder.

**Section 9.04.  Separability; Binding Effect; Governing Law**.  Each provision hereof shall be separate and independent, and the breach of any provision by Lessor shall not discharge or relieve Lessee from any of its obligations hereunder.  Each provision hereof shall be valid and shall be enforceable to the extent not prohibited by law.  If any provision hereof or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remaining provisions hereof, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby.  All provisions contained in this Lease shall be binding upon, inure to the benefit of and be enforceable by the successors and assigns of Lessor to the same extent as if each such successor and assign were named as a party hereto.  All provisions contained in this Lease shall be binding upon the successors and assigns of Lessee and shall inure to the benefit of and be enforceable by the permitted successors and assigns of Lessee in each case to the same extent as if each

MMB:4000-016:736803.2

successor and assign were named as a party hereto. This Lease shall be governed by and interpreted in accordance with the laws of the state in which the Premises are located.

**Section 9.05. Table of Contents and Headings; Internal References**. The table of contents and the headings of the various paragraphs and schedules of this Lease have been inserted for reference only and shall not to any extent have the effect of modifying the express terms and provisions of this Lease. Unless stated to the contrary, any references to any Section, subsection, Schedule and the like contained herein are to the respective Section, subsection, Schedule and the like of this Lease.

**Section 9.06. Counterparts**. This Lease may be executed in two or more counterparts and shall be deemed to have become effective when and only when one or more of such counterparts shall have been executed by or on behalf of each of the parties hereto (although it shall not be necessary that any single counterpart be executed by or on behalf of each of the parties hereto, and all such counterparts shall be deemed to constitute but one and the same instrument) and shall have been delivered by each of the parties to the other.

**Section 9.07. Lessor's Liability**. Notwithstanding anything to the contrary provided in this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Lessor, that there shall be absolutely no personal liability on the part of any partner, director, member, officer, trustee or shareholder of Lessor, its successors or assigns with respect to any of the terms, covenants and conditions of this Lease, and any liability on the part of Lessor shall be limited solely to the Premises, such exculpation of liability to be absolute and without any exception whatsoever.

**Section 9.08. Amendments and Modifications**. Except as expressly provided herein, this Lease may not be modified or terminated except by a writing signed by Lessor and Lessee.

**Section 9.09. Additional Rent**. All amounts other than Basic Rent which Lessee is required to pay or discharge pursuant to this Lease, including the charge provided for by Section 7.03(e) hereof, shall constitute additional rent.

**Section 9.10. Consent of Lessor**. Except as specifically set forth in this Lease, all consents and approvals to be granted by Lessor shall not be unreasonably withheld or delayed. Any disputes regarding Lessor's refusal to grant any consent shall be subject to resolution, at Lessee's option, under the Expedited Procedures provisions of the Commercial Arbitration Rules of the American Arbitration Association (presently Rules 53 through 57); provided, however, that with respect to any such arbitration, (i) the list of arbitrators referred to in Rule 54 shall be returned within five (5) business days from the date of mailing, (ii) the parties shall notify the American Arbitration Association, by telephone, within four (4) days of any objections to the arbitrator appointed and will have no right to object if the arbitrator so appointed was on the list submitted by the American Arbitration Association and was not objected to in accordance with the second sentence of Rule 54, (iii) the Notice of Hearing referred to in Rule 55 shall be four (4) days in advance of the hearing, (iv) the hearing shall be held within seven (7) days after the appointment of the arbitrator, and (v) the arbitrator shall have no right to award damages. Judgment upon any decision rendered in any arbitration held pursuant to this Article shall be final and binding upon Lessor and Lessee, whether or not a judgment shall be entered in any

23

Court.  Each party shall pay its own counsel fees and expenses, if any, in connection with any arbitration under this Article, including the expenses and fees of any arbitrator selected by it in accordance with the provisions of this Article, and the parties shall share all other expenses and fees of any such arbitration.  The arbitrators shall be bound by the provisions of this Lease, and shall not add to, subtract from or otherwise modify such provisions.  Under no circumstances will Lessee be entitled to damages with respect to the failure to grant any consent or approval.

**Section 9.11.  Options**.  The options to extend the Primary Term or any existing Extended Term created in this Lease are personal to the original Lessee and any entity with which it may be merged or consolidated or shall succeed to a substantial portion of its assets and are exercisable only as long as this Lease is in effect and has not expired or been terminated.

**Section 9.12.  Schedules**.  Attached hereto are <u>Schedule A, Schedule B, Schedule C and Schedule D</u> referred to in this Lease, which Schedules are hereby incorporated by reference herein.

**Section 9.13.  Currency**.  All references in this Lease to money shall be to the currency of the United States of America.

**Section 9.14.    Waiver of Jury Trial.**  LESSOR AND LESSEE HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS LEASE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS AMONG LESSEE OR LESSOR RELATING TO THE SUBJECT MATTER OF THE TRANSACTIONS CONTEMPLATED BY THIS LEASE OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED AMONG LESSOR AND LESSEE.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS).    THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS LEASE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS LEASE OR ANY RELATED TRANSACTIONS.  IN THE EVENT OF LITIGATION, THIS LEASE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**Section 9.15.  Hold-Over.**    If Lessee occupies the Premises after the expiration of the Term, this Lease shall continue on a month-to-month basis; provided that, for the first three (3) months after the expiration of the Term, Lessee shall only remain liable for the payment of Base Rent and other charges under this Lease through the date Lessee vacates the Premises.  If Lessee occupies the Premises for a period after the first three (3) months, the rental rate shall be increased to a rate not to exceed one hundred twenty-five percent (125%) of the Base Rent. Either party may cancel such tenancy upon thirty (30) days written notice to the other.

MMB:4000-016:736803.2

**Section 9.16. Post-Closing Occupancy Rent.**  Lessor hereby assigns to Lessee any post-closing occupancy rent ("Valeo Rent") Lessor received from Valeo Electrical Systems, Inc. in connection with the Real Property Purchase and Sale Agreement between Valeo and Lessee, dated \_\_\_\_\_, as assigned by Lessee to Lessor, and will either (a) deliver any Valeo Rent received by Lessor to Lessee within five (5) business days of receipt by Lessor, or (b) will direct any third party escrow agent holding funds for the post-closing occupancy rent to deliver such Valeo Rent to Lessee.

**Section 9.17.    Signs.**  Lessee shall have exclusive sign rights for the Premises, exterior and interior, and shall have the right to erect and display signs on the Premises and on such other areas of the Premises as Lessor approves in Lessor's reasonable discretion.  Lessee's signage shall comply with all Legal Requirements.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties hereto have caused this Lease to be executed as of the date first above written.

**LESSOR:**

The Metcalf Family Living Trust dated June 11, 1993

By _____

Printed Name    David Metcalf

Title                 Trustee


**LESSEE:**

Delphi Automotive Systems LLC, a Delaware limited liability company

By _____

Printed Name _____

Title _____

# SCHEDULE A

## PART I

## LEGAL DESCRIPTION

A part of the West 1/2 of Section 13 and East 1/2 of Section 14, Town 3 North, Range 10 East, City of Auburn Hills, Oakland County, Michigan, being described as: Commencing at the West 1/4 corner of Section 13; thence South 03 degrees 12 minutes 11 seconds East, 83.78 feet along the line between Sections 13 and 14, to a point on the Southerly line of University Drive, as proposed, thence along said line the following two courses: (1) Along a curve to the right 156.21 feet, said curve having a radius of 3,153.84 feet, central angle of 02 degrees 50 minutes 16 seconds and a long chord bearing of South 61 degrees 47 minutes 48 seconds West 156.19 feet, and (2) South 63 degrees 12 minutes 55 seconds West, 606.47 feet to the point of beginning on the West line of the proposed parkway; thence along said line along the following five courses: (1) South 26 degrees 47 minutes 05 seconds East, 44.69 feet, and (2) Along a curve to the left 328.13 feet, said curve having a radius of 350.00 feet, central angle of 53 degrees 42 minutes 55 seconds and a long chord bearing of South 53 degrees 38 minutes 32 seconds East, 316.24 feet, and (3) South 80 degrees 30 minutes 00 seconds East, 126.29 feet, and (4) Along a curve to the right 501.78 feet, said curve having a radius of 460.00 feet, central angle of 62 degrees 30 minutes 00 seconds and a long chord bearing of South 49 degrees 15 minutes 00 seconds East, 477.27 feet, and (5) South 18 degrees 00 minutes 00 seconds East, 380.06 feet; thence South 72 degrees 00 minutes 00 seconds West, 146.77 feet; thence South 15 degrees 00 minutes 00 seconds West, 155.13 feet; thence South 61 degrees 00 minutes 00 seconds West, 394.00 feet; thence South 77 degrees 45 minutes 54 seconds West, 205.62 feet; thence South 69 degrees 30 minutes 00 seconds West, 105.00 feet; thence South 84 degrees 30 minutes 00 seconds West, 173.00 feet; thence North 82 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 64 degrees 30 minutes 00 seconds West, 285.00 feet; thence North 47 degrees 00 minutes 00 seconds West, 124.00 feet; thence North 20 degrees 55 minutes 47 seconds West, 175.78 feet to a point on the Easterly line of proposed road; thence along said line along the following two courses: (1) Along a curve to the left 664.23 feet, said curve having a radius of 770.00 feet, central angle of 49 degrees 25 minutes 32 seconds and a long chord bearing North 02 degrees 04 minutes 19 seconds West, 643.83 feet and (2) North 26 degrees 47 minutes 05 seconds West, 28.47 feet to a point on the Southerly line of University Drive, as proposed; thence North 63 degrees 12 minutes 55 minutes East, 769.65 feet to the point of beginning.

## SCHEDULE A

## PART II

## PERMITTED EXCEPTIONS

1.  Covenants and conditions set forth in a certain Deed recorded in Liber 10257, Page 184.

2.  Maintenance Agreement and Easements, and the terms, conditions and provisions thereof, contained in Grant of Easement recorded in Liber 10257, Page 188.

3.  Declaration of Covenants, Conditions and Restrictions recorded in Liber 10257, Page 157. Assignment of Covenant Rights to Chrysler Corporation, as contained in Liber 14122, Page 535.

4.  Easement to Consumers Power Company for gas pipeline, as contained in Liber 14536, Page 565.

5.  Agreements with Kasper Drain Drainage District, and the terms, conditions and provisions thereof, as contained in Liber 12488, Page 666, and Liber 12488, Page 671.

6.  Grant of Easement to the Detroit Edison Company for electrical facilities, as contained in Liber 10856, Page 144.

7.  Declaration of Restrictions of Use recorded in Liber 10257, Page 177.

8.  Grant of Easements to the City of Auburn Hills for underground sanitary, storm and sewer lines, and the terms, conditions and provisions thereof, as contained in Liber 14076, Page 686.

# SCHEDULE A

## PART III

## SEVERABLE PROPERTY

All apparatus, personal property, trade fixtures, inventory, equipment, machinery, fittings, furniture, furnishings, chattel, materials and supplies located on and used in, or related to Lessee's business or any entity claiming by, through or under Lessee, including, but not limited to, mainframe computers, kitchen equipment and telephone and similar systems and articles of personal property of every kind and nature whatsoever, and any additions, replacements, accessions and substitutions thereto or therefor, and all proceeds of all of the foregoing, or any part of the foregoing used or usable in connection with any present or future operation or letting (or subletting) of such leasehold interest or the activities at any time conducted thereon and now or hereafter owned by Lessee or by any sublessor or other person or entity using all or any part of the Premises by, through, or under (or with the express or implied consent of) Lessee.

## <u>SCHEDULE B</u>

### PART I

### THE PRIMARY TERM AND EXTENDED TERMS

|  | Term | Commencement | Expiration |
|---|---|---|---|
| Primary Term: | 10 Years | [April 30, 2007] | [April 29, 2017] |
| Extended Term: | | | |
| 1st Extended Term: | 5 Years | [_____] | [_____] |
| 2nd Extended Term: | 5 Years | [_____] | [_____] |

## <u>SCHEDULE B</u>

## PART II

## BASIC RENT

### PRIMARY TERM

| Dates | Total Monthly Rental |
|-------|----------------------|
| Month 1 | $        0.00 |
| Months 2 - 120 | $ 268,125.00 |

### EXTENDED TERMS

| Dates | Total Annual Rental |
|-------|---------------------|
| Years 11 - 15 | Adjusted Fair Market Rental |
| Years 16 - 20 | Adjusted Fair Market Rental |

Lessee shall have no obligation to pay Basic Rent for the first full month following the Commencement Date.

MMB:4000-016:736803.2

## SCHEDULE C

## COMMENCEMENT AND MEMORANDUM OF LEASE AGREEMENT

**AGREEMENT** made as of the _____ day of _____, 200__, between The Metcalf Family Living Trust dated June 11, 1993 , with its principal address at , hereinafter referred to as Lessor, and Delphi Automotive Systems LLC, a Delaware limited liability company, with its principal address at 5725 Delphi Drive, Troy, Michigan 48098, hereinafter referred to as Lessee,

### W I T N E S S E T H:

That the Lease Agreement dated as of _____, 2007, between the parties hereto covering a 437,800 square foot building and the approximate 35-acres parcel on which the building is located, with an address of 3000 University Drive, Auburn Hills, Michigan, and on the real property described in Exhibit "A" attached hereto, for a Primary Term of ten (10) years is hereby amended as follows:

The Primary Term of the Lease shall be Ten (10)  (10) years with the Commencement Date beginning _____, 200_____, and the Primary Term expiring on _____, 200____.

The area of the Premises is amended to be defined as _____ square feet of rentable area of the Building.

It is understood and agreed that the Commencement, expiration, and notice dates for the renewal option(s) are as follows:

| Renewal Period(s) | Notice Date | Commencement Date | Expiration Date |
|---|---|---|---|
| Five (5) years | _____ | | _____ |
| Five (5) years | _____ | _____ | _____ |

ii

All capitalized terms used herein shall have the same definition as in the Lease.

As hereby amended, the Lease Agreement dated _____, 2007, is in all respects ratified and confirmed.

In the event this document is recorded, its recording is intended solely to give notice of the Lease and is not a complete summary of the terms and conditions thereof.  Any successor in interest to the Lessor shall take the Lease subject to all the terms and conditions of same, as amended herein. Except as to the amendment made herein, this document shall not be used in interpreting provisions of the Lease.

**IN WITNESS WHEREOF,** the Lessor has signed and sealed this instrument this _____ day of , 200_____, and the Lessee has signed and sealed this instrument this _____ day of , 200___.

In the presence of:

X X X X X X X X X X X X X X X X X X X                BY X X X X X X X X X X X X X X X X X

President

X X X X X X X X X X X X X X X X X X X                ATTEST X X X X X X X X X X X X X X X X

Secretary

iii

In the presence of:

X X X X X X X X X X X X X X X X X            BY X X X X X X X X X X X X X X X X X

X X X


X X X X X X X X X X X X X X X X X            ATTEST X X X X X X X X X X X X X X X X

X X X

## SCHEDULE D
## INITIAL IMPROVEMENTS

**GENERAL SITE**

Signage: Change signage to tenant specific.

Parking:    Expand as required by local municipality, surface parking to accommodate additional tenants (approx 1400 total).

Security Systems:  Replace security access system.  Add exit door card readers.

**OFFICE BUILDING (All Floors)**

Enclosed Space:  All floors to be laid out to maximize density
Necessitating the elimination/modification of existing enclosed space and/or the addition of enclosed office and conference space.

Finishes:  All finishes will be similar to existing.

Interior Walls: Painted drywall with doors and trim to match existing.

Voice/Data Cabling:  Remove existing cable and pull new.

**LAB BUILDING**

Enclosed Space:  To be laid out to facilitate various light laboratory   functions.  Bench top analysis and fume hoods.   Painted drywall construction or reconfigurable partitions will be utilized.  Additional air handling equipment will be required for air exchanges.

Engine Dynamometers:  Dynamometers will be anchored to the floor in a room consisting of masonry wall construction, safety glass for viewing, explosion proof fixtures and explosion relief panels on exterior walls.  Fuel is delivered from a fuel farm external to the building by way of floor trenches.   Dyno cells will be controlled through one central control room.  9 dyno cells will be installed.  A floor mounted poured concrete mezzanine over the cells will house mechanical and electrical equipment.

Vehicle Dynamometers:  2 Vehicle dynamometers will be installed in  floor pits approximately 8'x12' in a VEL (vehicle emission lab) room constructed of double block with a vapor barrier in between for humidity control.  This facility will require the addition of significant air handling and humidity control equipment.  2 vehicle dynamometers will be installed in floor pits in a garage environment surrounded by reconfigurable metal skin partitions.

v

<u>Garage</u>:  8 garage access doors will be installed and a 10 bay garage space created with reconfigurable partitions.  8 floor mounted vehicle hoists will be installed.  A vehicle exhaust system will be installed and makeup air as needed.

<u>Piping</u>:  Test equipment throughout the lab space will be supplied from central gas, water, air and vacuum systems.

<u>Electrical</u>:  Additional transformers as required to support lab functions.

Exhibit C

## ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** is made and entered into this 2nd day of March, 2007, by and between Delphi Automotive Systems LLC, a Delaware limited liability company (the "Assignor") and The Metcalf Family Living Trust dated June 11, 1993  (the "Assignee"), and provides as follows:

## WITNESSETH:

**WHEREAS,** the Purchase and Sale Agreement dated as of March 2, 2007 (the "PSA") between Assignor, and Valeo Electrical Systems, Inc. (the "Seller") sets forth the terms by which Seller would agree to sell to Assignor certain premises consisting of approximately 437,800 square feet of building improvements located at 3000 University Drive, Auburn Hills, Michigan, (the "Property"), a copy of the PSA is attached hereto as **Exhibit A**; and

**WHEREAS,** Assignor has agreed to assign to Assignee its interest as Buyer, in and to the PSA and Assignee has agreed to accept such assignment and assume the obligations of Buyer under the PSA upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the parties hereto agree as follows:

1.    Assignment and Assumption of the PSA.    Assignor hereby assigns to Assignee all of Assignee's right, title and interest in and Assignee hereby assumes and agrees to pay, discharge, and perform Assignor's rights and obligations arising from and after the date hereof related to the PSA.

2.    Performance of Assigned Agreement.    Assignee shall be solely responsible for the performance of the obligations of Assignor related to the PSA from and after the date hereof and Assignee shall indemnify Assignor and hold it harmless from and against any and all claims, losses, damages, costs or expenses (including reasonable attorneys' fees) asserted against or incurred by Assignor due to any breach or default by Assignee related to the PSA from and after the date hereof.  The foregoing notwithstanding, any credits, prepaid expenses, advance payments, deposits and prepaid items either paid by Assignor or accruing to the benefit of Assignor prior to the date hereof shall be excluded from this Agreement and shall benefit the Assignor.  Assignor and Assignee agree that in the event that the parties are entitled to reimbursement pursuant to Section 6(b) of the PSA from Seller, Assignor shall be entitled to recover an amount equal to its actual and reasonable costs incurred in this transaction not to exceed Twenty Five Thousand Dollars and Assignee shall be entitled to recover an amount equal to its actual and reasonable costs incurred in this transaction not to exceed Fifty Thousand Dollars.

3.    Representations and Warranties.    Assignee represents and warrants to Assignor that:

    (a)    Assignee has full and lawful authority to accept assignment of and to agree to be bound by and perform all of the terms, covenants, obligations and conditions of the PSA on the part of the Buyer;

(b)       Assignee shall timely and faithfully observe and perform all the terms, covenants, and conditions of the PSA to be observed and performed on Buyer's part under the PSA; and

(c)       Assignee shall not amend the PSA without the prior written consent of Assignor, which Assignor may withhold in its sole and absolute discretion.

4.       <u>Default</u>  In the event Assignee shall do, or permit or suffer to be done, whether by action or inaction, anything contrary to any covenant or agreement on the part of Assignee herein contained, or shall fail in the keeping or performance of any of the covenants, agreements, terms, provisions, or conditions contained in the PSA which on the part of or behalf of Buyer are to be kept or performed, then the Assignee shall be considered in default hereunder and Assignor may, at its option, cure such default for the account of Assignee and any sum so expended by Assignor shall be paid by Assignee. Assignor, in addition to its other remedies, may terminate this Assignment, and Assignee shall nevertheless remain liable to Assignor for all sums due under this Assignment.

5.       <u>Inspection and Due Diligence.</u>

(A)       Assignee has completed its due diligence inspection of the Property and accepts the Property in its present condition.  Between Assignee and Assignor, Assignee shall be deemed to have waived any objection to the Property and to have affirmed the PSA and elected to purchase the Property with no reduction in the Purchase Price.  Assignee represents and warrants that it is qualified through experience and training to make such investigation of the condition of the Property, both as to the type of investigation and as to the extent of the investigation, and that if Assignee is not qualified to make such investigation Assignee has the investigation made by persons who are so qualified.  In purchasing and accepting the Property in its present condition, Assignee represents that it will rely solely upon its own investigation and will not rely upon any investigation or disclosure of Assignor regarding the Property.

(B)       Assignor shall not be obligated to conduct any inquiry or investigation regarding the condition of the Property in connection with this Assignment.  The provisions herein shall survive the any closing of the sale of the Property to Assignee and execution of the Lease.

(C)       Assignee will send the Approval Notice (as defined in the PSA) or Termination Notice (as defined in the PSA) upon Assignor's direction.

(D)       Assignee will not send any notice either approving the condition of the Property (the "Approval Notice" as defined in the PSA) or a "Termination Notice" (as defined in the PSA), without Assignor's prior written approval. Notwithstanding anything to the contrary in this Assignment Agreement, if the Buyer's Conditions in the PSA are not timely satisfied: (i) Assignee shall have no obligation to deliver the Approval Notice; and (ii) may deliver the Termination Notice and receive its Deposit.  If the Buyer's Conditions are timely satisfied, Assignor may require Assignee to send a

-2-

Termination Notice in Assignor's in sole and absolute discretion, in which case the entire Deposit shall be refunded to Assignee and Assignor shall reimburse Assignee for Assignee's actual and reasonable out-of-pocket expenses incurred in this transaction, with such expense reimbursement not to exceed a maximum of Fifty Thousand Dollars ($50,000.00).

6.      Post Closing Occupancy Rent.   Assignee hereby assigns to Assignor the Buyer's rights to any post-closing occupancy rent from Seller as set forth in the PSA.  Assignee shall deliver any such post-closing occupancy rent received by Assignee from Seller or shall direct any escrow agent holding funds for post-closing occupancy rent to Assignor.

7.      Bill of Sale.  Upon the Closing of the PSA, Metcalf will execute and deliver the Bill of Sale attached hereto as **Exhibit B**.

8.      Notice.  All notices under the this Assignment shall be in writing and sent by registered or certified mail, or by nationally recognized overnight courier, postage prepaid, as follows:

If to Assignor:

>       Delphi Automotive Systems LLC
>       5825 Delphi Drive
>       Troy Michigan 48095
>       Attn:  Executive Director, Facility Services Group

>       with a required copy to:

>       Delphi Automotive Systems LLC
>       5725 Delphi Drive
>       Troy Michigan 48095
>       Attn:  Deputy General Counsel – Transactional and Restructuring


If to Assignee:

>       The Metcalf Family Living Trust dated June 11, 1993
>       2920 Rohrer Drive
>       Lafayette, CA 94549
>       Attn:  David Metcalf

>       With a copy to:

>       Chris Hunter, Esq.
>       Morgan Miller Blair
>       1331 N. California Blvd., Suite 200
>       Walnut Creek, CA  94596

Any party may change these persons or addresses to which notices are to be sent to it by giving notice as provided above. Notice shall be considered given and received upon receipt, or when receipt is rejected, by all persons and addresses to which notice is to be given.

9.    <u>Miscellaneous</u>.

(a)    This Agreement shall be binding upon and inure to the benefit of the Assignor and the Assignee and their respective successors and assigns. Assignee may not assign this agreement without Assignor's prior written consent.

(b)    This Agreement shall be governed by the laws of the State of Michigan without reference to its conflicts of laws provisions.

(c)    The paragraph headings used herein are for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

(d)    Each and every provision of this Agreement shall be deemed severable and the invalidity or unenforceability of any one provision shall not affect the validity or enforceability of any other provision.

10.    <u>Conflict</u>. In the event of a conflict between the terms of this Assignment and the terms of the PSA, the terms of this Assignment shall control.

11.    <u>Bankruptcy Court Approval</u>. Assignor's obligations under this Agreement are contingent upon Bankruptcy Court Approval.

IN WITNESS WHEREOF, the parties have executed this Assignment Agreement as of the date first above written.

**ASSIGNOR:**                          **ASSIGNEE:**

By:    _____          By:    _____

Its:    _____          Its:_____

-4-

**Exhibit A**

Purchase and Sale Agreement

**Exhibit B**

BILL OF SALE

For good and valuable consideration the receipt of which is hereby acknowledged, David R. Metcalf, Trustee of the Metcalf Family Living Trust dated June 11, 1993 ("**Seller**"), does sell, transfer, assign and convey to Delphi Automotive Systems LLC ("Buyer"), all of Seller's right, title and interest in the personal property owned by Seller that is listed on Schedule 1 attached hereto and located in or on the real property at 3000 University, Auburn Hills, Michigan (the "Personal Property").

Seller sells and delivers the Personal Property "as is" to Buyer, and Seller has not made, nor shall Seller be deemed to have made, any representation or warranty, express or implied, as to the value, merchantability, quality or fitness for use or purpose of the Personal Property.  Seller warrants only that it has good and marketable title to the Personal Property and the Personal Property is not subject to any liens, claims, or encumbrances whatsoever.

Seller and Buyer agree as follows:

A.    The Personal Property is furnished "AS IS", "WHERE IS", AND WITH ALL FAULTS AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY NATURE WHATSOEVER, EXPRESS OR IMPLIED, ORAL OR WRITTEN, AND IN PARTICULAR, WITHOUT ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS BILL OF SALE, SELLER DISCLAIMS AND BUYER HEREBY WAIVES ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR DEMAND IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND PATENT INFRINGEMENT), STRICT LIABILITY OR OTHERWISE WITH RESPECT TO THE PERSONAL PROPERTY.  Without limiting the generality of the foregoing, Buyer acknowledges and agrees: (i) that Seller neither represents nor warrants that the Personal Property conveyed under this Bill of Sale will operate satisfactorily, (ii) that Seller shall have no liability or responsibility for the condition and/or operation of the Personal Property after transfer to Buyer, its agents, representatives and/or contractors, and (iii) that Buyer is purchasing the Personal Property based solely upon its own inspection, evaluation, review and analysis and Buyer assumes the entire risk associated with such inspection, evaluation, review and analysis being incomplete or inaccurate.

B.    In no event, whether occasioned by breach of contract, breach of warranty, tort (including negligence), strict liability or otherwise, shall Seller be liable to Buyer for incidental, indirect, special or consequential damages.

This sale is made without warranty of title or other warranty of any kind.

DATED this _____ day of _____, 2007.

**<u>SELLER</u>**:

DAVID R. METCALF,
Trustee of the Metcalf Family Living Trust dated
June 11, 1993

By:_____

Print Name: <u>David R. Metcalf</u>

Its:_____<u>Trustee</u>_____

**Schedule 1**
**to**
**Bill of Sale**

**List of Personal Property**

**A.  Office Area:**
   1.  Modular Furniture
   2.  PBX and Handsets

B.  **Lab Area:**
   1.  Air Compressor #1
   2.  Air Compressor #2
   3.  Air Compressor #3

Exhibit D

## SUBLEASE AGREEMENT

This **SUBLEASE AGREEMENT** dated as of April ____, 2007 by and between Delphi Automotive Systems LLC, with offices at 5725 Delphi Drive, Troy, Michigan 48098 ("SUBLESSOR"), and Valeo Electrical Systems, Inc., with offices at 4100 N. Atlantic Boulevard, Auburn Hills, Michigan 48326 ("SUBLESSEE"), is based upon the following:

A.    Sublessor has leased, as Tenant, from The Metcalf Family Living Trust dated June 11, 1993, as Landlord ("PRIME LANDLORD"), premises located at 3000 University Drive, in the City of Auburn Hills, County of Oakland, State of Michigan (the "DEMISED PREMISES"), pursuant to a certain lease dated March 2, 2007(the "PRIME LEASE"); and

B.    Sublessor desires to sublet to Sublessee and Sublessee desires to hire from Sublessor a portion of the Demised Premises as described on Exhibit A attached hereto; and

NOW THEREFORE, the parties agree as follows:

1.    **SUBLEASE.**  Sublessor hereby sublets to Sublessee a portion of the Demised Premises, for use as general office, research laboratory and for no other purpose, as follows:

(a)    The "Sublet Premises," as described on Exhibit A hereto, consists of one hundred forty-one thousand eight hundred (141,800) square feet as shown on Exhibits A-1, A-2, A-3 and A-5 attached hereto and made a part hereof.

(b)    On or prior to one hundred twenty (120) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-2, A-3 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be reduced to fifty-seven thousand (57,000) square feet.

(c)    On or prior to one hundred fifty (150) days after the Commencement Date, the portion of the Sublet Premises as shown of Exhibits A-1 and A-5, shall be excluded from the Sublet Premises and the Sublet Premises shall be vacated in its entirety.

(d)    During the term, Sublessor shall provide Sublessee with access to those portions of the IT Areas that are then portions of the Sublet Premises and Sublessee shall provide Sublessor access to those portions of the IT Areas which are not then portions of the Sublet Premises.

(e)    During the term, Sublessee shall provide Sublessor with access to the portions of the laboratory space not part of the Sublet Premises and the restroom area in the laboratory area.

(f)    Sublessee shall also have the right to utilize portions of the common areas of the Demised Premises as well as the parking areas in order to reasonably utilize the Sublet Premises during the term.

(g)    Notwithstanding anything herein contained to the contrary, Sublessee may vacate and surrender portions of the Sublet Premises to Sublessor at any time and from time to time and upon such surrender in good broom clean condition, good order and repair, reasonable wear and tear excepted,

such surrendered portion of the Sublet Premises shall no longer be part of the Sublet Premises and Rent under Paragraph 3 shall be adjusted accordingly.

2.    **TERM.**  The term of this sublease ("SUBLEASE TERM") shall commence on the Commencement Date and shall expire One Hundred Fifty (150) days after the Commencement Date, or such earlier date upon which the Sublease Term expires or terminates pursuant to the provisions of this Sublease or pursuant to law.

3.    **RENT.**

(a)    The rent for the Sublease Term shall be Seven Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($780,250.00) ("Rent").  The foregoing amount has been determined based on Sublessee occupying the entire Sublet Premises for the full Sublease Term of each respective portion of the Sublet Premises.  Such Rent shall be paid to Sublessor in accordance with the terms of the "Escrow Agreement," as defined in Paragraph 4 hereof.

(b)    The Rent paid pursuant to this Paragraph 3 is paid on a gross basis and Sublessor shall pay all costs and expenses of operating and maintaining the Demised Premises, except that Sublessee shall provide janitorial service to the Sublet Premises at its sole cost and expense.

4.    **ESCROW AGREEMENT.**  Sublessee shall deposit with Lawyers Title Insurance Corporation (the "Escrow Agent") pursuant to an Escrow Agreement executed by Sublessee, Sublessor and the Escrow Agent, the sum of Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00) (the "Sublease Escrow Funds") to be utilized to satisfy Sublessee's obligations under this Sublease.  Escrow Agent will disburse the Sublease Escrow Funds pursuant to the terms of the Escrow Agreement.

5.    **MAINTENANCE AND REPAIR.**

(a)    Except as provided in Paragraph 5(b) hereof, Sublessor covenants and agrees that Sublessor will, at Sublessor's expense, during the continuation of this Sublease, keep the said Sublet Premises and the Demised Premises in good repair.

(b)    Sublessee shall repair any damage caused to the Demises Premises resulting from the negligence or wrongful acts of Sublessee, Nidec, and Sublessee's and Nidec's agents, contractors or employees.  Sublessee shall not be required to make any other repairs or replacements to the Demised Premises.

(c)    Sublessee shall not perform any acts or carry on any practices which may injure the Demised Premises or be a nuisance or menace to Sublessor.  Sublessee shall not conduct its business in a manner which would cause an increase in Sublessor's insurance premiums for the Demised Premises other than Sublessee's current operations.

(d)    The Sublessee shall at Sublessee's own expense under penalty of forfeiture and damages promptly comply with all lawful laws, orders, regulations or ordinances of all municipal, County and State authorities affecting the cleanliness, safety, occupation and use of same, except that Sublessee shall not be required to make any alterations to the Sublet Premises to so comply.

6.      **UTILITIES AND TAXES.**  Sublessor shall pay for all gas, water, heat and electricity charges for the Demised Premises during the term of this Sublease.  Sublessor shall pay the real estate taxes and installments of special assessments relating to the Demised Premises during the term of this Sublease.

7.      **DAMAGE OR INJURY.**  Neither Prime Landlord nor Sublessor shall be responsible or liable to the Sublessee for any loss or damage (a) to Property or injury to persons sustained by Sublessee or others, caused by conditions or activities on the Sublet Premises (other than due to Sublessor's failure to repair), (b) that may be caused by the acts or omissions of persons occupying adjoining premises (other than Sublessor) or any part of the Demised Premises or (c) for any loss or damage resulting to Sublessee or Sublessee's property from bursting, stoppage or leaking of water, gas, sewer or steam pipes.

8.      **INSURANCE.**

        (a)      (i)      Sublessee shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage.  Such insurance shall name Sublessor and the Prime Landlord, as "additional insureds," shall specifically include the liability assumed hereunder by Sublessee, and shall provide that it is primary insurance and not excess over or contributory with any other valid, existing and applicable insurance in force for or on behalf of Sublessor and the Prime Landlord.

                (ii)      Sublessee shall procure and keep in effect "all risks" (also known as "special cause of loss," including theft, and leakage from fire protective devices) property insurance for the full replacement cost of Sublessee's trade fixtures, equipment, and personal property.

                (iii)      On Sublessor's or Prime Landlord's reasonable request, Sublessee shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

        (b)      (i)      Sublessor shall procure and keep in effect commercial general liability insurance, including contractual liability, with minimum limits of liability of Two Million Dollars ($2,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage.  Such insurance shall name Sublessee and the Prime Landlord as "additional insureds" and shall specifically include the liability assumed hereunder by Sublessor.

                (ii)      Sublessor shall procure and keep in effect "all risks" (also known as "special cause of loss", including theft, and leakage from fire protective devices) property insurance for the full replacement value of the Demised Premises.

                (iii)      On Sublessee's reasonable request, Sublessor shall provide evidence of the insurance required pursuant to Paragraph 8(a)(i) and (ii) hereof.

        (c)      Sublessor, Sublessee and the Prime Landlord shall each be released from any liability (by way of subrogation or otherwise) for loss or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under workers' compensation laws and benefits, resulting from

3

damage by fire or casualty, irrespective of the cause of such fire or casualty to the extent that such loss or damage is insured or required to be insured under this Sublease.

9.      **SERVICES BY PRIME LANDLORD.**  Sublessee shall look only to Sublessor for any services to be furnished to Sublessee in accordance with this Sublease.

10.     **ALTERATIONS.**  Sublessee shall not make any alterations, additions or improvements upon or to the Sublet Premises without the prior written consent of Sublessor and Prime Landlord.  Any permitted alterations, additions and improvements shall be made at the sole cost of Sublessee and shall become the property of Sublessor and shall remain on and be surrendered with the Sublet Premises at the termination of this Sublease; however, Sublessor, at the time of Sublessor's approval, may designate by written notice to Sublessee those alterations, additions, and improvements which shall be removed by Sublessee at the expiration or termination of this Sublease and Sublessee shall promptly remove the same and repair any damage to the Sublet Premises caused by such removal.  Notwithstanding anything herein contained to the contrary, the movable office furniture, trade fixtures, business equipment and other personal property of Sublessee  (other than any items included in the definition of Property under the Purchase and Sale Agreement dated March 2, 2007 between Sublessor and Sublessee) shall remain its property and may be removed from the Sublet Premises at the end of the Subleased Term.  Sublessee shall deliver up the Sublet Premises, at the expiration or sooner termination of the term of this Sublease, in as good condition as they are now in and in a broom clean condition, ordinary wear, damage resulting from Sublessor's failure to repair, fire and other casualties excepted.

11.     **ACCESS.**  At all reasonable hours, the Sublet Premises shall be open to Prime Landlord and Sublessor, their agents and representatives for inspecting or for repairs, additions or alterations by either party.

12.     **SUBLESSEE'S COVENANTS.**  Sublessee covenants with Sublessor to hire the Sublet Premises and to pay the Rent therefor as aforesaid, that it will commit no waste, nor suffer the same to be committed thereon, nor injure nor misuse the same; and also that it shall not make alterations therein, nor use the same for any purposes but that hereinbefore authorized.  Sublessee has inspected the Sublet Premises and accepts same in their present condition, without any warranties or representations (expressed or implied) being relied upon and is relying upon its own inspection.  Sublessee further covenants that this Sublease shall not be assigned, encumbered or otherwise transferred, and the Sublet Premises shall not be further sublet by Sublessee, in whole or in part, and Sublessee shall neither suffer nor permit any of the Sublet Premise to be used or occupied by others without the prior consent of Prime Landlord in each instance; provided however, that notwithstanding the foregoing, Sublessee has the right to sublet to or otherwise permit Nidec Motors and Actuators USA, Inc. ("Nidec") to occupy portions of the Sublet Premises during the Term of this Sublease.

13.     **PRIME LEASE.**

        (a)      Notwithstanding that this Sublease is a sublease, Prime Landlord, Sublessor and Sublessee acknowledge that the terms and provisions of this Sublease shall not be subordinate to the Prime Lease but that this Sublease contains all of the terms and conditions which have been agreed to by the parties without reference to the Prime Lease.

(b)     Notwithstanding anything contained to the contrary in the Prime Lease or in this Sublease, the parties agree that in the event of cancellation of the Prime Lease for any reason whatsoever, including the default of Sublessor, as tenant thereunder, or the surrender thereof, whether voluntary, involuntary or by operation of law, this Sublease shall not thereby be cancelled or terminated, but Sublessee shall make full and complete attornment to the Prime Landlord and the Prime Landlord shall recognize all of Sublessee's rights hereunder for the balance of the Sublease Term with the same force and effect as thought this Sublease were originally made from the Prime Landlord to Sublessee hereunder.

(c)     The Prime Landlord has executed his consent to this Sublease in order to evidence his acceptance and agreement to the foregoing provisions of this Paragraph 13.

14.     **FIRE.**  It is understood and agreed that if the Sublet Premises are damaged or destroyed in whole or in part by fire or other casualty during the term, Sublessor will repair and restore the same to good tenantable condition with reasonable dispatch, and the Rent herein provided for shall abate entirely in case the entire Sublet Premises are untenantable and pro rata for the portion rendered untenantable, in case a part only is untenantable, until the Sublet Premises are restored to a tenantable condition. If the Sublessee shall fail to adjust Sublessee's own insurance or to remove damaged goods, wares, equipment or property within a reasonable time, and as a result thereof the repairing and restoration is delayed, there shall be no abatement of rental during the period of such delay.  If Sublessee shall use any part of the Sublet Premises for storage during the period of repair a reasonable charge shall be made therefor against Sublessee.  In case the Sublet Premises, or the Demised Premises shall be destroyed to the extent of more than one-half of the value thereof, Sublessor shall have the option to terminate this Sublease by written notice to Sublessee.  In no event shall Sublessor be required to repair or replace Sublessee's merchandise, trade fixtures, leasehold improvements, business machines, equipment, freight or materials stored at the Sublet Premises.

15.     **INDEMNITY.**  Each of Sublessor and Sublessee (the "Indemnitor") shall hold the other and the Prime Landlord (the "Indemnitees") harmless from any damage to any property or injury to or death of any person arising in, on or upon the Demised Premises arising from the negligence or wrongful acts of the Indemnitor, its agents, contractors and/or employees (including in the case of, Sublessee, the negligence or wrongful acts of Nidec).  The foregoing indemnity obligations shall include reasonable attorneys' fees, investigation costs and other reasonable costs and expenses incurred by the Indemnitees from the first notice that any claim or demand is to be made or may be made.  The provisions of this Paragraph 15 shall survive the termination of this Sublease with respect to any damage, injury or death occurring prior to such termination.

16.     **DEFAULT AND REENTRY.**

(a)     If Sublessee shall be in default in performing any of the terms of this Sublease, Sublessor shall give Sublessee written notice of such default, and if Sublessee shall fail to cure such default within thirty (30) days after the receipt of such notice, or if the default is of such a character as to reasonably require more than thirty (30) days to cure, then if Sublessee shall fail, within said thirty (30) day period, to commence and thereafter proceed diligently to cure such default, then and in either of such events, Sublessor may (at its option and in addition to its other legal remedies) cure such default for the account of Sublessee, and any sum so expended by Sublessor plus interest shall be Rent for all purposes hereunder, and shall be paid by Sublessee with the next installment of Rent.

(b)     If any Rent referred to in Paragraph 16(a) hereof shall be due and unpaid or Sublessee shall be in default upon any of the other terms of this Sublease, and such default has not been cured after notice and within the time provided in Paragraph 16(a) hereof, then Sublessor, in addition to its other remedies, shall have the immediate right of re-entry.  Should Sublessor re-enter or take possession pursuant to legal proceedings or any notice provided for by law, Sublessor may terminate this Sublease and recover from Sublessee (or from the Escrow Funds) all amounts due Sublessor hereunder

17.    **QUIET ENJOYMENT.**  Sublessor covenants that Sublessee, on payment of all Rent due and performing all the covenants herein, shall and may peacefully and quietly have, hold and enjoy the Sublet Premises for the Term.

18.    **EXPENSES.**  The prevailing party in any lawsuit between Sublessor and Sublessee shall be reimbursed by the non-prevailing party for its reasonable attorneys' fees and costs.

19.    **REMEDIES NOT EXCLUSIVE.**  It is agreed that each and every of the rights, remedies and benefits provided by this Sublease shall be cumulative, and shall not be exclusive of any other of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law.

20.    **WAIVER.**  One or more waivers of any covenant or condition by Sublessor or Sublessee shall not be construed as a waiver of a further breach of the same covenant or condition.

21.    **NOTICES.**  Any notice which either party may or is required to give, shall be given by mailing the same, postage prepaid, to Sublessee at 4100 N. Atlantic Boulevard, Auburn Hills, Michigan 48326 or to Sublessor, at the Demised Premises with a copy to the Manager, Real Estate Services, 5825 Delphi Drive, MC 480-410-174, Troy, Michigan 48098 or at such other place as may be designated by the parties from time to time.

22.    **HAZARDOUS SUBSTANCES.**  Sublessee shall not use, store, or dispose of any hazardous substances upon the Demised Premises, except use and storage of such substances if they are customarily used in Sublessee's business, and such use and storage complies with all environmental laws and regulations. Hazardous substances means any hazardous waste, substance or toxic materials regulated under any federal or state environmental laws or local regulations or ordinances applicable to the property. Notwithstanding anything herein contained to the contrary, Sublessor acknowledges that Sublessee's operation of the Sublet Premises in accordance with its prior practices shall not violate the provisions of this Paragraph 22.

23.    **HOLDING OVER.**  It is hereby agreed that if Sublessee holds over after the termination of this Sublease or the date to exclude the respective portion from the Sublet Premises as described in Paragraph 1 (including any holdover occupancy by Nidec), with respect to any portion of the Sublet Premises, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary and Sublessee shall pay as Rent for such portion of the Sublet Premises at the rate of $.0417 per square foot per day plus $3,800 per day for each day until the date such portion of the Sublet Premises are delivered to Sublessor

24.    **SURRENDER.**  Upon surrender, Sublessee shall promptly deliver all keys for the Sublet Premises to Sublessor at the place then fixed for notice.  No surrender of the Sublet Premises by

Sublessee, nor delivery of the keys therefor to Sublessor, nor acceptance by Sublessor of such surrender of keys, shall operate or be construed as relieving Sublessee of any of its obligations hereunder.  This Sublease and the tenancy hereby created shall cease and terminate at the end of the original term hereof, and Sublessee hereby waives notice to move and agrees that Sublessor shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Sublet Premises from a tenant holding over to the same extent as if statutory notice were given.

All property, equipment, fixtures, and inventory including without limitation, all personal property, goods, improvements, fixtures and merchandise or any property owned or controlled by Sublessee left on the Demised Premises when Sublessee vacates shall be deemed to have been abandoned by Sublessee, and by such abandonment, Sublessee and any other person or corporation claiming through or under Sublessee, automatically relinquishes any right or interest therein and authorizes Sublessor to sell, dispose of, or destroy same. Sublessor shall have the exclusive right to retain all proceeds from any sale.  Sublessee shall be liable to Sublessor for any reasonable costs of removal of Sublessee's property.

**IN WITNESS WHEREOF,** the parties hereto have executed this Sublease as of the date set forth above.

|  | **SUBLESSOR:** | Delphi Automotive Systems LLC |
|---|---|---|

_____

Witness

By:    _____

Its:    _____

|  | **SUBLESSEE:** | Valeo Electrical Systems, Inc. |
|---|---|---|

_____

Witness

By:    _____

Its:    _____

7

The Prime Landlord hereby consents to the foregoing Sublease and specifically to the provisions of Paragraphs 13(a) and (b) of such Sublease.

The Metcalf Family Living Trust dated June 11, 1993

_____           By:    _____
Witness                                                                      , Trustee

DETROIT.2514621.2

8

# Exhibit E

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Escrow Agreement") made and entered into on April ___, 2007, among LAWYERS TITLE INSURANCE CORPORATION (the "Escrow Agent"), DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company ("Sublessor"), and VALEO ELECTRICAL SYSTEMS, INC., a Delaware corporation ("Sublessee"), is based upon the following:

A.       Sublessor and Sublessee entered into a Real Property Purchase Agreement, dated March 2, 2007 (the "Purchase Agreement"), with respect to the sale of real property that is located in the City of Auburn Hills, Oakland County, State of Michigan (the "State") (the "Property").

B.       Sublessor assigned its rights under the Purchase Agreement to Metcalf Family Trust ("Prime Landlord") pursuant to an Assignment and Assumption Agreement dated March 2, 2007. Sublessor and Prime Landlord executed a Lease Agreement for the Property dated March 2, 2007.

C.       Sublessor and Sublessee entered into a Sublease Agreement (the "Sublease") for Sublessee's post-closing occupancy of a portion of the Property (the "Premises").

D.       Pursuant to Paragraph 4 of the Sublease, Sublessor and Sublessee agreed to enter into an escrow agreement with Escrow Agent pursuant to which Sublessee will deposit with Escrow Agent an amount equal to Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00) representing the total rent payable by Sublessee during the term of the Sublease (as calculated based on a 360-day year) plus One Hundred Thousand Dollars ($100,000) (the "Sublease Escrow Funds").

E.       The Sublease Escrow Funds are to be disbursed for the payment of the Rent under the Sublease in accordance with this Escrow Agreement.

F.       Escrow Agent has agreed to receive, hold and return or release the Sublease Escrow Funds in the manner set forth in this Escrow Agreement.

1 of 8

NOW, THEREFORE, in consideration of the mutual promises, covenants, terms, and conditions contained in this Escrow Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Escrow Agreement agree as follows:

1.    <u>Defined Terms</u>.

(a)    Terms used in this Escrow Agreement with initial capital letters and not otherwise defined in this Escrow Agreement have the meaning ascribed to them in the Sublease.

(b)    Seller and Purchaser agree that the Sublease Escrow Funds are equal to Eight Hundred Eighty Thousand Two Hundred Fifty and 00/100 Dollars ($880,250.00). Such amount has been computed as if Tenant occupied the entire Premises for the full term for each respective portion thereof as provided in the Sublease; however, Sublessor and Sublessee acknowledge that Sublessee may vacate portions of the Premises prior to the expiration of the full term of the Sublease with respect thereto, in which event the portion of the Sublease Escrowed Funds applicable to the unused term will be returned to Sublessee as herein provided.

2.    <u>Appointment of Escrow Agent</u>.  Sublessor and Sublessee appoint Escrow Agent as their escrow agent for the purposes set forth in this Escrow Agreement, and Escrow Agent accepts such appointment.

3.    <u>Delivery of Post Closing Escrowed Funds</u>.   On the date of this Agreement, Sublessee has delivered to Escrow Agent the Sublease Escrow Funds.

4.    <u>Acceptance of Appointment by Escrow Agent</u>.  Escrow Agent confirms receipt of the Sublease Escrow Funds.  Escrow Agent agrees to hold the Sublease Escrow Funds in a federally-insured and interest-bearing account pursuant to the terms of this Escrow Agreement, with the interest earned thereon to be added to and become a part of the Sublease Escrow Funds. Escrow Agent agrees to hold and disburse the Sublease Escrow Funds and all accrued interest on the Sublease Escrow Funds in accordance with the terms and conditions of this Escrow Agreement.

5.    <u>Disposition of Sublease Escrow Funds</u>.  The Sublease Escrow Funds will be held and disbursed by Escrow Agent as follows:

(a)    The Escrow Agent will disburse the Escrow Funds to the Sublessor pursuant to the following schedule ("Disbursement Schedule"):

(i)    On the thirtieth (30th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(ii)    On the sixtieth (60th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(iii)    On the ninetieth (90th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(iv)    On the one hundred and twentieth (120th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, One Hundred Seventy-seven Thousand Two Hundred Fifty and 00/100 ($177,250.00).

(v)    On the one hundred and fiftieth (150th) day following the Commencement Date defined in the Sublease, the Escrow Agent shall disburse to Sublessor from the Sublease Escrow Funds, Seventy-one Thousand Two Hundred Fifty and 00/100 ($71,250.00).

All payments called for under the Sublease shall be made without setoff or deduction, at Sublessor's office or at such other address as Sublessor may designate subject to Sublessee's right to vacate portions of the Premises prior to the expiration of the term for that portion of the Premises as set forth in the Sublease.

(b)    If Sublessee vacates portions of the Premises prior to expiration of the term for that portion of the Premises as set forth in the Sublease, then at any time prior to the end of each respective period described above, Sublessee may provide Sublessor and the Escrow Agent a written notice ("Early Exit Notice") detailing (1) the reduction in the

number of rentable square feet of the Premises, (2) the date of the number of rentable square feet of the Premises occupied on a daily basis during the preceding rental period, (3) the rent payable therefor (at the rate of $.0417 per square feet per day) ("Revised Rental Amount") and (4) the adjusted "Disbursement Schedule" for the remainder of the Term of the Sublease.

(c)    Within ten (10) days after receipt of such Early Exit Notice, the Escrow Agent shall pay the Revised Rental Amount due pursuant to such notice to Sublessor.  If Sublessee fails to so provide such notice prior to the end of each period described above, the Escrow Agent shall pay the amount due Sublessor pursuant to the above disbursement of Sublease Escrow Funds.

(d)    If Sublessee holds over after the termination of the term of the Sublease or the date to exclude the respective portion from the Sublet Premises as described in Paragraph 1 of the Sublease with respect to any portion of the Sublet Premises, thereafter the tenancy shall be from month-to-month in the absence of a written agreement to the contrary, and then at any time prior to the end of each respective period described above or within ten (10) days after the end of a month of holdover tenancy, Sublessor may provide Sublessee and the Escrow Agent a written notice ("Holdover Notice") detailing (1) the number of rentable square feet of the Premises in which Sublessee held over on a daily basis during either the preceding rental period or preceding month, and (2) the rent payable therefor (a the rate of $0.0417 per square foot per day plus $3,800 per day) ("Holdover Amount").

(e)    Within ten (10) days after receipt of such Holdover Notice, the Escrow Agent shall pay the Holdover Amount (plus any amount owed pursuant to the Disbursement Schedule in Paragraph 5(a)).

(f)    Upon Sublessee's vacation of the entire Premises, Sublessee shall deliver a written notice to the Escrow Agent and Sublessor notifying them of Sublessee's vacation of the Premises.  Escrow Agent shall pay the rent due Sublessor for such period and the balance of the Sublease Escrow Funds, if any, shall be paid to Sublessee.

(g)    Notwithstanding the provisions of Paragraph 5(a), (b) and (c) hereof:

(i)    If the Escrow Agent has not received an Early Exit Notice from Sublessor or Holdover Notice from Sublessor with respect to any period, the Escrow Agent shall pay to Sublessor the amount for such period payable with respect to the period described in the Disbursement Schedule above.

(ii)    Notwithstanding such Early Exit Notice from Sublessee and payment of such Revised Rental Amount by the Escrow Agent or Holdover Notice for Sublessor and payment of such Holdover Amount by Escrow Agent, Sublessor shall have the right to contest Sublessee's Early Exit Notice and Sublessee shall have the right to contest Sublessor's Holdover Notice for any respective period (or month during a holdover period) by written notice to the other party and the Escrow Agent within ten (10) days after receipt of Sublessee's Early Exit Notice or Sublessor's Holdover Notice with respect to such period.  If Sublessor or Sublessee fail to so provide such notice within such ten (10) day period, the other party's notice shall be conclusive.  If Sublessor or Sublessee provides such notice in a timely manner, Sublessor and Sublessee shall use good faith efforts to resolve such matter and the Escrow Agent shall continue to hold the disputed amount as provided in Paragraph 6 hereof.  Any undisputed amount shall be released to Sublessor and Sublessee as provided in Paragraphs 5(a)-(f) hereof.

6.    <u>Limitation on Escrow Agent's Liability</u>.  Except for Escrow Agent's willful default or misconduct or negligence, Escrow Agent will have no liability under this Escrow Agreement as long as it performs its obligations under this Escrow Agreement in good faith.  In the event of a dispute as to the disposition of the Sublease Escrow Funds, Escrow Agent is authorized and directed to do either of the following (the determination of which will be made by Escrow Agent in its sole discretion): (i) file an interpleader action as provided by law, in which event Escrow Agent will be released from any further liability under this Escrow Agreement, or (ii) hold the Sublease Escrow Funds until Escrow Agent receives an order of a court of competent jurisdiction or written instructions from both Sublessor and Sublessee directing the disposition of the Sublease Escrow Funds.  Sublessor and Sublessee, jointly and severally, agree to reimburse Escrow Agent for any and all expenses, including reasonable attorneys' fees, which Escrow Agent may incur as a result of any legal proceedings affecting this Escrow Agreement or the performance of Escrow Agent's duties, provided that as between Sublessor and Sublessee, the non-prevailing party in any dispute between Sublessor and Sublessee that results in expenses being incurred by Escrow Agent under this Escrow Agreement will be responsible for such expenses.  Upon the performance of the services described above, Escrow Agent will be released and acquitted from any further liabilities concerning this Escrow Agreement, it being expressly understood that such liability in any event is limited by the terms and conditions set forth in this Escrow Agreement.

5 of 8

7.     <u>Notices</u>.   All notices or other communications provided for under this Escrow Agreement must be in writing and signed on behalf of the party that sends the notice or other communication.  Notices and other communications must be personally delivered, sent by certified or registered mail, return receipt requested, or sent by a reputable national overnight delivery service, and will be effective upon the earlier of receipt or refusal or failure to accept receipt if sent to the following addresses:

| | |
|---|---|
| If to Escrow Agent: | Land America/Lawyers Title Corporation<br>1050 Wilshire Drive<br>Troy, Michigan  48084<br>Attention:     Steve Nadolski |
| If to Sublessor: | Delphi Automotive Systems LLC<br>5825 Delphi Drive<br>MC:  480-410-174<br>Troy, Michigan  48098<br>Attention:     Jeffrey Beaudoen, Manager,<br>                    Real Estate Services |
| With a Copy to: | Delphi Automotive Systems<br>5725 Delphi Drive<br>MC:  483-400-603<br>Troy, Michigan  48098<br>Attention:     Deputy General Counsel<br>                    Transactional & Restructuring |
| If to Sublessee: | Valeo Electrical Systems, Inc.<br><u>4100 North Atlantic Boulevard</u><br><u>Auburn Hills, Michigan  48326</u><br>Attention:     Francoise Colpron<br>email:  francoise.colpron@valeo.com |
| With a Copy to: | Honigman Miller Schwartz and Cohn LLP<br>2290 First National Building<br>Detroit, Michigan  48226<br>Attention:     E. Todd Sable, Esq.<br>(313) 465-7549 (Fax)<br>(313) 465-7548 (Voice)<br>email: tsable@honigman.com |

 Each party may change its address from time to time by delivering notice to each of the other parties in any manner described above.

8.     <u>Applicable Law</u>.  This Agreement will be interpreted and enforced according to the laws of the State of Michigan.

9.      Counterparts.  This Escrow Agreement may be executed in counterparts, each of which will constitute an original although not fully executed, but all of which when taken together, will constitute but one agreement.  Delivery by facsimile of this Escrow Agreement or an executed counterpart of this Escrow Agreement will be deemed a good and valid execution and delivery of this Escrow Agreement.

10.     Entire Agreement.  This Escrow Agreement and the Sublease represent the entire understanding between the parties with respect to the subject matter of this Escrow Agreement, and all prior agreements and understandings between the parties with respect to the subject matter of this Escrow Agreement are merged in this Escrow Agreement.  Any amendment, modification, or waiver of any obligation under this Escrow Agreement must be in writing and signed by the parties that are to be bound by the applicable amendment, modification or waiver.

11.     Successors and Assigns.  This Escrow Agreement will be binding upon and inure to the benefit of the parties to this Escrow Agreement and their respective heirs, representatives, successors, and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the day and year first above written.

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By:_____

Its:     Authorized Signatory

VALEO ELECTRICAL SYSTEMS, INC.,
a Delaware corporation

By:_____

Its:_____

LAWYERS TITLE INSURANCE
CORPORATION

By:_____

Its:_____

DETROIT.2514618.2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
　　　In re                                    :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
　　　　　　　　　　　　Debtors.                :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363(b), 365(a), AND 365(d) AND
FED. R. BANKR. P. 6004 AND 6006 AUTHORIZING DEBTORS TO
(A) ENTER INTO AND ASSIGN PURCHASE AGREEMENT (B) ENTER INTO
LEASE AGREEMENT AND (C) REJECT CERTAIN UNEXPIRED
LEASES OF NONRESIDENTIAL REAL PROPERTY

("LEASE TRANSACTION ORDER")

　　　　　　Upon the motion, dated March 2, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (each, a "Debtor"), for an order under 11

U.S.C. §§ 363(b), 365(a), and 365(d) and Fed. R. Bankr. P. 6004 and 6006 authorizing,

but not directing, Delphi Automotive Systems LLC ("DAS LLC ") to (a) enter into an

agreement for the purchase and sale of certain real property (the "Purchase Agreement"),

(b) enter into certain other agreements which relate to the Purchase Agreement and the

transactions contemplated by the Purchase Agreement (collectively, the "Lease

Transaction"), including a lease agreement (the "Lease"), an agreement to assign the

Purchase Agreement (the "Assignment Agreement"), a sublease agreement (the

"Sublease"), and an escrow agreement (the "Escrow Agreement"), and (c) reject two

leases of nonresidential real property; and upon the record of the hearing held on the

Motion; and this Court having determined that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest;

and it appearing that proper and adequate notice of the Motion has been given and that no

other or further notice is necessary; and after due deliberation thereon, and sufficient

cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.        The Motion is GRANTED.

2.        DAS LLC is authorized, but not directed, to enter into and perform

under all of the agreements necessary to effectuate the Lease Transaction, including the

Purchase Agreement, the Lease, the Assignment Agreement, the Sublease, and the

Escrow Agreement, copies of which are attached to the Motion as Exhibits A, B, C, D,

and E, respectively.

3.        The Debtors are authorized to reject the Shelby Lease (as defined

in the Motion) and the Downers Grove Lease (as defined in the Motion).  The effective

date for the rejection of the Shelby Lease shall be September 30, 2007 and the effective

date for the rejection of the Downers Grove Lease shall be November 30, 2007,  provided,

however, that the Debtors may reject the Shelby Lease effective as of August 31, 2007

and the Downers Grove Lease effective as of October 31, 2007, in either case upon ten

days' prior written notice to the respective lessors of those premises.

4.        The rejection of the Shelby Lease and the Downers Grove Lease

shall otherwise be governed by the Order Under 11 U.S.C. §§ 365(a) and 554 and Fed. R.

Bankr. P. 6006 Approving Procedures For Rejecting Unexpired Real Property Leases and

Authorizing Debtors to Abandon Certain Furniture, Fixture, and Equipment (the "Lease

Rejection Procedures Order"), entered January 6, 2006 (Docket No. 1776).

2

5.      This Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.

6.      The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated:    New York, New York
          March __, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

**Hearing Date And Time: March 22, 2007 at 10:00 a.m.**
**Objection Deadline: March 15, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :
        In re                               :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 363(b), 365(a), AND 365(d) AND
FED. R. BANKR. P. 6004 AND 6006 AUTHORIZING DEBTORS TO (A) ENTER INTO
PURCHASE-LEASEBACK TRANSACTION AND (B) REJECT CERTAIN UNEXPIRED
LEASES OF NONRESIDENTIAL REAL PROPERTY

("LEASE TRANSACTION MOTION")

PLEASE TAKE NOTICE that on March 2, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed a Motion For Order Under 11 U.S.C. §§ 363(B), 365(A), and 365(D) and Fed. R. Bankr. P. 6004 and 6006 Authorizing Debtors to (A) Enter Into Purchase-Leaseback Transaction and (B) Reject Certain Unexpired Leases of Nonresidential Real Property (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on March 22, 2007 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 26, 2006 (the "Amended Eighth Supplemental Case Management Order") (Docket No. 5418), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly

2

to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be

served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General

Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West

Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425

Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the

agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of

Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022

(Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for the Official Committee of

Equity Security Holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza,

New York, New York 10004 (Att'n: Bonnie Steingart), and (vii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00**

**p.m. (Prevailing Eastern Time) on March 15, 2007** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Amended Eighth Supplemental Case Management Order will

be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely

filed and served in accordance with the procedures set forth herein and in the Seventh

Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the

Motion without further notice.

Dated:  New York, New York
      March 2, 2007

              SKADDEN, ARPS, SLATE, MEAGHER
               & FLOM LLP

              By: _/s/ John Wm. Butler, Jr._____
                John Wm. Butler, Jr. (JB 4711)
                John K. Lyons  (JL 4951)
                Ron E. Meisler (RM 3026)
              333 West Wacker Drive, Suite 2100
              Chicago, Illinois  60606
              (312) 407-0700

                - and -

              By: _/s/ Kayalyn A. Marafioti_____
                Kayalyn A. Marafioti (KM 9632)
                Thomas J. Matz (TM 5986)
               Four Times Square
              New York, New York 10036
              (212) 735-3000

              Attorneys for Delphi Corporation, et al.,
                Debtors and Debtors-in-Possession

# EXHIBIT K

Delphi Corporation
Special Party

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Cadence Innovation LLC Successor in Interest to Patent Holding Company | Dennis J Connolly Esq | Alston & Bird LLP | 1201 W Peachtree St | Atlanta | GA | 30309-3424 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/5/2007 2:26 PM
Cadence Special Party

# EXHIBIT L

Delphi Corporation
Special Parties

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| IAMAW District 10 | Marianne Goldstein Robbins | Previant, Goldberg, Uelmen, Gratz, Miller & | 1555 N. RiverCenter Drive Ste 202 | Milwaukee | WI | 53212 |
| IAMAW District 10 and Lodge 78 on behalf of the employees and retirees it represents | Marianne G Robbins Esq | Previant Goldberg Uelmen Gratz Miller & Brueggeman SC | 1555 N RiverCenter Dr Ste 202 | Milwaukee | WI | 53212 |
| IBEW Local 663 | Marianne Goldstein Robbins | Previant, Goldberg, Uelmen, Gratz, Miller & | 1555 N. RiverCenter Dr Ste 202 | Milwaukee | WI | 53212 |
| IBEW Local 663 on Behalf of the Employees and Retirees it Represents | Marianne G Robbins Esq | Previant Goldberg Uelmen Gratz Miller & Brueggman SC | 1555 N RiverCenter Dr Ste 202 | Milwaukee | WI | 53212 |
| International Union of Operating Engineers Local 101 S on behalf of employees and retirees it represents | Barbara S Mehlsack | Gorlick Kravitz & Listhaus PC | 17 State Street | New York | NY | 10004 |
| International Union of Operating Engineers Local 101 S on Behalf of Employees and Retirees it Represents | International Union of Operating Engineers | Attn Richard Griffin Gen Counsel | 1125 17th St NW | Washington | DC | 20036 |
| International Union of Operating Engineers Local 18 S on Behalf of Employees and Retirees it Represents | Barbara S Mehlsack Esq | Gorlick Kravitz & Listhaus P C | 17 State St | New York | NY | 10004 |
| International Union of Operating Engineers Local 18 S on Behalf of Employees and Retirees it Represents | International Union of Operating Engineers | Attn Richard Griffin Gen Counsel | 1125 17th St NW | Washington | DC | 20036 |
| International Union of Operating Engineers Local 832 S on Behalf of Employees and Retirees it Represents | Barbara S Mehlsack Esq | Gorlick Kravitz & Listhaus PC | 17 State St | New York | NY | 10004 |
| IUE-CWA/Delphi Corp. Joint Activities Center | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| IUOE | Barbara Mehlsack | Gorlick, Kravitz & Listhaus, P.C. | 17 State Street | New York | NY | 10004 |
| Local 1111 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 416 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 698 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 711 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 717 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 718 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 755 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Local 801 IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |
| Retirees of Delphi Corporation represented by IUE-CWA | Susan Jennik | Kennedy, Jennik & Murray, PC | 113 University Place | New York | NY | 10003 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                              Page 1 of 1

3/5/2007 2:32 PM
Retiree's Stipulation Special Parties

# EXHIBIT M

Delphi Corporation
Special Parties

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Inplay Technologies | Bob Brilon | Inplay Technologies | 234 S Extension Rd | Mesa | AZ | 85210 |
| Inplay Technologies | Richard Smolev | Kaye Scholer Llp | 425 Pk Ave | New York | NY | 10022 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/5/2007 2:29 PM
In Play Special Parties

# EXHIBIT N

Delphi Corporation
Special Party

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Erika S Parker Chapter 7 Trustee | Patricia B Fugee | Roetzel & Andress | One Seagate Ste 900 | Toledo | OH | 43604 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/5/2007 2:28 PM
Erika Parker Special Party

# EXHIBIT O

Delphi Corporation
Special Parties

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Inovise Medical Inc | Douglas Pahl | Perkins Coie | 1120 Nw Couch St Tenth Fl | Portland | OR | 97209 |
| Longacre Master Fund Inovise Medicl | Adam L Shiff | Kasowitz Benson Torres & Friedman | 1633 Broadway | New York | NY | 10019 |

# EXHIBIT P

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| 1401 Troy Associates Limited Partnership | Attn Douglas M Etkin | 200 Franklin Center | 29100 Northwestern Highway | Southfield | MI | 48034 |
| Coliers International | Attn H.L. Bing Heckman | 450 W Santa Clara St | | San Jose | CA | 95113 |
| Frank/Gecker LLP | Joseph D. Frank | 325 N LaSalle St Ste 625 | | Chicago | IL | 60601 |
| Grubb & Ellis | Attn Geoff Hill & Chris Dowell | 26555 Evergreen Rd Ste 500 | | Southfield | MI | 48076 |
| Honigman Miller Schwartz and Cohn LLP | 2290 First National Bldg | 660 Woodward Ave | | Detroit | MI | 48226 |
| Jones Lang Lasalle | Attn Scott H Miller | 200 E Randolph Dr | | Chicago | IL | 60601 |
| LaSalle National Bank as Trustee under Trust Agmt dated Oct 1 1990 | Attn Paul Gearan | c/o Nicolson Porter & List Inc | 1300 W Higgins | Park Ridge | IL | 60068 |
| Liberty Property Limited Partnership | | 26911 Northwestern Highway Ste 205 | | Southfield | MI | 48034 |
| Milwaukee Investment Company | c/o Signature Associates | Attn Property Management | One Towne Sq Ste 1200 | Southfield | MI | 48075 |
| Morgan Miller Blair | Christopher J Hunter | 1331 N California Blvd Ste 200 | | Walnut Creek | CA | 94596-4544 |
| Osprey SA Ltd | | 305 E Main St | | Brighton | MI | 48116 |
| The Metcalf Family Living Trust | Attn David Metcalf | 2920 Rohrer Dr | | Lafayette | CA | 94549 |
| Valeo Electrical Systems Inc | Attn Francoise Colpron | 3000 University | | Auburn Hills | MI | 48326-2356 |
| Wells Management Company | | 6200 The Corner Parkway Ste 250 | | Norcross | GA | 30092 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/5/2007 2:32 PM
Valeo special parties list