1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                November 30, 2006

                10:33 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2  HEARING re Motion to Compel Assumption or Rejection of

3  Unexpired Lease and for Payment and Performance of Post-

4  Petition Lease Obligations

5

6  HEARING re Motion to Compel

7

8  HEARING re Objection to Motion Notice of Objection to

9  Additional Extension of Deadline to Assume or Reject Unexpired

10  Lease of Nonresidential Real Property with Orix Warren, LLC

11

12  HEARING re Joint Motion to Amend Motion of Creditors/Interested

13  Parties to Modify October 13, 2005 Order and to Compel Delphi

14  Corporation to advance Legal Fees and Costs

15

16  HEARING re Joint Motion for Relief from Stay Motion for Limited

17  Relief from the Automatic Stay, to the Extent Applicable, to

18  Pay and/or Advance Defense Costs Under the Debtors' Insurance

19  Policies

20

21  HEARING re Objection to Claims

22

23  HEARING re Third Omnibus Objection to Claims

24

25  HEARING re Motion to Approve Motion for Order Pursuant to 11

3

1    U.S.C. Sections 502(b) and 502(c) and Federal Rules of

2    Bankruptcy Procedures 2002(m), 3007, 7016, 7026, 9006, 9007 and

3    9014 Establishing (I) Dates for Hearings Regarding Disallowance

4    or Estimation of Claims and (II) Certain Notices and Procedures

5    Governing Hearings Regarding Disallowance or Estimation of

6    Claims

7

8    HEARING re Motion to Compel Debtors to Submit Individual

9    Employee Matter to Impartial Medical Authority

10

11   HEARING re Motion to Authorize Motion for Order Under 11 U.S.C.

12   Section 363(b) and Federal Rules of Bankruptcy Procedures 6004

13   Authorizing Delphi Medical Systems Texas Corporation to Enter

14   into Amendment to Manufacturing Agreement Terminating Supply

15   Operations to its Sole Customer

16

17   HEARING re Motion for Order to Authorize Entry into Settlement

18   with the Securities and Exchange Commission

19

20   HEARING re Kilroy Realty, L.P.'s Objection to the Debtors'

21   Proposed Procedures Governing Hearings Regarding Disallowance

22   or Estimation of Claims

23

24   Transcribed by:  Esther Accardi

25

4

```
 1    A P P E A R A N C E S :

 2    A P P E A R A N C E S :

 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 4          Attorneys for Debtor

 5          333 West Wacker Drive

 6          Chicago, IL 60606

 7

 8    BY:   JOHN WM. BUTLER, JR.

 9

10    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

11          Attorneys for Debtor and

12          Debtors-in-Possession

13          Four Times Square

14          New York, NY 10036

15

16    BY:   KAYALYN A. MARAFIOTI, ESQ..

17          THOMAS J. MATZ, ESQ.

18

19    SHEARMAN & STERLING LLP

20          Attorneys for Debtor

21          599 Lexington Avenue

22          New York, NY 10022

23

24    BY:   DOUGLAS P. BARTNER, ESQ.

25
```

5

1

2   O'MELVENY & MEYERS

3        Attorneys for Debtor

4        7 Times Square

5        New York, NY 10036

6

7   BY:   JESSICA KASTIN, ESQ.

8

9   MEYER, SUOZZI, ENGLISH & KLEIN

10        Attorneys for Debtor

11        1350 Broadway

12        New York, NY 10018

13

14   BY:   LOWELL PETERSON, ESQ.

15

16   QUINN EMANUEL URQUHARDT OLIVER & HEDGES

17        Attorneys for Debtor

18        865 S. Figueroa Street

19        Los Angeles, CA 90017

20

21   BY:   MATEO FOWLER, ESQ.

22

23

24

25

6

1

2   MAYER, BROWN, ROWE & MAW LLP

3        Attorneys for Debtor

4        71 South Wacker Drive

5        Chicago, IL 60606

6

7   BY:   PAUL J.N. ROY, ESQ.

8

9   WILMER HALE, LLP

10        Attorneys for Debtor

11        1875 Pennsylvania Avenue, NW

12        Washington, DC 20006

13

14   BY:   ANDREW CURRIE, ESQ.

15        CAROLINE ROGUS, ESQ.

16

17   TISDALE & ASSOCIATES, LLC

18        Attorneys for NuTech Plastics Engineering

19        1600 Broadway

20        Suite 2600

21        Denver, CO 80202

22

23   BY:   STEVEN KLENDA, ESQ.

24

25

7

1

2   MASTROMARCO & JAHN, P.C.

3         Attorneys for H.E. Services Co. and Robert Backie

4         and Cindy Palmer, Personal Representative

5         of the Michael Palmer Estate

6         1024 North Michigan

7         Saginaw, MI 48805

8

9   BY:   VICTOR J. MASTROMARCO, JR., ESQ.

10

11  MORGAN, LEWIS & BOCKIUS, LLP

12        Attorneys for Hitachi Chemical

13        101 Park Avenue

14        New York, NY 10178

15

16  BY:   MENACHEM O. ZELMANOVITZ, ESQ.

17

18  OFFICE OF THE UNITED STATES TRUSTEES

19        33 Whitehall Street

20        21st Floor

21        New York, NY 10004

22

23  BY:   ALICIA M. LEONHARD, ESQ.

24        TRACY HOPE DAVIS, ESQ.

25

8

1    LATHAM & WATKINS

2         Attorneys for Creditors' Committee

3         885 Third Avenue

4         New York, NY 10022

5

6    BY:   MARK A. BROUDE, ESQ.

7         ROBERT J. ROSENBERG, ESQ.

8

9    WARNER STEVENS, LLP

10        Attorneys for Creditors' Committee

11        301 Commerce Street

12        Fort Worth, TX 76102

13

14   BY:   MICHAEL D. WARNER, ESQ.

15

16   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

17        Attorneys for the Equity Committee

18        One New York Plaza

19        New York, NY 10004

20

21   BY:   BONNIE STEINGART, ESQ.

22

23

24

25

9

```
1    HOWARD & HOWARD Attorneys, P.C.

2         39400 Woodward Avenue

3         Bloomfield Hills, MI 48304

4

5    BY:   LISA GRETCHKO, ESQ.

6

7    DAVID SHERBIN, ESQ.

8         Attorney for Debtor

9

10   DEBEVOISE & PLIMPTON

11        Attorneys for Rothschild

12        919 Third Avenue

13        New York, New York 10022

14

15   BY:   MAUREEN CRONIN, ESQ.

16

17   PEPPER HAMILTON LLP

18        Attorneys for Paul Fried

19        100 Renaissance Center

20        Detroit, MI

21

22   BY:   MATTHEW LUND, ESQ.

23

24

25
```

10

### P R O C E E D I N G S

1

2      THE COURT:  Please be seated.  Okay.  Delphi.

3      MR. BUTLER:  Your Honor, good morning.  Jack Butler,

4  Kayalyn Marafioti and our colleagues here on behalf of Delphi

5  Corporation for Delphi's thirteenth omnibus hearing.  Your

6  Honor, we have a filed a sixty-five page agenda for this

7  hearing.  And, with the Court's permission we would follow the

8  agenda order.

9      THE COURT:  Okay.  That's fine.

10      MR. BUTLER:  Your Honor, the first matters on the

11  agenda, matters 1 through 3, the KESP Motion of docket number

12  213.  The creditors' committee's STN motion of docket number

13  4718, the equity committee's ex parte motion to docket number

14  5229.  By agreement of the parties, both the emergence KESP and

15  the STN matters are being adjourned until the new year, the

16  January 11, 2007, hearing to allow continued framework

17  discussions.

18      THE COURT:  Okay.  The way the recording system works

19  is you have to turn your Blackberries off if you're near a

20  microphone because it sets off the wireless recording system,

21  gargles the transcript.  Okay.  You can go ahead.

22      MR. BUTLER:  Your Honor, I'd like to deal with

23  matters 4 through 7, which set forth the applications that were

24  scheduled to be adjourned until the new year.  And, matters 8

25  through 35 which are fee application matters that are scheduled

1    for hearing today.  The fee committee has filed two reports in

2    connection with the fee matters and following the filing of the

3    supplemental report there were discussions between some of the

4    lead professionals in this case and the fee committee.  And, it

5    became evident that the fee committee has certain supplemental

6    procedures that it would like to perform in connection with

7    those applications.  As one of the people involved in those

8    discussions, Your Honor, and while the fee committee obviously

9    operates independently from all the professionals in their

10   own -- as appointee of this Court, it was self-evident Your

11   Honor, to me, that those supplemental procedures are clearly in

12   the best interest of the estate.  So as the largest applicant

13   in terms of the number of fees sought in this hearing, we

14   certainly support the view of the fee committee, that those

15   supplemental procedures be undertaken.  And, have advised the

16   parties, prior to Your Honor taking the bench, that the fee

17   committee and the debtors are jointly requesting that these

18   hearings be adjourned until February 15th of 2007, that's the

19   February omnibus.  That will allow the fee committee to

20   directly communicate with each of the professionals on these

21   matters and to conduct the supplemental procedures that the fee

22   committee wants to undertake.  It is also, I think likely, Your

23   Honor that the fee committee will consult with counsel to the

24   equity committee, creditors' committee and debtors and possibly

25   submit, for Your Honor's consideration, a supplement to the

12

1   interim compensation procedures here to set out certain dates

2   and procedures to make it very clear what the expectations of

3   the committee are and what's necessary from a process

4   perspective in order to allow this procedure to move forward.

5   And, again, both our firm and Delphi Corporation, the debtors,

6   support that approach.  It is the recommendation for your

7   consideration, Your Honor, if you're agreeable to this

8   adjournment, that for any professional who is in agreement with

9   the fee committee, after the these supplemental procedures have

10  been performed, that an agreement with the recommendation of

11  the fee committee of the Court, they would not need to appear

12  at the February 15th hearing.  We'd only have people appear who

13  were not in agreement with the fee committee's recommendations

14  and would want to address the Court if that's acceptable to the

15  Court.

16           THE COURT:  Okay.  That's fine.

17           MR. BUTLER:  And, then Your Honor, the last piece of

18  this is what one does with holdbacks in this case.  There are

19  currently a ten percent holdback on the first and second fee

20  applications.  There is a twenty percent holdback on the third

21  fee application, which ran through September 30th.  That twenty

22  percent holdback is accruing on the fourth fee application

23  period, which covers the last three months of the year.  And,

24  so there are very significant dollars that have been held back

25  from the professionals and there have been various levels of

13

1    requests on how that might be addressed.  Our firm, by way of

2    example, had asked the fee committee to consider reducing the

3    amount of the holdback on the first and second fee application

4    from ten percent to five percent, and to reduce the amount of

5    the hold back on the third fee application from twenty percent

6    to ten percent as they had done for the first two fee

7    applications.  Other professionals have suggested that the

8    holdbacks be released all together.  The invested banks who

9    were before you because the nature of their engagement

10   agreements essentially provided that the majority of the fees

11   be paid at the end of the case, already believed they have a

12   major holdback, and they have a holdback from their monthlies

13   is something they believe is in some respects providing, from

14   their view, a double penalty, if you want to view it that way.

15   But a double holdback.  A holdback towards the end of the case

16   of their success fee and then a holdback on their monthlies.

17   The fee committee has expressed no view on this request and

18   makes no recommendation to the Court.  So this matter is at

19   issue in terms of what makes sense.

20            THE COURT:  I thought they said they thought there

21   should be a holdback.

22            MR. BUTLER:  They did in their papers.  They didn't

23   express a view on this request that I just described to you.

24            THE COURT:  Okay.

25            MR. BUTLER:  We spoke with them prior to the hearing.

14

1    I think I was told to say on the record they expressed no view.

2              THE COURT:  On the investment banker aspect of it.

3              MR. BUTLER:  On this request.

4              THE COURT:  Okay.

5              MR. BUTLER:  And, part of the issue, Your Honor, I

6    think here is it is November 30th, fiscal year ends are

7    approaching for all the professionals who have fiscal year ends

8    at the end of the calendar year.  And, while clearly whatever

9    the policies are that the Court wants to impose with respect to

10   holdbacks ought to take precedence here and ought to control,

11   there is a view that the amount of the holdbacks which is, all

12   tolled, something approaching between -- I don't know the exact

13   math, but its about ten million dollars on the first and second

14   fee apps and its about another ten million on the third fee

15   apps.  So it's about twenty million dollars so far and it's

16   accruing, it's probably close to thirty now, all tolled, that's

17   being held back.  And, the views have been expressed to the

18   debtors, is given the solvency of this estate, there's no real

19   question about the administrative solvency of this estate,

20   certainly that's been raised by any party.  And, given the

21   progress that has been made in the case, that some release

22   these holdbacks in connection with the fiscal year end would be

23   appropriate.  I know there are other professionals that want to

24   address that.  I believe I was authorized, on behalf of Delphi

25   Corporation --

15

1          THE COURT:  Well, I just procedurally have a

2     question.  If there's a request to adjourn the hearings, but

3     I'm still being asked to release the holdbacks?

4          MR. BUTLER:  You're being asked to address holdback

5     issues generally here, Your Honor, with respect by the

6     applicants.  The decision on the -- and that would be -- in the

7     context of a request for adjournment of the actual underlying

8     fee application hearing, taking up, I think, the issue in the

9     context of that adjournment, whether any review of the holdback

10    seems to me to be certainly within the Court's purview if it

11    chooses to address that.  Because by virtue of this adjournment

12    there will be another ninety-day delay in the consideration of

13    these particular fee application.

14         THE COURT:  Well, the procedures that you eluded to

15    that the fee committee wants to go through as well as --

16    someone else from the fee committee can answer this too.  As

17    well as the fact that the fee committee was still awaiting

18    responses to its recommendations from most of the law firms and

19    other professionals, is the area in dispute or in discussion,

20    one that I can assume is within a five percent holdback range

21    or a ten percent holdback range, or is greater than that in

22    some instances.  I mean, besides the solvency it's much harder,

23    psychologically and sometimes legally, to get money back from

24    someone than not.  And, I think as far as the holdback issue is

25    concerned, if there is a legitimate discussion going on with

16

```
 1   various firms about whether their fees should be reduced, and

 2   the amount at issue is in excess of five or ten percent, I

 3   think I should know about that.  Because that affects how I

 4   would consider the holdback issue.

 5           MR. SHERBIN:  Your Honor, David Sherbin, general

 6   counsel and chairman of the fee committee.  I think, the answer

 7   is that in no single case is the recommendation by the fee

 8   committee in excess of five percent for any profession.

 9           THE COURT:  Okay.  All right.  Thank you.

10           MR. BUTLER:  So, Your Honor, from the debtor's

11   perspective, what I was authorized to say on behalf of the

12   debtors, was to suggest that the third fee application, all the

13   applications that are all being filed today, which have twenty

14   percent holdbacks.  That while those were under consideration,

15   I think now in a March hearing, part of the relief that the fee

16   committee is asking to be approved would be in this interim

17   order that we send to you, the supplemental order, would be not

18   to have a fee hearing on that until next March.  Would be to

19   reduce the holdback by half from twenty percent to ten percent.

20           THE COURT:  I'm sorry, that's for what period?

21           MR. BUTLER:  The third fee application period.

22           THE COURT:  As well as going forward.

23           MR. BUTLER:  No.  The only recommendation from Delphi

24   Corporation is for the third fee application which is discreet

25   and those applications are being filed today.
```

17

1        THE COURT:  Okay.

2        MR. BUTLER:  To go from twenty percent to ten

3   percent.

4        THE COURT:  And, then there was a request from the

5   applicants, some of the applicants, including our firm,

6   frankly, that the holdback for the first and second fee

7   applications be reduced from ten percent to five percent.  And,

8   I also put on the record the request that the debtors have

9   received, with which the debtors agreed, with respect to the

10  investment banks who have their success fees paid at the end,

11  that they not be required to participate in the holdback on

12  their monthlies.

13       THE COURT:  Okay.

14       MR. BUTLER:  I think there are other professionals

15  who have different requests to make with respect to holdbacks.

16  And, I believe the U.S. Trustee has a statement they want to

17  make in connection with this as well.

18       THE COURT:  Okay.

19       MS. LEONHARD:  Good morning, Your Honor, Alicia

20  Leonhard for the United States Trustee.  First I'd like to say

21  on behalf of the U.S. Trustee, that the U.S. Trustee opposes

22  the release of any holdbacks.  Twenty percent holdback is

23  reasonable and fair and it's the policy of the Court, I

24  believe, and also the U.S. Trustee to support that kind of

25  holdback.  And, it is early in the case.  I think they are

18

1    making progress, but there are issues with respect to how the

2    case will end.  So, I believe that the twenty percent holdback

3    is viable, should be remained in place.  May I have one moment

4    to talk on behalf of the fee committee.  The fee committee has

5    authorized me to state that the fee committee looked at --

6    reviewed these applications, all of these applications and

7    looked at the criteria.  We established quantifiable criteria

8    to review these fee applications.  And, in listening to the

9    Court and heeding the Court's advice we used a reasonable

10   business approach.  However, we do need to supplement these --

11   as you can see from our report we do need to supplement our

12   procedures.  And, so in the spirit of cooperation and in the

13   exercise of our fiduciary duty to the estate, we agree to this

14   adjournment and to cooperate with the parties to create a

15   process that will be satisfactory to all of us.  We would also

16   welcome, you know, if the Court has any input with respect to

17   any meaningful enhancements.  But we will be working with

18   everybody on this issue and come back before the Court in

19   February.

20            THE COURT:  Okay.  Well, obviously I haven't heard

21   from the professionals.  Again, if you have a Blackberry on and

22   you're near a microphone, you should turn it off, because

23   that's why you're hearing that buzzing sound.  The first part

24   of your report has general recommendations, all of those made

25   eminent sense to me.  So subject to hearing some professionals

19

```
 1    say one of those doesn't for some reason, and it's hard for me
 2    to imagine how they would, all of those recommendations seem
 3    reasonable to me and would be something that, you know, a
 4    general counsel hiring a lawyer or an investment banker, as
 5    appropriate, when it would demand.  So I'm glad you laid those
 6    out, in case there's any issue about them, that's how I feel
 7    about them.
 8              MS. LEONHARD:  Yes, thank you, Your Honor.
 9              THE COURT:  Okay.
10              MS. LEONHARD:  Okay.  I have nothing further, Your
11    Honor, unless you have questions.
12              THE COURT:  Okay.
13              MS. LEONHARD:  I will state that the U.S. Trustee --
14    one more thing on behalf of the U.S. Trustee -- I'm sorry, I
15    keep switching hats this morning.  The U.S. Trustee has
16    reviewed these fee applications in her individual capacity
17    pursuant to her statutory duty under 28 U.S.C. Section 586, and
18    the U.S. Trustee will continue to review these fee applications
19    going forward and will most likely be filing statements and
20    objections of her own.
21              THE COURT:  Okay.
22              MS. LEONHARD:  From now on.  Thank you very much.
23              THE COURT:  Fine.
24              MR. ROSENBERG:  Your Honor, we are, of course, happy
25    to work with the fee committee to see whether the procedures
```

20

1    can and should be modified or approved in some way.  And, to

2    that extent, certainly do not object to an adjournment of the

3    first and second fee hearings until February.  However, Ms.

4    Leonhard and even Mr. Butler would put a very, very substantial

5    cost upon the professionals in doing that.  In some cases, Your

6    Honor, fees are heard reasonably shortly after the fee period.

7    That has not been the case here for whatever reason, nobody's

8    fault, it's huge, it's complicated, it took a long time to get

9    organized, it's still not quite organized, it needs

10   modification.  Understood, no problem, nobody's to blame for

11   that.  However, let's not lose sight of the fact that we are

12   talking about a hearing next February, year and a half into the

13   case, fee applications for the first seven and a half months of

14   the case.

15        THE COURT:  But in terms of their out of pocket

16   costs, and this is why I asked my question of Mr. Butler, all

17   of those issues are being heard now.  The only issue is on an

18   interim basis, whether someone would have to disgorge payments

19   that I decided they could receive on the holdback.

20        MR. ROSENBERG:  Yes.

21        THE COURT:  Of course, since there's interim fees

22   anyway, that issue hangs over what the professionals had until

23   the end of the case.

24        MR. ROSENBERG:  That's certainly correct, Your Honor.

25   And, actually, that supports my proposition, which is that

1    every one of these professionals are ongoing for the course of

2    the case.  And, therefore, to the extent that there are any

3    issues in retrospect with payments already approved, when

4    finally approved down the line, as of the moment we are

5    talking, even assuming that there is a hearing on the third fee

6    application in March.  We will be having seven months at that

7    juncture of additional holdbacks at twenty percent.  That's a

8    huge, huge holdback out of which to take.  You know, any

9    retribution, if you will, if retribution needs to be made.  You

10   don't need, and it's unfair to the professionals, given the

11   size of these cases and the length of delay here to hold back

12   from day one, even if there's a dispute in that first three

13   months.  There is so much holdback here just based upon the

14   delay of a minimum of eight months delay.  Twenty percent over

15   eight months, out of which to fix every conceivable problem.

16   That's just not fair to the professionals to have more than

17   that.  And, again, Your Honor, as I understand the law, the two

18   reasons for holdbacks are the potential of an estate being

19   administratively insolvent, inconceivable here and to goad the

20   professionals into acting quickly and efficiently.

21            THE COURT:  Well, it's also to make sure that there's

22   some reasonable -- no one likes to have professionals give the

23   money back.

24            MR. ROSENBERG:  I agree, Your Honor.  And, if we

25   we're talking about payment every three months and no leeway

22

1    you'd be right.  But that's what I'm trying to point out.

2              THE COURT:  Okay.

3              MR. ROSENBERG:  Even if the three period holdbacks

4    were paid in full, Your Honor would have eight months of

5    holdbacks, assuming there's no further delay in the process out

6    of which to worry about that issue.

7              THE COURT:  Okay.

8              MR. ROSENBERG:  Thank you.

9              MR. BUTLER:  Your Honor, if I could respond on behalf

10   of the estate.  Because I do want the record to be clear about

11   what Delphi's recommendations are as opposed to what Skadden's

12   may be or someone else's view may be.  Delphi Corporation

13   actually continues to agree with the views of the United States

14   Trustee, that there should be some continuing holdback with

15   respect to all of the fee applications until the end of the

16   case.  The question is what is reasonable under the

17   circumstances.  And, the two areas in which Delphi Corporation

18   and the related debtors make recommendations to the Court are,

19   that with respect to the third fee application, because it is

20   year end, because those applications cover periods ending

21   September 30th and those fee hearings won't occur until next

22   March.  The Delphi Corporation and related debtors would

23   recommend to the Court that the fees be cut -- the holdback be

24   reduced from twenty percent to ten percent.  Also with respect

25   to the investment banking, 327(a), 328(a) type of retentions,

23

1    Delphi Corporation would not oppose those professionals not

2    having to hold back their monthlies, given the fact their

3    success fees are paid at the end of the case.  And, that's the

4    extent of Delphi Corporations recommendations to the Court.

5    Sitting here now as an applicant, Skadden, we continue to

6    believe, in light of the fee committee statement that no

7    applicant is facing recommendations of more than a five percent

8    reduction in their fees for the first and second fee

9    application period.  And, given the fact that its year end, it

10   certainly would be nice and would not appear to prejudice the

11   estate if the holdbacks for the first and second fee

12   applications were reduced from ten percent to five percent.

13   And, that's the other perspective, Your Honor.

14             THE COURT:  Okay.  Anyone else?

15             MS. GRETCHKO:  Good mourning, Your Honor.  My name is

16   Lisa Gretchko from Howard & Howard Attorneys, PC in Bloomfield

17   Oak, Michigan.  My firm has the pleasure of being special

18   counsel to the debtors for their general intellectual property

19   work.  We do patent persecutions, mostly for steering devices.

20   We also handle trade and copyright matters.  Your Honor, I am

21   here on the holdback issue because I respectfully submit that

22   the holdback isn't appropriate when applied to my firm.  Let me

23   give you a general idea of the blended rate that we're giving

24   to the debtors.  On our first fee application the blended rate

25   was 266 dollars.  On the second fee application it dropped to

24

1    168 and on -- I'm sorry, the first fee application was 228, the

2    second fee application blended rate is 166 and on the third it

3    would drop to 148 dollars.

4            THE COURT:  Has you firm taken a rate reduction from

5    what it normally charges its clients.

6            MS. GRETCHKO:  When we are given a project by the

7    debtor we are told it has a not to exceed price.

8            THE COURT:  Is that different then what it normally

9    does with its clients.

10           MS. GRETCHKO:  It's our standard behavior with this

11   client, but the not to exceed price results in a rate reduction

12   for us.  That's number 1.  Number 2 is unlike other counsel in

13   a case we were not permitted to charge a retainer at the

14   beginning of the case.  I noticed that other firms, including

15   Mr. Butler's law firm, charged a very nice, quite significant

16   retainer, my firm had the antithesis of a retainer, we were

17   left with a 234 thousand dollar unpaid pre-petition claim,

18   which we've since sold at a discount.  When we got into this

19   case, Your Honor, we were never told of the duration of the

20   holdback into the conclusion of the cases.  And, respectfully,

21   Your Honor, that's too harsh, especially when we are delivering

22   services at such lien hourly billing rates.  And, let me put

23   that in perspective for you.  I've been practicing law -- I'm

24   52, I've been practicing since 1979, which is twenty-seven

25   years.  My current hourly billing rate is 325 dollars.  Based

25

1    on what I saw in the fee applications of others, the Skadden

2    law firm charges 325 dollars, actually a few dollars more, for

3    a lawyer who was admitted to practice earlier this year.  We

4    are providing the most efficient services, it's our pleasure to

5    do.  We are trying to help the debtor through the

6    reorganization process.  But, Your Honor, a twenty percent

7    holdback is harsh on us, there is no cushion in our hourly

8    rates to absorb a twenty percent holdback.  Our first fee

9    application was filed last April, months ago.  We're now filing

10   the third fee application, today, and we're talking about a

11   hearing in March.  That would be eleven months after the first

12   fee application was filed and a  year and a half into the case.

13   I echo Mr. Rosenberg's comments that -- especially in light of

14   Mr. Sherbin's comment, if the largest targeted amount won't

15   exceed five percent of any fee application then there's not

16   need to continue the rolling holdback.  And, I think that's the

17   gist of what Mr. Rosenberg was trying to say.  With respect to

18   my law firm, which frankly in my impression, should have been

19   able to come in as an ordinary course professional and the

20   debtors tried.  Mr. Butler's firm tried very hard to get us in

21   as an ordinary course professional.  But the U.S. Trustee set

22   the threshold quite low.  And, because the 500 thousand dollar

23   threshold ran again to the conclusion of the case, and no one

24   would know when that would be, we had no choice but to be

25   retained as 327(e) counsel.  But, Your Honor, it's harsh.  And,

1    I respectfully ask that as to my firm, that there be no

2    holdback imposed.  Mr. Butler was willing to step aside for the

3    investment bankers because they viewed it as a penalty.  Your

4    Honor, we are doing business as normal with Delphi, we're

5    giving them excellent service at outstandingly good rates.

6    And, its too harsh on us, we can't absorb a holdback and I ask

7    that it not be applied to our firm.  If the Court, in its

8    wisdom, decides that a holdback is still necessary for my firm

9    then I ask that it be the smallest possible amount for the

10   shortest possible duration.  I was here today, Your Honor,

11   prepared to argue the balance of our fee applications and

12   support them in total.  If you're going to adjourn that, I

13   suppose, I don't want to fight City Hall on that.  But

14   especially in light of that adjournment, Your Honor, I ask that

15   there be no holdback.  And, that all of the fees requested in

16   my first and second interim applications be allowed and paid at

17   this time.  And, that there also be no holdback applied to my

18   firm going forward.  Thank you very much, Your honor.

19          THE COURT:  Okay.  All right.  I'm sorry.

20          MS. CRONIN:  Thank you, Your Honor.  I'll be brief.

21   Maureen Cronin from Debevoise & Plimpton on behalf of

22   Rothschild Inc.  Mr. Butler, I think, has already advanced the

23   position of Rothschild that the twenty percent holdback should

24   not be applicable to Rothschild given the substantial --

25          THE COURT:  I'm convinced.  I'm convinced, you don't

27

1    need to convince me more.

2           MS. CRONIN:  Thank you very much.

3           THE COURT:  Thanks.  All right.  These are all

4    interim fee applications.  And, Mr. Rosenberg, I think, aptly

5    summarized the dynamics in connection with holdbacks in regard

6    to interim fee applications.  It is the one wrinkle in what

7    otherwise Congress determined to govern fees in bankruptcy

8    cases, which is that professionals should be compensated as

9    they would be outside of bankruptcy.  That is, the parties in

10   interest in this case, not only the U.S. Trustee and the debtor

11   and other parties of interest, but the fee committee, have the

12   right to look at fee applications as were a client of a

13   professional outside of bankruptcy, and as for the same level

14   of detail, the same type of performance and seek the same types

15   of discounts that are appropriate outside of bankruptcy.  And,

16   theoretically also be willing to pay the same types of

17   enhancements.  Because it's a collective process, professionals

18   have to describe their fees in detail and submit time records

19   in more detail than some clients require.  But they're

20   compensated for doing that.  And, ultimately, if the parties

21   don't object, the Court still reviews applications and will

22   object.  The wrinkle is that unlike most private engagements,

23   the professionals are not done and not through the review

24   process in respect to their fees until the end of the case.

25   And, what they have before then is interim compensation.  And,

28

```
 1    to protect the estate, and also to some extent the
 2    professional, it's common to have holdbacks during the case to
 3    the interim compensation.  Here I am not concerned.  And, I
 4    know many of you are not privy to this but many of you are.
 5    One of the reasons I'm not concerned is the number of
 6    conferences that I've held with various parties in interest in
 7    the case over the last few months.  I'm not concerned in light
 8    of that and the case generally that this case is veering off on
 9    a path that would require significant holdbacks percentage
10    wise, just because of the conduct of the case.  Nor am I
11    concerned that the case is administratively insolvent.  So
12    really my focus on the holdbacks goes to what would be a
13    reasonable deduction from fees knowing that fee applications
14    are not particularly heavily contested on an interim basis.
15    And, also knowing that the fee committee is still engaged in
16    its review of the negotiation process with the firms.  Mr.
17    Rosenberg is right, the fees that are held back here are in a
18    large amount.  And, that does, in some measure, given the
19    amount that might be at issue here, based on my own review as
20    well as the fee committee's review, present a hardship to
21    various firms.  So in light of all that, I will amend the prior
22    order entered in the case awarding previous interim
23    compensation and require that only five percent of that
24    previous awarded interim compensation be held back from the
25    professionals.  With regard to the current application, the one
```

29

1    that's being adjourned, the third period, I'll require -- the

2    debtors will be authorized under the existing fee order to pay

3    ten percent of the holdback to the professionals.  And, in both

4    respects that is subject to the following qualifications.

5    First, investment banks and other advisors, whose compensation

6    is primarily based on a success fee or a result fee that will

7    only occur in the future, need not have any further holdback

8    for the last three periods.  Secondly, with regard to this

9    period, the third period, any professional that has agreed with

10   the fee committee and has already made a reduction in their

11   requested fees, and I believe there were about three or four

12   listed -- two?  I'm sorry, for the first and second periods,

13   will not have any holdback as to those periods.  I hope that's

14   clear.  If anyone has any questions, I'll go over it again.

15            MR. BUTLER:  Your Honor, can I just play it back to

16   make sure I have it written down right for the order?

17            THE COURT:  Okay.

18            MR. BUTLER:  For the first and second fee

19   applications, the holdback will be reduced from ten percent to

20   five percent.  For the third fee application they would be

21   reduced from twenty percent to ten percent.  For the fourth

22   period, which we're still in the middle of and going forward,

23   it would remain at twenty percent until further order of the

24   Court.  With respect to anyone who settles with the fee

25   committee on filed applications, subject to the settlement they

30

```
 1    reach with the fee committee, the remaining holdback could be

 2    released.

 3              THE COURT:  As to the first three periods.

 4              MR. BUTLER:  As to the first three periods.  And,

 5    investments bankers, which I think are the only ones in this

 6    case it has to come back in its success fees, but anyone who

 7    has a 328 application, where the substantial amount of their

 8    fee is earned at the end of the case through that process, they

 9    would not be subject to the holdback requirement.

10              THE COURT:  As far as the first three periods.  The

11    fee order should remain in place for them on -- you know,

12    subject to quarterly applications.

13              MR. BUTLER:  I think I understand.

14              MS. LEONHARD:  Excuse me, Your Honor.  Alicia

15    Leonhard, for the U.S. Trustee.  To qualify that, the fee

16    committee came into agreement with several parties listed on

17    the report with respect to the first and second fee periods

18    only.

19              THE COURT:  Right.  But I'm saying, if you do agree

20    on the third before the adjournment, you should tell me and

21    that will affect my view on the holdback.

22              MS. LEONHARD:  Wonderful.  Thank you, Your Honor.

23              THE COURT:  Okay.

24              MR. BUTLER:  So as I understand it, as the fee

25    committee reaches settlements it can release the holdbacks
```

31

1    subject to this order if the fee committees settles.

2              THE COURT:  Yes, correct.

3              MR. BUTLER:  Got it.  I think I have it, Your Honor,

4    and we will submit an order to chambers.

5              THE COURT:  Okay.

6              MS. GRETCHKO:  Your Honor, may I ask one question?

7              THE COURT:  Yes.

8              MS. GRETCHKO:  I apologize.  Is there any time frame

9    for the fee committee to converse with counsel?  We would --

10             THE COURT:  Well, their report said that they sent

11   out proposals to everybody.

12             MS. GRETCHKO:  Well, we've heard nothing.

13             THE COURT:  Well, they'll pick up their phone.  I'm

14   sure they'll answer your call.

15             MR. BUTLER:  Thank you, Your Honor.  Can we just take

16   a break for those people who are here just for fee apps so they

17   can be excused?

18             THE COURT:  Yes.  Absolutely.  And, of course, just

19   to reiterate, if your fee application is unopposed you need not

20   attend the adjourned hearing.

21             MR. BUTLER:  Your Honor, we'll put that in the order

22   and the notice.

23             THE COURT:  Okay.  Was it just them, no one else on?

24   Is anyone else on the phone at this point or have you all hung

25   up.

32

 1          MR. TAGGERT:  I'm on the phone.  Lee Taggert from

 2     (indiscernible - due to static on phone line) in Bloomfield

 3     Oaks, Michigan.

 4          THE COURT:  So you're on the phone for a different

 5     matter?

 6          MR. TAGGERT:  No.  I was on for the fee application.

 7     Well, because of the audio quality we're going to turn off the

 8     phone.  Unless there's someone on who wants to participate in

 9     another hearing.

10          MS. RIVERAS:  Your Honor, Elizabeth Riveras for

11     (indiscernible - due to static on phone line) matters.

12          THE COURT:  Oh, there is.  Never mind then.

13          MR. MASTROMARCO:  Vincent Mastromarco, Your Honor.

14          THE COURT:  That's fine.  I just want to remind you

15     all to keep your phones, though, on mute unless you're going to

16     speak.  Okay.  Go ahead, Mr. Butler.

17          MR. BUTLER:  Your Honor, the next matter on the

18     agenda -- can we continue with the hearing please.  The next

19     matter on the agenda is matter number 36.  Your Honor, this is

20     Orix Warren LLC's objection to additional extension of

21     deadline.  I expect the non-residential properly release, is at

22     docket number 5178.  Essentially, Your Honor, when Your Honor

23     dealt with the 365(d)(4) deadline back last year, extended it

24     to June 7, 2007, pursuant to a motion we filed and we dealt

25     with last year, the Orix Warren landlord issue was dealt with

33

1    in an order that was entered at a hearing held just about a

2    year ago today.  And, they had the ability, unlike anyone else,

3    they had the ability to file an objection at a prescribed time

4    during 2006.  And, essentially bring 365(d)(4) back to the

5    Court as to their lease with the burden of proof being on the

6    debtors.  They filed that objection, that brought that matter

7    at issue today, for evidentiary hearing.  And, as we went

8    through the discovery process and other processes in preparing

9    for this hearing, including meet and confers with Orix Warren,

10   they have concluded that they did not want to proceed with that

11   evidentiary hearing.  And, instead were prepared to withdraw

12   their objection which they had done, and it's been noted on the

13   record.  And, they have agreed that the 365(d)(4) extension to

14   June 7, 2007, will be applicable to them subject to the

15   debtor's right to seek a further extension beyond that date,

16   and their right to move to shorten the deadline for cause where

17   they're going to have the burden.

18            THE COURT:  Okay.

19            MR. BUTLER:  And, Your Honor, we're going to submit

20   an order to chambers on that point.  Because when you read the

21   earlier order it's at least ambiguous as to whether or not once

22   they filed the objection it triggered the mechanism whether one

23   can untrigger that mechanism.

24            THE COURT:  Okay, that's fine.

25            MR. BUTLER:  We're going to submit an order to

34

1    clarify that.  That's matter number 36.  Matter number 37, Your

2    Honor, is Delphi Medical Systems Texas Corporation's motion to

3    deal with an amendment to a manufacturing agreement that would

4    terminate supply operations to a customer.  In fact, it's sole

5    customer.  And, this is docket number 5517.  Your Honor, this

6    deals with a 2005 agreement in which Delphi Medical Systems

7    Texas Corporation agreed that DMT, the debtor will be the sole

8    supplier to a particular customer.  The customer's name, by the

9    way, for the record, is Appalera Corporation, A-P-P-A-L-E-R-A.

10   And, that this was in many respects, worked out to deal with

11   that customers issues and to sort through a transition with

12   them.  And, as it turned out, the operations under that

13   arrangements since 2005, have not been profitable.  The company

14   has lost several million dollars per year, with respect to

15   that.  And, had concluded as part of its transformation work

16   that it needed to wind down that operation to provide for the

17   losses.  The customer, as happens in this business, when

18   they're the sole supplier and our sole customer in this

19   particular part of the operations, wanted to make sure that

20   this was done on an orderly basis.  And, agreed to provide

21   additional money to the company to induce us to go forward with

22   them for a period of time.  So what this amendment involves is

23   a transition agreement to facilitate the closure of the Texas

24   facility where these operations occur, and to assure a smooth

25   transition resourcing the products and services that we had

35

1  been providing.  Essentially, Your Honor, as the motion papers

2  indicate, there's a benefit of about 9.7 million dollars

3  through pricing increases, inventory liquidation and success

4  fee, and a reduction in operating losses.  There's arguably

5  additional benefits because if we rejected these arrangements

6  there would be a claim against the estate for a couple of

7  million dollars.

8          THE COURT:  Which is waived.

9          MR. BUTLER:  Which will be waived under this deal.

10  And, there will be some costs here, about 350 thousand dollars

11  in costs, including the payment of lease expenses and a net

12  severance expenses consistent with the company's ordinary

13  course policies.  In fact, I think, a little bit less generous

14  than our normal policies.  And, we have reviewed this matter, I

15  believe, with the creditors' committee.  No objections have

16  been filed by any party.  And, I'd like Your Honor's authority

17  to consummate this amendment.

18          THE COURT:  Okay.  Well, it's granted.  It's clearly

19  good business judgment and so you can submit that order at the

20  end of the hearing.

21          MR. BUTLER:  Thank you, Your Honor.  Your Honor, next

22  matter on the agenda is matter 38.  This is our SEC settlement

23  motion, found at docket number 5520.  The only response was a

24  statement not an objection from the official committee of

25  equity security holders at docket number 5749.  Your Honor, on

36

1    October 30th of this year, the United States District Court for

2    the Eastern District -- in the United States District Court,

3    for the Eastern District of Michigan, the Securities and

4    Exchange Commission commenced and simultaneously settled with

5    Delphi.  A lawsuit that alleged violations of federal security

6    laws relating to transactions that were the subject of Delphi's

7    June 2005 financial restatement.  On November 7th of this year,

8    the Honorable Abraham Cohen entered the final judgment as

9    Delphi Corporation.  The final judgment memorialized the

10   settlement with the SEC.  In the papers we filed today, and

11   including a proposed order for Your Honor's consideration,

12   we've attached a copy of that final judgment entered in the

13   district court which is subject to the approval of this Court.

14   Pursuant to the terms of Delphi's settlement with the SEC in

15   the final judgment Delphi agreed, without admitting or denying

16   any wrongdoing, to be enjoined from future violations of the

17   security laws under various provisions of those statutes.  I

18   also want to report to Your Honor, that you impart Delphi's

19   cooperation with the SEC throughout its investigation.  The SEC

20   did not seek civil monetary penalties against Delphi

21   Corporation in connection with the settlement of this

22   litigation.  It is important for us to outline to the Court, as

23   we have in our papers and to our stake holders, that there are

24   collateral implications resulting from consenting to the entry

25   of the final judgment in this case.  For example, Delphi would

37

1    be subject to contempt should it violate the terms of the

2    injunction.  Absent rendered a relief from the Securities and

3    Exchange commission, entry of the final judgment renders

4    inapplicable for a three-year period.  The protection to the

5    Safe Harbor for forward looking statements under the Federal

6    Securities laws and the SEC has not given any relief with

7    respect to that matter.  And, the final judgment may well have

8    the effect of requiring Delphi to meet more stringent

9    disclosure or other reporting obligations for the future

10   issuances of securities.  And, other matters are described in

11   our papers that we've filed.  Your Honor, this settlement is a

12   product of many, many, many hours.  First, investigation and

13   shared investigation with the Securities and Exchange

14   Commission, and independent counsel that were hired by Delphi

15   Corporation for the audit committee of the board of directors

16   who conducted this investigation.  And, then discussion and

17   negotations between the staff of the SEC and representatives of

18   the debtors, including the debtors including the debtor's audit

19   committee counsel Wilmer, Cutler, Pitrene & Hale, and Halendor

20   and members of the audit committee.  The audit committee

21   members by the virtue of our bylaws includes our lead director

22   as an beneficient member, and Mr. John Opie is in the courtroom

23   today.  I'd like him to stand and be introduced to you.  And,

24   he's our lead independent director.  And, he participated in

25   weekly calls on this matter for a very extended period of time

38

1    while this work was undertaken, and is intimately familiar with

2    both, the underlying investigation and with the settlement that

3    has been agreed to with the commission.  Your Honor, Delphi did

4    fully cooperate with the SEC throughout this investigation and

5    separately and is previously disclosed in public filings, the

6    debtors are cooperating with the Department of Justice in a

7    parallel investigation.  We are, Your Honor, as you would

8    expect us to be, pleased with this investigation by the SEC and

9    this controversy has been resolved and settled.  And, we

10   consider this settlement to be an important step in our

11   transformation process.  The debtors believe that this

12   settlement is reasonable and is in the best interest of their

13   estate and stake holders and request that this settlement be

14   approved and the form of the order, which we have reviewed, and

15   has been approved by staff of the SEC, be entered by Your

16   Honor.  Your Honor, I have Mr. Opie here for any testimony.  In

17   the absence of any objection of the proffer is necessary, but

18   he's here to answer any questions the Court may have and I know

19   the equity committee may want to address this.

20        MS. STEINGART:  Well, Your Honor, I think that the

21   statement speaks for itself.  We don't believe that any aspect

22   of the consent decree as it's drafted is -- this is Bonnie

23   Steingart on behalf of the equity committee.  So we don't think

24   that the consent decree in the forms that its been entered into

25   in any way impinges on the reservations that we thought

39

1    important to have on the record.  So it was a statement not an

2    objection.  And, as we also said, we are glad that the debtor

3    has resolved this and we support the debtor's entry into this

4    agreement.  Thank you.

5            THE COURT:  Okay.  I think, my only question is do

6    the debtors have in place procedures to deal with the

7    additional reporting and other requirements of this decree.

8            MR. BUTLER:  Your Honor, we do have work that's being

9    done by our audit committee and by the management of the

10   company on a regular basis.  We have Mr. Sherbin, who

11   identified himself to you not only as our general counsel, as

12   chairman as the fee committee, he's also the company's chief

13   compliance officer.  And, there is a series of compliance

14   procedures being put in place at the company.  The company

15   takes this issue very seriously.  And, it's obligations under

16   the consent decree very seriously.  And, expects to be able to

17   perform all of its obligations as we have worked them out with

18   the commission.

19           THE COURT:  Okay.  All right, as with the last motion

20   there was no objections.  And, that's understandable because

21   this is a settlement that's clearly in the best interest of the

22   debtors and is fair and equitable to the debtor's stakeholders.

23   So I'll approve it.

24           MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

25   next matter on the agenda is matter number 39.  This is a

40

1   motion of certain creditors and interested parties to modify a

2   first day order entered on October 13, 2005.  And, it compelled

3   Delphi Corporation to advance legal fees and costs.  It's got a

4   docket number 5354.  Objections have been filed both by the

5   equity committee and the debtors.  We'll cede the podium the

6   movant's counsel to present the motion and then to, I think,

7   Ms. Steingart on behalf of the equity committee to present

8   their objection.

9              MR. LUND:  Good morning, Your Honor.  Matthew Lund, I

10  am counsel for Paul Fried who is one of the movants and I'll be

11  the primary, if not the only speaker on behalf of all of the

12  movants today.  With limited exception of issues of common

13  interest.  As the Court's aware from the prior motion, and I'm

14  sure from other meetings, there has been a long investigation

15  by the SEC and the Department of Justice relating to Delphi's

16  financial reporting and accounting treatment for certain

17  transactions.  There has also been a number of class action

18  lawsuits.  All of these investigations and lawsuits relate to a

19  handful of transactions, some of which were the subject of

20  Delphi's restatement of its financial reports.  The movants

21  this morning are former employees and officers of Delphi that

22  have incurred substantial costs as a result of these

23  investigations and/or lawsuits.  And, prior to the filing of

24  the bankruptcy, Delphi, in accordance with its bylaws, was

25  advancing defense costs to these former employees.  The bylaws

41

1    required advancement of Delphi with the sole free condition

2    being the proffering of an undertaking by the employees and

3    former employees, which was done.  When the bankruptcy was

4    filed the advancement ceased, immediately as to many of the

5    movants and eventually as to all of the movants.  In the first

6    day motions that Delphi filed, one of the motions sought this

7    Court's authority to advance defense costs to a pool of current

8    and former employees.  Fifty employees, nineteen of which at

9    the time, were former employees. And, as to the current

10   employees, Delphi sought restrictions on --

11            THE COURT:  I'm sorry, apparently somebody has a very

12   powerful Blackberry.  You're sitting away from the microphone.

13   I'm going to have to ask you all to turn them off.  I know

14   that's like taking away an oxygen supply, but it's wreaking

15   havoc with the microphone.  Sorry.

16            MR. LUND:  As to the then current employees, the

17   request for advancement in the first day motion didn't impose

18   any restrictions.  The request as to the then, former

19   employees, sought the Court's permission to advance, subject to

20   a discretion by Delphi, on a case-by-case basis as to whom it

21   will and will not advance fees to, which is contrary to

22   Delphi's bylaws and subject to a five million dollar cap, which

23   is also not a part of the bylaws.  This request was granted in

24   the Human Capital Obligations order and the Court gave Delphi

25   this authority and discretion.  And, subsequent with that

42

```
 1    discretion, Delphi declined to advance these to those employees
 2    that were alleged to have played a role in the transactions
 3    that are the subject of the governmental investigations and
 4    Delphi's restatement.  And, the thrust of our motion today,
 5    Your Honor, is to ask that the Human Capital Obligations order
 6    be modified to require Delphi to advance fees in a manner that
 7    is done under a proper and fair framework that is the bylaws,
 8    and a manner that does not favor some employees at the expense
 9    of others.  Let me make one point clear, having read the two
10    objections that were filed.  We are not contending that our
11    pre-petition right to advancement survived the automatic stay.
12    Both objections went to some lengths to make that point and
13    that is not the premise of our motion.  What we're saying is
14    that the authority that this Court granted in the Human Capital
15    Obligations order post-petition should have been granted and
16    should be exercised in a manner that is, first of all, fair and
17    a manner that treats likely situated creditors alike, and a
18    manner that is consistent with the bylaws.  And, as I've said,
19    the only prerequisite to advancement under the bylaws pre-
20    petition and post-petition is the proffering of an undertaking
21    which has been done.  There, as I said, there was a framework
22    in place and that is the bylaws, the bylaws survived the
23    petition, and unchanged substantively as pertinent to this
24    motion.  The bylaws were drafted in favor of the strong public
25    policy favoring advancement.  It is not consistent with that
```

43

1    strong public policy to give the company unfettered discretion

2    to make judgments about former employees that favor some and

3    disfavor others.   Let me make a very brief word about our

4    constitutional argument that we set forth with regard to the

5    Stein case from earlier this year.   This discretion that was

6    granted by the Human Capital Obligations order to pick and

7    choose necessarily exposed, or at least exposed Delphi to

8    pressures to decline advancement to certain employees as a

9    means of showing cooperation with the investigative

10   governmental agencies.   And, this is a circumstance that has

11   been held in this district in the Stein case to infringe on any

12   individuals to process rights.   I read Mr. Opie's declaration,

13   and do I have evidence that statements were made by the

14   government to pressure Delphi to cut these employees off, no I

15   don't.   I read it, I take him at his word, but I'd ask you to

16   consider the strong, I guess, circumstantial evidence of the

17   exposure here that could not be ignored by the compensation

18   committee in making these decisions.   Both Mr. Opie's

19   declaration and the letter we appended as Exhibit E to our

20   papers clearly states that the employees that were cut off were

21   the employees that played a role in the transactions at issue.

22   And, the subsequent employees that were cut off were those that

23   received wells notices.   Delphi subsequently has settled with

24   the SEC without any monetary penalty and has publicly stated

25   its commitment to cooperate.   As Judge Kaplan said, there are a

44

1   few defense lawyers that would freely advise a corporation at

2   risk of indictment to feel free to advance.  And, whether or

3   not, there were constitutional implications here, my motion

4   doesn't rise or fall on that.  At the end of the day what we're

5   asking is simply that the advancement going forward, pursuant

6   to this post-petition order, be done in a fair and equitable

7   manner.  And, before I sit down there are two arguments that

8   were made by the equity security holders that I want to

9   address.  One relates to individual movant, Laura Marian,

10  arguing that the doctrine of unclean hands bars advancement to

11  her because of her settlement with the SEC.  I don't represent

12  Ms. Marian, but I think if the Court looks at the first page of

13  the settlement document that was appended to the papers, the

14  first page says it's a neither admit nor deny.  And, a neither

15  admit nor deny is certainly not a showing of unclean hands.

16  And, then in the last objection that the equity security

17  holders make is the idea of indemnification is contingent and

18  should be disallowed as a contingent playing because there's a

19  good faith finding that is required.  And, that objection is

20  easily resolved because it just confuses the concept of

21  indemnification with advancement.  The bylaws and Delaware law

22  are clear that decisions about good faith that impact

23  indemnification are made at the indemnification stage and not

24  at the advancement stage, advancement is mandatory.  So Judge,

25  we're not asking for any special survival of a pre-petition

45

1   right, all we're asking that the prior order be modified to

2   lift the cap that is not part of the bylaws and to require

3   Delphi to advance these, consistent with its bylaws, which

4   requires only the proffering of an undertaking and that full

5   advancement be given to these former employees who relied on

6   this right.

7           THE COURT:  All right.  These employees didn't incur

8   these costs in connection with criminal indictment or criminal

9   defense.

10          MR. LUND:  There has not been any indictment to date.

11          THE COURT:  Okay.

12          MR. LUND:  It's a criminal investigation of Delphi.

13          THE COURT:  So it's not really a 6th Amendment.  When

14  you say constitutional issue, it's not a 6th Amendment issue.

15          MR. LUND:  Right.  But in Stein they addressed the

16  5th Amendment and the 6th Amendment and I've put in our --

17          THE COURT:  But in Stein it was a criminal

18  investigation, wasn't there?

19          MR. LUND:  But before any indictments were issued, I

20  believe, is when the alleged wrongdoing with regard to the

21  pressure to cooperate was imposed.  And, that was found to be a

22  violation of their 5th Amendment rights to due process.  Their

23  criminality was the dispositive issue here.

24          THE COURT:  Okay.  All right.

25          MR. LUND:  Thank you.

46

1          THE COURT:  Ms. Steingart, I read your papers and

2     they were fine.  I don't think you need to add anything.  Okay.

3     Same with the debtors.  I'm going to deny this motion which

4     seeks amendment of a order entered earlier in this case which

5     gave the debtors authority, and the exercise of their

6     reasonable business judgment to indemnify, and not only

7     indemnify, but pay, more appropriately under indemnification

8     agreements up to five million dollars to officers and directors

9     covered by pre-petition indemnification agreements.  The

10    movants are all former employees, officers or directors of

11    Delphi.  And, they acknowledge as they must, and as is

12    appropriate, that their claim under the pre-petition indemnity

13    is a pre-petition claim notwithstanding that their right

14    accrued in, at least, in this case in terms of the amount

15    they're seeking post-petition.  And, that's very clear in the

16    case law and, I believe, in the statute as well, and they don't

17    dispute that.  The basis for their motion is that it is unfair

18    to give the debtor discretion to pay under its indemnification

19    policy to current employees, officers and directors when it is

20    not uniformly paying under that policy that is not paying the

21    officers, directors and employees who are no longer employed by

22    the debtor.  They assert that there is a strong public policy

23    that supports indemnity agreements which I cannot deny.

24    However, there's a strong public policy in support of being

25    debts, as well, all debts and bankruptcy changes that policy.

47

1    And, the case law is very clear as to the very limited basis

2    for paying a pre-petition claim or debt before the conclusion

3    of a Chapter 11 case pursuant to a Chapter 11 plan.  To meet

4    that very high burden, a debtor must show a net benefit to its

5    post petition estate and creditors.  And, if it is solvent,

6    it's shareholders, in making the post-petition payment of a

7    pre-petition debt before a plan.  Here, the debtor established

8    a basis for showing that benefit in that it's current

9    employees, officers and directors, are providing it a benefit

10   post-petition.  And, consequently, the debtor has determined in

11   exercising its judgment, that there's a net benefit to its

12   estate and creditors in performing the pre-petition indemnity

13   agreement as to those particular individuals essentially in

14   return for having them to continue to function on behalf of the

15   debtor.  That benefit would not exist to the estate with

16   respect to payments on behalf of the officers and directors and

17   employees who are no longer working for the debtor.  So there

18   is a valid and reasonable basis for the distinction that the

19   order that these individuals seek to amend being carried out

20   the way it has been by the debtors.  The debtors, therefore,

21   are acting in accordance with their duties and obligations not

22   only under the order but under the bankruptcy code.  As far as

23   the due process argument that is made, the Supreme Court has

24   long recognized that bankruptcy generally may affect property

25   rights, including the right to collect on an unsecured claim.

48

 1   And, indeed, affects property rights in collateral as well to a

 2   significant extent properly.  Given the absence of any proof of

 3   any effect on 6th Amendment rights or, indeed, any pressure at

 4   all in respect of an imposition by the government on Delphi to

 5   withhold payment on an indemnity which Delphi would be

 6   obligated to withhold anyway under the bankruptcy law, I don't

 7   find that there's merit in the due process aspect of the motion

 8   either.  So, Mr. Butler, you can submit an order denying the

 9   motion for the reasons stated.

10          MR. BUTLER:  Your Honor, thank you.  If I could

11   address the Court, briefly, on one element of the Court's

12   ruling?  Just so the record's clear.

13             There are actually, in the first day order, there

14   were two elements -- two classes of parties -- that we had the

15   authority but not the direction to pay.  One was the one Your

16   Honor addressed in your ruling, which was the group of current

17   officers and directors for which there was no cap.  And the

18   second class was the ability to -- with respect to certain

19   former officers and directors -- to pay up to five million

20   dollars providing the compensation committee made an analysis

21   on a case-by-case basis that there was a legitimate post-

22   petition interest of the estate to be --

23          THE COURT:  Has the debtor made any of those

24   payments?

25          MR. BUTLER:  We have made some of those payments.

49

1         THE COURT:  All right.  But it was after that type of

2    analysis where there was a genuine benefit.

3         MR. BUTLER:  Right.  And that's what Mr. Opi's

4    discussion went to -- what we talked about here in terms of --

5    me and Mr. Opi -- that the description of what we tried to

6    accomplish here, that's what actually occurred.

7         We have, in fact, gone through that determination and

8    our view is -- and what we disagree with counsel is -- we don't

9    believe, having had that discretionary authority, that that

10   obligated us to pay anyone who might have a claim under our

11   bylaws or under Delaware State law.  That's a pre-petition

12   claim, as Your Honor pointed out, in its Court's ruling.

13        But with respect to this pool for the pre-petition

14   folks -- or excuse me -- the former officers and directors --

15   the analysis we went through is whether those folks were

16   cooperating with the company and whether they were viewed in

17   the decision of the audit committee and the compensation

18   committee to be, you know, so-called innocents -- meaning

19   people that were asked to testify but had not participated

20   directly in the issues that underlie the investigations.  So

21   people who were asked to leave the company or people who got

22   Wells notices or people who took the fifth amendment, which can

23   be viewed in a civil manner with the implications of that as

24   non-cooperation.  Those kinds of things.

25        The company made those decisions.  The comp committee

50

1   acted on recommendations from Mr. Sherman and Mr. Kapilian, the

2   general counsel and the deputy general counsel for litigation

3   of the company.  And I personally attended a number of those

4   compensation committee meetings.  There was a careful analysis

5   done and those decisions were communicated to the former

6   employees because the view was, as fiduciaries of the estate,

7   we believe -- I think consistent with some of the comments made

8   in the equity committee objection -- we believed that we had no

9   business dealing with the claims of former officers and

10  directors prior to the claims administration process except

11  where we thought that there was a benefit to the estate.  And

12  we made those determinations.  I just want the record to be

13  clear on that because there were --

14          THE COURT:  Okay.  But, again, the order required you

15  to make a determination as to a net benefit to the estate --

16          MR. BUTLER:  Correct.

17          THE COURT:  -- and that the objection seeks to

18  overturn that aspect of the order which, in my view, is the

19  critical aspect of the order and the only basis that would

20  allow payment of a pre-petition claim.

21          MR. BUTLER:  I just wanted the record to be clear.

22          THE COURT:  Okay.

23          MR. BUTLER:  And we will, Your Honor, draft the

24  appropriate orders and submit to chamber and that can be

25  circulated to the counsel.

51

1              THE COURT:  Okay.

2              MR. BUTLER:  Your Honor, the next matter on the

3    agenda is really a companion motion filed by the same

4    movants -- plus a couple of additional movants -- to now compel

5    the debtors to deal with the advancement of defense costs under

6    the debtor's insurance policies.  This is filed at docket No.

7    5360.  Again you have the movant's motion.

8              Here you have three objections.  You have the

9    objection of the equity committee, the objection of the lead

10   plaintiffs in the multi-district litigation and the debtor's

11   limited objection.  And here we would propose to have the

12   movants go forward and there is, as to the objectors, a

13   difference of view.

14             The equity committee has what I'll call a straight up

15   objection which Steingart will want to present to Your Honor.

16   And the lead plaintiff's objection's been resolved by the

17   debtors in a more modified response that we have proposed.

18   Clearly stated from -- just two seconds for the company's

19   perspective as you think about these arguments, Your Honor.

20   The debtor's believe that there is quantifiable property

21   interest -- an identifiable property interest -- in these

22   policies that are the estate's interest.  We do not believe

23   that the Court has to make any decisions about that today.  And

24   we believe that there is a limited amount of relief that can be

25   given here, at this point in time, that would be prudent and

52

1    has been done in other cases.  We were able to obtain the

2    support of the lead plaintiffs with respect to that --

3              THE COURT:  Well, what's the resolution there?

4              MR. BUTLER:  The resolution there, basically, is they

5    have -- so long as Your Honor doesn't make a final

6    determination today or a determination today on the property

7    interest -- defers that to another day, which we think makes

8    perfect sense -- they support the debtor's form of order.

9              THE COURT:  So it's one of these -- to the extent the

10   stay applies --

11             MR. BUTLER:  Exactly.

12             THE COURT:  -- and if it doesn't apply then 105 would

13   apply.  Okay.

14             MR. BUTLER:  And it provides the five million dollars

15   cap, the review period, all the things that were in there.  So

16   from our perspective, Your Honor, what it does is provide

17   parties who have -- under the insurance policies -- have an

18   endorsement that gives them a priority of payment.  And there

19   have been waivers under the policy in terms of some of the

20   other provisions that have been amended over time.  But there

21   are property interests because there is -- as we pointed out in

22   our papers -- the fiduciary policy and the other policy do have

23   linkages.

24             So there are property interests here but they don't

25   rise to the level, in our view, that former officers and

53

1    directors who have, as beneficiaries, a right of payment and a

2    priority of payment, that they should be stopped from going to

3    the insurance companies.

4         As I understand it, it's the insurance companies that

5    are demanding this order -- not necessarily the movants.  And

6    so that's why we spent time with the lead plaintiffs to try to

7    figure it out because, at the end of the day, for that multi-

8    district litigation to go forward and ultimately have a chance

9    of settlement -- which is in the interest of the estate, by the

10   way -- the lead plaintiffs, you know, have to have somebody to

11   talk to and they have to have counsel representing people, to

12   be able to work those things out.

13        THE COURT:  What is the amount of these policies?

14        MR. BUTLER:  The amount is -- the total of 200

15   million dollars -- 100 million dollars of what's called side A

16   and B coverage and 100 million dollars of A coverage on top of

17   the tower which I can describe when I speak a little bit later.

18   But I wanted to just give Your Honor some sense of --

19        THE COURT:  And payments to date?  I mean that's the

20   total but is that all left?

21        MR. BUTLER:  I don't believe -- and I'll just double

22   check -- I don't think there have been any payments by the

23   insurance company to anybody as we speak here today.  And this

24   relief that at least the debtors are proposing -- you know, the

25   movants don't agree with it, necessarily -- but that we're

54

1    proposing -- would authorize up to five million be paid without

2    having to come back here and talk through this all again.

3          THE COURT:  And payments that have been made by the

4    debtors that they contended they could then --

5          MR. BUTLER:  Your Honor, we had a deductible we have

6    to satisfy.  One of the issues that we are still working out

7    with the insurers is whether the payments we have made over

8    time cover our deductibles.

9          I mean there's a bunch of other, sort of, collateral

10   issues here that could cloud this up.  But from our

11   perspective, you know, Your Honor has just ruled that these

12   movants cannot recover -- at least now -- from the estate.  We

13   believe that was the right ruling.  We thought it was the

14   appropriate relief from our post-petition to say that they

15   can't also recover from an insurance policy that was negotiated

16   for their benefit where they are the -- had the priority of

17   payment -- seemed to us to not make a great deal of sense and

18   we wanted to, sort of, from the debtor's post-petition to

19   try -- between the lead plaintiffs and the movants and the

20   company -- to try to get something on an interim basis that

21   made sense that didn't cross into extended litigation of what's

22   proper to the estate.

23          Because when we go through our plan of reorganization

24   and discussions there is going to be a discussion and it's

25   going to involve the statutory committees, the lead plaintiff,

1   their clients and us -- about this whole subject matter.  You

2   know, what the claims are, how they're going to be addressed,

3   how they'll be addressed under a plan, how the insurer's going

4   to participate.  That discussion has to occur.  That is not a

5   today discussion.  And people need to be represented to be able

6   to move the MDL litigation into a place that that discussion

7   can occur -- from the debtor's post-petition.

8            THE COURT:  Okay.

9            MR. BUTLER:  And so that's why we've proposed what we

10  have.  But in terms of the order of claimants -- it's movants

11  first and then the equity committee who has independent

12  concerns and then I'll address the resolution between the lead

13  plaintiffs and the debtors.

14           THE COURT:  Okay.

15           MR. STERN:  Good morning, Your Honor.

16           THE COURT:  Good morning.

17           MR. STERN:  My name is Robert Stern.  I'm with the

18  law firm of O'Melveny & Myers.  I represent Alan Dawes, the

19  former CFO as well as a collection of former directors,

20  officers and employees.  It is slightly broader than the

21  collection that moved on the prior motion.

22           With respect to what Mr. Butler just said, there's

23  much that we agree about.  We agree on a general matter that

24  the Court can provide us the relief we need today without

25  resolving the question of whether the proceeds under two

56

1    policies that were purchased by the debtor pre-petition -- a

2    director and officer policy and a fiduciary policy -- are in

3    fact property of the estate or whether they are not property of

4    the estate, subject to the stay.

5           As a practical matter, that threshold question really

6    does divide, though, into two distinct issues which is: 1) Are

7    the policies property of the estate? But, 2) Are the proceeds

8    property of the estate?  And, as Mr. Butler articulately

9    indicated just before, the proceeds of those insurance policies

10   were purchased for the benefit of the directors and officers of

11   Delphi as well as the employees, under the terms of that

12   policy.

13          And, frankly, there's an extensive procedure set

14   forth in those policies governing how the property interests

15   are to be dispersed and how the property interests are to be

16   distributed.  It's our position that there is no reason for the

17   bankruptcy court to burden itself with that process and to get

18   involved in that because there is a mechanism that's set forth

19   under the terms of the property and it's well established law

20   that where there is a process and where the terms of the

21   property or contract are in place, the bankruptcy court should

22   defer to that.  And that's the case here.

23          But I will argue, very briefly, the question of

24   whether these property interests are rightly property of the

25   estate because we think it's pretty clear here they are not.

57

1   Under the terms of this particular insurance policy, as Mr.

2   Butler indicated, whatever interests the debtor has, it's

3   subordinate to the right of the insurers.  There's an expressed

4   priority of payments provision that indicates any non-

5   indemnified claims -- such as those of my client-- are to be

6   paid first.  And only after the rights and claims of non-

7   indemnified parties are paid can the estate seek payment for

8   any claims that it has indemnified under side B coverage.

9           As the consequence of that, whatever rights the

10  debtor has to those insurance policies are residual and

11  contingent and may never come to fruition because of the

12  practical matter it's very likely that between the defense

13  costs -- fees and costs that are going to be incurred and

14  settlement amounts by the former officers, directors and

15  employees of Delphi.  And by that I am not limited to the

16  movants today.

17          We're not asking for special treatment.  We're not

18  asking this Court to treat us any differently than any other

19  insured under the policy whose claims are not indemnified by

20  the estate.  When the claims of all those non-indemnified

21  parties are ultimately paid out of the policies, there's a very

22  good chance that no proceeds will be left to the estate.  So as

23  an initial matter, it's our position that there is no property

24  interest here.

25          And with respect to the argument that the estate has

58

1    advance on the fiduciary claims, that's clearly contingent

2    because they haven't been named in the ERISA case yet.  There

3    is an ERISA action pending.  Theoretically, under the terms of

4    the policy, the estate could have a vested interest in those

5    property interests if the estate were named a defendant but

6    they're not today.  And, frankly, there's no indication that

7    they're ever going to be --

8              THE COURT:  There's the claim though, right?

9              MR. STERN:  I'm sorry?

10             THE COURT:  Won't there be a claim in the bankruptcy

11   case?

12             MR. STERN:  It's not at all clear to me that any of

13   the ERISA claimants are going to be making a claim in the

14   bankruptcy court.  As of today, I don't know that one has been

15   made.

16             MR. BUTLER:  I don't -- there's 21,000 claims --

17   16,000 actual claims.  I can't tell you off the top of my head.

18   But I think they have made a claim.

19             THE COURT:  Okay.  But let's get -- as a practical

20   matter, the debtors proposed a mechanism that's been dealt in

21   other cases in a somewhat different context but similarly to

22   permit some of the money to go out and make it clear to the

23   insurers that they should advance on that basis.  Do you have a

24   problem with that aspect of it?

25             MR. STERN:  There are certain aspects of it that I do

59

1   not have a problem with and, in fact, we support reasonable

2   efforts to ensure that the insurance proceeds under the DNO and

3   fiduciary policies are not wasted.

4          We do have a problem with the proposal and the

5   mechanisms that have been proffered by the debtors for

6   basically two reasons.  And I'm going to take each of the

7   relief that we have a problem with in turn.

8          The first is that the insureds under these policies

9   submit our billings, fees, statements, and everything to this

10  Court, to the trustee, to Delphi and to the debtor for review

11  and approval.  That process is unnecessarily burdensome.  It's

12  a waste of judicial resources because, frankly, it's advisory.

13  There is a mandatory alternative dispute resolution provision

14  in both policies that affords any insured or the insurer with

15  the right to seek mediation and/or binding arbitration

16  concerning fees sought and/or approved and fees sought and

17  refused under the terms of the policy.  The bankruptcy court --

18  or this Court rather -- has no basis for vitiating that

19  mandatory arbitration provision.

20          So to the extent that parties are submitting our fees

21  for approval to this Court or to the trustee -- whatever ruling

22  this Court or the trustee or anybody else makes with respect to

23  whether fees are properly payable or not -- that doesn't change

24  the party's rights and responsibilities under the policy so the

25  insured can still seek arbitration or mediation to resolve that

60

1     in a separate proceeding and we would have to litigate again

2     whether the approval of certain fees is appropriate under the

3     terms of the policy.

4            THE COURT:  Okay.

5            MR. STERN:  And, second of all, in the event that

6     something is denied to the insureds, we can seek mediation or

7     arbitration to resolve that.  Not to mention there's already a

8     built-in process for insuring that these assets aren't

9     dissipated.  It's the carrier and the carrier's counsel.

10    Nobody has a more vested interest in preserving the amounts of

11    the insurance policy than the insurance carrier.  Amounts that

12    aren't spent for defense or for settlement, they get to keep.

13    Right?  If they have hired counsel -- outside counsel -- who is

14    expert in reviewing fees and advising them on the terms and

15    conditions of the policy to insure that their rights are

16    preserved -- and, frankly, that the policy proceeds are

17    preserved -- injecting this Court, the trustee and the estate

18    into the process only creates an additional layer, not to

19    mention it raises significant -- significant privilege issues

20    here.  Because as a practical matter, the movants and many of

21    the insureds under this policy are adverse to the equity

22    holders, to the lead plaintiffs, and are likely to be adverse

23    to the estate at some point, to the extent that the estate has

24    assumed the claims for breach of fiduciary duty that were

25    previously filed as a shareholder derivative action.  So,

61

1    compelling us --

2              THE COURT:  All right.  I got that point.

3              MR. STERN:  Okay.

4              THE COURT:  What's the other basis?

5              MR. STERN:  And the other basis is the five million

6    dollars cap, while it's reasonable for us to continue to come

7    back to the Court and seek approval of additional amounts,

8    given the scope and complexity of this litigation with its

9    shareholders securities fraud claim, an ERISA claim, a

10   derivative action, and SEC enforcement proceeding and a pending

11   criminal action all going on against, not only these nine

12   movants, but the range of former officers and directors under

13   the policy.  To set a five million dollars cap is going to

14   require us to be back before this Court unnecessarily

15   frequently.

16              What we would propose this Court does is it dock the

17   relief.  It was applied in the Enron litigation and in the

18   WorldCom litigation where every time a new layer of the

19   property is triggered we will come back to this Court.  The

20   Court, trustee, everybody else can review whether the

21   expenditures under the prior letter were reasonable --

22              THE COURT:  This is just for defense now, right?

23              MR. STERN:  I'm sorry?

24              THE COURT:  At this point we're just talking about

25   defense costs?

62

1          MR. BUTLER:  We're talking defense, Your Honor.  The

2     first layer is twenty-five million dollars.  So what he's

3     really saying is make five, twenty-five.  And we'll address why

4     we're opposed to that in a few minutes.

5          MR. STERN:  And at this point, it's defense but

6     frankly it could be settlement.  Right?  It is not at all clear

7     to me.  It's not at all clear to me that somebody who might

8     have a claim to the policy -- other than the movants -- is not

9     in settlement negotiations.  And as a practical matter -- back

10    to my --

11         THE COURT:  Well, they haven't asked for it.

12         MR. STERN:  Haven't asked for it and we're not asking

13    to be treated any differently than any other insured under the

14    policy.  Not to mention the one last point on the five million

15    dollars, Your Honor, is many of the movants on this motion have

16    not had any fees advanced by Delphi or otherwise paid at all.

17    To the extent the Court imposed a five million dollar cap that

18    we were going to have to come back and seek to have raised --

19    lifted at a later date -- the one year's worth of fees that

20    have already been incurred by movants and others is going to

21    come right off the top immediately.  I don't know what the

22    number is among all the nine movants but it is a year's worth

23    of legal fees and costs in defense of our client.

24         Earlier today you heard about the hardship that

25    professionals have suffered and incurred in representing the

63

1    estate.  Counsel for the movants has been far more

2    disadvantaged because we have not been paid in over a year.

3    And to the extent of a five million dollar cap, everything that

4    we haven't been paid is going to come right off the top of

5    that.  And that's our second problem with setting the cap at

6    five million dollars.

7            THE COURT:  Okay.

8            MS. STEINGART:  I was just waiting to see if there

9    was anyone else to speak in favor of the motion.  Good morning,

10   Your Honor.  Bonnie Steingart from Fried Frank on behalf of the

11   official Committee of Equity Holders.

12            I think that we find ourselves at an interesting

13   juncture.  The premise of this matter being before the Court is

14   that the insurance policies are property of the estate.  That's

15   number one.  The only reason that the Court is issuing an order

16   or has authority with respect to the insurance policies is

17   because the policies are property of the estate.  And I think,

18   given the debtor's assertion of the operation and application

19   of these policies to both the ERISA actions as well as to these

20   indemnity claims, there can really be no doubt that the

21   policies are property of the estate.

22            We also have a situation, Your Honor, where it's

23   undisputed that the movants, by and large, were key persons --

24   former executives and employees of the debtor -- who were

25   intimately involved in the transactions that were the subject

64

1    of the SEC complaint involving massive and sustained fraud.

2    Two of the movants have been --

3            THE COURT:  But that didn't seem to move Judge Bear

4    or Judge Gerber in the Adelphia case where people were

5    indicted.  And he even gave them some money when they were

6    convicted and appealing so -- and that hasn't happened here.

7            MS. STEINGART:  Your Honor, I think that those issues

8    are very live issues and I think that we can sort of split the

9    baby and we can dance around, that allegations are not admitted

10   or denied.

11           But there's also the provision in each of the consent

12   decrees that those who consented cannot publicly deny the

13   allegations contained in the SEC complaint -- or dispute those

14   allegations.  I think that that really does create a conundrum

15   for a court of equity, especially where --

16           THE COURT:  I'm sorry.  But let me back up.  The

17   indemnification agreement and the property and New York law --

18   or applicable law -- all place limits on indemnification.  And

19   in some respects, courts have required disgorgement of money

20   that was paid, if it turns out that the person didn't have the

21   right.  Is that what you're arguing here?  Or just that that

22   might happen?

23           MS. STEINGART:  I'm arguing two things, Your Honor.

24   Essentially, the request here is premature.  It's one thing to

25   permit payment such as these when we have a plan or when we

65

1   have a resolution -- the kind of resolution that everyone is

2   eager to talk about.

3          And indeed, that's when one can make an assessment of

4   exactly what claims will be made on these policies and exactly

5   how much of the liability that -- and claims that had been

6   filed against the defendant or -- I'm sorry -- against the

7   debtor here -- would be covered by the funds that are available

8   under the policies.

9          Your Honor, that has not been done.  And, indeed,

10  certainly as a threshold matter, before one is going to prefer

11  some unsecured creditors over others -- because that's what

12  these are.  These are pre-petition --

13          THE COURT:  But doesn't the insurance prefer them?  I

14  mean that's what's really being looked to -- is the insurance?

15          MS. STEINGART:  No, Your Honor.  The insurance does

16  not prefer them because what the insurance provides is a pot.

17  And the pot is there to provide coverage for any number of

18  claims.

19          THE COURT:  But doesn't it have a priority element to

20  it?

21          MS. STEINGART:  With respect to the policies that the

22  debtor discussed in the response that the debtor filed, that is

23  a cap that goes to the overall fiduciary policy as well as to

24  the indemnity policy.  And we're not saying that there are no

25  circumstances under which these --

66

1          THE COURT:  But wouldn't they pay out under their

2     indemnity first since that's the one that's the priority?  I

3     mean that could be dealt with in the order couldn't it?

4          MS. STEINGART:  Well, Your Honor, it really depends

5     on what determinations are made with respect to entitlement.

6     And that's why we have a chicken and egg problem here.

7          We have Mr. Butler and others describe the kind of

8     review that was made by the audit committee, as well as the

9     compensation committee, with respect to each of the individuals

10    who are moving before the Court today.  And the debtor decided

11    that it could not pay these -- could not advance these monies

12    because advancing the monies to these persons did not advance

13    the interests of the estate.  We have a pot of insurance money,

14    Your Honor, that can be used to pay any number of claims that

15    have been filed against this debtor.

16         THE COURT:  No, but a bank or a bondholder who

17    advanced money to the debtor wouldn't be paid a pre-petition

18    debt, either, because that wouldn't advance the interest of the

19    estate.  But it's still a legitimate claim.

20         MS. STEINGART:  But there's no reason to put these

21    pre-petition claimants --

22         THE COURT:  But this is insurance.  This is

23    insurance.

24         MS. STEINGART:  Well, the insurance is there for any

25    number of purposes and there's nothing, Your Honor, that

67

1    requires the policies of a company in bankruptcy to be

2    exhausted early on in this manner when the debtor has not even

3    made a determination as to what claims --

4            THE COURT:  But we're not talking about -- but what's

5    being proposed is not exhaustion.  I mean I understand the

6    motion suggested that but what's being proposed now is

7    something that's not exhaustion.  It's, you know, a few million

8    dollars out of a 200 million dollar policy.

9            MS. STEINGART:  Well, I think that the policies that

10   we have discussed in the preliminary aspects of the motion are

11   twenty-five million.  We've heard that the five million being

12   requested now is really the tip of an iceberg and that people

13   will soon be back before the Court asking for more.  And that

14   really does drive home the point, Your Honor, that these

15   amounts are being asked for prematurely.  They're being asked

16   for before the debtor has gotten its arms around all of the

17   claims being made, all of the insurance proceeds and how those

18   can be used best to resolve all of the outstanding litigation.

19           They're being requested by persons that the company

20   itself has determined were integral to the wrongdoing that

21   occurred -- that these individuals who only had pre-petition

22   claims are then getting advanced payment over others with pre-

23   petition claims.  And they are getting recoveries when the

24   stakeholders, who were most injured by the diminution in value

25   and false financials, stand to get nothing.

68

1          And that, Your Honor, seems to me to be unfair in the

2   extreme.  This is a court of equity.  And while at some point

3   in time, Your Honor, when someone presents a package and says

4   there are these claims and in addition to the claims there are

5   these requests for indemnity and we have this pot of insurance

6   and we're going to resolve all of it from this pot.

7          Your Honor, that is something that, at some point in

8   time, we can embrace.  But at this point in time, having these

9   individuals get this kind of priority -- when decisions have

10  been made that it is likely that they did not deal with the

11  company and deal with their responsibilities in good faith --

12  seems not consistent with the code and not consistent with the

13  kinds of determination that were made with respect to the

14  earlier motion to amend the other order.

15         So from a preliminary point of view, Your Honor, we

16  would ask that this come back.  This is premature and it should

17  come back to the Court at some point in time when there is a

18  resolution so that the debtor can tell the Court what the pot

19  of insurance is and how it's going to be used and that the

20  debtor will emerge in a way that this does not create an

21  overhang.  Thank you, Your Honor.

22         THE COURT:  Okay.

23         MR. BUTLER:  Your Honor, I think you have staked out

24  in the prior two arguments, the two ends of the spectrum which

25  is -- on the one hand, really, what the movants are saying is,

69

1    you know, don't pay us five million, pay us maybe twenty-five

2    million or whatever we want and don't have everybody review it

3    who was associated with the estate -- insurers will do a good

4    job of that.

5            And then, on the other hand, you've got the equity

6    committee saying -- and I know they believe it sincerely, it's

7    not just a litigation position -- these guys are the bad guys,

8    don't pay them anything.

9            And the company's in the middle on this and it's

10   proposed a more moderated view for several reasons.  First,

11   there is a difference between these two motions -- the one we

12   just heard and this motion.  There is a difference between the

13   debtors deciding that they should pay out of estate proceeds on

14   a post-petition basis, pre-petition claims in advance of a

15   plan, and whether there's an estate interest in doing that.

16   And the issue of whether or not they are contractual

17   beneficiaries to an insurance policy purchased for their

18   benefit and as part of the DNO package should have access to

19   that package.  And the view is -- from our post-petition -- is

20   there is a distinction.  And the reason we end up on the side

21   that we're on here -- which is to say there should be something

22   done now because there's clearly a property interest here.

23           We're not asking the Judge to rule on that today.

24   But the fact is there is a property interest here and that

25   property interest is tied from the fiduciary policy into the

70

1    main policy and the fact that we haven't been named yet in an

2    ERISA case isn't -- doesn't matter.  The fact is we could

3    named.  The statute hasn't run, as I understand it and

4    therefore there is --- as we looked at this and studied this

5    very carefully --

6            THE COURT:  Well, there's a bar date, though, right?

7            MR. BUTLER:  There's a bar date.  Yeah, but there

8    have also been claims -- ERISA claims -- filed with us, Your

9    Honor.

10           THE COURT:  So, you've already been --

11           MR. BUTLER:  Yeah -- named in that sense.  But not

12   named in, you know, we're not in the MDL litigation right now.

13   And so what I'm trying to say is that there is a property

14   interest here.

15           But I do believe, you know, the fact is, as we've

16   said in our papers and conceded, there is a priority of

17   payments in favor of non-indemnified claims.  And to the

18   extent, as Your Honor indicated earlier --

19           THE COURT:  On the twenty-five million dollar policy?

20           MR. BUTLER:  Excuse me?

21           THE COURT:  On which policy?

22           MR. BUTLER:  On the 200 million dollar policy.

23           THE COURT:  The whole 200 million.

24           MR. BUTLER:  And so my point is our property interest

25   is, you know -- I don't believe at the end of the day if you

71

1    were to actually litigate that today -- I don't think the

2    estate property interest -- and there are some other interests

3    we have -- I don't think that the estate property interest

4    ultimately, you know, would necessarily preclude the whole 200

5    million dollars policy.

6          I would lean to fight that fight today.  There is a

7    basis to be here, in our view, that there is a property

8    interest in these estates.  I'll also point out, Your Honor,

9    there's lots of other provisions to these policies that we

10   haven't talked about.  There's an exclusionary provision to

11   this policy that basically says if there's found to be the

12   adjudication of fraud then the policy doesn't pay.

13         THE COURT:  So, in other words, Ms. Steingart talks

14   about my authorizing the money to be paid.  Really, what's

15   being asked here is simply to make it clear that the stay -- to

16   the extent it applies -- is lifted to permit a claim to be made

17   under the policy, subject to all the policy's other provisions

18   including the one you just mentioned as well as the debtor's

19   claims against the indemnified party.  Is that right?

20         MR. BUTLER:  I think that's correct, Your Honor.

21         THE COURT:  Well, what is it that remains to be done

22   in litigation by these nine people?

23         MR. BUTLER:  Well, I think their journey is only

24   beginning to be under way I think.  There are a lot of

25   people --

72

1          THE COURT:  I mean, there are some people who have

2     signed settlements that are decrees --

3          MR. BUTLER:  With the SEC.

4          THE COURT:  -- with the SEC.

5          MR. BUTLER:  There's a parallel investigation with

6     the Department of Justice.  They have been named

7     individually -- many of them -- in the MDL litigation --

8          THE COURT:  And then there's the civil --

9          MR. BUTLER:  -- which is still stayed at the moment.

10    But, you know, that is going to move to the next stage at some

11    point down the line.  And our sort of response to the, you know

12    -- I should tell you with respect to the equity committee, they

13    felt about this so strongly that the chairman of the equity

14    committee wrote our CEO a letter and an impassioned plea saying

15    come to our point of view because these, in our view, are bad

16    guys.  They shouldn't get it.

17          And we spent a lot of time explaining to the

18    committee, privately, why we thought that was not in the

19    estate's interest because the fact is DNO insurance policies --

20    whether our priority of payments are intended to preserve the

21    DNO system in this country -- and for Delphi -- and that is an

22    important interest to the estate.

23          Second interest to the estate is, we do believe if

24    we're ever going to get the MDL resolved without going into the

25    framework context we've talked about, Your Honor, the fact of

73

1     the matter is that we are going to sort that out with the MDL

2     folks at some point in time.  We need people to be represented

3     in that action.

4                And where I disagree with the movants, on the other

5     hand, is I don't think they should have their cake and eat it

6     too.  There is a property interest here.  There are a series of

7     issues.  The equity committee raises some issues that I think

8     are legitimate that need to be sorted out.

9                And the point ought to be that there ought to be some

10    level of oversight.  If they want -- if the insurance company

11    is demanding and wants an order of this Court that will allow

12    these claims to go forward and the movants want to collect

13    against this policy right now -- as has been done in other

14    cases -- there ought to be limitations.  And that includes the

15    review.  There's nothing in this review mechanism which says

16    that they submit statements to the Court and to us that says

17    that, you know, if we object to it, ultimately that's the end

18    of the game of the litigation.  It just means they can't use

19    the authority under this order.

20                THE COURT:  Well, do the other beneficiaries and the

21    debtor have the right under the policies to complain about

22    excess payment to the DNOs?

23                MR. BUTLER:  Presumably people do have that right,

24    Your Honor.  But as was pointed out, I mean this is, you

25    know -- I was reading through and --

74

1        THE COURT:  But the ADR that counsel referred to

2   doesn't go to that.  Right?  That just goes to -- it's not just

3   the insurers right to object but other parties have the right

4   to raise it too?

5        MR. BUTLER:  Right. But that's the ADR under that

6   policy.  The point is -- this question isn't what can be

7   litigated under that policy because, you know, there's ADR and

8   there's also lawsuits that occur in state court under state

9   insurance laws.

10        The question here is both these movants and the

11   insurance company want an order from this Court in which these

12   debtors acquiesce that says it's okay to do this.  And if they

13   want that from us -- from this Court and from the estate --

14   after we've consulted with our statutory committees, we

15   understand one of them is not objecting to this approach but

16   has views that it communicated to us.  And the other one is

17   absolutely opposed to this approach.  From the company's

18   perspective, we need to be able to try to move in a responsible

19   fashion.

20        And so what we're here for is, Your Honor, from our

21   post-petition as we've thought about this, read the case law,

22   observed what's happened in the Southern District in New York

23   in other cases, we believe it's possible for Your Honor to say,

24   look, I have the jurisdiction to do this because of the

25   property interests -- attenuated property interests -- that the

75

1    debtor has asserted.  I'm not going to reach that issue --

2    which is what the lead plaintiffs don't want it reached

3    today -- and we agree with them.

4            It does not need to be finalized today.  And simply

5    say, for the moment, I'm prepared to say you've got a five

6    million dollar pot to go with the insurance companies.  They've

7    still got to go through their process.  I'm not directing them

8    to pay this.  They've got to do it under the policy.  But

9    you've got the right to do that.  Here's the comfort order for

10   the insurance company.  But you know what? Let us know what

11   you're doing.  Because if it turns out that one of these

12   plaintiff's counsel -- or one of these defendant's counsel,

13   rather -- turns in a bill for four and a half million dollars

14   and everyone else turns in a bill for fifty thousand dollars,

15   people in the estate may have a view about that.  And we may

16   not want the authority in this order to be used in that way.

17   And that's all we're saying.

18           We're saying if you think you need this because the

19   insurance companies told you they're not going to advance

20   without this comfort order, then you at least need to provide

21   information about your fees to the key people in this estate --

22   the fiduciaries to this estate -- that we know what's going on.

23   And that's the point of it because I'm talking about not what

24   my rights are under the insurance company.  I'm talking about

25   whether or not they should have authority under this order.

 1    And if they want the authority under the order then they're

 2    going to have to live with some reporting obligations.

 3             And as to the privilege matter, I'm going to ask to

 4    see privileged narrative detail.  I think, from the debtor's

 5    perspective, we're much more interested in understanding what

 6    is happening and the rate of consumption and by whom, then we

 7    are, you know, trying to find out that on, you know, January

 8    17th the following seven tasks were done by somebody.  And

 9    that's not the point of this.  But I think there needs to be

10    reasonable monitoring of things.

11             And, Your Honor, we would oppose the concept that

12    they have unfettered access to the first tier of the policy

13    which is 25 million dollars.  And then let's come back in, you

14    know, six months and sort it out.  We think there needs to be a

15    limit and that we need to be able to review it.

16             And, you know, movants can't even tell us what their

17    fee total is.  So, you know, I don't know whether five million

18    is too small or not.  If it turns out they consume the five

19    million, we can be back here with another omnibus and come to

20    the Court.

21             THE COURT:  Okay.

22             MR. BUTLER:  That's our -- that's the company's view,

23    Your Honor.

24             THE COURT:  Okay.  Mr. Etkin?

25             MR. ETKIN:  Your Honor, briefly.  Bankruptcy does

77

1    make strange bedfellows sometimes.  Your Honor, I think that

2    the Court is obviously familiar with what our view is on the

3    property of the estate issue and that we didn't file papers

4    objecting to the relief that was requested by the movants.

5         We just wanted to make it clear what our view was on

6    the property of the estate issue.  And, as the debtor points

7    out -- and we agree that the Court need not reach that issue.

8    And many courts have not -- and purposely have not -- reached

9    that issue because it's unnecessary to reach that issue.

10         But I do want to make our position to the Court

11    clear.  We did review the debtor's papers, had conversations

12    with debtor's counsel and are able to support the form of order

13    which is a little different than the form of order that was

14    submitted with their response -- that the debtors have put

15    together.  I do want to talk briefly since the equity committee

16    is standing on their position and has chosen to argue the

17    merits of the property of the estate --

18         THE COURT:  No, you don't have to do that.

19         MR. ETKIN:  I just want to point one thing out --

20         THE COURT:  All right.

21         MR. ETKIN:  -- that's very important that has not

22    been mentioned.  I'm not going to get into it.

23         THE COURT:  You only have a chance of losing at this

24    point.  Really, no, I'm serious.  You can go ahead.  I'm sorry.

25         MR. ETKIN:  It's not only the DNO policy that has the

78

1    order of payments provision.  It's the fiduciary policy as

2    well.

3              THE COURT:  Right.

4              MR. ETKIN:  And although there's linkage there and

5    the debtor may be a defendant at some point in the future with

6    respect to the ERISA case, that really doesn't matter.  Also,

7    because the ERISA policy -- the fiduciary policy -- provides

8    that it first goes to fund the natural person defendants and

9    not the sponsor or any corporate defendant in the case.  So to

10   the extent that these cases turn on the existence of those

11   clauses, that's a very powerful point to be made.  But that

12   doesn't mean we're backing away from what we've agreed to with

13   the debtor in terms of a solemn lock agreement.

14             THE COURT:  Okay.

15             MR. ROSENBERG:  Very briefly, Your Honor, if I may.

16   While the creditors' committee did not file papers here, I

17   think the issue is important enough that our point of view

18   should be on the record.

19             While it is extremely easy for us to reach the

20   conclusion that the unfettered release sought by the movant

21   party should be denied, it was much more difficult for us to

22   consider what was the appropriate position as between the

23   position, for example, expressed by Mr. Butler and the

24   expression expressed by Ms. Steingart.

25             And where I think we come out today -- with the

1    emphasis on today -- is to reluctantly go along with the level

2    of relief that the debtor is seeking.  And by saying it that

3    way I want to reemphasize our opposition to any relief in favor

4    of the movant party beyond that.

5         Ms. Steingart's position -- for all the obvious

6    reasons -- has a great deal of appeal to other stakeholders in

7    the case.  And yet, it is difficult for us to take the position

8    that the debtor's proposition that it will be easier to settle

9    the entire MDL litigation if a small amount of the proceeds

10   were available for this purpose -- it is difficult for us to

11   say no, that's wrong.

12        So I think our position is five million dollars seems

13   like the right amount to experiment with to see whether it does

14   indeed progress the MDL situation toward a settlement posture.

15   More can be considered thereafter.  Alternatively, I will be

16   happy, at that point, to say to Ms. Steingart you were right,

17   you know, and eat crow.  And no more should go out if that is

18   the case.

19        So this is sort of a longwinded way of saying we can

20   go along with the debtor today but we certainly want to reserve

21   our rights in the future to say, no more, Ms. Steingart's

22   right, let's decide the property of the estate issues.

23        THE COURT:  Okay.

24        MR. STERN:  Your Honor, may I respond to the equity

25   holders?

80

1          THE COURT:  Very briefly.

2          MR. STERN:  Very briefly.  I just want to make two

3   very quick points in response to the equity holders.  One, as

4   Ms. Steingart has argued, my client is supposedly a wrongdoer.

5   But the fact of the matter is, the policy -- the language of

6   the expressed policy -- speaks to when coverage is vitiated

7   under her unclean hands theory.  And it requires an actual

8   finding of malfeasance, fraud.  There has been no such finding.

9          Second, she draws no distinctions between the policy

10  and the proceeds of the policy.  While it is well settled that

11  the insurance companies themselves are property, proceeds

12  aren't.  And, you know, to the extent we're going to litigate

13  over whether the policies are property of the estate, I think

14  it's a very important distinction.

15          And finally, if I may point out, it's not surprising

16  to me that the equity holders are the strongest opponents of

17  our motion because, frankly, they are the ones who are

18  adversaries in all the civil litigation which, as Mr. Butler

19  indicated, just started.  Motions to dismiss have not even been

20  ruled on.  The plaintiffs have filed a motion to amend their

21  complaint and file a whole new complaint.  And what better way

22  to cripple the individual's defense than to deny them their

23  sole source of funding for their defense which are these, you

24  know, proceeds.

25          So the extent that we have -- as Mr. Butler

81

1    indicated -- a long road to hoe in front of us in defending

2    civil litigation just underway, SEC actions just underway, and

3    a potential criminal investigation where no indictment has yet

4    been handed down.  These policy proceeds are the sole source

5    for our clients to do that.  And to deny us or to limit us

6    would be unfair.

7           Lastly, in response to Mr. Butler, I appreciate the

8    desire to just monitor amounts and not detail.  And that would

9    be something that we could be amenable with.  And, in fact,

10   that may actually cut against capping it any point again today.

11   Whereas we could provide you -- the Court, the trustee, and the

12   estate -- with regular updates on the amounts that are being

13   dispersed in the insurance proceeds.  And that would not be

14   limited to the movants.  That should cover any insured under

15   the policy.

16          And to the extent that those updates are provided

17   with respect to outgoing disbursements, any party then can come

18   back to this Court if they believe that amounts are being

19   wasted and object at that point.

20          The process that's being proposed here turns

21   everything on its head because it places the burden on us to

22   show that our disbursements are reasonable when, in fact, the

23   burden should be on objectors to determine that the insured's

24   use of the policy are unreasonable.  And, in fact, there has

25   been no showing this point.

82

1          And, finally, with respect to Mr. Butler's inquiry, I

2    have no reason to believe that the movants are anywhere near

3    the five million dollar cap.  We are far below that at this

4    point, to the best of my understanding.

5          THE COURT:  Okay.  I have before me a motion by

6    certain beneficiaries of insurance companies of the debtors for

7    relief from the automatic stay to the extent that the stay

8    applies.

9          And, as I gather from the hearing, it is largely as a

10   result of concerns or opposition raised by the underlying

11   insurance carriers to enable the insurance carriers to advance

12   them and any other beneficiary under the policy amounts that

13   they may be entitled to under the debtor's insurance policies.

14   It's opposed by the official equity committee and opposed, in

15   part, by the debtors and others.

16         The parties all agree that the policies themselves

17   are property of the debtor's estate.  There's a live issue as

18   to whether the proceeds of the policies are property of the

19   estate which the debtor's proposed solution to that aspect of

20   this motion would sidestep.

21         I'll note that the Court wouldn't be writing on a

22   blank slate on this issue although the slate is fairly muddy

23   and I'll refer there to Judge Bear's decision In Re: Adelphia

24   Communications Corporation 298 BR49 SDNY 2003 as well as a

25   wonderful footnote in Judge Gerber's decision In Re: Adelphia

83

1   302 BR439 in which he shows, with some cogency, why the Court

2   that reversed him may have made a mistake on the issue.

3          So it's probably advisable to sidestep that issue at

4   this point, given the amount of insurance that is currently

5   available.  And I'll do that.

6          And then the issue, really, I think goes down to the

7   two points that the movants raised in opposition to the

8   debtor's proposal which is that the movants not be required --

9   as some courts have -- for example Auditor and Hadden LLP

10  335BR666 from the bankruptcy court Northern District of Ohio

11  2006 -- to submit monthly fee applications to the Court and to

12  parties of interest or fiduciaries of the estate for review.

13  They claim that this raises serious privilege issues as well as

14  sidesteps the ADR provisions set forth in the policies and, in

15  any event, is overly intrusive given their rights under the

16  policies.

17         Secondly, they object to the amount of the cap that's

18  proposed -- the five million dollar cap proposed by the debtors

19  -- and again that cap is a cap on the amount that the stay

20  would not apply to.  It doesn't represent any concession by any

21  party that the beneficiaries would have a right to advancement

22  of that money under the policies.

23         I led off by referring to the dispute over the

24  property of the estate issue.  I do want to address, however,

25  the equity committee's point which, in essence, is that the

84

1    estate does have some interests in these policies and/or other

2    beneficiaries do and that it is premature to let money out of

3    the policies at this point, given those conflicting interests.

4    Now, particularly, they contend to individuals who may be

5    malfeasants.  On that point, I might believe differently if the

6    amounts of the policies were lower, if other beneficiaries had

7    appeared, if these beneficiaries were limiting the amount that

8    they're seeking just to them as opposed to all beneficiaries

9    and if there had been a further determination of liability --

10   either criminal or civil -- of these individuals.  But I think

11   that none of those facts pertain here.

12          I'll note that in the Adelphia case, even though

13   there were indictments of the Rigases, both Judge Bear and

14   Judge Gerber agreed that money should go to fund their defense

15   costs in the criminal action.  Judge Gerber did subsequently

16   limit the amount that the Rigases could use on their appeal of

17   their criminal conviction.  But we're -- in this case -- far

18   away from those facts.

19          So given the undisputed interests that the

20   beneficiaries have as beneficiaries of these policies, I won't,

21   under these facts, won't accept the equity committee's rational

22   here.

23          As far as the two specific objections that the

24   movants have raised to the debtor's proposal I will permit the

25   stay to be lifted as to five million dollars of insurance

85

1    proceeds and it would be those proceeds that would logically be

2    the priority proceeds that would go to individual

3    beneficiaries.

4            I do that for a couple of reasons.  One, counsel has

5    not been able to say to me how much his clients have incurred

6    to date -- or a projection -- and in fact represents that the

7    amount that they've incurred is far less than five million.

8            In addition, although to lay people the amount of

9    five million dollars may be extraordinary, my view is that just

10   based on what I've heard on the record as to the status of this

11   litigation, it's a fair amount, at least for the foreseeable

12   future.

13           As far as review of individual billings is concerned,

14   I am not going to require that.  I'm doing that for a couple of

15   reasons.  First, I think that the movants and any other

16   beneficiary have their own risks under the policies in respect

17   of improvident incurrence of fees.  Secondly, the policies

18   themselves provide for dispute resolution mechanism on that

19   issue as well as other mechanisms that the debtors may have.

20   And third -- and perhaps this is most important in my

21   thinking -- given the amount of the cap which could, by an

22   improvident lawyer, be blown through, the beneficiaries and

23   their counsel bear the risk, going forward, if they come back

24   to the Court that they've blown through it improvidently that

25   at that point everyone can raise their issues either here or

1   through the ADR mechanism provided for in the policy.

2          So I know that there has been a modification of the

3   order that Mr. Etkin and his clients have agreed to.  I haven't

4   seen that but as long as it provides that the stay is lifted to

5   the extent it applies and otherwise, the Court under 105,

6   restricts access to the policy proceeds with the exception of

7   the five million dollars cap.

8          I think it is fair to require periodic reporting of

9   amounts actually disbursed so that people can keep an eye on

10  that, but nothing more than that.

11         MR. BUTLER:  Your Honor, I'll make the adjustments.

12  The language between the lead plaintiffs and the debtors is

13  really a word or two adjustment to paragraph 4 of your --

14         THE COURT:  Okay.

15         MR. BUTLER:  And so it's just to clarify that you

16  aren't reaching any adjudication regarding whether the proceeds

17  of the policy are property of the estate and that all parties

18  in interest reserve their rights.  So there's just a couple

19  words here.

20         THE COURT:  All right.  Well --

21         MR. BUTLER:  We'll make those changes, Your Honor,

22  consistent with your ruling and submit to chambers.

23         THE COURT:  Yeah, you don't have to settle that but

24  you probably should circulate it to the people who've spoken

25  today.

87

1          MR. BUTLER:  We will.

2          THE COURT:  Okay.

3          MR. BUTLER:  Your Honor, just looking ahead at the

4    balance of the hearing.  We now have matters 41 through 45

5    left.  So five more matters.  I'd like to take up -- even

6    though you said I could go in order -- I'd like to go out of

7    order briefly just to address matter 45 which is the LNW

8    Engineering a motion matter at docket No. 22.

9          I just want to advise the Court that this issue which

10   has been fully briefed and which Your Honor had said at some

11   point you're going to want to understand in advance whether

12   you're going to be asked to rule on it so that the Court

13   chambers can prepare.  The parties have now agreed to put this

14   off to the April 26, 2007 omnibus hearing with Your Honor's

15   permission.

16         THE COURT:  Okay.  That's fine.

17         MR. BUTLER:  As to matters 41 through 45, we have

18   three claims matters to deal with, Your Honor.  We actually

19   think we can get this entire claims thing done in about thirty

20   minutes.  However, we'd like to take five minutes before we do

21   that to make sure we've got our ducks in order.

22         I think we're down to one objection on -- that

23   actually needs to be heard today -- as we're trying to sort

24   through all of this.  And then, after we're done with the

25   claim's matter, Your Honor, and we get to matter number 44

88

1    which is the USW motion involving a particular employee.  Based

2    on some federal statutes, including HIPA, we're going to ask

3    the Court to close that hearing to simply the parties in

4    interest --

5                THE COURT:  Okay.  That's fine.

6                MR. BUTLER:  -- because we'll be dealing with --

7                THE COURT:  No, I already have some stuff under seal

8    on that.  That's fine.

9                MR. BUTLER:  So, Your Honor, could we take five

10   minutes and then we'll come back on?

11               THE COURT:  Yes, although, I hate to do this but --

12   and I'm doing it partly because the claim procedures order is

13   something that involves me and my schedule and the like.  And

14   I, therefore, in light of the objections, marked it up.  Your

15   changes are substantially in accordance with what I've done.

16   In fact, three of them I would add.  I don't know if it makes

17   any sense to give you my markup or not.  I mean you've done a

18   lot already of progress and I don't want to mess that up.

19   But --

20               MR. BUTLER:  We obviously, Your Honor, would love to

21   be guided by your markup if we can take a look at that.  And we

22   have resolved, we think, all of the objections other than one

23   objector to one issue.

24               THE COURT:  All right.

25               MR. BUTLER:  But certainly if we could gander yours

89

```
 1   over during the break, it would give us --

 2              THE COURT:  Maybe there are people who could tell me

 3   that it doesn't -- there are three things that I think in your

 4   markup which I got this morning -- I would add to what my clerk

 5   can give you.  And they are the extension of the period -- I'm

 6   going now on the omnibus response as opposed to the order.

 7   It's paragraph 10b on page 7.

 8              MR. BUTLER:  Um-hum.

 9              THE COURT:  Secondly, the statement of issue on page

10   8 of that, g.  And then 10j limiting the mediation to a single

11   day unless the parties agree otherwise -- to keep the costs

12   down.  Those are all -- I hadn't thought of those things and

13   they all seem like good ideas to me.  But then I'll give you

14   this markup -- my clerk will give you this markup.  And maybe

15   it makes sense to have a half hour for you to look at it

16   instead.

17              MR. BUTLER:  Well, let me ask you, Your Honor.  It's

18   12:30 now.  I know Your Honor's got some scheduling issues this

19   afternoon.  We have a 3 o'clock chamber's conference which will

20   last about thirty minutes.

21              THE COURT:  Okay.

22              MR. BUTLER:  So, I'm wondering -- and I'm just sort

23   of thinking here.  I can't imagine that the -- I want to make

24   sure that we have a chance to look at your -- and does it make

25   a sense to --
```

90

1          THE COURT:  To adjourn for an hour?  Maybe.  Maybe

2     that does --

3          MR. BUTLER:  And then we can do it.  I'm very

4     confident we can finish the rest of the hearing before the 3

5     o'clock chambers conference.

6          THE COURT:  Okay.

7          MS. SMITH:  Your Honor, this is Wendy Smith on the

8     telephone on item 43 and I've been waiting for two and half

9     hours on this and I would request that I be able to call back

10    in.

11         THE COURT:  Oh, sure.  Absolutely.  When we come back

12    at 1:30 my clerk will hook you in.  I don't know if there's

13    anyone else on the phone that wants that, too.

14         MS. TURNERBAGER:  Yes, there is, Your Honor.

15    Elizabeth Turnerbager for WorldWide.

16         THE COURT:  All right.  Well, can we just use this

17    same number?

18         MR. BORNE:  And, Your Honor, Howard Borne here as

19    well.

20         THE COURT:  All right.  We'll just set up this same

21    number again the for 1:30.

22         MS. SMITH:  Thank you very much.

23         THE COURT:  The one thing you may not get and I'm

24    open to hearing from people about this when you look at the

25    markup is that with the exception of the debtor's right --

1    subject to 502j to accept claim estimation if they agree -- you

2    know, for claim estimation purposes as a cap of the amount

3    stated, I've not made these estimation procedures because they

4    are really procedures under the contested matter rules.  And I

5    think they work like that.  And so, therefore, I don't think

6    the estate or the parties should be subject to the type of 502j

7    response that may come in more truncated -- after more

8    truncated estimations take place.

9          And so I've taken out references to these being

10    estimations.  Everyone's -- you're free to ask for estimation

11    with different procedures but in my view, as modified, these

12    procedures satisfy the contested matter requirements of a claim

13    objection.  So I've taken out references to estimation except

14    for the one that I think -- as long as it's subject to 502j is

15    kind of a no brainer -- which is that if there is an amount

16    that you all agree on as a cap, that can be the estimated

17    amount for various purposes.  So that's why I've stricken out

18    other references to estimation.

19          MR. BUTLER:  Well, thank you for the opportunity to

20    look at that over the lunch hour, Your Honor.

21          THE COURT:  Okay.  All right.  So I'll be back at

22    1:30.

23          (Recess)

24          THE COURT:  Please be seated.  Okay.  We're back on

25    the record in Delphi.

92

1          MR. BUTLER:  Your Honor, the next matter on the

2     agenda is matter number 41, the Debtors' second omnibus claims

3     objection, at Docket number 5451.

4          Your Honor, in connection with these matters we let

5     objections to a 602 proofs of claim filed solely on account of

6     Delphi Corporation common stock.  No responses were filed by

7     the equity holders to those claims.  We filed objections to 28

8     proofs of claim filed solely on account of Delphi Corporation

9     common stock that were untimely under the bartered order and

10    again no responses were filed to those objections.  We also

11    filed 28 proofs of claim that were duplicative of the trustee

12    or agent claims and received one response from a bond holder as

13    to those matters.  And then finally, we filed objections to

14    approximately 2,195 proofs of claim asserting liquidated claims

15    of approximately 5.52 billion which we believe to be

16    duplicative of other proofs of claim or amended as superseded

17    by later filed claims.  We received thirty-six responses by

18    holders of duplicate or amended claims.

19          As we resolved all of those objections, where we

20    stand now is, and an order that we'll submit to chambers, with

21    Your Honor's permission subsequent to the hearing, is we have

22    agreement to expunge 2,668 claims for something in the

23    neighborhood of just over 4.1 billion dollars.  And the claims

24    that we've not been able to resolve are approximately 179

25    claims for about 1.6 billion.  Those claims are actually only

93

1    held by four or five claimants.  They're multiple claims by

2    those claim holders.  And under the order, a group of those

3    claims will be adjourned to the December 13th claims hearing

4    and several claims will be adjourned to the January 12th claims

5    hearing.  So, as we have indicated to the Court, there was no

6    intention to have any evidentiary hearings today or to deal

7    with any substantive objections but we will, at the conclusion

8    of the hearing, or certainly as soon thereafter as we can get

9    it over to chambers, we'll submit an order that reflects all

10   the information that I just provided.

11           THE COURT:  And the debtors will send the notice of

12   judgment under Rule 922 to each claimant specifying its own

13   claims treatment?

14           MR. BUTLER:  Yes, we are.

15           THE COURT:  Okay.  Each claimant whose claim is

16   expunged or disallowed or reduced?

17           MR. BUTLER:  We'll do that, Your Honor.

18           THE COURT:  Okay.

19           MR. BUTLER:  All right.  So that's -- unless the

20   Court has any other questions about the second omni, we ask the

21   Court to expunge the claims --

22           THE COURT:  No.  I'll grant the relief as modified by

23   you just now in respect to those claims would have been no

24   objections or where the objections have been resolved and the

25   resolutions are reflected in the order.

94

1          MR. BUTLER:  Thank you, Your Honor.

2          Your Honor, the next matter on the agenda, matter

3    number 42, is our third omnibus claims objection at Docket

4    number 5452 and this represents -- unlike the first two

5    objections, this represents some substantive projections now as

6    opposed to procedural objections.  We've objected to claims

7    with insufficient documentation, claims reflecting

8    unsubstantiated liability through dollar amounts not

9    discernible from the debtors' books or records, as well as

10   claims subject to modification because they were filed in a

11   foreign currency or overstated or, in the debtors' views, were

12   incorrectly classified.

13         Of those amounts, Your Honor, as we again sit here

14   today, with respect to insufficiently documented claims,

15   approximately -- as well as untimely insufficiently documented

16   claims, approximately 368 of those claims in the amount of

17   about 100 million dollars will be expunged with respect to this

18   matter.  And one claim will be adjourned in the amount of about

19   433,000 dollars.

20         With respect to the next category, which are

21   unsubstantiated claims or untimely substantiated claims,

22   approximately 255 claims totaling just over 630 million dollars

23   will be expunged and 244 claims in the amount of 432 million

24   dollars will be dealt with pursuant to the claims procedures

25   motion that we're taking up next assuming Your Honor grants a

95

1    form of that relief, but they have been adjourned -- at the

2    moment adjourned without date from this hearing.  And the final

3    group of claims subject to the modification there are thirty-

4    five of those claims, again, totaling about 100 million dollars

5    in terms of liquidated damages that have been also adjourned

6    without date in connection with -- substantive to the

7    procedures motion that we're about to take up in the next

8    motion.

9            There are also, I should say, Your Honor, with

10   respect to claims subject to modification some ninety-seven

11   claims in the amount of approximately 28.7 million which will

12   be capped at the cap amount that was in the objection based on

13   the lack of response or the agreement with the party involved.

14           THE COURT:  Cap subject to further right to object or

15   cap for all purposes?

16           MR. BUTLER:  Cap for all purposes at the cap.  They

17   have -- subject to determination to lower the cap.

18           THE COURT:  Okay.  All right.  So, in sum, with

19   regard to each of these objections, you're seeking relief now

20   with only respect of those claims where the claimants have not

21   opposed the relief you sought, right?

22           MR. BUTLER:  Or --

23           THE COURT:  Or consented to it?

24           MR. BUTLER:  Yes, Your Honor.

25           THE COURT:  Okay.  Which my view is tantamount to the

96

1   same thing that you served them all and gave them fair notice.

2   And, again, you'll give each of them an individualized notice

3   of judgment?

4            MR. BUTLER:  Yes, Your Honor.

5            THE COURT:  Okay.  All right.  In light of that and

6   my review of the motion, I'll approve the objections as

7   modified on the record.

8            MR. BUTLER:  So, Your Honor, we now move then to

9   matter number 43, which is the claims objection estimation

10  procedures motion, at Docket number 5453.  And assuming Your

11  Honor is prepared to grant some relief with respect to this

12  motion, the practical application of this motion will be first

13  to deal with the 280 or so objections on omni three that have

14  now been adjourned without date, as well as -- and we'll be

15  dealing primarily -- focused on those objections.  But this

16  would also apply to future omnis that we'll file.  And we are

17  in the process of preparing, as Your Honor's aware, omni four

18  and omni five, which are in the process of being prepared and

19  which we'll address another almost thousand claims as we're

20  working through those matters.

21           What we've given Your Honor and made available in the

22  courtroom are a couple of charts with respect to resolved and

23  unresolved objections.  And I can now report to you based on

24  the work done since we ran through these charts that we have in

25  fact resolved all objections with all parties and have the --

97

1    reviewed and have, I believe, the support of the creditors'

2    committee.  We've reviewed the form of order and worked through

3    it with the creditors' committee with one exception and that is

4    the objection filed at Docket number 5673, which is the

5    objection of H.E. Services Company and Robert Backie.  And

6    their objection goes to what's been classified on the charts,

7    objection charts.  So is objection number 2, which is that the

8    claims hearing procedures do not take into account the

9    complexity of certain claims and do not contain opt-out

10   procedures for such claims.  And we've indicated how we've

11   addressed that with the other -- there were five other

12   objectors who had similar concerns and who've resolved those in

13   the manner in which we've discussed on the chart which I'll

14   address in just a moment.

15          Your Honor, during the lunch hour we also had the

16   opportunity to review some of the comments the Court had made

17   based on the original order we had submitted prior to

18   undergoing the negotiation with the seventeen objectors and

19   with the creditors' committee.  And I briefly wanted to mention

20   what our suggested approach is with respect to this after we --

21   if Your Honor is prepared to grant relief after he hears from

22   the objectors and our response to the objectors.

23          And that is just to make the following comments.

24   First, I think, Your Honor, that the debtors are in accord --

25   we've spoken with the committee on the lunch hour -- on accord

98

1    with your view that, as now modified, these procedures for the

2    most part, because of the modifications, permit the Court to

3    enter orders with respect to the claims objection on the merits

4    of the objection and merits of the claim to make an

5    adjudication as to the claim and don't require estimation, with

6    the limitation that Your Honor already acknowledged that the

7    parties agree to a cap that would be an estimation for those

8    purposes.  And so, we'll make appropriate adjustments to the

9    order that reflect that.

10           The second -- the other three comments, I guess, were

11   reviewed the order over the course of the -- or four comments

12   after he reviewed the order over the course of lunch hour is,

13   first, Your Honor, it made a number of comments throughout the

14   order that are sort of 9(m) related comments and we have been

15   able to modify 9(m) to the satisfaction of the creditors'

16   committee and all of the objectors except the objector at

17   Docket 5673 -- that objection, the Backie objection.  And we

18   believe that that modification, which we'll ask Your Honor to

19   consider when we submit the revised order, addresses

20   substantially all of those kinds of revisions.  I do want to

21   point out to Your Honor that in order to implement 9(m), as we

22   work between the debtor and the claim holders, that if, in

23   fact, there are discovery disputes or scheduling disputes that

24   can't be resolved after meet and confers that we would have the

25   opportunity to reach out to the Court for -- when the Court has

99

1   availability to address those two chamber conferences,

2   telephonic conferences, if that's necessary.  We hope it would

3   not be but it does provide that as an approach.

4        With respect to the staging issue, what happens when

5   you get as we are today, to a situation where we have many

6   objections resolved but a couple hundred objections that now

7   need to be staged, the approach here is to adjourn them without

8   date and then have them scheduled over some period of time.

9   Both Your Honor expressed a concern, some of the objectors did

10  and the creditors' committee said there needs to be some

11  limitation on the debtors' discretion on how to deal with those

12  adjourned matters.  And what we have worked out with the

13  creditors' committee, and would ask Your Honor to consider, is

14  a requirement that those that unless the claim holder otherwise

15  consents to other treatment, that the hearings would have to be

16  held within 180 days of the first notice of adjournment.  So,

17  in fact, there would be a clear window during which we'd have

18  to deal with everything.  So there's a finite window but it

19  does allow us to try to schedule these out and stage them out.

20  Now, the committee is going to be involved with us on a number

21  of these issues and trying to deal with all of these claim

22  holders and trying to settle as many as we can and litigate

23  others, is a massive undertaking and we need some ability to

24  stage it within some period of time.  So --

25        THE COURT:  Okay.  As long as you make that subject

100

1    to the Court's calendar.

2              MR. BUTLER:  Yeah, I --

3              THE COURT:  So that I don't have 200 hearings on the

4    180th day.

5              MR. BUTLER:  Yeah.  We understand what we'll be doing

6    to ourselves if we try to pull that one off, Your Honor.

7              THE COURT:  Okay.  Okay.

8              MR. BUTLER:  The second -- the last piece of -- the

9    next comment I want to make had to do with the concept of the

10   meet and confer and mediation processes.  It's the debtors'

11   view, and joined, I believe, by the creditors' committee, that

12   it's very important to have both of these processes as

13   mandatory processes because they serve dual purposes, at least

14   to meet and confer to us.  Meet and confer is both an

15   opportunity to settle without outside mediation and an

16   opportunity to sort out all the issues one has to sort out

17   between the claimant and the company from a litigation

18   perspective and in order to be able to adjudicate those issues.

19   And we believe that it shouldn't be in the alternative but that

20   there should be the meet and confer process and then the

21   mediation process, if necessary.  Our hope is that we'll be

22   able to knock off a lot of these in the meet and confer

23   process.  But if we can't, we think before we come to the

24   Court, we should try to do some mediation.

25              THE COURT:  Okay.  Well, I encourage and am happy to

101

```
1    require counsel to meet and confer about the handling of the

2    litigation and I certainly have authority to direct that.  And

3    I'll do that.  The reason I truncated it was I thought you were

4    really focusing on a settlement conference only as opposed to

5    counsel's obligation to meet and confer.  And, secondly,

6    because I had some concern which now I think you've alleviated,

7    that if you had both, you were not going to have sufficient

8    time to really adequately brief it and take discovery and try

9    it.  But if you have that degree of time and you have

10   flexibility on where you're having that meet and confer or how

11   you're doing it, then I'm okay having both.

12             MR. BUTLER:  Thank you, Your Honor.  And the last

13   piece of it, I just want to mention just in terms of -- we did

14   examine the other aspects of the markup, Your Honor, and while

15   we made some adjustments, we haven't adjusted every -- for

16   every comment Your Honor made because in many respects, those

17   comments were treated in another way with the objectors.  And

18   so our thought is, if it's acceptable to the Court after you

19   hear the objections, or the one objection and we deal with

20   that, is that we would work with the creditors' committee and

21   submit a joint markup to you of what we think is appropriate

22   that would be consistent to what we promised all the sixteen

23   objectors we've settled with.  And then, if Your Honor, in

24   reading that, thinks haven't done justice to a particular

25   issue that Your Honor particularly wants to take care of, we do
```

102

1    have the experience in this case that Your Honor is prepared --

2    will make whatever changes in the order that you think is

3    appropriate.

4           THE COURT:  I -- as I said, I reviewed the order that

5    you submitted this morning and you had, in almost all respects

6    except a couple of the ones we've already talked about, covered

7    the same issues that I covered.  The one that I think we ought

8    to air now just in case you disagree on it is, it seemed to me

9    that -- but I'm willing to hear other parties' views on this,

10   that if you require someone with settlement authority to attend

11   the hearing that you are going to somewhat vitiate the effect

12   of the mediation because people will think that this is a third

13   opportunity to settle.  And my view is that they should,

14   particularly if you're going to have an initial conference

15   before that, they should know that they're going into that

16   meeting and that in all likelihood this'll get presented for a

17   hearing and I'll rule from the bench and there will be a winner

18   and a loser and it's too late.  They should really focus on the

19   mediation and get it done.

20          MR. BUTLER:  I happen to think that's a legitimate

21   perspective.  I mean, we --

22          MR. ROSENBERG:  Your Honor, that was our perspective.

23          THE COURT:  All right.

24          MR. BUTLER:  The reason we had wanted it is we are

25   all aware of the fact that there are people, a great number of

103

```
 1    them, who choose to settle on the courthouse steps or out in
 2    the hallway when we're talking.
 3            THE COURT:  Well, they're always free to come.
 4    They're always free to come but I don't want to give them any
 5    impression that you all are under some sort of obligation to
 6    listen to them at that point.  So --
 7            MR. BUTLER:  I think it's fair enough.  All right.
 8    So, Your Honor, with that in mind, I think the only objection
 9    that still stands is the objection of H.E. Services Company and
10    Robert Backie and I think counsel is on the phone for that.
11            THE COURT:  Okay.
12            MR. MASTROMARCO:  Yes, Your Honor.  Victor
13    Mastromarco on behalf of Backie and H.E. Services.  Because I
14    haven't seen what the new marked up proposed order or the
15    modifications to that order, I really don't know at this point
16    what they're proposing to change.  But if I may indicate -- I
17    guess, my focus -- what my objection is, it is more towards the
18    fact that I don't see that the order -- in my case, as an
19    example, the complaint which was removed and that the stay was
20    entered under, there's three different issues that are separate
21    that are being marked up that the claims are on and they're
22    very complex claims.  I don't see any flexibility in the order
23    that would permit the parties to seek an amendment or an
24    expansion of discovery based on the complexity of their various
25    cases.
```

104

1    THE COURT:  Okay.  I think that it -- that is in here

2    now.  I had put it in and the debtors have also.  Let me read

3    to you what they've proposed.  "Should the parties be unable to

4    agree on reasonable modifications to these claim hearing

5    procedures, if any, either party may request that the Court

6    promptly schedule a teleconference to consider such proposed

7    modifications.  No discovery, testimony or motion practice

8    other than that described herein as modified shall be permitted

9    unless otherwise agreed by the parties or ordered by the

10   Court."

11        MR. MASTROMARCO:  So that permits us to seek some

12   sort of review by you --

13        THE COURT:  Right.  It --

14        MR. MASTROMARCO:  -- if we can't reach -- and

15        THE COURT:  And relatively early in the process.  I

16   mean, you're going to have your attorneys meet and confer and I

17   will be there, too, but the attorneys can focus on those issues

18   early on, decide if this does require a separate process and

19   then if you disagree about that, you can call the Court or --

20   obviously with the other counsel, opposing counsel, and air the

21   issue with me.

22        MR. MASTROMARCO:  We --

23        THE COURT:  And then, secondly, there is an ability

24   throughout, if something comes up, in addition to that initial

25   right, to say, well, you know, let's be reasonable here.

1   Let's -- you know, we ought to expand this in the following

2   way.  So, I think it's covered.

3          MR. MASTROMARCO:  Okay.  Well, then that basically

4   eliminates our objection on that.  The only other question I

5   had, Your Honor, was regarding the estimation process and what

6   the order says regarding that, if that's been modified at all

7   or what the --

8          THE COURT:  Well, yes.  Except for Paragraph 10(k)

9   which was the cap, the debtors are agreeing with the highest

10  dollar amount set forth in the claim as a cap for estimation

11  purposes and are subject to Section 502(j) although I think

12  that's implicit anyway in estimation.  There are really no

13  references to estimation procedures in here.  The debtors or

14  others can seek estimation in appropriate instances but these

15  apply -- these procedures, with that one exception -- these

16  procedures apply to claim objections and that's so that there's

17  a different burden, if you will, depending on my ruling as to

18  who wants to seek reconsideration under 502(j) which I think is

19  a much higher standard when you've ruled on a claim objection

20  as opposed to a claim estimation.

21         MR. MASTROMARCO:  Well, thank you, Your Honor.  That

22  basically takes care of any questions or objections I had.

23         THE COURT:  Okay.

24         MR. BUTLER:  Your Honor, I have four things I need to

25  read into the record which I committed to do -- we committed to

106

```
 1   do in connection with this, and then, I guess, the creditors'

 2   committee wants to comment.  First, in connection with our

 3   discussions with the creditors' committee, we have agreed that

 4   the debtors will include language in each future personalized

 5   notice of claims objection clearly identifying that the

 6   objection is subject to the claims hearing procedures, that the

 7   hearing on any responses thereto will automatically be

 8   adjourned from the omnibus hearing date to a future off omnibus

 9   date to be set pursuant to the claims hearing procedures.

10           THE COURT:  And do you give them a copy of the

11   procedures?

12           MR. BUTLER:  Yes, we will.

13           THE COURT:  Okay.

14           MR. BUTLER:  Second, with respect to Electronic Data

15   Systems Corp. and their affiliates at Docket number 5724, we

16   have confirmed that we will not assert -- the debtors will not

17   assert that the response of EDS, which includes three EDS

18   affiliates listed in the response to the second and third

19   omnibus objections does not comply with the response minimum

20   requirements contained in the objections and the procedures

21   order.  We will agree that -- the debtors and EDS have agreed

22   that EDS' principal place of business for purposes of the order

23   is in Plano, Texas.  The debtors fully understand and confirm

24   that EDS has fully preserved its right to seek modifications to

25   the procedures with respect to its claims following any meet
```

107

1    and confer if the parties cannot agree on EDS' requested

2    modification and that in seeking such modifications, EDS shall

3    retain whatever rights it now has to argue the application of

4    the unmodified procedures to the specific facts and

5    circumstances of EDS' claims would violate EDS' rights and

6    otherwise would be unsupported solely with respect to EDS'

7    claims under FRBP and other applicable law and the debtors

8    reserve the rights to contest the same.

9          With respect to Miliken and Company, objection

10   docketed at 5640, we've agreed to provide Miliken with certain

11   information in writing in advance of a notice of a sufficiency

12   hearing with respect to claims number 11643 and 11644, if any.

13         And then, finally, with respect to Inplay at Docket

14   number 5602, we've agreed that Inplay Technologies, the holder

15   of claim 2558, has agreed to withdraw its objection to claim

16   hearing procedures based upon our agreement to have a claim

17   objection hearing in respect of claim 2558 not later than

18   February 14, 2007 and notwithstanding the provisions of the

19   claim procedures order, the debtors agree that Inplay

20   Technologies shall be deemed one of the excluded parties as

21   defined in Paragraph 10 of the claims hearing procedures order

22   if the claim objection hearing in respect to claim 2558 is not

23   concluded by March 1, 2007, which is another claims hearing

24   date that's already on the docket.  So it gives us a couple of

25   hearings to deal with those issues.

108

1          I believe I've stated all of the matters that needed

2     to be stated on the record and I think the creditors' committee

3     wanted to address and then there may be anyone else who wants

4     to address the Court.

5          THE COURT:  Well, let me -- just procedurally then.

6     You're going to submit an order tomorrow or Monday?

7          MR. BUTLER:  Yes.

8          THE COURT:  And you're going to copy in the objectors

9     on that?

10         MR. BUTLER:  Well, we've already gone over all of

11    that with the objectors.

12         THE COURT:  You've already gone over it?  Okay.

13         MR. BUTLER:  Our intention -- what will happen is on

14    courtesy.  We had not intended to settle on this -- submit to

15    Your Honor --

16         THE COURT:  No, I don't want you to settle it.  If

17    you've gone over it with them, I don't have a problem with

18    that.

19         MR. BUTLER:  They have what was attached to our

20    response which addressed sixteen of the seventeen objections.

21         THE COURT:  Okay.

22         MR. BUTLER:  And then we got the creditors'

23    committee.  I don't know of any objections -- if you want to

24    address the Court that I have not handled appropriately.

25         MR. BROUDE:  Good afternoon, Your Honor.  Mark

1    Broude, Latham & Watkins for the creditors' committee.  Just

2    very briefly, Mr. Butler has described the modifications to

3    Paragraph 9(m) that are in the revised order.  When we first

4    got the original order, we were concerned as were many people,

5    as to the one-size-fits-all nature of the process that was

6    being proposed and 9(m) is the answer to that.  That's, as Your

7    Honor has noted, the way for claimants to modify the procedures

8    to fit the particulars of the situation.  The importance of

9    that in these processes cannot be underplayed and as a result,

10   we have requested and the debtors have agreed in their modified

11   notices that the rights under 9(m) be prominently displayed in

12   the notices that get sent out scheduling the hearings so that

13   all claimants are aware of their rights and since it's on, I

14   think, the tenth page of a fifteen page order, they know that

15   it's there without having to read through fifteen pages of

16   single-spaced text.

17            THE COURT:  All right.  I guess the one thing I

18   should -- you should emphasize because this is a process is

19   that if they're going to seek modification they should do it

20   within a suitable time.  I don't think you have to be as vague

21   as that but they should be on some notice that if they're

22   seeking a modification to something at the last minute, I may

23   say, well, that's not fair.

24            MR. BROUDE:  I think the way it's set up, Your Honor,

25   is that the intention, and I think it may even be explicit in

110

1    the order is that the -- what I'll call the 9(m) issues are

2    supposed to be raised at the meet and confer.  The meet and

3    confer is scheduled to occur no later than, I think, ten

4    business days after the start of the process.

5             THE COURT:  Okay.

6             MR. BROUDE:  So they can discuss all discovery and

7    evidentiary issues up front.

8             THE COURT:  And then they'll raise that with the

9    Court shortly after that?

10            MR. BROUDE:  Exactly, Your Honor.

11            THE COURT:  Okay.

12            MS. ROGERSH:  Your Honor, Elizabeth Rogersh for

13   Worldwide Battery Company.  I do have a question regarding case

14   management whenever it's appropriate.

15            THE COURT:  That's now.

16            MS. ROGERSH:  Okay.  Thank you.

17            THE COURT:  Okay.

18            MS. ROGERSH:  I represent a claimant whose claim is

19   identified in full in the agenda for today's hearing as a

20   response that was filed after the November 24, 2006 objection

21   deadline.  Now, our objection was attempted to be delivered to

22   the clerk's office on the morning of the 24th and that delivery

23   could not be completed because of a holiday.

24            THE COURT:  Well, let me just ask the debtors.  Is

25   this creditor's claim included in the order expunging claims or

111

1   is it excluded?

2              MR. BUTLER:  No, it's not.  It was excluded.  It's

3   been adjourned -- it's scheduled for adjournment subject to our

4   rights to assert that it's not timely filed.

5              THE COURT:  All right.  So your claim -- I don't know

6   if -- did you hear that, Ma'am?

7              MS. ROGERSH:  I did.  Thank you.  I just wanted to

8   clarify that it was among the adjourned claims.

9              THE COURT:  All right.  And the debtors are

10  preserving their rights to say that it's untimely and you have

11  all your rights to say excusable neglect or no harm no foul or

12  whatever.

13             MS. ROGERSH:  Understood, Your Honor.

14             THE COURT:  Okay.  Okay.  All right.  So I'll look

15  for that order then.  All right.  As Mr. Butler said, there's

16  only one more matter on the calendar?

17             MR. BUTLER:  That's right.

18             THE COURT:  So that matter -- oh, I'm sorry --

19             MR. KLENDA:  I'm sorry, Your Honor.  Briefly, Steven

20  Klenda on behalf of NuTechs Plastic Engineering which is

21  similar.  According to the Court, NuTech has resolved its

22  objection with the understanding for modifications to occur

23  around 9DOD order that said the estimation procedures applied

24  to creditors' estimation whose claims are subject to estimation

25  will preserve NuTechs' right and are appropriate to argue that

112

1    the estimation procedure should not apply in the particular

2    circumstances of NuTechs' case having --

3            THE COURT:  But there's -- again, except for the cap

4    point, if your claim says it's -- you're asserting a claim of -

5    - I'll just pick a number, ten million dollars and the debtors

6    believe that they can live for voting and reserve and perhaps

7    even distribution purposes with a claim of ten million dollars,

8    that's the only estimation provision left in this order.

9    Everything else is governed by the claim objection/contested

10   matter rules.

11           MR. KLENDA:  Thank you for the clarification, Your

12   Honor.

13           THE COURT:  Okay.

14           MR. ZALMANOWITZ:  Your Honor, Menachem Zelmanovitz,

15   Morgan Lewis on behalf of Hitache Chemical.  Our claim -- I

16   believe our objection has been resolved but there have been

17   additional changes to proposed orders since we discussed it

18   with counsel.  Just to be on the safe side, we would like to

19   get a copy of that when circulated to committee counsel as

20   well.

21           THE COURT:  Okay.  That's fine.  I'm not expecting

22   objections, though, unless something's really out of left

23   field.  Okay.  All right.  I think the record reflects the type

24   of relief that I'm going to grant here and I'll look to see the

25   order and if it's consistent with that, I'll sign it.

113

1              MR. BUTLER:  Thank you, Your Honor.  Your Honor,

2     you're right.  The last matter on the agenda is a matter

3     involving an individual employee of the company and we ask the

4     courtroom be cleared except for the statutory committees that

5     choose to stay and the USW and the debtors.

6              THE COURT:  Okay.  All right.  So we're going to hang

7     up on the conference call as well then.

8         (Proceedings concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

114

1                                    **I N D E X**

2

3                                     RULINGS

4                                Page      Line

5    Order Regarding Holdbacks 26        21

6    Amended

7    Motion to Agree to        33        18

8    Amended Manufacturing

9    Agreement Granted

10   SEC Settlement Motion     37        23

11   Granted

12                             44        3

13   Motion re Indemnification

14   Denied

15   Motion to Lift Stay       82        25

16   Denied

17

18

19

20

21

22

23

24

25

115

1

**C E R T I F I C A T I O N**

3

4   I, Esther Accardi, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official electronic

6   sound recording of the proceedings in the above-entitled

7   matter.

8

9   _____ December 1, 2006_____

10   Signature of Transcriber              Date

11

12   Esther Accardi_____

13   typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

## A

**ability** 33:2,3 48:18
99:23 104:23
**able** 25:19 39:16
52:1 53:12 55:5
74:18 76:15 77:12
85:5 90:9 92:24
98:15 100:18,22
**above-entitled**
115:6
**Abraham** 36:8
**absence** 38:17 48:2
**Absent** 37:2
**absolutely** 31:18
74:17 90:11
**absorb** 25:8 26:6
**Accardi** 3:24 115:4
115:12
**accept** 84:21 91:1
**acceptable** 12:14
101:18
**access** 69:18 76:12
86:6
**accomplish** 49:6
**accord** 97:24,25
**account** 92:5,8 97:8
**accounting** 40:16
**accrued** 46:14
**accruing** 12:22
14:16
**acknowledge** 46:11
**acknowledged** 98:6
**acquiesce** 74:12
**acted** 50:1
**acting** 21:20 47:21
**action** 40:17 58:3
60:25 61:10,11
73:3 84:15
**actions** 63:19 81:2
**actual** 15:7 58:17
80:7
**add** 46:2 88:16 89:4
**addition** 68:4 85:8
104:24
**additional** 2:9 21:7
32:20 34:21 35:5

39:7 51:4 60:18
61:7 112:17
**address** 12:14 14:24
15:4,11 38:19 44:9
48:11 55:12 62:3
83:24 87:7 96:19
97:14 99:1 108:3,4
108:24
**addressed** 13:1
45:15 48:16 55:2,3
97:11 108:20
**addresses** 98:19
**Adelphia** 64:4 82:23
82:25 84:12
**adequately** 101:8
**adjourn** 15:2 26:12
90:1 99:7
**adjourned** 10:15,24
11:18 29:1 31:20
93:3,4 94:18 95:1
95:2,5 96:14 99:12
106:8 111:3,8
**adjournment** 12:8
15:7,9,11 18:14
20:2 26:14 30:20
99:16 111:3
**adjudicate** 100:18
**adjudication** 71:12
86:16 98:5
**adjusted** 101:15
**adjustment** 86:13
**adjustments** 86:11
98:8 101:15
**administration**
50:10
**administrative**
14:19
**administratively**
21:19 28:11
**admit** 44:14,15
**admitted** 25:3 64:9
**admitting** 36:15
**ADR** 74:1,5,7 83:14
86:1
**advance** 2:14,18
40:3 41:7,19,21

42:1,6 44:2 45:3
58:1,23 66:11,12
66:18 69:14 75:19
82:11 87:11
107:11
**advanced** 26:22
62:16 66:17 67:22
**advancement** 41:1,4
41:17 42:11,19,25
43:8 44:5,10,21,24
44:24 45:5 51:5
83:21
**advancing** 40:25
66:12
**adversaries** 80:18
**adverse** 60:21,22
**advice** 18:9
**advisable** 83:3
**advise** 44:1 87:9
**advised** 11:15
**advising** 60:14
**advisors** 29:5
**advisory** 59:12
**affect** 30:21 47:24
**affiliates** 106:15,18
**affords** 59:14
**afternoon** 89:19
108:25
**agencies** 43:10
**agenda** 10:6,8,11
32:18,19 35:22
39:25 51:3 92:2
94:2 110:19 113:2
**agent** 92:12
**ago** 25:9 33:2
**agree** 18:13 21:24
22:13 30:19 53:25
55:23,23 75:3 77:7
82:16 89:11 91:1
91:16 98:7 104:4
106:21 107:1,19
114:7
**agreeable** 12:7
**agreed** 17:9 29:9
33:13 34:7,20
36:15 38:3 78:12

84:14 86:3 87:13
104:9 106:3,21
107:10,14,15
109:10
**agreeing** 105:9
**agreement** 3:14
10:14 12:8,10,13
30:16 34:3,6,23
39:4 47:13 64:17
78:13 92:22 95:13
107:16 114:9
**agreements** 13:10
46:8,9,23
**ahead** 10:21 32:16
77:24 87:3
**air** 102:8 104:20
**Alan** 55:18
**Alicia** 7:23 17:19
30:14
**alike** 42:17
**allegations** 64:9,13
64:14
**alleged** 36:5 42:2
45:20
**alleviated** 101:6
**allow** 10:16 11:19
12:4 50:20 73:11
99:19
**allowed** 26:16
**alternative** 59:13
100:19
**Alternatively** 79:15
**ambiguous** 33:21
**amenable** 81:9
**amend** 2:12 28:21
47:19 68:14 80:20
**amended** 52:20
92:16,18 114:6,8
**amendment** 3:14
34:3,22 35:17
45:13,14,16,16,22
46:4 48:3 49:22
103:23
**amount** 13:3,4 14:11
16:2 25:14 26:9
28:18,19 30:7

46:14 51:24 53:13
53:14 79:9,13 83:4
83:17,19 84:7,16
85:7,8,11,21 91:2
91:15,17 94:16,18
94:23 95:11,12
105:10
**amounts** 57:14
60:10,11 61:7
67:15 81:8,12,18
82:12 84:6 86:9
94:8,13
**analysis** 48:20 49:2
49:15 50:4
**ANDREW** 6:14
**and/or** 2:18 40:23
59:15,16 84:1
**Angeles** 5:19
**answer** 15:16 16:6
31:14 38:18 109:6
**antithesis** 24:16
**anybody** 53:23
59:22
**anyway** 20:22 48:6
105:12
**apologize** 31:8
**Appalera** 34:9
**apparently** 41:11
**appeal** 79:6 84:16
**appealing** 64:6
**appear** 12:11,12
23:10
**appeared** 84:7
**appended** 43:19
44:13
**applicable** 2:17
26:24 33:14 64:18
107:7
**applicant** 11:12 23:5
23:7
**applicants** 15:6 17:5
17:5
**application** 10:25
12:21,22 13:3,5
15:8,13 16:12,21
16:24 21:6 22:19

23:9,24,25 24:1,2
25:9,10,12,15
28:25 29:20 30:7
31:19 32:6 63:18
96:12 107:3
**applications** 10:23
11:7 12:20 13:7
16:13,25 17:7 18:6
18:6,8 19:16,18
20:13 22:15,20
23:12 25:1 26:11
26:16 27:4,6,12,21
28:13 29:19,25
30:12 83:11
**applied** 23:22 26:7
26:17 61:17
111:23
**applies** 52:10 71:16
82:8 86:5
**apply** 52:12,13
83:20 96:16
105:15,16 112:1
**appointee** 11:10
**appreciate** 81:7
**approach** 12:6
18:10 74:15,17
97:20 99:3,7
**approaching** 14:7
14:12
**appropriate** 14:23
19:5 23:22 27:15
46:12 50:24 54:14
60:2 78:22 98:8
101:21 102:3
105:14 110:14
111:25
**appropriately** 46:7
108:24
**approval** 36:13
59:11,21 60:2 61:7
**approve** 2:25 39:23
96:6
**approved** 16:16
20:1 21:3,4 38:14
38:15 59:16 115:4
**approximately**

92:14,15,24 94:15
94:16,22 95:11
**apps** 14:14,15 31:16
**April** 25:9 87:14
**aptly** 27:4
**arbitration** 59:15,19
59:25 60:7
**area** 15:19
**areas** 22:17
**arguably** 35:4
**argue** 26:11 56:23
77:16 107:3
111:25
**argued** 80:4
**arguing** 44:10 64:21
64:23
**argument** 43:4
47:23 57:25
**arguments** 44:7
51:19 68:24
**arms** 67:16
**ARPS** 4:3,10
**arrangements** 34:13
35:5
**articulately** 56:8
**aside** 26:2
**asked** 13:2 15:3,4
20:16 49:19,21
62:11,12 67:15,15
71:15 87:12
**asking** 16:16 44:5
44:25 45:1 57:17
57:18 62:12 67:13
69:23
**aspect** 14:2 38:21
48:7 50:18,19
58:24 82:19
**aspects** 58:25 67:10
101:14
**assert** 46:22 106:16
106:17 111:4
**asserted** 75:1
**asserting** 92:14
112:4
**assertion** 63:18
**assessment** 65:3

**assets** 60:8
**associated** 69:3
**ASSOCIATES** 6:17
**assume** 2:9 15:20
**assumed** 60:24
**assuming** 21:5 22:5
94:25 96:10
**Assumption** 2:2
**assure** 34:24
**attached** 36:12
108:19
**attempted** 110:21
**attend** 31:20 102:10
**attended** 50:3
**attenuated** 74:25
**Attorney** 9:8
**attorneys** 4:4,11,20
5:3,10,17 6:3,10
6:18 7:3,12 8:2,10
8:17 9:1,11,18
23:16 104:16,17
**audio** 32:7
**audit** 37:15,18,20,20
39:9 49:17 66:8
**Auditor** 83:9
**authority** 3:9 35:16
41:7,25 42:14 46:5
48:15 49:9 63:16
73:19 75:16,25
76:1 101:2 102:10
**authorize** 3:11,17
54:1
**authorized** 14:24
16:11 18:5 29:2
**authorizing** 3:13
71:14
**automatic** 2:17
42:11 82:7
**automatically** 106:7
**availability** 99:1
**available** 65:7 79:10
83:5 96:21
**Avenue** 4:21 6:11
7:13 8:3 9:2,12
**awaiting** 15:17
**awarded** 28:24

awarding 28:22
aware 40:13 96:17
   102:25 109:13
A-P-P-A-L-E-R-A
   34:9

**B**

B 1:21 53:16 57:8
baby 64:9
back 12:24 13:5
   14:17 15:23 18:18
   21:11,23 23:2
   28:17,24 29:15
   30:6 32:23 33:4
   54:2 61:7,14,19
   62:9,18 64:16
   67:13 68:16,17
   76:13,19 81:18
   85:23 88:10 90:9
   90:11 91:21,24
Backie 7:3 97:5
   98:17 103:10,13
backing 78:12
bad 69:7 72:15
balance 26:11 87:4
bank 66:16
banker 14:2 19:4
bankers 26:3 30:5
banking 22:25
bankruptcy 1:2,14
   1:23 3:2,12 27:7,9
   27:13,15 40:24
   41:3 46:25 47:22
   47:24 48:6 56:17
   56:21 58:10,14
   59:17 67:1 76:25
   83:10
banks 13:8 17:10
   29:5
bar 70:6,7
bars 44:10
bartered 92:9
BARTNER 4:24
based 21:13 24:25
   28:19 29:6 85:10
   88:1 95:12 96:23

97:17 103:24
   107:16
basically 52:4 59:6
   71:11 105:3,22
basis 20:18 28:14
   34:20 39:10 41:20
   46:17 47:1,8,18
   48:21 50:19 54:20
   58:23 59:18 61:4,5
   69:14 71:7
Battery 110:13
bear 64:3 84:13
   85:23
Bear's 82:23
bedfellows 77:1
beginning 24:14
   71:24
behalf 10:4 14:24
   16:11 17:21 18:4
   19:14 22:9 26:21
   38:23 40:7,11
   47:14,16 63:10
   103:13 111:20
   112:15
behavior 24:10
believe 13:13 14:24
   17:16,24 18:2 23:6
   29:11 35:15 38:11
   38:21 45:20 46:16
   49:9 50:7 51:20,22
   51:24 53:21 54:13
   69:6 70:15,25
   72:23 74:23 81:18
   82:2 84:5 92:15
   97:1 98:18 100:11
   100:19 108:1
   112:6,16
believed 13:11 50:8
bench 11:16 102:17
beneficiaries 53:1
   69:17 73:20 82:6
   83:21 84:2,6,7,8
   84:20,20 85:3,22
beneficiary 82:12
   85:16
beneficient 37:22

benefit 35:2 47:4,8,9
   47:11,15 49:2
   50:11,15 54:16
   56:10 69:18
benefits 35:5
best 11:12 38:12
   39:21 67:18 82:4
better 80:21
beyond 33:15 79:4
bill 75:13,14
billing 24:22,25
billings 59:9 85:13
billion 92:15,23,25
binding 59:15
bit 35:13 53:17
Blackberries 10:19
Blackberry 18:21
   41:12
blame 20:10
blank 82:22
blended 23:23,24
   24:2
Bloomfield 9:3
   23:16 32:2
blown 85:22,24
board 37:15
BOCKIUS 7:11
bond 92:12
bondholder 66:16
Bonnie 8:21 38:22
   63:10
books 94:9
Borne 90:18,18
Bowling 1:15
brainer 91:15
breach 60:24
break 31:16 89:1
brief 26:20 43:3
   101:8
briefed 87:10
briefly 48:11 56:23
   76:25 77:15 78:15
   80:1,2 87:7 97:19
   109:2 111:19
bring 33:4
broader 55:20

Broadway 5:11 6:19
Broude 8:6 108:25
   109:1,24 110:6,10
brought 33:6
BROWN 6:2
BR439 83:1
BR49 82:24
built-in 60:8
bunch 54:9
burden 33:5,17 47:4
   56:17 81:21,23
   105:17
burdensome 59:11
business 18:10 26:4
   34:17 35:19 46:6
   50:9 106:22 110:4
Butler 4:8 10:3,3,10
   10:22 12:17 13:22
   13:25 14:3,5 15:4
   16:10,21,23 17:2
   17:14 20:4,16 22:9
   26:2,22 29:15,18
   30:4,13,24 31:3,15
   31:21 32:16,17
   33:19,25 35:9,21
   39:8,24 48:8,10,25
   49:3 50:16,21,23
   51:2 52:4,11,14
   53:14,21 54:5 55:9
   55:22 56:8 57:2
   58:16 62:1 66:7
   68:23 70:7,11,20
   70:22,24 71:20,23
   72:3,5,9 73:23
   74:5 76:22 78:23
   80:18,25 81:7
   86:11,15,21 87:1,3
   87:17 88:6,9,20,25
   89:8,17,22 90:3
   91:19 92:1 93:14
   93:17,19 94:1
   95:16,22,24 96:4,8
   100:2,5,8 101:12
   102:20,24 103:7
   105:24 106:12,14
   108:7,10,13,19,22

109:2 111:2,15,17
113:1
**Butler's** 24:15 25:20
82:1
**buzzing** 18:23
**bylaws** 37:21 40:24
40:25 41:22,23
42:7,18,19,22,22
42:24 44:21 45:2,3
49:11

———————
**C**

**C** 4:1,2 10:1 115:2,2
**CA** 5:19
**cake** 73:5
**calendar** 14:8 100:1
111:16
**call** 31:14 51:14
90:9 104:19 110:1
113:7
**called** 53:15
**calls** 37:25
**cap** 41:22 45:2 48:17
52:15 61:6,13
62:17 63:3,5 65:23
82:3 83:17,18,19
83:19 85:21 86:7
91:2,16 95:12,14
95:15,16,16,17
98:7 105:9,10
112:3
**capacity** 19:16
**Capital** 41:24 42:5
42:14 43:6
**capped** 95:12
**capping** 81:10
**care** 101:25 105:22
**careful** 50:4
**carefully** 70:5
**CAROLINE** 6:15
**carried** 47:19
**carrier** 60:9,11
**carriers** 82:11,11
**carrier's** 60:9
**case** 1:4 11:4 12:18
13:11,15 14:21

16:7 17:25 18:2
19:6 20:7,13,14,23
21:2 22:16 23:3
24:13,14,19 25:12
25:23 27:10,24
28:2,7,8,8,10,11
28:22 30:6,8 36:25
43:5,11 46:4,14,16
47:1,3 56:22 58:2
58:11 64:4 70:2
74:21 78:6,9 79:7
79:18 84:12,17
102:1,8 103:18
110:13 112:2
**cases** 20:5 21:11
24:20 27:8 52:1
58:21 73:14 74:23
78:10 103:25
**case-by-case** 41:20
48:21
**category** 94:20
**cause** 33:16
**ceased** 41:4
**cede** 40:5
**Center** 9:19
**CEO** 72:14
**certain** 3:4 11:5
12:1 40:1,16 43:8
48:18 58:25 60:2
82:6 97:9 107:10
**certainly** 11:14
14:20 15:10 20:2
20:24 23:10 44:15
65:10 79:20 88:25
93:8 101:2
**certify** 115:4
**CFO** 55:19
**chairman** 16:6
39:12 72:13
**chamber** 50:24 99:1
**chambers** 31:4
33:20 86:22 87:13
90:5 92:20 93:9
**chamber's** 89:19
**chance** 53:8 57:22
77:23 89:24

**change** 59:23 103:16
**changes** 46:25 86:21
88:15 102:2
112:17
**Chapter** 47:3,3
**charge** 24:13
**charged** 24:15
**charges** 24:5 25:2
**chart** 97:13
**charts** 96:22,24 97:6
97:7
**check** 53:22
**Chemical** 7:12
112:15
**Chicago** 4:6 6:5
**chicken** 66:6
**chief** 39:12
**choice** 25:24
**choose** 43:7 103:1
113:5
**chooses** 15:11
**chosen** 77:16
**Cindy** 7:4
**circulate** 86:24
**circulated** 50:25
112:19
**circumstance** 43:10
**circumstances**
22:17 65:25 107:5
112:2
**circumstantial**
43:16
**City** 26:13
**civil** 36:20 49:23
72:8 80:18 81:2
84:10
**claim** 24:17 35:6
46:12,13 47:2,25
49:10,12 50:20
58:8,10,13,18 61:9
61:9 62:8 66:19
71:16 83:13 88:12
91:1,2,12 92:5,8
92:11,14,16 93:2
93:15 94:18 98:4,5
98:22 99:14,21

104:4 105:10,16
105:19,20 107:15
107:15,16,17,19
107:22,22 110:18
110:25 111:5
112:4,4,7,9,15
**claimant** 93:12,15
100:17 110:18
**claimants** 55:10
58:13 66:21 93:1
95:20 109:7,13
**claims** 2:21,23 3:4,6
3:22 50:9,10 55:2
57:5,6,8,19,20
58:1,16,17 60:24
63:20 65:4,5,18
66:14 67:3,17,22
67:23 68:4,4 69:14
70:8,8,17 71:19
73:12 87:18,19
92:2,7,12,14,17,18
92:22,23,25,25
93:1,3,3,4,4,13,21
93:23 94:3,6,7,10
94:14,16,16,21,21
94:22,23,24 95:3,4
95:10,11,20 96:9
96:19 97:8,9,10
98:3 103:21,22
106:5,6,9,25 107:5
107:7,12,21,23
110:25 111:8,24
**claim's** 87:25
**clarification** 112:11
**clarify** 34:1 86:15
111:8
**class** 40:17 48:18
**classes** 48:14
**classified** 94:12 97:6
**clauses** 78:11
**clear** 12:2 22:10
29:14 42:9 44:22
46:15 47:1 48:12
50:13,21 56:25
58:12,22 62:6,7
71:15 77:5,11

99:17
**cleared** 113:4
**clearly** 11:11 14:8
  35:18 39:21 43:20
  51:18 58:1 69:22
  106:5
**clerk** 89:4,14 90:12
**clerk's** 110:22
**client** 24:11 27:12
  57:5 62:23 80:4
**clients** 24:5,9 27:19
  55:1 81:5 85:5
  86:3
**close** 14:16 88:3
**closure** 34:23
**cloud** 54:10
**code** 47:22 68:12
**cogency** 83:1
**Cohen** 36:8
**collateral** 36:24 48:1
  54:9
**colleagues** 10:4
**collect** 47:25 73:12
**collection** 55:19,21
**collective** 27:17
**come** 18:18 25:19
  30:6 54:2 57:11
  61:6,19 62:18,21
  63:4 68:16,17
  72:15 76:13,19
  78:25 81:17 85:23
  88:10 90:11 91:7
  100:23 103:3,4
**comes** 104:24
**comfort** 75:9,20
**commenced** 36:4
**comment** 25:14
  100:9 101:16
  106:2
**comments** 25:13
  50:7 97:16,23
  98:10,11,13,14
  101:17
**Commerce** 8:11
**commission** 3:18
  36:4 37:3,14 38:3

39:18
**commitment** 43:25
**committed** 105:25
  105:25
**committee** 8:2,10,17
  11:1,4,5,8,14,17
  11:19,22,23,24,24
  12:3,9,11 13:2,17
  15:15,16,17 16:6,8
  16:16 18:4,4,5
  19:25 23:6 27:11
  28:15 29:10,25
  30:1,16,25 31:9
  35:15,24 37:15,19
  37:20,20 38:19,23
  39:9,12 40:5,7
  43:18 48:20 49:17
  49:18,25 50:4,8
  51:9,14 55:11
  63:11 66:8,9 69:6
  72:12,14,18 73:7
  77:15 78:16 82:14
  97:2,3,19,25 98:16
  99:10,13,20
  100:11 101:20
  106:2,3 108:2,23
  109:1 112:19
**committees** 31:1
  54:25 74:14 113:4
**committee's** 10:12
  10:13 12:13 28:20
  83:25 84:21
**common** 28:2 40:12
  92:6,9
**communicate** 11:20
**communicated** 50:5
  74:16
**Communications**
  82:24
**comp** 49:25
**companies** 53:3,4
  75:6,19 80:11 82:6
**companion** 51:3
**company** 34:13,21
  39:10,14,14 43:1
  49:16,21,25 50:3

53:23 54:20 67:1
  67:19 68:11 73:10
  74:11 75:10,24
  97:5 100:17 103:9
  107:9 110:13
  113:3
**company's** 35:12
  39:12 51:18 69:9
  74:17 76:22
**compel** 2:2,6,13 3:8
  51:4
**compelled** 40:2
**compelling** 61:1
**compensated** 27:8
  27:20
**compensation** 12:1
  27:25 28:3,23,24
  29:5 43:17 48:20
  49:17 50:4 66:9
**complain** 73:21
**complaint** 64:1,13
  80:21,21 103:19
**completed** 110:23
**complex** 103:22
**complexity** 61:8
  97:9 103:24
**compliance** 39:13
  39:13
**complicated** 20:8
**comply** 106:19
**conceded** 70:16
**conceivable** 21:15
**concept** 44:20 76:11
  100:9
**concern** 99:9 101:6
**concerned** 15:25
  28:3,5,7,11 85:13
  109:4
**concerning** 59:16
**concerns** 55:12
  82:10 97:12
**concession** 83:20
**concluded** 33:10
  34:15 107:23
  113:8
**conclusion** 24:20

25:23 47:2 78:20
  93:7
**condition** 41:1
**conditions** 60:15
**conduct** 11:21 28:10
**conducted** 37:16
**confer** 100:10,14,14
  100:20,22 101:1,5
  101:10 104:16
  107:1 110:2,3
**conference** 89:19
  90:5 101:4 102:14
  113:7
**conferences** 28:6
  99:1,2
**confers** 33:9 98:24
**confident** 90:4
**confirm** 106:23
**confirmed** 106:16
**conflicting** 84:3
**confuses** 44:20
**Congress** 27:7
**connection** 11:2,6
  14:22 17:17 27:5
  36:21 45:8 92:4
  95:6 106:1,2
**consent** 38:22,24
  39:16 64:11
**consented** 64:12
  95:23
**consenting** 36:24
**consents** 99:15
**consequence** 57:9
**consequently** 47:10
**consider** 13:2 16:4
  38:10 43:16 78:22
  98:19 99:13 104:6
**consideration** 11:25
  12:7 15:12 16:14
  36:11
**considered** 79:15
**consistent** 35:12
  42:18,25 45:3 50:7
  68:12,12 86:22
  101:22 112:25
**constitutional** 43:4

44:3 45:14
**consult** 11:23
**consulted** 74:14
**consume** 76:18
**consummate** 35:17
**consumption** 76:6
**contain** 97:9
**contained** 64:13
  106:20
**contempt** 37:1
**contend** 84:4
**contended** 54:4
**contending** 42:10
**contest** 107:8
**contested** 28:14 91:4
  91:12
**context** 15:7,9 58:21
  72:25
**contingent** 44:17,18
  57:11 58:1
**continue** 19:18 23:5
  25:16 32:18 47:14
  61:6
**continued** 10:16
**continues** 22:13
**continuing** 22:14
**contract** 56:21
**contractual** 69:16
**contrary** 41:21
**control** 14:10
**controversy** 38:9
**conundrum** 64:14
**conversations** 77:11
**converse** 31:9
**convicted** 64:6
**conviction** 84:17
**convince** 27:1
**convinced** 26:25,25
**cooperate** 18:14
  38:4 43:25 45:21
**cooperating** 38:6
  49:16
**cooperation** 18:12
  36:19 43:9
**copy** 36:12 106:10
  108:8 112:19

**copyright** 23:20
**Corp** 106:15
**corporate** 78:9
**corporation** 1:8
  2:14 3:13 10:5
  12:5 14:25 16:24
  22:12,17,22 23:1
  34:7,9 36:9,21
  37:15 40:3 44:1
  82:24 92:6,8
**Corporations** 23:4
**Corporation's** 34:2
**correct** 20:24 31:2
  50:16 71:20 115:5
**cost** 20:5
**costs** 2:14,18 20:16
  35:10,11 40:3,22
  40:25 41:7 45:8
  51:5 57:13,13
  61:25 62:23 84:15
  89:11
**counsel** 11:23 16:6
  19:4 23:18 24:12
  25:25 31:9 37:14
  37:19 39:11 40:6
  40:10 49:8 50:2,2
  50:25 53:11 60:9
  60:13,13 63:1 74:1
  75:12,12 77:12
  85:4,23 101:1
  103:10 104:20,20
  112:18,19
**counsel's** 101:5
**country** 72:21
**couple** 35:6 51:4
  85:4,14 86:18
  96:22 99:6 102:6
  107:24
**course** 19:24 20:21
  21:1 25:19,21
  31:18 35:13 98:11
  98:12
**court** 1:2,14 10:2,9
  10:18 11:10 12:11
  12:14,15,16 13:18
  13:20,24 14:2,4,9

15:1,14 16:9,20,22
17:1,4,13,18,23
18:9,16,18,20 19:9
19:12,21,23 20:15
20:21 21:21 22:2,7
22:18,23 23:4,14
24:4,8 26:7,19,25
27:3,21 29:17,24
30:3,10,19,23 31:2
31:5,7,10,13,18,23
32:4,12,14 33:5,18
33:24 35:8,18 36:1
36:2,13,13,22
38:18 39:5,19
41:11,24 42:14
44:12 45:7,11,13
45:17,24 46:1
47:23 48:11,23
49:1 50:14,17,22
51:1,23 52:3,9,12
53:13,19 54:3 55:8
55:14,16,24 56:17
56:21 57:18 58:8
58:10,14,19 59:10
59:17,18,21,22
60:4,17 61:2,4,7
61:14,16,19,20,22
61:24 62:11,17
63:7,13,15 64:3,15
64:16 65:13,19
66:1,10,16,22 67:4
67:13 68:2,17,18
68:22 70:6,10,19
70:21,23 71:13,21
72:1,4,8 73:11,16
73:20 74:1,8,11,13
76:20,21,24 77:2,7
77:10,18,20,23
78:3,14 79:23 80:1
81:11,18 82:5,21
83:1,10,11 85:24
86:5,14,20,23 87:2
87:9,12,16 88:3,5
88:7,11,24 89:2,9
89:21 90:1,6,11,16
90:20,23 91:21,24

93:5,11,15,18,20
93:21,22 95:14,18
95:23,25 96:5
97:16 98:2,25,25
99:25 100:3,7,24
100:25 101:18
102:4,23 103:3,11
104:1,5,10,13,15
104:19,23 105:8
105:23 106:10,13
108:4,5,8,12,16,21
108:24 109:17
110:5,8,9,11,15,17
110:24 111:5,9,14
111:18,21 112:3
112:13,21 113:6
115:4
**courtesy** 108:14
**courthouse** 103:1
**courtroom** 37:22
  96:22 113:4
**courts** 64:19 77:8
  83:9
**Court's** 10:7 15:10
  18:9 40:13 41:7,19
  48:11 49:12 100:1
**cover** 22:20 54:8
  81:14
**coverage** 53:16,16
  57:8 65:17 80:6
**covered** 46:9 65:7
  102:6,7 105:2
**covers** 12:23
**create** 18:14 64:14
  68:20
**creates** 60:18
**creditors** 8:2,10
  10:12 11:24 35:15
  40:1 42:17 47:5,12
  65:11 78:16 97:1,3
  97:19 98:15 99:10
  99:13 100:11
  101:20 106:1,3
  108:2,22 109:1
  111:24
**Creditors/Interest...**

2:12
**creditor's** 110:25
**criminal** 45:8,8,12
  45:17 61:11 81:3
  84:10,15,17
**criminality** 45:23
**cripple** 80:22
**criteria** 18:7,7
**critical** 50:19
**Cronin** 9:15 26:20
  26:21 27:2
**cross** 54:21
**crow** 79:17
**currency** 94:11
**current** 24:25 28:25
  41:7,9,16 46:19
  47:8 48:16
**currently** 12:19 83:4
**CURRIE** 6:14
**cushion** 25:7
**customer** 3:15 34:4
  34:5,8,17,18
**customers** 34:11
**customer's** 34:8
**cut** 22:23 43:14,20
  43:22 81:10
**Cutler** 37:19

**D**

**D** 1:22 8:14 10:1
  114:1
**damages** 95:5
**dance** 64:9
**Data** 106:14
**date** 33:15 45:10
  53:19 62:19 70:6,7
  85:6 95:2,6 96:14
  99:8 106:8,9
  107:24 115:10
**dates** 3:3 12:1
**David** 9:7 16:5
**DAVIS** 7:24
**Dawes** 55:18
**day** 21:12 40:2 41:6
  41:17 44:4 48:13
  52:7 53:7 70:25

89:11 100:4
**days** 99:16 110:4
**DC** 6:12
**deadline** 2:9 32:21
  32:23 33:16
  110:21
**deal** 10:22 34:3,10
  35:9 39:6 51:5
  54:17 68:10,11
  79:6 87:18 93:6
  96:13 99:11,18,21
  101:19 107:25
**dealing** 50:9 88:6
  96:15
**deals** 34:6
**dealt** 32:23,24,25
  58:20 66:3 94:24
**Debevoise** 9:10
  26:21
**debt** 47:2,7 66:18
**debtor** 1:10 4:4,11
  4:20 5:3,10,17 6:3
  6:10 9:8 24:7 25:5
  27:10 34:7 39:2
  46:18,22 47:4,7,10
  47:15,17 48:23
  56:1 57:2,10 59:10
  63:24 65:7,22,22
  66:10,15,17 67:2
  67:16 68:18,20
  73:21 75:1 77:6
  78:5,13 79:2,20
  98:22
**debtors** 2:18 3:8,20
  11:17,24 12:5
  14:18 16:12 17:8,9
  22:18,22 23:18,24
  25:20 29:2 33:6
  37:18,18 38:6,11
  39:6,22 40:5 46:3
  46:5 47:20,20 51:5
  51:17 53:24 54:4
  55:13 58:20 59:5
  69:13 74:12 77:14
  82:6,15 83:18
  85:19 86:12 92:2

93:11 94:9,11
97:24 99:11
100:10 104:2
105:9,13 106:4,16
106:21,23 107:7
107:19 109:10
110:24 111:9
112:5 113:5
**Debtors-in-Posses...**
  4:12
**debtor's** 16:10 33:15
  37:18 39:3,22 51:6
  51:10,20 52:8
  54:18 55:7 63:18
  71:18 76:4 77:11
  77:12 79:8 82:13
  82:17,19 83:8
  84:24 90:25
**debts** 46:25,25
**December** 93:3
  115:9
**decide** 79:22 104:18
**decided** 20:19 66:10
**decides** 26:8
**deciding** 69:13
**decision** 15:6 49:17
  82:23,25
**decisions** 43:18
  44:22 49:25 50:5
  51:23 68:9
**declaration** 43:12
  43:19
**decline** 43:8
**declined** 42:1
**decree** 38:22,24 39:7
  39:16
**decrees** 64:12 72:2
**deductible** 54:5
**deductibles** 54:8
**deduction** 28:13
**deemed** 107:20
**defendant** 58:5 65:6
  78:5,9
**defendants** 78:8
**defendant's** 75:12
**defending** 81:1

**defense** 2:18 40:25
  41:7 44:1 45:9
  51:5 57:12 60:12
  61:22,25 62:1,5,23
  80:22,23 84:14
**defer** 56:22
**defers** 52:7
**defined** 107:21
**degree** 101:9
**Delaware** 44:21
  49:11
**delay** 15:12 21:11,14
  21:14 22:5
**delivered** 110:21
**delivering** 24:21
**delivery** 110:22
**Delphi** 1:8 2:13 3:13
  10:2,4 12:5 14:24
  16:23 22:12,17,22
  23:1,4 26:4 34:2,6
  36:5,9,15,20,25
  37:8,14 38:3 40:3
  40:21,24 41:1,6,10
  41:20,24 42:1,6
  43:7,14,23 45:3,12
  46:11 48:4,5 56:11
  57:15 59:10 62:16
  72:21 91:25 92:6,8
**Delphi's** 10:5 22:11
  36:6,14,18 40:15
  40:20 41:22 42:4
**demand** 19:5
**demanding** 53:5
  73:11
**denied** 60:6 64:10
  78:21 114:14,16
**Denver** 6:21
**deny** 44:14,15 46:3
  46:23 64:12 80:22
  81:5
**denying** 36:15 48:8
**Department** 38:6
  40:15 72:6
**depending** 105:17
**depends** 66:4
**deputy** 50:2

**derivative** 60:25
   61:10
**describe** 27:18
   53:17 66:7
**described** 13:23
   37:10 104:8 109:2
**description** 49:5
**desire** 81:8
**detail** 27:14,18,19
   76:4 81:8
**determination** 49:7
   50:15 52:6,6 67:3
   68:13 84:9 95:17
**determinations**
   50:12 66:5
**determine** 81:23
**determined** 27:7
   47:10 67:20
**Detroit** 9:20
**devices** 23:19
**difference** 51:13
   69:11,12
**different** 17:15 24:8
   32:4 58:21 77:13
   91:11 103:20
   105:17
**differently** 57:18
   62:13 84:5
**difficult** 78:21 79:7
   79:10
**diminution** 67:24
**direct** 101:2
**directing** 75:7
**direction** 48:15
**directly** 11:20 49:20
**director** 37:21,24
   56:2
**directors** 37:15 46:8
   46:10,19,21 47:9
   47:16 48:17,19
   49:14 50:10 53:1
   55:19 56:10 57:14
   61:12
**disadvantaged** 63:2
**disagree** 49:8 73:4
   102:8 104:19

**Disallowance** 3:3,5
   3:21
**disallowed** 44:18
   93:16
**disbursed** 86:9
**disbursements**
   81:17,22
**discernible** 94:9
**disclosed** 38:5
**disclosure** 37:9
**discount** 24:18
**discounts** 27:15
**discovery** 33:8
   98:23 101:8
   103:24 104:7
   110:6
**discreet** 16:24
**discretion** 41:20,25
   42:1 43:1,5 46:18
   99:11
**discretionary** 49:9
**discuss** 110:6
**discussed** 65:22
   67:10 97:13
   112:17
**discussion** 15:19,25
   37:16 49:4 54:24
   55:4,5,6
**discussions** 10:17
   11:3,8 54:24 106:3
**disfavor** 43:3
**disgorge** 20:18
**disgorgement** 64:19
**dismiss** 80:19
**dispersed** 56:15
   81:13
**displayed** 109:11
**dispositive** 45:23
**dispute** 15:19 21:12
   46:17 59:13 64:13
   83:23 85:18
**disputes** 98:23,23
**dissipated** 60:9
**distinct** 56:6
**distinction** 47:18
   69:20 80:14

**distinctions** 80:9
**distributed** 56:16
**distribution** 112:7
**district** 1:3 36:1,2,2
   36:3,13 43:11 53:8
   74:22 83:10
**divide** 56:6
**DMT** 34:7
**DNO** 59:2 69:18
   72:19,21 77:25
**DNOs** 73:22
**dock** 61:16
**docket** 10:11,12,13
   32:22 34:5 35:23
   35:25 40:4 51:6
   87:8 92:3 94:3
   96:10 97:4 98:17
   106:15 107:13,24
**docketed** 107:10
**doctrine** 44:10
**document** 44:13
**documentation** 94:7
**documented** 94:14
   94:15
**doing** 20:5 26:4
   27:20 69:15 75:11
   85:14 88:12 100:5
   101:11
**dollar** 24:17 25:22
   41:22 62:17 63:3
   67:8 70:19,22 75:6
   82:3 83:18 94:8
   105:10
**dollars** 12:24 14:13
   14:15 23:25 24:3
   24:25 25:2,2 34:14
   35:2,7,10 46:8
   48:20 52:14 53:15
   53:15,16 61:6,13
   62:2,15 63:6 67:8
   71:5 75:13,14
   76:13 79:12 84:25
   85:9 86:7 92:23
   94:17,19,22,24
   95:4 112:5,7
**double** 13:14,15

53:21
**doubt** 63:20
**DOUGLAS** 4:24
**draft** 50:23
**drafted** 38:22 42:24
**DRAIN** 1:22
**draws** 80:9
**drive** 4:5 6:4 67:14
**drop** 24:3
**dropped** 23:25
**dual** 100:13
**ducks** 87:21
**due** 32:2,11 45:22
   47:23 48:7
**duplicate** 92:18
**duplicative** 92:11,16
**duration** 24:19
   26:10
**duties** 47:21
**duty** 18:13 19:17
   60:24
**dynamics** 27:5

---

**E**

**E** 1:21,21 4:1,1,2,2
   10:1,1 43:19 114:1
   115:2
**eager** 65:2
**earlier** 25:3 33:21
   43:5 46:4 62:24
   68:14 70:18
**early** 17:25 67:2
   104:15,18
**earned** 30:8
**easier** 79:8
**easily** 44:20
**Eastern** 36:2,3
**easy** 78:19
**eat** 73:5 79:17
**echo** 25:13
**EDS** 106:17,17,21
   106:22,24 107:1,2
   107:5,5,6
**effect** 37:8 48:3
   102:11
**efficient** 25:4

efficiently 21:20
efforts 59:2
egg 66:6
eight 21:14,15 22:4
either 48:8 66:18
    84:10 85:25 104:5
electronic 106:14
    115:5
element 48:11 65:19
elements 48:14
eleven 25:11
eliminates 105:4
Elizabeth 32:10
    90:15 110:12
else's 22:12
eluded 15:14
EMANUEL 5:16
embrace 68:8
emerge 68:20
emergence 10:14
eminent 18:25
emphasis 79:1
emphasize 109:18
employed 46:21
employee 3:9 88:1
    113:3
employees 40:21,25
    41:2,3,8,8,9,10,16
    41:19 42:1,8 43:2
    43:8,14,20,21,22
    45:5,7 46:10,19,21
    47:9,17 50:6 55:20
    56:11 57:15 63:24
enable 82:11
encourage 100:25
endorsement 52:18
ends 14:6,7 68:24
enforcement 61:10
engaged 28:15
engagement 13:9
engagements 27:22
Engineering 6:18
    87:8 111:20
ENGLISH 5:9
enhancements 18:17
    27:17

enjoined 36:16
Enron 61:17
ensure 59:2
enter 3:13 98:3
entered 28:22 33:1
    36:8,12 38:15,24
    40:2 46:4 103:20
entire 79:9 87:19
entitled 82:13
entitlement 66:5
entry 3:17 36:24
    37:3 39:3
equitable 39:22 44:6
equity 8:17 10:13
    11:24 35:25 38:19
    38:23 40:5,7 44:8
    44:16 50:8 51:9,14
    55:11 60:21 63:11
    64:15 68:2 69:5
    72:12,13 73:7
    77:15 79:24 80:3
    80:16 82:14 83:25
    84:21 92:7
ERISA 58:2,3,13
    61:9 63:19 70:2,8
    78:6,7
especially 24:21
    25:13 26:14 64:15
ESQ 4:16,17,24 5:7
    5:14,21 6:7,14,15
    6:23 7:9,16,23,24
    8:6,7,14,21 9:5,7
    9:15,22
essence 83:25
essentially 13:10
    32:22 33:4 35:1
    47:13 64:24
established 18:7
    47:7 56:19
Establishing 3:3
estate 7:5 11:12
    14:18,19 18:13
    21:18 22:10 23:11
    28:1 35:6 38:13
    47:5,12,15 48:22
    50:6,11,15 53:9

54:12,22 56:3,4,7
    56:8,25 57:7,20,22
    57:25 58:4,5 60:17
    60:23,23 63:1,14
    63:17,21 66:13,19
    69:3,13,15 71:2,3
    72:22,23 74:13
    75:15,21,22 77:3,6
    77:17 79:22 80:13
    81:12 82:17,19
    83:12,24 84:1
    86:17 91:6
estates 71:8
estate's 51:22 72:19
Esther 3:24 115:4
    115:12
estimated 91:16
estimation 3:4,5,22
    91:1,2,3,10,13,18
    96:9 98:5,7 105:5
    105:10,12,13,14
    105:20 111:23,24
    111:24 112:1,8
estimations 91:8,10
Etkin 76:24,25
    77:19,21,25 78:4
    86:3
event 60:5 83:15
eventually 41:5
everybody 18:18
    31:11 61:20 69:2
Everyone's 91:10
evidence 43:13,16
evident 11:5
evidentiary 33:7,11
    93:6 110:7
ex 10:13
exact 14:12
exactly 52:11 65:4,4
    110:10
examine 101:14
example 13:2 36:25
    78:23 83:9 103:19
exceed 24:7,11
    25:15
excellent 26:5

exception 40:12
    86:6 90:25 97:3
    105:15
excess 16:2,8 73:22
Exchange 3:18 36:4
    37:3,13
excluded 107:20
    111:1,2
exclusionary 71:10
excusable 111:11
excuse 30:14 49:14
    70:20
excused 31:17
executives 63:24
exercise 18:13 46:5
exercised 42:16
exercising 47:11
exhausted 67:2
exhaustion 67:5,7
Exhibit 43:19
exist 47:15
existence 78:10
existing 29:2
expand 105:1
expansion 103:24
expect 32:21 38:8
expectations 12:2
expecting 112:21
expects 39:16
expenditures 61:21
expense 42:8
expenses 35:11,12
experience 102:1
experiment 79:13
expert 60:14
explaining 72:17
explicit 109:25
exposed 43:7,7
exposure 43:17
express 13:23
expressed 13:17
    14:1,17 57:3 78:23
    78:24 80:6 99:9
expression 78:24
expunge 92:22
    93:21

**expunged** 93:16
94:17,23
**expunging** 110:25
**extended** 32:23
37:25 54:21
**extension** 2:9 32:20
33:13,15 89:5
**extensive** 56:13
**extent** 2:17 20:2
21:2 23:4 28:1
48:2 52:9 59:20
60:23 62:17 63:3
70:18 71:16 78:10
80:12,25 81:16
82:7 86:5
**extraordinary** 85:9
**extreme** 68:2
**extremely** 78:19
**eye** 86:9

**F**

**F** 1:21 115:2
**facilitate** 34:23
**facility** 34:24
**facing** 23:7
**fact** 15:17 20:11
23:2,9 34:4 35:13
49:7 56:3 59:1
69:24 70:1,2,15
72:19,25 80:5 81:9
81:22,24 85:6
88:16 96:25 98:23
99:17 102:25
103:18
**facts** 84:11,18,21
107:4
**fair** 17:23 21:16
39:22 42:7,16 44:6
85:11 86:8 96:1
103:7 109:23
**fairly** 82:22
**faith** 44:19,22 68:11
**fall** 44:4
**false** 67:25
**familiar** 38:1 77:2
**far** 14:15 15:24

30:10 47:22 63:1
82:3 84:17,23 85:7
85:13
**fashion** 74:19
**fault** 20:8
**favor** 42:8,24 43:2
63:9 70:17 79:3
**favoring** 42:25
**February** 11:18,19
12:12 18:19 20:3
20:12 107:18
**federal** 3:1,12 36:5
37:5 88:2
**fee** 10:25 11:1,2,4,5
11:8,14,16,19,21
11:23 12:9,11,13
12:19,21,22 13:2,3
13:5,6,16,17 14:14
14:14 15:8,13,15
15:16,17 16:6,7,12
16:15,18,21,24
17:6 18:4,4,5,8
19:16,18,25 20:3,6
20:13 21:5 22:15
22:19,21 23:6,8,11
23:24,25 24:1,2
25:1,8,10,12,15
26:11 27:4,6,11,12
28:13,15,20 29:2,6
29:6,10,18,20,24
30:1,8,11,15,17,24
31:1,9,16,19 32:6
35:4 39:12 76:17
83:11
**feel** 19:6 44:2
**fees** 2:14 11:13
13:10 16:1 17:10
20:6,21 22:23 23:3
23:8 26:15 27:7,18
27:24 28:13,17
29:11 30:6 40:3
41:21 42:6 57:13
59:9,16,16,20,23
60:2,14 62:16,19
62:23 75:21 85:17
**felt** 72:13

**fiduciaries** 50:6
75:22 83:12
**fiduciary** 18:13
52:22 56:2 58:1
59:3 60:24 65:23
69:25 78:1,7
**field** 112:23
**fifteen** 109:14,15
**fifth** 49:22
**fifty** 41:8 75:14
**fight** 26:13 71:6,6
**Figueroa** 5:18
**figure** 53:7
**file** 33:3 77:3 78:16
80:21 96:16
**filed** 10:6 11:1 16:13
16:25 25:9,12
29:25 32:24 33:6
33:22 35:16 36:10
37:11 40:4 41:4,6
42:10 51:3,6 60:25
65:6,22 66:15 70:8
80:20 92:5,6,7,8
92:10,11,13,17
94:10 97:4 110:20
111:4
**filing** 11:2 19:19
25:9 40:23
**filings** 38:5
**final** 36:8,9,12,15,25
37:3,7 52:5 95:2
**finalized** 75:4
**finally** 21:4 80:15
82:1 92:13 107:13
**financial** 36:7 40:16
40:20
**financials** 67:25
**find** 48:7 63:12 76:7
**finding** 44:19 80:8,8
**fine** 10:9 12:16
19:23 32:14 33:24
46:2 87:16 88:5,8
112:21
**finish** 90:4
**finite** 99:18
**firm** 12:5 13:1 17:5

23:17,22 24:4,15
24:16 25:2,18,20
26:1,7,8,18 55:18
**firms** 15:18 16:1
24:14 28:16,21
**first** 10:10 12:19
13:3,6 14:13 17:6
17:20 18:23 20:3
20:13 21:12 23:8
23:11,24 24:1 25:8
25:11 26:16 29:5
29:12,18 30:3,4,10
30:17 37:12 40:2
41:5,17 42:16
44:12,14 48:13
55:11 57:6 59:8
62:2 66:2 69:10
76:12 78:8 85:15
94:4 96:12 97:24
98:13 99:16 106:2
109:3
**fiscal** 14:6,7,22
**fit** 109:8
**five** 13:4 15:20 16:2
16:8 17:7 23:7,12
25:15 28:23 29:20
41:22 46:8 48:19
52:14 54:1 61:5,13
62:3,14,17 63:3,6
67:11 69:1 75:5
76:17,18 79:12
82:3 83:18 84:25
85:7,9 86:7 87:5
87:20 88:9 93:1
95:4 96:18 97:11
**fix** 21:15
**flexibility** 101:10
103:22
**FLOM** 4:3,10
**Floor** 7:20
**focus** 28:12 102:18
103:17 104:17
**focused** 96:15
**focusing** 101:4
**folks** 49:14,15 73:2
**follow** 10:7

following 11:2 29:4
76:8 97:23 105:1
106:25
footnote 82:25
foregoing 115:5
foreign 94:11
foreseeable 85:11
form 38:14 52:8
77:12,13 95:1 97:2
former 40:21,25
41:3,8,9,18 43:2
45:5 46:10 48:19
49:14 50:5,9 52:25
55:19,19 57:14
61:12 63:24
forms 38:24
Fort 8:12
forth 10:23 43:4
56:14,18 83:14
105:10
forward 12:4 16:22
19:19 26:18 29:22
34:21 37:5 44:5
51:12 53:8 73:12
85:23
foul 111:11
found 35:23 45:21
71:11
four 4:13 29:11
75:13 93:1 96:17
98:11 105:24
fourth 12:22 29:21
FOWLER 5:21
frame 31:8
framework 10:16
42:7,21 72:25
Frank 8:16 63:10
frankly 17:6 25:18
56:13 58:6 59:12
60:16 62:6 80:17
fraud 61:9 64:1
71:12 80:8
FRBP 107:7
free 41:1 44:2 91:10
103:3,4
freely 44:1

frequently 61:15
Fried 8:16 9:18
40:10 63:10
front 81:1 110:7
fruition 57:11
full 22:4 45:4 110:19
fully 38:4 87:10
106:23,24
function 47:14
fund 78:8 84:14
funding 80:23
funds 65:7
further 19:10 22:5
29:7,23 33:15 84:9
95:14
future 29:7 36:16
37:9 78:5 79:21
85:12 96:16 106:4
106:8

_____

**G**

g 10:1 89:10
game 73:18
gander 88:25
gargles 10:21
gather 82:9
general 16:5 18:24
19:4 23:18,23
39:11 50:2,5 55:23
generally 15:5 28:8
47:24
generous 35:13
genuine 49:2
Gerber 64:4 84:14
84:15
Gerber's 82:25
getting 67:22,23
gist 25:17
give 21:22 23:23
43:1 46:18 53:18
88:17 89:1,5,13,14
96:2 103:4 106:10
given 14:18,20 21:10
23:2,9 24:6 26:24
28:18 37:6 45:5
48:2 51:25 61:8

63:18 83:4,15 84:3
84:19 85:21 96:21
gives 52:18 107:24
giving 23:23 26:5
glad 19:5 39:2
go 10:21 15:15 17:2
29:14 32:16 34:21
51:12 53:8 54:23
58:22 73:12 74:2
75:6,7 77:24 79:1
79:17,20 84:14
85:2 87:6,6
goad 21:19
goes 28:12 65:23
74:2 78:8 83:6
97:6
going 15:25 16:22
19:19 26:12,18
29:22 32:7,15
33:17,19,25 41:13
44:5 46:3 53:2
54:24,25 55:2,3
57:13 58:7,13 59:6
61:11,13 62:18,20
63:4 65:10 68:6,19
72:10,24,24 73:1
75:1,19,22 76:2,3
77:22 80:12 85:14
85:23 87:11,12
88:2 89:6 99:20
101:7 102:11,14
102:15 104:16
108:6,8 109:19
112:24 113:6
good 10:3 17:19
23:15 26:5 35:19
40:9 44:19,22
55:15,16 57:22
63:9 68:11 69:3
89:13 108:25
gotten 67:16
govern 27:7
governed 112:9
governing 3:5,21
56:14
government 43:14

48:4
governmental 42:3
43:10
grant 93:22 96:11
97:21 112:24
granted 35:18 41:23
42:14,15 43:6
114:9,11
grants 94:25
great 54:17 79:6
102:25
greater 15:21
Green 1:15
Gretchko 9:5 23:15
23:16 24:6,10 31:6
31:8,12
group 48:16 93:2
95:3
guess 43:16 98:10
103:17 106:1
109:17
guided 88:21
guys 69:7,7 72:16

_____

**H**

Hadden 83:9
Hale 6:9 37:19
Halendor 37:19
half 16:19 20:12,13
25:12 75:13 89:15
90:8
Hall 26:13
hallway 103:2
HAMILTON 9:17
hand 68:25 69:5
73:5
handed 81:4
handful 40:19
handle 23:20
handled 108:24
handling 101:1
hands 44:10,15 80:7
hang 113:6
hangs 20:22
happen 64:22
102:20 108:13

**happened** 64:6
74:22
**happening** 76:6
**happens** 34:17 99:4
**happy** 19:24 79:16
100:25
**Harbor** 37:5
**hard** 19:1 25:20
**harder** 15:22
**hardship** 28:20
62:24
**harm** 111:11
**HARRIS** 8:16
**harsh** 24:21 25:7,25
26:6
**hate** 88:11
**hats** 19:15
**havoc** 41:15
**head** 58:17 81:21
**hear** 101:19 102:9
111:6
**heard** 18:20 20:6,17
31:12 62:24 67:11
69:12 85:10 87:23
**hearing** 2:2,6,8,12
2:16,21,23,25 3:8
3:11,17,20 10:5,7
10:16 11:1,13
12:12 13:25 15:8
16:15,18 18:23,25
20:12 21:5 25:11
31:20 32:9,18 33:1
33:7,9,11 35:20
82:9 87:4,14 88:3
90:4,24 92:21 93:3
93:5,8 95:2 97:8
102:11,17 104:4
106:6,7,8,9 107:12
107:16,17,21,22
107:23 110:19
**hearings** 3:3,5,21
11:18 15:2 20:3
22:21 93:6 99:15
100:3 107:25
109:12
**hears** 97:21

**heavily** 28:14
**HEDGES** 5:16
**heeding** 18:9
**held** 12:24 14:17
28:6,17,24 33:1
43:11 93:1 99:16
**help** 25:5
**high** 47:4
**higher** 105:19
**highest** 105:9
**Hills** 9:3
**HIPA** 88:2
**hired** 37:14 60:13
**hiring** 19:4
**Hitache** 112:15
**Hitachi** 7:12
**hoe** 81:1
**hold** 13:5 21:11 23:2
**holdback** 12:19,20
12:22 13:3,12,12
13:15,15,16,21
15:4,9,20,21,24
16:4,19 17:6,11,22
17:25 18:2 20:19
21:8,13 22:14,23
23:21,22 24:20
25:7,8,16 26:2,6,8
26:15,17,23 29:3,7
29:13,19 30:1,9,21
**holdbacks** 12:18
13:8 14:10,11,22
15:3 16:14 17:15
17:22 21:7,18 22:3
22:5 23:11 27:5
28:2,9,12 30:25
114:5
**holder** 92:12 99:14
107:14
**holders** 35:25 36:23
38:13 44:8,17
60:22 63:11 79:25
80:3,16 92:7,18
93:2 98:22 99:22
**holiday** 110:23
**home** 67:14
**HON** 1:22

**honor** 10:3,6,10,22
11:8,11,16,23 12:7
12:17 14:5 15:5
16:5,10 17:19 19:8
19:11,24 20:6,24
21:17,24 22:4,9
23:13,15,20 24:19
24:21 25:6,25 26:4
26:10,14,18,20
29:15 30:14,22
31:3,6,15,21 32:10
32:13,17,19,22,22
33:19 34:2,5 35:1
35:21,21,25 36:18
37:11 38:3,7,16,16
38:20 39:8,24,24
40:9 42:5 48:10,16
49:12 50:23 51:2
51:15,19 52:5,16
53:18 54:5,11
55:15 62:1,15
63:10,22 64:7,23
65:9,15 66:4,14,25
67:14 68:1,3,7,15
68:21,23 70:9,18
71:8,20 72:25
73:24 74:20,23
76:11,23,25 77:1
78:15 79:24 86:11
86:21 87:3,10,18
87:25 88:9,20
89:17 90:7,14,18
91:20 92:1,4 93:17
94:1,2,13,25 95:9
95:24 96:4,8,11,21
97:15,21,24 98:6
98:13,18,21 99:9
99:13 100:6
101:12,14,16,23
101:25 102:1,22
103:8,12 105:5,17
105:24 108:15,25
109:7,24 110:10
110:12 111:13,19
112:12,14 113:1,1
**Honorable** 36:8

**Honor's** 11:25 35:16
36:11 87:14 89:18
92:21 96:17
**hook** 90:12
**hope** 7:24 29:13
99:2 100:21
**hour** 89:15 90:1
91:20 97:15,25
98:12
**hourly** 24:22,25
25:7
**hours** 37:12 90:9
**Howard** 9:1,1 23:16
23:16 90:18
**huge** 20:8 21:8,8
**Human** 41:24 42:5
42:14 43:6
**hundred** 99:6
**hung** 31:24
**H.E** 7:3 97:5 103:9
103:13

### I

**iceberg** 67:12
**idea** 23:23 44:17
**ideas** 89:13
**identifiable** 51:21
**identified** 39:11
110:19
**identifying** 106:5
**ignored** 43:17
**II** 3:4
**IL** 4:6 6:5
**imagine** 19:2 89:23
**immediately** 41:4
62:21
**impact** 44:22
**impart** 36:18
**Impartial** 3:9
**impassioned** 72:14
**impinges** 38:25
**implement** 98:21
**implications** 36:24
44:3 49:23
**implicit** 105:12
**importance** 109:8

**important** 36:22 38:10 39:1 72:22 77:21 78:17 80:14 85:20 100:12
**impose** 14:9 41:17
**imposed** 26:2 45:21 62:17
**imposition** 48:4
**impression** 25:18 103:5
**improvident** 85:17 85:22
**improvidently** 85:24
**inapplicable** 37:4
**include** 106:4
**included** 110:25
**includes** 37:21 73:14 106:17
**including** 17:5 24:14 33:9 35:11 36:11 37:18,18 47:25 71:18 88:2
**inconceivable** 21:19
**incorrectly** 94:12
**increases** 35:3
**incur** 45:7
**incurred** 40:22 57:13 62:20,25 85:5,7
**incurrence** 85:17
**indemnification** 44:17,21,23,23 46:7,9,18 64:17,18 114:13
**indemnified** 57:5,7 57:8,19 71:19
**indemnify** 46:6,7
**indemnity** 46:12,23 47:12 48:5 63:20 65:24 66:2 68:5
**independent** 37:14 37:24 55:11
**independently** 11:9
**indicate** 35:2 103:16
**indicated** 56:9 57:2

70:18 80:19 81:1 93:5 97:10
**indicates** 57:4
**indication** 58:6
**indicted** 64:5
**indictment** 44:2 45:8,10 81:3
**indictments** 45:19 84:13
**indiscernible** 32:2 32:11
**individual** 3:8 19:16 44:9 85:2,13 113:3
**individualized** 96:2
**individually** 72:7
**individuals** 43:12 47:13,19 66:9 67:21 68:9 84:4,10
**individual's** 80:22
**induce** 34:21
**information** 75:21 93:10 107:11
**infringe** 43:11
**initial** 57:23 102:14 104:24
**injecting** 60:17
**injunction** 37:2
**injured** 67:24
**innocents** 49:18
**Inplay** 107:13,14,19
**input** 18:16
**inquiry** 82:1
**insolvent** 21:19 28:11
**instances** 15:22 105:14
**insufficient** 94:7
**insufficiently** 94:14 94:15
**insurance** 2:18 51:6 52:17 53:3,4,23 54:15 56:9 57:1,10 59:2 60:11,11 63:14,16 65:13,14 65:15,16 66:13,22 66:23,24 67:17

68:5,19 69:17 72:19 73:10 74:9 74:11 75:6,10,19 75:24 80:11 81:13 82:6,11,11,13 83:4 84:25
**insure** 60:15
**insured** 57:19 59:14 59:25 62:13 81:14
**insureds** 59:8 60:6 60:21
**insured's** 81:23
**insurer** 59:14
**insurers** 54:7 57:3 58:23 69:3 74:3
**insurer's** 55:3
**insuring** 60:8
**integral** 67:20
**intellectual** 23:18
**intended** 72:20 108:14
**intention** 93:6 108:13 109:25
**interest** 11:12 27:10 27:11 28:6 38:12 39:21 40:13 48:22 51:21,21,22 52:7 53:9 57:24 58:4 60:10 66:18 69:15 69:22,24,25 70:14 70:24 71:2,3,8 72:19,22,23 73:6 83:12 86:18 88:4
**interested** 40:1 76:5
**interesting** 63:12
**interests** 52:21,24 56:14,15,24 57:2 58:5 66:13 71:2 74:25,25 84:1,3,19
**interim** 12:1 16:16 20:18,21 26:16 27:4,6,25 28:3,14 28:22,24 54:20
**intimately** 38:1 63:25
**introduced** 37:23

**intrusive** 83:15
**inventory** 35:3
**invested** 13:8
**investigation** 36:19 37:12,13,16 38:2,4 38:7,8 40:14 45:12 45:18 72:5 81:3
**investigations** 40:18 40:23 42:3 49:20
**investigative** 43:9
**investment** 14:2 17:10 19:4 22:25 26:3 29:5
**investments** 30:5
**involve** 54:25
**involved** 11:7 56:18 63:25 95:13 99:20
**involves** 34:22 88:13
**involving** 64:1 88:1 113:3
**issuances** 37:10
**issue** 13:19 14:5 15:8,24 16:2,4 18:18 19:6 20:17 20:22 22:6 23:21 28:19 32:25 33:7 39:15 43:21 45:14 45:14,23 69:16 75:1 77:3,6,7,9,9 78:17 82:17,22 83:2,3,6,24 85:19 87:9 88:23 89:9 99:4 101:25 104:21
**issued** 45:19
**issues** 15:5 18:1 20:17 21:3 34:11 40:12 49:20 54:6 54:10 56:6 60:19 64:7,8 73:7,7 79:22 83:13 85:25 89:18 99:21 100:16,18 102:7 103:20 104:17 107:25 110:1,7
**issuing** 63:15

**item** 90:8

**J**

**J** 4:17 7:9 8:7
**Jack** 10:3
**JACOBSON** 8:16
**JAHN** 7:2
**January** 10:16 76:7
  93:4
**JESSICA** 5:7
**job** 69:4
**John** 4:8 37:22
**joined** 100:11
**joint** 2:12,16 101:21
**jointly** 11:17
**journey** 71:23
**JR** 4:8 7:9
**Judge** 1:23 43:25
  44:24 64:3,4 69:23
  82:23,25 84:13,14
  84:15
**judgment** 35:19
  36:8,9,12,15,25
  37:3,7 46:6 47:11
  93:12 96:3
**judgments** 43:2
**judicial** 59:12
**juncture** 21:7 63:13
**June** 32:24 33:14
  36:7
**jurisdiction** 74:24
**justice** 38:6 40:15
  72:6 101:24
**J.N** 6:7

**K**

**Kapilian** 50:1
**Kaplan** 43:25
**KASTIN** 5:7
**Kayalyn** 4:16 10:4
**keep** 19:15 32:15
  60:12 86:9 89:11
**KESP** 10:11,14
**key** 63:23 75:21
**Kilroy** 3:20
**kind** 17:24 65:1 66:7
  68:9 91:15

**kinds** 49:24 68:13
  98:20
**KLEIN** 5:9
**Klenda** 6:23 111:19
  111:20 112:11
**knock** 100:22
**know** 14:12,23 16:3
  18:16 19:3 21:8
  25:24 28:4 30:11
  38:18 41:13 49:18
  53:10,24 54:11
  55:2 58:14 62:21
  67:7 69:1,6 70:12
  70:15,25 71:4
  72:10,11 73:17,25
  74:7 75:10,10,22
  76:7,7,14,16,17,17
  79:17 80:12,24
  86:2 88:16 89:18
  90:12 91:2 102:15
  103:15 104:25
  105:1 108:23
  109:14 111:5
**knowing** 28:13,15

**L**

**lack** 95:13
**laid** 19:5
**landlord** 32:25
**language** 80:5 86:12
  106:4
**large** 28:18 63:23
**largely** 82:9
**largest** 11:12 25:14
**Lastly** 81:7
**late** 102:18
**Latham** 8:1 109:1
**Laura** 44:9
**law** 15:18 21:17
  24:15,23 25:2,18
  44:21 46:16 47:1
  48:6 49:11 55:18
  56:19 64:17,18
  74:21 107:7
**laws** 36:6,17 37:6
  74:9

**lawsuit** 36:5
**lawsuits** 40:18,18,23
  74:8
**lawyer** 19:4 25:3
  85:22
**lawyers** 44:1
**lay** 85:8
**layer** 60:18 61:18
  62:2
**lead** 11:4 37:21,24
  51:9,16 52:2 53:6
  53:10 54:19,25
  55:12 60:22 75:2
  86:12
**lean** 71:6
**lease** 2:3,4,10 33:5
  35:11
**leave** 49:21
**led** 83:23
**Lee** 32:1
**leeway** 21:25
**left** 24:17 53:20
  57:22 87:5 112:8
  112:22
**legal** 2:14 40:3
  62:23
**legally** 15:23
**legitimate** 15:25
  48:21 66:19 73:8
  102:20
**length** 21:11
**lengths** 42:12
**Leonhard** 7:23
  17:19,20 19:8,10
  19:13,22 20:4
  30:14,15,22
**letter** 43:19 61:21
  72:14
**let's** 20:11 58:19
  76:13 79:22
  104:25 105:1
**level** 27:13 52:25
  73:10 79:1
**levels** 12:25
**Lewis** 7:11 112:15
**Lexington** 4:21

**liability** 65:5 84:9
  94:8
**lien** 24:22
**lift** 45:2 114:15
**lifted** 62:19 71:16
  84:25 86:4
**light** 23:6 25:13
  26:14 28:7,21
  88:14 96:5
**likelihood** 102:16
**likes** 21:22
**limit** 76:15 81:5
  84:16
**limitation** 98:6
  99:11
**limitations** 73:14
**limited** 2:16 40:12
  47:1 51:11,24
  57:15 81:14
**limiting** 84:7 89:10
**limits** 64:18
**line** 21:4 32:2,11
  72:11 114:4
**linkage** 78:4
**linkages** 52:23
**liquidated** 92:14
  95:5
**liquidation** 35:3
**Lisa** 9:5 23:16
**listed** 29:12 30:16
  106:18
**listen** 103:6
**listening** 18:8
**litigate** 60:1 71:1
  80:12 99:22
**litigated** 74:7
**litigation** 36:22 50:2
  51:10 53:8 54:21
  55:6 61:8,17,18
  67:18 69:7 70:12
  71:22 72:7 73:18
  79:9 80:18 81:2
  85:11 100:17
  101:2
**little** 35:13 53:17
  77:13

**live** 64:8 76:2 82:17
  112:6
**LLC** 2:10 6:17
**LLC's** 32:20
**LLP** 4:3,10,19 6:2,9
  7:11 8:9,16 9:17
  83:9
**LNW** 87:7
**lock** 78:13
**logically** 85:1
**long** 20:8 40:14
  47:24 52:5 81:1
  86:4 91:14 99:25
**longer** 46:21 47:17
**longwinded** 79:19
**look** 27:12 74:24
  88:21 89:15,24
  90:24 91:20
  111:14 112:24
**looked** 18:5,7 65:14
  70:4
**looking** 37:5 87:3
**looks** 44:12
**Los** 5:19
**lose** 20:11
**loser** 102:18
**losing** 77:23
**losses** 34:17 35:4
**lost** 34:14
**lot** 71:24 72:17
  88:18 100:22
**lots** 71:9
**love** 88:20
**low** 25:22
**LOWELL** 5:14
**lower** 84:6 95:17
**lunch** 91:20 97:15
  97:25 98:12
**Lund** 9:22 40:9,9
  41:16 45:10,12,15
  45:19,25
**L.P** 3:20

**M**

**M** 7:23
**main** 70:1

**major** 13:12
**majority** 13:10
**making** 18:1 43:18
  47:6 58:13
**malfeasance** 80:8
**malfeasants** 84:5
**management** 39:9
  110:14
**mandatory** 44:24
  59:13,19 100:13
**manner** 42:6,8,16
  42:17,18 44:7
  49:23 67:2 97:13
**manufacturing** 3:14
  34:3 114:8
**Marafioti** 4:16 10:4
**March** 16:15,18
  21:6 22:22 25:11
  107:23
**Marian** 44:9,12
**Mark** 8:6 108:25
**marked** 88:14
  103:14,21
**markup** 88:17,21
  89:4,14,14 90:25
  101:14,21
**massive** 64:1 99:23
**Mastromarco** 7:2,9
  32:13,13 103:12
  103:13 104:11,14
  104:22 105:3,21
**MATEO** 5:21
**math** 14:13
**matter** 1:6 3:9 13:18
  32:5,17,19,19 33:6
  34:1,1 35:14,22,22
  37:7,25 39:25,25
  51:2 55:1,23 56:5
  57:12,23 58:20
  60:20 62:9 63:13
  65:10 70:2 73:1
  76:3 78:6 80:5
  87:7,8,25,25 91:4
  91:12 92:1,2 94:2
  94:2,18 96:9
  111:16,18 112:10

113:2,2 115:7
**matters** 10:10,11,15
  10:23,24,25 11:2
  11:21 23:20 32:11
  37:10 87:4,5,17,18
  92:4,13 96:20
  99:12 108:1
**Matthew** 9:22 40:9
**MATZ** 4:17
**Maureen** 9:15 26:21
**MAW** 6:2
**MAYER** 6:2
**Ma'am** 111:6
**MDL** 55:6 70:12
  72:7,24 73:1 79:9
  79:14
**MEAGHER** 4:3,10
**mean** 15:22 53:19
  54:9 65:14 66:3
  67:5 72:1 73:24
  78:12 88:17
  102:21 104:16
**meaning** 49:18
**meaningful** 18:17
**means** 43:9 73:18
**measure** 28:18
**mechanism** 33:22
  33:23 56:18 58:20
  73:15 85:18 86:1
**mechanisms** 59:5
  85:19
**mediation** 59:15,25
  60:6 89:10 100:10
  100:15,21,24
  102:12,19
**Medical** 3:9,13 34:2
  34:6
**meet** 33:9 37:8 47:3
  98:24 100:10,14
  100:14,20,22
  101:1,5,10 104:16
  106:25 110:2,2
**meeting** 102:16
**meetings** 40:14 50:4
**member** 37:22
**members** 37:20,21

**memorialized** 36:9
**Menachem** 7:16
  112:14
**mention** 60:7,19
  62:14 97:19
  101:13
**mentioned** 71:18
  77:22
**merit** 48:7
**merits** 77:17 98:3,4
**mess** 88:18
**MEYER** 5:9
**MEYERS** 5:2
**MI** 7:7 9:3,20
**Michael** 7:5 8:14
**Michigan** 7:6 23:17
  32:3 36:3
**microphone** 10:20
  18:22 41:12,15
**middle** 29:22 69:9
**Miliken** 107:9,10
**million** 14:13,14,15
  34:14 35:2,7 41:22
  46:8 48:19 52:14
  53:15,15,16 54:1
  61:5,13 62:2,14,17
  63:3,6 67:7,8,11
  67:11 69:1,2 70:19
  70:22,23 71:5 75:6
  75:13 76:13,17,19
  79:12 82:3 83:18
  84:25 85:7,9 86:7
  94:17,22,23 95:4
  95:11 112:5,7
**mind** 32:12 103:8
**minimum** 21:14
  106:19
**minute** 109:22
**minutes** 62:4 87:20
  87:20 88:10 89:20
**mistake** 83:2
**moderated** 69:10
**modification** 20:10
  86:2 94:10 95:3,10
  98:18 107:2
  109:19,22

**modifications** 98:2
103:15 104:4,7
106:24 107:2
109:2 111:22
**modified** 20:1 42:6
45:1 51:17 91:11
93:22 96:7 98:1
104:8 105:6
109:10
**modify** 2:13 40:1
98:15 109:7
**moment** 18:3 21:4
72:9 75:5 95:2
97:14
**Monday** 108:6
**monetary** 36:20
43:24
**money** 15:23 21:23
34:21 58:22 64:5
64:19 66:13,17
71:14 83:22 84:2
84:14
**monies** 66:11,12
**monitor** 81:8
**monitoring** 76:10
**monthlies** 13:12,16
17:12 23:2
**monthly** 83:11
**months** 12:23 20:13
21:6,13,14,15,25
22:4 25:9,11 28:7
76:14
**Morgan** 7:11 112:15
**morning** 10:3 17:19
19:15 40:9,21
55:15,16 63:9 89:4
102:5 110:22
**motion** 2:2,6,8,12,12
2:16,16,25,25 3:8
3:11,11,17 10:11
10:12,13 32:24
34:2 35:1,23 39:19
40:1,6,13 41:17
42:4,13,24 44:3
46:3,17 48:7,9
51:3,7 55:21 62:15

63:9 67:6,10 68:14
69:12 80:17,20
82:5,20 87:8 88:1
94:25 95:7,8 96:6
96:10,12,12 104:7
114:7,10,13,15
**motions** 41:6,6
69:11 80:19
**mourning** 23:15
**movant** 44:9 78:20
79:4
**movants** 40:10,12
40:20 41:5,5 46:10
51:4,4,12 53:5,25
54:12,19 55:10
57:16 60:20 61:12
62:8,15,20,22 63:1
63:23 64:2 68:25
73:4,12 74:10
76:16 77:4 81:14
82:2 83:7,8 84:24
85:15
**movant's** 40:6 51:7
**move** 12:4 33:16
55:6 64:3 72:10
74:18 96:8
**moved** 55:21
**moving** 66:10
**muddy** 82:22
**multi** 53:7
**multiple** 93:1
**multi-district** 51:10
**mute** 32:15
**Myers** 55:18

---

**N**

**N** 4:1,2 10:1 114:1
115:2
**name** 23:15 34:8
55:17 115:13
**named** 58:2,5 70:1,3
70:11,12 72:6
**narrative** 76:4
**natural** 78:8
**nature** 13:9 109:5
**near** 10:19 18:22

82:2
**necessarily** 43:7
53:5,25 71:4
**necessary** 12:3 26:8
38:17 99:2 100:21
**need** 12:11 18:10,11
21:10 25:16 27:1
29:7 31:19 46:2
55:5,24 73:2,8
74:18 75:4,18,20
76:15 77:7 99:7,23
105:24
**needed** 34:16 108:1
**needs** 20:9 21:9 76:9
76:14 87:23 99:10
**neglect** 111:11
**negotations** 37:17
**negotiated** 54:15
**negotiation** 28:16
97:18
**negotiations** 62:9
**neighborhood** 92:23
**neither** 44:14,14
**net** 35:11 47:4,11
50:15
**never** 24:19 32:12
57:11
**new** 1:3,16,16 4:14
4:22 5:5,12 7:14
7:21 8:4,18,19
9:13,13 10:15,24
61:18 64:17 74:22
80:21 103:14
**nice** 23:10 24:15
**nine** 61:11 62:22
71:22
**nineteen** 41:8
**ninety-day** 15:12
**ninety-seven** 95:10
**nobody's** 20:7,10
**non** 57:4,6
**Nonresidential** 2:10
**non-cooperation**
49:24
**non-indemnified**
57:20 70:17

**non-residential**
32:21
**normal** 26:4 35:14
**normally** 24:5,8
**North** 7:6
**Northern** 83:10
**note** 82:21 84:12
**noted** 33:12 109:7
**notice** 2:8 31:22
93:11 96:1,2 99:16
106:5 107:11
109:21
**noticed** 24:14
**notices** 3:4 43:23
49:22 109:11,12
**notwithstanding**
46:13 107:18
**November** 1:18 14:6
36:7 110:20
**number** 10:11,12,13
11:13 24:12,12
28:5 32:19,22 34:1
34:1,5 35:23,25
39:25 40:4,17 50:3
62:22 63:15 65:17
66:14,25 87:25
90:17,21 92:2,3
94:3,4 96:9,10
97:4,7 98:13 99:20
102:25 106:15
107:12,14 112:5
**NuTech** 6:18 111:21
**NuTechs** 111:20,25
112:2
**NW** 6:11
**NY** 4:14,22 5:5,12
7:14,21 8:4,19

---

**O**

**O** 1:21 7:16 10:1
115:2
**Oak** 23:17
**Oaks** 32:3
**object** 20:2 27:21,22
73:17 74:3 81:19
83:17 95:14

objected 94:6
objecting 74:15 77:4
objection 2:8,8,21
  2:23 3:20 32:20
  33:3,6,12,22 35:24
  38:17 39:2 40:8
  44:16,19 50:8,17
  51:9,9,11,15 87:22
  91:13 92:3 94:3
  95:12 96:9 97:4,5
  97:6,7,7 98:3,4,17
  98:17 101:19
  103:8,9,17 105:4
  105:19 106:5,6
  107:9,15,17,22
  110:20,21 111:22
  112:16
objections 19:20
  35:15 39:20 40:4
  42:10,12 51:8
  84:23 88:14,22
  92:5,7,10,13,19
  93:7,24,24 94:5,6
  95:19 96:6,13,15
  96:23,25 99:6,6
  101:19 105:16,22
  106:19,20 108:20
  108:23 112:22
objection's 51:16
objection/contested
  112:9
objector 88:23
  98:16
objectors 51:12
  81:23 97:12,18,22
  97:22 98:16 99:9
  101:17,23 108:8
  108:11
obligated 48:6 49:10
obligation 101:5
  103:5
obligations 2:4 37:9
  39:15,17 41:24
  42:5,15 43:6 47:21
  76:2
observed 74:22

obtain 52:1
obvious 79:5
obviously 11:8
  18:20 77:2 88:20
  104:20
occur 22:21 29:7
  34:24 55:4,7 74:8
  110:3 111:22
occurred 49:6 67:21
October 2:13 36:1
  40:2
office 7:18 110:22
officer 39:13 56:2
officers 40:21 46:8
  46:10,19,21 47:9
  47:16 48:17,19
  49:14 50:9 52:25
  55:20 56:10 57:14
  61:12
official 35:24 63:11
  82:14 115:5
oh 32:12 90:11
  111:18
Ohio 83:10
okay 10:2,9,18,21
  12:16 13:24 14:4
  16:9 17:1,13,18
  18:20 19:9,10,12
  19:21 22:2,7 23:14
  26:19 29:17 30:23
  31:5,23 32:16
  33:18,24 35:18
  39:5,19 45:11,24
  46:2 50:14,22 51:1
  52:13 55:8,14
  58:19 60:4 61:3
  63:7 68:22 74:12
  76:21,24 78:14
  79:23 82:5 86:14
  87:2,16 88:5 89:21
  90:6 91:21,24
  93:15,18 95:18,25
  96:5 99:25 100:7,7
  100:25 101:11
  103:11 104:1
  105:3,23 106:13

108:12,21 110:5
  110:11,16,17
  111:14,14 112:13
  112:21,23 113:6
OLIVER 5:16
omni 93:20 96:13,17
  96:18
omnibus 2:23 10:5
  11:19 76:19 87:14
  89:6 92:2 94:3
  106:8,8,19
omnis 96:16
once 33:21
ones 30:5 80:17
  102:6
one-size-fits-all
  109:5
ongoing 21:1
open 90:24
operates 11:9
operating 35:4
operation 34:16
  63:18
operations 3:15 34:4
  34:12,19,24
Opi 49:5
Opie 37:22 38:16
Opie's 43:12,18
Opi's 49:3
opponents 80:16
opportunity 91:19
  97:16 98:25
  100:15,16 102:13
oppose 23:1 76:11
opposed 22:11 62:4
  74:17 82:14,14
  84:8 89:6 94:6
  95:21 101:4
  105:20
opposes 17:21
opposing 104:20
opposition 79:3
  82:10 83:7
opt-out 97:9
order 2:13,25 3:11
  3:17 10:8 12:4

16:17,17 28:22
  29:2,16,23 30:11
  31:1,4,21 33:1,20
  33:21,25 35:19
  36:11 38:14 40:2
  41:24 42:5,15 43:6
  44:6 45:1 46:4
  47:19,22 48:8,13
  50:14,18,19 52:8
  53:5 55:10 63:15
  66:3 68:14 73:11
  73:19 74:11 75:9
  75:16,20,25 76:1
  77:12,13 78:1 86:3
  87:6,7,21 88:12
  89:6 92:9,20 93:2
  93:9,25 97:2,17
  98:9,11,12,14,19
  98:21 100:18
  102:2,4 103:14,15
  103:18,22 105:6
  106:21,22 107:19
  107:21 108:6
  109:3,4,14 110:1
  110:25 111:15,23
  112:8,25 114:5
ordered 104:9
orderly 34:20
orders 50:24 98:3
  112:17
ordinary 25:19,21
  35:12
organized 20:9,9
original 97:17 109:4
Orix 2:10 32:20,25
  33:9
ought 14:10,10 73:9
  73:9,14 102:7
  105:1
outgoing 81:17
outline 36:22
outside 27:9,13,15
  60:13 100:15
outstanding 67:18
outstandingly 26:5
overall 65:23

**overhang** 68:21
**overly** 83:15
**oversight** 73:10
**overstated** 94:11
**overturn** 50:18
**oxygen** 41:14
**o'clock** 89:19 90:5
**O'Melveny** 5:2
  55:18

**P**

**P** 4:1,1,2,2,24 10:1
**package** 68:3 69:18
  69:19
**page** 10:6 44:12,14
  89:7,9 109:14,14
  114:4
**pages** 109:15
**paid** 13:11 17:10
  22:4 23:3 26:16
  54:1 57:6,7,21
  62:16 63:2,4 64:20
  66:17 71:14
**Palmer** 7:4,5
**papers** 13:22 35:1
  36:10,23 37:11
  43:20 44:13 46:1
  52:22 70:16 77:3
  77:11 78:16
**paragraph** 86:13
  89:7 105:8 107:21
  109:3
**parallel** 38:7 72:5
**Park** 7:13
**part** 14:5 16:15
  18:23 34:15,19
  41:23 45:2 69:18
  82:15 98:2
**parte** 10:13
**participate** 17:11
  32:8 55:4
**participated** 37:24
  49:19
**particular** 15:13
  34:8,19 47:13 57:1
  88:1 101:24 112:1

**particularly** 28:14
  84:4 101:25
  102:14
**particulars** 109:8
**parties** 2:13 10:14
  11:16 18:14 27:9
  27:11,20 28:6
  30:16 40:1 48:14
  52:17 57:7,21
  59:20 74:3 82:16
  83:12 86:17 87:13
  88:3 89:11 91:6
  96:25 98:7 102:9
  103:23 104:3,9
  107:1,20
**partly** 88:12
**party** 14:20 35:16
  71:19 78:21 79:4
  81:17 83:21 95:13
  104:5
**party's** 59:24
**patent** 23:19
**path** 28:9
**Paul** 6:7 9:18 40:10
**pay** 2:18 27:16 29:2
  46:7,18 48:15,19
  49:10 66:1,11,14
  69:1,1,8,13 71:12
  75:8
**payable** 59:23
**paying** 46:20,20
  47:2
**payment** 2:3 21:25
  35:11 47:6 48:5
  50:20 52:18 53:1,2
  54:17 57:7 64:25
  67:22 73:22
**payments** 20:18
  21:3 47:16 48:24
  48:25 53:19,22
  54:3,7 57:4 70:17
  72:20 78:1
**PC** 23:16
**penalties** 36:20
**penalty** 13:14 26:3
  43:24

**pending** 58:3 61:10
**Pennsylvania** 6:11
**people** 11:7 12:12
  31:16 49:19,21,21
  49:22 53:11 55:5
  64:4 67:12 71:22
  71:25 72:1 73:2,23
  75:15,21 85:8 86:9
  86:24 89:2 90:24
  102:12,25 109:4
**PEPPER** 9:17
**percent** 12:19,20,22
  13:4,4,5,6 15:20
  15:21 16:2,8,14,19
  16:19 17:2,3,7,7
  17:22 18:2 21:7,14
  22:24,24 23:7,12
  23:12 25:6,8,15
  26:23 28:23 29:3
  29:19,20,21,21,23
**percentage** 28:9
**perfect** 52:8
**perform** 11:6 39:17
**performance** 2:3
  27:14
**performed** 12:10
**performing** 47:12
**period** 12:23 16:20
  16:21 20:6 22:3
  23:9 29:1,9,9,22
  34:22 37:4,25
  52:15 89:5 99:8,24
**periodic** 86:8
**periods** 22:20 29:8
  29:12,13 30:3,4,10
  30:17
**permission** 10:7
  41:19 87:15 92:21
**permit** 58:22 64:25
  71:16 84:24 98:2
  103:23
**permits** 104:11
**permitted** 24:13
  104:8
**persecutions** 23:19
**person** 64:20 78:8

**Personal** 7:4
**personalized** 106:4
**personally** 50:3
**persons** 63:23 66:12
  67:19
**perspective** 12:4
  16:11 23:13 24:23
  51:19 52:16 54:11
  74:18 76:5 100:18
  102:21,22
**pertain** 84:11
**pertinent** 42:23
**PETERSON** 5:14
**petition** 2:4 42:20
  42:23 47:5 48:22
  67:23
**phone** 31:13,24 32:1
  32:2,4,8,11 90:13
  103:10
**phones** 32:15
**pick** 31:13 43:6
  112:5
**piece** 12:17 100:8
  101:13
**Pitrene** 37:19
**place** 18:3 30:11
  39:6,14 42:22 55:6
  56:21 64:18 91:8
  106:22
**places** 81:21
**plaintiff** 54:25
**plaintiffs** 51:10 52:2
  53:6,10 54:19
  55:13 60:22 75:2
  80:20 86:12
**plaintiff's** 51:16
  75:12
**plan** 47:3,7 54:23
  55:3 64:25 69:15
**Plano** 106:23
**Plastic** 111:20
**Plastics** 6:18
**play** 29:15
**played** 42:2 43:21
**playing** 44:18
**Plaza** 8:18

**plea** 72:14
**please** 10:2 32:18
  91:24
**pleased** 38:8
**pleasure** 23:17 25:4
**Plimpton** 9:10 26:21
**plus** 51:4
**pocket** 20:15
**podium** 40:5
**point** 22:1 31:24
  33:20 42:9,12
  51:25 60:23 61:2
  61:24 62:5,14
  67:14 68:2,7,8,15
  68:17 70:24 71:8
  72:11,15 73:2,9
  74:6 75:23 76:9
  77:19,24 78:5,11
  78:17 79:16 80:15
  81:10,19,25 82:4
  83:4,25 84:3,5
  85:25 87:11 98:21
  103:6,15 112:4
**pointed** 49:12 52:21
  73:24
**points** 77:6 80:3
  83:7
**policies** 2:19 14:9
  35:13,14 51:6,22
  52:17 53:13 56:1,7
  56:9,14 57:10,21
  59:3,8,14 63:14,16
  63:17,19,21 65:4,8
  65:21 67:1,9 71:9
  72:19 73:21 80:13
  82:13,16,18 83:14
  83:16,22 84:1,3,6
  84:20 85:16,17
**policy** 17:23 42:25
  43:1 46:19,20,22
  46:24,25 52:19,22
  52:22 54:15 56:2,9
  56:12 57:1,19 58:4
  59:17,24 60:3,11
  60:15,16,21 61:13
  62:8,14 65:23,24

67:8 69:17,25 70:1
  70:19,21,22 71:5
  71:11,12,17 73:13
  74:6,7 75:8 76:12
  77:25 78:1,7,7
  80:5,6,9,10 81:4
  81:15,24 82:12
  86:1,6,17
**policy's** 71:17
**pool** 41:7 49:13
**position** 26:23 56:16
  57:23 69:7 77:10
  77:16 78:22,23
  79:5,7,12
**possible** 26:9,10
  74:23
**possibly** 11:24
**post** 2:3 47:5 48:21
**posture** 79:14
**post-petition** 42:15
  42:20 44:6 46:15
  47:6,10 54:14,18
  55:7 69:14,19
  74:21
**pot** 65:16,17 66:13
  68:5,6,18 75:6
**potential** 21:18 81:3
**powerful** 41:12
  78:11
**practical** 56:5 57:12
  58:19 60:20 62:9
  96:12
**practice** 25:3 104:7
**practicing** 24:23,24
**pre** 42:19 67:22
**precedence** 14:10
**preclude** 71:4
**prefer** 65:10,13,16
**prejudice** 23:10
**preliminary** 67:10
  68:15
**premature** 64:24
  68:16 84:2
**prematurely** 67:15
**premise** 42:13 63:13
**prepare** 87:13

**prepared** 26:11
  33:11 75:5 96:11
  96:18 97:21 102:1
**preparing** 33:8
  96:17
**prerequisite** 42:19
**prescribed** 33:3
**present** 28:20 40:6,7
  51:15
**presented** 102:16
**presents** 68:3
**preserve** 72:20
  111:25
**preserved** 60:16,17
  106:24
**preserving** 60:10
  111:10
**pressure** 43:14
  45:21 48:3
**pressures** 43:8
**Presumably** 73:23
**pretty** 56:25
**previous** 28:22,24
**previously** 38:5
  60:25
**pre-petition** 24:17
  42:11 44:25 46:9
  46:12,13 47:2,7,12
  49:11,13 50:20
  56:1 65:12 66:17
  66:21 67:21 69:14
**price** 24:7,11
**pricing** 35:3
**primarily** 29:6
  96:15
**primary** 40:11
**principal** 106:22
**printed** 115:13
**prior** 11:16 13:25
  28:21 40:13,23
  45:1 50:10 55:21
  61:21 68:24 97:17
**priority** 52:18 53:2
  54:16 57:4 65:19
  66:2 68:9 70:16
  72:20 85:2

**private** 27:22
**privately** 72:18
**privilege** 60:19 76:3
  83:13
**privileged** 76:4
**privy** 28:4
**probably** 14:16 83:3
  86:24
**problem** 20:10
  21:15 58:24 59:1,4
  59:7 63:5 66:6
  108:17
**procedural** 94:6
**procedurally** 15:1
  108:5
**procedure** 12:4
  56:13 112:1
**procedures** 3:2,4,12
  3:21 11:6,11,15,21
  12:1,2,9 15:14
  18:12 19:25 39:6
  39:14 88:12 91:3,4
  91:11,12 94:24
  95:7 96:10 97:8,10
  98:1 104:5 105:13
  105:15,16 106:6,9
  106:11,20,25
  107:4,16,19,21
  109:7 111:23
**proceed** 33:10
**proceeding** 60:1
  61:10
**proceedings** 113:8
  115:6
**proceeds** 55:25 56:7
  56:9 57:22 59:2
  60:16 67:17 69:13
  79:9 80:10,11,24
  81:4,13 82:18 85:1
  85:1,2 86:6,16
**process** 12:3 18:15
  22:5 25:6 27:17,24
  28:16 30:8 33:8
  38:11 43:12 45:22
  47:23 48:7 50:10
  56:17,20 59:11

60:8,18 75:7 81:20
96:17,18 100:20
100:21,23 104:15
104:18 105:5
109:5,18 110:4
**processes** 33:8
100:10,12,13
109:9
**product** 37:12
**products** 34:25
**profession** 16:8
**professional** 12:8
25:19,21 27:13
28:2 29:9
**professionals** 11:4,9
11:20 12:25 13:7
14:7,23 15:19
17:14 18:21,25
20:5,22 21:1,10,16
21:20,22 23:1 27:8
27:17,23 28:25
29:3 62:25
**proffer** 38:17
**proffered** 59:5
**proffering** 41:2
42:20 45:4
**profitable** 34:13
**progress** 14:21 18:1
79:14 88:18
**project** 24:6
**projection** 85:6
**projections** 94:5
**prominently** 109:11
**promised** 101:22
**promptly** 104:6
**proof** 33:5 48:2
**proofs** 92:5,8,11,14
92:16
**proper** 42:7 54:22
**properly** 32:21 48:2
59:23
**property** 2:10 23:18
47:24 48:1 51:20
51:21 52:6,21,24
56:3,3,7,8,14,15
56:19,21,24,24

57:23 58:5 61:19
63:14,17,21 64:17
69:22,24,25 70:13
70:24 71:2,3,7
73:6 74:25,25 77:3
77:6,17 79:22
80:11,13 82:17,18
83:24 86:17
**proposal** 59:4 83:8
84:24
**proposals** 31:11
**propose** 51:11 61:16
**proposed** 3:21 36:11
51:17 55:9 58:20
67:5,6 69:10 81:20
82:19 83:18,18
103:14 104:3,6
109:6 112:17
**proposing** 53:24
54:1 103:16
**proposition** 20:25
79:8
**protect** 28:1
**protection** 37:4
**provide** 34:16,20
52:16 55:24 65:17
75:20 81:11 85:18
99:3 107:10
**provided** 13:10
81:16 86:1 93:10
**provides** 52:14
65:16 78:7 86:4
**providing** 13:13
25:4 35:1 47:9
48:20
**provision** 57:4 59:13
59:19 64:11 71:10
78:1 112:8
**provisions** 36:17
52:20 71:9,17
83:14 107:18
**prudent** 51:25
**psychologically**
15:23
**public** 38:5 42:24
43:1 46:22,24

**publicly** 43:24 64:12
**pull** 100:6
**purchased** 56:1,10
69:17
**purpose** 79:10
**purposely** 77:8
**purposes** 66:25 91:2
91:17 95:15,16
98:8 100:13
105:11 106:22
112:7
**pursuant** 2:25 19:17
32:24 36:14 44:5
47:3 94:24 106:9
**purview** 15:10
**put** 17:8 20:4 24:22
31:21 39:14 45:16
66:20 77:14 87:13
104:2
**P.C** 7:2 9:1

---

## Q

**qualifications** 29:4
**qualify** 30:15
**quality** 32:7
**quantifiable** 18:7
51:20
**quarterly** 30:12
**question** 14:19 15:2
20:16 22:16 31:6
39:5 55:25 56:5,23
74:6,10 105:4
110:13
**questions** 19:11
29:14 38:18 93:20
105:22
**quick** 80:3
**quickly** 21:20
**QUINN** 5:16
**quite** 20:9 24:15
25:22

---

## R

**R** 1:21 4:1,2 10:1
115:2
**raise** 74:4 85:25
110:8

**raised** 14:20 62:18
82:10 83:7 84:24
110:2
**raises** 60:19 73:7
83:13
**ran** 12:21 25:23
96:24
**range** 15:20,21
61:12
**rate** 23:23,24 24:2,4
24:11,25 76:6
**rates** 24:22 25:8
26:5
**rational** 84:21
**reach** 30:1 75:1 77:7
77:9 78:19 98:25
104:14
**reached** 75:2 77:8
**reaches** 30:25
**reaching** 86:16
**read** 33:20 42:9
43:12,15 46:1
74:21 104:2
105:25 109:15
**reading** 73:25
101:24
**real** 2:10 14:18
**really** 28:12 45:13
51:3 56:5 62:3
63:20 64:14 65:14
66:4 67:12,14
68:25 71:14 77:24
78:6 83:6 86:13
91:4 101:4,8
102:18 103:15
105:12 112:22
**Realty** 3:20
**reason** 19:1 20:7
56:16 63:15 66:20
69:20 82:2 101:3
102:24
**reasonable** 17:23
18:9 19:3 21:22
22:16 28:13 38:12
46:6 47:18 59:1
61:6,21 76:10

81:22 104:4,25
**reasonably** 20:6
**reasons** 21:18 28:5
  48:9 59:6 69:10
  79:6 85:4,15
**receive** 20:19
**received** 17:9 43:23
  92:12,17
**Recess** 91:23
**recognized** 47:24
**recommend** 22:23
**recommendation**
  12:6,10 13:18 16:7
  16:23
**recommendations**
  12:13 15:18 18:24
  19:2 22:11,18 23:4
  23:7 50:1
**reconsideration**
  105:18
**record** 14:1 17:8
  22:10 33:13 34:9
  39:1 50:12,21
  78:18 85:10 91:25
  96:7 105:25 108:2
  112:23
**recording** 10:18,20
  115:6
**records** 27:18 94:9
**record's** 48:12
**recover** 54:12,15
**recoveries** 67:23
**reduce** 13:4 16:19
**reduced** 16:1 17:7
  22:24 23:12 29:19
  29:21 93:16
**reducing** 13:2
**reduction** 23:8 24:4
  24:11 29:10 35:4
**reemphasize** 79:3
**refer** 82:23
**references** 91:9,13
  91:18 105:13
**referred** 74:1
**referring** 83:23
**reflect** 98:9

**reflected** 93:25
**reflecting** 94:7
**reflects** 93:9 112:23
**refused** 59:17
**regard** 27:5 28:25
  29:8 43:4 45:20
  95:19
**regarding** 3:3,5,21
  86:16 105:5,6
  110:13 114:5
**regular** 39:10 81:12
**reiterate** 31:19
**Reject** 2:9
**rejected** 35:5
**Rejection** 2:2
**relate** 40:18
**related** 22:18,22
  98:14
**relates** 44:9
**relating** 36:6 40:15
**relatively** 104:15
**release** 14:21 15:3
  17:22 30:25 32:21
  78:20
**released** 13:8 30:2
**relied** 45:5
**relief** 2:16,17 16:15
  37:2,6 51:24 53:24
  54:14 55:24 59:7
  61:17 77:4 79:2,3
  82:7 93:22 95:1,19
  95:21 96:11 97:21
  112:24
**reluctantly** 79:1
**remain** 29:23 30:11
**remained** 18:3
**remaining** 30:1
**remains** 71:21
**remind** 32:14
**removed** 103:19
**Renaissance** 9:19
**rendered** 37:2
**renders** 37:3
**reorganization** 25:6
  54:23
**report** 11:3 18:11,24

30:17 31:10 36:18
  96:23
**reporting** 37:9 39:7
  40:16 76:2 86:8
**reports** 11:1 40:20
**represent** 44:11
  55:18 83:20
  110:18
**Representative** 7:4
**representatives**
  37:17
**represented** 55:5
  73:2
**representing** 53:11
  62:25
**represents** 85:6 94:4
  94:5
**request** 13:17,23
  14:3 15:2,7 17:4,8
  38:13 41:17,18,23
  64:24 90:9 104:5
**requested** 26:15
  29:11 67:12,19
  77:4 107:1 109:10
**requesting** 11:17
**requests** 13:1 17:15
  68:5
**require** 27:19 28:9
  28:23 29:1 42:6
  45:2 61:14 85:14
  86:8 98:5 101:1
  102:10 104:18
**required** 17:11 41:1
  44:19 50:14 64:19
  83:8
**requirement** 30:9
  99:14
**requirements** 39:7
  91:12 106:20
**requires** 45:4 67:1
  80:7
**requiring** 37:8
**reservations** 38:25
**reserve** 79:20 86:18
  107:8 112:6
**residual** 57:10

**resolution** 52:3,4
  55:12 59:13 65:1,1
  68:18 85:18
**resolutions** 93:25
**resolve** 59:25 60:7
  67:18 68:6 92:24
**resolved** 38:9 39:3
  44:20 51:16 72:24
  88:22 92:19 93:24
  96:22,25 97:12
  98:24 99:6 111:21
  112:16
**resolving** 55:25
**resources** 59:12
**resourcing** 34:25
**respect** 14:9 15:5
  17:9,15 18:1,16
  22:15,19,24 25:17
  27:24 29:24 30:17
  34:14 37:7 47:16
  48:4,18 49:13 52:2
  55:22 57:25 59:22
  63:16 65:21 66:5,9
  68:13 72:12 78:6
  81:17 82:1 85:16
  93:23 94:14,17,20
  95:10,20 96:11,22
  97:20 98:3 99:4
  106:14,25 107:6,9
  107:12,13,17,22
**respectfully** 23:21
  24:20 26:1
**respects** 13:13 29:4
  34:10 64:19
  101:16 102:5
**respond** 22:9 79:24
**response** 35:23
  51:17 65:22 72:11
  77:14 80:3 81:7
  89:6 91:7 92:12
  95:13 97:22
  106:17,18,19
  108:20 110:20
**responses** 15:18
  92:6,10,17 106:7
**responsibilities**

59:24 68:11
**responsible** 74:18
**rest** 90:4
**restatement** 36:7
  40:20 42:4
**restrictions** 41:10
  41:18
**restricts** 86:6
**result** 29:6 40:22
  82:10 109:9
**resulting** 36:24
**results** 24:11
**retain** 107:3
**retained** 25:25
**retainer** 24:13,16,16
**retentions** 22:25
**retribution** 21:9,9
**retrospect** 21:3
**return** 47:14
**reversed** 83:2
**review** 15:9 18:8
  19:18 27:23 28:16
  28:19,20 52:15
  59:10 61:20 66:8
  69:2 73:15,15
  76:15 77:11 83:12
  85:13 96:6 97:16
  104:12
**reviewed** 18:6 19:16
  35:14 38:14 97:1,2
  98:11,12 102:4
**reviewing** 60:14
**reviews** 27:21
**revised** 98:19 109:3
**revisions** 98:20
**Rigases** 84:13,16
**right** 16:9 22:1
  26:19 27:3,12
  28:17 29:16 30:19
  33:15,16 39:19
  42:11 45:1,6,7,15
  45:24 46:13 47:25
  49:1,3 53:1 54:13
  57:3 58:8 59:15
  60:13 61:2,22 62:6
  62:21 63:4 64:21

70:6,12 71:19
  73:13,21,23 74:2,3
  74:3,5 75:9 77:20
  78:3 79:13,16,22
  83:21 86:20 88:24
  90:16,20,25 91:21
  93:19 95:14,18,21
  96:5 102:23 103:7
  104:13,25 106:24
  109:17 111:5,9,14
  111:15,17,25
  112:23 113:2,6
**rightly** 56:24
**rights** 43:12 45:22
  47:25 48:1,3 57:6
  57:9 59:24 60:15
  75:24 79:21 83:15
  86:18 107:3,5,8
  109:11,13 111:4
  111:10,11
**rise** 44:44 52:25
**risk** 44:2 85:23
**risks** 85:16
**Riveras** 32:10,10
**road** 81:1
**Robert** 1:22 7:3 8:7
  55:17 97:5 103:10
**Rogersh** 110:12,12
  110:16,18 111:7
  111:13
**ROGUS** 6:15
**role** 42:2 43:21
**rolling** 25:16
**Rosenberg** 8:7
  19:24 20:20,24
  21:24 22:3,8 25:17
  27:4 28:17 78:15
  102:22
**Rosenberg's** 25:13
**Rothschild** 9:11
  26:22,23,24
**ROWE** 6:2
**ROY** 6:7
**rule** 69:23 87:12
  93:12 102:17
**ruled** 54:11 80:20

105:19
**rules** 3:1,12 91:4
  112:10
**ruling** 48:12,16
  49:12 54:13 59:21
  86:22 105:17
**RULINGS** 114:3
**run** 70:3

---

**S**

**s** 3:20 4:1,2 5:18
  10:1
**safe** 37:5 112:18
**Saginaw** 7:7
**satisfaction** 98:15
**satisfactory** 18:15
**satisfy** 54:6 91:12
**saw** 25:1
**saying** 30:19 42:13
  62:3 65:24 68:25
  69:6 72:14 75:17
  75:18 79:2,19
**says** 44:14 68:3
  71:11 73:15,16
  74:12 105:6 112:4
**schedule** 88:13
  99:19 104:6
**scheduled** 10:24,25
  99:8 110:3 111:3
**scheduling** 89:18
  98:23 109:12
**scope** 61:8
**SDNY** 82:24
**seal** 88:7
**seated** 10:2 91:24
**SEC** 35:22 36:10,14
  36:19,19 37:6,17
  38:4,8,15 40:15
  43:24 44:11 61:10
  64:1,13 72:3,4
  81:2 114:10
**second** 12:19 13:3
  14:13 17:6 20:3
  23:8,11,25 24:2
  26:16 29:12,18
  30:17 48:18 60:5

63:5 72:23 80:9
  92:2 93:20 98:10
  100:8 106:14,18
**secondly** 29:8 83:17
  85:17 89:9 101:5
  104:23
**seconds** 51:18
**Section** 3:12 19:17
  105:11
**Sections** 3:1
**securities** 3:18 36:3
  37:2,6,10,13 61:9
**security** 35:25 36:5
  36:17 44:8,16
**see** 18:11 19:25 63:8
  76:4 79:13 103:18
  103:22 112:24
**seek** 27:14 33:15
  36:20 47:19 57:7
  59:15,25 60:6 61:7
  62:18 103:23
  104:11 105:14,18
  106:24 109:19
**seeking** 46:15 79:2
  84:8 95:19 107:2
  109:22
**seeks** 46:4 50:17
**seen** 86:4 103:14
**self-evident** 11:10
**send** 16:17 93:11
**sense** 13:19 18:25
  52:8 53:18 54:17
  54:21 70:11 88:17
  89:15,25
**sent** 31:10 109:12
**separate** 60:1
  103:20 104:18
**separately** 38:5
**September** 12:21
  22:21
**series** 39:13 73:6
**serious** 77:24 83:13
**seriously** 39:15,16
**serve** 100:13
**served** 96:1
**service** 26:5

**services** 7:3 24:22
25:4 34:25 97:5
103:9,13
**set** 10:23 12:1 25:21
43:4 56:13,18
61:13 83:14 90:20
105:10 106:9
109:24
**sets** 10:20
**setting** 63:5
**settle** 79:8 86:23
99:22 100:15
102:13 103:1
108:14,16
**settled** 36:4 38:9
43:23 80:10
101:23
**settlement** 3:17
29:25 35:22 36:10
36:14,21 37:11
38:2,10,12,13
39:21 44:11,13
53:9 57:14 60:12
62:6,9 79:14 101:4
102:10 114:10
**settlements** 30:25
72:2
**settles** 29:24 31:1
**seven** 20:13 21:6
76:8
**seventeen** 97:18
108:20
**severance** 35:12
**shared** 37:13
**shareholder** 60:25
**shareholders** 47:6
61:9
**SHEARMAN** 4:19
**Sherbin** 9:7 16:5,5
39:10
**Sherbin's** 25:14
**Sherman** 50:1
**shorten** 33:16
**shortest** 26:10
**shortly** 20:6 110:9
**show** 47:4 81:22

**showing** 43:9 44:15
47:8 81:25
**shows** 83:1
**SHRIVER** 8:16
**side** 53:15 57:8
69:20 112:18
**sidestep** 82:20 83:3
**sidesteps** 83:14
**sight** 20:11
**sign** 112:25
**Signature** 115:10
**signed** 72:2
**significant** 12:24
24:15 28:9 48:2
60:19,19
**similar** 97:12 111:21
**similarly** 58:21
**simply** 44:5 71:15
75:4 88:3
**simultaneously** 36:4
**sincerely** 69:6
**single** 16:7 89:10
**single-spaced**
109:16
**sit** 44:7 94:13
**sitting** 23:5 41:12
**situated** 42:17
**situation** 63:22
79:14 99:5 109:8
**six** 76:14
**sixteen** 101:22
108:20
**sixty-five** 10:6
**size** 21:11
**Skadden** 4:3,10 23:5
25:1
**Skadden's** 22:11
**slate** 4:3,10 82:22,22
**slightly** 55:20
**small** 76:18 79:9
**smallest** 26:9
**Smith** 90:7,7,22
**smooth** 34:24
**sold** 24:18
**sole** 3:15 34:4,7,18
34:18 41:1 80:23

81:4
**solely** 92:5,8 107:6
**solemn** 78:13
**solution** 82:19
**solvency** 14:18,19
15:22
**solvent** 47:5
**somebody** 41:11
53:10 62:7 76:8
**something's** 112:22
**somewhat** 58:21
102:11
**soon** 67:13 93:8
**sorry** 16:20 19:14
24:1 26:19 29:12
41:11,15 58:9
61:23 64:16 65:6
77:24 111:18,19
**sort** 34:11 54:9,18
64:8 72:11 73:1
76:14 79:19 87:23
89:22 98:14
100:16,16 103:5
104:12
**sorted** 73:8
**sought** 11:13 41:6
41:10,19 59:16,16
78:20 95:21
**sound** 18:23 115:6
**source** 80:23 81:4
**South** 6:4
**Southern** 1:3 74:22
**so-called** 49:18
**speak** 32:16 53:17
53:23 63:9
**speaker** 40:11
**speaks** 38:21 80:6
**special** 23:17 44:25
57:17
**specific** 84:23 107:4
**specifying** 93:12
**spectrum** 68:24
**spent** 53:6 60:12
72:17
**spirit** 18:12
**split** 64:8

**spoke** 13:25
**spoken** 86:24 97:25
**sponsor** 78:9
**Square** 4:13 5:4
**staff** 37:17 38:15
**stage** 44:23,24 72:10
99:19,24
**staged** 99:7
**staging** 99:4
**stake** 36:23 38:13
**staked** 68:23
**stakeholders** 39:22
67:24 79:6
**stand** 37:23 67:25
92:20
**standard** 24:10
105:19
**standing** 77:16
**stands** 103:9
**start** 110:4
**started** 80:19
**state** 18:5 19:13
49:11 74:8,8
**stated** 43:24 48:9
51:18 91:3 108:1,2
**statement** 17:16
23:6 35:24 38:21
39:1 89:9
**statements** 19:19
37:5 43:13 59:9
73:16
**states** 1:2,14 7:18
17:20 22:13 36:1,2
43:20
**static** 32:2,11
**status** 85:10
**statute** 46:16 70:3
**statutes** 36:17 88:2
**statutory** 19:17
54:25 74:14 113:4
**stay** 2:16,17 42:11
52:10 56:4 71:15
82:7,7 83:19 84:25
86:4 103:19 113:5
114:15
**stayed** 72:9

steering 23:19
Stein 43:5,11 45:15
    45:17
Steingart 8:21 38:20
    38:23 40:7 46:1
    51:15 63:8,10 64:7
    64:23 65:15,21
    66:4,20,24 67:9
    71:13 78:24 79:16
    80:4
Steingart's 79:5,21
step 26:2 38:10
steps 103:1
STERLING 4:19
Stern 55:15,17,17
    58:9,12,25 60:5
    61:3,5,23 62:5,12
    79:24 80:2
Steven 6:23 111:19
STEVENS 8:9
STN 10:12,15
stock 92:6,9
stopped 53:2
straight 51:14
strange 77:1
Street 5:18 7:19
    8:11
stricken 91:17
stringent 37:8
strong 42:24 43:1,16
    46:22,24
strongest 80:16
strongly 72:13
studied 70:4
stuff 88:7
subject 18:25 29:4
    29:25 30:9,12 31:1
    33:14 36:6,13 37:1
    40:19 41:19,22
    42:3 55:1 56:4
    63:25 71:17 91:1,6
    91:14 94:10 95:3
    95:10,14,17 99:25
    105:11 106:6
    111:3,24
submit 3:8 11:25

23:21 27:18 31:4
    33:19,25 35:19
    48:8 50:24 59:9
    73:16 83:11 86:22
    92:20 93:9 98:19
    101:21 108:6,14
submitted 77:14
    97:17 102:5
submitting 59:20
subordinate 57:3
subsequent 41:25
    43:22 92:21
subsequently 43:23
    84:15
substantial 20:4
    26:24 30:7 40:22
substantially 88:15
    98:20
substantiated 94:21
substantive 93:7
    94:5 95:6
substantively 42:23
success 13:16 17:10
    23:3 29:6 30:6
    35:3
suffered 62:25
sufficiency 107:11
sufficient 101:7
suggest 16:12
suggested 13:7 67:6
    97:20
suitable 109:20
Suite 6:20
sum 95:18
summarized 27:5
SUOZZI 5:9
superseded 92:16
supplement 11:25
    18:10,11
supplemental 11:3,5
    11:11,15,21 12:9
    16:17
supplier 34:8,18
supply 3:14 34:4
    41:14
support 11:14 12:6

17:24 26:12 39:3
    46:24 52:2,8 59:1
    77:12 97:1
supports 20:25
    46:23
suppose 26:13
supposed 110:2
supposedly 80:4
Supreme 47:23
sure 21:21 29:16
    31:14 34:19 40:14
    87:21 89:24 90:11
surprising 80:15
survival 44:25
survived 42:11,22
sustained 64:1
switching 19:15
system 10:18,20
    72:21
Systems 3:13 34:2,6
    106:15

_____

T

T 115:2,2
Taggert 32:1,1,6
take 14:10 21:8
    31:15 43:15 59:6
    79:7 87:5,20 88:9
    88:21 91:8 95:7
    97:8 101:8,25
taken 24:4 91:9,13
takes 39:15 105:22
talk 18:4 53:11 54:2
    65:2 77:15
talked 49:4 71:10
    72:25 102:6
talking 20:12 21:5
    21:25 25:10 61:24
    62:1 67:4 75:23,24
    103:2
talks 71:13
tantamount 95:25
targeted 25:14
tasks 76:8
Technologies 107:14
    107:20

teleconference
    104:6
telephone 90:8
telephonic 99:2
tell 30:20 58:17
    68:18 72:12 76:16
    89:2
ten 12:19 13:4,6
    14:13,14 15:21
    16:2,19 17:2,7
    22:24 23:12 29:3
    29:19,21 110:3
    112:5,7
tenth 109:14
terminate 34:4
Terminating 3:14
terms 11:13 13:19
    20:15 36:14 37:1
    46:14 49:4 52:19
    55:10 56:11,19,20
    57:1 58:3 59:17
    60:3,14 78:13 95:5
    101:13
testify 49:19
testimony 38:16
    104:7
Texas 3:13 34:2,7,23
    106:23
text 109:16
thank 16:9 19:8,22
    22:8 26:18,20 27:2
    30:22 31:15 35:21
    39:4,24 45:25
    48:10 68:21 90:22
    91:19 94:1 101:12
    105:21 110:16
    111:7 112:11
    113:1
Thanks 27:3
theoretically 27:16
    58:3
theory 80:7
thereto 106:7
thing 19:14 64:24
    77:19 87:19 90:23
    96:1 109:17

**things** 49:24 52:15
53:12 64:23 76:10
89:3,12 105:24
**think** 11:22 14:1,6
15:8,24 16:3,6,15
17:14,25 25:16
26:22 27:4 30:5,13
31:3 35:13 38:20
38:23 39:5 40:6
44:12 46:2 50:7
51:19 52:7 53:22
56:25 58:18 63:12
63:17 64:7,8,14
67:9 68:23 71:1,3
71:20,23,24 73:5,7
75:18 76:4,9,14
77:1 78:17,25
79:12 80:13 83:6
84:10 85:15 86:8
87:19,22 88:22
89:3 91:5,5,14
97:24 100:23
101:6,21 102:2,7
102:12,20 103:7,8
103:10 104:1
105:2,11,18 108:2
109:14,20,24,25
110:3 112:23
**thinking** 85:21
89:23
**thinks** 101:24
**third** 2:23 8:3 9:12
12:20 13:5 14:14
16:12,21,24 21:5
22:19 24:2 25:10
29:1,9,20 30:20
85:20 94:3 102:12
106:18
**thirteenth** 10:5
**thirty** 14:16 87:19
89:20 95:3
**thirty-six** 92:17
**this'll** 102:16
**THOMAS** 4:17
**thought** 13:20,20
38:25 50:11 54:13

72:18 74:21 89:12
101:3,18
**thousand** 24:17
25:22 35:10 75:14
96:19
**three** 12:23 21:12,25
22:3 29:8,11 30:3
30:4,10 51:8 87:18
88:16 89:3 96:13
98:10 103:20
106:17
**three-year** 37:4
**threshold** 25:22,23
56:5 65:10
**thrust** 42:4
**tied** 69:25
**tier** 76:12
**time** 20:8 26:17
27:18 31:8 33:3
34:22 37:25 41:9
51:25 52:20 53:6
54:8 61:18 68:3,8
68:8,17 72:17 73:2
99:8,24 101:8,9
109:20
**timely** 111:4
**Times** 4:13 5:4
**tip** 67:12
**TISDALE** 6:17
**today** 11:1 16:13,25
25:10 26:10 33:2,7
36:10 37:23 40:12
42:4 51:23 52:6,6
53:23 55:5,24
57:16 58:6,14
62:24 66:10 69:23
71:1,6 75:3,4
78:25 79:1,20
81:10 86:25 87:23
93:6 94:14 99:5
**today's** 110:19
**told** 14:1 24:7,19
75:19
**tolled** 14:12,16
**tomorrow** 108:6
**top** 53:16 58:17

62:21 63:4
**total** 26:12 53:14,20
76:17
**totaling** 94:22 95:4
**tower** 53:17
**TRACY** 7:24
**trade** 23:20
**transactions** 36:6
40:17,19 42:2
43:21 63:25
**Transcribed** 3:24
**transcriber** 115:4
115:10
**transcript** 10:21
115:5
**transformation**
34:15 38:11
**transition** 34:11,23
34:25
**treat** 57:18
**treated** 62:13
101:17
**treatment** 40:16
57:17 93:13 99:15
**treats** 42:17
**tried** 25:20,20 49:5
**triggered** 33:22
61:19
**truncated** 91:7,8
101:3
**trustee** 17:16,20,21
17:21,24 19:13,14
19:15,18 22:14
25:21 27:10 30:15
59:10,21,22 60:17
61:20 81:11 92:11
**TRUSTEES** 7:18
**try** 53:6 54:19,20
74:18 99:19 100:6
100:24 101:8
**trying** 22:1 25:5,17
70:13 76:7 87:23
99:21,22
**turn** 10:19 18:22
32:7 41:13 59:7
78:10

**turned** 34:12
**Turnerbager** 90:14
90:15
**turns** 64:20 75:11,13
75:14 76:18 81:20
**twenty** 12:20,21
13:5 14:15 16:13
16:19 17:2,22 18:2
21:7,14 22:24 25:6
25:8 26:23 29:21
29:23
**twenty-five** 62:2,3
67:11 69:1 70:19
**twenty-seven** 24:24
**two** 11:1 13:6 21:17
22:17 29:12 42:9
44:7 48:14,14
51:18 55:25 56:6
59:6 64:2,23 68:24
68:24 69:11 80:2
83:7 84:23 86:13
90:8 94:4 99:1
**TX** 8:12
**type** 22:25 27:14
49:1 91:6 112:23
**typed** 115:13
**types** 27:14,16

---

**U**

**ultimately** 27:20
53:8 57:21 71:4
73:17
**Um-hum** 89:8
**unable** 104:3
**unchanged** 42:23
**unclean** 44:10,15
80:7
**undergoing** 97:18
**underlie** 49:20
**underlying** 15:7
38:2 82:10
**underplayed** 109:9
**understand** 21:17
30:13,24 53:4 67:5
70:3 74:15 87:11
100:5 106:23

**understandable**
  39:20
**understanding** 76:5
  82:4 111:22
**Understood** 20:10
  111:13
**undertake** 11:22
**undertaken** 11:15
  38:1
**undertaking** 41:2
  42:20 45:4 99:23
**underway** 81:2,2
**undisputed** 63:23
  84:19
**Unexpired** 2:3,9
**unfair** 21:10 46:17
  68:1 81:6
**unfettered** 43:1
  76:12 78:20
**uniformly** 46:20
**United** 1:2,14 7:18
  17:20 22:13 36:1,2
**unmodified** 107:4
**unnecessarily** 59:11
  61:14
**unnecessary** 77:9
**unopposed** 31:19
**unpaid** 24:17
**unreasonable** 81:24
**unresolved** 96:23
**unsecured** 47:25
  65:11
**unsubstantiated**
  94:8,21
**unsupported** 107:6
**untimely** 92:9 94:15
  94:21 111:10
**untrigger** 33:23
**updates** 81:12,16
**URQUHARDT** 5:16
**use** 73:18 81:24
  84:16 90:16
**USW** 88:1 113:5
**U.S** 1:23 17:16,21,21
  17:24 19:13,14,15
  19:18 25:21 27:10

  30:15
**U.S.C** 3:1,11 19:17

_____

**V**

_____

**vague** 109:20
**valid** 47:18
**value** 67:24
**various** 12:25 16:1
  28:6,21 36:17
  91:17 103:24
**veering** 28:8
**vested** 58:4 60:10
**viable** 18:3
**Victor** 7:9 103:12
**view** 11:14 13:14,14
  13:17,23 14:1,11
  22:12 30:21 49:8
  50:6,18 51:13
  52:25 68:15 69:10
  69:19 71:7 72:15
  72:15 75:15 76:22
  77:2,5 78:17 85:9
  91:11 95:25 98:1
  100:11 102:13
**viewed** 26:3 49:16
  49:23
**views** 14:17 22:13
  74:16 94:11 102:9
**Vincent** 32:13
**violate** 37:1 107:5
**violation** 45:22
**violations** 36:5,16
**virtue** 15:11 37:21
**vitiate** 102:11
**vitiated** 80:6
**vitiating** 59:18
**voting** 112:6

_____

**W**

_____

**Wacker** 4:5 6:4
**waiting** 63:8 90:8
**waived** 35:8,9
**waivers** 52:19
**want** 12:14 13:14
  14:23 17:16 22:10
  26:13 32:14 33:10
  36:18 38:19 44:8

  50:12 51:15 69:2
  73:10,12 74:11,13
  75:2,16 76:1 77:10
  77:15,19 79:3,20
  80:2 83:24 87:9,11
  88:18 89:23 98:20
  100:9 101:13
  103:4 108:16,23
**wanted** 34:19 50:21
  53:18 54:18 77:5
  97:19 102:24
  108:3 111:7
**wants** 11:22 14:9
  15:15 32:8 73:11
  90:13 101:25
  105:18 106:2
  108:3
**WARNER** 8:9,14
**Warren** 2:10 32:20
  32:25 33:9
**Washington** 6:12
**wasn't** 45:18
**waste** 59:12
**wasted** 59:3 81:19
**Watkins** 8:1 109:1
**way** 10:18 13:1,14
  20:1 34:9 38:25
  47:20 53:10 68:20
  71:24 75:16 79:3
  79:19 80:21
  101:17 105:2
  109:7,24
**weekly** 37:25
**welcome** 18:16
**wells** 43:23 49:22
**Wendy** 90:7
**went** 33:7 42:12
  49:4,15
**West** 4:5
**we'll** 31:21 40:5 62:3
  86:21 88:6,10
  90:20 92:20 93:9
  93:17 96:14,16,19
  98:8,18 100:5,21
**we're** 21:25 23:23
  25:9,10 26:4 29:22

  32:7 33:19,25
  42:13 44:4,25 45:1
  53:25 57:17,17
  61:24 62:1,4,12
  65:24 67:4 68:6
  69:21,23 70:12
  72:24 74:20 75:17
  75:18 76:5 78:12
  80:12 84:17 87:22
  87:23,24 88:2
  91:24 94:25 95:7
  96:19 103:2 113:6
**we've** 24:18 31:12
  36:12 37:11 55:9
  67:11 70:15 72:25
  74:14,21 78:12
  87:21 92:24 94:6
  96:21 97:2,10,10
  97:13,25 101:23
  102:6 107:10,14
  108:10
**Whitehall** 7:19
**who've** 86:24 97:12
**willing** 26:2 27:16
  102:9
**Wilmer** 6:9 37:19
**wind** 34:16
**window** 99:17,18
**winner** 102:17
**wireless** 10:20
**wisdom** 26:8
**wise** 28:10
**withdraw** 33:11
  107:15
**withhold** 48:5,6
**WM** 4:8
**wonderful** 30:22
  82:25
**wondering** 89:22
**Woodward** 9:2
**word** 43:3,15 86:13
**words** 71:13 86:19
**work** 19:25 23:19
  34:15 38:1 39:8
  53:12 91:5 96:24
  98:22 101:20

**worked** 34:10 39:17
  97:2 99:12
**working** 18:17
  47:17 54:6 96:20
**works** 10:18
**WorldCom** 61:18
**WorldWide** 90:15
  110:13
**worry** 22:6
**worth** 8:12 62:19,22
**wouldn't** 66:1,17,18
  82:21
**wreaking** 41:14
**wrinkle** 27:6,22
**writing** 82:21
  107:11
**written** 29:16
**wrong** 79:11
**wrongdoer** 80:4
**wrongdoing** 36:16
  45:20 67:20
**wrote** 72:14

**X**

**x** 1:5,12 114:1

**Y**

**Yeah** 70:7,11 86:23
  100:2,5
**year** 10:15,24 12:23
  14:6,7,8,22 20:12
  22:20 23:9 25:3,12
  32:23,25 33:2
  34:14 36:1,7 43:5
  63:2
**years** 24:25
**year's** 62:19,22
**York** 1:3,16,16 4:14
  4:22 5:5,12 7:14
  7:21 8:4,18,19
  9:13,13 64:17
  74:22

**Z**

**ZALMANOWITZ**
  112:14
**Zelmanovitz** 7:16

---

112:14

**0**

**05-44481** 1:4

**1**

**1** 10:11 24:12 56:6
  107:23 115:9
**1.6** 92:25
**1:30** 90:12,21 91:22
**10** 107:21
**10b** 89:7
**10j** 89:10
**10(k)** 105:8
**10:33** 1:19
**100** 9:19 53:15,16
  94:17 95:4
**10004** 7:21 8:19
**10018** 5:12
**10022** 4:22 8:4 9:13
**10036** 4:14 5:5
**101** 7:13
**10178** 7:14
**1024** 7:6
**105** 52:12 86:5
**11** 2:25 3:11 10:16
  47:3,3
**11643** 107:12
**11644** 107:12
**12th** 93:4
**12:30** 89:18
**13** 2:13 40:2
**13th** 93:3
**1350** 5:11
**14** 107:18
**148** 24:3
**15th** 11:18 12:12
**16,000** 58:17
**1600** 6:19
**166** 24:2
**168** 24:1
**17th** 76:8
**179** 92:24
**18** 114:7
**180** 99:16
**180th** 100:4
**1875** 6:11

---

**1979** 24:24

**2**

**2** 24:12 56:7 97:7
**2,195** 92:14
**2,668** 92:22
**200** 53:14 67:8 70:22
  70:23 71:4 100:3
**20006** 6:12
**2002(m)** 3:2
**2003** 82:24
**2005** 2:13 34:6,13
  36:7 40:2
**2006** 1:18 33:4 83:11
  110:20 115:9
**2007** 10:16 11:18
  32:24 33:14 87:14
  107:18,23
**21** 114:5
**21st** 7:20
**21,000** 58:16
**213** 10:12
**22** 87:8
**228** 24:1
**23** 114:10
**234** 24:17
**24** 110:20
**24th** 110:22
**244** 94:23
**25** 76:13 114:15
**255** 94:22
**2558** 107:15,17,22
**26** 87:14 114:5
**2600** 6:20
**266** 23:25
**28** 19:17 92:7,11
**28.7** 95:11
**280** 96:13
**298** 82:24

---

**3**

**3** 10:11 89:19 90:4
  114:12
**30** 1:18
**30th** 12:21 14:6
  22:21 36:1
**3007** 3:2

---

**301** 8:11
**302** 83:1
**325** 24:25 25:2
**327(a)** 22:25
**327(e)** 25:25
**328** 30:7
**328(a)** 22:25
**33** 7:19 114:7
**333** 4:5
**335BR666** 83:10
**35** 10:25
**350** 35:10
**36** 32:19 34:1
**363(b)** 3:12
**365(d)(4)** 32:23 33:4
  33:13
**368** 94:16
**37** 34:1 114:10
**38** 35:22
**39** 39:25
**39400** 9:2

---

**4**

**4** 10:23 86:13
**4.1** 92:23
**41** 87:4,17 92:2
**42** 94:3
**43** 90:8 96:9
**432** 94:23
**433,000** 94:19
**44** 87:25 114:12
**45** 87:4,7,17
**4718** 10:13
**48304** 9:3
**48805** 7:7

---

**5**

**5th** 45:16,22
**5.52** 92:15
**500** 25:22
**502j** 91:1,6,14
**502(b)** 3:1
**502(c)** 3:1
**502(j)** 105:11,18
**5178** 32:22
**52** 24:24
**5229** 10:14

| | | | |
|---|---|---|---|
| **5354** 40:4 | **919** 9:12 | | |
| **5360** 51:7 | **922** 93:12 | | |
| **5451** 92:3 | | | |
| **5452** 94:4 | | | |
| **5453** 96:10 | | | |
| **5517** 34:5 | | | |
| **5520** 35:23 | | | |
| **5602** 107:14 | | | |
| **5640** 107:10 | | | |
| **5673** 97:4 98:17 | | | |
| **5724** 106:15 | | | |
| **5749** 35:25 | | | |
| **586** 19:17 | | | |
| **599** 4:21 | | | |

**6**

**6th** 45:13,14,16 48:3
**6004** 3:12
**602** 92:5
**60606** 4:6 6:5
**630** 94:22

**7**

**7** 5:4 10:23 32:24
  33:14 89:7
**7th** 36:7
**7016** 3:2
**7026** 3:2
**71** 6:4
**76102** 8:12

**8**

**8** 10:24 89:10
**80202** 6:21
**82** 114:15
**865** 5:18
**885** 8:3

**9**

**9DOD** 111:23
**9(m)** 98:14,15,21
  109:3,6,11 110:1
**9.7** 35:2
**90017** 5:19
**9006** 3:2
**9007** 3:2
**9014** 3:3