1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DELPHI CORPORATION,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  January 12, 2007

19                  1:45 p.m.

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1    MOTION for Order Under 11 U.S.C. Sections 105 and 363

2    Authorizing the Debtors to Implement a Key Employee

3    Compensation Program

4

5    MOTION for an Order Authorizing The Official Committee of

6    Unsecured Creditors to Prosecute the Debtors' Claims and

7    Defenses Against General Motors Corporation and Certain Former

8    Officers of the Debtors

9

10   EX PARTE MOTION for Order Authorizing the Official Committee of

11   Equity Security Holders to File Under Seal a Supplemental

12   Objection in Further Support of the Equity Committee's

13   Objection to the Motion for an Order Authorizing the Official

14   Committee of Unsecured Creditors to Prosecute the Debtors'

15   Claims and Defenses Against General Motors Corporation and

16   Certain Former Officers of the Debtors

17

18   MOTION of Kyocera Industrial Ceramics Corporation for Relief

19   From the Automatic Stay to Permit it to Exercise Setoff and/or

20   Recoupment Rights

21

22   CADENCE Innovation LLC's Application Pursuant to 11 U.S.C.

23   Section 503 for Allowance and Payment of an Administrative

24   Expense Claim

25

3

1   CADENCE Innovation LLC's Motion for Relief From the Automatic

2   Stay to Proceed With its Proceed With its Patent Litigation

3   Against the Debtors

4

5   DEBTORS' Fourth Omnibus Objection (Procedural) Pursuant to 11

6   U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007 to Certain

7   Duplicate and Amended Claims

8

9   DEBTORS' Fifth Omnibus Objection (Substantive) Pursuant to 11

10  U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007 to Certain (A)

11  Claims With Insufficient Documentation and (B) Claims Not

12  Reflected on Debtors' Books and Records

13

14  MOTION for an Order Under 11 U.S.C. Section 1121(d) Extending

15  Debtors' Exclusive Periods Within Which to File and Solicit

16  Acceptances of Reorganization Plan

17

18  DELPHI Corporation's Complaint to Recover Property of the

19  Estate Against NYCH LLC dba RCA Computer Experience

20

21  DEBTORS' Second Omnibus Objection (Procedural) Pursuant 11

22  U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007 to Certain (I)

23  Equity Claims, (II) Claims Duplicative of Consolidated Trustee

24  or Agent Claims, and (III) Duplicate and Amended Claims

25

4

1    SUFFICIENCY Hearing Regarding Claims of LaFonza E. Washington

2

3    SUFFICIENCY Hearing Regarding Claims of Michael Sieloff

4

5    SUFFICIENCY Hearing Regarding Claims of Ronald Jorgenson

6

7    SUFFICIENCY Hearing Regarding Claims of Terry R. Mocny

8

9    SUFFICIENCY Hearing Regarding Claims of William Kerscher

10

11   SUFFICIENCY Hearing Regarding Claims of Douglas Deykes

12

13   SUFFICIENCY Hearing Regarding Claims of William P. Downey

14

15   SUFFICIENCY Hearing Regarding Claims of Wilfred D. Leong

16

17   SUFFICIENCY Hearing Regarding Claims of Victory B. Perez

18

19

20

21

22

23

24   Transcribed By:  Esther Accardi

25

5

```
 1   A P P E A R A N C E S :

 2   SKADDEN ARPS SLATE MEAGHER & FLOM LLP

 3        Attorneys for Debtor

 4        Four Times Square

 5        New York, New York 10036

 6

 7   BY:   JOHN WM. BUTLER, ESQ.

 8         KAYALYN  A. MARAFIOTI, ESQ.

 9         ALBERT L. HOGAN, ESQ.

10         JOHN K. LYONS, ESQ.

11

12   ALSTON & BIRD LLP

13        Attorneys for Cadence

14        1201 West Peachtree Street

15        Atlanta, Georgia 30309

16

17   BY:   DENNIS CONNOLLY, ESQ.

18

19

20

21

22

23

24

25
```

6

```
 1    FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
 2          Attorneys for Official Committee of
 3            Equity Holders
 4          One New York Plaza
 5          New York, New York 10004
 6
 7    BY:   JASON RICHARD WOLF, ESQ.
 8          RICHARD J. SILVINSKI, ESQ.
 9
10    DUANE MORRIS
11          744 Broad Street
12          Newark, New Jersey 07102
13
14    BY:   JOSEPH H. LEMKIN, ESQ.
15
16    TOGUT SEGAL & SEGAL LLP
17          One Penn Plaza
18          New York, New York 10119
19
20    BY:   NEIL BERGER, ESQ.
21
22
23
24
25
```

7

1   KRAMER LEVIN NAFTALIS & FRANKEL LLP

2         Attorneys for Electronic Data Systems

3          Corp.

4         1177 Avenue of the Americas

5         New York, New York 10036

6

7   BY:    GORDON Z. NOVOD, ESQ.

8

9   LATHAM & WATKINS, LLP

10         885 Third Avenue

11         New York, New York 10022

12

13   BY:   JUDE GORMAN, ESQ.

14

15   DOUGLAS DEYKES, telephonically

16

17   RANDALL G. REESE, ESQ.

18

19

20

21

22

23

24

25

8

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation.  And this is now on the omnibus day matters.

4              MR. BUTLER:  Your Honor, good afternoon.  Jack

5    Butler, Kayalyn Marafioti and John Lyons from Skadden Arps

6    Slate Meagher & Flom, LLP on behalf of the debtors for our

7    January omnibus hearing.  Your Honor, we have filed and

8    circulated the fourteenth omnibus hearing agenda, that agenda

9    has eleven matters on it.  We propose to proceed in the order

10   of the agenda.

11             THE COURT:  Okay.

12             MR. BUTLER:  Your Honor, the first matter on the

13   agenda is -- I do want to comment on these, is the KECP annual

14   incentive program motion, this is found at docket number 213.

15   And the reason this found its way on the motion for this

16   particular hearing was in Your Honor approving the supplement

17   for the second half 2006 KECP there was a question as to

18   whether future period KECPs needed AIPs needed to be approved.

19   Your Honor concluded that you wanted to take a look at the

20   first half 2007 AIP, our stakeholders had a chance to look at

21   that in the context of the facts and circumstances at the time.

22   So we've now arrived at that point and because we're ready to

23   review, we're in the process of reviewing our 2007 business

24   plan with our stakeholders and committees over the next week or

25   two, we concluded it would be appropriate to put this matter

9

1    off to the February 15th omnibus hearing.

2                THE COURT:  Okay.

3                MR. BUTLER:  Because the targets will be derived from

4    that plan and we wanted the committees to have a chance to look

5    at it first.

6                THE COURT:  Okay.  But it's just the AIP portion of

7    it?

8                MR. BUTLER:  Just the AIP portion of it, just the

9    first half that's coming before the Court.

10               THE COURT:  Okay.  That's fine.

11               MR. BUTLER:  All right.  So that moves to February

12   15th.  With respect to item number 2, this is the KECP

13   emergence incentive program.  This comes from docket number

14   213, way from the beginning of the case.  I can, at this

15   point -- Your Honor, with permission I'd like to simply take

16   this off calendar.  Assuming we move forward on the framework

17   that Your Honor approved this morning, one of the elements of

18   that framework is the executive compensation program reasonably

19   acceptable to the plan investors that is based on market based

20   program.  And that was to be included in the disclosure

21   statement and plan.

22               THE COURT:  Right.

23               MR. BUTLER:  So as a result, assuming if we move

24   forward with the framework, this motion would not be prosecuted

25   independently of the plan.

10

1          THE COURT:  Okay.  That's fine.  I encourage that.

2          MR. BUTLER:  So, Your Honor, we would simply then

3   take this off calendar pending framework.

4          THE COURT:  Okay.

5          MR. BUTLER:  Matter number 3 on the agenda, Your

6   Honor, is the creditors' committee's GM claims and defenses

7   motion, filed at docket number 4718.  I haven't really had a

8   chance to consult with the committee about this other than

9   right now we agreed to move it to the February 15th omnibus

10  hearing.  I suspect by that time we'll come back and ask for

11  this to follow the same time schedule as the framework.

12         THE COURT:  Well, you should assume I'm not going to

13  do a lot of preparation on that unless you let me know fairly

14  soon about it.

15         MR. BUTLER:  I think the understanding is that this

16  is going to follow the way of the 365, 1113, 1114, but we

17  haven't worked out the arrangements with the committee.

18         THE COURT:  Okay.  That's fine.

19         MR. BUTLER:  So we'll move that to the 15th.  That

20  similarly, Your Honor, motion number 4, that's the equity

21  committee's ex parte motion, we'll follow that same track to

22  February 15th.

23         THE COURT:  Okay.

24         MR. BUTLER:  Mr. Berger, matter number 5 is yours.

25         MR. BERGER:  Good morning, Judge.

11

1        THE COURT:  Good morning, or afternoon.

2        MR. BERGER:  Good afternoon.  Neal Berger, Togut

3  Segal & Segal, conflicts counsel.  Number 5 on the agenda this

4  morning is the motion by Kyocera Industrial Ceramics

5  Corporation from relief of the automatic stay to affect a

6  setoff.  We received that motion just before the holidays.

7  Kyocera seeks to set off what it believes was a double payment

8  made in April of 2004 against open invoices as of the petition

9  date.  Because the payment was made sufficiently before the

10 filing date we don't have the Furakawa issue that Your Honor

11 heard about earlier in the case.  Delphi is looking at it (a)

12 to confirm that the payment was made and (b) if it was made

13 whether or not it was applied to open invoices at the time.

14 This one shouldn't require heavy lifting.  I spoke to counsel

15 for Kyocera, we've agreed to put it out to February and hope is

16 that we'll submit a stipulation before then.

17       THE COURT:  Okay.  That's fine.  Thank you.

18       MR. BUTLER:  Your Honor, matters numbers 6 and 7 will

19 be taken together.  The first is a Cadence administrative

20 expense claim application at docket number 5774, which I

21 understand counsel wants to proceed with only if it prevails on

22 its motion for relief from the automatic stay and 5777, item

23 number 7.  So we'll cede according to counsel for that purpose.

24       MR. CONNOLLY:  Thank you, counsel.  Good afternoon,

25 Judge Drain.

12

1          THE COURT:  Good afternoon.

2          MR. CONNOLLY:  Your Honor, for the record, Dennis

3    Connolly here on behalf of Cadence Innovation, LLC.  Your

4    Honor, there are two motions on from Cadence this afternoon

5    that were filed, I think, in tandem, and I think logically fit

6    together.  That is the motion to lift the automatic stay to

7    allow the litigation in Detroit, Michigan to proceed.  And a

8    correlate motion to allow an administrative expense claim that

9    really is recognizing the conjoined nature of the patent

10   violation that we allege in the complaint.  And that is in the

11   process of being litigated in Detroit, to the extent that there

12   are post-petition infringements and damages that are determined

13   by the finder of fact in Detroit with respect to patent

14   violations and damages that are ultimately asserted to the

15   extent that those damages relate to a post-petition, pre-

16   confirmation period.  We would want that to be recognized as an

17   administrative expense claim.  And I'll talk about some of the

18   case law thereunder, Your Honor.  But I don't think there's any

19   real dispute that a post-petition tort under Reading v. Brown,

20   and there's a fair amount of case law under patent laws.  And

21   construing patent laws would be, in fact, an administrative

22   expense priority.

23          Your Honor, turning to the broad outlines of the

24   motion and the request that Cadence is bringing on today, I

25   think there are four points I want to note at the outset that

13

1    distinguish this request, and these requests, from what I'll

2    call more run-of-the-mill breach of contract claims.

3    Obviously, we have looked at the papers in connection with the

4    prior motions for relief, from stays filed by other creditors;

5    we've read the transcripts.  I looked with particular interest

6    and the Nutech litigation over the summer and out into the

7    fall.  And I think there are some points I would like to

8    articulate at the outset that I think are important and of

9    consequence here that really drive a different result from this

10   is just an unliquid pre-petition claim and therefore get in the

11   claims resolution process.  And, Your Honor, it really revolves

12   around the specialized nature of the patent claim at issue.

13   First, Your Honor, as I noted in my presentation as to the

14   overall relief being sought today, the patent violation as the

15   case is recognized, I think, without dispute gives right to a

16   patent violation, a claim for damage each and every day of

17   production, in essence.  The Hazelquist case, out of the

18   federal circuit which is a 2006 case, recognizes that, for

19   example, every day of production is a new claim.  Obviously,

20   you're not going to litigate that in that context, Your Honor.

21   But it was recognizing the independence of that claim.  And the

22   way that claim arises in the context of discharge of the

23   debtor.  The debtor took the position well; the patent

24   violation occurred before I got my discharge, therefore you

25   have no claim for what were violations post-discharge.  And the

14

1   answer, obviously, according to the federal circuit is no,

2   that's wrong, this is a new claim.  Now, to the extent that

3   they didn't file a proof of claim, the creditor, patent holder

4   did not file a proof of claim beforehand, etcetera, then they

5   may have lost those rights by virtue of a discharge.  However,

6   that does not mean that those rights do not exist going

7   forward.  And that's why, I think, in tandem, Cadence is

8   seeking is the ability to adjudicate the claim in the place

9   where it is -- go right in the middle, in essence, Your Honor.

10  And I'll talk about that more in a moment, before the court in

11  Detroit.  And that will address if the stay is lifted both the

12  damages that arise by virtue of the infringing conduct that may

13  be between January 1, 1999, which is the sort of start date

14  under Judge Cohn's order and really continuing through the date

15  or when a license agreement is negotiated between the parties

16  or they change the way they do business such that they're no

17  longer infringing.

18          THE COURT:  Well, that was a question I had which is

19  whether the damages portion of this litigation will include if

20  the stay is lifted.  I mean, is it covered by the litigation,

21  ongoing damages?

22          MR. CONNOLLY:  Well, Your Honor, it certainly would

23  go through the date of the trial as typically it has gone.  And

24  we got so that in the date of the trial will depend, obviously,

25  on whether the Court lifts it.

15

1          THE COURT:  And that was clear from how the

2    magistrate judge and the district judge set it up as far as the

3    two phase--

4          MR. CONNOLLY:  It's a bifurcated.  Right now, we're

5    focusing on liability, Your Honor, and what the March pretrial

6    hearing and the March pretrial order were to do were to set up

7    the liability issues subsequent to the Markman Order.  Patent

8    litigation may be even more arcane and onerous than may other

9    litigations.

10         THE COURT:  Right.  But as far as the damages portion

11   of the two-phase trial, did that contemplate damages through

12   the date of trial or through a specific date that it includes

13   the post-petition period?

14         MR. CONNOLLY:  Well, I don't think it was addressed

15   by the parties because the last -- obviously, the consequence

16   of the automatic stay were not at all involved.

17         THE COURT:  I know.  But I guess conceivably it

18   could be damages up to the date that the complaint was filed as

19   opposed to damages post-complaint.

20         MR. CONNOLLY:  Cadence would be prepared to show

21   continuing violation to this day of its patents.  And therefore

22   the damages would continue post the assertion of the claim.

23   Because there is a dispute and certainly that's where the

24   liability issue, Your Honor, is.  There is a dispute on the

25   part of Delphi and this is not atypical to challenge the

16

1    validity of the patents and that's -- I don't know if the Court

2    recalls in Paragon Trade Brands.  But we had claim and

3    counterclaim in terms of validity of the patent, the

4    construction of the patent and how the patents interact with

5    other patents in terms of what the liability might be and

6    accordingly what the damages might be and how one calculates

7    those damages.

8            THE COURT:  Right.

9            MR. CONNOLLY:  So, Your Honor, we would -- I think

10   the trial would proceed first in liability and then damages to

11   the date of the trial and/or to the date that it was

12   demonstrated the product no longer infringes.  Because were

13   Delphi, for example, to change its art, change the way it

14   manufactures, these are air bag covers on steering wheels, and

15   be able to demonstrate that to a finer effect.  Obviously, that

16   would be a cutoff date.  I do not believe that that is the case

17   today and therefore the damages would comprehend both a pre-

18   petition period and a post-petition period.  And that's why we

19   filed the motions together to try and address this issue.

20           The other, I think, aspect that distinguishes this

21   case from the run-of-the-mill stay case and run-of-the-mill

22   issue of an unliquidated claim, Your Honor, is the fact of a

23   specialized tribunal.  That's one of the Sonax factors that

24   I'll talk about in a minute and I'll talk in any degree of

25   depth or not, as the Court deems appropriate.  Because I know

17

1    you've been through a number of the hearings and Sonax is,

2    obviously, the primary and leading case on the issue.   But the

3    specialized tribunal aspect in terms of the unique feature here

4    really is twofold, Your Honor.   One is the district courts are

5    permitted with jurisdiction to deal with patent issues.   And,

6    obviously, there are some cases that would support the

7    proposition that the mandatory withdrawal of the reference

8    would be appropriate in the circumstance.   And we cite that the

9    Singer case and some other cases are meritorious.   But the

10   other issue is really more particularized even still.   And it

11   is this, Your Honor.   Judge Cohen has lived with this case.

12   You've read, I think, at least maybe you have not, maybe you

13   have.   I don't know how much time you have given what you've

14   had the past few days.

15             THE COURT:   No.   The magistrate made a ruling that

16   Judge Cohen went through it and adopted it after a hearing.

17             MR. CONNOLLY:   Very detailed Markman Order that the

18   debtors attached to their pleading which acknowledged a number

19   of the claims being construed in the manner in which Cadence

20   said that they should be construed.   Acknowledged that some of

21   the claims, and these are very obviously complicated issues in

22   how one reads the patents, how does that interact with the

23   other portions to the patents.   But obviously, Judge Cohen is,

24   I think, unique in his understanding of the parties'

25   contentions with respect to these particular patents and their

18

1   operation.  So not only do you have someone in whom

2   jurisdiction has been vested by statute, and the patent appeal

3   would go to the federal circuit which is a specialized tribunal

4   in that sense.  But you also have someone who has unique

5   knowledge about the patent laws generally as they apply to

6   these patents.  And then the sort of factual issues as to the

7   claim construction and how these things work, essentially.  And

8   what does it mean to have a breakable seam in the middle of the

9   air bag covers if the air bag comes out in a particular way,

10  for example.  So that that is something I think is quite

11  distinct from what I'll call your more run-of-the-mill stay of

12  litigation request that might have been heard by the Court.

13          The third item really is also an aspect of the patent

14  laws as well, Your Honor.  And that is, as you know, the patent

15  is a limited exclusive license, in essence, granted by the

16  government to an inventor to exploit and exclude others from

17  exploiting the particular technology, particular art,

18  particular idea at issue and embodied in the past.  Typically,

19  those are twenty years, there are some nuances one way or the

20  other.  But as we outlined in our responsive memorandum, we

21  have assets that as to patents that will expire over the course

22  of the next few years.  So we have in contrast, perhaps to a --

23  your contract claim is fixed in stone as the petition date and

24  is X, and when we get around to liquidating X it will receive

25  whatever distribution it receives.  We have, I think, a

19

1    distinguishing characteristic here, Your Honor, in that the

2    asset at issue will no longer exist after a period of time.  I

3    want to talk about a couple of aspects of that in just a

4    moment, Your Honor, in terms of the timing issues in this case

5    and timing issues generally.

6            And finally, Your Honor, and this was an issue that I

7    found interesting in the context of prior stay relief

8    litigation before this Court.  And this was over the summer and

9    into the fall.  And this is not the effect of too early too

10   late issue as much as it is the issue -- and this is something

11   the committee was raising, that while we don't want to have

12   stay relief because it will have an impact on the proposed

13   claims allowance procedures.  And I was going to say claims

14   estimation procedures as well, but obviously the Court has

15   significantly limited that aspect of relief sought by the

16   debtors by a motion in November.  And what we now have is a

17   procedure that is binding on all unsecured creditors, save for

18   nineteen, by our count.  And that has a couple of consequences

19   here that I'd like to note.  One is that as to those others we

20   have exceeded there -- with some thought or without much

21   thought to that process.  They are now going to go through the

22   relatively fast track and relatively compressed adjudication

23   ABR procedure, mediation procedure, contemplated in the

24   procedures approved by the Court.  Those of us who are not

25   subject to that are not subject to those general procedural

20

1    guidelines and I don't think there's an impact or any risk to

2    the timing and execution on the part of the debtor of its claim

3    adjudication procedures as presently approved by the Court.

4    That is to say, I don't think it's realistic to argue that

5    somehow floodgates will be open and indeed, there are only

6    thirty some stay relief motions filed in the case to date in

7    the fifteen to sixteen months.  And I'm not aware of any

8    significant stay relief motions filed after ours, Your Honor.

9    So I don't think that there is a risk to what were obviously

10   very thought out claims objection procedures.  There was some

11   give-and-take with creditors, the Court has some concerns about

12   those issues as well.  And ultimately what came out of that

13   process is what, obviously, is proceeding to date.  And indeed,

14   the debtor filed earlier today, I saw a sixth omnibus objection

15   pursuant to the same claim objection procedures.

16           THE COURT:  The debtor may still need to estimate

17   this claim for reserve or other purposes, and you're not

18   seeking any relief in respect to that at this point.  They're

19   not either.  But I'm assuming that that litigation may go on

20   for a lot longer than the time for distributions in the case.

21   So conceivably the debtors might need to move for estimation at

22   some point.

23           MR. CONNOLLY:  Your Honor, that's exactly right.  And

24   I guess I had a sort of a point that I should have made.  We

25   filed this motion and I sort of followed up after, you know,

21

1    obviously global issues here in the case.  And I'm almost

2    embarrassed to show up with a stay motion on a twenty million

3    dollar, give or take, claim.  But we filed it in the context of

4    us raising the issue with the debtor's counsel back in October,

5    well before I was aware -- Cadence was aware of the ongoing

6    discussions that mature into the plan framework and the other

7    agreements that the Court approved just this morning.  That

8    being said, Your Honor, I don't disagree with the proposition

9    that the patent litigation, were the stay to be lifted today,

10   may well take past confirmation if Mr. Butler's time line is

11   followed.  And I guess as an unsecured creditor, I think

12   Cadence will be quite happy to see that process unfold because

13   we're talking about full distribution in respect of unsecured

14   claims, and that's obviously a good thing.  And relatively

15   atypical in the context of Chapter 11 cases, at least in my

16   experience.  The estimation issue is an issue that I think

17   would have to be addressed at the appropriate time in the

18   appropriate context for the purpose of reserve and for the

19   purpose of voting, perhaps, as well.  Although, given -- you

20   know, 1124 with the deletion of 11243 would probably all also

21   get the right to vote even if we're "getting paid in full."

22   That's an issue that the Court may or may not have to address

23   at the appropriate time, those cases on that issue.  That being

24   said, I would expect that we will have a conversation about it.

25   I am not attempting by this motion to preclude that issue from

22

1    being addressed.  I did object vociferously, Your Honor, to the

2    claims estimation procedures proposed by the debtors initially,

3    because I think it's the debtor's knowledge by carving this out

4    of that regime, and obviously that regime really didn't go

5    forward in any event.  The complexity in the nature of this

6    claim, even though it's -- you know, given the numbers we were

7    tossing around earlier today, Your Honor, may not be huge.

8    It's a substantial claim, in any event, still would require

9    something other than what had been proposed under these

10   procedures which might well be fine for your, again, run-of-

11   the-mill trade claim.  So, Your Honor, I think -- one last

12   point and sort of the overarching points and then -- really

13   correlative to that, Your Honor, is the carve-out to the claims

14   estimation or claims objection procedures as a couple of

15   different aspects.  One is that stay relief, because we've been

16   carved out and the -- we would be in the position, if the stay

17   is lifted, to proceed before Judge Cohen, I think that promotes

18   judicial efficiency to a large degree.  Because as the Court

19   can see from the papers, I don't think there's any dispute on

20   this.  Judge Cohen has spent years in the vineyards with these

21   patent claims dealing with these litigants and understanding

22   the nature of the plan.  And to start afresh with a district

23   judge, for example, in the Southern District of New York, while

24   jurisdiction is possible and jurisdictionally potentially

25   appropriate, there may be a transfer venue issue that might

23

1    also be implicated in that context, Your Honor, that to me -- I

2    think if you look at the Campbell case, which we've cited in

3    our papers, at 776 F.2d 802, page 807, it's a 9th Circuit

4    (1985) case.  As Campbell recognizes that judicial economy

5    dynamic, standing alone might be the sustainable cause to lift

6    the automatic stay.

7            Other issues, Judge, in terms of carve-out of the

8    Cadence claims from the omnibus procedures which the debtors

9    are now seeking approval of is this.  There are two omnibus

10   objections presently pending in respect to the Cadence claims.

11   One of them, I talked to your clerk earlier today and will be

12   heard a little bit later today.  And that deals with the so-

13   called duplicative issue.  Our position was they weren't

14   duplicative at all.  But I think we're moving towards

15   resolution of that point with Mr. Lyons, and we'll be prepared

16   to --

17           THE COURT:  Well, in any event, those debtors are not

18   defendants in your lawsuit.

19           MR. CONNOLLY:  That is true, Your Honor.  The second

20   issue is the -- what I'll call more substantive issue of the

21   books and records objections which is in respect of Delphi

22   Automotive Corp. and Delphi Automotive Systems, LLC.  And as to

23   those entities, these debtors have entered what is, in essence,

24   a general demurrer; I don't think there's anything more than

25   that.  That is not on for hearing today, it's not on your

24

1   agenda today.  It is not subject to the claims procedures.  But

2   because it's there and because time is passing, I think Cadence

3   will be of the view that we have to move to withdraw the

4   reference on that in order to avoid the argument that we

5   thought somehow waited too long to see to withdraw the

6   reference under the mandatory withdrawal provisions of Section

7   157.  In that event, Your Honor, we now have ancillary

8   litigation before the district court here in New York seeking

9   withdrawal of the reference of that outstanding claim objection

10  so as to avoid getting into the situation where I can't later

11  raise that issue should the Court decide not to lift the stay,

12  and we should have proceeded in the context of some claim

13  objection here before the bankruptcy court.

14          THE COURT:  But as a practical matter, if I were to

15  lift the stay, your lawsuit's only against --

16          MR. CONNOLLY:  Delphi Automotive Corp.

17          THE COURT:  Delphi Automotive, so -- now there may be

18  some findings that's part of that pertaining to other debtors

19  but you're still going to have -- I mean, it's unlikely to me

20  that a patent claim will be as heard a little against Delphi

21  Receivables, LLC, I mean it's just --

22          MR. CONNOLLY:  Judge, I would agree with that, and

23  the addressing of the second omnibus objection, I think, will

24  deal with that issue where we will expunge the claims against

25  the debtors other than Delphi Automotive Corp. and its

25

1    subsidiary, Delphi Automotive Systems, LLC.  If the Court would

2    lift the stay clearly based on the evidence we now have after

3    colloquy with counsel seek to add, essentially, a party or

4    address that issue in Judge Cohen's court so that we have that

5    issue addressed as a part of that process so that the

6    adjudication in the Detroit court could, in fact, deal with one

7    of the factors now in Sonax which is complete resolution of the

8    issues in the parties.  Because we'd have a determination of

9    damage -- excuse me, Judge, liability and then damages.  And

10    obviously we recognize, Your Honor, that the claim will be

11    accorded no greater priority then a general unsecured claim

12    against the debtors.  At this point, obviously, that's in a

13    pretty favorable position assuming the plan discussions go

14    where people hope that they go.  But I think relief from stay

15    at this juncture in respect of the debtors, in light of where

16    we're going to end up at the second omnibus objection, I think

17    resolves that particular concern and would allow the litigation

18    to proceed; deal with the two debtors who reputably have

19    liability here, Delphi Automotive Corp., Delphi Automotive

20    Systems, LLC, and will obviate any further interference,

21    however minimal, that may be with the administration of the

22    case in respect of the claims administration process.

23            THE COURT:  Okay.

24            MR. CONNOLLY:  And so, Your Honor, I think those are

25    the distinguishing characteristics that I would submit to the

26

1    Court to really take us out of the run-of-the-mill type

2    situation.  Take us out of how one should generally approach

3    it.

4              THE COURT:  Okay.

5              MR. CONNOLLY:  Your Honor, if I may, I have just a

6    couple of more points I wanted to address to the Court.

7              THE COURT:  Well if it's on the Sonax stuff, I read

8    your papers on that.

9              MR. CONNOLLY:  Okay.  And that's why in my initial

10   comments --

11             THE COURT:  I mean, you pretty much covered the Sonax

12   factors anyway, I believe.  But while you're up turning to the

13   second motion, it seems to me that's really seeking an advisory

14   opinion at this point.  You may well be right, but I don't have

15   anything in front of me to say this is an administrative claim.

16   You're basically asking me to just validate a principle of law

17   that, you know, a post-petition tort claim is an administrative

18   claim and that's -- that would be no different than citing a

19   case.

20             MR. CONNOLLY:  Your Honor, my point here would be --

21   what I wanted to make sure is that to the extent the stay were

22   lifted, I wanted to have the recognition that if there was an

23   adjudication in favor of Cadence, if there was damages

24   calculated and attributable to the post-petition period, that

25   that, in fact, would be subject to treatment as an

27

1    administrative expense claim under the well established case

2    law.  If the Court's view is we'll deal with that if and when,

3    then I guess we'll deal with it if and when.

4            THE COURT:  That's my view, and hopefully people

5    won't waste a lot of time on it.  But there may be aspects of a

6    decision, if there is a decision that will affect how I rule on

7    it.

8            MR. CONNOLLY:  One of the issues, though, Your Honor,

9    is -- and this really comes back to the plan timing issue.  And

10   certainly as the plan process has now, to some extent,

11   maturity, we now have people looking at it and negotiations

12   moving towards a planned structure and the debtor's desire to

13   finish up in a relatively rapid fashion.  We will need to

14   address in the context of reserves, again, it may be that the

15   Court is of more of a mind to see this in that context under an

16   estimation motion in that sense.

17           THE COURT:  I am.

18           MR. CONNOLLY:  That a reserve would have to be set

19   for the calculable or reasonable damages that might be awarded

20   ultimately so as to have that cash available.  Because

21   obviously, if it were to be adjudicated tomorrow we would have

22   a right of payment, I think, under 1129 at plan confirmation,

23   essentially the effective date.  That was the reason for filing

24   that companion motion to try and insure that we didn't get

25   somehow whipsawed or we were not able to articulate that claim

28

1    at the appropriate time in light of claim confirmation timing.

2              THE COURT:  Okay.

3              MR. CONNOLLY:  Your Honor, just one other point, if I

4    may.  On the issue of timing.  The debtors argue in their

5    responsive papers that somehow there's been an admission that

6    this is not such a big deal, we waited some time before we

7    filed the motion to lift the automatic stay.  And I wanted to

8    at least articulate for the Court a couple of points there that

9    we noted in response, and certainly we began these

10   conversations before we filed the motion with the debtor once

11   it commenced the claim process with the first omnibus

12   objection.  To say how do you want to handle, what is this

13   unliquidated claim that has to be liquidated and has to be

14   addressed with respect to pre and post-petition damages.  And

15   so it was not something that we just looked at and said we're

16   not going to bother, but recognized given the way the Court was

17   handling the earlier stay relief motions and just given the

18   dynamics of the case, and at the time what I'll call

19   significant litigation with GM and the unions on the 1113 and

20   1114 issues, it struck us as more appropriate to file a motion

21   when the claims process had been framed.  And indeed, the

22   debtor is now very much in the process of claims resolution,

23   having filed now six omnibus objections, having resolved -- I

24   don't have the exact number at my fingertips, Your Honor, but a

25   number of claims, including claims in the first omni to which

29

1    Cadence had some objection or to which Cadence had filed and

2    which addressed the Cadence claims.  And certainly the second

3    omnibus objection.  So I don't think it would be a fair reading

4    of the record to somehow infer that Cadence has been dilatory

5    in seeking its relief before this Court.  Or that somehow the

6    fact that the case is taking four or five years in the non-

7    bankruptcy forum somehow demonstrates Cadence's unwillingness

8    or lack of enthusiasm for the claim.  As outlined in the

9    responsive brief, Your Honor, we very much are in the midst of

10   litigation.  The Court recognized the parties were very much

11   fighting in a very vigorous way all the issues in that case.

12   And as the Court knows, those patent litigation issues may, in

13   fact, drag on based on the fact you've got to have the Markman

14   adjudication first, and then you got to have a Markman hearing

15   first, and then you move to liability and damages as a very

16   typical structure.  I don't know if the Court recalls in the

17   Paragon situation we had initially the judgments and sort of a

18   magnitude of liability, but we had to lift the automatic stay

19   to allow the Court to actually adjudicate the damage based on

20   the evidence, and enter a judgment for that amount so as to

21   allow us to take appeals.  So I don't think that the process

22   procedurally that the case has taken outside the bankruptcy

23   court is at all an indication or should be read fairly as any

24   indication that Cadence is not vigorously prosecuting the

25   claim.  Nor do I think that the record in the process in the

30

1   bankruptcy case somehow leads to the conclusion that it's not a

2   big deal.  Don't worry about it, there's no prejudice to

3   Cadence.  As I've said, Your Honor, this is a continuing tort,

4   if you will, and an asset that is subject to expiry over a

5   period of time so that we would contend that the burden and the

6   harm is much more on the Cadence end of this deal than on the

7   debtors.  And obviously the debtors have competent counsel in

8   Quint Emmanuel available to litigate the case in Detroit.

9   They've been retained by the Court, they've been retained to

10  deal with this specific issue and they're prepared to proceed.

11  Thank you, Judge.

12          MR. BUTLER:  Your Honor, I only have a few specific

13  points in connection with this.  First, Mr. Connolly doesn't

14  want to explain away the fact that this litigation has been

15  going on for years.  And even if the stay were granted or the

16  stay were permitted it would go to at lease the end of 2008 or

17  beyond and then the appeal periods beyond that.  This is not

18  going to be decided, I hope, in the time frame of this Chapter

19  11 case.  And the real issue from the company's perspective is

20  in the context of what's going to be probably a decade long

21  piece of litigation, given the four or five years it was going

22  on beforehand, is to simply say to the Court that in this first

23  few months of 2007 we think there really is prejudice to the

24  estate to divert our claims resources to deal with this.

25  Simply because Cadence chose to opt out of that claims process.

31

1          THE COURT:  On the management side, who is dealing

2     with this?

3          MR. BUTLER:  On management's side there's a patent

4     section of the company that deals with -- that reports up to

5     and includes Coburn, who is here as deputy general counsel, is

6     very much involved in overseeing that.  And is involved in

7     looking at all those claims.  But we clearly have patent

8     lawyers within that organization.  But this is all part of the

9     claims process.  You know, Cadence isn't the only patent claim

10    that we have.  And the biggest objection that the company has

11    now, candidly, is that after waiting fourteen months to file

12    the motion, and after deciding they wanted to opt out

13    completely out of the claims administration process, they

14    basically want their claim to essentially go on the super fast

15    track, that is back to Judge Cohen, and deal with those issues

16    at a time when we're consumed in the claims process with a

17    particular thing, Your Honor.  And that is, as you know, trying

18    to figure out whether or not the trade claims and gucks are

19    more or less than 1.7 billion dollars.  And our focus, the

20    energy of all the people who have come and working on claims,

21    including the people in all the sections affected, have to be

22    dealing with this issue.  All right.  Are focused on that.  My

23    biggest point here at the moment is I think this is premature

24    and should be denied without prejudice to bring it back in four

25    to six months.  There's no prejudice that Cadence has shown.

32

1    That they waited fourteen months -- I mean, if I go through the

2    litigation --

3                THE COURT:  As far as the parties focusing on claims,

4    how much will the people who are actually dealing with this

5    litigation have to do that?

6                MR. BUTLER:  Same claims team, Your Honor.  I mean,

7    now the claims team is dealing with billions of dollars of the

8    claims.  But, you know, people allocate -- it's the same

9    process.

10                THE COURT:  But most of those claims aren't patent

11   claims, are they?

12                MR. BUTLER:  No.  It would be silly to say that

13   most -- obviously, most of the patent claims, thousands of them

14   are trade claims.  Right?  But we have -- we do have patent

15   claims.  Cadence isn't the only patent claim that's been

16   presented here.  And really, Cadence is coming to court and

17   saying carve us out of all the processes, let us go back out to

18   district court.  By the way, the one we want to be on --

19   because that's an open issue to at the end of the day.  And, by

20   the way, decide right now that whatever we decide out in

21   Detroit is the administrative claim against this company.

22                THE COURT:  Well, leave that aside.  All right.

23                MR. BUTLER:  I know.  But that's the package that

24   came to you.

25                THE COURT:  Well, I understand.  But which patent

33

```
 1    claimants besides Cadence have opted out of the claims

 2    procedures?

 3              MR. BUTLER:  I don't have a list of that here today,

 4    Your Honor.  I don't know if anyone does.  There's been a

 5    couple.  Bosch did, Technology Properties, there are others,

 6    it's not just Cadence.

 7              THE COURT:  And you still have the ability to

 8    estimate.

 9              MR. BUTLER:  I appreciate the fact that Mr. Connolly

10    has conceded that point on this record.  But I'm --

11              THE COURT:  How many of the other patent claims

12    allege ongoing infringement?

13              MR. BUTLER:  I think virtually all of them.  That's a

14    standard kitchen variety, you know, argument.  Just because

15    they claim it doesn't make it so.  But that's -- I believe, I

16    haven't looked at the settlement, I believe most of those

17    claims all argue that.  And I'm just saying, Your Honor, the

18    litigation out there has, you know, there's been no discovery

19    conducted with respect to the damages phase.  There's been --

20    the discovery with respect to the liability hasn't been

21    completed.  This case isn't going to go to trial until 2008

22    sometime, best case.  All right.  There's going to be appeals

23    after from one side or the other.  This is long complex patent

24    litigation.  They've waited fourteen months to come in.  All

25    I'm saying -- at the moment all I'm saying, Your Honor, is deny
```

34

```
1    it without prejudice and have them come back --

2              THE COURT:  How does it even affect the 1.7 billion,

3    then?

4              MR. BUTLER:  Because it's still a guck, but we have

5    to sort out what we think in our own minds, we have to

6    demonstrate.  We have a limited number of claims.  I understand

7    that this is a patent case and you can't make your final

8    determination on that claim because they withdrew the

9    reference.

10             THE COURT:  But what I'm saying is you're not

11   proposing to liquidate it before confirmation, are you?

12             MR. BUTLER:  No.  I'm not going to be able to, Your

13   Honor.  With that particular -- I'm going to end up at the end

14   of the day, we're going to end up with claims process.  This is

15   a guck in the nature of the other general unsecured claims.

16   That was not an adjective or characterization, it was a noun.

17   But it is one of the things that falls in the 1.7 billion

18   dollar bucket.  When we're done with this process, which we are

19   doing at an expedited basis, we're going to come down to a pile

20   of claims, hopefully it's a small pile which we're not going to

21   be able to get you to liquidate for various different reasons.

22   And we have to sit with the plan investors and actually look at

23   it and say, you know, it smells like X and they're going to

24   have to -- and we'll have estimated it internally for them and

25   they will have to say they agree with it or don't agree with it
```

35

because we're not going to get a court prima turon.  And that's
where this is going to fall at the moment.  And all I'm saying
is please don't divert -- cause us to divert the attention of
the company on the claims administration process away from that
1.7 billion dollar bucket.  And I think -- Mr. Connolly
conceded we're up to our sixth claims motion in three months.
We're holding claims hearings twice a month.  He wanted to opt
out of that process, he didn't have to, he could have been in
the process.  He chose to carve himself completely out of the
process, that's his entitlement to it.  He did it, that's what
the order says.  All right.  But that doesn't mean he also
needs to -- he ought to be able to come in the moment he files
and drops the lift stay motion in this Court after waiting
fourteen months and we should say oh yeah, certainly, let's go
start that litigation back up in Detroit.  All I'm asking is
that you deny the motion without prejudice.  Let him come back
in the summer, we have better visibility on these issues.
Because I've got to figure this stuff up.  All my colleagues,
who are the ones who are really working on this, have to work
out this 1.7 billion dollar issue over the next two or three
months.  And I'm just asking Your Honor to do that.  They can't
demonstrate prejudice, they haven't in their papers.  And you
say you've read all the papers in the Sonax stuff.  There's no
insurance for this, there's a variety of other matters that
would weigh against this.  And I would just ask the Court to

36

1    say let's look at this again in the light of where this case is

2    midyear.  That's all I'm asking.  And the context of this

3    litigation -- I don't think that prejudices Cadence.  And the

4    failure to do that will prejudice the debtors.

5              THE COURT:  Well, I guess at this stage I appreciate

6    that you're focused on resolving the unsecured claims.  But

7    given the procedures that are in place, generally -- given the

8    unusual nature of this claim -- I appreciate, I think, you have

9    to focus on it anyway to some extent.  And I don't know what

10   caused the mediation to fall apart, whether it was the

11   bankruptcy itself that did or not but --

12             MR. BUTLER:  I'm not aware, Your Honor.

13             MR. CONNOLLY:  It was before the bankruptcy, Judge, I

14   may just add that.  It was not as a result of the bankruptcy

15   filing.  I think there may have been -- it was a pretty heated

16   litigation, there is new management at Cadence and we had made

17   that fact known to the debtors as well in this context.

18             MR. BUTLER:  Well, why couldn't we agree to have a

19   mediation over the next sixty days, you know --

20             THE COURT:  Well, that's something you could

21   certainly raise with the district judge, and I would certainly

22   encourage it.

23             MR. BUTLER:  Well, you could also require it before

24   you lift the stay, Your Honor.  And --

25             THE COURT:  What do you think, Mr. Connolly?  Now

37

1    that they know what the --

2                MR. BUTLER:  And leave a level playing field.

3                MR. CONNOLLY:  Well, Your Honor, their playing field

4    is unlevel sometimes.

5                THE COURT:  No.  Leave that aside.  It seems to be

6    that there's some value in doing that.

7                MR. CONNOLLY:  Well, Your Honor, I --

8                THE COURT:  I mean, in some respects they would be

9    focusing more on you, then.  I think any good patent litigator

10   could delay a patent case a long time.  And to actually have

11   the debtors focus for sixty days instead is not a bad thing.

12               MR. CONNOLLY:  Well, if the structure of the order

13   mediation and the stay is lifted, unless it could obviously --

14   if we settle, we settle.  If the stay is lifted after the sixty

15   days that's one thing.  If we're back again then I would

16   contend that we ought to go and lift the stay.

17               THE COURT:  No.  It would be a condition to relief

18   from the stay, good faith mediation.

19               MR. CONNOLLY:  And, Judge, I have expressed to Mr.

20   Lyons, my clients, but they're five miles away from Delphi's

21   headquarters and so we would be happy to have a conversation

22   with them.  Is the Court proposing, Mr. Butler proposing,

23   however, not a settlement negotiation but an appointment of a

24   mediator and/or are we really talking about just a good faith

25   settlement conference?  And if we don't --

38

1          THE COURT:  I don't know, what would you prefer?

2          MR. BUTLER:  I'd prefer some meaningful alternative

3   to dispute resolution.

4          THE COURT:  I think having a mediation is helpful.  I

5   don't know if the people on your list, if any of those people

6   deal with patent issues.  I would assume you might because of

7   the nature of the debtor's business.  But I think having --

8   unless you want to get into it, a lengthy mediation, having a

9   suitable period on the patent issues is more than -- you know,

10  takes more than a couple of days to prepare for something like

11  that.  But I think sixty days for a mediation and that the stay

12  would be lifted thereafter unless there's a settlement.

13         MR. CONNOLLY:  Judge, I think that would be fine.  I

14  looked at the mediators, I'm familiar with some of them.  Judge

15  Farlin, Judge Katz, I think they're both on the list.  I'm not

16  aware of their expertise in patent areas.  So I would think

17  that we would want to have conversation about bringing in

18  somebody.

19         THE COURT:  That's fine.  All right.  So if you want

20  to submit an order to that effect?

21         MR. BUTLER:  And on the administrative claim

22  motion --

23         THE COURT:  I'm going to deny that without prejudice

24  as being premature.

25         MR. CONNOLLY:  Thank you, Your Honor.  One issue on

39

1   that concession that we made.  I mean, the point I was making

2   in my remarks is I understand that at some point someone may

3   file an estimation motion.  We will deal with --

4               THE COURT:  Oh, yeah.  All your rights are reserved

5   on it.  I just wanted to make sure you weren't seeking relief

6   from the stay so that's the only place where the claim can be

7   dealt with.

8               MR. CONNOLLY:  I understand, Judge.  And it may be

9   that we end up filing a motion and maybe the debtors and maybe

10  we end up settling and certainly that's a laudable goal.

11              THE COURT:  Okay.  All right.  Good.

12              MR. CONNOLLY:  Thank you, Your Honor.

13              THE COURT:  Okay.

14              MR. BUTLER:  Okay, Your Honor, for turning back,

15  then --

16              THE COURT:  So you don't have to -- obviously, you

17  don't have to settle it, but obviously I'm sure you're going to

18  go over the order with Mr. Connolly.  Or Mr. Connolly, you'll

19  go over it with Mr. Butler.  One or the other.

20              MR. CONNOLLY:  Yes, Judge.  We'll put something

21  together and get it to the Court posthaste.

22              THE COURT:  Okay.

23              MR. BUTLER:  Can I have a moment, Your Honor?

24              THE COURT:  Yes.

25              MR. BUTLER:  Your Honor, the next matter on the

40

1   agenda is matter number 8.  It's the fourth omnibus claims

2   objection found at docket number 6099.  And this particular

3   objection deals with duplicate and amended claims.  We have

4   sought to expunge and disallow some 772 proofs of claims

5   asserting liquidated damages of approximately 140 million

6   dollars which we believe would be duplicative of other claims,

7   or they've been amended and superseded.  There have been

8   thirteen responses by holders of duplicate or amended claims.

9   As we have with other omnibus objections, we have eliminated

10  those parties, you know, in terms of future claims hearings.

11  We also, Your Honor, we filed a reply with respect to that.  We

12  also agreed to adjourn the hearing on the debtor's objection to

13  certain claims of four unions, the IMAW, the IBEW, the IUOE,

14  and IUE-CWA.  And the deadline for those unions to file a

15  response will be February 7th, and the deadline for us to file

16  a reply will be February 13th.  We also agreed to adjourn the

17  DVM Technologies claim until February 14, 2007.  There's also

18  been an agreement to adjourn a hearing on the Hazel Emerett's

19  claim to a future hearing date to be set by the debtors.  So

20  we're dealing right now, Your Honor, with uncontested claims,

21  totally about 279 claims with liquidated damages of about 59

22  million dollars.  And I think that resolves the things we

23  have -- I do want to put some -- I think I need to put a few --

24          THE COURT:  So there's no -- you're only going

25  forward with claims where there was no opposition?

41

1          MR. BUTLER:  Correct.  And I do believe that I --

2          THE COURT:  Are there some that you resolved too?

3          MR. BUTLER:  There are.  I think there's a few

4   statements I have to place on the record if I understand where

5   we are in that.  There was some informal responses and that was

6   Mercedes Benz and Sierra Liquidity Fund.  And we added some

7   individual language to the claims objection order that we

8   submitted with respect to Mercedes which said that the entry of

9   the order without prejudice to Mercedes in its separate motion

10  filed at docket number 4778.  And that their rights and the

11  debtor's rights regarding that motion were expressly preserved.

12  And for Sierra we added language which said notwithstanding the

13  docketing of claims, claims numbers 15975, 15981 and 15986 were

14  deemed to be asserted against Delphi Automotive Systems, LLC,

15  claim 15983 to be asserted against Delphi Medical Systems,

16  Colorado Corporation and claim number 15984 against Delphi

17  Electronic Systems, Inc.  And that's all indicated, Your Honor,

18  in the black-line order that we provided to the Court.

19          THE COURT:  Okay.  All right.  Does anyone have

20  anything to say on this?  All right.  I will approve the fourth

21  omnibus claims objection as set forth on the record and in the

22  proposed order, the black lined as being unopposed and as

23  supported by the objection.

24          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

25  matter number 9 on the agenda is the fifth omnibus claims

42

1    objection filed at docket number 6100.  This is the debtor's

2    second objection of proofs of claims.  And we've objected in

3    this particular claims objection to two categories of claims.

4    First, those with insufficient documentation and second, those

5    with liabilities not reflected on the debtor's books of record.

6    This particular omnibus objection covers thirteen claims where

7    there have been insufficient documentation and 159 claims where

8    liabilities of dollar amounts that don't match the debtor's

9    books and records.  We have received nine formal responses to

10   the objection.  Eight of those were timely; one was filed on an

11   untimely basis.  And we also received three separate responses

12   that we don't believe were docketed on the Court's record but

13   which we did receive on behalf of the debtors.  Those responses

14   cover fifteen proofs of claim asserted for about 10.8 million

15   dollars worth of damages.  And, therefore, for purposes of

16   today we seek relief only on the uncontested portions of the

17   fifth omnibus claims objection and that would cover 160 claims

18   asserting liquidated damages of about 16 million dollars.  The

19   hearing with respect to the claim with formal responses have

20   been filed as being adjourned pursuant to the claims objection

21   order and the reschedule in accordance with that order.  And I

22   don't think that there's anything I need to say particularly

23   about any of the responses in the form of order we submit.

24        THE COURT:  Okay.  As far as the claim objection,

25   "the amount stated in the claim differs from the amount in the

43

1    debtor's books and records," you're not allowing it yet in the

2    amount of the debtor's books and records, or are you allowing

3    it in that number?

4            MR. BUTLER:  No.

5            THE COURT:  You're not.  It's just being disallowed

6    in the amount that differs at this point?

7            MR. BUTLER:  Correct.

8            THE COURT:  Okay.  All right.  I'll approve the fifth

9    omnibus objection as set forth on the record in the amended

10   black-line order on the basis that there's no opposition to it

11   and for the reasons stated in the objection.

12           MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

13   next matter which we dealt with at the end of the prior

14   hearing, but I simply want to state in the record, is the

15   debtor's third motion for extension of exclusivity filed at

16   docket number 6285.  There have been two objections in a

17   statement filed.  The objections of the creditors' committee,

18   at docket 6440, and of Highland Capital, 6442.  Both have been

19   withdrawn.  There is -- just for purposes of this evidence, I

20   would like to put in, just as an evidentiary record here, Mr.

21   Sheehan's written declaration which is pre-submitted to Your

22   Honor.  I move that into evidence.

23   (Sheehan Declaration Admitted Into Evidence, as of this date.)

24           THE COURT:  That's admitted.  And I did consider that

25   as well as the motion. (A) it's not unopposed, and (b) I find

44

 1    that the debtor has set forth cause in light of the work that

 2    it's done to date as well as the work that it will be doing

 3    over the extended period, or the extended exclusivity period.

 4                MR. BUTLER:  Thank you, Your Honor.  The last matter

 5    on the agenda, number 11, is Mr. Berger's.

 6                MR. BERGER:  This is a first pre-trial conference for

 7    an adversary proceeding commenced by the debtors against NYCH

 8    RCS Computer Experience.  The defendant is a retail seller for

 9    electronics here in Manhattan.  The debtor sold some goods and

10    predominantly satellite radios to the defendant.  The

11    defendant's answer asserted some type of rebate program in

12    place; we made it in a formal discovery request.  We anticipate

13    getting documents from them to determine whether or not the

14    rebate program was in place by their reply.  And if it did

15    apply, our calculation on reduction of the amount is by the

16    debtors.  We've agreed, subject to Your Honor's consent, to

17    adjourn this to the February date.

18                THE COURT:  Okay.  That's fine.

19                MR. BERGER:  Thank you, Judge.

20                MR. BUTLER:  Your Honor, that completes the omnibus

21    hearing.  And I think you stated you wanted to take a recess

22    before the --

23                THE COURT:  Well, yes.  There may be some people here

24    already on the first scheduled claim objection hearing.  I've

25    been going since 9:30 this morning so I'm going to take a brief

45

1   recess for lunch.  And be back at 3:15.

2            MR. BUTLER:  Thank you, Your Honor.

3        (Recess from 2:35 p.m. to 3:37 p.m.)

4            THE COURT:  Please be seated.  Okay.  Delphi

5   Corporation.  First of all, let me say I'm sorry I'm a little

6   late.  Something came up in another case that I had to deal

7   with.  But we're here on substantive aspects, limited to

8   sufficiency hearing aspects, on various claim objections.

9            MR. LYONS:  Yes.  Good afternoon, Your Honor.  John

10  K. Lyons on behalf of the debtors.  With me in court I have

11  Randall G. Reece and Eric Howe who are working on the claims

12  matters at Skadden and also on Mr. Dena Unrou and Karen Kraft

13  at Delphi who are also part of the claims team.  I want to

14  introduce the rest of the team, you've seen them over the last

15  couple of days, from Delphi.  Well, Your Honor, with your

16  permission I could go straight to the agenda and --

17           THE COURT:  That's fine.

18           MR. LYONS:  Okay.  The first item, Your Honor, we

19  have three responses that were carried over from the second

20  omnibus claims hearings that we did not have enough time to

21  resolve on November 30th.  We have resolved those three

22  responses filed by Cadence EDS and Bosch.  And, Your Honor,

23  first with respect to Bosch, I have a stipulation that I'd like

24  to hand up which the parties have executed and resolved as to

25  the matter.

46

 1          THE COURT:  Okay.  Well, you can hand it up at the

 2     end of the hearing.

 3          MR. LYONS:  Okay.  Very good.  Well, then I'll just

 4     briefly explain what we've done.  Similar to what we've done in

 5     the order expunging claims subject to the second omnibus

 6     hearing included language which allows the claimant, if we've

 7     expunged a duplicate claim from one of the estate, to in

 8     essence switch it back to that estate if it turns out that that

 9     estate ultimately is liable.

10          THE COURT:  All right.

11          MR. LYONS:  Also, we've preserved joint and several

12     liability if they believe that there's joint and several

13     liability amongst the debtors, those rights are preserved and

14     will not be prejudiced by the expungement of the duplicate

15     claims.  So those are the general themes running through these

16     three resolutions that agreed language.

17          THE COURT:  Okay.

18          MR. LYONS:  Bosch would be a separate stipulation

19     which gives Your Honor after the hearing.  And then we have an

20     order with respect to Cadence at EDS.  And, Your Honor, I do

21     however need to read in some language with respect to EDS as

22     pursuant to the agreement of the parties.

23          THE COURT:  Okay.

24          MR. LYONS:  Okay.  First, the debtors and EDS have

25     agreed to a resolution to an error appearing in paragraph 12 of

47

1    the third omnibus claims objection order.  Specifically, the

2    order adjourns the hearing with respect to the claims of

3    Electronic Data Systems Corporation, EDS Information Services,

4    LLC and EDS de Mexico SA, the CVs which were subject to the

5    third omnibus claims objection to January 12, 2007.  The

6    debtors acknowledged that the hearing on EDS's claim has not

7    been adjourned to today's hearing, but rather has been

8    adjourned to a future hearing to be set pursuant to the claims

9    objection procedures order as clarified on the record at the

10   November 30, 2006 hearing with respect to its application to

11   EDS.

12              THE COURT:  Okay.

13              MR. LYONS:  And again, Your Honor, we have been

14   through -- I've already explained what the content of the order

15   for EDS and Cadence will be.  One addition we have that was not

16   in the previous or the second omnibus order with respect to

17   Cadence is that Cadence has required language so stating that

18   nothing -- "notwithstanding any provision of this order,

19   nothing contained in the order shall impair, affect or

20   otherwise limit the ability of Cadence to assert at any time

21   against any of the debtors any claim asserted in the surviving

22   claims of Cadence, including but not limited to in connection

23   with voting on a new plan of reorganization proposed by any

24   party in interest and in connection with any distributions

25   under the plan."  Frankly, it's a clarification, we never

48

1    intended to do that anyway but that's what the order will

2    provide as well.

3            THE COURT:  All right.

4            MR. LYONS:  Finally, with respect to the resolution

5    of Cadence, Mr. Connolly and I have come up with a five point

6    statement that I will read into the record, which Mr. Connolly

7    requested be read into the record which will then resolve the

8    case duplicative issue.

9            THE COURT:  Okay.

10           MR. LYONS:  First, Your Honor -- and I will so

11   confirm.  "(1) An admission or stipulation on the record in

12   court.  (2) By counsel with authority to stipulate on behalf of

13   all debtors."  So confirmed by me.  "(3) That DAS LLC is the

14   only debtor, (4) that has made, used, offered for sale or sold

15   any air bag covers, including the air bag covers that Cadence

16   alleges infringe its patents (5) during the time period January

17   1, 1999 to the present."  So I will confirm that representation

18   on behalf of the debtors and I believe Mr. Connolly may want to

19   say --

20           THE COURT:  When you say DAS, is that the actual name

21   of it or is that an acronym?

22           MR. LYONS:  That is a defined term that we have been

23   using, it's Delphi Automotive Systems, LLC.

24           THE COURT:  Okay.

25           MR. CONNOLLY:  Thank you, Your Honor.  Dennis

49

1   Connolly, on behalf of Cadence.  I think that resolves it, Your

2   Honor, the two surviving claims were the ones I mentioned

3   previously in the stay relief argument which is Delphi Auto

4   Corporation or Delphi Corporation, I think there's been a name

5   change, which is claim number 10100, and then the so-called DAS

6   claim which is claim number 10111.  And I believe that the

7   order reflects that.  But if it doesn't, we'll obviously make

8   any confirmatory changes or clarifications to it.  And that

9   resolves the second omnibus objection and obviously we will

10  deal with the third depending on the outcome of mediation and

11  where we go from there.

12            THE COURT:  Okay.  Very well.

13            MR. CONNOLLY:  Thank you, Your Honor.

14            THE COURT:  Thank you.

15            MR. LYONS:  Okay.  Your Honor, before we turn to the

16  sufficiency matters, if I can hand up to Your Honor -- at the

17  last claims hearing I provided a summary that shows where we

18  are in the process, what the claims are pursuant to the omnibus

19  objections and also the scheduled claims that are slated for

20  hearing pursuant to the procedures order.  If I can hand that

21  up to Your Honor?

22            THE COURT:  That's fine.

23            MR. CONNOLLY:  Your Honor, may I be excused?

24            THE COURT:  Yes.

25            MR. CONNOLLY:  Thanks very much.

50

1          THE COURT:  Okay.  And as we go along, if someone is

2    here on a particular claim and that's a claim that has been

3    resolved and you don't want to stay you should feel free to go

4    also.

5          MR. LYONS:  And, Your Honor, as the summary notes,

6    after giving effect to the orders we're going to submit to Your

7    Honor later today, we will have expunged through five omnibus

8    objections over 8.5 billion dollars in claims.  And there are

9    currently roughly 518 million that are currently in process

10   that have been subject to the omnibus objections, have the

11   objections pending.  And then the second chart that I handed up

12   to Your Honor is a list of the schedule of the claims that have

13   been noticed pursuant to procedure that are actually in line

14   now for Your Honor's adjudication.  I'm happy to report we have

15   been making progress with a lot of these claims.  I think the

16   procedures have been working quite well, we've had a number of

17   meet and confers and we've had a number of claims that have

18   been resolved.  And we're still working very zealously to try

19   to get through this process in a very efficient, timely matter.

20         THE COURT:  Okay.

21         MR. LYONS:  Your Honor, the first sufficiency matter

22   is with respect to the debtor's third omnibus claims objection,

23   with respect to seven proofs of claim filed by Lafonza

24   Washington.  Your Honor, Mr. Washington filed seven proofs of

25   claims.  The numbers, I believe, are noted on the agenda to the

51

```
1    third omnibus objection.  Each of the proofs of claims asserts
2    that the claimant is entitled to a thirty million dollar
3    unsecured priority claim on a number of grounds including
4    involuntary servitude, six years of decoration of General
5    Motors related income and severance pay due to the claimant
6    based on the July 2, 1999 closing of the Buick City plant owned
7    and operated by General Motors.  According to the claimant's
8    proof of claim, which again, is what we are looking at, we're
9    asking Your Honor to rule on these under a standard that Your
10   Honor approved in the procedures of a motion to dismiss
11   construed all allegations to be true.  According to the
12   claimant's proof of claim, Mr. Washington was employed by GM
13   for thirty-two years.  But when the Buick City plant was closed
14   in 1999, claimant was given an option to transfer to Delphi's
15   manufacturing facility in Saginaw.  He apparently declined this
16   offer.  Your Honor, this is the only nexus to Delphi.  Mr.
17   Washington was never an employee of Delphi.  He was merely
18   given an option to transfer into a Delphi plant.  And we've
19   scrubbed through and gone through the various pleadings and
20   papers filed by Mr. Washington and, Your Honor, there's just no
21   nexus to the debtors other than that nexus.  And again, we
22   filed the papers.  Your Honor has had those.  And frankly, we
23   rely on our papers and would request the Court to expunge Mr.
24   Washington's claim.
25              THE COURT:  Okay.  Is anyone here on behalf of Mr.
```

52

1    Washington or on the phone?  All right.  What I'm about to say

2    as far as the standard by which I'm reviewing these claim

3    objections goes for each one of them.  So I'm not going to

4    repeat it.  The debtors correctly cite the applicable standard

5    for purposes of this hearing, which is that the claimant has

6    the initial burden of alleging facts sufficient to support

7    legal liability against the debtors or a particular debtor, and

8    in order to obtain the presumption of validity of the filed

9    claim.  That's set forth at length and accurately in In re

10   WorldCom Inc., 2005 WL 3832065 (Bankr. S.D.N.Y. December 29,

11   2005), which in term cites to In re Allegheny Int'l, Inc., 954

12   2d 167, 173-174 (3d. Cir. 1992).  That is notwithstanding

13   Bankruptcy Rule 3001(f), and in fact it is consistent with Rule

14   3001(f), which provides: "Evidentiary effect: a proof of claim

15   executed and filed in accordance with these Rules shall

16   constitute prima facie evidence of the validity and amount of

17   the claim."  The key phrase there is "filed in accordance with

18   these Rules which include rules," 3001(a) (requiring the filing

19   to be consistent with the official form) and in these cases,

20   because these are not secured claims, 3001(c), which requires

21   there to be evidence of a writing if the claim is based upon a

22   writing, as well as Bankruptcy Rule 9014 which applies to

23   contested matters (a claim objection being a contested matter).

24   Previously, this Court has adopted pursuant to Rule 9014(c)

25   Rule 7012, which in this context means that I'm reviewing these

53

| | |
|---|---|
| 1 | claims on a motion-to-dismiss basis.  That is, in light of the |
| 2 | allegations in the claim and assuming for purposes of this |
| 3 | determination, although, of course, the debtors do not concede |
| 4 | this assumption ultimately, if I were to proceed on the merits, |
| 5 | I would have to consider whether the assumption is actually |
| 6 | borne out by the facts; but, considering the assumption that |
| 7 | the allegations set forth in the claim are true, I need to |
| 8 | determine whether even if that were the case that the claim |
| 9 | states a basis for a claim against the debtor in any fashion. |
| 10 | See for example Conley v. Gibson, 355 U.S. 41, 45-46 (1957). |
| 11 | I've reviewed Mr. Washington's proof of claim and the |
| 12 | attachments thereto, as well as the various other pleadings |
| 13 | that he's filed with the Court that arguably attempt to assert |
| 14 | a claim in response to the debtor's claim objection.  And I |
| 15 | agree with the debtors that those filings do not set forth, on |
| 16 | a motion-to-dismiss basis, a basis for any claim against the |
| 17 | debtors.  That is because, as counsel has stated, he never |
| 18 | alleges any employment by any of the debtors.  If Mr. |
| 19 | Washington has any claim, and I'm not considering whether he |
| 20 | does or he doesn't, against any third party, that claim will be |
| 21 | against a third party if he, in fact, has one.  But there's |
| 22 | nothing in these claims that suggests any claim that would |
| 23 | survive a motion to dismiss against the debtors.  I'm assuming |
| 24 | you'll submit orders on each of these. |
| 25 | MR. LYONS:  Well, Your Honor, we were planning on |

54

1   submitting --

2           THE COURT:  Or you can deem the order -- I want to

3   deal with the fact that I want to avoid the situation where an

4   appeal of one determination holds up all the other matters.  So

5   if you're going to do an omnibus order you should do it with

6   the paragraph that you've done in the past which says that an

7   order granting these objections is deemed to be a separate

8   order with respect to each claim.

9           MR. LYONS:  Correct.

10          THE COURT:  Okay.

11          MR. LYONS:  We will do, Your Honor.  Okay, Your

12  Honor, next on the agenda are items 3 through 8.  And these

13  particular sufficiency objections relate to claims that have

14  been filed by common stockholders, either former or current

15  employees of Delphi in the retirement stock plan or other

16  common stockholders.  And with Your Honor's permission, I would

17  like to subgroup these because certain of the claims have

18  common issues that are not common to others.  In particular, I

19  would like to take agenda item and I'll just go in order.  3,

20  which is Mr. Sieloff.  4, which is Mr. Jorgenson.  5, which is

21  Mr. Mocny.  6, which is Mr. Kerscher.  And 8, which is Mr.

22  Downey.  It's basically excluding Mr. Deykes for the present

23  moment.  And I would like to just argue the merits of our

24  sufficiency objection with respect to those five claims at this

25  time.

55

 1          THE COURT:  Okay.

 2          MR. LYONS:  Your Honor, as we set forth in our

 3    papers, Messrs. Downey, Mocny, Kerscher, Jorgenson and Sieloff

 4    all filed proofs of claims on account of their common stock.

 5    They're all different in certain respects.  All have basically

 6    sought creditor status for loss and value of their common stock

 7    from the time that they acquired that stock until the time that

 8    they either sold that stock or the current value.  In addition,

 9    they haven't made allegations, general allegations, regarding

10    their entitlement to a claim based upon alleged fraud that the

11    debtors have committed.  They've made references to SEC

12    investigations, press releases and other statements.  And I

13    could certainly go through for each of the claims what I think

14    the key statements have been.  But as set forth in our papers,

15    Your Honor, we do not believe that these statements state fraud

16    with particularity which we believe is required under the

17    Federal Rule of Civil Procedure 9(b) which should be applied

18    here to the proof of claim as Judge Beatty held in In re

19    Rockefeller Center Properties.  So I guess the initial

20    question, Your Honor, is we believe that these claims should be

21    viewed in light in the prism of Rule 9(b) to determine whether

22    or not these claims sufficiently state fraud with

23    particularity, which we believe they do not.  In particular,

24    Your Honor, Mr. Sieloff -- I'd be happy to go through the

25    individual claimants if Your Honor would find it helpful.

56

1            THE COURT:  Well, I've been through them.  And if

2       they're here they're certainly free to speak, too.  One of

3       these at least, also asserts a claim for, I guess, breach of

4       fiduciary duty, which is Mr. Kerscher, in connection with a

5       401K.

6            MR. LYONS:  Yeah.  I believe that was -- that might

7       have been Mr. Downey.

8            THE COURT:  Well, he does also.  But I think Mr.

9       Kerscher does too, at least in his response he says that

10      there's a 401 -- this was held in a 401K.  My question to you

11      is, was any of the debtors itself a fiduciary in connection

12      with the 401K, was there a debtor that was a plan administrator

13      here or in any other sense of fiduciary?

14           MR. LYONS:  No, Your Honor.  There was a third-party

15      administrator.

16           THE COURT:  Okay.  All right.  Well, let me focus

17      first on the fraud claims.  As I take it, your point is

18      twofold.  One is that the alleged fraud is not pled with

19      particularity, and that means, for those who are not lawyers,

20      identification of a statement, when it was made, who made it,

21      and how it was relied upon and detriment.  And then in

22      addition, you allege that no claim sets forth any purchase or

23      sale either.

24           MR. LYONS:  For a number of the claims.  There are

25      certain instances where they allege fraud was in connection

57

1    with their acquisition of the stock but --

2              THE COURT:  Which one is that -- are those?

3              MR. LYONS:  That was, I believe, Mr. Jorgenson.

4              THE COURT:  Yes, that's right.

5              MR. LYONS:  Yeah.  Mr. Jorgenson was the one who was

6    clearest on that point.

7              THE COURT:  Okay.

8              MR. LYONS:  But other than that, the general nature

9    of these claims is that they had lost -- they're seeking a

10   claim for the loss of value of their holdings and did not sell

11   because they did not have accurate information.

12             THE COURT:  Okay.  All right.  Well, maybe I should

13   take them in order.  Is anyone here on behalf of Mr. Sieloff,

14   or is he on the phone?  All right.  I reviewed Mr. Sieloff's

15   proof of claim as well as his response.  And particularly in

16   light of the fact that he does not assert any fraud in

17   connection with the purchase or sale of a security but rather

18   the fact that he owns securities and that unidentified fraud

19   occurred at the company, I conclude that he's not set forth a

20   claim sufficient to withstand a motion to dismiss under Rule

21   7012.

22             I don't have the same view with regard to Mr.

23   Jorgenson's claim.  I think particularly in light of the fact

24   that he's appearing pro se, I believe, although it's a close

25   call, he's asserted enough as far as "positive information"

58

1    conveyed at employee meetings in connection with buying -- and

2    that he relied upon that -- in buying stock, that for these

3    purposes I think you need to proceed further with him.

4         Is anyone here for Mr. Mocny?  All right.  I reviewed

5    Mr. Mocny's claims and the material he submitted.  As with Mr.

6    Sieloff, he does not allege with sufficient particularity the

7    basis for a fraud, including, most importantly, what was said

8    as causing any damages to him in connection with the purchase

9    or sale of his security or any reliance upon what was said or

10   not said to him, but, rather, a less particular allegation

11   which really comes down to he owns stock and the company was

12   not during the time that -- the company has been alleged to

13   have committed some form of fraud in connection with its

14   financial disclosures during the period that he held stock.

15   And that does not sufficiently establish a causal nexus between

16   the damages he alleges and any alleged fraud.

17        Is anyone here from Mr. Kerscher?  All right.  I

18   asked about him because it seemed to me that conceivably he was

19   alleging in addition to a fraud claim a breach of fiduciary

20   duty claim.  And it might be that a fiduciary would have a

21   heightened obligation with respect to those who currently own

22   stock to not engage in any sort of fraud.  However, he does not

23   allege that Delphi was a fiduciary to the 401K plan that he

24   refers to.  And moreover, as with Mr. Mocny and Mr. Sieloff, he

25   does not describe the alleged fraud with sufficient

59

1    particularity to show that it would give rise to a claim by him

2    against the debtors.

3            So with regard to Mr. Sieloff, Mr. Mocny and Mr.

4    Kerscher, you can submit an order disallowing their claims.  I

5    will not grant the claim objection on a sufficiency basis with

6    respect to Mr. Jorgenson.

7            MR. LYONS:  Very good.  And, Your Honor, we also have

8    Mr. Downey.  Mr. Downey, again, did not allege fraud.  He had a

9    very conclusory statement that the debtors breached their duty

10   to protect their retirement account.

11           THE COURT:  Right.

12           MR. LYONS:  And again, Your Honor, it's a conclusory

13   statement.  He does not identify debt.

14           THE COURT:  That there is a fiduciary?

15           MR. LYONS:  That is a fiduciary, correct.

16           THE COURT:  Is Mr. Downey on the line or present?

17   All right.  For the same reason that I concluded that Mr.

18   Kerscher's conceivably asserted fiduciary duty claim would not

19   survive a motion to dismiss, I conclude the same with regard to

20   Mr. Downey.  He does not set forth any basis other than saying

21   that Delphi was a fiduciary, generally as to how Delphi was, in

22   fact, a fiduciary to him, including without limitation in

23   respect to the 401K retirement plan.  So you can submit an

24   order with regard to Mr. Downey too.

25           MR. LYONS:  Thank you, Your Honor.  Okay, Your Honor,

60

1    that leaves Mr. Deykes, which is item number 7 on the agenda.

2    Your Honor, we filed a response and a notice to Mr. Deykes's

3    response.  And as initial matter, Your Honor, the initial

4    amount in the proof of claim is 40,000 dollars.  In his

5    response, Mr. Deykes conceded that the loss in value is a

6    actually a lot less, 8,588 dollars.  So I wanted to bring that

7    to Your Honor's attention.  This is different than the others,

8    as Your Honor may know.  This is based upon -- and Mr. Deykes

9    is on the phone so he can certainly articulate it.  But it's

10   based on the inability of Mr. Deykes to get clearance from the

11   company after he left Delphi's employment to sell his shares.

12   Mr. Deykes didn't work in the audit department and did help the

13   company, from what I understand from his papers, responding to

14   the SEC's subpoena.  He was consistent with the company's

15   policy.  E-mails did go out that stated that they needed to get

16   free clearance in order to alter their investment portfolio,

17   their 401K.  He subsequently left the company and then had

18   sought, after he had left the company, to obtain clearance from

19   the company to sell the shares.  Your Honor, I guess the crux

20   of our argument is there is no identified duty.  Once he left

21   the company -- again, if Mr. Deykes thought he had material,

22   non-public information, he would be, as a matter of law,

23   prohibited from trading on that information and that's

24   something that Mr. Deykes was aware or was not aware of.  And

25   again, there is no identified duty that Delphi breached by, in

61

1    essence, not approving what he was going to do.  So we've

2    searched and looked at his response and tried to see if there

3    was a legal claim there.  But again, since he had left the

4    debtor's employment we do not believe that any claim really has

5    been articulated by Mr. Deykes that would support a proof of

6    claim.

7            THE COURT:  All right.  Mr. Deykes, you're on the

8    phone?

9            MR. DEYKES:  Yes, Your Honor, I am.

10           THE COURT:  Okay.  It wasn't clear to me from reading

11   your claim as to what was it that Delphi did that created the

12   claim?

13           MR. DEYKES:  With the restriction that was placed on

14   the (indiscernible) for the securities had occurred during my

15   employment.  During my employment I had requested -- right at

16   the end, before I left, I requested permission to sell the

17   stock and I did not receive a response, though.  If I could

18   correct the statement the gentleman just made.  My request

19   didn't come after employment, that actually came at the tail

20   end of my employment with Delphi.  So my understanding was that

21   a pre-clearance was required, be careful being employed or not

22   employed since there was a presumption that I had about public

23   information or could have.

24           THE COURT:  Well, how soon before you left was the

25   request made?

62

1           MR. DEYKES:  I had given a three-week notice and at

2    the time I gave my notice of separation I had initiated my

3    request at that time.  So three weeks before departing and

4    right after departure of that letter.

5           THE COURT:  I'm sorry.  The request was made more

6    than once or was it made just three weeks before you left?

7           MR. DEYKES:  No, I'm sorry.  There were three

8    separate requests.  I had made one three weeks before I left

9    the company and then one just after leaving and one a bit

10   later.

11          THE COURT:  All right.  Does the restriction apply to

12   people who are not employees of the company?  Is there any

13   issue as to that?  Mr. Deykes, do you take the position that

14   there's a restriction that applied after you left the company?

15          MR. DEYKES:  Yes, Your Honor.  That is my impression.

16          THE COURT:  As a contractual matter, I'm not talking

17   about a legal matter.  Generally, you know that you might have

18   a duty generally under the securities laws, but as a

19   contractual matter with the company?

20          MR. DEYKES:  That's correct, that's correct, yes.

21          THE COURT:  All right.

22          MR. LYONS:  Your Honor, I guess I would add that he's

23   attached no contract.  I mean, again, there's no contract and I

24   don't believe there is any contract, certainly, where we have

25   that type of provision.  And, you know, typically if you have a

63

1    contract claim you need to attach the underlying contract in

2    order to determine whether there is indeed a contractual duty

3    that could be breached.  So we respectfully submit that the

4    mere statement that there's a contract is not sufficient.

5              THE COURT:  Let me look at the claim again.

6              MR. DEYKES:  Your Honor, if I may?

7              THE COURT:  Yes.  I'm just pulling up your claim.

8    That's why it's silent here, they're watching me thumb through

9    a document.

10             MR. DEYKES:  I guess my assumption as I'm indicating,

11   I'm working with the internal function and, of course, in part

12   a solution in compliance to laws and regulation.  My

13   understanding was that if the directive coming from legal was

14   based on the insider trading laws and that the direction I took

15   on this saying that I was bound by it regardless of whether I

16   was told or not.  And simply based on the presumption I have

17   inside information.  There were other documents that were

18   provided to employees as attachments to the e-mail as provided,

19   but I don't have possession of that and that would be a

20   document that would be in Delphi's possession.

21             THE COURT:  All right.  I'm looking at the proof of

22   claim and -- I'll read it out loud.  It's the attachment.  "My

23   claim is based on ownership of Delphi Equity Securities and

24   associated losses due to the decline in value of the securities

25   and based on management's specific actions and inactions.  As

64

1   an employee of Delphi's internal audit department, I

2   participated in the internal and subsequent investigation of

3   management's actions.  I, along with other employees involved

4   in this investigation, were notified that we were deemed

5   insiders and were barred from executing any securities

6   transaction.  During this time, the value of the securities

7   declined."  If that was the only basis for the claim it would

8   be disallowed because that's not sufficient.  Then it goes

9   along to say "in March of 2005 I terminated my employment with

10  Delphi.  Shortly thereafter, I inquired with Delphi's legal

11  staff as to whether the prohibition to sell securities still

12  applied to me.  Delphi's legal staff was unresponsive to my

13  inquiries."  Again, since the claim itself says that you made

14  the inquiry after you left, it does not seem to me that you're

15  basing it on an agreement or obligation that Delphi owed you

16  some duty in respect of.  Now what you said to me a few minutes

17  ago suggests something different.  And I think that leads me to

18  come out as follows.  The proof of claim itself does not set

19  forth a recognizable or cognizable claim because it doesn't

20  really specify any -- even if these facts are true, Delphi

21  wouldn't have any particular duty to you.  On the other hand,

22  if there was an agreement with Delphi that required Delphi to

23  release you of an obligation if, you know, under some

24  circumstances, however that would be phrased, then it might

25  have been a duty.  And if it breached that duty, then you would

65

1    have a claim.  So the bar date has passed.  You can always seek

2    to file a late claim if that type of claim that I just

3    described and that you described to me just now over the phone

4    is one that you can support with an agreement.  I'll consider

5    whether you can file your claim late.  And given the size of

6    the claim and the scope of this case, I might well permit you

7    to file it late.  But that depends on what I see when you file

8    it.  But as this claim is laid out, it does not set forth, even

9    if I accept all the facts in here as true, that Delphi violated

10   any obligation to you.  But again, if there was a policy or an

11   agreement that Delphi allegedly breached by not complying with

12   the procedures set forth to give you clearance, that would be a

13   different matter, potentially.  So the order should reflect

14   that this claim is disallowed.  But you should understand, Mr.

15   Deykes, that the Bankruptcy Code does permit, under certain

16   circumstances, the filing of a late claim.

17              MR. DEYKES:  Your Honor, if I may?

18              THE COURT:  Yes.

19              MR. DEYKES:  I just have one question.  I had filed a

20   supplemental response that basically outlined the facts as we

21   were discussing with you in terms of the number of requests and

22   the timing of the requests.  The absence of that being in the

23   original claim, you're saying that is not relevant?

24              THE COURT:  It is relevant that it's not in the

25   original claim.

66

1          MR. DEYKES:  Okay.

2          THE COURT:  That's the point I was making.  And there

3    is a separate standard for permitting a late claim or

4    permitting an amendment to a claim that substantially changes

5    the claim and it's not -- you know, it's a standard, that can

6    be met under the right circumstances.

7          MR. DEYKES:  Okay.

8          THE COURT:  Which includes, among other things,

9    prejudice to the debtor and other parties.  So that will be the

10   ruling on that claim.

11         MR. DEYKES:  Okay.  Thank you, Your Honor.

12         THE COURT:  Okay.

13         MR. LYONS:  Okay.  Your Honor, turning to items 9 and

14   10 on the agenda.  It's the sufficiency hearing regarding the

15   claims of Wilfred D. Leong and the claims of Victoria B. Perez.

16   Your Honor, these claims have no allegations of fraud, have no

17   other allegations.  They just say they had a claim because on

18   account of their equity interest.  And as Your Honor has done

19   in previous omnibus hearings, we would see to have that

20   expunged and will reclassified as equity interest if, in fact,

21   they do have some stock currently.  So we ask Your Honor to

22   expunge those claims based on the papers we filed.

23         THE COURT:  Is anyone here on behalf of Mr. Leong or

24   Ms. Perez?  All right.  I will grant this objection.  It's very

25   clear to me from reading their claims as well as their

67

1    responses that they believe that this was really a proof of

2    interest and that the debtor was objecting to their proof of

3    interest.  I think just given that fact, given the confusion

4    that's in their minds, I would like you to either put in the

5    order or separately notify them that this order does not

6    deprive them of any stock interest that they may have in the

7    debtor.

8              MR. LYONS:  We will do that, Your Honor.

9              THE COURT:  Okay.

10             MR. LYONS:  Your Honor, that is the last item on the

11   agenda.  So I have nothing further.

12             THE COURT:  Okay.  Very well.

13             MR. LYONS:  Thank you, Your Honor.

14             THE COURT:  Thank you.

15        (Proceedings concluded at 4:07 p.m.)

16

17

18

19

20

21

22

23

24

25

68

1                            I N D E X

2                                  Page      Line

3    Sheehan Declaration          43        21

4    Admitted into Evidence

5

6                                  RULINGS

7                                  Page      Line

8    Administrative Claim         38        21

9    Motion Denied

10   Fourth Omnibus Claims        41        18

11   Motion Denied

12   Fifth Omnibus Objection      43        6

13   Granted

14   Sieloff Claim Disallowed     58        20

15   Mocny Claim Disallowed       58        20

16   Kerscher Claim Disallowed 58           21

17   Deykes Claim Disallowed      65        5

18   Objection to Leong Claim     66        15

19   Granted

20   Objection to Perez Claim     66        15

21   Granted

22

23

24

25

69

1

2                        C E R T I F I C A T I O N

3

4   I, Esther Accardi, court approved transcriber, certify that the

5   foregoing is a correct transcript from the official electronic

6   sound recording of the proceedings in the above-entitled

7   matter, except where, as indicated, the Court has corrected the

8   transcription of the digital recording of the hearing.

9

10  _____   January 15, 2007_____

11  Signature of Transcriber                   Date

12

13  Esther Accardi      _____

14  typed or printed name

15

16

17

18

19

20

21

22

23

24

25

**A**

**ability** 14:8 33:7
  47:20
**able** 16:15 27:25
  34:12,21 35:12
**above-entitled** 69:6
**ABR** 19:23
**absence** 65:22
**Accardi** 4:24 69:4
  69:13
**accept** 65:9
**acceptable** 9:19
**Acceptances** 3:16
**accorded** 25:11
**account** 55:4 59:10
  66:18
**accurate** 57:11
**accurately** 52:9
**acknowledged** 17:18
  17:20 47:6
**acquired** 55:7
**acquisition** 57:1
**acronym** 48:21
**actions** 63:25 64:3
**actual** 48:20
**add** 25:3 36:14
  62:22
**added** 41:6,12
**addition** 47:15 55:8
  56:22 58:19
**address** 14:11 16:19
  21:22 25:4 26:6
  27:14
**addressed** 15:14
  21:17 22:1 25:5
  28:14 29:2
**addressing** 24:23
**adjective** 34:16
**adjourn** 40:12,16,18
  44:17
**adjourned** 42:20
  47:7,8
**adjourns** 47:2
**adjudicate** 14:8
  29:19
**adjudicated** 27:21

**adjudication** 19:22
  20:3 25:6 26:23
  29:14 50:14
**administration**
  25:21,22 31:13
  35:4
**administrative** 2:23
  11:19 12:8,17,21
  26:15,17 27:1
  32:21 38:21 68:8
**administrator** 56:12
  56:15
**admission** 28:5
  48:11
**admitted** 43:23,24
  68:4
**adopted** 17:16 52:24
**adversary** 44:7
**advisory** 26:13
**affect** 11:5 27:6 34:2
  47:19
**afresh** 22:22
**afternoon** 8:4 11:1,2
  11:24 12:1,4 45:9
**agenda** 8:8,8,10,13
  10:5 11:3 24:1
  40:1 41:25 44:5
  45:16 50:25 54:12
  54:19 60:1 66:14
  67:11
**Agent** 3:24
**ago** 64:17
**agree** 24:22 34:25
  34:25 36:18 53:15
**agreed** 10:9 11:15
  40:12,16 44:16
  46:16,25
**agreement** 14:15
  40:18 46:22 64:15
  64:22 65:4,11
**agreements** 21:7
**AIP** 8:20 9:6,8
**AIPs** 8:18
**air** 16:14 18:9,9
  48:15,15
**ALBERT** 5:9

**allegation** 58:10
**allegations** 51:11
  53:2,7 55:9,9
  66:16,17
**allege** 12:10 33:12
  56:22,25 58:6,23
  59:8
**alleged** 55:10 56:18
  58:12,16,25
**allegedly** 65:11
**alleges** 48:16 53:18
  58:16
**Allegheny** 52:11
**alleging** 52:6 58:19
**allocate** 32:8
**allow** 12:7,8 25:17
  29:19,21
**allowance** 2:23
  19:13
**allowing** 43:1,2
**allows** 46:6
**ALSTON** 5:12
**alter** 60:16
**alternative** 38:2
**amended** 3:7,24
  40:3,7,8 43:9
**amendment** 66:4
**Americas** 7:4
**amount** 12:20 29:20
  42:25,25 43:2,6
  44:15 52:16 60:4
**amounts** 42:8
**ancillary** 24:7
**and/or** 2:19 16:11
  37:24
**annual** 8:13
**answer** 14:1 44:11
**anticipate** 44:12
**anyway** 26:12 36:9
  48:1
**apart** 36:10
**apparently** 51:15
**appeal** 18:2 30:17
  54:4
**appeals** 29:21 33:22
**appearing** 46:25

**57:24**
**applicable** 52:4
**application** 2:22
  11:20 47:10
**applied** 11:13 55:17
  62:14 64:12
**applies** 52:22
**apply** 18:5 44:15
  62:11
**appointment** 37:23
**appreciate** 33:9 36:5
  36:8
**approach** 26:2
**appropriate** 8:25
  16:25 17:8 21:17
  21:18,23 22:25
  28:1,20
**approval** 23:9
**approve** 41:20 43:8
**approved** 8:18 9:17
  19:24 20:3 21:7
  51:10 69:4
**approving** 8:16 61:1
**approximately** 40:5
**April** 11:8
**arcane** 15:8
**areas** 38:16
**arguably** 53:13
**argue** 20:4 28:4
  33:17 54:23
**argument** 24:4
  33:14 49:3 60:20
**arises** 13:22
**Arps** 5:2 8:5
**arrangements** 10:17
**arrived** 8:22
**art** 16:13 18:17
**articulate** 13:8
  27:25 28:8 60:9
**articulated** 61:5
**aside** 32:22 37:5
**asked** 58:18
**asking** 26:16 35:15
  35:21 36:2 51:9
**aspect** 16:20 17:3
  18:13 19:15

**aspects** 19:3 22:15
  27:5 45:7,8
**assert** 47:20 53:13
  57:16
**asserted** 12:14 41:14
  41:15 42:14 44:11
  47:21 57:25 59:18
**asserting** 40:5 42:18
**assertion** 15:22
**asserts** 51:1 56:3
**asset** 19:2 30:4
**assets** 18:21
**associated** 63:24
**assume** 10:12 38:6
**assuming** 9:16,23
  20:19 25:13 53:2
  53:23
**assumption** 53:4,5,6
  63:10
**Atlanta** 5:15
**attach** 63:1
**attached** 17:18
  62:23
**attachment** 63:22
**attachments** 53:12
  63:18
**attempt** 53:13
**attempting** 21:25
**attention** 35:3 60:7
**Attorneys** 5:3,13 6:2
  7:2
**attributable** 26:24
**atypical** 15:25 21:15
**audit** 60:12 64:1
**authority** 48:12
**Authorizing** 2:2,5
  2:10,13
**Auto** 49:3
**automatic** 2:19 3:1
  11:5,22 12:6 15:16
  23:6 28:7 29:18
**Automotive** 23:22
  23:22 24:16,17,25
  25:1,19,19 41:14
  48:23
**available** 27:20 30:8

**Avenue** 7:4,10
**avoid** 24:4,10 54:3
**awarded** 27:19
**aware** 20:7 21:5,5
  36:12 38:16 60:24
  60:24

---

**B**

**b** 1:21 3:11 4:17
  11:12 43:25 66:15
**back** 10:10 21:4
  27:9 31:15,24
  32:17 34:1 35:15
  35:16 37:15 39:14
  45:1 46:8
**bad** 37:11
**bag** 16:14 18:9,9
  48:15,15
**Bankr** 3:6,10,22
  52:10
**bankruptcy** 1:2,14
  1:23 24:13 29:7,22
  30:1 36:11,13,14
  52:13,22 65:15
**bar** 65:1
**barred** 64:5
**based** 9:19,19 25:2
  29:13,19 51:6
  52:21 55:10 60:8
  60:10 63:14,16,23
  63:25 66:22
**basically** 26:16
  31:14 54:22 55:5
  65:20
**basing** 64:15
**basis** 34:19 42:11
  43:10 53:1,9,16,16
  58:7 59:5,20 64:7
**Beatty** 55:18
**began** 28:9
**beginning** 9:14
**behalf** 8:6 12:3
  42:13 45:10 48:12
  48:18 49:1 51:25
  57:13 66:23
**believe** 16:16 26:12

33:15,16 40:6 41:1
  42:12 46:12 48:18
  49:6 50:25 55:15
  55:16,20,23 56:6
  57:3,24 61:4 62:24
  67:1
**believes** 11:7
**Benz** 41:6
**Berger** 6:20 10:24
  10:25 11:2,2 44:6
  44:19
**Berger's** 44:5
**best** 33:22
**better** 35:17
**beyond** 30:17,17
**bifurcated** 15:4
**big** 28:6 30:2
**biggest** 31:10,23
**billion** 31:19 34:2,17
  35:5,20 50:8
**billions** 32:7
**binding** 19:17
**BIRD** 5:12
**bit** 23:12 62:9
**black** 41:22
**black-line** 41:18
  43:10
**books** 3:12 23:21
  42:5,9 43:1,2
**borne** 53:6
**Bosch** 33:5 45:22,23
  46:18
**bother** 28:16
**bound** 63:15
**Bowling** 1:15
**Brands** 16:2
**breach** 13:2 56:3
  58:19
**breached** 59:9 60:25
  63:3 64:25 65:11
**breakable** 18:8
**brief** 29:9 44:25
**briefly** 46:4
**bring** 31:24 60:6
**bringing** 12:24
  38:17

**broad** 6:11 12:23
**Brown** 12:19
**bucket** 34:18 35:5
**Buick** 51:6,13
**burden** 30:5 52:6
**business** 8:23 14:16
  38:7
**Butler** 5:7 8:4,5,12
  9:3,8,11,23 10:2,5
  10:15,19,24 11:18
  30:12 31:3 32:6,12
  32:23 33:3,9,13
  34:4,12 36:12,18
  36:23 37:2,22 38:2
  38:21 39:14,19,23
  39:25 41:1,3,24
  43:4,7,12 44:4,20
  45:2
**Butler's** 21:10
**buying** 58:1,2

---

**C**

**C** 5:1 8:1 69:2,2
**Cadence** 2:22 3:1
  5:13 11:19 12:3,4
  12:24 14:7 15:20
  17:19 21:5,12 23:8
  23:10 24:2 26:23
  29:1,1,2,4,24 30:3
  30:6,25 31:9,25
  32:15,16 33:1,6
  36:3,16 45:22
  46:20 47:15,17,17
  47:20,22 48:5,15
  49:1
**Cadence's** 29:7
**calculable** 27:19
**calculated** 26:24
**calculates** 16:6
**calculation** 44:15
**calendar** 9:16 10:3
**call** 13:2 18:11
  23:20 28:18 57:25
**called** 23:13
**Campbell** 23:2,4
**candidly** 31:11

**Capital** 43:18
**careful** 61:21
**carried** 45:19
**carve** 32:17 35:9
**carved** 22:16
**carve-out** 22:13
   23:7
**carving** 22:3
**case** 1:4 9:14 11:11
   12:18,20 13:15,17
   13:18 16:16,21,21
   17:2,9,11 19:4
   20:6,20 21:1 23:2
   23:4 25:22 26:19
   27:1 28:18 29:6,11
   29:22 30:1,8,19
   33:21,22 34:7 36:1
   37:10 45:6 48:8
   53:8 65:6
**cases** 17:6,9 21:15
   21:23 52:19
**cash** 27:20
**categories** 42:3
**causal** 58:15
**cause** 23:5 35:3 44:1
**caused** 36:10
**causing** 58:8
**cede** 11:23
**Center** 55:19
**Ceramics** 2:18 11:4
**certain** 2:7,16 3:6,10
   3:22 40:13 54:17
   55:5 56:25 65:15
**certainly** 14:22
   15:23 27:10 28:9
   29:2 35:14 36:21
   36:21 39:10 55:13
   56:2 60:9 62:24
**certify** 69:4
**challenge** 15:25
**chance** 8:20 9:4 10:8
**change** 14:16 16:13
   16:13 49:5
**changes** 49:8 66:4
**Chapter** 21:15
   30:18

**characteristic** 19:1
**characteristics**
   25:25
**characterization**
   34:16
**chart** 50:11
**chose** 30:25 35:9
**Cir** 52:12
**circuit** 13:18 14:1
   18:3 23:3
**circulated** 8:8
**circumstance** 17:8
**circumstances** 8:21
   64:24 65:16 66:6
**cite** 17:8 52:4
**cited** 23:2
**cites** 52:11
**citing** 26:18
**City** 51:6,13
**Civil** 55:17
**claim** 2:24 11:20
   12:8,17 13:10,12
   13:16,19,21,22,25
   14:2,3,4,8 15:22
   16:2,22 18:7,23
   20:2,15,17 21:3
   22:6,8,11 24:9,12
   24:20 25:10,11
   26:15,17,18 27:1
   27:25 28:1,11,13
   29:8,25 31:9,14
   32:15,21 33:15
   34:8 36:8 38:21
   39:6 40:17,19
   41:15,16 42:14,19
   42:24,25 44:24
   45:8 46:7 47:6,21
   49:5,6,6 50:2,2,23
   51:3,8,12,24 52:2
   52:9,14,17,21,23
   53:2,7,8,9,11,14
   53:14,16,19,20,22
   54:8 55:10,18 56:3
   56:22 57:10,15,20
   57:23 58:19,20
   59:1,5,18 60:4

61:3,4,6,11,12
63:1,5,7,22,23
64:7,13,18,19 65:1
65:2,2,5,6,8,14,16
65:23,25 66:3,4,5
66:10,17 68:8,14
68:15,16,17,18,20
**claimant** 46:6 51:2,5
51:14 52:5
**claimants** 33:1
55:25
**claimant's** 51:7,12
**claims** 2:6,15 3:7,11
3:11,23,23,24,24
4:1,3,5,7,9,11,13
4:15,17 10:6 13:2
13:11 17:19,21
19:13,13 20:10
21:14 22:2,13,14
22:21 23:8,10 24:1
24:24 25:22 28:21
28:22,25,25 29:2
30:24,25 31:7,9,13
31:16,18,20 32:3,6
32:7,8,10,11,13,14
32:15 33:1,11,17
34:6,14,15,20 35:4
35:6,7 36:6 40:1,3
40:4,6,8,10,13,20
40:21,25 41:7,13
41:13,21,25 42:2,3
42:3,6,7,17,17,20
45:11,13,20 46:5
46:15 47:1,2,5,8
47:22 49:2,17,18
49:19 50:8,12,15
50:17,22,25 51:1
52:20 53:1,22
54:13,17,24 55:4
55:13,20,22 56:17
56:24 57:9 58:5
59:4 66:15,15,16
66:22,25 68:10
**clarification** 47:25
**clarifications** 49:8
**clarified** 47:9

**clear** 15:1 61:10
   66:25
**clearance** 60:10,16
   60:18 65:12
**clearest** 57:6
**clearly** 25:2 31:7
**clerk** 23:11
**clients** 37:20
**close** 57:24
**closed** 51:13
**closing** 51:6
**Coburn** 31:5
**Code** 65:15
**cognizable** 64:19
**Cohen** 17:11,16,23
   22:17,20 31:15
**Cohen's** 25:4
**Cohn's** 14:14
**colleagues** 35:18
**colloquy** 25:3
**Colorado** 41:16
**come** 10:10 31:20
   33:24 34:1,19
   35:12,16 48:5
   61:19 64:18
**comes** 9:13 18:9
   27:9 58:11
**coming** 9:9 32:16
   63:13
**commenced** 28:11
   44:7
**comment** 8:13
**comments** 26:10
**committed** 55:11
   58:13
**committee** 2:5,10,14
   6:2 10:8,17 19:11
   43:17
**committees** 8:24 9:4
**committee's** 2:12
   10:6,21
**common** 54:14,16
   54:18,18 55:4,6
**companion** 27:24
**company** 31:4,10
   32:21 35:4 57:19

58:11,12 60:11,13
60:17,18,19,21
62:9,12,14,19
**company's** 30:19
60:14
**compensation** 2:3
9:18
**competent** 30:7
**complaint** 3:18
12:10 15:18
**complete** 25:7
**completed** 33:21
**completely** 31:13
35:9
**completes** 44:20
**complex** 33:23
**complexity** 22:5
**compliance** 63:12
**complicated** 17:21
**complying** 65:11
**comprehend** 16:17
**compressed** 19:22
**Computer** 3:19 44:8
**concede** 53:3
**conceded** 33:10 35:6
60:5
**conceivably** 15:17
20:21 58:18 59:18
**concern** 25:17
**concerns** 20:11
**concession** 39:1
**conclude** 57:19
59:19
**concluded** 8:19,25
59:17 67:15
**conclusion** 30:1
**conclusory** 59:9,12
**condition** 37:17
**conduct** 14:12
**conducted** 33:19
**conference** 37:25
44:6
**confers** 50:17
**confirm** 11:12 48:11
48:17
**confirmation** 12:16

21:10 27:22 28:1
34:11
**confirmatory** 49:8
**confirmed** 48:13
**conflicts** 11:3
**confusion** 67:3
**conjoined** 12:9
**Conley** 53:10
**connection** 13:3
30:13 47:22,24
56:4,11,25 57:17
58:1,8,13
**Connolly** 5:17 11:24
12:2,3 14:22 15:4
15:14,20 16:9
17:17 20:23 23:19
24:16,22 25:24
26:5,9,20 27:8,18
28:3 30:13 33:9
35:5 36:13,25 37:3
37:7,12,19 38:13
38:25 39:8,12,18
39:18,20 48:5,6,18
48:25 49:1,13,23
49:25
**consent** 44:16
**consequence** 13:9
15:15
**consequences** 19:18
**consider** 43:24 53:5
65:4
**considering** 53:6,19
**consistent** 52:13,19
60:14
**Consolidated** 3:23
**constitute** 52:16
**construction** 16:4
18:7
**construed** 17:19,20
51:11
**construing** 12:21
**consult** 10:8
**consumed** 31:16
**contained** 47:19
**contemplate** 15:11
**contemplated** 19:23

**contend** 30:5 37:16
**content** 47:14
**contentions** 17:25
**contested** 52:23,23
**context** 8:21 13:20
13:22 19:7 21:3,15
21:18 23:1 24:12
27:14,15 30:20
36:2,17 52:25
**continue** 15:22
**continuing** 14:14
15:21 30:3
**contract** 13:2 18:23
62:23,23,24 63:1,1
63:4
**contractual** 62:16
62:19 63:2
**contrast** 18:22
**conversation** 21:24
37:21 38:17
**conversations** 28:10
**conveyed** 58:1
**Corp** 7:3 23:22
24:16,25 25:19
**Corporation** 1:8 2:7
2:15,18 8:3 11:5
41:16 45:5 47:3
49:4,4
**Corporation's** 3:18
**correct** 41:1 43:7
54:9 59:15 61:18
62:20,20 69:5
**corrected** 69:7
**correctly** 52:4
**correlate** 12:8
**correlative** 22:13
**counsel** 11:3,14,21
11:23,24 21:4 25:3
30:7 31:5 48:12
53:17
**count** 19:18
**counterclaim** 16:3
**couple** 19:3,18 22:14
26:6 28:8 33:5
38:10 45:15
**course** 18:21 53:3

63:11
**court** 1:2,14 8:2,11
9:2,6,9,10,22 10:1
10:4,12,18,23 11:1
11:17 12:1 14:10
14:18,25 15:1,10
15:17 16:1,8,25
17:15 18:12 19:8
19:14,24 20:3,11
20:16 21:7,22
22:18 23:17 24:8
24:11,13,14,17
25:1,4,6,23 26:1,4
26:6,7,11 27:4,15
27:17 28:2,8,16
29:5,10,12,16,19
29:23 30:9,22 31:1
32:3,10,16,18,22
32:25 33:7,11 34:2
34:10 35:1,13,25
36:5,20,25 37:5,8
37:17,22 38:1,4,19
38:23 39:4,11,13
39:16,21,22,24
40:24 41:2,18,19
42:24 43:5,8,24
44:18,23 45:4,10
45:17 46:1,10,17
46:23 47:12 48:3,9
48:12,20,24 49:12
49:14,22,24 50:1
50:20 51:23,25
52:24 53:13 54:2
54:10 55:1 56:1,8
56:16 57:2,4,7,12
59:11,14,16 61:7
61:10,24 62:5,11
62:16,21 63:5,7,21
65:18,24 66:2,8,12
66:23 67:9,12,14
69:4,7
**courts** 17:4
**Court's** 27:2 42:12
**cover** 42:14,17
**covered** 14:20 26:11
**covers** 16:14 18:9

42:6 48:15,15
**created** 61:11
**creditor** 14:3 21:11
  55:6
**creditors** 2:6,14
  10:6 13:4 19:17
  20:11 43:17
**crux** 60:19
**current** 54:14 55:8
**currently** 50:9,9
  58:21 66:21
**cutoff** 16:16
**CVs** 47:4

---

**D**

**D** 1:22 4:15 8:1
  66:15 68:1
**damage** 13:16 25:9
  29:19
**damages** 12:12,14
  12:15 14:12,19,21
  15:10,11,18,19,22
  16:6,7,10,17 25:9
  26:23 27:19 28:14
  29:15 33:19 40:5
  40:21 42:15,18
  58:8,16
**DAS** 48:13,20 49:5
**Data** 7:2 47:3
**date** 11:9,10 14:13
  14:14,23,24 15:12
  15:12,18 16:11,11
  16:16 18:23 20:6
  20:13 27:23 40:19
  43:23 44:2,17 65:1
  69:11
**day** 8:3 13:16,19
  15:21 32:19 34:14
**days** 17:14 36:19
  37:11,15 38:10,11
  45:15
**dba** 3:19
**de** 47:4
**deadline** 40:14,15
**deal** 17:5 24:24 25:6
  25:18 27:2,3 28:6

30:2,6,10,24 31:15
  38:6 39:3 45:6
  49:10 54:3
**dealing** 22:21 31:1
  31:22 32:4,7 40:20
**deals** 23:12 31:4
  40:3
**dealt** 39:7 43:13
**debt** 59:13
**debtor** 1:10 5:3
  13:23,23 20:2,14
  20:16 28:10,22
  44:1,9 48:14 52:7
  53:9 56:12 66:9
  67:2,7
**debtors** 2:2,6,8,14
  2:16 3:3,5,9,12,15
  3:21 8:6 17:18
  19:16 20:21 22:2
  23:8,17,23 24:18
  24:25 25:12,15,18
  28:4 30:7,7 36:4
  36:17 37:11 39:9
  40:19 42:13 44:7
  44:16 45:10 46:13
  46:24 47:6,21
  48:13,18 51:21
  52:4,7 53:3,15,17
  53:18,23 55:11
  56:11 59:2,9
**debtor's** 21:4 22:3
  27:12 38:7 40:12
  41:11 42:1,5,8
  43:1,2,15 50:22
  53:14 61:4
**decade** 30:20
**December** 52:10
**decide** 24:11 32:20
  32:20
**decided** 30:18
**deciding** 31:12
**decision** 27:6,6
**declaration** 43:21
  43:23 68:3
**decline** 63:24
**declined** 51:15 64:7

**decoration** 51:4
**deem** 54:2
**deemed** 41:14 54:7
  64:4
**deems** 16:25
**defendant** 44:8,10
**defendants** 23:18
**defendant's** 44:11
**defenses** 2:7,15 10:6
**defined** 48:22
**degree** 16:24 22:18
**delay** 37:10
**deletion** 21:20
**Delphi** 1:8 3:18 8:2
  11:11 15:25 16:13
  23:21,22 24:16,17
  24:20,25 25:1,19
  25:19 41:14,15,16
  45:4,13,15 48:23
  49:3,4 51:16,17,18
  54:15 58:23 59:21
  59:21 60:25 61:11
  61:20 63:23 64:10
  64:15,20,22,22
  65:9,11
**Delphi's** 37:20 51:14
  60:11 63:20 64:1
  64:10,12
**demonstrate** 16:15
  34:6 35:22
**demonstrated** 16:12
**demonstrates** 29:7
**demurrer** 23:24
**Dena** 45:12
**denied** 31:24 68:9
  68:11
**Dennis** 5:17 12:2
  48:25
**deny** 33:25 35:16
  38:23
**departing** 62:3
**department** 60:12
  64:1
**departure** 62:4
**depend** 14:24
**depending** 49:10

**depends** 65:7
**deprive** 67:6
**depth** 16:25
**deputy** 31:5
**derived** 9:3
**describe** 58:25
**described** 65:3,3
**desire** 27:12
**detailed** 17:17
**determination** 25:8
  34:8 53:3 54:4
**determine** 44:13
  53:8 55:21 63:2
**determined** 12:12
**detriment** 56:21
**Detroit** 12:7,11,13
  14:11 25:6 30:8
  32:21 35:15
**Deykes** 4:11 7:15
  54:22 60:1,5,8,10
  60:12,21,24 61:5,7
  61:9,13 62:1,7,13
  62:15,20 63:6,10
  65:15,17,19 66:1,7
  66:11 68:17
**Deykes's** 60:2
**different** 13:9 22:15
  26:18 34:21 55:5
  60:7 64:17 65:13
**differs** 42:25 43:6
**digital** 69:8
**dilatory** 29:4
**direction** 63:14
**directive** 63:13
**disagree** 21:8
**disallow** 40:4
**disallowed** 43:5 64:8
  65:14 68:14,15,16
  68:17
**disallowing** 59:4
**discharge** 13:22,24
  14:5
**disclosure** 9:20
**disclosures** 58:14
**discovery** 33:18,20
  44:12

discussing 65:21
discussions 21:6
    25:13
dismiss 51:10 53:23
    57:20 59:19
dispute 12:19 13:15
    15:23,24 22:19
    38:3
distinct 18:11
distinguish 13:1
distinguishes 16:20
distinguishing 19:1
    25:25
distribution 18:25
    21:13
distributions 20:20
    47:24
district 1:3 15:2
    17:4 22:22,23 24:8
    32:18 36:21
divert 30:24 35:3,3
docket 8:14 9:13
    10:7 11:20 40:2
    41:10 42:1 43:16
    43:18
docketed 42:12
docketing 41:13
document 63:9,20
documentation 3:11
    42:4,7
documents 44:13
    63:17
doing 34:19 37:6
    44:2
dollar 21:3 34:18
    35:5,20 42:8 51:2
dollars 31:19 32:7
    40:6,22 42:15,18
    50:8 60:4,6
double 11:7
Douglas 4:11 7:15
Downey 4:13 54:22
    55:3 56:7 59:8,8
    59:16,20,24
drag 29:13
Drain 1:22 11:25

drive 13:9
drops 35:13
DUANE 6:10
due 51:5 63:24
duplicate 3:7,24
    40:3,8 46:7,14
duplicative 3:23
    23:13,14 40:6 48:8
duty 56:4 58:20 59:9
    59:18 60:20,25
    62:18 63:2 64:16
    64:21,25,25
DVM 40:17
dynamic 23:5
dynamics 28:18

                E

E 1:21,21 4:1 5:1,1
    8:1,1 68:1 69:2
earlier 11:11 20:14
    22:7 23:11 28:17
early 19:9
economy 23:4
EDS 45:22 46:20,21
    46:24 47:3,4,11,15
EDS's 47:6
effect 16:15 19:9
    38:20 50:6 52:14
effective 27:23
efficiency 22:18
efficient 50:19
Eight 42:10
either 20:19 54:14
    55:8 56:23 67:4
electronic 7:2 41:17
    47:3 69:5
electronics 44:9
elements 9:17
eleven 8:9
eliminated 40:9
embarrassed 21:2
embodied 18:18
Emerett's 40:18
emergence 9:13
Emmanuel 30:8
employed 51:12

61:21,22
employee 2:2 51:17
    58:1 64:1
employees 54:15
    62:12 63:18 64:3
employment 53:18
    60:11 61:4,15,15
    61:19,20 64:9
encourage 10:1
    36:22
energy 31:20
engage 58:22
enter 29:20
entered 23:23
enthusiasm 29:8
entities 23:23
entitled 51:2
entitlement 35:10
    55:10
entry 41:8
equity 2:11,12 3:23
    6:3 10:20 63:23
    66:18,20
Eric 45:11
error 46:25
ESQ 5:7,8,9,10,17
    6:7,8,14,20 7:7,13
    7:17
essence 13:17 14:9
    18:15 23:23 46:8
    61:1
essentially 18:7 25:3
    27:23 31:14
establish 58:15
established 27:1
estate 3:19 30:24
    46:7,8,9
Esther 4:24 69:4,13
estimate 20:16 33:8
estimated 34:24
estimation 19:14
    20:21 21:16 22:2
    22:14 27:16 39:3
etcetera 14:4
event 22:5,8 23:17
    24:7

evidence 25:2 29:20
    43:19,22,23 52:16
    52:21 68:4
evidentiary 43:20
    52:14
ex 2:10 10:21
exact 28:24
exactly 20:23
example 13:19
    16:13 18:10 22:23
    53:10
exceeded 19:20
exclude 18:16
excluding 54:22
exclusive 3:15 18:15
exclusivity 43:15
    44:3
excuse 25:9
excused 49:23
executed 45:24
    52:15
executing 64:5
execution 20:2
executive 9:18
Exercise 2:19
exist 14:6 19:2
expect 21:24
expedited 34:19
expense 2:24 11:20
    12:8,17,22 27:1
experience 3:19
    21:16 44:8
expertise 38:16
expire 18:21
expiry 30:4
explain 30:14 46:4
explained 47:14
exploit 18:16
exploiting 18:17
expressed 37:19
expressly 41:11
expunge 24:24 40:4
    51:23 66:22
expunged 46:7 50:7
    66:20
expungement 46:14

**expunging** 46:5
**extended** 44:3,3
**Extending** 3:14
**extension** 43:15
**extent** 12:11,15 14:2
  26:21 27:10 36:9
**e-mail** 63:18
**E-mails** 60:15

---

**F**

**F** 1:21 69:2
**facie** 52:16
**facility** 51:15
**fact** 12:13,21 16:22
  25:6 26:25 29:6,13
  29:13 30:14 33:9
  36:17 52:13 53:21
  54:3 57:16,18,23
  59:22 66:20 67:3
**factors** 16:23 25:7
  26:12
**facts** 8:21 52:6 53:6
  64:20 65:9,20
**factual** 18:6
**failure** 36:4
**fair** 12:20 29:3
**fairly** 10:13 29:23
**faith** 37:18,24
**fall** 13:7 19:9 35:2
  36:10
**falls** 34:17
**familiar** 38:14
**far** 15:2,10 32:3
  42:24 52:2 57:25
**Farlin** 38:15
**fashion** 27:13 53:9
**fast** 19:22 31:14
**favor** 26:23
**favorable** 25:13
**feature** 17:3
**February** 9:1,11
  10:9,22 11:15
  40:15,16,17 44:17
**Fed** 3:6,10,22
**federal** 13:18 14:1
  18:3 55:17

**feel** 50:3
**fiduciary** 56:4,11,13
  58:19,20,23 59:14
  59:15,18,21,22
**field** 37:2,3
**fifteen** 20:7 42:14
**fifth** 3:9 41:25 42:17
  43:8 68:12
**fighting** 29:11
**figure** 31:18 35:18
**file** 2:11 3:15 14:3,4
  28:20 31:11 39:3
  40:14,15 65:2,5,7
  65:7
**filed** 8:7 10:7 12:5
  13:4 15:18 16:19
  20:6,8,14,25 21:3
  28:7,10,23 29:1
  40:11 41:10 42:1
  42:10,20 43:15,17
  45:22 50:23,24
  51:20,22 52:8,15
  52:17 53:13 54:14
  55:4 60:2 65:19
  66:22
**files** 35:12
**filing** 11:10 27:23
  36:15 39:9 52:18
  65:16
**filings** 53:15
**final** 34:7
**finally** 19:6 48:4
**financial** 58:14
**find** 43:25 55:25
**finder** 12:13
**findings** 24:18
**fine** 9:10 10:1,18
  11:17 22:10 38:13
  38:19 44:18 45:17
  49:22
**finer** 16:15
**fingertips** 28:24
**finish** 27:13
**first** 8:12,20 9:5,9
  11:19 13:13 16:10
  28:11,25 29:14,15

30:13,22 42:4 44:6
  44:24 45:5,18,23
  46:24 48:10 50:21
  56:17
**fit** 12:5
**five** 29:6 30:21
  37:20 48:5 50:7
  54:24
**fixed** 18:23
**Flom** 5:2 8:6
**floodgates** 20:5
**focus** 31:19 36:9
  37:11 56:16
**focused** 31:22 36:6
**focusing** 15:5 32:3
  37:9
**follow** 10:11,16,21
**followed** 20:25
  21:11
**follows** 64:18
**foregoing** 69:5
**form** 42:23 52:19
  58:13
**formal** 42:9,19
  44:12
**former** 2:7,16 54:14
**forth** 41:21 43:9
  44:1 52:9 53:7,15
  55:2,14 56:22
  57:19 59:20 64:19
  65:8,12
**forum** 29:7
**forward** 9:16,24
  14:7 22:5 40:25
**found** 8:14,15 19:7
  40:2
**four** 5:4 12:25 29:6
  30:21 31:24 40:13
**fourteen** 31:11 32:1
  33:24 35:14
**fourteenth** 8:8
**fourth** 3:5 40:1
  41:20 68:10
**frame** 30:18
**framed** 28:21
**framework** 9:16,18

9:24 10:3,11 21:6
**FRANK** 6:1
**FRANKEL** 7:1
**frankly** 47:25 51:22
**fraud** 55:10,15,22
  56:17,18,25 57:16
  57:18 58:7,13,16
  58:19,22,25 59:8
  66:16
**free** 50:3 56:2 60:16
**FRIED** 6:1
**front** 26:15
**full** 21:13,21
**function** 63:11
**Fund** 41:6
**Furakawa** 11:10
**further** 2:12 25:20
  58:3 67:11
**future** 8:18 40:10,19
  47:8
**F.2d** 23:3

---

**G**

**G** 7:17 8:1 45:11
**general** 2:7,15 19:25
  23:24 25:11 31:5
  34:15 46:15 51:4,7
  55:9 57:8
**generally** 18:5 19:5
  26:2 36:7 59:21
  62:17,18
**gentleman** 61:18
**Georgia** 5:15
**getting** 21:21 24:10
  44:13
**Gibson** 53:10
**give** 21:3 59:1 65:12
**given** 17:13 21:19
  22:6 28:16,17
  30:21 36:7,7 51:14
  51:18 62:1 65:5
  67:3,3
**gives** 13:15 46:19
**give-and-take** 20:11
**giving** 50:6
**global** 21:1

**GM** 10:6 28:19
  51:12
**go** 14:9,23 18:3
  19:21 20:19 22:4
  25:13,14 30:16
  31:14 32:1,17
  33:21 35:14 37:16
  39:18,19 45:16
  49:11 50:1,3 54:19
  55:13,24 60:15
**goal** 39:10
**goes** 52:3 64:8
**going** 10:12,16
  13:20 14:6 19:13
  19:21 24:19 25:16
  28:16 30:15,18,20
  30:21 33:21,22
  34:12,13,14,19,20
  34:23 35:1,2 38:23
  39:17 40:24 44:25
  44:25 50:6 52:3
  54:5 61:1
**good** 8:4 10:25 11:1
  11:2,24 12:1 21:14
  37:9,18,24 39:11
  45:9 46:3 59:7
**goods** 44:9
**GORDON** 7:7
**GORMAN** 7:13
**government** 18:16
**grant** 59:5 66:24
**granted** 18:15 30:15
  68:13,19,21
**granting** 54:7
**greater** 25:11
**Green** 1:15
**grounds** 51:3
**guck** 34:4,15
**gucks** 31:18
**guess** 15:17 20:24
  21:11 27:3 36:5
  55:19 56:3 60:19
  62:22 63:10
**guidelines** 20:1

**H**

**H** 6:14
**half** 8:17,20 9:9
**hand** 45:24 46:1
  49:16,20 64:21
**handed** 50:11
**handle** 28:12
**handling** 28:17
**happy** 21:12 37:21
  50:14 55:24
**harm** 30:6
**HARRIS** 6:1
**Hazel** 40:18
**Hazelquist** 13:17
**headquarters** 37:21
**heard** 11:11 18:12
  23:12 24:20
**hearing** 4:1,3,5,7,9
  4:11,13,15,17 8:7
  8:8,16 9:1 10:10
  15:6 17:16 23:25
  29:14 40:12,18,19
  42:19 43:14 44:21
  44:24 45:8 46:2,6
  46:19 47:2,6,7,8
  47:10 49:17,20
  52:5 66:14 69:8
**hearings** 17:1 35:7
  40:10 45:20 66:19
**heated** 36:15
**heavy** 11:14
**heightened** 58:21
**held** 55:18 56:10
  58:14
**help** 60:12
**helpful** 38:4 55:25
**Highland** 43:18
**HOGAN** 5:9
**holder** 14:3
**holders** 2:11 6:3
  40:8
**holding** 35:7
**holdings** 57:10
**holds** 54:4
**holidays** 11:6
**HON** 1:22
**Honor** 8:4,7,12,16

8:19 9:15,17 10:2
10:6,20 11:10,18
12:2,4,18,23 13:11
13:13,20 14:9,22
15:5,24 16:9,22
17:4,11 18:14 19:1
19:4,6 20:8,23
21:8 22:1,7,11,13
23:1,19 24:7 25:10
25:24 26:5,20 27:8
28:3,24 29:9 30:3
30:12 31:17 32:6
33:4,17,25 34:13
35:21 36:12,24
37:3,7 38:25 39:12
39:14,23,25 40:11
40:20 41:17,24,24
43:12,12,22 44:4
44:20 45:2,9,15,18
45:22 46:19,20
47:13 48:10,25
49:2,13,15,16,21
49:23 50:5,7,12,21
50:24 51:9,10,16
51:20,22 53:25
54:11,12 55:2,15
55:20,24,25 56:14
59:7,12,25,25 60:2
60:3,8,19 61:9
62:15,22 63:6
65:17 66:11,13,16
66:18,21 67:8,10
67:13
**Honor's** 44:16 50:14
  54:16 60:7
**hope** 11:15 25:14
  30:18
**hopefully** 27:4 34:20
**Howe** 45:11
**huge** 22:7

**I**

**IBEW** 40:13
**idea** 18:18
**identification** 56:20
**identified** 60:20,25

**identify** 59:13
**II** 3:23
**III** 3:24
**IMAW** 40:13
**impact** 19:12 20:1
**impair** 47:19
**Implement** 2:2
**implicated** 23:1
**important** 13:8
**importantly** 58:7
**impression** 62:15
**inability** 60:10
**inactions** 63:25
**incentive** 8:14 9:13
**include** 14:19 52:18
**included** 9:20 46:6
**includes** 15:12 31:5
  66:8
**including** 28:25
  31:21 47:22 48:15
  51:3 58:7 59:22
**income** 51:5
**independence** 13:21
**independently** 9:25
**indicated** 41:17 69:7
**indicating** 63:10
**indication** 29:23,24
**indiscernible** 61:14
**individual** 41:7
  55:25
**Industrial** 2:18 11:4
**infer** 29:4
**informal** 41:5
**information** 47:3
  57:11,25 60:22,23
  61:23 63:17
**infringe** 48:16
**infringement** 33:12
**infringements** 12:12
**infringes** 16:12
**infringing** 14:12,17
**initial** 26:9 52:6
  55:19 60:3,3
**initially** 22:2 29:17
**initiated** 62:2
**Innovation** 2:22 3:1

12:3
inquired 64:10
inquiries 64:13
inquiry 64:14
inside 63:17
insider 63:14
insiders 64:5
instances 56:25
insufficient 3:11
  42:4,7
insurance 35:24
insure 27:24
intended 48:1
interact 16:4 17:22
interest 13:5 47:24
  66:18,20 67:2,3,6
interesting 19:7
interference 25:20
internal 63:11 64:1
  64:2
internally 34:24
introduce 45:14
Int'l 52:11
inventor 18:16
investigation 64:2,4
investigations 55:12
investment 60:16
investors 9:19 34:22
invoices 11:8,13
involuntary 51:4
involved 15:16 31:6
  31:6 64:3
issue 11:10 13:12
  15:24 16:19,22
  17:2,10 18:18 19:2
  19:6,10,10 21:4,16
  21:16,22,23,25
  22:25 23:13,20,20
  24:11,24 25:4,5
  27:9 28:4 30:10,19
  31:22 32:19 35:20
  38:25 48:8 62:13
issues 15:7 17:5,21
  18:6 19:4,5 20:12
  21:1 23:7 25:8
  27:8 28:20 29:11

29:12 31:15 35:17
  38:6,9 54:18
item 9:12 11:22
  18:13 45:18 54:19
  60:1 67:10
items 54:12 66:13
IUE-CWA 40:14
IUOE 40:13

_____

**J**

J 6:8
Jack 8:4
JACOBSON 6:1
January 1:18 8:7
  14:13 47:5 48:16
  69:10
JASON 6:7
Jersey 6:12
John 5:7,10 8:5 45:9
joint 46:11,12
Jorgenson 4:5 54:20
  55:3 57:3,5 59:6
Jorgenson's 57:23
JOSEPH 6:14
JUDE 7:13
judge 1:23 10:25
  11:25 14:14 15:2,2
  17:11,16,23 22:17
  22:20,23 23:7
  24:22 25:4,9 30:11
  31:15 36:13,21
  37:19 38:13,14,15
  39:8,20 44:19
  55:18
judgment 29:20
judgments 29:17
judicial 22:18 23:4
July 51:6
juncture 25:15
jurisdiction 17:5
  18:2 22:24
jurisdictionally
  22:24

_____

**K**

K 5:10 45:10
Karen 45:12

Katz 38:15
Kayalyn 5:8 8:5
KECP 8:13,17 9:12
KECPs 8:18
Kerscher 4:9 54:21
  55:3 56:4,9 58:17
  59:4 68:16
Kerscher's 59:18
key 2:2 52:17 55:14
kitchen 33:14
know 10:13 15:17
  16:1,25 17:13
  18:14 20:25 21:20
  22:6 26:17 29:16
  31:9,17 32:8,23
  33:4,14,18 34:23
  36:9,19 37:1 38:1
  38:5,9 40:10 60:8
  62:17,25 64:23
  66:5
knowledge 18:5
  22:3
known 36:17
knows 29:12
Kraft 45:12
KRAMER 7:1
Kyocera 2:18 11:4,7
  11:15

_____

**L**

L 5:9
lack 29:8
LaFonza 4:1 50:23
laid 65:8
language 41:7,12
  46:6,16,21 47:17
large 22:18
late 19:10 45:6 65:2
  65:5,7,16 66:3
LATHAM 7:9
laudable 39:10
law 12:18,20 26:16
  27:2 60:22
laws 12:20,21 18:5
  18:14 62:18 63:12
  63:14

lawsuit 23:18
lawsuit's 24:15
lawyers 31:8 56:19
leading 17:2
leads 30:1 64:17
lease 30:16
leave 32:22 37:2,5
leaves 60:1
leaving 62:9
left 60:11,17,18,20
  61:3,16,24 62:6,8
  62:14 64:14
legal 52:7 61:3
  62:17 63:13 64:10
  64:12
LEMKIN 6:14
length 52:9
lengthy 38:8
Leong 4:15 66:15,23
  68:18
letter 62:4
let's 35:14 36:1
level 37:2
LEVIN 7:1
liabilities 42:5,8
liability 15:5,7,24
  16:5,10 25:9,19
  29:15,18 33:20
  46:12,13 52:7
liable 46:9
license 14:15 18:15
lift 12:6 23:5 24:11
  24:15 25:2 28:7
  29:18 35:13 36:24
  37:16
lifted 14:11,20 21:9
  22:17 26:22 37:13
  37:14 38:12
lifting 11:14
lifts 14:25
light 25:15 28:1 36:1
  44:1 53:1 55:21
  57:16,23
limit 47:20
limitation 59:22
limited 18:15 19:15

34:6 45:7 47:22
**line** 21:10 50:13
    59:16 68:2,7
**lined** 41:22
**liquidate** 34:11,21
**liquidated** 28:13
    40:5,21 42:18
**liquidating** 18:24
**Liquidity** 41:6
**list** 33:3 38:5,15
    50:12
**litigants** 22:21
**litigate** 13:20 30:8
**litigated** 12:11
**litigation** 3:2 12:7
    13:6 14:19,20 15:8
    18:12 19:8 20:19
    21:9 24:8 25:17
    28:19 29:10,12
    30:14,21 32:2,5
    33:18,24 35:15
    36:3,16
**litigations** 15:9
**litigator** 37:9
**little** 23:12 24:20
    45:5
**lived** 17:11
**LLC** 3:19 12:3
    23:22 24:21 25:1
    25:20 41:14 47:4
    48:13,23
**LLC's** 2:22 3:1
**LLP** 5:2,12 6:1,16
    7:1,9 8:6
**logically** 12:5
**long** 24:5 30:20
    33:23 37:10
**longer** 14:17 16:12
    19:2 20:20
**look** 8:19,20 9:4
    23:2 34:22 36:1
    63:5
**looked** 13:3,5 28:15
    33:16 38:14 61:2
**looking** 11:11 27:11
    31:7 51:8 63:21

**loss** 55:6 57:10 60:5
**losses** 63:24
**lost** 14:5 57:9
**lot** 10:13 20:20 27:5
    50:15 60:6
**loud** 63:22
**lunch** 45:1
**Lyons** 5:10 8:5
    23:15 37:20 45:9
    45:10,18 46:3,11
    46:18,24 47:13
    48:4,10,22 49:15
    50:5,21 53:25 54:9
    54:11 55:2 56:6,14
    56:24 57:3,5,8
    59:7,12,15,25
    62:22 66:13 67:8
    67:10,13

---

**M**

**magistrate** 15:2
    17:15
**magnitude** 29:18
**making** 39:1 50:15
    66:2
**management** 31:1
    36:16
**management's** 31:3
    63:25 64:3
**mandatory** 17:7
    24:6
**Manhattan** 44:9
**manner** 17:19
**manufactures** 16:14
**manufacturing**
    51:15
**Marafioti** 5:8 8:5
**March** 15:5,6 64:9
**market** 9:19
**Markman** 15:7
    17:17 29:13,14
**match** 42:8
**material** 58:5 60:21
**matter** 1:6 8:12,25
    10:5,24 24:14
    39:25 40:1 41:25

43:13 44:4 45:25
    50:19,21 52:23
    60:3,22 62:16,17
    62:19 65:13 69:7
**matters** 8:3,9 11:18
    35:24 45:12 49:16
    52:23 54:4
**mature** 21:6
**maturity** 27:11
**Meagher** 5:2 8:6
**mean** 14:6,20 18:8
    24:19,21 26:11
    32:1,6 35:11 37:8
    39:1 62:23
**meaningful** 38:2
**means** 52:25 56:19
**mediation** 19:23
    36:10,19 37:13,18
    38:4,8,11 49:10
**mediator** 37:24
**mediators** 38:14
**Medical** 41:15
**meet** 50:17
**meetings** 58:1
**memorandum** 18:20
**mentioned** 49:2
**Mercedes** 41:6,8,9
**mere** 63:4
**merely** 51:17
**meritorious** 17:9
**merits** 53:4 54:23
**Messrs** 55:3
**met** 66:6
**Mexico** 47:4
**Michael** 4:3
**Michigan** 12:7
**middle** 14:9 18:8
**midst** 29:9
**midyear** 36:2
**miles** 37:20
**million** 21:2 40:5,22
    42:14,18 50:9 51:2
**mind** 27:15
**minds** 34:5 67:4
**minimal** 25:21
**minute** 16:24

**minutes** 64:16
**Mocny** 4:7 54:21
    55:3 58:4,24 59:3
    68:15
**Mocny's** 58:5
**moment** 14:10 19:4
    31:23 33:25 35:2
    35:12 39:23 54:23
**month** 35:7
**months** 20:7 30:23
    31:11,25 32:1
    33:24 35:6,14,21
**morning** 9:17 10:25
    11:1,4 21:7 44:25
**MORRIS** 6:10
**motion** 2:1,5,10,13
    2:18 3:1,14 8:14
    8:15 9:24 10:7,20
    10:21 11:4,6,22
    12:6,8,24 19:16
    20:25 21:2,25
    26:13 27:16,24
    28:7,10,20 31:12
    35:6,13,16 38:22
    39:3,9 41:9,11
    43:15,25 51:10
    53:23 57:20 59:19
    68:9,11
**motions** 12:4 13:4
    16:19 20:6,8 28:17
**motion-to-dismiss**
    53:1,16
**Motors** 2:7,15 51:5
    51:7
**move** 9:16,23 10:9
    10:19 20:21 24:3
    29:15 43:22
**moves** 9:11
**moving** 23:14 27:12

---

**N**

**N** 5:1 8:1 68:1 69:2
**NAFTALIS** 7:1
**name** 48:20 49:4
    69:14
**nature** 12:9 13:12

22:5,22 34:15 36:8
  38:7 57:8
**Neal** 11:2
**need** 20:16,21 27:13
  40:23 42:22 46:21
  53:7 58:3 63:1
**needed** 8:18,18
  60:15
**needs** 35:12
**negotiated** 14:15
**negotiation** 37:23
**negotiations** 27:11
**NEIL** 6:20
**never** 47:25 51:17
  53:17
**new** 1:3,16,16 5:5,5
  6:4,5,5,12,18,18
  7:5,5,11,11 13:19
  14:2 22:23 24:8
  36:16 47:23
**Newark** 6:12
**nexus** 51:16,21,21
  58:15
**nine** 42:9
**nineteen** 19:18
**non** 29:6
**non-public** 60:22
**note** 12:25 19:19
**noted** 13:13 28:9
  50:25
**notes** 50:5
**notice** 60:2 62:1,2
**noticed** 50:13
**notified** 64:4
**notify** 67:5
**notwithstanding**
  41:12 47:18 52:12
**noun** 34:16
**November** 19:16
  45:21 47:10
**NOVOD** 7:7
**nuances** 18:19
**number** 8:14 9:12
  9:13 10:5,7,20,24
  11:3,20,23 17:1,18
  28:24,25 34:6 40:1

40:2 41:10,16,25
  42:1 43:3,16 44:5
  49:5,9,6 50:16,17
  51:3 56:24 60:1
  65:21
**numbers** 11:18 22:6
  41:13 50:25
**Nutech** 13:6
**NYCH** 3:19 44:7

---

**O**

**O** 1:21 8:1 69:2
**object** 22:1
**objected** 42:2
**objecting** 67:2
**objection** 2:12,13
  3:5,9,21 20:10,14
  20:15 22:14 24:9
  24:13,23 25:16
  28:12 29:1,3 31:10
  40:2,3,12 41:7,21
  41:23 42:1,2,3,6
  42:10,17,20,24
  43:9,11 44:24 47:1
  47:5,9 49:9 50:22
  51:1 52:23 53:14
  54:24 59:5 66:24
  68:12,18,20
**objections** 23:10,21
  28:23 40:9 43:16
  43:17 45:8 49:19
  50:8,10,11 52:3
  54:7,13
**obligation** 58:21
  64:15,23 65:10
**obtain** 52:8 60:18
**obviate** 25:20
**obviously** 13:3,19
  14:1,24 15:15
  16:15 17:2,6,21,23
  19:14 20:9,13 21:1
  21:14 22:4 25:10
  25:12 27:21 30:7
  32:13 37:13 39:16
  39:17 49:7,9
**occurred** 13:24

57:19 61:14
**October** 21:4
**offer** 51:16
**offered** 48:14
**Officers** 2:8,16
**official** 2:5,10,13 6:2
  52:19 69:5
**oh** 35:14 39:4
**Okay** 8:2,11 9:2,6
  9:10 10:1,4,18,23
  11:17 25:23 26:4,9
  28:2 39:11,13,14
  39:22 41:19 42:24
  43:8 44:18 45:4,18
  46:1,3,17,23,24
  47:12 48:9,24
  49:12,15 50:1,20
  51:25 54:10,11
  55:1 56:16 57:7,12
  59:25 61:10 66:1,7
  66:11,12,13 67:9
  67:12
**omni** 28:25
**omnibus** 3:5,9,21
  8:3,7,8 9:1 10:9
  20:14 23:8,9 24:23
  25:16 28:11,23
  29:3 40:1,9 41:21
  41:25 42:6,17 43:9
  44:20 45:20 46:5
  47:1,5,16 49:9,18
  50:7,10,22 51:1
  54:5 66:19 68:10
  68:12
**once** 28:10 60:20
  62:6
**onerous** 15:8
**ones** 35:19 49:2
**ongoing** 14:21 21:5
  33:12
**open** 11:8,13 20:5
  32:19
**operated** 51:7
**operation** 18:1
**opinion** 26:14
**opposed** 15:19

**opposition** 40:25
  43:10
**opt** 30:25 31:12 35:7
**opted** 33:1
**option** 51:14,18
**order** 2:1,5,10,13
  3:14 8:9 14:14
  15:6,7 17:17 24:4
  35:11 37:12 38:20
  39:18 41:7,9,18,22
  42:21,21,23 43:10
  46:5,20 47:1,2,9
  47:14,16,18,19
  48:1 49:7,20 52:8
  54:2,5,7,8,19
  57:13 59:4,24
  60:16 63:2 65:13
  67:5,5
**orders** 50:6 53:24
**organization** 31:8
**original** 65:23,25
**ought** 35:12 37:16
**outcome** 49:10
**outlined** 18:20 29:8
  65:20
**outlines** 12:23
**outset** 12:25 13:8
**outside** 29:22
**outstanding** 24:9
**overall** 13:14
**overarching** 22:12
**overseeing** 31:6
**owed** 64:15
**owned** 51:6
**ownership** 63:23
**owns** 57:18 58:11

---

**P**

**P** 3:6,10,22 4:13 5:1
  5:1 8:1
**package** 32:23
**page** 23:3 68:2,7
**paid** 21:21
**papers** 13:3 22:19
  23:3 26:8 28:5
  35:22,23 51:20,22

51:23 55:3,14
60:13 66:22
**Paragon** 16:2 29:17
**paragraph** 46:25
54:6
**part** 15:25 20:2
24:18 25:5 31:8
45:13 63:11
**parte** 2:10 10:21
**participated** 64:2
**particular** 8:16 13:5
17:25 18:9,17,17
18:18 25:17 31:17
34:13 40:2 42:3,6
50:2 52:7 54:13,18
55:23 58:10 64:21
**particularity** 55:16
55:23 56:19 58:6
59:1
**particularized** 17:10
**particularly** 42:22
57:15,23
**parties** 14:15 15:15
17:24 25:8 29:10
32:3 40:10 45:24
46:22 66:9
**party** 25:3 47:24
53:20,21
**passed** 65:1
**passing** 24:2
**patent** 3:2 12:9,13
12:20,21 13:12,14
13:16,23 14:3 15:7
16:3,4 17:5 18:2,5
18:13,14 21:9
22:21 24:20 29:12
31:3,7,9 32:10,13
32:14,15,25 33:11
33:23 34:7 37:9,10
38:6,9,16
**patents** 15:21 16:1,4
16:5 17:22,23,25
18:6,21 48:16
**pay** 51:5
**payment** 2:23 11:7,9
11:12 27:22

**Peachtree** 5:14
**pending** 10:3 23:10
50:11
**Penn** 6:17
**people** 25:14 27:4,11
31:20,21 32:4,8
38:5,5 44:23 62:12
**Perez** 4:17 66:15,24
68:20
**period** 8:18 12:16
15:13 16:18,18
19:2 26:24 30:5
38:9 44:3,3 48:16
58:14
**periods** 3:15 30:17
**permission** 9:15
45:16 54:16 61:16
**permit** 2:19 65:6,15
**permitted** 17:5
30:16
**permitting** 66:3,4
**perspective** 30:19
**pertaining** 24:18
**petition** 11:8 16:18
18:23
**phase** 15:3 33:19
**phone** 52:1 57:14
60:9 61:8 65:3
**phrase** 52:17
**phrased** 64:24
**piece** 30:21
**pile** 34:19,20
**place** 14:8 36:7 39:6
41:4 44:12,14
**placed** 61:13
**plan** 3:16 8:24 9:4
9:19,21,25 21:6
22:22 25:13 27:9
27:10,22 34:22
47:23,25 54:15
56:12 58:23 59:23
**planned** 27:12
**planning** 53:25
**plant** 51:6,13,18
**playing** 37:2,3
**Plaza** 6:4,17

**pleading** 17:18
**pleadings** 51:19
53:12
**please** 8:2 35:3 45:4
**pled** 56:18
**point** 8:22 9:15
20:18,22,24 22:12
23:15 25:12 26:14
26:20 28:3 31:23
33:10 39:1,2 43:6
48:5 56:17 57:6
66:2
**points** 12:25 13:7
22:12 26:6 28:8
30:13
**policy** 60:15 65:10
**portfolio** 60:16
**portion** 9:6,8 14:19
15:10
**portions** 17:23
42:16
**position** 13:23 22:16
23:13 25:13 62:13
**positive** 57:25
**possession** 63:19,20
**possible** 22:24
**post** 15:22
**posthaste** 39:21
**post-complaint**
15:19
**post-discharge**
13:25
**post-petition** 12:12
12:15,19 15:13
16:18 26:17,24
28:14
**potentially** 22:24
65:13
**practical** 24:14
**pre** 12:15 16:17
28:14
**preclude** 21:25
**predominantly**
44:10
**prefer** 38:1,2
**prejudice** 30:2,23

**31**:24,25 34:1
35:16,22 36:4
38:23 41:9 66:9
**prejudiced** 46:14
**prejudices** 36:3
**premature** 31:23
38:24
**preparation** 10:13
**prepare** 38:10
**prepared** 15:20
23:15 30:10
**present** 48:17 54:22
59:16
**presentation** 13:13
**presented** 32:16
**presently** 20:3 23:10
**preserved** 41:11
46:11,13
**press** 55:12
**presumption** 52:8
61:22 63:16
**pretrial** 15:5,6
**pretty** 25:13 26:11
36:15
**prevails** 11:21
**previous** 47:16
66:19
**previously** 49:3
52:24
**pre-clearance** 61:21
**pre-petition** 13:10
**pre-submitted**
43:21
**pre-trial** 44:6
**prima** 35:1 52:16
**primary** 17:2
**principle** 26:16
**printed** 69:14
**prior** 13:4 19:7
43:13
**priority** 12:22 25:11
51:3
**prism** 55:21
**pro** 57:24
**probably** 21:20
30:20

procedural 3:5,21
    19:25
procedurally 29:22
procedure 19:17,23
    19:23 50:13 55:17
procedures 19:13,14
    19:24 20:3,10,15
    22:2,10,14 23:8
    24:1 33:2 36:7
    47:9 49:20 50:16
    51:10 65:12
proceed 3:2,2 8:9
    11:21 12:7 16:10
    22:17 25:18 30:10
    53:4 58:3
proceeded 24:12
proceeding 20:13
    44:7
proceedings 67:15
    69:6
process 8:23 12:11
    13:11 19:21 20:13
    21:12 25:5,22
    27:10 28:11,21,22
    29:21,25 30:25
    31:9,13,16 32:9
    34:14,18 35:4,8,9
    35:10 49:18 50:9
    50:19
processes 32:17
product 16:12
production 13:17,19
program 2:3 8:14
    9:13,18,20 44:11
    44:14
progress 50:15
prohibited 60:23
prohibition 64:11
promotes 22:17
proof 14:3,4 51:8,12
    52:14 53:11 55:18
    57:15 60:4 61:5
    63:21 64:18 67:1,2
proofs 40:4 42:2,14
    50:23,24 51:1 55:4
Properties 33:5

55:19
Property 3:18
propose 8:9
proposed 19:12 22:2
    22:9 41:22 47:23
proposing 34:11
    37:22,22
proposition 17:7
    21:8
Prosecute 2:6,14
prosecuted 9:24
prosecuting 29:24
protect 59:10
provide 48:2
provided 41:18
    49:17 63:18,18
provides 52:14
provision 47:18
    62:25
provisions 24:6
public 61:22
pulling 63:7
purchase 56:22
    57:17 58:8
purpose 11:23 21:18
    21:19
purposes 20:17
    42:15 43:19 52:5
    53:2 58:3
pursuant 2:22 3:5,9
    3:21 20:15 42:20
    46:22 47:8 49:18
    49:20 50:13 52:24
put 8:25 11:15 39:20
    40:23,23 43:20
    67:4
p.m 1:19 45:3,3
    67:15

**Q**

question 8:17 14:18
    55:20 56:10 65:19
Quint 30:8
quite 18:10 21:12
    50:16

**R**

R 1:21 3:6,10,22 4:7
    5:1 8:1 69:2
radios 44:10
raise 24:11 36:21
raising 19:11 21:4
Randall 7:17 45:11
rapid 27:13
RCA 3:19
RCS 44:8
read 13:5 17:12 26:7
    29:23 35:23 46:21
    48:6,7 63:22
reading 12:19 29:3
    61:10 66:25
reads 17:22
ready 8:22
real 12:19 30:19
realistic 20:4
really 10:7 12:9 13:9
    13:11 14:14 17:4
    17:10 18:13 22:4
    22:12 26:1,13 27:9
    30:23 32:16 35:19
    37:24 58:11 61:4
    64:20 67:1
reason 8:15 27:23
    59:17
reasonable 27:19
reasonably 9:18
reasons 34:21 43:11
rebate 44:11,14
recalls 16:2 29:16
Receivables 24:21
receive 18:24 42:13
    61:17
received 11:6 42:9
    42:11
receives 18:25
recess 44:21 45:1,3
reclassified 66:20
recognition 26:22
recognizable 64:19
recognize 25:10
recognized 12:16
    13:15 28:16 29:10
recognizes 13:18

23:4
recognizing 12:9
    13:21
record 12:2 29:4,25
    33:10 41:4,21 42:5
    42:12 43:9,14,20
    47:9 48:6,7,11
recording 69:6,8
records 3:12 23:21
    42:9 43:1,2
Recoupment 2:20
Recover 3:18
reduction 44:15
Reece 45:11
REESE 7:17
reference 17:7 24:4
    24:6,9 34:9
references 55:11
refers 58:24
reflect 65:13
reflected 3:12 42:5
reflects 49:7
regard 57:22 59:3
    59:19,24
regarding 4:1,3,5,7
    4:9,11,13,15,17
    41:11 55:9 66:14
regardless 63:15
regime 22:4,4
regulation 63:12
relate 12:15 54:13
related 51:5
relatively 19:22,22
    21:14 27:13
release 64:23
releases 55:12
relevant 65:23,24
reliance 58:9
relied 56:21 58:2
relief 2:18 3:1 11:5
    11:22 13:4,14 19:7
    19:12,15 20:6,8,18
    22:15 25:14 28:17
    29:5 37:17 39:5
    42:16 49:3
rely 51:23

remarks 39:2
reorganization 3:16
  47:23
repeat 52:4
reply 40:11,16 44:14
report 50:14
reports 31:4
representation
  48:17
reputably 25:18
request 12:24 13:1
  18:12 44:12 51:23
  61:18,25 62:3,5
requested 48:7
  61:15,16
requests 13:1 62:8
  65:21,22
require 11:14 22:8
  36:23
required 47:17
  55:16 61:21 64:22
requires 52:20
requiring 52:18
reschedule 42:21
reserve 20:17 21:18
  27:18
reserved 39:4
reserves 27:14
resolution 13:11
  23:15 25:7 28:22
  38:3 46:25 48:4
resolutions 46:16
resolve 45:21 48:7
resolved 28:23 41:2
  45:21,24 50:3,18
resolves 25:17 40:22
  49:1,9
resolving 36:6
resources 30:24
respect 9:12 12:13
  17:25 20:18 21:13
  23:10,21 25:15,22
  28:14 33:19,20
  40:11 41:8 42:19
  45:23 46:20,21
  47:2,10,16 48:4

50:22,23 54:8,24
  58:21 59:6,23
  64:16
respectfully 63:3
respects 37:8 55:5
responding 60:13
response 28:9 40:15
  53:14 56:9 57:15
  60:2,3,5 61:2,17
  65:20
responses 40:8 41:5
  42:9,11,13,19,23
  45:19,22 67:1
responsive 18:20
  28:5 29:9
rest 45:14
restriction 61:13
  62:11,14
result 9:23 13:9
  36:14
retail 44:8
retained 30:9,9
retirement 54:15
  59:10,23
review 8:23
reviewed 53:11
  57:14 58:4
reviewing 8:23 52:2
  52:25
revolves 13:11
RICHARD 6:7,8
right 9:11,22 10:9
  13:15 14:9 15:4,10
  16:8 20:23 21:21
  26:14 27:22 31:22
  32:14,20,22 33:22
  35:11 38:19 39:11
  40:20 41:19,20
  43:8 46:10 48:3
  52:1 56:16 57:4,12
  57:14 58:4,17
  59:11,17 61:7,15
  62:4,11,21 63:21
  66:6,24
rights 2:20 14:5,6
  39:4 41:10,11

46:13
rise 59:1
risk 20:1,9
ROBERT 1:22
Rockefeller 55:19
Ronald 4:5
roughly 50:9
rule 27:6 51:9 52:13
  52:13,22,24,25
  55:17,21 57:20
rules 52:15,18,18
ruling 17:15 66:10
RULINGS 68:6
running 46:15
run-of 22:10
run-of-the-mill 13:2
  16:21,21 18:11
  26:1

————————————————
              S
————————————————
S 5:1 8:1
SA 47:4
Saginaw 51:15
sale 48:14 56:23
  57:17 58:9
satellite 44:10
save 19:17
saw 20:14
saying 32:17 33:17
  33:25,25 34:10
  35:2 59:20 63:15
  65:23
says 35:11 54:6 56:9
  64:13
schedule 10:11
  50:12
scheduled 44:24
  49:19
scope 65:6
scrubbed 51:19
se 57:24
Seal 2:11
seam 18:8
searched 61:2
seated 8:2 45:4
SEC 55:11

second 3:21 8:17
  23:19 24:23 25:16
  26:13 29:2 42:2,4
  45:19 46:5 47:16
  49:9 50:11
section 2:23 3:6,10
  3:14,22 24:6 31:4
sections 2:1 31:21
secured 52:20
securities 57:18
  61:14 62:18 63:23
  63:24 64:5,6,11
security 2:11 57:17
  58:9
SEC's 60:14
see 21:12 22:19 24:5
  27:15 53:10 61:2
  65:7 66:19
seek 25:3 42:16 65:1
seeking 14:8 20:18
  23:9 24:8 26:13
  29:5 39:5 57:9
seeks 11:7
seen 45:14
Segal 6:16,16 11:3,3
sell 57:10 60:11,19
  61:16 64:11
seller 44:8
sense 18:4 27:16
  56:13
separate 41:9 42:11
  46:18 54:7 62:8
  66:3
separately 67:5
separation 62:2
Services 47:3
servitude 51:4
set 11:7 15:2,6 27:18
  40:19 41:21 43:9
  44:1 47:8 52:9
  53:7,15 55:2,14
  57:19 59:20 64:18
  65:8,12
setoff 2:19 11:6
sets 56:22
settle 37:14,14 39:17

**settlement** 33:16
  37:23,25 38:12
**settling** 39:10
**seven** 50:23,24
**severance** 51:5
**shares** 60:11,19
**Sheehan** 43:23 68:3
**Sheehan's** 43:21
**Shortly** 64:10
**show** 15:20 21:2
  59:1
**shown** 31:25
**shows** 49:17
**SHRIVER** 6:1
**side** 31:1,3 33:23
**Sieloff** 4:3 54:20
  55:3,24 57:13 58:6
  58:24 59:3 68:14
**Sieloff's** 57:14
**Sierra** 41:6,12
**Signature** 69:11
**significant** 20:8
  28:19
**significantly** 19:15
**silent** 63:8
**silly** 32:12
**SILVINSKI** 6:8
**Similar** 46:4
**similarly** 10:20
**simply** 9:15 10:2
  30:22,25 43:14
  63:16
**Singer** 17:9
**sit** 34:22
**situation** 24:10 26:2
  29:17 54:3
**six** 28:23 31:25 51:4
**sixteen** 20:7
**sixth** 20:14 35:6
**sixty** 36:19 37:11,14
  38:11
**size** 65:5
**Skadden** 5:2 8:5
  45:12
**Slate** 5:2 8:6
**slated** 49:19

**small** 34:20
**smells** 34:23
**sold** 44:9 48:14 55:8
**Solicit** 3:15
**solution** 63:12
**somebody** 38:18
**Sonax** 16:23 17:1
  25:7 26:7,11 35:23
**soon** 10:14 61:24
**sorry** 45:5 62:5,7
**sort** 14:13 18:6
  20:24,25 22:12
  29:17 34:5 58:22
**sought** 13:14 19:15
  40:4 55:6 60:18
**sound** 69:6
**Southern** 1:3 22:23
**so-called** 49:5
**speak** 56:2
**specialized** 13:12
  16:23 17:3 18:3
**specific** 15:12 30:10
  30:12 63:25
**Specifically** 47:1
**specify** 64:20
**spent** 22:20
**spoke** 11:14
**Square** 5:4
**staff** 64:11,12
**stage** 36:5
**stakeholders** 8:20
  8:24
**standard** 33:14 51:9
  52:2,4 66:3,5
**standing** 23:5
**start** 14:13 22:22
  35:15
**state** 43:14 55:15,22
**stated** 42:25 43:11
  44:21 53:17 60:15
**statement** 9:21
  43:17 48:6 56:20
  59:9,13 61:18 63:4
**statements** 41:4
  55:12,14,15
**states** 1:2 53:9

**stating** 47:17
**status** 55:6
**statute** 18:2
**stay** 2:19 3:2 11:5,22
  12:6 14:11,20
  15:16 16:21 18:11
  19:7,12 20:6,8
  21:2,9 22:15,16
  23:6 24:11,15 25:2
  25:14 26:21 28:7
  28:17 29:18 30:15
  30:16 35:13 36:24
  37:13,14,16,18
  38:11 39:6 49:3
  50:3
**stays** 13:4
**steering** 16:14
**stipulate** 48:12
**stipulation** 11:16
  45:23 46:18 48:11
**stock** 54:15 55:4,6,7
  55:8 57:1 58:2,11
  58:14,22 61:17
  66:21 67:6
**stockholders** 54:14
  54:16
**stone** 18:23
**straight** 45:16
**Street** 5:14 6:11
**struck** 28:20
**structure** 27:12
  29:16 37:12
**stuff** 26:7 35:18,23
**subgroup** 54:17
**subject** 19:25,25
  24:1 26:25 30:4
  44:16 46:5 47:4
  50:10
**submit** 11:16 25:25
  38:20 42:23 50:6
  53:24 59:4,23 63:3
**submitted** 41:8 58:5
**submitting** 54:1
**subpoena** 60:14
**subsequent** 15:7
  64:2

**subsequently** 60:17
**subsidiary** 25:1
**substantial** 22:8
**substantially** 66:4
**substantive** 3:9
  23:20 45:7
**sufficiency** 4:1,3,5,7
  4:9,11,13,15,17
  45:8 49:16 50:21
  54:13,24 59:5
  66:14
**sufficient** 52:6 57:20
  58:6,25 63:4 64:8
**sufficiently** 11:9
  55:22 58:15
**suggests** 53:22 64:17
**suitable** 38:9
**summary** 49:17
  50:5
**summer** 13:6 19:8
  35:17
**super** 31:14
**superseded** 40:7
**supplement** 8:16
**supplemental** 2:11
  65:20
**support** 2:12 17:6
  52:6 61:5 65:4
**supported** 41:23
**sure** 26:21 39:5,17
**survive** 53:23 59:19
**surviving** 47:21 49:2
**suspect** 10:10
**sustainable** 23:5
**switch** 46:8
**Systems** 7:2 23:22
  25:1,20 41:14,15
  41:17 47:3 48:23
**S.D.N.Y** 52:10

---
**T**

**T** 69:2,2
**tail** 61:19
**take** 8:19 9:15 10:3
  21:3,10 26:1,2
  29:21 44:21,25

54:19 56:17 57:13
62:13
**taken** 11:19 29:22
**takes** 38:10
**talk** 12:17 14:10
16:24,24 19:3
**talked** 23:11
**talking** 21:13 37:24
62:16
**tandem** 12:5 14:7
**targets** 9:3
**team** 32:6,7 45:13
45:14
**Technologies** 40:17
**technology** 18:17
33:5
**telephonically** 7:15
**term** 48:22 52:11
**terminated** 64:9
**terms** 16:3,5 17:3
19:4 23:7 40:10
65:21
**Terry** 4:7
**Thank** 11:17,24
30:11 38:25 39:12
41:24 43:12 44:4
44:19 45:2 48:25
49:13,14 59:25
66:11 67:13,14
**Thanks** 49:25
**themes** 46:15
**thereto** 53:12
**thereunder** 12:18
**the-mill** 22:11
**thing** 21:14 31:17
37:11,15
**things** 18:7 34:17
40:22 66:8
**think** 10:15 12:5,5
12:18,25 13:7,8,15
14:7 15:14 16:9,20
17:12,24 18:10,25
20:1,4,9 21:11,16
22:3,11,17,19 23:2
23:14,24 24:2,23
25:14,16,24 27:22

29:3,21,25 30:23
31:23 33:13 34:5
35:5 36:3,8,15,25
37:9 38:4,7,11,13
38:15,16 40:22,23
41:3 42:22 44:21
49:1,4 50:15 55:13
56:8 57:23 58:3
64:17 67:3
**third** 7:10 18:13
43:15 47:1,5 49:10
50:22 51:1 53:20
53:21
**third-party** 56:14
**thirteen** 40:8 42:6
**thirty** 20:6 51:2
**thirty-two** 51:13
**thought** 19:20,21
20:10 24:5 60:21
**thousands** 32:13
**three** 35:6,20 42:11
45:19,21 46:16
62:3,6,7,8
**three-week** 62:1
**thumb** 63:8
**time** 8:21 10:10,11
11:13 17:13 19:2
20:20 21:10,17,23
24:2 27:5 28:1,6
28:18 30:5,18
31:16 37:10 45:20
47:20 48:16 54:25
55:7,7 58:12 62:2
62:3 64:6
**timely** 42:10 50:19
**Times** 5:4
**timing** 19:4,5 20:2
27:9 28:1,4 65:22
**today** 12:24 13:14
16:17 20:14 21:9
22:7 23:11,12,25
24:1 33:3 42:16
50:7
**today's** 47:7
**Togut** 6:16 11:2
**told** 63:16

**tomorrow** 27:21
**tort** 12:19 26:17
30:3
**tossing** 22:7
**totally** 40:21
**track** 10:21 19:22
31:15
**trade** 16:2 22:11
31:18 32:14
**trading** 60:23 63:14
**transaction** 64:6
**Transcribed** 4:24
**transcriber** 69:4,11
**transcript** 69:5
**transcription** 69:8
**transcripts** 13:5
**transfer** 22:25 51:14
51:18
**treatment** 26:25
**trial** 14:23,24 15:11
15:12 16:10,11
33:21
**tribunal** 16:23 17:3
18:3
**tried** 61:2
**true** 23:19 51:11
53:7 64:20 65:9
**Trustee** 3:23
**try** 16:19 27:24
50:18
**trying** 31:17
**turn** 49:15
**turning** 12:23 26:12
39:14 66:13
**turns** 46:8
**turon** 35:1
**twenty** 18:19 21:2
**twice** 35:7
**two** 8:25 12:4 15:3
23:9 25:18 35:20
42:3 43:16 49:2
**twofold** 17:4 56:18
**two-phase** 15:11
**type** 26:1 44:11
62:25 65:2
**typed** 69:14

**typical** 29:16
**typically** 14:23
18:18 62:25

---

**U**

**ultimately** 12:14
20:12 27:20 46:9
53:4
**uncontested** 40:20
42:16
**underlying** 63:1
**understand** 11:21
32:25 34:6 39:2,8
41:4 60:13 65:14
**understanding**
10:15 17:24 22:21
61:20 63:13
**unfold** 21:12
**unidentified** 57:18
**unions** 28:19 40:13
40:14
**unique** 17:3,24 18:4
**UNITED** 1:2
**unlevel** 37:4
**unliquid** 13:10
**unliquidated** 16:22
28:13
**unopposed** 41:22
43:25
**unresponsive** 64:12
**Unrou** 45:12
**unsecured** 2:6,14
19:17 21:11,13
25:11 34:15 36:6
51:3
**untimely** 42:11
**unusual** 36:8
**unwillingness** 29:7
**U.S** 1:14,23 53:10
**U.S.C** 2:1,22 3:6,10
3:14,22

---

**V**

**v** 12:19 53:10
**validate** 26:16
**validity** 16:1,3 52:8
52:16

**value** 37:6 55:6,8
 57:10 60:5 63:24
 64:6
**variety** 33:14 35:24
**various** 34:21 45:8
 51:19 53:12
**venue** 22:25
**vested** 18:2
**Victoria** 66:15
**Victory** 4:17
**view** 24:3 27:2,4
 57:22
**viewed** 55:21
**vigorous** 29:11
**vigorously** 29:24
**vineyards** 22:20
**violated** 65:9
**violation** 12:10
 13:14,16,24 15:21
**violations** 12:14
 13:25
**virtually** 33:13
**virtue** 14:5,12
**visibility** 35:17
**vociferously** 22:1
**vote** 21:21
**voting** 21:19 47:23

**W**

**waited** 24:5 28:6
 32:1 33:24
**waiting** 31:11 35:13
**want** 8:13 12:16,25
 19:3,11 28:12
 30:14 31:14 32:18
 38:8,17,19 40:23
 43:14 45:13 48:18
 50:3 54:2,3
**wanted** 8:19 9:4
 26:6,21,22 28:7
 31:12 35:7 39:5
 44:21 60:6
**wants** 11:21
**Washington** 4:1
 50:24,24 51:12,17
 51:20 52:1 53:19

**Washington's** 51:24
 53:11
**wasn't** 61:10
**waste** 27:5
**watching** 63:8
**WATKINS** 7:9
**way** 8:15 9:14 10:16
 13:22 14:16 16:13
 18:9,19 28:16
 29:11 32:18,20
**week** 8:24
**weeks** 62:3,6,8
**weigh** 35:25
**went** 17:16
**weren't** 23:13 39:5
**West** 5:14
**we'll** 10:10,19,21
 11:16,23 23:15
 27:2,3 34:24 39:20
 49:7
**we're** 8:22,23 15:4
 21:13,21 23:14
 25:16 28:15 31:16
 34:14,18,19,20
 35:1,6,7 37:15
 40:20 45:7 50:6,18
 51:8
**we've** 8:22 11:15
 13:5 22:15 23:2
 42:2 44:16 46:4,4
 46:6,11 50:16,17
 51:18 61:1
**wheels** 16:14
**whipsawed** 27:25
**Wilfred** 4:15 66:15
**William** 4:9,13
**withdraw** 24:3,5
**withdrawal** 17:7
 24:6,9
**withdrawn** 43:19
**withdrew** 34:8
**withstand** 57:20
**WL** 52:10
**WM** 5:7
**WOLF** 6:7
**work** 18:7 35:19

44:1,2 60:12
**worked** 10:17
**working** 31:20
 35:19 45:11 50:16
 50:18 63:11
**WorldCom** 52:10
**worry** 30:2
**worth** 42:15
**wouldn't** 64:21
**writing** 52:21,22
**written** 43:21
**wrong** 14:2

**X**

**x** 1:5,12 18:24,24
 34:23 68:1

**Y**

**yeah** 35:14 39:4 56:6
 57:5
**years** 18:19,22 22:20
 29:6 30:15,21 51:4
 51:13
**York** 1:3,16,16 5:5,5
 6:4,5,5,18,18 7:5,5
 7:11,11 22:23 24:8

**Z**

**Z** 7:7
**zealously** 50:18

**0**

**05-44481** 1:4
**07102** 6:12

**1**

**1** 14:13 48:11,17
**1.7** 31:19 34:2,17
 35:5,20
**1:45** 1:19
**10** 66:14
**10.8** 42:14
**10004** 6:5
**10022** 7:11
**10036** 5:5 7:5
**10100** 49:5
**10111** 49:6

**10119** 6:18
**105** 2:1
**11** 2:1,22 3:5,9,14,21
 21:15 30:19 44:5
**1113** 10:16 28:19
**1114** 10:16 28:20
**1121(d)** 3:14
**1124** 21:20
**11243** 21:20
**1129** 27:22
**1177** 7:4
**12** 1:18 46:25 47:5
**1201** 5:14
**13th** 40:16
**14** 40:17
**140** 40:5
**15** 68:18,20 69:10
**15th** 9:1,12 10:9,19
 10:22
**157** 24:7
**159** 42:7
**15975** 41:13
**15981** 41:13
**15983** 41:15
**15984** 41:16
**15986** 41:13
**16** 42:18
**160** 42:17
**167** 52:12
**173-174** 52:12
**18** 68:10
**1957** 53:10
**1985** 23:4
**1992** 52:12
**1999** 14:13 48:17
 51:6,14

**2**

**2** 9:12 48:12 51:6
**2d** 52:12
**2:35** 45:3
**20** 68:14,15
**2004** 11:8
**2005** 52:10,11 64:9
**2006** 8:17 13:18
 47:10

**2007** 1:18 8:20,23
  30:23 40:17 47:5
  69:10
**2008** 30:16 33:21
**21** 68:3,8,16
**213** 8:14 9:14
**279** 40:21
**29** 52:10

---

**3**

**3** 10:5 48:13 54:12
  54:19
**3d** 52:12
**3:15** 45:1
**3:37** 45:3
**30** 47:10
**30th** 45:21
**3001(a)** 52:18
**3001(c)** 52:20
**3001(f)** 52:13,14
**3007** 3:6,10,22
**30309** 5:15
**355** 53:10
**363** 2:1
**365** 10:16
**38** 68:8
**3832065** 52:10

---

**4**

**4** 10:20 48:14 54:20
**4:07** 67:15
**40,000** 60:4
**401** 56:10
**401K** 56:5,10,12
  58:23 59:23 60:17
**41** 53:10 68:10
**43** 68:3,12
**45-46** 53:10
**4718** 10:7
**4778** 41:10

---

**5**

**5** 10:24 11:3 48:16
  54:20 68:17
**502(b)** 3:6,10,22
**503** 2:23
**518** 50:9

**5774** 11:20
**5777** 11:22
**58** 68:14,15,16
**59** 40:21

---

**6**

**6** 11:18 54:21 68:12
**6099** 40:2
**6100** 42:1
**6285** 43:16
**6440** 43:18
**6442** 43:18
**65** 68:17
**66** 68:18,20

---

**7**

**7** 11:18,23 60:1
**7th** 40:15
**7012** 52:25 57:21
**744** 6:11
**772** 40:4
**776** 23:3

---

**8**

**8** 40:1 54:12,21
**8,588** 60:6
**8.5** 50:8
**802** 23:3
**807** 23:3
**885** 7:10

---

**9**

**9** 41:25 66:13
**9th** 23:3
**9(b)** 55:17,21
**9:30** 44:25
**9014** 52:22
**9014(c)** 52:24
**954** 52:11