Hearing Date:  March 22, 2007, 10:00 a.m.
Objection Deadline:  March 19, 2007, 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
       In re                              :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECOND SUPPLEMENT TO KECP MOTION (DOCKET NO. 213)
SEEKING AUTHORITY TO CONTINUE AIP FOR FIRST HALF OF 2007

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this second supplement to their Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 213) (the "Second Supplement"). The relief sought in this Second Supplement is limited to a continuation of the Debtors' short-term Annual Incentive Plan ("AIP")—a competitive compensation program that provides participants with incentives to achieve their individual performance goals and the Debtors' financial performance targets—for the six-month period starting January 1, 2007 and ending June 30, 2007, including approval of the Debtors' financial targets and payout curves for that period. Over the past several weeks, the Debtors and their professional advisors have engaged in a dialogue with the Official Committee of Unsecured Creditors (the "Creditors' Committee") on all aspects of the AIP. As a result of those discussions, the Creditors' Committee supports the continuation of the AIP for the first half of 2007. With the exception of new performance targets, which flow from the Debtors' Preliminary Business Plan (defined below), and new payout curves that were agreed upon by the Debtors and the Creditors' Committee, the terms and conditions of the AIP are essentially the same as those approved by this Court in February 2006 (with respect to the AIP covering the first half of 2006) and July 2006 (for the second half of 2006).

1. The Debtors filed their Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 213) (the "KECP Motion") on October 13, 2005. This Court conducted an evidentiary hearing on the portion of the KECP Motion addressing the AIP for the first half of 2006 on February 10, 2006. (See Docket No. 3414.) On February 17, 2006, this Court issued an Order Under 11

U.S.C. §§ 105 And 363 Authorizing The Debtors To Implement A Short-Term Annual Incentive Program (Docket No. 2441) (the "AIP Order") granting that portion of the KECP Motion.  In the AIP Order, this Court concluded that the Debtors had "exercised reasonable business judgment" and "proposed [the AIP] in good faith," that the AIP "was in all respects fair and reasonable," and that implementing the AIP was "in the best interest of the Debtors, their estates, creditors, and parties-in-interest and [was] necessary to the Debtors' reorganization efforts."  (AIP Order ¶¶ B-C, E.)  The AIP Order adjourned all remaining portions of the KECP Motion to the July 2006 omnibus hearing.  (Id. ¶ 1.)

    2. On June 29, 2006, the Debtors filed their Supplement To KECP Motion (Docket No. 213) Seeking Authority To:  (A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing (Docket No. 4419) (the "Supplement").  After an evidentiary hearing on the Supplement on July 19, 2006, this Court issued an Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To: (A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing (Docket No. 4660) (the "Supplemental AIP Order") authorizing the Debtors to continue the AIP for the second half of 2006.[1]  The Supplemental AIP Order once again reflected this Court's determinations that the Debtors had "exercised reasonable business judgment" in seeking approval of the AIP, that the AIP was "proposed in good faith," that it was "in all respects fair and reasonable," and that implementing the AIP was "in the best interests of the Debtors, their estates, their creditors, and parties-in-

---

[1] Several divisions did not meet their financial targets for the second half of 2006.  Taking into account financial performance at the corporate level and excluding adjustments for individual performance, incentive-compensation awards will range from 68% to 168% of target opportunities, with an average award of 109% of target for members of the Delphi Strategy Board ("DSB") and 120% of target for non-DSB members.

3

interest, and [was] necessary to the Debtors' reorganization efforts." (Supplemental AIP Order ¶¶ A-C.)[2] With respect to the remaining portions of the KECP Motion, the Supplemental AIP Order adjourned the hearing on the emergence-incentive program ("EIP") to October 2006 and adjourned the hearing on the AIP to January 2007. (Id. ¶¶ 1, 4.)

       3.     The hearing on the EIP was later adjourned several times, and, at the omnibus hearing on January 12, 2007, this Court permitted the Debtors to take the EIP portion of the KECP Motion off calendar. The hearing on the AIP for the first half of 2007 and additional periods was also further adjourned, first to the February 2007 omnibus hearing, and then to the omnibus hearing scheduled for March 22, 2007. In the exercise of their reasonable business judgment, and consistent with this Court's approach to considering the AIP on a period-by-period basis, the Debtors have determined that the hearing on March 22, 2007 should be limited to the continuation of the AIP for the first half of 2007, with the hearing on any additional periods adjourned to the omnibus hearing scheduled for July 19, 2007.

       4.     The terms and conditions of the AIP for the first half of 2007 are substantially similar to those approved by this Court in connection with the AIP covering the first and the second halves of 2006, which are set out in detail in the AIP Order and the Supplemental AIP Order. (AIP Order ¶¶ 4-11; Supplemental AIP Order ¶¶ 2-3.) The AIP's principal elements remain as follows:

- The AIP generally applies to all persons holding executive positions with the Debtors during the six-month period, with the exception of Robert S.

---

[2] The Supplemental AIP Order also clarified the concept of EBITDAR-UG (the financial measure used in setting the Debtors' performance target at the corporate level) and granted the Creditors' Committee the ability to adjust the Debtors' EBITDAR-UG for the second half of 2006 by up to $100 million "to account for direct or indirect net savings realized by the Debtors . . . on account of transformation actions not contemplated by the Debtors' business plan forecasts." (Id. ¶ 3.) In February 2007, the Creditors' Committee notified the Debtors that it would reduce the Debtors' EBITDAR-UG by approximately $36 million in accordance with the Supplemental AIP Order.

4

"Steve" Miller, the Executive Chairman of Delphi's Board of Directors (collectively, the "Covered Employees"). (AIP Order ¶ 4; see Supplemental AIP Order ¶ 2.) As of February 15, 2007, there were 440 Covered Employees.

- The Debtors will not issue any incentive-compensation payments unless Delphi achieves its corporate-level earnings target (measured using EBITDAR) and/or Delphi's divisions achieve their division-level operating-income targets (measured using OIBITDAR). (AIP Order ¶¶ 5-6; Supplemental AIP Order ¶ 2.)[3]

- For Covered Employees whose responsibilities are limited to the corporate level, 100% of their incentive-compensation opportunities will be determined by comparing Delphi's EBITDAR for the six-month period with the corporate EBITDAR target. With respect to Covered Employees whose responsibilities are not so limited, 50% of their incentive-compensation opportunities will be based on Delphi's EBITDAR versus the corporate target, and the other half will be based on their division's OIBITDAR versus the division's OIBITDAR target. (AIP Order ¶ 7; see Supplemental AIP Order ¶ 2.)[4]

- Each Covered Employee has a target incentive-compensation opportunity that is calculated based on his or her level of responsibility. If Delphi or its divisions exceed their targets, the Covered Employee's opportunity increases accordingly, but in no event may the opportunity exceed a specified cap. For Covered Employees who are members of the DSB,

---

[3] In prior periods, the financial metrics used for the corporate- and division-level targets were EBITDAR-UG and OIBITDAR-UG, respectively, which were generally defined as earnings (or operating income at the division level) before interest, taxes, depreciation, amortization, and restructuring costs, less any earnings resulting from the Debtor's ongoing negotiations with their labor unions (the "U") and General Motors Corporation ("GM") (the "G"). (See AIP Order ¶ 3; Supplemental AIP Order ¶ 5.) Because the Preliminary Business Plan (defined below) includes assumptions regarding such earnings, however, the Debtors are using EBITDAR and OIBITDAR as the financial metrics for the targets for the first half of 2007. The Debtors will adjust their actual EBITDAR and OIBITDAR to the extent there is any difference between the Preliminary Business Plan's assumptions and the terms of any agreements reached with the unions and/or GM. Thus, as in prior periods, the Covered Employees will not receive any incentive compensation under the AIP based on earnings resulting from the Debtor's ongoing negotiations with their unions and GM.

[4] Under the AIP Order and the Supplemental AIP Order, the split for Covered Employees in the Medical division was 30%-70%, rather than 50%-50%. (AIP Order ¶ 7; see Supplemental AIP Order ¶ 2.) As a result of Delphi's realignment of its business sectors, which was completed during the second half of 2006, the Medical division no longer exists as a standalone division, but rather is part of the Product and Service Solutions division. The sector realignment also required changes to the AIP's division-level targets for the second half of 2006, which were initially set based on Delphi's pre-realignment structure. The changes involved the reallocation of financial information to reflect the new structure and had a net-zero effect on the Debtors' targets in the aggregate. The Debtors thoroughly reviewed the changes with the Creditors' Committee.

5

        Delphi's top policymaking group, the cap is 150% of the Covered Employee's target opportunity. For all other Covered Employees, the cap is 200% of their target opportunity. (See AIP Order ¶ 8; Supplemental AIP Order ¶ 2.)

- Any incentive-compensation opportunity is subject to an adjustment based on the Covered Employee's individual performance during the six-month period. The adjustment can range from a 100% reduction (for those Covered Employees designated as poor performers or who otherwise fail to meet expectations) to an increase of up to (but not in excess of) the caps described above. Upward adjustments are a zero-sum game—i.e., any upward adjustment must be counterbalanced by a downward adjustment of equal amount. (AIP Order ¶ 9; see Supplemental AIP Order ¶ 2.)

- The AIP includes a prophylactic measure designed to prevent the payment of incentive compensation to Covered Employees under certain circumstances, including with respect to Covered Employees who fail to act in good faith and in a manner consistent with the Debtors' best interests. (AIP Order ¶ 10; see Supplemental AIP Order ¶ 2.)[5]

5. In February 2007, Delphi preliminarily completed its latest financial forecasts for the five-year period running from 2007 through 2011. Those forecasts are contained in the Debtors' preliminary business plan for those years (the "Preliminary Business Plan"), which was reviewed with Delphi's Board of Directors (the "Board") on January 10, 2007 and February 28, 2007, and with the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity Committee") at their joint meetings on February 7 and 27, 2007.

6. The process used to develop the Preliminary Business Plan was the same as that used to develop Delphi's 2006 business plan. In creating the Preliminary Business Plan, Delphi conducted an in-depth evaluation of each of its businesses, taking into account revenue and cost forecasts in light of changed microeconomic and macroeconomic conditions. In the summer of 2006, Delphi provided each of its divisions with instructions and key assumptions

---

[5] The AIP for the first half of 2007 will incorporate the same prophylactic measures set out in paragraph 10 of the AIP Order.

that such divisions should implement for developing financial forecasts. In the fall of 2006, each of Delphi's divisions submitted its respective financial forecasts to Delphi's corporate headquarters. Applying a "bottom-up" approach, Delphi reviewed and consolidated the financial forecasts from each division and, in January and February 2007, submitted the Preliminary Business Plan to the Board for approval.

    7.  As with the AIP's financial targets for the first and the second half of 2006, the financial targets for the first half of 2007 were derived from Delphi's most recent business plan, in this case the Preliminary Business Plan. The corporate-level EBITDAR target for the first half of 2007 is $124.1 million. The division-level OIBITDAR targets, which reflect the Debtors' sector realignment, are as follows: Powertrain, $124.7 million; Steering, $40.4 million; Thermal, $50.3 million; Electronics and Safety, $281.3 million; Electrical and Electronic Architecture, $108.1 million; Product and Service Solutions, $5.6 million; and Automotive Holdings Group, negative $140.4 million.[6] If the Debtors achieve all of the above targets, the aggregate amount available in the incentive-compensation pool will be $20.1 million, before taking into account any adjustments based on individual-performance reviews. To the extent the Debtors exceed the targets, the aggregate amount in the pool will increase accordingly, but in no event will it exceed $37.4 million.

    8.  The Debtors seek the authority to continue the AIP for the six-month period beginning January 1, 2007 and ending June 30, 2007 under section 363(b)(1) of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended and in effect on

---

[6] The division-level targets are subject to further adjustment as income/expense held at the corporate level during the formulation of the Preliminary Business Plan is allocated to the divisions during the first half of 2007. These adjustments, which are made in the normal course of the Debtors' financial-planning process, will not affect the corporate-level target. The Debtors have informed the Creditors' Committee of these adjustments, and they will share the updated targets with the Creditors' Committee as soon as they become available.

October 8, 2005 (the "Bankruptcy Code"), which allows a debtor-in-possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  See In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Vienna Park Props., 976 F.2d 106, 111 (2d Cir. 1992).  At the evidentiary hearing on February 10, 2006, this Court articulated its test for determining whether an incentive-compensation plan like the AIP constitutes an appropriate use of estate property under section 363(b)(1), stating:

> The standard . . . is an examination, first, as to whether this program is in any way tainted by self-dealing or is, instead, the product of the advice of independent advisors and the ultimate decision-making by an independent board.  And then . . . whether it has been appropriately vetted with the other constituents in the case, so that they can test, also, whether it's tainted by any form of insider self-dealing.  Secondly, if I find that it is proposed on a fair and arm's length basis, and informed by independent judgment, I need to review it in the light of whether it makes good business sense.  In that regard, although I'm the ultimate arbiter of that decision, the courts have been clear that I can, in large measure, rely upon the business judgment of the debtor's board itself, particularly if, after adequate notice and opportunity to test the underpinnings of the proposal, there has not been sufficient evidence to indicate that that business judgment is questionable.

(Docket No. 3414 at 241-42.)[7]

        9.      The Debtors' proposal to continue the AIP for the first half of 2007 easily satisfies both parts of this test.  With respect to the first part, the AIP's terms and conditions, including the performance targets and payout curves for the first half of 2007, have been developed in consultation with various constituencies and approved by the independent Compensation and Executive Development Committee of the Board (the "Compensation

---

[7] This Court applied the same standard in ruling on the AIP for the second half of 2006 at the evidentiary hearing on July 19, 2006.  (See Docket No. 4996 at 97 ("At the hearing [in February], I set forth what I believe to be [the] proper standard for reviewing [a] motion of this kind and I continue to believe that's the proper way to consider such a request.").)

8

Committee"), thereby rebutting any suggestion that the AIP represents an attempt to engage in unfair self-dealing.

10.  To begin, Delphi's compensation consultant, Watson Wyatt Worldwide ("Watson Wyatt"), which played an important role in developing the AIP, has once again reviewed the AIP's terms and conditions and concluded that the AIP is well within the range of competitive practice among Delphi's peers. Indeed, as this Court recognized at the hearing on the AIP for the first half of 2006, incentive-compensation opportunities like those proposed here have "been an element of executive compensation generally in the marketplace." (Docket No. 3414 at 240.)

11.  The Debtors sought approval of the AIP from the Compensation Committee. The Compensation Committee is composed entirely of independent directors who are not Covered Employees under the AIP and who do not have any direct or indirect material relationship with Delphi. As part of that approval process, the Compensation Committee reviewed and considered the Debtors' business plan and the terms of the AIP for the first half of 2007, including the proposed targets and suggested program design, which, aside from the targets, mirrored the AIP approved for the second half of 2006. On February 27, 2007, the Compensation Committee approved the design of the AIP for the first half of 2007. The Board agreed with the Compensation Committee and approved the AIP on February 28, 2007.

12.  Furthermore, in February 2007, the Debtors and their professional advisors began discussions with the Creditors' Committee, together with its financial advisors and compensation consultant, regarding continuing the AIP for the first half of 2007. These discussions touched on all aspects of the AIP, including the Preliminary Business Plan and the Debtors' financial targets and proposed payout curves. Those discussions continued through the

9

week of March 5, 2007, when the Debtors and the Creditors' Committee reached an agreement on modified payout curves, which are attached to Exhibit A of this Second Supplement. With that modification in place, the Creditors' Committee approved the Debtors' financial targets and payout curves, and now supports the continuation of the AIP for the first half of 2007.

13. As for the second part of this Court's standard for evaluating the AIP, there is no basis for disturbing the Debtors' reasonable business judgment to continue the AIP for the first half of 2007. That business judgment is supported in part by the Debtors' determination that, to remain competitive, they must implement a competitive compensation structure for their entire workforce, including the Covered Employees. The Debtors' prepetition compensation program for the Covered Employees included four basic components: salary, benefits, short-term incentive opportunities in the form of an annual incentive plan similar to the AIP, and long-term incentive opportunities. In connection with the filing of their voluntary petitions, the Debtors canceled the short- and long-term incentives, leaving salary and benefits as the only elements of compensation for the Covered Employees. A compensation structure without short- and long-term incentive opportunities is not competitive with the compensation offered by other peer companies in the marketplace, and would place the Debtors' executive-compensation opportunities in the bottom 25% as compared with the opportunities offered by their peers. The AIP is a partial solution to this problem because it restores the short-term incentive opportunities that were available to the Covered Employees prepetition (but not the long-term incentives) and moves the Debtors' compensation structure toward market-competitive levels.

14. The Debtors' business judgment is also supported by their determination that the AIP provides the Covered Employees with appropriate incentives to achieve the Debtors' corporate- and division-level financial targets for the first half of 2007. As discussed above, the

corporate- and division-level targets under the AIP are derived from the Debtors' Preliminary Business Plan, the same plan used by the Debtors in managing their businesses.  The Preliminary Business Plan was developed by the Debtors, with the assistance of their financial advisors, in the same manner as the Debtors' prior business plans, and was approved by the Board on February 28, 2007.  It was also thoroughly reviewed by the Creditors' Committee and the Equity Committee at their joint meetings on February 7 and 27, 2007.  Providing the Covered Employees with incentives to reach the AIP targets is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest because all of those constituencies benefit when the Debtors create value by achieving their earnings goals.

        15.    In sum, this Court should grant the Debtors' request to continue the AIP for the first half of 2007 because the fact that the AIP's terms and conditions were developed, reviewed, negotiated, and approved or supported by several entities independent of the Covered Employees ensures that the AIP is not tainted by inappropriate self-dealing, and because the Debtors' business judgment is founded on its reasonable determinations that the AIP is needed to maintain competitive compensation opportunities and to provide the Covered Employees with appropriate incentives to achieve the Debtors' financial targets.

WHEREFORE, the Debtors respectfully request that this Court (i) enter a Second Supplemental AIP Order in substantially the form of that attached hereto as <u>Exhibit A</u> and (ii) grant the Debtors such other and further relief as is just.

Dated:   New York, New York
         March 12, 2007

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Albert L. Hogan, III (AH 8807)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                - and –

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, <u>et al.</u>,
 Debtors and Debtors-in-Possession