Hearing Date and Time: March 22, 2007 at 10:00 a.m.
Response Deadline: March 15, 2007 at 4:00 p.m.

Dana P. Kane, Esq. (DK-3909)
Liquidity Solutions, Inc.
One University Plaza, Suite 312
Hackensack, New Jersey 07601
Phone: (201) 968-0001
Fax: (201) 968-0010

Counsel to Liquidity Solutions, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                           :    Chapter 11
                                                 :
DELPHI CORPORATION, et al.,                      :    Case No. 05-44481 (RDD)
                                                 :
                            Debtors.             :    (Jointly Administered)
---------------------------------------------------------------x

**RESPONSE OF LIQUIDITY SOLUTIONS, INC., AS ASSIGNEE,
TO DEBTORS' NINTH OMNIBUS OBJECTION (SUBSTANTIVE)
PURSUANT TO 11 U.S.C. § 502(B) AND FED. R. BANKR. P. 3007 TO
CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS
NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C)
UNTIMELY CLAIMS AND (D) CLAIMS SUBJECT TO MODIFICATION**

Liquidity Solutions, Inc. d/b/a Revenue Management and Capital Markets ("LSI"), as assignee with respect to certain claims filed in these cases, hereby files its response (the "Response") to the Debtors' Ninth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Untimely Claims and (D) Claims Subject to Modification (the "Ninth Omnibus Objection").[1] In further support of its Response, LSI respectfully states as follows:

---
[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Ninth Omnibus Objection.

1

## BACKGROUND

1.  On October 8 and 14, 2005, Delphi Corporation ("Delphi"), Delphi Automotive Systems LLC ("Automotive") and certain of Delphi's U.S. subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.  On various dates during the pendency of these chapter 11 cases, proofs of claim were filed by certain original creditors, as follows (each, an "Assigned Claim" and collectively, the "LSI Assigned Claims"):

| Original Creditor | Claim No. | Date Filed | Claim Amt. |
|---|---|---|---|
| Advantech Plastics LLC | 2043 | 2/16/06 | $57,116.60 |
| Cornerstone Design Ltd. | 2549 | 4/4/06 | $8,714.00 |
| Crown Paper Box Corp. | 3990 | 5/1/06 | $18,185.18 |
| Digatron Firing Circuits Inc. | 5596 | 5/10/06 | $8,730.29 |
| Indak Manufacturing Corp. | 5563 | 5/10/06 | $10,363.27 |
| Mahar Tool Supply Co. Inc. | 2013 | 2/14/06 | $11,684.67 |
| Marathon Roofing Products Inc. | 397 | 11/7/05 | $2,829.60 |
| Matteson Ridolfi Inc. | 4014 | 5/1/06 | $767.50 |
| NN Inc./Industrial Molding Corp. | 4583 | 5/3/06 | $102,059.47 |
| Pace Analytical Services Inc. | 1892 | 2/8/06 | $3,356.00 |
| Ram Meter Inc. | 2288 | 3/14/06 | $10,665.56 |
| Rawac Plating Company | 11856 | 7/28/06 | $352,725.84 |
| Roessel & Company Inc. | 2437 | 3/28/06 | $12,687.09 |
| Saisha Technology and Circuits International LC | 15600 | 7/31/06 | $26,750.00 |
| Samtec Inc. | 233 | 10/31/05 | $1,186.74 |
| Sperry & Rice Manufacturing LLC | 26 | 10/17/05 | $162.00 |
| Tinnerman Palnut Engineered Products | 2625 | 4/13/06 | $202,626.18 |
| | 2626 | 4/13/06 | $1,174.50 |
| | 2627 | 4/13/06 | $1,923.00 |
| | 2628 | 4/13/06 | $2,690.25 |
| | 2636 | 4/13/06 | $4,770.00 |
| | 2638 | 4/13/06 | $2,012.50 |
| Valmark Industries Inc. | 1880 | 2/6/06 | $60,748.63 |
| Walco Corporation | 7205 | 5/31/06 | $26,066.24 |
| Warner Electric LLC | 5970 | 5/16/06 | $78,321.60 |

3.  On numerous dates during these chapter 11 cases, LSI entered into agreements with each of the above-listed original creditors (each, an "Assignor") for assignment of each respective Assigned Claim to LSI, and LSI duly filed notices of transfer of claim pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as follows:

| Original Creditor | Claim No. | Date of Transfer | Docket No. |
|---|---|---|---|
| Advantech Plastics LLC ("Advantech") | 2043 | 2/6/06 | 2087 |
| Cornerstone Design Ltd. ("Cornerstone") | 2549 | 3/23/06 | 2940 |
| Crown Paper Box Corp. ("Crown Paper") | 3990 | 6/28/06 | 4382 |
| Digatron Firing Circuits Inc. ("Digatron") | 5596 | 1/16/07 | 6613 |
| Indak Manufacturing Corp. ("Indak") | 5563 | 6/20/06 | 4272 |
| Mahar Tool Supply Co. Inc. ("Mahar") | 2013 | 3/14/06 | 2808 |
| Marathon Roofing Products Inc. ("Marathon") | 397 | 5/9/06 | 3693 |
| Matteson Ridolfi Inc. ("Matteson") | 4014 | 1/16/07 | 6611 |
| NN Inc./Industrial Molding Corp. ("Industrial Molding")[2] | 4583 | 3/31/06 | 3053 |
| Pace Analytical Services Inc. ("Pace") | 1892 | 6/22/06 | 4317 |
| Ram Meter Inc. ("Ram Meter") | 2288 | 9/18/06 | 5143 |
| Rawac Plating Company ("Rawac") | 11856 | 7/25/06 | 4665 |
| Roessel & Company Inc. ("Roessel")[3] | 2437 | 6/8/06 | 4084 |
| Saisha Technology and Circuits International LC ("Saisha") | 15600 | 1/2/07 | 6349 |
| Samtec Inc. ("Samtec") | 233 | 6/20/06 | 4277 |
| Sperry & Rice Manufacturing LLC ("Sperry & Rice") | 26 | 6/29/06 | 4408 |
| Tinnerman Palnut Engineered Products ("Tinnerman") | 2625 | 8/28/06 | 5033 |
| | 2626 | | |
| | 2627 | | |
| | 2628 | | |
| | 2636 | | |
| | 2638 | | |
| Valmark Industries Inc. ("Valmark") | 1880 | 3/22/06 | 2923 |
| Walco Corporation ("Walco") | 7205 | 12/29/06 | 6335 |
| Warner Electric LLC ("Warner") | 5970 | 1/16/07 | 6617 |

---

[2] On or about July 7, 2006, LSI filed a notice of transfer pursuant to Bankruptcy Rule 3001(e) transferring the Industrial Molding Assigned Claim to LSI's affiliate, Capital Investors, LLC [Docket No. 4464]. Accordingly, LSI files this Response with respect to the Industrial Molding Assigned Claim on behalf of Capital Investors, LLC.

[3] On or about September 1, 2006, LSI filed a notice of transfer pursuant to Bankruptcy Rule 3001(e) transferring the Roessel Assigned Claim to KT Trust [Docket No. 5062]. Accordingly, LSI files this Response with respect to the Roessel Assigned Claim on behalf of KT Trust.

3

4.   On or about September 25, 2006, LSI filed proof of claim number 16334 against Automotive, as a non-priority unsecured claim in the amount of $398,139.37, as an amendment to the Rawac Assigned Claim (as amended, the "Rawac Amended Claim").

5.   On or about February 15, 2007, the Debtors filed the Ninth Omnibus Objection, objecting to each of the LSI Assigned Claims, among others, as follows:

| Assigned Claim | Claim No. | Filed Claim Amt. | Claim Amt. Per Objection | Purported Basis for Objection |
|---|---|---|---|---|
| Advantech | 2043 | $57,116.60 | $56,927.98 | Claim Subject to Modification |
| Cornerstone | 2549 | $8,714.00 | $5,075.20 | Claim Subject to Modification |
| Crown Paper | 3990 | $18,185.18 | $16,539.37 | Claim Subject to Modification |
| Digatron | 5596 | $8,730.29 | $8,346.00 | Claim Subject to Modification |
| Indak | 5563 | $10,363.27 | $9,083.02 | Claim Subject to Modification |
| Mahar | 2013 | $11,684.67 | $11,192.33 | Claim Subject to Modification |
| Marathon | 397 | $2,829.60 | $2,620.00 | Claim Subject to Modification |
| Matteson | 4014 | $767.50 | $500.00 | Claim Subject to Modification |
| Industrial Molding | 4583 | $102,059.47 | $32,815.98 | Claim Subject to Modification |
| Pace | 1892 | $3,356.00 | $2,378.00 | Claim Subject to Modification |
| Ram Meter | 2288 | $10,665.56 | $10,563.30 | Claim Subject to Modification |
| Rawac | 16334 | $398,139.37 | Disallow and expunge | Untimely Claim |
| Roessel | 2437 | $12,687.09 | $12,007.43 | Claim Subject to Modification |
| Saisha | 15600 | $26,750.00 | $25,950.00 | Claim Subject to Modification |
| Samtec | 233 | $1,186.74 | $1,068.12 | Claim Subject to Modification |
| Sperry & Rice | 26 | $162.00 | $81.00 | Claim Subject to Modification |
| Tinnerman | 2625 | $202,626.18 | $197,348.89 | Claim Subject to Modification |
| | 2626 | $1,174.50 | $1,110.83 | Claim Subject to Modification |
| | 2627 | $1,923.00 | $651.88 | Claim Subject to Modification |
| | 2628 | $2,690.25 | Disallow and expunge | Books and Records |
| | 2636 | $4,770.00 | $4,759.91 | Claim Subject to Modification |
| | 2638 | $2,012.50 | $1,012.50 | Claim Subject to Modification |
| Valmark | 1880 | $60,748.63 | $60,577.03 | Claim Subject to Modification |
| Walco | 7205 | $26,066.24 | $26,027.56 | Claim Subject to Modification |
| Warner | 5970 | $78,321.60 | $74,592.00 | Claim Subject to Modification |

Where the Debtors object to a claim in the Ninth Omnibus Objection and allege it to be a "Claim Subject to Modification" listed on Exhibit D thereto, the Debtors give a laundry list of reasons why a claim <u>might</u> appear on Exhibit D,[4] but no further specificity as to what is actually

---

[4] The Ninth Omnibus Objection provides, in pertinent part, that:
> The bases for placing a Claim in the Claims Subject to Modification category of objection include, but are not limited to, the following: (a) the asserted Claim does not account for amounts that may have been paid or credited against such

4

objectionable about that particular claim, leaving the holder of each claim to speculate for itself what the issue could be.

## RESPONSE TO OBJECTIONS

### I. Each of the LSI Assigned Claims is *Prima Facie* Valid in the Amount Filed and Such Amount is Supported by Sufficient Documentation

6.      The Bankruptcy Rules are clear that "[a] proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Once a proof of claim is properly filed, as here, the creditor (or its assignee) is aided by the presumption of validity arising under Bankruptcy Rule 3001(f), and the objecting party then "bears the burden of producing sufficient evidence to refute the claim." In re Camellia Food Stores, Inc., 287 B.R. 52, 56 (Bankr. E.D. Va. 2002).

7.      As noted above (see supra, ¶ 5, n. 4), where the amount of any LSI Assigned Claim differs from the amount of the Claim as listed by the Debtors on Exhibit D (that is, the Claim is listed as a "Claim Subject to Modification"), the Ninth Omnibus Objection offers no claim-specific reason as to why the Debtors dispute the filed amount of the Claim; rather, the Debtors rely on a list of six or more alternative bases that might apply to any claim being challenged. There is no evidence, support or analysis provided in support of the Debtors' objections. By contrast, many of the LSI Assigned Claims at issue provided detailed invoices

---

Claim prior to the commencement of these cases, (b) [sic] may include post-petition liabilities, (c) the asserted Claim does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases, (d) the asserted Claim was denominated in foreign currency in violation of the Bar Date Order, (e) the asserted Claim was docketed and filed against the wrong Debtor entity, and/or (f) the asserted Claim is misclassified as a priority or secured claim.

Ninth Omnibus Objection, ¶ 34.

5

attached to the respective proofs of claim supporting the amount claimed; out of an abundance of caution, LSI reattaches these invoices as Exhibit A attached hereto.

8.  Where invoices were not attached to the original proof of claim, to the extent that the amount of an LSI Assigned Claim has been challenged by the Debtors, LSI contacted each Assignor and requested additional supporting documentation. Moreover, when LSI contacted the Debtors and offered to submit such additional documentation in support of the LSI Assigned Claims in an effort to obviate the time and expense associated with claims litigation for all parties, Debtors' counsel asserted that this Response would nevertheless have to be filed. Accordingly, also included within Exhibit A is additional documentation to support those LSI Assigned Claims that did not have invoices attached to their original proofs of claim.[5]

9.  Although under the Bankruptcy Rules, the Debtors have a duty to "produc[e] sufficient evidence to refute the claim," id., here, the Debtors' objection can be distilled down to little more than a bare statement that "we don't agree with the proof of claim," which falls far short of their burden under Bankruptcy Rule 3001(f) and associated case law. See, e.g., In re White, 168 B.R. 825, 828-29 (Bankr. D. Conn. 1994) (stating that the objecting party may not rebut a claim's prima facie validity of a proof of claim merely by stating that amount of claim is incorrect, but rather must produce some evidence to support its argument; chapter 13 case). Did the Debtors not receive the product for which the invoice was issued? Did the Debtors not have one or more invoices comprising the affected claim in their A/P system?

---

[5] There are certain LSI Assigned Claims as to which supporting invoices were not attached to the original proofs of claim and are not included herein. Given the large number of LSI Assigned Claims to which the Debtors objected in the Ninth Omnibus Objection, coupled with the lack of any specificity as to the actual basis for objection, LSI respectfully submits that it has had insufficient time to work through the Ninth Omnibus Objection and track down additional information from certain Assignors. LSI is therefore still in the process of gathering additional documentation to support the filed amount of certain claims. LSI will continue this process and will present any additional information it receives between now and the hearing on the Ninth Omnibus Objection to the Debtors and/or to this Court as soon as is practicable.

Did the Debtors receive the product but applied outstanding credits in their favor that reduced the overall liability to the original Assignor? The answer is anyone's guess, and the Debtors' utter lack of specificity in proclaiming each LSI Assigned Claim a "Claim Subject to Modification" for any of a number of potential reasons has hamstrung LSI's ability to address the objection – the very reason why the Debtors are required, as a matter of law, to adduce actual "evidence" sufficient to rebut the presumptive validity of the LSI Assigned Claims. For example, one original Assignor advised LSI that it could not understand or respond to the objection without knowing which of the numerous invoices comprising that particular claim is in dispute – and the Debtors have not provided even that basic information. Simply put, in the Ninth Omnibus Objection, the Debtors have not put forth any actual evidence to negate the validity of the invoices attached to the LSI Assigned Claims, let alone evidence of probative force greater than or equal to the evidence offered in the attachment to each original proof of claim.

10. In short, under the Bankruptcy Code, the Bankruptcy Rules and applicable case law, each of the LSI Assigned Claims and the respective amounts set forth on each such claim was presumptively valid when filed. The Debtors cannot overcome this presumption of validity simply by filing a naked objection providing no insight as to why the Debtors consider the claims to be overstated, especially where each of the affected claims held by LSI either already contained sufficient detail supporting the full filed amount of the respective Claims, or LSI has provided additional backup herewith.[6] As such, the Ninth Omnibus Objection should be overruled and each of the LSI Assigned Claims allowed in the full filed amount.

---

[6] As noted above, LSI is still in the process of compiling supplemental documentation as to certain of the LSI Assigned Claims, and will provide such documentation as it becomes available. See supra n. 5.

7

## II. The Rawac Assigned Claim is Not a Late Claim Subject to Disallowance, but is a Permissible Post-Bar Date Amendment to a Timely Claim

11. The Debtors seek to disallow in full and expunge the Rawac Amended Claim as untimely, because it was filed on September 25, 2006, i.e., less than two months after the July 31, 2006 bar date established in these cases (the "Bar Date"). However, the Debtors fail to distinguish in their objection between completely new claims that were filed after the Bar Date, which generally are prohibited with very limited exceptions, and post-Bar Date amendments to timely filed proofs of claim, which are permissible under certain circumstances. See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005) (stating that "the bankruptcy rules permit courts to accept late-filed *amendments* to timely filed proofs of claim.") (emphasis in original). On its face,[7] the Rawac Amended Claim clearly evidences an intent to amend a claim filed prior to the Bar Date, and thus should be viewed under the standards applicable to post-bar date amendments to timely filed proofs of claim.

12. Amendments to proofs of claim are "freely allowed" in the Second Circuit to the extent that "the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." See id. (quoting In re Integrated Res., Inc., 157 B.R. 66, 70 (S.D.N.Y. 1993)). The Second Circuit has established a two-step analysis for determining the permissibility of post-bar date amendments to timely claims: (i) a court should determine if there was a timely assertion of a similar claim or demand by the creditor evidencing an intention to hold the estate liable; and (ii) if the amendment does "relate back" to the timely filed claim, courts should

---

[7] A copy of the Rawac Amended Claim is attached hereto as Exhibit B.

8

determine whether it would be equitable under the circumstances to allow the amendment. See In re Enron, 410 F.3d at 133.

13. With respect to the first inquiry, a claim is considered to relate to a timely assertion of a similar claim if it "corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." See id. (quoting In re McLean Indus., Inc., 124 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)). Courts within the Second Circuit have also interpreted this threshold analysis to apply the same standards as under Rule 15 of the Federal Rules of Civil Procedure in connection with amended and supplemental pleadings, pursuant to which an amended claim will relate back to a timely claim if both arose out of the same transaction or occurrence. See In re Asia Global Crossing Ltd., 324 B.R. 503, 507-08 (Bankr. S.D.N.Y. 2005) (finding that when analyzing whether there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable" the court's analysis is "basically the same as the test under Fed. R. Civ. P. 15(c) regarding the 'relation back' of a later pleading to an earlier one"); see also Fed. R. Civ. P. 15(c)(2) ("An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.").

14. Here, it is clear that the Rawac Amended Claim does indeed "relate back" to the earlier Rawac Assigned Claim, as it arose out of the same conduct, transaction or occurrence, and was filed to correct defects in the original claim and in an effort to describe the original claim with greater particularity. Rawac had an ongoing business relationship with the Debtors, and the liabilities underlying both the original Rawac Assigned Claim and the Rawac

Amended Claim were part of the same course of conduct in the ordinary course of the supplier/customer relationship between Rawac and the Debtors over the same general time frame. Moreover, the filing of the Rawac Amended Claim was prompted by an inquiry <u>by the Debtors</u> for LSI to provide additional support for the original Rawac Assigned Claim – <u>i.e.</u>, to describe the original claim with greater particularity. Indeed, subsequent to the filing of the original Rawac Assigned Claim, LSI was contacted by a claims analyst working for the Debtors, who was working on claims resolution issues and asked LSI to submit a list of invoices underlying the Rawac Assigned Claim. LSI contacted Rawac, obtained the backup documentation, and submitted the list as requested by the Delphi analyst. The Delphi analyst observed that the list of invoices submitted by LSI as provided by Rawac did not add up to the same amount listed on the face of the Rawac Assigned Claim, and suggested that LSI file an amended claim if it intended to include all of the invoices listed in the backup documentation – which LSI did within one week of its correspondence with Delphi. A copy of the e-mail correspondence between LSI and the Delphi claims analyst is attached hereto as <u>Exhibit C</u>. Undoubtedly, the Rawac Amended Claim sufficiently "relates back" to the timely filed claim within the meaning of Second Circuit law.

15.    The second prong of the <u>Enron</u> analysis is an examination of whether the allowance of a post-bar date amendment to a timely filed claim would be equitable under the circumstances. Here, courts examine (i) whether the debtor, or other creditors, would be unduly prejudiced by the amendment, (ii) whether other creditors would "receive a windfall" from the disallowance of the amendment, and (iii) whether the late claimant acted in good faith and the delay was justified. <u>See</u> <u>In re Enron</u>, 410 F.3d at 133. Of these factors, the Second Circuit has opined that the critical question "is whether the opposing party will be unduly prejudiced by the

amendment." See id. at 133-34 (opining that permission to file new claims after the bar date will ordinarily be denied even absent prejudice to the debtor or other creditors unless the reason for the delay is compelling, whereas post-bar date amendments will ordinarily be "freely allowed" where other parties will not be prejudiced; quoting In re Integrated Res., Inc., 157 B.R. at 70).

16.     In this case, there is no prejudice that would result if the Rawac Amended Claim is upheld as timely. There is no plan or disclosure statement on file in these cases, and the upward adjustment in the Rawac Claim – approximately $45,000 – is but a tiny fraction of the hundreds of millions of dollars in claims against the Debtors and thus is extremely unlikely to have any impact on the fundamental economics of any plan that is in the works.

17.     The notion that the Debtors' cases would be prejudiced by permitting the Rawac Amended Claim to stand is belied by the fact that the amendment was done at the suggestion of the Debtors in the first place. Moreover, these circumstances also serve to demonstrate LSI's good faith – LSI was reacting to a request for further information made by the Debtors, and within a week of LSI being alerted (by the Debtors' own claims analyst) to the error in calculating the amount of the original Rawac Assigned Claim, LSI filed the Rawac Amended Claim, all of which events took place less than two months after the Bar Date and well in advance of any plan and disclosure statement that may or may not be filed in the upcoming months.

18.     In short, as a matter of equity and consistent with the standards applicable to post-bar date amendments to timely proofs of claim, the Rawac Amended Claim should be permitted to stand, and the Ninth Omnibus Objection should be overruled as to this claim.

## CONCLUSION

WHEREFORE, LSI respectfully requests that the Court enter an order: (i) overruling the Ninth Omnibus Objection as to each of the LSI Assigned Claims; (ii) allowing each such claim in the full filed amount; and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated: March 15, 2007

                                                      Respectfully submitted,
                                                      LIQUIDITY SOLUTIONS, INC.

By: _____
Dana P. Kane, Esq. (DK-3909)
Liquidity Solutions, Inc.
One University Plaza, Suite 312
Hackensack, New Jersey 07601
Phone: (201) 968-0001
Fax: (201) 968-0010

12