**Hearing Date And Time: April 20, 2007 at 10:00 a.m.**
**Response Date And Time: April 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                :
         In re                         :     Chapter 11
                                            :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                            :
                                            :     (Jointly Administered)
                Debtors.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' ELEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) UNTIMELY CLAIMS, AND (D) CLAIMS SUBJECT TO MODIFICATION

("ELEVENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,
debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),
hereby submit this Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not
Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To
Modification (the "Eleventh Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and
affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title
11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").
The Debtors continue to operate their businesses and manage their properties as debtors-in-
possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered
orders directing the joint administration of the Debtors' chapter 11 cases.

2.      No trustee or examiner has been appointed in the Debtors' cases.  On October
17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official
committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official
committee of equity holders.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and
1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core
proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are section 502(b) of
the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules").

2

B.     Current Business Operations Of The Debtors

        5.   Delphi and its subsidiaries and affiliates (collectively, the "Company") as of

December 31, 2006 had global net sales of approximately $26.4 billion and global assets of

approximately $15.4 billion. [1]   At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

        6.   The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

        7.   Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of

General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's

business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to the Company in accordance with

the terms of a Master Separation Agreement between Delphi and GM.  In connection with these

transactions, Delphi accelerated its evolution from a North American-based, captive automotive

supplier to a global supplier of components, integrated systems, and modules for a wide range of

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
     and its worldwide subsidiaries and affiliates.

customers and applications.  Although GM is still the Company's single largest customer, today
more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company
generated approximately $2 billion in net income.  Every year thereafter, however, with the
exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company
reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]  Reflective of a
continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4
billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5
billion, $3.0 billion of which were charges related to the U.S. employee special attrition
programs.

9.    The Debtors believe that the Company's financial performance has
deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational
restrictions driven by collectively bargained agreements, including restrictions preventing the
Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating
largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic
OEMs resulting in the reduced number of motor vehicles that GM produces annually in the
United States and related pricing pressures, and (c) increasing commodity prices.

10. In light of these factors, the Company determined that it would be imprudent
and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,
operational issues, and forward-looking revenue requirements.  Because discussions with its

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

4

major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the

Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors'

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11. On March 31, 2006, the Company outlined five key tenets of its

transformation plan.  First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business.  Second, the Debtors must conclude their negotiations with

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

GM's business commitment to the Company.  Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[3]  Finally, the

Debtors must devise a workable solution to their current pension situation.

12. On December 18, 2006, the Debtors marked another milestone in their chapter

11 cases with the announcement of two significant agreements.  The first of these was an equity

purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with

affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger

Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC

(collectively, the "Plan Investors").  Under the Equity Purchase and Commitment Agreement, the

---

[3]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan.

Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.  The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

13. On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589).  Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.

14. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

D.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

15.   On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor

(collectively, the "Claimants") to file a proof of claim form with respect to each such Claim.

16. On or prior to April 20, 2006, Kurtzman Carson Consultants, LLC, the claims

and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by

mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with

this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,

2006) and (b) the persons and entities included in the notice database compiled by the Debtors,

but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date

Notices to more than 500,000 persons and entities.

17. In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

7

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

     18. Approximately 16,500 proofs of claim (the "Proofs of Claim") were filed

against the Debtors in these cases.  To date, the Debtors have filed five omnibus claims

objections which objected to claims on procedural grounds[4] and four omnibus claims

objections which objected to claims on substantive grounds.[5]  Pursuant to such omnibus claims

---

[4]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006;
the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii)
Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection
(Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended
Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No.
6571) on January 12, 2007; and the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The
Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15,
2007.

[5]    The Debtors filed the (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors'
Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And
Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; Fifth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims
With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records  (Docket No.
6100) on December 8, 2006; Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors'
Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007; and Ninth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)

*(cont'd)*

objections, the Court has disallowed and expunged approximately 8,314 Claims, and another 2,470 are the subject of pending objections.

19. On October 31, 2006, the Debtors filed the Motion For Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (Docket No. 5453) (the "Claims Objection Procedures Motion"), in which the Debtors requested this Court, among other things, to approve certain procedures for contested claim objections. On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

20. In this Eleventh Omnibus Claims Objection, the Debtors are objecting to 522 Proofs of Claim.[6]

<u>Relief Requested</u>

21. By this Objection, the Debtors seek entry of an order pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007 (a) disallowing and expunging those Claims set forth on <u>Exhibit A-1</u> attached hereto because they contain insufficient documentation in support of the

---

*(cont'd from previous page)*
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007.

[6] Contemporaneously with the Eleventh Omnibus Claims Objection, the Debtors are filing the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims and (B) Equity Claims (the "Tenth Omnibus Claims Objection"). In the Tenth Omnibus Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims and (b) were filed by equity holders solely on account of their stock holdings. The Debtors are objecting to 119 Proofs of Claim in the Tenth Omnibus Claims Objection.

Claims asserted, (b) disallowing and expunging the Claim set forth on Exhibit A-2 attached

hereto because it contains insufficient documentation in support of the Claim asserted and was

untimely pursuant to the Bar Date Order, (c) disallowing and expunging those Claims set forth

on Exhibit B-1 attached hereto because they assert liabilities or dollar amounts that are not

reflected on the Debtors' books and records, (d) disallowing and expunging those Claims set

forth on Exhibit B-2 attached hereto because they assert liabilities or dollar amounts that are not

reflected on the Debtors' books and records and were untimely pursuant to the Bar Date Order, (e)

disallowing and expunging the Claims set forth on Exhibit C attached hereto because they were

untimely pursuant to the Bar Date Order, and (f) revising the asserted amount or classification,

and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on Exhibit

D attached hereto.

Objections To Claims

A.    Insufficiently Documented Claims

22.    During their review, the Debtors discovered that certain Proofs of Claim

that were filed in these cases do not include sufficient documentation to support the claim

asserted (the "Insufficiently Documented Claims").  This deficiency in documentation has made

it impossible for the Debtors meaningfully to review the asserted Claims.  Furthermore, the

Debtors contacted each Claimant which filed an Insufficiently Documented Claim (other than

those Claimants which filed a blank proof of claim form), and the Debtors received no additional

documentation from such Claimants.[7]

---

[7]    Claimants which responded to the Debtors' communications and provided additional information are not
       included as part of this objection.

23.     The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) .  In re

WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit A-1 to provide sufficient documentation to permit an understanding of the basis for

their Claims, those Claims do not make out a prima facie case against the Debtors.

24.     The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against

the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence

of the Debtors' liability for the Claim.  In addition, the Insufficiently Documented Claims listed

on Exhibit A-2 were received by the Debtors after the Bar Date (the "Untimely Insufficiently

Documented Claim").  With respect to the Untimely Insufficiently Documented Claim, the

Debtors also object to that Claim on the basis that it was not timely filed pursuant to the Bar Date

Order.[8]

        25.     Attached hereto as <u>Exhibit A-1</u> is a list of the Insufficiently Documented

Claims which the Debtors have identified as Claims that do not contain sufficient documentation

to permit an understanding of the basis for the claim.  Identified on <u>Exhibit A-2</u> are the Untimely

Insufficiently Documented Claims, which the Debtors have concluded do not contain sufficient

documentation to permit an understanding of the basis for the Claim and, in addition, were not

timely filed pursuant to the Bar Date Order.[9]  In the event that this Court does not disallow and

expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to

the Insufficiently Documented Claims and Untimely Insufficiently Documented Claim at a later

date on any basis whatsoever.   Accordingly, the Debtors (a) object to both the Insufficiently

Documented Claims and the Untimely Insufficiently Documented Claim and (b) seek entry of an

order disallowing and expunging both the Insufficiently Documented Claims and the Untimely

Insufficiently Documented Claim in their entirety.

B.      <u>Claims Not Reflected On The Debtors' Books And Records</u>

---

[8]    The Bar Date Order provides, in relevant part:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

  Bar Date Order ¶ 11.

[9]    The Untimely Insufficiently Documented Claims listed on <u>Exhibit A-2</u> were not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

26.     During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records ("Books and Records Claims").  In addition, the Debtors determined that certain other Proofs of Claim also assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the Bar Date Order ("Untimely Books and Records Claims"). The Debtors believe that the parties asserting both Books and Records Claims and Untimely Books and Records Claims are not creditors of the Debtors.

27.     The bases for determining that the Debtors are not liable for an asserted Claim include, but are not limited to, the following: (a) the Debtors' books and records do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the Debtors' books and records reflect that the Debtors have assumed the Claimant's executory contract and cured any prepetition claims relating thereto, (c) the Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this Court, (d) the Debtors' books and records reflect that the Claimant has signed a release and/or waiver stating that the Debtors are not liable to the Claimant for such Claim, (e) the Debtors' books and records reflect that the asserted Claim was properly paid prior to the commencement of the Debtors' cases, and (f) the Claim constitutes a postpetition liability that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

28.     A claimant's proof of claim is entitled to the presumption of <u>prima</u> <u>facie</u> validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  <u>WorldCom</u>, 2005 WL 3832065, at

13

*4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  <u>Id</u>.

29.     Attached hereto as <u>Exhibit B-1</u> is a list of the Books and Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto as <u>Exhibit B-2</u> is a list of the Untimely Books and Records Claims which the Debtors have also identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely Books and Records Claims not only because the Debtors have no liability in respect thereof, but also because the Claims were not timely filed pursuant to the Bar Date Order.[10] If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books and Records Claims and the Untimely Books and Records Claims at a later date on any basis whatsoever.

30.     Accordingly, the Debtors (a) object to both the Books and Records Claims and the Untimely Books and Records Claims and (b) seek entry of an order disallowing and expunging both the Books and Records Claims and the Untimely Books and Records Claims in their entirety.

C.      <u>Untimely Claims</u>

31. During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim filed against the Debtors were received by the Debtors after the Bar Date ("Untimely Claims").  With respect to the Untimely Claims, the Debtors object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order. Attached hereto as <u>Exhibit C</u> is a list of Untimely Claims.  The Debtors seek to have such

---

[10]    The Untimely Books and Records Claims listed on <u>Exhibit B-2</u> hereto were not included as part of the Claims Timeliness Motion.

Untimely Claims disallowed and expunged as Claims that were not timely filed pursuant to the Bar Date Order.[11]

D.    Claims Subject To Modification

32.    During the Debtors' review of the Proofs of Claim, the Debtors have determined that certain Claims asserted against the Debtors (a) are overstated, including as a result of the assertion of invalid unliquidated claims, or were denominated in a foreign currency, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured, administrative, or priority status (collectively, the "Claims Subject to Modification").

33.    Although on the Eleventh Omnibus Claims Objection the Debtors do not seek disallow and expunge these claims, based on an initial review of the Claims Subject to Modification, the Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth on Exhibit D attached hereto.  Moreover, in some cases, the Debtors have determined that such Claims should be re-classified, as set forth on Exhibit D attached hereto.  Finally, in some cases, the Debtors have determined that such Claims should be asserted against a different Debtor entity as indicated on Exhibit D attached hereto by a change in the applicable case number.  The bases for placing a Claim in the Claims Subject to Modification category of objection include, but are not limited to, the following:  (a) the asserted Claim does not account for amounts that may have been paid or credited against such Claim prior to the commencement of these cases, (b) may include postpetition liabilities, (c) the asserted Claim does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases, (d) the asserted Claim was denominated in

---

[11]    None of the Untimely Claims listed on Exhibit C hereto was included as part of the Claims Timeliness Motion.

foreign currency in violation of the Bar Date Order,[12] (e) the asserted Claim was docketed and

filed against the wrong Debtor entity, and/or (f) the asserted Claim is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject to

Modification to a fully liquidated, U.S.-denominated amount consistent with the Debtors' books

and records and/or the liquidated amount requested by the Claimant (thus eliminating the

unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the

Claim is asserted, and/or (iii) appropriately reclassify the Claim.

34.    As stated above, a claimant's proof of claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the Unsubstantiated Claims,

the Debtors' books and records refute that certain of the claims asserted in each Claim Subject to

Modification are actually owed by any of the Debtors.

35.    Set forth on Exhibit D attached hereto is a list of Claims Subject to

Modification that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Claim Subject to

Modification, Exhibit D reflects the amount, classification, and Debtor asserted in the Claimant's

Proof of Claim in a column titled "Claim As Docketed"[13] and the proposed modified dollar

amount, classification, and Debtor for the Claim in a column titled "Claim As Modified."

---

[12]    See Bar Date Order ¶ 3(d) ("Proofs of Claim must . . . (iv) be denominated in United States currency. . .").

[13]    As a result of the manner in which Claims are docketed by the Claims Agent, Claims asserted in foreign
currency may be listed on Exhibit D as $0.00.  In addition, the Asserted Claim Amount on Exhibit D reflects
only asserted liquidated claims.

36.     The Debtors object to the amount, classification, and/or Debtor for each

Claim Subject to Modification on <u>Exhibit D</u> and request that each such Claim be revised to

reflect the amount, classification, and Debtor listed in the "Claim As Modified" column of

<u>Exhibit D</u>.  Thus, no Claimant listed on <u>Exhibit D</u> would be entitled to (a) recover for any Claim

Subject to Modification in an amount exceeding the dollar value listed as the "Modified Total"

Amount for such Claim on <u>Exhibit D</u>, (b) assert a classification that is inconsistent with the

classification that is listed in the "Claim As Modified" column, and/or (c) assert a claim against a

Debtor other than that whose case number is listed in the "Claim As Modified" column on

<u>Exhibit D</u>, subject to the Debtors' right to further object to each such Claim Subject to

Modification.  For clarity, Exhibit D refers to the Debtor entities by case number, and  <u>Exhibit E</u>

displays the formal name of  fifteen Debtor entities and their associated bankruptcy case numbers

referenced in <u>Exhibit D.</u>

37.     The inclusion of the Claims Subject to Modification on <u>Exhibit D</u>,

however, does not reflect any view by the Debtors as to the ultimate validity of any such Claim.

The Debtors therefore expressly reserve all of their rights to further object to any or all of the

Claims Subject to Modification at a later date on any basis whatsoever.

38.     Accordingly, the Debtors (a) object to the Asserted Claim Amount,

Classification, and/or Debtor for the Claims Subject to Modification and (b) seek an order

modifying the Claims Subject to Modification to the Modified Claim Amount, Debtor, and/or

Classification as set forth on <u>Exhibit D</u>.

<u>Separate Contested Matters</u>

39.     Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Eleventh Omnibus Claims Objection,

each such Claim and the objection to such Claim asserted in this Eleventh Omnibus Claims

Objection will be deemed to constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered

by the Court with respect to an objection asserted in this Eleventh Omnibus Claims Objection

will be deemed a separate order with respect to each Claim.

## Reservation Of Rights

40.    The Debtors expressly reserve the right to amend, modify, or supplement

this Eleventh Omnibus Claims Objection and to file additional objections to the Proofs of Claim

or any other Claims (filed or not) which may be asserted against the Debtors, including without

limitation the right to object to any claim on the basis that it has been asserted against the wrong

Debtor entity.  Should one or more of the grounds for objection stated in this Eleventh Omnibus

Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds

or on any other grounds that the Debtors discover during the pendency of these cases.  In

addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that

such Claim has been paid.

## Responses To Objections

41.    Responses to the Eleventh Omnibus Claims Objection are governed by the

provisions of the Claims Objection Procedures Order.  The following summarizes the provisions

of that Order, but are qualified in all respects by the express terms thereof.

A.    Filing And Service Of Responses

42.    To contest an objection, responses (a "Response"), if any, to the Eleventh

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be received no later than 4:00 p.m.

(prevailing Eastern time) on April 13, 2007.

B.      Contents Of Responses

            43.      Every Response to this Eleventh Omnibus Claims Objection must contain

at a minimum the following:

            (a)      the title of the claims objection to which the Response is directed;

            (b)      the name of the Claimant and a brief description of the basis for
the amount of the Claim;

            (c)      a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

            (d)      unless already set forth in the proof of claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim subject to appropriate confidentiality constraints;

19

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

C.    <u>Timely Response Required</u>

44.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on April 20, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Motion will apply to all Responses and hearings arising from this Eleventh Omnibus Claims Objection.

45.    <u>Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose proof of claim is subject to the Eleventh Omnibus Claims Objection and who is served with the Eleventh Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the Eleventh Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the</u>

Debtors may seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures Order.

46.     To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to provisionally accept the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

47.     Replies to any Responses shall be governed by the Claims Objection Procedures Order.

Service Of Eleventh Omnibus Claims Objection Order

48. Service of any order with regard to this Eleventh Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

49.     Questions about this Eleventh Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

### Notice

50.     Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418),

and the Claims Objection Procedures Order.

51.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Eleventh

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of

Objection To Claim to be sent to the Claimants listed on Exhibit D is attached hereto as Exhibit

F.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-

1, A-2, B-1, B-2, and C is attached hereto as Exhibit G.  Claimants will receive a copy of this

Eleventh Omnibus Claims Objection without Exhibits A through D hereto.  Claimants will

nonetheless be able to review such exhibits free of charge by accessing the Debtors' Legal

22

Information Website (www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

52. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         March 16, 2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP

                                    By:   /s/ John Wm. Butler, Jr.
                                        John Wm. Butler, Jr. (JB 4711)
                                        John K. Lyons (JL 9331)
                                        Ron E. Meisler (RM 3026)
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606

                                        - and -

                                    By:   /s/ Kayalyn A. Marafioti
                                        Kayalyn A. Marafioti (KM 9632)
                                        Thomas J. Matz (TM 5986)
                                    Four Times Square
                                    New York, New York 10036

                                    Attorneys for Delphi Corporation, et al.,
                                        Debtors and Debtors-in-Possession