**Korten Quality Systems, LTD.**
P.O. Box 454
Romeo, MI 48065
Phone 586-752-6255
Fax 586-752-6370

RECEIVED
MAR 14 2007
USBC-SDNY
RDD

March 8, 2007


Honorable Robert D. Drain
United States Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
One Bowling Green, Room 610
New York, NY 10004

Dear Honorable Judge Drain:

I am filing a disagreement with the notice of objection (copy enclosed) as follows:

**Title of claims objection:** Notice of Objection to Claim, Delphi Corporation, et al., Chapter 11, Claim number 05-44481 (RDD)

**Name of claimant:** Korten Quality Systems, Ltd. (Korten)

**Description of basis for claim:** Korten provided local warehousing and distribution services for product manufactured in Shanghai, China and Saltillo, Mexico. Korten continues to provide these services presently. In addition, on an "as needed" basis, Korten provided sorting, inspection, washing and repackaging services.

**Reasons claim should not be disallowed:** Korten provided the services as indicated. Korten has a valid purchase orders for same. (copies enclosed). The attached spread sheet print outs show the dates and associated ASN numbers indicating shipment. Korten does not send paper invoices. Korten provided the services indicated, was paid for the services prior to the filing, and is being paid for the same services presently. If the reason for the objection is because the claim was filed under Delphi Corp. instead of Delphi Automotive Systems, LLC I included complete claims for both with this correspondence.

**Documentation:** Enclosed with this correspondence are the following:

1) A detailed listing in spread sheet format of all shipments evidencing services rendered with associated ASN numbers.
2) Copies of relevant purchase orders.
3) Completed claim forms for both Delphi Corp. et al. and Dephi Automotive Systems, LLC.
4) A copy of the Notice Of Objection To Claim

**Contingent Claim:** This is not a contingent claim.

**Mailing Address of Debtor:** The correct mailing address for the debtor is as follows:

U.S. Mail:

Korten Quality Systems, Ltd.
P.O. Box 454
Romeo, MI 48065

Physical Address for Courier Other Than U.S. Mail:

Korten Quality Systems, Ltd.
69210 Powell Road
Armada, MI 48005

If you need additional information, please contact me.

Sincerely,

William Scully, Controller

CC: Delphi Corporation Attn: General Counsel
Skadden, Arps, Slate, Meagher, and Flom, LLP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FEB 26 2007

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

NOTICE OF OBJECTION TO CLAIM

Korten Quality Systems Ltd:

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), are sending you this notice. According to the Debtors' records, you filed one or more proofs of claim in the Debtors' reorganization cases. Based upon the Debtors' review of your proof or proofs of claim, the Debtors have determined that one or more of your claims identified in the table below should be disallowed and expunged as summarized in that table and described in more detail in the Debtors' Ninth Omnibus Objection To Certain Claims (the "Ninth Omnibus Objection"), a copy of which is enclosed (without exhibits). The Debtors' Ninth Omnibus Objection is set for hearing on March 22, 2007 at 10:00 a.m. (prevailing Eastern time) before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. AS FURTHER DESCRIBED IN THE ENCLOSED NINTH OMNIBUS OBJECTION AND BELOW, THE DEADLINE FOR YOU TO RESPOND TO THE DEBTORS' OBJECTION TO YOUR CLAIM(S) IS 4:00 P.M. (PREVAILING EASTERN TIME) ON MARCH 15, 2007. IF YOU DO NOT RESPOND TIMELY IN THE MANNER DESCRIBED BELOW, THE ORDER GRANTING THE RELIEF REQUESTED MAY BE ENTERED WITHOUT ANY FURTHER NOTICE TO YOU OTHER THAN NOTICE OF ENTRY OF AN ORDER.

The enclosed Ninth Omnibus Objection identifies six different categories of objections. The category of claim objection applicable to you is identified in the table below in the column entitled "Basis For Objection":

> Claims identified as having a Basis For Objection of "Insufficiently Documented Claim" are those Claims that did not contain sufficient documentation in support of the Claim asserted, making it impossible for the Debtors meaningfully to review the asserted Claim.

> Claims identified as having a Basis For Objection of "Untimely Insufficiently Documented Claim" are those Claims that did not contain sufficient documentation in support of the Claim asserted, making it impossible for the Debtors meaningfully to review the asserted Claim, and also were not timely filed pursuant to the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, dated April 12, 2006 (Docket No. 3206) (the "Bar Date Order").

Claims identified as having a Basis For Objection of "Books and Records Claim" are those Claims that assert liabilities or dollar amounts that the Debtors have determined are not owing pursuant to the Debtors' books and records.

Claims identified as having a Basis For Objection of "Untimely Books and Records Claim" are those Claims that assert liabilities or dollar amounts that the Debtors have determined are not owing pursuant to the Debtors' books and records and were also not timely filed pursuant to the Bar Date Order.

Claims identified as having a Basis For Objection of "Untimely Claim" are those Claims were not timely filed pursuant to the Bar Date Order.

Claims identified as having a Basis For Objection of "Claims Subject to Modification" are those Claims for which (a) the Debtors have determined were overstated or were denominated in foreign currencies and the Debtors seek to modify to a fully liquidated, U.S.-denominated amount, and/or (b) the Debtors seek to appropriately re-classify the total amount of such remaining Claims, and/or (c) the Debtors seek to specify the appropriate Debtor by case number.

| Date Filed | Claim Number | Asserted Claim Amount[1] | Basis For Objection | Treatment Of Claim | | |
|---|---|---|---|---|---|---|
| | | | | Modified Debtor | Modified Amount | Modified Nature |
| 5/1/2006 | 3640 | $47,083.50 | Claims Subject to Modification | 05-44640 | $46,673.70 | General Unsecured |

If you wish to view the complete exhibits to the Ninth Omnibus Objection, you can do so on www.delphidocket.com. If you have any questions about this notice or the Ninth Omnibus Objection to your claim, please contact Debtors' counsel by e-mail at delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton). Questions regarding the amount of a claim or the filing of a claim should be directed to Claims Agent at 1-888-249-2691 or www.delphidocket.com. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

THE PROCEDURES SET FORTH IN THE ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 2002(m), 3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR HEARINGS REGARDING OBJECTIONS TO CLAIMS AND (II) CERTAIN NOTICES AND PROCEDURES GOVERNING OBJECTIONS TO CLAIMS, ENTERED DECEMBER 7, 2006 (THE "CLAIMS OBJECTION PROCEDURES ORDER"), ARE APPLICABLE TO YOUR PROOFS OF CLAIM THAT ARE SUBJECT TO OBJECTION BY THE DEBTORS PURSUANT TO THE OBJECTION SET FORTH ABOVE. A COPY OF THE CLAIMS OBJECTION PROCEDURES

[1] Asserted Claim Amounts listed as $0.00 generally reflect that the claim amount asserted is unliquidated or is denominated in a foreign currency.

ORDER IS INCLUDED HEREWITH. THE FOLLOWING SUMMARIZES THE PROVISIONS OF THAT ORDER BUT IS QUALIFIED IN ALL RESPECTS BY THE TERMS OF THAT ORDER.

If you disagree with the Ninth Omnibus Objection, you must file a response (the "Response") and serve it so that it is actually received by no later than 4:00 p.m. (Prevailing Eastern Time) on March 15, 2007. Your Response, if any, to the Ninth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Your Response, if any, must also contain at a minimum the following: (i) the title of the claims objection to which the Response is directed; (ii) the name of the claimant and a brief description of the basis for the amount of the claim; (iii) a concise statement setting forth the reasons why the claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which you will rely in opposing the claims objection; (iv) unless already set forth in the proof of claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that you need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that you must disclose to the Debtors all information and provide copies of all documents that you believe to be confidential, proprietary, or otherwise protected and upon which you intend to rely in support of the claim; (v) to the extent that the claim is contingent or fully or partially unliquidated, the amount that you believe would be the allowable amount of such claim upon liquidation of the claim or occurrence of the contingency, as appropriate; and (vi) the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

If you properly and timely file and serve a Response in accordance with the above procedures, and the Debtors are unable to reach a consensual resolution with you, the hearing on any such Response will automatically be adjourned from the March 22, 2007 hearing date to a future date to be set pursuant to the Claims Objection Procedures Order. With respect to all uncontested objections, the Debtors have requested that the Court conduct a final hearing on March 22, 2007 at 10:00 a.m. (prevailing Eastern time).

IF ANY PROOF OF CLAIM LISTED ABOVE ASSERTS CONTINGENT OR UNLIQUIDATED CLAIMS, YOU ARE REQUIRED BY THE CLAIMS OBJECTION PROCEDURES ORDER TO INCLUDE THE AMOUNT THAT YOU BELIEVE WOULD BE THE ALLOWABLE AMOUNT OF SUCH CLAIM UPON LIQUIDATION OF THE CLAIM OR OCCURRENCE OF THE CONTINGENCY, AS APPROPRIATE, IN ANY RESPONSE TO THE OBJECTION. PURSUANT TO THE CLAIMS OBJECTION PROCEDURES ORDER, THE DEBTORS MAY ELECT, IN THEIR SOLE DISCRETION, TO PROVISIONALLY ACCEPT SUCH AMOUNT AS THE ESTIMATED AMOUNT OF YOUR PROOF OF CLAIM PURSUANT TO SECTION 502(c) OF THE

BANKRUPTCY CODE FOR ALL PURPOSES OTHER THAN ALLOWANCE, BUT INCLUDING VOTING AND ESTABLISHING RESERVES FOR PURPOSES OF DISTRIBUTION. YOUR PROOF OF CLAIM WOULD REMAIN SUBJECT TO FURTHER OBJECTION AND REDUCTION, AS APPROPRIATE, AND TO SECTION 502(j) OF THE BANKRUPTCY CODE. THE DEBTORS' ELECTION WOULD BE MADE BY SERVING YOU WITH A NOTICE IN THE FORM ATTACHED TO THE CLAIMS OBJECTION PROCEDURES ORDER.

The Bankruptcy Court will consider only those Responses made as set forth herein and in accordance with the Claims Objection Procedures Order. If no Responses to the Ninth Omnibus Objection are timely filed and served in accordance with the procedures set forth herein and in the Claims Objection Procedures Order, the Bankruptcy Court may enter an order sustaining the Ninth Omnibus Objection without further notice other than notice of the entry of such an order as provided in the Claims Objection Procedures Order. Thus, your failure to respond may forever bar you from sustaining a claim against the Debtors.

KORTEN QUALITY SYSTEMS LTD
ACCOUNTS PAYABLE
PO BOX 454
ROMEO MI 48065

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | Amount |
|---|---|---|---|
| 3/4/2005 | KQS1029130 | 129420 | $ 43.20 |
| 3/31/2005 | KQS1029379 | 129848 | $ 216.00 |
| 8/12/2005 | KQS1031812 | 132513 | $ 11.10 |
| 8/19/2005 | KQS1031996 | 132677 | $ 216.00 |
| 8/31/2005 | KQS1032138 | 132911 | $ 334.80 |
| 9/1/2005 | KQS1032080 | 132936 | $ 12.00 |
| 9/1/2005 | KQS1032324 | 132915 | $ 216.00 |
| 9/1/2005 | KQS1032325 | 132916 | $ 410.40 |
| 9/1/2005 | KQS1032326 | 132937 | $ 216.00 |
| 9/1/2005 | KQS1032327 | 132939 | $ 410.40 |
| 9/1/2005 | KQS1032328 | 132941 | $ 216.00 |
| 9/2/2005 | KQS1032329 | 132942 | $ 216.00 |
| 9/2/2005 | KQS1032330 | 132945 | $ 410.40 |
| 9/2/2005 | KQS1032331 | 132956 | $ 216.00 |
| 9/2/2005 | KQS1032332 | 132960 | $ 410.40 |
| 9/2/2005 | KQS1032333 | 132965 | $ 216.00 |
| 9/6/2005 | KQS1032334 | 132968 | $ 216.00 |
| 9/6/2005 | KQS1032335 | 132971 | $ 410.40 |
| 9/6/2005 | KQS1032336 | 132985 | $ 216.00 |
| 9/6/2005 | KQS1032337 | 132989 | $ 216.00 |
| 9/6/2005 | KQS1032338 | 132990 | $ 410.40 |
| 9/6/2005 | KQS1032339 | 132991 | $ 205.20 |
| 9/6/2005 | KQS1032340 | 132998 | $ 216.00 |
| 9/7/2005 | KQS1032323 | 133022 | $ 129.60 |
| 9/7/2005 | KQS1032341 | 132999 | $ 216.00 |
| 9/7/2005 | KQS1032342 | 133000 | $ 410.40 |
| 9/7/2005 | KQS1032343 | 133009 | $ 216.00 |
| 9/7/2005 | KQS1032344 | 133010 | $ 216.00 |
| 9/7/2005 | KQS1032345 | 133019 | $ 410.40 |
| 9/7/2005 | KQS1032346 | 133020 | $ 216.00 |
| 9/7/2005 | KQS1032347 | 133030 | $ 216.00 |
| 9/8/2005 | KQS1032348 | 133032 | $ 216.00 |
| 9/8/2005 | KQS1032349 | 133033 | $ 410.40 |
| 9/8/2005 | KQS1032350 | 133047 | $ 216.00 |
| 9/8/2005 | KQS1032351 | 133060 | $ 410.40 |
| 9/8/2005 | KQS1032352 | 133061 | $ 216.00 |
| 9/8/2005 | KQS1032353 | 133062 | $ 216.00 |
| 9/9/2005 | KQS1032354 | 133067 | $ 410.40 |
| 9/9/2005 | KQS1032355 | 133068 | $ 216.00 |
| 9/9/2005 | KQS1032356 | 133078 | $ 216.00 |
| 9/9/2005 | KQS1032357 | 133086 | $ 216.00 |
| 9/9/2005 | KQS1032358 | 133091 | $ 410.40 |
| 9/12/2005 | KQS1032359 | 133093 | $ 216.00 |

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | Amount |
|---|---|---|---|
| 9/12/2005 | KQS1032360 | 133094 | $ 410.40 |
| 9/12/2005 | KQS1032361 | 133105 | $ 216.00 |
| 9/12/2005 | KQS1032362 | 133120 | $ 216.00 |
| 9/12/2005 | KQS1032363 | 133123 | $ 410.40 |
| 9/12/2005 | KQS1032364 | 133127 | $ 216.00 |
| 9/13/2005 | KQS1032365 | 133128 | $ 216.00 |
| 9/13/2005 | KQS1032366 | 133129 | $ 410.40 |
| 9/13/2005 | KQS1032367 | 133143 | $ 216.00 |
| 9/13/2005 | KQS1032368 | 133149 | $ 410.40 |
| 9/13/2005 | KQS1032369 | 133152 | $ 216.00 |
| 9/13/2005 | KQS1032750 | 133156 | $ 216.00 |
| 9/14/2005 | KQS1032370 | 133155 | $ 150.60 |
| 9/14/2005 | KQS1032371 | 133159 | $ 216.00 |
| 9/14/2005 | KQS1032372 | 133170 | $ 216.00 |
| 9/14/2005 | KQS1032373 | 133178 | $ 410.40 |
| 9/14/2005 | KQS1032374 | 133184 | $ 216.00 |
| 9/14/2005 | KQS1032375 | 133186 | $ 216.00 |
| 9/15/2005 | KQS1032376 | 133187 | $ 216.00 |
| 9/15/2005 | KQS1032377 | 133188 | $ 410.40 |
| 9/15/2005 | KQS1032378 | 133196 | $ 216.00 |
| 9/15/2005 | KQS1032379 | 133208 | $ 410.40 |
| 9/15/2005 | KQS1032380 | 133213 | $ 410.40 |
| 9/15/2005 | KQS1032381 | 133218 | $ 216.00 |
| 9/15/2005 | KQS1032382 | 133227 | $ 216.00 |
| 9/16/2005 | KQS1032383 | 133228 | $ 216.00 |
| 9/16/2005 | KQS1032384 | 133233 | $ 410.40 |
| 9/16/2005 | KQS1032507 | 133239 | $ 216.00 |
| 9/16/2005 | KQS1032508 | 133244 | $ 410.40 |
| 9/16/2005 | KQS1032509 | 133246 | $ 216.00 |
| 9/19/2005 | KQS1032510 | 133248 | $ 216.00 |
| 9/19/2005 | KQS1032511 | 133253 | $ 410.40 |
| 9/19/2005 | KQS1032512 | 133266 | $ 216.00 |
| 9/19/2005 | KQS1032513 | 133270 | $ 410.40 |
| 9/19/2005 | KQS1032514 | 133272 | $ 410.40 |
| 9/19/2005 | KQS1032515 | 133274 | $ 216.00 |
| 9/19/2005 | KQS1032516 | 133275 | $ 216.00 |
| 9/20/2005 | KQS1032517 | 133278 | $ 216.00 |
| 9/20/2005 | KQS1032518 | 133279 | $ 410.40 |
| 9/20/2005 | KQS1032519 | 133290 | $ 216.00 |
| 9/20/2005 | KQS1032520 | 133296 | $ 410.40 |
| 9/20/2005 | KQS1032521 | 133300 | $ 216.00 |
| 9/20/2005 | KQS1032522 | 133301 | $ 216.00 |
| 9/21/2005 | KQS1032523 | 133303 | $ 216.00 |
| 9/21/2005 | KQS1032524 | 133305 | $ 410.40 |

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | | Amount |
|---|---|---|---|---|
| 9/21/2005 | KQS1032525 | 133317 | $ | 216.00 |
| 9/21/2005 | KQS1032526 | 133323 | $ | 216.00 |
| 9/21/2005 | KQS1032527 | 133327 | $ | 410.40 |
| 9/21/2005 | KQS1032529 | 133332 | $ | 216.00 |
| 9/21/2005 | KQS1032530 | 133334 | $ | 216.00 |
| 9/22/2005 | KQS1032531 | 133340 | $ | 410.40 |
| 9/22/2005 | KQS1032532 | 133341 | $ | 216.00 |
| 9/22/2005 | KQS1032533 | 133349 | $ | 216.00 |
| 9/22/2005 | KQS1032534 | 133354 | $ | 216.00 |
| 9/22/2005 | KQS1032535 | 133355 | $ | 410.40 |
| 9/22/2005 | KQS1032536 | 133356 | $ | 216.00 |
| 9/22/2005 | KQS1032537 | 133358 | $ | 216.00 |
| 9/23/2005 | KQS1032538 | 133360 | $ | 410.40 |
| 9/23/2005 | KQS1032539 | 133362 | $ | 216.00 |
| 9/23/2005 | KQS1032540 | 133374 | $ | 216.00 |
| 9/23/2005 | KQS1032541 | 133379 | $ | 410.40 |
| 9/23/2005 | KQS1032542 | 133384 | $ | 216.00 |
| 9/23/2005 | KQS1032543 | 133386 | $ | 108.00 |
| 9/26/2005 | KQS1032544 | 133388 | $ | 216.00 |
| 9/26/2005 | KQS1032545 | 133393 | $ | 410.40 |
| 9/26/2005 | KQS1032546 | 133400 | $ | 216.00 |
| 9/26/2005 | KQS1032547 | 133406 | $ | 216.00 |
| 9/26/2005 | KQS1032548 | 133409 | $ | 410.40 |
| 9/26/2005 | KQS1032549 | 133410 | $ | 410.40 |
| 9/26/2005 | KQS1032550 | 133413 | $ | 216.00 |
| 9/26/2005 | KQS1032551 | 133414 | $ | 216.00 |
| 9/27/2005 | KQS1032552 | 133416 | $ | 205.20 |
| 9/27/2005 | KQS1032553 | 133418 | $ | 410.40 |
| 9/27/2005 | KQS1032554 | 133426 | $ | 216.00 |
| 9/27/2005 | KQS1032555 | 133434 | $ | 216.00 |
| 9/27/2005 | KQS1032556 | 133437 | $ | 410.40 |
| 9/27/2005 | KQS1032557 | 133438 | $ | 108.00 |
| 9/27/2005 | KQS1032558 | 133439 | $ | 216.00 |
| 9/27/2005 | KQS1032559 | 133441 | $ | 216.00 |
| 9/28/2005 | KQS1032560 | 133443 | $ | 216.00 |
| 9/28/2005 | KQS1032561 | 133446 | $ | 10.80 |
| 9/28/2005 | KQS1032562 | 133447 | $ | 410.40 |
| 9/28/2005 | KQS1032563 | 133454 | $ | 216.00 |
| 9/28/2005 | KQS1032564 | 133461 | $ | 216.00 |
| 9/28/2005 | KQS1032565 | 133465 | $ | 216.00 |
| 9/29/2005 | KQS1032566 | 133467 | $ | 216.00 |
| 9/29/2005 | KQS1032567 | 133469 | $ | 410.40 |
| 9/29/2005 | KQS1032687 | 133482 | $ | 216.00 |
| 9/29/2005 | KQS1032688 | 133490 | $ | 216.00 |

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | | Amount |
|---|---|---|---|---|
| 9/29/2005 | KQS1032689 | 133491 | $ | 410.40 |
| 9/29/2005 | KQS1032691 | 133495 | $ | 216.00 |
| 9/29/2005 | KQS1032692 | 133496 | $ | 216.00 |
| 9/30/2005 | KQS1032662 | 133510 | $ | 216.00 |
| 9/30/2005 | KQS1032690 | 133493 | $ | 410.40 |
| 9/30/2005 | KQS1032693 | 133497 | $ | 216.00 |
| 9/30/2005 | KQS1032694 | 133519 | $ | 410.40 |
| 9/30/2005 | KQS1032695 | 133525 | $ | 118.80 |
| 9/30/2005 | KQS1032696 | 133527 | $ | 216.00 |
| 10/3/2005 | KQS1032756 | 133528 | $ | 410.40 |
| 10/3/2005 | KQS1032757 | 133530 | $ | 216.00 |
| 10/3/2005 | KQS1032758 | 133540 | $ | 216.00 |
| 10/3/2005 | KQS1032759 | 133551 | $ | 410.40 |
| 10/3/2005 | KQS1032760 | 133552 | $ | 216.00 |
| 10/3/2005 | KQS1032761 | 133549 | $ | 108.00 |
| 10/3/2005 | KQS1032762 | 133554 | $ | 216.00 |
| 10/3/2005 | KQS1032763 | 133555 | $ | 216.00 |
| 10/4/2005 | KQS1032764 | 133556 | $ | 216.00 |
| 10/4/2005 | KQS1032765 | 133560 | $ | 410.40 |
| 10/4/2005 | KQS1032766 | 133570 | $ | 216.00 |
| 10/4/2005 | KQS1032767 | 133577 | $ | 216.00 |
| 10/4/2005 | KQS1032768 | 133579 | $ | 410.40 |
| 10/4/2005 | KQS1032769 | 133582 | $ | 216.00 |
| 10/4/2005 | KQS1032770 | 133584 | $ | 302.40 |
| 10/4/2005 | KQS1032771 | 133586 | $ | 216.00 |
| 10/5/2005 | KQS1032772 | 133587 | $ | 216.00 |
| 10/5/2005 | KQS1032773 | 133588 | $ | 410.40 |
| 10/5/2005 | KQS1032774 | 133601 | $ | 216.00 |
| 10/5/2005 | KQS1032775 | 133609 | $ | 410.40 |
| 10/5/2005 | KQS1032776 | 133610 | $ | 216.00 |
| 10/5/2005 | KQS1032778 | 133624 | $ | 216.00 |
| 10/6/2005 | KQS1032779 | 133627 | $ | 216.00 |
| 10/6/2005 | KQS1032780 | 133629 | $ | 410.40 |
| 10/6/2005 | KQS1032781 | 133641 | $ | 216.00 |
| 10/6/2005 | KQS1032744 | 133644 | $ | 216.00 |
| 10/6/2005 | KQS1032782 | 133645 | $ | 410.40 |
| 10/6/2005 | KQS1032783 | 133646 | $ | 216.00 |
| 10/6/2005 | KQS1032784 | 133648 | $ | 216.00 |
| 10/7/2005 | KQS1032785 | 133652 | $ | 216.00 |
| 10/7/2005 | KQS1032786 | 133653 | $ | 410.40 |
| 10/7/2005 | KQS1032787 | 133662 | $ | 216.00 |
| 10/7/2005 | KQS1032788 | 133665 | $ | 10.80 |
| 10/7/2005 | KQS1032789 | 133668 | $ | 410.40 |
| 10/7/2005 | KQS1032790 | 133671 | $ | 216.00 |

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | Amount |
|---|---|---|---|
| 10/7/2005 | KQS1032791 | 133676 | $ 216.00 |
| 10/7/2005 | KQS1032789 | 133668 | $ 145.80 |
| 12/16/2003 | KQS1021642 | 122066 | $ 24.00 |
| 12/19/2003 | KQS1021683 | 122122 | $ 60.75 |
| 12/22/2003 | KQS1021825 | 122145 | $ 24.00 |
| 1/6/2004 | KQS1021956 | 122198 | $ 24.00 |
| 1/7/2004 | KQS1021958 | 122217 | $ 24.00 |
| 1/8/2004 | KQS1021960 | 122232 | $ 24.00 |
| 1/12/2004 | KQS1021962 | 122266 | $ 72.00 |
| 1/14/2004 | KQS1021964 | 122294 | $ 48.00 |
| 1/15/2004 | KQS1021966 | 122321 | $ 24.00 |
| 1/20/2004 | KQS1022040 | 122355 | $ 22.50 |
| 1/21/2004 | KQS1022043 | 122360 | $ 48.00 |
| 2/10/2004 | KQS1022345 | 122670 | $ 24.75 |
| 2/23/2004 | KQS1022382 | 122822 | $ 70.50 |
| 2/25/2004 | KQS1022502 | 122868 | $ 97.50 |
| 2/26/2004 | KQS1022504 | 122895 | $ 72.00 |
| 3/1/2004 | KQS1022796 | 122940 | $ 49.50 |
| 3/3/2004 | KQS1022797 | 122970 | $ 70.50 |
| 3/5/2004 | KQS1022799 | 123014 | $ 72.00 |
| 3/15/2004 | KQS1022889 | 123153 | $ 48.00 |
| 3/31/2004 | KQS1023070 | 123444 | $ 48.75 |
| 6/3/2004 | KQS1024282 | 124500 | $ 48.00 |
| 6/29/2004 | KQS1024541 | 124941 | $ 48.75 |
| 7/2/2004 | KQS1024703 | 125019 | $ 72.00 |
| 7/21/2004 | KQS1024924 | 125169 | $ 48.00 |
| 7/27/2004 | KQS1024932 | 125252 | $ 48.00 |
| 7/28/2004 | KQS1024936 | 125283 | $ 48.00 |
| 8/4/2004 | KQS1025623 | 125391 | $ 72.00 |
| 8/10/2004 | KQS1025633 | 125505 | $ 48.00 |
| 10/7/2004 | KQS1026388 | 126692 | $ 24.00 |
| 1/31/2005 | KQS1028368 | 128859 | $ 22.40 |
| 3/31/2005 | KQS1029317 | 129840 | $ 22.40 |
| 4/7/2005 | KQS1029511 | 129998 | $ 44.80 |
| 4/8/2005 | KQS1029512 | 130018 | $ 38.50 |
| 4/13/2005 | KQS1029517 | 130109 | $ 44.10 |
| 4/14/2005 | KQS1029965 | 130131 | $ 46.20 |
| 4/15/2005 | KQS1029784 | 130163 | $ 23.80 |
| 4/20/2005 | KQS1029788 | 130229 | $ 42.00 |
| 4/21/2005 | KQS1029790 | 130256 | $ 44.80 |
| 4/26/2005 | KQS1029798 | 130331 | $ 46.20 |
| 4/29/2005 | KQS1029870 | 130413 | $ 65.80 |
| 5/4/2005 | KQS1030109 | 130499 | $ 44.80 |
| 5/9/2005 | KQS1030116 | 130618 | $ 43.40 |

Korten Quality Systems, Ltd.
Delphi Bankruptcy Claim
10/8/2005

| Service Date | Invoice Number | ASN Number | Amount |
|---|---|---|---|
| 5/11/2005 | KQS1030119 | 130670 | $ 43.40 |
| 5/16/2005 | KQS1030233 | 130759 | $ 48.30 |
| 5/18/2005 | KQS1030285 | 130806 | $ 44.80 |
| 5/19/2005 | KQS1030468 | 130629 | $ 23.10 |
| 5/23/2005 | KQS1030474 | 130892 | $ 44.10 |
| 5/24/2005 | KQS1030477 | 130909 | $ 20.30 |
| 5/25/2005 | KQS1030480 | 130944 | $ 22.40 |
| 5/26/2005 | KQS1030483 | 130971 | $ 22.40 |
| 6/2/2005 | KQS1030687 | 131057 | $ 44.80 |
| 6/8/2005 | KQS1030690 | 131188 | $ 44.80 |
| 6/9/2005 | KQS1030691 | 131222 | $ 22.40 |
| 6/13/2005 | KQS1030692 | 131283 | $ 22.40 |
| 6/21/2005 | KQS1030926 | 131432 | $ 22.40 |
| 6/23/2005 | KQS1030939 | 131489 | $ 21.70 |
| 6/28/2005 | KQS1031060 | 131572 | $ 22.40 |
| 7/1/2005 | KQS1031264 | 131656 | $ 22.40 |
| 7/18/2005 | KQS1031283 | 131758 | $ 44.80 |
| 7/21/2005 | KQS1031287 | 132046 | $ 22.40 |
| 7/26/2005 | KQS1031465 | 132126 | $ 22.40 |
| 8/2/2005 | KQS1031633 | 132271 | $ 43.40 |
| 8/4/2005 | KQS1031637 | 132340 | $ 22.40 |
| 8/8/2005 | KQS1031828 | 132423 | $ 23.80 |
| 8/11/2005 | KQS1031834 | 132505 | $ 20.30 |
| 8/12/2005 | KQS1031835 | 132533 | $ 22.40 |
| 8/16/2005 | KQS1031844 | 132593 | $ 22.40 |
| 8/18/2005 | KQS1031848 | 132636 | $ 22.40 |
| 8/23/2005 | KQS1031982 | 132733 | $ 44.80 |
| 8/25/2005 | KQS1031938 | 132786 | $ 22.40 |
| 8/26/2005 | KQS1032033 | 132813 | $ 22.40 |
| 9/6/2005 | KQS1032275 | 132980 | $ 49.70 |
| 9/8/2005 | KQS1032282 | 133054 | $ 16.80 |
| 9/12/2005 | KQS1032289 | 133109 | $ 22.40 |
| 9/13/2005 | KQS1032292 | 133148 | $ 22.40 |
| 9/15/2005 | KQS1032296 | 133204 | $ 22.40 |
| 9/19/2005 | KQS1032697 | 133264 | $ 22.40 |
| 9/22/2005 | KQS1032707 | 133353 | $ 22.40 |
| 9/26/2005 | KQS1032710 | 133402 | $ 22.40 |
| 9/27/2005 | KQS1032716 | 133427 | $ 22.40 |
| 9/29/2005 | KQS1032753 | 133483 | $ 22.40 |
| 10/3/2005 | KQS1032794 | 133547 | $ 22.40 |
| 10/4/2005 | KQS1032795 | 133573 | $ 22.40 |
| 10/6/2005 | KQS1032796 | 133636 | $ 22.40 |
| 10/7/2005 | KQS1032952 | 133721 | $ 44.80 |
| | | TOTAL CLAIM | $ 50,224.30 |

FORM B10 (Official Form 10) (04/05)

UNITED STATES BANKRUPTCY COURT Southern DISTRICT OF New York

# PROOF OF CLAIM

Name of Debtor Delphi Automotive Systems, LLC

Case Number 05-44640 05-44481

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Korten Quality Systems Ltd.

Name and address where notices should be sent:
Korten Quality Systems
PO Box 454
Romeo MI 48065

Telephone number: 586-752-6255

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:______

**1. Basis for Claim**

- ☒ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☐ Personal Injury
- ☐ Other ______
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

Last four digits of SS #: ______
Unpaid compensation for services performed
from ______ (date) to ______ (date)

**2. Date debt was incurred:** 3.1.05-10.11.05

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 50224.30 (unsecured) ______ (secured) ______ (priority) ______ (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other______

Value of Collateral: $______

Amount of arrearage and other charges at time case filed included in secured claim, if any: $______

**6. Unsecured Nonpriority Claim** $50224.30

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**

☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $______
Specify the priority of the claim:

- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.*

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Date 4.26.06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): [signature] Leann L Kaeding

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**FORM B10** (Official Form 10) (04/04)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## — DEFINITIONS —

***Debtor***

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

***Creditor***

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

***Proof of Claim***

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

***Secured Claim***

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

***Unsecured Claim***

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

***Unsecured Priority Claim***

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**

Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**

Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**

Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**

Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**

If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**

Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**

Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Nonpriority Claim:**

Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

**7. Unsecured Priority Claim:**

Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**

By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**

You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

FORM B10 (Official Form 10) (04/05)

UNITED STATES BANKRUPTCY COURT Southern DISTRICT OF New York

# PROOF OF CLAIM

Name of Debtor: Delphi Corporation

Case Number: 05-44640 & 05-44481

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property): Korten Quality Systems, Ltd.

Name and address where notices should be sent:
Korten Quality Systems
PO BOX 454
Romeo MI 48065
Telephone number: (586) 752-6255

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:__________

**1. Basis for Claim**
- ☒ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☐ Personal Injury
- ☐ Other ____________
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: ______
  Unpaid compensation for services performed
  from ____________ to ____________
  (date) (date)

**2. Date debt was incurred:** 3.1.05 - 10.11.05

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 50224.30 (unsecured) ________ (secured) ________ (priority) ________ (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other________

Value of Collateral: $____________

Amount of arrearage and other charges at time case filed included in secured claim, if any: $____________

**6. Unsecured Nonpriority Claim** $50224.30

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $__________
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.*

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

Date: 4.26.06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): [signature] Leann L Kaeding

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**FORM B10** (Official Form 10) (04/04)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## —— DEFINITIONS ——

***Debtor***

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

***Creditor***

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

***Proof of Claim***

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

***Secured Claim***

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

***Unsecured Claim***

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

***Unsecured Priority Claim***

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**
Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

**7. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
ROCHESTER OPERATIONS
P.O. BOX 92700
ROCHESTER NY
14692-8800 US

SHIP TO:
DELPHI ENERGY&CHASSIS SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
2509 HAYES AVENUE
SANDUSKY OH
44870 US

# PURCHASE ORDER



SAS58906 002

### A L T E R A T I O N ###

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 87-800-0652
KORTEN QUALITY SYSTEMS
69210 POWELL RD
ARMADA MI
48005

INVOICE TO:
DO NOT SEND INVOICES TO NAO DISBURSEMENT CENTER. OUR RECEIPT INITIATES PAYMENT. SPECIAL INVOICE INSTRUCTIONS MAY BE NOTED ON ORDER.
US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYER'S AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | 11/07/03 |
|---|---|
| ALTERATION ISSUE DATE | 10/14/04 |
| ALTERATION EFFECTIVE DATE | 10/14/04 |

PHONE: 585-647-4651
R WILLIAMS
BUYER: VN
PURCHASING AGENT

| PAYMENT TERMS | F.O.B. / DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | S/P FREIGHT COLLECT | DELPHI E&EM CALL 800-805-9433 |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER | DATE REQUIRED | TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|
| | | | ### SPOT BUY SAS58906 HAS BEEN ALTERED AS FOLLOWS ### | | | | | |
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | | | |
| | | | ADDED LINE ITEM. | | | | | |
| | | | ### THIS ITEM HAS BEEN ADDED ### | | | | | |
| 00003 | 14285 | PR210332 001 | WASH AND DRY TRAYS FOR FORD DUNNAGE P/N 930710<br>FORD NUMBER F5DP-7C190-AB<br>WHO ORDERED: R. KUHARICK BX22 | 12/31/05 | C 0.00% | 0.7000 | | EA |

0005073 USER M.(PEGGY) L LEWIS

SUPPLIER

CONTINUE PAGE 2

# PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE
Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to to this contract (such documents are collectively referred to as this Contract.) Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this contract, Seller will be deemed to have accepted this contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

2. SHIPPING AND BILLING
2.1 Shipping. Seller will (a) properly pack, mark and, ship goods as instructed by buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this contract, (d) provide packing slips with each shipment that identify Buyer's contract and/or release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.
2.2 Billing. Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the the absence of any liens, encumbrances and claims on such goods or services.
2.3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's delivery schedules. If Buyer determines that the requirements of Buyer's customers or market, economic or other conditions require changes in deliver schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.
2.4 Premium Shipments. If seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium(more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery schedules, in which case Buyer will pay any costs for premium shipment.

3. SPECIFICATION, DESIGN AND SCOPE CHANGES
Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs of modifications to Seller's Equipment and Facilities (as defined in Article 16) Necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Seller's cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

4. QUALITY AND INSPECTION
Seller will participate in Buyer's supplier quality and development program(s) and comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) inspect Seller's books and records in order to monitor Seller's compliance with this Contract and Seller's financial condition and (ii) enter Seller's facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

5. NON-CONFORMING GOODS
Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyer's rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Seller's expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyer's payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

6. FORCE MAJEURE
If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such party's fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times buyer requests and at the prices set forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

7. WARRANTY
7.1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for non-conforming goods.
7.2 Date and Time Processing. Seller warrants and guarantees to Buyer and its customers that any products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.
7.3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

8. INGREDIENTS AND HAZARDOUS MATERIALS
If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

9. INSOLVENCY OF SELLER
Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

10. TERMINATION FOR BREACH
Buyer my terminate all or any part of this contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract; or (c) fails to assure timely and proper completion of services or delivery of goods.

11. TERMINATION FOR CONVENIENCE
In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Sellers standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, With sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

12. TECHNICAL INFORMATION
12.1 Exchange of information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyer's drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.
12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may here-after disclose in connection with the goods or services covered by this Contract.
12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.
12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, microcode, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing the Contract (separately or as a part of any goods and components) are "works made for hire" and the sole property of Buyer. To the extent that all right, title and interest in any intellectual property rights in such works authorship.

13. INDEMNIFICATION
13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that such infringement arose out of compliance with Buyer's specifications.
13.2 Activities on Buyer's Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or wilful misconduct of Buyer or Buyer's customer.
13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than seller.

14. COMPLIANCE WITH LAWS
Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyer's request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from the Seller's noncompliance with this Article.

15. INSURANCE
Seller will maintain insurance coverage as required by applicable law or reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Seller's obligations or liabilities under this Contract.

16. SELLER'S EQUIPMENT
Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract (Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Seller's Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Seller's Equipment. The option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Seller's right to exercise this option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract.

17. BUYER'S PROPERTY
17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part (Buyer's Property), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyer's property (such as tooling), Seller will purchase and pay for such Buyer's Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyer's Property (such as tooling) without separate or additional payment or reimbursement by Seller. Seller acknowledges and agrees that Buyer's issuance of this Contract is good and sufficient consideration for such Buyer's Property and that title to such Buyer's property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyer's property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyer's property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyer's ownership of Buyer's property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment or incorporation into Buyer's property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's property for work performed on such property or otherwise. Goods manufactured based on Buyer's drawings and/or specifications may not be used for Seller's own use or sold to third parties without Buyer's express written authorization.
17.2 Seller's Duties with Respect to Buyer's Property. While Buyer's property is in Seller's possession and until Seller delivers Buyer's property back to Buyer, Seller bears the risk of loss and damage to Buyer's property. Seller will be responsible for the cost of repairing or replacing Buyer's property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyer's Property at Seller's own expense, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's property to be personal property, (d) conspicuously mark Buyer's property as the property of Buyer and maintain such markings, (e) not commingle Buyer's property with the property of Seller or with that of a third person, (f) not move Buyer's Property from Seller's premises without Buyer's written approval, and (g) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto.
17.3 Return of Buyer's property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyer's property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Seller's premises and take possession of any and all of Buyer's Property. Upon Buyer's request and in accordance with Buyer's instructions, Buyer's Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Seller's plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyer's Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyer's Property to the location Buyer designates. If Seller does not release and deliver any Buyer's Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Seller's premises, with or without legal process, and take immediate possession of Buyer's Property.
17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits, or any other indirect, special or consequential damages.
17.5 Development, Engineering and Consulting Services. Engineering, consulting or development services ('Development Services') funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property ('IP') shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services (Developed IP) to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

18. SERVICE AND REPLACEMENT PARTS
During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its customers service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the Post-Production Period), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities.

19. REMEDIES
The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

20. CUSTOMS AND EXPORT CONTROLS
Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to the Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

21. SETOFF AND RECOVERY
With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against and sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates.

22. NO ADVERTISING
Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials unless Buyer consents in writing.

23. NO IMPLIED WAIVER
The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract.

24. ASSIGNMENT
Buyer may assign its rights and obligations under this Contract without Seller's prior written consent. Seller may not assign or delegate its rights or obligations under this contract without Buyer's prior written consent.

25. RELATIONSHIP OF PARTIES
Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

26. GOVERNING LAW AND JURISDICTION
This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

27. SEVERABILITY
If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order of rule, and the remaining provisions of this Contract will remain in full force and effect.

28. RIGHT TO AUDIT
Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Seller has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Seller's performance of the Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

29. ENTIRE AGREEMENT
This Contract, together with the attachments, exhibits, supplements or other terms of buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by the Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and his Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

DELPHI Energy & Chassis Systems



**Buyer:**
DELPHI AUTOMOTIVE SYSTEMS LLC
DELPHI ENERGY & CHASSIS DIV
5820 DELPHI DR
TROY MI 48098

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

**Deliver to:**

***Please deliver to:***
***See Delivery Schedule***

**REPRINT**
**OF REQUIREMENT CONTRACT**

KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

Vendor No: 1014321
DUNS No: 878000652

Payment Terms: Z7N2 Currency: USD

Payment settled on 2nd, 2nd Month

Incoterms: FOB Free on Board

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00010 | 18078047-10<br>DRUM BRAKE ASM - RR, 295 X 60 | HP01 DELPHI E & C PASS BY SALES |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 23-Jan-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00020 | 18078048-10<br>DRUM BRAKE ASM - RR, 295 X 60 | HP01 DELPHI E & C PASS BY SALES |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 23-Jan-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00040 | 18085135-10<br>OBS DRUM BRK R44998 12/05 RB 18087718-10 | HP01 DELPHI E & C PASS BY SALES |

Purchasing Contact: DeVilbiss, Rick
Phone: 937-455-7824
Fax: 937-455-9133

Contact Address:
DELPHI ENERGY & CHASSIS SYSTEMS
2000 FORRER BLVD.
KETTERING OH 45420

Date and Time Printed: 30-Nov-2006 10:00:01

DELPHI Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

**Item No. / Material No. / Description / Plant**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Jun-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00030 18085143-10 HP01 DELPHI E & C PASS BY SALES
OBS DRUM BRK R4499B 12/05 RB 18087716-10

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Jun-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00050 18086412-10 HP01 DELPHI E & C PASS BY SALES
OBS DRUM BRK R4561B 12/05 RB 18088012-10

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Jun-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00080 18087716-10 HP01 DELPHI E & C PASS BY SALES
DRUM BRAKE ASM - RR, 295 X 60

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 07-Jan-2005 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00070 18087718-10 HP01 DELPHI E & C PASS BY SALES
DRUM BRAKE ASM - RR, 295 X 60

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 07-Jan-2005 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00060 18088012-10 HP01 DELPHI E & C PASS BY SALES
DRUM BRAKE ASM - RR, 295 X 60

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 07-Jan-2005 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |

**DELPHI** Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

**Item No. Material No. Description Plant**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**00090 18088014-10 HP01 DELPHI E & C PASS BY SALES**
**DRUM BRAKE ASM - RR, 295 X 60**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 07-Jan-2005 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**00100 18089920-10 HP01 DELPHI E & C PASS BY SALES**
**DRUM BRAKE ASM - RR, 295 X 60**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Aug-2005 | 10-Sep-2006 | USD | 150.00 | 1,000 | PC |
| 11-Sep-2006 | 31-Dec-2006 | USD | 157.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 157.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**00110 18089922-10 HP01 DELPHI E & C PASS BY SALES**
**DRUM BRAKE ASM - RR, 295 X 60**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Aug-2005 | 10-Sep-2006 | USD | 150.00 | 1,000 | PC |
| 11-Sep-2006 | 31-Dec-2006 | USD | 157.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 157.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**00120 18090032-10 HP01 DELPHI E & C PASS BY SALES**
**DRUM BRAKE ASM - RR, 295 X 60**

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 01-Aug-2005 | 10-Sep-2006 | USD | 150.00 | 1,000 | PC |
| 11-Sep-2006 | 31-Dec-2006 | USD | 157.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 157.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**00180 18093662-10 HP01 DELPHI E & C PASS BY SALES**
**DRUM BRAKE ASM - RR, 295 X 60**

DELPHI Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

Item No. | Material No. / Description | Plant

***THIS AMENDMENT CHANGES PRICE***

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 08-Jun-2006 | 10-Sep-2006 | USD | 150.00 | 1,000 | PC |
| 11-Sep-2006 | 31-Dec-2006 | USD | 157.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 157.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

00170 18093833-10 HP01 DELPHI E & C PASS BY SALES
DRUM BRAKE ASM - RR, 295 X 60

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 08-Jun-2006 | 10-Sep-2006 | USD | 150.00 | 1,000 | PC |
| 11-Sep-2006 | 31-Dec-2006 | USD | 157.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 157.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

*****************************************************************
*****************************************************************

As of its effective date, this purchase order constitutes a new agreement between the Buyer and Seller and supersedes and replaces any prior purchase orders or other agreements between the Buyer and Seller with respect to the subject matter hereof. For the avoidance of doubt, the purchase order number assigned hereto by the Buyer is utilized for administrative convenience only and this purchase order shall not be deemed an amendment to or modification of any prior purchase orders issued by Buyer and accepted by Seller, even if such prior purchase orders were assigned an identical purchase order number by the Buyer. Each of the Buyer and the Seller acknowledges and agrees that any prior purchase orders or other agreements between the Buyer and Seller, which are superseded and replaced by this purchase order as of its effective date shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the Seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders or other agreements. To the extent that any prior purchase orders or other agreements between the Buyer and Seller with respect to the subject matter hereof also provided for the supply of other goods or services by the Seller to the Buyer, such prior agreements shall be superseded and replaced only with respect to the subject matter hereof and all other provisions of such prior purchase orders or other agreements shall remain in full force and effect in accordance with their terms. Historical pricing shown on this new purchase order, if any, is shown for reference only.

*****************************************************************

This Contract replaces previous contract # --.
********************

********************
As a supplier to Delphi Energy & Chassis you must use a Delphi approved transportation provider when Delphi is paying the bill. If you require assistance or routing instructions please contact Menlo Worldwide Logistics at 800-805-9433 or 810-341-0096. Failure to follow these instructions could result in a charge back to your company.

DELPHI Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

| Item No. | Material No. Description | Plant |
|---|---|---|

**Notes Continued**

********************

********************
Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Supplier Community Portal / Supplier Standards, for additional information.
********************

******************************************************************
Seller acknowledges and agrees that Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions and Delphi Customer Specific Requirements . If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions and Delphi Customer Specific Requirements in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions and and Delphi Customer Specific Requirements ) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.
******************************************************************

********************
Title to goods shall transfer from seller to buyer upon arrival at buyer's consuming plant.
********************

********************
1.
Consignee agrees to maintain perpetual inventory records and retain records for at least 2 years.
2.
Consignee agrees to submit and reconcile an up-to-date as of the end of the month inventory status (on Delphi Energy and Chassis Form 409F1) monthly to the designated Delphi Chassis PC&L contact by the third working day of each month for prior month.
3.
Consignee agrees to segregate Delphi Energy and Chassis' material and provide adequate protection for Delphi Energy Chassis' inventory.
4.
Consignee agrees to accept responsibility for inventory losses.
5.

DELPHI

Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

**Item No. | Material No. | Description | Plant**

**Notes Continued**

Consignee agrees to accept responsibility for scrap incurred by the Consignee.
6.
Consignee agrees to allow Delphi Energy and Chassis PC&L and Finance Representatives the right to audit inventories as requested.
7.
Consignee agrees to receive any materials from other suppliers used in the consignment situation. Consignee agrees to complete a receiving report-off site form 409F2. Upon receipt of material from another Delphi Energy and Chassis Supplier, the Consignee must audit all receipts for correct part numbers and quantity. In addition, the Consignee must weigh or physically count minimum of one receipt per Vendor/Consignor per month. Any quantity discrepancies must be reported on the receiving report-off site form 409F2 and the PC&L contact should be notified immediately. After completing the receiving report-off site form 409F2, the Consignee will fax a copy of form 409F2 to the PC&L contact the same day. The consignee must attach all freight bills and bills of lading to the original copy of the receiving report-off site form 409F2 and mail to the PC&L contact in the applicable plant based on PC&L requirements. The Consignee will maintain a copy of the packing slip and receiving report-off site form 409F2 for 2 years.
8.
Consignee agrees to provide a once/year certified (Notarized) inventory letter for the Delphi Energy and Chassis Physical Inventory. Type "A" Consignee inventory must be observed by Delphi Energy and Chassis personnel. Date for both inventory options to be determined by plant PC&L and communicated by Finance.
9.
Consignee agrees to provide a completed 409F1 Form as the inventory date of the respective Delphi Energy and Chassis plant communicated in Note 1, Section 8.
10.Tools provided by Delphi for performance of an operation by Consignee remain the property of Delphi Chassis unless otherwise noted.
11.Consignee agrees to ship material directly to Delphi Energy and Chassis' Customers if the physical flow warrants. (See Plant WI on shipping ).
12.Additional terms and conditions subject to negotiations.
13. Processor/Subcontractor returns all scrap material generated by the process to Delphi Energy and Chassis as part number originally received on Form 409F4 "Material Returned as Scrap from Outside Locations" unless otherwise instructed by plant PC&L contact
14. For non-conforming material from Delphi Energy and Chassis, the processor/subcontractor will contact the PC&L coordinator and the material should be returned to Delphi Energy and Chassis on a shipper stating the reason for return unless directed otherwise by the PC&L contact.
********************

06/14/04 - Alteration to add Material No. 18085143-10 (Item 30) and 18085135-10 (Item 40). meb

06/30/04 - Alteration to add Material 18086412-10 (Item 50). dmp

10/18/04 - Alteration to extend Requirements Contract. cap

01/19/05 - Alteration to add Material Nos. 18088012-10 (Item 60), 18087718-10 (Item 70), 18087716-10 (Item 80) and 18088014-10 (Item 90).

08/05/05 - Alteration to extend REQUIREMENTS CONTRACT and add Material 18089920-10 (Item 100), 18089922-10 (Item 110), and 18090032-10 (Item 120). dmp

06/09/06 - Alteration to add Material 18093663 (Item 130) and 18093834 (Item 140). dmp

06/14/06 - Alteration to delete Material 18093665 (Item 130) and 18093834 (Item 140) and add Material 18093833 (Item 150) and 18093662 (Item 160). dmp

06/28/06 - Alteration to change validity on Material 18093662 (Item 160) and 18093833 (Item 150). dmp

DELPHI Energy & Chassis Systems



KORTEN QUALITY SYSTEMS, LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550051419
Version
30-Nov-2006 10:00:01

Date Issued
27-Jan-2004

| Item No. | Material No. / Description | Plant |
|---|---|---|

**Notes (continued)**

06/29/06 - Alteration to delete Material 18093662 (Item 160) and 18093833 (Item 150) and add Material 18093833-10 (Item 170) and 18093662-10 (Item 180). dmp

09/28/06 - Alteration to change price on Material Nos. 18089920-10 (Item 100), 18089922-10 (Item 110), and 18090032-10 (Item 120). jtw

10/14/06 - Alteration to change price on Material No. 18093833-10 (Itmc 170). mt

11/16/06 - Alteration to change price on Material No. 18093833-10 (Item 170). jtw

11/27/06 - Alteration to change price on Material No. 18093833-10 (Item 170). mt

11/29/06 - Alteration to change price on Material No
18093662-10
(Item 180). mt

DELPHI Energy & Chassis Systems



**Buyer:**
DELPHI AUTOMOTIVE SYSTEMS LLC
DELPHI ENERGY & CHASSIS DIV
5820 DELPHI DR
TROY MI 48098

## Requirements Contract

PO Number
550053028
Version
22-Sep-2006 07:21:28

Date Issued
04-Mar-2004

**Deliver to:**

***Please deliver to:***
***See Delivery Schedule***

KORTEN QUALITY SYSTEMS LTD
P.O. Box 454
ROMEO MI 48065

Vendor No: 1014321
DUNS No: 878000652

**Payment Terms:** ZMN2 **Currency:** USD

Payment settled on 2nd, 2nd Month

**Incoterms:** FOB- Freight Collect

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00020 | 18085238<br>DRUM - BRAKE, 295 DIA X 60 | HU01 DELPHI E & C SALTILLO |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 17-Jun-2004 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00030 | 18089231<br>DRUM - BRAKE, 295 DIA X 60 | HU01 DELPHI E & C SALTILLO |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 20-Jul-2005 | 31-Dec-2006 | USD | 150.00 | 1,000 | PC |
| 01-Jan-2007 | 31-Dec-2007 | USD | 150.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

Notes:

Purchasing Contact: DeVilbiss, Rick
Phone: 937-455-7824
Fax: 937-455-9133

Contact Address:
DELPHI ENERGY & CHASSIS SYSTEMS
2000 FORRER BLVD,
KETTERING OH 45420

Date and Time Printed: 22-Sep-2006 07:21:28

DELPHI Energy & Chassis Systems



KORTEN QUALITY SYSTEMS LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550053028
Version
22-Sep-2006 07:21:28

Date Issued
04-Mar-2004

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:

****************************************************************
****************************************************************

As of its effective date, this purchase order constitutes a new agreement between the Buyer and Seller and supersedes and replaces any prior purchase orders or other agreements between the Buyer and Seller with respect to the subject matter hereof. For the avoidance of doubt, the purchase order number assigned hereto by the Buyer is utilized for administrative convenience only and this purchase order shall not be deemed an amendment to or modification of any prior purchase orders issued by Buyer and accepted by Seller, even if such prior purchase orders were assigned an identical purchase order number by the Buyer. Each of the Buyer and the Seller acknowledges and agrees that any prior purchase orders or other agreements between the Buyer and Seller, which are superseded and replaced by this purchase order as of its effective date shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the Seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders or other agreements. To the extent that any prior purchase orders or other agreements between the Buyer and Seller with respect to the subject matter hereof also provided for the supply of other goods or services by the Seller to the Buyer, such prior agreements shall be superseded and replaced only with respect to the subject matter hereof and all other provisions of such prior purchase orders or other agreements shall remain in full force and effect in accordance with their terms. Historical pricing shown on this new purchase order, if any, is shown for reference only.

**********************************************************************************************************************

This Contract replaces previous contract # --.
********************

********************
As a supplier to Delphi Energy & Chassis you must use a Delphi approved transportation provider when Delphi is paying the bill. If you require assistance or routing instructions please contact Menlo Worldwide Logistics at 800-805-9433 or 810-341-0096. Failure to follow these instructions could result in a charge back to your company.

********************

********************
Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Supplier Community Portal / Supplier Standards, for additional information.
********************
****************************************************************
Seller acknowledges and agrees that Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions and Delphi Customer Specific Requirements . If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions and Delphi Customer Specific Requirements in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract

KORTEN QUALITY SYSTEMS LTD
P.O. Box 454
ROMEO MI 48065

**Requirements Contract**

PO Number
550053028
Version
22-Sep-2006 07:21:28

Date Issued
04-Mar-2004

| Item No. | Material No. Description | Plant |
|---|---|---|

**Notes Continued:**

(including Buyer's General Terms and Conditions and and Delphi Customer Specific Requirements ) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.
*************************************************************

********************
Title to goods shall transfer from seller to buyer upon arrival at buyer's consuming plant.
********************

********************
1.
Consignee agrees to maintain perpetual inventory records and retain records for at least 2 years.
2.
Consignee agrees to submit and reconcile an up-to-date as of the end of the month inventory status (on Delphi Energy and Chassis Form 409F1) monthly to the designated Delphi Chassis PC&L contact by the third working day of each month for prior month.
3.
Consignee agrees to segregate Delphi Energy and Chassis' material and provide adequate protection for Delphi Energy Chassis' inventory.
4.
Consignee agrees to accept responsibility for inventory losses.
5.
Consignee agrees to accept responsibility for scrap incurred by the Consignee.
6.
Consignee agrees to allow Delphi Energy and Chassis PC&L and Finance Representatives the right to audit inventories as requested.
7.
Consignee agrees to receive any materials from other suppliers used in the consignment situation. Consignee agrees to complete a receiving report-off site form 409F2. Upon receipt of material from another Delphi Energy and Chassis Supplier, the Consignee must audit all receipts for correct part numbers and quantity. In addition, the Consignee must weigh or physically count minimum of one receipt per Vendor/Consignor per month. Any quantity discrepancies must be reported on the receiving report-off site form 409F2 and the PC&L contact should be notified immediately. After completing the receiving report-off site form 409F2, the Consignee will fax a copy of form 409F2 to the PC&L contact the same day. The consignee must attach all freight bills and bills of lading to the original copy of the receiving report-off site form 409F2 and mail to the PC&L contact in the applicable plant based on PC&L requirements. The Consignee will maintain a copy of the packing slip and receiving report-off site form 409F2 for 2 years.
8.
Consignee agrees to provide a once/year certified (Notarized) inventory letter for the Delphi Energy and Chassis Physical Inventory. Type "A" Consignee inventory must be observed by Delphi Energy and Chassis personnel. Date for both inventory options to be determined by plant PC&L and communicated by Finance.
9.
Consignee agrees to provide a completed 409F1 Form as the inventory date of the respective Delphi Energy and Chassis plant communicated in Note 1, Section 8.
10.Tools provided by Delphi for performance of an operation by Consignee remain the property of Delphi Chassis unless otherwise noted.
11.Consignee agrees to ship material directly to Delphi Energy and Chassis' Customers if the physical flow warrants. (See Plant WI on shipping ).
12.Additional terms and conditions subject to negotiations.
13. Processor/Subcontractor returns all scrap material generated by the process to Delphi Energy and Chassis as part number originally received on Form 409F4 "Material Returned as Scrap from Outside Locations" unless otherwise instructed by plant PC&L contact
14. For non-conforming material from Delphi Energy and Chassis, the processor/subcontractor will contact the PC&L coordinator and the material should be returned to Delphi Energy and Chassis on a shipper stating the reason for return unless directed otherwise by the PC&L contact.
********************
06/17/04 - Alteration to delete Material 18078046 (Item 10) and add Material 18085238 (Item 20). dmp

DELPHI

Energy & Chassis Systems



KORTEN QUALITY SYSTEMS LTD
P.O. Box 454
ROMEO MI 48065

## Requirements Contract

PO Number
550053028

Date Issued
04-Mar-2004

Version
22-Sep-2006 07:21:28

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:

10/18/04 - Alteration to extend Requirements Contract on Material 18085238 (Item 20). cap

07/26/05 - Alteration to add Material 18089231 (Item 30). dmp

09/30/05 - Alteration to extend Material Nos. 18085238 (Item 20) and 18089231 (Item 30). jtw

08/17/06 - Alteration to extend materials 18085238 (item 20) and 18089231 (item 30). lmw