Thomas M. Kennedy (TK-0993)          **Omnibus Scheduled Hearing Date:**
Susan Jennik (SJ-4607)                    **March 22, 2007 10:00 am**
Larry Magarik (LM-3748)
**KENNEDY, JENNIK & MURRAY, P.C.**
113 University Place
New York, NY  10003
(212) 358-1500

Attorneys for International Union of Electronic,
Electrical, Salaried, Machine and Furniture Workers,
Communications Workers of America (IUE-CWA)

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| In re DELPHI CORPORATION, *et al.,* | ) | |
| | ) | **05-44481 (RDD)** |
| Debtors. | ) | **(Jointly Administered)** |

### OBJECTION BY IUE-CWA TO
### SECOND SUPPLEMENTAL KECP MOTION

The International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-

Communications Workers of America ("IUE-CWA"), a labor union representing thousands of active

and retired hourly employees of Delphi Corporation, *et al.* ("Debtor" or "Delphi"), hereby objects

to Debtor's Second Supplemental Key Employee Compensation Program Motion ("Third KECP

Motion") to extend the Annual Incentive Plan ("AIP") program through the first  half of 2007.

Implementation of the proposed AIP for the first half of 2007 as it is currently proposed would

prolong and complicate the collective bargaining negotiations in which the Debtor is engaged with

IUE-CWA and other unions, as well as the 11 U.S.C. §§ 1113 and 1114 processes.

Debtors have repeatedly described this proceeding as a labor transformation case. Debtors entered Chapter 11 for the primary purpose of securing the cooperation and agreement of its 34,000 represented workers and their unions to drastically cut these workers' wages and benefits. The negotiations to achieve the labor changes Delphi is seeking are now at their most critical phase. To cloud those negotiations with another payout of millions of dollars in bonuses to salaried personnel – who in many cases will soon be excessed any way – is inappropriate and disruptive.

It is also worth noting that it is now almost one half of the way through the first half of 2007. Delphi seeks to ratify performance targets with half of the results already in and the rest easily projected. Given the long order lead time in the automotive industry, there is very little or no doubt that the performance targets set forth in this edition of the KERP will again be met. This is like putting down a bet on a horse race at the top of the stretch when most of the race is won. It can have little impact on the race contestants and is rather a gratuitous addition to the purse that will have no incentive impact.

The Motion should be denied or deferred until the conclusion of this Chapter 11 proceeding.

### Standard

The proposed Third KECP Motion should not be approved unless the Court finds that it is "necessary or appropriate to carry out the provisions" of Chapter 11 under 11 U.S.C. § 105(a). Additionally, since the proposed KECP expenditure, is admittedly outside the "ordinary course of business," the Court may not approve it without an evidentiary hearing and findings of fact under 11 U.S.C. § 363(b)(1). The burden of proof is upon the Debtor to demonstrate "good business justification" that the KECP is "necessary to aid the reorganization." **In re Lionel Corp.**, 722 F.2d 1063, 1070 (2d Cir. 1983); **In re Ionosphere Clubs, Inc.**, 100 BR 670, 675 (Bankr. SDNY 1989).

Additionally, Debtor must actually demonstrate good faith in the proposed transaction, **In re M Capital Corp.**, 290 BR 743, 747 (9th Cir. BAP 2003), *cf.* **In re Adams Apple, Inc.**, 829 F.2d 1484 (9th Cir. 1987), particularly here where the proposed compensation package is directed toward insiders and would amount to self-dealing, **The Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.**, 147 BR 650, 657 (Bankr. SDNY 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (business judgment rule incorporates question of whether proposal is "tainted by self-dealing or manipulation").

Additionally, "Implicit in the grant of authority of 11 U.S.C. § 363(b)(1) . . . is the further requirement that the . . . debtor . . . justify the proposed transaction with sound business reasons in order to satisfy the estate representative's fiduciary duty to the debtor, creditor, and equity holders. Thus, . . . a bankruptcy judge must expressly find from the evidence presented at the hearing a sound business reason justifying the proposed transaction." Bassano, Joseph M., *et al.*, 9B **Am.Jur.2d Bankruptcy** § 1539 (August 2005) and cases cited therein. The Court of Appeals in **In re Lionel Corporation**, *supra* at 1071, rejected a proposed distribution and held that a bankruptcy judge must "expressly find from the evidence presented before him at the hearing a good business reason to grant such an application." **Lionel** held that the critical factor is the impact on a plan of reorganization, and reiterated that the burden of proof is on the debtor in such an application. The District Court in **In re Integrated Resources**, 147 BR 650, 657 (Bankr. SDNY 1992), explained that a Court should itself assess the merits and fairness of a business transaction such as this one involving a management proposal in which the corporation's executives have direct financial interests. In the context of proposed payments to the top corporate insiders, "good faith" is a

-3-

necessary element of inquiry, 2C **Bankr. Service L.Ed** (September 2005) § 20:119 and cases cited

therein; **In re Gucci**, 126 F.3d 380, 390 (2d Cir. 1997).

Finally, "[i]t is well settled that bankruptcy courts are courts of equity, empowered to invoke

equitable principles to achieve fairness and justice in the reorganization process." **In re Momentum**

**Mfg. Corp.**, 25 F.3d 1132, 1135 (2d Cir. 1994); Norton, William L., 1 **Norton Bankr. L. & Prac.**

**2d** § 4:5 (July 2005); **In re Charles & Lillian Brown's Hotel Inc.**, 93 BR 49, 54 (Bankr. SDNY

1988); **In re Amarex Inc.**, 30 BR 763, 767 (Bankr. W.D. Okla. 1983) (Bankruptcy Court is a court

of equity which may, in its discretion, deny even that relief which is within its power to grant based

on equitable principles.)

The Third KECP Motion does not meet these standards and should be denied or deferred for

the following reasons:

## Objections

1. **Approval of the Third KECP Motion Will Complicate Successful Collective Bargaining**
   **with Debtor's Workers' Unions and Hinder Creation of a Viable Reorganization Plan.**

Approval of an AIP which offers 467 top executives millions of dollars in bonus money for

hitting easily obtainable operating income targets will reduce the incentive of the remaining Delphi

union-represented workers to reach a negotiated compromise and interfere with the Unions having

any reasonable chance to negotiate modifications in their collective bargaining agreements with

Debtor. To this point the attrition programs that have been negotiated by the Unions have not been

subject to employee ratification votes because they were voluntary programs that did not amend

existing collective bargaining contracts. In the current round of collective bargaining, Delphi seeks

to modify existing contracts to drastically lower wages and benefits. Any agreement the Unions

-4-

reach on those terms will be expressly subject to membership ratification.  Granting the Motion will antagonize these workers, destroy their morale, turn them against any meaningful concessions, and thwart the very 11 U.S.C. §§ 1113 process on which Debtor focuses the Chapter 11 proceeding.  The Motion will, therefore, not aid, but defeat the possibility of a reorganization plan.

For just this reason, the Court denied a similar motion in **In re Geneva Steel Company**, 236 BR 770 (Bankr. D. Utah 1999).  In **Geneva**, as here, Debtor did not consult with any of its Unions while formulating a retention program for a small group of top executives, *id.* at 773, n.4.  In denying the Motion, the Court stated in terms ringingly applicable here:

> While there is evidence that retention of the key employees is critical to Geneva's survival, there is also evidence that granting the Motion as prayed may jeopardize the continuing support of the Steelworkers in Geneva's reorganization process.  Indeed, evidence was presented that some plumbers and electricians have already left Geneva's employment.  The court views the support and participation of the Steelworkers as being equally critical to Geneva's successful reorganization as the support and participation of the key employees.  The tension created by these opposing interests creates a significant dilemma for the court.  To deny the Motion in full increases the risk that Geneva's management team may be lost or further reduced.  However, to grant the Motion in full risks alienating the Steelworkers and their support of Geneva's efforts to reorganize.  In an effort to fashion a compromise between these competing interests, the court will comment on the relative merits of the proposed retention program and invite Geneva to renew its Motion if it so desires.

*Id.* at 773.

Without a successful § 1113 process, there can be no effective reorganization plan, so the Motion must be denied.  The prerequisite for approving such a Motion is a finding that it would "help develop a reorganization plan," **In re Bethlehem Steel Corp.**, ___ F.Supp.2d ___, 2003 WL 21738964 at *11 (SDNY 2003), which is impossible here.  In **Bethlehem Steel**, the Court approved

financial professionals' fees so the unions could intelligently bargain and participate in discussions concerning the restructuring of the debtor, including negotiations regarding possible modifications to their existing labor and benefits agreements. Here, however, Debtor seeks approval for an act that will not help develop a reorganization plan because the proposed expensive compensation increases for its key executives will prejudice meaningful negotiations with the unions.

**2.      The Motion Should Be Deferred to the End of Chapter 11 Proceeding.**

The Motion, which seeks to reward executives for carrying through a successful Chapter 11 reorganization, should be denied or deferred to the end of the Chapter 11 proceeding. Pegging these bonuses to easily reached targets turns this program into a simple KERP retention plan in which executives are rewarded for the mere act of breathing. A successful conclusion to the Chapter 11 process is the logical prerequisite for a bonus or reward. That is especially true now when the Debtor has stated it expects to exit the Chapter 11 proceeding in 2007. Bonuses under the proposed first half 2007 AIP would not be paid until the second half of 2007 in any event. There is no need to further compensate these executives in 2007 when they plan to be out of Chapter 11 in 2007 and can set their own compensation programs in accord with their reasonable business judgment at that time. The court in **In re US Airways Inc.**, 329 BR 793, 801 (Bankr. E.D. Va. 2005) refused to approve a program for key executives prior to confirmation of a merger plan, and only approved a bonus program for lower-level management employees after collective bargaining negotiations under § 1113 were successfully completed.

-6-

**3.    The Motion is Neither Necessary, Appropriate Nor Sound Business Judgment, But is
Arbitrary and Unreasonable.**

The Motion is neither necessary, appropriate nor the exercise of sound business judgment.

Rather, it is selfish, arbitrary and unreasonable.  The shortsightedness of the original KECP Motion

was given eloquent expression in a timely article, Morgenson, Gretchen, "Oohs and Ahs At Delphi's

Circus," *New York Times Sunday Business*, November 13, 2005, Section 3, pp. 1 and 4, 2005 WLNR

18334017, which began as follows:

> It's not every day that investors can view the contortions
> performed by compensation consultants trying to justify the monster
> executive pay packages that they recommend to corporate clients.
> And when these exercises in absurdity are done for executives asking
> for great sacrifices from workers, retirees, creditors and former
> shareholders because they manage a company in Chapter 11
> bankruptcy protection, the entertainment is unmatched.

Any claim of "business necessity" for this disguised KERP is belied by the actual history of

executive retention programs, as detailed by Keach, Robert J., "The Case Against KERPs,"

**American Bankruptcy Institute 2003 Annual Spring Meeting**, 041003 ABI-CLE 9 (2003).  The

empirical evidence establishes that there is no evidence that executive retention programs actually

result in the retention of employees who would otherwise leave, while there is considerable evidence

to the contrary.  These programs do not work better than cheaper alternatives and are often

unnecessary.  They are upside down, because in fact the senior-most executives are the <u>most</u>

replaceable.  Executive retention programs have a negative impact on employee morale, and breed

a lack of faith in and lack of respect for the bankruptcy system, the study found.

In short, the Third KECP Motion is unreasonable and aimed at feathering the nests of Debtor's key insiders. The bottom-line question is why Debtor's top executives should not face the same choice and same risks as are being posed to all of Debtor's other employees.

### Conclusion

For the foregoing reasons, the Motion should be denied or deferred until the completion of the Chapter 11 proceeding.

**Dated: New York, New York
March 19, 2007**

> **Respectfully submitted,
> KENNEDY, JENNIK & MURRAY, P.C.
> Attorneys for IUE-CWA**
>
> **Thomas M. Kennedy (TK-0993)
> Susan M. Jennik (SJ-4607)
> Larry Magarik (LM-3748)
> 113 University Place
> New York, NY 10003
> (212) 358-1500**

## AFFIDAVIT OF SERVICE

State of New York  )

) ss.:

County of New York  )

Joan Esposito, being duly sworn, deposes and says that: I am not a party to the action, am

over 18 years of age, and reside in Kings County, New York. On March 19, 2007, I served the

within Objection by IUE-CWA to Second Supplemental KECP Motion by mailing a copy via

overnight mail to the following:

Robert J. Rosenberg, Esq.
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, New York 10022-4834

Alicia Leonhard, Esq.
U.S. Department of Justice
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004-2111

Kayalan A. Marafioti, Esq.
Thomas J. Matz, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
4 Times Square
New York, New York 10036

Delphi Corporation
c/o Sean Corcoran and Karen Craft
5725 Delphi Drive
Troy, MI 48098-2815

John W. Butler, Jr.
John K. Lyons
Ron E. Meisler
Nick D. Campanario
Skadden, Arps, Slate, Meagher & Flom, LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

Jessica Kastin
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Bruce H. Simon, Esq.
Cohen, Weiss & Simon
330 West 42nd Street
New York, NY 10036

Jeffrey L. Tanenbaum
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

JOAN ESPOSITO

Sworn to before me this
19th day of March, 2007.

Notary Public

THOMAS M. MURRAY
NOTARY PUBLIC, STATE OF NEW YORK
No. 02MU6058040
QUALIFIED IN NEW YORK COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES APRIL 30, 2007