# Exhibit A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------------x
            :
            :

| | | |
|---|---|---|
| IN RE: DELPHI CORPORATION | : | MDL No. 1725 |
| SECURITIES, DERIVATIVE & "ERISA" | : | Master Case No. 05-md-1725 |
| LITIGATION | : | Hon. Gerald E. Rosen |
| | : | |
| | : | This Document Relates to: |
| | : | In Re: Delphi Corp. Securities Litig. |
| | : | No. 06-10026 |
| | : | |

------------------------------------------------------------x     ORAL ARGUMENT REQUESTED

## MOTION OF CERTAIN DEFENDANTS FOR RECONSIDERATION OF THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY

        Defendants Delphi Corporation, Donald S. Runkle, John D. Sheehan, Robert H. Brust, Thomas H. Wyman, Oscar de Paula Bernardes Neto, John D. Opie, Cynthia A. Niekamp, Susan A.  McLaughlin, Roger S. Penske, Patricia C. Sueltz, Virgis W. Colbert, David N. Farr, Shoichiro Irimajiri, Bernd Gottschalk, Delphi Trust I, and Delphi Trust II, through their undersigned attorneys, move for reconsideration of the Court's order lifting the PSLRA discovery stay, pursuant to Local Rule 7.1(g)(3) of the United States District Court for the Eastern District of Michigan.  This motion is based upon the following: Memorandum of Law of Certain Defendants in Support of Their Motion for Reconsideration of the Court's Order Lifting the PSLRA Discovery Stay; the Declaration of Joseph E. Papelian dated March 2, 2007; and the arguments of counsel herein.  The undersigned attorneys conferred with counsel for plaintiffs and explained the nature of this motion and requested concurrence on the relief sought but did not obtain such concurrence.

Dated:  March 2, 2007

Respectfully submitted,

SHEARMAN & STERLING LLP

By: s/ Stuart J. Baskin
    Stuart J. Baskin
    Brian H. Polovoy
    Marc D. Ashley
599 Lexington Avenue
New York, New York  10022-6069
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
sbaskin@shearman.com

Joseph E. Papelian (P26582)
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098-2815
Telephone:  (248) 813-2535
Facsimile:  (248) 813-3251
joseph.e.papelian@delphi.com

*Attorneys for Defendants Delphi
Corporation, Donald S. Runkle, John D.
Sheehan, Robert H. Brust, Thomas H.
Wyman, Oscar de Paula Bernardes Neto,
John D. Opie, Cynthia A. Niekamp, Susan A.
McLaughlin, Roger S. Penske, Patricia C.
Sueltz, Virgis W. Colbert, David N. Farr,
Shoichiro Irimajiri, Bernd Gottschalk,
Delphi Trust I, and Delphi Trust II*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

-------------------------------------------------------------x
   :
   :    MDL No. 1725
IN RE: DELPHI CORPORATION   :    Master Case No. 05-md-1725
SECURITIES, DERIVATIVE & "ERISA"   :    Hon. Gerald E. Rosen
LITIGATION   :
   :    This Document Relates to:
   :    In Re: Delphi Corp. Securities Litig.
   :    No. 06-10026
   :
-------------------------------------------------------------x    ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW OF CERTAIN DEFENDANTS
## IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF
## THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY

Stuart J. Baskin           Joseph E. Papelian (P26582)
Brian H. Polovoy          Delphi Corporation
Marc D. Ashley            5725 Delphi Drive
SHEARMAN & STERLING LLP    Troy, Michigan  48098-2815
599 Lexington Avenue       Telephone:  (248) 813-2535
New York, New York  10022-6069   Facsimile:  (248) 813-3251
Telephone:  (212) 848-4000    joseph.e.papelian@delphi.com
Facsimile:  (212) 848-7179
sbaskin@shearman.com

*Attorneys for Defendants Delphi Corporation,*
*Donald S. Runkle, John D. Sheehan, Robert H. Brust,*
*Thomas H. Wyman, Oscar de Paula Bernardes Neto,*
*John D. Opie, Cynthia A. Niekamp,*
*Susan A. McLaughlin, Roger S. Penske,*
*Patricia C. Sueltz, Virgis W. Colbert, David N. Farr,*
*Shoichiro Irimajiri, Bernd Gottschalk,*
*Delphi Trust I, and Delphi Trust II*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

CONCISE STATEMENT OF ISSUES PRESENTED................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..................................................... iv

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ........................................................ 3

LEGAL STANDARD.................................................................................................................... 5

ARGUMENT................................................................................................................................. 6

      I.     THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT LEAD
           PLAINTIFFS ADEQUATELY DEMONSTRATED "UNDUE PREJUDICE".... 6

      II.    IF NOT RECONSIDERED, THE ORDER SHOULD BE CLARIFIED SO
           THAT LEAD PLAINTIFFS DO NOT RECEIVE DOCUMENTS THAT
           WERE NOT SPECIFICALLY REVIEWED AND PRODUCED TO THE
           SEC ................................................................................................................. 11

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES                                                                    Page

DirecTV v. Karpinsky, 274 F. Supp. 2d 918 (E.D. Mich. 2003)..................................5, 6

In re FirstEnergy Corp. Sec. Litig., 229 F.R.D. 541 (N.D. Ohio 2004) .........................9

Flanagan v. Shamo, 111 F. Supp. 2d 892 (E.D. Mich. 2000).......................................5, 6

Ford Motor Co. v. Greatdomains.Com, Inc., 177 F. Supp. 2d 628 (E.D. Mich. 2001) ...................5

McDowell v. Dynamics Corp. of America, 931 F.2d 380 (6th Cir. 1991) .....................................6

Newby v. Enron Corporation, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002).........................6, 7

In re Refco, Inc. Sec. Litig., No. 05-CV-8626, 2006 WL 2337212
        (S.D.N.Y. Aug. 8, 2006) .......................................................................... *passim*

Singer v. Nicor, Inc., No. 02-CV-5168, 2003 WL 22013905
        (N.D. Ill. Apr. 23, 2003) .........................................................................7

In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2006 WL 1738078
        (S.D.N.Y. June 26, 2006)........................................................................9

Trustees of the Flint Area Sheet Metal Workers Health and Welfare Fund v. C3
        Mechanical, Inc., 450 F. Supp. 2d 762 (E.D. Mich. 2006)................................................6

In re WorldCom, Inc. Securities Litigation, 234 F. Supp. 2d 301
        (S.D.N.Y. 2002)................................................................................... *passim*

## RULES

E.D. Mich. LR 7.1(g)(3) ...............................................................................................5

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.      Should this Court reconsider its ruling granting Lead Plaintiffs' motion to modify the PSLRA discovery stay because Lead Plaintiffs did not adequately demonstrate "undue prejudice"?

      Answer:  "Yes"

2.      Should this Court, if not reconsidering its ruling in its entirety, clarify its ruling to deny Lead Plaintiffs access to documents that were never specifically reviewed and produced to third-parties?

      Answer:  "Yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>In re Refco, Inc. Securities Litigation</u>, No. 05 Civ. 8626 (GEL), 2006 WL 2337212
(S.D.N.Y. Aug. 8, 2006)

Defendants Delphi Corporation ("Delphi" or the "Company"), Donald S. Runkle, John D. Sheehan, Robert H. Brust, Thomas H. Wyman, Oscar de Paula Bernardes Neto, John D. Opie, Cynthia A. Niekamp, Susan A. McLaughlin, Roger S. Penske, Patricia C. Sueltz, Virgis W. Colbert, David N. Farr, Shoichiro Irimajiri, Bernd Gottschalk, Delphi Trust I, and Delphi Trust II respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's February 15, 2007 order granting Lead Plaintiffs' motion to modify the PSLRA discovery stay (the "Order") (Dkt. No. 198).

Defendants request oral argument on this motion.

## PRELIMINARY STATEMENT

The Court's Order modifying the PSLRA's statutory discovery stay represents a departure from law which continues to develop that limits the "exceptional circumstances" in which the PSLRA stay is lifted.  It could cause Delphi, a Chapter 11 debtor against whom the case is stayed, to incur extraordinary legal fees to review millions of pages of documents --- most of which have nothing to do with the claims here and which have not been produced to any party in Delphi's bankruptcy proceedings.

We respectfully request that the Court reconsider its Order in light of additional factual information and a case decided after briefing was completed.  As the Court recognized, Lead Plaintiffs' requested relief is not necessary to preserve evidence.  The Court should reconsider Lead Plaintiffs' argument that the Southern District of New York's decision in WorldCom supports a finding that Lead Plaintiffs would suffer "undue prejudice" absent relief from the stay.  In fact, after briefing on the motion in this Court was completed, the Southern District of New York refused to extend WorldCom to cases such as the one here.  In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006).  Refco is on all fours with this case:  the plaintiffs there --- who were represented by the same Lead

Counsel as here and who made the same arguments in both courts --- similarly sought to lift the

PSLRA discovery stay to obtain documents that defendants (including the debtor) produced to

the SEC, the Official Committee of Unsecured Creditors, and in an internal investigation.  The

court rejected plaintiffs' counsel's (verbatim) plea that, absent relief, the securities plaintiffs

would be "the only major interested party in the . . . proceedings . . . without access to documents

that currently form the core of those proceedings."  The court held that the extraordinary finding

of "undue prejudice" in <u>WorldCom</u> was *not* based on the fact that the documents had already

been produced to other parties or that there were various settlement discussions, but solely

"resulted from the fact that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had

been *ordered* to prepare for coordinated settlement discussions," a situation not present in <u>Refco</u>

or here.  <u>Refco</u>, 2006 WL 2337212 at *3 (emphasis added).  Lead Plaintiffs did not bring <u>Refco</u>

to the Court's attention when they submitted further briefing on this issue on November 28,

2006.

        The Court should also reconsider its decision because it is apparently based on the

erroneous assumption that Lead Plaintiffs are "losing ground" in light of settlements connected

with the SEC investigation and Delphi's bankruptcy proceedings.  Although Delphi settled with

the SEC, that settlement involved no monetary payment.  The other defendants making this

motion were not even named in the SEC complaint.  The other proceeding referenced in the

Order --- a request by the Official Committee of Unsecured Creditors ("UCC") for authority to

file a lawsuit --- made plain that the UCC's purpose was "not actually to file the Complaint at

th[at] time" (indeed, the Complaint was never filed), but rather solely "to ensure that the

Committee . . . has a seat at the table in the negotiations  . . . between the Debtors and *GM* with

respect to GM's contributions to, and claims in respect of, the Debtors' 'transformation.'"

Because the UCC did not file its complaint --- and GM is not a defendant in this case --- the UCC's motion cannot create "undue prejudice" to plaintiffs.  In any event, settlement has not even been broached with the plaintiffs in the related ERISA action here, and there is certainly no court-ordered coordinated settlement discussions of the <u>WorldCom</u> variety.  Lead Plaintiffs face no "undue prejudice."

If the Court does not reconsider its ruling, we ask the Court to clarify the Order to state that Lead Plaintiffs are not entitled to documents collected pursuant to Delphi's internal investigation that have not been produced to the SEC or that have not been specifically identified as relating to the SEC's investigation or the claims in this action.  The Order arguably allows Lead Plaintiffs to obtain a tremendous volume of documents that were merely swept up by Delphi's internal investigation but deemed unresponsive as part of that investigation.  The vast majority of these documents has nothing to do with the claims in this action, which is reason enough that a debtor should not have to review or produce them.  In any event, these documents, like all the documents, would be subject to an extremely time-consuming and expensive review for privilege.  At a minimum, the Court should clarify that its Order was not intended to afford Lead Plaintiffs an advantage over all other concerned parties, including the SEC and interested parties in Delphi's bankruptcy proceedings, by permitting discovery of documents not produced to the SEC or that have not been specifically identified as relevant to the SEC's investigation or the claims in this action.

## <u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

On July 22, 2004, the SEC served a subpoena upon Delphi and a document collection effort was immediately undertaken.  (<u>See</u> Declaration of Joseph E. Papelian dated March 2, 2007 ("Papelian Decl.").)  On August 24, 2004, Delphi formally retained the law firm of WilmerHale to assist with document collection and with Delphi's internal investigation.

WilmerHale engaged forensic accountants from PricewaterhouseCoopers ("PwC") to assist in the document collection efforts. The Audit Committee of Delphi's Board of Directors soon thereafter assumed responsibility for the Company's internal investigation. (See id. at ¶ 6.)

In connection with Delphi's internal investigation overseen by WilmerHale, an immense volume of documents was collected from numerous sources, totaling over 700,000 pages of documents and a vast amount of electronic information. (See id. at ¶ 9.) A database of over 1,000,000 e-mail items and 400,000 user files totaling over 130 gigabytes of data was created from a subset of the electronic information gathered. (See id.) From this database, a subset of e-mails and attachments responsive to general and specific search terms was reviewed by WilmerHale for purposes of the internal investigation. (See id. at ¶ 11.) Eventually, in response to several subpoenas from the SEC, approximately 576,000 pages of documents were produced to the SEC on a rolling basis along with a subset of the database of e-mails and user files referred to above from the electronic information that was gathered. (See id. at ¶¶ 11-12.) An immense amount of information collected in connection with Delphi's internal investigation was deemed nonresponsive and therefore never specifically reviewed by WilmerHale or PwC (or anyone else). The database to which the SEC was given access similarly was not specifically reviewed, and the vast majority of that database likely contains documents that are not relevant to the claims in this action.

On March 10, 2006, Lead Plaintiffs filed a motion to modify the PSLRA discovery stay and sought oral argument (Dkt. No. 60). Defendants filed opposition papers on May 12, 2006 and similarly requested oral argument (Dkt. Nos. 111, 112, 117, 118, 122-125). Lead Plaintiffs filed an omnibus reply brief on June 12, 2006 (Dkt. No. 137). That brief did not mention, much less distinguish, any of the cases cited in defendants' opposition memoranda,

instead making a plea (based on <u>WorldCom</u>) that the stay should be lifted so that they do not

"fall behind."

On August 2, 2006, Lead Plaintiffs filed a supplemental letter brief making

additional arguments based on filings made by the UCC in Delphi's bankruptcy proceedings.

Six days later, on August 8, 2006, the <u>Refco</u> court rejected the same arguments that Lead

Counsel here had submitted on behalf of their clients in that case.  On November 28, 2006, Lead

Plaintiffs submitted a brief in support of their motion for leave to further amend their complaint

and, in that brief, presented further arguments in favor of lifting the PSLRA discovery stay (Dkt.

No. 180 at 10-12.)  Although <u>Refco</u> had been decided three months earlier (and their <u>Refco</u> briefs

had explicitly referred to the Delphi case), Lead Plaintiffs did not cite to <u>Refco</u> in that (their

fourth) submission.

The Court issued its Opinion and Order on February 15, 2007.

### <u>LEGAL STANDARD</u>

Local Rule 7.1(g)(3) generally requires a party moving for reconsideration to (1)

"demonstrate a palpable defect by which the court and the parties have been misled" and (2)

"show that correcting the defect will result in a different disposition."  E.D. Mich. LR 7.1(g)(3).

Motions for reconsideration pursuant to this rule are granted in appropriate circumstances.  <u>See,</u>

<u>e.g.</u>, <u>Ford Motor Co. v. Greatdomains.Com, Inc.</u>, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001)

(granting reconsideration based on legal error); <u>DirecTV v. Karpinsky</u>, 274 F. Supp. 2d 918, 920

(E.D. Mich. 2003) (granting reconsideration upon introduction of evidence that "would warrant a

different disposition of [defendant's] motion"); <u>Flanagan v. Shamo</u>, 111 F. Supp. 2d 892, 895

(E.D. Mich. 2000) (granting reconsideration where subsequently-filed transcripts disproved

factual basis for ruling).  Moreover, notwithstanding the requirements of the Local Rule, the

Court has broad discretion to reconsider its prior rulings.  <u>See</u> E.D. Mich. LR 7.1(g)(3);

McDowell v. Dynamics Corp. of America, 931 F.2d 380, 382 (6th Cir. 1991) (district court can

consider motion for reconsideration not encompassed by procedural rule).

This Court has found a "palpable defect" to exist warranting reconsideration

where there was a "clear error of law" (Trustees of the Flint Area Sheet Metal Workers Health

and Welfare Fund v. C3 Mechanical, Inc., 450 F. Supp. 2d 762, 765 (E.D. Mich. 2006)), or

where the earlier ruling had an erroneous factual premise (Flanagan, 111 F. Supp. 2d at 895;

DirecTV, 274 F. Supp. 2d at 920).  This Court also grants motions for reconsideration to prevent

manifest injustice.  Id.  This legal standard warrants reconsideration of the Order on the basis of

both legal and factual defects.

## ARGUMENT

## I.    THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT LEAD PLAINTIFFS ADEQUATELY DEMONSTRATED "UNDUE PREJUDICE"

Courts have made clear that the PSLRA discovery stay may only be lifted in

"exceptional circumstances" and that the burden of showing such exceptional circumstances "is a

heavy one."  (See Dkt. No. 123 at 5.)  After rejecting Lead Plaintiffs' argument that lifting the

discovery stay was necessary to preserve evidence, the Court concluded that modifying the stay

was warranted because Lead Plaintiffs faced the prospect of "'being left with nothing' if this

litigation does not keep pace with the bankruptcy and the SEC action."  (Order at 16.)  A ruling

issued after the conclusion of briefing on Lead Plaintiffs' motion clarifies that the cases on which

Lead Plaintiffs and the Court relied (WorldCom, Enron, and two others) should not be extended

to the facts of this case, and that "exceptional circumstances" are not present here.

In In re WorldCom, Inc. Securities Litigation, 234 F. Supp. 2d 301, 305

(S.D.N.Y. 2002), the primary case upon which the Court (and Lead Plaintiffs) relied (see Order

at 9, 11, 12, 15, 16, and 17), the court explicitly stated that, based on the "unique circumstances"

of the case, prohibiting discovery would unduly prejudice plaintiffs in a "rapidly shifting landscape." In <u>Newby v. Enron Corporation</u>, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002), the court did not address the issue of whether plaintiffs would suffer "undue burden," but lifted the PSLRA stay where the bankruptcy court had previously lifted the automatic stay and defendants would not be burdened. This Court held that "[i]t was precisely because the defendants in <u>Enron</u> and <u>WorldCom</u> were bankrupt and subject to other civil lawsuits that a partial lifting of the PSLRA stay was necessary 'to prevent the securities plaintiffs from being left with nothing if their litigation did not keep pace with the bankruptcy and other proceedings.'" (Order at 16, quoting <u>Singer v. Nicor, Inc.</u>, No. 02-CV-5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003).)

The language in <u>Singer</u>, however, was the defendants' argument, not the holding, and a subsequent case from the Southern District of New York makes plain that that the <u>WorldCom</u> decision was **_not_** based on the fact that WorldCom was "bankrupt and subject to other civil lawsuits."

In <u>Refco</u>, <u>supra</u>, which similarly concerned a company in bankruptcy that was involved in regulatory investigations, plaintiffs in a consolidated securities action sought all documents produced to all "regulatory, governmental or investigative agencies or other private parties involved in reviewing the facts and circumstances giving rise to Refco's demise," including the SEC, U.S. Attorney's Office, the bankruptcy examiner, and the Official Committee of Unsecured Creditors. <u>Id.</u> at *1. The <u>Refco</u> plaintiffs' brief --- submitted by the same Lead Counsel in this case --- made the same arguments as do Lead Plaintiffs here. <u>Compare</u> 2006 WL 1792940 <u>and</u> 2006 WL 2301721 (<u>Refco</u> plaintiffs' briefs) <u>with</u> Dkt. No. 60.

Although settlement discussions were occurring in Refco, the court clarified that

the "unique circumstances" that gave rise to "undue prejudice" in WorldCom were solely the

"court-ordered coordinated" settlement discussions involving ERISA plaintiffs who had received

documents not made available to the securities plaintiffs:

> Here [as in WorldCom], plaintiffs seek to obtain documents that have already been produced (or will be produced) to other parties. However, the fact that the documents had already been produced was not itself the basis for the Court's lifting of the stay in WorldCom. . . .
>
> In WorldCom, the stay was lifted because the Court determined that "the documents requested by [plaintiffs] must be produced in order to prevent undue prejudice to the interests of the putative investor class." Id. at 305. ***This undue prejudice resulted from the fact that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had been ordered to prepare for coordinated settlement discussions.*** . . .
>
> ***In this matter, as in WorldCom, plaintiffs and other parties are apparently engaged in settlement discussion with various defendants. That fact alone, however, does not create the "undue prejudice" necessary to lift the stay.*** If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the "undue prejudice" provision would essentially eviscerate the stay requirement. That is not what Congress intended. The Court in WorldCom recognized this fact, in holding that "unique circumstances" present in that case necessitated the lifting of the stay. Id. at 305. Those unique circumstances were the court-ordered coordinated settlement discussions, and the "very real risk" that the defendants, after settling with other parties, would "no longer have anything or at least as much to offer" plaintiffs.

2006 WL 2337212, at *3 (emphasis added).

In distinguishing WorldCom and rejecting plaintiffs' argument that they were

"prejudiced by their inability to make informed decisions about their litigation strategy in a

rapidly shifting landscape" (2006 WL 2337212, at *2), the Refco court noted:

> Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this [securities] action has been stayed. That stay does not apply to government investigators, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions

and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.

Id. Thus, in a decision issued subsequent to the parties' briefing that is not cited in the Order, the Southern District of New York has clarified that the WorldCom discovery ruling is limited to unique facts in which securities plaintiffs are ordered to engage in settlement discussions without being privy to the same documents the other plaintiffs have.

The "unique" circumstances of court-ordered coordinated settlement discussions present in WorldCom are absent here. As in Refco (which is on all fours with this action), Delphi has produced certain documents to government authorities and bankruptcy creditors, but not to Lead Plaintiffs (or ERISA plaintiffs). As a matter of law, that is not "undue prejudice," and it is not an "exceptional circumstance" that would justify modifying the PSLRA discovery stay.[1]

The Court should also reconsider its decision in light of facts concerning settlements that demonstrate that they do not constitute "exceptional circumstances" or give rise to "undue prejudice" to Lead Plaintiffs. First, the SEC's action does not "unduly prejudice" Lead Plaintiffs: Delphi settled with the SEC without any monetary payment whatsoever. The other 16 defendants making this motion were not even named in the SEC's Complaint. Of the 18

---

[1]   The other case the Court referenced, In re FirstEnergy Corp. Sec. Litig., 229 F.R.D. 541 (N.D. Ohio 2004), involved a situation where defendants did **not** assert that producing the requested documents would impose any burden on them. In any event, that court provided no analysis for its finding that plaintiffs would be prejudiced in pursuing "litigation and settlement strategies" if the discovery stay were maintained. Our opposition submission listed numerous cases prior to Refco that uniformly stand for the proposition that the fact that certain documents have been produced to the government or other third parties does not justify lifting the PSLRA's discovery stay. Similarly, in In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006), the court declined to lift the PSLRA stay, holding that prior production of documents to the SEC or harm to plaintiffs' settlement posture was irrelevant, and noting that the "exceptional circumstances" in WorldCom included "settlement discussions in related ERISA proceedings [that] were moving forward by court order." While Smith Barney noted in dicta that WorldCom involved an insolvent party, Refco states that the "undue prejudice" in WorldCom resulted from "the facts that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had been ordered to prepare for coordinated settlement discussions," which is not present here.

other defendants in this action, two settled with the SEC and agreed to pay a total of $1.25

million; three are defending against the SEC's charges.  (Order at 4 & n.5.)[2]

       The UCC's threatened suit similarly does not "unduly prejudice" Lead Plaintiffs:

In seeking authority to file a lawsuit against GM and certain Delphi officers and directors, the

UCC made plain that its purpose was "not actually to file the Complaint at th[at] time," but

rather solely "to ensure that the Committee . . . has a seat at the table in negotiations . . . between

the Debtors and GM with respect to GM's contributions to, and claims in respect of, the Debtors'

'transformation.'"  (UCC Motion dated July 27, 2006 ¶ 4.)  What plaintiff did not say when they

filed their fourth submission on November 28, 2006 was that the UCC had not, in fact, filed any

Complaint.  Indeed, to date, the UCC has not filed any Complaint, and the UCC's motion for

leave to file the suit has been adjourned.  The individuals making this motion are not named in

any lawsuits relating to Delphi other than this one and (with respect to certain of these

individuals) the derivative actions and the consolidated ERISA suit in this Court.  There have

been no settlement discussions with the ERISA plaintiffs.  Thus, as made clear by <u>Refco</u>, Lead

Plaintiffs have suffered no "undue prejudice" that could warrant modifying the discovery stay.[3]

---

[2]   The Order states:  "Given that several of the Defendants in this case have already consented to substantial money judgments in the SEC case, Lead Plaintiffs here already face the prospect that they may not be able to recover from those Defendants in this action because of the substantial consent judgments they have taken in the SEC case." (Order at 16-17.)  Only 3 of the 35 defendants in this case have consented to judgment, and Delphi's consent judgment calls for no monetary payment.  In any event, there is no evidence in the record that would suggest that the consent judgments entered by two individuals affects plaintiffs' ability to recover from those defendants in this case. Moreover, given that those individuals have already consented to judgment, lifting the stay at this point could not change their ability to pay.

[3]   The Order states that "Defendants, however, overlook the fact that settlements have already occurred in the SEC cases and settlement discussions are ongoing in the bankruptcy action."  (Order at 16.)  As the Order notes elsewhere, however, the SEC action was not even filed until October 30, 2006, months after briefing on this motion was completed.  (Order at 4.)  As noted above, Delphi's settlement included no monetary payment, and the other movants here are not named in the SEC's suit.  It is not clear what "settlement discussions" in the bankruptcy action the Court is referring to, but potential claims against GM are not relevant here, and discussions towards a plan of reorganization are present in every Chapter 11 and do not constitute "exceptional circumstances."  In any event, there is no basis for relief today simply because "it might come to pass that, at some future date, plaintiffs' lack of access to discovery will prejudice them in settlement discussions with some other defendant, resulting in some risk that the defendant might not have sufficient funds to satisfy plaintiffs' claims."  <u>Refco</u>, 2006 WL 2337212, at *3.

II.    **IF NOT RECONSIDERED, THE ORDER SHOULD BE CLARIFIED SO THAT LEAD PLAINTIFFS DO NOT RECEIVE DOCUMENTS THAT WERE NOT SPECIFICALLY REVIEWED AND PRODUCED TO THE SEC**

Even if this Court does not reconsider the Order in its entirety, we ask the Court to clarify and narrow the Order to ensure that Lead Plaintiffs are not entitled to discovery of Delphi documents to which no one outside the Company and its counsel have had access. The portion of the Order granting Lead Plaintiffs discovery of "materials produced by any of the Defendants in conjunction with the internal investigation conducted by the Delphi Audit Committee of its Board of Directors, represented by Wilmer Cutler, outside counsel, and PriceWaterhouseCooper, forensic accountants" (Order at 19) can arguably be understood to encompass the vast category of documents collected in connection with Delphi's internal investigation, but not produced to third parties (because they were determined not to be relevant).

Although the Court's intention in this regard is unclear, the Order may thereby inadvertently grant Lead Plaintiffs access to documents that have never been "produced" in any fashion to anyone beyond the Company and its counsel. Indeed, a large portion of the materials swept up by Delphi's internal investigation was deemed nonresponsive and therefore was never even specifically reviewed by WilmerHale or PwC, let alone shared with the SEC or with Delphi's creditors. To the extent that the Order mandates the production of this second category of internal investigation documents because the Court believed that such materials have already been produced to third parties, the Order is premised on a factual defect that should be clarified and corrected. The Order should not confer a considerable advantage on the Lead Plaintiffs --- and impose a substantial burden on Delphi --- that would extend well beyond the purported rationale of leveling the playing field.

As detailed in the accompanying declaration of Joseph E. Papelian, WilmerHale and PwC assisted the Company's in-house legal personnel in collecting documents in connection

with the internal investigation eventually conducted by the board's Audit Committee.  A subset of the hard-copy documents collected and a subset of the electronic documents swept up by the response to the SEC subpoenas and by the internal investigation were ultimately produced or made available to government authorities (and small subsets of these documents were produced to the UCC and official equity committee in Delphi's bankruptcy proceedings).  However, the much larger body of materials from which those subsets were culled has never been turned over in wholesale fashion to anyone outside the Company.  Rather, only certain of those materials were produced to the SEC.

Indeed, a large amount of electronic information not deemed to be relevant was not imaged by PwC.  Furthermore, the majority of the imaged documents collected in the database produced to the SEC was not responsive to search terms employed to narrow the vast scope of the materials and was, thus, never even specifically reviewed by WilmerHale or PwC. (See Papelian Decl. ¶¶ 9-12.)  Because the majority of the internal investigation materials have either not been produced by Delphi to anyone, including the SEC, the UCC, or Delphi's Equity Committee, or have been produced to the SEC in a database without being specifically reviewed for relevance, Lead Plaintiffs should not gain access at this time to those documents or the database that Delphi made available to the SEC.

Moreover, to the extent that the Order contemplates production of materials never produced by Delphi to any third parties and information provided to the SEC but not specifically reviewed by WilmerHale or PwC, it would impose a substantial and unnecessary burden, particularly in light of Delphi's debtor status.  If Delphi is ultimately forced to conduct a massive review of a voluminous group of materials for both responsiveness and privilege, this could occupy thousands of hours of attorney time at a cost of many millions of dollars --- all to review

tremendous volumes of documents, much of which have nothing to do with the claims in this action.

Clearly, the Order's rationale does not extend to documents that have never been made available to anyone beyond the Company and its counsel. Granting Lead Plaintiffs access to the non-privileged documents in the first category of documents outlined in the Order ("materials already produced to the SEC, DOJ, FBI and U.S. Postal Inspector") would certainly cure any theoretical "undue prejudice" to which Lead Plaintiffs may possibly be subject. But this should not include the additional database made available to the SEC because there is no basis to assume that these documents relate to the claims or defenses in this action and are discoverable. The debtor should not be forced to review for responsiveness and privilege a massive database simply because it was made available to regulators. Lead Plaintiffs should not gain an unfair advantage that would gut the very purpose of the PSLRA discovery stay. Refco, 2006 WL 2337212, at *2.

Therefore, if the Court declines to follow Refco and finds that the "exceptional circumstances" warranting lifting the discovery stay are present here, the Order should nevertheless be narrowed. Even if limited as requested here, a privilege review would be extremely time-consuming and expensive. Given that the Federal Rules limit discovery in any event to documents relevant to the claims and defenses in this action, it cannot be that plaintiffs are entitled to a given universe of documents simply because those documents were simply collected or turned over to another party.

## CONCLUSION

For the foregoing reasons, the Court should reconsider and reverse its Order

modifying the PSLRA discovery stay.  If the Court does not find grounds for reconsidering the

Order in its entirety, it should modify the Order as set forth above.[4]

Dated:  March 2, 2007                    Respectfully submitted,

                                         SHEARMAN & STERLING LLP

                                         By: s/ Stuart J. Baskin
                                             Stuart J. Baskin
                                             Brian H. Polovoy
                                             Marc D. Ashley
                                         599 Lexington Avenue
                                         New York, New York  10022-6069
                                         Telephone:  (212) 848-4000
                                         Facsimile:  (212) 848-7179
                                         sbaskin@shearman.com

                                         Joseph E. Papelian (P26582)
                                         Delphi Corporation
                                         5725 Delphi Drive
                                         Troy, Michigan  48098-2815
                                         Telephone:  (248) 813-2535
                                         Facsimile:  (248) 813-3251
                                         joseph.e.papelian@delphi.com

                                         *Attorneys for Defendants Delphi Corporation,*
                                         *Donald S. Runkle, John D. Sheehan,*
                                         *Robert H. Brust, Thomas H. Wyman,*
                                         *Oscar de Paula Bernardes Neto, John D. Opie,*
                                         *Cynthia A. Niekamp, Susan A. McLaughlin,*
                                         *Roger S. Penske, Patricia C. Sueltz,*
                                         *Virgis W. Colbert, David N. Farr,*
                                         *Shoichiro Irimajiri, Bernd Gottschalk,*
                                         *Delphi Trust I, and Delphi Trust II*

---

[4]   The Court's Order restates certain assertions in plaintiffs' submissions that are factually incorrect.  Because many of these various assertions are not relevant to the issues raised here, we do not address them here.  We do not view these assertions as findings by the Court, but rather as repeating background information proposed by Lead Plaintiffs.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March 2007, I electronically filed the

foregoing Motion of Certain Defendants for Reconsideration of the Court's Order Lifting the

PSLRA Discovery Stay, Memorandum of Law of Certain Defendants in Support of their Motion

for Reconsideration of the Court's Order Lifting the PSLRA Discovery Stay, and the Declaration

of Joseph E. Papelian in Support of the Memorandum of Law of Certain Defendants in Support

of their Motion for Reconsideration of the Court's Order Lifting the PSLRA Discovery Stay with

the Clerk of the Court using the ECF system, which will send notification of such filing to

Jeffrey J. Angelovich, Dennis M. Barnes, Bradley E. Beckworth, Frances Bivens, Wilber H.

Boies, Patrick E. Cafferty, Michael P. Coakley, John P. Coffey, Timothy A. Duffy, Robert N.

Eccles, Christopher H. Giampapa, Gary S. Graifman, Stuart M. Grant, Hannah Greenwald, Maya

S. Hamie, Sean M. Handler, Fred K. Hermann, Clark C. Johnson, Steven W. Kasten, Cari C.

Laufenberg, Dennis J. Levasseur, Howard T. Longman, Matthew J. Lund, Sara L. Madsen, J.

Brian McTigue, Matthew C. Moehlman, Bridget Moore, Jonathan E. Moore, Jodi L. Murland,

Marc L. Newman, Sharan Nirmul, Joseph E. Papelian, Michael G. Patillo, Jr., Debra B. Pevos,

Abraham Rappaport, John W. Reale, Nancy G. Ross, Richard A. Rossman, James J. Sabella,

William A. Sankbeil, Lynn L. Sarko, Sherrie R. Savett, Scott T. Seabolt, Elwood S. Simon,

Andrew W. Stern, Jane B. Stranch, Ruth H. Swartout, Thomas J. Tallerico, W. Scott Turnbull,

James D. VandeWyngearde, Stephen F. Wasinger, Susan Whatley, Jill M. Wheaton, Michael K.

Yarnoff, John P. Zuccarini, and mailed the foregoing document by U.S. Mail to the attorneys on

the attached service list.

_____s/ Parthapratim Chanda___
Parthapratim Chanda
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone:  (212) 848-4000
Facsimile:   (212) 848-7179
