# **Exhibit C**

05-44481-rdd    Doc 7344-3    Filed 03/19/07    Entered 03/19/07 19:33:06    Exhibit C
Pg 1 of 5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---------------------------------------------------------------x
:
: MDL No. 1725
IN RE: DELPHI CORPORATION              : Master Case No. 05-md-1725
SECURITIES, DERIVATIVE & "ERISA"       : Hon. Gerald E. Rosen
LITIGATION                             :
: This Document Relates to:
: In Re: Delphi Corp. Securities Litig.
: No. 06-10026
:
:
---------------------------------------------------------------x

**DECLARATION OF JOSEPH E. PAPELIAN IN SUPPORT OF**
**THE MEMORANDUM OF LAW OF CERTAIN DEFENDANTS**
**IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF**
**THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY**

I, Joseph E. Papelian, hereby declare as follows:

1. I am the Deputy General Counsel for Litigation for Delphi Corporation ("Delphi"). The information set forth below is true to the best of my knowledge and belief.

2. On July 22, 2004, I received a subpoena from the SEC commanding the production of certain documents by Delphi. On that same day, I directed a document hold for those documents covered by the subpoena, which was posted on Delphi's internal website on July 23, 2004.

3. On July 23, 2004, I ordered the computer back-up tapes for Delphi's Headquarters campus be delivered to my office. The back-up tapes were delivered to me on July 23, 2004, where they remained locked in my office until October 15, 2004 when I provided them to a representative of PricewaterhouseCoopers ("PwC"), which had been retained at that time.

4. Also on July 23, 3004, I issued a Document Search Memo to employees likely to have documents responsive to the subpoena. The Search Memo described the types of documents to be gathered, instructed the employees to search all areas where relevant documents might be found, and cautioned them to not destroy or alter potentially relevant documents. The Search Memo also instructed employees to return all relevant documents to a legal assistant working with me on this matter along with a completed Document Return Form requiring the employee to attest he/she had conducted a good faith search and provided any relevant documents.

5. Copies of all documents received in response to the Search Memo were scanned and a unique number was assigned to each page. The documents were reviewed for responsiveness and those documents determined to be responsive were then assigned a production number. A Source Index, identifying who provided what documents, was prepared and those documents determined responsive to the subpoena were produced to the SEC on a rolling basis.

6. On August 24, 2004, Delphi formally retained the outside law firm of WilmerHale to assist, among other things, in the collection of documents and with Delphi's internal investigation. WilmerHale engaged forensic accountants PricewaterhouseCoopers ("PwC") to assist in the collection of electronic files. On October 5, 2004, the Audit Committee of Delphi's Board of Directors assumed responsibility for the internal investigation.

7. As subsequent subpoenas were received from the SEC, Delphi followed the procedure described in paragraphs 4-5, above. Delphi also sent out Document Search Memos after particular issues came to the attention of the internal investigators, but before a subpoena was received from the SEC that called for documents relevant to those issues. As the

internal review progressed, Delphi sent out a total of 14 Document Search Memos and one Hold Memo in the same format as the Document Search Memo issued in response to the first SEC subpoena. Approximately 700,000 pages were collected, scanned and numbered in response to the various Search Memos.

8. Delphi entered into Confidentiality Agreements with the SEC and DOJ only, waiving attorney client privilege as to these entities with respect to certain subject matters.

9. In November 2004, representatives of PwC began imaging hard drives of computers belonging to 89 Delphi employees, Microsoft Exchange email files for 84 employees, and a subset of the back-up tapes referenced in Paragraph 3 and created a database of 1,161,936 unique email items and 417,131 unique user files totaling over 130 gigabytes of data.

10. General and specific keyword searches were conducted on this database by PwC, resulting in the identification of 107,881 unique emails and attachments responsive to the general search terms and 37,492 unique emails and attachments responsive to the specific search terms. Those documents which were identified as responsive and not previously produced to the SEC were scanned, numbered and produced to the SEC.

11. WilmerHale removed from the database referenced in Paragraph 9 those documents that were addressed to, from or copied an attorney. The remainder of this database was then provided to the SEC on December 14, 2005. Other than the keyword searches referenced in paragraph 10, the database provided to the SEC was not reviewed for relevancy or responsiveness, but was nonetheless produced to the SEC.

12. In sum, Delphi produced to the SEC approximately 576,000 pages of responsive documents plus the remainder of the documents in the database referenced in paragraph 11, which were not read for relevancy or responsiveness.

13. The remainder of the documents collected through the various exercises and sources identified above were determined as not responsive to any general or specific search terms. Therefore, while they were collected in connection with Delphi's extensive internal investigation, these materials were not produced to the SEC (or any other party).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2007.

s/ Joseph E. Papelian<br>Joseph E. Papelian