**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
                                                                      )
In re                                                              )    Chapter 11
                                                                      )
DELPHI CORPORATION, <u>et</u> <u>al</u>                )    Case No. 05-44481 (RDD)
                                                                      )
Debtors.                                                        )    Jointly Administered
                                                                      )
---------------------------------------------------------

**FIRST INTERIM FEE APPLICATION FOR COMPENSATION OF SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED BY PRICEWATERHOUSECOOPERS LLP TO PROVIDE CERTAIN SARBANES-OXLEY COMPLIANCE, TAX AND FINANCIAL PLANNING, AND OTHER GENERAL TAX CONSULTING SERVICES TO DELPHI CORPORATION, et al., FOR THE PERIOD FEBRUARY 1, 2006 THROUGH MAY 31, 2006**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANRUPTCY JUDGE:

PricewaterhouseCoopers LLP ("PricewaterhouseCoopers"), certain Sarbanes-Oxley compliance, tax and financial planning, and other general tax consulting services for the above-captioned debtors and debtors in possession (the "Debtors"), submit this first interim fee application (the "First Interim Fee Application") pursuant to sections 330 and 331 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines") and the United States Trustee Guidelines for Reviewing Interim Fee Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 effective January 30, 1996 (the "UST Guidelines", collectively with the Local Guidelines, the "Guidelines"), for allowance and approval of interim compensation for professionals services rendered by PricewaterhouseCoopers to provide certain Sarbanes-Oxley compliance, tax and

financial planning, and other general tax consulting services to the Debtors and for reimbursement of actual and necessary expenses incurred in connection with such services from February 1, 2006 through and including May 31, 2006 (the "Compensation Period").

In support of this First Interim Fee Application, PricewaterhouseCoopers respectfully represents as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the Local Guidelines. Pursuant to the Local Guidelines, a certification of compliance is attached hereto as **Exhibit A**.

## BACKGROUND

4. On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005 (the "Secondary Filing Date" and, together with the Initial Filing Date, the "Petition Dates"), three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtor's chapter 11 cases (Dockets Nos. 28 and 404).

5. On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

7. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

*PricewaterhouseCoopers' Retention*

8. By this Court's order dated June 21, 2006, the Debtors were authorized to retain PricewaterhouseCoopers to provide certain Sarbanes-Oxley Compliance, Tax and Financial Planning and Other General Tax Consulting Services to the Debtors with regard to the filing and prosecution of the Chapter 11 Cases and all related matters (the "Retention Order"). By this Court's order January 18, 2007, the Debtors expanded PricewaterhouseCoopers' services to included due diligence services by filing a supplemental application nunc pro tunc to December 15, 2006 (the "Supplemental Retention Order"). A copy of the Retention Order and the Supplemental Retention Order are attached hereto as **Exhibit B**.

**COMPENSATION REQUESTED**

9. This First Interim Fee Application is the First Interim Application for approval and allowance of compensation for PricewaterhouseCoopers' services and reimbursement of PricewaterhouseCoopers' expenses. PricewaterhouseCoopers submits this First Interim Fee Application for approval and allowance of interim compensation of $2,344,167.75 for actual,

reasonable and necessary professional services rendered, and reimbursement of $298,544.27 for actual, reasonable and necessary expenses incurred during the First Interim Compensation Period[1] pursuant to Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules"), in accordance with all applicable orders of this Court, for a total request of $2,642,712.02 (the "Total Compensation Amount"):

|  | FEES | EXPENSES | TOTAL |
|---|---|---|---|
| **FEES AND EXPENSES REQUESTED IN INTERIM PERIOD'S MONTHLY APPLICATIONS:** | $2,414,307.75 | $208,672.03 | $2,622,979.78 |
| **FEES AND EXPENSES ADJUSTMENTS - ALREADY REQUESTED IN SUBSEQUENT MONTHLY APPLICATIONS (NO ADDITIONAL ADJUSTMENT NEEDED):** | ($70,140.00) | $89,872.24 | $19,732.24 |
| **RECONCILED FEES AND EXPENSE REQUEST (FIRST INTERIM PERIOD (2/1/06 - 5/31/06):** | $2,344,167.75 | $298,544.27 | $2,642,712.02 |

10.     For the Compensation Period, PricewaterhouseCoopers voluntarily wrote off a total of $88,478.59 in fees and expenses.[2]  In addition, PricewaterhouseCoopers reduced its travel time by fifty (50) percent.

*FEES AND EXPENSES REQUESTED IN FIRST INTERIM FEE APPLICATION PERIOD'S MONTHLY APPLICATIONS: February 1, 2006 through May 31, 2006:*

11.     Prior to the filing of this First Interim Fee Application, PricewaterhouseCoopers has filed four monthly fee invoices (cumulatively, the "1IFA Fee Statements") with the Debtors and notice parties pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Fee Order").  These 1IFA Fee Statements, as set forth below, as well as any adjustments deemed necessary upon completion of this First

---

   1    PricewaterhouseCoopers reserves its right to seek at a later date compensation for services rendered and expenses incurred during the Compensation Period that are not otherwise included in the interim First Interim Fee Application, due to internal billing delays.

   2    These adjustments are fees and expenses not billed by PricewaterhouseCoopers' in their monthly fee applications.  The amounts are provided for informational purposes only, indicating additional fees and expenses not billed to the Debtors.

Interim Fee Application, represent the Total Compensation Amount requested in this First Interim Fee Application:

11.1.   On June 30, 2006, PricewaterhouseCoopers distributed its monthly fee statement for PricewaterhouseCoopers' fees for the period of February 1, 2006 through February 28, 2006 (the "February Fee Statement"). The February Fee Statement sought an allowance of $89,162.50 as compensation for services rendered and $602.97 for expenditures incurred. The time for submitting objections to the February Fee Statement expired on July 17, 2006. As of the date hereof, no objections have been received by PricewaterhouseCoopers. PricewaterhouseCoopers has received payments of $85,307.35 ($80,849.22, 90% of fees and 100% of expenses and $4,458.13, 5% of fees).

11.2.   On June 30, 2006, PricewaterhouseCoopers distributed its monthly fee statement for PricewaterhouseCoopers' audit fees for the period of March 1, 2006 through March 31, 2006 (the "March Fee Statement"). The March Fee Statement sought an allowance of $518,769.00 as compensation for services rendered and $43,260.82 for expenditures incurred. The time for submitting objections to the March Fee Statement expired on July 17, 2006. As of the date hereof, no objections have been received by PricewaterhouseCoopers. PricewaterhouseCoopers has received payment of $536,091.37 ($510,152.92, 90% of fees and 100% of expenses and $25,938.45, 5% of fees).

11.3.   On June 30, 2006, PricewaterhouseCoopers distributed its monthly fee statement for PricewaterhouseCoopers' audit fees for the period of April 1, 2006 through April 30, 2006 (the "April Fee Statement"). The April Fee Statement sought an allowance of $477,869.00 as compensation for services rendered and $37,582.64 for expenditures incurred. The time for submitting objections to the April Fee Statement expired on July 17, 2006. As of the date hereof, no objections have been received by PricewaterhouseCoopers. PricewaterhouseCoopers has received payment of $491,558.19 ($467,664.74, 90% of fees and 100% of expenses and $23,893.45, 5% of fees).

11.4.   On September 28, 2006, PricewaterhouseCoopers distributed its monthly fee statement for PricewaterhouseCoopers' audit fees for the period of May 1, 2006 through May 31, 2006 (the "May Fee Statement"). The May Fee Statement sought an allowance

of $1,328,507.25 as compensation for services rendered and $127,225.60 for expenditures incurred. The time for submitting objections to the May Fee Statement expired on October 13, 2006. As of the date hereof, no objections have been received by PricewaterhouseCoopers. PricewaterhouseCoopers has received payment of $1,389,307.49 ($1,322,882.13, 90% of fees and 100% of expenses and $66,425.36, 5% of fees).

*FEES AND EXPENSES ADJUSTMENTS - ALREADY REQUESTED IN SUBSEQUENT MONTHLY APPLICATIONS (NO ADDITIONAL ADJUSTMENT NEEDED)*

12.     Second Interim Fee Application Period - June 1, 2006 through September 30, 2006: Prior to the filing of this First Interim Fee Application, PricewaterhouseCoopers has filed four monthly fee invoices (cumulatively, the "2IFA Fee Statements"). These 2IFA Fee Statements included fee and expense adjustments associated with the First Interim Compensation Period requested by the Debtors and processed in the 2IFA Fee Statements, totalling ($70,153.00) in fees and $89,872.24 in expenditures. These adjustments have already been adjusted within the 2IFA Fee Statements and do not need additional adjustments in this First Interim Fee Application; included for purposes of reconciliation of the Total Compensation Amount requested for allowance and approval.

13.     Third Interim Fee Application Period - October 1, 2006 through January 31, 2007: Prior to the filing of this First Interim Fee Application, PricewaterhouseCoopers has filed two monthly fee invoices (October 2006 and November 2006) and pending the completion and distribution of the last two monthly fee invoices (December 2006 and January 2007, cumulatively, the "3IFA Fee Statements"). These 3IFA Fee Statements included fee and expense adjustments associated with the First Interim Compensation Period requested by the Debtors and processed in the 3IFA Fee Statements, totalling $13.00 in fees and $0.00 in expenditures. These adjustments have already been adjusted within the 3IFA Fee Statements and do not need

additional adjustments in this First Interim Fee Application; included for purposes of reconciliation of the Total Compensation Amount requested for allowance and approval

14.     The fees sought by this First Interim Fee Application reflect an aggregate of 15,520.20 hours of professional time spent and recorded in performing services for the Debtors and their estates during the First Interim Fee Period at a blended average hourly rate of $150.23. PricewaterhouseCoopers is only seeking compensation for services rendered to the Debtors and their estates in connection with these Reorganization Cases.

15.     There is no agreement or understanding between PricewaterhouseCoopers and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## TIME AND EXPENSE RECORDS

16.     This First Interim Fee Application is made by PricewaterhouseCoopers in accordance with the United States Trustee's Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under U.S.C. §330 ("UST Guidelines") and with the amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated April 19, 1995 ("SDNY Guidelines").  Pursuant to the UST Guidelines and SDNY Guidelines, PricewaterhouseCoopers has attached the following exhibits:

A.     Exhibit A -- Affidavit of Brian D. Decker in accordance with the Bankruptcy Rule 2016.

B.     Exhibit B -- Retention Order dated June 21, 2006 authorizing the employment and retention of PricewaterhouseCoopers LLP to provide certain Sarbanes-Oxley Compliance, Tax and Financial Planning and Other General Tax Consulting Services to the Debtors; Supplemental Retention Order dated January 18, 2007 expanding the scope of retention for the due diligence project.

Fixed Fee Services

C.	Exhibit C -- Invoice and summary schedule for the Fixed Fee - Executive Personal Financial Planning Services

Hourly Fee Services

D.	Exhibit D -- A summary schedule showing the professionals who performed the services, the number of hours spent, each professional's billing rate, and the total fees for such services.

E.	Exhibit E -- A summary schedule depicting the total hours and fees for each Project Category detailing the various subcategories and task codes.

F.	Exhibit F -- Itemized time records, in chronological order, of each specific service for which an award of compensation is sought.  The itemized record includes:  (1) the date each service was rendered, (2) the professional(s) who performed the service, (3) a description of the services rendered, and (4) the time spent performing the service in increments of one-quarter of an hour.

G.	Exhibit G -- Expense summary and detail reports by individual and itemized total expenses for which reimbursement is sought.  All expenses for which reimbursements are sought are disclosed in detail by individual.  PricewaterhouseCoopers has not requested reimbursement for certain out-of-pocket expenses when it would not be possible to assemble the billing details for reimbursement under the Guidelines.  These unbilled out-of-pocket expenses typically include telephone charges for calls placed in its offices, postage costs including Federal Express charges and copying and facsimile charges incurred at the Applicant's offices in connection with these cases.

## SERVICES RENDERED BY PRICEWATERHOUSECOOPERS

14.     PricewaterhouseCoopers professionals categorized their time devoted to this matter on behalf of the Debtors' estates to various project categories (the "Project Categories").

| Project | | Hours | Fees |
|---|---|---|---|
| Sarbanes-Oxley 404 Services | U.S. | 10,507.95 | $1,581,039.50 |
| | Intl | 3,381.85 | $544,882.75 |
| **Sarbanes-Oxley 404 Services Total** | | **13,889.80** | **$2,125,922.25** |
| Tax Compliance - Foreign Affiliate Reporting | U.S. | 1,630.40 | $205,745.50 |
| **Tax Compliance - Foreign Affiliate Reporting Total** | | **1,630.40** | **$205,745.50** |
| Executive Personal Financial Planning Services | U.S. | | $12,500.00 |
| **Executive Personal Financial Planning Services Total** | | | **$12,500.00** |
| **Grand Total** | | **15,520.20** | **$2,344,167.75** |

## FIXED FEE SERVICES - $12,500.00

**EXECUTIVE FINANCIAL PLANNING STATEMENT OF WORK**

15.     PricewaterhouseCoopers provides (i) tax planning services to Debtors' senior executives, such as assistance with income tax projections, modelling tax impact of provided benefits, modelling tax impact of life events, withholding tax analysis, and estimated tax payment sufficiency analysis and (ii) personal financial planning services to Debtors' senior executives, such as cash flow and debt management, stock option analysis, education funding planning, retirement funding planning, retirement distributions, investment strategies, estate tax minimization, and wealth distribution.  These services are Fixed Fee by Delphi Executive.  Listed below are the total fees for the Second Quarter of 2006, the quarterly invoice is annexed hereto as **Exhibit C.**

.**Executive Financial Planning Program**

**2006 2nd Quarter Fees**

| Participant | Total Fees | Initial Year Installment |
|---|---|---|
| **Mark Weber** | $ 2,000 | |
| **Karen Healy** | $ 2,000 | |
| **Atul Pasricha** | $ 1,500 | |
| **David Knill** | $ 1,500 | |
| **William Lloyd** | $ 2,750 | 4 of 4 |
| **Mark Hester** | $ 2,750 | 1 of 4 |
| **Current Fees** | $ 12,500 | |

## HOURLY FEE SERVICES - 15,520.20 HOURS - $2,331,667.75

16. During the Compensation Period, PricewaterhouseCoopers performed a wide variety of services for the Debtors which are set forth in the detailed time records, as attached within **Exhibit F**. Below is a summary of the most significant professional services performed by PricewaterhouseCoopers during the Compensation Period:

### SARBANES-OXLEY 404 SERVICES

| | | | |
|---|---|---|---|
| Sarbanes-Oxley 404 Services | US | 10,507.95 | $1,581,039.50 |
| | Intl | 3,381.85 | $544,882.75 |
| **Sarbanes-Oxley 404 Services Total** | | **13,889.80** | **$2,125,922.25** |

### A. Bankruptcy Employment Application and Other Court Filings – 46.7 hours - $10,561.50

17.     During the Application Period, PricewaterhouseCoopers' professionals undertook the tasks and analysis of reviewing the Application to employ PricewaterhouseCoopers to provide certain Sarbanes-Oxley compliance, tax and financial planning, and other general tax consulting services to the Debtors, prepare an Affidavit disclosing our position and performed the required tasks and analysis to provide the necessary and required disclosure of PricewaterhouseCoopers' relationships with parties-in-interest to the Debtors' case.  The tasks included submitting queries to an internal database containing names of individuals and entities that are present or recent former clients of PricewaterhouseCoopers to identify potential relationships, and determine the nature and type of relationship for disclosure to the Court. These conflict check and disclosure activities are in excess of the normal requirements associated with PricewaterhouseCoopers' normal retention as Sarbanes-Oxley, accounting, tax or other advisory services.

### B. Monthly and Interim Fee Applications – 30.6 hours - $7,227.00

18.     During the Compensation Period, PricewaterhouseCoopers devoted time to educating the client-service team regarding the fee application process and examples of the respective fee applications and best practices for preparing time descriptions for the Bankruptcy Court. PricewaterhouseCoopers established a billing team devoting time to the review and preparation of the required billing submissions to the Bankruptcy Court, as well as the creation of an interim billing program (i.e. Time Tracker) for the professionals to submit their time by project and task code, as required by the Bankruptcy Court.

### C. Non-Working Travel Time – 476.8 hours - $76,560.75

19.     PricewaterhouseCoopers' professionals incurred non-working travel time between its respective PricewaterhouseCoopers' offices and the various Delphi office locations.  Pursuant to the Local Rules, non-working travel time shall be separately described and may be billed at no more than 50% of regular hourly rates.  PricewaterhouseCoopers reports each professional's non-working travel time billed to Delphi at 50% of the travel time; as such, PricewaterhouseCoopers is complying with the 50% reduction requirement.

### D. Validation and Remediation Services – 4,896.90 hours - $830,410.00

20.     PricewaterhouseCoopers provided project assistance under the direction of Mr. David A. Bayles, related to Client's requirements under Section 404 of the Sarbanes Oxley Act of 2002 (SOX 404) and pertaining to Delphi's overall SOX 404 management certification testing and remediation plans.  The majority of efforts fall into this category.  During the interim period covered by this filing, most PricewaterhouseCoopers' activities were oriented around preparing for and beginning to execute the validation and remediation activities that will occur in subsequent interim periods.  PricewaterhouseCoopers assisted Delphi by providing all of the services in the manner, at the locations and within the times as set forth in Delphi's RFQ: RED-001-06 of January 13, 2006 and as amended by an Addition dated January 23, 2006, Sections 2.2 and 3.1 through 3.15]. During the Compensation Period, PricewaterhouseCoopers prepared for and began to execute the following activities:

(a)     Performed validation testing at locations selected by Delphi management.

(b)     In order to facilitate external audit reliance as contemplated in our SOW, at each testing location specifically identified by management, PwC provided a binder or binders that contain the following:

   (i)     A summary report of the test results;
   (ii)    The testing templates and work papers;

  (iii) Copies of all samples and or items tested;
  (iv) Any walkthrough diagrams and/or narratives;
  (v) Any deficiencies found, copies of remediation plans as approved by Client, remediation testing templates, work papers, copies of test samples, and summary results;
  (vi) Anything else which PwC deems useful in order to assist management to achieve its objectives for compliance with Section 404.

(c) Entered all relevant and required data into Certus, as requested by management and as made possible by the technology.

(d) Where requested, assisted testing location management with identification of possible remediation activities. In addition, as requested, PwC provided advice to management's regarding its implementation of the remediation activities.

(e) Once testing location management believes that any issues have been remediated, performed additional testing to determine if controls had been effectively remediated.

**E. Process Walkthroughs – 3,703.50 hours - $500,103.00**

21. During the 2005 validation testing, Delphi had a number of exceptions which were attributed to the use of "generic" key controls which didn't represent the actual key controls in place at individual manufacturing locations. In order to increase testing efficiency for operating management, the SOX team (including PricewaterhouseCoopers) and Delphi IAS in 2006, Delphi management requested that PricewaterhouseCoopers perform limited process walkthroughs through discussions with local management. The goal of the walkthroughs was to identify the specific key controls that are in place at each trial balance (the "TB") in scope, discuss them with local management to make sure that they agree that those are the appropriate controls and then to tailor the validation plans to test the specific controls that are in place. Note that the decision was made to perform walkthroughs at the trial balance level versus each location to be visited (47 TB's versus 111 locations) in order to minimize hours. During the Compensation Period, PricewaterhouseCoopers prepared for and began to execute the following activities:

- Performed limited process walkthroughs for each trial balance and document the results. The walkthroughs consisted of meetings with process owners to understand processes and suggest key financial reporting controls to local management for their approval. For each trial balance, PricewaterhouseCoopers provided completed walkthrough templates for each business cycle in the planned scope and a responsibility matrix. These documents will be used by local management to update the site-specific controls in the control frameworks in preparation for validation testing.

### F. IT Validation and Remediation Services – 3,754.40 hours - $579,319.00

22.     PricewaterhouseCoopers provided IT validation and remediation assistance under the direction of Mr. David A. Bayles and Delphi IT management, related to Delphi's SOX compliance requirements. These activities were specifically related to providing management testing and guidance on application and infrastructure controls that support and complement the business process controls that are covered by the activities described in D. above. During the Compensation Period, most activities were oriented around preparing for and beginning to execute the validation and remediation activities that will occur in subsequent interim periods. During the Compensation Period, PricewaterhouseCoopers prepared for and began to execute the following activities:

(a)     Assistance with Information Technology General Computer Controls as follows:
   (i)     Review and input on the ITGC control framework
   (ii)    Review and input on testing scope and procedures
   (ii)    Management testing of ITGC controls

(b)     Assistance with segregation of duties as follows:
   (i)     Performed a review of Delphi's segregation of duties tool (SODA) and validated results
   (ii)    Ran reports with PwC's segregation of duties tool (ACE) for comparison with SODA

     i.  Defined segregation of duties conflict rules to prepare for the annual segregation of duties review

(c) Participated in process walkthroughs (E) to identify and validate SAP application controls.

**G. eTBR Services – 742.6 hours - $79,778.00**

23. In response to internal control concerns raised by Deloitte & Touche, Delphi's previous external auditor, as part of the 2005 financial statement audit, Delphi management agreed to compare the general ledger balances for individual locations to the balances submitted through Hyperion to ensure that the balances are correct in Hyperion. Management requested that PricewaterhouseCoopers provide resources to assist with this project. The results of the project were used by management to support management's assertion that the balances are accurate. The total number of comparisons evaluated was approximately 280. The PricewaterhouseCoopers team assisted the Delphi SOX core team in the following activities:

(a) Prepare the templates that were sent to the local management teams to complete;

(b) Identify differences between the local general ledgers and Hyperion balances and either followed up directly with local management or provided questions to the SOX core team for them to follow up with local management; and

(c) For a sample of the comparisons, the PricewaterhouseCoopers team obtained a copy of the local general ledgers via facsimile and compared that information to the information included by local management in their comparisons.

**H. Contract Administration – 238.30 hours - $41,963.00**

24. PricewaterhouseCoopers provided assistance with remediating the Contract Administration material weakness. PricewaterhouseCoopers provided specific technical skills to assist the Delphi material weakness remediation team with identifying and implementing key controls to correct the issues identified by Delphi during 2005. The PricewaterhouseCoopers contract management team conducted a survey across Delphi of contract management processes,

controls and systems in order to identify strengths and weaknesses. They suggested alternative approaches to improve the contract management process, including a specific focus toward identifying initial action steps to eliminate the reported contract administration control weakness.

**TAX COMPLIANCE - FOREIGN AFFILIATE REPORTING**

| Tax Compliance - Foreign Affiliate Reporting | U.S. | 1,630.40 | $205,745.50 |
|---|---|---|---|
| **Tax Compliance - Foreign Affiliate Reporting Total** | | **1,630.40** | **$205,745.50** |

25.     PricewaterhouseCoopers provides tax compliance assistance in connection with the foreign affiliate tax reporting requirements included in the 2005 Delphi consolidated U.S. tax return, including, but not limited to, analysis and computations of U.S. earnings and profits and related creditable income tax pools, analysis of potential subpart F inclusions, analysis of the U.S. tax implications of dividend distributions and related section 902 credits, and computation of intercompany transaction flow information for use in transfer pricing analysis.

**SARBANES-OXLEY 404 SERVICES - EXPENDITURES**

26.     The disbursements of PricewaterhouseCoopers for the Statement Period are as follows:

| Disbursement | Amount |
|---|---|
| Airfare | $153,706.33 |
| Lodging | $6,9804.64 |
| Meals while Traveling | $19,721.55 |
| Parking | $2,220.95 |
| Personal Car Mileage | $11,384.61 |
| Public Transportation | $12,140.74 |
| Rental Car | $20,120.36 |

| Disbursement | Amount |
|---|---|
| Sundry - Other (e.g. computer equipment while at client location, telecommunications, copies) | $9,445.09 |
| **TOTAL** | **$298,544.27** |

27. Although every effort has been made to include all fees and expenses incurred in the First Interim Fee Application, some fees and expenses might not be included in this First Interim Fee Application due to delays caused by accounting and processing procedures. PricewaterhouseCoopers reserves the right to make further application to this Court for allowance of such fees and expenses not included herein. Subsequent fee applications will be filed in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules and the Fee Order.

28. The services detailed above were reasonable and necessary in order for PricewaterhouseCoopers to perform its duties and obligations to the Debtors and this Court, applying PricewaterhouseCoopers' usual and customary billing rates for the types of services performed, except where, as noted, discounts were applied in accordance with the engagement letters. Billing rates are subject to change and are reviewed and adjusted periodically.

29. In rendering these services, PricewaterhouseCoopers made every effort to maximize the benefit to the Estate and to work with other professionals employed in the case to avoid duplication of effort. PricewaterhouseCoopers believes that the level of services rendered to achieve the results obtained for the benefit of the Estate was reasonable in light of the number and complexity of the issues involved in this case. PricewaterhouseCoopers judiciously allocated responsibilities to minimize possible duplication of effort.

30. Other than as provided in Section 504(b) of the Bankruptcy Code, PricewaterhouseCoopers has not shared, or agreed to share, any compensation received with

respect to the First Interim Fee Application period as a result of this case with any person, firm or entity. No promises concerning compensation have been made to PricewaterhouseCoopers by any firm, person or entity. The sole and exclusive source of compensation shall be funds of the Estate.

## **CONCLUSION**

31.     PricewaterhouseCoopers respectfully submits that the interim compensation requested herein is reasonable compensation for the actual and necessary services rendered based upon the time, nature and value of such services. PricewaterhouseCoopers further asserts that the costs of services rendered and expenses incurred are comparable to the cost of similar services and expenses in matters other than under the Bankruptcy Code and consistent with PricewaterhouseCoopers' Retention Application.

WHEREFORE, for all of the foregoing reasons, PricewaterhouseCoopers respectfully requests that this Court enter an order: (a) awarding PricewaterhouseCoopers allowance of compensation in the amount of $2,344,167.75 and reimbursement of out-of-pocket expenses in the amount of $298,544.27 for the Compensation Period and directing payment of the foregoing sums to the extent not previously paid; (b) authorizing and directing the Debtors to pay the unpaid balance for said fees and expenses; and (c) granting PricewaterhouseCoopers such other and further relief as this Court deems just and proper.

Dated: February 27, 2007
       Detroit, Michigan

                                   PRICEWATERHOUSECOOPERS LLP
                                   Providers of Certain Sarbanes-Oxley Compliance, Tax and Financial Planning, and Other General Tax Consulting Services to the Debtors and Debtors in Possession

                                   By: /s/ Brian D. Decker
                                   Brian Decker
                                   Partner

                                   PricewaterhouseCoopers LLP
                                   1900 St Antoine Street
                                   Detroit, Michigan 48226-2263
                                   Telephone: (313) 394-6000
                                   Facsimile: (313) 394-6555