1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481

5    - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DELPHI CORPORATION,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                U.S. Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                March 1, 2007

19                10:13 a.m.

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1    CLAIMS Objection Hearing Regarding Claim of Eva Orlik

2

3    CLAIMS Objection Hearing Regarding Claim of Joseph Reno

4

5    CLAIMS Objection Hearing Regarding Claim of DBM Technologies,

6    LLC

7

8    CLAIMS Objection Hearing Regarding Claim of Edith James

9

10   CLAIMS Objection Hearing Regarding Claim of Freddie L. Johnson

11

12   CLAIMS Objection Hearing Regarding Claim of Terrence Evans

13

14   CLAIMS Objection Hearing Regarding Claim of Thomas

15   Wimsatt/Donna Wilson

16

17   CLAIMS Objection Hearing Regarding Claim of Harold Woodson

18

19   CLAIMS Objection Hearing Regarding Claim of LaborSource 2000,

20   Inc.

21

22

23

24   Transcribed By:  Esther Accardi

25

3

```
 1    A P P E A R A N C E S :

 2    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 3          Attorneys for Debtor

 4          Four Times Square

 5          New York, New York 10036

 6

 7    BY:   JOHN K. LYONS, ESQ.

 8          THOMAS J. MATZ, ESQ.

 9          MS. DIAZ, ESQ.

10

11    LAW OFFICE OF HARVEY ALTUS, P.C.

12          Attorney for LaborSource 2000

13          20500 Northwestern Highway

14          Farmington Hills, Michigan 48334

15

16    BY:   HARVEY ALTUS, ESQ.

17          (Telephonically)

18

19    LATHAM & WATKINS, LLP

20          885 Third Avenue

21          New York, New York 10022

22

23    BY:   JUDE GORMAN, ESQ.

24

25
```

4

```
1                    P R O C E E D I N G S
2              THE COURT:  Please be seated.  Okay.  Delphi
3    Corporation.
4              MR. LYONS:  Good morning, Your Honor.  John Lyons on
5    behalf of the debtors.  I have here with me --
6              MR. ALTUS:  Harvey Altus on behalf of LaborSource
7    2000.
8              THE COURT:  Okay.
9              MR. LYONS:  And, Your Honor, I have Mr. Matz and Ms.
10   Diaz who are also seated at counsel table, and Ms. Kraft and
11   Mr. Unruh, as well, on behalf of the debtors.
12             THE COURT:  Okay.
13             MR. LYONS:  Your Honor, this is the fourth claims
14   hearing pursuant to the claims procedures that Your Honor
15   entered last December.  And with Your Honor's permission, I'll
16   proceed through the agenda.
17             THE COURT:  That's fine.
18             MR. LYONS:  Okay.  First on the agenda, Your Honor,
19   we have a number of adjourned matters that were original set
20   for hearing for today.  And that would be the claim objection
21   to the claim filed by Eva Orlik.  The claim objection filed
22   with respect to Mr. Joseph Reno.  And then also a claim
23   objection pursuant to our fourth omnibus claims objection filed
24   with respect to DBM Technologies.  Those three matters are
25   being continued to March 21st.  We have continued the
```

5

1  mediations for the first two claims unsuccessfully, so it looks

2  like we may have a contested hearing for the Orlik claim and

3  the Reno claim on March 21st.

4          THE COURT:  Okay.

5          MR. LYONS:  Next, Your Honor, we have a number of

6  uncontested matters that were scheduled for hearing.  I'm happy

7  to report that we were able to settle five of the six matters

8  that are currently pending for today.  The claim of Leslie

9  James, asserted in the amount for 1.13 million, we've settled

10  that for 100,000 dollars.  The claim filed by Freddie Johnson

11  was asserted in the amount of 300,000 dollars, we've settled

12  that for 15,000 dollars.  The claim filed by Terrence Evans,

13  which was asserted in the amount of 300,000 dollars, has been

14  settled for 5,000 dollars.  And when I say settled, I mean an

15  allowed general unsecured claim.  The claim filed by Mr. Thomas

16  Wimsatt/Donna Wilson was asserted in the amount of 250,000

17  dollars, and the parties have agreed to settle that for 15,000

18  dollars.  And then, finally, the claim filed by Mr. Harold

19  Woodson, filed at an undetermined amount, has been settled for

20  15,000 dollars.

21          THE COURT:  Okay.

22          MR. LYONS:  So upon execution of the settlement

23  agreements, Your Honor, we will forward to Your Honor

24  stipulations which will allow the claim in that amount and

25  waive any other claims.

6

1          THE COURT:  Okay.  Just when I do the amounts, you

2    don't need to notice any of those then, right?

3          MR. LYONS:  No.  These have all been settled pursuant

4    to the settlement procedures order.

5          THE COURT:  The amounts are below the caps where you

6    would need to notice them?

7          MR. LYONS:  Correct.

8          THE COURT:  All right.

9          MR. LYONS:  So those will be forthcoming shortly,

10   Your Honor.

11         THE COURT:  Okay.

12         MR. LYONS:  Your Honor, that brings us all the way to

13   the only contested matter for today, and that is the claim

14   objection hearing regarding the claim of LaborSource 2000, Inc.

15   Your Honor, we have had -- we filed the appropriate notices and

16   had the appropriate meet and confers as well as mediations with

17   respect to this claim.  Counsel for LaborSource and I have

18   agreed to limit the record here to just what has been filed.

19   And there will be no live testimony or no cross-examination.

20   Parties have agreed to that, to just argue on basic legal

21   submissions.

22         THE COURT:  Okay.

23         MR. LYONS:  However, it will be, you know, on the

24   evidence, Your Honor.  We do have -- we're asking Your Honor

25   not to review it under, you know, motion to dismiss standard,

7

1    rather, and enter a judgment on the merits.

2           THE COURT:  So, for example, LaborSource is not going

3    to cross-examine the two declarants?

4           MR. LYONS:  That's the understanding of the parties,

5    Your Honor.

6           THE COURT:  Okay.

7           MR. LYONS:  And just as a housekeeping matter, I

8    would like to introduce formally into evidence -- offer and

9    introduce into the evidence the declarations that we've filed

10    in connection with our brief.  And also -- so that would be the

11    Robins declaration, the Hudson declaration and also the

12    certificate by Ms. Kraft, which attaches the standard terms and

13    conditions of the Delphi purchase orders as Exhibits 1, 2 and

14    3.  So if I could offer those?

15           THE COURT:  And that includes the exhibits to Robins

16    which are the agreements?

17           MR. LYONS:  Yes, Your Honor.

18           THE COURT:  Okay.  That's fine.  Those will be

19    admitted.

20    (Robins declaration was hereby received as Debtor's Exhibit 1

21    for identification, as of this date.)

22    (Hudson declaration was hereby received as Debtor's Exhibit 2

23    for identification, as of this date.)

24    (Certificate by Ms. Kraft was hereby received as Debtor's

25    Exhibit 3 for identification, as of this date.)

8

1          MR. LYONS:  And as well, Your Honor, Mr. Altus can

2     just confirm, I do have the docket from LaborSource's Chapter 7

3     case.  The case has been closed.  The final decree has been

4     entered.  If Mr. Altus would confirm that I could just stand on

5     that confirmation, otherwise we do have the docket sheet for

6     LaborSource 2000.

7          MR. ALTUS:  Yeah, that case has been closed.

8          THE COURT:  Okay.

9          MR. LYONS:  Okay, Your Honor, that's all I need for

10    housekeeping.  Your Honor, now I'm prepared to argue, if Your

11    Honor would like.

12         THE COURT:  That's fine.

13         MR. LYONS:  Your Honor, based upon the submissions

14    that we've made in our brief and including the declarations

15    that have now been introduced into evidence, Your Honor, we

16    respectfully submit that LaborSource's claim should be

17    disallowed.  The well-settled standard for proof of claim is it

18    constitutes prima facie evidence of validity.  Once rebutted,

19    the burden shifts back to the claimant to prove the -- to come

20    forward with evidence to prove the allowed ability of the

21    claim.  We submit that our briefs and our declarations have

22    sufficiently rebutted that presumption.  And, Your Honor, there

23    is not any evidence at all that has been submitted by

24    LaborSource to prove the validity of the claim.  Indeed, the

25    only evidence that Your Honor has before it is the declarations

9

1    of Mr. Robins and Mr. Hudson which are uncontroverted and show

2    that no representations were made as alleged by LaborSource

3    2000 in their complaint of future business or evidence of

4    certain volume guarantees.  Indeed, the contracts that Delphi

5    entered into with LaborSource were requirements contracts which

6    are pretty standard in the industry which again allow -- which

7    do not give any volume guarantees to a particular supplier due

8    to the fragile nature of the supply chain in the automotive

9    industry:  GM, Ford, Daimler-Chrysler, at any time they

10   discontinue a product line and that flows down to the tier one

11   and the other tier suppliers.  So that's why the structure of

12   these contracts in this industry are those of requirements

13   contracts, and it was no different here.

14          There are a number of merit base points, Your Honor,

15   and I'm not going to belabor them; I think we've adequately

16   briefed them in our brief.  But there's a threshold issue as to

17   whether LaborSource even has standing to bring this claim in

18   light of its Chapter 7 case and the fact that a final decree

19   has been entered.  And we've cited Your Honor a few cases,

20   including U.S. Dismantlement case, which says that once a

21   corporation goes to Chapter 7 and a final decree's been entered

22   it's a defunct corporation, it does not have standing to pursue

23   a pre-decree cause of action against another party.  So for

24   that basis, we believe there's a threshold matter where

25   LaborSource's claim should be disallowed.

10

1          To the merits of the claim, Your Honor, all of these

2     purchase orders were made pursuant to Delphi's standard terms

3     and conditions.  The purchase orders were fully integrated.

4     Said, you know, basically evidence the parties' agreement that

5     there were no other representations made except of that

6     contained in the purchase order.  So, again, we think that is a

7     basis to disallow the claim.

8          Finally, the uncontroverted testimony of Mr. Robins

9     and Hudson confirms that no such promises were ever made to

10    LaborSource.  So from an evidentiary standpoint, we believe

11    there's no basis for the underpinning of LaborSource's claim.

12         And then finally, Your Honor, the settlement and

13    release agreement which was signed in June 2004 actually

14    released Delphi from any pre-June 2004 potential claims by

15    LaborSource.  Again, the purchase orders were entered into well

16    before June 2004.  So on the basis of the release, there is no

17    claim against Delphi.  And if there are any promises which, of

18    course, Mr. Hudson and Mr. Robins contest, if there were any

19    promises that were made after that release, the agreement and

20    the purchase orders required that those be in writing and there

21    are no such writings, Your Honor.

22         So for all these reasons, Your Honor, Delphi

23    respectfully submits that LaborSource 2000's claim should be

24    disallowed in its entirety.

25              THE COURT:  Okay.  Mr. Altus?

11

1          MR. ALTUS:  Okay.  Well, thank you for allowing me to

2     appear in this manner, first of all, Judge.  I appreciate that.

3     I think what we have to do in a situation such as this is,

4     Judge, is recognize that this claim was started in the Michigan

5     Circuit Court and was probably be better suited as a state

6     lawsuit than as claim in bankruptcy.  The reason being that for

7     our claim, we need to go beyond the written contract.  Our

8     claim is premised upon nondisclosure misrepresentations, that

9     I'll mention, which resulted in my client submitting its bid to

10    begin with.  Delphi did not disclose that there was a union

11    contract already in place when it first submitted its bid, that

12    the union contract was going to be binding or was expected to

13    be binding on my client, that there were already grievances

14    pending there with respect to the job that was at issue.  This

15    was a job in Lansing, Michigan having to do with production of

16    certain automobile contracts for General Motors.  So my client

17    came to an existing situation that it did not know about when

18    it submitted its bids and is something that we claim Delphi

19    should have at least informed them of instead of just submitted

20    a general bid request.  My client bid for it and then found out

21    it was getting into something that it had no idea that it was

22    getting into.

23          Mr. Lyons described that there was a settlement and

24    relief agreement that was entered into between the parties

25    later on when it was discovered that basically my client was

12

1   going to go out of business if it did not receive some relief.

2   And as to that document, Your Honor, I think that was more a --

3   I think our claim as to that document is that it was more of a

4   claim of adhesion.  My client had little choice but to sign

5   that document.  It got a little bit of relief from Delphi but

6   it was certainly not enough to keep them in business.  And my

7   client had little choice but to sign that document, otherwise

8   it would have been out of business even sooner than it did go

9   out of business.

10          My client struggled along and kept the project going

11  until it finally did shut down.  After which my client also had

12  to shut down, basically.  And as a result of the omissions and

13  the misrepresentations, essentially the bullying of Delphi with

14  respect to a much smaller company and a much more vulnerable

15  company, my clients suffered a number of damages, not the least

16  of which that it was out of business and had to file Chapter 7.

17          There was personal cash liability accrued on behalf

18  of LaborSource 2000 of the amount of 200,000 dollars.  There

19  were a number of bridge loans that they had to take out in

20  order to keep themselves running and keep themselves satisfying

21  what they felt to be their contractual requirements with

22  Delphi, and those were 160,000 dollars.  There were a number of

23  additional damages relating to Workers' Compensation claims

24  that were about 65,000 dollars and a number of other, you know,

25  lost profits and so forth.

13

```
 1              And so I think what the crux of our claim is not so

 2      much reading the written contract and deciding on now, but

 3      going beyond the written contract recognizing that Delphi

 4      really did not fully disclose, in the first instance, what this

 5      bid was all about.  And then in the second instance with

 6      respect to the settlement and relief, I think it must be

 7      recognized that they had a couple of unequal bargaining parties

 8      and my client was in a position basically where they had to

 9      accept what Delphi was offering and that was it.  And it was

10      not enough.  It was enough to finish the project for Delphi but

11      it was certainly not enough to keep them in business

12      afterwards.  And as a result, these other damages were

13      suffered.

14              THE COURT:  I thought the project wasn't finished, I

15      thought it was terminated?

16              MR. ALTUS:  I think General Motors -- it was finished

17      with respect to my client, I'm sorry.  General Motors

18      terminated it earlier than was expected, but my client

19      completed its contractual obligation.  GM may have terminated

20      it earlier, that part is true.  But my client completed it.

21      They did everything that they were expected to do until the

22      project shut down.

23              THE COURT:  Then how could there be damages for early

24      termination?

25              MR. ALTUS:  The project was supposed to be completed
```

14

1    through, I believe it was the end of 2005.  It was not expected

2    to be terminated early by General Motors.  This was also

3    something that was not explained to my client when they

4    initiated the bid process.

5            THE COURT:  But if your client did all the work that

6    it was supposed to do, why would the subsequent termination by

7    GM affect it damages in any way, even assuming the validity of

8    this theory?

9            MR. ALTUS:  Okay.  My client was paid based upon a

10   certain dollar amount per hour for employees supplied to the

11   project.  It was anticipated that a certain number of hours

12   would be worked.  Delphi did not disclose, at the initiation of

13   the bid process, the amount of downtime that would be expected.

14   They were expecting to be working for a certain number of weeks

15   during the year and my client was expecting that number of

16   weeks during the year, and it did not happen.

17           My client was not advised also that General Motors

18   might actually terminate the contract early.  Because they did

19   terminate the contract early, again, my client was not afforded

20   the expected number of service hours.  And as a result, lost a

21   certain process and --

22           THE COURT:  Why shouldn't the parol evidence rule

23   apply here?  Mr. Altus?

24           MR. ALTUS:  I'm sorry, I thought I lost you there for

25   a second.

15

1          THE COURT:  Why shouldn't the parol evidence rule

2     apply here?

3          MR. ALTUS:  As I stated before, I think the case was

4     much more conducive to the state lawsuit that was started.

5          THE COURT:  Well, doesn't Michigan law recognize the

6     parol evidence rule?

7          MR. ALTUS:  Well, it does.  But I think it goes

8     beyond that, Judge.  I think our claim goes beyond, like I

9     indicated, that misrepresentation and omissions in the first

10    instance and then the unequal bargaining power of the parties

11    when it came to the settlement and relief that occurred on down

12    the road.

13         THE COURT:  Okay.  All right.  Anything further by

14    either side?

15         MR. LYONS:  Just a note, Your Honor.  The settlement

16    and combination agreement, the last paragraph does reflect

17    that -- and it's paragraph 15, Your Honor.  It says

18    "consultation with counsel of the parties hereto acknowledge

19    that they have been given the opportunity to consult with

20    counsel before executing this agreement.  And they are

21    executing such agreement without duress or coercion or without

22    reliance and any representations, warranties or commitments

23    other than those representations, warranties and commitments

24    set forth in this agreement and the purchase order."  And I

25    think, Your Honor, it's clear that LaborSource 2000 was

16

1    represented by counsel with respect to this agreement.  So I

2    think that would cut against this adhesion theory.  And again,

3    Your Honor, although Mr. Altus has argued, there is no

4    evidentiary support for his arguments in the current record.

5              THE COURT:  Okay.  Is there any dispute that as far

6    as the written agreements are concerned, Delphi has performed,

7    has made the payments provided for in the written agreements?

8              MR. ALTUS:   No, Judge, we can't dispute that.

9              THE COURT:  Okay.  All right.  Okay.  I have before

10   me the debtor, Delphi Automotives Systems, or DAS's, objection

11   to the proof of claim filed by LaborSource 2000, Inc. in this

12   Chapter 11 case.  That claim asserts damages not under, but

13   extrinsate to agreements entered into by DAS and LaborSource

14   before DAS's Chapter 11 case and also before LaborSource's

15   Chapter 7 case.

16             The claim, essentially, is that under various

17   theories, Delphi owes LaborSource for lost revenue due to

18   unexpected downtime in providing personnel for a DAS project,

19   since under the contracts, DAS was obligated to pay only for

20   hours worked.  As well as in respect to the early termination

21   of the project.

22             In addition, LaborSource claims that it is owed

23   increased Workers' Compensation premiums necessitated due to

24   unanticipated union requirements, 65,000 dollars in outstanding

25   employee medical bills resulting from the cancellation of

17

1    medical insurance that LaborSource could not sustain,

2    apparently, as a consequential result of the termination of the

3    project and the losses that LaborSource sustained under the

4    contracts.  And 160,000 dollars of additional interest and

5    expenses for bridge loans that LaborSource sought to maintain

6    during the course of the project.  In addition, it makes a

7    claim that pursuant to a unilateral proposal by Delphi to

8    various suppliers, including to LaborSource, to share the

9    savings of any cost savings ideas that the suppliers passed on

10   to Delphi, that LaborSource made a suggestion in response in

11   respect of something it called a job bank, without further

12   description, that Delphi used that suggestion and realized

13   savings therefrom.  This claim is not quantified or provided

14   any further support.

15        The parties have agreed on the evidentiary record in

16   respect of this proceeding and I've reviewed it and have

17   concluded for a number of reasons, which I'll now go through,

18   that the claim is as DAS asserts and should indeed be

19   disallowed in its entirety.  That is because DAS has provided

20   sufficient underpinnings and evidentiary support to rebut that

21   prima facie validity of the claim and consequently shifted the

22   burden of sustaining the claim to LaborSource and LaborSource

23   has not sustained that burden.  As an initial matter, DAS

24   argues that LaborSource lacks standing to assert the claim in

25   the first place.  The basis for that contention is that

18

1    LaborSource has gone through its own Chapter 7 case, which has

2    now been concluded, and the trustee in that case did not pursue

3    this claim.  And, consequently, as a result of the conclusion

4    of the Chapter 7 case, LaborSource, under Section 7027 of the

5    bankruptcy code, not having received a discharge as a corporate

6    entity, is, as a result, a defunct entity without standing to

7    pursue claims on its own behalf.

8            It cites in support of its standing argument two

9    district court cases, U.S. Dismantlement Corporation v. Brown

10   Associates Inc., 2000 Westlaw 433971 Ed. PA, April 13, 2000,

11   and Liberty Trust Company Employees Profit Sharing Trust v.

12   Holt, In re Liberty Trust 130 BR 467, (WD Texas 1991).  Those

13   cases adequately go through the rationale for the proposition

14   that a former Chapter 7 debtor whose case has been completed

15   lacks standing to assert on its own behalf any litigation

16   claims.

17           There's a surprising dearth of case law in this area.

18   And I note that there is at least one conflicting case also

19   from the Eastern District of Pennsylvania In re Fifth and

20   Mitchell Street Corporation 2001, Westlaw 34355652 ED

21   Pennsylvania, December 13, 2001.  And I've reviewed that and

22   I've concluded that under these circumstances, this being a

23   Michigan corporation, which under Michigan law as a dissolved

24   corporation would still have the ability to sue and be sued in

25   its corporate name.  See MCLS Section 450.1834(e) 2006.  The

19

1    better view is that LaborSource would have standing to pursue

2    litigation here.

3          I note that in addition, while both U.S.

4    Dismantlement and the Liberty Trust cases refer to such a

5    former Chapter 7 debtor as a "defunct corporation" and refer to

6    and rely heavily on dictionary definitions of the term defunct,

7    which mean under those definitions that it is effectively dead

8    and no longer capable of acting on its own behalf.  The code,

9    the bankruptcy code, itself, does not so characterize a former

10   debtor like LaborSource, it merely says that a corporate debtor

11   in Chapter 7 does not receive a discharge.  Both those cases as

12   well as the Fifth and Mitchell Street Corporation case discuss

13   the rationale for not giving Chapter 7 corporate debtors a

14   discharge, which is that Congress wanted to prevent such

15   entities from selling their corporate shells as a tax avoidance

16   tactic.  But that strategy can be fulfilled, I believe, equally

17   simply by recognizing that such an entity does not receive a

18   discharge since the debt would still exist and vitiate any

19   benefits obtained from trafficking in that corporate shell.  So

20   while I understand the logic of the U.S. Dismantlement case, I

21   believe that here, where under Michigan law a dissolved

22   corporation has the ability to sue or be sued, that LaborSource

23   has standing.

24          I also note that there is obviously a possibility

25   that there being it appears at least no formal abandonment of

20

1    this cause of action by the Chapter 7 trustee, he or she could

2    conceivably seek to reopen the case if there was any merit to

3    the claim.  And, therefore, it makes sense for me to address

4    the merits, in any event, since they are now briefed and

5    there's a factual record before me.  On the merits, it's clear

6    that this claim should be dismissed.  First, in respect of

7    certain of the damages claimed, namely increased Workers'

8    Compensation premiums totaling 320,000 dollars due to allegedly

9    unanticipated union requirements, 65,000 dollars in outstanding

10   employee medical bills, and 160,000 dollars of additional

11   interest and expenses for bridge loans, the record is clear

12   that LaborSource has not been damaged in respect of these

13   claims in the capacity in which it's suing, which is not on

14   behalf of its estate, rather in it's own capacity, because its

15   Chapter 7 case was a no asset case and the creditors who

16   asserted these claims against it did not receive a

17   distribution.

18          In addition, the claim that LaborSource has provided

19   no substantiation for its assertion of an unliquidated or

20   unquantified claim for allegedly providing DAS with the concept

21   of a job bank.  As I've noted before, in addition to being an

22   unquantified claim, there's no explanation in the claim as to

23   what that concept was or what a job bank here was meant to

24   mean.  Moreover, the assertion, even if there were sufficient

25   particularity to say that there would be an unliquidated claim

21

1    that might be subject to reconsideration once the claim was

2    liquidated, is refuted by the declaration of James Robins,

3    which is uncontroverted.

4         That leaves the claim by LaborSource for lost profits

5    and additional costs allegedly incurred and paid by it for

6    downtime or early termination and the like under the

7    agreement -- I'm sorry, or extrinsate to the agreement between

8    the parties.  That agreement, I believe, is clear on its face

9    as to the parties' intentions.  And, consequently, is not

10   subject to the admission of extrinsate evidence to contradict

11   its terms.  See Cook v. Little Caesar Enterprises, Inc. 210

12   F.3d 653, 656 (6th Circuit 2000) which discusses and construes

13   Michigan law regarding the parol evidence rule.  And I note

14   parenthetically that the parties appear to agree that Michigan

15   law would apply here as to the merits of the claim, and even if

16   they did not agree, given the location of the contract and its

17   performance, I would apply Michigan law.

18        The agreement between the parties is a purchase order

19   which they entered into following a bid submitted by

20   LaborSource which was accepted by DAS, and which incorporates

21   the bid as well as additional terms.  The bid itself is clear

22   on its face that the labor provider, that is LaborSource, is to

23   be paid only for hours worked.  There is no provision providing

24   for compensation for downtime or for changes in the labor

25   template.  In fact, under Section 2.1 of the requirements for

22

1    the bid, it's provided that the template will change based on

2    volumes the manufacturing process product changes, etcetera.

3    This bid was incorporated in the purchase order which is

4    attached as an exhibit both to the proof of claim as well as to

5    the Robins Affidavit.  That purchase order has a clear

6    provision providing that it sets forth the complete and final

7    agreement between buyer and seller and that no other agreement

8    in any way modifying any of set terms and conditions will be

9    binding upon the buyer, that is DAS, unless made in writing and

10   signed by buyer's authorized representative.  The agreement

11   also incorporates specifically by reference the terms and

12   conditions of January 2001 which, as the agreement states, the

13   supplier has received a copy of.  Those terms and conditions

14   are also in evidence and they provide for, among other things,

15   again, an integration provision requiring that any changes to

16   them be expressly agreed to in writing by DAS, that's found in

17   paragraph 1.  And as set forth in paragraph 11, the buyer, in

18   addition to any other rights to terminate the contract, may

19   immediately terminate all or any part of the contract at any

20   time and for any reason by notifying the seller in writing and

21   limiting further the seller's sole and exclusive recovery

22   therefrom without regard to legal theory to claims that would

23   not include the type of claim asserted in this claim by

24   LaborSource for or related to the early termination of this

25   contract.

23

1            There is a provision in the terms and conditions,

2     paragraph 3, which states that the buyer may at any time

3     require seller to implement changes to the specifications or

4     design of the goods or to the scope of any services or work

5     covered by the contract and that buyer will equitably determine

6     any adjustment in price or delivery schedules resulting from

7     such changes, and that the parties will resolve any

8     disagreement arising out of such changes.  There are two

9     responses to that provision here.  The first is that the bid

10    and purchase order themselves more specifically put the

11    supplier on notice that such changes may or will occur,

12    therefore those more specific provisions would govern.

13            In addition, however, the parties did agree to alter

14    the terms of their agreement.  Such alternation being set forth

15    in writing in a settlement and accommodation agreement dated

16    June blank 2004, in which Delphi agreed without any admission,

17    and, in fact, a no admission provision was contained in the

18    agreement, that it had any obligation to do so and was not

19    admitting any liability by entering into this agreement.  But

20    nevertheless, Delphi agreed pursuant to the settlement

21    agreement to increase the amount that it would pay under the

22    purchase order in certain respects.

23            In addition, importantly, however, the parties in

24    their amendment and settlement agreement provided "neither the

25    purchase order nor this agreement create any obligation of

24

1    Delphi to purchase, obtain or pay for any minimum number of

2    hours of any personnel.  And supplier and Delphi agreed that

3    Delphi is under no such obligation.  In addition, nothing

4    contained in this agreement limits in any manner Delphi's right

5    to reduce Delphi's requirements of supplier or to terminate the

6    purchase order in accordance with its terms including without

7    limitation Delphi's termination right in accordance with

8    Section 13 of the Delphi terms and conditions January 2001,

9    which have been and remain incorporated in the purchase order

10   by reference."  In addition, in paragraph 3 of the settlement

11   agreement "the supplier released Delphi of all claims arising

12   and relating in any way to the purchase order based upon acts

13   or occurrences at any time prior to the date of the settlement

14   agreement."  Finally, the supplier, in paragraph 2, "ratified

15   and confirmed its obligations to provide the services in

16   accordance with terms of the purchase order, as amended, in

17   accordance with this agreement.  And represented and warranted

18   to Delphi that the supplier had no offsets or defenses to the

19   obligation of supplier to perform under the purchase order, as

20   amended, in accordance with the agreement."

21          Consequently, it appears to me crystal clear that

22   consistent with the bid, the purchase order, the parties

23   reconfirmed in their amendment to the purchase order that their

24   contractual arrangement was a requirements contract and that

25   among other things Delphi had no obligation to pay for any

25

1    minimum number of hours to the supplier.  And, of course, that

2    is the basis for the supplier's claim.

3           As set forth in the Little Caesar's case, the parol

4    evidence rule as applied in Michigan excludes the admission of

5    parol evidence where the party's intent that a written

6    instrument be the complete expression of their agreement is

7    clear on the face of the agreement.  That is the case here, not

8    only based on the terms that I have read but also by the

9    integration provisions and no modification provisions of the

10   agreement which, again, the Little Caesar's case refers to as

11   barring parol evidence, see 210 F.3d at 656, 657.  Such a

12   requirements contract is recognized as valid and enforceable in

13   or under Michigan law even if no requirements arose because of

14   cancellation or termination, see J&B Sausage Company v.

15   Department of Management and Budget, 2007 WL 28409, (Michigan

16   Court of Appeals January 4, 2007), as well as Teak Corporation

17   v. Dow Corning Corp., 962 F.2d 1119, 1126 (3d Circuit 1992) and

18   Neofotistos v. Harvard Brewing Company, 341 Mass. 684, 689

19   (1961) for other constructions of requirements contracts.  The

20   only limitation on that rule is that the contracting party act

21   in good faith in respect of its requirements.  However, the

22   evidence here does not show any absence of good faith by DAS.

23   Indeed, I don't believe an absence of good faith is alleged.

24   Moreover, the letter dated March 3, 2005 by Mr. Sharplee to Mr.

25   Robins states, among other things, perhaps there was nothing

26

1    that could have been done to prevent these events from

2    occurring from Delphi's perspective, that is the losses that

3    occurred because of the overall nature of the project.  So I

4    conclude that Delphi acted in good faith and that its

5    requirements contract should be enforced pursuant to its terms.

6    And, in fact, it was performed according to its terms, there

7    being no dispute that Delphi has paid and performed all of its

8    obligations under the agreement.

9           LaborSource alleges that the 2004 amendment to that

10   agreement and the settlement agreement and amendment was a

11   contract of adhesion and therefore should be disregarded.

12   Again, except for the evidence in the record as set forth in

13   the whereas clauses in the 2004 amendment, that LaborSource was

14   experiencing financial difficulties, there's no other evidence

15   that DAS was acting in bad faith or in an unconscionable way in

16   not paying LaborSource an excess of the amounts that it had

17   agreed to pay LaborSource under the contracts.  Consequently, I

18   conclude that the amendment and settlement agreement is not a

19   contract of adhesion and is enforceable.  And further, that it

20   is merely a confirmation except for the changes to the amounts

21   that Delphi would pay, those changes being to LaborSource's

22   benefit of the underlying requirements nature of the contract

23   between the parties.

24          Finally, I note that even if there were ambiguities

25   or other factors that would override the parol evidence rule,

1    there is no evidence in the record to establish that Delphi, as

2    contended in the claim, mislead or defrauded LaborSource

3    outside of the terms of the contract as to what it would be

4    paid and what its profits would be under the contract.  To the

5    contrary, the only evidence in the record on this issue is that

6    set forth in the Robins declaration and the Hudson declaration,

7    both of which establish that there were no such

8    misrepresentations for fraudulent inducement.  So for those

9    reasons, the claim should be disallowed in full.

10             MR. LYONS:  Thank you, Your Honor.  We'll submit an

11   order for Your Honor's review.

12             THE COURT:  Okay.

13             MR. LYONS:  To that effect.

14             THE COURT:  Thank you.

15             MR. LYONS:  Your Honor, that's the last item on the

16   agenda, we have nothing further.

17             THE COURT:  Okay.  Thanks a lot.

18             MR. LYONS:  Thank you, Your Honor.

19             MR. ALTUS:  Thank you, Judge.

20             THE COURT:  Okay.

21       (Proceedings concluded at 11:05 a.m.)

22

23

24

25

28

1                          **I N D E X**

2

3                       **E X H I B I T S**

4    DEBTOR'S              DESCRIPTION            PAGE

5    1                     Robins Declaration    7

6    2                     Hudson Declaration    7

7    3                     Certificate by Ms.    7

8                          Kraft

9

10                           RULINGS

11                       Page      Line

12   LaborSource Claim      27         9

13   Disallowed in Full

14

15

16

17

18

19

20

21

22

23

24

25

29

1                          C E R T I F I C A T I O N

2

3    I, Esther Accardi, court approved transcriber, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled

6    matter.

7

8    _____ March 5, 2007_____

9    Signature of Transcriber              Date

10

11   Esther Accardi_____

12   typed or printed name

13

14

15

16

17

18

19

20

21

22

23

24

25

## A

**abandonment** 19:25
**ability** 8:20 18:24
  19:22
**able** 5:7
**above-entitled** 29:5
**absence** 25:22,23
**Accardi** 2:24 29:3
  29:11
**accept** 13:9
**accepted** 21:20
**accommodation**
  23:15
**accrued** 12:17
**acknowledge** 15:18
**act** 25:20
**acted** 26:4
**acting** 19:8 26:15
**action** 9:23 20:1
**acts** 24:12
**addition** 16:22 17:6
  19:3 20:18,21
  22:18 23:13,23
  24:3,10
**additional** 12:23
  17:4 20:10 21:5,21
**address** 20:3
**adequately** 9:15
  18:13
**adhesion** 12:4 16:2
  26:11,19
**adjourned** 4:19
**adjustment** 23:6
**admission** 21:10
  23:16,17 25:4
**admitted** 7:19
**admitting** 23:19
**advised** 14:17
**affect** 14:7
**Affidavit** 22:5
**afforded** 14:19
**agenda** 4:16,18
  27:16
**agree** 21:14,16
  23:13
**agreed** 5:17 6:18,20

17:15 22:16 23:16
  23:20 24:2 26:17
**agreement** 10:4,13
  10:19 11:24 15:16
  15:20,21,24 16:1
  21:7,7,8,18 22:7,7
  22:10,12 23:14,15
  23:18,19,21,24,25
  24:4,11,14,17,20
  25:6,7,10 26:8,10
  26:10,18
**agreements** 5:23
  7:16 16:6,7,13
**alleged** 9:2 25:23
**allegedly** 20:8,20
  21:5
**alleges** 26:9
**allow** 5:24 9:6
**allowed** 5:15 8:20
**allowing** 11:1
**alter** 23:13
**alternation** 23:14
**Altus** 3:11,16 4:6,6
  8:1,4,7 10:25 11:1
  13:16,25 14:9,23
  14:24 15:3,7 16:3
  16:8 27:19
**ambiguities** 26:24
**amended** 24:16,20
**amendment** 23:24
  24:23 26:9,10,13
  26:18
**amount** 5:9,11,13,16
  5:19,24 12:18
  14:10,13 23:21
**amounts** 6:1,5 26:16
  26:20
**anticipated** 14:11
**apparently** 17:2
**Appeals** 25:16
**appear** 11:2 21:14
**appears** 19:25 24:21
**applied** 25:4
**apply** 14:23 15:2
  21:15,17
**appreciate** 11:2

**appropriate** 6:15,16
**approved** 29:3
**April** 18:10
**area** 18:17
**argue** 6:20 8:10
**argued** 16:3
**argues** 17:24
**argument** 18:8
**arguments** 16:4
**arising** 23:8 24:11
**arose** 25:13
**ARPS** 3:2
**arrangement** 24:24
**asking** 6:24
**assert** 17:24 18:15
**asserted** 5:9,11,13
  5:16 20:16 22:23
**assertion** 20:19,24
**asserts** 16:12 17:18
**asset** 20:15
**Associates** 18:10
**assuming** 14:7
**attached** 22:4
**attaches** 7:12
**Attorney** 3:12
**Attorneys** 3:3
**authorized** 22:10
**automobile** 11:16
**automotive** 9:8
**Automotives** 16:10
**Avenue** 3:20
**avoidance** 19:15
**a.m** 1:19 27:21

## B

**B** 1:21 28:3
**back** 8:19
**bad** 26:15
**bank** 17:11 20:21,23
**bankruptcy** 1:2,14
  1:23 11:6 18:5
  19:9
**bargaining** 13:7
  15:10
**barring** 25:11
**base** 9:14

**based** 8:13 14:9 22:1
  24:12 25:8
**basic** 6:20
**basically** 10:4 11:25
  12:12 13:8
**basis** 9:24 10:7,11
  10:16 17:25 25:2
**behalf** 4:5,6,11
  12:17 18:7,15 19:8
  20:14
**belabor** 9:15
**believe** 9:24 10:10
  14:1 19:16,21 21:8
  25:23
**benefit** 26:22
**benefits** 19:19
**better** 11:5 19:1
**beyond** 11:7 13:3
  15:8,8
**bid** 11:9,11,20,20
  13:5 14:4,13 21:19
  21:21,21 22:1,3
  23:9 24:22
**bids** 11:18
**bills** 16:25 20:10
**binding** 11:12,13
  22:9
**bit** 12:5
**blank** 23:16
**Bowling** 1:15
**BR** 18:12
**Brewing** 25:18
**bridge** 12:19 17:5
  20:11
**brief** 7:10 8:14 9:16
**briefed** 9:16 20:4
**briefs** 8:21
**bring** 9:17
**brings** 6:12
**Brown** 18:9
**Budget** 25:15
**bullying** 12:13
**burden** 8:19 17:22
  17:23
**business** 9:3 12:1,6
  12:8,9,16 13:11

**buyer** 22:7,9,17 23:2
23:5
**buyer's** 22:10

### C

**C** 3:1 4:1 29:1,1
**Caesar** 21:11
**Caesar's** 25:3,10
**called** 17:11
**cancellation** 16:25
25:14
**capable** 19:8
**capacity** 20:13,14
**caps** 6:5
**case** 1:4 8:3,3,7 9:18
9:20 15:3 16:12,14
16:15 18:1,2,4,14
18:17,18 19:12,20
20:2,15,15 25:3,7
25:10
**cases** 9:19 18:9,13
19:4,11
**cash** 12:17
**cause** 9:23 20:1
**certain** 9:4 11:16
14:10,11,14,21
20:7 23:22
**certainly** 12:6 13:11
**certificate** 7:12,24
28:7
**certify** 29:3
**chain** 9:8
**change** 22:1
**changes** 21:24 22:2
22:15 23:3,7,8,11
26:20,21
**Chapter** 8:2 9:18,21
12:16 16:12,14,15
18:1,4,14 19:5,11
19:13 20:1,15
**characterize** 19:9
**choice** 12:4,7
**Circuit** 11:5 21:12
25:17
**circumstances**
18:22

**cited** 9:19
**cites** 18:8
**claim** 2:1,3,5,8,10
2:12,14,17,19 4:20
4:21,21,22 5:2,3,8
5:10,12,15,15,18
5:24 6:13,14,17
8:16,17,21,24 9:17
9:25 10:1,7,11,17
10:23 11:4,6,7,8
11:18 12:3,4 13:1
15:8 16:11,12,16
17:7,13,18,21,22
17:24 18:3 20:3,6
20:18,20,22,22,25
21:1,4,15 22:4,23
22:23 25:2 27:2,9
28:12
**claimant** 8:19
**claimed** 20:7
**claims** 2:1,3,5,8,10
2:12,14,17,19 4:13
4:14,23 5:1,25
10:14 12:23 16:22
18:7,16 20:13,16
22:22 24:11
**clauses** 26:13
**clear** 15:25 20:5,11
21:8,21 22:5 24:21
25:7
**client** 11:9,13,16,20
11:25 12:4,7,10,11
13:8,17,18,20 14:3
14:5,9,15,17,19
**clients** 12:15
**closed** 8:3,7
**code** 18:5 19:8,9
**coercion** 15:21
**combination** 15:16
**come** 8:19
**commitments** 15:22
15:23
**company** 12:14,15
18:11 25:14,18
**compensation** 12:23
16:23 20:8 21:24

**complaint** 9:3
**complete** 22:6 25:6
**completed** 13:19,20
13:25 18:14
**conceivably** 20:2
**concept** 20:20,23
**concerned** 16:6
**conclude** 26:4,18
**concluded** 17:17
18:2,22 27:21
**conclusion** 18:3
**conditions** 7:13 10:3
22:8,12,13 23:1
24:8
**conducive** 15:4
**confers** 6:16
**confirm** 8:2,4
**confirmation** 8:5
26:20
**confirmed** 24:15
**confirms** 10:9
**conflicting** 18:18
**Congress** 19:14
**connection** 7:10
**consequential** 17:2
**consequently** 17:21
18:3 21:9 24:21
26:17
**consistent** 24:22
**constitutes** 8:18
**constructions** 25:19
**construes** 21:12
**consult** 15:19
**consultation** 15:18
**contained** 10:6
23:17 24:4
**contended** 27:2
**contention** 17:25
**contest** 10:18
**contested** 5:2 6:13
**continued** 4:25,25
**contract** 11:7,11,12
13:2,3 14:18,19
21:16 22:18,19,25
23:5 24:24 25:12
26:5,11,19,22 27:3

27:4
**contracting** 25:20
**contracts** 9:4,5,12
9:13 11:16 16:19
17:4 25:19 26:17
**contractual** 12:21
13:19 24:24
**contradict** 21:10
**contrary** 27:5
**Cook** 21:11
**copy** 22:13
**Corning** 25:17
**Corp** 25:17
**corporate** 18:5,25
19:10,13,15,19
**corporation** 1:8 4:3
9:21,22 18:9,20,23
18:24 19:5,12,22
25:16
**correct** 6:7 29:4
**cost** 17:9
**costs** 21:5
**counsel** 4:10 6:17
15:18,20 16:1
**couple** 13:7
**course** 10:18 17:6
25:1
**court** 1:2,14 4:2,8,12
4:17 5:4,21 6:1,5,8
6:11,22 7:2,6,15
7:18 8:8,12 10:25
11:5 13:14,23 14:5
14:22 15:1,5,13
16:5,9 18:9 25:16
27:12,14,17,20
29:3
**covered** 23:5
**create** 23:25
**creditors** 20:15
**cross-examination**
6:19
**cross-examine** 7:3
**crux** 13:1
**crystal** 24:21
**current** 16:4
**currently** 5:8

**cut** 16:2

**D**

**D** 1:22 4:1 28:1
**Daimler-Chrysler** 9:9
**damaged** 20:12
**damages** 12:15,23 13:12,23 14:7 16:12 20:7
**DAS** 16:13,18,19 17:18,19,23 20:20 21:20 22:9,16 25:22 26:15
**DAS's** 16:10,14
**date** 7:21,23,25 24:13 29:9
**dated** 23:15 25:24
**DBM** 2:5 4:24
**dead** 19:7
**dearth** 18:17
**debt** 19:18
**debtor** 1:10 3:3 16:10 18:14 19:5 19:10,10
**debtors** 4:5,11 19:13
**Debtor's** 7:20,22,24 28:4
**December** 4:15 18:21
**deciding** 13:2
**declarants** 7:3
**declaration** 7:11,11 7:20,22 21:2 27:6 27:6 28:5,6
**declarations** 7:9 8:14,21,25
**decree** 8:3 9:18
**decree's** 9:21
**defenses** 24:18
**definitions** 19:6,7
**defrauded** 27:2
**defunct** 9:22 18:6 19:5,6
**delivery** 23:6
**Delphi** 1:8 4:2 7:13

9:4 10:14,17,22 11:10,18 12:5,13 12:22 13:3,9,10 14:12 16:6,10,17 17:7,10,12 23:16 23:20 24:1,2,3,8 24:11,18,25 26:4,7 26:21 27:1
**Delphi's** 10:2 24:4,5 24:7 26:2
**Department** 25:15
**described** 11:23
**description** 17:12 28:4
**design** 23:4
**determine** 23:5
**Diaz** 3:9 4:10
**dictionary** 19:6
**different** 9:13
**difficulties** 26:14
**disagreement** 23:8
**disallow** 10:7
**disallowed** 8:17 9:25 10:24 17:19 27:9 28:13
**discharge** 18:5 19:11,14,18
**disclose** 11:10 13:4 14:12
**discontinue** 9:10
**discovered** 11:25
**discuss** 19:12
**discusses** 21:12
**Dismantlement** 9:20 18:9 19:4,20
**dismiss** 6:25
**dismissed** 20:6
**dispute** 16:5,8 26:7
**disregarded** 26:11
**dissolved** 18:23 19:21
**distribution** 20:17
**district** 1:3 18:9,19
**docket** 8:2,5
**document** 12:2,3,5,7
**dollar** 14:10

**dollars** 5:10,11,12 5:13,14,17,18,20 12:18,22,24 16:24 17:4 20:8,9,10
**Dow** 25:17
**downtime** 14:13 16:18 21:6,24
**DRAIN** 1:22
**due** 9:7 16:17,23 20:8
**duress** 15:21

**E**

**E** 1:21,21 3:1,1 4:1,1 28:1,3 29:1
**earlier** 13:18,20
**early** 13:23 14:2,18 14:19 16:20 21:6 22:24
**Eastern** 18:19
**Ed** 18:10,20
**Edith** 2:8
**effect** 27:13
**effectively** 19:7
**either** 15:14
**electronic** 29:4
**employee** 16:25 20:10
**employees** 14:10 18:11
**enforceable** 25:12 26:19
**enforced** 26:5
**enter** 7:1
**entered** 4:15 8:4 9:5 9:19,21 10:15 11:24 16:13 21:19
**entering** 23:19
**Enterprises** 21:11
**entirety** 10:24 17:19
**entities** 19:15
**entity** 18:6,6 19:17
**equally** 19:16
**equitably** 23:5
**ESQ** 3:7,8,9,16,23
**essentially** 12:13

16:16
**establish** 27:1,7
**estate** 20:14
**Esther** 2:24 29:3,11
**etcetera** 22:2
**Eva** 2:1 4:21
**Evans** 2:12 5:12
**event** 20:4
**events** 26:1
**evidence** 6:24 7:8,9 8:15,18,20,23,25 9:3 10:4 14:22 15:1,6 21:10,13 22:14 25:4,5,11,22 26:12,14,25 27:1,5
**evidentiary** 10:10 16:4 17:15,20
**example** 7:2
**excess** 26:16
**excludes** 25:4
**exclusive** 22:21
**executing** 15:20,21
**execution** 5:22
**exhibit** 7:20,22,25 22:4
**exhibits** 7:13,15
**exist** 19:18
**existing** 11:17
**expected** 11:12 13:18,21 14:1,13 14:20
**expecting** 14:14,15
**expenses** 17:5 20:11
**experiencing** 26:14
**explained** 14:3
**explanation** 20:22
**expression** 25:6
**expressly** 22:16
**extrinsate** 16:13 21:7,10

**F**

**F** 1:21 29:1
**face** 21:8,22 25:7
**facie** 8:18 17:21
**fact** 9:18 21:25

23:17 26:6
**factors** 26:25
**factual** 20:5
**faith** 25:21,22,23
  26:4,15
**far** 16:5
**Farmington** 3:14
**felt** 12:21
**Fifth** 18:19 19:12
**file** 12:16
**filed** 4:21,21,23 5:10
  5:12,15,18,19 6:15
  6:18 7:9 16:11
**final** 8:3 9:18,21
  22:6
**finally** 5:18 10:8,12
  12:11 24:14 26:24
**financial** 26:14
**fine** 4:17 7:18 8:12
**finish** 13:10
**finished** 13:14,16
**first** 4:18 5:1 11:2
  11:11 13:4 15:9
  17:25 20:6 23:9
**five** 5:7
**FLOM** 3:2
**flows** 9:10
**following** 21:19
**Ford** 9:9
**foregoing** 29:4
**formal** 19:25
**formally** 7:8
**former** 18:14 19:5,9
**forth** 12:25 15:24
  22:6,17 23:14 25:3
  26:12 27:6
**forthcoming** 6:9
**forward** 5:23 8:20
**found** 11:20 22:16
**Four** 3:4
**fourth** 4:13,23
**fragile** 9:8
**fraudulent** 27:8
**Freddie** 2:10 5:10
**fulfilled** 19:16
**full** 27:9 28:13

**fully** 10:3 13:4
**further** 15:13 17:11
  17:14 22:21 26:19
  27:16
**future** 9:3
**F.2d** 25:17
**F.3d** 21:12 25:11

──────────
### G
**G** 4:1
**general** 5:15 11:16
  11:20 13:16,17
  14:2,17
**getting** 11:21,22
**give** 9:7
**given** 15:19 21:16
**giving** 19:13
**GM** 9:9 13:19 14:7
**go** 11:7 12:1,8 17:17
  18:13
**goes** 9:21 15:7,8
**going** 7:2 9:15 11:12
  12:1,10 13:3
**good** 4:4 25:21,22
  25:23 26:4
**goods** 23:4
**GORMAN** 3:23
**govern** 23:12
**Green** 1:15
**grievances** 11:13
**guarantees** 9:4,7

──────────
### H
**H** 28:3
**happen** 14:16
**happy** 5:6
**Harold** 2:17 5:18
**Harvard** 25:18
**Harvey** 3:11,16 4:6
**hearing** 2:1,3,5,8,10
  2:12,14,17,19 4:14
  4:20 5:2,6 6:14
**heavily** 19:6
**hereto** 15:18
**Highway** 3:13
**Hills** 3:14
**Holt** 18:12

**HON** 1:22
**Honor** 4:4,9,13,14
  4:18 5:5,23,23
  6:10,12,15,24,24
  7:5,17 8:1,9,10,11
  8:13,15,22,25 9:14
  9:19 10:1,12,21,22
  12:2 15:15,17,25
  16:3 27:10,15,18
**Honor's** 4:15 27:11
**hour** 14:10
**hours** 14:11,20
  16:20 21:23 24:2
  25:1
**housekeeping** 7:7
  8:10
**Hudson** 7:11,22 9:1
  10:9,18 27:6 28:6

──────────
### I
**idea** 11:21
**ideas** 17:9
**identification** 7:21
  7:23,25
**immediately** 22:19
**implement** 23:3
**importantly** 23:23
**include** 22:23
**includes** 7:15
**including** 8:14 9:20
  17:8 24:6
**incorporated** 22:3
  24:9
**incorporates** 21:20
  22:11
**increase** 23:21
**increased** 16:23
  20:7
**incurred** 21:5
**indicated** 15:9
**inducement** 27:8
**industry** 9:6,9,12
**informed** 11:19
**initial** 17:23
**initiated** 14:4
**initiation** 14:12

**instance** 13:4,5
  15:10
**instrument** 25:6
**insurance** 17:1
**integrated** 10:3
**integration** 22:15
  25:9
**intent** 25:5
**intentions** 21:9
**interest** 17:4 20:11
**introduce** 7:8,9
**introduced** 8:15
**issue** 9:16 11:14
  27:5
**item** 27:15

──────────
### J
**J** 3:8
**James** 2:8 5:9 21:2
**January** 22:12 24:8
  25:16
**job** 11:14,15 17:11
  20:21,23
**John** 3:7 4:4
**Johnson** 2:10 5:10
**Joseph** 2:3 4:22
**JUDE** 3:23
**Judge** 1:23 11:2,4
  15:8 16:8 27:19
**judgment** 7:1
**June** 10:13,16 23:16
**J&B** 25:14

──────────
### K
**K** 3:7
**keep** 12:6,20,20
  13:11
**kept** 12:10
**know** 6:23,25 10:4
  11:17 12:24
**Kraft** 4:10 7:12,24
  28:8

──────────
### L
**L** 2:10
**labor** 21:22,24
**LaborSource** 2:19

Page 5

3:12 4:6 6:14,17
7:2 8:6,24 9:2,5,17
10:10,15,23 12:18
15:25 16:11,13,17
16:22 17:1,3,5,8
17:10,22,22,24
18:1,4 19:1,10,22
20:12,18 21:4,20
21:22 22:24 26:9
26:13,16,17 27:2
28:12
**LaborSource's** 8:2
8:16 9:25 10:11
16:14 26:21
**lacks** 17:24 18:15
**Lansing** 11:15
**LATHAM** 3:19
**law** 3:11 15:5 18:17
18:23 19:21 21:13
21:15,17 25:13
**lawsuit** 11:6 15:4
**leaves** 21:4
**legal** 6:20 22:22
**Leslie** 5:8
**letter** 25:24
**liability** 12:17 23:19
**Liberty** 18:11,12
19:4
**light** 9:18
**limit** 6:18
**limitation** 24:7
25:20
**limiting** 22:21
**limits** 24:4
**line** 9:10 28:11
**liquidated** 21:2
**litigation** 18:15 19:2
**little** 12:4,5,7 21:11
25:3,10
**live** 6:19
**LLC** 2:6
**LLP** 3:2,19
**loans** 12:19 17:5
20:11
**location** 21:16
**logic** 19:20

**longer** 19:8
**looks** 5:1
**losses** 17:3 26:2
**lost** 12:25 14:20,24
16:17 21:4
**lot** 27:17
**Lyons** 3:7 4:4,4,9,13
4:18 5:5,22 6:3,7,9
6:12,23 7:4,7,17
8:1,9,13 11:23
15:15 27:10,13,15
27:18

---

## M

**maintain** 17:5
**Management** 25:15
**manner** 11:2 24:4
**manufacturing** 22:2
**March** 1:18 4:25 5:3
25:24 29:8
**Mass** 25:18
**matter** 1:6 6:13 7:7
9:24 17:23 29:6
**matters** 4:19,24 5:6
5:7
**Matz** 3:8 4:9
**MCLS** 18:25
**MEAGHER** 3:2
**mean** 5:14 19:7
20:24
**meant** 20:23
**mediations** 5:1 6:16
**medical** 16:25 17:1
20:10
**meet** 6:16
**mention** 11:9
**merely** 19:10 26:20
**merit** 9:14 20:2
**merits** 7:1 10:1 20:4
20:5 21:15
**Michigan** 3:14 11:4
11:15 15:5 18:23
18:23 19:21 21:13
21:14,17 25:4,13
25:15
**million** 5:9

**minimum** 24:1 25:1
**mislead** 27:2
**misrepresentation**
15:9
**misrepresentations**
11:8 12:13 27:8
**Mitchell** 18:20
19:12
**modification** 25:9
**modifying** 22:8
**morning** 4:4
**motion** 6:25
**Motors** 11:16 13:16
13:17 14:2,17

---

## N

**N** 3:1 4:1 28:1 29:1
**name** 18:25 29:12
**nature** 9:8 26:3,22
**necessitated** 16:23
**need** 6:2,6 8:9 11:7
**neither** 23:24
**Neofotistos** 25:18
**nevertheless** 23:20
**New** 1:3,16,16 3:5,5
3:21,21
**nondisclosure** 11:8
**Northwestern** 3:13
**note** 15:15 18:18
19:3,24 21:13
26:24
**noted** 20:21
**notice** 6:2,6 23:11
**notices** 6:15
**notifying** 22:20
**number** 4:19 5:5
9:14 12:15,19,22
12:24 14:11,14,15
14:20 17:17 24:1
25:1

---

## O

**O** 1:21 4:1 29:1
**objection** 2:1,3,5,8
2:10,12,14,17,19
4:20,21,23,23 6:14
16:10

**obligated** 16:19
**obligation** 13:19
23:18,25 24:3,19
24:25
**obligations** 24:15
26:8
**obtain** 24:1
**obtained** 19:19
**obviously** 19:24
**occur** 23:11
**occurred** 15:11 26:3
**occurrences** 24:13
**occurring** 26:2
**offer** 7:8,14
**offering** 13:9
**OFFICE** 3:11
**official** 29:4
**offsets** 24:18
**Okay** 4:2,8,12,18
5:4,21 6:1,11,22
7:6,18 8:8,9 10:25
11:1 14:9 15:13
16:5,9,9 27:12,17
27:20
**omissions** 12:12
15:9
**omnibus** 4:23
**once** 8:18 9:20 21:1
**opportunity** 15:19
**order** 6:4 10:6 12:20
15:24 21:18 22:3,5
23:10,22,25 24:6,9
24:12,16,19,22,23
27:11
**orders** 7:13 10:2,3
10:15,20
**original** 4:19
**Orlik** 2:1 4:21 5:2
**outside** 27:3
**outstanding** 16:24
20:9
**overall** 26:3
**override** 26:25
**owed** 16:22
**owes** 16:17

**P**

**P** 3:1,1 4:1
**PA** 18:10
**Page** 28:4,11
**paid** 14:9 21:5,23 26:7 27:4
**paragraph** 15:16,17 22:17,17 23:2 24:10,14
**parenthetically** 21:14
**parol** 14:22 15:1,6 21:13 25:3,5,11 26:25
**part** 13:20 22:19
**particular** 9:7
**particularity** 20:25
**parties** 5:17 6:20 7:4 10:4 11:24 13:7 15:10,18 17:15 21:8,9,14,18 23:7 23:13,23 24:22 26:23
**party** 9:23 25:20
**party's** 25:5
**passed** 17:9
**pay** 16:19 23:21 24:1,25 26:17,21
**paying** 26:16
**payments** 16:7
**pending** 5:8 11:14
**Pennsylvania** 18:19 18:21
**perform** 24:19
**performance** 21:17
**performed** 16:6 26:6,7
**permission** 4:15
**personal** 12:17
**personnel** 16:18 24:2
**perspective** 26:2
**place** 11:11 17:25
**Please** 4:2
**points** 9:14
**position** 13:8

**possibility** 19:24
**potential** 10:14
**power** 15:10
**premised** 11:8
**premiums** 16:23 20:8
**prepared** 8:10
**presumption** 8:22
**pretty** 9:6
**prevent** 19:14 26:1
**pre-decree** 9:23
**pre-June** 10:14
**price** 23:6
**prima** 8:18 17:21
**printed** 29:12
**prior** 24:13
**probably** 11:5
**procedures** 4:14 6:4
**proceed** 4:16
**proceeding** 17:16
**proceedings** 27:21 29:5
**process** 14:4,13,21 22:2
**product** 9:10 22:2
**production** 11:15
**Profit** 18:11
**profits** 12:25 21:4 27:4
**project** 12:10 13:10 13:14,22,25 14:11 16:18,21 17:3,6 26:3
**promises** 10:9,17,19
**proof** 8:17 16:11 22:4
**proposal** 17:7
**proposition** 18:13
**prove** 8:19,20,24
**provide** 22:14 24:15
**provided** 16:7 17:13 17:19 20:18 22:1 23:24
**provider** 21:22
**providing** 16:18 20:20 21:23 22:6

**provision** 21:23 22:6 22:15 23:1,9,17
**provisions** 23:12 25:9,9
**purchase** 7:13 10:2 10:3,6,15,20 15:24 21:18 22:3,5 23:10 23:22,25 24:1,6,9 24:12,16,19,22,23
**pursuant** 4:14,23 6:3 10:2 17:7 23:20 26:5
**pursue** 9:22 18:2,7 19:1
**put** 23:10
**P.C** 3:11

**Q**

**quantified** 17:13

**R**

**R** 1:21 3:1 4:1 29:1
**ratified** 24:14
**rationale** 18:13 19:13
**read** 25:8
**reading** 13:2
**realized** 17:12
**really** 13:4
**reason** 11:6 22:20
**reasons** 10:22 17:17 27:9
**rebut** 17:20
**rebutted** 8:18,22
**receive** 12:1 19:11 19:17 20:16
**received** 7:20,22,24 18:5 22:13
**recognize** 11:4 15:5
**recognized** 13:7 25:12
**recognizing** 13:3 19:17
**reconfirmed** 24:23
**reconsideration** 21:1
**record** 6:18 16:4

17:15 20:5,11 26:12 27:1,5
**recording** 29:5
**recovery** 22:21
**reduce** 24:5
**refer** 19:4,5
**reference** 22:11 24:10
**refers** 25:10
**reflect** 15:16
**refuted** 21:2
**regard** 22:22
**regarding** 2:1,3,5,8 2:10,12,14,17,19 6:14 21:13
**related** 22:24
**relating** 12:23 24:12
**release** 10:13,16,19
**released** 10:14 24:11
**reliance** 15:22
**relief** 11:24 12:1,5 13:6 15:11
**rely** 19:6
**remain** 24:9
**Reno** 2:3 4:22 5:3
**reopen** 20:2
**report** 5:7
**representations** 9:2 10:5 15:22,23
**representative** 22:10
**represented** 16:1 24:17
**request** 11:20
**require** 23:3
**required** 10:20
**requirements** 9:5,12 12:21 16:24 20:9 21:25 24:5,24 25:12,13,19,21 26:5,22
**requiring** 22:15
**resolve** 23:7
**respect** 4:22,24 6:17 11:14 12:14 13:6 13:17 16:1,20

17:11,16 20:6,12
  25:21
**respectfully** 8:16
  10:23
**respects** 23:22
**response** 17:10
**responses** 23:9
**result** 12:12 13:12
  14:20 17:2 18:3,6
**resulted** 11:9
**resulting** 16:25 23:6
**revenue** 16:17
**review** 6:25 27:11
**reviewed** 17:16
  18:21
**right** 6:2,8 15:13
  16:9 24:4,7
**rights** 22:18
**road** 15:12
**ROBERT** 1:22
**Robins** 7:11,15,20
  9:1 10:8,18 21:2
  22:5 25:25 27:6
  28:5
**rule** 14:22 15:1,6
  21:13 25:4,20
  26:25
**RULINGS** 28:10
**running** 12:20

**S**

**S** 3:1 4:1 28:3
**satisfying** 12:20
**Sausage** 25:14
**savings** 17:9,9,13
**says** 9:20 15:17
  19:10
**scheduled** 5:6
**schedules** 23:6
**scope** 23:4
**seated** 4:2,10
**second** 13:5 14:25
**Section** 18:4,25
  21:25 24:8
**see** 18:25 21:11
  25:11,14

**seek** 20:2
**seller** 22:7,20 23:3
**seller's** 22:21
**selling** 19:15
**sense** 20:3
**service** 14:20
**services** 23:4 24:15
**set** 4:19 15:24 22:8
  22:17 23:14 25:3
  26:12 27:6
**sets** 22:6
**settle** 5:7,17
**settled** 5:9,11,14,14
  5:19 6:3
**settlement** 5:22 6:4
  10:12 11:23 13:6
  15:11,15 23:15,20
  23:24 24:10,13
  26:10,18
**share** 17:8
**Sharing** 18:11
**Sharplee** 25:24
**sheet** 8:5
**shell** 19:19
**shells** 19:15
**shifted** 17:21
**shifts** 8:19
**shortly** 6:9
**show** 9:1 25:22
**shut** 12:11,12 13:22
**side** 15:14
**sign** 12:4,7
**Signature** 29:9
**signed** 10:13 22:10
**simply** 19:17
**situation** 11:3,17
**six** 5:17
**SKADDEN** 3:2
**SLATE** 3:2
**smaller** 12:14
**sole** 22:21
**sooner** 12:8
**sorry** 13:17 14:24
  21:7
**sought** 17:5
**sound** 29:5

**SOUTHERN** 1:3
**specific** 23:12
**specifically** 22:11
  23:10
**specifications** 23:3
**Square** 3:4
**stand** 8:4
**standard** 6:25 7:12
  8:17 9:6 10:2
**standing** 9:17,22
  17:24 18:6,8,15
  19:1,23
**standpoint** 10:10
**started** 11:4 15:4
**state** 11:5 15:4
**stated** 15:3
**states** 1:2 22:12 23:2
  25:25
**stipulations** 5:24
**strategy** 19:16
**Street** 18:20 19:12
**structure** 9:11
**struggled** 12:10
**subject** 21:1,10
**submissions** 6:21
  8:13
**submit** 8:16,21
  27:10
**submits** 10:23
**submitted** 8:23
  11:11,18,19 21:19
**submitting** 11:9
**subsequent** 14:6
**substantiation**
  20:19
**sue** 18:24 19:22
**sued** 18:24 19:22
**suffered** 12:15 13:13
**sufficient** 17:20
  20:24
**sufficiently** 8:22
**suggestion** 17:10,12
**suing** 20:13
**suited** 11:5
**supplied** 14:10
**supplier** 9:7 22:13

23:11 24:2,5,11,14
  24:18,19 25:1
**suppliers** 9:11 17:8
  17:9
**supplier's** 25:2
**supply** 9:8
**support** 16:4 17:14
  17:20 18:8
**supposed** 13:25 14:6
**surprising** 18:17
**sustain** 17:1
**sustained** 17:3,23
**sustaining** 17:22
**Systems** 16:10

**T**

**T** 28:3 29:1,1
**table** 4:10
**tactic** 19:16
**take** 12:19
**tax** 19:15
**Teak** 25:16
**Technologies** 2:5
  4:24
**Telephonically** 3:17
**template** 21:25 22:1
**term** 19:6
**terminate** 14:18,19
  22:18,19 24:5
**terminated** 13:15,18
  13:19 14:2
**termination** 13:24
  14:6 16:20 17:2
  21:6 22:24 24:7
  25:14
**terms** 7:12 10:2
  21:11,21 22:8,11
  22:13 23:1,14 24:6
  24:8,16 25:8 26:5
  26:6 27:3
**Terrence** 2:12 5:12
**testimony** 6:19 10:8
**Texas** 18:12
**thank** 11:1 27:10,14
  27:18,19
**Thanks** 27:17

theories 16:17
theory 14:8 16:2
    22:22
therefrom 17:13
    22:22
things 22:14 24:25
    25:25
think 9:15 10:6 11:3
    12:2,3 13:1,6,16
    15:3,7,8,25 16:2
Third 3:20
Thomas 2:14 3:8
    5:15
thought 13:14,15
    14:24
three 4:24
threshold 9:16,24
tier 9:10,11
time 9:9 22:20 23:2
    24:13
Times 3:4
today 4:20 5:8 6:13
totaling 20:8
trafficking 19:19
Transcribed 2:24
transcriber 29:3,9
transcript 29:4
true 13:20
Trust 18:11,11,12
    19:4
trustee 18:2 20:1
two 5:1 7:3 18:8
    23:8
type 22:23
typed 29:12

**U**

unanticipated 16:24
    20:9
unconscionable
    26:15
uncontested 5:6
uncontroverted 9:1
    10:8 21:3
underlying 26:22
underpinning 10:11

underpinnings
    17:20
understand 19:20
understanding 7:4
undetermined 5:19
unequal 13:7 15:10
unexpected 16:18
unilateral 17:7
union 11:10,12
    16:24 20:9
UNITED 1:2
unliquidated 20:19
    20:25
unquantified 20:20
    20:22
Unruh 4:11
unsecured 5:15
unsuccessfully 5:1
U.S 1:14,23 9:20
    18:9 19:3,20

**V**

v 18:9,11 21:11
    25:14,17,18
valid 25:12
validity 8:18,24 14:7
    17:21
various 16:16 17:8
view 19:1
vitiate 19:18
volume 9:4,7
volumes 22:2
vulnerable 12:14

**W**

waive 5:25
wanted 19:14
warranted 24:17
warranties 15:22,23
wasn't 13:14
WATKINS 3:19
way 6:12 14:7 22:8
    24:12 26:15
WD 18:12
weeks 14:14,16
well-settled 8:17
Westlaw 18:10,20

We'll 27:10
we're 6:24
we've 5:9,11 7:9
    8:14 9:15,19
Wilson 2:15 5:16
Wimsatt/Donna
    2:15 5:16
WL 25:15
Woodson 2:17 5:19
work 14:5 23:4
worked 14:12 16:20
    21:23
Workers 12:23
    16:23 20:7
working 14:14
writing 10:20 22:9
    22:16,20 23:15
writings 10:21
written 11:7 13:2,3
    16:6,7 25:5

**X**

x 1:5,12 28:1,3

**Y**

Yeah 8:7
year 14:15,16
York 1:3,16,16 3:5,5
    3:21,21

**0**

05-44481 1:4

**1**

1 1:18 7:13,20 22:17
    28:5
1.13 5:9
10:13 1:19
100,000 5:10
10022 3:21
10036 3:5
11 16:12,14 22:17
11:05 27:21
1119 25:17
1126 25:17
13 18:10,21 24:8
130 18:12

15 15:17
15,000 5:12,17,20
160,000 12:22 17:4
    20:10
1961 25:19
1991 18:12
1992 25:17

**2**

2 7:13,22 24:14 28:6
2.1 21:25
200,000 12:18
2000 2:19 3:12 4:7
    6:14 8:6 9:3 12:18
    15:25 16:11 18:10
    18:10 21:12
2000's 10:23
2001 18:20,21 22:12
    24:8
2004 10:13,14,16
    23:16 26:9,13
2005 14:1 25:24
2006 18:25
2007 1:18 25:15,16
    29:8
20500 3:13
21st 4:25 5:3
210 21:11 25:11
250,000 5:16
27 28:12
28409 25:15

**3**

3 7:14,25 23:2 24:10
    25:24 28:7
3d 25:17
300,000 5:11,13
320,000 20:8
341 25:18
34355652 18:20

**4**

4 25:16
433971 18:10
450.1834(e) 18:25
467 18:12
48334 3:14

| | | | |
|---|---|---|---|
| **5** | | | |

**5** 29:8
**5,000** 5:14

| | | | |
|---|---|---|---|
| **6** | | | |

**6th** 21:12
**65,000** 12:24 16:24
  20:9
**653** 21:12
**656** 21:12 25:11
**657** 25:11
**684** 25:18
**689** 25:18

| | | | |
|---|---|---|---|
| **7** | | | |

**7** 8:2 9:18,21 12:16
  16:15 18:1,4,14
  19:5,11,13 20:1,15
  28:5,6,7
**7027** 18:4

| | | | |
|---|---|---|---|
| **8** | | | |

**885** 3:20

| | | | |
|---|---|---|---|
| **9** | | | |

**9** 28:12
**962** 25:17