IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re                                         :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                              Debtors.        :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am
employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent
for the Debtors in the above-captioned cases.

On March 16, 2007, I caused to be served the document listed below (i) upon the parties
listed on <u>Exhibit A</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit B</u> hereto
via electronic notification and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-
paid U.S. mail:

Notice of Presentment for Order Under 11 U.S.C. Sections 327(a), 328(a), 1107(b) and
Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of KPMG LLP to(I)
Enter Into Master Professional Services Agreement With Debtors, (II) Continue to
Provide Debtors With Global Mobility Advisory Services Related to International
Assignees Effective Nunc Pro Tunc to February 9, 2007, (III) Continue to Provide
Debtors With Tax Consulting Services Effective Nunc Pro Tunc to February 9, 2007,
(IV) Continue to Provide Debtors With International Assignment Services Related to
Debtors' International Assignees Effective Nunc Pro Tunc to January 31, 2007, (V)
Provide Debtors With Certain Fresh Start Services Effective Nunc Pro Tunc to November
16, 2006, and (VI) Provide Debtors With Certain Additional Services (Docket No. 7298)
[a copy of which is attached hereto as <u>Exhibit D</u>]

Dated:  March 22, 2007

                                    _____<i>/s/ Evan Gershbein</i>_____
                                    Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 22nd day of March, 2007, by Evan
Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be
the person who appeared before me.

Signature:  _____<i>/s/ Sarah Frankel</i>_____

Commission Expires:  ___<i>12/23/08</i>_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Maritza Ramos | 270 Park Avenue 15th Fl | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | maritza.ramos@chase.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

3/19/2007 8:12 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

3/19/2007 8:12 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

3/19/2007 8:12 PM
Master Service List Overnight Mail

Delphi Corporation
Special Party

| CONTACT | COMPANY | ADDRESS1 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|------|-------|-----|-------|-----|-------|------------------|
| Bill Dimos<br>H. Slayton Dabney, Jr. | King & Spalding LLP | 1185 Avenue of the Americas | New York | NY | 10036 | 212-556-2239<br>212-556-2287 | 212-556-2222<br>212-556-2222 | bdimos@kslaw.com;<br>sdabney@kslaw.com | Counsel to KPMG |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/19/2007 8:12 PM
KPMG special party

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein  Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092  212-450-4213 | 212-450-3092  212-450-3213 | donald.bernstein@dpw.com  brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com  karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler  Bonnie Steingart  Vivek Melwani  Jennifer L Rodburg  Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuie@ffhsj.com  slivri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Maritza Ramos | 270 Park Avenue 15th Fl | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | maritza.ramos@chase.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com  richard.duker@jpmorgan.com  gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|-------------------|
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

3/19/2007 8:12 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig_freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Michael J Alerding Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com malerding@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel to Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimilliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6266 | amina.maddox@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc. |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Internet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | riclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel for Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaires Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel to Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rttrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel to  Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jjposta@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L. Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC -08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Legal Department of The Timken Corporation Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel to America Online Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

3/19/2007 8:07 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel to National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

3/19/2007 8:07 PM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

3/19/2007 8:07 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | Counsel to Lunt Mannufacturing Company |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

3/19/2007 8:07 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| Traub, Bonaquist & Fox LLP | Maura I. Russell Wendy G. Marcari | 655 Third Avenue | 21st Floor | New York | NY | 10017 | 212-476-4770 | Counsel to SPCP Group LLC |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

3/19/2007 8:07 PM
US Mail

# EXHIBIT D

**Presentment Date and Time: March 26, 2007 at 4:00 p.m.**
**Objection Deadline: March 26, 2007 at 2:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                             :
        In re                                                :    Chapter 11
                                                             :
    DELPHI CORPORATION, et al.,                              :    Case No. 05-44481 (RDD)
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

NOTICE OF PRESENTMENT FOR ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), 1107(b) AND FED.
R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG LLP TO (I)
ENTER INTO MASTER PROFESSIONAL SERVICES AGREEMENT WITH DEBTORS, (II)
CONTINUE TO PROVIDE DEBTORS WITH GLOBAL MOBILITY ADVISORY SERVICES
RELATED TO INTERNATIONAL ASSIGNEES EFFECTIVE
NUNC PRO TUNC TO FEBRUARY 9, 2007, (III) CONTINUE TO PROVIDE DEBTORS WITH TAX
CONSULTING SERVICES EFFECTIVE NUNC PRO TUNC TO FEBRUARY 9, 2007, (IV)
CONTINUE TO PROVIDE DEBTORS WITH INTERNATIONAL ASSIGNMENT SERVICES
RELATED TO DEBTORS' INTERNATIONAL ASSIGNEES EFFECTIVE NUNC PRO TUNC
TO JANUARY 31, 2007, (V) PROVIDE DEBTORS WITH CERTAIN FRESH START SERVICES
EFFECTIVE NUNC PRO TUNC TO NOVEMBER 16, 2006, AND
(VI) PROVIDE DEBTORS WITH CERTAIN ADDITIONAL SERVICES

PLEASE TAKE NOTICE that on March 16, 2007 Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned cases, filed the Third Supplemental Application For Order Under 11 U.S.C. §§ 327(a), 328(a), 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of KPMG LLP To (I) Enter Into Master Professional Services Agreement With Debtors, (II) Continue To Provide Debtors With Global Mobility Advisory Services Related To International Assignees Effective Nunc Pro Tunc To February 9, 2007, (III) Continue To Provide Debtors With Tax Consulting Services Effective Nunc Pro Tunc To February 9, 2007, (IV) Continue To Provide Debtors With International Assignment Services Related To Debtors' International Assignees Effective Nunc Pro Tunc To January 31, 2007, (V) Provide Debtors With Certain Fresh Start Services Effective Nunc Pro Tunc To November 16, 2006, And (VI) Provide Debtors With Certain Additional Services  (the "Third Supplemental Retention Application," attached to this notice as Exhibit A).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed, served, and received in accordance with this notice, a hearing to consider approval of the Third Supplemental Retention Application will be held on April 20, 2007 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the Third Supplemental Retention Application are timely filed, served, and received, the order filed with the Third Supplemental Retention Application and attached to this notice as Exhibit B will be submitted for signature to the Honorable Robert D. Drain, United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004 on March 26, 2007 at 4:00 p.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Third

Supplemental Retention Application must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered by this Court on October 26,

2006, as amended (the "Amended Eighth Supplemental Case Management Order") (Docket No.

5418), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) registered users of the Bankruptcy Court's case filing system must file electronically,

and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be

submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United

States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit

facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017

(Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition credit facility, Davis

Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Brian Resnick),

(v) counsel for the Official Committee Of Unsecured Creditors, Latham & Watkins LLP, 885

Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude),

(vi) counsel for KPMG LLP, King & Spalding LLP, 1185 Avenue of the Americas, New York,

3

New York 10036  (Att'n: H. Slayton Dabney, Jr.), (vii) counsel for the Official Committee Of

Equity Security Holders, Fried Frank, Harris, Shriver & Jacobson LLP, One New York Plaza,

New York, New York 10004 (Att'n: Bonnie Steingart), and (viii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received** no later than **2:00**

**p.m. (Prevailing Eastern Time) on March 26, 2007** (the "Objection Deadline").

4

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein

and in accordance with the Amended Eighth Supplemental Case Management Order will be

considered by the Bankruptcy Court at the Hearing.  If no objections to the Third Supplemental

Retention Application are timely filed and served in accordance with the procedures set forth

herein and in the Amended Eighth Supplemental Case Management Order, the Bankruptcy Court

may enter an order granting the Third Supplemental Retention Application **without further**

**notice.**

Dated:   New York, New York
       March 16, 2007

                      SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                    By:   /s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 9331)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois 60606

                      - and -

                    By:   /s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                   :
       In re                          :     Chapter 11
                                     :
DELPHI CORPORATION, et al.,       :     Case No. 05-44481 (RDD)
                                     :
                  Debtors.     :     (Jointly Administered)
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

THIRD SUPPLEMENTAL APPLICATION FOR ORDER UNDER 11 U.S.C.
§§ 327(a), 328(a), 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING
EMPLOYMENT AND RETENTION OF KPMG LLP TO (I) ENTER INTO
MASTER PROFESSIONAL SERVICES AGREEMENT WITH DEBTORS, (II)
CONTINUE TO PROVIDE DEBTORS WITH GLOBAL MOBILITY ADVISORY
SERVICES RELATED TO INTERNATIONAL ASSIGNEES EFFECTIVE
NUNC PRO TUNC TO FEBRUARY 9, 2007, (III) CONTINUE TO PROVIDE DEBTORS
WITH TAX CONSULTING SERVICES EFFECTIVE NUNC PRO TUNC
TO FEBRUARY 9, 2007, (IV) CONTINUE TO PROVIDE DEBTORS WITH
INTERNATIONAL ASSIGNMENT SERVICES RELATED TO DEBTORS'
INTERNATIONAL ASSIGNEES EFFECTIVE NUNC PRO TUNC
TO JANUARY 31, 2007, (V) PROVIDE DEBTORS WITH CERTAIN FRESH START
SERVICES EFFECTIVE NUNC PRO TUNC TO NOVEMBER 16, 2006,
AND (VI) PROVIDE DEBTORS WITH CERTAIN ADDITIONAL SERVICES

("KPMG Third Supplemental Retention Application")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this application (the "Third Supplemental Application") for an order pursuant to

11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing the employment and retention of KPMG LLP

("KPMG") to (i) enter into the Master Professional Services Agreement (the "Master Agreement") with the Debtors, effective nunc pro tunc to February 9, 2007, (ii) continue to provide the Debtors with certain global mobility services related to international assignees ("Global Mobility Services"), effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with certain tax consulting services ("Tax Consulting Services"), effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with certain international assignment services related to the Debtors' international assignees ("International Assignment Services"), effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with certain fresh start services ("Fresh Start Services"), effective nunc pro tunc to November 16, 2006, and (vi) provide the Debtors with certain additional services (including the renewal and extension of existing services, additional phase services under existing engagements, and additional services under future statements of work between the Debtors and KPMG in accordance with the Master Agreement) (the "Additional Services").  In support of this Third Supplemental Application, the Debtors submit the declaration of Gary A. Silberg, executed March 14, 2007 (the "Silberg Declaration"), a copy of which is attached hereto as Exhibit 1.

This Third Supplemental Application supplements (a) the Application For Order Under 11 U.S.C §§ 327(a), 328(a), And 1107(b) Authorizing Employment And Retention Of KPMG LLP As Tax And Transaction Services Advisors To Debtors, Effective Nunc Pro Tunc To October 8, 2005 (the "Original Application"), dated February 14, 2006 (Docket No. 2366), (b) the Supplemental Application For Order Under 11 U.S.C. §§ 327(a), 328(a), And 1107(b) Authorizing (i) Employment And Retention Of KPMG LLP As Advisory And Valuation Advisors To Debtors, Effective Nunc Pro Tunc To February 16, 2006, (ii) Continued Retention Of KPMG LLP As Tax Advisors To The Debtors, Effective Nunc Pro Tunc To January 1, 2006,

2

And (iii) Additional International Executive Tax Services To Be Rendered By KPMG LLP To

Debtors Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To January 18, 2006 (the "First Supplemental Application"),

dated April 20, 2006 (Docket No. 3307), and (c) the Second Supplemental Application For Order

Under 11 U.S.C. §§ 327(a), 328(a), 1107(b) And Fed. R. Bankr. P. 2014 Authorizing

Employment And Retention Of KPMG LLP To Assist Debtors In (i) Certain Improvements To

International Tax Reporting Package And Processes Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To August 1,

2006, (ii) Certain Internal Reporting Initiatives Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To May 9, 2006, (iii) A

Special Investigation Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To July 10, 2006, (iv) Certain Transfer Pricing

Services Effective <u>Nunc</u> <u>Pro</u> <u>Tunc</u> To May 19, 2006, (v) Certain Improvements To Financial

Close, Consolidation And Management Reporting Processes, And (vi) Certain Additional

Services (the "Second Supplemental Application," and collectively with the Original Application

and the First Supplemental Application, the "Prior Applications"), dated November 10, 2006

(Docket No. 5522).  In further support of this Third Supplemental Application, the Debtors

respectfully represent as follows:

Background

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October

17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders.

   3. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

   4. The statutory predicates for the relief requested herein are sections 327(a),

328(a), and 1107(b) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.

B. <u>Current Business Operations Of The Debtors</u>

   5. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of

December 31, 2006 had global net sales of approximately $26.4 billion and global assets of

approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from this

Court.

   6. The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

   7. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's

---

[1] The aggregated financial data used in this Application generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to the Company in accordance with

the terms of a Master Separation Agreement between Delphi and GM.  In connection with these

transactions, Delphi accelerated its evolution from a North American-based, captive automotive

supplier to a global supplier of components, integrated systems, and modules for a wide range of

customers and applications.  Although GM is still the Company's single largest customer, today

more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company

generated approximately $2 billion in net income.  Every year thereafter, however, with the

exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company

reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]  Reflective of a

continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4

billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5

billion, $3.0 billion of which were charges related to the U.S. employee special attrition

programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

---

[2]      Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording
of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net
operating loss in calendar year 2004 was $482 million.

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its transformation plan. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[3] Finally, the Debtors must devise a workable solution to their current pension situation.

---

[3]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

12.    On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management,

L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and

UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and

Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred

and common equity in the reorganized Delphi to support the Debtors' transformation plan.  (The

Equity Purchase and Commitment Agreement is subject to the completion of due diligence,

satisfaction or waiver of numerous other conditions (including Delphi's achievement of

consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by

either Delphi or the Plan Investors of certain termination rights.)  The second agreement was a

plan framework support agreement (the "Plan Framework Support Agreement") with the Plan

Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of

the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors

and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues,

and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework

Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements

with their U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  Although much remains to be accomplished in the

Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course

7

that should lead to a consensual resolution with their U.S. labor unions and GM while providing

an acceptable financial recovery framework for the Debtors' stakeholders.

14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

<u>The Prior Applications</u>

15.    On February 15, 2006, the Debtors filed the Original Application pursuant

to the terms of certain engagement letters, by and between the Debtors and KPMG, each as

described and defined therein (the "Original Engagement Letters").

16.    On March 3, 2006, this Court entered an order approving the Original

Application pursuant to the terms of the Original Engagement Letters, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to

October 8, 2005 (the "Original Retention Order").  Pursuant to the Original Retention Order the

Debtors were authorized to retain KPMG to provide (i) international tax process improvement

assistance, (ii) certain tax consulting services, (iii) international executive services provided to

the Debtors and their expatriates, and (iv) acquisition and due diligence services.

17.    On April 20, 2006, the Debtors filed the First Supplemental Application

pursuant to the terms of certain engagement letters, by and between the Debtors and KPMG,

each as described and defined therein (the "First Supplemental Engagement Letters").

18.    On May 2, 2006, this Court entered an order approving the First

Supplemental Application pursuant to the terms of the First Supplemental Engagement Letters

(the "First Supplemental Retention Order").  Pursuant to the First Supplemental Retention Order

8

the Debtors were authorized to retain KPMG to (i) provide advisory and valuation services, (ii)

continue to provide tax advisory services, and (iii) provide additional international executive tax

services to the Debtors and their expatriates.

        19.    On November 10, 2006, the Debtors filed the Second Supplemental

Application pursuant to the terms of certain engagement letters, by and between the Debtors and

KPMG, each as described and defined therein (the "Second Supplemental Engagement Letters").

        20.    On December 6, 2006, this Court entered an order approving the Second

Supplemental Application pursuant to the terms of the Second Supplemental Engagement Letters

(the "Second Supplemental Retention Order").  In accordance with the Second Supplemental

Retention Order the Debtors were authorized to retain KPMG to provide the Debtors with (i)

certain improvements to the international tax reporting package and processes, (ii) certain

internal reporting initiatives, (iii) a certain special investigation, (iv) certain transfer pricing

services, (v) certain improvements to the financial close, consolidation, and management

reporting processes, and (vi) certain additional services.

Relief Requested

        21.    By this Third Supplemental Application, the Debtors respectfully request

entry of an order under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014, authorizing employment and retention of KPMG to (i) enter into the

Master Agreement, a copy of which is attached as Exhibit A to the Silberg Declaration, effective

nunc pro tunc to February 9, 2007, (ii) continue to provide the Debtors with the Global Mobility

Services, effective nunc pro tunc to February 9, 2007, pursuant to the terms and conditions set

forth in (a) the Master Agreement and (b) the applicable Statement of Work for the Global

Mobility Advisory Services (the "Global Mobility SOW"), a copy of which is attached to the

9

Silberg Declaration as <u>Exhibit B</u>, (iii) continue to provide the Debtors with the Tax Consulting

Services, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007, pursuant to the terms and conditions set

forth in (a) the Master Agreement and (b) the applicable Statement of Work for the Tax

Consulting Services (the "Tax Consulting SOW"), a copy of which is attached to the Silberg

Declaration as <u>Exhibit C</u>, (iv) continue to provide the Debtors with International Assignment

Services, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007, pursuant to the terms and conditions set

forth in (a) the Master Agreement and (b) the applicable Statement of Work for the International

Assignment Services (the "International Assignment SOW"), a copy of which is attached to the

Silberg Declaration as <u>Exhibit D</u>, (v) provide the Debtors with Fresh Start Services, effective

<u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006, pursuant to the terms and conditions set forth in (a) the

Master Agreement and (b) the applicable Statement of Work for the Fresh Start Services, a copy

of which is attached to the Silberg Declaration as <u>Exhibit E</u> (the "Fresh Start SOW," and

collectively with the International Assignment SOW, the Tax Consulting SOW, and the Global

Mobility SOW, the "SOWs"), and (vi) provide the Debtors with certain Additional Services.

       22.    The Debtors believe that they will continue to require the services provided

by KPMG and request for KPMG to render Professional Services to the Debtors which will

include the renewal and extension of existing services, additional phase services under existing

engagements, and additional services under future statements of work between the Debtors and

KPMG in accordance with the Master Agreement.  Accordingly, the Debtors are hereby seeking

authority to retain KPMG to complete the projects described in the SOWs filed herewith and to

execute additional statements of work without further Court approval.  The additional statements

of work will contain indemnity and limitations on liability provisions on terms that will be no

less favorable to the Debtors than those set forth in the Master Agreement.  The Debtors submit

10

that this arrangement is far more beneficial to and conservative of estate resources than would be

the case if each engagement between the Debtors and KPMG required a lengthy and expensive

retention application.  Moreover, no bankruptcy policies should be offended because such

arrangement does nothing to effect the administration of these chapter 11 cases.

23.    The Second Supplemental Retention Order provides that no Court approval

is required for any "Additional Services."  According to the Second Supplemental Application,

"Additional Services" constitute those that are (i) a renewal and extension of services approved

to be provided by KPMG under the Prior Applications or (ii) services of a nature consistent with

the services covered in Prior Applications.  The Debtors believe that all of the services described

in the SOWs are "Additional Services" under the Second Supplemental Retention Order because

they constitute either renewal and extension of services approved to be provided by KPMG

under the Prior Applications or services of a nature consistent with the services covered in Prior

Applications.  Out of abundance of caution, however, and because the SOWs were executed

pursuant to the Master Agreement, the Debtors hereby request authorization for KPMG to

provide such services.

<u>Scope Of Services</u>

A.    <u>The Master Agreement</u>

24.    The Master Agreement establishes the standard terms and conditions

pursuant to which KPMG may provide the Debtors with certain professional services (the

"Professional Services").  The specific scope of work and other conditions will be described in

each applicable statement of work.

25.    The Global Mobility Services, the Tax Consulting Services, the

International Assignment Services, and the Fresh Start Services are evidenced by the Master

11

Agreement as supplemented by the applicable statement of work.  The respective scopes of such services are described in the SOWs:

    1.    <u>Global Mobility SOW</u>

    26.   In accordance with the Global Mobility SOW, KPMG will provide certain international assignment administration and consulting services to the Debtors in addition to those set forth in the Original Engagement Letters and First Supplemental Engagement Letters, including, but not limited to the following:

    a.    <u>Pre-Assignment Services</u>

    i.    Prepare cost projection, including revisions;

    ii.    Prepare draft international assignment agreement;

    iii.    Prepare draft pay calculation;

    iv.    Finalize International Assignment Agreement and pay calculation and participate in consultation session;

    v.    Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

    vi.    Calculate first year spending account to be paid in first month of assignment and provide to payroll; and

    vii.    Obtain Social Security Certificates of Coverage.

    b.    <u>During Assignment Services</u>

    i.    Calculate annual spending account on assignment anniversary date and provide to payroll;

    ii.    Answer international assignee's policy-related inquiries including policy interpretation based on Delphi-provided assumptions;

    iii.    Serve as focal point for international assignee's general questions and issues;

    iv.    Prepare periodic adjustments to compensation items according to Delphi's policy and/or changes to international assignee's pay or family status;

12

    v.   Prepare payroll changes per pay period and forward to Delphi for approval and processing;

    vi.   Prepare annual year-end compensation summaries;

    vii.   Monitor data provider subscriptions and invoices, as needed;

    viii.   Track key dates and notify International assignees and/or management of required actions;

    ix.   Track tax equalization settlements, forward to Delphi for approval and processing; and

    x.   Conduct annual customer satisfaction survey and report results to Delphi.

  c.  <u>Repatriation Services</u>

    i.   Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

  d.  <u>Other Services</u>

    i.   Perform other services requested by Delphi related to international assignments.

 2.  <u>Tax Consulting SOW</u>

  27. In accordance with the Tax Consulting SOW, KPMG will continue to provide tax consulting services with respect to such matters as may arise for Delphi for which Delphi seeks KPMG's advice and consultation.

 3.  <u>International Assignment SOW</u>

  28. In accordance with the International Assignment SOW, KPMG will provide certain international assignment tax preparation and consulting services to the Debtors in addition to those set forth in the Original Engagement Letters and First Supplemental Engagement Letters, including, but not limited to the following:

  a.  <u>Expatriates Assigned From The U.S. And Expatriates Assigned To The U.S.</u>

    i.   Collect tax data;

      ii.      Calculate annual hypothetical tax withholding;

      iii.      Prepare required home and host country individual income tax returns during, and one year after, assignment;

      iv.      Prepare requests for extension of time to file tax returns(s), where required;

      v.      Prepare U.S. estimated tax vouchers, if required;

      vi.      Prepare year-end U.S. withholding calculations, where applicable;

      vii.      Prepare tax equalization calculations;

      viii.      Determine and arrange for timely payment of local taxes in the host country, where applicable;

      ix.      Conduct pre-departure and/or post-arrival consultation sessions; and

      x.      Handle routine correspondence with IRS and foreign tax authorities, including review of assessments.

b.      <u>Expatriates Assigned To And From Non-U.S. Countries</u>

      i.      Collect tax data;

      ii.      Calculate annual hypothetical tax withholding;

      iii.      Prepare required home and host country individual income tax returns during, and one year after, assignment;

      iv.      Prepare requests for extension of time to file tax returns(s), where required;

      v.      Determine and arrange for timely payment of local taxes in the host country, where applicable;

      vi.      Prepare tax equalization calculations;

      vii.      Conduct pre-departure and/or post-arrival consultation sessions; and

      viii.      Handle routine correspondence with foreign tax authorities, including review of assessments.

c.      <u>Employee Assigned To The Mexican Border</u>

      i.      Collect tax data;

      ii.      Prepare U.S. income tax return(s);

      iii.      Prepare requests for extension of time to file tax return(s), where required;

      iv.      Prepare tax equalization calculations;

      v.      Prepare monthly non-resident Mexican tax calculations;

      vi.      Conduct post-arrival consultation session; and

      vii.      Handle routine correspondence with the IRS.

d.      <u>J-1 Visa Trainees</u>

      i.      Collect tax data;

      ii.      Prepare U.S. income tax return(s);

      iii.      Prepare requests for extension of time to file tax return(s), where required;

      iv.      Conduct post-arrival consultation session; and

      v.      Handle routine correspondence with the IRS.

e.      <u>Cost Estimates</u>

      i.      Prepare cost projection, including revisions;

      ii.      Prepare draft international assignment agreement;

      iii.      Prepare draft pay calculation;

      iv.      Finalize international assignment agreement and pay calculation and participate in consultation session;

      v.      Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

      vi.      Calculate first year spending account to be paid in first month of assignment and provide to payroll;

      vii.      Calculate annual spending account on assignment anniversary date and provide to payroll; and

      viii.      Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

15

    f.    <u>Global Coordination</u>

        i.    Coordinate centralized hypothetical tax calculation process;

        ii.    Coordinate tax planning review;

        iii.    Coordinate on-going benchmarking of Delphi's current tax equalization policy;

        iv.    Coordinate dedicated website for Delphi;

        v.    Coordinate dedicated website for Delphi employees;

        vi.    Coordinate unlimited access to all KPMG publications;

        vii.    Coordinate status reports and client service reports; and

        viii.    Coordinate KPMG International Executive Services Flash Alert Newsletters.

    g.    <u>Other Services</u>

        i.    Perform other services requested by Delphi related to international assignments.

    4.    <u>Fresh Start SOW</u>

    29.    Pursuant to the Fresh Start SOW, KPMG will provide the Debtors with services related to addressing various valuation, accounting, financial reporting, and tax needs arising from the Debtors' anticipated adoption of a confirmed plan of reorganization and emergence from chapter 11.  Specifically, KPMG will assist the Debtors in the recognition, measurement, and financial reporting requirements of Statement of Position 90-7, Financial Reporting by Entities in Reorganization under the Bankruptcy Code ("SOP 90-7").

    30.    In accordance with the Fresh Start SOW, KPMG will provide Fresh Start Services to the Debtors as KPMG and the Debtors deem appropriate and feasible, including, but not limited to:

    a.    <u>Accounting And Tax</u>

i.       <u>Fresh Start Approach And Work Steps</u>:  Considering the alternatives in approach, timing, order, and adoption dates for fresh start reporting, the alternatives for on-going efficient processing of detailed accounting records, and the potential approaches for updating detailed records to reflect changes in values and the new accounting requirements following emergence;

ii.      <u>Change Of Ownership</u>:  Evaluating whether the conditions in SOP 90-7 are met to justify adoption of a new, fresh start basis by determining whether there is a change in ownership before confirmation and after emergence;

iii.     <u>Issues And Documentation</u>:  Researching and documenting (memoranda, discussions with Ernst & Young as required, etc.) to support the accounting and reporting conclusions reached in accordance with SOP 90-7;

iv.      <u>Segregation Of Liabilities</u>:  Identifying and segregating liabilities that arose before and after filing to reflect the liabilities subject to the bankruptcy process;

v.       <u>Claims</u>:  Monitoring the bankruptcy cases to (a) compare the claims filed, allowed, and existing debtor balances (particularly to trade vendors), (b) adjust the existing payables to the allowed claims, and (c) estimate claims to be settled upon emergence;

vi.      <u>Reporting Classifications</u>:  Identifying and segregating pre-emergence expenses, restructuring costs, and losses for classification in a special category called "reorganization items" to properly portray amounts from activities to restructure the operations prior to emergence;

vii.     <u>Guarantees</u>:  Considering issues related to recognizing the fair value of obligations from Guarantees (FIN 45) (from units subject to spin-off or sale as a result of the restructuring process);

viii.    <u>Asset Retirement Obligations (SFAS 143)</u>:  Considering issues related to the recognition of obligations from the retirement of tangible long-lived assets (from units subject to spin-off or sale as a result of the restructuring process);

ix.      <u>Top Level Reporting</u>:  Assessing the degree to which top side adjustments and disclosures are utilized to report on a fresh start basis from the date of emergence until such amounts are recorded to the Debtors' detailed accounting records;

x.       <u>Detailed Accounting Records</u>:  Developing an approach to repopulating the Debtors' detailed records with new fair values and asset lives; providing electronic files and assisting with updating fixed asset and other detailed accounting records with the concluded fair values;

17

     xi.       <u>Training Delphi Employees</u>:  Assisting with training the Debtors' employees on the impact of adopting fresh start accounting;

     xii.     <u>Book vs. Tax Balances</u>:  Identifying differences between book and tax balances that arise from the plan of emergence and fresh start accounting;

     xiii.    <u>Tax Attributes</u>:  Determining the current position of federal and state tax attributes (including usage limitations) and net asset basis (including basis in stock of subsidiaries) for federal and state tax purposes;

     xiv.    <u>Insolvent Subsidiaries</u>:  Considering the deferred tax impact on the outside basis of investments in insolvent subsidiaries;

     xv.     <u>Cancelled Debt Income</u>:  Computing the amount and allocation of canceled debt income for federal and state tax purposes;

     xvi.    <u>NOL Carryforwards</u>:  Identifying limitations in the ability to utilize net operating loss carry forwards as a result of the approved plan of reorganization;

     xvii.   <u>Tax Elections</u>:  Assessing the impact of available federal and state tax elections; and

   xviii.   <u>Bankruptcy-Related Expenses</u>:  Assessing the deductibility of bankruptcy-related expenses.

b.    <u>Valuation</u>

     i.      <u>Reorganization Value</u>:  Reading and identifying potential issues with the reorganization value (the "Reorganization Value") as determined by the Debtors' financial advisors and identifying differences in assumptions or methodologies used to determine reorganization value and the Business Enterprise Value of the Debtors' reporting units and plants;

     ii.     <u>Identification Of Assets And Liabilities</u>:  Obtaining and reading the Debtors' historical financial statements and detailed financial records, and conducting site visits as necessary, to identify assets and liabilities, regardless of whether those assets and liabilities are currently recorded;

     iii.    <u>Fair Values</u>:  Preparing Fair Value Estimates for each identified asset and liability including In-Process Research and Development;

     iv.    <u>Goodwill</u>:  Determining the difference, if any, between Reorganization Value and the fair value of the subject assets and liabilities identified and valued ("goodwill" or "negative goodwill");

     v.     <u>Reporting Units</u>:  Determining the Business Enterprise Value for each reporting unit and allocating the fair value of subject assets and liabilities, including goodwill, to the SFAS 142 Reporting Units

identified by the Debtors, taking into consideration the Reorganization Value;

vi.   <u>Joint Ventures</u>:  Preparing fair value estimates for the joint venture interests and allocations to identified intangibles in acquisitions accounted for under the equity method;

vii.  <u>Remaining Useful Lives</u>:  Estimating remaining useful lives and providing amortization schedules for the tangible and identified intangible assets; and

viii. <u>Valuation Report</u>:  Issuing a valuation report covering the fair value estimates of the subject assets and liabilities and Business Enterprise Values for each reporting unit of the Debtors;

c.   <u>Systems</u>

i.   Assessing the impact of fresh start accounting on the Debtors' existing systems and reporting requirements and providing recommendations for improvement;

ii.  Providing the Debtors with example model journal entries that may be required to adjust the accounting records in connection with initial or subsequent conversion to the new accounting bases;

iii. Working with the Debtors to identify methods to record the adjustments required in the consolidation systems and accounting records;

iv.  Assisting with identifying the impact on other reporting requirements and methods to efficiently report on the new bases of accounting (<u>i.e.</u>, tax and management reporting);

v.   Advising the Debtors on the roll-out of the "component evaluation" methodology to each impacted entity.  This methodology organizes the work effort around components to identify where adjustments are needed and how to incorporate these into the various systems.  Key aspects include:

- Understanding the local accounting policies or requirements;

- Identifying the impact of the new accounting policies or requirements;

- Identifying of the accounts which must be restated;

- Documenting the systems which require change and possible new systems;

- Identifying interdependence with other components;

- Developing a preliminary plan to produce new data requirements (design);

19

- Obtaining approvals or sign off on key decisions; and

- Identifying factor to consider as you begin to implement (build and test); and

    vi.   Advising the Debtors on additional improvements which could be made to the financial reporting processes and systems in both the short term and long term.

    d.   <u>Project Management</u>

        i.   KPMG will provide project management services to the Debtors' senior management and its fresh start project manager that will assist in coordinating the Fresh Start Services.

    31.   The services to be provided by KPMG to the Debtors under the SOWs will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals and KPMG will coordinate any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

    32.   Subject to this Court's approval of the Third Supplemental Application, KPMG is willing to provide the Debtors with the services described in the Master Agreement and the SOWs on the terms set forth therein.

Qualifications Of Professionals

    33.   As was the case with the Prior Applications, the Debtors have selected KPMG to provide the services described in the Engagement Letters because of KPMG's diverse experience and extensive knowledge in the fields of accounting and taxation.

    34.   The Debtors have employed KPMG as financial and tax advisors since 1999.  In addition, since the Petition Date, the Debtors have engaged KPMG for a number of matters.  By virtue of its prior engagements, KPMG has developed a significant amount of institutional knowledge regarding the Debtors' books, records, financial information, and other data maintained by the Debtors.  Further, KPMG is well-qualified and able to represent the

20

Debtors in a cost-effective, efficient, and timely manner.  Accordingly, the Debtors wish to

continue to retain KPMG to provide further assistance during these chapter 11 cases.

Disinterestedness Of Professionals

35.    The affidavit of Patrick N. Karpen, sworn to February 9, 2006 (the "Original

Affidavit") in support of the Original Application, the affidavit of Gary A. Silberg, sworn to

April 20, 2006 (the "First Supplemental Affidavit") in support of the First Supplemental

Application, the affidavit of Ann Marie Goddard, sworn to July 10, 2006 (the "Goddard

Affidavit"), and the declaration of Gary A. Silberg executed on November 10, 2006 (the

"Original Silberg Declaration," and collectively with the Original Affidavit, the First

Supplemental Affidavit, and the Goddard Affidavit, the "Prior Affidavits and Declaration") filed

in support of the Second Supplemental Application, and the Silberg Declaration, contain

information available as of the date hereof with respect to KPMG's connections with other

parties-in-interest, as required by Bankruptcy Rule 2014(a).  Based on the information set forth

in the Prior Affidavits and Declaration and the Silberg Declaration, the Debtors submit that

KPMG and the professionals in the firm are "disinterested persons," as that term is used in

section 101(14) of the Bankruptcy Code, and are otherwise eligible to be retained under section

327(a) of the Bankruptcy Code.

Professional Compensation

36.    Subject to this Court's approval and pursuant to the terms and conditions of

the Engagement Letters, KPMG's requested compensation for professional services rendered to

the Debtors will be based upon the rates described therein.

37.    The rates included in this Third Supplemental Application (exclusive of

discounts) are KPMG's normal and customary rates for matters of this sort.  In the normal course

21

of business, KPMG revises its hourly rates on October 1st of each year.  Subject to this Court's

approval, KPMG requests that the rates listed below be revised to the hourly rates that will be in

effect at such time.

A.    The Master Agreement

38.    The professional fees will be determined by each statement of work, as

applicable.

39.    KPMG will seek expense reimbursements in accordance with the terms and

conditions of the Travel And Per Diem Expense Reimbursement Policy made part of the Master

Agreement, and in accordance with guidelines established by the U.S. Trustee (the "U.S. Trustee

Guidelines").

1.    The Global Mobility SOW

40.    The rates for services to be rendered by KPMG under the Global Mobility

SOW are as follows:

|  | Fees |
|---|---|
| Annual Fee for International Assignees Assigned from the U.S. | $3,000 |
| Annual Fee for International Assignees Assigned to the U.S. | $1,320 |
| Annual Fee for International Assignees Assigned to and from Non-U.S. Countries | $840 |
| Preparation of Cost Estimates, International Assignment Agreement, and Pay Calculation and for cancelled assignments | $850 |

2.    The Tax Consulting SOW

41.    Pursuant to the terms and conditions of the Tax Consulting SOW, KPMG's

requested compensation for professional services rendered to the Debtors will be based upon the

hours actually expended by each assigned staff member at each staff member's hourly billing rate.  The hourly rates for the Tax Consulting Services are as follows:

| Professional Level: | Net Hourly Rate After Application Of Discount: |
|---|---|
| Partner | $480 |
| Senior Manager | $395 |
| Manager | $315 |
| Senior Associate | $225 |
| Associate | $150 |

42.    In accordance with the Tax Consulting SOW, fees for KPMG International Member Firms will be billed at 60% of their standard hourly rates.  KPMG estimates that the total fees to be incurred under the Tax Consulting SOW will range from $50,000 to $75,000.

3.    The International Assignment SOW

43.    The rates for services to be rendered by KPMG under the International Assignment SOW are as follows:

|  | Fees |
|---|---|
| Expatriates Assigned to the U.S. | $1,750 |
| Expatriates Assigned from the U.S. | $2,700 |
| Expatriates Assigned to and from Non-U.S. Countries | $2,100 |
| Employees Assigned to the Mexican Border | $750 |
| J-1 Visa Trainees | $375 |
| Preparation of monthly Mexican non-resident tax withholding calculation for Employees Assigned to the Mexico Border | $40 |
| Preparation of Amended U.S. tax returns for Expatriates Assigned to the U.S. and Expatriates Assigned from the U.S. | $800 |

23

| | |
|---|---|
| Preparation of Amended U.S. tax returns for Employees Assigned to the Mexico Border | $375 |
| Preparation of Cost Estimates, Expatriate Agreement, Pay Calculation and update of annual Spending Account at onset of assignment | $850 |
| Preparation and compilation of payments at host information | $375 |

4.    <u>The Fresh Start SOW</u>

44.    Subject to this Court's approval and pursuant to the terms and conditions of the Fresh Start SOW, KPMG's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  KPMG has agreed to apply a voluntary discount to its hourly rates as set forth in the Fresh Start Engagement Letter.  The discounted hourly rates for such services to be rendered by KPMG are as follows:

| **Professional Level:** | **Net Hourly Rate After Application Of Discount:** |
|---|---|
| Partner | $500 |
| Director | $440 |
| Manager | $360 |
| Senior | $250 |
| Associate | $165 |

45.    KPMG estimates that the total fees to be incurred under the Fresh Start SOW will amount to approximately $10 million.

46.    KPMG intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules for the Southern District of

New York (the "Local Rules"), orders of this Court, and U.S. Trustee Guidelines.  KPMG

acknowledges that all compensation will be subject to this Court's review and approval after

notice and hearing.  KPMG has agreed to accept as compensation such sums as may be allowed

by this Court.

47.    The Debtors believe that KPMG's fees are fair and reasonable in light of

industry practice, market rates both in and out of chapter 11 proceedings, KPMG's experience in

reorganizations, and KPMG's importance in these cases.

Other Terms And Conditions Of The Master Agreement And SOWs

A.    Subcontracting Services To KPMG Member Firms

48.    The KPMG global network encompasses independent professional services

practices conducted by separate legal entities throughout the world.  KPMG International, a

Swiss cooperative, serves as a coordinating entity for a network of member firms operating

under the KPMG name.  KPMG International is a member-based entity with no shareholders and

no permanent capital.  Each of the member firms of KPMG International ("KPMG Member

Firms") is separate and legally distinct.  KPMG is the United States member firm of KPMG

International.

49.    Without the Debtors' prior written approval, KPMG may subcontract with

certain other KPMG Member Firms to provide services to the Debtors under the Master

Agreement and the SOWs, provided, however, that KPMG will remain fully and solely

responsible for all of its liabilities and obligations under the Master Agreement and the SOWs

whether or not performed, in whole or in part, by KPMG, any affiliate of KPMG, any KPMG

Member Firm, or any of their respective affiliates.  The Debtors will have no recourse, and will

25

bring no claim, against any KPMG Member Firm other than KPMG, or against any

subcontractors, members, shareholders, directors, officers, managers, partners, agents,

representatives, or employees of any KPMG Member Firm (or any of their respective successors

or permitted assigns), or any of their respective assets, with respect to the services or otherwise

under the Master Agreement and the SOWs.

B.    Dispute Resolution

          50.    With respect to dispute resolution, KPMG acknowledges that any dispute or

claim relating to their engagement under the Master Agreement and the SOWs may be brought

before this Court.

C.    Indemnification And Limitation On Liability

          51.    With respect to indemnification and limitation on liability, KPMG

acknowledges that under the Master Agreement and the SOWs, KPMG will not be indemnified

and KPMG's limitation of liability will not apply to claims arising out of KPMG's gross

negligence or willful misconduct.

          52.    Pursuant to the International Assignment SOW and the Global Mobility

SOW, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of

contract, negligence, or other tort committed by KPMG, regardless of the theory of liability

asserted, is limited to no more than two times the total amount of fees paid to KPMG for services

rendered under the International Assignment SOW and the Global Mobility SOW.  Pursuant to

the Tax Consulting SOW, KPMG's liability to pay damages for any losses incurred by Delphi as

a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the

theory of liability asserted, is limited to no more than five times the total amount of fees paid to

KPMG for services rendered under the Tax Consulting SOW.

26

53.    Pursuant to the Fresh Start SOW, KPMG's liability to pay damages for any losses incurred by the Debtors as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for services rendered under the Fresh Start SOW.

D.    Termination

54.    The Master Agreement will expire on December 31, 2007, whereupon KPMG and the Debtors may extend the Master Agreement for successive one year periods. Each SOW will become effective as of the date of the commencement of services to be rendered under such SOW, or, if earlier, the date of execution of such SOW.  Each SOW will remain effective until the completion of the services to be rendered under the applicable SOW.

55.    KPMG and the Debtors may terminate the Master Agreement or any SOW in the event of a material breach of the Master Agreement that is not cured within 30 days after receipt of written notice of such breach.

56.    Additionally, under the Master Agreement, the Debtors may terminate any SOW for convenience at any time upon 30 days' prior written notice.  KPMG may terminate any SOW at any time upon 30 days' notice to the Debtors in the event of any change in law, rule, regulation, or professional standards that would cause the continued provision of the services under such SOW by KPMG to violate such law, rule, regulation, or professional standard or in the event of a sale by KPMG of the practice providing the services under such SOW if the Debtors elect not to consent to an assignment to the party acquiring such practice from KPMG. The terminating party shall provide the Court, the U.S. Trustee, the Creditors' Committee, and the Fee Committee with ten business days' notice of termination.

## Conclusion

57.    For the foregoing reasons, the Debtors submit that the relief requested

herein is in the best interests of the Debtors and their estates and creditors and should be

approved.

## Notice

58.    Notice of this Third Supplemental Application has been provided in

accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105

And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates

And Certain Notice, Case Management, And Administrative Procedures, entered by this Court

on October 26, 2006 (Docket No. 5418).  In light of the nature of the relief requested, the

Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

59.    Because the legal points and authorities upon which this Third Supplemental

Application relies are incorporated herein, the Debtors respectfully request that the requirement

of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be

deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order authorizing the employment and retention of KPMG to (i) enter into the Master Agreement with the Debtors, effective nunc pro tunc to February 9, 2007, (ii) continue to provide the Debtors with Global Mobility Services, effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with Tax Consulting Services, effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with International Assignment Services, effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with the Fresh Start Services, effective nunc pro tunc to November 16, 2006, (vi) provide the Debtors with certain Additional Services, and (vii) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          March 16, 2007

DELPHI CORPORATION, on behalf of itself and certain of its subsidiaries and affiliates, as Debtors and Debtors-in-Possession

By:   /s/ John D. Sheehan
         Name: John D. Sheehan
         Title:  Vice President and Chief Restructuring
                 Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :
      In re                      :     Chapter 11
                             :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                           :
             Debtors.    :     (Jointly Administered)
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), 1107(b) AND
FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND
RETENTION OF KPMG LLP TO (I) ENTER INTO MASTER PROFESSIONAL
SERVICES AGREEMENT WITH DEBTORS, (II) CONTINUE TO PROVIDE DEBTORS
WITH GLOBAL MOBILITY ADVISORY SERVICES RELATED TO INTERNATIONAL
ASSIGNEES EFFECTIVE NUNC PRO TUNC TO FEBRUARY 9, 2007, (III) CONTINUE TO
PROVIDE DEBTORS' WITH TAX CONSULTING SERVICES EFFECTIVE NUNC PRO
TUNC TO FEBRUARY 9, 2007, (IV) CONTINUE TO PROVIDE DEBTORS WITH
INTERNATIONAL ASSIGNMENT SERVICES RELATED TO INTERNATIONAL
ASSIGNEES EFFECTIVE NUNC PRO TUNC TO
JANUARY 31, 2007, (V) PROVIDE DEBTORS WITH CERTAIN FRESH
START SERVICES EFFECTIVE NUNC PRO TUNC TO NOVEMBER 16, 2006,
AND (VI) PROVIDE DEBTORS WITH CERTAIN ADDITIONAL SERVICES

          Upon the Third Supplemental Retention Application, dated March 16, 2007 (the

"Third Supplemental Retention Application"),[1] of Delphi Corporation and certain of its domestic

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for an order (the "Third Supplemental Retention Order") pursuant

to sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-

1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code") and Rule 2014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the

employment and retention of KPMG LLP ("KPMG") to (i) enter into the Master Professional

---

[1]     Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Third
Supplemental Retention Application.

Services Agreement with the Debtors (the "Master Agreement"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to

February 9, 2007, (ii) continue to provide the Debtors with global mobility advisory services

("Global Mobility Services"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007, (iii) continue to

provide the Debtors with tax consulting services ("Tax Consulting Services"), effective <u>nunc</u> <u>pro</u>

<u>tunc</u> to February 9, 2007, (iv) continue to provide the Debtors with international assignment

services related to international assignees ("International Assignment Services"), effective <u>nunc</u>

<u>pro</u> <u>tunc</u> to January 31, 2007, (v) provide the Debtors with certain fresh start services ("Fresh

Start Services"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006, and (vi) provide the Debtors

with certain additional services (including the renewal and extension of existing services,

additional phase services under existing engagements, and additional services under future

statements of work between the Debtors and KPMG in accordance with the Master Agreement)

(the "Additional Services"); and no objection to the Third Supplemental Retention Application

having been made; and this Court having determined that the relief requested in the Third

Supplemental Retention Application is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Third Supplemental Retention Application has been given and that no other or further notice is

necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it

is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Third Supplemental Retention Application is GRANTED on a final

basis.

2.    Subject to the terms of this Third Supplemental Retention Order, and

pursuant to the terms and conditions of the Third Supplemental Retention Application, the

2

Debtors are authorized to enter into the Master Agreement and the Master Agreement is

approved, pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007.

      3.   Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with additional Global

Mobility Services pursuant to the terms and conditions of the Third Supplemental Retention

Application and the Master Agreement and the corresponding Global Mobility SOW is approved

pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule

2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007.

      4.   Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with Tax Consulting

Services pursuant to the terms and conditions of the Third Supplemental Retention Application

and the Master Agreement and the corresponding Tax Consulting SOW is approved pursuant to

sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014,

effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007.

      5.   Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to continue to provide the Debtors with International

Assignment Services pursuant to the terms and conditions of the Third Supplemental Retention

Application and the Master Agreement and the corresponding International Assignment SOW is

approved pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007.

      6.   Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to provide the Debtors with the Fresh Start Services

pursuant to the terms and conditions of the Third Supplemental Retention Application and the

Master Agreement and the corresponding Fresh Start Services SOW is approved pursuant to

sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014,

effective <u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006.

7.    Subject to the terms of this Third Supplemental Retention Order, the Debtors'

employment and retention of KPMG to provide the Debtors with certain Additional Services

pursuant to the terms and conditions of the Third Supplemental Retention Application and the

Master Agreement and the corresponding future statements of work is approved pursuant to

sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014.

8.    KPMG shall be compensated for its fees and expenses in accordance with the

standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all

applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court

for the Southern District of New York (the "Local Rules"), guidelines established by the Office

of the United States Trustee (the "U.S. Trustee Guidelines"), and further orders of this Court.

9.    KPMG shall take reasonable steps to ensure that it does not charge the

Debtors' estates for duplicative services.

10.    Notwithstanding anything to the contrary set forth in the Master Agreement

or SOWs, without the Debtors' prior written approval, KPMG may subcontract a portion of its

responsibilities under the Master Agreement or SOWs with certain other member firms of

KPMG International (the "KPMG Member Firms"); <u>provided</u>, <u>however</u>, that KPMG shall remain

fully and solely responsible for all of KPMG's liabilities and obligations under the Master

Agreement and SOWs.  The Debtors shall have no recourse, and shall bring no claim, against

any KPMG Member Firm other than KPMG, or against any subcontractors, members,

shareholders, directors, officers, managers, partners, agents, representatives, or employees of any

KPMG Member Firm (or any of their respective successors or permitted assigns), or any of their

respective assets, with respect to the services or otherwise under the Master Agreement and

SOWs.

        11.   Any dispute or claim between KPMG and the Debtors arising out of, or

relating to, the Master Agreement shall brought before this Court.

        12.   All requests of KPMG for payment of indemnity pursuant to the Master

Agreement or SOWs shall be made by means of an application (interim or final as the case may

be) and shall be subject to review by this Court to ensure that payment of such indemnity

conforms to the terms of the Master Agreement or SOW and is reasonable based upon the

circumstances of the litigation or settlement in respect of which indemnity is sought; provided,

however, that in no event shall KPMG be indemnified for a claim that a court determines by a

final order to have risen out of KPMG's own gross negligence or willful misconduct, if any.

        13.   In the event that KPMG seeks reimbursement for attorney's fees from the

Debtors pursuant to the Master Agreement or SOWs, the invoices and supporting time records

from such attorneys shall be included in KPMG's own applications (both interim and final) and

such invoices and time records shall be subject to the U.S. Trustee Guidelines for compensation

and reimbursement of expenses and the approval of this Court under the standard of sections 330

and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained

under section 327 of the Bankruptcy Code and without regard to whether such attorney's services

satisfy section 330(a)(3)(C) of the Bankruptcy Code.

        14.   KPMG's liability for any losses incurred by the Debtors as a result of breach

of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability

asserted, as set forth in the International Assignment SOW and the Global Mobility SOW, shall

be limited to no more than two times the total amount of fees paid to KPMG for services

rendered under the International Assignment SOW and the Global Mobility SOW.

15.   KPMG's liability for any losses incurred by the Debtors as a result of breach

of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability

asserted, as set forth in the Tax Consulting SOW shall be limited to no more than five times the

total amount of fees paid to KPMG for services rendered under the Tax Consulting SOW.

16.   KPMG's liability for any losses incurred by the Debtors as a result of breach

of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability

asserted, as set forth in the Fresh Start SOW, shall be limited to no more than the total amount of

fees paid to KPMG for services rendered under the Fresh Start SOW.

17.   The Master Agreement expires, upon its terms, on December 31, 2007,

whereupon KPMG and the Debtors may extend the Master Agreement for successive one year

periods.  Each SOW shall become effective as of the date of the commencement of services to be

rendered under such SOW, or, if earlier, the date of execution of such SOW.  Each SOW shall

remain effective until the completion of the services to be rendered under the applicable SOW.

18.   Notwithstanding anything to the contrary set forth in the Master Agreement

or SOWs, KPMG and the Debtors may terminate the Master Agreement or any SOW in the

event of a material breach of the Master Agreement that is not cured within 30 days after receipt

of written notice of such breach.  Additionally, under the Master Agreement, the Debtors may

terminate any SOW for convenience at any time upon 30 days' prior written notice.  KPMG may

terminate any SOW at any time upon 30 days' notice to the Debtors in the event of any change in

law, rule, regulation, or professional standards that would cause the continued provision of the

6

services under such SOW by KPMG to violate such law, rule, regulation, or professional

standard or in the event of a sale by KPMG of the practice providing the services under such

SOW if the Debtors elect not to consent to an assignment to the party acquiring such practice

from KPMG.  The terminating party shall provide the Court, the Office of the United States

Trustee, counsel for the Creditors' Committee, and counsel for the Fee Committee with ten

business days' notice of termination.

19.    Any party-in-interest shall have the right to raise the issue of the application

of KPMG's prepetition retainer to postpetition fees and expenses.

20.    To the extent that this Third Supplemental Retention Order is inconsistent

with the Master Agreement or SOWs, this Third Supplemental Retention Order shall govern.

21.    With the exception of KPMG, the KPMG Member Firms providing services

under the Master Agreement or SOW shall be permitted to use category codes to describe the

time spent on services rendered, rather than the more detailed descriptions usually required for

fee applications.

22.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Third Supplemental Retention Order.

23.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Third Supplemental Retention

Application.

Dated:        New York, New York
              March __, 2007

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - x
                        :
     In re                    :     Chapter 11
                        :
   DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                        :
              Debtors.   :     (Jointly Administered)
                        :
- - - - - - - - - - - - - - - - - - - - - - - -x

DECLARATION OF GARY A. SILBERG IN SUPPORT OF THIRD SUPPLEMENTAL
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG LLP TO (I)
ENTER INTO MASTER PROFESSIONAL SERVICES AGREEMENT WITH DEBTORS, (II)
CONTINUE TO PROVIDE DEBTORS WITH GLOBAL MOBILITY ADVISORY SERVICES
RELATED TO INTERNATIONAL ASSIGNEES EFFECTIVE NUNC PRO TUNC TO
FEBRUARY 9, 2007, (III) CONTINUE TO PROVIDE DEBTORS WITH TAX CONSULTING
SERVICES EFFECTIVE NUNC PRO TUNC TO FEBRUARY 9, 2007, (IV) CONTINUE TO
PROVIDE DEBTORS WITH INTERNATIONAL ASSIGNMENT SERVICES RELATED TO
DEBTORS' INTERNATIONAL ASSIGNEES EFFECTIVE NUNC PRO TUNC TO JANUARY
31, 2007, (V) PROVIDE DEBTORS WITH CERTAIN FRESH START SERVICES
EFFECTIVE NUNC PRO TUNC TO NOVEMBER 16, 2006, AND (VI) PROVIDE DEBTORS
WITH CERTAIN ADDITIONAL SERVICES

State of Illinois      )
                  ) ss:
City of Chicago     )

Gary A. Silberg, hereby declares as follows:

          1.     I am a Certified Public Accountant and a partner of KPMG LLP ("KPMG"),

a professional services firm.  I submit this declaration (the "Silberg Declaration") on behalf of

KPMG in support of the third supplemental application (the "Third Supplemental Application")[1]

of Delphi Corporation, and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for

---

[1]    Capitalized terms used herein but not otherwise defined will have those meanings set forth in the Third
Supplemental Application, Original Affidavit or the First Supplemental Affidavit (each as defined below).

entry of an order, pursuant to §§ 327(a), 328(a), and 1107(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the employment and retention of KPMG to (i) enter into the Master Professional Services Agreement (the "Master Agreement") with the Debtors, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007, annexed hereto as <u>Exhibit A</u>, (ii) continue to provide the Debtors with certain global mobility advisory services related to the Debtors' international assignees ("Global Mobility Advisory Services"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007, pursuant to the terms and conditions set forth in (a) the Master Agreement and (b) applicable Statement of Work for the project Global Mobility Advisory Services dated February 9, 2007 (the "Global Mobility SOW"), annexed hereto as <u>Exhibit B</u>, (iii) continue to provide the Debtors with certain tax consulting services ("Tax Consulting Services"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to February 9, 2007, pursuant to the terms and conditions set forth in (a) the Master Agreement and (b) applicable Statement of Work for the project Tax Consulting Services dated February 9, 2007 (the "Tax Consulting SOW"), annexed hereto as <u>Exhibit C</u>, (iv) continue to provide the Debtors with certain international assignment services ("International Assignment Services") related to the Debtors' international assignees, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 31, 2007, pursuant to the terms and conditions set forth in (a) the Master Agreement and (b) the applicable Statement of Work for the project International Assignment Services dated February 9, 2007 (the "International Assignment SOW"), annexed hereto as <u>Exhibit D</u>, (v) provide the Debtors with certain fresh start services ("Fresh Start Services"), effective <u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006, pursuant to the terms and conditions set forth in (a) the Master Agreement and (b) applicable Statement of Work for the project Fresh Start Services dated February 9, 2007 (the "Fresh Start SOW", and collectively with the Global Mobility SOW, the Tax Consulting SOW, and the International Assignment SOW, the

"SOWs"), annexed hereto as Exhibit E, and (vi) provide the Debtors with certain additional

services (which services include (i) the renewal and extension of existing services and additional

phase services under existing engagements approved by this Court, and (ii) additional services

under future statements of work between the Debtors and KPMG for services of a nature consistent

with the services covered in Prior Applications or in accordance with the Master Agreement) (the

"Additional Services").

> 2.    This Silberg Declaration hereby incorporates by reference (a) the Affidavit

of Patrick N. Karpen, sworn to on February 9, 2006 (the "Original Affidavit"), filed in support of

the application dated February 14, 2006, pursuant to sections 327(a), 328(a), and 1107(b) of the

Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for authorization to retain KPMG as tax

and transaction services advisors to the Debtors, effective nunc pro tunc to October 8, 2005 (the

"Original Application"), pursuant to the terms of the engagement letters as described and defined

therein (the "Original Engagement Letters"), (b) the Affidavit of Gary A. Silberg, sworn to on

April 20, 2006 (the "First Supplemental Affidavit"), filed in support of the first supplemental

application dated April 20, 2006 (the "First Supplemental Application"), pursuant to sections

327(a), 328(a), and 1107(b) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules

authorizing (i) the employment and retention of KPMG as advisory and valuation services

advisors to the Debtors effective nunc pro tunc to February 16, 2006, (ii) the continued retention of

KPMG as tax advisors to the Debtors effective nunc pro tunc to January 1, 2006, and (iii)

additional international executive tax services to be rendered by KPMG to the Debtors effective

nunc pro tunc to January 18, 2006 (the "First Supplemental Engagement Letters"), (c) the

Affidavit of Ann Marie Goddard, sworn to on July 10, 2006, (the "Goddard Affidavit" and

together with the Original Affidavit and the First Supplemental Affidavit, the "Prior Affidavits")

and (d) the declaration of Gary A. Silberg declared on November 10, 2006, (the "Declaration")

filed in support of the second supplemental application dated November 10, 2006 (the "Second

Supplemental Application"), pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy

Code and Rule 2014 of the Bankruptcy Rules for authorization to retain KPMG to assist the

Debtors with (i) certain improvements to the international tax reporting package and processes

effective nunc pro tunc to August 1, 2006, (ii) certain internal reporting initiatives effective nunc

pro tunc to May 9, 2006, (iii) a special investigation effective nunc pro tunc to July 10, 2006, (iv)

certain transfer pricing services effective nunc pro tunc to May 19, 2006, (v) certain improvements

to the financial close, consolidation and management reporting processes, and (vi) certain

additional services (including the renewal and extension of existing services and additional phase

services under existing engagements by and between the Debtors and KPMG) of a nature

consistent with the services covered in retention applications previously approved by the Court

("Additional Services").   On March 3, 2006, this Court entered an order approving the Original

Application effective nunc pro tunc to October 8, 2005 (the "Original Retention Order"), on May 2,

2006, this Court entered an order approving the First Supplemental Application (the "First

Supplemental Retention Order"), and on December 6, 2006, this Court entered an order approving

the Second Supplemental Application (the "Second Supplemental Retention Order").   I have

personal knowledge of the matters set forth herein, and, if called as a witness, would testify

competently thereto.[2]

<u>Services To Be Rendered</u>

A.    <u>The Master Agreement</u>

3.    The Master Agreement establishes the standard terms and conditions

pursuant to which KPMG may provide the Debtors with certain professional services

---

[2]        Certain of the disclosures herein relate to matters within the knowledge of other professionals at KPMG.

("Professional Services'). The specific scope of work and other conditions will be described in each applicable statement of work.

4.    The Global Mobility Services, the Tax Consulting Services, the International Assignment Services, and the Fresh Start Services are evidenced by the Master Agreement as supplemented by the applicable statement of work.   The respective scopes of such services are described in the SOWs:

B.    Global Mobility SOW

5.    In accordance with the Global Mobility SOW, KPMG will provide certain international assignment administration and consulting services to the Debtors in addition to those set forth in the Original Engagement Letters and First Supplemental Engagement Letters, including, but not limited to the following:

    a.    Pre-Assignment Services

        i.    Prepare cost projection including revisions;

        ii.    Prepare draft international assignment agreement;

        iii.    Prepare draft pay calculation;

        iv.    Finalize International Assignment Agreement and pay calculation and participate in consultation session;

        v.    Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

        vi.    Calculate first year spending account to be paid in first month of assignment and provide to payroll; and,

        vii.    Obtain Social Security Certificates of Coverage.

    b.    During Assignment Services

        i.    Calculate annual spending account on assignment anniversary date and provide to payroll;

        ii.    Answer international assignee's policy-related inquiries including policy interpretation based on Delphi-provided assumptions;

      iii.        Serve as focal point for international assignee's general questions and issues;

      iv.        Prepare periodic adjustments to compensation items according to Delphi's policy and/or changes to international assignee's pay or family status;

      v.        Prepare payroll changes per pay period and forward to Delphi for approval and processing;

      vi.        Prepare annual year-end compensation summaries;

      vii.        Monitor data provider subscriptions and invoices, as needed;

      viii.        Track key dates and notify International assignees and/or management of required actions;

      ix.        Track tax equalization settlements, forward to Delphi for approval and processing; and,

      x.        Conduct annual customer satisfaction survey and report results to Delphi.

    c.      <u>Repatriation Services</u>

      i.        Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

    d.      <u>Other Services</u>

      i.        Other services requested by Delphi related to international assignments.

C.     <u>Tax Consulting SOW</u>

     6.     In accordance with the Tax Consulting SOW, KPMG will continue to provide tax consulting services with respect to such matters as may arise for Delphi for which Delphi seeks KPMG's advice and consultation.

D.     <u>International Assignment SOW</u>

     7.     In accordance with the International Assignment SOW, KPMG will provide certain international assignment tax preparation and consulting services to the Debtors in addition

to those set forth in the Original Engagement Letters and First Supplemental Engagement Letters,

including, but not limited to the following:

a.    Expatriates Assigned From The U.S. And Expatriates Assigned To The U.S.

    i.    Collect tax data;

    ii.    Calculate annual hypothetical tax withholding;

    iii.    Prepare required home and host country individual income tax returns during, and one year after assignment;

    iv.    Prepare requests for extension of time to file tax returns(s), where require;

    v.    Prepare U.S. estimated tax vouchers, if required;

    vi.    Prepare year-end U.S. withholding calculations, where applicable;

    vii.    Prepare tax equalization calculations;

    viii.    Determine and arrange for timely payment of local taxes in the host country, where applicable;

    ix.    Conduct pre-departure and/or post-arrival consultation sessions; and,

    x.    Handle routine correspondence with IRS and foreign tax authorities, including review of assessments.

b.    Expatriates Assigned To And From Non-U.S. Countries

    i.    Collect tax data;

    ii.    Calculate annual hypothetical tax withholding;

    iii.    Prepare required home and host country individual income tax returns during, and one year after assignment;

    iv.    Prepare requests for extension of time to file tax returns(s), where required;

    v.    Determine and arrange for timely payment of local taxes in the host country, where applicable;

    vi.    Prepare tax equalization calculations;

    vii.    Conduct pre-departure and/or post-arrival consultation sessions; and,

    viii.    Handle routine correspondence with foreign tax authorities, including review of assessments.

c.    <u>Employee Assigned To The Mexican Border</u>

    i.    Collect tax data;

    ii.    Prepare U.S. income tax return(s);

    iii.    Prepare requests for extension of time to file tax return(s), where required;

    iv.    Prepare tax equalization calculations;

    v.    Prepare monthly non-resident Mexican tax calculations;

    vi.    Conduct post-arrival consultation session; and,

    vii.    Handle routine correspondence with the IRS.

d.    <u>J-1 Visa Trainees</u>

    i.    Collect tax data;

    ii.    Prepare U.S. income tax return(s);

    iii.    Prepare requests for extension of time to file tax return(s), where required;

    iv.    Conduct post-arrival consultation session; and,

    v.    Handle routine correspondence with the IRS.

e.    <u>Cost Estimates</u>

    i.    Prepare cost projection including revisions;

    ii.    Prepare draft international assignment agreement;

    iii.    Prepare draft pay calculation;

    iv.    Finalize international assignment agreement and pay calculation and participate in consultation session;

    v.    Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;

     vi.    Calculate first year spending account to be paid in first month of assignment and provide to payroll;

     vii.    Calculate annual spending account on assignment anniversary date and provide to payroll; and,

     viii.    Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

f.    <u>Global Coordination</u>

     i.    Centralized hypothetical tax calculation process;

     ii.    Tax planning review;

     iii.    On-going benchmarking of Delphi's current tax equalization policy;

     iv.    Dedicated website for Delphi;

     v.    Dedicated website for Delphi employees;

     vi.    Unlimited access to all KPMG publications;

     vii.    Status reports and client service reports; and,

     viii.    KPMG International Executive Services Flash Alert Newsletters.

g.    <u>Other Services</u>

     i.    Other services requested by Delphi related to international assignments.

E.    <u>Fresh Start SOW</u>

    8.    Pursuant to the Fresh Start SOW, KPMG will provide the Debtors with services related to addressing various valuation, accounting, financial reporting and tax needs arising from the Debtors' anticipated adoption of a confirmed plan of reorganization and emergence from chapter 11. Specifically, KPMG will assist the Debtors in the recognition, measurement and financial reporting requirements of Statement of Position 90-7, *Financial Reporting by Entities in Reorganization under the Bankruptcy Code* ("SOP 90-7").

9.    In accordance with the Fresh Start SOW, KPMG will provide Fresh Start

Services to the Debtors as KPMG and the Debtors deem appropriate and feasible, including but not

limited to:

    a.    <u>Accounting And Tax</u>

        i.    <u>Fresh Start Approach And Work Steps</u>:  Considering the alternatives in approach, timing, order, and adoption dates for fresh start reporting, the alternatives for on-going efficient processing of detailed accounting records, and the potential approaches for updating detailed records to reflect changes in values and the new accounting requirements following emergence;

        ii.    <u>Change Of Ownership</u>:  Evaluating whether the conditions in SOP 90-7 are met to justify adoption of a new, fresh start basis by determining whether there is a change in ownership before confirmation and after emergence;

        iii.    <u>Issues And Documentation</u>:  Researching and documenting (memoranda, discussions with Ernst & Young as required, etc.) to support the accounting and reporting conclusions reached in accordance with SOP 90-7;

        iv.    <u>Segregation Liabilities</u>:  Identifying and segregating of liabilities that arose before and after filing to reflect the liabilities subject to the bankruptcy process;

        v.    <u>Claims</u>:  Monitoring the bankruptcy proceedings to (a) compare the claims filed, allowed, and existing debtor balances (particularly to trade vendors), (b) adjust the existing payables to the allowed claims, and (c) estimate claims to be settled upon emergence;

        vi.    <u>Reporting Classifications</u>:  Identifying and segregating pre-emergence expenses, restructuring costs, and losses for classification in a special category called "reorganization items" to properly portray amounts from activities to restructure the operations prior to emergence;

        vii.    <u>Guarantees</u>:  Considering issues related to recognizing the fair value of obligations from Guarantees (FIN 45) (from units subject to spin-off or sale as a result of the restructuring process);

        viii.    <u>Asset Retirement Obligations(SFAS 143)</u>:  Considering issues related to the recognition of obligations from the retirement of tangible long-lived assets (from units subject to spin-off or sale as a result of the restructuring process);

        ix.    <u>Top Level Reporting</u>:  Assessing the degree to which top side adjustments and disclosures are utilized to report on a fresh start basis

- 10 -

from the date of emergence until such amounts are recorded to the Debtors' detailed accounting records;

x.  Detailed Accounting Records: Developing an approach to repopulating the Debtors' detailed records with new fair values and asset lives - providing electronic files and assistance with updating fixed asset and other detailed accounting records with the concluded fair values;

xi.  Training Delphi Employees: Assisting with training the Debtors' employees on the impact of adopting fresh start accounting;

xii.  Book vs. Tax Balances: Identifying differences between book and tax balances that arise from the plan of emergence and fresh start accounting;

xiii.  Tax Attributes: Determining the current position of federal and state tax attributes (including usage limitations) and net asset basis (including basis in stock of subsidiaries) for federal and state tax purposes;

xiv.  Insolvent Subsidiaries: Considering the deferred tax impact on the outside basis of investments in insolvent subsidiaries;

xv.  Cancelled Debt Income: Computing the amount and allocation of canceled debt income for federal and state tax purposes;

xvi.  NOL Carryforwards: Identifying limitations in the ability to utilize net operating loss carry forwards as a result of the approved plan of reorganization;

xvii.  Tax Elections: Assessing the impact of available federal and state tax elections; and

xviii.  Bankruptcy-Related Expenses: Assessing the deductibility of bankruptcy-related expenses.

b.  Valuation

i.  Reorganization Value: Reading and identifying potential issues with the reorganization value (the "Reorganization Value") as determined by the Debtors' financial advisors and identifying differences in assumptions or methodologies used to determine reorganization value and the Business Enterprise Value of the Debtors' reporting units and plants;

ii.  Identification Of Assets And Liabilities: Obtaining and reading the Debtors' historical financial statements and detailed financial records, and conducting site visits as necessary, to identify assets and liabilities, regardless of whether those assets and liabilities are currently recorded;

iii. <u>Fair Values</u>: Preparing Fair Value Estimates for each identified asset and liability including In-Process Research and Development;

iv. <u>Goodwill</u>: Determining the difference, if any, between Reorganization Value and the fair value of the subject assets and liabilities identified and valued ("goodwill" or "negative goodwill");

v. <u>Reporting Units</u>: Determining the Business Enterprise Value for each reporting unit and allocating the fair value of subject assets and liabilities, including goodwill, to the SFAS 142 Reporting Units identified by the Debtors, taking into consideration the Reorganization Value;

vi. <u>Joint Ventures</u>: Preparing fair value estimates for the joint venture interests and allocations to identified intangibles in acquisitions accounted for under the equity method;

vii. <u>Remaining Useful Lives</u>: Estimating remaining useful lives and providing amortization schedules for the tangible and identified intangible assets; and

viii. <u>Valuation Report</u>: Issuing a valuation report covering the fair value estimates of the subject assets and liabilities and Business Enterprise Values for each reporting unit of the Debtors;

c. <u>Systems</u>

i. Assessing the impact of fresh start accounting on the Debtors' existing systems and reporting requirements and providing recommendations for improvement;

ii. Providing the Debtors with example model journal entries that may be required to adjust the accounting records in connection with initial or subsequent conversion to the new accounting bases;

iii. Working with the Debtors to identify methods to record the adjustments required in the consolidation systems and accounting records;

iv. Assisting with identifying the impact on other reporting requirements and methods to efficiently report on the new bases of accounting (i.e. tax and management reporting);

v. Advising the Debtors on the roll-out of the "component evaluation" methodology to each impacted entity. This methodology organizes the work effort around components to identify where adjustments are needed and how to incorporate these into the various systems. Key aspects include:

- Understanding the local accounting policies or requirements;

- Identifying the impact of the new accounting policies or requirements;

- Identifying of the accounts which must be restated;
- Documenting the systems which require change and possible new systems;
- Identifying interdependence with other components;
- Developing a preliminary plan to produce new data requirements (design);
- Obtaining approvals or sign off on key decisions; and
- Identifying factor to consider as you begin to implement (build and test); and

vi.     Advising the Debtors on additional improvements which could be made to the financial reporting processes and systems in both the short term and long term.

d.     <u>Project Management</u>

i.     KPMG will provide project management services to the Debtors' senior management and its fresh start project manager that will assist in coordinating the Fresh Start Services.

10.     The services to be provided by KPMG to the Debtors under the Master Agreement, and the SOWs will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals and KPMG will coordinate any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

11.     Subject to this Court's approval of the Third Supplemental Application, KPMG is willing to provide the Debtors with the services described in the Master Agreement and the SOWs on the terms set forth therein.

<u>Professional Compensation</u>

12.     Subject to this Court's approval of the Third Supplemental Application and pursuant to the terms and conditions of the Master Agreement and the SOWs, KPMG's requested compensation for professional services rendered to the Debtors will be based upon the hours

actually expended by each assigned staff member at each staff member's hourly billing rate, subject to the discounts and other terms set forth herein.

13.     The rates included in this Silberg Declaration (exclusive of discounts) are KPMG's normal and customary rates for matters of this sort.  In the normal course of business, KPMG revises its hourly rates on October 1st of each year.  Subject to this Court's approval, KPMG requests that the rates listed below be revised to the hourly rates that will be in effect at such time.

A.     The Global Mobility SOW

14.     Subject to this Court's approval and pursuant to the terms and conditions of the Global Mobility SOW, KPMG's requested compensation for professional services rendered to the Debtors under the Global Mobility SOW are as follows:

|  | Fees |
|---|---|
| Annual Fee for International Assignees Assigned from the U.S. | $3,000 |
| Annual Fee for International Assignees Assigned to the U.S. | $1,320 |
| Annual Fee for International Assignees Assigned to and from Non-U.S. Countries | $840 |
| Preparation of Cost Estimates, International Assignment Agreement, and Pay Calculation and for cancelled assignments | $850 |

B.     The Tax Consulting SOW

15.     Subject to this Court's approval and pursuant to the terms and conditions of the Tax Consulting SOW, KPMG's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  The hourly rates for the Tax Consulting Services are as follows:

| Professional Level: | Net Hourly Rate After Application Of Discount: |
|---|---|
| Partner | $480 |
| Senior Manager | $395 |
| Manager | $315 |
| Senior Associate | $225 |
| Associate | $150 |

16.      In accordance with the Tax Consulting SOW, fees for KPMG International Member Firms will be billed at 60% of their standard hourly rates. KPMG estimates that the total fees to be incurred under the Tax Consulting SOW will be $50,000 to $75,000.

C.      The International Assignment SOW

17.      Subject to this Court's approval and pursuant to the terms and conditions of the International Assignment SOW, KPMG's requested compensation for professional services rendered to the Debtors under the International Assignment SOW are as follows:

|  | Fees |
|---|---|
| Expatriates Assigned to the U.S. | $1,750 |
| Expatriates Assigned from the U.S. | $2,700 |
| Expatriates Assigned to and from Non-U.S. Countries | $2,100 |
| Employees Assigned to the Mexican Border | $750 |
| J-1 Visa Trainees | $375 |
| Preparation of monthly Mexican non-resident tax withholding calculation for Employees Assigned to the Mexico Border | $40 |
| Preparation of Amended U.S. tax returns for Expatriates Assigned to the U.S. and Expatriates Assigned from the U.S. | $800 |
| Preparation of Amended U.S. tax returns for Employees Assigned to the Mexico Border | $375 |
| Preparation of Cost Estimates, Expatriate Agreement, Pay Calculation and update of annual Spending Account at onset of | $850 |

assignment

Preparation and compilation of payments at host information          $375

D.    <u>The Fresh Start SOW</u>

18.    Subject to this Court's approval and pursuant to the terms and conditions of

the Fresh Start SOW, KPMG's requested compensation for professional services rendered to the

Debtors will be based upon the hours actually expended by each assigned staff member at each

staff member's hourly billing rate.  KPMG has agreed to apply a voluntary discount to its hourly

rates as set forth in the Fresh Start SOW.  The discounted hourly rates for such services to be

rendered by KPMG are as follows:

| Professional Level: | Net Hourly Rate After Application Of Discount: |
| --- | --- |
| **Partner** | $500 |
| **Director** | $440 |
| **Manager** | $360 |
| **Senior** | $250 |
| **Associate** | $165 |

E.    <u>Expenses</u>

19.    KPMG will seek such reimbursements in accordance with the terms and

conditions of the Travel And Per Diem Expense Reimbursement Policy made part of the Master

Agreement and the SOWs, and in accordance with guidelines established by the U.S. Trustee (the

"U.S. Trustee Guidelines").

20.    KPMG intends to apply to this Court for allowance of compensation and

reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, corresponding Local Bankruptcy Rules for the Southern District of New

York (the "Local Rules"), orders of this Court, and U.S. Trustee Guidelines.  KPMG

acknowledges that all compensation will be subject to this Court's review and approval after notice and hearing. KPMG has agreed to accept as compensation such sums as may be allowed by this Court.

### Other Terms And Conditions Of The Master Agreement and SOWs

A.    Subcontracting Services To KPMG Member Firms

21.    The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world. KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name. KPMG International is a member-based entity with no shareholders and no permanent capital. Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct. KPMG is the United States member firm of KPMG International.

22.    Without the Debtors' prior written approval, KPMG may subcontract with certain other KPMG Member Firms to provide services to the Debtors under the Master Agreement and the SOWs, provided, however, that KPMG will remain fully and solely responsible for all of its liabilities and obligations under the Master Agreement and the SOWs whether or not performed, in whole or in part, by KPMG, any affiliate of KPMG, any KPMG Member Firm, or any of their respective affiliates. The Debtors will have no recourse, and will bring no claim, against any KPMG Member Firm other than KPMG, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives, or employees of any KPMG Member Firm (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the services or otherwise under the Master Agreement and the SOWs.

23.    KPMG will pay such Engagement Member Firms directly for their services, and will apply to the Court for reimbursement by the Debtors of any such payments made by KPMG to the Engagement Member Firms.  The KPMG Member Firms (other than KPMG) providing services to the Debtors under the Master Agreement and the SOWs will use category codes to describe the services rendered, rather than more detailed descriptions usually required for fee applications.

B.    Dispute Resolution

24.    With respect to dispute resolution, KPMG acknowledges that any dispute or claim relating to their engagement under the Master Agreement and the SOWs may also be brought before this Court.

C.    Indemnification And Limitation On Liability

25.    With respect to indemnification and   limitation on liability, KPMG acknowledges that under the Master Agreement and the SOWs, KPMG will not be indemnified and KPMG's limitation of liability will not apply to claims arising out of KPMG's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct, if any.

26.    Pursuant to the International Assignment SOW and the Global Mobility SOW, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than two times the total amount of fees paid to KPMG for services rendered under the International Assignment SOW and the Global Mobility SOW.  Pursuant to the Tax Consulting SOW, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than five times the total amount of fees paid to KPMG for

services rendered under the Tax Consulting SOW. Pursuant to the Fresh Start SOW, KPMG's liability to pay damages for any losses incurred by the Debtors as a result of breach of contract, negligence, or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for services rendered under the Fresh Start SOW.

D.    Termination

27.    The Master Agreement will expire on December 31, 2007, whereupon KPMG and the Debtors may extend the Master Agreement for successive one year periods. Each SOW will become effective as of the date of the commencement of services to be rendered under such SOW, or, if earlier, the date of execution of such SOW. Each SOW will remain effective until the completion of the services to be rendered under the applicable SOW.

28.    KPMG and the Debtors may terminate the Master Agreement or any SOW in the event of a material breach of the Master Agreement that is not cured within 30 days after receipt of written notice of such breach.

29.    Additionally, under the Master Agreement, the Debtors may terminate any SOW for convenience at any time upon 30 days' prior written notice. KPMG may terminate any SOW at any time upon 30 days' notice to the Debtors in the event of any change in law, rule, regulation, or professional standards that would cause the continued provision of the services under such SOW by KPMG to violate such law, rule, regulation, or professional standard or in the event of a sale by KPMG of the practice providing the services under such SOW if the Debtors elect not to consent to an assignment to the party acquiring such practice from KPMG. The terminating party shall provide the Court, the U.S. Trustee, the Official Committee of Unsecured Creditors, and the Joint Fee Review Committee with ten business days' notice of termination.

## Disinterestedness Of Professionals

30.     The Prior Affidavits, the Declaration and this Silberg Declaration contain information on KPMG's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  KPMG maintains procedures on an ongoing basis to evaluate its connections with parties-in-interest in the Debtors' chapter 11 cases (the "Conflicts Procedures").  Based on the information in the Prior Affidavits, the Declaration, this Silberg Declaration and the Conflicts Procedures, KPMG and the professionals in the firm are "disinterested persons," as that term is used in section 101(14) of the Bankruptcy Code, and are otherwise eligible to be retained under section 327(a) of the Bankruptcy Code.

31.     KPMG's identification of material relationships is ongoing.  If and when additional information becomes available with respect to any other relationships which may exist between KPMG, KPMG Member Firms (as defined in the Original Affidavit), or their partners and professionals and the Debtors, creditors, or any other parties-in-interest which may affect these chapter 11 cases, supplemental affidavits describing such information will be filed with this Court.

32.     In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between KPMG and any other entity, other than a member, partner, or regular associate of KPMG for the sharing of compensation received or to be received for services rendered under the Master Agreement and the SOWs.

33.    I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 14, 2007, at Chicago, Illinois

Gary A. Silberg
Partner

<u>EXHIBIT A</u>

# MASTER PROFESSIONAL SERVICES AGREEMENT

This is a MASTER PROFESSIONAL SERVICES AGREEMENT, dated as of February 9, 2007 (this "Agreement"), between KPMG LLP, a Delaware registered limited liability partnership ("KPMG"), and Delphi Corporation, a Delaware corporation ("Delphi"), each a Party, and together Parties, to this Agreement.

## Background

KPMG and Delphi desire to establish a contract pursuant to which Delphi may, from time to time, obtain from KPMG, and KPMG may provide to Delphi, certain professional Services (as defined in Section 1(a)), all on the terms and subject to the conditions set forth in this Agreement and in the applicable statement of work ("SOW").

## Terms and Conditions

In consideration of the premises and of the mutual covenants and agreements contained herein, and intending to be legally bound, the Parties hereby agree as follows:

1.      Services.

(a)      This Agreement establishes the standard terms and conditions pursuant to which KPMG may provide to Delphi certain professional services (the "Services"), as may be performed or agreed upon from time to time in writing in an SOW. Notwithstanding anything herein to the contrary, the Services shall not include (i) the provision of expert testimony on behalf of Delphi (which would be subject to a separate engagement) or (ii) any service that would require KPMG to maintain independence from Delphi in accordance with then current applicable law, rule or regulation of any governmental entity or professional organization. Unless expressly set forth in a Statement of Work with respect to tax services, the Services do not include representing Delphi in the event of a challenge by the United States Internal Revenue Service (the "IRS") or other tax or revenue authorities. An executed SOW, attached and incorporated into a Delphi purchase order, may expressly identify and amend terms and conditions in this Agreement, or list special terms and conditions, effective for that SOW only. Unless modified by provisions contained in an SOW, the terms and conditions in this Agreement are incorporated into and made part of each SOW. To the extent of any express conflict or inconsistency between the terms and conditions of an SOW and the terms and conditions of this Agreement, the terms and conditions of the SOW will control.

(b)      An SOW shall contain the following, as applicable: (i) the term or period of time during which KPMG will perform the Services, provide resources or otherwise perform its obligations as specified in the SOW; (ii) a description of the obligations of, and Services to be performed by, KPMG; (iii) a description of Delphi's responsibilities related to the SOW,

1

including any facilities, equipment, personnel and tasks or other support to be provided or performed by Delphi; (iv) KPMG's fees and expenses under the SOW, or, if applicable, the basis on which such fees and expenses will be computed; (v) any provision limiting the liability of either Party other than, or in addition to, those provision set forth herein, and (vi) any other terms and conditions appropriate to the Services to be performed and the obligations of the Parties under that SOW. Forms of Statements of Work are attached hereto as Attachment A.

(c)    Subsequent to the completion of the Services under an SOW, KPMG will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Delphi separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2.    <u>Term.</u>

The term of this Agreement shall commence as of February 9, 2007, and shall continue until December 31, 2007, whereupon Delphi and KPMG may agree to extend the Agreement for successive one (1) year periods. Each SOW shall become effective as of the date of the commencement of the Services or, if earlier, the date of execution of such SOW. Each SOW executed by the Parties prior to the effective date of a termination (as provided for in Section 7) shall remain in full force and effect in accordance with its terms, including the terms and conditions of this Agreement until completion of the Services to be provided thereunder or termination of the applicable SOW. If KPMG commenced the performance of the Services prior to the execution of this Agreement, this Agreement shall be effective as of the commencement of such Services and shall cover such Services unless the performance of such Services are governed by an existing executed agreement. The Parties agree that any such existing executed agreements shall be converted to SOWs within ninety (90) days of the execution of this Agreement, unless the services under such existing executed agreements have been completed by such date.

3.    <u>Fees, Expenses and Taxes.</u>

(a)    In addition to professional fees outlined in the applicable SOW, KPMG will also bill Delphi for pre-approved reasonable and necessary out-of-pocket and travel expenses according to the guidelines set forth in Exhibit A: Delphi Travel and Expense Reimbursement Policy for Contractors; provided, however, that instead of submitting all expenses on Delphi expense vouchers, KPMG shall account for such expenses within KPMG's normal expense reimbursement system. An SOW may set forth certain expenses or an amount applicable to certain expenses or exceptions to the Delphi travel policy referred to above, which shall serve a Delphi's pre-approval for KPMG to incur such expenses. Delphi may elect to have KPMG book travel through Delphi. Delphi acknowledges that where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased and that if KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client and that KPMG instead applies such payments to reduce its overhead costs, which costs

2

are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(b)    Delphi shall pay for all taxes, other than withholding taxes and taxes based on or measured by KPMG's or KPMG's personnel's net income, including any interest and penalties from any related deficiency if due to an act by Delphi and not that of KPMG, in connection with this Agreement, including any sales, use, excise, value-added, services, consumption, and other taxes and duties assessed on the provision of Services by KPMG to Delphi or on KPMG's charges to Delphi under this Agreement including the reimbursement of expenses, so long as such taxes are listed in the applicable invoice  The parties shall cooperate in good faith to minimize such tax liabilities to the extent legally permissible.

4.    Invoices.

Unless otherwise provided in an SOW, KPMG will submit an invoice to Delphi at the end of every month for all hours of service provided to Delphi by KPMG, together with all expenses incurred by KPMG, during the preceding month period.  The invoices shall be in the form and contain all information required by the rules and procedures of the United States Bankruptcy Court for the Southern District of New York.  Each such invoice shall be due and payable pursuant to Delphi's Multilateral Netting System ("MNS-2"), which provides, on average, that payment shall be on the second day of the second month following the date of the invoice, recognizing that the rules and procedures of the United States Bankruptcy Court for the Southern District of New York will apply.  In no event shall Delphi pay KPMG interest or other late charges on any fees due under this Agreement.

5.    Client Responsibilities.

(a)    Delphi shall provide or arrange to provide KPMG with all information relevant to the Services and any reasonable assistance as may be required to properly perform the Services, including without limitation timely access to and use of Delphi's personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the Services. Unless otherwise indicated, Delphi represents and warrants to KPMG that all such information will be accurate and complete in all material respects, to the best of Delphi's knowledge.  Delphi acknowledges and agrees that KPMG may, in performing certain aspects of the Services, base its conclusions on the facts and assumptions that Delphi furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Delphi without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information.  Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material effect on KPMG's conclusions.  The overall definition and scope of the work to be performed, and the adequacy of such definition and scope in addressing Delphi's needs, is Delphi's responsibility.    Delphi shall perform all management functions and make all management decisions in connection with the Services, and shall assign competent individuals to oversee the Services.  Delphi is also responsible for the implementation of actions identified in the course of this engagement and results achieved from using any Services or Deliverables as defined in Section 6(a) below.

3

(b)     Each Party shall use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each Party recognizes that such procedures cannot be a guarantee that transmissions will be virus free.  It remains the responsibility of the Party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

(c)     Neither Party shall be responsible for any delay, cost increase or other consequences due to the other Party's failure to perform any of its obligations under this Agreement or an SOW or otherwise due to factors beyond its reasonable control.  Each Party will use commercially reasonable efforts to mitigate such costs or expenses.  Any deadline that is affected by the other party's default shall be extended by a reasonable amount of time provided that the non-defaulting party has provided timely communication to the defaulting party.

6.     Deliverables.

(a)     Ownership.  KPMG shall own any general skills, know-how, expertise, ideas, concepts, methods, techniques, processes, software, materials or other intellectual property or information which may have been discovered, created, developed or derived by KPMG either prior to or as a result of its provision of Services under this Agreement ("KPMG Materials"). Subject to the restrictions in this Agreement, Delphi will own all tangible written material originally prepared expressly for Delphi and delivered to Delphi under this Agreement (the "Deliverables"), excluding any KPMG Materials contained or embodied therein.  KPMG's working papers and KPMG's Confidential Information (as defined in Section 9(a)) belong exclusively to KPMG; provided, however, KPMG shall provide a copy of such working papers to Delphi after consultation and agreement with Delphi.  Delphi will have a non-exclusive, non-transferable license to use KPMG Materials for Delphi's own internal use and only for the purposes for which they are delivered to the extent that they form part of the Deliverables.

(b)     Use of Deliverables.  Except as otherwise expressly stated in the applicable SOW, all Deliverables are solely for Delphi's internal use and benefit.  Delphi shall not authorize any third party ("Third Party") to rely upon any of the Deliverables except as set forth in an SOW or, if not set forth in an SOW, without KPMG's prior written consent.  Except that Deliverables may be disclosed to (i) taxing authorities, (ii) an accounting firm providing attest services to Delphi (solely to the extent necessary for the performance of such attest services), and (iii) as set forth in this Section 9(b) or (iv) as set forth in an SOW; Delphi shall not distribute to, discuss with, or otherwise disclose the Deliverables to any Third Party without KPMG's prior written consent.  Oral or preliminary information, drafts or advice given by KPMG may not be relied upon or attributed to KPMG unless KPMG specifically confirms such information or advice or otherwise reduces such draft to a final writing.

7.     Termination.

(a) Either Party may terminate this Agreement or any SOW under this Agreement in the event of a material breach of this Agreement that is not cured within thirty (30) days after

4

receipt of written notice of such breach. Unless otherwise provided in the applicable SOW, Delphi may terminate this Agreement or any SOW for convenience at any time upon thirty (30) days prior written notice. KPMG may terminate any SOW for convenience at any time upon thirty (30) days notice to Delphi in the event of any change in law, rule, regulation or professional standards that would cause the continued provision of the services under such SOW by KPMG to violate such law, rule, regulation or professional standards or in the event of a sale by KPMG of the practice providing the services under such SOW if Delphi elects not to consent to an assignment to the party acquiring such practice from KPMG. In the event of Delphi termination for breach by KPMG, Delphi shall be responsible for fees earned and expenses incurred only up to the date of written notice to KPMG of the breach. In the event of other termination by Delphi or termination by KPMG for breach by Delphi, Delphi will be responsible for fees earned and expenses incurred through the actual date of termination. In the event of termination by mutual agreement, the Parties shall jointly determine the fees due or to be refunded.

(b) KPMG may also resign from performing all or any portion of the Services and terminating this Agreement and/or any SOW immediately upon written notice in the event that circumstances arise that would make continuation of all or any portion of the Services by KPMG in conflict with any independence or other professional regulations, standards or guidelines to which KPMG conforms. If Delphi is or becomes an SEC registrant audit client of KPMG and the Services performed and/or Deliverables provided under a particular SOW will be relied upon by the KPMG audit team, the limitation of liability and Delphi's obligation to indemnify under this Agreement will not apply to such Services and/or Deliverables.

8.   <u>Warranty.</u>

KPMG warrants that it has the requisite power and authority to enter into and perform its obligations under this Agreement and each SOW. KPMG further warrants that the Services will be performed by qualified personnel. KPMG warrants that it will provide its non-tax-related Services in a manner consistent with the terms and conditions of this Agreement and in accordance with the applicable Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA") as well as any applicable standards (as agreed to between the Parties) of the Public Company Accounting Oversight Board ("PCAOB"). KPMG warrants that it will provide its tax services in a manner consistent with the terms and conditions of this Agreement and in accordance with the AICPA Statements on Standards for Tax Services and any applicable standards (as agreed to between the Parties) of the PCAOB. THE WARRANTIES IN THIS SECTION 8 AS WELL AS ANY EXPRESS WARRANTY IN ANY APPLICABLE SOW (BUT ONLY IF EXPRESSLY IDENTIFIED AS A "WARRANTY" IN SUCH SOW) ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, OR WHETHER ARISING BY COURSE OF DEALING OR PERFORMANCE, CUSTOM, USAGE IN THE TRADE OR PROFESSION OR OTHERWISE, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

9.      Confidentiality.

(a)      All data relating specifically to a Party's business and any other information which reasonably should be understood to be confidential in nature are confidential information of such Party.  KPMG's proprietary software, tools, methodologies, techniques, ideas, discoveries, inventions, know-how and any other information which reasonably should be understood to be confidential to KPMG are confidential information of KPMG.  Delphi confidential information and KPMG confidential information are collectively referred to as "Confidential Information."  Each Party shall use Confidential Information of the other Party only in furtherance of the purposes of this Agreement and shall not disclose such Confidential Information to any third party without the other Party's prior written consent.  Each Party agrees to take reasonable measures to protect the confidentiality of the other Party's Confidential Information and to advise its employees of the confidential nature of the Confidential Information and of the confidentiality provisions and use prohibitions herein.

(b)      Notwithstanding any terms or conditions in this Agreement to the contrary, no conditions of confidentiality within the meaning of Internal Revenue Code §6111(d) or U.S. Treasury Regulations §1.6011-4 are intended, and Delphi (and each employee, representative, or other agent of Delphi) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction and all materials of any kind (including opinions or other tax analysis) that are provided to Delphi relating to such tax treatment and tax structure, subject to the limitations set forth in the following sentence.  In the event that a Deliverable includes discussion of such tax treatment or tax structure, disclosure of the Deliverable will be limited solely to the section or sections discussing the tax treatment or tax structure; all other information in the Deliverable unrelated to the tax treatment or tax structure remains subject to the restrictions set forth in Section 9(a) and all references to "KPMG" and all branding and other identifiers of KPMG shall be redacted from the tax treatment and tax structure portions of such Deliverable, and/or shall otherwise not be distributed to any other third party, except as may be expressly provided for in this Agreement.  This Section 9(b)) is effective as of the commencement of any discussions the Parties may have had regarding any transaction related to any Services.

(c)      Notwithstanding anything to the contrary contained in this Agreement, neither Party shall be obligated to treat as confidential any information disclosed by the other Party (the "Disclosing Party") which: (i) is rightfully known to the recipient prior to its disclosure by the Disclosing Party except that which was disclosed under a prior confidentiality agreement between the Parties; (ii) is released by the Disclosing Party to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by the recipient without any use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this Agreement or may be lawfully obtained by a Party from any nonparty.  Notwithstanding the foregoing, either Party may disclose Confidential Information of the other to a third party as may be required by law, statute, rule or regulation, including any subpoena or other similar form of process, or by the standards of the AICPA or other professional self-regulatory authority, provided that (and without breaching any legal or

6

regulatory requirement) the Party to which the request is made provides the other Party with prompt written notice thereof and, if practicable under the circumstances, allows the other Party to seek a restraining order or other appropriate relief. Subject to KPMG's confidentiality obligations in this Agreement, nothing herein shall preclude or limit KPMG from providing services similar to the Services to other KPMG clients.

(d)     The provisions of this Section 9 shall survive the termination or expiration of this Agreement.

10.   Indemnification.

(a)     Subject to the provisions hereof, each Party shall indemnify, defend and hold harmless the other from and against any and all amounts payable under any judgment, verdict, court order or settlement for death or bodily injury or the damage to or loss or destruction of any real or tangible personal property, but only to the extent the foregoing arise out of the indemnitor's gross negligence or intentional misconduct in the performance of this Agreement.

(b)     KPMG agrees to indemnify, defend and hold harmless Delphi from and against any and all amounts payable under any judgment, verdict, court order or settlement for Third Party claims of infringement or misappropriation of any trade secrets, copyrights, trademarks, trade names or other intellectual property rights alleged to have occurred and arising from the Deliverables. Should Delphi's use of such Deliverables be determined to have infringed, or if, in KPMG's judgment, such use is likely to be infringing, KPMG may, at its option: (i) procure for Delphi the right to continue using such Deliverables provided, or (ii) replace or modify them to make their use non-infringing while yielding substantially equivalent results. If neither of the above options are or would be available on a basis that KPMG finds commercially reasonable, then, KPMG may terminate this Agreement, Delphi shall return such Deliverables provided to KPMG and KPMG will refund to Delphi the fees paid for the Deliverables provided. This infringement indemnity does not cover claims to the extent arising from: (1) the combination of such Deliverables with products or services not provided by KPMG; (2) the modification of such Deliverables by any person, other than KPMG; (3) Deliverables complying with or based upon: (A) designs provided by or at the direction of Delphi or (B) specifications or other information provided by or at the direction of Delphi; or (4) use of systems, materials or work performed in a manner not permitted or contemplated hereunder or by another obligation of Delphi to KPMG.

11.   Limitation of Liability.

(a)     KPMG is the US member firm of the global network of KPMG International (exclusive of KPMG, the "KPMG Member Firms"). In the course of providing the Services and/or Deliverables hereunder, KPMG, may, in its discretion, draw on the resources of and subcontract to other KPMG Member Firms. Delphi agrees that KPMG may provide any information KPMG receives in connection with this engagement to other KPMG Member Firms for the purpose of providing the Services and/or for internal administrative and regulatory compliance purposes. The provision of Services and/or Deliverables will remain the

7

responsibility of KPMG.  Delphi agrees that in relation to the Services and this Agreement, its relationship is solely with KPMG.  Delphi further agrees that no KPMG Member Firms, nor the partners, principals or employees of KPMG or the KPMG Member Firms (together the "Beneficiaries"), who perform work in connection with the Services and/or Deliverables will have any liability to Delphi in connection with the Services or this Agreement.  Delphi therefore agrees to bring any claim under this Agreement against KPMG and not to bring a claim of any nature against any such KPMG Member Firm relating to the Services, Deliverables or this Agreement except where such a claim cannot be excluded by law.

(b)     The provisions of this Agreement and any SOWs relating to the Beneficiaries have been stipulated by KPMG expressly for their benefit.  Delphi agrees that each of the Beneficiaries shall have the right to rely on said provisions as if they were Parties to this Agreement.  Delphi likewise agrees on behalf of all of its business operations in which Delphi has a direct or indirect controlling interest and that are receiving Services or Benefits of Services under this Agreement ("Service Recipients"), that they are bound by these provisions as if they were Parties to this Agreement.  Without limiting any other indemnification provision set forth in this Agreement, Delphi agrees to indemnify and hold harmless KPMG and the Beneficiaries from and against any claim that is asserted by any Service Recipient other than Delphi arising out of or relating to the Services and/or Deliverables provided under this Agreement, and all liabilities, costs, damages and expenses imposed or incurred in connection therewith, including reasonable attorneys' fees.

(c)     Each SOW shall include a provision setting forth any applicable limitation of liability.  The parties acknowledge and agree that no SOW shall be valid unless it contains such a provision.  In addition, neither party will be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages.  Further, KPMG shall have no liability to Delphi arising from or relating to any third party hardware, software, information or materials supplied by Delphi

(d)     KPMG accepts no liability to third parties other than Service Recipients with respect to the Services and Deliverables.  Delphi agrees (without limiting any other indemnification provision set forth in this Agreement) to indemnify and hold KPMG and the Beneficiaries (as defined in Section 11(a)) harmless from and against any and all Third Party claims, suits and actions, and all associated damages, settlements, losses, liabilities, costs, and expenses, including without limitation reasonable attorneys fees, arising from or relating to the Services and/or Deliverables under this Agreement, except to the extent finally determined to have resulted from KPMG's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful or intentional misconduct relating to such Services and/or Deliverables.

12.     Changes; Additional Services.

KPMG will not be responsible for work that is beyond the scope of Services set forth in this Agreement or the applicable SOW.  Either Party may request changes to the Services.  Changes must be agreed between the Parties and may be subject to reasonable adjustments to fees and schedules.  Changes to an SOW that amount to the provision of additional Services,

8

rather than adjustments to the Services already agreed, must be in writing and signed by both Parties.

13.    Subcontracts.

KPMG may subcontract any of the Services hereunder, with written approval of Delphi, provided that KPMG shall be responsible for the fulfillment of its obligations hereunder. For purposes of this section, KPMG Member Firms outside of the US are not considered subcontractors. Notwithstanding anything to the contrary in this Agreement, KPMG may disclose Delphi's Confidential Information to such approved subcontractors involved in the provision of the Services.

14.    Engagement Limitations Applicable to All Services.

(a)    The Services do not include the provision of legal advice and KPMG makes no representations regarding questions of legal interpretation. Delphi should consult with its attorneys with respect to any legal matters or items that require legal interpretation, under federal, state or other type of law or regulation. Changes in the law and/or its interpretation may take place before KPMG's advice is acted upon, or may be retrospective in effect; KPMG accepts no responsibility for changes in the law or its interpretation which may occur after the provision of the Services. Without limiting the generality of the foregoing, Delphi acknowledges that tax laws and regulations are subject to change at any time, and such changes may be retroactive in effect and may be applicable to advice given or other Services rendered before their effective dates. KPMG does not assume responsibility (and will have no liability) for such changes occurring after the date it has completed its Services under a particular SOW.

(b)    KPMG will provide no opinion, attestation or other form of assurance with respect to its work or the information upon which its work is based. The procedures KPMG will be performing under this Agreement will not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. KPMG will not audit or otherwise verify the information supplied to it in connection with any engagement under this Agreement, from whatever source, except as may be specified in the applicable SOW.

(c)    KPMG has not been engaged to, nor will KPMG provide any management functions or make management decisions for Delphi under this Agreement. It is Delphi's responsibility to establish and maintain its internal controls. In addition, it is Delphi's responsibility to determine the procedures deemed necessary in connection with its compliance with the provisions of the Sarbanes-Oxley Act of 2002 (the "Act") and related SEC rules, to execute those procedures and to assess the results of its procedures and the adequacy thereof. KPMG provides no opinion or other form of assurance with respect to Delphi's compliance with the Act, related SEC rules, or Delphi's procedures. KPMG makes no representation as to the sufficiency of Delphi's procedures for its own purposes. The Services should not be taken to supplant inquiries and procedures that Delphi should undertake for purposes of obtaining and using the information necessary in connection with Delphi's compliance with the provisions of the Act and related SEC rules.

9

(d)     Except as otherwise set forth in the applicable SOW, Delphi acknowledges that completion of the Services under an SOW or acceptance of the Deliverables thereunder will not constitute a basis for Delphi's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The Services under an SOW shall not be construed to support Delphi's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(e)     KPMG may communicate with Delphi by electronic mail or otherwise transmit documents in electronic form during the course of providing Services under this Agreement. Delphi accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Delphi unless no such hardcopy is submitted by KPMG to Delphi.

(f)     Delphi acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide Services under an SOW may not be licensed as certified public accountants under the laws of any of the various states.

15.    General.

(a)     KPMG, in furnishing Services to Delphi, is acting only as an independent contractor and is not acting as a fiduciary of Delphi. KPMG does not undertake to perform any obligation of Delphi, whether regulatory or contractual, or to assume any responsibility for Delphi's business or operations. KPMG has the sole right and obligation to supervise, manage, contract, direct, procure, perform or cause to be performed all work to be performed by KPMG, except as otherwise provided in this Agreement or any SOW. KPMG accepts full and exclusive liability for the payment of all employer contributions and taxes measured by the remuneration paid to KPMG employees as required by all applicable United States federal, state and local laws, rules and regulations.

(b)     This Agreement may only be amended by written agreement signed by a duly authorized representative of each Party.

(c)     THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED, INTERPRETED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MICHIGAN, WITHOUT GIVING EFFECT TO THE PROVISIONS RELATING TO CONFLICT OF LAWS.

(d)     In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, Delphi and KPMG agree not to demand a trial by jury in any action,

10

proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

      (e)      Any controversy or claim with respect to, in connection with, arising out of, or in any way related to, this Agreement or the Services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Delphi or KPMG) shall be brought in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), or the District Court if such District Court withdraws the reference, and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. If the Bankruptcy Court, or the District Court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof agree that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Agreement will lie in the appropriate federal or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue. The foregoing is binding upon Delphi, KPMG and any and all successors and assigns thereof. Notwithstanding the agreement to such procedures, either party may seek injunctive relief to enforce its rights with respect to the use or protection of (i) its confidential or proprietary information or material, (ii) its names, trademarks, service marks or logos and (iii) the enforcement of the notice provisions set forth in this Agreement.

      (f)      No delay or omission by either Party in exercising any right or power shall impair such right or power or be construed to be a waiver. A waiver by either Party of any of the covenants to be performed by the other or any breach thereof shall not be construed to be a waiver of any succeeding breach or of any other covenant. No waiver or discharge shall be valid unless in writing and signed by an authorized representative of the Party against whom such waiver or discharge is sought to be enforced.

      (g)      This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their permitted successors and assigns, and, except as expressly provided herein, nothing in this Agreement shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement. Neither Party may, nor shall have the power to, assign or transfer this Agreement or any rights or obligations hereunder or claims arising hereunder, without the prior written consent of the other Party. Any attempt to assign or transfer this Agreement in violation of this subsection shall be void and of no force and effect.

      (h)      This Agreement and the applicable SOWs constitute the entire agreement between the Parties with respect to the Services and the rights and responsibilities of the Parties with respect to such applicable SOWs. Except as permitted by an SOW, neither Party shall publicize their relationship or the terms of this Agreement or any SOW or use the other Party's name or other trademarks or service marks in any advertisement or publication without the other Party's prior written approval except that KPMG may include Delphi's name on a client list; provided that such list does not specify the specific services provided by KPMG to Delphi.

11

(i)      The provisions of this Agreement, which expressly or by implication are intended to survive its termination or expiration, will survive and continue to bind both Parties.

(j)      If any provision of this Agreement is declared or found to be illegal, unenforceable or void, then both Parties shall be relieved of all obligations arising under such provision, but if the remainder of this Agreement shall not be affected by such declaration or finding and is capable of substantial performance, then each provision not so affected shall be enforced to the extent permitted by law.

(k)      Except as expressly provided herein, all remedies provided for in this Agreement shall be cumulative and in addition to and not in lieu of any other remedies available to either Party at law, in equity or otherwise.

(l)      Where agreement, approval, acceptance, consent or similar action by Delphi or KPMG is required, such action shall not be unreasonably delayed or withheld.

(m)      (1)      Headings in this Agreement are for convenience only.  The headings shall not be used in interpreting this Agreement or any provision of it.

(n)      Neither Party shall be liable to the other for any delay or failure to perform any of the Services or obligations set forth in this Agreement due to causes beyond its reasonable control.

(o)      The engagement limitations set forth on Addendum A are incorporated by reference herein.

(p)      All of KPMG's agents, employees, subcontractors and/or independent contractors furnished by KPMG to perform the Services (collectively, "Personnel") are and will remain KPMG's employees and/or independent contractors and, under no circumstances, will any Personnel furnished by KPMG be deemed to be Delphi's employees or agents.  KPMG is solely responsible, at KPMG's sole cost and expense, for (i) the fulfillment of all obligations to Personnel, and (ii) the compliance by KPMG and personnel with Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

9(BALANCE OF THIS PAGE INTENTIONALLY BLANK)

12

(q)    KPMG will assure that all Personnel who are performing Services on behalf of KPMG are competent to perform the Services.  KPMG will require all Personnel who are performing any work on Delphi's premises to comply with all of Delphi's reasonable instructions, regulations and policies that have been provided to KPMG in writing in a timely manner.  Delphi, in its sole discretion, has the right to: (i) bar any of Personnel from Delphi's premises for failure to observe Delphi's regulations or policies, (ii) require that KPMG promptly remove from Delphi's premises any Personnel who violate any of Delphi's regulations or policies, and (iii) require that KPMG cease using any Personnel to perform the Services who are reasonably unacceptable to Delphi.  Delphi will confer with KPMG to discuss Delphi's concerns prior to requiring removal of any Personnel.  KPMG will replace any barred or removed Personnel with Personnel reasonably acceptable to Delphi.


In witness whereof, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized representative as of the date first above written.


Delphi Corporation                              KPMG LLP

By:                                             By:
Name: John D. Sheehan                           Name: Gary Silberg
Title: VP + Chief Restructuring Officer         Title: Partner

13

**Exhibit A**

**Delphi Travel and Per Diem Expense Reimbursement Policy for
Contractors**

A.      If Contractor is required by Delphi to travel as an incidental requirement in performing
services for Delphi, then such travel and per diem expenses, subject to prior written approval of
Delphi, will be reimbursable as follows:

| | | |
|---|---|---|
| 1. | Air Travel | Economy/Coach class only.  Business class is permitted only upon prior written consent by Delphi. |
| 2. | Hotel | Contractor will exercise good, sound business judgment and discretion in choosing hotels, such as moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested. |
| 3. | Rental Cars | Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of Contractor. |
| 4. | Mileage Allowance | Reimbursement will be at the then current IRS rate (currently $0.44 per mile) for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, Contractor will not be reimbursed for excess miles, additional driving time, etc. |
| 5. | Expense Reports | If requested, Contractor will provide receipts for all reimbursable expenses, including meals and other expenditures, in excess of $25.00 or more. |
| 6. | Meals | Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by Contractor. |

14

7. Extended Travel    Contractor should review the home visit policy prior to a trip. Generally, the following provisions apply:

If the travel expense is less than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every week.

If the travel expense is more than the living expense in the temporary location, Contractor will be reimbursed for travel to the permanent location every two weeks.

Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval.

7. Miscellaneous    When Contractor chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs. Documentation to support the lesser cost must be attached to expense report. Travel time must also be limited if on working hours.

The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.

Contractor is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, Contractor will make all travel arrangements through Global Experts in Travel, using a special account set up for such purposes.

Any cash advance by Contractor to its employee is the responsibility of Contractor.

8. Per Diem    In certain instances, a per diem will be paid to Contractor in accordance with Delphi's standard per diem policy.

B.    All travel and per diem for which Contractor seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

15

## ADDENDUM A

1.      **Engagement Limitations Applicable to Tax Services.**

(a)      With regard to any tax Services provided pursuant to this Agreement, Delphi shall bring to KPMG's attention any matters that may reasonably be expected to require further consideration to determine the proper treatment of any relevant item and any changes in the information as originally presented as soon as such information becomes available.  KPMG is not responsible (and shall not be liable) for any penalties assessed against Delphi as a result of Delphi's failure to provide KPMG with all the relevant information relative to the issue under consultation and Delphi agrees to reimburse KPMG for any penalties imposed on KPMG, its partners or staff, as the result of Delphi's failure to provide such information.

(b)      Some of the tax matters on which KPMG may be asked to advise Delphi may have implications to other persons or entities.  However, KPMG shall have no responsibility or liability to these persons or entities unless KPMG specifically is engaged to address these issues to such persons or entities, and KPMG expressly agrees to do so in an SOW.

(c)      Tax jurisdictions may impose penalties for certain failures.  Relative to the Services provided under the terms of this Agreement, KPMG will discuss with Delphi any tax positions of which KPMG is aware that KPMG believes may subject Delphi to penalties.  KPMG will also discuss with Delphi possible courses of action related to the Delphi's tax return, where applicable, to avoid the imposition of any penalty (e.g., disclosure).  KPMG will use its judgment in resolving questions where the tax law may be unclear, or where there are conflicts between taxing authorities' interpretations of the law and other supportable positions, and discuss them with Delphi.  KPMG is not responsible for any penalties imposed for positions that have been discussed with Delphi where KPMG recommended a course of action to avoid penalties and Delphi elected not to pursue such course.

(d)      US Treasury Regulation §1.6011-4 requires that taxpayers disclose to the IRS their participation in certain "reportable transactions."  Delphi shall advise KPMG if it determines that any matter covered by this Agreement is a reportable transaction that is required to be disclosed under §1.6011-4.  Similar Treasury regulations issued under Internal Revenue Code §6112 require that KPMG maintain lists of certain client engagements where it is a material advisor to clients that have participated in either a reportable transaction or a transaction that is required to be registered with the IRS as a tax shelter.  If KPMG determines, after consultation with Delphi, that Delphi has participated in either a reportable transaction or one required to be registered under Internal Revenue Code §6111, KPMG will place Delphi's name and other required information on a list and will so advise Delphi.  Sometime in the future the IRS may request KPMG's lists of reportable or §6011 transactions, and KPMG may be compelled to provide the IRS with the contents of its lists, including Delphi's name.  KPMG will advise Delphi if it is ultimately required to provide Delphi's name to the IRS in connection with any matter covered by this Agreement.

16

**2.    Engagement Limitations Applicable to Transaction Services/Due Diligence Services.**

(a)    Where KPMG's work expressly includes consideration of prospective financial information, KPMG will comment on the bases and assumptions underlying the prospective financial information adopted as the case may be by Delphi or by the management of the company who is the subject of a due diligence investigation (the "Target Company"), but KPMG's work will not constitute an examination, compilation or agreed-upon procedures in accordance with standards established by the AICPA, and KPMG will not express any opinion or provide any assurance (in the sense in which "opinion" and "assurance" are used in the AICPA standards).  Where KPMG comments on bases and assumptions underlying the prospective financial information, KPMG reports may include tables aggregating quantified vulnerabilities and sensitivities in order to illustrate effects of possible alternative assumptions.  Those tables should not be regarded as a restatement of the Target's and/or management's prospective financial information, or preparation of revised prospective financial information; they are provided as a means of summarizing KPMG comments to assist Delphi in considering Delphi's implications for the transaction.  It is Delphi's responsibility to consider KPMG comments and make Delphi's own decision based on the information available to the Delphi.  Delphi must make its own decision about likely future profitability and the cash flows likely to be generated by the Target and Delphi understands that, with regard to illustrations of sensitivities that may be included in our Deliverables, there may be other, equally valid ways of assessing the sensitivities and possible outcomes.  Delphi understands that our Deliverables are not prepared for the purposes of managing the Target's business and because events and circumstances frequently do not occur as expected, there will usually be differences between predicted and actual results, and those differences may be material.  KPMG LLP is not responsible for developing the underlying assumptions of the prospective financial information and we take no responsibility and accept no liability for the achievement of predicted results.

(b)    Except to the extent expressly agreed to the contrary in writing, where KPMG comments on use of Internet technologies in key business processes, KPMG does so as business advisors rather than as information technology specialists.

(c)    Where the work expressly includes consideration of potential operational improvements, KPMG will comment on the Delphi and/or Target Company's view of such improvements.  KPMG's comments will be provided solely in the light of our business experience of operational matters but will not be based on direct experience of Delphi's operations or the Target Company's operations, specific industry or commercial sector.  KPMG's comments may not represent the optimal operational solution and there may be other, equally valid, views.  Further, the results which can be achieved will depend upon the detailed circumstances at the time and on the way in which planned operational improvements are implemented.  KPMG takes no responsibility for the achievement of potential operational improvements.

(d)    KPMG assumes no responsibility and makes no representations with respect to the accuracy or completeness of information provided by any Target Company.  KPMG will not provide assurance that matters of significance to the financial information or to Delphi's due diligence investigation will be disclosed.  We have not been engaged to,

17

nor will we provide any management functions or make management decisions for Delphi. Further, KPMG's work is not designed to and is not likely to reveal fraud or misrepresentation by the management of a Target Company.

(e)    Advice and comments that KPMG may provide in the course of a due diligence engagement regarding the accounting and tax treatment of a proposed transaction should not be viewed as a formal accounting or tax opinion of KPMG. If such opinions are desired and KPMG determines that such an opinion can be issued, the terms of an engagement to provide such an opinion will be subject to a separate SOW.

(f)    Delphi acknowledges that KPMG may be asked to provide services to other Clients who may be in competition with Delphi or whose interests may conflict with Delphi's interests, or regarding the possible purchase or sale of a Target Company that may be in competition with Delphi or whose interests may conflict with Delphi's interests. Except as otherwise set forth in individual SOWs, KPMG will not be prevented or restricted by virtue of its relationship with Delphi under this Contract from providing services to other clients. Except as required by law or professional regulations, KPMG will maintain the information obtained during the course of each engagement it performs for Delphi confidentially in accordance with Section 9 of the Agreement.

3.    **Circular 230: Limitations.**

(a)    For Tax Services:

i.    *Other Written Advice.*    It is anticipated that the written advice KPMG provides during the course of this engagement will be Other Written Advice as defined by Treasury Circular 230. Accordingly, unless otherwise prohibited or KPMG agrees to issue a Covered Opinion as defined by Circular 230, KPMG written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. KPMG advice will contain any other disclosures required by Circular 230.

ii.    *Covered Opinion.*    If expressly set forth in the applicable Statement of Work, or in the deliverable itself, KPMG's final written deliverable will be a Covered Opinion as defined by Circular 230. All other written advice provided prior to KPMG's final deliverable may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed on the taxpayer. In the event Delphi does not proceed with the transaction that is the subject of KPMG's advice or proceeds with the transaction but choose not to receive a final deliverable from KPMG, Delphi may not rely on any of the advice provided by KPMG for the purpose of avoiding any penalties that the IRS may impose. To the extent Delphi is entitled to rely on KPMG's written advice for purposes of penalty protection, Delphi understands that such reliance will be limited to the issues expressly addressed, therein.    KPMG's final deliverable may contain certain disclosures required by Circular 230.

18

(b)    For Transaction Services/Due Diligence:

The Tax advice provided in KPMG reports or other forms of written communication relative to KPMG's due diligence work may be considered written tax advice subject to the rules of Treasury Circular 230. Accordingly, unless otherwise prohibited or agreed to with Delphi in advance to the contrary, such tax advice in any written form will constitute "Other Written Advice" as defined by Circular 230. Accordingly, tax information and/or advice provided in the report or other forms of written communication is not intended or written to be used, and it cannot be used, for the purpose of avoiding penalties that may be imposed on the taxpayer. In accordance with these regulations, KPMG's written communications will include a disclosure to this effect. Further, KPMG reports or other forms of written communication relating to the provision of due diligence services will not be written to support the promotion or marketing of this or any transaction or matters addressed in the report or other forms of written communication and should not be considered a Marketed Opinion under Circular 230.

**4.    Engagement Limitations Applicable to Dispute Analysis/Expert Witness Services.**

(a)    Delphi acknowledges that KPMG is a large firm who is engaged by new Clients every day throughout the United States. KPMG will undertake a reasonable review of its records to determine its professional relationships with any persons or entities Delphi identifies in connection with any dispute analysis and related expert witness engagement that KPMG undertakes for Delphi. KPMG will advise Delphi of any conflicts of interest of which KPMG becomes aware that would preclude KPMG from performing such work.

(b)    KPMG may be engaged by parties adverse to Delphi to perform dispute analysis/expert witness services in litigation matters that are unrelated to any dispute analysis/expert witness services that KPMG may perform for Delphi under this Agreement. Delphi agrees not to use the fact of any current or previous KPMG engagement for expert witness services by opposing parties in other matters as a means of enhancing or diminishing KPMG's credibility in conjunction with any appearance before a trier of fact.

19

**ATTACHMENT A SAMPLE FORM**

**Statement of Work ("SOW")**
**Between Delphi Corporation and KPMG LLP**


**Project Name:**

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated November [XX], 2007 between Delphi Corporation ("Delphi") and KPMG LLP, ("KPMG") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

**I.    PURPOSE AND SCOPE OF THIS SOW:**

This SOW covers[describe project generally_____].
This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project/effort.

**II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW**

   **2.1    Services to be provided by KPMG:**

   2.2    **Deliverables:**

   **2.3    Delphi's Responsibilities:**

   **2.4    Timing**

The timing of the services to be provided hereunder is as follows:

| | |
|---|---|
| Project Start Date: | |
| Estimated Project Completion Date: | |

20

### III.    RESOURCES ASSIGNED TO THIS SOW

The KPMG personnel assigned to provide services and deliverables under this SOW are as follows:

### IV.    PAYMENT; EXPENSES; AND INVOICES

#### 4.1    Payment Terms

#### 4.2    Professional Fees and Expenses [list any taxes applicable]

### V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1    Limitation of Liability:** Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of KPMG, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than [_____( _ _ ) times] the total amount of fees paid to KPMG for the Services provided under this SOW. Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Delphi or in connection with Delphi's violation of its obligations under Section 6(b) of the Agreement, Delphi's liability to pay damages for any losses incurred by KPMG as a result of breach of contract, negligence or other tort committed by Delphi, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the services provided under this SOW.

**5.2    [Insert terms specific to Project -** *[consult sample SOWs for practice group]]*

**5.3    For engagements that will take over a year:** Because adverse income tax consequences may result from assignment of personnel at project sites for an engagement for a year or more, such personnel may annually be required by KPMG to break from providing services to Delphi. KPMG will monitor its staff on the long-term expense reimbursement policy and will inform Delphi prior to such break. If Delphi does not want to release personnel from performing Services for the aforementioned period, Delphi shall pay to KPMG the amount of compensation provided by KPMG to its personnel to cover the tax consequences thereof.

**5.4** If applicable: Delphi shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Delphi shall perform the tasks and provide the assistance described in this SOW. Delphi shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Subject to such rules and regulations that Delphi reasonably imposes, Delphi will consent to the

21

use, by staff visiting or working from the Delphi site, of Delphi's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.   Delphi agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF,** the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| KPMG LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| | | | |
| **DELPHI CORPORATION** | | | |
| Signature | Printed Name | Title | Date |
| | | | |
| Signature | Printed Name | Title | Date |
| | | | |

22

EXHIBIT B

**Statement of Work ("SOW")**
**Between Delphi Corporation and KPMG LLP**

**Project Name:  Global Mobility Advisory Services**

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated as of February 9, 2007 between Delphi Corporation ("Delphi") and KPMG LLP ("KPMG") and is fully incorporated therein.  All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

# I.    PURPOSE AND SCOPE OF THIS SOW:

This SOW covers international assignment administration and consulting services related to Delphi's international assignees.  This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project and effort.

# II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by KPMG:
- Pre-Assignment Services
  - Prepare cost projection including revisions;
  - Prepare draft international assignment agreement;
  - Prepare draft pay calculation;
  - Finalize International Assignment Agreement and pay calculation and participate in consultation session;
  - Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;
  - Calculate first year spending account to be paid in first month of assignment and provide to payroll; and,
  - Obtain Social Security Certificates of Coverage.

- During Assignment Services
  - Calculate annual spending account on assignment anniversary date and provide to payroll;
  - Answer international assignee's policy –related inquiries including policy interpretation based on Delphi-provided assumptions;
  - Serve as focal point for international assignee's general questions and issues;
  - Prepare periodic adjustments to compensation items according to Delphi's policy and/or changes to international assignee's pay or family status;

1

- Prepare payroll changes per pay period and forward to Delphi for approval and processing;
- Prepare annual year-end compensation summaries;
- Monitor data provider subscriptions and invoices, as needed;
- Track key dates and notify International assignees and/or management of required actions;
- Track tax equalization settlements, forward to Delphi for approval and processing; and,
- Conduct annual customer satisfaction survey and report results to Delphi.

- Repatriation Services
  - Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

- Other Services
  - Other services requested by Delphi related to international assignments.

## 2.2    Deliverables:

Completed documents as indicated in Section 2.1.

## 2.3    Delphi's Responsibilities:

- Notify KPMG of new international assignees;
- Arrange for provision of data to be delivered to KPMG on a timely basis;
- Additional responsibilities to be determined by Delphi ISG.

## 2.4    Timing

The timing of the services to be provided hereunder is as follows:

| Parallel Testing Start Date: | May 1, 2007 |
|---|---|
| Go Live Start Date: | July 1, 2007 |
| Estimated Project Completion Date: | December 31, 2009 |

2

## III.    RESOURCES ASSIGNED TO THIS SOW

The KPMG personnel initially assigned to provide services and deliverables under this SOW are as follows:

| | |
|---|---|
| Goddard, Ann Marie: | Global Engagement Partner |
| Yong, Doyoung: | Global Engagement Senior Manager |
| Meyer, Therese: | Transition Senior Manager |
| Murray, Jennifer: | Senior Associate |
| Woods, Tonya: | Associate |
| Petrov, Petar: | Associate |
| Burton, Safaya: | Team Coordinator |
| KPMG IES Technology | |

## IV.    PAYMENT; EXPENSES; AND INVOICES

**4.1    Payment Terms:** Half of the total projected annual fee will be billed in advance on May 1 and October 1 of each year. Payment is due upon receipt of the invoice. Billing and payment procedures are subject to the terms of the Agreement to the extent applicable.

**4.2    Professional Fees and Expenses**

| | |
|---|---|
| Annual Fee for International Assignees Assigned from the U.S. ($250 per month) | $3,000 |
| Annual Fee for International Assignees Assigned to the U.S. ($110 per month) | $1,320 |
| Annual Fee for International Assignees Assigned to and from Non-U.S. Countries ($70 per month) | $840 |
| Preparation of Cost Estimates, International Assignment Agreement, and Pay Calculation and for cancelled assignments | $850 |

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1    Limitation of Liability:** Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of KPMG, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than two times the total amount of fees paid to KPMG for the Services provided under this SOW. Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Delphi or in connection with Delphi's violation of its obligations under Section 6(b) of the Agreement, Delphi's liability to pay damages for any

3

losses incurred by KPMG as a result of breach of contract, negligence or other tort committed by Delphi, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the services provided under this SOW.

**5.2**    **Not Applicable**

**5.3**    **For engagements that will take over a year:** Because adverse income tax consequences may result from assignment of personnel at project sites for an engagement for a year or more, such personnel may annually be required by KPMG to break from providing services to Delphi. KPMG will monitor its staff on the long-term expense reimbursement policy and will inform Delphi prior to such break. If Delphi does not want to release personnel from performing Services for the aforementioned period, Delphi shall pay to KPMG the amount of compensation provided by KPMG to its personnel to cover the tax consequences thereof.

(Balance of this page is intentionally blank)

4

5.4 **If applicable:** Delphi shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Delphi shall perform the tasks and provide the assistance described in this SOW. Delphi shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides. Delphi consents to the use, by staff visiting or working from the Delphi site, of the Delphi's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Delphi agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF,** the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| KPMG LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| *[signature: Ann Marie Goddard]* | Ann Marie Goddard | Midwest Lead Partner, International Executive Services | Date |
| **DELPHI CORPORATION** | | | |
| Authorized Signature *[signature: Kevin Smith]* | Printed Name  Kevin Smith | Title  Director, GSM | Date  26th Feb '07 |
| Authorized Signature | Printed Name | Title | Date |

EXHIBIT C

**Statement of Work ("SOW")**
**Between Delphi Corporation and KPMG LLP**

**Project Name:  Tax Consulting Services**

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated as of February 9, 2007 between Delphi Corporation ("Delphi") and KPMG LLP, ("KPMG") and is fully incorporated therein.  All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

**I.     PURPOSE AND SCOPE OF THIS SOW:**

This SOW covers tax consulting services. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project/effort.

**II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW**

**2.1    Services to be provided by KPMG:**

We will provide tax consulting services with respect to such matters as may arise for which you seek our advice and consultation.  However, we will not render any advice with respect to a "listed transaction" or any transaction that is substantially similar to a "listed transaction" within the meaning of Treasury Regulation §1.6011-4.  KPMG will not defend any transaction that is or becomes a transaction designated by the IRS as a "listed transaction".

We do not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 ("Covered Opinion").  However, if our services will rise to the level of a Covered Opinion, we will issue a separate SOW for the issuance of a Covered Opinion.

**Tax Advice Standards**

If KPMG is considered a tax return preparer under Treasury Regulation §301.7701-15 or routine assistance in connection with examinations by the taxing authorities is being provided, we will apply elevated standards.  Under these standards, we must be able to determine that any return position on which we advise has a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by the IRS) if the position does not involve a transaction designated by the IRS as a "listed transaction" or a transaction with the principal purpose of avoiding or evading any tax imposed by the Internal

1

Revenue Code (a "principal purpose transaction"). If the advice relates to a "principal purpose transaction", we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the IRS) with respect to the position. In determining whether a position satisfies the "realistic possibility" and "should" standards, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

## Coordination with KPMG International Member Firms

Our services covered by this engagement letter may also necessitate the assistance of a member firm of KPMG International. To the extent that our services under this engagement letter require such assistance, the services will be provided under the direction of KPMG LLP, the U.S. member firm of KPMG International, and will include the participation of one or more other member firms of KPMG International ("KPMG member firms"). KPMG LLP is a separate legal entity from other member firms of KPMG International. Advice relative to tax matters outside the United States will be based on tax advice provided by the KPMG member firm in the particular country and on the relevant tax authorities in that country. In rendering such advice, we may also consider U.S. tax treaties, their technical explanations, and judicial and administrative interpretations thereof.

In certain countries, a KPMG member firm is authorized to provide legal services within its jurisdiction. This engagement letter encompasses only tax services provided by KPMG member firms and does not encompass any legal services a KPMG member firm may be authorized to provide. Should the provision of such legal services not be proscribed by applicable independence rules and should you choose to retain a KPMG member firm to provide legal services, including drafting of documents, in a particular country, you and the KPMG member firm will enter into a separate fee arrangement and engagement letter for the provision of such legal services.

## III.    RESOURCES ASSIGNED TO THIS SOW

The KPMG personnel assigned to provide services and deliverables under this SOW will be mutually agreed by Delphi and KPMG when such services are requested by Delphi, on a service-by-service basis.

## IV.    PAYMENT; EXPENSES; AND INVOICES

### 4.1    Payment Terms

KPMG will invoice Delphi on a monthly basis.

2

### 4.2    Professional Fees and Expenses

Our fees for tax consulting services will be based on the actual time incurred to complete the project at the following hourly rates, plus out-of-pocket expenses.

| | |
|---|---|
| Partner | $480 |
| Senior Manager | $395 |
| Manager | $315 |
| Senior Associate | $225 |
| Associate | $150 |

Fees for KPMG International Member Firm will be billed at 60% of their standard hourly rates.

We estimate that the fees under this SOW will be $50,000 to $75,000.

## V.    OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1    Limitation of Liability:** Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of KPMG, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than five times the total amount of fees paid to KPMG for the Services provided under this SOW. Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Delphi or in connection with Delphi's violation of its obligations under Section 6(b) of the Agreement, Delphi's liability to pay damages for any losses incurred by KPMG as a result of breach of contract, negligence or other tort committed by Delphi, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the services provided under this SOW.

**5.2    Not Applicable**

**5.3    Not Applicable**

**5.4** If applicable: Delphi shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Delphi shall perform the tasks and provide the assistance described in this SOW. Delphi shall ensure that it has appropriate back up, security and virus-checking

3

procedures for any computer facilities, information or materials it provides.  Delphi consents to the use, by staff visiting or working from the Delphi site, of the Delphi's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.  Delphi agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF**, the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| KPMG LLP | | | |
|---|---|---|---|
| Signature | Printed Name<br>Duncan Forsythe | Title<br>Partner | Date<br>23 February 2007 |
| Signature | Printed Name | Title | Date |

| DELPHI CORPORATION | | | |
|---|---|---|---|
| Authorized Signature | Printed Name<br>James P. Whitson | Title<br>Chief Tax Officer | Date<br>23 February 2007 |
| Authorized Signature | Printed Name<br>Kevin Smith | Title<br>Director, GSM | Date<br>26th Feb 07 |

4

EXHIBIT D

**Statement of Work ("SOW")**
**Between Delphi Corporation and KPMG LLP**

**Project Name:  International Assignment Services**

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated as of February 9, 2007 between Delphi Corporation ("Delphi") and KPMG LLP ("KPMG") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    PURPOSE AND SCOPE OF THIS SOW:

This SOW covers international assignment tax preparation and consulting services related to Delphi's international assignees, employees at the Mexico Border, and J-1 visa trainees. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project and effort.

## II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by KPMG:
- Expatriates Assigned from the U.S. and Expatriates Assigned to the U.S.
  - Collect tax data;
  - Calculate annual hypothetical tax withholding;
  - Prepare required home and host country individual income tax returns during, and one year after assignment;
  - Prepare requests for extension of time to file tax returns(s), where required;
  - Prepare U.S. estimated tax vouchers, if required;
  - Prepare year-end U.S. withholding calculations, where applicable;
  - Prepare tax equalization calculations;
  - Determine and arrange for timely payment of local taxes in the host country, where applicable;
  - Conduct pre-departure and/or post-arrival consultation sessions; and,
  - Handle routine correspondence with the IRS and foreign tax authorities, including review of assessments.

1

- Expatriates Assigned to and from non-U.S. Countries
  - Collect tax data;
  - Calculate annual hypothetical tax withholding;
  - Prepare required home and host country individual income tax returns during, and one year after assignment;
  - Prepare requests for extension of time to file tax returns(s), where required;
  - Determine and arrange for timely payment of local taxes in the host country, where applicable;
  - Prepare tax equalization calculations;
  - Conduct pre-departure and/or post-arrival consultation sessions; and,
  - Handle routine correspondence with foreign tax authorities, including review of assessments.

- Employees Assigned to the Mexican Border
  - Collect tax data;
  - Prepare U.S. income tax return(s);
  - Prepare requests for extension of time to file tax returns(s), where required;
  - Prepare tax equalization calculations;
  - Prepare monthly non-resident Mexican tax calculations;
  - Conduct post-arrival consultation session; and,
  - Handle routine correspondence with the IRS.

- J-1 Visa Trainees
  - Collect tax data;
  - Prepare U.S. income tax return(s);
  - Prepare requests for extension of time to file tax returns(s), where required;
  - Conduct post-arrival consultation session; and,
  - Handle routine correspondence with the IRS.

- Cost Estimates
  - Prepare cost projection including revisions;
  - Prepare draft international assignment agreement;
  - Prepare draft pay calculation;
  - Finalize international assignment agreement and pay calculation and participate in consultation session;
  - Calculate Relocation Allowance and Mobility Premium to be paid in month prior to assignment and provide to payroll;
  - Calculate first year spending account to be paid in first month of assignment and provide to payroll;
  - Calculate annual spending account on assignment anniversary date and provide to payroll; and,
  - Calculate Relocation Allowance less outstanding tax and pro-rata spending account due from employee.

2

- Global Coordination
  - Centralized hypothetical tax calculation process;
  - Tax planning review;
  - On-going benchmarking of Delphi's current tax equalization policy;
  - Dedicated website for Delphi;
  - Dedicated website for Delphi employees;
  - Unlimited access to all KPMG publications;
  - Status reports and client service reports; and,
  - KPMG International Executive Services Flash Alert Newsletters.

- Other Services
  - Other services requested by Delphi related to international assignments.

## 2.2   Deliverables:

Completed documents as indicated in Section 2.1.

## 2.3   Delphi's Responsibilities:

- Arrange for provision of data to be delivered to KPMG on a timely basis;
- Review and timely approve annual authorization list;
- Follow-up with international assignees with outstanding organizers on August 15th of each applicable year;
- Arrange for timely tax payments to authorities through the AFC process;
- Provide monthly cash receipt report for tax equalization payments and tax refunds;

## 2.4   Timing

The timing of the services to be provided hereunder is as follows:

| Project Start Date: | January 31, 2007 |
|---|---|
| Estimated Project Completion Date: | December 31, 2009 |

3

## III.   RESOURCES ASSIGNED TO THIS SOW

The KPMG personnel initially assigned to provide services and deliverables under this SOW are as follows:

| | |
|---|---|
| Goddard, Ann Marie: | Global Engagement Partner |
| Yong, Doyoung: | Global Engagement Senior Manager |
| Froylan, Sandra: | Manager |
| Murray, Jennifer: | Senior Associate |
| Beaudry, Dave: | Senior Associate |
| Parikh, Nihar: | Associate |
| Bogdanets, Alex: | Associate |
| Petrov, Petar: | Associate |
| Burton, Safaya: | Team Coordinator |
| KPMG Member Firms | |

## IV.   PAYMENT; EXPENSES; AND INVOICES

**4.1    Payment Terms:** Half of the total projected annual fee will be billed in January. The remainder will be billed upon completion of tax returns or completion of project. Non-U.S. tax return fees and services will be billed directly to the Delphi local entities as applicable by country. Payment is due upon receipt of the invoice. Billing and payment procedures are subject to the terms of the Agreement to the extent applicable.

**4.2    Professional Fees and Expenses**

| | |
|---|---|
| Expatriates Assigned to the U.S. | $1,750 |
| Expatriates Assigned from the U.S. | $2,700 |
| Expatriates Assigned to and from Non-U.S. Countries | $2,100 |
| Employees Assigned to the Mexican Border | $750 |
| J-1 Visa Trainees | $375 |
| Preparation of monthly Mexican non-resident tax withholding calculation for Employees Assigned to the Mexico Border | $40 |
| Preparation of Amended U.S. tax returns for Expatriates Assigned to the U.S. and Expatriates Assigned from the U.S. | $800 |
| Preparation of Amended U.S. tax returns for Employees Assigned to the Mexico Border | $375 |
| Preparation of Cost Estimates, Expatriate Agreement, Pay Calc and update of annual Spending Account at onset of assignment | $850 |
| Preparation of compilation of payments at host information | $375 |

4

V.  **OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW**

5.1  **Limitation of Liability:** Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of KPMG, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than two times the total amount of fees paid to KPMG for the Services provided under this SOW.  Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Delphi or in connection with Delphi's violation of its obligations under Section 6(b) of the Agreement, Delphi's liability to pay damages for any losses incurred by KPMG as a result of breach of contract, negligence or other tort committed by Delphi, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the services provided under this SOW.

5.2  **Not Applicable**

5.3  **For engagements that will take over a year:** Because adverse income tax consequences may result from assignment of personnel at project sites for an engagement for a year or more, such personnel may annually be required by KPMG to break from providing services to Delphi.  KPMG will monitor its staff on the long-term expense reimbursement policy and will inform Delphi prior to such break.  If Delphi does not want to release personnel from performing Services for the aforementioned period, Delphi shall pay to KPMG the amount of compensation provided by KPMG to its personnel to cover the tax consequences thereof.

(Balance of this page is intentionally blank)

5

**5.4**     **If applicable:** Delphi shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services.  Delphi shall perform the tasks and provide the assistance described in this SOW.  Delphi shall ensure that it has appropriate back up, security and virus-checking procedures for any computer facilities, information or materials it provides.  Delphi consents to the use, by staff visiting or working from the Delphi site, of the Delphi's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources.  Delphi agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the Parties and set forth herein.

**IN WITNESS WHEREOF,** the Parties to the above referenced Agreement have caused this SOW to be executed by their authorized representatives.

| KPMG LLP | | | |
|---|---|---|---|
| Signature | Printed Name | Title | Date |
| | Ann Marie Goddard | Midwest Lead Partner, International Executive Services | Date |
| **DELPHI CORPORATION** | | | |
| Authorized Signature | Printed Name | Title | Date |
| *Kevin Smith* | Kevin Smith | Director, GSM | 26th Feb '07 |
| Authorized Signature | Printed Name | Title | Date |
| | | | |

6

EXHIBIT E



KPMG LLP
303 East Wacker Drive
Chicago, IL 60601

Telephone 312 665 1000
Fax        312 665 6038
Internet    www.us.kpmg.com

### Statement of Work ("SOW") - Number ___
### Between Delphi Corporation and KPMG LLP

**Project Name:** Fresh Start Services
Project Date: February 9, 2007

This SOW is governed under the Master Professional Services Agreement (the "Agreement") dated February 9, 2007 between Delphi Corporation ("Delphi") and KPMG LLP, ("KPMG") and is fully incorporated therein. All terms used in this SOW and not otherwise defined will have the same meaning as in the Agreement.

## I.    PURPOSE AND SCOPE OF THIS SOW:

This SOW covers the provision of advisory services to Delphi, including: accounting and tax, valuation, systems, and project management services for the period beginning February 9, 2007. This SOW confirms the understanding of the objectives, deliverables, timing, staffing and fees for this project/effort. This SOW covers work for addressing various valuation, accounting, financial reporting and tax needs arising from your anticipated adoption of a confirmed plan of reorganization and emergence from Chapter 11.

## II.    PARTIES' RESPONSIBILITIES UNDER THIS SOW

### 2.1    Services to be provided by KPMG:

In connection with Delphi's emergence from Chapter 11, it will apply fresh start accounting in accordance with AICPA Statement of Position 90-7, *Financial Reporting by Entities in Reorganization Under the Bankruptcy Code* ("SOP 90-7").

At Delphi's request, KPMG will provide advisory services related to Delphi's fresh start accounting under the day-to-day direction of Brian Murray, Director of Fresh Start Accounting, including accounting and tax, valuation, systems, and project management services ("Fresh Start Services"). Delphi agrees to identify those individuals authorized to request Services from KPMG under the terms of this SOW. Individuals authorized to request Services agree to identify the purpose of the Services, and identify for whom the Services are to be performed at the time the Services are requested.

Our work will be based primarily on information supplied by management of Delphi and will be carried out on the basis that such information is accurate and complete. Delphi is responsible for and should consult with its external auditor on matters of how existing



accounting principles have been applied, and the effect, if any, on any financial information resulting from our services.

We will assume no responsibility and make no representations with respect to the accuracy or completeness of information provided to us by management of Delphi or any other person. Moreover, our work cannot provide assurance that matters of significance to you will be disclosed. We have not been engaged to, nor will we, provide any management functions or make management decisions for Delphi. Further, our work is not designed to and is not likely to reveal fraud or misrepresentation by the management of Delphi or any other person.

We do not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 ("Covered Opinion"). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter for the issuance of a Covered Opinion.

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. Under these standards, we must be able to determine that any return position on which we advise has a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by the IRS) if the position does not involve a transaction designated by the IRS as a "listed transaction" or a transaction with the principal purpose of avoiding or evading any tax imposed by the Internal Revenue Code (a "principal purpose transaction"). If the advice relates to a "principal purpose transaction", we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the IRS) with respect to the position. In determining whether a position satisfies the "realistic possibility" and "should" standards, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

A detailed description of our scope of services by area is included as follows:

(2)



## Scope of Our Services: Accounting and Tax

We will assist management with planning an approach, consideration of alternatives, research, analysis, implementation assistance and assistance with preparing documentation related to your accounting and reporting the emergence from Bankruptcy and adopting Fresh Start reporting. In providing this assistance, we will provide assistance and support to management in its consideration or evaluation of the following:

- *Fresh Start Approach and Work Steps:* Consideration of the alternatives in approach, timing, order, and adoption dates for Fresh Start Reporting, the alternatives for on-going efficient processing of detailed accounting records, and the potential approaches for updating detailed records to reflect changes in values and the new accounting requirements following emergence;

- *Change in ownership.* Evaluation of whether the conditions in SOP 90-7 are met to justify adoption of a new, fresh start basis by determining whether there is a change in ownership before confirmation and after emergence;

- *Issues & documentation.* Research and documention (memoranda, discussions with Ernst & Young as required, etc.) to support the accounting and reporting conclusions reached in accordance with SOP 90-7;

- *Segregation of liabilities.* Identification and segregation of liabilities that arose before and after filing to reflect the liabilities subject to the bankruptcy process;

- *Claims.* Monitoring the bankruptcy proceedings to (i) compare the claims filed, allowed, and existing debtor balances (particularly for trade vendors) to (ii) adjust the existing payables to the allowed claims and (iii) estimate claims to be settled upon emergence (failure to properly estimate the claims to be settled at emergence will impact post-emergence earnings);

- *Reporting classifications.* Identification and segregation of pre-emergence expenses, restructuring costs, and losses for classification in a special category called "reorganization items" to properly portray amounts from activities to restructure the operations prior to emergence;

- *Guarantees (FIN 45).* Consideration of issues related to recognizing the fair value of obligations from guarantees (from units subject to spin-off or sale as a result of the restructuring process);

- *Asset Retirement Obligations (SFAS 143).* Consideration of issues related to recognizing obligations from the retirement of tangible long-lived assets (from units subject to spin-off or sale as a result of the restructuring process);

(3)

KPMG

- *Top level reporting*.   Assessment of the degree to which top side adjustments and disclosures are utilized to report on a fresh start basis from the date of emergence until such amounts are recorded to your detailed accounting records;

- *Detailed accounting records*.   Developing an approach to repopulating your detailed records with new fair values and asset lives, providing electronic files and assisting with updating fixed asset and other detailed accounting records with the concluded fair values;

- *Training Delphi employees*.   At your direction, assisting with training your employees on the impact of adopting fresh start accounting;

- *Book vs. tax balances*.   Identification of differences between book and tax balances that arise from the plan of emergence and fresh start accounting;

- *Tax attributes*.   Determination of the current position of federal and state tax attributes (including usage limitations) and net asset basis (including basis in stock of subsidiaries) for federal and state tax purposes;

- *Insolvent subsidiaries*.   Consideration of the deferred tax impact on the outside basis of investments in any insolvent subsidiaries;

- *Cancelled debt income*.   Computation of the amount and allocation of cancelled debt income for federal and state tax purposes;

- *NOL carryforwards*.   Identification of limitations in the ability to utilize net operating loss carry forwards as a result of the approved plan;

- *Tax elections*.   Assessment of the impact of available federal and state tax elections; and

- *Bankruptcy-related expenses*.   Assessment of the deductibility of bankruptcy-related expenses.

The work that we will perform will consist of the following: (a) holding discussions with certain Delphi officers, employees and outside consultants, (b) reading relevant documentation provided by you (c) assisting with gathering additional data, (d) analyzing data and (e) providing advice related to your analyses as required.

The observations we will make will often be in the form of issues identified and alternative views that Delphi may consider when determining its particular accounting.  The goal of our work is to help Delphi develop accounting and financial reporting and tax planning and reporting.  We may also provide observations as to what may be the views of Delphi's independent accountant, the staff of the Securities and Exchange Commission, or various tax authorities.  Such observations may be made without any discussion with Delphi's independent accountant, the staff of the Securities and Exchange Commission, or the tax

(4)



authorities and as such may not reflect those parties' actual views on a particular topic or issue.

Our observations should not be taken as any form of concurrence, conclusion or opinion that we agree with or support Delphi's proposed accounting or tax treatment for a particular transaction or its proposed accounting under a new accounting pronouncement. Our role is one of facilitating Delphi management's analysis as it reaches its own conclusions.

We will perform our tax services on the basis of the information you have provided and in consideration of the applicable federal, foreign, state or local tax laws, regulations and associated interpretations relative to the appropriate jurisdiction as of the date the services are provided. Tax laws and regulations and/or their interpretation are subject to change at any time, and such changes may be retroactive in effect and may be applicable to advice given or other services rendered before their effective dates. We do not assume responsibility (and will have no liability) for such changes occurring after the date we have completed our services.

As you are aware, tax returns and other filings are subject to examination by taxing and other regulatory authorities. If KPMG and Delphi agree, we can assist Delphi in the event of an audit of any issue for which we have provided services under this Agreement. Such services will be subject to a separate Statement of Work. Our fees for tax audit services that we may agree to provide at a later date are not included in our fee for the Fresh Start Services covered by this SOW.

**Scope of Our Services: <u>Valuation</u>**

Under SOP 90-7 fresh start accounting, the reorganization value of Delphi, which will be provided to us by Delphi or its advisors, will be allocated to Delphi's assets and liabilities in accordance with the procedures specified in Statement of Financial Accounting Standards No. 141, *Business Combinations* ("FAS 141"). Under FAS 141, the reorganization value of Delphi will be allocated to Delphi's assets and liabilities based on their estimated fair values upon emergence from Chapter 11. According to FAS 141, fair value is defined as: *"The amount at which the asset could be bought (or incurred) or sold (or settled) in a current transaction between willing parties, that is, other than in a forced or liquidation sale."* After January 1, 2007, Statement of Financial Accounting Standards No. 157, *Fair Value Measurement* ("FAS 157") will amend that definition to read as follows: *the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date.*

To assist you with the allocation of assets and liabilities based on their estimated fair values upon emergence from Chapter 11, you have requested that we perform the following:

- *Reorganization value.* Read and identify potential issues with the reorganization value ("Reorganization Value") as determined by the Company's financial advisors and identify differences in assumptions or methodologies used to determine reorganization value and the business enterprise values ("BEV") of your reporting units and plants;

(5)



- *Identify assets & liabilities.* Obtain and read the Company's historical financial statements and detailed financial records, and conduct site visits as necessary, to identify assets and liabilities, regardless of whether those assets and liabilities are currently recorded. Where applicable and acceptable by you and your auditors, we will apply sampling techniques to support an extrapolation of values to the subject population. In other instances, we will assist you in identifying subject assets. In either event, we are not responsible for assuring that all assets have been identified, rather we will rely upon your representation of the population of your assets and liabilities;

- *Fair values.* Prepare fair value estimates for each identified asset and liability (the "Subject Assets and Liabilities"), including in-process research and development ("IPR&D");

- *Goodwill.* Determine the difference, if any, between Reorganization Value and the fair value of the Subject Assets and Liabilities identified and valued ("goodwill" or "negative goodwill");

- *Reporting units.* Determine the BEV for each reporting unit and allocate the fair value of Subject Assets and Liabilities, including goodwill, to the SFAS 142 Reporting Units identified by the Company taking into consideration the Reorganization Value;

- *Joint Ventures.* Prepare fair value estimates for the joint venture interests and allocations to identified intangibles in acquisitions accounted for under the equity method;

- *Remaining useful lives.* Estimate remaining useful lives and provide amortization schedules for the tangible and identified intangible assets;

- *Valuation report.* Issue a valuation report covering the fair value estimates of the Subject Assets and Liabilities and BEVs for each reporting unit of the Company.

To properly apply these fair value definitions, we will assume the use (and incurrence) of the subject assets (and liabilities) in an ongoing business, unless otherwise indicated by management. To the extent that the information can be obtained without undue cost and effort, our analysis will also reflect assumptions that would be made by market participants if they were to buy or sell each identified asset on an individual asset basis or other appropriate unit of account.

Our work will include discussions with directors, officers, and employees regarding the historic, current, and future operations of Delphi. Our financial analysis will be based on available historical and projected financial statements and operating data provided by management. We will also review industry and comparative public company financial data obtained from published or other available sources.

Our valuation analysis and recommendation of values are based on information and financial

(6)



data provided by management of Delphi and from third party sources. Information obtained from third party sources will be obtained from sources considered reliable and believed to be true and correct. However, no representation, liability or warranty for the accuracy of such items is assumed by or imposed on us, and is subject to corrections, errors, omissions and withdrawal without notice. With respect to the prospective financial information used by us as part of our analysis we will not examine, compile or apply agreed upon procedures to such information in accordance with standards established by the AICPA, and will not express assurance of any kind on such information. Because events and circumstances frequently do not occur as expected, there will usually be differences between predicted and actual results, and those differences may be material. We take no responsibility for the achievement of predicted results included in the prospective financial information.

In the performance of our valuation work, good and marketable title is assumed. No investigation of legal title or liens will be made, and we render no opinion or any form of assurance as to ownership or condition.

In the performance of our work, the existence of potentially hazardous materials (i) used in the construction, maintenance or servicing of buildings and machinery and equipment of the business, such as the presence of urea-formaldehyde foam insulation, asbestos, lead paint, toxic waste, underground tanks, radon and/or any other prohibited material or chemical which may or may not be present on or in the subject real and/or tangible personal property or (ii) of which the business may be held accountable, is not expected to be, unless specifically indicated in the Deliverables, disclosed to us during the course of this engagement. We, however, are not qualified to detect such substances. The existence of these potentially hazardous materials could have a significant effect on our value recommendations. You are urged to retain an expert in this field, if desired. The recommendation of value assumes the items being value is "'clean" and free of any of these adverse conditions unless we have been notified to the contrary in writing.

Unless otherwise stated in our scope of work our recommendation of value will not consider the possible effect, if any, of (i) future federal, state or local legislation, (ii) environmental or ecological matters or (iii) potential economic gain or loss resulting from contingent assets, liabilities, or events existing as of the Valuation Date. We have no responsibility for any events, conditions or circumstances that take place subsequent to the date of our Deliverable. We reserve the right, without any obligation on our part, to make revisions to our report and conclusion reached herein should we be made aware of facts existing at the Valuation Date, which were not known by us at the date of this report.

Our recommendation of value should not be used as the basis of any decision to purchase, sell or transfer any interest in any assets. Such decisions are your sole responsibility alone, as is the structure to be utilized and the price to be accepted. The selection of the price to be accepted in any transaction requires consideration of factors beyond the information we will provide or have provided. An actual transaction might be concluded at a significantly higher value or at a significantly lower value, depending upon the circumstances of the transaction and the knowledge and motivations of the buyers and sellers at that time. Neither our

(7)



recommendation of value nor our Valuation Deliverables are to be construed as a fairness opinion as to the fairness of an actual or proposed transaction, a solvency opinion, or an investment recommendation.

## Scope of Our Services: Systems

We will provide systems services to embed the "fresh start" adjustments into the financial reporting processes of Delphi, considering all of its various reporting requirements. In providing our systems services we will:

- Assess the impact of fresh start accounting on Delphi's existing systems and reporting requirements and provide recommendations for improvement
- Provide you with example model journal entries that may be required to adjust the accounting records in connection with initial or subsequent conversion to the new accounting bases
- Work with you to identify methods to record the adjustments required in the consolidation systems and accounting records
- Assist with identifying the impact on other reporting requirements and methods to efficiently report on the new bases of accounting (i.e. tax and management reporting)
- Advise you on the roll-out of the "component evaluation" methodology to each impacted entity. This methodology organizes the work effort around components to identify where adjustments are needed and how to incorporate these into the various systems. Key aspects include:
  - Understanding the local accounting policies or requirements
  - Identifying the impact of the new accounting policies or requirements
  - Identifying of the accounts which must be restated
  - Documenting the systems which require change and possible new systems
  - Identifying interdependence with other components
  - Developing a preliminary plan to produce new data requirements (design)
  - Obtaining approvals or sign off on key decisions
  - Identifying factors to consider as you begin to implement (build and test)
- Advise you on additional improvements which could be made to the financial reporting processes and systems in both the short term and long term

As noted above, our systems services include identifying factors to consider as you begin to implement (build and test) adjustments to be made to the system. Delphi is responsible for building and testing adjustments to be made to systems. We will be able to assist Delphi in building and testing the adjustments on the basis of a scope assessment at that time. However, unless otherwise indicated, our fees for these additional services are not included in our fee for the Fresh Start Services covered by this SOW.



**Scope of Our Services:  <u>Project Management</u>**

We will provide project management services to Delphi senior management and its fresh start project manager that will assist in coordinating Fresh Start Services.  Project management services will be designed to advise Delphi regarding project timelines, milestones, deliverables, interdependencies, risks and resources.  In providing the project management services, we expect to comment upon Delphi's proposed:

1. Project structure, scope, governance, and detailed planning;
2. Approach and prioritization with respect to issue resolution and change management processes; and
3. Approach to status reporting and the related communication process.

We also expect to facilitate KPMG's compliance with Delphi's chosen approaches to project management.

**Professional Standards**

KPMG will perform their services under the Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants.  The sufficiency of the procedures is solely the responsibility of the specified users of our advice and/or discussion documents.  Consequently, KPMG makes no representation regarding the sufficiency of the procedures either for the purpose for which our advice and/or discussion documents is being prepared or for any other purpose.

**No Audit or Independent Verification**

In this engagement, KPMG assumes no responsibility for auditing information provided by Delphi or for expressing an opinion or any other form of assurance (including an audit or review) on any part of Delphi's financial statements.  Those responsibilities belong to Delphi and their independent auditor.  Further, KPMG will not be compiling or otherwise associated with Delphi's financial statements as that term is defined in the Statements on Auditing Standards issued by the AICPA and you cannot refer to us or our report with third parties or in any regulatory filings without our express written consent.

Except as otherwise set forth in the SOW, in accepting this engagement, Delphi acknowledges that completion of this engagement or acceptance of deliverables resulting from this engagement will not constitute a basis for Delphi's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act").  This engagement shall not be construed to support Delphi's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(9)



To the extent that KPMG provides accounting advisory services to Delphi, we will base our conclusions on the facts and assumptions that Delphi submits; we will not independently verify such information but will inform Delphi's management of any such information that may appear questionable to KPMG. Inaccuracy or incompleteness of the information provided to us could have a material effect on our advice and services provided. In rendering accounting advice, whether written or oral, we will consider the applicable technical literature, laws and regulations. Financial reporting authoritative guidance is subject to change or modification, retroactively or prospectively, by varying interpretation and by subsequently issued pronouncements, legislation, and regulatory, administrative, or judicial decisions. Any such change or modification could affect the validity of our advice. Following the termination of this engagement, we will not update our advice for subsequent changes, in circumstances, events, or modifications of rules.

Accounting advice provided by KPMG to Delphi may not be provided to any third party without the express written permission of KPMG. Additionally, Delphi agrees that we have no obligation to update any information provided to you for events and circumstances occurring after termination of this engagement, unless a request is agreed to in writing.

**Advice on the Application of Accounting Principles (SAS 50)**

KPMG's valuation services are intended to be a primarily straightforward application of generally accepted valuation methodologies to Delphi's facts. KPMG does not have responsibility for management analysis or decision-making with respect to Delphi's positions taken on tax returns, the application of any accounting principles, related financial statement disclosures and balance sheet accounts. Delphi is to consult with their independent auditor on the application of accounting principles.

To the extent that our engagement scope contemplates KPMG providing Delphi with other accounting advisory services, we will assist you with performing research and identifying important factors to consider when applying the guidance to your circumstances. We will assist Delphi with preparation of analyses and supporting documentation to enable you to consider the possible accounting decisions and draw conclusions on your interpretations of the application of accounting. In doing so, we limit our advice to the extent within accepted practice with the intention that you will not encounter issues or disagreements with your auditor, necessitating communication with your audit committee or require disclosure of significant consultations with accountants other than your auditor, but rather will work with you and your auditor in a collaborative approach to arrive at common agreement on the appropriate interpretations for the circumstances.

Should you request more formal views by KPMG on a particular matter involving the application of generally accepted accounting principles, either verbally or in writing, such advice falls within the provisions of Statement of Auditing Standards No. 50 *Reports on the Application of Accounting Principles* as amended by Statement of Auditing Standards No. 97, *Amendment to SAS 50, 'Reports on the Application of Accounting Principles'* (SAS 97). Because of the requirements of SAS 50, and KPMG internal policies, on those occasions when



we provide such accounting advice to the principal of proposed accounting policies who is not a KPMG audit client, such professional requirements include communicating with the independent auditors' of the Company to discuss such matters as:

- the economic substance of the transactions in scope versus the form of the transaction;

- whether there is a dispute between the Company and the continuing accountants; or

- whether the continuing accountants have reached a conclusion that differs from ours.

We anticipate providing advice under SAS 50 related to the application of SOP 90-7 and SFAS 144 with respect to your emergence from bankruptcy and impairment analysis and agree to undertake such advice pursuant to this SOW.

### 2.2 KPMG Deliverables:

**Documentation of Deliverables**
KPMG and Delphi agree to establish and agree upon the level and content of oral and written material to be provided to Delphi in connection with Fresh Start Services (the "Deliverables").

**Accounting and Tax, Systems, Impairment and Project Management Deliverables**

During various stages of our work, we will provide you with oral advice, verbal reports, various outlines, executive summaries, presentations, letters, issues analysis, schedules, etc., prepared to assist us in advising you. No formal written report will be issued by KPMG as part of this advice.

**Valuation Deliverables**

Our goal is to present all deliverables in a format that is most effective for you. We typically provide our deliverables in two phases:

- Phase one's deliverable will be a summary report with accompanying financial schedules detailing preliminary valuation or impairment charge conclusions; and

- Phase two's deliverable will be a full report, with accompanying financial schedules, that provides an overview of our valuation process, fair values of the subject assets, (where appropriate) remaining useful lives, a description of valuation methodologies, and assumptions utilized.

This report will include, but will not be limited to, the following:

- An executive summary of our conclusions;

(11)



- A summary of the relevant accounting considerations related to fresh start accounting;

- A reconciliation of allocated enterprise value to the reorganization value determined by Delphi's financial advisers;

- Detailed descriptions of Delphi and each reporting unit;

- Analysis of the economic environment and prospects for future economic growth as of the report date;

- Detailed analysis of the industry in which Delphi and each of its reporting units compete;

- Detailed analysis of the financial condition of the Company and each reporting unit;

- Extensive description and rationale behind the valuation approaches used in our analysis;

- A conclusion on the value of all assets and liabilities as well as an allocation of those values to the reporting units determined by Delphi; and

- Detailed financial exhibits supporting our conclusions.

To enable Delphi to support its valuation conclusions included in its regulatory filings, our Valuation Deliverables may be shared with your auditor and applicable regulatory authorities having jurisdiction over Delphi and the subject matter of our Valuation Deliverables. Delphi agrees that it will provide KPMG with prompt notice prior to any such distribution.

The Valuation Deliverables may not be used in conjunction with any other appraisal or study. Our recommendation of value stated in our Valuation Deliverables will be based on the program of utilization described in the Valuation Deliverables, and may not be separated into parts. No change of any item in the Valuation Deliverables is authorized by anyone other than KPMG and we shall have no responsibility for any such unauthorized change.

Prior to issuing our Valuation Deliverables in final form, we will require a representation letter from you stating that we have been provided all relevant information of which you are aware and that there is no reason to believe that KPMG's assumptions based on these representations are unreasonable.

**Limitations Covering All Deliverables**

You agree not to use our Deliverables for any purpose other than as set forth in this SOW. Any other use, except where express authorization is provide in writing, is unauthorized and may be misleading.

Except as stated elsewhere in this SOW, our Deliverables in either draft or final form or portions thereof including our oral comments, should not be communicated or distributed to



any party who is not a member of Delphi management nor should they be referred to or quoted, in whole or in part, in any prospectus, registration statement, public filing, loan, other agreement or document, and KPMG should not be named as an expert without our express written consent.

In the event that our Deliverables are to be distributed to another party or if you request that we participate in oral discussions with another party, other than your audit firm, a release letter (similar to that set forth in Exhibit B) to hold KPMG, and any subcontractor we may use, harmless relative to their use of the Deliverable must be received from that party prior to the distribution or discussion. It is agreed that the terms of such release letter are to be determined exclusively by KPMG. The foregoing consent and release shall not apply to circumstances where Delphi has first carefully considered the contents of such Deliverables and has adopted them as its own. Where Delphi has adopted KPMG Deliverable content as its own, Delphi shall redact any and all reference to KPMG or KPMG's name from the Deliverable prior to any such disclosure, distribution or discussion and shall present such Deliverable as its own work product with no attribution or references in any form to KPMG or KPMG's name.

During the engagement we may develop electronic work products, including spreadsheets, documents, databases and other electronic tools to assist us with our engagement. In some cases these electronic work products may be provided to Delphi upon request. As these electronic work products were developed specifically for our purposes and without consideration of any purpose for which you might use them, they are made available on an 'as is' basis for Delphi's use only. Further, we make no representations or warranties as to the sufficiency or appropriateness of the spreadsheets for any purpose for which you may use them, or that the operation thereof will be uninterrupted or error-free.

The report provided under this SOW is not intended to be used, nor should be used, in connection with any tax matter. Although our engagement will include tax accounting support, our valuation report is not intended to be used for tax purposes. Therefore, our valuation report will contain the following legend:

> *This report is not intended to be used, nor should be used, in connection with any tax matter. In the event Client uses this report for or in relation to any tax matter, the report is not intended or written by KPMG to be used, and cannot be used, by a client or any other person or entity for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to any other party any matters addressed herein.*

We have attached as Exhibit A to this letter the Valuation Limiting Terms and Conditions for your information. We also have attached as Exhibit C to this letter, an example representation letter that we would tailor to your specific facts and assumptions and will request that you sign at the end of our engagement.



### 2.3  Use of Subcontractors:

Our services covered by this engagement letter may also necessitate the assistance of a member firm of KPMG International. To the extent that our services under this engagement letter require such assistance, the services will be provided under the direction of KPMG LLP, the U.S. member firm of KPMG International, and will include the participation of other member firms of KPMG International ("KPMG member firms"). KPMG LLP is a separate legal entity from other member firms of KPMG International. KPMG LLP, without the Company's prior written approval, may subcontract a portion of its responsibilities under this engagement letter to any of the KPMG member firms, provided, however, that KPMG LLP shall remain fully and solely responsible for all of KPMG's liabilities and obligations under the engagement letter.

### 2.4  Delphi's Responsibilities:

Delphi's financial statements and regulatory filings are the sole responsibility of Delphi. Delphi management is responsible for properly recording transactions in the accounting records. Management is also responsible for identifying and ensuring that Delphi complies with the laws and regulations applicable to its activities. KPMG has not been engaged to, and will not, perform management functions, make management decisions, or act or appear to act in a capacity equivalent to that of an employee or otherwise engage in any activity that in the judgment of KPMG would be inappropriate in the capacity for performing the services as set forth in this SOW.

It is your responsibility to determine the adequacy of the scope of our work to be performed for your purposes. We make no representations as to whether our procedures are sufficient for your purposes.  Also it is understood that it is your responsibility to (1) designate a management-level individual or individuals to be responsible for overseeing the services being provided, (2) evaluate the adequacy of the services performed and any findings that result, and (3) make all management decisions and perform all management functions, including accepting responsibility for the implementation of actions identified in the course of this engagement and results achieved from using the services and/or Deliverables. Delphi agrees that it will notify KPMG in writing if management does not have sufficient information or advice from KPMG to enable management to make and accept responsibility for all decisions related to our advice.

Delphi is responsible for making available to KPMG, upon request, all of the necessary information and company personnel to whom KPMG can direct inquiries to perform its services as set forth in this SOW.  Delphi agrees to perform the tasks and provide the assistance agreed to by the parties. Any timing or fee estimate we have provided for this engagement takes into account the agreed-upon level of assistance from Delphi and commitment of Delphi resources. KPMG shall not be responsible for any delay or other consequences resulting from Delphi's failure to perform any of its obligations under this Agreement.  Delphi's failure to satisfy its responsibilities under this SOW may lead to an

(14)



increase in KPMG fees, depending on the extent to which KPMG has to perform more services or reschedule its commitments to deliver the Services, or KPMG's inability to provide the Services.

KPMG will make specific inquiries of Delphi management when performing the services as set forth in this SOW. KPMG intends to rely upon the results of its procedures and the responses to its inquiries in forming its findings.

## 2.5    Limitation of Liability and Indemnification

Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of KPMG, KPMG's liability to pay damages for any losses incurred by Delphi as a result of breach of contract, negligence or other tort committed by KPMG, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the Services provided under this SOW. Except to the extent finally determined to have resulted from the gross negligence or intentional misconduct of Delphi or in connection with Delphi's violation of its obligations under Section 6(b) of the Agreement, Delphi's liability to pay damages for any losses incurred by KPMG as a result of breach of contract, negligence or other tort committed by Delphi, regardless of the theory of liability asserted, is limited to no more than the total amount of fees paid to KPMG for the services provided under this SOW.

## 2.6    In addition to the engagement limitations set forth in Section 14 in the Agreement:

KPMG is responsible for performing the services set forth in this SOW in accordance with the terms of the Agreement and this SOW and reporting its findings thereon. The day-to-day performance of the services as set forth in this SOW will be directed, reviewed, and supervised by KPMG.

Delphi agrees that KPMG may use the Delphi's name in experience citations with respect to Fresh Start Services.

## 2.7    Timing

The timing of the services to be provided hereunder is as follows:

| Project Start Date: | November 16, 2006 |
|---|---|
| Estimated Project Completion Date: | March 31, 2008 |

(15)



## III.  RESOURCES ASSIGNED TO THIS SOW

The KPMG leadership team assigned to provide Fresh Start Services and Deliverables under this SOW are as follows:

| Resource Name | Title |
|---------------|-------|
| Brian Heckler | Partner |
| Dan Gary | Partner |
| Robert Musur | Partner |
| Duncan Forsythe | Partner |
| Kevin Voigt | Managing Director |

KPMG will assign additional personnel as necessary throughout the course of the project.

## IV.  PAYMENT; EXPENSES; AND INVOICES

### 4.1    Payment Terms

Payment terms are consistent with the terms in Section 4 of the Agreement.

### 4.2    Professional Fees and Expenses

KPMG's fees are based on the time required by the individuals assigned to the engagement, based on the rates set forth below. Based on our experience with similar engagements we estimate that the fees will amount to approximately $10 million for Fresh Start Services, excluding expenses.  Individual hourly rates vary according to the degree of responsibility involved and experience and skill required.  The agreed upon billing rates are detailed below. Expenses will be billed in accordance with the terms in Sections 3 and 4 of the Agreement.  In addition, any costs incurred by KPMG with respect to the purchase of valuation data from third party sources will be billed as an out of pocket expense.

| Level | Standard rate | Discount | Net rate |
|-------|---------------|----------|----------|
| Partner | $835 | ($335) | $500 |
| Director | $800 | ($360) | $440 |
| Manager | $650 | ($290) | $360 |
| Senior | $500 | ($250) | $250 |
| Associate | $400 | ($235) | $165 |



## V. OTHER TERMS AND CONDITIONS THAT SHALL APPLY TO THIS SOW

**5.1** In the event KPMG is requested or authorized by Delphi or required by government regulation, subpoena, or other legal process to produce its working papers or its personnel as witnesses with respect to its engagement for Delphi, Delphi will, so long as KPMG is not a party to the proceeding in which the information is sought, reimburse KPMG for our professional time and expenses, as well as the reasonable fees and expenses of its counsel, incurred in responding to such a request.

**5.2** Delphi shall provide reasonable workspace, administrative support, computer facilities and other support, which are necessary to perform the Services. Delphi shall perform the tasks and provide the assistance described in this SOW. Delphi consents to the use, by staff visiting or working from the Delphi site, of the Delphi's resources, including, but not limited to network, Internet and extranet access, for the purpose of accessing similar resources. Delphi agrees to perform in a timely fashion those tasks and provide the personnel agreed to by the parties and set forth herein.

**5.3** In providing KPMG with access to Delphi's network, the Internet and Delphi's extranet, KPMG will comply with all of the following:

(a) KPMG will comply as appropriate with the Delphi's Information Security Policy which will be made available to KPMG.

(b) KPMG is responsible and accountable for ensuring that all KPMG devices attaching to Delphi's network are compliant with KPMG's virus policy which include periodic automatic updates.

(c) KPMG is responsible and accountable for ensuring that all KPMG devices attaching to Delphi's network use KPMG standard configurations and are current with respect to automatic update distributions.

(d) Communications shall be secure (e.g., SSL/VPN, secret/confidential files exchanged encrypted, or password protected) as appropriate. KPMG and Delphi to agree on which KPMG personnel should be issued and utilize Delphi e-mail accounts (KPMGConsultant@delphi.com).

(e) KPMG shall not store Delphi information on an unsecured device for any longer than is necessary to fulfill a specific business need and must delete or transfer unsecured data to a secure device as soon as practicable. Any data stored on a laptop shall be encrypted.

(f) For information identified as sensitive by Delphi Corp., KPMG shall report any data spills or loss of an unsecured device to Delphi IT Security as soon as practical.

(g) KPMG shall maintain an updated listing of all KPMG employees who perform services under this SOW which can be reviewed with Delphi upon reasonable request.



**IN WITNESS WHEREOF,** the parties to the above referenced Agreement have caused this
SOW to be executed by their authorized representatives.

| KPMG LLP | | | |
|---|---|---|---|
| Signature *Brian L. Heckler* | Printed Name Brian Heckler | Title Partner | Date 3/14/07 |
| **Delphi Corporation** | | | |
| Authorized Signature *John Sheehan* | Printed Name JOHN D. SHEEHAN | Title VP & Chief Restructuring Officer | Date 3/16/07 |
| Authorized Signature *Kevin Smith* | Printed Name Kevin. Smith | Title Director, GSM | Date 3/16/07 |

(18)

EXHIBIT A

## KPMG LLP
## Valuation Services Limiting Assumptions Addendum to Standard Terms and Conditions

This Valuation Services Limiting Assumptions Addendum to the Standard Terms and Conditions is an integral part of the accompanying Standard Terms and Conditions for Advisory and Tax Services.

18. **Nature of Opinion.** Neither our opinion nor our report are to be construed as a fairness opinion as to the fairness of an actual or proposed transaction, a solvency opinion, or an investment recommendation, but, instead, are the expression of our determination of the fair [market] value of the Subject Assets between a hypothetical willing buyer and a hypothetical willing seller in an assumed transaction on an assumed valuation date. For various reasons, the price at which the Subject Assets might be sold in a specific transaction between specific parties on a specific date might be significantly different from the fair [market] value expressed in our report.

19. **Going Concern Assumption, No Undisclosed Contingencies** - Our analysis (i) assumes that as of the Valuation Date the Company and its assets will continue to operate as configured as a going concern; (ii) is based on the past and present financial condition of the Company and its assets as of the Valuation Date; and (iii) assumes that the Company had no undisclosed real or contingent assets or liabilities, no unusual obligations or substantial commitments, other than in the ordinary course of business, nor had any litigation pending or threatened that would have a material effect on our analysis.

20. **Reliance on Forecasted Data.** Any use of management's projections or forecasts in our analysis does not constitute an examination or compilation of prospective financial statements in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA"). We do not express an opinion or any other form of assurance on the reasonableness of the underlying assumptions or whether any of the prospective financial statements, if used, are presented in conformity with AICPA presentation guidelines. Further, there will usually be differences between prospective and actual results because events and circumstances frequently do not occur as expected and those differences may be material.

21. **USPAP.** Unless otherwise stated in our report, out report is in substantial compliance with USPAP ("Uniform Standards of Professional Appraisal Practice").

22. **Verification of Legal Description or Title.** We have made no investigation of legal description or title and have assumed that owner(s) claims to property are valid. No consideration will be given to liens or encumbrances which may be against the property except as specifically stated as part of the financial statements you provide to us as part of this engagement. Full compliance with all applicable federal, state and local zoning, environmental, and similar laws and regulations is assumed, unless otherwise stated, and responsible ownership and competent management are assumed.

23. **Verification of Hazardous Conditions.** We will not investigate the extent of any hazardous substances that may exist as we are not qualified to test for such substances or conditions. If the presence of such substances, such as asbestos, urea formaldehyde foam insulation or other hazardous substances or environmental conditions may effect the value of the property, the value will be estimated predicated on the assumption that there is no such condition on or in the property or in such proximity thereto that it would cause a loss in value. No responsibility will be assumed for any such conditions, or for any expertise or engineering knowledge required to discover them.

24. **Condition of Property.** We assume no liability whatsoever with respect to the condition of the subject property for hidden or unapparent conditions, if any, of the subject property, subsoil or structures, and further assume no liability or responsibility whatsoever with respect to the correction of any defects which may now exist or which may develop in the future. Equipment components considered, if any, were assumed to be adequate for the needs of the property's improvements, and in good working condition, unless otherwise reported.

25. **Zoning.** It is assumed that all public and private zoning and use restrictions and regulations had been complied with, unless non-conformity was stated, defined and considered in the report.

26. **The Americans with Disabilities Act ("ADA").** The ADA became effective January 26, 1992. The valuation profession will not make a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more requirements of the ADA. If so, this fact could have a negative effect upon the value of the property. Since the valuation professional has not direct evidence relating to this issue, he will not consider possible non-compliance with the requirements of the ASA in estimating the value of the property.

Revised 10/16/06



**Exhibit B**

Releasing Party

[Date]

KPMG LLP

Dear _____:

Delphi has informed Releasing Party that KPMG LLP has performed certain procedures to assist Delphi in connection with its application of fresh start accounting in connection with its emergence from Chapter 11 bankruptcy proceedings ("Fresh Start Services"). We understand that the work performed by KPMG LLP was performed in accordance with instructions provided by Delphi and was performed exclusively for Delphi's sole benefit and use.

Delphi has requested that KPMG LLP provide Releasing Party access to certain reports and documentation produced in accordance with Delphi's instruction ("Work Product"). Releasing Party acknowledges that this Work Product was prepared at the direction of Delphi and may not include all procedures deemed necessary for the purposes of Releasing Party and that certain findings and information may have been communicated to Delphi that are not reflected in the Work Product.

In consideration of KPMG LLP allowing Releasing Party access to the Work Product and, if requested by Releasing Party, discussing the Work Product, Releasing Party agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that neither KPMG LLP nor any other KPMG Firm or subcontractor involved in performing the Fresh Start Services or related Work Product ("Released Firms") assumes any duties or obligations to Releasing Party in connection with such access.

Releasing Party agrees to release KPMG LLP, each Released Firm and their personnel from any claim by Releasing Party that arises as a result of KPMG LLP permitting Releasing Party access to the Fresh Start Services Work. Further, Releasing Party agrees not to disclose or distribute the Work Product, or information received, orally or in writing from KPMG LLP or a Released Firm to any other parties without KPMG LLP's prior written consent, except as required by law, regulation, or legal process, provided that, except in the case of routine supervisory examinations by bank regulatory authorities, Releasing Party provides KPMG LLP with prompt notice of any request that Releasing Party disclose such information (so long as such notice is not prohibited by law), so that KPMG LLP may at its option object to the

(19)



request and/or seek an appropriate protective order.  It is understood and agreed that any objection of KPMG LLP to such a request shall not affect Releasing Party's obligations to produce materials called for by appropriate legal or regulatory process.


Acknowledged by Releasing Party representative:


By:  _____
        (Name of company official)


        _____
        (Title)


        _____
        (Date)

*Exhibit C*

### *Sample Representation Letter (for Delphi)*

[Date]

**KPMG LLP**
**303 E, Wacker**
**Chicago, IL 60601**
**Attn:  Robert Musur**

Dear Mr. Musur:

This letter will confirm our understanding regarding certain elements of KPMG LLP's engagement to assist Delphi  ("Delphi" or the "Company") in valuing certain assets and liabilities in connection with our application of Statement of Position 90-7, *Financial Reporting for Entities in Reorganization Under the Bankruptcy Code*. The valuation was performed as of _____ (the "Valuation Date").

We have reviewed your valuation report and the related data that was used in this report.  In connection with your valuation study, we have supplied you with all significant and relevant information of which we are aware.  The information supplied to you includes:

- list to be provided near project completion;

We understand you have relied on the aforementioned information and upon discussions with employees of Delphi during your engagement and that you have not undertaken any procedures to verify the reasonableness of this information.  We understand that you express no opinion as to the fairness of the presentation of the aforementioned information and that any alterations or modifications to this information could materially affect your findings.

We have no reason to dispute the underlying financial information upon which you relied in your analysis. We understand that your findings are to be relied upon solely in connection with the circumstances set forth in your proposal letter.

Sincerely,

Thomas S. Timko

Corporate Controller