IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re                                         :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                                   Debtors.   :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On March 19, 2007, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via overnight delivery:

Debtors' Supplemental Objection to Lead Plaintiff's Supplemental Pleading in Further Support of Motion for Limited Modification of Automatic Stay (Docket No. 7344) [a copy of which is attached hereto as Exhibit B]

Dated: March 22, 2007

                              /s/ Evan Gershbein
                         Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 22nd day of March, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:      /s/ Sarah Frankel

Commission Expires:    12/23/08

# EXHIBIT A

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein<br>Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092<br>212-450-4213 | 212-450-3092<br>212-450-3213 | donald.bernstein@dpw.com<br>brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com<br>karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler<br>Bonnie Steingart<br>Vivek Melwani<br>Jennifer L Rodburg<br>Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com<br>slivir@ffhsj.com | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com<br>richard.duker@jpmorgan.com<br>gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com<br>rtrust@stblaw.com<br>wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com<br>jlyonsch@skadden.com<br>rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com<br>tmatz@skadden.com | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255<br>does not take service via fax | | Counsel to United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

3/19/2007 8:13 PM
Response Service List 070124

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Abbey Spanier Rodd Abrams & Paradis LLP | Arthur N Abbey Esq | 212 E 39th St | | New York | NY | 10016 |
| Baker Botts | Joe R Caldwell Jr Esq William H Jeffress Jr Esq | 1299 Pennsylvania Ave Nw | | Washington | DC | 20004-2400 |
| Barrack Rodos & Bacine | Regina M Calcaterra Esq | 3300 Two Commerce Sqr | 2001 Market St | Philadelphia | PA | 19103 |
| Bernstein Litowitz Berger & Grossman | John P Coffey Hannah E Greenwald Matthew C Moehlman | 1285 Ave Of The Americas | | New York | NY | 10019 |
| Brodsky & Smith Llc | Evan J Smith Esq | 2 Bala Plaza Ste 602 | | Bala Cynwyd | PA | 19004 |
| Cohen Milstein Hausfeld & Toll Pllc | Bruce F Rinaldi Esq | 1100 New York Ave Nw | West Tower Ste 500 | Washington | DC | 20005-3934 |
| Davis Polk & Wardwell | Daniel F Kolb Esq | 450 Lexington Ave | | New York | NY | 10017 |
| Entwistle & Cappucci LLP | William W Wickersham Esq | 30 Columbia Turnpike | | Florham Pk | NJ | 07932 |
| Foley & Lardner LLP | Gregory S Bruch Esq | Washington Harbor Ste 500 | 3000 K St Nw | Washington | DC | 20007-5109 |
| Foley & Lardner LLP | Robert S Scher Esq | 90 Pk Ave | | New York | NY | 10016 |
| Grant & Eisenhofer Pa | Sharan Nirmul | 1201 North Market St | Ste 2100 | Wilmington | DE | 19801 |
| Grant & Eisenhofer Pa | Stuart M Grant James J Sabella | 45 Rockefeller Ctr | 650 Fifth Ave | New York | NY | 10111 |
| Johnson & Perkinson | Dennis J Johnson Esq | 1690 Williston Rd | PO Box 2305 | South Burlington | VT | 05403 |
| Kaplan Fox Kilsheimer LLP | Frederic S Fox Sr Esq | 805 Third Ave 22nd Fl | | New York | NY | 10022 |
| Keller Rohrback LLP | Lynn L Sarko Cari C Laufenberg | 1201 Third Ave | Ste 3200 | Seattle | WA | 98101 |
| Kirkland & Ellis LLP | Robert J Kopecky Esq | 200 E Randolph Dr | | Chicago | IL | 60601 |
| Labaton Sucharow & Rudoff LLP | Christopher J Keller Esq | 100 Pk Ave 12th Fl | | New York | NY | 10017 |
| Lasky & Rifkind Ltd | Leigh R Lasky Esq | 100 Pk Ave 12th Fl | | New York | NY | 10017 |
| Lerach Coughlin Stoia Geller Rudman & Robbins | Samuel H Rudman Esq | 200 Broadhollow Rd Ste 406 | | Melville | NY | 11747 |
| Lerach Coughlin Stoia Geller Rudman & Robins LLP | Travis E Downs Iii Esq | 655 W Broadway Ste 1900 | | San Diego | CA | 92101 |
| Lowenstein Sandler Pc | Michael S Etikin Ira M Levee | 65 Livingston Ave | | Roseland | NJ | 07068 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

3/20/2007 3:14 PM
Overnight

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Lowenstein Sandler Pc | Michael S Etikin Ira M Levee | 1251 Ave Of The Americas | 18th Fl | New York | NY | 10020 |
| Milberg Weiss Bershad & Schulman LLP | Steven G Schulman Esq | 1 Pennsylvania Plaza | 49th Fl | New York | NY | 10119-0165 |
| Murray Frank & Sailer LLP | Christopher S Hinton Esq Eric J Belfi Esq Jacqueline Sailer Esq | 275 Madison Ave Ste 801 | | New York | NY | 10016 |
| Nix Patterson & Roach LLP | Jeffrey J Angelovich Bradley E Beckworth Susan Whatley | 205 Linda Dr | | Daingerfield | TX | 75638 |
| O Melveny & Myers LLP | Robert M Stern Esq | 1625 Eye St Nw | | Washington | DC | 20006 |
| Paul Weiss Rifkind Wharton & Garrison LLP | Brad S Karp Esq | 1285 Ave Of The Americas | | New York | NY | 10019-6064 |
| Pomerantz Haudek Block Grossman & Gross LLP | Stanley M Grossman Esq | 100 Pk Ave 26th Fl | | New York | NY | 10017 |
| Schatz & Noble Pc | Robert A Izard Esq | 20 Church St 17th Fl | | Hartford | CT | 06103 |
| Schiffrin Barroway Topaz & Kessler LLP | Richard S Schiffrin Esq Michael Yarnoff Sean M Handler Benjamin J Hinerfeld | 280 King Of Prussia Rd | | Radnor | PA | 19087 |
| Scott & Scott Llc | David R Scott Esq | 108 Norwich Ave | PO Box 192 | Colchester | CT | 06415 |
| Squitieri & Fearon LLP | Lee Squitieri Esq | 32 E 57th St | 12th Fl | New York | NY | 10022 |
| Wechsler Harwood LLP | Robert I Harwood Esq | 488 Madison Ave Ste 801 | | New York | NY | 10022-5726 |
| Wolf Popper LLP | Carl L Stine Esq | 845 Third Ave | 12th Fl | New York | NY | 10022-6601 |
| Zimmerman Levi & Korsinsky LLP | Jean Marc Zimmerman Esq | 226 St Paul St | | Westfield | NJ | 07090 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

3/20/2007 3:14 PM
Overnight

# EXHIBIT B

**Hearing Date: March 22, 2007**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :
    In re                                                 :       Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :       Case No. 05-44481 (RDD)
                                                          :
                                                          :       (Jointly Administered)
                            Debtors.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUPPLEMENTAL OBJECTION TO LEAD PLAINTIFFS'
SUPPLEMENTAL PLEADING IN FURTHER SUPPORT OF MOTION FOR
<u>LIMITED MODIFICATION OF AUTOMATIC STAY</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby respectfully submit this supplemental objection (the "Supplemental Objection") to the Lead Plaintiffs' Motion For A Limited Modification Of The Automatic Stay filed on November 15, 2005 (Docket No. 1063) (the "Motion"). The Debtors filed an objection to the Motion on December 29, 2005 (Docket No. 1667) (the "Initial Objection"). On January 25, 2006, the Bankruptcy Court entered an order modifying the automatic stay (Docket No. 1883) (the "Stay Modification Order") solely to allow the Lead Plaintiffs to seek modification of the PSLRA stay. On February 15, 2007, the United States District Court for the Eastern District of Michigan (the "Michigan District Court") entered an order partially modifying the PSLRA stay (the "Partial Modification Order"). On March 2, 2007, Delphi and certain defendants filed a motion for reconsideration and clarification of the Partial Modification Order (the "Reconsideration Motion"). On March 6, 2007, the Lead Plaintiffs filed the Supplemental Pleading in Further Support of the Motion for a Limited Modification of the Automatic Stay, dated March 6, 2007 (the "Motion Supplement") (Docket No. 7128). In support of this Supplemental Objection, Delphi respectfully represents as follows:

<u>Preliminary Statement</u>

1.    The Lead Plaintiffs' Motion should be denied. Modifying the automatic stay to allow the Lead Plaintiffs to take discovery of the Debtor is inappropriate because, among other reasons, consideration of the relief requested in their Motion remains premature, the Lead Plaintiffs have not demonstrated cause for modifying the automatic stay, and modification of the automatic stay to comply with the Lead Plaintiffs' discovery

2

requests would place a heavy burden on the Debtors.[1]  In their Motion Supplement, the

Lead Plaintiffs contend that the undue prejudice demonstrated for relief from the PSLRA

stay should be viewed as sufficient cause to lift the automatic stay.  "Cause" to modify the

automatic stay, however, requires a different showing than that required to modify the

PSLRA stay.  As this Court noted at the hearing on the Motion in January 5, 2006, even if

the Michigan District Court lifted the PSLRA stay, this Court would still need to conduct a

consideration of the factors relevant under Sonnax.  (Transcript of Omnibus Hearing, Jan.

5, 2006, p. 75, lines 11-14.)  Consequently, the Lead Plaintiffs' contention that the limited

modification of the PSLRA is sufficient cause to modify the automatic stay is inadequate.

        2.       At the outset, however, this Court's consideration of the Motion and

the Motion Supplement at this time would be premature.  Although the Michigan District

Court entered the Partial Modification Order partially modifying the automatic stay,

Delphi and certain other defendants in the securities litigation consolidated in the Michigan

District Court (the "Securities Litigation") on March 2, 2007 timely filed the

Reconsideration Motion, a copy of which is attached hereto as Exhibit A.[2]  The Michigan

District Court has not yet ruled on the Reconsideration Motion, and until it does so, the

---

[1]    As described in this Supplemental Objection, the Debtors believe that complying with the terms of
discovery requested by the Lead Plaintiffs (and as outlined in the Michigan District Court's Partial
Modification Order) would be extremely burdensome; if this Court decides to modify the automatic stay
to any extent, the scope of the relief should be narrowly tailored.  To protect the estates from the undue
burden imposed by the Lead Plaintiffs' requests, the stay should be lifted at most only as to the estates'
hard copy documents already produced to the Securities and Exchange Commission (other than those
that are privileged or constitute work product).

[2]    Deloitte & Touche LLP, another named defendant in the Securities Litigation, also filed its Motion For
Reconsideration Of The Opinion And Order Regarding Lead Plaintiffs' Motion For Partial Modification
Of PSLRA Discovery Stay in the Michigan District Court on March 2, 2007.

Lead Plaintiffs' Motion is not ripe.  This Court should defer ruling on the Motion for the same reasons it did last time.

3.      In any event, the Lead Plaintiffs are entitled to no relief from the automatic stay.  They argued in their pleadings before the Michigan District Court and in their Motion Supplement that they are concerned about "falling behind" the Official Committee of Unsecured Creditors (the "Creditors' Committee") in the negotiations taking place in the Debtors' chapter 11 reorganization cases.  The Lead Plaintiffs contend that unless the automatic stay is lifted and they are provided access to documents shared with the Creditors' Committee, the Official Committee of Equity Security Holders (the "Equity Committee" and, together with the Creditors' Committee, the "Statutory Committees"), and the Securities and Exchange Commission (the "SEC"), they will be severely prejudiced and potentially "left with nothing."[3]  The Lead Plaintiffs' concerns are unfounded and their contentions are without merit.

4.      Quite simply, the Statutory Committees are not competing with the Lead Plaintiffs for a distribution from the Debtors' estates.  The Statutory Committees are,

---

[3]    The Lead Plaintiffs co-opt this quoted language from the opinion of Judge Cote in In re Worldcom, Inc. Securities Litigation, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002), to demonstrate the "undue prejudice" they will suffer if unable to proceed with discovery.  If undue prejudice does indeed result from the imposition of the PSLRA stay (and for that matter, the Bankruptcy Code's automatic stay), it is congressionally mandated.  As recently discussed in In re Refco Inc. Sec. Litig., No. 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006), "[i]f the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement. That is not what Congress intended.  The Court in WorldCom recognized this fact, in holding that 'unique circumstances' present in that case necessitated the lifting of the stay.  Those unique circumstances were the court-ordered coordinated settlement discussions, and the 'very real risk' that the defendants [Worldcom's Directors], after settling with other parties, would 'no longer have anything or at least as much to offer' plaintiffs."  Id. at *3.  Similarly, the fact that the Bankruptcy Code's automatic stay may hinder the Lead Plaintiffs' efforts to pursue certain defendants named in the Securities Litigation should not be construed as "undue prejudice," but as legislative intent.  Congress did not elect to extend the automatic stay or the PSLRA stay to the SEC or the Department of Justice.

4

however, fulfilling their fiduciary and statutory duties by engaging in negotiations with the

Debtors and GM regarding a settlement of the various transformation, operational, and

restructuring issues that are at the core of the Debtors' chapter 11 reorganization cases.

The Lead Plaintiffs do not explain how they are severely prejudiced by the Statutory

Committees fulfilling their statutory and fiduciary duties.  Instead, the Lead Plaintiffs

attempt to show that they are unduly prejudiced by these negotiations, and that the

automatic stay should be lifted to remedy this purported hardship.  Again, the Lead

Plaintiffs confuse the standards for modifying the PSLRA stay with the cause necessary to

modify the automatic stay.  The automatic stay was intended to allow debtors to formulate

restructuring plans without responding to ancillary litigation.

        5.      Cutting through all of the Lead Plaintiffs' rhetoric regarding undue

prejudice, the only new supposed "cause" for lifting the stay that the Lead Plaintiffs have

been able to show is that they want some documents that might help them survive pending

motions to dismiss, amend their complaint, and formulate a litigation and settlement

strategy.  The Lead Plaintiffs have represented to this Court in their Motion Supplement

that they "never did, nor do they now, possess such a motive."  (Mot. Supp. ¶ 13).  In

pleadings filed in the Michigan District Court, however, the Lead Plaintiffs have taken a

contrary position, stating that they should be allowed to amend their complaint after

reviewing the documents.  <u>See</u> Motion For Leave To Amend The Consolidated Class

Action Complaint ("Leave to Amend Mot.") at 12, a copy of which is attached hereto as

<u>Exhibit B</u>.  The "cause" that the Lead Plaintiffs now claim to show is really no different

than the Lead Plaintiffs' true purpose for the discovery articulated by the Debtors in their

Initial Objection—to "get smart" on the Securities Litigation.  (Initial Obj. ¶ 10).

6.     Aside from the Lead Plaintiffs' inability to show cause, the scope of

discovery they request is overly broad and burdensome to the Debtors.  The Partial

Modification Order appears to allow the Lead Plaintiffs, notwithstanding the relevancy and

other limitations of Federal Rule of Civil Procedure 26, to obtain discovery of materials

produced by any defendant to the Securities Litigation (including Delphi Corporation) in

conjunction with the Audit Committee's internal investigation.  This would include a huge

but as yet un-quantified collection of materials never produced to any third party, including

the SEC or Statutory Committees.

7.     The Debtors have collected hundreds of gigabytes of electronic

materials and hundreds of thousands of hard copy pages in connection with subpoenas

from the SEC and an investigation by Delphi's Audit Committee.  Because the totality of

these materials has been only summarily reviewed, the Debtors know only that an

unknown percentage of the materials have been produced to the federal government (under

confidentiality agreements).  And only a very small percentage of this latter production has

been shared with the Statutory Committees (under joint interest agreements).  The

remaining materials, which might number millions of pages of documents, have received

only a limited review for relevance, and essentially no review for privilege, privacy, or

other similar concerns.  And because of the confidentiality and joint interest agreements,

many of the materials produced to the SEC and Statutory Committees have also yet to be

reviewed thoroughly for relevance, privilege, privacy, and the like.  If the Debtors were

6

forced to conduct a massive review of all of these materials for responsiveness, relevancy, privilege, and other similar concerns, it could occupy thousands of hours of attorney time at a very substantial cost. The relief requested by the Lead Plaintiffs would be extremely prejudicial to the estates.

Procedural Background

8.      On July 22, 2004, Delphi received its first subpoena from the SEC. Over the course of several months thereafter the Debtors gathered documents that may have been responsive to the SEC's document requests. Delphi entered into confidentiality agreements with the SEC on November 2, 2004 and January 7, 2005 and a confidentiality agreement with the Department of Justice on April 5, 2005. The Debtors subsequently produced to the SEC the documents described in the Declaration of Joseph E. Papelian, executed on March 2, 2007, in support of the Reconsideration Motion (the "Papelian Declaration"), a copy of which is attached hereto as Exhibit C.

9.      On April 19, 2006, the Debtors entered into a Joint Interest Agreement with the Creditors' Committee, after which the Debtors shared with the Creditors' Committee a subset of the documents produced to the SEC. On approximately July 29, 2006, the Debtors entered into a Joint Interest Agreement with the Equity Committee. The Debtors later shared with the Equity Committee a much more limited set of the documents that had previously been provided to the Creditors' Committee, as directed by this Court in the Equity Committee Joint Interest Agreement Order (Docket No. 4960).

7

10.     On February 15, 2007, the Michigan District Court entered the Partial Modification Order modifying the PSLRA stay.  On March 2, 2007, Delphi and certain of the defendants in the Securities Litigation filed the Reconsideration Motion.

11.     On March 6, 2007, the Lead Plaintiffs filed in this Court their Motion Supplement, renewing their demand that Delphi produce "a copy of all documents and materials Delphi has produced or provided, in connection with any inquiries or investigations relating to Delphi's accounting practices or business affairs, to any of the following:  (a) the Executive branch of the United States Government (including but not limited to the Department of Justice ('DOJ') and the SEC) or (b) Wilmer, Cutler, Pickering, Hale & Dorr ('Wilmer, Cutler') in connection with its representations of the Special Investigative Committee of Delphi's Board of Directors."  (Mot. Supp. ¶ 2.)

Argument

I.     Consideration Of The Motion Remains Premature

12.     On January 5, 2006, this Court allowed the Lead Plaintiffs a limited modification of the Bankruptcy Code's automatic stay to seek relief from the PSLRA stay in the Michigan District Court.  As this Court noted at the hearing on the Motion, the Michigan District Court is the logical gatekeeper of issues related to the PSLRA stay, and this Court should not decide automatic stay issues until the Michigan District Court has ruled on the PSLRA stay.  Accordingly, until the Michigan District Court rules on the Reconsideration Motion, this Court's consideration of the Motion is not ripe for the same reasons described in the Initial Objection and this Court's bench ruling on January 5, 2006.

13.    The Reconsideration Motion is based, in part, on the recent decision

in In re Refco Inc. Sec. Litig., No. 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y.

Aug. 8, 2006), in which the district court denied a motion brought by plaintiffs represented

by the same lead counsel as here, and who made the same arguments in both courts.

14.    As discussed in the Reconsideration Motion, the Refco decision was

entered after the Debtors had completed their briefing on the modification of the PSLRA

stay.  The Refco decision distinguishes the Worldcom decision that was heavily relied on

by the Lead Plaintiffs.  The Refco court decided not to modify the PSLRA stay (despite the

lead plaintiffs' contention that they were unable to make informed decisions about

litigation strategy) and noted that PSLRA actions should be treated differently than other

actions:

> Plaintiffs state that the question for the Court is whether it is
> appropriate to force the Class to wait months while motions to
> dismiss are briefed and decided, while other interested parties . . .
> are reviewing these materials now.  That, however, is not the
> question for the Court.  Whether PSLRA plaintiffs should be
> subjected to a discovery stay while other parties, who are bringing
> claims under other causes of action, are not subjected to a stay is a
> question for Congress, and one that Congress has answered.  Under
> the PSLRA, discovery in this action has been stayed.  That stay
> does not apply to government investigations, bankruptcy
> proceedings, internal investigations, or non-PSLRA actions.  The
> discrepancy between PSLRA actions and other actions is not
> evidence of undue prejudice, but rather is evidence of Congress's
> judgment that PSLRA actions should be treated differently than
> other actions.  This Court may not second-guess that judgment.

Refco, 2006 WL 2337212, at *2.

15.    Under the Michigan District Court local rules, unless the court so

orders, no response to and no oral argument on the Reconsideration Motion are permitted.

Nevertheless, the Debtors believe that the factual similarities between the Refco decision

and the facts before the Michigan District Court are compelling and that this Court's ruling

on the merits of the Lead Plaintiffs' Motion is premature until the Michigan District Court

rules on the Reconsideration Motion.

II.     The Lead Plaintiffs Have Failed To Demonstrate Cause

        16.     If the Court decides that it is appropriate to consider the Motion

before the Michigan District Court rules on the Reconsideration Motion, the Lead

Plaintiffs' request to lift the automatic stay should be denied.[4]  The automatic stay imposed

by section 362 of the Bankruptcy Code is one of the most fundamental and significant

protections that the Bankruptcy Code affords a debtor.  Midlantic Nat'l Bank. v. N.J. Dep't

of Envt'l Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group

Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("automatic stay is key to the collective

and preservative nature of a bankruptcy proceeding").  The automatic stay is designed to,

among other things, give the debtor a "breathing spell" after the commencement of a

chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in

a variety of forums at a time when the debtor's personnel should be focusing on

restructuring.  See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S.

1079 (2000).

        17.     The automatic stay broadly extends to all matters which may have

an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the

opportunity to rehabilitate and reorganize their operation.  See Manville Corp. v. Equity

---

[4]     The automatic stay does not prevent the Lead Plaintiffs from conducting discovery as to all defendants
        (and non-parties) to the Securities Litigation.  The Lead Plaintiffs note in their Motion Supplement that
        they have served document requests on named defendants and non-parties. (Mot. Supp. ¶ 10).

10

Sec. holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); see

also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976)

("Such jurisdiction is 'necessary to exclude any interference by the acts of others or by

proceedings in other courts where such activities or proceedings tend to hinder the process

of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus.

Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors

from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate

so that all creditors and their claims can be assembled in the bankruptcy court for a single

organized proceeding.").

　　　　　18.　　Section 362(d)(1) of the Bankruptcy Code provides that a court may

grant relief from the automatic stay "for cause."  The lifting of the stay for cause is

committed to the sound discretion of the court.  In re Sonnax Indus., 907 F.2d 1280, 1288

(2d Cir. 1990).  In Sonnax, the Court of Appeals explained the burden-shifting regime that

applies to a motion to modify the automatic say:

> The burden of proof on a motion to lift or modify the automatic
> stay is a shifting one.  Section 362(d)(1) requires an initial showing
> of cause by the movant, while Section 362(g) places the burden of
> proof on the debtor for all issues other than the "debtor's equity in
> property," 11 U.S.C. § 362(g)(1).  See 2 Collier on Bankruptcy
> para. 362.10, at 362-76.  If the movant fails to make an initial
> showing of cause, however, the court should deny relief without
> requiring any showing from the debtor that it is entitled to
> continued protection.

Id. at 1285.

　　　　　19.　　The Lead Plaintiffs conflate the cause necessary for lifting the

PSLRA stay with the cause necessary for lifting the automatic stay.  (See Mot. Supp. ¶ 13

("District Court Order leaves no doubt that Lead Plaintiffs have indeed shown 'cause' for

11

the requested relief."); ¶ 20 (stating that Judge Rosen found that balance of harms weighs in favor of modifying automatic stay).)  The Lead Plaintiffs essentially argue that the Michigan District Court's finding of "undue prejudice," a standard for lifting the PSLRA stay, is also cause to modify the automatic stay.  The Lead Plaintiffs' ability to obtain relief from the PSLRA stay in the Michigan District Court is not a substitute for showing cause in this Court; Judge Rosen did not evaluate or apply the Second Circuit's standards for automatic stay relief.  Moreover, the <u>Refco</u> decision calls into question whether the Lead Plaintiffs will in fact suffer any undue prejudice.  The <u>Refco</u> court stated, on facts nearly identical to those in this case, that "plaintiffs' inability to make informed decisions due to lack of access to documents does not rise to the level of undue prejudice." <u>Refco</u>, 2006 WL 2337217, at *2.  Because the Lead Plaintiffs have failed to make the required threshold showing of cause in this Court to modify the automatic stay, their motion should be denied, without requiring further showing by the Debtors.

20.    Moreover, the Lead Plaintiffs are contingent, unliquidated, unsecured creditors of the Debtors, no more and likely much less (due to the mandatory subordination provision of Bankruptcy Code section 510(b)).  Their prepetition action does not grant them any special status as unsecured creditors, nor does it entitle them to any special rights under the Bankruptcy Code.  But based on a reading of the Motion Supplement, one would assume that the Bankruptcy Code's automatic stay provisions do not apply to class action plaintiffs if the PSLRA Stay has been modified.  Potential prejudice to prepetition litigants is not sufficient cause to lift the Bankruptcy Code's automatic stay.  <u>See</u> <u>In re Pioneer Commercial Funding Corp.</u>, 114 B.R. 45, 48 (Bankr.

S.D.N.Y. 1990) ("an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown").

21.    A fundamental purpose of the automatic stay is to allow a debtor and its management to avoid responding to time-consuming, ancillary prepetition litigation matters.  Enforcement of the automatic stay allows the debtor and its management to focus on issues central to the successful restructuring of the debtor.  The standards for modification of the PSLRA stay should not necessarily serve as a bankruptcy court's lens for finding cause to lift the automatic stay.  The PSLRA stay and the automatic stay serve two different purposes.  Modifying the automatic stay requires an examination and weighing of different factors and, at a minimum, a showing of cause by the party requesting relief from the automatic stay.  Because the Lead Plaintiffs have failed to make the required threshold showing of a valid "cause" to modify the automatic stay, their Motion should be denied.

22.    The automatic stay is more than a mere formality:  it is a cornerstone of the Bankruptcy Code, a chapter 11 debtor's shield from litigants and creditor demands.  As demonstrated below, the Lead Plaintiffs have not, and indeed can not, carry the burden of establishing that sufficient cause exists to lift the automatic stay.  Accordingly, the Motion should be denied.

A.    The Competing Interests Of The Debtors Outweigh The Lead Plaintiffs' Interest

23.    Even assuming that the Lead Plaintiffs had advanced a valid cause to modify the automatic stay, the relevant considerations still weigh in favor of keeping the stay intact to preclude discovery of the Debtors in the Securities Litigation.

13

24.     Because of the unstructured nature of the issues that are often

contemplated in lift-stay proceedings, certain courts have used a list of twelve factors when

determining whether cause exists to modify or lift the automatic stay.  See, e.g., In re

Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  In Sonnax, the Second Circuit set

forth the list of twelve factors that may be considered when deciding whether the stay

should be lifted to allow litigation against a Debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the
> issues;  (2) lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has
> assumed full responsibility for defending it; (6) whether the action primarily
> involves third parties; (7) whether litigation in another forum would
> prejudice the interests of other creditors; (8) whether the judgment claim
> arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a
> judicial lien avoidable by the debtor; (10) the interests of judicial economy
> and the expeditious and economical resolution of litigation; (11) whether
> the parties are ready for trial in the other proceeding; and (12) impact of the
> stay on the parties and the balance of harms.

In re Sonnax Indus., 907 F.2d  at 1286.  All twelve factors may not be relevant in every

case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the

Court afford equal weight to each of the twelve factors.  Burger Boys, Inc. v. South St.

Seaport Ltd. Partnership (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

1.     The Balance Of Harms Weighs In The Favor Of The Debtors

25.     The Debtors and their estates would be greatly prejudiced if the

automatic stay were modified to permit the Lead Plaintiff's requested discovery to proceed.

At this stage of these chapter 11 cases, Debtors are faced with numerous critical issues in

connection with their transformation and reorganization plans.  Distractions in responding

14

to Lead Plaintiffs' discovery requests will force the Debtors to divert their attention from these critical tasks.

           (a)    <u>The Lead Plaintiffs Will Not Be Harmed If The Automatic Stay Is Not Modified</u>

26.      As discussed above, the Lead Plaintiffs contend that the "undue prejudice" found in the Michigan District Court shifts the balance of harm in their favor, and constitutes cause for lifting the stay.  The "unique circumstances" that led to the finding of "undue prejudice" in <u>Worldcom</u> were not present in the <u>Refco</u> case and are not present in this case.  <u>See Refco</u>, 2006 WL 2337217, at *3.  Neither the Michigan District Court nor this Court has ordered the Lead Plaintiffs to engage in coordinated settlement discussions with other plaintiffs in other proceedings not bound by the PSLRA stay.  As the <u>Refco</u> court noted, "Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is 'necessary . . . to prevent undue prejudice' that would otherwise result."  <u>Id.</u> at *3 (citation omitted).  Consequently, unlike the <u>Worldcom</u> case where settlement discussions were ordered, the Lead Plaintiffs will suffer no harm from "not keeping pace with the bankruptcy and the SEC action" (Mot. Supp. ¶ 20) if the automatic stay is not lifted to accommodate their discovery demands.

27.      Moreover, the Lead Plaintiffs' claim that they will be "left with nothing" is a red herring.  The Lead Plaintiffs are claimants in the Debtors' chapter 11 cases and will be entitled to a distribution from the Debtors' estates commensurate with their interests in these chapter 11 cases.  The Lead Plaintiffs do not need to liquidate their claim against the Debtors now.  The Lead Plaintiffs only risk "being left with nothing" if their prepetition claim lacks merit.  Again, the circumstances here are quite different than

15

Worldcom. The fact that Delphi has settled the SEC's claims poses no risk to the Lead

Plaintiffs because the SEC imposed no monetary fine or penalty on Delphi. The ability of

Delphi (and certain other defendants) to settle claims is not sufficient cause to lift the

automatic stay and does not cause undue prejudice to the Lead Plaintiffs. See Refco, 2006

WL 2337217, at *2. ("Under the PSLRA, discovery in this action has been stayed. That

stay does not apply to government investigations, bankruptcy proceedings, internal

investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other

actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment

that PSLRA actions should be treated differently than other actions.").

> (b)    Responding To Discovery Requests Will Inequitably Harm The
> Debtors

28.    Responding to the Lead Plaintiffs' requests will be more burdensome

than making some copies and printing some shipping labels. As discussed in the Papelian

Declaration and outlined below, the scope of the Lead Plaintiffs' discovery is exceedingly

broad and would seek production of documents that have not been specifically reviewed by

counsel to Delphi's Audit Committee, WilmerHale,[5] or produced to the SEC.

29.    Delphi's internal investigation collected an immense volume of

documents from numerous sources, including a vast amount of hard copy documents and

electronic information. When the SEC first contacted the Debtors, Mr. Papelian had the

computer back-up tapes for Delphi's headquarters delivered to his office. He later

---

[5]    On August 24, 2004, Delphi formally retained the outside law firm of WilmerHale to assist, among other things, in the collection of documents and with Delphi's internal investigation. WilmerHale engaged forensic accountants PricewaterhouseCoopers ("PwC") to assist in the collection of electronic files. On October 5, 2004, the Audit Committee of Delphi's Board of Directors assumed responsibility for the internal investigation.

provided these tapes to the Audit Committee's agents in connection with its internal investigation.

30.     The Debtors eventually issued more than a dozen internal document search memos in response to several SEC subpoenas.  After collecting more than 700,000 pages of documents and identifying those that were responsive, the Debtors produced, under the agreements between Delphi and the SEC, approximately 576,000 pages (some of which were privileged).

31.     The Audit Committee's agents also imaged the hard drives of computers belonging to 89 Delphi employees, e-mail files for 84 employees, and a subset of the back-up tapes mentioned above.  From these sources, the Audit Committee's agents created a database consisting of more than one million unique email items and more than 400,000 unique user files totaling more than 130 gigabytes of data.  General keyword searches identified 107,881 unique e-mails and attachments and specific keyword searches identified 37,492 unique e-mails and attachments.  The Debtors then produced to the SEC, under the terms of Delphi's agreement with the SEC, the responsive documents (which as mentioned above included certain privileged documents).

32.     As a separate and independent task, WilmerHale electronically culled documents from the complete database (i.e., the original database with more than 130 gigabytes of data) that were addressed to or from or copied an attorney, and the Debtors produced the remainder to the SEC (which accordingly included nonresponsive and irrelevant documents, as well as additional potentially privileged documents).

17

33.     An immense amount of information collected in connection with Delphi's internal investigation was nonresponsive and therefore never specifically reviewed by WilmerHale (or anyone else).  Similarly, WilmerHale personnel did not personally review the electronically-culled database given to the SEC and the vast majority of that database likely contains documents that are not relevant to the claims in the Michigan District Court action and some documents may raise issues of employee privacy or other confidentiality or privilege concerns.  The Lead Plaintiffs, however, seek discovery with respect to all of these items.

34.     The Lead Plaintiffs will undoubtedly assert that they are entitled to the same documents that the Debtors shared with the Statutory Committees.  The Lead Plaintiffs appear to be under the mistaken impression that the Statutory Committees and the SEC received identical sets of documents from the Debtors.  Not true.  A very limited set of documents was shared with the Statutory Committees.  Regardless of the volume of documents shared with the Statutory Committees, as the Refco court noted in the context of the PSLRA stay, "the mere fact that documents have been provided to a third party does not entitle plaintiffs to a modification of the stay to obtain those documents."  Refco, 2006 WL 2337217, at *2.

35.     As discussed above, the documents that Delphi collected and shared with the SEC were voluminous.  Moreover, many of the documents produced to the SEC were not reviewed for relevance, privilege, or privacy issues.  Needless to say, the review of the documents produced to the SEC and the documents collected for Delphi's internal investigation would be time consuming, expensive, and disruptive to the administration of

18

these cases.  In addition, members of Delphi's legal staff (with assistance from

WilmerHale) would necessarily need to be involved in the review of these documents.

These same Delphi personnel are also involved in administering the Debtors' estates and

formulating and negotiating the Debtors' transformation and reorganization plans. [6]

      36.      In their Motion, the Lead Plaintiffs imply that that if discovery is

sought from a debtor, the automatic stay is modified as a matter of course.  (Mot. ¶ 9).  The

Lead Plaintiffs rely on Teledyne Indus., Inc. v. Eon Corp., 373 F. Supp. 191, 203

(S.D.N.Y. 1974), for the proposition that so long as the purpose of the stay is observed,

modification of the stay is warranted.  (Mot. ¶ 12).  The Teledyne ruling was later

distinguished in In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y. 1984), which reasoned

that "Teledyne should not be read as indicating that discovery requests against the

bankrupt will invariably be granted . . . .  [Instead], requests should be upheld *only* when

such discovery will not interfere significantly with the Debtor's reorganization efforts."  Id.

at 223.   The Debtors would suffer prejudice if the Motion were granted because of the

distraction and interference to the Debtors' reorganization efforts that would flow from

allowing the litigation and discovery requests to proceed at these critical stages of these

chapter 11 cases.  In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994)

("When balancing the hardships in lifting the stay, the most important factor is the effect of

such litigation on the administration of the estate; even slight interference with the

_____

[6]    The Debtors acknowledge that although a privilege and work product review of hard copy documents
produced to the SEC would also involve a substantial amount of work on the part of Delphi's internal
counsel, management, and external counsel, such a review would be less burdensome than the review of
all documents collected in Delphi's internal investigation.  For this reason, the production of the estates'
hard copy documents already produced to the SEC (other than those that are privileged or work product)
would limit the burden imposed on the Debtors by the Lead Plaintiffs' requests.

administration may be enough to preclude relief.") (citing <u>In re Curtis</u>, 40 B.R. 795, 806

(Bankr. D. Utah 1984)).

      2.     <u>Lifting The Stay Will Likely Protract The Securities Litigation</u>

      37.     Modification of the stay as requested by the Lead Plaintiffs will not

result in even a partial resolution of the Securities Litigation.  In fact, modification of the

stay ordering the Debtors to produce documents in accordance with the Partial

Modification Order entered by the Michigan District Court will likely produce a number of

disputes surrounding the scope of the documents to be produced to the Lead Plaintiffs.

Subject to the Reconsideration Motion, the Michigan District Court's Partial Modification

Order would allow the Lead Plaintiffs to obtain discovery, subject only to any claim of

privilege or attorney work product, of "materials produced by any of the Defendants in

conjunction with the internal investigation conducted by the Delphi Audit Committee of its

Board of Directors, represented by Wilmer Cutler, outside counsel, and

PriceWaterhouseCooper, forensic accountants."  (Partial Modification Order at 19.)  The

breadth of the Michigan District Court's order facially appears to permit discovery of the

vast category of documents collected in connection with Delphi's internal investigation, but

not produced to any third parties (because they were determined not to be relevant).

      38.     If the scope of discovery ordered by the Michigan District Court is

not clarified, the Partial Modification Order may inadvertently grant the Lead Plaintiffs

access to documents that have never been "produced" in any fashion to anyone beyond the

Company and its outside counsel.  Indeed, a large portion of the materials gathered in the

course of Delphi's internal investigations was deemed nonresponsive and therefore was

20

never specifically reviewed by WilmerHale (or PwC), let alone shared with the SEC or the Statutory Committees.

39.    Moreover, as the Debtors stated in their Initial Objection, lifting the stay may actually protract the litigation as the Lead Plaintiffs use the Debtors' documents to redraft a complaint that should otherwise be dismissed.  In their Motion Supplement, the Lead Plaintiffs contend that their reason for lifting the automatic stay is not fueled by a desire to reshape their complaint.  (See Mot. Supp. ¶ 16.)  That is simply not true. Notwithstanding their assertions in their Motion Supplement, in the Leave to Amend Motion (Exhibit B), the Lead Plaintiffs argue that the PSLRA stay should be lifted, that they should be allowed access to documents provided to the Creditors' Committee and the SEC, and that they should be allowed "to amend the Complaint after an opportunity to review these documents."  (Leave to Amend Mot. at 12.)  The Lead Plaintiffs further allege that these documents (although not having been reviewed by the Lead Plaintiffs) will "reinforce" some of the Lead Plaintiffs' allegations.  (Id.)  The Lead Plaintiffs' true motivation for lifting the automatic stay—obtaining discovery to further amend their complaint—has been evident since the filing of their Motion in November 2005.

40.    The Lead Plaintiffs' desire to review all the documents produced to the Creditors' Committee and the SEC to bolster their complaint is not sufficient cause to lift the automatic stay.  As discussed above, the Debtors will suffer a significant prejudice if they are forced to produce the documents shared with the SEC and the Statutory Committees, many of which have not yet been reviewed for relevance or privilege and thus require review before any production to the Lead Plaintiffs.  The Lead Plaintiffs, on the

21

other hand, will be delayed in conducting discovery (as was intended by the automatic

stay) but will suffer no prejudice if the automatic stay remains in place.

3.    Relief From The Stay Will Not Resolve The Securities Litigation

      41.    Bankruptcy courts have modified the stay to allow litigation to

proceed in another forum if that litigation was at a very advanced stage and trial was

imminent.  See In re Fernstrom Storage & Van Co., 938 F.2d at 737 (finding that "where

the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a

willingness to lift the stay to allow the litigation to proceed").  The theory behind cases

such as Fernstrom Storage is that the non-debtor would be prejudiced—whereas the debtor

would not be prejudiced—by proceeding with the non-bankruptcy litigation if the parties

were on the eve of trial when the debtor commenced its bankruptcy case.  See id. at 737

(finding that "the further along the litigation, the more unfair it is to force the plaintiff

suing the debtor-defendant 'to duplicate all of its efforts in the bankruptcy court.'").

      42.    In stark contrast to the substantial prejudice that the Debtors would

suffer, the Lead Plaintiffs can not show that they would be prejudiced if the Motion were

denied.  The Lead Plaintiffs will face only the ordinary delay that all creditors face in

complex chapter 11 cases (and no more delay than is statutorily mandated in class action

litigation cases).  Creditor delay is inherent in the bankruptcy process, and is an

unavoidable—and intended—consequence of the automatic stay.

      43.    The Lead Plaintiffs argue that the actions in the Michigan District

Court are no longer "nascent."  Although time has passed since the Securities Litigation

was commenced, the actions have not even progressed beyond the pleadings stage since

the Lead Plaintiffs filed the Motion in November 2005.  Delphi and the defendants have

filed motions to dismiss, but those motions remain pending in the Michigan District Court.

The parties in the Securities Litigation still remain nowhere close to being ready for trial.

It is obvious that the Securities Litigation remains in its infancy and there will be no

prejudice in continuing the automatic stay.[7]

        4.      <u>Judicial Economy Will Not Be Served By Lifting The Stay</u>

        44.      Relief from the stay does not guarantee an expeditious and

economical resolution of the Lead Plaintiffs' action.  In fact, the opposite will most likely

occur if the stay is lifted—with the Debtors litigating multiple issues in both this Court and

the Michigan District Court.  As noted above, without clarification of the Partial

Modification Order, the Debtors will likely be involved in significant disputes regarding

the scope of the discovery allowed in the Securities Litigation.  This outcome of

uncoordinated litigation on several fronts in different courts is what the automatic stay was

designed to avoid.  <u>See</u>, <u>e.g.</u>, <u>In re Chateaugay Corp.</u>, 93 B.R. 26, 30 (S.D.N.Y. 1988)

(noting that the automatic stay is intended to prevent "chaotic and uncontrolled scramble

for the debtor's assets in a variety of uncoordinated proceedings in different courts").

Consequently, the relief requested in the Motion should be denied.

III.    The Fundamental Purpose Of The Automatic Stay
        <u>Would Be Violated If The Stay Were Modified</u>

        45.      The fundamental purpose of the stay imposed by section 362(a)(i) of

the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the

time and an opportunity "to attempt a repayment or reorganization plan."  <u>Borman v.</u>

---

[7]    The Lead Plaintiffs state that the Securities Litigation is "now poised to proceed with particularized discovery, unhindered by the PSLRA stay."  (Supp. Mot. ¶ 19.)  Judge Rosen limited the modification of the PSLRA stay, as described on pages 18 and 19 of the Partial Modification Order.

Raymark Indus., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th

Cong., 1st Sess. 340 (1977)).  Section 362(a)(i), therefore, stays pending prepetition

litigation to "forestall the depletion of the debtor's assets due to legal costs in defending

proceedings against it," and "avoid interference with the. . . rehabilitation of the debtor."

Borman, 946 F.2d at 1036 (quoting Association of St. Croix Condominium Owners v. St.

Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

46.     The Motion is clearly inconsistent with the fundamental purpose of

the automatic stay.  The Debtors' management and in-house legal team, in particular, are

already taxed with the responsibility of negotiating and formulating the Debtors'

transformation and reorganization plans.  As this Court is aware, the Debtors have made

significant progress in formulating a potential reorganization plan framework, but much

work remains to be done.  Modification of the automatic stay at this stage would force the

Debtors and several critical members of management to divert their attention from the

critical issues that require all of their time and energy in these stages of the Debtors'

chapter 11 cases.

Conclusion

47.     For the reasons set forth above, the Motion should be denied.  The

Lead Plaintiffs have not demonstrated cause for lifting the automatic stay.  A balancing of

the competing interests of the Debtors and the Lead Plaintiffs demonstrates that the

automatic stay should not be modified to permit the Lead Plaintiffs to proceed with

discovery as requested in their Motion.  To the extent that this Court modifies the

automatic stay, to protect the estates from the undue burden imposed by the Lead Plaintiffs'

24

requests, the stay should be lifted at most only as to the estates' hard copy documents already produced to the SEC (other than those that are privileged or constitute work product).

Memorandum Of Law

48.     Because the legal points and authorities upon which this Supplemental Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) denying the Motion and (ii) granting them such other and further relief as is just.

Dated:      New York, New York
            March 19, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP


                                        By:   /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 4951)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                  - and -


                                        By:   /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession


26

# **Exhibit A**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
---------------------------------------------------------x
                                      :
                                      :
                                      :
IN RE: DELPHI CORPORATION             :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"      :      Master Case No. 05-md-1725
LITIGATION                            :      Hon. Gerald E. Rosen
                                      :
                                      :      This Document Relates to:
                                      :      In Re: Delphi Corp. Securities Litig.
                                      :      No. 06-10026
                                      :
---------------------------------------------------------x      ORAL ARGUMENT REQUESTED
```

### MOTION OF CERTAIN DEFENDANTS FOR RECONSIDERATION OF
### THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY

Defendants Delphi Corporation, Donald S. Runkle, John D. Sheehan, Robert H.
Brust, Thomas H. Wyman, Oscar de Paula Bernardes Neto, John D. Opie, Cynthia A. Niekamp,
Susan A. McLaughlin, Roger S. Penske, Patricia C. Sueltz, Virgis W. Colbert, David N. Farr,
Shoichiro Irimajiri, Bernd Gottschalk, Delphi Trust I, and Delphi Trust II, through their
undersigned attorneys, move for reconsideration of the Court's order lifting the PSLRA
discovery stay, pursuant to Local Rule 7.1(g)(3) of the United States District Court for the
Eastern District of Michigan. This motion is based upon the following: Memorandum of Law of
Certain Defendants in Support of Their Motion for Reconsideration of the Court's Order Lifting
the PSLRA Discovery Stay; the Declaration of Joseph E. Papelian dated March 2, 2007; and the
arguments of counsel herein. The undersigned attorneys conferred with counsel for plaintiffs
and explained the nature of this motion and requested concurrence on the relief sought but did
not obtain such concurrence.

Dated:  March 2, 2007

Respectfully submitted,

SHEARMAN & STERLING LLP

By: <u>s/ Stuart J. Baskin</u>
    Stuart J. Baskin
    Brian H. Polovoy
    Marc D. Ashley
599 Lexington Avenue
New York, New York  10022-6069
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
sbaskin@shearman.com

Joseph E. Papelian (P26582)
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098-2815
Telephone:  (248) 813-2535
Facsimile:  (248) 813-3251
joseph.e.papelian@delphi.com

*Attorneys for Defendants Delphi
Corporation, Donald S. Runkle, John D.
Sheehan, Robert H. Brust, Thomas H.
Wyman, Oscar de Paula Bernardes Neto,
John D. Opie, Cynthia A. Niekamp, Susan A.
McLaughlin, Roger S. Penske, Patricia C.
Sueltz, Virgis W. Colbert, David N. Farr,
Shoichiro Irimajiri, Bernd Gottschalk,
Delphi Trust I, and Delphi Trust II*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

```
-----------------------------------------------------------x
                                          :
                                          :
                                          :    MDL No. 1725
IN RE: DELPHI CORPORATION                 :    Master Case No. 05-md-1725
SECURITIES, DERIVATIVE & "ERISA"          :    Hon. Gerald E. Rosen
LITIGATION                                :
                                          :    This Document Relates to:
                                          :    In Re: Delphi Corp. Securities Litig.
                                          :    No. 06-10026
                                          :
-----------------------------------------------------------x    ORAL ARGUMENT REQUESTED
```

**MEMORANDUM OF LAW OF CERTAIN DEFENDANTS
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF
THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY**

Stuart J. Baskin                    Joseph E. Papelian (P26582)
Brian H. Polovoy                    Delphi Corporation
Marc D. Ashley                      5725 Delphi Drive
SHEARMAN & STERLING LLP             Troy, Michigan  48098-2815
599 Lexington Avenue                Telephone:  (248) 813-2535
New York, New York  10022-6069      Facsimile:  (248) 813-3251
Telephone:  (212) 848-4000          joseph.e.papelian@delphi.com
Facsimile:  (212) 848-7179
sbaskin@shearman.com

*Attorneys for Defendants Delphi Corporation,
Donald S. Runkle, John D. Sheehan, Robert H. Brust,
Thomas H. Wyman, Oscar de Paula Bernardes Neto,
John D. Opie, Cynthia A. Niekamp,
Susan A. McLaughlin, Roger S. Penske,
Patricia C. Sueltz, Virgis W. Colbert, David N. Farr,
Shoichiro Irimajiri, Bernd Gottschalk,
Delphi Trust I, and Delphi Trust II*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

CONCISE STATEMENT OF ISSUES PRESENTED.................................................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..................................................... iv

PRELIMINARY STATEMENT .................................................................................................. 1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ........................................................ 3

LEGAL STANDARD................................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

      I.     THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT LEAD
            PLAINTIFFS ADEQUATELY DEMONSTRATED "UNDUE PREJUDICE".... 6

      II.    IF NOT RECONSIDERED, THE ORDER SHOULD BE CLARIFIED SO
            THAT LEAD PLAINTIFFS DO NOT RECEIVE DOCUMENTS THAT
            WERE NOT SPECIFICALLY REVIEWED AND PRODUCED TO THE
            SEC .............................................................................................................. 11

CONCLUSION.......................................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES          Page

DirecTV v. Karpinsky, 274 F. Supp. 2d 918 (E.D. Mich. 2003)...................................5, 6

In re FirstEnergy Corp. Sec. Litig., 229 F.R.D. 541 (N.D. Ohio 2004) ..........................9

Flanagan v. Shamo, 111 F. Supp. 2d 892 (E.D. Mich. 2000).......................................5, 6

Ford Motor Co. v. Greatdomains.Com, Inc., 177 F. Supp. 2d 628 (E.D. Mich. 2001) ...................5

McDowell v. Dynamics Corp. of America, 931 F.2d 380 (6th Cir. 1991) ......................................6

Newby v. Enron Corporation, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002).........................6, 7

In re Refco, Inc. Sec. Litig., No. 05-CV-8626, 2006 WL 2337212
    (S.D.N.Y. Aug. 8, 2006) ....................................................................... *passim*

Singer v. Nicor, Inc., No. 02-CV-5168, 2003 WL 22013905
    (N.D. Ill. Apr. 23, 2003) ....................................................................7

In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2006 WL 1738078
    (S.D.N.Y. June 26, 2006)....................................................................9

Trustees of the Flint Area Sheet Metal Workers Health and Welfare Fund v. C3
    Mechanical, Inc., 450 F. Supp. 2d 762 (E.D. Mich. 2006)................................................6

In re WorldCom, Inc. Securities Litigation, 234 F. Supp. 2d 301
    (S.D.N.Y. 2002) .................................................................................. *passim*

### RULES

E.D. Mich. LR 7.1(g)(3) ...........................................................................................5

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Should this Court reconsider its ruling granting Lead Plaintiffs' motion to modify the PSLRA discovery stay because Lead Plaintiffs did not adequately demonstrate "undue prejudice"?

    Answer:  "Yes"

2.      Should this Court, if not reconsidering its ruling in its entirety, clarify its ruling to deny Lead Plaintiffs access to documents that were never specifically reviewed and produced to third-parties?

    Answer:  "Yes"

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

In re Refco, Inc. Securities Litigation, No. 05 Civ. 8626 (GEL), 2006 WL 2337212
      (S.D.N.Y. Aug. 8, 2006)

Defendants Delphi Corporation ("Delphi" or the "Company"), Donald S. Runkle, John D. Sheehan, Robert H. Brust, Thomas H. Wyman, Oscar de Paula Bernardes Neto, John D. Opie, Cynthia A. Niekamp, Susan A. McLaughlin, Roger S. Penske, Patricia C. Sueltz, Virgis W. Colbert, David N. Farr, Shoichiro Irimajiri, Bernd Gottschalk, Delphi Trust I, and Delphi Trust II respectfully submit this memorandum of law in support of their motion for reconsideration of the Court's February 15, 2007 order granting Lead Plaintiffs' motion to modify the PSLRA discovery stay (the "Order") (Dkt. No. 198).

Defendants request oral argument on this motion.

## PRELIMINARY STATEMENT

The Court's Order modifying the PSLRA's statutory discovery stay represents a departure from law which continues to develop that limits the "exceptional circumstances" in which the PSLRA stay is lifted.  It could cause Delphi, a Chapter 11 debtor against whom the case is stayed, to incur extraordinary legal fees to review millions of pages of documents --- most of which have nothing to do with the claims here and which have not been produced to any party in Delphi's bankruptcy proceedings.

We respectfully request that the Court reconsider its Order in light of additional factual information and a case decided after briefing was completed.  As the Court recognized, Lead Plaintiffs' requested relief is not necessary to preserve evidence.  The Court should reconsider Lead Plaintiffs' argument that the Southern District of New York's decision in WorldCom supports a finding that Lead Plaintiffs would suffer "undue prejudice" absent relief from the stay.  In fact, after briefing on the motion in this Court was completed, the Southern District of New York refused to extend WorldCom to cases such as the one here.  In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006).  Refco is on all fours with this case:  the plaintiffs there --- who were represented by the same Lead

Counsel as here and who made the same arguments in both courts --- similarly sought to lift the

PSLRA discovery stay to obtain documents that defendants (including the debtor) produced to

the SEC, the Official Committee of Unsecured Creditors, and in an internal investigation.  The

court rejected plaintiffs' counsel's (verbatim) plea that, absent relief, the securities plaintiffs

would be "the only major interested party in the . . . proceedings . . . without access to documents

that currently form the core of those proceedings."  The court held that the extraordinary finding

of "undue prejudice" in <u>WorldCom</u> was ***not*** based on the fact that the documents had already

been produced to other parties or that there were various settlement discussions, but solely

"resulted from the fact that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had

been ***ordered*** to prepare for coordinated settlement discussions," a situation not present in <u>Refco</u>

or here.  <u>Refco</u>, 2006 WL 2337212 at *3 (emphasis added).  Lead Plaintiffs did not bring <u>Refco</u>

to the Court's attention when they submitted further briefing on this issue on November 28,

2006.

       The Court should also reconsider its decision because it is apparently based on the

erroneous assumption that Lead Plaintiffs are "losing ground" in light of settlements connected

with the SEC investigation and Delphi's bankruptcy proceedings.  Although Delphi settled with

the SEC, that settlement involved no monetary payment.  The other defendants making this

motion were not even named in the SEC complaint.  The other proceeding referenced in the

Order --- a request by the Official Committee of Unsecured Creditors ("UCC") for authority to

file a lawsuit --- made plain that the UCC's purpose was "not actually to file the Complaint at

th[at] time" (indeed, the Complaint was never filed), but rather solely "to ensure that the

Committee . . . has a seat at the table in the negotiations  . . . between the Debtors and ***GM*** with

respect to GM's contributions to, and claims in respect of, the Debtors' 'transformation.'"

Because the UCC did not file its complaint --- and GM is not a defendant in this case --- the

UCC's motion cannot create "undue prejudice" to plaintiffs.  In any event, settlement has not

even been broached with the plaintiffs in the related ERISA action here, and there is certainly no

court-ordered coordinated settlement discussions of the WorldCom variety.  Lead Plaintiffs face

no "undue prejudice."

If the Court does not reconsider its ruling, we ask the Court to clarify the Order to

state that Lead Plaintiffs are not entitled to documents collected pursuant to Delphi's internal

investigation that have not been produced to the SEC or that have not been specifically identified

as relating to the SEC's investigation or the claims in this action.  The Order arguably allows

Lead Plaintiffs to obtain a tremendous volume of documents that were merely swept up by

Delphi's internal investigation but deemed unresponsive as part of that investigation.  The vast

majority of these documents has nothing to do with the claims in this action, which is reason

enough that a debtor should not have to review or produce them.  In any event, these documents,

like all the documents, would be subject to an extremely time-consuming and expensive review

for privilege.  At a minimum, the Court should clarify that its Order was not intended to afford

Lead Plaintiffs an advantage over all other concerned parties, including the SEC and interested

parties in Delphi's bankruptcy proceedings, by permitting discovery of documents not produced

to the SEC or that have not been specifically identified as relevant to the SEC's investigation or

the claims in this action.

## **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

On July 22, 2004, the SEC served a subpoena upon Delphi and a document

collection effort was immediately undertaken.  (See Declaration of Joseph E. Papelian dated

March 2, 2007 ("Papelian Decl.").)  On August 24, 2004, Delphi formally retained the law firm

of WilmerHale to assist with document collection and with Delphi's internal investigation.

WilmerHale engaged forensic accountants from PricewaterhouseCoopers ("PwC") to assist in

the document collection efforts.  The Audit Committee of Delphi's Board of Directors soon

thereafter assumed responsibility for the Company's internal investigation.  (See id. at ¶ 6.)

        In connection with Delphi's internal investigation overseen by WilmerHale, an

immense volume of documents was collected from numerous sources, totaling over 700,000

pages of documents and a vast amount of electronic information.  (See id. at ¶ 9.)  A database of

over 1,000,000 e-mail items and 400,000 user files totaling over 130 gigabytes of data was

created from a subset of the electronic information gathered.  (See id.)  From this database, a

subset of e-mails and attachments responsive to general and specific search terms was reviewed

by WilmerHale for purposes of the internal investigation.  (See id. at ¶ 11.)  Eventually, in

response to several subpoenas from the SEC, approximately 576,000 pages of documents were

produced to the SEC on a rolling basis along with a subset of the database of e-mails and user

files referred to above from the electronic information that was gathered.  (See id. at ¶¶ 11-12.)

An immense amount of information collected in connection with Delphi's internal investigation

was deemed nonresponsive and therefore never specifically reviewed by WilmerHale or PwC (or

anyone else).  The database to which the SEC was given access similarly was not specifically

reviewed, and the vast majority of that database likely contains documents that are not relevant

to the claims in this action.

        On March 10, 2006, Lead Plaintiffs filed a motion to modify the PSLRA

discovery stay and sought oral argument (Dkt. No. 60).  Defendants filed opposition papers on

May 12, 2006 and similarly requested oral argument (Dkt. Nos. 111, 112, 117, 118, 122-125).

Lead Plaintiffs filed an omnibus reply brief on June 12, 2006 (Dkt. No. 137).  That brief did not

mention, much less distinguish, any of the cases cited in defendants' opposition memoranda,

instead making a plea (based on <u>WorldCom</u>) that the stay should be lifted so that they do not

"fall behind."

On August 2, 2006, Lead Plaintiffs filed a supplemental letter brief making

additional arguments based on filings made by the UCC in Delphi's bankruptcy proceedings.

Six days later, on August 8, 2006, the <u>Refco</u> court rejected the same arguments that Lead

Counsel here had submitted on behalf of their clients in that case.  On November 28, 2006, Lead

Plaintiffs submitted a brief in support of their motion for leave to further amend their complaint

and, in that brief, presented further arguments in favor of lifting the PSLRA discovery stay (Dkt.

No. 180 at 10-12.)  Although <u>Refco</u> had been decided three months earlier (and their <u>Refco</u> briefs

had explicitly referred to the Delphi case), Lead Plaintiffs did not cite to <u>Refco</u> in that (their

fourth) submission.

The Court issued its Opinion and Order on February 15, 2007.

## <u>LEGAL STANDARD</u>

Local Rule 7.1(g)(3) generally requires a party moving for reconsideration to (1)

"demonstrate a palpable defect by which the court and the parties have been misled" and (2)

"show that correcting the defect will result in a different disposition."  E.D. Mich. LR 7.1(g)(3).

Motions for reconsideration pursuant to this rule are granted in appropriate circumstances.  <u>See,</u>

<u>e.g.</u>, <u>Ford Motor Co. v. Greatdomains.Com, Inc.</u>, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001)

(granting reconsideration based on legal error); <u>DirecTV v. Karpinsky</u>, 274 F. Supp. 2d 918, 920

(E.D. Mich. 2003) (granting reconsideration upon introduction of evidence that "would warrant a

different disposition of [defendant's] motion"); <u>Flanagan v. Shamo</u>, 111 F. Supp. 2d 892, 895

(E.D. Mich. 2000) (granting reconsideration where subsequently-filed transcripts disproved

factual basis for ruling).  Moreover, notwithstanding the requirements of the Local Rule, the

Court has broad discretion to reconsider its prior rulings.  <u>See</u> E.D. Mich. LR 7.1(g)(3);

<u>McDowell v. Dynamics Corp. of America</u>, 931 F.2d 380, 382 (6th Cir. 1991) (district court can

consider motion for reconsideration not encompassed by procedural rule).

This Court has found a "palpable defect" to exist warranting reconsideration

where there was a "clear error of law" (<u>Trustees of the Flint Area Sheet Metal Workers Health</u>

<u>and Welfare Fund v. C3 Mechanical, Inc.</u>, 450 F. Supp. 2d 762, 765 (E.D. Mich. 2006)), or

where the earlier ruling had an erroneous factual premise (<u>Flanagan</u>, 111 F. Supp. 2d at 895;

<u>DirecTV</u>, 274 F. Supp. 2d at 920).  This Court also grants motions for reconsideration to prevent

manifest injustice.  <u>Id.</u>  This legal standard warrants reconsideration of the Order on the basis of

both legal and factual defects.

## <u>ARGUMENT</u>

**I.    THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT LEAD
       PLAINTIFFS ADEQUATELY DEMONSTRATED "UNDUE PREJUDICE"**

Courts have made clear that the PSLRA discovery stay may only be lifted in

"exceptional circumstances" and that the burden of showing such exceptional circumstances "is a

heavy one."  (<u>See</u> Dkt. No. 123 at 5.)  After rejecting Lead Plaintiffs' argument that lifting the

discovery stay was necessary to preserve evidence, the Court concluded that modifying the stay

was warranted because Lead Plaintiffs faced the prospect of "'being left with nothing' if this

litigation does not keep pace with the bankruptcy and the SEC action."  (Order at 16.)  A ruling

issued after the conclusion of briefing on Lead Plaintiffs' motion clarifies that the cases on which

Lead Plaintiffs and the Court relied (<u>WorldCom</u>, <u>Enron</u>, and two others) should not be extended

to the facts of this case, and that "exceptional circumstances" are not present here.

In <u>In re WorldCom, Inc. Securities Litigation</u>, 234 F. Supp. 2d 301, 305

(S.D.N.Y. 2002), the primary case upon which the Court (and Lead Plaintiffs) relied (<u>see</u> Order

at 9, 11, 12, 15, 16, and 17), the court explicitly stated that, based on the "unique circumstances"

of the case, prohibiting discovery would unduly prejudice plaintiffs in a "rapidly shifting

landscape."  In <u>Newby v. Enron Corporation</u>, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002), the

court did not address the issue of whether plaintiffs would suffer "undue burden," but lifted the

PSLRA stay where the bankruptcy court had previously lifted the automatic stay and defendants

would not be burdened.  This Court held that "[i]t was precisely because the defendants in <u>Enron</u>

and <u>WorldCom</u> were bankrupt and subject to other civil lawsuits that a partial lifting of the

PSLRA stay was necessary 'to prevent the securities plaintiffs from being left with nothing if

their litigation did not keep pace with the bankruptcy and other proceedings.'"  (Order at 16,

quoting <u>Singer v. Nicor, Inc.</u>, No. 02-CV-5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23,

2003).)

      The language in <u>Singer</u>, however, was the defendants' argument, not the holding,

and a subsequent case from the Southern District of New York makes plain that that the

<u>WorldCom</u> decision was ***not*** based on the fact that WorldCom was "bankrupt and subject to

other civil lawsuits."

      In <u>Refco</u>, <u>supra</u>, which similarly concerned a company in bankruptcy that was

involved in regulatory investigations, plaintiffs in a consolidated securities action sought all

documents produced to all "regulatory, governmental or investigative agencies or other private

parties involved in reviewing the facts and circumstances giving rise to Refco's demise,"

including the SEC, U.S. Attorney's Office, the bankruptcy examiner, and the Official Committee

of Unsecured Creditors.  <u>Id.</u> at *1. The <u>Refco</u> plaintiffs' brief --- submitted by the same Lead

Counsel in this case --- made the same arguments as do Lead Plaintiffs here.  <u>Compare</u> 2006 WL

1792940 <u>and</u> 2006 WL 2301721 (<u>Refco</u> plaintiffs' briefs) <u>with</u> Dkt. No. 60.

Although settlement discussions were occurring in <u>Refco</u>, the court clarified that the "unique circumstances" that gave rise to "undue prejudice" in <u>WorldCom</u> were solely the "court-ordered coordinated" settlement discussions involving ERISA plaintiffs who had received documents not made available to the securities plaintiffs:

> Here [as in <u>WorldCom</u>], plaintiffs seek to obtain documents that have already been produced (or will be produced) to other parties. However, the fact that the documents had already been produced was not itself the basis for the Court's lifting of the stay in <u>WorldCom</u>. . . .
>
> In <u>WorldCom</u>, the stay was lifted because the Court determined that "the documents requested by [plaintiffs] must be produced in order to prevent undue prejudice to the interests of the putative investor class." <u>Id.</u> at 305. ***This undue prejudice resulted from the fact that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had been ordered to prepare for coordinated settlement discussions.*** . . .
>
> ***In this matter, as in <u>WorldCom</u>, plaintiffs and other parties are apparently engaged in settlement discussion with various defendants. That fact alone, however, does not create the "undue prejudice" necessary to lift the stay.*** If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the "undue prejudice" provision would essentially eviscerate the stay requirement. That is not what Congress intended. The Court in <u>WorldCom</u> recognized this fact, in holding that "unique circumstances" present in that case necessitated the lifting of the stay. <u>Id.</u> at 305. Those unique circumstances were the court-ordered coordinated settlement discussions, and the "very real risk" that the defendants, after settling with other parties, would "no longer have anything or at least as much to offer" plaintiffs.

2006 WL 2337212, at *3 (emphasis added).

In distinguishing <u>WorldCom</u> and rejecting plaintiffs' argument that they were "prejudiced by their inability to make informed decisions about their litigation strategy in a rapidly shifting landscape" (2006 WL 2337212, at *2), the <u>Refco</u> court noted:

> Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this [securities] action has been stayed. That stay does not apply to government investigators, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions

and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.

<u>Id.</u> Thus, in a decision issued subsequent to the parties' briefing that is not cited in the Order, the Southern District of New York has clarified that the <u>WorldCom</u> discovery ruling is limited to unique facts in which securities plaintiffs are ordered to engage in settlement discussions without being privy to the same documents the other plaintiffs have.

The "unique" circumstances of court-ordered coordinated settlement discussions present in <u>WorldCom</u> are absent here. As in <u>Refco</u> (which is on all fours with this action), Delphi has produced certain documents to government authorities and bankruptcy creditors, but not to Lead Plaintiffs (or ERISA plaintiffs). As a matter of law, that is not "undue prejudice," and it is not an "exceptional circumstance" that would justify modifying the PSLRA discovery stay.[1]

The Court should also reconsider its decision in light of facts concerning settlements that demonstrate that they do not constitute "exceptional circumstances" or give rise to "undue prejudice" to Lead Plaintiffs. First, the SEC's action does not "unduly prejudice" Lead Plaintiffs: Delphi settled with the SEC without any monetary payment whatsoever. The other 16 defendants making this motion were not even named in the SEC's Complaint. Of the 18

---

[1]   The other case the Court referenced, <u>In re FirstEnergy Corp. Sec. Litig.</u>, 229 F.R.D. 541 (N.D. Ohio 2004), involved a situation where defendants did ***not*** assert that producing the requested documents would impose any burden on them. In any event, that court provided no analysis for its finding that plaintiffs would be prejudiced in pursuing "litigation and settlement strategies" if the discovery stay were maintained. Our opposition submission listed numerous cases prior to <u>Refco</u> that uniformly stand for the proposition that the fact that certain documents have been produced to the government or other third parties does not justify lifting the PSLRA's discovery stay. Similarly, in <u>In re Smith Barney Transfer Agent Litig.</u>, No. 05 Civ. 7583 (WHP), 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006), the court declined to lift the PSLRA stay, holding that prior production of documents to the SEC or harm to plaintiffs' settlement posture was irrelevant, and noting that the "exceptional circumstances" in <u>WorldCom</u> included "settlement discussions in related ERISA proceedings [that] were moving forward by court order." While <u>Smith Barney</u> noted in dicta that <u>WorldCom</u> involved an insolvent party, <u>Refco</u> states that the "undue prejudice" in WorldCom resulted from "the facts that the PSLRA plaintiffs and the plaintiffs in a related ERISA action had been ordered to prepare for coordinated settlement discussions," which is not present here.

other defendants in this action, two settled with the SEC and agreed to pay a total of $1.25

million; three are defending against the SEC's charges.  (Order at 4 & n.5.)[2]

The UCC's threatened suit similarly does not "unduly prejudice" Lead Plaintiffs:

In seeking authority to file a lawsuit against GM and certain Delphi officers and directors, the

UCC made plain that its purpose was "not actually to file the Complaint at th[at] time," but

rather solely "to ensure that the Committee . . . has a seat at the table in negotiations . . . between

the Debtors and GM with respect to GM's contributions to, and claims in respect of, the Debtors'

'transformation.'"  (UCC Motion dated July 27, 2006 ¶ 4.)  What plaintiff did not say when they

filed their fourth submission on November 28, 2006 was that the UCC had not, in fact, filed any

Complaint.  Indeed, to date, the UCC has not filed any Complaint, and the UCC's motion for

leave to file the suit has been adjourned.  The individuals making this motion are not named in

any lawsuits relating to Delphi other than this one and (with respect to certain of these

individuals) the derivative actions and the consolidated ERISA suit in this Court.  There have

been no settlement discussions with the ERISA plaintiffs.  Thus, as made clear by <u>Refco</u>, Lead

Plaintiffs have suffered no "undue prejudice" that could warrant modifying the discovery stay.[3]

---

[2]   The Order states:  "Given that several of the Defendants in this case have already consented to substantial money judgments in the SEC case, Lead Plaintiffs here already face the prospect that they may not be able to recover from those Defendants in this action because of the substantial consent judgments they have taken in the SEC case." (Order at 16-17.)  Only 3 of the 35 defendants in this case have consented to judgment, and Delphi's consent judgment calls for no monetary payment.  In any event, there is no evidence in the record that would suggest that the consent judgments entered by two individuals affects plaintiffs' ability to recover from those defendants in this case. Moreover, given that those individuals have already consented to judgment, lifting the stay at this point could not change their ability to pay.

[3]   The Order states that "Defendants, however, overlook the fact that settlements have already occurred in the SEC cases and settlement discussions are ongoing in the bankruptcy action."  (Order at 16.)  As the Order notes elsewhere, however, the SEC action was not even filed until October 30, 2006, months after briefing on this motion was completed. (Order at 4.)  As noted above, Delphi's settlement included no monetary payment, and the other movants here are not named in the SEC's suit.  It is not clear what "settlement discussions" in the bankruptcy action the Court is referring to, but potential claims against GM are not relevant here, and discussions towards a plan of reorganization are present in every Chapter 11 and do not constitute "exceptional circumstances."  In any event, there is no basis for relief today simply because "it might come to pass that, at some future date, plaintiffs' lack of access to discovery will prejudice them in settlement discussions with some other defendant, resulting in some risk that the defendant might not have sufficient funds to satisfy plaintiffs' claims."  <u>Refco</u>, 2006 WL 2337212, at *3.

II.    **IF NOT RECONSIDERED, THE ORDER SHOULD BE CLARIFIED SO THAT
LEAD PLAINTIFFS DO NOT RECEIVE DOCUMENTS THAT WERE NOT
SPECIFICALLY REVIEWED AND PRODUCED TO THE SEC**

Even if this Court does not reconsider the Order in its entirety, we ask the Court

to clarify and narrow the Order to ensure that Lead Plaintiffs are not entitled to discovery of

Delphi documents to which no one outside the Company and its counsel have had access.  The

portion of the Order granting Lead Plaintiffs discovery of "materials produced by any of the

Defendants in conjunction with the internal investigation conducted by the Delphi Audit

Committee of its Board of Directors, represented by Wilmer Cutler, outside counsel, and

PriceWaterhouseCooper, forensic accountants" (Order at 19) can arguably be understood to

encompass the vast category of documents collected in connection with Delphi's internal

investigation, but not produced to third parties (because they were determined not to be relevant).

Although the Court's intention in this regard is unclear, the Order may thereby

inadvertently grant Lead Plaintiffs access to documents that have never been "produced" in any

fashion to anyone beyond the Company and its counsel.  Indeed, a large portion of the materials

swept up by Delphi's internal investigation was deemed nonresponsive and therefore was never

even specifically reviewed by WilmerHale or PwC, let alone shared with the SEC or with

Delphi's creditors.  To the extent that the Order mandates the production of this second category

of internal investigation documents because the Court believed that such materials have already

been produced to third parties, the Order is premised on a factual defect that should be clarified

and corrected.  The Order should not confer a considerable advantage on the Lead Plaintiffs ---

and impose a substantial burden on Delphi --- that would extend well beyond the purported

rationale of leveling the playing field.

As detailed in the accompanying declaration of Joseph E. Papelian, WilmerHale

and PwC assisted the Company's in-house legal personnel in collecting documents in connection

with the internal investigation eventually conducted by the board's Audit Committee.  A subset

of the hard-copy documents collected and a subset of the electronic documents swept up by the

response to the SEC subpoenas and by the internal investigation were ultimately produced or

made available to government authorities (and small subsets of these documents were produced

to the UCC and official equity committee in Delphi's bankruptcy proceedings).  However, the

much larger body of materials from which those subsets were culled has never been turned over

in wholesale fashion to anyone outside the Company.  Rather, only certain of those materials

were produced to the SEC.

      Indeed, a large amount of electronic information not deemed to be relevant was

not imaged by PwC.  Furthermore, the majority of the imaged documents collected in the

database produced to the SEC was not responsive to search terms employed to narrow the vast

scope of the materials and was, thus, never even specifically reviewed by WilmerHale or PwC.

(See Papelian Decl. ¶¶ 9-12.)  Because the majority of the internal investigation materials have

either not been produced by Delphi to anyone, including the SEC, the UCC, or Delphi's Equity

Committee, or have been produced to the SEC in a database without being specifically reviewed

for relevance, Lead Plaintiffs should not gain access at this time to those documents or the

database that Delphi made available to the SEC.

      Moreover, to the extent that the Order contemplates production of materials never

produced by Delphi to any third parties and information provided to the SEC but not specifically

reviewed by WilmerHale or PwC, it would impose a substantial and unnecessary burden,

particularly in light of Delphi's debtor status.  If Delphi is ultimately forced to conduct a massive

review of a voluminous group of materials for both responsiveness and privilege, this could

occupy thousands of hours of attorney time at a cost of many millions of dollars --- all to review

tremendous volumes of documents, much of which have nothing to do with the claims in this
action.

Clearly, the Order's rationale does not extend to documents that have never been
made available to anyone beyond the Company and its counsel.  Granting Lead Plaintiffs access
to the non-privileged documents in the first category of documents outlined in the Order
("materials already produced to the SEC, DOJ, FBI and U.S. Postal Inspector") would certainly
cure any theoretical "undue prejudice" to which Lead Plaintiffs may possibly be subject.  But
this should not include the additional database made available to the SEC because there is no
basis to assume that these documents relate to the claims or defenses in this action and are
discoverable.  The debtor should not be forced to review for responsiveness and privilege a
massive database simply because it was made available to regulators.  Lead Plaintiffs should not
gain an unfair advantage that would gut the very purpose of the PSLRA discovery stay.  Refco,
2006 WL 2337212, at *2.

Therefore, if the Court declines to follow Refco and finds that the "exceptional
circumstances" warranting lifting the discovery stay are present here, the Order should
nevertheless be narrowed.  Even if limited as requested here, a privilege review would be
extremely time-consuming and expensive.  Given that the Federal Rules limit discovery in any
event to documents relevant to the claims and defenses in this action, it cannot be that plaintiffs
are entitled to a given universe of documents simply because those documents were simply
collected or turned over to another party.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reconsider and reverse its Order

modifying the PSLRA discovery stay.  If the Court does not find grounds for reconsidering the

Order in its entirety, it should modify the Order as set forth above.[4]

Dated:  March 2, 2007                    Respectfully submitted,

                                         SHEARMAN & STERLING LLP

                                         By: s/ Stuart J. Baskin
                                             Stuart J. Baskin
                                             Brian H. Polovoy
                                             Marc D. Ashley
                                         599 Lexington Avenue
                                         New York, New York  10022-6069
                                         Telephone:  (212) 848-4000
                                         Facsimile:  (212) 848-7179
                                         sbaskin@shearman.com

                                         Joseph E. Papelian (P26582)
                                         Delphi Corporation
                                         5725 Delphi Drive
                                         Troy, Michigan  48098-2815
                                         Telephone:  (248) 813-2535
                                         Facsimile:  (248) 813-3251
                                         joseph.e.papelian@delphi.com

                                         *Attorneys for Defendants Delphi Corporation,
                                         Donald S. Runkle, John D. Sheehan,
                                         Robert H. Brust, Thomas H. Wyman,
                                         Oscar de Paula Bernardes Neto, John D. Opie,
                                         Cynthia A. Niekamp, Susan A. McLaughlin,
                                         Roger S. Penske, Patricia C. Sueltz,
                                         Virgis W. Colbert, David N. Farr,
                                         Shoichiro Irimajiri, Bernd Gottschalk,
                                         Delphi Trust I, and Delphi Trust II*

---

[4]   The Court's Order restates certain assertions in plaintiffs' submissions that are factually incorrect.  Because many of these various assertions are not relevant to the issues raised here, we do not address them here.  We do not view these assertions as findings by the Court, but rather as repeating background information proposed by Lead Plaintiffs.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of March 2007, I electronically filed the

foregoing Motion of Certain Defendants for Reconsideration of the Court's Order Lifting the

PSLRA Discovery Stay, Memorandum of Law of Certain Defendants in Support of their Motion

for Reconsideration of the Court's Order Lifting the PSLRA Discovery Stay, and the Declaration

of Joseph E. Papelian in Support of the Memorandum of Law of Certain Defendants in Support

of their Motion for Reconsideration of the Court's Order Lifting the PSLRA Discovery Stay with

the Clerk of the Court using the ECF system, which will send notification of such filing to

Jeffrey J. Angelovich, Dennis M. Barnes, Bradley E. Beckworth, Frances Bivens, Wilber H.

Boies, Patrick E. Cafferty, Michael P. Coakley, John P. Coffey, Timothy A. Duffy, Robert N.

Eccles, Christopher H. Giampapa, Gary S. Graifman, Stuart M. Grant, Hannah Greenwald, Maya

S. Hamie, Sean M. Handler, Fred K. Hermann, Clark C. Johnson, Steven W. Kasten, Cari C.

Laufenberg, Dennis J. Levasseur, Howard T. Longman, Matthew J. Lund, Sara L. Madsen, J.

Brian McTigue, Matthew C. Moehlman, Bridget Moore, Jonathan E. Moore, Jodi L. Murland,

Marc L. Newman, Sharan Nirmul, Joseph E. Papelian, Michael G. Patillo, Jr., Debra B. Pevos,

Abraham Rappaport, John W. Reale, Nancy G. Ross, Richard A. Rossman, James J. Sabella,

William A. Sankbeil, Lynn L. Sarko, Sherrie R. Savett, Scott T. Seabolt, Elwood S. Simon,

Andrew W. Stern, Jane B. Stranch, Ruth H. Swartout, Thomas J. Tallerico, W. Scott Turnbull,

James D. VandeWyngearde, Stephen F. Wasinger, Susan Whatley, Jill M. Wheaton, Michael K.

Yarnoff, John P. Zuccarini, and mailed the foregoing document by U.S. Mail to the attorneys on

the attached service list.

    s/ Parthapratim Chanda   
Parthapratim Chanda
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone:  (212) 848-4000
Facsimile:   (212) 848-7179

# Exhibit B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE DELPHI SECURITIES, DERIVATIVE, AND ERISA LITIGATION | § § § | MDL No. 1725<br>Case No. 05-md-1725 |
| This Document Relates to: In re Delphi Corporation Securities Litigation, No. 06-10026 | § § § § | Hon. Gerald E. Rosen |

# LEAD PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE CONSOLIDATED CLASS ACTION COMPLAINT AND FOR RELIEF FROM LOCAL RULE 15.1

**SULLIVAN, WARD, ASHER & PATTON, P.C.**
Debra Beth Pevos (P36196)
25800 Northwestern Highway Suite 1000
P.O. Box 222
Southfield, MI 48037
(248) 746-2800

*Liaison Counsel for Lead Plaintiffs*

**NIX, PATTERSON & ROACH, L.L.P.**
Jeffrey J. Angelovich
Bradley E. Beckworth
Susan Whatley
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333

**GRANT & EISENHOFER P.A.**
Stuart M. Grant
James J. Sabella
Sharan Nirmul
45 Rockefeller Center
New York, New York 10111
(212) 755-6501

**SCHIFFRIN & BARROWAY, L.L.P.**
Michael K. Yarnoff
Sean M. Handler
Benjamin J. Hinerfeld
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
John P. Coffey
Hannah E. Greenwald
Matthew C. Moehlman
Elliott Weiss
1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400

*Co-Lead Counsel for Lead Plaintiffs and the Prospective Class*

Lead Plaintiffs, the Oklahoma Teachers' Retirement System, the Public Employees' Retirement System of Mississippi, Stichting Pensioenfonds ABP and Raiffeisen Kapitalanlage-Gesellschaft m.b.H., respectfully submit this Brief in Support of Motion for Leave to Amend the Consolidated Class Action Complaint (the "Complaint") and for Relief from Local Rule 15.1.

## I.    CONCISE STATEMENT OF ISSUES PRESENTED

1.    Should Lead Plaintiffs be permitted to amend the Complaint (1) to remedy any pleading deficiencies in the Complaint, assuming *arguendo* that the Court concludes, in considering Defendants' motions to dismiss the Complaint, that there are such deficiencies in the Complaint; and (2) to address significant events that have occurred and new facts that have been uncovered since the Complaint was filed; where (3) amendment would not be futile and would be for good cause and without undue delay, improper motive, or undue prejudice to Defendants?

Lead Plaintiffs respectfully submit that this question must be answered affirmatively.

2.    Should Lead Plaintiffs be granted relief from Local Rule 15.1, which requires a party who moves to amend a pleading to attach the proposed amended pleading to the motion, except by leave of court, in an effort to avoid unnecessary amendments and where additional facts have been uncovered and significant events have occurred since the filing of the Complaint?

Lead Plaintiffs respectfully submit that this question must be answered affirmatively.

## II.    MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

The guiding law on this issue can be drawn from:  Rule 15(a) of the Federal Rules of Civil Procedure; Rule 15.1 of the Local Rules; *Morse v. McWhorter*, 290 F.3d 795 (6th Cir. 2002); and *Foman v. Davis*, 371 U.S. 178 (1962).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

The factual basis underlying the instant action is contained in the Complaint, Lead Plaintiffs' Motion for Partial Modification of the PSRLA Discovery Stay that was filed on March 10, 2006, and in Lead Plaintiffs' letter to the Court of August 2, 2006.

## IV.    NATURE OF RELIEF REQUESTED

Lead Plaintiffs filed their Complaint on September 30, 2005. Defendants moved to dismiss Lead Plaintiffs' allegations on March 10, 2006. For the reasons stated in Lead Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss filed on May 12, 2006, Lead Plaintiffs believe Defendants' motions should be denied in their entirety. As such, it is uncertain at this time whether any amendment will be necessary. Thus, this is not a case where the plaintiffs realize, after several unsuccessful attempts, that their allegations are insufficient and are now desperately seeking to salvage the case. Rather, this is a situation where Lead Plaintiffs have filed one and only one complaint—a complaint that, as currently pleaded, they believe is sufficient and adequate. In the event that the Court denies Defendants' motions, there may be no need for Lead Plaintiffs to amend the Complaint.

However, Lead Plaintiffs are mindful of the fact that this Court has, in at least one prior securities fraud action, required the plaintiff to file a formal request for leave to amend prior to the time the Court ruled on a pending motion to dismiss. Accordingly, in an abundance of caution, Lead Plaintiffs respectfully request that if the Court concludes that any aspect of the Complaint is insufficient, Lead Plaintiffs be given leave to amend their complaint to cure any perceived deficiencies. Pursuant to Local Rule 15.1, however, Lead Plaintiffs respectfully request leave to postpone until after the Court's ruling on the pending motions the filing of any proposed amended complaint.

## V.    LEAD PLAINTIFFS SATISFY THE LIBERAL STANDARD FOR AMENDMENT OF PLEADINGS UNDER RULE 15(A)

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and **leave shall be freely given when justice so requires.**" Fed. R. Civ. P.

15(a) (emphasis added).  The Federal Rules generally favor a liberal amendment policy, and a

party's motion to amend its complaint should be denied only in situations where the amendment

is futile or where there is undue delay, bad faith, dilatory motive, repeated failures to cure

deficiencies by previous amendments, and undue prejudice to the non-moving party.  *See Foman*

*v. Davis*, 371 U.S. 178, 182 (1962); *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Leave to amend is particularly appropriate in securities fraud cases should the complaint be

found not to have alleged fraud with particularity.  *Morse*, 290 F.3d at 800; *see also Miller v.*

*Champion Enter., Inc.*, 346 F.3d 660, 689-90 (6th Cir. 2003); *In re Hayes Lemmerz Int'l, Inc.*

*Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1019, n.9 (E.D. Mich. 2003).

Here, amendment of the Complaint would not be futile; instead, amendment would be for

good cause and without undue delay, improper motive or undue prejudice to Defendants.  First,

Lead Plaintiffs make this motion at an early procedural point in the case.  Defendants' motions to

dismiss remain *sub judice*.  In addition to the fact that there has not been any judgment on the

pleadings, discovery at the present time is stayed under the PSLRA.  Accordingly, given the

early procedural posture of the case, Lead Plaintiffs' motion cannot be considered dilatory.

Second, Lead Plaintiffs' request is not the product of bad faith; rather, as set forth below,

this request is a direct response to numerous facts that have been revealed and significant events

that have occurred since Lead Plaintiffs filed their Complaint.  Nor is Lead Plaintiffs' proposed

amendment futile.  This is the first request to amend the Complaint (the first pleading filed by the

court-appointed Lead Plaintiffs), and is made to incorporate the significant events that have

occurred and the additional facts that have come (and continue to come) to light since the

Complaint was filed.  Significantly, this is not – as is often the case – a request to amend a

3

complaint after multiple, unsuccessful attempts to cure identified deficiencies.[1]    Indeed, Lead

Plaintiffs assert that the Complaint is sufficiently and adequately pled, and request amendment to

capture post-Complaint facts and events and to address any potential pleading deficiencies

identified by the Court.

Lastly, granting Lead Plaintiffs' motion to amend will not prejudice any Defendant.    The

parties have taken no discovery, nor have they undertaken any efforts or incurred expenses that

the proposed amendment would likely moot.    Indeed, Defendants will not be able to point to a

single reason why amendment of the Complaint will cause them prejudice, nor can they

demonstrate that Lead Plaintiffs possess a wasteful motive in seeking this relief.    Moreover, and

most importantly, Lead Plaintiffs may suffer extreme prejudice if the relief is not granted.

A.    **Should The Complaint Be Determined To Be Deficient, Amendment Would Permit Lead Plaintiffs To Address New Facts That Have Been Uncovered And Significant Events That Have Occurred Since The Complaint Was Filed**

1.    *The SEC's Complaint*

On October 30, 2006, the Securities and Exchange Commission ("SEC") filed civil fraud

charges against Delphi and nine of its former executives, as well as four employees of outside

firms for their alleged involvement in Delphi's massive accounting fraud.    A true and correct

copy of the SEC's Complaint is attached hereto as Exhibit A.    Simultaneously, Delphi and six

charged individuals settled with the SEC.    Among those settling were former Chief Financial

Officer (and Individual Defendant named in Lead Plaintiffs' Complaint) Alan Dawes, who

reportedly agreed to pay $687,000 in fines and restitution.    Delphi's agreement to settle the

---

[1] While the Sixth Circuit has noted that **repeated** amendments may frustrate the purpose of the PSLRA, allowing an amendment in the instant case would not have that effect because, among other things:  this is Lead Plaintiffs' **first** request for leave to amend the Complaint; Lead Plaintiffs are making this request prior to any ruling on the pleadings; and, as set forth in detail above, Lead Plaintiffs are seeking the amendment to address the significant events that have occurred and the numerous new facts that have been (and continue to be) revealed since the Complaint was filed, and to address any pleading deficiencies, if dismissed.

charges against it will bar the Company from future violations of securities laws, but will not subject it to any financial penalties.

Significantly, though not surprisingly, the SEC's Complaint largely mirrors the allegations set forth in Lead Plaintiffs' Complaint. Relying upon some of the same confidential sources that Lead Plaintiffs had previously interviewed in formulating their Complaint, the SEC's Complaint spells out in great detail four primary fraudulent accounting transactions that are also detailed in Lead Plaintiffs' Complaint.[2] The evidence set forth in the SEC's Complaint further corroborates Lead Plaintiffs' specific allegations against the officers and directors named therein as well as BBK, Ltd. and Bank One. *Id.* Moreover, the SEC's Complaint reveals new information regarding the role of General Motors ("GM") and Electronic Data Systems ("EDS") in committing the accounting fraud that led to Delphi's Restatement. Any amended complaint filed by Lead Plaintiffs would reflect the specific facts alleged by the SEC in its Complaint.

### 2. *The Department of Justice's Investigation Continues*

In addition to the SEC's formal charges described above, the Department of Justice ("DOJ") continues its investigation into Delphi and its former officers and directors. *The Detroit News* reported on November 24, 2006 that federal prosecutors expect to decide by January whether to seek criminal charges against former Delphi executives involved in the fraud.

### 3. *Additional New Evidence Discovered by Lead Plaintiffs*

Even though Lead Plaintiffs assert that their Complaint is adequately and sufficiently pled, should the Court disagree, leave to amend would be appropriate to permit Lead Plaintiffs to

---

[2] Those transactions are: (1) the May 2000 warranty reserve increase and mislabeled warranty payment to General Motors (Delphi's former parent company); (2) the December 2000 sham transaction of precious metals to Bank One; (3) the December 2000 sham transaction of automotive batteries and generator cores to BBK (a financial consulting firm run by B.N. Bahadur); and (4) the fourth quarter 2001 mislabeled loan from EDS Corporation. All of these fraudulent transactions served to materially misstate Delphi's financial condition and mislead investors throughout the Class Period.

address the numerous facts that have been uncovered since the Complaint was filed. These new

facts, discussed more fully below, both confirm and buttress Lead Plaintiffs' existing allegations,

and further illuminate Delphi's fraudulent accounting practices and how Defendants directly

participated in, knew about or recklessly disregarded Delphi's widespread fraud. For example,

in the course of their continuing investigation, Lead Plaintiffs have conducted several interviews

of individuals with relevant information regarding this matter, who have revealed such details as:

- Additional information regarding the Delphi/Bank One transaction, including that a high-ranking executive in Delphi's accounting department knew of and talked openly to other Delphi employees regarding Delphi's "selling and buying back inventory relating to the precious metals" transaction with Bank One and that, after Delphi closed its books for the year ended December 31, 2000, a Delphi executive reopened the books and made late journal entries relating to the sale of precious metals to Bank One following the closing;

- According to a former employee who worked in Delphi's accounting group, among other departments, the journal entries relating to the precious metals transactions are easily identifiable and recognizable as they were made after the close of Delphi's books. Specifically, this former employee stated: "If I were looking for anything wrong, I would look for the last entries that were recorded. I would go through what gets recorded first, what got recorded last. If you are looking for anything wrong I'd say it would be some of the last entries. There would have been one close and then everything was reviewed and additional entries were recorded;"

- Statements from Delphi employees confirming Lead Plaintiffs' allegations that Delphi was obligated to repurchase the precious metals inventory from Bank One at the year-end close or shortly thereafter; identification of Delphi executives who made the accounting determination of this transaction; and that Delphi's tax department struggled with the transactions as they related to the tax return; including one employee who questioned the way it was being booked;

- Statements from a former Delphi employee in a position to know that Delphi's auditor, Deloitte & Touche, LLP ("Deloitte"), should have flagged Delphi's late journal entries as they related to the sales of inventory and the re-purchase of this inventory in subsequent periods. In particular, this former Delphi employee explained that Deloitte in the first instance should have observed these late journal entries at or near in time to their entry, and in any event, should have noticed these entries in the next audit period;

- Additional information regarding Delphi's improper accounting of warranty payments to GM, including information from a former Delphi employee that the spin-

6

off agreement between GM and Delphi contained terms regarding warranty payment adjustments, and that "if you followed the terms, it came out that Delphi did not owe GM any money." This former employee stated that it was his understanding that Delphi ignored the terms of the agreement and used data from a different baseline year which then created "a huge amount that Delphi owed to GM." He explained that "you have to *not* follow the agreement to create the need for a pension adjustment and then you sort of mask the payment as an adjustment. The only way you owed money is if you used the wrong base year." (emphasis added). According to Lead Plaintiffs' continuing investigation, Defendants Free and Blahnik were involved in Delphi's accounting treatment for these warranty payments;

- Additional information regarding the Delphi/Setech transactions, including that the terms and conditions of these transactions were specifically authorized by Defendants Blahnik, Dawes and Free;

- Additional support for allegations regarding the fraudulent transactions between Delphi and EDS, including a statement by a former Delphi employee that he "was aware of some negotiations that were going on, something that smelled a little rotten from the standpoint of taking future discounts and giving some kind of an incentive from EDS;"

- Additional support for allegations regarding Delphi's fraudulent recording of a $20 million rebate as income at the time it was received from EDS in the fourth quarter of 2001, including a statement by a former Delphi employee that: "It got a little bit funny because they already took the $20 million as revenue and then how do you charge back against that? The accounting got a little bit funny and they started to squirm a little bit; Delphi then struggled to find a way to justify/explain the accounting activity as it related to the $20 million check;"

- Specific information regarding the $26 million "upfront money" Delphi received from EDS and the recording of the money as income at the time it was received despite the fact that the contract was a multi-year contract for services;

- Statements from Delphi employees confirming Lead Plaintiffs' allegations that the Delphi/BBK transaction was "clearly done for the purpose of increasing pretax income" and the identification of Delphi executives involved in the transaction;

- The identification of specific Deloitte employees responsible for auditing services provided to Delphi; and

- The identification of additional Delphi executives working in the financial reporting division.

These additional facts both corroborate and bolster Lead Plaintiffs' allegations against

Defendants as set forth in the Complaint. Lead Plaintiffs intend to present these facts in

7

substantially greater detail in their amended complaint, if so allowed.

### 4.    *Other Post-Complaint Events Have Altered the Landscape of This Case*

In October 2005, Delphi and substantially all of its active U.S. subsidiaries filed for relief

pursuant to Chapter 11, marking the largest bankruptcy in U.S. automotive history.[3]   Delphi's

bankruptcy filing has necessarily changed the landscape of this case.   Most significantly, the

litigation has been stayed against the Company pursuant to the automatic stay, 11 U.S.C. §

362(a), while it is proceeding against all other non-debtor Defendants.   At the time of filing the

Complaint, Delphi was a primary focus of the Complaint's allegations regarding the scienter of

Delphi as a company and its officers and directors.   While Lead Plaintiffs maintain that the

Complaint as presently pled sufficiently alleges claims against all Defendants, Delphi's

bankruptcy filing has affected the manner in which Lead Plaintiffs would present their scienter

allegations against the Officer and Director Defendants.[4]

Furthermore, additional relevant facts continue to come to light through the Bankruptcy

Proceedings.   For example, on November 22, 2006, Delphi filed a motion in the Bankruptcy

Proceedings requesting the court to authorize its decision to <u>not</u> advance legal fees and costs to

certain former Delphi officers, including John Blahnik and Paul Free, named defendants in this

action.   This motion was filed after Delphi's Compensation Committee determined that "it could

---

[3] Lead Plaintiffs have been actively involved in the Bankruptcy Proceedings.   In addition to filing their
Motion for a Limited Modification of the Automatic Stay and litigating that issue, Lead Plaintiffs
objected to and litigated Delphi's Motion to Implement a Key Employee Compensation Program
("KECP") and Delphi's Application to Retain Deloitte & Touche, LLP as their Independent Auditors and
Accountants.   In conjunction with the KECP Objection, Delphi requested documents from Lead Plaintiffs
going to Lead Plaintiffs' securities claims, and Lead Plaintiffs complied by producing all non-privileged
documents sought by Delphi's requests.   When Lead Plaintiffs in turn put the identical requests to Delphi,
the Company invoked the PSLRA discovery stay.

[4]The Officer Defendants are Defendants Battenberg, Dawes, Free, Blahnik, Donald Runkle and John D.
Sheehan.   The Director Defendants are Defendants Susan A. McLaughlin, Roger S. Penske, Patricia
Sueltz, Virgis W. Colbert, David N. Farr, Shoichiro Irimajiri, Dr. Bernd Gottschalk, Robert H. Brust,
Oscar De Paula Bernardes Neto, John D. Opie and Cynthia A. Niekamp.

not in good faith pay advancements to former employees whose actions the Audit Committee found were linked to the restatement and all related negative consequences."

In addition, Lead Plaintiffs filed their Complaint in the Southern District of New York and thus pled their claims under prevailing Second Circuit law.  On December 12, 2005, the MDL transferred this case to this Court for coordinated or consolidated pretrial proceedings with the actions already pending in this district.  While Lead Plaintiffs maintain that the Complaint satisfies the pleading requirements of the Sixth Circuit, there are significant distinctions between Second Circuit and Sixth Circuit law in PSLRA cases, particularly regarding scienter pleading requirements.[5]  An amendment would provide Lead Plaintiffs with an opportunity to plead this case specifically under Sixth Circuit law and also to account for Delphi's bankruptcy filing.[6]

---

[5] *Compare Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) with *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 251 n.2 (S.D.N.Y. 2005) (expressly rejecting the "most plausible inference" doctrine set forth in *Helwig* in favor of continued application of the Second Circuit's "all reasonable inferences" standard).  Defendant JP Morgan is well aware of this distinction in the circuit law, as it argued in favor of the most plausible inference doctrine in its motion to dismiss Lead Plaintiffs' Complaint in this case (*see* Docket No. 66 at 6-7), yet was faced with the same unsuccessful argument from the defendants in *Winnick*.

[6] Lead Plaintiffs should also be granted leave to file an amended complaint to the extent there has been further refinement of the standard for pleading scheme liability under Rule 10b-5(a) and (c), as articulated in recent decisions by the Eighth and Ninth Circuits in *In re Charter Communications, Inc. Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006) and *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006), respectively, as well as by various district courts including the United States District Court for the Southern District of New York in *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428 (S.D.N.Y. 2006), the United States District Court for the Northern District of Texas in *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, __ F. Supp. 2d___, 2006 WL 2034461 (S.D. Tex. July 20, 2006) ("*Enron IV*") and the United States District Court for the Eastern District of Missouri in *Dutton v. D&K Healthcare Res.*, No. 4:04CV147SNL, 2006 WL 1778863 (E.D. Mo. June 23, 2006).  While Lead Plaintiffs maintain that their present allegations against Bank One, BBK and Setech are sufficient and adequate, and satisfy the tests articulated in these recent decisions and, in particular, in *Charter* and *Simpson,* leave to amend is appropriately granted where there is an evolution in the law after plaintiffs have filed their complaint. *See Lundy v. Morgan Stanley & Co., Inc.*, No. C-90-2796 TEH, 1991 WL 23829, at *2 (N.D. Cal. July 18, 1991) (granting plaintiff's motion to amend); *Issen v. GSC Enters. Inc.*, 522 F. Supp. 390, 394 (N.D. Ill. 1981) (granting plaintiffs' motion to amend); *see also Gregory v. Harris-Teeter Supermarkets, Inc.*, 728 F. Supp. 1259, 1260 (W.D.N.C. 1990) (granting plaintiff's motion to amend).  Moreover, although Defendant JPMorgan has argued that *Simpson* and *Enron* further limit liability under Rule 10b-5(a) and (c), Lead Plaintiffs believe, as set forth in their prior submissions, that the courts in both cases actually adopted a lower threshold for liability.

**B.**    **Lead Plaintiffs Should Be Allowed Access To Documents Produced
To Governmental Agencies, And Allowed Leave To Amend After Review,
But Prior To Ultimate Resolution Of The Motions To Dismiss**

As the Court is aware, Delphi, Delphi employees, GM, EDS, Bank One, Deloitte and

BBK have all produced documents to the SEC and the Federal Bureau of Investigation ("FBI")

pursuant to the federal investigations against them regarding Delphi's accounting practices. The

SEC relied on these documents, which necessarily relate to these parties' relationship to Delphi,

in its Complaint against Delphi and multiple former Delphi executives and several employees of

outside firms. Lead Plaintiffs have made diligent efforts to obtain these previously produced

documents. As discussed above, on November 15, 2005, Lead Plaintiffs filed a Motion for a

Limited Modification of the Automatic Stay in the Bankruptcy Proceeding, seeking a narrow

modification of the automatic stay to obtain from Delphi a copy of all documents and materials

that Delphi has produced or provided in connection with the SEC and DOJ investigations or

Delphi's internal investigation. Judge Drain granted Lead Plaintiffs' motion in part and entered

an order permitting Lead Plaintiffs to seek relief in this Court from the discovery stay under the

PSLRA. Judge Drain further ordered that upon entry of an order by this Court granting Lead

Plaintiffs relief from the PSLRA stay, the remaining portion of Lead Plaintiffs' Motion shall be

heard promptly thereafter by the Bankruptcy Court. *Id.*

Accordingly, on March 10, 2006, Lead Plaintiffs filed their Motion and Brief in Support

of the Motion for Partial Modification of the PSLRA Discovery Stay. In that Motion, Lead

Plaintiffs specifically requested entry of an order: (1) permitting Lead Plaintiffs to serve

Defendants (other than Delphi) and certain third parties with discovery requests to produce

evidence; and (2) permitting Lead Plaintiffs to return to Judge Drain in the Bankruptcy

Proceeding, seeking permission to serve Delphi, the debtor, with discovery requests to produce evidence that has already been produced to authorities.

Significantly, on July 27, 2006, as a result of its review of Delphi's confidential information, Delphi's Unsecured Creditors' Committee ("UCC") filed a motion in the bankruptcy court entitled, "Ex Parte Motion for an Order Authorizing the Official Committee of Unsecured Creditors to File Under Seal Exhibits to the Committee's Motion for an Order Authorizing it to Prosecute the Debtor's Claims and the Defenses Against General Motors Corporation and the Certain Former Officers of the Debtors."[7]  In its motion, the UCC requested leave to file under seal a demand letter against GM and a complaint against certain of Delphi's officers and directors to recover damages that Delphi suffered due to their actions.  The UCC stated that both the demand letter and the complaint were based upon its review of the documents previously produced to the SEC pursuant to its investigation of Delphi.   Specifically, the UCC stated:

> In researching and preparing the Complaint, the Committee used, and the Complaint and Demand Letter contain, information produced by Debtors relating to ongoing investigations of the Debtors, including investigations by the Securities and Exchange Commission.

UCC's Motion at ¶ 5.

Thus, based on the UCC's assessment, the information and documents produced by Delphi to the SEC contain sufficient evidence to file a meritorious claim for relief against certain of Delphi's officers and directors.[8]  Furthermore, these same documents served as the basis for the SEC's 79-page Complaint against Delphi and a host of former executives and outside

---

[7] A copy of the UCC's Motion and an Affidavit filed in support thereof are attached to Lead Plaintiffs' August 2, 2006 letter to this Court.

[8] Additionally, on September 5, 2006, Delphi's Equity Committee filed an objection to the UCC's Motion.  In its objection, Delphi's Equity Committee stated that it has received access to the same documents that Delphi previously provided to the UCC.

11

employees involved in the fraud. Although Lead Plaintiffs have not obtained or reviewed these documents produced to the governmental entities and the UCC, at a minimum, these documents will undoubtedly reinforce Lead Plaintiffs' allegations of scienter regarding the Individual Defendants, the Audit Committee Defendants, Deloitte, Setech, BBK and Bank One. These documents most certainly will provide additional information regarding each of these Defendants' involvement in the fraudulent transactions identified in the Complaint. Thus, to avoid repeated amendments of the Complaint and to prevent Lead Plaintiffs from suffering severe prejudice, Lead Plaintiffs should be (1) provided access to the documents produced to the governmental agencies and the UCC, and (2) allowed leave to amend the Complaint after an opportunity to review these documents.

**C.    Lead Plaintiffs Will Suffer Extreme Prejudice If Leave To Amend Is Not Allowed**

Lead Plaintiffs are likely to suffer extreme prejudice if the relief requested herein is denied. As the Court itself has noted, no party to this litigation stands to gain by precluding Lead Plaintiffs from fully fleshing out the factual issues and prematurely ending the case at a time when there is an abundance of documentary evidence supporting Lead Plaintiffs' claims to which they have not yet been allowed access. February 8, 2006 Transcript, Exhibit A to Lead Plaintiffs' Lift Stay Reply Brief at 29. Indeed, while remaining mindful of the purposes of the PSLRA, courts should be cautious not to terminate cases on a premature record, particularly in light of the formal criminal investigation being conducted in regard to Delphi's widespread fraud. *Id.* Lead Plaintiffs share this Court's view that the PSLRA contemplates "full opportunities…for plaintiffs to develop at least their pleadings to the point where they get a fair shot at making their best arguments." *Id.* at 30.

This is especially true in the event that the Court grants Defendants' motions to dismiss in part. Should the Court sustain part of the Complaint, the purposes of the PSLRA will not be

frustrated, and an amendment would be for good cause and not futile. "[T]he goal of the PSLRA was to prevent strike suits and costly discovery. Here, however, after surviving dismissal as to some [d]efendants, there is no fear that this is merely a baseless strike suit." *See Hayes v. Lemmerz Int'l*, 271 F. Supp. 2d 1007, 1019 n.9 (E.D. Mich. 2003) (citing *Champion*, 145 F.Supp.2d at 873). Further, to the extent that the Court sustains the allegations in the Complaint against certain Defendants, discovery will take place and may uncover specific facts implicating others. Should this occur, Lead Plaintiffs would seek to amend the Complaint to include the facts developed in discovery. *See id.* (finding that discovery would inevitably take place because the court sustained the complaint as to three defendants and that "[i]f discovery uncovers specific facts implicating KPMG acted with scienter, only then will KPMG be brought back into the suit."). For these reasons, Lead Plaintiffs will likely suffer extreme prejudice if they are not granted an opportunity to amend the Complaint.

## VI. PURSUANT TO LOCAL RULE 15.1, LEAD PLAINTIFFS REQUEST LEAVE OF COURT NOT TO FILE A PROPOSED AMENDED COMPLAINT WITH THE INSTANT MOTION

Local Rule 15.1 states that:

> A party who moves to amend a pleading shall attach the proposed amendment to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. Failure to comply with this Rule is not grounds for denial of the motion.

E.D. MICH. LOCAL RULE 15.1. Lead Plaintiffs respectfully request leave of Court not to file a proposed amendment with the instant motion as provided by Local Rule 15.1. Lead Plaintiffs request this exception for several reasons.

First, Local Rule 15.1 expressly authorizes a plaintiff to seek leave of court not to file a proposed amendment concurrently with a motion for leave to amend. The Rule also states that the failure to attach a copy of the proposed amended complaint is not grounds for denial of the

motion for leave to amend. Thus, Local Rule 15.1 clearly contemplates the relief requested by Lead Plaintiffs.

Also, as demonstrated in greater detail above, additional facts continue to be revealed and discovered since the time Lead Plaintiffs filed their Complaint. Indeed, in the fourteen months since Lead Plaintiffs filed their Complaint, Delphi filed for bankruptcy protection, almost all of the current defendants produced documents to and/or were interviewed by the SEC and/or DOJ, the SEC has filed an enforcement action against numerous defendants in this case, and several of those same defendants have now settled with the SEC. Moreover, in the last week at least one newspaper has reported that criminal indictments are likely forthcoming. Given these factual developments and the rapidly changing landscape of this case, it would be a waste of judicial resources if Lead Plaintiffs were required to file an incomplete amendment now only to have to request further amendments as additional facts and information come to light through Lead Plaintiffs' and the federal regulators' continued investigations.

Last, in the event the Court grants Lead Plaintiffs' Motion for Partial Modification of the PSLRA discovery stay, Lead Plaintiffs would need sufficient time to obtain and review the documents previously produced to the governmental agencies. Allowing Lead Plaintiffs time to complete their review of such documents will further eliminate the need for repeated, unnecessary amendments.

Accordingly, Lead Plaintiffs respectfully request relief from Local Rule 15.1's requirement that a copy of the proposed amended complaint be attached to this motion.

### V.    CONCLUSION

For the reasons set forth above, Lead Plaintiffs respectfully request that the Court grant their Motion for Leave to Amend the Consolidated Class Action Complaint and for Relief from Local Rule 15.1.

Dated: _11/28/06_

Respectfully Submitted,

SULLIVAN, WARD, ASHER & PATTON, P.C.

By: /s/ Debra Beth Pevos
Debra Beth Pevos (P36196)
25800 Northwestern Highway, Suite 1000
P.O. Box 222
Southfield, MI  48037
(248) 746-2800
dpevos@swappc.com

*Liaison Counsel for Lead Plaintiffs*

15

# **Exhibit C**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
------------------------------------------------------------x
                                           :
                                           :
                                           :    MDL No. 1725
IN RE: DELPHI CORPORATION                  :    Master Case No. 05-md-1725
SECURITIES, DERIVATIVE & "ERISA"           :    Hon. Gerald E. Rosen
LITIGATION                                 :
                                           :    This Document Relates to:
                                           :    In Re: Delphi Corp. Securities Litig.
                                           :    No. 06-10026
                                           :
                                           :
------------------------------------------------------------x
```

### DECLARATION OF JOSEPH E. PAPELIAN IN SUPPORT OF THE MEMORANDUM OF LAW OF CERTAIN DEFENDANTS IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY

I, Joseph E. Papelian, hereby declare as follows:

1.      I am the Deputy General Counsel for Litigation for Delphi Corporation ("Delphi"). The information set forth below is true to the best of my knowledge and belief.

2.      On July 22, 2004, I received a subpoena from the SEC commanding the production of certain documents by Delphi. On that same day, I directed a document hold for those documents covered by the subpoena, which was posted on Delphi's internal website on July 23, 2004.

3.      On July 23, 2004, I ordered the computer back-up tapes for Delphi's Headquarters campus be delivered to my office. The back-up tapes were delivered to me on July 23, 2004, where they remained locked in my office until October 15, 2004 when I provided them to a representative of PricewaterhouseCoopers ("PwC"), which had been retained at that time.

4.      Also on July 23, 3004, I issued a Document Search Memo to employees likely to have documents responsive to the subpoena.  The Search Memo described the types of documents to be gathered, instructed the employees to search all areas where relevant documents might be found, and cautioned them to not destroy or alter potentially relevant documents.  The Search Memo also instructed employees to return all relevant documents to a legal assistant working with me on this matter along with a completed Document Return Form requiring the employee to attest he/she had conducted a good faith search and provided any relevant documents.

5.      Copies of all documents received in response to the Search Memo were scanned and a unique number was assigned to each page.  The documents were reviewed for responsiveness and those documents determined to be responsive were then assigned a production number.  A Source Index, identifying who provided what documents, was prepared and those documents determined responsive to the subpoena were produced to the SEC on a rolling basis.

6.      On August 24, 2004, Delphi formally retained the outside law firm of WilmerHale to assist, among other things, in the collection of documents and with Delphi's internal investigation.  WilmerHale engaged forensic accountants PricewaterhouseCoopers ("PwC") to assist in the collection of electronic files.  On October 5, 2004, the Audit Committee of Delphi's Board of Directors assumed responsibility for the internal investigation.

7.      As subsequent subpoenas were received from the SEC, Delphi followed the procedure described in paragraphs 4-5, above.  Delphi also sent out Document Search Memos after particular issues came to the attention of the internal investigators, but before a subpoena was received from the SEC that called for documents relevant to those issues.  As the

2

internal review progressed, Delphi sent out a total of 14 Document Search Memos and one Hold Memo in the same format as the Document Search Memo issued in response to the first SEC subpoena. Approximately 700,000 pages were collected, scanned and numbered in response to the various Search Memos.

8.    Delphi entered into Confidentiality Agreements with the SEC and DOJ only, waiving attorney client privilege as to these entities with respect to certain subject matters.

9.    In November 2004, representatives of PwC began imaging hard drives of computers belonging to 89 Delphi employees, Microsoft Exchange email files for 84 employees, and a subset of the back-up tapes referenced in Paragraph 3 and created a database of 1,161,936 unique email items and 417,131 unique user files totaling over 130 gigabytes of data.

10.    General and specific keyword searches were conducted on this database by PwC, resulting in the identification of 107,881 unique emails and attachments responsive to the general search terms and 37,492 unique emails and attachments responsive to the specific search terms. Those documents which were identified as responsive and not previously produced to the SEC were scanned, numbered and produced to the SEC.

11.    WilmerHale removed from the database referenced in Paragraph 9 those documents that were addressed to, from or copied an attorney. The remainder of this database was then provided to the SEC on December 14, 2005. Other than the keyword searches referenced in paragraph 10, the database provided to the SEC was not reviewed for relevancy or responsiveness, but was nonetheless produced to the SEC.

12.    In sum, Delphi produced to the SEC approximately 576,000 pages of responsive documents plus the remainder of the documents in the database referenced in paragraph 11, which were not read for relevancy or responsiveness.

3

13.    The remainder of the documents collected through the various exercises and sources identified above were determined as not responsive to any general or specific search terms.  Therefore, while they were collected in connection with Delphi's extensive internal investigation, these materials were not produced to the SEC (or any other party).

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 2, 2007.

s/ Joseph E. Papelian
Joseph E. Papelian

4