TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Jayme T. Goldstein (JG-9054)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------------x | | Chapter 11 |
| In re: | : | Case No. 05-44481 [RDD] |
| | : | |
| DELPHI CORPORATION, et al., | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| ------------------------------------------------------x | | |

## SETTLEMENT AGREEMENT

High Purity Iron Inc, of which QMP America is a division, and its parent and affiliates ("QMP") and Delphi Corporation, together with its co-debtors ("Delphi" and, together with QMP, the "Parties"), hereby agree:

WHEREAS, on October 8 and 14, 2005 (together, the "Filing Dates"), Delphi and certain of its U.S. subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Court") for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"); and

LEGAL02/30251109v5

WHEREAS, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, this Court entered orders directing the joint administration of the Debtors' chapter 11 cases; and

WHEREAS, on October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors; and

WHEREAS, on May 11, 2006, the U.S. Trustee appointed an official committee of equity security holders; and

WHEREAS, no trustee or examiner has been appointed in the Debtors' cases; and

WHEREAS, prior to the Filing Dates, as the need occurred, Delphi sent orders for the purchase of powdered metals (the "Metals") to QMP and QMP fulfilled the orders by corresponding shipping and invoicing Metals, and

WHEREAS, on September 22, 2005, Delphi sent QMP a wire transfer in the amount of approximately $163,000 for pre-petition arrears owed by Delphi to QMP for the Metals; and

WHEREAS, on October 1, 2005, Delphi sent QMP a wire transfer in the amount of approximately $308,000 (and, together with the September 22, 2005 wire transfer, the "Two Wire Transfers") for pre-petition arrears owed by Delphi to QMP and/or advance payment for future shipments of the Metals; and

WHEREAS, Delphi has determined that the Two Wire Transfers included duplicative payments against invoices and advance payments to QMP in the aggregate amount of $409,205.90 (the "Settlement Amount"); and

WHEREAS, Delphi has asserted it has made proper demand upon QMP for the return of the Settlement Amount; and

WHEREAS, as a result of arms-length negotiations, Delphi and QMP (together, the "Parties") have agreed to the reconciliation of the these amounts by the Settlement Amount based upon the terms and conditions set forth in this agreement (the "Settlement Agreement"); and

WHEREAS, Delphi has concluded that the proposed settlement set forth herein is in the best interests of its estate, and in reaching that conclusion, has considered, among other things, the cost, expense and delay associated with litigating this matter, the result of which is uncertain.

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree:

1. This Settlement Agreement shall be effective on the date when an Order of the Court (the "Approval Order") approving the terms hereof shall become final and not subject to any stay or appeal (the "Effective Date"). If the Effective Date is not on or prior to April 15, 2007, this Settlement Agreement is automatically null and void <u>ab initio</u> and cannot be used in any court of law for any purpose except to return the Parties to the status each was in on the date of the execution of this Settlement Agreement unless prior to April 15, 2007 the parties agree in a co-signed and dated writing to adjourn the April 15, 2007 deadline.  Notwithstanding the aforesaid, prior to the earlier of the Effective Date or the date this Settlement Agreement is automatically null and void, the Parties shall be bound by the terms hereof and shall do nothing contrary to the terms set forth herein.

2. Within three (3) business days after the Parties' full execution of the Settlement Agreement, QMP will deliver the Settlement Amount to its below named counsel ("A&B") in immediately available funds to be held in escrow by A&B until the earlier of the Effective Date, in which event it will be forwarded to Delphi through its counsel, or April 15, 2007 (unless otherwise adjourned in the manner provided above in paragraph 1), in which event it will be returned to QMP.

3. Payment of the Settlement Amount by QMP to Delphi shall be in full and final satisfaction of any and all claims that Delphi may have against QMP for the Settlement Amount. Upon timely entry of the Approval Order and payment to Delphi of the Settlement Amount, the Parties hereby release and waive any and all claims, charges and causes of action that they may assert or may have been able to assert against each other regarding the Settlement Amount except that either of the Parties retain the right to use the Settlement Amount for defensive or offset purposes.

4. This written Settlement Agreement constitutes the entire and fully integrated agreement of the Parties regarding the Two Wire Transfers, and may not be contradicted by prior writings, or prior or contemporaneous oral statements.

5. Except for the agreement memorialized by this Settlement Agreement, the Parties retain all of their rights, claims and defenses.

6. The agreements, terms and provisions contained in this Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their legal representatives, predecessors, successors and assigns, including any parent, affiliate or a trustee appointed in these chapter 11 cases.

7. This Settlement Agreement may not be modified, amended, or terminated, nor any of its provisions waived, except by an agreement in writing signed by each of the Parties.

8. It is expressly understood and agreed that the terms hereof, including the foregoing paragraphs and headings, are contractual and that the Settlement Agreement contained herein and the consideration transferred is to compromise disputed claims and avoid litigation, and that no statement made herein, payment, release, or other consideration shall be construed as an admission by the Parties of any kind or nature whatsoever.

9. The signatories below represent that they are authorized to enter into this Settlement Agreement.

10. The Court shall retain original and exclusive jurisdiction to interpret and enforce the terms of this Settlement Agreement and to resolve any disputes in connection herewith.

Dated: New York, New York
     March     2007

DELPHI CORPORATION, et a1.,
Debtors and Debtors-in-Possession,
By their Bankruptcy Conflicts Counsel,
TOGUT, SEGAL & SEGAL LLP,
By:

/s/ Neil Berger
NEIL BERGER (NB-3599)
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

LEGAL02/30251109v5

Dated: New York, New York
      March     2007

High Purity Iron Inc, QMP AMERICA,
and HPI's parent and affiliates
By its Attorneys,
ALSTON & BIRD LLP
By:

/s/ Paul Silverman
PAUL H. SILVERMAN (PS-0538)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9562

**SO ORDERED**
This 27th day of March, 2007
in New York, New York

/s/Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE