WHYTE HIRSCHBOECK DUDEK S.C.       Hearing Date: May 10, 2007
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
Patrick B. Howell (State Bar No. 1008527)
Ann M. Maher (State Bar No. 1000529)
Telephone: (414) 273-2100
Facsimile: (414) 223-5000
Contact Person Email: phowell@whdlaw.com

Attorneys for HB Performance Systems, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
In re:                                 :
                                       :  Chapter 11
    DELPHI CORPORATION, et al.,     :
                                       :  Case No. 05-44481 (RDD)
        Debtors.                :
                                       :  (Jointly Administered)
------------------------------------- x

## HB PERFORMANCE SYSTEMS, INC.'S SUPPLEMENTAL RESPONSE TO DEBTORS' OBJECTIONS TO CLAIM NO. 14012 (HB PERFORMANCE SYSTEMS, INC.)

HB Performance Systems, Inc., formerly known as Hayes Brake, Inc. ("HB"), an unsecured creditor in part and a partially secured creditor under 11 U.S.C. §§ 553 and 506, by its attorneys, Whyte Hirschboeck Dudek S.C. submits its Supplemental Response in support of its claim[1].

I.     **DESCRIPTION OF CLAIM**

1.     HB entered into an Engineering Services Agreement ("Agreement") with Delphi Automotive Systems, LLC ("DAS LLC") on August 1, 2002, wherein DAS LLC agreed to assist

---

[1] HB files this Amended Supplemental Response to Debtors' Objections to Claim No. 14012 by the request and with the consent of the Debtor.

WHD\5143039.2

HB with motorcycle brake systems HB supplied to Harley-Davidson, Inc. ("Harley") for use on Harley motorcycles.

2. Pursuant to the Agreement, DAS LLC agreed to make qualified engineers and support staff available to HB beginning August 1, 2002 for an average of 10,000 hours per year.

3. In return, HB agreed to pay DAS LLC for services it agreed to supply pursuant to the terms of the Agreement. Pursuant to Exhibit III to the Agreement, Compensation at paragraph 1, "the total payment to Delphi shall be a minimum of $1.0 million per year, unless Hayes Brake gets less than 100% of the 2007 Harley-Davidson Platform. If Hayes Brake gets less than 100%, then this Agreement shall be subject to renegotiation."

4. HB and DAS LLC were notified in early 2003 that HB would not receive 100% of the 2007 Harley Platform. Pursuant to the Agreement, upon receiving this notification, HB attempted to renegotiate the Agreement, however DAS LLC refused. In the alternative, DAS LLC assured HB that it would continue to provide the 10,000 hours of service to HB per year.

5. During contract year 2002-2003, DAS LLC provided 3,673 hours of service to HB. During contract year 2003-2004, DAS LLC provided 5,281 hours of service to HB. During contract year 2004-2005, DAS LLC provided only 1,753 hours of service.

6. Despite not providing the required hours of service, HB continued to pay DAS LLC $75,000 per month as required in the Agreement through December 2004. Due to the material breach by DAS LLC in not providing the required number of service hours in the past three contract years, HB stopped making monthly payments in January 2005.

7. On June 3, 2005, DAS LLC sent a letter to HB indicating it had not received monthly payments for January 2005 through June 2005 per the Agreement for a total amount due of $450,000 and demanding payment of same no later than June 15, 2005.

2

8.   On June 16, 2005, after HB refused to pay additional monies under the Agreement for service hours it was not receiving, DAS LLC sent a Notice of Termination indicating the Agreement would terminate in June 2007. Also in this letter, DAS LLC indicated it would communicate directly with Harley with respect to the Delphi/HB relationship, a direct violation of the confidentiality agreement which was in place.

9.   In a September 7, 2005 letter from HB to DAS LLC, HB indicated that due to DAS LLC contacting Harley directly, in breach of the Agreement, the Agreement was terminated immediately and it demanded immediate payment of $1,778,100 pursuant to Paragraph 4.1(g) of the Agreement which states "In case of termination, the Parties shall reimburse the other Party ... 2) for amounts paid for which the other party has not already received the associated deliverables ...".

10.   In a September 27, 2005 letter DAS LLC declined making the $1,778,100 payment, contested the immediate termination of the Agreement and declined to meet with HB in an effort to resolve its differences.

11.   As a result of the impasse between DAS LLC and HB, HB commenced litigation in Ozaukee County, Wisconsin Circuit Court as Case No. 05-CV-419 on September 28, 2005. A true and correct copy of the Ozaukee County Complaint was attached to the Proof of Claim filed on July 31, 2006 and is incorporated herein by reference. DAS LLC identified this litigation in response to Question 4(a) of the Statement of Financial Affairs filed in these proceedings.

12.   On October 8, 2005 and October 14, 2005, DAS LLC commenced its Chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of New York, thereby staying the Ozaukee County Wisconsin litigation.

13. As a result of DAS LLC's breach of the Agreement, HB has suffered damages in the amount of at least $1,778,100 which includes payments made to DAS LLC for which no corresponding service was received and lost value, for which it filed Proof of Claim No. 14012 on July 31, 2006.

## II. LEGAL BASIS FOR ALLOWANCE OF CLAIM

14. The specific legal basis for HB's proof of claim is the existence of the Agreement between HB and DAS LLC followed by DAS LLC's breach of the Agreement causing damages to HB as a direct and proximate result of DAS LLC's breaches.

15. In particular, DAS LLC breached the Agreement by:

   a. failing to renegotiate the Agreement as the result of the fact that, in 2003, Harley did not award HB with 100% of the 2007 Platform;

   b. filing to provide HB with an average of 10,000 hours of service per year; and

   c. notifying Harley that it was no longer doing business with HB.

16. The failure of DAS LLC to perform its obligations under the Agreement and specifically, the failure to provide the required engineering services and the failure to engage in good faith efforts to renegotiate the Agreement when Harley failed to award the specific brake work to HB was a material breach by DAS LLC. This material breach provided a legal basis for HB to cease its payments under the Agreement. ***Entzminger v. Ford Motor Co. 47 Wis. 2d 751, 177 N.W. 2d 899 (1970); Restatement (Second) of Contracts §241 (1979).***

17. DAS LLC's acknowledged failures under the Agreement can in no way be considered substantial performance of its obligations set forth in the Agreement. DAS LLC can point to no legal excuse for not performing, providing sufficient grounds for the damages claimed by HB. ***Restatement (Second) of Contracts § 236 (1979)***

18.     DAS LLC was provided repeated and ample opportunity to cure but even if it could be argued that DAS LLC was without such notice, such fact is irrelevant to preserving HB's claim for damages due to DAS LLC's breach. ***Steele v. Pacesetter Motor Cars, Inc. 267 Wis. 2d 873, 672 N.W. 2d 141 (Wis. App. 2003)*** Wisconsin law is clear that a material breach of the contract -- one that deprives the non-breaching party of the benefit reasonably expected -- releases the non-breaching party from performance. ***State v. Dielke, 274 Wis. 2d 595, 682 N. W. 2d 945 (2004)***

19.     While the Agreement is silent on the choice of law, the Agreement does contemplate that the place of performance is Wisconsin and Wisconsin would appear to have the most significant relationship with the subject matter of the Agreement. In any event, the contractual principles involved are well established in any jurisdiction and Michigan law mirrors Wisconsin law on these issues. See ***Blazer Foods, Inc. v. Restaurant Properties, Inc. 259 Mich. App. 241, 673 N. W. 2d 805 (2004)*** (When one party to a contract materially breaches the contract by failing to perform duties under the contract, the other party can consider the contract terminated and seek damages); ***Michaels v Amway Corporation 206 Mich. App. 644, 522 N. W. 2d 703 (1994)*** (The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for any alleged subsequent breach)

## III.   EVIDENCE UPON WHICH THE CLAIM IS BASED

20.     The evidence upon which HB's claim is based is set forth in the Affidavit of Rand McNally, President and CEO of HB and the Declaration of Russell Dudan, Chief Technical Officer of HB. The Affidavit and Declaration of these witnesses have attached Exhibits as more fully described in the respective Affidavit and Declaration which support the testimonial evidence.

WHD\5143039.2

21.     The Affidavit, Declaration and the attached exhibits demonstrate what is, at the root, a very straightforward yet material breach of the Agreement by DAS LLC. The Agreement required that over the term of the Agreement, however long that might be, DAS LLC would provide on the average 10,000 hours of service per year. There can be no reading of the undisputed facts to even suggest that DAS LLC came close to complying with its obligations in this regard.

22.     Nevertheless, the Affidavit and Declaration demonstrate that HB continued to pay until it became apparent that DAS LLC was not going to provide those service hours despite repeated assurances by DAS LLC that it would comply with the Agreement. HB paid $1,778,100 in anticipation of receiving those hours and in reliance upon DAS LLC's continued statements that the hours would be provided. DAS LLC is simply not entitled to retain HB's money while breaching the Agreement.

23.     On the other hand, in the event that it is determined by the Court that HB is not entitled to essentially restitution for the amounts DAS LLC has been unjustly enriched, then DAS LLC is required to provide services to HB equal to the amounts which it has paid. The Affidavit and Declaration amply demonstrate however, that DAS LLC has no intent to provide such services as required under the Agreement.

## IV.     DEBTOR'S CLAIM FOR DAMAGES

24.     In response to Paragraph 8 of the Debtors' Statement of Disputed Issues With Respect to Proof of Claim Number 14012 (HB Performance Systems LLC), HB denies that DAS LLC complied with all terms and fully performed under the Agreement. HB further denies that i) HB breached the Agreement in any manner, ii) that the Debtors have a claim against HB for any reason and iii) that the Debtors are entitled to collect any amounts from HB.

6

25. In response to Paragraphs 9, 10 and 11 of the Debtors' Statement of Disputed Issues With Respect to Proof of Claim Number 14012 (HB Performance Systems LLC), HB denies that it owes the Debtors any amount as alleged therein. HB affirmatively asserts, consistent with its claim against the Debtors, that the failure of DAS LLC to provide the required engineering services, the failure to engage in good faith efforts to renegotiate the Agreement and the failure to abide by the confidentiality provisions of the Agreement are individually and collectively, material breaches of the Agreement releasing HB from performance under the Agreement.

## V.  CONCLUSION

HB's Supplemental Response clearly demonstrates that HB's claim is valid and the testimonial evidence proves that DAS LLC's material breach of the Agreement caused substantial damages to HB by paying $1,778,100 and not receiving the bargained for services. Moreover, the material breach by DAS LLC of the Agreement preclude the Debtors from recovering any sums from HB. The Court is respectfully requested to allow HB Performance Systems, Inc. Claim No. 14012 in the amount of $1,778,100.

Dated at Milwaukee, Wisconsin, this 29th day of March, 2007.

WHYTE HIRSCHBOECK DUDEK S.C.

By: _____
Patrick B. Howell
State Bar No. 1008527
Ann M. Maher
State Bar No. 1000529

Of Counsel:

Whyte Hirschboeck Dudek S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wisconsin 53202
(414) 273-2100

One of the attorneys for HB Performance Systems, Inc.