Hearing Date And Time: April 20, 2007 at 10:00 a.m.
Objection Deadline: April 13, 2007 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :
    In re                              :      Chapter 11
                                               :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                               :
                     Debtors.    :      (Jointly Administered)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO FURTHER EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

("THIRD REMOVAL DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to further extend the time period within which the Debtors may remove pending proceedings, and respectfully represent as follows:

## Background

A.  The Chapter 11 Filings

    1.  On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

    2.  No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

    3.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    4.  The statutory predicates for the relief requested herein are 28 U.S.C. § 1452 and Bankruptcy Rules 9006(b)(1) and 9027.

B.  Current Business Operations Of The Debtors

5.  Delphi and its subsidiaries and affiliates (collectively, the "Company"), as of December 31, 2006 had global net sales of $26.4 billion, and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.  Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2] On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed its "Concurso" application for a Spanish insolvency proceeding.  The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

    8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which were charges related to the U.S. employee special attrition programs.

    9.    The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

    10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its transformation plan. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4] Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements. The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

5

UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in reorganized Delphi to support the Debtors' transformation plan. (The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.) The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM. The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors. The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

13.     On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589). On February 28, 2007, Delphi entered into an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to extend the date by which the company, the Cerberus affiliate, or the Appaloosa affiliate have the right to terminate the agreement on account of not yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a settlement of legacy issues with GM. The amendment extended the termination right pursuant to a 14-day notice mechanism. The amendment also extended the deadline to make certain regulatory filings under the federal

antitrust laws in connection with the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement.

15. Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15. The Debtors request entry of an order under Bankruptcy Rule 9006(b)(1) extending the time by which the Debtors may remove an action in accordance with 28 U.S.C. § 1452 and Bankruptcy Rule 9027 to the later of (i) September 30, 2007, a date which is approximately four months after the current deadline, and (ii) 30 days after entry of an order terminating the automatic stay with respect to the action, without prejudice to the Debtors' right to seek further extensions.

## Basis For Relief

16. The Debtors are parties to more than 200 judicial and administrative proceedings (collectively, the "Actions") pending in various courts or administrative agencies throughout the United States. The Actions involve a wide variety of claims. The Court

previously extended the initial removal deadline to April 6, 2006. The Court granted a second extension, which expires on the later of (a) June 7, 2007, and (b) 30 days after entry of an order terminating the automatic stay with respect to any particular action. By this Motion, the Debtors request a further extension to September 30, 2007. Because of the number of Actions involved and the wide variety of claims, the Debtors need additional time to determine which, if any, Actions should be removed and, if appropriate, transferred to this district. Furthermore, the proposed deadline coincides with the Debtors' current deadline to solicit acceptances of a plan of reorganization.[5]

17. The Debtors submit that the relief requested is in the best interests of their estates and creditors. The extension sought will afford the Debtors an opportunity to make fully informed and prudent decisions concerning the possible removal of the Actions, protecting the Debtors' valuable right to adjudicate lawsuits economically if the circumstances warrant removal. Moreover, this extension will not prejudice any of the litigants because the Actions are stayed through confirmation of the Debtors' reorganization plan absent relief from the automatic stay. Furthermore, no part of the requested relief will prejudice any Party whose proceeding is removed from seeking remand under 11 U.S.C. § 1452(b). Accordingly, the proposed extension requested herein will not prejudice the rights of other parties to any of the Actions.

Applicable Authority

18. 28 U.S.C. § 1452 and Bankruptcy Rule 9027 govern the removal of pending civil actions. Section 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a

---

[5] The September 30, 2007 deadline for the Debtors to solicit acceptances for a plan of reorganization was set under this Court's Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, entered on January 23, 2007 (Docket No. 6700).

> governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Bankruptcy Rule 9027(a)(2) further provides, in pertinent part:

> If the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed [in the bankruptcy court] only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

19.    Bankruptcy Rule 9006(b)(1), in turn, provides that the Court can extend unexpired time periods:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1).

20.    It is well settled that this Bankruptcy Rule 9006(b)(1) authorizes courts to expand the removal period as requested herein. See Jandous Elec. Constr. Corp. v. City of New York (In re Jandous Elec. Constr. Corp.), 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989) (removal deadline may be extended under Bankruptcy Rule 9006(b)); Doan v. Loomis (In re Fort Dodge Creamery Co.), 117 B.R. 438, 443 (N.D. Iowa 1990) (noting that trustee could have moved for extension); Stamm v. Rapco Foam, Inc., 21 B.R. 715, 718 (Bankr. W.D. Pa. 1982) (court may extend removal deadline in appropriate circumstances); Circle Litho, Inc., v. Ryder Truck Lines, Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All time limitations in

9

the rules are subject to Bankruptcy Rule 9006 which generally permits time limits set by the rules to be enlarged or reduced").

21. Furthermore, this Court has regularly granted other debtors' requests to extend the removal deadline to plan confirmation and beyond. See, e.g., In re Delaco Company, Case No. 04-10899 (Bankr. S.D.N.Y. April 21, 2004) (extending removal deadline to 30th day after plan effective date); In re Twinlab Corp., Case No. 03-15564 (Bankr. S.D.N.Y. Dec. 4, 2003) (90-day extension); In re Genuity Inc., Case No. 02-43558 (Bankr. S.D.N.Y. Feb. 26, 2003) (30th day after plan effective date); In re Global Crossing Ltd., et al., Case Nos. 02-40187 through 02-40241, 02-11982 (Bankr. S.D.N.Y. May 1, 2002) (extending removal deadline through plan confirmation); In re WorldCom, Inc., et al., Case No. 02-13533 (Bankr. S.D.N.Y. Oct. 8, 2002) (same).

## Notice Of Motion

22. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

23. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and

10

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the period set forth in Bankruptcy Rule 9027(a)(2)(A) during which they may remove any Action through and including the later of (i) September 30, 2007 and (ii) 30 days after entry of an order terminating the automatic stay with respect to the action, without prejudice to the Debtors' right to seek further extensions and (b) granting the Debtors such other further relief as is just.

Dated:     New York, New York
           March 30, 2007

         SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

         By:   /s/ John Wm. Butler, Jr.
           John Wm. Butler, Jr. (JB 4711)
           John K. Lyons (JL 4951)
           Ron E. Meisler (RM 3026)
         333 West Wacker Drive, Suite 2100
         Chicago, Illinois 60606
         (312) 407-0700

            - and -

         By:   /s/ Kayalyn A. Marafioti
           Kayalyn A. Marafioti (KM 9632)
           Thomas J. Matz (TM 5986)
         Four Times Square
         New York, New York 10036
         (212) 735-3000

         Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession