Hearing Date and Time: June 26, 2007, at 10:00 am (prevailing Eastern Time)
Objection Deadline: June 19, 2007, at 4:00 pm (prevailing Eastern Time)

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
                                              :
In re:                                        :    Chapter 11
                                              :
DELPHI CORPORATION, et al                     :    Case No. 05-44481 (RDD)
                                              :
            Debtors.                          :    (Jointly Administered)
                                              :
------------------------------------------------------------- x
```

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FOURTH INTERIM FEE APPLICATION**

| | |
|---|---|
| NAME OF APPLICANT: | KPMG LLP |
| PERIOD FOR WHICH COMPENSATION IS SOUGHT: | October 1, 2006 through and including January 31, 2007 |
| ROLE IN THE CASE: | Tax and Transaction Services Advisors and Advisory and Valuation Services Advisors for the Debtors |
| DATE OF ORIGINAL RETENTION ORDER: | March 3, 2006 |
| DATE OF FIRST SUPPLEMENTAL RETENTION ORDER: | May 2, 2006 |
| DATE OF SECOND SUPPLEMENTAL RETENTION ORDER: | December 6, 2006 |
| DATE OF THIRD SUPPLEMENTAL RETENTION ORDER: | March 30, 2007 |
| AMOUNT OF COMPENSATION SOUGHT : | $2,994,667.15 |
| AMOUNT OF REIMBURSEMENT SOUGHT: | $265,285.42 |
| TOTAL AMOUNT OF HOLDBACK FEES FOR THE APPLICABLE PERIOD: | $598,933.43 |

05-44481-rdd    Doc 7582    Filed 03/31/07    Entered 03/31/07 22:45:20    Main Document
Pg 2 of 40
Hearing Date and Time: June 26, 2007, at 10:00 am (prevailing Eastern Time)
Objection Deadline: June 19, 2007, at 4:00 pm (prevailing Eastern Time)

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                       :

In re:                  :      Chapter 11
                       :

**DELPHI CORPORATION, et al**   :      Case No. 05-44481 (RDD)
                       :

     Debtors.          :      (Jointly Administered)
                       :

------------------------------------------------------------- x

## FOURTH APPLICATION OF KPMG LLP, AS TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM OCTOBER 1, 2006 THROUGH JANUARY 31, 2007

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

       KPMG LLP ("KPMG"), a professional services firm, serves as tax and

transaction services advisors and advisory and valuation services advisors to Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"). KPMG submits its fourth

application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code") and rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for interim allowance of compensation

for professional services performed by KPMG for the period commencing October 1, 2006 through and including January 31, 2007 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period, and respectfully represents:

## Background

1.     On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, commenced their respective cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     This Court entered orders directing the joint administration of the Debtors' chapter 11 cases under Bankruptcy Rule 1015(b) (Docket Nos. 28 and 404).

3.     On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.  On May 11, 2006, the US Trustee appointed the committee of equity security holders (the "Equity Committee").

## Jurisdiction

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.     The statutory predicate for the relief requested herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

## KPMG LLP Retention

6.    On February 14, 2006, the Debtors filed an application pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, for authorization to retain KPMG as Tax and Transaction Services Advisors to the Debtors, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Application"), pursuant to the terms of the engagement letters as described therein (the "Engagement Letters").   On March 3, 2006, the Court entered an order approving the KPMG Retention Application pursuant to the terms and conditions of such order, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Order").

7.    On April 20, 2006, the Debtors filed a supplemental application (the "KPMG Supplemental Retention Application") for authorization to retain KPMG as Advisory and Valuation Services Advisors to the Debtors effective nunc pro tunc to February 16, 2006, and for authorization to expand the retention of the scope of KPMG to include the matters set forth in certain additional engagement letters, by and between the Debtors and KPMG, each as described therein (the "First Supplemental Engagement Letters").   On May 2, 2006, this Court entered an order approving the KPMG Supplemental Retention Application pursuant to the terms of such order, effective nunc pro tunc to (i) February 16, 2006 for the employment and retention of KPMG as Advisory and Valuation Services Advisors to the Debtors, (ii) January 1, 2006 for the continued retention of KPMG as Tax Advisors to the Debtors, and (iii) January 18, 2006 for the additional International Executive Tax Services effective nunc pro tunc to January 18, 2006 to be rendered by KPMG to the Debtors (the "KPMG Supplemental Retention Order").

3

8.     On November 10, 2006, the Debtors filed a supplemental application (the "KPMG Second Supplemental Application") for authorization to retain KPMG to provide the Debtors with (i) certain improvements to the International Tax Reporting Package and Process effective nunc pro tunc to August 1, 2006, (ii) certain Internal Reporting Initiatives effective nunc pro tunc to July 10, 2006, (iii) a certain Special Investigation, (iv) certain Transfer Pricing Services effective nunc pro tunc to May 19, 2006, (v) certain improvements to the Financial Close, Consolidation, and Management Reporting Processes, and (vi) certain Additional Services, each as described therein (the "Second Supplemental Engagement Letters").  On December 6, 2006, this Court entered an order approving the KPMG Second Supplemental Retention Application pursuant to the terms of such order (the "KPMG Second Supplemental Retention Order").

9.     On March 16, 2007, the Debtors filed a supplemental application (the "KPMG Third Supplemental Retention Application") for authorizing the employment and retention of KPMG to (i) enter into the Master Professional Services Agreement (the "Master Agreement") and the applicable Statements of Work ("SOWs") with the Debtors effective nunc pro tunc to February 9, 2007, (ii) continue to provide the Debtors with certain Global Mobility Services related to international assignees effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with certain Tax Consulting Services effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with certain International Assignment Services related to the Debtors' international assignees effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with certain Fresh Start Services effective nunc pro tunc to November 16, 2006, and (vi) provide the Debtors with certain Additional Services (including the

4

renewal and extension of existing services, additional phase services under existing engagements, and additional services under future SOWs between the Debtors and KPMG in accordance with the Master Agreement). On March 30, 2007, this Court entered an order approving the KPMG Third Supplemental Retention Application pursuant to the terms of such order (the "KPMG Third Supplemental Retention Order").

### Procedures and Monthly Fee Statements

10.    This Application has been prepared in accordance with (i) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") and (iii) the (A) Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (the "Supplemental Interim Compensation Order"), (C) the Second Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second Supplemental Interim Compensation Order), (D) the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331

5

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order"), and (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as Exhibit "A."

11.    On April 28, 2006, KPMG filed its first interim fee application (the "First Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 5, 2005 through January 31, 2006 (the "First Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the First Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the First Interim Fee Period in the aggregate amount of $1,439,122.50 and for reimbursement of expenses incurred in connection with these services in the amount of $17,631.00. KPMG has been paid $1,344,101.71 in compensation for professional services rendered and $17,631.00 for reimbursement of expenses during the First Interim Fee Period.

12.    On August 6, 2006, KPMG filed its second interim fee application (the "Second Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2006 through May 31, 2006 (the "Second Interim Fee Period") and for reimbursement of its actual

and necessary expenses incurred during the Second Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Second Interim Fee Period in the aggregate amount of $7,383,043.00 and for reimbursement of expenses incurred in connection with these services in the amount of $430,790.04. KPMG has been paid $7,305,013.37 in compensation for professional services rendered and $430,790.04 for reimbursement of expenses during the Second Interim Fee Period.

13.    On November 30, 2006, KPMG filed its third interim fee application (the "Third Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing June 1, 2006 through September 30, 2006 (the "Third Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Third Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Third Interim Fee Period in the aggregate amount of $1,969,703.80 and for reimbursement of expenses incurred in connection with these services in the amount of $176,339.61. KPMG has been paid $1,777,258.22 in compensation for professional services rendered and $176,339.61 for reimbursement of expenses during the Third Interim Fee Period.

14.    On or about November 30, 2006, KPMG served its October 2006 Monthly Fee Statement seeking an award of compensation in the amount of $70,108.00 for professional services rendered and reimbursement of $1,370.68 in expenses actually and necessarily incurred by KPMG during the period from October 1, 2006 through October 31, 2006. On February 26, 2007, the Debtors paid KPMG $56,086.40 (80% of $70,108.00) for professional services rendered and $1,370.68 for actual and necessary expenses for the period from October 1, 2006 through October 30, 2006.

15.     On or about December 31, 2006, KPMG served its November 2006 Monthly Fee Statement seeking an award of compensation in the amount of $1,192,958.90 for professional services rendered and reimbursement of $142,619.70 in expenses actually and necessarily incurred by KPMG during the period from November 1, 2006 through November 30, 2006.[1]  On March 13, 2007, the Debtors paid KPMG $956,369.12 for professional services rendered and $142,619.70 for actual and necessary expenses for the period from November 1, 2006 through November 30, 2006.

16.     On or about January 31, 2007, KPMG served its December 2006 Monthly Fee Statement seeking an award of compensation in the amount of $376,373.50 for professional services rendered and reimbursement of $63,759.48 in expenses actually and necessarily incurred by KPMG during the period from December 1, 2006 through December 31, 2006.  On March 13, 2007, the Debtors paid KPMG $301,098.80 (80% of $376,373.50) for professional services rendered and $63,759.48 for actual and necessary expenses for the period from December 1, 2006 through December 31, 2006.

17.     On or about February 28, 2007, KPMG served its January 2007 Monthly Fee Statement seeking an award of compensation in the amount of $1,355,226.75 for professional services rendered and reimbursement of $57,535.56 in expenses actually and necessarily incurred by KPMG during the period from January 1, 2007 through January 31, 2007.

---

[1]     Due to an inadvertent clerical error, KPMG served and Amended November 2006 Monthly Fee Statement on January 1, 2007.

**Requested Fees and Reimbursement of Expenses**

18.    By this Application, KPMG respectfully requests an interim allowance for professional services rendered to the Debtors during the Compensation Period, in the aggregate of $2,994,667.15 and for reimbursement of expenses incurred in connection with the rendering of such services in the aggregate of $265,285.42.    During the Compensation Period, KPMG professionals expended a total of 8,321.7 hours for which compensation is requested.    KPMG's request for compensation is broken down as follows:

| Billing Period | Hours Billed | Fees | Expenses | Monthly Total |
|---|---|---|---|---|
| October 1 through October 31, 2006 | 81.2 | $    70,108.00 | $    1,370.68 | $    71,478.68 |
| November 1 through November 30, 2006 | 3,504.6 | $ 1,192,958.90 | $ 142,619.70 | $ 1,335,578.60 |
| December 1 through December 31, 2006 | 1,003.6 | $    376,373.50 | $    63,759.48 | $    440,132.98 |
| January 1 through January 31, 2007 | 3,732.3 | $ 1,355,226.75 | $    57,535.56 | $ 1,412,762.31 |
| Total | 8,321.7 | $2,994,667.15 | $265,285.42 | $3,259,952.57 |

19.    KPMG is the United States member firm of KPMG International.    The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world.    KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name.    KPMG International is a member-based entity with no shareholders and no permanent capital.    Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct.

20.    Prior to the Petition Date, KPMG subcontracted with certain other KPMG Member Firms to provide services to the Debtors as set forth in the Engagement

Letters, the First Supplemental Engagement Letters and the Second Supplemental Engagement Letters.    Pursuant to the KPMG Retention Order and the KPMG Supplemental Retention Order and the KPMG Second Supplemental Order, during the Compensation Period, KPMG Member Firms have continued to assist KPMG in the provision of services under the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement  Letters, the KPMG Supplemental Retention Application and the KPMG Second Supplemental Retention Application.

21.    KPMG charges its fees in these cases in accordance with billing rates and procedures in effect during the Compensation Period.  The rates KPMG charges for the services rendered by its professionals in these chapter 11 cases are the same rates KPMG charges for professional services rendered in comparable nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases.

22.    Pursuant to the UST Guidelines, annexed hereto as Exhibit "B" is a schedule setting forth all KPMG professionals who have performed services in these chapter 11 cases during the Compensation Period, the capacities in which each such individual is employed by KPMG, the hourly billing rate charged by KPMG for services performed by such individual, aggregate number of hours expended in this matter and fees billed therefor.

23.    Annexed hereto as Exhibit "C" is a schedule specifying the categories of expenses for which KPMG is seeking reimbursement and the total amount for each such expense category.

24.    Pursuant to section II.D of the UST Guidelines, annexed hereto as Exhibit "D" is a summary of KPMG's time records billed during the Compensation Period, including the utilization of project categories as described below.

25.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, KPMG reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## Summary of Services

26.    In accordance with the Engagement Letters, the First Supplemental Engagement Letters and the Second Supplemental Engagement Letters, KPMG has provided such services as KPMG and the Debtors deemed appropriate and feasible in order to advise the Debtors and their subsidiaries and affiliates in the course of these chapter 11 cases, including, but not limited to, the following:

    i.    International Tax Package Improvement;

    ii.    International Executive Services provided to Debtors and its Expatriates assigned to and from the United States, Expatriates assigned to and from non-U.S. countries, employees assigned to the Mexican Border and Mechatronics;

    iii.    Fee Statements and Fee Applications

    iv.    Non-Working Travel Time

    v.    Transaction Services - Project Rhodes;

    vi.    Advisory and Valuation Services;

    vii.    Tax Consulting Services;

    viii. Internal Reporting Initiatives

    ix.  Transfer Pricing Services

    x.   Internal Audit Investigation

    xi.  Financial Close, Consolidation and Management;

    xii.  Electronics & Safety – Assess Product Line Reporting;

    xiii. Transaction Services – Project Rhodes/Evergreen III; and

    xiv. Transaction Services - Project KDAC Steering.

27.    The services provided by KPMG to the Debtors are not unnecessarily duplicative of those provided by any other of the Debtors' professionals, and KPMG has coordinated any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

28.    The following is a summary of certain of the significant professional services rendered by KPMG during the Compensation Period, as well as the compensation sought for such services.

| CATEGORY | HOURS | FEES |
|---|---|---|
| International Tax Process Improvement | 624.5 | $  232,422.50 |
| International Executive Services | 4.1 [2] | $  127,985.80 |

[2]    Under the terms of the International Executive Services Engagement Letter dated October 5, 2004 (the "International Executive Services Engagement Letter"), compensation for services rendered to the Debtors is based in part on hourly compensation and in part on a fixed amount per tax return prepared, as more fully set forth therein. A total of 4.1 hours were billed, giving rise to total fees of $1,394.00. The remaining compensation charges are based on fixed tax return rates.

| | | |
|---|---:|---:|
| Fee Statements and Fee Applications | 432.6 | $ 49,289.00 |
| Non-Working Travel Time | 275.8 | $ 49,141.75 |
| Transaction Services - Project Rhodes | 294.9 | $ 79,920.00 |
| Advisory and Valuation Services | 0.0 | $ 0.00 |
| Tax Consulting Services | 6.0 | $ 2,310.00 |
| Internal Reporting Initiatives | 1,899.8 | $ 647,939.10 |
| Transfer Pricing Services | 197.2 | $ 45,000.00 |
| Internal Audit Investigations | 62.1 | $ 8,694.00 |
| Financial Close, Consolidation and Management | 1,387.6 | $ 587,400.00 |
| Electronics & Safety-Assess Product Line Reporting | 520.7 | $ 180,997.50 |
| Transactions Services-Project Rhodes/Evergreen III | 1,309.5 | $ 512,342.50 |
| Transaction Services - Project KDAC Steering | 1,306.9 | $ 471,225.00 |
| Total Hours and Fees | 8,321.7 | $2,994,667.15 |

## Description of Services Provided

29.     The following is a more detailed description of the significant professional services rendered by KPMG during the Compensation Period.

(a)     **International Tax Process Improvement**

i.      collaborating with Delphi to identify improvements to the international tax reporting package and process;

ii.     assisting with the development, implementation, and testing of improvements to the international tax reporting package and processes;

iii.    assisting with the development of training materials for the improved international tax reporting package and processes;

iv.     assisting with training of Delphi personnel on the new

13

international tax reporting package and process;

v.    assisting Delphi with reviewing the implementation of the international tax reporting package and processes; and

vi.    providing other services related to the development and implementation of the improved international tax reporting package and processes as appropriate.

(b)    **International Executive Services provided to Debtors and its expatriates assigned to and from the United States, Expatriates assigned to and from non-U.S. countries, employees assigned to the Mexican Border and Trainees/J Visa holders**

i.    collecting tax data;

ii.    calculating annual hypothetical tax withholding;

iii.    preparing required home and host country individual income tax returns during, and one year after, assignment;

iv.    preparing requests for extension of time to file tax return(s) where required;

v.    preparing US estimated tax vouchers, if required;

vi.    preparing year end withholding calculations;

vii.    reconciling tax advance accounts;

viii.    preparing tax equalization calculations;

ix.    conducting pre-departure and/or post-arrival tax consultation, as requested;

x.    determining and arranging for timely payment of local taxes in the host countries, where applicable;

xi.    handling routine correspondence with the IRS and foreign tax authorities, including review of tax assessments;

xii.    providing additional services as requested by the Debtors or its counsel to assist the Debtors regarding its expatriate employees;

xiii.    prior to assignment of services, (a) preparing cost projection including revisions, (b) preparing draft expatriate agreement,

14

and (c) preparing draft pay calculations;

    xiv.    at the beginning of assignment services, (a) preparing final expatriate agreement and pay calculations and participate in orientation, (b) calculating relocation allowance and mobility premium to be paid in month prior to assignment and provide to payroll, and (c) calculating first year spending account to be paid in first month of assignment and provide to payroll;

    xv.    calculating annual spending account on assignment anniversary date and provide to payroll; and

    xvi.    calculating relocation allowance less outstanding tax and pro-rata spending account due from employee.

**(c)    Fee Statements and Fee Applications**

    i.    preparation of monthly fee statements and quarterly fee applications.

**(d)    Non-Working Travel Time**

    i.    time incurred for necessary non-working travel time.

**(e)    Transaction Advisory & Other Services**

    i.    providing sell-side due diligence services associated with the potential sale of certain businesses or assets of the Debtors;

    ii.    providing buy-side due diligence services associated with the potential acquisition of certain businesses or assets by the Debtors;

    iii.    providing accounting advice and assistance provided in conjunction with the preparation of financial information for business operations within the Debtors, as specified by the Debtors; and

    iv.    providing other such functions as requested by the Debtors or its counsel to assist the Debtors in their businesses and reorganization.

**(f)**     **Advisory and Valuation Services**

      i.      providing analysis of potential impairment charges in accordance with Statements of Financial Accounting Standards (SFAS) 142 and 144 related to goodwill, intangibles, and long-lived assets; and

      ii.     providing assistance to the Debtors with initial planning for the Fresh Start valuation exercise in connection with the Debtors' future emergence from chapter 11.

**(g)**     **Tax Consulting Services**

      i.      providing advice and assistance to the Debtors regarding various tax issues.

**(h)**     **Internal Reporting Initiatives**

      i.      realignment of reporting units;

      ii.     strategic Enterprise Management (SEM) and schedule B Desk - modification of spreadsheets and realignment of Tie Sheets for previous 2 reporting years, which are tied to Hyperion;

      iii.    income Statement and Forecast Reporting  - modification of spreadsheets and realignment of Master file for previous 2 reporting years, which are tied to Hyperion; and

      iv.    produce Line Profit & Loss (P&L) Reporting – realign into appropriate product business unit for previous 2 reporting years.

**(i)**     **Transfer Pricing Services**

      i.      reviewing of transfer pricing methods applied to Tangible product sales from Delphi's U.S. affiliate to the Canadian affiliates;

      ii.     reviewing of transfer pricing methods applied to sharing of research and development costs among Delphi's U.S.

affiliate and Canadian affiliates;

iii.     reviewing of transfer pricing methods applied to administrative services provided by Delphi's U.S. affiliate to the Canadian affiliate;

iv.     interviewing knowledgeable personnel in Dayton and Toronto regarding the nature of intercompany transactions, including the assignment of functions and risks;

v.     reviewing Delphi's comparable company benchmarking analysis for reasonableness;

vi.     reviewing the "cost competitive adjustments" applied to Delphi's tested-party results for comparability with third-party benchmarks;

vii.     assessing the appropriateness of any "comparable uncontrolled prices" identified by management;

viii.     selecting the most appropriate method (or "best method" for U.S. purposes) with which to test arm's length pricing for tangible-product transactions;

ix.     reviewing the existing R&D cost sharing agreement, and consider its appropriateness in light of each affiliate's actual contributions and the applicable transfer pricing regulations; and

x.     analyzing administrative services expenses charged from the U.S. affiliate to the Canadian affiliate and documenting an understanding of the cost base included in the charges, and assessing the appropriateness of the allocation keys.

**(j)**     **Internal Audit Investigation**

i.     special investigation – HD Flint Facility;

**(k)**     **Financial Close, Consolidation and Management**

i.     interviewing Finance Management staff and leads in the Budgeting and Forecasting group to gain an understanding

17

of their goals;

ii. comparing current finance organization alignment, structure and process standardization to industry leading practices and management goals;

iii. assessing the Change Management needs and develop a "go" forward" plan;

iv. following up interviews and meetings with Corporation Consolidation and Reporting group to expand on our initial workshop interview;

v. performing data mining and analysis of the trail balance resubmissions;

vi. drafting detailed process maps of the Corporate Close, Consolidation and Internal and External Reporting (refer to High Level close Process Map documented during our initial workshop);

vii. gaining an understanding of the legal entity and management reporting processes (e.g. Hyperion utilization);

viii. assesing the current multiple charts of Accounts (i.e. Hyperion, SAP, DGL and others);

ix. performing GAP analysis comparing divisional processes to industry leading practices as observed by KPMG;

x. performing high level benchmark of the Corporate Controllers Organization; and

xi. presenting Report to Stakeholders.

**(l)    Electronics & Safety – Assess Product Line Reporting**

i. gathering information and determine requirements of key data elements; and

ii. identifying opportunities for immediate improvement to product line reporting.

(m)    **Transaction Services – Project Rhodes/Evergreen III**

    i.    assisting in the identification and collection of financial information related to the 2006 carve-out of the DS businesses from Delphi corporation ("Delphi");

    ii.    assisting with the project coordination with DS, Delphi and other advisors;

    iii.    assisting with the identification of potential transaction issues relating to the 2006 financials (e.g., carve-out issues, allocation issues, redundant/stranded costs), if any ;

    iv.    assisting in the organization and management of 2006 financial information and workpapers used to support DS's stand-alone business line financial statements;

    v.    inquiring and challenging information provided by management relating to the carve-out of DS business lines from Delphi for 2006 financials;

    vi.    reading and commening on any updates to the individual business line business plan prepared by DS and/or Delphi (if required);

    vii.    assisting in the organization and management of 2006 financial information and workpapers in the data room, and;

    viii.    researching disclosure requirements and drafting example disclosures commonly required for SEC registrants that are relevant to the financial statements to enable Delphi to populate those disclosures with DS-specific amounts.

(n)    **Transaction Services - Project KDAC Steering**

    i.    assisting in the identification and collection of financial information related to the carve-out of the KDAC Steering businesses from KDAC financials for the years ended 2004, 2005, and 2006;

    ii.    assisting with the identification of potential transaction

19

issues relating to the 2004 through 2006 financials (e.g.,. carve-out issues, allocation issues, redundant/stranded costs), if any;

iii.   inquiring and challenging information provided by management relating to the carve-out of KDAC Steering business from KDAC for the 2004 through 2006 financial information;

iv.    assising in the organization and management of 2004-2006 financials information and workpapers used to support KDAC Steering's stand-alone financial statements;

v.     reading and commenting on any updates to the business line business plan prepared by KDAC management and/or Delphi (if required);

vi.    reading and commening on any US to Korean GAAP adjustments identified by Delphi and or KDAC Management; and

vii.   assisting in the organization and management of 2006 financial information and workpapers in the data room.

30.    The foregoing professional services performed by KPMG were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by KPMG were in the best interests of the Debtors and other parties-in-interest. Compensation for the foregoing services, as requested, is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. The professional services were performed expediently and in an efficient manner.

31.    The professional services performed by KPMG on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 8,321.7 recorded

hours by KPMG's professionals. Of the aggregate time expended, 8,321.7 recorded hours were expended by partners and associates of KPMG.

32.    During the Compensation Period, KPMG billed the Debtors for time expended by professionals based on hourly rates ranging from $150.00 to $525.00 per hour (which amounts do not include hourly rates for fixed fee engagements). Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $368.91 (based on 8,321.7 recorded hours for professionals at KPMG's billing rates in effect at the time of the performance of services).[3] As noted above, annexed hereto as Exhibit B is a schedule listing each KPMG professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by KPMG for services performed by each such individual and the aggregate number of hours and charges by each such individual.

### Actual and Necessary Disbursements of KPMG LLP

33.    As set forth in Exhibit "C," KPMG has disbursed $265,285.42 as expenses incurred in providing professional services during the Compensation Period. The actual expenses incurred in providing professional services were necessary, reasonable, and justified to serve the needs of the Debtors, their estates, and creditors and KPMG has made every effort to minimize its disbursements in these cases.

### The Requested Compensation Should Be Allowed

34.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a

---

[3]    *See supra* note 1.

court may award a professional employed under section 327 of the Bankruptcy Code

"reasonable compensation for actual necessary services rendered . . . and reimbursement

for actual, necessary expenses." *Id.* § 330(a)(1). Section 330 also sets forth the criteria

for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to
> be awarded, the court should consider the nature, the
> extent, and the value of such services, taking into account
> all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the
>        administration of, or beneficial to, at the time at
>        which the service was rendered toward the
>        completion of, a case under this title;
>
> (D)    whether the services were performed within a
>        reasonable amount of time commensurate with the
>        complexity, importance, and nature of the problem,
>        issue, or task addressed; and
>
> (E)    whether the compensation is reasonable based on
>        the customary compensation charged by
>        comparably skilled practitioners in cases other than
>        cases under this title.

*Id.* § 330(a)(3).

35.    The services for which KPMG seeks compensation and the expenditures

for which KPMG seeks reimbursement in this Application were necessary for and

beneficial to the orderly administration of the Debtors' estates and their rehabilitation

and reorganization effort. KPMG worked assiduously to anticipate or respond to the

Debtors' needs and assist in the Debtors' chapter 11 processes. These services and

expenditures were necessary to and in the best interests of the Debtors' estates and

22

creditors.  Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

36.    In sum, the services rendered by KPMG were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

### Conclusion

WHEREFORE, KPMG respectfully requests that the Court: (i) allow KPMG interim compensation for professional services rendered during the Compensation Period in the amount of $2,994,667.15 and reimbursement for actual and necessary expenses KPMG incurred during the Compensation Period in the amount of $265,285.42; (ii) direct the Debtors to pay KPMG the total amount of outstanding fees in connection with KPMG's representation of the Debtors during the Fourth Interim Fee Period; (iii) hold that the allowance of such interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to KPMG's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Fourth Interim Fee Application; and (iv) grant KPMG such other and further relief as is just.

Dated: March 31, 2007
New York, New York

KING & SPALDING LLP


By:  /s/ H. Slayton Dabney, Jr.
    H. Slayton Dabney, Jr., Esq.


1185 Avenue of the Americas
New York, NY  10036-4003
Tel:  (212) 556-2100
Fax:  (212) 556-2222

Attorneys for KPMG LLP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, *et al.* | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors | : | (Jointly administered) |

---

## ORDER APPROVING FOURTH APPLICATION OF KPMG LLP, AS TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES <u>INCURRED FROM OCTOBER 1, 2006 THROUGH JANUARY 31, 2007</u>

This matter comes before the Court upon the Fourth Application (the "Application") of KPMG LLP ("KPMG"), as Tax and Transaction Services Advisors and Advisory and Valuation Services Advisors for the Debtors, for Interim Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses for the Period from October 1, 2006 through January 31, 2007 (the "Compensation Period").

This Court having reviewed the Application; and no objections or comments to the Application having been filed; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein,

THIS COURT HEREBY FINDS THAT:

(1)     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue of this Chapter 11 case and Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the Local Bankruptcy Rules.

(2)    KPMG is a duly appointed professional in the above-captioned Debtors' chapter 11 cases.

(3)    KPMG served the Application with all exhibits by overnight mail to all Notice Parties referenced at Paragraph 2.a of the Order establishing compensation procedures (Doc. #869).  KPMG served a Notice of filing and objection/hearing dates by electronic mail (or by fax when no email address provided) upon all persons on the Master Service List and the 2002 List.

(4)    No objections were filed.

(5)    Based upon this Court's review of the Application and the schedules attached thereto, the fees and expenses are reasonable, actual and necessary.

IT IS, THEREFORE, ORDERED, that:

1.    The Application is APPROVED AND GRANTED.

2.    The fees and reimbursable expenses for the Compensation Period are approved and allowed in the following amounts, and Debtors may pay KPMG such amounts to the extent not already paid:

| | |
|---|---|
| Fees (100%) | $2,994,667.15 |
| Holdback Amount (20%) | ($598,933.43) |
| | $2,395,733.72 |
| Expenses (100%) | $265,285.42 |
| Total | $2,661,019.14 |

Dated:    New York, New York
          _____, 2007


                                          _____
                                          United States Bankruptcy Judge

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
                                              :
In re:                                        :
                                              :     Chapter 11
DELPHI CORPORATION, et al                     :     Case No. 05-44481 (RDD)
                                              :
                                              :     (Jointly Administered)
                                              :
                                              :
              Debtors.                        :
------------------------------------------------------------- X
```

## CERTIFICATION UNDER GUIDELINES FOR FEES AND
## DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF
## FOURTH APPLICATION OF KPMG LLP FOR
## INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Gary A. Silberg, hereby certify that:

1.      I am a partner with the applicant firm, KPMG LLP ("KPMG"), with

responsibility for the chapter 11 cases of Delphi Corporation and its above-captioned affiliated

debtors (collectively, the "Debtors"), in respect of compliance with (i) the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the United States

Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") and

(iii) the (A) Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, dated November 4, 2005 (the "Interim

Compensation Order"), (B) the Supplemental Order Under 11 U.S.C. § 331 Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated

March 8, 2006 (the "Supplemental Interim Compensation Order"), (C) the Second Supplemental

Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second Supplemental Interim Compensation Order"), (D) the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order"), (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated December 11, 2007 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

     2.     This certification is made in respect of KPMG's Fourth Application, dated March 31, 2007 (the "Application"), for interim compensation and reimbursement of expenses for the period commencing October 1, 2006 through and including January 31, 2007, in accordance with the Guidelines.

     3.     In respect of section B.1 of the Local Guidelines, I certify that:

     a.     I have read the Application;

     b.     to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

c.  the fees and disbursements sought are billed at rates in accordance with those customarily charged by KPMG and generally accepted by KPMG's clients; and

d.  in providing the reimbursable services reflected in the Application, KPMG did not make a profit on those services, whether performed by KPMG in-house or through a third party.

4.  In respect of section B.2 of the Local Guidelines and as required by the Administrative Orders, I certify that KPMG has complied with these provisions requiring it to provide (i) the United States Trustee for the Southern District of New York, (ii) the Debtors, (iii) the attorneys for the Debtors, (iv) the attorneys for the statutory committee of unsecured creditors appointed in these cases, (v) counsel for the agent under Debtors' prepetition facility, (vi) counsel for the agent under the Debtor's postpetition credit facility, and (vii) the Fee Committee, with a monthly fee statement, following each month for which compensation is sought, with a statement of KPMG's fees and disbursements accrued during the previous month. As required by the Interim Compensation Order, each such monthly fee statement contains a list of professionals and paraprofessionals providing services, their respective billing rates, the aggregate hours spent by each professional and paraprofessional, a reasonably detailed breakdown of the disbursements incurred and contemporaneously maintained time entries for each individual in increments of tenths of an hour.

5.  In respect of section B.3 of the Local Guidelines, I certify that the United States Trustee for the Southern District of New York, the Debtors, the attorneys for the Debtors and the attorneys for the statutory committee of unsecured creditors appointed in these cases are each being provided with a copy of the Application.

Dated: Chicago, Illinois
      March 31, 2007

Gary A. Silberg
KPMG LLP
303 East Wacker Drive
Chicago, IL 60601
Telephone: (312) 665-1916

**EXHIBIT B**

EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
October 1, 2006 through January 31, 2007

| Name of Professional Person | Position | Net Rate [1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Khan, Adil | Partner | $525 | 291.1 | $ 152,827.50 |
| Silberg, Gary | Partner | $525 | 3.0 | $ 1,575.00 |
| Orlando, Joe | Partner | $480 | 118.8 | $ 57,024.00 |
| Kim, Edward | Partner - Korea | $475 | 7.0 | $ 3,325.00 |
| Shin, Kyong Choul | Partner - Korea | $475 | 20.1 | $ 9,547.50 |
| Forsythe, Duncan | Partner | $470 | 4.0 | $ 1,880.00 |
| Silberg, Gary | Partner | $465 | 2.0 | $ 930.00 |
| Garcia, Fernando | Partner | $435 | 3.5 | $ 1,522.50 |
| Stoffregen, Phil | Partner | $385 | 6.0 | $ 2,310.00 |
| Brickley, Douglas | Managing Director | $500 | 25.0 | $ 12,500.00 |
| Canter, Ralph | Managing Director | $465 | 15.0 | $ 6,975.00 |
| Dailey, Bill | Managing Director | $465 | 216.1 | $ 100,486.50 |
| Brickley, Douglas | Managing Director | $345 | 2.6 | $ 897.00 |
| Kahn, Pierre | Director | $465 | 181.8 | $ 84,537.00 |
| LaRocca, Leonard | Director | $465 | 122.0 | $ 56,730.00 |
| Gorski, Tom | Director | $465 | 192.2 | $ 89,373.00 |
| Gary, Dan | Director | $450 | 6.7 | $ 3,015.00 |
| Champion, Jon | Director | $405 | 154.5 | $ 62,572.50 |
| Kim, Jin Man | Director - Korea | $400 | 60.6 | $ 24,240.00 |
| Kim, Jin Tae | Director - Korea | $400 | 12.5 | $ 5,000.00 |
| Kuntz, Brad | Director | $345 | 14.2 | $ 4,899.00 |
| Montero, Miguel | Director | $345 | 3.5 | $ 1,207.50 |
| Mellentine, Jay | Sr. Manager | $465 | 138.3 | $ 64,309.50 |
| Timmins, Mike | Sr. Manager | $450 | 209.0 | $ 94,050.00 |
| Shin, Yun Seo | Sr. Manager - Korea | $400 | 246.0 | $ 98,400.00 |
| Miller, Vivian | Sr. Manager | $375 | 75.5 | $ 28,312.50 |
| Mulligan, Michael | Sr. Manager | $375 | 434.5 | $ 162,937.50 |
| Reid, Cathy | Sr. Manager | $375 | 174.5 | $ 65,437.50 |
| Sliva, John | Sr. Manager | $375 | 8.0 | $ 3,000.00 |
| Augier, Marc | Manager | $432 | 138.8 | $ 59,961.60 |
| Ricafort, Mike | Manager | $432 | 262.0 | $ 113,184.00 |
| Yeager, Brian | Manager | $432 | 14.0 | $ 6,048.00 |
| Baumgartner, John | Manager | $400 | 5.5 | $ 2,200.00 |
| Frymann, Franzi | Manager | $400 | 164.6 | $ 65,840.00 |
| Hayes, Brad | Manager | $400 | 81.5 | $ 32,600.00 |
| Klacking, Don | Manager | $400 | 278.2 | $ 111,280.00 |
| Smith, Brandon | Manager | $400 | 1.0 | $ 400.00 |
| Willars, Hector | Manager | $400 | 47.5 | $ 19,000.00 |
| Holmes, Matthew | Manager - Korea | $350 | 108.3 | $ 37,905.00 |
| Jang, Hyun Min | Manager - Korea | $350 | 60.0 | $ 21,000.00 |
| Jung, Woo Jong | Manager - Korea | $350 | 245.4 | $ 85,890.00 |
| Bartolome Monge, Susana | Manager | $290 | 74.5 | $ 21,605.00 |
| Baumgartner, John | Manager | $290 | 6.3 | $ 1,827.00 |
| Motta, Xavi | Manager | $290 | 40.9 | $ 11,861.00 |
| Smith, Brandon | Manager | $290 | 6.5 | $ 1,885.00 |

EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
October 1, 2006 through January 31, 2007

| Name of Professional Person | Position | Net Rate (1) | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| McStravick, Mark | Manager | $435 | 249.2 | $ 108,402.00 |
| Ricafort, Mike | Manager | $435 | 248.4 | $ 108,054.00 |
| Ricafort, Mike | Manager | $405 | 58.0 | $ 23,490.00 |
| Raich, Judi | Sr. Associate | $315 | 162.2 | $ 51,093.00 |
| Wachter, Ryan | Sr. Associate | $315 | 613.1 | $ 193,126.50 |
| Wilson, Bill | Sr. Associate | $315 | 714.6 | $ 225,099.00 |
| Lang, Tim | Sr. Associate | $300 | 107.5 | $ 32,250.00 |
| Morris, Terri | Sr. Associate | $300 | 2.5 | $ 750.00 |
| Sellers, Monica | Sr. Associate | $300 | 206.8 | $ 62,040.00 |
| Shariff, Tanya | Sr. Associate | $300 | 88.9 | $ 26,670.00 |
| Jones, Kevin | Sr. Associate | $300 | 42.2 | $ 12,660.00 |
| Shi, Ying | Sr. Associate | $300 | 32.0 | $ 9,600.00 |
| Wilson, Bill | Sr. Associate | $300 | 261.2 | $ 78,360.00 |
| Kim, Byung Uk | Sr. Associate - Korea | $250 | 277.3 | $ 69,325.00 |
| Ko, Ju Hyun | Sr. Associate - Korea | $250 | 32.2 | $ 8,050.00 |
| Shim, Sean | Sr. Associate - Korea | $250 | 56.8 | $ 14,200.00 |
| Murray, Jennifer | Sr. Associate | $238 | 4.1 | $ 975.80 |
| Morris, Terri | Sr. Associate | $210 | 6.0 | $ 1,260.00 |
| Sellers, Monica | Sr. Associate | $210 | 96.2 | $ 20,202.00 |
| Parker, Laura | Sr. Associate | $210 | 13.0 | $ 2,730.00 |
| Tollefsrud, Kari | Sr. Associate | $140 | 78.9 | $ 11,046.00 |
| Gwinn, Cameron | Associate | $200 | 99.8 | $ 19,960.00 |
| Howell, Barbara | Associate | $200 | 13.0 | $ 2,600.00 |
| Yacu, Christopher | Associate | $200 | 83.6 | $ 16,720.00 |
| Gupta, Pankaj | Associate | $195 | 153.9 | $ 30,010.50 |
| Jang, Su Jin | Associate - Korea | $175 | 1.5 | $ 262.50 |
| Akpinar, Fatih | Associate | $150 | 40.8 | $ 6,120.00 |
| Alvarez, Estafania Dude | Associate | $150 | 51.5 | $ 7,725.00 |
| Howell, Barbara | Associate | $150 | 33.6 | $ 5,040.00 |
| Jonna, Vincent | Associate | $150 | 2.0 | $ 300.00 |
| Wardlow, Joe | Associate | $150 | 3.8 | $ 570.00 |
| Total Hours and Fees | | | 8,117.6 | $ 2,940,998.90 |

EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
October 1, 2006 through January 31, 2007

### TAX - International Executive Services

| Category | Number of Employees | Monthly Calculations | Cost per Amended Tax Return | Cost Estimate | Total Compensation |
|---|---|---|---|---|---|
| US Inbound Expatriates | 17 | | | $ 850 | $ 14,450.00 |
| Non-US Expatriates | 28 | | | $ 850 | $ 23,800.00 |
| US Outbound Expatriates | 32 | | | $ 850 | $ 27,200.00 |
| Mexico Border Employees Monthly | | | | | |
| | 1,515 | $40/month | | | $ 60,600.00 |
| Mechatronics Monthly | 24 | $40/month | | | $ 960.00 |
| | | | | | $ 127,010.00 |

### Transfer Pricing Services [(2)]

| | | |
|---|---|---|
| Zollo, Thomas | Partner | 7.6 |
| Devitt, Joseph | Director | 18.8 |
| Klopfer, Jerry | Director | 41.6 |
| Vaidya, Kunj | Manager | 42.8 |
| Sike, Rolland | Sr. Associate | 1.5 |
| Tarica-Kemp, Dawn | Sr. Associate | 91.8 |
| | | 204.1 | $ 45,000.00 |
| | | 8,321.7 | $ 3,113,008.90 |

[(3)]        $ (118,341.75)

Voluntary Reduction in Fee Preparation Fees, Non-Working Travel Time and Transfer Pricing Services

Subtotal Fees                                                $ 2,994,667.15

Out of Pocket Expenses                                       $ 265,285.42

Total Fees and Expenses                                      $ 3,259,952.57

---

[(1)] Although the monthly fee statements for the Compensation Period submitted by KPMG reflect total fees using KPMG's Standard Rates, less any agreed upon discounts, for purposes of clarity, KPMG has provided Net Rates in the Application which simplify the actual amounts billed to Delphi.

[(2)] The net amount billed to Delphi by KPMG under the Transfer Pricing Services Engagement reflects a fixed fee arrangement in accordance with the terms and conditions of the Transfer Pricing Services Engagement Letter dated May 22, 2006 because the $94,074.10 in hourly fees regarding this project exceeded the agreed upon cap of $45,000.

[(3)] Due to an inadvertent billing error, KPMG will provide Delphi with a credit of $ $2,502.50.

**EXHIBIT C**

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Out-of-Pocket Expenses
October 1, 2006 through January 31, 2007

| Category | | Amount |
|---|---|---|
| Airfare | $ | 103,471.30 |
| Ground Transportation | $ | 57,922.93 |
| Lodging | $ | 91,119.30 |
| Meals | $ | 12,771.89 |
| Other | $ | - |
| | | |
| Total expenses | $ | 265,285.42 |

**EXHIBIT D**

# EXHIBIT D

Delphi Corporation et al.
Compensation by Project Category
October 1, 2006 through January 31, 2007

| Category | Hours | Amount | Adjusted Discounted Amount (where applicable) |
|---|---|---|---|
| Tax - International Tax Process Improvement | 624.5 | $ 309,825.00 | $ 232,422.50 |
| Tax - International Executive Services | 4.1 | $ 128,404.00 [1] | $ 127,985.80 |
| Fee Statements and Fee Applications | 432.6 | $ 121,501.00 | $ 49,289.00 |
| Non-Working Travel Time | 275.8 | $ 112,856.50 | $ 49,141.75 |
| Transaction Services - Project Rhodes | 294.9 | $ 79,920.00 | $ 79,920.00 |
| Advisory and Valuation Services | 0.0 | $ - | $ - |
| Tax Consulting Services | 6.0 | $ 2,310.00 | $ 2,310.00 |
| Internal Reporting Initiatives | 1,899.8 | $ 1,079,898.50 | $ 647,939.10 |
| Transfer Pricing Services | 197.2 | $ 94,074.10 | $ 45,000.00 |
| Internal Audit Investigation | 62.1 | $ 23,287.50 | $ 8,694.00 |
| Financial Close, Consolidation and Management | 1,387.6 | $ 954,120.00 | $ 587,400.00 |
| Electronics & Safety - Assess Product Line Reporting | 520.7 | $ 301,662.50 | $ 180,997.50 |
| Transaction Services - Project Rhodes/Evergreen III | 1,309.5 | $ 512,342.50 | $ 512,342.50 |
| Transaction Services - Project KDAC Steering | 1,306.9 | $ 471,225.00 | $ 471,225.00 |
| Total hours and fees | 8,321.7 | $ 4,191,426.60 | $ 2,994,667.15 |

[1] These hours relate to billings totaling $1,394.00. The remaining compensation charges are based on rates per tax return.