STINSON MORRISON HECKER LLP
Attorneys for ThyssenKrupp Budd Systems,
LLC, ThyssenKrupp Waupaca, Inc. and
ThyssenKrupp Stahl Company
1201 Walnut Street
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Mark A. Shaiken, Esq.

**Hearing Date: April 20, 2007,10:00 a.m. EDT**
**Objection Deadline: April 13, 2007, 4:00 p.m. EDT**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| **In re** | : |
| | : **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | : **Case No. 05-44481 (RDD)** |
| | : |
| | : **(Jointly Administered)** |
| **Debtors.** | : |

-------------------------------------------------------------x

### RESPONSE OF THYSSENKRUPP BUDD SYSTEMS, LLC, THYSSENKRUPP WAUPACA, INC. AND THYSSENKRUPP STAHL COMPANY'S (COLLECTIVELY, "TK BUDD COMPANIES") TO DEBTORS' TENTH OMNIBUS OBJECTION PURSUANT TO 11 U.S.C. §502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) DUPLICATE AND AMENDED CLAIMS AND (B) EQUITY CLAIMS

ThyssenKrupp Budd Systems, LLC ("Systems"), ThyssenKrupp Waupaca, Inc. ("Waupaca") and ThyssenKrupp Stahl Company ("Stahl") (collectively the "TK Budd Companies") creditors and/ or parties in interest in the above captioned jointly administered Chapter 11 case of Delphi Corporation ("Delphi") by and through undersigned counsel, respond to the Debtors' Tenth Omnibus Objection to Claims (the "Claims Objection") as follows:

1.      On or about April 20, 2006, the TK Budd Companies filed their Motion for Relief from the Automatic Stay to Permit Them to Exercise Right of Setoff, at Docket 3312, and their Memorandum in Support thereof at Docket 3313 (collectively the "Setoff Motion"). The Setoff

Motion is attached hereto as Exhibit A. The Memorandum in Support Thereof is attached hereto as Exhibit B.

2.     Thereafter, by email dated April 24, 2006, counsel for the Debtors and counsel for the TK Budd Companies agreed to hold the Setoff Motion in abeyance pending an analysis by the Debtors of the facts and law set forth in the Setoff Motion. A true and correct copy of the email string setting forth this agreement is attached hereto and marked Exhibit C.

3.     From and after April 24, 2006 until the filing of the Claims Objection, the TK Budd Companies have not heard from the Debtors as to their position with respect to the Setoff Motion. Moreover, to date, the Debtors have not set forth any response to the TK Budd Companies' assertion of a right of setoff, whether factually or legally.

4.     Based on the TK Budd Companies' right of setoff as described in the Setoff Motion, the TK Budd Companies filed claims no. 16491 and 16490 which amended prior filed unsecured claims no. 10724 and 9940 to assert secured claims to the extent set forth in the Setoff Motion.

5.     Thereafter, the Debtors filed the Claims Objection alleging at page 22 of Exhibit A, that partially secured claims 16491 and 16490 filed by ThyssenKrupp Stahl Company and ThyssenKrupp Waupaca respectively were duplicates of unsecured claims 10724 and 9940, and asserting that the latter unsecured claims should survive, and the former, partially secured claims, should be expunged. The Claims Objection, however, does not address the issues set forth in the Setoff Motion.

6.     The basis for the TK Budd Companies' right of setoff is fully set forth in the Setoff Motion and Memorandum in Support Thereof and are adopted and incorporated herein by reference.

2

7.     For the reasons more fully set forth in the Setoff Motion, the TK Budd Companies assert a right of setoff in the amounts of $92,739.83 and $114,352.63 as more fully set forth in claims 16491 and 16490 respectively.

8.     For the reasons more fully set forth in the Setoff Motion and the Memorandum in Support Thereof, the TK Budd Companies' proofs of claim, to the extent of $92,739.83 and $114,352.63 are secured claims pursuant to § 506(a) of the Bankruptcy Code, and to the extent that the Claims Objection seeks to recharacterize such amounts as unsecured claims, the TK Budd Companies hereby object to any such recharacterization.

9.     Moreover, since the parties agreed to hold the Setoff Motion in abeyance, the TK Budd Companies object to the Claim Objection as an improper attempt to recharacterize the TK Budd Companies' claims in a manner other than in the context of the Setoff Motion.

WHEREFORE, for the reasons set forth herein, the TK Budd Companies pray that the Court enter an order allowing claims 16491 and 16490 as filed, and granting such other and further relief as is just.

Respectfully submitted,

STINSON MORRISON HECKER LLP

By:     */s/ Mark A. Shaiken*
        Mark A. Shaiken
        1201 Walnut Street, Suite 2700
        Kansas City, Missouri 64106
        Telephone: (816) 842-8600
        Facsimile: (816) 691-3204

ATTORNEYS FOR THYSSENKRUPP BUDD
SYSTEMS, LLC, THYSSENKRUPP WAUPACA,
INC. AND THYSSENKRUPP STAHL
COMPANY

3

DB03/806244 0004/7481914.1

STINSON MORRISON HECKER LLP
Attorneys for ThyssenKrupp Budd Systems,
LLC, ThyssenKrupp Waupaca, Inc. and
TheyssenKrupp Stahl Company
1201 Walnut Street
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Mark A. Shaiken, Esq.
Greta A. McMorris, Esq.

**Hearing Date: June 15, 2006, 10:00 a.m. EDT**
**Objection Deadline: May 10, 2006**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| **In re** | : |
| | : **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | : **Case No. 05-44481 (RDD)** |
| | : |
| | : **(Jointly Administered)** |
| **Debtors.** | : |

-------------------------------------------------------x

## THYSSENKRUPP BUDD SYSTEMS, LLC, THYSSENKRUPP WAUPACA, INC. AND THYSSENKRUPP STAHL COMPANY'S (COLLECTIVELY, "TK BUDD COMPANIES") MOTION PURSUANT TO BANKRUPTCY CODE §§ 362 AND 553 FOR ORDER LIFTING THE AUTOMATIC STAY TO PERMIT TK BUDD COMPANIES TO EXERCISE RIGHT OF SETOFF

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

ThyssenKrupp Budd Systems, LLC ("Systems"), ThyssenKrupp Waupaca, Inc.

("Waupaca") and ThyssenKrupp Stahl Company ("Stahl") (collectively, "TK Budd Companies")

creditors and/ or parties in interest in the above captioned jointly administered Chapter 11 case of

Delphi Corporation ("Delphi") by and through undersigned counsel, moves the Court for an

order under §§ 362(d) and 553 of the Bankruptcy Code granting TK Budd Companies' motion

for relief from the automatic stay to exercise its setoff rights.

## I.   STATEMENT OF JURISDICTION AND STATUTORY PREDICATE

1.     The Court has jurisdiction over this core proceeding and contested matter pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(G) and (M), and venue is proper pursuant to 28 U.S.C. § 1408 et seq. The statutory basis for this motion is §§ 362(a), (d), and 553 of the Bankruptcy Code. Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Rule 4001-1 Local Bankruptcy Rules for the Southern District of New York govern this proceeding.

## II.   FACTUAL BACKGROUND

1.     On October 8, 2005 (the "Petition Date"), the above captioned debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (hereinafter all references to title 11 of the United States Code, 11 U.S.C. 101-1334, as amended, are referred to as the "Bankruptcy Code"), thereby commencing these bankruptcy cases (collectively the "Bankruptcy Case"). Since the Petition Date, the Debtors have continued to possess and manage their assets and operate their business as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.     Prior to the Petition Date, Systems purchased certain goods from Delphi. Currently, Systems is indebted to Delphi for goods purchased pre-petition in the total amount of $351,295.92 (the "Systems' Indebtedness").

3.     Prior to the commencement date, Delphi purchased goods from Waupaca and Stahl. Waupaca and Stahl are affiliates of Systems.

4.     Currently, Delphi and is indebted to Waupaca for goods purchased pre-petition in the amount of $114,352.63.

2

5.      Currently, Delphi is indebted to Stahl for goods purchased pre-petition in

the amount of $92,739.83. Collectively, Delphi's indebtedness to Waupaca/Stahl totals

$207,092.46 (the Waupaca/Stahl Indebtedness").

6.      Pursuant to Systems' Purchase Orders and the Terms and Conditions

incorporated therein:

> Buyer shall be entitled at any time to set off any sums owing by Seller to Buyer or
> any of Buyer's affiliated companies, against sums payable by Buyer in connection
> with any of Seller's accounts regardless of the purchase orders or contracts from
> which such debits or credits arise.

A copy of the Terms and Conditions is attached hereto as Exhibit A.

7.      Thus, pursuant to the Terms and Conditions, Buyer (Systems) may setoff

sums owed to it by Seller (Delphi) to Buyer or any of Buyers affiliated companies (Waupaca and

Stahl) against sums payable to Buyer. As set forth in the argument below, this triangular setoff

is permitted pursuant to an agreement of the parties. Based on the Terms and Conditions,

Systems has a valid right of setoff in the amount of $207,092.46. [1]

## III.    MEMORANDUM OF LAW

1.      As set forth in the memorandum of law filed contemporaneously herewith

in support of this Motion, the Bankruptcy Code preserves a creditor's right to setoff if such a

right exists under state law. TK Budd Companies have such a right of setoff. Moreover, because

TK Budd Companies have such a right, cause exists for relief from the automatic stay.

## IV.    NOTICE

1.      Notice of this Motion will be provided in accordance with this Court's

Order dated October 14, 2005, establishing case management and notice procedures in these

---

[1] TK Budd Companies delayed filing this Motion because it received a demand letter from Delphi to pay the
Systems Indebtedness. TK Budd Companies attempted to settle the demand outside of Court, but was advised by
Delphi's counsel that the offset issues could not be resolved in the context of the demand letter.

3

Chapter 11 cases. No further or other notice need be provided. No previous motion for the relief

sought herein has been made to this or any other Court.

WHEREFORE TK Budd Companies respectfully requests the Court enter an Order:

      A.     Granting the Motion;

      B.     Lifting the automatic stay allowing TK Budd Companies to exercise their

setoff rights;

      C.     Granting such other relief as the Court deems just under the

circumstances.

RESPECTFULLY SUBMITTED this 20th day of April, 2006.


Respectfully submitted,

STINSON MORRISON HECKER LLP

By:    */s/ Greta A. McMorris*
      Mark A. Shaiken
      Greta A. McMorris
      1201 Walnut Street, Suite 2700
      Kansas City, Missouri 64106
      Telephone: (816) 842-8600
      Facsimile: (816) 691-3495

ATTORNEYS FOR THYSSENKRUPP BUDD
SYSTEMS, LLC, THYSSENKRUPP WAUPACA,
INC. AND THYSSENKRUPP STAHL
COMPANY

4

Exhibit 1

## GENERAL TERMS AND CONDITIONS

1. **Definitions.** The word "Buyer," whenever used herein, shall mean THYSSENKRUPP BUDD COMPANY INC. The party with which this Purchase Order is placed is referred to herein as "Seller." The goods and/or labor or services covered by this Purchase Order are referred to herein as the "Products," which term includes both goods and services unless the context clearly requires otherwise, and, as to goods, includes all parts, portions, items, attachments, repairs, replacements and substitutions thereof. The terms "Purchase Order," "herein" and "hereto" refer to and include the face of this document, these General Terms and Conditions, releases against blanket Purchase Orders that incorporate the terms of a Purchase Order by reference, and all other documents specifically made a part of this Purchase Order by Buyer whether in printed or electronic form. "Buyer's Plant" means the plan of Buyer the address of which appears on the face hereof. "Interest" means interest on the principal amount owed accruing from demand through the date of repayment at the prime rate of Citibank Delaware, as adjusted from time to time, plus one percent (1%) per annum. "Party" means any natural person, corporation, partnership, governmental authority or other legal entity. "Third Party" means any Party, including Buyer's customer, other than Buyer or Seller. "Seller Document" means any bill of lading, quotation, acknowledgment, invoice or other document, whether in electronic or printed form, issued by Seller.

2. **Entire Agreement.** This is the entire agreement between the parties respecting the Products and no modification of this Purchase Order shall be effective unless in writing and signed by Buyer's authorized representative. Any agreements, negotiations or understandings of the parties prior to the date of this Purchase Order, whether written or oral, are merged herein and superseded hereby. Reference in this Purchase Order to any Seller Document does not imply acceptance of any terms and conditions therein, which, if in addition to or inconsistent with the terms and conditions contained herein, shall not be part of the agreement between the parties.

3. **Offer Acceptance; No Modification.** A Purchase Order is an offer by Seller to Buyer to enter into the Purchase Order it describes. Seller's commencement of work under a Purchase Order will constitute unconditional acceptance of the offer with or without written acceptance from Buyer. Any Seller Document, to the extent containing terms in addition to or inconsistent with the terms of this Purchase Order, or a rejection of any term of this Purchase Order, shall be deemed to be a counter offer to Buyer and shall not be binding upon Buyer unless specifically accepted in writing by Buyer. This clause shall constitute a continuing objection to any such terms or rejection not specifically so accepted by Buyer. However, commencement of performance by Seller, in the absence of written acceptance of such counter offer by Buyer, shall be deemed to be performance in accordance with the terms of this Purchase Order and an acceptance hereof, notwithstanding prior dealings or usage of trade.

4. **Product Fabrication; Shipping Schedules.** Seller shall not fabricate any of the Products or procure any of the materials required in their fabrication, and Buyer shall have no obligation as to the same, except to the extent expressly authorized in this Purchase Order or in written instructions forwarded to the Seller by Buyer. Deliveries are to be made in quantities and at the times specified on the face hereof or in written instructions forwarded to the Seller by Buyer, but Buyer may from time to time change such quantities and times, or direct temporary suspension of the scheduled deliveries, without any liability whatsoever.

5. **Delay in Delivery.** If Seller, for any reason, including force majeure, does not comply with Buyer's delivery schedule, as to which time is of the essence, Buyer at its option may (a) approve a revised delivery schedule; (b) require shipment of any of the Products by a more expeditious method of transportation; or (c) terminate this Purchase Order without liability to Seller on account thereof.

6. **Title and Risk of Loss.** Title to and risk of loss of all Products subject to this Purchase Order shall remain with Seller until delivery and acceptance of the Products at Buyer's Plant.

7. **Payment Not Acceptance.** Payment for Products shall not constitute acceptance, and all Products shall be subject to Buyer's inspection and rejection at Buyer's Plant. Neither payment nor acceptance shall constitute acknowledgment of the absence of or breach of warranty or limit any of Buyer's rights hereunder. Buyer at its option may reject and, upon reasonable notice, return at Seller's risk and expense, or retain and correct, Products that fail to conform to the requirements of this Purchase Order even if the nonconformity does not become apparent until the manufacturing, processing, or assembly stage. If Buyer elects to correct the Products, it will consult with Seller on the method of correction. Seller will reimburse Buyer for all reasonable expenses resulting from rejection or correction.

8. **Payment Terms.** The Seller, in accepting this Purchase Order, agrees to allow the Buyer to make payment of invoices rendered by Seller, for the products covered by such Purchase Order, as follows:

(a) Discount Invoices

Page 3 of 8

(i) Dates 1st through the 15th - payable on the 25th of the current month.

(ii) Dated 16th through the final day of the month - payable on the 10th of the following month.

(b) Net Invoices. To the extent not superseded by the face of this Purchase Order, payment terms shall be MNS-2. Payment for goods or services shall be made a month and two days after the month in which the invoice is dated. The payment period shall be calculated from the invoice date.

Payment shall be made in U.S. dollars unless otherwise advised.

9.  Set Off. Buyer shall be entitled at any time to set off any sums owing by Seller to Buyer or to any of Buyer's affiliated companies, against sums payable by Buyer in connection with any of Seller's accounts regardless of the purchase orders or contracts from which such debits or credits arise.

10. Taxes. Except as may be otherwise provided on the face of this Purchase Order, the Seller shall pay, out of the purchase price, all federal, state, provincial, local taxes and any duties applicable to provision of the Products.

11. Infringement; Use of Products Licensed.

(a) Seller warrants that the Products and the sale and/or use thereof (before or after incorporation into products during manufacture) do not and will not infringe any patents or other intellectual property rights, United States or foreign.

(b) Seller will furnish to Buyer, without restrictions on use or disclosure, all information and data Seller requires or develops in the course of Seller's activities under a Purchase Order. At Buyer's request, Seller also will discuss with Buyer or another party designated by Buyer, without restrictions on use or disclosure, any potential design, quality or manufacturing problems with Products Seller worked on or produced pursuant to a Purchase Order.

(c) Seller grants to Buyer and to any affiliated company of Buyer a nonexclusive license under reasonable terms and conditions to make, have made, use, have used and sell under any other patents now or hereafter owned or controlled by Seller which cover any application of the technology embodied in the information or data Seller acquires or develops in the course of Seller's activities under a Purchase Order. At Buyer's request, Seller will furnish to Buyer all other information and data of Seller which Buyer deems necessary to understand the operation and to maintain the goods and Products delivered under a Purchase Order, and to understand and apply the information and data of this Paragraph 11 (c) hereof, with no restrictions on use other than Seller's patent rights.

(d) Seller warrants that it is aware of the uses to which the Products are to be put, and grants to Buyer, and each party or entity to which the Products are provided, a free, unrestricted, irrevocable and perpetual license, with a right to sublicense to others, to use, repair and reconstruct the Products in any manner, and warrants that Seller has full right to grant said license.

12. Warranties; Remedies.

(a) In addition to any other express and implied warranties provided by law or otherwise, Seller warrants that each Product (whether goods or services) shall: (i) be new and conform to this Purchase Order in all respects; (ii) conform to all specification, drawings, samples and other descriptions furnished by Buyer; (iii) be merchantable and fit forthe purpose for which intended; and (iv) be free from all defects in design, workmanship and materials and be of highest quality and workmanship. Seller also expressly warrants that title to all of the Products shall be vested in Buyer free and clear of any and all liens and encumbrances of whatever nature and kind. All warranties of Seller, express and implied, and remedies of Buyer, in this Section or elsewhere, shall survive indefinitely any delivery, inspection, test, acceptance and payment.

(b) Upon any breach of warranty, in addition to all other remedies hereunder or under applicable law or in equity, Buyer may (i) cancel all/or any portion of this Purchase Order, (ii) require the Seller to repair or replace any or all Products, at Buyer's option and at Seller's sole expense, either at Buyer's Plant or at any other location designated by Buyer, (iii) require Seller to pay any all transportation and other charges arising from delivery, storage and return of Products, and/or (iv) purchase replacement Products from a Third Party and charge the same to the Seller;

13. **Default.** Seller shall be in default hereunder if (a) Seller does not comply with this Purchase Order in all respects, (b) Seller makes an assignment for the benefit of creditors, or proceedings in bankruptcy or insolvency are instituted by or against Seller, or (c) at any time in the Buyer's sole judgment Seller's financial or other condition or progress on this Purchase Order shall be such as to endanger timely performance. Upon any default hereunder, in addition to all other remedies hereunder at law or in equity, Buyer may cancel all or any part of this Purchase Order without liability except to pay the contract price for Products delivered prior to notice of cancellation, purchase from a Third Party replacement Products ordered hereunder and recover from Seller on demand any and all increased costs or other damages relating thereto, plus interest and attorneys fees, costs of suit and other damages.

14. **Indemnification.** Seller agrees to indemnify, defend and hold harmless the Buyer, its affiliates, customers and each other party to which Products are provided, and each of their shareholders, directors, officers, employers and agents, on demand, from and against any and all claims, demands, actions, causes of action, suits, costs, fees, penalties, damages (consequential and otherwise), attorneys' fees and all other liabilities and obligations whatsoever ("Losses") arising out of or related in any way to Seller's performance or obligations under this Purchase Order including, without limitation:

(a) personal injuries, illness or death of any natural person (including, without limitation, Seller's agents and employees) or damages to any property (including without limitation, the Seller's property) or any spill, discharge or emission of hazardous wastes or substances which relates to, in whole or in part, (i)any manufacturing, design or other defect, failure to warn, improper handling, improper operating instructions or other act or omission of Seller with respect to any of the Products, or (ii)the performance by Seller of any services, whether on property of Buyer, Seller or any Third Party;

(b) any breach of warranty made by or on behalf of Seller with respect to the Products or otherwise and any claim of a Third Party relating to any Products or their quality;

(c) any breach of this Purchase Order or any other agreement between Buyer and Seller;

(d) any recall campaign in which Buyer or any customer participates in connection with inclusion of Products in goods sold by Buyer; and/or

(e) claims alleging violation or infringement of any patent, copyright, or other intellectual property or proprietary right relating to Products provided by Seller, even if they are made to Buyer's specifications.

To the maximum extent permitted by applicable law, Seller's obligation to defend and indemnify will apply even as to Losses caused in whole or in part by an Indemnitee's negligence, but Seller's indemnification shall not apply to the extent that Losses are clearly shown to have resulted solely and directly from the negligence or willful misconduct of such indemnitee. Seller's obligation to defend and indemnify under this Section will also apply regardless of whether the claim arises in tort, negligence, contract, warranty, strict liability or otherwise. The indemnification obligation under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the benefit of Seller under Workers' Compensation Acts, occupational disease acts, disability benefits acts or other employee benefits acts.

In furtherance and not in limitation of the foregoing, Seller agrees that it will pay interest to Buyer, on demand, on all indemnification amounts owed, and Buyer may at its option participate in the defense of any Third Party claim with its own counsel, at Seller's expense.

15. **Change or Cancellation for the Convenience of Buyer.** Buyer reserves the right, for any reason, to cancel any undelivered portion of this Purchase Order or make changes in the specifications, amount, type, etc., of the Products. Buyer will have such right of cancellation notwithstanding the existence of an excusable delay under Section 19. Upon receipt of notice of cancellation, Seller, unless otherwise directed by Buyer, will (i) terminate promptly all work under this Purchase Order; (ii) transfer title and deliver to Buyer the finished work, the work in process, and the parts and materials which Seller produced or acquired in accordance with a Purchase Order and which Seller cannot use in producing goods for itself or for others; (iii) verify/attest all claims by subcontractors for actual costs that are rendered unrecoverable by such termination and provided the recovery of materials in Seller's possession is ensured; and (iv) take actions reasonably necessary to protect property in Seller's possession in which Buyer has an interest until disposal instruction from Buyer has been received. Subject to the other provisions hereof, Buyer shall pay to Seller only the following amounts, without duplication, in complete and final satisfaction of any liabilities relating to this Purchase Order:

(a) The purchase price for all Products received by Buyer prior to cancellation or change and accepted in accordance with this Purchase Order; and

(b) The reasonable direct out-of-pocket damages incurred by Seller in connection with Products covered by this Purchase Order and not shipped prior to cancellation or change and a reasonable profit

Page 5 of 8

based on such costs, but in no event shall Buyer's obligations exceed the Purchase Order price for the Products, and; provided that, the Seller shall use its best efforts to mitigate such damages.

In the event of a change, as provided herein, Buyer will make reasonable adjustment to the purchase price and delivery schedules.

16. **Service and Replacement Parts.**

(a) At Buyer's request, Seller will sell to Buyer the Products of this Purchase Order for production parts or components necessary to fulfill Buyer's service parts requirements to its customer for such Products at the price specified in the Purchase Order plus any actual cost differential for packaging.

(b) At Buyer's request during the ten-year period after Buyer completes current model purchases for its customer, Seller will sell to Buyer Products to fulfill Buyer's customer's past model service and replacement requirements at the prices specified in this Purchase Order plus actual cost differentials for packaging and manufacturing. During the tenth year of such period, Buyer and Seller will negotiate in good faith with regard to Seller's continued manufacture of service and replacement Products.

17. **Buyer's Property.** Seller shall not purchase for the account of Buyer or charge to Buyer any tools, dies, jigs, molds, fixtures, patterns or other equipment (collectively, "Tools") used or usable for producing Products pursuant to this Purchase Order, unless such Tools have been listed on Seller's invoice and approved by Buyer in writing. Seller acknowledges that all Tools so approved, all Tools otherwise supplied by Buyer or its customer, and all Products returned by Buyer for repair or pending replacement (collectively, "Buyer's Property") are and shall be owned by Buyer and Tools shall be used only for the production of Products for Buyer. Seller shall have only temporary possession of Buyer's Property and shall deliver all or any part thereof to Buyer immediately upon demand or automatically upon any bankruptcy or insolvency filing or other event. Seller at its own expense shall keep all Buyer's Property in working condition and fully insured for the benefit of Buyer at all times while in Seller's possession, will keep it segregated from all other assets and labeled as being the property of Buyer, and will immediately sign and file any UCC-1 forms required by Buyer in respect thereof. Seller bears all responsibility for loss of and damage to any Buyers Property, including responsibility for loss and damage which occur despite Sellers exercise of reasonable care, but excluding normal wear and tear. Seller hereby grants to the Buyer the option of purchasing any Tools which are not Buyer Property and have been used exclusively for the manufacture of the Products, at Seller's unamortized direct out of pocket cost. If Seller subcontracts all or any portion of the manufacture of the Tools, Seller shall so notify Buyer in advance and obtain for Buyer all of the rights contained in this Paragraph 17 from such subcontractor used by Seller.

18. **Insurance; Waiver of Liens.** Seller agrees to furnish to Buyer promptly upon request a certificate from its insurance brokers or agent showing that it carries adequate Workers' Compensation, and Comprehensive General Liability insurance coverage, including Contractual Liability insurance applicable to this Purchase Order. The certificate must show the amount of coverage, policy number, and date of expiration and must require the broker or agent to give Buyer thirty (30) days prior written notice of any lapse or cancellation of any policy. Buyer shall also be shown as an Additional Insured on the Comprehensive General Liability policy reflected on the certificate of insurance if services are to be performed on Buyer's premises. If Seller itself-claimed for Workers Compensation coverage, it will, if requested by Buyer, provide the applicable state certificate establishing such status to Buyer. Seller hereby waives all mechanics' liens and claims that none shall be filed or maintained against Buyer's premises on account of any Products and shall cause all its subcontractors, materialmen and suppliers (and subcontractors of such parties) to provide similar waivers and agreements in form satisfactory to Buyer.

19. **Force Majeure.** Seller shall not be liable for a reasonable delay or default in furnishing Products hereunder and Buyer shall not be liable for failure to perform any of its obligations hereunder, due to fire, flood, storm, national emergency or war, provided that either party has given the other prompt notice of such occurrence.

20. **Subcontracts.** In each subcontract of Seller's work performed pursuant to a Purchase Order, Seller will obtain for Buyer the rights and licenses granted in Paragraphs 11, 17, and 28.

21. **Remedies Cumulative; No Waiver.** Buyer's remedies relating hereto shall be cumulative and in addition to any other remedies provided herein or by law or in equity. No delay by Buyer in the enforcement of any provision of this Purchase Order shall constitute a waiver thereof, and no waiver thereof shall constitute a waiver of any other provision.

22. **Buyer's Liability.** In no event shall Buyer be liable for anticipated profits, interest, or penalties or incidental, consequential, punitive, exemplary or other damages or liabilities in connection with this Purchase Order, whether for breach of contract, late payment, property damage, personal injury, illness, or death or otherwise, beyond the sum set forth in Section 15 hereof, or, if not applicable, the price for Products accepted by Buyer.

23. **Limitation on Assignment.** This Purchase Order is issued to the Seller in reliance upon its personal performance of the duties imposed and by accepting same the Seller agrees not to assign this

Purchase Order or delegate the performance of its duties hereunder, except for the procurement of raw materials, without prior written consent of the Buyer. Failure to comply with the provisions in this paragraph shall effect, at the option of the Buyer, a cancellation of the Buyer's obligations hereunder without liability.

24. Compliance with Laws.

(a) Seller agrees to comply with all applicable federal, state, provincial, and local laws, rules, regulations and ordinances in connection with the manufacture, sale, delivery and use of the Products, including without limitation obtaining or making all approvals and filings, complying with country of origin requirements under the North American Free Trade Agreement and any other duty preference programs, and, upon request, Seller will submit to Buyer evidence of such compliance.

(b) In furtherance and not in limitation of (a) above:

(i) all invoices must carry the following certificate, and Seller agrees to comply therewith as to all Products: "We hereby certify that these Products were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof."

(ii) During the performance of this Purchase Order, Seller agrees to comply with all provisions of the Equal Opportunity clause(41 CFR 60-1.4(c)): the Affirmative Action Obligations (41 CFR 60-250); the Listing of Employment Openings clause (41 CFR 60-250.4(b) - (b)); the Employment of the Disabled clause (41 CFR 60.741.5); and any applicable laws pertaining to small/small disadvantaged business concerns. Further, Seller agrees to conform to Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973 (29 USC Section 793) and Section 402 of the Vietnam Era Veteran Readjustment Assistance Act (38 USC Section 4012), not to discriminate against any employee or applicant for employment because of race, religion, sex, creed, color, national origin, or disabled or veteran's status, and Seller certifies that it does not maintain any unlawful segregated facilities. This Purchase Order shall be deemed to incorporate by reference all the clauses required by the provisions of said regulations and laws and wherever the term "Contractor" is used in said clauses it will be deemed to refer to Seller.

(iii) To the extent that any of the Products are to be used by Buyer in connection with its manufacturing or assembly operations, including any activities incidental thereto, Seller hereby certifies and represents that said Products comply with all applicable rules and regulations issued under the Occupational Safety and Health Act (Public Law 91-596).

(iv) WHMIS, hazard communication labeling and material safety data sheets must precede all shipments of controlled substances.

(c) To the extent any of the statutory or regulatory provisions cited above are amended, supplemented or replaced, or additional statutory or regulatory provisions are enacted, Seller's obligations under this Purchase Order shall be automatically amended to take the same into account and the Seller Documents shall contain all legends and other disclosures required by the same.

25. Jurisdiction. The state and federal courts in the Eastern District of Michigan shall have exclusive jurisdiction and venue over the subject matter hereof.

26. Severability. If any provision of this Purchase Order, or portion of any provision, is declared or found to be unenforceable, the balance of this Purchase Order or such provision shall be interpreted and enforced to the greatest extent possible as if the unenforceable provision or portion had never been a part hereof. In particular, if any interest rate provided for herein is higher than that permitted by applicable law it shall automatically be amended to the highest legal rate.

27. Inventions. If this Purchase Order involves or results in the (i) any invention or any experimental, development or research activities, including engineering related thereto, (ii) any reduction to practice of any subject matter, application or discovery which could be patented or copyrighted, or (iii) any improvement in the design of the Products or any alternative or improved method of accomplishing the objectives of this Purchase Order (collectively, Inventions), such Inventions shall be owned by Buyer and be deemed confidential and proprietary property of Buyer, whether such Inventions of any portions thereof can be copyrighted or patented or not, and Seller shall cooperate (and cause its employees to cooperate) in executing any documents and taking any other actions necessary or convenient to patent, copyright, or otherwise perfect or protect such Inventions for the benefit of Buyer.

28. Proprietary Information.

(a) Any information or knowledge which Buyer may have disclosed or may hereafter disclose to Seller in connection with this Purchase Order and any and all services to be rendered and/or work to

be performed pursuant to this Purchase Order is and shall be deemed confidential and proprietary information of Buyer. Seller shall not, without authorization in writing from Buyer, use, communicate or disclose the confidential and proprietary information of Buyer. Seller agrees to safeguard the confidential and proprietary information of Buyer by using reasonable efforts, consistent with those used in the protection of its own proprietary information of a similar nature, to prevent its disclosure to third parties. Seller agrees to cause its employees, contractors, officers, directors, agents and representatives to be bound by and comply with the foregoing restrictions regarding the use or disclosure of such confidential and proprietary information. Seller further agrees not to assert any claims (other than a claim for patent infringement) with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the Products.

(b) All documents containing proprietary information relating to the Products produced or acquired by Seller under a Purchase Order will belong to Buyer. All drawings, know-how, and confidential information supplied to Seller by Buyer and all rights therein will remain the property of Buyer and will be kept confidential by Seller in accordance with Paragraph 28 (a) above.

(c) Seller shall, within five (5) business days of Buyer's request or the cancellation or termination of this Purchase Order, return all confidential and proprietary information (including all copies, notes and/or extracts thereof) furnished by Buyer pursuant to this Purchase Order. In addition, that portion of the confidential or proprietary information which consists of analyses, compilations, studies or other documents prepared by Seller, or by its directors, officers, employees, or advisers, will be destroyed.

(d) Seller will ensure that any Third Party to whom Seller subcontracts any of the work hereunder is bound by all of the terms and conditions relating to each work to which Seller is bound under a Purchase Order.

29. Audit Rights. Buyer retains the right at any reasonable time to send its authorized representatives to examine all pertinent documents and materials in the possession or under the control of Seller relating to any of Seller's obligations under this Purchase Order or any payments requested by Seller pursuant to this Purchase Order. Seller shall maintain all pertinent books and records relating to this Purchase Order for a period of two years after completion of services or delivery of Products pursuant to this Purchase Order.

IN WITNESS WHEREOF, we acknowledge receipt of and accept ThyssenKrupp Budd Company's original Purchase Order without exception.

(Name of Seller)

By: _____

Title: _____

Date: _____

REVISION DATE/TIME:  OCTOBER  1  ,  2002

Page 8 of 8

STINSON MORRISON HECKER LLP          **Hearing Date: June 15, 2006,10:00 a.m. EDT**
Attorneys for ThyssenKrupp Budd Systems          **Objection Deadline: May 10, 2006**
1201 Walnut Street
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Mark A. Shaiken, Esq.
Greta A. McMorris, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In re                                        :
                                             :     **Chapter 11**
**DELPHI CORPORATION, et al.,**              :     **Case No. 05-44481 (RDD)**
                                             :
                                             :     **(Jointly Administered)**
            **Debtors.**                     :
-----------------------------------------------------------x

**THYSSENKRUPP BUDD SYSTEMS, LLC, THYSSENKRUPP WAUPACA, INC. AND
THYSSENKRUPP STAHL COMPANY'S (COLLECTIVELY, "TK BUDD
COMPANIES") MEMORANDUM OF LAW IN SUPPORT PURSUANT TO
BANKRUPTCY CODE §§ 362 AND 553 FOR ORDER LIFTING THE AUTOMATIC
STAY TO PERMIT TK BUDD COMPANIES TO EXERCISE RIGHT OF SETOFF**

### I.      POINTS AND AUTHORITIES SUPPORTING RELIEF

As set forth below, TK Budd Companies have a valid right of setoff and cause exists to

grant TK Budd Companies relief from the automatic stay to enforce its setoff rights.

#### A.      Systems Holds a Valid Right of Setoff.

1.      Section 362(a)(7) of the Bankruptcy Code provides that the filing of the Debtors'

voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of

any debt owing to the debtor that arose before the commencement of the case under this title

against any claim against the debtor." § 362(a)(7) of the Bankruptcy Code. However, section

362(a)(7) does not affect a creditor's setoff rights. H.R. Rep. No. 595, 95th Cong., 1st Sess., at

342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., at 51 91978). Section 362(a)(7) "simply
stays its enforcement pending an orderly examination of the debtors' and creditors' rights." Id.
Thus, a party may still exercise its right to setoff in a bankruptcy proceeding if it obtains relief
from the automatic stay or obtains an order allowing setoff prior to exercising any right to setoff.
In re NTG Indus., Inc., 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).

2.      Setoff is the common law right to subtract a debt from an unrelated claim against
the same creditor.  Essentially, the right to setoff allows entities that have mutual obligations "to
apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B
when B owes A.'"  Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (quoting
Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913)).

3.      Bankruptcy law preserves these rights as they exist under non-bankruptcy law.
§ 553(a) of the Bankruptcy Code; In re HAL, Inc., 196 B.R. 159, 161 (9th Cir. B.A.P. 1996)
("To enforce a setoff right, '[a creditor] must establish that (1) it has a right of setoff under
nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553.'"); See
also, In re Whitaker, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994) (Statute governing setoff in
bankruptcy does not create a right of setoff but rather preserves the right where it exists under
applicable non-bankruptcy law.); In re Gordon Sel-Way, Inc., 239 B.R. 741, 751 (E.D. Mich.
1999). Thus, a creditor seeking to setoff a claim against a debtor in bankruptcy must establish its
right to do so under state or federal law.

4.      Setoff is permitted when the opposing claims are mutual.  Specifically, the two
claims must: (i) be held by the same parties; (ii) in the same right or capacity; and (iii) both arise
either pre-petition or post-petition.  See Whitaker, 173 B.R. at 361; and Sel-Way, 239 B.R. at
741.

2

5.      In addition, setoff is permitted in the "triangular" setoff situation . Walter E.

Heller & Co. v. Food Marketing Assoc., Ltd. (In the Matter of Fasano/Harriss Pie Co.), 43 B.R.

864, 870-71 (Bankr. W.D. Mich. 1984). A triangular setoff exists when, for example, a creditor

offsets a claim it owes to a parent company against a claim owed to it by an affiliate of the parent

company. A triangular setoff will be allowed if the parties agree to treat the debts of the

affiliated companies as a single entity. See In re Balducci Oil Co., Inc., 33 B.R.847 (Bankr. D.

Colo. 1983); Wooten v. Vicksburg Refining, Inc., 95 B.R. 404, 411 (Bankr. W.D. La. 1988)

(citing Collier On Bankruptcy and noting that triangular setoffs are permitted where there is an

agreement between the parties allowing them); Walter E. Heller & Co. v. Food Marketing

Assoc., Ltd. (In the Matter of Fasano/Harriss Pie Co.), 43 B.R. 864, 870-71 (Bankr. W.D. Mich.

1984) (stating courts have found mutuality between three parties as a matter of contract law,

where there was an express agreement evidencing the intent of the parties to effectuate triangular

setoffs) Bloor v. Shapiro, 32 B.R. 993, 1001-2 (S.D.N.Y. 1983)(acknowledging that triangular

setoffs meet the mutuality requirement when there is agreement among the parties); In re Berger

Steel Co., 327 F.2d 401, 405 (7th Cir. 1964)(acknowledging the allowance of triangular setoffs

where an agreement between the parties so provides); Peidmont Print Works v. Receivers, 68

F.2d 110, 111 (4th Cir. 1934)(finding mutuality where there was an agreement and an "identity

of interest" between the company and subsidiary).

6.      In this case, the parties have agreed to triangular setoff. As set forth in the Motion

filed contemporaneously herewith, Systems' Terms and Conditions specifically state that

triangular offsets are allowed between Systems and it affiliates and Delphi. Thus, mutuality

exists. Moreover, all of the other elements of setoff are met in this case. The Systems and

Delphi obligations and the Waupaca/Stahl and Delphi obligations have been incurred in the same

3

capacity. Specifically, Systems pays Delphi pursuant to its purchase orders. Similarly, Waupaca and Stahl pay Delphi for goods pursuant to their purchase orders. Moreover, all the indebtedness occurred pre-petition. Accordingly, TK Budd Companies hold a valid right of offset against Delphi

## B. Cause Exists for Lifting the Automatic Stay to Allow Systems to Exercise its Setoff Rights.

1. Setoff rights are stayed upon the filing of a bankruptcy petition. See § 362(a)(7) of the Bankruptcy Code (applying the stay to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor"). The creditor, therefore, must obtain stay relief in order to exercise its rights of setoff. See, e.g., In re Pieri, 86 B.R. 208, 210 (9th Cir. B.A.P. 1988); In re Metropolitan Hosp., 131 B.R. 283, 288 (E.D. Pa. 1991).

2. Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause such as lack of adequate protection of an interest in property of such party in interest." The demonstration of a valid right to setoff constitutes a prima facie showing of "cause" for stay relief. § 362(d)(1) of the Bankruptcy Code. See also, Whitaker, 173 B.R. at 361; Olson, 175 B.R. at 33. Upon a showing of cause, the burden shifts to the debtor to show that the stay should not be lifted. See § 362(g) of the Bankruptcy Code; Whitaker, 173 B.R. at 362.

3. As set forth above, Systems holds a valid right to setoff its pre-petition obligations to Delphi against Delphi's pre-petition indebtedness to Waupaca/Stahl. Accordingly, cause exists for lifting the automatic stay to allow TK Budd Companies to exercise the setoff right.

4

4.     Once a creditor definitively establishes its right to a particular setoff transaction,
the assets subject to setoff are entitled to a number of protections. For one, the assets subject to
setoff are expressly excepted from turnover. See, § 542(b) of the Bankruptcy Code. In addition,
the creditor obtains a secured claim against the estate "to the extent of the amount subject to
setoff," and holds an unsecured claim "to the extent that . . . the amount so subject to setoff is
less than the allowed amount of such claim." § 506(a) of the Bankruptcy Code.

## CONCLUSION

For the reasons set forth above, TK Budd Companies have a right of setoff and cause

exits to lift the automatic stay to allow TK Budd Companies to exercise thier right of setoff.

RESPECTFULLY SUBMITTED this 20th day of April, 2006.

Respectfully submitted,

STINSON MORRISON HECKER LLP

By:     /s/ Greta A. McMorris
        Mark A. Shaiken
        Greta A. McMorris
        1201 Walnut Street, Suite 2700
        Kansas City, Missouri 64106
        Telephone: (816) 842-8600
        Facsimile: (816) 691-3495

ATTORNEYS FOR THYSSENKRUPP BUDD
SYSTEMS, LLC, THYSSENKRUPP WAUPACA,
INC. AND THYSSENKRUPP STAHL
COMPANY

## Shaiken, Mark

| | |
|---|---|
| **From:** | Chris Lagow [clagow@teamtogut.com] |
| **Sent:** | Monday, April 24, 2006 3:32 PM |
| **To:** | McMorris, Greta; Shaiken, Mark |
| **Cc:** | Neil Berger; Gordon, Mark; guy.todd@ThyssenKrupp.com; Anthony Vassallo; Toussi, Sina; Comerford, Ciara M; Fletemeyer, Ryan; Turner, Barry; Fidler, Dana F |
| **Subject:** | Re: Delphi - TK Budd Setoff Motion; |
| **Attachments:** | Guy Todd |

Greta:

Thanks for your email – we are in agreement as to the status of the TK Budd setoff motion.

I'll forward Mr. Todd's contact info to Delphi's business people to get this process moving.

Thanks again.

Chris

Christopher D. Lagow
Togut Segal & Segal, LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 201-5568
(212) 967-4258 (Fax)
clagow@teamtogut.com


On 4/24/06 4:30 PM, "McMorris, Greta" <gmcmorris@stinsonmoheck.com> wrote:

> Chris --
>
> We have agreed to remove the TK Budd Setoff Motion from the court's June 15 hearing agenda. We have agreed to proceed under paragraph 18(a) of the DIP Order which allows TK Budd to seek relief from the stay to effectuate its setoff. We have agreed to hold the motion in abeyance while we resolve the legal issue of the triangular setoff. As we stated last Friday, we believe the business people are in agreement with the numbers.
>
> We have not agreed to the other procedures set forth in paragraph 18 of the DIP order, which requires the parties to mediate and arbitrate the setoff issues. Based on our conversation, we were not under the impression that you were requesting that the parties mediate and arbitrate our motion, but your message below is unclear with respect to that.
>
> Please reply to this e-mail and confirm whether we are in agreement as to the status of the TK Budd setoff motion.
>
> I have attached the contact information for Guy Todd, the TK Budd business representative.
>
> Greta A. McMorris
> Attorney at Law
> Stinson Morrison Hecker LLP
> 1201 Walnut Street, Suite 2700
> Kansas City, Missouri 64106
> 816-691-3295 (phone)
> 1-888-222-8942 (fax)
> gmcmorris@stinsonmoheck.com

**From:** Chris Lagow [mailto:clagow@teamtogut.com]
**Sent:** Monday, April 24, 2006 8:03 AM
**To:** Shaiken, Mark; McMorris, Greta
**Cc:** Neil Berger; Anthony Vassallo; Toussi, Sina; Fletemeyer, Ryan; Fidler, Dana F; Turner, Barry; Comerford, Ciara M
**Subject:** Delphi - TK Budd Setoff Motion

Mark & Gretchen

I'm writing to follow-up on the conversation that you had with Neil Berger last Friday concerning the setoff Motion that you filed on behalf of TK Budd.

As Neil mentioned, we'd like to have this matter removed from the court's June 15 agenda so that we can move forward toward resolution consistent with paragraph 18 of the Final DIP Order in these cases. Please confirm whether or not this is acceptable to your client.

I've copied Dana Fidler and Barry Turner on this email; They're the Delphi business representatives who in the first instance will be in charge of the reconciliation of the TK Budd setoff demand. Ciara Comerford is the Delphi in-house counsel who is supervising this project, and she's also copied.

Please respond with contact information for the TK Budd business representative with whom Messrs. Fidler and Turner can communicate and exchange information so that this matter can move forward toward closure. It would be helpful if your client can send its backup information to Messrs. Fidler and Turner in an excel or other electronic form as soon as it is able.

We look forward to hearing from you.

Christopher D. Lagow
Togut Segal & Segal, LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
(212) 967-4258 (Fax)
clagow@teamtogut.com

-------------------------------------

This e-mail message contains confidential information, which may be protected by the attorney-client or other privileges. It may constitute non-public, sensitive information. Intended conveyance is only to the named recipient(s). If you feel that you may have received this message in error or if you are not the named recipient, please notify Togut Segal & Segal LLP at once at the sender's email address, or at generalmail@teamtogut.com.

Unauthorized use, dissemination, distribution or reproduction of this message is strictly prohibited and may be unlawful. New IRS rules restrict written Federal tax advice from lawyers and accountants. We include this statement in all outbound emails because even inadvertent violations may be penalized. Nothing in this message is intended to be used, or may be used, to avoid any penalty under Federal tax laws. This message was not written to support the promotion or marketing of any transaction.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.