UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                               :

In re                             :        Chapter 11
                               :
DELPHI CORPORATION, et al.,   :        Case No. 05-44481 (RDD)
                               :
                     DEBTORS.  :        (Jointly administered)
                               :
------------------------------x

**AZIMUTH NORTH AMERICA LLC
& RELATED ENTITIES,**
and
**ROBERT MOTHERSHEAD, Individually,**

                      CREDITORS, in pro per.

Delphi Vendor #02-710-7130
18530 Mack Avenue
Grosse Pointe Farms MI USA 48236
+1 (313) 475 1682 (Direct)
+1 (866) 397 4833 (Fax)
azimuthllc @ earthlink.net



---

**CREDITOR'S REQUEST TO HOLD MATTER IN ABEYANCE,
IN RESPONSE TO DEBTORS' ELEVENTH OMNIBUS CLAIMS OBJECTION**

      NOW COMES Robert A. Mothershead, an individual and the authorized representative of Azimuth North America LLC and Related Entities ("Azimuth"), and requests to Court to hold this matter in abeyance for the following reasons:

1.    This claim is for at least $284,487 in unpaid fees for services that my company, Azimuth, and I rendered to Delphi Automotive Systems LLC in 2001 and 2002. After directing me to conduct work under an oral extension to a July 21, 2001 written contract with Delphi, Delphi

1

disputed my claim for my fees. This is outlined in Delphi Proof of Claim #15630 and its attachment, dated July 31, 2006.

2. Delphi's objection to my claim is based on its assertion that my original claim was settled in a lawful and legal manner in a Delphi-Azimuth Settlement and Release Agreement, dated October 17/19, 2002 (hereafter "the Agreement").

3. The Agreement contains settlement and release provisions, and also a time-unlimited confidentiality provision that unilaterally restricts me from disclosing any information I learned about Delphi during my work with the company in 2001-2002, including the restriction that I not disclose the existence of the Agreement itself and all of its terms.

4. I signed the Agreement with Delphi in October, 2002. Once I signed, Delphi paid me $19,000, which was literally pennies on the dollar for what Delphi owed me.

5. Based on new information and evidence I have received, I now believe that the settlement Agreement and its confidentiality provisions I signed were created by Delphi for explicitly illegal purposes related to Delphi's perpetration, furtherance, and concealment of an accounting fraud involving its idle facility floor space inventory and expenses; and to suppress further disclosure of my suspicions about Delphi's fraudulent activities.

6. Delphi's actions make the Agreement alternatively void from the start, voidable, cancelable and/or unenforceable:

   a. The Delphi-Azimuth Agreement is void from the beginning. The preponderance of my evidence will show that Delphi had ample reason and motivation to defraud, lie to and coerce me into silence, and to contain and suppress me from making further disclosures about Delphi's securities fraud. In Michigan law, a contract created for illegal purposes or for purposes contrary to public policy is

2

void ab initio. Delphi created its untruthful contract for the specific and illegal purpose of furthering its accounting and securities frauds, by suppressing and containing further disclosures by me that would have revealed Delphi's misconduct.

b. Delphi has already breached the Delphi-Azimuth Agreement. By committing the illegal fraudulent actions I was suspicious of, and then, by admitting to other illegal fraudulent actions of the very same type, Delphi has now made it impossible for me to continue to remain silent in the face of Delphi's illegal conduct, as required by the confidentiality provisions of the Agreement. No contract can require another party to undertake illegal conduct. Delphi has breached the Agreement and I am damaged by that breach.

c. The Delphi-Azimuth Agreement is void from the beginning. Delphi not only coerced me into signing the Agreement through the weight of its undue economic influence over me, but also fraudulently misrepresented itself during the negotiations in order to extract additional unpaid work from me and to convince me that there was no basis to my 2002 suspicions and allegations, and there was no basis for Delphi to pay me the fees I was owed. A contract created by one party to defraud the other is by definition illegal and void ab initio.

d. The Delphi-Azimuth Agreement is cancelable or unenforceable. The written record will show that I literally begged Delphi to fulfill its promises to me and to pay the fees it owed me. Ten months after I began work, Delphi offered 11 cents on the dollar and because I had gone unpaid for so long, I was on the verge of defaulting on my home mortgage. To the extent that I signed Delphi's illegal

contract, I did so only as a result of Delphi's fraudulent conduct, coercion, intimidation leading to extreme emotional and financial duress. Delphi's undue economic influence had left me no practical alternative, and I had no practical choice to do otherwise.

7. In sum, I believe the agreement was illegal at the time Delphi signed it, and am asking this Court to allow me additional time to present this evidence.

8. At the time I signed the agreement, there were certain material facts that Delphi was aware of, but I was not.

9. For example, at the exact same time my Delphi clients were disclosing suspicious information to me and I was observing their suspicious behaviors, it is now publicly known that many of the Delphi Corporate executives my clients reported to were in fact misrepresenting financial data and committing accounting fraud related to precious metals inventory and computer equipment and service contracts. I have since come to believe that one of the reasons Delphi refused to pay me was because I had uncovered potentially damaging information about another area of Delphi accounting fraud, involving Delphi's floor-space reporting formulas, and that this area has not been the subject of previous investigation.

10. New evidence and information that I have received as recently as February, 2007 strongly indicates that Delphi created the settlement Agreement with me in order to suppress discovery of this accounting fraud related to Delphi's idle facility floor space inventory expense accounting processes, and to suppress and conceal any further disclosures by me about that fraud and Delphi's rapidly deteriorating financial condition. To the best of my information and belief, Delphi has fraudulently misrepresented up to $440 million dollars in idle facility operating

expenses in a scheme intended to prevent those expenses from being recognized as current period expenses.

11. As a direct result of my receipt of this new information and evidence, I have filed a Whistleblower complaint with the Department of Labor and Occupational Safety and Health Administration's Whistleblower investigation unit. I have recently given OSHA substantial amounts of information on Delphi's disclosures to me and Delphi's acts of retaliation against me, in violation of Sarbanes-Oxley Act provisions that prohibit retaliation against individuals engaged in the protected activities of alerting company management to securities fraud and misconduct.

12. I have recently supplied much of the information contained in the attached **Executive Summary** to Mr. Jack Patrick of the U.S. Department of Justice; to Ms. Pamela Matson of the Federal Bureau of Investigation; and to Mr. Jonathan Scott, of the Securities and Exchange Commission. I have also prepared a 57-page Personal Statement Affidavit, and given it to Delphi, the FBI, OSHA and the SEC, but have not enclosed it with this filing out of consideration for this Court's time limitations in considering this request to hold in abeyance. If the Court desires a copy of that document, I will be happy to provide it.

13. I believe that my evidence, together with that gathered in any federal and OSHA investigations, will show that Delphi is committing ongoing fraud and misrepresentation related to its idle facility floor space inventory and expense accounting. I further believe that my evidence, together with that gathered in the federal investigations, will show that Delphi has been committing this fraud since as early as January 2002, and that Delphi is taking continuing action today to conceal and contain information about its idle facility floor space inventory and expense accounting fraud.

14. I believe that my evidence, together with the evidence gathered in the pending federal and OSHA investigations, will show that Delphi has acted in flagrant violation of the Securities and Exchange Commission's October 2006 permanent injunction enjoining it from violating Section 17(a) of the Securities Act of 1933 and Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-1, 13a-11 and 13a-13 thereunder.

15. Delphi will not be harmed or prejudiced by this Court's delaying a decision and revisiting this matter at a later date, and with more information and evidence to support my allegations.

16. Justice may be obstructed, including justice to Delphi's creditors and shareholders, and great harm may be done to me, were this Court to support Delphi's objection and deny my claim at this time.

17. I am representing myself pro se in this matter, because, as a direct result of Delphi's fraud, retaliation and misconduct, I do not have the funds necessary to pay for the services of an attorney skilled in bankruptcy, securities fraud, and Whistleblower law. I beg this Court's forbearance and lenience for my lack of training and any procedural or other errors I may make.

18. I do wish to attend the April 20, 2006 hearing on this matter via teleconference to Court Chambers.

## RELIEF REQUESTED

I respectfully ask this Court to hold in abeyance any further action or decision on Delphi's "books and records" objection to Claim #15630, pending submission of further information by Delphi, by me, by OSHA, by the SEC, the FBI and others.

In the event this Court is unwilling to hold this matter in abeyance, I respectfully ask this Court to DENY and overturn Delphi's "books and records" objection to Azimuth's Proof of Claim #15630.

Respectfully submitted,

*[signature]*

Robert A. Mothershead, Director & Individual
*In pro per*
AZIMUTH NORTH AMERICA LLC
    & RELATED ENTITIES (Creditor)
Delphi Vendor #02-710-7130
18530 Mack Avenue
Grosse Pointe Farms MI USA 48236
+1 (313) 475 1682 (Direct)
+1 (866) 397 4833 (Fax)
azimuthllc @ earthlink.net