# EXHIBIT "9"

## AGREEMENT TO RELEASE ACCOUNT PROCEEDS
## AND COLLATERAL ASSIGNMENT OF CLAIMS

THIS AGREEMENT TO RELEASE ACCOUNT PROCEEDS AND COLLATERAL ASSIGNMENT OF CLAIMS (this "Assignment"), made as of the /4th day of March 2003, by and among SOUTHTRUST BANK, an Alabama banking corporation (the "Lender"), and LEXTRON CORPORATION, a Mississippi corporation (the "Borrower"), LEXTRON AUTOMOTIVE, LLC, a Mississippi limited liability company ("Automotive"), and CHARLES DOTY, an individual ("Doty" and together with Automotive, the "Guarantors") (Borrower and Guarantors are collectively referred to herein as the "Obligors").

## R E C I T A L S:

WHEREAS, one or more of the Obligors hold certain claims and causes of action against Delphi Automotive Systems, LLC, a Delaware limited liability company ("DAS"), and certain of its affiliates and divisions, including Delphi Packard Electric Systems Division, Delphi Safety & Interior Division, Delphi Corporation, Delphi Packard and/or BBK, Ltd. (together with DAS, the "Delphi Entities"), and such claims and causes of action include, but are not limited to, claims against the Delphi Entities arising out of tort and/or breach of contract due to the wrongful termination and breach by one or more of the Delphi Entities of automotive parts assembly and supply contracts, and purchase orders, between one or more of the Delphi Entities as Buyer, and the Borrower or Automotive as Seller, some or all of such contracts and purchase orders being performed pursuant to certain GENERAL TERMS AND CONDITIONS Revised June 24, 1999 prepared by DAS, and due to other actionable behavior of certain of the Delphi Entities (collectively, the "Delphi Claims")·

WHEREAS, the Delphi Claims include, but are not limited to all counterclaims that are now or are hereafter asserted against any of the Delphi Entities by any of the Obligors, in Civil Action 3:03CV335WS in the U.S. District Court for the Southern District of Mississippi, Jackson Division;

WHEREAS, one or more of the Obligors hold certain claims and causes of action against Banks Finley and White & Co., certified public accounts, and its partners, shareholders, members, principals, agents and employees, (collectively, the "BFW Entities"), and such claims and causes of action include, but are not limited to claims against the BFW Entities arising out of tort and/or breach of contract due to the negligence, wantonness, intentional misconduct and/or breach of contract by the BFW Entities in performing certain financial auditing and accounting services, and tax preparation and reporting services for the Borrower during and for fiscal years 1999 through 2003 and all interim periods during such fiscal years (collectively, the "BFW Claims" and together with the Delphi Claims, the "Claims");

WHEREAS, pursuant to various promissory notes, loan agreements, agreements pertaining to letters of credit, and other credit documents (collectively, the "Loan Documents"), the Borrower is indebted to the Lender for various loans and other credit facilities (the "Loan Obligations");

1078601 v4

EXHIBIT

tabbies'

S

ST/Lextron (Delphi)
000422

WHEREAS, included among the credit facilities that were available under the Loan Documents was a revolving line of credit loan (the "Line of Credit") advanced from time to time by Lender to Borrower based upon the amount and eligibility of Borrower's accounts receivable pledged to Lender;

WHEREAS, the Loan Obligations are secured by various collateral documents, including, without limitation, security agreements and deeds of trusts encumbering the Borrower's equipment, accounts, inventory, general intangibles, real property and other assets (collectively, the "Collateral Documents" and together with the Loan Documents, the "Credit Documents");

WHEREAS, as further security for the Loans Obligations, the Guarantors have unconditionally guaranteed the Loan Obligation as evidenced by their unconditional guaranties of payment (the "Guaranties") executed in favor of Lender;

WHEREAS, the parties hereto entered into an Amended Forbearance Agreement dated January 15, 2003 (the "Forbearance Agreement") in which the parties agreed, *inter alia*, that the Lender would forebear from exercising certain remedies under the Credit Documents that were otherwise available due to the occurrence and continuance of various Existing Defaults described and defined in the Forbearance Agreement;

WHEREAS, additional events of default not covered by the Forbearance Agreement occurred and the Lender's obligation to continue to forbear under the Forbearance Agreement was properly terminated, Lender stopped making advances on the Line of Credit, and all payments from account debtors on Borrower's accounts receivable pledged to Lender (the "Pledged Accounts") are now being collected by Lender and applied to pay the Loan Obligations;

WHEREAS, Obligors have prepared a weekly cash-needs budget (the "Budget") that the Obligors have represented to Lender sets forth the Borrower's requirements for cash on a weekly basis (the "Budged Cash Requirements") for Borrower's operations during the period (the "Budget Period") covered by the Budget (a copy of the Budget prepared by the Obligors and submitted to Lender is attached hereto and made a part hereof as Exhibit A);

WHEREAS, Obligors have requested that on a weekly basis during the Budget Period, Lender release to Borrower amounts equal to the Budged Cash Requirements from the collections received from March 14th, 2003 to June 1, 2003 by Lender on Pledged Accounts paid by non-automotive industry account debtors (the "Pledged Non-Auto Accounts");

WHEREAS, to induce Lender to grant their request, the Obligors have agreed to further secure the Loan Obligations by collaterally assigning the Claims to Lender; and

WHEREAS, Lender has agreed to grant the request of the Obligors, but only on the terms and conditions herein set forth.

1078601 v4                                       2

ST/Lextron (Delphi)
000423

<u>AGREEMENT</u>

NOW, THEREFORE, in consideration of in the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as security for the Loan Obligations and payment and performance of Borrower's obligations under the Credit Documents, the parties agree as follows:

1.     RELEASE OF BUDGETED CASH REQUIREMENTS. Subject to the terms and conditions hereof, from time to time on a weekly basis during the Budget Period, provided there are available collections received from March 11th 2003 to June 1, 2003 of good funds from Pledged Non-Auto Accounts, Lender shall transfer to Borrower's checking account maintained with Lender, sums equal to the Budgeted Cash Requirements shown on the Budget for the applicable calendar week. Anything to the contrary notwithstanding, all Borrower's accounts (including, without limitation, Pledged Non-Auto Accounts) arising before, during and after the Budget Period shall continue to be collateral for and secure the Loan Obligations.

2.     BORROWER'S BI-WEEKLY REPORTS.      On the first business day of every other calendar week during the weekly Budget Period, Borrower shall furnish to Lender such reports and certifications (the "Bi-Weekly Reports") as may be required by Lender to confirm that Borrower's expenses, production, newly generated accounts, and other operational and financial items for the previous two weeks were within the Budget. At the end of the Budget Period, or if at any time during the Budget Period a Bi-Weekly Reports reveals or Lender otherwise determines, that Borrower has not met the requirements of the Budget (a "Budget Default"), then at Lender's election, and without notice, Lender may stop transferring funds into Borrower's checking account as otherwise provided in paragraph 1 of this Assignment, and, notwithstanding any subsequent cure of the Budget Default, Lender shall have no further obligation to make any such transfers. Likewise, Lender shall not be required to make any such transfers after the occurrence of any Assignment Default described and defined in paragraph 13 hereof.

3.     SECURITY INTEREST IN CLAIMS. Obligors grant to Lender, and its successors and assigns, a collateral assignment of and a continuing security interest in the Collateral (as defined below) as security for the payment and performance of the Obligations (as defined below); provided, however, that such collateral assignment and security interest shall be limited to and the Collateral shall be applied only to the extent of the Obligations.

4.     OBLIGATIONS SECURED. The Collateral shall secure the payment and performance of the Loan Obligations and all of Obligors' present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied, loans, guarantees, reimbursement obligations, indebtedness, warranties, representations, obligations, liabilities and covenants now or hereafter at any time owing to Lender, (including costs of collection, legal expenses and attorneys' fees, incurred by Lender in connection with its efforts to collect any of the foregoing or realize upon or protect any collateral, including, collateral covered by the Collateral Documents and this Assignment) (collectively, the "Obligations").

5.     COLLATERAL COVERED BY ASSIGNMENT. The "Collateral" covered by this Assignment shall consist of all of the following-described actions, claims, counterclaims,

1078601 v4

3

ST/Lextron (Delphi)
000424

causes of action, awards, judgments, settlements, collections, rights and remedies, whether now existing or hereafter arising, and whether held jointly or severally by one or more of the Obligors (collectively the "Collateral"):

(a)   All of Obligors' rights in and to the Claims;

(b)   all actual, compensatory, special, liquidated and punitive damages and awards to any of the Obligors resulting from any verdict, decision, finding or order by a jury, court or arbitrator based in whole or part on one or more of the Claims and all judgments entered in connection with any Claims;

(c)   any and all prejudgment and post-judgment interest on the awards described in clause (b) above;

(d)   any and all payments and proceeds from any settlement of one or more of the Claims, regardless of whether such settlement proceeds are characterized as actual, compensatory, special, liquidated or punitive damages, interest on such damages, or otherwise;

(e)   the right to release, waive, compromise or settle any of the Claims;

(f)   products and proceeds of the foregoing; and

(g)   the right to prosecute and settle the Claims in the name of the Obligors or, at Lender's election, in Lender's name; provided, however, the Claims shall be prosecuted and pursued by the Obligors in their names unless and until Lender in good faith determines, after notice thereof to Obligors, that Obligors are not prosecuting and pursuing the Claims against all parties liable thereon with reasonable speed, effort and dispatch, and after making such good faith determination and giving notice to Obligors, Lender may elect to prosecute and/or settle any or all of the Claims either in Obligors' name or in Lender's name; provided further, however, that in any event, before settling, releasing or waiving any Claims, the Obligors shall first obtain Lender's written approval thereof, except any settlement that will result in the Obligations being paid in full shall require at least ten (10) business days' notice thereof to Lender, but shall not require the prior approval of Lender. (Although Lender agrees that Obligors shall prosecute and pursue the Claims in Obligors' name, the Lender unconditionally retains its right to have all sums realized from the Claims paid to Lender for application on the Obligations as herein provided).

6.   REPRESENTATIONS, WARRANTIES, AND COVENANTS.   Obligors represent, warrant and covenant to Lender that:

(a)   Obligors are and shall remain the sole owner of the Collateral;

(b)   Obligors will derive substantial benefit by entering into this Assignment;

1078601 v4                                4

ST/Lextron (Delphi)
000425

(c)      Borrower's and Automotive's chief executive office, chief place of business, and office where its business records relating to the Collateral are located in the City of Jackson, Hinds County, Mississippi; and Doty resides in the City of Jackson, Hinds County, Mississippi; and Obligors shall immediately advise Lender in writing of any change in or addition to the foregoing addresses;

(d)      Borrower and Automotive shall not become a party to any restructuring of their form of business or changing of their state of formation, or participate in any consolidation, merger, liquidation or dissolution without Lender's prior written consent;

(e)      Borrower and Automotive shall notify Lender of the nature of any intended change of either of their names, or the use of any trade name, and the effective date of such change;

(f)      The Obligors shall not further assign or encumber the Collateral, and the Collateral is and shall at all times remain free of all tax and other liens, security interests, encumbrances and claims of any kind except for those belonging to Lender;

(g)      Obligors shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein;

(h)      Obligors have the right, power and authority to enter into and perform their obligations under this Assignment and the Credit Documents to which Obligors are a party and the undersigned officers of Borrower and Automotive are duly authorized to execute this Assignment on behalf of Borrower and Automotive. Obligors' execution and performance of this Assignment do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may now or hereafter be binding on Obligors;

(i)      This Assignment and the obligations described in this Assignment are executed and incurred for commercial and not consumer purposes;

(j)      Obligors covenant to diligently prosecute and pursue the Claims to final judgment or satisfactory settlement in such a manner as to maximize the monetary value of any judgment or settlement resulting therefrom. It is understood and agreed, however, that this covenant is based and conditioned upon Obligors having adequate financial resources or being able to reach reasonable contingent fee arrangements to enable them to prosecute and pursue the Claims in the manner stated.

(k)      This Assignment, the Credit Documents and the Guaranties evidence legally binding obligations of the Obligors who are parties thereto, and this Assignment, the Credit Documents and the Guaranties are in full force and effect, and are not subject to any claims, counterclaims, set offs, rights of recoupement or other reductions or credits.

7.      **PRIOR ASSIGNMENT OF BFW CLAIMS.** Obligors have previously assigned the BFW Claims to Lender pursuant to the Forbearance Agreement (the "Prior BFW Assignment"). The Prior BFW Assignment shall remain in full force and effect from the date of execution of the Forbearance Agreement, and the Prior BFW Assignment shall be deemed

1078601 ,4                                          5

ST/Lextron (Delphi)
000426

modified hereby only to the extent this Assignment grants further rights and remedies to Lender with respect to the BFW Claims. The parties hereto acknowledge that the forbearance provided by the Forbearance Agreement has been terminated for good cause, and nothing herein shall be construed to reinstate such forbearance.

8.    FINANCING STATEMENTS AND OTHER DOCUMENTS.  Obligors shall at any time and from time to time take all actions and execute all documents required by Lender to attach, perfect and maintain Lender's security interest in the Collateral and establish and maintain Lender's right to receive the payment of the proceeds of the Collateral including, but not limited to, executing any financing statements, continuation statements, notices of security interest, control agreements and/or other documents required by the Uniform Commercial Code and other applicable law.  Obligors shall pay the costs of filing such documents in all offices wherever filing or recording is deemed by Lender to be necessary or desirable.  Lender shall be entitled to perfect its security interest in the Collateral by filing carbon, photographic or other reproductions of the aforementioned documents with any authority required by the Uniform Commercial Code or other applicable law.  Obligors authorizes Lender to execute and file, without Obligors' signatures, any financing statements, as well as extensions, renewals and amendments of financing statements in such form as Lender may require to perfect and maintain perfection of any security interest granted in this Assignment.

9.    INQUIRIES AND NOTIFICATION TO THIRD PARTIES.  Obligors hereby authorize Lender to contact any third party and make any inquiry pertaining to Obligors' financial condition or the Collateral. In addition, Lender is authorized to provide oral or written notice of its security interest in the Collateral to any third party and instruct such third party to make payment on the Claims directly to Lender. Specifically, (i) Lender shall be entitled to give notice to the court in which any of the Claims is being litigated, the attorneys representing Obligors and the attorneys representing parties against whom the Claims are asserted, of Lender's interest in the Claims as set forth herein, and that any distribution of Collateral to which Obligors would otherwise be entitled but for this Assignment shall, to the extent of any principal and/or interest then outstanding under the Obligations, be paid to Lender and (ii) Obligors hereby instruct such court and attorneys to pay over such Collateral to Lender to the extent of any principal and/or interest then outstanding under the Obligations. Said court and attorneys shall be entitled to rely upon any instructions given by Lender in respect to the assignment of the Claims pursuant to this Assignment and Lender's written statement of principal and interest outstanding under the Obligations, and such statement shall be conclusive notwithstanding any instructions to the contrary from Obligors. As set forth below in paragraph 16, this Assignment and, specifically, the notification and instruction provisions of this paragraph can only be modified in a writing signed by the Lender.

10.    POWER OF ATTORNEY.  Obligors hereby appoint Lender as attorney-in-fact to perform any action or execute any document required to be taken or executed by Obligors under this Assignment, including, but not limited to the execution of any financing statement deemed by Lender to be necessary to perfect or continue the perfection of Lender's security interest evidenced hereby with or without any Obligor's signature. Lender's performance of such action or execution of such documents shall not relieve Obligors from any obligations they have under this Assignment or any of the Credit Documents. The powers of attorney described in this paragraph are coupled with an interest and are irrevocable.

1078601 v3

6

ST/Lextron (Delphi)
000427

11.   INDEMNIFICATION.  Lender shall not assume or be responsible for the performance of any of Obligors' obligations with respect to the Collateral under any circumstances. Obligors shall immediately provide Lender with written notice of and indemnify and hold Lender and its shareholders, directors, officers, attorneys, employees and agents harmless from all claims, damages, liabilities (including attorney's fees and legal expenses), causes of action, actions, suits and other legal proceedings (cumulatively "Indemnified Claims") pertaining to its business operations or the Collateral including, but not limited to, those arising from Obligors' obligations with respect to the Collateral or any counterclaims made against Obligors in the Indemnified Claims. Obligors expressly acknowledge and agree that Lender shall not be assigned any of Obligors' obligations and/or liabilities associated with the Indemnified Claims, including but not limited to any liability associated or resulting from any counterclaim, third party claim or other claims against Obligors. Obligors, upon the request of Lender, shall hire legal counsel to defend Lender from such Indemnified Claims, and pay the attorney's fees, legal expenses and other costs to the extent permitted by applicable law, incurred in connection therewith. Upon Obligors' failure to provide such legal counsel, Lender shall be entitled to employ its own legal counsel to defend such Indemnified Claims at Obligors' cost.

12.   INSPECTION OF COLLATERAL AND BOOKS AND RECORDS. Obligors shall allow Lender or its agents to examine, inspect and make abstracts and copies of the pleadings filed in the Claims and any discovery (including, but not limited to, writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and whether printed, recorded, created or reproduced by any mechanical means or process, or written or produced by hand) produced or received in the Claims and Obligors' books and records pertaining to the Collateral during normal business hours.  Obligors shall provide any assistance required by Lender. for these purposes and hereby instructs its attorney of record in the Claims to make such items available to the extent such items are in such attorney's office.

13.   ASSIGNMENT DEFAULTS.   (a) Upon any breach of the obligations, covenants, agreements or warranties by the Obligors in this Assignment, (b) if there is any material misrepresentation by the Obligors hereunder, (c) upon any of the Obligors becoming a debtor under a case commenced under any chapter of the U.S. Bankruptcy Code (11 U.S.C. § 101 et seq), (d) upon an involuntary case being commenced against any of the Obligors pursuant to Section 303 of the U.S. Bankruptcy Code (whether or not relief is ultimately ordered in such case) (any of the events described in clauses (a), (b) (c) and (d) of this paragraph are referred to herein as an "Assignment Default"), or (e) upon the occurrence of any Budget Default, then, whether or not any such Assignment Default or Budget Default is subsequently incurred, in addition to all other rights and remedies available to the Lender under this Assignment, the Credit Documents and the Guaranties, without demand or notice, Borrower shall have no further right to receive, and Lender shall have no further obligation to transfer any funds collected from Non-Auto Accounts as provided in paragraph 1 of this Assignment.  Anything herein or otherwise to the contrary notwithstanding, Lender has not waived or released any default or event of default otherwise outstanding under any of the Credit Documents or Guaranties, and Lender has not granted forbearance with respect thereto (any prior forbearance having been terminated for good cause). Lender has reserved all its rights and remedies under the Credit Documents and the Guaranties, and the same remain in full force and effect and legally binding on the Obligors in all respect.

ST/Lextron (Delphi)
000428

14. APPLICATION OF PAYMENT. All payments made in respect to the Collateral shall be applied against the amounts paid by Lender (including attorney's fees and legal expenses) in connection with the exercise of its rights or remedies described in this Assignment and any interest thereon, and then to the payment of the remaining Obligations in whatever order Lender chooses.

15. REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER. Obligors shall reimburse Lender for all amounts (including attorney's fees and legal expenses) expended by Lender in the performance of any action required to be taken by Obligors or the exercise of any right or remedy belonging to Lender under this Assignment, together with interest thereon at the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations, shall be secured by this Assignment and the Collateral Documents, and shall be payable upon demand.

16. MODIFICATION AND WAIVER. The modification or waiver of any of Obligations or Lender's rights under this Assignment must be contained in a writing signed by Lender. A written waiver on one occasion shall not constitute a waiver on any other occasion. Obligors' obligations under this Assignment shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the Claims or Collateral.

17. SUCCESSORS AND ASSIGNS. This Assignment shall be binding upon and inure to the benefit of Obligors and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees, and devisees.

18. NOTICES. Any notice or other communication to be provided under this Assignment shall be in writing and sent by hand delivery, First Class U.S. Mail or recognized overnight courier service (e.g. Federal Express) to the parties at the addresses described below or such other address as the parties may designate in writing from time to time.

If to one or more of the Obligors:

Lextron Corporation
249 Mitchell Ave.
Jackson, MS 39213
Attention: Mr. Charles Doty

If to the Lender:

SouthTrust Bank
Corporate Special Assets
420 North 20th Street
Suite 3300
Birmingham, Alabama 35203

19. SEVERABILITY. If any provision of this Assignment violates the law or is unenforceable, the rest of the Agreement shall remain valid.

1078601 v4

8

ST/Lextron (Delphi)
000429

20. APPLICABLE LAW; JURISDICTION. The validity, interpretation, enforcement and effect of this Assignment shall be governed by, and construed according to the laws of, the State of Alabama. By execution and delivery of this Assignment, Obligors expressly and irrevocably assent and submit to the personal jurisdiction of the state and federal courts presiding in and over Jefferson County, Alabama, in any legal action or proceeding arising under, out of, or in any manner relating to this Assignment or the Obligation, the Credit Agreements and/or the Guaranties, and acknowledge that the negotiation, execution and delivery of this Assignment constitute sufficient contacts with the State of Alabama for purposes of independently conferring such jurisdiction. The Obligors further agree that the exclusive venue of any such legal action or proceeding arising out of or in any manner relating to this Assignment, the Obligations, the Credit Agreements and/or the Guaranties, shall be in the state and/or federal courts presiding in and over Jefferson County, Alabama, unless the Lender shall, at its sole option, elect to bring or permit the maintenance of any such action in another venue, and the Obligors hereby waive any and all rights under any state or federal law to object to such venue on grounds of *forum non conveniens* or otherwise.

21. WAIVER OF JURY TRIAL. THE OBLIGORS AND LENDER, HEREBY MUTUALLY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS ASSIGNMENT, THE OBLIGATIONS, THE CREDIT DOCUMENTS, THE GUARANTIES, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THE OBLIGATIONS, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS ASSIGNMENT, THE OBLIGATIONS, THE CREDIT DOCUMENTS, THE GUARANTIES OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS' RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE OBLIGORS AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT BETWEEN THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

22. COLLECTION COSTS. If Lender hires an attorney to assist in collecting any amount due or enforcing any right or remedy under this Assignment, Obligors agree to pay Lender's reasonable attorneys' fees and collection costs.

23. MISCELLANEOUS. This Assignment is executed for commercial purposes. Obligors shall supply information regarding the Collateral in the form and manner as requested by Lender from time to time. All information furnished by Obligors to Lender shall be true,

1073601 v4

9

ST/Lextron (Delphi)
000430

accurate and complete in all respects. Obligors and Lender agree that time is of the essence. Obligors waive presentment, demand for payment, notice of dishonor and protest except as required by law. This Assignment shall remain in full force and effect until Lender provides Obligors with written notice of termination. This Assignment and any related documents represent the complete and integrated understanding between Obligors and Lender pertaining to the terms and conditions of those documents.

24.   EFFECT OF ASSIGNMENT. . Obligors acknowledge and agree that (i) this Assignment is not intended to be, and shall not be deemed or construed to be, a novation, payment, settlement, satisfaction, or release, in whole or in part, of any of the Obligations, as evidenced by the Credit Documents and Guaranties; (ii) this Assignment is not intended to be, and shall not be deemed or construed to be, a modification, amendment, settlement, release or waiver of any rights Lender may have against Obligors with respect to the Obligations, the Credit Documents and Guaranties; and (iii) except as otherwise expressly provided in this Assignment, Lender reserves all available rights and remedies, at law, in equity, and under the Credit Documents and Guaranties in connection with any default or event of default, whether now existing or hereafter occurring, under the Credit Documents or Guaranties. No action of Lender hereunder or pursuant to the Credit Documents, the Guaranties or otherwise shall act to release Obligors from their Obligations to Lender, and all of said Obligations are hereby ratified and affirmed the same as if repeated on this date.

IN WITNESS WHEREOF, Borrower, Automotive and Lender have caused this Assignment to be properly executed and delivered by their duly authorized representatives, and the Doty has hereunto set his hand and seal, all as of the day and year first above written.

OBLIGORS:

WITNESS:

_____          _____
                                          CHARLES J. DOTY


LEXTRON CORPORATION

ATTEST:

_____          By: _____
                                          Its: ___President / C.E.O.___


LEXTRON AUTOMOTIVE, LLC

ATTEST:

_____          By: _____
                                          Its: ___President / C.E.O.___


1073603 v4                              10

ST/Lextron (Delphi)
000431

LENDER:

SOUTHTRUST BANK

ATTEST:

By:

Its:

1078601 v4

ST/Lextron (Delphi)
000432