# EXHIBIT 1

                            **Hearing Date:  June 22, 2007**
                            **Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

DECLARATION OF JOHN TAYLOR IN SUPPORT OF DEBTORS' SUPPLEMENTAL
REPLY WITH RESPECT TO PROOFS OF CLAIM NUMBERS 837, 838 & 14762
(H.E. SERVICES COMPANY, ROBERT BACKIE & RICHARD JANES)

("TAYLOR DECLARATION – H.E. SERVICES COMPANY, ET AL.")

I, John Taylor, declare as follows:

1. Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases. I submit this declaration in support of the Debtors' Supplemental Reply With Respect To Proofs Of Claim 837, 838 & 14762 (H.E. Services Company, Robert Backie and Richard Janes) (the "Supplemental Reply"). Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply and the Statement of Disputed Issues.

2. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, and my experience with and knowledge of Delphi Automotive Systems LLC's ("DAS LLC") relationship with H.E. Services Company ("H.E. Services"). If I were called upon to testify, I could and would testify to the facts set forth herein.

3. I began working for GM / DAS LLC in 1978 and have worked for DAS LLC in various capacities over the years. From 1994 to 1998, I was a purchasing manager for General Motors in Buena, Indonesia. From 1999 to approximately February 2001, I was a purchasing manager focusing on purchasing for DAS LLC's Machinery and Equipment and Indirect business. From February 2001 to the present, I have been manager of DAS LLC's Supplier Diversity Development program.

4. DAS LLC has an internal policy of supporting minority suppliers. If a supplier wishes to be considered as a minority-owned supplier they must have proof of Certification by the National Minority Supplier Development Council or one of it's 39 regional councils. If the supplier is not so certified, DAS LLC refers that supplier to the appropriate Minority Supplier Development Council and that supplier may become certified as a minority-

2

owned company with that entity. The minority-owned supplier is required to provide such things as a birth certificate of the majority shareholder, as well as proof of minority financial ownership and management involvement in order to establish minority status. Minority-owned suppliers must provide this certification to DAS LLC on an annual basis.

       5.       In my current position, my role is to support DAS LLC's diversity supplier program. In that role, I encourage dialogue about any problems that minority-owned suppliers believe they are experiencing. With respect to H.E. Services, I recall having periodic calls with H.E. Services' management roughly once a month since at least 2001. I do not recall H.E. Services' management raising any concerns related to diversity during these calls, until late-2003 to 2004 when the DAS LLC and H.E. Services' relationship was ending. Specifically, in or around late-2003 to 2004, I attended one or more meetings between representatives from DAS LLC and H.E. Services. H.E. Services' president, Robert Backie, requested such meetings because he believed that DAS LLC representatives were not giving him a "fair shake." My understanding is that Stephen Dawe, a DAS LLC purchasing manager, looked into Mr. Backie's concerns and determined that H.E. Services was not being treated unfairly. I also recall attending one or more meetings in late-2004 to early-2005. During those meetings, H.E. Services representatives complained that they lost their start-up investment in connection with the Juarez Tech Center and that DAS LLC's Saginaw Division treated H.E. Services unfairly with respect to its Flint facility. This was the first time that I heard H.E. Services' management voice these specific concerns. Additionally, during the meetings, we resolved open issues related to improperly documented purchase orders and helped H.E. Services secure payment on those purchase orders.

6. One of the major benefits enjoyed by minority-owned suppliers is additional access to DAS LLC buyers. Specifically, once or twice a year DAS LLC hosts an event and invites both minority-owned suppliers and DAS LLC buyers. This event is designed to provide minority-owned suppliers with additional opportunities to meet DAS LLC buyers and cultivate business relationships with them.

7. Nevertheless, minority status does not give the minority-owned supplier any "special treatment" or privileges in the bidding process. In virtually all cases, it is DAS LLC's standard practice to issue requests for quotation ("RFQ") to multiple qualified suppliers prior to selecting a supplier to meet DAS LLC's requirements. Minority-owned suppliers are permitted to bid if they are qualified to bid. There are programs, such as mentoring, to help minority suppliers with these qualifications. After DAS LLC receives quotations from multiple suppliers, DAS LLC awards the business to the most competitive supplier, both in terms of quality and value, without regard to minority status. If two or more suppliers are equally competitive, DAS LLC often will award business to a minority-owned supplier to further its goals of supporting minority-owned suppliers.

8. Although DAS LLC has a policy of supporting minority-owned suppliers, it does not have a policy of promising them business simply by virtue of their minority status. I am unaware of any instance where DAS LLC used H.E. Services' minority status to H.E. Services' or Mr. Backie's detriment. Nor am I aware of any other act of discrimination on the part of DAS LLC against H.E. Services. To my knowledge, DAS LLC supported H.E. Services as a minority-owned business, but such support did not involve any promises of future business.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on April 16, 2007 in Troy, Michigan

                          /s/ John Taylor

                          John Taylor