Hearing date:    May 31, 2007
                                            10:00 a.m. Eastern
Response deadline:   May 24, 2007
                                            4 p.m. Eastern

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

In Re:

    DELPHI CORPORATION, et al.,

                                    Case No. 05-44481 (RDD)

                  Debtors.

------------------------------------------------------------------ x

## RENEWED MOTION OF USW TO COMPEL DEBTORS TO SUBMIT INDIVIDUAL EMPLOYEE MATTER TO IMPARTIAL MEDICAL AUTHORITY

        United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"), successor by merger to the United Steelworkers of America, and its Local Union No. 87L hereby move for an Order directing Delphi Corporation, et al. ("Debtors") to comply with the impartial medical dispute provisions of its collective bargaining agreement with the USW, as follows:

### Preliminary Statement

        1.     This is the USW's second motion to compel "arbitration" of a request by Terry Detrick, a former employee of Debtors and former member of the USW, who retired under a disability pension, and who seeks to return to active employment under provisions of the Pension Plan between the parties permitting such return where the cause of the disability has abated.

2. By its Order dated December 11, 2006, this Court denied the USW's first motion, stating *inter alia* that the USW and Mr. Detrick had not provided enough information about Mr. Detrick's current medical condition.

3. By letter dated January 29, 2007, USW Associate General Counsel Melvin Stein forwarded a copy of a letter from Ieva Veveris, M.D., dated January 11, 2007, to Dr. Tonya Rutledge, Medical Director of Delphi Chassis Systems, and Steve Gebbia, Executive Director of Employee Benefits for Delphi. Copies of Mr. Stein's letter and Dr. Veveris' letter are Exhibit "A" to this Motion. Dr. Veveris' letter was based on an examination on January 6, 2007 and stated that Mr. Detrick had made a "complete recovery" and was "able to return to work in an industrial setting." Mr. Stein also forwarded another copy of Mr. Detrick's complete psychological medical file (a copy of which is not attached to this Motion).

4. Neither Dr. Rutledge nor Mr. Gebbia - nor anyone else - has responded to Mr. Stein's letter.

5. Johnny Carroll, Union Benefit Representative for USW Local 87L, sent a letter dated February 26, 2007 to Dr. Rutledge and Mr. Gebbia, a copy of which is Exhibit "B" to this Motion.

6. Neither Dr. Rutledge nor Mr. Gebbia nor anyone else has responded in to Mr. O'Connell's letter.

7. Thus, Delphi has completely failed and refused to honor the relevant provision in the USW Collective Bargaining Agreement (described further below). It has not indicated whether it will reinstate Mr. Detrick or reject his request. It has not stated whether it will agree to submit to independent medical examination or refuse to do so.

8. Whatever one's view of Delphi's obligations under the relevant provisions of the Collective Bargaining Agreement, one thing Delphi clearly cannot do is nothing. It must respond to the Union's letters. If it decides to reinstate Mr. Detrick, the process will be complete. If it decides that the medical information does not support his request to return, Delphi must submit to the independent medical examination.

9. We recognize that Delphi would rather not make a decision either way, but that option is not available under the Collective Bargaining Agreement. We also recognize that Delphi's management is occupied with a number of substantial issues related to its transformation plan, but Mr. Detrick is entitled to the procedural protections of the CBA.

**Collective Bargaining Agreements**

10. At all times relevant hereto, the Debtors and USW Local 87L have been and remain parties to a series of collective bargaining agreements governing the wages, hours and conditions of employment of the employee-members at the Dayton, Ohio Plant. The most recent Collective Bargaining Agreement between the parties was effective December 8, 1999 and by its terms remains in effect through September 14, 2007. Like its predecessors, the current labor contract consists of a main agreement and a series of supplemental agreements on various subjects, including a pension program.

11. The current Supplemental Agreement (Pension Plan) identified as Exhibit A to the Collective Bargaining Agreement is dated December 8, 1999 and by its terms remains in effect through the termination of the Collective Bargaining Agreement. Exhibit A-1 to the Supplemental Agreement (Pension Plan) is the plan document known formally as "The Delphi Hourly-Rate Employees Pension Plan."

12. Among other benefits, the Pension Plan provides for a Total and Permanent Disability Retirement ("T&PDR") (Article II, Sec. 3) for employees who become totally and permanently disabled prior to attaining age 65 and who have at least ten years of credited service. The Plan also provides that those who retire on a T&PDR may be required to submit to medical examinations up to twice per year prior to age 65. Retirees deemed recovered by such medical examinations can have their T&PDR pensions terminated. (Article II, Sec. 3(c).).

13. Similarly, persons retired on a total and permanent disability pension may return to work with the employer if the medical condition causing the disability abates. Appendix D -- Agreement Implementing Section 3(c) of the Supplemental Agreement (Pension Plan), as adopted by the Board of Administration of the Plan, provides a procedure to be followed if a retiree asserts that he/she has recovered and notifies the Corporation of his/her intent to return to work.

14. Reduced to its essence, the procedure involves the submission of medical evidence to the Plant Medical Director, a consultative review with the Corporation and a determination by the Plant Medical Director. If the retiree and the Union Benefit Representative ("UBR") disagree with that determination, they may initiate a further review with the Corporate Medical Director. A continuing dispute as to the ability of a retiree, who has been retired for five or more years, is to be decided by the final and binding decision of an impartial specialist jointly selected by the Debtors and the UBR. A true and correct copy of the procedure as found in Appendix D, Sec. B(2)(i) at pages 87-89 of the Supplemental Agreement (Pension Plan) is attached hereto as Exhibit "C" to this Motion.

### Terry Detrick

15.    Terry Detrick is an adult individual who was hired by the Debtors and employed at the Dayton Plant beginning September 24, 1967. Detrick was diagnosed with severe anxiety disorder, agoraphobia and dysthymic disorder in 1983. He applied for and received a T&PD pension from the Debtors, effective June 1, 1983.

16.    Detrick requested that his medical disability be rescinded and that he be returned to work twice in the 1990s. The requests were denied. On May 2, 2001, Detrick again requested reinstatement and supported his request with three letters from Ieva Veveras, MD, the psychiatrist who had treated him since February, 1985.

17.    As set forth in the USW's first Motion on August 19, 2002, Dr. Thomas Pace, Divisional Medical Director -- Delphi Energy and Chassis Systems, wrote to USW Staff Representative Eldon House rejecting the application on the basis of an absence of "current documentation to substantiate a reversal of the Total and Permanent Disability that was approved in June, 1983." Exhibit "D" to this Motion.

18.    On October 3, 2002, Johnny Carroll, Benefit Chairman of Local 87L, the Union Benefits Representative, wrote to Delphi requesting an Impartial Medical Opinion ("IMO") for Mr. Detrick at the earliest possible time. Exhibit "E" to this Motion.

19.    Further correspondence pressing the Debtors for an IMO for Mr. Detrick did not produce a response. Exhibit "F" to this Motion (letter dated September 8, 2003 from USW Staff Representative Wardrup to Delphi Personnel Director Alexander).

20.    On January 18, 2005, Local 87L Benefit Committee Chairman Johnny Carroll again wrote to Tonya Rutledge, Delphi Chassis Systems Medical Director. On this

occasion, Mr. Carroll enclosed a full and complete copy of Dr. Veveras' file on Mr. Detrick, along with a HIPAA authorization for the release of medical information relating to Mr. Detrick. Mr. Carroll renewed the union's demand for an IMO for Mr. Detrick. To date, no response has been received. A copy of Mr. Carroll's January 18, 2005 letter is attached hereto as Exhibit "G" to this Motion.

21.    As a total and permanent disability retiree, Terry Detrick may seek reinstatement to employment on the basis of his recovery from the medical condition that caused his disability. Under the procedures adopted by the Pension Plan Board of Administration, disputes as to the medical capacity of a medical retiree to resume employment are to be resolved by the final and binding determination of an impartial medical clinic or physician.

**Relief Requested**

22.    The USW has repeatedly requested an impartial medical evaluation on behalf of Mr. Detrick, but the Debtors have refused and continue to refuse to cooperate in the selection of such an impartial medical authority. Section 1113(f) of the Bankruptcy Code provides that a debtor is obligated to honor the terms of its collective bargaining agreements unless and until the Court has entered an order permitting the debtor to reject that agreement or to modify it on an interim basis pursuant to Section 1113(e). In <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d 984, 992 (2nd Cir. 1990) the Court of Appeals squarely held that Section 1113(f) requires a debtor to honor the neutral dispute resolution mechanism in collective bargaining agreement. That is precisely what the USW seeks here.

23.    It should be noted that the outcome of the impartial medical dispute resolution procedure would have virtually no impact on the Debtors' operations or its ability to reorganize, even if Detrick ultimately is found capable of returning to work.

24. Indeed, the Debtors apparently believe that Detrick is not able to return to work - that his disability was so significant and his recovery so unsubstantiated that he cannot perform the duties of the job. If they are correct, an impartial examination will uphold their conclusion. If the Debtors are mistaken, then Detrick has the right to go back to work.

25. The Court has not entered such an order.

26. Because the points of law upon which this Motion relies are incorporated herein, the USW respectfully requests that the requirement of service and filing of a separate Memorandum of Law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, USW and its Local Union 87L request that this Court enter an Order:

(A) Enforcing the impartial medical dispute provisions of the parties' Supplemental Agreement (Pension Plan);

(B) Requiring the Debtors to cooperate in the joint selection of an impartial medical authority and the referral of the Detrick dispute to that authority; and

(C) Directing the Debtors to comply with the determinations made by such impartial authority as provided by the parties' agreement.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:     /s/ Lowell Peterson
Lowell Peterson (LP 5405)
1350 Broadway, Suite 501
New York, New York 10018
(212) 239-4999

David R. Jury, Associate General Counsel
Melvin Stein, Associate General Counsel
United Steelworkers
Five Gateway Center, Room 807
Pittsburgh, Pennsylvania 15222
(412) 562-2545
djury@usw.org
mstein@usw.org

Attorneys for United Steelworkers

Dated:     April 18, 2007