1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x



          October 27, 2006

          10:35 AM





              One Bowling Green

              Room 620-1

              New York, NY 10004


B E F O R E:


HON. ROBERT D. DRAIN,

U.S. BANKRUPTCY JUDGE

2

1         DELPHI CORPORATION

2

3    Objection to Motion /Objection of Certain

4    Utility Companies to Motion for Interim and

5    Final Orders Under 11 U.S.C. Sections 105,

6    366, 503, and 507 (I) Prohibiting Utilities

7    from Altering, Refusing, or Discontinuing

8    Services on Account of Pre-petition Invoices

9    and (II) Establishing Procedures for

10   Determining Requests for Additional Assurance

11

12   Motion to Allow Motion For Interim And Final

13   Orders Under 11 U.S.C. Sections 105, 366, 503,

14   And 507 (I) Prohibiting Utilities From

15   Altering, Refusing, Or Discontinuing Services

16   On Account Of Pre-petition Invoices And (II)

17   Establishing Procedures For Determining

18   Requests For Additional Assurance

19

20   Motion to Authorize Motion For Order Under 11

21   U.S.C. Sections 105, 362, And 541 And Fed.R.

22   Bankr. P. 3001 Establishing Notification And

23   Hearing Procedure For Trading In Claims And

24   Equity Securities

25

3

1          DELPHI CORPORATION

2

3    Objection to Motion /Objection Of Duraswitch

4    Industries, Inc. To Debtors' Motion For An

5    Order Under 11 U.S.C. 365(a) Authorizing

6    Rejection Of License Agreement

7

8    Motion to Authorize Motion For Order Under 11

9    U.S.C. Sections 361, 362, 363, 364(c), 364(d)

10   And 364(e) And Fed. R. Bankr. P. 2002, 4001

11   And 9014 (I) Authorizing Debtors To Obtain

12   Secured Post-petition Financing On

13   Superpriority Secured And Priming Basis, (II)

14   Authorizing Use Of Cash Collateral, (III)

15   Granting Adequate Protection To Pre-petition

16   Secured Lenders, (IV) Granting Interim Relief,

17   And (V) Scheduling A Final Hearing Under Fed.

18   R. Bankr. P. 4001 (b) and (c)

19

20   Response Debtors' Omnibus Reply To Objections

21   To DIP Financing Motion

22

23   Notice of Hearing Proposed First Omnibus

24   Hearing Agenda

25

4

1            DELPHI CORPORATION

2

3    Motion to Quash A Subpoena Non-Party's Motion

4    to Quash Subpoena

5

6    Notice of Proposed Order Notice Of Filing Of

7    Proposed Final Order Under 11 U.S.C. Sections

8    105, 361, 362, 364(c)(1), 364(c)(2),

9    364(c)(3), 364(d)(1), And 364(e) And Fed. R.

10   Bankr. P. 2002, 4001 And 9014 (I) Authorizing

11   Debtors To Obtain Post-petition Financing,

12   (II) To Utilize Cash Collateral And (III)

13   Granting Adequate Protection To Pre-petition

14   Secured Parties

15

16   Motion to Approve Motion For Order Under 11

17   U.S.C. Sections 102(1) And 105 And Fed. R.

18   Bankr. P. 2002(m), 9006, 9007, And 9014

19   Establishing (I) Omnibus Hearing Dates, (II)

20   Certain Notice, Case Management, And

21   Administrative Procedures, And (III)

22   Scheduling Initial Case Conference In

23   Accordance With Local Bankr. R. 1007-2(e)

24

25

5

1              DELPHI CORPORATION

2

3   Motion to Authorize Motion For Order Under 11

4   U.S.C. Sections 361, 362, 363, 364(c), 364(d)

5   And 364(e) And Fed. R. Bankr. P. 2002, 4001

6   And 9014 Authorizing Debtors To Obtain Secured

7   Post-petition Financing On Superpriority

8   Secured And Priming Basis, (II) Authorizing

9   Use Of Cash Collateral, (III) Granting

10  Adequate Protection To Pre-petition Secured

11  Lenders, (IV) Granting Interim Relief, And (V)

12  Scheduling A Final Hearing Under Fed. R.

13  Bankr. P. 4001 (b) and (c)

14

15  Motion to Authorize Motion For Order Under 11

16  U.S.C. Sections 327, 330, And 331 Authorizing

17  Retention Of Professionals Utilized By Debtors

18  In The Ordinary Course Of Business

19

20  Motion to Approve Motion For Administrative

21  Order Under 11 U.S.C. Section 331 Establishing

22  Procedures For Interim Compensation And

23  Reimbursement Of Expenses Of Professionals

24

25

6

1          DELPHI CORPORATION

2

3   Motion to Authorize Motion For Order Under 11

4   U.S.C. Sections 361, 362, 363, 364(c), 364(d)

5   And 364(e) And Fed. R. Bankr. P. 2002, 4001

6   And 9014 Authorizing Debtors To Obtain Secured

7   Post-petition Financing On Superpriority

8   Secured And Priming Basis, (II) Authorizing

9   Use Of Cash Collateral, (III) Granting

10   Adequate Protection To Pre-petition Secured

11   Lenders, (IV) Granting Interim Relief, And (V)

12   Scheduling A Final Hearing Under Fed. R.

13   Bankr. P. 4001 (b) and (c)

14

15   Motion to Authorize Motion For Order Under 11

16   U.S.C. Sections 361 And 363(b) And Fed. R.

17   Bankr. P. 4001(c) Authorizing Debtors To

18   Continue Honoring Pre-petition Insurance

19   Premium Finance Agreement And Continue Grant

20   Of Security Interest To Insurance Premium

21   Finance Company

22

23   Transcribed by:  Esther Accardi

24

25

7

1              DELPHI CORPORATION

2  A P P E A R A N C E S :

3

4  SKADEN, ARPS, SLATE, MEAGHER, & FLOM, LLP

5              Four Times Square

6              New York, New York 10038

7

8  BY:        JOHN WM. BUTLER, JR., ESQ.

9              DOUGLAS P. BARTNER, ESQ.

10             KAYALYN A. MARAFIOTI, ESQ.

11             THOMAS J. MATZ

12

13 LATHAM & WATKINS, LLP

14             885 Third Avenue

15             Suite 1000

16             New York, New York 10022

17

18 BY:        ROBERT ROSENBERG, ESQ.

19

20 KELLEY DRYE & WARREN LLP

21             101 Park Avenue

22             New York, New York 10176

23

24 BY:        MARK R. SOMERSTEIN, ESQ.

25

8

1                    DELPHI CORPORATION

2

3    WARNER NORCROSS & JUDD, LLP

4                    900 Fifth Third Center

5                    Grand Rapids, Michigan 49503

6

7    BY:          GORDON J. TOERING, ESQ.

8

9    CURTIS, MALLET-PROVOST, COLT & MOSLE LLP

10                   101 Park Avenue

11                   New York, New York 10178

12

13   BY:          STEVEN J. REISMAN, ESQ.

14

15   GOODWIN PROCTOR LLP

16                   599 Lexington Avenue

17                   New York, New York 10022

18

19   BY:          ALLAN S. BRILLIANT, ESQ.

20

21

22

23

24

25

9

1                    DELPHI CORPORATION

2

3   SCHAEFFER & WEINER, PLLC

4                    40950 Woodward Avenue

5                    Suite 100

6                    Bloomfield Hills, MI 48304

7

8   BY:          MAX NEWMAN, ESQ.

9

10  SIMPSON THACHER & BARTLETT, LLP

11                   425 Lexington Avenue

12                   New York, New York 10017

13

14  BY:          KENNETH ZIMEN, ESQ.

15

16  WEIL, GOTSHAL & MANGES, LLP

17                   767 Fifth Avenue

18                   New York, New York 10153

19

20  BY:          MARTIN BIENENSTOCK, ESQ.

21

22

23

24

25

10

1                    DELPHI CORPORATION

2

3    BODMAN LLP

4                    100 Renaissance Center

5                    Detroit, Michigan 48243

6

7    BY:            RALPH E. MCDOWELL, ESQ.

8                    (via telephone)

9

10

11   JOEL APPELBAUM, ESQ.

12   (via telephone)

13

14   TIMOTHY PASCOE, ESQ.

15   (via telephone)

16

17   TED MARES, ESQ.

18   (via telephone)

19

20

21

22

23

24

25

11

1          DELPHI CORPORATION

2          P R O C E E D I N G S

3               THE COURT:  All right.  Please

4     be seated.  Delphi Corporation?

5               MR. BUTLER:  Your Honor, good

6     morning.  My name is Jack Butler from

7     the law firm of Skadden, Arps, Slate,

8     Meagher & Flom LLP, here with my

9     partner, Kayalyn Marafioti and our

10    special counsel, Doug Bartner, for the

11    purposes of our October 27th omnibus

12    hearing.  This is the monthly omnibus

13    hearing for the month of October.  Your

14    Honor, we have filed and served a

15    proposed first omnibus hearing agenda

16    and with Your Honor's permission, we'll

17    follow that agenda.

18               THE COURT:  Okay.

19               MR. BUTLER:  Your Honor, the

20    first item on that agenda, item number 1

21    is the Interim Compensation Order,

22    docket number 11.  We had been in

23    discussions with the creditors'

24    committee and with the United States

25    Trustee regarding the form of that

12

1                    DELPHI CORPORATION

2          order.  With respect to the inner comp

3          arrangements, we believe we have a

4          proposed form of final order.  We're

5          going to be dealing with that over the

6          next week.  We ask Your Honor to take

7          that up on the November 4th adjourned

8          hearing so we can get a sign-off from

9          the U.S. Trustee on the form of order.

10                    THE COURT:  Okay.  And are

11         those same people talking about, you

12         know, a fee committee?

13                    MR. BUTLER:  Yes, Your Honor,

14         and in fact the United States Trustee

15         observed to us that even under the inner

16         comp order, the first monthly statements

17         in this case aren't generated until

18         November 30th and that the November 29th

19         omnibus hearing would be an appropriate

20         time to take that up and they wanted to

21         consider certain matters further and

22         consult with the committee.

23                    THE COURT:  Okay.

24                    MR. BUTLER:  So that portion,

25         Your Honor -- the fee committee portion

13

1              DELPHI CORPORATION

2         would come up on the November 29th

3         hearing.

4              THE COURT:  Okay.

5              MR. BUTLER:  Your Honor, the

6         next items, and I'll just take items 2

7         all the way through item 8, are

8         retention applications for the debtors'

9         professionals that have been pursued to

10        which an interim orders had been

11        entered.  The creditors' committee is in

12        the process of completing their review

13        in these things.  They were appointed

14        last Monday, Your Honor, a week ago.  I

15        should report to the Court that

16        following their appointment in an

17        organizational meeting held, I think, on

18        the 17th of October, the -- we held our

19        first fall committee meeting with the

20        committee on the 25th, this Tuesday, the

21        debtors did, and had a full agenda with

22        the committee.  The committee asked us

23        if we would adjourn all of these to

24        November 4th so they can complete their

25        review given the press of other matters.

14

1            DELPHI CORPORATION

2        The U.S. Trustee has also advised us

3        that they expect to have completed their

4        review for purposes of a final order on

5        November 4th.

6                THE COURT:  All right.  Okay.

7                MR. BUTLER:  Your Honor, the

8        next item on the agenda is item number

9        9.  This is the ordinary course of

10       professionals item.  We had discussions

11       with United States Trustee about the OCP

12       order.  Essentially, the form of relief

13       that we're going to request in this

14       motion is going to change and rather

15       than have a multi-tiered order, there

16       will be an order that will basically say

17       that any professional who exceeds 50,000

18       a month or $500,000 for the aggregate

19       case, will have to file a retention

20       application and go through the normal

21       327(a) or (e) approach.  Anyone less

22       than that can be governed by the OCP

23       order.  We're working on the final form

24       of order with the U.S. Trustee and

25       intend to present it to Your Honor at

15

1              DELPHI CORPORATION

2         the November 4th adjourned hearing.

3              THE COURT:  All right.

4              MR. BUTLER:  Your Honor, number

5         10 on the agenda, is the claims trading,

6         the final hearing on the claims trading

7         motion.  This is the motion that is

8         intended to help preserve our NLO and

9         other tax positions and other asset

10        positions.  This, by agreement with the

11        Cleary firm, was removed to the November

12        29th hearing.  There's continued work

13        being done trying to work on a

14        consensual final order.

15             THE COURT:  Okay.  That's fine.

16             MR. BUTLER:  And finally, Your

17        Honor, also on the agenda is number 11,

18        is the Rothschild retention.  This has a

19        success fee in it.  It's subject to the

20        45-day rule here in the Southern

21        District and it will therefore be heard

22        for a final hearing at the November 29th

23        omnibus hearing.

24             THE COURT:  Right.

25             MR. BUTLER:  Your Honor, now

16

1            DELPHI CORPORATION

2        I'm moving on to the matters that we

3        believe were uncontested, agreed or

4        otherwise resolved.  The first matter is

5        item number 12.  This deals with

6        insurance financing.  It's our motion

7        seeking authority to continue honoring

8        pre-petition insurance premium finance

9        agreements and related matters.  Your

10       Honor, we request our authorization from

11       the Court to continue to honor our

12       obligations to an entity called

13       Chamomile, Inc., pursuant to a pre-

14       petition insurance premium financing

15       agreement.  We have reviewed the terms

16       of the agreement, have been provided

17       that the creditors' committee.  Neither

18       the committee nor any other party, has

19       objected to the relief requested, unless

20       Your Honor has any other questions, we

21       rely on the papers.

22            THE COURT:  No.  I reviewed the

23       papers.  Unless -- does anyone else want

24       to be heard on this matter?  Hearing no

25       one, and based on my review of the

17

1                DELPHI CORPORATION

2        motion, I'll approve it.

3                MR. BUTLER:  Thank you.  Your

4        Honor, the next matter, matter number

5        13, is our motion to assume the HSBC

6        purchase card and to continue to use the

7        purchase card agreement and travel card

8        agreement with HSBC Bank, USA National

9        Association.  And Your Honor,

10        essentially we have, in this agreement,

11        asked to assume and take various actions

12        with respect to the agreement that we

13        use, to deal with about 1,080 of our

14        employees who use this as a purchase

15        card through our plant facilities in the

16        U.S. and elsewhere and about 12,500 of

17        our employees who use this card in the

18        ordinary course of the day's business in

19        connection with travel-related expenses.

20        Again, Your Honor, there's a variety of

21        relief sought in the motion with respect

22        to HSBC.  Similarly, this matter has

23        been presented to the committee and

24        other parties.  No one has filed an

25        objection.  Unless Your Honor has any

18

```
 1              DELPHI CORPORATION

 2         particular questions, we'd ask the -- we

 3         have authority to assume we'd take the

 4         actions outlined in the motion.

 5              THE COURT:  The debtors

 6         couldn't get a replacement card?

 7              MR. BUTLER:  Your Honor, we

 8         didn't seek to try to get a replacement

 9         card here.  The fact is that trying to

10         go through the process of taking all

11         these cards out, issuing all the other

12         cards, we actually, as I think we

13         explained to Your Honor on the first

14         day, we pre-funded a good portion of

15         this, on going into this, so I don't

16         believe, as of the -- while there was a

17         potential preference claim here, which

18         we've talked to the commit -- advised

19         the committee about, I don't think

20         there's anything owed, as of the

21         petition date --

22              THE COURT:  Okay.

23              MR. BUTLER:  -- the way in

24         which we structured this particular

25         transaction.
```

19

1          DELPHI CORPORATION

2               THE COURT:  All right.  And

3     this is generally a -- these payments

4     are made generally by the debtors pretty

5     regularly?

6               MR. BUTLER:  Yes, Your Honor.

7     They're paid on a monthly basis and some

8     of these are made directly and others of

9     them may be reimbursed through expense

10    agreements but they're all in the

11    process.  This is basically used for two

12    purposes.  For travel and in our plants

13    when people need -- and facilities --

14    people need to go out and get some de

15    minimis sort of asset, kind -- that's

16    how they go out and acquire them.

17              THE COURT:  Okay.  Does anyone

18    want to be heard on this motion?  All

19    right.  Based on my review of the motion

20    and Mr. Butler's comments and there

21    being no objections, I'll approve it.

22              MR. BUTLER:  Thank you, Your

23    Honor.  Your Honor, the next matter on

24    the agenda is matter number 14.  This is

25    a motion seeking authority to reject

20

1          DELPHI CORPORATION

2      what we called a Pacific Rim lease and

3      in this motion, what we're trying to

4      accomplish -- we no longer need to use

5      the master lease agreement with Pacific

6      Rim, Inc.  This is a master agreement,

7      which involved the lease of assorted

8      machinery, equipment, and other items,

9      and we no longer need to use these

10     items, particularly because of the

11     reasons set forth in the motion having

12     to do with our operations in Foley,

13     Alabama.  Your Honor, as a result of the

14     debtor's exercise of its business

15     judgment, we have determined it's

16     appropriate to reject this lease at this

17     time.  There have been no objections

18     filed, either by the lessor, by the

19     committee or any other party.

20          THE COURT:  Okay.  I reviewed

21     the motion and it appears to be well

22     within the debtor's business judgment,

23     so I'll approve it.

24          MR. BUTLER:  Thank you, Your

25     Honor.  Your Honor, matter number 15 on

21

1                DELPHI CORPORATION

2        the agenda is our motion for an order to

3        sell certain de minimis assets free and

4        clear of liens.  It's essential -- and

5        to pay market rate broker commissions.

6        This is essentially a de minimis

7        procedures order that allows us to

8        operate in the ordinary course of

9        business with the disposition of de

10       minimis assets.  There's a proposed

11       procedure here that would require that

12       we send notice in advance to the U.S.

13       Trustee, the unsecured creditors'

14       committee, the DIP lenders, any known

15       holder of a lien and the assets proposed

16       to be sold and any other known

17       interested party, with respect to the

18       particular asset involved.  There's a

19       procedure that requires that if we don't

20       get a written objection or request for

21       additional time within five business

22       days, we can complete the transaction

23       and otherwise, if there is an objection

24       raised and we can't resolve it, we need

25       to come to court and deal with that

22

1              DELPHI CORPORATION

2       resolution.  There is a purchase price

3       limitation here of greater than --

4       anything greater than ten million

5       dollars, it requires to come to court.

6       Given the company of our size, with our

7       asset base, we think that's an

8       appropriate level.  We have agreed with

9       the creditors' committee.  Our financial

10      advisors of the debtors and the

11      committee are working together on a

12      protocol so that the committee is

13      comfortable on how that ten million

14      dollars is analyzed.  You know, Mr.

15      Rosenberg's used to me the example of,

16      you know, you've got a hundred million

17      dollar asset on the books at book value,

18      and you're going to get ten million

19      dollars for it.  That's probably not the

20      kind of transaction that should be given

21      the test, or not.

22              THE COURT:  Test or not.

23      Actually, I put in here 'cause the ten

24      million only works if it's an arm's-

25      length market driven sale, so I put in

23

1          DELPHI CORPORATION

2     without further Court approval and I

3     added the words arm's-length sale and

4     then you and the committee can work it

5     out beyond that --

6          MR. BUTLER:  -- Right.

7          THE COURT:  -- but the debtor

8     has to be comfortable with an arm's-

9     length sale.  That's separate, but from

10    it not being to insiders.

11         MR. BUTLER:  Right.  And Your

12    Honor on that point, we've agreed to

13    work out a protocol with our financial

14    advisors.  I think we've had pretty good

15    success, even in the last week or ten

16    days, on -- the financial advisor are

17    working very closely together and they

18    have perfections for the debtors and the

19    committee working closely together.  In

20    the unlikely event that we couldn't

21    agree on a protocol, I'd say to Mr.

22    Rosenberg he can come back to court

23    here, with respect to this order

24    subsequently.  But I can't imagine that

25    would be the case.

24

1          DELPHI CORPORATION

2              THE COURT:  Okay.  I had a

3     couple of other comments on this.  Maybe

4     I should give you those before I hear

5     from anyone.  In paragraph 4, I think

6     the broker's affidavit should include an

7     affirmation by the broker that the

8     commission is at or lower than, in his

9     or her reasonable belief, market

10    commissions for similar sales.  And

11    then, paragraph C, which is the

12    paragraph that gives a right to come.

13    Paragraph C is a paragraph that lets

14    people go to court, if they -- if you

15    cannot resolve an objection.  I just

16    want to make it clear that the broker

17    would be retained nunc pro tunc, given

18    the rules in this circuit.  There

19    shouldn't be any concern on the broker's

20    part about that.  And then, lastly, on

21    paragraph 6, which is the paragraph that

22    says that the NATO's procedures shall

23    not apply to sales of assets that

24    involve an insider, I also added this

25    concept and you can -- if you're not

25

1          DELPHI CORPORATION

2     comfortable with the language, you can

3     adjust it, but what I had in mind was,

4     or any sale that because of the integral

5     nature of the asset would require the

6     debtor subsequently to sell additional

7     assets for an aggregate sum in excess of

8     ten million.  And that wouldn't be

9     covered by this either.  You'd have to

10    go to court for that.

11         MR. BUTLER:  I understand that,

12    Your Honor.  And, I should point out we

13    also agreed to give counsel of the

14    debtors pre-petition credit facility

15    notice of these transactions.

16         THE COURT:  Right.  Okay.  So

17    does anyone else -- does anyone want to

18    be heard on this motion?

19         MR. ROSENBERG:  Your Honor,

20    only to say that we were troubled by the

21    ten million dollar number for the reason

22    Mr. Butler said, but I will report that

23    I think that FTI, the debtors' financial

24    advisor, and Mezero, the committee's

25    financial advisor, have already

26

1         DELPHI CORPORATION

2      established an excellent working

3      relationship and I have every

4      anticipation that we will be able to

5      work through what ten million dollars

6      really should mean, particularly in the

7      context of Your Honor's comments.

8           THE COURT:  Okay.  And again,

9      if for some reason, the committee or the

10     banks or anyone else feels this program

11     isn't working as it was intended, then

12     you can come back to court and seek

13     modification of the order.

14          MR. ROSENBERG:  Very good, sir.

15     Thank you

16          THE COURT:  Okay.  But with

17     those changes in caveats, I'll approve

18     it.

19          MR. BUTLER:  Thank you, Your

20     Honor.  Item number 16 on the agenda is

21     a utilities motion.  This is our -- the

22     final hearing on our motion for an

23     interim final order under section 366 to

24     deal with putting in essentially

25     alternative dispute resolution

27

1        DELPHI CORPORATION

2        procedures to deal with utility

3        deposits, perhaps the last of this kind

4        drafted this way, that Your Honor will

5        be hearing, given the changes in the new

6        code.  I think it will be, as I had

7        mentioned at the first day hearings, I

8        think there will be a slightly evolved

9        version of these procedures that will

10       come back even under the new statute.

11       But as to these matters, we have

12       alternative dispute resolution process

13       here, that essentially tries to work out

14       the deposit issue between the utility

15       and the company and sort of vet the

16       adequate assurance issues prior to

17       coming to court.  There were very few

18       objectors to that relief.  We did serve

19       this as required by Your Honor.  There

20       were very few objectors that overall --

21       that filed an objection.  And with

22       respect to those objectors, we were able

23       to resolve one or two of the objections,

24       and more importantly, all the other

25       objectors agreed that they wanted to

28

1          DELPHI CORPORATION

2      continue to work on this with the

3      debtors and asked that -- and agreed

4      that the order could enter on a final

5      basis as to all others but them, and we

6      would continue to work with them and

7      deal with them on November 29th, if we

8      can't come to a satisfactory resolution.

9      The form of black-lined order we

10     submitted, Your Honor, reflects that

11     agreement.

12          THE COURT:  Okay.  I had a

13     couple of changes to this one also,

14     consistent with how I've done these.

15     And I know that different courts have

16     different procedures for this type of

17     motion.  They basically had to do with

18     the provision that you have in here in

19     paragraphs 6 and in paragraph 9, which I

20     think works for an interim order but not

21     for a final order.  The provision says

22     that unless the utility makes a request

23     within 25 days of the receipt of this

24     order, they can't make any other

25     requests.  And since I think the statute

29

1              DELPHI CORPORATION

2        contemplates changed circumstances and

3        the utilities rights in a lot of changed

4        circumstances, I changed that in the

5        third line.  So, instead of saying

6        within 25 days of the date of service,

7        hereof request deadline, I just said and

8        based on materially changed

9        circumstances on the date hereof.  A

10       similar concept is baked into paragraph

11       9 for the utilities that you discover in

12       the future that you might have had that

13       didn't get notice of this --

14              MR. BUTLER:  Yes, sir.

15              THE COURT:  -- And, it again,

16       consistent with that case log on this

17       pre-October 17th and this circuit, this

18       order provides that the utility

19       companies can't unilaterally terminate

20       service, even the ones that you discover

21       in the future, unless there's a court

22       order.  But I think they should be free

23       to come in to ask for that type of

24       relief.  The other change is in

25       paragraph 7, it gives the debtors 45

30

1          DELPHI CORPORATION

2     days to set up a determination hearing.

3     And I've just added, consistent with the

4     Court's Case Management Order, the

5     utility company may seek an earlier

6     hearing.  In all likelihood, it probably

7     would be within that time frame anyway,

8     but if there's some emergency, they

9     could do that.  But, seeing no

10    objections in hearing, I'm going to

11    approve it on that basis.

12          MR. BUTLER:  We'll make those

13    changes, Your Honor, and submit the

14    order.  Thank you.

15          THE COURT:  Okay.

16          MR. BUTLER:  Your Honor, the

17    next matter on the agenda is matter

18    number 17.  This is a motion for an

19    order authorizing the rejection of a

20    license agreement with DuraSwitch

21    Industries, Inc.  Again, Your Honor,

22    another rejection motion dealing with,

23    in this case, a license agreement that

24    was entered into in April of 2000.  It

25    was an exclusive license agreement for

31

```
 1              DELPHI CORPORATION
 2       technology that facilitated electrical
 3       connections within a vehicle, and rather
 4       than go through a litany of what's in
 5       the motion or in a presentation, Your
 6       Honor, the basic punch line in this one
 7       is that we and counsel for DuraSwitch
 8       have agreed on agreed form of rejection
 9       order, and we have submitted it to the
10       Court.
11              THE COURT:  Okay.  I reviewed
12       the motion and it's clearly within the
13       debtors' business judgment and also the
14       revised order, which looks fine.
15              MR. BUTLER:  Thank you.
16              THE COURT:  Does anybody want
17       to be heard on this?  All right, hearing
18       no one, I'll approve it for the reasons
19       stated in the motion.
20              MR. BUTLER:  Thank you, Your
21       Honor.  Your Honor, the next matter on
22       the agenda is the final hearing on our
23       cash management motion.  There were two
24       objections that were filed.  Both of
25       them, perhaps it shouldn't be surprising
```

32

1          DELPHI CORPORATION

2          to any of us, dealt with the same thing

3          we talked about at the interim hearing,

4          which was that pesky paragraph dealing

5          with what should happen in the event

6          that in intercompany transfers there was

7          a net borrower and a net lender and what

8          the relationship should be between the

9          two entities within the debtor's system.

10         Your Honor may recall that the subject,

11         the discussion, and the debate at the

12         first hearing had to do with whether

13         that -- there should be a prior --

14         administrative claim and what priority

15         it ought to have, be it super-

16         administrative, super-priority or

17         others.  That has evolved, now, into the

18         view that there actually -- it shouldn't

19         be just a claim, it should be a lien.

20         And we have actually entered into an

21         agreement with the Pension Benefit

22         Guaranty Corporation as to the language

23         that's in the order that's acceptable to

24         them.  It is a lien.  They're the entity

25         that has a control group liability claim

33

1              DELPHI CORPORATION

2        against all those entities and the

3        priority of that lien is determined by

4        the DIP financing order.  The creditors'

5        committee has reserved or objected on

6        the issue.  I think it was actually a

7        statement that was submitted, so I'll

8        call reserve for the moment, but have

9        raised an issue as to whether that lien

10       ought to have a higher priority.  They

11       would prefer the priority be right below

12       the DIP lenders and the DIP financing

13       order calls for that priority to be

14       juniored to various categories of

15       claimants, the DIP lenders, the pre-

16       petition lenders and the setoff

17       claimants.  That is the only issue I

18       think that exists with respect to the

19       cash management order that I'm aware of.

20       And the -- and my suggestion would be,

21       Your Honor, that we -- the Court reserve

22       on that matter until you hear the DIP

23       financing motion.  Because I think,

24       ultimately, Your Honor's going to be

25       dealing with the DIP financing issues

34

1          DELPHI CORPORATION

2     and depending on how you come out on

3     those I think Mr. Rosenberg and I will

4     be able to work this one out.

5              MR. ROSENBERG:  Yeah.

6              THE COURT:  Okay.

7              MR. ROSENBERG:  Your Honor, I

8     have no problem as far as Mr. Butler

9     goes.  Obviously, the two have to be

10    consistent in terms of the priority of

11    the liens and I will argue passionately

12    for that priority --

13             THE COURT:  Okay.

14             MR. ROSENBERG:  -- at the

15    appropriate time.  We did raise another

16    issue, however, in our statement, which

17    was that a lien is only as good as the

18    assets and cash flow backing it up.  And

19    we do want and need a mechanism to

20    assure that however it is secured, it

21    can be repaid.  I would hope that we

22    could do that via some kind of a

23    protocol, but it is not the case that if

24    Your Honor simply grants a lien, we go

25    away happy.

35

1          DELPHI CORPORATION

2                THE COURT:  Right.  I actually

3          had the same concern and it comes up in

4          the cash management contacts, but

5          there's some point where intercompany

6          transfers really do turn into serious

7          lending decisions.  Maybe that never

8          happens in this case because everything

9          balances out, but there should be a

10         process whereby the appropriate

11         professionals for the committee are kept

12         up to speed on both net balances and I

13         guess, also, you know, the same type of

14         information that a board would consider

15         in continuing to authorize its debtor to

16         extend credit to another debtor.  That

17         is, I guess, the financial payoff of the

18         other debtor.  I expect that such an

19         analytical process will be undertaken by

20         each credit provider anyway, so I'd hope

21         that, and expect, really, that whether

22         it's the committee's financial advisor

23         or counsel would be kept informed of

24         those decisions on, you know, a

25         reasonably current basis, like every

36

1              DELPHI CORPORATION

2         month or maybe even every two weeks.

3         And if there's any -- in particular,

4         what I have in mind is any large

5         increase in exposure by another company

6         lender or substantial decline in the

7         fortunes of an intercompany borrower

8         that it would raise a red flag about

9         lending.

10             MR. BUTLER:  Your Honor, on

11        that point I agree with Mr. Rosenberg.

12        I don't view this protocol as being a

13        difficult one for us to resolve.  We

14        contemplate this being part of the

15        monthly reporting package to the

16        committee.  Your Honor should know we

17        already established between us a

18        consensual schedule of meetings that, at

19        the moment, go out all the way till next

20        March.  In terms of dates, we're meeting

21        every month as a full group of debtors

22        and committee representatives and we'll

23        make sure this is part of the monthly

24        reporting package.

25             THE COURT:  Okay.  But -- I'm

37

1           DELPHI CORPORATION

2     serious about this.  I don't think there

3     should be a sort of an automatic yes by

4     a particular debtor's management, which

5     overlaps obviously to a borrowing

6     request.  I mean, this is not just

7     simply, we need, you know, ten million

8     dollars.  Okay, here it is.  There needs

9     to be some analysis of the ability to

10    repay that.

11              MR. BUTLER:  Right.  Well, Your

12    Honor, I think tempered with that is the

13    fact that, you know, these are -- as you

14    look at these inner companies, the vast

15    majority of them are wholly owned.  And

16    the benefit of that enterprise inures to

17    the overall benefit of the business.

18              THE COURT:  Well, that's

19    another -- you know, it depends on who

20    the creditors are.  If --

21              MR. BUTLER:  Right.

22              THE COURT:  If there's a lot of

23    overlapping debt, than maybe it's not

24    much of an issue. --

25              MR. BUTLER:  Yeah.  And in

38

1          DELPHI CORPORATION

2     fact, Your Honor, well, this is for

3     another day, but the reality is the

4     majority -- we'll eventually get to a

5     point in this case where we'll look at

6     where all the debt is -- The majority of

7     the debt, say the liens that attach from

8     the banks, and now some of the

9     replacement liens granted in the

10    proposed financing order, and the PBGC's

11    position.  The majority of the other

12    debt of the company is not at these

13    entities.

14          THE COURT:  Well --

15          MR. BUTLER:  That will be for

16    another day, but --

17          THE COURT:  -- that should make

18    the protocol easier.  I mean, there's no

19    reason the committee needs to get into

20    this in a great deal of detail if, in

21    fact, no creditors are even potentially

22    hurt by a loan from one company to

23    another.

24          MR. BUTLER:  All right.

25          THE COURT:  So let's reserve on

39

1           DELPHI CORPORATION

2       the lien priority issue till the

3       discussion of the debt -- the language

4       is the same in both orders, right?

5               MR. BUTLER:  Yes, Your Honor.

6               MR. SOMERSTEIN:  Yes, Your

7       Honor.  Good morning, Your Honor.

8               MR. ROSENBERG:  Only objections

9       to it.

10              MR. SOMERSTEIN:  Good morning,

11      Your Honor.  Mark Somerstein, Kelly Drye

12      for Pension Benefit Guaranty

13      Corporation.  Your Honor, I would just

14      note that PBGC is not a member of the

15      creditors' committee and we'd appreciate

16      the opportunity to participate with Mr.

17      Butler and his team, and Mr. Rosenberg

18      and his team, in reviewing the protocol

19      so that we could see the information on

20      the intercompany borrowings.

21              THE COURT:  Okay.

22              MR. SOMERSTEIN:  I'm sure

23      that's something we can --

24              THE COURT: -- well, maybe --

25      again, I would just urge you to focus in

40

1        DELPHI CORPORATION

2    on the borrowers that are of concern to

3    your client.

4            MR. BUTLER:  Your Honor,

5    although, I know the PBGC and we're

6    actually, at some point, we'll weigh in

7    on that.  We've been working with the

8    PBGC in terms of their efforts to seek

9    membership on the committee.  But we

10   don't want to get in position of saying,

11   what the committee gets to do, other

12   people get to do.

13           THE COURT:  Well, I agree with

14   that --

15           MR. BUTLER:  We're not asking

16   --

17           THE COURT:  -- but I think this

18   is a specific issue that we all know the

19   PBGC is focused on, besides the

20   committee.  And, if it can be done in a

21   way that really focuses in on their

22   obligors in an efficient way, then I

23   think you can do that.

24           MR. SOMERSTEIN:  That's exactly

25   what we're talking about, Your Honor.

41

1              DELPHI CORPORATION

2      Thank you.

3              THE COURT:  Okay.

4              MR. BUTLER:  Your Honor, that

5      brings us to the only other matter on

6      the agenda, matter 19, which is the DIP

7      financing hearing, which is contested.

8      Your Honor, we'd like to ask for a brief

9      recess so that we can set up for the

10     hearing and try to resolve a few

11     additional issues.  You know, no more

12     than 30 minutes, hopefully less.

13             THE COURT:  Okay.  So why don't

14     I come back here at 11:30?

15             MR. BUTLER:  Thank you, Your

16     Honor.

17             THE COURT:  Okay.

18             (Recess at 11:04 a.m.)

19             THE COURT:  Please be seated.

20     Okay, we're back on the record in Delphi

21     Corporation.

22             MR. BUTLER:  Your Honor, thank

23     you for allowing us to take an extended

24     lunch recess.  I hope the Court will

25     believe it was constructive.  The

42

1              DELPHI CORPORATION

2        debtors certainly believe it was with

3        the help of a number of principal stake

4        holders, we've been able to resolve a

5        number of the objections to the DIP

6        financing motion, which is the next

7        matter on the agenda.  That's matter

8        number 19 on the agenda and our last

9        matter for today.  And the resolution

10       was also resolved, matter 18, cash

11       management motion that has been

12       reserved.

13              THE COURT:  Okay.

14              MR. BUTLER:  Your Honor, what

15       I'd like to do is reorganize the hearing

16       slightly and report to the Court on a

17       number of the settlements, and then move

18       to an abbreviated evidentiary record.

19              THE COURT:  Uh-huh.

20              MR. BUTLER:  I believe we

21       resolved all the objections that went to

22       the issues as to whether there should be

23       a DIP financing put in place.  I think

24       we have addressed, by the majority of

25       objections that would like adequate

43

1           DELPHI CORPORATION

2      protection.  I believe that some of the

3      setoff claimants may still raise issues

4      and I believe Bank of America may raise

5      certain issues.  Those issues, I don't

6      believe, based on review of the

7      objections go to the heart of whether or

8      not we've complied with 364(d) on those

9      kind of issues.  So what I propose to do

10     is to describe, in general terms, the

11     settlements that had been reached, so

12     that everyone is informed.  I also am

13     able to answer any questions the Court

14     has and then move to an evidentiary

15     record the admission of exhibits and

16     proffer it for the Court.  We have the

17     witnesses available, but I don't know,

18     unless Your Honor wants us to get live

19     testimony, whether anyone else will seek

20     it.

21           THE COURT:  Okay.  Well, I take

22     in proper and then, obviously, if

23     someone wants to cross-examine them,

24     they can do that.

25           MR. BUTLER:  Your Honor, this

44

1          DELPHI CORPORATION

2          is, as the Court knows, a motion that we

3          had filed.  This is the final hearing

4          before the Court on approval about 40

5          would obtain and move forward on 2

6          billion dollars of committed DIP

7          financing from JP Morgan Chase Bank NA

8          as administrative agent and CitiCorp USA

9          as syndication agent.  Along with a

10         group of other financial institutions

11         that have been arranged by JP Morgan

12         Securities Inc. and CitiGroup Global

13         Markets Inc.  The DIP facility is before

14         the Court today includes both a 259

15         dollar term loan and a 1.7 billion

16         dollar revolver.  There's a sub-limit,

17         as I advised the Court at the interim

18         hearing, about 325 million dollars for

19         letters of credit and under the terms of

20         this financing, it would prime

21         approximately 2.59 billion dollars worth

22         of pre-petition revolver and term loan

23         facilities under the terms of the order.

24         And we also have dealt with, in this

25         order, how setoff and related rights,

45

1          DELPHI CORPORATION

2          including recoupment issues, would be

3          addressed going forward in this case in

4          an orderly manner.  It is the company's

5          view, Your Honor, that we have hit what

6          we believe to be a very complex set of

7          issues what I'll call the sweet spot of

8          an order that balances the interest of

9          all parties here in an orderly manner

10         and allows the company to move forward

11         in these cases.  Your Honor, there was

12         only one objection that was filed, and I

13         should point out -- to begin with, Your

14         Honor, I'll move the admission of these

15         exhibits at the evidentiary portion of

16         this book could be used for the next

17         references now.  Could I present an

18         exhibit book to the Court?

19              THE COURT:  Sure.

20              MR. BUTLER:  Your Honor, the

21         transaction that we're asking the Court

22         to approve is a transaction that is

23         evidenced by several documents and they

24         are marked as Debtors' 1, 2 and 3.  A

25         commitment letter, a post-petition DIP

46

1            DELPHI CORPORATION

2       financing agreement, which is Exhibit 2

3       and Exhibit 2a, which is a first

4       amendment to the revolving credit term

5       loan and guarantee agreement, which

6       includes an agreement as to the

7       borrowing base element of this

8       transaction.  We have also filed with

9       the Court a proposed financing order

10      which has been black-lined on several

11      occasions and which we will suggest some

12      other changes to, in this hearing.  But

13      the current form of that order in terms

14      of black-line is at Exhibit 4.  That's

15      the black-line which represents the

16      current state of the order, subject to

17      the comments that we made on this

18      record.

19           THE COURT:  Are those documents

20      the same as the ones provided my

21      chambers, I guess, last night?

22           MR. BUTLER:  Yes, Your Honor.

23      There was a proposed order attached to

24      the original motion that was updated

25      with a final financial order that was

47

1          DELPHI CORPORATION

2     filed with an omnibus reply.  It was an

3     exhibit of the omnibus reply; it was

4     black-lined against the Court's interim

5     order.  We then had further negotiations

6     and late last evening we reached

7     agreement with the post-petition

8     lenders, the pre-petition agent, General

9     Motors Corporation and the company about

10    the form of order.  We black-lined that

11    and we served it out last night, or

12    overnight.  We now have held the Court

13    we put it out on the docket, we put it

14    out on the website and we served all the

15    parties with it, overnight.

16          THE COURT:  Okay.

17          MR. BUTLER:  There'll be some

18    changes to that order today, although

19    they are relatively discreet, to resolve

20    some of the issues that we have before

21    the Court.  So that the documents we're

22    asking Your Honor to approve would be

23    the loan agreements on 2 and 2a and the

24    financing order as we make changes on

25    the record today.

48

1          DELPHI CORPORATION

2               THE COURT:  And there are

3     agreements that reflect the amendments

4     that went out last night, too.

5               MR. BUTLER:  Yeah, Your Honor.

6     The loan agreements didn't really need

7     much in the way of changing.  There were

8     issues more about priorities and

9     relationships than anything else.

10              THE COURT:  Okay.

11              MR. BUTLER:  Your Honor, also,

12    Exhibit 28 and 29 to -- Debtors' 28 and

13    29 set forth a summary of all the

14    objections that were filed as of 12 noon

15    yesterday and the debtors' views on

16    those.  Those actually -- Exhibit 28,

17    Debtors' Exhibit 28, is actually -- was

18    also Exhibit B on omnibus reply and

19    Debtors' 29 was Exhibit C to our omnibus

20    reply, which basically laid out the

21    objections that had been, from the

22    debtors' perspective, timely filed and

23    some others that had not been timely

24    filed, but which we were aware of prior

25    to the 12 noon deadline.  We had the

49

1          DELPHI CORPORATION

2          chambers to submit our omnibus reply.

3          Of all the objections listed in Debtors'

4          28 and 29, I believe the only objection

5          that went to the issue solely of whether

6          or not the debtors could enter into this

7          priming facility was the objection filed

8          by the self-styled ad hoc committee of

9          pre-petition lenders.  The group we

10         refer to as the Goodwin Proctor Group,

11         represented by Mr. Brilliant and his

12         colleagues, which had filed objections

13         really alleging, essentially, that the

14         company couldn't sustain its burden on

15         Section 364 of the Bankruptcy Code and

16         further, even if could, that the company

17         hadn't offered adequate protection.  In

18         connection with that transaction -- with

19         those objections, we also filed a reply

20         and there are a couple of items and some

21         changed circumstances that I want to

22         reflect on this record so the record

23         here is complete.  In connection with

24         that transaction, and that is the DIP

25         lending loan with the priming position,

50

1          DELPHI CORPORATION

2      with respect to the 2.59 billion dollars

3      of pre-petition debt, there was a notice

4      -- there was a position that the pre-

5      petition agent took and that was

6      communicated to all of the members of

7      the pre-petition bank group, and the

8      members of the pre-petition bank group

9      then took votes on two discreet elements

10     which are relevant to today and perhaps

11     relevant to the case.  And, the notice

12     that the pre-petition agent sent out is

13     Debtors' 22, which is the actual notice

14     in which the debtor -- the approached

15     agent took two positions.  First it had

16     taken a positing that, absent

17     instruction to the contrary, it was not

18     going to object to the debtors' request

19     to enter into this transaction, and it

20     asked the members of the group to give a

21     reflect on that.  Second, it had told

22     the group that it intended to inform the

23     debtors that the debtors would not be

24     able to renew live or based interest

25     contract arrangements as they expired.

51

1        DELPHI CORPORATION

2        I believe, beginning on or around

3        November 15th of this year, and also

4        sought direction from the lenders on

5        those issues.  With respect to the first

6        matter, there were 42.88 percent of the

7        members --

8              THE COURT:  I'm going to

9        interrupt for just a second.  Please

10       turn off your Blackberries.  Anytime

11       that sound -- sounds like a little bee

12       buzzing, the transcript gets interrupted

13       by your Blackberries.  Okay, you can go

14       ahead Mr. Butler.

15             MR. BUTLER:  Okay.  Your Honor,

16       in that vote that was taken, 42.88

17       percent of the holders of the pre-

18       petition debt affirmatively agreed with

19       the position of the pre-petition agent

20       not to object to this transaction.

21       Approximately 14 percent of the holders

22       objected and directed the agent to

23       object to this transaction.  And

24       approximately somewhere in the

25       neighborhood of 33 percent did not vote,

52

1                    DELPHI CORPORATION

2           but under the terms of the solicitation

3           from the agent were deemed to have

4           consented to the agent's approach; not

5           consenting to the priming but to the

6           actions to be contemplated by the agent.

7           Which meant that, essentially, about 86

8           percent of the bank group concurred or

9           deemed with concurred with the agent's

10          decision not to object to this

11          transaction.  However, with respect to

12          the issue of ABR, and this is different

13          than it was reflected in our papers

14          because we had different information and

15          it was incorrect, and I want the record

16          to be correct.  Fifty-six percent of the

17          members of the bank group concurred with

18          the agent's determination to no longer

19          permit LIBOR agreements, LIBOR based

20          interest rate agreements with the

21          debtors, and the balance did not vote

22          but were deemed to have concurred under

23          the terms of the solicitation.  So

24          essentially, at least this follows,

25          insofar as the pre-petition agent was

53

1        DELPHI CORPORATION

2        concerned, there was consensus among the

3        bank group that the agent would inform

4        the debtors that when a LIBOR-based

5        contract expires, on or about November

6        15th, they would not seek to renew them.

7        Now, the debtors' position is that that

8        action may or may not be enforceable

9        under the terms of that agreement.  And

10       given the fact that we're in chapter 11,

11       at the moment, and therein obviously

12       lies one of issues that ultimately may

13       need to be determined by this Court.

14       But it is, I think, a significant

15       materially changed fact from the state

16       of the papers before the Court, that

17       there was unanimous consensus, at least

18       deemed consensus among the pre-petition

19       holders to move to an ABR rate.  Now the

20       ABR rate, Your Honor, the difference

21       between the two rates is about 160 basis

22       points, it's about 37 and a half million

23       dollars a year on an annualized basis,

24       something along the ways in additional

25       interest costs.  And that would be the

54

1          DELPHI CORPORATION

2       contract rate interest.  And, Your

3       Honor, those items are discussed in some

4       detail in Debtors' 17, 18 and 19, in

5       terms of the exhibits that are before

6       the Court, about how those particular

7       transactions work.  In addition, there

8       are other claims under the pre-petition

9       loan agreement that could, according to

10      some holders of the pre-petition debt,

11      be claimed for both default interest and

12      incremental 200 basis points and other

13      damages and costs or claims associated

14      with any prepayment or payment of the

15      term loan not in accordance with the

16      terms of that term loan, by the

17      prepayment premiums or call premiums or

18      damages or whatever the claims may be.

19      Essentially, what we have entered into

20      an agreement to do, which we understand

21      involves, in all respects, any objection

22      by Mr. Brilliant's clients to this

23      hearing, is we've agreed that the -- and

24      I'll read some language in a moment --

25      but essentially we've agreed that the

55

1          DELPHI CORPORATION

2          pre-petition agent can put up, what's

3          called interlinks, the internet-based

4          application in which it communicates

5          with its 250-odd plus lenders and

6          opportunity for any holder to waive its

7          claim on a permanent basis, to default

8          interest under the pre-petition

9          facility, and waive its claim under any

10         basis to any call premium, prepayment

11         premium, other kind of claim against the

12         company for the prepayment other than in

13         accordance with the contract of amounts

14         owed under the pre-petition instrument.

15         Any holder which waives those two claims

16         would then be entitled to receive the

17         ABR rate for the balance of this case.

18         Actually, for the balance of the time

19         the indebtedness is outstanding in

20         accordance with the terms of the loan

21         agreement.  But the applicable rate paid

22         to that holder would be ABR as opposed

23         to LIBOR.  If someone does not waive

24         those claims they would be paid, as

25         adequate protection, the LIBOR rate;

56

1              DELPHI CORPORATION

2         they would retain their rights to argue

3         that the differential accrued and we

4         would also fight about whatever other

5         claims they had including default

6         interest claims and other kinds of

7         compensatory claims at the end of the

8         case in the proof-of-claim process.  And

9         that was the fundamental agreement

10        reached.  We've also agreed, under the

11        terms of the adequate protections

12        package, to pay the reasonable expenses

13        the pre-petition agent and, through the

14        date of this hearing, only the

15        reasonable expenses incurred by Mr.

16        Brilliant's group in terms of the fees

17        and expenses of his firm.

18             THE COURT:  In connection with

19        opposing the debt?

20             MR. BUTLER:  Correct.  But only

21        in connection with matter, only to the

22        date of this hearing.

23             MR. BRILLIANT:  Your Honor, if

24        I may.  Two minor issues, it's ABR plus

25        applicable margin and it's the fees of

57

1          DELPHI CORPORATION

2      my firm and we had hired, you know,

3      conflicts councils to serve some of the

4      subpoenas with respect to what we had a

5      conflict, and that's covered in the

6      order as well.

7              THE COURT:  Okay.

8              MR. ROSENBERG:  Mr. Butler, I

9      assume that we will get notice of the

10     fee request and then have a say in the

11     reasonableness involved?

12             MR. BUTLER:  Absolutely.

13             MR. ROSENBERG:  Thank you, sir.

14             THE COURT:  Okay.

15             MR. BUTLER:  The change to the

16     order occurs, Your Honor, on this pre-

17     report, and I want to be specific

18     because this was reviewed with a number

19     of the parties.  The change in the order

20     here occurs in paragraph 12C.  And if

21     the Court uses -- refers to Debtors' 4

22     and uses that black-line and it goes to

23     page 30, and this is the same black-line

24     that's been distributed to virtually

25     everyone in the courtroom, or people who

58

1          DELPHI CORPORATION

2      have, at least, access to it.  It's also

3      posted on delphidocket.com for those

4      participating by telephone.  If we go to

5      page 30 there's an insert that occurs in

6      Roman numeral III about eight/nine lines

7      down.  There's a phrase and it says, and

8      letter of credit and other fees at the

9      non-default contract rate.  Then there's

10     a word, applicable, between the word

11     rate and applicable there is the

12     following insertion.  Including at the

13     option of the borrower the Euro dollar

14     rate plus the applicable margin.  And

15     then on the next line where it says

16     provided back, and after the work back,

17     we insert the symbol X(x) because

18     there's going to be a Y in a moment.

19     And then we continue down just before

20     roman numeral IV and we add there a Y in

21     the hole and insert the following

22     statements.  "Notwithstanding anything

23     to the contrary, in this order or the

24     pre-petition credit agreement, as to

25     each pre-petition secured lender which

59

1           **DELPHI CORPORATION**

2           executes and delivers a written consent

3           in the form to be provided by the pre-

4           petition agent(which consent shall be

5           informed and substance reasonably

6           satisfactory to the borrower), waiving

7           and releasing all claims, if any, in

8           respect of default interest.  And any

9           claims related to the prepayment of the

10          pre-petition debt including any

11          prepayment premium under the pre-

12          petition credit agreement, interest

13          shall accrue and be paid by the borrower

14          on the first business day of each month

15          at ABR plus the applicable margin in

16          respect to the pre-petition loans held

17          by such pre-petition secured lender from

18          and after the labor of A, the expert

19          existing LIBOR contracts and B, the

20          delivery of such release and waiver."

21                THE COURT:  Okay.  Go ahead.

22                MR. BUTLER:  And then on page

23          31, there is a statement that says, at

24          the end of paragraph C, before that at

25          paragraph sub D, it says, the debtor

60

1          DELPHI CORPORATION

2          shall pay the reasonable and documented

3          fees and expenses of counsel to the ad

4          hoc committee of pre-petition secured

5          lenders in connection with the motion

6          and we have an agreement as to a cap on

7          that, which we had discussed off the

8          record, Your Honor, with that group and

9          we'll obviously with other parties of

10         interest.  And, you know, the reasonable

11         fees cannot exceed a capped amount.

12              THE COURT:  And these are just

13         legal fees, right?

14              MR. BUTLER:  Yes, Your Honor.

15              THE COURT:  Okay.

16              MR. BUTLER:  And then, Your

17         Honor, we would insert an insert there

18         that would also say, during dependency

19         of the Chapter 11 case, and accept as

20         otherwise set forth in a any confirmed

21         reorganization plan, the pre-petition

22         debt of any pre-petition secured lender

23         shall not be repaid or refinanced in

24         whole unless it is part of a transaction

25         in which the obligations under the DIP

61

1           DELPHI CORPORATION

2      credit agreement and the pre-petition

3      credit agreement are repaid or

4      refinanced in whole, or, if such pre-

5      petition secured lender consents to such

6      repayment.

7                THE COURT:  Okay.

8                MR. BUTLER:  Your Honor, that

9      represents the entire agreement between

10     Mr. Brilliant's clients and the debtors

11     and fully resolves their objection.  I'd

12     like Mr. Brilliant to confirm that on

13     record.

14               THE COURT:  Actually, before we

15     do that, and I apologize for

16     interrupting, if there is the LIBOR and

17     the debtor agrees that they won't object

18     to the interest that's being received

19     except if, for some reason, your total

20     won't be secured.

21               MR. BUTLER:  Your Honor, what

22     we've agreed to is -- there are other

23     rights in lieu of the benefit of the

24     creditors' committee which have been

25     negotiated, which I'll get to in a few

62

1          DELPHI CORPORATION

2     minutes.  But for example, payments

3     received under this order are subject to

4     recharacterization and we'll get to

5     that.  You know, if under the

6     appropriate circumstances,

7     recharacterization is appropriate, that

8     right has been reserved and Mr.

9     Rosenberg will talk about it a little

10    bit later on.

11         THE COURT:  The reason I'm

12    losing this is that in paragraph 16, on

13    38 and 39, in addition to the

14    reservation of rights for the committee,

15    the debtors reserve their rights to

16    argue the appropriateness of any

17    interest rate charged or claimed by the

18    pre-petition's secured lenders, and I'm

19    wondering whether you need to have

20    certain cross-reference now to this new

21    agreement, at least in respect to the

22    waivers, or not.  I'm just raising that

23    for you.

24         MR. BUTLER:  As always, Your

25    Honor, you're the best lawyer in the

63

```
1           DELPHI CORPORATION
2      courtroom and you're absolutely right.
3      The only recharacterization would be if
4      we were undersecured and otherwise there
5      would be no opportunity to challenge the
6      ABR plus applicable margin rate on a go
7      forward basis.
8                THE COURT:  Well, I'm probably
9      a lot smarter than any king in charge,
10     but let's make sure Mr. Butler agrees
11     that once the waiver comes in you're not
12     going to be able to object.
13               MR. BUTLER:  That's correct,
14     Your Honor.  I was going to restate that
15     at the end of that statement.
16               THE COURT:  So we probably have
17     to add some cross-reference then in,
18     paragraph 16.
19               MR. BUTLER:  We'll make that
20     cross-reference, Your Honor.
21               THE COURT:  Okay.
22               MR. BUTLER:  Mr. Brilliant.
23               MR. BRILLIANT:  Thank you, Your
24     Honor.  Alan Brilliant for the Goodwin
25     Proctor Company, the ad hoc committee of
```

64

1          DELPHI CORPORATION

2     pre-petition secured lenders.  Your

3     Honor, the agreement read into the

4     record by Mr. Butler accurately reflects

5     the agreement and upon approval of said

6     settlement by Your Honor, our committee

7     would withdraw our objection.

8          THE COURT:  Okay.

9          MR. BRILLIANT:  Your Honor, I

10    would also like to thank Your Honor and

11    your chambers for your accommodations

12    over the last week.  It's obviously been

13    a very hectic week for you all, not just

14    this case, but other things and we

15    really appreciate your accommodating us

16    until findings hearing yesterday.

17          THE COURT:  That's fine.  And

18    speaking of accommodating, are the

19    people who got the trial subpoenas, have

20    they been released of that one?

21          MR. BRILLIANT:  Yes, Your

22    Honor, when we reached the settlement

23    agreement we immediately released them.

24    Everybody was happy to go except for one

25    counsel, GE's counsel, who apparently

65

1          DELPHI CORPORATION

2      wants to leave open their right to seek,

3      you know, sanctions for the filing of

4      the subpoena.  I believe your clerk has

5      given them, you know, a further date and

6      if we have to, we'll come back and

7      respond to it.

8              THE COURT:  All right.  Well, I

9      hope you don't have to deal with that.

10             MR. BUTLER:  Your Honor, the

11      next item that I'd like to deal with is

12      the agreement that has been reached in

13      which a number of parties played a role

14      but it resolves, the objection of it

15      resolves is the objection of the

16      creditors' committee that was filed, or

17      the statement of the creditors'

18      committee, I should say, was filed.  And

19      there's a package of information here

20      that I want to get out and I know Mr.

21      Rosenberg will help me if I get it

22      wrong.  But I think I have the

23      understanding and Mr. Zimen's interests

24      were implicated and I think he will

25      address these as well.  But the

66

1            DELPHI CORPORATION

2       agreements reached have been reached as

3       follows, and these agreements which will

4       be reflected in the order will result in

5       the withdrawal of the statement, or at

6       least the committee's agreement that the

7       order ought to be entered with these

8       changes.  First, the DIP agent will

9       agree that it does not have the right to

10      waive the intercompany leaves that were

11      subject of the cash management order and

12      the subject that Your Honor talked

13      about, the subject of this order.  There

14      was a suggestion in the order that they

15      had that right and that's being

16      modified.  Second, that to the extent

17      that there's going to be a change in the

18      borrowing base or in the financial

19      convenants, we will give -- the debtors

20      will give reasonable advance notice to

21      the creditors' committee of those

22      events.  And seeing as we provide the

23      information to them on a monthly basis,

24      I don't see that as a burden, Your

25      Honor.

67

1          DELPHI CORPORATION

2               THE COURT:  Can I interrupt?

3     This is a suggestion, I don't know if

4     this actually is the case, but, the

5     carve-out could be affected by

6     modification to the borrowing base.  At

7     least when I read it, is that possible?

8               MR. BUTLER:  I donÆt believe it

9     is.  I'll ask the counsel for the DIP

10    lenders whether they agree with that.  I

11    don't think the carve-out can be changed

12    in any respect on account of the

13    borrowing base.

14              MS. O'DELL:  Maureen O'Dell for

15    the DIP lenders.  The borrowing base

16    typically just gives you the amount of

17    approved unpaid.  I think that's the

18    only relationship between the two.

19              THE COURT:  Okay.  Thank you.

20              MS. O'DELL:  The carve-out can

21    impact the borrowing base, but not vice

22    versa.

23              THE COURT:  Okay.  All right.

24              MR. BUTLER:  Your Honor, the

25    next item is to the extent that the

68

1              DELPHI CORPORATION

2       debtors received notice from the DIP

3       lenders that there is a triggering event

4       in connection with a carve-out.  We had

5       agreed to provide a copy of that written

6       notice immediately to the creditors'

7       committee council.

8              THE COURT:  Okay.

9              MR. BUTLER:  Fourth, Your

10      Honor, to the extent that there's a

11      triggering event of the carve-out and

12      that triggering event is later resolved

13      or waived so that there's not a

14      continuing event of default, the

15      agreement is that the carve-out would be

16      refreshed or would spring back to the

17      original amount Your Honor is

18      considering approval of today.

19              THE COURT:  Okay.

20              MR. BUTLER:  Your Honor, I'll

21      mention, also on the record, that there

22      was an inconsistency between the credit

23      agreement and the draft order with

24      respect to the carve-out language.  The

25      credit agreement was correct; the order

69

1              DELPHI CORPORATION

2       was incorrect.  There are a few words

3       that have to be modified in connection

4       with that, but it would be consistent

5       with the negotiated carve-out language

6       that's in the credit agreement.

7              THE COURT:  Okay.

8              MR. BUTLER:  Your Honor, the

9       next item goes to the investigatory

10      periods with respect to matters related

11      to the pre-petition lenders.  Currently

12      all of the matters have, under the order

13      -- are proposed to have a 90-day window

14      which can be extended, I believe it's

15      for cause upon motion to the Court.

16      Some of those rights are going to be

17      carved out and put in separate buckets

18      and extended for 180 days, subject to

19      the same motion that can be filed to

20      extend for cause.  And that would have

21      to do with the committee's review of any

22      causes of action and the releases the

23      debtors have given under these

24      agreements, under the order.  And

25      second, the question as to the

70

1               DELPHI CORPORATION

2       oversecured status of the pre-petition

3       lenders.

4               THE COURT:  And that will be in

5       180 days?

6               MR. BUTLER:  That will be 180

7       days.

8               THE COURT:  Plus the

9       opportunity to come to Court.

10              MR. BUTLER:  Correct, Your

11      Honor.

12              THE COURT:  Okay.

13              MR. BUTLER:  Your Honor, there

14      are a few places in the order where, in

15      talking about adequate protection of the

16      pre-petition interest, the phrase --

17      we're going to correct it to make sure

18      it tracks the statute and refers to

19      value -- their interests in the

20      collateral.  Your Honor, also in

21      connection with investigatory rights

22      being granted to the committee, the

23      parties would agreed, that the

24      committee, if they determine there was a

25      basis to file an action, they would have

71

1          DELPHI CORPORATION

2      agreed or deemed standing to do so.  The

3      thought process behind there is the

4      debtors have already waived their

5      interest in that respect and therefore

6      it would futile to make demand on the

7      debtors to prosecute before and then

8      seek the Court's approval.  So, they

9      would have agreed standing to file the

10     complaint before this Court.

11          THE COURT:  All right.  People

12     still have the right to say, once it's

13     filed, we don't need to pursue it on a

14     fast track, or anything like that?

15     Parties of interest still have the

16     opportunity though, to try and persuade

17     me that once it's filed, it doesn't have

18     to be pursued on a fast track or, you

19     know, the scheduling issues are

20     reserved, right?

21          MR. ROSENBERG:  Certainly, Your

22     Honor.

23          THE COURT:  Okay.

24          MR. BUTLER:  Your Honor, the

25     next -- I hope I get this correct.  The

72

1           DELPHI CORPORATION

2           next issue -- or the next agreement is a

3           bundling issue of rights that are either

4           waived or not waived vis-a-vis what the

5           committee wanted and the pre-petition

6           lenders want as part of the adequate

7           protection package.  And they implicate

8           section 506(c), 507(b) and 55 -- excuse

9           me 506(c), section 551 of the code and

10          interest in the proceeds in avoidance

11          actions.  The agreement would be that

12          the existing 506(c) waiver proposed in

13          the financing order will stand as

14          drafted.  However, the creditors'

15          committee objection with respect to

16          section 551 would be sustained and they

17          would -- on that particular point.  And

18          there would be an agreement in terms of

19          any interest the pre-petition lenders

20          would have in avoidance proceeds under

21          the terms -- or anyone else having to

22          file a 7(b) in the interest of avoidance

23          proceeds that the first thing that would

24          be paid in priority would be the

25          administrative costs of the estate in

73

1           DELPHI CORPORATION

2       generating that fund or those proceeds.

3       So there would be, before any kind of

4       intervening interests could occur, the

5       administrative costs would be paid

6       first.

7               THE COURT:  So that's the super

8       duper.

9               MR. BUTLER:  Someone described

10      it to me, Your Honor, this afternoon as

11      a 506(c) interest and 507(b).  I'm not

12      quite sure that's the right answer.

13      And, I don't want to confuse the record,

14      but the idea is that's it's that basic

15      concept.

16              THE COURT:  Okay.  On that

17      general topic, I don't know if this was

18      omitted on purpose or inadvertently, but

19      the avoidance actions that are listed

20      don't include 553, the avoidance

21      provision for setoff rights.  Is that

22      the improper setoffs?  Was that

23      intentional or is that just a --

24              MR. BUTLER:  I think that was a

25      drafting glitch, Your Honor.  I'll

74

1          DELPHI CORPORATION

2      correct it.

3          THE COURT:  So that should go

4      on that list then.

5          MR. BUTLER:  Your Honor, I

6      believe that the statements that I had

7      made on the record reflect the

8      understandings between the debtors, the

9      pre-petition agent, the post-petition

10     agent and the creditors' committee on

11     these matters.  And, if accepted and

12     approved in the final order to be

13     submitted, would result in the

14     creditors' committee deemed the

15     statement to have been withdrawn or

16     satisfied or however one wants to

17     characterize it.  And I'll ask Mr.

18     Rosenberg to confirm that on the record

19     after making one additional statement.

20     And that is, if Your Honor is in the

21     position to grant the changes we set in

22     the record today, it is important to get

23     a final order in place and we'd like,

24     Your Honor, when we get to the end of

25     the this, sir, Your Honor is prepared to

75

1              DELPHI CORPORATION

2       grant this relief because we still have

3       a ways to go.  We would like Your Honor

4       to be able to -- have Your Honor

5       indicate that the financings been

6       granted so we could issue the

7       appropriate press releases to see if we

8       can get there, but I think we would like

9       to submit the order tomorrow morning to

10      chambers, so that there's a number of

11      people, but at least the committee -- I

12      want the opportunity to make sure that

13      they got all the wording correctly.

14      We're not, by doing this, inviting

15      fifty-five or seven people to a drafting

16      session tonight.  We've had a number of

17      those because our intention is to simply

18      conform the order to the agreements

19      placed on this record; not to redraft or

20      renegotiate it.  And, Your Honor, our

21      request would be that to the extent

22      there was any disagreement about that,

23      by any party, we would come back for

24      purposes of settling the order, not in

25      terms of revisiting the substance of the

76

1              DELPHI CORPORATION

2        approval of the transaction, if we get

3        there.

4              THE COURT:  Uh-huh.  Okay.

5              MR. BUTLER:  Mr. Rosenberg.

6              THE COURT:  Before he -- or

7        maybe he'll raise this, but -- am I

8        right then that the resolution on the

9        borrowing base point which was just

10       limited to recruiting, does that mean

11       that other material modifications of the

12       debt do come back for Court approval?

13       That was an issue I think the committee

14       raised and I understood the bank's point

15       about the borrowing base, but if you're

16       going to change anything else

17       materially, you come back here?

18             MR. BUTLER:  Your Honor, if we

19       were making any material change in the

20       negative covenants, the financial

21       covenants, or those issues that we

22       didn't have the consent of the

23       committee, I think we would come back

24       here.  If there's an agreement between

25       the two parties, you know, unless we

77

```
 1              DELPHI CORPORATION
 2      thought -- you've asked us in the
 3      beginning of this case to use our
 4      judgment of what we think you'd want to
 5      hear about.  And, if either of us
 6      thought that was the case, we, of course
 7      would bring it back to a monthly omnibus
 8      hearing.
 9              THE COURT:  And I understand
10      there's the point about successful
11      syndication, or maybe things were
12      changed there in connection with the
13      syndication, but --
14              MR. BUTLER:  But that's part of
15      the approved flex arrangement, Your
16      Honor, in any event.
17              THE COURT:  Right.
18              MR. BUTLER:  And, we would not
19      come back to Court for that.
20              THE COURT:  Right.
21              MR. BUTLER:  Your Honor, one
22      clarification.  One of the agreements I
23      mentioned the word negative covenants, I
24      should strike that, that was not the
25      arrangement with the DIP lenders and the
```

78

1           DELPHI CORPORATION

2      committee agrees with that, it was the

3      financial covenants that were implicated

4      there, I just want to make sure the

5      record's clear.

6           THE COURT:  All right.  That's

7      fine.  I think you may need to do

8      something on page 3, roman numeral II

9      just to -- I'm sorry, page 13 not pages

10     3.  Page 13 roman numeral II dealing

11     with that issues.  I think it's

12     beginning to look, now, a little

13     different than what's been stated on the

14     record.

15          MR. BUTLER:  Your Honor, I

16     should also point out that the agree --

17     we'll make that change.  I really want

18     to point out on the record is -- Your

19     Honor, is that in consideration for this

20     package the committee has agreed that

21     the priority for intercompany claims and

22     liens that are set forth in the cash

23     management order that was submitted and

24     in the DIP proposed financing order are

25     no longer objectionable to the

79

1          DELPHI CORPORATION

2    committee.

3          THE COURT:  So what I'm hearing

4    is, it's fine for both orders, then.

5          MR. BUTLER:  Correct.  The

6    language was negotiated with the Pension

7    Benefit Guaranty Corporation is now

8    acceptable to the committee.

9          THE COURT:  Okay.

10          MR. BUTLER:  Your Honor, I

11    believe that --

12          THE COURT:  Just a second.

13    This statement confirmed, and it was

14    confirmed on the record that despite the

15    recital about being a web secured, these

16    payments themselves that were made are

17    subject to recharacterization to the

18    extent that 506(b) would require the new

19    DIP expose of the interest.

20          MR. BUTLER:  That is correct.

21          THE COURT:  Okay.  I think

22    that's particularly valuable on page 15,

23    which is the mechanism you worked out

24    for pleading down of the principal on

25    the pre-petition debt.  You have asset

80

1            DELPHI CORPORATION

2       sales.  I think at the end of that first

3       full paragraph that's claiming company

4       shifting, you should have a proviso that

5       provided further that such prepayments

6       should have been laid over to the extent

7       that such loans are not secured claims

8       on under Section 506(b) of the

9       Bankruptcy Code.

10           MR. ZIMEN:  Your Honor, can I

11      be heard on the point?

12           THE COURT:  Sure.

13           MR.  ZIMEN:  Ken Zimen, Simpson

14      Thacher and Bartlett on behalf of JP

15      Morgan Chase Bank as pre-petition agent.

16      The language Your Honor focused on is

17      actually a prepayment of the DIP --

18           THE COURT:  Oh, that's the DIP?

19           MR. ZIMEN:  The resolution of

20      this issue that was an issue that was

21      raised with the debtors to provide

22      greater protection for the holders of

23      pre-petition secured claims was to

24      either require one of two things.  After

25      125 million dollar basket, the debtors

81

1                    DELPHI CORPORATION

2          can use massive sale proceeds to take

3          two thirds of the excess and to apply

4          that either to reduce the DIP

5          permanently, thereby reducing the

6          priming, or to hold as cash collateral

7          for the benefit not only the DIP

8          lenders, but the pre-petition lenders

9          and also the setoff claimants.

10              THE COURT:  All right.  So what

11         -- that's fine.

12              MR. ZIMEN:  And I'll also point

13         out for Your Honor on page 31 of the

14         version you're looking at in the last

15         sentence of C, before the insert Mr.

16         Butler read, there's language there

17         preserving the rights of parties in

18         interest providing the characterization

19         point -- for the recharacterization

20         point.

21              THE COURT:  Right, Okay.  All

22         right.  The last part on, I think, this

23         basket of issues, is again on the

24         debtors' reservation of Roy Iksind,

25         paragraph 16.  If I read the pleading's

82

1        DELPHI CORPORATION

2        writing, if I heard the version right

3        today, the debtors are reserving, on the

4        interest that we talked about.  You need

5        to object different if it's claimed

6        outside of the lenders' scenario.

7        (indiscerible) have a right to object to

8        these and expenses asserted by someone

9        other than the agent.

10               MR. ZIMEN:  Yes, Your Honor.

11               THE COURT:  And I think it's

12       only at this -- this discovered

13       interest.

14               MR. ZIMEN:  I thought Ray Uppet

15       dealt with what allowed this.

16       Certainly, Your Honor, that is correct.

17               THE COURT:  You should take a

18       look at that because I think, both on

19       page 38 and 39, at least, it seems to

20       just cover the interest rate.

21               MR. ZIMEN:  We'll revise that,

22       your Honor.

23               THE COURT:  Okay.

24               MR. BUTLER:  Your Honor, then

25       with those statements, I'd like Mr.

83

```
 1              DELPHI CORPORATION
 2        Rosenberg to confirm that we have
 3        satisfied the requirements of the
 4        creditors' committee with respect to
 5        this motion.
 6              MR. ROSENBERG:  Your Honor, I'm
 7        pleased to report that we have.  Our own
 8        objections have been satisfied with a
 9        reasonable compromise here.  And, given
10        where we came out including such issues,
11        in particular, as the preservation of
12        the right to seek recharacterization
13        which had not been in the earlier
14        documents, the agreement with the pre-
15        petition lenders, Mr. Brilliant's
16        clients, makes a lot of sense.  So, we
17        are generally happy and pleased with the
18        outcome this afternoon.
19              THE COURT:  Okay.
20              MR. ZIMEN:  Your Honor, Ken
21        Zimen, again, for the record.  The
22        agent, too, is supportive of the
23        resolution as described by Mr. Butler
24        with just one clarification, that the
25        time period for the committee to review
```

84

1          DELPHI CORPORATION

2     the values without prejudice to the

3     agents' rights or the rights to lenders

4     to make a 506(a) motion, if and when

5     they determine that to be appropriate.

6              THE COURT:  Right.

7              MR. ZIMEN:  And the super duper

8     claim that was described regarding

9     reimbursing essentially the estate for

10    the costs of obtaining avoidance

11    proceeds before they would be available

12    to satisfy indimination in value claim,

13    that's to the extent not already paid,

14    since it's our property that's going to

15    pay a lot of the expenses to the estate

16    already.  It's not a double dip, it's

17    the same concept.

18              THE COURT:  Okay.  Very well.

19    I agree that it's a reasonable

20    compromise and resolution on this basket

21    of issues and so I would approve it

22    subject to the whole order, of course.

23              MR. BUTLER:  Your Honor, moving

24    along, I think the next person who wants

25    to be heard is Mr. Bienenstock about

85

1        DELPHI CORPORATION

2     General Motors.

3          THE COURT:  I'm sorry, there

4     was one small thing.  'Cause I looked at

5     this a little differently, in one

6     respect, and Mr. Zimen's comment about

7     double dipping made me remember.  Right

8     now, on page 41, a committee is limited

9     to $250,000 to perform the

10    investigations commenced by its charge

11    to look at the banks' liens and claims.

12    And that seemed reasonable to me for

13    avoidance actions and other causes of

14    action, but more and more investment

15    bankers charge.  I would assume that the

16    work of the committee's financial

17    advisor and attorney left a value of

18    what the debtor is and hence what the

19    collateral is.  Probably wouldn't be

20    covered in that $250,000, would it,

21    anyway?  Investment bankers eat that up

22    in about a month a half.

23          MR. ZIMEN:  Acknowledging that

24    we all may be in the wrong line of work,

25    Your Honor, I guess we should delete

86

1              DELPHI CORPORATION

2       that.  I don't think we ever found it,

3       we going to commence litigation, clearly

4       they need to be able to respond.  And to

5       do financial investigation, I think this

6       is -- I'm sorry --

7              THE COURT:  Okay.

8              MR. ZIMEN:  You know, from our

9       perspective, I think the debtors have a

10      vested interest in this as well because

11      this is a case where their real hope is

12      substantial unencumbered value.

13             THE COURT:  This is covering

14      all academic --

15             MR. ZIMEN:  Put out.

16             THE COURT:  Just looking ahead

17      to hope's possibility.

18             MR. ZIMEN:  Hope so, Judge.

19      So, I think I agree with Your Honor that

20      to the extent that the committee is put

21      to the test a bit, either determine

22      value for their own benefit to be able

23      to waive on this or being put to the

24      test because we filed 506(a) motion.  I

25      don't believe the 250 has part in that.

87

1          DELPHI CORPORATION

2               THE COURT:  Okay.  Sorry to

3          interrupt you, Mr. Butler.

4               MR. BUTLER:  Your Honor, I

5          believe the next person who wants to

6          talk.-- I believe Mr. Bienenstock was

7          rising to indicate that his objection

8          was also resolved in General Motors

9          Corporation.

10              MR. BIENENSTOCK:  Good

11         afternoon, Martin Bienenstock, with

12         Weil, Gotshal & Manges for General

13         Motors Corporation.  Your Honor, coming

14         into this hearing, General Motors

15         Corporation had agreed on a proposed

16         order with the debtor in its capacity as

17         customer, and we were hoping that that

18         would be proved as it is.  Of course,

19         there were subsequent arrangements that

20         Mr. Butler has described to the Court

21         which are going to require some

22         additional language.  There's one

23         particular comment about conforming

24         language on adequately protected

25         interest and collateral which we felt,

88

1          DELPHI CORPORATION

2          if made, might, in certain sections of

3          the order and not in others, might have

4          a negative implication.  So, after

5          discussing it with the debtor, we

6          determined the best thing is simply to

7          clarify this on the record.  It arises

8          under Paragraph 18 of the proposed

9          order, which is applicable to all

10         customers.  In general, Your Honor, what

11         paragraph 18 does, is it provides

12         customers first a replacement lien for

13         their allowable setoffs on their first

14         petition payables, because they'll be

15         paying their pre-petition payable into

16         the estate.  But the post-petition lien

17         may or may not have any value because

18         it's second next to the DIP lenders'

19         first lien.  So, if it is insufficient

20         to fully protect the customer's

21         allowable setoff claims, Paragraph 18

22         provides for the customers to have other

23         liens, some are third liens, on property

24         of the estate behind the pre-petition

25         lenders.  Some are second equal liens

89

1          DELPHI CORPORATION

2          with the pre-petition lenders on

3          property that had not previously been

4          part of a collateral package.  There's a

5          provision in paragraph 18 that provides

6          for what I just described and 507(b)

7          claims in a certain priority to back up

8          the liens.  The clarification I wanted

9          to make and, I think, General Motors

10         would want and I suspect all of the

11         customers would want the debtors or any

12         party of interest to speak up if they

13         don't think the meaning of the order is

14         this.  If, hypothetically, a customer

15         has an allowable setoff claim above a

16         million dollars as of the petition date

17         and it turns out that the replacement

18         liens are worth $800,000.  The other

19         liens, the second and third liens and

20         the 507(b) are supposed to protect the

21         $200,000 diminution.  That's the

22         diminution of the allowable setoff claim

23         as per the beginning.  We think it's

24         plain, that's what we intended.  We

25         think that's what the debtor intended

90

1          DELPHI CORPORATION

2     and the pre-petition banks understood

3     and the committee understood.  But, lest

4     there be any confusion on that, we

5     thought it's important to put it on the

6     record.

7          THE COURT:  Okay.  Well, I

8     certainly would.  All of the grants a

9     letter of protection here, not just for

10    setoff claims but for the other secured

11    creditors to cover diminution only.

12         MR. BIENENSTOCK:  Our point is

13    it's diminution from the value of our

14    allowable setoff claim.

15         THE COURT:  The original setoff

16    claim?

17         MR. BIENENSTOCK:  That's right,

18    yes.

19         THE COURT:  Okay.

20         MR. BIENENSTOCK:  Thank you.

21         THE COURT:  In any event, just

22    -- I'd make sure I understand this as a

23    play, this sort of DIP provides the

24    mechanism for -- I got to turn ordinary

25    core of setoffs and without lifting the

91

1          DELPHI CORPORATION

2     very next day to let that happen, right?

3          MR. BIENENSTOCK:  Yes.  So that

4     will, in effect, reduce at least some

5     customers' allowable setoff claims that

6     would need protection.

7          THE COURT:  So, it's important,

8     obviously, to keep a record of what

9     their claims were at each point so this

10    can be tracked.

11         MR. BIENENSTOCK:  Well, at

12    least for General Motors, we will do it

13    and I'm quite sure Delphi will have a

14    counter record.

15         THE COURT:  Okay.

16         MR. BIENENSTOCK:  Which

17    hopefully will match up.

18         THE COURT:  Okay.

19         MR. BIENENSTOCK:  Thank you,

20    Your Honor.

21         MR. BUTLER:  I'm not sure I

22    follow exactly how Mr. Bienenstock got

23    to the conclusion, I will confirm to the

24    Court on the record that the conclusion

25    he reached is one that the debtors

92

1           DELPHI CORPORATION

2       concur with.

3             THE COURT:  Okay.

4             MR. BUTLER:  And, as the Court

5       also stated, Your Honor, moving now to

6       some other issues, if we may.  I think

7       we have resolved, I don't know.  Is Mr.

8       Somerstein still in the courtroom?  I

9       believe he now resolved any issues that

10      the DIP lenders have, the pre-petition

11      agent has, the Goodwin Proctor Group has

12      as part of the pre-petition bank group

13      has, the creditors' committee has and

14      General Motors has, as to the order that

15      was filed as the Debtors' 4, with the

16      changes that we have thus far placed on

17      the record.  That leaves us with a --

18      turn to Debtors' 28 and 29 in terms of

19      the objections that are locked.  That

20      leaves us with objections from debtors'

21      setoff and lien claimants, the vast

22      majority of which had been resolved,

23      based on the treatment that we proposed

24      here, and others who still want to

25      address the Court.  I'm going to ask us

93

1          DELPHI CORPORATION

2          to get to those in a few moments, but I

3          want to address any other objections

4          first.  And I think the only other

5          objection that has not been fully

6          resolved, other than to be getting off

7          into the setoff bucket, if you will, or

8          basket, is that of Bank of America as it

9          relates to their interest as an aircraft

10         lessor.  And in that respect, they had

11         filed an objection that wanted to make

12         it clear that the interest that were

13         being given here today did not

14         negatively implicate the aircraft leases

15         and certain permissity and other matters

16         relating that.  And, in fact, there is

17         language in paragraph 25 of the order,

18         page 54 of Debtors' 4 that is quite

19         explicit in that regard, and I think,

20         frankly, stated with what Your Honor

21         stated at the first day hearing in terms

22         of Your Honor's expectation with

23         aircraft leases and property that wasn't

24         necessarily property of the estate, but

25         even beyond that, is now explicit as to

94

1              DELPHI CORPORATION

2        personal property that some of the

3        aircraft leases and so forth.  I believe

4        that that language as it stands is

5        acceptable to Bank of America but I

6        believe Mr. Mares is on the phone and

7        there are other things that they wanted

8        the debtors to do beyond this language

9        that I believe Mr. Mares still wanted to

10       address the Court; we simply couldn't

11       accommodate the needs.

12              THE COURT:  Okay.

13              MR. MARES:  Your Honor, thank

14       you very much, Ted Mares.  We had had

15       long conversations with debtors' counsel

16       and we've nearly narrowed down the

17       issues to three.  Number 1, there is

18       some ancillary property that includes

19       cash collateral generated by the

20       aircraft that we are asking that it not

21       be subject to a lien and I think that's

22       the understanding, we had asked --

23              THE COURT:  How does the

24       aircraft generate cash collaterals it

25       moves down?

95

1        DELPHI CORPORATION

2             MR. MARES:  There are charter

3        agreements.

4             THE COURT:  Okay.

5             MR. MARES:  And there are

6        revenues payable under the charter

7        agreements.  They're potentially our sub

8        leases, although I'm not sure that there

9        are any in businesses right now, but the

10       charter agreement does let show the

11       revenues that are involved.

12            THE COURT:  Okay.

13            MR. MARES:  So, what we've

14       asked, and we understand that the

15       debtors are using whatever cash

16       collateral that generated by the charter

17       agreement, we just want to make clear

18       that in that with the insertion of a

19       phrase in paragraph 25, just to make

20       sure that the liens do not cover

21       property that is subject to the lease

22       agreements or at the security for.  I

23       haven't heard that from them on that,

24       but I think what Mr. Butler said I

25       contest that he wanted to do that.  The

96

1          DELPHI CORPORATION

2     second item is, we are objecting to the

3     subordination of our 365(d) 1020.

4          THE COURT:  Let's take them one

5     at a time, Mr. Mares.

6          MR. BUTLER:  I think the issue,

7     and counsel for the DIP lenders has

8     reasoned as well, the issue the debtors

9     have, is, we believe it's always cut off

10    by the order is that as it relates to

11    this particular issue, and I think I

12    have it right, that if in fact there's a

13    valid lien in that particular property

14    then it is not negatively impacted by

15    this order.

16          THE COURT:  No.  That's covered

17    by the general language granting the DIP

18    lender a lien.

19          MR. BUTLER:  And therefore, we

20    thought nothing else was needed --

21          THE COURT:  The preexisting

22    liens are not prominent as laid out in

23    McGraff; I forget what it is.

24          MR. BUTLER:  There about 17 I

25    believe, Your Honor.  7(c), like 7

97

1            DELPHI CORPORATION

2       Charley.

3            MR. MARES:  Your Honor, if it's

4       necessary to file a motion for adequate

5       protection we will, but we will just ask

6       the continuing liens be granted and put

7       out the ancillary --

8            THE COURT:  No.  The debtors

9       can't use cash collateral without your

10      consent, or I'm showing adequate

11      protections so you're stating to them

12      now you don't consent.

13           MR. MARES:  I'm sorry.

14           THE COURT:  So the balls are in

15      their court at this point.

16           MR. MARES:  Okay.  Your Honor,

17      thank you.

18           THE COURT:  Okay.

19           MR. MARES:  And the only other

20      point is that we are objecting to the

21      subordination of our 365(d)(10) claims

22      and any other claims that are granted

23      pursuant to this order.  The debtor is

24      getting use of the claim during the

25      Chapter 11 case; there is an LB status,

98

1              DELPHI CORPORATION

2       you know 365(d), and claims and we

3       should just add that --

4              THE COURT:  As these were

5       secured or misreleases.

6              MR. MARES:  These are two

7       leases but that security for the lease

8       application there's a small part in what

9       I call collateral charter agreement,

10      managing agreement sub leases that are

11      separately pledged here to be leased a

12      two lease obligation.

13             MR. BUTLER:  Your Honor, the

14      debtors' problem with the language Mr.

15      Mares's clients wanted him to pursue

16      here is that it really attempted to have

17      the debtors agree with lots of things.

18      That these were two leases this part

19      secured, and the relationships between

20      them.  And we are prepared simply to do

21      that.  We understand Your Honor's

22      admission about cash collateral, but I

23      don't believe that this order is drafted

24      if Mr. Mares's client has that which he

25      claims that they have, that they are

99

```
 1            DELPHI CORPORATION
 2     negatively impacted.
 3            MR. MARES:  Just to respond
 4     Your Honor, I'm not asking for -- I
 5     understand Mr. Butler's point.  I guess
 6     all I'm asking is to the extent that we
 7     do have two 365(d) cash claims, then
 8     those not be subordinated with other
 9     claims that would arise from this order.
10            MR. BUTLER:  Mr. Mares, was
11     that a part of your objection?
12            THE COURT:  I have to confess,
13     I have to give orders 'cause I didn't
14     look at this issue until about 10
15     seconds ago.
16            MR. BUTLER:  I never heard that
17     raised by Mr. Mares in your objection,
18     was it raised?
19            MR. MARES:  I think it was
20     raised in discussion, it's not on the
21     objection certainly as discussions with
22     Mr. Cantor and others.
23            MR. BUTLER:  Well, I think what
24     you're asking for is not acceptable
25     probably to anybody in the courtroom in
```

100

1        DELPHI CORPORATION

2        terms of the lenders or anybody else.

3        And, Your Honor, he didn't raise it in

4        any objection I heard.

5             THE COURT:  I certainly want to

6        understand the objection, this isn't as

7        to the specific assignment that you've

8        been given of a lease because that would

9        be the debtors -- that wouldn't be

10       covered by 365 -- we're talking about

11       either that the leases are --

12            MR. MARES:  Your Honor, we

13       believe these are true leases.  And the

14       lease obligations are monthly lease

15       statements that are due Bank of America

16       by the debtor.  And under 365(d)(10) the

17       performance of these obligations, for at

18       least after the 60-day grace period,

19       arguments such as priority.  The DIP

20       order does provide for subordination of

21       administrative receptance.  We are

22       asking that our 36 id 10 and to be

23       (indiscernible) those names doesn't

24       become true lease, that would be

25       subordinate.

101

1      DELPHI CORPORATION

2              MR. BUTLER:  Your Honor, this

3      is subordination -- Mr. Mares is saying

4      is that we're giving a super-party claim

5      of the DIP line, there the answer is,

6      you bet.  And it is a super-priority's

7      intended to be.  They're not going to

8      give it up for this or any kind of

9      administrative claim outside of what's

10     said in the order.  This, you know,

11     objection is untimely, among other

12     things, Your Honor.

13              THE COURT:  I'm going to deny

14     this objection for that reason.  Unless

15     you're prepared to have our own trial

16     today on 364(c) which I think highlights

17     the untimeliness of the objection, it's

18     just not an issue of adequate

19     protection; this is just whether the

20     debtors could get financing on a simple

21     non-priming, non super-priority basis.

22              MR. MARES:  Other than that,

23     all of our other objections are gone.

24              THE COURT:  Okay.  All right.

25              MR. BUTLER:  Your Honor, I

102

1        DELPHI CORPORATION

2        think, and this is so I ask him to quote

3        him on the phone to see if I had missed

4        anyone.  Other than setoff claimants, is

5        there any other party who has an

6        objection to this matter?

7             THE COURT:  I'm going to say

8        this once more, please turn off your

9        Blackberries it affects the transcript.

10       This is on a digital recording system,

11       everything else about this system is

12       superior to the prior system, so -- but,

13       if you have your Blackberry on and get

14       an e-mail, there's static on the CD and

15       therefore the people who transcribe it

16       won't be able to hear it.  So please

17       turn off your Blackberries.

18            MR. ROSENBERG:  Your Honor, I

19       wonder if it's somebody on the

20       telephone, because it also affects it on

21       that end, you might --

22            THE COURT:  I guess it does,

23       and maybe that is the case.  If you're

24       on the telephone you must turn it off

25       too.

103

1        DELPHI CORPORATION

2              MR. BUTLER:  One other party

3        wants to be heard before we get to

4        setoff.

5              MR. NEWMAN:  Your Honor, very,

6        very briefly, Max Newman of Schaffer and

7        Weiner on behalf of nine parties.  We

8        filed a joint objection relating, in

9        part, to tooling liens and we had a

10       discussion during the break with respect

11       to resolving that with some additional

12       language in paragraph 6 of the financing

13       order relating to the administrative

14       expense claim of the DIP lenders.  They

15       had put a carve-out in section 7(d) of

16       the order, with respect to liens of the

17       type that's on the top of page 22 of the

18       red-line.

19             THE COURT:  All right.

20             MR. NEWMAN:  And that carve-out

21       was not in place also with respect to

22       the super-priority administrative claim.

23       And it was my understanding that there

24       was an agreement to import that same

25       carve-out, that same exception into the

104

1               DELPHI CORPORATION

2        super-priority lien status.

3               THE COURT:  What, I'm sorry.

4        Super-priority lien or super-priority

5        claim?

6               MR. NEWMAN:  Super-priority

7        claim.  I'm sorry, Your Honor.

8               THE COURT:  All right.  Is

9        there such an agreement?

10              MR. NEWMAN:  Your Honor, there

11       is.

12              THE COURT:  Okay.

13              MR. NEWMAN:  In that there's

14       language that's going to go into 6(a),

15       paragraph 6(a) that is going to make

16       sure it excludes the issue that is

17       raised here.  The language and the DIP

18       lenders agreed to this, I'm told.  The

19       language that appears on page 22, at the

20       top of page 22 in Roman IV, involving

21       statuary liens or securities just

22       arising after the petition date and

23       permitted under the DIP credit agreement

24       that by operation of law would have

25       priority over pre (indiscernible)

105

| | |
|---|---|
| 1 | DELPHI CORPORATION |
| 2 | security interest.  That language is |
| 3 | going to also appear in paragraph 6(a) |
| 4 | in the fifth line. |
| 5 | THE COURT:  Okay. |
| 6 | MR. NEWMAN:  Thank you, Your |
| 7 | Honor, and I wish to have my clients so |
| 8 | support the entry of the order as |
| 9 | drafted. |
| 10 | THE COURT:  Okay. |
| 11 | MR. BUTLER:  Now I'm asking |
| 12 | anyone other than setoff claimants, is |
| 13 | there any other objector on the phone or |
| 14 | in the courtroom who has an issue with |
| 15 | the order?  Your Honor, I think with the |
| 16 | Court's permission, that item in turn |
| 17 | setoff, the last remaining bucket which |
| 18 | is the setoff claimants.  Your Honor, |
| 19 | there are a series of matters I want to |
| 20 | read into the record much like Mr. |
| 21 | Bienenstock's clarification.  I would |
| 22 | point out, Your Honor, that we're now |
| 23 | focused primarily on paragraph 18 of the |
| 24 | order, which I concede, Your Honor, is |
| 25 | the longest paragraph I have ever seen |

106

1    DELPHI CORPORATION

2    in a financing order.  But it is the

3    product of extraordinary lengthy

4    negotiations between all the major stake

5    holders in this case, I think, that had

6    a direct interest in this.  Other than

7    -- I should be candid about this, other

8    than the creditors' committee which did

9    not participate directly in the

10   immediate negotiations relating to this,

11   but now support entry of the order.

12   And, with respect to that language and I

13   don't think we proposed to make any

14   changes to that language because it is

15   so delicately negotiated.  But if you

16   want to read some clarifications which I

17   understand is all the objections of

18   maybe 20 or 25 of the parties on board,

19   the first, Your Honor, is just a

20   statement that, notwithstanding the fact

21   that there is a series of alternative

22   dispute approaches in this order, this

23   is a first.  Go work out your setoffs

24   with the company and the committee.

25   Second, go to mediation.  Third, go to

107

1          DELPHI CORPORATION

2      arbitration or you can also come to

3      court.  It's not intended, and we'll

4      certainly clarify if there is any

5      language clarification we need to, but

6      I'll say on this record, it's not

7      intended to prevent anyone from coming

8      to court at any time.  Now, it also

9      means that there may be, some of us will

10     come before Your Honor and say, Your

11     Honor ought not grant the relief they're

12     seeking without having gone through all

13     that.  So, we reserve all of our

14     rights; the committee uses its rights,

15     and other parties do.  But the fact is,

16     if an individual -- you know, setoff

17     claimant, wants to come to court, then

18     they could come to court.

19          THE COURT:  Subject to the

20     other parties want to argue that they

21     should go through these other alternate

22     dispute.

23          MR. BUTLER:  But the order

24     doesn't require them to do it, Your

25     Honor.

108

1          DELPHI CORPORATION

2              THE COURT:  Okay.

3              Mr. BUTLER:  And, I want to

4      make that clear.

5              THE COURT:  I'd like the

6      parties to (indiscernible due to static

7      on digital recording), because I've got

8      (indiscernible due to static on digital

9      recording)  If that's the deal I think

10     it'll give you the fact that could none

11     of the setoff claimants are here, just

12     the objectants are here; you're not

13     making clear to them they have a right

14     to come to court.  Now, pertaining to

15     the other procedures that are being able

16     to request that ultimately the dispute

17     was an issue in procedures be followed

18     first.

19             MR. APPLEBAUM: (indiscernible

20     due to static on digital recording)

21             THE COURT:  What I'm saying,

22     and I'm not sure I understand you, what

23     I'm saying is just repeating what Mr.

24     Butler is saying, which is that by way

25     of these punitive dispute resolution

109

1          DELPHI CORPORATION

2     mechanisms in the agreement --

3     (indiscernible due to static on digital

4     recording)

5          MR. BUTLER:  And, Your Honor, I

6     should point out that paragraph 18(a) on

7     page 40 of Debtor's 4, does have

8     language in it to that effect.

9          THE COURT:  That's fine.

10          MR. BUTLER:  And, we put it in,

11     but we'll make sure it's very clear, but

12     I want it stated on the record.

13          THE COURT:  It is clear.

14          MR. BUTLER:  Your Honor, the

15     next item, and this again we're in

16     paragraph 18 in all of these.  With

17     respect to paragraph 18(a)(4), we want

18     to clarify that nothing in the order

19     affects the right of any party to

20     exercise post-petition setoffs or

21     recoupment rights out of respect to

22     these post-petition matters.  Second,

23     respect to Section 8, paragraph

24     18(a)(1), to the extent that any party

25     has a valid pre-petition setoff right,

110

1          DELPHI CORPORATION

2      nothing in the order affects such

3      party's rights.  However, with respect

4      to valid pre-petition recoupment,

5      nothing in the order diminishes such

6      recoupment right, but channel such

7      rights into the program to find in

8      paragraph 18.  Third, this is in respect

9      to paragraph 18(a)(3), there is no cap

10     in the ordinary course setoff or

11     recoupment rights of any party other

12     than General Motors Corporation, which

13     is as defined in the order.  Fourth,

14     with respect to paragraph 18(a)(1),

15     similar to the point when the order

16     printing is made, the pre-petition

17     setoff or recoupment rights of any

18     party, which is a valid setoff or

19     recoupment right, will be permitted

20     under paragraph 18, irrespective of the

21     financial condition of the debtors.  And

22     finally, with respect to paragraph 7(c),

23     the pre-petition and post-petition

24     setoff and recoupment rights of any

25     party are senior to the rights of the

111

```
 1            DELPHI CORPORATION
 2        DIP lenders.
 3            THE COURT:  Oh, okay.  And a
 4        DIP lender isn't a regular debt, no
 5        standard?
 6            MR. BUTLER:  Can I have a
 7        moment, Your Honor, please?
 8            THE COURT:  Yes.
 9            MR. BUTLER:  Your Honor, I used
10        the word negative earlier when I
11        shouldn't have.  I used a couple extra
12        words I shouldn't have, I'm told.  And
13        the Paragraph 7(c), and I'll read it
14        again, the words again, the pre-petition
15        setoff and recoupment rights of any
16        party are senior to the rights of the
17        DIP lenders.  Let's see what paragraph
18        7(c) says, and a DIP agent agrees with
19        that statement.
20            MS. O'DELL:  I'm sorry, Your
21        Honor, Maureen O'Dell again.  We talked
22        with this agent.  We'd like to consult
23        with this, we're just not sure we really
24        understand it.
25            THE COURT:  You're talking
```

112

1          DELPHI CORPORATION

2      about pre-petition loans, right?

3              MR. BUTLER:  Yes, Your Honor.

4              THE COURT:  Okay.

5      (indiscernible due to static on digital

6      recording).  Let's just say it's that

7      there not getting primed about the

8      dipping.

9              MR. BUTLER:  Correct.

10             THE COURT:  All right.  I think

11     all of those statements it includes it

12     in the order here in what I read.  So,

13     to the extent that they help clarify the

14     order, hearing that kind, we'll talk

15     then.

16             MR. BUTLER:  Your Honor, I

17     believe there are some parties, some

18     setoff claimants or alleged claimants

19     that still want to address the Court.

20             THE COURT:  Okay.

21             MR. BUTLER:  Your Honor, it

22     would be helpful if they do so, if

23     people would identify what their

24     objection is so we can track to it.

25             MR. MCDOWAL:  (indiscernible

113

1        DELPHI CORPORATION

2        due to static on digital recording)

3            THE COURT:  You'll have to

4        speak up a little louder, sir.

5            MR. MCDOWAL:  That's okay.  The

6        lenders for the first (indiscernible due

7        to static on digital recording)

8            THE COURT:  To the extent that

9        ultimately you still have to prove your

10        claim under the Bankruptcy Code and

11        you'll to set up on under the Bankruptcy

12        Code.

13            MR. MCDOWAL:  Understood

14        (indiscernible due to static on digital

15        recording)

16            MR. PLANTES:  Your Honor, Neil

17        Plantes.  I mean, paragraph 18 which has

18        been so carefully negotiated says what

19        it says and I don't want to sort of have

20        these blatant -- I understand what the

21        Court said and I understand what those -

22        - I believe that to be the case that

23        they have to prove up their matters, and

24        there's a process here on how they can

25        deal with these matters under the DIP

114

```
1           DELPHI CORPORATION
2    financing order.
3           MR. MCDOWELL:  Well Your Honor,
4    paragraph 18 says what it says and the
5    language that third provision on this
6    could be argued that you altered it
7    (indiscernible due to static on digital
8    recording)
9           THE COURT:  Well the reason I
10   think people are having problems with
11   your statement is that, for example,
12   page 62, offers, you know, subsequent
13   procontractual rights.  So if you're
14   accepting the existence of a Bankruptcy
15   Code, then I agree with you.
16          MR. MCDOWEL:  So the exception
17   of 362(a) --
18          THE COURT:  The Bankruptcy Code
19   generally, I mean, because of 62 -- 362.
20   Okay.  All right.
21          MR. MCDOWAL:  Thank you.
22          THE COURT:  Sure.
23          MR. PASCOE:  Your Honor, this
24   is Timothy Pascoe, on behalf of Ford
25   Motor Company.
```

115

1          DELPHI CORPORATION

2              THE COURT:  Yes.

3              MR. PASCOE:  Your Honor, our

4      issue is with the inclusion of

5      recoupment and the definition of a

6      setoff.  We have no problem with recoup

7      setoffs, obviously the exercise of

8      setoffs are March 8.  The 362,

9      recoupment right, they're not,

10     especially ordinary corp recoupment,

11     because there's nothing but a true up

12     between the customer and the supplier,

13     are not affected by the automatic stay

14     and it is proper in an order like this

15     to restrict our recoupment right even in

16     the context of the DIP financing.  We

17     object to going through all of the

18     procedures that are set forth in here to

19     exercise this right.  It is simply not

20     affected by the automatic stay and is

21     against all ordinary business practice.

22     We're talking about the way we do

23     business and we make it absolutely

24     imperative that we at least be allowed

25     to continue our recoupment as opposed to

116

1        DELPHI CORPORATION

2        our setoff right.

3              THE COURT:  Well, I guess I

4        have two things to say in respect of

5        that.  First, as I read this, and as

6        clarified further by Mr. Butler, all

7        that means is that paragraph 18 is

8        intended to change the substantive

9        rights that is doing business as Delphi

10       have in respect of true recoupment

11       claims, recoupment rights.  That being

12       said, there also -- or recognition or

13       recoupment rights, but also it's the

14       setoff rights that ordinary course, by

15       nature, will not be because of the

16       automatic stay.  But, they are subject

17       to the procedure which seems reasonable

18       to me.  Particularly, the rideout of any

19       such party to try to expedite that

20       procedure by coming back to court, to

21       determine a regular refrain act.  But

22       some of the claims is a recoupment claim

23       or a setoff claim, is in fact a

24       recoupment lawyers that set out claim

25       and the cases are unfortunately pretty

117

1          DELPHI CORPORATION

2          ninny and they don't (indiscernible) as

3          to what a recoupment claim is, what a

4          recoupment right is, and frequently what

5          part of recoupment right a court finds

6          is not.  And, of course, any bankruptcy

7          lawyer, working for herself will tell

8          the client if there's any doubt what's

9          not exercised sub (indiscernible due to

10         static on digital recording).  So I view

11         this procedure as one that is beneficial

12         to both sides in this transaction in

13         that inlay is out of an action for the

14         debtors with input from the creditors'

15         committee to make those decision in the

16         first instance and it's really clear

17         very quickly and something that's not

18         very clear (indiscernible due to static

19         on digital recording) to do it in an

20         organized way.  It tends to happen that

21         the objection could go around and

22         debtors could have a chance to come to

23         me and that would stop.  But I believe

24         that sooner is somehow taking away

25         peoples rights to become what, of

118

1                  DELPHI CORPORATION

2        course, there's to recoup makes the

3        question some of them do have the right.

4                  MR. PASCOE:  All right.  Thank

5        you.

6                  THE COURT:  Okay.

7                  MR. REISMAN:  Your Honor Steven

8        Reisman with the firm of Curtis Mallet-

9        Prevost on behalf of Flextronics which

10       is the largest trade creditor in this

11       case.  I really have three points to

12       make, really four points to make.  One,

13       I compliment that debtor on their

14       efforts with respect to the setoff

15       provisions and the mediation arbitration

16       protocol that they're trying to put in

17       place.  The first point I'd like to

18       make, Your Honor, is with respect -- it

19       is a substantive point with respect to

20       18(a)(2), the last sentence.  It's a

21       little unclear to me and I'm looking

22       from a black-line, Your Honor, so I

23       apologize.  But 18(a)(2) sentence, page

24       45 of the black-line.  It says,

25       notwithstanding any award in any such

119

1          DELPHI CORPORATION

2     arbitration in no event shall the setoff

3     claimant be permitted to exercise its

4     setoff right against any payables other

5     than pre-petition payable except as

6     hereinafter set forth.  I just asked for

7     a modification of that to say except

8     there set forth in this paragraph 18

9     because it talks about the full event

10    and after that sentence about the

11    ability to set off against post-petition

12    payables as well.

13              THE COURT:  Okay.  This sounds

14    -- if it makes sense to me.

15              MR. REISMAN:  What we're trying

16    to avoid with all these parties is --

17    there are literally 50 people who want

18    to wordsmith that site.  It is --

19    paragraph 18 deals with setoff --

20              THE COURT:  If there's any

21    remedy as to post-petition payables that

22    actually precede this paragraph then I

23    think Mr. Reisman is right.  So maybe

24    you should -- just check to see whether

25    they are, I'm sure if they are then let

120

1              DELPHI CORPORATION

2       the kids fix this one.

3              MR. REISMAN:  Your Honor, the

4       second point I have to make, and it's

5       really the second and third, I think

6       it's appropriate for the debtor to put

7       in place some type of protocol on this

8       mediation setoff.  For example, they say

9       that notice is to be given to the

10      committee, the debtor, the agent, but no

11      one really knows who to send the notice

12      to and we don't want to -- we want to

13      get the right people to try and go

14      through the issues.  As a first line,

15      we'll work through the business people

16      in trying to work through this.  But if

17      we can't, I think people should have the

18      right to know, you know, who gets that

19      notice.  And it should also set forth,

20      with respect to the mediation and the

21      arbitration, who's going to bear the

22      cost and the process for dealing with

23      that.  And I leave it to the debtors to

24      propose something in that regard for the

25      various parties that have the setoff

121

1          DELPHI CORPORATION

2     rights.

3              THE COURT:  All right.  At

4     least it's their first point; I'm sure

5     the debtors will work out problems with

6     correcting on a process that they

7     accomplish this.  And it's probably

8     going to be, you know, at a couple of

9     different levels.  But the easy ones are

10    probably dealt with one level in the

11    heart of ones, go to a different level,

12    then you get into actually contesting

13    these things.  But I would like to -- I

14    may be pretty busy.  So that's the next

15    time to turn to.

16             MR. REISMAN:  Thank you.

17             MR. TOERING:  Gordon Toering,

18    Your Honor, on behalf of Robert Bosch

19    Corporation.  I just want to confirm.

20    There has been a lot of discussion about

21    the particular paragraph 18.  I just

22    want to make sure that all of us are

23    clear.  And I understood what the Court

24    said and just wanted to verify that I

25    understood correctly.  My understanding

122

1          DELPHI CORPORATION

2          of this is that this procedure in

3          paragraph 18 -- it is a procedure.  And

4          that a de-plaint setoff claimant could

5          come in to this Court, file a motion for

6          relief from stay and at that point the

7          debtor and any other party of interest

8          could say, not that your order does with

9          this order, to go through this

10         arbitration and mediation procedure.

11         But rather that the bed would be

12         expedient that the Court should abstain

13         on the basis of any number of factors,

14         is that correct, Your Honor?

15              THE COURT:  Yes.  Obviously I'm

16         giving people warning, if you get into a

17         procedure and you're coming to me

18         because you don't like how it's going,

19         you're going to know very quickly that

20         I'm going to send you back to the

21         procedure.  So, I'm not giving people an

22         option to pursue mediation arbitration

23         and change their mind in the middle of

24         it.  I guess you can do it, but it will

25         not be very pleasant hitter.

123

1          DELPHI CORPORATION

2               MR. TOERING:  That wouldn't be

3     our intent, Your Honor.

4               THE COURT:  I'm sure it

5     wouldn't.

6               MR. TOERING:  Your report is

7     just to verify having the post-petition,

8     my understanding is that post-petition

9     setoff it does affect going forward

10    shipments because Bosch is both a

11    supplier and a customer of Delphi.

12               THE COURT:  Right.

13               MR. TOERING:  My understanding

14    is that as to post-petition setoff

15    rights, that those would prime the DIP

16    lenders and anybody else and that was, I

17    thought, an understanding that had been

18    reached.  Because that does affect

19    whether or not we're willing to extend

20    the credit to the debtor, and so forth,

21    so I'd like some clarification on that.

22               MR. BUTLER:  I don't want to

23    give you the answer what's prime or

24    what's not prime.  Their permitted to

25    post-petition setoff rights can be

124

1        DELPHI CORPORATION

2        exercised.  I'll leave it at that.

3             MR. TOERING:  Well, Your Honor,

4        just to follow that up, I guess that

5        leaves it somewhat open.  I just don't

6        want a situation where a lender is

7        coming in and saying if worst case

8        scenario, the case starts crumbling and

9        then lender comes in and says your

10       setoff rights are subservient to our

11       rights.  And that's what I'm trying to

12       give it at this point.  And, we could

13       work this out; I guess this is something

14       we can manage in terms of the credit

15       issue, but it is something that if we

16       can clarify today, I think it would be

17       helpful.

18            MR. BUTLER:  I think it's

19       clarified on page 43 of the order which

20       says that nothing contained here shall

21       limit the discretion of the debtors to

22       pay warranty or private call claims in

23       accordance to those of that court, limit

24       the right of any party in interest to

25       exercise their post-petition setoff or

125

1              DELPHI CORPORATION

2        recoupment against a post-petition

3        payable and the write goes on to the

4        names, I mean I think it's described

5        right in the order.  Post against post.

6              MR. TOERING:  Describe it as a

7        top priority.  That's my point, Your

8        Honor.

9              THE COURT:  Or everything is

10       what it is.  They included line 12 here

11       of the ACC.

12             MR. BUTLER:  Is there anyone

13       else who wants Vesey Corporate for the

14       evidentiary record?  Your Honor,

15       recognizing that when a debtor asks a

16       bankruptcy court to consider section

17       364(d), the Bankruptcy Code would affirm

18       the obligation to place evidence in the

19       record irrespective of the existence of

20       any objection.  I'd like, with the

21       Court's permission, to first move the

22       admission of Debtors' Exhibits 1-29.

23             THE COURT:  All right, that's

24       from that binder you gave me in which 1-

25       5 are the final financing documents, 6-

126

1          DELPHI CORPORATION

2      12 are alternative financing proposals

3      by other groups to the debtors, and 13-

4      16 are evaluation materials; 17-22 are

5      the pre-petition financing documents,

6      22-27 are various Security and Exchange

7      Commission filings and the last two are

8      already in the record.  Those were

9      attached, as they were summaries of the

10     objections.

11              MR. BUTLER:  Yes, Your Honor.

12              THE COURT:  Does anyone have

13     any objections to those being admitted?

14     All right.  They're admitted.

15              MR. BUTLER:  Your Honor

16     indicated that it'd be acceptable for

17     the debtors to present pre-proffers.

18              THE COURT:  Yes.  These people

19     are here.

20              MR. BUTLER:  Your Honor,

21     they're all here.  I'll ask them to

22     stand when I introduce them.  The first

23     witness I would call would be David

24     Resnick.  Mr. Resnick's standing in the

25     courtroom and is the debtors' investment

127

1          DELPHI CORPORATION

2      banker.  The second witness, Your Honor,

3      we would call is Mr. Scott King, Mr.

4      King, from FTI.  And the third is the

5      debtors' chief reconstruction officer,

6      Mr. John Sheehan.

7              THE COURT:  Okay.

8              MR. BUTLER:  Your Honor, in

9      support of motion with debtors that are

10     off the testimony of David Resnick, he's

11     the managing director of Rothschild Inc.

12     Mr. Resnick is present, called, would

13     testify as follows.  First, he would

14     testify as to his background, his

15     familiarity with the debtors'

16     operations.  He would testify that the

17     debtors' board of directors authorized

18     Rothschild Inc., its financial advisor,

19     investment banker, to seek post-petition

20     DIP financing from its pre-petition

21     secured lenders and other third-party

22     lending institutions.  Mr. Resnick would

23     testify that he and other persons,

24     including the debtors' financial

25     advisors, FTI consulting Inc., determine

128

1          DELPHI CORPORATION

2          that a DIP credit agreement, general in

3          the terms of that proposed, was critical

4          to the debtors' ability to operate in

5          Chapter 11 and for the debtors'

6          successful reorganization.  Mr. Resnick

7          would testify that, in his view, the DIP

8          credit agreement is necessary for the

9          debtors to operate the business.  He

10         would testify that he participated in

11         the negotiations of the terms and

12         conditions of the agreement and that

13         they were negotiated at arm's length and

14         in good faith.  Mr. Resnick would

15         testify that with the credit provided in

16         the DIP facility, it is the debtors, and

17         his view that the debtors would be able

18         to maintain or should be able to

19         maintain adequate cash balances

20         customary necessary for companies of

21         this size and in this industry to

22         operate its businesses, in order to

23         preserve the ongoing value to businesses

24         for the benefits of all parties and

25         interest.  Mr. Resnick would also

129

1        DELPHI CORPORATION

2        testify that he, in participating with

3        the debtors' management team, ran a

4        process to evaluate potential proposals

5        and met with four major mind-setter

6        institutions, all of whom produced

7        proposals and the finding that would

8        testify that the file proposals and you

9        would identify those proposals as the

10       proposals set forth in Debtors' 1 and

11       the alternative financing proposal is

12       not accepted by the debtors as Debtor's

13       6-12.  Mr. Resnick would testify that

14       when the debtors approached these

15       financial institutions they made

16       presentations to the institutions and

17       asked them to provide both priming

18       facilities and non-priming facilities --

19       take-out facilities in as significant an

20       amount of money as the institutions

21       could provide or would provide, but in

22       the case of a take-out refinancing not

23       less than 4 billion.  He would testify

24       that in evaluating these proposals that

25       the debtors and their financial advisors

130

1            DELPHI CORPORATION

2        analyzed carefully the structures;

3        discussed the structures with the

4        different institutions and ultimately

5        reached a determination that there were

6        essentially three gating elements that,

7        in the view of the debtors and in the

8        view of Mr. Resnick as a debtors

9        investment banker, where the tantamount

10       considerations are in determining what

11       was an acceptable facility that could,

12       in fact, meet the requirements of the

13       debtors' financing needs.  And those,

14       Mr. Resnick would testify that those

15       three factors included execution risk

16       issues, issues relating to size and

17       liquidity of the facility and issues

18       relating to the economics of the

19       facility proposed.  Mr. Resnick would

20       testify as to execution risks that in

21       his view this is, if not the largest,

22       among largest total packages, financing

23       packages sought in the history of the

24       federal system.  It's four and a half

25       billion dollars in total.  And the

131

1              DELPHI CORPORATION

2       debtors recognized that in trying to

3       take out financing of four billion,

4       which was the maximum the debtors had

5       obtained among the proposals, Mr.

6       Resnick would testify that as to the

7       four billion dollar facilities that the

8       debtors took into consideration, the

9       complexities of actually executing that

10      take-out facility which would have been

11      the largest in Mr. Resnick's, at least,

12      experience ever would be considered in

13      the federal bankruptcy system.  Mr.

14      Resnick would also testify that he and

15      others at Rothschild, together with

16      members of management, consulted with

17      the senior managers and advisors at the

18      various -- at both JP Morgan and at

19      Citibank in particular, and were

20      advised, at the end of the day, that

21      those institutions believed that the

22      execution risk were significantly lower

23      in the priming facility than it was in

24      the take-out facility.  In addition, and

25      that's reflected in the rates and in the

132

1          DELPHI CORPORATION

2          economic terms and in other provisions

3          that are in the record at this point,

4          Mr. Resnick would also testify that in

5          the final structure that was agreed, the

6          priming facility generated an additional

7          half a billion dollars worth of

8          liquidity for the company because the

9          other proposals, the non-prime

10         proposals; the take-out proposals

11         required a pay-down of the pre-petition

12         loans in the amount of approximately 500

13         million dollars so that the net

14         available would have been, in a take-out

15         would have been four billion.  And, in

16         this particular structure where there

17         was a priming of the two and a half

18         billion dollar pre-petition that in fact

19         there would be an additional half a

20         billion or more of additional liquidity

21         available to the company.  Mr. Resnick

22         would testify that in terms of

23         economics, that Rothschild benchmarked

24         economics in this facility against those

25         in its data base, that Rothschild is a

133

1          DELPHI CORPORATION

2          part of, during their course of

3          business, maintains a data base of

4          similar DIP financings; that Mr. Resnick

5          had, on behalf of Rothschild, has

6          participated in many refinancings and

7          DIP facilities, and that when they

8          reviewed the competitive data base that

9          the economics in this data base were

10         actually -- were benchmarked extremely

11         favorably to that which was in the

12         marketplace and in appropriate prior

13         DIPs that would be comparative.  Your

14         Honor, Mr. Resnick would also testify

15         that he has reviewed the terms and

16         conditions of this DIP and these are the

17         DIPs -- the terms are fair and

18         reasonable.  And as I indicated, would

19         testify that his opinion is based in

20         part on the database of selected

21         historical DIP facilities that is

22         maintained by Rothschild.  In terms of

23         the debtors' needs, Mr. Resnick would

24         also point to the debtors' DIP

25         facilities of projections which are

134

1          DELPHI CORPORATION

2     included in the record at Debtors' 13,

3     and would point to the fact that the

4     four and half billion dollar facility,

5     based on the forward projections, would

6     suggest that at the end of the period

7     about a half a billion dollars of

8     liquidity would be available based on

9     the projections there.  Mr. Resnick

10    would testify that, in his experience, a

11    company of this size and complexity, one

12    of the Fortune 50 companies in the

13    country, would in fact require a very

14    substantial excess availability in order

15    to operate its business and maintain the

16    confidence of its suppliers and

17    customers.  Finally, Mr. Resnick, would

18    testify about the structure of Delphi,

19    and the structure of this restructuring

20    and which involve a bilateral message

21    where the company's U.S. entities are

22    involved in this Chapter 11 case, but

23    its global businesses are operating

24    outside of Chapter 11, even though many

25    of the products that it maintains are

135

1              DELPHI CORPORATION

2         operated on a horizontal, as opposed to

3         vertical, sort of structure, globally.

4         And, Mr. Resnick would testify, that in

5         dealing with a customer located outside

6         the United States, dealing with

7         suppliers outside the United States,

8         dealing with suppliers and customers

9         that have potential setoff claims and

10        recoupment claims, and other actions

11        that could be taken in connection with

12        the company, that it was extremely

13        important, in his judgment, to stabilize

14        the business that the company have the

15        DIP facility that is put in place.  And

16        that in his professional opinion, there

17        was no other facility made available to

18        the debtors that met the debtors' needs

19        and requirements.  Your Honor, that

20        would be sum and substance of Mr.

21        Resnick's testimony.

22              THE COURT:  Okay.  Does anyone

23        wish to cross-examine Mr. Resnick or his

24        testimony?  All right, you can move over

25        to the next witness, then.

136

1           DELPHI CORPORATION

2               MR. BUTLER:  Your Honor, the

3       next witness would be Mr. Scott King.

4       Mr. King had called to testify.  He

5       would testify that he is employed by FTI

6       Consultant Inc. as a senior managing

7       director, that he needs FTI's method of

8       restructuring practice and that prior to

9       August of 2002, he was a partner for

10      five years at Price Waterhouse Coopers'

11      business recovery practice and held

12      various positions prior to that date.

13      Mr. King would testify that he has spent

14      more than 20 years of experience in

15      developing, implementing improvement

16      strategies for companies experiencing

17      financial distress.  And that his role

18      at FTI is, in this assignment, is to

19      provide, among other things, on-site

20      assistance at the company in connection

21      with its Chapter 11 case, and dealing

22      with essential suppliers, and working

23      with the creditors' committee, and

24      working with the company in connection

25      with its relationships with its lenders.

137

1           DELPHI CORPORATION

2           It's the formulation of its former

3           borrowing projections, the formulation

4           of its business plan and other matters.

5           Mr. King would testify that he prepared

6           the document that has been admitted into

7           evidence as Debtors' 14, that that

8           document was prepared by him, based on

9           his examination of the debtors' books

10          and records, and based on his

11          examination of various reports that were

12          provided to him, including the reports

13          that had been admitted into evidence in

14          the debtors' exhibits relating to

15          various evaluations of the debtors'

16          collateral.  Mr. King would testify that

17          in his opinion, based on a build up, on

18          a going concerned basis, that those as

19          much as 9.6 billion dollars worth of

20          collateral available to support the

21          adequate protection packages here, which

22          would consist of a two and half billion

23          dollar pre-petition lender claim, a two

24          billion dollar DIP lender claim, and as

25          much a five billion dollar equity

138

1              DELPHI CORPORATION

2          cushion that would available based on

3          the book values of PP&E, Property Plan

4          Equipment.  Assessing the evaluation of

5          the foreign stock, assessing the

6          evaluation of the inventory, and

7          assessing the evaluation of receivables

8          and cash and the performance of those

9          assets in the debtors' ordinary course

10          of business on an historical basis, Mr.

11          King would also acknowledge that he

12          examined and relied on, in preparing his

13          testimony, relied on the Debtors' 16,

14          which is an appraisal prepared by Hillco

15          Appraisment Services as with respect to

16          Delphi PP&E which attributed an 850

17          million dollar allocation value to PP&E

18          as opposed to the 2.9 billion dollar

19          book value that the debtors currently

20          assigned to the PP&E.  And if you

21          assigned the liquidation by the PP&E,

22          which Mr. King would suggest, is of all

23          the various collateral items the one

24          that he would acknowledge would have

25          perhaps more speculative amounts in

139

1          DELPHI CORPORATION

2          terms of whether liquidation or going to

3          turn out to be involved, that if you

4          assign liquidation value to that

5          particular bucket of collateral that the

6          total value of the collateral would be

7          somewhere in the 7.6 billion dollar

8          range, still providing an ample cushion

9          to the 4.5 billion dollars worth of pre-

10         petition and post-petition proposed

11         claims.  Your Honor, Mr. King would also

12         testify, similar to Mr. Resnick's

13         testimony, with respect to the key items

14         of execution risk, size of the facility

15         and economics.  How Mr. King qualify his

16         testimony with a much stronger emphasis

17         on size of the facility.  It's Mr.

18         King's view, and in fact he would

19         testify that he was very active during

20         the consideration of these proposals in

21         pushing the company to get as large a

22         facility as the company could procure,

23         because Mr. King's professional opinion

24         that the company needed as much excess

25         liquidity as possible, given the

140

1              DELPHI CORPORATION

2       uncertainties of the automotive sector,

3       the transformation challenges of the

4       company, in terms of the transformation

5       plan and strategies that it has

6       announced publicly.  And the

7       contingencies dealing with the sort of

8       bi-motor arrangement trying to make sure

9       that all the customers and suppliers

10      understand the company had all of the

11      liquidity that it reasonably thought

12      necessary to address its issues.  So,

13      Mr. King would testify that his

14      principal focus was how much money could

15      the company get, and he viewed that as

16      the most important factor involved here.

17      He will also testify that he

18      participated in the examination of all

19      the proposals and participated, along

20      with the members of FTI, in aspects of

21      the negotiations of the transaction.

22      And would testify that, in his

23      professional opinion, there was no other

24      financing available to the company that

25      would meet the company's needs and

141

1              DELPHI CORPORATION

2       requirements.  And that would be the sum

3       and substance, Your Honor, of Mr. King's

4       testimony.

5              THE COURT:  Okay.  Does anyone

6       want to cross-examine Mr. King or his

7       testimony?  All right.  You can move on

8       to the last witness.

9              MR. BUTLER:  Your Honor, the

10      last witness who would testify would be

11      Mr. John Sheehan.  He would testify that

12      he is the vice president and chief

13      restructuring officer at Delphi.  And he

14      would testify that from the period of

15      March 4th, 2005 through October 8th, he

16      also acted as the interim chief

17      financial officer, chief accounting

18      officer and comptroller of Delphi

19      Corporation.  Having joined Delphi in

20      July of 2002 as chief accounting officer

21      and comptroller, Mr. Sheehan would

22      describe his role at Delphi as being

23      involved and being tasked with the

24      principal responsibility for all aspects

25      of the company's restructuring.  And as

142

1          DELPHI CORPORATION

2          part of those duties, he would say he's

3          responsible for reviewing and analyzing

4          the company's assets and operating

5          financial strategies, as well as the

6          company's business plan and financial

7          projections, and being responsible for

8          the review and analysis and negotiation

9          of proposals to the company in

10         connection with third-party

11         transactions, including proposals for

12         DIP financing.  Mr. Sheehan would

13         testify that he is familiar with the

14         company's cash needs and that he

15         developed that understanding during his

16         period of responsibility at the company

17         as chief accounting officer and

18         comptroller and that he is very familiar

19         with requirements of how the company

20         operates globally; its need for

21         financing the operations of the

22         enterprise, the need for dealing with

23         essential suppliers and customers and

24         operating the debtors' business.  He

25         would testify that he was involved in

143

1              DELPHI CORPORATION

2         the process which resulted in the

3         procurement of the DIP financing that's

4         before the Court, as evidenced in

5         Debtors' Exhibits 1-2 and 2(a).  He

6         would describe that process began early

7         this year on a contingency basis as the

8         board considered various alternatives

9         involving a consensual structuring of

10        the company's operations in the United

11        States.  And, as part of that analysis,

12        the company retained financial advisors

13        to assist it and its board of directors

14        in evaluating its options.  Mr. Sheehan

15        would testify that Delphi first retained

16        Rothschild Inc. and Rollerton Associates

17        as the company's financial advisors and

18        investment bankers.  And subsequently

19        retained legal counsel and then also

20        retained FTI Consulting.  He would

21        testify that Rothschild was engaged, in

22        part, to assist the company in

23        soliciting and evaluating various

24        financing proposals, both originally

25        outside of Chapter 11 and ultimately

144

1                   DELPHI CORPORATION

2          inside of Chapter 11 and that they were

3          tasked with helping him and others at

4          the company negotiate the best financing

5          transaction that would be available to

6          the company to meet its needs and would

7          also give the company the maximum amount

8          of flexibility when considering various

9          alternatives.  Mr. Sheehan would testify

10         that in August of this year that he,

11         after consultation with other members of

12         management and a presentation at the

13         board of directors of the company,

14         directed Rothschild to begin to reach

15         out and begin a process for considering

16         DIP financing proposals on a contingency

17         basis.  That occurred at approximately

18         the same time that the debtors issued

19         public statements about a path A and

20         path B, sort of a QL approach to

21         evaluating and dealing with their legacy

22         liabilities and portfolio restructuring

23         requirements here in the United States.

24         Those public announcements were made in

25         early August, and Mr. Sheehan would

145

1          DELPHI CORPORATION

2      testify that Rothschild was asked to

3      begin this contingency process shortly

4      thereafter.  Mr. Sheehan would testify

5      that Rothschild, at the direction of the

6      company, approached JP Morgan Chase and

7      a number of other global financial

8      institutions, including Citibank,

9      Dorchester Bank, and GE Capital with

10     respect to debtor-in-possession

11     financing. He would testify that process

12     resulted in a competitive process that

13     concluded in the proposals that had been

14     admitted into evidence as Debtors' 1 and

15     Debtors' 6-12.  Mr. Sheehan would

16     testify that in negotiating with those

17     lenders, Mr. Sheehan was personally

18     involved in, along with Rothschild, in

19     describing the company's situation and

20     was familiar with the materials that

21     were provided in the proposals that were

22     obtained from each of the lenders and

23     the various structures that were

24     involved.  Mr. Sheehan would also

25     testify that he was similarly concerned

146

1          DELPHI CORPORATION

2      on behalf of the company about the three

3      sort of principal criteria for

4      evaluating these proposals.  Again,

5      those criteria being the cost of the

6      facility, the structure and size of the

7      facility and its execution risk.  Mr.

8      Sheehan would testify that his weighing

9      of those issues was, generally, similar

10     to that of these advisors, but that

11     initially he spent some time and focus

12     on the cost of the facility, feeling a

13     need to ensure that the company was

14     appropriately committing its financial

15     resources.  And that he was extremely

16     concerned based on his involvement with

17     the essential suppliers and customers of

18     the business on making sure that the

19     proposal could be executed successfully;

20     that those were among his principal

21     focuses.  Mr. Sheehan would testify that

22     he participated in the negotiations as a

23     principal from time to time throughout

24     the process; that he ultimately

25     recommended to the other members of

147

1          DELPHI CORPORATION

2          management and the board of directors,

3          the commitment letter that is set forth

4          at Debtors' 1, that in Mr. Sheehan's

5          judgment that proposal was the only

6          financing available to the debtors that

7          could meet the debtors' requirements

8          going forward.  Mr. Sheehan believes

9          that that proposal was negotiated in

10         good faith, in an arm's-length basis

11         between the company and JP Morgan Chase

12         and eventually Citibank.  Your Honor,

13         Mr. Sheehan would also testify that he's

14         familiar with the general terms and

15         conditions of the financing transaction

16         and that, in his judgment, those terms

17         are, and in the business judgment of the

18         debtors, fair and reasonable and

19         appropriate under the circumstances.

20         That in his view, this financing

21         transaction represents the culmination

22         of what Mr. Sheehan viewed to be an

23         exhaustive solicitation process for

24         financing conducted by the company and

25         it was designed to meet the company's

1          DELPHI CORPORATION

2      needs in these unusual circumstances.

3      Mr. Sheehan would also testify that he

4      has reviewed the DIP projections that

5      form the basis of the DIP financing case

6      that was presented to the debtors and

7      which is represented in part in Debtors'

8      13.  And that he believes the size of

9      the facility, the 4.5 billion overall,

10     is required, again, because of the

11     debtors' contemplated needs as they move

12     through the process.  Your Honor, that

13     would be the sum and substance of Mr.

14     Sheehan's testimony.

15             THE COURT:  All right.  Does

16     anyone wish to cross-examine Mr.

17     Sheehan?  All right, here and now, I

18     will accept his testimony.

19             MR. BUTLER:  Your Honor, that

20     would represent the evidentiary record

21     that the debtors have.  The testimony of

22     those three witnesses and the 29

23     exhibits admitted into evidence and we

24     would rest on that record.

25             THE COURT:  Okay.  I'm assuming

149

1          DELPHI CORPORATION

2      in light of the first part of the

3      hearing that no one else has any

4      evidence they want to submit.  Okay,

5      I'll close the evidentiary portion of

6      that hearing then.

7              MR. BUTLER:  Your Honor, and

8      given the presentation I made earlier, I

9      think at this point we will simply rest

10     on the papers.  There's a proposed order

11     we'd like Your Honor to consider.  And

12     we would intend to reflect the changes

13     that we have discussed on the record

14     that were indicated to actually be

15     changes to the order.  While we know

16     others will want to look at it, we have

17     committed to the creditors' committee

18     that they and we will take our time this

19     evening to get it right.  We have

20     language, much of which was read into

21     the record.  There's not much actually

22     left to be done, but we want to make

23     sure that we have a chance to flyspeck

24     the order and we'll get it over to the

25     committee and the debtors will get the

150

1              DELPHI CORPORATION

2         order over to you in the morning.  We

3         would like, Your Honor, if you're

4         inclined to approve the financing, to

5         approve it on the record today so we can

6         be in a position to announce, publicly,

7         it's been approved.  And also to make

8         clear that to the extent somehow there

9         is some disagreement in what the form of

10        the order says, all that would be

11        brought back to Your Honor tomorrow is a

12        settlement of the order rather than a

13        revisiting of the merits of this case.

14             THE COURT:  Right.  All right.

15        I do approve the financing and adequate

16        protection provisions set forth in the

17        black-lined order as included on the

18        record at today's hearing.  And the

19        record will reflect that the parties are

20        moving forward to complete the order and

21        revise on that.  All we're looking for

22        is an order that embodies the agreed

23        order as set forth on the record.  It's

24        clear to me that this is, at this point,

25        a consensual DIP financing and adequate

151

1           DELPHI CORPORATION

2           protection order which, I think, may I

3           extend praise to all of the

4           professionals involved in resolving the

5           issues which were not, in all respects,

6           easy to resolve.  I also applaud the

7           fact that the various parties of

8           interest were each prepared to sacrifice

9           in their positions to get to that point.

10          Based on the proper testimony, I find

11          that the DIP agreement that was

12          negotiated in all its length, I can

13          permit proper and in good faith and/or

14          mistreatment under Section 354(e) of the

15          Bankruptcy Code.  In loss of further

16          find that the debtors have satisfied

17          their burden under section 364(c) and

18          364(d) from the priority claims, DIP

19          priority claims in any and all doubt.

20          You would hold up in my original

21          reactions to this version was to

22          question whether in fact the debtors

23          needed such a large facility here.  I

24          incorporate that they will not need to

25          draw down on that significantly, but,

152

1          DELPHI CORPORATION

2      you know, I'm convinced that the

3      facility adequately satisfies the

4      debtors' needs and provides them

5      sufficiently, perhaps even abundantly,

6      availability to conduct their bankruptcy

7      case and legal in podium too.  You know,

8      conduct their businesses in due course.

9      So, I look forward to getting your

10     letter and, you know, reviewing in

11     letter of record.

12          MR. BUTLER:  Your Honor, thank

13     you very much and thank you to you and

14     everyone in chambers for the assistance

15     over the last few days as we moved

16     forward to this hearing.  Your Honor, I

17     would plant that the matter 18 on the

18     agenda which is the cash management

19     matter in light of the disposition of

20     this order and the agreement of the

21     committee, I'd ask Your Honor to approve

22     the cash management order as negotiated

23     with the Pension Benefit Guaranty

24     Corporation on a final basis.

25          THE COURT:  And the committee.

153

```
 1              DELPHI CORPORATION
 2              MR. BUTLER:  In case of
 3     submitting its objection as to that
 4     matter there's a --
 5              MR. ROSENBERG:  Well, I think
 6     the order has to be rewritten.
 7              MR. BUTLER:  Well, you know,
 8     we'll be happy to submit, and we'll
 9     submit the order tomorrow morning.
10              THE COURT:  Maybe will reflect
11     the same language with respect to the
12     intercompany loan treatment as to DIP
13     order.
14              MR. BUTLER:  Yes, Your Honor.
15              THE COURT:  Okay, that's fine.
16     And I will approve that.
17              MR. ROSENBERG:  Yes, I'd like
18     to add, Your Honor, the review language
19     --
20              THE COURT:  Oh, yes.  That goes
21     without saying.
22              MR. PASCOE:  This is Timothy
23     Pascoe for Ford Motor Company.  What Mr.
24     Butler says submit a copy of the revised
25     order for the objecting party as well.
```

154

1      DELPHI CORPORATION

2           MR. BUTLER:  Out of those 50 or

3      60 objecting parties, I mean -- Your

4      Honor, we want to be able to use the

5      committee to submit this in accordance

6      with the record.

7           THE COURT:  I think, again, I

8      don't want this turn into a negotiating

9      section.  It really is to reflect what I

10     set forth on the record.  But I think --

11     I think you have to e-mail it to the

12     objectants if you have the e-mail

13     address, if you don't I would instruct

14     the objectants to provide -- who should

15     I send the e-mail address to.

16          MR. BUTLER:  Why don't we just

17     make it easier now, I'll get it to the

18     right people, send it to

19     jbutler@skadden.com and I'll make sure

20     it gets to where it needs to go.

21          THE COURT:  All right.  But,

22     again, I intend to review it and write

23     up today's record and I think it's

24     important to get it in there tomorrow --

25     by the end of the day tomorrow.  So

155

1        DELPHI CORPORATION

2     rather than negotiate provisions, if

3     there's something that you think the

4     debtors have left out, you can send me a

5     short letter to that effect.  But I

6     don't want to get people hung up on

7     negotiating language yet.

8            MR. PASCOE:  I understand,

9     thank you.

10            THE COURT:  Okay.  One brief

11     thing.  The way the language, in light

12     of the fact that this debtor is training

13     on, I just urge the agent to somehow

14     keep a record of what language and

15     elections people have made so that's

16     it's dated and sometimes in pieces.  We

17     don't have confusion at the end of the

18     case.

19            MR. ROSENBER:  We will, Your

20     Honor.

21

22

23

24            (Continued on next page.)

25

156

1              DELPHI CORPORATION

2              MR. BUTLER:  Your Honor, thank

3       you very much; that concludes the agenda

4       for today.

5              THE COURT:  Thank you.

6              (Whereupon these proceedings

7       were concluded.)

8              (Time noted: 2:27)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

157

1

2        I, Esther Accardi, hereby certify that

3   the foregoing is a true and correct

4   transcription, to the best of my ability, of

5   the sound recorded proceedings submitted for

6   transcription in the matter of:

7   DELPHI CORPORATION.

8

9        I further certify that I am not employed

10  by nor related to any party to this action.

11

12       In witness whereof, I hereby sign this

13  date:

14  February 26, 2006

15

16  _____

17  Esther Accardi

18

19

20

21

22

23

24

25

**A**

**abbreviated** 42:18
**ability** 37:9 119:11
  128:4 157:4
**able** 26:4 27:22 34:4
  42:4 43:13 50:24
  63:12 75:4 86:4,22
  102:16 108:15
  128:17,18 154:4
**ABR** 52:12 53:19,20
  55:17,22 56:24
  59:15 63:6
**absent** 50:16
**absolutely** 57:12
  63:2 115:23
**abstain** 122:12
**abundantly** 152:5
**academic** 86:14
**ACC** 125:11
**Accardi** 6:23 157:2
  157:17
**accept** 60:19 148:18
**acceptable** 32:23
  79:8 94:5 99:24
  126:16 130:11
**accepted** 74:11
  129:12
**accepting** 114:14
**access** 58:2
**accommodate** 94:11
**accommodating**
  64:15,18
**accommodations**
  64:11
**accomplish** 20:4
  121:7
**account** 2:8,16
  67:12
**accounting** 141:17
  141:20 142:17
**accrue** 59:13
**accrued** 56:3
**accurately** 64:4
**acknowledge** 138:11
  138:24
**Acknowledging**

85:23
**acquire** 19:16
**act** 116:21
**acted** 141:16
**action** 53:8 69:22
  70:25 85:14
  117:13 157:10
**actions** 17:11 18:4
  52:6 72:11 73:19
  85:13 135:10
**active** 139:19
**actual** 50:13
**ad** 49:8 60:3 63:25
**add** 58:20 63:17
  98:3 153:18
**added** 23:3 24:24
  30:3
**addition** 54:7 62:13
  131:24
**additional** 2:10,18
  21:21 25:6 41:11
  53:24 74:19 87:22
  103:11 132:6,19
  132:20
**address** 65:25 92:25
  93:3 94:10 112:19
  140:12 154:13,15
**addressed** 42:24
  45:3
**adequate** 3:15 4:13
  5:10 6:10 27:16
  42:25 49:17 55:25
  56:11 70:15 72:6
  97:4,10 101:18
  128:19 137:21
  150:15,25
**adequately** 87:24
  152:3
**adjourn** 13:23
**adjourned** 12:7 15:2
**adjust** 25:3
**administrative** 4:21
  5:20 32:14,16 44:8
  72:25 73:5 100:21
  101:9 103:13,22
**admission** 43:15

45:14 98:22
  125:22
**admitted** 126:13,14
  137:6,13 145:14
  148:23
**advance** 21:12 66:20
**advised** 14:2 18:18
  44:17 131:20
**advisor** 23:16 25:24
  25:25 35:22 85:17
  127:18
**advisors** 22:10
  23:14 127:25
  129:25 131:17
  143:12,17 146:10
**affect** 123:9,18
**affidavit** 24:6
**affirm** 125:17
**affirmation** 24:7
**affirmatively** 51:18
**afternoon** 73:10
  83:18 87:11
**agenda** 3:24 11:15
  11:17,20 13:21
  14:8 15:5,17 19:24
  21:2 26:20 30:17
  31:22 41:6 42:7,8
  152:18 156:3
**agent** 44:8,9 47:8
  50:5,12,15 51:19
  51:22 52:3,6,25
  53:3 55:2 56:13
  66:8 74:9,10 80:15
  82:9 83:22 92:11
  111:18,22 120:10
  155:13
**agents** 84:3
**agent's** 52:4,9,18
**agent(which** 59:4
**aggregate** 14:18
  25:7
**ago** 13:14 99:15
**agree** 23:21 36:11
  40:13 66:9 67:10
  78:16 84:19 86:19
  98:17 114:15

**agreed** 16:3 22:8
  23:12 25:13 27:25
  28:3 31:8,8 51:18
  54:23,25 56:10
  61:22 68:5 70:23
  71:2,9 78:20 87:15
  104:18 132:5
  150:22
**agreement** 3:6 6:19
  15:10 16:15,16
  17:7,8,10,12 20:5
  20:6 28:11 30:20
  30:23,25 32:21
  46:2,5,6 47:7 53:9
  54:9,20 55:21 56:9
  58:24 59:12 60:6
  61:2,3,9 62:21
  64:3,5,23 65:12
  66:6 68:15,23,25
  69:6 72:2,11,18
  76:24 83:14 95:10
  95:17 98:9,10
  103:24 104:9,23
  109:2 128:2,8,12
  151:11 152:20
**agreements** 16:9
  19:10 47:23 48:3,6
  52:19,20 66:2,3
  69:24 75:18 77:22
  95:3,7,22
**agrees** 61:17 63:10
  78:2 111:18
**ahead** 51:14 59:21
  86:16
**aircraft** 93:9,14,23
  94:3,20,24
**Alabama** 20:13
**Alan** 63:24
**ALLAN** 8:19
**alleged** 112:18
**alleging** 49:13
**allocation** 138:17
**Allow** 2:12
**allowable** 88:13,21
  89:15,22 90:14
  91:5

**allowed** 82:15
  115:24
**allowing** 41:23
**allows** 21:7 45:10
**altered** 114:6
**Altering** 2:7,15
**alternate** 107:21
**alternative** 26:25
  27:12 106:21
  126:2 129:11
**alternatives** 143:8
  144:9
**amendment** 46:4
**amendments** 48:3
**America** 43:4 93:8
  94:5 100:15
**amount** 60:11 67:16
  68:17 129:20
  132:12 144:7
**amounts** 55:13
  138:25
**ample** 139:8
**analysis** 37:9 142:8
  143:11
**analytical** 35:19
**analyzed** 22:14
  130:2
**analyzing** 142:3
**ancillary** 94:18 97:7
**and/or** 151:13
**announce** 150:6
**announced** 140:6
**announcements**
  144:24
**annualized** 53:23
**answer** 43:13 73:12
  101:5 123:23
**anticipation** 26:4
**anybody** 31:16
  99:25 100:2
  123:16
**Anytime** 51:10
**anyway** 30:7 35:20
  85:21
**apologize** 61:15
  118:23

**apparently** 64:25
**appear** 105:3
**appears** 20:21
  104:19
**APPELBAUM**
  10:11
**applaud** 151:6
**APPLEBAUM**
  108:19
**applicable** 55:21
  56:25 58:10,11,14
  59:15 63:6 88:9
**application** 14:20
  55:4 98:8
**applications** 13:8
**apply** 24:23 81:3
**appointed** 13:13
**appointment** 13:16
**appraisal** 138:14
**Appraisment**
  138:15
**appreciate** 39:15
  64:15
**approach** 14:21
  52:4 144:20
**approached** 50:14
  129:14 145:6
**approaches** 106:22
**appropriate** 12:19
  20:16 22:8 34:15
  35:10 62:6,7 75:7
  84:5 120:6 133:12
  147:19
**appropriately**
  146:14
**appropriateness**
  62:16
**approval** 23:2 44:4
  64:5 68:18 71:8
  76:2,12
**approve** 4:16 5:20
  17:2 19:21 20:23
  26:17 30:11 31:18
  45:22 47:22 84:21
  150:4,5,15 152:21
  153:16

**approved** 67:17
  74:12 77:15 150:7
**approximately**
  44:21 51:21,24
  132:12 144:17
**April** 30:24
**arbitration** 107:2
  118:15 119:2
  120:21 122:10,22
**argue** 34:11 56:2
  62:16 107:20
**argued** 114:6
**arguments** 100:19
**arises** 88:7
**arising** 104:22
**arm's** 22:24 23:8
  128:13
**arm's-length** 23:3
  147:10
**Arps** 7:4 11:7
**arranged** 44:11
**arrangement** 77:15
  77:25 140:8
**arrangements** 12:3
  50:25 87:19
**asked** 13:22 17:11
  28:3 50:20 77:2
  94:22 95:14 119:6
  129:17 145:2
**asking** 40:15 45:21
  47:22 94:20 99:4,6
  99:24 100:22
  105:11
**asks** 125:15
**aspects** 140:20
  141:24
**asserted** 82:8
**assessing** 138:4,5,7
**asset** 15:9 19:15
  21:18 22:7,17 25:5
  79:25
**assets** 21:3,10,15
  24:23 25:7 34:18
  138:9 142:4
**assign** 139:4
**assigned** 138:20,21

**assignment** 100:7
  136:18
**assist** 143:13,22
**assistance** 136:20
  152:14
**associated** 54:13
**Associates** 143:16
**Association** 17:9
**assorted** 20:7
**assume** 17:5,11 18:3
  57:9 85:15
**assuming** 148:25
**assurance** 2:10,18
  27:16
**assure** 34:20
**attach** 38:7
**attached** 46:23
  126:9
**attempted** 98:16
**attorney** 85:17
**attributed** 138:16
**August** 136:9
  144:10,25
**authority** 16:7 18:3
  19:25
**authorization** 16:10
**authorize** 2:20 3:8
  5:3,15 6:3,15
  35:15
**authorized** 127:17
**authorizing** 3:5,11
  3:14 4:10 5:6,8,16
  6:6,8,17 30:19
**automatic** 37:3
  115:13,20 116:16
**automotive** 140:2
**availability** 134:14
  152:6
**available** 43:17
  84:11 132:14,21
  134:8 135:17
  137:20 138:2
  140:24 144:5
  147:6
**Avenue** 7:14,21 8:10
  8:16 9:4,11,17

**avoid** 119:16
**avoidance** 72:10,20
    72:22 73:19,20
    84:10 85:13
**award** 118:25
**aware** 33:19 48:24
**a.m** 41:18

**B**
**b** 1:22 3:18 5:13
    6:13 48:18 59:19
    144:20
**back** 23:22 26:12
    27:10 41:14,20
    58:16,16 65:6
    68:16 75:23 76:12
    76:17,23 77:7,19
    89:7 116:20
    122:20 150:11
**background** 127:14
**backing** 34:18
**baked** 29:10
**balance** 52:21 55:17
    55:18
**balances** 35:9,12
    45:8 128:19
**balls** 97:14
**bank** 17:8 43:4 44:7
    50:7,8 52:8,17
    53:3 80:15 92:12
    93:8 94:5 100:15
    145:9
**banker** 127:2,19
    130:9
**bankers** 85:15,21
    143:18
**Bankr** 2:22 3:10,18
    4:10,18,23 5:5,13
    6:5,13,17
**bankruptcy** 1:2,25
    49:15 80:9 113:10
    113:11 114:14,18
    117:6 125:16,17
    131:13 151:15
    152:6
**banks** 26:10 38:8

85:11 90:2
**bank's** 76:14
**Bartlett** 9:10 80:14
**Bartner** 7:9 11:10
**base** 22:7 46:7 66:18
    67:6,13,15,21 76:9
    76:15 132:25
    133:3,8,9
**based** 16:25 19:19
    29:8 43:6 50:24
    52:19 92:23
    133:19 134:5,8
    137:8,10,17 138:2
    146:16 151:10
**basic** 31:6 73:14
**basically** 14:16
    19:11 28:17 48:20
**basis** 3:13 5:8 6:8
    19:7 28:5 30:11
    35:25 53:21,23
    54:12 55:7,10 63:7
    66:23 70:25
    101:21 122:13
    137:18 138:10
    143:7 144:17
    147:10 148:5
    152:24
**basket** 80:25 81:23
    84:20 93:8
**bear** 120:21
**bed** 122:11
**bee** 51:11
**began** 143:6
**beginning** 51:2 77:3
    78:12 89:23
**behalf** 80:14 103:7
    114:24 118:9
    121:18 133:5
    146:2
**belief** 24:9
**believe** 12:3 16:3
    18:16 41:25 42:2
    42:20 43:2,4,6
    45:6 49:4 51:2
    65:4 67:8 69:14
    74:6 79:11 86:25

87:5,6 92:9 94:3,6
    94:9 96:9,25 98:23
    100:13 112:17
    113:22 117:23
**believed** 131:21
**believes** 147:8 148:8
**benchmarked**
    132:23 133:10
**beneficial** 117:11
**benefit** 32:21 37:16
    37:17 39:12 61:23
    79:7 81:7 86:22
    152:23
**benefits** 128:24
**best** 62:25 88:6
    144:4 157:4
**bet** 101:6
**beyond** 23:5 93:25
    94:8
**Bienenstock** 9:20
    84:25 87:6,10,11
    90:12,17,20 91:3
    91:11,16,19,22
**Bienenstock's**
    105:21
**bilateral** 134:20
**billion** 44:6,15,21
    50:2 129:23
    130:25 131:3,7
    132:7,15,18,20
    134:4,7 137:19,22
    137:24,25 138:18
    139:7,9 148:9
**binder** 125:24
**bit** 62:10 86:21
**bi-motor** 140:8
**Blackberries** 51:10
    51:13 102:9,17
**Blackberry** 102:13
**black-line** 46:14,15
    57:22,23 118:22
    118:24
**black-lined** 28:9
    46:10 47:4,10
    150:17
**blatant** 113:20

**Bloomfield** 9:6
**board** 35:14 106:18
    127:17 143:8,13
    144:13 147:2
**BODMAN** 10:3
**book** 22:17 45:16,18
    138:3,19
**books** 22:17 137:9
**borrower** 32:7 36:7
    58:13 59:6,13
**borrowers** 40:2
**borrowing** 37:5 46:7
    66:18 67:6,13,15
    67:21 76:9,15
    137:3
**borrowings** 39:20
**Bosch** 121:18
    123:10
**Bowling** 1:18
**break** 103:10
**brief** 41:8 155:10
**briefly** 103:6
**Brilliant** 8:19 49:11
    56:23 61:12 63:22
    63:23,24 64:9,21
**Brilliant's** 54:22
    56:16 61:10 83:15
**bring** 77:7
**brings** 41:5
**broker** 21:5 24:7,16
**broker's** 24:6,19
**brought** 150:11
**bucket** 93:7 105:17
    139:5
**buckets** 69:17
**build** 137:17
**bundling** 72:3
**burden** 49:14 66:24
    151:17
**business** 5:18 17:18
    20:14,22 21:9,21
    31:13 37:17 59:14
    115:21,23 116:9
    120:15 128:9
    133:3 134:15
    135:14 136:11

137:4 138:10
142:6,24 146:18
147:17
**businesses** 95:9
128:22,23 134:23
152:8
**busy** 121:14
**Butler** 7:8 11:5,6,19
12:13,24 13:5 14:7
15:4,16,25 17:3
18:7,23 19:6,22
20:24 23:6,11
25:11,22 26:19
29:14 30:12,16
31:15,20 34:8
36:10 37:11,21,25
38:15,24 39:5,17
40:4,15 41:4,15,22
42:14,20 43:25
45:20 46:22 47:17
48:5,11 51:14,15
56:20 57:8,12,15
59:22 60:14,16
61:8,21 62:24
63:10,13,19,22
64:4 65:10 67:8,24
68:9,20 69:8 70:6
70:10,13 71:24
73:9,24 74:5 76:5
76:18 77:14,18,21
78:15 79:5,10,20
81:16 82:24 83:23
84:23 87:3,4,20
91:21 92:4 95:24
96:6,19,24 98:13
99:10,16,23 101:2
101:25 103:2
105:11 107:23
108:3,24 109:5,10
109:14 111:6,9
112:3,9,16,21
116:6 123:22
124:18 125:12
126:11,15,20
127:8 136:2 141:9
148:19 149:7

152:12 153:2,7,14
153:24 154:2,16
156:2
**Butler's** 19:20 99:5
**buzzing** 51:12

___

## C

**c** 3:18 5:13 6:13 7:2
11:2 24:11,13
48:19 59:24 81:15
**call** 33:8 45:7 54:17
55:10 98:9 124:22
126:23 127:3
**called** 16:12 20:2
55:3 127:12 136:4
**calls** 33:13
**candid** 106:7
**Cantor** 99:22
**cap** 60:6 110:9
**capacity** 87:16
**Capital** 145:9
**capped** 60:11
**card** 17:6,7,7,15,17
18:6,9
**cards** 18:11,12
**carefully** 113:18
130:2
**carved** 69:7
**carve-out** 67:5,11,20
68:4,11,15,24 69:5
103:15,20,25
**case** 1:4 4:20,22
12:17 14:19 23:25
29:16 30:4,23
34:23 35:8 38:5
45:3 50:11 55:17
56:8 60:19 64:14
67:4 77:3,6 86:11
97:25 102:23
106:5 113:22
118:11 124:7,8
129:22 134:22
136:21 148:5
150:13 152:7
153:2 155:18
**cases** 45:11 116:25

**cash** 3:14 4:12 5:9
6:9 31:23 33:19
34:18 35:4 42:10
66:11 78:22 81:6
94:19,24 95:15
97:9 98:22 99:7
128:19 138:8
142:14 152:18,22
**categories** 33:14
**cause** 22:23 69:15
69:20 85:4 99:13
**causes** 69:22 85:13
**caveats** 26:17
**CD** 102:14
**Center** 8:4 10:4
**certain** 2:3 4:20
12:21 21:3 43:5
62:20 88:2 89:7
93:15
**certainly** 42:2 71:21
82:16 90:8 99:21
100:5 107:4
**certify** 157:2,9
**challenge** 63:5
**challenges** 140:3
**chambers** 46:21
49:2 64:11 75:10
152:14
**Chamomile** 16:13
**chance** 117:22
149:23
**change** 14:14 29:24
57:15,19 66:17
76:16,19 78:17
116:8 122:23
**changed** 29:2,3,4,8
49:21 53:15 67:11
77:12
**changes** 26:17 27:5
28:13 30:13 46:12
47:18,24 66:8
74:21 92:16
106:14 149:12,15
**changing** 48:7
**channel** 110:6
**chapter** 53:10 60:19

97:25 128:5
134:22,24 136:21
143:25 144:2
**characterization**
81:18
**characterize** 74:17
**charge** 63:9 85:10
85:15
**charged** 62:17
**Charley** 97:2
**charter** 95:2,6,10,16
98:9
**Chase** 44:7 80:15
145:6 147:11
**check** 119:24
**chief** 127:5 141:12
141:16,17,20
142:17
**circuit** 24:18 29:17
**circumstances** 29:2
29:4,9 49:21 62:6
147:19 148:2
**Citibank** 131:19
145:8 147:12
**CitiCorp** 44:8
**CitiGroup** 44:12
**claim** 18:17 32:14
32:19,25 55:7,9,11
84:8,12 89:15,22
90:14,16 97:24
101:4,9 103:14,22
104:5,7 113:10
116:22,23,24
117:3 137:23,24
**claimant** 107:17
119:3 122:4
**claimants** 33:15,17
43:3 81:9 92:21
102:4 105:12,18
108:11 112:18,18
**claimed** 54:11 62:17
82:5
**claiming** 80:3
**claims** 2:23 15:5,6
54:8,13,18 55:15
55:24 56:5,6,7

59:7,9 78:21 80:7
80:23 85:11 88:21
89:7 90:10 91:5,9
97:21,22 98:2,25
99:7,9 116:11,22
124:22 135:9,10
139:11 151:18,19
**clarification** 77:22
83:24 89:8 105:21
107:5 123:21
**clarifications**
106:16
**clarified** 116:6
124:19
**clarify** 88:7 107:4
109:18 112:13
124:16
**clear** 21:4 24:16
78:5 93:12 95:17
108:4,13 109:11
109:13 117:16,18
121:23 150:8,24
**clearly** 31:12 86:3
**Cleary** 15:11
**clerk** 65:4
**client** 40:3 98:24
117:8
**clients** 54:22 61:10
83:16 98:15 105:7
**close** 149:5
**closely** 23:17,19
**code** 27:6 49:15 72:9
80:9 113:10,12
114:15,18 125:17
151:15
**collateral** 3:14 4:12
5:9 6:9 70:20 81:6
85:19 87:25 89:4
94:19 95:16 97:9
98:9,22 137:16,20
138:23 139:5,6
**collaterals** 94:24
**colleagues** 49:12
**COLT** 8:9
**come** 13:2 21:25
22:5 23:22 24:12

26:12 27:10 28:8
29:23 34:2 41:14
65:6 70:9 75:23
76:12,17,23 77:19
107:2,10,17,18
108:14 117:22
122:5
**comes** 35:3 63:11
124:9
**comfortable** 22:13
23:8 25:2
**coming** 27:17 87:13
107:7 116:20
122:17 124:7
**commence** 86:3
**commenced** 85:10
**comment** 85:6 87:23
**comments** 19:20
24:3 26:7 46:17
**commission** 24:8
126:7
**commissions** 21:5
24:10
**commit** 18:18
**commitment** 45:25
147:3
**committed** 44:6
149:17
**committee** 11:24
12:12,22,25 13:11
13:19,20,22,22
16:17,18 17:23
18:19 20:19 21:14
22:9,11,12 23:4,19
26:9 33:5 35:11
36:16,22 38:19
39:15 40:9,11,20
49:8 60:4 61:24
62:14 63:25 64:6
65:16,18 66:21
68:7 70:22,24 72:5
72:15 74:10,14
75:11 76:13,23
78:2,20 79:2,8
83:4,25 85:8 86:20
90:3 92:13 106:8

106:24 107:14
117:15 120:10
136:23 149:17,25
152:21,25 154:5
**committee's** 25:24
35:22 66:6 69:21
85:16
**committing** 146:14
**communicated** 50:6
**communicates** 55:4
**comp** 12:2,16
**companies** 2:4 29:19
37:14 128:20
134:12 136:16
**company** 6:21 22:6
27:15 30:5 36:5
38:12,22 45:10
47:9 49:14,16
55:12 63:25 80:3
106:24 114:25
132:8,21 134:11
135:12,14 136:20
136:24 139:21,22
139:24 140:4,10
140:15,24 142:9
142:16,19 143:12
143:22 144:4,6,7
144:13 145:6
146:2,13 147:11
147:24 153:23
**company's** 45:4
134:21 140:25
141:25 142:4,6,14
143:10,17 145:19
147:25
**comparative** 133:13
**Compensation** 5:22
11:21
**compensatory** 56:7
**competitive** 133:8
145:12
**complaint** 71:10
**complete** 13:24
21:22 49:23
150:20
**completed** 14:3

**completing** 13:12
**complex** 45:6
**complexities** 131:9
**complexity** 134:11
**complied** 43:8
**compliment** 118:13
**compromise** 83:9
84:20
**comptroller** 141:18
141:21 142:18
**concede** 105:24
**concept** 24:25 29:10
73:15 84:17
**concern** 24:19 35:3
40:2
**concerned** 53:2
137:18 145:25
146:16
**concluded** 145:13
156:7
**concludes** 156:3
**conclusion** 91:23,24
**concur** 92:2
**concurred** 52:8,9,17
52:22
**condition** 110:21
**conditions** 128:12
133:16 147:15
**conduct** 152:6,8
**conducted** 147:24
**Conference** 4:22
**confess** 99:12
**confidence** 134:16
**confirm** 61:12 74:18
83:2 91:23 121:19
**confirmed** 60:20
79:13,14
**conflict** 57:5
**conflicts** 57:3
**conform** 75:18
**conforming** 87:23
**confuse** 73:13
**confusion** 90:4
155:17
**connection** 17:19
49:18,23 56:18,21

60:5 68:4 69:3
70:21 77:12
135:11 136:20,24
142:10
**connections** 31:3
**consensual** 15:14
36:18 143:9
150:25
**consensus** 53:2,17
53:18
**consent** 59:2,4 76:22
97:10,12
**consented** 52:4
**consenting** 52:5
**consents** 61:5
**consider** 12:21
35:14 125:16
149:11
**consideration** 78:19
131:8 139:20
**considerations**
130:10
**considered** 131:12
143:8
**considering** 68:18
144:8,15
**consist** 137:22
**consistent** 28:14
29:16 30:3 34:10
69:4
**constructive** 41:25
**consult** 12:22
111:22
**Consultant** 136:6
**consultation** 144:11
**consulted** 131:16
**consulting** 127:25
143:20
**contacts** 35:4
**contained** 124:20
**contemplate** 36:14
**contemplated** 52:6
148:11
**contemplates** 29:2
**contest** 95:25
**contested** 41:7

**contesting** 121:12
**context** 26:7 115:16
**contingencies** 140:7
**contingency** 143:7
144:16 145:3
**continue** 6:18,19
16:7,11 17:6 28:2
28:6 58:19 115:25
**continued** 15:12
155:24
**continuing** 35:15
68:14 97:6
**contract** 50:25 53:5
54:2 55:13 58:9
**contracts** 59:19
**contrary** 50:17
58:23
**control** 32:25
**convenants** 66:19
**conversations** 94:15
**convinced** 152:2
**Coopers** 136:10
**copy** 68:5 153:24
**core** 90:25
**corp** 115:10
**Corporate** 125:13
**Corporation** 1:8 2:1
3:1 4:1 5:1 6:1 7:1
8:1 9:1 10:1 11:1,4
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1,22
33:1 34:1 35:1
36:1 37:1 38:1
39:1,13 40:1 41:1
41:21 42:1 43:1
44:1 45:1 46:1
47:1,9 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1

62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1,7
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1,9,13,15
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1 96:1
97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1,12
111:1 112:1 113:1
114:1 115:1 116:1
117:1 118:1 119:1
120:1 121:1,19
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1
131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1,19
142:1 143:1 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1,24
153:1 154:1 155:1
156:1 157:7
**correct** 52:16 56:20
63:13 68:25 70:10
70:17 71:25 74:2
79:5,20 82:16
112:9 122:14
157:3
**correcting** 121:6
**correctly** 75:13
121:25
**cost** 120:22 146:5,12
**costs** 53:25 54:13
72:25 73:5 84:10

**council** 68:7
**councils** 57:3
**counsel** 11:10 25:13
31:7 35:23 60:3
64:25,25 67:9
94:15 96:7 143:19
**counter** 91:14
**country** 134:13
**couple** 24:3 28:13
49:20 111:11
121:8
**course** 5:18 14:9
17:18 21:8 77:6
84:22 87:18
110:10 116:14
117:6 118:2 133:2
138:9 152:8
**court** 1:2 11:3,18
12:10,23 13:4,15
14:6 15:3,15,24
16:11,22 18:5,22
19:2,17 20:20
21:25 22:5,22 23:2
23:7,22 24:2,14
25:10,16 26:8,12
26:16 27:17 28:12
29:15,21 30:15
31:10,11,16 33:21
34:6,13 35:2 36:25
37:18,22 38:14,17
38:25 39:21,24
40:13,17 41:3,13
41:17,19,24 42:13
42:16,19 43:13,16
43:21 44:2,4,14,17
45:18,19,21 46:9
46:19 47:12,16,21
48:2,10 51:8 53:13
53:16 54:6 56:18
57:7,14,21 59:21
60:12,15 61:7,14
62:11 63:8,16,21
64:8,17 65:8 67:2
67:19,23 68:8,19
69:7,15 70:4,8,9
70:12 71:10,11,23

73:7,16 74:3 76:4
76:6,12 77:9,17,19
77:20 78:6 79:3,9
79:12,21 80:12,18
81:10,21 82:11,17
82:23 83:19 84:6
84:18 85:3 86:7,13
86:16 87:2,20 90:7
90:15,19,21 91:7
91:15,18,24 92:3,4
92:25 94:10,12,23
95:4,12 96:4,16,21
97:8,14,15,18 98:4
99:12 100:5
101:13,24 102:7
102:22 103:19
104:3,8,12 105:5
105:10 107:3,8,17
107:18,19 108:2,5
108:14,21 109:9
109:13 111:3,8,25
112:4,10,19,20
113:3,8,21 114:9
114:18,22 115:2
116:3,20 117:5
118:6 119:13,20
121:3,23 122:5,12
122:15 123:4,12
124:23 125:9,16
125:23 126:12,18
127:7 135:22
141:5 143:4
148:15,25 150:14
152:25 153:10,15
153:20 154:7,21
155:10 156:5
**courtroom** 57:25
63:2 92:8 99:25
105:14 126:25
**courts** 28:15
**Court's** 30:4 47:4
71:8 105:16
125:21
**covenants** 76:20,21
77:23 78:3
**cover** 82:20 90:11

95:20
**covered** 25:9 57:5
85:20 96:16
100:10
**covering** 86:13
**credit** 25:14 35:16
35:20 44:19 46:4
58:8,24 59:12 61:2
61:3 68:22,25 69:6
104:23 123:20
124:14 128:2,8,15
**creditor** 118:10
**creditors** 11:23
13:11 16:17 21:13
22:9 33:4 37:20
38:21 39:15 61:24
65:16,17 66:21
68:6 72:14 74:10
74:14 83:4 90:11
92:13 106:8
117:14 136:23
149:17
**criteria** 146:3,5
**critical** 128:3
**cross-examine**
43:23 135:23
141:6 148:16
**cross-reference**
62:20 63:17,20
**crumbling** 124:8
**culmination** 147:21
**current** 35:25 46:13
46:16
**currently** 69:11
138:19
**Curtis** 8:9 118:8
**cushion** 138:2 139:8
**customary** 128:20
**customer** 87:17
89:14 115:12
123:11 135:5
**customers** 88:10,12
88:22 89:11 91:5
134:17 135:8
140:9 142:23
146:17

**customer's** 88:20
**cut** 96:9

---

## D

**D** 1:24 11:2 59:25
**damages** 54:13,18
**data** 132:25 133:3,8
133:9
**database** 133:20
**date** 18:21 29:6,9
56:14,22 65:5
89:16 104:22
136:12 157:13
**dated** 155:16
**dates** 4:19 36:20
**David** 126:23
127:10
**day** 18:14 27:7 38:3
38:16 59:14 91:2
93:21 131:20
154:25
**days** 21:22 23:16
28:23 29:6 30:2
69:18 70:5,7
152:15
**day's** 17:18
**de** 19:14 21:3,6,9
**deadline** 29:7 48:25
**deal** 17:13 21:25
26:24 27:2 28:7
38:20 65:9,11
108:9 113:25
**dealing** 12:5 30:22
32:4 33:25 78:10
120:22 135:5,6,8
136:21 140:7
142:22 144:21
**deals** 16:5 119:19
**dealt** 32:2 44:24
82:15 121:10
**debate** 32:11
**debt** 37:23 38:6,7,12
39:3 50:3 51:18
54:10 56:19 59:10
60:22 76:12 79:25
111:4

**debtor** 1:10 23:7
25:6 35:15,16,18
50:14 59:25 61:17
85:18 87:16 88:5
89:25 97:23
100:16 118:13
120:6,10 122:7
123:20 125:15
155:12
**debtors** 3:4,11,20
4:11 5:6,17 6:6,17
13:8,21 18:5 19:4
22:10 23:18 25:14
25:23 28:3 29:25
31:13 36:21 42:2
45:24 48:12,15,17
48:19,22 49:3,6
50:13,18,23,23
52:21 53:4,7 54:4
57:21 61:10 62:15
66:19 68:2 69:23
71:4,7 74:8 80:21
80:25 81:24 82:3
86:9 89:11 91:25
92:15,18,20 93:18
94:8,15 95:15 96:8
97:8 98:14,17
100:9 101:20
110:21 117:14,22
120:23 121:5
124:21 125:22
126:3,17,25 127:5
127:9,15,17,24
128:4,5,9,16,17
129:3,10,12,14,25
130:7,8,13 131:2,4
131:8 133:23,24
134:2 135:18,18
137:7,9,14,15
138:9,13,19
142:24 143:5
144:18 145:14,15
147:4,6,7,18 148:6
148:7,11,21
149:25 151:16,22
152:4 155:4

**debtor's** 20:14,22
32:9 37:4 109:7
129:12
**debtor-in-possessi...**
145:10
**decision** 52:10
117:15
**decisions** 35:7,24
**decline** 36:6
**deemed** 52:3,9,22
53:18 71:2 74:14
**default** 54:11 55:7
56:5 59:8 68:14
**defined** 110:13
**definition** 115:5
**delete** 85:25
**delicately** 106:15
**delivers** 59:2
**delivery** 59:20
**Delphi** 1:8 2:1 3:1
4:1 5:1 6:1 7:1 8:1
9:1 10:1 11:1,4
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1
33:1 34:1 35:1
36:1 37:1 38:1
39:1 40:1 41:1,20
42:1 43:1 44:1
45:1 46:1 47:1
48:1 49:1 50:1
51:1 52:1 53:1
54:1 55:1 56:1
57:1 58:1 59:1
60:1 61:1 62:1
63:1 64:1 65:1
66:1 67:1 68:1
69:1 70:1 71:1
72:1 73:1 74:1
75:1 76:1 77:1
78:1 79:1 80:1
81:1 82:1 83:1

84:1 85:1 86:1
87:1 88:1 89:1
90:1 91:1,13 92:1
93:1 94:1 95:1
96:1 97:1 98:1
99:1 100:1 101:1
102:1 103:1 104:1
105:1 106:1 107:1
108:1 109:1 110:1
111:1 112:1 113:1
114:1 115:1 116:1
116:9 117:1 118:1
119:1 120:1 121:1
122:1 123:1,11
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1,18
135:1 136:1 137:1
138:1,16 139:1
140:1 141:1,13,18
141:19,22 142:1
143:1,15 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1 153:1
154:1 155:1 156:1
157:7
**delphidocket.com**
58:3
**demand** 71:6
**deny** 101:13
**dependency** 60:18
**depending** 34:2
**depends** 37:19
**deposit** 27:14
**deposits** 27:3
**describe** 43:10
125:6 141:22
143:6
**described** 73:9
83:23 84:8 87:20
89:6 125:4
**describing** 145:19
**designed** 147:25
**despite** 79:14

**detail** 38:20 54:4
**determination** 30:2
52:18 130:5
**determine** 70:24
84:5 86:21 116:21
127:25
**determined** 20:15
33:3 53:13 88:6
**determining** 2:10,17
130:10
**Detroit** 10:5
**developed** 142:15
**developing** 136:15
**de-plaint** 122:4
**difference** 53:20
**different** 28:15,16
52:12,14 78:13
82:5 121:9,11
130:4
**differential** 56:3
**differently** 85:5
**difficult** 36:13
**digital** 102:10 108:7
108:8,20 109:3
112:5 113:2,7,14
114:7 117:10,19
**diminishes** 110:5
**diminution** 89:21,22
90:11,13
**dip** 3:21 21:14 33:4
33:12,12,15,22,25
41:6 42:5,23 44:6
44:13 45:25 49:24
60:25 66:8 67:9,15
68:2 77:25 78:24
79:19 80:17,18
81:4,7 84:16 88:18
90:23 92:10 96:7
96:17 100:19
101:5 103:14
104:17,23 111:2,4
111:17,18 113:25
115:16 123:15
127:20 128:2,7,16
133:4,7,16,21,24
135:15 137:24

142:12 143:3
144:16 148:4,5
150:25 151:11,18
153:12
**dipping** 85:7 112:8
**DIPs** 133:13,17
**direct** 106:6
**directed** 51:22
144:14
**direction** 51:4 145:5
**directly** 19:8 106:9
**director** 127:11
136:7
**directors** 127:17
143:13 144:13
147:2
**disagreement** 75:22
150:9
**Discontinuing** 2:7
2:15
**discover** 29:11,20
**discovered** 82:12
**discreet** 47:19 50:9
**discretion** 124:21
**discussed** 54:3 60:7
130:3 149:13
**discussing** 88:5
**discussion** 32:11
39:3 99:20 103:10
121:22
**discussions** 11:23
14:10 99:21
**disposition** 21:9
152:19
**dispute** 26:25 27:12
106:22 107:22
108:16,25
**distress** 136:17
**distributed** 57:24
**District** 1:3 15:21
**docket** 11:22 47:13
**document** 137:6,8
**documented** 60:2
**documents** 45:23
46:19 47:21 83:14
125:25 126:5

**doing** 75:14 116:9
**dollar** 22:17 25:21
  44:15,16 58:13
  80:25 131:7
  132:18 134:4
  137:23,24,25
  138:17,18 139:7
**dollars** 22:5,14,19
  26:5 37:8 44:6,18
  44:21 50:2 53:23
  89:16 130:25
  132:7,13 134:7
  137:19 139:9
**donÆt** 67:8
**Dorchester** 145:9
**double** 84:16 85:7
**doubt** 117:8 151:19
**Doug** 11:10
**DOUGLAS** 7:9
**draft** 68:23
**drafted** 27:4 72:14
  98:23 105:9
**drafting** 73:25 75:15
**DRAIN** 1:24
**draw** 151:25
**driven** 22:25
**Drye** 7:20 39:11
**due** 100:15 108:6,8
  108:20 109:3
  112:5 113:2,6,14
  114:7 117:9,18
  152:8
**duper** 73:8 84:7
**Duraswitch** 3:3
  30:20 31:7
**duties** 142:2

———————
**E**
**e** 1:22,22 7:2,2 10:7
  11:2,2 14:21
**earlier** 30:5 83:13
  111:10 149:8
**early** 143:6 144:25
**easier** 38:18 154:17
**easy** 121:9 151:6
**eat** 85:21

**economic** 132:2
**economics** 130:18
  132:23,24 133:9
  139:15
**effect** 91:4 109:8
  155:5
**efficient** 40:22
**efforts** 40:8 118:14
**eight/nine** 58:6
**either** 20:18 25:9
  72:3 77:5 80:24
  81:4 86:21 100:11
  elections 155:15
**electrical** 31:2
**element** 46:7
**elements** 50:9 130:6
**embodies** 150:22
**emergency** 30:8
**emphasis** 139:16
**employed** 136:5
  157:9
**employees** 17:14,17
**enforceable** 53:8
**engaged** 143:21
**ensure** 146:13
**enter** 28:4 49:6
  50:19
**entered** 13:11 30:24
  32:20 54:19 66:7
**enterprise** 37:16
  142:22
**entire** 61:9
**entities** 32:9 33:2
  38:13 134:21
**entitled** 55:16
**entity** 16:12 32:24
**entry** 105:8 106:11
**equal** 88:25
**equipment** 20:8
  138:4
**equity** 2:24 137:25
**especially** 115:10
**ESQ** 7:8,9,10,18,24
  8:7,13,19 9:8,14
  9:20 10:7,11,14,17
**essential** 21:4

136:22 142:23
  146:17
**essentially** 14:12
  17:10 21:6 26:24
  27:13 49:13 52:7
  52:24 54:19,25
  84:9 130:6
**established** 26:2
  36:17
**Establishing** 2:9,17
  2:22 4:19 5:21
**estate** 72:25 84:9,15
  88:16,24 93:24
**Esther** 6:23 157:2
  157:17
**Euro** 58:13
**evaluate** 129:4
**evaluating** 129:24
  143:14,23 144:21
  146:4
**evaluation** 126:4
  138:4,6,7
**evaluations** 137:15
**evening** 47:6 149:19
**event** 23:20 32:5
  68:3,11,12,14
  77:16 90:21 119:2
  119:9
**events** 66:22
**eventually** 38:4
  147:12
**Everybody** 64:24
**evidence** 125:18
  137:7,13 145:14
  148:23 149:4
**evidenced** 45:23
  143:4
**evidentiary** 42:18
  43:14 45:15
  125:14 148:20
  149:5
**evolved** 27:8 32:17
**exactly** 40:24 91:22
**examination** 137:9
  137:11 140:18
**examined** 138:12

**example** 22:15 62:2
  114:11 120:8
**exceed** 60:11
**exceeds** 14:17
**excellent** 26:2
**exception** 103:25
  114:16
**excess** 25:7 81:3
  134:14 139:24
**Exchange** 126:6
**excludes** 104:16
**exclusive** 30:25
**excuse** 72:8
**executed** 146:19
**executes** 59:2
**executing** 131:9
**execution** 130:15,20
  131:22 139:14
  146:7
**exercise** 20:14
  109:20 115:7,19
  119:3 124:25
**exercised** 117:9
  124:2
**exhaustive** 147:23
**exhibit** 45:18 46:2,3
  46:14 47:3 48:12
  48:16,17,18,19
**exhibits** 43:15 45:15
  54:5 125:22
  137:14 143:5
  148:23
**existence** 114:14
  125:19
**existing** 59:19 72:12
**exists** 33:18
**expect** 14:3 35:18,21
**expectation** 93:22
**expedient** 122:12
**expedite** 116:19
**expense** 19:9 103:14
**expenses** 5:23 17:19
  56:12,15,17 60:3
  82:8 84:15
**experience** 131:12
  134:10 136:14

**experiencing** 136:16
**expert** 59:18
**expired** 50:25
**expires** 53:5
**explained** 18:13
**explicit** 93:19,25
**expose** 79:19
**exposure** 36:5
**extend** 35:16 69:20
  123:19 151:3
**extended** 41:23
  69:14,18
**extent** 66:16 67:25
  68:10 75:21 79:18
  80:6 84:13 86:20
  99:6 109:24
  112:13 113:8
  150:8
**extra** 111:11
**extraordinary** 106:3
**extremely** 133:10
  135:12 146:15
**e-mail** 102:14
  154:11,12,15

**F**

**F** 1:22
**facilitated** 31:2
**facilities** 17:15
  19:13 44:23
  129:18,18,19
  131:7 133:7,21,25
**facility** 25:14 44:13
  49:7 55:9 128:16
  130:11,17,19
  131:10,23,24
  132:6,24 134:4
  135:15,17 139:14
  139:17,22 146:6,7
  146:12 148:9
  151:23 152:3
**fact** 12:14 18:9
  37:13 38:2,21
  53:10,15 93:16
  96:12 106:20
  107:15 108:10

116:23 130:12
  132:18 134:3,13
  139:18 151:7,22
  155:12
**factor** 140:16
**factors** 122:13
  130:15
**fair** 133:17 147:18
**faith** 128:14 147:10
  151:13
**fall** 13:19
**familiar** 142:13,18
  145:20 147:14
**familiarity** 127:15
**far** 34:8 92:16
**fast** 71:14,18
**favorably** 133:11
**February** 157:14
**Fed** 3:10,17 4:9,17
  5:5,12 6:5,12,16
**federal** 130:24
  131:13
**Fed.R** 2:21
**fee** 12:12,25 15:19
  57:10
**feeling** 146:12
**feels** 26:10
**fees** 56:16,25 58:8
  60:3,11,13
**felt** 87:25
**fifth** 8:4 9:17 105:4
**fifty-five** 75:15
**Fifty-six** 52:16
**fight** 56:4
**file** 14:19 70:25 71:9
  72:22 97:4 122:5
  129:8
**filed** 11:14 17:24
  20:18 27:21 31:24
  44:3 45:12 46:8
  47:2 48:14,22,24
  49:7,12,19 65:16
  65:18 69:19 71:13
  71:17 86:24 92:15
  93:11 103:8
**filing** 4:6 65:3

**filings** 126:7
**final** 2:5,12 3:17 4:7
  5:12 6:12 12:4
  14:4,23 15:6,14,22
  26:22,23 28:4,21
  31:22 44:3 46:25
  74:12,23 125:25
  132:5 152:24
**finally** 15:16 110:22
  134:17
**finance** 6:19,21 16:8
**financial** 22:9 23:13
  23:16 25:23,25
  35:17,22 44:10
  46:25 66:18 76:20
  78:3 85:16 86:5
  110:21 127:18,24
  129:15,25 136:17
  141:17 142:5,6
  143:12,17 145:7
  146:14
**financing** 3:12,21
  4:11 5:7 6:7 16:6
  16:14 33:4,12,23
  33:25 38:10 41:7
  42:6,23 44:7,20
  46:2,9 47:24 72:13
  78:24 101:20
  103:12 106:2
  114:2 115:16
  125:25 126:2,5
  127:20 129:11
  130:13,22 131:3
  140:24 142:12,21
  143:3,24 144:4,16
  145:11 147:6,15
  147:20,24 148:5
  150:4,15,25
**financings** 75:5
  133:4
**find** 110:7 151:10,16
**finding** 129:7
**findings** 64:16
**finds** 117:5
**fine** 15:15 31:14
  64:17 78:7 79:4

81:11 109:9
  153:15
**firm** 11:7 15:11
  56:17 57:2 118:8
**first** 3:23 11:15,20
  12:16 13:19 16:4
  18:13 27:7 32:12
  46:3 50:15 51:5
  59:14 66:8 72:23
  73:6 80:2 88:12,13
  88:19 93:4,21
  106:19,23 108:18
  113:6 116:5
  117:16 118:17
  120:14 121:4
  125:21 126:22
  127:13 143:15
  149:2
**five** 21:21 136:10
  137:25
**fix** 120:2
**flag** 36:8
**flex** 77:15
**flexibility** 144:8
**Flextronics** 118:9
**Flom** 7:4 11:8
**flow** 34:18
**flyspeck** 149:23
**focus** 39:25 140:14
  146:11
**focused** 40:19 80:16
  105:23
**focuses** 40:21
  146:21
**Foley** 20:12
**follow** 11:17 91:22
  124:4
**followed** 108:17
**following** 13:16
  58:12,21
**follows** 52:24 66:3
  127:13
**Ford** 114:24 153:23
**foregoing** 157:3
**foreign** 138:5
**forget** 96:23

**form** 11:25 12:4,9
14:12,23 28:9 31:8
46:13 47:10 59:3
148:5 150:9
**former** 137:2
**formulation** 137:2,3
**forth** 20:11 48:13
60:20 78:22 94:3
115:18 119:6,8
120:19 123:20
129:10 147:3
150:16,23 154:10
**Fortune** 134:12
**fortunes** 36:7
**forward** 44:5 45:3
45:10 63:7 123:9
134:5 147:8
150:20 152:9,16
**found** 86:2
**four** 7:5 118:12
129:5 130:24
131:3,7 132:15
134:4
**Fourth** 68:9 110:13
**frame** 30:7
**frankly** 93:20
**free** 21:3 29:22
**frequently** 117:4
**FTI** 25:23 127:4,25
136:5,18 140:20
143:20
**FTI's** 136:7
**full** 13:21 36:21 80:3
119:9
**fully** 61:11 88:20
93:5
**fund** 73:2
**fundamental** 56:9
**further** 12:21 23:2
47:5 49:16 65:5
80:5 116:6 151:15
157:9
**futile** 71:6
**future** 29:12,21

**G**

**G** 11:2
**gating** 130:6
**GE** 145:9
**general** 43:10 47:8
73:17 85:2 87:8,12
87:14 88:10 89:9
91:12 92:14 96:17
110:12 128:2
147:14
**generally** 19:3,4
83:17 114:19
146:9
**generate** 94:24
**generated** 12:17
94:19 95:16 132:6
**generating** 73:2
**getting** 93:6 97:24
112:7 152:9
**GE's** 64:25
**give** 24:4 25:13
50:20 66:19,20
99:13 101:8
108:10 123:23
124:12 144:7
**given** 13:25 22:6,20
24:17 27:5 53:10
65:5 69:23 83:9
93:13 100:8 120:9
139:25 149:8
**gives** 24:12 29:25
67:16
**giving** 101:4 122:16
122:21
**glitch** 73:25
**global** 44:12 134:23
145:7
**globally** 135:3
142:20
**go** 14:20 18:10 19:14
19:16 24:14 25:10
31:4 34:24 36:19
43:7 51:13 58:4
59:21 63:6 64:24
74:3 75:3 104:14
106:23,25,25
107:21 117:21

120:13 121:11
122:9 154:20
**goes** 34:9 57:22 69:9
125:3 153:20
**going** 12:5 14:13,14
18:15 22:18 30:10
33:24 45:3 50:18
51:8 58:18 63:12
63:14 66:17 69:16
70:17 76:16 84:14
86:3 87:21 92:25
101:7,13 102:7
104:14,15 105:3
115:17 120:21
121:8 122:18,19
122:20 123:9
137:18 139:2
147:8
**good** 11:5 18:14
23:14 26:14 34:17
39:7,10 87:10
128:14 147:10
151:13
**Goodwin** 8:15 49:10
63:24 92:11
**Gordon** 8:7 121:17
**Gotshal** 9:16 87:12
**governed** 14:22
**grace** 100:18
**Grand** 8:5
**grant** 6:19 74:21
75:2 107:11
**granted** 38:9 70:22
75:6 97:6,22
**granting** 3:15,16
4:13 5:9,11 6:9,11
96:17
**grants** 34:24 90:8
**great** 38:20
**greater** 22:3,4 80:22
**Green** 1:18
**group** 32:25 36:21
44:10 49:9,10 50:7
50:8,20,22 52:8,17
53:3 56:16 60:8
92:11,12

**groups** 126:3
**guarantee** 46:5
**Guaranty** 32:22
39:12 79:7 152:23
**guess** 35:13,17 46:21
85:25 99:5 102:22
116:3 122:24
124:4,13

**H**

**half** 53:22 85:22
130:24 132:7,17
132:19 134:4,7
137:22
**happen** 32:5 91:2
117:20
**happens** 35:8
**happy** 34:25 64:24
83:17 153:8
**hear** 24:4 33:22 77:5
102:16
**heard** 15:21 16:24
19:18 25:18 31:17
80:11 82:2 84:25
95:23 99:16 100:4
103:3
**hearing** 2:23 3:17,23
3:24 4:19 5:12
6:12 11:12,13,15
12:8,19 13:3 15:2
15:6,12,22,23
16:24 26:22 27:5
30:2,6,10 31:17,22
32:3,12 41:7,10
42:15 44:3,18
46:12 54:23 56:14
56:22 64:16 77:8
79:3 87:14 93:21
112:14 149:3,6
150:18 152:16
**hearings** 27:7
**heart** 43:7 121:11
**hectic** 64:13
**held** 13:17,18 47:12
59:16 136:11
**help** 15:8 42:3 65:21

112:13
**helpful** 112:22
124:17
**helping** 144:3
**hereinafter** 119:6
**hereof** 29:7,9
**he'll** 76:7
**higher** 33:10
**highlights** 101:16
**Hillco** 138:14
**Hills** 9:6
**hired** 57:2
**historical** 133:21
138:10
**history** 130:23
**hit** 45:5
**hitter** 122:25
**hoc** 49:8 60:4 63:25
**hold** 81:6 151:20
**holder** 21:15 55:6,15
55:22
**holders** 42:4 51:17
51:21 53:19 54:10
80:22 106:5
**hole** 58:21
**HON** 1:24
**honor** 11:5,14,19
12:6,13,25 13:5,14
14:7,25 15:4,17,25
16:10,11,20 17:4,9
17:20,25 18:7,13
19:6,23,23 20:13
20:25,25 23:12
25:12,19 26:20
27:4,19 28:10
30:13,16,21 31:6
31:21,21 32:10
33:21 34:7,24
36:10,16 37:12
38:2 39:5,7,7,11
39:13 40:4,25 41:4
41:8,16,22 42:14
43:18,25 45:5,11
45:14,20 46:22
47:22 48:5,11
51:15 53:20 54:3

56:23 57:16 60:8
60:14,17 61:8,21
62:25 63:14,20,24
64:3,6,9,10,22
65:10 66:12,25
67:24 68:10,17,20
69:8 70:11,13,20
71:22,24 73:10,25
74:5,20,24,25 75:3
75:4,20 76:18
77:16,21 78:15,19
79:10 80:10,16
81:13 82:10,16,22
82:24 83:6,20
84:23 85:25 86:19
87:4,13 88:10
91:20 92:5 93:20
94:13 96:25 97:3
97:16 98:13 99:4
100:3,12 101:2,12
101:25 102:18
103:5 104:7,10
105:7,15,18,22,24
106:19 107:10,11
107:25 109:5,14
111:7,9,21 112:3
112:16,21 113:16
114:3,23 115:3
118:7,18,22 120:3
121:18 122:14
123:3 124:3 125:8
125:14 126:11,15
126:20 127:2,8
133:14 135:19
136:2 139:11
141:3,9 147:12
148:12,19 149:7
149:11 150:3,11
152:12,16,21
153:14,18 154:4
155:20 156:2
**honoring** 6:18 16:7
**Honor's** 11:16 26:7
33:24 93:22 98:21
**hope** 34:21 35:20
41:24 65:9 71:25

86:11,18
**hopefully** 41:12
91:17
**hope's** 86:17
**hoping** 87:17
**horizontal** 135:2
**HSBC** 17:5,8,22
**hundred** 22:16
**hung** 155:6
**hurt** 38:22
**hypothetically**
89:14

**I**
**id** 100:22
**idea** 73:14
**identify** 112:23
129:9
**II** 2:9,16 3:13 4:12
4:19 5:8 6:8 78:8
78:10
**III** 3:14 4:12,21 5:9
6:9 58:6
**Iksind** 81:24
**imagine** 23:24
**immediate** 106:10
**immediately** 64:23
68:6
**impact** 67:21
**impacted** 96:14 99:2
**imperative** 115:24
**implementing**
136:15
**implicate** 72:7 93:14
**implicated** 65:24
78:3
**implication** 88:4
**import** 103:24
**important** 74:22
90:5 91:7 135:13
140:16 154:24
**importantly** 27:24
**improper** 73:22
**improvement**
136:15
**inadvertently** 73:18

**inclined** 150:4
**include** 24:6 73:20
**included** 125:10
130:15 134:2
150:17
**includes** 44:14 46:6
94:18 112:11
**including** 45:2 56:5
58:12 59:10 83:10
127:24 137:12
142:11 145:8
**inclusion** 115:4
**inconsistency** 68:22
**incorporate** 151:24
**incorrect** 52:15 69:2
**increase** 36:5
**incremental** 54:12
**incurred** 56:15
**indebtedness** 55:19
**indicate** 75:5 87:7
**indicated** 126:16
133:18 149:14
**indiminution** 84:12
**indiscerible** 82:7
**indiscernible** 100:23
104:25 108:6,8,19
109:3 112:5,25
113:6,14 114:7
117:2,9,18
**individual** 107:16
**Industries** 3:4 30:21
**industry** 128:21
**inform** 50:22 53:3
**information** 35:14
39:19 52:14 65:19
66:23
**informed** 35:23
43:12 59:5
**Initial** 4:22
**initially** 146:11
**inlay** 117:13
**inner** 12:2,15 37:14
**input** 117:14
**insert** 58:5,17,21
60:17,17 81:15
**insertion** 58:12

95:18
**inside** 144:2
**insider** 24:24
**insiders** 23:10
**insofar** 52:25
**instance** 117:16
**institutions** 44:10
  127:22 129:6,15
  129:16,20 130:4
  131:21 145:8
**instruct** 154:13
**instruction** 50:17
**instrument** 55:14
**insufficient** 88:19
**insurance** 6:18,20
  16:6,8,14
**integral** 25:4
**intend** 14:25 149:12
  154:22
**intended** 15:8 26:11
  50:22 89:24,25
  101:7 107:3,7
  116:8
**intent** 123:3
**intention** 75:17
**intentional** 73:23
**intercompany** 32:6
  35:5 36:7 39:20
  66:10 78:21
  153:12
**interest** 6:20 45:8
  50:24 52:20 53:25
  54:2,11 55:8 56:6
  59:8,12 60:10
  61:18 62:17 70:16
  71:5,15 72:10,19
  72:22 73:11 79:19
  81:18 82:4,13,20
  86:10 87:25 89:12
  93:9,12 105:2
  106:2 122:7
  124:24 128:25
  151:8
**interested** 21:17
**interests** 65:23
  70:19 73:4

**interim** 2:4,12 3:16
  5:11,22 6:11 11:21
  13:10 26:23 28:20
  32:3 44:17 47:4
  141:16
**interlinks** 55:3
**internet-based** 55:3
**interrupt** 51:9 67:2
  87:3
**interrupted** 51:12
**interrupting** 61:16
**intervening** 73:4
**introduce** 126:22
**inures** 37:16
**inventory** 138:6
**investigation** 86:5
**investigations** 85:10
**investigatory** 69:9
  70:21
**investment** 85:14,21
  126:25 127:19
  130:9 143:18
**inviting** 75:14
**Invoices** 2:8,16
**involve** 24:24
  134:20
**involved** 20:7 21:18
  57:11 95:11
  134:22 139:3
  140:16 141:23
  142:25 145:18,24
  151:4
**involvement** 146:16
**involves** 54:21
**involving** 104:20
  143:9
**irrespective** 110:20
  125:19
**issue** 27:14 33:6,9
  33:17 34:16 37:24
  39:2 40:18 49:5
  52:12 72:2,3 75:6
  76:13 80:20,20
  96:6,8,11 99:14
  101:18 104:16
  105:14 108:17

115:4 124:15
**issued** 144:18
**issues** 27:16 33:25
  41:11 42:22 43:3,5
  43:5,9 45:2,7
  47:20 48:8 51:5
  53:12 56:24 71:19
  76:21 78:11 81:23
  83:10 84:21 92:6,9
  94:17 120:14
  130:16,16,18
  140:12 146:9
  151:5
**issuing** 18:11
**item** 11:20,20 13:7
  14:8,8,10 16:5
  26:20 65:11 67:25
  69:9 96:2 105:16
  109:15
**items** 13:6,6 20:8,10
  49:20 54:3 138:23
  139:13
**it'd** 126:16
**it'll** 108:10
**IV** 3:16 5:11 6:11
  58:20 104:20

---

**J**

**J** 7:11 8:7,13
**Jack** 11:6
**jbutler@skadden....**
  154:19
**JOEL** 10:11
**John** 7:8 127:6
  141:11
**joined** 141:19
**joint** 103:8
**JP** 44:7,11 80:14
  131:18 145:6
  147:11
**JR** 7:8
**JUDD** 8:3
**Judge** 1:25 86:18
**judgment** 20:15,22
  31:13 77:4 135:13
  147:5,16,17

**July** 141:20
**juniored** 33:14

---

**K**

**Kayalyn** 7:10 11:9
**keep** 91:8 155:14
**KELLEY** 7:20
**Kelly** 39:11
**Ken** 80:13 83:20
**KENNETH** 9:14
**kept** 35:11,23
**key** 139:13
**kids** 120:2
**kind** 19:15 22:20
  27:3 34:22 43:9
  55:11 73:3 101:8
  112:14
**kinds** 56:6
**king** 63:9 127:3,4
  136:3,4,13 137:5
  137:16 138:11,22
  139:11,15 140:13
  141:6
**King's** 139:18,23
  141:3
**know** 12:12 22:14
  22:16 28:15 35:13
  35:24 36:16 37:7
  37:13,19 40:5,18
  41:11 43:17 57:2
  60:10 62:5 65:3,5
  65:20 67:3 71:19
  73:17 76:25 86:8
  92:7 98:2 101:10
  107:16 114:12
  120:18,18 121:8
  122:19 149:15
  152:2,7,10 153:7
**known** 21:14,16
**knows** 44:2 120:11

---

**L**

**labor** 59:18
**laid** 48:20 80:6
  96:22
**language** 25:2 32:22
  39:3 54:24 68:24

69:5 79:6 80:16
81:16 87:22,24
93:17 94:4,8 96:17
98:14 103:12
104:14,17,19
105:2 106:12,14
107:5 109:8 114:5
149:20 153:11,18
155:7,11,14
**large** 36:4 139:21
151:23
**largest** 118:10
130:21,22 131:11
**lastly** 24:20
**late** 47:6
**LATHAM** 7:13
**law** 11:7 104:24
**lawyer** 62:25 117:7
**lawyers** 116:24
**LB** 97:25
**lease** 20:2,5,7,16
95:21 98:7,12
100:8,14,14,24
**leased** 98:11
**leases** 93:14,23 94:3
95:8 98:7,10,18
100:11,13
**leave** 65:2 120:23
124:2
**leaves** 66:10 92:17
92:20 124:5
**left** 85:17 149:22
155:4
**legacy** 144:21
**legal** 60:13 143:19
152:7
**lender** 32:7 36:6
58:25 59:17 60:22
61:5 96:18 111:4
124:6,9 137:23,24
**lenders** 3:16 5:11
6:11 21:14 33:12
33:15,16 47:8 49:9
51:4 55:5 60:5
62:18 64:2 67:10
67:15 68:3 69:11

70:3 72:6,19 77:25
81:8,8 82:6 83:15
84:3 88:18,25 89:2
92:10 96:7 100:2
103:14 104:18
111:2,17 113:6
123:16 127:21
136:25 145:17,22
**lending** 35:7 36:9
49:25 127:22
**length** 22:25 23:9
128:13 151:12
**lengthy** 106:3
**lessor** 20:18 93:10
**lest** 90:3
**letter** 45:25 58:8
90:9 147:3 152:10
152:11 155:5
**letters** 44:19
**let's** 38:25 63:10
96:4 111:17 112:6
**level** 22:8 121:10,11
**levels** 121:9
**Lexington** 8:16 9:11
**liabilities** 144:22
**liability** 32:25
**LIBOR** 52:19,19
55:23,25 59:19
61:16
**LIBOR-based** 53:4
**license** 3:6 30:20,23
30:25
**lien** 21:15 32:19,24
33:3,9 34:17,24
39:2 88:12,16,19
92:21 94:21 96:13
96:18 104:2,4
**liens** 21:4 34:11 38:7
38:9 78:22 85:11
88:23,23,25 89:8
89:18,19,19 95:20
96:22 97:6 103:9
103:16 104:21
**lies** 53:12
**lieu** 61:23
**lifting** 90:25

**light** 149:2 152:19
155:11
**likelihood** 30:6
**limit** 124:21,23
**limitation** 22:3
**limited** 76:10 85:8
**line** 29:5 31:6 58:15
85:24 101:5 105:4
120:14 125:10
**lines** 58:6
**liquidation** 138:21
139:2,4
**liquidity** 130:17
132:8,20 134:8
139:25 140:11
**list** 74:4
**listed** 49:3 73:19
**litany** 31:4
**literally** 119:17
**litigation** 86:3
**little** 51:11 62:9
78:12 85:5 113:4
118:21
**live** 43:18 50:24
**LLP** 7:4,13,20 8:3,9
8:15 9:10,16 10:3
11:8
**loan** 38:22 44:15,22
46:5 47:23 48:6
49:25 54:9,15,16
55:20 153:12
**loans** 59:16 80:7
112:2 132:12
**Local** 4:23
**located** 135:5
**locked** 92:19
**log** 29:16
**long** 94:15
**longer** 20:4,9 52:18
78:25
**longest** 105:25
**look** 37:14 38:5
78:12 82:18 85:11
99:14 149:16
152:9
**looked** 85:4

**looking** 81:14 86:16
118:21 150:21
**looks** 31:14
**losing** 62:12
**loss** 151:15
**lot** 29:3 37:22 63:9
83:16 84:15
121:20
**lots** 98:17
**louder** 113:4
**lower** 24:8 131:22
**lunch** 41:24

_____

**M**

**machinery** 20:8
**maintain** 128:18,19
134:15
**maintained** 133:22
**maintains** 133:3
134:25
**major** 106:4 129:5
**majority** 37:15 38:4
38:6,11 42:24
92:22
**making** 74:19 76:19
108:13 146:18
**Mallet** 118:8
**MALLET-PROV...**
8:9
**manage** 124:14
**management** 4:20
30:4 31:23 33:19
35:4 37:4 42:11
66:11 78:23 129:3
131:16 144:12
147:2 152:18,22
**managers** 131:17
**managing** 98:10
127:11 136:6
**Manges** 9:16 87:12
**manner** 45:4,9
**Marafioti** 7:10 11:9
**March** 36:20 115:8
141:15
**Mares** 10:17 94:6,9
94:13,14 95:2,5,13

96:5 97:3,13,16,19
98:6 99:3,10,17,19
100:12 101:3,22
**Mares's** 98:15,24
**margin** 56:25 58:14
59:15 63:6
**Mark** 7:24 39:11
**marked** 45:24
**market** 21:5 22:25
24:9
**marketplace** 133:12
**Markets** 44:13
**Martin** 9:20 87:11
**massive** 81:2
**master** 20:5,6
**match** 91:17
**material** 76:11,19
**materially** 29:8
53:15 76:17
**materials** 126:4
145:20
**matter** 1:6 16:4,24
17:4,4,22 19:23,24
20:25 30:17,17
31:21 33:22 41:5,6
42:7,7,9,10 51:6
56:21 102:6
152:17,19 153:4
157:6
**matters** 12:21 13:25
16:2,9 27:11 69:10
69:12 74:11 93:15
105:19 109:22
113:23,25 137:4
**MATZ** 7:11
**Maureen** 67:14
111:21
**Max** 9:8 103:6
**maximum** 131:4
144:7
**MCDOWAL** 112:25
113:5,13 114:21
**MCDOWEL** 114:16
**MCDOWELL** 10:7
114:3
**McGraff** 96:23

**Meagher** 7:4 11:8
**mean** 26:6 37:6
38:18 76:10
113:17 114:19
125:4 154:3
**meaning** 89:13
**means** 107:9 116:7
**meant** 52:7
**mechanism** 34:19
79:23 90:24
**mechanisms** 109:2
**mediation** 106:25
118:15 120:8,20
122:10,22
**meet** 130:12 140:25
144:6 147:7,25
**meeting** 13:17,19
36:20
**meetings** 36:18
**member** 39:14
**members** 50:6,8,20
51:7 52:17 131:16
140:20 144:11
146:25
**membership** 40:9
**mention** 68:21
**mentioned** 27:7
77:23
**merits** 150:13
**message** 134:20
**met** 129:5 135:18
**method** 136:7
**Mezero** 25:24
**MI** 9:6
**Michigan** 8:5 10:5
**middle** 122:23
**million** 22:4,13,16
22:18,24 25:8,21
26:5 37:7 44:18
53:22 80:25 89:16
132:13 138:17
**mind** 25:3 36:4
122:23
**mind-setter** 129:5
**minimis** 19:15 21:3
21:6,10

**minor** 56:24
**minutes** 41:12 62:2
**misreleases** 98:5
**missed** 102:3
**mistreatment**
151:14
**modification** 26:13
67:6 119:7
**modifications** 76:11
**modified** 66:16 69:3
**moment** 33:8 36:19
53:11 54:24 58:18
111:7
**moments** 93:2
**Monday** 13:14
**money** 129:20
140:14
**month** 11:13 14:18
36:2,21 59:14
85:22
**monthly** 11:12
12:16 19:7 36:15
36:23 66:23 77:7
100:14
**Morgan** 44:7,11
80:15 131:18
145:6 147:11
**morning** 11:6 39:7
39:10 75:9 150:2
153:9
**MOSLE** 8:9
**motion** 2:3,4,12,12
2:20,20 3:3,4,8,8
3:21 4:3,3,16,16
5:3,3,15,15,20,20
6:3,3,15,15 14:14
15:7,7 16:6 17:2,5
17:21 18:4 19:18
19:19,25 20:3,11
20:21 21:2 25:18
26:21,22 28:17
30:18,22 31:5,12
31:19,23 33:23
42:6,11 44:2 46:24
60:5 69:15,19 83:5
84:4 86:24 97:4

**minor** 122:5 127:9
**Motor** 114:25
153:23
**Motors** 47:9 85:2
87:8,13,14 89:9
91:12 92:14
110:12
**move** 42:17 43:14
44:5 45:10,14
53:19 125:21
135:24 141:7
148:11
**moved** 152:15
**moves** 94:25
**moving** 16:2 84:23
92:5 150:20
**multi-tiered** 14:15

---

**N**

**N** 7:2 11:2
**name** 11:6
**names** 100:23 125:4
**narrowed** 94:16
**National** 17:8
**NATO's** 24:22
**nature** 25:5 116:15
**nearly** 94:16
**necessarily** 93:24
**necessary** 97:4
128:8,20 140:12
**need** 19:13,14 20:4,9
21:24 34:19 37:7
48:6 53:13 62:19
71:13 78:7 82:4
86:4 91:6 107:5
142:20,22 146:13
151:24
**needed** 96:20 139:24
151:23
**needs** 37:8 38:19
94:11 130:13
133:23 135:18
136:7 140:25
142:14 144:6
148:2,11 152:4
154:20

negative 76:20
    77:23 88:4 111:10
negatively 93:14
    96:14 99:2
negotiate 144:4
    155:2
negotiated 61:25
    69:5 79:6 106:15
    113:18 128:13
    147:9 151:12
    152:22
negotiating 145:16
    154:8 155:7
negotiation 142:8
negotiations 47:5
    106:4,10 128:11
    140:21 146:22
neighborhood 51:25
Neil 113:16
Neither 16:17
net 32:7,7 35:12
    132:13
never 35:7 99:16
new 1:3,20 7:6,6,16
    7:16,22,22 8:11,11
    8:17,17 9:12,12,18
    9:18 27:5,10 62:20
    79:18
Newman 9:8 103:5,6
    103:20 104:6,10
    104:13 105:6
night 46:21 47:11
    48:4
nine 103:7
ninny 117:2
NLO 15:8
non 101:21
non-default 58:9
Non-Party's 4:3
non-prime 132:9
non-priming 101:21
    129:18
noon 48:14,25
NORCROSS 8:3
normal 14:20
note 39:14

noted 156:8
notice 3:23 4:6,6,20
    21:12 25:15 29:13
    50:3,11,13 57:9
    66:20 68:2,6 120:9
    120:11,19
Notification 2:22
notwithstanding
    58:22 106:20
    118:25
November 12:7,18
    12:18 13:2,24 14:5
    15:2,11,22 28:7
    51:3 53:5
number 11:20,22
    14:8 15:4,17 16:5
    17:4 19:24 20:25
    25:21 26:20 30:18
    42:3,5,8,17 57:18
    65:13 75:10,16
    94:17 122:13
    145:7
numeral 58:6,20
    78:8,10
nunc 24:17
NY 1:20

_____
O
_____

O 1:22 11:2
object 50:18 51:20
    51:23 52:10 61:17
    63:12 82:5,7
    115:17
objectants 108:12
    154:12,14
objected 16:19 33:5
    51:22
objecting 96:2 97:20
    153:25 154:3
objection 2:3,3 3:3,3
    17:25 21:20,23
    24:15 27:21 45:12
    49:4,7 54:21 61:11
    64:7 65:14,15
    72:15 87:7 93:5,11
    99:11,17,21 100:4

100:6 101:11,14
    101:17 102:6
    103:8 112:24
    117:21 125:20
    153:3
objectionable 78:25
objections 3:20
    19:21 20:17 27:23
    30:10 31:24 39:8
    42:5,21,25 43:7
    48:14,21 49:3,12
    49:19 83:8 92:19
    92:20 93:3 101:23
    106:17 126:10,13
objector 105:13
objectors 27:18,20
    27:22,25
obligation 98:12
    125:18
obligations 16:12
    60:25 100:14,17
obligors 40:22
observed 12:15
obtain 3:11 4:11 5:6
    6:6 44:5
obtained 131:5
    145:22
obtaining 84:10
obviously 34:9 37:5
    43:22 53:11 60:9
    64:12 91:8 115:7
    122:15
occasions 46:11
occur 73:4
occurred 144:17
occurs 57:16,20 58:5
OCP 14:11,22
October 1:14 11:11
    11:13 13:18
    141:15
offered 49:17
offers 114:12
officer 127:5 141:13
    141:17,18,20
    142:17
Oh 80:18 111:3

153:20
okay 11:18 12:10,23
    13:4 14:6 15:15
    18:22 19:17 20:20
    24:2 25:16 26:8,16
    28:12 30:15 31:11
    34:6,13 36:25 37:8
    39:21 41:3,13,17
    41:20 42:13 43:21
    47:16 48:10 51:13
    51:15 57:7,14
    59:21 60:15 61:7
    63:21 64:8 67:19
    67:23 68:8,19 69:7
    70:12 71:23 73:16
    76:4 79:9,21 81:21
    82:23 83:19 84:18
    86:7 87:2 90:7,19
    91:15,18 92:3
    94:12 95:4,12
    97:16,18 101:24
    104:12 105:5,10
    108:2 111:3 112:4
    112:20 113:5
    114:20 118:6
    119:13 127:7
    135:22 141:5
    148:25 149:4
    153:15 155:10
omitted 73:18
omnibus 3:20,23
    4:19 11:11,12,15
    12:19 15:23 47:2,3
    48:18,19 49:2 77:7
once 63:11 71:12,17
    102:8
ones 29:20 46:20
    121:9,11
ongoing 128:23
on-site 136:19
open 65:2 124:5
operate 21:8 128:4,9
    128:22 134:15
operated 135:2
operates 142:20
operating 134:23

142:4,24
**operation** 104:24
**operations** 20:12
 127:16 142:21
 143:10
**opinion** 133:19
 135:16 137:17
 139:23 140:23
**opportunity** 39:16
 55:6 63:5 70:9
 71:16 75:12
**opposed** 55:22
 115:25 135:2
 138:18
**opposing** 56:19
**option** 58:13 122:22
**options** 143:14
**order** 2:20 3:5,8 4:6
 4:7,16 5:3,15,21
 6:3,15 11:21 12:2
 12:4,9,16 14:4,12
 14:15,16,23,24
 15:14 21:2,7 23:23
 26:13,23 28:4,9,20
 28:21,24 29:18,22
 30:4,14,19 31:9,14
 32:23 33:4,13,19
 38:10 44:23,25
 45:8 46:9,13,16,23
 46:25 47:5,10,18
 47:24 57:6,16,19
 58:23 62:3 66:4,7
 66:11,13,14 68:23
 68:25 69:12,24
 70:14 72:13 74:12
 74:23 75:9,18,24
 78:23,24 84:22
 87:16 88:3,9 89:13
 92:14 93:17 96:10
 96:15 97:23 98:23
 99:9 100:20
 101:10 103:13,16
 105:8,15,24 106:2
 106:11,22 107:23
 109:18 110:2,5,13
 110:15 112:12,14

114:2 115:14
122:8,9 124:19
125:5 128:22
134:14 149:10,15
149:24 150:2,10
150:12,17,20,22
150:23 151:2
152:20,22 153:6,9
153:13,25
**orderly** 45:4,9
**orders** 2:5,13 13:10
 39:4 79:4 99:13
**ordinary** 5:18 14:9
 17:18 21:8 90:24
 110:10 115:10,21
 116:14 138:9
**organizational**
 13:17
**organized** 117:20
**original** 46:24 68:17
 90:15 151:20
**originally** 143:24
**ought** 32:15 33:10
 66:7 107:11
**outcome** 83:18
**outlined** 18:4
**outside** 82:6 101:9
 134:24 135:5,7
 143:25
**outstanding** 55:19
**overall** 27:20 37:17
 148:9
**overlapping** 37:23
**overlaps** 37:5
**overnight** 47:12,15
**oversecured** 70:2
**owed** 18:20 55:14
**owned** 37:15
**O'Dell** 67:14,14,20
 111:20,21

_____
**P**
**P** 2:22 3:10,18 4:10
 4:18 5:5,13 6:5,13
 6:17 7:2,2,9 11:2
**Pacific** 20:2,5

**package** 36:15,24
 56:12 65:19 72:7
 78:20 89:4
**packages** 130:22,23
 137:21
**page** 57:23 58:5
 59:22 78:8,9,10
 79:22 81:13 82:19
 85:8 93:18 103:17
 104:19,20 109:7
 114:12 118:23
 124:19 155:24
**pages** 78:9
**paid** 19:7 55:21,24
 59:13 72:24 73:5
 84:13
**papers** 16:21,23
 52:13 53:16
 149:10
**paragraph** 24:5,11
 24:12,13,13,21,21
 28:19 29:10,25
 32:4 57:20 59:24
 59:25 62:12 63:18
 80:3 81:25 88:8,11
 88:21 89:5 93:17
 95:19 103:12
 104:15 105:3,23
 105:25 109:6,16
 109:17,23 110:8,9
 110:14,20,22
 111:13,17 113:17
 114:4 116:7 119:8
 119:19,22 121:21
 122:3
**paragraphs** 28:19
**Park** 7:21 8:10
**part** 24:20 36:14,23
 60:24 72:6 77:14
 81:22 86:25 89:4
 92:12 98:8,18
 99:11 103:9 117:5
 133:2,20 142:2
 143:11,22 148:7
 149:2
**participate** 39:16

106:9
**participated** 128:10
 133:6 140:18,19
 146:22
**participating** 58:4
 129:2
**particular** 18:2,24
 21:18 36:3 37:4
 54:6 72:17 83:11
 87:23 96:11,13
 121:21 131:19
 132:16 139:5
**particularly** 20:10
 26:6 79:22 116:18
**parties** 4:14 17:24
 45:9 47:15 57:19
 60:9 65:13 70:23
 71:15 76:25 81:17
 103:7 106:18
 107:15,20 108:6
 112:17 119:16
 120:25 128:24
 150:19 151:7
 154:3
**partner** 11:9 136:9
**party** 16:18 20:19
 21:17 75:23 89:12
 102:5 103:2
 109:19,24 110:11
 110:18,25 111:16
 116:19 122:7
 124:24 153:25
 157:10
**party's** 110:3
**Pascoe** 10:14 114:23
 114:24 115:3
 118:4 153:22,23
 155:8
**passionately** 34:11
**path** 144:19,20
**pay** 21:5 56:12 60:2
 84:15 124:22
**payable** 88:15 95:6
 119:5 125:3
**payables** 88:14
 119:4,12,21

**paying** 88:15
**payment** 54:14
**payments** 19:3 62:2
  79:16
**payoff** 35:17
**pay-down** 132:11
**PBGC** 39:14 40:5,8
  40:19
**PBGC's** 38:10
**Pension** 32:21 39:12
  79:6 152:23
**people** 12:11 19:13
  19:14 24:14 40:12
  57:25 64:19 71:11
  75:11,15 102:15
  112:23 114:10
  119:17 120:13,15
  120:17 122:16,21
  126:18 154:18
  155:6,15
**peoples** 117:25
**percent** 51:6,17,21
  51:25 52:8,16
**perfections** 23:18
**perform** 85:9
**performance** 100:17
  138:8
**period** 83:25 100:18
  134:6 141:14
  142:16
**periods** 69:10
**permanent** 55:7
**permanently** 81:5
**permission** 11:16
  105:16 125:21
**permissity** 93:15
**permit** 52:19 151:13
**permitted** 104:23
  110:19 119:3
  123:24
**person** 84:24 87:5
**personal** 94:2
**personally** 145:17
**persons** 127:23
**perspective** 48:22
  86:9

**persuade** 71:16
**pertaining** 108:14
**pesky** 32:4
**petition** 16:14 18:21
  33:16 50:5 51:18
  59:4,12 61:5 83:15
  88:14 89:16
  104:22 139:10
**phone** 94:6 102:3
  105:13
**phrase** 58:7 70:16
  95:19
**pieces** 155:16
**place** 42:23 74:23
  103:21 118:17
  120:7 125:18
  135:15
**placed** 75:19 92:16
**places** 70:14
**plain** 89:24
**plan** 60:21 137:4
  138:3 140:5 142:6
**plant** 17:15 152:17
**Plantes** 113:16,17
**plants** 19:12
**play** 90:23
**played** 65:13
**pleading** 79:24
**pleading's** 81:25
**pleasant** 122:25
**please** 11:3 41:19
  51:9 102:8,16
  111:7
**pleased** 83:7,17
**pledged** 98:11
**PLLC** 9:3
**plus** 55:5 56:24
  58:14 59:15 63:6
  70:8
**podium** 152:7
**point** 23:12 25:12
  35:5 36:11 38:5
  40:6 45:13 72:17
  76:9,14 77:10
  78:16,18 80:11
  81:12,19,20 90:12

91:9 97:15,20 99:5
  105:22 109:6
  110:15 118:17,19
  120:4 121:4 122:6
  124:12 125:7
  132:3 133:24
  134:3 149:9
  150:24 151:9
**points** 53:22 54:12
  118:11,12
**portfolio** 144:22
**portion** 12:24,25
  18:14 45:15 149:5
**positing** 50:16
**position** 38:11 40:10
  49:25 50:4 51:19
  53:7 74:21 150:6
**positions** 15:9,10
  50:15 136:12
  151:9
**possibility** 86:17
**possible** 67:7 139:25
**post** 125:5,5
**posted** 58:3
**post-petition** 3:12
  4:11 5:7 6:7 45:25
  47:7 74:9 88:16
  109:20,22 110:23
  119:11,21 123:7,8
  123:14,25 124:25
  125:2 127:19
  139:10
**potential** 18:17
  129:4 135:9
**potentially** 38:21
  95:7
**PP&E** 138:3,16,17
  138:20,21
**practice** 115:21
  136:8,11
**praise** 151:3
**pre** 16:13 33:15 50:4
  51:17 57:16 59:3
  59:11 61:4 83:14
  104:25 139:9
**precede** 119:22

**preexisting** 96:21
**prefer** 33:11
**preference** 18:17
**prejudice** 84:2
**premium** 6:19,20
  16:8,14 55:10,11
  59:11
**premiums** 54:17,17
**prepared** 74:25
  98:20 101:15
  137:5,8 138:14
  151:8
**preparing** 138:12
**prepayment** 54:14
  54:17 55:10,12
  59:9,11 80:17
**prepayments** 80:5
**present** 14:25 45:17
  126:17 127:12
**presentation** 31:5
  144:12 149:8
**presentations**
  129:16
**presented** 17:23
  148:6
**preservation** 83:11
**preserve** 15:8
  128:23
**preserving** 81:17
**president** 141:12
**press** 13:25 75:7
**pretty** 19:4 23:14
  116:25 121:14
**prevent** 107:7
**previously** 89:3
**Prevost** 118:9
**pre-funded** 18:14
**pre-October** 29:17
**pre-petition** 2:8,16
  3:15 4:13 5:10
  6:10,18 16:8 25:14
  44:22 47:8 49:9
  50:3,7,8,12 51:19
  52:25 53:18 54:8
  54:10 55:2,8,14
  56:13 58:24,25

59:10,16,17 60:4
60:21,22 61:2 64:2
69:11 70:2,16 72:5
72:19 74:9 79:25
80:15,23 81:8
88:15,24 89:2 90:2
92:10,12 109:25
110:4,16,23
111:14 112:2
119:5 126:5
127:20 132:11,18
137:23
**pre-petition's** 62:18
**pre-proffers** 126:17
**price** 22:2 136:10
**primarily** 105:23
**prime** 44:20 123:15
123:23,24
**primed** 112:7
**priming** 3:13 5:8 6:8
49:7,25 52:5 81:6
129:17 131:23
132:6,17
**principal** 42:3 79:24
140:14 141:24
146:3,20,23
**printing** 110:16
**prior** 27:16 32:13
48:24 102:12
133:12 136:8,12
**priorities** 48:8
**priority** 32:14 33:3
33:10,11,13 34:10
34:12 39:2 72:24
78:21 89:7 100:19
104:25 125:7
151:18,19
**private** 124:22
**pro** 24:17
**probably** 22:19 30:6
63:8,16 85:19
99:25 121:7,10
**problem** 34:8 98:14
115:6
**problems** 114:10
121:5

**procedure** 2:23
21:11,19 116:17
116:20 117:11
122:2,3,10,17,21
**procedures** 2:9,17
4:21 5:22 21:7
24:22 27:2,9 28:16
108:15,17 115:18
**proceedings** 156:6
157:5
**proceeds** 72:10,20
72:23 73:2 81:2
84:11
**process** 13:12 18:10
19:11 27:12 35:10
35:19 56:8 71:3
113:24 120:22
121:6 129:4 143:2
143:6 144:15
145:3,11,12
146:24 147:23
148:12
**procontractual**
114:13
**Proctor** 8:15 49:10
63:25 92:11
**procure** 139:22
**procurement** 143:3
**produced** 129:6
**product** 106:3
**products** 134:25
**professional** 14:17
135:16 139:23
140:23
**professionals** 5:17
5:23 13:9 14:10
35:11 151:4
**proffer** 43:16
**program** 26:10
110:7
**Prohibiting** 2:6,14
**projections** 133:25
134:5,9 137:3
142:7 148:4
**prominent** 96:22
**proof-of-claim** 56:8

**proper** 43:22 115:14
151:10,13
**property** 84:14
88:23 89:3 93:23
93:24 94:2,18
95:21 96:13 138:3
**proposal** 129:11
146:19 147:5,9
**proposals** 126:2
129:4,7,8,9,10,24
131:5 132:9,10,10
139:20 140:19
142:9,11 143:24
144:16 145:13,21
146:4
**propose** 43:9 120:24
**proposed** 3:23 4:6,7
11:15 12:4 21:10
21:15 38:10 46:9
46:23 69:13 72:12
78:24 87:15 88:8
92:23 106:13
128:3 130:19
139:10 149:10
**prosecute** 71:7
**protect** 88:20 89:20
**protected** 87:24
**protection** 3:15 4:13
5:10 6:10 43:2
49:17 55:25 70:15
72:7 80:22 90:9
91:6 97:5 101:19
137:21 150:16
151:2
**protections** 56:11
97:11
**protocol** 22:12
23:13,21 34:23
36:12 38:18 39:18
118:16 120:7
**prove** 113:9,23
**proved** 87:18
**provide** 66:22 68:5
80:21 100:20
129:17,21,21
136:19 154:14

**provided** 16:16
46:20 58:16 59:3
80:5 128:15
137:12 145:21
**provider** 35:20
**provides** 29:18
88:11,22 89:5
90:23 152:4
**providing** 81:18
139:8
**provision** 28:18,21
73:21 89:5 114:5
**provisions** 118:15
132:2 150:16
155:2
**proviso** 80:4
**public** 144:19,24
**publicly** 140:6 150:6
**punch** 31:6
**punitive** 108:25
**purchase** 17:6,7,14
22:2
**purpose** 73:18
**purposes** 11:11 14:4
19:12 75:24
**pursuant** 16:13
97:23
**pursue** 71:13 98:15
122:22
**pursued** 13:9 71:18
**pushing** 139:21
**put** 22:23,25 42:23
47:13,13 55:2
69:17 86:15,20,23
90:5 97:6 103:15
109:10 118:16
120:6 135:15
**putting** 26:24

_____

**Q**

**QL** 144:20
**qualify** 139:15
**Quash** 4:3,4
**question** 69:25
118:3 151:22
**questions** 16:20 18:2

43:13
**quickly** 117:17
  122:19
**quite** 73:12 91:13
  93:18
**quote** 102:2

——————

**R**

**R** 1:22 3:10,18 4:9
  4:17,23 5:5,12 6:5
  6:12,16 7:2,24
  11:2
**raise** 34:15 36:8
  43:3,4 76:7 100:3
**raised** 21:24 33:9
  76:14 80:21 99:17
  99:18,20 104:17
**raising** 62:22
**RALPH** 10:7
**ran** 129:3
**range** 139:8
**Rapids** 8:5
**rate** 21:5 52:20
  53:19,20 54:2
  55:17,21,25 58:9
  58:11,14 62:17
  63:6 82:20
**rates** 53:21 131:25
**Ray** 82:14
**reach** 144:14
**reached** 43:11 47:6
  56:10 64:22 65:12
  66:2,2 91:25
  123:18 130:5
**reactions** 151:21
**read** 54:24 64:3 67:7
  81:16,25 105:20
  106:16 111:13
  112:12 116:5
  149:20
**real** 86:11
**reality** 38:3
**really** 26:6 35:6,21
  40:21 48:6 49:13
  64:15 78:17 98:16
  111:23 117:16

118:11,12 120:5
  120:11 154:9
**reason** 25:21 26:9
  38:19 61:19 62:11
  101:14 114:9
**reasonable** 24:9
  56:12,15 60:2,10
  66:20 83:9 84:19
  85:12 116:17
  133:18 147:18
**reasonableness**
  57:11
**reasonably** 35:25
  59:5 140:11
**reasoned** 96:8
**reasons** 20:11 31:18
**recall** 32:10
**receipt** 28:23
**receivables** 138:7
**receive** 55:16
**received** 61:18 62:3
  68:2
**receptance** 100:21
**recess** 41:9,18,24
**recharacterization**
  62:4,7 63:3 79:17
  81:19 83:12
**recital** 79:15
**recognition** 116:12
**recognized** 131:2
**recognizing** 125:15
**recommended**
  146:25
**reconstruction**
  127:5
**record** 41:20 42:18
  43:15 46:18 47:25
  49:22,22 52:15
  60:8 61:13 64:4
  68:21 73:13 74:7
  74:18,22 75:19
  78:14,18 79:14
  83:21 88:7 90:6
  91:8,14,24 92:17
  105:20 107:6
  109:12 125:14,19

126:8 132:3 134:2
  148:20,24 149:13
  149:21 150:5,18
  150:19,23 152:11
  154:6,10,23
  155:14
**recorded** 157:5
**recording** 102:10
  108:7,9,20 109:4
  112:6 113:2,7,15
  114:8 117:10,19
**records** 137:10
**record's** 78:5
**recoup** 115:6 118:2
**recoupment** 45:2
  109:21 110:4,6,11
  110:17,19,24
  111:15 115:5,9,10
  115:15,25 116:10
  116:11,13,22,24
  117:3,4,5 125:2
  135:10
**recovery** 136:11
**recruiting** 76:10
**red** 36:8
**redraft** 75:19
**reduce** 81:4 91:4
**reducing** 81:5
**red-line** 103:18
**refer** 49:10
**references** 45:17
**refers** 57:21 70:18
**refinanced** 60:23
  61:4
**refinancing** 129:22
**refinancings** 133:6
**reflect** 48:3 49:22
  50:21 74:7 149:12
  150:19 153:10
  154:9
**reflected** 52:13 66:4
  131:25
**reflects** 28:10 64:4
**refrain** 116:21
**refreshed** 68:16
**Refusing** 2:7,15

**regard** 93:19 120:24
**regarding** 11:25
  84:8
**regular** 111:4
  116:21
**regularly** 19:5
**reimbursed** 19:9
**Reimbursement**
  5:23
**reimbursing** 84:9
**Reisman** 8:13 118:7
  118:8 119:15,23
  120:3 121:16
**reject** 19:25 20:16
**rejection** 3:6 30:19
  30:22 31:8
**related** 16:9 44:25
  59:9 69:10 157:10
**relates** 93:9 96:10
**relating** 93:16 103:8
  103:13 106:10
  130:16,18 137:14
**relationship** 26:3
  32:8 67:18
**relationships** 48:9
  98:19 136:25
**relatively** 47:19
**release** 59:20
**released** 64:20,23
**releases** 69:22 75:7
**releasing** 59:7
**relevant** 50:10,11
**relied** 138:12,13
**relief** 3:16 5:11 6:11
  14:12 16:19 17:21
  27:18 29:24 75:2
  107:11 122:6
**rely** 16:21
**remaining** 105:17
**remedy** 119:21
**remember** 85:7
**removed** 15:11
**Renaissance** 10:4
**renegotiate** 75:20
**renew** 50:24 53:6
**reorganization**

60:21 128:6
**reorganize** 42:15
**repaid** 34:21 60:23
    61:3
**repay** 37:10
**repayment** 61:6
**repeating** 108:23
**replacement** 18:6,8
    38:9 88:12 89:17
**reply** 3:20 47:2,3
    48:18,20 49:2,19
**report** 13:15 25:22
    42:16 57:17 83:7
    123:6
**reporting** 36:15,24
**reports** 137:11,12
**represent** 148:20
**representatives**
    36:22
**represented** 49:11
    148:7
**represents** 46:15
    61:9 147:21
**request** 14:13 16:10
    21:20 28:22 29:7
    37:6 50:18 57:10
    75:21 108:16
**requested** 16:19
**requests** 2:10,18
    28:25
**require** 21:11 25:5
    79:18 80:24 87:21
    107:24 134:13
**required** 27:19
    132:11 148:10
**requirements** 83:3
    130:12 135:19
    141:2 142:19
    144:23 147:7
**requires** 21:19 22:5
**reservation** 62:14
    81:24
**reserve** 33:8,21
    38:25 62:15
    107:13
**reserved** 33:5 42:12

62:8 71:20
**reserving** 82:3
**Resnick** 126:24
    127:10,12,22
    128:6,14,25
    129:13 130:8,14
    130:19 131:6,14
    132:4,21 133:4,14
    133:23 134:9,17
    135:4,23
**Resnick's** 126:24
    131:11 135:21
    139:12
**resolution** 22:2
    26:25 27:12 28:8
    42:9 76:8 80:19
    83:23 84:20
    108:25
**resolve** 21:24 24:15
    27:23 36:13 41:10
    42:4 47:19 151:6
**resolved** 16:4 42:10
    42:21 68:12 87:8
    92:7,9,22 93:6
**resolves** 61:11 65:14
    65:15
**resolving** 103:11
    151:4
**resources** 146:15
**respect** 12:2 17:12
    17:21 21:17 23:23
    27:22 33:18 50:2
    51:5 52:11 57:4
    59:8,16 62:21
    67:12 68:24 69:10
    71:5 72:15 83:4
    85:6 93:10 103:10
    103:16,21 106:12
    109:17,21,23
    110:3,8,14,22
    116:4,10 118:14
    118:18,19 120:20
    138:15 139:13
    145:10 153:11
**respects** 54:21 151:5
**respond** 65:7 86:4

99:3
**Response** 3:20
**responsibility**
    141:24 142:16
**responsible** 142:3,7
**rest** 148:24 149:9
**restate** 63:14
**restrict** 115:15
**restructuring**
    134:19 136:8
    141:13,25 144:22
**result** 20:13 66:4
    74:13
**resulted** 143:2
    145:12
**retain** 56:2
**retained** 24:17
    143:12,15,19,20
**retention** 5:17 13:8
    14:19 15:18
**revenues** 95:6,11
**review** 13:12,25
    14:4 16:25 19:19
    43:6 69:21 83:25
    142:8 153:18
    154:22
**reviewed** 16:15,22
    20:20 31:11 57:18
    133:8,15 148:4
**reviewing** 39:18
    142:3 152:10
**revise** 82:21 150:21
**revised** 31:14
    153:24
**revisiting** 75:25
    150:13
**revolver** 44:16,22
**revolving** 46:4
**rewritten** 153:6
**rideout** 116:18
**right** 11:3 14:6 15:3
    15:24 19:2,19 23:6
    23:11 24:12 25:16
    31:17 33:11 35:2
    37:11,21 38:24
    39:4 60:13 62:8

63:2 65:2,8 66:9
    66:15 67:23 71:11
    71:12,20 73:12
    76:8 77:17,20 78:6
    81:10,21,22 82:2,7
    83:12 84:6 85:7
    90:17 91:2 95:9
    96:12 101:24
    103:19 104:8
    108:13 109:19,25
    110:6,19 112:2,10
    114:20 115:9,15
    115:19 116:2
    117:4,5 118:3,4
    119:4,23 120:13
    120:18 121:3
    123:12 124:24
    125:5,23 126:14
    135:24 141:7
    148:15,17 149:19
    150:14,14 154:18
    154:21
**rights** 29:3 44:25
    56:2 61:23 62:14
    62:15 69:16 70:21
    72:3 73:21 81:17
    84:3,3 107:14,14
    109:21 110:3,7,11
    110:17,24,25
    111:15,16 114:13
    116:9,11,13,14
    117:25 121:2
    123:15,25 124:10
    124:11
**Rim** 20:2,6
**rising** 87:7
**risk** 130:15 131:22
    139:14 146:7
**risks** 130:20
**Robert** 1:24 7:18
    121:18
**role** 65:13 136:17
    141:22
**Rollerton** 143:16
**roman** 58:6,20 78:8
    78:10 104:20

**Room** 1:19
**ROSENBER** 155:19
**Rosenberg** 7:18
  23:22 25:19 26:14
  34:3,5,7,14 36:11
  39:8,17 57:8,13
  62:9 65:21 71:21
  74:18 76:5 83:2,6
  102:18 153:5,17
**Rosenberg's** 22:15
**Rothschild** 15:18
  127:11,18 131:15
  132:23,25 133:5
  133:22 143:16,21
  144:14 145:2,5,18
**Roy** 81:24
**rule** 15:20
**rules** 24:18

**S**

**S** 7:2 8:19 11:2
**sacrifice** 151:8
**sale** 22:25 23:3,9
  25:4 81:2
**sales** 24:10,23 80:2
**sanctions** 65:3
**satisfactory** 28:8
  59:6
**satisfied** 74:16 83:3
  83:8 151:16
**satisfies** 152:3
**satisfy** 84:12
**saying** 29:5 40:10
  101:3 108:21,23
  108:24 124:7
  153:21
**says** 24:22 28:21
  58:7,15 59:23,25
  111:18 113:18,19
  114:4,4 118:24
  124:9,20 150:10
  153:24
**scenario** 82:6 124:8
**SCHAEFFER** 9:3
**Schaffer** 103:6
**schedule** 36:18

**scheduling** 3:17
  4:22 5:12 6:12
  71:19
**Scott** 127:3 136:3
**seated** 11:4 41:19
**second** 50:21 51:9
  66:16 69:25 79:12
  88:18,25 89:19
  96:2 106:25
  109:22 120:4,5
  127:2
**seconds** 99:15
**section** 5:21 26:23
  49:15 72:8,9,16
  80:8 103:15
  109:23 125:16
  151:14,17 154:9
**sections** 2:5,13,21
  3:9 4:7,17 5:4,16
  6:4,16 88:2
**sector** 140:2
**secured** 3:12,13,16
  4:14 5:6,8,10 6:6,8
  6:10 34:20 58:25
  59:17 60:4,22 61:5
  61:20 62:18 64:2
  79:15 80:7,23
  90:10 98:5,19
  127:21
**securities** 2:24 44:12
  104:21
**security** 6:20 95:22
  98:7 105:2 126:6
**see** 39:19 66:24 75:7
  102:3 111:17
  119:24
**seeing** 30:9 66:22
**seek** 18:8 26:12 30:5
  40:8 43:19 53:6
  65:2 71:8 83:12
  127:19
**seeking** 16:7 19:25
  107:12
**seen** 105:25
**selected** 133:20
**self-styled** 49:8

**sell** 21:3 25:6
**send** 21:12 120:11
  122:20 154:15,18
  155:4
**senior** 110:25
  111:16 131:17
  136:6
**sense** 83:16 119:14
**sent** 50:12
**sentence** 81:15
  118:20,23 119:10
**separate** 23:9 69:17
**separately** 98:11
**series** 105:19 106:21
**serious** 35:6 37:2
**serve** 27:18 57:3
**served** 11:14 47:11
  47:14
**service** 29:6,20
**Services** 2:8,15
  138:15
**session** 75:16
**set** 20:11 30:2 41:9
  45:6 48:13 60:20
  74:21 78:22
  113:11 115:18
  116:24 119:6,8,11
  120:19 129:10
  147:3 150:16,23
  154:10
**setoff** 33:16 43:3
  44:25 73:21 81:9
  88:21 89:15,22
  90:10,14,15 91:5
  92:21 93:7 102:4
  103:4 105:12,17
  105:18 107:16
  108:11 109:25
  110:10,17,18,24
  111:15 112:18
  115:6 116:2,14,23
  118:14 119:2,4,19
  120:8,25 122:4
  123:9,14,25
  124:10,25 135:9
**setoffs** 73:22 88:13

**90:25** 106:23
  109:20 115:7,8
**settlement** 64:6,22
  150:12
**settlements** 42:17
  43:11
**settling** 75:24
**seven** 75:15
**Sheehan** 127:6
  141:11,21 142:12
  143:14 144:9,25
  145:4,15,17,24
  146:8,21 147:8,13
  147:22 148:3,17
**Sheehan's** 147:4
  148:14
**shifting** 80:4
**shipments** 123:10
**short** 155:5
**shortly** 145:3
**show** 95:10
**showing** 97:10
**sides** 117:12
**sign** 157:12
**significant** 53:14
  129:19
**significantly** 131:22
  151:25
**sign-off** 12:8
**similar** 24:10 29:10
  110:15 133:4
  139:12 146:9
**similarly** 17:22
  145:25
**simple** 101:20
**simply** 34:24 37:7
  75:17 88:6 94:10
  98:20 115:19
  149:9
**Simpson** 9:10 80:13
**sir** 26:14 29:14
  57:13 74:25 113:4
**site** 119:18
**situation** 124:6
  145:19
**size** 22:6 128:21

130:16 134:11
139:14,17 146:6
148:8
**Skadden** 11:7
**SKADEN** 7:4
**Slate** 7:4 11:7
**slightly** 27:8 42:16
**small** 85:4 98:8
**smarter** 63:9
**sold** 21:16
**solely** 49:5
**solicitation** 52:2,23
147:23
**soliciting** 143:23
**somebody** 102:19
**Somerstein** 7:24
39:6,10,11,22
40:24 92:8
**somewhat** 124:5
**sooner** 117:24
**sorry** 78:9 85:3 86:6
87:2 97:13 104:3,7
111:20
**sort** 19:15 27:15
37:3 90:23 113:19
135:3 140:7
144:20 146:3
**sought** 17:21 51:4
130:23
**sound** 51:11 157:5
**sounds** 51:11 119:13
**Southern** 1:3 15:20
**speak** 89:12 113:4
**speaking** 64:18
**special** 11:10
**specific** 40:18 57:17
100:7
**speculative** 138:25
**speed** 35:12
**spent** 136:13 146:11
**spot** 45:7
**spring** 68:16
**Square** 7:5
**stabilize** 135:13
**stake** 42:3 106:4
**stand** 72:13 126:22

**standard** 111:5
**standing** 71:2,9
126:24
**stands** 94:4
**starts** 124:8
**state** 46:16 53:15
**stated** 31:19 78:13
92:5 93:20,21
109:12
**statement** 33:7
34:16 59:23 63:15
65:17 66:5 74:15
74:19 79:13
106:20 111:19
114:11
**statements** 12:16
58:22 74:6 82:25
100:15 112:11
144:19
**States** 1:2 11:24
12:14 14:11 135:6
135:7 143:11
144:23
**static** 102:14 108:6
108:8,20 109:3
112:5 113:2,7,14
114:7 117:10,18
**stating** 97:11
**statuary** 104:21
**status** 70:2 97:25
104:2
**statute** 27:10 28:25
70:18
**stay** 115:13,20
116:16 122:6
**Steven** 8:13 118:7
**stock** 138:5
**stop** 117:23
**strategies** 136:16
140:5 142:5
**strike** 77:24
**stronger** 139:16
**structure** 132:5,16
134:18,19 135:3
146:6
**structured** 18:24

**structures** 130:2,3
145:23
**structuring** 143:9
**sub** 59:25 95:7 98:10
117:9
**subject** 15:19 32:10
46:16 62:3 66:11
66:12,13 69:18
79:17 84:22 94:21
95:21 107:19
116:16
**submit** 30:13 49:2
75:9 149:4 153:8,9
153:24 154:5
**submitted** 28:10
31:9 33:7 74:13
78:23 157:5
**submitting** 153:3
**subordinate** 100:25
**subordinated** 99:8
**subordination** 96:3
97:21 100:20
101:3
**subpoena** 4:3,4 65:4
**subpoenas** 57:4
64:19
**subsequent** 87:19
114:12
**subsequently** 23:24
25:6 143:18
**subservient** 124:10
**substance** 59:5
75:25 135:20
141:3 148:13
**substantial** 36:6
86:12 134:14
**substantive** 116:8
118:19
**sub-limit** 44:16
**success** 15:19 23:15
**successful** 77:10
128:6
**successfully** 146:19
**sufficiently** 152:5
**suggest** 46:11 134:6
138:22

**suggestion** 33:20
66:14 67:3
**Suite** 7:15 9:5
**sum** 25:7 135:20
141:2 148:13
**summaries** 126:9
**summary** 48:13
**super** 32:15 73:7
84:7
**superior** 102:12
**Superpriority** 3:13
5:7 6:7
**super-party** 101:4
**super-priority**
32:16 101:21
103:22 104:2,4,4,6
**super-priority's**
101:6
**supplier** 115:12
123:11
**suppliers** 134:16
135:7,8 136:22
140:9 142:23
146:17
**support** 105:8
106:11 127:9
137:20
**supportive** 83:22
**supposed** 89:20
**sure** 36:23 39:22
45:19 63:10 70:17
73:12 75:12 78:4
80:12 90:22 91:13
91:21 95:8,20
104:16 108:22
109:11 111:23
114:22 119:25
121:4,22 123:4
140:8 146:18
149:23 154:19
**surprising** 31:25
**suspect** 89:10
**sustain** 49:14
**sustained** 72:16
**sweet** 45:7
**symbol** 58:17

**syndication** 44:9
  77:11,13
**system** 32:9 102:10
  102:11,12 130:24
  131:13

**T**

**take** 12:6,20 13:6
  17:11 18:3 41:23
  43:21 81:2 82:17
  96:4 131:3 149:18
**taken** 50:16 51:16
  135:11
**take-out** 129:19,22
  131:10,24 132:10
  132:14
**talk** 62:9 87:6
  112:14
**talked** 18:18 32:3
  66:12 82:4 111:21
**talking** 12:11 40:25
  70:15 100:10
  111:25 115:22
**talks** 119:9
**tantamount** 130:9
**tasked** 141:23 144:3
**tax** 15:9
**team** 39:17,18 129:3
**technology** 31:2
**Ted** 10:17 94:14
**telephone** 10:8,12
  10:15,18 58:4
  102:20,24
**tell** 117:7
**tempered** 37:12
**ten** 22:4,13,18,23
  23:15 25:8,21 26:5
  37:7
**tends** 117:20
**term** 44:15,22 46:4
  54:15,16
**terminate** 29:19
**terms** 16:15 34:10
  36:20 40:8 43:10
  44:19,23 46:13
  52:2,23 53:9 54:5

54:16 55:20 56:11
  56:16 72:18,21
  75:25 92:18 93:21
  100:2 124:14
  128:3,11 132:2,22
  133:15,17,22
  139:2 140:4
  147:14,16
**test** 22:21,22 86:21
  86:24
**testify** 127:13,14,16
  127:23 128:7,10
  128:15 129:2,8,13
  129:23 130:14,20
  131:6,14 132:4,22
  133:14,19 134:10
  134:18 135:4
  136:4,5,13 137:5
  137:16 139:12,19
  140:13,17,22
  141:10,11,14
  142:13,25 143:15
  143:21 144:9
  145:2,4,11,16,25
  146:8,21 147:13
  148:3
**testimony** 43:19
  127:10 135:21,24
  138:13 139:13,16
  141:4,7 148:14,18
  148:21 151:10
**Thacher** 9:10 80:14
**thank** 17:3 19:22
  20:24 26:15,19
  30:14 31:15,20
  41:2,15,22 57:13
  63:23 64:10 67:19
  90:20 91:19 94:13
  97:17 105:6
  114:21 118:4
  121:16 152:12,13
  155:9 156:2,5
**thing** 32:2 72:23
  85:4 88:6 155:11
**things** 13:13 64:14
  77:11 80:24 94:7

98:17 101:12
  116:4 121:13
  136:19
**think** 13:17 18:12
  18:19 22:7 23:14
  24:5 25:23 27:6,8
  28:20,25 29:22
  33:6,18,23 34:3
  37:2,12 40:17,23
  42:23 53:14 65:22
  65:24 67:11,17
  73:24 75:8 76:13
  76:23 77:4 78:7,11
  79:21 80:2 81:22
  82:11,18 84:24
  86:2,5,9,19 89:9
  89:13,23,25 92:6
  93:4,19 94:21
  95:24 96:6,11
  99:19,23 101:16
  102:2 105:15
  106:5,13 108:9
  112:10 114:10
  119:23 120:5,17
  124:16,18 125:4
  149:9 151:2 153:5
  154:7,10,11,23
  155:3
**third** 7:14 8:4 29:5
  88:23 89:19
  106:25 110:8
  114:5 120:5 127:4
**thirds** 81:3
**third-party** 127:21
  142:10
**THOMAS** 7:11
**thought** 71:3 77:2,6
  82:14 90:5 96:20
  123:17 140:11
**three** 94:17 118:11
  130:6,15 146:2
  148:22
**till** 36:19 39:2
**time** 12:20 20:17
  21:21 30:7 34:15
  55:18 83:25 96:5

107:8 121:15
  144:18 146:11,23
  146:23 149:18
  156:8
**timely** 48:22,23
**Times** 7:5
**Timothy** 10:14
  114:24 153:22
**today** 42:9 44:14
  47:18,25 50:10
  68:18 74:22 82:3
  93:13 101:16
  124:16 150:5
  156:4
**today's** 150:18
  154:23
**Toering** 8:7 121:17
  121:17 123:2,6,13
  124:3 125:6
**told** 50:21 104:18
  111:12
**tomorrow** 75:9
  150:11 153:9
  154:24,25
**tonight** 75:16
**tooling** 103:9
**top** 103:17 104:20
  125:7
**topic** 73:17
**total** 61:19 130:22
  130:25 139:6
**track** 71:14,18
  112:24
**tracked** 91:10
**tracks** 70:18
**trade** 118:10
**trading** 2:23 15:5,6
**training** 155:12
**transaction** 18:25
  21:22 22:20 45:21
  45:22 46:8 49:18
  49:24 50:19 51:20
  51:23 52:11 60:24
  76:2 117:12
  140:21 144:5
  147:15,21

transactions 25:15
  54:7 142:11
transcribe 102:15
Transcribed 6:23
transcript 51:12
  102:9
transcription 157:4
  157:6
transfers 32:6 35:6
transformation
  140:3,4
travel 17:7 19:12
travel-related 17:19
treatment 92:23
  153:12
trial 64:19 101:15
tries 27:13
triggering 68:3,11
  68:12
troubled 25:20
true 100:13,24
  115:11 116:10
  157:3
Trustee 11:25 12:9
  12:14 14:2,11,24
  21:13
try 18:8 41:10 71:16
  116:19 120:13
trying 15:13 18:9
  20:3 118:16
  119:15 120:16
  124:11 131:2
  140:8
Tuesday 13:20
tunc 24:17
turn 35:6 51:10
  90:24 92:18 102:8
  102:17,24 105:16
  121:15 139:3
  154:8
turns 89:17
two 19:11 27:23
  31:23 32:9 34:9
  36:2 50:9,15 53:21
  55:15 56:24 67:18
  76:25 80:24 81:3

98:6,12,18 99:7
  116:4 126:7
  132:17 137:22,23
type 28:16 29:23
  35:13 103:17
  120:7
typically 67:16

_____

**U**

Uh-huh 42:19 76:4
ultimately 33:24
  53:12 108:16
  113:9 130:4
  143:25 146:24
unanimous 53:17
uncertainties 140:2
unclear 118:21
uncontested 16:3
undersecured 63:4
understand 25:11
  54:20 77:9 90:22
  95:14 98:21 99:5
  100:6 106:17
  108:22 111:24
  113:20,21 140:10
  155:8
understanding
  65:23 94:22
  103:23 121:25
  123:8,13,17
  142:15
understandings
  74:8
understood 76:14
  90:2,3 113:13
  121:23,25
undertaken 35:19
unencumbered
  86:12
unfortunately
  116:25
unilaterally 29:19
United 1:2 11:24
  12:14 14:11 135:6
  135:7 143:10
  144:23

unpaid 67:17
unsecured 21:13
untimeliness 101:17
untimely 101:11
unusual 148:2
updated 46:24
Uppet 82:14
urge 39:25 155:13
USA 17:8 44:8
use 3:14 5:9 6:9 17:6
  17:13,14,17 20:4,9
  77:3 81:2 97:9,24
  154:4
uses 57:21,22 107:14
utilities 2:6,14 26:21
  29:3,11
utility 2:4 27:2,14
  28:22 29:18 30:5
Utilize 4:12
Utilized 5:17
U.S 1:25 12:9 14:2
  14:24 17:16 21:12
  134:21

U.S.C 2:5,13,21 3:5
  3:9 4:7,17 5:4,16
  5:21 6:4,16

_____

**V**

V 3:17 5:11 6:11
valid 96:13 109:25
  110:4,18
valuable 79:22
value 22:17 70:19
  84:12 85:17 86:12
  86:22 88:17 90:13
  128:23 138:17,19
  139:4,6
values 84:2 138:3
variety 17:20
various 17:11 33:14
  120:25 126:6
  131:18 136:12
  137:11,15 138:23
  143:8,23 144:8
  145:23 151:7
vast 37:14 92:21

vehicle 31:3
verify 121:24 123:7
versa 67:22
version 27:9 81:14
  82:2 151:21
vertical 135:3
Vesey 125:13
vested 86:10
vet 27:15
vice 67:21 141:12
view 32:18 36:12
  45:5 117:10 128:7
  128:17 130:7,8,21
  139:18 147:20
viewed 140:15
  147:22
views 48:15
virtually 57:24
vis-a-vis 72:4
vote 51:16,25 52:21
votes 50:9

_____

**W**

waive 55:6,9,23
  66:10 86:23
waived 68:13 71:4
  72:4,4
waiver 59:20 63:11
  72:12
waivers 62:22
waives 55:15
waiving 59:6
want 16:23 19:18
  24:16 25:17 31:16
  34:19 40:10 49:21
  52:15 57:17 65:20
  72:6 73:13 75:12
  77:4 78:4,17 89:10
  89:11 92:24 93:3
  95:17 100:5
  105:19 106:16
  107:20 108:3
  109:12,17 112:19
  113:19 119:17
  120:12,12 121:19
  121:22 123:22

124:6 141:6 149:4
149:16,22 154:4,8
155:6
**wanted** 12:20 27:25
72:5 89:8 93:11
94:7,9 95:25 98:15
121:24
**wants** 43:18,23 65:2
74:16 84:24 87:5
103:3 107:17
125:13
**WARNER** 8:3
**warning** 122:16
**warranty** 124:22
**WARREN** 7:20
**wasn't** 93:23
**Waterhouse** 136:10
**WATKINS** 7:13
**way** 13:7 18:23 27:4
36:19 40:21,22
48:7 108:24
115:22 117:20
155:11
**ways** 53:24 75:3
**web** 79:15
**website** 47:14
**week** 12:6 13:14
23:15 64:12,13
**weeks** 36:2
**weigh** 40:6
**weighing** 146:8
**Weil** 9:16 87:12
**Weiner** 9:3 103:7
**went** 42:21 48:4
49:5
**we'll** 11:16 30:12
36:22 38:4,5 40:6
60:9 62:4 63:19
65:6 78:17 82:21
107:3 109:11
112:14 120:15
149:24 153:8,8
**we're** 12:4 14:13,23
20:3 36:20 40:5,15
40:25 41:20 45:21
47:21 53:10 70:17

75:14 100:10
101:4 105:22
109:15 111:23
115:22 119:15
123:19 150:21
**we've** 18:18 23:12
23:14 40:7 42:4
43:8 54:23,25
56:10 61:22 75:16
94:16 95:13
**whereof** 157:12
**wholly** 37:15
**willing** 123:19
**window** 69:13
**wish** 105:7 135:23
148:16
**withdraw** 64:7
**withdrawal** 66:5
**withdrawn** 74:15
**witness** 126:23
127:2 135:25
136:3 141:8,10
157:12
**witnesses** 43:17
148:22
**WM** 7:8
**wonder** 102:19
**wondering** 62:19
**Woodward** 9:4
**word** 58:10,10 77:23
111:10
**wording** 75:13
**words** 23:3 69:2
111:12,14
**wordsmith** 119:18
**work** 15:12,13 23:4
23:13 26:5 27:13
28:2,6 34:4 54:7
58:16 85:16,24
106:23 120:15,16
121:5 124:13
**worked** 79:23
**working** 14:23
22:11 23:17,19
26:2,11 40:7 117:7
136:22,24

**works** 22:24 28:20
**worst** 124:7
**worth** 44:21 89:18
132:7 137:19
139:9
**wouldn't** 25:8 85:19
100:9 123:2,5
**write** 125:3 154:22
**writing** 82:2
**written** 21:20 59:2
68:5
**wrong** 65:22 85:24

**X**

**x** 1:5,12
**X(x)** 58:17

**Y**

**Y** 58:18,20
**Yeah** 34:5 37:25
48:5
**year** 51:3 53:23
143:7 144:10
**years** 136:10,14
**yesterday** 48:15
64:16
**York** 1:3,20 7:6,6,16
7:16,22,22 8:11,11
8:17,17 9:12,12,18
9:18
**youÆre** 62:25

**Z**

**Zimen** 9:14 80:10,13
80:13,19 81:12
82:10,14,21 83:20
83:21 84:7 85:23
86:8,15,18
**Zimen's** 65:23 85:6

**$**

**$200,000** 89:21
**$250,000** 85:9,20
**$500,000** 14:18
**$800,000** 89:18

**0**

**05-44481** 1:4

**1**

**1** 11:20 45:24 94:17
125:24 129:10
145:14 147:4
**1,080** 17:13
**1-2** 143:5
**1-29** 125:22
**1.7** 44:15
**10** 15:5 99:14 100:22
**10:35** 1:15
**100** 9:5 10:4
**1000** 7:15
**10004** 1:20
**10017** 9:12
**10022** 7:16 8:17
**10038** 7:6
**1007-2(e)** 4:23
**101** 7:21 8:10
**10153** 9:18
**10176** 7:22
**10178** 8:11
**102(1)** 4:17
**1020** 96:3
**105** 2:5,13,21 4:8,17
**11** 2:5,13,20 3:5,8
4:7,16 5:3,15,21
6:3,15 11:22 15:17
53:10 60:19 97:25
128:5 134:22,24
136:21 143:25
144:2
**11:04** 41:18
**11:30** 41:14
**12** 16:5 48:14,25
125:10 126:2
**12C** 57:20
**12,500** 17:16
**125** 80:25
**13** 17:5 78:9,10
126:3 134:2 148:8
**14** 19:24 51:21 137:7
**15** 20:25 79:22
**15th** 51:3 53:6
**16** 26:20 62:12 63:18

81:25 126:4
138:13
**160** 53:21
**17** 30:18 54:4 96:24
**17th** 13:18 29:17
**17-22** 126:4
**18** 42:10 54:4 88:8
88:11,21 89:5
105:23 109:16
110:8,20 113:17
114:4 116:7 119:8
119:19 121:21
122:3 152:17
**18(a)** 109:6
**18(a)(1)** 109:24
110:14
**18(a)(2)** 118:20,23
**18(a)(3)** 110:9
**18(a)(4)** 109:17
**180** 69:18 70:5,6
**19** 41:6 42:8 54:4

---
**2**

**2** 13:6 44:5 45:24
46:2 47:23
**2a** 46:3 47:23
**2(a)** 143:5
**2.59** 44:21 50:2
**2.9** 138:18
**2:27** 156:8
**20** 106:18 136:14
**200** 54:12
**2000** 30:24
**2002** 3:10 4:10 5:5
6:5 136:9 141:20
**2002(m)** 4:18
**2005** 141:15
**2006** 1:14 157:14
**22** 50:13 103:17
104:19,20
**22-27** 126:6
**25** 28:23 29:6 93:17
95:19 106:18
**25th** 13:20
**250** 86:25
**250-odd** 55:5

**259** 44:14
**26** 157:14
**27** 1:14
**27th** 11:11
**28** 48:12,12,16,17
49:4 92:18
**29** 48:12,13,19 49:4
92:18 148:22
**29th** 12:18 13:2
15:12,22 28:7

---
**3**

**3** 45:24 78:8,10
**30** 41:12 57:23 58:5
**30th** 12:18
**3001** 2:22
**31** 59:23 81:13
**325** 44:18
**327** 5:16
**327(a)** 14:21
**33** 51:25
**330** 5:16
**331** 5:16,21
**354(e)** 151:14
**36** 100:22
**361** 3:9 4:8 5:4 6:4
6:16
**362** 2:21 3:9 4:8 5:4
6:4 114:19 115:8
**362(a)** 114:17
**363** 3:9 5:4 6:4
**363(b)** 6:16
**364** 49:15
**364(c)** 3:9 5:4 6:4
101:16 151:17
**364(c)(1)** 4:8
**364(c)(2)** 4:8
**364(c)(3)** 4:9
**364(d)** 3:9 5:4 6:4
43:8 125:17
151:18
**364(d)(1)** 4:9
**364(e)** 3:10 4:9 5:5
6:5
**365** 100:10
**365(a)** 3:5

**365(d)** 96:3 98:2
99:7
**365(d)(10)** 97:21
100:16
**366** 2:6,13 26:23
**37** 53:22
**38** 62:13 82:19
**39** 62:13 82:19

---
**4**

**4** 24:5 46:14 57:21
92:15 93:18 109:7
129:23
**4th** 12:7 13:24 14:5
15:2 141:15
**4.5** 139:9 148:9
**40** 44:4 109:7
**4001** 3:10,18 4:10
5:5,13 6:5,13
**4001(c)** 6:17
**40950** 9:4
**41** 85:8
**42.88** 51:6,16
**425** 9:11
**43** 124:19
**45** 29:25 118:24
**45-day** 15:20
**48243** 10:5
**48304** 9:6
**49503** 8:5

---
**5**

**5** 125:25
**50** 119:17 134:12
154:2
**50,000** 14:17
**500** 132:12
**503** 2:6,13
**506(a)** 84:4 86:24
**506(b)** 79:18 80:8
**506(c)** 72:8,9,12
73:11
**507** 2:6,14
**507(b)** 72:8 73:11
89:6,20
**54** 93:18
**541** 2:21

**55** 72:8
**551** 72:9,16
**553** 73:20
**599** 8:16

---
**6**

**6** 24:21 28:19 103:12
125:25
**6(a)** 104:14,15 105:3
**6-12** 129:13 145:15
**60** 154:3
**60-day** 100:18
**62** 114:12,19
**620-1** 1:19

---
**7**

**7** 29:25 96:25
**7(b)** 72:22
**7(c)** 96:25 110:22
111:13,18
**7(d)** 103:15
**7.6** 139:7
**767** 9:17

---
**8**

**8** 13:7 109:23 115:8
**8th** 141:15
**850** 138:16
**86** 52:7
**885** 7:14

---
**9**

**9** 14:9 28:19 29:11
**9.6** 137:19
**90-day** 69:13
**900** 8:4
**9006** 4:18
**9007** 4:18
**9014** 3:11 4:10,18
5:6 6:6