**Hearing Date And Time: May 31, 2007 at 10:00 a.m.**
**Response Date And Time: May 24, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                    :
        In re                       :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                                    :    (Jointly Administered)
        Debtors.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBTORS' TWELFTH OMNIBUS OBJECTION (PROCEDURAL) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) DUPLICATE AND
AMENDED CLAIMS AND (B) EQUITY CLAIMS

("TWELFTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (the "Twelfth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1.   On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.   No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.   This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.   The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its

transformation plan.  First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business.  Second, the Debtors must conclude their negotiations with

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

GM's business commitment to the Company.  Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the

Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan.

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's achievement of consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

       13.     On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an

amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.    On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors do not believe that these developments are

expected to preclude the Debtors from filing a joint plan of reorganization and related documents

with the Court prior to the current expiration of the exclusivity period on July 31, 2007 or

emerging from chapter 11 reorganization this year.  The Debtors also confirmed that none of the

parties entitled to give notice of termination of the framework agreements had done so as of

April 19, 2007 and that these agreements remain effective as previously filed until modified or

terminated.

15.    Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as the

world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§

107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

7

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor

(collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with

this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,

2006) and (b) the persons and entities included in the notice database compiled by the Debtors,

but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date

Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and the Vindicator, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases.  The Debtors have filed six omnibus claims objections which objected to claims on procedural grounds[5] and five omnibus claims objections which objected to claims on substantive grounds.[6]  Pursuant to such omnibus claims objections, the Court has disallowed and expunged approximately 8,846 Claims and another 500 are the subject of pending objections.

---

[5]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15, 2007; and the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16, 2007.

[6]    The Debtors filed the Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records  (Docket No. 6100) on December 8, 2006; Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007; Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; and Eleventh Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books and Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on March 16, 2007.

20.     On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

21.     In this Twelfth Omnibus Claims Objection, the Debtors are objecting to 71

Proofs of Claim.[7]

<u>Relief Requested</u>

22.     By this objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) those

Claims set forth on <u>Exhibit A</u> attached hereto because they are duplicative of other Claims or

---

[7]     Contemporaneously with this Twelfth Omnibus Claims Objection, the Debtors are filing the Thirteenth
Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Insurance
Claims Not Reflected on Debtors' Books and Records, (d) Protective Insurance Claims, (e) Untimely Claims
And Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims Subject To Modification and
Claims Subject To Modification Subject to Reclamation Agreement (the "Thirteenth Omnibus Claims
Objection").  In the Thirteenth Omnibus Claims Objection, the Debtors object to Claims on substantive grounds
and are seeking (i) to expunge and disallow Claims that (a) are insufficiently documented, (b) are not reflected
on the Debtors' books and records, including certain Claims filed by taxing authorities, (c) were not timely filed
pursuant to the Bar Date Order, and (d) are protective Claims filed by insurance companies, and (ii) to modify
certain Claims, including (a) Claims filed by taxing authorities and (b) Claims in which the claimant asserted a
reclamation demand and the claimant and the Debtors entered into a letter agreement regarding the valid
amount of the reclamation demand, with such agreement being subject to certain reserved defenses.  The
Debtors are objecting to 698 Proofs of Claim in the Thirteenth Omnibus Claims Objection.

have been amended or superseded by later-filed Claims and each such expunged Claim is

survived by one Claim, (b) those Claims set forth on <u>Exhibit B-1</u> attached hereto because they

were filed by holders of Delphi common stock solely on account of their stock holdings and were

untimely pursuant to the Bar Date Order, and (c) those Claims set forth on <u>Exhibit B-2</u> attached

hereto because they were filed by holders of Delphi common stock solely on account of their

stock holdings and contain insufficient documentation in support of the unpaid dividends

portions of the Claims asserted.

F.    <u>Duplicate And Amended Claims</u>

23.    During the Debtors' review of the Proofs of Claim received to date, the

Debtors determined that certain of the Proofs of Claim filed in fact assert duplicate Claims (each,

a "Duplicate Claim") for a single liability.  In some instances, Duplicate Claims arose when a

claimant filed Proofs of Claim against multiple Debtor entities for the same liability.  In an effort

to eliminate the Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting

documentation provided for those Proofs of Claim, and the Debtors' Schedules and Statements to

make a determination as to which duplicate claim should be the surviving claim.

24.    Additionally, the Debtors determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Proofs of Claim").  For instance,

many Amended Proofs of Claim were filed to amend an amount previously claimed in an earlier

Proof of Claim (the "Original Proof of Claim").  Other Amended Proofs of Claim were filed to

amend the classification of part or all of an earlier Original Proof of Claim.

25.    It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate

Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original

Proofs of Claim for which Amended Proofs of Claim were subsequently filed (collectively, the "Duplicate and Amended Claims").

26.      Set forth on Exhibit A attached hereto is a list of Claims that the Debtors have identified as Duplicate and Amended Claims.  For each Duplicate and Amended Claim, Exhibit A classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a "Surviving Claim" (the "Surviving Claim").[8]  Generally, the Surviving Claims reflect the classifications of the liabilities as reflected on the Debtors' Schedules.[9]  The Debtors request that the Claims marked as Expunged Claims on Exhibit A be disallowed and expunged. With respect to the Claims on Exhibit A marked as Surviving Claims, the Debtors do not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A, however, does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The Debtors therefore expressly reserve all of their rights to further object to any or all of the Surviving Claims at a later date on any basis whatsoever, except as expressly provided in paragraph 37 below.

---

[8]    Certain of the Claims on Exhibit A are listed in the amount of $0.00.  This reflects the fact that the claim amount asserted by the Claimant is unliquidated.

[9]    As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors' Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

> Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has been consolidated for purposes of the Schedules and Statements and such consolidated financial information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of the books and records of the Catalyst Entities, claimants should not retain more than one claim for a single liability.  Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as obligations of another Debtor entity at a later date.

27.     Accordingly, the Debtors (a) object to the Duplicate and Amended Claims and (b) seek entry of an order disallowing and expunging the Duplicate and Amended Claims in their entirety.

G.     Equity Claims

28.     During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim filed against the Debtors in fact represent proofs of interest that were filed by or on behalf of persons or entities holding Delphi common stock (the "Equity Claims").  The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of Delphi common stock to ensure that holders of stock who wished to assert claims against any of the Debtors that were not based solely upon their ownership of Delphi common stock would be afforded the opportunity to file claims in these chapter 11 cases.

29.     The ownership of Delphi common stock constitutes an equity interest in Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section 101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was approved by this Court, creditors and equity holders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[10]

---

[10]   The Bar Date Order provides, in relevant part:

> Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:
>
> *     *     *
>
> (h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or rescission based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

    (i)    <u>Untimely Equity Claims</u>

30.    Certain of the Equity Claims were received by the Debtors after the Bar Date ("Untimely Equity Claims").  With respect to those Untimely Clams, the Debtors also object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.[11]

31.    Attached hereto as <u>Exhibit B-1</u> is a list of Untimely Equity Claims that the Debtors have identified as representing solely proofs of interest and which were not timely filed pursuant to the Bar Date Order.[12]  The Debtors therefore seek to have these claims reclassified from Claims to interests and be disallowed and expunged as untimely.  To the extent that the entities and individuals that filed the Untimely Equity Claims listed on <u>Exhibit B-1</u> hold valid equity interests in Delphi as of the applicable record date, the requested reclassification of the Proof of Claim and disallowance of the Claim will not impair any entitlements the Claimants may ultimately have under a plan of reorganization with respect to such holders' equity interests.

32.    Accordingly, the Debtors (a) object to the Untimely Equity Claims and (b) seek entry of an order disallowing and expunging the Untimely Equity Claims in their entirety.

---

[11]    The Bar Date Order Provides:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set form in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

[12]    None of the Untimely Equity Claims listed on <u>Exhibit B-1</u> hereto were included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238).

(ii)    <u>Insufficiently Documented Equity Claims</u>

33.    During their review, the Debtors discovered that certain Proofs of Claim

that were filed in these cases by holders of stock do not include sufficient documentation to

support a portion of the Claim asserted (the "Insufficiently Documented Equity Claims").

Specifically, the Debtors have determined that the Insufficiently Documented Equity Claims

assert both an equity interest and an unpaid dividend amount.  Because the Proofs of Claim lack

adequate documentation regarding the unpaid dividend, however, the Debtors are unable to

determine the validity of the unpaid dividend portion of the Claim. This deficiency in

documentation has made it impossible for the Debtors meaningfully to review the asserted

Claims.  Although the Debtors contacted each Claimant which filed an Insufficiently

Documented Equity Claim, the Debtors received no additional documentation from such

Claimants.

34.    The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) .  <u>In re</u>

<u>WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); <u>see also</u> <u>In re Allegheny Intern., Inc.</u>, 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); <u>In re Chiro Plus, Inc.</u>, 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); <u>In re</u>

<u>Armstrong Finishing, L.L.C.</u>, No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); <u>In re United Cos. Fin. Corp.</u>, 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit B-2 to provide sufficient documentation to permit an understanding of the basis for

their Claims, those Claims do not make out a prima facie case against the Debtors.

35.    Attached hereto as Exhibit B-2 is a list of the Insufficiently Documented

Equity Claims which the Debtors have identified as Claims that do not contain sufficient

documentation to permit an understanding of the basis for the claim.  In the event that this Court

does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their

rights to further object to the Insufficiently Documented Equity Claims at a later date on any

basis whatsoever.  Accordingly, the Debtors (a) object to the Insufficiently Documented Equity

Claims and (b) seek entry of an order disallowing and expunging the Insufficiently Documented

Equity Claims in their entirety.

## Separate Contested Matters

36.    Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Twelfth Omnibus Claims Objection,

each such Claim and the objection to such Claim asserted in this Twelfth Omnibus Claims

Objection will be deemed to constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered

by the Court with respect to an objection asserted in this Twelfth Omnibus Claims Objection will

be deemed a separate order with respect to each Claim.

## Reservation Of Rights

37.    The Debtors expressly reserve the right to amend, modify, or supplement

this Twelfth Omnibus Claims Objection and to file additional objections to the Proofs of Claim

or any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more of the grounds for objection stated in this Twelfth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.

38.    Notwithstanding the foregoing, solely to the extent that (a) a claimant filed duplicative claims against different Debtors for the same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) the Debtors by this motion are seeking to have certain of such claimant's Multiple Debtor Duplicative Claims disallowed and expunged, if one of the Multiple Debtor Duplicative Claims was originally filed against the correct Debtor, the Debtors would not seek to have the claimant's remaining Multiple Debtor Duplicative Claim (the "Remaining Claim") disallowed and expunged solely on the basis that such Remaining Claim is asserted against the incorrect Debtor.  For the avoidance of doubt, except as expressly provided in the preceding sentence, the Remaining Claims would remain subject to further objection on any grounds whatsoever, including, without limitation, that any such Remaining Claim is asserted against the incorrect Debtor if the claimant did not file a Multiple Debtor Duplicative Claim against the correct Debtor.  Furthermore, the Debtors reserve the right to object to any Remaining Claim and any holder of a Remaining Claim may seek relief from this Court for the purposes of requesting that this Court modify the Remaining Claim to assert such Remaining Claim against a different Debtor.

<u>Responses To Objections</u>

39.    Responses to the Twelfth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but are qualified in all respects by the express terms thereof.

17

H.      Filing And Service Of Responses

40.     To contest an objection, responses (each, a "Response"), if any, to the

Twelfth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on May 24, 2007**.

I.      Contents Of Responses

41.     Every Response to this Twelfth Omnibus Claims Objection must contain

at a minimum the following:

(a)     the title of the Claims objection to which the Response is directed;

(b)     the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)     a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)     unless already set forth in the proof of claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints; and

(e)     the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the Claim.

J.    Timely Response Required

42.    If a Response is properly and timely filed and served in accordance with the above procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future Claims hearing. With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on May 31, 2007 at 10:00 a.m. (prevailing Eastern time).

43.    Only those Responses made in writing and timely filed and received will be considered by the Court. If a Claimant whose Proof of Claim is subject to the Twelfth Omnibus Claims Objection and who is served with the Twelfth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the Twelfth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order, provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures Order.

<u>Replies To Responses</u>

44.      Replies to any Responses shall be governed by the Claims Objection

Procedures Order.

<u>Service Of Twelfth Omnibus Claims Objection Order</u>

45.      Service of any order with regard to this Twelfth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

46.      Questions about this Twelfth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the</u>

<u>Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

47.      Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418)

and the Claims Objection Procedures Order.

48.      Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twelfth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection, as well as a copy of the Claims Objection Procedures Order.  A form of Notice Of Objection To Claim is attached hereto as Exhibit C.  Claimants will receive a copy of this Twelfth Omnibus Claims Objection without Exhibits A, B-1, and B-2 hereto.  Claimants will nonetheless be able to review Exhibits A, B-1, and B-2 hereto free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

49.     Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          April 27, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                    - and -

                              By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession