**Hearing Date And Time: May 31, 2007 at 10:00 a.m.**
**Response Date And Time: May 24, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - -   -  x
                                      :
      In re                           :    Chapter 11
                                      :
DELPHI CORPORATION, et al.,           :    Case No. 05-44481 (RDD)
                                      :
                                      :    (Jointly Administered)
                Debtors.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

DEBTORS' THIRTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) PROTECTIVE INSURANCE CLAIMS, (D) INSURANCE CLAIMS NOT
REFLECTED ON DEBTORS' BOOKS AND RECORDS, (E) UNTIMELY CLAIMS AND
UNTIMELY TAX CLAIMS, AND (F) CLAIMS SUBJECT TO MODIFICATION,
TAX CLAIMS SUBJECT TO MODIFICATION, AND CLAIMS SUBJECT TO
MODIFICATION AND RECLAMATION AGREEMENT

("THIRTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not

Reflected On Debtors' Books And Records, (c) Protective Insurance Claims, (d) Insurance

Claims Not Reflected On Debtors' Books And Records, (e) Untimely Claims And Untimely Tax

Claims, And (f) Claims Subject To Modification, Tax Claims Subject to Modification, And

Claims Subject To Modification And Reclamation Agreement (the "Thirteenth Omnibus Claims

Objection"), and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in

---

[1]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]   On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.      The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
        valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
        loss in calendar year 2004 was $482 million.

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the
United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be
imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product
portfolio, operational issues, and forward-looking revenue requirements.  Because discussions
with its major unions and GM had not progressed sufficiently by the end of the third quarter of
2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the
Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its
transformation plan.  First, Delphi must modify its labor agreements to create a competitive
arena in which to conduct business.  Second, the Debtors must conclude their negotiations with
GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain
GM's business commitment to the Company.  Third, the Debtors must streamline their product
portfolio to capitalize on their world-class technology and market strengths and make the
necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform
their salaried workforce to ensure that the Company's organizational and cost structure is
competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the
Debtors must devise a workable solution to their current pension situation.

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan.

12.     On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements.  The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.  The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

13.     On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.     On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors do not believe that these developments are

expected to preclude the Debtors from filing a joint plan of reorganization and related documents

with the Court prior to the current expiration of the exclusivity period on July 31, 2007 or

emerging from chapter 11 reorganization this year.  The Debtors also confirmed that none of the

parties entitled to give notice of termination of the framework agreements had done so as of

April 19, 2007 and that these agreements remain effective as previously filed until modified or

terminated.

15.     Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as the

world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5), against a Debtor

(collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with

this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,

2006) and (b) the persons and entities included in the notice database compiled by the Debtors,

but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date

Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

8

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed six omnibus procedural Claims

objections[5] and five omnibus substantive Claims objections.[6]  Pursuant to such omnibus Claims

---

[5]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006;
the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii)
Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection
(Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended
Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No.
6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The
Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15,
2007; and the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P.
3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16,
2007.

[6]    The Debtors filed the (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors'
Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And
Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; Fifth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims
With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records  (Docket No.
6100) on December 8, 2006; Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors'
Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007; Ninth Omnibus

*(cont'd)*

objections, the Court has disallowed and expunged approximately 8,846 Claims, and another 500

Claims are the subjects of pending objections.

20.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453) (the "Claims Objection Procedures Motion"), in which

the Debtors requested this Court, among other things, to approve certain procedures for contested

claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i)

Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures

Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

21.    In this Thirteenth Omnibus Claims Objection, the Debtors are objecting to

698 Proofs of Claim.[7]

_____

*(cont'd from previous page)*

Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely
Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; and Eleventh
Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A)
Insufficiently Documented Claims (B) Claims Not Reflected On Debtors' Books and Records, (C) Untimely
Claims, and (D) Claims Subject To Modification (Docket No. 7301) on March 16, 2007.

[7]    Contemporaneously with the Thirteenth Omnibus Claims Objection, the Debtors are filing the Twelfth Omnibus
Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate
And Amended Claims And (B) Equity Claims (the "Twelfth Omnibus Claims Objection").  In the Twelfth
Omnibus Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and
disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed
Claims, (b) were filed by equity holders solely on account of their stock holdings, or (c) are equity claims that
are insufficiently documented.  The Debtors are objecting to 71 Proofs of Claim in the Twelfth Omnibus Claims
Objection.

<u>Relief Requested</u>

22.    By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) disallowing and expunging those

Claims set forth on <u>Exhibit A-1</u> attached hereto because they contain insufficient documentation

in support of the Claims asserted, (b) disallowing and expunging the Claim set forth on <u>Exhibit</u>

<u>A-2</u> attached hereto because it contains insufficient documentation in support of the Claim

asserted and was untimely pursuant to the Bar Date Order, (c) disallowing and expunging those

Claims set forth on <u>Exhibit B-1</u> attached hereto because they assert liabilities or dollar amounts

that are not reflected on the Debtors' books and records, (d) disallowing and expunging those

Claims set forth on <u>Exhibit B-2</u> attached hereto because they assert liabilities or dollar amounts

that are not reflected on the Debtors' books and records and were untimely pursuant to the Bar

Date Order, (e) disallowing and expunging the Claims set forth on <u>Exhibit C-1</u> attached hereto

because they are Claims filed by insurance companies that are merely protective in nature, (f)

disallowing and expunging the Claim set forth on <u>Exhibit C-2</u> attached hereto because it is a

Claim filed by an insurance company that asserts liabilities that are not reflected on the Debtors'

books and records, (g) disallowing and expunging the Claims set forth on <u>Exhibit D-1</u> attached

hereto because they were untimely pursuant to the Bar Date Order, (h) disallowing and

expunging the Claims set forth on <u>Exhibit D-2</u> attached hereto because they are claims filed by

taxing authorities that were untimely pursuant to the Bar Date Order, (i) revising the asserted

amount or classification, and/or changing the identity of the alleged Debtor, with respect to the

Claims set forth on <u>Exhibit E-1</u> attached hereto, (j) revising the asserted amount or classification,

and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on <u>Exhibit</u>

<u>E-2</u> attached hereto, which were filed by taxing authorities, and (k) revising the asserted amount

and/or classification with respect to the Claims set forth on Exhibit E-3 attached hereto, each of
which is also subject to an agreement between the claimant and the Debtors relating to the valid
amount of each claimant's reclamation demand, subject to certain reserved defenses.

### Objections To Claims

F.    Insufficiently Documented Claims

23.    During their review, the Debtors discovered that certain Proofs of Claim
do not include sufficient documentation to support the claim asserted (the "Insufficiently
Documented Claims").  This deficiency in documentation has made it impossible for the Debtors
meaningfully to review the asserted Claims.  Although the Debtors contacted each Claimant
which filed an Insufficiently Documented Claim (other than those Claimants which filed a blank
proof of claim form), the Debtors received no additional documentation from such Claimants.[8]

24.    The burden of proof to establish a claim against an estate rests on the
claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is
not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re
WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only
a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial
obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d
167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to
support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears
initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re
Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

---

[8]    Claimants which responded to the Debtors' communications and provided additional information are not
included as part of this objection.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit A-1 to provide sufficient documentation to permit an understanding of the basis for

their Claims, those Claims do not make out a prima facie case against the Debtors.

      25.     The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against

the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence

of the Debtors' liability for the Claim.  In addition, the Insufficiently Documented Claim listed

on Exhibit A-2 was received by the Debtors after the Bar Date (the "Untimely Insufficiently

Documented Claim").  With respect to the Untimely Insufficiently Documented Claim, the

Debtors also object to that Claim on the basis that it was not timely filed pursuant to the Bar Date

Order.[9]

      26.     Attached hereto as Exhibit A-1 is a list of the Insufficiently Documented

Claims which the Debtors have identified as Claims that do not contain sufficient documentation

to permit an understanding of the basis for the claim.  Identified on Exhibit A-2 is the Untimely

---

[9]   The Bar Date Order provides, in relevant part:

     Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails
     to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and
     enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in
     an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-
     contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set
     forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon,
     or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in
     respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from
     any and all indebtedness or liability with respect to such Unscheduled Claim.

     Bar Date Order ¶ 11.

Insufficiently Documented Claim, which the Debtors have concluded does not contain sufficient documentation to permit an understanding of the basis for the Claim and, in addition, was not timely filed pursuant to the Bar Date Order.[10]  In the event that this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim at a later date on any basis whatsoever.   Accordingly, the Debtors (a) object to both the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim and (b) seek entry of an order disallowing and expunging both the Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim in their entirety.

G.      Claims Not Reflected On The Debtors' Books And Records

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books and Records Claims").  In addition, the Debtors determined that certain other Proofs of Claim also assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the Bar Date Order (the "Untimely Books and Records Claims"). The Debtors believe that the parties asserting both Books and Records Claims and Untimely Books and Records Claims are not creditors of the Debtors.

28.    The bases for determining that the Debtors are not liable for an asserted Claim include, but are not limited to, the following: (a) the Debtors' books and records do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the

---

[10]    The Untimely Insufficiently Documented Claims listed on Exhibit A-2 were not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this

Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior

to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability

that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

29.     A claimant's proof of claim is entitled to the presumption of prima facie

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'" WorldCom, 2005 WL 3832065, at

*4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts

to the claimant to prove the validity of the claim by a preponderance of the evidence.'" Id.

30.     Attached hereto as Exhibit B-1 is a list of the Books and Records Claims

that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto

as Exhibit B-2 is a list of the Untimely Books and Records Claims that the Debtors have also

identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely

Books and Records Claims not only because the Debtors have no liability in respect thereof, but

also because the Claims were not timely filed pursuant to the Bar Date Order.[11]  If this Court

does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their

rights to further object to any or all of the Books and Records Claims and the Untimely Books

and Records Claims at a later date on any basis whatsoever.

31.     Accordingly, the Debtors (a) object to the Books and Records Claims and

the Untimely Books and Records Claims and (b) seek entry of an order disallowing and

---

[11]    The Untimely Books and Records Claims listed on Exhibit B-2 hereto were not included as part of the Claims
Timeliness Motion.

expunging both the Books and Records Claims and the Untimely Books and Records Claims in their entirety.

H.    <u>Insurance Claims</u>

32.    During the Debtors' review of the Proofs of Claim, the Debtors reviewed certain of the Proofs of Claim filed by insurance companies (the "Insurance Claims").

(i)    <u>Protective Insurance Claims</u>

33.    The Debtors determined that certain Insurance Claims are being asserted for future rejection damages that could arise if the Debtors ultimately reject an executory contract for insurance coverage (the "Insurance Contracts") pursuant to section 365 of the Bankruptcy Code (the "Protective Insurance Claims").

34.    The Debtors have assumed the Insurance Contracts that are the subject of the Protective Insurance Claims.  Therefore, the Debtors object to the Protective Insurance Claims because they in fact represent Claims for liabilities that will never be incurred.

35.    Attached hereto as <u>Exhibit C-1</u> is a list of Insurance Claims that the Debtors have identified as Protective Insurance Claims.  Accordingly, the Debtors (a) object to the Protective Insurance Claims and (b) seek entry of an order disallowing and expunging the Protective Insurance Claims in their entirety.

(ii)    <u>Books And Records Insurance Claim</u>

36.    In addition, the Debtors determined that a Proof of Claim by one insurance company asserted a liability not owing pursuant to the Debtors' books and records (the "Books and Records Insurance Claim").  This claim is identified on <u>Exhibit C-2</u> attached hereto. Accordingly, the Debtors (a) object to the Books and Records Insurance Claim and (b) seek to have the Books and Records Insurance Claim expunged in its entirety.

16

I.    Untimely Claims

37.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim were received by the Debtors after the Bar Date (the "Untimely Claims").  With respect to the Untimely Claims, the Debtors object to such Claims on the basis that they were not timely filed pursuant to the Bar Date Order.  Attached hereto as Exhibit D-1 is a list of Untimely Claims.  The Debtors also determined that certain of the Proofs of Claims filed by taxing authorities (the "Tax Claims") were received by the Debtors after the Bar Date or were amended after the Bar Date (the "Untimely Tax Claims").  Attached hereto as Exhibit D-2 is a list of Untimely Tax Claims.  Accordingly, the Debtors (a) object to the Untimely Claims and Untimely Tax Claims[12] and (b) seek the entry of an order disallowing and expunging the Untimely Claims and Untimely Tax Claims.

J.    Claims Subject To Modification

38.    During the Debtors' review of the Proofs of Claim, the Debtors have determined that certain Claims (a) are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured, administrative, or priority status (collectively, the "Claims Subject to Modification").

39.    Although in the Thirteenth Omnibus Claims Objection the Debtors do not seek to disallow and expunge the Claims Subject to Modification, based on an initial review the Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth on Exhibit E-1 attached hereto.  Moreover, in some cases, the Debtors

---

[12]    None of the Untimely Claims listed on Exhibit D-1 and Untimely Tax Claims listed on Exhibit D-2 hereto were included as part of the Claims Timeliness Motion.

have determined that such Claims should be reclassified as set forth on Exhibit E-1 attached

hereto.  Finally, in some cases, the Debtors have determined that such Claims should be asserted

against a different Debtor entity, as indicated on Exhibit E-1 attached hereto by a change in the

applicable case number.  The bases for placing a Claim in the Claims Subject to Modification

category of objection include, but are not limited to, the following: the asserted Claim (a) does

not account for amounts that may have been paid or credited against such Claim prior to the

commencement of these cases, (b) may include postpetition liabilities, (c) does not account for

amounts that may have been paid or credited against such Claim following the commencement

of these cases, (d) was docketed and filed against the wrong Debtor entity, and/or (e) is

misclassified as a priority or secured claim.  Thus, the Debtors seek to (i) convert the amount of

each Claim Subject to Modification to a fully liquidated, U.S.-denominated amount consistent

with the Debtors' books and records and/or the liquidated amount requested by the Claimant

(thus eliminating the unliquidated component), as appropriate, (ii) change the identity of the

Debtor against which the Claim is asserted, and/or (iii) appropriately reclassify the Claim.

   40. As stated above, a claimant's proof of claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the Unsubstantiated Claims,

the Debtors' books and records refute that certain of the claims asserted in each Claim Subject to

Modification are actually owed by any of the Debtors.

   41. Set forth on Exhibit E-1 attached hereto is a list of Claims Subject to

Modification that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against a different Debtor than the one identified by the claimant.

For each Claim Subject to Modification, Exhibit E-1 reflects the amount, classification, and

Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[13] and

the proposed modified dollar amount and classification for the Claim, and the Debtor against

which the Claim should be asserted, in a column titled "Claim As Modified."

       42.     The Debtors object to the amount, classification, and/or identity of the

Debtor for each Claim Subject to Modification listed on Exhibit E-1 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

Modified" column of Exhibit E-1.  Thus, no Claimant listed on Exhibit E-1 would be entitled to

(a) recover for any Claim Subject to Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit E-1, (b) assert a classification that is

inconsistent with the classification that is listed in the "Claim As Modified" column, and/or (c)

assert a claim against a Debtor other than that whose case number is listed in the "Claim As

Modified" column on Exhibit E-1, subject to the Debtors' right to further object to each such

Claim Subject to Modification.  For clarity, Exhibit E-1 refers to the Debtor entities by case

number and Exhibit F displays the formal name of seventeen Debtor entities and their associated

bankruptcy case numbers referenced in Exhibit E-1.

       43.     The inclusion of the Claims Subject to Modification on Exhibit E-1,

however, does not reflect any view by the Debtors as to the ultimate validity of any such Claim.

The Debtors therefore expressly reserve all of their rights to further object to any or all of the

Claims Subject to Modification at a later date on any basis whatsoever.

       44.     Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject to Modification and (b) seek an order

---

[13]   The Asserted Claim Amount on Exhibits E-1, E-2, and E-3 reflect only asserted liquidated claims.

modifying the Claims Subject to Modification to reflect the Modified Total, classification for the

Claim, and/or the Debtor against which such Claim should be asserted, as set forth on <u>Exhibit E-1</u>.

        (iii)    <u>Tax Claims Subject To Modification</u>

        45.    In addition, the Debtors have also determined that certain Tax Claims

asserted against the Debtors (a) state the incorrect amount and/or (b) were filed and docketed

against the wrong Debtors, and/or (c) assert secured or unsecured priority status without

sufficient documentation to support such status (collectively, the "Tax Claims Subject to

Modification").

        46.    Set forth on <u>Exhibit E-2</u> attached hereto is a list of Tax Claims Subject to

Modification that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Tax Claim Subject to

Modification, <u>Exhibit E-2</u> reflects the amount, classification, and Debtor asserted in the Proof of

Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and

classification for the Tax Claim, and the Debtor against which the Tax Claim should be asserted,

in a column titled "Claim As Modified."

        47.    The Debtors object to the amount, classification, and/or identity of the

Debtor for each Tax Claim Subject to Modification listed on <u>Exhibit E-2</u> and request that each

such Claim be revised to reflect the amount, classification, and Debtor listed in the "Tax Claim

As Modified" column of <u>Exhibit E-2</u>.  Thus, no Claimant listed on <u>Exhibit E-2</u> would be entitled

to (a) recover for any Tax Claim Subject to Modification in an amount exceeding the dollar value

listed as the "Modified Total" for such Claim on <u>Exhibit E-2</u>, (b) assert a classification that is

inconsistent with the classification that is listed in the "Claim As Modified" column, and/or (c)

assert a claim against a Debtor other than that whose case number is listed in the "Claim As

Modified" column on Exhibit E-2, subject to the Debtors' right to further object to each such Tax

Claim Subject to Modification.  For clarity, Exhibit E-2 refers to the Debtor entities by case

number and Exhibit F displays the formal name of seventeen Debtor entities and their associated

bankruptcy case numbers referenced in Exhibit E-2.

48.    Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or Debtor for each Tax Claim Subject to Modification and (b) seek an order modifying the

Tax Claims Subject to Modification to reflect the Modified Total, classification, and/or Debtor

against which such Claim should be asserted, as set forth on Exhibit E-2.

(iv)    Claims Subject To Modification And Reclamation Agreement

49.    In addition, the Debtors have also determined that certain Claims (the

"Claims Subject to Modification and Reclamation Agreement") assert a reclamation demand and

either (a) the Debtors and the claimant have entered into a letter agreement whereby the Debtors

and the claimant agreed upon the valid amount of the reclamation demand or (b) the claimant has

consented to the Debtors' determination of the valid amount of the reclamation demand (with

respect to (a) and (b) each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at

any time and notwithstanding the claimant's agreement or consent to the amount pursuant to by

the Reclamation Agreement, a judicial determination that certain reserved defenses with respect

to the reclamation demand are valid.

50.    Set forth on Exhibit E-3 attached hereto is a list of Claims Subject to

Modification and Reclamation Agreement that the Debtors believe should be modified solely to

assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For

each Claim Subject to Modification and Reclamation Agreement, Exhibit E-3 reflects the

amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim as

Docketed" and the proposed modified dollar amount and classification for Claim Subject to

21

Modification and Reclamation Agreement, and the Debtor against which such Claim should be asserted, in a column titled "Claim As Modified."

51.     The Debtors object to the amount, classification, and/or identity of the Debtor for each Claim Subject to Modification and Reclamation Agreement listed on Exhibit E-3 and request that each such Claim be revised to reflect the amount, classification, and identity of the Debtor listed in the "Claim As Modified" column of Exhibit E-3.  Thus, no Claimant listed on Exhibit E-3 would be entitled to (a) recover for any Claim Subject to Modification and Reclamation Agreement in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit E-3 or (b) assert a classification that is inconsistent with the classification that is listed in the "Claim As Modified" column, subject to the Debtors' right to further object to each such Claim Subject to Modification and Reclamation Agreement.  For clarity, Exhibit E-3 refers to the Debtor entities by case number and Exhibit F displays the formal name of seventeen Debtor entities and their associated bankruptcy case numbers referenced in Exhibit E-3.

52.     Accordingly, the Debtors (a) object to the Amount, classification, and/or identity of the Debtor for the Claims Subject to Modification and Reclamation Agreement and (b) seek an order modifying the Claims Subject to Modification and Reclamation Agreement to reflect the Modified Total, classification, and/or identity of the Debtor against which such Claim should be asserted, as set forth on Exhibit E-3.

<u>Separate Contested Matters</u>

53.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Thirteenth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Thirteenth Omnibus Claims

Objection will be deemed to constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered

by the Court with respect to an objection asserted in this Thirteenth Omnibus Claims Objection

will be deemed a separate order with respect to each Claim.

Reservation Of Rights

54.    The Debtors expressly reserve the right to amend, modify, or supplement

this Thirteenth Omnibus Claims Objection and to file additional objections to the Proofs of

Claim or any other Claims (filed or not) which may be asserted against the Debtors, including

without limitation the right to object to any claim on the basis that it has been asserted against the

wrong Debtor entity.  Should one or more of the grounds for objection stated in this Thirteenth

Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other

stated grounds or on any other grounds that the Debtors discover during the pendency of these

cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the

extent that such Claim has been paid.

Responses To Objections

55.    Responses to the Thirteenth Omnibus Claims Objection are governed by

the provisions of the Claims Objection Procedures Order.  The following summarizes the

provisions of that Order, but is qualified in all respects by the express terms thereof.

K.    Filing And Service Of Responses

56.    To contest an objection, responses (a "Response"), if any, to the Thirteenth

Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

23

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on May 24, 2007.**

L.    Contents Of Responses

      57.    Every Response to this Thirteenth Omnibus Claims Objection must

contain at a minimum the following:

      (a)    the title of the claims objection to which the Response is directed;

      (b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

      (c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

      (d)    unless already set forth in the proof of claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

      (e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

M.    Timely Response Required

58.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on May 31, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Motion will apply to all Responses and hearings arising from this Thirteenth Omnibus Claims Objection.

59.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose proof of claim is subject to the Thirteenth Omnibus Claims Objection and who is served with the Thirteenth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the Thirteenth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures Order.

60.     To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

## Replies To Responses

61.     Replies to any Responses shall be governed by the Claims Objection Procedures Order.

## Service Of Thirteenth Omnibus Claims Objection Order

62.     Service of any order with regard to this Thirteenth Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

## Further Information

63.     Questions about this Thirteenth Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

26

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

64.    Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418),

and the Claims Objection Procedures Order.

65.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this

Thirteenth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-1, A-2, B-1, B-2,

C-1, C-2, D-1, and D-2 is attached hereto as Exhibit G.  A form of the Notice Of Objection To

Claim to be sent to the Claimants listed on Exhibits E-1, E-2, and E-3 is attached hereto as

Exhibit H.  Claimants will receive a copy of this Thirteenth Omnibus Claims Objection without

Exhibits A through E hereto.  Claimants will nonetheless be able to review such exhibits free of

charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light

of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

66.    Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         April 27, 2007

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 9331)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

     - and -

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession