1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


            October 27, 2006

            10:35 AM




                One Bowling Green

                Room 620-1

                New York, NY 10004


B E F O R E:


HON. ROBERT D. DRAIN,

U.S. BANKRUPTCY JUDGE

2

1     DELPHI CORPORATION

2

3 Objection to Motion /Objection of Certain

4 Utility Companies to Motion for Interim and

5 Final Orders Under 11 U.S.C. Sections 105,

6 366, 503, and 507 (I) Prohibiting Utilities

7 from Altering, Refusing, or Discontinuing

8 Services on Account of Pre-petition Invoices

9 and (II) Establishing Procedures for

10 Determining Requests for Additional Assurance

11

12 Motion to Allow Motion For Interim And Final

13 Orders Under 11 U.S.C. Sections 105, 366, 503,

14 And 507 (I) Prohibiting Utilities From

15 Altering, Refusing, Or Discontinuing Services

16 On Account Of Pre-petition Invoices And (II)

17 Establishing Procedures For Determining

18 Requests For Additional Assurance

19

20 Motion to Authorize Motion For Order Under 11

21 U.S.C. Sections 105, 362, And 541 And Fed.R.

22 Bankr. P. 3001 Establishing Notification And

23 Hearing Procedure For Trading In Claims And

24 Equity Securities

25

3

1          DELPHI CORPORATION

2

3   Objection to Motion /Objection Of Duraswitch

4   Industries, Inc. To Debtors' Motion For An

5   Order Under 11 U.S.C. 365(a) Authorizing

6   Rejection Of License Agreement

7

8   Motion to Authorize Motion For Order Under 11

9   U.S.C. Sections 361, 362, 363, 364(c), 364(d)

10  And 364(e) And Fed. R. Bankr. P. 2002, 4001

11  And 9014 (I) Authorizing Debtors To Obtain

12  Secured Post-petition Financing On

13  Superpriority Secured And Priming Basis, (II)

14  Authorizing Use Of Cash Collateral, (III)

15  Granting Adequate Protection To Pre-petition

16  Secured Lenders, (IV) Granting Interim Relief,

17  And (V) Scheduling A Final Hearing Under Fed.

18  R. Bankr. P. 4001 (b) and (c)

19

20  Response Debtors' Omnibus Reply To Objections

21  To DIP Financing Motion

22

23  Notice of Hearing Proposed First Omnibus

24  Hearing Agenda

25

4

1              DELPHI CORPORATION

2

3    Motion to Quash A Subpoena Non-Party's Motion

4    to Quash Subpoena

5

6    Notice of Proposed Order Notice Of Filing Of

7    Proposed Final Order Under 11 U.S.C. Sections

8    105, 361, 362, 364(c)(1), 364(c)(2),

9    364(c)(3), 364(d)(1), And 364(e) And Fed. R.

10   Bankr. P. 2002, 4001 And 9014 (I) Authorizing

11   Debtors To Obtain Post-petition Financing,

12   (II) To Utilize Cash Collateral And (III)

13   Granting Adequate Protection To Pre-petition

14   Secured Parties

15

16   Motion to Approve Motion For Order Under 11

17   U.S.C. Sections 102(1) And 105 And Fed. R.

18   Bankr. P. 2002(m), 9006, 9007, And 9014

19   Establishing (I) Omnibus Hearing Dates, (II)

20   Certain Notice, Case Management, And

21   Administrative Procedures, And (III)

22   Scheduling Initial Case Conference In

23   Accordance With Local Bankr. R. 1007-2(e)

24

25

5

1              DELPHI CORPORATION

2

3    Motion to Authorize Motion For Order Under 11

4    U.S.C. Sections 361, 362, 363, 364(c), 364(d)

5    And 364(e) And Fed. R. Bankr. P. 2002, 4001

6    And 9014 Authorizing Debtors To Obtain Secured

7    Post-petition Financing On Superpriority

8    Secured And Priming Basis, (II) Authorizing

9    Use Of Cash Collateral, (III) Granting

10   Adequate Protection To Pre-petition Secured

11   Lenders, (IV) Granting Interim Relief, And (V)

12   Scheduling A Final Hearing Under Fed. R.

13   Bankr. P. 4001 (b) and (c)

14

15   Motion to Authorize Motion For Order Under 11

16   U.S.C. Sections 327, 330, And 331 Authorizing

17   Retention Of Professionals Utilized By Debtors

18   In The Ordinary Course Of Business

19

20   Motion to Approve Motion For Administrative

21   Order Under 11 U.S.C. Section 331 Establishing

22   Procedures For Interim Compensation And

23   Reimbursement Of Expenses Of Professionals

24

25

6

1              DELPHI CORPORATION

2

3    Motion to Authorize Motion For Order Under 11

4    U.S.C. Sections 361, 362, 363, 364(c), 364(d)

5    And 364(e) And Fed. R. Bankr. P. 2002, 4001

6    And 9014 Authorizing Debtors To Obtain Secured

7    Post-petition Financing On Superpriority

8    Secured And Priming Basis, (II) Authorizing

9    Use Of Cash Collateral, (III) Granting

10   Adequate Protection To Pre-petition Secured

11   Lenders, (IV) Granting Interim Relief, And (V)

12   Scheduling A Final Hearing Under Fed. R.

13   Bankr. P. 4001 (b) and (c)

14

15   Motion to Authorize Motion For Order Under 11

16   U.S.C. Sections 361 And 363(b) And Fed. R.

17   Bankr. P. 4001(c) Authorizing Debtors To

18   Continue Honoring Pre-petition Insurance

19   Premium Finance Agreement And Continue Grant

20   Of Security Interest To Insurance Premium

21   Finance Company

22

23   Transcribed by:  Esther Accardi

24

25

7

```
 1                    DELPHI CORPORATION
 2   A P P E A R A N C E S :
 3
 4   SKADEN, ARPS, SLATE, MEAGHER, & FLOM, LLP
 5                 Four Times Square
 6                 New York, New York 10038
 7
 8   BY:          JOHN WM. BUTLER, JR., ESQ.
 9                DOUGLAS P. BARTNER, ESQ.
10                KAYALYN A. MARAFIOTI, ESQ.
11                THOMAS J. MATZ
12
13   LATHAM & WATKINS, LLP
14                 885 Third Avenue
15                 Suite 1000
16                 New York, New York 10022
17
18   BY:          ROBERT ROSENBERG, ESQ.
19
20   KELLEY DRYE & WARREN LLP
21                 101 Park Avenue
22                 New York, New York 10176
23
24   BY:          MARK R. SOMERSTEIN, ESQ.
25
```

8

1                    DELPHI CORPORATION

2

3   WARNER NORCROSS & JUDD, LLP

4                    900 Fifth Third Center

5                    Grand Rapids, Michigan 49503

6

7   BY:          GORDON J. TOERING, ESQ.

8

9   CURTIS, MALLET-PROVOST, COLT & MOSLE LLP

10                   101 Park Avenue

11                   New York, New York 10178

12

13  BY:          STEVEN J. REISMAN, ESQ.

14

15  GOODWIN PROCTOR LLP

16                   599 Lexington Avenue

17                   New York, New York 10022

18

19  BY:          ALLAN S. BRILLIANT, ESQ.

20

21

22

23

24

25

9

1                    DELPHI CORPORATION

2

3    SCHAEFFER & WEINER, PLLC

4                    40950 Woodward Avenue

5                    Suite 100

6                    Bloomfield Hills, MI 48304

7

8    BY:            MAX NEWMAN, ESQ.

9

10   SIMPSON THACHER & BARTLETT, LLP

11                   425 Lexington Avenue

12                   New York, New York 10017

13

14   BY:            KENNETH ZIMEN, ESQ.

15

16   WEIL, GOTSHAL & MANGES, LLP

17                   767 Fifth Avenue

18                   New York, New York 10153

19

20   BY:            MARTIN BIENENSTOCK, ESQ.

21

22

23

24

25

10

1                    DELPHI CORPORATION

2

3    BODMAN LLP

4                      100 Renaissance Center

5                      Detroit, Michigan 48243

6

7    BY:              RALPH E. MCDOWELL, ESQ.

8                     (via telephone)

9

10

11   JOEL APPELBAUM, ESQ.

12   (via telephone)

13

14   TIMOTHY PASCOE, ESQ.

15   (via telephone)

16

17   TED MARES, ESQ.

18   (via telephone)

19

20

21

22

23

24

25

11

1          DELPHI CORPORATION

2            P R O C E E D I N G S

3          THE COURT:  All right.  Please

4      be seated.  Delphi Corporation?

5          MR. BUTLER:  Your Honor, good

6      morning.  My name is Jack Butler from

7      the law firm of Skadden, Arps, Slate,

8      Meagher & Flom LLP, here with my

9      partner, Kayalyn Marafioti and our

10     special counsel, Doug Bartner, for the

11     purposes of our October 27th omnibus

12     hearing.  This is the monthly omnibus

13     hearing for the month of October.  Your

14     Honor, we have filed and served a

15     proposed first omnibus hearing agenda

16     and with Your Honor's permission, we'll

17     follow that agenda.

18         THE COURT:  Okay.

19         MR. BUTLER:  Your Honor, the

20     first item on that agenda, item number 1

21     is the Interim Compensation Order,

22     docket number 11.  We had been in

23     discussions with the creditors'

24     committee and with the United States

25     Trustee regarding the form of that

12

```
 1              DELPHI CORPORATION
 2      order.  With respect to the inner comp
 3      arrangements, we believe we have a
 4      proposed form of final order.  We're
 5      going to be dealing with that over the
 6      next week.  We ask Your Honor to take
 7      that up on the November 4th adjourned
 8      hearing so we can get a sign-off from
 9      the U.S. Trustee on the form of order.
10              THE COURT:  Okay.  And are
11      those same people talking about, you
12      know, a fee committee?
13              MR. BUTLER:  Yes, Your Honor,
14      and in fact the United States Trustee
15      observed to us that even under the inner
16      comp order, the first monthly statements
17      in this case aren't generated until
18      November 30th and that the November 29th
19      omnibus hearing would be an appropriate
20      time to take that up and they wanted to
21      consider certain matters further and
22      consult with the committee.
23              THE COURT:  Okay.
24              MR. BUTLER:  So that portion,
25      Your Honor -- the fee committee portion
```

13

| | |
|---|---|
| 1 | DELPHI CORPORATION |
| 2 | would come up on the November 29th |
| 3 | hearing. |
| 4 | THE COURT:  Okay. |
| 5 | MR. BUTLER:  Your Honor, the |
| 6 | next items, and I'll just take items 2 |
| 7 | all the way through item 8, are |
| 8 | retention applications for the debtors' |
| 9 | professionals that have been pursued to |
| 10 | which an interim orders had been |
| 11 | entered.  The creditors' committee is in |
| 12 | the process of completing their review |
| 13 | in these things.  They were appointed |
| 14 | last Monday, Your Honor, a week ago.  I |
| 15 | should report to the Court that |
| 16 | following their appointment in an |
| 17 | organizational meeting held, I think, on |
| 18 | the 17th of October, the -- we held our |
| 19 | first fall committee meeting with the |
| 20 | committee on the 25th, this Tuesday, the |
| 21 | debtors did, and had a full agenda with |
| 22 | the committee.  The committee asked us |
| 23 | if we would adjourn all of these to |
| 24 | November 4th so they can complete their |
| 25 | review given the press of other matters. |

14

1          DELPHI CORPORATION

2     The U.S. Trustee has also advised us

3     that they expect to have completed their

4     review for purposes of a final order on

5     November 4th.

6               THE COURT:  All right.  Okay.

7               MR. BUTLER:  Your Honor, the

8     next item on the agenda is item number

9     9.  This is the ordinary course of

10    professionals item.  We had discussions

11    with United States Trustee about the OCP

12    order.  Essentially, the form of relief

13    that we're going to request in this

14    motion is going to change and rather

15    than have a multi-tiered order, there

16    will be an order that will basically say

17    that any professional who exceeds 50,000

18    a month or $500,000 for the aggregate

19    case, will have to file a retention

20    application and go through the normal

21    327(a) or (e) approach.  Anyone less

22    than that can be governed by the OCP

23    order.  We're working on the final form

24    of order with the U.S. Trustee and

25    intend to present it to Your Honor at

15

```
 1              DELPHI CORPORATION
 2       the November 4th adjourned hearing.
 3              THE COURT:  All right.
 4              MR. BUTLER:  Your Honor, number
 5       10 on the agenda, is the claims trading,
 6       the final hearing on the claims trading
 7       motion.  This is the motion that is
 8       intended to help preserve our NLO and
 9       other tax positions and other asset
10       positions.  This, by agreement with the
11       Cleary firm, was removed to the November
12       29th hearing.  There's continued work
13       being done trying to work on a
14       consensual final order.
15              THE COURT:  Okay.  That's fine.
16              MR. BUTLER:  And finally, Your
17       Honor, also on the agenda is number 11,
18       is the Rothschild retention.  This has a
19       success fee in it.  It's subject to the
20       45-day rule here in the Southern
21       District and it will therefore be heard
22       for a final hearing at the November 29th
23       omnibus hearing.
24              THE COURT:  Right.
25              MR. BUTLER:  Your Honor, now
```

16

1          DELPHI CORPORATION

2     I'm moving on to the matters that we

3     believe were uncontested, agreed or

4     otherwise resolved.  The first matter is

5     item number 12.  This deals with

6     insurance financing.  It's our motion

7     seeking authority to continue honoring

8     pre-petition insurance premium finance

9     agreements and related matters.  Your

10    Honor, we request our authorization from

11    the Court to continue to honor our

12    obligations to an entity called

13    Chamomile, Inc., pursuant to a pre-

14    petition insurance premium financing

15    agreement.  We have reviewed the terms

16    of the agreement, have been provided

17    that the creditors' committee.  Neither

18    the committee nor any other party, has

19    objected to the relief requested, unless

20    Your Honor has any other questions, we

21    rely on the papers.

22          THE COURT:  No.  I reviewed the

23    papers.  Unless -- does anyone else want

24    to be heard on this matter?  Hearing no

25    one, and based on my review of the

17

```
1              DELPHI CORPORATION
2        motion, I'll approve it.
3              MR. BUTLER:  Thank you.  Your
4        Honor, the next matter, matter number
5        13, is our motion to assume the HSBC
6        purchase card and to continue to use the
7        purchase card agreement and travel card
8        agreement with HSBC Bank, USA National
9        Association.  And Your Honor,
10       essentially we have, in this agreement,
11       asked to assume and take various actions
12       with respect to the agreement that we
13       use, to deal with about 1,080 of our
14       employees who use this as a purchase
15       card through our plant facilities in the
16       U.S. and elsewhere and about 12,500 of
17       our employees who use this card in the
18       ordinary course of the day's business in
19       connection with travel-related expenses.
20       Again, Your Honor, there's a variety of
21       relief sought in the motion with respect
22       to HSBC.  Similarly, this matter has
23       been presented to the committee and
24       other parties.  No one has filed an
25       objection.  Unless Your Honor has any
```

18

1           DELPHI CORPORATION

2       particular questions, we'd ask the -- we

3       have authority to assume we'd take the

4       actions outlined in the motion.

5           THE COURT:  The debtors

6       couldn't get a replacement card?

7           MR. BUTLER:  Your Honor, we

8       didn't seek to try to get a replacement

9       card here.  The fact is that trying to

10      go through the process of taking all

11      these cards out, issuing all the other

12      cards, we actually, as I think we

13      explained to Your Honor on the first

14      day, we pre-funded a good portion of

15      this, on going into this, so I don't

16      believe, as of the -- while there was a

17      potential preference claim here, which

18      we've talked to the commit -- advised

19      the committee about, I don't think

20      there's anything owed, as of the

21      petition date --

22          THE COURT:  Okay.

23          MR. BUTLER:  -- the way in

24      which we structured this particular

25      transaction.

19

| | |
|---|---|
| 1 | DELPHI CORPORATION |
| 2 | THE COURT:  All right.  And |
| 3 | this is generally a -- these payments |
| 4 | are made generally by the debtors pretty |
| 5 | regularly? |
| 6 | MR. BUTLER:  Yes, Your Honor. |
| 7 | They're paid on a monthly basis and some |
| 8 | of these are made directly and others of |
| 9 | them may be reimbursed through expense |
| 10 | agreements but they're all in the |
| 11 | process.  This is basically used for two |
| 12 | purposes.  For travel and in our plants |
| 13 | when people need -- and facilities -- |
| 14 | people need to go out and get some de |
| 15 | minimis sort of asset, kind -- that's |
| 16 | how they go out and acquire them. |
| 17 | THE COURT:  Okay.  Does anyone |
| 18 | want to be heard on this motion?  All |
| 19 | right.  Based on my review of the motion |
| 20 | and Mr. Butler's comments and there |
| 21 | being no objections, I'll approve it. |
| 22 | MR. BUTLER:  Thank you, Your |
| 23 | Honor.  Your Honor, the next matter on |
| 24 | the agenda is matter number 14.  This is |
| 25 | a motion seeking authority to reject |

20

1           DELPHI CORPORATION

2     what we called a Pacific Rim lease and

3     in this motion, what we're trying to

4     accomplish -- we no longer need to use

5     the master lease agreement with Pacific

6     Rim, Inc.  This is a master agreement,

7     which involved the lease of assorted

8     machinery, equipment, and other items,

9     and we no longer need to use these

10    items, particularly because of the

11    reasons set forth in the motion having

12    to do with our operations in Foley,

13    Alabama.  Your Honor, as a result of the

14    debtor's exercise of its business

15    judgment, we have determined it's

16    appropriate to reject this lease at this

17    time.  There have been no objections

18    filed, either by the lessor, by the

19    committee or any other party.

20          THE COURT:  Okay.  I reviewed

21    the motion and it appears to be well

22    within the debtor's business judgment,

23    so I'll approve it.

24          MR. BUTLER:  Thank you, Your

25    Honor.  Your Honor, matter number 15 on

21

1              DELPHI CORPORATION

2         the agenda is our motion for an order to

3         sell certain de minimis assets free and

4         clear of liens.  It's essential -- and

5         to pay market rate broker commissions.

6         This is essentially a de minimis

7         procedures order that allows us to

8         operate in the ordinary course of

9         business with the disposition of de

10        minimis assets.  There's a proposed

11        procedure here that would require that

12        we send notice in advance to the U.S.

13        Trustee, the unsecured creditors'

14        committee, the DIP lenders, any known

15        holder of a lien and the assets proposed

16        to be sold and any other known

17        interested party, with respect to the

18        particular asset involved.  There's a

19        procedure that requires that if we don't

20        get a written objection or request for

21        additional time within five business

22        days, we can complete the transaction

23        and otherwise, if there is an objection

24        raised and we can't resolve it, we need

25        to come to court and deal with that

22

1          DELPHI CORPORATION

2      resolution.  There is a purchase price

3      limitation here of greater than --

4      anything greater than ten million

5      dollars, it requires to come to court.

6      Given the company of our size, with our

7      asset base, we think that's an

8      appropriate level.  We have agreed with

9      the creditors' committee.  Our financial

10     advisors of the debtors and the

11     committee are working together on a

12     protocol so that the committee is

13     comfortable on how that ten million

14     dollars is analyzed.  You know, Mr.

15     Rosenberg's used to me the example of,

16     you know, you've got a hundred million

17     dollar asset on the books at book value,

18     and you're going to get ten million

19     dollars for it.  That's probably not the

20     kind of transaction that should be given

21     the test, or not.

22          THE COURT:  Test or not.

23     Actually, I put in here 'cause the ten

24     million only works if it's an arm's-

25     length market driven sale, so I put in

23

1           DELPHI CORPORATION

2      without further Court approval and I

3      added the words arm's-length sale and

4      then you and the committee can work it

5      out beyond that --

6              MR. BUTLER:  -- Right.

7              THE COURT:  -- but the debtor

8      has to be comfortable with an arm's-

9      length sale.  That's separate, but from

10     it not being to insiders.

11             MR. BUTLER:  Right.  And Your

12     Honor on that point, we've agreed to

13     work out a protocol with our financial

14     advisors.  I think we've had pretty good

15     success, even in the last week or ten

16     days, on -- the financial advisor are

17     working very closely together and they

18     have perfections for the debtors and the

19     committee working closely together.  In

20     the unlikely event that we couldn't

21     agree on a protocol, I'd say to Mr.

22     Rosenberg he can come back to court

23     here, with respect to this order

24     subsequently.  But I can't imagine that

25     would be the case.

24

1        DELPHI CORPORATION

2            THE COURT:  Okay.  I had a

3        couple of other comments on this.  Maybe

4        I should give you those before I hear

5        from anyone.  In paragraph 4, I think

6        the broker's affidavit should include an

7        affirmation by the broker that the

8        commission is at or lower than, in his

9        or her reasonable belief, market

10       commissions for similar sales.  And

11       then, paragraph C, which is the

12       paragraph that gives a right to come.

13       Paragraph C is a paragraph that lets

14       people go to court, if they -- if you

15       cannot resolve an objection.  I just

16       want to make it clear that the broker

17       would be retained nunc pro tunc, given

18       the rules in this circuit.  There

19       shouldn't be any concern on the broker's

20       part about that.  And then, lastly, on

21       paragraph 6, which is the paragraph that

22       says that the NATO's procedures shall

23       not apply to sales of assets that

24       involve an insider, I also added this

25       concept and you can -- if you're not

25

1          DELPHI CORPORATION

2     comfortable with the language, you can

3     adjust it, but what I had in mind was,

4     or any sale that because of the integral

5     nature of the asset would require the

6     debtor subsequently to sell additional

7     assets for an aggregate sum in excess of

8     ten million.  And that wouldn't be

9     covered by this either.  You'd have to

10    go to court for that.

11         MR. BUTLER:  I understand that,

12    Your Honor.  And, I should point out we

13    also agreed to give counsel of the

14    debtors pre-petition credit facility

15    notice of these transactions.

16         THE COURT:  Right.  Okay.  So

17    does anyone else -- does anyone want to

18    be heard on this motion?

19         MR. ROSENBERG:  Your Honor,

20    only to say that we were troubled by the

21    ten million dollar number for the reason

22    Mr. Butler said, but I will report that

23    I think that FTI, the debtors' financial

24    advisor, and Mezero, the committee's

25    financial advisor, have already

26

1              DELPHI CORPORATION

2      established an excellent working

3      relationship and I have every

4      anticipation that we will be able to

5      work through what ten million dollars

6      really should mean, particularly in the

7      context of Your Honor's comments.

8              THE COURT:  Okay.  And again,

9      if for some reason, the committee or the

10     banks or anyone else feels this program

11     isn't working as it was intended, then

12     you can come back to court and seek

13     modification of the order.

14             MR. ROSENBERG:  Very good, sir.

15     Thank you

16             THE COURT:  Okay.  But with

17     those changes in caveats, I'll approve

18     it.

19             MR. BUTLER:  Thank you, Your

20     Honor.  Item number 16 on the agenda is

21     a utilities motion.  This is our -- the

22     final hearing on our motion for an

23     interim final order under section 366 to

24     deal with putting in essentially

25     alternative dispute resolution

27

1        DELPHI CORPORATION

2        procedures to deal with utility

3        deposits, perhaps the last of this kind

4        drafted this way, that Your Honor will

5        be hearing, given the changes in the new

6        code.  I think it will be, as I had

7        mentioned at the first day hearings, I

8        think there will be a slightly evolved

9        version of these procedures that will

10       come back even under the new statute.

11       But as to these matters, we have

12       alternative dispute resolution process

13       here, that essentially tries to work out

14       the deposit issue between the utility

15       and the company and sort of vet the

16       adequate assurance issues prior to

17       coming to court.  There were very few

18       objectors to that relief.  We did serve

19       this as required by Your Honor.  There

20       were very few objectors that overall --

21       that filed an objection.  And with

22       respect to those objectors, we were able

23       to resolve one or two of the objections,

24       and more importantly, all the other

25       objectors agreed that they wanted to

28

```
1              DELPHI CORPORATION
2        continue to work on this with the
3        debtors and asked that -- and agreed
4        that the order could enter on a final
5        basis as to all others but them, and we
6        would continue to work with them and
7        deal with them on November 29th, if we
8        can't come to a satisfactory resolution.
9        The form of black-lined order we
10       submitted, Your Honor, reflects that
11       agreement.
12              THE COURT:  Okay.  I had a
13       couple of changes to this one also,
14       consistent with how I've done these.
15       And I know that different courts have
16       different procedures for this type of
17       motion.  They basically had to do with
18       the provision that you have in here in
19       paragraphs 6 and in paragraph 9, which I
20       think works for an interim order but not
21       for a final order.  The provision says
22       that unless the utility makes a request
23       within 25 days of the receipt of this
24       order, they can't make any other
25       requests.  And since I think the statute
```

29

```
 1              DELPHI CORPORATION
 2      contemplates changed circumstances and
 3      the utilities rights in a lot of changed
 4      circumstances, I changed that in the
 5      third line.  So, instead of saying
 6      within 25 days of the date of service,
 7      hereof request deadline, I just said and
 8      based on materially changed
 9      circumstances on the date hereof.  A
10      similar concept is baked into paragraph
11      9 for the utilities that you discover in
12      the future that you might have had that
13      didn't get notice of this --
14              MR. BUTLER:  Yes, sir.
15              THE COURT:  -- And, it again,
16      consistent with that case log on this
17      pre-October 17th and this circuit, this
18      order provides that the utility
19      companies can't unilaterally terminate
20      service, even the ones that you discover
21      in the future, unless there's a court
22      order.  But I think they should be free
23      to come in to ask for that type of
24      relief.  The other change is in
25      paragraph 7, it gives the debtors 45
```

30

1                    DELPHI CORPORATION

2          days to set up a determination hearing.

3          And I've just added, consistent with the

4          Court's Case Management Order, the

5          utility company may seek an earlier

6          hearing.  In all likelihood, it probably

7          would be within that time frame anyway,

8          but if there's some emergency, they

9          could do that.  But, seeing no

10         objections in hearing, I'm going to

11         approve it on that basis.

12                 MR. BUTLER:  We'll make those

13         changes, Your Honor, and submit the

14         order.  Thank you.

15                 THE COURT:  Okay.

16                 MR. BUTLER:  Your Honor, the

17         next matter on the agenda is matter

18         number 17.  This is a motion for an

19         order authorizing the rejection of a

20         license agreement with DuraSwitch

21         Industries, Inc.  Again, Your Honor,

22         another rejection motion dealing with,

23         in this case, a license agreement that

24         was entered into in April of 2000.  It

25         was an exclusive license agreement for

31

1          DELPHI CORPORATION

2     technology that facilitated electrical

3     connections within a vehicle, and rather

4     than go through a litany of what's in

5     the motion or in a presentation, Your

6     Honor, the basic punch line in this one

7     is that we and counsel for DuraSwitch

8     have agreed on agreed form of rejection

9     order, and we have submitted it to the

10    Court.

11          THE COURT:  Okay.  I reviewed

12    the motion and it's clearly within the

13    debtors' business judgment and also the

14    revised order, which looks fine.

15          MR. BUTLER:  Thank you.

16          THE COURT:  Does anybody want

17    to be heard on this?  All right, hearing

18    no one, I'll approve it for the reasons

19    stated in the motion.

20          MR. BUTLER:  Thank you, Your

21    Honor.  Your Honor, the next matter on

22    the agenda is the final hearing on our

23    cash management motion.  There were two

24    objections that were filed.  Both of

25    them, perhaps it shouldn't be surprising

32

1          DELPHI CORPORATION

2          to any of us, dealt with the same thing

3          we talked about at the interim hearing,

4          which was that pesky paragraph dealing

5          with what should happen in the event

6          that in intercompany transfers there was

7          a net borrower and a net lender and what

8          the relationship should be between the

9          two entities within the debtor's system.

10         Your Honor may recall that the subject,

11         the discussion, and the debate at the

12         first hearing had to do with whether

13         that -- there should be a prior --

14         administrative claim and what priority

15         it ought to have, be it super-

16         administrative, super-priority or

17         others.  That has evolved, now, into the

18         view that there actually -- it shouldn't

19         be just a claim, it should be a lien.

20         And we have actually entered into an

21         agreement with the Pension Benefit

22         Guaranty Corporation as to the language

23         that's in the order that's acceptable to

24         them.  It is a lien.  They're the entity

25         that has a control group liability claim

33

1         DELPHI CORPORATION

2         against all those entities and the

3         priority of that lien is determined by

4         the DIP financing order.  The creditors'

5         committee has reserved or objected on

6         the issue.  I think it was actually a

7         statement that was submitted, so I'll

8         call reserve for the moment, but have

9         raised an issue as to whether that lien

10        ought to have a higher priority.  They

11        would prefer the priority be right below

12        the DIP lenders and the DIP financing

13        order calls for that priority to be

14        juniored to various categories of

15        claimants, the DIP lenders, the pre-

16        petition lenders and the setoff

17        claimants.  That is the only issue I

18        think that exists with respect to the

19        cash management order that I'm aware of.

20        And the -- and my suggestion would be,

21        Your Honor, that we -- the Court reserve

22        on that matter until you hear the DIP

23        financing motion.  Because I think,

24        ultimately, Your Honor's going to be

25        dealing with the DIP financing issues

34

1          DELPHI CORPORATION

2     and depending on how you come out on

3     those I think Mr. Rosenberg and I will

4     be able to work this one out.

5              MR. ROSENBERG:  Yeah.

6              THE COURT:  Okay.

7              MR. ROSENBERG:  Your Honor, I

8     have no problem as far as Mr. Butler

9     goes.  Obviously, the two have to be

10    consistent in terms of the priority of

11    the liens and I will argue passionately

12    for that priority --

13             THE COURT:  Okay.

14             MR. ROSENBERG:  -- at the

15    appropriate time.  We did raise another

16    issue, however, in our statement, which

17    was that a lien is only as good as the

18    assets and cash flow backing it up.  And

19    we do want and need a mechanism to

20    assure that however it is secured, it

21    can be repaid.  I would hope that we

22    could do that via some kind of a

23    protocol, but it is not the case that if

24    Your Honor simply grants a lien, we go

25    away happy.

35

1        DELPHI CORPORATION

2              THE COURT:  Right.  I actually

3        had the same concern and it comes up in

4        the cash management contacts, but

5        there's some point where intercompany

6        transfers really do turn into serious

7        lending decisions.  Maybe that never

8        happens in this case because everything

9        balances out, but there should be a

10       process whereby the appropriate

11       professionals for the committee are kept

12       up to speed on both net balances and I

13       guess, also, you know, the same type of

14       information that a board would consider

15       in continuing to authorize its debtor to

16       extend credit to another debtor.  That

17       is, I guess, the financial payoff of the

18       other debtor.  I expect that such an

19       analytical process will be undertaken by

20       each credit provider anyway, so I'd hope

21       that, and expect, really, that whether

22       it's the committee's financial advisor

23       or counsel would be kept informed of

24       those decisions on, you know, a

25       reasonably current basis, like every

36

1          DELPHI CORPORATION

2     month or maybe even every two weeks.

3     And if there's any -- in particular,

4     what I have in mind is any large

5     increase in exposure by another company

6     lender or substantial decline in the

7     fortunes of an intercompany borrower

8     that it would raise a red flag about

9     lending.

10          MR. BUTLER:  Your Honor, on

11     that point I agree with Mr. Rosenberg.

12     I don't view this protocol as being a

13     difficult one for us to resolve.  We

14     contemplate this being part of the

15     monthly reporting package to the

16     committee.  Your Honor should know we

17     already established between us a

18     consensual schedule of meetings that, at

19     the moment, go out all the way till next

20     March.  In terms of dates, we're meeting

21     every month as a full group of debtors

22     and committee representatives and we'll

23     make sure this is part of the monthly

24     reporting package.

25          THE COURT:  Okay.  But -- I'm

37

1                DELPHI CORPORATION

2       serious about this.  I don't think there

3       should be a sort of an automatic yes by

4       a particular debtor's management, which

5       overlaps obviously to a borrowing

6       request.  I mean, this is not just

7       simply, we need, you know, ten million

8       dollars.  Okay, here it is.  There needs

9       to be some analysis of the ability to

10      repay that.

11              MR. BUTLER:  Right.  Well, Your

12      Honor, I think tempered with that is the

13      fact that, you know, these are -- as you

14      look at these inner companies, the vast

15      majority of them are wholly owned.  And

16      the benefit of that enterprise inures to

17      the overall benefit of the business.

18              THE COURT:  Well, that's

19      another -- you know, it depends on who

20      the creditors are.  If --

21              MR. BUTLER:  Right.

22              THE COURT:  If there's a lot of

23      overlapping debt, than maybe it's not

24      much of an issue. --

25              MR. BUTLER:  Yeah.  And in

38

1          DELPHI CORPORATION

2     fact, Your Honor, well, this is for

3     another day, but the reality is the

4     majority -- we'll eventually get to a

5     point in this case where we'll look at

6     where all the debt is -- The majority of

7     the debt, say the liens that attach from

8     the banks, and now some of the

9     replacement liens granted in the

10    proposed financing order, and the PBGC's

11    position.  The majority of the other

12    debt of the company is not at these

13    entities.

14          THE COURT:  Well --

15          MR. BUTLER:  That will be for

16    another day, but --

17          THE COURT:  -- that should make

18    the protocol easier.  I mean, there's no

19    reason the committee needs to get into

20    this in a great deal of detail if, in

21    fact, no creditors are even potentially

22    hurt by a loan from one company to

23    another.

24          MR. BUTLER:  All right.

25          THE COURT:  So let's reserve on

39

```
 1              DELPHI CORPORATION
 2        the lien priority issue till the
 3        discussion of the debt -- the language
 4        is the same in both orders, right?
 5              MR. BUTLER:  Yes, Your Honor.
 6              MR. SOMERSTEIN:  Yes, Your
 7        Honor.  Good morning, Your Honor.
 8              MR. ROSENBERG:   Only objections
 9        to it.
10              MR. SOMERSTEIN:  Good morning,
11        Your Honor.  Mark Somerstein, Kelly Drye
12        for Pension Benefit Guaranty
13        Corporation.  Your Honor, I would just
14        note that PBGC is not a member of the
15        creditors' committee and we'd appreciate
16        the opportunity to participate with Mr.
17        Butler and his team, and Mr. Rosenberg
18        and his team, in reviewing the protocol
19        so that we could see the information on
20        the intercompany borrowings.
21              THE COURT:  Okay.
22              MR. SOMERSTEIN:  I'm sure
23        that's something we can --
24              THE COURT: -- well, maybe --
25        again, I would just urge you to focus in
```

40

1        DELPHI CORPORATION

2        on the borrowers that are of concern to

3        your client.

4              MR. BUTLER:  Your Honor,

5        although, I know the PBGC and we're

6        actually, at some point, we'll weigh in

7        on that.  We've been working with the

8        PBGC in terms of their efforts to seek

9        membership on the committee.  But we

10       don't want to get in position of saying,

11       what the committee gets to do, other

12       people get to do.

13             THE COURT:  Well, I agree with

14       that --

15             MR. BUTLER:  We're not asking

16       --

17             THE COURT:  -- but I think this

18       is a specific issue that we all know the

19       PBGC is focused on, besides the

20       committee.  And, if it can be done in a

21       way that really focuses in on their

22       obligors in an efficient way, then I

23       think you can do that.

24             MR. SOMERSTEIN:  That's exactly

25       what we're talking about, Your Honor.

41

```
 1              DELPHI CORPORATION
 2     Thank you.
 3              THE COURT:  Okay.
 4              MR. BUTLER:  Your Honor, that
 5     brings us to the only other matter on
 6     the agenda, matter 19, which is the DIP
 7     financing hearing, which is contested.
 8     Your Honor, we'd like to ask for a brief
 9     recess so that we can set up for the
10     hearing and try to resolve a few
11     additional issues.  You know, no more
12     than 30 minutes, hopefully less.
13              THE COURT:  Okay.  So why don't
14     I come back here at 11:30?
15              MR. BUTLER:  Thank you, Your
16     Honor.
17              THE COURT:  Okay.
18              (Recess at 11:04 a.m.)
19              THE COURT:  Please be seated.
20     Okay, we're back on the record in Delphi
21     Corporation.
22              MR. BUTLER:  Your Honor, thank
23     you for allowing us to take an extended
24     lunch recess.  I hope the Court will
25     believe it was constructive.  The
```

42

1          DELPHI CORPORATION

2     debtors certainly believe it was with

3     the help of a number of principal stake

4     holders, we've been able to resolve a

5     number of the objections to the DIP

6     financing motion, which is the next

7     matter on the agenda.  That's matter

8     number 19 on the agenda and our last

9     matter for today.  And the resolution

10    was also resolved, matter 18, cash

11    management motion that has been

12    reserved.

13          THE COURT:  Okay.

14          MR. BUTLER:  Your Honor, what

15    I'd like to do is reorganize the hearing

16    slightly and report to the Court on a

17    number of the settlements, and then move

18    to an abbreviated evidentiary record.

19          THE COURT:  Uh-huh.

20          MR. BUTLER:  I believe we

21    resolved all the objections that went to

22    the issues as to whether there should be

23    a DIP financing put in place.  I think

24    we have addressed, by the majority of

25    objections that would like adequate

43

1              DELPHI CORPORATION

2        protection.  I believe that some of the

3        setoff claimants may still raise issues

4        and I believe Bank of America may raise

5        certain issues.  Those issues, I don't

6        believe, based on review of the

7        objections go to the heart of whether or

8        not we've complied with 364(d) on those

9        kind of issues.  So what I propose to do

10       is to describe, in general terms, the

11       settlements that had been reached, so

12       that everyone is informed.  I also am

13       able to answer any questions the Court

14       has and then move to an evidentiary

15       record the admission of exhibits and

16       proffer it for the Court.  We have the

17       witnesses available, but I don't know,

18       unless Your Honor wants us to get live

19       testimony, whether anyone else will seek

20       it.

21              THE COURT:  Okay.  Well, I take

22       in proper and then, obviously, if

23       someone wants to cross-examine them,

24       they can do that.

25              MR. BUTLER:  Your Honor, this

                                                                    44
1           DELPHI CORPORATION

2           is, as the Court knows, a motion that we

3           had filed.  This is the final hearing

4           before the Court on approval about 40

5           would obtain and move forward on 2

6           billion dollars of committed DIP

7           financing from JP Morgan Chase Bank NA

8           as administrative agent and CitiCorp USA

9           as syndication agent.  Along with a

10          group of other financial institutions

11          that have been arranged by JP Morgan

12          Securities Inc. and CitiGroup Global

13          Markets Inc.  The DIP facility is before

14          the Court today includes both a 259

15          dollar term loan and a 1.7 billion

16          dollar revolver.  There's a sub-limit,

17          as I advised the Court at the interim

18          hearing, about 325 million dollars for

19          letters of credit and under the terms of

20          this financing, it would prime

21          approximately 2.59 billion dollars worth

22          of pre-petition revolver and term loan

23          facilities under the terms of the order.

24          And we also have dealt with, in this

25          order, how setoff and related rights,

45

1              DELPHI CORPORATION

2        including recoupment issues, would be

3        addressed going forward in this case in

4        an orderly manner.  It is the company's

5        view, Your Honor, that we have hit what

6        we believe to be a very complex set of

7        issues what I'll call the sweet spot of

8        an order that balances the interest of

9        all parties here in an orderly manner

10       and allows the company to move forward

11       in these cases.  Your Honor, there was

12       only one objection that was filed, and I

13       should point out -- to begin with, Your

14       Honor, I'll move the admission of these

15       exhibits at the evidentiary portion of

16       this book could be used for the next

17       references now.  Could I present an

18       exhibit book to the Court?

19              THE COURT:  Sure.

20              MR. BUTLER:  Your Honor, the

21       transaction that we're asking the Court

22       to approve is a transaction that is

23       evidenced by several documents and they

24       are marked as Debtors' 1, 2 and 3.  A

25       commitment letter, a post-petition DIP

46

1           DELPHI CORPORATION

2       financing agreement, which is Exhibit 2

3       and Exhibit 2a, which is a first

4       amendment to the revolving credit term

5       loan and guarantee agreement, which

6       includes an agreement as to the

7       borrowing base element of this

8       transaction.  We have also filed with

9       the Court a proposed financing order

10      which has been black-lined on several

11      occasions and which we will suggest some

12      other changes to, in this hearing.  But

13      the current form of that order in terms

14      of black-line is at Exhibit 4.  That's

15      the black-line which represents the

16      current state of the order, subject to

17      the comments that we made on this

18      record.

19              THE COURT:  Are those documents

20      the same as the ones provided my

21      chambers, I guess, last night?

22              MR. BUTLER:  Yes, Your Honor.

23      There was a proposed order attached to

24      the original motion that was updated

25      with a final financial order that was

47

1              DELPHI CORPORATION

2       filed with an omnibus reply.  It was an

3       exhibit of the omnibus reply; it was

4       black-lined against the Court's interim

5       order.  We then had further negotiations

6       and late last evening we reached

7       agreement with the post-petition

8       lenders, the pre-petition agent, General

9       Motors Corporation and the company about

10      the form of order.  We black-lined that

11      and we served it out last night, or

12      overnight.  We now have held the Court

13      we put it out on the docket, we put it

14      out on the website and we served all the

15      parties with it, overnight.

16              THE COURT:  Okay.

17              MR. BUTLER:  There'll be some

18      changes to that order today, although

19      they are relatively discreet, to resolve

20      some of the issues that we have before

21      the Court.  So that the documents we're

22      asking Your Honor to approve would be

23      the loan agreements on 2 and 2a and the

24      financing order as we make changes on

25      the record today.

48

1        DELPHI CORPORATION

2            THE COURT:  And there are

3        agreements that reflect the amendments

4        that went out last night, too.

5            MR. BUTLER:  Yeah, Your Honor.

6        The loan agreements didn't really need

7        much in the way of changing.  There were

8        issues more about priorities and

9        relationships than anything else.

10           THE COURT:  Okay.

11           MR. BUTLER:  Your Honor, also,

12       Exhibit 28 and 29 to -- Debtors' 28 and

13       29 set forth a summary of all the

14       objections that were filed as of 12 noon

15       yesterday and the debtors' views on

16       those.  Those actually -- Exhibit 28,

17       Debtors' Exhibit 28, is actually -- was

18       also Exhibit B on omnibus reply and

19       Debtors' 29 was Exhibit C to our omnibus

20       reply, which basically laid out the

21       objections that had been, from the

22       debtors' perspective, timely filed and

23       some others that had not been timely

24       filed, but which we were aware of prior

25       to the 12 noon deadline.  We had the

49

1           DELPHI CORPORATION

2           chambers to submit our omnibus reply.

3           Of all the objections listed in Debtors'

4           28 and 29, I believe the only objection

5           that went to the issue solely of whether

6           or not the debtors could enter into this

7           priming facility was the objection filed

8           by the self-styled ad hoc committee of

9           pre-petition lenders.  The group we

10          refer to as the Goodwin Proctor Group,

11          represented by Mr. Brilliant and his

12          colleagues, which had filed objections

13          really alleging, essentially, that the

14          company couldn't sustain its burden on

15          Section 364 of the Bankruptcy Code and

16          further, even if could, that the company

17          hadn't offered adequate protection.  In

18          connection with that transaction -- with

19          those objections, we also filed a reply

20          and there are a couple of items and some

21          changed circumstances that I want to

22          reflect on this record so the record

23          here is complete.  In connection with

24          that transaction, and that is the DIP

25          lending loan with the priming position,

50

1        DELPHI CORPORATION

2        with respect to the 2.59 billion dollars

3        of pre-petition debt, there was a notice

4        -- there was a position that the pre-

5        petition agent took and that was

6        communicated to all of the members of

7        the pre-petition bank group, and the

8        members of the pre-petition bank group

9        then took votes on two discreet elements

10       which are relevant to today and perhaps

11       relevant to the case.  And, the notice

12       that the pre-petition agent sent out is

13       Debtors' 22, which is the actual notice

14       in which the debtor -- the approached

15       agent took two positions.  First it had

16       taken a positing that, absent

17       instruction to the contrary, it was not

18       going to object to the debtors' request

19       to enter into this transaction, and it

20       asked the members of the group to give a

21       reflect on that.  Second, it had told

22       the group that it intended to inform the

23       debtors that the debtors would not be

24       able to renew live or based interest

25       contract arrangements as they expired.

51

1        DELPHI CORPORATION

2        I believe, beginning on or around

3        November 15th of this year, and also

4        sought direction from the lenders on

5        those issues.  With respect to the first

6        matter, there were 42.88 percent of the

7        members --

8             THE COURT:  I'm going to

9        interrupt for just a second.  Please

10       turn off your Blackberries.  Anytime

11       that sound -- sounds like a little bee

12       buzzing, the transcript gets interrupted

13       by your Blackberries.  Okay, you can go

14       ahead Mr. Butler.

15            MR. BUTLER:  Okay.  Your Honor,

16       in that vote that was taken, 42.88

17       percent of the holders of the pre-

18       petition debt affirmatively agreed with

19       the position of the pre-petition agent

20       not to object to this transaction.

21       Approximately 14 percent of the holders

22       objected and directed the agent to

23       object to this transaction.  And

24       approximately somewhere in the

25       neighborhood of 33 percent did not vote,

52

1              DELPHI CORPORATION

2         but under the terms of the solicitation

3         from the agent were deemed to have

4         consented to the agent's approach; not

5         consenting to the priming but to the

6         actions to be contemplated by the agent.

7         Which meant that, essentially, about 86

8         percent of the bank group concurred or

9         deemed with concurred with the agent's

10        decision not to object to this

11        transaction.  However, with respect to

12        the issue of ABR, and this is different

13        than it was reflected in our papers

14        because we had different information and

15        it was incorrect, and I want the record

16        to be correct.  Fifty-six percent of the

17        members of the bank group concurred with

18        the agent's determination to no longer

19        permit LIBOR agreements, LIBOR based

20        interest rate agreements with the

21        debtors, and the balance did not vote

22        but were deemed to have concurred under

23        the terms of the solicitation.  So

24        essentially, at least this follows,

25        insofar as the pre-petition agent was

53

1          DELPHI CORPORATION

2     concerned, there was consensus among the

3     bank group that the agent would inform

4     the debtors that when a LIBOR-based

5     contract expires, on or about November

6     15th, they would not seek to renew them.

7     Now, the debtors' position is that that

8     action may or may not be enforceable

9     under the terms of that agreement.  And

10    given the fact that we're in chapter 11,

11    at the moment, and therein obviously

12    lies one of issues that ultimately may

13    need to be determined by this Court.

14    But it is, I think, a significant

15    materially changed fact from the state

16    of the papers before the Court, that

17    there was unanimous consensus, at least

18    deemed consensus among the pre-petition

19    holders to move to an ABR rate.  Now the

20    ABR rate, Your Honor, the difference

21    between the two rates is about 160 basis

22    points, it's about 37 and a half million

23    dollars a year on an annualized basis,

24    something along the ways in additional

25    interest costs.  And that would be the

54

1        DELPHI CORPORATION

2        contract rate interest.  And, Your

3        Honor, those items are discussed in some

4        detail in Debtors' 17, 18 and 19, in

5        terms of the exhibits that are before

6        the Court, about how those particular

7        transactions work.  In addition, there

8        are other claims under the pre-petition

9        loan agreement that could, according to

10       some holders of the pre-petition debt,

11       be claimed for both default interest and

12       incremental 200 basis points and other

13       damages and costs or claims associated

14       with any prepayment or payment of the

15       term loan not in accordance with the

16       terms of that term loan, by the

17       prepayment premiums or call premiums or

18       damages or whatever the claims may be.

19       Essentially, what we have entered into

20       an agreement to do, which we understand

21       involves, in all respects, any objection

22       by Mr. Brilliant's clients to this

23       hearing, is we've agreed that the -- and

24       I'll read some language in a moment --

25       but essentially we've agreed that the

55

1          DELPHI CORPORATION

2          pre-petition agent can put up, what's

3          called interlinks, the internet-based

4          application in which it communicates

5          with its 250-odd plus lenders and

6          opportunity for any holder to waive its

7          claim on a permanent basis, to default

8          interest under the pre-petition

9          facility, and waive its claim under any

10         basis to any call premium, prepayment

11         premium, other kind of claim against the

12         company for the prepayment other than in

13         accordance with the contract of amounts

14         owed under the pre-petition instrument.

15         Any holder which waives those two claims

16         would then be entitled to receive the

17         ABR rate for the balance of this case.

18         Actually, for the balance of the time

19         the indebtedness is outstanding in

20         accordance with the terms of the loan

21         agreement.  But the applicable rate paid

22         to that holder would be ABR as opposed

23         to LIBOR.  If someone does not waive

24         those claims they would be paid, as

25         adequate protection, the LIBOR rate;

56

1              DELPHI CORPORATION

2        they would retain their rights to argue

3        that the differential accrued and we

4        would also fight about whatever other

5        claims they had including default

6        interest claims and other kinds of

7        compensatory claims at the end of the

8        case in the proof-of-claim process.  And

9        that was the fundamental agreement

10       reached.  We've also agreed, under the

11       terms of the adequate protections

12       package, to pay the reasonable expenses

13       the pre-petition agent and, through the

14       date of this hearing, only the

15       reasonable expenses incurred by Mr.

16       Brilliant's group in terms of the fees

17       and expenses of his firm.

18            THE COURT:  In connection with

19       opposing the debt?

20            MR. BUTLER:  Correct.  But only

21       in connection with matter, only to the

22       date of this hearing.

23            MR. BRILLIANT:  Your Honor, if

24       I may.  Two minor issues, it's ABR plus

25       applicable margin and it's the fees of

57

1              DELPHI CORPORATION

2         my firm and we had hired, you know,

3         conflicts councils to serve some of the

4         subpoenas with respect to what we had a

5         conflict, and that's covered in the

6         order as well.

7              THE COURT:  Okay.

8              MR. ROSENBERG:  Mr. Butler, I

9         assume that we will get notice of the

10        fee request and then have a say in the

11        reasonableness involved?

12             MR. BUTLER:  Absolutely.

13             MR. ROSENBERG:  Thank you, sir.

14             THE COURT:  Okay.

15             MR. BUTLER:  The change to the

16        order occurs, Your Honor, on this pre-

17        report, and I want to be specific

18        because this was reviewed with a number

19        of the parties.  The change in the order

20        here occurs in paragraph 12C.  And if

21        the Court uses -- refers to Debtors' 4

22        and uses that black-line and it goes to

23        page 30, and this is the same black-line

24        that's been distributed to virtually

25        everyone in the courtroom, or people who

58

1              DELPHI CORPORATION

2         have, at least, access to it.  It's also

3         posted on delphidocket.com for those

4         participating by telephone.  If we go to

5         page 30 there's an insert that occurs in

6         Roman numeral III about eight/nine lines

7         down.  There's a phrase and it says, and

8         letter of credit and other fees at the

9         non-default contract rate.  Then there's

10        a word, applicable, between the word

11        rate and applicable there is the

12        following insertion.  Including at the

13        option of the borrower the Euro dollar

14        rate plus the applicable margin.  And

15        then on the next line where it says

16        provided back, and after the work back,

17        we insert the symbol X(x) because

18        there's going to be a Y in a moment.

19        And then we continue down just before

20        roman numeral IV and we add there a Y in

21        the hole and insert the following

22        statements.  "Notwithstanding anything

23        to the contrary, in this order or the

24        pre-petition credit agreement, as to

25        each pre-petition secured lender which

59

1           **DELPHI CORPORATION**

2           executes and delivers a written consent

3           in the form to be provided by the pre-

4           petition agent(which consent shall be

5           informed and substance reasonably

6           satisfactory to the borrower), waiving

7           and releasing all claims, if any, in

8           respect of default interest.  And any

9           claims related to the prepayment of the

10          pre-petition debt including any

11          prepayment premium under the pre-

12          petition credit agreement, interest

13          shall accrue and be paid by the borrower

14          on the first business day of each month

15          at ABR plus the applicable margin in

16          respect to the pre-petition loans held

17          by such pre-petition secured lender from

18          and after the labor of A, the expert

19          existing LIBOR contracts and B, the

20          delivery of such release and waiver."

21                THE COURT:  Okay.  Go ahead.

22                MR. BUTLER:  And then on page

23          31, there is a statement that says, at

24          the end of paragraph C, before that at

25          paragraph sub D, it says, the debtor

60

1                    DELPHI CORPORATION

2          shall pay the reasonable and documented

3          fees and expenses of counsel to the ad

4          hoc committee of pre-petition secured

5          lenders in connection with the motion

6          and we have an agreement as to a cap on

7          that, which we had discussed off the

8          record, Your Honor, with that group and

9          we'll obviously with other parties of

10         interest.  And, you know, the reasonable

11         fees cannot exceed a capped amount.

12              THE COURT:  And these are just

13         legal fees, right?

14              MR. BUTLER:  Yes, Your Honor.

15              THE COURT:  Okay.

16              MR. BUTLER:  And then, Your

17         Honor, we would insert an insert there

18         that would also say, during dependency

19         of the Chapter 11 case, and accept as

20         otherwise set forth in a any confirmed

21         reorganization plan, the pre-petition

22         debt of any pre-petition secured lender

23         shall not be repaid or refinanced in

24         whole unless it is part of a transaction

25         in which the obligations under the DIP

61

1           DELPHI CORPORATION

2      credit agreement and the pre-petition

3      credit agreement are repaid or

4      refinanced in whole, or, if such pre-

5      petition secured lender consents to such

6      repayment.

7               THE COURT:  Okay.

8               MR. BUTLER:  Your Honor, that

9      represents the entire agreement between

10     Mr. Brilliant's clients and the debtors

11     and fully resolves their objection.  I'd

12     like Mr. Brilliant to confirm that on

13     record.

14               THE COURT:  Actually, before we

15     do that, and I apologize for

16     interrupting, if there is the LIBOR and

17     the debtor agrees that they won't object

18     to the interest that's being received

19     except if, for some reason, your total

20     won't be secured.

21               MR. BUTLER:  Your Honor, what

22     we've agreed to is -- there are other

23     rights in lieu of the benefit of the

24     creditors' committee which have been

25     negotiated, which I'll get to in a few

62

1          DELPHI CORPORATION

2      minutes.  But for example, payments

3      received under this order are subject to

4      recharacterization and we'll get to

5      that.  You know, if under the

6      appropriate circumstances,

7      recharacterization is appropriate, that

8      right has been reserved and Mr.

9      Rosenberg will talk about it a little

10     bit later on.

11          THE COURT:  The reason I'm

12     losing this is that in paragraph 16, on

13     38 and 39, in addition to the

14     reservation of rights for the committee,

15     the debtors reserve their rights to

16     argue the appropriateness of any

17     interest rate charged or claimed by the

18     pre-petition's secured lenders, and I'm

19     wondering whether you need to have

20     certain cross-reference now to this new

21     agreement, at least in respect to the

22     waivers, or not.  I'm just raising that

23     for you.

24          MR. BUTLER:  As always, Your

25     Honor, you're the best lawyer in the

63

1              DELPHI CORPORATION

2       courtroom and you're absolutely right.

3       The only recharacterization would be if

4       we were undersecured and otherwise there

5       would be no opportunity to challenge the

6       ABR plus applicable margin rate on a go

7       forward basis.

8              THE COURT:  Well, I'm probably

9       a lot smarter than any king in charge,

10      but let's make sure Mr. Butler agrees

11      that once the waiver comes in you're not

12      going to be able to object.

13             MR. BUTLER:  That's correct,

14      Your Honor.  I was going to restate that

15      at the end of that statement.

16             THE COURT:  So we probably have

17      to add some cross-reference then in,

18      paragraph 16.

19             MR. BUTLER:  We'll make that

20      cross-reference, Your Honor.

21             THE COURT:  Okay.

22             MR. BUTLER:  Mr. Brilliant.

23             MR. BRILLIANT:  Thank you, Your

24      Honor.  Alan Brilliant for the Goodwin

25      Proctor Company, the ad hoc committee of

64

1              DELPHI CORPORATION

2       pre-petition secured lenders.  Your

3       Honor, the agreement read into the

4       record by Mr. Butler accurately reflects

5       the agreement and upon approval of said

6       settlement by Your Honor, our committee

7       would withdraw our objection.

8              THE COURT:  Okay.

9              MR. BRILLIANT:  Your Honor, I

10      would also like to thank Your Honor and

11      your chambers for your accommodations

12      over the last week.  It's obviously been

13      a very hectic week for you all, not just

14      this case, but other things and we

15      really appreciate your accommodating us

16      until findings hearing yesterday.

17             THE COURT:  That's fine.  And

18      speaking of accommodating, are the

19      people who got the trial subpoenas, have

20      they been released of that one?

21             MR. BRILLIANT:  Yes, Your

22      Honor, when we reached the settlement

23      agreement we immediately released them.

24      Everybody was happy to go except for one

25      counsel, GE's counsel, who apparently

65

1          DELPHI CORPORATION

2     wants to leave open their right to seek,

3     you know, sanctions for the filing of

4     the subpoena.  I believe your clerk has

5     given them, you know, a further date and

6     if we have to, we'll come back and

7     respond to it.

8          THE COURT:  All right.  Well, I

9     hope you don't have to deal with that.

10          MR. BUTLER:  Your Honor, the

11     next item that I'd like to deal with is

12     the agreement that has been reached in

13     which a number of parties played a role

14     but it resolves, the objection of it

15     resolves is the objection of the

16     creditors' committee that was filed, or

17     the statement of the creditors'

18     committee, I should say, was filed.  And

19     there's a package of information here

20     that I want to get out and I know Mr.

21     Rosenberg will help me if I get it

22     wrong.  But I think I have the

23     understanding and Mr. Zimen's interests

24     were implicated and I think he will

25     address these as well.  But the

66

1          DELPHI CORPORATION

2      agreements reached have been reached as

3      follows, and these agreements which will

4      be reflected in the order will result in

5      the withdrawal of the statement, or at

6      least the committee's agreement that the

7      order ought to be entered with these

8      changes.  First, the DIP agent will

9      agree that it does not have the right to

10     waive the intercompany leaves that were

11     subject of the cash management order and

12     the subject that Your Honor talked

13     about, the subject of this order.  There

14     was a suggestion in the order that they

15     had that right and that's being

16     modified.  Second, that to the extent

17     that there's going to be a change in the

18     borrowing base or in the financial

19     convenants, we will give -- the debtors

20     will give reasonable advance notice to

21     the creditors' committee of those

22     events.  And seeing as we provide the

23     information to them on a monthly basis,

24     I don't see that as a burden, Your

25     Honor.

67

1          DELPHI CORPORATION

2               THE COURT:  Can I interrupt?

3          This is a suggestion, I don't know if

4          this actually is the case, but, the

5          carve-out could be affected by

6          modification to the borrowing base.  At

7          least when I read it, is that possible?

8               MR. BUTLER:  I donÆt believe it

9          is.  I'll ask the counsel for the DIP

10         lenders whether they agree with that.  I

11         don't think the carve-out can be changed

12         in any respect on account of the

13         borrowing base.

14              MS. O'DELL:  Maureen O'Dell for

15         the DIP lenders.  The borrowing base

16         typically just gives you the amount of

17         approved unpaid.  I think that's the

18         only relationship between the two.

19              THE COURT:  Okay.  Thank you.

20              MS. O'DELL:  The carve-out can

21         impact the borrowing base, but not vice

22         versa.

23              THE COURT:  Okay.  All right.

24              MR. BUTLER:  Your Honor, the

25         next item is to the extent that the

68

1            DELPHI CORPORATION

2       debtors received notice from the DIP

3       lenders that there is a triggering event

4       in connection with a carve-out.  We had

5       agreed to provide a copy of that written

6       notice immediately to the creditors'

7       committee council.

8              THE COURT:  Okay.

9              MR. BUTLER:  Fourth, Your

10      Honor, to the extent that there's a

11      triggering event of the carve-out and

12      that triggering event is later resolved

13      or waived so that there's not a

14      continuing event of default, the

15      agreement is that the carve-out would be

16      refreshed or would spring back to the

17      original amount Your Honor is

18      considering approval of today.

19             THE COURT:  Okay.

20             MR. BUTLER:  Your Honor, I'll

21      mention, also on the record, that there

22      was an inconsistency between the credit

23      agreement and the draft order with

24      respect to the carve-out language.  The

25      credit agreement was correct; the order

69

1              DELPHI CORPORATION

2         was incorrect.  There are a few words

3         that have to be modified in connection

4         with that, but it would be consistent

5         with the negotiated carve-out language

6         that's in the credit agreement.

7              THE COURT:  Okay.

8              MR. BUTLER:  Your Honor, the

9         next item goes to the investigatory

10        periods with respect to matters related

11        to the pre-petition lenders.  Currently

12        all of the matters have, under the order

13        -- are proposed to have a 90-day window

14        which can be extended, I believe it's

15        for cause upon motion to the Court.

16        Some of those rights are going to be

17        carved out and put in separate buckets

18        and extended for 180 days, subject to

19        the same motion that can be filed to

20        extend for cause.  And that would have

21        to do with the committee's review of any

22        causes of action and the releases the

23        debtors have given under these

24        agreements, under the order.  And

25        second, the question as to the

70

1            DELPHI CORPORATION

2       oversecured status of the pre-petition

3       lenders.

4            THE COURT:  And that will be in

5       180 days?

6            MR. BUTLER:  That will be 180

7       days.

8            THE COURT:  Plus the

9       opportunity to come to Court.

10           MR. BUTLER:  Correct, Your

11      Honor.

12           THE COURT:  Okay.

13           MR. BUTLER:  Your Honor, there

14      are a few places in the order where, in

15      talking about adequate protection of the

16      pre-petition interest, the phrase --

17      we're going to correct it to make sure

18      it tracks the statute and refers to

19      value -- their interests in the

20      collateral.  Your Honor, also in

21      connection with investigatory rights

22      being granted to the committee, the

23      parties would agreed, that the

24      committee, if they determine there was a

25      basis to file an action, they would have

71

1          DELPHI CORPORATION

2     agreed or deemed standing to do so.  The

3     thought process behind there is the

4     debtors have already waived their

5     interest in that respect and therefore

6     it would futile to make demand on the

7     debtors to prosecute before and then

8     seek the Court's approval.  So, they

9     would have agreed standing to file the

10    complaint before this Court.

11         THE COURT:  All right.  People

12    still have the right to say, once it's

13    filed, we don't need to pursue it on a

14    fast track, or anything like that?

15    Parties of interest still have the

16    opportunity though, to try and persuade

17    me that once it's filed, it doesn't have

18    to be pursued on a fast track or, you

19    know, the scheduling issues are

20    reserved, right?

21         MR. ROSENBERG:  Certainly, Your

22    Honor.

23         THE COURT:  Okay.

24         MR. BUTLER:  Your Honor, the

25    next -- I hope I get this correct.  The

72

1              DELPHI CORPORATION

2         next issue -- or the next agreement is a

3         bundling issue of rights that are either

4         waived or not waived vis-a-vis what the

5         committee wanted and the pre-petition

6         lenders want as part of the adequate

7         protection package.  And they implicate

8         section 506(c), 507(b) and 55 -- excuse

9         me 506(c), section 551 of the code and

10        interest in the proceeds in avoidance

11        actions.  The agreement would be that

12        the existing 506(c) waiver proposed in

13        the financing order will stand as

14        drafted.  However, the creditors'

15        committee objection with respect to

16        section 551 would be sustained and they

17        would -- on that particular point.  And

18        there would be an agreement in terms of

19        any interest the pre-petition lenders

20        would have in avoidance proceeds under

21        the terms -- or anyone else having to

22        file a 7(b) in the interest of avoidance

23        proceeds that the first thing that would

24        be paid in priority would be the

25        administrative costs of the estate in

73

1              DELPHI CORPORATION

2        generating that fund or those proceeds.

3        So there would be, before any kind of

4        intervening interests could occur, the

5        administrative costs would be paid

6        first.

7              THE COURT:  So that's the super

8        duper.

9              MR. BUTLER:  Someone described

10       it to me, Your Honor, this afternoon as

11       a 506(c) interest and 507(b).  I'm not

12       quite sure that's the right answer.

13       And, I don't want to confuse the record,

14       but the idea is that's it's that basic

15       concept.

16             THE COURT:  Okay.  On that

17       general topic, I don't know if this was

18       omitted on purpose or inadvertently, but

19       the avoidance actions that are listed

20       don't include 553, the avoidance

21       provision for setoff rights.  Is that

22       the improper setoffs?  Was that

23       intentional or is that just a --

24             MR. BUTLER:  I think that was a

25       drafting glitch, Your Honor.  I'll

74

1              DELPHI CORPORATION

2        correct it.

3              THE COURT:  So that should go

4        on that list then.

5              MR. BUTLER:  Your Honor, I

6        believe that the statements that I had

7        made on the record reflect the

8        understandings between the debtors, the

9        pre-petition agent, the post-petition

10       agent and the creditors' committee on

11       these matters.  And, if accepted and

12       approved in the final order to be

13       submitted, would result in the

14       creditors' committee deemed the

15       statement to have been withdrawn or

16       satisfied or however one wants to

17       characterize it.  And I'll ask Mr.

18       Rosenberg to confirm that on the record

19       after making one additional statement.

20       And that is, if Your Honor is in the

21       position to grant the changes we set in

22       the record today, it is important to get

23       a final order in place and we'd like,

24       Your Honor, when we get to the end of

25       the this, sir, Your Honor is prepared to

75

1          DELPHI CORPORATION

2          grant this relief because we still have

3          a ways to go.  We would like Your Honor

4          to be able to -- have Your Honor

5          indicate that the financings been

6          granted so we could issue the

7          appropriate press releases to see if we

8          can get there, but I think we would like

9          to submit the order tomorrow morning to

10         chambers, so that there's a number of

11         people, but at least the committee -- I

12         want the opportunity to make sure that

13         they got all the wording correctly.

14         We're not, by doing this, inviting

15         fifty-five or seven people to a drafting

16         session tonight.  We've had a number of

17         those because our intention is to simply

18         conform the order to the agreements

19         placed on this record; not to redraft or

20         renegotiate it.  And, Your Honor, our

21         request would be that to the extent

22         there was any disagreement about that,

23         by any party, we would come back for

24         purposes of settling the order, not in

25         terms of revisiting the substance of the

76

1              DELPHI CORPORATION

2         approval of the transaction, if we get

3         there.

4                THE COURT:  Uh-huh.  Okay.

5                MR. BUTLER:  Mr. Rosenberg.

6                THE COURT:  Before he -- or

7         maybe he'll raise this, but -- am I

8         right then that the resolution on the

9         borrowing base point which was just

10        limited to recruiting, does that mean

11        that other material modifications of the

12        debt do come back for Court approval?

13        That was an issue I think the committee

14        raised and I understood the bank's point

15        about the borrowing base, but if you're

16        going to change anything else

17        materially, you come back here?

18                MR. BUTLER:  Your Honor, if we

19        were making any material change in the

20        negative covenants, the financial

21        covenants, or those issues that we

22        didn't have the consent of the

23        committee, I think we would come back

24        here.  If there's an agreement between

25        the two parties, you know, unless we

77

1              DELPHI CORPORATION

2        thought -- you've asked us in the

3        beginning of this case to use our

4        judgment of what we think you'd want to

5        hear about.  And, if either of us

6        thought that was the case, we, of course

7        would bring it back to a monthly omnibus

8        hearing.

9              THE COURT:  And I understand

10       there's the point about successful

11       syndication, or maybe things were

12       changed there in connection with the

13       syndication, but --

14             MR. BUTLER:  But that's part of

15       the approved flex arrangement, Your

16       Honor, in any event.

17             THE COURT:  Right.

18             MR. BUTLER:  And, we would not

19       come back to Court for that.

20             THE COURT:  Right.

21             MR. BUTLER:  Your Honor, one

22       clarification.  One of the agreements I

23       mentioned the word negative covenants, I

24       should strike that, that was not the

25       arrangement with the DIP lenders and the

78

1              DELPHI CORPORATION

2        committee agrees with that, it was the

3        financial covenants that were implicated

4        there, I just want to make sure the

5        record's clear.

6              THE COURT:  All right.  That's

7        fine.  I think you may need to do

8        something on page 3, roman numeral II

9        just to -- I'm sorry, page 13 not pages

10       3.  Page 13 roman numeral II dealing

11       with that issues.  I think it's

12       beginning to look, now, a little

13       different than what's been stated on the

14       record.

15             MR. BUTLER:  Your Honor, I

16       should also point out that the agree --

17       we'll make that change.  I really want

18       to point out on the record is -- Your

19       Honor, is that in consideration for this

20       package the committee has agreed that

21       the priority for intercompany claims and

22       liens that are set forth in the cash

23       management order that was submitted and

24       in the DIP proposed financing order are

25       no longer objectionable to the

79

1         DELPHI CORPORATION

2    committee.

3              THE COURT:  So what I'm hearing

4    is, it's fine for both orders, then.

5              MR. BUTLER:  Correct.  The

6    language was negotiated with the Pension

7    Benefit Guaranty Corporation is now

8    acceptable to the committee.

9              THE COURT:  Okay.

10             MR. BUTLER:  Your Honor, I

11   believe that --

12             THE COURT:  Just a second.

13   This statement confirmed, and it was

14   confirmed on the record that despite the

15   recital about being a web secured, these

16   payments themselves that were made are

17   subject to recharacterization to the

18   extent that 506(b) would require the new

19   DIP expose of the interest.

20             MR. BUTLER:  That is correct.

21             THE COURT:  Okay.  I think

22   that's particularly valuable on page 15,

23   which is the mechanism you worked out

24   for pleading down of the principal on

25   the pre-petition debt.  You have asset

80

```
1              DELPHI CORPORATION
2        sales.  I think at the end of that first
3        full paragraph that's claiming company
4        shifting, you should have a proviso that
5        provided further that such prepayments
6        should have been laid over to the extent
7        that such loans are not secured claims
8        on under Section 506(b) of the
9        Bankruptcy Code.
10             MR. ZIMEN:  Your Honor, can I
11       be heard on the point?
12             THE COURT:  Sure.
13             MR.  ZIMEN:  Ken Zimen, Simpson
14       Thacher and Bartlett on behalf of JP
15       Morgan Chase Bank as pre-petition agent.
16       The language Your Honor focused on is
17       actually a prepayment of the DIP --
18             THE COURT:  Oh, that's the DIP?
19             MR. ZIMEN:  The resolution of
20       this issue that was an issue that was
21       raised with the debtors to provide
22       greater protection for the holders of
23       pre-petition secured claims was to
24       either require one of two things.  After
25       125 million dollar basket, the debtors
```

81

1            DELPHI CORPORATION

2       can use massive sale proceeds to take

3       two thirds of the excess and to apply

4       that either to reduce the DIP

5       permanently, thereby reducing the

6       priming, or to hold as cash collateral

7       for the benefit not only the DIP

8       lenders, but the pre-petition lenders

9       and also the setoff claimants.

10              THE COURT:  All right.  So what

11       -- that's fine.

12              MR. ZIMEN:  And I'll also point

13       out for Your Honor on page 31 of the

14       version you're looking at in the last

15       sentence of C, before the insert Mr.

16       Butler read, there's language there

17       preserving the rights of parties in

18       interest providing the characterization

19       point -- for the recharacterization

20       point.

21              THE COURT:  Right, Okay.  All

22       right.  The last part on, I think, this

23       basket of issues, is again on the

24       debtors' reservation of Roy Iksind,

25       paragraph 16.  If I read the pleading's

82

1          DELPHI CORPORATION

2      writing, if I heard the version right

3      today, the debtors are reserving, on the

4      interest that we talked about.  You need

5      to object different if it's claimed

6      outside of the lenders' scenario.

7      (indiscerible) have a right to object to

8      these and expenses asserted by someone

9      other than the agent.

10          MR. ZIMEN:  Yes, Your Honor.

11          THE COURT:  And I think it's

12      only at this -- this discovered

13      interest.

14          MR. ZIMEN:  I thought Ray Uppet

15      dealt with what allowed this.

16      Certainly, Your Honor, that is correct.

17          THE COURT:  You should take a

18      look at that because I think, both on

19      page 38 and 39, at least, it seems to

20      just cover the interest rate.

21          MR. ZIMEN:  We'll revise that,

22      your Honor.

23          THE COURT:  Okay.

24          MR. BUTLER:  Your Honor, then

25      with those statements, I'd like Mr.

83

1               DELPHI CORPORATION

2       Rosenberg to confirm that we have

3       satisfied the requirements of the

4       creditors' committee with respect to

5       this motion.

6               MR. ROSENBERG:  Your Honor, I'm

7       pleased to report that we have.  Our own

8       objections have been satisfied with a

9       reasonable compromise here.  And, given

10      where we came out including such issues,

11      in particular, as the preservation of

12      the right to seek recharacterization

13      which had not been in the earlier

14      documents, the agreement with the pre-

15      petition lenders, Mr. Brilliant's

16      clients, makes a lot of sense.  So, we

17      are generally happy and pleased with the

18      outcome this afternoon.

19              THE COURT:  Okay.

20              MR. ZIMEN:  Your Honor, Ken

21      Zimen, again, for the record.  The

22      agent, too, is supportive of the

23      resolution as described by Mr. Butler

24      with just one clarification, that the

25      time period for the committee to review

84

1          DELPHI CORPORATION

2      the values without prejudice to the

3      agents' rights or the rights to lenders

4      to make a 506(a) motion, if and when

5      they determine that to be appropriate.

6              THE COURT:  Right.

7              MR. ZIMEN:  And the super duper

8      claim that was described regarding

9      reimbursing essentially the estate for

10     the costs of obtaining avoidance

11     proceeds before they would be available

12     to satisfy indimination in value claim,

13     that's to the extent not already paid,

14     since it's our property that's going to

15     pay a lot of the expenses to the estate

16     already.  It's not a double dip, it's

17     the same concept.

18             THE COURT:  Okay.  Very well.

19     I agree that it's a reasonable

20     compromise and resolution on this basket

21     of issues and so I would approve it

22     subject to the whole order, of course.

23             MR. BUTLER:  Your Honor, moving

24     along, I think the next person who wants

25     to be heard is Mr. Bienenstock about

85

1          DELPHI CORPORATION

2     General Motors.

3          THE COURT:  I'm sorry, there

4     was one small thing.  'Cause I looked at

5     this a little differently, in one

6     respect, and Mr. Zimen's comment about

7     double dipping made me remember.  Right

8     now, on page 41, a committee is limited

9     to $250,000 to perform the

10    investigations commenced by its charge

11    to look at the banks' liens and claims.

12    And that seemed reasonable to me for

13    avoidance actions and other causes of

14    action, but more and more investment

15    bankers charge.  I would assume that the

16    work of the committee's financial

17    advisor and attorney left a value of

18    what the debtor is and hence what the

19    collateral is.  Probably wouldn't be

20    covered in that $250,000, would it,

21    anyway?  Investment bankers eat that up

22    in about a month a half.

23          MR. ZIMEN:  Acknowledging that

24    we all may be in the wrong line of work,

25    Your Honor, I guess we should delete

86

1          DELPHI CORPORATION

2     that.  I don't think we ever found it,

3     we going to commence litigation, clearly

4     they need to be able to respond.  And to

5     do financial investigation, I think this

6     is -- I'm sorry --

7          THE COURT:  Okay.

8          MR. ZIMEN:  You know, from our

9     perspective, I think the debtors have a

10    vested interest in this as well because

11    this is a case where their real hope is

12    substantial unencumbered value.

13         THE COURT:  This is covering

14    all academic --

15         MR. ZIMEN:  Put out.

16         THE COURT:  Just looking ahead

17    to hope's possibility.

18         MR. ZIMEN:  Hope so, Judge.

19    So, I think I agree with Your Honor that

20    to the extent that the committee is put

21    to the test a bit, either determine

22    value for their own benefit to be able

23    to waive on this or being put to the

24    test because we filed 506(a) motion.  I

25    don't believe the 250 has part in that.

87

1          DELPHI CORPORATION

2               THE COURT:  Okay.  Sorry to

3          interrupt you, Mr. Butler.

4               MR. BUTLER:  Your Honor, I

5          believe the next person who wants to

6          talk.-- I believe Mr. Bienenstock was

7          rising to indicate that his objection

8          was also resolved in General Motors

9          Corporation.

10              MR. BIENENSTOCK:  Good

11         afternoon, Martin Bienenstock, with

12         Weil, Gotshal & Manges for General

13         Motors Corporation.  Your Honor, coming

14         into this hearing, General Motors

15         Corporation had agreed on a proposed

16         order with the debtor in its capacity as

17         customer, and we were hoping that that

18         would be proved as it is.  Of course,

19         there were subsequent arrangements that

20         Mr. Butler has described to the Court

21         which are going to require some

22         additional language.  There's one

23         particular comment about conforming

24         language on adequately protected

25         interest and collateral which we felt,

88

1        DELPHI CORPORATION

2        if made, might, in certain sections of

3        the order and not in others, might have

4        a negative implication.  So, after

5        discussing it with the debtor, we

6        determined the best thing is simply to

7        clarify this on the record.  It arises

8        under Paragraph 18 of the proposed

9        order, which is applicable to all

10       customers.  In general, Your Honor, what

11       paragraph 18 does, is it provides

12       customers first a replacement lien for

13       their allowable setoffs on their first

14       petition payables, because they'll be

15       paying their pre-petition payable into

16       the estate.  But the post-petition lien

17       may or may not have any value because

18       it's second next to the DIP lenders'

19       first lien.  So, if it is insufficient

20       to fully protect the customer's

21       allowable setoff claims, Paragraph 18

22       provides for the customers to have other

23       liens, some are third liens, on property

24       of the estate behind the pre-petition

25       lenders.  Some are second equal liens

89

1       DELPHI CORPORATION

2           with the pre-petition lenders on

3           property that had not previously been

4           part of a collateral package.  There's a

5           provision in paragraph 18 that provides

6           for what I just described and 507(b)

7           claims in a certain priority to back up

8           the liens.  The clarification I wanted

9           to make and, I think, General Motors

10          would want and I suspect all of the

11          customers would want the debtors or any

12          party of interest to speak up if they

13          don't think the meaning of the order is

14          this.  If, hypothetically, a customer

15          has an allowable setoff claim above a

16          million dollars as of the petition date

17          and it turns out that the replacement

18          liens are worth $800,000.  The other

19          liens, the second and third liens and

20          the 507(b) are supposed to protect the

21          $200,000 diminution.  That's the

22          diminution of the allowable setoff claim

23          as per the beginning.  We think it's

24          plain, that's what we intended.  We

25          think that's what the debtor intended

90

1          DELPHI CORPORATION

2     and the pre-petition banks understood

3     and the committee understood.  But, lest

4     there be any confusion on that, we

5     thought it's important to put it on the

6     record.

7          THE COURT:  Okay.  Well, I

8     certainly would.  All of the grants a

9     letter of protection here, not just for

10    setoff claims but for the other secured

11    creditors to cover diminution only.

12         MR. BIENENSTOCK:  Our point is

13    it's diminution from the value of our

14    allowable setoff claim.

15         THE COURT:  The original setoff

16    claim?

17         MR. BIENENSTOCK:  That's right,

18    yes.

19         THE COURT:  Okay.

20         MR. BIENENSTOCK:  Thank you.

21         THE COURT:  In any event, just

22    -- I'd make sure I understand this as a

23    play, this sort of DIP provides the

24    mechanism for -- I got to turn ordinary

25    core of setoffs and without lifting the

91

1          DELPHI CORPORATION

2      very next day to let that happen, right?

3               MR. BIENENSTOCK:  Yes.  So that

4      will, in effect, reduce at least some

5      customers' allowable setoff claims that

6      would need protection.

7               THE COURT:  So, it's important,

8      obviously, to keep a record of what

9      their claims were at each point so this

10     can be tracked.

11              MR. BIENENSTOCK:  Well, at

12     least for General Motors, we will do it

13     and I'm quite sure Delphi will have a

14     counter record.

15              THE COURT:  Okay.

16              MR. BIENENSTOCK:  Which

17     hopefully will match up.

18              THE COURT:  Okay.

19              MR. BIENENSTOCK:  Thank you,

20     Your Honor.

21              MR. BUTLER:  I'm not sure I

22     follow exactly how Mr. Bienenstock got

23     to the conclusion, I will confirm to the

24     Court on the record that the conclusion

25     he reached is one that the debtors

92

1              DELPHI CORPORATION

2         concur with.

3              THE COURT:  Okay.

4              MR. BUTLER:  And, as the Court

5         also stated, Your Honor, moving now to

6         some other issues, if we may.  I think

7         we have resolved, I don't know.  Is Mr.

8         Somerstein still in the courtroom?  I

9         believe he now resolved any issues that

10        the DIP lenders have, the pre-petition

11        agent has, the Goodwin Proctor Group has

12        as part of the pre-petition bank group

13        has, the creditors' committee has and

14        General Motors has, as to the order that

15        was filed as the Debtors' 4, with the

16        changes that we have thus far placed on

17        the record.  That leaves us with a --

18        turn to Debtors' 28 and 29 in terms of

19        the objections that are locked.  That

20        leaves us with objections from debtors'

21        setoff and lien claimants, the vast

22        majority of which had been resolved,

23        based on the treatment that we proposed

24        here, and others who still want to

25        address the Court.  I'm going to ask us

93

1        DELPHI CORPORATION

2        to get to those in a few moments, but I

3        want to address any other objections

4        first.  And I think the only other

5        objection that has not been fully

6        resolved, other than to be getting off

7        into the setoff bucket, if you will, or

8        basket, is that of Bank of America as it

9        relates to their interest as an aircraft

10       lessor.  And in that respect, they had

11       filed an objection that wanted to make

12       it clear that the interest that were

13       being given here today did not

14       negatively implicate the aircraft leases

15       and certain permissity and other matters

16       relating that.  And, in fact, there is

17       language in paragraph 25 of the order,

18       page 54 of Debtors' 4 that is quite

19       explicit in that regard, and I think,

20       frankly, stated with what Your Honor

21       stated at the first day hearing in terms

22       of Your Honor's expectation with

23       aircraft leases and property that wasn't

24       necessarily property of the estate, but

25       even beyond that, is now explicit as to

94

1          DELPHI CORPORATION

2     personal property that some of the

3     aircraft leases and so forth.  I believe

4     that that language as it stands is

5     acceptable to Bank of America but I

6     believe Mr. Mares is on the phone and

7     there are other things that they wanted

8     the debtors to do beyond this language

9     that I believe Mr. Mares still wanted to

10    address the Court; we simply couldn't

11    accommodate the needs.

12          THE COURT:  Okay.

13          MR. MARES:  Your Honor, thank

14    you very much, Ted Mares.  We had had

15    long conversations with debtors' counsel

16    and we've nearly narrowed down the

17    issues to three.  Number 1, there is

18    some ancillary property that includes

19    cash collateral generated by the

20    aircraft that we are asking that it not

21    be subject to a lien and I think that's

22    the understanding, we had asked --

23          THE COURT:  How does the

24    aircraft generate cash collaterals it

25    moves down?

95

1          DELPHI CORPORATION

2                MR. MARES:  There are charter

3     agreements.

4                THE COURT:  Okay.

5                MR. MARES:  And there are

6     revenues payable under the charter

7     agreements.  They're potentially our sub

8     leases, although I'm not sure that there

9     are any in businesses right now, but the

10    charter agreement does let show the

11    revenues that are involved.

12                THE COURT:  Okay.

13                MR. MARES:  So, what we've

14    asked, and we understand that the

15    debtors are using whatever cash

16    collateral that generated by the charter

17    agreement, we just want to make clear

18    that in that with the insertion of a

19    phrase in paragraph 25, just to make

20    sure that the liens do not cover

21    property that is subject to the lease

22    agreements or at the security for.  I

23    haven't heard that from them on that,

24    but I think what Mr. Butler said I

25    contest that he wanted to do that.  The

96

1          DELPHI CORPORATION

2     second item is, we are objecting to the

3     subordination of our 365(d) 1020.

4          THE COURT:  Let's take them one

5     at a time, Mr. Mares.

6          MR. BUTLER:  I think the issue,

7     and counsel for the DIP lenders has

8     reasoned as well, the issue the debtors

9     have, is, we believe it's always cut off

10    by the order is that as it relates to

11    this particular issue, and I think I

12    have it right, that if in fact there's a

13    valid lien in that particular property

14    then it is not negatively impacted by

15    this order.

16          THE COURT:  No.  That's covered

17    by the general language granting the DIP

18    lender a lien.

19          MR. BUTLER:  And therefore, we

20    thought nothing else was needed --

21          THE COURT:  The preexisting

22    liens are not prominent as laid out in

23    McGraff; I forget what it is.

24          MR. BUTLER:  There about 17 I

25    believe, Your Honor.  7(c), like 7

97

1          DELPHI CORPORATION

2     Charley.

3          MR. MARES:  Your Honor, if it's

4     necessary to file a motion for adequate

5     protection we will, but we will just ask

6     the continuing liens be granted and put

7     out the ancillary --

8          THE COURT:  No.  The debtors

9     can't use cash collateral without your

10     consent, or I'm showing adequate

11     protections so you're stating to them

12     now you don't consent.

13          MR. MARES:  I'm sorry.

14          THE COURT:  So the balls are in

15     their court at this point.

16          MR. MARES:  Okay.  Your Honor,

17     thank you.

18          THE COURT:  Okay.

19          MR. MARES:  And the only other

20     point is that we are objecting to the

21     subordination of our 365(d)(10) claims

22     and any other claims that are granted

23     pursuant to this order.  The debtor is

24     getting use of the claim during the

25     Chapter 11 case; there is an LB status,

98

1          DELPHI CORPORATION

2      you know 365(d), and claims and we

3      should just add that --

4              THE COURT:  As these were

5      secured or misreleases.

6              MR. MARES:  These are two

7      leases but that security for the lease

8      application there's a small part in what

9      I call collateral charter agreement,

10     managing agreement sub leases that are

11     separately pledged here to be leased a

12     two lease obligation.

13             MR. BUTLER:  Your Honor, the

14     debtors' problem with the language Mr.

15     Mares's clients wanted him to pursue

16     here is that it really attempted to have

17     the debtors agree with lots of things.

18     That these were two leases this part

19     secured, and the relationships between

20     them.  And we are prepared simply to do

21     that.  We understand Your Honor's

22     admission about cash collateral, but I

23     don't believe that this order is drafted

24     if Mr. Mares's client has that which he

25     claims that they have, that they are

99

1          DELPHI CORPORATION

2     negatively impacted.

3          MR. MARES:  Just to respond

4     Your Honor, I'm not asking for -- I

5     understand Mr. Butler's point.  I guess

6     all I'm asking is to the extent that we

7     do have two 365(d) cash claims, then

8     those not be subordinated with other

9     claims that would arise from this order.

10         MR. BUTLER:  Mr. Mares, was

11    that a part of your objection?

12         THE COURT:  I have to confess,

13    I have to give orders 'cause I didn't

14    look at this issue until about 10

15    seconds ago.

16         MR. BUTLER:  I never heard that

17    raised by Mr. Mares in your objection,

18    was it raised?

19         MR. MARES:  I think it was

20    raised in discussion, it's not on the

21    objection certainly as discussions with

22    Mr. Cantor and others.

23         MR. BUTLER:  Well, I think what

24    you're asking for is not acceptable

25    probably to anybody in the courtroom in

100

1              DELPHI CORPORATION

2       terms of the lenders or anybody else.

3       And, Your Honor, he didn't raise it in

4       any objection I heard.

5              THE COURT:  I certainly want to

6       understand the objection, this isn't as

7       to the specific assignment that you've

8       been given of a lease because that would

9       be the debtors -- that wouldn't be

10      covered by 365 -- we're talking about

11      either that the leases are --

12             MR. MARES:  Your Honor, we

13      believe these are true leases.  And the

14      lease obligations are monthly lease

15      statements that are due Bank of America

16      by the debtor.  And under 365(d)(10) the

17      performance of these obligations, for at

18      least after the 60-day grace period,

19      arguments such as priority.  The DIP

20      order does provide for subordination of

21      administrative receptance.  We are

22      asking that our 36 id 10 and to be

23      (indiscernible) those names doesn't

24      become true lease, that would be

25      subordinate.

101

1        DELPHI CORPORATION

2              MR. BUTLER:  Your Honor, this

3        is subordination -- Mr. Mares is saying

4        is that we're giving a super-party claim

5        of the DIP line, there the answer is,

6        you bet.  And it is a super-priority's

7        intended to be.  They're not going to

8        give it up for this or any kind of

9        administrative claim outside of what's

10       said in the order.  This, you know,

11       objection is untimely, among other

12       things, Your Honor.

13             THE COURT:  I'm going to deny

14       this objection for that reason.  Unless

15       you're prepared to have our own trial

16       today on 364(c) which I think highlights

17       the untimeliness of the objection, it's

18       just not an issue of adequate

19       protection; this is just whether the

20       debtors could get financing on a simple

21       non-priming, non super-priority basis.

22             MR. MARES:  Other than that,

23       all of our other objections are gone.

24             THE COURT:  Okay.  All right.

25             MR. BUTLER:  Your Honor, I

102

1          DELPHI CORPORATION

2      think, and this is so I ask him to quote

3      him on the phone to see if I had missed

4      anyone.  Other than setoff claimants, is

5      there any other party who has an

6      objection to this matter?

7          THE COURT:  I'm going to say

8      this once more, please turn off your

9      Blackberries it affects the transcript.

10     This is on a digital recording system,

11     everything else about this system is

12     superior to the prior system, so -- but,

13     if you have your Blackberry on and get

14     an e-mail, there's static on the CD and

15     therefore the people who transcribe it

16     won't be able to hear it.  So please

17     turn off your Blackberries.

18         MR. ROSENBERG:  Your Honor, I

19     wonder if it's somebody on the

20     telephone, because it also affects it on

21     that end, you might --

22         THE COURT:  I guess it does,

23     and maybe that is the case.  If you're

24     on the telephone you must turn it off

25     too.

103

1        DELPHI CORPORATION

2                MR. BUTLER:  One other party

3        wants to be heard before we get to

4        setoff.

5                MR. NEWMAN:  Your Honor, very,

6        very briefly, Max Newman of Schaffer and

7        Weiner on behalf of nine parties.  We

8        filed a joint objection relating, in

9        part, to tooling liens and we had a

10       discussion during the break with respect

11       to resolving that with some additional

12       language in paragraph 6 of the financing

13       order relating to the administrative

14       expense claim of the DIP lenders.  They

15       had put a carve-out in section 7(d) of

16       the order, with respect to liens of the

17       type that's on the top of page 22 of the

18       red-line.

19               THE COURT:  All right.

20               MR. NEWMAN:  And that carve-out

21       was not in place also with respect to

22       the super-priority administrative claim.

23       And it was my understanding that there

24       was an agreement to import that same

25       carve-out, that same exception into the

104

```
 1              DELPHI CORPORATION
 2         super-priority lien status.
 3              THE COURT:  What, I'm sorry.
 4         Super-priority lien or super-priority
 5         claim?
 6              MR. NEWMAN:  Super-priority
 7         claim.  I'm sorry, Your Honor.
 8              THE COURT:  All right.  Is
 9         there such an agreement?
10              MR. NEWMAN:  Your Honor, there
11         is.
12              THE COURT:  Okay.
13              MR. NEWMAN:  In that there's
14         language that's going to go into 6(a),
15         paragraph 6(a) that is going to make
16         sure it excludes the issue that is
17         raised here.  The language and the DIP
18         lenders agreed to this, I'm told.  The
19         language that appears on page 22, at the
20         top of page 22 in Roman IV, involving
21         statuary liens or securities just
22         arising after the petition date and
23         permitted under the DIP credit agreement
24         that by operation of law would have
25         priority over pre (indiscernible)
```

105

1      DELPHI CORPORATION

2      security interest.  That language is

3      going to also appear in paragraph 6(a)

4      in the fifth line.

5            THE COURT:  Okay.

6            MR. NEWMAN:  Thank you, Your

7      Honor, and I wish to have my clients so

8      support the entry of the order as

9      drafted.

10           THE COURT:  Okay.

11           MR. BUTLER:  Now I'm asking

12     anyone other than setoff claimants, is

13     there any other objector on the phone or

14     in the courtroom who has an issue with

15     the order?  Your Honor, I think with the

16     Court's permission, that item in turn

17     setoff, the last remaining bucket which

18     is the setoff claimants.  Your Honor,

19     there are a series of matters I want to

20     read into the record much like Mr.

21     Bienenstock's clarification.  I would

22     point out, Your Honor, that we're now

23     focused primarily on paragraph 18 of the

24     order, which I concede, Your Honor, is

25     the longest paragraph I have ever seen

106

1        DELPHI CORPORATION

2        in a financing order.  But it is the

3        product of extraordinary lengthy

4        negotiations between all the major stake

5        holders in this case, I think, that had

6        a direct interest in this.  Other than

7        -- I should be candid about this, other

8        than the creditors' committee which did

9        not participate directly in the

10       immediate negotiations relating to this,

11       but now support entry of the order.

12       And, with respect to that language and I

13       don't think we proposed to make any

14       changes to that language because it is

15       so delicately negotiated.  But if you

16       want to read some clarifications which I

17       understand is all the objections of

18       maybe 20 or 25 of the parties on board,

19       the first, Your Honor, is just a

20       statement that, notwithstanding the fact

21       that there is a series of alternative

22       dispute approaches in this order, this

23       is a first.  Go work out your setoffs

24       with the company and the committee.

25       Second, go to mediation.  Third, go to

107

1              DELPHI CORPORATION

2         arbitration or you can also come to

3         court.  It's not intended, and we'll

4         certainly clarify if there is any

5         language clarification we need to, but

6         I'll say on this record, it's not

7         intended to prevent anyone from coming

8         to court at any time.  Now, it also

9         means that there may be, some of us will

10        come before Your Honor and say, Your

11        Honor ought not grant the relief they're

12        seeking without having gone through all

13        that.  So, we reserve all of our

14        rights; the committee uses its rights,

15        and other parties do.  But the fact is,

16        if an individual -- you know, setoff

17        claimant, wants to come to court, then

18        they could come to court.

19             THE COURT:  Subject to the

20        other parties want to argue that they

21        should go through these other alternate

22        dispute.

23             MR. BUTLER:  But the order

24        doesn't require them to do it, Your

25        Honor.

108

1            DELPHI CORPORATION

2                 THE COURT:  Okay.

3                 Mr. BUTLER:  And, I want to

4        make that clear.

5                 THE COURT:  I'd like the

6        parties to (indiscernible due to static

7        on digital recording), because I've got

8        (indiscernible due to static on digital

9        recording)  If that's the deal I think

10       it'll give you the fact that could none

11       of the setoff claimants are here, just

12       the objectants are here; you're not

13       making clear to them they have a right

14       to come to court.  Now, pertaining to

15       the other procedures that are being able

16       to request that ultimately the dispute

17       was an issue in procedures be followed

18       first.

19                 MR. APPLEBAUM: (indiscernible

20       due to static on digital recording)

21                 THE COURT:  What I'm saying,

22       and I'm not sure I understand you, what

23       I'm saying is just repeating what Mr.

24       Butler is saying, which is that by way

25       of these punitive dispute resolution

109

1          DELPHI CORPORATION

2     mechanisms in the agreement --

3     (indiscernible due to static on digital

4     recording)

5          MR. BUTLER:  And, Your Honor, I

6     should point out that paragraph 18(a) on

7     page 40 of Debtor's 4, does have

8     language in it to that effect.

9          THE COURT:  That's fine.

10          MR. BUTLER:  And, we put it in,

11     but we'll make sure it's very clear, but

12     I want it stated on the record.

13          THE COURT:  It is clear.

14          MR. BUTLER:  Your Honor, the

15     next item, and this again we're in

16     paragraph 18 in all of these.  With

17     respect to paragraph 18(a)(4), we want

18     to clarify that nothing in the order

19     affects the right of any party to

20     exercise post-petition setoffs or

21     recoupment rights out of respect to

22     these post-petition matters.  Second,

23     respect to Section 8, paragraph

24     18(a)(1), to the extent that any party

25     has a valid pre-petition setoff right,

110

1          DELPHI CORPORATION

2      nothing in the order affects such

3      party's rights.  However, with respect

4      to valid pre-petition recoupment,

5      nothing in the order diminishes such

6      recoupment right, but channel such

7      rights into the program to find in

8      paragraph 18.  Third, this is in respect

9      to paragraph 18(a)(3), there is no cap

10     in the ordinary course setoff or

11     recoupment rights of any party other

12     than General Motors Corporation, which

13     is as defined in the order.  Fourth,

14     with respect to paragraph 18(a)(1),

15     similar to the point when the order

16     printing is made, the pre-petition

17     setoff or recoupment rights of any

18     party, which is a valid setoff or

19     recoupment right, will be permitted

20     under paragraph 18, irrespective of the

21     financial condition of the debtors.  And

22     finally, with respect to paragraph 7(c),

23     the pre-petition and post-petition

24     setoff and recoupment rights of any

25     party are senior to the rights of the

111

<pre>
 1              DELPHI CORPORATION
 2       DIP lenders.
 3              THE COURT:  Oh, okay.  And a
 4       DIP lender isn't a regular debt, no
 5       standard?
 6              MR. BUTLER:  Can I have a
 7       moment, Your Honor, please?
 8              THE COURT:  Yes.
 9              MR. BUTLER:  Your Honor, I used
10       the word negative earlier when I
11       shouldn't have.  I used a couple extra
12       words I shouldn't have, I'm told.  And
13       the Paragraph 7(c), and I'll read it
14       again, the words again, the pre-petition
15       setoff and recoupment rights of any
16       party are senior to the rights of the
17       DIP lenders.  Let's see what paragraph
18       7(c) says, and a DIP agent agrees with
19       that statement.
20              MS. O'DELL:  I'm sorry, Your
21       Honor, Maureen O'Dell again.  We talked
22       with this agent.  We'd like to consult
23       with this, we're just not sure we really
24       understand it.
25              THE COURT:  You're talking
</pre>

112

1          DELPHI CORPORATION

2      about pre-petition loans, right?

3              MR. BUTLER:  Yes, Your Honor.

4              THE COURT:  Okay.

5      (indiscernible due to static on digital

6      recording).  Let's just say it's that

7      there not getting primed about the

8      dipping.

9              MR. BUTLER:  Correct.

10             THE COURT:  All right.  I think

11     all of those statements it includes it

12     in the order here in what I read.  So,

13     to the extent that they help clarify the

14     order, hearing that kind, we'll talk

15     then.

16             MR. BUTLER:  Your Honor, I

17     believe there are some parties, some

18     setoff claimants or alleged claimants

19     that still want to address the Court.

20             THE COURT:  Okay.

21             MR. BUTLER:  Your Honor, it

22     would be helpful if they do so, if

23     people would identify what their

24     objection is so we can track to it.

25             MR. MCDOWAL:  (indiscernible

113

1              DELPHI CORPORATION

2          due to static on digital recording)

3              THE COURT:  You'll have to

4          speak up a little louder, sir.

5              MR. MCDOWAL:  That's okay.  The

6          lenders for the first (indiscernible due

7          to static on digital recording)

8              THE COURT:  To the extent that

9          ultimately you still have to prove your

10         claim under the Bankruptcy Code and

11         you'll to set up on under the Bankruptcy

12         Code.

13             MR. MCDOWAL:  Understood

14         (indiscernible due to static on digital

15         recording)

16             MR. PLANTES:  Your Honor, Neil

17         Plantes.  I mean, paragraph 18 which has

18         been so carefully negotiated says what

19         it says and I don't want to sort of have

20         these blatant -- I understand what the

21         Court said and I understand what those -

22         - I believe that to be the case that

23         they have to prove up their matters, and

24         there's a process here on how they can

25         deal with these matters under the DIP

114

1          DELPHI CORPORATION

2     financing order.

3          MR. MCDOWELL:  Well Your Honor,

4     paragraph 18 says what it says and the

5     language that third provision on this

6     could be argued that you altered it

7     (indiscernible due to static on digital

8     recording)

9          THE COURT:  Well the reason I

10    think people are having problems with

11    your statement is that, for example,

12    page 62, offers, you know, subsequent

13    procontractual rights.  So if you're

14    accepting the existence of a Bankruptcy

15    Code, then I agree with you.

16          MR. MCDOWEL:  So the exception

17    of 362(a) --

18          THE COURT:  The Bankruptcy Code

19    generally, I mean, because of 62 -- 362.

20    Okay.  All right.

21          MR. MCDOWAL:  Thank you.

22          THE COURT:  Sure.

23          MR. PASCOE:  Your Honor, this

24    is Timothy Pascoe, on behalf of Ford

25    Motor Company.

115

1          DELPHI CORPORATION

2          THE COURT:  Yes.

3          MR. PASCOE:  Your Honor, our

4     issue is with the inclusion of

5     recoupment and the definition of a

6     setoff.  We have no problem with recoup

7     setoffs, obviously the exercise of

8     setoffs are March 8.  The 362,

9     recoupment right, they're not,

10    especially ordinary corp recoupment,

11    because there's nothing but a true up

12    between the customer and the supplier,

13    are not affected by the automatic stay

14    and it is proper in an order like this

15    to restrict our recoupment right even in

16    the context of the DIP financing.  We

17    object to going through all of the

18    procedures that are set forth in here to

19    exercise this right.  It is simply not

20    affected by the automatic stay and is

21    against all ordinary business practice.

22    We're talking about the way we do

23    business and we make it absolutely

24    imperative that we at least be allowed

25    to continue our recoupment as opposed to

116

1          DELPHI CORPORATION

2     our setoff right.

3          THE COURT:  Well, I guess I

4     have two things to say in respect of

5     that.  First, as I read this, and as

6     clarified further by Mr. Butler, all

7     that means is that paragraph 18 is

8     intended to change the substantive

9     rights that is doing business as Delphi

10    have in respect of true recoupment

11    claims, recoupment rights.  That being

12    said, there also -- or recognition or

13    recoupment rights, but also it's the

14    setoff rights that ordinary course, by

15    nature, will not be because of the

16    automatic stay.  But, they are subject

17    to the procedure which seems reasonable

18    to me.  Particularly, the rideout of any

19    such party to try to expedite that

20    procedure by coming back to court, to

21    determine a regular refrain act.  But

22    some of the claims is a recoupment claim

23    or a setoff claim, is in fact a

24    recoupment lawyers that set out claim

25    and the cases are unfortunately pretty

117

1          DELPHI CORPORATION

2          ninny and they don't (indiscernible) as

3          to what a recoupment claim is, what a

4          recoupment right is, and frequently what

5          part of recoupment right a court finds

6          is not.  And, of course, any bankruptcy

7          lawyer, working for herself will tell

8          the client if there's any doubt what's

9          not exercised sub (indiscernible due to

10         static on digital recording).  So I view

11         this procedure as one that is beneficial

12         to both sides in this transaction in

13         that inlay is out of an action for the

14         debtors with input from the creditors'

15         committee to make those decision in the

16         first instance and it's really clear

17         very quickly and something that's not

18         very clear (indiscernible due to static

19         on digital recording) to do it in an

20         organized way.  It tends to happen that

21         the objection could go around and

22         debtors could have a chance to come to

23         me and that would stop.  But I believe

24         that sooner is somehow taking away

25         peoples rights to become what, of

118

1          DELPHI CORPORATION

2     course, there's to recoup makes the

3     question some of them do have the right.

4              MR. PASCOE:  All right.  Thank

5     you.

6              THE COURT:  Okay.

7              MR. REISMAN:  Your Honor Steven

8     Reisman with the firm of Curtis Mallet-

9     Prevost on behalf of Flextronics which

10    is the largest trade creditor in this

11    case.  I really have three points to

12    make, really four points to make.  One,

13    I compliment that debtor on their

14    efforts with respect to the setoff

15    provisions and the mediation arbitration

16    protocol that they're trying to put in

17    place.  The first point I'd like to

18    make, Your Honor, is with respect -- it

19    is a substantive point with respect to

20    18(a)(2), the last sentence.  It's a

21    little unclear to me and I'm looking

22    from a black-line, Your Honor, so I

23    apologize.  But 18(a)(2) sentence, page

24    45 of the black-line.  It says,

25    notwithstanding any award in any such

119

1          DELPHI CORPORATION

2     arbitration in no event shall the setoff

3     claimant be permitted to exercise its

4     setoff right against any payables other

5     than pre-petition payable except as

6     hereinafter set forth.  I just asked for

7     a modification of that to say except

8     there set forth in this paragraph 18

9     because it talks about the full event

10    and after that sentence about the

11    ability to set off against post-petition

12    payables as well.

13          THE COURT:  Okay.  This sounds

14    -- if it makes sense to me.

15          MR. REISMAN:  What we're trying

16    to avoid with all these parties is --

17    there are literally 50 people who want

18    to wordsmith that site.  It is --

19    paragraph 18 deals with setoff --

20          THE COURT:  If there's any

21    remedy as to post-petition payables that

22    actually precede this paragraph then I

23    think Mr. Reisman is right.  So maybe

24    you should -- just check to see whether

25    they are, I'm sure if they are then let

120

1          DELPHI CORPORATION

2          the kids fix this one.

3               MR. REISMAN:  Your Honor, the

4          second point I have to make, and it's

5          really the second and third, I think

6          it's appropriate for the debtor to put

7          in place some type of protocol on this

8          mediation setoff.  For example, they say

9          that notice is to be given to the

10         committee, the debtor, the agent, but no

11         one really knows who to send the notice

12         to and we don't want to -- we want to

13         get the right people to try and go

14         through the issues.  As a first line,

15         we'll work through the business people

16         in trying to work through this.  But if

17         we can't, I think people should have the

18         right to know, you know, who gets that

19         notice.  And it should also set forth,

20         with respect to the mediation and the

21         arbitration, who's going to bear the

22         cost and the process for dealing with

23         that.  And I leave it to the debtors to

24         propose something in that regard for the

25         various parties that have the setoff

121

```
 1          DELPHI CORPORATION
 2     rights.
 3          THE COURT:  All right.  At
 4     least it's their first point; I'm sure
 5     the debtors will work out problems with
 6     correcting on a process that they
 7     accomplish this.  And it's probably
 8     going to be, you know, at a couple of
 9     different levels.  But the easy ones are
10     probably dealt with one level in the
11     heart of ones, go to a different level,
12     then you get into actually contesting
13     these things.  But I would like to -- I
14     may be pretty busy.  So that's the next
15     time to turn to.
16          MR. REISMAN:  Thank you.
17          MR. TOERING:  Gordon Toering,
18     Your Honor, on behalf of Robert Bosch
19     Corporation.  I just want to confirm.
20     There has been a lot of discussion about
21     the particular paragraph 18.  I just
22     want to make sure that all of us are
23     clear.  And I understood what the Court
24     said and just wanted to verify that I
25     understood correctly.  My understanding
```

122

1        DELPHI CORPORATION

2        of this is that this procedure in

3        paragraph 18 -- it is a procedure.  And

4        that a de-plaint setoff claimant could

5        come in to this Court, file a motion for

6        relief from stay and at that point the

7        debtor and any other party of interest

8        could say, not that your order does with

9        this order, to go through this

10       arbitration and mediation procedure.

11       But rather that the bed would be

12       expedient that the Court should abstain

13       on the basis of any number of factors,

14       is that correct, Your Honor?

15            THE COURT:  Yes.  Obviously I'm

16       giving people warning, if you get into a

17       procedure and you're coming to me

18       because you don't like how it's going,

19       you're going to know very quickly that

20       I'm going to send you back to the

21       procedure.  So, I'm not giving people an

22       option to pursue mediation arbitration

23       and change their mind in the middle of

24       it.  I guess you can do it, but it will

25       not be very pleasant hitter.

123

```
1              DELPHI CORPORATION
2                   MR. TOERING:  That wouldn't be
3         our intent, Your Honor.
4                   THE COURT:  I'm sure it
5         wouldn't.
6                   MR. TOERING:  Your report is
7         just to verify having the post-petition,
8         my understanding is that post-petition
9         setoff it does affect going forward
10        shipments because Bosch is both a
11        supplier and a customer of Delphi.
12                  THE COURT:  Right.
13                  MR. TOERING:  My understanding
14        is that as to post-petition setoff
15        rights, that those would prime the DIP
16        lenders and anybody else and that was, I
17        thought, an understanding that had been
18        reached.  Because that does affect
19        whether or not we're willing to extend
20        the credit to the debtor, and so forth,
21        so I'd like some clarification on that.
22                  MR. BUTLER:  I don't want to
23        give you the answer what's prime or
24        what's not prime.  Their permitted to
25        post-petition setoff rights can be
```

124

1          DELPHI CORPORATION

2     exercised.  I'll leave it at that.

3          MR. TOERING:  Well, Your Honor,

4     just to follow that up, I guess that

5     leaves it somewhat open.  I just don't

6     want a situation where a lender is

7     coming in and saying if worst case

8     scenario, the case starts crumbling and

9     then lender comes in and says your

10    setoff rights are subservient to our

11    rights.  And that's what I'm trying to

12    give it at this point.  And, we could

13    work this out; I guess this is something

14    we can manage in terms of the credit

15    issue, but it is something that if we

16    can clarify today, I think it would be

17    helpful.

18         MR. BUTLER:  I think it's

19    clarified on page 43 of the order which

20    says that nothing contained here shall

21    limit the discretion of the debtors to

22    pay warranty or private call claims in

23    accordance to those of that court, limit

24    the right of any party in interest to

25    exercise their post-petition setoff or

125

1           DELPHI CORPORATION

2       recoupment against a post-petition

3       payable and the write goes on to the

4       names, I mean I think it's described

5       right in the order.  Post against post.

6               MR. TOERING:  Describe it as a

7       top priority.  That's my point, Your

8       Honor.

9               THE COURT:  Or everything is

10      what it is.  They included line 12 here

11      of the ACC.

12              MR. BUTLER:  Is there anyone

13      else who wants Vesey Corporate for the

14      evidentiary record?  Your Honor,

15      recognizing that when a debtor asks a

16      bankruptcy court to consider section

17      364(d), the Bankruptcy Code would affirm

18      the obligation to place evidence in the

19      record irrespective of the existence of

20      any objection.  I'd like, with the

21      Court's permission, to first move the

22      admission of Debtors' Exhibits 1-29.

23              THE COURT:  All right, that's

24      from that binder you gave me in which 1-

25      5 are the final financing documents, 6-

126

1              DELPHI CORPORATION

2         12 are alternative financing proposals

3         by other groups to the debtors, and 13-

4         16 are evaluation materials; 17-22 are

5         the pre-petition financing documents,

6         22-27 are various Security and Exchange

7         Commission filings and the last two are

8         already in the record.  Those were

9         attached, as they were summaries of the

10        objections.

11              MR. BUTLER:  Yes, Your Honor.

12              THE COURT:  Does anyone have

13        any objections to those being admitted?

14        All right.  They're admitted.

15              MR. BUTLER:  Your Honor

16        indicated that it'd be acceptable for

17        the debtors to present pre-proffers.

18              THE COURT:  Yes.  These people

19        are here.

20              MR. BUTLER:  Your Honor,

21        they're all here.  I'll ask them to

22        stand when I introduce them.  The first

23        witness I would call would be David

24        Resnick.  Mr. Resnick's standing in the

25        courtroom and is the debtors' investment

127

1              DELPHI CORPORATION

2         banker.  The second witness, Your Honor,

3         we would call is Mr. Scott King, Mr.

4         King, from FTI.  And the third is the

5         debtors' chief reconstruction officer,

6         Mr. John Sheehan.

7                   THE COURT:  Okay.

8                   MR. BUTLER:  Your Honor, in

9         support of motion with debtors that are

10        off the testimony of David Resnick, he's

11        the managing director of Rothschild Inc.

12        Mr. Resnick is present, called, would

13        testify as follows.  First, he would

14        testify as to his background, his

15        familiarity with the debtors'

16        operations.  He would testify that the

17        debtors' board of directors authorized

18        Rothschild Inc., its financial advisor,

19        investment banker, to seek post-petition

20        DIP financing from its pre-petition

21        secured lenders and other third-party

22        lending institutions.  Mr. Resnick would

23        testify that he and other persons,

24        including the debtors' financial

25        advisors, FTI consulting Inc., determine

128

1                DELPHI CORPORATION

2         that a DIP credit agreement, general in

3         the terms of that proposed, was critical

4         to the debtors' ability to operate in

5         Chapter 11 and for the debtors'

6         successful reorganization.  Mr. Resnick

7         would testify that, in his view, the DIP

8         credit agreement is necessary for the

9         debtors to operate the business.  He

10        would testify that he participated in

11        the negotiations of the terms and

12        conditions of the agreement and that

13        they were negotiated at arm's length and

14        in good faith.  Mr. Resnick would

15        testify that with the credit provided in

16        the DIP facility, it is the debtors, and

17        his view that the debtors would be able

18        to maintain or should be able to

19        maintain adequate cash balances

20        customary necessary for companies of

21        this size and in this industry to

22        operate its businesses, in order to

23        preserve the ongoing value to businesses

24        for the benefits of all parties and

25        interest.  Mr. Resnick would also

129

1          DELPHI CORPORATION

2          testify that he, in participating with

3          the debtors' management team, ran a

4          process to evaluate potential proposals

5          and met with four major mind-setter

6          institutions, all of whom produced

7          proposals and the finding that would

8          testify that the file proposals and you

9          would identify those proposals as the

10         proposals set forth in Debtors' 1 and

11         the alternative financing proposal is

12         not accepted by the debtors as Debtor's

13         6-12.  Mr. Resnick would testify that

14         when the debtors approached these

15         financial institutions they made

16         presentations to the institutions and

17         asked them to provide both priming

18         facilities and non-priming facilities --

19         take-out facilities in as significant an

20         amount of money as the institutions

21         could provide or would provide, but in

22         the case of a take-out refinancing not

23         less than 4 billion.  He would testify

24         that in evaluating these proposals that

25         the debtors and their financial advisors

130

1                    DELPHI CORPORATION

2         analyzed carefully the structures;

3         discussed the structures with the

4         different institutions and ultimately

5         reached a determination that there were

6         essentially three gating elements that,

7         in the view of the debtors and in the

8         view of Mr. Resnick as a debtors

9         investment banker, where the tantamount

10        considerations are in determining what

11        was an acceptable facility that could,

12        in fact, meet the requirements of the

13        debtors' financing needs.  And those,

14        Mr. Resnick would testify that those

15        three factors included execution risk

16        issues, issues relating to size and

17        liquidity of the facility and issues

18        relating to the economics of the

19        facility proposed.  Mr. Resnick would

20        testify as to execution risks that in

21        his view this is, if not the largest,

22        among largest total packages, financing

23        packages sought in the history of the

24        federal system.  It's four and a half

25        billion dollars in total.  And the

131

1          DELPHI CORPORATION

2          debtors recognized that in trying to

3          take out financing of four billion,

4          which was the maximum the debtors had

5          obtained among the proposals, Mr.

6          Resnick would testify that as to the

7          four billion dollar facilities that the

8          debtors took into consideration, the

9          complexities of actually executing that

10         take-out facility which would have been

11         the largest in Mr. Resnick's, at least,

12         experience ever would be considered in

13         the federal bankruptcy system.  Mr.

14         Resnick would also testify that he and

15         others at Rothschild, together with

16         members of management, consulted with

17         the senior managers and advisors at the

18         various -- at both JP Morgan and at

19         Citibank in particular, and were

20         advised, at the end of the day, that

21         those institutions believed that the

22         execution risk were significantly lower

23         in the priming facility than it was in

24         the take-out facility.  In addition, and

25         that's reflected in the rates and in the

132

1          DELPHI CORPORATION

2          economic terms and in other provisions

3          that are in the record at this point,

4          Mr. Resnick would also testify that in

5          the final structure that was agreed, the

6          priming facility generated an additional

7          half a billion dollars worth of

8          liquidity for the company because the

9          other proposals, the non-prime

10         proposals; the take-out proposals

11         required a pay-down of the pre-petition

12         loans in the amount of approximately 500

13         million dollars so that the net

14         available would have been, in a take-out

15         would have been four billion.  And, in

16         this particular structure where there

17         was a priming of the two and a half

18         billion dollar pre-petition that in fact

19         there would be an additional half a

20         billion or more of additional liquidity

21         available to the company.  Mr. Resnick

22         would testify that in terms of

23         economics, that Rothschild benchmarked

24         economics in this facility against those

25         in its data base, that Rothschild is a

133

1          DELPHI CORPORATION

2          part of, during their course of

3          business, maintains a data base of

4          similar DIP financings; that Mr. Resnick

5          had, on behalf of Rothschild, has

6          participated in many refinancings and

7          DIP facilities, and that when they

8          reviewed the competitive data base that

9          the economics in this data base were

10         actually -- were benchmarked extremely

11         favorably to that which was in the

12         marketplace and in appropriate prior

13         DIPs that would be comparative.  Your

14         Honor, Mr. Resnick would also testify

15         that he has reviewed the terms and

16         conditions of this DIP and these are the

17         DIPs -- the terms are fair and

18         reasonable.  And as I indicated, would

19         testify that his opinion is based in

20         part on the database of selected

21         historical DIP facilities that is

22         maintained by Rothschild.  In terms of

23         the debtors' needs, Mr. Resnick would

24         also point to the debtors' DIP

25         facilities of projections which are

134

1              DELPHI CORPORATION

2          included in the record at Debtors' 13,

3          and would point to the fact that the

4          four and half billion dollar facility,

5          based on the forward projections, would

6          suggest that at the end of the period

7          about a half a billion dollars of

8          liquidity would be available based on

9          the projections there.  Mr. Resnick

10         would testify that, in his experience, a

11         company of this size and complexity, one

12         of the Fortune 50 companies in the

13         country, would in fact require a very

14         substantial excess availability in order

15         to operate its business and maintain the

16         confidence of its suppliers and

17         customers.  Finally, Mr. Resnick, would

18         testify about the structure of Delphi,

19         and the structure of this restructuring

20         and which involve a bilateral message

21         where the company's U.S. entities are

22         involved in this Chapter 11 case, but

23         its global businesses are operating

24         outside of Chapter 11, even though many

25         of the products that it maintains are

135

1              DELPHI CORPORATION

2        operated on a horizontal, as opposed to

3        vertical, sort of structure, globally.

4        And, Mr. Resnick would testify, that in

5        dealing with a customer located outside

6        the United States, dealing with

7        suppliers outside the United States,

8        dealing with suppliers and customers

9        that have potential setoff claims and

10       recoupment claims, and other actions

11       that could be taken in connection with

12       the company, that it was extremely

13       important, in his judgment, to stabilize

14       the business that the company have the

15       DIP facility that is put in place.  And

16       that in his professional opinion, there

17       was no other facility made available to

18       the debtors that met the debtors' needs

19       and requirements.  Your Honor, that

20       would be sum and substance of Mr.

21       Resnick's testimony.

22              THE COURT:  Okay.  Does anyone

23       wish to cross-examine Mr. Resnick or his

24       testimony?  All right, you can move over

25       to the next witness, then.

136

```
1          DELPHI CORPORATION

2              MR. BUTLER:  Your Honor, the

3      next witness would be Mr. Scott King.

4      Mr. King had called to testify.  He

5      would testify that he is employed by FTI

6      Consultant Inc. as a senior managing

7      director, that he needs FTI's method of

8      restructuring practice and that prior to

9      August of 2002, he was a partner for

10     five years at Price Waterhouse Coopers'

11     business recovery practice and held

12     various positions prior to that date.

13     Mr. King would testify that he has spent

14     more than 20 years of experience in

15     developing, implementing improvement

16     strategies for companies experiencing

17     financial distress.  And that his role

18     at FTI is, in this assignment, is to

19     provide, among other things, on-site

20     assistance at the company in connection

21     with its Chapter 11 case, and dealing

22     with essential suppliers, and working

23     with the creditors' committee, and

24     working with the company in connection

25     with its relationships with its lenders.
```

137

1                  DELPHI CORPORATION

2        It's the formulation of its former

3        borrowing projections, the formulation

4        of its business plan and other matters.

5        Mr. King would testify that he prepared

6        the document that has been admitted into

7        evidence as Debtors' 14, that that

8        document was prepared by him, based on

9        his examination of the debtors' books

10       and records, and based on his

11       examination of various reports that were

12       provided to him, including the reports

13       that had been admitted into evidence in

14       the debtors' exhibits relating to

15       various evaluations of the debtors'

16       collateral.  Mr. King would testify that

17       in his opinion, based on a build up, on

18       a going concerned basis, that those as

19       much as 9.6 billion dollars worth of

20       collateral available to support the

21       adequate protection packages here, which

22       would consist of a two and half billion

23       dollar pre-petition lender claim, a two

24       billion dollar DIP lender claim, and as

25       much a five billion dollar equity

138

1        DELPHI CORPORATION

2        cushion that would available based on

3        the book values of PP&E, Property Plan

4        Equipment.  Assessing the evaluation of

5        the foreign stock, assessing the

6        evaluation of the inventory, and

7        assessing the evaluation of receivables

8        and cash and the performance of those

9        assets in the debtors' ordinary course

10       of business on an historical basis, Mr.

11       King would also acknowledge that he

12       examined and relied on, in preparing his

13       testimony, relied on the Debtors' 16,

14       which is an appraisal prepared by Hillco

15       Appraisment Services as with respect to

16       Delphi PP&E which attributed an 850

17       million dollar allocation value to PP&E

18       as opposed to the 2.9 billion dollar

19       book value that the debtors currently

20       assigned to the PP&E.  And if you

21       assigned the liquidation by the PP&E,

22       which Mr. King would suggest, is of all

23       the various collateral items the one

24       that he would acknowledge would have

25       perhaps more speculative amounts in

139

1          DELPHI CORPORATION

2          terms of whether liquidation or going to

3          turn out to be involved, that if you

4          assign liquidation value to that

5          particular bucket of collateral that the

6          total value of the collateral would be

7          somewhere in the 7.6 billion dollar

8          range, still providing an ample cushion

9          to the 4.5 billion dollars worth of pre-

10         petition and post-petition proposed

11         claims.  Your Honor, Mr. King would also

12         testify, similar to Mr. Resnick's

13         testimony, with respect to the key items

14         of execution risk, size of the facility

15         and economics.  How Mr. King qualify his

16         testimony with a much stronger emphasis

17         on size of the facility.  It's Mr.

18         King's view, and in fact he would

19         testify that he was very active during

20         the consideration of these proposals in

21         pushing the company to get as large a

22         facility as the company could procure,

23         because Mr. King's professional opinion

24         that the company needed as much excess

25         liquidity as possible, given the

140

| 1 | DELPHI CORPORATION |

2    uncertainties of the automotive sector,

3    the transformation challenges of the

4    company, in terms of the transformation

5    plan and strategies that it has

6    announced publicly.  And the

7    contingencies dealing with the sort of

8    bi-motor arrangement trying to make sure

9    that all the customers and suppliers

10   understand the company had all of the

11   liquidity that it reasonably thought

12   necessary to address its issues.  So,

13   Mr. King would testify that his

14   principal focus was how much money could

15   the company get, and he viewed that as

16   the most important factor involved here.

17   He will also testify that he

18   participated in the examination of all

19   the proposals and participated, along

20   with the members of FTI, in aspects of

21   the negotiations of the transaction.

22   And would testify that, in his

23   professional opinion, there was no other

24   financing available to the company that

25   would meet the company's needs and

141

```
 1          DELPHI CORPORATION
 2     requirements.  And that would be the sum
 3     and substance, Your Honor, of Mr. King's
 4     testimony.
 5          THE COURT:  Okay.  Does anyone
 6     want to cross-examine Mr. King or his
 7     testimony?  All right.  You can move on
 8     to the last witness.
 9          MR. BUTLER:  Your Honor, the
10     last witness who would testify would be
11     Mr. John Sheehan.  He would testify that
12     he is the vice president and chief
13     restructuring officer at Delphi.  And he
14     would testify that from the period of
15     March 4th, 2005 through October 8th, he
16     also acted as the interim chief
17     financial officer, chief accounting
18     officer and comptroller of Delphi
19     Corporation.  Having joined Delphi in
20     July of 2002 as chief accounting officer
21     and comptroller, Mr. Sheehan would
22     describe his role at Delphi as being
23     involved and being tasked with the
24     principal responsibility for all aspects
25     of the company's restructuring.  And as
```

142

1        DELPHI CORPORATION

2        part of those duties, he would say he's

3        responsible for reviewing and analyzing

4        the company's assets and operating

5        financial strategies, as well as the

6        company's business plan and financial

7        projections, and being responsible for

8        the review and analysis and negotiation

9        of proposals to the company in

10       connection with third-party

11       transactions, including proposals for

12       DIP financing.  Mr. Sheehan would

13       testify that he is familiar with the

14       company's cash needs and that he

15       developed that understanding during his

16       period of responsibility at the company

17       as chief accounting officer and

18       comptroller and that he is very familiar

19       with requirements of how the company

20       operates globally; its need for

21       financing the operations of the

22       enterprise, the need for dealing with

23       essential suppliers and customers and

24       operating the debtors' business.  He

25       would testify that he was involved in

143

1             DELPHI CORPORATION

2        the process which resulted in the

3        procurement of the DIP financing that's

4        before the Court, as evidenced in

5        Debtors' Exhibits 1-2 and 2(a).  He

6        would describe that process began early

7        this year on a contingency basis as the

8        board considered various alternatives

9        involving a consensual structuring of

10       the company's operations in the United

11       States.  And, as part of that analysis,

12       the company retained financial advisors

13       to assist it and its board of directors

14       in evaluating its options.  Mr. Sheehan

15       would testify that Delphi first retained

16       Rothschild Inc. and Rollerton Associates

17       as the company's financial advisors and

18       investment bankers.  And subsequently

19       retained legal counsel and then also

20       retained FTI Consulting.  He would

21       testify that Rothschild was engaged, in

22       part, to assist the company in

23       soliciting and evaluating various

24       financing proposals, both originally

25       outside of Chapter 11 and ultimately

144

1          DELPHI CORPORATION

2          inside of Chapter 11 and that they were

3          tasked with helping him and others at

4          the company negotiate the best financing

5          transaction that would be available to

6          the company to meet its needs and would

7          also give the company the maximum amount

8          of flexibility when considering various

9          alternatives.  Mr. Sheehan would testify

10         that in August of this year that he,

11         after consultation with other members of

12         management and a presentation at the

13         board of directors of the company,

14         directed Rothschild to begin to reach

15         out and begin a process for considering

16         DIP financing proposals on a contingency

17         basis.  That occurred at approximately

18         the same time that the debtors issued

19         public statements about a path A and

20         path B, sort of a QL approach to

21         evaluating and dealing with their legacy

22         liabilities and portfolio restructuring

23         requirements here in the United States.

24         Those public announcements were made in

25         early August, and Mr. Sheehan would

145

1          DELPHI CORPORATION

2          testify that Rothschild was asked to

3          begin this contingency process shortly

4          thereafter.  Mr. Sheehan would testify

5          that Rothschild, at the direction of the

6          company, approached JP Morgan Chase and

7          a number of other global financial

8          institutions, including Citibank,

9          Dorchester Bank, and GE Capital with

10         respect to debtor-in-possession

11         financing. He would testify that process

12         resulted in a competitive process that

13         concluded in the proposals that had been

14         admitted into evidence as Debtors' 1 and

15         Debtors' 6-12.  Mr. Sheehan would

16         testify that in negotiating with those

17         lenders, Mr. Sheehan was personally

18         involved in, along with Rothschild, in

19         describing the company's situation and

20         was familiar with the materials that

21         were provided in the proposals that were

22         obtained from each of the lenders and

23         the various structures that were

24         involved.  Mr. Sheehan would also

25         testify that he was similarly concerned

146

DELPHI CORPORATION

1
2      on behalf of the company about the three
3      sort of principal criteria for
4      evaluating these proposals.  Again,
5      those criteria being the cost of the
6      facility, the structure and size of the
7      facility and its execution risk.  Mr.
8      Sheehan would testify that his weighing
9      of those issues was, generally, similar
10     to that of these advisors, but that
11     initially he spent some time and focus
12     on the cost of the facility, feeling a
13     need to ensure that the company was
14     appropriately committing its financial
15     resources.  And that he was extremely
16     concerned based on his involvement with
17     the essential suppliers and customers of
18     the business on making sure that the
19     proposal could be executed successfully;
20     that those were among his principal
21     focuses.  Mr. Sheehan would testify that
22     he participated in the negotiations as a
23     principal from time to time throughout
24     the process; that he ultimately
25     recommended to the other members of

147

1            DELPHI CORPORATION

2        management and the board of directors,

3        the commitment letter that is set forth

4        at Debtors' 1, that in Mr. Sheehan's

5        judgment that proposal was the only

6        financing available to the debtors that

7        could meet the debtors' requirements

8        going forward.  Mr. Sheehan believes

9        that that proposal was negotiated in

10       good faith, in an arm's-length basis

11       between the company and JP Morgan Chase

12       and eventually Citibank.  Your Honor,

13       Mr. Sheehan would also testify that he's

14       familiar with the general terms and

15       conditions of the financing transaction

16       and that, in his judgment, those terms

17       are, and in the business judgment of the

18       debtors, fair and reasonable and

19       appropriate under the circumstances.

20       That in his view, this financing

21       transaction represents the culmination

22       of what Mr. Sheehan viewed to be an

23       exhaustive solicitation process for

24       financing conducted by the company and

25       it was designed to meet the company's

148

1              DELPHI CORPORATION

2         needs in these unusual circumstances.

3         Mr. Sheehan would also testify that he

4         has reviewed the DIP projections that

5         form the basis of the DIP financing case

6         that was presented to the debtors and

7         which is represented in part in Debtors'

8         13.  And that he believes the size of

9         the facility, the 4.5 billion overall,

10        is required, again, because of the

11        debtors' contemplated needs as they move

12        through the process.  Your Honor, that

13        would be the sum and substance of Mr.

14        Sheehan's testimony.

15                   THE COURT:  All right.  Does

16        anyone wish to cross-examine Mr.

17        Sheehan?  All right, here and now, I

18        will accept his testimony.

19                   MR. BUTLER:  Your Honor, that

20        would represent the evidentiary record

21        that the debtors have.  The testimony of

22        those three witnesses and the 29

23        exhibits admitted into evidence and we

24        would rest on that record.

25                   THE COURT:  Okay.  I'm assuming

149

1        DELPHI CORPORATION

2        in light of the first part of the

3        hearing that no one else has any

4        evidence they want to submit.  Okay,

5        I'll close the evidentiary portion of

6        that hearing then.

7             MR. BUTLER:  Your Honor, and

8        given the presentation I made earlier, I

9        think at this point we will simply rest

10       on the papers.  There's a proposed order

11       we'd like Your Honor to consider.  And

12       we would intend to reflect the changes

13       that we have discussed on the record

14       that were indicated to actually be

15       changes to the order.  While we know

16       others will want to look at it, we have

17       committed to the creditors' committee

18       that they and we will take our time this

19       evening to get it right.  We have

20       language, much of which was read into

21       the record.  There's not much actually

22       left to be done, but we want to make

23       sure that we have a chance to flyspeck

24       the order and we'll get it over to the

25       committee and the debtors will get the

150

1      DELPHI CORPORATION

2      order over to you in the morning.  We

3      would like, Your Honor, if you're

4      inclined to approve the financing, to

5      approve it on the record today so we can

6      be in a position to announce, publicly,

7      it's been approved.  And also to make

8      clear that to the extent somehow there

9      is some disagreement in what the form of

10     the order says, all that would be

11     brought back to Your Honor tomorrow is a

12     settlement of the order rather than a

13     revisiting of the merits of this case.

14          THE COURT:  Right.  All right.

15     I do approve the financing and adequate

16     protection provisions set forth in the

17     black-lined order as included on the

18     record at today's hearing.  And the

19     record will reflect that the parties are

20     moving forward to complete the order and

21     revise on that.  All we're looking for

22     is an order that embodies the agreed

23     order as set forth on the record.  It's

24     clear to me that this is, at this point,

25     a consensual DIP financing and adequate

1          DELPHI CORPORATION

2     protection order which, I think, may I

3     extend praise to all of the

4     professionals involved in resolving the

5     issues which were not, in all respects,

6     easy to resolve.  I also applaud the

7     fact that the various parties of

8     interest were each prepared to sacrifice

9     in their positions to get to that point.

10    Based on the proper testimony, I find

11    that the DIP agreement that was

12    negotiated in all its length, I can

13    permit proper and in good faith and/or

14    mistreatment under Section 354(e) of the

15    Bankruptcy Code.  In loss of further

16    find that the debtors have satisfied

17    their burden under section 364(c) and

18    364(d) from the priority claims, DIP

19    priority claims in any and all doubt.

20    You would hold up in my original

21    reactions to this version was to

22    question whether in fact the debtors

23    needed such a large facility here.  I

24    incorporate that they will not need to

25    draw down on that significantly, but,

152

```
 1              DELPHI CORPORATION
 2        you know, I'm convinced that the
 3        facility adequately satisfies the
 4        debtors' needs and provides them
 5        sufficiently, perhaps even abundantly,
 6        availability to conduct their bankruptcy
 7        case and legal in podium too.  You know,
 8        conduct their businesses in due course.
 9        So, I look forward to getting your
10        letter and, you know, reviewing in
11        letter of record.
12              MR. BUTLER:  Your Honor, thank
13        you very much and thank you to you and
14        everyone in chambers for the assistance
15        over the last few days as we moved
16        forward to this hearing.  Your Honor, I
17        would plant that the matter 18 on the
18        agenda which is the cash management
19        matter in light of the disposition of
20        this order and the agreement of the
21        committee, I'd ask Your Honor to approve
22        the cash management order as negotiated
23        with the Pension Benefit Guaranty
24        Corporation on a final basis.
25              THE COURT:  And the committee.
```

153

```
 1              DELPHI CORPORATION
 2              MR. BUTLER:  In case of
 3     submitting its objection as to that
 4     matter there's a --
 5              MR. ROSENBERG:  Well, I think
 6     the order has to be rewritten.
 7              MR. BUTLER:  Well, you know,
 8     we'll be happy to submit, and we'll
 9     submit the order tomorrow morning.
10              THE COURT:  Maybe will reflect
11     the same language with respect to the
12     intercompany loan treatment as to DIP
13     order.
14              MR. BUTLER:  Yes, Your Honor.
15              THE COURT:  Okay, that's fine.
16     And I will approve that.
17              MR. ROSENBERG:  Yes, I'd like
18     to add, Your Honor, the review language
19     --
20              THE COURT:  Oh, yes.  That goes
21     without saying.
22              MR. PASCOE:  This is Timothy
23     Pascoe for Ford Motor Company.  What Mr.
24     Butler says submit a copy of the revised
25     order for the objecting party as well.
```

154

1        DELPHI CORPORATION

2              MR. BUTLER:  Out of those 50 or

3        60 objecting parties, I mean -- Your

4        Honor, we want to be able to use the

5        committee to submit this in accordance

6        with the record.

7              THE COURT:  I think, again, I

8        don't want this turn into a negotiating

9        section.  It really is to reflect what I

10       set forth on the record.  But I think --

11       I think you have to e-mail it to the

12       objectants if you have the e-mail

13       address, if you don't I would instruct

14       the objectants to provide -- who should

15       I send the e-mail address to.

16             MR. BUTLER:  Why don't we just

17       make it easier now, I'll get it to the

18       right people, send it to

19       jbutler@skadden.com and I'll make sure

20       it gets to where it needs to go.

21             THE COURT:  All right.  But,

22       again, I intend to review it and write

23       up today's record and I think it's

24       important to get it in there tomorrow --

25       by the end of the day tomorrow.  So

155

```
 1            DELPHI CORPORATION

 2      rather than negotiate provisions, if

 3      there's something that you think the

 4      debtors have left out, you can send me a

 5      short letter to that effect.  But I

 6      don't want to get people hung up on

 7      negotiating language yet.

 8            MR. PASCOE:  I understand,

 9      thank you.

10            THE COURT:  Okay.  One brief

11      thing.  The way the language, in light

12      of the fact that this debtor is training

13      on, I just urge the agent to somehow

14      keep a record of what language and

15      elections people have made so that's

16      it's dated and sometimes in pieces.  We

17      don't have confusion at the end of the

18      case.

19            MR. ROSENBER:  We will, Your

20      Honor.

21

22

23

24            (Continued on next page.)

25
```

156

1          DELPHI CORPORATION

2              MR. BUTLER:  Your Honor, thank

3      you very much; that concludes the agenda

4      for today.

5              THE COURT:  Thank you.

6              (Whereupon these proceedings

7      were concluded.)

8              (Time noted: 2:27)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2      I, Esther Accardi, hereby certify that

3  the foregoing is a true and correct

4  transcription, to the best of my ability, of

5  the sound recorded proceedings submitted for

6  transcription in the matter of:

7  DELPHI CORPORATION.

8

9      I further certify that I am not employed

10  by nor related to any party to this action.

11

12      In witness whereof, I hereby sign this

13  date:

14  February 26, 2006

15

16  _____

17  Esther Accardi

18

19

20

21

22

23

24

25

**A**

**abbreviated** 42:18
**ability** 37:9 119:11
  128:4 157:4
**able** 26:4 27:22 34:4
  42:4 43:13 50:24
  63:12 75:4 86:4,22
  102:16 108:15
  128:17,18 154:4
**ABR** 52:12 53:19,20
  55:17,22 56:24
  59:15 63:6
**absent** 50:16
**absolutely** 57:12
  63:2 115:23
**abstain** 122:12
**abundantly** 152:5
**academic** 86:14
**ACC** 125:11
**Accardi** 6:23 157:2
  157:17
**accept** 60:19 148:18
**acceptable** 32:23
  79:8 94:5 99:24
  126:16 130:11
**accepted** 74:11
  129:12
**accepting** 114:14
**access** 58:2
**accommodate** 94:11
**accommodating**
  64:15,18
**accommodations**
  64:11
**accomplish** 20:4
  121:7
**account** 2:8,16
  67:12
**accounting** 141:17
  141:20 142:17
**accrue** 59:13
**accrued** 56:3
**accurately** 64:4
**acknowledge** 138:11
  138:24
**Acknowledging**

85:23
**acquire** 19:16
**act** 116:21
**acted** 141:16
**action** 53:8 69:22
  70:25 85:14
  117:13 157:10
**actions** 17:11 18:4
  52:6 72:11 73:19
  85:13 135:10
**active** 139:19
**actual** 50:13
**ad** 49:8 60:3 63:25
**add** 58:20 63:17
  98:3 153:18
**added** 23:3 24:24
  30:3
**addition** 54:7 62:13
  131:24
**additional** 2:10,18
  21:21 25:6 41:11
  53:24 74:19 87:22
  103:11 132:6,19
  132:20
**address** 65:25 92:25
  93:3 94:10 112:19
  140:12 154:13,15
**addressed** 42:24
  45:3
**adequate** 3:15 4:13
  5:10 6:10 27:16
  42:25 49:17 55:25
  56:11 70:15 72:6
  97:4,10 101:18
  128:19 137:21
  150:15,25
**adequately** 87:24
  152:3
**adjourn** 13:23
**adjourned** 12:7 15:2
**adjust** 25:3
**administrative** 4:21
  5:20 32:14,16 44:8
  72:25 73:5 100:21
  101:9 103:13,22
**admission** 43:15

45:14 98:22
  125:22
**admitted** 126:13,14
  137:6,13 145:14
  148:23
**advance** 21:12 66:20
**advised** 14:2 18:18
  44:17 131:20
**advisor** 23:16 25:24
  25:25 35:22 85:17
  127:18
**advisors** 22:10
  23:14 127:25
  129:25 131:17
  143:12,17 146:10
**affect** 123:9,18
**affidavit** 24:6
**affirm** 125:17
**affirmation** 24:7
**affirmatively** 51:18
**afternoon** 73:10
  83:18 87:11
**agenda** 3:24 11:15
  11:17,20 13:21
  14:8 15:5,17 19:24
  21:2 26:20 30:17
  31:22 41:6 42:7,8
  152:18 156:3
**agent** 44:8,9 47:8
  50:5,12,15 51:19
  51:22 52:3,6,25
  53:3 55:2 56:13
  66:8 74:9,10 80:15
  82:9 83:22 92:11
  111:18,22 120:10
  155:13
**agents** 84:3
**agent's** 52:4,9,18
**agent(which** 59:4
**aggregate** 14:18
  25:7
**ago** 13:14 99:15
**agree** 23:21 36:11
  40:13 66:9 67:10
  78:16 84:19 86:19
  98:17 114:15

**agreed** 16:3 22:8
  23:12 25:13 27:25
  28:3 31:8,8 51:18
  54:23,25 56:10
  61:22 68:5 70:23
  71:2,9 78:20 87:15
  104:18 132:5
  150:22
**agreement** 3:6 6:19
  15:10 16:15,16
  17:7,8,10,12 20:5
  20:6 28:11 30:20
  30:23,25 32:21
  46:2,5,6 47:7 53:9
  54:9,20 55:21 56:9
  58:24 59:12 60:6
  61:2,3,9 62:21
  64:3,5,23 65:12
  66:6 68:15,23,25
  69:6 72:2,11,18
  76:24 83:14 95:10
  95:17 98:9,10
  103:24 104:9,23
  109:2 128:2,8,12
  151:11 152:20
**agreements** 16:9
  19:10 47:23 48:3,6
  52:19,20 66:2,3
  69:24 75:18 77:22
  95:3,7,22
**agrees** 61:17 63:10
  78:2 111:18
**ahead** 51:14 59:21
  86:16
**aircraft** 93:9,14,23
  94:3,20,24
**Alabama** 20:13
**Alan** 63:24
**ALLAN** 8:19
**alleged** 112:18
**alleging** 49:13
**allocation** 138:17
**Allow** 2:12
**allowable** 88:13,21
  89:15,22 90:14
  91:5

**allowed** 82:15
  115:24
**allowing** 41:23
**allows** 21:7 45:10
**altered** 114:6
**Altering** 2:7,15
**alternate** 107:21
**alternative** 26:25
  27:12 106:21
  126:2 129:11
**alternatives** 143:8
  144:9
**amendment** 46:4
**amendments** 48:3
**America** 43:4 93:8
  94:5 100:15
**amount** 60:11 67:16
  68:17 129:20
  132:12 144:7
**amounts** 55:13
  138:25
**ample** 139:8
**analysis** 37:9 142:8
  143:11
**analytical** 35:19
**analyzed** 22:14
  130:2
**analyzing** 142:3
**ancillary** 94:18 97:7
**and/or** 151:13
**announce** 150:6
**announced** 140:6
**announcements**
  144:24
**annualized** 53:23
**answer** 43:13 73:12
  101:5 123:23
**anticipation** 26:4
**anybody** 31:16
  99:25 100:2
  123:16
**Anytime** 51:10
**anyway** 30:7 35:20
  85:21
**apologize** 61:15
  118:23

**apparently** 64:25
**appear** 105:3
**appears** 20:21
  104:19
**APPELBAUM**
  10:11
**applaud** 151:6
**APPLEBAUM**
  108:19
**applicable** 55:21
  56:25 58:10,11,14
  59:15 63:6 88:9
**application** 14:20
  55:4 98:8
**applications** 13:8
**apply** 24:23 81:3
**appointed** 13:13
**appointment** 13:16
**appraisal** 138:14
**Appraisment**
  138:15
**appreciate** 39:15
  64:15
**approach** 14:21
  52:4 144:20
**approached** 50:14
  129:14 145:6
**approaches** 106:22
**appropriate** 12:19
  20:16 22:8 34:15
  35:10 62:6,7 75:7
  84:5 120:6 133:12
  147:19
**appropriately**
  146:14
**appropriateness**
  62:16
**approval** 23:2 44:4
  64:5 68:18 71:8
  76:2,12
**approve** 4:16 5:20
  17:2 19:21 20:23
  26:17 30:11 31:18
  45:22 47:22 84:21
  150:4,5,15 152:21
  153:16

**approved** 67:17
  74:12 77:15 150:7
**approximately**
  44:21 51:21,24
  132:12 144:17
**April** 30:24
**arbitration** 107:2
  118:15 119:2
  120:21 122:10,22
**argue** 34:11 56:2
  62:16 107:20
**argued** 114:6
**arguments** 100:19
**arises** 88:7
**arising** 104:22
**arm's** 22:24 23:8
  128:13
**arm's-length** 23:3
  147:10
**Arps** 7:4 11:7
**arranged** 44:11
**arrangement** 77:15
  77:25 140:8
**arrangements** 12:3
  50:25 87:19
**asked** 13:22 17:11
  28:3 50:20 77:2
  94:22 95:14 119:6
  129:17 145:2
**asking** 40:15 45:21
  47:22 94:20 99:4,6
  99:24 100:22
  105:11
**asks** 125:15
**aspects** 140:20
  141:24
**asserted** 82:8
**assessing** 138:4,5,7
**asset** 15:9 19:15
  21:18 22:7,17 25:5
  79:25
**assets** 21:3,10,15
  24:23 25:7 34:18
  138:9 142:4
**assign** 139:4
**assigned** 138:20,21

**assignment** 100:7
  136:18
**assist** 143:13,22
**assistance** 136:20
  152:14
**associated** 54:13
**Associates** 143:16
**Association** 17:9
**assorted** 20:7
**assume** 17:5,11 18:3
  57:9 85:15
**assuming** 148:25
**assurance** 2:10,18
  27:16
**assure** 34:20
**attach** 38:7
**attached** 46:23
  126:9
**attempted** 98:16
**attorney** 85:17
**attributed** 138:16
**August** 136:9
  144:10,25
**authority** 16:7 18:3
  19:25
**authorization** 16:10
**authorize** 2:20 3:8
  5:3,15 6:3,15
  35:15
**authorized** 127:17
**authorizing** 3:5,11
  3:14 4:10 5:6,8,16
  6:6,8,17 30:19
**automatic** 37:3
  115:13,20 116:16
**automotive** 140:2
**availability** 134:14
  152:6
**available** 43:17
  84:11 132:14,21
  134:8 135:17
  137:20 138:2
  140:24 144:5
  147:6
**Avenue** 7:14,21 8:10
  8:16 9:4,11,17

avoid 119:16
avoidance 72:10,20
  72:22 73:19,20
  84:10 85:13
award 118:25
aware 33:19 48:24
a.m 41:18

**B**

b 1:22 3:18 5:13
  6:13 48:18 59:19
  144:20
back 23:22 26:12
  27:10 41:14,20
  58:16,16 65:6
  68:16 75:23 76:12
  76:17,23 77:7,19
  89:7 116:20
  122:20 150:11
background 127:14
backing 34:18
baked 29:10
balance 52:21 55:17
  55:18
balances 35:9,12
  45:8 128:19
balls 97:14
bank 17:8 43:4 44:7
  50:7,8 52:8,17
  53:3 80:15 92:12
  93:8 94:5 100:15
  145:9
banker 127:2,19
  130:9
bankers 85:15,21
  143:18
Bankr 2:22 3:10,18
  4:10,18,23 5:5,13
  6:5,13,17
bankruptcy 1:2,25
  49:15 80:9 113:10
  113:11 114:14,18
  117:6 125:16,17
  131:13 151:15
  152:6
banks 26:10 38:8

85:11 90:2
bank's 76:14
Bartlett 9:10 80:14
Bartner 7:9 11:10
base 22:7 46:7 66:18
  67:6,13,15,21 76:9
  76:15 132:25
  133:3,8,9
based 16:25 19:19
  29:8 43:6 50:24
  52:19 92:23
  133:19 134:5,8
  137:8,10,17 138:2
  146:16 151:10
basic 31:6 73:14
basically 14:16
  19:11 28:17 48:20
basis 3:13 5:8 6:8
  19:7 28:5 30:11
  35:25 53:21,23
  54:12 55:7,10 63:7
  66:23 70:25
  101:21 122:13
  137:18 138:10
  143:7 144:17
  147:10 148:5
  152:24
basket 80:25 81:23
  84:20 93:8
bear 120:21
bed 122:11
bee 51:11
began 143:6
beginning 51:2 77:3
  78:12 89:23
behalf 80:14 103:7
  114:24 118:9
  121:18 133:5
  146:2
belief 24:9
believe 12:3 16:3
  18:16 41:25 42:2
  42:20 43:2,4,6
  45:6 49:4 51:2
  65:4 67:8 69:14
  74:6 79:11 86:25

87:5,6 92:9 94:3,6
  94:9 96:9,25 98:23
  100:13 112:17
  113:22 117:23
believed 131:21
believes 147:8 148:8
benchmarked
  132:23 133:10
beneficial 117:11
benefit 32:21 37:16
  37:17 39:12 61:23
  79:7 81:7 86:22
  152:23
benefits 128:24
best 62:25 88:6
  144:4 157:4
bet 101:6
beyond 23:5 93:25
  94:8
Bienenstock 9:20
  84:25 87:6,10,11
  90:12,17,20 91:3
  91:11,16,19,22
Bienenstock's
  105:21
bilateral 134:20
billion 44:6,15,21
  50:2 129:23
  130:25 131:3,7
  132:7,15,18,20
  134:4,7 137:19,22
  137:24,25 138:18
  139:7,9 148:9
binder 125:24
bit 62:10 86:21
bi-motor 140:8
Blackberries 51:10
  51:13 102:9,17
Blackberry 102:13
black-line 46:14,15
  57:22,23 118:22
  118:24
black-lined 28:9
  46:10 47:4,10
  150:17
blatant 113:20

Bloomfield 9:6
board 35:14 106:18
  127:17 143:8,13
  144:13 147:2
BODMAN 10:3
book 22:17 45:16,18
  138:3,19
books 22:17 137:9
borrower 32:7 36:7
  58:13 59:6,13
borrowers 40:2
borrowing 37:5 46:7
  66:18 67:6,13,15
  67:21 76:9,15
  137:3
borrowings 39:20
Bosch 121:18
  123:10
Bowling 1:18
break 103:10
brief 41:8 155:10
briefly 103:6
Brilliant 8:19 49:11
  56:23 61:12 63:22
  63:23,24 64:9,21
Brilliant's 54:22
  56:16 61:10 83:15
bring 77:7
brings 41:5
broker 21:5 24:7,16
broker's 24:6,19
brought 150:11
bucket 93:7 105:17
  139:5
buckets 69:17
build 137:17
bundling 72:3
burden 49:14 66:24
  151:17
business 5:18 17:18
  20:14,22 21:9,21
  31:13 37:17 59:14
  115:21,23 116:9
  120:15 128:9
  133:3 134:15
  135:14 136:11

137:4 138:10
142:6,24 146:18
147:17
**businesses** 95:9
128:22,23 134:23
152:8
**busy** 121:14
**Butler** 7:8 11:5,6,19
12:13,24 13:5 14:7
15:4,16,25 17:3
18:7,23 19:6,22
20:24 23:6,11
25:11,22 26:19
29:14 30:12,16
31:15,20 34:8
36:10 37:11,21,25
38:15,24 39:5,17
40:4,15 41:4,15,22
42:14,20 43:25
45:20 46:22 47:17
48:5,11 51:14,15
56:20 57:8,12,15
59:22 60:14,16
61:8,21 62:24
63:10,13,19,22
64:4 65:10 67:8,24
68:9,20 69:8 70:6
70:10,13 71:24
73:9,24 74:5 76:5
76:18 77:14,18,21
78:15 79:5,10,20
81:16 82:24 83:23
84:23 87:3,4,20
91:21 92:4 95:24
96:6,19,24 98:13
99:10,16,23 101:2
101:25 103:2
105:11 107:23
108:3,24 109:5,10
109:14 111:6,9
112:3,9,16,21
116:6 123:22
124:18 125:12
126:11,15,20
127:8 136:2 141:9
148:19 149:7

152:12 153:2,7,14
153:24 154:2,16
156:2
**Butler's** 19:20 99:5
**buzzing** 51:12

_____

**C**

**c** 3:18 5:13 6:13 7:2
11:2 24:11,13
48:19 59:24 81:15
**call** 33:8 45:7 54:17
55:10 98:9 124:22
126:23 127:3
**called** 16:12 20:2
55:3 127:12 136:4
**calls** 33:13
**candid** 106:7
**Cantor** 99:22
**cap** 60:6 110:9
**capacity** 87:16
**Capital** 145:9
**capped** 60:11
**card** 17:6,7,7,15,17
18:6,9
**cards** 18:11,12
**carefully** 113:18
130:2
**carved** 69:1
**carve-out** 67:5,11,20
68:4,11,15,24 69:5
103:15,20,25
**case** 1:4 4:20,22
12:17 14:19 23:25
29:16 30:4,23
34:23 35:8 38:5
45:3 50:11 55:17
56:8 60:19 64:14
67:4 77:3,6 86:11
97:25 102:23
106:5 113:22
118:11 124:7,8
129:22 134:22
136:21 148:5
150:13 152:7
153:2 155:18
**cases** 45:11 116:25

**cash** 3:14 4:12 5:9
6:9 31:23 33:19
34:18 35:4 42:10
66:11 78:22 81:6
94:19,24 95:15
97:9 98:22 99:7
128:19 138:8
142:14 152:18,22
**categories** 33:14
**cause** 22:23 69:15
69:20 85:4 99:13
**causes** 69:22 85:13
**caveats** 26:17
**CD** 102:14
**Center** 8:4 10:4
**certain** 2:3 4:20
12:21 21:3 43:5
62:20 88:2 89:7
93:15
**certainly** 42:2 71:21
82:16 90:8 99:21
100:5 107:4
**certify** 157:2,9
**challenge** 63:5
**challenges** 140:3
**chambers** 46:21
49:2 64:11 75:10
152:14
**Chamomile** 16:13
**chance** 117:22
149:23
**change** 14:14 29:24
57:15,19 66:17
76:16,19 78:17
116:8 122:23
**changed** 29:2,3,4,8
49:21 53:15 67:11
77:12
**changes** 26:17 27:5
28:13 30:13 46:12
47:18,24 66:8
74:21 92:16
106:14 149:12,15
**changing** 48:7
**channel** 110:6
**chapter** 53:10 60:19

97:25 128:5
134:22,24 136:21
143:25 144:2
**characterization**
81:18
**characterize** 74:17
**charge** 63:9 85:10
85:15
**charged** 62:17
**Charley** 97:2
**charter** 95:2,6,10,16
98:9
**Chase** 44:7 80:15
145:6 147:11
**check** 119:24
**chief** 127:5 141:12
141:16,17,20
142:17
**circuit** 24:18 29:17
**circumstances** 29:2
29:4,9 49:21 62:6
147:19 148:2
**Citibank** 131:19
145:8 147:12
**CitiCorp** 44:8
**CitiGroup** 44:12
**claim** 18:17 32:14
32:19,25 55:7,9,11
84:8,12 89:15,22
90:14,16 97:24
101:4,9 103:14,22
104:5,7 113:10
116:22,23,24
117:3 137:23,24
**claimant** 107:17
119:3 122:4
**claimants** 33:15,17
43:3 81:9 92:21
102:4 105:12,18
108:11 112:18,18
**claimed** 54:11 62:17
82:5
**claiming** 80:3
**claims** 2:23 15:5,6
54:8,13,18 55:15
55:24 56:5,6,7

59:7,9 78:21 80:7
80:23 85:11 88:21
89:7 90:10 91:5,9
97:21,22 98:2,25
99:7,9 116:11,22
124:22 135:9,10
139:11 151:18,19
**clarification** 77:22
83:24 89:8 105:21
107:5 123:21
**clarifications**
106:16
**clarified** 116:6
124:19
**clarify** 88:7 107:4
109:18 112:13
124:16
**clear** 21:4 24:16
78:5 93:12 95:17
108:4,13 109:11
109:13 117:16,18
121:23 150:8,24
**clearly** 31:12 86:3
**Cleary** 15:11
**clerk** 65:4
**client** 40:3 98:24
117:8
**clients** 54:22 61:10
83:16 98:15 105:7
**close** 149:5
**closely** 23:17,19
**code** 27:6 49:15 72:9
80:9 113:10,12
114:15,18 125:17
151:15
**collateral** 3:14 4:12
5:9 6:9 70:20 81:6
85:19 87:25 89:4
94:19 95:16 97:9
98:9,22 137:16,20
138:23 139:5,6
**collaterals** 94:24
**colleagues** 49:12
**COLT** 8:9
**come** 13:2 21:25
22:5 23:22 24:12

26:12 27:10 28:8
29:23 34:2 41:14
65:6 70:9 75:23
76:12,17,23 77:19
107:2,10,17,18
108:14 117:22
122:5
**comes** 35:3 63:11
124:9
**comfortable** 22:13
23:8 25:2
**coming** 27:17 87:13
107:7 116:20
122:17 124:7
**commence** 86:3
**commenced** 85:10
**comment** 85:6 87:23
**comments** 19:20
24:3 26:7 46:17
**commission** 24:8
126:7
**commissions** 21:5
24:10
**commit** 18:18
**commitment** 45:25
147:3
**committed** 44:6
149:17
**committee** 11:24
12:12,22,25 13:11
13:19,20,22,22
16:17,18 17:23
18:19 20:19 21:14
22:9,11,12 23:4,19
26:9 33:5 35:11
36:16,22 38:19
39:15 40:9,11,20
49:8 60:4 61:24
62:14 63:25 64:6
65:16,18 66:21
68:7 70:22,24 72:5
72:15 74:10,14
75:11 76:13,23
78:2,20 79:2,8
83:4,25 85:8 86:20
90:3 92:13 106:8

106:24 107:14
117:15 120:10
136:23 149:17,25
152:21,25 154:5
**committee's** 25:24
35:22 66:6 69:21
85:16
**committing** 146:14
**communicated** 50:6
**communicates** 55:4
**comp** 12:2,16
**companies** 2:4 29:19
37:14 128:20
134:12 136:16
**company** 6:21 22:6
27:15 30:5 36:5
38:12,22 45:10
47:9 49:14,16
55:12 63:25 80:3
106:24 114:25
132:8,21 134:11
135:12,14 136:20
136:24 139:21,22
139:24 140:4,10
140:15,24 142:9
142:16,19 143:12
143:22 144:4,6,7
144:13 145:6
146:2,13 147:11
147:24 153:23
**company's** 45:4
134:21 140:25
141:25 142:4,6,14
143:10,17 145:19
147:25
**comparative** 133:13
**Compensation** 5:22
11:21
**compensatory** 56:7
**competitive** 133:8
145:12
**complaint** 71:10
**complete** 13:24
21:22 49:23
150:20
**completed** 14:3

**completing** 13:12
**complex** 45:6
**complexities** 131:9
**complexity** 134:11
**complied** 43:8
**compliment** 118:13
**compromise** 83:9
84:20
**comptroller** 141:18
141:21 142:18
**concede** 105:24
**concept** 24:25 29:10
73:15 84:17
**concern** 24:19 35:3
40:2
**concerned** 53:2
137:18 145:25
146:16
**concluded** 145:13
156:7
**concludes** 156:3
**conclusion** 91:23,24
**concur** 92:2
**concurred** 52:8,9,17
52:22
**condition** 110:21
**conditions** 128:12
133:16 147:15
**conduct** 152:6,8
**conducted** 147:24
**Conference** 4:22
**confess** 99:12
**confidence** 134:16
**confirm** 61:12 74:18
83:2 91:23 121:19
**confirmed** 60:20
79:13,14
**conflict** 57:5
**conflicts** 57:3
**conform** 75:18
**conforming** 87:23
**confuse** 73:13
**confusion** 90:4
155:17
**connection** 17:19
49:18,23 56:18,21

60:5 68:4 69:3
70:21 77:12
135:11 136:20,24
142:10
**connections** 31:3
**consensual** 15:14
36:18 143:9
150:25
**consensus** 53:2,17
53:18
**consent** 59:2,4 76:22
97:10,12
**consented** 52:4
**consenting** 52:5
**consents** 61:5
**consider** 12:21
35:14 125:16
149:11
**consideration** 78:19
131:8 139:20
**considerations**
130:10
**considered** 131:12
143:8
**considering** 68:18
144:8,15
**consist** 137:22
**consistent** 28:14
29:16 30:3 34:10
69:4
**constructive** 41:25
**consult** 12:22
111:22
**Consultant** 136:6
**consultation** 144:11
**consulted** 131:16
**consulting** 127:25
143:20
**contacts** 35:4
**contained** 124:20
**contemplate** 36:14
**contemplated** 52:6
148:11
**contemplates** 29:2
**contest** 95:25
**contested** 41:7

**contesting** 121:12
**context** 26:7 115:16
**contingencies** 140:7
**contingency** 143:7
144:16 145:3
**continue** 6:18,19
16:7,11 17:6 28:2
28:6 58:19 115:25
**continued** 15:12
155:24
**continuing** 35:15
68:14 97:6
**contract** 50:25 53:5
54:2 55:13 58:9
**contracts** 59:19
**contrary** 50:17
58:23
**control** 32:25
**convenants** 66:19
**conversations** 94:15
**convinced** 152:2
**Coopers** 136:10
**copy** 68:5 153:24
**core** 90:25
**corp** 115:10
**Corporate** 125:13
**Corporation** 1:8 2:1
3:1 4:1 5:1 6:1 7:1
8:1 9:1 10:1 11:1,4
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1,22
33:1 34:1 35:1
36:1 37:1 38:1
39:1,13 40:1 41:1
41:21 42:1 43:1
44:1 45:1 46:1
47:1,9 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1

62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1,7
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1,9,13,15
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1 96:1
97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1,12
111:1 112:1 113:1
114:1 115:1 116:1
117:1 118:1 119:1
120:1 121:1,19
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1
131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1,19
142:1 143:1 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1,24
153:1 154:1 155:1
156:1 157:7
**correct** 52:16 56:20
63:13 68:25 70:10
70:17 71:25 74:2
79:5,20 82:16
112:9 122:14
157:3
**correcting** 121:6
**correctly** 75:13
121:25
**cost** 120:22 146:5,12
**costs** 53:25 54:13
72:25 73:5 84:10

**council** 68:7
**councils** 57:3
**counsel** 11:10 25:13
31:7 35:23 60:3
64:25,25 67:9
94:15 96:7 143:19
**counter** 91:14
**country** 134:13
**couple** 24:3 28:13
49:20 111:11
121:8
**course** 5:18 14:9
17:18 21:8 77:6
84:22 87:18
110:10 116:14
117:6 118:2 133:2
138:9 152:8
**court** 1:2 11:3,18
12:10,23 13:4,15
14:6 15:3,15,24
16:11,22 18:5,22
19:2,17 20:20
21:25 22:5,22 23:2
23:7,22 24:2,14
25:10,16 26:8,12
26:16 27:17 28:12
29:15,21 30:15
31:10,11,16 33:21
34:6,13 35:2 36:25
37:18,22 38:14,17
38:25 39:21,24
40:13,17 41:3,13
41:17,19,24 42:13
42:16,19 43:13,16
43:21 44:2,4,14,17
45:18,19,21 46:9
46:19 47:12,16,21
48:2,10 51:8 53:13
53:16 54:6 56:18
57:7,14,21 59:21
60:12,15 61:7,14
62:11 63:8,16,21
64:8,17 65:8 67:2
67:19,23 68:8,19
69:7,15 70:4,8,9
70:12 71:10,11,23

73:7,16 74:3 76:4
76:6,12 77:9,17,19
77:20 78:6 79:3,9
79:12,21 80:12,18
81:10,21 82:11,17
82:23 83:19 84:6
84:18 85:3 86:7,13
86:16 87:2,20 90:7
90:15,19,21 91:7
91:15,18,24 92:3,4
92:25 94:10,12,23
95:4,12 96:4,16,21
97:8,14,15,18 98:4
99:12 100:5
101:13,24 102:7
102:22 103:19
104:3,8,12 105:5
105:10 107:3,8,17
107:18,19 108:2,5
108:14,21 109:9
109:13 111:3,8,25
112:4,10,19,20
113:3,8,21 114:9
114:18,22 115:2
116:3,20 117:5
118:6 119:13,20
121:3,23 122:5,12
122:15 123:4,12
124:23 125:9,16
125:23 126:12,18
127:7 135:22
141:5 143:4
148:15,25 150:14
152:25 153:10,15
153:20 154:7,21
155:10 156:5
**courtroom** 57:25
63:2 92:8 99:25
105:14 126:25
**courts** 28:15
**Court's** 30:4 47:4
71:8 105:16
125:21
**covenants** 76:20,21
77:23 78:3
**cover** 82:20 90:11

95:20
**covered** 25:9 57:5
85:20 96:16
100:10
**covering** 86:13
**credit** 25:14 35:16
35:20 44:19 46:4
58:8,24 59:12 61:2
61:3 68:22,25 69:6
104:23 123:20
124:14 128:2,8,15
**creditor** 118:10
**creditors** 11:23
13:11 16:17 21:13
22:9 33:4 37:20
38:21 39:15 61:24
65:16,17 66:21
68:6 72:14 74:10
74:14 83:4 90:11
92:13 106:8
117:14 136:23
149:17
**criteria** 146:3,5
**critical** 128:3
**cross-examine**
43:23 135:23
141:6 148:16
**cross-reference**
62:20 63:17,20
**crumbling** 124:8
**culmination** 147:21
**current** 35:25 46:13
46:16
**currently** 69:11
138:19
**Curtis** 8:9 118:8
**cushion** 138:2 139:8
**customary** 128:20
**customer** 87:17
89:14 115:12
123:11 135:5
**customers** 88:10,12
88:22 89:11 91:5
134:17 135:8
140:9 142:23
146:17

**customer's** 88:20
**cut** 96:9
————————
**D**
**D** 1:24 11:2 59:25
**damages** 54:13,18
**data** 132:25 133:3,8
133:9
**database** 133:20
**date** 18:21 29:6,9
56:14,22 65:5
89:16 104:22
136:12 157:13
**dated** 155:16
**dates** 4:19 36:20
**David** 126:23
127:10
**day** 18:14 27:7 38:3
38:16 59:14 91:2
93:21 131:20
154:25
**days** 21:22 23:16
28:23 29:6 30:2
69:18 70:5,7
152:15
**day's** 17:18
**de** 19:14 21:3,6,9
**deadline** 29:7 48:25
**deal** 17:13 21:25
26:24 27:2 28:7
38:20 65:9,11
108:9 113:25
**dealing** 12:5 30:22
32:4 33:25 78:10
120:22 135:5,6,8
136:21 140:7
142:22 144:21
**deals** 16:5 119:19
**dealt** 32:2 44:24
82:15 121:10
**debate** 32:11
**debt** 37:23 38:6,7,12
39:3 50:3 51:18
54:10 56:19 59:10
60:22 76:12 79:25
111:4

**debtor** 1:10 23:7
25:6 35:15,16,18
50:14 59:25 61:17
85:18 87:16 88:5
89:25 97:23
100:16 118:13
120:6,10 122:7
123:20 125:15
155:12
**debtors** 3:4,11,20
4:11 5:6,17 6:6,17
13:8,21 18:5 19:4
22:10 23:18 25:14
25:23 28:3 29:25
31:13 36:21 42:2
45:24 48:12,15,17
48:19,22 49:3,6
50:13,18,23,23
52:21 53:4,7 54:4
57:21 61:10 62:15
66:19 68:2 69:23
71:4,7 74:8 80:21
80:25 81:24 82:3
86:9 89:11 91:25
92:15,18,20 93:18
94:8,15 95:15 96:8
97:8 98:14,17
100:9 101:20
110:21 117:14,22
120:23 121:5
124:21 125:22
126:3,17,25 127:5
127:9,15,17,24
128:4,5,9,16,17
129:3,10,12,14,25
130:7,8,13 131:2,4
131:8 133:23,24
134:2 135:18,18
137:7,9,14,15
138:9,13,19
142:24 143:5
144:18 145:14,15
147:4,6,7,18 148:6
148:7,11,21
149:25 151:16,22
152:4 155:4

**debtor's** 20:14,22
32:9 37:4 109:7
129:12
**debtor-in-possessi...**
145:10
**decision** 52:10
117:15
**decisions** 35:7,24
**decline** 36:6
**deemed** 52:3,9,22
53:18 71:2 74:14
**default** 54:11 55:7
56:5 59:8 68:14
**defined** 110:13
**definition** 115:5
**delete** 85:25
**delicately** 106:15
**delivers** 59:2
**delivery** 59:20
**Delphi** 1:8 2:1 3:1
4:1 5:1 6:1 7:1 8:1
9:1 10:1 11:1,4
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1
33:1 34:1 35:1
36:1 37:1 38:1
39:1 40:1 41:1,20
42:1 43:1 44:1
45:1 46:1 47:1
48:1 49:1 50:1
51:1 52:1 53:1
54:1 55:1 56:1
57:1 58:1 59:1
60:1 61:1 62:1
63:1 64:1 65:1
66:1 67:1 68:1
69:1 70:1 71:1
72:1 73:1 74:1
75:1 76:1 77:1
78:1 79:1 80:1
81:1 82:1 83:1

84:1 85:1 86:1
87:1 88:1 89:1
90:1 91:1,13 92:1
93:1 94:1 95:1
96:1 97:1 98:1
99:1 100:1 101:1
102:1 103:1 104:1
105:1 106:1 107:1
108:1 109:1 110:1
111:1 112:1 113:1
114:1 115:1 116:1
116:9 117:1 118:1
119:1 120:1 121:1
122:1 123:1,11
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1,18
135:1 136:1 137:1
138:1,16 139:1
140:1 141:1,13,18
141:19,22 142:1
143:1,15 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1 153:1
154:1 155:1 156:1
157:7
**delphidocket.com**
58:3
**demand** 71:6
**deny** 101:13
**dependency** 60:18
**depending** 34:2
**depends** 37:19
**deposit** 27:14
**deposits** 27:3
**describe** 43:10
125:6 141:22
143:6
**described** 73:9
83:23 84:8 87:20
89:6 125:4
**describing** 145:19
**designed** 147:25
**despite** 79:14

**detail** 38:20 54:4
**determination** 30:2
52:18 130:5
**determine** 70:24
84:5 86:21 116:21
127:25
**determined** 20:15
33:3 53:13 88:6
**determining** 2:10,17
130:10
**Detroit** 10:5
**developed** 142:15
**developing** 136:15
**de-plaint** 122:4
**difference** 53:20
**different** 28:15,16
52:12,14 78:13
82:5 121:9,11
130:4
**differential** 56:3
**differently** 85:5
**difficult** 36:13
**digital** 102:10 108:7
108:8,20 109:3
112:5 113:2,7,14
114:7 117:10,19
**diminishes** 110:5
**diminution** 89:21,22
90:11,13
**dip** 3:21 21:14 33:4
33:12,12,15,22,25
41:6 42:5,23 44:6
44:13 45:25 49:24
60:25 66:8 67:9,15
68:2 77:25 78:24
79:19 80:17,18
81:4,7 84:16 88:18
90:23 92:10 96:7
96:17 100:19
101:5 103:14
104:17,23 111:2,4
111:17,18 113:25
115:16 123:15
127:20 128:2,7,16
133:4,7,16,21,24
135:15 137:24

142:12 143:3
144:16 148:4,5
150:25 151:11,18
153:12
**dipping** 85:7 112:8
**DIPs** 133:13,17
**direct** 106:6
**directed** 51:22
144:14
**direction** 51:4 145:5
**directly** 19:8 106:9
**director** 127:11
136:7
**directors** 127:17
143:13 144:13
147:2
**disagreement** 75:22
150:9
**Discontinuing** 2:7
2:15
**discover** 29:11,20
**discovered** 82:12
**discreet** 47:19 50:9
**discretion** 124:21
**discussed** 54:3 60:7
130:3 149:13
**discussing** 88:5
**discussion** 32:11
39:3 99:20 103:10
121:22
**discussions** 11:23
14:10 99:21
**disposition** 21:9
152:19
**dispute** 26:25 27:12
106:22 107:22
108:16,25
**distress** 136:17
**distributed** 57:24
**District** 1:3 15:21
**docket** 11:22 47:13
**document** 137:6,8
**documented** 60:2
**documents** 45:23
46:19 47:21 83:14
125:25 126:5

doing 75:14 116:9
dollar 22:17 25:21
  44:15,16 58:13
  80:25 131:7
  132:18 134:4
  137:23,24,25
  138:17,18 139:7
dollars 22:5,14,19
  26:5 37:8 44:6,18
  44:21 50:2 53:23
  89:16 130:25
  132:7,13 134:7
  137:19 139:9
donÆt 67:8
Dorchester 145:9
double 84:16 85:7
doubt 117:8 151:19
Doug 11:10
DOUGLAS 7:9
draft 68:23
drafted 27:4 72:14
  98:23 105:9
drafting 73:25 75:15
DRAIN 1:24
draw 151:25
driven 22:25
Drye 7:20 39:11
due 100:15 108:6,8
  108:20 109:3
  112:5 113:2,6,14
  114:7 117:9,18
  152:8
duper 73:8 84:7
Duraswitch 3:3
  30:20 31:7
duties 142:2

**E**

e 1:22,22 7:2,2 10:7
  11:2,2 14:21
earlier 30:5 83:13
  111:10 149:8
early 143:6 144:25
easier 38:18 154:17
easy 121:9 151:6
eat 85:21

economic 132:2
economics 130:18
  132:23,24 133:9
  139:15
effect 91:4 109:8
  155:5
efficient 40:22
efforts 40:8 118:14
eight/nine 58:6
either 20:18 25:9
  72:3 77:5 80:24
  81:4 86:21 100:11
elections 155:15
electrical 31:2
element 46:7
elements 50:9 130:6
embodies 150:22
emergency 30:8
emphasis 139:16
employed 136:5
  157:9
employees 17:14,17
enforceable 53:8
engaged 143:21
ensure 146:13
enter 28:4 49:6
  50:19
entered 13:11 30:24
  32:20 54:19 66:7
enterprise 37:16
  142:22
entire 61:9
entities 32:9 33:2
  38:13 134:21
entitled 55:16
entity 16:12 32:24
entry 105:8 106:11
equal 88:25
equipment 20:8
  138:4
equity 2:24 137:25
especially 115:10
ESQ 7:8,9,10,18,24
  8:7,13,19 9:8,14
  9:20 10:7,11,14,17
essential 21:4

136:22 142:23
  146:17
essentially 14:12
  17:10 21:6 26:24
  27:13 49:13 52:7
  52:24 54:19,25
  84:9 130:6
established 26:2
  36:17
Establishing 2:9,17
  2:22 4:19 5:21
estate 72:25 84:9,15
  88:16,24 93:24
Esther 6:23 157:2
  157:17
Euro 58:13
evaluate 129:4
evaluating 129:24
  143:14,23 144:21
  146:4
evaluation 126:4
  138:4,6,7
evaluations 137:15
evening 47:6 149:19
event 23:20 32:5
  68:3,11,12,14
  77:16 90:21 119:2
  119:9
events 66:22
eventually 38:4
  147:12
Everybody 64:24
evidence 125:18
  137:7,13 145:14
  148:23 149:4
evidenced 45:23
  143:4
evidentiary 42:18
  43:14 45:15
  125:14 148:20
  149:5
evolved 27:8 32:17
exactly 40:24 91:22
examination 137:9
  137:11 140:18
examined 138:12

example 22:15 62:2
  114:11 120:8
exceed 60:11
exceeds 14:17
excellent 26:2
exception 103:25
  114:16
excess 25:7 81:3
  134:14 139:24
Exchange 126:6
excludes 104:16
exclusive 30:25
excuse 72:8
executed 146:19
executes 59:2
executing 131:9
execution 130:15,20
  131:22 139:14
  146:7
exercise 20:14
  109:20 115:7,19
  119:3 124:25
exercised 117:9
  124:2
exhaustive 147:23
exhibit 45:18 46:2,3
  46:14 47:3 48:12
  48:16,17,18,19
exhibits 43:15 45:15
  54:5 125:22
  137:14 143:5
  148:23
existence 114:14
  125:19
existing 59:19 72:12
exists 33:18
expect 14:3 35:18,21
expectation 93:22
expedient 122:12
expedite 116:19
expense 19:9 103:14
expenses 5:23 17:19
  56:12,15,17 60:3
  82:8 84:15
experience 131:12
  134:10 136:14

experiencing 136:16
expert 59:18
expired 50:25
expires 53:5
explained 18:13
explicit 93:19,25
expose 79:19
exposure 36:5
extend 35:16 69:20
  123:19 151:3
extended 41:23
  69:14,18
extent 66:16 67:25
  68:10 75:21 79:18
  80:6 84:13 86:20
  99:6 109:24
  112:13 113:8
  150:8
extra 111:11
extraordinary 106:3
extremely 133:10
  135:12 146:15
e-mail 102:14
  154:11,12,15

**F**

F 1:22
facilitated 31:2
facilities 17:15
  19:13 44:23
  129:18,18,19
  131:7 133:7,21,25
facility 25:14 44:13
  49:7 55:9 128:16
  130:11,17,19
  131:10,23,24
  132:6,24 134:4
  135:15,17 139:14
  139:17,22 146:6,7
  146:12 148:9
  151:23 152:3
fact 12:14 18:9
  37:13 38:2,21
  53:10,15 93:16
  96:12 106:20
  107:15 108:10

116:23 130:12
  132:18 134:3,13
  139:18 151:7,22
  155:12
factor 140:16
factors 122:13
  130:15
fair 133:17 147:18
faith 128:14 147:10
  151:13
fall 13:19
familiar 142:13,18
  145:20 147:14
familiarity 127:15
far 34:8 92:16
fast 71:14,18
favorably 133:11
February 157:14
Fed 3:10,17 4:9,17
  5:5,12 6:5,12,16
federal 130:24
  131:13
Fed.R 2:21
fee 12:12,25 15:19
  57:10
feeling 146:12
feels 26:10
fees 56:16,25 58:8
  60:3,11,13
felt 87:25
fifth 8:4 9:17 105:4
fifty-five 75:15
Fifty-six 52:16
fight 56:4
file 14:19 70:25 71:9
  72:22 97:4 122:5
  129:8
filed 11:14 17:24
  20:18 27:21 31:24
  44:3 45:12 46:8
  47:2 48:14,22,24
  49:7,12,19 65:16
  65:18 69:19 71:13
  71:17 86:24 92:15
  93:11 103:8
filing 4:6 65:3

filings 126:7
final 2:5,12 3:17 4:7
  5:12 6:12 12:4
  14:4,23 15:6,14,22
  26:22,23 28:4,21
  31:22 44:3 46:25
  74:12,23 125:25
  132:5 152:24
finally 15:16 110:22
  134:17
finance 6:19,21 16:8
financial 22:9 23:13
  23:16 25:23,25
  35:17,22 44:10
  46:25 66:18 76:20
  78:3 85:16 86:5
  110:21 127:18,24
  129:15,25 136:17
  141:17 142:5,6
  143:12,17 145:7
  146:14
financing 3:12,21
  4:11 5:7 6:7 16:6
  16:14 33:4,12,23
  33:25 38:10 41:7
  42:6,23 44:7,20
  46:2,9 47:24 72:13
  78:24 101:20
  103:12 106:2
  114:2 115:16
  125:25 126:2,5
  127:20 129:11
  130:13,22 131:3
  140:24 142:12,21
  143:3,24 144:4,16
  145:11 147:6,15
  147:20,24 148:5
  150:4,15,25
financings 75:5
  133:4
find 110:7 151:10,16
finding 129:7
findings 64:16
finds 117:5
fine 15:15 31:14
  64:17 78:7 79:4

81:11 109:9
  153:15
firm 11:7 15:11
  56:17 57:2 118:8
first 3:23 11:15,20
  12:16 13:19 16:4
  18:13 27:7 32:12
  46:3 50:15 51:5
  59:14 66:8 72:23
  73:6 80:2 88:12,13
  88:19 93:4,21
  106:19,23 108:18
  113:6 116:5
  117:16 118:17
  120:14 121:4
  125:21 126:22
  127:13 143:15
  149:2
five 21:21 136:10
  137:25
fix 120:2
flag 36:8
flex 77:15
flexibility 144:8
Flextronics 118:9
Flom 7:4 11:8
flow 34:18
flyspeck 149:23
focus 39:25 140:14
  146:11
focused 40:19 80:16
  105:23
focuses 40:21
  146:21
Foley 20:12
follow 11:17 91:22
  124:4
followed 108:17
following 13:16
  58:12,21
follows 52:24 66:3
  127:13
Ford 114:24 153:23
foregoing 157:3
foreign 138:5
forget 96:23

**form** 11:25 12:4,9
  14:12,23 28:9 31:8
  46:13 47:10 59:3
  148:5 150:9
**former** 137:2
**formulation** 137:2,3
**forth** 20:11 48:13
  60:20 78:22 94:3
  115:18 119:6,8
  120:19 123:20
  129:10 147:3
  150:16,23 154:10
**Fortune** 134:12
**fortunes** 36:7
**forward** 44:5 45:3
  45:10 63:7 123:9
  134:5 147:8
  150:20 152:9,16
**found** 86:2
**four** 7:5 118:12
  129:5 130:24
  131:3,7 132:15
  134:4
**Fourth** 68:9 110:13
**frame** 30:7
**frankly** 93:20
**free** 21:3 29:22
**frequently** 117:4
**FTI** 25:23 127:4,25
  136:5,18 140:20
  143:20
**FTI's** 136:7
**full** 13:21 36:21 80:3
  119:9
**fully** 61:11 88:20
  93:5
**fund** 73:2
**fundamental** 56:9
**further** 12:21 23:2
  47:5 49:16 65:5
  80:5 116:6 151:15
  157:9
**futile** 71:6
**future** 29:12,21

————————
**G**

**G** 11:2
**gating** 130:6
**GE** 145:9
**general** 43:10 47:8
  73:17 85:2 87:8,12
  87:14 88:10 89:9
  91:12 92:14 96:17
  110:12 128:2
  147:14
**generally** 19:3,4
  83:17 114:19
  146:9
**generate** 94:24
**generated** 12:17
  94:19 95:16 132:6
**generating** 73:2
**getting** 93:6 97:24
  112:7 152:9
**GE's** 64:25
**give** 24:4 25:13
  50:20 66:19,20
  99:13 101:8
  108:10 123:23
  124:12 144:7
**given** 13:25 22:6,20
  24:17 27:5 53:10
  65:5 69:23 83:9
  93:13 100:8 120:9
  139:25 149:8
**gives** 24:12 29:25
  67:16
**giving** 101:4 122:16
  122:21
**glitch** 73:25
**global** 44:12 134:23
  145:7
**globally** 135:3
  142:20
**go** 14:20 18:10 19:14
  19:16 24:14 25:10
  31:4 34:24 36:19
  43:7 51:13 58:4
  59:21 63:6 64:24
  74:3 75:3 104:14
  106:23,25,25
  107:21 117:21

120:13 121:11
  122:9 154:20
**goes** 34:9 57:22 69:9
  125:3 153:20
**going** 12:5 14:13,14
  18:15 22:18 30:10
  33:24 45:3 50:18
  51:8 58:18 63:12
  63:14 66:17 69:16
  70:17 76:16 84:14
  86:3 87:21 92:25
  101:7,13 102:7
  104:14,15 105:3
  115:17 120:21
  121:8 122:18,19
  122:20 123:9
  137:18 139:2
  147:8
**good** 11:5 18:14
  23:14 26:14 34:17
  39:7,10 87:10
  128:14 147:10
  151:13
**Goodwin** 8:15 49:10
  63:24 92:11
**Gordon** 8:7 121:17
**Gotshal** 9:16 87:12
**governed** 14:22
**grace** 100:18
**Grand** 8:5
**grant** 6:19 74:21
  75:2 107:11
**granted** 38:9 70:22
  75:6 97:6,22
**granting** 3:15,16
  4:13 5:9,11 6:9,11
  96:17
**grants** 34:24 90:8
**great** 38:20
**greater** 22:3,4 80:22
**Green** 1:18
**group** 32:25 36:21
  44:10 49:9,10 50:7
  50:8,20,22 52:8,17
  53:3 56:16 60:8
  92:11,12

**groups** 126:3
**guarantee** 46:5
**Guaranty** 32:22
  39:12 79:7 152:23
**guess** 35:13,17 46:21
  85:25 99:5 102:22
  116:3 122:24
  124:4,13

————————
**H**

**half** 53:22 85:22
  130:24 132:7,17
  132:19 134:4,7
  137:22
**happen** 32:5 91:2
  117:20
**happens** 35:8
**happy** 34:25 64:24
  83:17 153:8
**hear** 24:4 33:22 77:5
  102:16
**heard** 15:21 16:24
  19:18 25:18 31:17
  80:11 82:2 84:25
  95:23 99:16 100:4
  103:3
**hearing** 2:23 3:17,23
  3:24 4:19 5:12
  6:12 11:12,13,15
  12:8,19 13:3 15:2
  15:6,12,22,23
  16:24 26:22 27:5
  30:2,6,10 31:17,22
  32:3,12 41:7,10
  42:15 44:3,18
  46:12 54:23 56:14
  56:22 64:16 77:8
  79:3 87:14 93:21
  112:14 149:3,6
  150:18 152:16
**hearings** 27:7
**heart** 43:7 121:11
**hectic** 64:13
**held** 13:17,18 47:12
  59:16 136:11
**help** 15:8 42:3 65:21

112:13
**helpful** 112:22
124:17
**helping** 144:3
**hereinafter** 119:6
**hereof** 29:7,9
**he'll** 76:7
**higher** 33:10
**highlights** 101:16
**Hillco** 138:14
**Hills** 9:6
**hired** 57:2
**historical** 133:21
138:10
**history** 130:23
**hit** 45:5
**hitter** 122:25
**hoc** 49:8 60:4 63:25
**hold** 81:6 151:20
**holder** 21:15 55:6,15
55:22
**holders** 42:4 51:17
51:21 53:19 54:10
80:22 106:5
**hole** 58:21
**HON** 1:24
**honor** 11:5,14,19
12:6,13,25 13:5,14
14:7,25 15:4,17,25
16:10,11,20 17:4,9
17:20,25 18:7,13
19:6,23,23 20:13
20:25,25 23:12
25:12,19 26:20
27:4,19 28:10
30:13,16,21 31:6
31:21,21 32:10
33:21 34:7,24
36:10,16 37:12
38:2 39:5,7,7,11
39:13 40:4,25 41:4
41:8,16,22 42:14
43:18,25 45:5,11
45:14,20 46:22
47:22 48:5,11
51:15 53:20 54:3

56:23 57:16 60:8
60:14,17 61:8,21
62:25 63:14,20,24
64:3,6,9,10,22
65:10 66:12,25
67:24 68:10,17,20
69:8 70:11,13,20
71:22,24 73:10,25
74:5,20,24,25 75:3
75:4,20 76:18
77:16,21 78:15,19
79:10 80:10,16
81:13 82:10,16,22
82:24 83:6,20
84:23 85:25 86:19
87:4,13 88:10
91:20 92:5 93:20
94:13 96:25 97:3
97:16 98:13 99:4
100:3,12 101:2,12
101:25 102:18
103:5 104:7,10
105:7,15,18,22,24
106:19 107:10,11
107:25 109:5,14
111:7,9,21 112:3
112:16,21 113:16
114:3,23 115:3
118:7,18,22 120:3
121:18 122:14
123:3 124:3 125:8
125:14 126:11,15
126:20 127:2,8
133:14 135:19
136:2 139:11
141:3,9 147:12
148:12,19 149:7
149:11 150:3,11
152:12,16,21
153:14,18 154:4
155:20 156:2
**honoring** 6:18 16:7
**Honor's** 11:16 26:7
33:24 93:22 98:21
**hope** 34:21 35:20
41:24 65:9 71:25

86:11,18
**hopefully** 41:12
91:17
**hope's** 86:17
**hoping** 87:17
**horizontal** 135:2
**HSBC** 17:5,8,22
**hundred** 22:16
**hung** 155:6
**hurt** 38:22
**hypothetically**
89:14

**I**

**id** 100:22
**idea** 73:14
**identify** 112:23
129:9
**II** 2:9,16 3:13 4:12
4:19 5:8 6:8 78:8
78:10
**III** 3:14 4:12,21 5:9
6:9 58:6
**Iksind** 81:24
**imagine** 23:24
**immediate** 106:10
**immediately** 64:23
68:6
**impact** 67:21
**impacted** 96:14 99:2
**imperative** 115:24
**implementing**
136:15
**implicate** 72:7 93:14
**implicated** 65:24
78:3
**implication** 88:4
**import** 103:24
**important** 74:22
90:5 91:7 135:13
140:16 154:24
**importantly** 27:24
**improper** 73:22
**improvement**
136:15
**inadvertently** 73:18

**inclined** 150:4
**include** 24:6 73:20
**included** 125:10
130:15 134:2
150:17
**includes** 44:14 46:6
94:18 112:11
**including** 45:2 56:5
58:12 59:10 83:10
127:24 137:12
142:11 145:8
**inclusion** 115:4
**inconsistency** 68:22
**incorporate** 151:24
**incorrect** 52:15 69:2
**increase** 36:5
**incremental** 54:12
**incurred** 56:15
**indebtedness** 55:19
**indicate** 75:5 87:7
**indicated** 126:16
133:18 149:14
**indiminution** 84:12
**indiscerible** 82:7
**indiscernible** 100:23
104:25 108:6,8,19
109:3 112:5,25
113:6,14 114:7
117:2,9,18
**individual** 107:16
**Industries** 3:4 30:21
**industry** 128:21
**inform** 50:22 53:3
**information** 35:14
39:19 52:14 65:19
66:23
**informed** 35:23
43:12 59:5
**Initial** 4:22
**initially** 146:11
**inlay** 117:13
**inner** 12:2,15 37:14
**input** 117:14
**insert** 58:5,17,21
60:17,17 81:15
**insertion** 58:12

95:18
**inside** 144:2
**insider** 24:24
**insiders** 23:10
**insofar** 52:25
**instance** 117:16
**institutions** 44:10
127:22 129:6,15
129:16,20 130:4
131:21 145:8
**instruct** 154:13
**instruction** 50:17
**instrument** 55:14
**insufficient** 88:19
**insurance** 6:18,20
16:6,8,14
**integral** 25:4
**intend** 14:25 149:12
154:22
**intended** 15:8 26:11
50:22 89:24,25
101:7 107:3,7
116:8
**intent** 123:3
**intention** 75:17
**intentional** 73:23
**intercompany** 32:6
35:5 36:7 39:20
66:10 78:21
153:12
**interest** 6:20 45:8
50:24 52:20 53:25
54:2,11 55:8 56:6
59:8,12 60:10
61:18 62:17 70:16
71:5,15 72:10,19
72:22 73:11 79:19
81:18 82:4,13,20
86:10 87:25 89:12
93:9,12 105:2
106:6 122:7
124:24 128:25
151:8
**interested** 21:17
**interests** 65:23
70:19 73:4

**interim** 2:4,12 3:16
5:11,22 6:11 11:21
13:10 26:23 28:20
32:3 44:17 47:4
141:16
**interlinks** 55:3
**internet-based** 55:3
**interrupt** 51:9 67:2
87:3
**interrupted** 51:12
**interrupting** 61:16
**intervening** 73:4
**introduce** 126:22
**inures** 37:16
**inventory** 138:6
**investigation** 86:5
**investigations** 85:10
**investigatory** 69:9
70:21
**investment** 85:14,21
126:25 127:19
130:9 143:18
**inviting** 75:14
**Invoices** 2:8,16
**involve** 24:24
134:20
**involved** 20:7 21:18
57:11 95:11
134:22 139:3
140:16 141:23
142:25 145:18,24
151:4
**involvement** 146:16
**involves** 54:21
**involving** 104:20
143:9
**irrespective** 110:20
125:19
**issue** 27:14 33:6,9
33:17 34:16 37:24
39:2 40:18 49:5
52:12 72:2,3 75:6
76:13 80:20,20
96:6,8,11 99:14
101:18 104:16
105:14 108:17

115:4 124:15
**issued** 144:18
**issues** 27:16 33:25
41:11 42:22 43:3,5
43:5,9 45:2,7
47:20 48:8 51:5
53:12 56:24 71:19
76:21 78:11 81:23
83:10 84:21 92:6,9
94:17 120:14
130:16,16,17
140:12 146:9
151:5
**issuing** 18:11
**item** 11:20,20 13:7
14:8,8,10 16:5
26:20 65:11 67:25
69:9 96:2 105:16
109:15
**items** 13:6,6 20:8,10
49:20 54:3 138:23
139:13
**it'd** 126:16
**it'll** 108:10
**IV** 3:16 5:11 6:11
58:20 104:20

_____

**J**

**J** 7:11 8:7,13
**Jack** 11:6
**jbutler@skadden....**
154:19
**JOEL** 10:11
**John** 7:8 127:6
141:11
**joined** 141:19
**joint** 103:8
**JP** 44:7,11 80:14
131:18 145:6
147:11
**JR** 7:8
**JUDD** 8:3
**Judge** 1:25 86:18
**judgment** 20:15,22
31:13 77:4 135:13
147:5,16,17

**July** 141:20
**juniored** 33:14

_____

**K**

**Kayalyn** 7:10 11:9
**keep** 91:8 155:14
**KELLEY** 7:20
**Kelly** 39:11
**Ken** 80:13 83:20
**KENNETH** 9:14
**kept** 35:11,23
**key** 139:13
**kids** 120:2
**kind** 19:15 22:20
27:3 34:22 43:9
55:11 73:3 101:8
112:14
**kinds** 56:6
**king** 63:9 127:3,4
136:3,4,13 137:5
137:16 138:11,22
139:11,15 140:13
141:6
**King's** 139:18,23
141:3
**know** 12:12 22:14
22:16 28:15 35:13
35:24 36:16 37:7
37:13,19 40:5,18
41:11 43:17 57:2
60:10 62:5 65:3,5
65:20 67:3 71:19
73:17 76:25 86:8
92:7 98:2 101:10
107:16 114:12
120:18,18 121:8
122:19 149:15
152:2,7,10 153:7
**known** 21:14,16
**knows** 44:2 120:11

_____

**L**

**labor** 59:18
**laid** 48:20 80:6
96:22
**language** 25:2 32:22
39:3 54:24 68:24

69:5 79:6 80:16
81:16 87:22,24
93:17 94:4,8 96:17
98:14 103:12
104:14,17,19
105:2 106:12,14
107:5 109:8 114:5
149:20 153:11,18
155:7,11,14
**large** 36:4 139:21
151:23
**largest** 118:10
130:21,22 131:11
**lastly** 24:20
**late** 47:6
**LATHAM** 7:13
**law** 11:7 104:24
**lawyer** 62:25 117:7
**lawyers** 116:24
**LB** 97:25
**lease** 20:2,5,7,16
95:21 98:7,12
100:8,14,14,24
**leased** 98:11
**leases** 93:14,23 94:3
95:8 98:7,10,18
100:11,13
**leave** 65:2 120:23
124:2
**leaves** 66:10 92:17
92:20 124:5
**left** 85:17 149:22
155:4
**legacy** 144:21
**legal** 60:13 143:19
152:7
**lender** 32:7 36:6
58:25 59:17 60:22
61:5 96:18 111:4
124:6,9 137:23,24
**lenders** 3:16 5:11
6:11 21:14 33:12
33:15,16 47:8 49:9
51:4 55:5 60:5
62:18 64:2 67:10
67:15 68:3 69:11

70:3 72:6,19 77:25
81:8,8 82:6 83:15
84:3 88:18,25 89:2
92:10 96:7 100:2
103:14 104:18
111:2,17 113:6
123:16 127:21
136:25 145:17,22
**lending** 35:7 36:9
49:25 127:22
**length** 22:25 23:9
128:13 151:12
**lengthy** 106:3
**lessor** 20:18 93:10
**lest** 90:3
**letter** 45:25 58:8
90:9 147:3 152:10
152:11 155:5
**letters** 44:19
**let's** 38:25 63:10
96:4 111:17 112:6
**level** 22:8 121:10,11
**levels** 121:9
**Lexington** 8:16 9:11
**liabilities** 144:22
**liability** 32:25
**LIBOR** 52:19,19
55:23,25 59:19
61:16
**LIBOR-based** 53:4
**license** 3:6 30:20,23
30:25
**lien** 21:15 32:19,24
33:3,9 34:17,24
39:2 88:12,16,19
92:21 94:21 96:13
96:18 104:2,4
**liens** 21:4 34:11 38:7
38:9 78:22 85:11
88:23,23,25 89:8
89:18,19,19 95:20
96:22 97:6 103:9
103:16 104:21
**lies** 53:12
**lieu** 61:23
**lifting** 90:25

**light** 149:2 152:19
155:11
**likelihood** 30:6
**limit** 124:21,23
**limitation** 22:3
**limited** 76:10 85:8
**line** 29:5 31:6 58:15
85:24 101:5 105:4
120:14 125:10
**lines** 58:6
**liquidation** 138:21
139:2,4
**liquidity** 130:17
132:8,20 134:8
139:25 140:11
**list** 74:4
**listed** 49:3 73:19
**litany** 31:4
**literally** 119:17
**litigation** 86:3
**little** 51:11 62:9
78:12 85:5 113:4
118:21
**live** 43:18 50:24
**LLP** 7:4,13,20 8:3,9
8:15 9:10,16 10:3
11:8
**loan** 38:22 44:15,22
46:5 47:23 48:6
49:25 54:9,15,16
55:20 153:12
**loans** 59:16 80:7
112:2 132:12
**Local** 4:23
**located** 135:5
**locked** 92:19
**log** 29:16
**long** 94:15
**longer** 20:4,9 52:18
78:25
**longest** 105:25
**look** 37:14 38:5
78:12 82:18 85:11
99:14 149:16
152:9
**looked** 85:4

**looking** 81:14 86:16
118:21 150:21
**looks** 31:14
**losing** 62:12
**loss** 151:15
**lot** 29:3 37:22 63:9
83:16 84:15
121:20
**lots** 98:17
**louder** 113:4
**lower** 24:8 131:22
**lunch** 41:24

---

**M**

**machinery** 20:8
**maintain** 128:18,19
134:15
**maintained** 133:22
**maintains** 133:3
134:25
**major** 106:4 129:5
**majority** 37:15 38:4
38:6,11 42:24
92:22
**making** 74:19 76:19
108:13 146:18
**Mallet** 118:8
**MALLET-PROV...**
8:9
**manage** 124:14
**management** 4:20
30:4 31:23 33:19
35:4 37:4 42:11
66:11 78:23 129:3
131:16 144:12
147:2 152:18,22
**managers** 131:17
**managing** 98:10
127:11 136:6
**Manges** 9:16 87:12
**manner** 45:4,9
**Marafioti** 7:10 11:9
**March** 36:20 115:8
141:15
**Mares** 10:17 94:6,9
94:13,14 95:2,5,13

96:5 97:3,13,16,19
98:6 99:3,10,17,19
100:12 101:3,22
**Mares's** 98:15,24
**margin** 56:25 58:14
59:15 63:6
**Mark** 7:24 39:11
**marked** 45:24
**market** 21:5 22:25
24:9
**marketplace** 133:12
**Markets** 44:13
**Martin** 9:20 87:11
**massive** 81:2
**master** 20:5,6
**match** 91:17
**material** 76:11,19
**materially** 29:8
53:15 76:17
**materials** 126:4
145:20
**matter** 1:6 16:4,24
17:4,4,22 19:23,24
20:25 30:17,17
31:21 33:22 41:5,6
42:7,7,9,10 51:6
56:21 102:6
152:17,19 153:4
157:6
**matters** 12:21 13:25
16:2,9 27:11 69:10
69:12 74:11 93:15
105:19 109:22
113:23,25 137:4
**MATZ** 7:11
**Maureen** 67:14
111:21
**Max** 9:8 103:6
**maximum** 131:4
144:7
**MCDOWAL** 112:25
113:5,13 114:21
**MCDOWEL** 114:16
**MCDOWELL** 10:7
114:3
**McGraff** 96:23

**Meagher** 7:4 11:8
**mean** 26:6 37:6
38:18 76:10
113:17 114:19
125:4 154:3
**meaning** 89:13
**means** 107:9 116:7
**meant** 52:7
**mechanism** 34:19
79:23 90:24
**mechanisms** 109:2
**mediation** 106:25
118:15 120:8,20
122:10,22
**meet** 130:12 140:25
144:6 147:7,25
**meeting** 13:17,19
36:20
**meetings** 36:18
**member** 39:14
**members** 50:6,8,20
51:7 52:17 131:16
140:20 144:11
146:25
**membership** 40:9
**mention** 68:21
**mentioned** 27:7
77:23
**merits** 150:13
**message** 134:20
**met** 129:5 135:18
**method** 136:7
**Mezero** 25:24
**MI** 9:6
**Michigan** 8:5 10:5
**middle** 122:23
**million** 22:4,13,16
22:18,24 25:8,21
26:5 37:7 44:18
53:22 80:25 89:16
132:13 138:17
**mind** 25:3 36:4
122:23
**mind-setter** 129:5
**minimis** 19:15 21:3
21:6,10

**minor** 56:24
**minutes** 41:12 62:2
**misreleases** 98:5
**missed** 102:3
**mistreatment**
151:14
**modification** 26:13
67:6 119:7
**modifications** 76:11
**modified** 66:16 69:3
**moment** 33:8 36:19
53:11 54:24 58:18
111:7
**moments** 93:2
**Monday** 13:14
**money** 129:20
140:14
**month** 11:13 14:18
36:2,21 59:14
85:22
**monthly** 11:12
12:16 19:7 36:15
36:23 66:23 77:7
100:14
**Morgan** 44:7,11
80:15 131:18
145:6 147:11
**morning** 11:6 39:7
39:10 75:9 150:2
153:9
**MOSLE** 8:9
**motion** 2:3,4,12,12
2:20,20 3:3,4,8,8
3:21 4:3,3,16,16
5:3,3,15,15,20,20
6:3,3,15,15 14:14
15:7,7 16:6 17:2,5
17:21 18:4 19:18
19:19,25 20:3,11
20:21 21:2 25:18
26:21,22 28:17
30:18,22 31:5,12
31:19,23 33:23
42:6,11 44:2 46:24
60:5 69:15,19 83:5
84:4 86:24 97:4

122:5 127:9
**Motor** 114:25
153:23
**Motors** 47:9 85:2
87:8,13,14 89:9
91:12 92:14
110:12
**move** 42:17 43:14
44:5 45:10,14
53:19 125:21
135:24 141:7
148:11
**moved** 152:15
**moves** 94:25
**moving** 16:2 84:23
92:5 150:20
**multi-tiered** 14:15

**N**

**N** 7:2 11:2
**name** 11:6
**names** 100:23 125:4
**narrowed** 94:16
**National** 17:8
**NATO's** 24:22
**nature** 25:5 116:15
**nearly** 94:16
**necessarily** 93:24
**necessary** 97:4
128:8,20 140:12
**need** 19:13,14 20:4,9
21:24 34:19 37:7
48:6 53:13 62:19
71:13 78:7 82:4
86:4 91:6 107:5
142:20,22 146:13
151:24
**needed** 96:20 139:24
151:23
**needs** 37:8 38:19
94:11 130:13
133:23 135:18
136:7 140:25
142:14 144:6
148:2,11 152:4
154:20

negative 76:20
  77:23 88:4 111:10
negatively 93:14
  96:14 99:2
negotiate 144:4
  155:2
negotiated 61:25
  69:5 79:6 106:15
  113:18 128:13
  147:9 151:12
  152:22
negotiating 145:16
  154:8 155:7
negotiation 142:8
negotiations 47:5
  106:4,10 128:11
  140:21 146:22
neighborhood 51:25
Neil 113:16
Neither 16:17
net 32:7,7 35:12
  132:13
never 35:7 99:16
new 1:3,20 7:6,6,16
  7:16,22,22 8:11,11
  8:17,17 9:12,12,18
  9:18 27:5,10 62:20
  79:18
Newman 9:8 103:5,6
  103:20 104:6,10
  104:13 105:6
night 46:21 47:11
  48:4
nine 103:7
ninny 117:2
NLO 15:8
non 101:21
non-default 58:9
Non-Party's 4:3
non-prime 132:9
non-priming 101:21
  129:18
noon 48:14,25
NORCROSS 8:3
normal 14:20
note 39:14

noted 156:8
notice 3:23 4:6,6,20
  21:12 25:15 29:13
  50:3,11,13 57:9
  66:20 68:2,6 120:9
  120:11,19
Notification 2:22
notwithstanding
  58:22 106:20
  118:25
November 12:7,18
  12:18 13:2,24 14:5
  15:2,11,22 28:7
  51:3 53:5
number 11:20,22
  14:8 15:4,17 16:5
  17:4 19:24 20:25
  25:21 26:20 30:18
  42:3,5,8,17 57:18
  65:13 75:10,16
  94:17 122:13
  145:7
numeral 58:6,20
  78:8,10
nunc 24:17
NY 1:20

O
O 1:22 11:2
object 50:18 51:20
  51:23 52:10 61:17
  63:12 82:5,7
  115:17
objectants 108:12
  154:12,14
objected 16:19 33:5
  51:22
objecting 96:2 97:20
  153:25 154:3
objection 2:3,3 3:3,3
  17:25 21:20,23
  24:15 27:21 45:12
  49:4,7 54:21 61:11
  64:7 65:14,15
  72:15 87:7 93:5,11
  99:11,17,21 100:4

100:6 101:11,14
  101:17 102:6
  103:8 112:24
  117:21 125:20
  153:3
objectionable 78:25
objections 3:20
  19:21 20:17 27:23
  30:10 31:24 39:8
  42:5,21,25 43:7
  48:14,21 49:3,12
  49:19 83:8 92:19
  92:20 93:3 101:23
  106:17 126:10,13
objector 105:13
objectors 27:18,20
  27:22,25
obligation 98:12
  125:18
obligations 16:12
  60:25 100:14,17
obligors 40:22
observed 12:15
obtain 3:11 4:11 5:6
  6:6 44:5
obtained 131:5
  145:22
obtaining 84:10
obviously 34:9 37:5
  43:22 53:11 60:9
  64:12 91:8 115:7
  122:15
occasions 46:11
occur 73:4
occurred 144:17
occurs 57:16,20 58:5
OCP 14:11,22
October 1:14 11:11
  11:13 13:18
  141:15
offered 49:17
offers 114:12
officer 127:5 141:13
  141:17,18,20
  142:17
Oh 80:18 111:3

153:20
okay 11:18 12:10,23
  13:4 14:6 15:15
  18:22 19:17 20:20
  24:2 25:16 26:8,16
  28:12 30:15 31:11
  34:6,13 36:25 37:8
  39:21 41:3,13,17
  41:20 42:13 43:21
  47:16 48:10 51:13
  51:15 57:7,14
  59:21 60:15 61:7
  63:21 64:8 67:19
  67:23 68:8,19 69:7
  70:12 71:23 73:16
  76:4 79:9,21 81:21
  82:23 83:19 84:18
  86:7 87:2 90:7,19
  91:15,18 92:3
  94:12 95:4,12
  97:16,18 101:24
  104:12 105:5,10
  108:2 111:3 112:4
  112:20 113:5
  114:20 118:6
  119:13 127:7
  135:22 141:5
  148:25 149:4
  153:15 155:10
omitted 73:18
omnibus 3:20,23
  4:19 11:11,12,15
  12:19 15:23 47:2,3
  48:18,19 49:2 77:7
once 63:11 71:12,17
  102:8
ones 29:20 46:20
  121:9,11
ongoing 128:23
on-site 136:19
open 65:2 124:5
operate 21:8 128:4,9
  128:22 134:15
operated 135:2
operates 142:20
operating 134:23

142:4,24
operation 104:24
operations 20:12
   127:16 142:21
   143:10
opinion 133:19
   135:16 137:17
   139:23 140:23
opportunity 39:16
   55:6 63:5 70:9
   71:16 75:12
opposed 55:22
   115:25 135:2
   138:18
opposing 56:19
option 58:13 122:22
options 143:14
order 2:20 3:5,8 4:6
   4:7,16 5:3,15,21
   6:3,15 11:21 12:2
   12:4,9,16 14:4,12
   14:15,16,23,24
   15:14 21:2,7 23:23
   26:13,23 28:4,9,20
   28:21,24 29:18,22
   30:4,14,19 31:9,14
   32:23 33:4,13,19
   38:10 44:23,25
   45:8 46:9,13,16,23
   46:25 47:5,10,18
   47:24 57:6,16,19
   58:23 62:3 66:4,7
   66:11,13,14 68:23
   68:25 69:12,24
   70:14 72:13 74:12
   74:23 75:9,18,24
   78:23,24 84:22
   87:16 88:3,9 89:13
   92:14 93:17 96:10
   96:15 97:23 98:23
   99:9 100:20
   101:10 103:13,16
   105:8,15,24 106:2
   106:11,22 107:23
   109:18 110:2,5,13
   110:15 112:12,14

114:2 115:14
122:8,9 124:19
125:5 128:22
134:14 149:10,15
149:24 150:2,10
150:12,17,20,22
150:23 151:2
152:20,22 153:6,9
153:13,25
orderly 45:4,9
orders 2:5,13 13:10
   39:4 79:4 99:13
ordinary 5:18 14:9
   17:18 21:8 90:24
   110:10 115:10,21
   116:14 138:9
organizational
   13:17
organized 117:20
original 46:24 68:17
   90:15 151:20
originally 143:24
ought 32:15 33:10
   66:7 107:11
outcome 83:18
outlined 18:4
outside 82:6 101:9
   134:24 135:5,7
   143:25
outstanding 55:19
overall 27:20 37:17
   148:9
overlapping 37:23
overlaps 37:5
overnight 47:12,15
oversecured 70:2
owed 18:20 55:14
owned 37:15
O'Dell 67:14,14,20
   111:20,21

—————————
P
—————————
P 2:22 3:10,18 4:10
   4:18 5:5,13 6:5,13
   6:17 7:2,2,9 11:2
Pacific 20:2,5

package 36:15,24
   56:12 65:19 72:7
   78:20 89:4
packages 130:22,23
   137:21
page 57:23 58:5
   59:22 78:8,9,10
   79:22 81:13 82:19
   85:8 93:18 103:17
   104:19,20 109:7
   114:12 118:23
   124:19 155:24
pages 78:9
paid 19:7 55:21,24
   59:13 72:24 73:5
   84:13
papers 16:21,23
   52:13 53:16
   149:10
paragraph 24:5,11
   24:12,13,13,21,21
   28:19 29:10,25
   32:4 57:20 59:24
   59:25 62:12 63:18
   80:3 81:25 88:8,11
   88:21 89:5 93:17
   95:19 103:12
   104:15 105:3,23
   105:25 109:6,16
   109:17,23 110:8,9
   110:14,20,22
   111:13,17 113:17
   114:4 116:7 119:8
   119:19,22 121:21
   122:3
paragraphs 28:19
Park 7:21 8:10
part 24:20 36:14,23
   60:24 72:6 77:14
   81:22 86:25 89:4
   92:12 98:8,18
   99:11 103:9 117:5
   133:2,20 142:2
   143:11,22 148:7
   149:2
participate 39:16

106:9
participated 128:10
   133:6 140:18,19
   146:22
participating 58:4
   129:2
particular 18:2,24
   21:18 36:3 37:4
   54:6 72:17 83:11
   87:23 96:11,13
   121:21 131:19
   132:16 139:5
particularly 20:10
   26:6 79:22 116:18
parties 4:14 17:24
   45:9 47:15 57:19
   60:9 65:13 70:23
   71:15 76:25 81:17
   103:7 106:18
   107:15,20 108:6
   112:17 119:16
   120:25 128:24
   150:19 151:7
   154:3
partner 11:9 136:9
party 16:18 20:19
   21:17 75:23 89:12
   102:5 103:2
   109:19,24 110:11
   110:18,25 111:16
   116:19 122:7
   124:24 153:25
   157:10
party's 110:3
Pascoe 10:14 114:23
   114:24 115:3
   118:4 153:22,23
   155:8
passionately 34:11
path 144:19,20
pay 21:5 56:12 60:2
   84:15 124:22
payable 88:15 95:6
   119:5 125:3
payables 88:14
   119:4,12,21

**paying** 88:15
**payment** 54:14
**payments** 19:3 62:2
    79:16
**payoff** 35:17
**pay-down** 132:11
**PBGC** 39:14 40:5,8
    40:19
**PBGC's** 38:10
**Pension** 32:21 39:12
    79:6 152:23
**people** 12:11 19:13
    19:14 24:14 40:12
    57:25 64:19 71:11
    75:11,15 102:15
    112:23 114:10
    119:17 120:13,15
    120:17 122:16,21
    126:18 154:18
    155:6,15
**peoples** 117:25
**percent** 51:6,17,21
    51:25 52:8,16
**perfections** 23:18
**perform** 85:9
**performance** 100:17
    138:8
**period** 83:25 100:18
    134:6 141:14
    142:16
**periods** 69:10
**permanent** 55:7
**permanently** 81:5
**permission** 11:16
    105:16 125:21
**permissity** 93:15
**permit** 52:19 151:13
**permitted** 104:23
    110:19 119:3
    123:24
**person** 84:24 87:5
**personal** 94:2
**personally** 145:17
**persons** 127:23
**perspective** 48:22
    86:9

**persuade** 71:16
**pertaining** 108:14
**pesky** 32:4
**petition** 16:14 18:21
    33:16 50:5 51:18
    59:4,12 61:5 83:15
    88:14 89:16
    104:22 139:10
**phone** 94:6 102:3
    105:13
**phrase** 58:7 70:16
    95:19
**pieces** 155:16
**place** 42:23 74:23
    103:21 118:17
    120:7 125:18
    135:15
**placed** 75:19 92:16
**places** 70:14
**plain** 89:24
**plan** 60:21 137:4
    138:3 140:5 142:6
**plant** 17:15 152:17
**Plantes** 113:16,17
**plants** 19:12
**play** 90:23
**played** 65:13
**pleading** 79:24
**pleading's** 81:25
**pleasant** 122:25
**please** 11:3 41:19
    51:9 102:8,16
    111:7
**pleased** 83:7,17
**pledged** 98:11
**PLLC** 9:3
**plus** 55:5 56:24
    58:14 59:15 63:6
    70:8
**podium** 152:7
**point** 23:12 25:12
    35:5 36:11 38:5
    40:6 45:13 72:17
    76:9,14 77:10
    78:16,18 80:11
    81:12,19,20 90:12

91:9 97:15,20 99:5
    105:22 109:6
    110:15 118:17,19
    120:4 121:4 122:6
    124:12 125:7
    132:3 133:24
    134:3 149:9
    150:24 151:9
**points** 53:22 54:12
    118:11,12
**portfolio** 144:22
**portion** 12:24,25
    18:14 45:15 149:5
**positing** 50:16
**position** 38:11 40:10
    49:25 50:4 51:19
    53:7 74:21 150:6
**positions** 15:9,10
    50:15 136:12
    151:9
**possibility** 86:17
**possible** 67:7 139:25
**post** 125:5,5
**posted** 58:3
**post-petition** 3:12
    4:11 5:7 6:7 45:25
    47:7 74:9 88:16
    109:20,22 110:23
    119:11,21 123:7,8
    123:14,25 124:25
    125:2 127:19
    139:10
**potential** 18:17
    129:4 135:9
**potentially** 38:21
    95:7
**PP&E** 138:3,16,17
    138:20,21
**practice** 115:21
    136:8,11
**praise** 151:3
**pre** 16:13 33:15 50:4
    51:17 57:16 59:3
    59:11 61:4 83:14
    104:25 139:9
**precede** 119:22

**preexisting** 96:21
**prefer** 33:11
**preference** 18:17
**prejudice** 84:2
**premium** 6:19,20
    16:8,14 55:10,11
    59:11
**premiums** 54:17,17
**prepared** 74:25
    98:20 101:15
    137:5,8 138:14
    151:8
**preparing** 138:12
**prepayment** 54:14
    54:17 55:10,12
    59:9,11 80:17
**prepayments** 80:5
**present** 14:25 45:17
    126:17 127:12
**presentation** 31:5
    144:12 149:8
**presentations**
    129:16
**presented** 17:23
    148:6
**preservation** 83:11
**preserve** 15:8
    128:23
**preserving** 81:17
**president** 141:12
**press** 13:25 75:7
**pretty** 19:4 23:14
    116:25 121:14
**prevent** 107:7
**previously** 89:3
**Prevost** 118:9
**pre-funded** 18:14
**pre-October** 29:17
**pre-petition** 2:8,16
    3:15 4:13 5:10
    6:10,18 16:8 25:14
    44:22 47:8 49:9
    50:3,7,8,12 51:19
    52:25 53:18 54:8
    54:10 55:2,8,14
    56:13 58:24,25

59:10,16,17 60:4
60:21,22 61:2 64:2
69:11 70:2,16 72:5
72:19 74:9 79:25
80:15,23 81:8
88:15,24 89:2 90:2
92:10,12 109:25
110:4,16,23
111:14 112:2
119:5 126:5
127:20 132:11,18
137:23
**pre-petition's** 62:18
**pre-proffers** 126:17
**price** 22:2 136:10
**primarily** 105:23
**prime** 44:20 123:15
123:23,24
**primed** 112:7
**priming** 3:13 5:8 6:8
49:7,25 52:5 81:6
129:17 131:23
132:6,17
**principal** 42:3 79:24
140:14 141:24
146:3,20,23
**printing** 110:16
**prior** 27:16 32:13
48:24 102:12
133:12 136:8,12
**priorities** 48:8
**priority** 32:14 33:3
33:10,11,13 34:10
34:12 39:2 72:24
78:21 89:7 100:19
104:25 125:7
151:18,19
**private** 124:22
**pro** 24:17
**probably** 22:19 30:6
63:8,16 85:19
99:25 121:7,10
**problem** 34:8 98:14
115:6
**problems** 114:10
121:5

**procedure** 2:23
21:11,19 116:17
116:20 117:11
122:2,3,10,17,21
**procedures** 2:9,17
4:21 5:22 21:7
24:22 27:2,9 28:16
108:15,17 115:18
**proceedings** 156:6
157:5
**proceeds** 72:10,20
72:23 73:2 81:2
84:11
**process** 13:12 18:10
19:11 27:12 35:10
35:19 56:8 71:3
113:24 120:22
121:6 129:4 143:2
143:6 144:15
145:3,11,12
146:24 147:23
148:12
**procontractual**
114:13
**Proctor** 8:15 49:10
63:25 92:11
**procure** 139:22
**procurement** 143:3
**produced** 129:6
**product** 106:3
**products** 134:25
**professional** 14:17
135:16 139:23
140:23
**professionals** 5:17
5:23 13:9 14:10
35:11 151:4
**proffer** 43:16
**program** 26:10
110:7
**Prohibiting** 2:6,14
**projections** 133:25
134:5,9 137:3
142:7 148:4
**prominent** 96:22
**proof-of-claim** 56:8

**proper** 43:22 115:14
151:10,13
**property** 84:14
88:23 89:3 93:23
93:24 94:2,18
95:21 96:13 138:3
**proposal** 129:11
146:19 147:5,9
**proposals** 126:2
129:4,7,8,9,10,24
131:5 132:9,10,10
139:20 140:19
142:9,11 143:24
144:16 145:13,21
146:4
**propose** 43:9 120:24
**proposed** 3:23 4:6,7
11:15 12:4 21:10
21:15 38:10 46:9
46:23 69:13 72:12
78:24 87:15 88:8
92:23 106:13
128:3 130:19
139:10 149:10
**prosecute** 71:7
**protect** 88:20 89:20
**protected** 87:24
**protection** 3:15 4:13
5:10 6:10 43:2
49:17 55:25 70:15
72:7 80:22 90:9
91:6 97:5 101:19
137:21 150:16
151:2
**protections** 56:11
97:11
**protocol** 22:12
23:13,21 34:23
36:12 38:18 39:18
118:16 120:7
**prove** 113:9,23
**proved** 87:18
**provide** 66:22 68:5
80:21 100:20
129:17,21,21
136:19 154:14

**provided** 16:16
46:20 58:16 59:3
80:5 128:15
137:12 145:21
**provider** 35:20
**provides** 29:18
88:11,22 89:5
90:23 152:4
**providing** 81:18
139:8
**provision** 28:18,21
73:21 89:5 114:5
**provisions** 118:15
132:2 150:16
155:2
**proviso** 80:4
**public** 144:19,24
**publicly** 140:6 150:6
**punch** 31:6
**punitive** 108:25
**purchase** 17:6,7,14
22:2
**purpose** 73:18
**purposes** 11:11 14:4
19:12 75:24
**pursuant** 16:13
97:23
**pursue** 71:13 98:15
122:22
**pursued** 13:9 71:18
**pushing** 139:21
**put** 22:23,25 42:23
47:13,13 55:2
69:17 86:15,20,23
90:5 97:6 103:15
109:10 118:16
120:6 135:15
**putting** 26:24

_____

**Q**

**QL** 144:20
**qualify** 139:15
**Quash** 4:3,4
**question** 69:25
118:3 151:22
**questions** 16:20 18:2

43:13
**quickly** 117:17
122:19
**quite** 73:12 91:13
93:18
**quote** 102:2

_____

**R**

**R** 1:22 3:10,18 4:9
4:17,23 5:5,12 6:5
6:12,16 7:2,24
11:2
**raise** 34:15 36:8
43:3,4 76:7 100:3
**raised** 21:24 33:9
76:14 80:21 99:17
99:18,20 104:17
**raising** 62:22
**RALPH** 10:7
**ran** 129:3
**range** 139:8
**Rapids** 8:5
**rate** 21:5 52:20
53:19,20 54:2
55:17,21,25 58:9
58:11,14 62:17
63:6 82:20
**rates** 53:21 131:25
**Ray** 82:14
**reach** 144:14
**reached** 43:11 47:6
56:10 64:22 65:12
66:2,2 91:25
123:18 130:5
**reactions** 151:21
**read** 54:24 64:3 67:7
81:16,25 105:20
106:16 111:13
112:12 116:5
149:20
**real** 86:11
**reality** 38:3
**really** 26:6 35:6,21
40:21 48:6 49:13
64:15 78:17 98:16
111:23 117:16

118:11,12 120:5
120:11 154:9
**reason** 25:21 26:9
38:19 61:19 62:11
101:14 114:9
**reasonable** 24:9
56:12,15 60:2,10
66:20 83:9 84:19
85:12 116:17
133:18 147:18
**reasonableness**
57:11
**reasonably** 35:25
59:5 140:11
**reasoned** 96:8
**reasons** 20:11 31:18
**recall** 32:10
**receipt** 28:23
**receivables** 138:7
**receive** 55:16
**received** 61:18 62:3
68:2
**receptance** 100:21
**recess** 41:9,18,24
**recharacterization**
62:4,7 63:3 79:17
81:19 83:12
**recital** 79:15
**recognition** 116:12
**recognized** 131:2
**recognizing** 125:15
**recommended**
146:25
**reconstruction**
127:5
**record** 41:20 42:18
43:15 46:18 47:25
49:22,22 52:15
60:8 61:13 64:4
68:21 73:13 74:7
74:18,22 75:19
78:14,18 79:14
83:21 88:7 90:6
91:8,14,24 92:17
105:20 107:6
109:12 125:14,19

126:8 132:3 134:2
148:20,24 149:13
149:21 150:5,18
150:19,23 152:11
154:6,10,23
155:14
**recorded** 157:5
**recording** 102:10
108:7,9,20 109:4
112:6 113:2,7,15
114:8 117:10,19
**records** 137:10
**record's** 78:5
**recoup** 115:6 118:2
**recoupment** 45:2
109:21 110:4,6,11
110:17,19,24
111:15 115:5,9,10
115:15,25 116:10
116:11,13,22,24
117:3,4,5 125:2
135:10
**recovery** 136:11
**recruiting** 76:10
**red** 36:8
**redraft** 75:19
**reduce** 81:4 91:4
**reducing** 81:5
**red-line** 103:18
**refer** 49:10
**references** 45:17
**refers** 57:21 70:18
**refinanced** 60:23
61:4
**refinancing** 129:22
**refinancings** 133:6
**reflect** 48:3 49:22
50:21 74:7 149:12
150:19 153:10
154:9
**reflected** 52:13 66:4
131:25
**reflects** 28:10 64:4
**refrain** 116:21
**refreshed** 68:16
**Refusing** 2:7,15

**regard** 93:19 120:24
**regarding** 11:25
84:8
**regular** 111:4
116:21
**regularly** 19:5
**reimbursed** 19:9
**Reimbursement**
5:23
**reimbursing** 84:9
**Reisman** 8:13 118:7
118:8 119:15,23
120:3 121:16
**reject** 19:25 20:16
**rejection** 3:6 30:19
30:22 31:8
**related** 16:9 44:25
59:9 69:10 157:10
**relates** 93:9 96:10
**relating** 93:16 103:8
103:13 106:10
130:16,18 137:14
**relationship** 26:3
32:8 67:18
**relationships** 48:9
98:19 136:25
**relatively** 47:19
**release** 59:20
**released** 64:20,23
**releases** 69:22 75:7
**releasing** 59:7
**relevant** 50:10,11
**relied** 138:12,13
**relief** 3:16 5:11 6:11
14:12 16:19 17:21
27:18 29:24 75:2
107:11 122:6
**rely** 16:21
**remaining** 105:17
**remedy** 119:21
**remember** 85:7
**removed** 15:11
**Renaissance** 10:4
**renegotiate** 75:20
**renew** 50:24 53:6
**reorganization**

60:21 128:6
**reorganize** 42:15
**repaid** 34:21 60:23
   61:3
**repay** 37:10
**repayment** 61:6
**repeating** 108:23
**replacement** 18:6,8
   38:9 88:12 89:17
**reply** 3:20 47:2,3
   48:18,20 49:2,19
**report** 13:15 25:22
   42:16 57:17 83:7
   123:6
**reporting** 36:15,24
**reports** 137:11,12
**represent** 148:20
**representatives**
   36:22
**represented** 49:11
   148:7
**represents** 46:15
   61:9 147:21
**request** 14:13 16:10
   21:20 28:22 29:7
   37:6 50:18 57:10
   75:21 108:16
**requested** 16:19
**requests** 2:10,18
   28:25
**require** 21:11 25:5
   79:18 80:24 87:21
   107:24 134:13
**required** 27:19
   132:11 148:10
**requirements** 83:3
   130:12 135:19
   141:2 142:19
   144:23 147:7
**requires** 21:19 22:5
**reservation** 62:14
   81:24
**reserve** 33:8,21
   38:25 62:15
   107:13
**reserved** 33:5 42:12

62:8 71:20
**reserving** 82:3
**Resnick** 126:24
   127:10,12,22
   128:6,14,25
   129:13 130:8,14
   130:19 131:6,14
   132:4,21 133:4,14
   133:23 134:9,17
   135:4,23
**Resnick's** 126:24
   131:11 135:21
   139:12
**resolution** 22:2
   26:25 27:12 28:8
   42:9 76:8 80:19
   83:23 84:20
   108:25
**resolve** 21:24 24:15
   27:23 36:13 41:10
   42:4 47:19 151:6
**resolved** 16:4 42:10
   42:21 68:12 87:8
   92:7,9,22 93:6
**resolves** 61:11 65:14
   65:15
**resolving** 103:11
   151:4
**resources** 146:15
**respect** 12:2 17:12
   17:21 21:17 23:23
   27:22 33:18 50:2
   51:5 52:11 57:4
   59:8,16 62:21
   67:12 68:24 69:10
   71:5 72:15 83:4
   85:6 93:10 103:10
   103:16,21 106:12
   109:17,21,23
   110:3,8,14,22
   116:4,10 118:14
   118:18,19 120:20
   138:15 139:13
   145:10 153:11
**respects** 54:21 151:5
**respond** 65:7 86:4

99:3
**Response** 3:20
**responsibility**
   141:24 142:16
**responsible** 142:3,7
**rest** 148:24 149:9
**restate** 63:14
**restrict** 115:15
**restructuring**
   134:19 136:8
   141:13,25 144:22
**result** 20:13 66:4
   74:13
**resulted** 143:2
   145:12
**retain** 56:2
**retained** 24:17
   143:12,15,19,20
**retention** 5:17 13:8
   14:19 15:18
**revenues** 95:6,11
**review** 13:12,25
   14:4 16:25 19:19
   43:6 69:21 83:25
   142:8 153:18
   154:22
**reviewed** 16:15,22
   20:20 31:11 57:18
   133:8,15 148:4
**reviewing** 39:18
   142:3 152:10
**revise** 82:21 150:21
**revised** 31:14
   153:24
**revisiting** 75:25
   150:13
**revolver** 44:16,22
**revolving** 46:4
**rewritten** 153:6
**rideout** 116:18
**right** 11:3 14:6 15:3
   15:24 19:2,19 23:6
   23:11 24:12 25:16
   31:17 33:11 35:2
   37:11,21 38:24
   39:4 60:13 62:8

63:2 65:2,8 66:9
   66:15 67:23 71:11
   71:12,20 73:12
   76:8 77:17,20 78:6
   81:10,21,22 82:2,7
   83:12 84:6 85:7
   90:17 91:2 95:9
   96:12 101:24
   103:19 104:8
   108:13 109:19,25
   110:6,19 112:2,10
   114:20 115:9,15
   115:19 116:2
   117:4,5 118:3,4
   119:4,23 120:13
   120:18 121:3
   123:12 124:24
   125:5,23 126:14
   135:24 141:7
   148:15,17 149:19
   150:14,14 154:18
   154:21
**rights** 29:3 44:25
   56:2 61:23 62:14
   62:15 69:16 70:21
   72:3 73:21 81:17
   84:3,3 107:14,14
   109:21 110:3,7,11
   110:17,24,25
   111:15,16 114:13
   116:9,11,13,14
   117:25 121:2
   123:15,25 124:10
   124:11
**Rim** 20:2,6
**rising** 87:7
**risk** 130:15 131:22
   139:14 146:7
**risks** 130:20
**Robert** 1:24 7:18
   121:18
**role** 65:13 136:17
   141:22
**Rollerton** 143:16
**roman** 58:6,20 78:8
   78:10 104:20

**Room** 1:19
**ROSENBER** 155:19
**Rosenberg** 7:18
  23:22 25:19 26:14
  34:3,5,7,14 36:11
  39:8,17 57:8,13
  62:9 65:21 71:21
  74:18 76:5 83:2,6
  102:18 153:5,17
**Rosenberg's** 22:15
**Rothschild** 15:18
  127:11,18 131:15
  132:23,25 133:5
  133:22 143:16,21
  144:14 145:2,5,18
**Roy** 81:24
**rule** 15:20
**rules** 24:18

**S**

**S** 7:2 8:19 11:2
**sacrifice** 151:8
**sale** 22:25 23:3,9
  25:4 81:2
**sales** 24:10,23 80:2
**sanctions** 65:3
**satisfactory** 28:8
  59:6
**satisfied** 74:16 83:3
  83:8 151:16
**satisfies** 152:3
**satisfy** 84:12
**saying** 29:5 40:10
  101:3 108:21,23
  108:24 124:7
  153:21
**says** 24:22 28:21
  58:7,15 59:23,25
  111:18 113:18,19
  114:4,4 118:24
  124:9,20 150:10
  153:24
**scenario** 82:6 124:8
**SCHAEFFER** 9:3
**Schaffer** 103:6
**schedule** 36:18

**scheduling** 3:17
  4:22 5:12 6:12
  71:19
**Scott** 127:3 136:3
**seated** 11:4 41:19
**second** 50:21 51:9
  66:16 69:25 79:12
  88:18,25 89:19
  96:2 106:25
  109:22 120:4,5
  127:2
**seconds** 99:15
**section** 5:21 26:23
  49:15 72:8,9,16
  80:8 103:15
  109:23 125:16
  151:14,17 154:9
**sections** 2:5,13,21
  3:9 4:7,17 5:4,16
  6:4,16 88:2
**sector** 140:2
**secured** 3:12,13,16
  4:14 5:6,8,10 6:6,8
  6:10 34:20 58:25
  59:17 60:4,22 61:5
  61:20 62:18 64:2
  79:15 80:7,23
  90:10 98:5,19
  127:21
**securities** 2:24 44:12
  104:21
**security** 6:20 95:22
  98:7 105:2 126:6
**see** 39:19 66:24 75:7
  102:3 111:17
  119:24
**seeing** 30:9 66:22
**seek** 18:8 26:12 30:5
  40:8 43:19 53:6
  65:2 71:8 83:12
  127:19
**seeking** 16:7 19:25
  107:12
**seen** 105:25
**selected** 133:20
**self-styled** 49:8

**sell** 21:3 25:6
**send** 21:12 120:11
  122:20 154:15,18
  155:4
**senior** 110:25
  111:16 131:17
  136:6
**sense** 83:16 119:14
**sent** 50:12
**sentence** 81:15
  118:20,23 119:10
**separate** 23:9 69:17
**separately** 98:11
**series** 105:19 106:21
**serious** 35:6 37:2
**serve** 27:18 57:3
**served** 11:14 47:11
  47:14
**service** 29:6,20
**Services** 2:8,15
  138:15
**session** 75:16
**set** 20:11 30:2 41:9
  45:6 48:13 60:20
  74:21 78:22
  113:11 115:18
  116:24 119:6,8,11
  120:19 129:10
  147:3 150:16,23
  154:10
**setoff** 33:16 43:3
  44:25 73:21 81:9
  88:21 89:15,22
  90:10,14,15 91:5
  92:21 93:7 102:4
  103:4 105:12,17
  105:18 107:16
  108:11 109:25
  110:10,17,18,24
  111:15 112:18
  115:6 116:2,14,23
  118:14 119:2,4,19
  120:8,25 122:4
  123:9,14,25
  124:10,25 135:9
**setoffs** 73:22 88:13

  90:25 106:23
  109:20 115:7,8
**settlement** 64:6,22
  150:12
**settlements** 42:17
  43:11
**settling** 75:24
**seven** 75:15
**Sheehan** 127:6
  141:11,21 142:12
  143:14 144:9,25
  145:4,15,17,24
  146:8,21 147:8,13
  147:22 148:3,17
**Sheehan's** 147:4
  148:14
**shifting** 80:4
**shipments** 123:10
**short** 155:5
**shortly** 145:3
**show** 95:10
**showing** 97:10
**sides** 117:12
**sign** 157:12
**significant** 53:14
  129:19
**significantly** 131:22
  151:25
**sign-off** 12:8
**similar** 24:10 29:10
  110:15 133:4
  139:12 146:9
**similarly** 17:22
  145:25
**simple** 101:20
**simply** 34:24 37:7
  75:17 88:6 94:10
  98:20 115:19
  149:9
**Simpson** 9:10 80:13
**sir** 26:14 29:14
  57:13 74:25 113:4
**site** 119:18
**situation** 124:6
  145:19
**size** 22:6 128:21

130:16 134:11
139:14,17 146:6
148:8
**Skadden** 11:7
**SKADEN** 7:4
**Slate** 7:4 11:7
**slightly** 27:8 42:16
**small** 85:4 98:8
**smarter** 63:9
**sold** 21:16
**solely** 49:5
**solicitation** 52:2,23
147:23
**soliciting** 143:23
**somebody** 102:19
**Somerstein** 7:24
39:6,10,11,22
40:24 92:8
**somewhat** 124:5
**sooner** 117:24
**sorry** 78:9 85:3 86:6
87:2 97:13 104:3,7
111:20
**sort** 19:15 27:15
37:3 90:23 113:19
135:3 140:7
144:20 146:3
**sought** 17:21 51:4
130:23
**sound** 51:11 157:5
**sounds** 51:11 119:13
**Southern** 1:3 15:20
**speak** 89:12 113:4
**speaking** 64:18
**special** 11:10
**specific** 40:18 57:17
100:7
**speculative** 138:25
**speed** 35:12
**spent** 136:13 146:11
**spot** 45:7
**spring** 68:16
**Square** 7:5
**stabilize** 135:13
**stake** 42:3 106:4
**stand** 72:13 126:22

**standard** 111:5
**standing** 71:2,9
126:24
**stands** 94:4
**starts** 124:8
**state** 46:16 53:15
**stated** 31:19 78:13
92:5 93:20,21
109:12
**statement** 33:7
34:16 59:23 63:15
65:17 66:5 74:15
74:19 79:13
106:20 111:19
114:11
**statements** 12:16
58:22 74:6 82:25
100:15 112:11
144:19
**States** 1:2 11:24
12:14 14:11 135:6
135:7 143:11
144:23
**static** 102:14 108:6
108:8,20 109:3
112:5 113:2,7,14
114:7 117:10,18
**stating** 97:11
**statuary** 104:21
**status** 70:2 97:25
104:2
**statute** 27:10 28:25
70:18
**stay** 115:13,20
116:16 122:6
**Steven** 8:13 118:7
**stock** 138:5
**stop** 117:23
**strategies** 136:16
140:5 142:5
**strike** 77:24
**stronger** 139:16
**structure** 132:5,16
134:18,19 135:3
146:6
**structured** 18:24

**structures** 130:2,3
145:23
**structuring** 143:9
**sub** 59:25 95:7 98:10
117:9
**subject** 15:19 32:10
46:16 62:3 66:11
66:12,13 69:18
79:17 84:22 94:21
95:21 107:19
116:16
**submit** 30:13 49:2
75:9 149:4 153:8,9
153:24 154:5
**submitted** 28:10
31:9 33:7 74:13
78:23 157:5
**submitting** 153:3
**subordinate** 100:25
**subordinated** 99:8
**subordination** 96:3
97:21 100:20
101:3
**subpoena** 4:3,4 65:4
**subpoenas** 57:4
64:19
**subsequent** 87:19
114:12
**subsequently** 23:24
25:6 143:18
**subservient** 124:10
**substance** 59:5
75:25 135:20
141:3 148:13
**substantial** 36:6
86:12 134:14
**substantive** 116:8
118:19
**sub-limit** 44:16
**success** 15:19 23:15
**successful** 77:10
128:6
**successfully** 146:19
**sufficiently** 152:5
**suggest** 46:11 134:6
138:22

**suggestion** 33:20
66:14 67:3
**Suite** 7:15 9:5
**sum** 25:7 135:20
141:2 148:13
**summaries** 126:9
**summary** 48:13
**super** 32:15 73:7
84:7
**superior** 102:12
**Superpriority** 3:13
5:7 6:7
**super-party** 101:4
**super-priority**
32:16 101:21
103:22 104:2,4,4,6
**super-priority's**
101:6
**supplier** 115:12
123:11
**suppliers** 134:16
135:7,8 136:22
140:9 142:23
146:17
**support** 105:8
106:11 127:9
137:20
**supportive** 83:22
**supposed** 89:20
**sure** 36:23 39:22
45:19 63:10 70:17
73:12 75:12 78:4
80:12 90:22 91:13
91:21 95:8,20
104:16 108:22
109:11 111:23
114:22 119:25
121:4,22 123:4
140:8 146:18
149:23 154:19
**surprising** 31:25
**suspect** 89:10
**sustain** 49:14
**sustained** 72:16
**sweet** 45:7
**symbol** 58:17

**syndication** 44:9
 77:11,13
**system** 32:9 102:10
 102:11,12 130:24
 131:13

---

**T**

**take** 12:6,20 13:6
 17:11 18:3 41:23
 43:21 81:2 82:17
 96:4 131:3 149:18
**taken** 50:16 51:16
 135:11
**take-out** 129:19,22
 131:10,24 132:10
 132:14
**talk** 62:9 87:6
 112:14
**talked** 18:18 32:3
 66:12 82:4 111:21
**talking** 12:11 40:25
 70:15 100:10
 111:25 115:22
**talks** 119:9
**tantamount** 130:9
**tasked** 141:23 144:3
**tax** 15:9
**team** 39:17,18 129:3
**technology** 31:2
**Ted** 10:17 94:14
**telephone** 10:8,12
 10:15,18 58:4
 102:20,24
**tell** 117:7
**tempered** 37:12
**ten** 22:4,13,18,23
 23:15 25:8,21 26:5
 37:7
**tends** 117:20
**term** 44:15,22 46:4
 54:15,16
**terminate** 29:19
**terms** 16:15 34:10
 36:20 40:8 43:10
 44:19,23 46:13
 52:2,23 53:9 54:5

54:16 55:20 56:11
 56:16 72:18,21
 75:25 92:18 93:21
 100:2 124:14
 128:3,11 132:2,22
 133:15,17,22
 139:2 140:4
 147:14,16
**test** 22:21,22 86:21
 86:24
**testify** 127:13,14,16
 127:23 128:7,10
 128:15 129:2,8,13
 129:23 130:14,20
 131:6,14 132:4,22
 133:14,19 134:10
 134:18 135:4
 136:4,5,13 137:5
 137:16 139:12,19
 140:13,17,22
 141:10,11,14
 142:13,25 143:15
 143:21 144:9
 145:2,4,11,16,25
 146:8,21 147:13
 148:3
**testimony** 43:19
 127:10 135:21,24
 138:13 139:13,16
 141:4,7 148:14,18
 148:21 151:10
**Thacher** 9:10 80:14
**thank** 17:3 19:22
 20:24 26:15,19
 30:14 31:15,20
 41:2,15,22 57:13
 63:23 64:10 67:19
 90:20 91:19 94:13
 97:17 105:6
 114:21 118:4
 121:16 152:12,13
 155:9 156:2,5
**thing** 32:2 72:23
 85:4 88:6 155:11
**things** 13:13 64:14
 77:11 80:24 94:7

98:17 101:12
 116:4 121:13
 136:19
**think** 13:17 18:12
 18:19 22:7 23:14
 24:5 25:23 27:6,8
 28:20,25 29:22
 33:6,18,23 34:3
 37:2,12 40:17,23
 42:23 53:14 65:22
 65:24 67:11,17
 73:24 75:8 76:13
 76:23 77:4 78:7,11
 79:21 80:2 81:22
 82:11,18 84:24
 86:2,5,9,19 89:9
 89:13,23,25 92:6
 93:4,19 94:21
 95:24 96:6,11
 99:19,23 101:16
 102:2 105:15
 106:5,13 108:9
 112:10 114:10
 119:23 120:5,17
 124:16,18 125:4
 149:9 151:2 153:5
 154:7,10,11,23
 155:3
**third** 7:14 8:4 29:5
 88:23 89:19
 106:25 110:8
 114:5 120:5 127:4
**thirds** 81:3
**third-party** 127:21
 142:10
**THOMAS** 7:11
**thought** 71:3 77:2,6
 82:14 90:5 96:20
 123:17 140:11
**three** 94:17 118:11
 130:6,15 146:2
 148:22
**till** 36:19 39:2
**time** 12:20 20:17
 21:21 30:7 34:15
 55:18 83:25 96:5

107:8 121:15
 144:18 146:11,23
 146:23 149:18
 156:8
**timely** 48:22,23
**Times** 7:5
**Timothy** 10:14
 114:24 153:22
**today** 42:9 44:14
 47:18,25 50:10
 68:18 74:22 82:3
 93:13 101:16
 124:16 150:5
 156:4
**today's** 150:18
 154:23
**Toering** 8:7 121:17
 121:17 123:2,6,13
 124:3 125:6
**told** 50:21 104:18
 111:12
**tomorrow** 75:9
 150:11 153:9
 154:24,25
**tonight** 75:16
**tooling** 103:9
**top** 103:17 104:20
 125:7
**topic** 73:17
**total** 61:19 130:22
 130:25 139:6
**track** 71:14,18
 112:24
**tracked** 91:10
**tracks** 70:18
**trade** 118:10
**trading** 2:23 15:5,6
**training** 155:12
**transaction** 18:25
 21:22 22:20 45:21
 45:22 46:8 49:18
 49:24 50:19 51:20
 51:23 52:11 60:24
 76:2 117:12
 140:21 144:5
 147:15,21

**transactions** 25:15
   54:7 142:11
**transcribe** 102:15
**Transcribed** 6:23
**transcript** 51:12
   102:9
**transcription** 157:4
   157:6
**transfers** 32:6 35:6
**transformation**
   140:3,4
**travel** 17:7 19:12
**travel-related** 17:19
**treatment** 92:23
   153:12
**trial** 64:19 101:15
**tries** 27:13
**triggering** 68:3,11
   68:12
**troubled** 25:20
**true** 100:13,24
   115:11 116:10
   157:3
**Trustee** 11:25 12:9
   12:14 14:2,11,24
   21:13
**try** 18:8 41:10 71:16
   116:19 120:13
**trying** 15:13 18:9
   20:3 118:16
   119:15 120:16
   124:11 131:2
   140:8
**Tuesday** 13:20
**tunc** 24:17
**turn** 35:6 51:10
   90:24 92:18 102:8
   102:17,24 105:16
   121:15 139:3
   154:8
**turns** 89:17
**two** 19:11 27:23
   31:23 32:9 34:9
   36:2 50:9,15 53:21
   55:15 56:24 67:18
   76:25 80:24 81:3

98:6,12,18 99:7
   116:4 126:7
   132:17 137:22,23
**type** 28:16 29:23
   35:13 103:17
   120:7
**typically** 67:16

————————
**U**
**Uh-huh** 42:19 76:4
**ultimately** 33:24
   53:12 108:16
   113:9 130:4
   143:25 146:24
**unanimous** 53:17
**uncertainties** 140:2
**unclear** 118:21
**uncontested** 16:3
**undersecured** 63:4
**understand** 25:11
   54:20 77:9 90:22
   95:14 98:21 99:5
   100:6 106:17
   108:22 111:24
   113:20,21 140:10
   155:8
**understanding**
   65:23 94:22
   103:23 121:25
   123:8,13,17
   142:15
**understandings**
   74:8
**understood** 76:14
   90:2,3 113:13
   121:23,25
**undertaken** 35:19
**unencumbered**
   86:12
**unfortunately**
   116:25
**unilaterally** 29:19
**United** 1:2 11:24
   12:14 14:11 135:6
   135:7 143:10
   144:23

**unpaid** 67:17
**unsecured** 21:13
**untimeliness** 101:17
**untimely** 101:11
**unusual** 148:2
**updated** 46:24
**Uppet** 82:14
**urge** 39:25 155:13
**USA** 17:8 44:8
**use** 3:14 5:9 6:9 17:6
   17:13,14,17 20:4,9
   77:3 81:2 97:9,24
   154:4
**uses** 57:21,22 107:14
**utilities** 2:6,14 26:21
   29:3,11
**utility** 2:4 27:2,14
   28:22 29:18 30:5
**Utilize** 4:12
**Utilized** 5:17
**U.S** 1:25 12:9 14:2
   14:24 17:16 21:12
   134:21

**U.S.C** 2:5,13,21 3:5
   3:9 4:7,17 5:4,16
   5:21 6:4,16

————————
**V**
**V** 3:17 5:11 6:11
**valid** 96:13 109:25
   110:4,18
**valuable** 79:22
**value** 22:17 70:19
   84:12 85:17 86:12
   86:22 88:17 90:13
   128:23 138:17,19
   139:4,6
**values** 84:2 138:3
**variety** 17:20
**various** 17:11 33:14
   120:25 126:6
   131:18 136:12
   137:11,15 138:23
   143:8,23 144:8
   145:23 151:7
**vast** 37:14 92:21

**vehicle** 31:3
**verify** 121:24 123:7
**versa** 67:22
**version** 27:9 81:14
   82:2 151:21
**vertical** 135:3
**Vesey** 125:13
**vested** 86:10
**vet** 27:15
**vice** 67:21 141:12
**view** 32:18 36:12
   45:5 117:10 128:7
   128:17 130:7,8,21
   139:18 147:20
**viewed** 140:15
   147:22
**views** 48:15
**virtually** 57:24
**vis-a-vis** 72:4
**vote** 51:16,25 52:21
**votes** 50:9

————————
**W**
**waive** 55:6,9,23
   66:10 86:23
**waived** 68:13 71:4
   72:4,4
**waiver** 59:20 63:11
   72:12
**waivers** 62:22
**waives** 55:15
**waiving** 59:6
**want** 16:23 19:18
   24:16 25:17 31:16
   34:19 40:10 49:21
   52:15 57:17 65:20
   72:6 73:13 75:12
   77:4 78:4,17 89:10
   89:11 92:24 93:3
   95:17 100:5
   105:19 106:16
   107:20 108:3
   109:12,17 112:19
   113:19 119:17
   120:12,12 121:19
   121:22 123:22

124:6 141:6 149:4
149:16,22 154:4,8
155:6
**wanted** 12:20 27:25
72:5 89:8 93:11
94:7,9 95:25 98:15
121:24
**wants** 43:18,23 65:2
74:16 84:24 87:5
103:3 107:17
125:13
**WARNER** 8:3
**warning** 122:16
**warranty** 124:22
**WARREN** 7:20
**wasn't** 93:23
**Waterhouse** 136:10
**WATKINS** 7:13
**way** 13:7 18:23 27:4
36:19 40:21,22
48:7 108:24
115:22 117:20
155:11
**ways** 53:24 75:3
**web** 79:15
**website** 47:14
**week** 12:6 13:14
23:15 64:12,13
**weeks** 36:2
**weigh** 40:6
**weighing** 146:8
**Weil** 9:16 87:12
**Weiner** 9:3 103:7
**went** 42:21 48:4
49:5
**we'll** 11:16 30:12
36:22 38:4,5 40:6
60:9 62:4 63:19
65:6 78:17 82:21
107:3 109:11
112:14 120:15
149:24 153:8,8
**we're** 12:4 14:13,23
20:3 36:20 40:5,15
40:25 41:20 45:21
47:21 53:10 70:17

75:14 100:10
101:4 105:22
109:15 111:23
115:22 119:15
123:19 150:21
**we've** 18:18 23:12
23:14 40:7 42:4
43:8 54:23,25
56:10 61:22 75:16
94:16 95:13
**whereof** 157:12
**wholly** 37:15
**willing** 123:19
**window** 69:13
**wish** 105:7 135:23
148:16
**withdraw** 64:7
**withdrawal** 66:5
**withdrawn** 74:15
**witness** 126:23
127:2 135:25
136:3 141:8,10
157:12
**witnesses** 43:17
148:22
**WM** 7:8
**wonder** 102:19
**wondering** 62:19
**Woodward** 9:4
**word** 58:10,10 77:23
111:10
**wording** 75:13
**words** 23:3 69:2
111:12,14
**wordsmith** 119:18
**work** 15:12,13 23:4
23:13 26:5 27:13
28:2,6 34:4 54:7
58:16 85:16,24
106:23 120:15,16
121:5 124:13
**worked** 79:23
**working** 14:23
22:11 23:17,19
26:2,11 40:7 117:7
136:22,24

**works** 22:24 28:20
**worst** 124:7
**worth** 44:21 89:18
132:7 137:19
139:9
**wouldn't** 25:8 85:19
100:9 123:2,5
**write** 125:3 154:22
**writing** 82:2
**written** 21:20 59:2
68:5
**wrong** 65:22 85:24

**X**

**x** 1:5,12
**X(x)** 58:17

**Y**

**Y** 58:18,20
**Yeah** 34:5 37:25
48:5
**year** 51:3 53:23
143:7 144:10
**years** 136:10,14
**yesterday** 48:15
64:16
**York** 1:3,20 7:6,6,16
7:16,22,22 8:11,11
8:17,17 9:12,12,18
9:18
**you Æ re** 62:25

**Z**

**Zimen** 9:14 80:10,13
80:13,19 81:12
82:10,14,21 83:20
83:21 84:7 85:23
86:8,15,18
**Zimen's** 65:23 85:6

**$**

**$200,000** 89:21
**$250,000** 85:9,20
**$500,000** 14:18
**$800,000** 89:18

**0**

**05-44481** 1:4

**1**

**1** 11:20 45:24 94:17
125:24 129:10
145:14 147:4
**1,080** 17:13
**1-2** 143:5
**1-29** 125:22
**1.7** 44:15
**10** 15:5 99:14 100:22
**10:35** 1:15
**100** 9:5 10:4
**1000** 7:15
**10004** 1:20
**10017** 9:12
**10022** 7:16 8:17
**10038** 7:6
**1007-2(e)** 4:23
**101** 7:21 8:10
**10153** 9:18
**10176** 7:22
**10178** 8:11
**102(1)** 4:17
**1020** 96:3
**105** 2:5,13,21 4:8,17
**11** 2:5,13,20 3:5,8
4:7,16 5:3,15,21
6:3,15 11:22 15:17
53:10 60:19 97:25
128:5 134:22,24
136:21 143:25
144:2
**11:04** 41:18
**11:30** 41:14
**12** 16:5 48:14,25
125:10 126:2
**12C** 57:20
**12,500** 17:16
**125** 80:25
**13** 17:5 78:9,10
126:3 134:2 148:8
**14** 19:24 51:21 137:7
**15** 20:25 79:22
**15th** 51:3 53:6
**16** 26:20 62:12 63:18

**81:25** 126:4
138:13
**160** 53:21
**17** 30:18 54:4 96:24
**17th** 13:18 29:17
**17-22** 126:4
**18** 42:10 54:4 88:8
88:11,21 89:5
105:23 109:16
110:8,20 113:17
114:4 116:7 119:8
119:19 121:21
122:3 152:17
**18(a)** 109:6
**18(a)(1)** 109:24
110:14
**18(a)(2)** 118:20,23
**18(a)(3)** 110:9
**18(a)(4)** 109:17
**180** 69:18 70:5,6
**19** 41:6 42:8 54:4

---

**2**

**2** 13:6 44:5 45:24
46:2 47:23
**2a** 46:3 47:23
**2(a)** 143:5
**2.59** 44:21 50:2
**2.9** 138:18
**2:27** 156:8
**20** 106:18 136:14
**200** 54:12
**2000** 30:24
**2002** 3:10 4:10 5:5
6:5 136:9 141:20
**2002(m)** 4:18
**2005** 141:15
**2006** 1:14 157:14
**22** 50:13 103:17
104:19,20
**22-27** 126:6
**25** 28:23 29:6 93:17
95:19 106:18
**25th** 13:20
**250** 86:25
**250-odd** 55:5

**259** 44:14
**26** 157:14
**27** 1:14
**27th** 11:11
**28** 48:12,12,16,17
49:4 92:18
**29** 48:12,13,19 49:4
92:18 148:22
**29th** 12:18 13:2
15:12,22 28:7

---

**3**

**3** 45:24 78:8,10
**30** 41:12 57:23 58:5
**30th** 12:18
**3001** 2:22
**31** 59:23 81:13
**325** 44:18
**327** 5:16
**327(a)** 14:21
**33** 51:25
**330** 5:16
**331** 5:16,21
**354(e)** 151:14
**36** 100:22
**361** 3:9 4:8 5:4 6:4
6:16
**362** 2:21 3:9 4:8 5:4
6:4 114:19 115:8
**362(a)** 114:17
**363** 3:9 5:4 6:4
**363(b)** 6:16
**364** 49:15
**364(c)** 3:9 5:4 6:4
101:16 151:17
**364(c)(1)** 4:8
**364(c)(2)** 4:8
**364(c)(3)** 4:9
**364(d)** 3:9 5:4 6:4
43:8 125:17
151:18
**364(d)(1)** 4:9
**364(e)** 3:10 4:9 5:5
6:5
**365** 100:10
**365(a)** 3:5

**365(d)** 96:3 98:2
99:7
**365(d)(10)** 97:21
100:16
**366** 2:6,13 26:23
**37** 53:22
**38** 62:13 82:19
**39** 62:13 82:19

---

**4**

**4** 24:5 46:14 57:21
92:15 93:18 109:7
129:23
**4th** 12:7 13:24 14:5
15:2 141:15
**4.5** 139:9 148:9
**40** 44:4 109:7
**4001** 3:10,18 4:10
5:5,13 6:5,13
**4001(c)** 6:17
**40950** 9:4
**41** 85:8
**42.88** 51:6,16
**425** 9:11
**43** 124:19
**45** 29:25 118:24
**45-day** 15:20
**48243** 10:5
**48304** 9:6
**49503** 8:5

---

**5**

**5** 125:25
**50** 119:17 134:12
154:2
**50,000** 14:17
**500** 132:12
**503** 2:6,13
**506(a)** 84:4 86:24
**506(b)** 79:18 80:8
**506(c)** 72:8,9,12
73:11
**507** 2:6,14
**507(b)** 72:8 73:11
89:6,20
**54** 93:18
**541** 2:21

**55** 72:8
**551** 72:9,16
**553** 73:20
**599** 8:16

---

**6**

**6** 24:21 28:19 103:12
125:25
**6(a)** 104:14,15 105:3
**6-12** 129:13 145:15
**60** 154:3
**60-day** 100:18
**62** 114:12,19
**620-1** 1:19

---

**7**

**7** 29:25 96:25
**7(b)** 72:22
**7(c)** 96:25 110:22
111:13,18
**7(d)** 103:15
**7.6** 139:7
**767** 9:17

---

**8**

**8** 13:7 109:23 115:8
**8th** 141:15
**850** 138:16
**86** 52:7
**885** 7:14

---

**9**

**9** 14:9 28:19 29:11
**9.6** 137:19
**90-day** 69:13
**900** 8:4
**9006** 4:18
**9007** 4:18
**9014** 3:11 4:10,18
5:6 6:6