

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MAY 0 1 2007

Mr. William L. Sollee, Jr., Esq.
Ivins, Phillips & Barker
1700 Pennsylvania Avenue, N.W., Suite 600
Washington, DC  20006

Re:    Delphi Hourly-Rate Employees Pension Plan (Plan No. 003)
       EIN: 38-3430473

Dear Mr. Sollee:

The enclosed documents are sent to you under the provisions of a power of attorney currently on file with the Internal Revenue Service.

If you have any questions, please contact please contact Mr. Heil (ID# 50-03208) at (202) 283-9694.

Sincerely yours,

Donna M. Prestia, Manager
Actuarial Group 2

Attachment



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

MAY 0 1 2007

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation and Subsidiaries
MC 483.400.626
5725 Delphi Drive
Troy, MI 48098

Re:  Delphi Hourly-Rate Employees Pension Plan (Plan No. 003) ("Hourly Plan")
EIN: 38-3430473

Salaried Plan = Delphi Retirement Program for Salaried Employees
(Plan No. 001)

Company = Delphi Corporation

Former Parent = General Motors Corporation

Dear Mr. Whitson:

This letter constitutes notice that for a conditional waiver of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2006.

This conditional waiver has been granted in accordance with section 412(d) of the Internal Revenue Code ("Code") and section 303 of the Employee Retirement Income Security Act of 1974 ("ERISA"). The amount for which this conditional waiver has been granted is equal to the contributions that would otherwise be required to reduce the balance in the funding standard account to zero as of September 30, 2006.

The Company is a U.S.-based global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology with a network of manufacturing sites, technical centers, sales offices, and joint ventures in every major region of the world. The Company supplies products to automotive original equipment manufacturers worldwide, and its customer base includes customers in the communications, computer, consumer electronics, energy, and medical devices industries.

2

Based on the information submitted by the Company, it is clear that it has suffered a substantial business hardship. While the Company generated net income for its 1999, 2000, and 2002 fiscal years, the Company suffered losses for its 2001, 2003, 2004, 2005, and 2006 fiscal years. The Company's financial condition particularly began to deteriorate in 2004 and the first half of 2005 as a result of downturns in its industry. Three issues have largely contributed to the Company's financial deterioration:

(1) unsustainable U.S. legacy liabilities and restrictions driven by collective-bargaining agreements, which have had the effect of creating large fixed labor costs;

(2) reduced production for the Former Parent, which is the Company's major U.S. customer; and

(3) increased commodity prices.

In October 2005, the Company filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. The Company continues to operate its business as debtor-in-possession. The Company has announced that it will cease accruals to the Hourly Plan for most participants as soon as practicable following its emergence from Chapter 11 bankruptcy protection. Participants in the Hourly Plan who are employed by the Company after the "freeze" date will continue to earn service for purposes of eligibility and vesting until termination of employment with the Company.

The Company is expected to emerge from Chapter 11 bankruptcy protection fully restructured with trimmed legacy labor costs, sufficient access to capital markets, and a business plan to diversify its customer base. Based on the Company's diversification strategy and vastly improved equity position, the Company is poised to return to profitability.

The Company has represented that it intends to contribute funds to the Hourly Plan that had been required to satisfy the minimum funding standard for the plan year ending September 30, 2006, upon emergence from Chapter 11 bankruptcy protection. Also, the Company has represented that it intends to meet the minimum funding standard for the plan year ending September 30, 2007, and subsequent plan years upon emergence from Chapter 11 bankruptcy protection. The actuary for the Hourly Plan has projected that the full funding limitation for the Plan will be zero for the plan year ending September 30, 2009.

If the Company is able to successfully reorganize under Chapter 11 bankruptcy protection, its financial condition will be vastly improved and its financial hardship can be considered temporary. However, it is still uncertain whether the Company can successfully emerge from Chapter 11 bankruptcy protection. Accordingly, the waiver of the of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2006, subject to the following conditions:

(1) No later than July 31, 2007, the Company files a plan of reorganization with the bankruptcy court providing for continuation of the Hourly Plan, compliance with the conditions of this waiver, and providing for the combination of transfers under section 414(l) of the Internal Revenue Code ("Code") and cash contributions described below. The Company will not seek approval of a plan of reorganization which is inconsistent with the conditions of this waiver.

(2) The Company does not enter into any agreement, or amend any existing agreement, that would prevent it from satisfying its agreement under this funding waiver to make the pension contributions described in condition (5).

(3) By June 15, 2007, the Company provides the Pension Benefit Guaranty Corporation ("PBGC") a letter of credit in favor of the Hourly Plan from a financial institution acceptable to the PBGC in the amount of $100 million. If the Company fails to meet any one of the conditions under which this funding waiver has been granted, the PBGC may draw upon this letter of credit for the benefit of the Hourly Plan at anytime thereafter. This letter of credit will expire when the contributions described in condition (5) are made upon the effective date of the Company's plan of reorganization under Chapter 11.

(4) Not later than the effective date of the Company's plan of reorganization under Chapter 11, the Company either (i) effects a transfer under section 414(l) of the Code of unfunded liabilities from the Hourly Plan to a plan sponsored by the Former Parent, (ii) makes contributions to the Hourly Plan, or (iii) makes a combination of transfers of unfunded liabilities under the Hourly Plan and cash contributions, so that the net unfunded liabilities under the Hourly Plan are reduced by at least $1.5 billion as determined on a FAS 87 basis.

(5) Not later than the effective date of the Company's plan of reorganization under Chapter 11, the Company makes contributions to the Hourly Plan in an amount sufficient to result in a projected funded current liability percentage as of October 1, 2007, when measured reflecting such contributions and the projected impact of the section 414(l) transfer, that is the same funded current liability percentage that would have been projected as of October 1, 2007, if (a) the funding waiver had not been granted, (b) the section 414(l) transfer did not occur, and (c) a contribution was made on the effective date of the Company's reorganization under Chapter 11 equal to the accumulated Employee Retirement Income Security Act of 1974 ("ERISA") funding deficiency projected to the effective date of the reorganization.

(6) Not later than the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Hourly Plan in the amount of $10 million for the plan year ending September 30, 2007.

(7) Not later than the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Hourly Plan in the

amount of $10 million (in addition to the $10 million contribution in condition (6) above) for the plan year ending September 30, 2007, in full and final settlement of all claims or potential claims against the Company under section 4971 of the Code with respect to the Hourly Plan and the Salaried Plan for the plan years ending September 30, 2005. The Service will not pursue any such claims against the Company prior to the effective date of the Company's plan of reorganization under Chapter 11.

(8) Not later than the effective date of the Company's plan of reorganization under Chapter 11, the Company reimburses the PBGC for outside consulting fees incurred in the review of the Company's funding waiver request in an amount not to exceed $4 million.

(9) The effective date of the Company's plan of reorganization is no later than November 15, 2007.

(10) The Company makes contributions to the Hourly Plan in amounts sufficient to meet the minimum funding standard for the Hourly Plan for the plan year ending September 30, 2007, by June 15, 2008.

Your authorized representative agreed to these conditions in a letter dated April 30, 2007. If any one of the conditions is not met, the waiver for the plan year ending September 30, 2006, is retroactively null and void.

Your attention is called to section 412(f) of the Code and section 304(b) of ERISA which describe the consequences that would result in the event the Hourly Plan is amended to increase benefits, change the rate in the accrual of benefits or to change the rate of vesting, while any portion of the waived funding deficiency remains unamortized. Please note that any amendment to a profit sharing plan or any other retirement plans (covering employees covered by the Hourly Plan) maintained by the Company, to increase the liabilities of those plans would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA. Similarly, the establishment of a new profit sharing plan or any other retirement plan by the Company (covering employees covered by the Hourly Plan) would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA.

This ruling is directed only to the taxpayer that requested it. Section 6110(k)(3) of the Code provides that it may not be used or cited by others as precedent.

When filing Form 5500 for the plan year ending September 30, 2006, the date of this letter should be entered on Schedule B (Actuarial Information). For this reason, we suggest that you furnish a copy of this letter to the enrolled actuary who is responsible for the completion of the Schedule B.

5

We have sent a copy of this letter to the Manager, EP Classification in Baltimore, Maryland, to the Manager, EP Compliance Unit in Chicago, Illinois, and to your authorized representative pursuant to a power of attorney on file in this office.

If you require further assistance in this matter, please contact Mr. Heil (ID# 50-03208) at (202) 283-9694.

Sincerely yours,

Joseph H. Grant, Director
Employee Plans