

**TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION**

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

MAY 0 1 2007

Mr. William L. Sollee, Jr., Esq.
Ivins, Phillips & Barker
1700 Pennsylvania Avenue, N.W., Suite 600
Washington, DC  20006

Re:   Delphi Retirement Program for Salaried Employees (Plan No. 001)
      EIN: 38-3430473

Dear Mr. Sollee:

The enclosed documents are sent to you under the provisions of a power of attorney currently on file with the Internal Revenue Service.

If you have any questions, please contact please contact Mr. Heil (ID# 50-03208) at (202) 283-9694.

Sincerely yours,

Donna M. Prestia, Manager
Actuarial Group 2

Attachment



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

MAY 0 1 2007

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation and Subsidiaries
MC 483.400.626
5725 Delphi Drive
Troy, MI 48098

Re: Delphi Retirement Program for Salaried Employees (Plan No. 001) ("Plan")
EIN: 38-3430473

Company = Delphi Corporation

Former Parent = General Motors Corporation

Dear Mr. Whitson:

This letter constitutes notice that a conditional waiver of the minimum funding standard for the Plan has been granted for the plan year ending September 30, 2006.

This conditional waiver has been granted in accordance with section 412(d) of the Internal Revenue Code ("Code") and section 303 of the Employee Retirement Income Security Act of 1974 ("ERISA"). The amount for which this conditional waiver has been granted is equal to the contributions that would otherwise be required to reduce the balance in the funding standard account to zero as of September 30, 2006.

The Company is a U.S.-based global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology with a network of manufacturing sites, technical centers, sales offices, and joint ventures in every major region of the world. The Company supplies products to automotive original equipment manufacturers worldwide, and its customer base includes customers in the communications, computer, consumer electronics, energy, and medical devices industries.

Based on the information submitted by the Company, it is clear that it has suffered a substantial business hardship. While the Company generated net income for its 1999, 2000, and 2002 fiscal years, the Company suffered losses for its 2001, 2003, 2004, 2005, and 2006 fiscal years. The Company's financial condition particularly began to deteriorate in 2004 and the first half of 2005 as a result of downturns in its industry. Three issues have largely contributed to the Company's financial deterioration:

2

(1) unsustainable U.S. legacy liabilities and restrictions driven by collective-bargaining agreements, which have had the effect of creating large fixed labor costs;

(2) reduced production for the Former Parent, which is the Company's major U.S. customer; and

(3) increased commodity prices.

In October 2005, the Company filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. The Company continues to operate its business as debtor-in-possession. The Company has announced that it will cease accruals to the Plan for most participants as soon as practicable following its emergence from Chapter 11 bankruptcy protection. Participants in the Plan who are employed by the Company after the "freeze" date will continue to earn service for purposes of eligibility and vesting until termination of employment with the Company.

The Company is expected to emerge from Chapter 11 bankruptcy protection fully restructured with trimmed legacy labor costs, sufficient access to capital markets, and a business plan to diversify its customer base. Based on the Company's diversification strategy and vastly improved equity position, the Company is poised to return to profitability.

The Company has represented that it intends to contribute funds to the Plan that had been required to satisfy the minimum funding standard for the plan year ending September 30, 2006, upon emergence from Chapter 11 bankruptcy protection. Also, the Company has represented that it intends to meet the minimum funding standard for the plan year ending September 30, 2007, and subsequent plan years upon emergence from Chapter 11 bankruptcy protection. The actuary for the Plan has projected that the full funding limitation for the Plan will be zero for the plan year ending September 30, 2008.

If the Company is able to successfully reorganize under Chapter 11 bankruptcy protection, its financial condition will be vastly improved and its financial hardship can be considered temporary. However, it is still uncertain whether the Company can successfully emerge from Chapter 11 bankruptcy protection. Accordingly, the waiver of the of the minimum funding standard for the Plan has been granted for the plan year ending September 30, 2006, subject to the following conditions:

(1) No later than July 31, 2007, the Company files a plan of reorganization with the bankruptcy court providing for continuation of the Plan and compliance with the conditions of this waiver.

3

(2) By June 15, 2007, the Company provides the Pension Benefit Guaranty Corporation ("PBGC") a letter of credit in favor of the Plan from a financial institution acceptable to the PBGC in the amount of $50 million. If the Company fails to meet any one of the conditions under which this funding waiver has been granted, the PBGC may draw upon this letter of credit for the benefit of the Plan at anytime thereafter. This letter of credit will expire when the contributions described in condition (3) are made upon the effective date of the Company's plan of reorganization under Chapter 11.

(3) No later than the effective date of the Company's plan of reorganization under Chapter 11, the Company makes contributions to the Plan for the plan year ending September 30, 2007, equal to the lesser of (i) the amount necessary to maintain a credit balance in the funding standard account of the Plan as of September 30, 2007, not less than the outstanding balance of the amortization base with respect to the waived amount that is established and maintained under section 412(b)(2) of the Code, or (ii) the amount of the full funding limitation for the plan year ending September 30, 2007.

(4) If the full funding limitation is greater than zero for the plan year ending September 30, 2008, the Company makes contributions to the Plan for the plan year ending September 30, 2008, equal to the lesser of (i) the amount necessary to maintain a credit balance in the funding standard account of the Plan as of September 30, 2008, not less than the outstanding balance of the amortization base with respect to the waived amount that is established and maintained under section 412(b)(2) of the Code, or (ii) the amount of the full funding limitation for the plan year ending September 30, 2008. Quarterly contributions for the plan year ending September 30, 2008, will be calculated following the regular ERISA calculation process as if the contribution required by this paragraph was the ERISA minimum requirement for the plan year ending September 30, 2008, and any balance due after payment of such quarterly contributions will be contributed to the Plan by June 15, 2009.

(5) If the funding standard account of the Plan does not have a full funding credit for the plan year ending September 30, 2008, and if the Service determines that funding waivers granted with respect to plan years beginning before the first plan year beginning on or after January 1, 2008 (i.e., October 1, 2008, for the Plan), are carried over as a separate amortization base for post-2007 plan years, credit balances are maintained in the funding standard account of the Plan that are not less than the outstanding balances of the amortization base with respect to the waived amount that is established and maintained under section 412(b)(2) of the Code, as in effect prior to the Pension Protection Act of 2006 ("PPA"), for each of the plan years beginning October 1, 2008, through 2010.

4

(6) If the funding standard account of the Plan does not have a full funding credit for the plan year ending September 30, 2008, and if the Service determines that funding waivers granted with respect to plan years beginning before the first plan year beginning on or after January 1, 2008 (i.e., October 1, 2008, for the Plan), are not carried over as a separate amortization base for post-2007 plan years, the credit balance that exists in the Plan as of October 1, 2008, is reduced in accordance with PPA.

(7) If the funding standard account of the Plan does have a full funding credit for the plan year ending September 30, 2008, the Company elects to reduce the credit balance created by condition (3) above that exists in the Plan as of October 1, 2008, prior to determining the value of plan assets and crediting against the minimum required contribution in accordance with PPA.

(8) The effective date of the Company's plan of reorganization is no later than November 15, 2007.

Your authorized representative agreed to these conditions in a letter dated April 30, 2007. If any one of the conditions is not met, the waiver for the plan year ending September 30, 2006, is retroactively null and void.

Your attention is called to section 412(f) of the Code and section 304(b) of ERISA which describe the consequences that would result in the event the Plan is amended to increase benefits, change the rate in the accrual of benefits or to change the rate of vesting, while any portion of the waived funding deficiency remains unamortized. Please note that any amendment to a profit sharing plan or any other retirement plans (covering employees covered by the Plan) maintained by the Company, to increase the liabilities of those plans would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA. Similarly, the establishment of a new profit sharing plan or any other retirement plan by the Company (covering employees covered by the Plan) would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA.

This ruling is directed only to the taxpayer that requested it. Section 6110(k)(3) of the Code provides that it may not be used or cited by others as precedent.

When filing Form 5500 for the plan year ending September 30, 2006, the date of this letter should be entered on Schedule B (Actuarial Information). For this reason, we suggest that you furnish a copy of this letter to the enrolled actuary who is responsible for the completion of the Schedule B.

We have sent a copy of this letter to the Manager, EP Classification in Baltimore, Maryland, to the Manager, EP Compliance Unit in Chicago, Illinois, and to your authorized representative pursuant to a power of attorney on file in this office.

5

If you require further assistance in this matter, please contact Mr. Heil (ID# 50-03208) at (202) 283-9694.

Sincerely yours,

Joseph H. Grant, Director
Employee Plans