Hearing Date And Time: May 31, 2007 at 10:00 a.m.<br>Objection Deadline: May 24, 2007 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING DELPHI AUTOMOTIVE SYSTEMS LLC'S ENTRY INTO SETTLEMENT
AGREEMENT WITH UMICORE AUTOCAT CANADA CORP.

("UMICORE SETTLEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 363 and Fed. R. Bankr. P. 9019 authorizing and approving the entry of Delphi Automotive Systems LLC ("DAS LLC") into a settlement agreement with Umicore Autocat Canada Corp. ("Umicore") to settle a claim asserted by Umicore against DAS LLC, and respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.      No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are section 363 of the Bankruptcy Code and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.  Current Business Operations Of The Debtors

5.  Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.  Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-

---

[1] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2] On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding. The application was approved by the Spanish court on April 13, 2007. The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

8.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

9.     The Debtors believe that the Company's financial performance has deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

---

[3]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

    10. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D. <u>The Debtors' Transformation Plan</u>

    11. On March 31, 2006, the Company outlined five key tenets of its transformation plan. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4] Finally, the Debtors must devise a workable solution to their current pension situation.

    12. On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements. The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment

---

[4] As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

5

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan. The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's goal of achieving consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights. The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM. The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors. The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589). On February 28, 2007, Delphi entered into an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement.

           14.      On April 19, 2007, Delphi announced that the Debtors anticipated negotiating changes to the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement.  The Debtors do not believe that these developments will preclude the Debtors from filing a joint plan of reorganization and related documents with the Court prior to the current expiration of the exclusivity period on July 31, 2007 or emerging from chapter 11 reorganization this year.  The Debtors also confirmed that none of the parties entitled to give notice of termination of the framework agreements has done so as of the date of this filing and that these agreements remain effective as previously filed until modified or terminated.

           15.      Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

16. By this Motion, the Debtors seek entry of an order under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 authorizing and approving DAS LLC's entry into that certain settlement agreement by and among DAS LLC and Umicore, dated May 11, 2007, in the form attached hereto as Exhibit A (the "Settlement Agreement"), which resolves a proof of claim filed by Umicore against DAS LLC for the sale of goods and services. Although it is the Debtors' position that the Settlement Agreement is in the ordinary course of business, the Debtors have elected, out of an abundance of caution and pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by this Court on June 29, 2006 (the "Settlement Procedures Order"), to consummate the Settlement Agreement only upon order of this Court.

Basis For Relief

E.    Background To The Proposed Settlement Agreement

17. On July 28 2006, Umicore filed proof of claim number 12924 (the "Proof of Claim") against DAS LLC, asserting an unsecured non-priority claim in the amount of $10,671,101.82 and an unsecured priority claim in an undetermined amount (collectively, the "Claim") arising from the sale of goods and services.

18. The Claim was objected to on October 31, 2006 pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No.

8

5452) (the "Third Omnibus Claims Objection"). Pursuant to the Third Omnibus Objection, the Debtors sought to modify the Claim from $10,671,101.82 to $10,340,843.74.

19. On November 22, 2006, Umicore filed its Response Of Umicore Autocat Canada Corp. To Debtors' Second Omnibus Objection And To Debtors' Third Omnibus Claims Objection, And Limited Objection To Debtors Motion For Order Establishing (I) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (II) Certain Notices And Procedures Governing Hearings Regarding Disallowance Of Estimation of Claims (Docket No. 5735).

20. Upon further review and reconciliation of its books and records in conjunction with additional supporting documentation provided by Umicore, DAS LLC has determined that its total liability to Umicore is not $10,340,843.74, but instead is $10,558,893.31.

F. The Proposed Settlement Agreement

21. To resolve any dispute over the Proof of Claim, DAS LLC entered into the Settlement Agreement. The salient terms[5] of the settlement agreement are that DAS LLC acknowledges and agrees that the Claim shall be allowed against DAS LLC in the amount of $10,558,893.31 without further defense, offset, or reduction (the "Allowed Claim") and that Umicore agrees that the Allowed Claim shall be treated as a prepetition general unsecured non-priority claim. Umicore, on its behalf and on behalf of related entities and affiliated individuals, acknowledges that the allowance of the Allowed Claim is in full resolution of the Claim and the Third Omnibus Claims Objection with respect to the Claim, and waives any and all rights to

---

[5] To the extent this summary differs in any way with the Settlement Agreement, the provisions of the Settlement Agreement control.

assert, against any and all of the Debtors, that the Allowed Claim is anything other than a prepetition general unsecured non-priority claim against DAS LLC.

Applicable Authority

22.    By this Motion, the Debtors respectfully request the entry of an order under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a) approving the Settlement Agreement and the settlement terms contained therein.  Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Settlements and compromises are "a normal part of the process of reorganization…." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Comm'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

23.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate.  See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it.").  In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

24.     The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors. TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

25.     Courts in this district have further elaborated on these factors to consider, including: (a) the balance between the likelihood of plaintiffs' or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the competency and experience of counsel who support the settlement, and (d) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.  Adelphia Comm'ns, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

26.     The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances.  See Adelphia Comm'ns, 327 B.R. at 159-60; see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'"  In re Telesphere Comm'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).  To that end, courts should not substitute their own judgment for that of the

11

debtor, but rather should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" Adelphia Comm'ns, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3d 600 (2d Cir. 1994).

27. The Settlement Agreement provides for the immediate consensual resolution of the Claim instead of costly litigation of the Claim pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered on December 7, 2006 (the "Claims Objection Procedures Order") (Docket No. 6088). The proposed settlement falls within the reasonable range of litigation possibilities. As is true with any litigation, the outcome of a dispute over the Claim may be uncertain and a trial on the merits under the Claims Objection Procedures Order would involve significant time and expense. Thus, the Debtors believe that resolving the Claim against DAS LLC pursuant to the terms of the Settlement Agreement rather than through litigation is a fair resolution of this matter, and serves the best interest of the Debtors and their creditors.

28. Because the Settlement Agreement involves the use of estate assets, the Debtors also seek authority for the Settlement Agreement under section 363 of the Bankruptcy Code. Specifically, section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it. See In re Lionel Corp., 722 F.2d 1063, 1071

(2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); <u>In re Delaware Hudson Ry. Co.</u>, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

29.    As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" <u>In re Aerovox, Inc.</u>, 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting <u>In re Interco, Inc.</u>, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

30.    For the reasons set for above, DAS LLC believes that it will receive important financial benefits from the Settlement Agreement, and asserts that the Settlement Agreement is an appropriate and reasonable exercise of its business judgment. Accordingly, the Debtors respectfully request that the Motion be granted.

## Notice

31.    Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. Sections 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (Docket No. 5418) and the Settlement Procedures Order. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

32.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

13

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) authorizing and approving the Settlement Agreement and (b) granting them such other and further relief as is just.

Dated: New York, New York
May 11, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**EXHIBIT A**

# SETTLEMENT AGREEMENT

THIS AGREEMENT, dated as of May 11, 2007 (this "<u>Settlement Agreement</u>"), is entered into by and between Umicore Autocat Canada Corp. ("<u>Umicore</u>") and Delphi Automotive Systems LLC ("<u>DAS LLC</u>").

## RECITALS:

WHEREAS, on October 8, 2005 (the "<u>Petition Date</u>"), Delphi Corporation, together with certain of its U.S. affiliates, including DAS LLC (collectively, the "<u>Debtors</u>"), filed voluntary petitions under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of New York (the "<u>Delphi Bankruptcy Court</u>").

WHEREAS, on or about October 14, 2005, Umicore submitted a demand to the Debtors asserting a reclamation claim in the amount of $2,742,819.63 (the "<u>Reclamation Demand</u>").

WHEREAS, on July 28, 2006, Umicore filed proof of claim number 12924 against DAS LLC, asserting an unsecured non-priority claim in the amount of $10,671,101.82 and an unsecured priority claim in an undetermined amount (collectively, the "<u>Claim</u>") arising from the sale of goods and services.

WHEREAS, on October 31, 2006, the Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "<u>Third Omnibus Claims Objection</u>").

WHEREAS, on November 22, 2006, Umicore filed its Response Of Umicore Autocat Canada Corp. To Debtors' Second Omnibus Objection And To Debtors' Third Omnibus Claims Objection, And Limited Objection To Debtors Motion For Order Establishing (I) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (II) Certain Notices And Procedures Governing Hearings Regarding Disallowance Of Estimation of Claims (Docket No. 5735) (the "<u>Response</u>").

WHEREAS, to resolve the Third Omnibus Claims Objection with respect to the Claim, DAS LLC and Umicore have agreed to enter into this Settlement Agreement.

WHEREAS, pursuant that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by the Delphi Bankruptcy Court on June 29, 2006, DAS LLC is authorized to consummate this Settlement Agreement only upon order of the Delphi Bankruptcy Court (the "<u>Approval Order</u>").

1

WHEREAS, the Debtors intend to file and shall thereafter diligently prosecute a motion with the Delphi Bankruptcy Court seeking entry of the Approval Order.

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, DAS LLC and Umicore agree as follows:

1. Allowed General Unsecured Non-Priority Claim And Waiver Of Rights.  DAS LLC acknowledges and agrees that the Claim shall be allowed against DAS LLC in the amount of Ten Million, Five Hundred And Fifty-Eight Thousand, Eight Hundred And Ninety-Three Dollars And Thirty-One Cents ($10,558,893.31) without further defense, offset, or reduction (the "Allowed Claim").  The Allowed Claim shall be treated as a prepetition general unsecured non-priority claim.  Umicore, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents (the "Umicore Releasing Parties"), hereby acknowledges that the allowance of the Allowed Claim is in full resolution of the Claim and the Third Omnibus Claims Objection with respect to the Claim, and hereby waives any and all rights to assert, against any and all of the Debtors, that the Allowed Claim is anything other than a prepetition general unsecured non-priority claim against DAS LLC.  The Umicore Releasing Parties further release and waive any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Claim and which the Umicore Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition Date.  The Debtors and Umicore acknowledge and agree that nothing herein shall amend, alter, or modify the terms of any existing prepetition or postpetition contracts between Umicore and any of the Debtors.  The release set forth above does not include, and is without prejudice to, the right of Umicore to file and prosecute a claim for rejection damages, if any, arising from the rejection by any of the Debtors of an executory contract with Umicore.

2. Withdrawal Of Response. Umicore agrees that it shall and does hereby withdraw its Response to the Third Omnibus Claims Objection with prejudice.

3. Withdrawal Of Reclamation Demand.  Umicore agrees that it shall and does hereby withdraw its Reclamation Demand with prejudice.

4.  Governing Law.  This Settlement Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, the Bankruptcy Code and the laws of the State of Michigan, without regard to conflicts of law principles.

5. Representations And Warranties.  The parties hereto acknowledge that they are executing this Settlement Agreement without reliance on any representations, warranties, or commitments other than those representations, warranties, and commitments expressly set forth in this Settlement Agreement.

2

6. <u>Entire Understanding</u>. This Settlement Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Settlement Agreement may not be modified, altered, or amended except by an agreement in writing signed by the Debtors and Umicore.

7. <u>Condition Precedent.</u> This Settlement Agreement shall be effective on the date when the Approval Order shall become final and not subject to any stay or appeal. The Debtors shall promptly file a motion with the Delphi Bankruptcy Court seeking entry of an Approval Order approving this Settlement Agreement. Each party will bear its own expenses.

8. <u>No Party Deemed Drafter</u>. This Settlement Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Umicore and its counsel. Therefore, any ambiguous language in this Settlement Agreement shall not be construed against any particular party as the drafter of such language.

9. <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Settlement Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Settlement Agreement.

**Accepted and agreed to by:**

**Delphi Automotive Systems LLC**          **Umicore Autocat Canada Corp.**

By: _____               By: _____
Name:                                     Name:
Title:                                    Title:
Dated: May __, 2007                       Dated: May __, 2007


                                          By: _____
                                          Name:
                                          Title:
                                          Dated: May __, 2007

3