**Hearing Date And Time: May 31, 2007 at 10:00 a.m.**
**Objection Deadline: May 24, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING SETTLEMENT AGREEMENT WITH ELECTRONIC DATA SYSTEMS
CORPORATION, EDS INFORMATION SERVICES L.L.C., AND EDS DE MEXICO, S.A. DE C.V.

("EDS SETTLEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 363 and Fed. R. Bankr. P. 9019 authorizing and approving the entry of Delphi and Delphi Automotive Systems LLC ("DAS LLC") into a settlement agreement with Electronic Data Systems Corporation ("EDS Corp."), EDS Information Services L.L.C. ("EIS"), and EDS de Mexico, S.A. de C.V. ("EDS Mexico," together with EDS Corp. and EIS, "EDS"), to settle multiple claims filed by EDS against Delphi and DAS LLC, and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein is section 363 of the

Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

B.      <u>Current Business Operations Of The Debtors</u>

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
       and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
       2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive
       component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The
       application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect
       other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's
       transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.      The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.     On March 31, 2006, the Company outlined five key tenets of its transformation plan.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the Debtors must devise a workable solution to their current pension situation.

---

[4]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

12.     On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's goal of achieving consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

13.     On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an

amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

6

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.    On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors do not believe that these developments will

preclude the Debtors from filing a joint plan of reorganization and related documents with the

Court prior to the current expiration of the exclusivity period on July 31, 2007 or emerging from

chapter 11 reorganization this year.  The Debtors also confirmed that none of the parties entitled

to give notice of termination of the framework agreements has done so as of the date of this

filing and that these agreements remain effective as previously filed until modified or terminated.

15.    Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as the

world's premier auto supplier.

Relief Requested

16.    By this Motion, the Debtors seek entry of an order under section 363 of

the Bankruptcy Code and Bankruptcy Rule 9019 authorizing and approving the Debtors' entry

into that certain Settlement Agreement by and among Delphi, DAS LLC, and EDS, dated May

11, 2007, which resolves multiple claims filed by EDS against Delphi and DAS LLC, in the form

attached hereto as Exhibit A (the "Settlement Agreement").  Pursuant to that certain Order Under

11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To

Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court

Approval (Docket No. 4414) entered by this Court on June 29, 2006 (the "Settlement Procedures

Order"), Delphi and DAS LLC are authorized to consummate the Settlement Agreement only

upon order of this Court.

Basis For Relief

E.    Background To The Proposed Settlement Agreement

17.    EDS, a member of the official committee of unsecured creditors, provides

information technology outsourcing services to the Debtors.  The contracts that form the bases

for EDS' proofs of claim include the Master Agreement by and among Delphi Automotive

Systems Corporation ("Delphi Automotive"), predecessor in interest to Delphi, EDS Corp., and

EIS, effective July 1, 1999 and amended October 2001 (the "Delphi Master Agreement"), the

U.S. Delphi Services Agreement (the "Delphi Services Agreement") by and among DAS LLC,

EDS Corp., and EIS, effective July 1, 1999, the Vega 2 Services Agreement (the "Vega

Agreement") by and among Delphi Automotive, EDS Corp., and EIS, effective December 21,

8

2001 as amended in May 2002, and other certain agreements and amendments (the Delphi

Master Agreement, the Delphi Services Agreement, the Vega Agreement, and other certain

agreements and amendments, collectively, the "Agreements").

       18.     On July 28, 2006, EDS filed proofs of claim numbers 12678, 12679,

12680, 12681, 12682, and 12683 (collectively, the "Claims").  The chart below reflects basic

information regarding the Claims and the Debtors' objections thereto:

| Proof Of Claim No. | EDS Entity Asserting Claim | Debtor Entity Against Which Claim Is Asserted | Amount And Nature Of Claim Asserted | Applicable Objection To Claim |
|---|---|---|---|---|
| 12678 | EDS Corp. | DAS LLC | unsecured: $16,691,418.68 priority: $2,061,011.00 | Third Omnibus Claims Objection |
| 12679 | EDS Corp. | Delphi Corp. | unsecured: $16,691,418.68 priority: $2,061,011.00 | Third Omnibus Claims Objection |
| 12680 | EDS Mexico | DAS LLC | unsecured: $518,330.54 priority: $2,061,011.00 | Third Omnibus Claims Objection |
| 12681 | EIS | DAS LLC | unsecured: $16,691,418.68 priority: $2,061,011.00 | Third Omnibus Claims Objection |
| 12682 | EDS Mexico | Delphi Corp. | unsecured: $518,330.54 priority: $2,061,011.00 | Third Omnibus Claims Objection |
| 12683 | EIS | Delphi Corp. | unsecured: $16,691,418.68 priority: $2,061,011.00 | Third Omnibus Claims Objection |

       19.     In sum, the Claims assert that Delphi and DAS LLC are both liable under

the Agreements for (i) $11,173,088.21 in unpaid invoices with respect to EDS's U.S. operations

(the "U.S. Liabilities"), (ii) $518,330.54 in unpaid invoices with respect to EDS's Mexico

operations (the "Mexico Liabilities"), (iii) $4,999,999.93 due under the Vega Notes Receivables

(as described in more detail below, the "Vega Notes"), and (iv) $2,061,011.00 in minimum revenue commitment shortfall payments that the Debtors assert accumulated as roll-overs from previous years and any subsequent shortfalls for calendar year 2006 and 2007 as outlined in the current Delphi Master Agreement (the "Minimum Commitment Shortfall").

20.    The Vega Notes liability is in respect of an approximately $20 million pre-tax payment (the "Loan") from EDS to Delphi that was received by Delphi in the fourth quarter of 2001. This liability has diminished as payments were made by Delphi to EDS pursuant to the Vega Agreement.  Currently, Delphi has a remaining liability of $4,999,999.93, which represents the Vega Notes portion of the Claims.

21.    Upon a detailed review of their books and records, the Debtors have verified EDS's claim with respect to the U.S. Liabilities and the Vega Notes (only as asserted against Delphi).  With respect to the Mexico Liabilities, a further reconciliation of the Debtors' books and records resulted in a downward variance of $12,604.80 from the amount asserted by EDS.  Finally, the Debtors do not believe that they have any liability for the Minimum Commitment Shortfall.

22.    On November 22, 2006, EDS filed that certain Response Of Electronic Data Systems, EDS Information Services L.L.C. And EDS de Mexico S.A. de C.V. To The Debtors' Second Omnibus Objection (Procedural) To Certain (I) Equity Claims, (II) Claims Duplicative Of Consolidated Trustee Or Agent Claims And (III) Duplicate And Amended Claims And Third Omnibus Objection (Substantive) To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification (Docket No. 5722), and the hearing with respect to the Debtors' objections to the Claims was adjourned.

F.      The Proposed Settlement Agreement

        23.     To resolve their dispute with EDS over the Claims, the Debtors propose to

enter into the Settlement Agreement.  The salient terms of the Settlement Agreement are as

follows:[5]

        (a)     Proof of Claim No. 12678 would be jointly held by EDS Corp. and
EIS and would be allowed as a prepetition general unsecured non-priority claim against (i) DAS
LLC in the amount of $11,678,813.95 and (ii) Delphi in the amount of $4,999,999.93 (the
"Allowed Claim").  EDS Corp. would be the voting claimant on behalf of itself and EIS on
account of Proof of Claim No. 12678 in connection with any plan of reorganization of the
Debtors (the "Plan of Reorganization") and the Debtors would only have an obligation to solicit
EDS Corp.'s vote on account of Proof of Claim No. 12678.  EDS Corp. would accept on behalf
of itself and EIS any and all distributions made under the Plan of Reorganization in connection
with Proof of Claim No. 12678.

        (b)     Proofs of Claim Nos. 12679, 12680, 12681, 12682, and 12683 would
be expunged and disallowed in their entirety.

        (c)     For administrative convenience only, and without prejudice to EDS'
rights against Delphi, Proof of Claim No. 12679 would be expunged subject to the right of EDS
to reassert Proof of Claim No. 12679 as set forth below.

        (d)     DAS LLC and Delphi acknowledge and agree that Proof of Claim
No. 12679, if reasserted, shall be jointly held by EDS Corp. and EIS and (i) shall be allowed (as
that term is used in 11 U.S.C. §502) against Delphi in an amount equal to $11,678,813.95 and (ii)
shall be assertable against DAS LLC in an amount equal to $4,999,999.93, provided, however,
that DAS LLC reserves the right to contest the allowance of Proof of Claim No. 12679 against
DAS LLC, provided, further, however, DAS LLC and EDS agree that DAS LLC shall be
permitted to contest only whether DAS LLC is an obligor liable for $4,999,999.93.  DAS LLC
would reserve the right to contest whether DAS LLC is an obligor liable for $4,999,999.93.  EDS
Corp. would be the voting claimant on behalf of itself and EIS on account of Proof of Claim No.
12679 in connection with the Plan of Reorganization and the Debtors would only have an
obligation to solicit EDS Corp.'s vote on account of Proof of Claim No. 12679.  EDS Corp.
would accept on behalf of itself and EIS any and all distributions made under the Plan of
Reorganization in connection with Proof of Claim No. 12679.  However, if the Plan of
Reorganization were to provide for either substantive consolidation of the Debtors' assets and
liabilities or full recovery to EDS of the Allowed Claim, then EDS could not reassert Proof of
Claim No. 12679 against Delphi.  For purposes of the Settlement Agreement, a plan of

---

[5]     To the extent this summary differs in any way with the Settlement Agreement, the provisions of the Settlement
        Agreement control.

11

reorganization that provides for substantive consolidation of the assets and liabilities of Delphi and DAS LLC is one under which claims against either Delphi's or DAS LLC's individual estate are deemed to be claims against the consolidated estate, such that EDS' proofs of claim are deemed to be a single claim filed against the consolidated estate.

(e)    DAS LLC and Delphi each acknowledge and agree that nothing in this Settlement Agreement shall (A) prohibit EDS from asserting (i) any claims arising after the Petition Date out of any agreement or transaction existing or entered into among EDS, DAS LLC and Delphi, and/or each of their respective affiliates and subsidiaries and/or (ii) any rejection claims filed in accordance with paragraph 8 of the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) and (B) similarly nothing shall impair the Debtors' ability to contest the same.

24.    Given the high costs of litigating the Claims, the reduction of Proof of Claim No. 12678 by approximately $2 million, and the expungement of EDS's other claims totaling approximately $60 million, Delphi and DAS LLC believe that the Settlement Agreement is fair and reasonable and in the best interest of the Debtors' and their creditors.

## Applicable Authority

25.    By this Motion, the Debtors respectfully request the entry of an order under section 363 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules approving the Settlement Agreement and the settlement terms contained therein.  Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Settlements and compromises are "a normal part of the process of reorganization…." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Comm'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

26.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate.  See,

e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement

need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within

the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr.

Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y.

1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best

interest of an estate before approving it.").  In general, compromises in the bankruptcy context

should be approved unless they "'fall below the lowest point in the range of reasonableness.'"

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

      27.     The Supreme Court in TMT Trailer Ferry set forth the following factors

that courts should consider in determining whether a proposed settlement or compromise is in the

best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b)

the difficulties associated with collection, (c) the complexity of the litigation, and the attendant

expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors.

TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v.

Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

      28.     Courts in this district have further elaborated on these factors to consider,

including: (a)  the balance between the likelihood of plaintiffs' or defendants' success should the

case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement

without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of

complex and protracted litigation if the settlement is not approved, (c) the competency and

experience of counsel who support the settlement, and (d) the extent to which the settlement is

truly the product of arms-length bargaining, and not of fraud or collusion.  Adelphia Comm'ns,

327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

29.     The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances.  See Adelphia Comm'ns, 327 B.R. at 159-60; see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'"  In re Telesphere Comm'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).  To that end, courts should not substitute their own judgment for that of the debtor, but rather should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'"  Adelphia Comm'ns, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3d 600 (2d Cir. 1994).

30.     The Settlement Agreement provides for the immediate consensual resolution of the Claims instead of costly litigation of the Claims pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims, entered on December 7, 2006 (the "Claims Objection Procedures Order") (Docket No. 6088).  The proposed settlement falls within the reasonable range of litigation possibilities and in fact results in a reduction of Proof of Claim No. 12678 by more than $2 million and the disallowance and expungement of EDS's other Claims which assert in the aggregate approximately $60 million in duplicative liabilities.  In this case, a trial on the merits under the Claims Objection Procedures Order would involve significant time

14

and expense.  Thus, the Debtors believe that resolving the Claims against Delphi and DAS LLC

pursuant to the terms of the Settlement Agreement rather than through litigation is a fair

resolution of this matter, and serves the best interest of the Debtors and their creditors.

31.    Because the Settlement Agreement involves the use of estate assets, the

Debtors also seek authority for the Settlement Agreement under section 363 of the Bankruptcy

Code.  Specifically, section 363(b)(1) permits a debtor-in-possession to use property of the estate

"other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).

Uses of estate property outside the ordinary course of business may be authorized if the debtor

demonstrates a sound business justification for it.  See In re Lionel Corp., 722 F.2d 1063, 1071

(2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant

debtor's application under section 363(b)); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179

(Bankr. D. Del. 1991).

32.    As a rule, the debtor's business judgment "should be approved by the court

unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound

business judgment, but only on bad faith, or whim or caprice.'"  In re Aerovox, Inc., 269 B.R. 74,

81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

33.    For the reasons set for above, Delphi and DAS LLC believe that they will

receive important financial benefits from the Settlement Agreement, and assert that the

Settlement Agreement is an appropriate and reasonable exercise of their business judgment.

Accordingly, the Debtors respectfully request that the Motion be granted.

Notice

34.    Notice of this Motion has been provided in accordance with the Amended

Eighth Supplemental Order Under 11 U.S.C. Sections 102(1) and 105 and Fed. R. Bankr. P.

2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case

Management, and Administrative Procedures (Docket No. 5418) and the Settlement Procedures

Order.  In light of the nature of the relief requested, the Debtors submit that no other or further

notice is necessary.

<u>Memorandum Of Law</u>

35.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) authorizing and approving the Settlement Agreement and (b) granting them such other and further relief as is just.

Dated: New York, New York
May 11, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 4951)
        Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

17

**<u>EXHIBIT A</u>**

# SETTLEMENT AGREEMENT

THIS AGREEMENT, dated as of May __, 2007 (the "Settlement Agreement"), is entered into by and between Electronic Data Systems Corporation ("EDS Corp."), EDS Information Services L.L.C. ("EIS") and EDS de Mexico, S.A. de C.V. ("EDS Mexico") (together with EDS Corp. and EIS, "EDS"), Delphi Corporation ("Delphi"), and Delphi Automotive Systems LLC ("DAS LLC").

## RECITALS:

WHEREAS, on October 8, 2005 (the "Petition Date"), Delphi, together with certain of its U.S. affiliates, including DAS LLC (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

WHEREAS, on July 28, 2006 EDS Corp. filed proof of claim number 12678 ("Proof of Claim No. 12678") against DAS LLC and proof of claim number 12679 ("Proof of Claim No. 12679") against Delphi which each assert an unsecured non-priority claim in the amount of $16,691,418.68 and a priority claim in the amount of $2,061,011.00 for a total claim of $18,752,429.68.  Also on July 28, 2006, EIS filed proof of claim 12681 ("Proof of Claim No. 12681") against DAS LLC and proof of claim 12683 ("Proof of Claim No. 12683") against Delphi, which each also assert a claim in the amount of $18,752,429.68.  Finally, on July 28, 2006, EDS Mexico filed proof of claim 12680 ("Proof of Claim No. 12680") against DAS LLC and proof of claim 12682 ("Proof of Claim No. 12682," collectively with Proofs of Claim 12678, 12679, 12680, 12681, and 12683, the "Proofs of Claim") against Delphi, which each assert an unsecured non-priority claim in the amount of $518,330.54 and a priority claim in the amount of $2,061,011.00 for a total claim of $2,579,341.54.  All of these claims stemmed from goods, services, and a loan provided by EDS.

WHEREAS, EDS, Delphi and DAS LLC agree to resolve the Proofs of Claim as set forth herein.

WHEREAS, the Debtors objected to Proofs of Claim Nos. 12679, 12680, and 12683 pursuant to the Debtors' Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (I) Equity Claims, (II) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (III) Duplicate and Amended Claims (Docket No. 5451) (the "Second Omnibus Claims Objection"), which was filed on October 31, 2006, and to Proofs of Claim Nos. 12678, 12681, and 12682 pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"), which was also filed on October 31, 2006.

WHEREAS on November 22, 2006, EDS filed the Response Of Electronic Data Systems, EDS Information Services L.L.C. And EDS de Mexico S.A. de C.V. To The Debtors' Second

1

Omnibus Objection (Procedural) To Certain (I) Equity Claims, (II) Claims Duplicative Of Consolidated Trustee Or Agent Claims And (III) Duplicate And Amended Claims And Third Omnibus Objection (Substantive) To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification (Docket No. 5722) (the "Response").

WHEREAS on January 17, 2007, the Court entered the Order Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain Duplicate And Amended Claims Identified In Second Omnibus Claims Objection (Docket No. 6634) (the "January Order") that withdrew the Second Omnibus Claims Objection solely as it relates to the following claims: (a) Proof of Claim Number 12679, (b) Proof of Claim Number 12680, and (c) Proof of Claim Number 12683. (Docket No. 6634). Under the January Order, each of these proofs of claim were deemed to have been objected to by the Debtors pursuant to the Third Omnibus Claims Objection on the same basis as the proof of claims filed by each such party that were objected to by the Debtors in the Third Omnibus Claims Objection. The Response to the Third Omnibus Claims Objection was also deemed to apply to Proof of Claim Number 12679, Proof of Claim Number 12680, and Proof of Claim Number 12683.

WHEREAS, on the date hereof, to resolve the Third Omnibus Claims Objection with respect to Proofs of Claim Nos. 12678, 12679, 12680, 12681, 12682, and 12683, DAS LLC, Delphi, and EDS enter into this Settlement Agreement.

WHEREAS, pursuant that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by the Bankruptcy Court on June 29, 2006, DAS LLC and Delphi are authorized to consummate this Settlement Agreement only upon order of the Bankruptcy Court. (the "Approval Order")

WHEREAS, the Debtors shall file a motion with the Bankruptcy Court no later than May 11, 2007 seeking entry of the Approval Order at the Debtors' omnibus hearing scheduled for May 31, 2007.

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, DAS LLC, Delphi and EDS agree as follows:

1. Allowed General Unsecured Non-Priority Claim. DAS LLC and Delphi acknowledge and agree that EDS Corp. and EIS shall jointly hold Proof of Claim No. 12678 and such claim shall be allowed (as that term is used in 11 U.S.C. §502) as a prepetition general unsecured non-priority claim against (i) DAS LLC in the amount of Eleven Million, Six Hundred And Seventy-Eight Thousand, Eight Hundred And Thirteen Dollars And Ninety-Five Cents ($11,678,813.95) and (ii) Delphi in the amount of Four Million Dollars, Nine Hundred And Ninety-Nine Thousand, Nine Hundred And Ninety-Nine Dollars And Ninety-Three Cents ($4,999,999.93). EDS Corp. acknowledges and agrees that it shall be the voting claimant on behalf of itself and EIS on account of Proof of Claim No. 12678 in connection with any plan of reorganization of the Debtors (the "Plan of Reorganization") and the Debtors shall only have an obligation to solicit EDS Corp.'s

2

vote on account of Proof of Claim No. 12678. EIS acknowledges and consents to EDS Corp. voting on the Plan of Reorganization on behalf of EIS on account of Proof of Claim No. 12678. Furthermore, EDS Corp. shall accept on behalf of itself and EIS any and all distributions made under the Plan of Reorganization in connection with Proof of Claim No. 12678. EIS acknowledges and consents to EDS Corp.'s acceptance of any and all distributions made in connection with the Proofs of Claim. EIS hereby releases the Debtors of any liability on account of any distribution made to EDS Corp. on account of Proof of Claim No. 12678. EDS agrees that the Proofs of Claim Nos. 12679, 12680, 12681, 12682, and 12683 shall be expunged and disallowed in their entirety. For administrative convenience only, and without prejudice to EDS' rights against Delphi, Proof of Claim No. 12679 shall be expunged subject to the right of EDS to reassert Proof of Claim No. 12679 as set forth herein.

2. EDS' Right To Reassert Proof Of Claim No. 12679. This Settlement Agreement is without prejudice to EDS' right to reassert Proof of Claim No. 12679 against Delphi in an amount no greater than $16,678,813.88 and such reasserted claim shall relate back to the original date of filing and shall be subject to the agreements between the Debtors and EDS as set forth on the record of the Court's hearing held on November 30, 2006 and in the January Order. To the extent EDS reasserts Proof of Claim No. 12679, EDS must file such reasserted claim with the Bankruptcy Court and serve such reasserted claim on counsel for the Debtors and the claims agent in these chapter 11 cases. DAS LLC and Delphi acknowledge and agree that Proof of Claim No. 12679, if reasserted, shall be jointly held by EDS Corp. and EIS and (i) shall be allowed (as that term is used in 11 U.S.C. §502) against Delphi in an amount equal to $11,678,813.95 and (ii) shall be assertable against DAS LLC in an amount equal to $4,999,999.93, provided, however, that DAS LLC reserves the right to contest the allowance of Proof of Claim No. 12679 against DAS LLC, provided, further, however, DAS LLC and EDS agree that DAS LLC shall be permitted to contest only whether DAS LLC is an obligor liable for $4,999,999.93. EDS Corp. acknowledges and agrees that it shall be the voting claimant on behalf of itself and EIS on account of Proof of Claim No. 12679 in connection with the Plan of Reorganization and the Debtors shall only have an obligation to solicit EDS Corp.'s vote on account of Proof of Claim No. 12679. EIS acknowledges and consents to EDS Corp. voting on the Plan of Reorganization on behalf of EIS on account of Proof of Claim No. 12679. Furthermore, EDS Corp. shall accept on behalf of itself and EIS any and all distributions made under the Plan of Reorganization in connection with Proof of Claim No. 12679. EIS acknowledges and consents to EDS Corp.'s acceptance of any and all distributions made in connection with the Proofs of Claim. EIS hereby releases the Debtors of any liability on account of any distribution made to EDS Corp. on account of Proof of Claim No. 12679. If (i) (A) the Court confirms the Plan of Reorganization, and (B) the order confirming such Plan of Reorganization is final, has not been stayed or is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending and such Plan of Reorganization is consummated, and (ii) (A) the Plan of Reorganization provides for Substantive Consolidation of the assets and liabilities of Delphi and DAS LLC, or (B) under such a plan EDS Corp. and EIS receives a full recovery of its claim of $16,678,813.88 allowed in paragraph 1 herein, then EDS acknowledges and agrees that Proof of Claim No. 12679 may not be reasserted against

3

Delphi and/or DAS LLC and if already reasserted, shall, upon the effective date of the Plan of Reorganization, be expunged with prejudice.  In the event that the Plan of Reorganization does not provide for Substantive Consolidation, EDS Corp. and EIS each acknowledge and agree that they shall not receive a recovery, in the aggregate, in an amount greater than $16,678,813.88.  Solely for the purposes of this Settlement Agreement, a plan of reorganization that provides for Substantive Consolidation of the assets and liabilities of Delphi and DAS LLC shall be one under which claims against either Delphi's or DAS LLC's individual estate are deemed to be claims against the consolidated estate, such that the Proofs of Claim are deemed to be a single claim filed against the consolidated estate.

3. <u>Acknowledgement Of EDS' Rights</u>.  DAS LLC and Delphi each acknowledge and agree that nothing in this Settlement Agreement shall (A) prohibit EDS from asserting (i) any claims arising after the Petition Date out of any agreement or transaction existing or entered into among EDS, DAS LLC and Delphi, and/or each of their respective affiliates and subsidiaries and/or (ii) any rejection claims filed in accordance with paragraph 8 of the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof  (Docket No. 3206) and (B) similarly nothing shall impair the Debtors' ability to contest the same.

4. <u>Binding on Successors and Assigns</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns of EDS, Delphi, and DAS LLC to the extent provided by law and any reference to EDS, EDS Corp., EDS Mexico, and/or EIS contained herein shall also include any assignee(s), as applicable.

5. <u>Withdrawal Of Response.</u> EDS agrees that its Response to the Third Omnibus Claims Objection shall be withdrawn upon the effective date of this agreement.

6. <u>Governing Law.</u>   This Settlement Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, the Bankruptcy Code and the laws of the State of Michigan, without regard to conflicts of law principles.

7. <u>Representations And Warranties.</u>   The parties hereto acknowledge that they are executing this Settlement Agreement without reliance on any representations, warranties, or commitments other than those representations, warranties, and commitments expressly set forth in this Settlement Agreement.

8. <u>Entire Understanding.</u>  This Settlement Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof.  This Settlement Agreement may not be modified, altered, or amended except by an agreement in writing signed by the Debtors and EDS.

9. <u>Condition Precedent.</u>  This Settlement Agreement shall be effective on the date when the Approval Order shall become final and not subject to any stay or appeal.  The Debtors shall file a motion (the "<u>Motion</u>") for an order of the Bankruptcy Court approving this

4

Settlement Agreement pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure no later than May 11, 2007 scheduling the Motion to be heard at the Debtors' omnibus hearing scheduled for May 31, 2007.

10. <u>No Party Deemed Drafter.</u> This Settlement Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by (i) EDS and its counsel and (ii) the Debtors and their counsel. Therefore, any ambiguous language in this Settlement Agreement will not be construed against any particular party as the drafter of such language.

11. <u>Counterparts.</u>   This Settlement Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Settlement Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Settlement Agreement.

**Accepted and agreed to by:**

| **Delphi Corporation** | **Electronic Data Systems Corporation** |
|---|---|
| By: _____<br>Name:<br>Title:<br>Dated: _____ __, 2007 | By: _____<br>Name:<br>Title:<br>Dated: _____ __, 2007 |
| **Delphi Automotive Systems LLC** | **EDS Information Services L.L.C.** |
| By: _____<br>Name:<br>Title:<br>Dated: _____ __, 2007 | By: _____<br>Name:<br>Title:<br>Dated: _____ __, 2007 |
|  | **EDS de Mexico, S.A. de C.V.** |
|  | By: _____<br>Name:<br>Title:<br>Dated: _____ __, 2007 |