**Hearing Date And Time: June 26, 2007 at 10:00 a.m.**
**Response Date And Time: June 19, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                        :
     In re                    :     Chapter 11
                        :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                        :
                        :     (Jointly Administered)
          Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIM, AND (D) CLAIMS
SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND
<u>MODIFIED CLAIMS ASSERTING RECLAMATION</u>

("FIFTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not

Reflected On Debtors' Books And Records, (C) Untimely Claims And Untimely Tax Claim, And

(D) Claims Subject To Modification, Tax Claims Subject to Modification, And Modified Claims

Asserting Reclamation (the "Fifteenth Omnibus Claims Objection"), and respectfully represent

as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in

---

[1]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]   On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

_____

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

4

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

11.      On March 31, 2006, the Company outlined five key tenets of its transformation plan.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the Debtors must devise a workable solution to their current pension situation.

---

[4]      As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

12.    On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's goal of achieving consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an

amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

6

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.     On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors do not believe that these developments will

preclude the Debtors from filing a joint plan of reorganization and related documents with the

Court prior to the current expiration of the exclusivity period on July 31, 2007 or emerging from

chapter 11 reorganization this year.  The Debtors also confirmed that none of the parties entitled

to give notice of termination of the framework agreements had done so as of the date of this

filing and that these agreements remain effective as previously filed until modified or terminated.

15.     Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as the
world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

         16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),
501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)
Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice
Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order
established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or
wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),
against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such
Claim.

         17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the
claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date
by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a
proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets
and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed with
this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18,
2006) and (b) the persons and entities included in the notice database compiled by the Debtors,
but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date
Notices to more than 500,000 persons and entities.

         18.    In addition, the Debtors published the Bar Date Notice in the New York
Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),
USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions
of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

8

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed seven omnibus procedural

Claims objections[5] and six omnibus substantive Claims objections.[6]  Pursuant to such omnibus

---

[5]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006;
the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii)
Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection
(Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended
Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket
No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The
Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15,
2007; and the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P.
3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16,
2007; and the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P.
3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27,
2007.

[6]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By
Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate
Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006;
Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain
(a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records
(Docket No. 6100) on December 8, 2006; Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

*(cont'd)*

Claims objections, the Court has disallowed and expunged 8,845 Claims.  In addition, the

hearings with respect to approximately 480 Claims have been adjourned to future claims

hearings pursuant to the Claims Objection Procedures Order (as defined below) and another 769

Claims are subject to pending objections.

20.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

---

*(cont'd from previous page)*

502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected
On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007; Ninth
Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely
Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; and Eleventh
Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely
Claims, and (D) Claims Subject To Modification (Docket No. 7301) on March 16, 2007; and Thirteenth
Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a)
Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Protective
Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And Records, (e) Untimely Claims
An Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims Subject To Modification, And
Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) on April 27, 2007.

21.    In this Fifteenth Omnibus Claims Objection, the Debtors are objecting to 290 Proofs of Claim.[7]

<u>Relief Requested</u>

22.    By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) disallowing and expunging those Claims set forth on <u>Exhibit A</u> hereto because they contain insufficient documentation in support of the Claims asserted, (b) disallowing and expunging those Claims set forth on <u>Exhibit B-1</u> hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records, (c) disallowing and expunging those Claims set forth on <u>Exhibit B-2</u> hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records and were untimely filed pursuant to the Bar Date Order, (d) disallowing and expunging the Claims set forth on <u>Exhibit C-1</u> hereto because they were untimely filed pursuant to the Bar Date Order, (e) disallowing and expunging the Claim (as defined below) set forth on <u>Exhibit C-2</u> hereto because it is a claim filed by a taxing authority that was untimely filed pursuant to the Bar Date Order, (f) revising the asserted amount or classification, and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on <u>Exhibit D-1</u> hereto, (g) revising the asserted amount or classification, and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on <u>Exhibit D-2</u> hereto, which were filed by taxing authorities, and (h) revising the asserted amount and/or classification with respect to the Claims set forth on <u>Exhibit</u>

---

[7]    Contemporaneously with the Fifteenth Omnibus Claims Objection, the Debtors are filing the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (the "Fourteenth Omnibus Claims Objection"). In the Fourteenth Omnibus Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims and (b) are merely protective in nature. The Debtors are objecting to fifteen Proofs of Claim in the Fourteenth Omnibus Claims Objection.

D-3 hereto, some of which are also subject to an agreement between each Claimant with a Claim

set forth on Exhibit D-3 and the Debtors relating to the valid amount of each such Claimant's

reclamation demand, subject to certain reserved defenses, and some of which are deemed to have

consented to the Debtors' determination of the valid amount of the reclamation demand.

Objections To Claims

F.    Insufficiently Documented Claims

23.    During their Claims review, the Debtors discovered that certain Proofs of

Claim do not include sufficient documentation to support the claim asserted (the "Insufficiently

Documented Claims").  This deficiency in documentation has made it impossible for the Debtors

meaningfully to review the asserted Claims.  Although the Debtors contacted each Claimant

which filed an Insufficiently Documented Claim (other than those Claimants which filed a blank

proof of claim form), the Debtors received no additional documentation from such Claimants.[8]

24.    The burden of proof to establish a claim against an estate rests on the

Claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re

WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

---

[8]    Claimants which responded to the Debtors' communications and provided additional information are not
included as part of this objection.

<u>Armstrong Finishing, L.L.C.</u>, No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered <u>prima</u> <u>facie</u> valid); <u>In re United Cos. Fin. Corp.</u>, 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make <u>prima</u> <u>facie</u> case).  As a result of the failure of the Claimants identified on <u>Exhibit A</u> to provide sufficient documentation to permit an understanding of the basis for their Claims, those Claims do not make out a <u>prima</u> <u>facie</u> case against the Debtors.

25.     The Insufficiently Documented Claims either (a) fail to assert a Claim, (b) fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence of the Debtors' liability for the Claim.[9]

26.     Attached hereto as <u>Exhibit A</u> is a list of the Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the Claim.  In the event that this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claims at a later date on any basis whatsoever.

---

[9]    The Bar Date Order provides, in relevant part:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

Accordingly, the Debtors (a) object to the Insufficiently Documented Claims and (b) seek entry

of an order disallowing and expunging the Insufficiently Documented Claims in their entirety.

G.    Claims Not Reflected On The Debtors' Books And Records

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the

Debtors' books and records (the "Books And Records Claims").  In addition, the Debtors

determined that certain other Proofs of Claim also assert liabilities or dollar amounts that are not

owing pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant

to the Bar Date Order (the "Untimely Books And Records Claims"). The Debtors believe that the

parties asserting both Books And Records and Untimely Books And Records Claims are not

creditors of the Debtors.

28.    The bases for determining that the Debtors are not liable for an asserted

Claim include, but are not limited to, the following: (a) the Debtors' books and records do not

reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the

Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this

Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior

to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability

that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

29.    A Claimant's proof of claim is entitled to the presumption of prima facie

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at

*4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts

to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

30.     Attached hereto as <u>Exhibit B-1</u> is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto as <u>Exhibit B-2</u> is a list of the Untimely Books And Records Claims that the Debtors have also identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely Books And Records Claims not only because the Debtors have no liability in respect thereof, but also because the Claims were not timely filed pursuant to the Bar Date Order.[10]  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books And Records Claims and the Untimely Books And Records Claims at a later date on any basis whatsoever.

31.     Accordingly, the Debtors (a) object to the Books And Records Claims and the Untimely Books And Records Claims and (b) seek entry of an order disallowing and expunging both the Books And Records Claims and the Untimely Books And Records Claims in their entirety.

H.     <u>Untimely Claims</u>

32.     During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim were received by the Debtors after the Bar Date (the "Untimely Claims").  The Debtors object to such Untimely Claims on the basis that they were not timely filed pursuant to the Bar Date Order.  Attached hereto as <u>Exhibit C-1</u> is a list of Untimely Claims.  The Debtors also determined that a Proof of Claim filed by the City of McAllen, Texas, a taxing authority, was received by the Debtors after the Bar Date (the "Untimely Tax Claim").  Identified on <u>Exhibit C-2</u> hereto is the Untimely Tax Claim.

---

[10]     The Untimely Books and Records Claims listed on <u>Exhibit B-2</u> hereto were not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) (the "Claims Timeliness Motion").

Accordingly, the Debtors (a) object to the Untimely Claims and the Untimely Tax Claim[11] and (b)

seek entry of an order disallowing and expunging the Untimely Claims and the Untimely Tax

Claim.

I.    Claims Subject To Modification

33.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims (a) state the incorrect amount or are overstated, including as a

result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against

the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the

"Claims Subject To Modification").

34.    Although in this Fifteenth Omnibus Claims Objection the Debtors do not

seek to disallow and expunge the Claims Subject To Modification, based on an initial review the

Debtors have determined that their liability with respect to each such Claim does not exceed the

dollar amount set forth on Exhibit D-1 hereto.  Moreover, in some cases, the Debtors have

determined that such Claims should be reclassified as set forth on Exhibit D-1 hereto.  Finally, in

some cases, the Debtors have determined that such Claims should be asserted against a different

Debtor entity, as indicated on Exhibit D-1 hereto by a change in the applicable case number.

The bases for placing a Claim in the Claims Subject To Modification category of objection

include, but are not limited to, the following: the asserted Claim (a) does not account for amounts

that may have been paid or credited against such Claim prior to the commencement of these

cases, (b) may include postpetition liabilities, (c) does not account for amounts that may have

been paid or credited against such Claim following the commencement of these cases, (d) was

---

[11]    None of the Untimely Claims listed on Exhibit C-1 and the Untimely Tax Claim listed on Exhibit C-2 hereto
was included as part of the Claims Timeliness Motion.

docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority or secured claim. Thus, the Debtors seek to (i) convert the amount of each Claim Subject To Modification to a fully liquidated, U.S.-denominated amount consistent with the Debtors' books and records and/or the liquidated amount requested by the Claimant (thus eliminating the unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the Claim is asserted, and/or (iii) appropriately reclassify the Claim.

35.    As stated above, a Claimant's Proof of Claim is entitled to the presumption of <u>prima facie</u> validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'" <u>WorldCom</u>, 2005 WL 3832065, at *4 (quoting <u>Allegheny</u>, 954 F.2d at 174). As with the Unsubstantiated Claims, the Debtors' books and records refute that certain of the claims asserted in each Claim Subject to Modification are actually owed by any of the Debtors.

36.    Set forth on <u>Exhibit D-1</u> hereto is a list of Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against a different Debtor than the one identified by the Claimant. For each Claim Subject To Modification, <u>Exhibit D-1</u> reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[12] and the proposed modified dollar amount and classification for the Claim, and the Debtor against which the Claim should be asserted, in a column titled "Claim As Modified."

37.    The Debtors object to the amount, classification, and/or identity of the Debtor for each Claim Subject To Modification listed on <u>Exhibit D-1</u> and request that each such Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

---

[12]    The Asserted Claim Amount on <u>Exhibits D-1</u>, <u>D-2</u>, and <u>D-3</u> reflects only asserted liquidated claims.

Modified" column of <u>Exhibit D-1</u>.  Thus, no Claimant listed on <u>Exhibit D-1</u> would be entitled to

(a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on <u>Exhibit D-1</u>, (b) assert a classification that is

inconsistent with the classification that is listed in the "Claim As Modified" column, and/or (c)

assert a Claim against a Debtor other than that whose case number is listed in the "Claim As

Modified" column on <u>Exhibit D-1</u>, subject to the Debtors' right to further object to each such

Claim Subject To Modification.  For clarity, <u>Exhibit D-1</u> refers to the Debtor entities by case

number and <u>Exhibit E</u> displays the formal name of fifteen Debtor entities and their associated

bankruptcy case numbers referenced in <u>Exhibit D-1</u>.

        38.     The inclusion of the Claims Subject To Modification on <u>Exhibit D-1</u>,

however, does not reflect any view by the Debtors as to the ultimate validity of any such Claim.

The Debtors therefore expressly reserve all of their rights to further object to any or all of the

Claims Subject To Modification at a later date on any basis whatsoever.

        39.     Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order

modifying the Claims Subject To Modification to reflect the Modified Total, classification for

the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on <u>Exhibit</u>

<u>D-1</u>.

       (i)    <u>Tax Claims Subject To Modification</u>

        40.     In addition, the Debtors have also determined that certain Proofs of Claim

filed by taxing authorities (the "Tax Claims") (a) are overstated, and/or (b) were filed and

docketed against the wrong Debtors, and/or (c) assert secured or priority status without sufficient

documentation to support such status (collectively, the "Tax Claims Subject To Modification").

41.     Set forth on Exhibit D-2 hereto is a list of Tax Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For each Tax Claim Subject To Modification, Exhibit D-2 reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for the Tax Claim, and the Debtor against which the Tax Claim should be asserted, in a column titled "Claim As Modified."

42.     The Debtors object to the amount, classification, and/or identity of the Debtor for each Tax Claim Subject To Modification listed on Exhibit D-2 and request that each such Claim be revised to reflect the amount, classification, and Debtor listed in the "Tax Claim As Modified" column of Exhibit D-2.  Thus, no Claimant listed on Exhibit D-2 would be entitled to (a) recover for any Tax Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit D-2, (b) assert a classification that is inconsistent with the classification that is listed in the "Claim As Modified" column, and/or (c) assert a Claim against a Debtor other than that whose case number is listed in the "Claim As Modified" column on Exhibit D-2, subject to the Debtors' right to further object to each such Tax Claim Subject To Modification.  For clarity, Exhibit D-2 refers to the Debtor entities by case number and Exhibit E displays the formal name of fifteen Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D-2.

43.     Accordingly, the Debtors (a) object to the asserted amount, classification, and/or Debtor for each Tax Claim Subject To Modification and (b) seek an order modifying the Tax Claims Subject To Modification to reflect the Modified Total, classification, and/or Debtor against which such Claim should be asserted, as set forth on Exhibit D-2.

19

(ii)    Modified Claims Asserting Reclamation

44.    In addition, the Debtors have also determined that certain Claims (the "Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b) assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii) each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement or consent to the amount pursuant to by the Reclamation Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses") with respect to the reclamation demand are valid.

45.    Set forth on Exhibit D-3 hereto is a list of Modified Claims Asserting Reclamation that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim Asserting Reclamation, Exhibit D-3 reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for Modified Claim Asserting Reclamation, and the Debtor against which such Claim should be asserted, in a column titled "Claim As Modified."

46.    The Debtors object to the amount, classification, and/or identity of the Debtor for each Modified Claim Asserting Reclamation listed on Exhibit D-3 and request that each such Claim be revised to reflect the amount, classification, and identity of the Debtor listed in the "Claim As Modified" column of Exhibit D-3.  Thus, no Claimant listed on Exhibit D-3

20

would be entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit D-3, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent with the classification that is listed in the "Claim As Modified" column, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity, Exhibit D-3 refers to the Debtor entities by case number and Exhibit E displays the formal name of fifteen Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D-3.

47.    Accordingly, the Debtors (a) object to the amount, classification, and/or identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order modifying the Modified Claims Asserting Reclamation to reflect the Modified Total, classification, and/or identity of the Debtor against which such Claim should be asserted, as set forth on Exhibit D-3.

Separate Contested Matters

48.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Fifteenth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Fifteenth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Fifteenth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

<u>Reservation Of Rights</u>

49.      The Debtors expressly reserve the right to amend, modify, or supplement
this Fifteenth Omnibus Claims Objection and to file additional objections to the Proofs of Claim
or any other Claims (filed or not) which may be asserted against the Debtors, including without
limitation the right to object to any Claim on the basis that it has been asserted against the wrong
Debtor entity.  Should one or more of the grounds for objection stated in this Fifteenth Omnibus
Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds
or on any other grounds that the Debtors discover during the pendency of these cases.  In
addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that
such Claim has been paid.

<u>Responses To Objections</u>

50.      Responses to the Fifteenth Omnibus Claims Objection are governed by the
provisions of the Claims Objection Procedures Order.  The following summarizes the provisions
of that Order, but is qualified in all respects by the express terms thereof.

J.      <u>Filing And Service Of Responses</u>

51.      To contest an objection, responses (a "Response"), if any, to the Fifteenth
Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of
Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and
the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance
with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing
system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk
(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based
word processing format), (d) be submitted in hard copy form directly to the chambers of the
Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

22

for the Southern District of New York, One Bowling Green, Room 610, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on June 19, 2007.**

K.    <u>Contents Of Responses</u>

52.    Every Response to this Fifteenth Omnibus Claims Objection must contain

at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; <u>provided</u>,
<u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided</u> <u>further</u>, <u>however</u>, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

L.    <u>Timely Response Required</u>

53.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

23

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on June 26,

2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection

Procedures Order will apply to all Responses and hearings arising from this Fifteenth Omnibus

Claims Objection.

54.    Only those Responses made in writing and timely filed and received will

be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Fifteenth

Omnibus Claims Objection and who is served with the Fifteenth Omnibus Claims Objection fails

to file and serve a timely Response in compliance with the Claims Objection Procedures Order,

the Debtors may present to the Court an appropriate order seeking relief with respect to such

Claim consistent with the relief sought in the Fifteenth Omnibus Claims Objection without

further notice to the Claimant, provided that, upon entry of such an order, the Claimant will

receive notice of the entry of such order as provided in the Claims Objection Procedures Order;

provided further, however, that if the Claimant files a timely Response which does not include

the required minimum information required by the Claims Objection Procedures Order, the

Debtors may seek disallowance and expungement of the relevant Claim or Claims only in

accordance with the Claims Hearing Procedures Order.

55.    To the extent that a Claim would be subject to estimation pursuant to

section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with

the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or

partially unliquidated and (b) provides the amount that the Claimant believes would be the

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,

as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection</u> <u>Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted</u> <u>Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the</u> <u>Bankruptcy Code for all purposes other than allowance, but including voting and establishing</u> <u>reserves for purposes of distribution, subject to further objection and reduction as appropriate</u> <u>and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the Claims Objection Procedures Order.

<u>Replies To Responses</u>

56.    Replies to any Responses will be governed by the Claims Objection Procedures Order.

<u>Service Of Fifteenth Omnibus Claims Objection Order</u>

57.    Service of any order with regard to this Fifteenth Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

58.    Questions about this Fifteenth Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton). Questions regarding the amount of a Claim or the filing of a Claim should be directed to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the</u> <u>Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

59.     Notice of this Objection has been provided in accordance with the

Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418),

and the Claims Objection Procedures Order.

60.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Fifteenth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of

Objection To Claim to be sent to the Claimants listed on <u>Exhibits A</u>, <u>B-1</u>, <u>B-2</u>, <u>C-1</u>, and <u>C-2</u> is

attached hereto as <u>Exhibit F</u>.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on <u>Exhibits  D-1</u>, <u>D-2</u>, and <u>D-3</u> is attached hereto as <u>Exhibit G</u>.  Claimants will

receive a copy of this Fifteenth Omnibus Claims Objection without <u>Exhibits A</u> through <u>D-3</u>

hereto.  Claimants will nonetheless be able to review <u>Exhibits A</u> through <u>D-3</u> hereto free of

charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light

of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

61.     Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

26

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

granting the relief requested herein and (b) granting the Debtors such other and further relief as is

just.

Dated:    New York, New York
          May 22, 2007

                                SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP


                                By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606

                                    - and -


                                By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036

                                Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

27