UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

**In re:**

**DELPHI CORPORATION, et al.,**

          **Debtors.**

_____/

Chapter 11

Case No. 05-44481

**RESPONSE TO DEBTORS' THIRTEENTH OMNIBUS OBJECTION
(SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED.R.BANKR.P. 3006
TO PROOF OF CLAIM NO. 11129 FILED BY CROWN ENTERPRISES, INC.**

    Crown Enterprises, Inc. ("Crown"), by its counsel, Steinberg Shapiro & Clark, files this response to Debtors' Thirteenth Omnibus Objection to Proof of Claim No. 11129 Filed by Crown (the "Objection"), and states as follows:

**BUENA VISTA LEASE**

    1.    On or about November 1, 1979, Wings-Four entered into a lease of certain real property located at 3801 Holland Road, Buena Vista Township, Michigan (the "Real Property") to General Motors Corporation ("GM") (the "Buena Vista Lease", attached as Exhibit A.)

    2.    Pursuant to Buena Vista Lease, GM agreed to pay a pro rata share of all charges for water, gas, heat and electricity. *See Ex. A* at § 22. The pro rata share to be determined based on the proportion of square feet leased bears to the total number of square feet in the property. *Id.*

    3.    Pursuant to the Buena Vista Lease, GM agreed to pay a pro rata share of all ". . . increases in real estate taxes . . . over an above those levied and paid for [in] the year 1979. . ." *See Ex. A* at § 24.

4. Pursuant to the Buena Vista Lease, GM agreed to "... not misuse the premises so that they may be returned to the Lessor in as good order and condition as when delivered to the Lessee, excepting ordinary wear and tear. . ." *See Ex. A* at § 29.

5. On or about January 20, 1981, Wings-Four and GM executed an amendment to the Buena Vista Lease, deleting clause 13 of the Buena Vista Lease, but in all other respects ratifying and confirming the Buena Vista Lease. *January 20, 1981 Amendment* attached as Exhibit B.

6. On or about October 29, 1981, GM exercised its option to extend the Buena Vista Lease an additional three years on the same terms and conditions. *October 29, 1981 Letter* attached as Exhibit C.

7. On or about November 26, 1984, GM exercised its option to extend the Buena Vista Lease an additional three years on the same terms and conditions. *November 26, 1984 Letter* attached as Exhibit D.

8. On or about December 29, 1986, Wings-Four assigned its rights and interest in the Buena Vista Lease to Central Transport, Inc. *December 29, 1986 Lease Assignment* attached as Exhibit E.

9. On or about July 19, 1988, Central Transport and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1991 and increasing the square foot area leased by GM. *July 19, 1988 Lease Amendment* attached as Exhibit F.

10. On or about July 1, 1991, Central Transport and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1994. *July 1, 1991 Lease Amendment* attached as Exhibit G. The July 1, 1991 Lease Amendment ratified and

confirmed the Buena Vista Lease, including GM's obligation to pay taxes, and utilities and increased the yearly rent.

11.   On or about December 1, 1994, Crown, successor in interest to Central Transport, Inc., and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 1994. *December 1, 1994 Lease Amendment* attached as Exhibit H. Except for an increase in square feet leased and rental increase, the December 1, 1994 Lease Amendment ratified and confirmed the Buena Vista Lease.

12.   On or about June 23, 1997, Crown and GM executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 2000. *June 23, 1997 Lease Amendment* attached as Exhibit I. The June 23, 1997 Lease Amendment ratified and confirmed the Buena Vista Lease, including GM's obligation to pay taxes, and utilities and increased the yearly rent.

13.   On or about May 24, 2000, Crown and Delphi Automotive Systems LLC ("Delphi"), successor in interest to GM, executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 2003. *May 24, 2000 Lease Amendment* attached as Exhibit J. Pursuant to the May 24, 2000 Lease Amendment, Delphi agreed that "[t]enants proportionate share of the taxes, services&utilities, insurance, and maintenance shall be one hundred percent (100%)." The May 24, 2000 Lease Amendment ratified and confirmed the Buena Vista Lease, including Delphi's obligation to pay taxes, and utilities and increased the yearly rent.

14.   In May 2003, Crown and Delphi executed a certain Lease Amendment extending the Buena Vista Lease an additional three years to May 31, 2006. *May 2003 Lease Amendment* attached as Exhibit K. The May 2003 Lease Amendment ratified and confirmed the Buena Vista Lease.

## **PROOF OF CLAIM**

15. On July 26, 2006, Crown filed a Proof of Claim, denoted as Claim No. 11129, in the amount $269,135.33. The Proof of Claim included a detailed statement of Crown's claim for (1) unpaid utilities , (2) unpaid property taxes and (3) estimated costs to repair damages to the Real Property. *Proof of Claim* attached as Exhibit L.

16. Upon request, Crown furnished a copy of all unpaid utility bills to a representative of Delphi. The previously produced unpaid utility bills are attached as Exhibit M.

17. Upon request, Crown furnished a copy of all unpaid tax bills to a representative of Delphi. The previously produced unpaid tax bills are attached as Exhibit N.

18. Upon request, Crown furnished a copy of an estimate for the repairs to the Real Property to return the Real Property to the condition it was in when delivered to GM, Delphi's predecessor in interest, excepting ordinary wear and tear. A copy of that previously produced estimate is attached as Exhibit O.

19. Pursuant to the Objections and attached Exhibits, Crown's Proof of Claim was listed on Exhibit B-1, as a "Claim Not Reflected on the Debtor's Books and Records."

20. Pursuant to the Objection, the Debtor objected to Crown's Proof of Claim on the sole grounds that Debtor's books and records do not reflect the existence of the Claim or of the Claimant asserting the Claim.

21. Pursuant to the Buena Vista Lease, as confirmed and ratified by each and every Lease Amendment, and the May 24, 2000 Lease Amendment, Delphi is obligated to pay 100% of all charges for water, gas, heat and electricity and all real estate taxes.

22. Pursuant to the Buena Vista Lease, as confirmed and ratified by each and every Lease Amendment, and the May 24, 2000 Lease Amendment, Delphi was obligated to return the Real Property to Crown in as good order and condition as when delivered to the GM, Delphi's predecessor in interest, excepting ordinary wear and tear.

23. Pursuant to the Buena Vista Lease, as confirmed and ratified by each and every Lease Amendment, Delphi is liable to Crown in the amount of $269,135.33 for the (1) unpaid utilities, (2) unpaid property taxes and (3) estimated costs to repair damages to the Real Property as set forth in Crown's *Proof of Claim*.

24. Beyond mere denial, Debtor has not presented sufficient evidence to over come the presumption of *prima facie* validity of Crown's Proof of Claim pursuant to Fed.R.Bank.P. 3001(f). As such, the Debtor's objection should be overruled.

WHEREFORE, for the reasons set forth above, Crown Enterprises, Inc., by its counsel, Steinberg Shapiro & Clark, requests the Court deny the Debtors' Thirteenth Omnibus Objection to Proof of Claim No. 11129 Filed by Crown and allow Crown's Proof of Claim as a general unsecured claim in the amount of $269,135.33.

        STEINBERG SHAPIRO & CLARK

        /s/ Mark H. Shapiro
        Mark H. Shapiro Michigan Bar No. (P43134)
        Geoffrey T. Pavlic Michigan Bar No. (P53770)
        Attorney for Crown Enterprises, Inc.
        24901 Northwestern Highway
        Suite 611
        Southfield, MI 48075
        (248) 352-4700

Date:  May 23, 2007