| | |
|---|---|
| BURR & FORMAN LLP<br>420 North 20th Street<br>Suite 3400<br>Birmingham, Alabama 35203<br>(205) 251-3000<br>Michael Leo Hall | Hearing Date and Time: May 31, 2007 at 10:00 a.m.<br>Response Date and Time: May 24, 2007 at 4:00 p.m. |

Attorneys for Creditor
WACHOVIA BANK, NATIONAL ASSOCIATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

------------------------------------------

**RESPONSE OF WACHOVIA BANK, NATIONAL ASSOCIATION, TO THE DEBTORS' THIRTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C) PROTECTIVE INSURANCE CLAIMS, (D) INSURANCE CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (E) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIMS, AND (F) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND CLAIMS SUBJECT TO MODIFICATION AND RECLAMATION AGREEMENT**

    **COMES NOW** Wachovia Bank, National Association, successor by merger to SouthTrust Bank ("Wachovia"), and hereby responds (this "Response") to the *Debtors' Thirteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected on Debtors' Books and Records, (E) Untimely Claims and Untimely Tax Claims, and (F) Claims Subject to Modification and Reclamation Agreement* (the "Thirteenth Omnibus Claims Objection"). In support of its Response, Wachovia relies on its timely filed proofs of claims, its

1571577 v2

filings in this case, its evidentiary submission in support of its position in this case,[1] the exhibits hereto, and states as follows:

## BACKGROUND

1. On March 3, 2003, Wachovia filed suit (the "State Court Action") against Delphi Corporation, Delphi Automotive Systems USA, LLC, Delphi Automotive Systems, LLC, Delphi Packard, Delphi Packard Electric Systems, Delphi Energy & Chassis Systems, and Delphi Safety and Interior Systems (collectively, "Delphi") in the Circuit Court of the Second Judicial District of Hinds County, Mississippi (the "State Court"), asserting claims for misrepresentation, suppression, conspiracy, breach of covenants, tortious interference with business relationship, breach of duty of good faith and fair dealing, negligence and promissory estoppel and seeking compensatory damages, attorneys' fees and costs, and punitive damages. The State Court Action centered around financial accommodations made by Wachovia to Lextron Corporation and Lextron Automotive, LLC (together, "Lextron")--primarily a principal advance in the amount of $800,000.00 made by Wachovia to Lextron and Wachovia's forbearance from collecting sums owed by Lextron--which were made at the request of Delphi and in reliance on misrepresentations made by Delphi.

2. On October 8 and 14, 2005, the Debtors filed voluntary petitions for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), staying litigation of Wachovia's claims against Delphi in the State Court Action.

3. The Court has ordered the joint administration of the Debtors' chapter 11 cases (the "Bankruptcy Case"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

---

[1] *See* Docket No. 7740.

1571577 v2
2

4.      On April 12, 2006, the Court entered its *Order Under 11 U.S.C. §§ 107(b), 501, 502, and 1111(a) and Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), and 5005(a) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* (the "Bar Date Order"), setting July 31, 2006 as the general bar date (the "Bar Date") for filing proofs of claim against the Debtors.

5.      Prior to the expiration of the Bar Date, Wachovia timely filed identical proofs of claims against two of the Debtors, Delphi Corporation and Delphi Automotive Systems, LLC ("Delphi Automotive"), each in the amount of $6,656,624.92. A true and correct copy of the proof of claim filed against Delphi Corporation (the "Delphi Corporation POC") is attached hereto as **Exhibit A**.[2] A true and correct copy of the proof of claim filed against Delphi Automotive (the "Delphi Automotive POC," and together with the Delphi Corporation POC, the "Proofs of Claim") is attached to hereto as **Exhibit B**.[3]

6.      In its Proofs of Claim, Wachovia asserts pre-petition claims for damages against Delphi Corporation and Delphi Automotive for misrepresentation, suppression, conspiracy, breach of covenants, tortious interference with business relationship, breach of duty of good faith and fair dealing, negligence and promissory estoppel, incorporating and relying on the factual allegations which form the basis of its complaint against Delphi in the State Court Action as the basis for Wachovia's claims in the Bankruptcy Case.

7.      Summarizing the documents attached to the Proofs of Claim, the factual allegations supporting Wachovia's claims in the Bankruptcy Case include the following. Wachovia made in excess of seven million dollars in loans (the "Loans") to Lextron, an

---

[2] Claim No. 14912.

[3] Claim No. 14913.

automotive supplier company located in Mississippi. Delphi was Lextron's largest customer, comprising approximately 85% of Lextron's business. In late 2002 to early 2003, Lextron began experiencing financial difficulties and defaulted on the Loans. Lextron required additional capital and forbearance by Wachovia in order to survive. While Wachovia was considering its options, it was contacted by Delphi. Delphi knew that Wachovia was Lextron's bank and also knew that additional capital and forbearance by Wachovia was necessary for the business operations of Lextron to continue. With this knowledge, Delphi requested that Wachovia not only forbear from exercising its rights in and to its collateral but also to loan additional funds to Lextron. Delphi orally pledged to continue to do business with Lextron in order to induce Wachovia to make the requested financial accommodations to Lextron. When Delphi subsequently provided these assurances to Wachovia in writing, Wachovia loaned Lextron an additional $800,000. Absent these assurances, Wachovia would not have extended Lextron $800,000 in additional credit. All the while, Delphi was simply buying time until it could re-source the business and terminate Lextron as a supplier. It was critical to Delphi that Lextron continue to supply products because an interruption in Delphi's "just-in-time" delivery system would have shut down Delphi's production line. A few weeks after giving the written assurances to Wachovia, Delphi executed its plan and terminated Lextron. Lextron immediately lost 85% of its business and was unable to repay the Loans to Wachovia.

8.      The amount claimed in the Proofs of Claim can be broken down as compensatory damages in the amount of the $800,000.00 advance made to Lextron, which remains unpaid, and

$166,750.68 in accrued and unpaid interest (as of the petition date) on the advance, plus attorneys' fees and costs[4] and punitive damages.[5]

9.  In the Debtors' *Twelfth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Duplicate and Amended Claims and (B) Equity Claims* (the "Twelfth Omnibus Claims Objection"), the Debtors object to the Delphi Corporation POC as duplicative of the Delphi Automotive POC.  The Debtors seek to have the Delphi Corporation POC disallowed and expunged--subject to the qualification that the Debtors will not subsequently challenge the Delphi Automotive POC on the grounds that it is asserted against the incorrect entity if the disallowed and expunged Delphi Corporation POC was filed against the correct entity.  Wachovia does not oppose the relief requested in the Twelfth Omnibus Claims Objection.

10.  In the Debtors' Thirteenth Omnibus Objection, the Debtors object to the Delphi Automotive POC on the grounds that the Delphi Automotive POC asserts liabilities or dollar amounts not reflected in the Debtors' books and records.

11.  The Debtors do not identify a specific basis for concluding that no debt is owed to Wachovia, but merely state that the possible bases for the Debtors' determination that there is no liability to Wachovia include the following:  (a) the Debtors' books and records do not reflect the existence of the asserted claim or of the claimant asserting such claim; (b) the Debtors' books

---

[4] *See Check Cashiers Express, Inc. v. Crowell*, 950 So.2d 1035, 1043 (Miss. Ct. App. February 20, 2007) ("Where the conduct of the party 'was of a nature such as to make the awarding of punitive damages appropriate,' the 'actual awarding of punitive damages is not a prerequisite for the awarding of attorney fees.' The 'trial judge may validly find that . . . the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore determine that attorney fees should be awarded.'")(citing *Aqua-Culture Tech., Ltd. v. Holly*, 677 So.2d 171, 184-85 (Miss. 1996)).

[5] Wachovia asserts that five times the amount of principal and interest is an appropriate award of punitive damages under the circumstances of this case.

and records reflect that the Claim has been paid pursuant to a prior order of this Court; (c) the Debtors' books and records reflect that the asserted claim was properly paid prior to the commencement of the Debtors' cases; and/or (d) the claim constitutes a post-petition liability that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

12. For the following reasons, Wachovia opposes the relief requested in the Thirteenth Omnibus Claims Objection and states that the Delphi Automotive POC is not due to be disallowed or expunged.

## RESPONSE

### A. Prima Facie Validity of Proofs of Claim

13. A proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

14. "Initially a claimant must allege facts sufficient to support a claim. In many instances, the mere filing of a proof of claim is sufficient to carry the day. The burden of going forward then shifts to the objector to produce evidence negating the prima facie validity of the filed claim." *In re Waterman S.S. Corp.*, 200 B.R. 770, 774-75 (Bankr. S.D. N.Y. 1996); *see also In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D. N.Y. 1997) ("Any party objecting to the claim has the burden of putting forth evidence sufficient to negate the prima facie validity of the claim by refuting one or more of the facts in the filed claim.").

15. The facts alleged by Wachovia in the Proofs of Claim, as well as in this pleading and supporting evidentiary materials, are sufficient to support a claim against Delphi.

16. Notably, the Debtors do not argue that Wachovia has failed to allege sufficient facts to support a claim, but instead contend that the unsubstantiated allegation that Wachovia's claims do not appear in the books and records of the Debtors constitutes sufficient evidence to negate the prima facie validity of the claim.

17. The Debtors have presented no evidence refuting the facts alleged in the Delphi Automotive POC.

18. Furthermore, the fact that the State Court Action was pending for over two years prior to the commencement of the Bankruptcy Case and the fact that SouthTrust Bank, predecessor by merger to Wachovia, is listed as an unsecured creditor in the sworn bankruptcy schedules of Delphi Automotive,[6] shows that the Debtors' assertion that Wachovia's claims are not reflected in their books and records is tenuous at best.

19. Accordingly, the Debtors' request to disallow and expunge the Delphi Automotive POC is due to be denied.

**B. Additional Documentation Establishing Prima Facie Validity of the Proofs of Claim**

20. As further support for the allowance of Wachovia's claims in the Bankruptcy Case, and so as to comply with the requirements of the Court's December 6, 2006 *Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (I) Dates for Hearings Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims* (the "Claims Procedure Order"), included below is a summary of events and documents evidencing the tortious acts giving rise to Delphi's liability to Wachovia.

21. On January 7, 2003, several Delphi executives held an internal conference call at Delphi to discuss Lextron's financial difficulties. Mr. Larry Graves, an employee of Delphi, has

---

[6] A true and correct copy of page 958 of the bankruptcy petition of Delphi Automotive, is attached hereto as **Exhibit C**. This excerpt shows that SouthTrust Bank is scheduled as having an unliquidated claim against Delphi Automotive and references a case number associated with the State Court Action. The case number referenced is the civil action number assigned to the State Court Action upon removal to the United States District Court for the Southern District of Mississippi. On the motion of Wachovia, the State Court Action was remanded to the State Court.

testified that Delphi began the process of launching a contingency plan for pulling its business from Lextron on this date.[7] See Graves Deposition, Exhibit D, pp. 65-78. After this conference call, Mr. Sidney Johnson, Director of Purchasing for Delphi Automotive, called Mr. Andy Raine, the Wachovia officer responsible for the Lextron account. Mr. Johnson asked that Wachovia loan additional money to Lextron to ensure that Lextron could make payroll. Mr. Raine told Mr. Johnson that Wachovia would not loan additional money to Lextron without assurances from Delphi that Delphi would continue its business relationship with Lextron so that Lextron could stay in business. Mr. Johnson orally gave Mr. Raine these assurances.

22. On January 8, 2003, Mr. Greg Naylor, another Delphi employee, also discussed with Mr. Raine Lextron's financial status and the status of Lextron's relationship with Delphi. Mr. Naylor again specifically confirmed that Delphi would continue to do business with Lextron and requested that Wachovia lend additional money to Lextron and forbear from taking any collection action. Of course, Mr. Naylor did not tell Mr. Raine about Delphi's "contingency plan," which was actually just a euphemism for Delphi's plan to terminate Lextron. Mr. Raine requested written confirmation of Delphi's commitment to Lextron.[8] See Naylor Deposition, Exhibit E, pp. 106-117.

23. That same day, Mr. Naylor drafted a memorandum to Mr. Raine which provided that Delphi's focus was to "maintain and grow Lextron Corporation as a valued supplier" and that "Delphi has no intentions of exiting Lextron."[9] See Nayor Deposition, Exhibit E, pp. 117-128;

---

[7] An excerpt of the deposition of Larry Graves (the "Graves Deposition") in the State Court Action is attached hereto as **Exhibit D.**

[8] An excerpt from the deposition of Greg Naylor (the "Naylor Deposition") in the State Court action is attached hereto as **Exhibit E.**

[9] An e-mail from Greg Naylor dated January 8, 2003 and attaching the described memorandum (the "Nayor E-mail") is attached hereto as **Exhibit F.**

*see also* Naylor Email, Exhibit F. Mr. Naylor has testified that he did not immediately send the memo to Mr. Raine because (1) he was afraid Mr. Raine would actually rely on his representations, and (2) he was concerned because what he was telling Mr. Raine, both orally and in writing, was not really true. *See* Naylor Deposition, Exhibit E, pp. 129-134. In other words, Mr. Naylor knew that Delphi was developing a plan to terminate Lextron and that his representations to Mr. Raine were not honest.

24. Instead of sending the memo as written by Mr. Naylor, the memo was modified by Ms. Martha (Marti) Everett, who was not a party to the telephone conversation between Mr. Naylor and Mr. Raine.[10] *See* Naylor Deposition, Exhibit E, pp. 135-147; *see also* 1-9 Everett Email, Exhibit G. Ms. Everett left Mr. Naylor's name as the sender of the memo, but never even provided Mr. Naylor with a copy of her updated draft of his memo. *See* Naylor Deposition, Exhibit E, pp. 135-147; *see also* 1-9 Everett Email, Exhibit G.

25. On January 9, 2003, Mr. Graves sent the memorandum to Mr. Raine via e-mail (the "Delphi Memo") with copies to Mr. Johnson, Mr. Naylor and Ms. Everett.[11] The Delphi Memo provided that "I am writing you [Wachovia] this memo to re-iterate Delphi-Packard's (Delphi-P) focus to maintain Lextron Corporation as a supplier. We have the resources to assist Lextron, including a reduction in our payment terms to Net 15, during its cash flow shortfall." Delphi Memo, Exhibit H. The Delphi Memo also specifically asked that "because of Delphi-P's support and interest in Lextron, Delphi-P is requesting Wachovia to continue its support of Lextron." *Id*. The Delphi Memo was sent at Mr. Johnson's direction by Mr. Graves. *See* Graves Deposition, Exhibit D, p. 106. Mr. Graves was shown as the author of the Delphi Memo, even

---

[10] An e-mail from Martha Everett dated January 9, 2003 and attaching the described memorandum (the "1-9 Everett E-mail) is attached hereto as **Exhibit G**.

[11] A true and correct copy of the Delphi Memo is attached hereto as **Exhibit H**.

though he was not a party to the conversations Mr. Johnson and Mr. Naylor had with Mr. Raine. *See* Naylor Deposition, Exhibit E, pp. 146-147. After sending the Delphi Memo, Mr. Graves then called Mr. Raine to ensure that Mr. Raine had received it. *See* Graves Deposition, Exhibit D, pp. 96-104.

26. On January 15, 2003, in reliance on Delphi's commitment and the Delphi Memo, Wachovia and Lextron entered into an Amended Forbearance Agreement whereby Wachovia agreed to forbear from taking certain actions against Lextron and Doty. Also in reliance on Delphi's commitment and the Delphi Memo, Wachovia increased Lextron's revolving line to $4,000,000 and loaned Lextron an additional $800,000 as part of that increase.

27. Unbeknownst to Wachovia and in direct contravention of the Delphi Memo, Delphi was plotting the entire time to terminate its relationship with Lextron but simply needed to buy time to find a new supplier so that there was no interruption in Delphi's supply chain. Mr. Naylor testified that this plan was hatched as early as December 6, 2002. *See* Naylor Deposition, Exhibit E, pp. 90-100. Delphi's own documents bear this out. For example, on January 15, 2003, Delphi purchasing liaison Kenneth Jelley sent an e-mail to other Delphi employees, including Mr. Naylor, referencing Delphi's plan to terminate Lextron. The e-mail provided "[o]ur standard practice, when moving business/tools from one source to another is - have the existing source build a 3 week bank of inventory before we move. The direction is not to use the standard practice?"[12] 1-15 Jelley Email, Exhibit I. By January 28, Mr. Jelley sent another e-mail to assure his Delphi co-conspirators that Lextron had been working overtime for the past two

---

[12] The e-mail from Kenneth Jelley, dated January 15, 2003 (the "1-15 Jelley E-mail"), is attached hereto as **Exhibit I**.

weeks to build this bank of parts.[13]  *See* 1-28 Jelley Email, Exhibit J.  On January 31st, Delphi employee Robert Rodgers sent an e-mail to several other Delphi employees that began: "The following information must be regarded in the highest confidence.  Lextron does not know to what extent the Delphi is prepared to pull out, let alone having established a possible internal date."[14]  Rodgers Email, Exhibit K.

28.    On February 3, 2003, one Delphi executive wrote a confidential memo which provided in part:  "Direction is to move forward with executing our contingency plans, except pulling equipment out of Lextron.  Reiterated to the team that it is absolutely critical that this kept confidential - no one should be discussing this with Lextron.  **We do not want the bank to make a move**."[15]  Lextron Update, Exhibit L, p. 2 (emphasis added).  Also on February 3, Michelle Joseph sent an e-mail to several other Delphi employees with a subject line of "Lextron - Movement of Business."[16]  Joseph E-mail, Exhibit M.  The e-mail provided:  "As you know, we have been developing our plans for the move of Lextron business to other suppliers."  Joseph E-mail, Exhibit M.

29.    On February 14, 2003, Ms. Everett sent an e-mail which provided in part:  "[t]he decision to exit was clear; the team agreed that February 28 is the target date. . . . We have the meeting with the company scheduled for Wednesday, February 19. . . .  We will even try to pare

---

[13] The e-mail from Kenneth Jelley, dated January 28, 2003 (the "1-28 Jelley E-mail"), is attached hereto as **Exhibit J**.

[14] The e-mail from Robert Rogers, dated January 31, 2003 (the "Rogers E-mail"), is attached hereto as **Exhibit K**.

[15] The referenced confidential memorandum (the "Lextron Update") is attached hereto as **Exhibit L**.

[16] The Michelle Joseph e-mail, dated February 3, 2003 (the "Joseph E-mail"), is attached hereto as **Exhibit M**.

down the Delphi team to a very intimate group when we deliver the bad news. . . ."[17]  2-14 Everett E-mail, Exhibit N.  Again, Delphi never informed Wachovia that it intended to terminate the Lextron relationship.  Delphi even went so far as to prepare a script for its meeting with Lextron: "[a]llow Doty to present for an hour or so.  We leave room to deliberate. . . . Let him know we will be pulling out on February 28. . . . Explain how it will happen.  Let him talk with Bank or whoever he is with.  And leave it that we will need to be able to get our equipment out.  Keep it reasonable."[18]  Delphi Script, Exhibit O.

30.     On February 19, 2003, after allowing Mr. Doty to make his presentation, Delphi followed its script and informed Lextron that Delphi was terminating the relationship and pulling its business from Lextron.  Lextron was immediately left without a source of business or cash flow to repay Wachovia.

31.     The events described above and documents attached hereto are merely illustrative of the evidence demonstrating Delphi's tortious conduct and do not include all facts and evidence which Wachovia may submit in support of its Proofs of Claim.  Nevertheless, the factual allegations contained in the Proofs of Claim and supplemented hereby show that Wachovia's Delphi Automotive POC is not due to be disallowed or expunged.

## MEMORANDUM OF LAW

32.     Because the legal points and authorities upon which this Response relies are incorporated herein, Wachovia requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013(b) be deemed satisfied.

---

[17] A copy of the Michelle Everett e-mail dated February 14, 2003 (the "2-14 Everett E-mail") is attached hereto as **Exhibit N**.

[18] The referenced document (the "Delphi Script") is attached hereto as **Exhibit O**.

**WHEREFORE**, Wachovia requests that this Court exclude Wachovia's Delphi Automotive POC from the list of claims to be disallowed and expunged by the Court's order on the Thirteenth Omnibus Claims Objection.

Dated: Birmingham, Alabama
       May 24, 2007

                                               BURR & FORMAN LLP

                                               By: /s/ Michael Leo Hall
                                                    Michael Leo Hall (pro hac vice)
                                                    D. Christopher Carson (pro hac vice)
                                                    Jason D. Woodard (pro hac vice pending)
                                                    Jennifer A. Harris (pro hac vice)

                                             420 North 20th Street
                                             Suite 3400
                                             Birmingham, Alabama 35203
                                             (205) 251-3000

                                             Attorneys for Creditor
                                             WACHOVIA BANK, NATIONAL ASSOCIATION