# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :

    In re                                :     Chapter 11
                                            :
DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)
                                            :
                              Debtors.  :     (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AGREED ORDER REGARDING INTERIM DISPOSITION
### WITH RESPECT TO LEAD PLAINTIFFS'
### MOTION FOR LIMITED MODIFICATION OF AUTOMATIC STAY

Upon the Motion For A Limited Modification Of The Automatic Stay (Docket No. 1063) (the "Motion") filed on November 15, 2005 by the Teachers' Retirement System of Oklahoma, Public Employees' Retirement System Of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP, Lead Plaintiffs (collectively, the "Lead Plaintiffs") in the action styled In re Delphi Corp. Securities Litigation, Master Case No. 05-md-1725 (GER) (Eastern District of Michigan) (the "Securities Litigation"); and upon the objection to the Motion filed by the Debtors on December 29, 2005 (Docket No. 1667) (the "Initial Objection"); and after this Court (the "Bankruptcy Court") having entered an Order on January 25, 2006, (Docket No. 1883) modifying the automatic stay solely to allow the Lead Plaintiffs to seek modification of the Private Securities Litigation Reform Act ("PSLRA") stay in the United States District Court for the Eastern District of Michigan (the "Michigan District Court"); and after the Michigan District Court having entered an Order on February 5, 2007, partially modifying the PSLRA stay; and after Debtors moved for reconsideration of the Michigan

District Court's Order partially lifting the PSLRA discovery stay on March 2, 2007; and after the Michigan District Court denied the Debtors' Motion for Reconsideration on March 21, 2007; and upon the Lead Plaintiffs' supplemental pleading in further support of the Motion filed March 6, 2007 (Docket No. 7128) (the "Motion Supplement"); and upon the Debtors' supplemental objection to the Lead Plaintiffs' Motion filed March 19, 2007 (Docket No. 7344) (the "Supplemental Objection"); and upon the Lead Plaintiffs and the Debtors having informed the Court that they have reached an interim resolution with respect to the Lead Plaintiffs' Motion and Motion Supplement,

IT IS HEREBY ORDERED THAT:

1. The automatic stay under Section 362 of the Bankruptcy Code with respect to the Securities Litigation shall be lifted only to the extent and scope described herein, and will be maintained in all other respects and for all other purposes not expressly set forth in this Order.

2. The Debtors shall produce to the Lead Plaintiffs the approximately 576,000 pages of responsive documents previously produced to the Securities and Exchange Commission (the "Numbered SEC Production"), and, to the extent not included in the Numbered SEC Production, the documents described in paragraph 10 of the Declaration of Joseph E. Papelian In Support Of The Memorandum Of Law Of Certain Defendants in Support Of Their Motion For Reconsideration Of The Court's Order Lifting The PSLRA Discovery Stay (the "Papelian Declaration" annexed hereto as Exhibit A) (all productions specified in this paragraph 2, collectively, the "Debtors' Production"); provided, however, that the Debtors shall not produce any document with respect to which the Debtors assert any privilege or attorney work product protection

2

absent further order of the Bankruptcy Court after notice and a hearing as described in paragraph 7 below. The Debtors shall produce the documents described in this paragraph 2 on a rolling basis and will use reasonable efforts to complete such production within 30 days of the entry of this Order.

3. The Debtors shall provide a privilege log to the Lead Plaintiffs for those documents withheld from the Debtors' Production with respect to which the Debtors assert any privilege or work product protection.

4. The Debtors shall provide to the Lead Plaintiffs information regarding the collection and selection of the data included in the database described in paragraph 9 of the Papelian Declaration, and shall produce to the Lead Plaintiffs the keyword search terms described in paragraph 10 of the Papelian Declaration.

5. The Motion is adjourned without date for hearing subject to being placed back on the Bankruptcy Court's calendar, on shortened notice, after the Michigan District Court has ruled on the motions to dismiss currently pending in the Michigan District Court and in such a way that the PSLRA stay is lifted for some or all purposes. The Debtors reserve their right to further supplement their objection to the Motion or to object to any lift stay motion filed by the Lead Plaintiffs in the Bankruptcy Court so long as it is not inconsistent with this Order.

6. The documents produced to the Lead Plaintiffs by the Debtors pursuant to this Order can be used by the Lead Plaintiffs for any purpose (subject to paragraph 8 herein); provided however, that until the Michigan District Court has issued a ruling on the merits in whole or in part on the currently-pending motions to dismiss, the documents may not be used by the Lead Plaintiffs for pleading purposes, including

3

without limitation, for purposes of any amendment to the complaint pending in the Michigan District Court or in connection with any pleadings with respect to the currently-pending motions to dismiss or in further support of Lead Plaintiffs' currently-pending motion to amend the complaint; provided, further, however, that the Lead Plaintiffs may use the documents in connection with any amendment to their complaint if the Michigan District Court defers the currently-pending motions to dismiss and grants the Lead Plaintiffs' currently-pending motion to amend the complaint, and after the Lead Plaintiffs have requested and obtained leave of the Michigan District Court, by motion and with an opportunity for the Debtors to be heard in that Court, to use the documents produced by the Debtors pursuant to this Order.

7.    The Debtors' and the Lead Plaintiffs' rights are maintained regarding the Debtors' assertion of any privilege or work product protection with respect to the documents contained in the Debtors' Production. Any challenge to the Debtors' assertion of privilege or work product protections will be resolved by the Bankruptcy Court, at or after the time of any renewal of the Motion as described in paragraph 5 of this Order, and the Lead Plaintiffs may challenge any assertion of privilege or waiver in the pleading renewing the Motion, or in a subsequent motion to the Bankruptcy Court.

8. The Debtors and the Lead Plaintiffs will enter into an agreed protective order to be submitted to the Bankruptcy Court which shall govern, among other things, the use of the documents produced to the Lead Plaintiffs under this agreement and the protection of the privacy of third parties, including Delphi employees, in connection with the documents produced under this agreement.

Dated: New York, New York

April 16, 2007

                                             /s/Robert D. Drain
                                             Honorable Robert D. Drain
                                             United States Bankruptcy Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
                                                         :
                                                         :    MDL No. 1725
IN RE: DELPHI CORPORATION                                :    Master Case No. 05-md-1725
SECURITIES, DERIVATIVE & "ERISA"                         :    Hon. Gerald E. Rosen
LITIGATION                                               :
                                                         :    This Document Relates to:
                                                         :    In Re: Delphi Corp. Securities Litig.
                                                         :    No. 06-10026
                                                         :
                                                         :
---------------------------------------------------------x

**DECLARATION OF JOSEPH E. PAPELIAN IN SUPPORT OF
THE MEMORANDUM OF LAW OF CERTAIN DEFENDANTS
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF
THE COURT'S ORDER LIFTING THE PSLRA DISCOVERY STAY**

I, Joseph E. Papelian, hereby declare as follows:

1.   I am the Deputy General Counsel for Litigation for Delphi Corporation ("Delphi"). The information set forth below is true to the best of my knowledge and belief.

2.   On July 22, 2004, I received a subpoena from the SEC commanding the production of certain documents by Delphi. On that same day, I directed a document hold for those documents covered by the subpoena, which was posted on Delphi's internal website on July 23, 2004.

3.   On July 23, 2004, I ordered the computer back-up tapes for Delphi's Headquarters campus be delivered to my office. The back-up tapes were delivered to me on July 23, 2004, where they remained locked in my office until October 15, 2004 when I provided them to a representative of PricewaterhouseCoopers ("PwC"), which had been retained at that time.

4. Also on July 23, 3004, I issued a Document Search Memo to employees likely to have documents responsive to the subpoena. The Search Memo described the types of documents to be gathered, instructed the employees to search all areas where relevant documents might be found, and cautioned them to not destroy or alter potentially relevant documents. The Search Memo also instructed employees to return all relevant documents to a legal assistant working with me on this matter along with a completed Document Return Form requiring the employee to attest he/she had conducted a good faith search and provided any relevant documents.

5. Copies of all documents received in response to the Search Memo were scanned and a unique number was assigned to each page. The documents were reviewed for responsiveness and those documents determined to be responsive were then assigned a production number. A Source Index, identifying who provided what documents, was prepared and those documents determined responsive to the subpoena were produced to the SEC on a rolling basis.

6. On August 24, 2004, Delphi formally retained the outside law firm of WilmerHale to assist, among other things, in the collection of documents and with Delphi's internal investigation. WilmerHale engaged forensic accountants PricewaterhouseCoopers ("PwC") to assist in the collection of electronic files. On October 5, 2004, the Audit Committee of Delphi's Board of Directors assumed responsibility for the internal investigation.

7. As subsequent subpoenas were received from the SEC, Delphi followed the procedure described in paragraphs 4-5, above. Delphi also sent out Document Search Memos after particular issues came to the attention of the internal investigators, but before a subpoena was received from the SEC that called for documents relevant to those issues. As the

internal review progressed, Delphi sent out a total of 14 Document Search Memos and one Hold Memo in the same format as the Document Search Memo issued in response to the first SEC subpoena. Approximately 700,000 pages were collected, scanned and numbered in response to the various Search Memos.

8. Delphi entered into Confidentiality Agreements with the SEC and DOJ only, waiving attorney client privilege as to these entities with respect to certain subject matters.

9. In November 2004, representatives of PwC began imaging hard drives of computers belonging to 89 Delphi employees, Microsoft Exchange email files for 84 employees, and a subset of the back-up tapes referenced in Paragraph 3 and created a database of 1,161,936 unique email items and 417,131 unique user files totaling over 130 gigabytes of data.

10. General and specific keyword searches were conducted on this database by PwC, resulting in the identification of 107,881 unique emails and attachments responsive to the general search terms and 37,492 unique emails and attachments responsive to the specific search terms. Those documents which were identified as responsive and not previously produced to the SEC were scanned, numbered and produced to the SEC.

11. WilmerHale removed from the database referenced in Paragraph 9 those documents that were addressed to, from or copied an attorney. The remainder of this database was then provided to the SEC on December 14, 2005. Other than the keyword searches referenced in paragraph 10, the database provided to the SEC was not reviewed for relevancy or responsiveness, but was nonetheless produced to the SEC.

12. In sum, Delphi produced to the SEC approximately 576,000 pages of responsive documents plus the remainder of the documents in the database referenced in paragraph 11, which were not read for relevancy or responsiveness.

13. The remainder of the documents collected through the various exercises and sources identified above were determined as not responsive to any general or specific search terms. Therefore, while they were collected in connection with Delphi's extensive internal investigation, these materials were not produced to the SEC (or any other party).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2007.

                                                         s/ Joseph E. Papelian
                                                         Joseph E. Papelian