SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
   In re                                                       :       Chapter 11
:
DELPHI CORPORATION, et al.,                      :       Case No. 05-44481 (RDD)
:
                         Debtors.          :       (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' AMENDED STATEMENT OF DISPUTED ISSUES
WITH RESPECT TO PROOF OF CLAIM NO. 1279
(NU-TECH PLASTICS ENGINEERING, INC.)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), in accordance with the agreement reached by the Debtors and Nu-Tech Plastics Engineering, Inc. ("Nu-Tech") at a meet and confer held on June 1, 2007, respectfully submit this amended statement of disputed issues with respect to proof of claim number 1279 filed by Nu-Tech (the "Claim").

Background

1. Nu-Tech is a former supplier of parts to General Motors Corporation ("GM") and certain of the Debtors, including Delphi Automotive Systems LLC ("DAS"). The parts supplied by Nu-Tech included a fuel reservoir with part number 25160694 (the "Part"). As part of a settlement agreement ending a labor strike at two of its plants in Flint, Michigan, in July 1998, GM agreed to produce its own requirements for the Part, rather than buy the Part from Nu-Tech. In the months that followed, GM stopped ordering the Part from Nu-Tech, and ultimately the tooling needed to make the Part was removed from Nu-Tech's plant.

2. In May 1999, Nu-Tech entered into its first Part-related agreement with DAS (the "Blanket Agreement"). Before then, all of Nu-Tech's Part-related agreements had been with GM, not DAS. The Blanket Agreement permitted, but did not require, DAS to order the Part pursuant to the Blanket Agreement's terms and conditions, including the term establishing a base price per unit. It was not a requirements contract—i.e., it did not obligate DAS to buy any set percentage of its requirements from Nu-Tech—nor did it require DAS to buy any particular quantity of the Part from Nu-Tech. Indeed, an agreement of that kind would have been nonsensical given the earlier decision to produce the Part in-house using union labor and the fact that Nu-Tech no longer had the tooling needed to make the Part.

2

   3. In December 1999, Nu-Tech entered into a preliminary agreement with Rapid Product Technologies, L.L.C. ("Rapid") that contemplated a sale of Nu-Tech's assets to Rapid, and Rapid took over the operation of Nu-Tech's business. The following month, Nu-Tech and Rapid executed a definitive agreement (the "Agreement") whereby Nu-Tech sold to Rapid "all of the assets, rights, and interests of every conceivable kind or character whatsoever, whether tangible or intangible," that Nu-Tech owned as of December 1, 1999, including all of Nu-Tech's "existing customer purchase orders."

   4. On January 15, 2000, the day after Nu-Tech executed the Agreement, DAS issued an amendment to the Blanket Agreement substituting Rapid as the supplier of the Part.

   5. In December 2002, Nu-Tech sued GM and DAS in Michigan state court, alleging breach of contract based on the Part-related agreements and promissory estoppel arising from a purported promise of new business in 1998. The action was scheduled for trial when DAS filed its voluntary petition for reorganization relief in October 2005. Nu-Tech settled with GM in January 2007.

   6. Nu-Tech filed its Claim in December 2005, asserting an unsecured non-priority claim of $13,957,130. The Debtors objected to the Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documents, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452), dated October 31, 2006.

7.  On November 24, 2006, Nu-Tech filed its Response Of Nu-Tech Plastics Engineering, Inc. To Debtors' Third Omnibus Objection And To Debtors' Claim Objection And Estimate Procedures Motion (Docket No. 5811) (the "Response").  In its Response, Nu-Tech confirmed that its Claim is based on the claims it had asserted against GM and DAS in its state-court action.

8.  On March 28, 2007, the Debtors filed a Notice Of Claims Objection Hearing With Respect To Debtors' Objection To Proof Of Claim No. 1279 (Nu-Tech Plastics Engineering, Inc.) (Docket No. 7455), scheduling a claims objection hearing on the merits of the Claim for June 1, 2007.  The Debtors' Statement Of Disputed Issues With Respect [To] Proof Of Claim No. 1279 (Nu-Tech Plastics Engineering) (Docket No. 7574) was filed on April 4, 2007.  On May 3, 2007, the Debtors filed a Notice Of Adjournment Of Claims Objection Hearing With Respect To Debtors' Objection To Proof Of Claim No. 1279 (Nu-Tech Plastics Engineering, Inc.) (Docket No. 7846), adjourning the claims objection hearing on the Claim to July 20, 2007.

<u>Disputed Issues</u>

9.  As a threshold matter, Nu-Tech's Claim fails because it is barred by the statutes of limitations for claims under the Michigan Uniform Commercial Code—Sales (four years) and promissory estoppel (six years).  In January 2000, Nu-Tech transferred to Rapid any agreement it had with DAS and any claim it had against DAS, and DAS transferred the Blanket Agreement from Nu-Tech to Rapid.  Although Rapid arguably assigned to Nu-Tech any claim Rapid had against DAS in March 2005, that assignment was ineffective because by that time the applicable limitations periods had expired.  See <u>Miller v. Chapman Contracting</u>, 730 N.W.2d 472 (Mich. 2007) (per curiam) (affirming dismissal of action when plaintiff failed to cure real-party-in-interest defect before limitations period expired).

10. With respect to Nu-Tech's breach-of-contract allegations, those allegations fail as to events before the date of the Blanket Agreement because before that date, Nu-Tech's agreements were with GM, not DAS. Furthermore, even if those agreements had been with DAS, Nu-Tech would not be able to demonstrate that DAS breached those agreements because they did not obligate DAS to buy any set percentage of its requirements from Nu-Tech, nor did they require DAS to buy any particular quantity of the Part from Nu-Tech.

11. As to events after Nu-Tech and DAS entered into the Blanket Agreement, Nu-Tech's breach-of-contract allegations fail on the merits because, as explained above, the Blanket Agreement did not obligate DAS to buy any set percentage of its requirements from Nu-Tech, nor did it require DAS to buy any particular quantity of the Part from Nu-Tech. Accordingly, DAS did not breach the Blanket Agreement by failing to buy the Part from Nu-Tech.

12. Nu-Tech has not presented a calculation of the alleged damages it suffered as a result of DAS's alleged breach of contract. DAS expressly reserves its right to challenge any such calculation it receives, including but not limited to a challenge on the grounds that the calculation involves damages that are not available under Michigan law, that the damages did not result from any alleged breach of contract by DAS, that the calculation is based on an improper methodology, and/or that the calculation contains errors.

13. With respect to Nu-Tech's allegations regarding promissory estoppel, those allegations fail because Nu-Tech cannot establish that (a) DAS made a promise to Nu-Tech, (b) DAS expected or reasonably should have expected that the alleged promise would induce action or forbearance of a definitive and substantial character by Nu-Tech, (c) Nu-Tech

reasonably relied on the alleged promise, or (d) the alleged promise must be enforced to avoid injustice.

14. Nu-Tech has not presented a calculation of the alleged damages it suffered as a result of DAS's alleged failure to keep its alleged promise. DAS expressly reserves its right to challenge any such calculation it receives, including but not limited to a challenge on the grounds that the calculation involves damages that are not available under Michigan law, that the damages did not result from any alleged failure to keep any alleged promise by DAS, that the calculation is based on an improper methodology, and/or that the calculation contains errors.

Reservation Of Rights

15. This amended statement of disputed issues is submitted by the Debtors in accordance with paragraph 9(d) of this Court's Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notice And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claim Objection Procedures Order"), and in accordance with the agreement reached by the Debtors and Nu-Tech at the meet and confer held on June 1, 2007. Consistent with the provisions of the Claim Objection Procedures Order, the Debtors' submission of this amended statement of disputed issues is without prejudice to (a) the Debtors' rights to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, and/or reclassification of the Claim, and/or (b) the Debtors' rights to later identify additional documentation supporting the disallowance, expungement, reduction, and/or reclassification of the Claim.

WHEREFORE, the Debtors respectfully request that this Court enter an order disallowing and expunging the Claim and granting the Debtors such other and further relief as is just and proper.

Dated: New York, New York
       June 5, 2007

                        SKADDEN, ARPS, SLATE, MEAGHER &
                         FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession