# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                             :
     In re                                     :         Chapter 11
                                                             :
DELPHI CORPORATION, et al.,          :         Case No. 05-44481 (RDD)
                                                             :
                            Debtors.     :         (Jointly Administered)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND
9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND
MANNER OF SALE NOTICES, AND
(IV) SETTING SALE HEARING IN CONNECTION
WITH SALE OF CATALYST BUSINESS

("CATALYST BUSINESS BIDDING PROCEDURES ORDER")

       Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding procedures set forth herein and attached hereto as Exhibit 1 (the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets"), primarily used in the catalyst business of Delphi Corporation, save for certain exceptions described fully in the Agreement (as defined below), for $55.6 million and other consideration, free and clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the "Purchasers") pursuant to the Master Sale and Purchase Agreement, dated June 5, 2007, by and between Delphi and

certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities"),[1] and the Purchasers (the "Agreement")[2] or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned Contracts") to the Purchasers or the Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers or the Successful Bidder; and upon the record of the hearing held on June 26, 2007 with respect to the Motion (the "Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

    A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

    B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

---

[1] Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc., Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and ASEC Sales General Partnership. Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

          C.      The relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest.

          D.      The notice given by the Selling Debtor Entities of the Motion and the Hearing constitutes due and sufficient notice thereof.

          E.      The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and/or assignment of the Assigned Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to stakeholders and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption of the Assumed Contracts to be filed with the Court and served on parties to each Assumed Contract, and (vi) set the Sale Hearing.

          F.      The Break-Up Fee and the Expense Reimbursement, as either, but not both may be payable in accordance with the terms, conditions, and limitations of the Agreement (together, the "Bid Protections"), (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Selling Debtor Entities' estates, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) are of substantial benefit to the Selling Debtor Entities' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchasers notwithstanding that the proposed Sale is subject to higher or better offers for the Purchased Assets, (iv) were negotiated by the parties at arms' length and in good faith, and (v) are necessary to ensure that the Purchasers will continue

to pursue their proposed acquisition of the Purchased Assets. The Bid Protections were a material inducement for, and condition of, the Purchasers' entry into the Agreement. The Purchasers are unwilling to commit to hold open their offer to purchase the Purchased Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to the Purchasers of payment of the Bid Protections should promote competitive bidding by inducing the Purchasers' bid that otherwise would not have been held open, and without which other bidding would have been less competitive. Further, because the Bid Protections induced the Purchasers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchasers have provided a benefit to the Selling Debtor Entities' estates by increasing the likelihood that the price at which the Purchased Assets are to be sold reflect their true worth. Finally, absent authorization of the Bid Protections, the Selling Debtor Entities may lose the opportunity to obtain the highest or otherwise best available offer for the Purchased Assets.

G. In the event that the Purchasers terminate the Agreement or the Sellers terminate the Agreement and the Purchasers become entitled to receive or receive any Expense Reimbursement, the Purchasers shall not be entitled to receive nor shall they receive the Break-Up Fee or any portion thereof, and, conversely, in the event that the Purchasers become entitled to receive or receive any Break-Up Fee, they shall not be entitled to receive nor shall they receive the Expense Reimbursement or any portion thereof.

H. The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

<u>Bidding Procedures</u>

1.      The Bidding Procedures, as set forth on <u>Exhibit 1</u> attached hereto and incorporated herein by reference as if fully set forth in this Order, are hereby approved and any and all objections to the Bidding Procedures that were not consensually resolved at or before the Hearing are hereby overruled.  The Bidding Procedures shall govern all proceedings relating to the Agreement and any subsequent bids for the Purchased Assets in these cases.

2.      The Selling Debtor Entities may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of any official committee or significant constituent in connection with the Bidding Procedures, and (c) reject at any time before entry of an order of the Court approving a Qualified Bid any bid (other than the Purchasers' bid) which, in the Selling Debtor Entities' sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Selling Debtor Entities, their estate, and their creditors.  The Selling Debtor Entities are authorized (y) to terminate the Bidding Process or the Auction at any time if they determine, in their business judgment, that the Bidding Process will not maximize the value of the Purchased Assets to be realized by the Selling Debtor Entities' estates and (z) to seek Bankruptcy Court approval of the Agreement with Purchasers.

Sale Hearing

3.  The Court shall hold a Sale Hearing on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at which time the Court shall consider the Motion, the Successful Bidder, and confirm the results of the Auction, if any. Objections to the Motion, if any, shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on August 9, 2007 (the "Objection Deadline").

4.  The failure of any objecting person or entity to timely file and serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, or the Selling Debtor Entities' consummation and performance of the Agreement (including the transfer of the Purchased Assets and Assigned Contracts free and clear of liens, claims, and encumbrances), with the exception of any objection to the conduct of the Auction or the Selling Debtor Entities' selection of the successful bidder, which may be made at the Sale Hearing.

5.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

Bid Protections

6.      The Bid Protections are hereby approved, and any and all objections to the Bid Protections that were not consensually resolved at or before the Hearing are hereby overruled.  The Selling Debtor Entities' obligation to pay the Bid Protections, as provided by the Agreement, shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code.  The Selling Debtor Entities shall be authorized to pay either of the Bid Protections (but not both) to the Purchasers in accordance with the terms of the Agreement without further order of the Court.

Notice

7.      Notice of (a) the Motion, (b) the Sale Hearing, and (c) the proposed assumption and/or assignment of the Assigned Contracts to the Purchasers pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

      (a)  <u>Notice Of Sale Hearing</u>.  Within five days after entry of this Order (the "Mailing Date"), the Debtors (or their agent) propose to serve the Motion, the Agreement, the proposed Sale Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchasers, (iii) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the Official Committee of Equity Security Holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past six months, (vi) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (viii) all parties to Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange

7

Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities that are required to be served with notices under the Supplemental Case Management Order.

(b)    Cure Notice.  On or before July 6, 2007, the Debtors shall file with this Court and serve on each non-Debtor party to an Assumed Contract a cure notice substantially in the form attached hereto as Exhibit 2 (the "Cure Notice").  The Cure Notice shall state the cure amount that the Selling Debtor Entities believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or contract will be assumed and assigned to the Purchasers or a Successful Bidder (as appropriate) to be identified at the conclusion of the Auction.  In addition, such Cure Amounts shall be listed on a schedule to the Sale Approval Order.  Each non-Debtor party to the Assumed Contracts shall have ten days from the date of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims as to such Assumed Contract against the Selling Debtor Entities, the Purchasers, or the Successful Bidder (as appropriate), or the property of any of them.

(c)    Assumption/Assignment Notice For Purchaser.  On or before July 6, 2007, the Selling Debtor Entities shall file with the Court and serve on all non-Debtor parties to the Assigned Contracts a notice (the "Purchaser Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 3, identifying the Purchasers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assigned Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  The non-Debtor party to an Assumed Contract shall have ten days from the service of the Purchaser Assumption/Assignment Notice to object to the proposed assumption and assignment to the Purchasers and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchaser and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    Assumption/Assignment Notice For Qualified Bidders.  On the business day following the Bid Deadline, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 4, to be sent to each non-Debtor party to an Assigned Contract identifying all Qualified Bidders.  The non-Debtor party to an Assumed Contract shall have ten days from the service of the Qualified Bidder

8

Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice. On or before the Mailing Date, or as soon thereafter as is practicable, the Debtors shall cause notice substantially in the form of the notice attached hereto as Exhibit 5 to be published in the national editions of the Wall Street Journal (International Edition), the New York Times, the Tulsa World, and the Claremore Progress.

8.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

9.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
         June __, 2007

                                UNITED STATES BANKRUPTCY JUDGE