**Hearing Date And Time: July 19, 2007 at 10:00 a.m.**
**Response Date And Time: July 12, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                             :
       In re                        :     Chapter 11
                             :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                             :
                             :     (Jointly Administered)
             Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' SEVENTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) INSURANCE CLAIM NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS,
(D) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIMS, AND (E) CLAIMS SUBJECT TO
MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND MODIFIED CLAIMS
<u>ASSERTING RECLAMATION</u>

("SEVENTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B)

Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On

Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims

Subject To Modification, Tax Claims Subject to Modification, And Modified Claims Asserting

Reclamation (the "Seventeenth Omnibus Claims Objection"), and respectfully represent as

follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.     The statutory predicates for the relief requested herein are section 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.     Current Business Operations Of The Debtors

5.     Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.     The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.     Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
       and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
       2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive
       component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The
       application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect
       other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's
       transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

accordance with the terms of a Master Separation Agreement between Delphi and GM. In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications. Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    <u>Events Leading To The Chapter 11 Filing</u>

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income. Every year thereafter, however,

with the exception of 2002, the Company has suffered losses. In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating
loss in calendar year 2004 was $482 million.

4

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its transformation plan.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the Debtors must devise a workable solution to their current pension situation.

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

12.    On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's goal of achieving consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

13.    On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an

amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

6

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.     On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors also confirmed that none of the parties entitled to

give notice of termination of the framework agreements has done so as of the date of this filing

and that these agreements remain effective as previously filed until modified or terminated.  The

Debtors anticipate filing a plan of reorganization and disclosure statement as soon as reasonably

practicable following conclusion of a consensual agreement with the Debtors' major stakeholders.

15.     Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

7

continue the strategic growth of its non-U.S. operations and maintain its prominence as the

world's premier auto supplier.

E.    <u>Bar Date, Proofs Of Claim, And Omnibus Claims Objections</u>

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the <u>New York</u>

<u>Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions),

<u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions

of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo</u>

8

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed eight omnibus procedural Claims

objections[5] and seven omnibus substantive Claims objections.[6]  Pursuant to such omnibus

---

[5]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006;
the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, and (iii)
Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection
(Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended
Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket
No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The
Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15,
2007; and the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P.
3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16,
2007; the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007
To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27, 2007;
and the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P.
3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 7998) on May 22,
2007.

[6]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By
Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate
Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006;
the Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To

*(cont'd)*

Claims objections, the Court has disallowed and expunged 8,995 Claims.  In addition, the

hearings with respect to approximately 633 Claims have been adjourned to future claims

hearings pursuant to the Claims Objection Procedures Order (as defined below) and another 675

Claims are subject to pending objections.

20.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

_____
*(cont'd from previous page)*
Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And
Records  (Docket No. 6100) on December 8, 2006; the Seventh Omnibus Objection (Substantive) Pursuant To
11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims
Not Reflected On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12,
2007; the Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007
To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records,
(c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; the
Eleventh Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (a) Insufficiently Documented Claims (B) Claims Not Reflected On Debtors' Books and Records, (c)
Untimely Claims, and (D) Claims Subject To Modification (Docket No. 7301) on March 16, 2007; the
Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c)
Protective Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And Records, (e)
Untimely Claims An Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims Subject To
Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) on April
27, 2007; and the Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Untimely Claims And Untimely Tax Claim, And (D) Claims Subject To Modification, Tax
Claims Subject To Modification, and Modified Claims Asserting Reclamation (Docket No. 7999) on May 22,
2007.

21.      In this Seventeenth Omnibus Claims Objection, the Debtors are objecting to 257 Proofs of Claim.[7]

Relief Requested

22.      By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) disallowing and expunging those Claims set forth on Exhibit A-1 hereto because they contain insufficient documentation in support of the Claims asserted, (b) disallowing and expunging the Claim set forth on Exhibit A-2 hereto because it contains insufficient documentation in support of the Claim asserted and was untimely filed pursuant to the Bar Date Order, (c) disallowing and expunging those Claims set forth on Exhibit B-1 hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records, (d) disallowing and expunging the Claim set forth on Exhibit B-2 hereto, which was filed by a taxing authority, because it asserts liabilities and dollar amounts that are not reflected on the Debtors' books and records, (e) disallowing and expunging those Claims set forth on Exhibit B-3 hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records and were untimely filed pursuant to the Bar Date Order, (f) disallowing and expunging the Claim set forth on Exhibit C hereto, which was filed by an insurance company, because it asserts liabilities that are not reflected on the Debtors' books and records, (g) disallowing and expunging the Claims set forth on Exhibit D-1 hereto because they were untimely filed pursuant to the Bar Date Order, (h) disallowing and expunging the

---

[7]      Contemporaneously with the Seventeenth Omnibus Claims Objection, the Debtors are filing the Sixteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims and (B) Protective Claims (the "Sixteenth Omnibus Claims Objection").  In the Sixteenth Omnibus Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims or (b) are merely protective in nature.  The Debtors are objecting to 26 Proofs of Claim in the Sixteenth Omnibus Claims Objection.

Claims filed by taxing authorities set forth on Exhibit D-2 hereto because they were untimely

filed pursuant to the Bar Date Order, (i) revising the asserted amount or classification, and/or

changing the identity of the alleged Debtor, with respect to the Claims set forth on Exhibit E-1

hereto, (j) revising the asserted amount or classification, and/or changing the identity of the

alleged Debtor, with respect to the Claims set forth on Exhibit E-2 hereto, which were filed by

taxing authories, and (k) revising the asserted amount and/or classification with respect to the

Claims set forth on Exhibit E-3 hereto, some of which are subject to a letter agreement pursuant

to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's

reclamation demand, subject to certain reserved defenses, and others of which are held by

Claimants who are deemed to have consented to the Debtors' determination of the valid amount

of the reclamation demand, subject to certain reserved defenses.

Objections To Claims

F.      Insufficiently Documented Claims

23.      During their Claims review, the Debtors discovered that certain Proofs of

Claim do not include sufficient documentation to support the claim asserted (the "Insufficiently

Documented Claims").  This deficiency in documentation has made it impossible for the Debtors

meaningfully to review the asserted Claims.  Although the Debtors contacted each Claimant

which filed an Insufficiently Documented Claim (other than those Claimants which filed a blank

proof of claim form), the Debtors received no additional documentation from such Claimants.[8]

24.      The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

---

[8]      Claimants which responded to the Debtors' communications and provided additional information are not
included as part of this objection.

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re

WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibits A-1 and A-2 to provide sufficient documentation to permit an understanding of the

basis for their Claims, those Claims do not make out a prima facie case against the Debtors.

   25. The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against

the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence

of the Debtors' liability for the Claim.  In addition, the Insufficiently Documented Claim listed

on Exhibit A-2 was received by the Debtors after the Bar Date (the "Untimely Insufficiently

Documented Claim").  With respect to the Untimely Insufficiently Documented Claim, the

Debtors also object to that Claim on the basis that it was not timely filed pursuant to the Bar Date Order.[9]

26.    Attached hereto as <u>Exhibit A-1</u> is a list of the Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the Claim.[10]  Identified on <u>Exhibit A-2</u> is the Untimely Insufficiently Documented Claim, which the Debtors have concluded does not contain sufficient documentation to permit an understanding of the basis for the Claim and, in addition, was not timely filed pursuant to the Bar Date Order.[11]  In the event that this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claims and Untimely Insufficiently Documented Claim at a later date on any basis whatsoever.   Accordingly, the Debtors (a) object to the Insufficiently Documented Claims and Untimely Insufficiently Documented Claim and (b) seek entry of an order disallowing and expunging the Insufficiently Documented Claims and Untimely Insufficiently Documented Claim in their entirety.

---

[9]    The Bar Date Order provides, in relevant part:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

[10]    Certain of the Claims on <u>Exhibits A-1</u>, <u>A-2</u>, <u>B-1</u>, <u>B-2</u>, <u>B-3</u>, <u>C</u>, <u>D-1</u>, <u>D-2</u>, <u>E-1</u>, <u>E-2</u>, and <u>E-3</u> may be listed in the amount of $0.00.  This reflects the fact that the Claim amounts asserted by the Claimants in those instances is unliquidated.

[11]    The Untimely Insufficiently Documented Claim listed on <u>Exhibit A-2</u> was not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

14

G.    <u>Claims Not Reflected On The Debtors' Books And Records</u>

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined
that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the
Debtors' books and records (the "Books And Records Claims").  In addition, the Debtors
determined that a Proof of Claim filed by the United States Internal Revenue Service also asserts
liabilities and dollar amounts that are not owing pursuant to the Debtors' books and records (the
"Books And Records Tax Claim").  The Debtors have also determined that certain of the Proofs
of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and
records and, in addition, were not timely filed pursuant to the Bar Date Order (the "Untimely
Books And Records Claims").  The Debtors believe that the parties asserting Books And Records
Claims, the Books And Records Tax Claim, and Untimely Books And Records Claims are not
creditors of the Debtors.

28.    The bases for determining that the Debtors are not liable for an asserted
Claim include, but are not limited to, the following: (a) the Debtors' books and records do not
reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the
Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this
Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior
to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability
that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

29.    A claimant's proof of claim is entitled to the presumption of <u>prima</u> <u>facie</u>
validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the
allegations that is essential to the claim's legal sufficiency.'"  <u>WorldCom</u>, 2005 WL 3832065, at
*4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts
to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  <u>Id</u>.

15

30.    Attached hereto as Exhibit B-1 is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Identified on Exhibit B-2 hereto is the Books And Records Tax Claim that the Debtors have identified as a Claim for which the Debtors are not liable.   Attached hereto as Exhibit B-3 is a list of the Untimely Books And Records Claims that the Debtors have also identified as Claims for which the Debtors are not liable.  The Debtors object to the Untimely Books And Records Claims not only because the Debtors have no liability in respect thereof, but also because the Claims were not timely filed pursuant to the Bar Date Order.[12]  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books And Records Claims, the Books And Records Tax Claim, and the Untimely Books And Records Claims at a later date on any basis whatsoever.

31.    Accordingly, the Debtors (a) object to the Books And Records Claims, the Books And Records Tax Claim, and the Untimely Books And Records Claims and (b) seek entry of an order disallowing and expunging the Books And Records Claims, the Books And Records Tax Claim, and the Untimely Books And Records Claims in their entirety.

H.    Books And Records Insurance Claim

32.    During the Debtors' review of the Proofs of Claim, the Debtors reviewed certain of the Proofs of Claim filed by insurance companies (the "Insurance Claims") and have determined that a Proof of Claim filed by RLI Insurance Company asserted a liability not owing pursuant to the Debtors' books and records (the "Books and Records Insurance Claim").  This claim is identified on Exhibit C attached hereto.  Accordingly, the Debtors (a) object to the

---

[12]    The Untimely Books And Records Claims listed on Exhibit B-3 hereto were not included as part of the Claims Timeliness Motion.

Books and Records Insurance Claim and (b) seek to have the Books and Records Insurance

Claim expunged in its entirety.

I.    Untimely Claims

33.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim were received by the Debtors after the Bar Date (the

"Untimely Claims").  The Debtors object to such Untimely Claims on the basis that they were

not timely filed pursuant to the Bar Date Order.  Attached hereto as Exhibit D-1 is a list of

Untimely Claims.  The Debtors also determined that certain of the Proofs of Claim filed by

taxing authorities were received by the Debtors after the Bar Date (the "Untimely Tax Claims").

Attached hereto as Exhibit D-2 is a list of the Untimely Tax Claims.  Accordingly, the Debtors (a)

object to the Untimely Claims and the Untimely Tax Claims[13] and (b) seek entry of an order

disallowing and expunging the Untimely Claims and the Untimely Tax Claims.

J.    Claims Subject To Modification

34.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims (a) state the incorrect amount or are overstated, including as a

result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against

the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the

"Claims Subject To Modification").

35.    Although in this Seventeenth Omnibus Claims Objection the Debtors do

not seek to disallow and expunge the Claims Subject To Modification, based on an initial review,

the Debtors have determined that their liability with respect to each such Claim does not exceed

---

[13]    Neither the Untimely Claim listed on Exhibit D-1 nor any of the Untimely Tax Claims listed on Exhibit D-2
hereto was included as part of the Claims Timeliness Motion.

the dollar amount set forth on Exhibit E-1 hereto.  Moreover, in some cases, the Debtors have

determined that such Claims should be reclassified in the manner set forth on Exhibit E-1 hereto.

Finally, in some cases, the Debtors have determined that such Claims should be asserted against

a different Debtor entity, as indicated on Exhibit E-1 hereto by a change in the applicable case

number.  The bases for placing a Claim in the Claims Subject To Modification category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, (c) does not account for amounts that may

have been paid or credited against such Claim following the commencement of these cases, (d)

was docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject To

Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors'

books and records and/or the liquidated amount requested by the Claimant (thus eliminating the

unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the

Claim is asserted, and/or (iii) appropriately reclassify the Claim.

        36.      As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims,

the Debtors' books and records refute that certain of the claims asserted in each Claim Subject To

Modification are actually owed by any of the Debtors.

        37.      Set forth on Exhibit E-1 hereto is a list of Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount against a different Debtor than the one identified by the Claimant.  For each Claim

Subject To Modification, Exhibit E-1 reflects the amount, classification, and Debtor asserted in

the Claimant's Proof of Claim in a column titled "Claim As Docketed"[14] and the proposed

modified dollar amount and classification for the Claim, and the Debtor against which the Claim

should be asserted, in a column titled "Claim As Modified."

        38.     The Debtors object to the amount, classification, and/or identity of the

Debtor for each Claim Subject To Modification listed on Exhibit E-1 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

Modified" column of Exhibit E-1.  Thus, no Claimant listed on Exhibit E-1 would be entitled to

(a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit E-1, (b) assert a classification that is

inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against

a Debtor other than that whose case number is listed in the "Claim As Modified" column on

Exhibit E-1, subject to the Debtors' right to further object to each such Claim Subject To

Modification.  For clarity, Exhibit E-1 refers to the Debtor entities by case number and Exhibit F

displays the formal name of ten Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit E-1.

        39.     The inclusion of the Claims Subject To Modification on Exhibit E-1,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

---

[14]    The Asserted Claim Amount on Exhibits E-1, E-2, and E-3 reflects only asserted liquidated claims.

40.    Accordingly, the Debtors (a) object to the asserted amount, classification, and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order modifying the Claims Subject To Modification to reflect the Modified Total, classification for the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on <u>Exhibit E-1</u>.

    (i)    <u>Tax Claims Subject To Modification</u>

41.    In addition, the Debtors have also determined that certain Proofs of Claim filed by taxing authorities (the "Tax Claims") (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (collectively, the "Tax Claims Subject To Modification").

42.    Set forth on <u>Exhibit E-2</u> hereto is a list of Tax Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For each Tax Claim Subject To Modification, <u>Exhibit E-2</u> reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for the Tax Claim, and the Debtor against which the Tax Claim should be asserted, in a column titled "Claim As Modified."

43.    The Debtors object to the amount and/or identity of the Debtor for each Tax Claim Subject To Modification listed on <u>Exhibit E-2</u> and request that each such Claim be revised to reflect the amount and Debtor listed in the "Tax Claim As Modified" column of <u>Exhibit E-2</u>.  Thus, no Claimant listed on <u>Exhibit E-2</u> would be entitled to (a) recover for any Tax Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on <u>Exhibit E-2</u>, and/or (b) asserts a classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against a Debtor other than that whose case number is listed in the "Claim As Modified" column on

20

Exhibit E-2, subject to the Debtors' right to further object to each such Tax Claim Subject To

Modification.  For clarity, Exhibit E-2 refers to the Debtor entities by case number and Exhibit F

displays the formal name of fifteen Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit E-2.

        44.    Accordingly, the Debtors (a) object to the asserted amount and/or Debtor

for each Tax Claim Subject To Modification and (b) seek an order modifying the Tax Claims

Subject To Modification to reflect the Modified Total and/or Debtor against which such Claims

should be asserted, as set forth on Exhibit E-2.

     (ii)    Modified Claims Asserting Reclamation

        45.    In addition, the Debtors have also determined that certain Claims (the

"Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated,

including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and

docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b)

assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter

agreement whereby the Debtors and the Claimant agreed upon the valid amount of the

reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors'

determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each,

a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation

Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses")

with respect to the reclamation demand are valid.

        46.    Set forth on Exhibit E-3 hereto is a list of Modified Claims Asserting

Reclamation that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim

Asserting Reclamation, Exhibit E-3 reflects the amount, classification, and Debtor asserted in the

Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar

amount and classification for Modified Claim Asserting Reclamation, and the Debtor against

which such Claim should be asserted, in a column titled "Claim As Modified."

       47.     The Debtors object to the amount, classification, and/or identity of the

Debtor for each Modified Claim Asserting Reclamation listed on Exhibit E-3 and request that

each such Claim be revised to reflect the amount, classification, and identity of the Debtor listed

in the "Claim As Modified" column of Exhibit E-3.  Thus, no Claimant listed on Exhibit E-3

would be entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount

exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit E-3, unless

the Debtors obtain an order of this Court providing that any Reserved Defense is valid and

denying priority status to such Claimant's reclamation demand, or (b) assert a classification that

is inconsistent with that listed in the "Claim As Modified" column, subject to the Debtors' right

to further object to each such Modified Claim Asserting Reclamation.  For clarity, Exhibit E-3

refers to the Debtor entities by case number and Exhibit F displays the formal name of fifteen

Debtor entities and their associated bankruptcy case numbers referenced in Exhibit E-3.

       48.     Accordingly, the Debtors (a) object to the amount, classification, and/or

identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order

modifying the Modified Claims Asserting Reclamation to reflect the Modified Total,

classification, and/or identity of the Debtor against which such Claim should be asserted, as set

forth on Exhibit E-3.

Separate Contested Matters

49.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Seventeenth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Seventeenth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Seventeenth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

Reservation Of Rights

50.     The Debtors expressly reserve the right to amend, modify, or supplement this Seventeenth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Seventeenth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

Responses To Objections

51.     Responses to the Seventeenth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

K.    Filing And Service Of Responses

52.    To contest an objection, responses (a "Response"), if any, to the
Seventeenth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules
of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York,
and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in
accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's
case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch
disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based
word processing format), (d) be submitted in hard copy form directly to the chambers of the
Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court
for the Southern District of New York, One Bowling Green, Room 632, New York, New York
10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098
(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom
LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,
John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00
p.m. (prevailing Eastern time) on July 12, 2007.**

L.    Contents Of Responses

53.    Every Response to this Seventeenth Omnibus Claims Objection must
contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

24

(c)    a concise statement setting forth the reasons why the Claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

M.    Timely Response Required

54.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on July 19, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Seventeenth Omnibus Claims Objection.

55.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Seventeenth Omnibus Claims Objection and who is served with the Seventeenth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to

such Claim consistent with the relief sought in the Seventeenth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

56.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

## Replies To Responses

57.    Replies to any Responses will be governed by the Claims Objection Procedures Order.

26

## Service Of Seventeenth Omnibus Claims Objection Order

58.      Service of any order with regard to this Seventeenth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

## Further Information

59.      Questions about this Seventeenth Omnibus Claims Objection or requests

for additional information about the proposed disposition of Claims hereunder should be directed

to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

## Notice

60.      Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

61.    Pursuant to the Claims Objection Procedures Order, the Debtors will provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Seventeenth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-1, A-2, B-1, B-2, B-3, C, D-1, and D-2, is attached hereto as Exhibit G.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits E-1, E-2, and E-3 is attached hereto as Exhibit H.  Claimants will receive a copy of this Seventeenth Omnibus Claims Objection without Exhibits A through E-3 hereto.  Claimants will nonetheless be able to review Exhibits A through E-3 hereto free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

62.    Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        June 15, 2007

                                SKADDEN, ARPS, SLATE, MEAGHER
                                   & FLOM LLP

                                By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606

                                    - and -

                                By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036

                                Attorneys for Delphi Corporation, et al.,
                                   Debtors and Debtors-in-Possession

29