**Hearing Date And Time: July 19, 2007 at 10:00 a.m.**
**Response Date And Time: July 12, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :
    In re                        :     Chapter 11
                           :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                           :
                           :     (Jointly Administered)
              Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBTORS' SIXTEENTH OMNIBUS OBJECTION (PROCEDURAL) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) DUPLICATE
OR AMENDED CLAIMS AND (B) PROTECTIVE CLAIMS

("SIXTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Sixteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (the "Sixteenth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.        Current Business Operations Of The Debtors

5.        Delphi and its subsidiaries and affiliates (collectively, the "Company") as
of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately
$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public
company business reorganization in terms of revenues and the thirteenth largest public company
business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11
debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.        The Company is a leading global technology innovator with significant
engineering resources and technical competencies in a variety of disciplines, and is one of the
largest global suppliers of vehicle electronics, transportation components, integrated systems and
modules, and other electronic technology.  The Company supplies products to nearly every
major global automotive original equipment manufacturer.

7.        Delphi was incorporated in Delaware in 1998 as a wholly-owned
subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the
Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the
assets and liabilities of these divisions and subsidiaries were transferred to the Company in
accordance with the terms of a Master Separation Agreement between Delphi and GM.  In
connection with these transactions, Delphi accelerated its evolution from a North American-
based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive
component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The
application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect
other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's
transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

portfolio, operational issues, and forward-looking revenue requirements. Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.       The Debtors' Transformation Plan

         11.      On March 31, 2006, the Company outlined five key tenets of its

transformation plan. First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business. Second, the Debtors must conclude their negotiations with

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

GM's business commitment to the Company. Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[4] Finally, the

Debtors must devise a workable solution to their current pension situation.

         12.      On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements. The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P.,

and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and UBS

---

[4]      As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
         portfolio on core technologies for which the Company believes it has significant competitive and technological
         advantages. The Company's revised operating structure consists of its four core business segments: Electronics
         and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also
         has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
         Company's transformation plan.

Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and Commitment

Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common

equity in the reorganized Delphi to support the Debtors' transformation plan.  The Equity

Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction

or waiver of numerous other conditions (including Delphi's goal of achieving consensual

agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi

or the Plan Investors of certain termination rights.  The second agreement was a plan framework

support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.

The Plan Framework Support Agreement outlines certain proposed terms of the Debtors'

anticipated plan of reorganization, including the distributions to be made to creditors and

shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and

the corporate governance of the reorganized Debtors.  The terms of the Plan Framework Support

Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their

U.S. labor unions and GM.

        13.     On January 12, 2007, this Court authorized the Debtors to execute, deliver,

and implement the Equity Purchase and Commitment Agreement and the Plan Framework

Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into an

amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase
and Commitment Agreement and the Plan Framework Support Agreement.

14.    On April 19, 2007, Delphi announced that the Debtors anticipated
negotiating changes to the Equity Purchase and Commitment Agreement and the Plan
Framework Support Agreement.  The Debtors also confirmed that none of the parties entitled to
give notice of termination of the framework agreements has done so as of the date of this filing
and that these agreements remain effective as previously filed until modified or terminated.  The
Debtors anticipate filing a plan of reorganization and disclosure statement as soon as reasonably
practicable following conclusion of a consensual agreement with the Debtors' major stakeholders.

15.    Although much remains to be accomplished in the Debtors' reorganization
cases, the Debtors and their stakeholders are together navigating a course that should lead to a
consensual resolution with their U.S. labor unions and GM while providing an acceptable
financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the
reorganization process, the Debtors expect to emerge as a stronger, more financially sound
business with viable U.S. operations that are well-positioned to advance global enterprise
objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-
quality products to its customers globally.  Additionally, the Company will preserve and
continue the strategic growth of its non-U.S. operations and maintain its prominence as the
world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),
501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)
Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice
Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the <u>New York

Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions),

<u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions

of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo

News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>,

<u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the

<u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis

Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>,

the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile

Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

        19.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed eight omnibus Claims

objections which objected to Claims on procedural grounds[5] and seven omnibus Claims

objections which objected to Claims on substantive grounds.[6]  Pursuant to such omnibus Claims

---

[5]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15, 2007; the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16, 2007; the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27, 2007; and the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 7998) on May 22, 2007.

[6]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; the Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records (Docket No. 6100) on December 8, 2006; the Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, And (C) Untimely Claims (Docket No. 6585) on January 12, 2007; the Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; the Eleventh Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books and Records, (C) Untimely Claims And An Untimely Tax Claim, (D) Claims Subject To Modification (Docket No. 6968) on March 16, 2007; the Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books

*(cont'd)*

objections, the Court has disallowed and expunged 8,995 Claims.  In addition, the hearings with

respect to approximately 633 Claims have been adjourned pursuant to the Claims Objection

Procedures Order (as defined below) and another 675 Claims are subject to pending objections.

   20. On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

this Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

   21. In this Sixteenth Omnibus Claims Objection, the Debtors are objecting to

26 Proofs of Claim.[7]

_____
*(cont'd from previous page)*
 And Records, (c) Protective Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And
 Records, (e) Untimely Claims And Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims
 Subject To Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825)
 on April 27, 2007; and the Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And
 Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On
 Debtors' Books And Records, (C) Untimely Claims And Untimely Tax Claim, And (D) Claims Subject To
 Modification, Tax Claims Subject To Modification, and Modified Claims Asserting Reclamation (Docket No.
 7999) on May 22, 2007.

[7] Contemporaneously with this Sixteenth Omnibus Claims Objection, the Debtors are filing the Seventeenth
 Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A)
 Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance
 Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And
 (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting
 Reclamation (the "Seventeenth Omnibus Claims Objection").  In the Seventeenth Omnibus Claims Objection,
 the Debtors object to Claims on substantive grounds and are seeking (i) to expunge and disallow Claims that (a)
 are insufficiently documented, (b) are not reflected on the Debtors' books and records, including certain Claims

*(cont'd)*

<u>Relief Requested</u>

22.      By this objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) those

Claims set forth on <u>Exhibit A</u> hereto as "Claims To Be Expunged" because they are duplicative

of other Claims or have been amended or superseded by later-filed Claims and (b) those Claims

set forth on <u>Exhibit B</u> hereto because they are merely protective in nature.  Pursuant to such an

order, those Claims identified on <u>Exhibit A</u> hereto as "Surviving Claims" would remain on the

Debtors' claims register, but would remain subject to future objection by the Debtors and other

parties-in-interest.

F.      <u>Duplicate Or Amended Claims</u>

23.      During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim in fact assert duplicate Claims (each, a "Duplicate Claim") for

a single liability.  In some instances, Duplicate Claims arose when a Claimant filed Proofs of

Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the

Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation

provided for those Proofs of Claim, and the Debtors' Schedules and Statements to determine

which duplicate claim should be the surviving claim.

24.      Additionally, the Debtors determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Claims").  For instance, many

_____

*(cont'd from previous page)*

    filed by taxing authorities, and (c) were not timely filed pursuant to the Bar Date Order and (ii) to modify
    certain Claims, including (a) Claims filed by taxing authorities and (b) Claims in which the claimant asserted a
    reclamation demand and the claimant and the Debtors entered into a letter agreement regarding the valid
    amount of the reclamation demand, with such agreement being subject to certain reserved defenses.  The
    Debtors are objecting to 257 Proofs of Claim in the Seventeenth Omnibus Claims Objection.

Amended Claims were filed to amend an amount previously claimed in an earlier Proof of Claim

(the "Original Claim").  Other Amended Claims were filed to amend the classification of part or

all of an earlier Original Claim.

    25.  It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate

Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original

Claims for which Amended Claims were subsequently filed (collectively, the "Duplicate Or

Amended Claims").

    26.  Set forth on Exhibit A hereto is a list of Claims that the Debtors have

identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, Exhibit A

classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a

"Surviving Claim" (the "Surviving Claim").[8]  Generally, the Surviving Claims reflect the

classifications of the liabilities as reflected on the Debtors' Schedules and Statements.[9]  The

Debtors request that the Claims marked as Expunged Claims on Exhibit A be disallowed and

---

[8] Certain of the Claims on Exhibit A and B may be listed in the amount of $0.00.  This reflects the fact that the
Claim amount asserted by the Claimant is unliquidated.

[9] As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors'
Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

  Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records
  for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General
  Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the
  "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has
  been consolidated for purposes of the Schedules and Statements and such consolidated financial
  information has been included in the Schedules and Statements of each of [the Catalyst Entities].

 Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or
 more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the
 Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of
 the books and records of the Catalyst Entities, claimants should not retain more than one Claim for a single
 liability.  Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as
 obligations of another Debtor entity at a later date.

expunged.  With respect to the Claims on Exhibit A marked as Surviving Claims, the Debtors do

not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A, however,

does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the

Surviving Claims at a later date on any basis whatsoever, except as expressly provided in

paragraph 33 below.

27.    Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims

and (b) seek entry of an order disallowing and expunging the Duplicate Or Amended Claims in

their entirety.

G.    Protective Claims

28.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim were asserted to protect against future rejection damages that

could arise if the Debtors ultimately reject an executory contract or unexpired lease pursuant to

section 365 of the Bankruptcy Code.

29.    As set forth in the Bar Date Notice, creditors were notified that they would

have thirty calendar days after the effective date of a rejection of an executory contract or an

unexpired lease to file a proof of claim asserting damages.  Therefore, because a creditor's right

to assert a Claim for future rejection damages is preserved by the Bar Date Order, the Debtors

object to the Protective Claims because they in fact represent Claims for liabilities not yet

incurred and as such do not constitute Claims against the Debtors.

30.    Attached hereto as Exhibit B is a list of Claims that the Debtors have

identified as Protective Claims.  Accordingly, the Debtors (a) object to the Protective Claims and

(b) seek entry of an order disallowing and expunging the Protective Claims in their entirety.

13

<u>Separate Contested Matters</u>

31.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Sixteenth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Sixteenth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Sixteenth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

<u>Reservation Of Rights</u>

32.     The Debtors expressly reserve the right to amend, modify, or supplement this Sixteenth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors.  Should one or more of the grounds for objection stated in this Sixteenth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.

33.     Notwithstanding the foregoing, solely to the extent that (a) a Claimant filed duplicative claims against different Debtors for the same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) the Debtors by this motion are seeking to have certain of such Claimant's Multiple Debtor Duplicative Claims disallowed and expunged, if one of the Multiple Debtor Duplicative Claims was originally filed against the correct Debtor, the Debtors would not seek to have the Claimant's remaining Multiple Debtor Duplicative Claim (the "Remaining Claim") disallowed and expunged solely on the basis that such Remaining Claim is asserted against the incorrect Debtor.  For the avoidance of doubt, except as expressly provided

14

in the preceding sentence, the Remaining Claims would remain subject to further objection on

any grounds whatsoever, including, without limitation, that any such Remaining Claim is

asserted against the incorrect Debtor if the Claimant did not file a Multiple Debtor Duplicative

Claim against the correct Debtor.  Furthermore, the Debtors reserve the right to object to any

Remaining Claim and any holder of a Remaining Claim may seek relief from this Court for the

purposes of requesting that this Court modify the Remaining Claim to assert such Remaining

Claim against a different Debtor.

Responses To Objections

34.    Responses to the Sixteenth Omnibus Claims Objection are governed by

the provisions of the Claims Objection Procedures Order.  The following summarizes the

provisions of that order, but are qualified in all respects by the express terms thereof.

H.    Filing And Service Of Responses

35.    To contest an objection, responses (each, a "Response"), if any, to the

Sixteenth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

15

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on July 12, 2007**.

I.      Contents Of Responses

                36.    Every Response to this Sixteenth Omnibus Claims Objection must contain

at a minimum the following:

                        (a)    the title of the Claims objection to which the Response is directed;

                        (b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

                        (c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

                        (d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints; and

                        (e)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the Claim.

J.      Timely Response Required

                37.    If a Response is properly and timely filed and served in accordance with

the procedures set forth above, the hearing on the relevant Claims covered by the Response will

be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on July 19,

2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection

16

Procedures Order will apply to all Responses and hearings arising from this Sixteenth Omnibus

Claims Objection.

       38.    <u>Only those Responses made in writing and timely filed and received will</u>

<u>be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Sixteenth</u>

<u>Omnibus Claims Objection and who is served with the Sixteenth Omnibus Claims Objection</u>

<u>fails to file and serve a timely Response in compliance with the Claims Objection Procedures</u>

<u>Order, the Debtors may present to the Court an appropriate order seeking relief with respect to</u>

<u>such Claim consistent with the relief sought in the Sixteenth Omnibus Claims Objection without</u>

<u>further notice to the Claimant, provided that, upon entry of such an order, the Claimant will</u>

<u>receive notice of the entry of such order as provided in the Claims Objection Procedures Order,</u>

<u>provided further, however, that if the Claimant files a timely Response which does not include</u>

<u>the required minimum information required by the Claims Objection Procedures Order, the</u>

<u>Debtors may seek disallowance and expungement of the relevant Claim or Claims only in</u>

<u>accordance with the Claims Hearing Procedures Order.</u>

Replies To Responses

       39.    Replies to any Responses will be governed by the Claims Objection

Procedures Order.

Service Of Sixteenth Omnibus Claims Objection Order

       40.    Service of any order with regard to this Sixteenth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

       41.    Questions about this Sixteenth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

42.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

43.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Sixteenth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection, as well as a copy of the Claims Objection Procedures Order.  A form of Notice Of

Objection To Claim is attached hereto as Exhibit C.  Claimants will receive a copy of this

Sixteenth Omnibus Claims Objection without Exhibits A and B hereto.  Claimants will

18

nonetheless be able to review <u>Exhibits A</u> and <u>B</u> hereto free of charge by accessing the Debtors'

Legal Information Website (www.delphidocket.com).  In light of the nature of the relief

requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

44.    Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
              June 15, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                        By:  _/s/ John Wm. Butler, Jr._____
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 9331)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606

                                              - and -

                                        By:  _/s/ Kayalyn A. Marafioti_____
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036

                                        Attorneys for Delphi Corporation, et al.,
                                              Debtors and Debtors-in-Possession