IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :
    In re                                   :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                            Debtors.        :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On June 15, 2007, I caused to be served the documents listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit B</u> hereto via electronic notification and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-paid U.S. mail:

1) Expedited Motion For Orders Under 11 U.S.C. Sections 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Delphi Automotive Systems LLC's Mexico Brake Plant Assets Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No 8249) [a copy of which is attached hereto as <u>Exhibit D</u>]

2) Expedited Motion For Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan ("Fourth § 1121(d) Exclusivity Extension Motion") (Docket No. 8273) [a copy of which is attached hereto as <u>Exhibit E</u>]

On June 15, 2007, I caused to be served the document listed below upon the parties listed on <u>Exhibit F</u> hereto via overnight delivery:

3) Expedited Motion For Orders Under 11 U.S.C. Sections 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving

(I) Sale Of Delphi Automotive Systems LLC's Mexico Brake Plant Assets Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No 8249) [a copy of which is attached hereto as Exhibit D]

Dated: June 18, 2007

_____/s/ Evan Gershbein_____
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 18th day of June, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____/s/ Shannon J. Spencer_____

Commission Expires: ___6/20/10_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein  Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092  212-450-4213 | 212-450-3092  212-450-3213 | donald.bernstein@dpw.com  brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com  karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler  Bonnie Steingart  Vivek Melwani  Jennifer L Rodburg  Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com  slivin@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3448 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com  susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

6/18/2007 11:58 AM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

6/18/2007 11:58 AM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

6/18/2007 11:58 AM
Master Service List Overnight Mail

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivnj@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

6/18/2007 11:58 AM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

6/18/2007 11:58 AM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel to Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605 529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.C OM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale  Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com  bceccotti@cwsny.com | Counsel to International Union, United Automobile, Aerospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce H. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200  (230) 862-8231 | 203-629-1977  (203) 629-1977 | mlee@contrariancapital.com  jstanton@contrariancapital.com  wraine@contrariancapital.com  solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher  Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com  cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | akatz@entergy.com | | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah N. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

6/18/2007 11:57 AM
Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Sotiroff & Abramczyk, P.C. | Lawrence A Tower | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | ltower@sotablaw.com | Counsel to  Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com ispecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

6/18/2007 11:57 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel to National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

6/18/2007 11:57 AM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | 609-984-0183 | Deputy Attorney General - State of New Jersey |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

6/18/2007 11:57 AM
US MAIL

# EXHIBIT D

**Bidding Procedures Hearing Date And Time: June 26, 2007 at 10:00 a.m.**
**Bidding Procedures Objection Deadline: June 22, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time: July 19, 2007 at 10:00 a.m.**
**Sale Hearing Objection Deadline:  July 12, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -          x
                                                            :
         In re                                              :     Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :     Case No. 05-44481 (RDD)
                                                            :
                                                            :     (Jointly Administered)
               Debtors.                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -          x

EXPEDITED MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 (A) (I) APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN BID
PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING SALE
HEARING DATE AND (B) AUTHORIZING AND APPROVING (I) SALE OF DELPHI AUTOMOTIVE
SYSTEMS LLC'S MEXICO BRAKE PLANT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

("MEXICO BRAKE PLANT ASSET SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this motion (the "Motion") for orders under 11 U.S.C. §§ 363 and 365 and Fed. R.

Bankr. P. 2002, 6004, 6006, and 9014 (i) approving the bidding procedures set forth herein and

attached hereto as Exhibit A (the "Bidding Procedures"), (ii) granting certain bid protections, (iii)

approving the form and manner of sale notices (the "Notice Procedures"), and (iv) setting a sale

hearing (the "Sale Hearing") in connection with the sale (the "Sale") of certain assets of Delphi

Automotive System LLC ("DAS LLC" or the "Seller") comprising substantially all of DAS

LLC's assets used in the brake and chassis modules product lines manufactured in a plant located

in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery, equipment,

inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to

be sold to the Purchasers (as defined below) (the "Acquired Assets") related to the Mexico Brake

Plant Business.  The Sale would be effected for $15.0 million and other consideration.  The

Acquired Assets are being sold to Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A.

de C.V. (together with Bosch, the "Purchasers") pursuant to that certain Asset Sale And Purchase

Agreement, dated June 14, 2007, by and among DAS LLC, Delphi Sistemas de Energia, S.A. de

C.V. ("Delphi Mexico" and, collectively with DAS LLC, the "Sellers"),[1] and the Purchasers (the

"Agreement")[2] or to the Successful Bidder (as hereinafter defined) submitting a higher or

otherwise better bid.  The Acquired Assets being sold by DAS LLC under the Agreement would

be conveyed free and clear of liens, claims, and encumbrances.  The Sale would include the

---

[1]    The assets to be sold by Delphi Mexico, a non-Debtor affiliate, are not subject to this Motion.  For the purpose
of convenience, references to "the Sellers" herein (including all exhibits) means, as the context requires, (i)
DAS LLC to the extent such reference implicates assets of DAS LLC or (ii) Delphi Mexico to the extent such
reference implicates assets of Delphi Mexico.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

2

assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and together with the Assumed Contracts, the "Transferred Contracts") to the Purchasers or the Successful Bidder, as the case may be, and the assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers or the Successful Bidder, as the case may be. In support of this Motion, DAS LLC respectfully represents as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 363 and 365 of the Bankruptcy Code and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[3]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[4]

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[3]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[4]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

4

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[5]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[5]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its

transformation plan.  First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business.  Second, the Debtors must conclude their negotiations with

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

GM's business commitment to the Company.  Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[6]  Finally, the

Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors marked another milestone in their

chapter 11 cases with the announcement of two significant agreements.  The first of these was an

equity purchase and commitment agreement (the "Equity Purchase and Commitment

Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management,

L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well as Merrill Lynch & Co. and

---

[6]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan.

6

UBS Securities LLC (collectively, the "Plan Investors").  Under the Equity Purchase and

Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred

and common equity in the reorganized Delphi to support the Debtors' transformation plan.  The

Equity Purchase and Commitment Agreement is subject to the completion of due diligence,

satisfaction or waiver of numerous other conditions (including Delphi's goal of achieving

consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by

either Delphi or the Plan Investors of certain termination rights.  The second agreement was a

plan framework support agreement (the "Plan Framework Support Agreement") with the Plan

Investors and GM.  The Plan Framework Support Agreement outlines certain proposed terms of

the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors

and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues,

and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework

Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements

with their U.S. labor unions and GM.

       13.     On January 12, 2007, this Court authorized the Debtors to execute,

deliver, and implement the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement (Docket No. 6589).  On February 28, 2007, Delphi entered into

an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to

extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the

Appaloosa Management L.P. affiliate have the right to terminate the agreement on account of not

yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a

consensual settlement of legacy issues with GM.  The amendment extended the termination right

pursuant to a 14-day notice mechanism.  The amendment also extended the deadline to make

certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase

and Commitment Agreement and the Plan Framework Support Agreement.

14.    On April 19, 2007, Delphi announced that the Debtors anticipated

negotiating changes to the Equity Purchase and Commitment Agreement and the Plan

Framework Support Agreement.  The Debtors anticipate filing a plan of reorganization and

disclosure statement as soon as reasonably practical following conclusion of a consensual

agreement with the Debtors' major stakeholders.  The Debtors also confirmed that none of the

parties entitled to give notice of termination of the framework agreements has done so as of the

date of this filing and that these agreements remain effective as previously filed until modified or

terminated.  The Debtors anticipate filing a plan of reorganization and disclosure statement as

soon as reasonably practicable following conclusion of a consensual agreement with the Debtors'

major stakeholders.

15.    Although much remains to be accomplished in the Debtors' reorganization

cases, the Debtors and their stakeholders are together navigating a course that should lead to a

consensual resolution with their U.S. labor unions and GM while providing an acceptable

financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the

reorganization process, the Debtors expect to emerge as a stronger, more financially sound

business with viable U.S. operations that are well-positioned to advance global enterprise

objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as the

world's premier auto supplier.

<u>Relief Requested</u>

16.     On June 14, 2007, the Sellers and the Purchasers entered into the

Agreement which provides for the Sale of the Acquired Assets to the Purchasers, for $15.0

million and other consideration.  The proposed Sale is subject to additional competitive bidding

pursuant to the proposed Bidding Procedures and approval by this Court.  By this Motion, DAS

LLC seeks entry of two orders.  First, at the omnibus hearing to be held on June 26, 2007, DAS

LLC will seek entry of an order substantially in the form attached hereto as <u>Exhibit B</u> (the

"Bidding Procedures Order") approving the Bidding Procedures, Notice Procedures, and certain

bid protections to be provided to the Purchasers pursuant to the Agreement and as described

more fully herein.  Second, subject to the terms of the Bidding Procedures Order, at the omnibus

hearing to be held on July 19, 2007, DAS LLC will seek entry of an order substantially in the

form attached hereto as <u>Exhibit C</u> (the "Sale Approval Order") authorizing and approving the

Sale, the assumption and assignment of the Assumed Contracts, and the assumption by the

Purchasers of the Assumed Liabilities.

17.     As more fully set forth below, after a comprehensive strategic review,

DAS LLC believes that the Sale is its best opportunity under the circumstances to maximize the

underlying core value of the Acquired Assets and, therefore, the sale is in the best interests of its

estate and its stakeholders.

<u>Basis For Relief</u>

A.     <u>The Mexico Brake Plant Business</u>

18.     The Sellers operate a manufacturing plant in Saltillo, Mexico (the "Mexico

Brake Plant"), which supports GM, Bosch, and other customers with a variety of brake products

and chassis modules.  In 2006, the Mexico Brake Plant Business generated approximately $213

million in revenues.  The Mexico Brake Plant Business began in 1999 to supply certain products

for the GMT 800 full sized truck and sport utility vehicles manufactured at the GM vehicle assembly plant in Silao, Mexico. The GMT 800 pickup trucks and sport utility vehicles are a key program for the Mexico Brake Plant Business, accounting for a significant majority of the Mexico Brake Plant Business' revenues.

19.    In 2005, GM, as part of a "mid-cycle enhancement" (i.e., design refresh) program for the GMT 800 pickup trucks, designated Robert Bosch Corporation as the Tier I supplier for the program. The Sellers, however, continued to support the brakes requirements for the GM Silao vehicle assembly plant as a "directed buy" supplier to Robert Bosch Corporation. The Mexico Brake Plant Business also provides brakes and suspension parts to other GM assembly locations in Mexico and Arlington, Texas and support for other plants engaged in the supply of brakes to other GM locations. The Mexico Brake Plant Business continues to supply excellent quality products to GM, through Robert Bosch Corporation.

B.    Factors Leading To The Sale

20.    On March 31, 2006, the Debtors announced the five key tenets of their transformation plan, one of which was to streamline their product portfolio by identifying non-core product lines that do not fit into their future strategic framework. Indeed, the Debtors identified the brake business as a non-core product line. Because the brake business does not fit within the Debtors' anticipated product portfolio, DAS LLC has determined to divest the Mexico Brake Plant Business.

21.    Following Delphi's announcement of product lines and plants that would be either sold or wound-down, GM, the Mexico Brake Plant Business' largest customer, began to select new sources for the brake parts made by the Mexico Brake Plant Business. GM ultimately selected Bosch to supply all of the GMT 900 (full sized pick-ups and SUVs) light duty brake

10

components made by the Mexico Brake Plant Business.  As a result of GM's resource decision, a

significant majority of the Mexico Brake Plant Business' future revenue stream would be

eliminated.

22.     The Sellers engaged in discussions with a number of potentially interested

parties regarding the sale of the Mexico Brake Plant Business.  In part, due to the long history of

supply to GM through Bosch as a Tier I supplier, however, Bosch expressed the most interest in

purchasing the Mexico Brake Plant Business and offered the most value for the Acquired Assets.

23.     DAS LLC evaluated selling the Mexico Brake Plant Business pursuant to

the terms and conditions of the Agreement (a copy of which is attached hereto as Exhibit D), as

well as the benefits of other alternatives.  DAS LLC concluded that the value of the Mexico

Brake Plant Business would be maximized for the benefit of all stakeholders through its

divestiture – whether to Bosch pursuant to the terms of the Agreement or to another bidder

making the highest or otherwise best offer at the auction (the "Successful Bidder"), as the case

may be.  Moreover, Bosch's familiarity with the Mexico Brake Plant Business and its

relationship with GM will minimize, if not avoid entirely, any possible disruption to both GM

and the other customers of the Mexico Brake Plant Business.

C.     The Agreement

24.     Pursuant to the Agreement, (a) the Sellers would sell the Mexico Brake

Plant Business to the Purchasers for $15.0 million and other consideration, free and clear of all

liens, claims, interests, and encumbrances related to assets being sold by DAS LLC, (b) DAS

LLC would assume and assign the Assumed Contracts to the Purchasers, and (c) the Purchasers

would assume the Assumed Liabilities.

25.    The significant terms of the Agreement are as follows:[7]

(a)    <u>General Terms</u>.  The Purchasers would acquire the Acquired Assets, which comprise substantially all of the assets exclusively used by the Mexico Brake Plant Business through an asset sale.  Among others, certain bailed assets, financial assets, contracts, tax refunds, privileged information and materials, benefits arising under insurance policies, finished goods related to the Mexico Brake Plant Business, certain electrical materials and equipment, and DAS LLC's rights under chapter 5 of the Bankruptcy Code would be excluded from the Acquired Assets.[8]

(b)    <u>Bankruptcy Approval</u>.  The Sale would be subject to approval by this Court and competitive bidding pursuant to the Bidding Procedures.

(c)    <u>Documentation</u>.  The Sale would be effected pursuant to the Agreement and related documentation.  At the closing, the Sellers and the Purchasers would enter into, among others, the following agreements: (i) an assignment of the Mexico Brake Plant lease to the Purchasers by Delphi Mexico, a non-Debtor affiliate and lessee, or a transfer deed, (ii) a lease agreement, if applicable, (iii) a maintenance agreement for one of the Purchaser's use of Delphi Mexico's substation to deliver electricity, (iv) an assignment and assumption agreement relating to the Transferred Contracts, (v) an indemnity escrow agreement by and among the Sellers, the Purchasers, and an escrow agent for the purposes described below (the "Escrow Agreement"), and (vi) a bill of sale.

(d)    <u>Purchase Price</u>.  The purchase price to be paid by the Purchasers would be $15.0 million.

(e)    <u>Deposit Escrow</u>.  Upon execution of the Agreement, the Purchasers would place $500,000 into an escrow account as a good faith deposit (the "Deposit Amount").  Upon closing, or if the Agreement is terminated prior to closing because of the Purchasers' failure to consummate the Sale, the Sellers would be entitled to keep the Purchasers' Deposit Amount.  The Sellers' retention of the Deposit Amount would constitute the Sellers' sole recourse in connection with such failure of the Purchasers.

(f)    <u>Representations And Warranties</u>.  Pursuant to the Agreement, the Sellers and the Purchasers provided certain representations and warranties relating to the Sale and the

---

[7]    In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement control.

[8]    Copies of the schedules to the Agreement are available upon request to parties-in-interest who can show that they would be affected by the relief requested by this Motion and who execute a confidentiality agreement acceptable to the Debtors.

Acquired Assets which would survive the closing of the Sale and generally expire on the second anniversary of the date of closing.

(g)  Covenants.  Between the date of signing the Agreement and the closing, and subject to certain exceptions, the Sellers would be required to, among other things: (i) carry on the business in substantially the same manner (except for the treatment of finished products related to the Mexico Brake Plant Business),[9] (ii) perform in all material respects all of their respective obligations under certain contracts and not amend, alter, or modify in any significant respect such contracts in a manner that is adverse to the Mexico Brake Plant Business, (iii) keep in full force and effect insurance comparable in amount and scope to coverage maintained by them on the date of the Agreement, (iv) use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees, and others having business relations with the Mexico Brake Plant Business, (v) endeavor to maintain the goodwill of the Mexico Brake Plant Business, and (vi) promptly advise the Purchasers of any material and adverse change in the business condition (financial or other) of the business or the Acquired Assets. Additionally, no Seller would make a capital expenditure in relation to the Mexico Brake Plant Business in excess of $5,000 without prior notification to the Purchasers.

(h)  Indemnification.  The Sellers have agreed to indemnify the Purchasers for damages incurred by the Purchasers as a result of: (i) the retained liabilities and the excluded assets that are retained at closing by the Sellers, (ii) a breach of any representation or warranty of Sellers in the Agreement, (iii) any failure to perform a covenant that the Agreement required be performed by Sellers on or before closing, or (iv) a breach of any agreement or covenant of Seller in the Agreement to be performed after closing. The Purchasers' sole source from which to satisfy any claim for indemnification would be the general escrow amount ($2,000,000), which would be initially placed into escrow by the Purchasers at closing (the "Escrow Amount"). Under no circumstances would the Sellers be responsible for indemnity in any amounts exceeding the Escrow Amount. Notwithstanding the foregoing, any claim based on clause (iii) above would have to be made within one hundred eighty (180) days after the closing date. Additionally, on the one year anniversary of the closing date, the escrow agent would release $1,000,000 of the Escrow Amount to the Sellers. As soon as possible after the second anniversary of the closing, the applicable Escrow Amount, including all cash, interest accrued thereon and other property retained by the escrow agent, would be delivered to the Sellers by the escrow agent, less an amount necessary to satisfy the amount of all then outstanding claims by the Purchasers for damages in accordance with the terms of the escrow agreement.

(i)  Closing Conditions.  In addition to certain other customary closing conditions relating to bankruptcy court approvals and regulatory matters, the obligation of the Purchasers to close the Sale would be subject to the satisfaction of the following conditions: (i) the accuracy of the Sellers' representations and warranties in all material respects, (ii) the

---

[9]   The Purchasers would agree to purchase from DAS LLC after closing all of the finished products on hand at closing related to the Mexico Brake Plant Business under the same terms that existed between the parties prior to the closing.

performance in all respects by the Sellers of their covenants under the Agreements, and (iii) payment of cure amounts with respect to Assumed Contracts.

(j)    Termination.  The Agreement could be terminated in the following circumstances (but not by a party which is in breach of the Agreement): (i) upon mutual written consent of the Sellers and the Purchasers, (ii) by either the Sellers or the Purchasers if consummation of the Sale would violate any final non-appealable order of any regulatory governmental entity other than this Court, (iii) by either the Sellers or the Purchasers if the Sellers consummate an alternative transaction, (iv) by either the Sellers or the Purchasers if the closing has not occurred by September 28, 2007, (v) by either the Sellers or the Purchasers if the Sale Approval Order is not entered by August 27, 2007 or if the Sale Approval Order, as of August 27, 2007, is subject to a stay or injunction, (vi) by the Purchasers within ten business days of becoming aware that a material adverse effect has occurred and is continuing, or (vii) by the Sellers if they accept or are about to accept a qualified bid at the auction other than that of the Purchasers (provided that such termination under (vii) will be of no effect unless the Sellers enter into an agreement with respect to such qualified bid within two business days of termination and subsequently complete the Sale pursuant thereto).

(k)    Break-up Fee.  Subject to Court approval and provided that the terminating party is not in material breach of the Agreement, the Sellers would be required to pay a break-up fee to the Purchasers in the amount of $450,000, which amounts to 3% of the Purchase Price (the "Break-Up Fee"), if (i) (a) either the Sellers or the Purchasers terminated the Agreement for the Sellers to consummate an alternative transaction for the sale of the Mexico Brake Plant Business or (b) the Sellers terminated the Agreement after declaring a Qualified Bid (as defined below) other than the Purchasers' the Successful Bid (as defined below) and (ii) the Sellers consummated such alternative transaction with one or more parties other than the Purchasers.

(l)    Expense Reimbursement.  Subject to Court approval and provided that the Purchasers are not then in breach of the Agreement for which the Sellers had previously notified either Purchaser, the Sellers would be required to reimburse the Purchasers' reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Agreement in an amount not to exceed $200,000 (the "Expense Reimbursement") upon: (i) a termination of the Agreement by reason of the failure of the closing to occur by the September 28, 2007 or (ii) a termination of the Agreement by reason of (A) the failure of the Sale Approval Order to be entered on or before August 27, 2007 or (B) the Sale Approval Order, as of August 27, 2007, being subject to a stay or injunction, in any case.

D.    Bidding Procedures

26.    The Sale of the Acquired Assets would be subject to higher or otherwise

better offers pursuant to the Bidding Procedures.  DAS LLC believes that the proposed structure

of the Bidding Procedures is the one most likely to maximize the realizable value of the

Acquired Assets for the benefit of DAS LLC's estate and its stakeholders.  Accordingly, DAS

LLC seeks approval of the Bidding Procedures for the Sale of the Acquired Assets.

       27.     The Bidding Procedures describe, among other things, the assets available

for sale, the manner in which bidders and bids become "qualified," the coordination of diligence

efforts among bidders, the receipt and negotiation of bids received, the conduct of any

subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s), and

this Court's approval thereof (collectively, the "Bidding Process").

       28.     The proposed Bidding Procedures attached hereto as <u>Exhibit A</u> provide, in

relevant part, as follows:[10]

       (a)     <u>Assets To Be Sold</u>:  The assets proposed to be sold are the Acquired
Assets.

       (b)     <u>Free Of Any And All Claims And Interests</u>:  Except as set forth in
the Agreement or the purchase agreement of a Successful Bidder, the Acquired Assets being sold
by DAS LLC are to be sold free and clear of all liens, claims, interests, and encumbrances of any
type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or
unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or
disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured,
material or non-material, disputed or undisputed, whether arising prior to or subsequent to
October 8, 2005, and whether imposed by agreement, understanding, law, equity, or otherwise,
including claims otherwise arising under doctrines of successor liability), including but not
limited to those (i) that purport to give to any party a right or option to effect any forfeiture,
modification, right of first refusal, or termination of DAS LLC's or the Purchasers' interest in the
Acquired Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in
connection with, or in any way relating to the operation of the Mexico Brake Plant Business
prior to the transfer of the Acquired Assets to the Purchasers or a Successful Bidder (collectively,
the "Claims and Interests") and the Claims and Interests are to attach to DAS LLC's allocation of
the net proceeds of the sale of such Acquired Assets.

       (c)     <u>Participation Requirements</u>:  To ensure that only bidders with a
serious interest in the purchase of the Acquired Assets participate in the Bidding Process, the
Bidding Procedures provide for minimal requirements for a potential bidder to become a
"Qualified Bidder," including the following:  (i) executing a confidentiality agreement in form

---

[10]   In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the
provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary
have the meanings ascribed to them in the Bidding Procedures.

and substance satisfactory to DAS LLC, (ii) providing DAS LLC with certain financial assurances as to such bidders' ability to close a transaction, and (iii) submitting a preliminary proposal reflecting the purchase price, any Acquired Assets expected to be excluded, the structure and financing of the transaction, any anticipated regulatory approvals, the anticipated time frame and any anticipated impediments to obtaining such approval, any additional conditions to closing the Qualified Bidder may wish to impose, and the nature and extent of any due diligence it may wish to conduct and the date by which such due diligence will be completed.

(d)    Due Diligence:  All Qualified Bidders will be afforded an opportunity to participate in the diligence process.  DAS LLC would coordinate the diligence process and provide due diligence access and additional information as reasonably requested by any Qualified Bidders.

(e)    Bid Deadline:  A bid deadline of 11:00 a.m. (prevailing Eastern time) on July 10, 2007 (the "Bid Deadline") has been established.  As soon as reasonably practicable following receipt of each Qualified Bid, DAS LLC would deliver to the Purchasers and their counsel complete copies of all items and information set forth in section (g) below.

(f)    Bid Requirements:  All bids must include the following documents: (i) a letter stating that the bidder's offer is irrevocable until two business days after the closing of the Sale of the Mexico Brake Plant Business, (ii) an executed copy of the Agreement, together with all schedules, marked to show amendments and modifications to the agreement, including, without limitation, to the purchase price and proposed schedules, (iii) a good faith deposit of $500,000, and (iv) written evidence of a commitment for financing or other ability to consummate the proposed transaction.

(g)    Qualified Bids:  To be deemed a "Qualified Bid," a bid must be received by the Bid Deadline and, among other things, must (i) be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to and are not materially more burdensome or conditional to DAS LLC than those contained in the Agreement, (ii) not be contingent on obtaining financing or the outcome of unperformed due diligence, (iii) have a value greater than the purchase price reflected in the Agreement, plus the amount of the Break-Up Fee, plus $200,000 initially, then in increments of $100,000, (iv) not be conditioned on bid protections, (v) contain acknowledgements and representations that the bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement, and (vi) include a commitment to consummate the purchase of the Acquired Assets within not more than 15 days after entry of an order from this Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within 20 days after entry of such order.  DAS LLC would retain the sole right to deem a bid a Qualified Bid, if such bid does not conform to one or more of the aforementioned requirements.

Notwithstanding the foregoing, the Purchasers shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction (as defined below), and the Sale. A Qualified Bid would be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.

(h)     Conduct Of Auction: If DAS LLC receives at least one Qualified Bid in addition to that of the Purchasers, they would conduct an auction (the "Auction") of the Acquired Assets at 10:00 a.m. (prevailing Eastern time) on or before July 17, 2007, or such later time as DAS LLC shall notify all Qualified Bidders who have submitted Qualified Bids, in accordance with the procedures outlined in the Bidding Procedures which include: (i) attendance at the Auction would be limited to specified parties as outlined in the Bidding Procedures, (ii) by the close of business on July 13, 2007, each Qualified Bidder with a Qualified Bid must inform DAS LLC whether it intends to participate in the Auction and by the close of business on July 16, 2007, DAS LLC must provide such bidders with copies of the Qualified Bid which DAS LLC then believes is the highest or otherwise best offer for the Acquired Assets, (iii) all Qualified Bidders would be entitled to be present for all subsequent bids, and (iv) bidding at the Auction would begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $100,000, and conclude after each participating bidder has had the opportunity to submit one or more additional subsequent bids.

(i)     Selection Of Successful Bid:  As soon as practicable after the conclusion of the Auction, DAS LLC will review each Qualified Bid and identify the highest or otherwise best offer for the Acquired Assets (the "Successful Bid") and the Successful Bidder. DAS LLC would sell the Acquired Assets to the Successful Bidder pursuant to the terms of the highest or otherwise best Qualified Bid and the transaction would be consummated as soon as reasonably practicable following the approval of such Qualified Bid by this Court.

(j)     Sale Hearing: DAS LLC requests that the Sale Hearing be scheduled for July 19, 2007 at 10:00 a.m. (prevailing Eastern time) and that the Sale Hearing may be adjourned or rescheduled by DAS LLC without notice other than by an announcement of the adjourned date at the Sale Hearing; provided, however, that the parties agreed that the Sale Hearing would not be adjourned or rescheduled to a date later than August 31, 2007.  If no Qualified Bids other than that of the Purchasers are received, DAS LLC would proceed with the sale of the Acquired Assets to the Purchasers following entry of such order.  If DAS LLC does receive additional Qualified Bids, then at the Sale Hearing, DAS LLC would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid" and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by DAS LLC unless and until approved by the Court.  Following approval of the sale to the Successful Bidder, if Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and DAS LLC would effectuate a sale to the Alternate Bidder without further order of this Court.

(k)     Return Of Good Faith Deposits:  Good faith deposits of all Qualified Bidders (except for the Successful Bidder) would be held in an interest-bearing escrow account and all Qualified Bids would remain open until two business days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the good faith deposits

17

submitted by the Successful Bidder, together with interest thereon, would be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder. If a Successful Bidder fails to consummate an approved sale, DAS LLC would not have any obligation to return such good faith deposit and such deposit would irrevocably become property of DAS LLC. On the Return Date, DAS LLC would return the good faith deposits of all other Qualified Bidders, together with the accrued interest thereon.

(l)     Reservation Of Rights:  DAS LLC, after consultation with the official committee of unsecured creditors (the "Creditors' Committee"):  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time, any bid (other than the Purchasers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of DAS LLC, its estate, and its stakeholders as determined by DAS LLC in its sole discretion.

E.     Bid Protections

29.     The Purchasers have expended, and likely will continue to expend, considerable time, money, and energy pursuing the Sale and have engaged in extended arm's length and good faith negotiations. The Agreement is the culmination of these efforts.

30.     In recognition of this expenditure of time, energy, and resources, the Sellers agreed to provide certain bid protections to the Purchasers (the "Bid Protections"). Specifically, the Agreement provides for, and DAS LLC respectfully requests that the Bidding Procedures Order approve, the Break-Up Fee payable by DAS LLC to the Purchasers in the amount of $450,000, which comprises 3% of the Purchase Price, if (i) (a) DAS LLC terminates the Agreement to close an alternative transaction or (b) DAS LLC terminates the Agreement after declaring a Qualified Bid other than the Purchasers the Successful Bid and (ii) such alternative transaction is consummated, unless either of the Purchasers is in material breach of the Agreement.

31.     In addition, DAS LLC respectfully requests this Court's approval of the term in the Agreement providing for reimbursement of the Purchasers' reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the

18

Agreement, not to exceed $200,000. Provided that the Purchasers are not in default of their obligations under the Agreement, the Expense Reimbursement would be triggered upon (i) a termination of the Agreement by reason of the failure to close by September 28, 2007, (ii) a termination of the Agreement by reason of the failure of the Sale Approval Order to be entered on or before August 27, 2007, or (iii) if the Sale Approval Order, as of the August 27, 2007, is subject to a stay or injunction. DAS LLC's obligation to pay each of the Bid Protections, as provided by the Agreement, would survive termination of the Agreement and, until paid, would constitute a superpriority administrative expense claim under section 364(c)(1) of the Bankruptcy Code.[11]

      32.    The Bid Protections were a material inducement for, and a condition of, the Purchasers' entry into the Agreement. DAS LLC believes that the Bid Protections are fair and reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation undertaken by the Purchasers in connection with the Sale and (b) the fact that the Purchasers' efforts will maximize the value of the Acquired Assets for the benefit of all stakeholders whether as a result of consummating the divestiture of the Mexico Brake Plant Business pursuant to either the Agreement or the highest or otherwise best offer to be submitted at the Auction.

      33.    The Purchasers are unwilling to keep open their offer to purchase the Acquired Assets under the terms of the Agreement unless the Bidding Procedures Order authorizes payment of the Bid Protections. Thus, absent entry of the Bidding Procedures Order and approval of the Bid Protections, the Sellers may lose the opportunity to obtain what they have determined to be the highest and best offer for the Acquired Assets.

---

[11]   If DAS LLC becomes responsible for the payment of Bid Protections, those costs would be allocated between DAS LLC and Delphi Mexico through an intercompany agreement.

34.      Moreover, payment of the Break-Up Fee will not diminish DAS LLC's estate.  DAS LLC would not pay the Break-Up Fee unless it does so to accept an alternative Successful Bid, which would result in even greater value to DAS LLC's estate and its stakeholders.  The Expense Reimbursement is a necessary cost of reaching an agreement with the Purchasers for the sale of the Mexico Brake Plant Business.  The Expense Reimbursement could trigger a cost to the estate, but DAS LLC analyzed the cost of the Expense Reimbursement as compared to the benefit of selecting the Purchasers as a stalking horse bidder and determined that the Expense Reimbursement is a beneficial and reasonable bid protection.  DAS LLC thus requests that this Court authorize payment of the Bid Protections pursuant to the terms and conditions of the Agreement.

F.      Assumption And/Or Assignment Of The Transferred Contracts

35.      In connection with the proposed Sale, DAS LLC seeks authority under section 363 of the Bankruptcy Code to assign the Postpetition Contracts to the Purchasers or the Successful Bidder, as the case may be.  There are no past due obligations under the Postpetition Contracts.  In addition, DAS LLC seeks authority under section 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Purchasers or the Successful Bidder, as the case may be.  The approximate cost to cure the Assumed Contracts is $213,377.45.  With respect to the Assumed Contracts, on or before July 6, 2007, DAS LLC would file with this Court and serve on each non-Debtor party to an Assumed Contract a cure notice substantially in the form attached hereto as Exhibit E (the "Cure Notice").  The Cure Notice would state, with respect to the Assumed Contracts, the cure amount that DAS LLC believes  is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or contract would be assumed and assigned to the Purchasers or

20

the Successful Bidder, as the case may be.  In addition, such Cure Amounts would be listed on a
schedule to the Sale Approval Order.

36.    The Debtors propose that any objection to the Cure Amount be filed
within ten days of the date of the Cure Notice (the "Cure Objection Deadline") and served as set
forth in the Sale Notice.  Any objection to the Cure Amount must state with specificity what cure
amount the party to the Assumed Contract believes is required, including appropriate
documentation thereof.  If no objection is timely received, the Debtors propose that the Cure
Amount set forth in the Cure Notice be controlling notwithstanding anything to the contrary in
any Assumed Contract or other document, and that the non-Debtor party to the Assumed
Contract be forever barred from asserting any other claims against DAS LLC, the Purchasers, or
the Successful Bidder (as appropriate) or the property of any of them, as to such Assumed
Contract.

37.    In addition, on or before July 6, 2007, the Debtors propose to file with
this Court and serve on each non-Debtor party to a Transferred Contract a notice, substantially in
the form attached hereto as Exhibit F (the "Purchaser Assumption/Assignment Notice").  The
Purchaser Assumption/Assignment Notice would identify the Purchasers as the parties that
would be assigned all of the DAS LLC's rights, title, and interest in the Transferred Contracts,
subject to completion of the bidding process provided under the Bidding Procedures.[12]  Non-
Debtor parties to any Assumed Contract would be required to file an objection to the assumption
and assignment of the Assumed Contract within ten days from the service of the Purchaser

---

[12]    DAS LLC would serve the Purchaser Assumption/Assignment Notice and the Qualified Bidder
Assumption/Assignment Notice (as defined below) to each non-Debtor party to the Postpetition Contracts, and
otherwise comply with the assignment requirements of those contracts, as a means of fulfilling any requirement
under the applicable contract to provide notice of assignment.

Assumption/Assignment Notice, and such parties would be required to state, with specificity, the

legal and factual basis of their objection, unless otherwise ordered by this Court.

38.    The Debtors propose that one business day following the Bid Deadline,

DAS LLC send a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially

in the form attached hereto as <u>Exhibit G</u>, to each non-Debtor party to a Transferred Contract

identifying any Qualified Bidders as potential parties to which the Transferred Contracts would

be assigned.  Non-Debtor parties to any Assumed Contract would be required to file an objection

to the assumption and assignment of the Assumed Contract within ten days from the service of

the Qualified Bidder Assumption/Assignment Notice, and such parties would be required to

state, with specificity, the legal and factual basis of its objection, unless otherwise ordered by this

Court.

G.    <u>Notice Of Sale Hearing</u>

39.    Within five days after entry of the Bidding Procedures Order (the "Mailing

Date"),  DAS LLC (or its agent) propose to serve the Motion, the Agreement, the proposed Sale

Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail,

postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchasers, (iii) counsel for the Creditors' Committee, (iv) counsel for

the official committee of equity security holders appointed in these chapter 11 cases, (v) all

entities known to have expressed an interest in a transaction with respect to the Acquired Assets

during the past six months, (vi) all entities known to have asserted any lien, claim, interest, or

encumbrance in or upon the Acquired Assets, (vii) all federal, state, and local regulatory or

taxing authorities or recording offices, including but not limited to environmental regulatory

authorities, which have a reasonably known interest in the relief requested by the Motion, (viii)

22

all parties to Transferred Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities as are required to be served with notices under the Supplemental Case Management Order.

40.     DAS LLC also proposes pursuant to Fed. R. Bankr. P. 2002(l) and 2002(d) to publish of a notice of the Sale in a form substantially similar to the form annexed hereto as Exhibit H, in The International Edition of the Wall Street Journal, the New York Times, and El Norte (the most widely-read newspaper in Saltillo, Mexico) by the Mailing Date or as soon as practicable thereafter, and DAS LLC requests that such publication notice be deemed proper notice to any other interested parties whose identities are unknown to DAS LLC.

Applicable Authority

A.     Bidding Procedures

41.     Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-179 (D. Del. 1991).

23

42.     The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate." Orion Pictures Corp. v. Showtime Network, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993). The Court's consideration of a debtor's section 363(b) motion is a "summary proceeding," intended merely as a means "to efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Id. at 1098-99.

43.     Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc., (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id. To satisfy its burden, it is not enough for an objector simply to raise and argue an objection. Rather, an objector "is required to produce some evidence respecting its objections." Lionel Corp., 722 F.2d at 1071.

44.     As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)). As set forth above, DAS LLC has sound business justifications for pursuing a sale

24

process at this time.  DAS LLC believes that a sale of the Mexico Brake Plant Business will lead

to greater recovery than a wind-down and is therefore the best outcome for its stakeholders.

Because delaying the sale of the Acquired Assets could result in the erosion of value, there is a

sound business purpose for pursuing the sale process promptly and in accordance with the

Bidding Procedures.

45.    Moreover, a prospective purchaser of assets from a chapter 11 debtor may

be reluctant to make an offer, because it knows that even if it reaches agreement with the debtor,

its offer is subject to a higher bid by another party.  Pre-approved bidding procedures address

these concerns by assuring initial bidders that any auction procedure will be reasonable.  Thus,

DAS LLC submits that the use of the Bidding Procedures also reflects sound business judgment.

B.    Sale Of The Acquired Assets from DAS LLC Free And
      Clear Of Liens, Claims, Encumbrances, And Interests

46.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may

sell property free and clear of any lien, claim, or interest in such property if, among other things:

(1)    applicable nonbankruptcy law permits sale of such property free and clear
of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is sold is great
that the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled in a legal or equitable proceeding, to
accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

47.    Here, section 363(f) permits DAS LLC to sell its portion of the Acquired

Assets free and clear of all liens, claims, and encumbrances.[13]  Each lien, claim, or encumbrance

that is not the result of an assumed liability satisfies at least one of the five conditions of 11

U.S.C. § 363(f), and DAS LLC submits that any such lien, claim, or encumbrance would be

adequately protected by attachment to the net proceeds of the Sale, subject to any claims and

defenses DAS LLC may possess with respect thereto.  Accordingly, DAS LLC requests that the

Acquired Assets being sold by DAS LLC be transferred to the Purchasers or the Successful

Bidder(s), as the case may be, free and clear of all liens, claims, and encumbrances, with such

liens, claims, and encumbrances to attach to the proceeds of the Sale of the Acquired Assets.

C.    The Purchasers Are Good Faith Purchasers Pursuant To
      Section 363(m) Of The Bankruptcy Code And The Transaction
      Contemplated By The Agreement Should Carry The
      Protections Of Section 363(n) Of The Bankruptcy Code

48.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not
> affect the validity of a sale or lease under such authorization to an entity
> that purchased or leased such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such authorization and
> such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second

Circuit Court of Appeals has held:

> Good faith of a purchasers is shown by the integrity of his conduct during
> the course of the sale proceedings; where there is a lack of such integrity,
> a good faith finding may not be made.  A purchasers' good faith is lost by
> 'fraud, collusion between the purchaser and other bidders or the trustee, or
> an attempt to take grossly unfair advantage of other bidders.'

---

[13]    As a result of the negotiations, certain liabilities will be assumed by the Purchasers or the Successful Bidder, as
the case may be.

Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (quoting In re Rock

Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting former

Bankruptcy Rule 805, the precursor of section 363(m))); see also Evergreen Int'l Airlines Inc. v.

Pan Am Corp. (In re Pan Am Corp.), 91 Civ. 8319 (LMM), 1992 WL 154200 at *4 (S.D.N.Y.

June 18, 1992); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988).

        49.      Section 363(n) of the Bankruptcy Code further provides, in relevant part,

that:

> The trustee may avoid a sale under this section if the sale price was
> controlled by an agreement among potential bidders at such sale, or may
> recover from a party to such agreement any amount by which the value of
> the property sold exceeds the price at which such sale was consummated,
> and may recover any costs, attorneys' fees, or expenses incurred in
> avoiding such sale or recovering such amount.

        50.      DAS LLC submits, and will present evidence at the Sale Hearing, that the

Agreement reflects an intensely negotiated, arm's-length transaction.  Throughout the

negotiations, the Purchasers have at all times acted in good faith.  DAS LLC, therefore, requests

that this Court make a finding that the Purchasers have purchased the Acquired Assets and

assumed the Assumed Contracts and Assumed Liabilities in good faith within the meaning of

section 363(m) of the Bankruptcy Code.  Further, DAS LLC submits that any asset purchase

agreement reached as a result of the Bidding Procedures necessarily would comprise an arm's-

length, intensely-negotiated transaction entitled to the protections of section 363(m) of the

Bankruptcy Code and DAS LLC will present evidence of the same at the Sale Hearing.  Because

DAS LLC has shown that the Purchasers' successful bid is not the product of fraud or collusion

between the Purchasers and other bidders or the trustee, or an attempt to take grossly unfair

advantage of other bidders, DAS LLC further requests that this Court make a finding that the

transactions contemplated by the Agreement are not avoidable under section 363(n) of the

27

Bankruptcy Code.  As a result of the foregoing, DAS LLC submits that the Purchase Price to be

paid by the Purchasers constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer

Act, and under the laws of the United States, and any state, territory, possession, or the District

of Columbia.

D.       The Assumption And Assignment Of The Assumed Contracts

        51.        Section 365(f)(2) of the Bankruptcy Code provides that:

[t]he trustee may assign an executory contract or unexpired lease of the
debtor only if –

(A)      the trustee assumes such contract or lease in accordance with the
provisions of this section; and

(B)      adequate assurance of future performance by the assignee of such
contract or lease is provided, whether or not there has been a default in
such contract or lease.

11 U.S.C. § 365(f)(2).

        52.        Under section 365(a) of the Bankruptcy Code a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements

for assuming an unexpired lease or executory contract of a debtor.  It provides:

(b)(1)   If there has been a default in an executory contract or unexpired lease of
the debtor, the trustee may not assume such contract or lease unless, at the time of the
assumption of such contract or lease, the trustee –

(A)      cures, or provides adequate assurance that the trustee will promptly
cure, such default;

(B)      compensates, or provides adequate assurance that the trustee will
promptly compensate, a party other than the debtor to such contract or
lease, for any actual pecuniary loss to such party resulting from such
default; and

28

(C)    provides adequate assurance of future performance under such
contract or lease.

11 U.S.C. § 365(b)(1).

53.    Courts give the phrase "adequate assurance of future performance" a
"practical, pragmatic construction."  EBG Midtown South Corp. v. Mcharen/Hart Envtl. Engig

Corp.  (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992) aff'd, 993 F.2d 300

(2d. Cir. 1993); See Sanshoe Worldwide, 139 B.R. at 592 (the presence of adequate assurance

should be "determined under the facts of each particular case"); see also In re Fifth Ave.

Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983) (holding that adequate assurance was

furnished on two separate grounds).  Courts have consistently held that the phrase does not

require total assurances.  See In re Natco Industries, Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y.

1985) ("[I]t does not mean absolute insurance that the debtor will thrive and make a profit."); In

re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("Although no single

solution will satisfy every case, the required assurance will fall considerably short of an absolute

guarantee of performance.").  In fact, adequate assurance has been provided by demonstrating

the Purchasers' financial health and experience in managing the type of enterprise or property

assigned.  See In re Bygraph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate

assurance of future performance existed when prospective assignee of lease from debtor had

financial resources and had expressed willingness to devote sufficient funding to business in

order to give it strong likelihood of succeeding).

54.    To the extent that any defaults exist under any prepetition executory

contract or unexpired lease that is to be assumed and assigned in connection with the sale of the

Acquired Assets or any portion thereof, DAS LLC would cure any such default prior to such

assumption and assignment.  The Purchasers have the financial resources to perform under the

Assumed Contracts.  Moreover, the Sellers will adduce facts at the Sale Hearing demonstrating

the financial wherewithal of any Successful Bidder, its experience in the industry, and its

willingness and ability to perform under the contracts to be assumed and assigned to it.

55.    The Sale Hearing therefore would provide this Court and other parties-

in-interest ample opportunity to evaluate and, if necessary, challenge the ability of the Successful

Bidder(s) to provide adequate assurance of future performance under the contracts to be

assumed.  This Court therefore should have a sufficient basis to authorize DAS LLC to assume

and assign the Assumed Contracts as set forth in the Agreement.

E.    Approval Of The Bid Protections

56.    Bidding incentives encourage potential bidders to invest the requisite time,

money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to

the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11

process.  See, e.g., In re 995 Fifth Ave. Associates, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992)

(bidding incentives may "be legitimately necessary to convince a white knight to enter the

bidding by providing some form of compensation for the risks it is undertaking") (citation

omitted).  Bankruptcy courts often approve bidding incentives under the business judgment rule.

In re Global Crossing Ltd., 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("[N]o litigant has

seriously argued the inapplicability of the business judgment test, and if any such argument had

been made, the Court would be compelled . . . to reject it."); In re Bethlehem Steel Corp., Case

No. 02 Civ. 2854 (MBM), 2003 WL 21738964 at *8 n.13 (S.D.N.Y. July 28, 2003) (the court

should approve agreements providing bidding incentives "unless they are unreasonable or appear

more likely to chill the bidding process than to enhance it").  One court, explaining the force of

the business judgment rule in this context, stated "the business judgment rule does not become

inapplicable simply because a court decides a break-up fee is too large." In re Integrated

Resources, 147 B.R. at 660.

57.    This district has established a three part test for determining when to

permit bidding incentives.  Id. at 657-58.  The three questions for a court to consider when

assessing a break-up fee are: "(1) is the relationship of the parties who negotiated the break-up

fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage,

bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price."

Id.

58.    Here, DAS LLC seeks authority to utilize the Bidding Process and Bid

Protections in the event that the Purchasers are not ultimately the Successful Bidder or must

increase the Purchasers' bid price to become the Successful Bidder.  The Bid Protections are fair

and reasonable in amount, particularly in view of the efforts to be made by the Purchasers and

the risk to the Purchasers of being used as a stalking horse.  Indeed, the maximum amount of the

Break-Up Fee – $450,000 (3% of the Purchase price) – not only constitutes a fair and reasonable

percentage of a proposed purchase price, but also is customary for similar transactions of this

type in the bankruptcy context and is within the range of breakup fees typically approved by

courts in this district.  See, e.g., In re Allegiance Telecom, Inc., Case No. 03-13057 (RDD)

(Bankr. S.D.N.Y. 2004) (allowing 2.8% break-up fee and expense reimbursement provision in

asset sale agreement); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2004)

(approving 3% break-up fee if debtor closed superior transaction); In re Genuity Inc., Case No.

02-43558 (PCB) (Bankr. S.D.N.Y. 2002) (allowing 4.13% break-up fee if court approved

alternative transaction); In re PSINet, Inc., Case No. 01-13213 (REG) (Bankr. S.D.N.Y. 2001)

(permitting 4.28% break-up fee in event that seller consummated transaction with alternative

bidder); In re Teligent, Inc., Case No. 01-12974 (SMB) (Bankr. S.D.N.Y. 2001) (allowing break

up fee ranging from 1.3% to 4.25% depending on value of alternative transaction).  In addition,

the payment of the Break-Up Fee or the Expense Reimbursement under the terms and conditions

of the Agreement are reasonable in light of the significant investment in time and resources that

the Purchasers will have contributed as the stalking horse bidder.

      59.    DAS LLC submits that the Bidding Procedures and the Bid Protections

have encouraged competitive bidding because the Purchasers would not have entered into the

Agreement without such provisions.  The Bidding Procedures and the Bid Protections have thus

induced a bid that otherwise would not have been made.  Finally, the mere existence of the

Bidding Procedures and Bid Protections permits DAS LLC to insist that competing bids be

materially higher or otherwise better than the Agreement, which would produce a clear benefit to

DAS LLC, its estate, its stakeholders, and all other parties-in-interest.

F.    Conclusion

      60.    DAS LLC submits that the relief requested in this Motion, including the

Bidding Procedures, Bid Protections, Notice Procedures, and the setting of a Sale Hearing are in

the best interests of DAS LLC's estate and would maximize value for all of its stakeholders.

DAS LLC will further show at the Sale Hearing that the entry of an order approving the Sale of

the Acquired Assets of DAS LLC free and clear of liens, claims, and encumbrances, the

assumption and assignment of the Assumed Contracts, and the assumption of the Assumed

Liabilities by the Purchasers or the Successful Bidder (as the case may be), are likewise in the

best interests of DAS LLC's estate and would maximize value for all of its stakeholders.

<u>Notice Of Motion</u>

61.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental

Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered

October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order,

the "Case Management Orders").  Further notice with respect to the Sale will be provided in

accordance with the Notice Procedures described herein.  In addition, the Debtors have complied

with the Supplemental Case Management Order with respect to the filing of this Motion and the

need for expedited relief.[14]  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

<u>Memorandum Of Law</u>

62.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

---

[14]    The Debtors have noticed this Motion for the omnibus hearing on June 26, 2007.  In compliance with the terms
of the Supplemental Case Management Order, the Debtors have consulted with counsel to the Creditors'
Committee regarding the relief sought in this Motion as well as the timing of its filing.  The Debtors have been
informed that the Creditors' Committee has consented to this Motion being heard on June 26, 2007.  Because
this Motion is being filed on less than 20 days' notice, parties-in-interest will have until June 22, 2007 to file an
objection to entry of the Bidding Procedures Order.

WHEREFORE DAS LLC respectfully requests that this Court enter an order (a) (i) approving the Bidding Procedures, (ii) granting the Bid Protections, (iii) approving the Notice Procedures, and (iv) setting the Sale Hearing; (b) approving (i) the Sale of the Acquired Assets related to assets being sold by DAS LLC free and clear of liens, claims, and encumbrances to the Purchasers or to the Successful Bidder, (ii) the assumption and assignment of the Assumed Contracts to the Purchasers or the Successful Bidder, and (iii) the assumption of the Assumed Liabilities by the Purchasers or the Successful Bidder; and (c) granting DAS LLC such other and further relief as is just.

Dated:     New York, New York
           June 15, 2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                      By:    /s/ John Wm. Butler, Jr.
                             John Wm. Butler, Jr. (JB 4711)
                             John K. Lyons (JL 4951)
                             Ron E. Meisler (RM 3026)
                          333 West Wacker Drive, Suite 2100
                          Chicago, Illinois 60606
                          (312) 407-0700

                                  - and -

                      By:    /s/ Kayalyn A. Marafioti
                             Kayalyn A. Marafioti (KM 9632)
                             Thomas J. Matz (TM 5986)
                          Four Times Square
                          New York, New York 10036
                          (212) 735-3000

                          Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession

34

## Exhibit A

### Bidding Procedures

**DELPHI AUTOMOTIVE SYSTEMS LLC AND DELPHI SISTEMAS DE ENERGIA, S.A.
DE C.V. MEXICO BRAKE PLANT ASSETS
BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets used primarily in the manufacturing plant located in Saltillo, Mexico (the "Mexico Brake Plant Business") of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de energia, S.A. de C.V. ("Delphi Mexico," and collectively with the DAS LLC, the "Sellers"). On June 14, 2007, the Sellers executed that certain Asset Sale And Purchase Agreement (the "Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V. (together with Bosch, the "Purchasers"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On June 15, 2007, DAS LLC and certain of its affiliates (collectively, the "Debtors") filed a Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (i) Approving Bidding Procedures, (iii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving (i) Sale Of DAS LLC's Mexico Brake Plant Assets Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (the "Sale Approval Motion"). On June __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") approving the Bidding Procedures. The Bidding Procedures Order set July 19, 2007 as the date when the Bankruptcy Court willconduct a hearing (the "Sale Hearing") to authorize DAS LLC to enter into and perform under the Agreement. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). DAS LLC intends to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process. In the event that DAS LLC and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Mexico Brake Plant Business, including the including the machinery, equipment, inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to be sold (the "Acquired Assets").

## Free Of Any And All Claims And Interests

Except to the extent otherwise set forth in the Agreement or the relevant purchase agreement of a Successful Bidder, as applicable, all of DAS LLC's right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all liens, losses, liabilities, claims (as defined in section 101 of the Bankruptcy Code), damages, or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise, liens, charges, claims, pledges, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, options or other encumbrances (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or similar statutes as applicable under Mexican law) (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Purchasers, must deliver (unless previously delivered) to DAS LLC and its counsel at the addresses provided below:

(a) An executed confidentiality agreement in form and substance acceptable to DAS LLC;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to DAS LLC and its financial advisors; and

(c) A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite financial assurances), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement will be deemed a "Qualified Bidder." As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to commence due diligence with respect to the Acquired Assets and the Mexico Brake Plant Business as provided below. Notwithstanding the foregoing, the Purchasers will be deemed Qualified Bidders for purposes of the Bidding Process.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Acquired Assets and the Mexico Brake Plant Business. Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on-site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence may not continue after the Bid Deadline. The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Mexico Brake Plant Business to any person other than to Qualified Bidders who make an acceptable preliminary proposal and execute mutually agreeable confidentiality agreements.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and the Mexico Brake Plant Business prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets and the Mexico Brake Plant Business in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, the Mexico Brake Plant Business, or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except as expressly stated in the definitive agreement with the Successful Bidder approved by the Bankruptcy Court.

## Bid Deadline

A Qualified Bidder, other than the Purchasers, who desires to make a bid will deliver written copies of its bid to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy,

3

Michigan, 48098, Attention: John P. Carney; (ii) Delphi's restructuring counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Brian M. Fern; (iii) Delphi's financial advisor, FTI Consulting, Inc., Three Times Square, New York, New York 10036, Attention: Randall S. Eisenberg;  (iv) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098 Attention: Assistant General Counsel – Transactional & Restructuring; (v) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (vi) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (vii) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on July 10, 2007 (the "Bid Deadline").  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to the Purchasers and their counsel.

## **Bid Requirements**

All bids must include the following documents (the "Required Bid Documents"):

(a) A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Acquired Assets.

(b) An executed copy of the Agreement, together with all schedules (a "Marked Agreement") marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the purchase price.

(c) A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of the DAS LLC (or such other party as the Sellers may determine) in an amount equal to $500,000.

(d) Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transactions that is satisfactory to the Sellers and their advisors.

## **Qualified Bids**

A bid will be considered only if the bid:

(a) is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement;

(b) is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder;

(c) proposes a transaction that the Sellers determine, in their sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $200,000, and (ii) in the case of any subsequent Qualified Bids, $100,000 more than the immediately-preceding highest Qualified Bid;

(d) is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

(e) an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Agreement or the Marked Agreement;

(f) includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) within not more than 15 days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within 20 days after entry of such order; and

(g) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Purchasers will be deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Purchasers is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Purchasers, DAS LLC will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## **Bid Protection**

Recognizing the Purchasers' expenditure of time, energy, and resources, DAS LLC has agreed to provide certain bidding protections to the Purchasers.  Specifically, DAS LLC has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other potential bids must exceed.  As a result, DAS LLC has agreed that if the Sellers terminate the Agreement (i) to close on an alternative transaction or (ii) to declare a Qualified

Bid other than that of the Purchaser the Successful Bid (as defined below) and sell the Acquired Assets to a Successful Bidder other than the Purchasers, DAS LLC will, in certain circumstances, pay to the Purchasers a Break-Up Fee.  In the event the Agreement is terminated pursuant to certain other provisions thereof, then DAS LLC will, in certain circumstances, be obligated to pay the Purchasers' Expense Reimbursement.  The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement and the Bidding Procedures Order.

## Auction

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Acquired Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before July 17, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as the Sellers will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(a) Only the Sellers, the Purchasers, any representative of the Creditors' Committee, any representative of the Debtors' post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Purchasers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) By the close of business on July 13, 2007, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction, and by the close of business on July 16, 2007, the Sellers will provide all Qualified Bidders who have informed the Sellers of their intent to participate in the Auction with copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe comprise the highest or otherwise best offer.  Should an Auction take place, the Purchasers will have the right, but not the obligation, to participate in the Auction.  The Purchasers' election not to participate in an Auction will in no way impair their entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

(c) All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d) The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $100,000

higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchasers), the Sellers will give the Purchasers a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement, as applicable, that may be payable to the Purchasers under the Agreement and will give effect to any assets and/or equity interests to be retained by the Sellers.

## Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their advisors, will:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets received at the Auction (the "Successful Bid" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  If, after an Auction in which the Purchasers:  (i) will have bid an amount in excess of the consideration currently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) are the Successful Bidders, they must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee.

DAS LLC's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid.  The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing is currently scheduled to take place before the Honorable Robert D. Drain, United States Bankruptcy Judge, on July 19, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.  The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing; provided, however, that the Sale Hearing may not be adjourned or rescheduled to a date later than August 31, 2007.

If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Purchasers), DAS LLC will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchasers following entry of the Sale Order. If the Sellers do receive additional Qualified Bids, then at the Sale Hearing DAS LLC will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the

"Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  DAS LLC's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Sellers will effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Sellers.  On the Return Date, Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Sellers, after consultation with the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchasers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of DAS LLC, its estates, and its stakeholders as determined by DAS LLC in its sole discretion.

**<u>Exhibit B</u>**

**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :
        In re                         :     Chapter 11
                                    :
    DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                    :
                   Debtors.    :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND
9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND
MANNER OF SALE NOTICES, AND
(IV) SETTING SALE HEARING IN CONNECTION
<u>WITH SALE OF MEXICO BRAKE PLANT ASSETS</u>

("MEXICO BRAKE PLANT ASSET BIDDING PROCEDURES ORDER")

Upon the motion, dated June 15, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for orders

pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014

(i) approving the bidding procedures set forth herein and attached hereto as <u>Exhibit 1</u> (the

"Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and

manner of sale notices, and (iv) setting a sale hearing (the "Sale Hearing") in connection

with the sale (the "Sale") of certain assets of Delphi Automotive Systems LLC ("DAS

LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the

"Sellers") comprising substantially all of the assets used in the brake and chassis modules

product lines in a manufacturing plant located in Saltillo, Mexico (the "Mexico Brake

Plant Business"), including the machinery, equipment, inventories, personnel and medical

records, water well rights, and all other assets of DAS LLC to be sold to the Purchasers

(as defined below) pursuant to the Agreement (the "Acquired Assets") related to the

Mexico Brake Plant Business for $15.0 million and other consideration, free and clear of

liens, claims, and encumbrances related to assets being sold by DAS LLC, to Robert

Bosch LLC and Frenados Mexicanos S.A. de C.V. (together with Bosch, the

"Purchasers") pursuant to the Asset Sale And Purchase Agreement, dated June 14, 2007,

by and among the Sellers and the Purchasers (the "Agreement")[1] or to the Successful

Bidder (as hereinafter defined) submitting a higher or otherwise better bid.  The Sale

would include the assumption and assignment of certain prepetition executory contracts

and unexpired leases (the "Assumed Contracts") and the assignment of certain

postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and

together with the Assumed Contracts, the "Transferred Contracts") to the Purchasers or

the Successful Bidder, and the assumption of certain liabilities (the "Assumed Liabilities")

by the Purchasers or the Successful Bidder; and upon the record of the Hearing on the

Motion; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over this matter and over the property of

the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and

1334.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest.

D.      The notice given by DAS LLC of the Motion and the Hearing constitutes due and sufficient notice thereof.

E.      DAS LLC has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Assumed Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to creditors and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption of the Assumed Contracts to be filed with the Court and served on parties to each Assumed Contract, and (vi) set the Sale Hearing.

F.      DAS LLC's payment to the Purchasers (as set forth in the Agreement) of the Break-Up Fee and the Expense Reimbursement (collectively, the "Bid Protections") (i) is an actual and necessary cost and expense of preserving its estate, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) is of substantial benefit to its estate, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchasers notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary to ensure that the Purchasers will continue to pursue their proposed

3

acquisition of the Acquired Assets. The Bid Protections were a material inducement for, and condition of, the Purchasers' entry into the Agreement. The Purchasers are unwilling to commit to hold open their offer to purchase the Acquired Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to the Purchasers of payment of the Bid Protections has promoted more competitive bidding by inducing the Purchasers to hold their bid open. Without the Bid Protections, other bidding would have been limited. Further, because the Bid Protections induced the Purchasers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchasers have provided a benefit to DAS LLC's estate by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth. Finally, absent authorization of the Bid Protections, DAS LLC may lose the opportunity to obtain the highest or otherwise best available offer for the Acquired Assets.

G.     The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.     The Bidding Procedures, as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth in this Order, are hereby approved and shall govern all proceedings relating to the Agreement and any subsequent bids for the Acquired Assets in these cases.

2.     The Sellers may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of

4

any official committee or significant constituent in connection with the Bidding

Procedures, and (c) reject, at any time before entry of an order of the Court approving a

Qualified Bid, any bid (other than the Purchasers' bid) which, in the Sellers' sole

discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of

the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii)

contrary to the best interests of DAS LLC, its estate, and its stakeholders.  DAS LLC is

authorized (x) to terminate the Bidding Process or the Auction at any time if it

determines, in its business judgment, that the Bidding Process will not maximize the

value of the Acquired Assets to be realized by DAS LLC's estate and (y) seek Bankruptcy

Court approval of the Agreement with Purchasers.

Sale Hearing

3.      The Court shall hold a Sale Hearing on July 19, 2007 at 10:00 a.m.

(prevailing Eastern time) in the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, Room 610, New York, New York 10004, at which

time the Court shall consider the Motion, the Successful Bidder, and confirm the results

of the Auction, if any.  Objections to the Motion, if any, shall be filed and served no later

than 4:00 p.m. (prevailing Eastern time) on July 12, 2007 (the "Objection Deadline").

4.      The failure of any objecting person or entity to timely file its

objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or

thereafter, of any objection to the Motion, the Sale, or DAS LLC's consummation and

performance of the Agreement (including the transfer of the Acquired Assets and

Transferred Contracts free and clear of liens, claims, and encumbrances), if authorized by

the Court.

5

5.      The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

<u>Bid Protections</u>

6.      The Bid Protections, as more fully described in the Motion and the Agreement, are hereby approved.  DAS LLC's obligation to pay the Bid Protections, as provided by the Agreement, shall survive termination of the Agreement and, until paid, shall constitute a superpriority administrative expense claim.  DAS LLC shall be authorized to pay the Bid Protections to the Purchasers in accordance with the terms of the Agreement without further order of the Court.

<u>Notice</u>

7.      Notice of (a) the Motion, (b) the Sale Hearing, and (c) the proposed assumption and assignment of the Assumed Contracts to the Purchasers pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

(a)      <u>Notice Of Sale Hearing</u>.  On or before June 29, 2007 (the "Mailing Date"), DAS LLC (or its agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Acquired Assets, (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (iv) all parties to the Assumed Contracts, (v) all parties to the Postpetition Contracts, (vi) the United States Attorney's office, (vii) the Securities and Exchange Commission, (viii) the Internal Revenue Service, (ix) all entities which filed a notice of appearance or request for notice in these cases, and (x) counsel to the official

6

committee of unsecured creditors and the official committee of equity security holders appointed in these cases.

(b)    Cure Notice.  On or before July 6, 2007 DAS LLC shall file with the Court and serve on all non-Debtor parties to the Assumed Contracts a notice (the "Cure Notice"), substantially in the form attached hereto as Exhibit 2, of the cure amount necessary to assume the Assumed Contracts (the "Cure Amount").  Each non-Debtor party to the Assumed Contracts shall have ten days from the service of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and the non-Debtor party to a Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims against DAS LLC, the Purchasers, or the Successful Bidder (as appropriate), or the property of any of them, as to such Assumed Contract.

(c)    Assumption/Assignment Notice For Purchasers.  On or before July 6, 2007, DAS LLC shall file with the Court and serve on all non-Debtor parties to the Transferred Contracts a notice (the "Purchasers Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 3, identifying the Purchasers as the parties which will be assigned all of the Debtors' rights, title, and interest in the Transferred Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  The non-Debtor party to the Assumed Contracts shall have ten days from the service of the Purchasers Assumption/Assignment Notice to object to the proposed assumption and assignment to the Purchasers and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    Assumption/Assignment Notice For Qualified Bidders.  On or before July 11, 2007, DAS LLC shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 4, to be sent to each non-Debtor party to a Transferred Contract identifying all Qualified Bidders.  The non-Debtor party to the Assumed Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice. On or before the Mailing Date, or as soon thereafter as is practicable, the Debtors shall cause notice substantially in the form of the

notice attached hereto as <u>Exhibit 5</u>, to be published in the national editions of the <u>Wall Street Journal</u> (International Edition), the <u>New York Times</u>, and <u>El Norte</u>.

      8.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

      9.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:   New York, New York
         June  __, 2007

                       _____

                       UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Sale Approval Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

In re                        :     Chapter 11
                                :

DELPHI CORPORATION, <u>et al.</u>,    :     Case No. 05-44481 (RDD)
                                :

              Debtors.     :     (Jointly Administered)
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006,
AND 9014 AUTHORIZING AND APPROVING (I) SALE OF DELPHI AUTOMOTIVE
SYSTEMS LLC'S MEXICO BRAKE PLANT ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
<u>AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("MEXICO BRAKE PLANT ASSET SALE APPROVAL ORDER")

           Upon the motion, dated June 15, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (i) approving bidding procedures, (ii)

granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv)

setting a sale hearing (the "Sale Hearing") in connection with the sale (the "Sale") of certain

assets of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A.

de C.V. (together with DAS LLC, the "Sellers") comprising substantially all of the assets

primarily used in the brake and chassis modules product lines in the manufacturing plant located

in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery, equipment,

inventories, personnel and medical records, water well rights, and all other assets of DAS LLC to

be sold to the Purchasers (as defined below) pursuant to the Agreement (the "Acquired Assets")

related to the Mexico Brake Plant Business for $15.0 million and other consideration, free and

clear of liens, claims, and encumbrances related to assets being sold by DAS LLC, to Robert

Bosch LLC and Frenados Mexicanos S.A. de C.V. (together, the "Purchasers") pursuant to the

Asset Sale And Purchase Agreement, dated June 13, 2007 (the "Agreement"),[1] by and between

the Sellers and the Purchasers or to the party  submitting the highest or otherwise best bid (the

"Successful Bidder").  The Sale would include the assumption and assignment of certain

prepetition executory contracts and unexpired leases (the "Assumed Contracts") and the

assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition

Contracts," and together with the Assumed Contracts, the "Transferred Contracts") to the

Purchasers or the Successful Bidder, and the assumption of certain liabilities (the "Assumed

Liabilities") by the Purchasers or the Successful Bidder; and the Court having entered an order

on June __, 2007 (the "Bidding Procedures Order") (Docket No. ____) (a) approving bidding

procedures, (b) granting certain bid protections, (c) approving the form and manner of sale

notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on July 19, 2007,

at which time all interested parties were offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed and considered the Motion, and the arguments of counsel

made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief

requested in the Motion is in the best interests of DAS LLC, its estate, its creditors, and all other

parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

  IT IS HEREBY FOUND AND DETERMINED THAT:[2]

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Agreement.  A true and correct copy of the Agreement is attached hereto as Schedule 1.

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

A.      The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 363 and 365 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.      As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or the assignment of the Postpetition Contracts is or shall be required.

D.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, DAS LLC has marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

E.      DAS LLC (i) has full power and authority to execute the Agreement and all other applicable documents contemplated thereby, and the transfer and conveyance of the Acquired Assets by DAS LLC has been duly and validly authorized by all necessary action of

3

DAS LLC, (ii) has all of the power and authority necessary to consummate the transactions

contemplated by the Agreement, and (iii) has taken all action necessary to authorize and approve

the Agreement and to consummate the transactions contemplated thereby, and no consents or

approvals, other than those expressly provided for in the Agreement, are required for DAS LLC

to consummate such transactions.

    F.  DAS LLC has demonstrated (i) good, sufficient, and sound business

purposes and justification for the Sale because, among other things, DAS LLC and its advisors

diligently and in good faith analyzed all other available options in connection with the

disposition of the Acquired Assets and determined that (a) the terms and conditions set forth in

the Agreement, (b) the transfer to the Purchasers of the Acquired Assets pursuant thereto, and (c)

the Purchase Price agreed to as reflected in the Agreement are each fair and reasonable and

together constitute the highest or otherwise best value obtainable for the Acquired Assets and (ii)

compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a

plan of reorganization because, among other things, absent the Sale, the value of the Acquired

Assets will be substantially diminished.

    G.  A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity

security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an

interest in a transaction with respect to the Acquired Assets during the past six months, (vi) all

entities known to have asserted any Interests and/or Claims (as defined below) in or upon the

Acquired Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording

offices, including but not limited to environmental regulatory authorities, which have a

reasonably known interest in the relief requested by the Motion, (viii) all parties to Assumed

Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice,

(xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities as are

required to be served with notices under the Supplemental Case Management Order.

H.      The Purchasers are not "insiders" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

I.      The Agreement was negotiated, proposed, and entered into by the Sellers

and the Purchasers without collusion, in good faith, and from arm's-length bargaining positions.

Neither the Sellers nor the Purchasers have engaged in any conduct that would cause or permit

the Sale to be avoidable under 11 U.S.C. § 363(n).

J.      The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and,

as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in

good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by

the Agreement at all times after the entry of this Sale Approval Order.

K.      The consideration provided by the Purchasers for the Acquired Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Acquired Assets, (iii) will provide a greater recovery for DAS LLC's creditors than would be

provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

L.    The Sale must be approved and consummated promptly to preserve the viability of the Mexico Brake Plant Business as a going concern.

M.    The transfer of Acquired Assets by DAS LLC to the Purchasers shall be a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchasers with all right, title, and interest of DAS LLC to the Acquired Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to October 8, 2005, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of DAS LLC's or the Purchasers' interest in the Acquired Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Mexico Brake Plant Business prior to the transfer of the Acquired Assets to the Purchasers (collectively, the "Interests and/or Claims").

N.    If DAS LLC's sale of Acquired Assets were not free and clear of all Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of the Interests and/or Claims as set

6

forth in the Agreement and this Sale Approval Order, the Purchasers would not have entered into

the Agreement and would not consummate the Sale or the transactions contemplated by the

Agreement, thus adversely affecting DAS LLC, its estate, its stakeholders, and its creditors.

O.    DAS LLC may sell its interests in the Acquired Assets free and clear of all

Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C.

§ 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims who did not object, or

withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11

U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object fall within one or

more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their

Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to

the property against or in which they claim an Interest or Claim.

P.    The (i) transfer of the Acquired Assets to the Purchasers and (ii)

assumption and/or assignment to the Purchasers of the Transferred Contracts and Assumed

Liabilities will not subject the Purchasers to any liability whatsoever with respect to the

operation of the Mexico Brake Plant Business prior to the Closing of the Sale or by reason of

such transfer under the laws of the United States, any state, territory, or possession thereof, or the

District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or

equity including, without limitation, any theory of equitable law, including, without limitation,

any theory of antitrust or successor or transferee liability.

Q.    DAS LLC has demonstrated that it is an exercise of its sound business

judgment to assume and/or assign the Transferred Contracts to the Purchasers in connection with

the consummation of the Sale, and the assumption and/or assignment of the Transferred

Contracts is in the best interests of DAS LLC, its estates, and its stakeholders.  The Transferred

7

Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Acquired Assets being Acquired by the Purchasers and, accordingly, such assumption and/or assignment of Transferred Contracts and liabilities is reasonable and enhances the value of the DAS LLC's estate.

R.    DAS LLC  has (i) cured, or has provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).   Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

S.    Approval of the Agreement and consummation of the Sale of the Acquired Assets and assignment of the Transferred Contracts at this time are in the best interests of DAS LLC, its stakeholders, its estate, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

8

General Provisions

1.      The Motion is GRANTED.

Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), DAS LLC is authorized, but not directed, to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.      Each of the signatories to the Agreement authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.      DAS LLC is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchasers for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchasers or reducing to possession the Acquired Assets and the Transferred Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.      This Sale Approval Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of DAS LLC, the Purchasers, all successors and assigns of the Purchasers and DAS LLC, all affiliates and subsidiaries of the Purchasers and DAS LLC, and any subsequent trustees appointed in DAS LLC's chapter 11 case

9

or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to

rejection.  To the extent that any provision of this Sale Approval Order is inconsistent with the

terms of the Agreement, this Sale Approval Order shall govern.

7.    The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; provided that any such modification,

amendment, or supplement is not material.

### Sale And Transfer Of The Acquired Assets

8.    Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the

Agreement, DAS LLC's right, title, and interest in the Acquired Assets shall be transferred to the

Purchasers free and clear of all Interests and/or Claims, with all such Interests and/or Claims to

attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force,

and effect which they now have as against the Acquired Assets, subject to any claims and

defenses DAS LLC may possess with respect thereto.

9.    The transfer of the Acquired Assets to the Purchasers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest

the Purchasers with all right, title, and interest of DAS LLC in and to the Acquired Assets free

and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.    If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Acquired Assets shall not have delivered to DAS LLC prior to the

Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination

10

statements, instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) DAS LLC is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Purchasers are hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and/or Claims in the Acquired Assets of any kind or nature whatsoever.

11.    This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to DAS LLC or the Acquired Assets prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

12.    All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature whatsoever

11

against or in DAS LLC or the Acquired Assets being sold by DAS LLC (whether legal or

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to, the Mexico

Brake Plant Business, the Acquired Assets, the operation of the Mexico Brake Plant Business

prior to the Closing of the Sale, or the transfer of the Acquired Assets to the Purchasers, hereby

are forever barred, estopped, and permanently enjoined from asserting against the Purchasers,

their successors or assigns, their property, or the Acquired Assets, such persons' or entities'

Interests and/or Claims.

13.    Upon the consummation of the transactions contemplated by the Agreement,

the Purchasers shall not be deemed to (a) be the successor of DAS LLC, (b) have, de facto or

otherwise, merged with or into DAS LLC, (c) be a mere continuation or substantial continuation

of DAS LLC or the enterprise(s) of DAS LLC, or (d) be liable for any acts or omissions of DAS

LLC in the conduct of the Mexico Brake Plant Business.

Assumption And/Or Assignment To The Purchasers Of The Transferred Contracts

14.    Pursuant to 11 U.S.C. § 365, and subject to and conditioned upon the

Closing of the Sale, DAS LLC's assumption and assignment to the Purchasers, and the

Purchasers' assumption on the terms set forth in the Agreement, of the Assumed Contracts is

hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto

are hereby deemed satisfied.

15.    DAS LLC is hereby authorized in accordance with 11 U.S.C. §§ 363 and

365 to (a) assume and/or assign to the Purchasers, effective upon the Closing of the Sale, the

Transferred Contracts free and clear of all Interests and/or Claims of any kind or nature

12

whatsoever and (b) execute and deliver to the Purchasers such documents or other instruments as may be necessary to assign and transfer the Transferred Contracts and Assumed Liabilities to the Purchasers.

16.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchasers in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), DAS LLC shall be relieved from any further liability with respect to the Assumed Contracts after the assignment to and assumption of such contracts by the Purchasers.

17.     All defaults or other obligations of DAS LLC under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by DAS LLC at the Closing of the Sale or as soon thereafter as practicable, and the Purchasers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement. Each non-debtor party to any Assumed Contract shall be deemed to have consented to the assumption and/or assignment of the Assumed Contracts to the Purchasers and shall be forever barred, estopped, and permanently enjoined from asserting against DAS LLC or the Purchasers, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contracts. The failure of DAS LLC or the Purchasers to enforce prior to the Closing of the Sale one or more terms or conditions of any

13

Assumed Contract shall not be a waiver of such terms or conditions or of DAS LLC's or

Purchasers' rights to enforce every term and condition of any such Assumed Contract.

<u>Additional Provisions</u>

18.    The consideration provided by the Purchasers for the Acquired Assets under

the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, and under the laws of the United States, and any state, territory, possession, or the

District of Columbia.

19.    Upon the Closing of the Sale, this Sale Approval Order shall be construed

as and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Acquired Assets and Transferred Contracts or a bill of sale

transferring good and marketable title in the Acquired Assets and Transferred Contracts to the

Purchasers pursuant to the terms of the Agreement.

20.    Upon the Closing of the Sale, each of DAS LLC's creditors is authorized

and directed to execute such documents and take all other such actions as may be necessary to

release their respective Interests and/or Claims against the Acquired Assets, if any, as may have

been recorded or may otherwise exist.

21.    Each and every federal, state, and governmental agency or department, and

any other person or entity, is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Agreement.

14

22.    All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchasers upon the Closing of the Sale.

23.    The Purchasers shall have no liability or responsibility for any liability or other obligation of DAS LLC arising under or related to the Acquired Assets other than for the Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Purchasers shall not be liable for any claims against DAS LLC or any of its predecessors or affiliates, and the Purchasers shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing of the Sale, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Mexico Brake Plant Business or any obligations of DAS LLC arising prior to the Closing of the Sale, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Mexico Brake Plant Business prior to the Closing of the Sale.

24.    All persons holding Interests and/or Claims against or in DAS LLC or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Purchasers, their property, their successors and assigns, or the Acquired Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in DAS LLC, its estate, its officers, its directors, its shareholders, or the Acquired Assets.  Following the Closing of the Sale, no holder of an Interest and/or Claim in or against the Debtors shall interfere

15

with the Purchasers' title to or use and enjoyment of the Acquired Assets based on or related to

such Interest or Claim or any actions that the Debtors may take in their chapter 11 cases.

25.     The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Acquired Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Acquired Assets, and are entitled to all of the protections afforded

by section 363(m) of the Bankruptcy Code.

26.     The consideration provided by the Purchasers for the Acquired Assets under

the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of

the Bankruptcy Code.

27.     DAS LLC, including, but not limited to, its officers, employees, and agents,

is hereby authorized to execute such documents and do such acts as are necessary or desirable to

carry out the transactions contemplated by the terms and conditions of the Agreement and this

Sale Approval Order.  DAS LLC shall be, and hereby is, authorized to take all such actions as

may be necessary to effectuate the terms of this Sale Approval Order.

28.     The terms and provisions of the Agreement and this Sale Approval Order

shall be binding in all respects upon, and shall inure to the benefit of, DAS LLC, its estate, and

its creditors, the Purchasers, and their respective affiliates, successors, and assigns, and any

affected third parties, including, but not limited to, all persons asserting an Interest and/or Claim

against or in the Acquired Assets to be sold to the Purchasers pursuant to the Agreement,

16

notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

29.    Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of DAS LLC's estate, such as funds that are trust funds under any applicable state lien laws.

30.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

31.    The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

32.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on DAS LLC's estate.

33.    Nothing in this Sale Approval Order shall alter or amend the Agreement and the obligations of DAS LLC and the Purchasers thereunder.

17

34.     This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchasers, (b) compel delivery of the purchase price or performance of other obligations owed to DAS LLC pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, (e) protect the Purchasers against any Interests and/or Claims against or in DAS LLC or the Acquired Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine all disputes among DAS LLC, the Purchasers, and any non-debtor parties to any Transferred Contract concerning, inter alia, DAS LLC's assumption and/or assignment of any Transferred Contract to the Purchasers under the Agreement.

35.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
            [•], 2007


_____
    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit D</u>**

**Asset Sale And Purchase Agreement**

Execution Copy

## ASSET SALE AND PURCHASE AGREEMENT

**THIS ASSET SALE AND PURCHASE AGREEMENT** (this "Agreement") dated June 14, 2007, by and among Delphi Automotive Systems LLC, a Delaware limited liability company ("Delphi"), Delphi Sistemas de Energia, S.A. de C.V., a Mexican corporation with a productive facility in the municipality of Ramos Arizpe, State of Coahuila, Mexico ("DSE"), each a "Seller" and, collectively, the "Sellers", and Delphi Controladora S.A. de C.V., a Mexican corporation, as guarantor of certain obligations,  and Robert Bosch LLC, a Delaware limited liability company ("RBUS") and Frenados Mexicanos S.A. de C.V., a Mexican corporation ("FRMX"), each a "Purchaser" and, collectively, the "Purchasers".

## RECITALS:

**WHEREAS,** Delphi is engaged in the business of designing and selling brake systems and components to Original Equipment Manufacturers, Tier 1 suppliers and the automotive aftermarket; and

**WHEREAS**, DSE is engaged in providing Services (as hereinafter defined) to Delphi in connection with the Business (as hereinafter defined); and

**WHEREAS**, Delphi owns certain machinery and equipment, most of them imported into Mexico on a temporary basis, located in the Premises (as hereafter defined), and used by DSE in providing the Services to Delphi; and

**WHEREAS**, on October 8, 2005, Delphi and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of Title 11, U.S.C. §§101 et seq. (as then amended) (the "Bankruptcy Code") (such petitions for relief hereafter referred to as the "Bankruptcy Cases"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 363 and 365 of the Bankruptcy Code, Delphi desires to sell to RBUS all right, title and interest of Delphi in and to the Acquired Assets (as hereinafter defined), and RBUS desires to make such purchase, subject to Purchaser's assumption of the Assumed Liabilities and the conditions set forth in this Agreement; and

**WHEREAS**, upon the terms and subject to the conditions set forth in this Agreement,  FRMX desires to offer employment to substantially all of the employees of DSE;

**NOW, THEREFORE**, in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

1

## DEFINITIONS

The following terms, as used in this Agreement, shall have the following meanings whether used in the singular or plural (other terms are defined in Sections or Schedules to which they pertain):

"**$**" means United States Dollars, unless other currency is specified.

"**Acquired Assets**" means the assets referred to in Section 1.1.1.

"**Administrative Assets**" means books, records and other administrative assets used in or necessary for continuing to provide the Services, including but not limited to, correspondence, customer lists, vendor lists, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records, and sale order files; provided, however that Administrative Assets do not include Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity. For purposes of this definition, control means ownership of more than fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.

"**Agreement**" means this Asset Sale and Purchase Agreement, including its Exhibits and Schedules.

"**Allocation**" means allocation of the Purchase Price, as described in Section 4.2.

"**Alternate Bid(s)**" shall have the meaning set forth in Section 11.11.

"**Alternate Bidder(s)**" shall have the meaning set forth in Section 11.11.

"**Alternative Transaction**" shall have the meaning set forth in Section 9.3.1.

"**Ancillary Agreements**" means the agreements referred to in Section 7.2.

"**Assumed Contracts**" means those Transferred Contracts entered into by Seller before the Petition Date that Delphi, at Purchasers' request,  which such request shall be made to Delphi no later than entry of the Bidding Procedures Order, moves to assume and assign to the Purchaser under section 365 of the Bankruptcy Code.

"**Assumed Liabilities**" means the obligations assumed by Purchaser pursuant to Article 2, but only to the extent that an obligation: (a) arises on or after the Closing; and (b) with respect to obligations arising under Transferred Contracts: (i) does not arise from or relate to any breach by a  Seller of any provision of any of the Transferred Contracts; (ii)

does not arise from or relate to any event, circumstance or condition occurring or existing on or prior to the Closing that, with or without notice or lapse of time, would constitute or result in a breach of any of the Transferred Contracts; and (iii) is ascertainable by reference to the express terms of the Transferred Contracts.

"**Auction**" shall have the meaning set forth in Section 11.9.

"**Bankruptcy Cases**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Code**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Court**" shall have the meaning set forth in the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Bid Deadline**" shall have the meaning set forth in Section 11.4.

"**Bidding Procedures**" means the bidding procedures set forth in Section 11.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures in form and substance satisfactory to the Purchasers.

"**Bidding Process**" shall have the meaning set forth in Section 11.1.

"**Break-Up Fee**" shall have the meaning set forth in Section 9.3.1.

"**Business**" means the production of Products for the GMT 900 Programs being carried out at the Premises, including, without limitation, the GMT900 Light Duty Brake Corner Program, and other related programs.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York are authorized or obligated by law or executive order to close.

"**Claims**" mean losses, liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Closing**" shall have the meaning set forth in Section 7.1.

"**Closing Date**" means the date of Closing.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Cases.

"**Contracts**" mean all written or material oral purchase orders, sales agreements,

3

service contracts, employment or consulting agreements, leases (for real property, personal property or otherwise), product warranty or service agreements and other commitments, agreements and undertakings of any nature, but not including quotations and bids of Sellers outstanding on the Closing Date.

"**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise effectuate, pursuant to the Bankruptcy Code, the assumption by Delphi and assignment to RBUS of the Assumed Contracts under the Sale Approval Order.

"**Defending Party**" shall have the meaning set forth in Section 13.18.

"**Demanding Party**" shall have the meaning set forth in Section 13.18.

"**Deposit Amount**" shall have the meaning set forth in Section 4.1.1.

"**Disclosure Schedule**" means, collectively, the Schedules to Sellers' Representations and Warranties contained in Section 5.1.

"**Employees**" shall have the meaning set forth in Section 3.1.

"**Escrow Agent**" means the escrow agent under the Escrow Agreement.

"**Escrow Agreement**" shall have the meaning set forth in Section 4.1.1.

"**Escrow Amount**" shall have the meaning set forth in Section 4.1.2.

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.1.2.

"**Excluded Contracts**" shall have the meaning set forth in Section 1.1.2.C.

"**Expense Reimbursement**" shall have the meaning set forth in Section 9.3.2.

"**Expiration Date**" shall have the meaning set forth in Section 5.3.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending or (ii) if an appeal, writ of certiorari, re-argument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or re-argument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with

4

respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

**"Full Escrow Period"** shall have the meaning set forth in Section 4.1.2.

**"GMT 900 Light Duty Brake Corner Program"** means the GMT 900 Light Duty Brake Corner Program and such other GM Programs for brake-related business with General Motors Corporation in which RBUS currently acts as a Tier 1 supplier and Delphi acts as a Tier 2 supplier to RBUS.

**"Good Faith Deposit"** shall have the meaning set forth in Section 11.6.3.

**"Governmental Entity"** means any United States or Mexican federal, state or local, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality or body having governmental authority with respect to the transactions contemplated hereby, under applicable law.

**"Hazardous Material"** means all matter or the effect of matter (and whether alone or in combination with other matter, and whether solid, liquid, gas or other state) which is a pollutant, contaminant, chemical, material, substance, constituent or waste, including without limitation, petroleum, petroleum-based products, polychlorinated biphenyls, asbestos and asbestos-containing materials, and noxious, radioactive, flammable, corrosive, caustic materials, all of which are governed under a Law, or are hazardous or toxic to biota, the ecosystem, or the environment.

**"Including"** means, whether or not initially capitalized, including without limitation.

**"Indemnification Claim"** shall have the meaning set forth in Section 12.4.

**"Initial Escrow Period"** shall have the meaning set forth in Section 4.1.2.

**"Intellectual Property"** means any and all patent rights, trademark rights, copyrights, software, Technical Documentation, trade secrets and know-how used by the Sellers in providing the Services.

**"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

**"Inventory"** means, raw materials, work-in-process, packaging, stores, stock, and supplies, wherever located, but not Products, related to the Business.

**"Land"** means the land on which the Premises are located and which is leased by Fraccionadora  Industrial Del Norte, S.A. de C.V. from Alambrados y Circuitos Electricos, S.A. de C.V. as described in public deed number 618 dated October 15, 1998, issued by Onésimo Flores Rodríguez, Notary Public No. 9, of Saltillo, Coahuila.

5

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable Governmental Entity.

"**Licensed Intellectual Property**" means the Intellectual Property necessary to fulfill the Transferred Contracts which will be, or has been, licensed to RBUS.

"**Lien**" means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or similar statutes as applicable under Mexican law).

"**Listed Contracts**" means the Seller's contracts and commitments listed on Schedule 5.1.14.A.

"**M&E**" shall have the meaning set forth in Section 5.1.5.D.

"**Marked Agreement**" shall have the meaning set forth in Section 11.6.2.

"**Material Adverse Effect**" means any change or event that has a material adverse effect on the  Acquired Assets or properties being purchased pursuant to this Agreement, except any change or event resulting from, relating to or arising out of: (a) any act or omission of a Seller taken with the prior written consent of a Purchaser; (b) any action taken by a Seller or a Purchaser or any of their respective representatives required by the terms of this Agreement; (c) general business or economic conditions; (d) conditions affecting the industry and markets in which the Business generally operates; (e) increases in energy, electricity, natural gas, raw materials or other operating costs; (f) changes resulting from any action required by the Bankruptcy Court; (g) national or international political or social conditions, including the engagement by the United States in hostilities, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon such country, any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment or personnel of any of such

countries; (h) acts of God; (i) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction; (j) changes in any Law; (k) any existing event, occurrence or circumstance listed in the Disclosure Schedule as of the date hereof; (l) any adverse change in or effect on the Business,  or an adverse change in or effect on the Services that is entirely cured by Seller  before the earlier of: (1) the Closing Date; and (2) the date on which this Agreement is terminated pursuant to Section 6.3 hereof; or (m) the regulatory status of a Purchaser.

"**Notice**" shall have the meaning set forth in Section 13.18.

"**Ordinary Course of Business**" means, with respect to the Business, the ordinary

course of business consistent with custom and practice of the Business prior to the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases.

"**Party**" or "**Parties**" means any Purchaser and/or Seller.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to a Seller and that are currently used exclusively for the purpose of carrying on the Business or that relate exclusively to the Acquired Assets.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other IT assets other than Intellectual Property, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the premises of DSE, at the place of business of a vendor or elsewhere.

"**Petition Date**" shall mean October 8, 2005.

"**Post-Petition Contracts**" means the Contracts that Delphi entered into on or after the Petition Date relating to the Business entered into in the Ordinary Course of Business or approved by the Bankruptcy Court.

"**Potential Bidder**" shall have the meaning set forth in Section 11.3.

"**Premises**" means the building  leased by DSE from Fraccionadora Industrial Del Norte, S.A. de C.V. on the Saltillo-Piedras Negras Highway at Km. 8.54, Number 8540, Ramos Arizpe, Coahuila, Mexico, C.P. 25900.

"**Premises Lease**" means the lease for the Premises.

"**Products**" means finished products consisting of master cylinder bodies, brake drums, front corner modules, knuckles and rotors for OEMs, Tier 1 suppliers and the automotive aftermarket.

"**Purchase Price**" means the payment referred to in Section 4.1.

"**Purchaser Damages**" shall have the meaning set forth in Section 12.1.

"**Qualified Bid**" shall have the meaning set forth in Section 11.7.7.

"**Qualified Bidder**" shall have the meaning set forth in Section 11.3.3.

"**Required Bid Documents**" shall have the meaning set forth in Section 11.6.

"**Retained Liabilities**" shall have the meaning set forth in Section 2.3.

"**Sale**" means the sale of the Acquired Assets, the leasehold interest in the Premises and the Land  in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court approving the Sale pursuant to Sections 363 and 365 of the Bankruptcy Code in form and substance reasonably satisfactory to Purchaser, authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets and Assumed Liabilities of Delphi to RBUS, in accordance with the terms and conditions of this Agreement, free and clear of all Liens.

"**Sale Hearing**" shall have the meaning set forth in Section 11.10.

"**Sale Approval Motion**" means the motion to obtain the Sale Approval Order.

"**Seller Damages**" shall have the meaning set forth in Section 12.2.

"**Sellers' Knowledge**" or "**Knowledge of Seller(s)**" means the actual knowledge after reasonable investigation of the individuals listed on Schedule A, in each of their respective functional areas without imputation of the knowledge of any other Person.

"**Services**" means the assembly and manufacturing operations that DSE performs for Delphi at the Premises.

"**Software**" means computer software and programs, including, without limitation, source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**Subsequent Bid**" shall have the meaning set forth in Section 11.7.7.

"**Successful Bid(s)**" shall have the meaning set forth in Section 11.9.6.

"**Successful Bidder(s)**" shall have the meaning set forth in Section 11.9.6.

"**Tax Return**" means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any Schedule or attachment thereto.

"**Tax(es)**" means, without limiting the generality of the following, all taxes, duties, fees, premiums, assessments, imposts, levies and other charges of any kind whatsoever

8

imposed by any Governmental Entity under applicable Law, together with all interest, penalties, fines, additions to tax or other additional amounts imposed in respect thereof, including those levied on, or measured by, or referred to as income, value added tax, profits, single business, capital, transfer, land transfer, sales, goods and services, harmonized sales, use, value-added, excise, stamp, withholding, business, franchising, property, employer health, payroll, employment, unemployment, social security (or similar) taxes, all surtaxes, all customs duties and import and export taxes, all license, franchise and registration fees; for the avoidance of doubt, the term "taxes" shall include each and all of the concepts referred to in articles 2, 3 and 4 of the Mexican Tax Code ("*Código Fiscal de la Federación"*).

"**Technical Documentation**" means all documented technical information currently in the files of the Business primarily used in the Business owned by Delphi, in each case pertaining to the design or manufacture of the Products including the items listed on Schedule 5.1.7.

"**Termination Date**" shall have the meaning set forth in Section 9.1.1.E.

"**Third Party Bailed Assets**" shall have the meaning set forth in Section 1.1.2.A.

"**Third-Party Requirements**" shall have the meaning set forth in Section 5.1.3.

"**Transferred Contracts**" means the Contracts of the Sellers to be assigned to Purchaser at Closing as described in Section 2.1.1.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**Warranties**" refers to the representations and warranties provided by either Seller to the Purchasers, or by either Purchaser to a Seller, as the case may be, in each case as referred to in Article 5 of this Agreement.

"**Water Concession**" shall have the meaning set forth in Section 1.l.1.E.

1. **CONVEYANCE OF THE ACQUIRED ASSETS**:

**1.1. Acquired Assets Transaction**. Upon the terms and subject to the conditions set forth in this Agreement, at Closing Delphi and DSE shall sell, transfer, assign, convey and deliver to RBUS and to FRMX, and RBUS and FRMX (as the case may be) shall purchase, accept and acquire from Delphi or DSE, as the case may be, all of the assets and properties described in Section 1.1.1 below (collectively, the "**Acquired Assets**"), subject in each case to Section 1.1.2, free and clear of all Liens except the DSE liens specified in Section 5.1.15.E below.

**1.1.1. Acquired Assets**.

A.    **Machinery and Equipment.** The Acquired Assets consist of all of Sellers' right, title and interest in and to the machinery and equipment listed on Schedule

1.1.1 hereto, Permits, Inventory, rights under Transferred Contracts (including Delphi 's rights against third party manufacturers to the extent any liability is assumed by a Purchaser pursuant to Section 2.1),  Intellectual Property and  Administrative Assets.  The Acquired Assets shall be transferred by Sellers to RBUS in full compliance with any legal and/or administrative provision that may apply in order to, when applicable, preserve the Acquired Assets' temporary importation customs regime. Specifically, Sellers shall transfer temporary imported Acquired Assets through the so called "virtual customs operations" or through any similar or equivalent  method that may achieve the same result.

**B.**     **Premises.**      DSE shall transfer to FRMX at Closing a leasehold interest in the Premises. DSE shall obtain the consent of Fraccionadora Industrial del Norte, S.A. de C.V. (the "Landlord") for the transfer of the leasehold.  At Closing, DSE and FRMX will execute an assignment agreement in the form of Exhibit 1.1.1B-1 attached hereto, pursuant to which DSE shall assign to FRMX all of DSE's rights and obligations deriving from that certain Lease Agreement entered into between the Landlord and DSE on November 11, 1998, as amended, and shall deliver to Purchasers the written consent of the Landlord to such assignment and assumption.  In the event DSE and the Sellers are successful in negotiating with the Landlord the purchase of the Premises then, at Closing, the Landlord and FRMX shall complete the transfer of the Premises by signing a transfer deed in the form of Exhibit 1.1.B-2 hereto at Closing.

C.     **Land**.  DSE shall cause Alambrados y Circuitos Electricos S.A. de C.V. (the "Owner") to transfer the Land to FRMX by having the Owner sign a transfer deed in the form of Exhibit 1.1.1C at Closing. FRMX shall be solely responsible for paying the applicable acquisition tax, the notarial fees for such transfer and for the physical structures to separate the Land from the contiguous property, such as fences.

D.     **Personnel and Medical Records**. All work histories, personnel and medical records of Employees and former employees of DSE who worked at any time for any reason at the Premises for whom a record exists at the Premises at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws: FRMX will be provided the originals of all personnel and medical records of Employees of DSE who have accepted employment with FRMX in connection with the sale hereunder, with the prior written consent of such Employee or after posted written notice or other appropriate notice to such Employees if legally required. If an Employee objects to provision of personnel or medical records to Purchaser, the records will not be provided.  DSE will be entitled to retain a copy of any originals provided to FRMX, and, in the event of any employment litigation that DSE would be required to defend under this Agreement, and that would require DSE to produce such original documentation, FMRX will cooperate with DSE to provide such original documentation or certified copies, as appropriate.

E.     **Water Well Rights**. Any and all rights and obligations for the extraction, use, and exploitation of underground national water with an aggregate water demand of 60,000 cubic meters per annum under the Water Concession number 06COA113347/24FMGR04  issued on July 29, 1998 by the National Water Commission

10

("Comisión Nacional del Agua") (the "Water Concession").

       F.     **Discharge of Water Rights**. Any and all rights and obligations for the discharge of 25,118.30 cubic meters of water per annum under the Discharge of Water Concession number 06COA111504/24IMGE06 issued on March 23, 2006 by the National Water Commission ("Comisión Nacional del Agua").

       G.     **Electricity Rights.**  Subject to Section 5.1.8 below, the right to use electricity from DSE's electric substation until the date that FRMX obtains delivery of electricity from the Mexican Federal Electricity Commission (Comision Federal de Electricidad or "CFE").

    **1.1.2. Excluded Assets**. Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets shall not be included in the Acquired Assets:

       A.     **Bailed Assets**. Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by any other third party listed in Schedule 1.1.2.A ("Third Party Bailed Assets").

       B.     **Certain Financial Assets**. Cash, cash equivalents, bank accounts and all accounts receivable.

       C.     **Certain Contracts**. All Contracts of Delphi that are not Transferred Contracts, including Contracts set forth on Schedule 1.1.2.C ("**Excluded Contracts**").

       D.     **Tax Refunds**. Any refund of Taxes paid, or claim for refund of Taxes paid, of any kind relating to the Acquired Assets for any period prior to the Closing Date.

       E.     **Privileged Information and Materials**. Information and materials protected by the attorney-client privilege or that, in the case of environmental-related documents, a Seller considers to be proprietary information, and the lack of which excluded information and materials is not material to the  manufacture of the Products or the provision of the Services.

       F.     **Insurance**. The benefit of any of Sellers' or Sellers' Affiliates' insurance policies relating to the operation of the Business or the provision of the Services (including any right to proceeds thereunder).

       G.     **Certain Rights**. All of the rights and claims of Delphi available to Delphi under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

11

       **H.**    **Other Excluded Assets**. All computer hardware, equipment, or other assets listed on Schedule 1.1.2. H.

       **I.**    **Finished Goods**.  All  Products manufactured at the Premises prior to Closing.

       **J.**    **Electricity**.  All electrical materials and equipment, including substations and metering equipment, related to the supply of Electricity to FRMX.

    **1.1.3. Post-Closing Asset Deliveries**. Should a Seller or a Purchaser, in its reasonable discretion, determine after the Closing that books, records or other similar materials constituting Acquired Assets are still in the possession of such Seller, such Seller shall promptly deliver them to the appropriate Purchaser at no cost to that Purchaser. Should a Seller or a Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to a Purchaser, such Purchaser shall promptly return them to the appropriate Seller at no cost to such Seller other than reimbursing Purchaser's reasonable out-of-pocket costs, but only if and to the extent such costs exceed, in the aggregate, $5,000.

    **1.1.4. Prorations**:

       **A.**    To the extent that a Seller has made any payment relating to the Products or the Services prior to the Closing Date with respect to any item listed in Subparagraph B below relating to periods on or following the Closing Date, RBUS or FRMX, as the case may be,  shall reimburse Seller on a per diem basis; and

       **B.**    To the extent either Purchaser makes any payment relating to the Business or the Services following the Closing Date with respect to any item listed below relating to periods prior to the Closing Date,  the appropriate Seller shall reimburse the appropriate Purchaser on a per diem basis;

       **C.**    The per diem under the preceding paragraphs A and B shall in each case be only for the following concepts:

       (i)    Rent for the Premises and copier leases and other pre-paid amounts under Transferred Contracts (such other pre-paids to be mutually agreed by the parties before Closing);

       (ii)    Personal, real property and other ad valorem Taxes, allocated in accordance with local custom;

       (iii)    Water, wastewater treatment, sewer charges and other similar types of charges with respect to the Premises;

(iv)    Electric, fuel, gas, telephone and internet services and other utility charges; and

**C.    Further Assurance**. The parties will use commercially reasonable efforts to determine the amounts of the above prorations and settle such amounts at Closing. To the extent that, within sixty (60) days after Closing, a Seller, on the one hand, or a Purchaser, on the other hand, receives any bill or other invoice for any of the items listed in this Section 1.1.4 or similar items, relating to both pre-Closing and post-Closing periods, such Seller or Purchaser shall, as soon as practicable but no later than ninety (90) days after Closing, send any such bill or invoice to the other Party. If necessary to avoid incurring interest, penalties and/or late charges, a Purchaser may pay all amounts shown to be due thereon, and may invoice the appropriate Seller for all amounts owed by such Seller thereunder, and in such case such Seller shall reimburse such amounts.

Any payments due under this Section 1.1.4 that have not been settled at Closing shall be made within thirty (30) days after the end of the month in which a bill or invoice is sent to a Party (or Affiliate thereof); provided, however, that the disputed portion of any such item shall be paid within thirty (30) days after the final determination thereof on an item-by-item basis. When a Party makes a payment to a third party which is required to be reimbursed to such Party by the other Party, the reimbursement payment shall be considered the repayment of an advance.

### 1.1.5. Non-Assignable Permits and Contracts:

**A.    Non-Assignability**. After giving effect to the Sale Approval Order, to the extent that any Permit included in the Acquired Assets or any Transferred Contract is not capable of being assigned to Purchaser at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, until any such consent or waiver is obtained.

**B.    Efforts to Obtain Consents and Waivers**. At Purchasers' request, Sellers shall, at their expense, use commercially reasonable efforts, and Purchasers shall, at Purchasers' expense, cooperate with Sellers, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.1.5.A after the Closing.

**C.    Waivers or Consents that Cannot be Obtained.** Schedule 1.1.5.C lists the Permits and Transferred Contracts, if any, that Sellers have been unable to assign to Purchasers by Closing. Until the impracticalities of assignment referred to therein are resolved, such Seller's sole responsibility with respect to such matters, notwithstanding Section 1. 1, shall be to use, during the one hundred eighty (180) day period commencing with the Closing, all commercially reasonable efforts, at no cost to either Purchaser (other than pursuant to Section 1.1.5.D below), to: (i) cooperate in any reasonable and lawful arrangement designed to provide such benefits to the appropriate Purchaser, without incurring any financial obligation to such Purchaser or to any third party; and (ii) at the

13

request and direction of a Purchaser, take all reasonable actions to enforce for the account of such Purchaser and at the cost of such Purchaser any rights of the Seller arising from the Permits included in the Acquired Assets or Transferred Contracts referred to in Section 1.1.5.A against such issuer thereof or other party or parties thereto.

       **D.**      **Obligation of Purchaser to Perform**. To the extent that a Purchaser is provided the benefits pursuant to Section 1.1.5.C of any Permit included in the Acquired Assets or Transferred Contracts, such Purchaser shall perform, on behalf of the Seller providing such benefits, for the benefit of the issuer thereof or the other party or parties thereto the obligations of the Seller thereunder or in connection therewith and if such Purchaser shall fail to perform to the extent required herein, the Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.1.5.C in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or, at Purchaser's request, such Seller may perform at such Purchaser's sole reasonable cost and expense, in which case such Purchaser shall reimburse the Seller's reasonable costs of such performance immediately upon receipt of an invoice.

**2.**      **ASSUMPTION OF LIABILITIES:**

    **2.1. Assumed Liabilities**. At and as of the Closing, each Purchaser shall assume and agree to pay, perform and discharge when due, and shall be liable with respect to, all obligations, liabilities and responsibilities specifically referred to in this Section 2.1 ("Assumed Liabilities"), other than the Retained Liabilities, as follows:

       **2.1.1.**  The obligations of each Seller to be performed under the Contracts listed on Schedule 2.1.1 (the "Transferred Contracts") and the obligations of such Seller to be performed under licenses and Permits included in the Acquired Assets that are assigned or otherwise transferred to a Purchaser pursuant to this Agreement.

       **2.1.2**. The obligation to pay for all the costs and expenses related to the separation between the Land and the contiguous piece of land along the property boundary, including without limitation the placing of appropriate fences, and the cost of all goods and services related to the installation of independent utility and other services to the Premises, including without limitation electricity, telephone, water, internet, sewer and the like.

       **2.1.3.** Liabilities and obligations arising out of, resulting from, or relating to sales pursuant to Transferred Contracts for Products or Services by the Business, including all Product warranty, Product returns, Product liability (other than design defects) and Product recall liability related thereto, but only to the extent such liabilities and obligations result from a Purchaser's performance under a Transferred Contract after the Closing.

    **2.2. No Expansion of Third Party Rights.** The assumption by a Purchaser of any Assumed Liability shall in no way expand the rights or remedies of any third party against a Purchaser or a Seller as compared to the rights and remedies which such third party would have had against such Seller absent the Bankruptcy Cases, had such Purchaser not assumed

such Assumed Liability. Without limiting the generality of the preceding sentence, the assumption by either Purchaser of the Assumed Liabilities shall not create any third-party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

**2.3. Retained Liabilitie**s. Notwithstanding anything in this Agreement to the contrary, no Purchaser shall assume or be deemed to have assumed, nor shall have any liability or obligation with respect thereto, any other liabilities of Delphi or DSE (collectively, "Retained Liabilities") including without limitation the following: (i) liabilities in respect of employment or services performed on or prior to the Closing; (ii) product liability claims to the extent based on a defective design for Products designed by Seller and sold prior to the Closing Date or manufactured by Sellers (whether sold prior to or after the Closing Date) except as expressly set forth in Section 2.1.3; (iii) existing litigation for which a claim has been made to or threatened in writing against either Seller on or before the Closing Date; (iv) all Tax liabilities of each Seller for all periods prior to Closing (but excluding any Tax liabilities allocated to Purchaser pursuant to Section 10.3 of this Agreement); (v) any liability or obligation of either Seller for administrative fees and expenses, including, without limitation, "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code; (vi) any liability or obligation of either Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement; (vii) all Debt owed by either Seller to any party; (viii) all Claims, except for Assumed Liabilities; ; (ix) Customs duties and ancillary charges for importations made prior to the Closing date; (x) any liability or obligation not expressly assumed pursuant to Section 2.1 hereof;  (xi) any accounts payable on the books of Sellers prior to the Closing; (xii) all liabilities to Employees arising out of their employment by DSE or any affiliate thereof or payment of severance amounts at their termination prior to Closing; and (xiii) all  PBGC-related liabilities  accruing  prior to Closing with respect to Sellers or the Sellers' assets.

3.    **ACQUIRED ASSETS - PERSONNEL MATTERS – TRANSFERRED EMPLOYEES**:

**3.1. DSE Employees**. Listed on Schedule 5.1.16.A are all employees of DSE who perform services exclusively or primarily for the Business (each employee required to be so listed an "Employee" and, collectively, "Employees"). With respect to each such Employee (as limited in definition for purposes of this Article 3 only) included thereon, Schedule 5.1.16.A lists each Employee's: (i) title or job/position; (ii) job designation (i.e., salaried or hourly); (iii) location of employment; and (iv) annual base rate of compensation.

**3.1.1. Pre Closing Severance.**  At the request of Purchasers, DSE has agreed to and will cause all Employees to be terminated pursuant to the Federal Labor Law prior to Closing (but only after determining that RBUS or Purchasers are the Successful Bidders) and shall be responsible for all termination procedures and expenses.   Not later than ten (10) calendar days prior to the Closing Date, FRMX will offer employment to those Employees of DSE whom FRMX wishes to employ.  On the first business day following the Closing Date, FRMX will hire the Employees who accept the offer of Employment extended by

FRMX.

### 3.1.2 Employment Liabilities.

A.  Except as otherwise provided for in this Agreement, Purchasers shall be responsible for, and shall assume and thereafter pay, perform and discharge, any and all employment, compensation and employee benefit liabilities, responsibilities and obligations, including, without limitation, any and all claims under applicable law, including breach of any contract of service or claim for compensation or redress for wrongful or unfair dismissal or discrimination or failure to comply with an order for reinstatement or re-engagement or failure to comply with any provisions of all or any existing laws with respect to the employees, which liabilities, responsibilities and obligations related to the period of employment which began after the Closing Date.

B.    Except as otherwise provided for in this Agreement, Sellers shall be responsible for, and shall assume and thereafter pay, perform and discharge, any and all employment, compensation and employee benefit liabilities, responsibilities and obligations, including, without limitation, any and all claims under applicable law, including breach of any contract of service or claim for compensation or redress for wrongful or unfair dismissal or discrimination or failure to comply with an order for reinstatement or re-engagement or failure to comply with any provisions of all or any existing laws with respect to the Employees, which liabilities, responsibilities and obligations related to the period of employment (or its termination) before the Closing Date.

**3.1.3.** FRMX's offer of employment to substantially all persons identified on Schedule 5.1.16.A, will be on such terms and conditions as FRMX, in its sole discretion, shall determine.

**3.2. <u>Cooperation</u>**. DSE and FRMX will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Article 3.

**3.3. <u>No Third Party Rights</u>**. No provision of this Agreement confers rights or remedies upon any person, including Employees, other than the parties to this Agreement.

## 4.    PURCHASE PRICE:

**4.1. <u>Purchase Price; Deposit Amount</u>**. Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets shall be the amount of: (i) fifteen million Dollars (US$ 15,000,000) (the "Purchase Price").

**4.1.1. Deposit Amount**. Upon execution of this Agreement, RBUS has delivered to the Escrow Agent, pursuant to the terms of the Escrow Agreement attached hereto as Exhibit 4.1.1 (the "Escrow Agreement"), $500,000 in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "Deposit

Amount"), to be held by the Escrow Agent in an interest bearing account reasonably acceptable to Purchaser to serve as an earnest money deposit and also as the Good Faith Deposit defined in Section 11.6.3 below, and to be released in accordance with the following procedures and the Bid Procedures set forth in Section 11 hereof:

       **A.**    **Deposit Instructions**. On the Closing Date, Delphi and RBUS shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account or accounts designated by Delphi in the Escrow Agreement (and such amount shall be applied towards the payment of the Purchase Price);

       **B.**    **Termination of Agreement**. Upon any failure by RBUS to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Section 7.1 hereof, the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi in the Escrow Agreement, to be retained by Delphi. Any such payment shall constitute Delphi's sole recourse in connection with such failure to consummate the transactions contemplated hereby; and

       **C.**    **Other Reason**. Upon termination of this Agreement for any other reason, or upon the failure by Delphi and DSE to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Section 7.1 hereof by September 28, 2007, the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by RBUS in the Escrow Agreement, to be retained by RBUS.

    **4.1.2. Delivery of Purchase Price**. At Closing, Purchasers shall pay to Sellers an aggregate amount equal to the Purchase Price less the Deposit Amount (apportioned pursuant to the allocation referred to in Section 4.2) and less $2,000,000.00 (two million dollars) (the "Escrow Amount") by wire transfer in U.S. Dollars in immediately available funds to the account of the appropriate Seller, pursuant to this Agreement and a notice delivered by each Seller to Purchasers prior to Closing. At Closing, Purchasers shall pay to JP Morgan Trust Company, National Association as "Escrow Agent" hereunder the Escrow Amount to be held by the Escrow Agent as collateral to secure the rights of the parties under Article 12 hereof. The Escrow Amount shall be held pursuant to the provisions of the Escrow Agreement. The entire Escrow Amount will be held by the Escrow Agent from the Closing Date until the one (1) year anniversary of the Closing Date (the "Initial Escrow Period"), at which time $1,000,000 of the Escrow Amount will be released to the Sellers; provided, however, that in the event a Purchaser has made a claim under Article 12 prior to the end of the Initial Escrow Period, then such Escrow Period shall continue (and the Escrow Agent will continue to hold in escrow that portion of the Escrow Amount which is equal to the amount which is necessary to satisfy such indemnity claim) until such claim is fully and finally resolved. The remainder of the Escrow Amount will be held by the Escrow Agent from the Closing Date until the two (2) year anniversary of the Closing Date (the "Full Escrow Period") provided, however, that in the event a Purchaser has made a claim under Article 12 after the first anniversary of the Closing Date but prior to the end of the Full Escrow Period, then the Full Escrow Period shall continue (and the Escrow Agent will

continue to hold in escrow that portion of the Escrow Amount which is equal to the amount which is necessary to satisfy such indemnity claim) until such claim is fully and finally resolved. The costs and expenses of the Escrow Agent will be paid from and borne solely by the Escrow Amount.

**4.2.  Allocation of Purchase Price**. The Parties agree to allocate the Purchase Price among the Acquired Assets, for all purposes (including financial, accounting and tax) (the "Allocation") in a manner consistent with the Allocation Schedule set forth in Schedule 4.2 to be mutually agreed upon by RBUS and Delphi in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended, based on the fair market value of the Acquired Assets. RBUS shall provide to Delphi a draft Allocation within fifteen (15) days following the Closing Date. This Allocation shall become final and binding on the parties, unless Delphi notifies RBUS within fifteen (15) days after receipt of such Allocation of Delphi's disagreement with such Allocation. In the event Delphi timely notifies RBUS of such disagreement, the parties shall resolve such disagreement in the manner described in Section 13.18 of this Agreement. RBUS and Delphi shall each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law. Delphi shall provide RBUS and RBUS shall provide Delphi with a copy of any information required to be furnished to the Secretary of the Treasury under Internal Revenue Code Section 1060.

**5.      REPRESENTATIONS AND WARRANTIES:**

**5.1.  Representations and Warranties of Seller**. All information set forth in the Disclosure Schedules with respect to any clause of this Section 5.1 shall be deemed disclosed under and incorporated into any other clause of this Section 5.1 as to which such disclosure would clearly be appropriate based solely on the language in such disclosure and such other clause. Each Seller represents and warrants to the Purchasers as follows:

**5.1.1. Organization and Good Standing**. Except as otherwise set forth on Schedule 5.1.1, each Seller is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of formation, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate its properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property.

**5.1.2. Corporate Power; Due Authorization**. DSE has, and Delphi, subject to Bankruptcy Court approval, also has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, subject to Bankruptcy Court approval, to which such Seller is a party, and to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated herein and

therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements by DSE, and subject to Bankruptcy Court approval, the execution, delivery and performance of this Agreement and the Ancillary Agreements by Delphi, and the consummation of the contemplated transactions have been duly authorized by all necessary action on the part of such Seller. Subject to the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, this Agreement, and the Ancillary Agreements, have been duly and validly executed and delivered by or on behalf of the Sellers and (assuming this Agreement constitutes a valid and binding obligation of Purchasers) constitutes a legal, valid and binding agreement of Sellers, enforceable against each Seller in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3. No Violations**. No consent, approval, authorization of, declaration, filing or registration with any domestic or foreign government or regulatory authority or any other third party is required to be made or obtained by either Seller in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements (including the assignment of all Transferred Contracts), except for: (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court that have been made or obtained, or will be made or obtained prior to the Closing; and (ii) consents, approvals, authorizations, declarations, filings and registrations set forth on Schedule 5.1.3, the lack of which would not have a Material Adverse Effect. The items referred to in clauses (i) through (ii) of this Section 5.1.3 are hereinafter referred to as the "Third-Party Requirements".

**5.1.4. Sufficiency of Acquired Assets**. The Acquired Assets comprise all of the assets reasonably necessary to continue the supply of  Products  in a manner consistent with DSE's supply of Products the, pursuant to RBUS's and Delphi's Tier 1/Tier 2 arrangement.

**5.1.5. Personal Property; Condition of Personal Property**:

**A.**     **Title to Personal Property**. Except for the Personal Property leases and other Personal Property referred to in Schedule 5.1.5.A, each of the Sellers has good, valid and marketable title to its respective  Personal Property and Inventory included in the Acquired Assets. Upon entry by the Bankruptcy Court of the Sale Approval Order, Delphi shall transfer the Acquired Assets free and clear of any Lien.

**B.**     **Condition of Personal Property**. The Personal Property included in the Acquired Assets is in such condition at Closing (considering age, wear and tear, and purpose for which used) as to enable fulfillment of the Transferred Contracts as they are currently being fulfilled without material disruption, but Sellers make no representation or warranty as to the duration of such condition after Closing.

**C.**     **Inventory**. Except to the extent identified in Schedule 5.1.5.C, the

19

Inventory included in the Acquired Assets will, as of the Closing, be located at the Premises and such other locations as set forth on Schedule 5.1.5.C, be fit for the purpose for which it is ordinarily acquired.

      **D.**      **Machinery, Equipment and Tools**. Regarding the Acquired Assets, Schedule 5.1.5.D sets forth a list of substantially all machinery, equipment and capitalized tools (collectively, the "M&E") with an acquisition value greater than $5,000 USD, included in the Acquired Assets and primarily used in or related to the Services. The M&E included in the Acquired Assets is in such condition at Closing (considering age, wear and tear, and purpose for which used) as to enable fulfillment of the Transferred Contracts as they are currently being fulfilled without material disruption, but Sellers make no representation or warranty as to the duration of such condition after Closing.

      **E.**      **Imported Assets**. Except for matters referred to in Schedule 5.1.5.E, all imported assets included in the Acquired Assets (i) have been imported in full compliance with Applicable Laws and regulations and customs documentation requirements and, where applicable, any special customs regime to which the Sellers are subject, including PITEX, Maquila, IMMEX PROSEC or others; (ii) all customs filings, reports and certifications required to be filed have been duly and timely filed; (iii) all custom duties, Taxes and other fees have been duly and timely paid; and (iv) all documents legally required to be maintained with respect thereto, including but not limited to the customs documentation evidencing the correct import as well as the assets legal stay in Mexico, have been and are being maintained by Sellers in the Ordinary Course of Business.

    **5.1.6. <u>Litigation.</u>** Except for the pendency of the Bankruptcy Cases, including all proofs of claim filed by creditors in the Bankruptcy Cases, and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or, to either Seller's Knowledge, investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to any Seller's Knowledge, threatened against or affecting either Seller.

    **5.1.7. <u>Intellectual Property</u> .** The parties agree and acknowledge that Delphi has provided RBUS with all Intellectual Property required to conduct the Business in arrangements that precede this Agreement, in furtherance of RBUS Tier 1 arrangements with General Motors, including the licenses listed on Schedule 5.1.7 which licenses are enforceable in accordance with their terms.

      A.      Schedule 5.1.7.A. sets forth a true and complete list of the Intellectual Property. Except as set forth in Schedule 5.1.7.A, there are no impediments to the ability of any Seller under any agreement with a third party or under applicable Law to grant to Purchasers the rights to use the Intellectual Property as contemplated in this Agreement.

      B.      To Sellers' Knowledge, Sellers are conducting the Business in a manner that does not violate the intellectual property right of another Person and no Claim has been made by any third party against any Seller of Intellectual Property infringement or misappropriation in connection with the Intellectual Property resulting from the operation of

20

the Business, except as set forth in Schedule 5.1.7.B.

**5.1.8. Electricity.**  DSE will allow FRMX to use electricity from DSE's substation until the date that FRMX is able to obtain its own electricity from the CFE, provided that such date does not exceed 18 months from the date of Closing.

**5.1.9. <u>Compliance with Other Instruments and Laws; Permits</u>**. Each Seller is in compliance with all Laws applicable to the manufacture of the Products and the provision of the Services and all Permits. All Permits that are necessary for the manufacture of the Products and the ownership and operation of the Acquired Assets have been duly obtained, are in full force and effect, and, to any  Seller's Knowledge, are listed on Schedule 5.1.9, and there are no proceedings pending or, to either Seller's Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit. The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by either Seller will not, with or without the passage of time or the giving of notice, result in any such violation or be in conflict with or constitute a default under any Permit.

**5.1.10. <u>Brokers</u>**. No Seller has employed a finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which a Purchaser would be liable.

**5.1.11. <u>Consents and Approvals</u>**. Assuming that the Third-Party Requirements will be satisfied, made or obtained and will remain in full force and effect, and assuming receipt of the consents, approvals and authorizations listed in Schedule 5.1.11, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Sellers, nor the consummation by the Sellers of the Sale, nor compliance by  any  Seller with any of the provisions hereof and of the Ancillary Agreements, will, with or without the passage of time or the giving of notice: (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of any Seller; (ii) result in a material violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which a Seller is a party or by which its properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to any Seller or to any of its properties or assets; or (iv) result in the creation or imposition of any Lien on any Delphi asset that is part of the Acquired Assets; *provided, however,*  that the representations and warranties  in clauses (ii) and (iii) above shall not apply to the extent they relate to violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions, suspensions or revocations that are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**5.1.12. Intentionally Omitted.**

**5.1.13. Intentionally Omitted.**

**5.1.14. Contracts**:

      **A.**     Schedule 5.1.14.A lists all Transferred Contracts together with any other agreements included in the Assumed Liabilities related to the manufacture of the Products and the provision of the Services that involve payment or performance obligations that individually exceed $5,000, and such Schedule includes all other Contracts to which either Seller is a party or by which any of its properties are bound or that primarily relate to, are primarily used in, are primarily arising from, or are necessary for the conduct of the manufacture of the Products or the provision of the Services under the Transferred Contracts (collectively, "Listed Contracts"). Each Seller has delivered or made available to the Purchasers true, correct and complete copies of the Listed Contracts, except as set forth on Schedule 5.1.14.A. Schedule 5.1.14.A identifies all Post-Petition Contracts included within the Listed Contracts other than immaterial Post-Petition Contracts and open purchase orders entered into in the Ordinary Course of Business. Except as set forth on Schedule 5.1.14.A, and except for Post-Petition Contracts that are immaterial to the Business, none of the Post-Petition Contracts included within the Listed Contracts contains any provisions restricting its assignment to Purchaser pursuant to the terms of this Agreement.

      **B.**     Each of the Listed Contracts is valid, binding and, subject to payment of all Cure Amounts, if applicable (which Cure Amounts will be paid by Delphi as set forth in the Sale Approval Order), enforceable against the relevant Seller, to the extent set forth therein, and, to Sellers' Knowledge, the other parties thereto, in accordance with its terms, and is in full force and effect. Except as set forth on Schedule 5.1.14.B, and other than with respect to monetary defaults by Delphi under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Delphi, and to Sellers' Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Delphi to assume and assign such Listed Contracts to a Purchaser, if applicable) in respect of, any of such Listed Contracts, on the part of a Seller, or to Sellers' Knowledge, on the part of any other party thereto. Except as set forth in Schedule 5.1.14.B, and other than with respect to monetary defaults by Delphi under Listed Contracts that are curable by payment of all Cure Amounts, if applicable, Sellers have received no written claim or notice from any other party to any such Listed Contract that such Seller has breached any obligations to be performed by it thereunder, or is otherwise in default or delinquent in performance thereunder (except with respect to defaults, delinquencies or obligations that need not be cured or performed, as appropriate, under Section 365 of the Bankruptcy Code for Delphi to assume and assign such Listed Contracts to Purchaser, if applicable).

**5.1.15. Tax Matters**:

      **A.**     Each Seller has: (i) duly and timely filed with the appropriate federal, state,

local and foreign authorities or governmental agencies, all material Tax Returns required to be filed and such Tax Returns were true, correct and complete; and (ii) and have paid all Taxes shown thereon as due and owing, except where the failure to file such Tax Returns or to pay such Taxes would not result in any liability to either Purchaser or any Lien on the Acquired Assets.

**B.** Except as set forth on Schedule 5.1.15.A, each Seller has properly and timely withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor or other third party (including federal income taxes, sales and use taxes, personal property taxes, Federal Insurance Contribution Act taxes and Federal Unemployment Tax Act taxes) and has properly and timely paid the same to the proper Tax receiving officers or authorized depositories, except in each case where such failure would not result in any liability to either Purchaser or any Lien on the Acquired Assets.

**C.** Delphi is not a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement, except as provided in this Agreement, under which Purchaser could be subject to Tax or other liability after the Closing.

**D.** No claim has ever been made by Mexican tax authorities that Delphi is or may be subject to taxation in Mexico; and no claim has ever been made by US tax authorities that DSE is or may be subject to taxation in the United States.

**E.** There are no Tax liens on any of Sellers' assets, except for liens asserted by the PBGC against assets of DSE which, to Sellers' knowledge, are not perfected.

**F.** Except for Transfer Taxes relating to the Sale, since January 1, 2002, neither Seller has incurred any Taxes other than in the ordinary course of business and each Seller has made adequate provisions on its books of account for all Taxes with respect to the Acquired Assets and the Business for such period, except for Taxes that would not result in any liability to either Purchaser or any Lien on the Acquired Assets.

**G.** Neither Seller has any liability for the Taxes of any Person other than a Seller or any of its subsidiaries (i) under Treasury Regulation 1.1502-6 (or any similar Treasury Regulations), (ii) as a transferee or successor, (iii) by contract, or (iv) otherwise, except in each case where such liability would not result in any liability to either Purchaser or any Lien on the Acquired Assets.

**H.** In the event the Mexican Tax authorities assert that either of the Purchasers is jointly liable with DSE pursuant to paragraph IV of Article 26 of the Mexican Federal Tax Code (Código Fiscal de la Federación) for any taxes not paid by DSE, DSE and Delphi Controladora S.A. de C.V., a Mexican corporation agree, jointly and severally, to hold the Purchasers safe and harmless from any claim filed against them by the tax authorities and to indemnify the Purchasers for any damages incurred by the Purchasers as a result of such tax claims.

**5.1.16. Employee Issues**:

      **A.**     **Employees**. Schedule 5.1.16.A contains a list of all DSE Employees, and the information thereon is true, complete and correct in all material respects.

      **B.**     **Seller Performance**. DSE has performed and discharged, or will perform and discharge on or before the Closing Date, its obligations with respect to all of the Employees, up to and including the Closing Date, including working time, payment of wages and salaries, benefits, employer's contributions to any relevant social security, health, welfare and occupational pension scheme, severance or any other payments, and payment of all other costs and expenses relating to their employment (including without limitation any taxation, accrued holiday and vacation pay, accrued bonus or other sums payable with respect to employment) up to and including the Closing Date, except as otherwise set forth on Schedule 5.1.16.B.

**5.1.17. Environmental**.

      **A.**     Since January 1, 1999, the operation of the Premises is in material compliance with all applicable environmental laws.

      **B**.     Except as set forth in Schedule 5.1.17, there are no Hazardous Materials present in the surface water, groundwater or soil (either surface or subsurface) at the Premises in excess of the amounts permitted under applicable Laws.

      **5.1.18. Absence of Other Representations or Warranties**. Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, no Seller makes any representations or warranties, express or implied, with respect to the Acquired Assets, the Assumed Liabilities, and in particular but without limitation, Sellers make no representations with respect to any plan(s) of Purchaser for the future conduct of the Business. For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information not contained in this Agreement or the Ancillary Agreements, all of which were produced only for information purposes.

**5.2. Representations and Warranties of Purchasers.** Purchasers warrant and represent to Sellers as follows:

      **5.2.1. Corporate Data**. Each Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.

      **5.2.2. Corporate Power; Due Authorization.** Each Purchaser has the corporate or other organizational power and authority to execute and deliver this Agreement and the

Ancillary Agreements and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein. The execution, delivery and performance of this Agreement and the Ancillary Agreements have been duly authorized by all necessary action on the part of Purchaser. This Agreement is, and the Ancillary Agreements to which Purchaser is a party will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Sellers), valid and legally binding obligations of Purchasers, enforceable against each Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

**5.2.3. No Violations**. Neither the execution, delivery or performance of this Agreement by Purchaser, nor the consummation by either Purchaser of the transactions contemplated herein, nor compliance by a Purchaser with any of the provisions hereof, will: (i) except for the Third-Party Requirements listed on Schedule 5.1.3, require a Purchaser to obtain any consent, approval or action of, or make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of Purchaser; or (iii) violate any order, writ, injunction, decree, statute, rule or regulation applicable to either Purchaser or such Purchaser's properties or assets.

**5.2.4. Litigation**. Except for the pendency of the Bankruptcy Cases, including all proofs of claim filed by creditors in the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any federal, state or foreign commission, court, tribunal, board, agency or instrumentality, or before any arbitrator) pending or, to the knowledge of either Purchaser, threatened against or affecting Purchaser which could reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

**5.2.5. Brokers**. Neither Purchaser has employed a finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which a Seller would be liable.

**5.2.6.** Intentionally Omitted.

**5.2.7.** Intentionally Omitted.

**5.2.8. Adequate Assurance of Future Performance**. Purchasers have provided or will be able to provide, at or prior to the Sale Hearing, adequate assurance of their future performance under each Assumed Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance shall be necessary thereunder with respect to any Assumed Contract.

**5.2.9. Compliance with Law**. Each Purchaser is in compliance with all Laws

applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

**5.2.10. Intentionally Omitted.**

**5.3. Survival of Representations, Warranties and Covenants of the Seller.** The representations and warranties made by the Sellers in Section 5.1 shall survive the Closing and shall expire on the  second anniversary of the Closing Date (the "Expiration Date") except for  the representations and warranties made by Sellers in Section 5.1.5.A, which shall survive indefinitely; provided, however, that if, at any time prior to the Expiration Date, a Purchaser delivers to Sellers a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by a Seller and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the Expiration Date until such time as such claim is fully and finally resolved. The covenants made by the Sellers shall survive the Closing and shall expire on the Expiration Date.

**5.4. Survival of Representations, Warranties and Covenants of the Purchaser**. The representations and warranties made by the Purchasers in Section 5.2 shall survive the Closing and shall expire on the Expiration Date; provided, however, that if, at any time prior to the Expiration Date, a Seller delivers to a Purchaser a written notice alleging the existence of an inaccuracy in or a breach of any of the representations and warranties made by the Purchaser and asserting a claim for recovery in accordance with Article 12 based on such alleged inaccuracy or breach, then the claim asserted in such notice shall survive the Expiration Date  until such time as such claim is fully and finally resolved. The covenants made by the Purchasers shall survive the Closing and shall expire on the Expiration Date.

**6.      CONDITIONS TO CLOSING**:

**6.1. Conditions to Obligations of Seller and Purchaser**. The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following conditions precedent:

**6.1.1. Sale Approval Order**. The Sale Approval Order shall be entered by the Bankruptcy Court and shall not be subject to a stay or injunction.

**6.1.2. No Law, Judgments, etc.** No provisions of any applicable Law and no judgment, injunction (preliminary or permanent), order or decree that prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement shall be in effect (each party taking any and all steps required by Section 8.2 of this Agreement).

**6.2. Conditions to Obligations of Purchasers**. The obligation of Purchasers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which

may be waived in whole or in part by Purchasers):

     **6.2.1. Accuracy of Representations and Warranties**. Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Sellers contained in this Agreement shall be true and correct in all material respects, in each case as of the date hereof and as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time) except where the failure of such representation and warranty to be true and correct would not have a Material Adverse Effect. Subject to the preceding sentence, Sellers may update or supplement the Disclosure Schedule prior to Closing by written notice to Purchasers.

     **6.2.2. Performance of Covenants**. Each of the Ancillary Agreements to which a Seller is a party shall have been executed and delivered by such Seller to Purchaser, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by such Seller on or before the Closing shall have been performed in all material respects.

     **6.2.3. Payment of Amounts due under Certain Contracts**. Delphi shall have paid all Cure Amounts with respect to Assumed Contracts as set forth in Section 8.4 hereof. Delphi shall have paid all outstanding amounts that arose post-petition under Transferred Contracts that are Post-Petition Contracts and became due and owing prior to the Closing Date.

     **6.2.4. Certification.** Sellers shall furnish to Purchasers a certification in a form acceptable to Purchaser pursuant to Treasury Regulation Section 1.1445-2(b)(2) that Seller is not a foreign person.

     **6.2.5. Other Approvals**. The third party consents set forth in Schedule 6.2.5 shall have been received and all consents, approvals and filings in connection with Third-Party Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchaser.

     **6.2.6 Sump Remediation.**  Sellers shall have completed the "sump remediation" as described in that certain Phase II Environmental Site Assessment dated May, 2007, Ref. No. 049354 delivered by Delphi to RBUS.

     **6.2.7 Continued Supply of Products.**  Sellers shall have continued to meet their obligations under their existing supply agreements and to have otherwise continued to conduct the Business substantially as it was conducted prior to the execution of this Agreement.

     **6.2.8. Maintenance of Assets**.  Sellers shall maintain the Personal Property included in the Acquired Assets and the  M&E up to the date of  Closing, substantially as it has maintained them while fulfilling its existing supply contracts.

**6.2.9 Confirmation of Electrical Service**.  Purchasers shall have obtained from the CFE written confirmation that it is possible for FRMX to obtain the necessary electricity from CFE to operate the Premises as presently operated by DSE.   **6.2.10  Importation Documents**. Sellers shall have provided to Purchasers, on or before the Closing Date, all the documentation available to or in the possession of Sellers establishing legal importation into, and continued presence in Mexico of all the Acquired Assets.

**6.2.11. Water and Discharge of Water Concessions Obligations**. As of the Closing Date the Sellers are in compliance with all of their obligations under applicable Laws with respect to the Water Concession  and the Water Discharge Concession and the payment of all water fees, and there no procedure shall have been initiated, or threatened to be initiated by the Mexican National Water Commission to revoke the Sellers' Water Concession or the Sellers' Water Discharge Concession.

**6.2.12 Regularization of the legal import and/or stay in Mexico of the Acquired Assets**. In accordance with subsection E of section 5.1.5 above, Sellers shall, before the Closing Date, regularize the legal import and/or stay in Mexico of all assets included in the Acquired Assets whose legal import and/or stay in Mexico cannot be evidenced with the proper customs documentation or with an invoice complying with all mandatory requirements issued by a taxpayer duly registered in the Mexican Federal Taxpayers Registry. The said regularization shall comply with the applicable tax and/or customs provisions and/or regulations. Sellers shall bear any taxes, fines, fees or any amount necessary for duly carrying out the regularization of any Acquired Assets.  Sellers shall provide to Purchasers, on or before the Closing Date, all the documentation evidencing the proper regularization of the legal import and/or stay in the country of the Acquired Assets.

**6.3. Conditions to Obligations of Sellers**. Except as otherwise permitted by this Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Seller):

**6.3.1. Accuracy of Representations and Warranties**. Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Purchasers contained in this Agreement shall be true and correct in all material respects, in each case as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on either Purchaser's ability to consummate the transactions contemplated by this Agreement.

**6.3.2. Performance of Covenants**. Each of the Ancillary Agreements to which a Purchaser is a party shall have been executed and delivered by such Purchaser to Sellers, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by a Purchaser on or before the Closing shall have been performed in all material respects.

28

**6.3.3. Delivery of Purchase Price**. RBUS shall have delivered to Delphi the Purchase Price by wire transfer, in immediately available funds, to such bank account or bank accounts as shall be specified by Delphi to RBUS on the Closing Date.

**7.** **CLOSING**:

**7.1.** **The Closing**. Subject to the satisfaction of the conditions set forth in Article 6 of this Agreement, the closing (the "Closing") of the transactions contemplated hereby shall take place at the offices of Robert Bosch LLC, 38000 Hills Tech Drive, Farmington Hills, Michigan 48331 at 10:00 a.m. on the second Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing) and in any case on a mutually agreeable date no later than September 28 , 2007, or on such other date or at such other time as the Parties may agree. For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. EDT on the Closing Date.

**7.2.** **Ancillary Agreements**. At the Closing, the Parties shall execute and deliver each to the other the following agreements to which they are a party:

**7.2.1.** Assignment of Lease of the Premises or Transfer Deed as set forth in Section 1.1.1B above.

**7.2.2.** Transfer Deed as set forth in Section 1.1.1.C above.

**7.2.3.** Shared Facilities and Maintenance Agreement in the form attached hereto as Exhibit 7.2.3.

**7.2.4.** Assignment and Assumption Agreement relating to the Transferred Contracts, consistent with the Sale Approval Order substantially in the form attached hereto as Exhibit 7.2.4.

**7.2.5.** Escrow Agreement between Seller, Purchaser and the Escrow Agent substantially in the form attached hereto as Exhibit 4.1.1.

**7.2.6.** Bill of Sale substantially in the form attached hereto as Exhibit 7.2.5.

**7.3.** **Seller's Deliveries**. At the Closing, Sellers shall deliver to Purchasers the following, in proper form for recording where appropriate:

**7.3.1**. Executed assignments for the Permits and Contracts to be acquired by Purchaser pursuant to Article 1.

**7.3.2**. An officer's certificate, dated as of the Closing Date, executed on behalf of Sellers, certifying that the conditions specified in Section 6.2 have been fulfilled.

29

**7.3.3.** A certificate, dated as of the Closing Date, executed on behalf of each Seller by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of the resolutions of Seller's board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which such Seller is a party and the consummation of the transactions contemplated hereby and thereby.

**7.3.4.** Copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

**7.3.5**. Duly executed Bill of Sale transferring the Acquired Assets to Purchaser.

**7.3.6.** Appropriate receipts. When applicable, DSE or any other Seller shall deliver to Purchasers invoices covering all of the Assets that require the delivery of an invoice in accordance with Applicable Law, duly issued in favor of Purchasers. The invoices delivered to Purchasers by DSE shall comply with all the applicable requirements set forth in the Mexican Federal Fiscal Code (Código Fiscal de la Federación). DSE shall deliver to Purchasers true and correct copies of invoices for Acquired Assets that have been definitely imported by DSE, if applicable, each of which shall include the date and number of the custom document (pedimento de importación), the customs office where the goods were imported into Mexico, and the legend "first-hand sale of imported goods" (venta de primera mano de bienes importacion).

**7.3.7.** A public deed signed before a notary public by Centro Técnico Herramental, S.A. de C.V. ("CENTEC") in which CENTEC grants a temporary easement (servidumbre de paso) in terms of article 1642 of the Civil Code for the State of Coahuila on and through the land in which the CENTEC plant is built, giving FRMX access to the Premises. Such easement shall be in effect until the earliest to occur of (a) the date that FRMX builds its own access to the Land or (b) 36 months from the date of the Closing. The public deed will be in the form of Exhibit "7.3.7".

**7.3.8**. An assignment of water rights agreement in the form of Exhibit 7.3.8 duly executed by DSE before a notary public.

**7.3.9**. An assignment of rights agreement in the form of Exhibit 7.3.9 duly executed by DSE before a notary public under which DSE transfers all of its rights and obligations under the Discharge of Water Concession.

**7.4.** <u>**Purchaser's Deliveries**</u>. At the Closing, Purchaser shall deliver to Seller, in proper form for recording where appropriate:

**7.4.1**. The Purchase Price less the Deposit Amount as required by, and in accordance with, Section 4.1.

**7.4.2**. An Assignment and Assumption Agreement pursuant to which the Purchaser assumes the Assumed Liabilities.

**7.4.3**. An officer's certificate, dated as of the Closing Date, executed on behalf of each Purchaser, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.4**. A certificate, dated as of the Closing Date, executed on behalf of each Purchaser by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of the resolutions of the Purchaser's board authorizing the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby.

## 8.    **CERTAIN ADDITIONAL COVENANTS**:

### 8.1.    **Bankruptcy Actions**:

**8.1.1**. The Bidding Procedures are set forth in Section 11.1. As further specified below, Delphi shall file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking approval of the Bidding Procedures Order and the Sale Approval Order.

**8.1.2.** Delphi shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Bankruptcy Rules as modified by order, if any, of the Bankruptcy Court, in connection with obtaining approval of the sale of the Acquired Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Approval Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.1.3.**  Notwithstanding Purchasers' obligations with respect to the Assumed Contracts, if at any time prior to August 31, 2007, Purchasers request that Delphi move to assume and assign to Purchasers one or more prepetition executory contract or unexpired lease related to the Business other than the Assumed Contracts (the "Remaining Contracts"), Delphi will use its reasonable best efforts to assume and assign the Remaining Contracts to Purchasers under Section 365 of the Bankruptcy Code.  Purchasers shall provide, at or prior to the hearing on the motion to assume and assign the Remaining Contracts, adequate assurance of their future performance under each Remaining Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankrutpcy Code.

**8.2. Registrations, Filings and Consents; Further Actions.** Upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including, without limitation, using their reasonable best efforts to cause the satisfaction of all conditions to Closing.

**8.3. <u>Operation of the Business Pending Closing</u>**:

**8.3.1.** Except: (i) as otherwise provided herein; (ii) as required by or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iii) pursuant to any changes that may be required under applicable Laws; (iv) as set forth in the following sentence, until the Closing, Sellers will (a) carry on the Business in substantially the same manner as heretofore (except for the treatment of Products, which Delphi shall store at a location other than the Premises and shall sell to RBUS as set forth in Section 8.5.6 below); (b) will perform in all material respects all of their respective obligations under all Listed Contracts and not amend, alter or modify in any significant respect that is adverse to the Business any provision of any Listed Contract, unless pursuant to the preceding sentence 8.3.1(iv)(a), and Sellers agree to advise Purchasers of any such amendment, alteration or modification if it is foreseeable that the change will result in an adverse financial impact exceeding $10,000; (c) keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; (d) use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; (e) endeavor to maintain the goodwill of the Business; and (f) promptly advise Purchasers of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets. No Seller shall make a capital expenditure in relation to the Business in excess of $5000 without prior notification to RBUS.

**8.3.2.** Delphi shall promptly notify Purchasers if it becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2, 6.2.1 or 6.2.5 hereof not to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Seller to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.3.3.** RBUS shall promptly notify Sellers if  it becomes aware of the occurrence of any event or circumstance that could reasonably be expected to cause the conditions set forth in Sections 6.1.1, 6.1.2 or 6.3.1 hereof not to be satisfied including, without limitation, any event or circumstance that, upon the occurrence of such event or circumstance, causes any representation or warranty of the Purchasers to be untrue in any material (except for any representation or warranty qualified by materiality) respect at the time of the occurrence of such event or condition.

**8.4. <u>Assumed Contracts; Cure Amounts</u>**. As soon as practicable after the date hereof, Delphi shall, pursuant to a motion reasonable in form and substance (which motion may be incorporated into the Sale Approval Motion), move to assume and assign to Purchasers the Assumed Contracts and shall provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court. Delphi shall pay Cure Amounts as agreed to by it and each party to an Assumed Contract or, absent such agreement, by order of Court in the time and manner specified by the Sale Approval Order.

Notwithstanding anything in this Agreement to the contrary, at any time prior to the conclusion of the Sale Hearing, RBUS may notify Delphi that it has elected not to take an assignment of one or more Assumed Contracts and Delphi shall have no obligation to assume or make payment of the Cure Amount with respect to any such Assumed Contract. Delphi agrees to make such information available as RBUS reasonably requests in order to make a determination with respect to such Assumed Contracts.

**8.5.** **Post-Closing Covenants**. From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

**8.5.1. Seller Post-Closing Covenants**:

**A**.    **Intentionally omitted.**

**B**.    **Intentionally Omitted**

**C.**    **Electricity**.  Purchasers shall assist and cooperate with DSE on a best efforts basis to put into place alternative electricity metering for FRMX to receive electricity in conformance with applicable law prior to and after Closing, including, without limitation, by making any governmental applications for the submission of such electricity as may necessary or desirable, seeking confirmation by the CFE that the CFE will supply FRMX with sufficient electricity subsequent to Closing sufficient to carry on the Business at the Premises as is presently conducted by DSE, constructing (at Purchasers' expense) the necessary infrastructure to receive the electricity once approved by the CFE, and the like.

**8.5.2. Technical Documentation**. Delphi has delivered, or will deliver on or before the Closing, to the RBUS, a copy of all Intellectual Property to be used in connection with the Transferred Contracts included in the Acquired Assets. For a period of not less than one (1) year commencing at Closing, RBUS and its Affiliates shall use reasonable efforts to maintain all Technical Documentation applicable to product design, test, release, validation and manufacture, including quotations and it acquires from Sellers and their Affiliates in connection with the purchase of the Acquired Assets under Article 1 of this Agreement and its obligations under the Transferred Contracts, at a location at which they shall be reasonably accessible to Delphi and its Affiliates upon reasonable request and with reasonable advance notice. During such one (1) year period, RBUS shall not intentionally destroy or give up possession of its final copy of such documentation without offering Delphi the opportunity, at its expense but without any payment to RBUS, to obtain a copy of such documentation

**8.5.3. Books and Records and Litigation Assistance From and After Closing**:

**A.**    Purchasers and their respective Affiliates shall use reasonable efforts to preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchasers by Sellers and their respective Affiliates pursuant to the provisions of this Agreement for a period of not less than five (5) years from the Closing

Date, or for any longer period as may be required of the Business by any government agency, law, regulation, audit or appeal of Taxes, or Tax examination at Purchaser's sole cost and expense. If and when Delphi believes that such records are no longer legally required, it will notify RUBS. During such period, RBUS shall: (i) provide Delphi or its Affiliates with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of the Business as of December 31, 2007; and (ii) make such books and records available to Delphi and its Affiliates as may be reasonably required by Delphi or its Affiliates in connection with any legal proceedings against, or governmental investigations of, Delphi and its Affiliates, or in connection with any Tax examination, audit or appeal of Taxes of Sellers and their respective Affiliates, the Business or the Acquired Assets during such period. Sellers or their Affiliates shall reimburse Purchasers for the reasonable out-of-pocket expenses incurred in connection with any request by Dephi to make available records pursuant to the foregoing sentence. In the event a Purchaser wishes to destroy or dispose of such books and records after five (5) years from the Closing Date, it shall first give not less than thirty (30) days' prior written notice to Sellers or their Affiliates, and Sellers or their Affiliates shall have the right, at its option, upon prior written notice given to Purchaser within twenty (20) days of receipt of Purchaser's notice, to take possession of said records within thirty (30) days after the date of Purchaser's notice to Sellers hereunder.

       **B**.    RBUS, for itself and on behalf of its Affiliates, agrees to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations; (ii) make available documents and records delivered to it by Sellers reasonably necessary in connection with any pursuit, contest or defense related to the Business, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Purchaser must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchaser must notify Seller of the existence of such privileged documents); and (b) Seller and its Affiliates will agree to keep confidential and not use for any other purpose documents and records that are confidential or are subject to trade secret protection); (iii) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to significantly interfere with Purchaser's business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Seller and its Affiliates in connection with such claim.

      **8.5.4. Payment and Collections**. Any proceeds from the sales of Products by Delphi prior to the Closing shall be the property of Delphi even if payment therefor occurs after Closing, and any proceeds from the sale of Products by Sellers after Closing shall belong to Sellers. Sellers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchasers after Closing, and Purchasers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Sellers after Closing, in order to ensure that the cost of the related liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement. To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party,

Sellers or Purchasers, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments. Sellers shall promptly send Purchasers copies of all remittance advices and checks related to payments received by a Seller with respect to such items. Purchasers shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Sellers shall cooperate with Purchasers as is reasonably necessary to so notify such customers, including providing appropriate contact information for each such customer.

**8.5.5.    Visual Review of DFMEA Materials.**  Following the Closing and for 12 months thereafter, Sellers agree to provide Purchasers with access to DFMEA materials ("DFMEAs") relating to the Business for purposes of visual review and to make knowledgeable engineers available at Delphi's location for discussion regarding the DFMEAs.  Purchasers shall not have the right to copy the DFMEAs, where to copy means copy, scan, photograph, or in any way duplicate the DFMEAs, except that if a design change to the Product becomes necessary, RBUS shall send Delphi written notice of the same, specifying in reasonable detail the changes and reasons therefor, and Delphi will not unreasonably deny RBUS the opportunity to make a copy of the portion of the materials that is relevant for making such change.

**8.5.6.    Purchase of Products.**  Purchasers agree to purchase from Delphi all and not less than all the Products on hand at Closing, such purchases to be completed after Closing under the same purchase terms as existed prior to Closing, provided, however, that Purchasers shall not be obligated to buy Products for the GMT 900 Light Duty Brake Corner Program valued in excess of One Million Dollars ($1,000,000.00). Such purchases shall be carried out on a first-in-first-out basis, provided, however, that, subject to the limitation contained in the preceding sentence,  Purchasers will complete the purchase of all Products on hand at Closing on or before FRMX's output begins to include Products.

**8.5.7.    Removal of Non Business Materials.**  Prior to and continuing after the Closing, DSE shall use its best efforts to remove all assets unrelated to the Business and which are not part of this transaction from the Premises.  Removal of such assets shall be complete no later than October 31, 2007.  Sellers will consider any offer from Purchasers for the purchase of any such assets separately from this Agreement.

**8.6. Further Assurances**. If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement).

**8.7**.    **Intentionally omitted.**

**8.8.    Intentionally omitted.**

**8.9. <u>Communications with Customers and Suppliers</u>**. Prior to the Closing, neither Purchaser shall, nor shall either Purchaser cause its  Affiliates or  representatives  to, contact, engage in any discussions or otherwise communicate with any of the Sellers' Business customers, suppliers and others with whom it has material commercial dealings, regarding the Business, without obtaining the prior written consent of Delphi (which may be conditioned on Delphi's having the right to participate in any meetings or discussion with any such customers, suppliers or others but which may not otherwise be unreasonably withheld); provided, that RBUS and Delphi shall work together in good faith to arrange for an orderly transition of customer, supplier, and other third party relationships, including, without limitation, at the request of RBUS, meetings and other correspondence with such customers, suppliers, and other third parties to ensure such orderly transition.

**8.10. <u>Assignment of Water Rights and of the Discharge of Water Rights</u>**. The Parties hereby agree that the assignment of the water rights under the Water Concession and of the discharge of water rights under the Discharge of Water Concession shall be subject to notification of such assignment to the Public Registry of Water Rights pursuant to the Mexican Law of National Waters and, Sellers hereby agree to use  their best efforts to assist Purchasers with the filing of such notices before the Public Registry of Water Rights, at no cost to Sellers and subject to Purchasers' reimbursement of Sellers reasonable out-of-pocket costs.

**9.    TERMINATION:**

**9.1. <u>Termination</u>.** Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

**9.1.1. <u>By Either Party</u>:**

**A.**    By mutual written consent of Seller and Purchaser.

**B.**    Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any regulatory Governmental Entity, other than the Bankruptcy Court.

**C.**    If Seller consummates an Alternative Transaction.

**D.**    Provided the terminating Party is not in default of its obligations under this Agreement, by either Seller or Purchaser if the Closing shall not have occurred by September 28, 2007.

**E.**    If the Bankruptcy Court has not entered the Sale Approval Order, on or before August 27, 2007 (the "Termination Date") or such Sale Approval Order is subject to a stay or injunction; provided, however, that the right to terminate this Agreement

36

pursuant to this Section 9.1.1.E shall not be available to Purchaser if Purchaser shall have failed to perform, or caused any of its respective Affiliates to perform, any of its respective material obligations under this Agreement.

**9.1.2. By Purchaser**. By RBUS (provided that it or FRMX are not then in material breach of any representation, warranty, covenant or other agreement contained herein) at any time prior to Closing, if a Material Adverse Effect shall have occurred, so long as (A) RBUS provides Delphi written notice of termination in conformance with Section 9.2 below within ten (10) Business Days after receiving written notice of such event, and (B) and such Material Adverse Effect is continuing at the time of any such termination. Nothing in this Section 9.1.2 or elsewhere in this Agreement shall be construed as obligating RBUS to submit a Subsequent Bid.

In the event of such termination under Section 9.1.2, Purchaser's sole remedy shall be the prompt return of the Deposit Amount, and Seller shall have no other liability to Purchaser whatsoever, whether a Break-Up Fee, Expense Reimbursement or otherwise .

**9.1.3. By Seller.** If Delphi declares a Qualified Bid other than that of Purchaser the Successful Bid (as defined in Section 11.9.6), provided that such termination shall be of no effect if  Delphi  does not: (i) enter into an agreement with respect to such Qualified Bid within two (2) Business Days after such declaration; and (ii) subsequently consummates the Sale pursuant to an Alternative Transaction.

**9.2.    Notice of Termination**. In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

**9.3. Break-Up Fee; Expense Reimbursement:**

**9.3.1. Break-Up Fee**. In the event that: Delphi terminates the Agreement under Section 9.1.1.C or Section 9.1.3  and sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, all or substantially all of the Acquired Assets in a transaction or a series of related transactions with one or more parties other than RBUS (such event being an "Alternative Transaction"); Delphi shall, within two (2) Business Days after the consummation of an Alternative Transaction(s), pay to RBUS an amount equal to three percent (3.0%) of the Purchase Price (the "Break-Up Fee"). The claim of RBUS for a Break-up Fee shall be paid to RBUS from the sale proceeds of an Alternative Transaction and, until paid in full, shall constitute a superpriority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code. Notwithstanding the foregoing, RBUS shall not be entitled to a Break-Up Fee if either or both Purchasers are in material breach of this Agreement.

**9.3.2. <u>Expense Reimbursement</u>**.

In the event this Agreement is terminated pursuant to Sections 9.1.1.D or 9.1.1.E, and as a further condition to the above, provided that the Purchasers are not then in breach of this Agreement for which Sellers had previously notified either Purchaser, and, in the case of Section 9.1.1.D, the failure or occurrence of the event giving rise to any such termination results solely from the status of Seller or any action, inaction or conduct of Seller and not from the status of RBUS or any intentional action, inaction or conduct of RBUSthen Seller shall be obligated to pay RBUS an amount equal to RBUS's reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement (the "Expense Reimbursement") up to a maximum of $200,000. Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Delphi to RBUS promptly upon the delivery of an invoice related to such Expense Reimbursement to Seller by RBUS to be delivered to Delphi within ten (10) Business days of termination of this Agreement; provided, however, that if Delphi believes , in good faith, that the amount of the Expense Reimbursement sought by RBUS is not reasonable, then Delphi will have the right to seek Bankruptcy Court review thereof prior to paying such amount. The claim of RBUS for an Expense Reimbursement shall constitute a superpriority administrative expense under Section 364(c)(1) of the Bankruptcy Code.

**9.3.3.** Payments to RBUS pursuant to this Section 9.3 shall be by wire transfer of immediately available funds in U.S. Dollars, to such account or accounts as RBUS shall designate in writing.

**9.4. <u>Procedure and Effect of Termination</u>**. In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto. If this Agreement is terminated as provided herein no Party shall have any liability or further obligation to any other Party resulting from such termination except for the provisions of: (i)(a) Purchasers' obligations under that certain confidentiality agreement between the Parties dated October 18, 2006; (b) Article 9 (Termination); and (c) Sections 4.1.1 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.15 (Venue and Retention of Jurisdiction) and 13.18 (Dispute Resolution), all of which shall remain in full force and effect for two years following the date this Agreement is terminated; and (ii) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Purchaser is entitled to receive the Break-Up Fee or Expense Reimbursement, the right of a Purchaser to receive such amounts shall constitute such Purchaser's sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by a Seller of any of its

representations, warranties, covenants or agreements set forth in this Agreement, and provided, further, that in the event Delphi is entitled to receive the Deposit Amount, Delphi's right to receive such amount shall constitute its sole remedy for (and such amount shall constitute liquidated damages in respect of) any breach by a Purchaser of any of its representations, warranties, covenants or agreements set forth in this Agreement. In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

## 10. OTHER TAX MATTERS:

**10.1.** Sellers will be responsible for the preparation and filing of all Tax Returns for the Business for all periods for which Tax Returns are due prior to the Closing, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. Purchaser shall make available to Sellers (and to Sellers' accountants and attorneys) any and all books and records and other documents and information in its possession or control reasonably requested by Sellers to prepare these Tax Returns. Sellers will make all payments required with respect to any such Tax Return.

**10.2.** Purchasers will be responsible for the preparation and filing of all Tax Returns in connection with the conduct of its business after the Closing for all periods for which Tax Returns are due after the Closing (other than for Taxes with respect to periods for which the consolidated, unitary and Tax Returns of Sellers will include the operations of the Business). RBUS shall be responsible for and shall pay when due all Taxes attributable, levied or imposed upon or incurred in connection with the Acquired Assets and the transactions arising out of or in connection with the Transferred Contracts pertaining to any period ending after the Closing Date.

**10.3.** Sellers and Purchasers will cooperate in connection with: (i) the preparation of filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets. Such cooperation includes a reasonable amount of direct access to accounting, engineering and contracting personnel, subject to availability, which shall not be unreasonably restricted, and advance notice to RBUS's chief financial officer.

**10.4.** Sellers shall not, and shall not cause the Business to make, revoke or amend any tax election, execute any waiver of restrictions or tax assessments or collections or extensions if there will be any impact on Purchaser as a result of doing so.

## 11.    BIDDING PROCEDURES:

**11.1. Delphi Initial Bankruptcy Actions**. This Article 11 sets forth the bidding procedures (the "Bidding Procedures") to be employed with respect to the Agreement and the sale (the "Sale") of the Acquired Assets. The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order. The

following overbid provisions and related bid protections are designed to compensate the Purchaser for its efforts and agreements to date and to facilitate a full and fair process (the "Bidding Process") designed to maximize the value of the Acquired Assets for the benefit of Delphi and its Affiliates' creditors, shareholders and bankruptcy estate.

**11.2. Intentionally Omitted**.

**11.3. <u>Qualified Bidder</u>**. Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Delphi, in order to participate in the bidding process, each person (a "Potential Bidder"), other than the Purchaser, must deliver (unless previously delivered) to Delphi:

**11.3.1**. An executed confidentiality agreement in form and substance satisfactory to Delphi.

**11.3.2.** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Delphi and its financial advisors; and

**11.3.3**. A preliminary (non-binding) written proposal regarding: (i) the purchase price; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite financial assurance); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale, if selected as a successful bidder, and that Delphi determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement shall be deemed a **"Qualified Bidder"**. As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Delphi shall determine, and shall notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Business as provided in Section 11.5 below. Notwithstanding the foregoing, Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.

**11.4. Bid Deadline**. A Qualified Bidder (other than Purchaser) that desires to make a bid shall deliver written copies of its bid to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: John P. Carney; (ii) Delphi's restructuring counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Brian Fern; (iii) Delphi's financial advisor  FTI Consulting, Inc., Three Times Square, New York, New York 10036, Attention: Randall S. Eisenberg;  (iv) Delphi's Deputy General Counsel, Attention Sean Corcoran,at 5725 Delphi Drive, Troy, Michigan, 48098; (v) counsel to the Creditors' Committee, Latham & Watkins LLP, at 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (vi) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (vii) counsel for the agent under Delphi's post-petition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 A.M. (New York Time), on  a date to be determined by Delphi that is at least five (5) Business Days before the Sale Hearing (the "Bid Deadline"). As soon as reasonably practicable following receipt of each Qualified Bid, Delphi shall deliver to RBUS and its counsel complete copies of all items and information enumerated in Section 11.6 of this Agreement.

**11.5. Due Diligence**. Delphi shall afford each Qualified Bidder due diligence access to the Acquired Assets and the Business. Due diligence access may include management presentations as may be scheduled by Delphi, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Delphi, in its sole discretion, may agree to. Delphi shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence shall close after the Bid Deadline. Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither Delphi nor any of its Affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Acquired Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal and execute mutually agreeable confidentiality agreements.

**11.6. Bid Requirements**. All bids must include the following documents (the "Required Bid Documents"):

**11.6.1**. A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Acquired Assets.

**11.6.2**. An executed copy of the Agreement, together with all schedules a ("Marked Agreement") marked to show those amendments and modifications to such agreement and schedules that the Qualified Bidder proposes, including the Purchase Price.

**11.6.3**. A good faith deposit (the "Good Faith Deposit") in the form of a

certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as Delphi may determine) in an amount equal to US$500,000.

**11.6.4**. Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Delphi and its advisors.

**11.7. <u>Qualified Bids</u>**. A bid will be considered only if the bid:

**11.7.1**. Is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Delphi than, those contained in the Agreement.

**11.7.2**. Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**11.7.3**. Proposes a transaction that Delphi determines, in its sole discretion, has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $ 200,000; and (ii) $100,000 in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**11.7.4**. Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

**11.7.5**. An acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**11.7.6**. Includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within twenty (20) days after entry of such order.

**11.7.7**. Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that Delphi shall have the right, in its sole discretion, to entertain bids for the

Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that contained in this Agreement is referred to as a "Subsequent Bid".

If Delphi does not receive any Qualified Bids other than the Agreement received from the Purchaser, Delphi will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement and will report the same to the Bankruptcy Court.

     **11.8. <u>Bid Protection</u>**.   Recognizing Purchaser's expenditure of time, energy and resources, Delphi has agreed to provide certain bidding protections to the Purchaser. Specifically, Delphi has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor that all other Potential Bids must exceed.  As a result, Delphi has agreed that it will pay to RBUS  the Break-Up Fee or the Expense Reimbursement, as applicable, pursuant to, and subject to the terms of, Section 9.3 hereof.

     **11.9. <u>Auction, Bidding Increments and Bids Remaining Open</u>**. If Delphi receives at least one (1) Qualified Bid in addition to the Agreement, Delphi will conduct an auction (the "Auction") of the Acquired Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or before July 17, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, or 333 West Wacker Drive, Chicago, Illinois 60606 or such later time or other place as Delphi will notify (with RBUS's consent not to be unreasonably withheld) all Qualified Bidders who have submitted Qualified Bids, but in no event later than the second (2nd) Business Day prior to the Sale Hearing, in accordance with the following procedures:

     **11.9.1**. Only Delphi, RBUS, any representative of the Committee, any representative of Delphi's post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid shall be entitled to attend the Auction, and only RBUS and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

     **11.9.2.** At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one (1) Business Day prior to the Auction, Delphi shall provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction. Should an Auction take place, Purchaser shall have the right, but not the obligation, to participate in the Auction. Purchaser's election not to participate in an Auction shall in no way impair its entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

**11.9.3**. All bidders shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**11.9.4**. Delphi may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**11.9.5**. Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $100,000 higher than the previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), Delphi shall give  RBUS  a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement, as applicable, that may be payable to RBUS under this Agreement and shall give effect to any assets and/or equity interests to be retained by Delphi.

**11.9.6**. At the conclusion of the Auction, or as soon thereafter as practicable, Delphi, in consultation with its advisors, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)").

**11.10**. **Acceptance of Qualified Bids**. Delphi shall sell the Acquired Assets for the highest or otherwise best Qualified Bid upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "Sale Hearing"). If, after an Auction in which the Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.

**11.11**. **Sale Hearing**. The Sale Hearing will be held before the Honorable Robert Drain on July 19, 2007  at 10:00 a.m. (New York City time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing, provided,  however, that the Sale Hearing shall not be adjourned or rescheduled to a date later than August 31, 2007. If Delphi does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), Delphi will report the same to the

Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchaser following entry of the Sale Order. If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi shall seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)" and such bidder(s), the "Alternate Bidder(s)"). Delphi's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Delphi's acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing. Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bid(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Delphi shall effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

**11.12. <u>Return of Good Faith Deposit</u>**. Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Sale (the "Return Date"). Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of Delphi. On the Return Date, Delphi shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**11.13. <u>Reservation of Rights</u>**. Delphi, after consultation with the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than the Purchaser's bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale; or (c) contrary to the best interests of Delphi, its estate and creditors as determined by Delphi in its sole discretion.

**12.    INDEMNIFICATION:**

**12.1. <u>Seller's Agreement to Indemnify.</u>** If the Closing occurs and a Purchaser makes a written claim for indemnification against Seller in accordance with the procedures set forth in this Article 12 prior to the applicable Expiration Date, then Seller agrees to indemnify and hold harmless the Purchasers subject to the terms of this Article 12, from and after the Closing, from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' and consultants' fees and expenses) (collectively, the "Purchaser Damages") incurred by a Purchaser as a result of or arising out of: (i) those Retained Liabilities and those Excluded Assets that are retained at Closing by Sellers; (ii) a breach of

any representation or warranty in this Agreement; (iii) any failure to perform a covenant that this Agreement required be performed on or before Closing; or (iv) a breach of any agreement or covenant of Seller in this Agreement to be performed after Closing; and the sole source to satisfy any remedy with respect to any claim for indemnification shall be the Escrow Amount, and under no circumstances shall Sellers be responsible for indemnity in any amounts exceeding the Escrow Amount. Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date. As soon as possible after the applicable Expiration Date, the Escrow Amount, including all cash, interest accrued thereon and other property retained by the Escrow Agent, will be delivered to Sellers by the Escrow Agent, less an amount necessary to satisfy the amount of all then outstanding claims by Purchaser for Purchaser Damages in accordance with the terms of the Escrow Agreement.

**12.2. <u>Purchaser's Agreement to Indemnify</u>**. If the Closing occurs and a Seller makes a written claim for indemnification against a Purchaser in accordance with the procedures set forth in this Article 12, then, from and after the Closing, Purchaser shall indemnify and hold harmless Seller from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable attorneys' and consultants' fees and expenses) (collectively, the "Seller Damages") incurred by Seller as a result of or arising out of: (i) the Assumed Liabilities; (ii) a breach of any representation or warranty of Purchaser contained herein; (iii) any covenant to be performed on or before Closing; (iv) a breach of any agreement or covenant of Purchaser contained herein to be performed after Closing; or (v) the use, operation or ownership of the Business or any of the Acquired Assets after the Closing unless such matters are of a nature also subject to indemnification pursuant to Section 12.1. The maximum amount of Purchaser's obligations under clauses (i), (ii) and (iii) above shall be $1,000,000.00 . Notwithstanding the foregoing, any claim based on clause (iii) must be made within one hundred eighty (180) days after the Closing Date.

**12.3<u>. Limitations on Agreements to Indemnify</u>**. The obligations of either Party to indemnify the other pursuant to this Article 12 are subject to the following limitations:

**12.3.1**. Each Party agrees that, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by the other Party of any representation, warranty, agreement or covenant contained in this Agreement, and that there shall be no other remedy for any breach by a party in respect of any claim for monetary damages arising out of or under this Agreement;

**12.3.2**. In calculating amounts payable to an indemnified party, the amount of any indemnified Purchaser Damages or Seller Damages, as the case may be, shall be determined without duplication of any other damages for which a claim has been made or could be made under any other representation, warranty, covenant or agreement included herein;

**12.3.3**. Any written notice delivered by an indemnified party to an indemnifying party seeking indemnification pursuant to this Agreement shall set forth, with

46

as much specificity as is reasonably practicable, the basis of the claim, the sections of this Agreement which form the basis for the claim, and, to the extent reasonably practicable, a reasonable estimate of the amount of the Purchaser Damages or Seller Damages, as the case may be, that have been or may be sustained by such indemnified party; and

**12.3.4**. Notwithstanding any other provision of this Agreement, in no event shall an indemnified party be entitled to indemnification pursuant to this Agreement to the extent any Purchaser Damages or Seller Damages, as the case may be, were attributable solely to the indemnified party's acts or omissions.

**12.3.5**. No indemnifying party shall be liable to an indemnified party until the amount of all indemnifiable damages of such indemnified party in the aggregate exceeds USD $20,000.00, after which point the indemnifying party will be obligated to the indemnified party for all damages (and not just the amount in excess of such amount) up to but not to exceed the indemnity coverage ceilings established in this Section 12. To the extent an indemnifying party makes any indemnification payment pursuant this Article 12 for which the indemnified party has a right to recover against a third party (including an insurance company), the indemnifying party shall be subrogated to the right of the indemnified party to seek and obtain recovery from such third party.

**12.3.6**. Subject to the foregoing, Sellers shall not be obligated to provide indemnification with respect to an environmental condition and/or any representation or warranty related to an environmental condition under this Agreement, to the extent that :

**12.3.6.1**. the Premises are, after the Closing Date, put to use under a zoning or land use classification other than industrial use, or where FRMX or FRMX's successor in interest seeks to or changes the zoning or land use classification of the Premises to a classification more sensitive than the industrial classification; or

**12.3.6.2**. the Purchasers did not take reasonable steps to mitigate Seller Damages; or

**12.3.6.3** Where a Purchaser discloses information related to environmental conditions at the Premises to a Governmental Entity or third party based on such Purchaser's reasonable belief that such disclosure is required by applicable law, without, prior to such disclosure, obtaining the prior written consent of the Sellers, such consent of the Sellers not to be unreasonably withheld, except where the information is clearly in the public domain through no fault of the Purchaser.

**12.4. <u>Third Party Indemnification Procedures</u>**. The obligations of any indemnifying party to indemnify any indemnified party under Sections 12.1 or 12.2 with respect to Purchaser Damages or Seller Damages, as the case may be, resulting from the assertion of liability by third parties (including Governmental Entities) (an "Indemnification Claim"), shall be subject to the following terms and conditions:

**12.4.1**. Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of Section 12.3.3), and, to the extent such matter involves a third party claim, the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party. The indemnified party's failure to give prompt written notice of an Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 12, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice. The indemnified party, at the indemnifying party's expense, shall, and shall cause its employees and representatives to, reasonably cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within thirty (30) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party.

**12.4.2.** Anything in this Section 12.4 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne exclusively by the indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

**13. MISCELLANEOUS**:

**13.1. <u>Bulk Sales Laws</u>**. Sellers and Purchasers hereby waive compliance by Seller with the provisions of the bulk sales Law of any state or foreign jurisdiction.

**13.2. <u>Notices</u>**. All notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first business day after sent by reputable overnight carrier, or on the third business day after sent by registered or certified first class mail (with receipt confirmed), to the following: If to Seller:
DELPHI Automotive Systems LLC
5725 Delphi Drive
Troy, Michigan 48098
Attn: Assistant General Counsel - Commercial & Transactional
Fax No.: 248-813-2491

With a copy to:
AHG – Attn: John P. Carney
5725 Delphi Drive
Troy, Michigan 48098
Fax No.: 248-813-2410

If to Purchaser:
Robert Bosch LLC
38000 Hills Tech Drive
Farmington Hills, Michigan 48331
Attn.: Mr. Devesh Sharma
Fax No.: 248-876-6540

With a copy to:
Robert Bosch LLC
2800 South 25th Avenue
Broadview, Illinois 60155
Attn.:  General Counsel
Fax No.: 708-786-3673

provided, however, if either Party shall have designated a different addressee by notice, then to the last addressee so designated.

**13.3. Assignment**. This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties and their Affiliates, but no rights, obligations, duties or liabilities of either Party may be assigned without the prior written consent of the other, which shall not be unreasonably withheld.

**13.4. Entire Agreement**. This Agreement, together with the Ancillary Agreements, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein. This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5. Waiver.** Any waiver by Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement. At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein. Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall

49

be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6. <u>Severability</u>**. Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7. <u>Amendment</u>.** This Agreement may only be amended only in writing by duly authorized representatives or officers of the Parties.

**13.8. <u>Expenses</u>**. Except as otherwise expressly provided in Section 9.3 of this Agreement or an Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9. <u>Third Parties</u>**. Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10. <u>Headings</u>**. The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11. <u>Counterparts</u>**. More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.  A facsimile signature shall be deemed an original for purposes of this Agreement, provided, however, that they shall be promptly replaced by signature pages bearing original signatures.

**13.12. <u>Governing Law</u>**. This Agreement shall be construed and enforced in accordance with the laws of the State of  Michigan  and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13. <u>Public Announcements</u>**. Except for the public filings and notices contemplated in this Agreement, Sellers and Purchasers will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation.

**13.14. <u>Sales or Transfer Taxes</u>**. All sales taxes, documentary and stamp taxes, transfer taxes, use taxes, gross receipts taxes, excise taxes, value-added gross receipt taxes or

similar charges and all charges for filing and recording documents in connection with the transfer of the Acquired Assets (including intellectual property filing and recording fees) shall be paid by Purchaser.

**13.15.  <u>Venue and Retention of Jurisdiction</u>**. All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

**13.16.  <u>Risk of Loss</u>**. Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Sellers.

**13.17.  <u>Enforcement of Agreement</u>**. The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

**13.18.  <u>Dispute Resolution.</u>** Sellers and Purchasers will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Ancillary Agreement by good faith negotiations by senior management of each party. If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "Demanding Party") for formal dispute resolution (the "Notice") and specify therein in reasonable detail the nature of the dispute. Within fifteen (15) business days after receipt of the Notice, the receiving party (the "Defending Party") shall submit to the other a written response. The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties. Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored promptly. All negotiations pursuant to this Section 13.18 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.15 above.

**13.19.  <u>No Right of Setoff</u>**. Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

**13.20.** **Limitation on Damages**. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASERS OR SELLERS BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

**13.21**. **Bankruptcy Court Approval**.  Notwithstanding anything to the contrary herein, Delphi's obligations under Section 9.3 are expressly subject to entry of the Bidding Procedures Order.  All other obligations of the Sellers hereunder are expressly subject to entry of the Sale Approval Order.

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**THIS SPACE INTENTIONALLY LEFT BLANK**

**SELLERS**

**DELPHI  AUTOMOTIVE SYSTEMS LLC**

By:_____

_____
Name:
Title:

**DELPHI SISTEMAS DE ENERGIA, S.A. DE C.V.**

By:_____

_____
Name:
Title:

**DELPHI CONTROLADORA, S.A. DE C.V.**, APPEARING AS INDEMNITOR ONLY
FOR PURPOSES OF SECTION 5.1.15.H HEREOF AND NO OTHER PURPOSE

By:_____

_____
Name:
Title:

**Witnesses**

_____          _____

**PURCHASERS**

**ROBERT BOSCH LLC**

By:_____

_____
Name:
Title:


By:_____

_____
Name:
Title:




**FRENADOS MEXICANOS S.A. DE C.V.**

By:_____

_____
Name:
Title:


By:_____

_____
Name:
Title

**Witnesses**


_____          _____

**Exhibit E**

**Cure Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :

In re                       :    Chapter 11
                                       :

DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                       :

                 Debtor.    :    (Jointly Administered)
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND ASSIGNED
IN CONNECTION WITH SALE OF MEXICO BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

      1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the

"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive

Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with

DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement

("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V.

(together with Bosch, the "Purchasers") for the purchase of substantially all of the assets

primarily used in the brake and chassis modules product lines in the manufacturing plant

located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery,

equipment, inventories, medical and personnel records, water well rights, and all other assets

of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets").

DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the

prepetition executory contracts or unexpired leases (the "Assumed Contract") listed on

Exhibit 1 hereto to the Purchasers or the successful bidder at the auction, as the case may be.

       2.      On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, DAS LLC

will pay the amount DAS LLC's records reflect is owing for prepetition arrearages, if any, as

set forth on Exhibit 1 hereto (the "Cure Amount").  DAS LLC's records reflect that all

postpetition amounts owing under the Assumed Contracts have been paid and will continue

to be paid until the assumption and assignment of the Assumed Contracts and that, other than

the Cure Amount, there are no other defaults under the Assumed Contracts.

       3.      Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure asserted to be required, (c) include appropriate

documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Amended Eighth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case
Management, And Administrative Procedures, entered by this Court on October 26, 2006
(Docket No. 5418), (e) be filed with the Bankruptcy Court in accordance with General Order
M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file
electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in
Portable Document Format (PDF), WordPerfect, or any other Windows-based word
processing format), (f) be submitted in hard-copy form directly to the chambers of the
Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court
for the Southern District of New York, One Bowling Green, Room 610, New York, New
York 10004, and (g) be served in hard-copy form so that they are actually received within ten
days of service of this Notice upon (i) Delphi Automotive Systems LLC, 5725 Delphi Drive,
Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,
Michigan 48098 (Att'n: Deputy General Counsel, Transactions & Restructuring), (iii) counsel
to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite
2100, Chicago, Illinois 60606 (Att'n: John K. Lyons and Brian M. Fern), (iv) counsel for the
agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue,
New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the
official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New
York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for
the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson
LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii)
counsel for the Purchasers, Warner Norcross & Judd LLP, 900 Fifth Third Center, 111 Lyon
Street NW, Grand Rapids, Michigan 49503-2487 (Att'n: Gordon Toering), and (viii) the
Office of the United States Trustee for the Southern District of New York, 33 Whitehall
Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

4.      If an objection to the Cure Amount is timely filed and received, a

hearing with respect to the objection will be held before the Honorable Robert D. Drain,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of

New York, One Bowling Green, Room 610, New York, New York 10004, at such date and

time as the Court may schedule.  A hearing regarding the Cure Amount, if any, may be

continued at the sole discretion of the Sellers until after the Closing Date.

5.      If no objection is timely filed and received, the Cure Amount set forth

in Exhibit 1 hereto will be controlling, notwithstanding anything to the contrary in any

Assumed Contract or any other document, and the non-Debtor party to the Assumed Contract

will be deemed to have consented to the Cure Amount and will be forever barred from

asserting any other claims against DAS LLC, the Purchasers or the successful bidder at the

auction, as appropriate, or the property of either of them, as to such Assumed Contract.  The

failure of any objecting person or entity to timely file an objection will be a bar to the

assertion, at the sale hearing or thereafter, of any objection to the sale motion, the sale, or

DAS LLC's consummation and performance of the Agreement (including the transfer of the

assets and the Assumed Contracts free and clear of all claims or interests, as described in the

Motion), if authorized by the Court.

6.      Prior to the Closing Date, DAS LLC may amend its decision with

respect to the assumption and assignment of the Assumed Contracts and provide a new notice

amending the information provided in this Notice.

Dated:  New York, New York
        June **[●]**, 2007

                         SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                    By:_____
                         John Wm. Butler, Jr. (JB 4711)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                              - and -

                    By:_____
                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                       Debtors and Debtors-in-Possession

5

**<u>Exhibit F</u>**

**Purchasers Assumption/Assignment Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
In re                        :   Chapter 11
                               :
DELPHI CORPORATION, et al.,     :   Case No. 05-44481 (RDD)
                               :
                Debtor.   :   (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO PURCHASERS IN CONNECTION WITH
SALE OF DELPHI AUTOMOTIVE SYSTEMS LLC'S MEXICO
BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the

"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive

Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with

DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement

("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V.

(together with Bosch, the "Purchasers") for the purchase of substantially all of the assets

primarily used in the brake and chassis modules product lines in the manufacturing plant

located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery,

equipment, inventories, medical and personnel records, water well rights, and all other assets

of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets").

DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the

prepetition executory contracts or unexpired leases (the "Assumed Contracts") and the

postpetition contracts (the "Postpetition Contracts") listed on Exhibit 1 hereto to the

Purchasers or the successful bidder at the auction, as the case may be.

       2.      Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, DAS LLC will seek to assume and assign the Assumed Contracts and assign the

Postpetition Contracts listed on Exhibit 1 hereto at the hearing to be held at 10:00 a.m.

(prevailing eastern time) on July 19, 2007 (the "Sale Hearing") before the Honorable Robert

D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, Room 610, New York, New York 10004.

       3.      Objections, if any, to the assumption and assignment of an Assumed

Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c)

conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

Southern District of New York, and the Amended Eighth Supplemental Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418), (d)

be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted

in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so it is actually received within ten days after the date of this Notice upon (i) Delphi

Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii)

Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy General

Counsel, Transactions & Restructuring), (iii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:

John K. Lyons and Brian M. Fern),  (iv) counsel for the agent under the postpetition credit

facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017

(Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official committee of

unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vii) counsel for the official

committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One

New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (viii) counsel for the

Purchasers, Warner Norcross & Judd LLP, 900 Fifth Third Center, 111 Lyon Street NW,

Grand Rapids, Michigan 49503-2487 (Att'n: Gordon Toering), and (viii) the Office of the

3

United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

        4.      If an objection to the assumption and assignment of an Assumed Contract is timely filed and received, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no objection is timely received, the non-Debtor party to the Assumed Contract will be deemed to have consented to the assumption and assignment of the Assumed Contract and will be forever barred from asserting any other claims, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Assumed Contract, against DAS LLC or the Purchasers, or the property of either of them, as to such Assumed Contract.

        5.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the cure amount set forth in the separately filed and served cure notice will be paid in accordance with the terms of the order approving the sale under the terms of the Agreement.  Further, there is adequate assurance of the Purchasers' future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Purchasers.

6.      Prior to the closing date of the sale, DAS LLC may amend its decision

with respect to the assumption and/or assignment of any Assumed Contract or Postpetition

Contract and provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
          _____, 2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

                    By:  _____
                          John Wm. Butler, Jr. (JB 4711)
                          John K. Lyons (JL 4951)
                          Ron E. Meisler (RM 3026)
                          333 West Wacker Drive, Suite 2100
                          Chicago, Illinois  60606
                          (312) 407-0700

                                - and -

                    By:  _____
                          Kayalyn A. Marafioti (KM 9632)
                          Thomas J. Matz (TM 5986)
                          Four Times Square
                          New York, New York 10036
                          (212) 735-3000

                          Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession

**<u>Exhibit G</u>**

**Qualified Bidder Assumption/Assignment Notice**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
     In re                                      :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                    Debtor.             :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS IN CONNECTION
WITH SALE OF DELPHI AUTOMOTIVE SYSTEMS LLC'S
MEXICO BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June [__], 2007, Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement ("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V. (together with Bosch, the "Purchasers") for the purchase of substantially all of the assets primarily used in the brake and chassis modules product lines in the manufacturing plant located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery, equipment, inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets"). DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the prepetition executory contracts or unexpired leases (the "Assumed Contracts") and assign the postpetition contracts (the "Postpetition Contracts") listed on Exhibit 1 hereto to the Purchasers or the successful bidder at the auction, as the case may be.

      2.      Pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, the following parties have submitted Qualified Bids for the Assets and will participate in an Auction to be held July 17, 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as DAS LLC may notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing):

| Qualified Bidders |
|---|
|  |
|  |

3.      Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Sellers may enter into with the Successful Bidder), DAS LLC will seek to

assume and assign the Assumed Contracts and assign the Postpetition Contracts listed on

Exhibit 1 hereto at the hearing to be held at 10:00 a.m. (prevailing Eastern time) on July 19,

2007 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy

Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, Room 610, New York, New York 10004.

4.      Objections, if any, to the assumption and assignment of an Assumed

Contract to a Qualified Bidder, who may ultimately become the Successful Bidder, must (a)

be in writing, (b) state with specificity the reasons for such objection, (c) conform to the

Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District

of New York, and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And

105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates And Certain Notice, Case Management, And Administrative Procedures, entered by

this Court on October 26, 2006 (Docket No. 5418), (d) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy

Court's case filing system must file electronically, and all other parties-in-interest must file on

a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format), (e) be submitted in hard-copy form directly to the

chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, and (f) be served in hard-copy form so they are actually

received within ten days after the date of this Notice upon (i) Delphi Automotive Systems

LLC, 5725 Delphi Drive, Troy, Michigen 48098 (Attn: Legal Staff), (ii) Delphi, 5725 Delphi

Drive, Troy, Michigan 48098 (Att'n: Deputy General Counsel, Transactions &

3

Restructuring), (iii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons and Brian M. Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii) counsel for the Purchasers, Warner Norcross & Judd LLP, 900 Fifth Third Center, 111 Lyon Street NW, Grand Rapids, Michigan 49503-2487 (Att'n: Gordon Toering), and (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard).

5.    If an objection to the assumption and assignment of an Assumed Contract is timely filed and received, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no objection is timely filed and received, the non-Debtor party to the Assumed Contract will be deemed to have consented to the assumption and assignment of the Assumed Contract and will be forever barred from asserting any other claims, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Assumed Contract, against DAS LLC or the Purchasers or the Qualified Bidder (as appropriate), or the property of either of them, as to such Assumed Contract.

4

6.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future

performance that the cure amount set forth in the separately filed and served cure notice will

be paid in accordance with the terms of the Sale Approval Order.  Further, there is adequate

assurance of the Qualified Bidder's future performance under the executory contract or

unexpired lease to be assumed and assigned because of the significant resources of the

Qualified Bidder.

7.      Prior to the Closing Date, DAS LLC may amend its decision with

respect to the assumption and/or assignment of any Assumed Contract or Postpetition

Contract and provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
        [_____], 2007

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By: _____
                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 4951)
                            Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois  60606
                        (312) 407-0700

                                - and -

                        By:_____
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

5

**<u>Exhibit H</u>**

**Publication Notice**

Delphi Legal Information Hotline:                    Delphi Legal Information Website:
Toll Free:  (800) 718-5305                           http://www.delphidocket.com
International:   (248) 813-2698

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
      In re                                 :      Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :      Case No. 05-44481 (RDD)
                                            :
                         Debtor.            :      (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE OF THE FOLLOWING:

       1.     Pursuant to the **Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing In Connection With Sale of Mexico Brake Plant Assets (the "Bidding Procedures Order")** entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the "Sellers") are offering for sale substantially all of the assets used primarily in the manufacturing plant located in Saltillo, Mexico.

       2.     All interested parties are invited to make an offer to purchase the Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures") by July 10, 2007.  Pursuant to the Bidding Procedures, DAS LLC may conduct an auction for the Assets (the "Auction") beginning at 10:00 a.m. (prevailing Eastern Time) on July 17, 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York or 333 West Wacker Drive, Chicago, Illinois 60606.

       3.     Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting the undersigned counsel to the Sellers or by accessing Delphi's Legal Information Website, www.delphidocket.com.

       4.     A hearing to approve the sale of the assets to the highest and best bidder will be held on July 19, 2007 at 10:00 a.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, before the Honorable Robert D. Drain, United States Bankruptcy Judge.

       5.     Objections, if any, to the proposed sale must be filed and served in accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 p.m. (prevailing Eastern time)** on **July 12, 2007.**

6.      This notice is qualified in its entirety by the Bidding Procedures Order.

Dated:  June [●], 2007

BY ORDER OF THE COURT

John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
         In re                                :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND
9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND
MANNER OF SALE NOTICES, AND
(IV) SETTING SALE HEARING IN CONNECTION
WITH SALE OF MEXICO BRAKE PLANT ASSETS

("MEXICO BRAKE PLANT ASSET BIDDING PROCEDURES ORDER")

Upon the motion, dated June 15, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for orders

pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014

(i) approving the bidding procedures set forth herein and attached hereto as Exhibit 1 (the

"Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and

manner of sale notices, and (iv) setting a sale hearing (the "Sale Hearing") in connection

with the sale (the "Sale") of certain assets of Delphi Automotive Systems LLC ("DAS

LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the

"Sellers") comprising substantially all of the assets used in the brake and chassis modules

product lines in a manufacturing plant located in Saltillo, Mexico (the "Mexico Brake

Plant Business"), including the machinery, equipment, inventories, personnel and medical

records, water well rights, and all other assets of DAS LLC to be sold to the Purchasers

(as defined below) pursuant to the Agreement (the "Acquired Assets") related to the

Mexico Brake Plant Business for $15.0 million and other consideration, free and clear of

liens, claims, and encumbrances related to assets being sold by DAS LLC, to Robert

Bosch LLC and Frenados Mexicanos S.A. de C.V. (together with Bosch, the

"Purchasers") pursuant to the Asset Sale And Purchase Agreement, dated June 14, 2007,

by and among the Sellers and the Purchasers (the "Agreement")[1] or to the Successful

Bidder (as hereinafter defined) submitting a higher or otherwise better bid.  The Sale

would include the assumption and assignment of certain prepetition executory contracts

and unexpired leases (the "Assumed Contracts") and the assignment of certain

postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and

together with the Assumed Contracts, the "Transferred Contracts") to the Purchasers or

the Successful Bidder, and the assumption of certain liabilities (the "Assumed Liabilities")

by the Purchasers or the Successful Bidder; and upon the record of the Hearing on the

Motion; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

     A.     The Court has jurisdiction over this matter and over the property of

the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and

1334.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

2

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest.

D.      The notice given by DAS LLC of the Motion and the Hearing constitutes due and sufficient notice thereof.

E.      DAS LLC has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Assumed Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to creditors and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption of the Assumed Contracts to be filed with the Court and served on parties to each Assumed Contract, and (vi) set the Sale Hearing.

F.      DAS LLC's payment to the Purchasers (as set forth in the Agreement) of the Break-Up Fee and the Expense Reimbursement (collectively, the "Bid Protections") (i) is an actual and necessary cost and expense of preserving its estate, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) is of substantial benefit to its estate, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchasers notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary to ensure that the Purchasers will continue to pursue their proposed

3

acquisition of the Acquired Assets.  The Bid Protections were a material inducement for, and condition of, the Purchasers' entry into the Agreement.  The Purchasers are unwilling to commit to hold open their offer to purchase the Acquired Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to the Purchasers of payment of the Bid Protections has promoted more competitive bidding by inducing the Purchasers to hold their bid open. Without the Bid Protections, other bidding would have been limited.  Further, because the Bid Protections induced the Purchasers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchasers have provided a benefit to DAS LLC's estate by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth.  Finally, absent authorization of the Bid Protections, DAS LLC may lose the opportunity to obtain the highest or otherwise best available offer for the Acquired Assets.

G.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.    The Bidding Procedures, as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth in this Order, are hereby approved and shall govern all proceedings relating to the Agreement and any subsequent bids for the Acquired Assets in these cases.

2.    The Sellers may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of

4

any official committee or significant constituent in connection with the Bidding

Procedures, and (c) reject, at any time before entry of an order of the Court approving a

Qualified Bid, any bid (other than the Purchasers' bid) which, in the Sellers' sole

discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of

the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii)

contrary to the best interests of DAS LLC, its estate, and its stakeholders.  DAS LLC is

authorized (x) to terminate the Bidding Process or the Auction at any time if it

determines, in its business judgment, that the Bidding Process will not maximize the

value of the Acquired Assets to be realized by DAS LLC's estate and (y) seek Bankruptcy

Court approval of the Agreement with Purchasers.

<u>Sale Hearing</u>

3.       The Court shall hold a Sale Hearing on July 19, 2007 at 10:00 a.m.

(prevailing Eastern time) in the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, Room 610, New York, New York 10004, at which

time the Court shall consider the Motion, the Successful Bidder, and confirm the results

of the Auction, if any.  Objections to the Motion, if any, shall be filed and served no later

than 4:00 p.m. (prevailing Eastern time) on July 12, 2007 (the "Objection Deadline").

4.       The failure of any objecting person or entity to timely file its

objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or

thereafter, of any objection to the Motion, the Sale, or DAS LLC's consummation and

performance of the Agreement (including the transfer of the Acquired Assets and

Transferred Contracts free and clear of liens, claims, and encumbrances), if authorized by

the Court.

5

5.      The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

## Bid Protections

6.      The Bid Protections, as more fully described in the Motion and the Agreement, are hereby approved.  DAS LLC's obligation to pay the Bid Protections, as provided by the Agreement, shall survive termination of the Agreement and, until paid, shall constitute a superpriority administrative expense claim.  DAS LLC shall be authorized to pay the Bid Protections to the Purchasers in accordance with the terms of the Agreement without further order of the Court.

## Notice

7.      Notice of (a) the Motion, (b) the Sale Hearing, and (c) the proposed assumption and assignment of the Assumed Contracts to the Purchasers pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

(a)      Notice Of Sale Hearing.  On or before June 29, 2007 (the "Mailing Date"), DAS LLC (or its agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Acquired Assets, (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (iv) all parties to the Assumed Contracts, (v) all parties to the Postpetition Contracts, (vi) the United States Attorney's office, (vii) the Securities and Exchange Commission, (viii) the Internal Revenue Service, (ix) all entities which filed a notice of appearance or request for notice in these cases, and (x) counsel to the official

6

committee of unsecured creditors and the official committee of equity security holders appointed in these cases.

(b)     <u>Cure Notice</u>.  On or before July 6, 2007 DAS LLC shall file with the Court and serve on all non-Debtor parties to the Assumed Contracts a notice (the "Cure Notice"), substantially in the form attached hereto as <u>Exhibit 2</u>, of the cure amount necessary to assume the Assumed Contracts (the "Cure Amount").  Each non-Debtor party to the Assumed Contracts shall have ten days from the service of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract or any other document, and the non-Debtor party to a Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims against DAS LLC, the Purchasers, or the Successful Bidder (as appropriate), or the property of any of them, as to such Assumed Contract.

(c)     <u>Assumption/Assignment Notice For Purchasers</u>.  On or before July 6, 2007, DAS LLC shall file with the Court and serve on all non-Debtor parties to the Transferred Contracts a notice (the "Purchasers Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, identifying the Purchasers as the parties which will be assigned all of the Debtors' rights, title, and interest in the Transferred Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  The non-Debtor party to the Assumed Contracts shall have ten days from the service of the Purchasers Assumption/Assignment Notice to object to the proposed assumption and assignment to the Purchasers and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)     <u>Assumption/Assignment Notice For Qualified Bidders</u>.  On or before July 11, 2007, DAS LLC shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 4</u>, to be sent to each non-Debtor party to a Transferred Contract identifying all Qualified Bidders.  The non-Debtor party to the Assumed Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e)     <u>Publication Notice</u>.  On or before the Mailing Date, or as soon thereafter as is practicable, the Debtors shall cause notice substantially in the form of the

7

notice attached hereto as <u>Exhibit 5</u>, to be published in the national editions of the <u>Wall Street Journal</u> (International Edition), the <u>New York Times,</u> and <u>El Norte</u>.

        8.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

        9.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
         June __, 2007

                         _____
                         UNITED STATES BANKRUPTCY JUDGE

Exhibit 1

**DELPHI AUTOMOTIVE SYSTEMS LLC AND DELPHI SISTEMAS DE ENERGIA, S.A.
DE C.V. MEXICO BRAKE PLANT ASSETS
BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets used primarily in the manufacturing plant located in Saltillo, Mexico (the "Mexico Brake Plant Business") of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. ("Delphi Mexico," and collectively with the DAS LLC, the "Sellers").  On June 14, 2007, the Sellers executed that certain Asset Sale And Purchase Agreement (the "Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V. (together with Bosch, the "Purchasers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On June 15, 2007, DAS LLC and certain of its affiliates (collectively, the "Debtors") filed a Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving (i) Sale Of DAS LLC's Mexico Brake Plant Assets Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (the "Sale Approval Motion").  On June __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") approving the Bidding Procedures.  The Bidding Procedures Order set July 19, 2007 as the date when the Bankruptcy Court willconduct a hearing (the "Sale Hearing") to authorize DAS LLC to enter into and perform under the Agreement.  All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").  DAS LLC intends to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process.  In the event that DAS LLC and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

1

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Mexico Brake Plant Business, including the including the machinery, equipment, inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to be sold (the "Acquired Assets").

## Free Of Any And All Claims And Interests

Except to the extent otherwise set forth in the Agreement or the relevant purchase agreement of a Successful Bidder, as applicable, all of DAS LLC's right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all liens, losses, liabilities, claims (as defined in section 101 of the Bankruptcy Code), damages, or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise, liens, charges, claims, pledges, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, options or other encumbrances (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or similar statutes as applicable under Mexican law) (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Purchasers, must deliver (unless previously delivered) to DAS LLC and its counsel at the addresses provided below:

(a) An executed confidentiality agreement in form and substance acceptable to DAS LLC;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to DAS LLC and its financial advisors; and

(c) A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite financial assurances), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

2

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement will be deemed a "Qualified Bidder." As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to commence due diligence with respect to the Acquired Assets and the Mexico Brake Plant Business as provided below. Notwithstanding the foregoing, the Purchasers will be deemed Qualified Bidders for purposes of the Bidding Process.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Acquired Assets and the Mexico Brake Plant Business. Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on-site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence may not continue after the Bid Deadline. The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Mexico Brake Plant Business to any person other than to Qualified Bidders who make an acceptable preliminary proposal and execute mutually agreeable confidentiality agreements.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and the Mexico Brake Plant Business prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets and the Mexico Brake Plant Business in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, the Mexico Brake Plant Business, or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except as expressly stated in the definitive agreement with the Successful Bidder approved by the Bankruptcy Court.

## Bid Deadline

A Qualified Bidder, other than the Purchasers, who desires to make a bid will deliver written copies of its bid to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy,

Michigan, 48098, Attention: John P. Carney; (ii) Delphi's restructuring counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Brian M. Fern; (iii) Delphi's financial advisor, FTI Consulting, Inc., Three Times Square, New York, New York 10036, Attention: Randall S. Eisenberg; (iv) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098 Attention: Assistant General Counsel – Transactional & Restructuring; (v) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (vi) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (vii) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on July 10, 2007 (the "Bid Deadline"). As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to the Purchasers and their counsel.

### Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a) A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Acquired Assets.

(b) An executed copy of the Agreement, together with all schedules (a "Marked Agreement") marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the purchase price.

(c) A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of the DAS LLC (or such other party as the Sellers may determine) in an amount equal to $500,000.

(d) Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transactions that is satisfactory to the Sellers and their advisors.

### Qualified Bids

A bid will be considered only if the bid:

(a) is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement;

(b) is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder;

(c) proposes a transaction that the Sellers determine, in their sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $200,000, and (ii) in the case of any subsequent Qualified Bids, $100,000 more than the immediately-preceding highest Qualified Bid;

(d) is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

(e) an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Agreement or the Marked Agreement;

(f) includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) within not more than 15 days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within 20 days after entry of such order; and

(g) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Purchasers will be deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Purchasers is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Purchasers, DAS LLC will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## Bid Protection

Recognizing the Purchasers' expenditure of time, energy, and resources, DAS LLC has agreed to provide certain bidding protections to the Purchasers.  Specifically, DAS LLC has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other potential bids must exceed.  As a result, DAS LLC has agreed that if the Sellers terminate the Agreement (i) to close on an alternative transaction or (ii) to declare a Qualified

5

Bid other than that of the Purchaser the Successful Bid (as defined below) and sell the Acquired Assets to a Successful Bidder other than the Purchasers, DAS LLC will, in certain circumstances, pay to the Purchasers a Break-Up Fee. In the event the Agreement is terminated pursuant to certain other provisions thereof, then DAS LLC will, in certain circumstances, be obligated to pay the Purchasers' Expense Reimbursement. The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement and the Bidding Procedures Order.

## **Auction**

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Acquired Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before July 17, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as the Sellers will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(a) Only the Sellers, the Purchasers, any representative of the Creditors' Committee, any representative of the Debtors' post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Purchasers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) By the close of business on July 13, 2007, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction, and by the close of business on July 16, 2007, the Sellers will provide all Qualified Bidders who have informed the Sellers of their intent to participate in the Auction with copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe comprise the highest or otherwise best offer. Should an Auction take place, the Purchasers will have the right, but not the obligation, to participate in the Auction. The Purchasers' election not to participate in an Auction will in no way impair their entitlement to receive the Break-Up Fee or Expense Reimbursement, as applicable.

(c) All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d) The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $100,000

6

higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchasers), the Sellers will give the Purchasers a credit in an amount equal to the greater of any Break-Up Fee or Expense Reimbursement, as applicable, that may be payable to the Purchasers under the Agreement and will give effect to any assets and/or equity interests to be retained by the Sellers.

## Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their advisors, will:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets received at the Auction (the "Successful Bid" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  If, after an Auction in which the Purchasers:  (i) will have bid an amount in excess of the consideration currently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) are the Successful Bidders, they must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee.

DAS LLC's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid.  The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing is currently scheduled to take place before the Honorable Robert D. Drain, United States Bankruptcy Judge, on July 19, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.  The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing; provided, however, that the Sale Hearing may not be adjourned or rescheduled to a date later than August 31, 2007.

If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Purchasers), DAS LLC will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchasers following entry of the Sale Order. If the Sellers do receive additional Qualified Bids, then at the Sale Hearing DAS LLC will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the

"Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  DAS LLC's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Sellers will effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Sellers.  On the Return Date, Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Sellers, after consultation with the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchasers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of DAS LLC, its estates, and its stakeholders as determined by DAS LLC in its sole discretion.

Exhibit 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :
    In re                 :    Chapter 11
                  :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                  :
           Debtor.    :    (Jointly Administered)
                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND ASSIGNED
IN CONNECTION WITH SALE OF MEXICO BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

        1.        Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the

"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern

District of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive

Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with

DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement

("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V.

(together with Bosch, the "Purchasers") for the purchase of substantially all of the assets

primarily used in the brake and chassis modules product lines in the manufacturing plant

located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery,

equipment, inventories, medical and personnel records, water well rights, and all other assets

of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets").

DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the

prepetition executory contracts or unexpired leases (the "Assumed Contract") listed on

Exhibit 1 hereto to the Purchasers or the successful bidder at the auction, as the case may be.

        2.      On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, DAS LLC

will pay the amount DAS LLC's records reflect is owing for prepetition arrearages, if any, as

set forth on Exhibit 1 hereto (the "Cure Amount").  DAS LLC's records reflect that all

postpetition amounts owing under the Assumed Contracts have been paid and will continue

to be paid until the assumption and assignment of the Assumed Contracts and that, other than

the Cure Amount, there are no other defaults under the Assumed Contracts.

        3.      Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure asserted to be required, (c) include appropriate

documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Amended Eighth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered by this Court on October 26, 2006

(Docket No. 5418), (e) be filed with the Bankruptcy Court in accordance with General Order

M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (f) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (g) be served in hard-copy form so that they are actually received within ten

days of service of this Notice upon (i) Delphi Automotive Systems LLC, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: Deputy General Counsel, Transactions & Restructuring), (iii) counsel

to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite

2100, Chicago, Illinois 60606 (Att'n: John K. Lyons and Brian M. Fern), (iv) counsel for the

agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue,

New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the

official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New

York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for

the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson

LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii)

counsel for the Purchasers, Warner Norcross & Judd LLP, 900 Fifth Third Center, 111 Lyon

Street NW, Grand Rapids, Michigan 49503-2487 (Att'n: Gordon Toering), and (viii) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

4.      If an objection to the Cure Amount is timely filed and received, a

hearing with respect to the objection will be held before the Honorable Robert D. Drain,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of

New York, One Bowling Green, Room 610, New York, New York 10004, at such date and

time as the Court may schedule.  A hearing regarding the Cure Amount, if any, may be

continued at the sole discretion of the Sellers until after the Closing Date.

5.      If no objection is timely filed and received, the Cure Amount set forth

in Exhibit 1 hereto will be controlling, notwithstanding anything to the contrary in any

Assumed Contract or any other document, and the non-Debtor party to the Assumed Contract

will be deemed to have consented to the Cure Amount and will be forever barred from

asserting any other claims against DAS LLC, the Purchasers or the successful bidder at the

auction, as appropriate, or the property of either of them, as to such Assumed Contract.  The

failure of any objecting person or entity to timely file an objection will be a bar to the

assertion, at the sale hearing or thereafter, of any objection to the sale motion, the sale, or

DAS LLC's consummation and performance of the Agreement (including the transfer of the

assets and the Assumed Contracts free and clear of all claims or interests, as described in the

Motion), if authorized by the Court.

6.      Prior to the Closing Date, DAS LLC may amend its decision with

respect to the assumption and assignment of the Assumed Contracts and provide a new notice

amending the information provided in this Notice.

Dated:  New York, New York
        June **[●]**, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:_____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

              - and -

By:_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

5

Exhibit 3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
    In re                                             :    Chapter 11
                                                      :
DELPHI CORPORATION, et al.,                           :    Case No. 05-44481 (RDD)
                                                      :
                        Debtor.                       :    (Jointly Administered)
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO PURCHASERS IN CONNECTION WITH
SALE OF DELPHI AUTOMOTIVE SYSTEMS LLC'S MEXICO
BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

        1.        Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement ("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V. (together with Bosch, the "Purchasers") for the purchase of substantially all of the assets primarily used in the brake and chassis modules product lines in the manufacturing plant located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery, equipment, inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets"). DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the prepetition executory contracts or unexpired leases (the "Assumed Contracts") and the postpetition contracts (the "Postpetition Contracts") listed on Exhibit 1 hereto to the Purchasers or the successful bidder at the auction, as the case may be.

2.     Pursuant to the terms of the Agreement and subject to completion of a competitive bidding process described in the Bidding Procedures Order and the attachments thereto, DAS LLC will seek to assume and assign the Assumed Contracts and assign the Postpetition Contracts listed on Exhibit 1 hereto at the hearing to be held at 10:00 a.m. (prevailing eastern time) on July 19, 2007 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

3.     Objections, if any, to the assumption and assignment of an Assumed Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

2

Southern District of New York, and the Amended Eighth Supplemental Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on October 26, 2006 (Docket No. 5418), (d)

be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted

in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so it is actually received within ten days after the date of this Notice upon (i) Delphi

Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii)

Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy General

Counsel, Transactions & Restructuring), (iii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:

John K. Lyons and Brian M. Fern),  (iv) counsel for the agent under the postpetition credit

facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017

(Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official committee of

unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vii) counsel for the official

committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One

New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (viii) counsel for the

Purchasers, Warner Norcross & Judd LLP, 900 Fifth Third Center, 111 Lyon Street NW,

Grand Rapids, Michigan 49503-2487 (Att'n: Gordon Toering), and (viii) the Office of the

3

United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

        4.      If an objection to the assumption and assignment of an Assumed Contract is timely filed and received, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no objection is timely received, the non-Debtor party to the Assumed Contract will be deemed to have consented to the assumption and assignment of the Assumed Contract and will be forever barred from asserting any other claims, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Assumed Contract, against DAS LLC or the Purchasers, or the property of either of them, as to such Assumed Contract.

        5.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the cure amount set forth in the separately filed and served cure notice will be paid in accordance with the terms of the order approving the sale under the terms of the Agreement.  Further, there is adequate assurance of the Purchasers' future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Purchasers.

6.      Prior to the closing date of the sale, DAS LLC may amend its decision

with respect to the assumption and/or assignment of any Assumed Contract or Postpetition

Contract and provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
           _____, 2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

                    By:  _____
                           John Wm. Butler, Jr. (JB 4711)
                           John K. Lyons (JL 4951)
                           Ron E. Meisler (RM 3026)
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                              - and -

                    By:  _____
                           Kayalyn A. Marafioti (KM 9632)
                           Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York 10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession

Exhibit 4

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :
    In re                      :    Chapter 11
                               :
DELPHI CORPORATION, et al.,   :    Case No. 05-44481 (RDD)
                               :
                Debtor.    :    (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS IN CONNECTION
WITH SALE OF DELPHI AUTOMOTIVE SYSTEMS LLC'S
MEXICO BRAKE PLANT ASSETS

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii)

Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June [__], 2007, Delphi Automotive Systems LLC ("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC, the "Sellers") have entered into an Asset Sale And Purchase Agreement ("Agreement") with Robert Bosch LLC ("Bosch") and Frenados Mexicanos S.A. de C.V. (together with Bosch, the "Purchasers") for the purchase of substantially all of the assets primarily used in the brake and chassis modules product lines in the manufacturing plant located in Saltillo, Mexico (the "Mexico Brake Plant Business"), including the machinery, equipment, inventories, medical and personnel records, water well rights, and all other assets of DAS LLC to be sold to the Purchasers pursuant to the Agreement (the "Acquired Assets"). DAS LLC hereby provides notice (the "Notice") of its intent to assume and assign the prepetition executory contracts or unexpired leases (the "Assumed Contracts") and assign the postpetition contracts (the "Postpetition Contracts") listed on Exhibit 1 hereto to the Purchasers or the successful bidder at the auction, as the case may be.

       2.       Pursuant to the Bidding Procedures set forth in the Bidding Procedures Order, the following parties have submitted Qualified Bids for the Assets and will participate in an Auction to be held July 17, 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other place as DAS LLC may notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing):

| Qualified Bidders |
|---|
|  |
|  |

3.       Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Sellers may enter into with the Successful Bidder), DAS LLC will seek to

assume and assign the Assumed Contracts and assign the Postpetition Contracts listed on

Exhibit 1 hereto at the hearing to be held at 10:00 a.m. (prevailing Eastern time) on July 19,

2007 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy

Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, Room 610, New York, New York 10004.

4.       Objections, if any, to the assumption and assignment of an Assumed

Contract to a Qualified Bidder, who may ultimately become the Successful Bidder, must (a)

be in writing, (b) state with specificity the reasons for such objection, (c) conform to the

Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District

of New York, and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And

105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates And Certain Notice, Case Management, And Administrative Procedures, entered by

this Court on October 26, 2006 (Docket No. 5418), (d) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy

Court's case filing system must file electronically, and all other parties-in-interest must file on

a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format), (e) be submitted in hard-copy form directly to the

chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, and (f) be served in hard-copy form so they are actually

received within ten days after the date of this Notice upon (i) Delphi Automotive Systems

LLC, 5725 Delphi Drive, Troy, Michigen 48098 (Attn: Legal Staff), (ii) Delphi, 5725 Delphi

Drive, Troy, Michigan 48098 (Att'n: Deputy General Counsel, Transactions &

3

Restructuring), (iii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333

West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons and Brian M.

Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and

Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham &

Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg

and Mark A. Broude), (vi) counsel for the official committee of equity security holders,

Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York

10004 (Att'n: Bonnie Steingart), (vii) counsel for the Purchasers, Warner Norcross & Judd

LLP, 900 Fifth Third Center, 111 Lyon Street NW, Grand Rapids, Michigan 49503-2487

(Att'n: Gordon Toering), and (viii) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:

Alicia M. Leonhard).

        5.      If an objection to the assumption and assignment of an Assumed

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, at the Sale Hearing or such date and time as the Court may

schedule.  If no objection is timely filed and received, the non-Debtor party to the Assumed

Contract will be deemed to have consented to the assumption and assignment of the Assumed

Contract and will be forever barred from asserting any other claims, including, but not limited

to, the propriety or effectiveness of the assumption and assignment of the Assumed Contract,

against DAS LLC or the Purchasers or the Qualified Bidder (as appropriate), or the property

of either of them, as to such Assumed Contract.

6.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the cure amount set forth in the separately filed and served cure notice will be paid in accordance with the terms of the Sale Approval Order.  Further, there is adequate assurance of the Qualified Bidder's future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Qualified Bidder.

7.      Prior to the Closing Date, DAS LLC may amend its decision with respect to the assumption and/or assignment of any Assumed Contract or Postpetition Contract and provide a new notice amending the information provided in this Notice.

Dated:  New York, New York
            [_____], 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                            & FLOM LLP

                                        By: _____
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 4951)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois  60606
                                        (312) 407-0700

                                                    - and -

                                        By:_____
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                            Debtors and Debtors-in-Possession

Exhibit 5

Delphi Legal Information Hotline:                    Delphi Legal Information Website:
Toll Free:  (800) 718-5305                           http://www.delphidocket.com
International:   (248) 813-2698

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                    :
            In re                                   :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-44481 (RDD)
                                                    :
                        Debtor.                     :    (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

<u>NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION</u>

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      Pursuant to the **Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.
2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid
Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale
Hearing In Connection With Sale of Mexico Brake Plant Assets (the "Bidding
Procedures Order")** entered by the United States Bankruptcy Court for the Southern District
of New York (the "Bankruptcy Court") on June [●], 2007, Delphi Automotive Systems LLC
("DAS LLC") and Delphi Sistemas de Energia, S.A. de C.V. (collectively with DAS LLC,
the "Sellers") are offering for sale substantially all of the assets used primarily in the
manufacturing plant located in Saltillo, Mexico.

2.      All interested parties are invited to make an offer to purchase the
Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the
"Bidding Procedures") by July 10, 2007.  Pursuant to the Bidding Procedures, DAS LLC may
conduct an auction for the Assets (the "Auction") beginning at 10:00 a.m. (prevailing Eastern
Time) on July 17, 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four
Times Square, New York, New York or 333 West Wacker Drive, Chicago, Illinois 60606.

3.      Participation at the Auction is subject to the Bidding Procedures and
the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting
the undersigned counsel to the Sellers or by accessing Delphi's Legal Information Website,
<u>www.delphidocket.com</u>.

4.      A hearing to approve the sale of the assets to the highest and best
bidder will be held on July 19, 2007 at 10:00 a.m. (Prevailing Eastern Time) at the United
States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room
610, New York, New York 10004, before the Honorable Robert D. Drain, United States
Bankruptcy Judge.

5.      Objections, if any, to the proposed sale must be filed and served in
accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 p.m.
(prevailing Eastern time)** on **July 12, 2007.**

6.    This notice is qualified in its entirety by the Bidding Procedures Order.

Dated:  June **[●]**, 2007

BY ORDER OF THE COURT

John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
   :
In re                     :    Chapter 11
   :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
   :
          Debtors.   :    (Jointly Administered)
   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF  EXPEDITED MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363 AND 365
AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (A) (I) APPROVING BIDDING
PROCEDURES, (II) GRANTING CERTAIN BID PROTECTIONS, (III) APPROVING FORM
AND MANNER OF SALE NOTICES, AND (IV) SETTING SALE HEARING DATE AND (B)
AUTHORIZING AND APPROVING (I) SALE OF DELPHI AUTOMOTIVE SYSTEMS
LLC'S MEXICO BRAKE PLANT ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES,
<u>AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>

PLEASE TAKE NOTICE that on June 15, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed an Expedited Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (B) Authorizing And Approving (i) Sale Of Delphi Automotive Systems LLC's Mexico Brake Plant Assets Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on June 26, 2007, at 10:00 a.m. (prevailing eastern time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order, the "Case Management Orders"), (c)

2

be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in

hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate,

Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John

Wm. Butler, Jr.), (iii) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Donald Bernstein and

Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham &

Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and

Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank,

Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n:

Bonnie Steingart), and (vi) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M.

Leonhard), in each case so as to be **received** no later than **4:00 p.m. (prevailing Eastern time)
on June 22, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter an order granting the Motion without further notice.

Dated:        New York, New York
              June 15, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       Albert L. Hogan III (AH 8807)
       Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

4

# EXHIBIT E

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :
          In re                                          :    Chapter 11
                                                         :
DELPHI CORPORATION, et al.,                              :    Case No. 05-44481 (RDD)
                                                         :
                                                         :    (Jointly Administered)
                        Debtors.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d) EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF REORGANIZATION PLAN

("FOURTH § 1121(d) EXCLUSIVITY EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,
debtors and debtors-in-possession in the above-captioned cases (collectively, the
"Debtors"), hereby submit this motion (the "Motion"), with the consent of the Official
Committee of Unsecured Creditors, the Official Committee of Equity Security Holders,
and General Motors Corporation ("GM"), for an order under 11 U.S.C. § 1121(d) further
extending the Debtors' exclusive periods within which to file and solicit acceptances of a
plan of reorganization, and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in
this Court for reorganization relief under chapter 11 of title 11 of the United States Code,
11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue
to operate their businesses and manage their properties as debtors-in-possession under
Bankruptcy Code sections 1107(a) and 1108.  The Court has ordered joint administration
of these cases.

2.    No trustee or examiner has been appointed in these cases.  On
October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an
official committee of unsecured creditors (the "Creditors' Committee").  On April 28,
2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity
Committee," and together with the Creditors' Committee, the "Statutory Committees").

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is

section 1121(d) of the Bankruptcy Code, as amended and in effect on October 8, 2005.

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the

"Company") as of December 31, 2006 had global net sales of $26.4 billion and global

assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked

as the fifth largest public company business reorganization in terms of revenues and the

thirteenth largest public company business reorganization in terms of assets.  Delphi's non-

U.S. subsidiaries are not chapter 11 debtors and continue their business operations without

supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with

significant engineering resources and technical competencies in a variety of disciplines,

and is one of the largest global suppliers of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology.  The Company supplies

products to nearly every major global automotive original equipment manufacturer.

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on
February 27, 2007.

[2]      On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso
proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that
is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its
overall cost structure.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

9.      The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of

which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle

production environment for domestic OEMs resulting in the reduced number of motor

vehicles that GM produces annually in the United States and related pricing pressures, and

(iii) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities,

product portfolio, operational issues, and forward-looking revenue requirements.  Because

discussions with its stakeholders had not progressed sufficiently by the end of the third

quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to

complete the Debtors' transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

11.      On March 31, 2006, the Company outlined five key tenets of its

transformation plan.  First, Delphi must modify its labor agreements to create a

competitive arena in which to conduct business.  Second, the Debtors must conclude their

negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor

costs and to ascertain GM's business commitment to the Company.  Third, the Debtors

must streamline their product portfolio to capitalize on their world-class technology and

market strengths and make the necessary manufacturing alignment with their new focus.

Fourth, the Debtors must transform their salaried workforce to ensure that the Company's

organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4]  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P. ("Appaloosa"), Cerberus Capital Management, L.P. ("Cerberus"), and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), as well as Merrill Lynch & Co. ("Merrill") and UBS Securities LLC ("UBS") (collectively, the "Plan Investors"), and a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.[5]  The Equity Purchase and Commitment Agreement remains subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's goal of achieving consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights.  The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including potential distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors.  The terms of the Plan Framework

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

[5]    The Equity Purchase and Commitment Agreement, the Plan Framework Support Agreement, and various related agreements are referred to herein as the Framework Agreements.

Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.[6]

13.       On April 19, 2007, Delphi confirmed that it anticipated negotiating changes to the Equity Purchase and Commitment Agreement and related Plan Framework Support Agreement.  Delphi said that any changes would be made primarily as a result of addressing differences in views regarding the Company's reorganization enterprise value among the Plan Investors, GM, the Statutory Committees, and the Company.  Delphi also said that it expected that under amended framework agreements, the Appaloosa and Harbinger affiliates, Merrill Lynch, and UBS would continue to participate as Plan Investors (together with possible additional investors that may include members of the Statutory Committees), and that Cerberus might participate in the Company's exit financing, as part of a competitive process, but not as a Plan Investor.  Delphi also confirmed that none of the parties entitled to give notice of termination of the framework agreements had yet done so, that these agreements remain effective as previously filed until modified or terminated, and that Delphi did not intend to comment further regarding its discussions on the framework agreements until those agreements are either modified or terminated.

---

[6]    On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589). On February 29, 2007, Delphi entered into an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to extend the date by which the Company, the Cerberus affiliate, or the Appaloosa affiliate have the right to terminate the agreement if tentative labor agreements with Delphi's principal U.S. labor unions and a consensual settlement of legacy issues with GM have not been completed. The amendment extended the termination right pursuant to a fourteen-day notice mechanism. The amendment also extended the deadline to make certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement.

14.     The April 19, 2007 press release also said that Delphi did not then expect that the framework developments would preclude the Company from filing its plan of reorganization and related documents with the Bankruptcy Court prior to the current expiration of the Company's exclusivity period on July 31, 2007 or the Company's emergence from Chapter 11 reorganization this year.  Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders.  Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

15.     As of the date of this Motion, Delphi continues to engage in productive discussions with its major stakeholders which Delphi believes should lead to the filing of a largely consensual plan of reorganization.  Delphi does not presently believe that it would be in the best interests of the Debtors or their stakeholders to further summarize or comment on those discussions in the context of this Motion or otherwise. The Debtors believe that the interests of the Debtors and their stakeholders are best served by facilitating these continuing settlement discussions on settlement paths that reach

8

conclusion on their own cadence as determined by the parties to the discussions.  Although

this cadence may permit the Debtors to file their plan of reorganization and related

documents with the Bankruptcy Court prior to the current expiration of the Company's

exclusivity period on July 31, 2007, the Debtors, after consultation with the Statutory

Committees and GM, believe that it would be prudent to obtain further relief from this

Court with respect to a continuation of the Debtors' exclusivity periods for the balance of

the calendar year.  The relief sought by Delphi in this Motion does not represent any

change of view from Delphi's expectation expressed in its April 19, 2007 press release that

the Debtors expect to emerge from chapter 11 reorganization by the end of this year.

<u>Relief Requested</u>

16.    As set forth in the Order Under 11 U.S.C. § 1121(d) Extending

Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of

Reorganization Plan (Docket No. 6700) entered by this Court on January 23, 2007, the

Debtors have the exclusive right to file one or more reorganization plans through and

including July 31, 2007 (the "Plan Proposal Period") and the exclusive right to solicit and

obtain acceptances for those plans through and including September 30, 2007 (the

"Solicitation Period," and, together with the Plan Proposal Period, the "Exclusive

Periods").

17.    As stated above, the Debtors believe that a further extension of the

Exclusive Periods is necessary and is in the best interests of their estates and their

stakeholders.  Accordingly by this Motion, the Debtors seek entry of an order further

extending (a) the Plan Proposal Period through and including December 31, 2007[7] and (b)

the Solicitation Period through and including February 29, 2008,[8] without prejudice to the

Debtors' right to seek further extensions of the Exclusive Periods.  Although the Debtors

are requesting this five-month extension, the Debtors anticipate filing a plan of

reorganization and disclosure statement as soon as reasonably practicable following

conclusion of settlement discussions with the Debtors' major stakeholders.

Basis For Relief

18.    The Exclusive Periods are intended to afford chapter 11 debtors a

full and fair opportunity to rehabilitate their businesses and to negotiate and propose a

reorganization plan without the deterioration and disruption of their businesses that might

be caused by the filing of competing reorganization plans by non-debtor parties.  A further

extension of the Exclusive Periods is justified by the significant progress the Debtors have

made toward reorganization since they last sought an extension of the Exclusive Periods.

19.    The Debtors' good-faith progress toward reorganization and the

related unresolved contingencies are not the only factors that support the Debtors' request

to extend the Exclusive Periods.  The size and complexity of the Debtors' cases alone

justify a further extension of the Exclusive Periods.  Additionally, the Debtors' efforts to

negotiate a resolution to the outstanding contingencies in the Framework Agreements

---

[7]    The requested five-month extension is slightly shorter than the approximately six-month extensions
sought by the Debtors in their three prior motions.

[8]    These cases are not subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), most provisions of which became effective in
cases commenced on or after October 17, 2005.  Thus, these cases are not subject to the 18- and 20-
month limitations on plan and solicitation exclusivity found under the current version of 11 U.S.C.
§ 1121(d)(2).

evidence the fact that the Debtors have not used their exclusivity period to pressure

stakeholders to submit to the Debtors' reorganization demands.  Instead, the Debtors have

actively utilized this period to resolve the remaining issues in good faith with their diverse

constituencies.  Finally, the Debtors are timely paying their bills, and have the ability to

continue doing so.

        20.      Therefore, the Debtors submit that under these circumstances the

Debtors' requested extension of the Plan Proposal Period through December 31, 2007 and

the Solicitation Period through February 29, 2008 is justified.

<u>Applicable Authority</u>

        21.      Section 1121(d) of the Bankruptcy Code permits the court to extend

a debtor's exclusive periods upon a demonstration of cause:

> On request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section
> and after notice and a hearing, the court may for cause
> reduce or increase the 120-day period or the 180-day period
> referred to in this section.

11 U.S.C. § 1121(d).  The court in <u>In re McLean Indus., Inc.</u>, 87 B.R. 830 (Bankr.

S.D.N.Y. 1987), identified the following factors as relevant to the determination of "cause"

to extend a debtor's Exclusive Periods:

        (a)     the existence of good faith progress toward reorganization;

        (b)     existence of an unresolved contingency;

        (c)     the size and complexity of the debtor's case;

        (d)     a finding that the debtor is not seeking to extend exclusivity
                  to pressure creditors "to accede to [the Debtor's]
                  reorganization demands"; and

11

(e)        the fact that the debtor is paying its bills as they come due.

In re McLean Indus., 87 B.R. at 834; accord In re Hoffinger Indus., Inc., 292 B.R. 639, 644

(B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case" and court has

discretion to "decide which factors are relevant and give the appropriate weight to each").

22.        In other cases of similar size and complexity to the Debtors' cases,

courts have extended the debtors' exclusivity rights to propose a plan of reorganization for

periods similar to those requested by the Debtors.  See, e.g., In re Delaco Co., Case No. 04-

10899 (PCB) (Bankr. S.D.N.Y. 2004) (granting total extensions of approximately

16 months); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001)

(extensions of approximately 15 months); In re Bethlehem Steel, Case No. 01-15288

(BRL) (Bankr. S.D.N.Y. 2001) (extensions of more than 17 months); In re Kmart Corp.,

Case No. 02-02474 (Bankr. N.D. Ill. 2002) (extensions of more than 17 months); In re

Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. 2002) (extensions of

approximately 43 months); In re UAL Corp., Case No. 02-B48141 (Bankr. N.D. Ill. 2002)

(extensions of approximately 29 months).  In this case, based upon the preceding factors

and in line with other cases of similar size and complexity, sufficient cause exists for a

five-month extension of the Exclusive Periods.

A.        The Debtors Have Made Good-Faith Progress Toward Reorganization

23.        An extension of a debtor's exclusive periods also is justified by a

debtor's progress in resolving issues facing its creditors and estates.  In re AMKO Plastics,

Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  The Debtors' progress in these cases thus

far is significant and compels a further extension of the Exclusive Periods.

12

(i)    <u>The Framework Agreements</u>

24.    As noted above, the Debtors have continued negotiations with the Plan Investors, potential new investors under the Framework Agreements, and GM.  To further the transactions contemplated by the Framework Agreements, on March 7, 2007 Delphi filed with the Securities and Exchange Commission a Form S-1 Registration Statement (not yet effective) for a potential rights offering with respect to up to 56,700,000 shares of common stock of Delphi.  The rights offering would be made to raise a portion of the funds necessary to consummate the contemplated plan of reorganization.  In addition to the issues addressed in the framework discussions with other constituencies, the Debtors have continued their discussions with their six U.S. labor unions and GM to achieve the goals of their transformation plan and to reach agreements required by the Framework Agreements.  Although further negotiations are necessary, the Debtors believe that the successful resolution of these discussions should provide the Debtors with a platform to emerge from chapter 11 during the current calendar year.

(ii)    <u>Claims Reconciliation</u>

25.    A condition precedent to the effectiveness of the potential plan contemplated by the Plan Framework Support Agreement is that the amount of all trade claims and unsecured claims scheduled or asserted in these cases, as allowed or estimated, will total no more than $1.7 billion (excluding, among other things, the Debtors' unsecured senior and subordinated notes).  Although creditors have filed more than 16,000 proofs of claim asserting more than $36.0 billion in liquidated amounts plus certain unliquidated amounts, the Debtors have made significant strides in the claims reconciliation process.

13

As of June 1, 2007, the Debtors have objected to approximately 12,300 claims asserting

nearly $9.4 billion (plus additional unliquidated amounts) and this Court has granted relief

with respect to approximately $8.7 billion in asserted liquidated claims (plus additional

unliquidated claims).

    (iii)    <u>Other Matters</u>

    26.    In addition to the foregoing, since the Debtors last sought an

extension of the Exclusivity Periods, the Debtors have also, among other things:

    (a)    entered into a replacement financing facility which has resulted in an estimated financing costs savings of approximately $9 million per month;

    (b)    obtained court approval for the sale of substantially all of the assets of their brake hose business, and sought court approval for the sale of substantially all assets used in their catalyst business and the sale of substantially all assets used in their brake plant business in Saltillo, Mexico.

    (c)    reached agreements to provide limited discovery to the lead plaintiffs in the securities litigation and ERISA litigation and arranged to participate in a mediation of these disputes in July 2007;

    (d)    filed twelve omnibus claims objections;

    (e)    received court approval to enter into an agreement to outsource certain information technology application maintenance and support services, as well as accounts receivable, accounts payable, and other financial-related matters;

    (f)    received court approval to perform under certain pension waivers granted by the Internal Revenue Service; and

    (g)    sought court approval to enter into an agreement with GM, which provides for the procurement of certain tooling and equipment to support automotive bearing production and a specific facility.

14

27.    In summary, the Debtors are making good-faith progress toward their reorganization.  Nevertheless the Debtors still have significant tasks to complete before proposing a plan of reorganization.

B.    Unresolved Contingencies Still Exist

28.    Courts have also cited the need to resolve an important contingency as justification for extending a debtor's exclusivity periods.  Under the terms of the Plan Framework Support Agreement, the Debtors must reach agreements with a number of parties and constituencies, including reaching agreements on new or amended collective bargaining agreements with each of their U.S. labor unions and agreements resolving the Debtors' many significant GM-related issues.  These issues are significant for both their magnitude and complexity, and amply satisfy the contingency component described in the McLean test.

C.    These Cases Are Large And Complex

29.    The size and complexity of the Debtors' chapter 11 cases alone constitute sufficient cause to extend the Exclusive Periods.  See, e.g., In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987); In re United Press Int'l, Inc., 60 B.R. 265, 270 (Bankr. D.D.C. 1986) ($40 million company granted extension of exclusive periods based on size and complexity of case; "In many much smaller cases, involving far less complications, two or three years go by before the debtor is in a position to file a plan."). These and other authorities show that in large, complex chapter 11 cases, courts consistently extend the debtor's exclusive periods to afford the debtor time to stabilize its business, analyze reliable information to diagnose problems, and formulate a long-term business plan before commencing the plan of reorganization process.

15

30.    The Debtors' cases are indisputably large and the multi-lateral and multi-dimensional scope of actions that must be taken to address Delphi's restructuring requirements are exceedingly complex.  A review of certain basic statistics noted above in the Motion and in prior motions makes the foregoing conclusion self-evident.  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Thus, by any measure, the Debtors' chapter 11 cases are sufficiently large and complex to warrant an extension of the Exclusive Periods under the foregoing authorities.  Moreover, in addition to the typical issues that can be anticipated to arise in a large chapter 11 case, the Debtors face numerous significant issues that are unique to the automobile industry (an industry which, as a whole, is in distress) affecting the Debtors' ability to formulate and execute a viable business plan.

D.    The Debtors Are Using Exclusivity For A Proper Purpose

31.    Courts have denied extensions of exclusive periods when plan negotiations among parties in interest have broken down and the continuation of exclusivity would merely give the debtor unfair bargaining leverage over the other parties in interest.  See Teachers Ins. & Annuity Ass'n of Am. v. Lake in the Woods (In re Lake in the Woods), 10 B.R. 338, 345 (E.D. Mich. 1981).  Here, the Debtors' request for an extension of the Exclusive Periods is not a negotiation tactic.  To the contrary, a further extension would permit the Debtors to continue to facilitate complex multilateral settlement discussions on multiple discrete settlement paths that should lead to the formulation and confirmation of a viable plan of reorganization during this calendar year.

16

E.      The Debtors Are Paying Their Bills As They Come Due

        32.      Courts considering an extension of exclusivity may also assess a

debtor's liquidity and solvency.  See In re Ravenna Indus., Inc., 20 B.R. 886, 890 (Bankr.

N.D. Ohio 1982).  The Debtors are paying their bills as they come due.  The Debtors'

$4.5 billion debtor-in-possession financing facility has decreased the financing expenses

by approximately $9 million per month, which increases the Debtors' liquidity and

provides additional comfort to creditors and other stakeholders that the Debtors will

continue to meet their obligations as they come due.

F.      The Debtors Have Shown Cause To Further Extend The Exclusive Periods

        33.      As shown above, the Debtors have made significant and productive

strides in these chapter 11 cases.  Based on this progress and all the other applicable

factors, sufficient cause exists to extend the Exclusive Periods without prejudice to the

Debtors' rights to seek a further extension.  There is no harm in granting the requested

extensions now because they will be without prejudice to the right of any party to request a

termination of exclusivity for cause at any time under section 1121(d) of the Bankruptcy

Code.  Accordingly, the Debtors submit that the relief requested herein is in the best

interests of the Debtors, their estates, and other parties-in-interest.

## Notice

        34.      Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883)

and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And

Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates

And Certain Notice, Case Management, And Administrative Procedures, entered

October 26, 2006 (Docket No. 5418).  In light of the nature of the relief requested, the

Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

35.     Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) extending the Debtors' exclusive periods to file and solicit acceptance of a plan of reorganization through and including December 31, 2007 and February 29, 2008, respectively, and (ii) granting the Debtors such other further relief as is just.

Dated:        New York, New York
              June 15, 2007

                            SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP


                            By:    /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr. (JB 4711)
                                   George N. Panagakis (GP 0770)
                                   Ron E. Meisler (RM 3026)
                            333 West Wacker Drive, Suite 2100
                            Chicago, Illinois 60606
                            (312) 407-0700

                                        - and –


                            By:    /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                            Four Times Square
                            New York, New York 10036
                            (212) 735-3000

                            Attorneys for Delphi Corporation, et al.,
                              Debtors and Debtors-in-Possession

19

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
       In re                     :       Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :       Case No. 05-44481 (RDD)
                                          :
               Debtors.      :       (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


ORDER UNDER 11 U.S.C. § 1121(d) EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF REORGANIZATION PLAN

("FOURTH § 1121(d) EXCLUSIVITY EXTENSION ORDER")

Upon the motion, dated June 15, 2007 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. § 1121(d) further

extending the Debtors' exclusive periods within which to file and solicit acceptances of a plan of

reorganization (collectively, the "Exclusive Periods"); and upon the record of the hearing held on

the Motion; and this Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.        The Motion is GRANTED.

2.        The Debtors' exclusive period for filing a plan of reorganization is extended to and including December 31, 2007.

3.        The Debtors' exclusive period for soliciting acceptance of a plan of reorganization is extended to and including February 29, 2008.

4.        Entry of this Order is without prejudice to (i) the Debtors' right to seek such additional and further extensions of the Exclusive Periods as may be necessary or appropriate or (ii) any party-in-interest's right to seek to reduce the Exclusive Periods for cause in accordance with 11 U.S.C. § 1121(d).

5.        This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

6.        The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
          June ___, 2007

_____
          UNITED STATES BANKRUPTCY JUDGE

**Hearing Date And Time: June 26, 2007 at 10:00 a.m.**
**Objection Deadline: June 22, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Ron E. Meisler (RM 3026)


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                                    Debtors.              :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d)
EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF REORGANIZATION PLAN

PLEASE TAKE NOTICE that on June 15, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed an Expedited Motion For Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on June 26, 2007 at 10:00 a.m. (prevailing Eastern time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on March 20, 2006 (Docket No. 2883) ("Supplemental Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order, the "Case Management Orders"), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable

2

Document Format (PDF), WordPerfect, or any other Windows-based word processing format),

(d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi

Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden,

Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the postpetition credit facility,

Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald

Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors,

Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J.

Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security

holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New

York 10004 (Att'n: Bonnie Steingart), and (vi) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004

(Att'n:  Alicia M. Leonhard) in each case so as to be **received** no later than **4:00 p.m.**

**(prevailing Eastern time) on June 22, 2007** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Orders will be considered by the

Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in

accordance with the procedures set forth herein and in the Case Management Orders, the

Bankruptcy Court may enter an order granting the Motion without further notice.


Dated:          New York, New York
                June 15, 2007
                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                                        By:   /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              George N. Panagakis (GP 0770)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                - and -

                                        By:   /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession

4

# EXHIBIT F

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 | |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 | |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 | |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 | |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 | |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 | |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 | |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 | |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 | |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 | |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 | |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 | |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 | |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 | |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 | |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 | |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 | |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 | |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 | |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 | |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 | |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 | |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 | |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 | |
| ATF Inc | | 3550 W Pratt Blvd | | Lincolnwood | IL | 60712-3798 | |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 | |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 | |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 | |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 | |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 | |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 | |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 | |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 | |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 | |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 | |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 | |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 | |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 | |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 | |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 | |
| Bosch Robert Corp | Bosch Automotive Group | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331-2417 | |
| Bosch Robert Corp | C/o Pbr Knoxville Llc | 10215 Caneel Dr | | Knoxville | TN | 37931 | |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 | |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 | |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 | |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 | |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 | |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 | |

Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 | |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 | |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 | |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 | |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 | |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 | |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 | |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 | |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 | |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 | |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 | |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 | |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 | |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 | |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 | |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 | |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 | Canada |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 | Canada |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 | |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 | |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 | |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 | |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 | |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 | |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 | |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 | |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 | |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 | |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 | |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 | |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 | |
| Cifunsa Del Bajio Sa De Cv | Cifunsa | Carretera Libramiento Leon | Queretaro Km 46 | Irapuato | | 36547 | Mexico |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 | |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 | |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 | |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 | |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 | |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 | |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 | |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 | |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 | |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 | |

Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 | |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 | |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 | |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 | |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 | |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 | |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 | |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn | MI | 48126 | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 | |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 | |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 | |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 | |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 | |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 | |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 | |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 | |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 | |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 | |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 | |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 | |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 | |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 | |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 | |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 | |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 | |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 | |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 | |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 | |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 | |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 | |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 | |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 | |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 | |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 | |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 | |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 | |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 | |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 | |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 | |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 | |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 | |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 | |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 | |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 | |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 | |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 | |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 | |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 | |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 | |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 | |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 | |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 | |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 | |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 | |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 | |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 | |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterbury | CT | 06723 | |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 | |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 | |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 | |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 | |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 | |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 | |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 | |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 | |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 | |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 | |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 | |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 | |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 | |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 | |
| Cold Heading Co The | | 21777 Hoover Rd | | Warren | MI | 48089 | |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 | |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 | |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 | |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 | |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 | |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 | |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 | |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 | |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 | |
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 | |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 | |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 | |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 | |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 | |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 | |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 | |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 | |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 | |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 | |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 | |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 | |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 | |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 | |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 | |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 | |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 | |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 | |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 | |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 | |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 | |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 | |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 | |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 | |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 | |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 | |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 | |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 | |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 | |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 | |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 | |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 | |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 | |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 | |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 | |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 | |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 | |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 | |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 | |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 | |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 | |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 | |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 | |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 | |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 | |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 | |

Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Exxon Mobil Corp | | 1400 S Harrison St | | Olathe | KS | 66061-7227 | |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 | |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 | |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 | |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 | |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 | Germany |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 | |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 | |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 | |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 | |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 | |
| Fortech Products Inc | | 10566 Plaza Dr | | Whitmore Lake | MI | 48189-9156 | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 | |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 | |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 | |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 | |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 | |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 | |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 | |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 | |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 | |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 | |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 | |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 | |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 | |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 | |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 | |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 | |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 | |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 | |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 | |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 | |
| Guiltford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 | |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 | |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 | |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 | |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 | |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 | |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 | |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 | |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 | |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 | |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 | |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 | |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 | |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 | |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 | |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | | Edinburg | TX | 78540 | |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 | |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 | |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 | |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 | |
| Hitachi Chemical Co Ltd | Mr Kiyoshi Togawa Vice President and Executive Officer | Shibuya Square Bldg | 9 25 Shibaura 4 chome | Minato ku Tokyo | | 108-0023 | Japan |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 | |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 | |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 | |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 | |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 | |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 | |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 | |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 | |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 | |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 | |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 | |
| Internet Corporation | | 700 Tower Dr Fl 4 | | Troy | MI | 48098 | |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 | |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 | |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 | |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 | |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 | |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 | |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 | |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 | |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 | |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 | |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 | |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 | |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 | |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 | |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 | |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 | |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 | |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 | |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 | |
| KDAC | Ki Cheol Jee | 580 1 Buk Ri | Nongong Eup Dalseong Gun | Daegu | | 711-712 | Korea |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 | |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 7 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 | |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 | |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 | |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 | |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 | |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 | |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 | |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 | |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 | |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 | |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 | |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 | |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 | |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 | |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 | |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 | |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 | |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 | |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 | |
| Linamar | Brian H Ahlborn | 124 Rock Haven Ln | | Pittsburgh | PA | 15228 | |
| Linamar | Russ Pollack | 25300 Telegraph Rd Ste 450 | | Southfield | MI | 48304 | |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 | |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 | |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 | |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 | |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 | |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 | |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 | |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 | |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | 90054 | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 | |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 | |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 | |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 | |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 | |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 | |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 | |
| Luk Do Brasil Embreagns Ltds | Fundicao Luk | Rua Dr Jose Fabiano De C Gurjao 490 | Distr Indl Luiz Torrani | Mogi Mirim | | 13803--070 | Brazil |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 | |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 | |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 | |

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Mac Arthur Corp | | PO Box 10 | | Grand Blanc | MI | 48439-0010 | |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 | |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 | |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 | |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 | |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 | |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 | |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 | |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 | |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 | |
| Magni Industries Inc | | 2771 Hammond | | Detroit | MI | 48209 | |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 | |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 | |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 | |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 | |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 | |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 | |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 | |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 | |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 | |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 | |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 | |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 | |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 | |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 | |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 | |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 | |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 | |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 | |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 | |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 | |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 | |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 | |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 | |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 | |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 | |
| Midwest Stamping & Manufacturing Co | Midwest Stamping Inc | 2525 Corporate Way | | Sumter | SC | 29154 | |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 | |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 | |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 | |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 | |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 | |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 | |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 | |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 | |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 | |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 | |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 | |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 | |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 | |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 | |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 | |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 | |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 | |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 | |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 | |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 | |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 | |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 | |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 | |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 | |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 | |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 | |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 | |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 | |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 | |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 | |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 | |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 | |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 | |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 | |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 | |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 | |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 | |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 | |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 | |
| Norstar | Charlie Zhou Elina Fung Alex Fan | 16/F Tower II Admirmalty Centre | 18 Harcourt Rd | Hong Kong | | 425 | Hong Kong |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 | |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 | |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 | |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 | |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 | |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 | |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 | |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 | |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 | |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 | |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 | |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 | |

Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---------|---------|----------|----------|------|-------|-----|---------|
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 | |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 | |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 | |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 | |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 | |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 | |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 | |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 | |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 | |
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 | |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 | |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 | |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 | |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 | |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 | |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 | |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 | |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 | |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 | |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 | |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 | |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 | |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 | |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 | |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 | |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 | |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 | |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 | |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 | |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 | |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 | |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 | |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 | |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 | |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 | |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 | |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 | |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 | |
| Robert Bosch Corp | C/o Timken Co The | 1000 Timken Pl | | Iron Station | NC | 28080 | |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 | |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 | |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 | |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 | |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 | |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 | |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 | |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 | |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 | |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 | |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 | |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 | |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 | |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 | |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 | |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 | |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 | |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 | |
| Schaeffler Brasil Ltda | | R Dr Jose Fabiano De Christo Gurjao | | Mogi Mirim | | 13803–070 | Brazil |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 | |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 | |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 | |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 | |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 | |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 | |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 | |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 | |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 | |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 | |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 | |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 | |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 | |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 | |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 | |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 | |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 | |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 | |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 | |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 | |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 | |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 | |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 | |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 | |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 | |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 | |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 | |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 | |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 | |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 | |

Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---------|---------|----------|----------|------|-------|-----|---------|
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 | |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 | |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 | |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 | |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 | |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 | |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 | |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 | |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 | |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 | |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 | |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 | |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 | |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 | |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 | |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 | |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 | |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 | |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 | |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 | |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 | |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 | |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 | |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 | |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 | |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 | |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 | |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 | |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 | |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 | |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 | |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 | |
| Thyssen Krupp Waupaca Inc | | PO Box 249 | | Waupaca | WI | 54981-0249 | |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 | |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 | |
| Tisamatic S De Rl De Cv | | Av Promocion No 145 | | San Luis Potosi | | 78395 | Mexico |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 | |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 | |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 | |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 | |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 | |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 | |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 | |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 | |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 | |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 | |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 | |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 | |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 | |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 | |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 | |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 | |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 | |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 | |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 | |
| TRW Automotive | Ron Muckley | 12000 Tech Center Dr | | Livonia | MI | 48150 | |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 | |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 | |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 | |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 | |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 | |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 | |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 | |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 | |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 | |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 | |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 | |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 | |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 | |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 | |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 | |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 | |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 | |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 | |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 | |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 | |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 | |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 | |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 | |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 | |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 | |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 | |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 | |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 | |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 | |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 | |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 | |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 | |
| Westbrook Mfg Inc | Bradley Kirkpatrick | 600 N Irwin St | | Dayton | OH | 45403 | |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 | |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 | |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 | |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 | |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 | |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 | |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 | |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 | |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 | |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 | |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 | |
| Wv Secretary Of State | | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | Charleston | WV | 225305 | |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 | |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 | |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 | |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 | |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 | |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 | |
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 | |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 15

6/18/2007 1:08 PM
Bosch Motion Special Parties