BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

John T. Gregg, Admitted Pro Hac Vice
Telephone: (616) 742-3945
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| Debtors. | ) | (Jointly Administered) |

**RESPONSE OF BANK OF AMERICA, N.A. TO DEBTORS' FIFTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIM, AND (D) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO <u>MODIFICATION, AND MODIFIED CLAIMS ASSERTING RECLAMATION</u>**

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, hereby files this response (the "Response") to the Debtors' Fifteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected on Debtors' Books and Records, (c) Untimely Claims and Untimely Tax Claim, and (d) Claims Subject to Modification, Tax

Claims Subject to Modification, and Modified Claims Asserting Reclamation (the "Fifteenth Omnibus Objection").  In support of its response, Bank of America states as follows:

## BACKGROUND

**A.    THE LEARJET LEASE**

1. On or about March 30, 2001, Bank of America's predecessor-in-interest, Fleet National Bank ("Fleet") entered into a certain Aircraft Lease dated such date with the predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), SM 5105 LLC, a Delaware limited liability company ("SMLLC"), as lessee (the "Learjet Lease").

2. The following personal property is the subject of the Learjet Lease:

    (a)    a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

    (b)    two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA 0318 (collectively, the "Learjet Engines"); and

    (c)    all present and future parts, avionics, accessories, accessions and attachments related to the Learjet Aircraft, the Learjet Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Learjet Aircraft, the Learjet Engines, and any related goods (the "Learjet Accessories and Avionics").

3. Title to the Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics (collectively referred to herein as the "Learjet") is held by Bank of America, as successor-in-interest to Fleet.  The lessor's cost of the Learjet amounted to $11,125,200.00.

4. Pursuant to the Learjet Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

2

5.      Pursuant to Section 3 of the Learjet Lease, the lessee is required to pay to Bank of America "Basic Rent" and "Supplemental Rent." Basic Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent under the Learjet Lease is $64,202.53 for months 1 through 72 of the Learjet Lease and $78,470.93 for months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

6.      All of the lessee's obligations under the Learjet Lease are unconditionally guaranteed by Delphi Corporation ("Delphi Corp."), formerly known as "Delphi Automotive Systems Corporation", a Delaware corporation, and Delphi Automotive Systems LLC ("Delphi Automotive Systems"), a Delaware limited liability company, pursuant to the terms of four separate guaranties, all of which are dated March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

7.      On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

8.      On December 17, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Learjet and related collateral.

9.      On January 29, 2002, the Learjet Lease was recorded with the FAA.

10.     On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

11.     On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State and listing Delphi HR as the debtor.

3

12. On or about November 26, 2001, lessee and Automotive Air Charter, Inc. ("Charter"), a Delaware corporation, executed a certain Charter Agreement concerning the Learjet, which agreement is dated such date (the "Learjet Charter Agreement"). The Learjet Charter Agreement was thereafter extended/renewed by lessee and Charter on or about January 2, 2002.

13. On November 26, 2001, lessee and Pentastar Aviation, LLC ("Pentastar") executed a certain Aircraft Management Agreement under FAR Part 91, concerning the Learjet, which agreement is dated such date, and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003 (the "Management Agreement").

14. Pursuant to the terms of the Learjet Lease and two separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by Fleet, the lessee, Pentastar and Charter and dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"), SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of lessee's rights under the Management Agreement and the Learjet Charter Agreement (and any extensions and renewals thereof) and any subleases of the Learjet aircraft, including any sums paid and payable to the lessee thereunder (the "Learjet Ancillary Personal Property"). This security interest was perfected under applicable nonbankruptcy law.

15. Upon information and belief, the Learjet is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors. These cash revenues form a portion of the Learjet Ancillary Personal Property and constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest.

**B.    THE CHALLENGER LEASE**

16.    On or about March 30, 2001, Fleet entered into a certain Aircraft Lease dated such date with SMLLC, as lessee (the "Challenger Lease").

17.    The following personal property is the subject of the Challenger Lease:

(a)    a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b)    two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c)    all present and future parts, avionics, accessories, accessions and attachments related to the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods (the "Challenger Accessories and Avionics").

18.    Title to the Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics (collectively referred to herein as the "Challenger") is held by Bank of America, as successor-in-interest to Fleet.   The lessor's cost of the Challenger was $24,149,760.00.

19.    Pursuant to the Challenger Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

20.    Pursuant to Section 3 of the Challenger Lease, the lessee is required to pay to Bank of America "Base Rent" and "Supplemental Rent."  Base Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013.  The amount of each monthly installment of Base Rent is $130,476.08 for months 1

5

through 72 of the Challenger Lease and $159,480.43 for the months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

21. All of the lessee's obligations under the Challenger Lease are unconditionally guaranteed by Delphi Corp. and Delphi Automotive Systems pursuant to the terms of four (4) separate guaranties, all of which are dated as of March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

22. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

23. On November 30, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Challenger and related collateral.

24. On January 25, 2002, the Challenger Lease was recorded with the FAA.

25. On or about December 16, 2003, SMLLC assigned all of its rights in the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

26. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State.

27. On or about November 26, 2001, lessee and Charter executed a certain Charter Agreement concerning the Challenger, which agreement is dated such date (the "Challenger Charter Agreement"). The Challenger Charter Agreement was thereafter extended/renewed by lessee on or about January 2, 2002.

28.    On November 26, 2001, lessee and Pentastar Aviation, LLC executed the Management Agreement which also concerns the Challenger, which agreement is dated such date and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003.

29.    Pursuant to the terms of the Challenger Lease and the Assignments of Related Collateral, SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of SMLLC's rights under the Management Agreement and the Challenger Charter Agreement (and any extensions and renewals thereof) and in any subleases of the Challenger aircraft including any sums paid and payable to the lessee thereunder (the "Challenger Ancillary Personal Property"). This security interest has been perfected under applicable nonbankruptcy law.

30.    Upon information and belief, the Challenger is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors. These cash revenues form a part of the Challenger Ancillary Personal Property and constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest.

**C.    THE PROOFS OF CLAIM**

31.    On October 8, 2005, Delphi HR, Delphi Corp., Delphi Automotive Systems and several of their affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

32.    Shortly thereafter, Bank of America filed a Motion for Adequate Protection Replacement Liens (the "Motion for Adequate Protection"). The Motion for Adequate Protection was resolved when this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens (the "Consent Order"), which provides for payment of certain amounts due under the Learjet Lease and the Challenger Lease

7

in installments. (Consent Order at ¶ 6.)   Moreover, the Consent Order provides that the Debtors must establish a segregated deposit account for the Aircraft Cash Collateral (as defined by the Consent Order.   (Consent Order at ¶¶ 1 -2.)   Finally, the Consent Order provides that the Debtors may not amend, cancel or otherwise terminate the Learjet Charter Agreement, the Challenger Charter Agreement, the Management Agreement or any subleases of the Learjet or the Challenger without at least ten (10) days prior written notice to Bank of America. (Consent Order at ¶ 5.)

33.    On January 13, 2006, Bank of America commenced an adversary proceeding by filing a Complaint for a Declaratory Judgment With Respect to the Priority of Liens and Security Interests in Property of Delphi Automotive Systems Human Resources, LLC (the "Complaint") against Delphi HR, the Official Committee of Unsecured Creditors and JPMorgan Chase Bank, N.A., acting in its capacities as administrative agent for the Debtors' prepetition and post-petition lenders. The Complaint requested that this Court enter a judgment declaring that JPMorgan Chase Bank, N.A., in both of the aforementioned capacities, does not hold any security interests or liens in certain collateral pledged to Bank of America by Delphi HR.

34.    On April 26, 2006, this Court approved a Stipulation and Order Resolving and Dismissing Adversary Proceeding (the "Adversary Order"). The Adversary Order resolved the issues set forth in the Complaint and provided, among other things, that (i) the Prepetition Agent (as defined in the Adversary Order) does not hold any security interests in, or liens on, any assets owned by Delphi HR, (ii) none of the security interests or liens granted by this Court under the Final DIP Financing Order (as defined in the Adversary Order) attach to any interests of Delphi HR in collateral pledged to Bank of America, and (iii) the Debtors and the Committee agree that

8

the liens granted in the Final DIP Financing Order are subject and subordinate to the liens and security interests held by Bank of America.

35.     On or around July 27, 2006, Bank of America timely filed (i) a proof of claim against Delphi Corp. (Claim No. 11317) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned, (ii) a proof of claim against Delphi Automotive Systems (Claim No. 11470) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned, and (iii) a proof of claim against Delphi HR (Claim No. 11457) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned (collectively, the "Proofs of Claims").  Copies of the Proofs of Claim are attached hereto as Exhibit A.[1]

36.     Bank of America's claims relating to the Challenger Lease against Delphi HR, and Delphi Automotive Systems and Delphi Corp. as guarantors, in the amount of $26,050,997.12 are based on the following calculation:

(i)     the Casualty Value (as defined in the Challenger Lease) as of the first post-petition payment date[2], which amount is $24,222,209.28, plus;

(ii)    the rent due as of the first post-petition payment date, which is $138,304.64; plus

(iii)   the remarketing fee of $1,690,483.20; plus

---

[1]     Due to the voluminous nature of the Proofs of Claim, the exhibits to the rider for each Proof of Claim are not part of Exhibit A.

[2]     The first post-petition payment date under both the Learjet Lease and the Challenger Lease was October 20, 2005.

9

  (iv) interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned; minus

  (v) post-petition payments and other amounts for which the lessee is entitled to a credit pursuant to the terms of the Challenger Lease.

37. Bank of America's claims relating to the Learjet Lease against Delphi HR, and Delphi Automotive Systems and Delphi Corp. as guarantors, in the amount of $12,076,595.56 are based on the following calculation:

  (i) the Casualty Value (as defined in the Learjet Lease) as of the first post-petition payment date, which amount is $11,007,272.88, plus;

  (ii) the rent due as of the first post-petition payment date, which is $68,054.68; plus

  (iii) the remarketing fee of $1,001,268.00; plus

  (iv) interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned; minus

  (v) post-petition payments and other amounts for which the lessee is entitled to a credit pursuant to the terms of the Learjet Lease.

38. On or about May 22, 2007, the Debtors filed the Fifteenth Omnibus Objection, which seeks an entry of an order disallowing and expunging the claims of Bank of America because it asserts liabilities or dollar amounts that are not reflected on the Debtors' books and records. (Fifteenth Omnibus Objection at ¶¶ 22 and 28.)

39. The Fifteenth Omnibus Objection provides no specific bases for the reduction of the claims of Bank of America against the Debtors, except to conclude that the reduction of the Claim is appropriate. (Fifteenth Omnibus Objection at ¶ 28.)

40. As of the date of the filing of this Response, Delphi HR had neither assumed nor rejected the Challenger Lease or the Learjet Lease. Moreover, neither Delphi Corp. nor Delphi Automotive Systems has assumed or rejected their respective guaranties.

## RESPONSE

41. In accordance with Rule 3003(c)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a] proof of claim or interest executed and filed in accordance with this subdivision shall supersede any scheduling of that claim or interest pursuant to § 521(1)" of the Bankruptcy Code. Furthermore, in accordance with Rule 3001(f) of the Bankruptcy Rules, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

42. Therefore, pursuant to Rule 3001(f) of the Bankruptcy Rules, a debtor has the burden of producing evidence rebutting the *prima facie* validity of a creditor's claim. *See, e.g.*, *In re Lanza*, 51 B.R. 125, 127 (Bankr. D.N.J. 1985) ("onus is on the debtor to overcome the presumption of validity").

43. To satisfy this burden, a debtor must present "a substantial factual basis to overcome the *prima facie* validity of a proof of claim [and] [t]his evidence must be of a probative force equal to that of the creditor's proof of claim." *In re Hinkley*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986); *see also In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) ("[t]o overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim").

44. The Debtors have offered no evidence in support of their objection to the claims asserted by Bank of America. Instead, the Debtors have simply alleged that the Claim is not

11

reconcilable with the Debtors' books and records.[3] (*See* Fifteenth Omnibus Objection at ¶¶ 22 and 28.) Therefore, the Debtors' Fifteenth Omnibus Objection as it relates to all three Proofs of Claim should be overruled. As such, Bank of America respectfully requests that this Court deem its claims as allowed and not subject to further objection.

45. Bank of America holds claims against the Debtors other than the claims evidenced by the Proofs of Claim relating to the Challenger and Learjet and subject to the Fifteenth Omnibus Objection. The Fifteenth Omnibus Objection and this Response are expressly limited to the Proofs of Claim relating to the Challenger and Learjet. Nothing contained herein should be deemed as a waiver or should have any impact on any other claims of Bank of America against the Debtors.

## **MEMORANDUM OF LAW**

46. This Response sets forth specific responses with supporting law divided under numerous paragraphs. Bank of America respectfully requests that the requirements of the service and filing of an answering memorandum of law under Local Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

---

[3] Bank of America is prepared to engage in discussions with the Debtors to reconcile amounts due and owing on the respective parties' books and records.

WHEREFORE, Bank of America objects to the relief requested in the Fifteenth Omnibus Objection as it relates to Bank of America and respectfully requests that the Court (i) overrule the objection, (ii) allow the claims of Bank of America, and (iii) grant such other and further relief as the Court may deem appropriate under the circumstances.

Dated: June 19, 2007

    Respectfully submitted,

    **BANK OF AMERICA, N.A.**

    By:   /s/John T. Gregg
          One of its Attorneys

Patrick E. Mears (PM-6473)
John T. Gregg (Admitted Pro Hac Vice)
Barnes & Thornburg LLP
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999
jgregg@btlaw.com

Attorneys for Bank of America, N.A.

GRDS01 JGREGG 344022v1