# EXHIBIT A

FORM B10 (Official Form 10) (10/05)

# 11317

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>DELPHI CORPORATION | Case Number<br>05-44481 (RDD) |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Received
'AUG 0 4 2006
Kurtzman Carson

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**BANK OF AMERICA, N.A.**<br><br>Name and address where notices should be sent:<br>**Patrick E. Mears, Barnes & Thornburg LLP**<br>**300 Ottawa Avenue, NW, Ste. 500**<br>**Grand Rapids, MI 49503**<br>Telephone number: **(616) 742-3936** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | Claim #11317<br>USBC SDNY<br>Delphi Corporation, et al.<br>05-44481 (RDD)<br><br>THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated:_____ |
|---|---|

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other **Guaranty of lease of personal property** | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)                        (date) |
|---|---|

| 2. Date debt was incurred:<br>**Prior to and after October 8, 2005** | 3. If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ _____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ **38,127,592.68 +**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☒ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)( **1** ). **and 11 U.S.C. § 365(a)(10)**
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| 5. Total Amount of Claim at Time Case Filed: | $_____ _____ **$38,127,592.68+** **$38,127,592.68+** |
|---|---|
| | (unsecured) (secured) (priority) (Total) |

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. *

**7. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
JUL 27 2006
CLAIMS PROCESSING CENTER
USBC, SDNY

| Date<br>7/24/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Bank of America, N.A.<br>by:  *[signature]*<br>**Stuart R. Schwartz, Senior Vice President** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up

\* See attached Schedule A
+plus other amounts.  See attached Schedule A



0544481060727000000000101

# SCHEDULE A

This claim arises from the guaranty by Delphi Corporation of all obligations of the lessee under two written leases of personal property originally entered into by Fleet National Bank (the predecessor-in-interest of Bank of America, N.A.), as lessor, and SM 5105 LLC ("SMLLC"), a Delaware limited liability company and predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), as lessee. The amounts in this Proof of Claim relate solely to the Learjet Lease (defined below) and the Challenger Lease (defined below) and are additional to the amounts stated in any other claim or Proof of Claim filed or otherwise asserted by or on behalf of Bank of America, N.A.

## I.    The Learjet Lease

The first lease dated March 30, 2001 (the "Learjet Lease") involves the following personal property:

(a)    a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b)    two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA 0319 and PCE-CA 0318 (the "Learjet Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Learjet Aircraft, the Learjet Engines and any related goods, records, manuals and logbooks in both written and computer data form, whether now existing or hereinafter acquired, including without limitation one (1) PATS, Inc. model T-20G-10C3A auxiliary power unit bearing manufacturer's serial number SP-E010358 (the "Learjet Accessories and Avionics").

A copy of the Learjet Lease is attached hereto as Exhibit A (the "Learjet Lease"). The Learjet Lease was recorded with the Federal Aviation Administration (the "FAA") on January 29, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Learjet Assumption Agreement"). A copy of the Learjet Assumption Agreement is attached hereto as Exhibit B. The Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are attached hereto as Exhibit C. The Learjet Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Learjet Lease, Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics.

As security for the performance of the lessee's obligations under the Learjet Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)     Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Learjet Lease between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069955-5 filed by Bank of America with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Learjet 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)     Any and all security deposits in connection with or relating to the Learjet Aircraft Lease;

(iii)     Any and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Learjet Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Learjet 2004 UCC;

(iv)     Any and all proceeds of any of the foregoing or of any other goods, documents, things or items described in or relating to the Learjet 2004 UCC; and

(v)     Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Learjet 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section I(c)(i)-(v) above, is hereinafter referred to as the "Learjet Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Learjet Ancillary Personal Property was granted pursuant to, *inter alia,* two (2) separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by lessor, lessee, Pentastar Aviation, LLC and Automotive Air Charter, Inc. dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"). Copies of the Assignments of Related Collateral are attached hereto as <u>Exhibit D</u>. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Learjet Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were thereafter amended (the "Learjet Lease Guaranties"). Copies of the Learjet Lease Guaranties are attached hereto as <u>Exhibit E</u>.

2

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to the Learjet Lease is $12,076,595.56 plus interest, late charges, expenses of collection, attorneys' fees, applicable taxes and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft and related property is returned. Bank of America, N.A.'s claim with respect to the Learjet Lease is subject to reduction for amounts received after the Petition Date and for other credits to which Delphi HR may be entitled to under the terms of the Learjet Lease.

As of October 8, 2005, the value of the Learjet Ancillary Personal Property was unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Learjet Lease has neither been assumed nor rejected.

## II.    The Challenger Lease

The second lease dated March 30, 2001 (the "Challenger Lease") involves the following personal property:

(a)    a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b)    two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods records, manuals and logbooks in both written and computer data form, whether now existing or hereafter acquired, including without limitation one (1) Garrett GTCP36-100E auxiliary power unit bearing manufacturer's serial number P699 (the "Challenger Accessories and Avionics").

A copy of the Challenger Lease dated March 30, 2001 is attached hereto as Exhibit F. The Challenger Lease was recorded with the FAA on January 25, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Challenger Assumption Agreement"). A copy of the Challenger Assumption Agreement is attached hereto as Exhibit G. The Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are contained in Exhibit C hereto. The Challenger Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Challenger Lease, Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics.

3

As security for the performance of the lessee's obligations under the Challenger Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor in interest to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)    Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Challenger Lease) between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069953-0 filed by Bank of America, N.A. with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Challenger 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)    Any and all security deposits in connection with or relating to the Challenger Lease;

(iii)    Any and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Challenger Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Challenger 2004 UCC;

(iv)    Any and all proceeds of any of the foregoing or of any other goods, documents, things or items described in or relating to the Challenger 2004 UCC; and

(v)    Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Challenger 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section II(c)(i)-(v) above, is hereinafter referred to as the "Challenger Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Challenger Ancillary Personal Property was granted pursuant to, *inter alia*, the Assignments of Related Collateral, copies of which are attached hereto as Exhibit D. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Challenger Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were

4

thereafter amended (the "Challenger Lease Guaranties"). Copies of the Challenger Lease Guaranties are attached hereto as Exhibit H.

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to the Challenger Lease is $26,050,997.12 plus interest, late charges, expenses of collection, attorneys' fees, applicable taxes and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft and related property is returned. Bank of America, N.A.'s claim with respect to the Challenger Lease is subject to reduction for amounts received after the Petition Date and for other credits to which Delphi HR may be entitled to under the terms of the Challenger Lease.

As of October 8, 2005, the value of the Challenger Ancillary Personal Property was unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Challenger Lease has been neither assumed nor rejected.

**III.    This Court's Consent Order dated January 12, 2006**

On January 12, 2006, this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens, a copy of which is attached hereto as Exhibit I (the "Consent Order"). The Consent Order provides, *inter alia*, for payment of certain amounts due under the Learjet Lease and the Challenger Lease in installments. See Paragraph 6 of the Consent Order.

**IV.    General Reservation of Rights**

Bank of America, N.A. is filing this Proof of Claim without waiving or affecting in any manner whatsoever any rights that it holds against Delphi HR and any other Chapter 11 debtors including, but not limited to, its right to request payment of administrative expenses.

# 11470

**FORM B10** (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **SOUTHERN** | DISTRICT OF **NEW YORK** | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor | Case Number |
|---|---|
| DELPHI AUTOMOTIVE SYSTEMS LLC | 05-44640 (RDD) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Claim #11470
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

**RECEIVED**

**AUG 0 4 2006**

**KURTZMAN CARSON**

THIS SPACE IS FOR COURT USE ONLY

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| BANK OF AMERICA, N.A. | ☐ Check this box if you have never received any notices from the bankruptcy court in this case. |
| Name and address where notices should be sent:<br>Patrick E. Mears, Barnes & Thornburg LLP<br>300 Ottawa Avenue, NW, Ste. 500<br>Grand Rapids, MI  49503<br>Telephone number: (616) 742-3936 | ☐ Check this box if the address differs from the address on the envelope sent to you by the court. |

| Last four digits of account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1.  Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☒ Taxes
- ☐ Other —— Guaranty of lease of personal property

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
           (date)                    (date)

**2.  Date debt was incurred:**
Prior to and after October 8, 2005

**3.  If court judgment, date obtained:**

**4.  Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ 38,127,592.68 +

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☒ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) 1
           and 11 U.S.C. 365(d)(10).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.  Total Amount of Claim at Time Case Filed:**  $ $38,127,592.68+$38,127,592.68 +
                                                                    (unsecured)    (secured)    (priority)    (Total)

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

THIS SPACE IS FOR COURT USE ONLY

**6.  Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. *

**7.  Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.  Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 7/24/06 | Bank of America, N.A.<br>by: *Stuart R. Schwartz*<br>Stuart R. Schwartz, Senior Vice President |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

\* See attached Schedule A
+plus other amounts.  See attached Schedule A



0544640060727000000000049

## SCHEDULE A

This claim arises from the guaranty by Delphi Automotive Systems LLC of all obligations of the lessee under two written leases of personal property originally entered into by Fleet National Bank (the predecessor-in-interest of Bank of America, N.A.), as lessor, and SM 5105 LLC ("SMLLC"), a Delaware limited liability company and predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), as lessee. The amounts in this Proof of Claim relate solely to the Learjet Lease (defined below) and the Challenger Lease (defined below) and are additional to the amounts stated in any other claim or Proof of Claim filed or otherwise asserted by or on behalf of Bank of America, N.A.

### I.    The Learjet Lease

The first lease dated March 30, 2001 (the "Learjet Lease") involves the following personal property:

(a)    a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b)    two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA 0319 and PCE-CA 0318 (the "Learjet Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Learjet Aircraft, the Learjet Engines and any related goods, records, manuals and logbooks in both written and computer data form, whether now existing or hereinafter acquired, including without limitation one (1) PATS, Inc. model T-20G-10C3A auxiliary power unit bearing manufacturer's serial number SP-E010358 (the "Learjet Accessories and Avionics").

A copy of the Learjet Lease is attached hereto as Exhibit A (the "Learjet Lease"). The Learjet Lease was recorded with the Federal Aviation Administration (the "FAA") on January 29, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Learjet Assumption Agreement"). A copy of the Learjet Assumption Agreement is attached hereto as Exhibit B. The Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are attached hereto as Exhibit C. The Learjet Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Learjet Lease, Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics.

As security for the performance of the lessee's obligations under the Learjet Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)     Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Learjet Lease between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069955-5 filed by Bank of America with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Learjet 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)    Any and all security deposits in connection with or relating to the Learjet Aircraft Lease;

(iii)   Any  and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Learjet Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Learjet 2004 UCC;

(iv)    Any and all proceeds of any of  the foregoing or of any other goods, documents, things or items described in or relating to the Learjet 2004 UCC; and

(v)     Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Learjet 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section I(c)(i)-(v) above, is hereinafter referred to as the "Learjet Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Learjet Ancillary Personal Property was granted pursuant to, *inter alia,* two (2) separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by lessor, lessee, Pentastar Aviation, LLC and Automotive Air Charter, Inc. dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"). Copies of the Assignments of Related Collateral are attached hereto as <u>Exhibit D</u>. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Learjet Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were thereafter amended (the "Learjet Lease Guaranties"). Copies of the Learjet Lease Guaranties are attached hereto as <u>Exhibit E</u>.

2

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to the Learjet Lease is $12,076,595.56 plus interest, late charges, expenses of collection, attorneys' fees, applicable taxes and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft and related property is returned. Bank of America, N.A.'s claim with respect to the Learjet Lease is subject to reduction for amounts received after the Petition Date and for other credits to which Delphi HR may be entitled to under the terms of the Learjet Lease.

As of October 8, 2005, the value of the Learjet Ancillary Personal Property was unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Learjet Lease has neither been assumed nor rejected.

## II.    The Challenger Lease

The second lease dated March 30, 2001 (the "Challenger Lease") involves the following personal property:

(a)    a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b)    two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods records, manuals and logbooks in both written and computer data form, whether now existing or hereafter acquired, including without limitation one (1) Garrett GTCP36-100E auxiliary power unit bearing manufacturer's serial number P699 (the "Challenger Accessories and Avionics").

A copy of the Challenger Lease dated March 30, 2001 is attached hereto as Exhibit F. The Challenger Lease was recorded with the FAA on January 25, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Challenger Assumption Agreement"). A copy of the Challenger Assumption Agreement is attached hereto as Exhibit G. The Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are contained in Exhibit C hereto. The Challenger Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Challenger Lease, Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics.

3

As security for the performance of the lessee's obligations under the Challenger Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor in interest to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)    Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Challenger Lease) between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069953-0 filed by Bank of America, N.A. with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Challenger 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)    Any and all security deposits in connection with or relating to the Challenger Lease;

(iii)    Any and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Challenger Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Challenger 2004 UCC;

(iv)    Any and all proceeds of any of the foregoing or of any other goods, documents, things or items described in or relating to the Challenger 2004 UCC; and

(v)    Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Challenger 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section II(c)(i)-(v) above, is hereinafter referred to as the "Challenger Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Challenger Ancillary Personal Property was granted pursuant to, *inter alia,* the Assignments of Related Collateral, copies of which are attached hereto as Exhibit D. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Challenger Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were

4

thereafter amended (the "Challenger Lease Guaranties").    Copies of the Challenger Lease Guaranties are attached hereto as Exhibit H.

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to the Challenger Lease is $26,050,997.12 plus interest, late charges, expenses of collection, attorneys' fees, applicable taxes and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft and related property is returned.    Bank of America, N.A.'s claim with respect to the Challenger Lease is subject to reduction for amounts received after the Petition Date and for other credits to which Delphi HR may be entitled to under the terms of the Challenger Lease.

As of October 8, 2005, the value of the Challenger Ancillary Personal Property was unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Challenger Lease has been neither assumed nor rejected.

### III.    This Court's Consent Order dated January 12, 2006

On January 12, 2006, this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens, a copy of which is attached hereto as Exhibit I (the "Consent Order").    The Consent Order provides, *inter alia*, for payment of certain amounts due under the Learjet Lease and the Challenger Lease in installments.    See Paragraph 6 of the Consent Order.

### IV.    General Reservation of Rights

Bank of America, N.A. is filing this Proof of Claim without waiving or affecting in any manner whatsoever any rights that it holds against Delphi HR and any other Chapter 11 debtors including, but not limited to, its right to request payment of administrative expenses.

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT **SOUTHERN** | DISTRICT OF **NEW YORK** | PROOF OF CLAIM |
|---|---|---|

Name of Debtor **DELPHI AUTOMOTIVE SYSTEMS HUMAN RESOURCES, LLC**

Case Number **05-44639 (RDD)**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Claim #11457
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

**Received**

**AUG 0 4 2006**

**Kurtzman Carson**
THIS SPACE IS FOR COURT USE ONLY

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**BANK OF AMERICA, N.A.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:

**Patrick E. Mears, Barnes & Thornburg LLP**
**300 Ottawa Avenue, NW, Ste. 500**
**Grand Rapids, MI 49503**
Telephone number: **(616) 742-3936**

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated:_____

1. **Basis for Claim**   X Date Stamped Copy Returned   No self addressed stamped envelope   No copy to return
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other   **Lease of Personal Property**

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Last four digits of your SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
   (date)                        (date)

2. **Date debt was incurred:**
   **Prior to and after October 8, 2005**

3. **If court judgment, date obtained:**

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

   **Unsecured Nonpriority Claim** $_____

   ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

   **Unsecured Priority Claim**

   ☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

   Amount entitled to priority $**38,127,592.68** +

   Specify the priority of the claim:

   ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

   ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

   **Secured Claim**

   ☐ Check this box if your claim is secured by collateral (including a right of setoff).

   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle   Other _____*

   Value of Collateral: $**Unknown at this time**

   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

   ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

   ☒ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)( **1** ).
   **and 11 U.S.C. § 365(d) (10)**
   *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

5. **Total Amount of Claim at Time Case Filed:**
   $ _____   *   $**38,127,592.68** + $**38,127,592.68** +
   (unsecured)   (secured)   (priority)   (Total)

   ☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.   *

7. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

R E C E I V E D
JUL 2 7 2006
CLAIMS PROCESSING CENTER
USBC, SDNY

| Date **7/24/06** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Bank of America, N.A. By: _Stuart R. Schwartz_ **Stuart R. Schwartz, Senior Vice President** |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**\* See attached Schedule A**
**+ plus other amounts. See attached Schedule A**



## SCHEDULE A

This claim arises from two written leases of personal property originally entered into by Fleet National Bank (the predecessor-in-interest of Bank of America, N.A.), as lessor, and SM 5105 LLC ("SMLLC"), a Delaware limited liability company and predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), as lessee. The amounts in this Proof of Claim relate solely to the Learjet Lease (defined below) and the Challenger Lease (defined below) and are additional to the amounts stated in any other claim or Proof of Claim filed or otherwise asserted by or on behalf of Bank of America, N.A.

### I.    The Learjet Lease

The first lease dated March 30, 2001 (the "Learjet Lease") involves the following personal property:

(a)    a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b)    two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA 0319 and PCE-CA 0318 (the "Learjet Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Learjet Aircraft, the Learjet Engines and any related goods, records, manuals and logbooks in both written and computer data form, whether now existing or hereinafter acquired, including without limitation one (1) PATS, Inc. model T-20G-10C3A auxiliary power unit bearing manufacturer's serial number SP-E010358 (the "Learjet Accessories and Avionics").

A copy of the Learjet Lease is attached hereto as Exhibit A (the "Learjet Lease"). The Learjet Lease was recorded with the Federal Aviation Administration (the "FAA") on January 29, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Learjet Assumption Agreement"). A copy of the Learjet Assumption Agreement is attached hereto as Exhibit B. The Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are attached hereto as Exhibit C. The Learjet Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Learjet Lease, Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics.

As security for the performance of the lessee's obligations under the Learjet Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)      Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Learjet Lease between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069955-5 filed by Bank of America with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Learjet 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)     Any and all security deposits in connection with or relating to the Learjet Aircraft Lease;

(iii)    Any and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Learjet Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Learjet 2004 UCC;

(iv)     Any and all proceeds of any of the foregoing or of any other goods, documents, things or items described in or relating to the Learjet 2004 UCC; and

(v)      Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Learjet 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section I(c)(i)-(v) above, is hereinafter referred to as the "Learjet Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Learjet Ancillary Personal Property was granted pursuant to, *inter alia,* two (2) separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by lessor, lessee, Pentastar Aviation, LLC and Automotive Air Charter, Inc. dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"). Copies of the Assignments of Related Collateral are attached hereto as Exhibit D. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Learjet Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were thereafter amended (the "Learjet Lease Guaranties"). Copies of the Learjet Lease Guaranties are attached hereto as Exhibit E.

2

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to the Learjet Lease is $12,076,595.56 plus interest, late charges, expenses of collection, attorneys' fees, applicable taxes and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft and related property is returned. Bank of America, N.A.'s claim with respect to the Learjet Lease is subject to reduction for amounts received after the Petition Date and for other credits to which Delphi HR may be entitled to under the terms of the Learjet Lease.

As of October 8, 2005, the value of the Learjet Ancillary Personal Property was unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Learjet Lease has neither been assumed nor rejected.

## II.    The Challenger Lease

The second lease dated March 30, 2001 (the "Challenger Lease") involves the following personal property:

(a)    a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b)    two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c)    all present and future equipment, additions, modifications, improvements, replacements, substitutions, parts, avionics, accessories, accessions and attachments related to or located in the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods records, manuals and logbooks in both written and computer data form, whether now existing or hereafter acquired, including without limitation one (1) Garrett GTCP36-100E auxiliary power unit bearing manufacturer's serial number P699 (the "Challenger Accessories and Avionics").

A copy of the Challenger Lease dated March 30, 2001 is attached hereto as <u>Exhibit F</u>. The Challenger Lease was recorded with the FAA on January 25, 2002. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004 (the "Challenger Assumption Agreement"). A copy of the Challenger Assumption Agreement is attached hereto as <u>Exhibit G</u>. The Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics are listed in financing statements filed with the offices of the Delaware and Michigan Secretaries of State. Copies of these financing statements are contained in Exhibit C hereto. The Challenger Lease is a true lease. Bank of America, N.A. claims an ownership interest in the Challenger Lease, Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics.

3

As security for the performance of the lessee's obligations under the Challenger Lease and related documents, SMLLC and Delphi HR granted Bank of America, N.A., as successor in interest to Fleet National Bank, a first priority security interest in all of the tangible and intangible property described in Exhibits C and D, in addition to any ownership rights Bank of America, N.A. holds in such property. Such property includes, but is not limited to:

(i)     Any and all subleases, management agreements, interchange agreements, charter agreements, purchase orders or agreements, aircraft leases (including, without limitation, the Challenger Lease) between Delphi HR (as assignee of SMLLC) and Bank of America, N.A. (as successor-in-interest to Fleet National Bank) and/or other agreements of any kind whatsoever relating to any of the foregoing or to any other goods, documents, things or items described in that certain UCC financing statement numbered 4069953-0 filed by Bank of America, N.A. with the Delaware Department of State on March 9, 2004 and attached hereto as part of Exhibit C (the "Challenger 2004 UCC"), which goods, documents, things or items include, without limitation, any payments, rents, profits, amounts, deposits, refunds, rebates or monies due, payable or relating to any of the foregoing;

(ii)    Any and all security deposits in connection with or relating to the Challenger Lease;

(iii)   Any and all present and future goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations relating to the Challenger Lease, the personal property subject to such lease, or any other goods, documents, things or items described in the Challenger 2004 UCC;

(iv)    Any and all proceeds of any of the foregoing or of any other goods, documents, things or items described in or relating to the Challenger 2004 UCC; and

(v)     Any and all present and future books and records relating to any of the foregoing or to any other goods, documents, things or items described in or relating to the Challenger 2004 UCC including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Delphi HR, any computer service bureau or other third party.

All of the personal property described in Exhibits C and D, including without limitation the property described in Section II(c)(i)-(v) above, is hereinafter referred to as the "Challenger Ancillary Personal Property."

The security interest held by Bank of America, N.A. in the Challenger Ancillary Personal Property was granted pursuant to, *inter alia,* the Assignments of Related Collateral, copies of which are attached hereto as Exhibit D. This security interest has been perfected under applicable nonbankruptcy law by the filing of UCC financing statements with the offices of the Delaware and Michigan Secretaries of State. See Exhibit C hereto.

Performance of the lessee's obligations under the Challenger Lease has been unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC, pursuant to the terms of separate guaranties, both of which are dated March 30, 2001 and were

4

thereafter amended (the "Challenger Lease Guaranties").    Copies of the Challenger Lease
Guaranties are attached hereto as Exhibit H.

As of October 8, 2005, the total amount of Bank of America, N.A.'s claim with respect to
the Challenger Lease is $26,050,997.12 plus interest, late charges, expenses of collection,
attorneys' fees, applicable taxes and damages for violations of the lease which are currently
unknown or cannot be determined until the aircraft and related property is returned.  Bank of
America, N.A.'s claim with respect to the Challenger Lease is subject to reduction for amounts
received after the Petition Date and for other credits to which Delphi HR may be entitled to
under the terms of the Challenger Lease.

As of October 8, 2005, the value of the Challenger Ancillary Personal Property was
unknown to Bank of America, N.A.

As of the date of this Proof of Claim, the Challenger Lease has been neither assumed nor
rejected.

## III.    This Court's Consent Order dated January 12, 2006

On January 12, 2006, this Court entered a Consent Order Resolving Motion by Bank of
America, N.A. for Adequate Protection Replacement Liens, a copy of which is attached hereto as
Exhibit I (the "Consent Order").  The Consent Order provides, *inter alia,* for payment of certain
amounts due under the Learjet Lease and the Challenger Lease in installments.  See Paragraph 6
of the Consent Order.

## IV.    General Reservation of Rights

Bank of America, N.A. is filing this Proof of Claim without waiving or affecting in any
manner whatsoever any rights that it holds against Delphi HR and any other Chapter 11 debtors
including, but not limited to, its right to request payment of administrative expenses.

5